**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA) CONTAMINATION PRODUCTS LIABILITY LITIGATION | D.N.J. Civil Action No. 19-2875 (RBK/JS) |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**CASE MANAGEMENT PROPOSAL OF PLAINTIFF MAINE AUTOMOBILE
DEALERS ASSOCIATION, INC. INSURANCE TRUST ON BEHALF OF PROPOSED
CLASS OF THIRD-PARTY PAYERS AND MOTION TO APPOINT
INTERIM CO-LEAD CLASS COUNSEL FOR THIRD-PARTY PAYERS**

# **TABLE OF CONTENTS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iii

I.   MADA'S MOTION FOR APPOINTMENT OF LOWEY AND PRETI AS CO-LEAD
     COUNSEL OF A SEPARATE TPP CLASS...................................................................1

   A.     PROCEDURAL HISTORY ....................................................................................1

   B.     ARGUMENT ...........................................................................................................4

          1.    TPPs are a Distinct Plaintiff Group, with Unique Interests, Requiring
                Separate Lead Counsel from the Other Two Plaintiff Groups.........................4

          2.    The Court's Appointment of Interim Class Counsel is Critical to the
                Successful Management of Complex Litigation and Lowey and Preti are Well
                Qualified for the Role.......................................................................................7

                a. Counsel Have Performed Substantial Work and Demonstrated Their
                   Leadership by Advancing This case on Behalf of TPPs .........................8

                b. Counsel are Experienced and Well Qualified ...........................................10

                c. Counsel are Knowledgeable on these Matters ...........................................15

                d. Counsel Will Devote Substantial Resources to the Litigation.................16

                e. Appointing Lowey and Preti is in the Best Interest of the Proposed
                   Class ........................................................................................................17

          3.    Consumer and TPP Plaintiff MSP Is Not Adequate to Represent TPPs.......17

                a. MSP's Complaint Is On Behalf of a Putative Class of Consumers and
                   TPPs .........................................................................................................17

                b. MSP Should Not Have Agreed to a Proposed Structure Giving
                   Consumer and Injury Counsel Authority Over TPP Claims .................18

                c. MSP Has Been Sanctioned and Admonished by Federal Courts in
                   Recent Cases, Courts Have Dismissed Numerous Cases of MSP and its
                   Affiliates for Lack of Standing, and the Court Denied MSP's Motion for
                   Appointment to the Executive Committee in *In re National Opiate
                   Litigation,* and MSP is Uniquely Subject to a Motion to Dismiss for Lack
                   of Standing in this Action .........................................................................18

   II.   STATUS CONFERENCE AGENDA ITEMS .............................................................21

A.   PLEADINGS ................................................................................................21

B.   DIRECT FILING .........................................................................................21

C.   TOLLING AGREEMENTS .........................................................................22

D.   ACCEPTANCE OF SERVICE OF COMPLAINTS ...................................22

E.   SUMMARY OF DISCLOSURES AND DISCOVERY UNDERTAKEN .............22

F.   CREATION AND MAINTENANCE OF DOCUMENTS.........................22

G.   STATUS OF PENDING MOTIONS ...........................................................23

H.   JURISDICTIONAL ISSUES .......................................................................23

I.   CURRENT OR CONTEMPLATED SETTLEMENT DISCUSSIONS .................23

J.   TIMING AND PROCEDURE OF RULE 12 MOTIONS .........................23

K.   TIMING AND PROCEDURE FOR RULE 26(a)(1)
     INITIAL DISCLOSURES .............................................................................23

L.   SCOPE AND TIMING OF DISCOVERY ...................................................23

M.   CONFIDENTIALITY ORDER ....................................................................23

N.   ANTICIPATED DISCOVERY ISSUES AS TO FOREIGN DEFENDANTS .....24

O.   NEED FOR DIFFERENT LITIGATION TRACKS ...................................24

P.   IS A "TUTORIAL" NECESSARY? .............................................................24

Q.   COURT WEBSITE ......................................................................................24

R.   COMMON BENEFIT FUND AND ORDER .............................................24

S.   BELLWETHER TRIALS .............................................................................24

T.   FUTURE STATUS CONFERENCES ..........................................................25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Alexander v. Washington Mut., Inc.,*
    No. CIV.A. 07-4426, 2012 WL 6021098 (E.D. Pa. Dec. 4, 2012) ............................................ 8

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................................ 6

*Andrews v. Bechtel Power Corp.,*
    780 F.2d 124 (1st Cir. 1985) .................................................................................................. 6

*Davis v. Weir,*
    497 F.2d 139 (5th Cir. 1974) .................................................................................................. 5

*Dewey v. Volkswagen Aktiengesellschaft,*
    681 F.3d 170 (3d Cir. 2012) .................................................................................................... 6

*Georgine v. Amchem Prods., Inc.,*
    83 F.3d 610 (3d. Cir. 1996) .................................................................................................... 5

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.,*
    525 F. App'x. 94 (3d Cir. 2013) ............................................................................................ 8

*In re Amaranth Natural Gas Commodities Litig.,*
    269 F.R.D. 366 (S.D.N.Y. 2010) .......................................................................................... 15

*In re Avandia Marketing, Sales Practices & Product Liability Litig.,*
    804 F.3d 633 (3rd Cir. 2015) ................................................................................................ 12

*In re Cardizem CD Antitrust Litig.,*
    332 F.3d 896 (6th Cir. 2003) ................................................................................................ 12

*In re CertainTeed Fiber Cement Siding Litig.,*
    303 F.R.D. 199 (E.D. Pa. 2014) ............................................................................................ 8

*In re Compact Disc Minimum Advertised Price Antitrust Litigation,*
    MDL 136, 2001 WL 243494 (D. Maine, March 12, 2001) .................................................... 5

*In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.,*
    296 F.R.D. 351 (E.D. Pa. 2013) ............................................................................................ 8

*In re: Iowa Ready-Mix Concrete Antitrust Litigation,*
    No. C 10-4038-MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) .................................. 13

*In re Literary Works in Elec. Databases Copyright Litig.,*
    654 F.3d 242 (2d Cir. 2011) ........................................................................................ 6

*In re Natural Gas Commodities Litig.,*
    231 F.R.D. 171 (S.D.N.Y. 2005) .............................................................................. 15

*In re Neurontin Marketing and Sales Practices Litig.,*
    712 F.3d 51 (1st Cir. 2013) ................................................................................. 12, 13

*In re Synthroid Marketing Litigation,*
    No. 97 C 6017, 1998 WL 526566 (N.D. Ill. Aug. 17, 1998) ....................................... 5

*In re Synthroid Marketing Litigation,*
    MDL 1182, 188 F.R.D. 287 (N.D. Ill. 1999) ............................................................ 13

*In re Synthroid Marketing Litigation,*
    110 F. Supp. 2d 676 (N.D. Ill. 2000) ....................................................................... 13

*In re Warfarin Sodium Antitrust Litigation,*
    212 F.R.D. 231 (D. Del. 2002) .............................................................................. 1, 5

*In re Warfarin Sodium Antitrust Litigation,*
    391 F.3d 516 (3d Cir. 2004) .................................................................................. 5, 6

*In re Zyprexa Prods. Liab. Litig.,*
    594 F.3d 113 (2d. Cir. 2010) .................................................................................... 7

*Laydon v. Mizuho Bank Ltd. et al.,*
    183 F. Supp. 3d 409 (S.D.N.Y. 2016) .................................................................... 16

*MAO-MSO Recovery II, LLC, et al. v. Allstate Ins. Co., et al.,*
    No. 17-01340-ClV-WOOD, 2018 WL 1565583 (N.D. Ill. Mar. 30, 2018) ............... 20

*MAO-MSO Recovery II, LLC, et al. v. American Family Mut. Ins. Co.,*
    No. 3:17-cv-00175, 2018 WL 835160 (W.D. Wis. Feb. 12, 2018) ........................... 20

*MAO-MSO Recovery II, LLC, et al. v. Progressive Corp.,*
    No. 1:17-CV-00390-CAB, 2018 WL 3438950 (N.D. Ohio July 17, 2018) ............... 19

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,*
    No. 1:17-cv-01541, 2018 WL 2392827 (C.D. Ill. May 25, 2018) ....................... 19, 20

