## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| IN RE: VALSARTAN PRODUCTS | : | HON. ROBERT B. KUGLER |
| LIABILITY LITIGATION | : | |
| | : | Civil No. 19-2875 (RBK/JS) |
| This document relates to: *All Actions* | : | |
| | : | |
| | : | |

## JOINT SUBMISSION AGENDA ITEMS
## PURSUANT TO CASE MANAGEMENT ORDER NO. 1

The parties, through Plaintiffs' and Defendants' proposed leadership/liaison counsel,[1] hereby address the issues presented in Case Management Order No. 1, paragraph 13:

> *a.* **Appointment of liaison counsel and Steering and/or Executive Committees.**

**PLAINTIFFS' POSITION:**

Plaintiffs propose four co-lead counsel, comprised of 2 attorneys representing personal injury clients (Adam Slater and Daniel Nigh) and 2 attorneys representing economic injury/class clients (Ruben Honik and Conlee Whiteley). A Plaintiffs' Executive Committee (PEC) would consist of the co-lead counsel plus attorneys from 7 additional firms. There would also be two separate, but coordinating, Plaintiffs' Steering Committees (PSCs) comprised of a total of 18 attorneys. Additionally, Plaintiffs propose Adam Slater to serve as liaison counsel to the Court and defense counsel, and David Stanoch to serve as liaison counsel to and among plaintiffs' counsel. Plaintiffs believe that this proposed structure will allow Plaintiffs to efficiently fund and conduct the litigation, and to the extent unique or varied issues exist within the economic and

---

[1] Counsel for all Plaintiffs except one join in this submission. *See infra* fn.2.

1

non-economic segments of the litigation, those issues can be addressed within this structure.  The

proposed members are as follows:

<u>Plaintiffs' Co-lead Counsel</u>:

Ruben Honik
Golomb & Honik
1835 Market Street, Ste. 2900
Philadelphia, PA 19103
Phone (215) 985-9177
rhonik@golombhonik.com

Daniel Nigh
Levin, Papantonio
316 South Baylen Street
Pensacola, FL 32502
Phone: (850) 435-7013
dnigh@levinlaw.com

Adam Slater
Mazie Slater
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone (973) 228-9898
aslater@mazieslater.com

Conlee Whiteley
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

<u>Plaintiffs' Liaison Counsel</u>:

Adam Slater, Liaison to Court and defense counsel.
Mazie Slater
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone (973) 228-9898
aslater@mazieslater.com

David Stanoch, Liaison to and among plaintiffs' counsel.

2

Golomb & Honik
1835 Market Street, Ste. 2900
Philadelphia, PA 19103
Phone (215) 985-9177
dstanoch@golombhonik.com

Plaintiffs' Executive Committee:

Marlene Goldenberg, Goldenberg Law; Behram Parekh, Kirtland & Packyard; Mikal Watts, Watts, Guerra LLP; George Williamson, Farr Law Firm; Brett Vaughn; Hollis Law Firm; Andres Rivero, Rivero Mestre LLP; John Davis, Slack Davis Sanger, LLP.

Plaintiffs' Economic Claims PSC:

Joseph Marchese, Bursor & Fisher, P.A.; Scott Morgan, Morgan Law Firm; John Sawin, Sawin Law Firm, Ltd.; Paul Geske, McGuire Law, PC.

Plaintiffs' Personal Injury PSC:

Jeff Gibson, Wagner Reese, LLP; Rosemarie Bogdan, Martin, Harding & Mazzotti, LLP; Steve Babin, Babin Law, LLC; Ashleigh Raso, Meshbesher & Spence; Samuel Anyan, Jr., The Cochran Firm; Annesley DeGaris, DeGaris and Rogers, LLC; Emily Jeffcott, Morgan & Morgan; Harold McCall, Wayne Wright LLP; John Boundas, Williams Kherkher; Jessica Perez, Pendley, Baudin & Coffin; Alyson Oliver, Oliver Law Group; Charisse Cleofe, Kiesel Law; Jon Mann, Pittman, Dutton & Hellums; and David Hobbs, Fleming Nolen Jez, L.L.P.

