# EXHIBIT C

**MAZIE SLATER KATZ & FREEMAN, LLC**
COUNSELLORS AT LAW
103 Eisenhower Parkway
Roseland, NJ  07068
(973) 228-9898
Fax (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°

Karen G. Kelsen°
Cheryll A. Calderon
David M. Estes
Adam M. Epstein°
Michael R. Griffith°
Matthew Tonzola
Christopher J. Geddis

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

°Member of N.J. & N.Y. Bars

April 2, 2019

**_VIA EMAIL_**
SAGoldberg@duanemorris.com
Seth A. Goldberg, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania  19103-4196

Dear Seth:

This letter is written in response to your request for us to provide a written list of our core discovery requests, which are directed to all defendants, to the extent applicable to each. This list supplements the lists of materials the defense has already agreed to produce and includes requests for information the Court listed as of primary importance.

1. All communications with regulatory authorities relevant to this case, including the FDA, EU, Canada, India, China, and Israel.

2. The full and complete distribution process from API manufacture to point of sale including information sufficient to describe the process and the role, obligations, and potential liability of all entities along the chain.

3. Identification of all lots entering into the United States, including the size of each lot, identified by API manufacturer.

4. The nature and extent of the contamination, including variations from lot to lot or by other demarcations, if variation exists.

5. How, when, why and where the contamination of the Valsartan occurred.

Seth A. Goldberg, Esq.
Duane Morris LLP
April 2, 2019
Page 2

6. How and when you discovered that the contamination of the Valsartan occurred, and the steps taken in response.

7. All relevant testing of API and finished product going back to 2010, including testing performed by or on behalf of any defendant, or by another party or entity (including for example customers, regulatory agencies, or any others), and the results, including any documents analyzing such results.

8. The manufacturing process from 2010 to the present, and any changes to the manufacturing process at any time, including communications with regulatory agencies relative to the manufacturing process. To the extent the manufacturing process has been changed at any time since 2010, provide the documents regarding why changed, when changed, and all testing or quality assurance reviews, audits, or oversight, and the results.

9. Each defendant's acknowledged quality assurance obligations, including any protocols or internal rules addressing those obligations, and the documentation of the performance of these responsibilities including any audits or evaluations of the manufacturing process, and related testing. In addition, any documentation of Good Manufacturing Practices protocols and compliance efforts, to the extent not overlapping with the quality documents.

10. Evaluation of the health risks posed by the contamination, including internal or other adverse event reporting, and evaluation of issues such as causation of harm, the mechanism of action, consequences, necessary dosages, and duration of use.

11. Define and quantify the Valsartan market in the United States. How many non-contaminated, and potentially contaminated pills sold, dosages of those pills, and the prices charged.

12. Available cost and pricing information, including but not limited to the Average Manufacturer Price (AMP) and National Average Drug Acquisition Cost (NADAC) and retail and wholesale or bulk pricing, with sales broken down by state and nationally.

13. Available price information, and profit information, to the extent not captured by the prior request.

14. Available information regarding payors, including identities, and amounts paid.

Seth A. Goldberg, Esq.
Duane Morris LLP
April 2, 2019
Page 3

15. Available information regarding formulary placement for generic Valsartan and copay or coinsurance amounts paid by Valsartan patients.

16. Any agreements with any retail pharmacy including but not limited to, CVS, Walgreens, Rite Aid, Walmart, including but not limited to all pricing agreements, including those agreements reflecting any price concessions or stocking fees.

17. Any agreements with Wholesalers, including but not limited to Amerisource Bergen, Cardinal Health, or McKesson including but not limited to all pricing agreements, including those agreements reflecting any price concessions or stocking fees.

18. The disposition or storage status of all potentially contaminated pills, including those that have and have not been tested.

19. List of key witnesses/custodians with knowledge of the core information in this litigation, including their employer, positions, years of employment, and description of areas of knowledge.

20. All potentially available insurance policies, as well as other potential assets and sources of funds to satisfy any settlement or judgment in this litigation, and any and all indemnification agreements that may be applicable.

21. All litigation holds and disclosure to the extent any potentially relevant documents, pills, or other evidence have been destroyed.

22. All communications with any third party payer or pharmaceutical benefit manager concerning the safety, efficacy or manufacturing quality of Valsartan.

We assume you will share this letter with your group and provide a response so that we can meet and confer far enough in advance of the call with Judge Schneider, which is scheduled in less than two weeks.

Very truly yours,

ADAM M. SLATER