**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

**IN RE: VALSARTAN PRODUCTS LIABILITY LITIATION**

**STATUS CONFERECE**

**CIVIL ACTION NUMBER:**

**19-2875**

---

Mitchell H. Cohen United States Courthouse
One John F. Gerry Plaza
Camden, New Jersey 08101
April 24, 2019

**B E F O R E:** **THE HONORABLE ROBERT B. KUGLER UNITED STATES DISTRICT JUDGE AND HONORABLE MAGISTRATE JUDGE JOEL SCHNEIDER**

**A P P E A R A N C E S:**

KANNER & WHITELEY
BY: CONLEE WHITELEY, ESQUIRE
701 CAMP STREET NEW ORLEANS, LA 70115
(504)524-5777
ATTORNEYS FOR PLAINTIFFS

GOLOMB & HONIK
BY: RUBIN HONIK, ESQUIRE
1835 MARKET STREET SUITE 2900
PHILADELPHIA, PA 19103
(215) 985-9177
ATTORNEYS FOR THE PLAINTIFFS

LEVIN PAPANTONIO
BY: DANIEL NIGH, ESQUIRE
316 S. BAYLEN, SUITE 600
PENSACOLA, FL. 32502
(850) 435-7020
ATTORNEYS FOR PLAINTIFFS

MAZIE SLATER KATZ & FREEMAN
BY: ADAM M. SLATER, ESQUIRE
103 EISHENHOWER PARKWAY SUITE 207
ROSELAND, NEW JERSEY 07068
(973) 228-9898
ATTORNEYS FOR PLAINTIFFS

GOLDENBERG LAW, PLLC
BY: MARLENE J. GOLDENBERG, ESQUIRE
800 LASALLE AVENUE SUITE 2150
MINNEAPOLIS, MN 55402
(612)436-5028
ATTORNEY FOR PLAINTIFFS

DUANE MORRIS LLP
BY: SETH A. GOLDBERG, ESQUIRE
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103
(215(979-1000
ATTORNEYS FOR DEFENDANTS

GREENBERG TRAURIG, LLP
BY: LORI G. COHEN, ESQUIRE
3333 PIEDMONT RD. NE SUITE 2500
ATLANTA, GA 30305
(678)553-2385
ATTORNEYS FOR DEFENDANT TEVA

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
BY: CLEM C. TRISCHLER, ESQUIRE
38TH FLOOR ONE OXFORD CENTRE
PITTSBURGH, PA 15219
(412)263-1816
ATTORNEYS FOR DEFENDANT MYLAN

WILEY REIN, LLP
BY: RICHARD W. SMITH, ESQUIRE
1776 K STREET NW
WASHINGTON, DC 20006
(202)719-7468
ATTORNEYS FOR DEFENDANT TORRENT, EXECUTIVE COMMITTEE

Certified as true and correct as required by Title 28, U.S.C., Section 753.

/S/ Carl J. Nami

(The following took place in open court)

THE DEPUTY COURT CLERK: All rise.

THE COURT: Good afternoon.

(All responded good afternoon)

00:26 THE COURT: Well, welcome back. Have a seat. When we last met, I told you all despite your skepticism, that you would enjoy Camden in the spring time. Am I right or wrong? Is this a delightful day or what? And you can't wait to come back. Right?

00:31 All right, since Mr. Nami doesn't know all of you, as you stand up, please tell us your name as we go on.

Now, Judge Schneider has been kind enough to fill me in on what he talked to you about this morning. But why don't we just go through the agenda items on the record. The 00:31 plaintiffs' leadership. Is that all resolved now?

MR. SLATER: We believe it is, your Honor. The list that's in the agenda, there's a couple errors in it, but I don't know that you need us to read that to you now. But it's all resolved. As far as we know every firm that wanted to 00:31 participate is a part of our leadership structure. Nobody was turned away.

THE COURT: Good.

MR. SLATER: And we have a large team now. We're looking forward to moving forward.

00:31 THE COURT: It's a pretty large team. I'm going to

open it up to the floor. Does anybody have any objection to the proposed leadership structure for the plaintiffs? None.

Okay. How about the defense side? I think it's important that we have a leadership structure there. Who wants to speak on that?

00:32

MR. TRISCHLER: May it please the court, Clem Trischler, your Honor. We have a four person leadership team. We've identified Mr. Goldberg, Miss Cohen, myself and Mr. Smith that represent API manufacturers, finish those manufacturers, distributors and in addition retailers, select retailers who have requested an indemnification from our respective clients. And, so, from that perspective we believe that our leadership group generally represents the interests of the defense group at large. We recognize that we've got 41 I believe different defendants who are part of this MDL. We have invited other defendants to join and participate in the leadership structure. We have weekly telephone conferences amongst our defense group where we talk as a smaller group and then to the group at large to keep everyone abreast of developments and our plans for handling the matters. We spoke after the good conversation we had with Judge Schneider this morning understanding some of the court's concerns about making certain that all of the interests of all of the defendants are being represented among the leadership. We talked this afternoon and the consensus was at that time again

00:32 00:32 00:33 00:33

this afternoon that all of the defendants are satisfied with the current structure of our group. We recognize that the litigation may change. Things may unfold and we certainly will invite additional participation by anyone that wants to take part in our group as the litigation proceeds.

00:33

I would also point out that I think we had a very productive conference with the plaintiffs' leadership group between our morning session and this afternoon's session about how we deal with some of the smaller defendants who we don't have as prominent a role in the litigation and whether there are some mechanisms that we can put in place to perhaps eliminate those defendants from the litigation. I think I don't want to get ahead of ourselves since we're only dealing with the structure right now. But we have, we've opened a dialogue in that regard. We'll continue to have that dialogue and I think if we are able to put in place that structure, that that will eliminate perhaps the need for additional retailers who might, the court might want to see on the leadership group. But as a whole, I think I can speak collectively for the defendants who are now part of this litigation, that there's satisfaction with the four person leadership team that's been identified.

00:34
00:34
00:34

THE COURT: What do you want to call yourselves? Executive Committee or something?

MR. TRISCHLER: Defendants' Executive Committee I

00:34

think is what we've labeled ourselves in the papers filed with the court.

THE COURT: We need, for logistics purposes we need someone to be designated as liaison who would have the ability to forward notices to all of you. So you need to appoint, you need a person, you want a person to do that or two people to do that in whatever --

MR. TRISCHLER: My colleague Mr. Goldberg of Duane Morris has agreed to take on that task.

THE COURT: Okay. Great. Now you've mentioned and this -- I'm just curious about the indemnity agreements? Some of the downstream people are asking upstream people to indemnify them?

MR. TRISCHLER: That has occurred, yes, sir.

THE COURT: How is that going to get resolved?

MR. TRISCHLER: Well, presumably on a case by case basis.

THE COURT: Yeah.

MR. TRISCHLER: But I'm aware of instances where pharmacies have requested indemnification from their finish dose supplier and that indemnification obligation has been accepted. For instance, my client is Mylan Pharmaceuticals. We have been named in a Class Action lawsuit, consumer Class Action lawsuit where Rite Aid is a defendant. Rite Aid requested indemnification. Mylan Pharmaceuticals agreed to

indemnify Rite Aid in connection with that case. That's one instance I think of several, your Honor, where those indemnification issues are being addressed on a case by case basis, which is, you know, one of the factors why I believe and I think collectively the defense group believes that our structure as presently constituted is broad enough or casts a broad enough net to ensure that the interests of all of the entities are being met.

THE COURT: I'm just trying to think out loud about the prospects of the indemnity agreement to some of the work ahead for all of this. But, you know, we'll continue to talk about that. Thank you.

All right. I assume the plaintiffs have no comment about the defense leadership group?

MR. HONIK: We don't, your Honor.

THE COURT: Good. All right. Let's put off the service issues for a minute. Core discovery requests. I understand that Judge Schneider's going to issue an order on that, correct? Does everybody understand that?

MR. SLATER: Yes, your Honor.

MR. HONIK: Yes, your Honor.

THE COURT: Okay. The profile forms. The plaintiffs apparently you're still discussing that and you hope to finalize that by the end of May. Correct?

MR. NIGH: Yes, your Honor.

THE COURT: At the next meeting we can discuss this? If there's any dispute, we can resolve it, correct?

MR. NIGH: Yes, your Honor.

THE COURT: ESI protocol. You're still working on that. Again hopefully we'll have that done by the May meeting. Correct?

MR. HONIK: Yes, your Honor.

MR. SMITH: Your Honor, we have committed to identifying all by the end of the May meeting.

THE COURT: All right. Judge Schneider is going to enter a Protective Order. There's a Common Benefit Order that we should be entering pretty soon I understand. There are some tweaks that had to be made but apparently the plaintiffs have agreed to that, and we'll get that done.

The Master Complaints. There are competing proposals as to Master Complaints. Are there still competing proposals as to which ones?

MS. COHEN: Your Honor, Lori Cohen on behalf of defense. And I think although we did have competing proposals in the joint submission, as we discussed this morning, we're fine letting the plaintiffs basically go with their position. As they've stated, it's their choice and we'll obviously address any deficiencies we see.

THE COURT: So we'll go with the plaintiffs.

MS. COHEN: Thank you, your Honor.

THE COURT: All right. The other Sartans. Apparently there's not going to be an application to JPML at this time, but perhaps in the future. Correct?

MR. NIGH: Your Honor, I've conferred with other counsel about their cases and we've looked at and we feel pretty confident there will be a JPML position. It's just a matter of timing for getting our ducks in a row for the Irbesartan, Losartan to be included into this MDL would be our request.

THE COURT: I'm sure it will be, but we'll wait to see what they do and you do.

MR. NIGH: Yes, your Honor.

THE COURT: I understand that there are two State Court complaints, PI complaints filed in Middlesex County, New Jersey? I heard.

MR. GOLDBERG: Yes, your honor, there are.

THE COURT: Are plaintiffs' counsel the same in both cases.

MR. GOLDBERG: I believe they are, yes.

THE COURT: And is that plaintiffs' counsel, does that plaintiffs' counsel have any cases here in the Federal action.

MR. GOLDBERG: I believe so. And I believe plaintiffs' counsel in this case is on the PI steering committee in the MDL as well.

00:40 00:40 00:40 00:40 00:41

THE COURT: Okay. Great. Counsel, you wanted to say something?

