UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
IN RE:                        )    19-MD-2875(RBK-JS)
                              )
                              )    Camden, NJ
VALSARTAN NDMA PRODUCTS       )    June 12, 2019
LIABILITY LITIGATION          )    3:04 p.m.
```

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE JOEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:          ADAM M. SLATER, ESQUIRE
                             MAZIE, SLATER, KATZ &
                             FREEMAN, LLC
                             103 Eisenhower Parkway
                             2nd Floor
                             Roseland, NJ 07068

                             RUBEN HONIK, ESQUIRE
                             DAVID J. STANOCH, ESQ.
                             GOLOMB & HONIK, PC
                             1835 Market Street
                             Suite 2900
                             Philadelphia, PA 19103

                             DANIEL NIGH, ESQUIRE
                             LEVIN PAPANTONIO
                             316 South Baylen Street
                             Pensacola, FL 32502

                             CONLEE WHITELEY, ESQ.
                             KENNER & WHITELEY
                             701 Camp Street
                             New Orleans, LA 70130

                             BEHRAM V. PAREKH, ESQ.
                             KIRTLAND & PACKARD, LLP
                             1638 Pacific Coast Hwy.
                             Redondo Beach, CA 90277

```
APPEARANCES: (cont.)

For the Plaintiffs:            MIKAL C. WATTS, ESQ.
                               WATTS GUERA, LLP
                               4 Dominion Drive, Bldg. 3
                               Suite 100
                               San Antonio, TX 78257

For the Defendants:            SETH A. GOLDBERG, ESQUIRE
                               JESSICA A. PRISELAC, ESQUIRE
                               ALAN KLEIN, ESQUIRE
                               DUANE MORRIS, LLP
                               30 South 17th Street
                               Philadelphia, PA 19103

                               LORI G. COHEN, ESQUIRE
                               VICTORIA D. LOCKARD, ESQUIRE
                               GREENBERG TRAURIG, LLP
                               3333 Piedmont Road NE
                               Suite 2500
                               Atlanta, GA 30305

                               CLEM C. TRISCHLER, ESQUIRE
                               PIETRAGALLO GORDON ALFANO
                               BOSICK & RASPANTI, LLP
                               One Oxford Centre
                               38th Floor
                               Pittsburgh, PA 15219

                               RICHARD W. SMITH, ESQUIRE
                               WILEY REIN, LLP
                               1776 K Street NW
                               Washington, DC 20006

                               BRIAN RUBENSTEIN, ESQUIRE
                               GREENBERG TRAURIG
                               1717 Arch Street
                               Suite 400
                               Philadelphia, PA 19103

Audio Operator:                TARYN FRANCHETTI

Transcribed by:                DIANA DOMAN TRANSCRIBING, LLC
                               P.O. Box 129
                               Gibbsboro, NJ 08026
                               Office: (856) 435-7172
                               Fax:    (856) 435-7124
                               Email:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

1                              I N D E X

2

3    COLLOQUY RE:                                          PAGE

4    Confidentiality order                                   6

5    Core discovery                                          9

6    Master complaints                                      16

7    Short form complaints                                  16

8    Insurance information                                  16

9    Streamlined service protocol                           21

10   Plaintiff fact sheets                                  21

11   Stipulation for dismissal                              23

12   Document repositories                                  23

13

14

15

16

17

18

19

20

21

22

23

24

1       (The following was heard via telephone conference at

2       3:04 p.m.)

3              THE COURT:  Good afternoon, Counsel.  Judge

4       Schneider here in the matter of <u>In Re: Valsartan MDL</u>.  We're

5       on the docket -- excuse me, we're on the record.  Docket

6       Number 19-2875.  And thank you very much for your indulgence

7       in moving the conference call up to 3 o'clock from 4 o'clock.

8       I'm very grateful.

9              Could we have the names of counsel on the phone

10      starting with plaintiff's counsel?

11             MR. SLATER:  Good morning, Your Honor.  Adam Slater

12      for the plaintiffs.

13             MR. HONIK:  Ruben Honik for plaintiff.

14             MR. NIGH:  Daniel Nigh for plaintiff.

15             THE COURT:  Okay, defense counsel?

16             MR. GOLDBERG:  Seth Goldberg on behalf of the

17      Princeton defendants and the joint defense group.

18             MS. COHEN:  Good afternoon, Judge.  This is Lori

19      Cohen on behalf of the Teva defendants and the joint group as

20      well.

