**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

————————————————————————

IN RE:  VALSARTAN PRODUCTS
                                                    CIVIL ACTION NUMBER:
LIABILITY LITIGATION.
                                                         19-2875
                                                    ORAL ARGUMENT
————————————————————————

        Mitchell H. Cohen United States Courthouse
        One John F. Gerry Plaza
        Camden, New Jersey 08101
        May 29, 2019

B E F O R E:          THE HONORABLE JOEL SCHNEIDER
                      UNITED STATES MAGISTRATE JUDGE


A P P E A R A N C E S:

MAZIE SLATER KATZ
BY:  ADAM SLATER, ESQUIRE
103 EISENHOWER PARKWAY, SUITE
207 ROSELAND, NEW JERSEY 07068
ATTORNEYS FOR PLAINTIFF

GOLOMB & HONIK
BY:  RUBIN HONIK, ESQUIRE
DAVID STANOCH, ESQUIRE
1835 MARKET STREET, SUITE 2900
PHILADELPHIA, PA 19103
ATTORNEYS FOR PLAINTIFF

KIRTLAND & PACKARD LLP
BY:  BEHRAM V. PAREKH, ESQUIRE
1638 SOUTH PACIFIC COAST
RODONDO BEACH, CA. 90277
ATTORNEYS FOR PLAINTIFF

LEVIN PAPANTONIO
BY:  DANIEL A. NIGH, ESQUIRE
316 S. BAYLEN, SUITE 600
PENSACOLA, FL. 32502
ATTORNEYS FOR PLAINTIFF

```
 1   FARR LAW FIRM
     BY:  GEORGE WILLIAMSON, ESQUIRE
 2   99 NESBIT STREET
     PUNTA GORDA, FL. 33950
 3   ATTORNEYS FOR PLAINTIFF

 4   GOLDENBERG LAW PLLC
     BY:  MARLENE GOLDENBERG, ESQUIRE
 5   800 LASALLE AVENUE, SUITE 2150
     MINNEAPOLIS, MN 55402
 6   ATTORNEYS FOR PLAINTIFF

 7   DUANE MORRIS
     BY:  SETH A. GOLDBERG, ESQUIRE
 8   30 SOUTH 17TH STREET
     PHILADELPHIA, PA. 19103
 9   ATTORNEYS FOR DEFENDANT

10
     WILEY REIN LLP
11   BY:  RICHARD W. SMITH, ESQUIRE
     ENBAR TOLEDANO, ESQUIRE
12   1776 K STREET NW
     WASHINGTON, DC 20006
13   ATTORNEYS FOR DEFENDANT

14   GREENBERG TRAURIG
     BY:  LORI G. COHEN. ESQUIRE
15   STEVEN HARKINS, ESQUIRE
     TERMINUS 200
16   3333 PIEDMONT ROAD NE, SUITE 2500
     ATLANTA, GA 30303
17   ATTORNEYS FOR DEFENDANT

18   PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
     BY:  CLEM C. TRISCHLER, ESQUIRE
19   38TH FLOOR, ONE OXFORD CENTER
     PITTSBURGH, PA 15219
20   ATTORNEYS FOR DEFENDANT

21

22

23           Carl J. Nami Official Court Reporter
                   609-439-5420
24                 Carl_Nami@NJD.USCourts.Gov

25
```

```
 1              (The following took place in open court)
 2          THE DEPUTY COURT CLERK:  All rise.
 3          THE COURT:  Good morning, everybody.  Please be
 4   seated.  Sorry we don't have enough chairs, but there's some
 5   chairs up here for counsel.  So, come on up and have a seat.
 6   These are box seats.  No charge.  All right.  You don't have
 7   to stand.  Come up.  Don't be shy.  Come on up.  I won't call
 8   on you, I promise.
 9          We're here on the record in Valsartan, Docket Number
10   19-2875.  As a prelude, counsel, I don't know if it's good
11   news or bad news, Judge Kugler is in Washington in some
12   hermetically sealed courtroom in a code of silence saving
13   America safe for Democracy.  I'm going to fly solo today.
14   I've spoken with Judge Kugler in detail about today's
15   conference.  We've consulted in detail.  We're in lockstep
16   about what needs to be done in whatever we're going to discuss
17   today and if we rule on things today, it's in consultation
18   with Judge Kugler, and we'll confirm all of that, of course in
19   an order to be entered after the conference.
20          If you're going the speak today, if you would just
21   announce your name for the court reporter so he can record it
22   on the transcript.
23          I intend to go through the full agenda today, and then
24   if we have time, I'd like to meet with leadership counsel in
25   the jury room afterwards to talk about some things off the
```

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | record.  We might talk more candidly about some things and                   |
|       | 2  | answer any questions you have.                                               |
|       | 3  | A good place to start is the agenda you set forth.  But                      |
|       | 4  | just by way of background.  Does anyone have any insight on                  |
| 00:20 | 5  | the status of FDA investigation into the contamination and                  |
|       | 6  | source of contamination?  And I assume the FDA is doing some                 |
|       | 7  | sort of investigation and sooner or later some sort of report               |
|       | 8  | is going to be prepared.                                                    |
|       | 9  | Does anybody have any insight on what's going on in                          |
| 00:20 | 10 | that regard?  Mr. Goldberg?                                                  |
|       | 11 | MR. GOLDBERG:  None, your Honor.  At least I think                           |
|       | 12 | with respect to our client and I'm assuming the other                        |
|       | 13 | defendants is just, you know, responding to the ongoing                      |
|       | 14 | investigation.                                                              |
| 00:20 | 15 | THE COURT:  Anyone from the plaintiffs have any                              |
|       | 16 | insight on what's go on in that regard?                                      |
|       | 17 | MR. NIGH:  Your Honor, at this time the FDA has                              |
|       | 18 | published contamination concentration for the concentration                  |
|       | 19 | and contamination, they published those results for what we                  |
| 00:21 | 20 | believe to be most of the pills that were contaminated in the                |
|       | 21 | U.S.  So, that's, that's come out at this point.  And also my                |
|       | 22 | understanding is that they're continuing to test Losartan                    |
|       | 23 | pills at this time and they're next turning to the next                      |
|       | 24 | Sartans.  So there may be some additional recall after.                      |
| 00:21 | 25 | THE COURT:  How about the status of any                                      |

1  investigations?  Not just the FDA, but the other regulatory

2  bodies around the world who are looking at this.

3      Any insight over what's going on there?

4          MR. NIGH:  The EMA is also very active in terms of

00:21  5  their investigation.  They've also, several journalists

6  published in terms of their beliefs as to how this

7  contamination occurred for several of the active ingredients

8  manufacturers and also Health Canada has been very active in

9  their investigation.  Daniel Nigh for the plaintiffs.

00:22  10          THE COURT:  All right.  Is there any reason we

11  shouldn't start with the agenda that counsel proposed?  The

12  first issue.  Streamline service protocol.

13          MR. NIGH:  Your Honor, we sent the defendants a, what

14  we believe would be a good first draft in terms of streamline

00:22  15  service protocol.  We had an Order in Benicar where we served

16  all of our complaints by e-mail.  We're looking to do the same

17  thing.  But the order also encompasses not just service of

18  complaints but service of other discovery documents as well.

19  We just did that for them on Friday though.  So I believe that

00:22  20  this is an issue that would be more appropriate to discuss if

21  there's any conflicts between our sides for the next discovery

22  telephone conference.

23          MR. GOLDBERG:  I think that's right, your Honor.

24          THE COURT:  So you're in the confer stage?

00:22  25          MR. GOLDBERG:  Yes, your Honor.

```
 1          THE COURT:  Is there anything about this case that
 2   makes it different than the process we used in Benicar?
 3          MR. NIGH:  It does.  In, in Benicar we only had two
 4   defendants.  So it's a little easier in terms of managing the
 5   e-mail addresses.  But this time we're going to be, we believe
 6   that we'll be able to utilize Brown Grier, their portal system
 7   to try to keep it manageable of terms of serving all the
 8   various defendants in this case.
 9          THE COURT:  Can anyone give us a status update on the
10   service pursuant to the Hague on the foreign defendants or do
11   we have to wait until the Master Complaints are filed to get
12   to that?
13          MR. WILLIAMSON:  Your Honor.
14          THE COURT:  Please introduce yourself, sir.
15          MR. WILLIAMSON:  George Williamson.  We have
16   initiated a process service of Aurobindo through the Hague
17   through a certifying service combination.  So that has been
18   underway for I'd say approximately three weeks at this point.
19   We're told that it can take anywhere between three months up
20   to six months to perfect service.  So the process that's been
21   started and as much --
22          THE COURT:  Which complaint are you serving?
23          MR. WILLIAMSON:  This is the Holland, Jerry Holland
24   is an individual personal injury case.
25          THE COURT:  Are all the foreign defendants, is
```

```
 1   service pursuant to the Hague in the works for all of the

 2   foreign defendants?

 3              MR. WILLIAMSON:  Uh --

 4              THE COURT:  I'm concerned because we'll get to it,

 5   but, you know, there was issues, we're going to get issues

 6   about core discovery and documents are overseas and, you know,

 7   we got to get to that issue.

 8              MR. SLATER:  Judge, certain of the defendants are

 9   already served in the litigation.

10              THE COURT:  Right.

11              MR. SLATER:  So, the DHP wouldn't have a issue with,

12   we don't have an issue with.  Torrent we're good.  Teva we're

13   good.  So I think that would only really be Hetero, beyond

14   Aurobindo.  Right?

15              MR. NIGH:  That's right.

16              MR. SLATER:  And Mylan.  So the only two people to

17   know about are Hetero and Mylan now.

18              MS. GOLDENBERG:  Marlene Goldenberg, your Honor, for

19   the plaintiffs.  We initiated service of process in the Larry

20   Tack complaint.  Mylan we were also told by the service

21   process agency that it could take six months to a year but

22   it's, it's going.

23              THE COURT:  You represent?

24              MS. GOLDENBERG:  Larry Tack.

25              THE COURT:  Okay.
```

00:24 (line 5)
00:24 (line 10)
00:25 (line 15)
00:25 (line 20)
00:25 (line 25)

```
 1              MR. STANOCH:  And, your Honor, David Stanoch, Golomb
 2    Honik.  We had initiated service of one of our economic law
 3    and class complaints on Hetero, the remaining foreign
 4    defendants and it's also in process.  We've been given a
 5    window, roughly the same of what Mr. Williamson has said for
 6    his complaint on Aurobindo.
 7              THE COURT:  Great.  Okay.  So, my notes indicate
 8    there's three foreign defendants remaining to be served,
 9    Aurobindo, Hetero, Mylan and service is in the works for each
10    of them.  Okay.
11         So, Mr. Goldberg, in terms of a time frame, just so
12    these issues don't linger.  I know we have a lot of balls in
13    the air, but when should we target finalizing the streamline
14    service for protocol?
15              MR. GOLDBERG:  Well, I think we, we can endeavor to
16    try to get it done over the next few weeks that, so that when
17    we're back here or we're on the phone with you in a few weeks,
18    maybe we'll have made that progress.  This doesn't seem to be
19    a very complicated issue.
20              THE COURT:  Why don't we talk in a in person meeting
21    the end of June.
22              MR. GOLDBERG:  Sounds good.
23              THE COURT:  So that will be 30 days.  So the next --
24    and that doesn't mean we can't address the issue during the
25    next phone call.  Maybe there's -- when will you get back to
```

The timestamps in the left margin: 00:25 (line 5), 00:26 (line 10), 00:26 (line 15), 00:26 (line 20), 00:27 (line 25).

them about the comments?

MR. GOLDBERG:  We'll get back to them by the end of the week.

THE COURT:  This week or next week?

MR. GOLDBERG:  This week.

THE COURT:  Okay.  So that's--

MR. GOLDBERG:  Friday the thirty-first.

THE COURT:  Great.  Okay.  May 31st.

MR. GOLDBERG:  End of this week, early next week.

THE COURT:  Yeah.  Let's just --

MR. GOLDBERG:  We, we lost a day this week.

THE COURT:  All right.  Let's say June 5th.  That's next Wednesday.  Okay?  So June 5th defendants give their comments to plaintiffs about the streamline service protocol and we're going to look to finalizing it by the end of June.

Next issue.  Master Complaints.

MR. HONIK:  Good morning, your Honor.  Ruben Honik for the plaintiffs.  We have been diligently at work drafting the Master Complaints pursuant to the court's instructions and we are poised to file by June 17th the deadline we were given. In the course of that filing it occurred to a number of us, particularly those of us who have been involved in Benicar that this litigation would probably benefit from a similar protocol that was used there, which is to say that we want to share those Master Complaints with the defendants and invite

1  their comment so we can do whatever we can to reduce or

2  eliminate the need for Rule 12 Motion Practice.

3         So as you can see in our position in the submission for

4  today, we indicated exactly what I said.  I think that the

00:28  5  defendants are largely amenable to that.  I don't want to

6  speak for them, but they (a) want more time and (b) want to

7  ensure that they're not in any way waiving their right to seek

8  Rule 12 relief and certainly we understand that they're not

9  doing that.  But that said we do think that the process should

00:29  10  be in place to allow them to comment both on the facts as well

11  as the legal allegations, if you will, so that we can do

12  whatever we can to refine the complaint and minimize or

13  eliminate motions to dismiss.

14         THE COURT:  Let me make two comments and then we'll

00:29  15  hear from counsel.  One is I think the defendants' concern

16  about not waiving their defenses or rights are legitimate and

17  that has to be protected, (a) if the defendants have a concern

18  that they're never going to have an opportunity to file the

19  motions that they're chomping at the bit to file, you're

00:29  20  mistaken.  There's going to be a time in the case where Judge

21  Kugler decides it's appropriate for the motions to be filed,

22  but it's not now.  And we want to get everything organized and

23  in place before we get to those issues.  But Judge Kugler has

24  no intention of cutting off anybody's rights or defenses.

00:30  25  It's just a matter of timing.

```
 1          So, with those general comments, what do you envision,
 2   Mr. Honik, if this happens again frankly, I forgot it, but I
 3   don't think it's a bad idea.  What are you asking the
 4   defendants to do and if you're in the defendants' shoes, if
 5   they don't raise something, are you going to come back later
 6   and say, well, you should have raised it earlier.  We could
 7   have fixed it.
 8          MR. HONIK:  No, absolutely not.  We envision a
 9   process that would in no way behove the prejudice of the
10   defendants by -- to, to raise rule, legitimate Rule 12 motions
11   to dismiss issues.  And there are conceivably dispositive
12   issues that the court should entertain.  And I understand
13   fully well that Judge Kugler is open to entertaining that and
14   albeit not right now.  But I think it would behoove all the
15   parties and certainly the court in terms of efficiency and
16   narrowing the issues for the defendants to have a real
17   opportunity to look at the pleadings and to, I mean under the
18   Rules we would be permitted and a right to cure certain
19   deficiencies that they, you know, would bring to our attention
20   and so we want to --
21          THE COURT:  We'll have to see --
22          MR. HONIK:  Exactly.
23          THE COURT:  So, for example, Mr. Honik, you want the
24   court to, the court's drafting an order, what should it say?
25   What should it ask the defendants to do.
```

00:30
00:30
00:31
00:31
00:31

|      |    |
|------|----|
|      | 1  | MR. HONIK:  Right.  So I read their position and I |
|      | 2  | think they're looking to the court for some instruction that I |
|      | 3  | don't think is, is possible for the court to give.  I think |
|      | 4  | the most the court can do is perhaps bless the idea of a |
| 00:32 | 5 | process and then put us on an appropriate time table.  That's |
|      | 6  | how we envision it.  So, for example, we have proposed that |
|      | 7  | the complaints rather than being filed on the docket on the |
|      | 8  | seventeenth, that it be transmitted to the defendants first |
|      | 9  | for comment.  And candidly we had proposed a week out of a |
| 00:32 | 10 | belief, maybe mistaken belief, that they've been looking at |
|      | 11 | our allegations since the first of the complaints were filed |
|      | 12 | last summer or fall that said they suggested to us, yes, we're |
|      | 13 | amendable to that process, but we need more time.  They |
|      | 14 | proposed 45 days.  It strikes me certainly as too long a |
| 00:32 | 15 | period.  And so, perhaps, something this court can do is to |
|      | 16 | say, you know, ten days or two weeks or whatever is sufficient |
|      | 17 | and essentially establish a new date by which the now reviewed |
|      | 18 | complaint by both sides will be filed of record. |
|      | 19 | THE COURT:  I think timing is easy and that's not a |
| 00:33 | 20 | problem, but I'm just -- I don't know what to say.  The |
|      | 21 | concept is fine, if the defendants are fine with it, I don't |
|      | 22 | have any problem with the concept.  I just don't know how to |
|      | 23 | say it.  By such and such date defendants will give their |
|      | 24 | comments on the complaint?  I mean is that what you want the |
| 00:33 | 25 | Order to say?  I don't know what the Order is going to say. |

1    What do you want them to -- an Iqbal Twombley issue, a

2    preemption?  I'm just -- defendants can help me?  Is this a

3    new concept?  Is this something invented just for this case?

4         MR. GOLDBERG:  Well, your Honor, at least with

5    respect to this case, it doesn't seem like it's going to be

6    easily workable.  I mean you've got 40 plus defendants.  All

7    are going to have different views as to whether the claims,

8    the allegations, deficient, not deficient.  We had the very

9    same reaction.  Okay, what is the scope of this Order.  How do

10   you define this Order.  Is it we're going to correct names of

11   defendants, locations of where they operate?  Some superficial

12   comments like that?  Okay, maybe that's how you do it.  But

13   even then, I think when you're dealing with 40 defendants,

14   some may view that kind of information as not superficial.

15   Things like preemption, fraud claims, elements of claims

16   really not an obligation of the defendants to write the

17   complaint.  It's for the plaintiff.  And, so, I don't think --

18   I think that's where we are really struggling with this, and

19   if your Honor can't come up with the words to fashion an

20   Order, this doesn't seem like an obligation that should be

21   imposed on the defendants.

22        THE COURT:  Hypothetically let's say you filed or

23   your Master Complaint on June 17th without comments from the

24   defendants.  They'll look at it and sooner or later, for

25   example, if there's a misnaming of a party or something of

1  that sort, it's going to come to our attention.  We can amend

2  the complaint, right?  I would envision when the time comes

3  when the defendants are going to be granted leave to file

4  their motions, I would envision, I'm not speaking for Judge

00:35  5  Kugler now, but there would be some sort of screening process,

6  okay, what are you going to file your motion on.  If it's a

7  simple Igbal Twombley come forth issue, your fourth claim

8  wasn't pleaded with enough specificity.  Plaintiffs amend your

9  complaints and then they'll file their motion.

00:35  10  So, maybe we can accomplish the same goal without going

11  through this.  I don't know.  Seems like an awkward procedure.

12  Have you done it before?

13  MR. HONIK:  Well, Judge, we are motivated to suggest

14  it because it was done in Benicar and I was apprised by those

00:36  15  a little closer to that litigation than myself, that no Rule

16  12 Motion Practice occurred in that case.

17  THE COURT:  I don't think Judge Kugler ever lifted

18  the stay though.  I think that's what the Rule 12 motion was

19  --

00:36  20  MR. SLATER:  That's a good precedent to follow.

21  `                    (Laughter)

22  MR. HONIK:  Yeah, we're in favor of that.

23  THE COURT:  But I would bet my last dollar that if

24  that Stay were lifted, there would be Rule 12 motions filed.

00:36  25  MR. HONIK:  Judge, suffice it to say, if the

1  defendants think that because of the number for defendants or

2  otherwise, if they don't think this is a procedure that would

3  benefit them or us or the court, we stand poised to file this

4  on the seventeenth, and mindful of what you just said about

00:36    5  creating opportunities on the schedule to amend, to correct

6  any defendant misidentification, those sorts of things, we can

7  certainly handle it that way.  We're not, we're not unduly

8  married to this idea.  It's an idea that we listed, maybe

9  somewhat mistakenly from the Benicar experience, but we're

00:37    10  ready to file on the seventeenth.

11      THE COURT:  Okay.  Why don't we do that.  Mr. Honik,

12  I would like to -- again, I'm not speaking for Judge Kugler,

13  but I would assume that, like I said, there will be some sort

14  of screening procedure before these Rule 12 motions are filed

00:37    15  so that these sort of issues can be cleaned up by simple

16  amendments will be done before they file their Rule 12 motion.

17  I mean it's silly to waste time on Igbal Twombley motions,

18  and, of course, you're going to be granted leave to amend.

19  And then you amend, they file another motion.  We want to

00:37    20  avoid that.  And I'm confident that we'll do what we can to

21  address those sort of issues, cleanup issues I'll call them

22  and get to the nuts and bolts of the case, preemption, etc.

23  So let's keep June 17 as filing the Master Complaints.  Okay?

24      MR. HONIK:  Okay.  Yes, sir.

00:38    25      THE COURT:  All right.  And we know that the

*United States District Court*
*Camden, New Jersey*

1    defenses, the response to the complaint are stayed.  Right?

2    Short Form Complaints.  Timing will be great because we'll

3    have the Master Complaints on June 17th.  So we should have

4    hopefully the Short Form Complaints in due course shortly

00:38    5    after that.  Right?

6             MR. NIGH:  We've already drafted the Short Form

7    Complaints for the bodily injury.  We're going to send our

8    proposal to that Short Form Complaint to the defendants.  We

9    do think this is a little different than the Master Complaint.

00:38    10    It would be nice to have some comments from the defendants on

11    Short Form Complaints.

12             THE COURT:  Yeah, I would agree with that.  You'll

13    send that when?

14             MR. NIGH:  Today.

00:38    15             THE COURT:  Okay.  So, let's put that on the agenda

16    for the phone call we're going to have in two weeks.  If

17    there's any comments you have on the Short Form Complaints.

18    Am I correct that those aren't going to be filed until the

19    Master Complaints are filed?

00:39    20             MR. NIGH:  Yes, your Honor.

21             THE COURT:  All right.  So, will there only be a

22    Short Form Complaint for the B.I. cases?

23             MR. NIGH:  We're trying to look to see if it's

24    appropriate for Consumer Class.  I think it will be.  So

00:39    25    that's the next thing we're looking at in terms of --

1           THE COURT:  How does that work?  Because won't the

2    Master Complaint be a nationwide Class Action on the consumer

3    issues?

4           MR. NIGH:  I believe so.  But it will be -- this will

00:39    5    be in terms of who this class rep is and applying it for each

6    class rep for each State if we believe that that's appropriate

7    to do so.

8           THE COURT:  All right.  Let me go back because you

9    raised an issue I want to address with you.  The B.I. cases.

00:39    10   There will be a Master B.I. complaint.  Will that be one

11   plaintiff?

12          MR. NIGH:  The Master Complaint, I don't think we'll

13   name a specific plaintiff in the bodily injury complaint.

14          THE COURT:  Okay.  Let's take the economic consumer.

00:40    15   That's a nationwide Class Action.  Right?

16          MR. NIGH:  Correct.

17          THE COURT:  How do you decide who the class rep is,

18   and how many class reps will there be?

19          MR. HONIK:  Your Honor, maybe I can address that.  I

00:40    20   think Daniel may be confused on that.  That's a separate

21   issue, respectfully.  There's not going to be a Short Form

22   Complaint for the Class for the very reason I think the court

23   has beginning to see that, and that is we're going to have a

24   national class.  There will be sub-classes to be sure

00:40    25   reflecting, you know, differences in the States under certain

```
 1   legal claims that we're bridging.  And what we're going to do
 2   is to select class representatives that cover the waterfront;
 3   that is, you know, who took the various API manufacturer's
 4   pills so that we have coverage across the waterfront and all
 5   the defendants.  So there will be and we anticipate we're
 6   screening that now.  Frankly, that's the most onerous part of
 7   the drafting is to identify appropriate class reps that, that
 8   would, you know, fill all the spaces so-to-speak of the
 9   various recall products.  So there will be multiple class
10   reps.  We don't anticipate a Short Form Complaint of any sort
11   because that would be subsumed by the Master Complaint.
12            THE COURT:  That makes sense.  So --
13            MR. HONIK:  And I think what Daniel, not to interrupt
14   you, was thinking of is the differences emerging visa via the,
15   the profile forms.  I think that we're going to have obviously
16   profile forms for all of the class reps in addition to
17   whatever we end up negotiating and agreeing to with the
18   defendants with the B.I. claims.
19            THE COURT:  Yes, we'll get to the profile.  So, will
20   be there 50 class reps?
21            MR. HONIK:  No, not at all.  There will be a handful.
22            THE COURT:  And you'll make sure that like one, if
23   there's, picking a number out of the blue, three or four API
24   defendants, you'll make sure that they're all covered by one
25   of the named class reps?
```

00:41 (line 5)
00:41 (line 10)
00:41 (line 15)
00:41 (line 20)
00:42 (line 25)

 1          MR. HONIK:  Precisely.  And the other criteria is

 2     geographic.  So we want, to the extent that we can, class

 3     representatives from the various States to the extent that

 4     State based sub-classes which do exist in the economic side of

 5     this litigation.

 6          THE COURT:  You may know the law better than me on

 7     this, but can you have a class rep from one State represent

 8     another State?  Like if it's an Illinois resident, can they be

 9     a class rep for a Texas sub-class?

10          MR. HONIK:  There's no simple answer to that.  The

11     answer is maybe.  That's -- the way I think of it is to what

12     extent can an extra territorial plaintiff outside of New

13     Jersey be covered under New Jersey law.  That's an issue that

14     you'll see developed in the complaint.  But there will be

15     geographic diversity, if you will, represented in our Master

16     Complaint.

17          THE COURT:  Okay.  And on the Medical Monitoring.

18     Oh, going back to the Economic Complaint.  When I looked at

19     the class steps, there are nuances in the definition.  You

20     know, consumers, companies, entities.  I guess you'll work

21     that out with the actual definition of the Classes.

22          MR. HONIK:  Oh, yes.  I mean that in some instances

23     is our biggest single drafting challenge is to come up with

24     appropriate class definitions that encompass what we need to

25     encompass.

00:42
00:42
00:43
00:43
00:43
00:44

1          THE COURT:  If you look at the Class Actions that
2    have been filed thus far, there's slight differences in some
3    of the definitions.
4          MR. HONIK:  That's right.  And we're drafting
5    coalescing into a comprehensive set of class definitions and
6    sub-class definitions that makes sense.  We can't simply cut
7    and paste frankly what we've seen in some of the initial
8    complaints for a variety of reasons.  And so, you know, we're
9    working diligently to hone it down to a sensible set of class
10   definitions.
11         THE COURT:  Similar concept for the medical
12   monitoring Master Complaints?
13         MR. HONIK:  Yes.  Yes, indeed.  There will be
14   multiple representatives that will cover geographic diversity
15   because there's a considerable variance in the law in medical
16   monitoring across the fifty States and that will be a
17   standalone complaint as well.
18         THE COURT:  Terrific.  Okay.  So, we'll talk about
19   comments on the Short Form Complaint in two weeks and maybe
20   we'll have that finalized by the end of the month.  Timing
21   works well because the Master Complaint is going to be filed
22   by the seventeenth.  Any comment on the Short Form Complaints?
23         MR. GOLDBERG:  No.
24         THE COURT:  I think Mr. Honik does raise a good
25   point, there ought to be comments from the defendants on the

*United States District Court*
*Camden, New Jersey*

```
 1  information you want, you being the defendants, want included
 2  in the Short Form Complaint.
 3       Okay.  The next item on the agenda, number four.
 4  Stipulation for dismissal of peripheral and minor defendants.
 5  Sounds like a sticky issue.
 6       MS. GOLDENBERG:  Marlene Goldenberg, your Honor,
 7  again.  And, hopefully, we, we don't think it is.  Uh, we've
 8  exchanged three drafts now between the various sides.  We had
 9  a very productive discussion last week and think that at least
10  intellectually we're mostly on the same page.  We're now
11  waiting for another draft back from the defendants, but I
12  think, I think there's a very good chance that we can resolve
13  most, if not all, of the issues.  If not, then hopefully
14  that's something we can raise in a couple of weeks on the
15  discovery call.
16       THE COURT:  How is the concept of tangential
17  defendants defined.
18       MS. GOLDENBERG:  That's one of the issues that we
19  haven't quite gotten to yet candidly, your Honor.  We again
20  have had some discussion about --
21       THE COURT:  That's the ultimate issue, right?
22       MS. GOLDENBERG:  It is.  But the procedure is well
23  under way.  We've had some discussions together about what
24  defendants view that definition as being.  That's something we
25  are taking back to our side and considering, and I think that
```

00:45

00:46

00:46

00:46

00:46

1    on the whole we are going to hopefully on so many issues.

2    There might be a couple where maybe we don't get and we need

3    some things to play out in discovery before we make that

4    choice.  But I think that so far the discussions have been

5    productive and we should be able to reach agreement on most

6    issues.

7            THE COURT:  From the court's perspective, I think

8    it's important that, yes, cleanup the parties, the peripheral

9    people we don't need, but I think it's important and one of

10   the things that we'll be looking for is if we do put them on

11   the side if something comes up in the case unforeseen, and

12   they're no longer a tangential defendant, we don't want to go

13   through the whole rigamarole of filing a new complaint and

14   serving it again and tracking down people.  There has to be

15   some sort of procedure that they're automatically or easily

16   brought back into the case without going through a lot of

17   administrative gymnastics.

18           MS. GOLDENBERG:  Right.  And that's all --

19           THE COURT:  It's a tradeoff.  The tradeoff is they

20   get to sit on the sidelines, but if it turns out they're a

21   player in the case, they have to come right back in the case.

22           MS. GOLDENBERG:  Right.

23           THE COURT:  I don't think there's an objection to

24   that from the defendants' point of view, is there?

25           MR. SMITH:  No, your Honor, I don't believe so with

*United States District Court*
*Camden, New Jersey*

1    the one exception that I think the parties are probably fairly

2    well aligned as to the story here of what happened and at what

3    level it happened.  It's reflection on tangential defendants.

4    We're talking about, you know, you have your API manufacturing

00:48    5    level.  You have your finished dose manufacturing level.  We

6    could, we could quibble about what a defendant's dose

7    manufacturing belongs in this case, but from our perspective

8    everybody below the diminished dose manufacturer along the

9    supply chain should be out of the case.  You know, we don't --

00:48    10            THE COURT:  Quote unquote out?

11            MR. SMITH:  Out for purposes of --

12            THE COURT:  Or sitting on the sidelines.

13            MR. SMITH:  Sitting on the sidelines and being able

14    to take advantage of the stipulations we hope to agree with.

00:48    15    And we understand that the pass way through that, through that

16    stipulation is sit on the sidelines is some limited discovery,

17    some limited disclosure that would be made by the defendants.

18            So we think that the selection of the defendants should

19    be just below the finished dose manufacture down all the way

00:49    20    through the retailers and that would include every retailer

21    and then the disclosure should be limited to what disclosures

22    that are necessary to prosecute that case against the API

23    manufacturers.  So that's what we are really looking at in

24    terms of our methodology of how we develop the stipulation.

00:49    25            THE COURT:  Do you have a guesstimate of how many

1   people -- I'm sorry, companies or defendants would be left if

2   that concept comes to fruition?

3           MR. SMITH:  I would, I would be guessing, your Honor.

4   But I think we would probably take the defendants' side down

00:49    5   from 50 to less than ten.  I'm sorry, 42 to less than ten

6   defendants.

7           THE COURT:  Mr. Honik.

8           MR. HONIK:  If I may.  Your Honor, the challenge with

9   that conceptually is two-fold.  There are two lenses through

00:50    10  which we're examining this issue.  One is legally who do we

11  need in the case, and it's our considered position that with

12  respect to the economic claims, the class claims, the consumer

13  claims, and in particular the consumer claims.  The consumers

14  are in direct privity with retailers.  They're the ones who

00:50    15  sold the drugs to them and without, you know, an extensive

16  primer on what that means, for example, under New Jersey law

17  arguably, and I want to argue it this morning, is strictly

18  liability for selling essentially a tainted drug or a drug

19  that's not approved by the FDA in the strictest sense of that.

00:50    20  And so the question falls to us legally can we in good

21  conscience and without committing malpractice agree at the

22  outset to let out a retailer who stands in contractual privity

23  when we got warranty claims.  So --

24          THE COURT:  Is there a difference between quote

00:51    25  unquote letting out stipulations of dismissal no longer

```
 1   subject to the jurisdiction of the court or maybe severing,

 2   put them on the sidelines, they don't have to participate in

 3   discovery.  They don't have to come to this conference and

 4   when we need you, we'll call you?

 5          MR. HONIK:  Yeah, and that's right.  So we're

 6   attracted to the idea of a pause and I think that's

 7   essentially, you know, what we're trying to work through.

 8          The other issue, the other lens that we're seeing this

 9   through is the lens of insurance solvency.  We're beginning to

10   obtain insurance information which isn't exactly --

11          THE COURT:  You'll get it today, won't you?

12          MR. HONIK:  Well, we got some today.  Apparently it

13   isn't exactly exciting us.  There's a 10 million dollar policy

14   for the --

15          MR. SLATER:  The three U. S. Entities subsidiaries of

16   CHT.

17          THE COURT:  That's it?

18          MR. HONIK:  That's right.

19          MR. SLATER:  And, and I've spoken with defense

20   counsel.  They sent it over yesterday and I've asked them for

21   the reservation of rights letters to see if there are any that

22   goes with the insurance companies if there's a potential

23   disclaimer of any of the policies.  I think we need that as

24   well.

25          THE COURT:  Of course.  Any excess?
```

00:51
00:51
00:51
00:52
00:52

*United States District Court*
*Camden, New Jersey*

1          MR. SLATER:  They told me no this morning.

2          MR. HONIK:  So we're concerned about that.

3          THE COURT:  By the end of the day you'll get all the

4    insurance information.

00:52    5          MR. HONIK:  Presumably.  So we'll continue to work on

6    it and we're certainly mindful of the fact that we can loop

7    folks back in, that we can devise a mechanism for that.  So

8    we'll continue to work on it and we'll present it to the court

9    with any remaining issues at our mid month call.

00:52    10         THE COURT:  Counsel, you wanted to say something?

11         MR. SMITH:  I think only to say, your Honor, I think

12   you hit the nail right on the head which is we are not letting

13   these defendants out for all purposes forever with prejudice,

14   is merely ensuring that they don't have to travel here to

00:53    15   Camden every month, don't have to participate in discovery.

16   They are, they are sitting on the sidelines without pledge

17   being dismissed for purposes of and our tolling agreement

18   would reflect that as well.  So that any new plaintiffs who

19   are coming in would be able to take advantage of that tolling

00:53    20   agreement and not have to sue these peripheral defendants.

21         THE COURT:  Okay, I think that's a fair compromise.

22   You have to protect client's interest, but if they don't need

23   to sit through conferences like this because they're so

24   peripheral for the case, to the case, it sounds like there's

00:53    25   room to compromise.

