# MAZIE SLATER KATZ & FREEMAN, LLC

COUNSELLORS AT LAW
103 Eisenhower Parkway
Roseland, NJ  07068
(973) 228-9898
Fax (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°

Karen G. Kelsen°
Cheryll A. Calderon
David M. Estes
Adam M. Epstein°
Michael R. Griffith°
Matthew Tonzola
Christopher J. Geddis

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

°Member of N.J. & N.Y. Bars

August 21, 2019

*VIA ECF*
Honorable Joel Schneider
United States Magistrate Judge
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
1 John F. Gerry Plaza, Courtroom 3C
4th and Cooper Streets
Camden, NJ  08101

   RE: *In re Valsartan Products Liability Litigation,* No. 1:19-md-02875

Dear Judge Schneider:

  Plaintiffs submit this brief in opposition to defendants' request to include the disclosure of litigation funding to individual plaintiffs in the PFS.

  Litigation funding to a plaintiff is simply a non-recourse loan, secured by the potential recovery in a lawsuit.  A plaintiff's need for such funding is private financial information, no different from credit card balances, a mortgage, or a home equity loan.  *See Benitez v. Lopez*, No. 17-cv-3827, 2019 WL 1578167, at *1-2 (E.D.N.Y Mar. 14, 2019) (holding that litigation funding "is not relevant to a claim or defense in the case or credibility" and explaining "the financial backing of a litigation funder is as irrelevant to credibility as the Plaintiff's personal financial

Honorable Joel Schneider
United States Magistrate Judge
U.S. District Court - District of New Jersey
August 21, 2019
Page 2

wealth, credit history, or indebtedness") (enclosed as Ex. 1); *MLC Intellectual Property LLC v. Micron Technology Inc.*, Case No. 14-cv-03657, 2019 WL 118595 (N.D. Cal. Jan. 7, 2019) (holding litigation financing was irrelevant and not discoverable) (enclosed as Ex. 2); *Space Data Corp. v. Google LLC*, No. 16-cv-03260, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (finding litigation funding irrelevant—"a side issue at best") (enclosed as Ex. 3); *VHT, Inc. v. Zillow Group, Inc.*, No. C15-1096JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) (same) (enclosed as Ex. 4). Defendants have no legitimate need for this information. Moreover, disclosure would potentially enable the defense to prey upon or take advantage of a plaintiff's financial circumstances, for example, using such information as leverage in settlement negotiations.

Plaintiffs do not oppose one limited type of disclosure, but only to the Court in camera. This would apply only where the litigation funding company has control or input into litigation decisions, including settlement, which could interfere with a plaintiff's control of his or her lawsuit and the attorney-client relationship. However, if ordered, that information should be shared only with the Court, in camera. Plaintiffs do not object to entry of a separate order focused on this narrow information.[1]

To the extent the defense may argue that unfettered disclosure is required for class representatives, the same arguments hold true. Unless litigation control has been given away, there

---

[1] In the Opioid MDL, the judge entered a similar order providing for each plaintiff to disclose the extent to which a plaintiff's or his or her counsel's autonomy would be impacted. *In re National Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) (enclosed as Ex. 5).

Honorable Joel Schneider
United States Magistrate Judge
U.S. District Court - District of New Jersey
August 21, 2019
Page 3

is no relevance or legitimate need for disclosure. *See In re Intel Corp. Microprocessor Antitrust Litigation*, 526 F. Supp. 2d 461, 464 (D. Del. 2007) (citing the Manual for Complex Litigation and concluding that "the financial status of class representatives is irrelevant to class certification issues and not discoverable, particularly where, as here, counsel is contractually obligated to advance litigation costs and those costs are not recoverable unless recovery is obtained for the class").

  Thank you for your consideration.

         Respectfully,

         ADAM M. SLATER

AMS
Enclosures

# Exhibit 1

2019 WL 1578167
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Ricardo BENITEZ, Plaintiff,
v.
Raul LOPEZ, Frank Libretto, Sergeant Stamm,
Tina Grillo, City of New York, Defendants.

