```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY


IN RE:                          )   Case No. 19-MD-2875-RBK-JS
                                )
VALSARTAN PRODUCTS LIABILITY    )
LITIGATION                      )
                                )   Camden, NJ
                                )   July 10, 2019
--------------------------------)   4:04 p.m.



            TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
             BEFORE THE HONORABLE JOEL SCHNEIDER
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For the Plaintiffs:        ADAM M. SLATER, ESQUIRE
                           MAZIE, SLATER, KATZ & FREEMAN, LLC
                           103 Eisenhower Parkway, 2nd Floor
                           Roseland, NJ  07068

                           MARLENE GOLDENBERG, ESQUIRE
                           GOLDENBERG LAW, PLLC
                           800 Lasalle Avenue
                           Suite 2150
                           Minneapolis, MN  55402

                           RUBEN HONIK, ESQUIRE
                           DAVID J. STANOCH, ESQUIRE
                           GOLOMB & HONIK, PC
                           1835 Market Street
                           Suite 2900
                           Philadelphia, PA  19103

                           CONLEE S. WHITELEY, ESQUIRE
                           KANNER & WHITELEY, LLC
                           701 Camp Street
                           New Orleans, LA  70130


For the Defendants:        SETH A. GOLDBERG, ESQUIRE
                           DUANE MORRIS, LLP
                           30 South 17th Street
                           Philadelphia, PA  19103
```

2

APPEARANCES: Continued

                              RICHARD W. SMITH, ESQUIRE
                              COUNSEL NOT ADMITTED TO
                              USDCNJ BAR
                              WILEY REIN, LLP
                              1776 K Street NW
                              Washington, DC  20006

                              VICTORIA D. LOCKARD, ESQUIRE
                              GREENBERG TRAURIG, LLP
                              Terminus 200
                              3333 Piedmont Road NE
                              Suite 2500
                              Atlanta, GA  30305


Audio Operator:               SARAH ECKERT



Transcribed by:               DIANA DOMAN TRANSCRIBING, LLC
                              P.O. Box 129
                              Gibbsboro, New Jersey  08026
                              Office:  (856) 435-7172
                              Fax:     (856) 435-7124
                              Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

3

1                          I N D E X

2

3    COLLOQUY:                                    PAGE

4    Ref: Form complaint issues

5      By Ms. Lockard                      6, 9, 12, 14

6      By Mr. Slater                          9, 13, 14

7    RULING BY THE COURT

8      By Judge Schneider                            15

9

10   Ref: How to list the parties

11     By Ms. Goldenberg                        16, 21

12     By Ms. Lockard                       16, 19, 29

13     By Mr. Slater                           18, 24

14     By Mr. Honik                                 28

15   RULING BY THE COURT:

16     By Judge Schneider                           31

17

18   ISSUES TO BE DISCUSSED AT NEXT CONFERENCE:

19   Ref: Plaintiff fact sheets                     32

20   Ref: Dismissal of peripheral defendants        34

21

22

23

24

25

Colloquy                                          4

1    (This telephone conference was heard at 4:04  p.m.)

2          THE COURT:  Good afternoon, counsel.  This is Judge

3    Schneider.  We're on the record in in the matter of In Re:

4    Valsartan Products Liability Litigation, Docket Number 19-2875

5    -- MDL Number 2875.  I know there's probably a number of people

6    on the phone.  Let's just get a head count for who's on the

7    phone starting with plaintiffs.

8          MR. SLATER:  Hello, Your Honor, Adam Slater for

9    advocate.

10          MR. HONIK:  Ruben Honik and David Stanoch for

11    plaintiff.

12          MS. WHITELY:  Good afternoon, Your Honor, this is

13    Conlee Whitely on behalf of plaintiffs.

14          MS. GOLDENBERG:  Marlene Goldenberg on behalf of

15    plaintiffs.

16          THE COURT:  Okay, if that's it for plaintiffs, can we

17    get a head count for defendants?

18          MR. GOLDBERG:  Your Honor, Seth Goldberg for the ZHP

19    parties and the defense group.

20          MS. LOCKARD:  Your Honor, Victoria Lockard from

21    Greenberg Traurig on behalf of the Teva entities.

22          MR. SMITH:  And, Your Honor, Richard Smith for

23    Torrent Pharma, Inc. and the defense group.

24          THE COURT:  Okay, it sounds like that's it.  I

25    received the paperwork from the parties, thank you very much,

1    including the recent latest short form complaint draft.  We can

2    discuss any issue you want to discuss.  Let's start with the

3    three issues on the agenda.  Why don't we start with the short

4    form complaint.  If I understand the issues right, there's just

5    two material issues that the parties are in dispute about.

6              The first issue relates to whether -- and I hope I

7    have this right -- the individual plaintiffs when they filed

8    the short form complaint, have to specifically set forth their

9    fraud allegations.  Am I correct about that?

10             UNIDENTIFIED SPEAKER:  That's one of the issues, Your

11   Honor, yes.

12             THE COURT:  All right.

13             MS. LOCKARD:  Correct, Your Honor.  This is Victoria

14   Lockard.  And also we would -- you know, we had requested that

15   additional specific allegations be included for the express

16   warranty as well, so fraud and express warranty, that's one

17   issue, so we can address that if you like.

18             THE COURT:  Right.  Okay, I can hear from the

19   parties, but let me -- let me see if I understand this right

20   because this is my thinking and it may be naive because you're

21   in deeper on the issue.  At some time in the case, I don't know

22   when, Judge Kugler is going to decide that.

23             There's going to be a motion to dismiss directed to

24   the master complaint.  Presumably, one of the arguments that

25   the defendants are going to make is that the allegations of

1    fraud in the master complaint are deficient, and or the

2    allegations regarding the express warranty are deficient.

