IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA) CONTAMINATION PRODUCTS LIABILITY LITIGATION | Civil No. 19-2875 (RBK/JS) |

**MEMORANDUM OPINION AND ORDER**

This Opinion addresses defendants' request for discovery directed to plaintiffs' "litigation funding."[1] Generally, defendants want to discover whether plaintiffs are backed by litigation funders, the details of the financing, and communications regarding the financing. The Court received defendants' letter brief [Doc. No. 189] and plaintiffs' opposition [Doc. No. 188]. The Court exercises its discretion to decide this discovery dispute without oral argument. Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons discussed herein, defendants' request is denied.

---

[1] Litigation financing in the MDL context, "refers to any agreement under which any person, other than an attorney, permitted to charge a contingent fee representing a party, has a right to receive compensation that is contingent on and sourced from any proceeds of an MDL." In re: National Prescription Opiate Litigation("Opiate Litigation"), Case No. 1:17-MD-2804, WL 2127807, at *1 (N.D. Ohio May 7, 2018). The Court does not presently know whether any plaintiff has an arrangement with a litigation funder.

Background

By way of background, this Multidistrict Litigation ("MDL") concerns various FDA and voluntary recalls of contaminated valsartan, a generic prescription medication indicated in the treatment of high blood pressure and other conditions.[2] The February 14, 2019 Transfer Order of the Judicial Panel on Multidistrict Litigation is reported at In Re: Valsartan N-Nitrosodimethylamine (NDMA) Contamination Products Liability Litigation, 363 F. Supp. 3d 1378 (MDL No. 2875 2019). Plaintiffs generally allege defendants' valsartan contained carcinogens that caused personal injuries and economic losses. Defendants deny their drugs caused any injuries or damages, although it is not disputed that at least some of defendants' drugs were contaminated. Presently approximately 60 defendants are named. These defendants include manufacturers of the active pharmaceutical ingredient ("API"), suppliers, repackagers, wholesalers, and retailers. Some of the "lead" defendants, API manufacturers, are located in China and India. Given the number of potential plaintiffs, the amount in dispute, the seriousness of plaintiffs' claimed injuries, and

---

[2] The recalls at issue started in 2018 and continued into 2019. The Court understands plaintiffs recently filed a Motion to Transfer and Expand the Scope of MDL 2875 with the Judicial Panel on Multidistrict Litigation to include "all Federal cases concerning Angiotensin Receptor Blockers ("ARB's") contaminated with carcinogenic contaminants." Defendants' September 11, 2019 Letter Brief ("DLB") at 5, Doc. No. 213. Plaintiffs recently clarified that their present intention is only to expand the MDL to include contaminated losartan and irbesartan.

the fact that some "target" defendants are located overseas, this MDL will undoubtedly be costly to prosecute and defend.

Since the first case management conference in March, 2019, much has been done to organize and manage the case. This includes designating and approving the parties' leadership structure (CMO No. 6, Doc. No. 96), and identifying the "core discovery" to be produced by defendants (April 29, 2019 Order, Doc. No. 88).[3] In June, 2019, three consolidated "master complaints" were filed. These complaints generally grouped plaintiffs into three categories. The first master complaint addresses the claims of individual plaintiffs [Doc. No. 122] who allege they contracted various forms of cancer from consuming defendants' contaminated valsartan. To date approximately 126 personal injury cases of this type have been filed. Plaintiffs' counsel estimates approximately 2,000 cases may eventually be filed. The second master complaint [Doc. No. 123] is a nationwide medical monitoring class action filed on behalf of all "individuals who consumed [contaminated] generic valsartan-containing drugs … at least since January 1, 2012[.]" Id. at ¶390. The potential class size is

---

[3] The Court defined "core discovery" as discovery that is, "(1) easily identifiable, (2) unquestionably relevant and not privileged, (3) relatively simple to retrieve, and (4) discrete." See April 29, 2019 Order at 1 n. 1, Doc. No. 88. The purpose of this early production was to focus the parties' efforts on key issues, to enable plaintiffs to promptly and efficiently identify the relevant ESI and documents to request, and to reduce the likely substantial cost of defendants' ESI production.

undoubtedly in the tens of thousands. The third master complaint (Doc. No. 121) is a nationwide economic class action filed on behalf of "[a]ll individuals and entities … who, since at least January 1, 2012 to the present, paid any amount of money for a valsartan-containing drug [.]" Id. at ¶413. This class size is also expected to be very large.

