| | **Duane Morris®** | |
|---|---|---|
| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | SETH A. GOLDBERG | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1175 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 215 689 2198 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* SAGoldberg@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | www.duanemorris.com | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

October 1, 2019

**VIA ECF**

| | |
|---|---|
| The Honorable Robert Kugler | The Honorable Joel Schneider |
| Senior United States District Court Judge | United States Magistrate Judge |
| District of New Jersey | District of New Jersey |
| Mitchell H. Cohen Building & U.S. Courthouse | Mitchell H. Cohen Building & U.S. Courthouse |
| 4th & Cooper Streets, Courtroom 4D | 4th & Cooper Streets, Courtroom 3C |
| Camden, NJ 08101 | Camden, NJ 08101 |

    Re: **In re Valsartan Products Liability Litigation**
       **Case No. 1:19-md-02875-RBK-JS**

Dear Judge Kugler and Judge Schneider:

  We write in connection with the Court's directive that "[p]laintiffs and Defendants shall promptly meet and confer regarding their proposed lists of custodians and search terms." Dkt. 243 at ¶ 6. Defendants have proposed that such meet and confer take place among counsel for both sides at the Philadelphia office of Duane Morris on October 7 from 10:00-3:00, and that in advance Plaintiffs provide a list of questions for defense counsel to answer about their clients' corporate structures and proposed custodians at that meeting. *See* Email from Goldberg, 9/27/19, attached as Exhibit A.[1] Plaintiffs have rejected that proposal, insisting on separate meet and confers with each of the manufacturer Defendants, and Plaintiffs refuse to produce a list of questions in advance of any meeting. *See* Email from Slater, 9/29/19, attached as Exhibit A ("There is no point to all of us sitting in a room together and having these discussions together."). Accordingly, for the following reasons, the manufacturer Defendants respectfully request the Court enter an Order requiring Plaintiffs to attend a joint meeting to discuss

---

[1] The parties' entire communications on this issue are attached as Exhibit A.

DUANE MORRIS LLP

30 SOUTH 17TH STREET  PHILADELPHIA, PA 19103-4196    PHONE: +1 215 979 1000  FAX: +1 215 979 1020

DuaneMorris

October 1, 2019
Page 2

custodians and search terms, and to provide a list of questions or topics in advance of that meeting.

*First*, a joint meeting is necessary to ensure the scope of the custodian lists corresponds to the specific manufacturing defect at issue.

Plaintiffs have alleged an impurity in valsartan resulting from a chemical reaction that occurred during a specific step in the API manufacturing process. *See, e.g.*, Personal Injury Master Complaint ¶ 167; Economic Loss Master Complaint ¶ 327; Medical Monitoring Master Complaint ¶ 289 (alleging that NDMA and NDEA are byproducts of the chemical reaction involving the solvent used to create the tetrazole ring found in valsartan). While they may differ in job title, the job functions of the custodians that correspond to the API manufacturing process, testing pertaining to the alleged chemical reaction, and the FDA communications concerning the alleged impurity and the recalls should not be materially different from defendant to defendant.

The separate meetings Plaintiffs have proposed are likely to result in custodian lists that do not correspond to the specific chemical reaction at issue, which is limited to a particular step in the API manufacturing process. Instead, their sole intent is to allow Plaintiffs to develop broad custodian lists that are comprised of employees with job functions that are not similar from manufacturer defendant to manufacturer defendant. *See* Email from Slater, 9/29/19, attached as Exhibit A ("One company's custodian list has no bearing on the list for any other defendant."). Indeed, in their submission to the Court dated September 24, Plaintiffs asserted the manufacturing Defendants' proposed custodian lists "appear on their face to be very limited" and they needed "a wider spectrum of potential custodians," *see* Letter from Slater (Dkt. 238).

Custodian lists that differ materially from manufacturer defendant to manufacturer defendant will likely contribute to broad and unfocused discovery, leading the parties down rabbit holes the Court has previously explained it would guard against. *See* Letter to Counsel (Dkt. 183) ("We all need to focus on the current important issues: how and why the contamination occurred and what the defendants knew about it. We won't get sidetracked by extraneous issues."). In this vein, in contrast to Plaintiffs' view that the proposed custodian lists appear "very limited," at the CMC on September 25 Judge Kugler questioned whether Plaintiffs even needed the deposition of the nine custodians the Prinston Defendants have already proposed.

