## MAZIE SLATER KATZ & FREEMAN, LLC
COUNSELLORS AT LAW
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898
Fax (973) 228-0303
www.mazieslater.com

| | |
|---|---|
| David A. Mazie* | Karen G. Kelsen° |
| Adam M. Slater*° | Cheryll A. Calderon |
| Eric D. Katz*° | David M. Estes |
| David M. Freeman | Adam M. Epstein° |
| Beth G. Baldinger | Michael R. Griffith° |
| Matthew R. Mendelsohn° | Matthew Tonzola |
| | Christopher J. Geddis |

*Certified by the Supreme Court of New Jersey as a Civil Trial Attorney        °Member of N.J. & N.Y. Bars

November 5, 2019

**VIA ECF**
Honorable Joel Schneider
United States Magistrate Judge
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
1 John F. Gerry Plaza, Courtroom 3C
4th and Cooper Streets
Camden, New Jersey 08101

      Re:    IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA) PRODUCTS LIABILITY LITIGATION
             Civil No. 19-2875 (RBK/JS)

Dear Judge Schneider:

      Please accept this letter on behalf of the Plaintiffs in advance of the November 6, 2019 status conference.

      Before addressing the listed topics, Plaintiffs must address the footnotes to the letter, in which the Defendants attempt to establish an untenable structure for discovery in this litigation. In essence, Defendants seek to carve out and sharply limit discovery as to non-manufacturer defendants, as if those Defendants are not significant to this litigation. In fact, the non-manufacturer Defendants are very important players in this litigation. The discussions to date have begun at the manufacturer level since those are the parties expected to have the most

direct access to the documents and information at the foundation of the liability case, and this was the agreed staging of these discussions. However, Plaintiffs have never waived the right to conduct meaningful discovery of these entities, and in fact at the end of the day these Defendants may have substantial liability and financial responsibility to pay any settlement or judgment. The attempt to artificially limit discovery of these entities is perhaps most notably illustrated in footnote two of the defense's letter, stating in part, "discovery produced by the Wholesaler/Distributor/Repackager and Retail Pharmacy levels of the supply chain should be limited to those specific requests in the Defendant Fact Sheet, and to those cases in which any given retailer has actually been named as a party, without the need for custodial discovery." Plaintiffs disagree. Custodial productions and wider discovery will be needed from these entities.

1. Macro Discovery Issues:

The parties have met and conferred with little if any progress to resolve any issues. Plaintiffs are filing the ordered opening brief as directed by the Court.

2. Ongoing Meet and Confer Processes:

First, with regard to custodians and search terms, the parties have made incremental progress, however it is clear to Plaintiffs that there will be additional custodians and likely search terms to be added to the initial lists to be established in December, 2019. One important point, in footnote two to the Defendants' letter they state, "only the Manufacturer Defendants are currently obligated to establish an ESI custodian list for the purpose of collecting and producing documents responsive to those document requests." This is fundamentally wrong. All Defendants will need to perform custodial searches, and the process of identifying those custodians clearly needs to begin as to the non-manufacturer Defendants. In addition, Defendants need to understand that the requests for documents focus on production of

documents from any applicable database, file, or other source in the possession, custody, or control of a Defendant, whereas the search terms are to be used to identify relevant documents within individuals' custodial files. There may be overlap, but these are separate and complementary discovery tools.

Specifically with regard to the search terms, although the parties have been meeting and conferring with regard to the search terms, and such meet and confers have been helpful to a degree, the meet and confers have been hampered due to the fact that it appears no Defendant has yet to obtain and load documents from even their own proposed custodians in a manner which allows searches to be run and hit counts for search terms and search term combinations to be obtained. Further no Defendant has suggested even a single search term to be added to plaintiffs' proposed terms based upon company internal use of the term. Thus, although some limited progress has occurred with regard to search terms, until Defendants are in a position to run search terms across sample custodians and obtain hit counts, it will be difficult to progress significantly further.

3. Defendant Fact Sheet:

The meet and confer process is underway with regard to the Defendant Fact Sheet. It is not clear at present to what extent there will be disputes to be presented for resolution by the Court on November 20, 2019.

4. Filing and Service of Short Form Complaints:

Plaintiffs agree that the order regarding filing and service of short form complaints should be adhered to.

5. Plaintiffs' April 2019 Request for ESI Information:

Defendants complain about the scope and detail of Plaintiffs' request for information regarding Defendants' ESI, however everything requested is reasonable and needed to

understand how and where documents and information are stored, and the manner in which this information may most efficiently be produced. Defendants have had this request since April and have essentially ignored Plaintiffs. Defendants' November 5, 2019 letter, and belated and half-hearted offer to give information when they see fit to do so is not helpful.

The subjects addressed in the letter are routine inquiries Defendants' counsel should have made months ago of their clients in order to learn the scope and locations of the available information, and to ensure that relevant information was not being destroyed or otherwise made more difficult to access. The suggestion that this will be addressed at the end of the process is confusing since this is threshold information needed to most knowledgeably implement the process. Further, this is the type of information that will allow for meaningful discussion and evaluation of claims of burden, based upon the responses as to what information is readily available, what information is available but archived, and what information is not available at all. It will further allow for a meaningful discussion about the types of non-custodial information available, and what types of proprietary or specialized software might be needed to access such non-custodial information, such as testing results, assay analyses, and how to best obtain the data contained in those formats, hence the request for, for example, file types and associated software information. Without this information, plaintiffs have been forced to operate in a vacuum. As with many issues to date, Defendants' suggestion that this should be addressed later is a recipe for inefficiency and delay.

As in the Benicar litigation, Plaintiffs request that the Court direct the Defendants to promptly engage with Plaintiffs to meet and confer, with technical experts in attendance, and provide the requested information.

Respectfully,

ADAM M. SLATER