# Exhibit 4

**Layne Hilton**

| | |
|---|---|
| **From:** | Layne Hilton |
| **Sent:** | Thursday, October 31, 2019 4:54 PM |
| **To:** | 'Grossman, Megan'; 'Swayze, Pete' |
| **Cc:** | 'Valsartan PEC (valpec@kirtlandpackard.com)'; 'rblanton@hkmpp.com'; 'Poletto, Janet L. (JPoletto@hkmpp.com)'; 'Goldberg, Seth A.'; 'JPriselac@duanemorris.com'; 'JHeinz@c-wlaw.com'; 'CCT@pietragallo.com'; 'JMR@pietragallo.com'; 'Nagle, Brittney'; 'Albero, Andrew'; 'Reeves, Claire' |
| **Subject:** | RE: In re Valsartan - Camber Pharmaceuticals |
| **Attachments:** | 2019.10.31 Potential Camber Custodians.pdf |

Megan:

Thank you for the call. Plaintiffs look forward to receiving Camber's organizational information and Camber's initial list of potential custodians in the coming days. Plaintiffs also look forward to working with you regarding the documents that were requested in Plaintiffs' RFPDs that are in Camber's possession, custody, or control.

To facilitate and expedite your discussions with your client (and because Plaintiffs provided this information to the other Defendants), I attach a list of custodians that Plaintiffs have identified from their review of core discovery from Camber Pharmaceuticals who may have relevant knowledge of the sales and distribution of Valsartan and the associated recall of the product.

Plaintiffs provide this information simply for the purposes of further conferring with Camber regarding additional sources of custodial documents. Indeed, this list is by no means exhaustive, encompassing or definitive. This list simply represents persons known to Plaintiffs at this moment in time, as a result of an initial review of Hetero USA's limited core discovery production and research on publicly available resources.

As such, Plaintiffs provide the attached information subject to, and without waiving their rights, including their right to supplement any such custodian list as more information becomes known.

Best,

Layne

---

**From:** Layne Hilton
**Sent:** Friday, October 25, 2019 1:55 PM
**To:** 'Grossman, Megan' <Megan.Grossman@lewisbrisbois.com>; Swayze, Pete <Pete.Swayze@lewisbrisbois.com>
**Cc:** 'Valsartan PEC (valpec@kirtlandpackard.com)' <valpec@kirtlandpackard.com>; 'rblanton@hkmpp.com' <rblanton@hkmpp.com>; 'Poletto, Janet L. (JPoletto@hkmpp.com)' <JPoletto@hkmpp.com>; 'Goldberg, Seth A.' <SAGoldberg@duanemorris.com>; 'JPriselac@duanemorris.com' <JPriselac@duanemorris.com>; 'JHeinz@c-wlaw.com' <JHeinz@c-wlaw.com>; 'CCT@pietragallo.com' <CCT@pietragallo.com>; 'JMR@pietragallo.com' <JMR@pietragallo.com>; 'Nagle, Brittney' <bee.nagle@kirkland.com>; Albero, Andrew <Andrew.Albero@lewisbrisbois.com>; Reeves, Claire <Claire.Reeves@lewisbrisbois.com>
**Subject:** RE: In re Valsartan - Camber Pharmaceuticals

Megan:

Thank you for your email. Plaintiffs have been cognizant of your current trial obligations. Given the upcoming discovery deadlines (which also include imminent deadlines to brief issues related to the overarching scope of discovery in this

1

case), Plaintiffs needed clarity on Camber's position regarding ongoing discovery such that we weren't prejudiced at a later date.

With respect to Camber's position that it has not been required to participate in discovery because Camber identifies itself as a distributor (and not an API or finished dose manufacturer), Plaintiffs disagree.

First, Camber's self-identification as solely a distributor is somewhat misleading. Camber is an integral component of the entire drug manufacturing chain, and is vertically integrated with Hetero's API and finished dose manufacturing operations in India. *See* http://camberpharma.com/ (touting itself as a "fully integrated international pharmaceutical company that maintains quality and integrity in all its products from API manufacturing to finished dosage.") Were this not enough, employees of Camber were a) having direct communication with FDA officials regarding the Valsartan recall (*See* HETERO_USA000028063), b) listed as the point of contact by Hetero for US customers inquiring about the Valsartan recall (*See* HETERO_USA000028119), and c) authoring and publishing press releases in the United States regarding the Valsartan recall (*See* HETERO_USA000028263). Camber cannot now argue it is a completely bifurcated and siloed entity with no responsibility or knowledge about the API or finished dose manufacturing processes of Hetero, or the contamination and recall which forms the basis of this litigation.

