# Exhibit 26

2013 WL 608742
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

Lowell P. BURRIS and Joyce P. Burris, Plaintiffs,
v.
VERSA PRODUCTS, INC., G and L Products, Inc., and Gulf Underwriters Insurance Company, Defendants.

Civil No. 07–3938 (JRT/JJK).
|
Feb. 19, 2013.

**Attorneys and Law Firms**

Thomas F. Handorff, Esq., Handorff Law Offices, P.C., for Plaintiffs.

Richard A. Lind, Esq., and Matthew D. Sloneker, Esq., Lind, Jensen, Sullivan & Peterson, P.A., for Defendants Versa Products, Inc., and G and L Products, Inc.

Nicholas J. O'Connell, Esq., and Thomas A. Gilligan Esq., for Defendant Gulf Underwriters Insurance Company.

**ORDER AND MEMORANDUM**

JEFFREY J. KEYES, United States Magistrate Judge.

 *1  This matter is before the Court on Plaintiffs' Motion to Compel Discovery. (Doc. No. 128.) The Court held a hearing on Plaintiffs' motion on February 6, 2013, at which the parties were represented by counsel. Based on the parties' submissions, the argument of counsel, and on all the files and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Compel Discovery (Doc. No. 128), is **GRANTED IN PART** and **DENIED IN PART** as more fully explained in the attached Memorandum; and

2. The attached Memorandum is hereby incorporated in this Order.

**MEMORANDUM**

In this product liability suit, Plaintiffs allege that Lowell P. Burris was injured while using a defective ladder manufactured and distributed by Defendants Versa Products, Inc. ("Versa"), and G and L Products, Inc ("G & L"). The accident that caused Mr. Burris's injuries occurred in 2001, and Plaintiffs brought this lawsuit in 2007. But now, more than five years later, this case continues due to a somewhat complex procedural history.

After this matter commenced, Defendant Gulf Underwriters Insurance Company ("Gulf") brought a related coverage action in this District in which Gulf disputed its alleged obligation to defend and indemnify Versa and G & L from Plaintiffs' product liability claims. Gulf had issued Versa a "claims made" policy for the period from March 3, 2003, to March 3, 2004, and contended that neither Versa nor Gulf received notice of Plaintiffs' claim within that policy period.[1] The District Court granted Gulf's motion for summary judgment in the coverage action (Doc. No. 100), and this case was stayed while Plaintiffs appealed the coverage decision to the Eighth Circuit. (*See* Doc. Nos. 101–02.)

The Eighth Circuit reversed and remanded the summaryjudgment decision in the coverage action, and following the issuance of the Eighth Circuit's Mandate, Gulf was allowed to intervene in this case. (Doc. No. 112.) After the District Court allowed Gulf to intervene, the Court granted Plaintiffs' request to take discovery on coverage issues that would be litigated as part of the now consolidated coverage and product liability actions. (Doc. No. 115, Mins. for Telephone Hr'g (indicating that a deadline for coverage discovery was set by the District Court).) Thereafter, the parties stipulated to the entry of a Protective Order, which the undersigned adopted on November 27, 2012. (Doc. No. 116 (Stipulation); Doc. No. 117 (Protective Order).) Plaintiffs then served discovery on Gulf and Versa concerning coverage issues. Because Plaintiffs are dissatisfied with the responses Gulf and Versa provided, Plaintiffs filed their Motion to Compel Discovery. (Doc. No. 128.)

Plaintiffs' motion to compel raises three issues. First, Plaintiffs seek an Order requiring Gulf to remove redactions it placed in fifty-one pages of documents produced in response to Plaintiffs' Rule 34 requests for production. Second, Plaintiffs seek an order requiring Versa to provide more complete responses to the Plaintiffs' interrogatories and document requests. And finally, Plaintiffs seek an order requiring Versa to produce its former President, David

Lambert, for a deposition. The Court addresses each of these issues in turn.

## I. GULF'S REDACTIONS

*2 As noted, Gulf produced several pages of documents in response to Plaintiffs' requests for production under Rule 34, but redacted material on fifty-one of those pages. Following some discussions between the parties' counsel, Gulf informed Plaintiffs that the redacted portions "relate to formulaic computations for insurance pricing which are considered proprietary trade secrets." (Doc. No. 134, Aff. of Nicholas J. O'Connell ("O'Connell Aff.") ¶ 2, Attach. 1.) Gulf also took the position that it need not disclose that redacted information to Plaintiffs because the information would not be relevant to the coverage issues. (Handorff Aff. ¶ 11, Attach. 10 at 1.) In addition, Gulf noted that the redactions on one page of its production "relate to attorney/client communications." (O'Connell Aff. ¶ 2, Attach. 1.) Further, Gulf provided Plaintiffs with a "Summary of Redacted Documents" that generally described what material had been redacted. (*Id.* ¶ 3, Attach. 2.)

