# Exhibit 36

Case 1:19-md-02875-RMB-SAK   Document 311-37   Filed 12/05/19   Page 2 of 7 PageID: 4594

In re Takata Airbag Products Liability Litigation, Not Reported in Fed. Supp. (2017)
2017 WL 8812734

2017 WL 8812734
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida,
Miami Division.

IN RE: TAKATA AIRBAG
PRODUCTS LIABILITY LITIGATION
This Document Relates to All Actions

Master File No. 15-02599-MD-MORENO
|
MDL No. 2599
|
Signed 07/05/2017

### SPECIAL MASTER'S REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF HONDA'S DOCUMENT RETENTION POLICIES

Ryan K. Stumphauzer, Special Master

**\*1** This matter came before the Special Master on Plaintiffs' Motion to Compel Production of Honda's Document Retention Policies (Attachment 1). The undersigned has reviewed Plaintiffs' Motion and the Honda Defendants' Response (Attachment 2).[1] The undersigned also conducted a telephonic hearing with counsel for the Plaintiffs and the Honda Defendants on June 21, 2017 (Attachment 3).

Following review and consideration of the Parties' arguments, the undersigned recommends that the District Court should **GRANT** Plaintiffs' Motion to Compel Production of Honda's Document Retention Policies.

### I. PROCEDURAL HISTORY.
On June 25, 2015, the Plaintiffs served identical Second Requests for Production on each of the Honda Defendants. Attach. 1, Ex. A. In Request Numbers 96 and 98, respectively, the Plaintiffs requested "[a]ll document retention policies issued by or for You," and "[a]ll documents related to the destruction or deletion of any documents related to the Defective Airbags, the Relevant Recalls, the documents requested herein, or any other documents relevant to this litigation." *Id.* at 18.

On October 7, 2015, the Honda Defendants responded to the Plaintiffs' Second Request for Production and objected that Request Numbers 96 and 98 were overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as Plaintiffs sought " 'all document retention policies,' company-wide, over a period of sixteen years." Attach. 1, Ex. B., 83-84, 86. The Honda Defendants also objected that the requests were unduly burdensome insofar as they sought information that was not within the Honda Defendants' possession, custody or control. *Id.* Notwithstanding these objections, the domestic Honda Defendants indicated that they would produce any responsive, non-privileged document retention policies that had already been "produced to [the National Highway Transportation Safety Administration ("NHTSA") ] in *In re PE14-016 Air Bag Inflator Rupture*, in response to NHTSA's 'General Order to Manufacturers' dated November 18, 2014 and its 'Special Order Directed to American Honda Motor Co., Inc.' dated November 5, 2014." *Id.* at 83-84. The NHTSA Special Order referenced in the discovery response required American Honda Motor Co. to provide several broad categories of documents related to Takata airbag ruptures, as well as "any document retention policy that applies to the documents requested herein." Attach. 1, Ex. C (Request 36), 14. The foreign Honda Defendants cross-referenced this response from the domestic Honda entities, but it was unclear whether they also produced document retention policies to NHTSA and, if so, whether they intended to provide them to the Plaintiffs. Attach. 1, Ex. A, 66.

The parties subsequently exchanged "meet and confer letters" regarding Honda's objections to Plaintiffs' Second Request for Production, but ultimately agreed in March 2016 to defer any disputes regarding the document retention policies until a later date with both parties reserving their rights. Attach. 1 at 2. The dispute was subsequently rekindled because, according to Plaintiffs, discovery responses from Honda and Takata Corporation ("Takata") revealed "substantial gaps in Honda's document production, as Honda produced relatively few records from several important custodians, no records relating to certain meetings with Takata, and scarcely any reports that Takata attests it provided to Honda." *Id.* Although the parties continued to "meet and confer" for several months after the ongoing discovery process revealed the alleged deficiencies in Honda's document production, the Honda Defendants advised Plaintiffs in late May 2017 that they would stand on their objections to producing the document retention policies. *Id.* at 3.

