# Exhibit 37

2009 WL 2045197
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

Frances J. SMITH, on behalf of herself and all others similarly situated, Plaintiff,
v.
LIFE INVESTORS INSURANCE COMPANY OF AMERICA, Defendant.

No. 2:07–cv–681.
|
July 9, 2009.

West KeySummary

**1**  **Federal Civil Procedure**
    Waiver

**Privileged Communications and Confidentiality**
    Waiver of Privilege

An insurer waived any work-product or attorney-client privilege it may have had for documents inadvertently disclosed to a plaintiff when the insurer also provided the documents to state regulators. Therefore the insurer was not entitled to compel the plaintiff to return the documents. The documents represented a basic financial analysis prepared by a non-lawyer and was provided to the state insurance departments from Tennessee and Kentucky. Fed.Rules Civ.Proc.Rule 26(b)(5)(B), 28 U.S.C.A.

**Attorneys and Law Firms**

Ellen M. Doyle, Joel R. Hurt, Maureen Davidson-Welling, Stember Feinstein Doyle & Payne, LLC, Pittsburgh, PA, for Plaintiff.

Colin E. Wrabley, Perry A. Napolitano, Reed Smith, Pittsburgh, PA, Irma R. Solares, Jason P. Kairalla, Julianna Thomas McCabe, Jorden Burt LLP, Miami, FL, Markham R. Leventhal, Jorden Burt LLP, Washington, DC, for Defendant.

*MEMORANDUM ORDER*

TERRENCE F. McVERRY, District Judge.

*1 Pending before the Court are: PLAINTIFF'S MOTION TO RESOLVE A DISPUTED CLAIM OF PRIVILEGE PURSUANT TO FED. R. CIV. P. 26(b)(5) (B) (Document No. 128); PLAINTIFF'S MOTION TO STRIKE OR EXCLUDE THE DECLARATION OF GLENN ALAN MELNICK (Document No. 130); the NOTICE OF CLASS ACTION SETTLEMENT AND MOTION TO STAY CLASS RELATED PROCEEDINGS (Document No. 162) filed by Defendant; PLAINTIFF'S FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. CIV. P. 37 (Document No. 165); and PLAINTIFF'S MOTION TO ENLARGE THE DISCOVERY PERIOD (Document No. 188). The motions have been exhaustively briefed (Document Nos. 141, 152, 159, 160, 173, 177, 180, 187, 190, 198) and are ripe for disposition.[1]

This purported class action case has had a protracted and complicated procedural history, which will not be repeated in full. The case involves interpretation of the term "actual charges" in a supplemental cancer insurance policy. On June 25, 2009, Plaintiff notified the Court of her decision (and that of her two daughters) to opt out of a national class action proposed settlement that has been preliminarily approved by the Circuit Court of Pulaski County, Arkansas in *Runyan v. Transamerica Life Ins. Co.,* Case No. CV–09–2066–3 (the "Runyan Action"). Accordingly, there is no longer a compelling reason to withhold ruling on the pending discovery motions in this case as Plaintiff's individual claims, at a minimum, will go forward in this forum.

*A. Disputed Claim of Privilege*

This motion involves six pages of calculations that Plaintiff believes were created by Life Investors' actuary, Stephen Gwin, in late 2004 to analyze the financial impact of changing the company's treatment of "actual charges." In essence, Gwin concluded that by changing the manner in which the company treated "actual charges," Defendant would reduce benefit payments by 23.2%. Defendant contends that the documents are subject to the attorney-client privilege and/or attorney work product protection and were inadvertently produced.

Federal Rule of Civil Procedure 26(b)(5)(B) states:

> (B) *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Plaintiff contends that Defendant cannot meet its burden to establish a claim of privilege. Both parties agree that the documents at issue do not contain any indication on their face that they were prepared by an attorney, or for the purpose of assisting an attorney or might be privileged. Instead, Defendant asserts that the documents are privileged based on Gwin's deposition testimony that he prepared them at the request of outside litigation counsel.

