# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN<br>PRODUCTS LIABILITY LITIGATION<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Judge<br><br>Honorable Joel Schneider,<br>Magistrate Judge |

**PLAINTIFFS' FIRST AMENDED SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL FINISHED DOSE DISTRIBUTORS, WHOLESALERS, AND ~~CHAIN~~ PHARMACY DEFENDANTS**

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Local Civil Rule 34.1, Plaintiffs propound the following discovery requests upon each defendant. To the extent a request does not apply to a particular defendant in whole or in part it will be sufficient to indicate "Not Applicable" as to that request, or inapplicable portion thereof:

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Corporate Organization | 6 |
| II. | Relevant Custodians and Entities | 6 |
| III. | Policies and Procedures | 6 |
| IV. | Agreements | 7 |
| V. | Intra-Defendant Communications | 7 |
| VI. | Litigation and Document Preservation | 8 |
| VII. | Distribution and Facilities | 9 |
| VIII. | Compliance with the Drug Supply Chain Security Act | 9 |
| IX. | Regulatory Correspondence and Documents | 9 |
| X. | Complaints and Recalls | 9 |
| XI. | Warranties and Statements | 10 |
| XII. | Sale and Distribution | 11 |
| XIII. | Identification of Purchasers | 11 |
| XIV. | Sales and Pricing | 11 |
| XV. | Available Data Sources | 15 |

**Formatted:** Font: Times New Roman

### DEFINITIONS:

**"Active Pharmaceutical Ingredient" ("API")** ~~means~~ is defined as any substance ~~or mixture of substances used in the manufacture of~~ that is intended for incorporation into a finished drug product and ~~that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances~~ is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure ~~and~~ or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance." 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"Manufacturer Defendants"** includes any entity that manufactures valsartan API, or valsartan in a finished dosage form ~~that~~, and/or is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "Manufacturer Defendant" also includes entities who hold ANDAs.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**"Drug Supply Security Chain Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Documents"** includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, ~~2010~~2012 to the present.

**"Repackager and Relabeler Defendants"**- refers to ANY and ALL entities listed as "Repackager and Relabeler Defendants" in Plaintiffs' June 17, 2019 Master Complaint (Dkt. No. 121), including ANY person or entity acting on any of their behalf, including any agents, employees, predecessor entities, or other representatives. Each request refers to documents in the custody, control, and possession of the Repackager and Relabeler Defendants or known to the Repackager and Relabeler Defendants, as well as in the custody, control and possession of or known to the Repackager and Relabeler Defendants' Affiliates, subsidiaries, counsel, representatives, agents, servants, investigators, and consultants unless otherwise privileged, their counsel, employees, representatives, agents, servants, investigators and consultants, and/or third-parties who possess requested documents owned or controlled by the Repackager and Relabeler Defendants.

**"Retail Pharmacy Defendants"** refers to any and all entities listed as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Complaint (Dkt. No. 121), including ANY person or entity acting on any of their behalf including any agents, employees, predecessor entities, or other representatives. Each request refers to documents in the custody, control, and possession of the Retail Pharmacy Defendants or known to the Retail Pharmacy Defendants, as well as in the custody, control and possession of or known to the Retail Pharmacy Defendants' affiliates, subsidiaries, counsel, representatives, agents, servants, investigators, and consultants unless otherwise privileged, their counsel, employees, representatives, agents, servants, investigators and consultants, and/or third-parties who possess requested documents owned or controlled by the Retail Pharmacy Defendants.

**"Regulatory and Regulatory Authority"** refers to United States and foreign regulatory agencies.

**"TPP"** refers to Third Party Payors, including health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plants, third party payers, and any other health benefit provider in the United States of America and its territories.

**"Valsartan" or "VCDs"** means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.

**"Vertically Integrated Wholesaler"** refers to entities such as Defendant Camber Pharmaceutical and Defendant Solco Health, who distribute finished dose products for a Manufacturer Defendant to Wholesaler Defendants and Retail Pharmacy Defendants.

