# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALSARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

# PLAINTIFFS' SECOND AMENDED SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO RETAILER AND DISPENSING DEFENDANTS

## TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Local Civil Rule 34.1, and in accordance with the Court's rulings at oral argument on December 11, 2019 and December 18, 2019, and in the Order filed on December 13, 2019, as well as the Court's Order on macro discovery issues filed on November 25, 2019, Plaintiffs propound the following second amended set of requests upon each Retailer/Dispensing Defendant.[1]

---

[1] Each request is to be interpreted consistent with the Court's oral rulings at the November 20, 2019 hearing on macro discovery issues; the Court's November 25, 2019 Order on macro discovery issues (Dkt. 303); the parties' representations as reflected in the record of the December 11, 2019 discovery hearing; and the Court's oral rulings at the December 11, 2019 discovery hearing.

{Cases; 00029735.DOCX}1

**DEFINITIONS:**

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"API Manufacturer"** is defined as any entity that manufactures the active pharmaceutical ingredient (API) for valsartan.

**"Finished Dose Manufacturer"** includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

**"Manufacturer Defendants"** includes API Manufacturers and Finished Dose Manufacturers including any subsidiaries or affiliated entities.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**"Documents"** includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data

formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the present.

**"Regulatory and Regulatory Authority"** refers to United States and foreign regulatory agencies.

**"Retail Pharmacy Defendants"** refers to any and all entities listed as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Complaint (Dkt. No. 121), whether by name or as John Doe defendants, including ANY person or entity acting on any of their behalf including any agents, employees, predecessor entities, or other representatives.

"**TPP**" refers to Third Party Payors, including health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plants, third party payers, and any other health benefit provider in the United States of America and its territories.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient, including the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan-containing drug.

**"Recalled Valsartan" or "Recalled VCDs"** means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall. This term also includes all valsartan or VCDs that were sold, imported, distributed, dispensed and/or returned or destroyed upon product expiration containing the same NDC code (or a successor NDC code if discontinued) as valsartan or VCDs that were later subject to recall.

"**You**," "**your**" or "**defendant**" shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Security Chain Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Retail Pharmacy Defendants"** refers to any and all entities listed as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Complaint (Dkt. No. 121), including ANY person or entity acting on any of their behalf including any agents, employees, predecessor entities, or other representatives.

**"Wholesaler Defendants"** refers to and ALL entities listed as "'John Doe' Wholesaler Defendants" in Plaintiffs' June 17, 2019 Master Complaint (Dkt. No. 121), including ANY person or entity acting on any of their behalf including any agents, employees, predecessor entities, or other representatives.

{Cases; 00029735.DOCX}

**Non-privileged information:**  These Requests seek only information that is not privileged.  This does not relieve any responding Defendant from serving a privilege log consistent with the Federal Rules of Civil Procedure.

**DOCUMENTS TO BE PRODUCED**

**PHASE ONE REQUESTS**

I. SOURCING (UPSTREAM)

1. Documents sufficient to identify when and from whom you purchased VCDs.
2. Documents sufficient to identify the VCDs purchased by you, including quantity/units, NDC codes, batch, lot number, expiration date, and any other unique identifiers.
3. Documents sufficient to identify your receipt of any manufacturer-included packaging or labeling information for VCDs purchased by you (e.g., invoices, bills of lading, packing slips, etc.).
4. The gross and net price paid by you for VCDs identified in Request No. 2.

II. SALES (DOWNSTREAM)

5. Documents sufficient to identify when and to whom you dispensed VCDs.
6. Documents sufficient to identify the valsartan dispensed by you, including quantity/units, NDC, batch, lot number, expiration date, and any other unique identifiers (including EDI 867 Product Transfer and Resale Report data).
7. Documents sufficient to identify your dispensing of any manufacturer-included packaging or labeling information for VCDs dispensed by you (e.g., invoices, bills of lading, packing slips, etc.).
8. The gross and net price paid for VCDs dispensed by you identified in Request No. 6, along with other identifying information about each sale maintained by you in the ordinary course of business.
9. The co-pay, co-insurance or cash amounts paid by ultimate consumers for each dispensing of VCDs, along with all other information about each dispensing maintained by you in the ordinary course of business.

