# EXHIBIT O

**DFS QUESTIONS DIRECTED TOWARD API MANUFACTURERS**

| DFS Request | Rule 34 Request |
|---|---|
| **Request II.A:** Identify whether you manufactured the API found in any Affected Drug(s) and, if so, which Affected Drug(s). Identify which Affected Drug(s) and Affected API(s) (i) were actually or potentially contaminated with any nitrosamine or other carcinogenic substance, or (ii) were recalled by you or any other person in relation to potential nitrosamine or other carcinogenic contamination. | Request No. 37: Produce all documentation with regard to each notification to defendant of impurity or contamination of valsartan that was, or potentially was, due to a nitrosamine, whether or not identified as nitrosamine contamination at the time. In connection with this request, separately identify the first such notification<br><br>Request No. 44: Produce complete documentation of (a) all testing relevant to determination of purity, bioequivalence, or contamination, prior to any recall, of valsartan you manufactured or sourced, (b) all testing relevant to determination of purity, bioequivalence, or contamination,, after any recall, of valsartan you manufactured or sourced, (c) the results of the foregoing testing; […]<br><br>Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan.<br><br>Request No. 68: Produce all final recall notices with regard to contamination of valsartan.<br><br>Request No. 72: Produce all documents and communications with regard to the scope of any recall considered or implemented with regard to valsartan contamination.<br><br>Request No. 94: Produce all documents relating to the sale and distribution of valsartan that reflect NDC, batch number, and lot number. |
| **Request II.B:** For each Affected API listed in response to Question II.A, provide the date the API was manufactured, the place of manufacture (by facility, city, state/province, and country), the date of expiry for the Affected API, and the date when the manufacturing process was completed. | The ANDAs and DMFs produced during core discovery provide the facility location for API manufacturing. The Manufacturer Defendants have also provided this information in a separate letter in accordance with the Court's order on macro discovery issues, Dkt. 303 ¶ 3.<br><br>Request No. 27: Produce documentation identifying (1) each lot, batch, or other production quantity of valsartan manufactured, purchased, or sold by defendant (including discarded or recalled lots or batches), (2) the dates of manufacture for each…. |

| DFS Request | Rule 34 Request |
|---|---|
| | Request No. 79: Produce all versions of defendant's labeling…. |
| **Request II.C:** For each Affected API listed in response to Question II.A, identify all entities that supplied any ingredient, solvent, or other material used in the manufacture of these APIs, and state which material, solvent, or ingredient was supplied by each, and which date those supplies or materials were used to manufacture the Affected API. | The ANDAs and DMFs produced during core discovery provide the suppliers of all raw materials.<br><br>Request No. 27: Produce documentation identifying (1) each lot, batch, or other production quantity of valsartan manufactured, purchased, or sold by defendant (including discarded or recalled lots or batches), (2) the dates of manufacture for each, (3) the solvent(s) (including residual or reused solvents) utilized in the manufacture of each, and (4) any information you obtained with regard to potential risks of the use of any solvent utilized, including residual or reused solvents. |
| **Request II.D:** If known, for each Affected Drug listed in response to Question II.A, identify all ingredients and raw materials used in the manufacture of the Affected Drug other than the Affected API. | The ANDAs produced during core discovery provide the ingredients/excipients used during the finished dose manufacturing process.<br><br>Duplicative of Request II.D directed toward Finished Dose Manufacturers, who are more familiar with ingredients used in manufacture of finished dose Affected Drugs. |
| **Request II.E:** Identify the entity or entities to which you sold or distributed each Affected API listed in response to Question II.A, the date on which each sale or distribution occurred, the price, and all documentation provided to the purchaser or distributor in connection with that sale or distribution. | Request No. 10: All communications between or among any of the defendants with regard to (1) the manufacturing process, (2) testing capable of indicating purity, bioequivalence, or contamination, (3) quality assurance related to purity, bioequivalence, or contamination, (4) risk assessment with regard to contamination or the use of solvents, (5) medical and clinical assessments of risks related to impurity or contamination, (6) communications with regulatory agencies regarding bioequivalence, purity, or contamination, (7) terms or conditions of distribution, (8) sale numbers, (9) pricing, and (10) procurement or use of solvents, with regard to valsartan.<br><br>Request No. 26: Produce all certificates of analysis or similar documents concerning analysis of the purity or contents of valsartan, including the catalysts and solvents used in the tetrazole ring process, and documents and communications concerning the same.<br><br>Request No. 80: Produce all statements regarding purity, bioequivalence, and contamination provided to medical professionals, purchasers including TPPs, consumers, wholesale distributors, retail pharmacies, and other direct and indirect |

