UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE:                          )     19-MD-2875(RBK-JS)
                                )
                                )     Camden, NJ
VALSARTAN NDMA PRODUCTS         )     February 13, 2020
LIABILITY LITIGATION            )     4:03 p.m.


TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
BEFORE THE HONORABLE JOEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiffs:              ADAM M. SLATER, ESQUIRE
                                 MAZIE, SLATER, KATZ &
                                 FREEMAN, LLC
                                 103 Eisenhower Parkway
                                 2nd Floor
                                 Roseland, NJ 07068

                                 DANIEL NIGH, ESQUIRE
                                 LEVIN PAPANTONIO
                                 316 South Baylen Street
                                 Pensacola, FL 32502

                                 RUBEN HONIK, ESQUIRE
                                 GOLOMB & HONIK, PC
                                 1835 Market Street, Suite 2900
                                 Philadelphia, PA 19103

                                 CONLEE WHITELEY, ESQUIRE
                                 KANNER & WHITELEY, LLC
                                 701 Camp Street
                                 New Orleans, LA 70130

                                 GEORGE T. WILLIAMSON, ESQUIRE
                                 FARR LAW FIRM
                                 99 Nesbit Street
                                 Punta Gorda, FL 33950

For the Defendants:              SETH A. GOLDBERG, ESQUIRE
                                 DUANE MORRIS, LLP
                                 30 South 17th Street
                                 Philadelphia, PA 19103

                                 BRIAN RUBENSTEIN, ESQUIRE
                                 GREENBERG TRAURIG
                                 1717 Arch Street, Suite 400
                                 Philadelphia, PA 19103

APPEARANCES: (cont.)

For the Defendants:                JESSICA M. HEINZ, ESQUIRE
                                   CIPRIANI & WERNER
                                   450 Sentry Parkway, Suite 200
                                   Blue Bell, PA 19422

                                   JEFFREY D. GEOPPINGER, ESQUIRE
                                   ULMER & BERNE LLP
                                   600 Vine Street, Suite 2800
                                   Cincinnati, OH 45202

                                   JONATHAN D. JANOW, ESQUIRE
                                   BUCHANAN INGERSOLL & ROONEY PC
                                   1700 K Street N.W., Suite 300
                                   Washington, DC 20006

                                   KRISTEN L. RICHER, ESQUIRE
                                   BARNES & THORNBURG LLP
                                   2029 Century Park East,
                                   Suite 300
                                   Los Angeles, CA 90067

                                   ERIC I. ABRAHAM, ESQUIRE
                                   HILL WALLACK LLP
                                   The Galleria
                                   2 Bridge Avenue, Suite 211
                                   Red Bank, NJ 07701

Audio Operator:                    LAWRENCE MACSTRAVIC

Transcribed by:                    DIANA DOMAN TRANSCRIBING, LLC
                                   P.O. Box 129
                                   Gibbsboro, NJ 08026
                                   Office: (856) 435-7172
                                   Fax:    (856) 435-7124
                                   Email:  dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1                              I N D E X

2

3    COLLOQUY RE:                                      PAGE

4    Confidentiality designation                        5

5         Decision by the Court                          5

6    Service on foreign defendants                       5

7         Decision by the Court                          6

8    Downstream discovery                                7

9         Decision by the Court                          9

10   Short form complaint                               10

11        Decision by the Court                         11

12   Over-identification                                11

13        Decision by the Court                         12

14   Improvidently filed complaint                      12

15        Decision by the Court                         14

16   Plaintiff's fact sheet                             15

17        Decision by the Court                         15

18   Direct filing order                                16

19        Decision by the Court                         17

20   Master economic complaint                          17

21        Decision by the Court                         17

22   Third-party consultants                            18

23        Decision by the Court                         19

24

25

Colloquy                                        4

 1          (The following was heard via telephone conference

 2      at 4:03 p.m.)

 3              THE COURT:  This is Judge Schneider, can -- can you

 4      hear me?

 5              MR. SLATER:  Yes, sir.

 6              MR. GOLDBERG:  Yes.

 7              THE COURT:  Oh, great.  Is Mr. Slater on the line?

 8              MR. SLATER:  Yes, I am, Judge.

 9              THE COURT:  How about Mr. Goldberg?

10              MR. GOLDBERG:  Yes, Your Honor.

11              THE COURT:  Okay.  Dave -- Dave Brewer (phonetic),

12      are you on the line?

