IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA), LOSARTAN, and IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **Master No. 19-2875(RBK/JS)** <br><br> **This Order Pertains to:** |
| **Marcia Cantrell v. Zhejiang Huahai Pharmaceutical Co., LTD., et al.** | Civil No. 19-14891(RBK/JS) |
| **James Mullins v. Zhejiang Huahai Pharmaceutical Co., LTD., et al.** | Civil No. 19-15043(RBK/JS) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on identical Motions to Withdraw as Counsel filed by the attorney for two individual personal injury plaintiffs. Oral argument is not necessary. Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, counsel's motions are DENIED.

Background

This Multidistrict Litigation ("MDL") arises out of plaintiffs' alleged ingestion of "valsartan-containing drugs" containing impurities. In July 2019, plaintiffs directly filed in this District essentially identical complaints alleging they developed colon cancer "as a result of taking an adulterated,

misbranded, and unapproved medication designed, manufactured, marketed, distributed, packaged, and sold by Defendants." See Complaints ¶2. Plaintiffs filed court-approved "Short Form Complaints" on September 11, 2019.[1] The docket reveals that plaintiffs' counsel currently represents at least thirty-three (33) individual plaintiffs, each of whom filed a separate personal injury complaint.

On February 14, 2019, the Judicial Panel on Multidistrict Litigation ("JPML") centralized in this court the valsartan cases filed in federal courts around the country.[2] Since that time the Court and parties have worked diligently to organize and manage the litigation. On October 3, 2019 the Court entered Case Management Order No. 16 [Doc. No. 249] which approved "Fact Sheets" to be answered by all personal injury plaintiffs. Plaintiffs who do not answer the Fact Sheets are subject to a "Show Cause Process" that may ultimately result in the dismissal of their cases. Although not explicitly set forth, the Court surmises counsel's motions arise out of her unsuccessful attempts to contact her clients in order to answer plaintiffs' Fact Sheets.

Plaintiffs' counsel filed identical pro forma Motions to Withdraw on January 15, 2020. The Court summarily denied the

---

[1] Cantrell's SFC alleges she has "precancerous colon polyps." Mullins alleges he contracted colon cancer.
[2] On December 18, 2019 the JPML expanded this MDL to include losartan and irbesartan.

2

motions the next day because "counsel's bare-bones motion[s] provide[d] no facts or basis for the Court to determine whether counsel's motion[s] should be granted." Plaintiffs' counsel re-filed the instant two-page unsupported Motions to Withdraw on February 4, 2020. The motions do not add much to what was originally filed. Ordinarily, given counsel's perfunctory motions they would be summarily denied. However, since the subject of counsel's motions are capable of repetition, and counsel did not "get the message" after the Court's previous ruling, a more detailed discussion is appropriate.

As noted, counsel's motions are perfunctory. The motions merely state in conclusory language that "counsel has not been able to make contact with Plaintiff[s]." Although counsel writes she has made "reasonable attempts" to notify plaintiffs that failure to return calls and communications will result in a Motion to Withdraw, no supporting facts are provided. The same is true for counsel's statement that she has used "reasonable efforts" to determine if the plaintiffs moved. Counsel merely writes "upon information and belief, the plaintiff[s] still remain[] at the same address[es]." Counsel concludes she is "without authority to proceed" and, therefore, requests permission to withdraw so that plaintiffs may attempt to obtain substitute counsel.

Discussion

Pursuant to L. Civ. R. 102.1, unless other counsel is substituted, withdrawal of counsel requires leave of court. Rusinow v. Kamara, 920 F. Supp. 69, 71 (D.N.J. 1996). In deciding whether to permit an attorney to withdraw, the Court should consider: 1) the reasons why withdrawal is sought, 2) the prejudice withdrawal may cause to other litigants, 3) the harm withdrawal might cause to the administration of justice, and 4) the degree to which withdrawal will delay the resolution of the case. Ultimately, whether to permit withdrawal is within the Court's discretion. Id. at 71. Further, the Court may refuse to permit an attorney to withdraw despite a showing of good cause. Haines v. Liggett Group, Inc., 814 F. Supp. 414, 422-23 (D.N.J. 1993).

In this District courts look to the New Jersey Rules of Professional Conduct ("RPC") with regard to issues of professional conduct. "When interpreting the RPC, the Court looks to New Jersey's state courts' interpretation of the RPC as primary authority and modifies it when required by federal law." Delso v. Trustees for Ret. Plan for Hourly Employees of Merck & Co., Inc., C.A. No. 04-3009 (AET), 2007 WL 766349, at *5 (D.N.J. March 6, 2007). Here, counsel argues she is unable to communicate with her clients and, therefore, her motions should be granted. Although not set forth, counsel presumably seeks to withdraw pursuant to

4

RPC 1.16(b)(5),(6), or (7). RPC 1.16(b)(5) provides that a lawyer may withdraw from representing a client if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled." RPC 1.16(b)(6) provides that a lawyer may withdraw if the representation "has been rendered unreasonably difficult by the client." RPC 1.16 (b)(7) provides that a lawyer may withdraw for "other good cause."

