```
  1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEW JERSEY
  2

  3   ═══════════════════════════                CIVIL ACTION NUMBER:
      IN RE:  VALSARTAN PRODUCTS
  4   LIABILITY LITIGATION                       1:19-md-02875-RBK-JS

  5   _____             STATUS CONFERENCE

  6        Mitchell H. Cohen Building & U.S. Courthouse
           4th & Cooper Streets
  7        Camden, New Jersey  08101
           Wednesday, February 26, 2020
  8        Commencing at 2:30 p.m.

  9   B E F O R E:              THE HONORABLE JOEL SCHNEIDER,
                                UNITED STATES MAGISTRATE JUDGE
 10

 11   A P P E A R A N C E S:

 12        MAZIE SLATER KATZ & FREEMAN, LLC
           BY:  ADAM M. SLATER, ESQUIRE
 13        103 Eisenhower Parkway
           Roseland, New Jersey 07068
 14        For the Plaintiff

 15        GOLOMB & HONIK PC
           BY:  RUBEN HONIK, ESQUIRE
 16        1835 Market Street, Suite 2900
           Philadelphia, Pennsylvania 19103
 17        For the Plaintiff

 18        KANNER & WHITELEY LLC
           BY:  CONLEE S. WHITELEY, ESQUIRE
 19             LAYNE CLARK HILTON, ESQUIRE
           701 Camp Street
 20        New Orleans, Louisiana 70130
           For the Plaintiff

 21

 22
                Karen Friedlander, Official Court Reporter
 23                 friedlanderreporter@gmail.com
                         (856) 756-0160
 24
                Proceedings recorded by mechanical stenography;
 25         transcript produced by computer-aided transcription.
```

1  **A P P E A R A N C E S: - CONTINUED**

2

3  DUANE MORRIS LLP
   BY:  SETH A. GOLDBERG, ESQ.
        BARBARA A. SCHWARTZ, ESQUIRE
4  30 S. 17th Street
   Philadelphia, Pennsylvania 19103
5  For the Defendant ZHP and the Joint Defense Group

6  PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
   BY:  CLEM C. TRISCHLER, ESQUIRE
7        JASON M. REEFER, ESQUIRE
   One Oxford Centre, 38th Floor
8  Pittsburgh, Pennsylvania 15219
   For the Defendant Mylan and the Joint Defense Group
9
   GREENBERG TRAURIG LLP
10 BY:  LORI G. COHEN, ESQUIRE
   3333 Piedmont Road, NE, Suite 2500
11 Atlanta, Georgia 30327
   For the Defendant Teva and the Joint Defense Group
12
   HILL WALLACK LLP
13 BY:  ERIC I. ABRAHAM, ESQUIRE
   21 Roszel Road
14 Princeton, NJ  08540
   For the Defendant, Hetero Labs Ltd.
15
   BARNES & THORNBURG LLP
16 BY:  SARAH E. JOHNSTON, ESQUIRE
   2029 Century Park East, Suite 300
17 Los Angeles, CA  90067-2904
   For the Defendant, CVS Health Co.
18
   CIPRIANI & WERNER, P.C.
19 JESSICA M. HEINZ, ESQUIRE
   450 Sentry Parkway, Suite 200
20 Blue Bell, PA  19422
   For the Defendant, Aurobindo Pharma USA, Inc., Aurolife
21 Pharma, LLC and Aurrobindo Pharma, Ltd.

22 NORTON ROSE FULBRIGHT
   BY:  D'LESLI M. DAVIS, ESQUIRE
23 1301 Avenue of the Americas
   New York, NY 10019-6022
24 For the wholesalers and McKesson individually

25

1          THE DEPUTY CLERK:  All rise.

2          (OPEN COURT, February 26, 2020, 2:30 p.m.)

3          THE COURT:  Good afternoon, everyone.  Please be

4    seated.  We're on the record in re:  Valsartan, Docket No.

5    19-2875.

6          For purposes of the record, the Court met with

7    leadership counsel starting at 10 o'clock this morning.  In a

8    perfect world, everyone would have been able to participate

9    and be present and at least listen in.  But we don't live in a

10   perfect world and it's unwieldy enough just the size of the

11   leadership team, and it's the Court's firm opinion that if we

12   opened up the meeting to everybody, nothing would be

13   accomplished.

14         The Court has gone to great pains in the case to make

15   sure that liaison counsel was appointed to appropriately

16   represent all the interests in the case, to make sure that

17   exceptional counsel are appointed as liaison counsel, and the

18   Court has absolutely no hesitation or reservation that liaison

19   counsel has and will faithfully undertake their obligations.

20         So I don't want anyone to feel upset, I hope, or

21   chagrinned because they can't sit in on the meeting, but in

22   the Court's view, this case is no different from any other

23   large case where it's just unwieldy for everybody to

24   participate.  So I want to start out by saying that.

25         Second thing is, I don't think anyone's interests --

 1    I know for a fact that no one's interests are prejudiced by
 2    what was discussed.  When we're off the record, we could be
 3    more candid with each other.  In the past, that has worked and
 4    the Court will continue to have these off-the-record
 5    discussions, so hopefully, we can have more candid
 6    discussions.  But that's why we have this session on the
 7    record and whoever wants to say something can say whatever
 8    they want, make any objection, position you want known.  But I
 9    just want to be clear why we proceeded as we did this morning.
10          Coming out of that meeting, we really didn't reach a
11    -- the hope was to reach a consensus on how to continue with
12    the management of the case.  A consensus couldn't be reached,
13    especially because Judge Kugler is not here present in person.
14    He will make and obviously makes the ultimate decision about
15    important issues, like when 12(b) motions are decided, when
16    and if class certification is decided, when and how the trial
17    is going to proceed.
18          So what the Court is going to direct is as follows:
19    Within in a week, the plaintiffs and the defendants are each
20    going to submit a five-page simultaneous letter brief on how
21    they propose the case be managed and tried in the future, to
22    touch on the class cert issue and the Rule 12(b) motions and
23    trial.  That's the first matter.
24          We'll go through the agenda today and touch on the
25    so-called, quote unquote, macro issues.  Maybe we'll resolve

1  some of those, maybe we won't.  To the extent we don't resolve

2  them, I'm going to ask plaintiff to submit an opening letter

3  brief by March 9 and the defendants to respond by March 18,

4  and we'll tee up those issues for decision at the in-person

5  conference at the end of March.

6          I addressed with the defendants whether we could

7  switch the March 25th meeting to March 24.  Unfortunately, it

8  was not feasible, so we're going to keep the March 25th date

9  for the in-person conference, and I think I have on my

10  calendar March 18th -- is it March 18th?  No.  March 11th for

11  the Valsartan monthly conference call.

12          So, we spent, I don't know, two, three, or four hours

13  discussing and I'm afraid that's all we accomplished, which is

14  not much, but I appreciate that all counsel spoke candidly

15  about their positions and everyone can be rest assured that

16  their interests are more than adequately and zealously being

17  protected, and I know I'm confident that none of the

18  nonparticipants were prejudiced in any respect by what was

19  discussed.

20          MR. GOLDBERG:  Your Honor --

21          THE COURT:  Yes, sir.

22          MR. GOLDBERG:  On the five-page letter brief in the

23  few minutes where we had a break, we talked with plaintiffs.

24  Due to some scheduling issues, we propose having these filed

25  on Monday, March 9th, if plaintiffs are okay with that.

```
 1              THE COURT:  No problem.  No problem at all.

 2              MR. GOLDBERG:  Thank you.

 3              THE COURT:  So March 9, the five-page letter briefs

 4    -- Judge Kugler is going to shoot me because he would probably

 5    say three pages, but I'm giving you five pages.

 6              And just to confirm what I told each side, I

 7    personally think it would be persuasive if each side, with

 8    whatever their proposal is, if they could point to past cases

 9    where what they're proposing was used.  It just seems to me

10    that that would be persuasive on how Judge Kugler decides what

11    to do in the future.

12              Okay.  Anyone out there want to say something about

13    -- oh, Hetero, welcome aboard.

14              MR. ABRAHAM:  Thank you, Judge.

15              THE COURT:  Why don't you come up.  You are an API

16    manufacturer, right?

17              MR. ABRAHAM:  Yes, sir.

18              THE COURT:  So you get a seat in the penthouse.

19              Was Hetero USA in the case, even though you haven't

20    been in the case?

21              MR. ABRAHAM:  Yes, sir.  Also represented here.

22              THE COURT:  So are you up to date from Hetero USA

23    about what's been going on and --

24              MR. ABRAHAM:  Yes, sir.

25              THE COURT:  Okay.  So have you met and conferred with
```

1    plaintiffs about a date to get your core discovery produced

2    and hopefully maybe come to an agreement on the relevant

3    timeframe for the ESI and document production in the case?  I

4    happened to look at the order earlier this morning.  We set

5    the relevant timeframes for the other API manufacturers, but I

6    know Hetero, we didn't decide that.  Have you and the

7    plaintiffs hopefully met and discussed that issue yet?

8            MR. ABRAHAM:  Yes and no.  My new best friend is Miss

9    Hilton and she and I are in regular, I guess, communication.

10   We have been conferring about those subjects.  We've not yet

11   established deadlines or timeframes.  I'm still working with

12   my clients so I can establish those, but I'm well aware of

13   what our sort of catchup work is and we're working on it.

14           THE COURT:  Okay.  Why don't you put it on the agenda

15   for the March 11 call and if you need more time, that's fine,

16   we'll put it on the agenda for the March 25th meeting, the

17   Hetero issues, because let's bring those to a head.  I'm glad

18   you're on board, but as we gave the message to Hetero USA, the

19   train has left the station.

20           MR. ABRAHAM:  Yes, sir.

21           THE COURT:  So we're proceeding ahead and I want to

22   make sure that Hetero gets caught up to date as soon as

23   possible.

24           MR. ABRAHAM:  You have my word.

25           THE COURT:  Within reason.

```
 1          MR. ABRAHAM:  Yes, sir.

 2          THE COURT:  Any questions?

 3          MR. ABRAHAM:  Can I go back to the back row?

 4          THE COURT:  Yeah, you certainly can go back to the

 5  cheap seats.

 6          MS. HILTON:  Your Honor, Layne Hilton for the

 7  plaintiffs.  I also want to add that we also have another API

 8  manufacturer who has now appeared in the case, Aurobindo.

 9          THE COURT:  Oh, great.

10          MS. HILTON:  Aurobindo Pharma Limited, Miss Heinz, as

11  it turns out, represents the Indian entity as well, and she

12  and I met and conferred on Monday.

13          THE COURT:  Do you have the USA company?

14          MS. HEINZ:  Yes, now I have everybody.

15          THE COURT:  If I remember right, wasn't Aurobindo

16  cooperative in terms of discovery?

17          MS. HEINZ:  They produced what they had.  There is

18  some -- I was talking to Miss Hilton about it earlier this

19  week.  There is some question of what we still owe on behalf

20  of the NDA, so I'm working on that.

21          THE COURT:  Do you have an agreement what you are

22  working on relevant timeframe and core discovery?

23          MS. HEINZ:  We didn't discuss exact deadlines but we

24  did discuss that I'm going to try and get certain things

25  sooner rather than later.  Happy to put it on the agenda for
```

1    the teleconference and we'll try to get the agreements.

2            THE COURT:  So whatever issues you have with Hetero

3    and Aurobindo that you can't work out, we'll either put it on

4    the agenda for the call for the -- no later than the meeting

5    at the end of the month.

6            MS. HILTON:  Yes, Your Honor.

7            THE COURT:  And it sounds like we'll get caught up to

8    speed, and welcome aboard.

