1    **UNITED STATES DISTRICT COURT**
     **FOR THE DISTRICT OF NEW JERSEY**
2

3    ───────────────────────

4    **IN RE:  VALSARTAN PRODUCTS**        CIVIL ACTION NUMBER:
     **LIABILITY LITIGATION**             19-md-02875-RBK-JS
5
                                          TELEPHONIC STATUS AND
6    ───────────────────────             DISCOVERY CONFERENCE

7         Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
8         Camden, New Jersey  08101
          April 15, 2020
9         Commencing at 4:00 p.m.

10

11   **B E F O R E:**              THE HONORABLE JOEL SCHNEIDER,
                                   UNITED STATES MAGISTRATE JUDGE

12
     **A P P E A R A N C E S:**
13

14        MAZIE SLATER KATZ & FREEMAN, LLC
          BY:  ADAM M. SLATER, ESQUIRE
15        103 Eisenhower Parkway
          Roseland, New Jersey  07068
16        For the Plaintiffs

17        GOLOMB & HONIK, P.C.
          BY:  RUBEN HONIK, ESQUIRE
18        1835 Market Street, Suite 2900
          Philadelphia, Pennsylvania  19103
19        For the Plaintiffs

20        KANNER & WHITELEY, LLC
          BY:  CONLEE S. WHITELEY, ESQUIRE
21        701 Camp Street
          New Orleans, Louisiana  70130
22        For the Plaintiffs

23             Carol Farrell, Official Court Reporter
                      cfarrell.crr@gmail.com
24                        856-318-6100

25    Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.

1  **A P P E A R A N C E S (Continued):**

2

3       LEVIN PAPANTONIO
        DANIEL A. NIGH, ESQUIRE
4       316 S. Baylen, Suite 600
        Pensacola, Florida 32502
5       For the Plaintiffs

6       DUANE MORRIS LLP
        BY:  SETH A. GOLDBERG, ESQUIRE
7       30 South 17th Street
        Philadelphia, Pennsylvania  19103
8       For the Defendants, Prinston Pharmaceuticals,
        Solco Healthcare U.S. LLC, and
9       Zhejiang Huahai Pharmaceuticals Ltd.

10      PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
        BY:  CLEM C. TRISCHLER, ESQUIRE
11      One Oxford Centre, 38th Floor
        Pittsburgh, Pennsylvania  15219
12      For the Defendant, Mylan Pharmaceuticals Inc.

13      GREENBERG TRAURIG LLP
        BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
14      BY:  LORI G. COHEN, ESQUIRE
        3333 Piedmont Road, NE, Suite 2500
15      Atlanta, Georgia  30305
        For the Defendants, Teva Pharmaceutical Industries Ltd.,
16      Teva Pharmaceuticals USA, Inc., Actavis LLC,
        and Actavis Pharma, Inc.

17      ULMER & BERNE LLP
        BY:  JEFFREY D. GEOPPINGER, ESQUIRE
18      600 Vine Street, Suite 2800
        Cincinnati, Ohio  45202
19      For the Defendant, AmerisourceBergen Corporation

20      BARNES & THORNBURG LLP
        BY:  SARAH E. JOHNSTON, ESQUIRE
21      2029 Century Park East, SUite 300
        Los Angeles, California  90067
22      For the Defendants, CVS Pharmacy and the
        Retailer Defendants

23

24

25

*United States District Court*
*District of New Jersey*

```
 1   (PROCEEDINGS held telephonically before The Honorable Joel
 2   Schneider, United States Magistrate Judge, at 4:00 p.m.)
 3            THE COURT:  This is Judge Schneider.  We're on a
 4   conference call on Valsartan, Docket Number 19-2875.
 5            There's 20-some-odd people on this call.  I don't
 6   think all of those people are going to be speaking.
 7   Certainly, lead counsel are going to be speaking.  So let's
 8   just get the names of lead counsel's appearances.  Anyone else
 9   who wants to put your appearance on the record, go ahead, but
10   anyone who's going to speak, announce your name first so the
11   court reporter can take down the transcript correctly.  So
12   start with plaintiffs.
13            MR. SLATER:  Good afternoon, Your Honor.  Adam Slater
14   for plaintiffs.
15            MR. HONIK:  Ruben Honik for plaintiffs.
16            MS. WHITELEY:  Good afternoon, your Honor.  This is
17   Conlee Whiteley for plaintiffs.
18            MR. NIGH:  Good afternoon, your Honor.  This is
19   Daniel Nigh for the plaintiffs.
20            THE COURT:  Let's hear from the defendants.
21            MR. GOLDBERG:  Good afternoon, your Honor.  This is
22   Seth Goldberg for ZHP and defendants, and I think that we have
23   limited the call from our side to the Defendants' Executive
24   Committee, as the Court mentioned its preference on Monday.  I
25   think a number of the people that are on are likely associates
```

```
1   from the different firms that are involved in the case, but
2   I'll let my other colleagues on the Defendants' Executive
3   Committee introduce themselves.
4           MR. TRISCHLER:  Good afternoon, your Honor.  Clem
5   Trischler on behalf of Mylan Pharmaceuticals and the
6   Defendants' Executive Committee.
7           MS. JOHNSTON:  Good afternoon, your Honor.  Sarah
8   Johnston on behalf of defendant CVS Pharmacy and the retailer
9   defendants.
10  (Simultaneous colloquy)
11          THE COURT REPORTER:  I'm sorry.  Two counsel just
12  spoke over each other.  You'll have to start again.
13          MS. COHEN:  Yes, thank you.  Good afternoon, Your
14  Honor.  This is Lori Cohen, and Victoria Lockard is also on
15  the phone call for Teva, as well as the Executive Committee.
16          MR. GEOPPINGER:  And good afternoon, Your Honor.
17  Jeff Geoppinger on behalf of the wholesaler defendants and
18  AmerisourceBergen.
19          THE COURT:  Okay.  For the benefit of those on the
20  call who we didn't speak with earlier in the week, just to
21  make sure the record is complete, the Court asked to have a
22  very, very informal, short phone call with limited counsel on
23  Monday to discuss the issues we're going to discuss today.
24  The Court made it perfectly clear during that call on Monday,
25  which was off the record, that it wasn't deciding any issue on
```

1    Monday; it just thought it would be helpful to have an

2    informal discussion about how the case is going to proceed

3    because we're facing this unprecedented situation that all of

4    us and all of your clients are grappling with.  Nothing was

5    decided on Monday.  It was just a brainstorming session.  So

6    no one should be concerned that their interests aren't being

7    protected or they didn't have an opportunity to be heard on

8    any issue that affected them.

9         The main issue that we addressed on Monday was

10   scheduling.  I'm prepared to discuss that with the parties, to

11   hear argument on it, anyone who wants to weigh in.

12        Barring unforeseen circumstances, the Court's going

13   to rule on this call, and if there is any other issue that we

14   need to address, we'll do it, and we'll address it during this

15   call.

16        We're intending to proceed with the call at the end

17   of the month, in lieu of an in-person conference.  Judge

18   Kugler expects to be participating in that call during all or

19   part of it, so at least for purposes of that call, it would be

20   helpful if we got the typical agenda list of issues you want

21   to discuss.

22        So, unless someone disagrees, let's start with the

23   scheduling issue, hear the parties' positions, maybe the sky

24   falls in and you've come to an agreement.  I doubt it, but I

25   hope so.  And we'll get it resolved.

```
 1              Plaintiff, why don't we start with you.
 2              MR. SLATER:  Hello, your Honor.  Adam Slater.
 3              Because we spoke at length on Monday, I'll try to hit
 4    the high points, and if there is anything that anybody thinks
 5    I need to go into more, if your Honor wants me to go into
 6    anything else, I'm happy to go into more detail.
 7    (Repetitive static)
 8              MR. SLATER:  I hope that's not my phone making that
 9    sound.  Does everybody hear that?
10              UNIDENTIFIED SPEAKER:  Yes.  And I was on another
11    court call where the same sound was being made with another
12    court, and it was because of the number of people, I was told.
13              MR. SLATER:  Okay.  Well, I will do the best I can.
14              Number one on scheduling, just for the record, it's
15    been agreed between the plaintiffs and the finished-dose and
16    API manufacturers that the sales and pricing production, the
17    documents will be made by May 15th.  So that's an agreed date,
18    so that was worked out.
19              The other issues that we discussed, and I think the
20    ones that are most pressing now -- the sky is still in its
21    place; the sky has not fallen.
22              In very simple terms, what the plaintiffs' proposal
23    is is the following:  We are asking that, essentially, two
24    groups of productions be made on a rolling basis, the first to
25    be those documents that have already been collected by the
```

1    defendants, and we're talking about the manufacturing

2    defendants I believe here, so when I say defendants, I'm

3    referring to the finished-dose and API manufacturers.  And the

4    first group of those documents would be the noncustodial

5    documents that the Court entered an order on December 23,

6    2019, as to our document requests.  I believe it's Document

7    328 per our call the other day.  And defense counsel would

8    have collected those documents, we would expect, quickly after

9    that, because that was a process that was going on for weeks

10   and months of negotiations, and there were many requests that

11   were not controversial.  So to the extent those documents were

12   collected and have already been reviewed for relevancy, I

13   would think that -- and I would say for privilege, but I would

14   think, on the noncustodial documents, that the relevancy and

15   privilege reviews would be very limited, because these are

16   more essential documents and databases and things like that.

17   But those should be produced, and they should be produced on a

18   rolling basis as soon as possible.  So if those documents have

19   already been reviewed and already can be prepared for

20   production, there is no reason that that should wait for any

21   outside date, and they should start to be produced as soon as

22   possible.

23          To the extent that there are noncustodial documents

24   and custodial documents that have already been collected and

25   have been reviewed, those should be produced, again, on a

1    rolling basis, as they're ready.  So, for example, if there

2    are custodial documents that have been reviewed for several

3    custodians, there is no reason why those custodial documents

4    should not start to be rolled out.

5           And, you know, we've asked for the defendants to, if

6    necessary, if there is not agreement on this, to disclose what

7    they've collected, what they've reviewed, and what remains to

8    be reviewed so that, you know, very candidly, the Court can

9    understand whether counsel moved in a diligent fashion before

10   these issues came up.

11          I mean, nobody is, you know, talking about or saying

12   that there is not serious disruptions now, and that the world

13   hasn't gone into a new paradigm for the time being, but before

14   that happened, there was plenty of time, we believe, for a lot

15   of documents to be collected and reviewed.  And we know, for

16   example, that there is defendants that have collected all

17   their documents already.  So it's just a matter of disclosing

18   or producing what's been reviewed and finishing the review and

19   producing the rest.  And we ask that that be done on a rolling

20   basis going forward.

21          We do not subscribe to the idea that there should

22   be -- this should all be based off of outside dates down the

23   line but, rather, there should be roll-out dates and then we

24   can talk through, when we know the volume of what's being

25   produced in each category, to figure out what's a reasonable

1   amount of time to finish those productions.

2          The last category of documents would be those that

3   have not been collected yet.  My understanding is that some

4   defendants are still collecting documents.  I believe those

5   collections are supposed to be done in the next week or two,

6   so they're not real far behind, and I think those -- you know,

7   we can figure out, again, what's the scope of what's still to

8   be collected in the next few weeks, and then what the pace is

9   for production of those, again, on a rolling basis.

10          You know, we did have some discussion the other day

11  about outside dates.  Plaintiffs are not comfortable with

12  right now just entering a long, far out end date because we

13  don't know how things are going to progress.  And, for

14  example, to many of our surprise, China now may be a more open

15  and easier place to do business than New Jersey for the time

16  being because of, you know, where the quarantine stands.

17          So I think it's going to be a moving target, and as

18  to every defendant, it would be, we think, not practical to

19  enter broad deadlines across the board because, again, as

20  we've discussed, each of these manufacturers don't stand on

21  the same -- on the same footing.  They are in different

22  countries, different states, and, again, they're in different

23  places in terms of what's been collected to date.

24          So that's really our starting point, and our interest

25  as plaintiffs is we have a large document review team.  As I

1  informed the Court, we've conducted training.  Our reviewers

2  are ready to go.  Everything is ready to proceed on a remote

3  basis.  There is nothing about the quarantine or the stay at

4  home or the -- or the current circumstances that will impact

5  our ability to review the documents and communicate about them

6  and, you know, we're ready to go.

7          So I think I've at least hit what I think are the

8  most important controlling issues.  I would appreciate the

9  opportunity to respond, depending on what arguments are made

10  in opposition.

11          THE COURT:  Okay.  Defendants, we'll hear from you.

12          MR. TRISCHLER:  Your Honor, this is Clem Trischler.

13  Good afternoon.

14          I think that on the defendants' side, I will speak

15  initially to this issue, and to the extent my colleagues may

16  have additional points to add, I hope that the Court would

17  entertain them.

18          I know that we had, I think, a vibrant and lengthy

19  discussion on Monday where we introduced the Court to many of

20  these issues and many of our concerns.  But since that was off

21  the record, I beg the Court's indulgence somewhat if I'm a bit

22  repetitive, just because I want to make sure that what I view

23  to be the key and important points from the defendants'

24  perspective are actually made part of our record here today.

