# EXHIBIT B

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0116p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION. <br> ─────────────────────────────── <br> IN RE: CVS PHARMACY, INC.; OHIO CVS STORES, L.L.C.; DISCOUNT DRUG MART, INC.; GIANT EAGLE INC.; HBC SERVICE COMPANY; RITE AID OF MARYLAND, INC., dba Mid-Atlantic Customer Support Center; RITE AID OF OHIO, INC.; RITE AID HDQTRS. CORP.; WALGREEN CO.; WALGREEN EASTERN CO., INC.; WALMART, INC., <br>                                          *Petitioners*. | > No. 20-3075 |

On Petition for a Writ of Mandamus.
United States District Court for the Northern District of Ohio at Cleveland;
No. 1:17-md-02804—Dan A. Polster, District Judge.

Decided and Filed: April 15, 2020

Before: SILER, GRIFFIN, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ON PETITION FOR A WRIT OF MANDAMUS:** Benjamin C. Mizer, JONES DAY, Washington, D.C., Robert M. Barnes, Scott D. Livingston, Joshua A. Kobrin, MARCUS & SHAPIRA LLP, Pittsburgh, Pennsylvania, Kelly A. Moore, MORGAN, LEWIS & BOCKIUS LLP, New York, New York, Kaspar Stoffelmayr, BARTLIT BECK LLP, Chicago, Illinois, Alexandra W. Miller, ZUCKERMAN SPAEDER LLP, Washington, D.C., Timothy D. Johnson, CAVITCH FAMILO & DURKIN, CO. LPA, Cleveland, Ohio, for Petitioners. **ON RESPONSE:** Hon. Dan Aaron Polster, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, Cleveland, Ohio, for the Court. Peter H. Weinberger, SPANGENBERG SHIBLEY & LIBER, Cleveland, Ohio, for Respondents Summit County and Cuyahoga County. **ON BRIEF:** Mary Massaron, LAWYERS FOR CIVIL JUSTICE, Bloomfield Hills, Michigan, Nathan Freed Wessler, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, Carter G. Phillips, SIDLEY AUSTIN LLP, Washington, D.C., for Amici Curiae.

Case 1:19-md-02875-RMB-SAK   Document 419-2   Filed 04/27/20   Page 3 of 10 PageID: 6632
Case: 20-3075   Document: 50-3   Filed: 04/15/2020   Page: 2

No. 20-3075 *In re Nat'l Prescription Opiate Litig.* Page 2

## OPINION

KETHLEDGE, Circuit Judge. The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case. Nothing in § 1407 provides any reason to conclude otherwise. Moreover, as the Supreme Court has made clear, every case in an MDL (other than cases for which there is a consolidated complaint) retains its individual character. That means an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone. Within the limits of those rules, of course, an MDL court has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL. What an MDL court may not do, however, is distort or disregard the rules of law applicable to each of those cases.

The rules at issue here are the Federal Rules of Civil Procedure, which have the same force of law that any statute does. The petitioners seek a writ of mandamus, on grounds that, in three instances, the district court has either disregarded or acted in flat contradiction to those Rules. We grant the writ.

I.

The petitioners here are twelve retail pharmacy chains (the Pharmacies) doing business in the respondent counties, namely Cuyahoga and Summit counties in Ohio. Those counties are plaintiffs in two cases now pending in federal court in the Northern District of Ohio. The Counties' complaints in those cases initially did not include claims against the Pharmacies, but instead asserted claims against certain manufacturers and distributors of prescription opioids. Also pending in the Northern District of Ohio—before the same district judge, but only for purposes of "pretrial proceedings[,]" 28 U.S.C. § 1407(a)—are more than 2,700 other cases transferred there by the Judicial Panel on Multidistrict Litigation. The plaintiffs in all those cases likewise assert claims arising out of the Nation's opioid crisis.

No. 20-3075                  *In re Nat'l Prescription Opiate Litig.*                  Page 3

The district court's first Case Management Order in the multidistrict litigation put the Counties' cases (along with one other case that likewise originated in the Northern District of Ohio) on an accelerated "Track One," with a trial date in March 2019. (Most if not all of the other cases in the MDL, so far as the record reveals here, were brought in other districts and thus are ones in which the district court lacks jurisdiction to conduct a trial.) The same Case Management Order set a deadline of April 25, 2018 for the Counties to amend their complaints, which they did, on that date, by asserting claims against the Pharmacies as "distributors" of pharmaceuticals to their own retail pharmacies. The Counties expressly declined, however, to bring any claims against the Pharmacies as "dispensers" of prescription opioids. (Distributors ship pharmaceuticals wholesale; dispensers fill prescriptions.)

