# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*  
Adam M. Slater*°  
Eric D. Katz*°  
David M. Freeman  
Beth G. Baldinger  
Matthew R. Mendelsohn°  
David M. Estes  

Karen G. Kelsen°  
Cheryll A. Calderon  
Adam M. Epstein°  
Cory J. Rothbort*°  
Michael R. Griffith°  
Christopher J. Geddis  

\*Certified by the Supreme Court of
  New Jersey as a Civil Trial Attorney

°Member of N.J. & N.Y. Bars

April 27, 2020

<u>*VIA ECF*</u>

Honorable Robert Kugler, U.S.D.J.
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
1 John F. Gerry Plaza, Courtroom 4D
4th and Cooper Streets
Camden, NJ  08101

Honorable Joel Schneider, U.S.M.J.
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
1 John F. Gerry Plaza, Courtroom 3C
4th and Cooper Streets
Camden, NJ  08101

Re: IN RE: VALSARTAN, LOSARTAN, & IRBESARTAN PRODUCTS LIABILITY LITIGATION
Civil No. 19-2875 (RBK/JS)

Dear Judge Kugler and Judge Schneider:

I am writing on behalf of the Plaintiffs in advance of the April 29, 2020 Case Management Conference.  The issues that Plaintiff anticipate for discussion include:

**1. Prioritization of Manufacturer Discovery**

Plaintiffs have reached out to defense liaison counsel to schedule an initial meet and confer regarding prioritization of discovery to be produced by the API and Finished Dose Manufacturers, in accordance with the Court's recent Order.  In that communication, Plaintiffs inquired as to whether it would be most efficient to speak as a group, or to speak on a Defendant by Defendant basis, since the circumstances of each in terms of what has been obtained, and what will be more

Honorable Robert Kugler, U.S.D.J.
Honorable Joel Schneider, U.S.M.J.
April 27, 2020
Page 2

or less easily produced, and the priority of needed information, will likely vary from Defendant to Defendant.

The Court also inquired as to the parties' thoughts on depositions. Plaintiffs believe that initial depositions should be focused on the parties, witnesses, and issues that will be the focus of the initial round of class certification briefing and the initial trial. In broad terms, it is necessary for the production of documents and ESI to advance before those depositions can commence; however, if the parties can prioritize discovery with these issues in mind, it is not necessary for every single document to be produced before depositions commence (provided that follow up deposition testimony on documents or information surfacing later due to no fault of the questioning party will be permitted if truly needed). In other words, particular witnesses can be deposed as long as their custodial files and the relevant categories of documents have been produced, and the timing will depend on when those productions can be completed. This will require a very open and transparent exchange of information so that the parties can make fully informed decisions and commitments.

There has been no discussion regarding the logistics of the depositions. To some extent, there are unknowns that will have to become more concrete, such as the ability of witnesses or counsel to travel, and to the extent remote/video technology will be needed, the parties will have to work cooperatively to accommodate those realities.

**2. Search Terms**

Defendants again suggest that the search terms should be revisited. For the reasons argued on April 15, 2020, and in accordance with the Court's Order, this request should be denied. Aside

Honorable Robert Kugler, U.S.D.J.
Honorable Joel Schneider, U.S.M.J.
April 27, 2020
Page 3

from the history of this issue, which is well known to the Court, Defendants continue to rely on the same arguments already rejected by the Court: the raw numbers of documents and pages identified with the search terms is not a basis for relief. That is what is expected in a case of this scope. Defendants can review for relevance and exclude irrelevant documents. Moreover, Defendants have still failed to produce the detailed data and analytics necessary to support such a request, and without which Plaintiffs cannot even consider the request. In particular, after receiving Mylan's radically revised search terms proposal on March 19, 2020, Plaintiffs requested the following information from Mylan:

1. Exactly which modifiers Mylan is requesting be removed from being searched with each primary term;

2. The basis for that request (or the request that the primary term to be deleted from the list completely), including but not limited to the number of hits on each primary term + modifier combination, number of unique hits on each primary term + modifier combination, the overall number of hits for the primary term without any modifiers, the overall number of documents upon which these hit searches are being run, and any other information Mylan is using as a basis for its request; and

3. What Mylan has done to determine that the primary + modifier terms that Mylan is asking to modify actually represent false positives rather than relevant and responsive documents, including but not limited to any preliminary review and/or sampling that was done and how that was done.

Honorable Robert Kugler, U.S.D.J.
Honorable Joel Schneider, U.S.M.J.
April 27, 2020
Page 4

To date, however, all that Mylan has provided is raw hit counts and sizes for the agreed to and ordered search terms versus Mylan's proposed revised search terms. The other Defendants have not even provided that information.

