**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

IN RE: VALSARTAN LITIGATION,    CIVIL ACTION NUMBER:

19-2875

STATUS CONFERENCE

(By Telephone)

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
April 29, 2020

B E F O R E:              THE HONORABLE ROBERT B. KUGLER
                          UNITED STATES DISTRICT JUDGE
                          MAGISTRATE JUDGE JOEL SCHNEIDER

A P P E A R A N C E S:

MARLIE SLATER KATZ & FREEMAN
BY:  ADAM M. SLATER, ESQUIRE
103 EISENHOWER PARKWAY, SUITE 207
ROSELAND, NEW JERSEY 07068
ATTORNEYS FOR THE PLAINTIFF

DUANE MORRIS
BY:  SETH A. GOLDBERG, ESQUIRE
     JESSICA ANN PRISELAC, ESQUIRE
30 SOUTH 17TH STREET
PHILADELPHIA, PA.
ATTORNEYS FOR AUROBINDO

GREENBERG TRRAURIG
BY:  LORI G. COHEN, ESQUIRE
3333 PIEDMONT ROAD, NE, SUITE 2500
ATLANTA, GA. 30327
ATTORNEYS FOR TEVA

```
 1        BARNES & THORNBERG, LLP
          BY:  SARA ELIZABETH JOHNSTON, ESQUIRE
 2        2029 CENTURY PARK EAST, SUITE 300
          LOS ANGLES, CA 90067
 3        ATTORNEYS FOR CVS

 4

          HILL WALLACK, LLP
 5        BY:  GRANT CAMERON WRIGHT
          21 ROSZEL ROAD
 6        PRINCETON, NEW JERSEY 08540
          ATTORNEYS FOR HETERO LABS LTD
 7

 8        PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
          BY:  CLEM TRISCHLER, ESQUIRE
 9        ONE OXFORD CENTRE, 38TH FLOOR
          PITTSBURGH, PA 15219
10        ATTORNEYS FOR MYLAN PHARMACETICALS, INC.

11

12

13

14

15

16

17

18

19

20

21

22
                  Carl J. Nami, Official Court Reporter
23                   Carl_Nami@NJD.USCOURTS.GOV
                          609-439-5420
24
          Proceedings recorded by mechanical stenography; transcript
25               produced by computer-aided transcription.
```

*United States District Court*
*Camden, New Jersey*



1          (The following took place via telephone in open Court)

2               THE COURT:  Hello.

3               MAGISTRATE JUDGE SCHNEIDER:  Judge Kugler is here.

4               THE COURT:  I'm here.  Hello, everybody.  Okay.

00:14   5  Listen, before you speak, you have to identify who you are so

6  that Mr. Nami can take all this down.  This is going to be a

7  little bit cumbersome, and I hope only a few of you have the

8  need to talk today.

9          I'd like to start out this conference by asking defense

00:15  10  counsel about the status of their clients in China and India,

11  given what's going on in the world and how much communication

12  do you have.  Is this an issue?  Is it a problem?  How is that

13  going?

14          MR. GOLDBERG:  Good morning, your Honor.  This is

00:15  15  Seth Goldberg for the GHP defendants.  I can give you an

16  update on our clients in China.  We have, we have facilities

17  in a place called Binhi, China and we have facilities in

18  Shanghai.  Both sets of facilities are now up and running and

19  operational.  That really happened earlier in April and as a

00:15  20  result we are now in communication with our clients.  We're

21  now involved in collecting documents from our clients.  Both

22  sets of facilities as we were, we indicated to the Court we

23  would -- we weren't able to do that between January, between

24  January and April, but we've made progress there and, you

00:16  25  know, provided there are no other waives with respect to the

1    Coronavirus, no other Coronavirus interruptions which, of

2    course, we can't know now.  We are, you know, we're running

3    and we're fully operational.

4              THE COURT:  Well, that's really good news.  How about

00:16    5    India?

6              MR. TRISCHLER:  Your Honor, good morning.  This is

7    Clem Trischler.  I represent Mylan Pharmaceuticals and Mylan

8    laboratories.  Mylan has several facilities both State side

9    and in India.  The Indian operations are severely disrupted at

00:17    10    the time the country is -- excuse me, is in a nationwide

11    lockdown and as a pharmaceutical manufacturer.  However, the

12    Indian facilities are allowed to continue to operate, but

13    they're operating at an extremely limited and reduced

14    capacity.  Administrative personnel, non-essential personnel

00:17    15    are not at the plant.  They're essentially doing nothing other

16    than essential manufacturing operations and so our ability to

17    communicate with the client to obtain documents that are in

18    India has been disrupted and we're not able to do that for the

19    moment.  We do, of course, have some operations in the United

00:18    20    States and have legal staff that's scattered here in the

21    United States and so we have some communication with the

22    client, but the Indian operations, our ability to speak to he

23    people over in India to get information from India is just

24    essentially nonexistent at the moment.

00:18    25              THE COURT:  Well, that's what I was afraid of, but

*United States District Court*
*Camden, New Jersey*

1  there's not much we can do about that.  But just, you know,

2  keep on plugging along on with what we have and go through

3  that.

4      I have some general comments I want to make, then I'll

00:18  5  have some questions.

6      MAGISTRATE JUDGE SCHNEIDER:  Hey, Judge, what about

7  the other, what about the Indian manufacturers?  Are they in a

8  similar position?

9      MR. WRIGHT:  Your Honor, this is Graham Wright on

00:18  10  behalf of Hetero Labs and our Indian facilities are in the

11  same position.  They are dealing with limited staff and they

12  are limited to producing essential medicines and ATI's and

13  they are almost in the same position as Clem advised.  The

14  ability to, to gather documents, run searches, things of that

00:19  15  nature is limited to the limited number of persons who are

16  actually on staff and on-site.  Communication is possible at

17  our facility, but our, but our facility is running on the

18  same, in the same waive that Clem said his clients are running

19  on.

00:19  20      MS. ALLEN:  Your Honor, this is Deborah Allen for the

21  Torrent defendants.  Our clients are also based in India and

22  we're subject to the same situation.  The vast majority of

23  certainly the people we interact with do not have access to

24  the facilities and to their offices, and communication is

00:20  25  severely delayed due to the essentially countrywide lockdown.

*United States District Court*
*Camden, New Jersey*

1    MS. PRISEL:  And this is Jessica for the Aurobindo

2    over in India, and like Hetero and Torrent and Mylan, we are

3    in the same situation.  I am trying to continue to communicate

4    with them and get documents from them, but communication is

00:20    5    very, like they said, is very limited.  Everybody is working

6    on those waives.

7    THE COURT:  Okay.  Anybody else?

8    MS. COHEN:  Judge, this is Lori Cohen on behalf of

9    Teva.  Although it's not China or India, we do have certain of

00:20    10    our documents that are in other countries multi and we too

11    have limited, you know, ability to communicate related to that

12    group of documents.  We are, we are in communication with the

13    Israeli, you know, source of documents that we have certain

14    sets as I mentioned which is a multi set of documents.

00:21    15    THE COURT:  Anyone else?

16    (No response)

17    THE COURT:  All right.  This is Judge Kugler again.

18    We've noticed recently a re-surge in filings in this case of

19    new cases.  Be grateful.  I guess everybody is on board and

00:21    20    nothing else to do so they just decided to file, file a lot of

21    new lawsuits in this case.  I'm not sure why that is, but any

22    of you filing for the first time, welcome.  Maybe one of these

23    days we'll get to see you in person.  I'm hoping I have some

24    small degree of optimism at the next status conference in late

00:21    25    May.  We just might be able to have a courtroom open in

1  Camden.  So stay tuned on that.  We wouldn't be able to

2  accommodate all of you because we want to keep social

3  distancing, but maybe we can have the leadership come in to

4  Court and the rest of you will have to hook into.  Maybe you

00:22   5  can listen in.  Maybe we can do something like that.  But stay

6  tuned on that.  I'm, I'm hopeful.  We're working towards that.

7  As those of you from out of town may have read, things

8  are really bad in New York, New Jersey but down here in the

9  southern part of New Jersey, and in the Philadelphia region,

00:22   10  it's nowhere near as bad as it is up in New York and north

11  Jersey.

12  All right.  Now --

13  MAGISTRATE JUDGE SCHNEIDER:  Judged Kugler, the

14  people from out of town may not know that North Jersey and

00:22   15  South Jersey are different States.

16  THE COURT:  Well, they're different countries,

17  actually.

18  (Laughter)

19  THE COURT:  All right.  I think the point of today is

00:23   20  you want to get some direction on where we're going with this

21  case, and it's a difficult case to manage.  I've read your

22  submissions.  They, both sides are good points that they're

23  raising and I will be making some decisions about where we're

24  going on the future of the case.

00:23   25  But before we get there, I want a couple of general

*United States District Court*
*Camden, New Jersey*

1    observations I want to make and remind you all of, both sides

2    are citing this interesting case the Sixth Circuit on the

3    opioid litigation.  It is an interesting case.  It's an

4    unusual case.  Of course, it's not the Third Circuit.  And the

00:23    5    holding was not that the Judge had to decide dispositive

6    motions.  In fact, the Court found that to be moot at the

7    time.  And I think you should remember that I have not

8    prohibited any dispositive motions in this case and we're

9    going to talk about those in a few minutes.  I merely deferred

00:24    10    them for the time being while we setup and Judge Schneider has

11    done a remarkable job setting up an apparatus or scheme or

12    protocol, whatever you want to call it, administrative,

13    logistical just to get some sense of organization in this case

14    before we can even start talking about the merits of the case.

00:24    15    So don't rely on too much on either side of that decision.

16    Also there seems to be, I think, particularly the plaintiffs'

17    side assumption about trials.  Let's all remember that without

18    everyone's consent, I have no jurisdiction to try any case or

19    any judgment, enter a judgment in any case which is not filed

00:24    20    in New Jersey and over which New Jersey would have personal

21    jurisdiction over the defendants.  There's a Direct Filing

22    Order, but let's not forget that the Direct Filing Order was

23    completely without prejudice to either side, plaintiff or

24    defendant, raising objections on personal jurisdiction or

00:25    25    venue grounds at a later date.  So let's, let's not get lost

1  in thinking that I'm going to be trying any cases.  I don't

2  know what's going to be left for me to try when we get to

3  that, but that's down the road and we can certainly talk about

4  that.

00:25    5        The plaintiffs' proposal is we track these cases by

6  manufacturer, and we start with the CHB, the Chinese

7  manufacturer and all the downstream defendants with that.

8  Torrent, Teva, Amerisource, Cardinal, McKesson, and then Noel.

9  We go down the line.

00:26    10        So who wants to speak on behalf the Plaintiffs'

11  proposal?

12              MR. SLATER:  Hello, your Honor.  Adam Slater.

13              THE COURT:  Okay.

14              MS. SLATER:  I hope everyone's well down there.  I'll

00:26    15  speak briefly, and then obviously my colleague, my colleagues

16  should have the opportunity as well.

17        I think that, you know, based on what your Honor said,

18  and I'm not sure, you know, what you're thinking is.  So I

19  don't want to presuppose or to get ahead of myself.  So just,

00:26    20  you know, a brief response to what your Honor said.

21        There's one defendant, one group of defendants that is

22  based in New Jersey, so we wouldn't have jurisdictional issues

23  with which would be the HP and as a finished dose ambient

24  (sic) PI manufacturer.  So, in this effort what we could do in

00:26    25  in, in the near future and not have to worry about Lexicon

1    issues or jurisdictional issues that would potentially, I'm

2    sure I'm not telling you anything you don't know.

3        As far as the rest of what you said, you know, our, our

4    view is, you know, we're, we're ready to move forward and at

5    whatever pace the Court wants us to and whatever sequence the

6    Court wants us to.  And, you know, we're sensitive to the

7    issues everyone's dealing with.  We're also obviously on the

8    plaintiffs' side dealing with it too.  We just want you to

9    know, as we told Judge Schneider two weeks ago that we've,

10   we've setup a remote structure for our PSG where we're working

11   very efficiently together in terms of review of documents and

12   are ready, you know, and whatever documents come in.  We've

13   setup already have webinars with our entire document review

14   teams and put our coding in place, so that we're ready when

15   the documents do come in to start to review them and, and work

16   with them.  And, you know, at whatever pace they come in,

17   we're ready for them.

18       I want to defer obviously to my colleagues as well

19   because I know we're on the phone.  This is a bit of a limited

20   time.  So if anyone else wants to add to that, I'll certainly

21   hand it off now.

22       THE COURT:  Before you do, may I ask you a question,

23   Mr. Slater?  This is Judge Kugler.

24       Page three, you have a series of bullet points of your

25   March ninth letter?  Would you say this is a synopsis of all

1    the likely claims that the Plaintiffs have?