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,*
    No. 1:17-cv-01541, 2018 WL 2735106 (C.D. Ill. June 7, 2018) .............................. 19

*MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.,*
    No. 17-20946, 2018 WL 295527 (S.D. Fla. Jan. 3, 2018) ....................................... 20

*MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.,*
No. 17-21289, 2018 WL 4956736 (S.D. Fla. Mar. 29, 2018)................................20

*MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.,*
No. 1:17-cv-23749, 2018 WL 1547600 (S.D. Fla. Mar. 9, 2018).........................20

*MSP Recovery, LLC v. Allstate Ins. Co.,*
No. 15-20732, 276 F. Supp. 3d 1311 (S.D. Fla. 2017)......................................20

*MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.,*
No. 1:17-CV-23841-PAS, 2018 WL 1953861 (S.D. Fla. Apr. 25, 2018)...........19, 20

*MSP Recovery Claims, Series LLC v. Travelers Cas. and Surety Co.,*
No. 17-23628-Civ-WILLIAMS, 2018 WL 359930 (S.D. Fla. June 19, 2018) .........19

*MSP Recovery Claims, Series LLC v. Travelers Casualty & Surety Co.,*
No. 1:17-23628, 2018 WL 3599360 (S.D. Fla. June 21, 2018)............................19

*MSPA Claims 1, LLC v. Covington Specialty Ins. Co.,*
212 F. Supp. 3d 1250 (S.D. Fla. 2016).........................................................20

*MSPA Claims 1, LLC v. First Acceptance Ins. Co.,*
No. 16-20314, 2016 WL 4523850 (S.D. Fla. Aug. 29, 2016) ............................20

*MSPA Claims 1, LLC v. Infinity Auto Ins. Co.,*
No. 16-20320, 204 F. Supp. 3d 1346 (S.D. Fla. 2016)....................................20

*MSPA Claims 1, LLC v. Liberty Mutual Fire Ins. Co.,*
No. 322 F. Supp. 3d 1273 (S.D. Fla. Aug. 1, 2018).......................................19

*MSPA Claims 1, LLC v. Nat'l Specialty Ins. Co.,*
No. 16-20401, 2016 WL 4479372 (S.D. Fla. Aug. 25, 2016) ............................20

*MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.,*
No. 16-20460, 2016 WL 4157593 (S.D. Fla. Aug. 3, 2016)...............................20

*MSPA Claims 1, LLC v. United Auto Ins. Co.,*
204 F. Supp. 3d 1342 (S.D. Fla. 2016).........................................................20

**Rules**

Fed. R. Civ. P. 23(a)(4) ................................................................................6

Fed. R. Civ. P. 23(g) et seq. ................................................................*passim*

Pursuant to the Court's Case Management Order No. 1 (Doc. 5) ("CMO 1"), Plaintiff Maine Automobile Dealers Association, Inc. Insurance Trust ("MADA") respectfully submits this case management proposal and motion to appoint interim co-lead class counsel for third-party payers ("TPPs"). MADA proposes the Court recognize there are three distinct groups of plaintiffs in this MDL with potentially competing interests: personal injury plaintiffs, TPPs, and consumer economic plaintiffs. MADA moves to appoint Lowey Dannenberg, P.C. ("Lowey") and Preti Flaherty Beliveau & Pachios, LLP ("Preti") as interim class counsel for the proposed class of TPPs under FED. R. CIV. P. 23(g).

## I.    MADA'S MOTION FOR APPOINTMENT OF LOWEY AND PRETI AS CO-LEAD COUNSEL OF A SEPARATE TPP CLASS

There are three distinct plaintiff groups in this MDL: consumer class plaintiffs (who purchased medication and assert economic damages only), TPP class plaintiffs (who paid the majority of the cost of the medication), and personal injury plaintiffs (who allege harm from ingesting the medication). While the three plaintiff groups have some overlapping interests that permit efficient coordination, they also present distinct and conflicting interests. The Third Circuit[1] and the Judicial Panel on Multidistrict Litigation ("JPML") in this case have recognized that TPP and consumer plaintiffs are differently situated. Accordingly, they require separate representation, and separate leadership. MADA − the only litigant in the MDL to file an action exclusively on behalf of a TPP − respectfully asks the Court to appoint Lowey and Preti as interim class counsel for TPPs.[2]

### A.    PROCEDURAL HISTORY

On January 30, 2019, MADA filed the class action complaint *Maine Automobile Dealers*

---

[1] *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 238 (D. Del. 2002).

[2] Prior to filing this motion, Lowey and Preti met and conferred in good faith, with counsel for the consumer plaintiffs, the injury plaintiffs, and the MSP case (on behalf of a proposed class of both consumers and TPPs) in an effort to persuade them that TPPs should have separate co-lead counsel.

*Association, Inc. Insurance Trust v. A-S Medication Solutions LLC et al.* No. 3:19-cv-02431 (D.N.J.) (the "MADA TPP action") in this Court, alleging that Defendant pharmaceutical drug manufacturers and re-packagers sold to TPPs angiotensin-II receptor blockers Valsartan, Irbesartan, and Losartan, ("ARBs") that were contaminated with N-nitrosodimethylamine ("NDMA") or N-Nitrosodiethylamine ("NDEA").[3]

MADA is a health benefit provider who paid retail pharmacies the vast majority of the purchase price for its members' Valsartan prescriptions, which were ultimately recalled between July 2018 and January 2019. Through this motion, MADA seeks appointment of Lowey and Preti as Lead Counsel for the putative class of TPPs under Rule 23(g).

This case involves three Plaintiff groups, numerous Defendants, and complicated issues of fact and law. Appointing Lowey and Preti as Interim Class Counsel for the TPP class will ensure that the TPP claims are litigated efficiently and effectively for the benefit of the TPP class. Lowey and Preti have unparalleled complex pharmaceutical litigation experience on behalf of dozens of TPPs and are eminently qualified. MADA respectfully requests that the Court approve this leadership structure by entering the proposed Order, attached as Exhibit A.

In 2011, active pharmaceutical ingredient ("API") manufacturer, Zhejiang Huahai Pharmaceutical Co. LLC ("ZHP") altered its API manufacturing process for generic Valsartan and generic Irbesartan, causing specific chemicals to react and introduce NDEA and NDMA contaminants into the API. ZHP is an API supplier for numerous of its U.S. subsidiaries, among others. Similar process changes were also made by Hetero Labs Ltd. ("Hetero") for its manufacture

---

[3] Irbesartan, Losartan, and Valsartan are generic prescription pharmaceuticals used to treat high blood pressure, among other uses. The World Health Organization ("WHO") labels NDMA as "clearly carcinogenic" and that it "has been consistently shown to be a potent carcinogen in all experimental species studied." Liteplo *et al.* "Concise International Chemical Assessment Document 38: *N*-Nitrosodimethylamine.*" World Health Organization. 2002. p. 4. The WHO also labels NDEA as a carcinogen.

off Valsartan and Losartan API that resulted in the introduction of NDMA and NDEA into those products. The contaminated ARBs have no economic value in the marketplace; they are worthless.

On August 16, 2018, the first proposed consumer class action complaint was filed in this District.[4] At least ten additional proposed consumer class actions were filed later. On October 22, 2018, consumer class plaintiff Robert Kruk moved the JPML for an order under 28 U.S.C. § 1407 to transfer the related consumer actions for pretrial purposes to this District.[5]

On December 14, 2018, MSP Recovery Claims, Series LLC ("MSP") filed its proposed joint consumer and TPP class action, *MSP Recovery Claims, Series LLC v. Huahai U.S. Inc.*, Case 1:18-cv-25260-CMA (S.D. Fla.) ("the MSP Consumer and TPP Action"). MSP is neither a consumer nor a TPP. Rather, MSP claims to have standing through a series of assignments to one of its affiliates to "recover payments made on behalf of their assignors' health plan members and enrollees."[6] MSP points to three "representative assignment agreements" that permit it to recover payments under "Medicare Parts A, B, and D."[7]

On January 30, 2019, MADA filed the MADA TPP action, including claims for Valsartan, Irbesartan, and Losartan; in this Court.[8] MADA is a multi-employer welfare benefit provider that offers health benefit plans, including prescription drug coverage for its members. On January 31, 2019, MADA counsel attended the hearing of the JPML Panel. On February 14, 2019, the JPML transferred certain cases to this Court. Additional cases filed in the District of New Jersey, including the MADA TPP action, were reassigned within the District to this Court.