## DEFENDANTS' POSITION:

Defendants have agreed to the formation of a four-person Executive Committee. The members of Defendants' Executive Committee are:

1. Seth A. Goldberg
   DUANE MORRIS LLP
   30 South 17th Street
   Philadelphia, PA  19103-4196
   Phone: (215) 979-1175
   sagoldberg@duanemorris.com

2. Lori G. Cohen
   GREENBERG TRAURIG LLP
   Terminus 200
   3333 Piedmont Road, NE, Suite 2500
   Atlanta, GA  30305
   Phone: (678) 553-2385
   cohenl@gtlaw.com

3. Clem C. Trischler
PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
38th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA  15219
Phone: (412) 263-1816
cct@pietragallo.com

4. Richard W. Smith
WILEY REIN LLP
1776 K Street N.W.
Washington, DC  20006
Phone: (202) 719-7468
rwsmith@wileyrein.com

In addition to this Executive Committee, Defendants propose the appointment of Seth Goldberg and Jessica Priselac of Duane Morris as Defendants' Liaison Counsel.

**b.      *Need for liaison groups(?).***

**PLAINTIFFS' POSITION:**

Plaintiffs believe that informal liaison groups can be formed and function as the litigation advances and the varied issues become more defined, without the need to designate specific groups, at least at the outset.

**DEFENDANTS' POSITION:**

Defendants to this MDL are entities involved in the bringing of certain medications in the class of angiotensin II receptor blockers (ARBs) to the U.S. market. Each Defendant falls into one or more groups: (i) manufacturers of active pharmaceutical ingredient (API); (ii) manufacturers of drug product in finished dosage form; (iii) distributors; (iv) re-packagers; and (v) retailers. Although Defendants are in different groups depending on the role they play in the manufacture, distribution, and sale of ARBs, Defendants do not presently request the formation of separate defense liaison groups. Of course, as the case proceeds, Defendants and their

Executive Committee reserve the right to form liaison groups if warranted under changing circumstances.

      *c.*      ***Status of any related State proceedings.***

The only state court valsartan filings known to the parties are the three listed on attached Schedule 1.

      *d.*      ***Pleadings – possible Consolidated Master Amended Complaint(s) and response.***

          • ***Short Form Complaint and response.***

**PLAINTIFFS' POSITION:**

Plaintiffs intend to file consolidated master complaints for the economic classes, individual and third-party payors, as well as for the medical monitoring classes, and individual personal injury claims and suggest that these master complaints be filed within 30 days of this Court's ruling establishing leadership for both Plaintiffs and Defendants.  Plaintiffs agree that any Motions to Dismiss, Oppositions and Replies can follow within the time frames suggested by Plaintiffs in Section (m) below.

Plaintiffs suggest that a Short Form Complaint be utilized for the personal injury claims, but that there is no need for a Short Form Complaint for the economic claims, or medical monitoring claims, particularly given Defendants' suggestion that they do not need to file answers to Short Form Complaints.  The information sought by Defendants can be obtained through Plaintiffs' Rule 26 disclosures.

Plaintiffs further suggest that the parties begin exchanging limited core discovery within 10 days of the establishment of ESI protocol, parallel to the Motion to Dismiss briefing schedule. Defendants' suggestion in Section (n) that this begin after arguments on the Motion to Dismiss in

October 2019 – September 2020 with full fact discovery starting in September 2020 is a delayed bifurcation of discovery which will not lead to prompt and fair resolution of the matters presently before the Court.

### DEFENDANTS' POSITION:

At present, there have been 42 lawsuits transferred into the MDL. Based upon the type of claims involved, those 42 lawsuits fall into three general categories:

1. Personal-injury actions brought by individuals claiming to have developed some form of cancer through the ingestion of valsartan-containing medication;

2. Consumer class actions asserting claims for economic damages, and, in some instances, medical monitoring relief as well, relating to the purchase of what is alleged to be impurity-containing ARB medications; and

3. Third-party payors seeking reimbursement for amounts paid by insurers or Medicare Advantage organizations for valsartan and other ARB medications.

Only two cases of the 42 cases filed fall into the third category—the action filed on behalf of MSP Recovery Claim Series, LLC (No. 1:19-cv-6830) and the action filed on behalf of the Maine Automobile Dealers Association, Inc. Insurance Trust (No. 1:19-cv-2431). In the action brought on behalf of MSP Recovery Claim Series, LLC, one or more defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) before the case was transferred into this MDL. Defendants believe that each of these third party payor cases may be disposed of or limited by means of motions to dismiss and should proceed on its own path.  As such, Defendants do not believe a Master Complaint is necessary or appropriate for the third-party payor claims.