MR. ZAMORA: Your Honor, may I approach?

THE COURT: You sure may.

MR. ZAMORA: I'm appearing for Mr. Orlando in those two cases. I am Mark Zamora. The pending actions are Bruno versus Prinston and others in the Orlowsky cases which was just recently served. Those are two State Court cases, PI cases only in Middlesex County.

THE COURT: Have they been assigned to a specific Judge?

MR. ZAMORA: I believe so. I am not on that case as proactive at this moment. Mr. Orlando is out of State. I believe it has been assigned to one Judge.

THE COURT: Well, I would appreciate if somebody would give me that Judge's name and I can coordinate with that Judge.

MR. ZAMORA: Of course, Judge.

THE COURT: What's the -- you probably can't answer this, but the plaintiffs' counsel in those cases, I assume there's no diversity of jurisdiction. That's why they're in State Court. Correct?

MR. ZAMORA: I can't speak to that but I believe that's correct.

THE COURT: Okay. Do you know whether there's any

desire on the part of the plaintiffs in the State Court cases to move those cases along some different track than we're moving here?

MR. ZAMORA: Your Honor, I've only been involved in that case about ten days. I can't speak to that, but I think in coordination with the defense counsel, Mr. Goldberg and I and Mr. Nigh have spoken about coordination of discovery may be different than all.

THE COURT: All right. I can't imagine why it would be different, but there's no sense in doing it twice. I can tell you that.

MR. ZAMORA: I would agree, your Honor. I agree, your Honor.

THE COURT: And when we talk about proportionality, it doesn't make any sense but to take different discovery in those actions than you're going to take here.

MR. ZAMORA: I agree.

THE COURT: May I assume that there are going to be further State Court actions filed?

MR. ZAMORA: Yes.

THE COURT: Because there's a lack of diversity?

MR. ZAMORA: Yes.

THE COURT: Who is the non-diverse party on the defense side?

MR. ZAMORA: Well, the New Jersey defendants as far

as I can tell from just my review of the initial State Court filing would be all the defendants are being represented by counsel Goldberg which would be Solco, Prinston and I can't pronounce the third one, H-u-a-h-a-i.

00:42 THE COURT: Okay. All right. Well, I'll have to then find out who this Judge is and I'll get in touch with the Judge and we'll coordinate this.

MR. GOLDBERG: Your Honor, in the Bruno case where we've moved to dismiss those motions assigned to Judge Costello.

00:42

THE COURT: Costello.

MR. GOLDBERG: Yes.

THE COURT: He or she is in Middlesex County?

MR. GOLDBERG: Yes.

00:42 THE COURT: Okay.

MR. NIGH: Your Honor, I don't believe there's been any consolidation of those cases. So each case that gets filed in the State Court of New Jersey is in front of different Judges at this time. That's my understanding.

00:42 THE COURT: Well, I think it's in a mass drug program. So at some point they get thrown in a mass drug program.

MR. NIGH: They, they would have their own in Seattle, yes.

00:42 THE COURT: Yes. Okay.

00:43

MR. SLATER: Your Honor, as we had done I kind of closely coordinate with those cases, and the need to going forward, I'd be happy to provide that information. I understand the court's attitude towards that. So we're in agreement.

THE COURT: Sure.

MR. SLATER: We actually will talk to counsel about the motion to dismiss. He just mentioned as well as to see if it's something that needs to be heard now or maybe something that we need to understand what that issue is. So we'll talk about it.

THE COURT: All right. Document Repository. Have we resolved that issue? There's one repository, correct somewhere?

MR. GOLDBERG: Your Honor, at least on the defendants' side we still have some work to do. Judge Schneider raised a few issues about with us that we hadn't thought through yet. So we're going to work on that from the defense side. I understand plaintiffs have worked out their issues with respect to the repository.

MR. SLATER: Pretty much. Our plan, your Honor, is we will have our own repository for all the documents that we are provided by the defense that we'll work with and do our thing with. We're also going to create and we'll talk to the defense about it. There will be a repository where all the

00:44 plaintiff fact sheets, all the medical records, all the documents that are produced to the defendants will be put on there. They will have access to ID's and the court will also have access to all that information. So that you won't have to do any separate, you know, work with software or anything. We're going to make sure that it's user friendly for the court as well.

THE COURT: Great. Thank you. Are the plaintiffs doing any FOIA work for the FDA I assume?

00:44 MR. NIGH: There has been various plaintiffs' attorneys that have made FOIA requests, yes.

THE COURT: You'll share that with defense counsel so this all goes in the same repository and all that?

MR. NIGH: Yes.

00:44 THE COURT: Okay. Great. The downstream defendants. The minor players in this case which we've talked about last time and what to do about them. Any thoughts since then as to the best way that we can help them avoid unnecessary expense in this case?

00:45 MR. NIGH: Your Honor, we'd like to invite Marlene to address this issue on our procedure that were trying to enact on it.

THE COURT: Sure. Come on up here to the podium, would you please? Thank you.

00:45 MS. GOLDBERG: Marlene Goldberg, your Honor, for the

plaintiff. What we had just talked about in the interim was some kind of a shortened form that we could have those defendants fill out. It will contain some basic information, including where they got their Valsartan from. Insurance information and some basic financial. In exchange for that plaintiffs' counsel will take a look at it. We'll put in place a time frame so that things get resolved efficiently, and then we'll get back to those defendants and tell them, you know, if they're going to be dismissed without prejudice and then they'll go on a tolling agreement as well. And that we're going to iron out the details and we've agreed to talk throughout next week and hope to have something down very shortly.

THE COURT: Great. Thank you. You raised the issue of insurance. Have the defendants been disclosing insurance information to the plaintiffs yet?

MR. NIGH: No, your Honor. That is something that would also help us in terms of those other parties that are considered minor defendants.

THE COURT: Oh course. But apparently that will get worked out and you'll get that information. We need to get the insurance information to the plaintiffs relatively soon, please? Okay?

Now that we've got the Master Complaint issue resolved. The plaintiffs will start work on the short form complaint?

And maybe we can talk more about that at the next meeting?

All right. Service of process. I know you're discussing it among yourselves. What's the latest on the service of process issues that remains in this case? I know that some have been served under Hague. And a couple have agreed that they've been served. What about the rest of them? Where are we with that?

MR. TRISCHLER: Looking across the table to see who wants to go first, your Honor. I guess always take the opportunity to go first. Right? The -- to answer the court's question on service. There are issues, some issues have been resolved with respect to some defendants. For instance Torrent Pharmaceuticals as I understand is working out an agreement with plaintiffs to resolve service issues with respect to Torrent. ZHP, Mr. Goldberg's client I understand it have been served and there are no issues with respect to service on ZHP. As it relates to the remaining defendants, there are, there are issues and generally speaking it is the defendants' position that foreign defendants and that would include Mylan Laboratories Limited. Teva, Miss Cohen's client, Hetero, Aurobindo, those defendants, many of them whom are API manufacturers and we believe key defendants in this case are foreign corporations that need to be served pursuant to the Hague convention as a compromise of requiring service in each and every case, whether it be we end up with 30

plaintiff cases, three hundred plaintiffs' cases or three thousand. Who knows. But in lieu of requiring formal service in each and every case, which I believe is a matter of due process, the defendants would be entitled to, we propose, to a compromise where those foreign defendants would be served with each Master Complaint. We've now settled, we didn't know before today how many Master Complaints we were going to have and what form they were going to take. We've now come to an agreement that the plaintiffs are going to be filing three Master Complaints, personal injury, economic loss and medical monitoring. Our proposal is a compromise to ensure due process and fundamental fairness, and notice would be that each of the foreign defendants be served in accordance with the Hague Convention with each of those Master Complaints. That's generally our collective position. The plaintiffs I think obviously have some issues on individual cases, whether each defendant is required to be served pursuant to Hague and we can discuss those if the court would like. But as a, from a global perspective, that's the defendants' position.

THE COURT: How is it a less due process if you only get one complaint instead of three served by Hague?

MR. TRISCHLER: Because part of due process is fair notice to the claims that are being brought against you. If you're in this case, there's the defendants are presumably going to be sued for economic loss cases by third party

payers, by individual consumers, personal injury cases, by individuals who allegedly that are personally harmed. Of course, the medical monitoring claims. Part of service is being put on notice of the nature of the claims against you and we think that's a fair compromise.

THE COURT: The first complaint tells you that there's defects, contaminants in the product and that somebody wants money as a result of it. What difference does it make if that person wants money because he or she claims to have contracted cancer and wants money because they just want their money back. I mean do you really think that your client does not know when they're served with a Class Action medical monitoring case, for instance, that there's personal injuries involved in the case?

MR. TRISCHLER: Well, what that one complaint would tell, if we assume to take the Court's example that it's a personal injury case brought by Mr. Tack. T-a-c-k. That's one of the cases that has been brought against my client. That one complaint would put you on notice that this particular individual claims to have suffered injuries that are in some way related to the use or injection of a product that one or more of the defendants manufactured and sold. Doesn't put you on notice of other plaintiffs that have, that they've alleged to have injuries. It doesn't put you on notice of other damages that other plaintiffs may have. And I

 think if we have four hundred cases in this MDL, we'd be entitled to be properly served in each of those four hundred cases. We're not asking for that. This is a compromise proposal that we be served and put on notice as the -- as Rule 4 requires with respect to each of the types of cases that are before the court.

00:52

THE COURT: So do you really think that your sophisticated chemical manufacturer when they get a complaint from someone who claims to have been injured because of a contaminant in the product doesn't say ut-oh, there's more of these coming?

00:52

MR. TRISCHLER: I can't say what some person in India might think when they see a --

THE COURT: What would a reasonable person conclude?

00:52

MR. TRISCHLER: Depending upon their levels of sophistication, I don't know what that reasonable person might conclude. But what I do know is what the law requires. And the law requires more than being served once. If this, if this wasn't an MDL proceeding, there wouldn't a need to serve each and every one of those cases. It's a fundamental matter of jurisdiction. And I think our proposal is a reasonable compromise under the circumstances, particularly where you know we have a case that's taken on an interesting procedural life. And that is that we had an MDL established before the vast majority of the defendants were ever served with a

00:53

00:53

complaint. And --

THE COURT: I'm not sure that's unusual.