21             MR. TRISCHLER:  Clem Trischler, Your Honor.  Good

22      afternoon.  Representing Mylan Pharmaceuticals and the joint

23      defense group.

24             THE COURT:  Okay.  Is that all?

25             MR. PAREKH:  Good afternoon, Your Honor.  This is

1    Behram Parekh on behalf of the plaintiff.  (inaudible)

2          THE COURT:  Anybody else?  Okay, great.  Counsel,

3    thank you for your agendas.  Like I said when we spoke, I'm

4    perfectly fine for these calls with separate submissions so

5    long as it's the same issues everybody addresses in the same

6    order.  So I have absolutely no problem with what you

7    submitted.  It was a terrific update on the issues.

8          I'm on the bench.  My law clerk's getting my -- my

9    copies of the letters, so I don't have it in front of me now.

10   Let's just go down each of the topics one by one.  I've read

11   them.  I know what the issues are.  And we'll see what we have

12   to discuss.

13         So what's issue number -- what's topic number one?

14         UNIDENTIFIED COUNSEL:  The confidentiality order,

15   Your Honor.

16         THE COURT:  Okay. I really want to get that entered

17   because I just don't want someone to argue that they don't

18   have to produce documents because the order isn't entered yet.

19   Where are we on that?

20         UNIDENTIFIED COUNSEL:  Your Honor, the

21   confidentiality order was revised by the defense and sent over

22   to us late Monday.  Honestly, between then and now I haven't

23   had a chance to go through it in detail, but I would expect

24   that no later than Monday I can get back to the defense and

25   tell them if there's any remaining issues.

1          MS. COHEN:  And Judge, good afternoon again.  This
2     is Lori Cohen.  So we're actually waiting to get the
3     transcripts, and I don't mean to follow up with any criticism,
4     but we wanted to go that, you know, compared to the draft as
5     well.  So he did send us a plan.  I think we were all hoping
6     that we could have the draft to look at as well.

7          And Mr. Slater's timeline works for us.  We may have
8     some additional minor changes.  But to your concern, I don't
9     think anyone is going to hold back on producing anything,
10    because I think you suggested at the last conference that
11    anything produced be subject to the, you know, the same
12    confidentiality order under the district anyway.  So I think
13    we can -- we won't need the lack of an executed signed
14    confidentiality order.  I think we would produce them subject
15    to the confidentiality order that exists as you suggested.
16    And hopefully we'll have this resolved by then anyway.

17         THE COURT:  Okay.  Terrific.  Did -- did the parties
18    order the transcript?

19         MS. COHEN:  We did, Your Honor.  And I think it was
20    supposed to be done this week.  Again, I know it was -- it was
21    a long hearing.  So again, I don't want to be a critic of --

22         THE COURT:  No, no, no.  They're very good.  They're
23    very good.

24         MS. COHEN:  And we could -- yeah, we should have it.
25    We were supposed to have -- I think the estimate was Monday,

1   and we didn't get it on Monday.  So I think we want to have it

2   to go through some -- there are a few additional items.  We

3   can wait and see if the plaintiffs agree with us, and then

4   raise them with you.  Or I can, you know, kind of highlight a

5   few of them now.  But I think we're very close.

6               THE COURT:  Okay.

7               MS. COHEN:  We just have -- you know, there are a

8   few -- a few lingering issues, and maybe the transcript will

9   help us, and maybe we can come back to you with one or two

10  last points.

11              THE COURT:  That's fine.  I understand why you want

12  to see the transcript.  If you don't get it by tomorrow, we'll

13  follow up with the transcription service.  They're usually

14  very, very good.

15              So you'll get the transcript.  I agree, the

16  production won't be held up.  You can still rely on the

17  district's order.  And we'll put this on the agenda that it

18  absolutely will be finalized by -- when is the next

19  conference, June 26th?

20              MS. COHEN:  Right.

21              THE COURT:  Yeah.  No problem.  We'll finalize it

22  June 26th.

23              MS. COHEN:  Judge if we -- now if we have -- we

24  can't reach agreement, and just to alert you we had four

25  additional imperatives and some red lines that we thought

1    still needed to be worked out.  So it's not a huge amount.  I

2    know it took some time at the last conference.  If we still

3    have a few issues, should we set a separate call with you to

4    go over them, or present them to you in an email?  What's the

5    best avenue to get this finalized if we want to do it before

6    the next conference?

7            THE COURT:  You can just send me a letter with what

8    the issues are and I'll rule on it.  Or, it's only a week or

9    two, you could put it in the joint agenda for the 6/26 and

10   we'll decide it at the conference.