*United States District Court*
*Camden, New Jersey*

         1          MR. HONIK:  Understood.

         2          THE COURT:  Okay.  The next issue is insurance

         3    information.  You'll get it today.  Mr. Slater, if you believe

         4    there's any deficiencies, let the court know.  I'm not sure

00:53    5    what the case law is, but I take the position that reservation

         6    of rights letters, declination letters are clearly

         7    discoverable under Rule 26H and you're entitled to them, and

         8    we'll see what happens.  Okay?  ESI protocol.

         9          MS. TOLENDANO:  Thank you, your Honor.

00:54   10          THE COURT:  Miss Tolendano.

        11          MS. TOLENDANO:  Enbar Tolendano on behalf of Torrent

        12    Pharmaceuticals, Inc. LLC on behalf of the defendants.  So

        13    there is some self congratulatory.  I want to say we had a

        14    very cooperative, very productive process in hashing this out,

00:54   15    very pleasant and what we have --

        16          THE COURT:  I haven't heard that term used when

        17    people confer with Mr. Slater yet.  Now I know why you're

        18    concerned.

        19          MS. TOLENDANO:  And we worked very hard to craft an

00:55   20    ESI protocol in very short order that's going to work for 41

        21    defendants and a number of plaintiffs.  Our only request of

        22    the Court at this point is that plaintiffs narrow their

        23    issues.  The first of those issues relates to whether

        24    documents submitted in connection with plaintiffs' profile

00:55   25    certify plaintiffs' fact sheet should have been at this stage

1    presumptively exempt from the ESI protocol.

2         THE COURT:  This issue sort of dovetails whether

3    another issue we might as well raise at the same time.

4         Let's talk about, Judge Kugler and I spoke about this

00:55    5    issue at length.  Why are we doing a profile form and a fact

6    sheet?  Why is that something that both sides want or why

7    don't we just do a profile form?  Why are we doing -- Miss

8    Cohen, you want to talk.

9         MS. COHEN:  I'll be happy to jump up.  And I'm happy

00:56    10   to report that Mr. Slater has been involved in these

11   discussions and has been relatively pleasant so far.  So, we

12   --

13        MR. SLATER:  I'm here to be kicked by anyone --

14             (Laughter)

00:56    15        MS. COHEN:  That was a compliment.  Anyway, on this

16   topic I think we've talked about this in the past.  Let me

17   just add, Lori Cohen for Teva and also the defendants at

18   large.  But on this, you know, we started down this path

19   because we talked about core discovery initially back in

00:56    20   March.  So it started with what plaintiffs wanted from the

21   defendants, and we started grappling with this issue of core

22   discovery, knowing that you and Judge Kugler wanted to get

23   things going.  You gave us that message and that we weren't

24   going to be starting immediately with 12b motions.  So that's

00:56    25   why we started on core discovery which led to well, if we're

1    going to do that on the side of the defense, we need the

2    corollary to know what this litigation is about, what the

3    plaintiffs' universe is, what cases they have.  Have they

4    vetted them as they told the JPML they were in the process of

00:57   5    doing.  As they told your Honor at the first PMC they were

6    doing.  And to basically be the counterpoint, the

7    counterbalance to the core discovery on the plaintiffs' side.

8    So we could see the cases relate to compromised of and do they

9    have proof of injury, do they have proof of, of use to the

00:57  10    core initial phase.  So that's why we started this two tiered

11    process.

12           THE COURT:  Why not do a profile?  If we can do a

13    profile form?

14           MS. COHEN:  I mean so the, the --

00:57  15           THE COURT:  Or, I'm sorry.  A fact sheet.

16           MS. COHEN:  A fact sheet.  Yes.  Your Honor, I mean,

17    I mean it is true there is right now in the two-tiered process

18    the, the way it's been envisioned, we get the initial batch of

19    critical core information that we need right now to vet the

00:58  20    cases to make sure the plaintiffs know what the universe is,

21    to make sure we know what the universe is, what chances or

22    issues are.  Sort of issues that came up with Judge Kugler in

23    the first conference.  So it is really the corollary to this

24    core discovery.  Now, if we want to abandon that on both sides

00:58  25    and move forward.

1            THE COURT:  Not going to happen.

2            MS. COHEN:  So, yeah, so that's, that's sort of the,

3    we think, we think it helps us to get the initial discovery

4    going.

5            THE COURT:  How?  Suppose we go to just fact sheets.

6    We'll have those fact sheets finalized in probably 30 to

7    45 days.  What's the difference between answering one detailed

8    fact sheet and then having a profile form and a fact sheet?

9    That's what Judge Kugler and I sort of can't get our arms

10    around.

11            MS. COHEN:  I understand the question and part of it

12    is something, I guess we discussed again related to the core

13    discovery aspect on both sides and then the initial phase if

14    you will?  Same way on the defense side, why are we kind of

15    starting with the initial batch.  We're doing it kind of a

16    phase approach so that all of these defendants can figure out

17    what is this litigation about.  Because right now the

18    plaintiffs have said many times and I know the court has

19    agreed, we agreed too, it's important to know the defense

20    story.  What it's about, who knew what when, what happened

21    that we come up with our core discovery.  On the plaintiffs'

22    side, remember the case started back, it will be almost a

23    year.  You know, the first cases were filed last summer, then

24    it progressed to JPML at the time.  And although I wasn't

25    there but in the court, Mr. Nigh and others said we are

00:58
00:58
00:59
00:59
00:59

United States District Court
Camden, New Jersey

1    vetting thousands of cases.  We came before your Honor.  That

2    was in January and in March and we heard that many cases were

3    being vetted.

4         So at this point, it is important and helpful for us to

01:00    5    know as we look at the cases and we consider things like

6    insurance policy and the impact on everybody else and we

7    consider, you know, thinking about the cases at large and

8    where they're headed, what do the plaintiffs actually have.

9    Do they have 40 cases?  Do they have 80 more coming as was

01:00    10   said?  Do they have thousands?  And can they be --

11        THE COURT:  How are you going to find that out from

12   these profile forms?

13        MS. COHEN:  Because they have been supposedly vetting

14   these cases since last summer and if they come forward and

01:00    15   they are put to the test of what they're supposed to do under

16   Rule 11 and their obligations to vet these cases before they

17   file them, it's important for us to see can they meet the

18   burden of proof, and we're not asking for them to be shut out

19   of court.  We're basically saying it will be the same Benicar

01:00    20   process of giving them ample time to come back and show that

21   they have proof of use and proof of injury, you know, the same

22   kind of shared process.  So if -- but if we take your

23   suggestion and obviously Judge Kugler' suggestion, you know,

24   Miss Cohen, why can't we just wait.  Well then it kicks this

01:00    25   can down the road quite a bit.  By the time we negotiate a

1    plaintiff fact sheet and get them to fill it out, get them to

2    provide all the details, the authorizations, the

3    verifications, it will take some time.  But I think if we have

4    a commitment since we're obviously on the hook, so-to-speak,

01:01    5    to do our core discovery very quickly, it's coming up fast and

6    we've all been working diligently, but if we have their

7    commitment that, yeah, we can get this done in the next, a

8    fact sheet done in the next two weeks, and be ready to go and

9    get it done, we might be willing to agree to that.  We haven't

01:01    10    started the discussion of the fact sheet among the defense

11    side.  We haven't negotiated because we all were working

12    collaboratively on this counterpart of core discovery.  So we

13    started on this path.  We can abandon it, but I think on our

14    side, we would very much want to have a commitment that we can

01:01    15    get it done in an expedited manner.

16    THE COURT:  In other MDL's, is that similar process

17    used?

18    MS. COHEN:  I think the profile forms are the new

19    MDL, you know, issue de jour, if you will.  I've seen it more

01:02    20    in more recent ones.  And I know when you go to like the Emery

21    Conference and the Duke Conference and the legal discussions

22    about this issue, using the profile forms as an early vetting

23    process.  Because both of the plaintiffs and defense, it's

24    hard to benefit one side or the other.  But to know what is

01:02    25    before this court, what is this universe going to look like.

1    And so I think more MDL's are using this now as an initial

2    method to basically get at what the case is going to be.  Even

3    to make sure that we're weeding out any cases that don't

4    belong and know that that's a common shared concern of both

01:02    5    sides.  That this litigation will not get bogged down with the

6    tangential defendants but also cases that are -- do not merit

7    the caliber of the leadership here on the plaintiffs' side as

8    well.

9            THE COURT:  You used the term weeded out cases.

01:02    10    Okay.

11            MS. COHEN:  Uh-huh.

12            THE COURT:  It hasn't been mentioned yet that there's

13    not going to be a quote unquote lone pine order in this case.

14    The only way you're going to quote unquote weed out cases is

01:03    15    if a plaintiff doesn't answer the profile form.  Is that what

16    you're talking about?

17            MS. COHEN:  Yes, your Honor, that's exactly right.

18    And what we had envisioned we basically looked at the Benicar

19    process and the Orders albeit not in the, exactly the same

01:03    20    format, the profile form, but kind of narrowing, you know,

21    again a new age, a new age here to when that started because

22    these profile forms are again coming about more often in MDL's

23    where we're seeing them more.  But again we're not asking the

24    court to just kick them out of court without appropriate Show

01:03    25    Cause, you know, opportunities and under the structure we've

1    discussed, we included in the draft forms.  I think we have at

2    least three different, you know, opportunities to come back.

3    So we think it's fair on both sides.  And when I do talk about

4    weeding, again it's not to shortchange anyone with due process

01:03    5    on either side, but a method of figuring out, you know, the

6    cases that belong here, do they meet the standards of filing

7    and do they meet the Show Cause requirements.  So that's what,

8    that's what is being envisioned.

9         THE COURT:  So the profile forms, being this show

01:04    10    cause procedure and then when we get to the fact sheet, we're

11    going to do it again.

12         MS. COHEN:  That's right, your Honor.  And I view

13    that not as a duplication, but as very similar to, you know,

14    what's being imposed here, and again agreed to and worked on

01:04    15    very collaboratively by all sides here on the defense side.

16    Having both an initial phase, core set of information, so both

17    sides and the court really knows what's here.  You know, what

18    kind of cancer do we have or do they have the right

19    authorization.  Do they have the proof that they need and then

01:04    20    come later, we would get into the process of the fact sheet.

21    But, you know if you and Judge Kugler think that we should

22    abandon this initial phase on the plaintiffs' side, I think

23    what we would say on the defense side, and again we haven't

24    even begun the process of looking at a draft.  I think we

01:05    25    would want it to expedited.  And, again, the same three really

1    significant principles that we've asked the court to consider

2    regarding profile forms that is verification, authorization

3    and also a Show Cause process, and we would want that.  But

4    the fact sheet, of course, would be much more complicated.

01:05    5    So, again, the profile forms are meant to be limited and meant

6    to be very concise and meant to cover only certain issues.  If

7    we abandon this and move for a fact sheet and, you know, other

8    fact sheets and what they entail, it would be broadening the

9    scope in a major way, that we could roll up our sleeves and

01:05    10    work on that quickly.  But I think the idea of pushing that

11    down the road a couple months really kind of gives the

12    advantage then for plaintiffs to know a lot about the defense

13    side without us knowing that on the side of the plaintiffs.

14    THE COURT:  This is certainly an issue that I have to

01:05    15    talk to Judge Kugler about because we're sort of up in the air

16    about it.  But I can tell you this, as to the three issues you

17    mentioned.  One, it's going to be quote unquote verified.

18    MS. COHEN:  Yes, your Honor.

19    THE COURT:  I don't know why you can't use a

01:06    20    declaration under 28-17-46.  Two, every plaintiff is going to

21    fill out a fact sheet and/or profile form, not just class

22    reps.  On the authorization issue we'll talk about it, but I

23    don't know why a plaintiff wouldn't sign an authorization if

24    it's appropriately worded.  I don't know.  Does that make a

01:06    25    difference in whether we're going to go with a fact sheet or

1    profile form?

2              MS. COHEN:  Again, that's -- I do want to make -- I

3    don't think it would be the defense that files that profile

4    form initial.  I think the, you know, a grant joint

5    discussion.  So then it's really a timing issue.  We could get

6    a fact sheet, a full fact sheet hammered out, negotiate and

7    discuss and be quick timing, I think we would all be fine with

8    that.  It's just going to be a lot broader than the plaintiffs

9    are envisioning in their profile form.  And, again, you know,

10   I don't want to offend the Court but this whole process MDL is

11   for efficiency and judicial economy and certainly this is a

12   means of avoiding all whatever it is 42, what the current

13   number is, defendants serving discovery to the plaintiffs.  So

14   this is a means of really making easier on them not more

15   challenging.  I do appreciate the concern about duplication

16   and as long as we can get this done fast, I think we would be

17   okay with a full fledged fact sheet with all the bells and

18   whistles.  They can move quickly on that.

19             MR. SLATER:  Thank you, your Honor.  Just to start

20   off and knock one issue off, as your Honor recommended.

21   Whatever process we filed, it's not going to tell the defense

22   one thing about how many cases are ultimately going to be

23   filed.  I mean whether somebody fills out a fact sheet or a

24   profile form doesn't tell you if there's another three cases

25   get ready to be filed or three thousand.  So that's, that's

1   going to give no information.  Historically what happens here

2   is this.  We propose to them the use of a simple profile form

3   in short order.  Products used.  Product I.d.  if it's a B.I.

4   case.  What is the cancer that's being claimed.  That's it, so

01:08   5   we can get a very quick snapshot of what the litigation looks

6   like.

7        THE COURT:  And is that all information all in the

8   complaint?  The cancer --

9        MR. SLATER:  Not necessarily the type of cancer.

01:08   10   And, and not somebody verifying the products used and

11   potentially providing records, you know, pharmacy records on

12   that.  I mean we basically said we're going to give you the

13   core and I know it would helpful too to have that core

14   information as the defendants' side as well.  We want it

01:08   15   verified and we want medical information from all medical

16   providers, and the conversation so we can move forward.

17        So what we ultimately came up to and where we are

18   today, we propose a robust profile form where the plaintiff is

19   going to give the product I.D., the product use information

01:08   20   but also, for example, in the bodily injury cases, who were

21   the proscribing physicians.  Who are the diagnosing

22   physicians.  Who are the treating physicians or providers and

23   you get the med -- and provide authorization for each of those

24   providers which would basically give the defense a full

01:09   25   picture of that person's medical history because you're going

1    to be going to get treated for cancer.  You're going to talk

2    about your past medical history and surgical history.  The

3    prescribing doctors are going to have most of their medical

4    condition, if not all.  I would say all of the medical

01:09    5    conditions.  They medications, everything that matters will be

6    in those medical records for 99.5 percent of the plaintiffs.

7    I guess something could straggle out but normally you're going

8    to a doctor or provider to be treated for cancer.  You're

9    going to tell them and, and, and the history is going to be

01:09   10    very thorough.  The pharmacy records.  Health insurance

11    records we discussed.

12          THE COURT:  What about the issue of whether we're

13    going to go with fact sheet and the profile form or just the

14    fact sheet.

01:09   15          MR. SLATER:  I'm getting to that.  I'm trying to

16    develop some logical foundation first.

17          THE COURT:  I was wondering when you would get to the

18    point.

19          MR. SLATER:  So anyway.  So, basically, what

01:10   20    happened, we said we want verification.  Want authorizations.

21    We'll give you more information, but the tradeoff is.  Let's

22    do a fact sheet for plaintiffs who are chosen for bell weather

23    discovery because they're more broad, they're more detailed.

24    And frankly you do them across the board.  It creates enormous

01:10   25    amounts of work for the lawyer on both sides.  It creates a

|     |      |                                                                          |
|-----|------|--------------------------------------------------------------------------|
|        | 1 | lot of expense for lawyers on both sides, ordering, you know, |
|        | 2 | the defense is going to want every doctor the person's ever |
|        | 3 | been to, every employer they've ever worked at, et cetera. |
|        | 4 | And for most of the plaintiffs, the case is never going to get |
| 01:10  | 5 | worked up into a bell weather process.  So what we said let's |
|        | 6 | give you the core information that you need to understand the |
|        | 7 | cases and it's not a limited core information.  We're talking |
|        | 8 | about access to of the medical records that are relevant, full |
|        | 9 | product I.D. and full products used records.  You know what we |
| 01:11  | 10 | need to see.  What is this case really about, a very broad |
|        | 11 | brush.  It's not a limited disclosure that we've offered in |
|        | 12 | the back and forth.  But again plaintiff fact sheets, they're |
|        | 13 | going to want everything, every single chemical you were ever |
|        | 14 | exposed to.  Did your mother smoke.  I mean it's going to be, |
| 01:11  | 15 | it's going to be everything under the sun.  So we put every |
|        | 16 | plaintiff through litigation, through that process as opposed |
|        | 17 | to those that get ultimately chosen for bell weather |
|        | 18 | discovery, where, okay we have to scrutinize these cases |
|        | 19 | because they're potential trial cases.  And the final thing |
| 01:11  | 20 | is, the Order to Show Cause Process, we have no problem with |
|        | 21 | implementing that on the profile forms if they're framed in |
|        | 22 | the way we proposed and if the plaintiffs' fact sheets are |
|        | 23 | limited to the plaintiffs who are actually selected for a bell |
|        | 24 | weather workup because again you shouldn't go through that |
| 01:11  | 25 | twice.  It should be a one time for the main information be |

01:12    1    produced for most of the plaintiffs and we think that's a

2    reasonable compromise between the defendants who want a lot

3    more information already.  The plaintiffs who don't have to do

4    this twice and to try to balance out not only the efficiency

5    but the cost and the work so we can focus on things that

6    really matter and there will be plenty of information for each

7    plaintiff through the profile forms that we're proposing.

8         THE COURT:  Miss Cohen, let me ask you this question.

9    This is -- it's not going to be decided today.  I have to

10    consult with Judge Kugler and he'll make the final decision.

11       Here's your choice.  One profile form, but the fact

12    sheets are only filled out by quote unquote 9/11 plaintiffs

13    which are going to be a while before they're identified,

14    that's for sure.  On the other side fact sheets for all

15    plaintiffs.  Well, if you had a choice, which one would you

16    choose.

17         MS. COHEN:  If I had a choice, again I haven't had a

18    chance to consult with the Master, but I think I'm being

19    called on, but I would say to full fact sheets with everything

20    for everyone because I think that's appropriate, especially

21    with this litigation.  And again not to be, you know, not to

22    respond to every point, but robust is truly in the eye of the

23    beholder because the profile forms are not robust and give us

24    only limited information about proscribing a cancer treatment

25    and there's a whole world of information that will not be

```
 1   captured in profile forms.  So I think they don't give us what
 2   we need.  So I think if the court is leaning towards just one,
 3   we should have full truly robust fact sheets with all the
 4   bells and whistles that are appropriate.
 5              THE COURT:  Okay.  I'm going to consult with Judge
 6   Kugler.  He'll make the call and we'll put it in an Order.  I,
 7   if I had to, I had to guess and I'm just guessing, I think
 8   we're going to go with one fact sheet.  So, why don't you
 9   start drafting a fact sheet.  It's not like this has never
10   been done before.  I pulled out a copy of the Benicar fact
11   sheets.  It was -- I'm surprised it was so long.  It was 38
12   pages and I'm looking at it now.
13              MS. COHEN:  Okay.
14              THE COURT:  It was a declaration under 28-17-46,
15   makes perfect sense obviously.  And the Order to Show Cause
16   procedure.  I don't know why you wouldn't just follow what we
17   did in Benicar.  It worked beautifully.  I'll give you the
18   citations.  The Orders, I noted it down.  I know it's a lot of
19   work for the plaintiffs, but, you know, I pulled out Judge
20   Kugler's comment from July 28, 2015 conference we had in
21   Benicar.  If somebody wants to bring 400 lawsuits, then they
22   ought to have the staff to do it right.  We're going to be
23   here years, but we're not going to do it.  If you want to file
24   200 lawsuits or 400 lawsuits, God bless you.  And, you know,
25   six years from now your pay day is going to be great.  Spend
```

1    the money now to get these things done and --

2        MS. COHEN:  Judge, we'll work on that.  We'll start

3    our draft right away.

4        THE COURT:  Okay.  And we'll, from the Court's

01:15    5    perspective, we'll work with you to get it done as soon as

6    possible.  And let's target finalizing it in 30 days.

7        MS. COHEN:  Thank you, your Honor.

8        THE COURT:  And then we'll decide whether they have

9    to be answered within 60 or 90 days.  I'm not sure which one

01:15    10    we did.  Well, I'm sorry to take the wind out of your sail.

11    The issues that are in dispute, every plaintiff is going to do

12    a fact sheet.  There's going to be Declarations.  Is there a

13    dispute about whether records authorizations have to be

14    signed?  Mr. Slater?

01:16    15        MR. SLATER:  The, the question was whether or not the

16    profile forms were going to be ultra simplistic.

17        THE COURT:  Oh, okay.

18        MS. SLATER:  Or more searching if we were going to

19    provide all of that information that I recited, then we have

01:16    20    no providing authorizations for those physicians that were

21    identified.

22        THE COURT:  Let's assume we're going to go with the

23    detail fact sheets.  So, I assume we don't have an issue with

24    the records authorization.

01:16    25        MR. SLATER:  I don't think we have an issue.  I

1    think, I think 30 days may be aggressive on getting the

2    negotiation done over the content of the fact sheet.  We can

3    try but --

4              THE COURT:  Okay, let's try.  It's not etched in

01:16    5    stone.

6              MR. SLATER:  Yeah.  But one of the issues that's

7    going to come up is, you know, when you asked about medical

8    authorization, there's no harm in previewing.  We talked about

9    every doctor that every person ever been to for every single

01:16    10   medical condition they've had.  That's going to be part of the

11   discussion.  Obviously medical authorizations should be signed

12   for any physician that falls within the scope of what's

13   ordered, but that's going to be a question we're going to have

14   to talk about.

01:16    15             THE COURT:  Okay, we'll deal with it.  We'll deal

16   with that.  We'll target 30 days.  Again it's not etched in

17   stone.  If you can't get it done, we'll deal with it.  But

18   that is one of the issues as opposed to some of the other

19   issues we're dealing with.  That should be on the front burner

01:17    20   rather than the back burner.  Miss Cohen.

21             MS. COHEN:  Yes.

22             THE COURT:  We want to get that entered like you do

23   promptly.  That's a front burner issue.  So we'll give that

24   priority.

01:17    25             MS. COHEN:  Yes, your Honor, we'll get working on

1    that.

2            MS. TOLENDANO:  I think the issue with respect to the

3    ESI protocol and how it relates to the plaintiffs' fact sheets

4    is there will certainly be a production of the documents that

01:17    5    are accompanying those fact sheets when they're submitted.  I

6    think what this exchange illustrates is the fact that the

7    scope of those documents are still entirely hypothetical at

8    this point.  And so --

9            THE COURT:  You know it's going to be a lot.

01:17    10            MS. TOLENDANO:  I agree.  And so you have to that

11    extent, and, and I like your Honor's quote about having the

12    staff to do it right.  Defendants, the full perspective is

13    that the protocol that we've spent the last three weeks

14    negotiating should presumptively apply to the fact sheets.

01:18    15    Uh, we are willing to put off that discussion because, uh, you

16    know --

17            THE COURT:  They don't know what the dispute is.

18            MS. TOLENDANO:  The dispute is whether documents that

19    are produced in connection with plaintiffs' fact sheets are

01:18    20    documents produced by the plaintiffs themselves should be

21    subject to the terms of the ESI protocol.

22            THE COURT:  So, what's the dispute?  Why, why don't

23    you want it subject to the protocol?

24            MR. PEROCKI:  Your Honor, Gary Perocki on behalf of

01:18    25    plaintiff.  Your Honor, the main reason why there's a dispute

1  in terms of whether or not these documents are subject to the

2  ESI protocol is that for any one particular individual

3  plaintiff, we're talking about a finite number of documents.

4  It's usually, you know, may be a couple thousand pages at most

01:18    5  of medical records and the way that they're usually processed

6  is those medical records come in either paper or scanned.

7  Right?  They're not electronic documents, and the way the

8  procedure works is you submit your completed plaintiff fact

9  sheet and you upload as attachments to that plaintiff fact

01:19   10  sheet your medical records, your authorizations and then that

11  gets submitted as a packet essentially to the defendants.  If

12  we were then to subject that to the ESI protocol, each one of

13  those plaintiffs would, in addition to having to do it that

14  way, somehow come up with a method for bates numbering these

01:19   15  documents across all plaintiffs or assigning them in the, you

16  know, individual bates numbers, then putting them through a

17  review process which we normally don't do.  We, we take the

18  records and we just produce them.

19          THE COURT:  What did you do in Benicar?

01:19   20          MR. PEROCKI:  We did it the way I'm talking about

21  right now, which is what we did was we didn't have those

22  records subject to the ESI protocol.  Those records were

23  submitted in conjunction with each plaintiff fact sheet and

24  sent as a complete packet per plaintiff.

01:20   25          THE COURT:  Were there any problems in that?

```
 1        MR. PEROCKI:  No, there weren't which is why we
 2   wanted to event that from the ESI protocol.
 3        THE COURT:  And what advantage would we get to your
 4   proposal.
 5        MS. TOLENDANO:  So in effect our proposal is just
 6   that we will discuss at an appropriate time when we've
 7   actually hashed out what information will be included.  You
 8   know, we were, we were reasonable when it came to the
 9   documents that we produced with the plaintiff profile forms
10   because we had an understanding that that universe of
11   documents would look like, and in this case, you know, like my
12   colleague said, we're talking about potentially thousands of
13   pages or thousands of documents per plaintiff.  I certainly
14   understand and am sensitive to the concerns on behalf of each
15   of those plaintiffs, but, one, they are presumably represented
16   by counsel and, two, if you multiply out those thousands of
17   pages times potentially hundreds or thousands of plaintiffs,
18   and multiply again by each of 41 defendants who are going to
19   have to process, you know, all of these documents and find
20   some way to then artificially, you know, go through the, the
21   back-end of bate stamping and organizing them in a way that
22   works, it's actually potentially a considerable burden.
23        THE COURT:  Why don't we do this.  We have 2200, 2100
24   plaintiffs in Benicar, we had no problems.  The default
25   procedure will be the Benicar procedure, but if you -- if
```

01:20
01:20
01:20
01:20
01:21

1  things develop and for good cause, if you want to revisit this

2  issue, make an application.

3           MS. TOLENDANO:  Thank you, your Honor.

4           THE COURT:  Okay?

01:21    5           MS. TOLENDANO:  Thank you, your Honor.

6           THE COURT:  The second issue is the Categorical

7  Privilege Logs.  I think this is a legitimate concern on both

8  sides.  I just wonder if we have to wait and see.  This is an

9  issue.  I just wonder if we have to wait to see what we have.

01:21   10           MR. SLATER:  I would just say, your Honor, we have a,

11  we have a serious issue with Categorical privilege --

12           THE COURT:  I'm not deciding it now.  I understand.

13  Hypothetically one defendant says to the court we have 40

14  thousand documents, Judge, that fit into this one category.

01:22   15  Wouldn't it make sense, you know, they make a representation

16  about blah, blah, we prove it, we justify it, corroborate it.

17  Doesn't it make sense to deal with that on a categorical basis

18  than 40 thousand -- I just had a case with a thousand page

19  privilege log.  Isn't that ridiculous?

01:22   20           MR. SLATER:  Yeah, it is ridiculous to, to claim that

21  that that document's a privilege.  But I think the answer

22  respectfully, your Honor, is that the Categorical privilege

23  designation should never be permitted and I'll tell you why.

24  It makes it much easier for the defense to sweep thousands of

01:22   25  documents into a Privilege Log if all they have to say is, you

01:23

 1    know, attorney/client privilege with some boiler plate

 2    description which in this District, in this Circuit that's not

 3    enough.  If they're going to claim that we're not going to see

 4    a document or a portion of the document, the defense needs to

01:23

 5    actually give us information about that document that we can

 6    scrutinize that document and determine whether that document

 7    actually qualifies for the privilege.  So we want to make it

 8    as hard as possible and there's nothing secret about that and

 9    I think frankly the law wants to make it as hard as possible

01:23

10    to shield any document under privilege.  That's what the law

11    says.  It's frowned upon.  So, a Categorical Privilege

12    designation makes it much easier to sweep this in.  They

13    should have to go document by document and sign off and say

14    this document was privileged for this reason.  It was between

01:23

15    these people.  It's on this general subject and this is why

16    you're not getting it and they should have to go to the next

17    document.  And if they have 40 thousand documents, that's, you

18    know, that's, you know, that's, that's what they have to

19    choose to do.

01:23

20            THE COURT:  I think you may be conflating issue two

21    with issue three.  We're going to get to issue three.  But on

22    issue two, the Court's direction is it's not ruling whether or

23    not it is or is not permitted.  The burden would be on the

24    defendant to Show Good Cause why they should group categories

01:24

25    of documents.  If there's good cause, it will be granted.  But

1    we're not going -- you're not going to preauthorize it without

2    a Good Cause finding.  Okay, that's the issue two.

3         Issue three I think is the issue you're most concerned

4    with Mr. Slater and I agree with you because there has never

01:24    5    been an instance in the thirteen years this court has been on

6    the bench that it has not personally reviewed documents in

7    camera.  Every week I review in camera documents by inhouse

8    counsel.  And you could read legions of my opinions about the

9    two roles inhouse counsel plays, business and legal and there

01:24    10    is not going to be a blanket privileged designation for

11    anything prepared by inhouse counsel, because we know that

12    inhouse counsel sometimes can play the business role.  That I

13    think is your major concern.  I don't know how to deal with

14    this issue about, you know, how do we limit the logging, but I

01:25    15    mean clearly, well, I don't to say clearly but I would think

16    correspondence between inhouse counsel and outside counsel is

17    privileged.  I would think correspondence from outside counsel

18    is privileged.  From there I'm not sure.

19         MR. SLATER:  If I can short circuit this.  In looking

01:25    20    at -- I was, I was involved to somewhat in this, that's why --

21    but not heavily involved which is why we got along so well as

22    you've heard.  I think ultimately looking at this, if a

23    document gets turned up through our search terms, then it's

24    come out of someone's custodial production and it should be

01:25    25    produced or they need to log it as a privileged document.  I

1    don't think that we really should have presumptive, uh,

2    categories where they don't have to list on the log that they

3    held the document back.  I think that the best thing to do is

4    just have a default where, hey, if something pops out of the

01:26    5    research and development person's documents when their

6    custodial production is done and if there's lawyers on it, so

7    they're going to log it.  I mean if we get to the point where

8    we have a custodial production from someone in the legal

9    department, we can revisit.  But we're not talking about

01:26    10    lawyers having their documents searched here.  So I think

11    everything should be listed.

12            MS. TOLENDANO:  Your Honor, may I be heard briefly?

13            THE COURT:  Yes.

14            MS. TOLENDANO:  A few preliminary indications.  I

01:26    15    think the way the plaintiffs conceived of this provision.  The

16    first I'd like to know that we're not limiting the two

17    provisions, solely documents related to, solely to the defense

18    of the litigation and then they proposed and also between

19    outside counsel and in-house counsel.  And so the universe of

01:26    20    documents that we're talking about, necessarily, are all

21    documents that are dated after the start of the litigation and

22    that relates solely to the defense of the litigation.  But if

23    --

24            THE COURT:  That's a very, very, very sticky subject

01:27    25    because hypothetically, someone in the RND Department tomorrow

1    starts investigating the cause of the contamination that

2    they've discovered in 2018.  Okay?  Someone can say that's

3    solely to the defense of the lawsuit.  Right?

4            MS. TOLENDANO:  Work product.

01:27    5            THE COURT:  They may not.  Well, it is work product.

6            MS. TOLENDANO:  If in that scenario from someone

7    who's directly biased, done at the direction of the attorneys,

8    I think part of the issue --

9            THE COURT:  What if the FDA -- what if the -- okay,

01:27    10   the FDA says to the defendants, what's your opinion on what

11   caused the contamination.  In-house counsel calls RND and says

12   I want you to investigate that.  Is that privileged?  Is that

13   work product?

14           MS. TOLENDANO:  I understand the concern.  I just

01:28    15   want to --

16           THE COURT:  That's why it's so hard to put a blanket

17   --

18            MS. TOLENDANO:  But I do think it illustrates what

19   will happen if we find that we can't determine which is that I

01:28    20   could leave this conference today, I could a summary e-mail to

21   the Deputy Chief --

22           THE COURT:  No, no, no.  That's privilege.

23           MS. TOLENDANO:  Until he forwards it to the G.C.  and

24   at that point, we're now talking about something that I

01:28    25   created and that it's going to be forwarded from an in-house

1    person to a non-lawyer.  And so the issue with the way it's

2    being conceived right now and I understand that we may need to

3    find some other middle ground, is that if we're conceiving of

4    privileged communications with those that don't need to be

01:28    5    logged and being defined only as between lawyers, we run into

6    a real problem.

7            THE COURT:  No, no.  I agree with you there.  No, no,

8    no.  You could read my opinions.  No.  Privilege -- you can

9    have a communication between a company and a lawyer.  Company

01:28    10    employer is privileged.  There's dispute about that.  The

11    problem is we're just dealing with the issue of what has to go

12    on the log.

13            MS. TOLENDANO:  I understand that.  I think there's

14    also a related issue as to logging these communications.  So

01:29    15    if I reach out to the CEO on a Tuesday and I log this

16    communication, then I have to log it CEO created work product

17    on Wednesday, and now the custodian says, suddenly the

18    privilege log itself is starting to infringe on the concept

19    privilege.

01:29    20            THE COURT:  So you send to it the CEO.

21            MS. TOLENDANO:  I have to say I e-mailed the CEO

22    on Tuesday, Wednesday the CEO created a document that we are

23    also withholding because it's now work product.  And so these

24    communications, this is something that can happen on a rolling

01:29    25    basis, and it's obviously limited, not to just to those sort

*53*

1    of sensitive documents, but also scheduling depositions.

2           THE COURT:  But isn't that sort of like that you

3    would e-mail it to some in-house person -- counsel, not just

4    the CEO.  Now that's privileged.  Right?  That's categorically

01:30    5    privilege.  Outside counsel to inside counsel.

6           MS. TOLENDANO:  I think if we were turned out to do

7    what's best, that's what we'd have to do.  I think every

8    communication would need to be routed through inhouse counsel.