17-CV-3827-SJ-SJB
|
Signed March 14, 2019

**Attorneys and Law Firms**

[Joel B. Rudin](), [Haran Tae](), Pro Hac Vice, Law Offices of Joel B. Rudin, P.C., New York, NY, for Plaintiff.

Erin T. Ryan, Stephen Matthew Suhovsky, [Michael Keith Gertzer](), New York City Law Department, New York, NY, for Defendants.

### ORDER

[SANKET J. BULSARA](), United States Magistrate Judge

**\*1** Defendants have filed a motion to compel seeking two separate items—(1) an order directing Plaintiff to sit for more than 7 hours of deposition testimony; and (2) documents concerning litigation financing that Plaintiff received for this lawsuit and his prior Court of Claims action. Both aspects of the motion are denied.

With respect to the motion to obtain additional deposition time, the motion is denied because it is premature. Without the deposition proceeding first, the Court has no basis on the present record to conclude there exists good cause to permit more than 7 hours of questioning. *See* [Fed. R. Civ. P. 30(d)(1)](); [*Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514, 2008 WL 2224288, at \*8 (S.D.N.Y. May 29, 2008)]() ("[F]actors relevant to the determination of good cause would ordinarily include whether the time previously afforded for the deposition was used efficiently and whether there are additional relevant areas of inquiry. Since it does not appear that defendants can make the appropriate showing with respect to either, their application to continue van Schoonbeek's deposition is denied."). A renewed request may be made following the completion of the deposition of Plaintiff.

As to the litigation funding documents, Defendants fail to establish that such discovery is "relevant to any party's claims or defense." [Fed. R. Civ. P. 26(b)(1)](). Defendants contend that they should be able to inquire about any financing "and the motives behind it," because it "goes directly to plaintiff's credibility and is grounds for impeachment at trial." (Mot. to Compel dated Mar. 1, 2019, Dkt. No. 67 ("Mot.") at 2). These claims are without merit. Defendants do not explain how any litigation funding impacts Plaintiff's credibility or how it could be used to impeach his trial testimony.

In this case, the financial backing of a litigation funder is as irrelevant to credibility as the Plaintiff's personal financial wealth, credit history, or indebtedness. That a person has received litigation funding does not assist the factfinder in determining whether or not the witness is telling the truth. Furthermore, "[w]hether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue." [*Yousefi v. Delta Elec. Motors, Inc.*, No. 13-CV-1632, 2015 WL 11217257, at \*2 (W.D. Wash. May 11, 2015)](); *cf.* [*Brown v. Walter*, 62 F.2d 798, 800 (2d Cir. 1933)]() ("While it is quite true that there are jurisdictions which allow the inquiry, we cannot agree. There can be no rational excuse, except the flimsy one that a man is more likely to be careless if insured. That is at most the merest guess, much more than outweighed by the probability that the real issues will be obscured."). No amount of this evidence would be probative of Plaintiff's credibility or the merits of his claims in this civil rights lawsuit.

To the extent that Defendants demonstrate Plaintiff may have been untruthful in communications with a litigation funder—and there is no proffer of the same—that could potentially impugn his credibility. But at this point in the case, there has been no such demonstration, and any such contention is just speculation, which does not justify discovery. *E.g.,* [*VHT, Inc. v. Zillow Grp., Inc.*, No. 15-CV-1096, 2016 WL 7077235, at \*1 (W.D. Wash. Sept. 8, 2016)]() ("Although Zillow poses several imaginable hypotheticals in which VHT's litigation funding scenario becomes relevant, the dearth of evidence on the record supporting Zillow's position renders that information negligibly relevant, minimally important in resolving the issues, and unduly burdensome."). Similarly, if the litigation funder were a party to the case, then its financial interest in the case could shade its credibility when the funder attempted to testify. *Cf.* [*Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350, 2015 WL 5730101, at \*2 (S.D.N.Y.

Sept. 10, 2015) ("Courts have found that indemnification agreements *between co-defendants,* including agreements regarding the payment of defense fees and costs, are relevant to credibility issues and a proper subject of discovery.") (emphasis added). But it is not a party to this case.