3            It seems to me that however the Court rules on the

4    master complaint subsumes all of the short form complaints, so

5    if Judge Kugler rules that the fraud allegations for example in

6    the master complaint are deficient, wouldn't that apply --

7    assuming there's no other allegations in the short form

8    complaints, wouldn't that necessarily mean that all the -- the

9    fraud allegations in the short form complaints rise or fall

10   with what happens with the master complaint?

11           If I'm right about that, then why does each

12   individual plaintiff need to do anything other than simply

13   incorporate by reference the allegations in the master

14   complaint which can be done by court order?  So if I'm wrong,

15   could you tell me what -- what I'm missing?

16           MS. LOCKARD:  Well, Your Honor -- Victoria Lockard

17   again on behalf of the defendant, and you know, I agree with

18   you, I think that -- and you may have a crystal ball there but

19   I think we probably will be, you know, attempting to move as to

20   the master complaint on those two specific counts.

21           At this point, however, we have a lot of uncertainty

22   about how, when motions will be allowed to proceed, you know,

23   the protocol for that.  And as we looked at the master

24   complaint, you know, as it is now, we don't think that the --

25   the plaintiffs have met their Rule 9 pleading requirement for

1   these claims, you know, but we're so far not entitled to bring

2   a motion, you know, we want to make sure that we are not

3   foreclosed if for some reason we find ourselves, you know,

4   lacking the opportunity to move against the master complaint

5   and need to move against certain complaints that are

6   individualized.

7          You know, we want to make sure that -- that we're

8   able to do so.  We -- at this point, we just don't know what

9   the protocol will be and how this will unfold.

10         And from our position, you know, in terms of the --

11  this paradigm for a master complaint and short form complaint,

12  you know, we don't believe that that paradigm really supports

13  the maintenance of fraud and misrepresentation claims because

14  those types of claims are so individualized and so dependent on

15  individualized facts about reliance and basis of the bargain

16  (phonetic), you know, and when and how to whom the false

17  representation was made.

18         We just don't think it's possible to adequately plead

19  those in a master complaint sufficiently and, you know, we

20  don't think the plaintiffs will be able to do it in the short

21  form either, to be frank, because we don't think that those --

22  those facts are going to be supported.

23         But we want to make sure that we've taken every

24  opportunity to get plaintiffs to take their best shot on these

25  claims so that we can then move when the Court allows us to do

Colloquy                                                              8

1   so and not to allow any wiggle room later on to suggest that

2   oh, well this is a master complaint so we didn't need to

3   provide any particularized allegations, you know, we just need

4   to -- to include the text generalized claims we have in there

5   currently.

6           THE COURT:   What if -- what if -- I don't know the

7   exact language at this point, I haven't tried to sketch it out,

8   but what if the Court enters an order to the effect that the

9   short form complaints incorporate by reference the fraud and

10  express warranty claims that are set forth in the master

11  complaint or complaints, and unless something else is

12  specifically stated in the short form complaint, those

13  particular plaintiffs are making no further allegations.

14          So wouldn't that necessarily mean that however the

15  Court rules on the master complaint applies to each and ever

16  short form complaint?

17          Because what I would anticipate -- and I could be

18  wrong, we'll hear from the plaintiffs -- if the Court accepts

19  the defendant's position, then you're going to get hundreds of

20  complaints -- short form complaints that say we incorporate the

21  allegations from the master complaint, period.  That doesn't

22  make sense to require that.  So, plaintiff, what do you think?

23          MR. SLATER:   You know, we're in agreement, Your

24  Honor.  The master complaint is actually, as you said,

25  incorporated by reference in the short form complaint --

Colloquy                                        9

1          THE COURT:  I know.  Yeah, it is.

2          MR. SLATER:  It is.  It is.  It's right in the first

3    paragraph.  So those allegations are incorporated and really

4    the short form complaint, the whole purpose is administrative

5    efficiency.  If you just check off what claims are being

6    brought, and then if there's a need for any more particularized

7    discovery or information about a specific plaintiff's claim,

8    that gets explored, you know, through the fact sheets and then

9    obviously if they (inaudible) selected for bellwether

10   discovery, that's -- you know, they have a full and fair

11   opportunity to find out from the plaintiff if they're selected

12   this is what your case is about, this is what you're claiming,

13   what did you see, what did you read.

14          I mean, all that gets done as part of discovery.  The

15   short form complaint is just -- it's really just a check box

16   process to make it efficient.  It's not a discovery vehicle.

17          MS. LOCKARD:  Well, with the exception of Rule 9 and

18   the requirements for -- for these specific types of claims for

19   fraud and misrepresentation, you're not allowed to wait until

20   the discovery period to uncover the facts about reliance

21   statements, when and where they -- I mean, the case law

22   establishes that has to be pled up front.

23          You can't shoot first, you know, and whatever the

24   metaphor is, but you can't -- you know, you can't just wait

25   until discovery to uncover those facts and that's what we're

1    trying to avoid, some sort of blanket language, generalized

2    language in a master complaint.

3          They put nothing in the short forms, there are no

4    specifics and then later down the road, plaintiff wants to

5    start, you know, revealing all of these details, you know,

6    facts and allegations about an alleged misrepresentation that

7    was made, heard and relied upon, when we -- we think that the

8    Federal Rule of Civil Procedure Rule 9 requires that that be

9    put in a pleading somewhere, either in the master complaint or

10   in the short form, but it can't be omitted at this stage and

11   then later discovered.

12         THE COURT:  Counsel -- but counsel -- hold on, hold

13   on.  Counsel, what if there's -- I -- I'm just troubled by this

14   because I think the fraud count is much easier than the express

15   warranty issue because all of the fraud allegations are going

16   to be the same for every single plaintiff.