To date, no formal discovery has been directed to plaintiffs. The Court expects to shortly approve "Fact Sheets" to be answered by all personal injury plaintiffs and the named class representatives. As to defendants, the "lead" parties have already produced most of what has been denominated as "core discovery."

The present discovery dispute arose in the context of what questions would be included in plaintiffs' Fact Sheet to be answered. Specifically, defendants propose to require each plaintiff to produce the following: "all documents and communications related to funding or financing, if any, you or your counsel have obtained to pursue this litigation."[4] Defendants' letter brief identifies precisely what they want:

> Defendants seek to obtain information about Plaintiffs' agreements and communications with any third-party funders of the litigation, including Plaintiffs' documents and communications relating to or concerning any litigation finance obtained in connection with this litigation, documents and communications regarding conferences, meetings or conventions attended with the purposes of seeking litigation finance, and documents and

---
[4] As is apparent, defendants asks for litigation funding discovery from plaintiffs and their attorneys.

4

communications relating to agreements to finance
this litigation.

DLB at 1.

Not unexpectedly, plaintiffs object to producing discovery regarding their litigation funding. Albeit, plaintiffs are willing to produce some documents for an in camera review. Plaintiffs argue their private financial information is irrelevant to their claims and defenses and defendants have "no legitimate need for the requested information." Plaintiffs' Letter Brief ("PLB") at 2. Plaintiffs, however, agree to submit documents to the Court for an in camera review, "where the litigation funding company has control or input into litigation decisions, including settlement, which could interfere with a plaintiff's control of his, or her lawsuit and the attorney-client relationship." Id.

Defendants disagree with plaintiffs and contend "third-party funding represents a critical piece of information to which Defendants are entitled." DLB at 1. Defendants argue the requested discovery is relevant to identifying, "the real party in interest as to some or all of the claims alleged in this action," and whether plaintiffs have standing to sue. Id. Defendants also argue plaintiffs' funding information is relevant to determining: (1) plaintiffs' credibility and bias, (2) the scope of proportional discovery, (3) the scope of potential sanctions, and (4) the "medical necessity and the reasonableness of plaintiff's treatments." Id. at 2. Defendants argue, "[t]he recent history

of mass tort multi-district litigation is littered with examples of undisclosed non-party involvement gone wrong to the detriment" of the legal process and public health. Defendants also argue that "courts and legislators lean toward mandating disclosure of third-party funding." Id. at 4.

Discussion

This is not the first instance, nor likely the last, where defendants in a MDL mass tort case seek discovery directed to plaintiffs' litigation funding. Scores of courts and commentators have already addressed the issue. This Court can add little to the existing discourse and is left to essentially parrot what has already been written. At bottom, courts are split on the issue and plaintiffs and defendants can each cite to cases supporting their positions. What is not in dispute is that there is no binding Third Circuit precedent on whether a plaintiff's litigation funding is a proper subject of discovery. Nor is the Court aware of any published New Jersey District Court authority on point.[5]

1. As to Relevance, Plaintiffs Have the Better Argument

---

[5] In Mershon v. Elastic Stop Nut Div. of Harvard Industries, Inc., C.A. No. 87-1319 (HLS), 1990 WL 484152, at *12 (D.N.J. March 23, 1990) (citation omitted), the Court merely stated, "[t]hird party funding, in and of itself, does not make the named plaintiffs antagonistic to the interests of the class." The decision did not address a discovery issue.

After considering the present record and the relevant case law, the Court rules in plaintiffs' favor. The Court finds that litigation funding is irrelevant to the claims and defenses in the case and, therefore, plaintiffs' litigation funding is not discoverable.