A joint meeting is necessary to ensure that the custodian lists from manufacturer defendant to manufacturer defendant remain uniform with respect to job functions that correspond to the specific manufacturing defect at issue.

*Second*, a single meeting in which counsel for both sides determine the scope of the custodian lists will be far more efficient than the alternative—a series of discussions spanning multiple days with each manufacturer defendant directed at the same objective. While the individual custodians will differ among manufacturer Defendants, the principles guiding their selection should remain the same, making a single discussion the most effective way of

DuaneMorris

October 1, 2019
Page 3

developing agreed lists. Nevertheless, Plaintiffs have proposed cramming at least five meet and confers in the few business days between October 1 and October 10 (with an intervening Jewish holiday), when the parties are to report to the Court as to the result of the meet and confer the Court ordered. The individual meetings are not just logistically impractical, they will also result in inconsistencies with respect to job functions from manufacturer defendant to manufacturer defendant. Indeed, the multitude of meetings Plaintiffs have proposed seem intended to frustrate the Court's objective in ordering the parties to "promptly meet and confer."

*Third*, the purpose of this meet and confer is to shape the scope of discovery in this action as to all the manufacturing Defendants, not just Plaintiffs. As such, excluding any manufacturer defendant from discussions that will influence the breadth of discovery and the scope of that defendant's obligations in this case would be improper. This is particularly true here, where there is minimal confidentiality concern because the manufacturer Defendants have agreed to have open discussions about their corporate structure and employee duties in the presence of outside counsel for the other manufacturer Defendants.

*Fourth*, a list of questions provided sufficiently in advance of the meeting is necessary to ensure a successful meeting. If Plaintiffs provide a list of questions in advance, the manufacturing Defendants can discuss the questions with their clients and come to the meeting prepared to answer and engage on Plaintiffs' questions. Thus, Plaintiffs' refusal to provide questions in advance of the meeting betrays the obvious: Plaintiffs have no interest in agreeing to custodian lists at the meeting, but instead intend to jump directly to informal meetings with corporate representatives from each manufacturer defendant, a burdensome process that would be tantamount to informal discovery.

*Fifth*, the vast majority of the ESI search terms are unquestionably global in nature. While there may be some terms that are defendant specific, it is likely that a significant percentage, if not virtually all, of the agreed upon ESI terms will be applied to the ESI of each manufacturer defendant. Consequently, a joint meeting to discuss these terms, that, if necessary, can be followed by individual meetings as to defendant specific terms, would be more efficient than the parties negotiating all of the search terms in separate meet and confers.

*****

CMO 14 directs the parties to meet and confer promptly. It does not order separate meetings among Plaintiffs and each manufacturer defendant. Indeed, a series of meetings over a number of days seems contrary to the plain terms of CMO 14. The joint meeting the manufacturer Defendants propose would enable the parties to share detailed information in a prompt and effective manner in an effort to reach this agreement and avoid burdening corporate representatives with informal discovery. The Court should reject Plaintiffs efforts to exploit the meet and confer process to begin a "fishing expedition" to obtain discovery wholly unrelated to the definite and particular manufacturing defect that Plaintiffs have alleged.

October 1, 2019
Page 4

     For these reasons, Defendants respectfully request that the Court enter an Order directing Plaintiffs to participate in a joint meeting about custodians and search terms, and to provide a list of questions or topics in advance of that meeting to increase the likelihood that the meeting is successful.

                      Respectfully submitted,

                      */s/ Seth A. Goldberg*

                      Seth A. Goldberg

cc:    Adam Slater, Esq. (*via email, for distribution to Plaintiffs' Counsel*)
        Jessica Priselac, Esq. (*via email, for distribution to Defendants' Counsel*)
        Lori G. Cohen, Esq. (*via email*)
        Clem C. Trischler, Esq. (*via email*)