Second, even accepting *arguendo* Camber's description as a "distributor," Camber is *still* under obligation to participate in discovery at this point in the litigation. Defendant Aurobindo Pharma USA is a wholly owned US subsidiary of an Indian API and finished dose manufacturing company, with responsibilities for distribution, and sales. Aurobindo Pharma USA responded to Plaintiffs' RFPDs. Defendant Solco is likewise a wholly owned subsidiary whose primary function relates to the sales and distribution of Valsartan. Defendant Solco has now provided names of potential custodians to Plaintiffs. By not affirmatively participating in discovery, Camber is clearly an outlier even amongst its own co-defendants. More pointedly, the Court's order requiring production of a list of custodians was not limited or qualified in any way, shape, or form to API or Finished Dose Manufacturers. *See* CMO 185 ("…[b]y the same date defendants shall serve their first proposed list of custodians to search…).

Of course, Plaintiffs have repeatedly stated their intention to work through these issues cooperatively without intervention from the Court. As such, please provide times next week that Camber is available to meet and confer. It would be helpful if, in advance of these meetings, Camber would provide organizational charts for its operations.

Best,

Layne

---

**From:** Grossman, Megan <Megan.Grossman@lewisbrisbois.com>
**Sent:** Thursday, October 24, 2019 1:57 PM
**To:** Layne Hilton <l.hilton@kanner-law.com>; Swayze, Pete <Pete.Swayze@lewisbrisbois.com>
**Cc:** 'Valsartan PEC (valpec@kirtlandpackard.com)' <valpec@kirtlandpackard.com>; 'rblanton@hkmpp.com' <rblanton@hkmpp.com>; 'Poletto, Janet L. (JPoletto@hkmpp.com)' <JPoletto@hkmpp.com>; 'Goldberg, Seth A.' <SAGoldberg@duanemorris.com>; 'JPriselac@duanemorris.com' <JPriselac@duanemorris.com>; 'JHeinz@c-wlaw.com' <JHeinz@c-wlaw.com>; 'CCT@pietragallo.com' <CCT@pietragallo.com>; 'JMR@pietragallo.com' <JMR@pietragallo.com>; 'Nagle, Brittney' <bee.nagle@kirkland.com>; Albero, Andrew <Andrew.Albero@lewisbrisbois.com>; Reeves, Claire <Claire.Reeves@lewisbrisbois.com>
**Subject:** RE: In re Valsartan - Camber Pharmaceuticals

Layne –

I am finishing trial tomorrow and will respond to your inquiry next week. I am not ignoring anything. Camber is a distributor – not an API manufacturer or a finished product manufacturer. And as far as I am aware, I am not under any

court obligation right now as a <u>distributor</u>.  If I am wrong, I will talk to my defense liaison counsel about it and figure out my next steps.   If you feel the need to go to the court by the end of this week, so be it.

Megan



**Megan E. Grossman, Partner**
**Vice-Chair, Life Sciences**
Megan.Grossman@LewisBrisbois.com

**T: 215.977.4087  C: 267.251.2132**

550 E. Swedesford Road, Suite 270, Wayne, PA 19087  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

---

**From:** Layne Hilton [mailto:l.hilton@kanner-law.com]
**Sent:** Thursday, October 24, 2019 2:16 PM
**To:** Grossman, Megan; Swayze, Pete
**Cc:** 'Valsartan PEC (valpec@kirtlandpackard.com)'; 'rblanton@hkmpp.com'; 'Poletto, Janet L. (JPoletto@hkmpp.com)'; 'Goldberg, Seth A.'; 'JPriselac@duanemorris.com'; 'JHeinz@c-wlaw.com'; 'CCT@pietragallo.com'; 'JMR@pietragallo.com'; 'Nagle, Brittney'
**Subject:** [EXT] RE: In re Valsartan - Camber Pharmaceuticals



Megan:

I write to follow up on Adam Slater's letter of October 3, my email of October 8, my conversation with your associate in Court on October 16, and my email of October 17.

Plaintiffs have *still* not received: 1) a proposed list of relevant custodians as required by this Court on August 16, 2019 in CMO 12 (D.E. 185), or 2) any responses or objections to Plaintiffs' Requests for the Production of Documents ("RFPDs") (served on all Defendants August 30, 2019). Responses and objections were served by all other Defendants on October 15, 2019.