Plaintiffs argue that Gulf's redactions in these documents are improper and request that Gulf be compelled to eliminate all redactions from its documents. (Doc. No. 129, Pls.' Mem. in Supp. of Mot. to Compel ("Pls.' Mem.") 6–7.)[2] In opposing the motion, Gulf stands by its assertions that the information was properly redacted because it is irrelevant and constitutes "proprietary trade secrets" that should not be disclosed to Plaintiffs. (*See* Doc. No. 133, Gulf's Mem. in Opp'n to Pls.' Mot. to Compel 6–8.) Gulf submitted a copy of the redacted material, along with an unredacted copy of the documents, to the Court for *in camera* review.

The Court has reviewed the documents at issue and concludes that the vast majority of the redactions at issue must be removed. Although Gulf claims that many of the redactions were necessary to avoid disclosure of trade secrets, "there is no absolute privilege [against disclosure] for trade secrets and similar confidential information." *See Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 362 (1979) (alteration in original). Nor has Gulf established that any of the redacted information actually qualifies as a legitimate trade secret. To support its trade secret claim, Gulf offered only the conclusory assertion that it considers the information "proprietary trade secrets." That conclusory assertion will not suffice, and Gulf has failed to show that the information is not generally known or readily ascertainable, that the information derives independent economic value from secrecy, or that the information is the subject of reasonable efforts to maintain its secrecy. *See Ikon Office Solutions, Inc. v. Dale,* 170 F.Supp.2d 892, 897 (D.Minn.2001) (citing Minn.Stat. § 325C.01, subd. 5, Minnesota's version of the Uniform Trade Secrets Act).

In addition, Gulf has failed to demonstrate why the Protective Order in this case will fail to protect its interests or that there is some substantial likelihood that Plaintiffs or any other party will fail to scrupulously adhere to the Protective Order's non-disclosure provisions. When the Court entered the Protective Order, it concluded that there was good cause to allow the parties to conduct discovery while designating certain information "Confidential" so that it would not be disclosed or used outside this litigation. When information is labeled confidential by the producing party, it cannot be published by the party receiving it, and it can only be used in the litigation. (*See* Doc. No. 117, Protective Order ¶ 3.) The parties stipulated that the Protective Order the Court entered was sufficient to protect their interests in preventing wider dissemination of sensitive information. No party indicated that its interests required the right to redact proprietary information from the materials it would produce during discovery. This is not a case where the opposing party is a competitor of the insurance company; Plaintiffs are an injured man who fell off a ladder and his wife. The parties did not even ask for the right to produce certain information under a "Confidential Attorney's Eyes Only" designation. And the Court has not authorized the parties to do either. In the typical case, like this one, a protective order such as the one the Court entered here will suffice to prevent the type of competitive harm Gulf suggests would occur by allowing Plaintiffs to see the redacted information. Gulf has not explained why this case is any different.

*3 Gulf next argues that it properly redacted the information because the undisclosed information is not relevant. However, Gulf offers no support for the proposition that a party may properly redact portions of a document on grounds that some, but not all, of the document is relevant or responsive. Just as Gulf did not obtain permission to redact alleged trade secrets from its discoverable documents, Gulf neither sought nor obtained permission to redact discoverable documents on the grounds that portions of those documents are irrelevant or nonresponsive. The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product

protection. Fed.R.Civ.P. 26(b)(5); *see* Steven J. Purcell, *Document Production in Federal Litigation: Can You Redact for Nonresponsiveness?,* 59–Dec. Fed. Law. 22 (Dec.2012) (discussing lack of support for nonresponsiveness redactions in the Federal Rules of Civil Procedure). In addition, redacting allegedly nonresponsive or irrelevant portions of discoverable documents "breed[s] suspicions." *In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.,* Nos. 08–md–1945 (RJH)(DFE), 08–Civ.–0333 (RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009). Parties making such redactions unilaterally decide that information within a discoverable document need not be disclosed to their opponents, thereby depriving their opponents of the opportunity to see information in its full context and fueling mistrust about the redactions' propriety. And if the Court were to allow such a practice it would improperly incentivize parties to hide as much as they dare. That is a result at odds with the liberal discovery policies, the adversary process, and the Court's obligation to read the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. None of this is intended to imply that Gulf or its counsel attempted to hide the ball here. But because these types of redactions find no support in the Rules and are fraught with the potential for abuse, the Court will not permit them unless the circumstances provide an exceedingly persuasive justification to do so.