Case 1:19-md-02875-RMB-SAK    Document 311-37    Filed 12/05/19    Page 3 of 7 PageID: 4595

In re Takata Airbag Products Liability Litigation, Not Reported in Fed. Supp. (2017)
2017 WL 8812734

**\*2** On June 2, 2017, the Plaintiffs served the instant Motion, seeking to compel Honda to produce their document retention policies from 1999 through the present, claiming they needed "these policies to evaluate significant gaps in Honda's document production, determine whether spoliation has occurred or documents have been withheld, and decide whether and what additional document requests are necessary." *Id.* at 1. To illustrate the alleged gaps in Honda's document production, Plaintiffs contend that Honda failed to produce documents related to their meetings with Takata, even though Takata identified several specific meetings with Honda in its First Request for Production to the Honda Defendants on October 14, 2016. Attach. 1, Ex. G (Requests 7 and 8), 7-9. Similarly, Plaintiffs argue that the Honda Defendants failed to produce several engineering reports provided to them by Takata, even though Takata subsequently identified several such reports in its Responses and Objections to Plaintiffs' Second Set of Interrogatories on August 26, 2016. Attach. 1, Ex. J (Interrogatory 3), 6-9.

To further illustrate the alleged deficiencies in Honda's document production, Plaintiffs have focused on the documents produced by Honda with respect to two crucial witnesses. First, Plaintiffs argue that Honda produced almost no emails to or from Yoshinobu Kanazawa, a Chief Engineer who has worked at Honda since 1982. Mr. Kanazawa was allegedly involved in evaluating Takata inflators from 1999 through at least 2010, and he testified that his emails and the minutes of meetings he attended would be maintained by the Honda Defendants in accordance with their document retention policies. Attach. 1 at 2.; Attach. 1, Ex. D at 66-68, 86, 362-366. Likewise, Plaintiffs argue there are "sizable gaps" in Honda's document production for Koichi Kamiji who, like Mr. Kanazawa, is a Senior Engineer who has been employed by Honda since 1982. Mr. Kamiji allegedly played a significant role with respect to Takata airbags at Honda. Attach. 1 at 2. Notwithstanding his role, Plaintiffs argue that Honda produced almost no emails from Mr. Kamiji's custodial file pre-dating 2014. *Id.*

The Honda Defendants filed their Response in Opposition on June 9, 2017, arguing that Plaintiffs' Motion sought "irrelevant documents that are apparently intended as a springboard for taking time-consuming and expensive 'discovery about discovery' that is impermissible and not proportional to the needs of the case." Attach. 2 at 1-2. The Honda Defendants also vehemently disputed the Plaintiffs' claim that their document production exhibited "sizable gaps" or other deficiencies. Honda explained, for example, that the lack of emails related to Mr. Kanazawa and Mr. Kamiji, especially prior to 2014, was unremarkable given that Honda Motor Company and Honda Research & Development, the foreign Honda entities, have email systems that are configured to retain emails for 30 and 21 days, respectively. Attach. 2 at 3. Likewise, Honda argued that the lack of other documents—including engineering reports and presentations, some of which are seventeen (17) years old—is hardly surprising given that many such documents were lost in the widely-reported massive earthquake in Japan in 2011. *Id.* at 1, 3; *Id.* at Ex. 1, 182-183. Notwithstanding these practical realities and challenges, Honda stated that it produced approximately 7,500 emails to or from Mr. Kamiji, or that reference Mr. Kamiji, and approximately 750 emails related to Mr. Kanazawa, by searching the email accounts of other Honda custodians, primarily in the United States. Attach. 1 at 3. Moreover, as a practical matter, Honda has emphasized that Takata *already* produced many, if not most, of the documents that Plaintiffs complain they have not received from Honda, thereby eliminating any claimed prejudice. *Id.* at 3. Finally, the Honda Defendants represented that they diligently searched for and produced all responsive documents, and that such representations are entitled to deference. *Id.* at 4, 5.

On June 21, 2017, the undersigned conducted a hearing on Plaintiffs' Motion. Attach. 3. During the hearing, the Honda Defendants stated they had produced to Plaintiffs two document retention policies for domestic Honda entities that had been previously produced to NHTSA. Attach. 3. at 42-45. The Honda Defendants further stated they did not produce any document retention policies for the Honda entities in Japan. *Id.* at 44. [2] Finally, Honda confirmed in the hearing that producing the document retention policies would not be onerous or burdensome, as they consist of a relatively small set of documents. *Id.* at 49-51.