 **\*2** Plaintiffs also contend that the documents contain calculations made for *business* reasons, i.e., to determine the financial impact of the revised treatment, rather than *legal* reasons. Finally, Plaintiff argues that even assuming that the documents were privileged, the privilege was waived due to Defendant's intentional production, its tardy assertion of the privilege, and its affirmative efforts to use similar calculations by Gwin. Defendant responds that it took reasonable steps to preserve the privilege and gave timely notice of the inadvertent production. In essence, the attorney supervising the privilege review did not know that another lawyer in her office had asked Gwin to prepare the documents at issue. Defendant further explains that it is not attempting to conceal the non-privileged facts underlying Gwin's analysis,

and indeed, that it permitted Gwin to be deposed on those facts.[2]

Plaintiff's reply brief points out that there is no evidence that the documents at issue were ever provided to the outside counsel who allegedly requested them. Moreover, Plaintiffs argue that any privilege/protection was waived because the record establishes that information from the documents was provided to state regulators and used for other business purposes. More generally, Plaintiff argues that the documents do not contain the type of "confidential communications" that fall within the privilege, but rather, are simply unprivileged facts.

The Court agrees with Plaintiff. The documents at issue are governed by the principles described in *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d Cir.1994) and *Philadelphia v. Westinghouse Electric Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962):

> While documents may be protected from disclosure in discovery because they contain confidential communications that are privileged, that protection may be inapplicable to facts incorporated in the communication. *Upjohn Co. v. United States,* 449 U.S. 383, 395–396, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981).

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'what did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney. *Id.* (quoting *City of Philadelphia, Pa. v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962)).

As the Court in *City of Philadelphia* further explained:

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?,' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

 **\*3** The documents at issue do not disclose any attorney-client communications. Rather, they represent a basic

financial analysis prepared by a non-lawyer. The documents were obtained from Gwin's file and gave no indication on their face that the attorney-client privilege might be implicated. That the facts contained in the documents may have been requested by a lawyer, or were conveyed to a lawyer, does not make the facts themselves privileged. While the conversations between Gwin and counsel would be privileged, Defendant has not established to the Court's satisfaction that the documents now at issue are within the attorney client privilege.[3]

Similarly, the work product protection does not bar Plaintiff from using the documents. In *In re Linerboard Antitrust Litigation,* 237 F.R.D. 373, 381 (E.D.Pa.2006), the Court summarized the applicable standard as follows:

> The work product doctrine, codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides that items prepared in anticipation of litigation are generally protected from discovery by an opposing party. *See* Fed.R.Civ.P. 26(b)(3). A document is considered to have been prepared in anticipation of litigation if "in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1258 (3d Cir.1993) (*citing United States v. Rockwell Int'l,* 897 F.2d 1255, 1266 (3d Cir.1990)). Generally, documents created as part of an internal investigation, such as the one at issue in this case, are considered to be made in anticipation of litigation for the purposes of the work product doctrine. *See Upjohn,* 449 U.S. at 398, 101 S.Ct. 677, 66 L.Ed.2d 584.

"Fact" work product is discoverable upon a showing of substantial need, while "core or opinion" work product (which consists of the mental impressions, conclusions, opinions and legal theories of an attorney) is afforded almost absolute protection. *Id.* It is clear that the documents at issue would represent, at most, "fact work product" as opposed to "core or opinion work product" because no impressions, opinions or thoughts of an attorney are revealed. Rather, the documents reflect only the financial calculations of Mr. Gwin. Thus, the work product protection can be overcome by a showing by Plaintiff of substantial need for the documents. *Id.* The Court concludes that Plaintiff has demonstrated a substantial need for the documents at issue. Moreover, the record in this case reflects that the information has not been treated as protected because Defendant disclosed the results of Gwin's analysis to the insurance departments from Tennessee and Kentucky. Gwin Deposition at 157–158. In sum, Plaintiff need not return the documents..