**"Wholesaler Defendants"** refers to and ALL entities listed as "'John Doe' Wholesaler Defendants" in Plaintiffs' June 17, 2019 Master Complaint (Dkt. No. 121), including ANY person or entity acting on any of their behalf including any agents, employees, predecessor entities, or other representatives. Each request refers to documents in the custody, control, and possession of the WHOLESALER Defendants or known to the WHOLESALER Defendants, as well as in the

custody, control and possession of or known to the WHOLESALER Defendants' affiliates, subsidiaries, counsel, representatives, agents, servants, investigators, and consultants unless otherwise privileged, their counsel, employees, representatives, agents, servants, investigators and consultants, and/or third-parties who possess requested documents owned or controlled by the WHOLESALER Defendants.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**DOCUMENTS TO BE PRODUCED**

I. **CORPORATE ORGANIZATION**

1. Produce organizational charts setting forth the corporate organization for each named defendant, from January 2010 to the present as follows:
    a. Sales department;
    b. Marketing department;
    c. Distribution department;
    d. Contracting department;
    e. Supply Chain department;
    f. Sourcing department;
    g. Regulatory department;
    h. Quality assurance department;
    i. Recall department;
    j. Department(s) responsible for establishing or maintaining relationships involving valsartan, with any other defendant named in this MDL.
2. From ~~2010~~January 1, 2012 to the present, produce ~~documents sufficient to demonstrate~~documentation setting forth:
    a. All corporate officers;
    b. All members of the Board of Directors;
    c. All persons or entities which own or owned 5% or more of defendant's common stock; and
3. To the extent you conduct business relating to valsartan with any other defendant in the above-captioned MDL, produce documents ~~sufficient to demonstrate~~demonstrating the nature, extent, and length of this business relationship.

II. **RELEVANT CUSTODIANS AND ENTITIES**

4. Produce documents sufficient to identify the corporate employees or third parties responsible for or involved in the (1) distribution, (2) packaging, (3) sale, (4) marketing, ~~and (5)~~(5) quality assurance, (6) testing, (7) communications with private individuals or entities ~~(6) recall~~regarding testing, purity, contamination, bioequivalence, and pricing, (8) regulatory compliance and communications, and (9) recalls, and any related software and logistics, with regard to valsartan~~, and/or the ingredients thereof~~.
5. Produce documents sufficient to identify the corporate employees or third parties (on your behalf) responsible for (1) ~~researching sellers of valsartan, (2)~~ negotiating contracts with entities supplying valsartan to you~~,~~ or obtaining valsartan from you, (2) evaluating and ensuring bioequivalence, (3) testing or evaluating testing of valsartan with regard to purity, contamination, and bioequivalence, (4) purchasing or selling valsartan, and (5) logistics.

III. **POLICIES AND PROCEDURES**

6. Produce ~~all documents setting forth all draft and~~the final versions of policies, procedures, standard operating procedures, or protocols ~~for or relevant~~with regard to ~~the~~: (1) regulatory compliance and communications ~~with regulatory agencies~~, (2) distribution, (3) packaging,

*Formatted: Font: Times New Roman*

(4) ~~evaluation~~pricing, (5) sale, (6) marketing, (7) ~~recall~~recalls, (8) sourcing~~,~~ including confirmation of purity and ~~(9)~~bioequivalence, (9) quality assurance, (10) testing or evaluating testing data (including purity, contamination, and bioequivalence), and (11) communications with private individuals or entities with regard to testing, purity, contamination, bioequivalence, and pricing, with regard to valsartan. In addition, provide all indexes or lists of the requested documents.