III. WARRANTIES/STATEMENTS (UPSTREAM)

10. Your policies, procedures, or practices for the types of documents or other information to be provided by a prospective supplier and/or manufacturer of VCDs purchased by you.
11. Documents sufficient to show the information provided to you by suppliers and/or manufacturers of VCDs actually purchased by you.
12. Documents relating to, consisting of, or evidence any research or investigation you conducted on actual or prospective suppliers and/or manufacturers of VCDs.
13. Documents consisting of or evidencing any warranty or statement made to you by a supplier and/or manufacturer of VCDs regarding the quality, purity, or bioequivalence of VCDs, including but not limited to any warranties or statements that VCDs were supplied and/or manufactured in compliance with U.S. laws and regulations.

IV. WARRANTIES/STATEMENTS (DOWNSTREAM)

14. Your policies, procedures, or practices for the types of documents or other information and materials to be provided by you (whether such materials were created by you or not) when you dispense VCDs.
15. Your policies, procedures, or practices for the dispensing of manufacturer-included packaging and/or labeling materials to ultimate consumers.
16. Documents sufficient to show the information provided by you when you have actually dispensed VCDs.
17. Your policies, procedures, or practices for the information to be provided to a TPP or consumer for the valsartan distributed by you.
18. Documents sufficient to show the information provided to a TPP or consumer for the valsartan distributed by you.
19. Documents consisting of or evidencing any warranty or statement made by you specifically to ultimate consumers of VCDs regarding the quality, purity, or bioequivalence of VCDs, including but not limited to any warranties or statements that VCDs were manufactured in compliance with U.S. laws and regulations.

V. TESTING/INSPECTION

20. Testing and testing results of VCDs made available to you for VCDs you purchased.
21. Testing (if any) you performed for VCDs, and results thereof.

VI. DISTRIBUTION CENTERS

22. Documents sufficient to identify your distribution centers from which VCDs were shipped, including location and state(s) of locations served by each distribution center.
23. Documents sufficient to identify your distribution centers that would have received or shipped VCDs subject to recall.

VII. RECALL

24. Your policies, procedures, and practices that govern execution of pharmaceutical recalls.
25. Your policies, procedures, and practices specifically governing the VCD recalls, if any.
26. VCD recall communications you received from anyone.
27. VCD recall communications you made available to anyone.
28. Documents sufficient to identify (by NDC code and lot and batch information and any other unique identifiers) Recalled VCDs: (a) currently on hand; (b) returned by you; or (c) destroyed by you.
29. Documents sufficient to show a list of your employees involved in the recall of VCDs.
30. Documents sufficient to show a list of your warehouse and/or distribution facilities involved in any VCD recalls.
31. Documents sufficient to show how your retail or other locations of dispensing VCDs de-stock recalled VCDs.

VIII. COMPLIANCE WITH THE DRUG SUPPLY CHAIN SECURITY ACT

32. Documents sufficient to show your obligations under the Drug Supply Chain Security Act and regulations promulgated thereunder, with respect to VCDs.
33. Documents identifying lot-level product tracing or verification, or other product-tracing or verification information, transaction information, history and statements, regarding VCDs.
34. Documents sufficient to show your policies, practices, or procedures for ensuring compliance with the Drug Supply Chain Security Act and regulations promulgated thereunder, with respect to VCDs.
35. Prior to full implementation of the Drug Supply Chain Security Act and regulations promulgated thereunder, all documents identifying lot-level tracing or verification, or other product-tracing or verification information, transaction information, history and statements, regarding VCDs, including but not limited to, any pedigree documents received for any VCDs.
36. Any FDA Establishment Inspection Reports ("EIRs"), form 483s, correspondence and warning letters regarding your compliance with the Drug Supply Chain Security Act and/or regulations promulgated thereunder, specifically as it relates to data integrity, tracing information, or your processes and procedures for identifying and quarantining suspicious, adulterated or illegitimate product.

### IX. LITIGATION AND DOCUMENT PRESERVATION

37. Produce all document retention or destruction policies.
38. Produce all litigation holds you have issued that are related in any way to the above-captioned litigation or to the VCD recalls.

### X. COMPLAINTS

39. Documents sufficient to show all complaints you received from anyone concerning the quality, purity, bioequivalence, or contamination of VCDs.

### XI. INDEMNITY AGREEMENTS

40. Produce all agreements that you have with anyone that affect your legal obligations or liabilities with regard VCDs including but not limited to indemnity agreements and joint defense agreements.