| DFS Request | Rule 34 Request |
|---|---|
|  | purchasers of valsartan, for each NDC, Batch Number, and Lot Number of valsartan sold in the United States during the relevant time period.<br><br>Request No. 107: Produce documents sufficient to show (i) the customers to whom you sold valsartan API or valsartan finished dose, (ii) unique identifiers for product sold (e.g., lot number, batch number, NDC code, etc.), (iii) quantities of valsartan API or valsartan finished dose sold, (iv) dates of sale, and (v) net and gross price per sale. |
| **Request II.F:** Identify any testing done on each batch or lot of Affected API listed in response to Question II.A that you were provided or conducted (1) to identify impurities, (2) to identify nitrosamines, and/or (3) that identified any impurity or artifact, including but not limited to a nitrosamine, (4) state the full result of that testing; and (5) your affirmative decisions, if any, to sequester or sell the API tested as a result of the foregoing. | Request No. 35: Produce all documents setting forth or addressing the results of any testing (including chromatography) of valsartan that had the potential to directly or indirectly identify impurities or contamination.<br><br>Request No. 37: Produce all documentation with regard to each notification to defendant of impurity or contamination of valsartan that was, or potentially was, due to a nitrosamine, whether or not identified as nitrosamine contamination at the time. […]<br><br>Request No. 44: Produce complete documentation of (a) all testing relevant to determination of purity, bioequivalence, or contamination, prior to any recall, of valsartan you manufactured or sourced, (b) all testing relevant to determination of purity, bioequivalence, or contamination, after any recall, of valsartan you manufactured or sourced, (c) the results of the foregoing testing; (d) any such testing that was considered but not performed before or after any recall, including the reason(s) why such testing was not performed, and (e) to the extent any lot, batch, or other production quantity was not tested for impurities, bioequivalence or contamination, complete documentation with regard to the reason(s) why no such testing was performed. […]<br><br>Request No. 45: Produce complete documentation identifying each lot, batch, or other production quantity of valsartan, (a) confirmed to be contaminated and the quantification of the contamination; (b) assumed to have been contaminated and the quantification of the contamination; (c) confirmed not to be contaminated; (d) assumed not to be contaminated, and (e) confirmed or assumed to be contaminated. |

| DFS Request | Rule 34 Request |
|---|---|
| | Request No. 46: Produce complete documentation of any testing for any nitrosamine compound, … and any other nitrosamine or carcinogenic contaminant in valsartan….<br><br>Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan. |
| **Request II.G:** State whether you supplied each test result identified in response to Question II.F to the FDA or to any other entity or person (e.g., your actual or prospective customers), and, if so, identify the test result and provide the recipient of the test result, date of communication, and content of the communication. | Duplicative of core discovery, which required production of all communications with the FDA related to ARB recalls.<br><br>Request No. 10: All communications between or among any of the defendants with regard to … (2) testing capable of indicating purity, bioequivalence, or contamination, (3) quality assurance related to purity, bioequivalence, or contamination, (4) risk assessment with regard to contamination or the use of solvents, … (6) communications with regulatory agencies regarding bioequivalence, purity, or contamination….<br><br>Request No. 52: Produce all regulatory documentation and communications with regard to contamination or recalls of valsartan, as limited by the Court's Order.<br><br>Request No. 53: Produce all regulatory documentation and communications with regard to the use of solvents, tetrazole ring formation, and potential impurities or contamination in connection with the manufacturing process for valsartan, as limited by the Court's Order on macro discovery issues (Dkt. 303).<br><br>Request No. 80: Produce all statements regarding purity, bioequivalence, and contamination provided to … purchasers including TPPs, consumers, wholesale distributors, retail pharmacies, and other direct and indirect purchasers of valsartan, for each NDC, Batch Number, and Lot Number of valsartan sold in the United States during the relevant time period. |
| **Request II.H:** Provide the date(s) on which you sent any recall notice to any Defendants or pharmacies identified in the PFS, or any of your actual or prospective customers of the Affected API listed in response to Question II.A, and attach the recall notice(s). | Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan.<br><br>Request No. 68: Produce all final recall notices with regard to contamination of valsartan. |