13          (No response)

14              THE CLERK:  Judge Schneider, this is Larry

15      MacStravic.  I'm in your courtroom.

16              THE COURT:  Okay.  Are we on the record, Larry?

17              THE CLERK:  We are recording, yes, sir.

18              THE COURT:  Okay, great.  I understand there's about

19      20-some odd people on the phone.  Why don't we get started and

20      whoever is going to talk, just say your name so when the

21      transcript is transcribed we know who's talking.  Okay?

22              I have the letters from Mr. Slater and Mr. Goldberg.

23      Why don't we just go down the issues in the letter.

24              There's two quick points I want to take out of order

25      and just get them out of the way.

1        The first issue has to do with the confidentiality

2   designation.  I heard from at least one party, maybe more,

3   that they want more time to meet and confer about this issue,

4   and I informed counsel, hopefully you got a copy of my email,

5   that I received Mr. Tressler's letter and it just doesn't cut

6   it to get a letter to say that documents should be

7   confidential.  The designation has to be supported by an

8   affidavit by someone with firsthand knowledge.

9        I know we have a time for a response brief from

10  plaintiff, but it seems to me we ought to set new deadlines to

11  give the defendants time to submit the required affidavit and

12  to give the parties time to meet and confer if they're going

13  to try and work this out.

14       So my inclination is to give the defendants three

15  weeks to meet and confer and if they can't work this out,

16  submit supporting affidavits and give plaintiffs two weeks

17  after that to brief the issue and then we'll just get it

18  decided.

19       Any objection?

20       MR. SLATER:  No objection from plaintiff.

21       MR. GOLDBERG:  No, Your Honor, no objection from

22  defendant.

23       THE COURT:  Okay.  I'll enter that order.

24       The second issue has to do with the service on the

25  foreign defendants.  I thought that all foreign defendants had

Colloquy                                                            6

1    been served now, but, Mr. Slater, from your letter, is there

2    one foreign defendant that hasn't entered an appearance?

3          MR. SLATER:  Right.  It's the -- I believe it's the

4    Aurobindo defendant, Aurobindo Pharma, and we -- we don't have

5    confirmation, but based on the timing, we believe that it

6    would have been appropriate to default them at this point.

7    And I believe the defendants agree, they couldn't confirm

8    either including Aurobindo's U.S. entities.

9          THE COURT:  I'm going to enter an order when I get

10   back to the office on Monday, I'm going to give Aurobindo

11   until the date we have the conference to enter an appearance.

12   If they don't enter an appearance by then, plaintiff has leave

13   to file for default.  And I think according to the rules, Mr.

14   Slater, you have to -- if you want to file for a default

15   judgment, you have to file a motion for that.  I don't think

16   we can skip that step.

17         MR. SLATER:  No problem.  Understood.

18         THE COURT:  So Aurobindo, I don't know if their

19   counsel's on the phone, from U.S., but they've had enough time

20   and this is their last chance.  If they don't enter their

21   appearance by the date of the conference at the end of the

22   month, then plaintiffs have leave to file a default.  We hope

23   that doesn't happen, but, you know, they've been given enough

24   chances.

25         Okay.  The issue -- the first issue in Mr.

Colloquy                                                        7

1    Goldberg's letter was the downstream discovery.  It sounds
2    like the parties are meeting and conferring on this issue and
3    by the end of the month we'll know what the disputes are.  Is
4    that right?
5              MS. WHITELEY:  That's correct, Your Honor.  This is
6    Conlee Whiteley on behalf of plaintiff.
7              THE COURT:  Okay.  That's fine.  No problem.
8              MS. RICHER:  Your Honor --
9              UNIDENTIFIED COUNSEL:  Your Honor --
10             MS. RICHER:  Your Honor, this is --
11             THE COURT:  Yes.
12             MS. RICHER:  -- this is Kristen Richer on behalf of
13   the retailers.  Just to add to that, I do think that's right.
14   As the -- as both letters noted, we are -- both we and the
15   wholesalers are in the process of working on red lines to send
16   plaintiff that reflect our conversations.
17             We do think that as that process continues to
18   develop, there will be some global issues that are ripe for
19   the Court's consideration.  But what we would propose perhaps,
20   though, is a process more similar to what happened with the
21   manufacturing defendants in that after the parties have had an
22   opportunity in the next week or so to confer about the red
23   lines exchanged, to agree on a briefing schedule where we
24   could key those issues up for the Court in a more organized
25   fashion than to wait and presenting them at the last minute in

1   a letter brief to the Court, so that -- so that the Court has

2   the benefit of the most current red line at that point and

3   also the parties considered views and responses to one another

4   on those issues.