The Court agrees that ordinarily if clients knowingly and willingly refuse to communicate and cooperate with their lawyer the lawyer may withdraw after giving adequate written notice to the client. See First Franklin Fin. Corp. v. Rainbow Mortg. Corp., C.A. No. 07-5440 (JBS/AMD), 2008 WL 11381896, at *2 (D.N.J. Oct. 24, 2008) (citing Ramada Worldwide Inc. v. NPR Hospitality Inc., C.A. No. 06-4966, 2008 WL 163641, at *2 (D.N.J. Jan. 16, 2008)(good cause to withdraw as counsel exists where a lawyer is unable to contact his clients and the clients fail to fulfill the obligation to cooperate and assist in their defense). The problem with counsel's motions, however, is that the motions are not supported by any facts. The Court does not know, for example, if counsel attempted to communicate with her clients by phone, mail, email or in-person. Nor does the Court know when counsel's communications took place or how many times the communications were allegedly

5

ignored. In addition, the Court does not know what efforts counsel took to learn whether her clients moved or endured an unexpected event that rendered them unable to communicate for a finite period of time. In short, counsel's motions are too general and cursory to grant. The motions do not enable the Court to legitimately conclude that counsel's clients abandoned the case. Based on the present record, it is just as likely that counsel's clients inadvertently or otherwise innocently failed to respond to communications as it is they deliberately ignored counsel. As the Court already ruled, it will not permit counsel to withdraw based on a "bare-bones" record.

The judiciary has the duty to preserve the fiduciary responsibility that lawyers owe their clients. Cohen v. Radio-Electronics Officers Union, Dist. 3, NMEBA, 146 N.J. 140, 155 (1996). To this end, the Court must assure that an attorney that seeks to withdraw from a case because a client is allegedly incommunicado takes all reasonable steps to locate and contact the client and notify him or her of the intent to withdraw. Moving counsel has not sufficiently satisfied her burden. An unsworn statement in counsel's motions is not admissible evidence. See Danish Crown Amba v. Rupari Food Services, Inc., C.A. No. 10-4603 (MAS) (TJB), 2016 WL 830803, at *1 (D.N.J. March 2, 2016; see also Kim v. World Savings Bank, F.S.B., C.A. No. 09-2637 (JLL), 2009 WL 5205457, at *3 (D.N.J. Dec. 23, 2009). The Court needs to know

whether counsel's clients abandoned the case or if there is an innocent or good cause reason for their failure to communicate. Counsel's motions are deficient in this regard.

The Court emphasizes that it has no reason to believe that plaintiffs' counsel is not appropriately representing her clients' interests. However, especially in the MDL context where moving counsel represents multiple clients, the Court needs to be especially diligent that a client's interests are protected. It unfortunately appears to be the case that in MDL cases not every individual client gets the full attention of their lawyers.[3] The record reflects that plaintiffs' counsel currently represents approximately 33 individual clients. Given this workload, it might be tempting to abandon a client who "rocks the boat." Again, the Court has no reason to believe this occurred. But, it can only be satisfied that the interests of counsel's clients are protected if facts are presented to support counsel's motions to withdraw, not halfhearted applications. In and of itself the bare assertion

---

[3] "A lawyer who simultaneously represents hundreds or thousands of similarly situated plaintiffs does not have significant personal involvement with each client, and does not engage each client in the sort of consultation over the conduct of litigation envisioned by traditional principles of professional responsibility." Howard M. Erickson, Beyond the Class Action: Lawyer Loyalty and Client Autonomy in Non-Class Collective Representation, 2003 U. Chi. Legal F. 519, 533 (2003); "Problems arise when lawyers represent multiple claimants whose situations differ[.]" Christopher B. Mueller, Taking a Second Look at MDL Product Liability Settlements: Somebody Needs to Do It, 65 U. Kan. L. Rev. 531, 553 (March, 2017).

that a client does not respond to letters or emails is not a sufficient reason to grant a Motion to Withdraw.