9            Anybody else want to -- before we get to the agenda

10   in the letters, anybody else?

11           Okay.  So maybe we'll work from Mr. Slater --

12   Mr. Goldberg's letter.  First issue was the downstream

13   discovery and we have the retailer macro issues.  Generally,

14   where does that stand, generally?

15           MS. JOHNSTON:  Your Honor, Sarah Johnston on behalf

16   of the retailer defendants.  We've made some pretty good

17   progress with plaintiffs over the last couple of weeks in

18   terms of negotiating the scope of Rule 34 discovery and the

19   defendant fact sheet.  We received on Monday the latest rounds

20   of edits to Rule 34 discovery and we are awaiting revisions on

21   the DFS.  We've identified in our C & C statement, the issues

22   that we think are still percolating and that I think we're

23   going to continue to make more progress towards resolving.

24           THE COURT:  Why do we have an issue with the

25   definition of Valsartan?  We're a year into this case.

1          MS. JOHNSON:  Well, I think it actually is tied to

2     generally the scope of production.  So is Valsartan recalled

3     versus not recalled.  Are we talking about from the outset of

4     marketing and into the present.

5          THE COURT:  Yes.

6          MS. JOHNSON:  And I think that we would prefer to

7     continue to discuss these issues.  I think we'll be able to

8     resolve them with plaintiffs and --

9          THE COURT:  I don't know if you were here when we

10     discussed these issues, but this case is not just about the

11     recalled Valsartan.  If it was, it would be a very easy case.

12     Plaintiff is arguing at least as to some of the defendants,

13     that all the Valsartan was contaminated or may have been

14     contaminated.  So we can't just focus on recalled Valsartan.

15     That was the Court's reasoning when it ruled previously in the

16     case.

17          So I don't know why it would be different for the

18     retailers as to the API people.

19          MS. JOHNSON:  I understand that, Your Honor, and

20     actually, that was part of the discussion that we had early in

21     the discovery talks where it was unclear whether plaintiffs

22     were seeking documents related to Valsartan that was

23     manufactured by any entity, versus the manufacturers that are

24     named in this litigation, which is not the universe of

25     Valsartan manufacturers.  So there was some significant back

 1   and forth on that, and that has affected the further

 2   discussions, but we're getting very close.

 3         THE COURT:  Document retention policies, is it a big

 4   deal to produce the company's document retention policy?

 5         MS. JOHNSON:  Again, that's another issue we're

 6   working to narrow, but in the beginning, it was document

 7   retention policies, period.  Now we're trying to focus on the

 8   issues in the case and --

 9         THE COURT:  Just the key records that they're looking

10   for.  I'm surmising plaintiff's concern is when they ask the

11   defendants for documents, your group, and your group says, we

12   don't have these documents, they want to know if they existed

13   at one time and should they exist somewhere, and that's why

14   they need to see the retention policies.

15         So it seems to me that's a pretty straightforward

16   issue, just produce it and designate it as confidential and

17   away we go.

18         What's so hard about that?

19         MS. JOHNSTON:  I think that we still need to discuss

20   the scope of those things because I think there is a

21   difference between saying, you know, we don't have those

22   documents, which is generally not the conversation that we're

23   having.  We're saying those these documents don't exist for

24   this particular legal reason, not that we're trying to hide

25   the ball on what may have existed at one point but doesn't

1    because it's subject to some document destruction protocol.

2           So I think that we can discuss, figure out which,

3    which retention policies, if any, are pertinent to the issues

4    in litigation.  I think we can make that progress, but I think

5    that it does require a little bit more back and forth.

6           THE COURT:  Indemnification agreements, aren't they

7    relevant in the case?

8           MS. JOHNSON:  I think that there are a number of

9    things that can be said to be relevant for just about any

10   issue in this case.  I think the indemnifications agreements

11   for the issues that we're specifically discussing working at

12   for trial, don't have any, any true bearing on --

13          THE COURT:  I would think just the indemnification

14   issues for any liability arising out of this case.  Doesn't

15   plaintiff have a right to know whether they exist so that they

16   can finish preparing their trial strategy?

17          MS. JOHNSTON:  I'm not sure what issue that would

18   speak to, if we're talking about what happens at the early

19   Rule 34 stage.

20          THE COURT:  Isn't it the same reason why insurance

21   agreements have to be produced under Rule 26?  Wouldn't

22   indemnification agreements come under the same rubric?

23          You don't have to answer that.

24          MS. JOHNSTON:  I don't think so.  I think that there

25   are a number of reasons that insurance policies are produced

1    under Rule 26.

2              THE COURT:  Why don't you think about it.

3              Okay.  So we know that the plaintiffs are going to

4    brief it by March 9 and the retailers are going to respond by

5    March 18th.  I would just ask -- we don't need long letter

6    briefs -- if you could just address each of these issues in a

7    paragraph or two or three.

8              MS. JOHNSTON:  Your Honor, I think we will do our

9    best to narrow them so that there are very few paragraphs to

10   look at, but we'll do our best to get there.

11             What I would propose, though, just looking at the

12   actual calendar, I think that it would make sense to either

13   move up the deadline for plaintiffs' briefing or to push back

14   by a day or two, the defense briefing, just to give us equal

15   time --

16             THE COURT:  How about 3-20?

17             MS. JOHNSTON:  Perfect.

18             THE COURT:  How about 3-23 so -- no, I'll say 3-20,

19   so you don't have an associate working over the weekend.

20             MS. JOHNSTON:  Well, I want to give you the weekend

21   to really consider those issues.

22             THE COURT:  No, 3-23 is a Friday.  I'll be reading

23   your briefs over the weekend.

24             MS. JOHNSTON:  Fair enough.

25             MS. WHITELEY:  Your Honor, this is Conlee Whiteley.

1    I believe that the issues were adequately addressed here and

2    we will brief those details that we cannot agree on if we

3    can't -- we will continue working until then.

4         There's one other thing I wanted to raise, though, is

5    part of our negotiations back and forth have been some of the

6    things we don't know whether the retailer defendants have or

7    whether the wholesalers have and we've encouraged them to just

8    tell us, we don't have that, you're looking at the wrong

9    person.  And we started a running list of those and what we'd

10   like to do at some point rather soon is to get some

11   confirmation in writing that we don't do -- you know, we don't

12   keep this type of information.  And we've been doing it

13   informally so far, but we would like to have that as a result.

14   Whether it be that that's part of their written response for

15   our discovery or we put it over to the side in the form of a

16   stipulation or some type of conversation.

17        THE COURT:  Miss Johnston, I think that's a great

18   idea.  If there are certain documents that as we know your

19   clients or your group has taken the position, we don't have

20   these, if you could just send a letter to Ms. Whiteley, that

21   would advance the ball tremendously in the case.

22        MS. JOHNSTON:  And I think that we've communicated in

23   a number of different letters and versions of discovery drafts

24   that we've done so far, but we will -- we did discuss this on

25   our last call and it's something that we are discussing among

 1   the retailer defendants and we'll discuss with Miss Whiteley

 2   further.

 3            THE COURT:  Great.

 4            MS. WHITELEY:  And the same goes with the wholesaler

 5   defendants.  We've had those discussions, and then the other

 6   item would be that with both sets of defendants, we talked

 7   about trying to get exemplar documents in a way to close the

 8   gap, because if we actually see some of the documents, we may

 9   be able to use the same vocabulary.  There are issues in

10   certain ways and I believe both sets of defendants were

11   considering that request and they're going to get back to us.

12            THE COURT:  I think that's a great idea to help

13   advance the ball to get exemplar documents, and I would

14   encourage the wholesalers and retailers to do that.

15   Experience shows if we can get these issues resolved once and

16   for all early, it saves so much time and money for your

17   clients in the future if they don't have to go back and

18   reinvent the wheel.  So I'm a firm believer that resources

19   invested in the short term payoff in the long term, okay?

20            MS. WHITELEY:  Thank you.

21            MS. JOHNSTON:  Thank you, Your Honor.

22            THE COURT:  Okay.  I think that takes us through the

23   wholesaler issues.  Same thing, plaintiffs will brief it by

24   March 9, you'll brief it by March 23rd.

25            MS. DAVIS:  D'Lesli Davis from Norton Rose Fulbright,

 1    representing the wholesalers in this argument, but

 2    representing McKesson Corporation individually.

 3         Quick question about need for affidavit and evidence

 4    supporting what will ultimately be objections to the proposed

 5    RFPs we're discussing now.

 6         THE COURT:  Good question.  If it's a burden

 7    argument, I need affidavits.  If you want to submit affidavits

 8    from experts or knowledgeable people, that's perfectly fine.

 9    I do have a question about that, because this issue is raised

10    by the plaintiffs.  If they submit, quote unquote, expert or

11    consultant affidavits, they're concerned that they don't want

12    to reveal the identity of the person.

13         Is there any objection if plaintiffs produce the

14    affidavits but redact the name and submit the CV to the Court

15    in camera?  If the defendants have that same issue, that's

16    fine with me, redact the name and submit the CV in camera.

17         MS. DAVIS:  And are you speaking specifically to

18    these macro discovery issues?

19         THE COURT:  Yes.

20         MS. DAVIS:  Because I wouldn't want to be speaking

21    for the whole joint defense group.

22         THE COURT:  No.

23         MS. DAVIS:  I have no problem with that process at

24    all.  I'm not sure it requires affidavits from the plaintiffs.

25    What we're needing, though, of course, is a specific statement

```
1    of relevance for the macro category and I'm assuming we'll get

2    that.

3            THE COURT:  You might get affidavits from the

4    plaintiff, I don't know, I haven't seen it.

5            MS. DAVIS:  I have no problem with the process you

6    proposed.

7            THE COURT:  My proposal was submit the letter briefs,

8    but if plaintiffs, for example, hypothetically, I don't know

9    what's going to happen, submit affidavits from experts that

10   say, I need this information to produce a model or a report

11   for class certification purposes, that's clearly relevant to

12   whether the Court deems that produceable or not, right?

13           MS. DAVIS:  Correct.

14           THE COURT:  That can't be argued.  So if the

15   defendants want to respond to that, that's fine.

16           MS. DAVIS:  And I'm fine with the fact that the

17   expert in the proposed affidavit would not be disclosed.  I

18   believe Your Honor suggested as long as the plaintiffs will

19   represent the expert actually exists.

20           THE COURT:  No, they're going to produce the CV to

21   the Court in camera.

22           MS. DAVIS:  Perfect.

23           THE COURT:  Defendants can do the same thing if

24   they're concerned about -- if they're going to use a, quote

25   unquote, expert or consultant, before they designate that
```

     1   person for trial and they want to protect that person's
     2   identity, they can do the same thing.
     3           MS. DAVIS:  Thank you, Your Honor.
     4           THE COURT:  But if you're going to argue burden, I
     5   need an affidavit from the client.
     6           MS. DAVIS:  Absolutely.  And I'm not anticipating
     7   having expert affidavits in support of the macro issues but we
     8   would anticipate having client affidavits on burdensomeness
     9   and disproportionality.  And additionally, there may be some
    10   exemplar documents that we submit with the letter briefing.  I
    11   want to make sure that that's okay with the Court as well.
    12           THE COURT:  Perfectly appropriate.  Absolutely
    13   appropriate.
    14           MS. DAVIS:  And then the expectation would be that
    15   those previewed objections would be ruled on at the next
    16   hearing, correct?
    17           THE COURT:  That's my goal.
    18           MS. DAVIS:  We had outlined some of these issues but
    19   I think you've already discussed several of them with Ms.
    20   Johnston.  I'm happy to address any other ones you'd like to
    21   hear about now, or we can just wait for the briefing
    22   opportunity.
    23           THE COURT:  Let me see if there's any low-hanging
    24   fruit.
    25           Recalled verses non-recalled Valsartan drugs?