25          I very much appreciate Mr. Slater's perspective and

1  the perspective of the Plaintiffs' Steering Committee, but as

2  I listened to it, your Honor, what it suggests is that, you

3  know, the global pandemic that we are facing, which has

4  exacted an unprecedented toll at both a human and economic

5  level, is basically meaningless and it's business as usual,

6  where defendants should roll out documents immediately, and

7  the plaintiffs will decide at their discretion whether it's

8  proceeding fast enough and whether any extensions ought to be

9  granted at a later date.  That is essentially the proposal

10  that the plaintiff has offered.

11       In contrast to that, what we are suggesting, when we

12  are operating in, as the Court described it, an unprecedented

13  situation where businesses have been stretched to the limit,

14  what we are proposing is a reasonable alternative whereby the

15  deadline for document productions and for the completion of

16  ESI discovery be extended to November 29, with rolling

17  productions of those documents to begin on July 15.  The

18  rationale behind that proposal, your Honor, is many, but it

19  starts with the basics that I think we're all familiar with.

20       My office, for instance, has been closed since March

21  16.  The offices of virtually every counsel for every

22  defendant in this case has been closed.  The legal departments

23  of our clients across the country have shut down.  My client

24  has much of its manufacturing operations based in India.

25  Three of the four API suppliers are based in India.  At the

1  moment, the nation of India is on a national lockdown that's

2  been extended till May 3.  Only critical staff necessary to

3  carry out operations are actually allowed to work in India.

4  Unfortunately, though, public transportation has been

5  completely shut down, and I have been advised and what I have

6  learned is that that makes it exceedingly difficult, even for

7  workers who are involved in doing nothing but producing the

8  medicine, to actually get to work, and I have been told and

9  advised that much of the time, the effort of -- on the ground

10 in India is being devoted just to get people to work to do the

11 essential business of producing medicines that need to be

12 distributed across the globe.  Those that are working remotely

13 in India don't have hard drives, and so it's not a simple

14 matter of culling out the noncustodial documents and saying,

15 hey, send them to me at the push of a button.  It just can't

16 happen in this environment, your Honor.  And, in light of

17 that, we have proposed these extensions because documents --

18 it is not document production as usual and as normal.  These

19 are not requests that have been proposed for purposes of

20 delay.  We're facing economic hardship and problems that I

21 don't think any of us have seen before.

22        The other issue that I think merits discussion as to

23 why the extensions are relevant and important beyond simply

24 the difficulties of managing the production in the current

25 environment, your Honor, is that -- is the scope of the ESI

1    production itself.  And other defendants may have other

2    experiences.  I can speak to that of my client.

3            We have 52 custodians who have been identified in the

4    December order.  We've run searches of the -- against the

5    files of those 52 custodians and captured 4.8 million e-mails

6    out of a total population of 17 million.  That's 30 -- roughly

7    30 percent of all the e-mails sent and received by these

8    custodians are being -- are contemplated for production, and

9    because of that, we think that the search terms need to be

10   revisited because there's no question that those terms are

11   overly broad and yielding false positives, and I know that by

12   putting it into context.

13           Mylan, for instance, has a product portfolio in the

14   thousands; globally, some 7,000 products, your Honor.  And it

15   simply defies logic to suggest that 30 percent of all the

16   e-mails of these 52 custodians gathered over a nine-year

17   period relating to -- relate to one of 7,000 products that

18   these custodians are responsible for.  We have a massive

19   search that compiling these documents, collecting them,

20   analyzing them, reviewing them, is creating costs in the

21   millions of dollars.  We believe the time would be better

22   spent revisiting those search terms, giving the defendants the

23   economic breathing room they need to conduct essential

24   business, and allowing the discovery to proceed, frankly, in a

25   way that doesn't unfairly prejudice anyone.  There is no --

1   this litigation is not going to change substantially for

2   anyone if ESI discovery is slated in November as opposed to

3   May, June, July, or sometime in between.  And so -- and I

4   would invite any of my colleagues to add to my remarks if they

5   view it appropriate, if the Court would so entertain -- but I

6   think, given the unprecedented impact of this pandemic,

7   coupled with what we've discovered to be the extremely broad

8   nature of the search terms that would warrant revisiting, we

9   think a 180-day extension is warranted and necessary to

10  provide the parties with the time to meet and confer but, more

11  importantly, to give these businesses the breathing room they

12  need to operate.

13          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

14  would just like to follow up, specifically on ZHP, which is in

15  somewhat of a different position, as we discussed on Monday,

16  and as I've mentioned a few times to the Court since January.

17          Of course, ZHP was impacted by the coronavirus

18  throughout January, February, and March, and, as a result, it

19  is going to be doing the collection of its documents over the

20  next few weeks, and we have reported that to plaintiffs.  And

21  notwithstanding the shutdowns in New Jersey, we are working to

22  collect information remotely from New Jersey entities, but not

23  all of the information was collected, certainly, are

24  collecting some, but, you know, ZHP is really starting at the

25  beginning of the process.

1          Your Honor may recall that ZHP was given additional

2     time to negotiate with plaintiffs a set of translated search

3     terms, taking the 400-plus search terms and translating them

4     into Chinese, and those search terms were not finalized until

5     February 24th, when ZHP was already in the midst of a

6     shutdown.  So ZHP does not yet have the kind of statistics

7     that Mr. Trischler has referred to with respect to Mylan, but

8     it's noteworthy that whereas Mylan has 52 custodians that have

9     yielded at least 4.8 million e-mails, ZHP has 81 custodians,

10    and has a longer period -- relevant time period, and so it can

11    only be imagined that ZHP will have even more e-mails and

12    information to cull through and produce.

13         We, you know, as I mentioned, are going to be

14    collecting as much of that information as we can over the next

15    few weeks, but we will need time to test those search terms,

16    to test even just the quality of the translations, and that is

17    going to take time.  It's going to take time for the Chinese

18    entity and for counsel and for the vendor and for plaintiffs

19    as well, so we certainly intend to use this time, were the

20    extension granted, to get through that information.  But on

21    the back end, just as ZHP was given an extra month back in

22    December, we would request an extra 45 days on the back end,

23    given what we know is now going to be a very voluminous set of

24    documents and information, unless there can be serious

25    negotiation as to the scope of the search terms.

```
 1          MS. LOCKARD:  And, your Honor, this is Victoria

 2   Lockard for Teva.

 3          Just briefly, I wanted to add to what both

 4   Mr. Trischler and Mr. Goldberg had said because Teva's

 5   experience has been quite similar.

 6          So, in January, we immediately started to collect the

 7   e-mail files from our 36 agreed custodians.  We processed the

 8   e-mail files of a representative sample of 16 custodians to

 9   run test searches.  We have had several rounds -- because of

10   the volume of documents and e-mails returned, we've had

11   several rounds of remediations in January and February.  We've

12   had meet and confers with plaintiffs' counsel to try to refine

13   those, to the extent possible.  And we're currently, despite

14   these efforts ongoing the first three months of the year,

15   we're still getting hits on nearly 4 million UNIX documents

16   that account for over two terabytes of data, and, you know,

17   this is nearly 45 percent of all the UNIX documents in these

18   custodial files.  In other words, we're returning around 44,

19   45 percent of these custodians' e-mails from their entire

20   period of the searchs, which certainly 45 percent do not

21   relate to the issues in this case.  So, you know, we have --

22   there has been a great deal of work and effort put into this

23   before the pandemic hit.

24          I want the Court to rest assured that we did, you

25   know, take this seriously and have been making efforts to get
```

 1  these productions ready.  But at this point the next step for

 2  us really is the same as described by Mr. Trischler, which we

 3  feel that we read need to talk about, the refinement of the

 4  search terms, which was expressly contemplated in the Court's

 5  December 23rd order.

 6          In terms of our noncustodial documents, a large

 7  portion of them exists in hard copy in Israel and then

 8  [static] and, you know, we, given the pandemic issues, where

 9  we had plans in place to begin the process, we have not been

10  able to do that because of the pandemic.

11          So that's a brief overview of where we are.  I know

12  other defendants are having similar issues, not that we need

13  to go into every one, but this should just give the Court a

14  flavor for what we've all been doing and where things stand

15  today.

16          THE COURT:  Before we hear from plaintiffs, any other

17  defendants want to be heard?

18          (No response.)

19          THE COURT:  All right.  I have a question for

20  Mr. Trischler and Ms. Lockard, and I expect, if I don't ask

21  this question, Mr. Slater is going to ask this question.

22          In effect, isn't what you're asking the Court to do,

23  to revisit the search terms and strings that we worked so hard

24  for months to finalize?  And why is it now the defendants are

25  saying, well, even though we agreed to these, and the Court

```
 1   entered its order in December, we're going to go back and
 2   revisit the issue?  And, oh, by the way -- and I'm sure we're
 3   going to hear from Mr. Slater on this -- wasn't it Mr. Slater
 4   who, on behalf of the plaintiffs early in this process, asked
 5   the defendants to do exactly what apparently they've done, to
 6   do some sort of sampling so they would have some idea about
 7   the extent of the production, and these sorts of issues could
 8   be hashed out before the Court entered its order?  And now,
 9   after we've worked months and months and months on those
10   search terms and strings, we finalized them, we agreed on
11   them, now you're coming back and saying we have to go back
12   again because you didn't do the preliminary work that
13   Mr. Slater had asked you to do at least six months ago, that
14   the defendants didn't do?  So how do I address that issue,
15   when I'm sure Mr. Slater is going to raise it when we turn the
16   floor over to him?
17             MR. TRISCHLER:  Your Honor, this is Clem Trischler.
18   May I tackle your question first?
19             THE COURT:  Of course.
20             MR. TRISCHLER:  Thank you.
21             Your Honor is correct that the search terms and
22   custodial list were approved in December, but what's also
23   undoubtedly true and what was made clear at that time was that
24   the search terms, like every discovery order in this case,
25   could be revisited for cause shown.
```

```
 1              In fact, at the hearing on December 11, 2019, your
 2   Honor stated -- and I pulled the transcript because I
 3   anticipated this question -- your Honor stated, "We're going
 4   to set the search terms, the custodians, the document
 5   requests, but if there is good cause on either side to either
 6   add or subtract from what we agree to and order, the Court
 7   will entertain the application."  That was at Page 26 of the
 8   December 11 hearing transcript.  And this is not an issue,
 9   your Honor, quite candidly and fairly, that the defendants are
10   raising now.
11              In January we approached the plaintiff with concerns
12   of the search terms.  In the agenda statements filed on
13   January 27, we indicated -- and, again, I'll quote for
14   purposes of the record -- "Mylan has begun the process of
15   custodial collections.  This process has revealed the
16   potential overbreadth of the search terms.  Mylan's counsel
17   has raised its concerns with plaintiffs' counsel and looks
18   forward to continuing those discussions to ensure the scope
19   of ESI is reasonable and proportionate."  That was at Docket
20   Number 353.
21              On February 25, which was our next agenda statement
22   that was filed in advance of the February conference, we again
23   mentioned the concerns with the ESI search terms and indicated
24   that we were putting together a counterproposal, which was
25   ultimately submitted to the plaintiff in March, and so I would
```

1   submit, your Honor, that the search terms, while certainly

2   negotiated and ordered in December, were far from ideal.

3   Those search terms have been part of an ongoing dialogue, and

4   our view is that you can't move forward with production until

5   the issues of the search terms are resolved.  I believe we

6   fairly raised those concerns.  They're real.  And I don't

7   think it's in anyone's best interests to run searches that are

8   going to require reviews of -- in the case of what my client

9   has seen, over 30 percent of all e-mails in the case, and

10  Ms. Lockard has mentioned with her client, 40 percent.

11  There's absolutely no harm in taking a look at this, the Court

12  indicated a willingness to do so, and that's what we're

13  asking.

14          THE COURT:  Let me just --

15          UNIDENTIFIED SPEAKER:  Your Honor --

16          THE COURT:  Let me just add something, and I'll turn

17  the floor over to you, Ms. Johnston.

18          I stand by my statement about good cause and making

19  an application to increase or decrease the search terms.

20  That's not going to change.  They're not cast in stone.

21  However, in making that good-cause determination, doesn't the

22  Court have to consider the fact whether or not the issues

23  you're now raising should have been raised before the Court

24  entered its order on December 23rd?  Unless I'm wrong, I

25  recall plaintiffs asking the defendants to do some sort of

1  sampling to avoid this type of issue.  If I'm right about

2  that, and we'll hear from Mr. Slater, shouldn't I take that

3  into consideration in determining whether now the defendants

4  show good cause to change what could have and should have been

5  done in December?

6          So now I'll turn the floor over to Ms. Johnston.

7          MS. LOCKARD:  This is Victoria Lockard, for the

8  record, and, your Honor, that --

9  (Simultaneous crosstalk)

10         MS. LOCKARD:  That's okay -- for Teva, from

11 Greenberg.

12         So I just wanted to, in view of what Mr. Trischler

13 said, I also wanted to point out with reference to the

14 December 23rd order, if you look at the search terms procedure

15 on Page 55 of that 57-page order, it says:  The following

16 terms shall remain on the stand-alone terms list but can be

17 tested and refined further if a need is shown after documents

18 are collected and preliminarily reviewed.