The Track One parties thereafter engaged in massive discovery, which included more than 600 depositions and the production of tens of millions of documents. Finally, after discovery ended, the Pharmacies moved for summary judgment on the Counties' claims. Rather than rule upon those motions, however, the district court granted the Counties' motion to sever all but one of the Pharmacies (namely, Walgreens) from the upcoming Track One trial, which by then had been rescheduled for October 2019. Yet on the morning of that trial, the other defendants (*i.e.*, everyone but Walgreens) settled with the Counties, agreeing to pay them $260 million, which came in addition to the $40 million the Counties had already received from earlier settlements. (Together those amounts exceed the sum of all the damages specified in the Counties' complaints.) With only Walgreens left as a defendant for that trial, the district court then cancelled it altogether.

That left the Pharmacies as the remaining defendants in their Track One cases, along with their motions for summary judgment as to the Counties' distribution claims. But again the district court did not rule on those motions. Instead, sometime in October 2019, the district court's Special Master for the MDL informed the Pharmacies that his "understanding" was that the district court "will allow [the Counties] to amend [their complaints] to add dispensing claims." Those were claims, as the district court earlier recognized, that the Counties had expressly disavowed 18 months before. The Counties then moved to amend their complaints to add those claims. In an order dated November 19, 2019—now almost 19 months after the

Case 1:19-md-02875-RMB-SAK   Document 419-2   Filed 04/27/20   Page 5 of 10 PageID: 6634
Case: 20-3075   Document: 50-3   Filed: 04/15/2020   Page: 4

No. 20-3075                    *In re Nat'l Prescription Opiate Litig.*                    Page 4

court's deadline for amendments to the Counties' complaints, and more than 10 months after discovery had closed—the court granted the motion to amend and ordered discovery to proceed anew as to those claims.

That same order also stated that the court "will not receive additional motions to dismiss on distributing claims." The Counties then amended their complaints to add dispensing claims, which the Pharmacies timely moved under Civil Rule 12(b)(6) to dismiss. But the district court refused to rule upon those motions, stating that its order granting the motion to amend "was meant to direct defendants not to file *any* non-jurisdictional motions to dismiss." (Emphasis added.) Meanwhile, the district court ordered the Pharmacies to produce data on every prescription that their pharmacies had filled for virtually any opioid medication, anywhere in the United States, for a period of more than 20 years. The district court later shortened that period to 13 years, requiring data as to all such prescriptions dating back to 2006. And though the court stated that the nationwide data "will be available for future trials of MDL cases[,]" the court stated that all the non-Ohio data would be inadmissible in the Pharmacies' Track-One trial—*i.e.*, in the case in which it would be produced.

This petition for mandamus followed. The Counties and the district court filed responses. The Pharmacies separately moved in the district court to stay the court's discovery order during the pendency of their petition to this court. The district court denied that motion. The Pharmacies then filed the same motion to stay in our court. We granted it.

II.

We grant a writ of mandamus only in "exceptional circumstances" involving a "judicial usurpation of power" or a "clear abuse of discretion." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). In applying that standard, we consider, among other things, whether "the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired"; whether "the petitioner will be damaged or prejudiced in a way not correctable on appeal"; whether the district court's order is plainly incorrect as a matter of law; whether the district court's order "manifests a persistent disregard of the federal rules"; and whether "the district

court's order raises new and important problems[.]" *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).

Here, the Pharmacies seek relief as to three of the district court's decisions in particular: first, the court's decision to allow the Counties to amend their complaints 19 months after the court's deadline for doing so, and more than 10 months after the close of discovery; second, the court's refusal to adjudicate the Pharmacies' motions under Civil Rule 12(b)(6) to dismiss the Counties' dispensing claims; and third, the court's order requiring the Pharmacies—in a case brought by two counties in Ohio—to produce data for nearly every opioid prescription that they have filled anywhere in the United States for the past 13 years.