In light of the continued passage of time despite Defendants first nibbling around the edges of this issue months ago, and Defendants' continued failure to appropriately justify their request with data, it should be deemed too late to address the agreed, ordered search terms. Any other result will re-direct valuable time and resources to re-do negotiations and cause additional delay and uncertainty that will only distract from the core work that needs to be conducted to meet the current deadlines and to be in a position to move the litigation forward to the dispositive and resolution phases.

**3. Class Certification and Initial Trial.**

Plaintiffs look forward to the Court's thoughts and guidance regarding the process and timing to begin to address class certification, and an initial trial. These issues were previously briefed before the closure of the Courts and the extensive social distancing protections were imposed. Plaintiffs are hopeful that their submission can serve as the roadmap, focusing the first round of class certification and trial on a discrete subset of Defendants. In light of the delays and logistical issues imposed since the submission of the parties' letters, Plaintiffs suggest that the first round of class certification briefing should still address the ZHP supply chain; however, the first trial should only address the ZHP API and Finished Dose levels, with the other levels of the supply chain to be addressed subsequently. That is, the *only* defendants would be ZHP and its affiliated entities, and potentially Teva and Torrent as finished dose manufacturers if the Court chooses to

include them., but not unaffiliated defendant Retail Pharmacies or Wholesalers, This would provide a tremendous amount of information and guidance across the litigation, while presenting a manageable first step toward resolution.

Defendants' attempt to capitalize on the extension of manufacturer discovery granted by the Court on April 15, 2020 and take a third (or fourth) bite at the apple to brief Rule 12(b)(6) motions now ignores the multiple prior directives of this Court to date. Defendants' twin bases for this new bite – a recent Sixth Circuit decision and newly-touted "inefficiencies" with class actions – both lack merit.

*First*, the Sixth Circuit's recent decision in the Opiates MDL is inapposite. There, the plaintiffs had expressly *disavowed* any dispensing claims against the pharmacy defendants. *See* Slip Op. at 4 ("Those were claims, as the district court earlier recognized, that the Counties had expressly disavowed 18 months before."). Nineteen months after the district court's deadline to amend the complaint, 10 months after discovery closed, after summary judgment motions had been filed, and essentially on the eve of trial, the plaintiffs sought to amend the complaint to add dispensing claims against the pharmacy defendants. *Id.* at 3-4. The District Court permitted this, ordered discovery to "proceed anew" on the new dispensing claims, and said the pharmacy defendants would not be able to file any Rule 12(b) motions against these claims.

The Sixth Circuit remanded on the narrow issue of untimely amendment of the complaint. That is, the appellate court found that the plaintiffs had expressly *disavowed* claims that they then sought to add back into the case after the deadline to amend. *Id.* ("In sum, the district court's decision to grant leave to amend was plainly incorrect as a matter of law"). Critically, the Sixth

Honorable Robert Kugler, U.S.D.J.
Honorable Joel Schneider, U.S.M.J.
April 27, 2020
Page 6

Circuit held its ruling rendered "the petition moot as to the other grounds on which the Pharmacies sought relief—namely, that the district court had refused to adjudicate their motions to dismiss[.]" *Id.* at 9.

The Opiates MDL bears no semblance procedurally to this MDL. Plaintiffs here have not disavowed any claims against any defendants; they timely amended the master complaints to identify claims against Wholesaler and Retail Defendants; discovery has barely begun in earnest (indeed, Plaintiffs' very modest proposed document requests to Wholesaler and Retail Pharmacy Defendants remain unserved pending resolution of macro-issue discovery issues currently being briefed); and, perhaps most importantly, this Court has *not* told any defendant it cannot file a Rule 12(b)(6) motion. Rather, as this Court has stated numerous times, it will afford defendants a full opportunity to assert Rule 12(b) defenses. Thus, the Sixth Circuit's decision has no bearing in this case.

*Second*, Defendants new idea that *any* class action would be "inefficient" flies in the face of decades of Rule 23 jurisprudence. The entire point of Rule 23 is to attain procedural efficiencies for the litigants and the judicial system. Any arguments about the superiority of the class device are best addressed in the context of Plaintiffs' forthcoming Rule 23 motion, not now.

Finally, Defendants' argument that the extended discovery deadlines provide the perfect opening to engage in motion to dismiss practice is concerning, to say the least. During the argument on April 15, 2020, defense counsel presented an impassioned plea as to why outside counsel would not be able to process and produce ESI that was fully collected in December and January, following the entry of the key Orders in December 2019, until mid-July at the earliest.

Honorable Robert Kugler, U.S.D.J.
Honorable Joel Schneider, U.S.M.J.
April 27, 2020
Page 7

Now, defense counsel suddenly has the available time to turn its attention to filing complex dispositive motions, which would undoubtedly serve to divert the parties' and the Court's attention away from the discovery process. Simply put, the procedural landscape, especially in light of defense counsel's representations to the Court, and the Court's reliance thereon, should also result in denial of this request at this time.

    Thank you for your courtesies and consideration.

                              Respectfully,

                              ADAM M. SLATER