2         MR. SLATER:  I mean we certainly tried to give an

3    overview.  You know, I certainly never want to say it was the

4    complete and final disk, but we certainly would try and give

5    an overview of how we thought the case, you know, was

6    structured and what we thought were the central claims, the

7    ones that would be easiest to manage.  And again when we wrote

8    that letter, it was in the world where we were thinking about

9    sort of a broader approach to things and we're trying to

10   figure out if we were at a group stage with similar law, you

11   know, which would be the causes of action in claims that would

12   be easiest to manage on the larger, you know, group basis.

13        So that was really our thinking on that.  But I think

14   it's a pretty good synopsis of what we think are the essential

15   claims, the issues.

16        THE COURT:  I don't mean to bind you to that.

17   Obviously things can change over time.  I just was wondering

18   to make sure that this is what we're talking about today.

19        Does anybody else want to speak on behalf of the

20   plaintiffs?

21                  (No response)

22        THE COURT:  All right, apparently not.  That's fine.

23   But back to you, Mr. Slater.  You know clearly some of the

24   defendants have some defenses than others that might not have

25   and much of it may be dependent on specific State laws as to

1    about a specific defendant.  Why wouldn't it be helpful to

2    find that out, sort that out new?

3              MR. SLATER:  Well, I think, I think the question

4    really is, you know, whether or not the Court wants to

00:30    5    essentially have a briefing, an argument phase on -- and I,

6    and I don't know how wide of a scope of defendants.  I'm

7    taking the question to mean, you know, cross all levels of

8    defendants in all States.  I think that certain information

9    will be needed, but it would be I think somewhat inefficient

00:30    10    if we were to track all of that for all of the defendants,

11    whereas I think that if we focused on which defendants and

12    which States we're going to focus on in the near term, I think

13    it let's us do a lot more in a shorter period of time to

14    advance the ball on that grouping, much further along to a

00:30    15    class certification and closer to a trial date and which would

16    bring with it dispositive motion practice by necessity.  And I

17    think that the information that we would all get from the

18    resolutions of those motions and how the Court rules, it may

19    not be identical in every other State, but certainly that work

00:31    20    would give everybody the information that would get us farther

21    along in understanding what's the likely outcome in other

22    States.  What if -- you know, where will the different

23    groupings fall.  And as to defendants who may otherwise never

24    ever need to come before the Court for actual briefing and

00:31    25    resolutions of those issues because if the early phase

```
 1  provides enough information and guidance, which I think it
 2  would, we can avoid having to handle all the briefing and all
 3  the arguments for what I'll call peripheral or later stage
 4  defendants and State and claims that the Court does not
 5  otherwise need to actually address substantively again because
 6  the first phase if it's run the way that we envision it I that
 7  we're hoping that we can, you know, communicate that so much
 8  information that reasonable people on both sides, you know
 9  will have to understand, you know, this is where things are
10  likely to go with these other States and with these other
11  defendants and these other claims.
12          THE COURT:  Well, look that's a good point and I
13  appreciate that but -- and, you know, from day one I've said
14  let's find a way to protect those what I call peripheral
15  defendants from having to get bogged down in all this and that
16  is one way to do it.  But on the other hand I look at this and
17  I think, well, how do we figure out who the class and sub
18  classes unless we know which defendant is liable or for which
19  thing that they allegedly did.  If we start certifying general
20  classes and then if we then decide whether as a matter of law
21  a certain defendant is liable in this State but not that
22  State, then don't we have to re-mix all the classes and
23  sub-classes?
24          MR. SLATER:  The way that we envision it, I think
25  that we can, we can start in certain -- in terms of actually
```

1  getting to the disposition.  I mean the class certification

2  obviously is not a merited stay, you know.  So we don't have

3  to worry about that so much on the class certification phase

4  as opposed to when, when -- for example, our proposal is to

5  start with the HP.  It, it seems to make sense to us because

6  the way that this query had been structured, this litigation,

7  we really prioritized the manufacturing level discovery.

8  That's -- and for obvious reasons, going back to the first

9  case management conference because that is where the, the

10  contamination issue originated and that's where the

11  contaminated drugs originated from.  So it made a lot of sense

12  to focus on that and our focus has been there throughout the

13  litigation.  So we've put in place in terms of the discovery

14  structure a mechanism to identify, for example, what happened

15  and why it happened so we can look to really the guts of the

16  these claims.  And we've also looked at and we've also looked

17  at and we're really focused now quite a bit on prior

18  identification figuring out on how we track the stuff.  The

19  lower levels of the chain, which are the, which are the

20  wholesalers and the retailers, that's part of the process, you

21  know, frankly is lower and more bogged down and there's a

22  macro briefing process that's going to end at the end of next

23  month likely with some decisions on that and then that

24  discovery have to be scheduled.  That's, that's pretty behind

25  far.  So if you look at the factual level, really the central

1 location in this litigation, then when you look at the HP, the

2 reason we've looked at them is for a few reasons.  One of

3 which is it's our understanding they have the largest market

4 share.  So you're going to cover as much as possible of the

00:34    5 country of the market in one shot as you can in the first

6 shot.  Number two, they're located in New Jersey, so we don't

7 have any personal jurisdiction issues with that.  We don't

8 have to worry about any of that because they're here.  So --

9 and, and they're also an integrated levels of both API and

00:35    10 finished dose manufacturers.  So, again, those issues can be

11 addressed.  In fact, to the extent we're taking discovery from

12 in Solco which is their United States wholesaler/distributor.

13 So we're getting a lot of information from that.  So there's a

14 lot of economies to focus in here at all those different

00:35    15 levels.  And, and, and you're right, your Honor, another

16 defendant who is in a different part of the country, you know,

17 there's going to be a question, well, what do we do with them,

18 and, and I really do think that as this process starts to play

19 out as we start to see this start to become more grandular,

00:35    20 it's going to become clear the best way to start to address

21 those issues down the line and I think that again whatever

22 your Honor does with this first set of issues is going to have

23 significant impact and provide significant information to

24 everybody across litigation to be able to see where are things

00:35    25 going and how would things be likely handled down the line as

1    opposed to handling everything at once which is I think will,

2    will put us in a very, you know, in a phase that will take a

3    long time and we'll need discovery from everybody.  I mean if

4    we're going to address particular defenses or particular

00:36    5    defendants that may never really need to come to the front of

6    the line, that they're going to come on a briefing level that

7    makes us do all the discovery.  And, for example, we hear the

8    issues with the Indian entities.  They're not, they're not

9    part of the DHP, API process.  So -- and there's other

00:36    10    defendants that may have other issues.  We don't have to deal

11    with all of those complications, whereas we can focus smaller

12    and get a lot of information that we, I think, can use more

13    efficiently across the board.  I hope I answered your

14    question.

00:36    15        THE COURT:  You have.  Thank you.  All, all good

16    points, of course.  Any other plaintiffs' counsel want to be

17    heard before I turn to defense counsel?  Mr. Goldberg?

18            (No response)

19        THE COURT:  Apparently not.  Well, look, there are no

00:37    20    perfect answers here.  This is such a sprawling case with so

21    many different claims in it.  But there are no great answers

22    but we're going to struggle through this the best we can.

23    It's going to take time.  I think in response to Mr. Slater's

24    concern about taking discovery from this one and that one and

00:37    25    defendants' concerns about having to give up is very wrong.

1    You know, Judge Schneider can certainly focus on the discovery

2    to the needs at the time and as he has been doing and we'll

3    just -- we can phase these things and try to protect

4    everybody's interest.

5         All right.  The defendants say look, let me have a shot

6    under Rule 12 to cleanup some of this junk, but I assume,

7    therefore, that defendants at this stage, I'm not too worried

8    about one way intervention.  Correct, Mr. Goldberg?

9         MR. GOLDBERG:  Your Honor, the question about one way

10   intervention is, is dependent on how the Court proceeds with

11   vis-a-vis the proposal that defendants have set forth in the

12   proposal that Plaintiffs have set forth.  You know, the way,

13   the one way Intervention Rule works is if class members can

14   opt out of a Class Action after a liability decision, or if

15   the opt out question is posed after the liability

16   determination, then, then the unfairness has -- that, that is

17   not fair to the defendants.  That decision -- okay.  Go ahead.

18        THE COURT:  I understand that.  But, you know, Rule

19   23 was changed to protect defendants from that issue, that

20   problem.  But here if they go along with this and if I do

21   grant some of these motions to dismiss, it's not going to be

22   binding on all the plaintiffs.  In a way, the way we deal with

23   this is that let's say a specific defendant gets a specific

24   decision as a matter of law, they're not liable for X, Y and

25   Z.  Well we just issue an Order to Show Cause as to all the

1  remaining Plaintiffs in the same situation as to why we

2  shouldn't extend it to them.  But if you are the one who is

3  seeking to make these motions, then you are in essence

4  waiving.  At this point I know you raised it later with class

00:39  5  certification and all that, but you're at this point waiving

6  any concerns you have about that problem anyway.

7       But let's turn on page two.  You have all these bullet

8  points.  These are motions, apparently, the defendants want to

9  raise.  And I have some questions about some of these.  I'll

00:40  10  weigh in on information about some of this stuff.

11       The first one is personal jurisdiction.  We talked

12  about this before.  There's no question in my mind that there

13  are probably some defendants currently in this case that are

14  from the District of New Jersey has more jurisdiction.  But

00:40  15  remember the plaintiffs didn't choose this Forum.  I don't

16  know if I have the authority of the judgment against those

17  over whom I have no personal jurisdiction.  So it would never

18  happen anyway.  I don't think, as I said about the Direct

19  Filing Order, it's completely without prejudice to raising

00:40  20  these issues at a later date.  Certainly the defendants will

21  have an opportunity to raise the issue of personal

22  jurisdiction at the stage of the case where they need, they're

23  going to be going to trial or things of that nature, at

24  whatever jurisdiction where they end up.  But I think and as

00:41  25  I've had indicated informally before with counsel.  As I read

|  |  |
|--|--|
| | 1  the rule of the law on personal jurisdiction, it's highly |
| | 2  likely that I won't dismiss it anyway.  I will just transfer |
| | 3  it to the jurisdiction that has jurisdiction, personal |
| | 4  jurisdiction over a specific defendant like if it's a |
| 00:41 | 5  corporation, you know, where their locus is and where their |
| | 6  State of corporation is which would only trigger that probably |
| | 7  the plaintiffs to apply to the MDL panel to send it back to |
| | 8  the MDL here for purposes of discovery.  We're not going to go |
| | 9  there. |
| 00:41 | 10  The second point you raise.  The plaintiffs who did not |
| | 11  suffer any physical injury from taking Valsartan have |
| | 12  standing. |
| | 13  Who are these people?  Can you give me an example of a |
| | 14  plaintiff who didn't suffer a physical injury.  Who are we |
| 00:42 | 15  targeting here? |
| | 16  MR. GOLDBERG:  Yes, your Honor.  Any of the |
| | 17  plaintiffs, all of the class members in the economic loss |
| | 18  claim, all of the class representatives who are serving an |
| | 19  economic loss claim.  None of those class representatives or |
| 00:42 | 20  class members are asserting that they experienced a physical |
| | 21  injury as a result of ingesting any of the defendants' |
| | 22  Valsartan.  The physical injury plaintiffs are the ones who |
| | 23  are proceeding under the Personal Injury Master Complaint. |
| | 24  Plaintiffs who did not suffer a physical injury are claiming |
| 00:42 | 25  simply that the price they paid for Valsartan that was |

1     contaminated should be refunded.

2            THE COURT:  Right.

3            MR. GOLDBERG:  When -- go ahead.

4            THE COURT:  Isn't the payment of money sufficient to

00:43    5     confer standing?

6            MR. GOLDBERG:  Well --

7            THE COURT:  Why wouldn't it be sufficient to say,

8     look I paid this person five dollars and they really -- they

9     shouldn't have taken the money.  They really owe it back to

00:43   10     me.  Whether it's true or not, it's irrelevant.  But doesn't

11     that give you standing to come to Court to seek redress?

12     Isn't that something a Court can do, can order the money

13     refunded to you?

14            MR. GOLDBERG:  Your Honor, under the precedent in the

00:43   15     Third Circuit, it is not because those claimants have received

16     the benefit of the bargain.  They have not suffered an injury

17     from paying for a product, ingesting the product and the

18     product has performed as it was intended to perform.

19            THE COURT:  Well, aren't they saying, though, Mr.

00:44   20     Goldberg, that I wouldn't have paid for this product had I

21     known it was contaminated?  I'm not getting the benefit of my

22     bargain because I would have never made this purchase had I

23     known the real story about this stuff.

24            MR. GOLDBERG:  That may be what the plaintiffs are

00:44   25     claiming, but that is not what the law says they need to

1    allege.  What they need to allege is that the product was not

2    as safe or effective.  That there was not some alternative

3    product that would have performed better.  They're merely

4    claiming that the product was not worth what they thought it

5    was worth is not sufficient under the Third Circuit precedent.