---

[4] *Duffy et al. v. Solco Healthcare U.S. LLC, et al.* Case No. 3:18-cv-15076 (D.N.J.).

[5] *In re Valsartan NDMA Contamination Products Liability Litig.*, MDL No. 2875, Doc. No. 1.

[6] *MSP Recovery Claims, Series LLC v. Huahai US Inc., et al.*, No. 1:18-cv-25260-CMA (S.D. Fl.), Doc. No. 1.

[7] *Id.*

[8] *Maine Automobile Dealers Association, Inc. Insurance Trust v. A-S Medication Solutions LLC et al.*, No. 3:19-cv-02431 (D.N.J.).

B.    **ARGUMENT**

1.    **TPPs are a Distinct Plaintiff Group, with Unique Interests, Requiring Separate Lead Counsel from the Other Two Plaintiff Groups**

TPPs require separate counsel to prosecute their distinct claims, to secure the correct allocation of any recovery, and as a protective measure against potential conflicts of interest between consumers, personal injury plaintiffs, and TPPs. The importance of appointing separate lead counsel for each plaintiff group is heightened in this case, where TPPs and consumers will be required to allocate the total economic loss between the two groups. TPPs may have paid approximately 80% of the cost of Valsartan purchased by consumers.

MADA understands that consumer plaintiff counsel and injury plaintiff counsel will ask the Court to appoint a three-tier structure in which only consumer and injury counsel will occupy the highest level of the structure, "co-lead counsel," and therefore have decision-making authority over the TPP class cases. MADA disagreed with such a structure, and consumer and injury plaintiff counsel excluded MADA counsel from the proposed structure. Instead, consumer and injury counsel proposed to put MSP counsel in a tier subordinate to the co-lead level, and offered to place MADA counsel in the lowest tier.

That structure is unacceptable to TPPs. It would subordinate TPPs to consumer and injury counsel in a hierarchy of authority, including authority over pleading, litigation strategy, and settlement decisions for the TPP class. This would prejudice the autonomy of TPPs and their counsel to prosecute their distinct claims in the best interest of TPPs. Co-lead counsel for consumers and injury plaintiffs cannot serve two masters. Although consumers and TPPs both assert class actions against common defendants, their distinct claims for allocation of damages, class

certification issues, and potential theories of liability create a disqualifying conflict, such that counsel for one should not be put in a position to control the claims of the other.[9]

Courts frequently appoint separate counsel specifically to represent the distinct interests of TPPs and consumers.[10] Two cases illustrate the point.

In *In re Synthroid Marketing Litigation*, the consumers reached a proposed settlement early in the case. TPPs, represented by Preti, moved to intervene, arguing that the consumers' settlement purported to release TPPs' subrogation and reimbursement rights for the losses they suffered without any compensation to TPPs. The MDL Transferee Court granted TPPs' motion to intervene as of right.[11] After substantial additional litigation, the Court certified a separate TPP class and approved a separate TPP settlement.

In *In re Warfarin Sodium*, the Court appointed two law firms (including Lowey) to represent the distinct interests of TPPs at the highest level of the plaintiffs' structure. Separate counsel were appointed to represent consumers.[12] On appeal, the Third Circuit held that "any potential for conflicts of interest between and among consumers and TPPs that may have arisen prior to and during the settlement negotiations were adequately represented by the presence of separate counsel for consumers and TPPs. The existence of separate counsel, as well as the operation of the Executive Committee, provided adequate 'structural protections to assure that differently situated plaintiffs negotiate for their own unique interests.' *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631

---

[9] *See In re Compact Disc Minimum Advertised Price Antitrust Litigation,* MDL 136, 2001 WL 243494 (D. Maine, March 12, 2001), the Court disqualified proposed co-lead counsel for consumers because they had previously represented retailers in related litigation against common defendants. 2001 WL 243494 (D. Maine, March 12, 2001) (Preti appointed liaison counsel for consumers).

[10] *See In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 532–33 (3d Cir. 2004); *Davis v. Weir*, 497 F.2d 139, 147 (5th Cir. 1974) (noting that subclasses are utilized to eliminate antagonistic interests within a class).

[11] *In re Synthroid Mktg. Litig.*, No. 97 C 6017, 1998 WL 526566, at *2 (N.D. Ill. Aug. 17, 1998) ("[T]he settlement would extinguish any rights by [TPPs] against defendants. Accordingly, [TPPs] clearly have a substantial interest in this settlement . . . Since they cannot otherwise protect their interest, their motion to intervene as of right is granted.").

[12] *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 238 (D. Del. 2002).

(3d. Cir. 1996) (finding inadequate representation of different groups of plaintiffs where no such structural protections existed); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627–28 (1997)."[13]

At trial, in addition to proving liability on various causes of action, each of the three plaintiff groups here will present evidence of damages. The consumers and TPPs each must present evidence of how the economic damages from all Valsartan sales impacted them. While aligned against the defendants, the interests of TPPs and consumers will be in conflict as each seeks (appropriately) to maximize its own recovery. Structural leadership protections are needed in order to ensure that the respective plaintiffs and their unique interests are fairly and adequately protected.

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." "[T]he interests of the representative party will not conflict with the interests of any of the class members."[14] The purpose of this requirement is to uncover fundamental "conflicts of interest between named parties and the class they seek to represent."[15] Fundamental conflicts can be cured by certifying different classes or subclasses with independent representation.[16]

There is a fundamental conflict of interest between TPPs and consumers, in at least three respects. First, each will rationally seek to recover the maximum reasonable share of the total amount of economic damages from the retail sale of the defective drugs. Second, they have distinct potential causes of action. The pleadings are not in final form, but when they are, TPPs are likely to assert distinct causes of action from those of the consumers, which may include claims for subrogation and reimbursement under contact and common law theories. Third, consumers and TPPs also have distinct issues on class certification, another key phase of the case. If litigation and

---

[13] *In re: Warfarin,* 391 F.3d at 533.

[14] *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

[15] *Amchem*, 521 U.S. at 625; *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) ("[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.").

[16] *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249-50 (2d Cir. 2011).

settlement strategy of any one group is controlled by lawyers representing another group, their distinct interests may be compromised. These conflicts can be avoided by the appointment of separate counsel to represent each plaintiff group.

### 2. The Court's Appointment of Interim Class Counsel is Critical to the Successful Management of Complex Litigation and Lowey and Preti are Well Qualified for the Role

MDL transferee courts are tasked with shepherding complex disputes to resolution. "District courts typically appoint lead counsel…to coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic."[17] Naming Lowey and Preti Interim Class Counsel will charge the firms with responsibility to protect the proposed TPP Class' interests. The Court should appoint lead counsel who have no conflicts of interest and who are fully capable and experienced to fairly and adequately represent the interests of the TPP class.

The MADA TPP action is the only TPP class action brought exclusively on behalf of a proposed class of TPPs. The MADA TPP class is defined as follows:

> All insurance providers and other third-party payers, excluding governmental entities and any Defendant or entity controlled by any Defendant, that paid all or part of the expense for Valsartan, Irbesartan, Losartan, Valsartan-containing products, Irbesartan-containing products, and/or Losartan-containing products, contaminated with NDMA or NDEA identified on Exhibit A, the FDA's list of recalled NDMA-contaminated Valsartan, NDEA-contaminated Valsartan, NDEA-contaminated Irbesartan, and NDEA-contaminated Losartan, or any updated list of NDMA-contaminated Valsartan, NDEA-contaminated Valsartan, NDEA-contaminated Irbesartan, or NDEA-contaminated Losartan released by FDA through the date of trial.

Rule 23(g) permits a court to "designate interim class counsel to act on behalf of the putative class before determining whether to certify the action as a class action."[18] The rule enumerates the four factors for the Court to consider in selecting interim lead counsel: (1) the work counsel has

---

[17] *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 130 (2d. Cir. 2010).