All of the remaining cases are either personal-injury actions (19 total) or putative consumer class actions (21 total). Because these cases involve wide-ranging allegations and theories of liability, Defendants propose that separate Master Complaints be filed for Plaintiffs' consumer class actions and personal-injury claims. Once Plaintiffs file Master Complaints

detailing the precise nature and basis of their personal-injury claims and consumer class actions, the Court should order briefing, argument, and disposition of early motions to dismiss each Master Complaint. Doing so would serve efficiency and economy by eliminating nonviable claims and narrowing the issues on which discovery may be had before discovery actually commences. Moreover, the Master Complaint process will avoid the need for repetitive motion practice on related issues.  Defendants' consent to the filing of Master Complaints, however, should not be construed as a waiver of any defenses—including, but not limited to, personal jurisdiction, venue, and those protections afforded under *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 39 (1998). Nor should Plaintiffs' filing of Master Complaints be treated as the initiation of an original action in the transferee forum. Instead, the Master Complaints are to be treated as an administrative device to aid efficiency and economy. As discussed in greater detail in Section (e), *infra*, the district court encompassing the place of a Plaintiff's residence at the time the Plaintiff's Short Form Complaint is filed shall be treated as the transferor court for purposes of jurisdictional and choice-of-law analyses. Otherwise, Defendants reserve the right to object to the filing of Master Complaints and the establishment of procedures for direct filing.

Claims set forth in Master Complaints that survive dismissal, if any, should be answered in Master Answers prepared by the Defendants and filed pursuant to a deadline set by the Court after rulings on 12(b) motions. The purpose of Master Answers is to foster efficiencies by eliminating the need for redundant pleadings. Individual Plaintiffs in both class actions and personal injury cases should then file Short Form Complaints setting forth Plaintiff's state of residence and specific facts supporting their individual claims in a manner to be agreed upon between the parties or determined by the Court. Defendants suggest that individual answers to

Short Form Complaints are unnecessary, and that all allegations therein can be deemed denied unless otherwise stated.

    *e.*    ***Direct Filing.***

    **PLAINTIFFS' POSITION:**

Plaintiffs believe that a direct filing order will promote efficiency.  It is proposed that the order provide the option for a plaintiff to waive *Lexecon* rights in the filing.

    **DEFENDANTS' POSITION:**

In order to eliminate delays associated with the transfer to this Court of cases filed in or removed to other federal district courts, and to promote judicial efficiency, Defendants do not object to the establishment of procedures to allow the direct filing of future complaints in this MDL, provided that sufficient safeguards are in place to avoid potential issues with forum shopping and choice of law. Those procedural safeguards should include a stipulation that:

1. Each case directly filed in MDL No. 2875 that emanates from a district outside the District of New Jersey will be centralized for pretrial proceedings only;

2. Upon completion of all applicable pretrial proceedings, the MDL court will, pursuant to 28 U.S.C. § 1404(a), transfer that case to the federal district court in the district where Plaintiff resided at the time of his or her alleged injuries;

3. Defendants do not agree to waive the protections afforded under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998);

4. Defendants expressly reserve any and all defenses including, in particular, any objections to lack of personal jurisdiction;

5. Direct filing in MDL No. 2875 will have no impact on the choice of substantive law that otherwise would apply to an individual case originally filed in a district court of proper venue and transferred to this Court pursuant to 28 U.S.C. § 1407; and

6. The district court encompassing the place of a Plaintiff's residence at the time the Plaintiff's Short Form Complaint is filed shall be treated as the transferor court for purposes of jurisdictional and choice-of-law analyses.

Following service of Master Complaints, individual Plaintiffs can be permitted to file Short Form Complaints. As noted above, Defendants suggest that individual answers to Short Form Complaints are unnecessary, and that the allegations therein can be deemed denied unless otherwise stated.

### f.   Tolling Agreements.

The Parties do not believe that a tolling agreement is necessary at this time.

### g.   Acceptance of service of complaints.
- ### Streamlined service of process

**PLAINTIFFS' POSITION:**

Plaintiffs believe that for those Parties who have not been previously served, the efficiency of this litigation will be promoted through the implementation of a simplified process for the service of process via email and that to the extent any Party to the litigation has retained counsel, counsel shall accept service by email on behalf of that Party.