MR. TRISCHLER: Well, it's unusual in my experience. And so, you know, technically none of the defense were ever served with -- would never have to appear in this court until such time of service. But we're not doing that. We're not trying to create inefficiencies through this process. What we're trying to do is work a fair compromise that provides the jurisdictional and due process protections the defendants are entitled to while allowing the litigation to move forward. And I understand the court's comment that perhaps a person could read one complaint and assume there are other claims and assume that there are other damages. That all may be a reasonable assumption, but we don't base jurisdiction on assumptions and beliefs and what you might infer. And so again, in order to ensure that due process is protected, I don't think requiring service, Hague service of three complaints is a tremendous burden under the circumstances.

THE COURT: What do the plaintiffs say?

MR. HONIK: Your Honor, these service issues come up occasionally but not a lot. And suffice it to say from the last time we were here in front of your Honor till today, we've done quite a bit of research on it and with all due respect to Mr. Trischler, I just don't think the starting point is as he suggests first. It's, it's abundantly clear in

00:55 00:55 00:56 00:56 00:56

MDL's in reported decisions some of which we put in our agenda letter to the court, but we're happy to brief in a one or two pager for the court if you desire, it's abundantly clear that single service putting the defendant notice of the bare allegations is sufficient, and that under Rule 4F3, the court has broad powers to then authorize alternative service. And the typical alternative service is once you have affected service of the master or central complaint, that reasonably puts on notice the defendant in question, you can then serve the defense counsel. And there are any number of cases that say just that, including a decision by the late Judge Ackerman in this very District that we can cite you to. 4F3 alternative service is not service of last resort. It's a principal tool that Federal Courts are empowered to use to reasonably ensure that notice is required. Full stop.

The second thing that, that if I'm listening carefully to Mr. Trischler, he's really conflating jurisdiction and service. They're really two different issues. And, so, effective service here can be done we believe by the service of one complaint because as your Honor has noted, all of the allegations are the same. The request for relief may vary from instance to instance, but the allegations are identical. And so let's take a further step back and not talk about it in the abstract. There are really only four defendants, foreign defendants about whom we have issues. Two of them I think are

simple Aurobindo and Hetero are two Indian API manufacturers who to my knowledge have not been served at all. And we think it's abundantly reasonable to serve some process on them one time through the Hague. Full stop.

00:56 With respect to the other two and in particular, Mylan and Teva, we believe for all intents and purposes they're in the case and I'll tell the court why. With respect to Teva, they have been served through the Hague in Israel with a TPP Class Action complaint. Their counsel is here of record on their behalf. 00:57 We believe that that satisfies Rule 4. I think that, you know, that they should be in the case for all intents and purposes. So too with Mylan. Mylan is a Dutch corporation whose world headquarters is in Canonsburg, Pennsylvania. They have admittedly been served and in fact 00:57 Mr. Trischler signed a waiver of service on behalf of the Andahalder and the parent company. So Mylan Pharmaceuticals, that's the company that actually got an FDA approval to sell this drug. They're in the case because Mr. Trischler has, has waived service on their behalf as well as of the parent. I 00:58 don't know what else we can do to satisfy Rule 4. They're clearly sophisticated. Their world headquarters are here, and one of the things that Rule 4 contemplates is that extra territorial service of a foreign defendant can be affected in the U.S. on their subsidiaries. And in this case it's not 00:58 even a close question because it's not a subsidiary that was

served. It was actually the parent which is Mylan MV as well as the Andahalder, Andaholder Mylan Pharmaceuticals because they're physically present in Pennsylvania. And even more than that, Mr. Trischler signed a waiver.

00:58 So, I think the only remaining issue is really what to do with the unserved Indian entities. I think a single complaint on them through the Hague is fine, and I think Mylan and Teva should be in for all intents and purposes.

THE COURT: Well, I don't know about Mylan and Teva.

00:58 Is there an issue about that?

MR. TRISCHLER: There is, your Honor, and it gets fact specific which is why I avoided discussing it originally but I'm happy to address it now.

What Mr. Honik indicated first is not factually

00:59 accurate. The Mylan Laboratories Limited is an India based company. They are the API manufacturer for Valsartan containing medications that are distributed in the United States by Mylan Pharmaceuticals Inc. Mylan has three approved formulations. The Andaholder, contrary to what Mr. Honik said

00:59 the Anaholder for two of those is Mylan Laboratories Limited in India. Mylan Laboratories Limited in India has never been served in any case. Moreover no attempt to serve Mylan Laboratories has been made in any case. Instead, what Mr. Honik is referring to in a case where Mylan Laboratories

00:59 Limited is not even sued and has not ever been sued, that a

waiver that was executed in the case against the parent company of Mylan Pharmaceuticals, Inc., Mylan MV, I executed a waiver for them. There is no law whatsoever that would suggest that a waiver by one corporation in a case where a foreign company has not even been sued, constitutes effective service on that foreign company. There is no law that would support that proposition. Mr. Honik referred to alternative service under Rule 4. He said it's not, it's not a tool of last resort. I can tell you it's not a tool of first resort. And that is what the plaintiffs are proposing here. That as it relates to Mylan Laboratories Limited, they don't even have to attempt foreign service and the law is quite to the contrary. They do. And unless they want to present evidence that the parent corporation, which is Mylan MV, somehow dominates the foreign corporation, as to be its alter ego and controls it, then they can try and effect service through Rule 4 of the domestic entity, but they haven't done that either. They just don't even want to try. And here we are I think some four months after this MDL has been established, some six months after lawsuits have been filed and they still haven't made a single attempt at service. Yet we're entering discovery which is fine. We're here to participate and not slow down the process. But at some point there comes a time when they have to try and make service before they ask this court to resort to alternative service means. I can let Miss

01:01 01:02 01:02 01:02 01:03

Cohen speak to Teva in the issues Mr. Honik raised. But those are the issues with respect to Mylan, your Honor, and that is an attempt to evade the requirements of Hague service on an Indian company because a waiver was executed by another Mylan entity in a case where the Indian company was never even sued.

THE COURT: Teva.

MS. COHEN: Yes. Thank you, your Honor. Lori Cohen on behalf of the Teva entities. And I'll be brief. I do want to make this record so I'm not accused later of waiving any jurisdiction or venue. So I just wanted to make sure I was clear on this record that the entity we're talking about is an Israeli entity. Sorry about that. Teva Pharmaceutical Industry Limited. It is an Israeli entity and like the U. S. Entity which is Teva Pharmaceuticals U. S. A. Inc. they're both Finish Dose manufacturers. As Mr. Honik said, the Israeli entity Teva Pharmaceuticals Industries Limited was served through the Hague. We're not objecting to it. We're not calling that deficient in one type of case. The MSP recovery case which you may remember the last time I mentioned it was originally filed in Florida. We had a motion pending. So we do agree that service has been effectuated in that one case. Again, we're not waiving jurisdictional arguments. So we took the position as you saw in our position statement last time as well as this time that we want people served in the one complaint in each of the categories. Now we know there's

PI and medical monitoring, so we're asking that they attempt service again under the Hague consistent with Rule 4 in those other two categories of cases. And I think you've heard enough in terms of why that is that we've taken that position with Mr. Trischler. But I do want to make that clear to your Honor that that's our position.

01:03

THE COURT: So you want to make sure I understand that.

MS. COHEN: Yes.

01:03 THE COURT: Then Teva's position is that they have been served but they want to be served three times.

MS. COHEN: In the different categories of cases, yes, your Honor.

THE COURT: Right. The same as the Indian defendants.

01:03

MS. COHEN: Yes, your Honor.

THE COURT: All right. And it's Mylan though says they haven't served at all.

MR. TRISCHLER: Mylan Laboratories Limited, that's correct, your Honor.

01:03

THE COURT: Okay, I gotcha.

MS. COHEN: Thank you, your Honor.

THE COURT: All right, here's what we're going to do. As to the issue of whether there should be one complaint or three, one each of the three Master Complaints, seven days,

01:03

five page briefs from both sides and I'll decide that. As to the issue of whether Mylan has been successfully served, seven days, five page brief on this and I'll decide that issue. Okay? Unless, of course, you can resolve it in the meantime.

01:04 All right, I think I've hit everything in the agenda. Judge Schneider, did we miss anything?

MAGISTRATE JUDGE SCHNEIDER: I can't think of anything.

THE COURT: Anything else counsel wants to talk about at this time?

01:04

MR. SLATER: Your Honor, I don't know that you have to get too much into it with Mr. Smith and I. We discussed, I think we've reached an agreement on Torrent. But if you don't want to put it on the record, we'll do it separately.

01:04 MR. SMITH: We can do it separately.

MR. SLATER: Okay, that's fine.

THE COURT: Okay. Great. Anything else anyone else wants to say?

(No response)

01:04 THE COURT: All right.

MAGISTRATE JUDGE SCHNEIDER: We'll have our next conference call on May 8th. I might move that up to three o'clock because I have to leave earlier that evening.

MR. SLATER: Judge, I've been asked to relay

01:05 something, but it impacts me too. The next hearing I think

we're scheduled May 22nd. I've been informed by multiple attorneys that apparently several of the colleges nearby, Rutgers and who else? Penn are all having graduation that day and people are already finding it hard to find rooms in town.

01:05 THE COURT: Judge Schneider has extra bedrooms.

(Laughter)

THE COURT: And he's very reasonable. You got to put up with the dog, though.

MR. SLATER: I'll say nothing else.

01:05 THE COURT: Well, we'll move it then. How about the following week? Wednesday the 29th at two o'clock? All right?

MR. SLATER: Thank you.

THE COURT: All right. Unless there's further

01:06 business, I'll see you then, everybody. Thank you for coming and I won't see, I won't see you before Mother's Day, but those of you who are mothers, Happy Mother's Day, come May and honor your mothers.

(Laughter)

01:06 THE COURT: Thanks, everybody.