11           MS. COHEN:  Okay.

12           THE COURT:  What's ever easier.

13           MS. COHEN:  I'm happy to get it, to highlight it

14   even now, but since plaintiff they hadn't fully reviewed it

15   yet, it might make more sense to let them do that, and then we

16   can talk through it and then come back to you.

17           THE COURT:  I agree.  I think that makes much sense.

18           UNIDENTIFIED COUNSEL:  Just one thing Judge, because

19   Ms. Cohen was making -- had thrown together the idea of

20   possibly talking before the conference.  I had informed Your

21   Honor that I will be, unless something changes, not at the

22   next conference because I'm supposed to be out of the state on

23   vacation, which I'm trying to change but having some trouble.

24   If we have any discreet issue, then I think it would be

25   helpful just to talk to them directly with Your Honor.

1           THE COURT:  Let's do it.

2           UNIDENTIFIED COUNSEL:  Rather than me having to

3   explain it to someone else.  Could we call, maybe, if that is

4   an issue?

5           THE COURT:  No problem.  Send me a email about -- or

6   a quick call.  Absolutely no problem.  We'll find time to get

7   it finalized.

8           UNIDENTIFIED COUNSEL:  Thank you, Judge.

9           THE COURT:  Happy to --

10          UNIDENTIFIED COUNSEL:  It won't be an issue.

11          THE COURT:  Right.  We'll be happy to do that to get

12  it done.

13          Core discovery.  I've read Mr. Goldberg's letter.  I

14  have the letters in front of me now.  It looks like, you know,

15  they'll be produced timely.  We have the extension.  There's

16  going to be the rolling production.  And it looks like the

17  production's going to be pursuant to the ESA protocol.  So do

18  we have an issue, Mr. Slater?

19          MR. SLATER:  No.  If it's pursuant to the ESI

20  protocol, that's fine.

21          THE COURT:  What I'd like to do is I hope --

22          MR. GOLDBERG:  Your Honor -- Your Honor, this is

23  Seth Goldberg.  I think we have to clarify what -- when we're

24  talking about producing under the ESI protocol.  Because our

25  production as we envision it will not be under the ESI

1     protocol to the extent that that protocol requires certain

2     categories of metadata be produced with the documents.  We

3     intend to produce these documents, this batch of documents of

4     core discovery, as Bates stamped PDFs with a subset of

5     categories of metadata.  The ESI protocol, which is a much

6     more complex -- requires a much more complex set of metadata

7     and production requirements.

8             Our understanding as set forth in the core discovery

9     order and how we've approached core discovery was, for

10    expediency's sake, it was important to get the documents which

11    are not in traditional ESI emails from (inaudible)in an ESI

12    format so that we can get them over to plaintiffs quickly.

13    And that's how we've approached it.  We think that that's a

14    sufficient producia for what the Court has envisioned with

15    respect to core discovery.

16            MR. SLATER:  Your Honor, it's Adam Slater.  I'm

17    going to hand it off to Mr. Parekh in one second.  Just -- and

18    the other issue with that, as we expressed in our letter,

19    because we didn't believe that the fact that it's core

20    discovery should limit our avail -- our ability to have the

21    full information.

22            Now, what we said in our letter is if they want to

23    produce it in that format now, but then in a short time

24    produce it compliant with the ESI protocol, we can live with

25    that if it's a timing issue.  But, and I'll let Mr. Parekh

1    talk a little more about the technicalities right now on some

2    of the types of documents.

3              THE COURT:  Let me -- can I just weigh in on this

4    for a second?  Given that this is the quote-unquote "core

5    discovery," and what we envisioned by that is the

6    unquestionably relevant and some of the most important

7    documents in the case, it would seem logical that eventually

8    plaintiffs would get the same sort of metadata that they are

9    going to get with the other documents in the case.

10             I have no problem, zero problem, if these documents

11   are produced to plaintiff so that they could get the ball

12   rolling.  And subsequently down the road we'll get supplements

13   from defendants as to the requested data.

14             But what I'd like to do is this.  I'd like to handle

15   all issues regarding the core discovery at one time.  Just

16   like the insurance information, I would be very pleasantly

17   surprised if plaintiff is satisfied with everything they

18   receive, that it's in full 100 percent compliance with the

19   Court's order.  Something tells me that won't happen, although

20   I would love for that to happen.

21             So what I think is the prudent way is, let's wait

22   until July whatever when the production is supposed to be

23   complete, and then plaintiff can raise every issue at once

24   about the production, including it wants X, Y, Z metadata for

25   these documents, and we'll just deal with the issues at one

1   time collectively rather than dealing with it piecemeal.