9           MR. SLATER:  And, your Honor, this is why where we

01:30    10    come out at this point is, there can't be a categorical

11    exclusion.  If something gets picked up in the searches and

12    counsel says it's privileged, it should -- we can't draw a

13    bright line.  We can't be sure and it's just a safer way to

14    go, and I think he's concerned about having, you know,

01:30    15    privilege does not exist in every case.  These privileges were

16    created.  So that's not an issue.  And ultimately, again,

17    we're going to be searching custodial files of particular

18    individuals.  So, if a document pops up and somebody is in

19    marketing or in research and development whatever it is, it

01:30    20    should be logged if they're claiming it's privileged.  And if

21    it's the back-end of the chain of e-mails that started with a

22    lawyer, they can, you know, they can redact portions and not

23    redact other portions and identify the redaction on the log

24    until agreed.  And that's it.  I mean that way everybody is on

01:31    25    the same footing and everybody knows what was there.  I think

01:31

01:31

01:32

01:32

01:32

```
 1   that's the only way reasonably to approach it.
 2           THE COURT:  We're talking about custodial files of
 3   non-in-house counsel or outside counsel.  Right?
 4           MR. SLATER:  Yes.
 5           THE COURT:  Okay.  So I think that the default
 6   setting should be everything has to be logged, but, again, for
 7   good cause, if you find, any defendant finds that it's unduly
 8   burdensome, disproportional, make an application and the court
 9   will consider it.  I'd like to have a concrete situation in
10   front of the court rather than a blanket authorization.  I
11   don't think that prejudices the defendants because if there's
12   good cause, you're going to get what you want.  But there is a
13   concern because it happens in every case.  The communications
14   in-house and what's privileged and what's work product and
15   what's predominantly legal and what's predominantly business,
16   you know, the issues aren't easy, but I think that's the
17   fairest thing to both sides.  Okay?
18           MS. TOLENDANO:  Thank you, your Honor.
19           THE COURT:  So I think you can go back to your client
20   and say if there's a good reason why we need to do it by
21   category, they're going to get it.  But just make an
22   application for it.  Okay?
23       And then the last issue is other products.  I didn't
24   understand that frankly.  And is another Sartan in other
25   products?
```

1      MS. TOLENDANO:  We haven't discussed that.  I think

2  at this point what we mean by other products is products that

3  as of this point we don't anticipate even becoming part of the

4  litigation.

01:32  5      So to give you background on where this stipulation

6  comes from.  There are going to be scenarios from our

7  experience where, for example, defendants are internally

8  discussing sales data.  And what I mean an e-mail --

9      THE COURT:  Excuse me.  You're a hundred percent

01:33  10  right on that one.

11      MS. TOLENDANO:  Delightful.

12      THE COURT:  Right?  You can't disagree with that.

13      MR. PEROCKI:  I think the issue is do we get to know

14  -- I mean this is the --

01:33  15      THE COURT:  Sometimes.  But this goes back to, you

16  know, the blanket rules sort of situation.  Okay, great.  That

17  document that contains five hundred different products, okay,

18  if you don't log that one, what about the ones that only

19  contain three products, do you have to log that one?  And

01:33  20  that's where the issue comes in, is what they want to say is,

21  look, anytime that we are withholding a document that contains

22  what we consider a non-relevant product, we don't have to tell

23  you what that product was.  We're redacting this document,

24  we're withholding that document and how they define

01:33  25  non-relevant product is the, you know, the issue.  So, we, we

1    don't know what that non-relevant product is.  How do we get

2    to figure out whether or not we think that document is

3    relevant, even if they don't.

4         MS. TOLENDANO:  The name of the product ultimately

01:34    5    is, is not relevant to this consideration.

6         THE COURT:  Doesn't it go both ways?  You have to

7    trust the defendants that they're complying with their

8    professional responsibilities and obligations to produce

9    relevant information.  They have to rely on the plaintiffs

01:34    10    that the plaintiffs are producing, fulfilling their

11    professional responsibilities.  So if the defendant makes a

12    representation that this is an irrelevant product, has nothing

13    to do with case, it fits into the category and it's not

14    another Sartan, why can't we rely on this just like they rely

01:34    15    on your representation that certain OBGYN documents medical

16    records you're not producing because they're not relevant to

17    the case.

18         MR. PEROCKI:  I think the issue is you can rely on

19    the defendants to make some determination but just with the

01:35    20    privilege log, we have to have information that allows us to

21    cross check.

22         THE COURT:  I think the way I'll deal with that one

23    is, I'm with the defendants on this one.  You're going to get

24    redacted documents.  Right?  You're going to get a 25 page

01:35    25    sales report and there will be redactions all over the place.

| | |
|---|---|
| 1 | If you think there's important information that's redacted |
| 2 | that you need to see, ask the court to look at it in camera. |
| 3 | MR. PEROCKI:  What about withheld documents that are |
| 4 | completely withheld?  So if you have an e-mail with three |
| 01:35  5 | attachments and they withhold one entire attachment and say |
| 6 | look that attachment that has nothing to do with -- you know |
| 7 | with, has to do with an irrelevant product. |
| 8 | THE COURT:  But don't we have to trust them?  Don't |
| 9 | we have to trust them just like they trust the plaintiffs, you |
| 01:35 10 | have to trust them. |
| 11 | MR. PEROCKI:  But we're talking about attachments to |
| 12 | a document that is relevant.  Right. |
| 13 | THE COURT:  Right. |
| 14 | MR. PEROCKI:  As a, as a, as a primary point that |
| 01:36 15 | entire family of documents, the e-mail and the three |
| 16 | attachments, since the e-mail is relevant, and two of the |
| 17 | attachments are relevant, we're getting an incomplete document |
| 18 | but we don't know what we're missing. |
| 19 | THE COURT:  If you think you need it, ask the court |
| 01:36 20 | to look it in camera. |
| 21 | MR. PEROCKI:  Okay. |
| 22 | MR. SLATER:  I just have one question because you |
| 23 | raised the question with that other Sartan and then all of a |
| 24 | sudden it became a sticky conversation. |
| 01:36 25 | THE COURT:  No, no.  That's relevant to the case. |

```
 1              MR. SLATER:  I get it.

 2              THE COURT:  I think other Sartans are relevant to the

 3    case.

 4              MR. SLATER:  I get it, but the defendants in their

 5    good faith analysis to the case, I'm not being factitious and

 6    they say, well, no, it's not.  That's not subject to a recall.

 7              THE COURT:  Here's the portion that's not.

 8              MR. SLATER:  And then the other question, Judge,

 9    there may be other products that aren't Sartans where there

10    may have been a contamination issue for a short period.  Who

11    knows.  And they say, well, no it's not, it's not one of these

12    drugs, so it's not relevant, we don't have to tell you.

13    That's why there's no not trusting by saying look if you're

14    going to redact information on other products, just literally

15    just tell us what those other products are.

16              THE COURT:  No.  This is the example I was thinking

17    of.  I don't know what the facts are in this case.  I have no

18    idea, but let's just say the same factory made ten different,

19    same assembly line made ten different products.  One of the

20    products was Valsartan contaminated, clearly relevant.  Same

21    assembly had contamination for a quote unquote other products.

22    I would think that that's relevant to the case because they're

23    the same cause.  Right?  If you find that out, just make an

24    application for it.

25              MR. SLATER:  We'll never know.  We'll never know
```

01:36
01:36
01:37
01:37
01:37

1    because they're not telling us which products they redacted.

2    So we have no idea --

3         THE COURT:  You'll know because when you do your

4    discovery of their 438 inspection report, you'll get that

01:37    5    information.  When you ask for their quality control reports

6    and et cetera, you'll get all that information.

7         MR. SLATER:  Not to push back too much, but they're

8    going to say we're not giving you those reports on products

9    that aren't in this litigation.  So we're not -- I mean

01:38    10    there's going to be and I think they probably would agree with

11    us, they don't plan to provide us inspection reports on

12    products that aren't in this litigation.  I think you're going

13    to find if you probe the defense a little, you're going to see

14    that it's -- you know, it's going to be sticky.

01:38    15         THE COURT:  I don't expect to have inspection reports

16    for a particular product for plans, but if you see a redaction

17    on page four and they redacted this and they say it's because

18    it's another product but it was the same assembly line, you're

19    going to get it.  You're going to get it.  But I think that to

01:38    20    say that they have to identify every non-relevant product in

21    the case is not appropriate.  The burden should be on, in this

22    instance the burden is on the plaintiff to make an

23    application.  But let's talk about that.  Is other Sartan

24    relevant product.

01:39    25         MR. SMITH:  Your Honor, if I may.  I think we're

01:39

01:39

01:39

01:40

01:40

1    putting the cart before the horse on that issue.  And here's
2    why I say that.  We will get document requests from the
3    plaintiffs.  When we get those document requests, they will
4    undoubtedly ask for other products that they think are
5    relevant and that time before we start producing documents, we
6    will come to the Court with our view of what's relevant and
7    what the scope of those documents request should be and then
8    the Judge, or your Honor, will make rulings and we will follow
9    those rulings and then we will redact other products that your
10   Honor and the parties have decided are not relevant to this
11   litigation, following that discovery motion practice.  And
12   that's when we will not be required to list all of the other
13   products that we are redacting.  So in a situation where we
14   have a spread sheet that has 500 different products, we're not
15   going to have to list all 500 of those products as the reason
16   we're redacting.  But I would suggest in the context of the
17   production, in the context of a family of production that the
18   plaintiffs are receiving, they will have an understanding of
19   what that document was.  They will not know the name of the
20   product that was redacted.  But I would submit it doesn't
21   matter whether the name of the product is, is a particular
22   product name or product A, B, C.  They will know from the
23   context of the document surrounding it in that family as to
24   whether they want to make an application to the court to say I
25   think I need to see this document.  And for your Honor to be

1    able to see that in camera.  So I think talking about whether

2    we're going to produce this document or that document right

3    now is putting the cart before the horse because we haven't

4    seen the request.  We haven't had the opportunity to evaluate

01:40    5    them and submit to your Honor our views to have relevance.

6             THE COURT:  Well, we might get into this issue when

7    the defendants have to produce the core discovery.

8             MR. SMITH:  And I think your Honor has dealt with

9    that in the core discovery order and we are diligently trying

01:41    10    to produce those documents, and when we get those documents,

11    there may very well be discussions between the plaintiffs and

12    defendants on this, the scope of the production we've made.

13    But, again, I don't think for purposes of the ESI protocol

14    whether we are logging a particular product name in the

01:41    15    redaction that that's necessary to look at right now.

16             THE COURT:  Okay.  Anything else?

17             MR. PEROCKI:  Just issue five, your Honor.

18             THE COURT:  Can we put this issue off?

19             MR. PEROCKI:  We can.  I think that it would be

01:41    20    comfortable to see --

21             THE COURT:  Will it come up with their core

22    discovery?

23             MR. PEROCKI:  I'm sorry?

24             THE COURT:  Will it come up with in connection with

01:41    25    their core discovery?

1          MR. PEROCKI:  I don't know that they're going to have

2     core language documents in the core discovery.  The core

3     discovery is not subject to the ESI protocol.  So, no, they

4     will not come up.

01:42     5          A SPEAKER:  So why wait -- I thought that was denied,

6     the ESI protocol.

7          MR. PEROCKI:  That was not our understanding.

8          MR. SMITH:  And I may be speaking out of turn, your

9     Honor.  I thought that was the purpose of the core discovery.

01:42     10          THE COURT:  I don't understand the issue.

11          MR. PEROCKI:  I -- whether or not the core discovery

12     should be produced in conformance with the ESI protocol.

13          THE COURT:  Why shouldn't it be?

14          MR. PEROCKI:  That this was the ESI Protocol.  That's

01:42     15     not what -- it was our understanding that shouldn't.

16          MR. SMITH:  I may be speaking out of turn on that

17     issue.  I -- when we first talked about core discovery we were

18     saying they said it didn't have to subject to the ESI

19     protocol.

01:42     20          THE COURT:  No, I don't think they ever addressed

21     that issue but I don't think it's core discovery.  It's some

22     of the most important discovery in the case, it should be,

23     produced pursuant to the ESI protocol.  Of course.  It's

24     critical discovery.

01:42     25          MR. SMITH:  Okay.  So I don't believe that the issue

1    is relevant to core discovery.

2         THE COURT:  Okay.

3         MR. SMITH:  And that's being asked here is for you to

4    talk about the purpose of something, but the language of the

01:43    5    ESI protocol is not in dispute.

6         THE COURT:  If there's an issue with foreign language

7    and/or core discovery, let the court know and we'll deal with

8    it.

9         MR. SMITH:  Okay.

01:43    10        THE COURT:  But this issue because we're dealing with

11   Chinese and Indian companies, it's like we dealt with Japanese

12   with Daichi deserves some attention.

13        MR. SMITH:  Understood, your Honor.

14        THE COURT:  Deserves some attention.  And go on to

01:43    15   the translation issue?

16        MR. SMITH:  Yeah, we went through that for months.

17        THE COURT:  Yes, I know.  That's the problem.

18        MR. SMITH:  All right.  Thank you, your Honor.

19        MS. TOLENDANO:  Thank you.

01:43    20        THE COURT:  Thank you.

21        MR. GOLDBERG:  Your Honor, if I can, I just want to

22   clarify our understanding, when we get to core discovery it's

23   not -- our understanding of how we got to the core discovery

24   Order and one of the fundamental principles of that Order was

01:43    25   this isn't the kind of discovery that's going to need to go

1 though go through the ESI Protocol from the standpoint we're

2 trying to produce readily available information, not getting

3 into custodial files, not getting into e-mails.

4        THE COURT:  No.  Why is there -- I don't think

01:44    5 there's -- you're right, we're not talking about custodial

6 files, unless the e-mails specifically list it.  We're not

7 discussing about that.  Why is there an issue about whether

8 it's subject to the ESI Protocol about bate stamping.

9        MR. GOLDBERG:  Oh, that kind of thing, yeah.  I mean

01:44   10 certainly we, we --

11        THE COURT:  That's what I'm talking about.

12        MR. GOLDBERG:  That's why I just wanted to clarify.

13 Yes.  Certainly.

14        THE COURT:  I know.  Sort of mechanical.

01:44   15        MR. GOLDBERG:  Yes, some of those are basics will be

16 consistent that they get produced.  So we just wanted to

17 clarify where your Honor is coming from.

18        THE COURT:  Okay.

19        MR. SMITH:  Your Honor, the concern that we had about

01:44   20 not being in conformance with exactly that what is the

21 formatting and the, the -- but in terms of like communications

22 with the FDA, I mean those are probably going to be e-mails as

23 those should be produced in conformance with ESI Protocol.

24        MR. GOLDBERG:  Yeah, I -- that is not -- well, go

01:44   25 ahead.

1    MR. SMITH:  Yes, your Honor, if I may.  In your

2  Honor's Order on core discovery was footnote one.  The purpose

3  of, the purpose of requiring the early production of core

4  discovery without the necessity to have a formal document

01:45    5  request is to help identify the genuine issues in dispute and

6  to assist the parties in their effort to timely frame an

7  acceptable ESI Protocol.  It was always the understanding of

8  the defendants that the core discovery was the type of off the

9  shelf if you remember Mr. Slater saying, they have a filing

01:45    10  cabinet.  They're required under FDA regulation when found

11  that regulation but if they have a filing cabinet, they just

12  pull out this core discovery and hand it to us.  That was

13  always the understanding.  Clearly your Honor had the same

14  understanding when we were talking about framing the ESI

01:45    15  Protocol after the production of the core discovery.

16    THE COURT:  Thanks for bringing that to my attention.

17  If I had to redraft that again, I would say what I intended to

18  mean was not the mechanical stuff we're talking about but the

19  custodian/search term.  That's why the core discovery is so

01:46    20  relevant to help the defendants identify -- or plaintiffs

21  identify who the appropriate custodians and search terms are,

22  not whether documents should be bate stamped or not.

23    MR. SMITH:  You know, your Honor --

24    THE COURT:  But in terms of the e-mails, let's deal

01:46    25  with the issue after you produce -- let's see where -- what

1    the defendants produce.  If we don't get the e-mails right

2    away, we'll deal with it.  We'll deal with it.  Okay?  We'll

3    deal it.

4            MR. GOLDBERG:  Okay.

5            THE COURT:  I think we covered the profile forms,

6    didn't we?

7            MS. COHEN:  Yes, your Honor.

8            THE COURT:  All right.  The discovery confidentiality

9    order.  My the concern, the concern I have about the DCO is I,

10   I'd like to get that entered promptly because I don't want

11   that to hold up the production of documents.  So, I think

12   there's a provision under the patent rules that if documents

13   are produced before a DCO is entered, they're designated as

14   attorney's eyes only until the DCO is entered and we're

15   following the same procedure here.  I don't want a defendant

16   to hold up the production of relevant documents pending a DCO

17   which should be entered, well probably a moot issue because we

18   should get it entered in a matter of days.

19           MS. COHEN:  Your Honor, Lori Cohen.  I think we're

20   close.  We need some guidance from your Honor.  As you saw, I

21   think we've brought it a lot closer than we have in the past.

22   We have perhaps eight or so issues going through it.  So I'm

23   hopeful we can get it entered, but, but obviously I understand

24   your point, that we should not hold up the production

25   consistent with the deadline if for some reason we don't have

1    it signed yet.

2          THE COURT:  Okay.  I'm perfectly willing to go

3    through -- do you want to take a break or do you want to still

4    plow through?  What's your pleasure?  Let's go through the

01:48    5    issues.

6          MS. COHEN:  Okay.  And I know Mr. Slater has been

7    involved in his side and my team has been involved and I'll

8    try to --

9          THE COURT:  Why can't use the same order we used in

01:48    10   Benicar is beyond me frankly.

11         MS. COHEN:  And we have been using that.  I think

12   we're down to, you know, again just a handful of issues.  I

13   think perhaps I would say some small ones and two kind of

14   overarching ones.  So if we can get your thoughts on it, your

01:48    15   Honor, we should be able to wrap this up, but I think -- and I

16   don't even to want to take credit to good collaboration on it

17   because others on my team have done it but I think they've

18   really bridged a lot of gaps and have worked well getting,

19   getting to this point.  But I think we're, we're, we're close.

01:49    20   I don't want you to think that we haven't overcome some

21   hurdles there.  But I think the difference in Benicar on this

22   point goes to the same issue we keeping raising which is so

23   many defendants and, you know, a lot of different complexities

24   that require additional concerns, we've obviously tried to

01:49    25   manage all the comments and bring them to you in a simulated

1    fashion.  So, I just try to go through quickly maybe we'll be

2    able to knock them off.  On page -- and I'm sure Mr. Slater

3    will jump in if I, if I misstate and I assume your Honor has

4    the, the highlighted version with the blue for the plaintiffs'

01:49    5    version and red for the defense.  And this is on page --

6            MR. SLATER:  You're going to go through each of

7    these?

8            THE COURT:  I don't have a color printed.

9            MS. COHEN:  You want me to give you a color copy?

01:49    10            THE COURT:  No.

11            MS. COHEN:  You sure?

12            THE COURT:  No.

13            MS. COHEN:  I have it.

14            THE COURT:  Sure.

01:49    15            MS. COHEN:  Take one last copy back.

16            THE COURT:  I don't want your work product.

17            MS. COHEN:  Oh, no, no.  It should be in color.

18            THE COURT:  Thank you very much.

19            MS. COHEN:  Adam, do you have a color copy?

01:50    20            MR. SLATER:  I do.

21            MS. COHEN:  Okay.  We're good.

22            THE COURT:  Okay, what page are we starting on?

23            MS. COHEN:  So we'll start on page two.  And, Adam,

24    I'm sorry, Mr. Slater the formality you'll go through.  Okay.

01:50    25            So, on page two, and again it's, it's the blue

1    highlight.  So that means plaintiff is crossing that out.  And

2    that's what we want to include there.  So here basically

3    they're crossing out the language and/or submitted to the

4    Court in connection with a motion or hearing.  We think that

01:50    5    should remain in, should remain in because, you know, we'll

6    get to a sealing issue at the end.  But we think that that

7    language is certainly not prejudicial and to be -- I mean

8    there could be a motion or hearing at trial.

9        THE COURT:  What's the problem with that?

01:51    10        MR. SLATER:  I don't think that documents submitted

11    with a dispositive motion or pretrial hearings or hearings

12    connected to a trial would be subject to confidentiality.  I

13    would think at that point there's not, there's not an ability

14    to be hiding the documents or sealing the documents.  I mean

01:51    15    if we try the case, for example, my understanding of the trial

16    a dispositive motion may be related to those are not subject

17    to confidentiality.

18        MS. COHEN:  But, your Honor, they could be and that's

19    why we think this language is important and we can always take

01:51    20    that up on a case by case basis.

21        THE COURT:  Yes.

22        MS. COHEN:  Thank you, your Honor.  Also on page two

23    under number one, there's another cross out of some small

24    language by plaintiffs where it says:  Persons noted or

01:51    25    subpoenaed for deposition actual or potential witnesses and

1    their respective counsel.  We have a similar issue where again

2    this could come up and we don't think that that language is in

3    any way --

4              THE COURT:  Who's the potential witness?

01:51   5              MS. COHEN:  Let's see.  The actual potential witness.

6    That could be somebody who is, is in a deposition and not

7    being deposed, but they're a potential witness from the, from

8    the company, who is from the company, could be there

9    potentially.  So sort of the broad language to protect any

01:52  10   such communication.

11             THE COURT:  That could be anyone in the world.

12   Potential witness.

13             MS. COHEN:  But, but it could be, but they would have

14   to be again provided this confidential information.  So, we're

01:52  15   envisioning if someone a witness at a deposition for, example,

16   is there, they should have to be subject to the protective

17   order.  That was one of the I think examples that we came up

18   with there.  You could have somebody sitting in.  Again we

19   could have multiple witnesses there.  So we just think that

01:52  20   somebody is there, it's very easy even to do it, either have

21   him sign it or he could do it even verbally just to make sure

22   that potential witnesses could may be in court or called in to

23   testify or at a deposition, you know, if they see something

24   confidential that they are subject to the Protective Order as

01:53  25   well.

1          THE COURT:  A trial, potential trial witnesses?

2          MS. COHEN:  Or, or deposition witnesses.

3          THE COURT:  Mr. Slater?

4          MR. SLATER:  Well, the trial I don't think it

01:53   5   applies.  I haven't even envisioned they were trying to seek

6   that, but I mean obviously can't -- I think that this is a

7   pretty important issue.  If somebody is -- if this is really

8   applies to a third party.  If somebody is a company employee,

9   I mean they're subject to this.  That's not a issue.

01:53   10          THE COURT:  Right.

11          MR. SLATER:  But, you know, take for example a

12   treating doctor, you're going to get into a deposition and

13   intimidate the doctor with a Protective Order and tell the

14   doctor you can't talk about this after you leave?  I mean, if

01:53   15   somebody is a witness, they're a witness.  They have no

16   obligation to the litigation.  What they say about signing it.

17   Then what if they say, okay, we can't take your deposition?  I

18   mean this is -- it's something that we didn't do in Benicar.

19   I haven't seen in other litigation where witnesses who get

01:54   20   brought in as third parties are subject to the Protective

21   Order.  You can mark the transcript, you can mark the

22   transcript as confidential and you can mark the Court's

23   transcript, but the witness itself?  This is just a person in

24   society who shouldn't be bound by this because they're just

01:54   25   roped in because someone decided to question them under oath.

1        MS. COHEN:  And, your Honor, I'll respond to that

2   point about the doctor example.  If they're there, and they're

3   being questioned on their care and treatment, that it would be

4   one thing, but if they're going to be shown company documents

5   that are protected and subject to these, then, yes, they

6   should be able to agree whether verbally or in writing, we

7   agree to abide by this, by this Protective Order.  It's not a

8   big burden.

9        THE COURT:  Let's leave it out, but if there's a

10  reason that a particular individual needs to be bound by this

11  Order, make an application and it will be heard.

12       MS. COHEN:  As a fallback position, could I, could I

13  lobby to just take out the word or potential witness so that

14  we leave in a person noticed or subpoenaed for deposition,

15  actual witnesses so we just cross out or potential witness

16  which seems to give you and Mr. Slater the most concern about

17  the breadth and we leave the rest in?

18       MR. SLATER:  We obviously disagree.  I mean our, our

19  -- I mean the potential witnesses is being just a tiny thing,

20  tiny word in that sentence.

21       THE COURT:  Leave it out.  If there becomes an issue,

22  make an application.

23       MS. COHEN:  Thank you, your Honor.  Then we will go

24  to the next one is let's see.

25       MR. SLATER:  Page five.

1          MS. COHEN:  Page five, yes?  Bless you.  And that is,

2    page five under definition B.  It starts on the bottom of

3    four.  Let's see.  But the language that we're talking about

4    is where plaintiffs added in in blue top paragraph B, the

01:55    5    language starting with nonetheless and it's including in there

6    basically language about sanctions that should it be

7    demonstrated to the court that a producing party has abused

8    the discretion contemplated by the language of this paragraph

9    that says unduly burdened, obviously the court shall entertain

01:56    10    a petition for sanctions.

11          Our position on that, your Honor, is that that is not

12    necessary, as he's already said today several times and we

13    strongly believe that the parties should have trust that there

14    are Rules that govern us, there are ethics, obligations that

01:56    15    we're all aware of and committed to.  And, so, we don't think

16    that's needed.  However, to the extent that that is going to

17    be included, we ask that paragraph 29 or the corollary

18    language be included and that is later on page 30.  So, in

19    other words, what's kind of the goose gander here, your Honor

01:56    20    and --

21          THE COURT:  Here's what I was thinking.

22          MS. COHEN:  Uh-hum.  Yup.

23          THE COURT:  It goes both ways.  If there's an

24    over-designation, the other side can make an application for

01:57    25    relief.  But if there's an undue request to remove

1    designations.

2              MS. COHEN:  Uh-huh.

3              THE COURT:  There should be an application for

4    sanctions on your part.  I'm not saying there will or there

01:57  5    won't, but plaintiffs want to be protected if the defendants

6    over-designate.  The defendants should be protected if the

7    plaintiffs say, we want you to remove designations on every

8    single one of your three million documents you produced in the

9    case.  So I want, it should be I think for both sides.

01:57  10             MS. COHEN:  So we'll, we'll -- if we're going to keep

11   that in, then we'll, we'll propose new language to make it

12   equal.

13             THE COURT:  Right.

14             MS. COHEN:  Our language.  That, that -- we'll make

01:57  15   sure that it's mutual and equal and we'll work on some

16   language on that.

17             THE COURT:  Mutual, yeah.  I would at the end it

18   says, the court shall entertain a petition for sanctions.  I

19   would say, an application for appropriate sanctions may be,

01:58  20   may be made.

21             MS. COHEN:  Okay.

22             THE COURT:  And again it should go both ways.

23             MS. COHEN:  So we'll work on that language then.  And

24   then in the next provision that's at issue is on page 12 I

01:58  25   believe which again goes to I think the first issue.  I may

1    have missed one, your Honor.  Let me make sure I have that

2    one.  Page 12.

3              MR. SLATER:  It's section B.  It's B right next to

4    hearings or transcripts and --

01:58
5              MS. COHEN:  Right.  And that's the same thing here

6    where we wanted to be consistent with what we said earlier,

7    include the language preparing the trial transcripts.

8              THE COURT:  Oh, I see all portions of any --

9              MS. COHEN:  I think that's similar to the first one

01:59
10   you ruled on?

11             THE COURT:  Okay.

12             MR. SLATER:  And, your Honor --

13             THE COURT:  This doesn't govern what happens at trial

14   though.  That will be a whole separate issue that Judge Kugler

01:59
15   will decide.  I don't think we need to address on May 29th,

16   2019 how to deal with documents at trial.

17             MR. SLATER:  And my concern would be also, I mean the

18   hearing is a public forum.  So, you know, if it's discussed in

19   the open courtroom, it's public.

01:59
20             THE COURT:  Unless the -- well --

21             MR. SLATER:  A newspaper reporter can be in here

22   right now taking down everything.  It's public.  It's a public

23   courtroom.

24             THE COURT:  Right.  If you order a copy of the

01:59
25   transcript, there's a procedure to seal a portion of the

          1    transcript if you want.  You can make an application for that.

          2            MS. COHEN:  Can we have a provision which we'll get

          3    to on sealing?  I think we had agreed there should be some

          4    kind of a sealing provision in this at the end, but we want to

02:00     5    get your guidance on exactly how to include that.

          6            THE COURT:  Okay, just to avoid any confusion.  Are

          7    we okay with page 12, paragraph B where the hearing or trial?

          8    All portions of any --

          9            MS. COHEN:  Yeah, we wanted to include the language

02:00    10    the plaintiff had scratched out the words preparing for trial.

         11    I think that should remain in.

         12            THE COURT:  Definitely take out trial.

         13            MS. COHEN:  Okay.

         14            THE COURT:  Because that has nothing -- we're not

02:00    15    going to deal with the trial.

         16            MS. COHEN:  So just leave the word hearing?

         17            THE COURT:  Hearing is fine because there's a

         18    procedure in the Local Rules about sealing a transcript.

         19            MR. SLATER:  Okay.

02:00    20            THE COURT:  They have to make an application.

         21            MS. COHEN:  So I think the next, the next one is

         22    probably the biggest issue, your Honor, and it starts on page

         23    15 and it's Paragraph 20.  I would say it's probably a core

         24    disagreement on de-designation.  I think you saw our

02:01    25    description.  And here again what -- they're a little bit to

1    Benicar given the complexities, the number of defendants, the

2    different issues and that's why to your first question why

3    weren't we just using the same process.  So here --

4            THE COURT:  Why is it different?

02:01  5            MS. COHEN:  Well, because there's in terms of more

6    defendants and more chance for risk.  More chance, you know,

7    if -- with a lot of communications going on.  I know your

8    Honor is thankfully spared from all the e-mails and letters

9    that we have.  We have different groups, different committees,

02:01  10   new defendants coming in and out, defendants perhaps on the

11   sidelines.  So it's just a matter of making sure that nothing

12   gets missed.  This is what we're proposing here in our

13   language the plaintiffs have crossed out is just having one

14   extra step in the process that that --

02:01  15           THE COURT:  So what are you proposing?

16           MS. COHEN:  So what we're proposing is if you look at

17   page 15 to 16 there, again that, that, the -- during the

18   confidentiality de-designation meet and confer process that

19   that the documents will essentially remain confidential until

02:02  20   a determination is made.  Well, the plaintiffs are just

21   generally speaking I'm summarizing this, all the verbiage here

22   is they're saying basically they will give notice of, of, you

23   know, of de-designation.  We'll have a certain amount of time

24   to, to respond and if we don't, basically then it's waived.

02:02  25   So we're saying no.  There needs to be until the court makes

*United States District Court*
*Camden, New Jersey*

1  the determination, things remain confidential.

2        THE COURT:  Suppose, hypothetical.  Mr. Slater writes

3  a letter saying we want these documents de-designated, it

4  falls through the cracks and, you know, the defendants don't

02:02  5  get to it.  Are you saying then that remains confidential

6  forever?

7        MS. COHEN:  That is, that is, that is what we're

8  saying, with all the different defendants and all the

9  different complexities there, that, yeah, that someone has to

02:03  10  make a motion and that's an equal mutual obligation that one

11  side or the other should make a motion, not just send a

12  letter, you know, and perhaps -- I mean, you know, everyone

13  does their best, but that by virtue of setting a motion and

14  time lapsing, that then basically the protection and the veil

02:03  15  of protection is removed because certain time passes that we

16  believe this should actually be a motion because I know you're

17  probably thinking well, Miss Cohen, that sounds like a lot of

18  extra motions for the court.  We -- actually it would be less

19  because what will happen we fear is that this is going to

02:03  20  cause a cascade of problems.

21        THE COURT:  So wouldn't the burden then -- in other

22  words, the de-designation burden would be put on the

23  plaintiffs if the defendant doesn't get back to the

24  plaintiffs.

02:03  25        MS. COHEN:  Or at least a continued --

1            THE COURT:  That doesn't seem fair, does it?

2            MS. COHEN:  Well, I think it does, your Honor, given

3    what's at risk here is the potential for confidential

4    information subject to the Protective Order being, you know,

02:04    5    being left to bear.

6            THE COURT:  How many millions of documents were

7    produced in Benicar?

8            A SPEAKER:  It was over a hundred million pages.

9            THE COURT:  A hundred million pages.  We didn't have

02:04    10    one issue, not one, where this issue came up.  Not one.  So I

11    don't see why we have to deviate from the procedure.  You

12    haven't told me anything that's special about this case, why

13    the defendants can't follow the Court Order.  Now if there's a

14    problem with timing, X days, we can deal with that.  That's

02:04    15    easy.  But the burden has to be on the defendants to move the

16    de-designate rather than putting it on the plaintiffs to move

17    the de-designation.  That's just unfair.

18            MS. COHEN:  I think that the difference here, your

19    Honor, to answer your specific question is is here we have a

02:04    20    lot of different lines of communication, a lot of different

21    defendants and in Benicar, which all refer back to, you know,

22    there was basically one defendant and there's easy

23    communication.  I mean here there were a lot of different

24    parties.  Some people may, you know, may not be in the line of

02:05    25    communication.  So that's, that's the distinction.

1          THE COURT:  I don't see it, Miss Cohen.  I'm sorry.

2     The Order is clear.

3          MS. COHEN:  Okay.

4          THE COURT:  The Order says they have an obligation to

02:05   5     notify the designating party.  They send a letter to that

6     person or that counsel.  The Order will be clear.  You have X

7     days to do something about it, and if you ignore it, you have

8     to follow the Court Order.  It's just inherently unfair to put

9     the burden on plaintiffs to move to de-designate documents

02:05   10    that the defendants designate.  That gives the defendants an

11    incentive to over-designate.  It gives them an incentive to

12    ignore plaintiffs' communications.  I don't see it, Miss

13    Cohen.

14         MS. COHEN:  I understand, your Honor.  So what I

02:05   15    would suggest because you did mention it, a good point,

16    perhaps we need a little cushion of some extra time.  So maybe

17    on page 16, on the bottom there, which is, which includes

18    language, the plaintiffs added about timing, perhaps we can

19    discuss a little more time.  So instead of 14 days, 30 days,

02:06   20    something like that might alleviate your concerns.

21         THE COURT:  How about 21 days.

22         MS. COHEN:  Okay.

23         THE COURT:  Follow the Benicar procedure but give the

24    defendants more time.

02:06   25         MS. COHEN:  Okay.

```
 1              THE COURT:  Is it clear that the defendants -- I'm

 2    sorry.  The plaintiffs have to notify the designated party not

 3    just the defendants' liaison counsel or both?

 4              MS. COHEN:  Well, we'll make -- we'll add some

 5    language to make sure, we both want to make sure that's clear.

 6    Do that.

 7              THE COURT:  And the designated party.

 8              MS. COHEN:  Okay, we'll make sure we add that.

 9              THE COURT:  I think that's eminently fair.

10              MS. COHEN:  Okay.  And then the next, hum, I think

11    page 17 is I again think that relates to what we just

12    discussed.  So unless Mr. Slater disagrees, I think we can

13    forge ahead.  And then same with 18.  Now on -- let's see.

14    Page 19.

15              MR. SLATER:  Paragraph 21 I think.  All of paragraph

16    21.

17              MS. COHEN:  Yeah, let me make sure the designation

18    order --

19              MR. SLATER:  Yeah, if I get you confused.  If you

20    look at paragraph 21, your Honor.  Basically, our position is

21    if you start at the bottom of page 17 where paragraph 21

22    starts, if you read all the way to page 19, the beginning of

23    the first full paragraph ends with the word, the first

24    sentence ends with Federal Rule of Evidence 502.

25              THE COURT:  I'm sorry.  Are we on page 19?
```

1      MR. SLATER:  Well, I start on page 17, paragraph 21.

2    You can read it from there.

3          THE COURT:  I got it.

4          MR. SLATER:  To Page 19 to the end of the first

02:08   5    sentence in the first full paragraph which is 502.  Our

6    position is plaintiff is that's where the provision should

7    end.  And we can probably -- we can agree to some of the

8    changes that counsel wanted within our proposed language.