**\*2** Aside from credibility, Defendants also argue that litigation funding documents are required to discern the motives for Plaintiff's suit and for the litigation funding. That again is not relevant to a claim or defense in the case or credibility. *See Mackenzie Architects, P.C. v. VLG Real Estates Developers, LLC,* No. 15-CV-1105, 2017 WL 4898743, at \*3 (N.D.N.Y. Mar. 3, 2017) ("The Court will not allow this ... case to now travel down an unfruitful path in pursuit of 'litigation motivation.' Accordingly, Defendants' discovery request for retainer agreements and litigation funding is denied.") (emphasis omitted). Defendants' argument that they are entitled to understand the litigation funder's "ability to intervene" and "dictate the legal strategies or settlement decisions" is just a series of conclusory and irrelevant assertions. (*See* Mot. at 2). A defendant is not entitled to learn any of these things in any case, absent some special need or showing. One party to litigation is not entitled—absent some contractual or other relationship like an indemnification agreement— to know why the adverse party chooses to make certain strategic decisions in a case or avoid settlement.[1] Many such considerations are privileged; and if they are not, they are irrelevant and outside the scope of what a party needs to defend or prosecute its case. If a court were to accept Defendants' premise, all defendants would be permitted to conduct discovery of all individuals who have spoken to the plaintiff to ask them if they counseled plaintiff to reject a settlement offer or if plaintiff ever expressed doubts or uncertainties in his case. Those matters certainly involve the case; they are, after all, discussions about the matter at hand. That, however, does not make them discoverable. "[T]he discovery rules ... were never intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014). No reasonable understanding of Rule 26 would permit discovery of the minimally probative information Defendants seek.

Defendants' only authority for seeking the documents— including all communications—between Plaintiff and his litigation funder is a single handwritten entry from *Creighton v. City of New York*. (*See* No. 12-CV-7454 ("*Creighton*"), Order dated Jan. 23, 2017 (S.D.N.Y.), Dkt. No. 246 ("*Creighton* Order") ). "[T]he fact that a particular case found a funding agreement relevant and discoverable is the beginning and not the end of analysis. Since what might make a species of documents relevant in one case does not necessarily make it relevant in all others, it is 'inappropriate for courts to be guided by past judicial evaluations of the relevance of seemingly similar evidence.' " *Miller UK Ltd.,* 17 F. Supp. 3d at 722 (quoting 1A Wigmore on Evidence, § 37.3 at 1040 (Tillers Rev. 1983) ). Defendants ignore the relevant context of *Creighton* and mischaracterize its import. To be sure, the Court there ruled that the plaintiff had to turn over documents related to litigation funding because they "potentially bear on his credibility." (*Creighton* Order). But there was a reason for that. The plaintiff had allegedly taken monies from the litigation financing company to pay Fawaz Tareb, a *witness* in the civil case, and those payments were the subject of a separate criminal proceeding. (*See Creighton*, Letter dated Jan. 12, 2017, Dkt. No. 237, at 2). There is no similarity to the present case—there is no allegation, let alone evidence, that monies from litigation funders were funneled to witnesses as payoffs or that there was some impropriety in the litigation financing. To seek those documents in the hope that similar evidence would materialize in this case is not permissible; such discovery was permitted in *Creighton* because the parallel criminal case had revealed the relevance and the misuse of the litigation financing. And *Creighton* does not stand for anything like what Defendants believe—a view that litigation financing documents are generally probative of a plaintiff's credibility.[2] No case cited by Defendants stands for such a proposition. Nor has this Court been able to find such a ruling.

**\*3** The motion to compel is denied.

SO ORDERED.

**All Citations**

Slip Copy, 2019 WL 1578167

Footnotes

1   The considerations cited by Defendants could be relevant to determining the adequacy of proposed counsel in a class action. This, of course, is not a class action.