17         The fraud is not particular to a particular

18   plaintiff.  In other words, Torrent or Teva or ZHB didn't

19   direct one-on-one any fraud to -- to those particular

20   plaintiffs, so all those fraud counts are going to rise or fall

21   together.

22         They're all going to rise or fall by the allegations

23   in the master complaint.  With regard to the fraud count, why

24   are you troubled by having the individual claims of fraud rise

25   or fall by what's in the master complaint?

1            MS. LOCKARD:  Well, because I don't think the law

2     supports a finding that they all rise and fall based on

3     generalized allegations -- you know, misstatements.  I think

4     that the law, at least in most of the states, you know, that

5     are implicated, requires that there be some element of

6     reliance.  In other words, a showing that but for this, you

7     know, fraudulent statement and that there was someone who heard

8     and relied upon that, whether you're -- whether plaintiffs are

9     saying it was the prescribing physician or the individual

10    plaintiff, but but for hearing that fraudulent statement and

11    relying upon it, they never would have prescribed this drug.

12           So I don't think it's enough that there was just a

13    misstatement put out in the e-cert (phonetic) by Teva or

14    another defendant, I think there has to be a nexus to the

15    individual plaintiff and his or her physician to say that one

16    or the other heard that statement, you know, believed it to be

17    true, relied upon it and prescribed them this drug and would

18    have never prescribed this drug but for that specific

19    statement.

20           THE COURT:  Okay.  So let's -- let's assume you're

21    right just for the sake of argument.  When you file your motion

22    to dismiss, wouldn't you make that argument?  And if Judge

23    Kugler accepts that argument, the fraud counts are out of the

24    complaint.

25           You -- you're -- the defendants at the moment believe

1    that the fraud counts are deficient.  If they're deficient for

2    one, they're deficient for every single one.  So why do you --

3    if I was you and you think the fraud counts are deficient, why

4    don't you just say to plaintiffs, do you agree to stand on your

5    allegations?  Yes.

6         We can put that in a court order if you want me to,

7    so you're in a better position than if the plaintiffs are

8    required to make individual allegations.  I just don't

9    understand the fraud count.

10        The express warranty is a little bit harder because

11   -- because of the individual nature of it.  But would you be

12   satisfied, defendant, with a question that if there are any

13   additional fraud allegations other than what's stated in the

14   master complaint, set them forth?

15        MS. LOCKARD:  Well, we like your initial proposal

16   which is an affirmative statement that there are no additional

17   supporting allegations regarding the fraud count because, you

18   know, I just want to be able to close that door.

19        And if plaintiffs are going to stand on their master

20   complaint, you know, we agree a hundred percent, you know,

21   that's what they're standing on and we'll move against that.

22   But I want to make sure we close the door on the short form and

23   we can likely work through some language to that effect that

24   says any additional supporting facts with regard to the fraud

25   should be stated, you know, otherwise there are no further

Colloquy                                    13

1    allegations, you know, something to that effect.

2              THE COURT:  Mr. Slater, your thoughts?

3              MR. SLATER:  You know, if Your Honor wants to have a

4    -- I don't think it's necessary, we've incorporated the master

5    complaint by reference.  If the master complaint -- if they

6    move against it and the fraud claim is dismissed, then the

7    fraud claims are out of all the cases.

8              If you check the fraud box, there would be no more

9    fraud claims in the master complaint, that's it, there's no

10   more fraud claim.  So to me, that's the quickest and easiest

11   and I agree with you, it's all or nothing.  The defense, if

12   they're going to win their motion, that's their best case.

13             I think if Your Honor orders that there be a section

14   saying if you have any additional allegations of fraud beyond

15   the master complaint, then list them; you know, I'm not going

16   to object to that, but I don't think it's necessary and it

17   actually creates more of a headache to the defense but perhaps

18   down the line, but you know, that's -- I'll live with whichever

19   way you go on that, Your Honor.

20             THE COURT:  Let me put it back to you, defendant.  Do

21   you want to draft a proposed order for me to sign, or would you

22   like that extra question in the short form complaint?  You

23   know, I guess it would be an extra two questions -- if you have

24   any additional allegations other than what's in the master

25   complaint as to the fraud counts, set them forth; if you have

1    any additional allegations as to the express warranty claim

2    other than what's set forth in the master complaint, set them

3    forth.  What's your pleasure?

4              MS. LOCKARD:  Well, out of those options I think we

5    would prefer the order essentially stating that, you know,

6    they're -- the plaintiffs are standing on the allegations in

7    the master complaint, they're not allowed to later rely upon

8    any additional allegations that -- that are presented through

9    discovery --

10             THE COURT:  No, you can't say -- no, no, no, no, no,

11   you can't say that.  Obviously you can't say that.

12             MS. LOCKARD:  But for -- but for a pleadings

13   motion --

14             THE COURT:  Oh yeah, for a pleadings motion, of

15   course.

16             MR. SLATER:  But we can always -- I'm sorry to

17   interrupt, but we can always, you know, at some point amend

18   these pleadings.

19             THE COURT:  Right.

20             MR. SLATER: I'm not going to be foreclosed from that.

21   I think -- I think it's clear frankly, to do nothing, at worst,

22   to add the extra question on the (inaudible) fraud.  I would

23   expect in 99 percent of the cases there's going to be nothing,

24   maybe a hundred percent of the cases, because why would

25   somebody put something additional if there is something really

Colloquy                                    15

1    important and compelling, which would be strange, but we have

2    an issue with entering an order that starts to determine rights

3    down the line just because -- for the reasons discussed.

4              There could be amendments, there could be something

5    that we learn later that impacts the premium or it can even be

6    that Judge Kugler, you know, says I'm not going to grant the

7    motion.  I'll let plaintiffs, you know, amend.  Who knows if we

8    get to that.