The scope of relevant discovery is set forth in Fed. R. Civ. P. 26(b)1). This Rule permits discovery regarding, "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" The Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant. See Benitez v. Lopez, 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *1 (E.D.N.Y. March 14, 2019) ("As to the litigation funding documents, Defendants fail to establish that such discovery is 'relevant to any party's claims or defense.'" Also stating, "[t]he financial backing of a litigation funder is as irrelevant to credibility as the Plaintiff's personal financial wealth, credit history, or indebtedness. That a person has received litigation funding does not assist the factfinder in determining whether or not the witness is telling the truth."); Miller UK Ltd. v. Caterpillar, Inc., 17 F. Supp.3d 711, 742 (N.D. Ill. 2014) ("Caterpillar is not entitled to discover the amount of money sought or received by Miller, the details of the agreement it has with its funder, or how much the funder will receive if Miller wins the case. In the setting of

7

this case, that information is simply irrelevant."); Kaplan v. S.A.C. Capital Advisors, L.P., S.A.C., No. 12-CV-9350 (VM)(KNF), 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015), aff'd, 141 F. Supp. 3d 246 (S.D.N.Y. 2015). (denying defendants' request for plaintiffs' litigation funding documents on the ground that "defendants did not show that the requested documents are relevant to any party's claim or defense."); Space Data Corp. v. Google LLC, Case No. 16-cv-03260 BLF (NC), 2018 WL 3054797, at *1 (N.D. Ca. June 11, 2018) (denying litigation funding discovery and stating, "[t]he Court is not persuaded that the materials sought are relevant to any party's claim . . . ."); MLC Intellectual Property LLC v. Micron Technology, Inc., Case No. 14-cv-3657-SI, 2019 WL 118595, at *2 (N.D. Ca. Jan. 7, 2019) (denying litigation funding discovery and stating, "[t]he Court concludes that [defendant] is not entitled to the discovery it seeks because it is not relevant."); Yousefi v. Delta Electric Motors, Inc., No. 13-CV-1632 RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("[w]hether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from [a] union is not relevant to any claim or defense at issue.").

To be sure, the Court is not ruling that litigation funding discovery is off-limits in all instances. In cases where there is a showing that something untoward occurred, the discovery could be relevant. In other words, rather than directing carte-blanche

8

discovery of plaintiffs' litigation funding, the Court will Order the discovery only if good cause exists to show the discovery is relevant to claims and defenses in the case. For example, discovery will be Ordered where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or are not being protected, or conflicts of interest exist. However, no such evidence has been raised by defendants and, to date, the Court has not seen anything of the sort.

Although defendants raise a parade of horribles that could or may arise from litigation funding agreements, none has occurred here. Nor is there any reason to believe that anything untoward will occur in the future. The fact that defendants have raised no nonspeculative basis for their discovery request results in its denial. Kaplan, 2015 WL 5730101, at *5; see also VHT, Inc. v. Zillow Group, Inc., Case No. C15-1096 JLR, 2016 WL 7077235, at *1 (W.D. Wash. September 8, 2016)(denying litigation funding discovery "[w]ithout some objective evidence that any of [defendant's] theories of relevance apply to [the] case."); see also In Re: Riddell Concussion Reduction Litigation, C.a. No. 13-7585 (JBS/JS), 2016 WL 7325512, at *3 (D.N.J. Jan. 19, 2016) (discovery of the class representatives' fee agreements denied on the ground that the defendant's arguments were "speculative and

insufficient to demonstrate the relevance of the sought-after fee agreements.").

Even if plaintiffs' litigation funding is marginally relevant, which is not the case, defendants' requested discovery would be denied because it is not "proportional to the needs of the case." Rule 26(b)(1); <u>Space Data Corp</u>., 2018 WL 3054797, at *1 (emphasis in original) ("[e]ven if litigation funding were relevant (which is contestable), <u>potential</u> litigation funding is a side issue at best. The Court finds that there is much discovery that would be more . . . important in resolving the merits of this case."); <u>Miller UK Ltd.</u>, 17 F.Supp. 3d at 721 (discovery was never "intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest.").