While the Court expects the parties to work collaboratively on these discovery issues, Plaintiffs do not believe cooperation invites Camber to ignore the Court's orders in this case requiring the exchange of critical key information.  This information includes a list of persons with relevant knowledge of sales and distribution of contaminated Valsartan products in the United States, and the associated recall of those contaminated products. Camber has been on notice that Plaintiffs were seeking discovery regarding distribution, sales and pricing since August.  *See* Pls. RFPDs at Request Nos. 92-114.  Plaintiffs also must know which requested documents are maintained by Camber in the ordinary course of business, and which documents are not. The Federal Rules do not require Plaintiffs to engage in speculative guess-work. The burden is on Camber to affirmatively provide Plaintiffs with this information.

As the situation stands now, Plaintiffs have little-to-no information regarding Camber's operations, functions, responsibilities, and personnel short of that which can be gleaned from the limited core discovery production and/or publicly available sources. More troubling, Camber's own website disputes Camber's previous representations that it plays a relatively minor role. The website states, "Camber has the unique ability to control every aspect of the manufacturing process, from API to finished dosage." *See also,* "Camber Pharmaceuticals is a fully integrated pharmaceutical company that maintains quality and integrity in all its products from API manufacturing to finished dosage. We have been consistently recognized as one of the fastest growing generic pharmaceutical companies in the US." The website not only implies that Camber has involvement with the API and finished dose manufacturing processes, but also implies that Camber *exercises control* over these manufacturing processes.

While Plaintiffs are committed to working through these issues in a cooperative and collegial manner, the Court's deadline of December to resolve all discovery disputes is fast approaching. Another week cannot lapse without significant progress. Consequently, if we do not hear from Camber by the end of the week (10/25), Plaintiffs will be left with no other choice but to pursue any and all available remedies to compel Camber's compliance with the Court's orders and directives.

Layne

---

**From:** Layne Hilton
**Sent:** Thursday, October 17, 2019 10:17 AM
**To:** Megan.Grossman@lewisbrisbois.com; 'Pete.Swayze@lewisbrisbois.com' <Pete.Swayze@lewisbrisbois.com>
**Cc:** Valsartan PEC (valpec@kirtlandpackard.com) <valpec@kirtlandpackard.com>; rblanton@hkmpp.com; Poletto, Janet L. (JPoletto@hkmpp.com) <JPoletto@hkmpp.com>; 'Goldberg, Seth A.' <SAGoldberg@duanemorris.com>; JPriselac@duanemorris.com; JHeinz@c-wlaw.com; CCT@pietragallo.com; JMR@pietragallo.com; 'Nagle, Brittney' <bee.nagle@kirkland.com>
**Subject:** In re Valsartan - Camber Pharmaceuticals

Megan:

To follow up on the conversation I had with your associate in Court yesterday (and my previous email of October 8, 2019), regarding discovery issues related to Camber Pharmaceuticals.

As your colleague will tell you, yesterday the Court repeatedly stated that it expects the Parties to work collaboratively to ensure that all discovery issues (including lists of custodians, macro discovery issues and ESI issues) are settled by the December CMC. We have not even begun this collaborative process with Camber, and we must start now.

As such, we ask that Camber Pharmaceuticals provide Plaintiffs with a) Camber's proposed list of custodians (as ordered by the Court in CMO 12), and b) organizational charts. All Defendants (including, for their part, Hetero USA), have provided Plaintiffs with proposed custodian lists, and almost all of Defendants have begun producing organizational charts.

Additionally, beyond the above two items, which Plaintiffs ask to be produced immediately, Plaintiffs must meet and confer with Counsel to understand the following information related to Camber's operations in the United States including:
- How the drug is transported from India to the US
    - Is the product transported in bulk and then re-bottled by Camber Pharmaceuticals, where it receives the Camber label;
    - Who are the persons responsible for communicating with Hetero employees regarding the supply of the product;
    - What testing is done of the product once it arrives into Camber Pharmaceuticals' possession;
        - Who are the persons responsible for this testing;
- Entities