For these reasons, the Court grants Plaintiffs' request for removal of redactions in part. Gulf must remove the redactions it placed in the following documents submitted to the Court:

- BurrisGulfProd000003–4;
- BurrisGulfProd000007–8;
- BurrisGulfProd000011;
- BurrisGulfProd000013;
- BurrisGulfProd000015–25;
- BurrisGulfProd000028–33;
- BurrisGulfProd000054;
- BurrisGulfProd000056;
- BurrisGulfProd000068;
- BurrisGulfProd000076;
- BurrisGulfProd000080–81;
- BurrisGulfProd000090–93;
- BurrisGulfProd000101–05;
- BurrisGulfProd000107–09;

**\*4** • BurrisGulfProd000113;

- BurrisGulfProd000119;
- BurrisGulfProd000158; and
- BurrisGulfProd000176.[3]

Gulf must remove these redactions within fourteen days, unless Gulf files an objection to this Order with the District Court. If Gulf files such an objection, it need not remove these redactions unless and until the District Court overrules those objections. Finally, although Gulf must remove the redactions in the pages listed above for purposes of discovery, whether that information may be redacted if any of these documents is offered at trial remains to be seen. That issue is not before the Court at this time.

One final issue concerning Gulf's redactions remains. Gulf redacted three paragraphs in BurrisGulfProd000174 on the basis that the information included in those paragraphs was protected by the attorney-client privilege. Because this is a diversity action, the Court resolves questions of attorney-client privilege according to state law. Fed.R.Evid. 501 (indicating that in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision); *see Bituminous Cas. Corp. v. Tonka Corp.,* 140 F.R.D. 381, 386 (D.Minn.1992) (citing Fed.R.Evid. 501). The privilege must be narrowly construed, and the party resisting disclosure bears the burden of presenting facts to establish the privilege's existence. *Bituminous Cas. Corp.,* 140 F.R.D. at 386. Under Minnesota law,[4] information is protected from disclosure under the attorney-client privilege if it is part of a confidential communication between the client and the client's attorney and it was made for the purpose of securing legal advice. *See Brown v. St. Paul City Rwy,* 241 Minn. 15, 33, 62 N.W.2d 688, 700 (1954). The mere fact that a client has requested an attorney to act as counsel or consulted with counsel is not protected by the privilege. *See Baskerville v. Baskerville,* 246 Minn. 496, 502, 75 N.W.2d 762, 767 (1956) ("The fact of the creation or the existence of the relationship of attorney and client is within the attorney's

own knowledge and that knowledge is collateral to, but not an ingredient of, any confidential communication upon which the attorney is asked to give professional advice or aid."); *Henderson v. Eckern,* 115 Minn. 410, 413, 132 N.W. 715, 716 (1911) ("It was not error for the court to receive in evidence letters from the defendant to his attorney showing a request to and employment of the attorney to foreclose the chattel mortgages.").

To support its claim of privilege, Gulf stated in its redaction log that "[t]he redacted information references communications between Gulf and legal counsel." (O'Connell Aff. ¶ 3, Attach. 2 at 5.) But Minnesota law does not protect every document that merely references communications between a client and counsel. It is the substance of the request for legal advice and the advice given that is protected from disclosure. *See Bituminous Cas. Corp.,* 140 F.R.D. at 387 (concluding that only certain documents prepared by party's counsel "containing the substance of client communications ... may be withheld from discovery on the ground of attorney-client privilege"). Having reviewed BurrisGulfProd000174, the Court concludes that only some of the information redacted from that document is protected by the attorney-client privilege. Accordingly, Plaintiffs' request to remove redactions is granted in part and denied in part with respect to this document. Specifically, the Court concludes as follows:

> **\*5** • The redaction in the first paragraph, which is preceded by the date "4/29/08," may remain redacted in its entirety because that paragraph includes the substance of legal advice obtained from Gulf's counsel;
>
> • The redaction in the second paragraph, which is preceded by the date "4/4/08," must be removed because that paragraph does not disclose the substance of any communication made for the purpose of securing legal advice; and
>
> • In the third paragraph, in the redaction following the date "2/26/08," only the final sentence may be redacted because it includes the substance of legal advice from Gulf's counsel. The information in the other sentences discloses only the existence of an attorney-client relationship and the fact that counsel was consulted.

As with the Court's Order concerning Gulf's redactions based on their supposed irrelevance and trade-secret protection, Gulf must remove these redactions within fourteen days, unless Gulf files an objection to this Order with the District Court. If Gulf files such an objection, it need not remove these redactions unless and until the District Court overrules those objections.