**II. LEGAL STANDARD**

**A. Scope of Discovery Under Rule 26**

**\*3** Federal Rule of Civil Procedure 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Moreover, "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Additionally, the Supreme Court has held that discovery rules are to

Case 1:19-md-02875-RMB-SAK   Document 311-37   Filed 12/05/19   Page 4 of 7 PageID: 4596

In re Takata Airbag Products Liability Litigation, Not Reported in Fed. Supp. (2017)
2017 WL 8812734

be accorded broad and liberal construction. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

"When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Wagner v. Viacost.com*, No. 06-81113-CIV, 2007 WL 1879914, at *1 (S.D. Fla. June 29, 2007). In other words, "the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable." *Pena v. Drodriguez, LLC*, No. 15-20607-CIV-King/Torres, 2016 WL 4430942, at *1 (S.D. Fla. Aug. 17, 2016).

### B. Discovery of Document Retention Policies

Federal courts around the country have reached different conclusions as to whether document retention policies are relevant to claims or defenses within the meaning of Federal Rule of Civil Procedure 26. Several courts, including two Magistrate Judges from the Southern District of Florida, have held that document retention policies are relevant and discoverable in appropriate circumstances. *See, e.g., Pinares v. United Tech. Corp.*, No. 10-80883-CIV-RYSKAMP/HOPKINS, 2015 WL 11256307, at *4 (S.D. Fla. May 20, 2015); *Pinilla v. Northwings Accessories Corp.*, No. 07-21564-CIV-HUCK/SIMONTON, 2007 WL 2826608, at *5 (S.D. Fla. Sept. 25, 2007); *Sharma v. BMW of N. Am., LLC*, No. 13-cv-02274-MMC (KAW), 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) (concluding that document retention policies were relevant and proportional under Rule 26, and reasoning that "document retention policies may help Plaintiffs determine the universe of responsive documents and evaluate any gaps in document production"); *PCS Phosphate Co., Inc. v. Am. Home Assurance Co.*, No. 5:14-CV-99-D, 2015 WL 8490976, at *5 (E.D.N.C. Dec. 10, 2015) (collecting cases) ("document retention polices are generally discoverable"); *Newman v. Borders*, 257 F.R.D. 1, 3 (D.D.C. 2009) ("That a party's document retention policies, including its policies as to electronically stored information, may be a fit subject of discovery cannot be gainsaid").

Conversely, other courts have held that document retention policies are not discoverable under Rule 26 because they were not relevant to the claims and defenses at issue, at least absent a spoliation claim. These courts have characterized discovery requests for document retention policies as impermissible "non-merits-based discovery" or "discovery of discovery." *See, e.g., Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 2668301, at *5 (D. Colo. July 1, 2008) (holding that the "storage, preservation and backup of emails" was not relevant to whether defendants breached plaintiff's insurance policy or acted in bad faith in adjusting his claim); *Fish v. Air & Liquid Sys. Corp.*, No. GLR-16-496, 2017 WL 697663, at *15 (D. Md. Feb. 21, 2017) (rejecting plaintiffs' request for discovery of defendant's document retention policies over an 85-year period where plaintiffs failed to explain why the request was relevant and proportional); *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 364 (N.D. Tex. 2013) (holding that plaintiffs' proposed deposition, which included questioning about document retention policies, was overbroad and irrelevant, and that "[w]hile plaintiff speculates that [d]efendant may have additional documentation that it has not produced, there is no evidence to support that supposition at this point"). [3]

**\*4** Even within the first line of cases, those where the courts have ordered production of document retention policies under Rule 26, there are at least three different analytical approaches. On one end of the spectrum, some courts permit discovery of document retention policies without any preliminary showing by the moving party of spoliation or discovery misconduct. *See, e.g., Sharma*, 2016 WL 1019668, at *4 (determining that document retention policies were discoverable without requiring proof of spoliation because "[k]nowledge of [the defendant's] document retention policies will allow plaintiffs to assess the company's document production, determine whether any relevant documents are lacking, and evaluate whether additional discovery is necessary in this case"); *Burd v. Ford Motor Co.*, No. 3:13–cv–20976, 2015 WL 4137915 at *9 (S.D. W. Va. July 8, 2015) ("Contrary to Ford's contentions, discovery of document retention and disposition policies is not contingent upon a claim of spoliation or proof of discovery abuses ...").