In accordance with the foregoing, PLAINTIFF'S MOTION TO RESOLVE A DISPUTED CLAIM OF PRIVILEGE PURSUANT TO FED. R. CIV. P. 26(b)(5) (B) (Document No. 128) is **GRANTED.**

*B. Melnick Declaration*

**\*4** In support of its opposition to class certification, Defendant submitted a declaration from Glenn Alan Melnick, Ph.D., a health economist. The Melnick Declaration offers opinions regarding the historical evolution of health insurance billing practices and the meaning of the term "actual charges." In particular, Dr. Melnick opines that the term "actual charges" does not have a "special universally accepted meaning different from its ordinary meaning" and then opines that "actual charges" means "real charges." Plaintiff contends that the Declaration should be stricken in its entirety as to class certification because (1) the opinion does not address the requirements of class certification; (2) general health insurance industry billing and payment practices are not relevant; and (3) Dr. Melnick possesses no specialized knowledge regarding the ordinary meaning of the term "actual charges."

Defendant argues that Dr. Melnick is a nationally recognized expert, and that his Declaration directly addresses the "adequacy" requirement of Rule 23. Specifically, Defendant contends that Plaintiff is not an adequate class representative because she has a conflict with the economic interests of other putative class members. Defendant also points out that the Court in the *Pipes* case considered a similar declaration from Dr. Melnick in ruling on class certification.

The Court will consider the Melnick Declaration. In *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 325 (3d Cir.2009), the Court of Appeals explained that courts must conduct a rigorous analysis of all relevant evidence, including relevant expert testimony, in determining whether each of the prerequisites to class certification have been met. Plaintiff's effort to distinguish this case is unpersuasive as Plaintiff concedes that the Melnick Declaration addresses Rule 23(a)(4).[4] Many of Plaintiff's remaining arguments go to the weight, as opposed to the admissibility, of Melnick's opinions. The Court notes Plaintiff's arguments regarding Dr. Melnick's proposed interpretation of "actual charges." However, the

Court will consider the Declaration in its entirety and ascribe whatever weight it deserves. *See Id.* at 324.

In accordance with the foregoing, PLAINTIFF'S MOTION TO STRIKE OR EXCLUDE THE DECLARATION OF GLENN ALAN MELNICK (Document No. 130) is **DENIED.**

*C. Motion to Stay*

Contemporaneously with their Notice of the tentative settlement in the *Runyan* Action, Defendant filed a motion to stay this case pending the outcome in *Runyan.* Plaintiff has opted out of the *Runyan* Action. Therefore, the Court is not inclined to further delay this case. Accordingly, the NOTICE OF CLASS ACTION SETTLEMENT AND MOTION TO STAY CLASS RELATED PROCEEDINGS (Document No. 162) is **DENIED.**

*D. Motion to Compel*

This motion of Plaintiff pertains to the following documents: (1) meeting minutes and related documents reviewed by Defendant's Board of Directors in connection with the change in treatment of "actual charges" benefits; (2) Gwin's letters regarding estimates of savings to the company associated with the change; (3) the "Wakely Report" and other actuarial documents; (4) documents exchanged between Defendant and third parties (such as state insurance regulators); and (5) the list of search terms used to identify responsive documents. These issues will be addressed seriatim. At this stage of the case, the requested information need not be admissible at trial so long as the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

*5 Defendant makes several general objections, which will be addressed as an initial matter. Defendant contends that the taking of depositions has rendered Plaintiff's document requests moot. The Court disagrees—Plaintiff is entitled to use both discovery tools in tandem. The Court also disagrees with Defendant's attempt to limit its responses to Pennsylvania. Defendant's application of the term "actual charges" in other policies is relevant to the meaning of the term in this case. Moreover, as Plaintiff accurately asserts, the changed treatment of "actual charges" was part of a uniform, corporate policy that was not limited to Pennsylvania.

Defendant argues that the temporal scope of Plaintiff's requests is overbroad and represents that the relevant time period runs from early 2004, when the company began investigating rate increases and claims payment procedures that consummated in the July 22, 2005 decision to change its treatment of "actual charges." The Court notes that the Gwin analyses were performed during 2004. The Court agrees in part with Defendant's time limitation. Generally, Defendant's duty will be limited to documents prepared in 2004 or later. However, when Plaintiff presents a specific rationale for a broader time period, the scope must be expanded. For example, documents which reflect Defendant's treatment of the term "actual charges" over time must be produced from 1995 on. Similarly, all non-privileged documents reviewed by the task force which led to the revised treatment must be produced, regardless of the date created.