IV. **AGREEMENTS**

*For the following requests, the relevant time period should begin on the date you first began the process of purchasing any valsartan for sale in US Markets.*

7. Produce all indemnity agreements that the answering defendant is a party to with any other ~~defendant in this litigation~~entity with regard to valsartan.
8. Produce all ~~formal and informal~~ agreements, contracts, or licenses that the answering defendant is a party to, with regard to (1) distribution, (2) packaging or re-packaging, (3) sale or pricing, (4) marketing, (5) testing, purity, bioequivalence, or contamination, (5) communications with private individuals or entities~~,~~ with regard to testing, purity, contamination, bioequivalence, recalls, or pricing, (6) regulatory compliance and ~~(6) communications, and (7)~~ procurement, with regard to valsartan ~~and/or its ingredients~~, with the following entities
    a. ~~Manufacturer~~Any Defendants;
    b. ~~Wholesaler Defendants;~~
    c. ~~Retail Pharmacy Defendants;~~
    d. ~~Vertically Integrated Distributor Defendants;~~
    e. ~~Repackager and/or Relabeler Defendants;~~
    ~~f.~~b. ~~other wholesalers~~Wholesalers and/or direct ~~purchaser~~purchasers of drugs;
    ~~g.~~c. TPPs;
    ~~h.~~d. Chain Pharmacies; and
    e. Group Purchasing Organizations operating on behalf of individual pharmacies~~.~~
    ~~i.~~f. Third parties, including logistics providers.

V. **INTRA-DEFENDANT COMMUNICATIONS**

9. All communications between You and any other defendant(s) related to (1) manufacture, (2) purity, bioequivalence, or contamination, (3) testing~~, (3)~~ for purity ~~and~~, bioequivalence, or contamination, (4) quality assurance, (5) risk assessment, (6) medical and clinical assessments in connection with contamination, (7) ~~safety, (8)~~ communications with regulatory agencies, ~~(9) formulation, (10) production, (11) distribution, (12) packaging, (13) evaluation, (14) sale, (15) marketing, and (16) communications with private individuals or entities~~and (8) recalls, with regard to valsartan ~~and/or the ingredients thereof~~.
10. Produce all documents provided to you by any finished dose or API manufacturer, regardless of whether you ultimately purchased valsartan from those entities, containing any statements about the API manufacturer or finished dose manufacturer's manufacturing practices, quality assurance, quality practices, purity, contamination, bioequivalence, and/or recalls, of their ~~products, and/or safety of their~~valsartan products.

*Formatted: Font: Times New Roman*

**VI.   LITIGATION AND DOCUMENT PRESERVATION**

11. Produce all document retention or destruction policies in effect from January 1, 2010 to the present.
12. ~~Produce documents sufficient to show the name, case caption, attorney, and/or status of any lawsuit filed against you relating to valsartan contamination.~~
13. ~~Produce all documents upon which Defendant relies to support each and every affirmative defense asserted in the Answer or which you may assert.~~

### VII. DISTRIBUTION AND FACILITIES

14.12.   Produce ~~documents sufficient to show~~ documentation identifying the answering defendant's distribution centers ~~serving pharmacies, manufacturers, distributors and/~~ that have distributed or ~~other customers~~ received valsartan, in all 50 states~~.~~, including the documentation of the dates, quantities, and sources of valsartan at issue.

15.13.   Produce ~~documents sufficient to show~~ documentation identifying all warehouse facilities which answering defendant used to house ~~VCDs~~ valsartan in the United States, and the dates, quantities, and sources of valsartan at issue.

### VIII. COMPLIANCE WITH THE DRUG SUPPLY CHAIN SECURITY ACT

16.14.   Produce ~~documents sufficient to demonstrate~~ complete documentation of your ~~compliance~~ efforts to comply with the Drug Supply Chain Security Act and regulations promulgated thereunder, ~~including~~ with respect to ~~the recalls of VCDs.~~ Valsartan.

17.15.   Produce all documents identifying lot-level product tracing or verification, or other product-tracing or verification information, transaction information, history and statements, regarding ~~VCDs~~ Valsartan from January 1, 2012, as mandated by the Drug Supply Chain Security Act.

### IX. REGULATORY CORRESPONDENCE AND DOCUMENTS

18.16.   Produce all regulatory documentation and communications with regard to purity, contamination, bioequivalence, or recalls of valsartan.