### XII. DEFENDANT FACT SHEET IN RESPONSE TO PLAINTIFF FACT SHEET

41. Produce the dates of invoices of purchases of the Relevant VCDs made by the Relevant Retailers from You during the Plaintiff Usage Period, if available.
42. Produce invoice numbers for purchases of the Relevant VCDs made by the Relevant Retailers from You during the Plaintiff Usage Period, if available.
43. Produce the NDC codes, batch and lot information, and other unique identifiers of the Relevant VCDs purchased by the Relevant Retailers from You during the Plaintiff Usage Period, if available.
44. Produce the names of the Relevant VCDs purchased by the Relevant Retailers from You during the Plaintiff Usage Period, if available.

45. Produce the quantity of the Relevant VCDs purchased by the Retailers from You during the Plaintiff Usage Period, if available.
46. Produce the billing address of the Relevant Retailers who purchased the Relevant VCDs from You during the Plaintiff Usage Period, if available.
47. Produce the names of the Relevant Manufacturers from whom You purchased the Relevant VCDs during the Plaintiff Usage Period, if available.
48. Produce the Manufacturer numbers of the Relevant Manufacturers from whom You purchased the Relevant VCDs during the Plaintiff Usage Period, if available.
49. Produce the quantity of the Relevant VCDs purchased by You from the Relevant Manufacturers during the Plaintiff Usage Period, if available.

**PHASE TWO REQUESTS**

XIII. **CORPORATE ORGANIZATION**

50. Produce corporate organizational charts sufficient to identify the reporting relationships among, and responsibilities of, You and Your affiliated entities.
51. For each entity with any role in the purchase, sale, and/or distribution of VCDs in the United States, please produce personnel organizational charts as follows:
    a. Department(s) responsible for any due diligence conducted of any upstream VCD supplier(s) and of their product(s), including but not limited testing of product or the review of testing results conducted by other entities;
    b. Department(s) responsible for handling of recalls;
    c. Departments(s) responsible for negotiating and/or effectuating supply agreements with any upstream VCD supplier(s);
    d. Department(s) responsible for negotiating and/or effectuating distribution agreements with purchasing entities including but not limited to retail and mail order pharmacies, long term care facilities, hospitals, and any other entities who purchase VCDs from You and dispense VCDs to consumers;
    e. Department(s) responsible for maintaining information reflecting the dispensing of VCDs to ultimate consumers;
    f. Regulatory Affairs department;
    g. Department(s) responsible for quality assurance or related functions;
    h. Departments(s) responsible for creating or maintaining records identifying the valsartan or VCDs purchased and/or distributed by You or your affiliated entities in the United States;
    i. Department(s) responsible for ensuring and/or documenting that all valsartan or VCDs distributed by You contain any manufacturer-included packaging and labeling-related materials.
    j. Department(s) responsible for establishing or maintaining relationships involving valsartan, with any other defendant named in this MDL.

52. To the extent you conduct business relating to the manufacture, distribution, or marketing of valsartan with any other defendant in the above-captioned MDL, produce documents,

including contracts, invoices, payment records, and communications, demonstrating the nature, extent, and length of this business relationship.

### XIV. RELEVANT CUSTODIANS AND ENTITIES

53. Produce documents sufficient to identify the corporate employees or third parties responsible for or involved in the (1) distribution, (2) upstream and downstream tracking of product contents and information (including but not limited to NDC codes, lot and/or batch information, and manufacturer-included packaging and labeling), (3) sale, (4) marketing, (5) quality assurance, (6) due diligence of any upstream suppliers (including but not limited to suppliers' compliance with U.S. laws and regulations regarding the manufacturing and distribution of pharmaceuticals), (7) communications with private individuals or entities regarding testing, purity, contamination, bioequivalence, and pricing, (8) regulatory compliance and communications, and (9) recalls, and any related software and logistics, with regard to valsartan.

### XV. POLICIES AND PROCEDURES

54. Produce the final versions of policies, procedures, standard operating procedures, or protocols with regard to: (1) regulatory compliance and communications, (2) distribution, (3) tracking product contents and information (including but not limited to NDC codes, lot and/or batch information, and manufacturer-included packaging and labeling), (4) pricing, (5) sale, (6) marketing, (7) recalls, (8) sourcing including confirmation of purity and bioequivalence, (9) quality assurance, (10) testing or evaluating testing data (including purity, contamination, and bioequivalence), and (11) communications with private individuals or entities with regard to testing, purity, contamination, bioequivalence, and pricing, with regard to valsartan. In addition, provide all indexes or lists of the requested documents.