4

| DFS Request | Rule 34 Request |
|---|---|
| | Request No. 69: Produce all documents setting forth or addressing any communications with any customer or consumer relating to the recall (or non-recall) of valsartan due to contamination.<br><br>Request No. 71: Produce all communications with any person or entity to which, or from which, you purchased or sold valsartan, with regard to valsartan contamination.<br><br>Request No. 76: Produce all communications (and drafts) to or from Defendant regarding recall of valsartan related to valsartan contamination, including lists sufficient to show all persons or entities who received communications. |
| **Request II.I:** Identify all Affected API or Affected Drugs that you have recalled or otherwise identified as actually or potentially contaminated with any nitrosamine or other carcinogenic substance. | Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan.<br><br>Request No. 68: Produce all final recall notices with regard to contamination of valsartan. |
| **Request II.J:** Were any Affected API or Affected Drugs sold, distributed, labeled, or manufactured in whole or in part by you ever returned to your possession as a result of a recall letter, or finding or suspicion of contamination? If yes, please identify and produce: (1) The date you regained possession or control of the drugs; (2) The current location of the drugs; and (3) If any, the date and result of any nitrosamine-related testing done on the returned drugs. | Request No. 69: Produce all documents setting forth or addressing any communications with any customer or consumer relating to the recall (or non-recall) of valsartan due to contamination. |
| **Request II.K:** Have you communicated directly with Plaintiff at any time? If yes, produce all documents evidencing or relating to that contact including video or audio recording of such contacts. | Request No. 69: Produce all documents setting forth or addressing any communications with any customer or consumer relating to the recall (or non-recall) of valsartan due to contamination.<br><br>Request No. 71: Produce all communications with any person or entity to which, or from which, you purchased or sold valsartan, with regard to valsartan contamination.<br><br>Request No. 80: Produce all statements regarding purity, bioequivalence, and contamination provided to … consumers … and other direct and indirect |

| DFS Request | Rule 34 Request |
|---|---|
|  | purchasers of valsartan, for each NDC, Batch Number, and Lot Number of valsartan sold in the United States during the relevant time period. |

**DFS QUESTIONS DIRECTED TOWARD FINISHED DOSE MANUFACTURERS**

| DFS Request | Rule 34 Request |
|---|---|
| **Request II.A:** Identify whether you manufactured any Affected Drug(s) and, if so, which Affected Drug(s). Identify which Affected Drug(s) and if known Affected API(s) (i) were actually or potentially contaminated with any nitrosamine or other carcinogenic substance, or (ii) were recalled by you or any other person in relation to potential nitrosamine or other carcinogenic contamination. | Request No. 37: Produce all documentation with regard to each notification to defendant of impurity or contamination of valsartan that was, or potentially was, due to a nitrosamine, whether or not identified as nitrosamine contamination at the time. In connection with this request, separately identify the first such notification

Request No. 44: Produce complete documentation of (a) all testing relevant to determination of purity, bioequivalence, or contamination, prior to any recall, of valsartan you manufactured or sourced, (b) all testing relevant to determination of purity, bioequivalence, or contamination,, after any recall, of valsartan you manufactured or sourced, (c) the results of the foregoing testing; […]

Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan.

Request No. 68: Produce all final recall notices with regard to contamination of valsartan.

Request No. 72: Produce all documents and communications with regard to the scope of any recall considered or implemented with regard to valsartan contamination.