5           I do think that looking at the timing of the next

6   conference that that process would be a bit rushed, and that a

7   slightly longer process would benefit both the parties and the

8   Court in keying these things up in a way that's organized and

9   helpful for all involved and that sufficiently narrows the

10  issue.

11          So we would propose that to the Court and perhaps

12  our suggestion would be that we -- we confer with plaintiff on

13  those issues as we confer about the red lines next week, and

14  that we come to the next conference with a schedule for -- for

15  presenting those issues to the Court, rather than the hurried

16  process of getting those into a letter brief in a jam for the

17  next conference.

18          MS. WHITELEY:  Your Honor, this is Conlee Whiteley.

19  This was not raised during our meet and confer, but I would

20  just remind the Court that this was brought up in December and

21  we decided against that approach, and the plaintiffs remain

22  willing to work on this as diligently as possible and have the

23  Court narrow the issues at the end of the month.

24          MS. RICHER:  I do think that that was discussed in

25  -- this is Kristen again, Kristen Richer.  I do think that was

Colloquy                                                                  9

1    discussed in December.  I think, you know, what the last few

2    weeks and it's our position generally is that this is -- these

3    are very, very complicated issues, that there are a number of

4    parties involved, and I do think that we've made progress, but

5    I -- I don't think that the next week or so is going to result

6    in us having these issues sufficiently keyed up for the Court.

7    We think that everyone would benefit here from a more measured

8    process to allow the parties to continue to meet and confer.

9             THE COURT:  Why don't we do this, counsel, and --

10   and this will be a middle ground, why don't you at least agree

11   in time for the last conference, the conference at the end of

12   the month, to at least identify what their "macro" issues are.

13   Don't brief them, just identify them.  We'll discuss them at

14   the conference.  But if people want to brief them and they

15   want more time, they'll get more time.  But maybe if we at

16   least know what the issues are, we can make some progress.

17            MS. WHITELEY:  Yes, Your Honor.

18            THE COURT:  Okay, counsel?

19            MS. WHITELEY:  Yes.

20            MS. RICHER:  Yes, Your Honor, that will be fine.

21            THE COURT:  Okay.  So let's just say for the non-

22   manufacturing defendants, the "macro" issues will be

23   identified in the status letter or a separate letter in time

24   to discuss, but not necessarily decide at the conference at

25   the end of the month.  Okay?

1          MS. WHITELEY:  Okay.  Thank you, Your Honor.

2          MS. RICHER:  Thank you.

3          THE COURT:  Next issue on the agenda was the short

4     form complaint issue.  Mr. Slater, what can we do to wake

5     these people up?

6          MR. SLATER:  Well, the first thing would be if the

7     defense would actually -- unless we missed something, and I

8     emailed my whole group, but let us know that they have this

9     issue and then give us notice of it and tell us who's doing it

10    so we can reach out to those folks individually, that would be

11    a great starting point.  Because then we can look at the short

12    form complaints that they're talking about here.  We can see

13    if we agree.  We can try to work through it with our group.

14    The first notice that I had of this issue was when I received

15    Mr. Goldberg's letter.

16         THE COURT:  I thought they did identify the

17    complaint at issue as an exhibit to their letter.

18         MR. SLATER:  What I'm saying is, they may have done

19    it in a letter, it's just that we had no notice of this issue

20    before last night.  So I think the best way to proceed with

21    this is if there's an issue like this, if the defense would

22    bring it to us and we can then talk with the plaintiffs on the

23    issue and look at the complaints and try to intercede and work

24    through it to avoid having to go to the Court with it, if

25    possible.  If there's a disputed area, I would think we could

Colloquy                                                    11

1    at least try to narrow it or eliminate the dispute.

2              THE COURT:  Okay.  Why don't you do this.  Between

3    now -- now that you have the list, Mr. Slater, can someone in

4    your group just shake the tree and get these people to do what

5    they're supposed to do.  The last thing in the world we want

6    to do is to issue an order to show cause for some

7    administrative issue.  So if it's not done by the end of the

8    month, our hands are tied and we're going to have to do it.

9    Okay?

10             MR. SLATER:  We have very good tree shakers.  We'll

11   assign them.