Moreover, RPC 1.16(b)(1) provides that a lawyer may only withdraw from representing a client if "withdrawal can be accomplished without material adverse effect on the interests of the client." Unless the Court requires a more fulsome application from counsel it cannot be certain this requirement is met. It is undoubtedly the case that if counsel withdraws from the case her clients will be materially prejudiced. The chances of a new attorney entering an appearance for a problematic client are slim. Further, it is hard enough for a pro se party to navigate a routine federal court case. The complexity of proceedings is multiplied in the MDL context. Further, not only will plaintiffs be prejudiced if their counsel withdraws, so too will the judicial administration of the case. The presence of pro se parties is bound to bog down the proceedings. This is not to say that counsel can never withdraw. To the contrary, if a client abandons a case an attorney has a right to withdraw. But, however, the Court insists that before withdrawal is granted all reasonable means to locate and notify the client be exhausted. This requirement is consistent with New Jersey law. Lawyers owe a fiduciary responsibility to their clients. Cohen, 146 N.J. at 155 (courts are "committed to preserving the fiduciary responsibility that lawyers owe their clients"); In the matter of Callis N. Brown, 88

N.J. 443, 448 (1982). ("The attorney-client relationship is a fiduciary one, involving the highest trust and confidence."). An attorney must look out for the best interests of the client. Estate of Spencer v. Gavin, 400 N.J. Super. 220, 242 (App. Div. 2008). Although New Jersey law imposes duties of fairness, good faith, and fidelity upon all fiduciaries, "an attorney is held to an even higher degree of responsibility in these matters than is required of all others." Id. (quoting In re Honig, 10 N.J. 74, 78 (1952)). Given the resources available on the internet and otherwise, and the sophistication of retained private investigators, it is not far-fetched to think that counsel's clients can be located and contacted with a modicum of effort. This will enable counsel and the Court to know for sure whether counsel's clients abandoned the case of if there is a good reason for their failure to respond to counsel's communications.

The Court agrees with and adopts the holding in Garrett (formerly Matisa) v. Matisa, 394 N.J. Super. 468 (Ch. Div. 2007). In Garrett the court addressed the issue of "what must an attorney do to satisfy the duty to notify a client of the intention to withdraw when the client has moved without disclosing a new phone number or address.". Id. at 470. In ruling on the issue, the court denied an attorney's motion to withdraw because efforts to communicate with the client were not sufficiently diligent and documented. The Court wrote, "an attorney is compelled to search

9

diligently for his or her client, notwithstanding the client's possible breach in failing to keep the attorney informed of his or her whereabouts." Id. at 473. This duty is consistent with R.P.C. 1.16(d) directing an attorney to take steps "to the extent reasonably practicable" to protect a client's interests. Id. at 472; see also R.P.C. 1.13 ("A lawyer shall act with reasonable diligence…in representing a client."). As noted in Garrett, "[t]he court reads these two rules to encompass a duty to inquire diligently about a client's whereabouts." Id. at 475.

What is a diligent effort is a fact specific inquiry. "What constitutes a reasonable effort to find the client depends on the circumstances of each case, including the extent to which the lawyer knows or has access to information which might reveal the client's current whereabouts." Id. at 474 (citation omitted). The search may or may not include an inquiry of the client's whereabouts with the post office, motor vehicle records, close friends, a search of public information such as voting records, or inquiries of other family, friends, or professionals who know the client's whereabouts. Id. at 476-77.[4] At bottom, counsel must demonstrate that she has exhausted all reasonable efforts to locate and contact her client.

---

[4] Unlike Garrett, the Court does not require publication of counsel's motion if the clients' whereabouts are not discovered after diligent efforts to locate them. Id. at 477.

The Court repeats what it previously wrote in another MDL. No matter how many different clients a lawyer represents, the lawyer owes a duty of zealous representation to each individual. McDaniel v. Daiichi Sankyo, Inc., 343 F. Supp. 3d 427, 434 (D.N.J. 2018). This obligation is not mitigated because a lawyer represents multiple plaintiffs. An attorney does not have the right to withdraw as counsel for his or her client at his or her whim. "A sudden disenchantment with a client or a cause is no basis for withdrawal." Id. at 432 (citation omitted). An attorney has certain obligations and duties to a client once representation is undertaken, and the obligations in this respect "do not evaporate because the case becomes more complicated or work more arduous or a retainer not as profitable as first contemplated or imagined." Id. (citation omitted). Even if it takes a bit more "elbow grease" to protect a client's interests, the effort must be undertaken.

Conclusion

For all the foregoing reasons, moving counsel's Motions to Withdraw are denied.

**ORDER**

Accordingly, it is hereby ORDERED this 27th day of February, 2020, that counsel's Motions to Withdraw are DENIED without prejudice; and it is further ORDERED as follows:

1. All future Motions to Withdraw shall comply in all respects with L. Civ. 7.1 (Application and Motion Practice).

2. All Motions to Withdraw shall include an affidavit attesting to all efforts to contact, locate and identify moving counsel's clients and to notify them of counsel's motion.[5]

3. All affidavits shall comply with L. Civ. R. 7.2(a) mandating that no argument is permitted and requiring that all assertions of fact be based on personal knowledge.

                            s/ Joel Schneider
                            JOEL SCHNEIDER
                            United States Magistrate Judge

---

[5] The affidavit must fully specify "the inquiry made, of what persons and in what manner, so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice." Garrett, 394 N.J. Super. at 475 (citation and quotation omitted).