1        MS. DAVIS:  Same as what Ms. Johnston was discussing,

2   and it may be that they make progress in their meet and confer

3   on that, that can inform what we're doing.

4        THE COURT:  Discovery about the discovery, the

5   retention policies.  Is there a distinction between documents

6   that -- there is a distinction between documents that never

7   existed or documents that aren't available anymore.  If it's

8   the former, then wouldn't document retention policies be

9   relevant?  And you could read the tea leaves with regard to

10  the indemnification agreement for liabilities arising out of

11  this case.

12        MS. DAVIS:  Certainly, and we'll see where Ms.

13  Johnston gets with that.  I think the concern on document

14  retention, of course, had been that there was no specificity

15  as to what document retention policies needed to be produced

16  and their document retention policies for each functional area

17  in the company.

18        THE COURT:  You're absolutely right.  I think you're

19  going to get that.

20        MS. DAVIS:  Okay.

21        THE COURT:  I think plaintiffs are going to focus on

22  exactly what they want.

23        MS. DAVIS:  For final clarification, when we discuss

24  the idea of the use of affidavits or the discussion of macro

25  issues, as it currently stands, we're talking about the topics

1  that you have in the letter agreement.  There may be

2  additional ones by the time of the filing next time.  It's not

3  even a defined term.

4        THE COURT:  I don't want to say the more the better,

5  but whatever you present, we'll address.

6        MS. DAVIS:  Thank you, Your Honor.

7        MR. SLATER:  Your Honor, one request.  If counsel is

8  going to submit exemplar documents, we'd just request that

9  they be documents that we've been provided.  I would assume

10 that they would be documents that we already have or that

11 they're going to produce to us in advance.  We prefer not to

12 see them for the first time when the brief comes to us, then

13 there's no way to address and prepare for that.

14       MS. DAVIS:  I have no problem.  We'll obviously meet

15 and confer in an attempt to get some statement of the

16 relevance of the documents that they're seeking, but I think

17 we're going to try to show them some things that we think

18 they're asking for.  I can't tell you when I'll be able to get

19 that.  We're going to be scrambling with the client, but we

20 will certainly share with them before the day of the filing of

21 the letter brief.

22       THE COURT:  Mr. Slater, if you need to respond to the

23 newly produced documents, you know, if you can get any type of

24 short reply in any time other than the morning of the 25th,

25 that would be fine.

```
 1          MR. SLATER:  Got it.

 2          THE COURT:  I know that last night's letters came in

 3  a little before 5 and a little after 5, so.

 4          MR. SLATER:  Was that Eastern or Pacific?

 5          THE COURT:  I'm sorry?

 6          MR. SLATER:  Eastern or Pacific time?

 7          THE COURT:  That was Eastern.

 8          Judge Chagares is head of the judicial procedural

 9  rule, or committee, or something like that and they're

10  exploring whether there should be a rule change about 24-hour

11  filing, e-filing.  So that's being looked at.

12          Okay.  No. 2 on Page 9, Improvidently Filed Short

13  Form Complaints.

14          Are there any left?

15          MS. SCHWARTZ:  Good afternoon Your Honor, Barbara

16  Schwartz for the ZHP defendants.  So there are -- as you

17  recall, on mid January you had ordered that certain short form

18  complaints that had been filed improperly or not loaded to MDL

19  centrality properly would be -- should be remedied.

20          At Exhibit A, we provide a list of a handful of those

21  complaints that you had ordered to be fixed and have not been

22  fixed at this point in time.  And then also in Table B of that

23  exhibit we provide a listing of more recently filed short form

24  complaints that have the same type of technical issues.

25          THE COURT:  So exhibit -- the cases on Exhibit -- on
```

1  Tables A and Table B of Exhibit A should get orders to show

2  cause.

3         MS. SCHWARTZ:  Yes, Your Honor.

4         THE COURT:  Well, we hope that's cleared up by the

5  next conference, but that's what the order says, so let's

6  clean that up.  We'll clean that up.

7         Overidentification.  This is a substantive issue, not

8  just an administrative issue like the previous issue was.

9  Where do we stand on that?

10         MS. SCHWARTZ:  So you recently issued an order of

11  February 19th giving those plaintiffs who had previously been

12  identified as overidentifying defendants until mid-March to

13  remedy their short form complaints.  So at Exhibit B, we just

14  provide a list of those that are still outstanding on that

15  issue.  But in the meantime, we've also identified about a

16  half dozen more which have similar issues where they are

17  either identifying every single defendant or identifying only

18  John Doe defendants, and we would ask that a similar order be

19  applied to those.

20         THE COURT:  Okay.  That's a shame.  This is a shame.

21  We're going to invite the plaintiffs' lawyers for the cases on

22  Exhibit B, Table A, to be here in person at the end of March

23  to explain why they checked every box, and we'll give notice

24  to the firms on Table B.  This is not an insignificant issue,

25  you know.  It's just not acceptable that the plaintiffs

1    willy-nilly just checked the boxes.  There's obligation under

2    the rules.  They're not dispensed with because we're in an

3    MDL, and we're going to hold their feet to the fire.

4            So we're going to issue invitations to Exhibit B,

5    Table A and a notice to Exhibit B, Table B.

6            MS. SCHWARTZ:  Thank you.

7            THE COURT:  Plaintiffs' fact sheets.  Apparently,

8    there are some people who haven't answered them, but is the

9    process to raise disputes being followed?  Wasn't there an

10   issue about plaintiff had to be notified first for two weeks?

11           MS. SCHWARTZ:  Yes, Your Honor.  So we've attached

12   Exhibit C, which is our first listing of plaintiff fact sheets

13   that we believe at this point would be subject to the show

14   cause process.  Everyone included on this list has been served

15   a deficiency notice and at least two weeks have elapsed since

16   that notice.

17           THE COURT:  But -- I'm sorry, in the Court's order,

18   does it say that plaintiffs' liaison counsel has to be given

19   notice first?

20           MS. SCHWARTZ:  Notice --

21           THE COURT:  Is that the argument you raise,

22   Mr. Slater?

23           MR. SLATER:  Right.

24           THE COURT:  So, for example, on Page 2 of Exhibit C,

25   it says, "Plaintiff's fact sheets more than two weeks after

 1    deficiency notice was served."  That's not what I was thinking

 2    of.

 3            Anyway, what I'm questioning, if the order states

 4    that liaison counsel or leadership counsel for the plaintiffs

 5    has to be given notice and then if it isn't clarified within

 6    two weeks, then you can list it, did they get notice?

 7            MS. SCHWARTZ:  Right.  When we served the deficiency

 8    notices, we served them on the counsel for the individual

 9    plaintiff as well as on Mr. Slater and I believe whoever else

10    is required by the order.

11            THE COURT:  Okay.

12            MS. SCHWARTZ:  Mr. Stanoch.

13            THE COURT:  So is it your position, then, that the

14    first order to show cause should be listed to all the firms,

15    slash, cases listed on Exhibit C?

16            MS. SCHWARTZ:  I believe pursuant to CMO-16 they must

17    appear on two agendas before the order to show cause is

18    issued.  So this is the first agenda where we're listing them

19    pursuant to the order.

20            THE COURT:  Okay.

21            MR. SLATER:  It wouldn't be everybody, because you

22    have different groups.  You have the first group that you say

23    that there was no amendment or supplementation following a

24    deficiency notice.  Then you have a group that did amend or

25    supplement.  So that's been taken care of.  I'm not sure why

1   they're still on the list.  And then you have another group

2   where it says there are disputes still remaining.  That

3   wouldn't be anything that would be subject to an order to show

4   cause either.  That's just a dispute potentially as to the

5   sufficiency of the information, but they've been responded to.

6           THE COURT:  So how are those -- according to the

7   order, how are those disputes worked out?  Are they worked out

8   between defendants' and the plaintiffs' counsel in those

9   cases?

10          MR. SLATER:  I would think so.  And then if there's a

11  particular issue that we couldn't resolve, I guess it would

12  come to Your Honor, but I can't imagine that any of these

13  issues would.

14          MS. SCHWARTZ:  So I'm looking at the order right now,

15  it's case management Order 16, Docket No. 249.  In the second

16  section of that order it lays out a process within three weeks

17  of receipt of the fact sheet, defendants will send a

18  deficiency notice.  We did that, notifying both the individual

19  counsel and liaison counsel.  It then orders that the

20  plaintiff will respond by letter within two weeks of the date

21  of service, and then the next piece is that if the dispute is

22  not resolved, defendants shall put the dispute on the agenda

23  for the next in-person conference, which is what we have done

24  here.

25          THE COURT:  Okay.  But I don't know what the dispute

 1  is.  It may be for the end of March conference.  If there are

 2  disputes, just list them out and we'll deal with them.

 3        MS. SCHWARTZ:  Okay.  We can add that.

 4        THE COURT:  But as I understand it, then, there's no

 5  order to show causes that need to be entered for Exhibit C,

 6  because it's the first listing.

 7        MS. SCHWARTZ:  That's right.

 8        THE COURT:  Okay.  Great.  All right.  And if they're

 9  not cleared up, then after the second listing, then the OSC is

10  entered.

11        MS. SCHWARTZ:  Yes.  Thank you.

12        THE COURT:  Next issue, search terms and ESI update.

13  I'm not sure why these search terms are being revised.  I

14  thought they were already Court ordered.

15        MS. HILTON:  Your Honor, the attorney who is

16  negotiating search terms, Behram Parekh, isn't here, but as I

17  understand it, there are some issues with some false positives

18  related to the terms that were agreed upon, and so I think

19  defendants are in the process of making counterproposals for

20  those terms which are yielding unusually high hit counts.  I

21  think there are some instances where some of the defendants

22  have disclaimer language at the bottom of every single e-mail

23  and some of our terms hit upon that disclaimer language and so

24  I think there the parties are in the process of working out

25  those sort of more granular issues that relate to, you know,

```
 1    each individual defendants -- documents.

 2            THE COURT:  All right.  I'll stay out of it unless

 3    there's a dispute.

 4            Losartan and Irbesartan update.  Plaintiffs'

 5    leadership team, is there going to be any proposal?

 6            MR. SLATER:  We've had conference calls with various

 7    attorneys who showed interest.  We wrote to them in the last

 8    several days with a -- what we thought made sense.  We've

 9    gotten some questions from some of the proposed chair.  So

10    we're working through.  We hope to have it done by the next --

11    in the court conference.

12            THE COURT:  Fine.

13            Amendment of Economic Loss Master Complaint.  This is

14    what the Court has decided on that.  It came -- the Court

15    realized that it's not going to decide the futility issue with

16    regard to that motion to amend.  I'm going to enter an order

17    that states in effect, not in these words necessarily:  Over

18    defendants' objection, plaintiff is granted leave to amend by

19    X date without prejudice to defendants' right to assert

20    whatever defenses they want at the appropriate time.

21            I don't think a motion is necessary because if we're

22    not going to decide futility, the only arguments that can be

23    made are lateness, bad faith, et cetera.  None of those apply.

24    So you're not going to have to file a motion, plaintiffs, but

25    all of defendants' defenses are obviously going to be
```

1    preserved and the Court order is going to specifically note

2    that the order is entered over defendants' objection.