19         So, from our perspective, you know, the procedure as

20 set out in this order was we would collect, test, and refine

21 further if needed.  And I think that's generally the process

22 that we all, you know, are aware of and do in other cases

23 involving these types of search terms and volume of documents.

24 So, from Teva's perspective, you know, this is not the first

25 time we are raising this.  We did raise it and request it in

1    the meet and confer with plaintiffs' counsel.  We had a meet

2    and confer phone call and several e-mails back in February,

3    and we have been working to try to resolve this.  So, you

4    know, it is not, you know, being brought up for the first time

5    here, and we felt that we had, you know, ample opportunity to

6    do the testing and the refinement pursuant to the Court's

7    order.

8              THE COURT:  Mr. Slater, let's hear from plaintiff.

9              MR. SLATER:  Thank you, your Honor.

10             When that order was entered, with that limited

11   language, your Honor is correct.  I had been asking for a

12   collaborative process with the defendants prior to that, where

13   we could run test searches, and they said -- and Behram --

14   Mr. Parekh can correct me if I'm wrong -- they said, we're not

15   doing that.  And they said, well, that's the smart thing to do

16   up front because that's what's normally done, and we could

17   collaborate on it, we can test the terms, and they said, we're

18   not going to do it.  And they agreed to the search terms

19   through a negotiated process.

20             That language in the order about testing and refining

21   if necessary, I can tell you what our understanding was --

22   that if there was an issue, they were going to identify it

23   right away.  They were going to collect the documents, that --

24   everyone knew that order was being entered weeks before it was

25   entered because your Honor told everybody that's the date and

there will never be an extension, and that's the date the
search terms will be put in place.  And it was our
understanding if they're going to find an issue, they're going
to raise it right away, and it might be as to a few limited
terms, and what they would give us is, well, this wild card
term is a problem, this modifier is a problem, and here's the
data, here's the hit report, here's the type of data that's
used to test these terms.

        I believe that Teva raised -- and I have an e-mail
from one of my co-counsel -- of like one or two wild-card
terms that they had a question about.  There was nothing --
there was nothing that was substantial, and nothing [static]
about it, and we said, okay, let's talk about it.  We were
never given any data, and then nothing happened.

        So good cause contemplates what they do before, when
we offered a process and asked for a process where testing
would be done, and it wasn't done.

        Another problem was that good -- another issue with
good cause is that good cause contemplates moving quickly and
timely after the order was entered, which has not happened.
So --

        And what you're hearing here, Judge, is a discussion
of the volume of documents that have been found, and I think
they're talking page counts, not document counts, but whatever
it may be, we're not surprised to hear these numbers.  We

1    expected millions and millions of documents to be collected.

2    So those numbers are, you know, with all due respect, not

3    meaningful in this context.  What would have been meaningful

4    is the type of data on the hit counts, and I'm using that as a

5    paraphrase.  We have a list of the types of data that you

6    would need for something like this, to be able to justify any

7    changes, and we would have listened.  And we said to them way

8    back when, well, if you have an issue, show us the data, and

9    nobody produced it, which is also very, very confusing because

10   if counsel wants to move the process forward -- and this has

11   nothing to do with their clients.  These are lawyer- and

12   vendor-specific issues.  They would have, we would have

13   thought, come right to us with the data and said here's the

14   hit count, here's the problem with these modifiers.  That's

15   never been produced.  And now, months later, just to say we

16   want to embark on this process for the first time, we think

17   that it's beyond any concept of good cause because they're

18   essentially asking for a massive endless delay, to, quote,

19   unquote, meet and confer about the custodial search terms in

20   light of this background.

21          So we're really not in a position at this point to

22   say yes to that, not in light of the passage of time, and not

23   in light of what we believe is the Court's fundamental

24   concerns to both be reasonable in light of the circumstances,

25   but also to try to move the case ahead, and we believe that

 1   this is a manageable situation from the perspective of

 2   starting with the documents that counsel has and then moving

 3   on to the -- so far what we've heard is that ZHP has to

 4   collect the balance of the documents in the next week or so.

 5   I would assume that ZHP collected massive numbers of documents

 6   before these problems started, not just waiting for the

 7   Chinese search terms -- Chinese language search terms, but

 8   noncustodial documents in the United States, there's many

 9   English language documents, there's noncustodial documents,

10   so -- and that's going to be done anyway because they have a

11   lot of documents already collected.

12         And the last thing I'll say on the search terms issue

13   is we spent an hour and a half on the phone, your Honor, the

14   other day having a candid, open conversation, and we didn't

15   hear one comment from the defense about search terms.  I

16   frankly thought, in light of the discussion, that the few

17   things we had heard about it over the course of time, that

18   they had determined no, we don't think that that's necessary.

19   And I'll tell you, I just want to come back to something.  I'm

20   sorry if I'm jumping around a little.

21         But I have an e-mail in front of me that when we

22   wrote to the Court on December 10, we pointed out that the

23   defendants had run no hit counts and done no sampling because,

24   again, that was documented to the Court, so you are correct,

25   your Honor.  I just wanted to make sure that I actually was

1  able to point to the document and confirm that, that we have

2  begged them to do it, and they didn't want to do it, and they

3  wanted to just take it as it comes.  It would not be good

4  cause if they did that knowing, well, we're going to come back

5  and try to do all this on the back of it.

6         A couple other small points, because I've been

7  talking for awhile.  Number one --

8         THE COURT REPORTER:  Mr. Slater, this is the court

9  reporter.  I need you to keep your voice up.  With that noise

10  going off, you have to keep your voice up.  Thank you.

11         MR. SLATER:  Okay.  I took myself off speaker.  I

12  hope this helps.  I apologize.

13         Number one, the documents have been collected, so the

14  fact that lawyers are working remotely, all are working

15  remotely, I think that everybody is starting to realize that

16  they're absolutely -- this is a process that can work very

17  well.  I mean, we're all arguing motions on Zoom, we're having

18  conferences on Zoom, depositions on Zoom, and document review

19  is a remote process by definition, anyway.

20         Number two, to the extent that the defendants talk

21  about these difficult circumstances -- which nobody is going

22  to say that the circumstances worldwide aren't difficult -- I

23  think that they would then need to actually talk about the

24  specific circumstances of that defendant, when did they

25  collect the documents, what did they do to test those

1    documents, what did they do to show diligence, to try to be

2    able to explain why more delays should be permitted, and I

3    don't think that anyone really can do that because I think

4    that the record, as it's been laid out, shows that this just

5    was not pursued in any sort of a manner that would allow them

6    to say yes, we took care of this up front and we did

7    everything we needed to do -- to be able to now say, in the

8    middle of April, we want to start the process basically from

9    scratch.

10          So I'll let any other plaintiff counsel who wants to

11   add to that, but I think it's -- you know, I think that the

12   record is very clear that the noncustodial documents could be

13   produced right away.  The custodial documents for the search

14   terms have been collected, and they should start to roll out

15   very, very soon.  That's our position.

16          THE COURT:  Okay.  Anyone else want to be heard?

17          (No response.)

18          THE COURT:  Okay.  Hearing nothing, except the

19   banging that we all hear in the background, the Court is going

20   to enter an order with the schedule that it is going to set

21   forth in this colloquy.  I'll read it to you, but it will be

22   put in a Court order to be entered.

23          From the beginning of the case, the Court has guided

24   the management of the case by a couple of touchstones.

25          One is that we were going to move the case at a

1   reasonable pace -- not too fast, not too slow.  We wanted to

2   make sure everybody's interests are protected.  We understand

3   plaintiffs in the typical case want to move a case faster than

4   the defendants, and we have to balance the interests of the

5   parties.

6          And the second touchstone was be fair to both

7   parties, and not favor one side over the other, of course.

8   And that is what the Court is going to do when it fashions the

9   order to be entered in the case.  And you'll have to let me

10  finish because I don't want you to get the wrong impression

11  from what you may hear at the beginning than what you hear at

12  the end.

13         No one disputes that we are facing an unprecedented

14  situation.  Given the unprecedented situation that we're

15  facing, on balance, the Court, in terms of scheduling, has to

16  give the benefit of the doubt to the interests of the health,

17  the safety, and the economic well-being of the parties.

18         The Court does not believe it's productive to do an

19  individual analysis and inquiry of each defendant to determine

20  individual deadlines for each defendant.  That's not the way

21  it has typically done things in this case, and that's not the

22  way the Court intends to manage the case.

23         The Court is going to grant, with some provisos,

24  defendants' requested extension of time, based on what it

25  already stated and the Court's conclusion that there will be

1    no material prejudice to the plaintiffs from the requested

2    extension.  The Court has absolutely zero intention of putting

3    the case on ice.  And, as hopefully the plaintiff will

4    understand and see from the order to be entered, sufficient

5    safety valves have been put in place and will be put in place

6    to protect everyone's interests.

7              The order to be entered by the Court will provide as

8    follows:

9              That the agreed upon sales and pricing information by

10   the API and finished-dose-manufacturer defendants will be

11   produced by May 15th, 2020.  And throughout this order, we are

12   only talking about this group of defendants.

13             These defendants shall commence the rolling

14   production of the documents required to be produced in Docket

15   Number 328 by no later than July 15th, 2020, as defendants

16   request.  This production shall be completed by November 29th,

17   2020, as defendants request, with the proviso that rolling

18   productions shall be produced by September 1st, 2020, October

19   1st, 2020, and November 1st, 2020.

20             By no later than May 15th, 2020, plaintiffs shall

21   prioritize the documents they request to be produced earliest.

22   Defendants shall use good-faith, reasonable efforts to comply

23   with plaintiffs' prioritization.

24             To the extent responsive custodial and noncustodial

25   documents are currently in the possession of these defendants'

1    attorneys or consultants, defendants shall use reasonable

2    good-faith efforts to produce the documents by July 15, 2020.

3         It is further ordered this order is entered without

4    prejudice to any parties' rights to move to compress or extend

5    these deadlines for good cause shown.

6         Let me just expound on that a moment.  Typically,

7    when the Court refers to a good-cause change in scheduling

8    orders, it refers to extensions of time.  The Court is

9    explicitly making it clear that, depending upon developments

10   in the world, as to specific defendants, as to this virus, the

11   Court will entertain an application by the plaintiffs to

12   compress these deadlines for good cause shown.

13        It is further ordered that all requirements to

14   preserve relevant documents and to produce core and FDA

15   documents shall remain in place.

16        The Court reserves the right to compress these

17   deadlines on its own initiative, depending upon relevant

18   developments regarding the coronavirus.

19        Any current requests to revise Court-ordered search

20   terms is denied.

21        This order is entered without prejudice to

22   defendants' right to move to revise Court-ordered deadlines

23   after defendants' meet and confers with plaintiffs' counsel.

24        Defendants' application will not -- repeat, will

25   not -- work to extend the current scheduling deadlines.

1        ZHP's separate request to extend these deadlines 45

2    days is denied.  ZHP started this process with a handicap

3    because it faced this virus situation first.  Now, however, it

4    appears -- but, of course, the Court has no way of knowing for

5    certain -- that ZHP is ahead of the curve because it appears

6    that things in China have developed faster than they have in

7    the United States.  So, in effect, ZHP is caught up and is in

8    no better or worse position than any other defendant in the

9    case.

10        That's the Court order with regard to scheduling and

11    search terms.  That will be in writing, and, hopefully, it

12    will be entered in a day or two.

13        Now that you have an understanding of the scheduling

14    deadlines in the case, counsel, are there any other issues or

15    matters we need to address on this call?

16        MR. SLATER:  Your Honor, it's Adam Slater.  I just

17    wanted to ask for a clarification on one thing, if I could.

18        Your Honor, your ruling of the provision that any

19    party can move to compress or extend the deadlines based on

20    good cause, so that we don't have to revisit the criteria how

21    we're going to get there, from the perspective, is the

22    starting point is going to be to understand what has been

23    collected, especially beginning with noncustodial documents

24    that we believe could be easily produced, because they're not

25    dependent on search terms, they're not dependent on relevancy

1    or privilege reviews, for the most part.

2            If we're going to be able to meet and confer, we'd

3    like to be able to have the Court's imprimatur that the

4    defendants have a discussion with us and be transparent and

5    tell us what has been collected, and be able to have a

6    discussion, because we think that if there are significant --

7    or whatever has been collected that's noncustodial to begin

8    with, we believe there would be compelling good cause to

9    compress the deadlines for that, because if it's sitting on a

10   server and is either ready or could be made ready in the next

11   few weeks to be produced, we don't see any reason why that

12   should be delayed.

13           So I just wanted to ask for your Honor's guidance on

14   that, because we think that's really its own special case, and

15   that really cries out for a shorter deadline.

16           THE COURT:  Mr. Slater, the issue that you raise has

17   been completely thought out and evaluated by the Court.  And

18   when it tried to balance the interests in this case, the

19   conclusion it came to was that, one, if the documents have

20   already been collected and they're in the possession of the

21   attorneys or the consultants, they have to be produced by July

22   15.