We begin with the district court's decision to allow the Counties to amend their complaints. Those amendments came long after the deadline set by the court's scheduling order, which means the court's discretion to allow them was limited by Civil Rule 16(b). *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). That rule provides that "the district judge . . . must issue a scheduling order" that itself "must limit the time[,]" among other things, in which the parties may "amend the pleadings" in the case. Fed. R. Civ. P. 16(b)(1), (3)(A). The Rule thus "ensure[s] that at some point both the parties and the pleadings will be fixed." *Leary*, 349 F.3d at 906 (internal quotation marks omitted). Here, as noted above, the district court entered such an order, setting a deadline of April 25, 2018 for the Counties to amend their complaints in these cases. Thus—in November 2019—the district court could grant the Counties leave to amend their complaints only if the Counties showed "good cause" for their failure to make the amendments 19 months earlier. *See* Fed. R. Civ. P. 16(b)(4); *see also, e.g.*, *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) ("the application of Rule 16(b)'s good-cause standard is not optional"). And that meant the district court could grant leave to amend only if the Counties demonstrated that "despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 907; *see also, e.g.*, *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Kmak v. Am. Century Cos.*, 873 F.3d 1030, 1034 (8th Cir. 2017); *Somascan, Inc. v. Phillips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013); *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241-43 (11th Cir. 2009); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Case 1:19-md-02875-RMB-SAK    Document 419-2    Filed 04/27/20    Page 7 of 10 PageID: 6636
Case: 20-3075    Document: 50-3    Filed: 04/15/2020    Page: 6

No. 20-3075                    *In re Nat'l Prescription Opiate Litig.*                    Page 6

Neither the Counties nor the district court have even attempted to show that the Counties demonstrated diligence as required by Rule 16(b). Quite the contrary: as the district court recognized then, and as the Counties concede now, the Counties did not bring their dispensing claims earlier because they *expressly chose not to bring them*. Counties' Opp. at 4. Indeed, the Counties' knowing and voluntary relinquishment of those claims arguably amounts to an outright waiver of them. *See generally United States v. Olano*, 507 U.S. 725, 733 (1993). Not a circuit court in the country, so far as we can tell, would allow a district court to amend its scheduling order under these circumstances.

The district court appeared to recognize as much in its order granting leave to amend, conceding that the Pharmacies' "point would be better taken in the context of a single case." But the court asserted that, "in the context of an MDL, their objections lose much of their import." Specifically, in its response to the petition here, the court stated as follows:

> The MDL court determined that the next bellwether trial ("Track One-B") should address claims against the six severed pharmacy defendants, and the trial would be most efficient if it included not only existing "distribution claims" but also claims against those same pharmacies as *dispensers*. . . . Accordingly, good cause existed to grant [the Counties'] motion for leave to amend.

The district judge in this case is notably conscientious and capable, and we fully recognize the complexity of his task in managing the MDL here. But the law governs an MDL court's decisions just as it does a court's decisions in any other case. The Supreme Court illustrated precisely that point in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998). There, a unanimous Court stopped in its tracks the MDL courts' nascent practice of conducting trials in cases where, under the plain terms of 28 U.S.C. § 1407, the MDL courts lacked power to conduct them. *See* 28 U.S.C. § 1407(a) (authorizing the transfer of cases to an MDL court for only "pretrial proceedings"). That some observers thought it "more desirable" that MDL courts should have that power was beside the point—because the relevant law made clear they did not. *Id*. at 40.

Here, the relevant law takes the form of the Federal Rules of Civil Procedure. Promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, those Rules are binding upon court and parties alike, with fully the force of law. *See Bank of Nova Scotia v. United States*, 487

U.S. 250, 255 (1988); *In re Pangang Grp. Co.*, 901 F.3d 1046, 1055 (9th Cir. 2018); *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016). For our purposes the relevant rule is Rule 16(b), whose requirements, as shown above, are woefully unmet here. And the district court's stated basis for finding "good cause"—namely, that "the trial would be most efficient if it included not only existing 'distribution claims' but also claims against those same pharmacies as *dispensers*"—is simply no substitute for the showing of diligence required by the Rule. To the contrary, the requirements of the Civil Rules in an MDL case—indeed, the requirements for granting "a motion to amend" in particular—"are the same as those for ordinary litigation on an ordinary docket." *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011).

Respectfully, the district court's mistake was to think it had authority to disregard the Rules' requirements in the Pharmacies' cases in favor of enhancing the efficiency of the MDL as a whole. True, § 1407 provides for the transfer of certain actions to MDL courts to "promote the just and efficient conduct of such actions"; and true, Civil Rule 1 says that the Rules should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding." But MDLs are not some kind of judicial border country, where the rules are few and the law rarely makes an appearance. For neither § 1407 nor Rule 1 remotely suggests that, whereas the Rules are law in individual cases, they are merely hortatory in MDL ones.