6         THE COURT:  Okay.  The next one is the plaintiffs

7    have paid the same co-pay for similar drugs have standing.

8    I'm not sure -- I don't know what you're talking about.  Give

9    me an example of that.

10        MR. GOLDBERG:  Sure.  If a plaintiff that purchased

11   Valsartan and paid a fifteen dollar co-pay were to, were to

12   have switched to a different drug that was not allegedly

13   contaminated and would have paid the same fifteen dollars for

14   that drug, then how were they injured by -- they would have

15   paid the same fifteen dollar payment if there was an alternate

16   drug.

17        THE COURT:  Okay.  But how do we know that's true in

18   any circumstance?  In other words, how can, how can the Court

19   decide that on a Rule 12 motion?

20        MR. GOLDBERG:  Well, the Court can decide that as a

21   matter of law and say that any plaintiff who would have paid

22   the same co-pay that they paid for Valsartan for an

23   alternative blood pressure drug could not have been injured by

24   the allegedly impure Valsartan sold by defendants.  Same with

25   the fact that no physical injury.  That's a legal decision the

1    Court could render.

2        THE COURT:  But don't the plaintiffs just get around

3    the latter by saying, by alleging that they wouldn't have

4    bought the other product, or it wouldn't have had the same

00:47    5    co-pay.  I mean how do we even find out?

6        MR. GOLDBERG:  Well, certain -- how did we ever find

7    out, as, if as a matter of law plaintiffs would have paid the

8    same co-pay have no claim.  That's something then that the

9    plaintiffs need to then determine which of their class

00:47    10    representatives would fall within that bucket because those

11    class representatives can no longer represent the class.  The

12    class would have to be defined such as to exclude those class

13    members.  Right now you're -- these two things are legally a

14    good example of why you have to make these rulings early

00:47    15    because right now the way the Class has been defined, it

16    covers five or six years if it's being brought through to

17    today.  Any consumer of Valsartan at any time.  So, somebody

18    who bought Valsartan in 2016 took their entire bottle, their

19    blood pressure went down, they got all the benefit of that

00:48    20    drug, and then they never took Valsartan again, that person

21    would be in the class to try to get a refund for that bottle

22    that they, that they consumed in its entirety with no adverse

23    effect back in 2016.  The class would also include Plaintiffs

24    who would say, look, you know, I would have switched to a

00:48    25    different drug and the payment would have been the same.  So

1    how are you injured.  The purpose of the Rule 12 motion and

2    some of these issues narrow the scope of the Class and they do

3    this as to any Class that would be asserted.  So, you know,

4    the Court ended up taking the Plaintiffs up on this, you know,

00:49    5    four separate Class Action proceedings proposal, these kinds

6    of issues would narrow the Class, narrow the Classes for all

7    four tracks.

8            THE COURT:  So what you're seeking then under this

9    bullet point is an opinion from the Court that you, the

00:49    10    plaintiff, would have had the same co-pay for a similar drug

11    that would have had a similar result on your health, then you

12    have no claim.  Correct?

13            MR. GOLDBERG:  Correct, your Honor.

14            THE COURT:  Without reference to any specific

00:50    15    plaintiff.  Just anybody in the world out there who has or

16    would have taken another drug for a similar result and not

17    paid the co-pay, that you're barred from ever filing suit.

18            MR. GOLDBERG:  Well, we're saying that in this case

19    plaintiffs who have paid, would have paid the same amount for

00:50    20    a similar drug, did not experience an injury by paying that

21    amount for Valsartan.

22            THE COURT:  Okay.  All right, I think I understand

23    where you're going.  I think you understand my reservation.

24    It's almost like an advisory opinion.

00:50    25            But anyway, let's turn to the next one.  FDCA

1    preemption of the claims that the allegation that Valsartan

2    was worthless.  Tell me more about that, please.

3           MR. GOLDBERG:  The FDA has not taken Valsartan off

4    the shelves.  When the FDA -- when the, when the defendants

00:51    5    recalled the drug, the FDA instructed that patients who

6    continued to take Valsartan, if they have it and by definition

7    it is then not worthless.  Meaning it has no value.  And it is

8    the Food, Drug and Cosmetics Act and the determination that

9    the FDA makes under the Food, Drugs and Cosmetics Act,

00:52    10    preempted the claim that the drug is worthless.

11           THE COURT:  I'm curious as to how I come to that

12    determination under a Rule 12 motion.  Don't you have to get

13    into the facts that the recall and what's left on the shelf

14    and all that which is not going to be part of the pleadings in

00:52    15    the case, I don't think?

16           MR. GOLDBERG:  Well, those facts are part of the

17    pleadings, your Honor.  Those facts are throughout the

18    pleadings.  And, and the court can take judicial notice of the

19    fact that the FDA instructed patients to continue to take the

00:53    20    drug, notwithstanding the recall and that the FDA is

21    conducting an investigation into, into the cause of the

22    impurities.

23           THE COURT:  Okay, I understand what you're saying.

24    Lets look at as to what that to do with FDA's primary

00:53    25    jurisdiction.  I understand that.

1       The next one.  Does FDA approve labeling.  Preempt

2   liability.  I understand what you mean by that.

3       The next one, do innocent seller statutes preclude

4   claims against downstream defendants.  How many States do you

00:54  5   estimate have such statutes?

6       MR. GOLDBERG:  That's a good question, your Honor.

7   I've not focused on that specific question, the number of

8   States that have those statutes.

9       THE COURT:  Well, do you think it's more than one?

00:54  10       MS. JOHNSTON:  Your Honor, this is Sarah Johnston for

11   the retailer defendants.  I can jump on that if it would be

12   helpful.

13       THE COURT:  Please.

14       MS. JOHNSTON:  I believe it is a majority of the

00:54  15   States have a statute that would fall into the umbrella of

16   innocent seller.  They vary from State to State, but they're

17   -- I don't have the exact number, but I do know that there's

18   many, many States that have some variation of this that apply

19   to the downstream and to the supply chain.

00:55  20       THE COURT:  Okay.  Thank you.  The next one is which

21   States recognize Warranty Actions for pharmaceutical products.

22   And my question, is there a converse to that, that is, there

23   are States that don't recognize warrantee actions for

24   pharmaceutical products?

00:55  25       MR. GOLDBERG:  Your Honor, I believe, I believe that

1    is correct.  I certainly would ask my colleagues to join if

2    they know of those specific States.  Many of the States that

3    those claims would be subsumed by Products Liability Statutes.

4         THE COURT:  Well, I think New Jersey would be one of

5    them.

6         MS. JOHNSTON:  Yes, your Honor.  This is Sarah

7    Johnston again.  And it would be similar as to the New Jersey

8    Product Liability Act and there are numerous States.  Off the

9    top of my head I know that Indiana, Tennessee, Illinois,

10   multiple others that have their own products liability

11   statutory schemes that would subsume all individual claims as

12   to a defective product.

13        THE COURT:  Thank you.  The last bullet point is:

14   Did manufacturers warrant impurity-free Valsartan.  I'm not

15   sure, Mr. Goldberg, what that means.  What are you getting at

16   here?

17        MR. GOLDBERG:  Sure.  The -- you know, no

18   manufacturer warrants that their products will be manufactured

19   and sold without impurities and the FDA permits and allows for

20   the fact that there will be impurities in products.  It's --

21   you know, what is in some cases what is the level of the

22   impurity that matters.  But none of the defendants in this

23   case warranted that their Valsartan would be free of

24   impurities.  In this case, in particular, the MDMA was an

25   impurity that no party, neither the defendants nor the FDA had

00:58

00:59

00:59

00:59

01:00

1  identified as potentially being an impurity in Valsartan

2  because prior to 2018, none of the defendants, nor the FDA had

3  the testing specificity to identify MDMA in the manufacturing

4  process.

5      MAGISTRATE JUDGE SCHNEIDER:  You might get

6  disagreement from plaintiffs about that.  But I suppose when

7  they have a chance to speak, they might address that issue.

8      THE COURT:  All right.  Mr. Goldberg, is there

9  anything else you or any defense counsel want to say in

10  support of your proposal that we proceed at this time with

11  Rule 12 motions.

12      MR. GOLDBERG:  Well, your Honor, if you're only

13  talking about the Rule 12 motions, we have a lot to say about

14  plaintiffs' overall proposal.  And this notion of having four

15  separate Class Certification tracks and the efficiencies with

16  respect to replicating the Class Certification four separate

17  times at a minimum which would include not just the Class

18  Certification motions, but the hearings, the Daubert issues

19  the Court would have to go through, the complete notice, an

20  opportunity to opt out for each one of those Classes before

21  the Court could get to a trial on an economic loss pace.  On

22  those issues, we would like to be heard more and I'd be happy

23  to cover those if your Honor would like to hear that.

24      I also would like to address some of the GHP specific

25  points that Mr. Slater made.  But as for Rule 12, I think

1    these issues really identify the fact or certainly help to

2    underscore the fact that there are many claims and many

3    defendants that may be eliminated from this case through Rule

4    12 motions and that that, that narrowing will enhance the

5    efficiency of the MDL overall which is what all of the

6    precedent supports.  It would narrow the discovery to the

7    information that's relevant to the claim that would ultimately

8    be tried.

9          So, with respect to Rule 12, we've covered this a

10   number of times over the last fifteen or sixteen months that

11   defendants really believe that the time to have those motions

12   heard is as early as possible in the litigation.  You know,

13   we're already at a point, your Honor, where the manufacturer

14   discovery which is in response to a hundred and 20 or so

15   document requests, even one manufacturer Mylan, for example,

16   has already, has already pulled information suggesting that

17   there are, you know, five terabytes of information responsive

18   to just those document requests.  And, you know, the discovery

19   that has been agreed to or ordered by the Court so far is not

20   necessarily information that's going to be relevant to the

21   claims that are ultimately tried once the Court resolves some

22   of these issues on Rule 12.

23         But, you know, I would like to address the notion, your

24   Honor, of these four separate tracks because I think that

25   there's a bit of a gloss over here.

```
 1            THE COURT:  Mr. Goldberg, let me --
 2            MR. GOLDBERG:  Yeah.
 3            THE COURT:  Let me interrupt you.  You don't need to.
 4      We're not going to get there.  I appreciate what you've
 5      written, and I understand your objections, but I'm not going
 6      to -- we're not going to get to the Certification yet.
 7            I am going to permit the defendants to file Rule 12
 8      motions at this time, except that of personal jurisdiction.
 9      But you're going to have to be very specific as to what claims
10      and what plaintiffs and what cases that your motions are
11      referring to.  When that's done and when I decide those, the
12      next step will then be Class Certification.  Both sides have
13      really good points they've raised about Class Certification
14      issues which we will deal with at that point in time.  But I
15      do believe that decisions on the Rule 12 motions will help us
16      better to defined the Classes and Sub-Classes that we're
17      ultimately going to have to deal with at the appropriate time.
18      But as I said, there's no perfect answers here.  And I
19      understand, Mr. Goldberg, the defendants' complaint that the
20      discovery requests are over-inclusive, but there is no way to
21      avoid most of this.  It's just what happens in these kinds of
22      cases.  We're just going to have to deal with it and live with
23      it and I'm confident Judge Schneider can reign it in when it
24      gets out of hand, if it gets out of hand.  We're all obviously
25      all aiming towards the day of reckoning which is going to be
```

01:02
01:03
01:03
01:04
01:04

01:04

01:05

01:05

01:05

01:06

1  the Daubert motion when the Court's going to be called upon to

2  decide the experts and the General Causation issue and who can

3  testify about that or not.  That's a little down the road.

4  Let's get through these motions to dismiss and then as soon as

5  that's over, let's then key up Class Certification issues.

6  We'll get those resolved and we'll get on with the case.  We

7  are not going to postpone any discovery while the Court is

8  considering these Rule 12 motions.

9       What I would like to hear from both sides now is a

10  proposed time table for filing these motions and filing

11  responses to these motions.  How long do you need?  We'll

12  start with the defense counsel.  Give me a proposal as to how

13  long do you need before you can file these motions.  And I

14  understand there's a comprehensive and going to be lengthy

15  motions.  But give me some ballpark here as to when you think

16  you can get those submitted.

17       MR. GOLDBERG:  Your Honor, I haven't polled all of

18  the defendants, obviously, and I think given the circumstances

19  with the Coronavirus but would like to do that, but I do

20  think, you know, our filing the opening motion to dismiss 60

21  days from now which will give the parties time, all of the 50

22  parties time to get with their clients, understand what

23  issues, give us time to sort through these many different

24  issues that need to be filed, that need to be briefed and do

25  it in an efficient way in an Omnibus motion, I would think 60

1    days should be, should be enough time.