[18] FED. R. CIV. P. 23(g).

done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.[19] No one factor is dispositive. Rather, the factors provide a framework for the Court to evaluate whether counsel fairly and adequately represents the class. The Court may, in its discretion, consider any other criteria it deems relevant.[20] After considering the four factors of Rule 23(g)(1)(A), if more than one applicant seeks appointment as class counsel the court must appoint the "applicant best able to represent the interests of the class."[21]

      a.   <u>Counsel Have Performed Substantial Work and Demonstrated Their Leadership by Advancing This Case on Behalf of TPPs</u>

Lowey and Preti filed the MADA TPP action on January 30, 2019 in this District. The MADA TPP action is the only action brought exclusively on behalf of TPPs and the only TPP action brought by a *bona fide* TPP.[22]

Lowey and Preti devoted substantial time to their pre-complaint investigation. They monitored and continue to monitor FDA's recalls of the ARBs since they first began in July 2018. The firms have conducted substantial research in developing their claims, which included review and analysis of the recalls and documents connected therewith, review and analysis of current Good Manufacturing Practices ("cGMP") compliance, review of Defendants' corporate statements and media coverage regarding the recalled drugs, review of Defendants' corporate structures, and

---

[19] Rule 23 does not include any specific criteria regarding the appointment of interim class counsel. Courts typically consider the four factors in Rule 23(g) (1) (A) relevant to the selection of class counsel. *See* e.g. *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x. 94, 101 (3d Cir. 2013) (citations omitted); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 213 (E.D. Pa. 2014); *Alexander v. Washington Mut., Inc.*, No. CIV.A. 07-4426, 2012 WL 6021098, at *10–11 (E.D. Pa. Dec. 4, 2012); *In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*, 296 F.R.D. 351, 362 (E.D. Pa. 2013).

[20] FED. R. CIV. P. 23(g)(1)(B).

[21] FED. R. CIV. P. 23(g)(2).

[22] It is also the only TPP action that includes claims for Irbesartan and Losarten. The JPML left open the question whether this MDL includes Irbesartan and Losarten. I any event, MADA will prosecute this case for Valsartan.

consultation with numerous health benefit plans of varying size and geographical distribution. Taking a deliberate approach, MADA filed its case some six weeks after the MSP action. Courts do not decide leadership roles based on a race to the courthouse.

Lowey and Preti also researched and analyzed theories of liability and adjusted their claims, as pharmaceutical overcharge actions are a constantly shifting area of law. Lowey and Preti moved this case forward in several critical ways:

- Issued and received a preliminary response to a Freedom of Information Request to the FDA requesting documents relevant to TPPs' class claims;

- Attended the JPML hearing in Miami on January 31 on behalf of TPPs;

- Coordinated with other plaintiff groups. Recognizing that separate plaintiff groups have certain common interests, notwithstanding other divergent interests, Preti and Lowey met with counsel for the consumer class action plaintiffs and the personal injury plaintiffs to coordinate the common interests among the various plaintiff groups. As provided in the Manual for Complex Litigation (4th ed., 2011) (the "Manual") proposed lead counsel attempted in good faith to agree on a leadership structure for all plaintiff cases, but were unable to do so ;

- Reached stipulations. Mindful of the possibility of amended pleadings, and to promote efficiency and judicial economy, before the court suspended all deadlines in the MDL proposed co-lead counsel met and conferred with several Defendants' counsel to reach stipulations to defer responses to the MADA TPP action complaint for the time being;

- Consulted and coordinated with prominent members of the proposed class of TPP. Proposed lead counsel communicated with major TPPs to inform them of the status of the case on behalf of the proposed class; and

- Consulted with an expert in quantifying damages from contaminated pharmaceuticals.

### b.  Counsel are Experienced and Well-Qualified

For five decades, Lowey and Preti prosecuted complex class actions against the largest corporations in the world. Recognized as premier litigation firms, they have achieved substantial recoveries in a variety of precedent-setting pharmaceutical actions on behalf of health insurers.

The Lowey team is led by shareholder Peter D. St. Phillip, Jr.,[23] who has over two decades of experience litigating class actions against large corporations, achieving some of the most significant recoveries on behalf of health benefit insurance providers. Mr. St. Phillip is co-chair of Lowey's antitrust department. He has significant experience pursuing litigation against highly sophisticated defendants with near-unlimited resources, including many of the world's largest pharmaceutical companies and financial institutions, including GlaxoSmithKline LLC ("GSK"), Boehringer Ingelheim Pharmaceuticals Inc., Mylan Inc., Teva Pharmaceuticals USA Inc., Deutsche Bank AG, UBS AG, and JP. Morgan Chase & Co.

Mr. St. Phillip has extensive appellate experience stemming from his clerkship with the United States Court of Appeals for the Third Circuit. He has lectured on appellate advocacy and routinely argues appeals in the federal circuit courts. He has prosecuted many antitrust and cost recovery matters and is known for defending expert economic testimony in prosecutions of commodity manipulation securities claims, and prescription drug cases. He is responsible for day-to-day litigation efforts in several pharmaceutical cases, and is sought by clients for his extensive expertise in complex pharmaceutical recovery.

---

[23] Lowey's history is well documented on its website www.lowey.com.

Lowey has 50 years of experience representing sophisticated clients[24] in complex securities, antitrust and RICO-based litigation, successfully achieving billions of dollars in recovery. Lowey has extensive healthcare expertise litigating on behalf of insurers, particularly in the areas of drug price manipulation and defective drugs. In *Blue Cross Blue Shield Association et al. v. GlaxoSmithKline*, Lowey represents 60% of the private health insurance market in the United States, including nearly two dozen Blue Cross Blue Shield licensees as well as large, private insurers.[25] There, GSK is alleged to have manufactured 17 super-potent and sub-potent, contaminated drugs that 39 health insurer plaintiffs eventually purchased in the U.S.

*In Desiano v. Warner-Lambert Co.*,[26] Lowey represented a health insurer that sued Warner Lambert and Pfizer for alleged misrepresentations concerning the qualities of their antidiabetic medication, Rezulin. Before the Second Circuit, Lowey successfully argued to reverse dismissal of a class action. Lowey's winning legal arguments established precedent-setting law that has influenced every TPP prescription drug case since, establishing the direct rights (as contrasted with derivative, and more limited, subrogation rights) of TPPs to sue pharmaceutical manufacturers for drug overcharges for defective drugs.

Before the Third Circuit, Lowey filed an amicus brief on behalf of twenty TPPs, including Aetna, Anthem, Highmark Inc., Blue Cross & Blue Shield of Florida, and Government Employees Health Association, arguing that the Medicare Secondary Payor Act created a private right of action

---

[24] Lowey's clients include Fortune 100 companies such as Aetna, Anthem Inc. CIGNA, Horizon Blue Cross and Blue Shield of New Jersey, Inc., Humana Inc., and Verizon Inc.; the nation's largest pension funds, e.g., the California State Teachers' Retirement System ("CalSTRS"), the New York State Common Retirement Fund, and New York City Pension Funds; and sophisticated institutional investors including Federated Investors Inc.

[25] *Blue Cross Blue Shield Assoc. et al v. GlaxoSmithKline* was not the first action in which Lowey represented over half of the health insurers in the U.S. In *In re: Vioxx Products Liability Litig.* Lowey represented 49 health insurers representing over 50% of all TPPs. Case 2:08-cv-01633-EEF-DEK.

[26] Case No. 01-9318-cv.

for health insurance companies to recover pharmaceutical overcharges. The Third Circuit agreed, launching a new era of TPP recovery litigation.[27]

Additionally, Lowey pioneered prosecution of some of the largest anticompetitive "pay-for-delay" deals, achieving landmark decisions and record-breaking recoveries, including:

- **In re Cardizem CD Antitrust Litig.**, Lowey, representing a class of TPPs, filed the first ever "pay-for-delay" case and, before the Sixth Circuit Court of Appeals, successfully argued that a reverse settlement agreement can be a *per se* illegal restraint of trade. Lowey served as lead counsel and argued before the United States Court of Appeals for the Sixth Circuit in a landmark decision that unanimously affirmed a summary judgment of *per se* liability against defendants.[28] Lowey successfully negotiated an $80 million class settlement.