**DEFENDANTS' POSITION:**

There currently are 42 cases involving 39 Defendants in this MDL. To date, there has been no service effectuated in the vast majority of these cases.  Should the Court find it helpful, the Defendants can furnish a listing of cases in which service of process has not been made, or has been only partially made as to certain Defendants, but not all, in a given case. As a fundamental matter of due process, Defendants insist that service of process be effectuated pursuant to Rule 4 of the Federal Rules of Civil Procedure and that foreign Defendants be served in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"). *See In re Benicar Olmesartan Products Liability Litigation*, Civil No. 15-2606 (Dkt. No. 20).

However, because Defendants are proposing the filing of Master Complaints for the putative consumer class actions and personal-injury cases, Defendants are willing to stay the time for effectuating service in all pending cases until the entry of a case management order that will establish deadlines and timeframes for the filing and service of Master Complaints. Those Master Complaints should then be served in accordance with Rule 4 of the Federal Rules of Civil Procedure and in accordance with the Hague Service Convention on all foreign Defendants that require service to made pursuant to its provisions.

Once Master Complaints have been served in accordance with Rule 4 and the Hague Service Convention, subsequently filed Short Form Complaints may be served directly upon Defendants' counsel of record as contemplated by Rule 5(b)(1) of the Federal Rules of Civil Procedure.

> **h.      Summary of disclosures and discovery already undertaken in these cases and how such discovery shall be served.**

There has been no discovery taken in connection with any of the cases transferred to this MDL proceeding, although certain Defendants have filed corporate disclosures and Rule 26(a)(1) disclosures in a few individual cases, and most current Defendants filed corporate disclosures in proceedings before the Judicial Panel on Multidistrict Litigation.

> **i.      Creation and maintenance of documents/data storage repository.**

> **PLAINTIFFS' POSITION:**

Plaintiffs have begun the process of evaluating various potential document/data storage repositories, and will need information from the Defendants regarding the types and formats of documents that will be produced in order to most efficiently determine the appropriate platform.

**DEFENDANTS' POSITION:**

Defendants do not believe that a common documents/data storage repository is necessary or appropriate. Instead, each Defendant will be responsible for collecting and maintaining documents and data produced by that party. This approach will minimize any potential risk for the inadvertent or unnecessary disclosure of proprietary or competitively sensitive information.

> **j.**     ***Status of any pending dispositive or non-dispositive motions.***

**PLAINTIFFS' POSITION:**

Motions to quash service of the summons and complaint have been filed by the defense in two cases, *Silberman v. Solco Healthcare US, LLC, et al.*, Case No: 3:19-cv-1612 (D.N.J. 2019) (class action, economic reimbursement), and *Harper v. Zhejiang Huahai Pharmaceutical Co. LTD, et al.*, Case No. 3:19-cv-01618 (D.N.J.) (individual action for personal injuries).  See also Schedule 2.

**DEFENDANTS' POSITION:**

A listing of pending motions is attached in Schedule 2.  The action filed on behalf of MSP Recovery Claim Series, LLC (No. 1:19-cv-6830), is already subject to a motion to dismiss, and briefing for that action can be completed by other Parties independent of the briefing schedule set forth below, *see* infra (n), for Master Complaints. The action filed by Maine Automobile Dealers Association, Inc. Insurance Trust (No. 1:19-cv-2431), should follow the briefing schedule set forth above for Master Complaints.

> k.     ***Jurisdictional issues (if any).***

**PLAINTIFFS' POSITION:**

Plaintiffs do not anticipate any jurisdictional issues at this time.

**DEFENDANTS' POSITION:**

"[D]ue process requires . . . that in order to subject a defendant to a judgment . . . he have certain minimum contacts with [a state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 61 S. Ct. 339, 343 (1941)). Since *Int'l Shoe Co.*, courts have recognized two types of jurisdiction: (i) general (or "all-purpose") and (ii) specific (or "case-linked"). *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 137 S. Ct. 1773, 1779–80 (2017).

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

*Goodyear Dunlop Tires Op'ns., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal citations, quotations, and alterations omitted).