(The matter was then concluded)

**/**

**/S** [1] - 2:25

**0**

**07068** [1] - 2:2
**08101** [1] - 1:8

**1**

**103** [1] - 2:2
**15219** [1] - 2:17
**1776** [1] - 2:20
**17TH** [1] - 2:9
**1835** [1] - 1:18
**19-2875** [1] - 1:6
**19103** [2] - 1:18, 2:9

**2**

**20006** [1] - 2:20
**2019** [1] - 1:9
**202)719-7468** [1] - 2:21
**207** [1] - 2:2
**215** [1] - 1:19
**215(979-1000** [1] - 2:10
**2150** [1] - 2:5
**228-9898** [1] - 2:3
**22nd** [1] - 28:1
**24** [1] - 1:9
**2500** [1] - 2:12
**28** [1] - 2:24
**2900** [1] - 1:18
**29th** [1] - 28:11

**3**

**30** [2] - 2:9, 16:25
**30305** [1] - 2:13
**316** [1] - 1:21
**32502** [1] - 1:22
**3333** [1] - 2:12
**38TH** [1] - 2:16

**4**

**4** [7] - 19:5, 22:10, 22:20, 22:22, 24:8, 24:17, 26:2
**41** [1] - 4:14
**412)263-1816** [1] - 2:17
**435-7020** [1] - 1:22
**4F3** [2] - 21:5, 21:12

**5**

**504)524-5777** [1] - 1:15
**55402** [1] - 2:6

**6**

**600** [1] - 1:21
**612)436-5028** [1] - 2:6
**678)553-2385** [1] - 2:13

**7**

**701** [1] - 1:15
**70115** [1] - 1:15
**753** [1] - 2:25

**8**

**800** [1] - 2:5
**850** [1] - 1:22
**8th** [1] - 27:22

**9**

**973** [1] - 2:3
**985-9177** [1] - 1:19

**A**

**ability** [1] - 6:4
**able** [1] - 5:16
**abreast** [1] - 4:19
**abstract** [1] - 21:24
**abundantly** [3] - 20:25, 21:3, 22:3
**accepted** [1] - 6:22
**access** [2] - 14:3, 14:4
**accordance** [1] - 17:13
**accurate** [1] - 23:15
**accused** [1] - 25:9
**Ackerman** [1] - 21:11
**action** [1] - 9:22
**Action** [4] - 6:23, 6:24, 18:12, 22:9
**ACTION** [1] - 1:5
**actions** [3] - 10:6, 11:16, 11:19
**ADAM** [1] - 2:1
**addition** [1] - 4:10
**additional** [2] - 5:4, 5:17
**address** [3] - 8:23, 14:21, 23:13
**addressed** [1] - 7:3
**admittedly** [1] - 22:14
**affected** [2] - 21:7, 22:23
**afternoon** [4] - 3:3, 3:4, 4:25, 5:1
**afternoon's** [1] - 5:8
**agenda** [4] - 3:14, 3:17, 21:1, 27:5
**agree** [4] - 11:12, 11:17, 25:21
**agreed** [5] - 6:9, 6:25, 8:14, 15:11, 16:6
**agreement** [6] - 7:10, 13:5, 15:10, 16:14, 17:9, 27:13
**agreements** [1] - 6:11
**ahead** [2] - 5:13, 7:11
**Aid** [3] - 6:24, 7:1
**ALFANO** [1] - 2:15
**allegations** [3] - 21:5, 21:21, 21:22
**alleged** [1] - 18:24
**allegedly** [1] - 18:2
**allowing** [1] - 20:10
**alter** [1] - 24:15
**alternative** [5] - 21:6, 21:7, 21:13, 24:7, 24:25
**Anaholder** [1] - 23:20
**AND** [1] - 1:10
**Andahalder** [2] - 22:16, 23:2
**Andaholder** [2] - 23:2, 23:19
**answer** [2] - 10:19, 16:10
**API** [4] - 4:9, 16:22, 22:1, 23:16
**appear** [1] - 20:5
**appearing** [1] - 10:5
**application** [1] - 9:2
**appoint** [1] - 6:5
**appreciate** [1] - 10:15
**approach** [1] - 10:3
**approval** [1] - 22:17
**approved** [1] - 23:18
**April** [1] - 1:9
**arguments** [1] - 25:22
**assigned** [3] - 10:10, 10:14, 12:9
**assume** [7] - 7:13, 10:20, 11:18, 14:9, 18:16, 20:12, 20:13
**assumption** [1] - 20:14
**assumptions** [1] - 20:15
**ATLANTA** [1] - 2:13
**attempt** [5] - 23:22, 24:12, 24:21, 25:3, 26:1
**attitude** [1] - 13:4
**ATTORNEY** [1] - 2:7
**attorneys** [2] - 14:11, 28:2
**ATTORNEYS** [8] - 1:16, 1:19, 1:23, 2:3, 2:10, 2:14, 2:18, 2:21
**Aurobindo** [2] - 16:21, 22:1
**authorize** [1] - 21:6
**AVENUE** [1] - 2:5
**avoid** [1] - 14:18
**avoided** [1] - 23:12
**aware** [1] - 6:19

**B**

**bare** [1] - 21:4
**base** [1] - 20:14
**based** [1] - 23:15
**basic** [2] - 15:3, 15:5
**basis** [2] - 6:17, 7:4
**BAYLEN** [1] - 1:21
**bedrooms** [1] - 28:5
**behalf** [5] - 8:18, 22:10, 22:15, 22:19, 25:8
**beliefs** [1] - 20:15
**believes** [1] - 7:5
**Benefit** [1] - 8:11
**best** [1] - 14:18
**between** [1] - 5:8
**bit** [1] - 20:23
**BOSICK** [1] - 2:15
**brief** [3] - 21:2, 25:8, 27:3
**briefs** [1] - 27:1
**broad** [3] - 7:6, 7:7, 21:6
**brought** [3] - 17:23, 18:17, 18:18
**Bruno** [2] - 10:6, 12:8
**burden** [1] - 20:18
**business** [1] - 28:15
**BY** [9] - 1:14, 1:17, 1:21, 2:1, 2:5, 2:8, 2:12, 2:16, 2:19

**C**

**Camden** [2] - 1:8, 3:7
**CAMP** [1] - 1:15
**cancer** [1] - 18:10
**Canonsburg** [1] - 22:13
**carefully** [1] - 21:16
**Carl** [1] - 2:25
**case** [34] - 6:16, 7:1, 7:3, 9:24, 10:12, 11:5, 12:8, 12:17, 14:16, 14:19, 16:4, 16:23, 16:25, 17:3, 17:24, 18:13, 18:14, 18:17, 19:23, 22:7, 22:11, 22:18, 22:24, 23:22, 23:23, 23:24, 24:1, 24:4, 25:5, 25:18, 25:19, 25:22
**cases** [25] - 9:5, 9:18, 9:21, 10:6, 10:7, 10:8, 10:9, 10:20, 11:1, 11:2, 12:17, 13:2, 17:1, 17:16, 17:25, 18:1, 18:18, 19:1, 19:3, 19:5, 19:20, 21:10, 26:3, 26:12
**casts** [1] - 7:6
**categories** [3] - 25:25, 26:3, 26:12
**central** [1] - 21:8
**CENTRE** [1] - 2:16
**certain** [1] - 4:23
**certainly** [1] - 5:3
**Certified** [1] - 2:24
**change** [1] - 5:3
**chemical** [1] - 19:8
**choice** [1] - 8:22
**circumstances** [2] - 19:22, 20:18
**cite** [1] - 21:12
**CIVIL** [1] - 1:5
**claims** [7] - 17:23, 18:3, 18:4, 18:9, 18:20, 19:9, 20:12
**Class** [4] - 6:23, 18:12, 22:9
**clear** [4] - 20:25, 21:3, 25:11, 26:5
**clearly** [1] - 22:21
**Clem** [1] - 4:6
**CLEM** [1] - 2:16

**CLERK** [1] - 3:2
**client** [5] - 6:22, 16:15, 16:21, 18:11, 18:18
**clients** [1] - 4:12
**close** [1] - 22:25
**closely** [1] - 13:2
**Cohen** [5] - 1:7, 4:8, 8:18, 25:1, 25:7
**COHEN** [8] - 2:12, 8:18, 8:25, 25:7, 26:9, 26:12, 26:16, 26:22
**Cohen's** [1] - 16:20
**colleague** [1] - 6:8
**collective** [1] - 17:15
**collectively** [2] - 5:20, 7:5
**colleges** [1] - 28:2
**coming** [2] - 19:11, 28:15
**comment** [2] - 7:13, 20:11
**committed** [1] - 8:8
**committee** [1] - 9:25
**Committee** [2] - 5:24, 5:25
**COMMITTEE** [1] - 2:21
**Common** [1] - 8:11
**company** [8] - 22:16, 22:17, 23:16, 24:2, 24:5, 24:6, 25:4, 25:5
**competing** [3] - 8:15, 8:16, 8:19
**Complaint** [2] - 15:24, 17:6
**complaint** [14] - 15:25, 17:21, 18:6, 18:15, 18:19, 19:8, 20:1, 20:12, 21:8, 21:20, 22:9, 23:7, 25:25, 26:24
**complaints** [3] - 9:14, 20:18
**Complaints** [6] - 8:15, 8:16, 17:7, 17:10, 17:14, 26:25
**compromise** [7] - 16:24, 17:5, 17:11, 18:5, 19:3, 19:22, 20:8
**concerns** [1] - 4:22
**conclude** [2] - 19:14, 19:17
**concluded** [1] - 28:21
**CONFERECE** [1] - 1:4
**conference** [2] - 5:7, 27:22
**conferences** [1] - 4:17
**conferred** [1] - 9:4
**confident** [1] - 9:6
**conflating** [1] - 21:17
**CONLEE** [1] - 1:14
**connection** [1] - 7:1
**consensus** [1] - 4:25
**considered** [1] - 15:19
**consistent** [1] - 26:2
**consolidation** [1] - 12:17
**constituted** [1] - 7:6
**constitutes** [1] - 24:5
**consumer** [1] - 6:23
**consumers** [1] - 18:1
**contain** [1] - 15:3
**containing** [1] - 23:17
**contaminant** [1] - 19:10
**contaminants** [1] - 18:7
**contemplates** [1] - 22:22
**continue** [2] - 5:15, 7:11
**contracted** [1] - 18:10
**contrary** [2] - 23:19, 24:13
**controls** [1] - 24:16
**convention** [1] - 16:24
**Convention** [1] - 17:14
**conversation** [1] - 4:21
**coordinate** [3] - 10:16, 12:7, 13:2
**coordination** [2] - 11:6, 11:7
**core** [1] - 7:17
**corporation** [4] - 22:13, 24:4, 24:14, 24:15
**corporations** [1] - 16:23
**correct** [10] - 2:24, 7:19, 7:24, 8:2, 8:6, 9:3, 10:22, 10:24, 13:13, 26:20
**Costello** [2] - 12:10, 12:11
**counsel** [15] - 9:5, 9:17, 9:20, 9:21, 9:24, 10:1, 10:20, 11:6, 12:3, 13:7, 14:12, 15:6, 21:10, 22:9, 27:9
**County** [3] - 9:14, 10:9, 12:13
**couple** [2] - 3:17, 16:5
**course** [4] - 10:18, 15:20, 18:3, 27:4
**COURT** [70] - 1:1, 3:2, 3:3, 3:5, 3:22, 3:25, 5:23, 6:3, 6:10, 6:15, 6:18, 7:9, 7:16, 7:22, 8:1, 8:4, 8:10, 8:24, 9:1, 9:10, 9:13, 9:17, 9:20, 10:1, 10:4, 10:10, 10:15, 10:19, 10:25, 11:9, 11:14, 11:18, 11:21, 11:23, 12:5, 12:11, 12:13, 12:15, 12:20, 12:25, 13:6, 13:12, 14:8, 14:12, 14:15, 14:23, 15:14, 15:20, 17:20, 18:6, 19:7, 19:14, 20:2, 20:19, 23:9, 25:6, 26:7, 26:10, 26:14, 26:17, 26:21, 26:23, 27:9, 27:17, 27:20, 28:5, 28:7, 28:10, 28:14, 28:20
**court** [14] - 3:1, 4:6, 5:18, 6:2, 14:3, 14:6, 17:18, 19:6, 20:5, 21:2, 21:3, 21:5, 22:7, 24:25
**Court** [7] - 9:14, 10:8, 10:22, 11:1, 11:19, 12:1, 12:18
**court's** [4] - 4:22, 13:4, 16:10, 20:11
**Court's** [1] - 18:16
**Courthouse** [1] - 1:7
**Courts** [1] - 21:14
**create** [2] - 13:24, 20:7
**curious** [1] - 6:11
**current** [1] - 5:2