2          I don't see any prejudice to the plaintiff.  They're

3   going to get the documents.  They could start reviewing them.

4   And if the Court rules that the metadata has to be

5   supplemented, you'll get it in due course.

6          Any problem if we proceed that way, plaintiffs?

7          MR. SLATER:  No problem at all, Judge.  That's very

8   reasonable.

9          THE COURT:  Okay.  So I don't know if the defendants

10  are taking the position they don't think they have to produce

11  the missing metadata for the core discovery.  But it doesn't

12  matter.  We'll deal with that issue at one time, Mr. Goldberg.

13         MR. GOLDBERG:  Yeah, Your Honor -- Your Honor, I

14  just would, you know, just sort of highlight one issue that is

15  -- I guess two issues.  One is when we saw, you know, Mr.

16  Slater's letter, I think the defendants independently looked

17  at their productions.  And you know, certainly producing -- I

18  don't think the defendants are opposed to producing that kind

19  of metadata.

20         I think one of the questions is if we go through now

21  with the full production of the information, and then are

22  required to produce -- produce it pursuant to the ESI protocol

23  if we're under the ESI protocol, there is going to be A) a

24  significant expense that's, you know, sort of something that

25  we're going to have to address.  And there will be a lag time

1    for that.  And just as long as that -- those two issues are

2    addressed by the Court, I think that we're -- we're not at

3    this point formally opposed to producing the metadata.

4              THE COURT:  So why don't you just produce it?

5              MR. GOLDBERG:  We can, you know, (inaudible).  We've

6    taken this approach to really -- to satisfy the Court's

7    requirement that it be done quickly.  And you know, had -- had

8    there not been this need to have it done quickly, we would

9    have done one production of the core discovery subject to the

10   ESI protocol, but somewhere down the line.  And so that shifts

11   -- there's a tension here because, you know, plaintiffs may

12   just say hey, reproduce it.

13        But, you know, there's a real cost to that.  You're

14   running a -- you're running thousands of documents with

15   various kinds of files through a vendor.  And so it is --

16   there's a very real cost to that that we should just be

17   cognizant of.  And while we can produce this stuff now, that

18   will be an issue that we deal with later.  Or do, you know,

19   the Court say let's put off the production of core discovery.

20   We're not suggesting that, but we are suggesting that there is

21   some sort of burden that's being put on the defendants by

22   having to reproduce information.

23              It's not clear to us why every category of metadata

24   would be required with respect to this kind of information.

25   And maybe a better approach to address this cost issue, and

1    maybe we can deal with it in July, is to say plaintiffs

2    demonstrate why you need more metadata.  Because we shouldn't

3    have a compromised position where we're producing certain

4    kinds of documents in the files, i.e. spreadsheets, right?

5    Because that's the kind of information you need to manipulate.

6           But the way we intend to produce the PDFs should

7    reflect the format (inaudible).  So what you're -- what

8    essentially may be happening here is to satisfy a hyper-

9    technical concern about (inaudible) causing a significant

10   burden on the defendants to reproduce a large volume of

11   information.

12          THE COURT:  Mr. Goldberg, here's what I have to say

13   to what you just said.  If the defendants want to avoid the

14   expense of doing something twice, then when you make your

15   production by July, produce all the requested metadata in the

16   ESI protocol.  If you don't want to do that, we'll deal with

17   the issue separately when we deal with all core discovery

18   issues.  And it's very possible this Court may order the

19   defendants to produce the supplemental metadata in the ESI

20   protocol.

21          So you know, if the defendants are worried about the

22   cost, then just produce it the first time.  I don't have a

23   problem with that.  I'm not going to delay the production

24   dates any longer.

25          MR. GOLDBERG:  Right.  I think the question is, you

1    know, is there -- is that -- is it -- and we'll certainly look

2    at that, Your Honor, is it feasible for us to do something

3    like that in the next month with respect to this information.

4    We do have the production on June 17.  And so, you know, I

5    think it's unlikely that we would be able to produce, let's

6    say, the ANDA files which we're all planning to produce next

7    week along with the metadata for those ANDA files,  The

8    metadata that would be required under the ESI protocol.