9    Because what happens is if you go beyond the word 502, for

02:08  10    example, that first sentence about inadvertent production of

11    documents and information subject to work product immunity,

12    etcetera, it's basically a recitation of what's already in the

13    first sentence of the first paragraph.  Basically what

14    happened was, we have the Benicar language and then the

02:08  15    defendant put in that I understand why they did it, but they

16    put in basically the reformulation of the same provision which

17    we don't think is really necessary and, you know, for example,

18    we can agree to change a few of the, the time limits where we

19    had said as soon as practical, the defense wants ten days,

02:08  20    that's fine.  They want to promptly to be defined as seven

21    days, that's fine.

22          MS. COHEN:  Fine.  Right.

23          MR. SLATER:  So that's fine.  But I think beyond

24    that, I think should end with 502 and the rest should be

02:09  25    deleted.

*83*

|   |   |
|---|---|
| | **1** MS. COHEN: And, your Honor, on this paragraph, 23, |
| | **2** we agree that obviously 502 is the applicable provision here. |
| | **3** We think that we added beyond where the plaintiffs wants to |
| | **4** stop is meaningful and helpful and we don't think it causes |
| 02:09 | **5** any duplication or confusion. I think that from the time |
| | **6** frame issues that we -- that Mr. Slater mentioned we agree |
| | **7** adding that and then -- |
| | **8** THE COURT: What if we say, this Order incorporates |
| | **9** the provisions of Federal Rule of Evidence 502? Why do we |
| 02:09 | **10** need anything after 502? |
| | **11** MS. COHEN: It's giving more certainty to the |
| | **12** process. We, we -- again there's a great concern about, you |
| | **13** know, inadvertent -- all these big issues for a lot of |
| | **14** companies and a lot of defendants. So, I want to make sure |
| 02:09 | **15** I'm representing everyone's concerns and there are a lot |
| | **16** express provisions, this is a larger group, I don't want to |
| | **17** take my obligation lightly on that, but I think that this |
| | **18** language, it's, it's basically explaining 502 and not adding |
| | **19** any more burdens. We don't understand why the plaintiffs, you |
| 02:10 | **20** know, have an issue but I think it gives this entire group, we |
| | **21** worked very hard to get here, comfort of that language. I'm |
| | **22** not sure what the problem is. |
| | **23** THE COURT: Well, Mr. Slater, if the only reason is |
| | **24** you think it's duplicative, could we just leave it in? |
| 02:10 | **25** MR. SLATER: If it's not identical, no. It's |

1   duplicative but then there's certain burdens that are placed

2   in the language.  For example, I think that it goes beyond the

3   obligation, if you get a document that's clearly privileged

4   and you accidently give it to the other side, but that's one

02:10    5   of our obligations.  I think it goes beyond that to actually

6   having to go and get documents back from people and it sort

7   of, it sort of, it sort of puts burdens on us.  It puts a

8   burden on us doing the Order to scrub documents and determine

9   whether it was inadvertently privileged or produced privileged

02:11    10   documents.

11          THE COURT:  Why don't we just say in whatever

12   language you want to use and incorporate the provision of 502

13   on everything after 502 and that paragraph is out.  If all it

14   is intended to do is describe 502, that's not needed.  Okay?

02:11    15          MS. COHEN:  Yeah, I think we talked about the ten

16   days and seven days.  The other part, to make sure I cover

17   this is, hum, that the parties may contact the court for a

18   telephone conference, so it gets more specific about that.

19          THE COURT:  That's fine.  That's okay.

02:11    20          MS. COHEN:  And either party may file a formal motion

21   within ten days.

22          MR. SLATER:  I'm sorry, Miss Cohen.  But that's

23   already in the part that we -- that's in there already.

24          MS. COHEN:  And we'll check on that and make sure

02:11    25   that -- I just want to make sure to have some specificity of

```
 1  the provision.

 2          THE COURT:  I think you'll work it out.

 3          MS. COHEN:  Okay.  So that's 21 which -- 20 and 21

 4  were the big ones, your Honor.  So we're getting very close.

 5          THE COURT:  Okay.

 6          MS. COHEN:  And let's see.  I think on page 27.

 7          THE COURT:  How about 25, page 25?

 8          MS. COHEN:  Okay, 25, right.  This is what I referred

 9  to earlier on the sanction, but I think your Honor already

10  kind of suggested a method for dealing with that.

11          THE COURT:  Okay, so that's out on page 25.

12          MS. COHEN:  Yeah.  Let me look at this one real fast,

13  your Honor.  Oh, there.  I'm sorry.  Twenty-nine, paragraph 29

14  and 25 is the same issue but a deposition.  So it is a

15  different paragraph.  I apologize.  This is one where we

16  believe again a deponent should be at least whether in writing

17  or, you know, again on the record at least subject to the

18  Protective Order, especially if it's a third party.  A similar

19  issue to what we addressed earlier, your Honor.

20          MR. SLATER:  Your Honor, we talked about this

21  deponent or trial witnesses, essentially being forced to state

22  on the record.  I'll be bound by this Protective Order.  This

23  is a third party witness who's being brought in as a witness.

24  I think it's very intimidating.

25          THE COURT:  What are we talking about, the first
```

02:11 (line 5)
02:12 (line 10)
02:12 (line 15)
02:13 (line 20)
02:13 (line 25)

```
      1    sentence?

      2           MR. SLATER:  It goes through-- it should be, there

      3    should be a red line or blue line, whatever color it is, blue

      4    line Protective Order.  I guess --

02:13 5           THE COURT:  Take it out.  Take it out.  That's out.

      6    Take it out.

      7           MS. COHEN:  Page 27 and 28 is the sealing provision

      8    and I think we agree that there should be something and we

      9    just thought that we would talk to you about --

02:13 10          THE COURT:  Page 27 and 28?

      11          MS. COHEN:  I'm sorry.  Page 27, paragraph 31.

      12          THE COURT:  Easy.  Do it one sentence.  All requests

      13   to seal documents comply with Local Rule 5.3.  That's it.

      14          MR. SLATER:  Yes.

02:14 15          THE COURT:  No more, no less.

      16          MS. COHEN:  Okay.  And --

      17          MR. SLATER:  The rest of the language, we can talk

      18   about this is actually beneficial to us.  I think it gives us

      19   a little breathing room.  And this is the language from

02:14 20   Benicar.

      21          THE COURT:  All you have to do is comply with Rule

      22   5.3.

      23          MR. SLATER:  It gives us the, the cushion basically

      24   like we're about to file motions to not have to double the

02:14 25   documents before we file.  So it gives us the right to file
```

1   claim holders, then confer and see if documents will be

2   subject to because it gives everyone breathing room.

3            THE COURT:  Be careful.  I mean I'll be the first one

4   to acknowledge Rule 5.3 is incredibly difficult to deal with.

02:14  5   A couple of things that had to be done to try to make it

6   easier is if a motion is filed, you don't have to file a

7   motion to seal for each filing.  You can wait until the end

8   and then be aware of that Rule and then if plaintiff files the

9   defendants' confidential documents, you don't have information

02:15  10  to justify sealing, you can just say that under the Rules they

11  have whatever it is, ten days or two weeks to submit something

12  and if they don't submit something, motion denied.

13           MS. COHEN:  We'll work on that language and either

14  include a reference to that or Benicar language and see if we

02:15  15  can reach agreement on that.

16           MR. SLATER:  I think everything you just described we

17  addressed here.  So I think it should -- like, for example,

18  you just said the designated party has to file the motion

19  ultimately, or is designated as confidential if someone's

02:15  20  going to seal it, otherwise it's, it's waived.

21           MS. COHEN:  We'll --

22           THE COURT:  Anything you come up -- any procedure to

23  simplify the sealing process, I'm all for it because Rule 5.3

24  is, it's, it's ...

02:16  25           MS. COHEN:  We'll take another close look at the

1  language here and that Rule and we can work that out.

2          THE COURT:  I can tell you in Benicar I don't think

3  we really had any problem with sealing.  I can't remember

4  instances where it became a problem.  But that's because

02:16   5  hardly any motions were filed.

6          MR. SLATER:  There were some.  It's work.  Obviously

7  you have to redact out the documents or work it out, but the

8  Rule is what it was.

9          MS. COHEN:  Okay, thirty is the last one, your Honor,

02:16  10  I kept referring to and this is the one that goes with

11  sanctions without being combined with the earlier provision

12  but I think you gave us guidance already.  So we'll come up

13  with -- yeah.

14          THE COURT:  Yes, it's kind of scary.

02:16  15          MS. COHEN:  Okay.  We'll just include that additional

16  mutual language in this earlier one.

17          THE COURT:  Yeah.

18          MS. COHEN:  I think that covers it.  Sorry for being

19  so tedious.

02:16  20          THE COURT:  That's okay.  I'm glad we got through it.

21  So let's see if we can finalize this prior to the next call

22  in.  I'd really like to get this entered so it doesn't delay

23  document production.

24          Okay, it's twenty after 12.  We have a few more issues

02:17  25  to deal with.  Tell me what your pleasure is.  Do you want to

1    take a lunch break?  Do you want to take a ten-minute break

2    and then we'll plow through this?  What's your pleasure?

3            MR. GOLDBERG:  We're all in for a break.

4            MR. SLATER:  We're all in for a ten minute break.

02:17    5            THE COURT:  Okay, let's take a ten-minute break.

6    We'll go through it.  I don't think we have a whole lot more

7    and we'll get through it.  So let's come back at 12:30.

8                    (Recess)

9            (The following took place in open court).

02:25    10            THE DEPUTY COURT CLERK:  All rise.

11            THE COURT:  Okay.  I think the next issue on the

12    agenda is core discovery.  I know the current due date

13    defendants are asking for more time.  I guess the issue I have

14    with that is this.  Defendants, this is a -- this is supposed

02:36    15    to be the easier information to gather and put together and I

16    -- I mean you're going to get an extension, but I'm just

17    reluctant to set a precedent here that about giving parties

18    leeway to answer discovery at their leisure.  That is the only

19    concern the court has.

02:36    20            MR. GOLDBERG:  Your Honor, this is -- I mean we are

21    really just asking for a short amount of time with respect to

22    a narrow category and search documents under 635 which are

23    not, not the recall documents.  Those are going to be

24    produced.  The Anda (sic) files is going to be produced.  The

02:37    25    master file.  That's all going to be produced on time.  This

 1    is stuff that gets back to the, you know, potentially nine

 2    years of history.  So we do need a little time to get through

 3    those and get those produced.

 4            THE COURT:  So the date, what date do you want, Mr.

 5    Goldberg?

 6            MR. GOLDBERG:  We're -- we asked for 45 days.  Due

 7    August first.

 8            THE COURT:  Can we live with 30?  Yes, we can.

 9            MR. GOLDBERG:  We can.

10            THE COURT:  So, let's make it July, take it to

11    Friday, July 19th, the documents under paragraph 6-A-3-5 will

12    be produced on a rolling, on a rolling basis if there's good

13    cause to consider any requests.

14            MR. GOLDBERG:  Sure.

15            THE COURT:  Something I want to mention about this.

16    Oh, from the plaintiffs' perspective, you may have issues with

17    the productions.  I know two people said they don't have

18    control overseas.  I'd rather just deal with all of those

19    issues regarding core discovery at one time.  So let's save

20    them up until you get all the documents so we can get all

21    those issues addressed at one time.  All right?  If there's

22    parties who say they can't produce documents from overseas,

23    then like I said, unfortunately we may have to get into the

24    issue about control.  If we have to, we have to.

25            All right.  Okay.  So, anything else we need to address

1    with regarding the core discovery?

2              MR. GOLDBERG:  No, your Honor.

3              THE COURT:  Documents.  What's the next one?  Oh, we

4    did document repository.  The parties are talking.  So, we can

02:39    5    leave that.  Coordination of related cases?  Any issue -- is

6    Mr. Orlando here?

7              MR. ORLANDO:  I am, your Honor.  Hello.

8              THE COURT:  Mr. Orlando, did you work it out with the

9    group?  You're not going to fly solo in State Court?

02:39    10              MR. ORLANDO:  Mr. Goldberg and I had the opportunity

11    to speak and I agree with his proposal MDL.

12              THE COURT:  So we'll coordinate the New Jersey State

13    and Federal, Mr. Orlando.

14              MR. GOLDBERG:  Yeah, I think, I think the issue, your

02:39    15    Honor, is that that's going to be easy for us to coordinate.

16    What we had proposed and what Mr. Orlando I think is agreeing

17    to is for this court to reach out to the Judges in the other

18    courts to create some kind of joint coordination order.  We'll

19    propose a draft to your Honor if that's helpful.  We can even

02:39    20    run it by --

21              THE COURT:  That's a great idea.

22              MR. GOLDBERG:  We'll give it to you and then work

23    with the other Judges, and we can get that entered by all of

24    the respective State Court Judges as well.  This way we're

02:40    25    covered.

```
 1              THE COURT:  Okay.  I think that's a great idea.  Mr.
 2    Orlan,o we'll get you to the finish line faster in State
 3    Court.
 4              MR. ORLANDO:  There are more cases coming in the
 5    State Court and we have a hearing on July 18th before the
 6    Assignment Judge in Middlesex County.  We've agreed to
 7    consolidate the two presently pending cases I think with Judge
 8    Crisatello?
 9              MR. GOLDBERG:  That's correct.
10              MR. ORLANDO:  And if you can just run any proposal by
11    me first, I'd appreciate it.
12              THE COURT:  Your cases, Mr. Orlando, are?
13              MR. ORLANDO:  Runo and Orlowsky.  They're injury
14    cases.
15              THE COURT:  The other cases, will your office be
16    filing them?
17              MR. ORLANDO:  Yes, sir.
18              THE COURT:  All right.  Are those also individual ESI
19    cases?
20              MR. ORLANDO:  They are, sir.
21              THE COURT:  Okay.
22              A SPEAKER:  And, your Honor, we also have several
23    plaintiffs from New Jersey that we're going to be filing in
24    State Court of New Jersey as well.  So I think there are other
25    attorneys that are the PMC.
```

02:40
02:40
02:40
02:40
02:41

```
 1          THE COURT:  Do you think New Jersey -- I forgot what
 2   they call it in New Jersey.
 3          MR. NIGH:  Consolidated.
 4          THE COURT:  `Do you think they're going to do that in
 5   New Jersey with these cases?
 6          MR. NIGH:  I do.
 7          MR. ORLANDO:  Yes.
 8          THE COURT:  Are you going to move for that?
 9          MR. ORLANDO:  Yes.
10          THE COURT:  Okay.
11          MR. ORLANDO:  I was waiting for Mr. Nigh's case to
12   appear.
13          THE COURT:  Do they have a sort of a target for how
14   many of those types of cases have to be pending before they
15   consolidate them?
16          MR. ORLANDO:  There's no real specific number.
17          MR. GOLDBERG:  You're talking about filing.
18          MR. SLATER:  I would be surprised if the, if the
19   Supreme Court would do that before those 25 cases or so.  And
20   they would need a promise that more are coming.
21          THE COURT:  Do you think we'll get there?
22          MR. NIGH:  We got it in Benicar when there were
23   twelve.  So, since then the order has gone up.  But, yes, I
24   think we're going to get there probably a matter of two to
25   three months before we have the nexus to file in New Jersey.
```

02:41
02:41
02:41
02:41
02:42

```
 1            THE COURT:  Thank you, Mr. Orlando.

 2            MR. GOLDBERG:  Your Honor, before we go off on this

 3   issue, there's a couple of questions.  On those actions, at

 4   least right now the GHP defendants are the only defendants in

 5   Runo and Orlowsky are planning to open that up to the other

 6   defendants?

 7            MR. ORLANDO:  Absolutely.

 8            MR. GOLDBERG:  Okay.

 9            MR. ORLANDO:  On my pending cases.

10            MR. GOLDBERG:  Okay.  Your Honor, I think, I think

11   one of the concerns here and given the fact that we have a

12   hearing on the eighteenth in these cases, you know, we need to

13   get these cases to be working in lockstep with the MDL as soon

14   as possible.  We'll get you a draft joint coordination order,

15   but our joint coordination order is one we envision that

16   putting these cases on the same schedule from a pretrial

17   standpoint.  The State Court cases can participate in

18   discovery in this case.

19            THE COURT:  Don't they have to -- doesn't the State

20   Judge have to consent to that?

21            MR. GOLDBERG:  Well, that's why what we're asking

22   for, maybe it wasn't clear, is for this Court to reach out to

23   the State Court Judge.

24            THE COURT:  Judge Kugler is going to do that, a

25   hundred percent.
```

02:42
02:42
02:42
02:43
02:43

|        |    |                                                             |
|--------|----|-------------------------------------------------------------|
|        | 1  | MR. GOLDBERG:  Right.  And we'll give you a form that       |
|        | 2  | we think would be -- would achieve that.  But what --       |
|        | 3  | depending on the timing, we don't want these cases to move  |
|        | 4  | forward, you know, in any material respect.                 |
| 02:43  | 5  | THE COURT:  So you have to talk to the State Court          |
|        | 6  | Judge.                                                       |
|        | 7  | MR. GOLDBERG:  Yes.  And so we have and one of the          |
|        | 8  | challenges here is we've talked to them.  They agreed to    |
|        | 9  | coordination, but when it comes time to put pen to paper on a |
| 02:43  | 10 | stipulation, it breaks down.                                 |
|        | 11 | THE COURT:  Is your conference on June 18th.               |
|        | 12 | MR. GOLDBERG:  July 18th, sir.                              |
|        | 13 | THE COURT:  July 18th.  Okay.                               |
|        | 14 | MR. ORLANDO:  At 8:30 in the morning.                       |
| 02:43  | 15 | MR. GOLDBERG:  We will get you a draft joint               |
|        | 16 | coordination order.                                          |
|        | 17 | THE COURT:  In concept, Mr. Nigh, Mr. Orlando, in         |
|        | 18 | concept we don't have the language yet.  Do you have an    |
|        | 19 | objection to putting the State cases on the same track that |
| 02:44  | 20 | these cases are?                                             |
|        | 21 | MR. ORLANDO:  No, Judge.                                    |
|        | 22 | MR. NIGH:  No, Judge.                                        |
|        | 23 | THE COURT:  Okay.  It would be up to the State Judges     |
|        | 24 | though, if they go along with that.  Right?                  |
| 02:44  | 25 | MR. GOLDBERG:  Right.  And that's where we're asking       |

1    for your Honor and Judge Kugler to reach out to those Judges

2    to see about facilitating a coordination so that we have both

3    courts entering the same coordination order.

4         THE COURT:  I think it makes perfect sense.  When we

02:44    5    get -- well nowadays since New Jersey and Federal follow

6    Daubert, we don't have to have two Daubert hearings anymore.

7    Right.

8         MR. GOLDBERG:  Right.

9         THE COURT:  We only have one Daubert Hearing.

02:44    10        MR. SLATER:  Essentially, New Jersey has not adopted

11    Daubert.

12        THE COURT:  Yes, I thought they did in the Supreme

13    Court decision.

14        MR. SLATER:  They said that it's not adopted.  It's

02:45    15    explicit.  We're not a Daubert jurisdiction, but you can look

16    at the Daubert factors and consider them as applicable in a

17    particular case.  I'm sorry to say that, but I'm very

18    protective of it.

19        MS. COHEN:  We agree with your description, your

02:45    20    Honor.

21        THE COURT:  We'll have two Daubert hearings and just

22    like when with Benicar we welcome coordination with the State.

23    If we go there or they come here, that's perfectly fine with

24    us.  I'll go just to make this efficient and move the case

02:45    25    along and anything we can do in that regard we'll do.

1          MR. GOLDBERG:  Thank you, your Honor.  You'll notice

2    in the joint submission, there are two other cases, not in New

3    Jersey.  There's one in Illinois and one in California and we

4    would like, what we're hopping is that the Court will reach

02:45    5    out to those Judges to bring them under the tent, so-to-speak,

6    to the extent they're willing to do that.  And we would like

7    to have this joint coordination order applicable going forward

8    so that should a State Court case be filed, we can get, you

9    know, we can get that case coordinated.

02:46    10          THE COURT:  Okay.  Shanov versus Walgreens' case.

11    That's a Chicago case.  Will that eventually become part of

12    this MDL?

13          MR. GOLDBERG:  Not if it doesn't get removed to

14    Federal Court.

02:46    15          THE COURT:  We have no control over that.  Right?

16          MR. GOLDBERG:  Right now it's in State Court.  They

17    filed a claim against one of the -- a claim against Walgreens

18    the only defendant, so they can stay in State Court.

19          THE COURT:  Are those plaintiffs' lawyers here?

02:46    20          MR. GOLDBERG:  I don't know if they are.  We have

21    joined our client so that we can get the case removed to

22    Federal Court.  If not --

23          THE COURT:  You mean you represent Walgreens?

24          MR. GOLDBERG:  Solko, the manufacturer defendant.

02:47    25          THE COURT:  Okay.  Solko when you say we, how did you

1    get in that case?

2           MR. GOLDBERG:  We're moving to join, we're moving to

3    join that case.

4           THE COURT:  Oh, you're going to interplead?

02:47    5           MR. GOLDBERG:  Yes, so that we can get the case

6    removed because we're subject to an indemnification.

7           THE COURT:  Can you do that?

8           MR. GOLDBERG:  In any event.  We've moved to do that,

9    yes.

02:47    10          THE COURT:  Wasn't it yesterday the Supreme Court

11   said that a counterclaim defendant can't remove a case?

12          A SPEAKER:  Home Depot versus Jackson.

13          THE COURT:  Are you a plaintiff's lawyer?

14          A SPEAKER:  I am.

02:47    15          THE COURT:  Are you the fellow from Chicago who won't

16   say --

17          A SPEAKER:  I'm not, but I'm sure of the case.

18          THE COURT:  Okay.  Well that's going to be an issue.

19          MR. GOLDBERG:  There's another case in California.

02:47    20          THE COURT:  There's two cases in California.

21          MR. GOLDBERG:  Two cases in California.  Collins one

22   is against Aurobindo.

23          THE COURT:  Which is going to be back here, though,

24   right?

02:48    25          MR. GOLDBERG:  They've been putting-- the JPML

|  |  |
|--|--|
| | **1** plaintiffs' lawyer has opposed transferring, the, the |
| | **2** conditional transfer order.  We're going to file a response to |
| | **3** that.  We think it's going to end up here.  But if it doesn't, |
| | **4** that would be another case where we would want to get |
| 02:48 | **5** coordination. |

**6**      THE COURT:  Okay, that makes sense.  But it looks

**7** like Shanov might be the only stickler.  Before, why would a

**8** Judge in Chicago want to manage that case when there's going

**9** to be hundreds, if not thousands of these cases here?

02:48     **10**      MR. GOLDBERG:  That's our view.  And so we think if

**11** you or Judge Kugler would be willing to reach out to that

**12** Judge with a joint coordination order in hand, perhaps that

**13** Judge will come to the view that it make sense to enter that

**14** order.

02:49     **15**      THE COURT:  Okay.  Thank you.

**16**      MR. GOLDBERG:  Okay.

**17**      THE COURT:  Judge Kugler has every intention to

**18** coordinating this case.  Issue number 12, Losartan.  Mr.

**19** Honik, can't we put this -- can't we get all these issues

02:49     **20** together?

**21**      MR. HONIK:  Yes.  We, we've made no secret, Judge, up

**22** until today that we've been slow walking this and --

**23**           (Laughter)

**24**      THE COURT:  That was one of the questions I was going

02:49     **25** to ask you.

```
 1          MR. HONIK:  Yeah.  But we did it, I think, for good

 2     reason.  We want to get our sea legs in this case and we felt

 3     somewhat skeptical about the degree of information that we

 4     understood about Losartan and Irbesartan in terms of the

 5     scope, contamination, et cetera.  But as sometimes happens,

 6     the horse leaves the barn when you're not ready.  The horse

 7     seems to have left the born.  We've had internal discussion in

 8     leadership that we're prepared to move the JPML to sweep them

 9     in.  I think there's a question --

10          THE COURT:  Is there any objection to, there's going

11     to be any objections on the other side?

12          MR. GOLDBERG:  We, we just got that information.

13     There are different views on this within the defense group and

14     we haven't polled that.  And I mean there have been defendants

15     who raised the point.  They don't think these drugs should be

16     added.  Maybe it has to do with the number of cases.  Maybe it

17     has to do with the defendants as they're pled.  A lot of the

18     defendants they think it should all be together, but, you

19     know, that's, that's something that we can raise when they

20     file that motion.  Maybe there will be an objection.

21          MR. HONIK:  This is sort of an echo from an argument

22     that I heard when we argued to the JPML originally.  So that's

23     fine.  I mean the defendants can stake out whatever position,

24     but it seems clear to us that it makes abundant sense these

25     are all Sartans subject to the same sort of recall and we're
```

02:49
02:50
02:50
02:50
02:50

1    prepared to proceed forward and request that the scope of the

2    MDL be enlarged to include them.  I think as a practical

3    matter we've got a question of timing and what I mean by that

4    is the JPML is not sitting in June.  It is sitting in July in

02:51    5    Portland, Oregon.  It is not sitting in August.  It then sits

6    in September in Los Angeles.  We can tee up a petition and

7    there may be a sufficient critical mass to, to move this in

8    July.  And I think to the extent that we're doing this, we

9    ought to just do it and get it teed up in July.

02:51    10         THE COURT:  Are they necessarily looking at the

11   number of cases?

12         MR. HONIK:  Yes.  Yes, that is certainly a factor.

13         THE COURT:  Is there another procedure to transfer

14   the cases here from another Federal Court, even if it's not

02:51    15   part of the MDL process?

16         MR. HONIK:  Yes, there is.  And I think that's

17   happened in the case called Langor versus Solko.  I think that

18   was transferred to this court on May third under I guess it's

19   1404 is it?  Under 1404.

02:52    20         THE COURT:  Is that a New Jersey case?

21         MR. HONIK:  Yes.

22         THE COURT:  But I'm just wondering, if, even if it

23   doesn't come under the JPML if there's a transfer of venue

24   provision, the related cases can be transferred.

02:52    25         MR. HONIK:  There absolutely is.  That's a very

|  |  |
|---|---|
|  | 1   effective way to manage at the very least New Jersey filed |
|  | 2   cases.  We have, and I can hand this up to you.  There are, |
|  | 3   there are three post MDL creation cases on file, two in this |
|  | 4   District, and one recently filed in Kentucky. |

```
          1   effective way to manage at the very least New Jersey filed

          2   cases.  We have, and I can hand this up to you.  There are,

          3   there are three post MDL creation cases on file, two in this

          4   District, and one recently filed in Kentucky.

02:52     5          THE COURT:  Can I make a suggestion, not only about

          6   the two other Sartans, but don't we also have an issue about

          7   the chemicals that are at issue?  I don't have my notes in

          8   front of me, so my letters going to be mixed up.  If I

          9   remember right, NMBA.

02:53    10          MR. HONIK:  NMBA.

         11          THE COURT:  Okay, That's part of this case

         12   unquestionably.  There was another one I think NDEA

         13          MR. HONIK:  NDEA, correct.

         14          THE COURT:  Which not explicitly but implicitly was

02:53    15   part of this case.  One, I wonder if it's better to make --

         16   because look at the title of the case.  If you look at the

         17   opinion, I think it's implicit that NDEA is part of the case.

         18   But isn't there a third and perhaps a fourth chemical that

         19   might be at issue?  And is that something -- because we're not

02:53    20   looking for more work, believe me.  But, you know, doesn't it

         21   make sense to put all the issues together to, to deal with

         22   them all at one time in one case, one discovery?  That's why

         23   I'm asking these questions.

         24          MR. NIGH:  And, your Honor, it is NMBA.  That's what

02:54    25   you were saying and one is the Losartan has NMBA.  That's
```

1    another -- so the family of nitrosamines, we absolutely

2    believe that all those should be together.

3            THE COURT:  So I was just asking to consider whether

4    those two new chemicals should be part of the MDL in that it

02:54    5    should be explicitly clear that NDEA is part although I think

6    it's --

7            MR. HONIK:  You've made one lawyer from Minnesota

8    very happy because she argued on the record to the JPML that

9    this should be called some version of nitrosamine litigation

02:54    10    MDL and that was shot down.

11            THE COURT:  How come they come they didn't do it?

12            MR. HONIK:  They, they didn't have the foresight that

13    Marlene exhibited.

14            MS. GOLDENBERGER:  Thank you.

02:54    15            MR. HONIK:  But, yes, the suggestion is exceedingly

16    well taken to be sure when we craft our petition, we'll be

17    very mindful to try to capture as much as possible.  We only

18    want to go to the well one more time.

19            THE COURT:  Yeah.  All we're looking for really for

02:55    20    efficiency sake, Judge Kugler and I, it just makes so much

21    sense to have everything related.

22            MR. HONIK:  Sure.  And I think from the defense

23    standpoint the end game is to try to get global release effect

24    or resolution and I think it behoves them to positively about

02:55    25    sweeping more rather than less in.

```
 1              THE COURT:  Okay.  Great.
 2              MR. HONIK:  We'll do that.
 3              THE COURT:  So I think that takes us through the
 4    agenda.
 5              MR. HONIK:  It does.
 6              THE COURT:  I'm going to open up the floor for any
 7    other issues.  But if, if leadership counsel can ask, if I can
 8    ask for their indulgence, you can have this courtroom to meet,
 9    no problem.  I know I have another hearing at three, but we'll
10    find another courtroom for you if you need more time.  So
11    don't worry about that.  But if I could ask the indulgence of
12    leadership counsel, maybe we can talk in the jury room off the
13    record.  It won't be long.  I would ask that.  But are there
14    any other issues we need to deal with today?
15              MR. GOLDBERG:  No, your Honor.
16              THE COURT:  Okay.  None from the defendants?  None
17    from the plaintiffs?  We're adjourned and I'll leave it to
18    each side to decide who you want to meet with.  But they won't
19    take long.
20              THE DEPUTY COURT CLERK:  All rise.
21                   (The matter was then concluded)
22
23
24
25
```

*United States District Court*
*Camden, New Jersey*

## 0

**08101** [1] - 1:7

## 1

**10** [1] - 24:13
**11** [1] - 30:16
**112** [1] - 1:13
**12** [13] - 9:2, 9:8, 10:10, 13:18, 13:24, 14:14, 14:16, 73:24, 74:2, 75:7, 87:24, 98:18
**12:30** [1] - 88:7
**12b** [1] - 27:24
**14** [1] - 79:19
**1404** [2] - 100:19
**15** [2] - 75:23, 76:17
**16** [2] - 76:17, 79:17
**17** [4] - 14:23, 80:11, 80:21, 81:1
**17th** [3] - 8:20, 12:23, 15:3
**18** [1] - 80:13
**18th** [4] - 91:5, 94:11, 94:12, 94:13
**19** [4] - 80:14, 80:22, 80:25, 81:4
**19-2875** [2] - 1:5, 2:10
**19th** [1] - 89:11

## 2

**20** [2] - 75:23, 84:3
**200** [1] - 40:24
**2015** [1] - 40:20
**2018** [1] - 50:2
**2019** [2] - 1:8, 74:16
**21** [8] - 79:21, 80:15, 80:16, 80:20, 80:21, 81:1, 84:3
**2100** [1] - 45:23
**2200** [1] - 45:23
**23** [1] - 82:1
**25** [7] - 55:24, 84:7, 84:8, 84:11, 84:14, 92:19
**26H** [1] - 26:7
**27** [4] - 84:6, 85:7, 85:10, 85:11
**28** [3] - 40:20, 85:7, 85:10
**28-17-46** [2] - 34:20, 40:14
**29** [3] - 1:8, 72:17, 84:13

## 29th [1] - 74:15

## 3

**30** [8] - 7:23, 29:6, 41:6, 42:1, 42:16, 72:18, 79:19, 89:8
**31** [1] - 85:11
**31st** [1] - 8:8
**38** [1] - 40:11

## 4

**40** [6] - 12:6, 12:13, 30:9, 46:13, 46:18, 47:17
**400** [2] - 40:21, 40:24
**41** [2] - 26:20, 45:18
**42** [2] - 23:5, 35:12
**438** [1] - 58:4
**45** [3] - 11:14, 29:7, 89:6

## 5

**5.3** [4] - 85:13, 85:22, 86:4, 86:23
**50** [2] - 17:20, 23:5
**500** [2] - 59:14, 59:15
**502** [11] - 80:24, 81:5, 81:9, 81:24, 82:2, 82:9, 82:10, 82:18, 83:12, 83:13, 83:14
**5th** [2] - 8:12, 8:13

## 6

**6-A-3-5** [1] - 89:11
**60** [1] - 41:9
**609-439-5420** [1] - 1:23
**635** [1] - 88:22

## 8

**80** [1] - 30:9
**8:30** [1] - 94:14

## 9

**9/11** [1] - 39:12
**90** [1] - 41:9
**99.5** [1] - 37:6

## A

**abandon** [4] - 28:24, 31:13, 33:22, 34:7
**abide** [1] - 71:7
**ability** [1] - 68:13
**able** [8] - 5:6, 21:5, 22:13, 25:19, 60:1, 66:15, 67:2, 71:6
**absolutely** [4] - 10:8, 93:7, 100:25, 102:1
**abundant** [1] - 99:24
**abused** [1] - 72:7
**acceptable** [1] - 64:7
**access** [1] - 38:8
**accidently** [1] - 83:4
**accompanying** [1] - 43:5
**accomplish** [1] - 13:10
**achieve** [1] - 94:2
**acknowledge** [1] - 86:4
**Action** [2] - 16:2, 16:15
**ACTION** [1] - 1:4
**actions** [1] - 93:3
**Actions** [1] - 19:1
**active** [3] - 4:4, 4:7, 4:8
**actual** [4] - 18:21, 68:25, 69:5, 71:15
**Adam** [2] - 67:19, 67:23
**add** [3] - 27:17, 80:4, 80:8
**added** [4] - 72:4, 79:18, 82:3, 99:16
**adding** [2] - 82:7, 82:18
**addition** [2] - 17:16, 44:13
**additional** [3] - 3:24, 66:24, 87:15
**address** [6] - 7:24, 14:21, 16:9, 16:19, 74:15, 89:25
**addressed** [4] - 61:20, 84:19, 86:17, 89:21
**addresses** [1] - 5:5
**adjourned** [1] - 103:17
**administrative** [1] - 21:17
**adopted** [2] - 95:10, 95:14
**advantage** [4] - 22:14, 25:19, 34:12,