2     Defendants contend that Plaintiff's resistance to the discovery is "absurd" because they are entitled to know what representations Plaintiff made to litigation financers about the case. Plaintiff has already stated that he made no such representation. (Resp. to Mot. dated Mar. 3, 2019, Dkt. No. 69 ("Pl.'s Resp.") at 1 ("Plaintiff has personally made no factual statements or representations to the litigation funding company about his case, just expressions of assent to the terms of the financial agreement.") ). Defendants intend to depose Plaintiff; they can inquire if that statement is in fact correct. Any other discovery into this issue, for the reasons stated, is beyond the scope of Rule 26(b)(1) and is not permitted. *See Sedona Corp. v. Open Sols., Inc.*, 249 F.R.D. 19, 25 (D. Conn. 2008) ("The defendant argues that the requested information is relevant insofar as the plaintiff may have made representations regarding the allegations and the claims and defenses involved in the litigation during its discussions relating to the financing thereof. The defendant, however, offers no factual basis for speculating that such representations were made. Further, the plaintiff's chairman submitted in an affidavit that he did not receive any information with regard to the specifics of the litigation through the financing discussions, primarily because he was familiar with the litigation as chairman. The defendant has therefore failed to establish the relevancy of information regarding the plaintiff's litigation costs or financing.") (citations omitted).

---

**End of Document**            © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 2

2019 WL 118595
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

MLC INTELLECTUAL PROPERTY, LLC, Plaintiff,
v.
MICRON TECHNOLOGY, INC., Defendant.

Case No. 14-cv-03657-SI
|
Signed 01/07/2019

**Attorneys and Law Firms**

Fabio Elia Marino, Teri H.P. Nguyen, Rebecca Blaire Horton, Polsinelli LLP, Palo Alto, CA, Barrington E. Dyer, Polsinelli, San Francisco, CA, Laura Kieran Kieckhefer, McDermott Will & Emery, Menlo Park, CA, for Plaintiff.

Michael Richard Headley, Fish & Richardson P.C., Redwood City, CA, Adam Ryan Shartzer, Brian James Livedalen, Pro Hac Vice, Robert Andrew Schwentker, Pro Hac Vice, Robert Andrew Schwentker, Ruffin B. Cordell, Pro Hac Vice, Brian James Livedalen, Timothy Wayne Riffe, Pro Hac Vice, Fish and Richardson P.C., Matthew J. Dowd, Robert J. Scheffel, Dowd Scheffel PLLC, Washington, DC, Anthony Van Nguyen, Pro Hac Vice, Fish and Richardson, P.C., Houston, TX, Jonathan Benjamin Bright, Pro Hac Vice, Jonathan Benjamin Bright, Fish and Richardson P.C., Atlanta, GA, Michael R. Ellis, Fish and Richardson P.C. Fish and Richardson P.C., Dallas, TX, for Defendant.

### ORDER RE: DISCOVERY

Re: Dkt. Nos. 269, 262

SUSAN ILLSTON, United States District Judge

**\*1** The parties have submitted four discovery disputes to the Court. This order resolves two disputes and directs the parties to be prepared to discuss the other two disputes at the January 11, 2019 hearing.

### I. Ownership of the '571 patent

The first dispute concerns discovery regarding the ownership of the '571 patent. Micron contends that MLC has obstructed Micron's ability to obtain information relating to the ownership of the '571 patent, and Micron seeks an order compelling MLC to produce a corporate witness "to testify as to the ownership of the '571 patent, including the identification of all entities with an ownership interest in the '571 patent, and the terms of such interest and produce any relevant documents that have been withheld on the basis of privilege." Dkt. No. 259-4 at 3.

MLC asserts that Micron is attempting to manufacture a dispute, and that it has already provided information showing that MLC, and MLC alone, owns the '571 patent. MLC states that it has produced assignment records from the USPTO showing the chain of ownership for the '571 patent from 1997 until it was assigned from BTG International, Inc. to MLC Intellectual Property, LLC in May 2012, and that it produced the assignment agreement. *Id.* MLC also states that in response to Micron's Interrogatory No. 6 regarding MLC's bases for relief in this case, MLC stated that "MLC is the holder of all rights and interests in the '571 patent," and that MLC repeated this statement in a supplemental response to the same interrogatory. *Id.* Finally, MLC states that its corporate witness regarding the ownership of the '571 patent, Robert Hinckley, testified at his deposition that MLC, and no other entity, owned the '571 patent. MLC contends that Micron is attempting to manufacture a dispute about ownership by quoting Mr. Hinckley's deposition testimony about financial interests in the '571 patent (to which MLC's counsel objected on the basis of privilege), as opposed to ownership.