9              THE COURT:  Defendant, add the two questions which

10   should satisfy you.  You know, they're going to stand on the

11   allegations in the master complaint except if anything -- you

12   know, just try and agree on some language, a separate question

13   for the fraud and the separate question for the express

14   warranty, that the plaintiff relies on the allegations for its

15   fraud claim that are set forth in the master complaint and if

16   it has any additional allegations, they're set forth below,

17   something to that effect, okay?

18             MS. LOCKARD:  All right, we'll work on that --

19             THE COURT:  I think that will satisfy you.

20             MS. LOCKARD:  We'll work on that language, Your

21   Honor.  Thank you.

22             THE COURT:  Okay.  I think that satisfies you.  But

23   again, I -- at the end of the day I don't see this as a big

24   issue because I think the short form complaints are going to

25   rise or fall with whatever Judge Kugler does with the master

1    complaints, unless an individual plaintiff makes additional

2    specific allegations.  And if they don't, they're just going to

3    be bound by the ruling on the master complaint.

4            Okay.  The second issue has to do with this -- how to

5    list the parties, I take it.  I think it's a good idea that the

6    plaintiffs check or identify what specific defendants they're

7    making claims against.  I have the latest draft that was sent.

8    Is there an issue with this latest draft?

9            MS. GOLDENBERG:  Your Honor, this is Marlene

10   Goldenberg.  My understanding of the defendant's issue with the

11   plaintiff's draft is they just would prefer that the defendants

12   all be listed in alphabetical order which would make it very

13   difficult for a non-PSE member, plaintiff's attorney to figure

14   out which boxes they should be checking.

15           MS. LOCKARD:  And if I may, Your Honor -- again,

16   Victoria Lockard.  So the version that you were looking at, so

17   -- so there are several rounds of redlines back and forth so it

18   may be difficult to discern what's intended here, but

19   essentially the -- the draft that the plaintiffs proposed,

20   they've bundled defendants along the supply chain into these

21   different groupings, almost like a prefixed menu.

22           So it's like, you know, you take this API

23   manufacturer with this finished dose manufacturer with this

24   repackager and they're like a package deal.  And they're

25   suggesting in the complaint that these are all -- and they even

1   call them "related defendants" --

2           THE COURT:  Oh, I see.

3           MS. GOLDENBERG:  -- and our position is --

4           THE COURT:  Okay.

5           MS. GOLDENBERG:  -- they're not related --

6           THE COURT:  I see.

7           MS. GOLDENBERG:  -- and that they should have to list

8   -- we don't have to list every defendant A to Z, but let's

9   group them by --

10          THE COURT:  Right.

11          MS. GOLDENBERG:  -- API manufacturers --

12          THE COURT:  Yeah.

13          MS. GOLDENBERG:  -- A to Z and -- and retailers

14  and --

15          THE COURT:  Yeah.

16          MS. GOLDENBERG:  -- finished dose manufacturers --

17          THE COURT:  Yeah.

18          MS. GOLDENBERG:  Like I'm fine with all the Teva

19  defendants being grouped into one block, but I don't

20  necessarily want Teva grouped with Mylan and --

21          THE COURT:  Yeah.

22          MS. GOLDENBERG:  -- you know, AvKARE and all that.

23          MR. SLATER:  You know, here's the problem, Judge --

24  it's Adam Slater -- is that as the defense said in their

25  letter, they don't think that the grouping -- forget about it

1    saying "related defendants."  That's easy, that's a word.  We

2    can change that.  I mean, we can call it -- we can call it

3    whatever we want, so if they want to change the title of each

4    of these sections, nobody cares.

5              But they put in their letter that our lists and our

6    groupings are not accurate.  And, you know, that's what -- and

7    -- and I don't mean to step on Marlene's toes, but she's been

8    asking for this, you know, tell us the accurate groupings.

9              I mean, we're this far into the litigation and we

10   still don't have -- and remember we tried to do this earlier in

11   the litigation and, you know, we said we want, you know,

12   complete disclosure of all the supply chains, all the

13   relations, how everybody integrates together, and we don't have

14   that yet.

15             So, you know, it should be accurate and it should be

16   there and it should be easily, you know, done to where you can

17   usually figure out for somebody who manufactured it, how was it

18   distributed, all the way down to the pharmacy for the person.

19   I mean, you can figure that out if you know where to look and

20   you know how to do it.

21             But as Marlene said, we need this to be good so it's

22   easy for anybody to do it until it's accurate, so I say have

23   the defendants take -- make it accurate.  Tell us what's

24   inaccurate there and put the groupings together and then, you

25   know, we'll check them.

1          You know, the alternative was -- which they didn't

2     want to do, was to just literally list them all without the

3     need to chop (phonetic) and just say, because we have this

4     dismissal order on the repackagers and, you know, those who

5     make it out of the gate, these people are -- you know, they're

6     not being sued now but there's a -- there's a tolling

7     agreement, so that they're all potentially in the case.

8          I mean, but we have to be able to capture them or

9     know that they're captured administratively one way or another,

10    and if there's an accuracy issue, we need the defendants to

11    tell us exactly how these people should be grouped and these

12    entities should be grouped now.  With this going to litigation,

13    I think it's time to have that done even not just for the short

14    form, but for all purposes.

15         THE COURT:  Let me ask defendant, forget about

16    related defendants for the moment, talk about the different

17    groups of defendants.  After the API manufacturer, what's the

18    next group of -- sort of the class of defendants?  What would

19    it be?  The finished-dose manufacturers?