The parties have just begun to scratch the surface regarding discovery directed to the important issues in the case. Plaintiffs' Fact Sheets are not finalized and defendants have only produced core and not complete Rule 26 discovery. Plaintiffs' litigation funding is a "side issue" that has nothing to do with addressing the key issues in the case such as what caused defendants' valsartan contamination, whether the contamination caused any injuries, and whether plaintiffs may recover under their theories of liability. Unless and until defendants make a legitimate showing that plaintiffs' litigation funding is directed to a relevant issue, which has not been done, the discovery is

denied. VHT, Inc., 2016 WL 7077235, at *1 (denying motion to compel the identity of any litigation funder on the ground that the requested discovery was "negligibly relevant, minimally important in resolving the issues[,] and unduly burdensome," and was therefore "disproportional to the needs of the case.").[6]

2. Defendants' Authority and Arguments are Not Persuasive

Defendants' argument that plaintiffs' litigation funding is not only relevant but a "critical piece of information" is flatly rejected. DLB at 1. It is pure speculation to argue a potential litigation funder rather than the named plaintiff may be the real party in interest. Id. at 1-2. Defendants have not cited any evidence that a "third-party owns the rights to [this] action." Id. at 2. This is not a patent case where the ownership of a patent is relevant to determining who has standing to bring the lawsuit. See Cobra International, Inc. v. BCNY International, Inc., No. 05-61225, 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013). Also, despite their protestations, defendants have not cited to a single instance where a litigation funder owned the right to recover rather than being a passive investor that shares in the benefit of a recovery from an attorney's contingent fee.

---

[6] Defendants implicitly posit that plaintiffs' litigation financing could create perverse financial incentives to sacrifice the client's best interests. However, as one commentator has noted, "[l]itigation financing is no different . . . than the risks presented by hourly and contingency fees, both of which create their own characteristic misalignment of interests." W. Bradley Wendel, Paying the Piper but not Calling the Tune: Litigation Financing and Professional Independence, 52 Akron L. Rev. 1, 47 (2019).

11

Defendants' argument that plaintiffs' litigation funding is relevant to credibility and bias (DLB at 2) is misplaced. Plaintiffs are not seeking to identify who is paying the legal fees of a key witness. See Berger v. Seyfarth Shaw, LLP, No. C07-05279 JSW, 2008 WL 4570687, at *1 (N.D. Cal. Oct. 14, 2008); Bryant v. Mattel, 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007).

In addition, the Court rejects the notion that it must know the details of plaintiffs' funding arrangements to decide the scope of discovery, the outcome of discovery cost-shifting, and the proper assessment of sanctions. DLB at 2. The Court routinely decides these issues without inquiring as to how the parties finance their cases. If the Court accepted defendants' argument, the source(s) of defendants' assets and funding could become fair game for discovery. The Court has no intention of going down this "rabbit hole."

Defendants cite to Orders in another MDL where the Court directed discovery of funding information to "inform discussions of medical necessity and the reasonableness of plaintiff's treatments." DLB at 2. See In re: American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation, MDL No. 2325, at 12-14 (S.D.W. Va. May 31, 2016), Pretrial Order #215 (Motion to Modify Subpoena or for Protective Order of Nonparties Surgical Assistance and Black Barber). Defendants cite to this Order to support their argument that, "failure to disclose [litigation

12

funding] information can undermine and derail the MDL." DLB at 1. However, unlike the pelvic mesh litigation, there is no contention here that any contrived or unnecessary medical treatment occurred. Nor is there a scintilla of evidence, as may have existed in the other MDL's defendants cite to (silicone breast litigation (1990's), diet drug litigation (early 2000's), and mesh litigation) that inappropriate or fraudulent diagnoses or treatment occurred.

The Court disagrees with defendants' statement that there is a "shifting tide towards disclosure of third-party litigation funding information in courts . . . coupled by a similar movement in the legislative realm." DLB at 5. This Opinion cites to substantial recent authority denying disclosure. Benitez, supra; MLC Intellectual Property, supra; Space Data Corp., supra. Further, the disclosure requirement in the Local Rules for the N.D. Cal. is limited to class actions. And, this adoption was not followed by a groundswell of copycats, including New Jersey.[7]