4

- o What is the interplay between the Hetero Indian entities, Hetero USA, PharmQ, and Camber;
- o Do any persons maintain roles at multiple companies, and if so, who are those persons;
- Facilities
  - o To the extent that Camber maintains industrial facilities for the bottling of Valsartan products – and what/where are those facilities;
  - o Who are the persons responsible for Valsartan products within those facilities;
  - o Who are the persons responsible for communicating with the FDA and/or other regulatory bodies regarding inspections of those facilities;
  - o Who are the persons responsible for ensuring that Camber is complying with the cGMPs for those facilities;
  - o Who are the persons responsible for maintaining the standard operating procedures for those facilities;
  - o Does the facility conduct tests of the product prior to shipping;
    - What are the tests conducted prior to distribution;
    - Who are the persons responsible for conducting testing prior to distribution;
- Distribution
  - o What role does Camber have with respect to wholesalers and/or retail pharmacies;
  - o Does Camber negotiate with wholesalers and/or retail pharmacies;
  - o Who are the persons responsible for negotiating with wholesalers and/or retail pharmacies;
  - o Who are the persons responsible for issues such as shelf stock adjustments and the like;
- Pricing
  - o What role does Camber have with respect to setting the price of the drugs;
  - o Who are the persons responsible for setting pricing;
- Recalls (and I understand that some of these answers can be partially answered when looking at core discovery, but given the limited scope, we still ask Camber to look into this)
  - o Who are the persons at Camber responsible for facilitating the recall of products, both generally and more specifically relating to Valsartan;
  - o Who are the persons responsible for interfacing with FDA regulators regarding the recall of products, both generally and more specifically relating to Valsartan;
  - o What is the interplay between the Hetero Indian entities, Hetero USA, PharmQ, and Camber with respect to recalls; and
- Third Parties
  - o What third parties does Camber Pharmaceuticals outsource to or utilize for any assistance with respect to any of the roles they have in distributing valsartan products.

The above list represents Plaintiffs' best efforts at trying to understand the chain of events of how Hetero products leaves India and consequently makes its way into the hands of consumers and patients, but it is not meant to be exhaustive or inclusive of all issues that may relate to Camber's business activities. We'll note that many of Plaintiffs' Requests for the Production of Documents (served in August) included requests for documents related to Camber's distribution and supply side activity. Plaintiffs must understand this information in order to appropriately negotiate custodians and the scope of discovery. Given the limited production of Core Discovery by Hetero USA, Plaintiffs have not been able to discern much information related to Camber's operations.

Please let me know when we can expect Camber's proposed list of potential custodians, organizational charts, and when Camber is available to begin the process of meeting and conferring. Of course, Plaintiffs' preference is to collaboratively work with Counsel to avoid raising the issue before the Court unless absolutely necessary. Plaintiffs are also sensitive to, and cognizant of, Counsel's current trial obligations. However, given the rapidly approaching December deadline to settle all discovery disputes, if some progress is not made in the coming weeks, Plaintiffs will have no choice but add this item to future CMC agendas.

Best,

Layne

Layne Hilton
Kanner & Whiteley, L.L.C.
701 Camp Street
New Orleans, LA  70130
(504) 524-5777 voice
(504) 524-5763  fax
www.kanner-law.com

_____
THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT(S) AND MAY CONTAIN CONFIDENTIAL AND PRIVILEGED INFORMATION.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.  _____

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

# Defendant Camber
## *Custodians Identified by Plaintiffs*

| Name | Job Title/Department | Example Bates Ranges |
|---|---|---|
| Kirk Hessels | Vice President, Marketing | HETERO_USA000028251; HETERO_USA000028610; and HETERO_USA000028608. |
| Megan Hinman | Manager of Sales Operations | HETERO_USA000001908. |
| Scott Irwin | Supervisor, Contracts and Pricing | *Found from publicly available information* |
| Srikanth Namburi | Director of Pricing and Supply Chain | HETERO_USA000027970; HETERO_USA000029525; HETERO_USA000028589; HETERO_USA000029528; HETERO_USA000028063; HETERO_USA000027966; and HETERO_USA000027921. |
| Kon Ostaficiuk | President | HETERO_USA000028435; HETERO_USA000028119; HETERO_USA000028111; HETERO_USA000028651; HETERO_USA000028028; HETERO_USA000028076; HETERO_USA000028141; and HETERO_USA000028641. |
| Allison Prezioso[1] | Customer Account Specialist and Return Analyst | HETERO_USA000028251;and HETERO_USA000028618. |
| Clayton Smith | National Accounts Manager | *Found from publicly available information* |

---

[1] Metadata from documents produced in Core Discovery indicate that Ms. Prezioso was also the author of many relevant documents, including customer lists, and the actual product recall notice. *See, e.g.*, HETERO_USA000028407, HETERO_USA000028005, and HETERO_USA002.

1