## II. INTERROGATORIES AND DOCUMENT REQUESTS

Because the second request in Plaintiffs' motion to compel concerns Versa's corporate status, the Court considers the following information relevant. Until 2005, Versa was technically an active Wisconsin corporation. However, in December 2005, Versa filed articles of dissolution with the Wisconsin Department of Financial Institutions. (*See* Doc. No. 13, Attachs. 1–2.) Thus, Versa currently has no employees, officers, directors, or other representatives, (*see* Handorff Aff. ¶ 3, Attach. 2 at 1), and likely has not had any officers or employees since at least December 2005.

After the Eighth Circuit remanded the coverage action, Plaintiffs served several interrogatories and document requests concerning coverage issues on Versa. In response to Plaintiffs' Interrogatories, Versa's counsel indicated that Versa has no employees, officers, directors, or other representatives who can respond to Plaintiffs' discovery requests on behalf of the dissolved corporation. (Handorff Aff. ¶ 3, Attach. 2, *passim.*) In response to Plaintiffs' requests for production of documents and things, Versa's counsel lodged various objections, informed Plaintiffs that Versa no longer has any documents, and referenced their answers to Plaintiffs' interrogatories asserting that Versa no longer has any representatives. (Handorff Aff. ¶ 3, Attach. 2 at 7–10.) In other words, Versa told Plaintiffs that it was unable to respond to Plaintiffs' discovery requests.

Plaintiffs argue that these responses are improper, asserting that Versa's lawyers should have attempted to contact Versa's former president, David Lambert, to provide answers to the interrogatories and documents, but they failed to do even that. (Doc. No. 129, Pls.' Mem. in Supp. of Mot. to Compel ("Pls.' Mem.") 7.) Versa counters that it did attempt to contact Mr. Lambert, who is not a party to this action, through his attorney, to see if Mr. Lambert would be willing to assist in the preparation of Versa's responses to Plaintiffs' discovery requests. But Lambert's counsel told Versa's attorneys that Lambert has no authority to act on behalf of the dissolved corporation, and that he would not cooperate in preparing such responses. (Doc. No. 135, Def. Versa's Mem. in Opp'n to Pls.' Mot. to Compel ("Versa's Mem.") 2–3.)

**\*6** Thus, it appears that Versa's position is that it has not, cannot, and does not have to provide a substantive response to Plaintiffs' discovery requests. But Versa has cited no law to support the proposition that a party to a lawsuit has no duty to respond substantively to discovery requests simply because it is a dissolved corporation. Versa *is* a party to this action—it has answered the Complaint and denied liability—and Wisconsin law [5] provides that a dissolved corporation "continues its corporate existence ... to wind up and liquidate its business and affairs," and that "[d]issolution of a corporation does not ... [p]revent the commencement of a civil, criminal, administrative or investigatory proceeding by or against the corporation in it its corporate name." Wis. Stats. § 180.1405. If a dissolved Wisconsin corporation may still be a party in a civil lawsuit, which Versa has not disputed here, then it has a duty under the Federal Rules of Civil Procedure to respond to discovery that is properly served on it. Fed.R.Civ.P. 33(b)(1)(B) (requiring interrogatories to be answered by any agent or officer of a corporation); Fed.R.Civ.P. 34(b)(2)(A) (requiring the party to whom the request is directed to respond); *cf. In re Grand Jury Subpoenas Issued to Thirteen Corps.,* 775 F.2d 43, 48 (2d Cir.1985) (concluding that because New York law allowed a dissolved corporation to be sued even after its dissolution, that dissolved entity was required to respond to subpoenas relating to predissolution conduct); *Johnson v. RAC Corp.,* 491 F.2d 510, 514 (4th Cir.1974) (allowing plaintiff to complete discovery in a products liability case against a defendant corporation even though the corporation allegedly dissolved more than three years earlier under a Delaware statute); *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs., Inc.,* No. 2:08cv176, 2010 WL 2629485, at \*3–\*4 (N.D. Ind. June 28, 2010) (rejecting a defendant's argument that it should not be required to respond to discovery because of the "hundreds of hours" that would be involved in trying to answer discovery requests in light of the defendant's defunct status).

According to Versa's attorney, Versa's only former officer apparently refuses to help Versa respond to discovery because he believes that he can thereby protect the dissolved corporation. Whether he can legitimately protect the dissolved company in this manner is not an issue currently before the Court, but Versa's obligation to comply with the discovery rules is. Thus far, it has failed to comply with those obligations, and as a party to this litigation, Versa must act more diligently in attempting to respond to discovery. Versa's attorneys can certainly continue to reach out to Mr. Lambert and any other former employees to get input on the information encompassed by Plaintiffs' discovery requests. They can request access to and permission to copy whatever documents Mr. Lambert has in his possession that they have not yet seen, and they can produce any responsive documents, use them to answer interrogatories, or properly refer to them under Rule 33(d).