On the opposite end of the spectrum, some courts refuse to allow discovery of document retention policies unless the movant first establishes that spoliation is a legitimate issue in the case. *See, e.g., Cableview Comm'n of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, No. 3:13-cv-306-J-34JRK, 2015 WL 12838175, at *6 (M.D. Fla. May 4, 2015) (holding that the "discoverability of document retention policies

Case 1:19-md-02875-RMB-SAK   Document 311-37   Filed 12/05/19   Page 5 of 7 PageID: 4597

In re Takata Airbag Products Liability Litigation, Not Reported in Fed. Supp. (2017)
2017 WL 8812734

hinges upon whether spoliation is actually at issue"); *In re Jemsek Clinic, P.A.*, 2013 WL 3994666, at *9 (citing cases for the proposition that "[v]arious courts have held that such non-merits-based discovery is improper when the requesting party has not made a threshold showing that spoliation has actually occurred"); *Martin*, 292 F.R.D. at 364 (finding that deposition inquiries into, *inter alia*, a document retention policy are overbroad and irrelevant because the requesting party failed to produce evidence beyond speculation that the requested documents have not been produced); *accord In re Agent Orange Prod. Liab. Litig.*, 98 F.R.D. at 559 (E.D.N.Y. 1983) (directing additional discovery into a document destruction policy because of the respondent's "ill-timed destruction of documents").

In the middle of the spectrum, some courts permit discovery of document retention policies without a showing of spoliation or discovery misconduct, but only in circumstances where the non-moving party has claimed that requested discovery documents are "unavailable," or when there are indicia that the discovery process was not thorough, reliable, or transparent. In one highly analogous case, *Montgomery v. Wal-Mart Stores, Inc.*, the plaintiff sought all of the defendant's document retention policies dating back to 1996 and contended that these policies were relevant because the defendant "claimed that it cannot locate documents because they no longer exist." No. 12cv3057-JLS (DHB), 2015 WL 11233390, at *2 (S.D. Cal. Sept. 4, 2015). In response, the defendant argued that the plaintiff's request for document retention policies for the preceeding twenty years was "overbroad, harassing, irrelevant to the subject matter of the case, and not reasonably calculated to lead to the discovery of admissible evidence." *Id.* The court sided with the plaintiff, concluding that "document retention policies are relevant in light of [the defendant's] claim that it cannot locate certain documents." *Id.* at 4. The court further reasoned that plaintiff's request was proper because it was designed to "assist in his investigation into the existence of potentially relevant information." *Id. See also Bakhtiari Corp. v. Register Tapes Unlimited Inc.*, No. 12-5183 LHK (PSG), 2013 WL 2253182, at *3 (N.D. Cal. May 22, 2013) (compelling production of a document retention policy because of the respondent's alleged failure to locate several sets of documents despite the respondent's assurances that it had provided all the nonprivileged and relevant responsive documents in its possession); *accord Burd*, 2015 WL 4137915, at *9 (holding that discovery of document retention policies was justified because the "reservations expressed by Plaintiffs regarding the thoroughness of [defendant's] document production ... are sufficiently corroborated" given that "Plaintiffs have identified several instances in which document productions have been slow-to-come, incomplete, or inconsistent ... and ... supplied excerpts of deposition transcripts in which key employees testified to performing either limited searches for relevant documents, or no searches at all").

### III. ANALYSIS

#### A. Relevance

**\*5** The undersigned has carefully reviewed all of the above-cited cases and is persuaded by the first line of cases holding that document retention policies *may* be relevant under Rule 26 in appropriate circumstances. In reaching this conclusion, the undersigned has considered multiple factors. First, the undersigned is guided by the general principle that discovery rules are to be accorded broad and liberal construction. *See Herbert*, 441 U.S. at 177; *Hickman*, 329 U.S. at 507. Thus, in the face of arguably conflicting case law, the undersigned is inclined to permit discovery, especially given that two Magistrate Judges in the Southern District of Florida have permitted discovery of document retention policies. *See, e.g., Pinares*, 2015 WL 11256307, at *4; *Pinilla*, 2007 WL 2826608, at *5.