The Court turns now to the specific issues raised by Plaintiff.

1. Board of Directors Meeting Minutes

Plaintiff claims that Defendant has refused to produce meeting minutes and related documents regarding the Board's consideration of the changed treatment of "actual charges" on the basis of relevance. Plaintiff regards this objection as frivolous and points out that the change was made by a high-level corporate executive task force and resulted in substantial savings to the company. Defense counsel represents that no responsive board meeting minutes exist because "the Board was not involved in the decision."

At bottom, the discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents. *See* Fed.R.Civ.P. 26(g) (effect of signature) and Advisory Commentary to 1983 Amendment ("spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues"). The Commentary to the 1983 Amendment to Subdivision (g) explains: "If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse." The Court recognizes and appreciates Plaintiff's suspicions that additional documents should exist. However, the Court has no independent ability to determine whether or not Defendant's response was comprehensive and Defendant cannot be required to "prove a negative" by demonstrating that non-existent documents do not exist. The Court accepts defense counsel's representation that a comprehensive search was conducted, that all responsive documents have been produced and that "the Board was not involved in the decision." To the extent that Plaintiff is able to develop

evidence that this representation is incorrect, the Court will entertain an appropriate motion at that time.

 *6  Accordingly, this aspect of the motion is **DENIED AS MOOT.**

   2. Gwin Actuarial Analyses

In addition to the documents addressed in Section A, supra, Defendant has refused to produce Gwin's communications with state insurance departments. Plaintiff contends that consideration of the financial benefits that would accrue from the changed treatment is relevant to her bad faith claim. Plaintiff argues that the burden of production is slight and requests that the documents be produced in the "manipulable electronic format" in which they were kept in the usual course of business. Defendant does not articulate any new arguments, but simply reiterates the claims of privilege/protection addressed above. Accordingly, this aspect of the motion to compel is **GRANTED.**

   3. Wakely Report

Plaintiff seeks to obtain computations, cost analyses and other actuarial documents pertaining to "actual charges" policies dating back to 1995, when Life Investors first began selling the LPC0100 policy. Defendant is willing to produce such documents from the past four years. Because the Wakely Report was created prior to 2003 and Gwin's actuarial work was completed during 2004, Plaintiff would not agree to this time restriction. Plaintiff also argues that Defendant's claim of undue burden is meritless because Gwin testified that the Wakely Report is in a binder in his office.

Plaintiff contends that the Wakely Report was commissioned by Defendant to examine high loss rates on some "actual charges" cancer policies in the late 1990s. Defendant explains that the Wakely Report is a "cancer claim cost study" which was prepared by an outside consultant. Defense counsel avers that the Wakely Report does not examine Defendant's understanding or payment of "actual charges" and is not responsive to Plaintiff's document requests. As explained above, the Court will take defense counsel at their word. If Plaintiff develops evidence that this representation is erroneous, the Court will entertain an appropriate motion for sanctions. Accordingly, the motion is **DENIED** as to the Wakely Report.

The motion will be **GRANTED** as to any other computations, cost analyses or other actuarial documents pertaining to actual charges that were created in 2004 or later. Indeed, other than this time limitation, Defendant has apparently not opposed production of these documents.

   4. Third–Party Correspondence

Plaintiff seeks production of documents received from or provided to third parties, such as state insurance regulators and trade associations, regarding the meaning of "actual charges." Defendant contends that this request is overbroad and agrees to produce only those documents which relate to Pennsylvania policies. Plaintiff argues that evidence of how the term "actual charges" has been interpreted in other policies is relevant to demonstrate Defendant's course of performance and to show bad faith. Plaintiff points out that Life Investors' change in treatment of "actual charges" was not limited to Pennsylvania, but was applied uniformly to all such policies issued by three sister insurance companies.

 *7  The Court agrees with Plaintiff. Defendant engaged in a uniform effort to change its treatment of "actual charges" and its effort to impose a geographic limitation at this juncture is not justifed. As noted above, the time frame will be limited to documents created in 2004 and later. However, the term "third parties" should not be construed to include policyholders.