19.17.   Produce all Establishment Inspection Reports and related documentation (including photographs or video) concerning your facilities or the facilities of any other defendant relating to valsartan ~~such as but not limited to the packaging, distribution, or sale of valsartan.~~.

20.18.   Produce all documents relating, referring to or embodying all inspection reports (including 483s, detention reports, and warning letters) or consent decrees ~~which pertain in any way~~, with regard to valsartan contamination, or any facility in which contaminated valsartan was distributed or otherwise stored.

### X. COMPLAINTS AND RECALLS

21.19.   Produce all documents and communications with regard to any consideration of or implementation of a recall due to contamination of valsartan.

22.20.   Produce all ~~draft~~ recall notices with regard to contamination of ~~VCDs~~ Valsartan sent by you to ~~your customers~~ any person or entity, or received by you.

~~23.   Produce all final recall notices with regard to contamination of VCDs sent to your customers.~~

24. Produce all documents and communications ~~relating to or directly with any customer or consumer~~ received by you or sent by you relating to the recall ~~(or non-recall) of VCDs due to contamination.~~

*Formatted: Font: Times New Roman*

25.21.    Produce all documents and communications ~~relating to communications directly with physicians relating to the recall (or non recall) of VCDs~~of Valsartan due to contamination.

26.22.    Produce all documents and communications with regard to any complaint or concern raised by any person or entity relating to the quality ~~or~~, purity, bioequivalence or contamination of valsartan.

27.23.    Produce all documents or communications concerning any ~~actual or potential~~ import or export alerts relating to ~~VCDs~~Valsartan contamination, that you received or otherwise obtained.

28.24.    Produce ~~all documents and communications concerning~~complete documentation of any refunds that you paid to purchasers of ~~VCDs~~Valsartan in the United States from January 1, ~~2010~~2012 to the present, including but not limited to consumers, retail pharmacies, direct purchasers, wholesale distributors, and/or TPPs.

29.25.    Produce ~~all documents and communications regarding recall of valsartan, provided to consumers, and TPPs, including~~ any lists ~~sufficient to show~~indicating all persons or entities who received communications from you notifying them of the ~~recall, the contents of all communications contained in the letters notifying persons of the recall, documentation tracking all correspondence and communications related to the recall, all drafts of letters~~contamination or ~~other communications created to notify consumers of the recall.~~recall of valsartan. .

30.26.    Produce all documents received by you from any Manufacturer Defendant regarding the contamination or recall of ~~VCDs~~Valsartan.

31.27.    Produce documents ~~sufficient to identify~~identifying all lot, batch or NDC code of every potentially contaminated and/or recalled VCD you currently still have in your possession.

32.28.    Produce documents ~~to sufficient to identify all~~identifying the lot, batch or NDC code of every recalled VCD you returned to ~~either~~ a Manufacturer Defendant ~~or~~, Vertically Integrated Distributor Defendant, or other entity, and the identify, quantity, and date of the return.

33.29.    Produce documents ~~sufficient to identify~~identifying all lot, batch, or NDC ~~code~~codes of every potentially contaminated or recalled VCD you destroyed, and the date and details of such ~~a~~ destruction.

XI.    **WARRANTIES AND STATEMENTS**

34.30.    All advertisements, and sales and marketing material ~~for~~providing information regarding purity, bioequivalence, contamination, or recalls of any VCDs utilized from January 1, 2012 to the present, and charts setting forth the approval date, in use dates, and medium (i.e. website, sales document, marketing brochure).

35.31.    Produce final and draft versions of all documents provided to consumers upon purchase of valsartan, ~~(e.g.,~~providing information regarding purity, bioequivalence, contamination, or recalls (e.g., package inserts, patient leaflets, patient brochures, and other similar documents~~), including policies or procedures to ensure that such documents are provided to consumers at the point of sale.~~).