### XVI. AGREEMENTS

*For the following requests, the relevant time period should begin on the date you first began the process of purchasing any valsartan for sale in US Markets.*

55. Produce all agreements, contracts, or licenses that the answering defendant is a party to, with regard to (1) distribution, (2) packaging or re-packaging, (3) sale or pricing, (4) marketing, (5) quality assurance (including but not limited to testing, purity, bioequivalence, or contamination) (6) communications with private individuals or entities with regard to testing, purity, contamination, bioequivalence, recalls, or pricing, (7) regulatory compliance and communications, and (8) procurement, with regard to valsartan, with the following entities
    a. Any Defendants including any subsidiaries or affiliates of any Defendants;
    b. Wholesalers and/or direct purchasers of drugs;
    c. TPPs;
    d. Chain Pharmacies; and
    e. Group Purchasing Organizations operating on behalf of individual pharmacies

  f. Third parties, including logistics providers.

## XVII. Intra-Defendant Communications

56. All communications between You or any of your subsidiaries or affiliates and any other defendant(s) related to (1) manufacture, (2) purity, bioequivalence, or contamination, (3) testing or testing results for purity, bioequivalence, or contamination, (4) quality assurance, (5) risk assessment, (6) medical and clinical assessments in connection with contamination, (7) communications with regulatory agencies, and (8) recalls, with regard to valsartan.
57. Produce all documents provided to you by any finished dose or API manufacturer, regardless of whether you ultimately purchased valsartan from those entities, containing any statements about the API manufacturer or finished dose manufacturer's manufacturing practices, compliance with U.S. laws or regulations, quality assurance, quality practices, purity, contamination, bioequivalence, and/or recalls, of their valsartan products.

## XVIII. Distribution and Facilities

58. Produce documentation identifying the answering defendant's distribution centers that have distributed or received VCDs, in all 50 states, including the documentation of the dates, quantities, and sources of valsartan at issue.
59. Produce documentation identifying all warehouse facilities which answering defendant used to house VCDs in the United States, and the dates, quantities, and sources of valsartan at issue.

## XIX. Regulatory Correspondence and Documents

60. To the extent not already produced in response to Request Nos. 20-26 *supra,* produce all regulatory documentation and communications with regard to purity, contamination, bioequivalence, or recalls of VCDs.
61. Produce all Establishment Inspection Reports and related documentation (including photographs or video) concerning your facilities or the facilities of any other defendant relating to VCDs.
62. Produce all documents relating, referring to or embodying all inspection reports (including 483s, detention reports, and warning letters) or consent decrees, with regard to VCDs contamination, or any facility in which contaminated VCDs was distributed or otherwise stored.

## XX. Complaints and Recalls

63. Produce all documents and communications with regard to any consideration of or implementation of a recall due to contamination of VCDs.
64. Produce all documents or communications concerning any import or export alerts relating to VCDs contamination, that you received or otherwise obtained.
65. Produce complete documentation of any refunds that you paid to purchasers of VCDs in the United States from January 1, 2012 to the present.

66. Produce any lists indicating all persons or entities who received communications from you notifying them of the contamination or recall of VCDs.
67. Produce all documents received by you from any Manufacturer Defendant regarding the contamination or recall of VCDs.
68. Produce documents identifying all lot, batch or NDC code (and any other unique identifier) of every potentially contaminated and/or recalled VCD you currently still have in your possession.
69. Produce documents identifying the lot, batch or NDC code (and any other unique identifier) of every recalled VCD you returned to a Manufacturer Defendant or any other person or entity, and the identify, quantity, and date of the return.
70. Produce documents identifying all lot, batch, or NDC codes (and any other unique identifier) of every potentially contaminated or recalled VCDs you destroyed, and the date and details of such destruction.

## XXI. WARRANTIES AND STATEMENTS

71. Produce SOPs related to the receipt and distribution of manufacturer-included packaging, labeling, or patient information (e.g., medication guides or patient leaflets), as well as SOPs regarding tracking such information.
72. Produce documentation of any public statements made by you regarding valsartan quality, purity, contamination, safety, bioequivalence, or recalls, including but not limited to drafts and final versions.