Request No. 94: Produce all documents relating to the sale and distribution of valsartan that reflect NDC, batch number, and lot number. |
| **Request II.B:** For each Affected Drug identified in response to Question II.A, identify the Affected API manufacturer. | Request No. 6: Produce all agreements, contracts, or licenses that the answering defendant is a party to, with regard to … (11) sale … with regard to valsartan and/or its ingredients.

Request No. 27: Produce documentation identifying (1) each lot, batch, or other production quantity of valsartan purchased, or sold by defendant (including discarded or recalled lots or batches)…. |

7

| DFS Request | Rule 34 Request |
|---|---|
| | Request No. 94: Produce all documents relating to the sale and distribution of valsartan that reflect NDC, batch number, and lot number. |
| **Request II.C:** For each Affected Drug listed in response to Question II.A, provide the date the finished dose drug was manufactured, the place of manufacture (by facility, city, state/province, and country), the date of expiry for the Affected Drug, and the date when the manufacturing process was completed. | The ANDAs produced during core discovery provide the facility location for API manufacturing. The Manufacturer Defendants have also provided this information in a separate letter in accordance with the Court's order on macro discovery issues, Dkt. 303 ¶ 3.<br><br>Request No. 27: Produce documentation identifying (1) each lot, batch, or other production quantity of valsartan manufactured, purchased, or sold by defendant (including discarded or recalled lots or batches), (2) the dates of manufacture for each….<br><br>Request No. 79: Produce all versions of defendant's labeling…. |
| **Request II.D:** If known, for each Affected Drug listed in response to Question II.A, identify all entities that supplied any ingredient, solvent, or other material used in the manufacture of the Affected API, and state which material, solvent, or ingredient was supplied by each, and which date those supplies or materials were used to manufacture the Affected API. | The DMFs and ANDAs produced during core discovery provide the suppliers of all raw materials used during the API manufacturing process.<br><br>Request No. 27: Produce documentation identifying (1) each lot, batch, or other production quantity of valsartan manufactured, purchased, or sold by defendant (including discarded or recalled lots or batches), (2) the dates of manufacture for each, (3) the solvent(s) (including residual or reused solvents) utilized in the manufacture of each, and (4) any information you obtained with regard to potential risks of the use of any solvent utilized, including residual or reused solvents. |
| **Request II.E:** Identify the entity or entities from which you purchased the Affected APIs listed in response to Question II.A, the date on which each purchase occurred, the price, and all documentation provided to you by the seller in connection with that purchase. | Request No. 10: All communications between or among any of the defendants with regard to (1) the manufacturing process, (2) testing capable of indicating purity, bioequivalence, or contamination, (3) quality assurance related to purity, bioequivalence, or contamination, (4) risk assessment with regard to contamination or the use of solvents, (5) medical and clinical assessments of risks related to impurity or contamination, (6) communications with regulatory agencies regarding bioequivalence, purity, or contamination, (7) terms or conditions of distribution, (8) sale numbers, (9) pricing, and (10) procurement or use of solvents, with regard to valsartan.<br><br>Request No. 26: Produce all certificates of analysis or similar documents concerning analysis of the purity or contents of valsartan, including the catalysts |

| DFS Request | Rule 34 Request |
|---|---|
| | and solvents used in the tetrazole ring process, and documents and communications concerning the same.<br><br>Request No. 27: Produce documentation identifying (1) each lot, batch, or other production quantity of valsartan manufactured, purchased, or sold by defendant (including discarded or recalled lots or batches), (2) the dates of manufacture for each, ….<br><br>Request No. 94: Produce all documents relating to the sale and distribution of valsartan that reflect NDC, batch number, and lot number.<br><br>Request No. 95: Produce documents sufficient to show all sales of valsartan to wholesalers, distributers, retailers, and consumers, including the total net sales, total number of pills and/or units sold, unit price, unit cost, profit margin, and market share by state or territory.<br><br>Request No. 97: Produce all communications received from any API manufacturer or finished dose manufacturer with regard to the manufacturing process, purity, bioequivalence or contamination relating to valsartan. |
| **Request II.F:** Identify the entity or entities to which you sold or distributed each Affected Drug listed in response to Question II.A, the date on which each sale or distribution occurred, the price, and all documentation provided to the purchaser or distributor in connection with that sale or distribution. | Request No. 10: All communications between or among any of the defendants with regard to (1) the manufacturing process, (2) testing capable of indicating purity, bioequivalence, or contamination, (3) quality assurance related to purity, bioequivalence, or contamination, (4) risk assessment with regard to contamination or the use of solvents, (5) medical and clinical assessments of risks related to impurity or contamination, (6) communications with regulatory agencies regarding bioequivalence, purity, or contamination, (7) terms or conditions of distribution, (8) sale numbers, (9) pricing, and (10) procurement or use of solvents, with regard to valsartan.<br><br>Request No. 26: Produce all certificates of analysis or similar documents concerning analysis of the purity or contents of valsartan, including the catalysts and solvents used in the tetrazole ring process, and documents and communications concerning the same.<br><br>Request No. 80: Produce all statements regarding purity, bioequivalence, and contamination provided to medical professionals, purchasers including TPPs, |