12             THE COURT:  Next issue, this is a real issue, this

13   issue of over-identification.  You know, I haven't researched

14   the issue, but I -- I believe that the Court and the short

15   form complaint are subject to Rule 11.  And if people are just

16   checking boxes willy-nilly, that's not kosher.  And, you know,

17   from day one we've said in the case we're going to hold

18   defendant's feet to the fire and we're gonna do the same for

19   the plaintiff.

20             So if plaintiffs think -- not you, obviously, not

21   probably anyone on this call, thinks that they can just check

22   every box and get away with it, I think that's unacceptable.

23   Defendants have a right to know if they're in the case or not

24   and I don't think it's asking too much of the plaintiff if

25   they file a claim and set course (phonetic) that they'll have

1    to do a little bit of due diligence and find out from their

2    clients who they got their drug from.

3              So I'm not going to --

4              MR. SLATER:  Judge, we don't disagree -- we don't

5    disagree, Judge.  I thought that was the same issue we just

6    talked about with the short form complaints that we were to

7    get to these people.

8              THE COURT:  Okay.  Why don't we address it at the

9    end of the month.  But I would get the message to these "over-

10   identification" people, the Court's going to hold their feet

11   to the fire; they just can't check the boxes.  They gotta do

12   due diligence and do a reasonable investigation, and no one

13   wants to go around Rule 11 and get involved with Rule 11.  So

14   hopefully they can file an amended complaint and just name the

15   parties who are appropriate and belong in their client's case.

16   Okay?

17             MR. NIGH:  Your Honor --

18             MR. SLATER:  Understood.

19             MR. NIGH:  Your Honor, this is Daniel Nigh.  I was

20   -- I was hoping that we could follow a procedure like we did

21   in Benicar where we labeled these kinds of cases improvidently

22   filed cases and they would show up on the docket a few months,

23   you know, and then at that second work agenda for hearing,

24   then they would be answered in orders to show cause and they

25   would have to, you know, put in why they still have this

Colloquy                                    13

1   improvidently filed case --

2              THE COURT:  Right.  Right.

3              MR. NIGH:    -- at the third hearing.  And that --

4   that seemed to work well because it gave us time, you know, to

5   work out these issues with plaintiff's counsel.

6              I just -- one thing I noticed was, even a lot of our

7   cases was on there for failing to file short form complaints.

8   We just got notice of it last night and I found out that

9   that's a medical monitoring plaintiff's case, which was not

10  subject to PML-13 to file a short form complaint.  So I think

11  we could have worked that out with defendants and, you know,

12  we should be able to work out issues like that with

13  defendants, this should never come to the Court.

14             THE COURT:  Okay.  Well, that's a good idea, Mr.

15  Nigh.  We'll start the process at the end of the month.  We'll

16  find out -- Mr. Goldberg's group will update the FG list and

17  we'll start issuing orders to show causes.

18             MR. SLATER:  And, Your Honor, if I can also request

19  that when they list their name of the case, if they could also

20  list the name of the law firm.  That helps in terms of -- you

21  know, centralizing when people look at this agenda, you know,

22  they can see their law firm name and they can process

23  (inaudible).

24             THE COURT:  Yes.  I don't think that's a big burden,

25  so I think if the defendant could do that, that would be

Colloquy                                          14

1    helpful.

2              MR. RUBENSTEIN:  Your Honor --

3              THE COURT:  Okay.

4              MR. RUBENSTEIN:  -- this is Brian Rubenstein.  Your

5    Honor, sorry, just before we leave this issue, this is Brian

6    Rubenstein on behalf of the defendants from Greenberg Traurig.

7              I think we're conflating two separate issues here.

8    There's -- there's the one issue for the short form complaints

9    that are, well, I guess we're calling improvidently filed, and

10   that's where they're either not filed with MDL centrality or

11   served incorrectly through MDL centrality, or they've been

12   untimely filed.  And that's -- that's a batch of the cases.

13   Right now I think there's about eight of them.

14             But then there's a separate issue where the

15   plaintiffs are just checking all the boxes, whether they're

16   checking all the boxes for all groups of defendants or, you

17   know, all the manufacturers or everything above the retailers.

18   But these are two separate issues, you know, and it seems like

19   they're getting combined into one.

20             THE COURT:  No, I -- I think you're right, counsel.

21   This is what I'm going to do, okay?  I think you're right

22   about the "improvidently" filed complaint.  We're talking

23   about the check boxes and Rule 11 issue.