3                MR. SLATER:  I understand.

4                Your Honor, there's one issue that we didn't mention,

5    it's in our letter, but it relates to the search terms of the

6    ESI issue.  As we pointed out to the Court, these productions

7    we thought were supposed to be rolling productions and none of

8    them have started.  We can't get any indication of when

9    they're going to start and we're very concerned that all

10   indications that you'll get them by the deadline, which is not

11   what the intent of the order is.

12               THE COURT:  I have a note to raise that if you

13   didn't, Mr. Slater.

14               I don't have the order in front of me.  I can get it

15   in these notebooks.  But I thought the order specifically

16   stated dates when the rolling production had to start.  Am I

17   right about that?

18               MR. SLATER:  I don't recall if it said when the

19   rolling production had to start.  I think it was when it had

20   to be completed.

21               THE COURT:  Well, let me get it out, because if I was

22   doing my job, it should be in there, because I anticipated

23   this issue.

24               Just bear with me one moment.

25               I'm looking at the December 23rd, 2019 order, Docket

1    No. 328, Page 2, second paragraph up from the bottom.

2    "Ordered:  Defendant's documents shall be produced on a

3    rolling basis.  The first group of responsive documents and

4    ESI shall be produced no later than March 2, 2020, with

5    subsequent rolling productions no later than the first day of

6    each month."

7             So you should get production starting on March 2nd,

8    except for ZHP.

9             ZHP, can you help us understand what's going on with

10   your client in China.

11            MR. GOLDBERG:  Sure, Your Honor, the best I can.

12            THE COURT:  I think that virus establishes good

13   cause, don't you?

14            MR. GOLDBERG:  I would hope so, and hopefully it gets

15   contained.

16            But what I do understand is that within China, travel

17   is still restricted.  There are areas of China that are still

18   under quarantine, public transportation is still impeded, and

19   as a result, we still have -- this virus there hit when people

20   had gone home for their New Year's holidays.  So in China,

21   everybody disburses around the country and lots of people are

22   still in their places where they were.

23            We understand that about less than half of the

24   workforce for ZHP has been able to return to work.  That, you

25   know, they're not still fully operable, and we're trying to

1  get an understanding as to whether one of the -- one of the

2  challenging factors for us is that our document collection

3  people are also over there in Hong Kong and Mainland China and

4  we have offices at Shanghai, too, that are at issue.

5          So trying to get a handle on when we can start --

6          THE COURT:  You're talking about your law office?

7          MR. GOLDBERG:  No, no, no.  ZHP's.  Some of the

8  operations are in Shanghai and our document collection vendor

9  is over there as well.  And so we're trying to get a handle on

10 when we can start, you know, that collection.  But at this

11 point, they're not operable, they don't have the right

12 functionality and it's, you know, it's obviously evolving

13 every day.

14         THE COURT:  Well, do your best and can you please

15 keep us updated?

16         MR. GOLDBERG:  Yes.

17         THE COURT:  Okay.  I think those are all the items on

18 the letters and the agenda.  For the good of the order, are

19 there any other issues that anybody else wants to raise today?

20 The floor is open.

21         Okay.  Hearing nothing, we'll put everything we

22 discussed today on the record in an order.  We'll have the

23 phone call I think on March 11 and the meeting on March 25th,

24 and we're adjourned.  Thank you.

25         THE DEPUTY CLERK:  All rise.

1          (3:10 p.m.)

2          - - - - - - - - - - - - - - - -

3

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     */S/ Karen Friedlander, CRR, RMR*
      *Court Reporter/Transcriber_____*

8

9     *February 28, 2020*
      *Date*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

/S [1] - 31:7

**0**

07068 [1] - 1:13
08101 [1] - 1:7
08540 [1] - 2:14

**1**

10 [1] - 3:7
10019-6022 [1] - 2:23
103 [1] - 1:13
11 [2] - 7:15, 30:23
11th [1] - 5:10
12(b [2] - 4:15, 4:22
1301 [1] - 2:23
15219 [1] - 2:8
16 [1] - 25:15
17th [1] - 2:4
18 [1] - 5:3
1835 [1] - 1:16
18th [3] - 5:10, 13:5
19-2875 [1] - 3:5
19103 [2] - 1:16, 2:4
19422 [1] - 2:20
19th [1] - 22:11
1:19-md-02875-RBK-JS [1] - 1:4

**2**

2 [4] - 21:12, 23:24, 29:1, 29:4
200 [1] - 2:19
2019 [1] - 28:25
2020 [4] - 1:7, 3:2, 29:4, 31:9
2029 [1] - 2:16
21 [1] - 2:13
23rd [2] - 15:24, 28:25
24 [1] - 5:7
24-hour [1] - 21:10
249 [1] - 25:15
2500 [1] - 2:10
25th [5] - 5:7, 5:8, 7:16, 20:24, 30:23
26 [4] - 1:7, 3:2, 12:21, 13:1
28 [1] - 31:9
2900 [1] - 1:16
2:30 [2] - 1:8, 3:2
2nd [1] - 29:7

**3**

3-20 [2] - 13:16, 13:18
3-23 [2] - 13:18, 13:22

**30** [1] - 2:4
300 [1] - 2:16
30327 [1] - 2:11
328 [1] - 29:1
3333 [1] - 2:10
34 [3] - 9:18, 9:20, 12:19
38th [1] - 2:7
3:10 [1] - 31:1

**4**

450 [1] - 2:19
4th [1] - 1:6

**5**

5 [2] - 21:3

**7**

701 [1] - 1:19
70130 [1] - 1:20
756-0160 [1] - 1:23

**8**

856 [1] - 1:23

**9**

9 [5] - 5:3, 6:3, 13:4, 15:24, 21:12
90067-2904 [1] - 2:17
9th [1] - 5:25

**A**

able [5] - 3:8, 10:7, 15:9, 20:18, 29:24
aboard [2] - 6:13, 9:8
above-entitled [1] - 31:5
ABRAHAM [10] - 2:13, 6:14, 6:17, 6:21, 6:24, 7:8, 7:20, 7:24, 8:1, 8:3
absolutely [4] - 3:18, 18:6, 18:12, 19:18
acceptable [1] - 22:25
accomplished [2] - 3:13, 5:13
according [1] - 25:6
ACTION [1] - 1:3
actual [1] - 13:12
ADAM [1] - 1:12
add [2] - 8:7, 26:3
additional [1] - 20:2
additionally [1] - 18:9
address [4] - 13:6, 18:20, 20:5, 20:13

addressed [2] - 5:6, 14:1
adequately [2] - 5:16, 14:1
adjourned [1] - 30:24
administrative [1] - 22:8
advance [3] - 14:21, 15:13, 20:11
affected [1] - 11:1
affidavit [3] - 16:3, 17:17, 18:5
affidavits [10] - 16:7, 16:11, 16:14, 16:24, 17:3, 17:9, 18:7, 18:8, 19:24
afraid [1] - 5:13
afternoon [2] - 3:3, 21:15
agenda [9] - 4:24, 7:14, 7:16, 8:25, 9:4, 9:9, 24:18, 25:22, 30:18
agendas [1] - 24:17
agree [1] - 14:2
agreed [1] - 26:18
agreement [4] - 7:2, 8:21, 19:10, 20:11
agreements [5] - 9:1, 12:6, 12:10, 12:21, 12:22
ahead [1] - 7:21
aided [1] - 1:25
ALFANO [1] - 2:6
amend [3] - 24:24, 27:16, 27:18
amendment [2] - 24:23, 27:13
Americas [1] - 2:23
Angeles [1] - 2:17
answer [1] - 12:23
answered [1] - 23:8
anticipate [1] - 18:8
anticipated [1] - 28:22
anticipating [1] - 18:6
anyway [1] - 24:3
API [4] - 6:15, 7:5, 8:7, 10:18
appear [1] - 24:17
appeared [1] - 8:8
applied [1] - 22:19
apply [1] - 27:23
appointed [2] - 3:15, 3:17
appreciate [1] - 5:14
appropriate [3] - 18:12, 18:13, 27:20
appropriately [1] - 3:15
area [1] - 19:16

areas [1] - 29:17
argue [1] - 18:4
argued [1] - 17:14
arguing [1] - 10:12
argument [3] - 16:1, 16:7, 23:21
arguments [1] - 27:22
arising [2] - 12:14, 19:10
assert [1] - 27:19
associate [1] - 20:9
assume [1] - 20:9
assuming [1] - 17:1
assured [1] - 5:15
Atlanta [1] - 2:11
attached [1] - 23:11
attempt [1] - 20:15
attorney [1] - 26:15
attorneys [1] - 27:7
Aurobindo [5] - 2:20, 8:8, 8:10, 8:15, 9:3
Aurolife [1] - 2:20
Aurrobindo [1] - 2:21
available [1] - 19:7
Avenue [1] - 2:23
awaiting [1] - 9:20
aware [1] - 7:12

**B**

bad [1] - 27:23
ball [3] - 11:25, 14:21, 15:13
BARBARA [1] - 2:3
Barbara [1] - 21:15
BARNES [1] - 2:15
basis [1] - 29:3
bear [1] - 28:24
bearing [1] - 12:12
beginning [1] - 11:6
behalf [2] - 8:19, 9:15
Behram [1] - 26:16
believer [1] - 15:18
Bell [1] - 2:20
best [5] - 7:8, 13:9, 13:10, 29:11, 30:14
better [1] - 20:4
between [4] - 11:21, 19:5, 19:6, 25:8
big [1] - 11:3
bit [1] - 12:5
Blue [1] - 2:20
board [1] - 7:18
BOSICK [1] - 2:6
bottom [2] - 26:22, 29:1
box [1] - 22:23
boxes [1] - 23:1
break [1] - 5:23
brief [9] - 4:20, 5:3,

5:22, 13:4, 14:2, 15:23, 15:24, 20:12, 20:21
briefing [4] - 13:13, 13:14, 18:10, 18:21
briefs [4] - 6:3, 13:6, 13:23, 17:7
bring [1] - 7:17
Building [1] - 1:6
burden [2] - 16:6, 18:4
burdensomeness [1] - 18:8
BY [9] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:10, 2:13, 2:16, 2:22

**C**

CA [1] - 2:17
calendar [2] - 5:10, 13:12
Camden [1] - 1:7
camera [3] - 16:15, 16:16, 17:21
Camp [1] - 1:19
candid [2] - 4:3, 4:5
candidly [1] - 5:14
cannot [1] - 14:2
care [1] - 24:25
case [21] - 3:14, 3:16, 3:22, 3:23, 4:12, 4:21, 6:19, 6:20, 7:3, 8:8, 9:25, 10:10, 10:11, 10:16, 11:8, 12:7, 12:10, 12:14, 14:21, 19:11, 25:15
cases [5] - 6:8, 21:25, 22:21, 24:15, 25:9
catchup [1] - 7:13
category [1] - 17:1
caught [2] - 7:22, 9:7
causes [1] - 26:5
centrality [1] - 21:19
Centre [1] - 2:7
Century [1] - 2:16
cert [1] - 4:22
certain [4] - 8:24, 14:18, 15:10, 21:17
certainly [3] - 8:4, 19:12, 20:20
certification [2] - 4:16, 17:11
certify [1] - 31:4
cetera [1] - 27:23
Chagares [1] - 21:8
chagrinned [1] - 3:21
chair [1] - 27:9
challenging [1] - 30:2
change [1] - 21:10
cheap [1] - 8:5