23           The Court is not going to consider -- if the

24   defendants want to produce them earlier than that, that's

25   fine.  But, like I said, in the current situation, the benefit

1   of the doubt, the scales fall in favor of giving the benefit

2   of the doubt to the defendants who requested more time.

3   People are worried about their jobs, they're worried about

4   their paychecks, they're worried about how they're going to

5   pay the rent, how they're going to get food at the

6   supermarket, and I'd rather people worry about those sorts of

7   issues than whether they're going to meet a Court-ordered

8   deadline to produce documents that may already be in their

9   files by June 1 instead of July 15.  So maybe, maybe not,

10  there's a little bit of fat in that deadline, but I'd rather

11  give the benefit of the doubt to the defendants on that, so

12  that people who have really important life-threatening issues

13  to worry about can worry about those issues, rather than

14  production by an earlier date.

15          And, oh, by the way, of course we understand the

16  plaintiffs want to move the case.  We want to move the case

17  probably more than you do.  But there is going to be no

18  material prejudice, I'm sorry, to the plaintiffs if a certain

19  subset of custodial documents are produced on July 15th or

20  June 1.

21          So, the Court understands the request that you're

22  making.  It has evaluated that request previously, encompassed

23  it within its orders, and will not entertain a request that

24  defendants produce earlier than July 15 any responsive

25  documents currently in their possession.

```
 1            Any other questions?

 2            MR. SLATER:  None from me, your Honor.

 3            MR. GOLDBERG:  None from the ZHP defendants, your

 4  Honor.

 5            THE COURT:  Okay, counsel, so we dealt with the

 6  issues on this call.

 7            If you could meet and confer over the next week or

 8  two, we're going to have that April 29th conference by phone.

 9  Let me just think about whether we need to do a separate

10  conference with just me and Judge Kugler.  Probably it would

11  be helpful to have the issues the parties want to discuss

12  before we make that decision.  Usually you send it in the day

13  before the conference, but if you could send it in two or

14  three days before the conference, that would be helpful, and

15  then we can decide whether or not to have one general

16  conference call with Judge Kugler and myself or start with me,

17  finish that up, and then go to Judge Kugler.

18            So if there's no further issues, we'll adjourn this

19  call.  Thank you, court reporter; thank you, counsel on the

20  phone; and we hope you stay safe.  We are adjourned.

21            (The proceedings concluded at 4:57 p.m.)

22

23            - - - - - - - - - - - - - - -

24

25
```

1

2  I certify that the foregoing is a correct transcript from the

3  record of proceedings in the above-entitled matter.

4

5  _/S/ Carol Farrell, NJ-CRCR, FCRR, RDR, CRR, RMR, CRC, CRI_
   _Court Reporter/Transcriber_

6

7  _April 16, 2020_
        _Date_

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

/S [1] - 35:5

## 0

07068 [1] - 1:15
08101 [1] - 1:8

## 1

1 [2] - 33:9, 33:20
10 [1] - 25:22
103 [1] - 1:14
11 [2] - 19:1, 19:8
15 [6] - 1:8, 11:17, 30:2, 32:22, 33:9, 33:24
15219 [1] - 2:11
15th [5] - 6:17, 29:11, 29:15, 29:20, 33:19
16 [3] - 11:21, 16:8, 35:7
17 [1] - 13:6
17th [1] - 2:6
180-day [1] - 14:9
1835 [1] - 1:17
19-2875 [1] - 3:4
19-md-02875-RBK-JS [1] - 1:4
19103 [2] - 1:18, 2:7
1st [3] - 29:18, 29:19

## 2

20-some-odd [1] - 3:5
2019 [2] - 7:6, 19:1
2020 [10] - 1:8, 29:11, 29:15, 29:17, 29:18, 29:19, 29:20, 30:2, 35:7
2029 [1] - 2:21
23 [1] - 7:5
23rd [3] - 17:5, 20:24, 21:14
24th [1] - 15:5
25 [1] - 19:21
2500 [1] - 2:14
26 [1] - 19:7
27 [1] - 19:13
2800 [1] - 2:18
29 [1] - 11:16
2900 [1] - 1:17
29th [2] - 29:16, 34:8

## 3

3 [1] - 12:2
30 [5] - 2:6, 13:6, 13:7, 13:15, 20:9

300 [1] - 2:21
30305 [1] - 2:14
316 [1] - 2:3
32502 [1] - 2:4
328 [2] - 7:7, 29:15
3333 [1] - 2:14
353 [1] - 19:20
36 [1] - 16:7
38th [1] - 2:10

## 4

4 [1] - 16:15
4.8 [2] - 13:5, 15:9
40 [1] - 20:10
400-plus [1] - 15:3
44 [1] - 16:18
45 [5] - 15:22, 16:17, 16:19, 16:20, 31:1
45202 [1] - 2:18
4:00 [2] - 1:9, 3:2
4:57 [1] - 34:21
4th [1] - 1:7

## 5

52 [4] - 13:3, 13:5, 13:16, 15:8
55 [1] - 21:15
57-page [1] - 21:15

## 6

600 [2] - 2:3, 2:18

## 7

7,000 [2] - 13:14, 13:17
701 [1] - 1:20
70130 [1] - 1:21

## 8

81 [1] - 15:9
856-318-6100 [1] - 1:24

## 9

90067 [1] - 2:21

## A

ability [1] - 10:5
able [8] - 17:10, 24:6, 26:1, 27:2, 27:7, 32:2, 32:3, 32:5
above-entitled [1] - 35:3
absolutely [3] - 20:11,

26:16, 29:2
account [1] - 16:16
Actavis [2] - 2:15, 2:16
ACTION [1] - 1:3
Adam [3] - 3:13, 6:2, 31:16
ADAM [1] - 1:14
add [6] - 10:16, 14:4, 16:3, 19:6, 20:16, 27:11
additional [2] - 10:16, 15:1
address [4] - 5:14, 18:14, 31:15
addressed [1] - 5:9
adjourn [1] - 34:18
adjourned [1] - 34:20
advance [1] - 19:22
advised [2] - 12:5, 12:9
affected [1] - 5:8
afternoon [9] - 3:13, 3:16, 3:18, 3:21, 4:4, 4:7, 4:13, 4:16, 10:13
agenda [3] - 5:20, 19:12, 19:21
ago [1] - 18:13
agree [1] - 19:6
agreed [7] - 6:15, 6:17, 16:7, 17:25, 18:10, 22:18, 29:9
agreement [2] - 5:24, 8:6
ahead [3] - 3:9, 24:25, 31:5
aided [1] - 1:25
ALFANO [1] - 2:9
allow [1] - 27:5
allowed [1] - 12:3
allowing [1] - 13:24
alone [1] - 21:16
alternative [1] - 11:14
AmerisourceBergen [2] - 2:19, 4:18
amount [1] - 9:1
ample [1] - 22:5
analysis [1] - 28:19
analyzing [1] - 13:20
AND [1] - 1:5
Angeles [1] - 2:21
announce [1] - 3:10
anticipated [1] - 19:3
anyway [2] - 25:10, 26:19
API [4] - 6:16, 7:3, 11:25, 29:10
apologize [1] - 26:12
appearance [1] - 3:9

appearances [1] - 3:8
application [4] - 19:7, 20:19, 30:11, 30:24
appreciate [2] - 10:8, 10:25
approached [1] - 19:11
appropriate [1] - 14:5
approved [1] - 18:22
April [4] - 1:8, 27:8, 34:8, 35:7
arguing [1] - 26:17
argument [1] - 5:11
arguments [1] - 10:9
associates [1] - 3:25
assume [1] - 25:5
assured [1] - 16:24
Atlanta [1] - 2:14
attorneys [2] - 30:1, 32:21
avoid [1] - 21:1
aware [1] - 21:22
awhile [1] - 26:7

## B

background [2] - 24:20, 27:19
balance [4] - 25:4, 28:4, 28:15, 32:18
banging [1] - 27:19
BARNES [1] - 2:20
barring [1] - 5:12
based [5] - 8:22, 11:24, 11:25, 28:24, 31:19
basics [1] - 11:19
basis [6] - 6:24, 7:18, 8:1, 8:20, 9:9, 10:3
Baylen [1] - 2:3
beg [1] - 10:21
begged [1] - 26:2
begin [3] - 11:17, 17:9, 32:7
beginning [4] - 14:25, 27:23, 28:11, 31:23
begun [1] - 19:14
behalf [4] - 4:5, 4:8, 4:17, 18:4
behind [2] - 9:6, 11:18
Behram [2] - 22:13
benefit [5] - 4:19, 28:16, 32:25, 33:1, 33:11
BERNE [1] - 2:17
best [2] - 6:13, 20:7
better [2] - 13:21, 31:8
between [2] - 6:15, 14:3
beyond [2] - 12:23,

24:17
bit [2] - 10:21, 33:10
board [1] - 9:19
BOSICK [1] - 2:9
brainstorming [1] - 5:5
breathing [2] - 13:23, 14:11
brief [1] - 17:11
briefly [1] - 16:3
broad [3] - 9:19, 13:11, 14:7
brought [1] - 22:4
Building [1] - 1:7
business [4] - 9:15, 11:5, 12:11, 13:24
businesses [2] - 11:13, 14:11
button [1] - 12:15
BY [9] - 1:14, 1:17, 1:20, 2:6, 2:10, 2:13, 2:13, 2:17, 2:20

## C

California [1] - 2:21
Camden [1] - 1:8
Camp [1] - 1:20
candid [1] - 25:14
candidly [2] - 8:8, 19:9
captured [1] - 13:5
card [2] - 23:5, 23:10
care [1] - 27:6
Carol [2] - 1:23, 35:5
carry [1] - 12:3
case [23] - 4:1, 5:2, 11:22, 16:21, 18:24, 20:8, 20:9, 24:25, 27:23, 27:24, 27:25, 28:3, 28:9, 28:21, 28:22, 29:3, 31:9, 31:14, 32:14, 32:18, 33:16
cases [1] - 21:22
cast [1] - 20:20
category [2] - 8:25, 9:2
caught [1] - 31:7
Centre [1] - 2:10
Century [1] - 2:21
certain [2] - 31:5, 33:18
certainly [5] - 3:7, 14:23, 15:19, 16:20, 20:1
certify [1] - 35:2
cfarrell.crr@gmail. com [1] - 1:23
change [4] - 14:1,

20:20, 21:4, 30:7
**changes** [1] - 24:7
**China** [2] - 9:14, 31:6
**Chinese** [4] - 15:4, 15:17, 25:7
**Cincinnati** [1] - 2:18
**circumstances** [6] - 5:12, 10:4, 24:24, 26:21, 26:22, 26:24
**CIVIL** [1] - 1:3
**clarification** [1] - 31:17
**clear** [4] - 4:24, 18:23, 27:12, 30:9
**CLEM** [1] - 2:10
**Clem** [3] - 4:4, 10:12, 18:17
**client** [4] - 11:23, 13:2, 20:8, 20:10
**clients** [3] - 5:4, 11:23, 24:11
**closed** [2] - 11:20, 11:22
**co** [1] - 23:10
**co-counsel** [1] - 23:10
**Cohen** [2] - 1:7, 4:14
**COHEN** [2] - 2:13, 4:13
**collaborate** [1] - 22:17
**collaborative** [1] - 22:12
**colleagues** [3] - 4:2, 10:15, 14:4
**collect** [6] - 14:22, 16:6, 21:20, 22:23, 25:4, 26:25
**collected** [21] - 6:25, 7:8, 7:12, 7:24, 8:7, 8:15, 8:16, 9:3, 9:8, 9:23, 14:23, 21:18, 24:1, 25:5, 25:11, 26:13, 27:14, 31:23, 32:5, 32:7, 32:20
**collecting** [4] - 9:4, 13:19, 14:24, 15:14
**collection** [1] - 14:19
**collections** [2] - 9:5, 19:15
**colloquy** [2] - 4:10, 27:21
**comfortable** [1] - 9:11
**coming** [1] - 18:11
**commence** [1] - 29:13
**Commencing** [1] - 1:9
**comment** [1] - 25:15
**Committee** [5] - 3:24, 4:3, 4:6, 4:15, 11:1
**communicate** [1] - 10:5
**compelling** [1] - 32:8

**compiling** [1] - 13:19
**complete** [1] - 4:21
**completed** [1] - 29:16
**completely** [2] - 12:5, 32:17
**completion** [1] - 11:15
**comply** [1] - 29:22
**compress** [5] - 30:4, 30:12, 30:16, 31:19, 32:9
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concept** [1] - 24:17
**concerned** [1] - 5:6
**concerns** [6] - 10:20, 19:11, 19:17, 19:23, 20:6, 24:24
**concluded** [1] - 34:21
**conclusion** [2] - 28:25, 32:19
**conduct** [1] - 13:23
**conducted** [1] - 10:1
**confer** [6] - 14:10, 22:1, 22:2, 24:19, 32:2, 34:7
**conference** [8] - 3:4, 5:17, 19:22, 34:8, 34:10, 34:13, 34:14, 34:16
**CONFERENCE** [1] - 1:6
**conferences** [1] - 26:18
**confers** [2] - 16:12, 30:23
**confirm** [1] - 26:1
**confusing** [1] - 24:9
**CONLEE** [1] - 1:20
**Conlee** [1] - 3:17
**consider** [2] - 20:22, 32:23
**consideration** [1] - 21:3
**consultants** [2] - 30:1, 32:21
**contemplated** [2] - 13:8, 17:4
**contemplates** [2] - 23:15, 23:19
**context** [2] - 13:12, 24:3
**Continued** [1] - 2:1
**continuing** [1] - 19:18
**contrast** [1] - 11:11
**controlling** [1] - 10:8
**controversial** [1] - 7:11
**conversation** [1] - 25:14