Indeed the very premise of that proposition is wrong. Instead, the Supreme Court—again unanimously—has said that, subject to one exception not relevant here, the cases within an MDL "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). That means a district court's decision whether to grant a motion to amend in an individual case depends on the record in that case and not others. Nor can a party's rights in one case be impinged to create efficiencies in the MDL generally. "Section 1407 refers to individual 'actions' which may be transferred to a single district court, not to any monolithic multidistrict 'action' created by transfer." *Id.*

Had the Counties timely amended their complaints to add dispensing claims, of course, the district court would have been entirely within its discretion to find that, for purposes of the MDL as a whole, the trial in these cases "would be most efficient if [the trial] included" both distributing and dispensing claims. The problem with the finding here was that, by the time the

Case 1:19-md-02875-RMB-SAK   Document 419-2   Filed 04/27/20   Page 9 of 10 PageID: 6638
Case: 20-3075   Document: 50-3   Filed: 04/15/2020   Page: 9

No. 20-3075                    *In re Nat'l Prescription Opiate Litig.*                    Page 8

court made it, the Counties had "affirmative[ly] disavow[ed]" those claims, and discovery as to the claims that the Counties actually did plead was already complete. Those developments gave the Pharmacies certain procedural rights that the district court was bound to respect. The court's attempt nonetheless to inject those claims back into the Pharmacies' cases was plainly contrary to law, in the form of Rule 16(b)—which means that the court's decision to grant the Counties leave to amend was a clear abuse of discretion.

Nor is the court's decision defensible on the ground that, if dispensing claims are not tried in the Counties' cases (over which the district court has trial jurisdiction), they will perforce be tried "in front of some other Court that does not have the expertise I have developed over the past two years." The reason why those claims would be tried in front of another judge is that—under the plain terms of § 1407(a) and the Supreme Court's holding in *Lexecon*—the MDL court's adjudicatory authority in transferred cases is limited to "pretrial proceedings." And a desire to circumvent those limits does not constitute "good cause" under Rule 16(b).

None of this is to say that an MDL court lacks broad discretion to create efficiencies and to avoid unnecessary duplication in its management of pretrial proceedings in the MDL. But an MDL court must find efficiencies within the Civil Rules, rather than in violation of them. As the Ninth Circuit explained in circumstances similar to those here:

> There is much, of course, that an MDL court can do in its sound discretion in order to manage multidistrict litigation effectively. It can designate a lead counsel. It can hold some cases in abeyance while proceeding with others. In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak. But when it comes to motions that can spell the life or death of a case, such as motions for summary judgment, motions to dismiss claims, or, as here, a motion to amend pleadings, it is important for the district court to articulate and apply the traditional standards governing such motions.

*In re Korean Air Lines Co.*, 642 F.3d at 700.

In sum, the district court's decision to grant leave to amend was plainly incorrect as a matter of law; the Pharmacies have "no other adequate means" to obtain relief from that decision; the Pharmacies will be prejudiced by that decision "in a way not correctable on appeal"; and the decision "manifests a persistent disregard of the federal rules," which—in the

Case 1:19-md-02875-RMB-SAK   Document 419-2   Filed 04/27/20   Page 10 of 10
Case: 20-3075   Document: 50-3   Filed: 04/15/2020   Page: 9
PageID: 6639

No. 20-3075                 *In re Nat'l Prescription Opiate Litig.*                Page 9

MDL context especially—presents "important problems" that often evade appellate review. *John B.*, 531 F.3d at 457. We will therefore grant the writ and order that the Counties' November 2019 amendments to their complaints be stricken.

That relief renders the petition moot as to the other grounds on which the Pharmacies sought relief—namely, that the district court had refused to adjudicate their motions to dismiss, and that the court had ordered nationwide discovery of prescription data in a case where the parties could use very little of that data. Given that more than 2,700 cases remain pending in the MDL, however, we make the following observations for purposes of the litigation going forward. The first is that Civil Rule 12(b) states that "a party *may* assert" the defenses enumerated therein "by motion," which means that the district court may *not* refuse to adjudicate motions properly filed under that Rule. (Emphasis added.) The second is that the question whether discovery is "proportional to the needs of the case" under Rule 26(b)(1) must—per the terms of the Rule—be based on the court's determination of the needs of the particular case in which the discovery is ordered. That limitation does not prevent the MDL court from creating efficiencies in the MDL generally; to the contrary, presumably the very reason the cases were transferred to the MDL court in the first place is that the needs of some cases are the same as those of many others.

\*   \*   \*

The petition for a writ of mandamus is granted, and the cases are remanded with instructions to strike each County's November 2019 "Amendment by Interlineation."