2         THE COURT:  Well, let's do this.  How about I suggest

3    this.  Why don't we focus on July 1st as the filing date, but

4    for the balance of the week, why don't both sides talk to each

01:06    5    other.  If you want to submit a proposed joint -- I mean a

6    joint proposal to the Court as to the dates for filing

7    opposition replies, that's fine.  You can send that in to us

8    and we'll look it.  But let's focus on July 1st then as a

9    proposed beginning of this process so we can get those briefs

01:06    10    to the Court and we can do that.  And I think that leaves an

11    issue that the defendants have raised about some discovery

12    issues.  Correct?

13         MR. GOLDBERG:  Your Honor, I -- go ahead, Clem.

14         MR TRISCHLER:  I apologize.  Your Honor, Clem

01:07    15    Trischler.  I was simply going to answer your question say,

16    yes, we have raised discovery issues with respect to the scope

17    of the ESI search terms.  We had some discussions with Judge

18    Schneider about that in our conference of April 15th.  And we

19    do think it's important to move forward with a resolution on

01:07    20    that, even through a meet and confer process which we are

21    attempting or through application to amend those search terms

22    if necessary.

23         THE COURT:  Why don't I turn this over to Judge

24    Schneider and you can talk to him about that right now.  Okay,

01:07    25    Judge Schneider?

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | MAGISTRATE JUDGE SCHNEIDER:  Yeah, I'm here.  What I                |
|       | 2  | suggest is, I'm not sure if today's call is the appropriate        |
|       | 3  | time to address this issue because you want to continue            |
|       | 4  | meeting and conferring with plaintiffs.  I do take issue,          |
| 01:08 | 5  | counsel, however, with the statement in the brief that Mr.         |
|       | 6  | Goldberg submitted that the December Order the Court entered       |
|       | 7  | was the "Initial Search Term".  I don't know where that notion     |
|       | 8  | came from.  We spent months and months and months working on      |
|       | 9  | that Search Terms and it certainly wasn't the Court's             |
| 01:08 | 10 | intention that that would just be the starting point of the       |
|       | 11 | Search Term to be used.  It's the Court's contention that         |
|       | 12 | those were the final Search Terms, but I agree with you that      |
|       | 13 | I've said it from day one and I continue to say if there's        |
|       | 14 | good cause to change it, we'll change it, but I don't think       |
| 01:09 | 15 | it's accurate to say they were "Initial Search Terms".  My        |
|       | 16 | suggestion would be meet and confer, looking at the calendar      |
|       | 17 | we'll have a conference call on May 13.  We can address           |
|       | 18 | whatever issues you want to address on May 13 or if we have to    |
|       | 19 | push it back to the general meeting which is probably going to    |
| 01:09 | 20 | be scheduled on May 27th and deal with the issue at that time.    |
|       | 21 | But I certainly agree that we ought to give you an opportunity    |
|       | 22 | to talk with the plaintiffs about whether there should be         |
|       | 23 | appropriate modification of those Search Terms.  I think          |
|       | 24 | plaintiff has as much interest as you do in not wasting time      |
| 01:09 | 25 | and money reviewing tens of thousands of irrelevant documents.   |

 1    So it may be that plaintiff will agree with you.  I notice

 2    that plaintiff apparently wants some additional information

 3    from the defendants to force the meaningful discussion.  So,

 4    again, you ought to meet and confer with them about that and

 5    see if you can come to a resolution.  Nothing would delight me

 6    more than if you can come to an amicable, both, resolution of

 7    whether a Search Term should be modified or not.

 8         So the bottom line is I think we ought to just defer

 9    this until May 13th on a call and see if you can work

10    something out before then.

11         MR. TRISCHLER:  Your Honor, this is Clem Trischler.

12    That's, that's certainly acceptable to the defendants.  Just

13    to follow-up on a few points that you made.

14         I do -- I did see in the agenda statement that the

15    plaintiffs where they indicated they were looking for some

16    information, additional information to evaluate the

17    counter-proposal.  Frankly, that information was, much of that

18    information was provided on March 31 and again on April the

19    15th.  But I certainly agree that we need to confer in trying

20    to resolve this is reasonable and we can engage in that

21    process until May 13 and report to the Court where we are at

22    that time.

23         MAGISTRATE JUDGE SCHNEIDER:  Perfect.

24         THE COURT:  All right, it's Kugler again.  Do you

25    have anything else you want to discuss today in this meeting?

1          MR. SLATER:  I don't think anything from plaintiffs,

2    your Honor.

3          MR. GOLDBERG:  Nothing from defendants, your Honor.

4          THE COURT:  All right, May 27 then.  We'll let in

01:11    5    everybody.  Let you know whether or not you can do it here or

6    do it again on the phone.  And I want to ask Mr. Goldberg and

7    Mr. Slater, will you stay on the phone a minute while everyone

8    else leaves.  I want to talk to you about another matter, if

9    you don't mind.

01:12   10          MR. SLATER:  Of course.

11          MR. GOLDBERG:  Yes.

12          THE COURT:  With that, good bye.  Stay safe and stay

13    well.  Thank you.

14          (The matter was then concluded)

15

16

17

18

19

20

21

22

23

24

25

1       I certify that the foregoing is a correct transcript from

2   the record of proceedings in the above-entitled matter.

3

4   */S/ Carl Nami, Official Court Reporter*

5

    *Court Reporter/Transcriber*

6

7   *April 30, 2020*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

*/S* [1] - 36:4

**0**

*07068* [1] - 1:16
*08101* [1] - 1:9
*08540* [1] - 2:6

**1**

*103* [1] - 1:15
*12* [13] - 18:6, 22:19, 24:1, 25:12, 28:11, 28:13, 28:25, 29:4, 29:9, 29:22, 30:7, 30:15, 31:8
*13* [3] - 33:17, 33:18, 34:21
*13th* [1] - 34:9
*15219* [1] - 2:9
*15th* [2] - 32:18, 34:19
*17TH* [1] - 1:19
*19-2875* [1] - 1:5
*1st* [2] - 32:3, 32:8

**2**

*20* [1] - 29:14
*2016* [2] - 23:18, 23:23
*2018* [1] - 28:2
*2020* [2] - 1:10, 36:7
*2029* [1] - 2:2
*207* [1] - 1:15
*21* [1] - 2:5
*23* [1] - 18:19
*2500* [1] - 1:22
*27* [1] - 35:4
*27th* [1] - 33:20
*29* [1] - 1:10

**3**

*30* [2] - 1:19, 36:7
*300* [1] - 2:2
*30327* [1] - 1:22
*31* [1] - 34:18
*3333* [1] - 1:22
*38TH* [1] - 2:9

**4**

*4th* [1] - 1:9

**5**

*50* [1] - 31:21

**6**

*60* [2] - 31:20, 31:25
*609-439-5420* [1] - 2:23

**9**

*90067* [1] - 2:2

**A**

*ability* [4] - 5:16, 5:22, 6:14, 7:11
*able* [5] - 4:23, 5:18, 7:25, 8:1, 16:24
*above-entitled* [1] - 36:2
*acceptable* [1] - 34:12
*access* [1] - 6:23
*accommodate* [1] - 8:2
*accurate* [1] - 33:15
*Act* [3] - 25:8, 25:9, 27:8
*Action* [2] - 18:14, 24:5
*action* [1] - 12:11
*ACTION* [1] - 1:4
*Actions* [1] - 26:21
*actions* [1] - 26:23
*actual* [1] - 13:24
*Adam* [1] - 10:12
*ADAM* [1] - 1:16
*add* [1] - 11:20
*additional* [2] - 34:2, 34:16
*address* [9] - 14:5, 16:20, 17:4, 28:7, 28:24, 29:23, 33:3, 33:17, 33:18
*addressed* [1] - 16:11
*administrative* [2] - 5:14, 9:12
*advance* [1] - 13:14
*adverse* [1] - 23:22
*advised* [1] - 6:13
*advisory* [1] - 24:24
*afraid* [1] - 5:25
*agenda* [1] - 34:14
*ago* [1] - 11:9
*agree* [4] - 33:12, 33:21, 34:1, 34:19
*agreed* [1] - 29:19
*ahead* [4] - 10:19, 18:17, 21:3, 32:13
*aided* [1] - 2:25
*aiming* [1] - 30:25
*ALFANO* [1] - 2:8
*allegation* [1] - 25:1
*allege* [2] - 22:1
*allegedly* [3] - 14:19, 22:12, 22:24
*alleging* [1] - 23:3
*ALLEN* [1] - 6:20
*Allen* [1] - 6:20
*allowed* [1] - 5:12
*allows* [1] - 27:19
*almost* [2] - 6:13, 24:24
*alternate* [1] - 22:15
*alternative* [2] - 22:2, 22:23
*ambient* [1] - 10:23
*amend* [1] - 32:21
*Amerisource* [1] - 10:8
*amicable* [1] - 34:6
*amount* [2] - 24:19, 24:21
*ANGLES* [1] - 2:2
*ANN* [1] - 1:18
*answer* [1] - 32:15
*answered* [1] - 17:13
*answers* [3] - 17:20, 17:21, 30:18
*anyway* [4] - 19:6, 19:18, 20:2, 24:25
*API* [2] - 16:9, 17:9
*apologize* [1] - 32:14
*apparatus* [1] - 9:11
*application* [1] - 32:21
*apply* [2] - 20:7, 26:18
*appreciate* [2] - 14:13, 30:4
*approach* [1] - 12:9
*appropriate* [3] - 30:17, 33:2, 33:23
*approve* [1] - 26:1
*April* [6] - 1:10, 4:19, 4:24, 32:18, 34:18, 36:7
*argument* [1] - 13:5
*arguments* [1] - 14:3
*asserted* [1] - 24:3
*asserting* [1] - 20:20
*assume* [1] - 18:6
*assumption* [1] - 9:17
*ATI's* [1] - 6:12
*ATLANTA* [1] - 1:22
*attempting* [1] - 32:21
*ATTORNEYS* [6] - 1:16, 1:20, 1:23, 2:3, 2:6, 2:10
*AUROBINDO* [1] - 1:20
*Aurobindo* [1] - 7:1
*authority* [1] - 19:16
*avoid* [2] - 14:2, 30:21

**B**

*bad* [2] - 8:8, 8:10
*balance* [1] - 32:4
*ball* [1] - 13:14
*ballpark* [1] - 31:15
*bargain* [1] - 21:16, 21:22
*BARNES* [1] - 2:1
*barred* [1] - 24:17
*based* [3] - 6:21, 10:17, 10:22
*basis* [1] - 12:12
*become* [2] - 16:19, 16:20
*beginning* [1] - 32:9
*behalf* [4] - 6:10, 7:8, 10:10, 12:19
*behind* [1] - 15:24
*benefit* [3] - 21:16, 21:21, 23:19
*best* [2] - 16:20, 17:22
*better* [1] - 22:3, 30:16
*between* [1] - 4:23
*bind* [1] - 12:16
*binding* [1] - 18:22
*Binhi* [1] - 4:17
*bit* [4] - 4:7, 11:19, 15:17, 29:25
*blood* [2] - 22:23, 23:19
*board* [2] - 7:19, 17:13
*bogged* [2] - 14:15, 15:21
*BOSICK* [1] - 2:8
*bottle* [2] - 23:18, 23:21
*bottom* [1] - 34:8
*bought* [2] - 23:4, 23:18
*brief* [2] - 10:20, 33:5
*briefed* [1] - 31:24
*briefing* [5] - 13:5, 13:24, 14:2, 15:22, 17:6
*briefly* [1] - 10:15
*briefs* [1] - 32:9
*bring* [1] - 13:16
*broader* [1] - 12:9
*brought* [1] - 23:16
*bucket* [1] - 23:10
*Building* [1] - 1:8
*bullet* [4] - 11:24, 19:7, 24:9, 27:13
*BY* [6] - 1:15, 1:18, 1:21, 2:1, 2:5, 2:8
*bye* [1] - 35:12

**C**

*CA* [1] - 2:2
*calendar* [1] - 33:16
*Camden* [2] - 1:9, 8:1
*CAMERON* [1] - 2:5
*capacity* [1] - 5:14
*Cardinal* [1] - 10:8
*Carl* [2] - 2:22, 36:4
*Carl_Nami@NJD.USCOURTS.GOV* [1] - 2:23
*case* [24] - 7:18, 7:21, 8:21, 8:24, 9:2, 9:3, 9:4, 9:8, 9:13, 9:14, 9:18, 9:19, 12:5, 15:9, 17:20, 19:13, 19:22, 24:18, 25:15, 27:23, 27:24, 29:3, 31:6
*cases* [6] - 7:19, 10:1, 10:5, 27:21, 30:10, 30:22
*Causation* [1] - 31:2
*causes* [1] - 12:11
*central* [2] - 12:6, 15:25
*CENTRE* [1] - 2:9
*CENTURY* [1] - 2:2
*certain* [6] - 7:9, 7:13, 13:8, 14:21, 14:25, 23:6
*certainly* [6] - 6:23, 10:3, 11:20, 12:2, 12:3, 12:4, 13:19, 18:1, 19:20, 27:1, 29:1, 33:9, 33:21, 34:12, 34:19
*Certification* [7] - 28:15, 28:16, 28:18, 30:6, 30:12, 30:13, 31:5
*certification* [4] - 13:15, 15:1, 15:3,