- **In re Wellbutrin XL Antitrust Litig.**, **Case No. 2:08-cv-02433-MAM**, Lowey was appointed as co-lead counsel and secured an $11.75 million settlement for a class of indirect purchasers from just one Defendant.

- **In re Terazosin Hydrochloride Antitrust Litig ("Hytrin"), MDL No. 1317 (N.D. Ill.)** where Lowey was appointed class counsel and secured a $30.7 million class settlement.

Lowey also set important precedent in the First Circuit where it argued that its client, Aetna was entitled to recover against Pfizer for its off-label marketing of Neurontin.[29] There, Lowey was appointed by the U.S. District Court in Boston to represent private TPPs' interests on the Plaintiffs Steering Committee. Lowey assisted the trial team in securing the first ever verdict in history against a pharmaceutical manufacturer finding that it engaged in a RICO enterprise by fraudulently marketing its drug, resulting in a $142 million award. On appeal, Lowey won a landmark RICO decision in the United States Court of Appeals for the First Circuit, in which Mr. St. Phillip argued, holding drug manufacturers accountable to health insurers for damages attributable to marketing

---

[27] *In re Avandia Marketing, Sales Practices & Product Liability Litig.*, 804 F.3d 633 (3rd Cir. 2015).

[28] *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003), *affirming*, 105 F. Supp. 2d 682 (E.D. Mich. 2000).

[29] *In re Neurontin Marketing and Sales Practices Litig.*, No. 11-1595 (D.Mass.).

fraud.[30] The firm obtained a substantial confidential settlement for Aetna and later negotiated settlements for other TPP clients as part of a $325 million settlement.

Like Lowey, Preti has helped pioneer the TPP class action. Representing Aetna and a class of TPPs, Preti broke new ground in *In re Synthroid Marketing Litigation*, the first case in which a U.S. District Court certified a litigation class of TPPs against a prescription drug manufacturer.[31] The Court ultimately approved a $45.5 million class settlement for the TPP class.[32] Since the firm's work in *Synthroid,* Courts across the country have recognized that certifying a class of TPPs is an effective tool in resolving many complex disputes that impact health insurers.

Courts have recognized Preti's leadership in complex cases. In approving a class settlement and fee petition in an antitrust class action in which Preti was one of two co-lead counsel, U.S. District Judge Mark W. Bennett stated[33]:

> The $18.5 million sum is especially remarkable, given that the United States Department of Justice estimated that the total volume of commerce affected by the price fixing conspiracies was only $5,666,348.61. Class Counsel thus recovered overcharge damages for the class members in a sum more than three times greater than the United States Department of Justice's estimate of the total volume of commerce affected by the conspiracy.
> Moreover, Class Counsel achieved these fabulous results with incredible efficiency. …
> ***
> This case is a model for the nation that class actions can, indeed, work exactly as Congress and the federal courts intended ….They placed their clients' best interests light years ahead of their own, which is exactly the way the practice of law is supposed to work ….

---

[30] *In re Neurontin Marketing and Sales Practices Litig.*, 712 F.3d 51 (1st Cir. 2013).

[31] *In re Synthroid Marketing Litigation,* MDL 1182, 188 F.R.D. 287 (N.D. Ill. 1999).

[32] *In re Synthroid Marketing Litigation,* 110 F. Supp. 2d 676 (N.D. Ill. 2000).

[33] *In re: Iowa Ready-Mix Concrete Antitrust Litigation*, No. C 10-4038-MWB, 2011 WL 5547159, at *2-4 (N.D. Iowa Nov. 9, 2011) (awarding class counsel $500,000 more than the requested fee).

In approving a $14.2 million antitrust class action settlement in a case in which Preti was co-lead counsel, U.S. District Judge Gregory Frost commented, "I wouldn't have ever thought that this case would have proceeded along as smoothly as it did."[34]

This is not the first time that Lowey and Preti have teamed up to secure recoveries for their clients. Preti and Lowey worked together to win a substantial recovery for one of America's largest health insurers in another defective medical product recall case, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*.[35]

Courts have appointed Preti Co-Lead Counsel in numerous recent class actions, including: *Automotive Parts Antitrust Litigation*, MDL 2311 (E.D. Mich.) (consisting of over 20 class actions with partial settlements of over $300 million); *Marine Hose Antitrust Litigation*, MDL 1888 (S.D. Fla.) ($32 million recovery); and *Foundry Resins Antitrust Litigation*, MDL 1638 (S.D. Ohio) ($14.2 million recovery). The Court appointed the firm Liaison Counsel in *Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL No. 1361 (D. Maine) ($143 million settlement).

The Preti team is led by Greg Hansel and Sigmund Schutz. Mr. Hansel was cited in the National Law Journal for winning one of the 100 largest jury verdicts of 2011 in the U.S., $19.3 million; is listed in Woodard/White's The Best Lawyers in America for Mass Torts and Class Actions/Plaintiffs; rated AV Preeminent by Martindale-Hubbell; was recognized for Commercial Litigation in Chambers USA: America's Leading Lawyers for Business, which stated "Greg Hansel stands out for his prowess in relation to complex business litigation work," and noted that "One interviewee . . . heralded him as 'a master of class action litigation'"; and is a vice chair of the Global Private Litigation Committee of the American Bar Association Section of Antitrust Law.

---

[34] *In re Foundry Resins Antitrust Litigation*, *supra*, hearing on final approval of settlement, March 28, 2008, p. 32.

[35] MDL No. 1401 (N.D. Ohio).

Sigmund Schutz has 20 years of experience in products liability and commercial litigation. He won a $13.6 million jury verdict in 2016; is recognized as AV- Preeminent by Martindale-Hubbell; is listed by Chambers USA; is recognized in Best Lawyers in America as 2019 Lawyer of the Year for Appellate Practice and recognized for Commercial Litigation; and is a Fellow of the American Bar Foundation.

Preti has the leadership experience, resources and technology to manage complex litigation and would be an effective co-lead counsel together with Lowey to efficiently prosecute TPPs' claims in this case.

### c.   Counsel are Knowledgeable on these Matters

Lowey's institutional knowledge of the relevant law reflects its role as a pioneer prosecuting pharmaceutical overcharge claims. Lowey has particular expertise in the area of defective and non-cGMP compliant pharmaceuticals. Lowey has litigated numerous pharmaceutical contamination cases, including *Blue Cross Blue Shield Assoc. et al v. GlaxoSmithKline LLC*, where Lowey represents 39 health insurer plaintiffs alleging they purchased worthless contaminated pharmaceuticals. The contamination, plaintiffs allege, resulted from the absence of barrier technology to protect components in sterile areas and failure to clean holding tanks and hand-scraping tanks. Among the alleged contaminants were metal shavings, iron oxide, metal pieces, and microbes. Plaintiffs also allege that GSK either failed to conduct investigations into contaminated drugs, or failed to follow up on unsatisfactory results, allegations similar to those made here.

Lowey is skilled in managing complex litigation. Lowey has successfully turned back challenges to class certification.[36] The firm is experienced with multi-faceted discovery issues that will likely be raised in this litigation and is well versed in winning discovery disputes against large

---

[36] *See, e.g., In re Amaranth Natural Gas Commodities Litig.,* 269 F.R.D. 366 (S.D.N.Y. 2010) *petition for review denied*, Motion Order, 10-4110-cv (2d Cir. Dec. 28, 2010), ECF No. 54; *In re Natural Gas Commodities Litig.,* 231 F.R.D. 171 (S.D.N.Y. 2005) *petition for review denied*, Mandate, 03-cv-6186 (S.D.N.Y. Aug. 30, 2006) ECF No. 464.

corporations. It previously overcame complex data privacy objections to win a motion to compel documents from large foreign banks, significantly accelerating discovery.[37]

        d.  <u>Counsel Will Devote Substantial Resources to the Litigation</u>

Lowey and Preti have the necessary personnel and expertise to prosecute a case of this complexity. The firms have significant experience supervising large teams of lawyers in negotiating, analyzing, and producing discovery, working with expert consultants, and drafting motions.

Lowey has a team of over 45 attorneys that specialize in this type of litigation. The team will devote the necessary time and resources to pursue this matter and will coordinate and cooperate with all parties to maximize efficiencies and minimize cost while meeting all fiduciary obligations owed to MADA and the Class. Lowey has a stable financial history, regularly advancing millions of dollars on behalf of the classes and clients it represents. It is well-capitalized and is prepared to advance similar substantial sums in the prosecution of this case.