Given the number of Defendants, including foreign Defendants, and transferor courts involved in this MDL, the issue of personal jurisdiction is complex. "[I]n cases that are consolidated for pretrial purposes under 28 U.S.C. § 1407, a transferee court can exercise personal jurisdiction only to the same extent as the transferor court could." *In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 300 (E.D.N.Y. 2002). As such, in analyzing the existence of personal jurisdiction, "the transferee court must apply the law of the transferor forum to determine personal jurisdiction." *In re Papst Licensing GMBH & Co. KG Litig.*, 602 F. Supp. 2d 10, 14 (D.D.C. 2009). Defendants are still evaluating whether personal jurisdiction can

be established in the transferor forums. Defendants, therefore, reserve their right to include personal jurisdiction challenges in their anticipated Rule 12(b) motions.

l.     *Any current or contemplated settlement discussions and the Court's role.*

**PLAINTIFFS' POSITION:**

Plaintiffs believe that setting the groundwork for, and initiating early settlement discussions, is appropriate, especially with regard to the economic claims, and that early discovery should prioritize the production of the data needed to structure resolution. Plaintiffs welcome the Court's involvement in the settlement process.

**DEFENDANTS' POSITION:**

The Parties have not yet engaged in settlement discussions, and it is Defendants' position that any such discussions would be premature and ineffective until after Rule 12(b) motions and, in some cases Rule 23 motions, have been resolved and the scope of the MDL is more precisely delineated. Defendants are open to the creation of a settlement committee, but, again, believe it presently is premature to do so. At the appropriate time, Defendants have no objection to the Court's involvement in the settlement process.

m.     *Timing and procedure for Rule 12 motions.*

**PLAINTIFFS' POSITION:**

Consolidated Amended Complaints:

30 days from order establishing leadership counsel for Plaintiffs and Defendants

Motion to Dismiss:

45 days after Consolidated Amended Complaints are filed

Opposition to Motion to Dismiss:

45 days after Motions to Dismiss are filed

Replies to Motion to Dismiss:

28 days after Opposition to Motion to Dismiss are filed

As set forth above, all named Defendants should accept service by email, reserving right to raise all other defenses, including personal jurisdiction and file any desired Rule 12 motions within these deadlines.

**DEFENDANTS' POSITION:**

As indicated above, Defendants are proposing the filing of Master Complaints in the personal-injury and consumer class actions. Accordingly, the timing for the filing of Rule 12 motions in those categories of actions should be stayed pending the filing of those Master Complaints. Defendants suggest the following schedule for resolution of Rule 12 motions.

1. April 26, 2019: Deadline for Plaintiffs to file Master Complaints in the personal-injury and consumer class actions

2. June 14, 2019: For those Defendants who have been served, deadline to file motions to dismiss the Master Complaints

3. July 26, 2019: Deadline for Plaintiffs to respond to motions to dismiss

4. August 23, 2019: Deadline for Defendants to reply in support of motions to dismiss

5. September or October 2019: At the Court's convenience and discretion, oral argument on motions to dismiss

The action filed on behalf of MSP Recovery Claim Series, LLC (No. 1:19-cv-6830), is already subject to a motion to dismiss, and briefing for that action can be completed by other Parties independent of the briefing schedule. The action filed by Maine Automobile Dealers

Association, Inc. Insurance Trust (No. 1:19-cv-2431), should follow the briefing schedule set forth above for Master Complaints.

Recognizing that service abroad can require additional time, a provision should be included in future case management orders allowing foreign Defendants served under the Hague Service Convention to join in motions to dismiss filed by other parties if those foreign Defendants have been served after the proposed June 14, 2019, filing deadline. Should those foreign Defendants raise any unique Rule 12 issues, including objections to personal jurisdiction, those motions should be filed within thirty days of service under the Hague Service Convention.

   **n.**   ***Timing and procedure for Rule 26(a)(1) initial disclosures.***

      **PLAINTIFFS' POSITION:**

Plaintiffs propose the production of Plaintiff Profile Forms, within 45 days of the filing of (1) each personal injury complaint disclosing the core information necessary to allow the Court and the parties to understand the scope of the claims, including the timing/duration, and quantity of the medication taken, the manufacturer(s) of the medication, and the injuries claimed, including the primary and any secondary cancer location(s), and (2) each economic injury class action complaint, disclosing the core information necessary to allow the Court and the parties to understand the scope of the claims.

Plaintiffs request the rolling production of defendants' initial disclosures, pursuant to an ESI protocol to be negotiated, including the categories set forth in Rule 26(a)(1), and information sufficient for the parties and the Court to understand the timeline of relevant events, the details of how the contamination occurred, the nature and quantity of the contamination, the distribution process, the quantity and sale prices of the medication, and the identification of each person with

relevant knowledge and the scope of that knowledge; all beginning with the manufacturing location through to sale in the United States.