## D

**damages** [2] - 18:25, 20:13
**DANIEL** [1] - 1:21
**days** [3] - 11:5, 26:25, 27:3
**DC** [1] - 2:20
**deal** [1] - 5:9
**dealing** [1] - 5:13
**decide** [2] - 27:1, 27:3
**decision** [1] - 21:11
**decisions** [1] - 21:1
**defects** [1] - 18:7
**defendant** [5] - 6:24, 17:17, 21:4, 21:9, 22:23
**DEFENDANT** [3] - 2:14, 2:18, 2:21
**defendants** [30] - 4:15, 4:16, 4:24, 5:1, 5:9, 5:12, 5:20, 11:25, 12:2, 14:2, 14:15, 15:3, 15:8, 15:15, 15:19, 16:12, 16:17, 16:19, 16:21, 16:22, 17:4, 17:5, 17:13, 17:24, 18:22, 19:25, 20:9, 21:24, 21:25, 26:15
**DEFENDANTS** [1] - 2:10
**defendants'** [3] - 13:16, 16:19, 17:19
**Defendants'** [1] - 5:25
**defense** [14] - 4:3, 4:14, 4:18, 7:5, 7:14, 8:19, 11:6, 11:24, 13:19, 13:23, 13:25, 14:12, 20:4, 21:10
**deficiencies** [1] - 8:23
**deficient** [1] - 25:18
**delightful** [1] - 3:8
**DEPUTY** [1] - 3:2
**designated** [1] - 6:4
**desire** [2] - 11:1, 21:3
**despite** [1] - 3:6
**details** [1] - 15:11
**developments** [1] - 4:20
**dialogue** [2] - 5:15
**difference** [1] - 18:8
**different** [8] - 4:15, 11:2, 11:8, 11:10, 11:15, 12:19, 21:18, 26:12
**disclosing** [1] - 15:15
**discovery** [4] - 7:17, 11:7, 11:15, 24:22
**discuss** [2] - 8:1, 17:18
**discussed** [2] - 8:20, 27:12
**discussing** [3] - 7:23, 16:3, 23:12
**dismiss** [2] - 12:9, 13:8
**dismissed** [1] - 15:9
**dispute** [1] - 8:2
**distributed** [1] - 23:17
**distributors** [1] - 4:10
**DISTRICT** [3] - 1:1, 1:2, 1:10
**District** [1] - 21:12
**diverse** [1] - 11:23
**diversity** [2] - 10:21, 11:21
**document** [1] - 13:12
**documents** [2] - 13:22, 14:2
**dog** [1] - 28:8
**domestic** [1] - 24:17
**dominates** [1] - 24:15
**done** [6] - 8:5, 8:14, 13:1, 20:23, 21:19, 24:17
**Dose** [1] - 25:15
**dose** [1] - 6:21
**down** [2] - 15:12, 24:23
**downstream** [2] - 6:12, 14:15
**drug** [3] - 12:20, 12:21, 22:18
**Duane** [1] - 6:8
**DUANE** [1] - 2:8
**ducks** [1] - 9:7
**due** [7] - 17:3, 17:11, 17:20, 17:22, 20:9, 20:16, 20:23
**Dutch** [1] - 22:12

## E

**economic** [2] - 17:10, 17:25
**effect** [1] - 24:16
**effective** [2] - 21:19, 24:5
**effectuated** [1] - 25:21
**efficiently** [1] - 15:7
**ego** [1] - 24:15
**EISHENHOWER** [1] - 2:2
**either** [1] - 24:17
**eliminate** [2] - 5:12, 5:17
**empowered** [1] - 21:14
**enact** [1] - 14:21
**end** [3] - 7:24, 8:9, 16:25

**enjoy** [1] - 3:7
**ensure** [4] - 7:7, 17:11, 20:16, 21:15
**enter** [1] - 8:11
**entering** [2] - 8:12, 24:21
**entities** [3] - 7:8, 23:6, 25:8
**entitled** [3] - 17:4, 19:2, 20:10
**entity** [7] - 24:17, 25:5, 25:11, 25:12, 25:13, 25:14, 25:16
**errors** [1] - 3:17
**ESI** [1] - 8:4
**ESQUIRE** [9] - 1:14, 1:17, 1:21, 2:1, 2:5, 2:8, 2:12, 2:16, 2:19
**established** [2] - 19:24, 24:19
**evade** [1] - 25:3
**evening** [1] - 27:23
**evidence** [1] - 24:13
**example** [1] - 18:16
**exchange** [1] - 15:5
**executed** [3] - 24:1, 24:2, 25:4
**EXECUTIVE** [1] - 2:21
**Executive** [2] - 5:24, 5:25
**expense** [1] - 14:18
**experience** [1] - 20:3
**extra** [2] - 22:22, 28:5

**F**

**fact** [3] - 14:1, 22:14, 23:12
**factors** [1] - 7:4
**factually** [1] - 23:14
**fair** [3] - 17:22, 18:5, 20:8
**fairness** [1] - 17:12
**far** [2] - 3:19, 11:25
**FDA** [2] - 14:9, 22:17
**Federal** [2] - 9:21, 21:14
**few** [1] - 13:17
**filed** [6] - 6:1, 9:14, 11:19, 12:18, 24:20, 25:20
**filing** [2] - 12:2, 17:9
**fill** [2] - 3:12, 15:3
**finalize** [1] - 7:24
**financial** [1] - 15:5
**fine** [4] - 8:21, 23:7, 24:22, 27:16
**Finish** [1] - 25:15
**finish** [2] - 4:9, 6:20
**firm** [1] - 3:19
**first** [6] - 16:9, 16:10, 18:6, 20:25, 23:14, 24:9
**five** [2] - 27:1, 27:3
**FL** [1] - 1:22
**floor** [1] - 4:1
**FLOOR** [1] - 2:16
**Florida** [1] - 25:20
**FOIA** [2] - 14:9, 14:11
**following** [2] - 3:1, 28:11
**FOR** [10] - 1:2, 1:16, 1:19, 1:23, 2:3, 2:7, 2:10, 2:14, 2:18, 2:21
**foreign** [10] - 16:19, 16:23, 17:5, 17:13, 21:24, 22:23, 24:5, 24:6, 24:12, 24:15
**form** [3] - 15:2, 15:25, 17:8
**formal** [1] - 17:2
**forms** [1] - 7:22
**formulations** [1] - 23:19
**forward** [5] - 3:24, 6:5, 13:3, 20:10
**four** [6] - 4:7, 5:21, 19:1, 19:2, 21:24, 24:19
**frame** [1] - 15:7
**FREEMAN** [1] - 2:1
**friendly** [1] - 14:6
**front** [2] - 12:18, 20:22
**full** [2] - 21:15, 22:4
**fundamental** [2] - 17:12, 19:20
**future** [1] - 9:3

**G**

**GA** [1] - 2:13
**generally** [3] - 4:13, 16:18, 17:15
**Gerry** [1] - 1:8
**global** [1] - 17:19
**Goldberg** [5] - 4:8, 6:8, 11:6, 12:3, 14:25
**GOLDBERG** [9] - 2:8, 9:16, 9:19, 9:23, 12:8, 12:12, 12:14, 13:15, 14:25
**Goldberg's** [1] - 16:15
**GOLDENBERG** [2] - 2:4, 2:5
**GOLOMB** [1] - 1:17
**GORDON** [1] - 2:15
**gotcha** [1] - 26:21
**graduation** [1] - 28:3
**great** [6] - 6:10, 10:1, 14:8, 14:15, 15:14, 27:17
**GREENBERG** [1] - 2:11
**group** [11] - 4:13, 4:14, 4:18, 4:19, 5:2, 5:5, 5:7, 5:19, 7:5, 7:14
**guess** [1] - 16:9