9              THE COURT:  I'm not -- I agree with you.  I'm not

10   sure you do need the metadata for the ANDA files.  I'm not

11   sure.  If there's a legitimate --

12             MR. GOLDBERG:  And that's where we would say -- we

13   would say well, maybe they should demonstrate why they need

14   that kind of metadata for those kinds of files if we've

15   already produced the PDFs.  They can see how they were

16   produced to the FDA.  Maybe that should be sufficient with

17   respect to these kinds of documents, ANDA files and drug

18   master files.

19             THE COURT:  I think we're going in --

20             MR. GOLDBERG:  This is not an email.

21             THE COURT:  I think we're going in circles.  So if

22   that's the position the defendants want to take, like I said,

23   it's perfectly fine with the Court.  Don't produce it, and

24   after July all these issues will be dealt with at one time.

25   All of your objections to producing metadata pursuant to the

1    ESI protocol, and all of plaintiff's likely objections to the

2    completeness of the production, which I hope doesn't happen

3    but we live in the real world.  It's going to happen.  We'll

4    deal with them all at one time.  Okay?

5              So let's go to the next issue, master complaints.

6    Plaintiffs are going to file them on time, right?  And then

7    we'll -- the responses are stayed.  And then the issues will

8    be joined, I think, right plaintiff?  Are we going to see any

9    surprises do you think, plaintiffs?

10             MR. SLATER:  I hope not, Your Honor.

11             THE COURT:  Okay.

12             UNIDENTIFIED COUNSEL:  It'll surprise us.

13             THE COURT:  Short form complaints.  Can we get that

14   finalized by the 26th?

15             MR. NIGH:  Your Honor, this is Daniel Nigh.  We sent

16   our proposal for the short form complaints to defendants.  I

17   don't believe we've received any response back from them.

18             THE COURT:  Yeah.  I think, if I remember right,

19   they said they're going to respond by June 14th.  So we'll put

20   that on the agenda for June 26th.

21             MR. NIGH:  Fine.

22             THE COURT:  Insurance information.  Can I hear from

23   the defendants on this first, given plaintiff's letter?

24             MR. GOLDBERG:  Sure, Your Honor.  This is Seth

25   Goldberg.  You know, it's our understanding that all of the

Colloquy                                17

 1    defendants are to produce insurance policies that had

 2    insurance policies have produced them.  I understand Teva, you

 3    know, provided something different.  And that's something that

 4    Teva will work out with plaintiffs.

 5              And as we indicated in our letter, to the extent

 6    there are reservation of rights letters, you know, we're --

 7    and to make that determination whether they've been issued.

 8    And you know, would supplement production with those to the

 9    extent there are any.

10              THE COURT:  Well, I have a letter from plaintiffs,

11    maybe it was updated, that says there was no disclosure by

12    CHP, Torrid (phonetic), Hetero.  What do we do with those?

13              MR. GOLDBERG:  So I think -- yeah, I think the -- I

14    think the issue is that, you know, and I think what plaintiffs

15    are viewing as no disclosure, the result is because there is

16    no policy.  And I think what -- the way this was approached

17    was some of the parties simply just sent an email with their

18    policy to plaintiffs, not a formal Rule 26 disclosure with a

19    caption and a response, attaching the policy.  We just

20    provided the policy.

21              So you know, for instance, in the case of CHP, or

22    the case of Torrid, there isn't a policy.  With respect to

23    Hetero, it is my understanding that Hetero USA, which is the

24    only Hetero entity in the -- in the MDL that's been served and

25    is being represented in the MDL, does not have a policy.  I'm

1    sorry, was not subject to the core discovery order, because it

2    is not a API manufacturer or finished dose manufacturer.  It

3    is -- it views itself to be the FDA liaison only.

4           THE COURT:  Okay.  So plaintiffs, are you satisfied

5    with Mr. Goldberg's representation that CHP and Torrid have no

6    insurance to disclose?

7           UNIDENTIFIED COUNSEL:  Yeah.  I mean, if they have

8    nothing, they have nothing.  I was going to suggest, listening

9    to Mr. Goldberg speak, that it might make sense, so that we

10   don't have ambiguity and everybody knows exactly where we

11   stand, if the defense could send us -- it even can be done by

12   a letter, it's fine -- listing each of the parties that were

13   subject to the order and just confirming what they have

14   produced.  Or if there's no insurance, to say there's no

15   insurance, so that nobody is having to keep together a bunch

16   of emails so everybody has it in one place.