45:3
**afterwards** [1] - 2:25
**age** [2] - 32:21
**agency** [1] - 6:21
**agenda** [7] - 2:23, 3:3, 4:11, 15:15, 20:3, 88:12, 103:4
**aggressive** [1] - 42:1
**agree** [17] - 15:12, 22:14, 23:21, 31:9, 43:10, 48:4, 51:7, 58:10, 71:6, 71:7, 81:7, 81:18, 82:2, 82:6, 85:8, 90:11, 95:19
**agreed** [7] - 29:19, 33:14, 52:24, 75:3, 91:6, 94:8
**agreeing** [2] - 17:17, 90:16
**agreement** [4] - 21:5, 25:17, 25:20, 86:15
**ahead** [2] - 63:25, 80:13
**air** [2] - 7:13, 34:15
**albeit** [2] - 10:14, 32:19
**aligned** [1] - 22:2
**allegations** [3] - 9:11, 11:11, 12:8
**alleviate** [1] - 79:20
**allow** [1] - 9:10
**allows** [1] - 55:20
**almost** [1] - 29:22
**amenable** [1] - 9:5
**amend** [5] - 13:1, 13:8, 14:5, 14:18, 14:19
**amendable** [1] - 11:13
**amendments** [1] - 14:16
**America** [1] - 2:13
**amount** [2] - 76:23, 88:21
**amounts** [1] - 37:25
**ample** [1] - 30:20
**analysis** [1] - 75:14
**Anda** [1] - 88:24
**Angeles** [1] - 100:6
**announce** [1] - 2:21
**answer** [7] - 3:2, 18:10, 18:11, 32:15, 46:21, 78:19, 88:18
**answered** [1] - 41:9
**answering** [1] - 29:7
**anticipate** [3] - 17:5, 17:10, 54:3
**anytime** [1] - 54:21
**anyway** [2] - 27:15,

37:19
**API** [4] - 17:3, 17:23, 22:4, 22:22
**apologize** [1] - 84:15
**appear** [1] - 92:12
**Appearances** [1] - 1:13
**applicable** [3] - 82:2, 95:16, 96:7
**application** [13] - 46:2, 53:8, 53:22, 57:24, 58:23, 59:24, 71:11, 71:22, 72:24, 73:3, 73:19, 75:1, 75:20
**applies** [2] - 70:5, 70:8
**apply** [1] - 43:14
**applying** [1] - 16:5
**appreciate** [2] - 35:15, 91:11
**apprised** [1] - 13:14
**approach** [2] - 29:16, 53:1
**appropriate** [14] - 4:20, 9:21, 11:5, 15:24, 16:6, 17:7, 18:24, 32:24, 39:20, 40:4, 45:6, 58:21, 64:21, 73:19
**appropriately** [1] - 34:24
**approved** [1] - 23:19
**arguably** [1] - 23:17
**argue** [1] - 23:17
**argued** [2] - 99:22, 102:8
**ARGUMENT** [1] - 1:5
**argument** [1] - 99:21
**arms** [1] - 29:9
**artificially** [1] - 45:20
**aspect** [1] - 29:13
**assembly** [3] - 57:19, 57:21, 58:18
**assigning** [1] - 44:15
**Assignment** [1] - 91:6
**assist** [1] - 64:6
**assume** [5] - 3:6, 14:13, 41:22, 41:23, 67:3
**assuming** [1] - 3:12
**attachment** [2] - 56:5, 56:6
**attachments** [5] - 44:9, 56:5, 56:11, 56:16, 56:17
**attention** [5] - 10:19, 13:1, 62:12, 62:14, 64:16

attorney's [1] - 65:14
attorney/client [1] - 47:1
attorneys [2] - 50:7, 91:25
attracted [1] - 24:6
August [2] - 89:7, 100:5
Aurobindo [5] - 5:16, 6:14, 7:6, 7:9, 97:22
authorization [8] - 33:19, 34:2, 34:22, 34:23, 36:23, 41:24, 42:8, 53:10
authorizations [6] - 31:2, 37:20, 41:13, 41:20, 42:11, 44:10
automatically [1] - 21:15
available [1] - 63:2
avoid [2] - 14:20, 75:6
avoiding [1] - 35:12
aware [2] - 72:15, 86:8
awkward [1] - 13:11

**B**

B.I [5] - 15:22, 16:9, 16:10, 17:18, 36:3
back-end [2] - 45:21, 52:21
background [2] - 3:4, 54:5
bad [2] - 2:11, 10:3
balance [1] - 39:4
balls [1] - 7:12
barn [1] - 99:6
based [1] - 18:4
basics [1] - 63:15
basis [4] - 46:17, 51:25, 68:20, 89:12
batch [2] - 28:18, 29:15
bate [3] - 45:21, 63:8, 64:22
bates [2] - 44:14, 44:16
bear [1] - 78:5
beautifully [1] - 40:17
became [2] - 56:24, 87:4
become [1] - 96:11
becomes [1] - 71:21
becoming [1] - 54:3
beginning [3] - 16:23, 24:9, 80:22

begun [1] - 33:24
behalf [4] - 26:11, 26:12, 43:24, 45:14
beholder [1] - 39:23
behoove [1] - 10:14
behove [1] - 10:9
behoves [1] - 102:24
belief [2] - 11:10
beliefs [1] - 4:6
bell [4] - 37:22, 38:5, 38:17, 38:23
bells [2] - 35:17, 40:4
belong [2] - 32:4, 33:6
belongs [1] - 22:7
below [2] - 22:8, 22:19
bench [1] - 48:6
beneficial [1] - 85:18
benefit [3] - 8:23, 14:3, 31:24
Benicar [27] - 4:15, 5:2, 5:3, 8:22, 13:14, 14:9, 30:19, 32:18, 40:10, 40:17, 40:21, 44:19, 45:24, 45:25, 66:10, 66:21, 70:18, 76:1, 78:7, 78:21, 79:23, 81:14, 85:20, 86:14, 87:2, 92:22, 95:22
best [3] - 49:3, 52:7, 77:13
bet [1] - 13:23
better [2] - 18:6, 101:15
between [12] - 4:21, 5:19, 20:8, 23:24, 29:7, 39:2, 47:14, 48:16, 49:18, 51:5, 51:9, 60:11
beyond [7] - 6:13, 66:10, 81:9, 81:23, 82:3, 83:2, 83:5
biased [1] - 50:7
big [3] - 71:8, 82:13, 84:4
biggest [2] - 18:23, 75:22
bit [3] - 9:19, 30:25, 75:25
blah [2] - 46:16
blanket [4] - 48:10, 50:16, 53:10, 54:16
bless [3] - 11:4, 40:24, 72:1
blue [6] - 17:23, 67:4, 67:25, 72:4, 85:3
board [1] - 37:24

bodies [1] - 4:2
bodily [3] - 15:7, 16:13, 36:20
bogged [2] - 32:5
boiler [1] - 47:1
bolts [1] - 14:22
born [1] - 99:7
bottom [3] - 72:2, 79:17, 80:21
bound [3] - 70:24, 71:10, 84:22
box [1] - 2:6
breadth [1] - 71:17
break [6] - 66:3, 88:1, 88:3, 88:4, 88:5
breaks [1] - 94:10
breathing [2] - 85:19, 86:2
bridged [1] - 66:18
bridging [1] - 17:1
briefly [1] - 49:12
bright [1] - 52:13
bring [4] - 10:19, 40:21, 66:25, 96:5
bringing [1] - 64:16
broad [3] - 37:23, 38:10, 69:9
broadening [1] - 34:8
broader [1] - 35:8
brought [4] - 21:16, 65:21, 70:20, 84:23
Brown [1] - 5:6
brush [1] - 38:11
burden [11] - 30:18, 45:22, 47:23, 58:21, 58:22, 71:8, 77:21, 77:22, 78:15, 79:9, 83:8
burdened [1] - 72:9
burdens [3] - 82:19, 83:1, 83:7
burdensome [1] - 53:8
burner [3] - 42:19, 42:20, 42:23
business [3] - 48:9, 48:12, 53:15

**C**

cabinet [2] - 64:10, 64:11
caliber [1] - 32:7
California [4] - 96:3, 97:19, 97:20, 97:21
Camden [2] - 1:7, 25:15
camera [5] - 48:7,

56:2, 56:20, 60:1
Canada [1] - 4:8
cancer [7] - 33:18, 36:4, 36:8, 36:9, 37:1, 37:8, 39:24
candidly [3] - 3:1, 11:9, 20:19
capture [1] - 102:17
captured [1] - 40:1
care [1] - 71:3
careful [1] - 86:3
Carl [1] - 1:23
Carl_Nami@NJD.
USCourts.Gov [1] - 1:24
cart [2] - 59:1, 60:3
cascade [1] - 77:20
case [69] - 5:1, 5:8, 5:24, 9:20, 12:3, 12:5, 13:16, 14:22, 21:11, 21:16, 21:21, 22:7, 22:9, 22:22, 23:11, 25:24, 26:5, 29:22, 32:2, 32:13, 36:4, 38:4, 38:10, 45:11, 46:18, 52:15, 53:13, 55:13, 55:17, 56:25, 57:3, 57:5, 57:17, 57:22, 58:21, 61:22, 68:15, 68:20, 73:9, 78:12, 92:11, 93:18, 95:17, 95:24, 96:8, 96:9, 96:10, 96:11, 96:21, 97:1, 97:3, 97:5, 97:11, 97:17, 97:19, 98:4, 98:8, 98:18, 99:2, 100:17, 100:20, 101:11, 101:15, 101:16, 101:17, 101:22
cases [52] - 15:22, 16:9, 28:3, 28:8, 28:20, 29:23, 30:1, 30:2, 30:5, 30:7, 30:9, 30:14, 30:16, 32:3, 32:6, 32:9, 32:14, 33:6, 35:22, 35:24, 36:20, 38:7, 38:18, 38:19, 90:5, 91:4, 91:7, 91:12, 91:14, 91:15, 91:19, 92:5, 92:14, 92:19, 93:9, 93:12, 93:13, 93:16, 93:17, 94:3, 94:19, 94:20, 96:2, 97:20, 97:21, 98:9, 99:16, 100:11, 100:14, 100:24, 101:2, 101:3
Categorical [4] - 46:6, 46:11, 46:22,

47:11
categorical [2] - 46:17, 52:10
categorically [1] - 52:4
categories [2] - 47:24, 49:2
category [4] - 46:14, 53:21, 55:13, 88:22
caused [1] - 50:11
causes [1] - 82:4
CEO [6] - 51:15, 51:16, 51:20, 51:21, 51:22, 52:4
certain [8] - 6:8, 10:18, 16:25, 34:6, 55:15, 76:23, 77:15, 83:1
certainly [13] - 9:8, 10:15, 11:14, 14:7, 25:6, 34:14, 35:11, 43:4, 45:13, 63:10, 63:13, 68:7, 100:12
certainty [1] - 82:11
certify [1] - 26:25
certifying [1] - 5:17
cetera [3] - 38:3, 58:6, 99:5
chain [2] - 22:9, 52:21
chairs [2] - 2:4, 2:5
challenge [2] - 18:23, 23:8
challenges [1] - 94:8
challenging [1] - 35:15
chance [4] - 20:12, 39:18, 76:6
chances [1] - 28:21
change [1] - 81:18
changes [1] - 81:8
charge [1] - 2:6
check [2] - 55:21, 83:24
chemical [2] - 38:13, 101:18
chemicals [2] - 101:7, 102:4
Chicago [3] - 96:11, 97:15, 98:8
Chief [1] - 50:21
Chinese [1] - 62:11
choice [4] - 21:4, 39:11, 39:15, 39:17
chomping [1] - 9:19
choose [2] - 39:16, 47:19
chosen [2] - 37:22, 38:17
CHT [1] - 24:16

**Circuit** [1] - 47:2
**circuit** [1] - 48:19
**citations** [1] - 40:18
**CIVIL** [1] - 1:4
**claim** [6] - 13:7,
46:20, 47:3, 86:1,
96:17
**claimed** [1] - 36:4
**claiming** [1] - 52:20
**claims** [10] - 12:7,
12:15, 17:1, 17:18,
23:12, 23:13, 23:23
**clarify** [3] - 62:22,
63:12, 63:17
**class** [23] - 7:3, 16:5,
16:6, 16:17, 16:18,
16:24, 17:2, 17:7,
17:9, 17:16, 17:20,
17:25, 18:2, 18:7,
18:9, 18:19, 18:24,
19:5, 19:6, 19:9,
23:12, 34:21
**Class** [5] - 15:24,
16:2, 16:15, 16:22,
19:1
**Classes** [1] - 18:21
**classes** [2] - 16:24,
18:4
**cleaned** [1] - 14:15
**cleanup** [2] - 14:21,
21:8
**clear** [7] - 79:2, 79:6,
80:1, 80:5, 93:22,
99:24, 102:5
**clearly** [6] - 26:6,
48:15, 57:20, 64:13,
83:3
**CLERK** [3] - 2:2,
88:10, 103:20
**client** [3] - 3:12,
53:19, 96:21
**client's** [1] - 25:22
**close** [4] - 65:20,
66:19, 84:4, 86:25
**closer** [2] - 13:15,
65:21
**CM/ECF** [1] - 1:13
**coalescing** [1] - 19:5
**code** [1] - 2:12
**COHEN** [87] - 27:9,
27:15, 28:14, 28:16,
29:2, 29:11, 30:13,
31:18, 32:11, 32:17,
33:12, 34:18, 35:2,
39:17, 40:13, 41:2,
41:7, 42:21, 42:25,
65:7, 65:19, 66:6,
66:11, 67:9, 67:11,
67:13, 67:15, 67:17,
67:19, 67:21, 67:23,

68:18, 68:22, 69:5,
69:13, 70:2, 71:1,
71:12, 71:23, 72:1,
72:22, 73:2, 73:10,
73:14, 73:21, 73:23,
74:5, 74:9, 75:2, 75:9,
75:13, 75:16, 75:21,
76:5, 76:16, 77:7,
77:25, 78:2, 78:18,
79:3, 79:14, 79:22,
79:25, 80:4, 80:8,
80:10, 80:17, 81:22,
82:1, 82:11, 83:15,
83:20, 83:24, 84:3,
84:6, 84:8, 84:12,
85:7, 85:11, 85:16,
86:13, 86:21, 86:25,
87:9, 87:15, 87:18,
95:19
**Cohen** [11] - 1:6,
27:8, 27:17, 30:24,
39:8, 42:20, 65:19,
77:17, 79:1, 79:13,
83:22
**collaboration** [1] -
66:16
**collaboratively** [2] -
31:12, 33:15
**colleague** [1] - 45:12
**Collins** [1] - 97:21
**color** [5] - 67:8, 67:9,
67:17, 67:19, 85:3
**combination** [1] -
5:17
**combined** [1] - 87:11
**comfort** [1] - 82:21
**comfortable** [1] -
60:20
**coming** [8] - 25:19,
30:9, 31:5, 32:22,
63:17, 76:10, 91:4,
92:20
**comment** [5] - 9:1,
9:10, 11:9, 19:22,
40:20
**comments** [12] - 8:1,
8:14, 9:14, 10:1,
11:24, 12:12, 12:23,
15:10, 15:17, 19:19,
19:25, 66:25
**commitment** [3] -
31:4, 31:7, 31:14
**committed** [1] -
72:15
**committees** [1] -
76:9
**committing** [1] -
23:21
**common** [1] - 32:4
**communication** [7] -

51:9, 51:16, 52:8,
69:10, 78:20, 78:23,
78:25
**communications** [7]
- 51:4, 51:14, 51:24,
53:13, 63:21, 76:7,
79:12
**companies** [5] -
18:20, 23:1, 24:22,
62:11, 82:14
**company** [6] - 51:9,
69:8, 70:8, 71:4
**complaint** [15] -
5:22, 6:20, 7:6, 9:12,
11:18, 11:24, 12:17,
13:2, 15:1, 16:10,
16:13, 18:14, 19:17,
21:13, 36:8
**Complaint** [14] -
12:23, 15:8, 15:9,
15:22, 16:2, 16:12,
16:22, 17:10, 17:11,
18:16, 18:18, 19:19,
19:21, 20:2
**complaints** [7] -
4:16, 4:18, 7:3, 11:7,
11:11, 13:9, 19:8
**Complaints** [14] -
5:11, 8:16, 8:19, 8:25,
14:23, 15:2, 15:3,
15:4, 15:7, 15:11,
15:17, 15:19, 19:12,
19:22
**complete** [1] - 44:24
**completed** [1] - 44:8
**completely** [1] - 56:4
**complexities** [3] -
66:23, 76:1, 77:9
**complicated** [2] -
7:19, 34:4
**compliment** [1] -
27:15
**comply** [2] - 85:13,
85:21
**complying** [1] - 55:7
**comprehensive** [1] -
19:5
**compromise** [3] -
25:21, 25:25, 39:2
**compromised** [1] -
28:8
**conceivably** [1] -
10:11
**conceived** [2] -
49:15, 51:2
**conceiving** [1] - 51:3
**concentration** [1] -
3:18
**concept** [9] - 11:21,
11:22, 12:3, 19:11,

20:16, 23:2, 51:18,
94:17, 94:18
**conceptually** [1] -
23:9
**concern** [15] - 9:15,
9:17, 32:4, 35:15,
46:7, 48:13, 50:14,
53:13, 63:19, 65:9,
71:16, 74:17, 82:12,
88:19
**concerned** [5] - 6:4,
25:2, 26:18, 48:3,
52:14
**concerns** [5] - 45:14,
66:24, 79:20, 82:15,
93:11
**concise** [1] - 34:6
**concluded** [1] -
103:21
**concrete** [1] - 53:9
**condition** [2] - 37:4,
42:10
**conditional** [1] - 98:2
**conditions** [1] - 37:5
**confer** [4] - 4:24,
26:17, 76:18, 86:1
**conference** [9] -
2:15, 2:19, 4:22, 24:3,
28:23, 40:20, 50:20,
83:18, 94:11
**Conference** [1] -
31:21
**conferences** [1] -
25:23
**confident** [1] - 14:20
**confidential** [9] -
69:14, 69:24, 70:22,
76:19, 77:1, 77:5,
78:3, 86:9, 86:19
**confidentiality** [4] -
65:8, 68:12, 68:17,
76:18
**confirm** [1] - 2:18
**conflating** [1] - 47:20
**conflicts** [1] - 4:21
**conformance** [3] -
61:12, 63:20, 63:23
**confused** [2] - 16:20,
80:19
**confusion** [2] - 75:6,
82:5
**congratulatory** [1] -
26:13
**conjunction** [1] -
44:23
**connected** [1] -
68:12
**connection** [4] -
26:24, 43:19, 60:24,
68:4

**conscience** [1] -
23:21
**consent** [1] - 93:20
**consider** [8] - 30:5,
30:7, 34:1, 53:9,
54:22, 89:13, 95:16,
102:3
**considerable** [2] -
19:15, 45:22
**consideration** [1] -
55:5
**considered** [1] -
23:11
**considering** [1] -
20:25
**consistent** [3] -
63:16, 65:25, 74:6
**consolidate** [2] -
91:7, 92:15
**consolidated** [1] -
92:3
**consult** [3] - 39:10,
39:18, 40:5
**consultation** [1] -
2:17
**consulted** [1] - 2:15
**Consumer** [1] -
15:24
**consumer** [4] - 16:2,
16:14, 23:12, 23:13
**consumers** [2] -
18:20, 23:13
**contact** [1] - 83:17
**contain** [1] - 54:19
**contains** [2] - 54:17,
54:21
**contaminated** [2] -
3:20, 57:20
**contamination** [10] -
3:5, 3:6, 3:18, 3:19,
4:7, 50:1, 50:11,
57:10, 57:21, 99:5
**contemplated** [1] -
72:8
**content** [1] - 42:2
**context** [3] - 59:16,
59:17, 59:23
**continue** [2] - 25:5,
25:8
**continued** [1] - 77:25
**continuing** [1] - 3:22
**contractual** [1] -
23:22
**control** [4] - 58:5,
89:18, 89:24, 96:15
**conversation** [2] -
36:16, 56:24
**cooperative** [1] -
26:14
**coordinate** [2] -

90:12, 90:15
**coordinated** [1] - 96:9
**coordinating** [1] - 98:18
**coordination** [12] - 90:5, 90:18, 93:14, 93:15, 94:9, 94:16, 95:2, 95:3, 95:22, 96:7, 98:5, 98:12
**copy** [5] - 40:10, 67:9, 67:15, 67:19, 74:24
**core** [42] - 6:6, 27:19, 27:21, 27:25, 28:7, 28:10, 28:19, 28:24, 29:12, 29:21, 31:5, 31:12, 33:16, 36:13, 38:6, 38:7, 60:7, 60:9, 60:21, 60:25, 61:2, 61:9, 61:11, 61:17, 61:21, 62:1, 62:7, 62:22, 62:23, 64:2, 64:3, 64:8, 64:12, 64:15, 64:19, 75:23, 88:12, 89:19, 90:1
**corollary** [3] - 28:2, 28:23, 72:17
**correct** [6] - 12:10, 14:5, 15:18, 16:16, 91:9, 101:13
**correspondence** [2] - 48:16, 48:17
**corroborate** [1] - 46:16
**cost** [1] - 39:5
**counsel** [31] - 2:5, 2:10, 2:24, 4:11, 9:15, 24:20, 25:10, 45:16, 48:8, 48:9, 48:11, 48:12, 48:16, 48:17, 49:19, 50:11, 52:3, 52:5, 52:8, 52:12, 53:3, 69:1, 79:6, 80:3, 81:8, 103:7, 103:12
**counterbalance** [1] - 28:7
**counterclaim** [1] - 97:11
**counterpart** [1] - 31:12
**counterpoint** [1] - 28:6
**County** [1] - 91:6
**couple** [6] - 20:14, 21:2, 34:11, 44:4, 86:5, 93:3
**course** [7] - 2:18, 8:21, 14:18, 15:4, 24:25, 34:4, 61:23

**COURT** [289] - 1:1, 2:2, 2:3, 3:15, 3:25, 4:10, 4:24, 5:1, 5:9, 5:14, 5:22, 5:25, 6:4, 6:10, 6:23, 6:25, 7:7, 7:20, 7:23, 8:4, 8:6, 8:8, 8:10, 8:12, 9:14, 10:21, 10:23, 11:19, 12:22, 13:17, 13:23, 14:11, 14:25, 15:12, 15:15, 15:21, 16:1, 16:8, 16:14, 16:17, 17:12, 17:19, 17:22, 18:6, 18:17, 19:1, 19:11, 19:18, 19:24, 20:16, 20:21, 21:7, 21:19, 21:23, 22:10, 22:12, 22:25, 23:7, 23:24, 24:11, 24:17, 24:25, 25:3, 25:10, 25:21, 26:2, 26:10, 26:16, 27:2, 28:12, 28:15, 29:1, 29:5, 30:11, 31:16, 32:9, 32:12, 33:9, 34:14, 34:19, 36:7, 37:12, 37:17, 39:8, 40:5, 40:14, 41:4, 41:8, 41:17, 41:22, 42:4, 42:15, 42:22, 43:9, 43:17, 43:22, 44:19, 44:25, 45:3, 45:23, 46:4, 46:6, 46:12, 47:20, 49:13, 49:24, 50:5, 50:9, 50:16, 50:22, 51:7, 51:20, 52:2, 53:2, 53:5, 53:19, 54:9, 54:12, 54:15, 55:6, 55:22, 56:8, 56:13, 56:19, 56:25, 57:2, 57:7, 57:16, 58:3, 58:15, 60:6, 60:16, 60:18, 60:21, 60:24, 61:10, 61:13, 61:20, 62:2, 62:6, 62:10, 62:14, 62:17, 62:20, 63:4, 63:11, 63:14, 63:18, 64:16, 64:24, 65:5, 65:8, 66:2, 66:9, 67:8, 67:10, 67:12, 67:14, 67:16, 67:18, 67:22, 68:9, 68:21, 69:4, 69:11, 70:1, 70:3, 70:10, 71:9, 71:21, 72:21, 72:23, 73:3, 73:13, 73:17, 73:22, 74:8, 74:11, 74:13, 74:20, 74:24, 75:6, 75:12, 75:14, 75:17, 75:20, 76:4, 76:15,

77:2, 77:21, 78:1, 78:6, 78:9, 79:1, 79:4, 79:21, 79:23, 80:1, 80:7, 80:9, 80:25, 81:3, 82:8, 82:23, 83:11, 83:19, 84:2, 84:5, 84:7, 84:11, 84:25, 85:5, 85:10, 85:12, 85:15, 85:21, 86:3, 86:22, 87:2, 87:14, 87:17, 87:20, 88:5, 88:10, 88:11, 89:4, 89:8, 89:10, 89:15, 90:3, 90:8, 90:12, 90:21, 91:1, 91:12, 91:15, 91:18, 91:21, 92:1, 92:4, 92:8, 92:10, 92:13, 92:21, 93:1, 93:19, 93:24, 94:5, 94:11, 94:13, 94:17, 94:23, 95:4, 95:9, 95:12, 95:21, 96:10, 96:15, 96:19, 96:23, 96:25, 97:4, 97:7, 97:10, 97:13, 97:15, 97:18, 97:20, 97:23, 98:6, 98:15, 98:17, 98:24, 99:10, 100:10, 100:10, 100:20, 100:13, 100:20, 100:22, 101:5, 101:11, 101:14, 102:3, 102:11, 102:19, 103:1, 103:3, 103:6, 103:16, 103:20
**Court** [26] - 1:23, 26:22, 35:10, 59:6, 68:4, 78:13, 79:8, 90:9, 90:24, 91:3, 91:5, 91:24, 92:19, 93:17, 93:22, 93:23, 94:5, 95:13, 96:4, 96:8, 96:14, 96:16, 96:18, 96:22, 97:10, 100:14
**court** [41] - 2:1, 2:21, 10:12, 10:15, 10:24, 11:2, 11:3, 11:4, 11:15, 14:3, 16:22, 24:1, 25:8, 26:4, 29:18, 29:25, 30:19, 31:25, 32:24, 33:17, 34:1, 40:2, 46:13, 48:5, 53:8, 53:10, 56:2, 56:19, 59:24, 62:7, 69:22, 72:7, 72:9, 73:18, 76:25, 77:18, 83:17, 88:19, 90:17, 100:18
**court's** [3] - 8:19, 10:24, 21:7

**Court's** [3] - 41:4, 47:22, 70:22
**court)** [1] - 88:9
**Courthouse** [1] - 1:6
**courtroom** [5] - 2:12, 74:19, 74:23, 103:8, 103:10
**courts** [2] - 90:18, 95:3
**cover** [4] - 17:2, 19:14, 34:6, 83:16
**coverage** [1] - 17:4
**covered** [4] - 17:24, 18:13, 65:5, 90:25
**covers** [1] - 87:18
**cracks** [1] - 77:4
**craft** [2] - 26:19, 102:16
**create** [1] - 90:18
**created** [4] - 50:25, 51:16, 51:22, 52:16
**creates** [2] - 37:24, 37:25
**creating** [1] - 14:5
**creation** [1] - 101:3
**credit** [1] - 66:16
**Crisatello** [1] - 91:8
**criteria** [1] - 18:1
**critical** [3] - 28:19, 61:24, 100:7
**cross** [3] - 55:21, 68:23, 71:15
**crossed** [1] - 76:13
**crossing** [2] - 68:1, 68:3
**cure** [1] - 10:18
**current** [2] - 35:12, 88:12
**cushion** [2] - 79:16, 85:23
**custodial** [7] - 48:24, 49:6, 49:8, 52:17, 53:2, 63:3, 63:5
**custodian** [1] - 51:17
**custodian/search** [1] - 64:19
**custodians** [1] - 64:21
**cut** [1] - 19:6
**cutting** [1] - 9:24

# D

**Daichi** [1] - 62:12
**Daniel** [3] - 4:9, 16:20, 17:13
**data** [1] - 54:8
**date** [5] - 11:17, 11:23, 88:12, 89:4

**dated** [1] - 49:21
**Daubert** [7] - 95:6, 95:9, 95:11, 95:15, 95:16, 95:21
**David** [1] - 7:1
**days** [21] - 7:23, 11:14, 11:16, 29:7, 41:6, 41:9, 42:1, 42:16, 65:18, 78:14, 79:7, 79:19, 79:21, 81:19, 81:21, 83:16, 83:21, 86:11, 89:6
**DCO** [4] - 65:9, 65:13, 65:14, 65:16
**de** [9] - 31:19, 75:24, 76:18, 76:23, 77:3, 77:22, 78:16, 78:17, 79:9
**de-designate** [2] - 78:16, 79:9
**de-designated** [1] - 77:3
**de-designation** [5] - 75:24, 76:18, 76:23, 77:22, 78:17
**deadline** [2] - 8:20, 65:25
**deal** [19] - 42:15, 42:17, 46:17, 48:13, 55:22, 62:7, 64:24, 65:2, 65:3, 74:16, 75:15, 78:14, 86:4, 87:25, 89:18, 101:21, 103:14
**dealing** [5] - 12:13, 42:19, 51:11, 62:10, 84:10
**dealt** [2] - 60:8, 62:11
**decide** [4] - 16:17, 41:8, 74:15, 103:18
**decided** [3] - 39:9, 59:10, 70:25
**decides** [1] - 9:21
**deciding** [1] - 46:12
**decision** [2] - 39:10, 95:13
**declaration** [2] - 34:20, 40:14
**Declarations** [1] - 41:12
**declination** [1] - 26:6
**default** [3] - 45:24, 49:4, 53:5
**defendant** [13] - 14:6, 21:12, 46:13, 47:24, 53:7, 55:11, 65:15, 77:23, 78:22, 81:15, 96:18, 96:24, 97:11

**defendant's** [1] - 22:6

**defendants** [99] - 3:13, 4:13, 5:4, 5:8, 5:10, 5:25, 6:2, 6:8, 7:4, 7:8, 8:13, 8:25, 9:5, 9:17, 10:4, 10:10, 10:16, 10:25, 11:8, 11:21, 11:23, 12:2, 12:6, 12:11, 12:13, 12:16, 12:21, 12:24, 13:3, 14:1, 15:8, 15:10, 17:5, 17:18, 17:24, 19:25, 20:1, 20:4, 20:11, 20:17, 20:24, 22:3, 22:17, 22:18, 23:1, 23:6, 25:13, 25:20, 26:12, 26:21, 27:17, 27:21, 29:16, 32:6, 35:13, 39:2, 43:12, 44:11, 45:18, 50:10, 53:11, 54:7, 55:7, 55:19, 55:23, 57:4, 60:7, 60:12, 64:8, 64:20, 65:1, 66:23, 73:5, 73:6, 76:1, 76:6, 76:10, 77:4, 77:8, 78:13, 78:15, 78:21, 79:10, 79:24, 80:1, 82:14, 88:13, 88:14, 93:4, 93:6, 99:14, 99:17, 99:18, 99:23, 103:16

**defendants'** [7] - 9:15, 10:4, 21:24, 23:4, 36:14, 80:3, 86:9

**defense** [23] - 24:19, 28:1, 29:14, 29:19, 31:10, 31:23, 33:15, 33:23, 34:12, 35:3, 35:21, 36:24, 38:2, 46:24, 47:4, 49:17, 49:22, 50:3, 58:13, 67:5, 81:19, 99:13, 102:22

**defenses** [3] - 9:16, 9:24, 15:1

**deficiencies** [2] - 10:19, 26:4

**deficient** [2] - 12:8

**define** [2] - 12:10, 54:24

**defined** [3] - 20:17, 51:5, 81:20

**definitely** [1] - 75:12

**definition** [4] - 18:19, 18:21, 20:24, 72:2

**definitions** [5] -

18:24, 19:3, 19:5, 19:6, 19:10

**degree** [1] - 99:3

**delay** [1] - 87:22

**deleted** [1] - 81:25

**delightful** [1] - 54:11

**Democracy** [1] - 2:13

**demonstrated** [1] - 72:7

**denied** [2] - 61:5, 86:12

**department** [1] - 49:9

**Department** [1] - 49:25

**deponent** [2] - 84:16, 84:21

**deposed** [1] - 69:7

**deposition** [9] - 68:25, 69:6, 69:15, 69:23, 70:2, 70:12, 70:17, 71:14, 84:14

**depositions** [1] - 52:1

**Depot** [1] - 97:12

**DEPUTY** [3] - 2:2, 88:10, 103:20

**Deputy** [1] - 50:21

**describe** [1] - 83:14

**described** [1] - 86:16

**description** [3] - 47:2, 75:25, 95:19

**deserves** [2] - 62:12, 62:14

**designate** [5] - 73:6, 78:16, 79:9, 79:10, 79:11

**designated** [6] - 65:13, 77:3, 80:2, 80:7, 86:18, 86:19

**designating** [1] - 79:5

**designation** [10] - 46:23, 47:12, 48:10, 72:24, 75:24, 76:18, 76:23, 77:22, 78:17, 80:17

**designations** [2] - 73:1, 73:7

**detail** [3] - 2:14, 2:15, 41:23

**detailed** [2] - 29:7, 37:23

**details** [1] - 31:2

**determination** [3] - 55:19, 76:20, 77:1

**determine** [3] - 47:6, 50:19, 83:8

**develop** [3] - 22:24, 37:16, 46:1

**developed** [1] - 18:14

**development** [2] - 49:5, 52:19

**deviate** [1] - 78:11

**devise** [1] - 25:7

**DHP** [1] - 6:11

**diagnosing** [1] - 36:21

**difference** [5] - 23:24, 29:7, 34:25, 66:21, 78:18

**differences** [3] - 16:25, 17:14, 19:2

**different** [20] - 5:2, 12:7, 15:9, 33:2, 54:17, 57:18, 57:19, 59:14, 66:23, 76:2, 76:4, 76:9, 77:8, 77:9, 78:20, 78:23, 84:15, 99:13

**difficult** [1] - 86:4

**diligently** [4] - 8:18, 19:9, 31:6, 60:9

**diminished** [1] - 22:8

**direct** [1] - 23:14

**direction** [2] - 47:22, 50:7

**directly** [1] - 50:7

**disagree** [2] - 54:12, 71:18

**disagreement** [1] - 75:24

**disagrees** [1] - 80:12

**disclaimer** [1] - 24:23

**disclosure** [3] - 22:17, 22:21, 38:11

**disclosures** [1] - 22:21

**discoverable** [1] - 26:7

**discovered** [1] - 50:2

**discovery** [53] - 4:18, 4:21, 6:6, 20:15, 21:3, 22:16, 24:3, 25:15, 27:19, 27:22, 27:25, 28:7, 28:24, 29:3, 29:13, 29:21, 31:5, 31:12, 35:13, 37:23, 38:18, 58:4, 59:11, 60:7, 60:9, 60:22, 60:25, 61:2, 61:3, 61:9, 61:11, 61:17, 61:21, 61:22, 61:24, 62:1, 62:7, 62:22, 62:23, 62:25, 64:2, 64:4, 64:8, 64:12, 64:15, 64:19, 65:8, 88:12, 88:18, 89:19,