The Court finds that the supplemental discovery that Micron seeks is unnecessary, subject to the following: by **January 14, 2019,** MLC shall provide a statement (in the form of a sworn declaration or a verified supplemental interrogatory response) stating in unequivocal terms that MLC has sole ownership of the '571 patent. *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007) (in order to have standing to allege infringement, plaintiff must have sole ownership of the patent or join all other owners). If MLC does not provide such an unequivocal statement, the Court will revisit the issue of supplemental discovery regarding ownership of the '571 patent.

### II. Financial interests in the '571 patent (litigation funding agreement)

Micron seeks discovery regarding "persons and entities that have a financial interest in this litigation," including an identification of any third party that is funding this

litigation. MLC has objected to this discovery as privileged and irrelevant.

Micron contends that this discovery is relevant "to uncover possible bias issues." Dkt. No. 259-6 at 2. Micron asserts that it "needs to understand the existence of conflicts of interest to identify and exclude jury members who may have a bias," and that "Micron should be able to explore credibility and bias issues concerning MLC's witnesses." *Id.*

**\*2** MLC responds that it has already identified all persons and entities having a financial interest in the controversy, as required by Civil Local Rule 3-15. MLC asserts that neither the federal rules nor local rules require the disclosure of litigation funding agreements except in class action suits. *See* Standing Order for All Judges of the Northern District of California, ¶ 19 ("In any proposed class, collective, or representative action, the required disclosure [of Non-party Interested Entities or Persons] includes any person or entity that is funding the prosecution of any claim or counterclaim."). MLC also argues that Micron's arguments about potential bias or conflicts of interest are unpersuasive, and MLC states that none of the non-party percipient witnesses are funding this litigation.

The Court concludes that Micron is not entitled to the discovery it seeks because it is not relevant. MLC has complied with the local rules and disclosed persons and entities with a financial interest in this case as defined by 28 U.S.C. § 455(d)(1), (3) and (4). If this case proceeds to trial, the Court can question potential jurors *in camera* regarding relationships to third party funders and potential conflicts of interest. MLC has confirmed that the non-party witnesses are not funding this litigation. As such, Micron's assertions of potential bias and conflicts of interest are speculative. The cases cited by Micron do not support Micron's broad request, as the courts simply held that fee and litigation funding agreements could be discoverable when there was a specific, articulated reason to suspect bias or conflicts of interest. *See Yousefi v. Delta Elec. Motors*, No. C13-1632 RSL, 2015 WL 11217257, at \*2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue. If, however, Local 46 has not merely donated funds or expertise to pursue these claims but has an expectation of payment if and only if plaintiff prevails, evidence of that financial interest may be relevant to determining the credibility and potential bias of Local 46 witnesses."); *Nelson v. Millennium Labs,* Case No. 2:12-cv-01301-SLG, 2013 WL 11687684, at \*5-6 (D. Ariz. May 17, 2013) (court ordered production of the plaintiff's fee agreements because the defendant asserted that a market competitor was funding the plaintiff's litigation).

### III. Communications between Messrs. Banks and Hinckley and the attorney client privilege

Micron seeks discovery of communications between MLC's CEO Jerry Banks and MLC's Chairman and counsel Robert Hinckley between January 1, 2014 and October 2, 2017. Micron contends that it is entitled to these communications because Mr. Hinckley's law license was inactive, and Mr. Hinckley testified that he did not provide legal advice during that time. MLC contends that these communications are privileged and that Mr. Hinckley did, in fact, provide legal advice.

The Court cannot resolve this issue on the present record, as neither party has provided any declarations or evidentiary support for the factual assertions made in the letter brief.[1] Accordingly, at the January 11, 2019 hearing, the parties shall be prepared to discuss what further proceedings are necessary to resolve this matter.