20         MS. LOCKARD:  Yes, that's -- if I understand your

21    question, that's right.  So they're the -- the API manufacturer

22    who then supplies to the finished-dose manufacturer --

23         THE COURT:  And after that --

24         MS. LOCKARD:  -- but they're not --

25         THE COURT:  Okay --

1            MS. LOCKARD:   -- they're not -- they're not always

2    lock step --

3            THE COURT:   I understand.  I understand.  So after

4    the finished dose, would it be the repackager?

5            MS. LOCKARD:   So then it would be the repackager --

6            THE COURT:   Then the pharm --

7            MS. LOCKARD:   -- (inaudible) --

8            THE COURT:   Would it be the -- which would be next,

9    the wholesaler or the pharmacy?

10            MS. LOCKARD:   So there would be in some cases a

11    labeler, distributor, but not in all cases --

12            THE COURT:   Okay.

13            MS. LOCKARD:   -- and then there would be wholesalers

14    and pharmacies.

15            THE COURT:   So why can't we instead of grouping the

16    parties like this version that I have "related defendants," why

17    not have the groupings list the four API manufacturers, then

18    list all the finished dose manufacturers, then all the

19    repackagers, wholesalers, distributors, labelers, pharmacies,

20    have those categories instead of this "related defendant"

21    issue.

22            MS. GOLDENBERG:   Your Honor, this is Marlene

23    Goldenberg, if I could chime in on that, I think the problem

24    from a practical standpoint is that -- I -- I can tell you that

25    having put together this list, this was the result of hours of

Colloquy                                    21

1   pouring through recall notices that took place over a month

2   from the FDA.

3          A lot -- and I don't expect, as much as we would like

4   this to happen, that every single attorney out there in the

5   country is going to do the same thing.

6          So the problem is if they know that their client had

7   Valsartan that came from AvKARE, AvKARE under the scheme that

8   was just proposed is going to be in the repackager's grouping,

9   but that attorney doesn't know how AvKARE might be related to

10  Actavis, who then got their product from Teva Pharmaceutical

11  Industries who got it from Huahai and ZHP.

12         If we group them in the way that they're in the

13  complaint right now, it gives people a sense of which

14  defendants are in the same supply chain, and candidly, this was

15  done to make sure that people didn't get -- or sued, if you can

16  use that term in this case, because the risk that we run is if

17  a -- if an attorney doesn't know, then the prudent thing to do

18  for their client is to check all the boxes and figure it out

19  later.

20         And so we put this together with the hope that the

21  complaints would be filled out in a more precise manner and I

22  worry that a scheme where people are grouped at the level that

23  they're at in the distribution chain isn't going to be a

24  tussle.

25         THE COURT:  Counsel, I'm glad you relayed that

1    comment.  Let me say this in response to that.  There's a

2    couple of general themes that I think Judge Kugler and I are in

3    lockstep about and that cut across every single avenue of this

4    case.

5           One is that we want to get to the crux of the merits

6    and not be distracted by tangential issues, that's one.  That's

7    why we ordered the core discovery to be produced by the

8    defendants right away.

9           The second issue is the plaintiffs have skin in this

10   game.  They are not going to simply be able to fill out a piece

11   of paper and make a phone call and pursue a case in Federal

12   District Court.  They're going to be subject to Rule 11.

13   They're going to be subject to Rule 26(g), and they're going to

14   be subject to the requirement that they file the Rules of

15   Procedure.

16          There's going to be consequences if plaintiffs, to

17   protect themselves, don't do due diligence and sue defendants

18   who they have no good faith basis to sue.  They have to do

19   their homework.  They have to do their due diligence.  They

20   have to act in good faith.  There's no exception to that

21   because we're in an MDL.

22          It's not a high burden, it's the same burden that

23   applies in every other case.  That's why we were going to

24   require that, you know, affidavits and declarations be

25   submitted, et cetera, et cetera.

1    We're not going to take short cuts around the Federal

2    Rules of Civil Procedure and Rule 11 and Rule 26(g) because

3    we're in an MDL.

4        In fact, because we're in an MDL, closer scrutiny

5    should be paid to that to make sure that we're only dealing

6    with potentially merit -- merit claims.  So if it means a

7    plaintiff's attorney has to do due diligence before they check

8    a box, that is not a high burden and that does not create

9    problems for the Court.

10        So I do think after reviewing this that the way it's

11   set up now is confusing and could create mischief because the

12   defendants are saying that although there's relations, it's not

13   necessarily in every case, I agree with plaintiffs that it's

14   completely inappropriate to group all defendants together in

15   alphabetical order because that's as confusing.

16        It just seems to me that the most logical way to

17   group the defendant is in the class of defendants they're in --

18   API manufacturer, finished dose, repackager, et cetera, et

19   cetera.  And if one company is in more than one category, so be

20   it.

21        But when the plaintiff checks that box, they're going

22   to be required -- they're going to know that they're subject to

23   Rule 11 and Rule 26(g), so I don't think that's a heavy burden

24   to require of these plaintiffs.

25        Certainly in a Federal District case where -- you

 1    know, I can just assume how much money they're going to ask for

 2    at the end of the day in this case, they've got skin in the

 3    game and they're going to have to do their homework before they

 4    file these complaints.

 5              I think that's what the defendant's concern was and

 6    it's a very legitimate concern to weed out merit-less claims.

 7    So my suggestion is that the parties be classified according to

 8    the category they're in and we've gone through that, rather

 9    than this "related defendant" category.

10              Unless you agree on if Teva and the plaintiffs agree

11    that they want to do it that way, that's fine with the Court,

12    but if they don't agree, they ought to break it up into the

13    different categories.