---

[7] One of the primary reasons jurisdictions may have adopted a disclosure requirement is to assist judges with regard to possible recusal or disqualification decisions. Defendants have not raised this as a reason to require disclosure here. In addition, in view of the Court's ruling that plaintiffs' litigation funding is off-limits because of relevancy and proportionality concerns, the Court does not have to decide if the discovery is protected by the work-product doctrine. However, the Court notes the weight of recent authority appears to lean in this direction. Odyssey Wireless, Inc. v. Samsung Electronics Co., Ltd, Case No. 3:15-CV-01738-H (RBB), 2016 WL 7665898 at *4-5 (S.D. Cal. Sept. 20, 2016); United States v. Homeward Residential, Inc., Case No. 4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016); Viamedia, Inc. v. Comcast Corp., Case No. 16-CV-05486, 2017 WL 2834535, at *3 (N.D. Ill. June 30, 2017); Morley v. Square, Inc. Case No. 4:140CV172, 2015 WL 7273318, at *2 (E.D. Mo. Nov. 18, 2015); Doe v. Soc'y of the Missionaries of the Sacred Heart, No. 11-CV-02518, 2014 WL 1715376 at *3 (N.D.Ill. May 1, 2014); Miller,

13

The case law defendants rely upon is not persuasive. In Cobra International, Inc., supra, in the context of a dispute over the ownership of a patent, the court wrote that discovery regarding a litigation funding agreement was "relevant and is not privileged[.]". 2013 WL 11311345, at *3. This litigation does not concern the ownership of a patent. In Acceleration Bay LLC v. Activision Blizzard, Inc., C.A. No. 16-453-RGA, 454-RGA and 455-RGA, 2018 WL 798731 (D. Del. February 9, 2018), the Court adopted a Special Master's recommendation that plaintiff produce emails and documents plaintiff provided to a litigation funder and its counsel. The Court simply stated, "I agree with defendants that the communications are relevant." Id at *3. In Acceleration Bay, however, unlike this case, the defendants argued the requested litigation funding documents were relevant to "central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [Plaintiff] is an operating-company[.]" Id. at *3. In Berger, supra, the Court reversed a Magistrate Judge's ruling denying discovery of the fee-payment arrangements of a key witness. 2008 WL 4570687, at *1. The Court ruled the discovery was relevant to the credibility and bias of a witness. Id. at *1. This is not a present concern of defendants.

---

17 F. Supp. 3d at 738; see also Opiate Litigation, 2018 WL 2127807, at *1; but see Acceleration Bay LLC, 2018 WL 798731, at *2-3.

Defendants' reliance on In Re: American Medical Systems, Inc., MDL No. 2325, 2016 WL 3077904 (S.D.W.Va. May 31, 2016), is misplaced. That case is a MDL involving AMS's pelvic mesh products. During the course of discovery AMS learned that some of the plaintiffs had corrective surgery arranged and funded through third-party funding companies. AMS then served subpoenas on the companies seeking documents relating to the plaintiffs' funding. As to the documents the Court held were discoverable, the Court ruled they were relevant to understanding the plaintiffs' "motivation" to undergo corrective surgeries. Id. at *5. The documents were also relevant to learning if the plaintiffs were "pressed" to undergo corrective surgeries and the "reasonableness of the costs associated with the corrective surgeries that the plaintiffs underwent." Id. at *5. The AMS case is not remotely analogous to this litigation. To date, defendants have not even hinted at the fact that litigation funders may be funding plaintiffs' treatment. There is also no evidence that third-party funders may be unreasonably padding plaintiffs' damage claims. At this stage of the case, any argument to this effect is pure speculation.

Last, defendants' reliance on Gbarabe v. Chevron Corp., Case No. 14-CV-00173-SI, 2016 WL 4154849 (N.D.Cal. August 5, 2016), is also misplaced. In Gbararbe, plaintiffs' counsel represented a class of approximately 12,600 Nigerian individuals allegedly

15

damaged by a 2012 drilling explosion off the coast of Nigeria. Plaintiffs' lawyers were solo practitioners who acknowledged they were dependent on outside funding to prosecute the case. Id. at *1. The lawyers also conceded the relevance of their funding agreement. Id. The Court ruled that, "under the circumstances of [the] case, the litigation funding agreement is relevant" to the adequacy of representation in the case. Id. Here, plaintiffs do not concede the relevancy of defendants' requested discovery. In addition, the Court has previously ruled that as a general matter a class action plaintiff's finances are off-limits to discovery. See Riddell, supra.