**\*7** What Versa cannot do, free of consequences, is tell Plaintiffs that they are just out of luck. In the event Versa persists in its position that it will not provide substantive answers to interrogatories or document requests, those consequences may include preventing Versa from contesting issues addressed in the discovery or defending itself using documents or other pieces of information that have not been produced. *See* Fed.R.Civ.P. 37(d)(1)(A)(ii) (providing for sanctions for failure to answer interrogatories or requests for inspection); Fed.R.Civ.P. 37(d)(3) (providing that the Court may impose sanctions under Rule 37(b)(2)(A)(i)-(vi)). It may also be subject to other more dispositive sanctions, including the entry of judgment against it. Fed.R.Civ.P. 37(b)(2)(A)(v)-(vi). This is not to say that Versa should be subject to such sanctions now; but it has failed to comply with its discovery obligations in response to the discovery Plaintiffs served after the remand, and continued failure to comply may result in these or other sanctions being imposed. For these reasons, Plaintiffs' motion to compel is granted to the extent that Versa must provide substantive responses to Plaintiffs' interrogatories and document requests, and provide supplemental answers to that discovery within thirty days of this Order and Memorandum.

### III. DAVID LAMBERT DEPOSITION

Finally, Plaintiffs ask the Court to compel Versa to produce David Lambert for a deposition. Plaintiffs have not served a deposition notice on Versa prior to bringing their motion, but have asked Versa's counsel to make Lambert available for a deposition. Because no notice has been served, it is unclear whether Plaintiffs are seeking to compel a Rule 30(b)(6) deposition or to depose Mr. Lambert in his capacity as an individual. Because Plaintiffs have specified an individual they wish to depose rather than to depose Versa, the corporation,[6] the Court construes Plaintiffs' motion to be seeking a deposition of Lambert in his individual capacity. In any event, the failure to serve a notice means that Versa is under no obligation to produce a witness under Rule 30(b)(6) or otherwise. Therefore, Plaintiffs' motion is denied to the extent it requests the Court order Lambert's deposition.

Because Mr. Lambert is not a party to this action and is not a current employee of Versa, Plaintiffs must use the subpoena process under Federal Rule of Civil Procedure 45 to obtain Lambert's appearance at such a deposition. According to Versa's counsel, this can be readily accomplished because Lambert's attorney has indicated that Lambert would willingly respond to a properly served subpoena. (Doc. No. 136, Aff. of Matthew D. Sloneker ("Sloneker Aff.") ¶ 4.)

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 608742

Footnotes

1   Versa's claims made policy issued by Gulf became part of the dispute because Plaintiffs assert that they sent Versa a letter notifying Versa of their claims on March 14, 2003. (*See* Doc. No. 130, Aff. of Thomas F. Handorff in Supp. of Pls.' Mot. to Compel ("Handorff Aff.") ¶ 2, Attach. 1.)

2   Plaintiffs also state in their memorandum that they would like the Court to order Gulf to "provide substantive answers to Burris' interrogatories[,]" "rather than refer to documents." (Pls.' Mem. 7.) However, Plaintiffs have failed to properly present any dispute concerning Gulf's responses to Plaintiffs' interrogatories because they have not specified the particular interrogatories that are at issue or given any recitation of why any response or objection is improper. D. Minn. LR 37.1 (discussing the form of discovery motions). As a result, the Court offers no opinion on whether Gulf properly responded to Plaintiffs' interrogatories.

3   In its redaction log, Gulf claimed that the information in BurrisGulfProd000176 had to be redacted because it "relates to the reserve that was set by Gulf upon receiving notice of Burrises' claim in January 2008." Gulf does not offer any justification for redacting information concerning an amount an insurer sets aside as a reserve. It does not claim that this information is privileged or that it is work product that is protected from disclosure. Nor does it offer any other rationale for this redaction.

4   The parties did not raise any argument that another state's law would supply the rule of decision. *See* Fed.R.Evid. 501.

5   *See* Fed.R.Civ.P. 17(b)(2) (providing that a corporation's capacity to sue or be sued is determined "by the law under which it was organized").

6   *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2103 (3rd ed. 2010) ("Because Rule 30(b)(6) imposes on the organization the obligation to select the individual witness, the party seeking discovery under that provision of the rule is not permitted to insist that it choose a specific person to testify unless in response to a Rule 30(b)(6) notice.").

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.