Second, the undersigned finds it highly persuasive that the former version of Rule 26(b), prior to the 2015 amendments, provided that permissible discovery "include[d] the *existence*, description, nature, *custody*, condition, and *location* of any documents or other tangible things ..." Fed. R. Civ. P. 26, advisory committee's note (2015) (emphasis added). Although this language was omitted after the 2015 amendments, the Advisory Committee clarified that "[d]iscovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples." *Id.* Thus, the undersigned believes that Rule 26 contemplates and permits the discovery of document retention policies insofar as they allow the moving party to evaluate the "existence ... custody ... and location of any documents."

Finally, the undersigned has considered various practical concerns, including that the parties to this massive multidistrict litigation—a matter involving millions of allegedly defective cars, dozens of alleged personal injuries, several foreign witnesses and voluminous documentary

Case 1:19-md-02875-RMB-SAK   Document 311-37   Filed 12/05/19   Page 6 of 7 PageID: 4598

In re Takata Airbag Products Liability Litigation, Not Reported in Fed. Supp. (2017)

2017 WL 8812734

evidence spread across multiple countries—are facing a rapidly approaching discovery deadline. By allowing discovery of the Honda Defendants' document retention policies, the undersigned believes that Plaintiffs will be able to streamline and possibly even narrow the discovery process in a way that benefits both parties. *Accord* Fed. R. Civ. P. 26, advisory committee's note (2015) ("framing intelligent requests for electronically stored information, for example, may require detailed information about another party's information systems and other information resources").

Having concluded that document retention policies *may* be relevant under Rule 26 in appropriate circumstances, the undersigned also considered the three different analytical approaches described in Section II.B. above. To that end, the undersigned does not believe that the Plaintiffs should be required to make a showing of spoliation or discovery misconduct before gaining access to the Honda Defendants' document retention policies. While an actual spoliation count, or even a well-founded spoliation concern, would certainly make the document retention policies more directly and obviously relevant under Rule 26, the undersigned does not believe this should be a condition precedent to discovery. Such a condition does not appear in the 2015 Advisory Committee Notes to Rule 26 and, in fact, such a condition appears to be inconsistent with those notes insofar as they expressly permit discovery to determine the existence, location and custody of documents, and not just to prove spoliation. Moreover, the two Southern District of Florida cases that have permitted discovery of document retention policies—*Pinares* and *Pinilla*—did not appear to impose such a condition.[4]

**\*6** The undersigned found the analytical approach in *Sharma, Montgomery*, and *Bakhtiari Corp.* to be more persuasive. Without requiring the moving party to prove spoliation or improper discovery tactics, those courts permitted discovery of the document retention policies so that the moving party could evaluate the completeness of the existing document production, identify responsive documents that were missing, and craft targeted discovery requests to efficiently obtain any missing records. *Sharma* did not appear to require *any* preliminary showing by the moving party to permit such discovery. *Montgomery* and *Bakhtiari,* on the other hand, analyzed relevance by considering whether the non-moving party claimed that certain categories of documents were unavailable. The undersigned believes these approaches are more consistent with the Advisory Committee Notes to Rule 26, and also comport with a broad interpretation of the discovery rules. And, under either approach, Plaintiffs are entitled to discovery of Honda's document retention policies because the Honda Defendants have clearly taken the position that emails, engineering reports and other categories of documents are unavailable because of email retention policies, natural disasters, or the passage of time.

To be clear, the undersigned is *not* concluding that the Honda Defendants have withheld responsive documents or have exercised anything other than good faith during the discovery process. On the contrary, the Honda Defendants have offered reasonable explanations as to why some of the documents are unavailable, especially given that Japan suffered a catastrophic earthquake in 2011, and given that some of the requested documents are more than 15 years old. Moreover, the Honda Defendants have represented that they diligently searched for responsive records, and the undersigned agrees those representations are entitled to deference. Nonetheless, as explained above, the undersigned has concluded that the document retention policies are relevant because the Honda Defendants have represented that certain categories of evidence are unavailable, and because discovery of such policies will help Plaintiffs evaluate the Honda Defendants' document production, identify any documents that are missing, and focus and refine their future discovery requests.

### B. Proportionality

The Honda defendants conceded during the hearing on this motion that the production of the requested document retention policies would not be onerous or burdensome, and that the responsive documents would not be particularly voluminous, even though Plaintiffs have requested seventeen (17) years' worth of document retention policies for all of the Honda Defendants. Based on this representation, the undersigned finds that the document retention policies sought by the Plaintiffs are proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).[5]

### IV. CONCLUSION.

Case 1:19-md-02875-RMB-SAK   Document 311-37   Filed 12/05/19   Page 7 of 7 PageID: 4599

In re Takata Airbag Products Liability Litigation, Not Reported in Fed. Supp. (2017)

2017 WL 8812734

For all of the foregoing reasons, the undersigned recommends that the District Court should enter an Order **GRANTING** Plaintiffs' Motion to Compel Production of Honda's Document Retention Policies. More specifically, the undersigned recommends that the Honda Defendants should be required to produce all document retention policies and all documents related to document destruction or deletion, as described in Request Numbers 96 and 98 in the Plaintiffs' Second Request for Production. Additionally, the undersigned recommends that the Honda Defendants should be required to produce these documents within twenty (20) business days if the District Court chooses to affirm this recommendation.

**\*7** PURSUANT TO THE COURT'S ORDER OF APPOINTMENT OF SPECIAL MASTER [E.C.F. No. 453], OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION MUST BE FILED WITHIN 5 DAYS OF THE FILING OF THE REPORT, WITH A RESPONSE DUE BY OPPOSING COUNSEL WITHIN 5 DAYS OF THE FILING OF OBJECTIONS.

Respectfully submitted this day 5th day of July 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8812734

---

Footnotes

1   American Honda Motor Co., Inc., Honda of America Mfg., Inc., Honda Motor Co., Ltd., and Honda R&D Co. Ltd. will be collectively referred to as "the Honda Defendants" or "Honda."

2   During the hearing on this motion, it became evident that the parties did not agree on what had already been produced in discovery. The Honda Defendants thought they had produced document retention policies for the domestic Honda entities, but not the foreign Honda entities (Attach. 3. at 42-44), but Plaintiffs had the opposite understanding. Indeed, Plaintiffs believed they have received a few document retention policies for the foreign Honda entities, but none for the domestic entities. *Id.* at 34-36. Despite this confusion, both parties agreed that Honda had not provided document retention policies for *any* of the Honda Defendant entities for the entire 18-year period sought by Plaintiffs. *Id.* at 44-45.

3   The Honda Defendants also cited *Procaps S.A. v. Pantheon Inc.*, No. 12-24356, 2014 WL 11498060, at \*27 (S.D. Fla. Dec. 1, 2014) for the proposition that "discovery on discovery" is not permitted. Attach. 2 at 2. The undersigned does not find *Procaps* to be persuasive because it did not involve a request for document retention policies; instead, it involved a highly-intrusive request to perform forensic examinations of a litigation opponent's computers. Likewise, the Honda Defendants cite *In re Jemsek Clinic, P.A.,* No. 06-31766, 2013 WL 3994666, at \*9 (Bankr. W.D.N.C. Aug. 2, 2013), indicating that the *Jemsek* court rejected a motion to compel document retention policies as "improper non-merits-based discovery." *Id.* But it appears that the *Jemsek* court actually reached the opposite conclusion, holding that "[t]he Jemsek Defendants are entitled to explore document retention issues, but only as they relate to their remaining counterclaims, and only as to periods after a duty to retain documents arose." 2013 WL 3994666, at \*9. The court noted, however, that "the Jemsek Defendants seek much more than this," and therefore precluded them from exploring *other* issues with a Rule 30(b)(6) witness, such as document retention policies long before litigation was likely or inquiring about the defendants' general course of business after a litigation hold was issued. *Id.* The court concluded that these other issues were tantamount to "non-merits-based discovery."

4   The undersigned recognizes that the *Pinares* and *Pinilla* cases do not contain extensive discussion or analysis regarding the discoverability of document retention policies, but that may simply reflect that such discovery is "so deeply entrenched in practice." Fed. R. Civ. P. 26, advisory committee notes (2015).

5   The foregoing analysis of relevance and proportionality applies with equal force to the Plaintiffs' request for "all documents related to the destruction or deletion of any documents related to the Defective Airbags, the Relevant Recalls, the documents requested herein, or any other documents relevant to this litigation," as described in Request Number 98 in Plaintiffs' Second Request for Production.

---

**End of Document**                                                                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                        6