Accordingly, this aspect of the motion to compel is **GRANTED.**

   5. Lobbying Activities

There is a similar dispute regarding Plaintiff's request for documents concerning lobbying activities regarding "actual charges" laws that were enacted in four states. Defendant argues that such documents are irrelevant and that a search would be unduly burdensome.

The Court agrees with Defendant. There is a meaningful distinction between lobbying activities in support of legislation, on one hand, and interpretation of existing policy language, on the other hand. This case involves solely the latter activity. Whatever tangential relevance lobbying documents might have is outweighed by the burden of searching for and producing such documents. Accordingly, this aspect of the motion to compel is **DENIED.**

   6. Computerized Search Terms

Plaintiff sought to confer with Defendant, in advance, regarding the terms to be used in its electronic search

for responsive documents. Defendant performed the search without Plaintiff's input and has refused to disclose more than a "sample" of the actual search terms, claiming attorney work product. Plaintiff asks the Court to compel disclosure of all the search terms so that it can fully evaluate the Defendant's methodology.

In *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 250 F.R.D. 251, 262 (D.Md.2008), the Court thoroughly discussed the difficulties of designing an effective search methodology and concluded that the party performing the search had a duty to demonstrate that its methodology was reasonable. The Court summarized:

> In this case, the Defendants have failed to demonstrate that the keyword search they performed on the text-searchable ESI was reasonable. Defendants neither identified the keywords selected nor the qualifications of the persons who selected them to design a proper search; they failed to demonstrate that there was quality-assurance testing; and when their production was challenged by the Plaintiff, they failed to carry their burden of explaining what they had done and why it was sufficient.

In this case, Plaintiff has similarly challenged the adequacy of Defendant's search. Defendant must do more than summarily list the number of pages it has produced and the time and effort it has invested. *See Id.* Rather, Defendant has a burden to demonstrate that its search for documents was reasonable. A thorough explanation of the search terms and procedures used would be a large step in that direction. Accordingly, this aspect of the motion is **GRANTED.**

In accordance with the foregoing, PLAINTIFF'S FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. CIV. P. 37 (Document No. 165) is **GRANTED IN PART AND DENIED IN PART** and documents which are to be produced shall be provided to Plaintiff by Defendant on or before July 20, 2009.

6. Extension of Discovery

**\*8** Plaintiff seeks to extend the discovery period by 45 days, to September 10, 2009. Plaintiff points out that she has invested substantial time to address issues related to the proposed settlement in the *Runyan* Action, that Defendant did not produce its final batch of documents and privilege log until very recently, and that she needs time to review these documents and take any needed depositions. Plaintiff also notes that the parties are attempting to amicably resolve other discovery related disputes. Defendant counters that the discovery deadline has already been extended several times and contends that Plaintiff has already taken all of the discovery she needs.

The Court finds that the short extension requested by Plaintiff is entirely reasonable, in light of the facts and circumstances of this case. Given the prior delays in this case, Defendant will not be prejudiced by this additional discrete extension of time.

In accordance with the foregoing, PLAINTIFF'S MOTION TO ENLARGE THE DISCOVERY PERIOD (Document No. 188) is **GRANTED** and discovery is extended to September 10, 2009.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2045197

Footnotes

1   Also outstanding are a motion to certify a class, an amended motion to certify a class and Plaintiff's motion for partial summary judgment. These motions will be addressed separately.
2   Defendant certainly did not permit a full exploration of this topic. A review of the cited portion of the deposition reveals that numerous objections and instructions not to answer were interposed by defense counsel.
3   The Court need not reach Plaintiff's argument that the work performed by Gwin was prepared to facilitate business advice rather than legal advice.

| 4 | Plaintiff contends that only one paragraph of the Declaration addresses adequacy. The Court disagrees, as many of the other paragraphs provide supporting background explanation as to why there is a claimed conflict between Plaintiff and other class members who desire to prevent future premium increases. |
|---|---|

---

**End of Document**   © 2019 Thomson Reuters. No claim to original U.S. Government Works.