36.32.   Produce ~~all documents reflecting~~documentation of any public statements made by you regarding valsartan quality, purity, contamination, safety, bioequivalence, or recalls, including but not limited to drafts and final versions ~~of annual reports, or press releases~~.

## XII.   SALE AND DISTRIBUTION

37.33.   Produce ~~complete~~ documentation setting forth and/or demonstrating the complete supply and distribution chain for ~~VCDs~~Valsartan purchased, sold, or distributed by you, from receipt to final sale to the consumer.

38.34.   Produce ~~all documents relating to~~documentation demonstrating the ~~sale~~manufacturing sources, and ~~distribution of VCDs that reflect~~ NDC Codes, batch ~~number~~numbers, and lot ~~number~~numbers, of all Valsartan sold or distributed by defendant.

39.35.   Produce documents ~~sufficient to show~~demonstrating all sales of VCDs to ~~other wholesalers, distributors, retailers, and consumers,~~or by you including the total net sales, total number of pills and/or units sold, unit price, unit cost, profit margin, and market share, by state or territory.

40.36.   Produce all documentation relating to the due diligence performed ~~(or meant to be performed)~~ in selecting ~~generic company~~the source(s) from which you purchased valsartan, and in particular evaluation of purity, contamination, and bioequivalence, including but not limited to policies and procedures.

41.37.   Produce all documents and communications from any Manufacturer Defendant or Vertically Integrated Distributor Defendant with regard to the manufacturing of their generic products, including location of facility, source of API, ~~and other supply chain representations~~purity, contamination, and bioequivalence information.

42.38.   Produce all documents sufficient to show the extent to which any contracts to purchase or sell VCDs to a particular entity were ever exclusive in that they prohibited the other contracting party from purchasing or selling valsartan from or to another competitor.

## XIII.   IDENTIFICATION OF PURCHASERS

43.39.   Produce ~~documents sufficient to identify~~documentation of all persons and entities (including consumers and TPP entities) who purchased, reimbursed, or paid or otherwise compensated you for valsartan you manufactured, sold or distributed in the United States. If available, produce documents sufficient to show these individuals' or entities' names, last known mailing addresses and email addresses, last known telephone numbers, date(s) of purchase, NDC Code(s), Batch Number(s), and Lot Numbers.

44.40.   Produce all documents and communications between or among you and any named plaintiff, including consumers and/or TPP entities, including but not limited to MSP Recovery Services (including its assignors, Summacare, Emblem, and Connecticare) and Maine Automobile Dealers Association.

## XIV.   SALES AND PRICING

45.41. Produce ~~all documents relating to~~documentation setting forth each valsartan ~~sales~~sale you made in the United States to any purchaser (including, but not limited to, other wholesalers, distributors, retailers, and retail consumers), including documents that reflect total gross sales, total net sales, total number of units sold, unit price (gross and net), unit cost, cost of goods sold, profit margin, NDC, batch number, and lot number, on an annual basis or however that data is maintained, by~~,~~ defendant, state, territory or the District of Columbia.

46.42. Produce all documents and communications relating to negotiations over price and terms of sale or distribution between the answering defendant and any Manufacturer Defendant or other re-seller of valsartan, such as but not limited to Vertically Integrated Distributor Defendant, and Repackager and/or Relabeler Defendants.

47.43. Produce all documents and communications relating to negotiations over price and terms of sale or distribution between the Vertically Integrated Distributor Defendants and wholesalers, repackagers and/or ~~relablers~~relabelers, and chain pharmacies, including, but not limited to, Wholesaler Defendants, Chain Pharmacy Defendants, and Repackager and/or ~~Relabler~~Relabeler Defendants.

48.44. Produce all documents and communications documenting or relating to any agreements or arrangements between you and any TPP entity or other purchaser or payor (or any person acting on their behalf ~~of a TPP entity~~) that ~~did, could, or may affect~~impacted the quantity or price of valsartan purchased (including e.g., rebate agreements, volume rebates, and the like etc.).

~~49. Produce all documents relating to any arrangements between you and any other person or entity that did, could, or may affect the quantity or price of valsartan purchased, including but not limited to rebate agreements.~~

50.45. Produce all requests for proposal ("RFPs") received by the answering defendant from any Manufacturer Defendant and/or Vertically Integrated Distributor Defendants relating to VCDs.

51.46. Produce all documents and communications relating to any RFPs sent by the answering defendant to any wholesalers, chain pharmacies~~and~~, repackagers and/or relabelers that relate to VCDs.

52.47. Produce documents sufficient to show reductions of price as a result of a Manufacturer Defendant's failure to supply product to answering defendant.

53.48. Produce all portfolio management programs offered to answering defendant by any Manufacturer Defendant and/or Vertically Integrated Distributor Defendant.

54.49. Produce all portfolio management programs offered by any answering defendant to wholesalers, chain pharmacies, pharmacy group purchasing organizations, and repackagers and/or relabelers.

55.50. Produce all multisource agreements made between answering defendant and any Manufacturer Defendant for their VCDs.

56.51. Produce ~~documents sufficient to show~~documentation of all product offers made to you by any Manufacturer Defendants regarding VCDs, including, but not limited to, price change offers.

57.52. Produce documents sufficient to show all sales made to Pharmacy Group Purchasing Organizations.

58.53. Produce all profit split agreements offered to you by any Manufacturer Defendant regarding their generic drug products.

**Formatted:** Font: Times New Roman

59.54. Produce all price protection contracts between answering defendant and any Manufacturer Defendant or other Wholesaler Defendant regarding the price of VCDs.

60.55. For each month from January 1, ~~2010~~2012 to the present, produce all documents relating to your actual and projected valsartan sales and the pricing, costs, and revenues therefrom, including:
a. List price;
b. Average marginal price;
c. Average wholesale price;
d. Wholesale acquisition cost;
e. Direct price;
f. Average discount off of wholesale price or wholesale acquisition cost;
g. Price under Medicare program;
h. Price under Medicaid program;
i. Maximum allowable price;
j. Average manufacturing price (AMP) as defined by, and reported to, the Centers for Medicare and Medicaid Services;
k. Best price, as defined by, and reported to, the Centers for Medicare and Medicaid Services;
l. Net revenue;
m. Gross sales;
n. Net sales;
~~o. Units;~~
~~p.~~o. Gross shipments;
~~q. All measures of margin, income, earnings, and profits;~~
~~r.~~p. Unit of volumes sold;
~~s.~~q. Unit of volumes sold net of returns;
~~t.~~r. Total product contribution;
~~u.~~s. All costs and expenses attributable to the product;
~~v.~~t. Sales and distribution cost;
~~w.~~u. Cost of goods sold;
~~x.~~v. Marketing, advertising, promotional, and sales expenses;
~~y.~~w. Depreciable and capital improvements;
~~z. Regulatory compliance;~~
~~aa.~~x. Short-run average variable costs;
~~bb.~~y. Long-run average variable costs;
~~cc.~~z. Fixed costs;
~~dd.~~aa. Materials cost;
~~ee.~~bb. Labor cost;
~~ff.~~cc. Marginal cost;
~~gg.~~dd. Rebates, discounts, vouchers, or other product promotions, returns, or charge-backs; and
~~hh.~~ee. Coupons or co-pay cards.

61.56. Produce ~~all documents and communications sufficient to identify~~documentation identifying every entity that purchased, reimbursed, or compensated you for VCDs from you from January 1, ~~2010~~2012 to the present.

62.57. Produce all electronic data in tab-delimited, comma-delimited, or semicolon-delimited ASCII flat text or similar electronic format from January 1, 20102012 to the present sufficient to identify all sales of valsartan to purchasers in transaction-by-transaction format, as follows:

   a. All direct sales/invoice transactions (as well as any discounts or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount, (ii) source of the transaction price, (iii) number of units sold, (iv) number of units returned or otherwise affected by the transaction, (v) unit of measure, (vi) date of transaction, (vii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (viii) NDC, (ix) UPC, (x) SKU, (xi) product description, (xii) product form, (xiii) strength, (xiv) package size in extended units per package, (xv) customer name, (xvi) customer number, (xvii) customer address, (xviii) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to and ship-to customer), and (xix) the customer's parent company (if the data identifies a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

   b. All data concerning chargebacks, rebates, discounts, and other consideration given or accrued relating to valsartan, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm corporation, or other business entity whom you paid, or on whose behalf you accrued, the chargeback, rebate, discount and/or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which you paid or accrued the chargeback, rebate, discount, or other consideration; (iv) the sales, or groups of sales, upon which the rebate, discount, or other consideration is based, including: (aa) the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction; (bb) the bill-to customer; (cc) the ship-to customer; (dd) the dates of the sales, or group of sales; (ee) the invoice amount in dollars for the sales or group of sales; (ff) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; and (gg) the contract, agreement, or other basis upon which the chargeback, rebate, discount, or other consideration is calculated.

   c. All administrative fee transactions relating to valsartan, including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales concerning the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code;

   d. For all other transaction types not reflected in (a) through (c) above, produce all documents relating to any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, whether created or maintained daily, monthly, quarterly, or at some other periodicity, with regard to valsartan.

**Formatted:** Font: Times New Roman

  e. The complete documentation for all items above (a though d) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g., field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade designations, etc.), including but not limited to (aa) a separate product list, including NDC, SKU, UPC, product description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (cc) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating (1) whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold and (2) how negative unit and dollar values should be treated in calculating net quantities and dollar amounts; (dd) all data sets and calculations used to (1) determine accrued rebates and/or chargebacks and/or (2) periodically reconcile accrued rebates and/or chargebacks with actual rebates and/or chargebacks; (vi) return and/or exchange policies; and (vii) payment terms.

## XV. AVAILABLE DATA SOURCES

<del>63.</del>58. Produce all documents relating to all IMS, Verispan, MediSpan, Scott-Levin, PriceCheck, ImpactRx, First DataBank, or other pharmaceutical industry data products <u>or software utilized,</u> purchased and or subscribed to or available to you regarding VCDs.

<del>64.</del>59. Produce all data or reports generated by IMS, CMS, or Verispan, or any comparable third party person or entity (including, but not limited to, Medi-Span, ImpactRx, and First DataBank), in whatever format it was received, relating to the sale, prescription, marketing, promotion, or detailing of valsartan from date of launch to the present for VCDs, including:

  a. IMS National Prescription Audit data, including TRx, NRx, extended units, retail sales dollars and retail sales price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC, and channel.
  b. IMS National Sales Perspective data, including total units, extended units, total sales dollars, and price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC, and channel.
  c. CMS national Health Expenditures and Drug Utilization data, including TRx, NRx, Medicaid percentage paid, extended units, retail sales dollars, and retail sales price, with regard to valsartan.
  d. Verispan Vector One National (VONA) data, including TRx, NRx, extended units, retail sales dollars, and retail sales price, with regard to valsartan. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC, and channel.

<del>65.</del>60. Produce all documents relating to any coupon or co-pay assistance you made available to consumers for valsartan.

Dated: <del>November 26</del><u>December 10</u>, 2019

/s/ Adam Slater
Adam M. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel.: (973) 228-9898
aslater@mazieslater.com

Daniel Nigh
**Levin Papantonio**
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7013
dnigh@levinlaw.com

Ruben Honik
**Golomb & Honik, PC**
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 278-4449
rhonik@golumbhonik.com

Conlee Whitely
**Kanner & Whitely, LLC**
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
c.whiteley@kanner-law.com

**CERTIFICATE OF SERVICE**

I certify that on the 26̶10th day of N̶o̶v̶e̶m̶b̶e̶r̶December 2019, I electronically transmitted the attached document to counsel of record for all Retail Pharmacy and Wholesaler Defendants.

/s/ Adam M. Slater

**Formatted:** Font: Times New Roman