## XXII. SALE AND DISTRIBUTION

73. Produce documents identifying all sales of VCDs made by you during the relevant time period.
74. Produce all documentation relating to the due diligence (including any relevant SOPs) performed in selecting the source(s) from which you purchased VCDs, and in particular any evaluation of that source's compliance with U.S. laws and regulations and that source's VCDs and related quality, purity, bioequivalence concerns, if any.
75. Produce all documents and communications from any Manufacturer Defendant or any subsidiary or affiliated entity with regard to the manufacturing of their generic products, including location of facility, source of API, compliance with U.S. laws and regulations, purity, contamination, and bioequivalence information.
76. Produce all documents and communications from any Manufacturer Defendant or any of its subsidiaries or affiliates with regard to the manufacturing of their generic products, including location of facility, source of API, purity, contamination, and bioequivalence information.
77. Produce all documents sufficient to show the extent to which any contracts to purchase or sell VCDs to a particular entity were ever exclusive in that they prohibited the other contracting party from purchasing or selling valsartan from or to another competitor.

## XXIII. IDENTIFICATION OF PURCHASERS

78. Produce all documents and communications between or among you and any named plaintiff, (consumers and/or TPP entities), including but not limited to MSP Recovery Services (including its assignors, Summacare, Emblem, and Connecticare) and Maine Automobile Dealers Association.

### XXIV. SALES AND PRICING

79. Produce documentation setting forth each VCD sale or dispense you made in the United States to any purchaser (including any affiliated entity to you), including documents that reflect total gross sales, total net sales, total number of units sold, unit price (gross and net), unit cost, cost of goods sold, profit margin, NDC, batch number, and lot number, on an annual basis or however that data is maintained, by defendant, state, territory or the District of Columbia.
80. Produce all documents and communications relating to negotiations over price and terms of sale or distribution between the answering defendant and any Manufacturer or Wholesaler Defendant or other supplier of VCDs.
81. Produce all documents and communications documenting or relating to any agreements or arrangements between you and any TPP entity or other purchaser or payor (or any person acting on their behalf) that impacted the quantity or price of valsartan purchased (including but not limited to rebate agreements, volume rebates, and discounts).
82. Produce all requests for proposal ("RFPs") received by the answering defendant from any Manufacturer Defendant or any subsidiary or affiliate or other re-seller of VCDs relating to VCDs.
83. Produce documents sufficient to show reductions of price as a result of a Manufacturer Defendant's or subsidiary's or affiliate's failure to supply product to answering defendant.
84. Produce all portfolio management programs offered to answering defendant by any Manufacturer Defendant or subsidiary or affiliate.
85. Produce all multisource agreements made between answering defendant and any Manufacturer Defendant for their VCDs.
86. Produce documentation of all product offers made to you by any Manufacturer Defendants regarding VCDs, including, but not limited to, price change offers.
87. Produce documents sufficient to show all sales made to Pharmacy Group Purchasing Organizations.
88. Produce all profit split agreements offered to you by any Manufacturer Defendant regarding their generic drug products.
89. Produce all price protection contracts between answering defendant and any Manufacturer Defendant or other Wholesaler Defendant regarding the price of VCDs.
90. For each month from January 1, 2012 to the present, produce all documents relating to your actual and projected valsartan sales and the pricing, costs, and revenues therefrom, including:
    a. List price;
    b. Average marginal price;
    c. Average wholesale price;
    d. Wholesale acquisition cost;
    e. Direct price;

  f. Average discount off of wholesale price or wholesale acquisition cost;
  g. Price under Medicare program;
  h. Price under Medicaid program;
  i. Maximum allowable price;
  j. Average manufacturing price (AMP) as defined by, and reported to, the Centers for Medicare and Medicaid Services;
  k. Best price, as defined by, and reported to, the Centers for Medicare and Medicaid Services;
  l. Net revenue;
  m. Gross sales;
  n. Net sales;
  o. Gross shipments;
  p. Unit of volumes sold;
  q. Unit of volumes sold net of returns;
  r. Total product contribution;
  s. All costs and expenses attributable to the product;
  t. Sales and distribution cost;
  u. Cost of goods sold;
  v. Marketing, advertising, promotional, and sales expenses;
  w. Depreciable and capital improvements;
  x. Short-run average variable costs;
  y. Long-run average variable costs;
  z. Fixed costs;
  aa. Materials cost;
  bb. Labor cost;
  cc. Marginal cost;
  dd. Rebates, discounts, vouchers, or other product promotions, returns, or charge-backs; and
  ee. Coupons or co-pay cards.
91. Produce documentation identifying every entity that purchased, reimbursed, or compensated you for valsartan from you from January 1, 2012 to the present.
92. Produce all electronic data in tab-delimited, comma-delimited, or semicolon-delimited ASCII flat text or similar electronic format from January 1, 2012 to the present sufficient to identify all sales of valsartan to purchasers in transaction-by-transaction format, as follows:
  a. All direct sales/invoice transactions (as well as any discounts or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount, (ii) source of the transaction price, (iii) number of units sold, (iv) number of units returned or otherwise affected by the transaction, (v) unit of measure, (vi) date of transaction, (vii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (viii) NDC, (ix) UPC, (x) SKU, (xi) product description, (xii) product form, (xiii) strength, (xiv) package size in extended units per package, (xv) customer name, (xvi) customer number, (xvii) customer address, (xviii) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to and ship-to customer), and (xix) the customer's parent company (if the data identifies

a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

b. All data concerning chargebacks, rebates, discounts, and other consideration given or accrued relating to valsartan, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm corporation, or other business entity whom you paid, or on whose behalf you accrued, the chargeback, rebate, discount and/or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which you paid or accrued the chargeback, rebate, discount, or other consideration; (iv) the sales, or groups of sales, upon which the rebate, discount, or other consideration is based, including: (aa) the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction; (bb) the bill-to customer; (cc) the ship-to customer; (dd) the dates of the sales, or group of sales; (ee) the invoice amount in dollars for the sales or group of sales; (ff) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; and (gg) the contract, agreement, or other basis upon which the chargeback, rebate, discount, or other consideration is calculated.

c. All administrative fee transactions relating to valsartan, including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales concerning the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code;

d. For all other transaction types not reflected in (a) through (c) above, produce all documents relating to any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, whether created or maintained daily, monthly, quarterly, or at some other periodicity, with regard to valsartan.

e. The complete documentation for all items above (a though d) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g., field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade designations, etc.), including but not limited to (aa) a separate product list, including NDC, SKU, UPC, product description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (cc) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating (1) whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold and (2) how negative unit and dollar values should be treated in calculating net quantities and dollar amounts; (dd) all data sets and calculations used to (1) determine accrued rebates and/or chargebacks and/or (2) periodically reconcile accrued rebates

and/or chargebacks with actual rebates and/or chargebacks; (vi) return and/or exchange policies; and (vii) payment terms.

## XXV. AVAILABLE DATA SOURCES

93. Produce all documents relating to all IQVIA, IMS, Verispan, MediSpan, Scott-Levin, PriceCheck, ImpactRx, First DataBank, or other pharmaceutical industry data products or software utilized, purchased and or subscribed to or available to you regarding valsartan.
94. Produce all data or reports generated by IQVIA, IMS, CMS, or Verispan, or any comparable third party person or entity (including, but not limited to, Medi-Span, ImpactRx, and First DataBank), in whatever format it was received, relating to the sale, prescription, marketing, promotion, or detailing of valsartan from date of launch to the present for VCDs, including:
    a. IMS National Prescription Audit data, including TRx, NRx, extended units, retail sales dollars and retail sales price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC, and channel.
    b. IMS National Sales Perspective data, including total units, extended units, total sales dollars, and price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC, and channel.
    c. CMS national Health Expenditures and Drug Utilization data, including TRx, NRx, Medicaid percentage paid, extended units, retail sales dollars, and retail sales price, with regard to valsartan.
    d. Verispan Vector One National (VONA) data, including TRx, NRx, extended units, retail sales dollars, and retail sales price, with regard to valsartan. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC, and channel.
95. Produce all documents relating to any coupon or co-pay assistance you made available to consumers for valsartan.

Dated: January   , 2020

/s/ Adam Slater
Adam M. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel.: (973) 228-9898
aslater@mazieslater.com

Daniel Nigh
**Levin Papantonio**
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7013

Ruben Honik
**Golomb & Honik, PC**
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 278-4449
rhonik@golumbhonik.com

Conlee Whitely
**Kanner & Whitely, LLC**
701 Camp Street
New Orleans, LA 70130

| | |
|---|---|
| dnigh@levinlaw.com | (504) 524-5777 |
| | c.whiteley@kanner-law.com |

## CERTIFICATE OF SERVICE

    I certify that on the   day of December, 2019, I electronically transmitted the attached document to counsel of record for all Retail Pharmacy and Wholesaler Defendants.

*/s/ Adam M. Slater*