| DFS Request | Rule 34 Request |
|---|---|
| | consumers, wholesale distributors, retail pharmacies, and other direct and indirect purchasers of valsartan, for each NDC, Batch Number, and Lot Number of valsartan sold in the United States during the relevant time period.<br><br>Request No. 94: Produce all documents relating to the sale and distribution of valsartan that reflect NDC, batch number, and lot number.<br><br>Request No. 95: Produce documents sufficient to show all sales of valsartan to wholesalers, distributers, retailers, and consumers, including the total net sales, total number of pills and/or units sold, unit price, unit cost, profit margin, and market share by state or territory.<br><br>Request No. 107: Produce documents sufficient to show (i) the customers to whom you sold valsartan API or valsartan finished dose, (ii) unique identifiers for product sold (e.g., lot number, batch number, NDC code, etc.), (iii) quantities of valsartan API or valsartan finished dose sold, (iv) dates of sale, and (v) net and gross price per sale. |
| **Request II.G:** Identify the data you collect and store as part of Electronic Data Interchange 867 chargeback report, including the data fields, for each Affected Drug. | Request No. 107: Produce documents sufficient to show (i) the customers to whom you sold valsartan API or valsartan finished dose, (ii) unique identifiers for product sold (e.g., lot number, batch number, NDC code, etc.), (iii) quantities of valsartan API or valsartan finished dose sold, (iv) dates of sale, and (v) net and gross price per sale. |
| **Request II.H:** Identify any testing done on each batch or lot of Affected API listed in response to Question II.A that you were provided or conducted (1) to identify impurities, (2) to identify nitrosamines, and/or (3) that identified any impurity or artifact, including but not limited to a nitrosamine, (4) state the full result of that testing; and (5) your affirmative decisions, if any, to sequester or sell the Affected Drug containing the Affected API tested as a result of the foregoing. | Request No. 35: Produce all documents setting forth or addressing the results of any testing (including chromatography) of valsartan that had the potential to directly or indirectly identify impurities or contamination.<br><br>Request No. 37: Produce all documentation with regard to each notification to defendant of impurity or contamination of valsartan that was, or potentially was, due to a nitrosamine, whether or not identified as nitrosamine contamination at the time. […]<br><br>Request No. 44: Produce complete documentation of (a) all testing relevant to determination of purity, bioequivalence, or contamination, prior to any recall, of valsartan you manufactured or sourced, (b) all testing relevant to determination of purity, bioequivalence, or contamination, after any recall, of valsartan you |

| DFS Request | Rule 34 Request |
|---|---|
| | manufactured or sourced, (c) the results of the foregoing testing; (d) any such testing that was considered but not performed before or after any recall, including the reason(s) why such testing was not performed, and (e) to the extent any lot, batch, or other production quantity was not tested for impurities, bioequivalence or contamination, complete documentation with regard to the reason(s) why no such testing was performed. […]<br><br>Request No. 45: Produce complete documentation identifying each lot, batch, or other production quantity of valsartan, (a) confirmed to be contaminated and the quantification of the contamination; (b) assumed to have been contaminated and the quantification of the contamination; (c) confirmed not to be contaminated; (d) assumed not to be contaminated, and (e) confirmed or assumed to be contaminated.<br><br>Request No. 46: Produce complete documentation of any testing for any nitrosamine compound, … and any other nitrosamine or carcinogenic contaminant in valsartan….<br><br>Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan. |
| **Request II.I:** State whether you supplied each test result identified in response to Question II.G to the FDA or to any other entity or person (e.g., your actual or prospective customers), and, if so, identify the test result, and provide the recipient of the test result, date of communication and content of the communication. | Duplicative of core discovery, which required production of all communications with the FDA related to ARB recalls.<br><br>Request No. 10: All communications between or among any of the defendants with regard to … (2) testing capable of indicating purity, bioequivalence, or contamination, (3) quality assurance related to purity, bioequivalence, or contamination, (4) risk assessment with regard to contamination or the use of solvents, … (6) communications with regulatory agencies regarding bioequivalence, purity, or contamination….<br><br>Request No. 52: Produce all regulatory documentation and communications with regard to contamination or recalls of valsartan, as limited by the Court's Order.<br><br>Request No. 53: Produce all regulatory documentation and communications with regard to the use of solvents, tetrazole ring formation, and potential impurities or |

| DFS Request | Rule 34 Request |
|---|---|
| | contamination in connection with the manufacturing process for valsartan, as limited by the Court's Order on macro discovery issues (Dkt. 303).<br><br>Request No. 80: Produce all statements regarding purity, bioequivalence, and contamination provided to … purchasers including TPPs, consumers, wholesale distributors, retail pharmacies, and other direct and indirect purchasers of valsartan, for each NDC, Batch Number, and Lot Number of valsartan sold in the United States during the relevant time period. |
| **Request II.J:** Provide the date(s) on which you sent any recall notice to any Defendants or pharmacies identified in the PFS, or any of your actual or prospective customers of the Affected Drugs listed in response to Question II.A, including, but not limited to, pharmacy benefits managers, and attach the recall notice(s). | Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan.<br><br>Request No. 68: Produce all final recall notices with regard to contamination of valsartan.<br><br>Request No. 69: Produce all documents setting forth or addressing any communications with any customer or consumer relating to the recall (or non-recall) of valsartan due to contamination.<br><br>Request No. 71: Produce all communications with any person or entity to which, or from which, you purchased or sold valsartan, with regard to valsartan contamination.<br><br>Request No. 76: Produce all communications (and drafts) to or from Defendant regarding recall of valsartan related to valsartan contamination, including lists sufficient to show all persons or entities who received communications. |
| **Request II.K:** Identify all Affected Drugs that you have recalled or otherwise identified as actually or potentially contaminated with any nitrosamine or other carcinogenic substance. | Request No. 66: Produce complete documentation with regard to each implementation of a recall due to contamination of valsartan.<br><br>Request No. 68: Produce all final recall notices with regard to contamination of valsartan. |
| **Request II.L:** Were any Affected Drugs sold, distributed, labeled, or manufactured in whole or in part by you ever returned to your possession as a result of a recall letter, or finding or suspicion of contamination? If yes, please identify and produce: (1) The date you regained possession or control of the drugs; (2) The current location of the drugs; and (3) If any, the date and | Request No. 69: Produce all documents setting forth or addressing any communications with any customer or consumer relating to the recall (or non-recall) of valsartan due to contamination. |

| DFS Request | Rule 34 Request |
|---|---|
| result of any nitrosamine-related testing done on the returned drugs. | |
| **Request II.N:** Have you communicated directly with Plaintiff at any time? If yes, produce all documents evidencing or relating to that contact including video or audio recording of such contacts. | Request No. 69: Produce all documents setting forth or addressing any communications with any customer or consumer relating to the recall (or non-recall) of valsartan due to contamination.<br><br>Request No. 71: Produce all communications with any person or entity to which, or from which, you purchased or sold valsartan, with regard to valsartan contamination.<br><br>Request No. 80: Produce all statements regarding purity, bioequivalence, and contamination provided to … consumers … and other direct and indirect purchasers of valsartan, for each NDC, Batch Number, and Lot Number of valsartan sold in the United States during the relevant time period. |