24             To the extent that issue is not worked out by the

25   end of the conference, I'm going to order counsel to be

Colloquy                               15

1    present in person to explain their complaint and then we'll

2    get to the bottom of it.  The odds are pretty good by the time

3    they have to appear in Camden, they're going to file an

4    amended complaint.  And if not, we'll find out what's going

5    on.  Okay?

6            MR. RUBENSTEIN:  Thank you, Your Honor.  Yep.

7            THE COURT:  But I -- I agree with you that they're

8    two issues.  One is an administrative issue and the other is a

9    substantive issue, making sure that due diligence is done to

10   name the right parties.

11           Okay.  Next issue is the plaintiff's fact sheet.

12   You know, on the issue of whether medical monitoring fact

13   sheets should be filed, I think the answer is no, unless

14   they're a named class plaintiff.  I don't think there's any

15   dispute about that.  And as to the issue of the objection,

16   clearly the objection is overruled.  And the reason we spent

17   so much time working on the fact sheet is because we resolved

18   all objections, they're Court ordered, and they have to be

19   answered.

20           So to the extent that someone asserts an objection,

21   I would suggest the defendants notify them the objection is

22   overruled.  I'll put that in an order when I get back on

23   Monday.  And if they don't supplement their response, they'll

24   go on the order to show cause list.  Okay?

25           MR. GOLDBERG:  Understood.

Colloquy                                          16

1              THE COURT:  Next issue is the direct filing order.

2     I have to tell you, I thought it would be easy, but I learned

3     my lesson.  We'll let the parties work it out amongst

4     themselves.

5              Plaintiff, email my office your proposed version of

6     the order, okay?

7              MR. SLATER:  Yes.

8              THE COURT:  Do it today or tomorrow.  Anyone who

9     objects, file your objections by next Friday, I'll enter the

10    order.  Your objection --

11             UNIDENTIFIED COUNSEL:  Your Honor --

12             THE COURT:  -- will get entered.  Let me just tell

13    you, counsel, what I envision is, I get the whereas clauses,

14    they would just add the two sartans to the last order, as an

15    accommodation to your group, we would sue (inaudible)

16    defendant and say you're not waiving any objections.  It

17    couldn't be more simple.  I don't know why this is so

18    complicated.

19             MR. JANOW:  I understand -- Your Honor, this is --

20    this is John Janow for -- for Albertson and on behalf of the

21    various objecting defendants.  Let me take a moment just to

22    assuage the Court's concerns here.

23             We -- you know, we have engaged with the plaintiffs

24    over the course of the last week in good faith to try to come

25    to an agreement and we've exchanged drafts back and forth

Colloquy                                    17

1    between the parties.  I actually think we're very close, and

2    the parties are going back and forth and we were only just

3    sent today the -- the plaintiff's red line which we're

4    reviewing and we, you know, are intending to again continue to

5    meet and confer and try to resolve this so we can have an

6    agreed order submitted to the Court.

7              I would suggest respectfully and request that we be

8    permitted to finish that, you know, this week, in -- in

9    accordance with the February 14th deadline that Your Honor

10   ordered in the January 30th order.  We've been working in good

11   faith toward that deadline and trying to do precisely what you

12   suggested, which is come to an agreed, simplified order to get

13   this -- to get this effectuated, understanding the various

14   objecting parties' objections and the Court's desire to

15   implement direct filing over those objections.

16             THE COURT:  Counsel, this is the Court order.  The

17   Court order is, if you don't agree on a final order by

18   tomorrow, plaintiff, email your version of the order;

19   defendant, serve your objections no more than a week.  I'll

20   enter the final order.  This -- it's just -- this should have

21   been so simple.  I don't know why it's so complicated.  You

22   just had to add two words to the last order, as far as I'm

23   concerned.

24             Next issue, the master economic complaint.

25   Plaintiffs want to add defendants.  Plaintiff, file a motion.

1    The local rules provide that when you file a motion to amend,

2    you have to attach the proposed amended pleadings and you have

3    to indicate if there's any objection from the other parties.

4            I don't need a long brief on it; one paragraph.  I

5    know what the law is.  And hopefully when the parties see the

6    proposed amended complaint, they'll have no objection.  But if

7    there is, we'll deal with it.  Okay?

8            MR. SLATER:  Yes, Your Honor.

9            THE COURT:  Let me just see if there's any other

10   issue.  We talked about the Aurobindo issue and the third-

11   party consultants with authority.  I can always enter an

12   order, but I thought the parties were going to work this out.

13           MR. GOLDBERG:  Again, Your Honor, I think the

14   parties are going to meet and confer on that.  I think there

15   was a -- I think plaintiff's request was just that it had --

16   that had not put into an order.

17           MR. SLATER:  Our -- I think our issue -- this is

18   Adam Slater.  I'm not really sure what there is to meet and

19   confer on after this.  We discussed it at the last conference.

20   Our understanding is, we thought it was going to be ordered,

21   but in either the case the defense was going to just disclose

22   who the third-party consultant's intermediaries are so we'll

23   know who to look for in the documents and be able to evaluate

24   the core discovery and make decisions on discovery.  We're not

25   sure what there is to meet and confer on it, because if

Colloquy                                            19

 1   they're communicating with the FDA on behalf of the

 2   defendants, there's no basis to not tell us who they are.

 3            THE COURT:  If the issue is not worked out by the

 4   end of the month, I'll issue the order, Mr. Slater.  Okay?

 5            MR. SLATER:  Thank you, Your Honor.

 6            THE COURT:  The last issue I want to address, and

 7   then we'll open the floor to any issue the parties want to

 8   address.

 9            I spoke to Judge Kugler.  He and I are both

10   concerned about what effect the situation in China has on the

11   progress of the case.  Obviously, it puts Mr. Slater's client

12   -- not Mr. Slater, Mr. Goldberg's client in an extremely

13   difficult position.  We understand and we have to deal with

14   it.  We don't know if that is going to affect plaintiff's

15   strategy.  We don't know how that's going to affect the

16   general progress of the case.

17            So this is what I'd like to do.  Judge Kugler is not

18   going to be present, he's going to be out of town for the

19   meeting at the end of the month.  So what I'd like to do is

20   this, and I'm going to coordinate with Mr. Slater and I'm

21   going to coordinate with Mr. Goldberg, I want to meet with

22   counsel informally in the morning at the end of the month and

23   talk about general strategy in the case, where we're going,

24   how we can efficiently manage this case, and focus on the

25   genuine issues in dispute, and then we'll have a general

1    status meeting on the record at 2:00.

2             I think we can get a lot done if we sit in a room

3    off the record and just talk informally to try and move this

4    case forward.  I'll coordinate with Mr. Slater and Mr.

5    Goldberg about their suggestions about who should be present,

6    but that's what we'll do at the end of the month.  We'll --

7    we'll have a general status meeting in the afternoon, and

8    we'll meet informally in the morning at 9:30 or 10.  Hopefully

9    we can get a lot accomplished, and then go on the record for

10   whatever we need to go on the record for.

11            But just inform your groups, those people who aren't

12   in the -- who aren't in the leadership positions, that if they

13   want to come to the general status meeting, it's going to

14   start at 2:00.  And I'll be back -- I'm back in the office --

15   well, we're closed on Monday, but I'll be back in town on

16   Monday, so you'll get emails from me and hopefully we can have

17   some suggestions about how we can be most productive.

18            MR. SLATER:  That sounds great, Judge, thank you.

19            THE COURT:  Okay.  That's all the issues I wanted to

20   discuss.  Let me give you the floor, plaintiff, do you have

21   any issues you want to address?

22            MR. SLATER:  I don't believe so, unless someone else

23   has an issue I don't know of, Judge.

24            MR. GOLDBERG:  No issues for defendant, Your Honor.

25            THE COURT:  Okay.  We're closed on Monday, so

1    hopefully I can get this order entered on Tuesday or

2    Wednesday.  And, Mr. Goldberg, Mr. Slater, you'll hear from me

3    by email before then.

4            Thank you very much everybody.  We're adjourned.

5            MR. SLATER:  Thank you.

6            MR. GOLDBERG:  Thank you, Judge.

7            ALL:  Thank you, Your Honor.

8        (Proceedings concluded)

9                          * * * * *

10

11                  C E R T I F I C A T I O N

12            I, Roxanne Galanti, court approved transcriber,

13    certify that the foregoing is a correct transcript from the

14    official electronic sound recording of the proceedings in the

15    above-entitled matter.

16

17    _____        February 20, 2020

18    ROXANNE GALANTI

19    DIANA DOMAN TRANSCRIBING, LLC

20

21

22

23

24

25