**checked** [2] - 22:23, 23:1
**China** [5] - 29:10, 29:16, 29:17, 29:20, 30:3
**CIPRIANI** [1] - 2:18
**CIVIL** [1] - 1:3
**clarification** [1] - 19:23
**clarified** [1] - 24:5
**CLARK** [1] - 1:19
**class** [3] - 4:16, 4:22, 17:11
**clean** [1] - 22:6
**clear** [1] - 4:9
**cleared** [2] - 22:4, 26:9
**clearly** [1] - 17:11
**CLEM** [1] - 2:6
**CLERK** [2] - 3:1, 30:25
**client** [4] - 18:5, 18:8, 20:19, 29:10
**clients** [3] - 7:12, 14:19, 15:17
**close** [2] - 11:2, 15:7
**CMO-16** [1] - 24:16
**Co** [1] - 2:17
**Cohen** [1] - 1:6
**COHEN** [1] - 2:10
**collection** [3] - 30:2, 30:8, 30:10
**coming** [1] - 4:10
**Commencing** [1] - 1:8
**committee** [1] - 21:9
**communicated** [1] - 14:22
**communication** [1] - 7:9
**company** [2] - 8:13, 19:17
**company's** [1] - 11:4
**Complaint** [1] - 27:13
**Complaints** [1] - 21:13
**complaints** [4] - 21:18, 21:21, 21:24, 22:13
**completed** [1] - 28:20
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concern** [2] - 11:10, 19:13
**concerned** [3] - 16:11, 17:24, 28:9
**confer** [2] - 19:2, 20:15
**conference** [8] - 5:5, 5:9, 5:11, 22:5, 25:23, 26:1, 27:6,

27:11
**CONFERENCE** [1] - 1:5
**conferred** [2] - 6:25, 8:12
**conferring** [1] - 7:10
**confident** [1] - 5:17
**confidential** [1] - 11:16
**confirm** [1] - 6:6
**confirmation** [1] - 14:11
**CONLEE** [1] - 1:18
**Conlee** [1] - 13:25
**consensus** [2] - 4:11, 4:12
**consider** [1] - 13:21
**considering** [1] - 15:11
**consultant** [2] - 16:11, 17:25
**contained** [1] - 29:15
**contaminated** [2] - 10:13, 10:14
**continue** [5] - 4:4, 4:11, 9:23, 10:7, 14:3
**CONTINUED** [1] - 2:1
**conversation** [2] - 11:22, 14:16
**Cooper** [1] - 1:6
**cooperative** [1] - 8:16
**core** [2] - 7:1, 8:22
**Corporation** [1] - 16:2
**correct** [3] - 17:13, 18:16, 31:4
**counsel** [14] - 3:7, 3:15, 3:17, 3:19, 5:14, 20:7, 23:18, 24:4, 24:8, 25:8, 25:19
**counterproposals** [1] - 26:19
**country** [1] - 29:21
**counts** [1] - 26:20
**couple** [1] - 9:17
**course** [2] - 16:25, 19:14
**COURT** [2] - 1:1, 3:2
**Court** [3] - 1:22, 26:14, 31:7
**Court's** [4] - 3:11, 3:22, 10:15, 23:17
**Courthouse** [1] - 1:6
**CRR** [1] - 31:7
**CV** [3] - 16:14, 16:16, 17:20
**CVS** [1] - 2:17

**D**

**D'Lesli** [1] - 15:25
**D'LESLI** [1] - 2:22
**date** [6] - 5:8, 6:22, 7:1, 7:22, 25:20, 27:19
**Date** [1] - 31:9
**dates** [1] - 28:16
**DAVIS** [19] - 2:22, 15:25, 16:17, 16:20, 16:23, 17:5, 17:13, 17:16, 17:22, 18:3, 18:6, 18:14, 18:18, 19:1, 19:12, 19:20, 19:23, 20:6, 20:14
**Davis** [1] - 15:25
**days** [1] - 27:8
**deadline** [2] - 13:13, 28:10
**deadlines** [2] - 7:11, 8:23
**deal** [2] - 11:4, 26:2
**December** [1] - 28:25
**decide** [3] - 7:6, 27:15, 27:22
**decided** [2] - 4:15, 4:16, 27:14
**decides** [1] - 6:10
**decision** [2] - 4:14, 5:4
**deems** [1] - 17:12
**defendant** [2] - 9:19, 22:17
**Defendant** [6] - 2:5, 2:8, 2:11, 2:14, 2:17, 2:20
**defendant's** [1] - 29:2
**defendants** [22] - 4:19, 5:3, 5:6, 9:16, 10:12, 11:11, 14:6, 15:1, 15:5, 15:6, 15:10, 16:15, 17:15, 17:23, 21:16, 22:12, 22:18, 25:17, 25:22, 26:19, 26:21, 27:1
**defendants'** [5] - 25:8, 27:18, 27:19, 27:25, 28:2
**defense** [2] - 13:14, 16:21
**Defense** [3] - 2:5, 2:8, 2:11
**defenses** [2] - 27:20, 27:25
**deficiency** [5] - 23:15, 24:1, 24:7, 24:24, 25:18
**defined** [1] - 20:3
**definition** [1] - 9:25

**DEPUTY** [2] - 3:1, 30:25
**designate** [2] - 11:16, 17:25
**destruction** [1] - 12:1
**details** [1] - 14:2
**DFS** [1] - 9:21
**difference** [1] - 11:21
**different** [4] - 3:22, 10:17, 14:23, 24:22
**direct** [1] - 4:18
**disburses** [1] - 29:21
**disclaimer** [2] - 26:22, 26:23
**disclosed** [1] - 17:17
**discovery** [12] - 7:1, 8:16, 8:22, 9:13, 9:18, 9:20, 10:21, 14:15, 14:23, 16:18, 19:4
**discuss** [8] - 8:23, 8:24, 10:7, 11:19, 12:2, 14:24, 15:1, 19:23
**discussed** [6] - 4:2, 5:19, 7:7, 10:10, 18:19, 30:22
**discussing** [5] - 5:13, 12:11, 14:25, 16:5, 19:1
**discussion** [2] - 10:20, 19:24
**discussions** [4] - 4:5, 4:6, 11:2, 15:5
**dispensed** [1] - 23:2
**disproportionality** [1] - 18:9
**dispute** [5] - 25:4, 25:21, 25:22, 25:25, 27:3
**disputes** [4] - 23:9, 25:2, 25:7, 26:2
**distinction** [2] - 19:5, 19:6
**DISTRICT** [2] - 1:1, 1:1
**Docket** [3] - 3:4, 25:15, 28:25
**document** [11] - 7:3, 11:3, 11:4, 11:6, 12:1, 19:8, 19:13, 19:15, 19:16, 30:2, 30:8
**documents** [21] - 10:22, 11:11, 11:12, 11:22, 11:23, 14:18, 15:7, 15:8, 15:13, 18:10, 19:5, 19:6, 19:7, 20:8, 20:9, 20:10, 20:16, 20:23,

27:1, 29:2, 29:3
**Doe** [1] - 22:18
**done** [3] - 14:24, 25:23, 27:10
**downstream** [1] - 9:12
**dozen** [1] - 22:16
**drafts** [1] - 14:23
**drugs** [1] - 18:25
**DUANE** [1] - 2:2
**due** [1] - 5:24

**E**

**e-filing** [1] - 21:11
**e-mail** [1] - 26:22
**early** [3] - 10:20, 12:18, 15:16
**East** [1] - 2:16
**Eastern** [2] - 21:4, 21:7
**eastern** [1] - 21:6
**easy** [1] - 10:11
**Economic** [1] - 27:13
**edits** [1] - 9:20
**effect** [1] - 27:17
**Eisenhower** [1] - 1:13
**either** [4] - 9:3, 13:12, 22:17, 25:4
**elapsed** [1] - 23:15
**encourage** [1] - 15:14
**encouraged** [1] - 14:7
**end** [4] - 5:5, 9:5, 22:22, 26:1
**enter** [1] - 27:16
**entered** [2] - 26:5, 26:10, 28:2
**entitled** [1] - 31:5
**entity** [2] - 8:11, 10:23
**equal** [1] - 13:14
**ERIC** [1] - 2:13
**ESI** [4] - 7:3, 26:12, 28:6, 29:4
**especially** [1] - 4:13
**ESQ** [1] - 2:3
**ESQUIRE** [12] - 1:12, 1:15, 1:18, 1:19, 2:3, 2:6, 2:7, 2:10, 2:13, 2:16, 2:19, 2:22
**establish** [1] - 7:12
**established** [1] - 7:11
**establishes** [1] - 29:12
**et** [1] - 27:23
**evidence** [1] - 16:3
**evolving** [1] - 30:12
**exact** [1] - 8:23
**exactly** [1] - 19:22
**example** [2] - 17:8, 23:24
**except** [1] - 29:8

*exceptional* [1] - 3:17
*exemplar* [4] - 15:7, 15:13, 18:10, 20:8
*Exhibit* [11] - 21:20, 21:25, 22:1, 22:13, 22:22, 23:4, 23:5, 23:12, 23:24, 24:15, 26:5
*exhibit* [2] - 21:23, 21:25
*exist* [3] - 11:13, 11:23, 12:15
*existed* [3] - 11:12, 11:25, 19:7
*exists* [1] - 17:19
*expectation* [1] - 18:14
*experience* [1] - 15:15
*expert* [5] - 16:10, 17:17, 17:19, 17:25, 18:7
*experts* [2] - 16:8, 17:9
*explain* [1] - 22:23
*exploring* [1] - 21:10
*extent* [1] - 5:1

**F**

*fact* [7] - 4:1, 9:19, 17:16, 23:7, 23:12, 23:25, 25:17
*factors* [1] - 30:2
*fair* [1] - 13:24
*faith* [1] - 27:23
*faithfully* [1] - 3:19
*false* [1] - 26:17
*far* [2] - 14:13, 14:24
*feasible* [1] - 5:8
*February* [4] - 1:7, 3:2, 22:11, 31:9
*feet* [1] - 23:3
*few* [2] - 5:23, 13:9
*figure* [1] - 12:2
*file* [1] - 27:24
*filed* [3] - 5:24, 21:18, 21:23
*Filed* [1] - 21:12
*filing* [4] - 20:2, 20:20, 21:11
*final* [1] - 19:23
*fine* [7] - 7:15, 16:8, 16:16, 17:15, 17:16, 20:25, 27:12
*finish* [1] - 12:16
*fire* [1] - 23:3
*firm* [2] - 3:11, 15:18
*firms* [2] - 22:24, 24:14
*first* [12] - 4:23, 9:12,

20:12, 23:10, 23:12, 23:19, 24:14, 24:18, 24:22, 26:6, 29:3, 29:5
*five* [4] - 4:20, 5:22, 6:3, 6:5
*five-page* [3] - 4:20, 5:22, 6:3
*fixed* [2] - 21:21, 21:22
*Floor* [1] - 2:7
*floor* [1] - 30:20
*focus* [3] - 10:14, 11:7, 19:21
*followed* [1] - 23:9
*following* [1] - 24:23
*follows* [1] - 4:18
*FOR* [1] - 1:1
*foregoing* [1] - 31:4
*Form* [1] - 21:13
*form* [4] - 14:15, 21:17, 21:23, 22:13
*former* [1] - 19:8
*forth* [3] - 11:1, 12:5, 14:5
*four* [1] - 5:12
*FREEMAN* [1] - 1:12
*Friday* [1] - 13:22
*Friedlander* [2] - 1:22, 31:7
*friedlanderreporter @gmail.com* [1] - 1:23
*friend* [1] - 7:8
*front* [1] - 28:14
*fruit* [1] - 18:24
*FULBRIGHT* [1] - 2:22
*Fulbright* [1] - 15:25
*fully* [1] - 29:25
*functional* [1] - 19:16
*functionality* [1] - 30:12
*futility* [1] - 27:15, 27:22
*future* [3] - 4:21, 6:11, 15:17

**G**

*gap* [1] - 15:8
*generally* [4] - 9:13, 9:14, 10:2, 11:22
*Georgia* [1] - 2:11
*given* [2] - 23:18, 24:5
*glad* [1] - 7:17
*goal* [1] - 18:17
*GOLDBERG* [8] - 2:3, 5:20, 5:22, 6:2, 29:11, 29:14, 30:7, 30:16
*goldberg's* [1] - 9:12

*GOLOMB* [1] - 1:15
*GORDON* [1] - 2:6
*granted* [1] - 27:18
*granular* [1] - 26:25
*great* [6] - 3:14, 8:9, 14:17, 15:3, 15:12, 26:8
*GREENBERG* [1] - 2:9
*Group* [3] - 2:5, 2:8, 2:11
*group* [8] - 11:11, 14:19, 16:21, 24:22, 24:24, 25:1, 29:3
*groups* [1] - 24:22
*guess* [2] - 7:9, 25:11

**H**

*half* [2] - 22:16, 29:23
*handful* [1] - 11:20
*handle* [2] - 30:5, 30:9
*hanging* [1] - 18:23
*happy* [2] - 8:25, 18:20
*hard* [1] - 11:18
*head* [2] - 7:17, 21:8
*Health* [1] - 2:17
*hear* [1] - 18:21
*hearing* [2] - 18:16, 30:21
*HEINZ* [4] - 2:19, 8:14, 8:17, 8:23
*Heinz* [1] - 8:10
*help* [2] - 15:12, 29:9
*hesitation* [1] - 3:18
*Hetero* [9] - 2:14, 6:13, 6:19, 6:22, 7:6, 7:17, 7:18, 7:22, 9:2
*hide* [1] - 11:24
*high* [1] - 26:20
*HILL* [1] - 2:12
*Hilton* [3] - 7:9, 8:6, 8:18
*HILTON* [5] - 1:19, 8:6, 8:10, 9:6, 26:15
*hit* [3] - 26:20, 26:23, 29:19
*hold* [1] - 23:3
*holidays* [1] - 29:20
*home* [1] - 29:20
*Hong* [1] - 30:3
*HONIK* [2] - 1:15, 1:15
*Honor* [19] - 5:20, 8:6, 9:6, 9:15, 10:19, 13:8, 13:25, 15:21, 17:18, 18:3, 20:6, 20:7, 21:15, 22:3, 23:11, 25:12, 26:15, 28:4, 29:11
*HONORABLE* [1] - 1:9

*hope* [5] - 3:20, 4:11, 22:4, 27:10, 29:14
*hopefully* [4] - 4:5, 7:2, 7:7, 29:14
*hours* [1] - 5:12
*hypothetically* [1] - 17:8

**I**

*idea* [3] - 14:18, 15:12, 19:24
*identified* [3] - 9:21, 22:12, 22:15
*identifying* [2] - 22:17
*identity* [2] - 16:12, 18:2
*imagine* [1] - 25:12
*impeded* [1] - 29:18
*important* [1] - 4:15
*improperly* [1] - 21:18
*Improvidently* [1] - 21:12
*IN* [1] - 1:3
*in-person* [5] - 5:4, 5:9, 25:23
*Inc* [1] - 2:20
*included* [1] - 23:14
*indemnification* [4] - 12:6, 12:13, 12:22, 19:10
*indemnifications* [1] - 12:10
*Indian* [1] - 8:11
*indication* [1] - 28:8
*indications* [1] - 28:10
*individual* [3] - 24:8, 25:18, 27:1
*individually* [2] - 2:24, 16:2
*inform* [1] - 19:3
*informally* [1] - 14:13
*information* [3] - 14:12, 17:10, 25:5
*insignificant* [1] - 22:24
*instances* [1] - 26:21
*insurance* [2] - 12:20, 12:25
*intent* [1] - 28:11
*interest* [1] - 27:7
*interests* [4] - 3:16, 3:25, 4:1, 5:16
*invested* [1] - 15:19
*invitations* [1] - 23:4
*invite* [1] - 22:21
*Irbesartan* [1] - 27:4
*issue* [24] - 4:22, 7:7, 9:12, 9:24, 11:5, 11:16, 12:10, 12:17,

16:9, 16:15, 22:7, 22:8, 22:15, 22:24, 23:4, 23:10, 25:11, 26:12, 27:15, 28:4, 28:6, 28:23, 30:4
*issued* [2] - 22:10, 24:18
*issues* [30] - 4:15, 4:25, 5:4, 5:24, 7:17, 9:2, 9:13, 9:21, 10:7, 10:10, 11:8, 12:3, 12:11, 12:14, 13:6, 13:21, 14:1, 15:9, 15:15, 15:23, 16:18, 18:7, 18:18, 19:25, 21:24, 22:16, 25:13, 26:17, 26:25, 30:19
*item* [1] - 15:6
*items* [1] - 30:17

**J**

*January* [1] - 21:17
*JASON* [1] - 2:7
*JERSEY* [1] - 1:1
*Jersey* [2] - 1:7, 1:13
*JESSICA* [1] - 2:19
*job* [1] - 28:22
*JOEL* [1] - 1:9
*John* [1] - 22:18
*JOHNSON* [5] - 10:1, 10:6, 10:19, 11:5, 12:8
*Johnston* [5] - 9:15, 14:17, 18:20, 19:1, 19:13
*JOHNSTON* [11] - 2:16, 9:15, 11:19, 12:17, 12:24, 13:8, 13:17, 13:20, 13:24, 14:22, 15:21
*Joint* [3] - 2:5, 2:8, 2:11
*joint* [1] - 16:21
*JUDGE* [1] - 1:9
*Judge* [5] - 4:13, 6:4, 6:10, 6:14, 21:8
*judicial* [1] - 21:8

**K**

*KANNER* [1] - 1:18
*Karen* [2] - 1:22, 31:7
*KATZ* [1] - 1:12
*keep* [3] - 5:8, 14:12, 30:15
*key* [1] - 11:9
*knowledgeable* [1] - 16:8
*known* [1] - 4:8

**Kong** [1] - 30:3
**Kugler** [3] - 4:13, 6:4, 6:10

## L

**Labs** [1] - 2:14
**language** [2] - 26:22, 26:23
**large** [1] - 3:23
**last** [4] - 9:17, 14:25, 21:2, 27:7
**lateness** [1] - 27:23
**latest** [1] - 9:19
**law** [1] - 30:6
**lawyers** [1] - 22:21
**Layne** [1] - 8:6
**LAYNE** [1] - 1:19
**lays** [1] - 25:16
**leadership** [4] - 3:7, 3:11, 24:4, 27:5
**least** [3] - 3:9, 10:12, 23:15
**leave** [1] - 27:18
**leaves** [1] - 19:9
**left** [2] - 7:19, 21:14
**legal** [1] - 11:24
**less** [1] - 29:23
**letter** [13] - 4:20, 5:2, 5:22, 6:3, 9:12, 13:5, 14:20, 17:7, 18:10, 20:1, 20:21, 25:20, 28:5
**letters** [4] - 9:10, 14:23, 21:2, 30:18
**liabilities** [1] - 19:10
**LIABILITY** [1] - 1:4
**liability** [1] - 12:14
**liaison** [6] - 3:15, 3:17, 3:18, 23:18, 24:4, 25:19
**Limited** [1] - 8:10
**list** [7] - 14:9, 21:20, 22:14, 23:14, 24:6, 25:1, 26:2
**listed** [2] - 24:14, 24:15
**listen** [1] - 3:9
**listing** [5] - 21:23, 23:12, 24:18, 26:6, 26:9
**litigation** [2] - 10:24, 12:4
**LITIGATION** [1] - 1:4
**live** [1] - 3:9
**LLC** [3] - 1:12, 1:18, 2:21
**LLP** [5] - 2:2, 2:6, 2:9, 2:12, 2:15
**loaded** [1] - 21:18

**look** [2] - 7:4, 13:10
**looked** [1] - 21:11
**looking** [5] - 11:9, 13:11, 14:8, 25:14, 28:25
**LORI** [1] - 2:10
**Los** [1] - 2:17
**losartan** [1] - 27:4
**Loss** [1] - 27:13
**Louisiana** [1] - 1:20
**low** [1] - 18:23
**low-hanging** [1] - 18:23
**Ltd** [2] - 2:14, 2:21

## M

**macro** [6] - 4:25, 9:13, 16:18, 17:1, 18:7, 19:24
**MAGISTRATE** [1] - 1:9
**mail** [1] - 26:22
**Mainland** [1] - 30:3
**managed** [1] - 4:21
**management** [2] - 4:12, 25:15
**manufactured** [1] - 10:23
**manufacturer** [2] - 6:16, 8:8
**manufacturers** [3] - 7:5, 10:23, 10:25
**March** [24] - 5:3, 5:5, 5:7, 5:8, 5:10, 5:25, 6:3, 7:15, 7:16, 13:4, 13:5, 15:24, 22:12, 22:22, 26:1, 29:4, 29:7, 30:23
**Market** [1] - 1:16
**marketing** [1] - 10:4
**Master** [1] - 27:13
**matter** [2] - 4:23, 31:5
**MAZIE** [1] - 1:12
**McKesson** [2] - 2:24, 16:2
**MDL** [2] - 21:18, 23:3
**meantime** [1] - 22:15
**mechanical** [1] - 1:24
**meet** [2] - 19:2, 20:14
**meeting** [7] - 3:12, 3:21, 4:10, 5:7, 7:16, 9:4, 30:23
**mention** [1] - 28:4
**message** [1] - 7:18
**met** [4] - 3:6, 6:25, 7:7, 8:12
**mid** [2] - 21:17, 22:12
**mid-March** [1] - 22:12
**might** [1] - 17:3

**minutes** [1] - 5:23
**miss** [1] - 14:17
**Miss** [4] - 7:8, 8:10, 8:18, 15:1
**Mitchell** [1] - 1:6
**model** [1] - 17:10
**moment** [1] - 28:24
**Monday** [3] - 5:25, 8:12, 9:19
**money** [1] - 15:16
**month** [2] - 9:5, 29:6
**monthly** [1] - 5:11
**morning** [4] - 3:7, 4:9, 7:4, 20:24
**MORRIS** [1] - 2:2
**motion** [3] - 27:16, 27:21, 27:24
**motions** [2] - 4:15, 4:22
**move** [1] - 13:13
**MR** [26] - 5:20, 5:22, 6:2, 6:14, 6:17, 6:21, 6:24, 7:8, 7:20, 7:24, 8:1, 8:3, 20:7, 21:1, 21:4, 21:6, 23:23, 24:21, 25:10, 27:6, 28:3, 28:18, 29:11, 29:14, 30:7, 30:16
**MS** [56] - 8:6, 8:10, 8:14, 8:17, 8:23, 9:6, 9:15, 10:1, 10:6, 10:19, 11:5, 11:19, 12:8, 12:17, 13:20, 13:24, 13:25, 14:22, 15:4, 15:20, 15:21, 15:25, 16:17, 16:20, 16:23, 17:5, 17:13, 17:16, 17:22, 18:3, 18:6, 18:14, 18:18, 19:1, 19:12, 19:20, 19:23, 20:6, 20:14, 21:15, 22:3, 22:10, 23:6, 23:11, 23:20, 24:7, 24:12, 24:16, 25:14, 26:3, 26:7, 26:11, 26:15
**must** [1] - 24:16
**Mylan** [1] - 2:8

## N

**name** [2] - 16:14, 16:16
**named** [1] - 10:24
**narrow** [2] - 11:6, 13:9
**NDA** [1] - 8:20
**NE** [1] - 2:10
**necessarily** [1] - 27:17
**necessary** [1] - 27:21

**need** [10] - 7:15, 11:14, 11:19, 13:5, 16:3, 16:7, 17:10, 18:5, 20:22, 26:5
**needed** [1] - 19:15
**needing** [1] - 16:25
**negotiating** [2] - 9:18, 26:16
**negotiations** [1] - 14:5
**never** [1] - 19:6
**NEW** [1] - 1:1
**new** [1] - 7:8
**New** [5] - 1:7, 1:13, 1:20, 2:23, 29:20
**newly** [1] - 20:23
**next** [7] - 18:15, 20:2, 22:5, 25:21, 25:23, 26:12, 27:10
**night's** [1] - 21:2
**nilly** [1] - 23:1
**NJ** [1] - 2:14
**non** [1] - 18:25
**non-recalled** [1] - 18:25
**none** [3] - 5:17, 27:23, 28:7
**nonparticipants** [1] - 5:18
**NORTON** [1] - 2:22
**Norton** [1] - 15:25
**note** [2] - 28:1, 28:12
**notebooks** [1] - 28:15
**nothing** [2] - 3:12, 30:21
**notice** [11] - 22:23, 23:5, 23:15, 23:16, 23:19, 23:20, 24:1, 24:5, 24:6, 24:24, 25:18
**notices** [1] - 24:8
**notified** [1] - 23:10
**notifying** [1] - 25:18
**NUMBER** [1] - 1:3
**number** [2] - 12:8, 12:25, 14:23
**NY** [1] - 2:23

## O

**o'clock** [1] - 3:7
**objection** [4] - 4:8, 16:13, 27:18, 28:2
**objections** [2] - 16:4, 18:15
**obligation** [1] - 23:1
**obligations** [1] - 3:19
**obviously** [4] - 4:14, 20:14, 27:25, 30:12
**OF** [1] - 1:1
**off-the-record** [1] -

4:4
**office** [1] - 30:6
**offices** [1] - 30:4
**Official** [1] - 1:22
**once** [1] - 15:15
**One** [1] - 2:7
**one** [8] - 11:13, 11:25, 14:4, 20:7, 28:4, 28:24, 30:1
**one's** [1] - 4:1
**ones** [2] - 18:20, 20:2
**open** [1] - 30:20
**OPEN** [1] - 3:2
**opened** [1] - 3:12
**opening** [1] - 5:2
**operable** [2] - 29:25, 30:11
**operations** [1] - 30:8
**opinion** [1] - 3:11
**opportunity** [1] - 18:22
**order** [24] - 7:4, 22:5, 22:10, 22:18, 23:17, 24:3, 24:10, 24:14, 24:17, 24:19, 25:3, 25:7, 25:14, 25:16, 26:5, 27:16, 28:1, 28:2, 28:11, 28:14, 28:15, 28:25, 30:18, 30:22
**Order** [1] - 25:15
**ordered** [4] - 21:17, 21:21, 26:14, 29:2
**orders** [2] - 22:1, 25:19
**Orleans** [1] - 1:20
**OSC** [1] - 26:9
**outlined** [1] - 18:18
**outset** [1] - 10:3
**outstanding** [1] - 22:14
**overidentification** [1] - 22:7
**overidentifying** [1] - 22:12
**owe** [1] - 8:19
**Oxford** [1] - 2:7

## P

**P.C** [1] - 2:18
**p.m** [3] - 1:8, 3:2, 31:1
**PA** [1] - 2:20
**Pacific** [2] - 21:4, 21:6
**page** [3] - 4:20, 5:22, 6:3
**Page** [2] - 21:12, 23:24, 29:1
**pages** [2] - 6:5
**pains** [1] - 3:14

*paragraph* [2] - 13:7, 29:1
*paragraphs* [1] - 13:9
*Parekh* [1] - 26:16
*Park* [1] - 2:16
*Parkway* [2] - 1:13, 2:19
*part* [3] - 10:20, 14:5, 14:14
*participate* [2] - 3:8, 3:24
*particular* [2] - 11:24, 25:11
*parties* [1] - 26:24
*past* [2] - 4:3, 6:8
*payoff* [1] - 15:19
*PC* [1] - 1:15
*Pennsylvania* [3] - 1:16, 2:4, 2:8
*penthouse* [1] - 6:18
*people* [6] - 10:18, 16:8, 23:8, 29:19, 29:21, 30:3
*percolating* [1] - 9:22
*perfect* [4] - 3:8, 3:10, 13:17, 17:22
*perfectly* [2] - 16:8, 18:12
*period* [1] - 11:7
*person* [8] - 4:13, 5:4, 5:9, 14:9, 16:12, 18:1, 22:22, 25:23
*person's* [1] - 18:1
*personally* [1] - 6:7
*persuasive* [2] - 6:7, 6:10
*pertinent* [1] - 12:3
*Pharma* [4] - 2:20, 2:21, 8:10
*Philadelphia* [2] - 1:16, 2:4
*phone* [1] - 30:23
*piece* [1] - 25:21
*Piedmont* [1] - 2:10
*PIETRAGALLO* [1] - 2:6
*Pittsburgh* [1] - 2:8
*places* [1] - 29:22
*plaintiff* [9] - 5:2, 10:12, 12:15, 17:4, 23:10, 23:12, 24:9, 25:20, 27:18
*Plaintiff* [3] - 1:14, 1:17, 1:20
*Plaintiff's* [1] - 23:25
*plaintiff's* [1] - 11:10
*plaintiffs* [21] - 4:19, 5:23, 5:25, 7:1, 7:7, 8:7, 9:17, 10:8, 10:21, 13:3, 15:23,

16:10, 16:13, 16:24, 17:8, 17:18, 19:21, 22:11, 22:25, 24:4, 27:24
*plaintiffs'* [6] - 13:13, 22:21, 23:7, 23:18, 25:8, 27:4
*point* [6] - 6:8, 11:25, 14:10, 21:22, 23:13, 30:11
*pointed* [1] - 28:6
*policies* [9] - 11:3, 11:7, 11:14, 12:3, 12:25, 19:5, 19:8, 19:15, 19:16
*policy* [1] - 11:4
*position* [3] - 4:8, 14:19, 24:13
*positions* [1] - 5:15
*positives* [1] - 26:17
*possible* [1] - 7:23
*potentially* [1] - 25:4
*prefer* [1] - 10:6, 20:11
*prejudice* [1] - 27:19
*prejudiced* [2] - 4:1, 5:18
*prepare* [1] - 20:13
*preparing* [1] - 12:13
*present* [4] - 3:9, 4:13, 10:4, 20:5
*preserved* [1] - 28:1
*pretty* [2] - 9:16, 11:15
*previewed* [1] - 18:15
*previous* [1] - 22:8
*previously* [2] - 10:15, 22:11
*Princeton* [1] - 2:14
*problem* [5] - 6:1, 16:23, 17:5, 20:14
*procedural* [1] - 21:8
*proceed* [1] - 4:17
*proceeded* [1] - 4:9
*proceeding* [1] - 7:21
*proceedings* [1] - 31:5
*Proceedings* [1] - 1:24
*process* [7] - 16:23, 17:5, 23:9, 23:14, 25:16, 26:19, 26:24
*produce* [1] - 11:4, 11:16, 16:13, 17:10, 17:20, 20:11
*produceable* [1] - 17:12
*produced* [9] - 1:25, 7:1, 8:17, 12:21, 12:25, 19:15, 20:23, 29:2, 29:4
*production* [5] - 7:3, 10:2, 28:16, 28:19,

29:7
*productions* [3] - 28:6, 28:7, 29:5
*PRODUCTS* [1] - 1:3
*progress* [4] - 9:17, 9:23, 12:4, 19:2
*properly* [1] - 21:19
*proposal* [2] - 6:8, 17:7, 27:5
*propose* [3] - 4:21, 5:24, 13:11
*proposed* [4] - 16:4, 17:6, 17:17, 27:9
*proposing* [1] - 6:9
*protect* [1] - 18:1
*protected* [1] - 5:17
*protocol* [1] - 12:1
*provide* [3] - 21:20, 21:23, 22:14
*provided* [1] - 20:9
*public* [1] - 29:18
*purposes* [3] - 3:6, 17:11
*pursuant* [2] - 24:16, 24:19
*push* [1] - 13:13
*put* [7] - 7:14, 7:16, 8:25, 9:3, 14:15, 25:22, 30:21

*Q*

*quarantine* [1] - 29:18
*questioning* [1] - 24:3
*questions* [2] - 8:2, 27:9
*quick* [1] - 16:3
*quote* [3] - 4:25, 16:10, 17:24

*R*

*raise* [5] - 14:4, 23:9, 23:21, 28:12, 30:19
*raised* [1] - 16:9
*RASPANTI* [1] - 2:6
*rather* [2] - 8:25, 14:10
*re* [1] - 3:4
*RE* [1] - 1:3
*reach* [2] - 4:10, 4:11
*reached* [1] - 4:12
*read* [1] - 19:9
*reading* [1] - 13:22
*realized* [1] - 27:15
*really* [2] - 4:10, 13:21
*reason* [3] - 7:25, 11:24, 12:20
*reasoning* [1] - 10:15
*reasons* [1] - 12:25
*recalled* [6] - 10:2,

10:3, 10:11, 10:14, 18:25
*receipt* [1] - 25:17
*received* [1] - 9:19
*recently* [2] - 21:23, 22:10
*record* [7] - 3:4, 3:6, 4:2, 4:4, 4:7, 30:22, 31:5
*recorded* [1] - 1:24
*records* [1] - 11:9
*redact* [2] - 16:14, 16:16
*REEFER* [1] - 2:7
*regard* [2] - 19:9, 27:16
*regular* [1] - 7:9
*reinvent* [1] - 15:18
*relate* [1] - 26:25
*related* [2] - 10:22, 26:18
*relates* [1] - 28:5
*relevance* [2] - 17:1, 20:16
*relevant* [7] - 7:2, 7:5, 8:22, 12:7, 12:9, 17:11, 19:9
*remaining* [1] - 25:2
*remedied* [1] - 21:19
*remedy* [1] - 22:13
*remember* [1] - 8:15
*reply* [1] - 10:24
*report* [1] - 17:10
*Reporter* [1] - 1:22
*Reporter/Transcriber* [1] - 31:7
*represent* [2] - 3:16, 17:19
*represented* [1] - 6:21
*representing* [2] - 16:1, 16:2
*represents* [1] - 8:11
*request* [3] - 15:11, 20:7, 20:8
*require* [1] - 12:5
*required* [1] - 24:10
*requires* [1] - 16:24
*reservation* [1] - 3:18
*resolve* [4] - 4:25, 5:1, 10:8, 25:11
*resolved* [2] - 15:15, 25:22
*resolving* [1] - 9:23
*resources* [1] - 15:18
*respect* [1] - 5:18
*respond* [5] - 5:3, 13:4, 17:15, 20:22, 25:20
*responded* [1] - 25:5

*response* [1] - 14:14
*responsive* [1] - 29:3
*rest* [1] - 5:15
*restricted* [1] - 29:17
*result* [2] - 14:13, 29:19
*retailer* [1] - 9:13, 9:16, 14:16, 15:1
*retailers* [3] - 10:18, 13:4, 15:14
*retention* [10] - 11:3, 11:4, 11:7, 11:14, 12:3, 19:5, 19:8, 19:14, 19:15, 19:16
*return* [1] - 29:24
*reveal* [1] - 16:12
*revised* [1] - 26:13
*revisions* [1] - 9:20
*RFPs* [1] - 16:5
*rise* [2] - 3:1, 30:25
*RMR* [1] - 31:7
*Road* [2] - 2:10, 2:13
*rolling* [5] - 28:7, 28:16, 28:19, 29:3, 29:5
*Rose* [1] - 15:25
*ROSE* [1] - 2:22
*Roseland* [1] - 1:13
*Roszel* [1] - 2:13
*rounds* [1] - 9:19
*row* [1] - 8:3
*RUBEN* [1] - 1:15
*rubric* [1] - 12:22
*Rule* [6] - 4:22, 9:18, 9:20, 12:19, 12:21, 13:1
*rule* [2] - 21:9, 21:10
*ruled* [2] - 10:15, 18:15
*rules* [1] - 23:2
*running* [1] - 14:9

*S*

*SARAH* [1] - 2:16
*Sarah* [1] - 9:15
*saves* [1] - 15:16
*scheduling* [1] - 5:24
*SCHNEIDER* [1] - 1:9
*Schwartz* [1] - 21:16
*SCHWARTZ* [14] - 2:3, 21:15, 22:3, 22:10, 23:6, 23:11, 23:20, 24:7, 24:12, 24:16, 25:14, 26:3, 26:7, 26:11
*scope* [3] - 9:18, 10:2, 11:20
*scrambling* [1] - 20:19
*search* [4] - 26:12,

26:13, 26:16, 28:5
*seat* [1] - 6:18
*seated* [1] - 3:4
*seats* [1] - 8:5
*second* [4] - 3:25, 25:15, 26:9, 29:1
*section* [1] - 25:16
*see* [5] - 11:14, 15:8, 18:23, 19:12, 20:12
*seeking* [2] - 10:22, 20:16
*send* [2] - 14:20, 25:17
*sense* [2] - 13:12, 27:8
*Sentry* [1] - 2:19
*served* [4] - 23:14, 24:1, 24:7, 24:8
*service* [1] - 25:21
*session* [1] - 4:6
*set* [1] - 7:4
*SETH* [1] - 2:3
*sets* [2] - 15:6, 15:10
*several* [2] - 18:19, 27:8
*shall* [3] - 25:22, 29:2, 29:4
*shame* [2] - 22:20
*Shanghai* [2] - 30:4, 30:8
*share* [1] - 20:20
*sheet* [2] - 9:19, 25:17
*sheets* [3] - 23:7, 23:12, 23:25
*shoot* [1] - 6:4
*short* [5] - 15:19, 20:24, 21:17, 21:23, 22:13
*Short* [1] - 21:12
*show* [7] - 20:17, 22:1, 23:13, 24:14, 24:17, 25:3, 26:5
*showed* [1] - 27:7
*shows* [1] - 15:15
*side* [3] - 6:6, 6:7, 14:15
*significant* [1] - 10:25
*similar* [2] - 22:16, 22:18
*simultaneous* [1] - 4:20
*single* [2] - 22:17, 26:22
*sit* [1] - 3:21
*size* [1] - 3:10
*slash* [1] - 24:15
*SLATER* [12] - 1:12, 1:12, 20:7, 21:1, 21:4, 21:6, 23:23, 24:21, 25:10, 27:6, 28:3, 28:18
*Slater* [5] - 9:11,

20:22, 23:22, 24:9, 28:13
*so-called* [1] - 4:25
*somewhere* [1] - 11:13
*soon* [2] - 7:22, 14:10
*sooner* [1] - 8:25
*sorry* [2] - 21:5, 23:17
*sort* [2] - 7:13, 26:25
*sounds* [1] - 9:7
*speaking* [2] - 16:17, 16:20
*specific* [1] - 16:25
*specifically* [3] - 12:11, 16:17, 28:1, 28:15
*specificity* [1] - 19:14
*speed* [1] - 9:8
*spent* [1] - 5:12
*stage* [1] - 12:19
*stand* [2] - 9:14, 22:9
*stands* [1] - 19:25
*Stanoch* [1] - 24:12
*start* [6] - 3:24, 28:9, 28:16, 28:19, 30:5, 30:10
*started* [1] - 14:9, 28:8
*starting* [2] - 3:7, 29:7
*statement* [3] - 9:21, 16:25, 20:15
*STATES* [2] - 1:1, 1:9
*states* [2] - 24:3, 27:17
*station* [1] - 7:19
*STATUS* [1] - 1:5
*stay* [1] - 27:2
*stenography* [1] - 1:24
*still* [3] - 7:11, 8:19, 9:22, 11:19, 22:14, 25:1, 25:2, 29:17, 29:18, 29:19, 29:22, 29:25
*stipulation* [1] - 14:16
*straightforward* [1] - 11:15
*strategy* [1] - 12:16
*Street* [3] - 1:16, 1:19, 2:4
*Streets* [1] - 1:6
*subject* [3] - 12:1, 23:13, 25:3
*subjects* [1] - 7:10
*submit* [10] - 4:20, 5:2, 16:7, 16:10, 16:14, 16:16, 17:7, 17:9, 18:10, 20:8
*subsequent* [1] - 29:5
*substantive* [1] - 22:7
*sufficiency* [1] - 25:5
*suggested* [1] - 17:18

*Suite* [4] - 1:16, 2:10, 2:16, 2:19
*supplement* [1] - 24:25
*supplementation* [1] - 24:23
*support* [1] - 18:7
*supporting* [1] - 16:4
*supposed* [1] - 28:7
*surmising* [1] - 11:10
*switch* [1] - 5:7

## T

*Table* [6] - 21:22, 22:1, 22:22, 22:24, 23:5
*Tables* [1] - 22:1
*talks* [1] - 10:21
*tea* [1] - 19:9
*team* [2] - 3:11, 27:5
*technical* [1] - 21:24
*tee* [1] - 5:4
*teleconference* [1] - 9:1
*term* [2] - 15:19, 20:3
*terms* [9] - 8:16, 9:18, 26:12, 26:13, 26:16, 26:18, 26:20, 26:23, 28:5
*Teva* [1] - 2:11
*THE* [4] - 1:1, 1:9, 3:1, 30:25
*The court* [92] - 3:3, 3:6, 3:14, 3:17, 4:4, 4:18, 5:21, 6:1, 6:3, 6:15, 6:18, 6:22, 7:25, 8:2, 8:4, 8:9, 8:13, 8:15, 8:21, 9:2, 9:7, 9:24, 10:5, 10:9, 11:3, 11:9, 12:6, 12:13, 12:20, 13:2, 13:16, 13:18, 13:22, 14:17, 15:3, 15:12, 15:22, 16:6, 16:14, 16:19, 16:22, 17:3, 17:7, 17:12, 17:14, 17:20, 17:21, 17:23, 18:4, 18:11, 18:12, 18:17, 18:23, 19:4, 19:18, 19:21, 20:4, 20:22, 21:2, 21:5, 21:7, 21:25, 22:4, 22:20, 23:7, 23:17, 23:21, 23:24, 24:11, 24:13, 24:20, 25:6, 25:25, 26:4, 26:8, 26:12, 27:2, 27:11, 27:12, 27:14, 28:1, 28:6, 28:12, 28:21,

29:12, 30:6, 30:14, 30:17
*they've* [1] - 25:5
*thinking* [1] - 24:1
*THORNBURG* [1] - 2:15
*three* [4] - 5:12, 6:5, 13:7, 25:16
*tied* [1] - 10:1
*timeframe* [2] - 7:3, 8:22
*timeframes* [2] - 7:5, 7:11
*today* [3] - 4:24, 30:19, 30:22
*topics* [1] - 19:25
*touch* [2] - 4:22, 4:24
*towards* [1] - 9:23
*train* [1] - 7:19
*transcript* [2] - 1:25, 31:4
*transcription* [1] - 1:25
*transportation* [1] - 29:18
*TRAURIG* [1] - 2:9
*travel* [1] - 29:16
*tremendously* [1] - 14:21
*trial* [5] - 4:16, 4:23, 12:12, 12:16, 18:1
*tried* [1] - 4:21
*TRISCHLER* [1] - 2:6
*true* [1] - 12:12
*try* [3] - 8:24, 9:1, 20:17
*trying* [6] - 11:7, 11:24, 15:7, 29:25, 30:5, 30:9
*turns* [1] - 8:11
*two* [9] - 5:12, 13:7, 13:14, 23:10, 23:15, 23:25, 24:6, 24:17, 25:20
*type* [4] - 14:12, 14:16, 20:23, 21:24

## U

*U.S* [1] - 1:6
*ultimate* [1] - 4:14
*ultimately* [1] - 16:4
*unclear* [1] - 10:21
*under* [5] - 12:21, 12:22, 13:1, 23:1, 29:18
*undertake* [1] - 3:19
*unfortunately* [1] - 5:7
*UNITED* [2] - 1:1, 1:9
*universe* [1] - 10:24

*unless* [1] - 27:2
*unquote* [3] - 4:25, 16:10, 17:25
*unusually* [1] - 26:20
*unwieldy* [2] - 3:10, 3:23
*up* [12] - 3:12, 5:4, 6:15, 6:22, 7:22, 9:7, 13:13, 22:4, 22:6, 26:9, 29:1
*update* [2] - 26:12, 27:4
*updated* [1] - 30:15
*upset* [1] - 3:20
*USA* [5] - 2:20, 6:19, 6:22, 7:18, 8:13

## V

*VALSARTAN* [1] - 1:3
*Valsartan* [10] - 3:4, 5:11, 9:25, 10:2, 10:11, 10:13, 10:14, 10:22, 10:25, 18:25
*various* [1] - 27:6
*vendor* [1] - 30:8
*verses* [1] - 18:25
*versions* [1] - 14:23
*versus* [2] - 10:3, 10:23
*view* [1] - 3:22
*virus* [2] - 29:12, 29:19
*vocabulary* [1] - 15:9

## W

*wait* [1] - 18:21
*WALLACK* [1] - 2:12
*wants* [2] - 4:7, 30:19
*ways* [1] - 15:10
*Wednesday* [1] - 1:7
*week* [2] - 4:19, 8:19
*weekend* [3] - 13:19, 13:20, 13:23
*weeks* [7] - 9:17, 23:10, 23:15, 23:25, 24:6, 25:16, 25:20
*welcome* [2] - 6:13, 9:8
*WERNER* [1] - 2:18
*wheel* [1] - 15:18
*WHITELEY* [5] - 1:18, 1:18, 13:25, 15:4, 15:20
*Whiteley* [3] - 13:25, 14:20, 15:1
*whole* [1] - 16:21
*wholesaler* [2] - 15:4, 15:23

***wholesalers*** [4] - 2:24, 14:7, 15:14, 16:1
***willy*** [1] - 23:1
***willy-nilly*** [1] - 23:1
***word*** [1] - 7:24
***words*** [1] - 27:17
***workforce*** [1] - 29:24
***world*** [2] - 3:8, 3:10
***writing*** [1] - 14:11
***written*** [1] - 14:14
***wrote*** [1] - 27:7

## Y

***year*** [1] - 9:25
***Year's*** [1] - 29:20
***yielding*** [1] - 26:20
***York*** [1] - 2:23

## Z

***zealously*** [1] - 5:16
***ZHP*** [5] - 2:5, 21:16, 29:8, 29:9, 29:24
***ZHP's*** [1] - 30:7