**Cooper** [1] - 1:7
**copy** [1] - 17:7
**core** [1] - 30:14
**coronavirus** [2] - 14:17, 30:18
**Corporation** [1] - 2:19
**correct** [5] - 18:21, 22:11, 22:14, 25:24, 35:2
**correctly** [1] - 3:11
**costs** [1] - 13:20
**counsel** [19] - 3:7, 4:11, 4:22, 7:7, 8:9, 11:21, 15:18, 16:12, 19:16, 19:17, 22:1, 23:10, 24:10, 25:2, 27:10, 30:23, 31:14, 34:5, 34:19
**counsel's** [1] - 3:8
**count** [1] - 24:14
**counterproposal** [1] - 19:24
**countries** [1] - 9:22
**country** [1] - 11:23
**counts** [4] - 23:24, 24:4, 25:23
**couple** [2] - 26:6, 27:24
**coupled** [1] - 14:7
**course** [6] - 14:17, 18:19, 25:17, 28:7, 31:4, 33:15
**Court** [46] - 1:23, 3:24, 4:21, 4:24, 7:5, 8:8, 10:1, 10:16, 10:19, 11:12, 14:5, 14:16, 16:24, 17:13, 17:22, 17:25, 18:8, 19:6, 20:11, 20:22, 20:23, 25:22, 25:24, 27:19, 27:22, 27:23, 28:8, 28:15, 28:18, 28:22, 28:23, 29:2, 29:7, 30:7, 30:8, 30:11, 30:16, 30:19, 30:22, 31:4, 31:10, 32:17, 32:23, 33:7, 33:21, 35:5
**COURT** [17] - 1:1, 3:3, 3:20, 4:11, 4:19, 10:11, 17:16, 17:19, 18:19, 20:14, 20:16, 22:8, 26:8, 27:16, 27:18, 32:16, 34:5
**court** [5] - 3:11, 6:11, 6:12, 26:8, 34:19
**Court's** [7] - 5:12, 10:21, 17:4, 22:6, 24:23, 28:25, 32:3
**Court-ordered** [3] -

30:19, 30:22, 33:7
**Courthouse** [1] - 1:7
**CRC** [1] - 35:5
**CRCR** [1] - 35:5
**creating** [1] - 13:20
**CRI** [1] - 35:5
**cries** [1] - 32:15
**criteria** [1] - 31:20
**critical** [1] - 12:2
**crosstalk** [1] - 21:9
**CRR** [1] - 35:5
**cull** [1] - 15:12
**culling** [1] - 15:9
**current** [5] - 10:4, 12:24, 30:19, 30:25, 32:25
**curve** [1] - 31:5
**custodial** [10] - 7:24, 8:2, 8:3, 16:18, 18:22, 19:15, 24:19, 27:13, 29:24, 33:19
**custodians** [11] - 8:3, 13:3, 13:5, 13:8, 13:16, 13:18, 15:8, 15:9, 16:7, 16:8, 19:4
**custodians'** [1] - 16:19
**CVS** [2] - 2:22, 4:8

## D

**Daniel** [1] - 3:19
**DANIEL** [1] - 2:3
**data** [8] - 16:16, 23:7, 23:14, 24:4, 24:5, 24:8, 24:13
**databases** [1] - 7:16
**date** [8] - 6:17, 7:21, 9:12, 9:23, 11:9, 22:25, 23:1, 33:14
**Date** [1] - 35:7
**dates** [3] - 8:22, 8:23, 9:11
**DAVIS** [1] - 2:13
**days** [3] - 15:22, 31:2, 34:14
**deadline** [4] - 11:15, 32:15, 33:8, 33:10
**deadlines** [11] - 9:19, 28:20, 30:5, 30:12, 30:17, 30:22, 30:25, 31:1, 31:14, 31:19, 32:9
**deal** [1] - 16:22
**dealt** [1] - 34:5
**December** [7] - 7:5, 13:4, 15:22, 17:5, 18:1, 18:22, 19:1, 19:8, 20:2, 20:24,

21:5, 21:14, 25:22
**decide** [2] - 11:7, 34:15
**decided** [1] - 5:5
**deciding** [1] - 4:25
**decision** [1] - 34:12
**decrease** [1] - 20:19
**defendant** [7] - 4:8, 9:18, 11:22, 26:24, 28:19, 28:20, 31:8
**Defendant** [2] - 2:11, 2:19
**defendants** [40] - 3:20, 3:22, 4:9, 4:17, 7:1, 7:2, 8:5, 8:16, 9:4, 10:11, 11:6, 13:1, 13:22, 17:12, 17:17, 17:24, 18:5, 18:14, 19:9, 20:25, 21:3, 22:12, 25:23, 26:20, 28:4, 29:10, 29:12, 29:13, 29:15, 29:17, 29:22, 30:1, 30:10, 32:4, 32:24, 33:2, 33:11, 33:24, 34:3
**Defendants** [4] - 2:7, 2:15, 2:22, 2:22
**defendants'** [7] - 10:14, 10:23, 28:24, 29:25, 30:22, 30:23, 30:24
**Defendants'** [3] - 3:23, 4:2, 4:6
**defense** [2] - 7:7, 25:15
**defies** [1] - 13:15
**definition** [1] - 26:19
**delay** [2] - 12:20, 24:18
**delayed** [1] - 32:12
**delays** [1] - 27:2
**denied** [2] - 30:20, 31:2
**departments** [1] - 11:22
**dependent** [2] - 31:25
**depositions** [1] - 26:18
**described** [2] - 11:12, 17:2
**despite** [1] - 16:13
**detail** [1] - 6:6
**determination** [1] - 20:21
**determine** [1] - 28:19
**determined** [1] - 25:18
**determining** [1] - 21:3
**developed** [1] - 31:6
**developments** [2] -

30:9, 30:18
**devoted** [1] - 12:10
**dialogue** [1] - 20:3
**different** [5] - 4:1, 9:21, 9:22, 14:15
**difficult** [3] - 12:16, 26:21, 26:22
**difficulties** [1] - 12:24
**diligence** [1] - 27:1
**diligent** [1] - 8:9
**disagrees** [1] - 5:22
**disclose** [1] - 8:6
**disclosing** [1] - 8:17
**discovered** [1] - 14:7
**DISCOVERY** [1] - 1:6
**discovery** [4] - 11:16, 13:24, 14:2, 18:24
**discretion** [1] - 11:7
**discuss** [5] - 4:23, 5:10, 5:21, 34:11
**discussed** [3] - 6:19, 9:20, 14:15
**discussion** [8] - 5:2, 9:10, 10:19, 12:22, 23:22, 25:16, 32:4, 32:6
**discussions** [1] - 19:18
**disputes** [1] - 28:13
**disruptions** [1] - 8:12
**distributed** [1] - 12:12
**DISTRICT** [2] - 1:1, 1:1
**Docket** [3] - 3:4, 19:19, 29:14
**document** [8] - 7:6, 9:25, 11:15, 12:18, 19:4, 23:24, 26:1, 26:18
**Document** [1] - 7:6
**documented** [1] - 25:24
**documents** [57] - 6:17, 6:25, 7:4, 7:5, 7:8, 7:11, 7:14, 7:16, 7:18, 7:23, 7:24, 8:2, 8:3, 8:15, 8:17, 9:2, 9:4, 10:5, 11:6, 11:17, 12:14, 12:17, 13:19, 14:19, 15:24, 16:10, 16:15, 16:17, 17:6, 21:17, 21:23, 22:23, 23:23, 24:1, 25:2, 25:4, 25:5, 25:8, 25:9, 25:11, 26:13, 26:25, 27:1, 27:12, 27:13, 29:14, 29:21, 29:25, 30:2, 30:14, 30:15, 31:23, 32:19, 33:8, 33:19,

33:25
**dollars** [1] - 13:21
**done** [10] - 8:19, 9:5, 18:5, 21:5, 22:16, 23:17, 25:10, 25:23, 28:21
**dose** [3] - 6:15, 7:3, 29:10
**doubt** [5] - 5:24, 28:16, 33:1, 33:2, 33:11
**down** [4] - 3:11, 8:22, 11:23, 12:5
**drives** [1] - 12:13
**DUANE** [1] - 2:5
**due** [1] - 24:2
**during** [3] - 4:24, 5:14, 5:18

### E

**e-mail** [4] - 16:7, 16:8, 23:9, 25:21
**e-mails** [9] - 13:5, 13:7, 13:16, 15:9, 15:11, 16:10, 16:19, 20:9, 22:2
**earliest** [1] - 29:21
**early** [1] - 18:4
**easier** [1] - 9:15
**easily** [1] - 31:24
**East** [1] - 2:21
**economic** [4] - 11:4, 12:20, 13:23, 28:17
**effect** [2] - 17:22, 31:7
**effort** [2] - 12:9, 16:22
**efforts** [4] - 16:14, 16:25, 29:22, 30:2
**Eisenhower** [1] - 1:14
**either** [3] - 19:5, 32:10
**embark** [1] - 24:16
**encompassed** [1] - 33:22
**end** [5] - 5:16, 9:12, 15:21, 15:22, 28:12
**endless** [1] - 24:18
**English** [1] - 25:9
**ensure** [1] - 19:18
**enter** [2] - 9:19, 27:20
**entered** [15] - 7:5, 18:1, 18:8, 20:24, 22:10, 22:24, 22:25, 23:20, 27:22, 28:9, 29:4, 29:7, 30:3, 30:21, 31:12
**entering** [1] - 9:12
**entertain** [5] - 10:17, 14:5, 19:7, 30:11, 33:23
**entire** [1] - 16:19

**entities** [1] - 14:22
**entitled** [1] - 35:3
**entity** [1] - 15:18
**environment** [2] - 12:16, 12:25
**ESI** [5] - 11:16, 12:25, 14:2, 19:19, 19:23
**especially** [1] - 31:23
**ESQUIRE** [10] - 1:14, 1:17, 1:20, 2:3, 2:6, 2:10, 2:13, 2:13, 2:17, 2:20
**essential** [3] - 7:16, 12:11, 13:23
**essentially** [3] - 6:23, 11:9, 24:18
**evaluated** [2] - 32:17, 33:22
**exacted** [1] - 11:4
**exactly** [1] - 18:5
**example** [3] - 8:1, 8:16, 9:14
**exceedingly** [1] - 12:6
**except** [1] - 27:18
**Executive** [4] - 3:23, 4:2, 4:6, 4:15
**exists** [1] - 17:7
**expect** [2] - 7:8, 17:20
**expected** [1] - 24:1
**expects** [1] - 5:18
**experience** [1] - 16:5
**experiences** [1] - 13:2
**explain** [1] - 27:2
**explicitly** [1] - 30:9
**expound** [1] - 30:6
**expressly** [1] - 17:4
**extend** [4] - 30:4, 30:25, 31:1, 31:19
**extended** [2] - 11:16, 12:2
**extension** [5] - 14:9, 15:20, 23:1, 28:24, 29:2
**extensions** [4] - 11:8, 12:17, 12:23, 30:8
**extent** [7] - 7:11, 7:23, 10:15, 16:13, 18:7, 26:20, 29:24
**extra** [1] - 15:21, 15:22
**extremely** [1] - 14:7

### F

**faced** [1] - 31:3
**facing** [1] - 5:3, 11:3, 12:20, 28:13, 28:15
**fact** [3] - 19:1, 20:22, 26:14
**fair** [1] - 28:6
**fairly** [2] - 19:9, 20:6

**faith** [2] - 29:22, 30:2
**fall** [1] - 33:1
**fallen** [1] - 6:21
**falls** [1] - 5:24
**false** [1] - 13:11
**familiar** [1] - 11:19
**far** [4] - 9:6, 9:12, 20:2, 25:3
**Farrell** [2] - 1:23, 35:5
**fashion** [1] - 8:9
**fashions** [1] - 28:8
**fast** [2] - 11:8, 28:1
**faster** [2] - 28:3, 31:6
**fat** [1] - 33:10
**favor** [2] - 28:7, 33:1
**FCRR** [1] - 35:5
**FDA** [1] - 30:14
**February** [6] - 14:18, 15:5, 16:11, 19:21, 19:22, 22:2
**felt** [1] - 22:5
**few** [7] - 9:8, 14:16, 14:20, 15:15, 23:4, 25:16, 32:11
**figure** [2] - 8:25, 9:7
**filed** [2] - 19:12, 19:22
**files** [5] - 13:5, 16:7, 16:8, 16:18, 33:9
**finalize** [1] - 17:24
**finalized** [2] - 15:4, 18:10
**fine** [1] - 32:25
**finish** [3] - 9:1, 28:10, 34:17
**finished** [3] - 6:15, 7:3, 29:10
**finished-dose** [2] - 6:15, 7:3
**finished-dose-manufacturer** [1] - 29:10
**finishing** [1] - 8:18
**firms** [1] - 4:1
**first** [9] - 3:10, 6:24, 7:4, 16:14, 18:18, 21:24, 22:4, 24:16, 31:3
**flavor** [1] - 17:14
**Floor** [1] - 2:10
**floor** [3] - 18:16, 20:17, 21:6
**Florida** [1] - 2:4
**follow** [1] - 14:14
**following** [2] - 6:23, 21:15
**follows** [1] - 29:8
**food** [1] - 33:5
**footing** [1] - 9:21
**FOR** [1] - 1:1
**foregoing** [1] - 35:2

**forth** [1] - 27:21
**forward** [4] - 8:20, 19:18, 20:4, 24:10
**four** [1] - 11:25
**frankly** [2] - 13:24, 25:16
**FREEMAN** [1] - 1:13
**front** [3] - 22:16, 25:21, 27:6
**fundamental** [1] - 24:23

### G

**gathered** [1] - 13:16
**general** [1] - 34:15
**generally** [1] - 21:21
**GEOPPINGER** [2] - 2:17, 4:16
**Geoppinger** [1] - 4:17
**Georgia** [1] - 2:14
**given** [7] - 14:6, 15:1, 15:21, 15:23, 17:8, 23:14, 28:14
**global** [1] - 11:3
**globally** [1] - 13:14
**globe** [1] - 12:12
**GOLDBERG** [4] - 2:6, 3:21, 14:13, 34:3
**Goldberg** [3] - 3:22, 14:13, 16:4
**GOLOMB** [1] - 1:16
**good-cause** [2] - 20:21, 30:7
**good-faith** [2] - 29:22, 30:2
**GORDON** [1] - 2:9
**grant** [1] - 28:23
**granted** [2] - 11:9, 15:20
**grappling** [1] - 5:4
**great** [1] - 16:22
**GREENBERG** [1] - 2:12
**Greenberg** [1] - 21:11
**ground** [1] - 12:9
**group** [2] - 7:4, 29:12
**groups** [1] - 6:24
**guidance** [1] - 32:13
**guided** [1] - 27:23

### H

**half** [1] - 25:13
**handicap** [1] - 31:2
**happy** [1] - 6:6
**hard** [3] - 12:13, 17:7, 17:23
**hardship** [1] - 12:20
**harm** [1] - 20:11

*hashed* [1] - 18:8
*health* [1] - 28:16
*Healthcare* [1] - 2:8
*hear* [14] - 3:20, 5:11, 5:23, 6:9, 10:11, 17:16, 18:3, 21:2, 22:8, 23:25, 25:15, 27:19, 28:11
*heard* [5] - 5:7, 17:17, 25:3, 25:17, 27:16
*hearing* [4] - 19:1, 19:8, 23:22, 27:18
*held* [1] - 3:1
*hello* [1] - 6:2
*helpful* [4] - 5:1, 5:20, 34:11, 34:14
*helps* [1] - 26:12
*high* [1] - 6:4
*hit* [7] - 6:3, 10:7, 16:23, 23:7, 24:4, 24:14, 25:23
*hits* [1] - 16:15
*home* [1] - 10:4
*HONIK* [3] - 1:16, 1:17, 3:15
*Honik* [1] - 3:15
*Honor* [36] - 3:13, 3:16, 3:18, 3:21, 4:4, 4:7, 4:14, 4:16, 6:2, 6:5, 10:12, 11:2, 11:18, 12:16, 12:25, 13:14, 14:13, 15:1, 16:1, 18:17, 18:21, 19:2, 19:3, 19:9, 20:1, 20:15, 21:8, 22:9, 22:11, 22:25, 25:13, 25:25, 31:16, 31:18, 34:2, 34:4
*Honor's* [1] - 32:13
*HONORABLE* [1] - 1:10
*Honorable* [1] - 3:1
*hope* [5] - 5:25, 6:8, 10:16, 26:12, 34:20
*hopefully* [2] - 29:3, 31:11
*hour* [1] - 25:13
*Huahai* [1] - 2:8
*human* [1] - 11:4

**I**

*ice* [1] - 29:3
*idea* [2] - 8:21, 18:6
*ideal* [1] - 20:2
*identified* [1] - 13:3
*identify* [1] - 22:22
*imagined* [1] - 15:11
*immediately* [2] - 11:6, 16:6

*impact* [2] - 10:4, 14:6
*impacted* [1] - 14:17
*important* [4] - 10:8, 10:23, 12:23, 33:12
*importantly* [1] - 14:11
*impression* [1] - 28:10
*imprimatur* [1] - 32:3
*IN* [1] - 1:4
*in-person* [1] - 5:17
*Inc* [3] - 2:11, 2:15, 2:16
*increase* [1] - 20:19
*India* [6] - 11:24, 11:25, 12:1, 12:3, 12:10, 12:13
*indicated* [3] - 19:13, 19:23, 20:12
*individual* [2] - 28:19, 28:20
*indulgence* [1] - 10:21
*Industries* [1] - 2:15
*informal* [2] - 4:22, 5:2
*information* [7] - 14:22, 14:23, 15:12, 15:14, 15:20, 15:24, 29:9
*informed* [1] - 10:1
*initiative* [1] - 30:17
*inquiry* [1] - 28:19
*instance* [2] - 11:20, 13:13
*instead* [1] - 33:9
*intend* [1] - 15:19
*intending* [1] - 5:16
*intends* [1] - 28:22
*intention* [1] - 29:2
*interest* [1] - 9:24
*interests* [7] - 5:6, 20:7, 28:2, 28:4, 28:16, 29:6, 32:18
*introduce* [1] - 4:3
*introduced* [1] - 10:19
*invite* [1] - 14:4
*involved* [2] - 4:1, 12:7
*involving* [1] - 21:23
*Israel* [1] - 17:7
*issue* [17] - 4:25, 5:8, 5:9, 5:13, 5:23, 10:15, 12:22, 18:2, 18:14, 19:8, 21:1, 22:22, 23:3, 23:18, 24:8, 25:12, 32:16
*issues* [20] - 4:23, 5:20, 6:19, 8:10, 10:8, 10:20, 16:21, 17:8, 17:12, 18:7, 20:5, 20:22, 24:12, 31:14, 33:7, 33:12,

33:13, 34:6, 34:11, 34:18
*itself* [1] - 13:1

**J**

*January* [6] - 14:16, 14:18, 16:6, 16:11, 19:11, 19:13
*Jeff* [1] - 4:17
*JEFFREY* [1] - 2:17
*JERSEY* [1] - 1:1
*Jersey* [5] - 1:8, 1:15, 9:15, 14:21, 14:22
*jobs* [1] - 33:3
*Joel* [1] - 3:1
*JOEL* [1] - 1:10
*Johnston* [4] - 4:8, 20:17, 21:6
*JOHNSTON* [2] - 2:20, 4:7
*JUDGE* [1] - 1:11
*Judge* [7] - 3:2, 3:3, 5:17, 23:22, 34:10, 34:16, 34:17
*July* [8] - 11:17, 14:3, 29:15, 30:2, 32:21, 32:9, 33:19, 33:24
*jumping* [1] - 25:20
*June* [3] - 14:3, 33:9, 33:20
*justify* [1] - 24:6

**K**

*KANNER* [1] - 1:19
*KATZ* [1] - 1:13
*keep* [2] - 26:9, 26:10
*key* [1] - 10:23
*kind* [1] - 15:6
*knowing* [2] - 26:4, 31:4
*Kugler* [4] - 5:18, 34:10, 34:16, 34:17

**L**

*laid* [1] - 27:4
*language* [4] - 22:11, 22:20, 25:7, 25:9
*large* [2] - 9:25, 17:6
*last* [2] - 9:2, 25:12
*lawyer* [1] - 24:11
*lawyers* [1] - 26:14
*lead* [2] - 3:7, 3:8
*learned* [1] - 12:6
*least* [4] - 5:19, 10:7, 15:9, 18:13
*legal* [1] - 11:22
*length* [1] - 6:3

*lengthy* [1] - 10:18
*level* [1] - 11:5
*LEVIN* [1] - 2:2
*LIABILITY* [1] - 1:4
*lieu* [1] - 5:17
*life* [1] - 33:12
*life-threatening* [1] - 33:12
*light* [6] - 12:16, 24:20, 24:22, 24:23, 24:24, 25:16
*likely* [1] - 3:25
*limit* [1] - 13:2
*limited* [5] - 3:23, 4:22, 7:15, 22:10, 23:4
*line* [1] - 8:23
*list* [4] - 5:20, 18:22, 21:16, 24:5
*listened* [2] - 11:2, 24:7
*litigation* [1] - 14:1
*LITIGATION* [1] - 1:4
*LLC* [4] - 1:13, 1:19, 2:8, 2:15
*LLP* [5] - 2:5, 2:9, 2:12, 2:17, 2:20
*LOCKARD* [4] - 2:13, 16:1, 21:7, 21:10
*Lockard* [5] - 4:14, 16:2, 17:20, 20:10, 21:7
*lockdown* [1] - 12:1
*logic* [1] - 13:15
*look* [2] - 20:11, 21:14
*looks* [1] - 19:17
*LORI* [1] - 2:13
*Lori* [1] - 4:14
*Los* [1] - 2:21
*Louisiana* [1] - 1:21
*Ltd* [2] - 2:8, 2:15

**M**

*Magistrate* [1] - 3:2
*MAGISTRATE* [1] - 1:11
*mail* [4] - 16:7, 16:8, 23:9, 25:21
*mails* [9] - 13:5, 13:7, 13:16, 15:9, 15:11, 16:10, 16:19, 20:9, 22:2
*main* [1] - 5:9
*manage* [1] - 28:22
*manageable* [1] - 25:1
*management* [1] - 27:24
*managing* [1] - 12:24
*manner* [1] - 27:5

*manufacturer* [1] - 29:10
*manufacturers* [3] - 6:16, 7:3, 9:20
*manufacturing* [2] - 7:1, 11:24
*March* [3] - 11:20, 14:18, 19:25
*Market* [1] - 1:17
*massive* [3] - 13:18, 24:18, 25:5
*material* [2] - 29:1, 33:18
*matter* [3] - 8:17, 12:14, 35:3
*matters* [1] - 31:15
*MAZIE* [1] - 1:13
*mean* [2] - 8:11, 26:17
*meaningful* [1] - 24:3
*meaningless* [1] - 11:5
*mechanical* [1] - 1:25
*medicine* [1] - 12:8
*medicines* [1] - 12:11
*meet* [9] - 14:10, 16:12, 22:1, 24:19, 30:23, 32:2, 33:7, 34:7
*mentioned* [5] - 3:24, 14:16, 15:13, 19:23, 20:10
*merits* [1] - 12:22
*middle* [1] - 27:8
*midst* [1] - 15:5
*might* [1] - 23:4
*million* [4] - 13:5, 13:6, 15:9, 16:15
*millions* [3] - 13:21, 24:1
*Mitchell* [1] - 1:7
*modifier* [1] - 23:6
*modifiers* [1] - 24:14
*moment* [2] - 12:1, 30:6
*Monday* [9] - 3:24, 4:23, 4:24, 5:1, 5:5, 5:9, 6:3, 10:19, 14:15
*month* [2] - 5:17, 15:21
*months* [8] - 7:10, 16:14, 17:24, 18:9, 18:13, 24:15
*MORRIS* [1] - 2:5
*most* [3] - 6:20, 10:8, 32:1
*motions* [1] - 26:17
*move* [10] - 20:4, 24:10, 24:25, 27:25, 28:3, 30:4, 30:22,

31:19, 33:16
**moved** [1] - 8:9
**moving** [3] - 9:17, 23:19, 25:2
**MR** [18] - 3:13, 3:15, 3:18, 3:21, 4:4, 4:16, 6:2, 6:8, 6:13, 10:12, 14:13, 18:17, 18:20, 22:9, 26:11, 31:16, 34:2, 34:3
**MS** [6] - 3:16, 4:7, 4:13, 16:1, 21:7, 21:10
**Mylan** [6] - 2:11, 4:5, 13:13, 15:7, 15:8, 19:14
**Mylan's** [1] - 19:16

## N

**name** [1] - 3:10
**names** [1] - 3:8
**nation** [1] - 12:1
**national** [1] - 12:1
**nature** [1] - 14:8
**NE** [1] - 2:14
**nearly** [2] - 16:15, 16:17
**necessary** [5] - 8:6, 12:2, 14:9, 22:21, 25:18
**need** [15] - 5:14, 6:5, 12:11, 13:9, 13:23, 14:12, 15:15, 17:3, 17:12, 21:17, 24:6, 26:9, 26:23, 31:15, 34:9
**needed** [2] - 21:21, 27:7
**negotiate** [1] - 15:2
**negotiated** [2] - 20:2, 22:19
**negotiation** [1] - 15:25
**negotiations** [1] - 7:10
**never** [3] - 23:1, 23:14, 24:15
**NEW** [1] - 1:1
**new** [1] - 8:13
**New** [6] - 1:8, 1:15, 1:21, 9:15, 14:21, 14:22
**next** [9] - 9:5, 9:8, 14:20, 15:14, 17:1, 19:21, 25:4, 32:10, 34:7
**NIGH** [2] - 2:3, 3:18
**Nigh** [1] - 3:19
**nine** [1] - 13:16
**nine-year** [1] - 13:16
**NJ** [1] - 35:5

**NJ-CRCR** [1] - 35:5
**nobody** [3] - 8:11, 24:9, 26:21
**noise** [1] - 26:9
**noncustodial** [11] - 7:4, 7:14, 7:23, 12:14, 17:6, 25:8, 25:9, 27:12, 29:24, 31:23, 32:7
**none** [2] - 34:2, 34:3
**normal** [1] - 12:18
**normally** [1] - 22:16
**noteworthy** [1] - 15:8
**nothing** [9] - 5:4, 10:3, 12:7, 23:11, 23:12, 23:14, 24:11, 27:18
**notwithstanding** [1] - 14:21
**November** [4] - 11:16, 14:2, 29:16, 29:19
**Number** [2] - 3:4, 19:20, 26:7, 29:15
**NUMBER** [1] - 1:3
**number** [5] - 3:25, 6:12, 6:14, 26:13, 26:20
**numbers** [3] - 23:25, 24:2, 25:5

## O

**October** [1] - 29:18
**OF** [1] - 1:1
**offered** [2] - 11:10, 23:16
**office** [1] - 11:20
**offices** [1] - 11:21
**Official** [1] - 1:23
**Ohio** [1] - 2:18
**one** [15] - 5:6, 6:14, 13:17, 17:13, 23:10, 25:15, 26:7, 26:13, 27:25, 28:7, 28:13, 31:17, 32:19, 34:15
**One** [1] - 2:10
**ones** [1] - 6:20
**ongoing** [2] - 16:14, 20:3
**open** [2] - 9:14, 25:14
**operate** [1] - 14:12
**operating** [1] - 11:12
**operations** [2] - 11:24, 12:3
**opportunity** [3] - 5:7, 10:9, 22:5
**opposed** [1] - 14:2
**opposition** [1] - 10:10
**order** [25] - 7:5, 13:4, 17:5, 18:1, 18:8, 18:24, 19:6, 20:24,

21:14, 21:15, 21:20, 22:7, 22:10, 22:20, 22:24, 23:20, 27:20, 27:22, 28:9, 29:4, 29:7, 29:11, 30:3, 30:21, 31:10
**ordered** [6] - 20:2, 30:3, 30:13, 30:19, 30:22, 33:7
**orders** [2] - 30:8, 33:23
**Orleans** [1] - 1:21
**ought** [1] - 11:8
**outside** [3] - 7:21, 8:22, 9:11
**overbreadth** [1] - 19:16
**overly** [1] - 13:11
**overview** [1] - 17:11
**own** [2] - 30:17, 32:14
**Oxford** [1] - 2:10

## P

**P.C** [1] - 1:16
**p.m** [3] - 1:9, 3:2, 34:21
**pace** [2] - 9:8, 28:1
**Page** [2] - 19:7, 21:15
**page** [1] - 23:24
**pandemic** [5] - 11:3, 14:6, 16:23, 17:8, 17:10
**PAPANTONIO** [1] - 2:2
**paradigm** [1] - 8:13
**paraphrase** [1] - 24:5
**Parekh** [1] - 22:14
**Park** [1] - 2:21
**Parkway** [1] - 14:22
**part** [4] - 5:19, 10:24, 20:3, 32:1
**participating** [1] - 5:18
**parties** [6] - 5:10, 14:10, 28:5, 28:7, 28:17, 34:11
**parties'** [2] - 5:23, 30:4
**party** [1] - 31:19
**passage** [1] - 24:22
**pay** [1] - 33:5
**paychecks** [1] - 33:4
**Pennsylvania** [3] - 1:18, 2:7, 2:11
**Pensacola** [1] - 2:4
**people** [8] - 3:5, 3:6, 3:25, 6:12, 12:10, 33:3, 33:6, 33:12
**per** [1] - 7:7

**percent** [7] - 13:7, 13:15, 16:17, 16:19, 16:20, 20:9, 20:10
**perfectly** [1] - 4:24
**period** [4] - 13:17, 15:10, 16:20
**permitted** [1] - 27:2
**person** [1] - 5:17
**perspective** [7] - 10:24, 10:25, 11:1, 21:19, 21:24, 25:1, 31:21
**Pharma** [1] - 2:16
**Pharmaceutical** [1] - 2:15
**Pharmaceuticals** [5] - 2:7, 2:8, 2:11, 2:15, 4:5
**Pharmacy** [2] - 2:22, 4:8
**Philadelphia** [2] - 1:18, 2:7
**phone** [4] - 4:15, 4:22, 6:8, 22:2, 25:13, 34:8, 34:20
**Piedmont** [1] - 2:14
**PIETRAGALLO** [1] - 2:9
**Pittsburgh** [1] - 2:11
**place** [7] - 6:21, 9:15, 17:9, 23:2, 29:5, 30:15
**places** [1] - 9:23
**plaintiff** [7] - 6:1, 11:10, 19:11, 19:25, 22:8, 27:10, 29:3
**Plaintiffs** [4] - 1:15, 1:18, 1:21, 2:4
**plaintiffs** [21] - 3:12, 3:14, 3:15, 3:17, 3:19, 6:15, 9:11, 9:25, 11:7, 14:20, 15:2, 15:18, 17:16, 18:4, 20:25, 28:3, 29:1, 29:20, 30:11, 33:16, 33:18
**Plaintiffs'** [1] - 11:1
**plaintiffs'** [6] - 6:22, 16:12, 19:17, 22:1, 29:23, 30:23
**plans** [1] - 17:9
**plenty** [1] - 8:14
**point** [6] - 9:24, 17:1, 21:13, 24:21, 26:1, 31:22
**pointed** [1] - 25:22
**points** [4] - 6:4, 10:16, 10:23, 26:6
**population** [1] - 13:6
**portfolio** [1] - 13:13

**portion** [1] - 17:7
**position** [4] - 14:15, 24:21, 27:15, 31:8
**positions** [1] - 5:23
**positives** [1] - 13:11
**possession** [3] - 29:25, 32:20, 33:25
**possible** [3] - 7:18, 7:22, 16:13
**potential** [1] - 19:16
**practical** [1] - 9:18
**preference** [1] - 3:24
**prejudice** [5] - 13:25, 29:1, 30:4, 30:21, 33:18
**preliminarily** [1] - 21:18
**preliminary** [1] - 18:12
**prepared** [2] - 5:10, 7:19
**preserve** [1] - 30:14
**pressing** [1] - 6:20
**previously** [1] - 33:22
**pricing** [2] - 6:16, 29:9
**Prinston** [1] - 2:7
**prioritization** [1] - 29:23
**prioritize** [1] - 29:21
**privilege** [3] - 7:13, 7:15, 32:1
**problem** [4] - 23:6, 23:18, 24:14
**problems** [2] - 12:20, 25:6
**procedure** [2] - 21:14, 21:19
**proceed** [4] - 5:2, 5:16, 10:2, 13:24
**proceeding** [1] - 11:8
**proceedings** [2] - 34:21, 35:3
**PROCEEDINGS** [1] - 3:1
**Proceedings** [1] - 1:25
**process** [17] - 7:9, 14:25, 17:9, 18:4, 19:14, 19:15, 21:21, 22:12, 22:19, 23:16, 24:10, 24:16, 26:16, 26:19, 27:8, 31:2
**processed** [1] - 16:7
**produce** [6] - 15:12, 30:2, 30:14, 32:24, 33:8, 33:24
**produced** [17] - 1:25, 7:17, 7:21, 7:25, 8:25, 24:9, 24:15, 27:13, 29:11, 29:14, 29:18, 29:21, 31:24,

32:11, 32:21, 33:19
**producing** [4] - 8:18, 8:19, 12:7, 12:11
**product** [1] - 13:13
**production** [12] - 6:16, 7:20, 9:9, 12:18, 12:24, 13:1, 13:8, 18:7, 20:4, 29:14, 29:16, 33:14
**productions** [6] - 6:24, 9:1, 11:15, 11:17, 17:1, 29:18
**productive** [1] - 28:18
**PRODUCTS** [1] - 1:4
**products** [2] - 13:14, 13:17
**progress** [1] - 9:13
**proportionate** [1] - 19:19
**proposal** [3] - 6:22, 11:9, 11:18
**proposed** [2] - 12:17, 12:19
**proposing** [1] - 11:14
**protect** [1] - 29:6
**protected** [2] - 5:7, 28:2
**provide** [2] - 14:10, 29:7
**provision** [1] - 31:18
**proviso** [1] - 29:17
**provisos** [1] - 28:23
**public** [1] - 12:4
**pulled** [1] - 19:2
**purposes** [3] - 5:19, 12:19, 19:14
**pursuant** [1] - 22:6
**pursued** [1] - 27:5
**push** [1] - 12:15
**put** [6] - 3:9, 16:22, 23:2, 27:22, 29:5
**putting** [3] - 13:12, 19:24, 29:2

### Q

**quality** [1] - 15:16
**quarantine** [2] - 9:16, 10:3
**questions** [1] - 34:1
**quickly** [2] - 7:8, 23:19
**quite** [2] - 16:5, 19:9
**quote** [2] - 19:13, 24:18

### R

**raise** [4] - 18:15, 21:25, 23:4, 32:16
**raised** [4] - 19:17,

20:6, 20:23, 23:9
**raising** [3] - 19:10, 20:23, 21:25
**RASPANTI** [1] - 2:9
**rather** [4] - 8:23, 33:6, 33:10, 33:13
**rationale** [1] - 11:18
**RDR** [1] - 35:5
**RE** [1] - 1:4
**read** [2] - 17:3, 27:21
**ready** [7] - 8:1, 10:2, 10:6, 17:1, 32:10
**real** [2] - 9:6, 20:6
**realize** [1] - 26:15
**really** [8] - 9:24, 14:24, 17:2, 24:21, 27:3, 32:14, 32:15, 33:12
**reason** [3] - 7:20, 8:3, 32:11
**reasonable** [7] - 8:25, 11:14, 19:19, 24:24, 28:1, 29:22, 30:1
**received** [1] - 13:7
**record** [11] - 3:9, 4:21, 4:25, 6:14, 10:21, 10:24, 19:14, 21:8, 27:4, 27:12, 35:3
**recorded** [1] - 1:25
**reference** [1] - 21:13
**referred** [1] - 15:7
**referring** [1] - 7:3
**refers** [2] - 30:7, 30:8
**refine** [2] - 16:12, 21:20
**refined** [1] - 21:17
**refinement** [2] - 17:3, 22:6
**refining** [1] - 22:20
**regard** [1] - 31:10
**regarding** [1] - 30:18
**relate** [2] - 13:17, 16:21
**relating** [1] - 13:17
**relevancy** [3] - 7:12, 7:14, 31:25
**relevant** [4] - 12:23, 15:10, 30:14, 30:17
**remain** [2] - 21:16, 30:15
**remains** [1] - 8:7
**remarks** [1] - 14:4
**remediations** [1] - 16:11
**remote** [2] - 10:2, 16:9
**remotely** [4] - 12:12, 14:22, 26:14, 26:15
**rent** [1] - 33:5
**repeat** [1] - 30:24
**Repetitive** [1] - 6:7

**repetitive** [1] - 10:22
**report** [1] - 23:7
**reported** [1] - 14:20
**Reporter** [1] - 1:23
**REPORTER** [2] - 4:11, 26:8
**reporter** [3] - 3:11, 26:9, 34:19
**Reporter/ Transcriber** [1] - 35:5
**representative** [1] - 16:8
**request** [9] - 15:22, 21:25, 29:16, 29:17, 29:21, 31:1, 33:21, 33:22, 33:23
**requested** [3] - 28:24, 29:1, 33:2
**requests** [5] - 7:6, 7:10, 12:19, 19:5, 30:19
**require** [1] - 20:8
**required** [1] - 29:14
**requirements** [1] - 30:13
**reserves** [1] - 30:16
**resolve** [1] - 22:3
**resolved** [2] - 5:25, 20:5
**respect** [2] - 15:7, 24:2
**respond** [1] - 10:9
**response** [2] - 17:18, 27:17
**responsible** [1] - 13:18
**responsive** [2] - 29:24, 33:24
**rest** [2] - 8:19, 16:24
**result** [1] - 14:18
**Retailer** [1] - 2:22
**retailer** [1] - 4:8
**returned** [1] - 16:10
**returning** [1] - 16:18
**revealed** [1] - 19:15
**review** [4] - 8:18, 9:25, 10:5, 26:18
**reviewed** [9] - 7:12, 7:19, 7:25, 8:2, 8:7, 8:8, 8:15, 8:18, 21:18
**reviewers** [1] - 10:1
**reviewing** [1] - 13:20
**reviews** [3] - 7:15, 20:8, 32:1
**revise** [2] - 30:19, 30:22
**revisit** [3] - 17:23, 18:2, 31:20

**revisited** [2] - 13:10, 18:25
**revisiting** [2] - 13:22, 14:8
**rights** [1] - 30:4
**RMR** [1] - 35:5
**Road** [1] - 2:14
**roll** [3] - 8:23, 11:6, 27:14
**roll-out** [1] - 8:23
**rolled** [1] - 8:4
**rolling** [8] - 6:24, 7:18, 8:1, 8:19, 9:9, 11:16, 29:13, 29:17
**room** [2] - 13:23, 14:11
**Roseland** [1] - 1:15
**roughly** [1] - 13:6
**rounds** [2] - 16:9, 16:11
**RUBEN** [1] - 1:17
**Ruben** [1] - 3:15
**rule** [1] - 5:13
**ruling** [1] - 31:18
**run** [5] - 13:4, 16:9, 20:7, 22:13, 25:23

### S

**safe** [1] - 34:20
**safety** [2] - 28:17, 29:5
**sales** [2] - 6:16, 29:9
**sample** [1] - 16:8
**sampling** [3] - 18:6, 21:1, 25:23
**Sarah** [1] - 4:7
**SARAH** [1] - 2:20
**scales** [1] - 33:1
**schedule** [1] - 27:20
**scheduling** [8] - 5:10, 5:23, 6:14, 28:15, 30:7, 30:25, 31:10, 31:13
**Schneider** [2] - 3:2, 3:3
**SCHNEIDER** [1] - 1:10
**scope** [4] - 9:7, 12:25, 15:25, 19:18
**scratch** [1] - 27:9
**search** [35] - 13:9, 13:19, 13:22, 14:8, 15:2, 15:3, 15:4, 15:15, 15:25, 17:4, 17:23, 18:10, 18:21, 18:24, 19:4, 19:12, 19:16, 19:23, 20:1, 20:3, 20:5, 20:19, 21:14, 21:23, 22:18, 23:2, 24:19, 25:7, 25:12, 25:15, 27:13,

30:19, 31:11, 31:25
**searches** [4] - 13:4, 16:9, 20:7, 22:13
**searchs** [1] - 16:20
**second** [1] - 28:6
**see** [2] - 29:4, 32:11
**send** [3] - 12:15, 34:12, 34:13
**sent** [1] - 13:7
**separate** [2] - 31:1, 34:9
**September** [1] - 29:18
**serious** [2] - 8:12, 15:24
**seriously** [1] - 16:25
**server** [1] - 32:10
**session** [1] - 5:5
**set** [5] - 15:2, 15:23, 19:4, 21:20, 27:20
**SETH** [1] - 2:6
**Seth** [2] - 3:22, 14:13
**several** [4] - 8:2, 16:9, 16:11, 22:2
**shall** [8] - 21:16, 29:13, 29:16, 29:18, 29:20, 29:22, 30:1, 30:15
**short** [1] - 4:22
**shorter** [1] - 32:15
**show** [3] - 21:4, 24:8, 27:1
**shown** [4] - 18:25, 21:17, 30:5, 30:12
**shows** [1] - 27:4
**shut** [2] - 11:23, 12:5
**shutdown** [1] - 15:6
**shutdowns** [1] - 14:21
**side** [4] - 3:23, 10:14, 19:5, 28:7
**significant** [1] - 32:6
**similar** [2] - 16:5, 17:12
**simple** [2] - 6:22, 12:13
**simply** [2] - 12:23, 13:15
**Simultaneous** [1] - 21:9
**simultaneous** [1] - 4:10
**sitting** [1] - 32:9
**situation** [7] - 5:3, 11:13, 25:1, 28:14, 31:3, 32:25
**six** [1] - 18:13
**sky** [3] - 5:23, 6:20, 6:21
**slated** [1] - 14:2
**SLATER** [10] - 1:13, 1:14, 3:13, 6:2, 6:8,

6:13, 22:9, 26:11, 31:16, 34:2
*Slater* [12] - 3:13, 6:2, 17:21, 18:3, 18:13, 18:15, 21:2, 22:8, 26:8, 31:16, 32:16
*Slater's* [1] - 10:25
*slow* [1] - 28:1
*small* [1] - 26:6
*smart* [1] - 22:15
*Solco* [1] - 2:8
*someone* [1] - 5:22
*sometime* [1] - 14:3
*somewhat* [2] - 10:21, 14:15
*soon* [3] - 7:18, 7:21, 27:15
*sorry* [3] - 4:11, 15:20, 33:18
*sort* [3] - 18:6, 20:25, 27:5
*sorts* [2] - 18:7, 33:6
*sound* [2] - 6:9, 6:11
*South* [1] - 2:6
*speaker* [1] - 26:11
*SPEAKER* [2] - 6:10, 20:15
*speaking* [2] - 3:6, 3:7
*special* [1] - 32:14
*specific* [3] - 24:12, 26:24, 30:10
*specifically* [1] - 14:14
*spent* [2] - 13:22, 25:13
*staff* [1] - 12:2
*stand* [4] - 9:20, 17:14, 20:18, 21:16
*stand-alone* [1] - 21:16
*stands* [1] - 9:16
*start* [9] - 3:12, 4:12, 5:22, 6:1, 7:21, 8:4, 27:8, 27:14, 34:16
*started* [3] - 16:6, 25:6, 31:2
*starting* [5] - 9:24, 14:24, 25:2, 26:15, 31:22
*starts* [1] - 11:19
*statement* [2] - 19:21, 20:18
*statements* [1] - 19:12
*states* [1] - 9:22
*STATES* [2] - 1:1, 1:11
*States* [3] - 3:2, 25:8, 31:7
*static* [3] - 6:7, 17:8, 23:12
*statistics* [1] - 15:6
*STATUS* [1] - 1:5

*stay* [2] - 10:3, 34:20
*Steering* [1] - 11:1
*stenography* [1] - 1:25
*step* [1] - 17:1
*still* [4] - 6:20, 9:4, 9:7, 16:15
*stone* [1] - 20:20
*Street* [4] - 1:17, 1:20, 2:6, 2:18
*Streets* [1] - 1:7
*stretched* [1] - 11:13
*strings* [2] - 17:23, 18:10
*submit* [1] - 20:1
*submitted* [1] - 19:25
*subscribe* [1] - 8:21
*subset* [1] - 33:19
*substantial* [1] - 23:12
*substantially* [1] - 14:1
*subtract* [1] - 19:6
*sufficient* [1] - 29:4
*suggest* [1] - 13:15
*suggesting* [1] - 11:11
*suggests* [1] - 11:2
*Suite* [5] - 1:17, 2:3, 2:14, 2:18, 2:21
*supermarket* [1] - 33:6
*suppliers* [1] - 11:25
*supposed* [1] - 9:5
*surprise* [1] - 9:14
*surprised* [1] - 23:25

## T

*tackle* [1] - 18:18
*target* [1] - 9:17
*team* [1] - 9:25
*TELEPHONIC* [1] - 1:5
*telephonically* [1] - 3:1
*terabytes* [1] - 16:16
*term* [1] - 23:6
*terms* [45] - 6:22, 9:23, 13:9, 13:10, 13:22, 14:8, 15:3, 15:4, 15:15, 15:25, 17:4, 17:6, 17:23, 18:10, 18:21, 18:24, 19:4, 19:12, 19:16, 19:23, 20:1, 20:3, 20:5, 20:19, 21:14, 21:16, 21:23, 22:17, 22:18, 23:2, 23:5, 23:8, 23:11, 24:19, 25:7, 25:12, 25:15, 27:14, 28:15, 30:20, 31:11, 31:25
*test* [8] - 15:15, 15:16,

16:9, 21:20, 22:13, 22:17, 23:8, 26:25
*tested* [1] - 21:17
*testing* [3] - 22:6, 22:20, 23:16
*Teva* [6] - 2:15, 2:15, 4:15, 16:2, 21:10, 23:9
*Teva's* [2] - 16:4, 21:24
*THE* [18] - 1:1, 1:10, 3:3, 3:20, 4:11, 4:19, 10:11, 17:16, 17:19, 18:19, 20:14, 20:16, 22:8, 26:8, 27:16, 27:18, 32:16, 34:5
*themselves* [1] - 4:3
*they've* [3] - 8:7, 18:5
*thinks* [1] - 6:4
*THORNBURG* [1] - 2:20
*thousands* [1] - 13:14
*threatening* [1] - 33:12
*three* [3] - 11:25, 16:14, 34:14
*throughout* [2] - 14:18, 29:11
*timely* [1] - 23:20
*today* [3] - 4:23, 10:24, 17:15
*together* [1] - 19:24
*toll* [1] - 11:4
*took* [2] - 26:11, 27:6
*total* [1] - 13:6
*touchstone* [1] - 28:6
*touchstones* [1] - 27:24
*training* [1] - 10:1
*transcript* [5] - 1:25, 3:11, 19:2, 19:8, 35:2
*transcription* [1] - 1:25
*translated* [1] - 15:2
*translating* [1] - 15:3
*translations* [1] - 15:16
*transparent* [1] - 32:4
*transportation* [1] - 12:4
*TRAURIG* [1] - 2:12
*tried* [1] - 32:18
*Trischler* [8] - 4:5, 10:12, 15:7, 16:4, 17:2, 17:20, 18:17, 21:12
*TRISCHLER* [5] - 2:10, 4:4, 10:12, 18:17, 18:20

*true* [1] - 18:23
*try* [6] - 6:3, 16:12, 22:3, 24:25, 26:5, 27:1
*turn* [3] - 18:15, 20:16, 21:6
*two* [8] - 6:23, 9:5, 16:16, 23:10, 26:20, 31:12, 34:8, 34:13
*Two* [1] - 4:11
*type* [3] - 21:1, 23:7, 24:4
*types* [2] - 21:23, 24:5
*typical* [2] - 5:20, 28:3
*typically* [1] - 28:21, 30:6

## U

*U.S* [2] - 1:7, 2:8
*ULMER* [1] - 2:17
*ultimately* [1] - 19:25
*undoubtedly* [1] - 18:23
*unfairly* [1] - 13:25
*unforeseen* [1] - 5:12
*unfortunately* [1] - 12:4
*UNIDENTIFIED* [2] - 6:10, 20:15
*UNITED* [2] - 1:1, 1:11
*United* [3] - 3:2, 25:8, 31:7
*UNIX* [2] - 16:15, 16:17
*unless* [3] - 5:22, 15:24, 20:24
*unprecedented* [6] - 5:3, 11:4, 11:12, 14:6, 28:13, 28:14
*unquote* [1] - 24:19
*up* [9] - 8:10, 14:14, 22:4, 22:16, 26:9, 26:10, 27:6, 31:7, 34:17
*USA* [1] - 2:15
*usual* [2] - 11:5, 12:18

## V

*VALSARTAN* [1] - 1:4
*Valsartan* [1] - 3:4
*valves* [1] - 29:5
*vendor* [2] - 15:18, 24:12
*vendor-specific* [1] - 24:12
*vibrant* [1] - 10:18
*Victoria* [3] - 4:14, 16:1, 21:7

*VICTORIA* [1] - 2:13
*view* [4] - 10:22, 14:5, 20:4, 21:12
*Vine* [1] - 2:18
*virtually* [1] - 11:21
*virus* [2] - 30:10, 31:3
*voice* [2] - 26:9, 26:10
*volume* [4] - 8:24, 16:10, 21:23, 23:23
*voluminous* [1] - 15:23

## W

*wait* [1] - 7:20
*waiting* [1] - 25:6
*wants* [5] - 3:9, 5:11, 6:5, 24:10, 27:10
*warrant* [1] - 14:8
*warranted* [1] - 14:9
*week* [4] - 4:20, 9:5, 25:4, 34:7
*weeks* [6] - 7:9, 9:8, 14:20, 15:15, 22:24, 32:11
*weigh* [1] - 5:11
*well-being* [1] - 28:17
*whereas* [1] - 15:8
*whereby* [1] - 11:14
*WHITELEY* [3] - 1:19, 1:20, 3:16
*Whiteley* [1] - 3:17
*wholesaler* [1] - 4:17
*wild* [2] - 23:5, 23:10
*wild-card* [1] - 23:10
*willingness* [1] - 20:12
*words* [1] - 16:18
*workers* [1] - 12:7
*world* [2] - 8:12, 30:10
*worldwide* [1] - 26:22
*worried* [3] - 33:3, 33:4
*worry* [3] - 33:6, 33:13
*worse* [1] - 31:8
*writing* [1] - 31:11
*wrote* [1] - 25:22

## Y

*year* [2] - 13:16, 16:14
*yielded* [1] - 15:9
*yielding* [1] - 13:11

## Z

*zero* [1] - 29:2
*Zhejiang* [1] - 2:8
*ZHP* [16] - 3:22, 14:14, 14:17, 14:24, 15:1, 15:5, 15:6, 15:9,

*15:11, 15:21, 25:3, 25:5, 31:2, 31:5, 31:7, 34:3*
**ZHP's** *[1] - 31:1*
**Zoom** *[3] - 26:17, 26:18*