19:5
**certify** [1] - 36:1
**certifying** [1] - 14:19
**chain** [2] - 15:19, 26:19
**chance** [1] - 28:7
**change** [3] - 12:17, 33:14
**changed** [1] - 18:19
**CHB** [1] - 10:6
**China** [4] - 4:10, 4:16, 4:17, 7:9
**Chinese** [1] - 10:6
**choose** [1] - 19:15
**Circuit** [4] - 9:2, 9:4, 21:15, 22:5
**circumstance** [1] - 22:18
**circumstances** [1] - 31:18
**citing** [1] - 9:2
**CIVIL** [1] - 1:4
**claim** [6] - 20:18, 20:19, 23:8, 24:12, 25:10, 29:7
**claimants** [1] - 21:15
**claiming** [3] - 20:24, 21:25, 22:4
**claims** [15] - 12:1, 12:6, 12:11, 12:15, 14:4, 14:11, 15:16, 17:21, 25:1, 26:4, 27:3, 27:11, 29:2, 29:21, 30:9
**class** [17] - 13:15, 14:17, 15:1, 15:3, 18:13, 19:4, 20:17, 20:18, 20:19, 20:20, 23:9, 23:11, 23:12, 23:21, 23:23
**Class** [12] - 18:14, 23:15, 24:2, 24:3, 24:5, 24:6, 28:15, 28:16, 28:17, 30:12, 30:13, 31:5
**Classes** [4] - 24:6, 28:20, 30:16
**classes** [4] - 14:18, 14:20, 14:22, 14:23
**cleanup** [1] - 18:6
**clear** [1] - 16:20
**clearly** [1] - 12:23
**Clem** [6] - 5:7, 6:13, 6:18, 32:13, 32:14, 34:11
**CLEM** [1] - 2:8
**client** [2] - 5:17, 5:22
**clients** [7] - 4:10, 4:16, 4:20, 4:21, 6:18, 6:21, 31:22

**closer** [1] - 13:15
**co** [7] - 22:7, 22:11, 22:22, 23:5, 23:8, 24:10, 24:17
**co-pay** [7] - 22:7, 22:11, 22:22, 23:5, 23:8, 24:10, 24:17
**coding** [1] - 11:14
**Cohen** [2] - 1:8, 7:8
**COHEN** [2] - 1:21, 7:8
**colleague** [1] - 10:15
**colleagues** [3] - 10:15, 11:18, 27:1
**collecting** [1] - 4:21
**comments** [1] - 6:4
**communicate** [4] - 5:17, 7:3, 7:11, 14:7
**communication** [7] - 4:11, 4:20, 5:21, 6:16, 6:24, 7:4, 7:12
**Complaint** [1] - 20:23
**complaint** [1] - 30:19
**complete** [2] - 12:4, 28:19
**completely** [2] - 9:23, 19:19
**complications** [1] - 17:11
**comprehensive** [1] - 31:14
**computer** [1] - 2:25
**computer-aided** [1] - 2:25
**concern** [1] - 17:24
**concerns** [2] - 17:25, 19:6
**concluded** [1] - 35:14
**conducting** [1] - 25:21
**confer** [5] - 21:5, 32:20, 33:16, 34:4, 34:19
**conference** [5] - 4:9, 7:24, 15:9, 32:18, 33:17
**CONFERENCE** [1] - 1:6
**conferring** [1] - 33:4
**confident** [1] - 30:23
**consent** [1] - 9:18
**considering** [1] - 31:8
**consumed** [1] - 23:22
**consumer** [1] - 23:17
**contaminated** [4] - 15:11, 21:1, 21:21,

22:13
**contamination** [1] - 15:10
**contention** [1] - 33:11
**continue** [5] - 5:12, 7:3, 25:19, 33:3, 33:13
**continued** [1] - 25:6
**converse** [1] - 26:22
**Cooper** [1] - 1:9
**Coronavirus** [3] - 5:1, 31:19
**corporation** [2] - 20:5, 20:6
**correct** [6] - 18:8, 24:12, 24:13, 27:1, 32:12, 36:1
**Cosmetics** [2] - 25:8, 25:9
**counsel** [7] - 4:10, 17:16, 17:17, 19:25, 28:9, 31:12, 33:5
**counter** [1] - 34:17
**counter-proposal** [1] - 34:17
**countries** [2] - 7:10, 8:16
**country** [3] - 5:10, 16:5, 16:16
**countrywide** [1] - 6:25
**couple** [1] - 8:25
**course** [5] - 5:2, 5:19, 9:4, 17:16, 35:10
**Court** [30] - 2:22, 4:1, 4:22, 8:4, 9:6, 11:5, 11:6, 13:4, 13:18, 13:24, 14:4, 18:10, 21:11, 21:12, 22:18, 22:20, 23:1, 24:4, 24:9, 28:19, 28:21, 29:19, 29:21, 31:7, 32:6, 32:10, 33:6, 34:21, 36:4, 36:5
**court** [1] - 25:18
**COURT** [43] - 1:2, 4:2, 4:4, 5:4, 5:25, 7:7, 7:15, 7:17, 8:16, 8:19, 10:13, 11:22, 12:16, 12:22, 14:12, 17:15, 17:19, 18:18, 21:2, 21:4, 21:7, 21:19, 22:6, 22:17, 23:2, 24:8, 24:14, 24:22, 25:11, 25:23, 26:9, 26:13, 26:20, 27:4, 27:13, 28:8, 30:1, 30:3, 32:2,

32:23, 34:24, 35:4, 35:12
**Court's** [3] - 31:1, 33:9, 33:11
**Courthouse** [1] - 1:8
**courtroom** [1] - 7:25
**cover** [2] - 16:4, 28:23
**covered** [1] - 29:9
**covers** [1] - 23:16
**cross** [1] - 13:7
**cumbersome** [1] - 4:7
**curious** [1] - 25:11
**CVS** [1] - 2:3

**D**

**date** [4] - 9:25, 13:15, 19:20, 32:3
**dates** [1] - 32:6
**Daubert** [2] - 28:18, 31:1
**days** [3] - 7:23, 31:21, 32:1
**deal** [6] - 17:10, 18:22, 30:14, 30:17, 30:22, 33:20
**dealing** [3] - 6:11, 11:7, 11:8
**Deborah** [1] - 6:20
**December** [1] - 33:6
**decide** [6] - 9:5, 14:20, 22:19, 22:20, 30:11, 31:2
**decided** [1] - 7:20
**decision** [5] - 9:15, 18:14, 18:17, 18:24, 22:25
**decisions** [3] - 8:23, 15:23, 30:15
**defective** [1] - 27:12
**defendant** [8] - 9:24, 10:21, 13:1, 14:18, 14:21, 16:16, 18:23, 20:4
**defendants** [39] - 4:15, 6:21, 9:21, 10:7, 10:21, 12:24, 13:6, 13:8, 13:10, 13:11, 13:23, 14:4, 14:11, 14:15, 17:5, 17:10, 18:5, 18:7, 18:11, 18:17, 18:19, 19:8, 19:13, 19:20, 22:24, 25:4, 26:4, 26:11, 27:22, 27:25, 28:2, 29:3, 29:11, 30:7, 31:18, 32:11, 34:3, 34:12, 35:3

**defendants'** [3] - 17:25, 20:21, 30:19
**defense** [4] - 4:9, 17:17, 28:9, 31:12
**defenses** [2] - 12:24, 17:4
**defer** [2] - 11:18, 34:8
**deferred** [1] - 9:9
**defined** [3] - 23:12, 23:15, 30:16
**definition** [1] - 25:6
**degree** [1] - 7:24
**delayed** [1] - 6:25
**delight** [1] - 34:5
**dependent** [2] - 12:25, 18:10
**determination** [3] - 18:16, 25:8, 25:12
**determine** [1] - 23:9
**DHP** [1] - 17:9
**different** [9] - 8:15, 8:16, 13:22, 16:14, 16:16, 17:21, 22:12, 23:25, 31:23
**difficult** [1] - 8:21
**Direct** [3] - 9:21, 9:22, 19:18
**direction** [1] - 8:20
**disagreement** [1] - 28:6
**discovery** [16] - 15:7, 15:13, 15:24, 16:11, 17:3, 17:7, 17:24, 18:1, 20:8, 29:6, 29:14, 29:18, 30:20, 31:7, 32:11, 32:16
**discuss** [1] - 34:25
**discussion** [1] - 34:3
**discussions** [1] - 32:17
**disk** [1] - 12:4
**dismiss** [4] - 18:21, 20:2, 31:4, 31:20
**disposition** [1] - 15:1
**dispositive** [3] - 9:5, 9:8, 13:16
**disrupted** [2] - 5:9, 5:18
**distancing** [1] - 8:3
**DISTRICT** [3] - 1:2, 1:2, 1:12
**District** [1] - 19:14
**document** [3] - 11:13, 29:15, 29:18
**documents** [12] - 4:21, 5:17, 6:14, 7:4, 7:10, 7:12, 7:13, 7:14, 11:11, 11:12, 11:15, 33:25

*dollar* [2] - 22:11, 22:15
*dollars* [2] - 21:8, 22:13
*done* [2] - 9:11, 30:11
*dose* [1] - 10:23, 16:10
*down* [11] - 4:6, 8:8, 10:3, 10:9, 10:14, 14:15, 15:21, 16:21, 16:25, 23:19, 31:3
*downstream* [3] - 10:7, 26:4, 26:19
*Drug* [1] - 25:8
*drug* [12] - 22:12, 22:14, 22:16, 22:23, 23:20, 23:25, 24:10, 24:16, 24:20, 25:5, 25:10, 25:20
*drugs* [2] - 15:11, 22:7
*Drugs* [1] - 25:9
*DUANE* [1] - 1:17
*due* [1] - 6:25

## E

*early* [3] - 13:25, 23:14, 29:12
*easiest* [2] - 12:7, 12:12
*EAST* [1] - 2:2
*economic* [3] - 20:17, 20:19, 28:21
*economies* [1] - 16:14
*effect* [1] - 23:23
*effective* [1] - 22:2
*efficiencies* [1] - 28:15
*efficiency* [1] - 29:5
*efficient* [1] - 31:25
*efficiently* [2] - 11:11, 17:13
*effort* [1] - 10:24
*EISENHOWER* [1] - 1:15
*either* [2] - 9:15, 9:23
*eliminated* [1] - 29:3
*ELIZABETH* [1] - 2:1
*end* [3] - 15:22, 19:24
*ended* [1] - 24:4
*engage* [1] - 34:20
*enhance* [1] - 29:4
*enter* [1] - 9:19
*entered* [1] - 33:6
*entire* [2] - 11:13,

23:18
*entirety* [1] - 23:22
*entities* [1] - 17:8
*entitled* [1] - 36:2
*envision* [2] - 14:6, 14:24
*ESI* [1] - 32:17
*ESQUIRE* [6] - 1:15, 1:18, 1:18, 1:21, 2:1, 2:8
*essence* [1] - 19:3
*essential* [4] - 5:14, 5:16, 6:12, 12:14
*essentially* [4] - 5:15, 5:24, 6:25, 13:5
*estimate* [1] - 26:5
*evaluate* [1] - 34:16
*exact* [1] - 26:17
*example* [7] - 15:4, 15:14, 17:7, 20:13, 22:9, 23:14, 29:15
*except* [1] - 30:8
*exclude* [1] - 23:12
*excuse* [1] - 5:10
*experience* [1] - 24:20
*experienced* [1] - 20:20
*experts* [1] - 31:2
*extend* [1] - 19:2
*extent* [1] - 16:11
*extremely* [1] - 5:13

## F

*facilities* [8] - 4:16, 4:17, 4:18, 4:22, 5:8, 5:12, 6:10, 6:24
*facility* [2] - 6:17
*fact* [7] - 9:6, 16:11, 22:25, 25:19, 27:20, 29:1, 29:2
*facts* [3] - 25:13, 25:16, 25:17
*factual* [1] - 15:25
*fair* [1] - 18:17
*fall* [3] - 13:23, 23:10, 26:15
*far* [3] - 11:3, 15:25, 29:19
*FDA* [10] - 25:3, 25:4, 25:5, 25:9, 25:19, 25:20, 26:1, 27:19, 27:25, 28:2
*FDA's* [1] - 25:24
*FDCA* [1] - 24:25
*few* [4] - 4:7, 9:9, 16:2, 34:13
*fifteen* [4] - 22:11,

22:13, 22:15, 29:10
*figure* [2] - 12:10, 14:17
*figuring* [1] - 15:18
*file* [4] - 7:20, 30:7, 31:13
*filed* [2] - 9:19, 31:24
*filing* [7] - 7:22, 24:17, 31:10, 31:20, 32:3, 32:6
*Filing* [1] - 9:21, 9:22, 19:19
*filings* [1] - 7:18
*final* [2] - 12:4, 33:12
*fine* [2] - 12:22, 32:7
*finished* [2] - 10:23, 16:10
*first* [6] - 7:22, 14:6, 15:8, 16:5, 16:22, 19:11
*five* [3] - 21:8, 23:16, 29:17
*FLOOR* [1] - 2:9
*focus* [8] - 13:12, 15:12, 16:14, 17:11, 18:1, 32:3, 32:8
*focused* [3] - 13:11, 15:17, 26:7
*follow* [1] - 34:13
*follow-up* [1] - 34:13
*following* [1] - 4:1
*Food* [2] - 25:8, 25:9
*FOR* [7] - 1:2, 1:16, 1:20, 1:23, 2:3, 2:6, 2:10
*force* [1] - 34:3
*foregoing* [1] - 36:1
*forget* [1] - 9:22
*forth* [2] - 18:11, 18:12
*Forum* [1] - 19:15
*forward* [2] - 11:4, 32:19
*four* [5] - 24:5, 24:7, 28:14, 28:16, 29:24
*frankly* [2] - 15:21, 34:17
*free* [2] - 27:14, 27:23
*FREEMAN* [1] - 1:14
*front* [1] - 17:5
*fully* [1] - 5:3
*future* [2] - 8:24, 10:25

## G

*GA* [1] - 1:22
*gather* [1] - 6:14

*General* [1] - 31:2
*general* [4] - 6:4, 8:25, 14:19, 33:19
*GHP* [2] - 4:15, 28:24
*given* [2] - 4:11, 31:18
*gloss* [1] - 29:25
*GOLDBERG* [24] - 1:18, 4:14, 18:9, 20:16, 21:3, 21:6, 21:14, 21:24, 22:10, 22:20, 23:6, 24:13, 24:18, 25:3, 25:16, 26:6, 26:25, 27:17, 28:12, 30:2, 31:17, 32:13, 35:3, 35:11
*Goldberg* [10] - 4:15, 17:17, 18:8, 21:20, 27:15, 28:8, 30:1, 30:19, 33:6, 35:6
*GORDON* [1] - 2:8
*Graham* [1] - 6:9
*grandular* [1] - 6:9
*grant* [1] - 18:21
*GRANT* [1] - 2:5
*grateful* [1] - 7:19
*great* [1] - 17:21
*GREENBERG* [1] - 1:21
*grounds* [1] - 9:25
*group* [4] - 7:12, 10:21, 12:10, 12:12
*grouping* [1] - 13:14
*groupings* [1] - 13:23
*guess* [1] - 7:19
*guidance* [1] - 14:1
*guts* [1] - 15:15

## H

*hand* [4] - 11:21, 14:16, 30:24
*handle* [1] - 14:2
*handled* [1] - 16:25
*handling* [1] - 17:1
*happy* [1] - 28:22
*head* [1] - 27:9
*health* [1] - 24:11
*hear* [3] - 17:7, 28:23, 31:9
*heard* [3] - 17:17, 28:22, 29:12
*hearings* [1] - 28:18
*hello* [2] - 4:2, 4:4
*Hello* [1] - 10:12
*help* [2] - 29:1, 30:15
*helpful* [2] - 13:1, 26:12

*HETERO* [1] - 2:6
*Hetero* [2] - 6:10, 7:2
*highly* [1] - 20:1
*HILL* [1] - 2:4
*holding* [1] - 9:5
*Honor* [28] - 4:14, 5:6, 6:9, 6:20, 10:12, 10:17, 10:20, 16:15, 16:22, 18:9, 20:16, 21:14, 24:13, 25:17, 26:6, 26:10, 26:25, 27:6, 28:12, 28:23, 29:13, 29:24, 31:17, 32:13, 32:14, 34:11, 35:2, 35:3
*HONORABLE* [1] - 1:11
*hook* [1] - 8:4
*hope* [3] - 4:7, 10:14, 17:13
*hopeful* [1] - 8:6
*hoping* [2] - 7:23, 14:7
*HP* [3] - 10:23, 15:5, 16:1
*hundred* [1] - 29:14

## I

*identical* [1] - 13:19
*identification* [1] - 15:18
*identified* [1] - 28:1
*identify* [4] - 4:5, 15:14, 28:3, 29:1
*Illinois* [1] - 27:9
*impact* [1] - 16:23
*important* [1] - 32:19
*impure* [1] - 22:24
*impurities* [4] - 25:22, 27:19, 27:20, 27:24
*impurity* [4] - 27:14, 27:22, 27:25, 28:1
*impurity-free* [1] - 27:14
*IN* [1] - 1:4
*INC* [1] - 2:10
*include* [2] - 23:23, 28:17
*inclusive* [1] - 30:20
*India* [9] - 4:10, 5:5, 5:9, 5:18, 5:23, 6:21, 7:2, 7:9
*Indian* [6] - 5:9, 5:12, 5:22, 6:7, 6:10, 17:8
*Indiana* [1] - 27:9
*indicated* [3] - 4:22, 19:25, 34:15
*individual* [1] - 27:11

inefficient [1] - 13:9
informally [1] - 19:25
information [19] -
5:23, 13:8, 13:17,
13:20, 14:1, 14:8,
16:13, 16:23, 17:12,
19:10, 29:7, 29:16,
29:17, 29:20, 34:2,
34:16, 34:17, 34:18
ingesting [2] - 20:21,
21:17
Initial [1] - 33:7,
33:15
injured [3] - 22:14,
22:23, 24:1
injury [8] - 20:11,
20:14, 20:21, 20:22,
20:24, 21:16, 22:25,
24:20
Injury [1] - 20:23
innocent [2] - 26:3,
26:16
instructed [2] - 25:5,
25:19
integrated [1] - 16:9
intended [1] - 21:18
intention [1] - 33:10
interact [1] - 6:23
interest [2] - 18:4,
33:24
interesting [2] - 9:2,
9:3
interrupt [1] - 30:3
interruptions [1] -
5:1
intervention [2] -
18:8, 18:10
Intervention [1] -
18:13
investigation [1] -
25:21
involved [1] - 4:21
irrelevant [2] - 21:10,
33:25
Israeli [1] - 7:13
issue [11] - 4:12,
15:10, 18:19, 18:25,
19:21, 28:7, 31:2,
32:11, 33:3, 33:4,
33:20
issues [26] - 10:22,
11:1, 11:7, 12:15,
13:25, 16:7, 16:10,
16:21, 16:22, 17:8,
17:10, 19:20, 24:2,
24:6, 28:18, 28:22,
29:1, 29:22, 30:14,
31:5, 31:23, 31:24,
32:12, 32:16, 33:18

## J

January [2] - 4:23,
4:24
JERSEY [3] - 1:2,
1:16, 2:6
Jersey [13] - 1:9, 8:8,
8:9, 8:11, 8:14, 8:15,
9:20, 10:22, 16:6,
19:14, 27:4, 27:7
Jessica [1] - 7:1
JESSICA [1] - 1:18
job [1] - 9:11
JOEL [1] - 1:12
JOHNSTON [4] - 2:1,
26:10, 26:14, 27:6
Johnston [2] - 26:10,
27:7
join [1] - 27:1
joint [2] - 32:5, 32:6
Judge [12] - 4:3, 6:6,
7:17, 9:5, 9:10, 11:9,
11:23, 18:1, 30:23,
32:17, 32:23, 32:25
JUDGE [8] - 1:12,
1:12, 4:3, 6:6, 8:13,
28:5, 33:1, 34:23
judge [1] - 7:8
Judged [1] - 8:13
judgment [3] - 9:19,
19:16
judicial [1] - 25:18
July [2] - 32:3, 32:8
jump [1] - 26:11
junk [1] - 18:6
jurisdiction [15] -
9:18, 9:21, 9:24, 16:7,
19:11, 19:14, 19:17,
19:22, 19:24, 20:1,
20:3, 20:4, 25:25,
30:8
jurisdictional [2] -
10:22, 11:1

## K

KATZ [1] - 1:14
keep [2] - 6:2, 8:2
key [1] - 31:5
kinds [2] - 24:5,
30:21
known [2] - 21:21,
21:23
Kugler [5] - 4:3,
7:17, 8:13, 11:23,
34:24
KUGLER [1] - 1:11

## L

labeling [1] - 26:1
laboratories [1] - 5:8
Labs [1] - 6:10
LABS [1] - 2:6
larger [1] - 12:12
largest [1] - 16:3
last [2] - 27:13, 29:10
late [1] - 7:24
latter [1] - 23:3
Laughter [1] - 8:18
law [7] - 12:10,
14:20, 18:24, 20:1,
21:25, 22:21, 23:7
laws [1] - 12:25
lawsuits [1] - 7:21
leadership [1] - 8:3
leaves [2] - 32:10,
35:8
left [2] - 10:2, 25:13
legal [2] - 5:20, 22:25
legally [1] - 23:13
lengthy [1] - 31:14
letter [1] - 11:25,
12:8
level [4] - 15:7,
15:25, 17:6, 27:21
levels [4] - 13:7,
15:19, 16:9, 16:15
Lexicon [1] - 10:25
liability [4] - 18:14,
18:15, 26:2, 27:10
Liability [1] - 27:3,
27:8
liable [3] - 14:18,
14:21, 18:24
likely [6] - 12:1,
13:21, 14:10, 15:23,
16:25, 20:2
limited [8] - 5:13,
6:11, 6:12, 6:15, 7:5,
7:11, 11:19
line [5] - 10:9, 16:21,
16:25, 17:6, 34:8
listen [2] - 4:5, 8:5
litigation [6] - 9:3,
15:6, 15:13, 16:1,
16:24, 29:12
LITIGATION [1] - 1:4
live [1] - 30:22
LLP [3] - 2:1, 2:4, 2:8
located [1] - 16:6
location [1] - 16:1
lockdown [2] - 5:11,
6:25
locus [1] - 20:5
logistical [1] - 9:13
look [11] - 14:12,

14:16, 15:15, 15:25,
16:1, 17:19, 18:5,
21:8, 23:24, 25:24,
32:8
looked [3] - 15:16,
16:2
looking [2] - 33:16,
34:15
LORI [1] - 1:21
Lori [1] - 7:8
LOS [1] - 2:2
loss [3] - 20:17,
20:19, 28:21
lost [1] - 9:25
lower [2] - 15:19,
15:21
LTD [1] - 2:6

## M

macro [1] - 15:22
MAGISTRATE [7] -
1:12, 4:3, 6:6, 8:13,
28:5, 33:1, 34:23
majority [2] - 6:22,
26:14
manage [3] - 8:21,
12:7, 12:12
management [1] -
15:9
manufactured [1] -
27:18
manufacturer [7] -
5:11, 10:6, 10:7,
10:24, 27:18, 29:13,
29:15
manufacturers [3] -
6:7, 16:10, 27:14
manufacturing [3] -
5:16, 15:7, 28:3
March [2] - 11:25,
34:18
market [2] - 16:3,
16:5
MARLIE [1] - 1:14
Master [1] - 20:23
matter [7] - 14:20,
18:24, 22:21, 23:7,
35:8, 35:14, 36:2
matters [1] - 27:22
McKesson [1] - 10:8
MDL [3] - 20:7, 20:8,
29:5
MDMA [1] - 27:24,
28:3
mean [8] - 12:2,
12:16, 13:7, 15:1,
17:3, 23:5, 26:2, 32:5
meaning [1] - 25:7
meaningful [1] - 34:3

means [1] - 27:15
mechanical [1] -
2:24
mechanism [1] -
15:14
medicines [1] - 6:12
meet [3] - 32:20,
33:16, 34:4
meeting [3] - 33:4,
33:19, 34:25
members [4] - 18:13,
20:17, 20:20, 23:13
mentioned [1] - 7:14
merely [2] - 9:9, 22:3
merited [1] - 15:2
merits [1] - 9:14
might [4] - 7:25,
12:24, 28:5, 28:7
mind [2] - 19:12,
35:9
minimum [1] - 28:17
minute [1] - 35:7
minutes [1] - 9:9
Mitchell [1] - 1:8
mix [1] - 14:22
modification [1] -
33:23
modified [1] - 34:7
moment [2] - 5:19,
5:24
money [4] - 21:4,
21:9, 21:12, 33:25
month [1] - 15:23
months [2] - 29:10,
33:8
moot [1] - 9:6
morning [2] - 4:14,
5:6
MORRIS [1] - 1:17
most [1] - 30:21
motion [7] - 13:16,
22:19, 24:1, 25:12,
31:1, 31:20, 31:25
motions [20] - 9:6,
9:8, 13:18, 18:21,
19:3, 19:8, 28:11,
28:13, 28:18, 29:4,
29:11, 30:8, 30:10,
30:15, 31:4, 31:8,
31:10, 31:11, 31:13,
31:15
move [2] - 11:4,
32:19
MR [33] - 4:14, 5:6,
6:9, 10:12, 12:2, 13:3,
14:24, 18:9, 20:16,
21:3, 21:6, 21:14,
21:24, 22:10, 22:20,
23:6, 24:13, 24:18,
25:3, 25:16, 26:6,

26:25, 27:17, 28:12, 30:2, 31:17, 32:13, 32:14, 34:11, 35:1, 35:3, 35:10, 35:11
**MS** [7] - 6:20, 7:1, 7:8, 10:14, 26:10, 26:14, 27:6
**multi** [2] - 7:10, 7:14
**multiple** [1] - 27:10
**MYLAN** [1] - 2:10
**Mylan** [5] - 5:7, 5:8, 7:2, 29:15

## N

**Nami** [3] - 2:22, 4:6, 36:4
**narrow** [4] - 24:2, 24:6, 29:6
**narrowing** [1] - 29:4
**nationwide** [1] - 5:10
**nature** [2] - 6:15, 19:23
**NE** [1] - 1:22
**near** [3] - 8:10, 10:25, 13:12
**necessarily** [1] - 29:20
**necessary** [1] - 32:22
**necessity** [1] - 13:16
**need** [15] - 4:8, 13:24, 14:5, 17:3, 17:5, 19:22, 21:25, 22:1, 23:9, 30:3, 31:11, 31:13, 31:24, 34:19
**needed** [1] - 13:9
**needs** [1] - 18:2
**never** [6] - 12:3, 13:23, 17:5, 19:17, 21:22, 23:20
**NEW** [3] - 1:2, 1:16, 2:6
**new** [3] - 7:19, 7:21, 13:2
**New** [12] - 1:9, 8:8, 8:9, 8:10, 9:20, 10:22, 16:6, 19:14, 27:4, 27:7
**news** [1] - 5:4
**next** [8] - 7:24, 15:22, 22:6, 24:25, 26:1, 26:3, 26:20, 30:12
**ninth** [1] - 11:25
**Noel** [1] - 10:8
**non** [1] - 5:14
**non-essential** [1] - 5:14

**none** [3] - 20:19, 27:22, 28:2
**nonexistent** [1] - 5:24
**north** [1] - 8:10
**North** [1] - 8:14
**nothing** [4] - 5:15, 7:20, 34:5, 35:3
**notice** - 25:18, 28:19, 34:1
**noticed** [1] - 7:18
**notion** [3] - 28:14, 29:23, 33:7
**notwithstanding** [1] - 25:20
**nowhere** [1] - 8:10
**number** [5] - 6:15, 16:6, 26:7, 26:17, 29:10
**NUMBER** [1] - 1:4
**numerous** [1] - 27:8

## O

**objections** [2] - 9:24, 30:5
**observations** [1] - 9:1
**obtain** [1] - 5:17
**obvious** [1] - 15:8
**obviously** [7] - 10:15, 11:7, 11:18, 12:17, 15:2, 30:24, 31:18
**OF** [1] - 1:2
**offices** [1] - 6:24
**Official** [2] - 2:22, 36:4
**Omnibus** [1] - 31:25
**on-site** [1] - 6:16
**once** [2] - 17:1, 29:21
**ONE** [1] - 2:9
**one** [24] - 7:22, 10:21, 14:13, 14:16, 16:2, 16:5, 17:24, 18:8, 18:9, 18:13, 19:2, 19:11, 22:6, 24:25, 26:1, 26:3, 26:9, 26:20, 27:4, 28:20, 29:15, 33:13
**ones** [2] - 12:7, 20:22
**open** [2] - 4:1, 7:25
**opening** [1] - 31:20
**operate** [1] - 5:12
**operating** [1] - 5:13
**operational** [2] - 4:19, 5:3
**operations** [4] - 5:9,

5:16, 5:19, 5:22
**opinion** [2] - 24:9, 24:24
**opioid** [1] - 9:3
**opportunity** [4] - 10:16, 19:21, 28:20, 33:21
**opposed** [2] - 15:4, 17:1
**opposition** [1] - 32:7
**opt** [3] - 18:14, 18:15, 28:20
**optimism** [1] - 7:24
**Order** [5] - 9:22, 18:25, 19:19, 33:6
**order** [1] - 21:12
**ordered** [1] - 29:19
**organization** [1] - 9:13
**originated** [2] - 15:10, 15:11
**otherwise** [2] - 13:23, 14:5
**ought** [3] - 33:21, 34:4, 34:8
**outcome** [1] - 13:21
**over-inclusive** [1] - 30:20
**overall** [2] - 28:14, 29:5
**overview** [2] - 12:3, 12:5
**owe** [1] - 21:9
**own** [1] - 27:10
**OXFORD** [1] - 2:9

## P

**PA** [2] - 1:19, 2:9
**pace** [3] - 11:5, 11:16, 28:21
**page** [2] - 11:24, 19:7
**paid** [13] - 20:25, 21:8, 21:20, 22:7, 22:11, 22:13, 22:15, 22:21, 22:22, 23:7, 24:17, 24:19
**panel** [1] - 20:7
**PARK** [1] - 2:2
**PARKWAY** [1] - 1:15
**part** [6] - 8:9, 15:20, 16:16, 17:9, 25:14, 25:16
**particular** [3] - 17:4, 27:24
**particularly** [1] - 9:16
**parties** [2] - 31:21, 31:22

**party** [1] - 27:25
**patients** [2] - 25:5, 25:19
**pay** [7] - 22:7, 22:11, 22:22, 23:5, 23:8, 24:10, 24:17
**paying** [1] - 21:17, 24:20
**payment** [3] - 21:4, 22:15, 23:25
**people** [5] - 5:23, 6:23, 8:14, 14:8, 20:13
**perfect** [3] - 17:20, 30:18, 34:23
**perform** [1] - 21:18
**performed** [2] - 21:18, 22:3
**period** [1] - 13:13
**peripheral** [2] - 14:3, 14:14
**permit** [1] - 30:7
**permits** [1] - 27:19
**person** [3] - 7:23, 21:8, 23:20
**Personal** [1] - 20:23
**personal** [9] - 9:20, 9:24, 16:7, 19:11, 19:17, 19:21, 20:1, 20:3, 30:8
**personnel** [1] - 5:14
**persons** [1] - 6:15
**PHARMACETICALS** [1] - 2:10
**pharmaceutical** [3] - 5:11, 26:21, 26:24
**Pharmaceuticals** [1] - 5:7
**phase** [6] - 13:5, 13:25, 14:6, 15:3, 17:2, 18:3
**Philadelphia** [1] - 8:9
**PHILADELPHIA** [1] - 1:19
**phone** [3] - 11:19, 35:6, 35:7
**physical** [6] - 20:11, 20:14, 20:20, 20:22, 20:24, 22:25
**PI** [1] - 10:24
**PIEDMONT** [1] - 1:22
**PIETRAGALLO** [1] - 2:8
**PITTSBURGH** [1] - 2:9
**place** [4] - 4:1, 4:17, 11:14, 15:13
**PLAINTIFF** [1] - 1:16
**plaintiff** [9] - 9:23, 20:14, 22:10, 22:21,

24:10, 24:15, 33:24, 34:1, 34:2
**Plaintiffs** [5] - 12:1, 18:12, 19:1, 23:23, 24:4
**plaintiffs** [20] - 12:20, 18:22, 19:15, 20:7, 20:10, 20:17, 20:22, 20:24, 21:24, 22:6, 23:2, 23:7, 23:9, 24:19, 28:6, 30:10, 33:4, 33:22, 34:15, 35:1
**Plaintiffs'** [1] - 10:10
**plaintiffs'** [5] - 9:16, 10:5, 11:8, 17:16, 28:14
**plant** [1] - 5:15
**play** [1] - 16:18
**pleadings** [3] - 25:14, 25:17, 25:18
**plugging** [1] - 6:2
**point** [10] - 8:19, 14:12, 19:4, 19:5, 20:10, 24:9, 27:13, 29:13, 30:14, 33:10
**points** [7] - 8:22, 11:24, 17:16, 19:8, 28:25, 30:13, 34:13
**polled** [1] - 31:17
**posed** [1] - 18:15
**position** [3] - 6:8, 6:11, 6:13
**possible** [3] - 6:16, 16:4, 29:12
**postpone** [1] - 31:7
**potentially** [2] - 11:1, 28:1
**practice** [1] - 13:16
**precedent** [3] - 21:14, 22:5, 29:6
**preclude** [1] - 26:3
**preempt** [1] - 26:1
**preempted** [1] - 25:10
**preemption** [1] - 25:1
**prejudice** [2] - 9:23, 19:19
**pressure** [2] - 22:23, 23:19
**presuppose** [1] - 10:19
**pretty** [2] - 12:14, 15:24
**price** [1] - 20:25
**primary** [1] - 25:24
**PRINCETON** [1] - 2:6
**prioritized** [1] - 15:7
**PRISEL** [1] - 7:1

**PRISELAC** [1] - 1:18
**problem** [3] - 4:12, 18:20, 19:6
**proceed** [1] - 28:10
**proceeding** [1] - 20:23
**proceedings** [2] - 24:5, 36:2
**Proceedings** [1] - 2:24
**proceeds** [1] - 18:10
**process** [8] - 15:20, 15:22, 16:18, 17:9, 28:4, 32:9, 32:20, 34:21
**produced** [1] - 2:25
**producing** [1] - 6:12
**product** [9] - 21:17, 21:18, 21:20, 22:1, 22:3, 22:4, 23:4, 27:12
**Product** [1] - 27:8
**products** [5] - 26:21, 26:24, 27:10, 27:18, 27:20
**Products** [1] - 27:3
**progress** [1] - 4:24
**prohibited** [1] - 9:8
**proposal** [11] - 10:5, 10:11, 15:4, 18:11, 18:12, 24:5, 28:10, 28:14, 31:12, 32:6, 34:17
**proposed** [3] - 31:10, 32:5, 32:9
**protect** [3] - 14:14, 18:3, 18:19
**protocol** [1] - 9:12
**provide** [1] - 16:23
**provided** [2] - 4:25, 34:18
**provides** [1] - 14:1
**PSG** [1] - 11:10
**pulled** [1] - 29:16
**purchase** [1] - 21:22
**purchased** [1] - 22:10
**purpose** [1] - 24:1
**purposes** [1] - 20:8
**push** [1] - 33:19
**put** [3] - 11:14, 15:13, 17:2

**Q**

**query** [1] - 15:6
**questions** [2] - 6:5, 19:9
**quite** [1] - 15:17

**R**

**raise** [3] - 19:9, 19:21, 20:10
**raised** [4] - 19:4, 30:13, 32:11, 32:16
**raising** [3] - 8:23, 9:24, 19:19
**RASPANTI** [1] - 2:8
**re** [2] - 7:18, 14:22
**RE** [1] - 1:4
**re-mix** [1] - 14:22
**re-surge** [1] - 7:18
**read** [3] - 8:7, 8:21, 19:25
**ready** [4] - 11:4, 11:12, 11:14, 11:17
**real** [1] - 21:23
**really** [16] - 4:19, 5:4, 8:8, 12:13, 13:4, 15:7, 15:15, 15:17, 15:25, 16:18, 17:5, 21:8, 21:9, 29:1, 29:11, 30:13
**reason** [1] - 16:2
**reasonable** [2] - 14:8, 34:20
**reasons** [2] - 15:8, 16:2
**recalled** [1] - 25:5
**received** [1] - 21:15
**recently** [1] - 7:18
**reckoning** [1] - 30:25
**recognize** [2] - 26:21, 26:23
**record** [1] - 36:2
**recorded** [1] - 2:24
**redress** [1] - 21:11
**reduced** [1] - 5:13
**reference** [1] - 24:14
**referring** [1] - 30:11
**refund** [1] - 23:21
**refunded** [2] - 21:1, 21:13
**region** [1] - 8:9
**reign** [1] - 30:23
**related** [1] - 7:11
**relevant** [2] - 29:7, 29:20
**rely** [1] - 9:15
**remaining** [1] - 19:1
**remarkable** [1] - 9:11
**remember** [3] - 9:7, 9:17, 19:15
**remind** [1] - 9:1
**remote** [1] - 11:10
**render** [1] - 23:1
**replicating** [1] - 28:16

**replies** [1] - 32:7
**report** [1] - 34:21
**Reporter** [2] - 2:22, 36:4
**Reporter/ Transcriber** [1] - 36:5
**represent** [2] - 5:7, 23:11
**representatives** [4] - 20:18, 20:19, 23:10, 23:11
**requests** [3] - 29:15, 29:18, 30:20
**reservation** [1] - 24:23
**resolution** [3] - 32:19, 34:5, 34:6
**resolutions** [2] - 13:18, 13:25
**resolve** [1] - 34:20
**resolved** [1] - 31:6
**resolves** [1] - 29:21
**respect** [4] - 4:25, 28:16, 29:9, 32:16
**response** [6] - 7:16, 10:20, 12:21, 17:18, 17:23, 29:14
**responses** [1] - 31:11
**responsive** [1] - 29:17
**rest** [2] - 8:4, 11:3
**result** [4] - 4:20, 20:21, 24:11, 24:16
**retailer** [1] - 26:11
**retailers** [1] - 15:20
**review** [3] - 11:11, 11:13, 11:15
**reviewing** [1] - 33:25
**ROAD** [2] - 1:22, 2:5
**road** [2] - 10:3, 31:3
**ROBERT** [1] - 1:11
**ROSELAND** [1] - 1:16
**ROSZEL** [1] - 2:5
**Rule** [15] - 18:6, 18:13, 18:18, 22:19, 24:1, 25:12, 28:11, 28:13, 28:25, 29:3, 29:9, 29:22, 30:7, 30:15, 31:8
**rule** [1] - 20:1
**rules** [1] - 13:18
**rulings** [1] - 23:14
**run** [2] - 6:14, 14:6
**running** [4] - 4:18, 5:2, 6:17, 6:18

**S**

**safe** [2] - 22:2, 35:12
**SARA** [1] - 2:1
**Sarah** [2] - 26:10, 27:6
**scattered** [1] - 5:20
**scheduled** [2] - 15:24, 33:20
**scheme** [1] - 9:11
**schemes** [1] - 27:11
**SCHNEIDER** [7] - 1:12, 4:3, 6:6, 8:13, 28:5, 33:1, 34:23
**Schneider** [7] - 9:10, 11:9, 18:1, 30:23, 32:18, 32:24, 32:25
**scope** [3] - 13:6, 24:2, 32:16
**Search** [7] - 33:7, 33:9, 33:11, 33:12, 33:15, 33:23, 34:7
**search** [2] - 32:17, 32:21
**searches** [1] - 6:14
**second** [1] - 20:10
**see** [6] - 7:23, 16:19, 16:24, 34:5, 34:9, 34:14
**seek** [1] - 21:11
**seeking** [1] - 19:3, 24:8
**seller** [2] - 26:3, 26:16
**send** [2] - 20:7, 32:7
**sense** [3] - 9:13, 15:5, 15:11
**sensitive** [1] - 11:6
**separate** [4] - 24:5, 28:15, 28:16, 29:24
**sequence** [1] - 11:5
**series** [1] - 11:24
**serving** [1] - 20:18
**set** [4] - 7:14, 16:22, 18:11, 18:12
**Seth** [1] - 4:15
**SETH** [1] - 1:18
**sets** [3] - 4:18, 4:22, 7:14
**setting** [1] - 9:11
**setup** [3] - 9:10, 11:10, 11:13
**several** [1] - 5:8
**severely** [2] - 5:9, 6:25
**Shanghai** [1] - 4:18
**share** [1] - 16:4
**shelf** [1] - 25:13
**shelves** [1] - 25:4

**shorter** [1] - 13:13
**shot** [3] - 16:5, 16:6, 16:5
**Show** [1] - 18:25
**sic** [1] - 10:24
**side** [5] - 5:8, 9:15, 9:17, 9:23, 11:8
**sides** [6] - 8:22, 9:1, 14:8, 30:12, 31:9, 32:4
**significant** [2] - 16:23
**similar** [8] - 6:8, 12:10, 22:7, 24:10, 24:11, 24:16, 24:20, 27:7
**simply** [2] - 20:25, 32:15
**site** [1] - 6:16
**situation** [3] - 6:22, 7:3, 19:1
**six** [1] - 23:16
**sixteen** [1] - 29:10
**Sixth** [1] - 9:2
**Slater** [5] - 10:12, 11:23, 12:23, 28:25, 35:7
**SLATER** [9] - 1:14, 1:15, 10:12, 10:14, 12:2, 13:3, 14:24, 35:1, 35:10
**Slater's** [1] - 17:23
**small** [1] - 7:24
**smaller** [1] - 17:11
**social** [1] - 8:2
**Solco** [1] - 16:12
**sold** [2] - 22:24, 27:19
**somewhat** [1] - 13:9
**soon** [1] - 31:4
**sort** [3] - 12:9, 13:2, 31:23
**source** [1] - 7:13
**SOUTH** [1] - 1:19
**South** [1] - 8:15
**southern** [1] - 8:9
**specific** [10] - 12:25, 13:1, 18:23, 20:4, 24:14, 26:7, 27:2, 28:24, 30:9
**specificity** [1] - 28:3
**spent** [1] - 33:8
**sprawling** [1] - 17:20
**staff** [3] - 5:20, 6:11, 6:16
**stage** [4] - 12:10, 14:3, 18:7, 19:22
**standing** [4] - 20:12, 21:5, 21:11, 22:7
**start** [11] - 4:9, 9:14,

10:6, 11:15, 14:19, 14:25, 15:5, 16:19, 16:20, 31:12
  starting [1] - 33:10
  starts [1] - 16:18
  State [9] - 5:8, 12:25, 13:19, 14:4, 14:21, 14:22, 20:6, 26:16
  statement [2] - 33:5, 34:14
  STATES [2] - 1:2, 1:12
  States [17] - 5:20, 5:21, 8:15, 13:8, 13:12, 13:22, 14:10, 16:12, 26:4, 26:8, 26:15, 26:18, 26:21, 26:23, 27:2, 27:8
  STATUS [1] - 1:6
  status [2] - 4:10, 7:24
  statute [1] - 26:15
  statutes [3] - 26:3, 26:5, 26:8
  Statutes [1] - 27:3
  statutory [1] - 27:11
  stay [6] - 8:1, 8:5, 15:2, 35:7, 35:12
  stenography [1] - 2:24
  step [1] - 30:12
  story [1] - 21:23
  STREET [1] - 1:19
  Streets [1] - 1:9
  structure [2] - 11:10, 15:14
  structured [2] - 12:6, 15:6
  struggle [1] - 17:22
  stuff [3] - 15:18, 19:10, 21:23
  sub [2] - 14:17, 14:23
  Sub [1] - 30:16
  sub-classes [1] - 14:23
  Sub-Classes [1] - 30:16
  subject [1] - 6:22
  submissions [1] - 8:22
  submit [1] - 32:5
  submitted [2] - 31:16, 33:6
  substantively [1] - 14:5
  subsume [1] - 27:11
  subsumed [1] - 27:3
  suffer [3] - 20:11, 20:14, 20:24

  suffered [1] - 21:16
  sufficient [3] - 21:4, 21:7, 22:5
  suggest [2] - 32:2, 33:2
  suggesting [1] - 29:16
  suggestion [1] - 33:16
  suit [1] - 24:17
  SUITE [3] - 1:15, 1:22, 2:2
  supply [1] - 26:19
  support [1] - 28:10
  supports [1] - 29:6
  suppose [1] - 28:6
  surge [1] - 7:18
  switched [1] - 22:12, 23:24
  synopsis [1] - 11:25, 12:14

  T

  table [1] - 31:10
  targeting [1] - 20:15
  teams [1] - 11:14
  telephone [1] - 4:1
  Tennessee [1] - 27:9
  tens [1] - 33:25
  terabytes [1] - 29:17
  term [1] - 13:12
  Term [2] - 33:11, 34:7
  Term" [1] - 33:7
  terms [5] - 11:11, 14:25, 15:13, 32:17, 32:21
  Terms [3] - 33:9, 33:12, 33:23
  Terms" [1] - 33:15
  testify [1] - 31:3
  testing [1] - 28:3
  Teva [2] - 7:9, 10:8
  TEVA [1] - 1:23
  THE [45] - 1:2, 1:11, 1:16, 4:2, 4:4, 5:4, 5:25, 7:7, 7:15, 7:17, 8:16, 8:19, 10:13, 11:22, 12:16, 12:22, 14:12, 17:15, 17:19, 18:18, 21:2, 21:4, 21:7, 21:19, 22:6, 22:17, 23:2, 24:8, 24:14, 24:22, 25:11, 25:23, 26:9, 26:13, 26:20, 27:4, 27:13, 28:8, 30:1, 30:3, 32:2, 32:23, 34:24, 35:4, 35:12

  therefore [1] - 18:7
  they've [1] - 30:13
  thinking [4] - 10:1, 10:18, 12:8, 12:13
  Third [3] - 9:4, 21:15, 22:5
  THORNBERG [1] - 2:1
  thousands [1] - 33:25
  three [1] - 11:24
  throughout [2] - 15:12, 25:17
  today [5] - 4:8, 8:19, 12:18, 23:17, 34:25
  today's [1] - 33:2
  together [1] - 11:11
  took [3] - 4:1, 23:18, 23:20
  top [1] - 27:9
  Torrent [3] - 6:21, 7:2, 10:8
  towards [2] - 8:6, 30:25
  town [2] - 8:7, 8:14
  track [2] - 10:5, 13:10, 15:18
  tracks [3] - 24:7, 28:15, 29:24
  transcript [2] - 2:24, 36:1
  transcription [1] - 2:25
  transfer [1] - 20:2
  trial [3] - 13:15, 19:23, 28:21
  trials [1] - 9:17
  tried [3] - 12:2, 29:8, 29:21
  trigger [1] - 20:6
  Trischler [3] - 5:7, 32:15, 34:11
  TRISCHLER [4] - 2:8, 5:6, 32:14, 34:11
  TRRAURIG [1] - 1:21
  true [2] - 21:10, 22:17
  try [5] - 9:18, 10:2, 12:4, 18:3, 23:21
  trying [4] - 7:3, 10:1, 12:9, 34:19
  tuned [2] - 8:1, 8:6
  turn [4] - 17:17, 19:7, 24:25, 32:23
  two [4] - 11:9, 16:6, 19:7, 23:13

  U

  U.S [1] - 1:8
  ultimately [3] - 29:7, 29:21, 30:17
  umbrella [1] - 26:15
  under [7] - 18:6, 20:23, 21:14, 22:5, 24:8, 25:9, 25:12
  underscore [1] - 29:2
  unfairness [1] - 18:16
  United [3] - 5:19, 5:21, 16:12
  UNITED [2] - 1:2, 1:12
  unless [1] - 14:18
  unusual [1] - 9:4
  up [9] - 4:18, 8:10, 9:11, 17:25, 19:24, 24:4, 31:5, 34:13
  update [1] - 4:16

  V

  VALSARTAN [1] - 1:4
  Valsartan [16] - 20:11, 20:22, 20:25, 22:11, 22:22, 22:24, 23:17, 23:18, 23:20, 24:21, 25:1, 25:3, 25:6, 27:14, 27:23, 28:1
  value [1] - 25:7
  variation [1] - 26:18
  vary [1] - 26:16
  vast [1] - 6:22
  venue [1] - 9:25
  via [1] - 4:1
  view [1] - 11:4
  vis [1] - 18:11
  vis-a-vis [1] - 18:11

  W

  waive [1] - 6:18
  waives [2] - 4:25, 7:6
  waiving [2] - 19:4, 19:5
  WALLACK [1] - 2:4
  wants [6] - 10:10, 11:5, 11:6, 11:20, 13:4, 34:2
  warrant [1] - 27:14
  warranted [1] - 27:23
  warrantee [1] - 26:23

  warrants [1] - 27:18
  Warranty [1] - 26:21
  wasting [1] - 33:24
  webinars [1] - 11:13
  week [1] - 32:4
  weeks [1] - 11:9
  weigh [1] - 19:10
  welcome [1] - 7:22
  whereas [2] - 13:11, 17:11
  wholesaler/distributor [1] - 16:12
  wholesalers [1] - 15:20
  wide [1] - 13:6
  wondering [1] - 12:17
  words [1] - 22:18
  works [1] - 18:13
  world [3] - 4:11, 12:8, 24:15
  worried [1] - 18:7
  worry [3] - 10:25, 15:3, 16:8
  worth [2] - 22:4, 22:5
  worthless [3] - 25:2, 25:7, 25:10
  Wright [1] - 6:9
  WRIGHT [2] - 2:5, 6:9
  written [1] - 30:5
  wrote [1] - 12:7

  Y

  years [1] - 23:16
  York [2] - 8:8, 8:10