Preti is a 95-lawyer, full service, commercial law firm with offices in Maine, New Hampshire, Massachusetts, and Washington, D.C. It has represented plaintiffs and defendants, including many Fortune 500 corporations, in class actions and other complex litigation. The firm's Health Law Practice Group regularly represents health insurers, hospitals, physician groups, and nursing homes. At a part of that practice, the firm has long represented lead plaintiff and proposed class representative MADA, a self-funded multi-employer health plan.

Counsel will keep detailed contemporaneous records of their time and expenses.

The firms' collective experience, technological capabilities, and financial resources will enable them to provide excellent representation to the class through the course of this litigation. Their

---

[37] *Laydon v. Mizuho Bank Ltd. et al.,* 183 F. Supp. 3d 409 (S.D.N.Y. 2016).

combined resources will add value and bring different skills and teams together to most effectively pursue recovery for the class.

       e.  <u>Appointing Lowey and Preti is in the Best Interest of the Proposed Class</u>

Rule 23(g)(1)(B) states that courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Given Lowey and Preti's extensive experience handling complex class action litigation, the breadth of knowledge they have developed in relevant law, and the substantial resources they will be able to commit to the case, Lowey and Preti surpass "adequacy." They are ideally equipped to serve the interests of the Class.

Moreover, Lowey and Preti have developed strong relationships with industry experts, health care economists, manufacturing and regulatory experts, and settlement administrators. These relationships will facilitate an informed and successful prosecution.

For the above reasons, MADA respectfully asks the Court to appoint separate interim lead counsel for TPPs and to appoint Lowey Dannenberg and Preti Flaherty to fill that role. MADA submits a proposed order herewith appointing Lowey and Preti as interim co-lead class counsel for the proposed class of TPPs under Federal Rule of Civil Procedure 23(g).

      **3.  Consumer and TPP Plaintiff MSP Is Not Adequate to Represent TPPs**

Consumer and TPP plaintiff MSP, is not adequate to represent the TPP class in the leadership structure for several important reasons.

       a.  <u>MSP's Complaint Is On Behalf of a Putative Class of Consumers and TPPs</u>

As Judge Vance pointed out twice to MSP counsel at the JPML hearing of this matter, the class definition in the MSP complaint includes both consumers and TPPs.[38] Specifically, the MSP

---

[38] The following is a colloquy between Judge Vance and Attorney Andres Rivero of MSP:

**JUDGE VANCE:** Why does your class imply you are including the consumers?

complaint includes consumers in both of its two class definitions: "All third-party payers and consumers who paid for NDMA-contaminated Valsartan (the 'Class')."[39] It is not an exclusively TPP action.

### b.    MSP Should Not Have Agreed to a Proposed Structure Giving Consumer and Injury Counsel Authority Over TPP Claims

Even if MSP counsel purport to only represent TPPs, it was inappropriate for them to agree to be subject to the authority of counsel representing consumers and injury plaintiffs. MSP's acquiescence in a proposed structure dominated by consumer and injury counsel raises a question about whether MSP would vigorously represent the distinct interests of TPPs.

### c.    MSP Has Been Sanctioned and Admonished by Federal Courts in Recent Cases, Courts have Dismissed Numerous Cases of MSP and its Affiliates for Lack of Standing, the Court Denied MSP's Motion for Appointment to the Executive Committee in *In re National Opiate Litigation,* and MSP is Uniquely Subject to a Motion to Dismiss for Lack of Standing in this Action

MSP and its affiliates are serial litigants, filing suits on behalf of entities claiming to be assignees of Medicare health plans. Courts have rejected their attempts to file such claims; in June 2018, a Court imposed Rule 11 sanctions for failing to correct "misstatements" and "inaccurate allegations" about a purported assignor. A federal court sanctioned an affiliated entity[40] finding it

---

**ATTORNEY:** Well, no, Your Honor. We don't claim to represent the consumers. We claim to be the payors of 80 percent of those consumers's medicines….
**JUDGE VANCE:** But your class definition said you were representing consumers.
**ATTORNEY:** Your Honor, if so, I'd have to go back and look at that. But we don't represent --
**JUDGE VANCE:** I understand what you're saying now.

Transcript of HEARING BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, Thursday, January 31, 2019, p. 20, lines 3-21.

[39] *MSP Recovery Claims, Series LLC v. Huahai U.S. Inc.,* No. 1:18-cv-25260-CMA (S.D. Fla.) Doc. No. 1 at ¶ 84.

[40] The Plaintiff in this case, MSP Recovery Claims Series, LLC is affiliated with MAO-MSO Recovery II, LLC and other MSP entities referenced in fn .2, *infra. See, e.g.* Plaintiffs' Corporate Disclosure Statement, *MAO-MSO Recovery II, LLC et al. v. State Farm Mutual Automobile Insurance Co.,* No. 3:17-cv-321 (S.D. Ill, March 28, 2017), ECF No. 2 (Asserting: (1) "MAO-MSO Recovery II, LLC, is owned by RD Legal Finance, LLC, and MSP Recovery LLC"; (2) "MSP Recovery, LLC, has no parent corporation"; (3) "MSPA Claims 1, LLC, is owned by MSP Recovery Services, LLC.") (Exhibit D); Plaintiffs' Corporate Disclosure Statement, *MAO-MSO Recovery II, LLC et al. v. The Farmers Insurance Exchange et al.,* No. 2:17-cv-02559 (C.D. Cal. April 3, 2017), ECF No. 5 (same) (Exhibit E); Corporate Disclosure Statement, *MAO-MSO*

committed "wholesale misstatements of fact" with respect to standing.[41] In a prior dismissal order in

that case, the Court stated[42]:

> The Court does not believe Plaintiffs have been completely forthcoming about exactly who the alleged assignor is in this case. As previously stated, the Amended Complaint makes clear that any reference to "Health First" refers to HFAP. No matter how Plaintiffs twist it, their Amended Complaint is not accurate. HFAP did not pay the representative beneficiary's medical expenses; HFHP did. Therefore, if anybody is to be reimbursed under the MSP provisions, it is HFHP, not HFAP. It is not a "minor" clarification to say that an entirely separate corporation incurred injury. The crux of this case surrounds State Farm's alleged failure to reimburse MAOs for conditional payments they made, and Plaintiffs' case rises and falls with exactly <u>what MAO</u> assigned rights to them.
>
> * * *
>
> [T]here is absolutely no basis in law to support the argument that HFAP is a MAO; and Plaintiffs only attempted to "clarify" their allegations after being outed by Defendant that the Amended Complaint was inaccurate....

United States courts have dismissed MSP's and its affiliates' claims in a host of recent cases.[43]

---

*Recovery II, LLC v. State Farm Mutual Auto Insurance Company*, Nos. 18-2377 and 18-2463 (7th Cir. Dec. 17, 2018), ECF No. 43 (Asserting: (1) "The members of MAO-MSO Recovery II, LLC, are RD Legal Finance, LLC . . . and MSP Recovery, LLC . . . ."; (2) "The sole member of MSP Recovery, LLC, is not a corporation, but a limited liability partnership."; (3) The sole member of MSP Claims 1, LLC, is MSP Recovery Services, LLC . . . ."; (4) The sole member of MSP Recovery Claims, Series LLC, is VRM MSP Recovery Partners, LLC . . . .") (Exhibit F); Corporate Disclosure Statement, *MAO-MSO Recovery II, LLC et al. v. American Family Mutual Insurance Co. et al.*, No. 17-cv-175 (W.D. Wisc. March 8, 2017), ECF No. 3 (Asserting: (1) "MAO-MSO Recovery II, LLC, is owned by RD Legal Finance, LLC, and MSP Recovery, LLC"; (2) "MSP Recovery, LLC has no parent corporation"; (3) MSPA Claims 1, LLC, is owned by MSP Recovery Services, LLC.") (Exhibit G). *See* Exhibit H, Florida Division of Corporations filing by Plaintiff filed June 21, 2018 (Plaintiff's "Application by Foreign Limited Liability Company for Authorization to Transact Business in Florida," directing all correspondence to "MSP Recovery, LLC" and listing John H. Ruiz P.A. as registered agent).

[41] *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-cv-01541, 2018 WL 2735106, at *5 (C.D. Ill. June 7, 2018) *appeal argued*, No. 18-2377 (7th Cir. Jan. 14, 2019).

[42] *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-cv-01541, 2018 WL 2392827, at *4, 7 (C.D. Ill. May 25, 2018), *appeal argued*, No. 18-2463 (7th Cir., Jan. 14, 2019). *See also MSP Recovery Claims, Series LLC v. Travelers Casualty & Surety Co.*, No. 1:17-23628, 2018 WL 3599360, at *4 n.4 (S.D. Fla. June 21, 2018) (rejecting Plaintiff's allegations that purported assignment conveyed standing and stating, "Plaintiff here is reminded of its duty of candor to the court and its obligation to comply with the requirements of Rule 11"), *appeal docketed*, Nos. 18-12139-GG, 18-12149-GG, 18-13049-GG (11th Cir. July 19, 2018), *appeal dismissed* November 8, 2018 and *appeal reinstated*, December 7, 2018) ; *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 1:17-CV-23841-PAS, 2018 WL 1953861, at *5 (S.D. Fla. Apr. 25, 2018) (finding putative assignment did not confer standing on Plaintiff and warning counsel "to remember its professional duty of candor to the Court to avoid future disciplinary issues"), *appeal dismissed,*, Nos. 18-12139-GG, 18-12149-GG, 18-13049-GG (11th Cir. Nov. 8, 2018) and *appeal reinstated*, (11th Cir. Dec. 7, 2018).

[43] *See, e.g., MSPA Claims 1, LLC v. Liberty Mutual Fire Ins. Co.*, No. 322 F. Supp. 3d 1273 (S.D. Fla. Aug. 1, 2018) (dismissing with prejudice for lack of Article III standing); *MAO-MSO Recovery II, LLC, et al. v. Progressive Corp.*, No. 1:17-CV-00390-CAB, 2018 WL 3438950 (N.D. Ohio July 17, 2018) (dismissing for lack of Article III standing); *MSP Recovery Claims, Series LLC v. Travelers Cas. and Surety Co.*, No. 17-23628-WILLIAMS, 2018 WL 359930 (S.D. Fla. June 19, 2018) (dismissing for lack of subject matter jurisdiction)*; MAO-MSO Recovery II, LLC, et al. v. State Farm Mut. Auto. Ins. Co.*, No.

Notably, Judge Polster of the MDL Transferee Court in *In Re: National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio.) denied MSP's motion for appointment to executive committee. *See* Exhibit B (July 13, 2018). Ironically, in the motion denied by Court, MSP drew a sharp distinction between its claims as a Medicare Secondary Payor and a Payor of Last Resort (PLR), and the distinct and conflicting claims of other TPPs.[44]

---

1:17-cv-01541-JBM-JEH, 2018 WL 2392827, at *1 (C.D. Ill. May 25, 2018) (dismissing amended complaint with prejudice); *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, Nos. 1:17-cv-23841-PAS, 1:17-cv-24069-PAS, 1:17-cv-24066-PAS, 1:17-cv-24068-PAS, 2018 WL 1953861, at *1 (S.D. Fla. Apr. 25, 2018) (dismissing with prejudice because "Plaintiff's own evidence confirms that it cannot allege facts to show standing"); *MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.*, No. 17-21289, 2018 WL 4956736 (S.D. Fla. Mar. 29, 2018) (dismissing because "Plaintiffs have not established Article III standing"); *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, No. 1:17-cv-23749, 2018 WL 1547600, at *1 (S.D. Fla. Mar. 9, 2018), *appeal dismissed*, 2018 WL 6132508 (11th Cir. Nov. 8, 2018) (dismissing with prejudice for lack of standing after "provid[ing] Plaintiff with four opportunities to cure its defective complaint"); *MAO-MSO Recovery II, LLC, et al. v. Nationwide Mut. Ins. Co.*, Nos. 2:17-cv-263, 2:17-cv-00164, 2018 WL 4941111, at *3-4 (S.D. Ohio Feb. 28, 2018) (dismissing, finding "more substantial allegations are required," finding "solace, however, in the decisions of several other courts that have already dismissed similar complaints."); *MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.*, No. 17-20946, 2018 WL 295527 (S.D. Fla. Jan. 3, 2018) (dismissing based on lack of allegations to show validity of assignments and, therefore, lacking subject matter jurisdiction; *MSPA Claims 1, LLC v. Infinity Auto Ins. Co.*, No. 16-20320, 204 F. Supp. 3d 1346 (S.D. Fla. 2016), *reh'g denied*, No. 16-20320, 2017 WL 4286852 (S.D. Fla. Sept. 27, 2017) (dismissed for lack of standing); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250 (S.D. Fla. 2016), *appeal dismissed*, Nos. 17-11273 & 17-11549, 2017 WL 4386453 (11th Cir. Sept. 19, 2017) (dismissing for lack of standing).; *MSP Recovery, LLC v. Allstate Ins. Co.*, No. 15-20732, 276 F. Supp. 3d 1311 (S.D. Fla. 2017) (dismissed for lack of Article III standing), *appeal dismissed*, No. 17-12355-JJ, 2017 WL 5664843, (11th Cir. Aug. 7, 2017); *MSPA Claims 1, LLC v. United Auto Ins. Co.*, 204 F. Supp. 3d 1342 (S.D. Fla. 2016) (dismissed for lack of Article III standing), *reh'g denied*, No. 16-20486 (S.D. Fla. August 23, 2017); *MSPA Claims 1, LLC v. First Acceptance Ins. Co.*, No. 16-20314, 2016 WL 4523850 (S.D. Fla. Aug. 29, 2016), *reh'g denied*, 2017 WL 3671033 (S.D. Fla. Aug. 24, 2017) (same); *MSPA Claims 1, LLC v. Nat'l Specialty Ins. Co.*, No. 16-20401, 2016 WL 4479372 (S.D. Fla. Aug. 25, 2016) (same), *reh'g denied*, No. 16-20401 (S.D. Fla. April 10, 2018); *MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 16-20460, 2016 WL 4157593 (S.D. Fla. Aug. 3, 2016) (same); *MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 16-20459, 2016 WL4157592 (S.D. Fla. Aug. 3, 2016) (same), *appeal dismissed*, No. 17-11549-DD, 2017 WL 1289321(11th Cir. Sept. 19, 2017); *MAO-MSO Recovery II, LLC, et al. v. American Family Mut. Ins. Co.*, No. 3:17-cv-00175, 2018 WL 835160, at *1, 6 (W.D. Wis. Feb. 12, 2018) (dismissing lawsuit brought by this Plaintiff group: "The court agrees with the growing number of courts that have already dismissed similar complaints for plaintiffs' failure to show that they have standing to sue," and the "concerns raised by defendants about the existence and scope of plaintiffs' assignments are more than theoretical. For all of these reasons, plaintiffs must come forward with more than a bare assertion that they possess the right to sue in these cases."); *MAO-MSO Recovery II, LLC, et al. v. Allstate Ins. Co., et al.*, No. 17-01340-CIV-WOOD, 2018 WL 1565583, at *4 (N.D. Ill. Mar. 30, 2018) (dismissing case based on lack of sufficient assignment allegations where there were no "pleaded facts regarding the identity of the MAO(s) that assigned the rights; which Plaintiff received assignments from which MAO(s); the date, format, or any other characteristic of the assignment; the actual rights assigned; or whether those assignments include claims against the particular Defendants named in the complaint. Indeed, the **same allegations**—without reference to facts particular to any Plaintiff, any MAO, any defendant, or any assignment—**appear in at least ten other lawsuits** brought by Plaintiffs against other insurer defendants and filed in district courts across the country," allowing the filing of an amended complaint) (emphasis in original).

[44] "The MSP Plaintiffs and putative class members have the unique position of being '**payors of last resort**' in that they stand in the same shoes as their respective state Medicaid agencies …. This class of Plaintiffs may be the largest in the litigation, will have a profound effect on many other cases in the litigation, and has absolutely no adequate representation whatsoever on the Plaintiffs' Executive Committee." Also "[a]s 'payors of last resort,' the MSP Plaintiffs and PLR Class are in a separate class of plaintiffs with significantly distinct rights of recovery from the Third-Party Payors, Hospital,

One defendant in this action – Teva USA – has already moved to dismiss the MSP action.[45] Teva USA argues MSP fails to establish standing as it has not alleged facts demonstrating that MSP holds valid assignments to pursue a claim against Teva USA. This, in conjunction with the fact that MSP's complaint purports to sue on behalf on behalf of a class of both consumers and TPPs, is a fatal conflict. Teva USA's motion inherently raises adequacy and typicality concerns. First, no other TPP has a standing issue, which will be litigated with respect to MSP only, and not the TPP class. Second, this motion to dismiss has already put MSP on its own litigation track which already creates undue risk to a putative TPP class and may cause delay.

## II.    STATUS CONFERENCE AGENDA ITEMS

MADA has been collaborating with all plaintiffs in this MDL on matters of common interest and will continue to do so. MADA has also conferred with Defendants and reached stipulations regarding pleading and motion deadlines. MADA's primary concern is that TPPs be independently represented since their interests conflict in part with other plaintiffs. On most administrative, scheduling and case management matters, MADA is confident it can agree with the other plaintiffs.

### A.    PLEADINGS

MADA suggests that the Court enter an order permitting TPPs to file an amended TPP Putative Class Action complaint.

### B.    DIRECT FILING

The Court should enter an Order permitting the parties to directly file cases into the MDL.

---

and Governmental Entity plaintiffs, that are currently represented by the Plaintiffs' Co-Leads, Co-Liaisons, and Plaintiff's Executive Committee. Based on the current composition of the Plaintiffs' leadership structure, however, the MSP Plaintiffs and PLR Class are not being adequately and appropriately represented …." "Moreover, the MSP Plaintiffs and PLR Class's claims for damages are potentially adverse to some of the claims for damages being asserted …." "…. the MSP Plaintiffs and the PLR class are an indispensable and critically important stakeholder in this litigation and will play a pivotal role in any potential global resolution of this matter." Exhibit C, Motion for Leave to File MSP Plaintiffs' Motion for Appointment to a Position on The Plaintiffs' Executive Committee, (emphasis in original) (internal footnote omitted).

[45] *See* the MSP Consumer and TPP Action (Doc. 7).

### C.  TOLLING AGREEMENTS

MADA's Counsel will propose to establish a tolling agreement with Defendants for all unfiled cases. This will help to conserve resources of the parties and the Court.

### D.  ACCEPTANCE OF SERVICE OF COMPLAINTS

MADA's Counsel will confer with foreign Defendants' Counsel regarding acceptance of service of Complaint. MADA served its complaint on all domestic Defendants.

### E.  SUMMARY OF DISCLOSURES AND DISCOVERY UNDERTAKEN

No parties have yet filed Rule 26 initial disclosures. MADA has submitted Freedom of Information Act Requests to the FDA, and received an acknowledgement from the FDA, but no formal discovery has been served at this point.

### F.  CREATION AND MAINTENANCE OF DOCUMENTS

Lowey and Preti maintain cutting edge technological resources necessary to efficiently review voluminous document productions. Lowey and Preti can conduct end-to-end e-discovery in-house, a capability they developed and applied in numerous complex cases that involved millions of documents. Lowey has earned national recognition for its use of advanced technology to save millions in expenses and tens of thousands of hours in review time in other large class actions.[46]

MADA will continue to work with other plaintiffs and will work with Defendants towards an ESI Protocol, including agreements on English, Chinese, and Indian search terms. The ESI Protocol will also address document retention policies, litigation holds, identification of document custodians, identification of potentially relevant documents and information that has been intentionally or inadvertently destroyed or lost.

### G.  STATUS OF PENDING MOTIONS

---

[46] *See Lowey Dannenberg Selects JND eDiscovery and Relativity to Save $2.5 Million in Class Action Case*, BUSINESSWIRE (Nov. 30, 2016, 9:00 AM), https://www.businesswire.com/news/home/20161130005484/en/Lowey-Dannenberg-Selects-JND-eDiscovery-Relativity-Save%20

There are no pending motions that implicate the MADA TPP Class Action.

**H.    JURISDICTIONAL ISSUES**

There are no jurisdictional issues to raise at this time.

**I.    CURRENT OR CONTEMPLATED SETTLEMENT DISCUSSIONS**

While Lowey and Preti have successfully resolved complex, multiparty cases via settlement, negotiation and mediation, they believe such discussions in this action are premature at this juncture.

**J.    TIMING AND PROCEDURE OF RULE 12 MOTIONS**

The Court should direct the parties to meet and confer regarding creation and submission of a proposed Case Management Order that will include, *inter alia*, the timing and procedure for amended pleadings and briefing on any Rule 12 motions.

**K.    TIMING AND PROCEDURE FOR RULE 26(a)(1) INITIAL DISCLOSURES**

Rule 26(a)(1) initial disclosures will be addressed by the proposed Case Management Order.

**L.    SCOPE AND TIMING OF DISCOVERY**

The above-referenced Case Management Order will also address the scope and timing of discovery, including general interrogatories, document requests, corporate deposition notices, and admissions. MADA intends to conduct focused discovery, crafted to investigate the specific issues in this litigation, but taking into account factors in this litigation, such as numerous foreign defendants, numerous Valsartan products at issue, the relevant time period at issue, and the likelihood of extensive regulatory files from each Defendant related to the contaminated pharmaceuticals.

**M.    CONFIDENTIALITY ORDER**

There will be a need for a Confidentiality Order in this matter. MADA will confer with other plaintiffs and Defendants' Counsel to submit a proposed protective order in accordance with Local Civil Rule 5.3 and Appendix S thereto.

### N.    ANTICIPATED DISCOVERY ISSUES AS TO FOREIGN DEFENDANTS

MADA's Counsel will confer with foreign Defendants' Counsel regarding potential discovery issues, including translation of documents, location of corporate depositions, and translation services at depositions.

### O.    NEED FOR DIFFERENT LITIGATION TRACKS

As stated above, MADA submits that a separate TPP track is necessary. The TPP case should be coordinated as much as possible with the injury and consumer plaintiffs' cases to streamline discovery, promote judicial economy, and promote a resolution of the entire MDL.

### P.    IS A "TUTORIAL" NECESSARY?

A tutorial is not necessary at this time.

### Q.    COURT WEBSITE

MADA suggests the Court create a website that will contain information about this MDL for litigants, attorneys, courts and other interested persons to access. The website should contain contact information for Court personnel and attorneys, as well as important filings and Orders.

### R.    COMMON BENEFIT FUND AND ORDER

Once the Court rules on a structure, Plaintiffs will meet and confer and establish a protocol for sharing common costs and will advise the Court on the need for a Common Benefit Fund.

A proposed order addressing the procedure Plaintiff's Counsel shall use for maintaining time and expense records shall follow.

### S.    BELLWETHER TRIALS

MADA does not have a position on bellwether trials.

T.    **FUTURE STATUS CONFERENCES**

MADA suggests that future status conferences be held approximately every 60 days. Bi-monthly status conferences will ensure that the parties move the litigation forward efficiently.

Dated: March 20, 2019                          Respectfully submitted,


By: */s/ Peter D. St. Phillip, Jr.*
Peter D. St. Phillip, Jr.
Uriel Rabinovitz
Deborah Rogozinski
Jennifer Risener
**LOWEY DANNENBERG, P.C.**
44 S. Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
pstphillip@lowey.com
urabinovitz@lowey.com
drogozinski@lowey.com
jrisener@lowey.com

Gregory P. Hansel
Sigmund D. Schutz
Elizabeth F. Quinby
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**
P.O. Box 9546
Portland, ME 04112
Tel.: 207-791-3000
ghansel@preti.com
sschutz@preti.com
equinby@preti.com

*Proposed Interim Class Counsel and Counsel for Plaintiff Maine Automobile Dealers Association, Inc. Insurance Trust*

## <u>CERTIFICATE OF SERVICE</u>

I, Uriel Rabinovitz, hereby certify that I caused the foregoing to be filed through the Court's electronic filing system on March 20, 2019. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

 /s/Uriel Rabinovitz

Uriel Rabinovitz