**DEFENDANTS' POSITION:**

Defendants do not believe that any discovery is appropriate at this time given the numerous issues discussed elsewhere that are best addressed in motion practice, and note that the scope of appropriate discovery for each defendant will vary, depending on each entity's involvement and role. To ensure discovery is proportional to the needs of each case and each class of cases, the parties should agree to a structured approach in which threshold issues for each type of claim are placed in the foreground, with Plaintiffs providing evidence of positive product identification and proof of use prior to any discovery of Defendants.

Due to Plaintiffs' stated intention to seek early discovery, and in the spirit of cooperation, Defendants have proposed below certain "core discovery" for production on a parallel track while the parties complete Master Complaint motion practice as well as motion practice in the two third-party payor cases. Defendants do not waive any rights to object to discovery requests, and, pending decision on Rule 12 motions to dismiss, note that there is no basis for Plaintiffs to conduct discovery at this time.

Defendants do not anticipate the traditional Rule 26(a)(1) initial disclosures are appropriate for all defendants. Instead, Defendants have proposed a phased discovery schedule designed to streamline the discovery process and minimize associated costs for all parties. Defendants anticipate the following distinct litigation stages:

- Phase I: Pending Motions/Master Complaint Briefing – *March 2019 through October 2019*
  - *See* Section (m), *supra*, for proposed deadlines
- Phase II: Preliminary Discovery and Class Certification Briefing – *October 2019 through September 2020*

16

- o Plaintiffs must provide positive product identification and proof of use within 30 days of the Court's ruling on Rule 12 motions, or within 20 days of docketing in the MDL for cases filed or transferred after Rule 12 motions have been resolved. If any Plaintiff is unable to establish positive product identification or proof of use within that time period, the Court shall issue an order to show cause why that Plaintiff's case should not be dismissed.

  - o Agreed "core documents" to be produced by Corporate Defendants

  - o Discovery related to class certification questions

  - o Class certification briefing and hearing

- Phase III: Full Fact Discovery – *September 2020 through May 2021*

  - o Corporate Discovery on Defendants

  - o Discovery on Remaining/Vetted Plaintiffs

- Phase IV: Expert Discovery – *May 2021 through October 2021*

In lieu of Rule 26(a)(1) initial disclosures, and subject to the entry of an appropriate protective order, Defendants propose the production of certain "core documents" by the API and Finished Dose Manufacturers named in the Master Complaints during Phase II, which will consist of the following:

**For API Manufacturers:**

1. ANDA File; and

2. The Drug Master File; and

3. Communications with the FDA relating to the valsartan and/or other ARB recalls;

4. Supplement to Drug Master File re manufacturing process approved by FDA in 2012-13.

**For Finished Dose Manufacturers:**

1. The ANDA file for each involved finished dosage formulation; and

2. Communications with the FDA concerning the ARB recalls.

17

3.  A list of customers to whom each manufacturer sells.

Because the distributors, retailers, repackagers are not involved in the manufacturing process, they will not have information relevant to the alleged impurities, and thus core discovery from those groups of Defendants is not necessary to advance the litigation as to the liability issues raised by Plaintiffs' claims.  Moreover, the core discovery proposed above is not appropriate for the two third-party payor cases.  Rule 26(a)(1) disclosures as to these defendants shall be filed within 30 days of the Court's ruling on Rule 12 motions.

o.      ***Scope and timing of discovery.  Should there be any limitations on interrogatories, document requests, or depositions?***

**PLAINTIFFS' POSITION:**

Plaintiffs are in the process of preparing initial sets of paper discovery requests, and a focused group of 30(b)(6) deposition notices.   No limitation should be discussed unless and until there is an actual need to have such a discussion.  Plaintiffs also believe that discovery should commence without regard to the Defendants' potential filing of motions to dismiss, so that discovery is not delayed at the outset.

**DEFENDANTS' POSITION:**

With regard to the scope and timing of discovery, *see* Section (n), *supra*.

p.      ***Confidentiality Order (consult Local Civil Rule 5.3 and Appendix S).***

**PLAINTIFFS' POSITION:**

Plaintiffs will agree to a narrowly circumscribed protective order, if Defendants can identify specific narrow categories and actual examples of documents that are legitimately entitled to protection.  Plaintiffs will not agree to broad definitions of protected categories of

18

information.  Plaintiffs believe that all or the overwhelming majority of the information to be produced relative to the issues in this litigation is not subject to protection or confidentiality, especially as many details have already been publicly disseminated and will continue to be released, and due to the public health considerations at issue.

### DEFENDANTS' POSITION:

During the course of this litigation, Defendants anticipate that there will be requests to produce materials relating to the formulation, development, testing, manufacture, and sale of currently marketed ARB medications. Much of this information is confidential, proprietary, and competitively sensitive. Therefore, Defendants will seek the entry of a Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure that will limit the dissemination of proprietary documents and protect the confidentiality thereof. The Parties are negotiating a joint proposed Protective Order and will submit a joint draft, or competing drafts, at the Case Management Conference for the Court's consideration.

### *q.   Anticipated discovery issues as to foreign defendants.*

- ### *Translation of documents/ESI.*

### PLAINTIFFS' POSITION:

A meet and confer process is needed to determine what issues may exist.

### DEFENDANTS' POSITION:

1. Any employee or designee of a foreign Defendant where a deposition is sought should be deposed in the country in which the deponent resides;

2. Employees or designees of a foreign defendant should have the right to testify in his or her native language. Where a party or witness indicates that a party will testify in a language other than English, the party producing the witness should select the interpreter for the deposition and the interpreter selected by the party/deponent shall be the interpreter of record for the deposition.  That interpreter shall swear under oath

19

or affirm prior to each deposition to provide honest and truthful interpretations and translations;

3.  In connection with any deposition in which the native language of the deponent is a language other than English, a protocol should be established providing, among other things:

    a.  All questions, objections, and colloquy will be translated into the deponent's native language and the answers may be given in that native language and, in such case, will be translated into English;

    b.  When notice has been provided that the party/deponent will require an interpreter for the deposition, the party noticing the deposition will have the right to retain and use a check interpreter. The party taking the deposition shall be responsible for payment of the fees and services of any check interpreter;

    c.  At any deposition in which the native language of the deponent is a language other than English, no document should be marked for use at such deposition unless the document is accompanied by a certified translation of the document into the witness's native language;

    d.  Documents produced by a foreign Defendant shall be produced in the language in which they are kept in the ordinary course of business. Each foreign Defendant shall have the right, at its discretion, to obtain and prepare certified translation of non-English documents. If certified translations are obtained, they shall be produced.

    *r.*    ***Need for different litigation tracks?***

    **PLAINTIFFS' POSITION:**

Plaintiffs anticipate that all actions can be coordinated initially and through the next several months, during which time all Parties will work together to put in place an ESI order, set up a document repository, determine search terms, databases and custodians, and jointly undertake initial discovery.  Thereafter, there will be two litigation tracks, one for personal injury claims and the other for the class economic damages claims, which will fairly and efficiently advance the litigation.[2]

---

[2]Third-Party Payor MSP Recovery Claim Series, LLC (No. 1:19-cv-6830) ("MSP") agrees with this proposal. Third-Party Payor Maine Automobile Dealers Association, Inc. Insurance Trust (No. 1:19-cv-2431) ("MADA")

**DEFENDANTS' POSITION:**

*See* Section (n), *supra*. The action filed by Maine Automobile Dealers Association, Inc. Insurance Trust (No. 1:19-cv-2431), should follow the briefing schedule set forth above for Master Complaints. The action filed on behalf of MSP Recovery Claim Series, LLC (No. 1:19-cv-6830), is already subject to a motion to dismiss, and briefing for that action can be completed by other Parties independent of the briefing schedule set forth above for Master Complaints. Should any third-party payor claims survive, discovery in those matters may need to proceed on separate tracks, but should also be coordinated with discovery pursuant to the Master Complaints if issues overlap.

      **s.**      ***Whether a "tutorial" is needed or necessary in this MDL.***

The parties agree that it is premature for a "tutorial" or science day at this early stage in the litigation process.

**PLAINTIFFS' POSITION:**

Plaintiffs propose that this issue be raised further along in the litigation.

**DEFENDANTS' POSITION:**

While Defendants agree that it may be premature for a science day at this stage of the litigation, because this litigation will involve complex scientific issues—such as the health effects, if any, of ingestion of trace amounts of NDMA and NDEA and the therapeutic efficacy of ARBs, Defendants believe that an "Information Day" during which the parties may provide an overview of the basic facts involved in the case in a non-adversarial manner and format early in

submitted a separate case management proposal and motion to appoint interim lead counsel for third-party payers, but has indicated that "the TPP case should be coordinated as much as possible with the injury and consumer plaintiffs' cases to streamline discovery, promote judicial economy and promote a resolution of the entire MDL". D.E. 34 (3/20/19).

the litigation, to be followed by a science day later in the litigation, might be useful to the Court and the parties. Defendants also propose that the Court allow Defendants to make a presentation at the initial Case Management Conference on March 27, 2019, illustrating the roles played by the various Defendants in bringing ARBs to the U.S. market.

### t.    Court Website

The Parties believe that a Court website can be beneficial and will cooperate to aid the Court in establishing a website.

### u.    Common Benefit Fund and Order.

- ### Reporting requirements

**PLAINTIFFS' POSITION:**

Plaintiffs believe that a comprehensive common benefit order should be entered early in the litigation, to place all Plaintiffs' counsel and Plaintiffs on notice that this process will be implemented. Plaintiffs intend to implement a reporting process requiring reporting of time and expenses on a regular, with periodic reviews to identify any errors or irregularities and avoid uncertainly at the end of the process.

**DEFENDANTS' POSITION:**

Defendants acknowledge that issues pertaining to the Common Benefit Fund are, by and large, more properly addressed by Plaintiffs and the Court. Nonetheless, Defendants request the opportunity to review and provide feedback concerning any contemplated Common Benefit Fund and Order and reserve the right to file objections thereto before it is entered by the Court.

### v.    Bellwether trials.

**PLAINTIFFS' POSITION:**

Bellwether trials for the personal injury claims will be a useful part of this litigation, with the characteristics of cases to be selected and the selection process to be determined as the contours of the litigation become more refined.

## DEFENDANTS' POSITION:

Defendants believe that, at this early stage, it is premature to address issues relating to the suitability, selection, and scheduling of bellwether trials.

> **w.**     ***Any other measures necessary to promote the prompt, efficient and just management of the case.***

The Parties agree that there is nothing additional at this time.

> **x.**     ***Future status conferences.***

The Parties agree that regular status conferences, monthly at the outset, should be conducted.

Dated: March 20, 2019

Submitted,

| /s/ Ruben Honik | /s/ Seth A. Goldberg |
|---|---|
| Ruben Honik | Seth A. Goldberg |
| Golomb & Honik | DUANE MORRIS LLP |
| 1835 Market Street, Ste. 2900 | 30 South 17th Street |
| Philadelphia, PA 19103 | Philadelphia, PA  19103-4196 |
| Phone (215) 985-9177 | Phone: (215) 979-1175 |
| rhonik@golombhonik.com | sagoldberg@duanemorris.com |
| /s/ Daniel Nigh | /s/ Lori G. Cohen |
| Daniel Nigh | Lori G. Cohen |
| Levin, Papantonio | GREENBERG TRAURIG LLP |
| 316 South Baylen Street | Terminus 200 |
| Pensacola, FL 32502 | 3333 Piedmont Road, NE, Suite 2500 |
| Phone: (850) 435-7013 | Atlanta, GA  30305 |
| dnigh@levinlaw.com | Phone: (678) 553-2385 |
| | cohenl@gtlaw.com |

| | |
|---|---|
| /s/ Adam Slater<br>Adam Slater<br>Mazie Slater<br>103 Eisenhower Pkwy, 2nd Flr.<br>Roseland, NJ 07068<br>Phone (973) 228-9898<br>aslater@mazieslater.com | /s/ Clem C. Trischler<br>Clem C. Trischler<br>PIETRAGALLO GORDON ALFANO BOSICK &<br>RASPANTI, LLP<br>38th Floor, One Oxford Centre<br>301 Grant Street<br>Pittsburgh, PA  15219<br>Phone: (412) 263-1816<br>cct@pietragallo.com |
| /s/ Conlee Whiteley<br>Conlee Whiteley<br>Kanner & Whiteley, LLC<br>701 Camp Street<br>New Orleans, LA 70130<br>Phone: (504)-524-5777<br>c.whiteley@kanner-law.com | /s/ Richard W. Smith<br>Richard W. Smith<br>WILEY REIN LLP<br>1776 K Street N.W.<br>Washington, DC  20006<br>Phone: (202) 719-7468<br>rwsmith@wileyrein.com |

24

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing was served this 20th day of March, 2019 on all counsel of record via the CM/ECF system of the United States District Court for the District of New Jersey.

<i>/s/ David J. Stanoch</i>
David J. Stanoch