**H**

**H-u-a-h-a-i** [1] - 12:4
**Hague** [12] - 16:5, 16:24, 17:14, 17:17, 17:21, 20:17, 22:4, 22:8, 23:7, 25:3, 25:17, 26:2
**handling** [1] - 4:20
**happy** [3] - 13:3, 21:2, 23:13
**Happy** [1] - 28:17
**hard** [1] - 28:4
**harmed** [1] - 18:2
**headquarters** [2] - 22:13, 22:21
**heard** [3] - 9:15, 13:9, 26:3
**hearing** [1] - 27:25
**help** [2] - 14:18, 15:18
**Hetero** [2] - 16:21, 22:1
**hit** [1] - 27:5
**HONIK** [6] - 1:17, 1:17, 7:15, 7:21, 8:7, 20:20
**Honik** [6] - 23:14, 23:19, 23:24, 24:7, 25:1, 25:15
**honor** [2] - 9:16, 28:18
**Honor** [39] - 3:16, 4:7, 7:2, 7:15, 7:20, 7:21, 7:25, 8:3, 8:7, 8:8, 8:18, 8:25, 9:4, 9:12, 10:3, 11:4, 11:12, 11:13, 12:8, 12:16, 13:1, 13:15, 13:21, 14:20, 14:25, 15:17, 16:9, 20:20, 20:22, 21:20, 23:11, 25:2, 25:7, 26:6, 26:13, 26:16, 26:20, 26:22, 27:11
**HONORABLE** [2] - 1:10, 1:11
**hope** [2] - 7:23, 15:12
**hopefully** [1] - 8:5
**hundred** [3] - 17:1, 19:1, 19:2

**I**

**ID's** [1] - 14:3
**identical** [1] - 21:22
**identified** [2] - 4:8, 5:22
**identifying** [1] - 8:9
**imagine** [1] - 11:9
**impacts** [1] - 27:25
**important** [1] - 4:4
**IN** [1] - 1:4
**Inc** [3] - 23:18, 24:2, 25:14
**include** [1] - 16:20
**included** [1] - 9:8
**including** [2] - 15:4, 21:11
**indemnification** [5] - 4:11, 6:20, 6:21, 6:25, 7:3
**indemnify** [2] - 6:13, 7:1
**indemnity** [2] - 6:11, 7:10
**India** [4] - 19:12, 23:15, 23:21
**Indian** [5] - 22:1, 23:6, 25:4, 25:5, 26:14
**indicated** [1] - 23:14
**individual** [3] - 17:16, 18:1, 18:20
**individuals** [1] - 18:2
**Industries** [1] - 25:16
**Industry** [1] - 25:13
**inefficiencies** [1] - 20:7
**infer** [1] - 20:15
**information** [7] - 13:3, 14:4, 15:3, 15:5, 15:16, 15:21, 15:22
**informed** [1] - 28:1
**initial** [1] - 12:1
**injection** [1] - 18:21
**injured** [1] - 19:9
**injuries** [3] - 18:13, 18:20, 18:24
**injury** [3] - 17:10, 18:1, 18:17
**instance** [6] - 6:22, 7:2, 16:12, 18:13, 21:22
**instances** [1] - 6:19
**instead** [2] - 17:21, 23:23
**insurance** [4] - 15:4, 15:15, 15:22
**intents** [3] - 22:6, 22:12, 23:8
**interesting** [1] - 19:23
**interests** [3] - 4:13, 4:23, 7:7
**interim** [1] - 15:1
**invite** [2] - 5:4, 14:20
**invited** [1] - 4:16
**involved** [2] - 11:4, 18:14
**Irbesartan** [1] - 9:8
**iron** [1] - 15:11
**Israel** [1] - 22:8
**Israeli** [3] - 25:12, 25:13, 25:16
**issue** [11] - 7:18, 13:10, 13:13, 14:21, 15:14, 15:24, 23:5, 23:10, 26:24, 27:2, 27:3
**issues** [16] - 7:3, 7:17, 13:17, 13:20, 16:4, 16:11, 16:14, 16:16, 16:18, 17:16, 20:20, 21:18, 21:25, 25:1, 25:2
**items** [1] - 3:14

**J**

**JERSEY** [2] - 1:2, 2:2
**Jersey** [4] - 1:8, 9:15, 11:25, 12:18
**JOEL** [1] - 1:11
**John** [1] - 1:8
**join** [1] - 4:16
**joint** [1] - 8:20
**JPML** [2] - 9:2, 9:6
**Judge** [14] - 3:12, 4:21, 7:18, 8:10, 10:11, 10:14, 10:17, 10:18, 12:6, 12:7, 12:9, 13:16, 21:11, 27:24
**judge** [2] - 27:6, 28:5
**JUDGE** [4] - 1:10, 1:11, 27:7, 27:21
**Judge's** [1] - 10:16
**Judges** [1] - 12:19
**jurisdiction** [5] -

10:21, 19:21, 20:14, 21:17, 25:10
**jurisdictional** [2] - 20:9, 25:22

**K**

**KANNER** [1] - 1:14
**KATZ** [1] - 2:1
**keep** [1] - 4:19
**key** [1] - 16:22
**kind** [3] - 3:12, 13:1, 15:2
**knowledge** [1] - 22:2
**knows** [1] - 17:2
**KUGLER** [1] - 1:10

**L**

**LA** [1] - 1:15
**labeled** [1] - 6:1
**Laboratories** [8] - 16:20, 23:15, 23:20, 23:21, 23:23, 23:24, 24:11, 26:19
**lack** [1] - 11:21
**large** [4] - 3:23, 3:25, 4:14, 4:19
**LASALLE** [1] - 2:5
**last** [7] - 3:6, 14:16, 20:22, 21:13, 24:9, 25:19, 25:23
**late** [1] - 21:11
**latest** [1] - 16:3
**laughter** [1] - 28:19
**Laughter** [1] - 28:6
**law** [5] - 19:17, 19:18, 24:3, 24:6, 24:12
**LAW** [1] - 2:4
**lawsuit** [2] - 6:23, 6:24
**lawsuits** [1] - 24:20
**leadership** [12] - 3:15, 3:20, 4:2, 4:4, 4:7, 4:13, 4:17, 4:24, 5:7, 5:19, 5:22, 7:14
**least** [1] - 13:15
**leave** [1] - 27:23
**less** [1] - 17:20
**letter** [1] - 21:2
**letting** [1] - 8:21
**levels** [1] - 19:15
**LEVIN** [1] - 1:20
**LIABILITY** [1] - 1:4
**liaison** [1] - 6:4
**lieu** [1] - 17:2
**life** [1] - 19:24
**Limited** [9] - 16:20, 23:15, 23:20, 23:21, 23:25, 24:11, 25:13, 25:16, 26:19
**list** [1] - 3:16
**listening** [1] - 21:16
**LITIATION** [1] - 1:4
**litigation** [6] - 5:3, 5:5, 5:10, 5:12, 5:21, 20:10
**LLP** [4] - 2:8, 2:11, 2:15, 2:19
**logistics** [1] - 6:3
**look** [1] - 15:6
**looked** [1] - 9:5
**looking** [2] - 3:24, 16:8
**LORI** [1] - 2:12
**Lori** [2] - 8:18, 25:7
**Losartan** [1] - 9:8
**loss** [2] - 17:10, 17:25
**loud** [1] - 7:9

**M**

**MAGISTRATE** [3] - 1:11, 27:7, 27:21
**majority** [1] - 19:25
**manufactured** [1] - 18:22
**manufacturer** [2] - 19:8, 23:16
**manufacturers** [5] - 4:9, 4:10, 16:22, 22:1, 25:15
**Mark** [1] - 10:6
**MARKET** [1] - 1:18
**Marlene** [2] - 14:20, 14:25
**MARLENE** [1] - 2:5
**mass** [2] - 12:20, 12:21
**Master** [8] - 8:15, 8:16, 15:24, 17:6, 17:7, 17:10, 17:14, 26:25
**master** [1] - 21:8
**matter** [4] - 9:7, 17:3, 19:20, 28:21
**matters** [1] - 4:20
**MAZIE** [1] - 2:1
**MDL** [7] - 4:15, 9:8, 9:25, 19:1, 19:19, 19:24, 24:19
**MDL's** [1] - 21:1
**mean** [1] - 18:11
**means** [1] - 24:25
**meantime** [1] - 27:4
**mechanisms** [1] - 5:11
**medical** [5] - 14:1, 17:10, 18:3, 18:12, 26:1
**medications** [1] - 23:17
**meeting** [4] - 8:1, 8:6, 8:9, 16:1
**mentioned** [3] - 6:10, 13:8, 25:19
**met** [2] - 3:6, 7:8
**Middlesex** [3] - 9:14, 10:9, 12:13
**might** [6] - 5:18, 19:13, 19:16, 20:15, 27:22
**MINNEAPOLIS** [1] - 2:6
**minor** [2] - 14:16, 15:19
**minute** [1] - 7:17
**miss** [1] - 27:6
**Miss** [3] - 4:8, 16:20, 24:25
**Mitchell** [1] - 1:7
**MN** [1] - 2:6
**moment** [1] - 10:13
**money** [4] - 18:8, 18:9, 18:10, 18:11
**monitoring** [4] - 17:11, 18:3, 18:13, 26:1
**months** [2] - 24:19, 24:20
**Moreover** [1] - 23:22
**morning** [4] - 3:13, 4:22, 5:8, 8:20
**MORRIS** [1] - 2:8
**Morris** [1] - 6:9
**Mother's** [2] - 28:16, 28:17
**mothers** [2] - 28:17, 28:18
**motion** [2] - 13:8, 25:20
**motions** [1] - 12:9
**move** [4] - 11:2, 20:10, 27:22, 28:10
**moved** [1] - 12:9
**moving** [2] - 3:24, 11:3
**MR** [59] - 3:16, 3:23, 4:6, 5:25, 6:8, 6:14, 6:16, 6:19, 7:15, 7:20, 7:21, 7:25, 8:3, 8:7, 8:8, 9:4, 9:12, 9:16, 9:19, 9:23, 10:3, 10:5, 10:12, 10:18, 10:23, 11:4, 11:12, 11:17, 11:20, 11:22, 11:25, 12:8, 12:12, 12:14, 12:16, 12:23, 13:1, 13:7, 13:15, 13:21, 14:10, 14:14, 14:20, 15:17, 16:8, 17:22, 18:15, 19:12, 19:15, 20:3, 20:20, 23:11, 26:19, 27:11, 27:15, 27:16, 27:24, 28:9, 28:13
**MS** [8] - 8:18, 8:25, 14:25, 25:7, 26:9, 26:12, 26:16, 26:22
**MSP** [1] - 25:18
**multiple** [1] - 28:1
**MV** [3] - 23:1, 24:2, 24:14
**MYLAN** [1] - 2:18
**Mylan** [27] - 6:22, 6:25, 16:20, 22:5, 22:12, 22:16, 23:1, 23:2, 23:7, 23:9, 23:15, 23:18, 23:20, 23:21, 23:22, 23:24, 24:2, 24:11, 24:14, 25:2, 25:4, 26:17, 26:19, 27:2

**N**

**name** [2] - 3:11, 10:16
**named** [1] - 6:23
**Nami** [2] - 2:25, 3:10
**nature** [1] - 18:4
**NE** [1] - 2:12
**nearby** [1] - 28:2
**need** [11] - 3:18, 5:17, 6:3, 6:5, 6:6, 13:2, 13:10, 15:21, 16:23, 19:19
**needs** [1] - 13:9
**net** [1] - 7:7
**never** [3] - 20:5, 23:21, 25:5
**NEW** [3] - 1:2, 1:15, 2:2
**New** [4] - 1:8, 9:14, 11:25, 12:18
**next** [5] - 8:1, 15:12, 16:1, 27:21, 27:25
**NIGH** [11] - 1:21, 7:25, 8:3, 9:4, 9:12, 12:16, 12:23, 14:10, 14:14, 14:20, 15:17
**Nigh** [1] - 11:7
**nobody** [1] - 3:20
**non** [1] - 11:23
**non-diverse** [1] - 11:23
**none** [2] - 4:2, 20:4
**noted** [1] - 21:20
**nothing** [1] - 28:9
**notice** [10] - 17:12, 17:23, 18:4, 18:19, 18:23, 18:25, 19:4, 21:4, 21:9, 21:15
**notices** [1] - 6:5
**NUMBER** [1] - 1:5
**number** [1] - 21:10
**NW** [1] - 2:20

**O**

**o'clock** [2] - 27:23, 28:11
**objecting** [1] - 25:17
**objection** [1] - 4:1
**obligation** [1] - 6:21
**obviously** [2] - 8:22, 17:16
**occasionally** [1] - 20:21
**occurred** [1] - 6:14
**OF** [1] - 1:2
**once** [2] - 19:18, 21:7
**One** [1] - 1:8
**ONE** [1] - 2:16
**one** [22] - 7:1, 7:4, 10:14, 12:4, 13:13, 17:21, 18:15, 18:18, 18:19, 18:22, 19:20, 20:12, 21:2, 21:20, 22:3, 22:22, 24:4, 25:18, 25:21, 25:25, 26:24, 26:25
**ones** [1] - 8:17
**open** [2] - 3:1, 4:1
**opened** [1] - 5:14
**opportunity** [1] - 16:10
**order** [2] - 7:18, 20:16
**Order** [2] - 8:11
**originally** [2] - 23:12, 25:20
**Orlando** [2] - 10:5, 10:13
**ORLEANS** [1] - 1:15
**Orlowsky** [1] - 10:7
**ourselves** [2] - 5:13, 6:1
**own** [2] - 12:23, 13:22
**OXFORD** [1] - 2:16

## P

**PA** [3] - 1:18, 2:9, 2:17
**page** [2] - 27:1, 27:3
**pager** [1] - 21:3
**PAPANTONIO** [1] - 1:20
**papers** [1] - 6:1
**parent** [5] - 22:16, 22:19, 23:1, 24:1, 24:14
**PARKWAY** [1] - 2:2
**part** [7] - 3:20, 4:15, 5:5, 5:20, 11:1, 17:22, 18:3
**participate** [3] - 3:20, 4:16, 24:22
**participation** [1] - 5:4
**particular** [2] - 18:20, 22:5
**particularly** [1] - 19:22
**parties** [1] - 15:18
**party** [2] - 11:23, 17:25
**payers** [1] - 18:1
**pending** [2] - 10:6, 25:20
**Penn** [1] - 28:3
**Pennsylvania** [2] - 22:14, 23:3
**PENSACOLA** [1] - 1:22
**people** [5] - 6:6, 6:12, 25:24, 28:4
**perhaps** [4] - 5:11, 5:17, 9:3, 20:11
**person** [9] - 4:7, 5:21, 6:6, 18:9, 19:12, 19:14, 19:16, 20:11
**personal** [4] - 17:10, 18:1, 18:13, 18:17
**personally** [1] - 18:2
**perspective** [2] - 4:12, 17:19
**Pharmaceutical** [1] - 25:12
**Pharmaceuticals** [9] - 6:22, 6:25, 16:13, 22:16, 23:2, 23:18, 24:2, 25:14, 25:16
**pharmacies** [1] - 6:20
**PHILADELPHIA** [2] - 1:18, 2:9
**physically** [1] - 23:3
**PI** [4] - 9:14, 9:24, 10:8, 26:1
**PIEDMONT** [1] - 2:12
**PIETRAGALLO** [1] - 2:15
**PITTSBURGH** [1] - 2:17
**place** [4] - 3:1, 5:11, 5:16, 15:7
**plaintiff** [3] - 14:1, 15:1, 17:1
**plaintiffs** [19] - 4:2, 7:13, 7:22, 8:13, 8:21, 8:24, 11:1, 13:19, 14:8, 15:16, 15:22, 15:25, 16:14, 17:9, 17:15, 18:23, 18:25, 20:19, 24:10
**PLAINTIFFS** [5] - 1:16, 1:19, 1:23, 2:3, 2:7
**plaintiffs'** [10] - 3:15, 5:7, 9:17, 9:20, 9:21, 9:24, 10:20, 14:10, 15:6, 17:1
**plan** [1] - 13:21
**plans** [1] - 4:20
**players** [1] - 14:16
**Plaza** [1] - 1:8
**PLLC** [1] - 2:4
**podium** [1] - 14:23
**point** [4] - 5:6, 12:21, 20:25, 24:23
**position** [10] - 8:21, 9:6, 16:19, 17:15, 17:19, 25:23, 26:4, 26:6, 26:10
**powers** [1] - 21:6
**prejudice** [1] - 15:9
**present** [2] - 23:3, 24:13
**presently** [1] - 7:6
**presumably** [2] - 6:16, 17:24
**pretty** [4] - 3:25, 8:12, 9:6, 13:21
**principal** [1] - 21:14
**Prinston** [2] - 10:7, 12:3
**proactive** [1] - 10:13
**procedural** [1] - 19:23
**procedure** [1] - 14:21
**proceeding** [1] - 19:19
**proceeds** [1] - 5:5
**process** [11] - 16:2, 16:4, 17:4, 17:12, 17:20, 17:22, 20:7, 20:9, 20:16, 22:3, 24:23
**produced** [1] - 14:2
**product** [3] - 18:7, 18:21, 19:10
**productive** [1] - 5:7
**PRODUCTS** [1] - 1:4
**profile** [1] - 7:22
**program** [2] - 12:21, 12:22
**prominent** [1] - 5:10
**pronounce** [1] - 12:4
**properly** [1] - 19:2
**proportionality** [1] - 11:14
**proposal** [3] - 17:11, 19:4, 19:21
**proposals** [3] - 8:15, 8:16, 8:19
**propose** [1] - 17:4
**proposed** [1] - 4:2
**proposing** [1] - 24:10
**proposition** [1] - 24:7
**prospects** [1] - 7:10
**protected** [1] - 20:16
**protections** [1] - 20:9
**Protective** [1] - 8:11
**protocol** [1] - 8:4
**provide** [1] - 13:3
**provided** [1] - 13:23
**provides** [1] - 20:8
**purposes** [4] - 6:3, 22:6, 22:12, 23:8
**pursuant** [2] - 16:23, 17:17
**put** [13] - 5:11, 5:16, 7:16, 14:2, 15:6, 18:4, 18:19, 18:23, 18:24, 19:4, 21:1, 27:14, 28:7
**puts** [1] - 21:9
**putting** [1] - 21:4

## Q

**quite** [2] - 20:23, 24:12

## R

**raised** [3] - 13:17, 15:14, 25:1
**RASPANTI** [1] - 2:15
**RD** [1] - 2:12
**RE** [1] - 1:4
**reached** [1] - 27:13
**read** [2] - 3:18, 20:12
**really** [6] - 18:11, 19:7, 21:17, 21:18, 21:24, 23:5
**reasonable** [6] - 19:14, 19:16, 19:21, 20:14, 22:3, 28:7
**reasonably** [2] - 21:8, 21:15
**recently** [1] - 10:8
**recognize** [2] - 4:14, 5:2
**record** [5] - 3:14, 22:9, 25:9, 25:11, 27:14
**records** [1] - 14:1
**recovery** [1] - 25:19
**referred** [1] - 24:7
**referring** [1] - 23:24
**regard** [1] - 5:15
**REIN** [1] - 2:19
**related** [1] - 18:21
**relates** [2] - 16:17, 24:11
**relatively** [1] - 15:22
**relay** [1] - 27:24
**relief** [1] - 21:21
**remaining** [2] - 16:17, 23:5
**remains** [1] - 16:4
**remember** [1] - 25:19
**reported** [1] - 21:1
**Repository** [1] - 13:12
**repository** [5] - 13:13, 13:20, 13:22, 13:25, 14:13
**represent** [1] - 4:9
**represented** [2] - 4:24, 12:2
**represents** [1] - 4:13
**request** [2] - 9:9, 21:21
**requested** [3] - 4:11, 6:20, 6:25
**requests** [2] - 7:17, 14:11
**required** [3] - 2:24, 17:17, 21:15
**requirements** [1] - 25:3
**requires** [3] - 19:5, 19:17, 19:18
**requiring** [3] - 16:24, 17:2, 20:17
**research** [1] - 20:23
**resolve** [3] - 8:2, 16:14, 27:4
**resolved** [7] - 3:15, 3:19, 6:15, 13:13, 15:7, 15:24, 16:12
**resort** [4] - 21:13, 24:9, 24:25
**respect** [9] - 13:20, 16:12, 16:15, 16:16, 19:5, 20:24, 22:5, 22:7, 25:2
**respective** [1] - 4:12
**responded** [1] - 3:4
**response** [1] - 27:19
**rest** [1] - 16:6
**result** [1] - 18:8
**retailers** [3] - 4:10, 4:11, 5:18
**review** [1] - 12:1
**RICHARD** [1] - 2:19
**rise** [1] - 3:2
**Rite** [3] - 6:24, 7:1
**ROBERT** [1] - 1:10
**role** [1] - 5:10
**rooms** [1] - 28:4
**ROSELAND** [1] - 2:2
**row** [1] - 9:7
**RUBIN** [1] - 1:17
**Rule** [8] - 19:4, 21:5, 22:10, 22:20, 22:22, 24:8, 24:16, 26:2
**Rutgers** [1] - 28:3

## S

**Sartans** [1] - 9:1
**satisfaction** [1] - 5:21
**satisfied** [1] - 5:1
**satisfies** [1] - 22:10
**satisfy** [1] - 22:20
**saw** [1] - 25:23
**scheduled** [1] - 28:1
**SCHNEIDER** [3] - 1:11, 27:7, 27:21
**Schneider** [6] - 3:12, 4:21, 8:10, 13:17, 27:6, 28:5
**Schneider's** [1] - 7:18
**seat** [1] - 3:5
**Seattle** [1] - 12:24
**second** [1] - 21:16
**Section** [1] - 2:25
**see** [9] - 5:18, 8:23, 9:11, 13:8, 16:8, 19:13, 28:15, 28:16
**select** [1] - 4:10
**sell** [1] - 22:17
**sense** [2] - 11:10, 11:15
**separate** [1] - 14:5
**separately** [2] -

27:14, 27:15
**serve** [4] - 19:19, 21:9, 22:3, 23:22
**served** [26] - 10:8, 16:5, 16:6, 16:16, 16:23, 17:5, 17:13, 17:17, 17:21, 18:12, 19:2, 19:4, 19:18, 19:25, 20:5, 22:2, 22:8, 22:14, 23:1, 23:22, 25:17, 25:24, 26:11, 26:18, 27:2
**service** [35] - 7:17, 16:2, 16:4, 16:11, 16:14, 16:17, 16:24, 17:2, 18:3, 20:6, 20:17, 20:20, 21:4, 21:6, 21:7, 21:8, 21:13, 21:18, 21:19, 22:15, 22:19, 22:23, 24:6, 24:8, 24:12, 24:16, 24:21, 24:24, 24:25, 25:3, 25:21, 26:2
**session** [2] - 5:8
**SETH** [1] - 2:8
**settled** [1] - 17:6
**seven** [2] - 26:25, 27:2
**several** [2] - 7:2, 28:2
**share** [1] - 14:12
**sheets** [1] - 14:1
**short** [1] - 15:25
**shortened** [1] - 15:2
**shortly** [1] - 15:13
**side** [4] - 4:3, 11:24, 13:16, 13:19
**sides** [1] - 27:1
**signed** [2] - 22:15, 23:4
**simple** [1] - 22:1
**single** [3] - 21:4, 23:6, 24:21
**six** [1] - 24:19
**skepticism** [1] - 3:6
**SLATER** [13] - 2:1, 2:1, 3:16, 3:23, 7:20, 13:1, 13:7, 13:21, 27:11, 27:16, 27:24, 28:9, 28:13
**slow** [1] - 24:23
**smaller** [2] - 4:18, 5:9
**SMITH** [3] - 2:19, 8:8, 27:15
**Smith** [2] - 4:9, 27:12
**software** [1] - 14:5
**Solco** [1] - 12:3
**sold** [1] - 18:22
**someone** [2] - 6:4, 19:9
**somewhere** [1] - 13:14
**soon** [2] - 8:12, 15:22
**sophisticated** [2] - 19:8, 22:21
**sophistication** [1] - 19:16
**sorry** [1] - 25:12
**SOUTH** [1] - 2:9
**speaking** [1] - 16:18
**specific** [2] - 10:10, 23:12
**spoken** [1] - 11:7
**spring** [1] - 3:7
**stand** [1] - 3:11
**start** [1] - 15:25
**starting** [1] - 20:24
**State** [8] - 9:13, 10:8, 10:13, 10:22, 11:1, 11:19, 12:1, 12:18
**statement** [1] - 25:23
**STATES** [2] - 1:1, 1:10
**States** [2] - 1:7, 23:18
**STATUS** [1] - 1:4
**steering** [1] - 9:24
**step** [1] - 21:23
**still** [5] - 7:23, 8:4, 8:16, 13:16, 24:20
**stop** [2] - 21:15, 22:4
**STREET** [4] - 1:15, 1:18, 2:9, 2:20
**structure** [8] - 3:20, 4:2, 4:4, 4:17, 5:2, 5:14, 5:16, 7:6
**submission** [1] - 8:20
**subsidiaries** [1] - 22:24
**subsidiary** [1] - 22:25
**successfully** [1] - 27:2
**sued** [5] - 17:25, 23:25, 24:5, 25:5
**suffered** [1] - 18:20
**suffice** [1] - 20:21
**sufficient** [1] - 21:5
**suggest** [1] - 24:4
**suggests** [1] - 20:25
**SUITE** [5] - 1:18, 1:21, 2:2, 2:5, 2:12
**supplier** [1] - 6:21
**support** [1] - 24:7

**T**

**T-a-c-k** [1] - 18:17
**table** [1] - 16:8
**tack** [1] - 18:17
**task** [1] - 6:9
**team** [4] - 3:23, 3:25, 4:7, 5:22
**technically** [1] - 20:4
**telephone** [1] - 4:17
**ten** [1] - 11:5
**terms** [2] - 15:18, 26:4
**territorial** [1] - 22:23
**Teva** [11] - 16:20, 22:6, 22:7, 23:8, 23:9, 25:1, 25:6, 25:8, 25:12, 25:14, 25:16
**TEVA** [1] - 2:14
**Teva's** [1] - 26:10
**THE** [72] - 1:2, 1:10, 1:19, 3:2, 3:3, 3:5, 3:22, 3:25, 5:23, 6:3, 6:10, 6:15, 6:18, 7:9, 7:16, 7:22, 8:1, 8:4, 8:10, 8:24, 9:1, 9:10, 9:13, 9:17, 9:20, 10:1, 10:4, 10:10, 10:15, 10:19, 10:25, 11:9, 11:14, 11:18, 11:21, 11:23, 12:5, 12:11, 12:13, 12:15, 12:20, 12:25, 13:6, 13:12, 14:8, 14:12, 14:15, 14:23, 15:14, 15:20, 17:20, 18:6, 19:7, 19:14, 20:2, 20:19, 23:9, 25:6, 26:7, 26:10, 26:14, 26:17, 26:21, 26:23, 27:9, 27:17, 27:20, 28:5, 28:7, 28:10, 28:14, 28:20
**they've** [3] - 8:22, 16:6, 18:24
**third** [2] - 12:4, 17:25
**thoughts** [1] - 14:17
**thousand** [1] - 17:2
**three** [10] - 17:1, 17:9, 17:21, 20:17, 23:18, 26:11, 26:25, 27:22
**throughout** [1] - 15:12
**thrown** [1] - 12:21
**timing** [1] - 9:7
**Title** [1] - 2:24
**today** [2] - 17:7, 20:22
**tolling** [1] - 15:10
**took** [2] - 3:1, 25:23
**tool** [3] - 21:14, 24:8, 24:9
**TORRENT** [1] - 2:21
**Torrent** [3] - 16:13, 16:15, 27:13
**touch** [1] - 12:6
**towards** [1] - 13:4
**town** [1] - 28:4
**TPP** [1] - 22:8
**track** [1] - 11:2
**TRAURIG** [1] - 2:11
**tremendous** [1] - 20:18
**Trischler** [7] - 4:7, 20:24, 21:17, 22:15, 22:18, 23:4, 26:5
**TRISCHLER** [15] - 2:16, 4:6, 5:25, 6:8, 6:14, 6:16, 6:19, 16:8, 17:22, 18:15, 19:12, 19:15, 20:3, 23:11, 26:19
**true** [1] - 2:24
**try** [3] - 24:16, 24:18, 24:24
**trying** [4] - 7:9, 14:21, 20:7, 20:8
**turned** [1] - 3:21
**tweaks** [1] - 8:13
**twice** [1] - 11:10
**two** [12] - 6:6, 9:13, 10:6, 10:8, 21:2, 21:18, 21:25, 22:1, 22:5, 23:20, 26:3, 28:11
**type** [1] - 25:18
**types** [1] - 19:5
**typical** [1] - 21:7

**U**

**U.S** [1] - 22:24
**U.S.C** [1] - 2:25
**under** [6] - 16:5, 19:22, 20:18, 21:5, 24:8, 26:2
**unfold** [1] - 5:3
**UNITED** [2] - 1:1, 1:10
**United** [2] - 1:7, 23:17
**unless** [3] - 24:13, 27:4, 28:14
**unnecessary** [1] - 14:18
**unserved** [1] - 23:6
**unusual** [2] - 20:2, 20:3
**up** [7] - 3:11, 4:1, 14:23, 16:25, 20:20, 27:22, 28:8
**upstream** [1] - 6:12
**user** [1] - 14:6
**ut** [1] - 19:10
**ut-oh** [1] - 19:10

**V**

**VALSARTAN** [1] - 1:4
**Valsartan** [2] - 15:4, 23:16
**various** [1] - 14:10
**vary** [1] - 21:21
**vast** [1] - 19:25
**venue** [1] - 25:10
**versus** [1] - 10:7

**W**

**wait** [2] - 3:8, 9:10
**waived** [1] - 22:19
**waiver** [6] - 22:15, 23:4, 24:1, 24:3, 24:4, 25:4
**waiving** [2] - 25:9, 25:22
**wants** [8] - 4:5, 5:4, 16:9, 18:8, 18:9, 18:10, 27:9, 27:18
**WASHINGTON** [1] - 2:20
**Wednesday** [1] - 28:11
**week** [2] - 15:12, 28:11
**weekly** [1] - 4:17
**welcome** [1] - 3:5
**whatsoever** [1] - 24:3
**WHITELEY** [2] - 1:14, 1:14
**whole** [1] - 5:19
**WILEY** [1] - 2:19
**world** [2] - 22:13, 22:21

**Y**

**yourselves** [2] - 5:23, 16:3

Z

**ZAMORA** [11] - 10:3, 10:5, 10:12, 10:18, 10:23, 11:4, 11:12, 11:17, 11:20, 11:22, 11:25
**Zamora** [1] - 10:6
**ZHP** [2] - 16:15, 16:17