17          And I think, you know, we added also that we thought

18   that it would be a good idea to speak to the defense just so

19   we can talk through the insurance issues and make sure that

20   nothing's being missed.  For example, it looks like these are

21   claims made policies that we've seen, and we had some question

22   about whether they were current stage policies, whether there

23   were any tails on other policies, just to make sure that every

24   stone's been unturned, you know, overturned, and just to make

25   sure nobody misses anything.  We just want to be reasonable

1   that, you know, one document that says this is everything, and

2   then talk to the defense and make sure that, you know,

3   nobody's missed anything along the way.

4           MS. COHEN:  And Judge, this is Lori Cohen.  I can

5   just comment here on behalf of Teva because there was a

6   reference in the letter to you under side B that we said there

7   was no need to disclose, which isn't accurate.  We actually

8   did a pleading saying that we were disclosing our insurance

9   information consistent with the order and pursuant to Federal

10  Rules of Procedure 26A:1a(4), just like the order said.

11          Our response is saying more than you need to hear,

12  Judge.  But since we're one of the main defendants, we said

13  that Teva is self-insured beyond any award anticipated in the

14  case at this time.  And so we actually disclosed in a pleading

15  to make it very clear that we were stating this on behalf of

16  our clients and ourselves, and we do think it's compliant.

17          And basically we said that because the Rule 26:A

18  that we referenced requires disclosure of any insurance which

19  may be liable to satisfy all or part of the possible judgment.

20  We think we have disclosed that, but we're happy to talk

21  further with Mr. Slater and the plaintiff team.  There were no

22  reservation rights letters.  But I think we do disagree with

23  the statement that we said there was no need to disclose it,

24  because we actually disclosed in these pleadings.

25          UNIDENTIFIED COUNSEL:  I think we're explaining a

1    semantic issue here.  If I understand Ms. Cohen in her

2    disclosure, which I think we understood very well, they were

3    saying we have excess policies that your case isn't worth

4    enough to get close to those excess policies, so you don't

5    need to know what they are.  That's my street interpretation

6    of it.  So I think if there's an insurance policy that's in

7    existence, needs to be disclosed.

8            THE COURT:  Well, let me -- let me -- if I had to do

9    it over again, I would make my order more specific to avoid

10   these sorts of problems.  I think all the response of

11   defendants' disclosures should be in writing.  The failure to

12   submit something in writing does not -- should not necessarily

13   be deemed to mean they have no insurance.  Plaintiff doesn't

14   know if they are just ignoring the direction to advise them of

15   the insurance.  Excess policies have to be identified, and

16   reservation of rights, and declaration letters have to be

17   produced.  That's what I intended to mean by my order.

18   Granted it wasn't as clear as it could be, but I'm going to

19   clarify the order.  And to the extent the disclosure wasn't

20   done in accordance with the old order, I'll just order it be

21   supplemented.

22           Rather than putting burden on defendants, Mr.

23   Slater, to prepare a list of responsive defendants and what

24   they said, I think the burden should be on plaintiffs in that

25   regard.  I think the plaintiffs should put together what

1    disclosures they have.  And if there's something missing,

2    let's get it identified and let's get it produced, okay?

3            MR. SLATER:  We will, Judge.  If I understand you

4    want us to send them a letter saying this is what our

5    understanding is as of what's been produced.  And to the

6    extent there's anything that either -- if there's a party that

7    has no insurance, please disclose that so we (inaudible)

8            THE COURT:  Yes.

9            MR. SLATER:  If there's anything else, please let us

10   know if we missed it.

11           THE COURT:  And you should also -- you should also

12   identify who the plaintiffs think the responsive defendants

13   are so the plaintiffs and defendants are on the same page with

14   that.

15           MR. SLATER:  Will do.

16           THE COURT:  Okay.  So my order is going to say the

17   response has to be in writing.  Excess policies have to be

18   identified.  Reservation of rights and declaration letters

19   have to be produced.  There's a continuing obligation,

20   obviously, to supplement that disclosure.  And we'll give the

21   defendants more time to do that in the event they haven't done

22   it to date.

23           Okay.  Number six, streamlined service protocol.

24   You can submit it to the Court.  We'll sign it right away.

25   That's perfect.

1            Plaintiff fact sheets.  Ms. Cohen, I know this was

2      important to you, so I'd like to stay on top of it.

3            MS. COHEN:  Yes.  Yes, exactly, Your Honor.  And we

4      are -- we've been working amongst the defense group on that.

5      And we will have a first draft of the plaintiffs' fact sheet,

6      the personal injury plaintiff, circulated by no later -- no

7      later than this Friday, the 14th.

8            THE COURT:  Great.

9            MR. SLATER:  Fine.

10           MS. COHEN:  And then we're working on the other two,

11     that is (unidentified) for the third-party payer and consumer

12     class representative.  And we intend to get that circulated

13     hopefully by next Wednesday the 19th.  So we'll have them both

14     in the plaintiffs' hands.  Hopefully we can hear back from

15     them quickly so we can discuss them with you on the 26th.

16           THE COURT:  Fantastic.  I guess the plaintiffs

17     should work on the defendants' fact sheet, right?

18           MR. SLATER:  We certainly can -- we can start to do

19     that and speak to the defendants.  I think it's going to

20     depend on how things are structured in discovery.  You know, I

21     think that in terms of general discovery we probably don't

22     need a fact sheet.  I would think those will become more

23     relevant when we get to a bellwether process, but we can

24     certainly start to do that as well.

25           THE COURT:  Okay.  Well that ball is in the

1    plaintiffs' court.  If you want the defendants to prepare fact

2    sheets, the different categories of defendants, then the

3    ball's in plaintiffs' court to get a first draft to the

4    defendants.

5              MR. SLATER:  Will do.

6              THE COURT:  ESI protocol, fantastic.  Just send it

7    to the Court.  We'll take care of entering it.

8              The stipulation for dismissal, I think the

9    defendants going to get back to you by the end of this week.

10   That's great.  Hopefully we can discuss it on the 26th if we

11   have to.

12             Document repositories.  Sounds like -- I don't

13   remember.  Were we talking about a joint repository, or

14   separate repositories for plaintiffs and defendants?

15             MR. GOLDBERG:  Separate repositories, Your Honor.

16             THE COURT:  Okay.  So defendants are working on

17   their issue?

18             MR. GOLDBERG:  Yeah, defendants have identified and

19   we're working on creating a repository.

20             THE COURT:  Fantastic.  Coordination of state cases.

21   It looks like -- I don't know if Judge Kugler has spoken to

22   the state judges yet, but if he hasn't he will.  It's great

23   that so far they -- looks like they seem to be on board with

24   coordination.  We'll have to see how that develops.

25             MR. GOLDBERG:  Yeah, Your Honor.  Just giving you

1    two cases, <u>Runo</u> and <u>Orlowsky</u>.  We entered the stipulation in

2    both cases that was ordered in <u>Runo</u> and hasn't been answered

3    by the Court, and I'll ask to get that sent, that coordinates

4    defendants' response to the complaint in those cases to any

5    sort of responses, put it in the MDL.  But it doesn't

6    coordinate those cases for purposes of discovery.

7              THE COURT:  Oh.  Okay.

8              MR. GOLDBERG:  So we would ask if Your Honor or

9    Judge Kugler could reach out to those judges.  The court in

10   <u>Orlowsky</u> has set a scheduling conference for July 18.  And we

11   would think if Judge Kugler could reach out to that judge in

12   advance of that, that may -- that may help things.

13             But again, Victor Orlando, who was in Court last --

14   a few weeks ago, did a brief to coordinate those actions.  So

15   there shouldn't be a problem, but it may be helpful if Judge

16   Kugler reaches out to the judges in the New Jersey Court

17   actions.

18             THE COURT:  I agree with you, and we'll take care of

19   that.  It looks like the Chicago case, is that active?

20             MR. SLATER:  That is active, and there's been

21   motions crafted.  We filed -- the only defendant in that

22   action is Walgreen's.  And pursuant to their indemnity

23   agreement that our client, that SALCO (phonetic) has, we have

24   attempted to join that action.  There's been motion practice

25   with respect to that.  And no discovery issues in the near --

1    in the near term in that case.  So it may be better with

2    respect to that case, since we have a little time to see how

3    the motions play out.  But we would envision trying to get

4    that matter coordinated to the extent it is still in existence

5    as this case proceeds.

6            THE COURT:  Just to double check, do you think it

7    would be helpful if this Court reaches out -- Judge Kugler or

8    I reaches out to the judge in Chicago to just touch base with

9    them about what's happening here?

10           MR. SLATER:  I do, because that is, you know, sort

11   of the basis of our join in is to get the action in for

12   Federal Court so that we could get it put into the MDL.

13           THE COURT:  Okay.  We'll -- we'll take care of it.

14           MR. SLATER:  Okay.

15           THE COURT:  We'll take care of it.  Okay, Losartan,

16   the other two Sartans, plaintiffs do you have any idea when

17   you're going to move before the MDL?  And defendants,

18   plaintiffs want to know if you'll oppose the inclusion.

19           MR. HONIK:  Your Honor, Ruben Honik.  We do intend

20   to file.  I apologize I'm not in my office, and I from memory

21   cannot recall if the panel is meeting in July and not again

22   until September.  I believe that's the case.  And if so, we'll

23   be targeting the September hearing.

24           There is, as everyone I believe knows already, a

25   Losartan and Irbesartan class case.  There is to my knowledge

1    at least one stand alone Losartan bodily injury case.  I'm

2    informed there will be more.

3           And candidly, regardless of how large the pool of

4    Losartan and Irbesartan cases are, the petition I think should

5    be favorably viewed on JPML inasmuch as we're not asking them

6    to create a Sartan MDL.  We already have it.  We just wish to

7    expand it to include other recalled products.  And we're

8    confident that the Court will view it that way, or the panel

9    will view it that way.

10          And yes, we very much would like to know if this is

11   a petition that can be joined in with the defendants.  We

12   can't figure any reason for these cases to go anywhere but to

13   Camden.

14          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

15   think -- I think most of the defendants would agree with that.

16   We haven't heard from all of them, and there may be, you know,

17   there may be some defendants who talk about 43 parties that

18   have, you know, a different insurance.  But there may be some

19   joinder by some of the defendants, but not all of the

20   defendants, which never presumably seem persuasive --

21          So I would just encourage Ruben, you know, to let's

22   connect on that before you end up filing a petition.

23          THE COURT:  Yeah.

24          MR. HONIK:  Absolutely we'll do that.  And I'm

25   heartened by your answer, Seth.  Thank you.

 1              THE COURT:  Mr. Honik, just a suggestion.   I

 2     understand the practical difficulty the defendants have trying

 3     to rope 43 defendants or so into one position.   But in the

 4     event they can't get that unanimity, it would seem to me that

 5     it would be persuasive to the panel if you could just speak on

 6     behalf of, you know, what we consider the sort of targets or

 7     the main defendants in this case, the API people we've been

 8     talking about.   I think their inclination would carry more

 9     weight than a peripheral defendant who may object.

10              MR. HONIK:  Absolutely.   Absolutely.

11              THE COURT:  Okay.   We -- we finished the written

12     agenda.   I think we're making progress.   Are there any other

13     issues that the parties think it would be helpful to address

14     now?

15              MR. SLATER:  Nothing for the plaintiffs.

16              MR. GOLDBERG:   Nothing from the defendants, Your

17     Honor.

18              THE COURT:  I spoke to Judge Kugler.   He's going to

19     be at the next conference, obviously.   I think what we'd like

20     to do if the schedule permits, and the timing permits, is

21     we'll have the discovery conference in the morning and then

22     just roll right into Judge Kugler's conference if that's okay

23     with you.   And I'm going to suggest to Judge Kugler that just

24     like we sat down in the jury room after last conference and

25     talked informally, that we do the same thing for a few minutes

Colloquy                                                    28

1    on the 26th, and some of the questions that I couldn't answer,

2    the big picture, case management type issues about

3    bellwethers, and trials, and Daubert and all that, you can get

4    input from Judge Kugler on that, which I think would be

5    helpful as we move forward.

6            UNIDENTIFIED COUNSEL:  Great.

7            THE COURT:  So I'm going to ask Judge Kugler for his

8    indulgence to do that.  And I think it would be helpful to

9    move the -- move the case along.

10           All right?  Thank you everybody.  Again, I

11   appreciate your indulgence moving up the time of the call.

12   We'll see you on the 26th.  If any issues -- we talked about

13   the DCO.  Be happy to set up a phone call on short notice to

14   address any issue you want on the DCO or any other issue

15   anybody wants to address.

16           Thank you very much.  Have a good day, Counsel.

17   We're adjourned.

18

19                   (Proceedings concluded at 3:44)

20

21

22

23

24

25

29

```
 1                    C E R T I F I C A T I O N

 2            I, Sue Wynne, court approved transcriber, certify

 3     that the foregoing is a correct transcript from the official

 4     digital audio recording of the proceedings in the above-

 5     entitled matter to the best of my ability.

 6

 7      /s/ Sue Wynne                              6/17/19

 8     SUE WYNNE                                   DATE

 9

10      /s/ Patricia A. Hallman

11          PATRICIA A. HALLMAN

12     DIANA DOMAN TRANSCRIBING, LLC

13

14

15

16

17

18

19

20

21

22

23

24
```