90:1, 93:18, 101:22

**discretion** [1] - 72:8

**discuss** [5] - 2:16, 4:20, 35:7, 45:6, 79:19

**discussed** [6] - 29:12, 33:1, 37:11, 54:1, 74:18, 80:12

**discussing** [2] - 54:8, 63:7

**discussion** [7] - 20:9, 20:20, 31:10, 35:5, 42:11, 43:15, 99:7

**discussions** [5] - 20:23, 21:4, 27:11, 31:21, 60:11

**dismiss** [2] - 9:13, 10:11

**dismissal** [2] - 20:4, 23:25

**dismissed** [1] - 25:17

**dispositive** [3] - 10:11, 68:11, 68:16

**disproportional** [1] - 53:8

**dispute** [9] - 41:11, 41:13, 43:17, 43:18, 43:22, 43:25, 51:10, 62:5, 64:5

**distinction** [1] - 78:25

**DISTRICT** [2] - 1:1, 1:1

**District** [2] - 47:2, 101:4

**diversity** [2] - 18:15, 19:14

**docket** [1] - 11:7

**Docket** [2] - 1:13, 2:9

**doctor** [7] - 37:8, 38:2, 42:9, 70:12, 70:13, 70:14, 71:2

**doctors** [1] - 37:3

**document** [33] - 47:4, 47:5, 47:6, 47:10, 47:13, 47:14, 47:17, 48:23, 48:25, 49:3, 51:22, 52:18, 54:17, 54:21, 54:23, 54:24, 55:2, 56:12, 56:17, 59:2, 59:3, 59:19, 59:23, 59:25, 60:2, 64:4, 83:3, 87:23, 90:4

**document's** [1] - 46:21

**documents** [65] - 4:18, 6:6, 26:24, 43:4,

43:7, 43:18, 43:20, 44:1, 44:3, 44:7, 44:15, 45:9, 45:11, 45:13, 45:19, 46:14, 46:25, 47:17, 47:25, 48:6, 48:7, 49:5, 49:10, 49:17, 49:20, 49:21, 52:1, 55:15, 55:24, 56:3, 56:15, 59:5, 59:7, 60:10, 61:2, 64:22, 65:11, 65:12, 65:16, 68:10, 68:14, 71:4, 73:8, 74:16, 76:19, 77:3, 78:6, 79:9, 81:11, 83:6, 83:8, 83:10, 85:13, 85:25, 86:1, 86:9, 87:7, 88:22, 88:23, 89:11, 89:20, 89:22, 90:3

**dollar** [2] - 13:23, 24:13

**done** [19] - 2:16, 7:16, 13:12, 13:14, 14:16, 31:7, 31:8, 31:9, 31:15, 35:16, 40:10, 41:1, 41:5, 42:2, 42:17, 49:6, 50:7, 66:17, 86:5

**dose** [4] - 22:5, 22:6, 22:8, 22:19

**double** [1] - 85:24

**dovetails** [1] - 27:2

**down** [13] - 19:9, 21:14, 22:19, 23:4, 27:18, 30:25, 32:5, 34:11, 40:18, 66:12, 74:22, 94:10, 102:10

**draft** [8] - 4:14, 20:11, 33:1, 33:24, 41:3, 90:19, 93:14, 94:15

**drafted** [1] - 15:6

**drafting** [6] - 8:18, 10:24, 17:7, 18:23, 19:4, 40:9

**drafts** [1] - 20:8

**draw** [1] - 52:12

**drug** [2] - 23:18

**drugs** [3] - 23:15, 57:12, 99:15

**due** [4] - 15:4, 33:4, 88:12, 89:6

**Duke** [1] - 31:21

**duplication** [3] - 33:13, 35:15, 82:5

**duplicative** [2] - 82:24, 83:1

**during** [2] - 7:24, 76:17

# E

**e-mail** [8] - 4:16, 5:5, 50:20, 52:3, 54:8, 56:4, 56:15, 56:16
**e-mailed** [1] - 51:21
**e-mails** [7] - 52:21, 63:3, 63:6, 63:22, 64:24, 65:1, 76:8
**early** [3] - 8:9, 31:22, 64:3
**easier** [6] - 5:4, 35:14, 46:24, 47:12, 86:6, 88:15
**easily** [2] - 12:6, 21:15
**easy** [7] - 11:19, 53:16, 69:20, 78:15, 78:22, 85:12, 90:15
**echo** [1] - 99:21
**economic** [4] - 7:2, 16:14, 18:4, 23:12
**Economic** [1] - 18:18
**economy** [1] - 35:11
**effect** [2] - 45:5, 102:23
**effective** [1] - 101:1
**efficiency** [4] - 10:15, 35:11, 39:4, 102:20
**efficient** [1] - 95:24
**effort** [1] - 64:6
**eight** [1] - 65:22
**eighteenth** [1] - 93:12
**either** [5] - 33:5, 44:6, 69:20, 83:20, 86:13
**electronic** [1] - 44:7
**elements** [1] - 12:15
**eliminate** [2] - 9:2, 9:13
**EMA** [1] - 4:4
**emerging** [1] - 17:14
**Emery** [1] - 31:20
**eminently** [1] - 80:9
**employee** [1] - 70:8
**employer** [2] - 38:3, 51:10
**Enbar** [1] - 26:11
**encompass** [2] - 18:24, 18:25
**encompasses** [1] - 4:17
**end** [18] - 7:21, 8:2, 8:9, 8:15, 17:17, 19:20, 25:3, 45:21, 52:21, 68:6, 73:17, 75:4, 81:4, 81:7,

81:24, 86:7, 98:3, 102:23
**endeavor** [1] - 7:15
**ends** [2] - 80:23, 80:24
**enlarged** [1] - 100:2
**enormous** [1] - 37:24
**ensure** [1] - 9:7
**ensuring** [1] - 25:14
**entail** [1] - 34:8
**enter** [1] - 98:13
**entered** [10] - 2:19, 42:22, 65:10, 65:13, 65:14, 65:17, 65:18, 65:23, 87:22, 90:23
**entering** [1] - 95:3
**entertain** [3] - 10:12, 72:9, 73:18
**entertaining** [1] - 10:13
**entire** [3] - 56:5, 56:15, 82:20
**entirely** [1] - 43:7
**entities** [2] - 18:20, 24:15
**entitled** [1] - 26:7
**Entry** [1] - 1:13
**envision** [6] - 10:1, 10:8, 11:6, 13:2, 13:4, 93:15
**envisioned** [4] - 28:18, 32:18, 33:8, 70:5
**envisioning** [2] - 35:9, 69:15
**equal** [3] - 73:12, 73:15, 77:10
**ESI** [23] - 26:8, 26:20, 27:1, 43:3, 43:21, 44:2, 44:12, 44:22, 45:2, 60:13, 61:3, 61:6, 61:12, 61:14, 61:18, 61:23, 62:5, 63:1, 63:8, 63:23, 64:7, 64:14, 91:18
**especially** [2] - 39:20, 84:18
**essentially** [7] - 11:17, 23:18, 24:7, 44:11, 76:19, 84:21, 95:10
**establish** [1] - 11:17
**et** [3] - 38:3, 58:6, 99:5
**etc** [1] - 14:22
**etcetera** [1] - 81:12
**etched** [2] - 42:4, 42:16

**ethics** [1] - 72:14
**evaluate** [1] - 60:4
**event** [2] - 45:2, 97:8
**eventually** [1] - 96:11
**Evidence** [2] - 80:24, 82:9
**exactly** [8] - 9:4, 10:22, 24:10, 24:13, 32:17, 32:19, 63:20, 75:5
**examining** [1] - 23:10
**example** [15] - 10:23, 11:6, 12:25, 23:16, 36:20, 54:7, 57:16, 68:15, 69:15, 70:11, 71:2, 81:10, 81:17, 83:2, 86:17
**examples** [1] - 69:17
**exceedingly** [1] - 102:15
**exception** [1] - 22:1
**excess** [1] - 24:25
**exchange** [1] - 43:6
**exchanged** [1] - 20:8
**exciting** [1] - 24:13
**exclusion** [1] - 52:11
**excuse** [1] - 54:9
**exempt** [1] - 27:1
**exhibited** [1] - 102:13
**exist** [2] - 18:4, 52:15
**expect** [1] - 58:15
**expedited** [2] - 31:15, 33:25
**expense** [1] - 38:1
**experience** [2] - 14:9, 54:7
**explaining** [1] - 82:18
**explicit** [1] - 95:15
**explicitly** [2] - 101:14, 102:5
**exposed** [1] - 38:14
**express** [1] - 82:16
**extension** [1] - 88:16
**extensive** [1] - 23:15
**extent** [7] - 18:2, 18:3, 18:12, 43:11, 72:16, 96:6, 100:8
**extra** [4] - 18:12, 76:14, 77:18, 79:16
**eye** [1] - 39:22
**eyes** [1] - 65:14

# F

**facilitating** [1] - 95:2

**fact** [47] - 25:6, 26:25, 27:5, 28:15, 28:16, 29:5, 29:6, 29:8, 31:1, 31:8, 31:10, 33:10, 33:20, 34:4, 34:7, 34:8, 34:21, 34:25, 35:6, 35:17, 35:23, 37:13, 37:14, 37:22, 38:12, 38:22, 39:11, 39:14, 39:19, 40:3, 40:8, 40:9, 40:10, 41:12, 41:23, 42:2, 43:3, 43:5, 43:6, 43:14, 43:19, 44:8, 44:9, 44:23, 93:11
**factitious** [1] - 57:5
**factor** [1] - 100:12
**factors** [1] - 95:16
**factory** [1] - 57:18
**facts** [2] - 9:10, 57:17
**fair** [4] - 25:21, 33:3, 78:1, 80:9
**fairest** [1] - 53:17
**fairly** [1] - 22:1
**faith** [1] - 57:5
**fall** [1] - 11:12
**fallback** [1] - 71:12
**falls** [3] - 23:20, 42:12, 77:4
**family** [4] - 56:15, 59:17, 59:23, 102:1
**far** [3] - 19:2, 21:4, 27:11
**fashion** [2] - 12:19, 67:1
**fast** [3] - 31:5, 35:16, 84:12
**faster** [1] - 91:2
**favor** [1] - 13:22
**FDA** [9] - 3:5, 3:6, 3:17, 4:1, 23:19, 50:9, 50:10, 63:22, 64:10
**fear** [1] - 77:19
**Federal** [7] - 80:24, 82:9, 90:13, 95:5, 96:14, 96:22, 100:14
**fellow** [1] - 97:15
**felt** [1] - 99:2
**few** [5] - 7:16, 7:17, 49:14, 81:18, 87:24
**fifty** [1] - 19:16
**figure** [2] - 29:16, 55:2
**figuring** [1] - 33:5
**file** [23] - 8:20, 9:18, 9:19, 13:3, 13:6, 13:9, 14:3, 14:10, 14:16, 14:19, 30:17, 40:23,

83:20, 85:24, 85:25, 86:6, 86:18, 88:25, 92:25, 98:2, 99:20, 101:3
**filed** [22] - 5:11, 9:21, 11:7, 11:11, 11:18, 12:22, 13:24, 14:14, 15:18, 15:19, 19:2, 19:21, 29:23, 35:21, 35:23, 35:25, 86:6, 87:5, 96:8, 96:17, 101:1, 101:4
**files** [7] - 35:3, 52:17, 53:2, 63:3, 63:6, 86:8, 88:24
**filing** [10] - 8:21, 14:23, 21:13, 33:6, 64:9, 64:11, 86:7, 91:16, 91:23, 92:17
**fill** [3] - 17:8, 31:1, 34:21
**filled** [1] - 39:12
**fills** [1] - 35:23
**final** [2] - 38:19, 39:10
**finalize** [1] - 87:21
**finalized** [2] - 19:20, 29:6
**finalizing** [3] - 7:13, 8:15, 41:6
**fine** [11] - 11:21, 35:7, 75:17, 81:20, 81:21, 81:22, 81:23, 83:19, 95:23, 99:23
**finish** [1] - 91:2
**finished** [2] - 22:5, 22:19
**finite** [1] - 44:3
**first** [26] - 4:12, 4:14, 8:7, 11:8, 11:11, 26:23, 28:5, 28:23, 29:23, 37:16, 49:16, 61:17, 73:25, 74:9, 76:2, 80:23, 81:4, 81:5, 81:10, 81:13, 84:25, 86:3, 89:7, 91:11
**fit** [1] - 46:14
**fits** [1] - 55:13
**five** [5] - 54:17, 60:17, 71:25, 72:1, 72:2
**fixed** [1] - 10:7
**fledged** [1] - 35:17
**floor** [1] - 103:6
**fly** [2] - 2:13, 90:9
**focus** [1] - 39:5
**fold** [1] - 23:9
**folks** [1] - 25:7
**follow** [7] - 13:20,

40:16, 59:8, 78:13, 79:8, 79:23, 95:5
**following** [4] - 2:1, 59:11, 65:15, 88:9
**footing** [1] - 52:25
**footnote** [1] - 64:2
**FOR** [1] - 1:1
**forced** [1] - 84:21
**foreign** [6] - 5:10, 5:25, 6:2, 7:3, 7:8, 62:6
**foresight** [1] - 102:12
**forever** [2] - 25:13, 77:6
**forge** [1] - 80:13
**forgot** [2] - 10:2, 92:1
**form** [16] - 27:5, 27:7, 28:13, 29:8, 32:15, 32:20, 34:21, 35:1, 35:4, 35:9, 35:24, 36:2, 36:18, 37:13, 39:11, 94:1
**Form** [12] - 15:2, 15:4, 15:6, 15:8, 15:11, 15:17, 15:22, 16:21, 17:10, 19:19, 19:22, 20:2
**formal** [2] - 64:4, 83:20
**formality** [1] - 67:24
**format** [1] - 32:20
**formatting** [1] - 63:21
**forms** [17] - 17:15, 17:16, 30:12, 31:18, 31:22, 32:22, 33:1, 33:9, 34:2, 34:5, 38:21, 39:7, 39:23, 40:1, 41:16, 45:9, 65:5
**forth** [3] - 3:3, 13:7, 38:12
**forum** [1] - 74:18
**forward** [6] - 28:25, 30:14, 36:16, 94:4, 96:7, 100:1
**forwarded** [1] - 50:25
**forwards** [1] - 50:23
**foundation** [1] - 37:16
**four** [4] - 17:23, 20:3, 58:17, 72:3
**fourth** [2] - 13:7, 101:18
**frame** [3] - 7:11, 64:6, 82:6
**framed** [1] - 38:21

**framing** [1] - 64:14
**frankly** [7] - 10:2, 17:6, 19:7, 37:24, 47:9, 53:24, 66:10
**fraud** [1] - 12:15
**Friday** [3] - 4:19, 8:7, 89:11
**front** [4] - 42:19, 42:23, 53:10, 101:8
**frowned** [1] - 47:11
**fruition** [1] - 53:24
**fulfilling** [1] - 55:10
**full** [11] - 2:23, 35:6, 35:17, 36:24, 38:8, 38:9, 39:19, 40:3, 43:12, 80:23, 81:5
**fully** [1] - 10:13
**fundamental** [1] - 62:24

## G

**G.C** [1] - 50:23
**game** [1] - 102:23
**gander** [1] - 72:19
**gaps** [1] - 66:18
**Gary** [1] - 43:24
**gather** [1] - 88:15
**general** [2] - 10:1, 47:15
**generally** [1] - 76:21
**genuine** [1] - 64:5
**geographic** [3] - 18:2, 18:15, 19:14
**George** [1] - 5:15
**Gerry** [1] - 1:7
**GHP** [1] - 93:4
**given** [5] - 7:4, 8:20, 76:1, 78:2, 93:11
**glad** [1] - 87:20
**global** [1] - 102:23
**goal** [1] - 13:10
**God** [1] - 40:24
**Goldberg** [4] - 3:10, 7:11, 89:5, 90:10
**GOLDBERG** [53] - 3:11, 4:23, 4:25, 7:15, 7:22, 8:2, 8:5, 8:7, 8:9, 8:11, 12:4, 19:23, 62:21, 63:9, 63:12, 63:15, 63:24, 65:4, 88:3, 88:20, 89:6, 89:9, 89:14, 90:2, 90:14, 90:22, 91:9, 92:17, 93:2, 93:8, 93:10, 93:21, 94:1, 94:7, 94:12, 94:15, 94:25, 95:8, 96:1, 96:13, 96:16, 96:20,

96:24, 97:2, 97:5, 97:8, 97:19, 97:21, 97:25, 98:10, 98:16, 99:12, 103:15
**GOLDENBERG** [7] - 6:18, 6:24, 20:6, 20:18, 20:22, 21:18, 21:22
**Goldenberg** [2] - 6:18, 20:6
**GOLDENBERGER** [1] - 102:14
**Golomb** [1] - 7:1
**goose** [1] - 72:19
**govern** [2] - 72:14, 74:13
**grant** [1] - 35:4
**granted** [3] - 13:3, 14:18, 47:25
**grappling** [1] - 27:21
**great** [9] - 7:7, 8:8, 15:2, 40:25, 54:16, 82:12, 90:21, 91:1, 103:1
  **Grier** [1] - 5:6
  **ground** [1] - 51:3
  **group** [5] - 47:24, 82:16, 82:20, 90:9, 99:13
  **groups** [1] - 76:9
  **guess** [7] - 18:20, 29:12, 37:7, 40:7, 85:4, 88:13, 100:18
  **guessing** [2] - 23:3, 40:7
  **guesstimate** [1] - 22:25
  **guidance** [3] - 65:20, 75:5, 87:12
  **gymnastics** [1] - 21:17

## H

**Hague** [3] - 5:10, 5:16, 6:1
**hammered** [1] - 35:6
**hand** [3] - 64:12, 98:12, 101:2
**handful** [2] - 17:21, 66:12
**handle** [1] - 14:7
**happy** [3] - 27:9, 102:8
**hard** [6] - 26:19, 31:24, 47:8, 47:9, 50:16, 82:21
**hardly** [1] - 87:5
**harm** [1] - 42:8

**hashed** [1] - 45:7
**hashing** [1] - 26:14
**head** [1] - 25:12
**headed** [1] - 30:8
**health** [1] - 37:10
**Health** [1] - 4:8
**hear** [1] - 9:15
**heard** [6] - 26:16, 30:2, 48:22, 49:12, 71:11, 99:22
**Hearing** [1] - 95:9
**hearing** [9] - 68:4, 68:8, 74:18, 75:7, 75:16, 75:17, 91:5, 93:12, 103:9
**hearings** [5] - 68:11, 74:4, 95:6, 95:21
**heavily** [1] - 48:21
**held** [1] - 49:3
**hello** [1] - 90:7
**help** [3] - 12:2, 64:5, 64:20
**helpful** [6] - 30:4, 36:13, 82:4, 90:19
**helps** [1] - 29:3
**hermetically** [1] - 2:12
**Hetero** [4] - 6:13, 6:17, 7:3, 7:9
**hiding** [1] - 68:14
**highlight** [1] - 68:1
**highlighted** [1] - 67:4
**historically** [1] - 36:1
**history** [5] - 36:25, 37:2, 37:9, 89:2
**hit** [1] - 25:12
**hold** [3] - 65:11, 65:16, 65:24
**holders** [1] - 86:1
**Holland** [2] - 5:23
**Home** [1] - 97:12
**hone** [1] - 19:9
**Honik** [8] - 7:2, 8:17, 10:2, 10:23, 14:11, 19:24, 23:7, 98:19
**HONIK** [38] - 8:17, 10:8, 10:22, 11:1, 13:13, 13:22, 13:25, 14:24, 16:19, 17:13, 17:21, 18:1, 18:10, 18:22, 19:4, 19:13, 23:8, 24:5, 24:12, 24:18, 25:2, 25:5, 26:1, 98:21, 99:1, 99:21, 100:12, 100:16, 100:21, 100:25, 101:10, 101:13, 102:7, 102:12, 102:15,

102:22, 103:2, 103:5
**Honor** [94] - 3:11, 3:17, 4:13, 4:23, 4:25, 5:13, 6:18, 7:1, 8:17, 12:4, 12:19, 15:20, 16:19, 20:6, 20:19, 21:25, 23:3, 23:8, 25:11, 26:9, 28:5, 28:16, 30:1, 32:17, 33:12, 34:18, 35:19, 35:20, 41:7, 42:25, 43:24, 43:25, 46:3, 46:5, 46:10, 46:22, 49:12, 52:9, 53:18, 58:25, 59:8, 59:10, 59:25, 60:5, 60:8, 60:17, 61:9, 62:13, 62:18, 62:21, 63:17, 63:19, 64:1, 64:13, 64:23, 65:7, 65:19, 65:20, 66:15, 67:3, 68:18, 68:22, 71:1, 71:23, 72:11, 72:19, 74:1, 74:12, 75:22, 76:8, 78:2, 78:19, 79:14, 80:20, 82:1, 84:4, 84:9, 84:13, 84:19, 84:20, 87:9, 88:20, 90:2, 90:7, 90:15, 90:19, 91:22, 93:2, 93:10, 95:1, 95:20, 96:1, 101:24, 103:15
**Honor's** [2] - 43:11, 64:2
**HONORABLE** [1] - 1:9
**hook** [1] - 31:4
**hope** [1] - 22:14
**hopeful** [1] - 65:23
**hopefully** [4] - 15:4, 20:7, 20:13, 21:1
**hopping** [1] - 96:4
**horse** [4] - 59:1, 60:3, 99:6
**house** [6] - 49:19, 50:11, 50:25, 52:3, 53:3, 53:14
**hum** [3] - 72:22, 80:10, 83:17
**hundred** [5] - 54:9, 54:17, 78:8, 78:9, 93:25
**hundreds** [2] - 45:17, 98:9
**hurdles** [1] - 66:21
**hypothetical** [2] - 43:7, 77:2
**hypothetically** [3] - 12:22, 46:13, 49:25

# I

**I.d** [1] - 36:3
**I.D** [2] - 36:19, 38:9
**idea** [10] - 10:3, 11:4, 14:8, 24:6, 34:10, 57:18, 58:2, 90:21, 91:1
**identical** [1] - 82:25
**identified** [2] - 39:13, 41:21
**identify** [6] - 17:7, 52:23, 58:20, 64:5, 64:20, 64:21
**Iqbal** [2] - 13:7, 14:17
**ignore** [2] - 79:7, 79:12
**Illinois** [1] - 18:8, 96:3
**illustrates** [2] - 43:6, 50:18
**immediately** [1] - 27:24
**immunity** [1] - 81:11
**impact** [1] - 30:6
**implementing** [1] - 38:21
**implicit** [1] - 101:17
**implicitly** [1] - 101:14
**important** [9] - 21:8, 21:9, 29:19, 30:4, 30:17, 56:1, 61:22, 68:19, 70:7
**imposed** [2] - 12:21, 33:14
**IN** [1] - 1:3
**in-house** [4] - 49:19, 50:25, 52:3, 53:14
**In-house** [1] - 50:11
**inadvertent** [2] - 81:10, 82:13
**inadvertently** [1] - 83:9
**Inc** [1] - 26:12
**incentive** [2] - 79:11
**include** [8] - 22:20, 68:2, 74:7, 75:5, 75:9, 86:14, 87:15, 100:2
**included** [5] - 20:1, 33:1, 45:7, 72:17, 72:18
**includes** [1] - 79:17
**including** [1] - 72:5
**incomplete** [1] - 56:17
**incorporate** [1] - 83:12

**incorporates** [1] - 82:8
**incredibly** [1] - 86:4
**indeed** [1] - 19:13
**indemnification** [1] - 97:6
**Indian** [1] - 62:11
**indicate** [1] - 7:7
**indicated** [1] - 9:4
**indications** [1] - 49:14
**individual** [5] - 5:24, 44:2, 44:16, 71:10, 91:18
**individuals** [1] - 52:18
**indulgence** [2] - 103:8, 103:11
**information** [37] - 12:14, 20:1, 24:10, 25:4, 26:3, 28:19, 33:16, 36:1, 36:7, 36:14, 36:15, 36:19, 37:21, 38:6, 38:7, 38:25, 39:3, 39:6, 39:24, 39:25, 41:19, 45:7, 47:5, 55:9, 55:20, 56:1, 57:14, 58:5, 58:6, 63:2, 69:14, 78:4, 81:11, 86:9, 88:15, 99:3, 99:12
**infringe** [1] - 51:18
**ingredients** [1] - 4:7
**inherently** [1] - 79:8
**inhouse** [6] - 48:7, 48:9, 48:11, 48:12, 48:16, 52:8
**initial** [1] - 19:7, 28:10, 28:18, 29:3, 29:13, 29:15, 32:1, 33:16, 33:22, 35:4
**initiated** [3] - 5:16, 6:19, 7:2
**injury** [7] - 5:24, 15:7, 16:13, 28:9, 30:21, 36:20, 91:13
**inside** [1] - 52:5
**insight** [4] - 3:4, 3:9, 3:16, 4:3
**inspection** [3] - 58:4, 58:11, 58:15
**instance** [2] - 48:5, 58:22
**instances** [2] - 18:22, 87:4
**instead** [1] - 79:19
**instruction** [1] - 11:2
**instructions** [1] - 8:19

**insurance** [7] - 24:9, 24:10, 24:22, 25:4, 26:2, 30:6, 37:10
**intellectually** [1] - 20:10
**intend** [1] - 2:23
**intended** [2] - 64:17, 83:14
**intention** [2] - 9:24, 98:17
**interest** [1] - 25:22
**internal** [1] - 99:7
**internally** [1] - 54:7
**interplead** [1] - 97:4
**interrupt** [1] - 17:13
**intimidate** [1] - 70:13
**intimidating** [1] - 84:24
**introduce** [1] - 5:14
**invented** [1] - 12:3
**investigate** [1] - 50:12
**investigating** [1] - 50:1
**investigation** [5] - 3:5, 3:7, 3:14, 4:5, 4:9
**investigations** [1] - 4:1
**invite** [1] - 8:25
**involved** [6] - 8:22, 27:10, 48:20, 48:21, 66:7
**Iqbal** [1] - 12:1
**Irbesartan** [1] - 99:4
**irrelevant** [2] - 55:12, 56:7
**issue** [96] - 4:12, 4:20, 6:7, 6:11, 6:12, 7:19, 7:24, 8:16, 12:1, 13:7, 16:9, 16:21, 18:13, 20:5, 20:21, 23:10, 24:8, 26:2, 27:2, 27:3, 27:5, 27:21, 31:19, 31:22, 34:14, 34:22, 35:5, 35:20, 37:12, 41:23, 41:25, 42:23, 43:2, 46:2, 46:6, 46:9, 46:11, 47:20, 47:21, 47:22, 48:2, 48:3, 48:14, 50:8, 51:1, 51:11, 51:14, 52:16, 53:23, 54:13, 54:20, 54:25, 55:18, 57:10, 59:1, 60:6, 60:17, 60:18, 61:10, 61:17, 61:21, 61:25, 62:6, 62:10, 62:15, 63:7, 64:25, 65:17, 66:22, 68:6, 69:1, 70:7, 70:9,

71:21, 73:24, 73:25, 74:14, 75:22, 78:10, 82:20, 84:14, 84:19, 88:11, 88:13, 89:24, 90:5, 90:14, 93:3, 97:18, 98:18, 101:6, 101:7, 101:19
**issues** [42] - 6:5, 7:12, 9:23, 10:11, 10:12, 10:16, 14:15, 14:21, 16:3, 20:13, 20:18, 21:1, 21:6, 25:9, 26:23, 28:22, 34:6, 34:16, 41:11, 42:6, 42:18, 42:19, 53:16, 64:5, 65:22, 66:5, 66:12, 76:2, 82:6, 82:13, 87:24, 89:16, 89:19, 89:21, 98:19, 101:21, 103:7, 103:14
**item** [1] - 20:3
**itself** [2] - 51:18, 70:23

# J

**Jackson** [1] - 97:12
**January** [1] - 30:2
**Japanese** [1] - 62:11
**Jerry** [1] - 5:23
**JERSEY** [1] - 1:1
**Jersey** [16] - 1:7, 18:13, 23:16, 90:12, 91:23, 91:24, 92:1, 92:2, 92:5, 92:25, 95:5, 95:10, 96:3, 100:20, 101:1
**JOEL** [1] - 1:9
**John** [1] - 1:7
**join** [2] - 97:2, 97:3
**joined** [1] - 96:21
**joint** [8] - 35:4, 90:18, 93:14, 93:15, 94:15, 96:2, 96:7, 98:12
**jour** [1] - 31:19
**journalists** [1] - 4:5
**JPML** [8] - 28:4, 29:24, 97:25, 99:8, 99:22, 100:4, 100:23, 102:8
**Judge** [40] - 2:11, 2:14, 2:18, 9:20, 9:23, 10:13, 13:4, 13:13, 13:17, 13:25, 14:12, 27:4, 27:22, 28:22, 29:9, 30:23, 33:21, 34:15, 39:10, 40:5,

40:19, 46:14, 57:8, 59:8, 74:14, 91:6, 91:7, 93:20, 93:23, 94:6, 94:21, 94:22, 95:1, 98:8, 98:11, 98:12, 98:13, 98:17, 98:21, 102:20
**judge** [3] - 6:8, 41:2, 93:24
**JUDGE** [1] - 1:9
**Judges** [6] - 90:17, 90:23, 90:24, 94:23, 95:1, 96:5
**judicial** [1] - 35:11
**July** [9] - 40:20, 89:10, 89:11, 91:5, 94:12, 94:13, 100:4, 100:8, 100:9
**jump** [2] - 27:9, 67:3
**June** [10] - 7:21, 8:12, 8:13, 8:15, 8:20, 12:23, 14:23, 15:3, 94:11, 100:4
**jurisdiction** [2] - 24:1, 95:15
**jury** [2] - 2:25, 103:12
**justify** [2] - 46:16, 86:10

# K

**keep** [3] - 5:7, 14:23, 73:10
**keeping** [1] - 66:22
**Kentucky** [1] - 101:4
**kept** [1] - 87:10
**kick** [1] - 32:24
**kicked** [1] - 27:13
**kicks** [1] - 30:24
**kind** [15] - 12:14, 29:14, 29:15, 30:22, 32:20, 33:18, 34:11, 62:25, 63:9, 66:13, 72:19, 75:4, 84:10, 87:14, 90:18
**knock** [2] - 35:20, 67:2
**knowing** [2] - 27:22, 34:13
**knows** [3] - 33:17, 52:25, 57:11
**Kugler** [23] - 2:11, 2:14, 2:19, 8:9, 9:21, 9:23, 10:13, 13:5, 13:17, 14:12, 27:4, 27:22, 28:22, 29:9, 33:21, 34:15, 39:10, 40:6, 74:14, 93:24, 95:1,

98:11, 98:17, 102:20
**Kugler'** [1] - 30:23
**Kugler's** [1] - 40:20

## L

**Langor** [1] - 100:17
**language** [36] - 61:2,
62:4, 62:6, 68:3, 68:7,
68:19, 68:24, 69:2,
69:9, 72:3, 72:5, 72:6,
72:8, 72:18, 73:11,
73:14, 73:16, 73:23,
74:7, 75:9, 76:13,
79:18, 80:5, 81:8,
81:14, 82:18, 82:21,
83:2, 83:12, 85:17,
85:19, 86:13, 86:14,
87:1, 87:16, 94:18
**lapsing** [1] - 77:14
**large** [2] - 27:18,
30:7
**largely** [1] - 9:5
**larger** [1] - 82:16
**Larry** [2] - 6:19, 6:24
**last** [9] - 11:12,
13:23, 20:9, 29:23,
30:14, 43:13, 53:23,
67:15, 87:9
**Laughter** [3] - 13:21,
27:14, 98:23
**law** [8] - 7:2, 18:6,
18:13, 19:15, 23:16,
26:5, 47:9, 47:10
**lawsuit** [1] - 50:3
**lawsuits** [3] - 40:21,
40:24
**lawyer** [7] - 37:25,
51:1, 51:9, 52:22,
97:13, 98:1, 102:7
**lawyers** [5] - 38:1,
49:6, 49:10, 51:5,
96:19
**leadership** [5] - 2:24,
32:7, 99:8, 103:7,
103:12
**leaning** [1] - 40:2
**least** [9] - 3:11, 12:4,
20:9, 33:2, 77:25,
84:16, 84:17, 93:4,
101:1
**leave** [12] - 13:3,
14:18, 50:20, 70:14,
71:9, 71:14, 71:17,
71:21, 75:16, 82:24,
90:5, 103:17
**leaves** [1] - 99:6
**led** [1] - 27:25
**leeway** [1] - 88:18

**left** [3] - 23:1, 78:5,
99:7
**legal** [6] - 9:11, 17:1,
31:21, 48:9, 49:8,
53:15
**legally** [2] - 23:10,
23:20
**legions** [1] - 48:8
**legitimate** [3] - 9:16,
10:10, 46:7
**legs** [1] - 99:2
**leisure** [1] - 88:18
**length** [1] - 27:5
**lens** [2] - 24:8, 24:9
**lenses** [1] - 23:9
**less** [5] - 23:5, 77:18,
85:15, 102:25
**letter** [1] - 77:3,
77:12, 79:5
**letters** [5] - 24:21,
26:6, 76:8, 101:8
**letting** [2] - 23:25,
25:12
**level** [3] - 22:3, 22:5
**LIABILITY** [1] - 1:4
**liability** [1] - 23:18
**liaison** [1] - 80:3
**lifted** [2] - 13:17,
13:24
**lightly** [1] - 82:17
**limit** [1] - 48:14
**limited** [9] - 22:16,
22:17, 22:21, 34:5,
38:7, 38:11, 38:23,
39:24, 51:25
**limiting** [1] - 49:16
**limits** [1] - 81:18
**line** [8] - 52:13,
57:19, 58:18, 78:24,
85:3, 85:4, 91:2
**lines** [1] - 78:20
**linger** [1] - 7:12
**list** [4] - 49:2, 59:12,
59:15, 63:6
**Listed** [1] - 1:13
**listed** [2] - 14:8,
49:11
**literally** [1] - 57:14
**litigation** [20] - 6:9,
8:23, 13:15, 18:5,
28:2, 29:17, 32:5,
36:5, 38:16, 39:21,
49:18, 49:21, 49:22,
54:4, 58:9, 58:12,
59:11, 70:16, 70:19,
102:9
**LITIGATION** [1] - 1:4
**live** [1] - 89:8
**LLC** [1] - 26:12
**lobby** [1] - 71:13

**Local** [2] - 75:18,
85:13
**locations** [1] - 12:11
**lockstep** [2] - 2:15,
93:13
**log** [12] - 46:19,
48:25, 49:2, 49:7,
51:12, 51:15, 51:16,
51:18, 52:23, 54:18,
54:19, 55:20
**Log** [1] - 46:25
**logged** [3] - 51:5,
52:20, 53:6
**logging** [3] - 48:14,
51:14, 60:14
**logical** [1] - 37:16
**Logs** [1] - 46:7
**lone** [1] - 32:13
**look** [21] - 8:15,
10:17, 12:24, 15:23,
19:1, 30:5, 31:25,
45:11, 54:21, 56:2,
56:6, 56:20, 57:13,
60:15, 76:16, 80:20,
84:12, 86:25, 95:15,
101:16
**looked** [2] - 18:18,
32:18
**looking** [14] - 4:2,
4:16, 11:2, 11:10,
15:25, 21:10, 22:23,
33:24, 40:12, 48:19,
48:22, 100:10,
101:20, 102:19
**looks** [2] - 36:5, 98:6
**loop** [1] - 25:6
**Lori** [2] - 27:17,
65:19
**Los** [1] - 100:6
**Losartan** [4] - 3:22,
98:18, 99:4, 101:25
**lost** [1] - 8:11
**lunch** [1] - 88:1

## M

**MAGISTRATE** [1] -
1:9
**mail** [8] - 4:16, 5:5,
50:20, 52:3, 54:8,
56:4, 56:15, 56:16
**mailed** [1] - 51:21
**mails** [7] - 52:21,
63:3, 63:6, 63:22,
64:24, 65:1, 76:8
**main** [2] - 38:25,
43:25
**major** [2] - 34:9,
48:13

**malpractice** [1] -
23:21
**manage** [3] - 66:25,
98:8, 101:1
**manageable** [1] - 5:7
**managing** [1] - 5:4
**manner** [1] - 31:15
**manufacture** [1] -
22:19
**manufacturer** [2] -
22:8, 96:24
**manufacturer's** [1] -
17:3
**manufacturers** [2] -
4:8, 22:23
**manufacturing** [3] -
22:4, 22:5, 22:7
**March** [2] - 27:20,
30:2
**mark** [3] - 70:21,
70:22
**marketing** [1] - 52:19
**Marlene** [3] - 6:18,
20:6, 102:13
**married** [1] - 14:8
**mass** [1] - 100:7
**master** [1] - 88:25
**Master** [17] - 5:11,
8:16, 8:19, 8:25,
12:23, 14:23, 15:3,
15:9, 15:19, 16:2,
16:10, 16:12, 17:11,
18:15, 19:12, 19:21,
39:18
**material** [1] - 94:4
**matter** [8] - 9:25,
39:6, 59:21, 65:18,
76:11, 92:24, 100:3,
103:21
**matters** [1] - 37:5
**MDL** [10] - 31:19,
35:10, 90:11, 93:13,
96:12, 100:2, 100:15,
101:3, 102:4, 102:10
**MDL's** [3] - 31:16,
32:1, 32:22
**mean** [40] - 7:24,
10:17, 11:24, 12:6,
14:17, 18:22, 28:14,
28:16, 28:17, 35:23,
36:12, 38:14, 48:15,
49:7, 52:24, 54:2,
54:8, 54:14, 58:9,
63:9, 63:22, 64:18,
68:7, 68:14, 70:6,
70:9, 70:14, 70:18,
71:18, 71:19, 74:17,
77:12, 78:23, 86:3,
88:16, 88:20, 96:23,
99:14, 99:23, 100:3

**meaningful** [1] - 82:4
**means** [4] - 23:16,
35:12, 35:14, 68:1
**meant** [1] - 34:5,
34:6
**mechanical** [2] -
63:14, 64:18
**mechanism** [1] -
25:7
**med** [1] - 36:23
**Medical** [1] - 18:17
**medical** [17] - 19:11,
19:15, 36:15, 36:25,
37:2, 37:3, 37:4, 37:6,
38:8, 42:7, 42:10,
42:11, 44:5, 44:6,
44:10, 55:15
**medications** [1] -
37:5
**meet** [7] - 2:24,
30:17, 33:6, 33:7,
76:18, 103:8, 103:18
**meeting** [1] - 7:20
**mention** [2] - 79:15,
89:15
**mentioned** [3] -
32:12, 34:17, 82:6
**merely** [1] - 25:14
**merit** [1] - 32:6
**message** [1] - 27:23
**method** [4] - 32:2,
33:5, 44:14, 84:10
**methodology** [1] -
22:24
**mid** [1] - 25:9
**middle** [1] - 15:3
**Middlesex** [1] - 91:6
**might** [8] - 3:1, 21:2,
27:3, 31:9, 60:6,
79:20, 98:7, 101:19
**million** [4] - 24:13,
73:8, 78:8, 78:9
**millions** [1] - 78:6
**mindful** [3] - 14:4,
25:6, 102:17
**minimize** [1] - 9:12
**Minnesota** [1] -
102:7
**minor** [1] - 20:4
**minute** [3] - 88:1,
88:4, 88:5
**misidentification** [1]
- 14:6
**misnaming** [1] -
12:25
**Miss** [9] - 26:10,
27:7, 30:24, 39:8,
42:20, 77:17, 79:1,
79:12, 83:22
**missed** [2] - 74:1,

76:12
 **missing** [1] - 56:18
 **misstate** [1] - 67:3
 **mistaken** [2] - 9:20,
11:10
 **mistakenly** [1] - 14:9
 **Mitchell** [1] - 1:6
 **mixed** [2] - 101:8
 **money** [1] - 41:1
 **Monitoring** [1] -
18:17
 **monitoring** [2] -
19:12, 19:16
 **month** [3] - 19:20,
25:9, 25:15
 **months** [6] - 5:19,
5:20, 6:21, 34:11,
62:16, 92:25
 **moot** [1] - 65:17
 **morning** [5] - 2:3,
8:17, 23:17, 25:1,
94:14
 **most** [12] - 3:20,
11:4, 17:6, 20:13,
21:5, 37:3, 38:4, 39:1,
44:4, 48:3, 61:22,
71:16
 **mostly** [1] - 20:10
 **mother** [1] - 38:14
 **motion** [20] - 13:6,
13:9, 13:18, 14:16,
14:19, 59:11, 68:4,
68:8, 68:11, 68:16,
77:10, 77:11, 77:13,
77:16, 83:20, 86:6,
86:7, 86:12, 86:18,
99:20
 **Motion** [2] - 9:2,
13:16
 **motions** [12] - 9:13,
9:19, 9:21, 10:10,
13:4, 13:24, 14:14,
14:17, 27:24, 77:18,
85:24, 87:5
 **motivated** [1] - 13:13
 **move** [12] - 28:25,
34:7, 35:18, 36:16,
78:15, 78:16, 79:9,
92:8, 94:3, 95:24,
99:8, 100:7
 **moved** [1] - 97:8
 **moving** [2] - 97:2
 **MR** [218] - 3:11, 3:17,
4:4, 4:13, 4:23, 4:25,
5:3, 5:13, 5:15, 5:23,
6:3, 6:8, 6:11, 6:15,
6:16, 7:1, 7:15, 7:22,
8:2, 8:5, 8:7, 8:9,
8:11, 8:17, 10:8,
10:22, 11:1, 12:4,

13:13, 13:20, 13:22,
13:25, 14:24, 15:6,
15:14, 15:20, 15:23,
16:4, 16:12, 16:16,
16:19, 17:13, 17:21,
18:1, 18:10, 18:22,
19:4, 19:13, 19:23,
21:25, 22:11, 22:13,
23:3, 23:8, 24:5,
24:12, 24:15, 24:18,
24:19, 25:1, 25:2,
25:5, 25:11, 26:1,
27:13, 35:19, 36:9,
37:15, 37:19, 41:15,
41:25, 42:6, 43:24,
44:20, 45:1, 46:10,
46:20, 48:19, 52:9,
53:4, 54:13, 55:18,
56:3, 56:11, 56:14,
56:21, 56:22, 57:1,
57:4, 57:8, 57:25,
58:7, 58:25, 60:8,
60:17, 60:19, 60:23,
61:1, 61:7, 61:8,
61:11, 61:14, 61:16,
61:25, 62:3, 62:9,
62:13, 62:16, 62:18,
62:21, 63:9, 63:12,
63:15, 63:19, 63:24,
64:1, 64:23, 65:4,
67:6, 67:20, 68:10,
70:4, 70:11, 71:18,
71:25, 74:3, 74:12,
74:17, 74:21, 75:19,
80:15, 80:19, 81:1,
81:4, 81:23, 82:25,
83:22, 84:20, 85:2,
85:14, 85:17, 85:23,
86:16, 87:6, 88:3,
88:4, 88:20, 89:6,
89:9, 89:14, 90:2,
90:7, 90:10, 90:14,
90:22, 91:4, 91:9,
91:10, 91:13, 91:17,
91:20, 92:3, 92:6,
92:7, 92:9, 92:11,
92:16, 92:17, 92:18,
92:22, 93:2, 93:7,
93:8, 93:9, 93:10,
93:21, 94:1, 94:7,
94:12, 94:14, 94:15,
94:21, 94:22, 94:25,
95:8, 95:10, 95:14,
96:1, 96:13, 96:16,
96:20, 96:24, 97:2,
97:5, 97:8, 97:19,
97:21, 97:25, 98:10,
98:16, 98:21, 99:1,
99:12, 99:21, 100:12,
100:16, 100:21,
100:25, 101:10,

101:13, 101:24,
102:7, 102:12,
102:15, 102:22,
103:2, 103:5, 103:15
 **MS** [120] - 6:18, 6:24,
20:6, 20:18, 20:22,
21:18, 21:22, 26:9,
26:11, 26:19, 27:9,
27:15, 28:14, 28:16,
29:2, 29:11, 30:13,
31:18, 32:11, 32:17,
33:12, 34:18, 35:2,
39:17, 40:13, 41:2,
41:7, 41:18, 42:21,
42:25, 43:2, 43:10,
43:18, 45:5, 46:3,
46:5, 49:12, 49:14,
50:4, 50:6, 50:14,
50:18, 50:23, 51:13,
51:21, 52:6, 53:18,
54:1, 54:11, 55:4,
62:19, 65:7, 65:19,
66:6, 66:11, 67:9,
67:11, 67:13, 67:15,
67:17, 67:19, 67:21,
67:23, 68:18, 68:22,
69:5, 69:13, 70:2,
71:1, 71:12, 71:23,
72:1, 72:22, 73:2,
73:10, 73:14, 73:21,
73:23, 74:5, 74:9,
75:2, 75:9, 75:13,
75:16, 75:21, 76:5,
76:16, 77:7, 77:25,
78:2, 78:18, 79:3,
79:14, 79:22, 79:25,
80:4, 80:8, 80:10,
80:17, 81:22, 82:1,
82:11, 83:15, 83:20,
83:24, 84:3, 84:6,
84:8, 84:12, 85:7,
85:11, 85:16, 86:13,
86:21, 86:25, 87:9,
87:15, 87:18, 95:19,
102:14
 **multiple** [3] - 17:9,
19:14, 69:19
 **multiply** [2] - 45:16,
45:18
 **mutual** [4] - 73:15,
73:17, 77:10, 87:16
 **Mylan** [4] - 6:16,
6:17, 6:20, 7:9

## N

 **nail** [1] - 25:12
 **name** [7] - 2:21,
16:13, 55:4, 59:19,
59:21, 59:22, 60:14

 **named** [1] - 17:25
 **names** [1] - 12:10
 **Nami** [1] - 1:23
 **narrow** [2] - 26:22,
88:22
 **narrowing** [2] -
10:16, 32:20
 **national** [1] - 16:24
 **nationwide** [2] -
16:2, 16:15
 **NDEA** [4] - 101:12,
101:13, 101:17, 102:5
 **necessarily** [3] -
36:9, 49:20, 100:10
 **necessary** [4] -
22:22, 60:15, 72:12,
81:17
 **necessity** [1] - 64:4
 **need** [34] - 9:2,
11:13, 18:24, 21:2,
21:9, 23:11, 24:4,
24:23, 25:22, 28:1,
28:19, 33:19, 38:6,
38:10, 40:2, 48:25,
51:2, 51:4, 52:8,
53:20, 56:2, 56:19,
59:25, 62:25, 65:20,
74:15, 79:16, 82:10,
89:2, 89:25, 92:20,
93:12, 103:10, 103:14
 **needed** [2] - 72:16,
83:14
 **needs** [4] - 2:16,
47:4, 71:10, 76:25
 **negotiate** [2] - 30:25,
35:6
 **negotiated** [1] -
31:11
 **negotiating** [2] -
17:17, 43:14
 **negotiation** [1] -
42:2
 **never** [7] - 9:18,
38:4, 40:9, 46:23,
48:4, 57:25
 **new** [10] - 11:17,
12:3, 21:13, 25:18,
31:18, 32:21, 73:11,
76:10, 102:4
 **NEW** [1] - 1:1
 **New** [16] - 1:7, 18:12,
18:13, 23:16, 90:12,
91:23, 91:24, 92:1,
92:2, 92:5, 92:25,
95:5, 95:10, 96:2,
100:20, 101:1
 **news** [2] - 2:11
 **newspaper** [1] -
74:21
 **next** [25] - 3:23, 4:21,

7:16, 7:23, 7:25, 8:4,
8:9, 8:13, 8:16, 15:25,
20:3, 26:2, 31:7, 31:8,
47:16, 71:24, 73:24,
74:3, 75:21, 80:10,
87:21, 88:11, 90:3
 **nexus** [1] - 92:25
 **nice** [1] - 15:10
 **NIGH** [17] - 3:17, 4:4,
4:13, 5:3, 6:15, 15:6,
15:14, 15:20, 15:23,
16:4, 16:12, 16:16,
92:3, 92:6, 92:22,
94:22, 101:24
 **Nigh** [3] - 4:9, 29:25,
94:17
 **Nigh's** [1] - 92:11
 **nine** [2] - 84:13, 89:1
 **nitrosamine** [1] -
102:9
 **nitrosamines** [1] -
102:1
 **NMBA** [4] - 101:9,
101:10, 101:24,
101:25
 **non** [6] - 51:1, 53:3,
54:22, 54:25, 55:1,
58:20
 **non-in-house** [1] -
53:3
 **non-lawyer** [1] - 51:1
 **non-relevant** [4] -
54:22, 54:25, 55:1,
58:20
 **none** [3] - 3:11,
103:16
 **nonetheless** [1] -
72:5
 **normally** [2] - 37:7,
44:17
 **noted** [2] - 40:18,
68:24
 **notes** [2] - 7:7, 101:7
 **nothing** [5] - 47:8,
55:12, 56:6, 75:14,
76:11
 **notice** [2] - 76:22,
96:1
 **noticed** [1] - 71:14
 **notify** [2] - 79:5, 80:2
 **nowadays** [1] - 95:5
 **nuances** [1] - 18:19
 **Number** [1] - 2:9
 **number** [13] - 8:21,
14:1, 17:23, 20:3,
26:21, 35:13, 44:3,
68:23, 76:1, 92:16,
98:18, 99:16, 100:11
 **NUMBER** [1] - 1:4
 **numbering** [1] -

44:14
**numbers** [1] - 44:16
**nuts** [1] - 14:22

## O

**oath** [1] - 70:25
**OBGYN** [1] - 55:15
**objection** [4] - 21:23, 94:19, 99:10, 99:20
**objections** [1] - 99:11
**obligation** [7] - 12:16, 12:20, 70:16, 77:10, 79:4, 82:17, 83:3
**obligations** [4] - 30:16, 55:8, 72:14, 83:5
**obtain** [1] - 24:10
**obviously** [13] - 17:15, 30:23, 31:4, 40:15, 42:11, 51:25, 65:23, 66:24, 70:6, 71:18, 72:9, 82:2, 87:6
**occurred** [3] - 4:7, 8:21, 13:16
**OF** [1] - 1:1
**offend** [1] - 35:10
**offered** [1] - 38:11
**office** [1] - 91:15
**Official** [1] - 1:23
**often** [1] - 32:22
**one** [84] - 7:2, 9:15, 16:10, 17:22, 17:24, 18:7, 20:18, 21:9, 22:1, 23:10, 29:7, 31:24, 34:17, 35:20, 35:22, 38:25, 39:11, 39:15, 40:2, 40:8, 41:9, 42:6, 42:18, 44:2, 44:12, 45:15, 46:13, 46:14, 54:10, 54:18, 54:19, 55:22, 55:23, 56:5, 56:22, 57:11, 57:19, 62:24, 64:2, 67:15, 68:23, 69:17, 71:4, 71:24, 73:8, 74:1, 74:2, 74:9, 75:21, 76:13, 77:10, 78:10, 78:22, 83:4, 84:12, 84:15, 85:12, 86:3, 87:9, 87:10, 87:16, 89:19, 89:21, 90:3, 93:11, 93:15, 94:7, 95:9, 96:3, 96:17, 97:21, 98:24, 101:4, 101:12,

101:15, 101:22, 101:25, 102:7, 102:18
**One** [1] - 1:7
**onerous** [1] - 17:6
**ones** [6] - 23:14, 31:20, 54:18, 66:13, 66:14, 84:4
**ongoing** [1] - 3:13
**open** [6] - 2:1, 10:13, 74:19, 88:9, 93:5, 103:6
**operate** [1] - 12:11
**opinion** [2] - 50:10, 101:17
**opinions** [2] - 48:8, 51:8
**opportunities** [3] - 14:5, 32:25, 33:2
**opportunity** [4] - 9:18, 10:17, 60:4, 90:10
**opposed** [3] - 38:16, 42:18, 98:1
**ORAL** [1] - 1:5
**Order** [28] - 4:15, 11:25, 12:9, 12:10, 12:20, 38:20, 40:6, 40:15, 62:24, 64:2, 69:24, 70:13, 70:21, 71:7, 71:11, 78:4, 78:13, 79:2, 79:4, 79:6, 79:8, 82:8, 83:8, 84:18, 84:22, 85:4
**order** [22] - 2:19, 4:17, 10:24, 26:20, 32:13, 36:3, 60:9, 65:9, 66:9, 69:17, 74:24, 80:18, 90:18, 92:23, 93:14, 93:15, 94:16, 95:3, 96:7, 98:2, 98:12, 98:14
**ordered** [1] - 42:13
**ordering** [1] - 38:1
**Orders** [2] - 32:19, 40:18
**Oregon** [1] - 100:5
**organized** [1] - 9:22
**organizing** [1] - 45:21
**originally** [1] - 99:22
**Orlan,o** [1] - 91:2
**Orlando** [7] - 90:6, 90:8, 90:13, 90:16, 91:12, 93:1, 94:17
**ORLANDO** [15] - 90:7, 90:10, 91:4, 91:10, 91:13, 91:17, 91:20, 92:7, 92:9, 92:11, 92:16, 93:7, 93:9, 94:14, 94:21

**Orlowsky** [2] - 91:13, 93:5
**otherwise** [2] - 14:2, 86:20
**ought** [3] - 19:25, 40:22, 100:9
**outset** [1] - 23:22
**outside** [6] - 18:12, 48:16, 48:17, 49:19, 52:5, 53:3
**over-designate** [2] - 73:6, 79:11
**over-designation** [1] - 72:24
**overarching** [1] - 66:14
**overcome** [1] - 66:20
**overseas** [3] - 6:6, 89:18, 89:22

## P

**packet** [2] - 44:11, 44:24
**Page** [2] - 80:14, 81:4
**page** [31] - 20:10, 46:18, 55:24, 58:17, 67:2, 67:5, 67:22, 67:23, 67:25, 68:22, 71:25, 72:1, 72:2, 72:18, 73:24, 74:2, 75:7, 75:22, 76:17, 79:17, 80:11, 80:21, 80:22, 80:25, 81:1, 84:6, 84:7, 84:11, 85:7, 85:10, 85:11
**pages** [6] - 40:12, 44:4, 45:13, 45:17, 78:8, 78:9
**paper** [2] - 44:6, 94:9
**paragraph** [18] - 72:4, 72:8, 72:17, 75:7, 80:15, 80:20, 80:21, 80:23, 81:1, 81:5, 81:13, 82:1, 83:13, 84:13, 84:15, 85:11, 89:11
**Paragraph** [1] - 75:23
**part** [15] - 17:6, 29:11, 42:10, 50:8, 54:3, 73:4, 83:16, 83:23, 96:11, 100:15, 101:11, 101:15, 101:17, 102:4, 102:5
**participate** [3] - 24:2, 25:15, 93:17
**particular** [8] -

23:13, 44:2, 52:17, 58:16, 59:21, 60:14, 71:10, 95:17
**particularly** [1] - 8:22
**parties** [12] - 10:15, 21:8, 22:1, 59:10, 64:6, 70:20, 72:13, 78:24, 83:17, 88:17, 89:22, 90:4
**party** [10] - 12:25, 70:8, 72:7, 79:5, 80:2, 80:7, 83:20, 84:18, 84:23, 86:18
**pass** [1] - 22:15
**passes** [1] - 77:15
**past** [3] - 27:16, 37:2, 65:21
**paste** [1] - 19:7
**patent** [2] - 65:12
**path** [2] - 27:18, 31:13
**pause** [1] - 24:6
**pay** [1] - 40:25
**pen** [1] - 94:9
**pending** [4] - 65:16, 91:7, 92:14, 93:9
**people** [9] - 6:16, 21:9, 21:14, 23:1, 26:17, 47:15, 78:24, 83:6, 89:17
**per** [2] - 44:24, 45:13
**percent** [2] - 37:6, 54:9, 93:25
**perfect** [3] - 5:20, 40:15, 95:4
**perfectly** [2] - 66:2, 95:23
**perhaps** [10] - 11:4, 11:15, 65:22, 66:13, 76:10, 77:12, 79:16, 79:18, 98:12, 101:18
**period** [2] - 11:15, 57:10
**peripheral** [4] - 20:4, 21:8, 25:20, 25:24
**permitted** [3] - 10:18, 46:23, 47:23
**PEROCKI** [16] - 43:24, 44:20, 45:1, 54:13, 55:18, 56:3, 56:11, 56:14, 56:21, 60:17, 60:19, 60:23, 61:1, 61:7, 61:11, 61:14
**Perocki** [1] - 43:24
**person** [7] - 7:20, 42:9, 51:1, 52:3, 70:23, 71:14, 79:6
**person's** [3] - 36:25,

38:2, 49:5
**personal** [1] - 5:24
**personally** [1] - 48:6
**persons** [1] - 68:24
**perspective** [5] - 21:7, 22:7, 41:5, 43:12, 89:16
**petition** [4] - 72:10, 73:18, 100:6, 102:16
**Pharmaceuticals** [1] - 26:12
**pharmacy** [2] - 36:11, 37:10
**phase** [5] - 28:10, 29:13, 29:16, 33:16, 33:22
**phone** [3] - 7:17, 7:25, 15:16
**physician** [1] - 42:12
**physicians** [4] - 36:21, 36:22, 41:20
**picked** [1] - 52:11
**picking** [1] - 17:23
**picture** [1] - 36:25
**pills** [3] - 3:20, 3:23, 17:4
**pine** [1] - 32:13
**place** [6] - 2:1, 3:3, 9:10, 9:23, 55:25, 88:9
**placed** [1] - 83:1
**plaintiff** [26] - 12:17, 16:11, 16:13, 18:12, 31:1, 32:15, 34:20, 34:23, 36:18, 38:12, 38:16, 39:7, 41:11, 43:25, 44:3, 44:8, 44:9, 44:23, 44:24, 45:9, 45:13, 58:22, 68:1, 75:10, 81:6, 86:8
**plaintiff's** [1] - 97:13
**plaintiffs** [57] - 3:15, 4:9, 6:19, 8:14, 8:18, 13:8, 25:18, 26:21, 26:22, 27:20, 28:20, 29:18, 30:8, 31:23, 34:12, 34:13, 35:8, 35:13, 37:6, 37:22, 38:4, 38:23, 39:1, 39:3, 39:12, 39:15, 40:19, 43:20, 44:13, 44:15, 45:15, 45:17, 45:24, 49:15, 55:9, 55:10, 56:9, 59:3, 59:18, 60:11, 64:20, 68:24, 72:4, 73:5, 73:7, 76:13, 76:20, 77:23, 77:24, 78:16, 79:9, 79:18, 80:2,

82:3, 82:19, 91:23, 103:17

**plaintiffs'** [15] - 26:24, 26:25, 28:3, 28:7, 29:21, 32:7, 33:22, 38:22, 43:3, 43:19, 67:4, 79:12, 89:16, 96:19, 98:1

**plan** [1] - 58:11

**planning** [1] - 93:5

**plans** [1] - 58:16

**plate** [1] - 47:1

**play** [2] - 21:3, 48:12

**player** [1] - 21:21

**plays** [1] - 48:9

**Plaza** [1] - 1:7

**pleaded** [1] - 13:8

**pleadings** [1] - 10:17

**pleasant** [2] - 26:15, 27:11

**pleasure** [3] - 66:4, 87:25, 88:2

**pled** [1] - 99:17

**pledge** [1] - 25:16

**plenty** [1] - 39:6

**plow** [2] - 66:4, 88:2

**plus** [1] - 12:6

**PMC** [2] - 28:5, 91:25

**point** [22] - 3:21, 5:18, 19:25, 21:24, 26:22, 30:4, 37:18, 39:22, 43:8, 49:7, 50:24, 52:10, 54:2, 54:3, 56:14, 65:24, 66:19, 66:22, 68:13, 71:2, 79:15, 99:15

**poised** [2] - 8:20, 14:3

**policies** [1] - 24:23

**policy** [2] - 24:13, 30:6

**polled** [1] - 99:14

**pops** [2] - 49:4, 52:18

**portal** [1] - 5:6

**portion** [3] - 47:4, 57:7, 74:25

**portions** [4] - 52:22, 52:23, 74:8, 75:8

**Portland** [1] - 100:5

**position** [9] - 9:3, 11:1, 23:11, 26:5, 71:12, 72:11, 80:20, 81:6, 99:23

**positively** [1] - 102:24

**possible** [6] - 11:3, 41:6, 47:8, 47:9, 93:14, 102:17

**post** [1] - 101:3

**potential** [13] - 24:22, 38:19, 68:25, 69:4, 69:5, 69:7, 69:12, 69:22, 70:1, 71:13, 71:15, 71:19, 78:3

**potentially** [6] - 36:11, 45:12, 45:17, 45:22, 69:9, 89:1

**practical** [2] - 81:19, 100:2

**Practice** [2] - 9:2, 13:16

**practice** [1] - 59:11

**preauthorize** [1] - 48:1

**precedent** [2] - 13:20, 88:17

**precisely** [1] - 18:1

**predominantly** [2] - 53:15

**preemption** [3] - 12:2, 12:15, 14:22

**prejudice** [2] - 10:9, 25:13

**prejudices** [1] - 53:11

**prejudicial** [1] - 68:7

**preliminary** [1] - 49:14

**prelude** [1] - 2:10

**prepared** [4] - 3:8, 48:11, 99:8, 100:1

**preparing** [2] - 74:7, 75:10

**prescribing** [1] - 37:3

**present** [1] - 25:8

**presently** [1] - 91:7

**presumably** [2] - 25:5, 45:15

**presumptive** [1] - 49:1

**presumptively** [2] - 27:1, 43:14

**pretrial** [2] - 68:11, 93:16

**pretty** [1] - 70:7

**previewing** [1] - 42:8

**primary** [1] - 56:14

**primer** [1] - 23:16

**principles** [2] - 34:1, 62:24

**printed** [1] - 67:8

**priority** [1] - 42:24

**Privilege** [3] - 46:7, 46:25, 47:11

**privilege** [14] - 46:11, 46:19, 46:21, 46:22, 47:1, 47:7, 47:10,

50:22, 51:8, 51:18, 51:19, 52:5, 52:15, 55:20

**privileged** [15] - 47:14, 48:10, 48:17, 48:18, 48:25, 50:12, 51:4, 51:10, 52:4, 52:12, 52:20, 53:14, 83:3, 83:9

**privileges** [1] - 52:15

**privity** [2] - 23:14, 23:22

**probe** [1] - 58:13

**problem** [12] - 11:20, 11:22, 38:20, 51:6, 51:11, 62:17, 68:9, 78:14, 82:22, 87:3, 87:4, 103:9

**problems** [3] - 44:25, 45:24, 77:20

**procedure** [7] - 13:11, 14:2, 14:14, 20:22, 21:15, 33:10, 40:16, 44:8, 45:25, 65:15, 74:25, 75:18, 78:11, 79:23, 86:22, 100:13

**proceed** [1] - 100:1

**Process** [1] - 38:20

**process** [36] - 5:2, 5:16, 5:20, 6:19, 6:21, 7:4, 9:9, 10:9, 11:5, 11:13, 13:5, 26:14, 28:4, 28:11, 28:17, 30:20, 30:22, 31:16, 31:23, 32:19, 33:4, 33:20, 33:24, 34:3, 35:10, 35:21, 38:5, 38:16, 44:17, 45:19, 76:3, 76:14, 76:18, 82:12, 86:23, 100:15

**processed** [1] - 44:5

**produce** [9] - 44:18, 55:8, 60:2, 60:7, 60:10, 63:2, 64:25, 65:1, 89:22

**produced** [18] - 39:1, 43:19, 43:20, 45:9, 48:25, 61:12, 61:23, 63:16, 63:23, 65:13, 73:8, 78:7, 83:9, 88:24, 88:25, 89:3, 89:12

**producing** [4] - 55:10, 55:16, 59:5, 72:7

**product** [28] - 36:3, 36:19, 38:9, 50:4, 50:5, 50:13, 51:16, 51:23, 53:14, 54:22,

54:23, 54:25, 55:1, 55:4, 55:12, 56:7, 58:16, 58:18, 58:20, 58:24, 59:20, 59:21, 59:22, 60:14, 67:16, 81:11

**production** [14] - 43:4, 48:24, 49:6, 49:8, 59:17, 60:12, 64:3, 64:15, 65:11, 65:16, 65:24, 81:10, 87:23

**productions** [1] - 89:17

**productive** [3] - 20:9, 21:5, 26:14

**PRODUCTS** [1] - 1:3

**products** [24] - 17:9, 36:3, 36:10, 38:9, 53:23, 53:25, 54:2, 54:17, 54:19, 57:9, 57:14, 57:15, 57:19, 57:20, 57:21, 58:1, 58:8, 58:12, 59:4, 59:9, 59:13, 59:14, 59:15

**professional** [2] - 55:8, 55:11

**profile** [34] - 17:15, 17:16, 17:19, 26:24, 27:5, 27:7, 28:12, 28:13, 29:8, 30:12, 31:18, 31:22, 32:15, 32:20, 32:22, 33:9, 34:2, 34:5, 34:21, 35:1, 35:3, 35:9, 35:24, 36:2, 36:18, 37:13, 38:21, 39:7, 39:11, 39:23, 40:1, 41:16, 45:9, 65:5

**progress** [1] - 7:18

**progressed** [1] - 29:24

**promise** [2] - 2:8, 92:20

**promptly** [3] - 42:23, 65:10, 81:20

**proof** [6] - 28:9, 30:18, 30:21, 33:19

**proposal** [5] - 15:8, 45:4, 45:5, 90:11, 91:10

**propose** [4] - 36:2, 36:18, 73:11, 90:19

**proposed** [8] - 4:11, 11:6, 11:9, 11:14, 38:22, 49:18, 81:8, 90:16

**proposing** [4] - 39:7, 76:12, 76:15, 76:16

**proscribing** [2] - 36:21, 39:24

**prosecute** [1] - 22:22

**protect** [2] - 25:22, 69:9

**protected** [4] - 9:17, 71:5, 73:5, 73:6

**protection** [2] - 77:14, 77:15

**protective** [2] - 69:16, 95:18

**Protective** [8] - 69:24, 70:13, 70:20, 71:7, 78:4, 84:18, 84:22, 85:4

**protocol** [23] - 4:12, 4:15, 7:14, 8:14, 8:24, 26:8, 26:20, 27:1, 43:3, 43:13, 43:21, 43:23, 44:2, 44:12, 44:22, 45:2, 60:13, 61:3, 61:6, 61:12, 61:19, 61:23, 62:5

**Protocol** [6] - 61:14, 63:1, 63:8, 63:23, 64:7, 64:15

**prove** [1] - 46:16

**provide** [4] - 31:2, 36:23, 41:19, 58:11

**provided** [1] - 69:14

**provider** [1] - 37:8

**providers** [3] - 36:16, 36:22, 36:24

**providing** [2] - 36:11, 41:20

**provision** [13] - 49:15, 65:12, 73:24, 75:2, 75:4, 81:6, 81:16, 82:2, 83:12, 84:1, 85:7, 87:11, 100:24

**provisions** [3] - 49:17, 82:9, 82:16

**public** [4] - 74:18, 74:19, 74:22

**published** [3] - 3:18, 3:19, 4:6

**pull** [1] - 64:12

**pulled** [2] - 40:10, 40:19

**purpose** [4] - 61:9, 62:4, 64:2, 64:3

**purposes** [4] - 22:11, 25:13, 25:17, 60:13

**pursuant** [4] - 5:10, 6:1, 8:19, 61:23

**push** [1] - 58:7

**pushing** [1] - 34:10

**put** [18] - 11:5, 15:15, 21:10, 24:2, 30:15,

38:15, 40:6, 43:15,
50:16, 60:18, 77:22,
79:8, 81:15, 81:16,
88:15, 94:9, 98:19,
101:21
**puts** [2] - 83:7
**putting** [7] - 44:16,
59:1, 60:3, 78:16,
93:16, 94:19, 97:25

## Q

**qualifies** [1] - 47:7
**quality** [1] - 58:5
**questioned** [1] - 71:3
**questions** [4] - 3:2,
93:3, 98:24, 101:23
**quibble** [1] - 22:6
**quick** [2] - 35:7, 36:5
**quickly** [4] - 31:5,
34:10, 35:18, 67:1
**quite** [2] - 20:19,
30:25
**quote** [8] - 22:10,
23:24, 32:13, 32:14,
34:17, 39:12, 43:11,
57:21

## R

**raise** [6] - 10:5,
10:10, 19:24, 20:14,
27:3, 99:19
**raised** [4] - 10:6,
16:9, 56:23, 99:15
**raising** [1] - 66:22
**rather** [6] - 11:7,
42:20, 53:10, 78:16,
89:18, 102:25
**RE** [1] - 1:3
**reach** [8] - 21:5,
51:15, 86:15, 90:17,
93:22, 95:1, 96:4,
98:11
**reaction** [1] - 12:9
**read** [5] - 11:1, 48:8,
51:8, 80:22, 81:2
**readily** [1] - 63:2
**ready** [4] - 14:10,
31:8, 35:25, 99:6
**real** [4] - 10:16, 51:6,
84:12, 92:16
**really** [20] - 6:13,
12:16, 12:18, 22:23,
28:23, 33:17, 33:25,
34:11, 35:5, 35:14,
38:10, 39:6, 49:1,
66:18, 70:7, 81:17,
87:3, 87:22, 88:21,

102:19
**reason** [10] - 4:10,
16:22, 43:25, 47:14,
53:20, 59:15, 65:25,
71:10, 82:23, 99:2
**reasonable** [2] -
39:2, 45:8
**reasonably** [1] - 53:1
**reasons** [1] - 19:8
**receiving** [1] - 59:18
**recent** [1] - 31:20
**recently** [1] - 101:4
**recess** [1] - 88:8
**recitation** [1] - 81:12
**recited** [1] - 41:19
**recommended** [1] -
35:20
**record** [6] - 2:9, 2:21,
3:1, 11:18, 84:17,
84:22, 102:8, 103:13
**records** [16] - 36:11,
37:6, 37:10, 37:11,
38:8, 38:9, 41:13,
41:24, 44:5, 44:6,
44:10, 44:18, 44:22,
55:16
**red** [2] - 67:5, 85:3
**redact** [5] - 52:22,
52:23, 57:14, 59:9,
87:7
**redacted** [5] - 55:24,
56:1, 58:1, 58:17,
59:20
**redacting** [1] - 54:23,
59:13, 59:16
**redaction** [3] - 52:23,
58:16, 60:15
**redactions** [1] -
55:25
**redraft** [1] - 64:17
**reduce** [1] - 9:1
**refer** [1] - 78:21
**reference** [1] - 86:14
**referred** [1] - 84:8
**referring** [1] - 87:10
**refine** [1] - 9:12
**reflect** [1] - 25:18
**reflecting** [1] - 16:25
**reflection** [1] - 22:3
**reformulation** [1] -
81:16
**regard** [3] - 3:10,
3:16, 95:25
**regarding** [3] - 34:2,
89:19, 90:1
**regulation** [2] -
64:10, 64:11
**regulatory** [1] - 4:1
**relate** [1] - 28:8
**related** [7] - 29:12,

49:17, 51:14, 68:16,
90:5, 100:24, 102:21
**relates** [4] - 26:23,
43:3, 49:22, 80:11
**relatively** [1] - 27:11
**release** [1] - 102:23
**relevance** [1] - 60:5
**relevant** [24] - 38:8,
54:22, 54:25, 55:1,
55:3, 55:5, 55:9,
55:16, 56:12, 56:16,
56:17, 56:25, 57:2,
57:12, 57:20, 57:22,
58:20, 58:24, 59:5,
59:6, 59:10, 62:1,
64:20, 65:16
**relief** [2] - 9:8, 72:25
**reluctant** [1] - 88:17
**rely** [4] - 55:9, 55:14,
55:18
**remain** [5] - 68:5,
75:11, 76:19, 77:1
**remaining** [3] - 7:3,
7:8, 25:9
**remains** [1] - 77:5
**remember** [4] -
29:22, 64:9, 87:3,
101:9
**remove** [3] - 72:25,
73:7, 97:11
**removed** [4] - 77:15,
96:13, 96:21, 97:6
**rep** [5] - 16:5, 16:6,
16:17, 18:7, 18:9
**report** [4] - 3:7,
27:10, 55:25, 58:4
**Reporter** [1] - 1:23
**reporter** [2] - 2:21,
74:21
**reports** [4] - 58:5,
58:8, 58:11, 58:15
**repository** [1] - 90:4
**represent** [3] - 6:23,
18:7, 96:23
**representation** [3] -
46:15, 55:12, 55:19
**representatives** [3] -
17:2, 18:3, 19:14
**represented** [2] -
18:15, 45:15
**representing** [1] -
82:15
**reps** [7] - 16:18,
17:7, 17:10, 17:16,
17:20, 17:25, 34:22
**request** [6] - 26:21,
59:7, 60:4, 64:5,
72:25, 100:1
**requests** [4] - 59:2,
59:3, 85:12, 89:13

**require** [1] - 66:24
**required** [2] - 59:12,
64:10
**requirements** [1] -
33:7
**requiring** [1] - 64:3
**research** [2] - 49:5,
52:19
**reservation** [2] -
24:21, 26:5
**resident** [1] - 18:8
**resolution** [1] -
102:24
**resolve** [1] - 20:12
**respect** [6] - 3:12,
12:5, 23:12, 43:2,
88:21, 94:4
**respectfully** [2] -
16:21, 46:22
**respective** [2] - 69:1,
90:24
**respond** [3] - 39:22,
71:1, 76:24
**responding** [1] -
3:13
**response** [2] - 15:1,
98:2
**responsibilities** [2] -
55:8, 55:11
**rest** [3] - 71:17,
81:24, 85:17
**results** [1] - 3:19
**retailer** [1] - 22:20,
23:22
**retailers** [1] - 22:20,
23:14
**review** [2] - 44:17,
48:7
**reviewed** [2] - 11:17,
48:6
**revisit** [2] - 46:1,
49:9
**ridiculous** [2] -
46:19, 46:20
**rigamarole** [1] -
21:13
**rights** [4] - 9:16,
9:24, 24:21, 26:6
**rise** [3] - 2:2, 88:10,
103:20
**risk** [2] - 76:6, 78:3
**RND** [2] - 49:25,
50:11
**road** [2] - 30:25,
34:11
**robust** [4] - 36:18,
39:22, 39:23, 40:3
**role** [1] - 48:12
**roles** [1] - 48:9
**roll** [1] - 34:9

**rolling** [3] - 51:24,
89:12
**room** [5] - 2:25,
25:25, 85:19, 86:2,
103:12
**roped** [1] - 70:25
**roughly** [1] - 7:5
**routed** [1] - 52:8
**Ruben** [1] - 8:17
**rule** [2] - 2:17, 10:10
**Rule** [19] - 9:2, 9:8,
9:10, 13:15, 13:18,
13:24, 14:14, 14:16,
26:7, 30:16, 80:24,
82:9, 85:13, 85:21,
86:4, 86:8, 86:23,
87:1, 87:8
**ruled** [1] - 74:10
**Rules** [4] - 10:18,
72:14, 75:18, 86:10
**rules** [2] - 54:16,
65:12
**ruling** [1] - 47:22
**rulings** [2] - 59:8,
59:9
**run** [3] - 51:5, 90:20,
91:10
**Runo** [2] - 91:13,
93:5

## S

**safe** [1] - 2:13
**safer** [1] - 52:13
**sail** [1] - 41:10
**sake** [1] - 102:20
**sales** [2] - 54:8,
55:25
**sanction** [1] - 84:9
**sanctions** [6] - 72:6,
72:10, 73:4, 73:18,
73:19, 87:11
**Sartan** [4] - 53:24,
55:14, 56:23, 58:23
**Sartans** [5] - 3:24,
57:2, 57:9, 99:25,
101:6
**save** [1] - 89:19
**saving** [1] - 2:12
**saw** [2] - 65:20,
75:24
**scanned** [1] - 44:6
**scary** [1] - 87:14
**scenario** [1] - 50:6
**scenarios** [1] - 54:6
**schedule** [2] - 14:5,
93:16
**scheduling** [1] - 52:1
**SCHNEIDER** [1] - 1:9

**scope** [8] - 12:9, 34:9, 42:12, 43:7, 59:7, 60:12, 99:5, 100:1
**scratched** [1] - 75:10
**screening** [1] - 13:5, 14:14, 17:6
**scrub** [1] - 83:8
**scrutinize** [2] - 38:18, 47:6
**sea** [1] - 99:2
**seal** [4] - 74:25, 85:13, 86:7, 86:20
**sealed** [1] - 2:12
**sealing** [9] - 68:6, 68:14, 75:3, 75:4, 75:18, 85:7, 86:10, 86:23, 87:3
**search** [3] - 48:23, 64:21, 88:22
**searched** [1] - 49:10
**searches** [1] - 52:11
**searching** [2] - 41:18, 52:17
**seat** [1] - 2:5
**seated** [1] - 2:4
**seats** [1] - 2:6
**second** [1] - 46:6
**secret** [2] - 47:8, 98:21
**section** [1] - 74:3
**see** [34] - 9:3, 10:21, 15:23, 16:23, 18:14, 24:21, 26:8, 28:8, 30:17, 38:10, 46:8, 46:9, 47:3, 56:2, 58:13, 58:16, 59:25, 60:1, 60:20, 64:25, 69:5, 69:23, 71:24, 72:3, 74:8, 78:11, 79:1, 79:12, 80:13, 84:6, 86:1, 86:14, 87:21, 95:2
**See** [1] - 1:13
**seeing** [2] - 24:8, 32:23
**seek** [2] - 9:7, 70:5
**seem** [4] - 7:18, 12:5, 12:20, 78:1
**select** [1] - 17:2
**selected** [1] - 38:23
**selection** [1] - 22:18
**self** [1] - 26:13
**selling** [1] - 23:18
**send** [5] - 15:7, 15:13, 51:20, 77:11, 79:5
**sense** [2] - 17:12, 19:6, 23:19, 40:15, 46:15, 46:17, 95:4,

98:6, 98:13, 99:24, 101:21, 102:21
**sensible** [1] - 19:9
**sensitive** [2] - 45:14, 52:1
**sent** [3] - 4:13, 24:20, 44:24
**sentence** [7] - 71:20, 80:24, 81:5, 81:10, 81:13, 85:1, 85:12
**separate** [2] - 16:20, 74:14
**September** [1] - 100:6
**serious** [1] - 46:11
**served** [3] - 4:15, 6:9, 7:8
**service** [15] - 4:12, 4:15, 4:17, 4:18, 5:10, 5:16, 5:17, 5:20, 6:1, 6:19, 6:20, 7:2, 7:9, 7:14, 8:14
**serving** [4] - 5:7, 5:22, 21:14, 35:13
**set** [5] - 3:3, 19:5, 19:9, 33:16, 88:17
**setting** [2] - 53:6, 77:13
**seven** [2] - 81:20, 83:16
**seventeenth** [4] - 11:8, 14:4, 14:10, 19:22
**several** [4] - 4:5, 4:7, 72:12, 91:22
**severing** [1] - 24:1
**shall** [2] - 72:9, 73:18
**Shanov** [1] - 96:10, 98:7
**share** [1] - 8:25
**shared** [2] - 30:22, 32:4
**sheet** [30] - 26:25, 27:6, 28:15, 28:16, 29:8, 31:1, 31:8, 31:10, 33:10, 33:20, 34:4, 34:7, 34:21, 34:25, 35:6, 35:17, 35:23, 37:13, 37:14, 37:22, 40:8, 40:9, 41:12, 42:2, 44:9, 44:10, 44:23, 59:14
**sheets** [15] - 29:5, 29:6, 34:8, 38:12, 38:22, 39:12, 39:14, 39:19, 40:3, 40:11, 41:23, 43:3, 43:5, 43:14, 43:19
**shelf** [1] - 64:9
**shield** [1] - 47:10

**shoes** [1] - 10:4
**short** [6] - 15:2, 26:20, 36:3, 48:19, 57:10, 88:21
**Short** [11] - 15:4, 15:8, 15:11, 15:17, 15:22, 16:21, 17:10, 19:19, 19:22, 20:2
**shortchange** [1] - 33:4
**shortly** [1] - 15:4
**shot** [1] - 102:10
**show** [2] - 30:20, 33:9
**Show** [6] - 32:24, 33:7, 34:3, 38:20, 40:15, 47:24
**shown** [1] - 71:4
**shut** [1] - 30:18
**shy** [1] - 2:7
**sic** [1] - 88:24
**side** [26] - 18:4, 20:25, 21:11, 23:4, 28:1, 28:7, 29:14, 29:22, 31:11, 31:14, 31:24, 32:7, 33:5, 33:15, 33:22, 33:23, 34:13, 36:14, 39:14, 66:7, 72:24, 77:11, 83:4, 99:11, 103:18
**sidelines** [7] - 21:20, 22:12, 22:13, 22:16, 24:2, 25:16, 76:11
**sides** [15] - 4:21, 11:18, 20:8, 27:6, 28:24, 29:13, 32:5, 33:3, 33:15, 33:17, 37:25, 38:1, 46:8, 53:17, 73:9
**sign** [3] - 34:23, 47:13, 69:21
**signed** [3] - 41:14, 42:11, 66:1
**significant** [1] - 34:1
**signing** [1] - 70:16
**silence** [1] - 2:12
**silly** [1] - 14:17
**similar** [7] - 8:23, 19:11, 31:16, 33:13, 69:1, 74:9, 84:18
**simple** [4] - 13:7, 14:15, 18:10, 36:2
**simplify** [1] - 86:23
**simplistic** [1] - 41:16
**simply** [1] - 19:6
**simulated** [1] - 66:25
**single** [4] - 18:23, 38:13, 42:9, 73:8
**sit** [3] - 21:20, 22:16,

25:23
**sits** [1] - 100:5
**sitting** [7] - 22:12, 22:13, 25:16, 69:18, 100:4, 100:5
**situation** [3] - 53:9, 54:16, 59:13
**six** [3] - 5:20, 6:21, 40:25
**skeptical** [1] - 99:3
**Slater** [15] - 26:3, 26:17, 27:10, 41:14, 48:4, 64:9, 66:6, 67:2, 67:24, 70:3, 71:16, 77:2, 80:12, 82:6, 82:23
**SLATER** [57] - 6:8, 6:11, 6:16, 13:20, 24:15, 24:19, 25:1, 27:13, 35:19, 36:9, 37:15, 37:19, 41:15, 41:18, 41:25, 42:6, 46:10, 46:20, 48:19, 52:9, 53:4, 56:22, 57:1, 57:4, 57:8, 57:25, 58:7, 67:6, 67:20, 68:10, 70:4, 70:11, 71:18, 71:25, 74:3, 74:12, 74:17, 74:21, 75:19, 80:15, 80:19, 81:1, 81:4, 81:23, 82:25, 83:22, 84:20, 85:2, 85:14, 85:17, 85:23, 86:16, 87:6, 88:4, 92:18, 95:10, 95:14
**sleeves** [1] - 34:9
**slight** [1] - 1:9
**slow** [1] - 98:22
**small** [2] - 66:13, 68:23
**SMITH** [18] - 21:25, 22:11, 22:13, 23:3, 25:11, 58:25, 60:8, 61:8, 61:16, 61:25, 62:3, 62:9, 62:13, 62:16, 62:18, 63:19, 64:1, 64:23
**smoke** [1] - 38:14
**snapshot** [1] - 36:5
**so-to-speak** [3] - 17:8, 31:4, 96:5
**society** [1] - 70:24
**sold** [1] - 23:15
**solely** [4] - 49:17, 49:22, 50:3
**Solko** [3] - 96:24, 96:25, 100:17
**solo** [2] - 2:13, 90:9
**solvency** [1] - 24:9

**someone** [7] - 49:8, 49:25, 50:2, 50:6, 69:15, 70:25, 77:9
**sometimes** [3] - 48:12, 54:15, 99:5
**somewhat** [3] - 14:9, 48:20, 99:3
**soon** [3] - 41:5, 81:19, 93:13
**sooner** [2] - 3:7, 12:24
**sorry** [15] - 2:4, 23:1, 23:5, 28:15, 41:10, 60:23, 67:24, 79:1, 80:2, 80:25, 83:22, 84:13, 85:11, 87:18, 95:17
**sort** [25] - 3:7, 13:1, 13:5, 14:13, 14:15, 14:21, 17:10, 21:15, 27:2, 28:22, 29:2, 29:9, 34:15, 51:25, 52:2, 54:16, 63:14, 69:9, 83:6, 83:7, 92:13, 99:21, 99:25
**sorts** [1] - 14:6
**sounds** [4] - 7:22, 20:5, 25:24, 77:17
**source** [1] - 3:6
**spaces** [1] - 17:8
**spared** [1] - 76:8
**SPEAKER** [6] - 61:5, 78:8, 91:22, 97:12, 97:14, 97:17
**speaking** [5] - 13:4, 14:12, 61:8, 61:16, 76:21
**special** [1] - 78:12
**specific** [4] - 16:13, 78:19, 83:18, 92:16
**specifically** [1] - 63:6
**specificity** [2] - 13:8, 83:25
**spend** [1] - 40:25
**spent** [1] - 43:13
**spoken** [2] - 2:14, 24:19
**spread** [1] - 59:14
**staff** [2] - 40:22, 43:12
**stage** [2] - 4:24, 26:25
**stake** [1] - 99:23
**stamped** [1] - 64:22
**stamping** [2] - 45:21, 63:8
**stand** [2] - 2:7, 14:3
**standalone** [1] - 19:17

**standards** [1] - 33:6
**standpoint** [3] - 63:1, 93:17, 102:23
**stands** [1] - 23:22
**STANOCH** [1] - 7:1
**Stanoch** [1] - 7:1
**start** [10] - 3:3, 4:11, 35:19, 40:9, 41:2, 49:21, 59:5, 67:23, 80:21, 81:1
**started** [11] - 5:21, 27:18, 27:20, 27:21, 27:25, 28:10, 29:22, 31:10, 31:13, 32:21, 52:21
**starting** [5] - 27:24, 29:15, 51:18, 67:22, 72:5
**starts** [4] - 50:1, 72:2, 75:22, 80:22
**State** [20] - 16:6, 18:4, 18:7, 18:8, 90:9, 90:12, 90:24, 91:2, 91:5, 91:24, 93:17, 93:19, 93:23, 94:5, 94:19, 94:23, 95:22, 96:8, 96:16, 96:18
**state** [1] - 84:21
**STATES** [2] - 1:1, 1:9
**States** [4] - 1:6, 16:25, 18:3, 19:16
**status** [3] - 3:5, 3:25, 5:9
**stay** [2] - 13:18, 96:18
**Stay** [1] - 13:24
**stayed** [1] - 15:1
**step** [1] - 76:14
**steps** [1] - 18:19
**stickler** [1] - 98:7
**sticky** [4] - 20:5, 49:24, 56:24, 58:14
**still** [2] - 43:7, 66:3
**stipulation** [5] - 20:4, 22:16, 22:24, 54:5, 94:10
**stipulations** [2] - 22:14, 23:25
**stone** [2] - 42:5, 42:17
**stop** [1] - 82:4
**story** [2] - 22:2, 29:20
**straggle** [1] - 37:7
**streamline** [4] - 4:12, 4:14, 7:13, 8:14
**strictest** [1] - 23:19
**strictly** [1] - 23:17
**strikes** [1] - 11:14
**strongly** [1] - 72:13

**structure** [1] - 32:25
**struggling** [1] - 12:18
**stuff** [2] - 64:18, 89:1
**sub** [4] - 16:24, 18:4, 18:9, 19:6
**sub-class** [2] - 18:9, 19:6
**sub-classes** [2] - 16:24, 18:4
**subject** [25] - 24:1, 43:21, 43:23, 44:1, 44:12, 44:22, 47:15, 49:24, 57:6, 61:3, 61:18, 63:8, 68:12, 68:16, 69:16, 69:24, 70:9, 70:20, 71:5, 78:4, 81:11, 84:17, 86:2, 97:6, 99:25
**submission** [2] - 9:3, 96:2
**submit** [5] - 44:8, 59:20, 60:5, 86:11, 86:12
**submitted** [6] - 26:24, 43:5, 44:11, 44:23, 68:3, 68:10
**Subpoenaed** [2] - 68:25, 71:14
**subsidiaries** [1] - 24:15
**subsumed** [1] - 17:11
**sudden** [1] - 56:24
**suddenly** [1] - 51:17
**sue** [1] - 25:20
**suffice** [1] - 13:25
**sufficient** [2] - 11:16, 100:7
**suggest** [3] - 13:13, 59:16, 79:15
**suggested** [2] - 11:12, 84:10
**suggestion** [4] - 30:23, 101:5, 102:15
**summarizing** [1] - 76:21
**summary** [1] - 50:20
**summer** [3] - 11:12, 29:23, 30:14
**sun** [1] - 38:15
**superficial** [2] - 12:11, 12:14
**supply** [1] - 22:9
**suppose** [2] - 29:5, 77:2
**supposed** [2] - 30:15, 88:14
**supposedly** [1] - 30:13

**Supreme** [3] - 92:19, 95:12, 97:10
**surgical** [1] - 37:2
**surprised** [2] - 40:11, 92:18
**surrounding** [1] - 59:23
**sweep** [3] - 46:24, 47:12, 99:8
**sweeping** [1] - 102:25
**system** [1] - 5:6

## T

**table** [1] - 11:5
**Tack** [2] - 6:20, 6:24
**tainted** [1] - 23:18
**tangential** [4] - 20:16, 21:12, 22:3, 32:6
**target** [4] - 7:13, 41:6, 42:16, 92:13
**team** [2] - 66:7, 66:17
**tedious** [1] - 87:19
**tee** [1] - 100:6
**teed** [1] - 100:9
**telephone** [2] - 4:22, 83:18
**ten** [12] - 11:16, 23:5, 57:18, 57:19, 81:19, 83:15, 83:21, 86:11, 88:1, 88:4, 88:5
**ten-minute** [2] - 88:1, 88:5
**tent** [1] - 96:5
**term** [3] - 26:16, 32:9, 64:19
**terms** [18] - 4:4, 4:6, 4:14, 5:4, 5:7, 7:11, 10:15, 15:25, 16:5, 22:24, 43:21, 44:1, 48:23, 63:21, 64:21, 64:24, 76:5, 99:4
**terrific** [1] - 19:18
**territorial** [1] - 18:12
**test** [2] - 3:22, 30:15
**testify** [1] - 69:23
**Teva** [2] - 6:12, 27:17
**Texas** [1] - 18:9
**thankfully** [1] - 76:8
**THE** [290] - 1:1, 1:9, 2:2, 2:3, 3:15, 3:25, 4:10, 4:24, 5:1, 5:9, 5:14, 5:22, 5:25, 6:4, 6:10, 6:23, 6:25, 7:7, 7:20, 7:23, 8:4, 8:6, 8:8, 8:10, 8:12, 9:14,

10:21, 10:23, 11:19, 12:22, 13:17, 13:23, 14:11, 14:25, 15:12, 15:15, 15:21, 16:1, 16:8, 16:14, 16:17, 17:12, 17:19, 17:22, 18:6, 18:17, 19:1, 19:11, 19:18, 19:24, 20:16, 20:21, 21:7, 21:19, 21:23, 22:10, 22:12, 22:25, 23:7, 23:24, 24:11, 24:17, 24:25, 25:3, 25:10, 25:21, 26:2, 26:10, 26:16, 27:2, 28:12, 28:15, 29:1, 29:5, 30:11, 31:16, 32:9, 32:12, 33:9, 34:14, 34:19, 36:7, 37:12, 37:17, 39:8, 40:5, 40:14, 41:4, 41:8, 41:17, 41:22, 42:4, 42:15, 42:22, 43:9, 43:17, 43:22, 44:19, 44:25, 45:3, 45:23, 46:4, 46:6, 46:12, 47:20, 49:13, 49:24, 50:5, 50:9, 50:16, 50:22, 51:7, 51:20, 52:2, 53:2, 53:5, 53:19, 54:9, 54:12, 54:15, 55:6, 55:22, 56:8, 56:13, 56:19, 56:25, 57:2, 57:7, 57:16, 58:3, 58:15, 60:6, 60:16, 60:18, 60:21, 60:24, 61:10, 61:13, 61:20, 62:2, 62:6, 62:10, 62:14, 62:17, 62:20, 63:4, 63:11, 63:14, 63:18, 64:16, 64:24, 65:5, 65:8, 66:2, 66:9, 67:8, 67:10, 67:12, 67:14, 67:16, 67:18, 67:22, 68:9, 68:21, 69:4, 69:11, 70:1, 70:3, 70:10, 71:9, 71:21, 72:21, 72:23, 73:3, 73:13, 73:17, 73:22, 74:8, 74:11, 74:13, 74:20, 74:24, 75:6, 75:12, 75:14, 75:17, 75:20, 76:4, 76:15, 77:2, 77:21, 78:1, 78:6, 78:9, 79:1, 79:4, 79:21, 79:23, 80:1, 80:7, 80:9, 80:25, 81:3, 82:8, 82:23, 83:11, 83:19, 84:2, 84:5, 84:7, 84:11,

84:25, 85:5, 85:10, 85:12, 85:15, 85:21, 86:3, 86:22, 87:2, 87:14, 87:17, 87:20, 88:5, 88:10, 88:11, 89:4, 89:8, 89:10, 89:15, 90:3, 90:8, 90:12, 90:21, 91:1, 91:12, 91:15, 91:18, 91:21, 92:1, 92:4, 92:8, 92:10, 92:13, 92:21, 93:1, 93:19, 93:24, 94:5, 94:11, 94:13, 94:17, 94:23, 95:4, 95:9, 95:12, 95:21, 96:10, 96:15, 96:19, 96:23, 96:25, 97:4, 97:7, 97:10, 97:13, 97:15, 97:18, 97:20, 97:23, 98:6, 98:15, 98:17, 98:24, 99:10, 100:10, 100:13, 100:20, 100:22, 101:5, 101:11, 101:14, 102:3, 102:11, 102:19, 103:1, 103:3, 103:6, 103:16, 103:20
**themselves** [1] - 43:20
**they've** [7] - 4:5, 11:10, 38:3, 42:10, 50:2, 66:17, 97:25
**thinking** [5] - 17:14, 30:7, 57:16, 72:21, 77:17
**third** [6] - 70:8, 70:20, 84:18, 84:23, 100:18, 101:18
**thirteen** [1] - 48:5
**thirty** [2] - 8:7, 87:9
**thirty-first** [1] - 8:7
**thorough** [1] - 37:10
**thoughts** [1] - 66:14
**thousand** [6] - 35:25, 44:4, 46:14, 46:18, 47:17
**thousands** [8] - 30:1, 30:10, 45:12, 45:13, 45:16, 45:17, 46:24, 98:9
**three** [22] - 5:18, 5:19, 7:8, 17:23, 20:8, 24:15, 33:2, 33:25, 34:16, 35:24, 35:25, 43:13, 47:21, 48:3, 54:19, 56:4, 56:15, 73:8, 92:25, 101:3, 103:9
**tiered** [2] - 28:10,

28:17
**timely** [1] - 64:6
**timing** [10] - 9:25, 11:19, 15:2, 19:20, 35:5, 35:7, 78:14, 79:18, 94:3, 100:3
**tiny** [2] - 71:19, 71:20
**title** [1] - 101:16
**today** [16] - 2:13, 2:17, 2:20, 2:23, 9:4, 15:14, 24:11, 24:12, 26:3, 36:18, 39:9, 50:20, 72:12, 98:22, 103:14
**today's** [1] - 2:14
**together** [6] - 20:23, 88:15, 98:20, 99:18, 101:21, 102:2
**TOLENDANO** [24] - 26:9, 26:11, 26:19, 43:2, 43:10, 43:18, 45:5, 46:3, 46:5, 49:12, 49:14, 50:4, 50:6, 50:14, 50:18, 50:23, 51:13, 51:21, 52:6, 53:18, 54:1, 54:11, 55:4, 62:19
**Tolendano** [2] - 26:10, 26:11
**tolling** [2] - 25:17, 25:19
**tomorrow** [1] - 49:25
**took** [3] - 2:1, 17:3, 88:9
**top** [1] - 72:4
**topic** [1] - 27:16
**Torrent** [2] - 6:12, 26:11
**towards** [1] - 40:2
**track** [1] - 94:19
**tracking** [1] - 21:14
**tradeoff** [3] - 21:19, 37:21
**transcript** [7] - 2:22, 70:21, 70:22, 70:23, 74:25, 75:1, 75:18
**transcripts** [2] - 74:4, 74:7
**transfer** [3] - 98:2, 100:13, 100:23
**transferred** [2] - 100:18, 100:24
**transferring** [1] - 98:1
**translation** [1] - 62:15
**transmitted** [1] - 11:8
**travel** [1] - 25:14

**treated** [2] - 37:1, 37:8
**treating** [2] - 36:22, 70:12
**treatment** [2] - 39:24, 71:3
**trial** [15] - 38:19, 68:8, 68:12, 68:15, 70:1, 70:4, 74:7, 74:13, 74:16, 75:7, 75:10, 75:12, 75:15, 84:21
**tried** [1] - 66:24
**true** [1] - 28:17
**truly** [2] - 39:22, 40:3
**trust** [5] - 55:7, 56:8, 56:9, 56:10, 72:13
**trusting** [1] - 57:13
**try** [11] - 5:7, 7:16, 39:4, 42:3, 42:4, 66:8, 67:1, 68:15, 86:5, 102:17, 102:23
**trying** [6] - 15:23, 24:7, 37:15, 60:9, 63:2, 70:5
**Tuesday** [2] - 51:15, 51:22
**turn** [2] - 61:8, 61:16
**turned** [2] - 48:23, 52:6
**turning** [1] - 3:23
**turns** [1] - 21:20
**twelve** [1] - 92:23
**twenty** [2] - 84:13, 87:24
**twenty-nine** [1] - 84:13
**twice** [2] - 38:25, 39:4
**two** [35] - 5:3, 6:16, 9:14, 11:16, 15:16, 19:19, 23:9, 28:10, 28:17, 31:8, 34:20, 45:16, 47:20, 47:22, 48:2, 48:9, 49:16, 56:16, 66:13, 67:23, 67:25, 68:22, 86:11, 89:17, 91:7, 92:24, 95:6, 95:21, 96:2, 97:20, 97:21, 101:3, 101:6, 102:4
**two-fold** [1] - 23:9
**two-tiered** [1] - 28:17
**Twombley** [3] - 12:1, 13:7, 14:17
**type** [2] - 36:9, 64:8
**types** [1] - 92:14

# U

**U.S** [1] - 3:21
**uh-hum** [1] - 72:22
**ultimate** [1] - 20:21
**ultimately** [7] - 35:22, 36:17, 38:17, 48:22, 52:16, 55:4, 86:19
**ultra** [1] - 41:16
**under** [24] - 10:17, 16:25, 18:13, 20:23, 23:16, 26:7, 30:15, 32:25, 34:20, 38:15, 40:14, 47:10, 64:10, 65:12, 68:23, 70:25, 72:2, 86:10, 88:22, 89:11, 96:5, 100:18, 100:19, 100:23
**understood** [3] - 26:1, 62:13, 99:4
**underway** [1] - 5:18
**undoubtedly** [1] - 59:4
**undue** [1] - 72:25
**unduly** [3] - 14:7, 53:7, 72:9
**unfair** [2] - 78:17, 79:8
**unforeseen** [1] - 21:11
**unfortunately** [1] - 89:23
**UNITED** [2] - 1:1, 1:9
**United** [1] - 1:6
**universe** [6] - 28:3, 28:20, 28:21, 31:25, 45:10, 49:19
**unless** [3] - 63:6, 74:20, 80:12
**unquestionably** [1] - 101:12
**unquote** [7] - 22:10, 23:25, 32:13, 32:14, 34:17, 39:12, 57:21
**up** [47] - 2:5, 2:7, 5:19, 12:19, 14:15, 17:17, 18:23, 21:11, 27:9, 28:22, 29:21, 31:5, 34:9, 34:15, 36:17, 38:5, 42:7, 44:14, 48:23, 52:11, 52:18, 60:21, 60:24, 61:4, 65:11, 65:16, 65:24, 66:15, 68:20, 69:2, 69:17, 78:10, 86:22, 87:12, 89:20, 92:23, 93:5, 94:23, 98:3, 98:21, 100:6,

100:9, 101:2, 101:8, 103:6
**update** [1] - 5:9
**upload** [1] - 44:9
**utilize** [1] - 5:6

# V

**VALSARTAN** [1] - 1:3
**Valsartan** [2] - 2:9, 57:20
**variance** [1] - 19:15
**variety** [1] - 19:8
**various** [5] - 5:8, 17:3, 17:9, 18:3, 20:8
**veil** [1] - 77:14
**venue** [1] - 100:23
**verbally** [2] - 69:21, 71:6
**verbiage** [1] - 76:21
**verification** [2] - 34:2, 37:20
**verifications** [1] - 31:3
**verified** [2] - 34:17, 36:15
**verifying** [1] - 36:10
**version** [3] - 67:4, 67:5, 102:9
**versus** [3] - 96:10, 97:12, 100:17
**vet** [2] - 28:19, 30:16
**vetted** [2] - 28:4, 30:3
**vetting** [3] - 30:1, 30:13, 31:22
**via** [1] - 17:14
**view** [7] - 12:14, 20:24, 21:24, 33:12, 59:6, 98:10, 98:13
**views** [3] - 12:7, 60:5, 99:13
**virtue** [1] - 77:13
**visa** [1] - 17:14

# W

**wait** [6] - 5:11, 30:24, 46:8, 46:9, 61:5, 86:7
**waiting** [2] - 20:11, 92:11
**waived** [2] - 76:24, 86:20
**waiving** [2] - 9:7, 9:16
**Walgreens** [2] - 96:17, 96:23

**Walgreens'** [1] - 96:10
**walking** [1] - 98:22
**wants** [4] - 40:21, 47:9, 81:19, 82:3
**warranty** [1] - 23:23
**Washington** [1] - 2:11
**waste** [1] - 14:17
**waterfront** [2] - 17:2, 17:4
**ways** [3] - 55:6, 72:23, 73:22
**weather** [4] - 37:22, 38:5, 38:17, 38:24
**Wednesday** [3] - 8:13, 51:17, 51:22
**weed** [1] - 32:14
**weeded** [1] - 32:9
**weeding** [2] - 32:3, 33:4
**week** [10] - 8:3, 8:4, 8:5, 8:9, 8:11, 11:9, 20:9, 48:7
**weeks** [10] - 5:18, 7:16, 7:17, 11:16, 15:16, 19:19, 20:14, 31:8, 43:13, 86:11
**welcome** [1] - 95:22
**whistles** [2] - 35:18, 40:4
**whole** [6] - 21:1, 21:13, 35:10, 39:25, 74:14, 88:6
**WILLIAMSON** [4] - 5:13, 5:15, 5:23, 6:3
**Williamson** [2] - 5:15, 7:5
**willing** [5] - 31:9, 43:15, 66:2, 96:6, 98:11
**wind** [1] - 41:10
**window** [1] - 7:5
**withheld** [2] - 56:3, 56:4
**withhold** [1] - 56:5
**withholding** [3] - 51:23, 54:21, 54:24
**witness** [12] - 69:4, 69:5, 69:7, 69:12, 69:15, 70:15, 70:23, 71:13, 71:15, 84:23
**witnesses** [9] - 68:25, 69:19, 69:22, 70:1, 70:2, 70:19, 71:15, 71:19, 84:21
**wonder** [3] - 46:8, 46:9, 101:15
**wondering** [2] - 37:17, 100:22

**word** [5] - 71:13, 71:20, 75:16, 80:23, 81:9
**worded** [1] - 34:24
**words** [4] - 12:19, 72:19, 75:10, 77:22
**workable** [1] - 12:6
**works** [5] - 6:1, 7:9, 19:21, 44:8, 45:22
**workup** [1] - 38:24
**world** [3] - 4:2, 39:25, 69:11
**worry** [1] - 103:11
**wrap** [1] - 66:15
**write** [1] - 12:16
**writes** [1] - 77:2
**writing** [2] - 71:6, 84:16

## Y

**year** [2] - 6:21, 29:23
**years** [4] - 40:23, 40:25, 48:5, 89:2
**yesterday** [2] - 24:20, 97:10
**yourself** [1] - 5:14
**yup** [1] - 72:22