### IV. ITC investigation documents

Micron seeks an order compelling MLC "to have produced, or consent to the production of, any responsive non-privileged 683 Investigation documents that may contain MLC's confidential information." Dkt. No. The 683 investigation was initiated in 2009 by BTG, MLC's predecessor-in-interest to the '571 patent, and it proceeded through an evidentiary hearing and post-hearing briefing before settling in 2010. Micron states that it has subpoenaed the relevant ITC-related documents from McKool Smith, the law firm that represented MLC and BTG during the 683 Investigation, and that it has also subpoenaed the documents directly from the ITC. Micron also states that it has moved to enforce those subpoenas in the Northern District of Texas and the District of Columbia, and that it has moved to transfer those subpoena enforcement actions to this Court. Micron seeks, *inter alia*, testimony that Mr. Banks provided during the ITC Investigation through deposition, written statements, and at the evidentiary hearing. Micron states that to date it has only received a "rough" transcript of Mr. Banks' deposition.

**\*3** MLC states that it has provided all of the documents in its possession (totaling thousands of pages), and that any remaining documents can only be produced by McKool and

the ITC. MLC asserts that the documents that remain to be produced contain third-party confidential information, and that such documents are governed by an ITC protective order.

It is the Court's view that Mr. Banks' ITC testimony is producible in this case, and that MLC should make every effort to obtain Mr. Banks' testimony and produce it. It is unclear to the Court exactly what MLC has already done in this regard, and MLC shall be prepared to address this issue at the January 11, 2019 hearing. Micron shall be prepared to discuss the status of the subpoena enforcement actions at the January 11, 2019 hearing. Finally, both parties shall be prepared to discuss, with specificity, what ITC documents MLC has already produced to Micron and what ITC documents have not been produced to Micron.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 118595

Footnotes

1   Both parties rely on *Gucci America Inc. v. Guess?*, No. 09 Civ. 4373(SAS), 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011), to argue that the privilege does or does not apply here. However, the record in *Gucci* was extensive and included, *inter alia*, four briefs and ten affidavits or declarations. *Id.* at *1.

---

**End of Document**            © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 3

2018 WL 3054797
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

SPACE DATA CORP., Plaintiff,
v.
GOOGLE LLC, and others, Defendants.

Case No. 16-cv-03260 BLF (NC)
|
Signed 06/11/2018

**Attorneys and Law Firms**

Brandon Cody Martin, Spencer Hosie, Darrell Rae Atkinson, Diane Sue Rice, Lyndsey C. Heaton, Hosie Rice LLP, San Francisco, CA, Hemant Keeto Sabharwal, Sterne Kessler Goldstein Fox PLLC, Washington, DC, for Plaintiff.

Robert Addy Van Nest, Ryan K.M. Wong, Shayne Hunter Henry, Christa M. Anderson, Eugene Morris Paige, Leah Maxx Pransky, Matthias Andreas Kamber, Thomas Edward Gorman, Andrew Stephen Bruns, Matthew Mickle Werdegar, Keker, Van Nest & Peters LLP, San Francisco, CA, for Defendants.

**ORDER RE: DISCOVERY DISPUTE ON LITIGATION FUNDING**

RE: ECF 259

NATHANAEL M. COUSINS, United States Magistrate Judge

**\*1** Defendants Google and Alphabet move to compel discovery as to litigation funding considered by plaintiff Space Data. In particular, defendants move to compel production of Board minutes that discuss the potential funding, and move to complete the deposition of Space Data Board member David Wu, who declined to answer questions about the potential funding.

Defendants assert that the discovery is relevant, but do not articulate how. Space Data contests the relevance of the information requested and proffers an important piece of information: it does not have any third-party litigation financing. ECF 259 at p. 3.

The Court is not persuaded that the materials sought are relevant to any party's claim or defense and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Even if litigation funding were relevant (which is contestable), *potential* litigation funding is a side issue at best. The Court finds that there is much discovery that would be more important in resolving the merits of this case. And the burden of responding would outweigh its likely benefit to defendants. Consequently, defendants' request to compel further discovery is DENIED. The Court does not reach the privilege issues discussed. No costs or fees are awarded.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 3054797

# Exhibit 4

Case 1:19-md-02875-RMB-SAK   Document 188   Filed 08/21/19   Page 15 of 18 PageID: 2253

VHT, Inc. v. Zillow Group, Inc, Not Reported in Fed. Supp. (2016)
2016 WL 7077235

2016 WL 7077235
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

VHT, INC., Plaintiff,
v.
ZILLOW GROUP, INC, et al., Defendants.

CASE NO. C15-1096JLR
|
Signed 09/08/2016

**Attorneys and Law Firms**

Jonathan M. Lloyd, Davis Wright Tremaine, Washington, DC, Marcia Beth Paul, Yonatan Berkovits, Davis Wright Tremaine LLP, New York, NY, Max Bamberger Hensley, Davis Wright Tremaine, Seattle, WA, for Plaintiff.

Andrew L. Deutsch, Melissa A. Reinckens, DLA Piper US LLP, New York, NY, Stellman Keehnel, Andrew Ramiro Escobar, DLA Piper US LLP, Brooke A.M. Taylor, Edgar Guy Sargent, Genevieve Vose Wallace, Ian B. Crosby, Jenna Farleigh, Jordan Connors, Patrick C. Bageant, Susman Godfrey, Seattle, WA, for Defendants.

ORDER

JAMES L. ROBART, United States District Judge

## I. INTRODUCTION

*1 Before the court is Plaintiff VHT, Inc., and Defendants Zillow Group, Inc., and Zillow, Inc.'s (collectively, "Zillow") joint submission regarding a discovery dispute. (Joint Subm. (Dkt. # 110)); *see also* Local Rules W.D. Wash. LCR 37. Zillow moves to compel VHT to "identify and produce all agreements it has with third parties that transfer or provide an interest in the recovery sought in this action." (*Id.* at 1.) VHT opposes Zillow's motion. (*Id.*) Having reviewed the parties' joint submission, the applicable law, and the relevant portions of the record,[1] the court DENIES Zillow's motion to compel without prejudice.

## II. BACKGROUND & ANALYSIS

VHT sued Zillow for direct, contributory, and vicarious copyright infringement of images used by Zillow. (*See generally* Am. Compl. (Dkt. # 105).) Zillow counterclaimed and alleges that VHT violated two statutes and committed several torts. (*See* Answer (Dkt. # 112) at 25-34.)

In the disputed discovery request, Zillow requested that VHT "[i]dentify any person other than VHT that may have an interest in any recovery [sought] in this action, and, ... identify any agreement under which [VHT] may be required to share or assign any of the recovery in this action."[2] (Joint Subm. at 2 (alterations in original) (citing Interrogatory No. 19).)[3] Zillow principally argues that this information is relevant to "whether VHT has standing to pursue its copyright infringement claims." (*Id.*; *see also id.* at 4-6.) In addition, Zillow argues that "the funders' interest may render them indispensable parties, ... the funders may be co-conspirators and potential defendants, and ... [the funders] may be witnesses to relevant transactions." (*Id.* at 6.)

Nothing more than speculation supports Zillow's arguments that VHT may lack standing or that VHT's litigation funder, if any exists, may be a necessary party, co-conspirator, or witness. (*See generally* Joint Subm.) The court allowed Zillow to file amended counterclaims based on the " 'extreme liberality' with which the court must grant leave to amend under Federal Rule of Civil Procedure 15." (8/17/16 Order (Dkt. # 96) at 2 (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1046, 1051 (9th Cir. 2003)).) However, as VHT argues, there are "flaws in Zillow's claims." (*Id.*)

Without some objective evidence that any of Zillow's theories of relevance apply in this case, the court will not order VHT to respond to Interrogatory 19 and produce responsive documents. Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[4] Fed. R. Civ. P. 26(b)(1). Of the enumerated considerations that bear on proportionality, "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit" particularly favor VHT's position. *Id.* Although Zillow poses several imaginable hypotheticals in which VHT's litigation funding scenario becomes relevant, the dearth of evidence on the

Case 1:19-md-02875-RMB-SAK   Document 188   Filed 08/21/19   Page 16 of 18 PageID: 2254

VHT, Inc. v. Zillow Group, Inc, Not Reported in Fed. Supp. (2016)
2016 WL 7077235

record supporting Zillow's position renders that information negligibly relevant, minimally important in resolving the issues, and unduly burdensome. *See id.* Therefore, based on the record before the court, the information is disproportional to the needs of the case. *See id.*

**\*2** In the absence of some indication that any of Zillow's theories of relevance are more than just theories, the court denies Zillow's motion to compel. The denial, however, is without prejudice to renewing the motion should Zillow be able to present evidence—rather than speculation—to support its theories.

### III. CONCLUSION

Based on the foregoing analysis, the court DENIES Zillow's motion to compel (Dkt. #110) without prejudice.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7077235

Footnotes

1 Neither party has requested oral argument, and the court concludes oral argument is unnecessary to the disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).
2 In meet and confers, Zillow has "explicitly excluded from its request the fee agreement that VHT has with its law firm." (Joint Subm. at 2 n.1.)
3 The parties submitted no factual evidence with their joint submission, but because there is no factual dispute over the materials at issue, the court treats as true the representations in the parties' briefing.
4 Zillow repeatedly misstates the current law regarding the scope of discovery. (*See* Joint Subm. at 4 (omitting the proportionality requirement from its articulation of the scope of discovery, stating that "[t]he bar to establish relevance is low and only requires that the requested information appear to be reasonably calculated to lead to the discovery of admissible evidence," and exclusively citing cases decided before the December 2015 amendments to the Civil Rules went into effect).) Evidence must be nonprivileged, relevant, and proportional in order to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). In addition, the December 2015 amendments to the Civil Rules removed the "reasonably calculated" language from Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the 'reasonably calculated' phrase to define the scope of discovery 'might swallow any other limitation on the scope of discovery.' ... The 'reasonably calculated' phrase has continued to create problems ... and is removed by these amendments."). Zillow's arguments lack merit because they are based on prior, broader iterations of the scope of discovery.

---

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 5

Case 1:19-md-02875-RMB-SAK   Document 188   Filed 08/21/19   Page 18 of 18 PageID: 2256

In re National Prescription Opiate Litigation, Not Reported in Fed. Supp. (2018)
2018 WL 2127807

2018 WL 2127807
Only the Westlaw citation is currently available.
United States District Court,
N.D. Ohio, Eastern Division.

IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION

CASE NO. 1:17-MD-2804
|
Signed 05/07/2018

### ORDER REGARDING THIRD-PARTY CONTINGENT LITIGATION FINANCING

DAN AARON POLSTER, UNITED STATES DISTRICT JUDGE

*1 It has come to the Court's attention that there may be attorneys who represent parties in cases transferred to this MDL Court ("MDL Cases") who have obtained (or are contemplating) third-party contingent litigation financing in connection with those MDL Cases. By "third-party contingent litigation financing" ("3PCL financing"), the Court refers to any agreement under which any person, other than an attorney permitted to charge a contingent fee representing a party, has a right to receive compensation that is contingent on and sourced from any proceeds of an MDL Case, by settlement, judgment, or otherwise.[1]

The Court now **ORDERS** that any attorney in any MDL Case that has obtained 3PCL financing shall:

• share a copy of this Order with any lender or potential lender.

• submit to the Court *ex parte*, for in camera review, the following: (A) a letter identifying and briefly describing the 3PCL financing; and (B) two sworn affirmations—one from counsel and one from the lender—that the 3PCL financing does not: (1) create any conflict of interest for counsel, (2) undermine counsel's obligation of vigorous advocacy, (3) affect counsel's independent professional judgment, (4) give to the lender any control over litigation strategy or settlement decisions, or (5) affect party control of settlement.

The Court further **ORDERS** that attorneys in MDL Cases have a continuing duty to inform the Court if they obtain new or additional 3PCL financing during the pendency of MDL proceedings, and have a continuing duty to update their disclosures and affirmations if circumstances change during the pendency of the MDL proceedings. The Court will deem unenforceable any 3PCL financing agreements that are not compliant with this Order. Further, any attorney or lender whose affirmations prove to be untrue will be subject to sanction by the Court.

Absent extraordinary circumstances, the Court will not allow discovery into 3PCL financing. *See Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045 at *5 (W.D. Pa. Jan. 18, 2018) (holding the work-product doctrine shields discovery of 3PCL financing).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2127807

### Footnotes

1   "Third-party litigation financing" does not include subrogation interests, such as the rights of medical insurers to recover from a successful personal-injury plaintiff.