14              MR. SLATER:  Your Honor, a question for you.  If

15    we're not going to set up the short form complaint by supply

16    chain, which is really what we were trying to do to make it

17    really much more of a coherent -- what we thought was more

18    coherent, something you just -- if you know you got it from

19    this place, it goes up the chain from here and you just check

20    this box and that box and you're done, or -- or whatever boxes,

21    if you got it from more than one place, et cetera, if Your

22    Honor's ruling is group them by where they are in the supply

23    chain like (inaudible) would be together and finished dose

24    would be together, repackaging would be together, et cetera,

25    what I think we really need -- and I think we need this quickly

1    and I think we need frankly an order from the Court that this

2    gets done quickly, is we need the defendants to commit to every

3    supply chain that applies to this litigation so that we have

4    that information so we can then circulate that to all of the

5    plaintiff's attorneys and make that available to our position )

6    of leadership so that the plaintiffs will have that information

7    and you'll have the lead list between the plaintiffs and

8    defendants so there's no dispute later about whether a party

9    belongs in a supply chain or not.

10            So that there's no mistakes, there's no confusion

11   later, I think if we're going to do it in that way, either it

12   has to be a supply chain that's confirmed as accurate in the

13   short form, or if they don't do it and they do it the way Your

14   Honor said which is -- obviously we respect that, we need them

15   to give us complete and accurate lists of every supply chain so

16   we can then circulate that to everybody so everyone knows what

17   to check the boxes on.

18            THE COURT:  When you say "supply chain," Mr. Slater,

19   do you mean for example -- an easy one, the easiest one is the

20   API manufacturers, right?  We know --

21            MR. SLATER: Sure.

22            THE COURT:  We know who they are.  You want to make

23   sure that -- what, every API manufacturer is identified or that

24   of the defendants that are named in the complaint, these are

25   the only API manufacturers?

1          MR. SLATER:  No.  No, what I'm saying is if -- if you

2     have for example, you have a plaintiff whose -- whose lawyer is

3     now filling out the short form and they're figuring out who

4     they need to check the boxes on the defendants, you need to

5     know the supply chain.

6          For example, if somebody bought down the street in

7     Roseland, New Jersey at the Walgreens their Valsartan for six

8     or eight months, you can look at the -- the bottles and you can

9     look at the information and figure out if you know where you're

10     looking -- and the defendants have this information probably a

11     lot better than we do at this point -- where did that come

12     from?

13          Which -- which wholesaler or distributor would have

14     gotten into that pharmacy.  And then which repackager got into

15     that distributor and which finished dose manufacturer sold it

16     to them and which line (phonetic) manufacturer did it come from

17     because, you know, that -- that can be figured out if you know

18     all the codes, et cetera.

19          But we need them to confirm each of their supply

20     chains so that plaintiff knows who to see (phonetic).

21     Otherwise, it's -- you know, it's complete guess-work and --

22     and obviously we agree, nobody should just be checking boxes

23     willy-nilly, you know, every box, just to save themselves.

24          But we need -- we need the defendants to tell us what

25     all the supply chains are so we know in a particular case if a

1    plaintiff's bought the -- was supplied the drug by a certain

2    source, how it goes up the ladder to the API manufacturers so

3    you know who in that chain was seen in that case.

4         THE COURT:  Mr. Slater that -- that sounds to me like

5    discovery.  What we're trying to do is we're trying to --

6    suppose we weren't doing a short form complaint and a plaintiff

7    had to file the 47 or 48-page complaint that everybody's

8    filing.  You wouldn't have the information that you're

9    requesting of the defendants before that complaint is filed,

10   right?

11        MR. SLATER:  No, we didn't have it and we didn't

12   already have -- put it together.  I don't think what we're

13   asking for is really discovery.  I think what we're asking for

14   is basically we want to create a joint stipulated list of all

15   the supply chains so that we're all on the three basic

16   foundational level going forward in this litigation because we

17   may be wrong.  I mean, we may --

18        MR. HONIK:  Your Honor --

19        MR. SLATER:  -- have gotten --

20        MR. HONIK:  Your Honor, this is Ruben Honik.  Let me

21   illustrate the problem by trying to answer your question

22   directly.  If this was a one-off case and I represented a

23   person who went to CVS and got Valsartan and developed a cancer

24   which was related to the presence of NDMA, at the most, my

25   client, when -- when they come to my office in my initial due

1    diligence which would satisfy the Federal Rules, he'd likely

2    know two things -- that he got it from CVS and it's Teva.

3              And although -- and so in filing the complaint, what

4    I would do as an attorney is to definitively state that was the

5    source, and then I would plead in the alternative that he got

6    it from one or more of the following distributors -- I'd name

7    them all.

8              I would then say it was likely repackaged by one or

9    more in the alternative of the following repackagers, on and on

10   and on, so what I would effectively be doing is identifying the

11   one or two definitive defendants, and then pleading all of them

12   in the alternative.

13             So looping back to my initial comment, we really

14   wanted to avoid that, and the easiest and best way to do it,

15   for example, is to have -- is to have Teva, to use one

16   illustration of a finished dose manufacturer, say this is the

17   only way our -- our Teva drug gets to CVS, this is the chain.

18             And it may be that in defining the chain, they may

19   say that there are two wholesalers who can produce Teva, and

20   then -- and then if that's what we have in the short form

21   complaint, we'll check the two, but we won't check four.  Every

22   single finished dose defendant in this case can do that.  They

23   can effectively give us a tree that says this is the only way

24   our drug get into your hand.

25             So what Adam is conveying is that if we simply have

1    that, I guess technically is discovery, but it's so critical at

2    the outset to have an efficient process where we're not suing

3    too many manufacturers, it will allow us to have a much more

4    streamlined and efficient process where, you know, we're not

5    checking, for example, all the repackager boxes because we

6    can't be a hundred percent sure who -- who touched them in the

7    repackaging part of the distribution chain.

8            So if -- I think -- I think Your Honor is grouping it

9    the right way, but Adam's point in closing the loop is please

10   direct the defendants because they're very capable of doing

11   this.  They know this information today, simply giving us a

12   simple line drawing or a tree that shows the only pathway in

13   which a consumer can get their drug.

14           MS. LOCKARD:  Your Honor, if I may, now see,  we've

15   heard from three of the plaintiffs --

16           THE COURT:  Just identify yourself for the record,

17   please.

18           MS. LOCKARD:  It's Victoria Lockard, Your Honor.  So,

19   you know, I am very -- with Your Honor, concerned about putting

20   the cart before the horse on discovery here, but you know,

21   we've expanded this now from a discussion of how the defendants

22   should be listed in the short form to what type of a discovery

23   we should be providing, and it's not a simple line drawing.

24           There are upwards of 50 defendants now involved,

25   there are various permutations.  However, you know, the

Colloquy                                                        30

 1   plaintiff has as they said, they put in hours studying the

 2   recall notices and they have this information.  That's how they

 3   came up with the groupings that are listed here.

 4         So if they want to provide direction to their, you

 5   know, colleagues and brethren who are going to be filing these

 6   suits, you know, they can certainly do that.

 7         But, you know, trying to require that, you know, we

 8   produce a bunch of discovery, you know, before the complaints

 9   are even filed, there's no justification for that here.

10         They have the same pleading requirements as they

11   would in any case and whereas it may not be a perfect system,

12   you know, there will be some adjustments, the parties are going

13   to have to work together to try to get the right parties in the

14   right cases, you know, we're willing to do that.

15         But -- but just the proposal has now, you know,

16   expanded well beyond that -- the scope of the discussion which

17   was just the groupings.  We agree with the grouping Your Honor

18   has proposed, that's what -- that's what we proposed as well,

19   that they be grouped by category, you know, and the recall

20   notices and the other research done by plaintiffs should be

21   sufficient enough for the others to make, you know, more than

22   just wild type guesses.

23         THE COURT:  Here's the -- here's the --

24         UNIDENTIFIED SPEAKER:  And all we'd ask them to do is

25   to say whether the groupings as we've gotten it is correct or

1    not.  That's all.

2               THE COURT:  Here's the --

3               UNIDENTIFIED SPEAKER:  I mean, it shouldn't be a

4    shell game where we have to guess whether what we have is

5    correct.

6               THE COURT:  Here's the Court's ruling with regard to

7    the second issue on the short form complaint.  The defendants

8    shall be organized according to the category or class of

9    defendants they're in.  You know better than me what the

10   categories are -- API manufacturers, finished dose

11   manufacturers, repackagers, pharmacies, wholesalers, labelers,

12   distributors.

13              I don't know if there's any more.  Different

14   companies may fit into different categories.  Let's get a draft

15   with that layout with the two questions that we talked about

16   are going to be answered, and we'll see if we have any other

17   issues.  If we could finalize this in two weeks at the in-

18   person conference and just -- I'm just reluctant to require the

19   defendants to give discovery in order to have plaintiffs file a

20   short form complaint, the purpose of which is to save

21   plaintiffs time and effort.

22              I don't think the short form complaint requires a

23   plaintiff to do anything other than what they're required to do

24   if they have to file a normal complaint.

25              Mr. Honik, I'm not so sure I agree with what you said

1   would happen if this was a one-off case.  I don't think you --

2   I think you would sue CVS, I think you would sue whoever you

3   knew supplied CVS, and then -- and then after the complaint's

4   filed, you'd get discovery and you'd amend your complaint.

5          There might be Rule 11 problems if you say well, it

6   may be this other company and to protect ourselves, we're going

7   to sue them.  I don't think you would do that.

8          You might name John Does, but and that's an idea,

9   maybe you should add John Does to each category to protect the

10  plaintiffs if they don't know who it is.  So that's the Court's

11  direction.  Let's see what it looks like at the next conference

12  and hopefully it will finalize it by then.

13         All right, so that takes care of the two issues with

14  regard to the short form complaint.

15         The plaintiff fact sheets, are we going to be able to

16  finalize that in two weeks?

17         UNIDENTIFIED SPEAKER:  If you make us we will.

18         THE COURT:  What's the status of it?

19         UNIDENTIFIED SPEAKER: Drafts of the redlines have

20  been exchanged, we're talking, we're trying to narrow the

21  issues.  I would expect, Your Honor, that there are definitely

22  going to be some disputed issues in terms of scope of what's

23  being sought through these.

24         THE COURT:  Okay, let's --

25         UNIDENTIFIED SPEAKER:  The fact sheets in this

1    litigation, there's no doubt there will be some disputes for

2    you --

3              THE COURT:  Yes.

4              UNIDENTIFIED SPEAKER:  -- but I would think, you

5    know, in two weeks we should be able to at least narrow down --

6    and there will probably be some categories of disputes frankly

7    but nothing, you know, --

8              THE COURT:  Okay.

9              UNIDENTIFIED SPEAKER:  -- repeat.

10             THE COURT:  Okay, why don't we raise all disputes in

11   time to be addressed and decided at the next conference.  You

12   know, we promised Ms. Cohen that this would be a priority item

13   and we're going to follow through with that.

14             In a few days the defendants are going to get --

15   plaintiffs are going to get defendant's core discovery so we'd

16   like to start getting discovery in defendant's hands.

17             MS. LOCKARD:  And we agree -- it's Victoria Lockard,

18   Your Honor, and Ms. Cohen couldn't be here, she's in Court

19   today, but she did want me to make sure that we were vocal on

20   this, that it is -- it remains important to her, so we want to

21   get this finalized and we'll -- we'll roll up our sleeves with

22   plaintiff's counsel and try to get as much of it hashed through

23   as we can before the next conference.

24             THE COURT:  Yes, we'll just get all disputes

25   resolved.  I don't think this is heady stuff, so we should be

 1   able to get through it pretty fast.  Dismissal of peripheral

 2   defendants -- I know that's a difficult issue.  I'm guessing

 3   the parties are working on that.  It's probably not close to

 4   being resolved, but hopefully the parties are continuing their

 5   discussions.

 6           MS. GOLDENBERG:  Yes, Your Honor, this is Marlene

 7   Goldenberg, we've had productive -- a productive session the

 8   other day and another one that was productive as well this

 9   morning.

10           THE COURT:  Okay.  So let's discuss it at the next

11   conference, but this is a ticklish issue and I understand why

12   it's going to take time to get this finalized, so it sounds

13   like the parties are acting in good faith so we'll just keep on

14   that track.

15           MR. SLATER:  And, Your Honor, just to -- earlier when

16   I was -- I was speaking, I think somebody jumped in, I was

17   almost done.  The last thing I was going to say frankly is that

18   the need for the confirmation that we understand the supply

19   chains and how everybody relates to them in other words, is

20   actually also going to be important in terms of our willingness

21   to dismiss the so called "peripheral defendants" --

22           THE COURT:  Yes.

23           MR. SLATER:  -- because we need to know where every

24   one of them fits into every supply chain.  So we don't need --

25   we don't need it for a short form complaint, but we do need

                                    Colloquy                          35

1    it --

2                THE COURT:  Yes.

3                MR. SLATER:  -- to determine the peripheral

4    defendants and also to understand everything we're going to be

5    reading so again, I would urge the Court, they're not asking

6    for anything other than for us to be able to send them our

7    understanding of the supply chain and then for them to get back

8    to us and tell us what's accurate or inaccurate or what's

9    missing, just so that everybody is playing on the same 100-yard

10   field going forward and everybody knows who everybody is.

11   Because again, we're going to need that before we can dismiss

12   anyone from the case and know where they fit in anyway.

13               THE COURT:  Mr. Slater, I think you took the words

14   out of my mouth because when it comes to the dismissal issue,

15   plaintiff has to be satisfied before it agrees to dismiss the

16   defendant that they have the relevant information they need to

17   evaluate that defendant, so I think it behooves the defendants

18   if they want to get out of the case to give plaintiff what they

19   want, which would include the sort of information that you're

20   looking for.

21               So we'll discuss this further in two weeks, but I'm

22   on the same page as you.  The Court is not going to force the

23   plaintiffs to dismiss defendants, it can't do that.  It will

24   encourage plaintiffs to do that.

25               But in order for plaintiffs to do that, the Court

1    recognizes that plaintiffs have to be satisfied they have the

2    relevant information to make that informed choice which would

3    include the sort of information you're asking for, Mr. Slater.

4    So I think with regard to that issue, I think we're on the same

5    page, so let's discuss that further in two weeks.

6              Okay, that concludes the three items on the agenda.

7    Are there any other issues that we need to address on this

8    call?  The next call we'll hopefully finalize the short form

9    complaint, we'll decide the disputes regarding the fact sheets,

10   further discuss this peripheral defendant issue and this

11   information that plaintiffs need for that.  I'm not sure, what

12   other issues come up --

13             MR. GOLDBERG:  Your Honor --

14             THE COURT:  -- in order to advance the ball, we

15   already set up conferences for when we're going to address any

16   disputes regarding the insurance disclosures and core

17   discovery, so that's in place.  Are there any other issues --

18             MR. GOLDBERG:  Your Honor --

19             THE COURT:  -- we need to discuss?

20             MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  We

21   included in defendant's submission that we -- that we submitted

22   yesterday in number four just to give Your Honor -- to alert

23   the Court that in two of the State Court --

24             THE COURT:  Oh.

25             MR. GOLDBERG:  -- actions that are pending in New

Colloquy                          37

1    Jersey --

2              THE COURT:  Okay.

3              MR. GOLDBERG:  -- we have a case management

4    conference on July 18th.  Judge Kugler last -- at the last

5    conference said he was going to be reaching out to you --

6              THE COURT:  Yes.

7              MR. GOLDBERG:  -- this Court.  I just want to alert

8    the Court in case that those calls hadn't yet been made --

9              THE COURT:  Yes.

10             MR. GOLDBERG:  -- it would be helpful if they are in

11   advance of the conferences last -- next week.

12             THE COURT:  Thanks for reminding me of that, Mr.

13   Goldberg.  He's not in today, Judge Kugler, but I'll be in

14   contact with him and knowing Judge Kugler, he'll make -- if he

15   hasn't already done it, he'll be in contact with them before

16   the conference.  But your suggestion is a good one.

17             MR. GOLDBERG:  Thank you, Your Honor.

18             THE COURT:  All right, oh, on the MDL -- on the MDL

19   front, Mr. Honik, anything happen with that?

20             MR. HONIK:  We're continuing to own our petition and

21   we're on track to get it on file so as to be heard in

22   September.

23             THE COURT:  Great.  Are there any other issues or

24   matters you'd like to address on this call, counsel?  We'll

25   draft an order just confirming what we've discussed today.

38

1    Anything else we need to discuss?

2              MR. GOLDBERG:  Nothing from defendants, Your Honor.

3              MR. SLATER:  Nothing from the plaintiffs.

4              THE COURT:  Thank you, counsel, we're adjourned.

5

6              (Matter concluded, 4:56 p.m.)

7                        *  *  *

8

9

10              C E R T I F I C A T I O N

11

12              I, Diane Gallagher, court approved transcriber,

13    certify that the foregoing is a correct transcript from the

14    official electronic sound recording of the proceedings in the

15    above-entitled matter.

16

17    _____        _____

18    DIANE GALLAGHER                DATE

19    DIANA DOMAN TRANSCRIBING, LLC

20

21

22

23

24

25