3. In Camera Review

As a coda to this Opinion, the Court will address plaintiffs' offer that the Court review their litigation funding documents in camera, "where the litigation funding company has control or input into litigation decisions, including settlement, which could interfere with a plaintiff's control of his or her lawsuit and the attorney-client relationship." PLB at 2. The Court agrees to this review with one proviso. That is, that the Court relies on plaintiffs' counsel to exercise their best professional judgment when the review should occur. After all, plaintiffs' counsel, not the Court, knows the details of their contractual relationship. If a good faith question exists as to whether documents should be submitted for review, the Court expects counsel to err on the side

of disclosure.[8]  The Court is aware that a respected jurist in a pending MDL has Ordered an ex parte in camera review in all instances where an attorney has obtained third-party contingent litigation financing.  Opiate Litigation, supra.  However, the course this Court chooses to take is not to require automatic review but to leave it to plaintiffs' counsel to decide when the Court should be involved.  As this Court wrote in Montana v. County of Cape May Board of Freeholders, C.A. No. 09-755 (NLH/JS), 2013 WL 11233748, at *8-9 (D.N.J. Sept. 20, 2013) (citations and quotations omitted):

> The rules of discovery must necessarily be largely self-enforcing.  The integrity of the discovery process rest on the faithfulness of parties and counsel to the rules – both the spirit and the letter.  Moreover, the discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention, and … those rules rely on the honesty and good faith of counsel in dealing with adversaries.

Defendants are not left out of this process.  If defendants have good cause to believe the criteria for an in camera review is met, the Court will consider their application.  What will not be Ordered is the automatic or carte blanche review of all

---

[8] Some of the questions counsel should consider are: (1) whether the funder has formal or de facto control over litigation decisions?; (2) whether funding may be withdrawn, and if so when?; (3) whether the funder decides when to settle a case?; and (4) whether the funder has control over the selection of counsel? See Bert I. Huang, Litigation Finance: What do Judges Need to Know? 45 Colum. J.L. & Soc. Probs. 525, 529-32 (2012).

litigation funding agreements and documents.[9]  Speculation does not justify discovery. Benitez, 2019 WL 1578167, at *1.

CONCLUSION

In sum, the Court denies defendants' request for carte blanche discovery of plaintiffs' litigation funding as the discovery is irrelevant to the claims and defenses in the case.  At best, the discovery is a side issue that does not help advance this complex litigation.  To date, the litigation has run smoothly without the requested discovery and the Court expects this to remain the case. Defendants' parade of horribles that might occur from litigation funding is pure speculation.  To be sure, however, the Court is not ruling that plaintiffs' litigation funding can never be discovered.  If good cause exists to order the discovery in an appropriate instance, it will be done.  What the Court will not do is Order the discovery in the absence of a demonstratable showing that the discovery is relevant to a claim or defense in the case. That showing has not been made to date.

---

[9] Some of the information the Court will consider to decide if an in camera review is appropriate is whether the litigation is unduly prolonged and if settlement or ADR is discouraged, whether counsel's control over the litigation is undercut, if settlement money is unduly directed away from a plaintiff, if the attorney-client relationship is compromised, or if the professional independence of an attorney is diminished. See also Huang, supra. Although it may not be directly on point, New Jersey RPC 5.4(c) provides that a "lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." It is not clear if a litigation funder fits into the class of persons covered by this RPC.

**ORDER**

Accordingly, for all the foregoing reasons, **IT IS HEREBY ORDERED** this 18th day of September, 2019, that defendants' request that plaintiffs' litigation funding be included in plaintiffs' Fact Sheets is DENIED; and it is further

ORDERED that to the extent the request is made that the Court Order the automatic or carte blanche disclosure of plaintiffs' litigation funding agreements and documents, the request is DENIED; and it is further

ORDERED the Court will review in camera plaintiffs' litigation funding documents where plaintiffs' counsel makes this request or if good cause exists to believe a litigation financer has control or input into plaintiffs' litigation decisions, including settlement, which would interfere with a plaintiff's control of his or her lawsuit and the attorney-client relationship, or other good cause exists for the review. The Court will thereafter determine the scope of discovery, if any.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge