**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

CIVIL ACTION NUMBER:

1:19-md-02875-RBK-JS

ORAL ARGUMENT
(Via telephone)

Wednesday, May 13, 2020
Commencing at 4:00 p.m.

B E F O R E:          THE HONORABLE JOEL SCHNEIDER,
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

MAZIE SLATER KATZ & FREEMAN, LLC
BY:  ADAM M. SLATER, ESQUIRE
103 Eisenhower Parkway
Roseland, New Jersey 07068
For the Plaintiff

LEVIN PAPANTONIO
BY:  DANIEL A. NIGH, ESQUIRE
316 S. Baylen, Suite 600
Pennsacola, Florida 32502
For the Plaintiff

GOLOMB & HONIK PC
BY:  RUBEN HONIK, ESQUIRE
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
For the Plaintiff

Karen Friedlander, Official Court Reporter
friedlanderreporter@gmail.com
(856) 756-0160

Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

1  **A P P E A R A N C E S: - CONTINUED**

2      KANNER & WHITELEY LLC
       BY:  CONLEE S. WHITELEY, ESQUIRE
3      701 Camp Street
       New Orleans, Louisiana 70130
4      For the Plaintiff

5      FARR LAW FIRM
       BY:  GEORGE T. WILLIAMSON, ESQUIRE
6      99 Nesbit Street
       Punta Gorda, Florida 33950
7      For the Plaintiff

8      KIRTLAND & PACKARD LLP
       BY:  BEHRAM PAREKH, ESQUIRE
9      1638 South Pacific Coast Highway
       Redondo Beach, California 90277
10     For the Plaintiff

11     GOLDENBERG LAW PLLC
       BY:  MARLENE J. GOLDENBERG, ESQUIRE
12     800 Lasalle Avenue
       Suite 2150
13     Minneapolis, Minnesota 55402
       For the Plaintiff
14
       DUANE MORRIS LLP
15     BY:  SETH A. GOLDBERG, ESQUIRE
            ALEXANDRA WALEKO, ESQUIRE
16     30 S. 17th Street
       Philadelphia, Pennsylvania 19103
17     For the Defendant ZHP and the Joint Defense Group

18     PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
       BY:  CLEM C. TRISCHLER, ESQUIRE
19     One Oxford Centre, 38th Floor
       Pittsburgh, Pennsylvania 15219
20     For the Defendant Mylan and the Joint Defense Group

21     GREENBERG TRAURIG LLP
       BY:  BRIAN H. RUBENSTEIN, ESQUIRE
22     3333 Piedmont Road, NE, Suite 2500
       Atlanta, Georgia 30305
23     For the Defendants, Teva Pharmaceutical Industries Ltd.,
       Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
24     Pharma, Inc.

25

1    **A P P E A R A N C E S: - CONTINUED**

2         BARNES & THORNBURG LLP
          BY:  SARAH E. JOHNSTON, ESQUIRE
3         2029 Century Park East, Suite 300
          Los Angeles, CA  90067-2904
4         For the Defendant, CVS Health Co.

5         ULMER & BERNE LLP
          BY:  JEFFREY DANIEL GEOPPINGER
6         600 Vine Street
          Suite 2800
7         Cincinnati, OH 45202
          For the Defendant, AmerisourceBergen

8

9    **ALSO PRESENT:**

10        Loretta Smith, Law Clerk

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Camden, New Jersey*

```
 1              (ALL PARTIES VIA TELEPHONE, May 13, 2020, 4:01 p.m.)

 2              THE COURT:  We're on the record in the matter of in

 3    re Valsartan, MDL Docket 19-2875.  Today is May 13, 2020.

 4    We're holding this status conference, discovery conference,

 5    what have you, via phone.

 6              Why don't we just have the entries of appearances.  A

 7    lot of people on the phone.  Probably just the people who are

 8    going to talk, to enter their appearance, and for the benefit

 9    of the court reporter, if anyone else is going to speak during

10    this conference call, just say your name first, then we'll

11    hear you.  Anyone who wants to be heard of course will be

12    heard.

13              Who's on the line for the plaintiff?

14              MR. SLATER:  Hello, Your Honor, Adam Slater.

15              MR. HONIK:  Good afternoon, Your Honor, Ruben Honik.

16              MR. WILLIAMSON:  Good afternoon, Your Honor, this is

17    George Williamson.

18              MS. WHITELEY:  Good afternoon, Your Honor, this is

19    Conlee Whitely.

20              MS. GOLDENBERG:  This is Marlene Goldenberg.

21              MR. PAREKH:  This is Behram Parekh.

22              THE COURT:  Okay, how about just defendants.

23              MR. GOLDBERG:  Your, Honor, for ZHP and the joint

24    defense group, this is Seth Goldberg.

25              MR. TRISCHLER:  Good afternoon, Your Honor, Clem
```

```
 1    Trischler for Mylan Pharmaceuticals and the defendants'

 2    executive pleading.

 3             THE COURT:  Okay.  Great.

 4             MS. JOHNSTON:  Good afternoon, Your Honor this is

 5    Sarah Johnston for the retailer defendants.

 6             MR. GEOPPINGER:  Good afternoon, Your Honor, this

 7    Jeff Geoppinger, G-E-O-P-P-I-N-G-E-R, on behalf of the

 8    wholesalers defendants and AmerisourceBergen.

 9             THE COURT:  Okay.  Just to repeat --

10             MR. RUBENSTEIN:  And -- sorry.  Brian Rubenstein from

11    Greenberg Traurig for Teva and the defendants.

12             THE COURT:  Okay.  Go ahead.

13             MS. SMITH:  Judge and Karen, I don't think you need

14    to record me.  This is Loretta Smith.

15             THE COURT:  Okay.  Thank you, Loretta.

16             Okay.  Counsel, I received your letters.  I

17    appreciate it.  We'll discuss all the issues that you listed

18    in the letter.  If you'll just indulge me, there's just a

19    couple of miscellaneous issues I just want to get out of the

20    way before we get into your agenda.  I wanted to start by

21    saying understandably the case has been delayed a little bit

22    in the progress of the case because of the crisis we're all

23    dealing with.  It's perfectly understandable.  We're still

24    dealing with an unusual situation, but we've all had enough

25    time, I think, hopefully, to get back in the matter a little
```

1    bit.  So the hope is we'll get the case back on track and pick

2    up the momentum that we had before the crisis hit.

3         I just wanted to confirm with the parties what the

4    Court's understanding is of what we have to look forward to in

5    the upcoming foreseeable future.  Just to summarize to make

6    sure we're all on the same page, my notes indicate that

7    May 15th, 2020, the defendants are going the produce the sales

8    and pricing documents.  If it hasn't already been done, the

9    plaintiffs were going to identify priorities in terms of

10   production.  Defendants' rolling production of their documents

11   is scheduled to start on July 15, 2020.  Thereafter, rolling

12   productions are going to be done on at least September 1st,

13   October 1 and November 1, with a target date to complete the

14   productions by November 29th, 2020.

15        So those are the deadlines that the Court noted.  Of

16   course we're going to discuss dealing with the ESI search

17   terms and the briefing schedule requests.  We'll deal with

18   that on this phone call.

19        We have our conference scheduled for the end of the

20   month.  I know when we spoke with Judge Kugler, he indicated

21   it might be an in-person conference.  Obviously, I'm going to

22   touch base with him and we'll see where we are, whether we're

23   going to convert that to a phone conference or not.  Just

24   depends on developments as we go forward in the next week or

25   two.

1        And the last thing was an issue that Loretta brought

2  to my attention today.  BrownGreer I think is keeping control

3  and a record of all the cases and the information in the

4  cases.  One thing they're not getting, I understand, is a

5  record of when cases are being dismissed.  So is there a way

6  that somehow they can be informed when a case is dismissed so

7  they can note it for their records?

8        MR. PAREKH:  Your Honor, this is Behram Parekh.  We

9  have asked Brown Grier to set up a system where the dismissing

10  firm is supposed to check a box any time they dismiss their

11  case.  We will make sure that firms that have dismissed their

12  cases know about that.  We also have the ability to do that

13  administratively as leadership and we will work to make sure

14  that all of those are reflected correctly, Your Honor.

15        THE COURT:  Fantastic.  So I think it's in all of our

16  interests that they be kept up to date on the status of all

17  the cases.

18        There were two more -- I'm looking at my notes.

19  There were two more miscellaneous issues before we get into

20  the agenda.  Have the parties hopefully, this is ZHP, worked

21  out the Mandarin translation issue with the plaintiffs?

22        MR. GOLDBERG:  I'm not sure.  We did agree back in

23  January on a set of Mandarin search terms.  We are in the

24  process of collecting the information and I believe Joe

25  Ferretti from my office is in touch with Behram.  I don't know

1  that there's any issue right now, but I suspect we'll be

2  discussing with plaintiffs any issues with respect to the

3  translated search terms.

4          MR. PAREKH:  Your Honor, this is Behram Parekh.  We

5  haven't encountered any issues so far.  I've been in touch

6  with Mr. Ferretti about a few sort of discreet issues

7  regarding paper documents and things.  We don't have anything

8  current.

9          MR. SLATER:  This is Adam Slater.  I thought maybe

10 you were asking about translation for depositions.  Is that

11 what you were getting at?

12         THE COURT:  No, no, we haven't got into depositions

13 yet, Mr. Slater.  This is just about the documents.

14         MR. SLATER:  Okay.

15         THE COURT:  I just want to -- if there's an issue,

16 counsel, I want to know about it, because going forward

17 hopefully we can avoid any delays that are caused by issues we

18 could work out now, instead of later.

19         MR. GOLDBERG:  Your Honor, I appreciate that.  We

20 are -- as I mentioned, we are in the midst -- we've been

21 collecting information from the various ZHP entities over the

22 last few weeks and are hopefully coming to the end of the

23 process of collecting and are trying to identify any issues as

24 we are doing that and raising them with Mr. Parekh, and we

25 intend to raise them as quickly as we can identify them with

```
 1   plaintiffs and then come to the Court with any that we can't
 2   resolve.
 3         THE COURT:  Okay.  It doesn't sound like there's any
 4   disputes to address now.  But like I said, if there are
 5   disputes, we'd like to address them so they don't cause any
 6   delay.
 7         The other miscellaneous issue and the last one is
 8   right before the crisis hit, there was an issue about the new
 9   foreign defendants who came in the case, Hetero and Aurobindo,
10   and giving them a deadline for them to produce their core
11   documents, and if they can't agree with plaintiffs on the
12   relevant time discovery, to set that relevant time period for
13   discovery like we did for the other parties.
14         Are those issues still left in the air?
15         MS. HUDSON:  Your Honor, can you hear me?
16         THE COURT:  Yes.
17         MS. HUDSON:  This is Lauren Hudson on behalf of
18   plaintiffs.  I've been in discussions with Hetero regarding
19   some of the issues with respect to the more substantive
20   discovery versus the core discovery.  I don't believe we have
21   -- we just received today production of additional core
22   discovery from Hetero and Aurobindo.  I'm not -- I would have
23   to -- I haven't had the opportunity to review that material
24   yet, but we are in those discussions at least with Hetero and
25   Aurobindo.
```

1    But as we said first to Hetero on a call weeks ago,

2  we were still waiting on certain expects of their core

3  discovery production, mainly the establishment inspection

4  reports in order to identify things like key custodians -- in

5  order to have more substantive negotiations regarding key

6  custodians for the Indian Aurobindo and Hetero entities, we

7  informed counsel that we really needed the production of

8  establishment inspection reports that had been required as

9  part of core discovery in order to have more fruitful

10  discussions.  I'm hopeful that perhaps some of the productions

11  we received today from Hetero and Aurobindo included these

12  documents so that we can sort of backtrack those discussions

13  of custodians and relevant time period.

14    THE COURT:  Counsel, here's what I -- I think we need

15  to set this up preliminarily.  One, I want to set a deadline

16  when their core discovery is going to be complete; and two, I

17  want to amend the existing order to set a relevant timeframe

18  for these two entities to produce their discovery.  I think I

19  want to use the same -- we're going to use the same formula

20  that we used for everyone else as to that, when they started

21  producing this product, or something to that effect, and a

22  year prior to that.

23    We don't need production of documents to get to the

24  bottom of that.  So I'm going to make a note by the next

25  conference, the end of the month, I want to include that in

1   the order.

2          So see if you can come to an understanding, an

3   agreement on the relevant timeframe for these two entities.

4   If not, I'll set it, see if you can come to an agreement on

5   when they're going to complete their core production

6   discovery, and if you don't come to an agreement, I'll just

7   set it.

8          MS. HUDSON:  Okay.  Thank you, Your Honor.

9          MR. GOLDBERG:  Your Honor this is Seth Goldberg.

10  Just on that point, I don't know if counsel for Hetero or

11  Aurobindo are on the line, and if not, then I'll certainly

12  relay the message to them so that they can get in touch with

13  plaintiffs and try to work these things out.

14         MR. WRIGHT:  Your Honor, this is Grant Wright.  I'm

15  counsel for Hetero Labs in India and my co-counsel Nakul Shah

16  is also on the line.

17         THE COURT:  Mr. Wright, I take it you understand the

18  Court's directions to plaintiffs' counsel.

19         MR. WRIGHT:  Yes, Your Honor, we did, and the recent

20  production that was made this week did include the EIR that

21  counsel said that she was looking for.  -

22         THE COURT:  All right.  So by the end of the month,

23  we are going to set an outside date for the completion of the

24  core discovery production, including the Court order, the

25  relevant timeframe when you have to produce discovery, okay?

```
 1          MR. WRIGHT:  Thank you, Your Honor.

 2          THE COURT:  Let's go to the agenda now.  First issue,

 3    ESI search terms.  I'm aware of the dispute between the

 4    parties, of course I've read your letters.  I have a couple of

 5    questions before we hear any argument on this.  I know Mylan

 6    has taken the lead on this discussion and talked about why it

 7    believes search terms need to be reduced.  I haven't seen

 8    anything specific to any other parties.  Is the only

 9    discussion that's ongoing is that having to do with Mylan?

10          MR. TRISCHLER:  Good afternoon, Your Honor.  This is

11    Clem Trischler.  I can take, with the Court's permission, I

12    can take an initial crack at responding to the Court's

13    question, and if any of my colleagues want to add anything,

14    I'd certainly invite them, but we have taken the lead on

15    behalf of the defendants and have submitted information that

16    we believe is supportive of the request to amend the search

17    terms.  Much of that information links to results that Mylan

18    has seen from searches that we have run.  The counterproposal

19    that we initially submitted to plaintiff back in March to

20    revise the search terms, Judge, has since been adopted by all

21    of the manufacturing defendants with, you know, some small

22    exceptions.  But for the most part, that original

23    counterproposal has been adopted by the group.  I believe that

24    other defendants have submitted data to the plaintiffs,

25    including Teva, for instance, that outlines the volume of the
```

1  search that the documents, I should say, they're being

2  captured by the search and the need for revisions.  And so I

3  think that it's fair to say that it's a collective response

4  that up until this point has mostly been supported by data

5  collected by Mylan, but our defendants are joining in the

6  request.

7        THE COURT:  How can the Court consider whether the

8  search terms for someone other than Mylan could be changed if

9  those parties haven't provided plaintiff with the information

10  that plaintiffs need to evaluate their contention of overbroad

11  and over burdensomeness?

12        MR. TRISCHLER:  I think, Your Honor, what we had said

13  at the meet and confer is to submit examples of what we've

14  seen from running the searches, where the searches can be

15  improved upon, where documents could be limited -- I think --

16  or excuse me, where unnecessary production can be limited.  I

17  think what Mylan has done is representative of what all the

18  defendants have seen and I think that if we get to the motion

19  stage, which I think, unfortunately, we are headed there,

20  because I don't see this being resolved, acts of motion

21  practice, I certainly recognize the Court's point and I think

22  it's a fair point that that motion would have to be supported

23  by evidence from all of the defendants if the Court was to

24  modify their search terms globally.  But I think we're

25  prepared -- we will be prepared to do that.

1          THE COURT:  I want to ask plaintiff, I note Mylan has

2     provided some data.  I know that plaintiffs contest that data.

3     I've read the 44- or 45-page letter, but have plaintiffs

4     received data from anyone besides Mylan to support a

5     contention of overbreadth or overinclusiveness?

6          MR. SLATER:  Hello, Your Honor, it's Adam Slater.

7     The only thing that was given was -- I think it might have

8     been the last letter to the Court, some numbers were given by

9     Teva on gross numbers of hits on documents as well as the

10    gross numbers documents of, I believe, gross numbers of

11    documents themselves.  I think that is the only thing we've

12    been provided, which is we've laid out in the letter is not

13    sufficient for us to make any decision.

14         And just so you know, Your Honor, also as Mr. Parekh

15    said, he's on, and we also have our ESI lead discovery expert

16    on, Mr. Jaffe, in case there are any technical questions we

17    wanted to be able to be as responsive as possible to Your

18    Honor today on this call.  So he's on with us.

19         THE COURT:  The other question I had, before we open

20    up the floor for any argument on this issue, I did a little

21    bit of investigation and background work before this call to

22    prepare for this call, a look at the record regarding the ESI

23    search terms.  We know about the Court's order in December,

24    attaching Exhibit H, which was the agreed-upon search terms.

25    I've read through the transcripts of the arguments.  All the

 1    objections were ruled upon.  There were relatively few of

 2    them.

 3             The procedure that the Court approved and blessed was

 4    in appendix -- or Exhibit H and in Mr. Slater's December 10,

 5    2019 letter, Docket No. 316 at Pages I think 8 to 10, I'm not

 6    a hundred percent positive if this is incorporated into the

 7    court-approved exhibit, but there was some sort of discussion

 8    in Mr. Slater's letter about some sort of protocol for testing

 9    and if too many documents showed up, they would work on this

10    and work on that.

11             My question was, is the party's present dispute under

12    the procedure that the parties agreed, or is this something

13    new that the defendants are raising, and why isn't the

14    protocol or procedure that the parties agreed upon being

15    followed?

16             MR. SLATER:  Your Honor, again it's Adam Slater.  If

17    I recall, and I don't have the document in front of me, but my

18    recollection is that we were asking to have testing done while

19    we were developing the search terms, and the defense did not

20    want to do that.  They said they were comfortable that the

21    search terms were reasonable and they did not want to do

22    testing and sampling as we negotiated, which is something

23    that's often done, as Your Honor is well aware.

24             As Your Honor knows, afterwards, after the terms were

25    established and we've laid it out in the letter, only Mylan

1  contacted us with a discreet couple of issues specific to only

2  Mylan.  No other defendant contacted us and then Mylan

3  ultimately came in with what they came with in with March, and

4  I'm not going to regurgitate the letter to Your Honor and I'll

5  wait for the specific questions, but the answer is no.

6        We never contemplated that the defense would take

7  this long, give us dribs and drabs of information and then

8  ultimately come to us with what we think is a very substantial

9  materially changed set of search terms and we've laid out in

10  the letter why it is so incredibly prejudicial and based on

11  inadequate methodology and then -- and do that in the face of

12  not having done most of the relevant and necessary sampling of

13  testing that would be needed, all of which would need to

14  happen, for example, after de-duplication and e-mail

15  threading, et cetera.

16        So, what we were contemplating never in a million

17  years did we contemplate the process the defense has proposed

18  to us, and just to foreshadow, not that there's any surprise,

19  Mr. Trischler is talking about robust or heavy motion

20  practice.  Our request is going to be for the Court to shut

21  this down completely so we can move on where the document

22  productions are supposed to be imminent and we now have a

23  concession that they hadn't even put the documents on their

24  vendor's platforms yet.  We feel like in light of where things

25  are that it's far too late to start such a briefing process,

 1    and that in light of what we've presented, we've established

 2    that the search terms should just be run.

 3            (Cross talk)

 4            THE COURT:  Hold on, Mr. Trischler.  You'll get every

 5    opportunity to be heard, but I don't think, Mr. Slater -- you

 6    probably don't have the letter in front of you, so you weren't

 7    referring to what the Court is referring to.

 8            In your December 10th, 2019 letter, I have it in

 9    front of me, Page 8, this is what it says, quote:  The parties

10    have devised and agreed upon the attached -- upon the detailed

11    method described below for further evaluating disputed search

12    terms while simultaneously reviewing and producing

13    noncustodial documents and documents resulting from undisputed

14    search terms, period, close quote.

15            Okay.  This is on December 10, talks about the

16    standalone terms, manufacturing medical conditions, economic

17    terms, entities, et cetera.  So there was a procedure that was

18    agreed upon that if there was a dispute as to certain terms or

19    certain issues, this is how the parties were going to work it

20    out.

21            My question was whether what defendants had raised

22    now is pursuant to what was agreed upon as set forth in this

23    December 10 letter, or as I suspect you're contesting -- or

24    intending, excuse me, it's just a new issue that you didn't

25    anticipate.

```
 1          MR. SLATER:  Right.  I'm going to hand this to

 2   Mr. Parekh in a second, but it's my understanding now that

 3   you've read that, and I appreciate that, Your Honor.  That is

 4   what I was saying a moment ago is, what happened in January is

 5   what is contemplated, where they came to us and said, you

 6   know, we have a problem with this and it's recited in our

 7   letter that we sent which was attached to the Court, and they

 8   had a problem with a few different things and we spoke to them

 9   about it and a few things we thought got worked out and then

10   one of them we never got a response on the other drug names

11   issues.

12          That's how we thought it would proceed, but again,

13   what you just read is, that was supposed to happen while they

14   were processing all the documents and producing documents to

15   us and as they saw an issue talking to us.  That is not what's

16   contemplated by that letter, and I'll defer to Mr. Parekh if

17   he wants to, you know, supplement that, because he's very

18   involved in this was well.

19          MR. PAREKH:  Sorry, Your Honor.

20          THE COURT:  I wanted to hear from you before we go to

21   Mr. Trischler.

22          MR. PAREKH:  Sure, Your Honor.  I was the person who

23   negotiated this with Mr. Ferretti from ZHP's counsel, and the

24   purpose of the procedure was to -- as defendants were

25   collecting and searching these documents and they ran across
```

 1  specific issues with search terms or with a specific search

 2  term and, you know, we had some discreet issues that we could

 3  work out, that that was the procedure to be followed and we

 4  identified, you know, the categories where we thought some of

 5  these things might come up and where we thought that we could

 6  work things out in that procedure.

 7         It was never contemplated by either party, and I

 8  apologize, I don't believe Mr. Ferretti is on the phone, but,

 9  I mean, the thought was never from our perspective at least

10  that we would have to do a complete and wholesale revision as

11  the the entire process as agreed to search terms, which is

12  what Mr. Trischler proposed back in March.  What we thought we

13  were going to do was exactly what they proposed in January,

14  which is they identified five or six discrete issues and we

15  would work those out and figure out how to deal with those.

16         But the problem that we're having is, you know,

17  they're essentially starting over from scratch at this point

18  and trying to renegotiate virtually everything, including how

19  the modifiers worked across the board.  And that is not what

20  that procedure was designed for.

21         THE COURT:  Okay.  Let's hear from Mr. Trischler.

22         MR. TRISCHLER:  Thank you, Your Honor.  This is Clem

23  Trischler.  And I think the Court began this discussion by

24  raising a very fair and meaningful question, and I'll address

25  it head on.  And essentially what you asked, Your Honor, is

1   the procedure that we formalized with the counterproposal in

2   March, what was contemplated by the Court's order, and the

3   answer is absolutely yes.

4        And Your Honor mentioned the December 23 order, it's

5   Docket No. 328, and the procedure for the search terms is

6   outlined on Pages 55, 56, and 57 of that order.  It talks

7   about a number of things, but on Page 55 of Docket 328, one of

8   the things it talks about are the standalone search terms.

9   And what the order itself states is, quote:  The following

10  terms have remained on the stand-alone terms list, but can be

11  tested and refined further if needed and as shown.

12       That's precisely what we did with a number of the

13  standalone terms in the counterproposals, precisely what is

14  contemplated in that order, Your Honor.

15       Another thing that we did, if you go to the next page

16  of that order, the parties had long discussions about search

17  terms related to establishment inspection reports, Form 483s.

18  How those terms were to be handled was specifically called out

19  in the December 23 order, and what the order states is that

20  again with respect to these documents when used against data

21  of custodians in management, these search terms will be run as

22  standalone terms but can be tested and refined further if

23  needed.

24       And again, we ran the searches as contemplated and

25  have demonstrated a need for it and have brought that first to

1    the attention of the plaintiffs and now to the Court.

2           And lastly, Judge, you know, this has been constantly

3    portrayed and I think it's a bit of a false narrative is that

4    when this order was entered in December, that it was a fait

5    accompli, that this is how it's all going to be perceived, and

6    that was never the case.

7           If we go again to Page, I believe it's 57 of Docket

8    328, there were 31 terms completely objected to by the

9    defendants, and those terms -- Your Honor mentioned that you

10   had a chance to read the 41-page exhibit that the plaintiffs

11   attached to their agenda that we only served yesterday.  Many

12   of those objections or terms are highlighted in yellow if Your

13   Honor went through and read that.  And what was agreed to and

14   what was ordered with respect to those terms was that the

15   defendants will run hit counts against the search string

16   agreed upon for each term highlighted in yellow, and if

17   there's a need to amend them, the parties would meet and

18   confer on how to do that.  That's again precisely what we've

19   done.

20          So I submit to the Court that what the defendants

21   have done here is follow to a T what was contemplated in the

22   December 23 order.

23          The plaintiffs' objection appears to be that it's not

24   happened as rapidly as they would like, but we raised issues

25   in January.  The issues we raised with them in January were,

1  you know, were handled mostly by attorneys in my office and

2  was, frankly, Judge, the low hanging fruit that we started

3  with.  We raised it again in February and we submitted the

4  counterproposal in March and we are following the protocol in

5  the process and it's spelled out in the order, and the

6  counterproposal that we submitted was covered precisely, the

7  terms and the manner in which the Court and the parties agreed

8  to back in December.

9        MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

10  Can I just weigh in on one point with respect to ZHP?

11        THE COURT:  Sure.

12        MR. GOLDBERG:  Which is simply that ZHP is in the

13  midst of applying the search terms to collect the information

14  and we fully intend to follow the process that was agreed upon

15  in December.  Due to the coronavirus, we did not have the

16  chance to test any terms in January, February, March, and

17  April, but we fully intend to do that now and to utilize this

18  process.  But I can say that given Mylan's results and given

19  that ZHP has almost twice as many custodians, we fully

20  anticipate that there's going to be a lot of false -- a lot of

21  false positives with the search terms and we need to have the

22  opportunity to work through this process.

23        THE COURT:  Well, let me say this.  We'll brief the

24  issue somehow, but the Court has already indicated that this

25  dispute will not, repeat "not" stay the deadlines that the

1    Court has imposed.  The current deadline for the defendants to

2    start their rolling production of responsive documents is

3    July 15th.  That deadline is cast in stone.  So whether or not

4    we revise the search terms, it does not stay or delay that

5    deadline.  There are certainly categories and terms and

6    connecters, what have you, that are not in dispute.  They have

7    to be applied, and the undisputed documents have to be

8    produced.

9            When the Court agreed to the deadlines that

10   defendants proposed, it obviously took into account the crisis

11   we're in, and even though it was pretty liberal, liberal

12   deadlines over plaintiffs' objections, we put them in place

13   and the Court had indicated that it's not going to stay those

14   deadlines or delay those deadlines any further, except if we

15   have some unforeseen crisis like this corona crisis we're

16   going through.  This dispute over search terms is not the sort

17   of unanticipated event that will work to delay the Court's

18   deadlines.

19           So, Mr.  Trischler, I want to put it in your hands.

20   You tell me.  If we go through a formal motion practice, the

21   earliest I'm going to decide the issue is the middle of June,

22   okay?  The July 15 deadline is not changing, so we can do it

23   on letter briefs, we'll get a schedule and I'll decide it when

24   we get together in two weeks.  You know, what do you prefer?

25           MR. TRISCHLER:  Well, Your Honor, I thank you for

1  giving me the option.  I would like, since this affects more

2  than just my client, I'd like some time to --

3      THE COURT:  We've got to decide it today.  We're

4  deciding it today.  I'm not delaying this.  If you don't want

5  to decide it, I'll decide it.  I mean, you're either going to

6  get an answer on the 27th or the 17th of June.  If I decide it

7  on the 17th of June, it gives you less than 30 days to make

8  the first fulsome rolling production.  If I decide it on the

9  27th, it gives your client 45 days to make that fulsome first

10 production.  What do you --

11     MR. TRISCHLER:  I am fine either way, Judge.  If the

12 there is another defendant that feels as strongly about it, I

13 would like someone to make a suggestion, but I'm fine with

14 whatever the Court wants to order.

15     THE COURT:  Okay.  Well, Mr. Goldberg, you want to

16 weigh in?

17     MR. GOLDBERG:  Yeah, I do want to weigh in on this

18 specific point that -- for ZHP, because ZHP is in a different

19 position than the defendants on this.  Here we have not had

20 the opportunity to do what Mr. Parekh says this was intended

21 to, which is to work with plaintiffs to know the list based on

22 the information we are getting as we are conducting the

23 searches.  And we have not, ZHP, due to the coronavirus, has

24 not been given the opportunity to use this agreed-upon method,

25 and it's almost like we are now being punished in a way

1    because of the coronavirus.

2            I don't know if the search term -- I'll give you an

3    example that I do know of.  One of the search terms is the

4    name Wang, because there is an FDA inspector named Wang, and

5    surely at ZHP we have dozens of Wangs that are coming up in

6    the searches.  But because we're only in the midst of this

7    now, we have not been able to go to plaintiffs with these

8    issues and I -- we joined with the defendants in the notion

9    that the search terms are overly broad and need to be revised.

10   But for ZHP, we need to have the opportunity to use the

11   process that the parties agreed upon and that the court

12   endorsed.

13           THE COURT:  Here is the Court's order, that by

14   May 27th defendants file one motion asking to change the

15   search terms.  I'm not dealing with generic issues.  Each

16   defendant is going to have to show good cause why they think

17   the search terms should be changed.  Plaintiff will respond on

18   June 10th and I'll decide the issue on June 17th, okay?

19   Plaintiffs want to reply on June 15, that's okay.  I'll decide

20   the issue on June 17, but the July 15 date is not changing,

21   counsel, so just keep that in mind.  We're going to start to

22   get these documents rolling in the case.  I gave the

23   defendants exactly what they asked for, July 15, and we'll

24   stick with it, okay?

25           MR. TRISCHLER:  Understood, Your Honor.  Thank you.

1    THE COURT:  I'm just making a note.  Okay.  Next

2    issue is defendants' fact sheets.  Are you still working on

3    that?  Is the only dispute whether the defendants are going to

4    have to provide Bates numbers for specific document requests?

5    MR. GOLDBERG:  Your Honor, right now, if you're

6    referring to the manufacturer defendant fact sheets --

7    THE COURT:  Yes, exactly.

8    MR. GOLDBERG:  Yeah.  The Court issued an order

9    setting the parameters for what the manufacturer defendant

10    fact sheets need to be.  We revised the defendants' fact

11    sheets according to the order, gave the plaintiffs the revised

12    set.  We just received back from them edits to our proposal

13    last night.  So, we're going to try to work with plaintiffs on

14    this and hopefully, you know, either be able to bring to Your

15    Honor any remaining disputes at the end of the month or have

16    an agreement.

17    THE COURT:  Okay, great.  We will finalize those on

18    the 27th.  Is that okay, Mr. Slater?

19    MR. SLATER:  Absolutely, Your Honor.

20    THE COURT:  Okay.  Prioritization of document ESI

21    discovery.  I think I saw a letter indicating that that was

22    done.  Am I right?

23    MR. SLATER:  We have sent a letter to the defense

24    after having a conference with them and speaking to them and

25    they have in their hands our requests.  We don't know what the

 1    defense response is to whether they intend to accommodate it,

 2    but what I guess, you know, our assumption is they will,

 3    unless they tell us to the contrary.

 4            THE COURT:  Okay.

 5            MR. GOLDBERG:  Your Honor, we received the letter and

 6    I believe it was on Monday or maybe it was Friday of last

 7    week, and we'll evaluate the letter and get back to plaintiffs

 8    on it.

 9            THE COURT:  Okay.  You'll let us know if there is any

10    objections for the 27th conference.

11            Next issue is the briefing schedule.  I've

12    communicated with Judge Kugler, counsel.  The dates that the

13    parties proposed are agreeable.  You caught Judge Kugler on a

14    good day.  He's going to give you more pages, but not as many

15    as you asked.  I'm just looking for his e-mail.  Bear with me.

16    Bear with me one second, counsel.  Here it is.  As I

17    understand it, it's going to be three motions, each one

18    directed to one of the complaints.  Is that right?

19            MR. GOLDBERG:  No, Your Honor, that is not our

20    intention.  Our intention is to have three motions, one on

21    behalf of --

22            THE COURT:  Oh, I'm sorry.

23            MR. GOLDBERG:  Yeah, go ahead.

24            THE COURT:  One on behalf of each group, right?

25            MR. GOLDBERG:  Right.  It's going to be supply chain

 1    specific with probably the manufacturer defendant brief will

 2    address common issues that can be resolved across all of the

 3    levels of the supply chain, with the wholesaler brief dealing

 4    with wholesaler unique issues, and the retailer brief dealing

 5    with retailer-specific issues.

 6            THE COURT:  Right.  So he said 80 pages for the

 7    opening brief, 80 pages for the reply brief -- for the

 8    response brief and 40 pages for the reply brief.  And I gotta

 9    tell you, that's the most pages I've ever seen Judge Kugler

10    grant.  So you got a him in a good mood.

11            MR. GOLDBERG:  I trust, Your Honor, we can use those

12    pages as we see fit across the three briefs.

13            THE COURT:  You mean make one brief a hundred, and

14    one --

15            MR. GOLDBERG:  No.  So he's thinking 80 pages for

16    each of the briefs.

17            THE COURT:  Yeah.  What were you thinking?

18            MR. GOLDBERG:  Well, we were thinking of having --

19    when we made our proposal for 120 pages, we were thinking

20    120 pages total for the three briefs.  One might be 60, one

21    might be 40, the other might be --

22            THE COURT:  Oh, okay.  Oh, I see.  No, that would be

23    great.  80 total for the three would be great.

24            MR. GOLDBERG:  Well, I think, you know, we would

25    prefer to have 120 total or a hundred total.  I think it would

 1    be very hard for us to do all three with 80 total.

 2         THE COURT:  Counsel, you'll have to take it up with

 3    Judge Kugler because that's what he directed.

 4         MS. SMITH:  Judge Schneider, this is Loretta.  I was

 5    listening to some confusion and I will take it to Judge

 6    Kugler.

 7         MR. HONIK:  Your Honor, this is Ruben Honik, if I

 8    may.  I was the one principally meeting and conferring with

 9    Mr. Goldberg about these matters, and candidly, we -- I had

10    proposed what I thought the Court had initially said, which is

11    to say one brief for each of the three master complaints which

12    would be the conventional way in which Rule 12 motions are

13    brought.  I'm just wondering, maybe aloud at this point,

14    whether there may be some unnecessary confusion if its really

15    done across the type of defendant in question.

16         So, for example, are we to expect that the

17    manufacturers are going to file a single omnibus Rule 12

18    motion that cuts across medical monitoring, economic class,

19    and bodily injury issues?  And I'm wondering if there

20    shouldn't be a directive to -- for the defendants to confine

21    themselves to the 80 pages proposed by Judge Kugler and to

22    have an omnibus motion for each of the complaints.

23         So, for example, as to the economic class complaints,

24    which comprise the consumer economic claims and the TPP

25    claims, that each of the defendants in an omnibus single

 1  motion bring whatever Rule 12 issue they want to bring and

 2  similarly for each of the other complaints.  That's what we

 3  had proposed to Mr. Goldberg, and initially, they had proposed

 4  to us a total of a hundred pages and in the most recent

 5  conferral they bumped it up to 120 pages.

 6          But I think both issues are relevant, that is, the

 7  number of total pages and how the issues are divided so that

 8  they can be digested in the most sensible way by the parties,

 9  but certainly by the Court as well.

10          And we just think it makes sense to do it by each of

11  the master complaints.

12          THE COURT:  So, Mr. Goldberg, is what you envision --

13  take the economic complaint.  Do you envision that there would

14  be three motions to dismiss -- that portions of three motions

15  to dismiss, three separate -- okay, trying to get this

16  straight.

17          Each of the three groups would file a motion to

18  dismiss portions of the economic complaint directed to them.

19          MR. GOLDBERG:  Our proposal would be, it would be

20  three briefs.  One would be filed by the manufacturer

21  defendants.  That brief would discuss the factual allegations

22  and the claims that are pertinent to all of the manufacturer

23  defendants and that are also pertinent to the wholesalers and

24  the retailers.

25          Then the wholesalers would file a motion that would

1    be limited to those claims and factual allegations that are

2    truly unique to the wholesalers, such as the Drug Supply Act,

3    or innocent seller statutes.  Similarly, the retailers would

4    have a brief that would be focused on retailer-specific issues

5    so that the Court when it's revealing the motions to look at

6    the manufacturer defendants' brief and say, okay, here's the

7    bulk of the issues, here are the common issues, the common

8    allegations across our supply chain and I can rule on these

9    issues and I know I'm covering the manufacturer defendants,

10   and to the extent those issues are common, the wholesalers and

11   retailers, I can decide that.

12           But if the Court wants to focus only on the

13   wholesaler issues, it can look at the wholesaler brief, and if

14   the Court wants to focus on the retailer issues, it can look

15   at the retailer brief.

16           And the reason we propose that is because the parties

17   of the different levels of the supply chain have different

18   duties and obligations and different defenses based on those

19   duties and obligations.  And it doesn't -- it doesn't make

20   sense to have a motion to dismiss that deals with all of those

21   duties and obligations as to the personal injury claim and

22   then repeat that in large part as to the economic loss claims

23   and then repeat that in large part as to the medical

24   monitoring.  And I say "repeat that," because by and large,

25   the three master complaints, they assert many of the same

1    claims, and of course they share many of the same factual

2    allegations.

3          But what the Court's dealing on this motion to

4    dismiss is evaluating independently the different duties and

5    obligations and different defendants that each level of the

6    supply chain has.  And we think that the most efficient way

7    for the Court to do that is to look at them at each level on a

8    stand-alone basis, and that's exactly what the Court's been

9    doing through this entire litigation, acknowledging different

10   levels of the supply chain have different duties and

11   obligations.

12         THE COURT:  Okay.  So might it be the case, say, for

13   example, it doesn't matter which group, let's take the

14   retailers, that their motion might be divided into three

15   sections?  First section would be directed to the relevant

16   portions of the personal injury complaint that they want to

17   dismiss, then the medical monitoring, and then the economic?

18   So there might be three sections in each of the three motions

19   to dismiss?

20         MR. HONIK:  Possibly, or another way to do it would

21   be in the manufacturing defendant brief, for us to be saying

22   something like, okay, now, motion to dismiss breach of express

23   warranty, this claim is assertive in all three complaints and

24   so the Court can decide it, as you decide it one time as to

25   all three complaints.

1        But what we would do is streamline each brief to make

2   sure that the Court isn't doing duplicative work.

3        THE COURT:  Mr. Honik, let me stop you there.  I know

4   it's a little unusual, but I think in the context of this case

5   what Mr. Goldberg is proposing makes sense.  Rather than

6   dealing with the separate complaint, deal with the claims of

7   each of the three groups, because I think he's correct that at

8   least in handling the case, and I think that would make it

9   easier for Judge Kugler to decide, you can settle the

10  manufacturing issues at one time, all the retailer issues at

11  one time, all the wholesaler issues at one time and I think

12  that might be a little bit easier than dealing with all the

13  complaints.

14        MR. GOLDBERG:  Judge, this is Seth Goldberg.  Sorry.

15        (Cross talk)

16        THE COURT:  Getting back to the pages, Mr. Goldberg,

17  let me confer with Judge Kugler.  But can we just understand

18  again what you're proposing?  Let's use -- it doesn't -- use

19  80 pages.  Suppose Judge Kugler says 80 pages.  You're saying

20  that all of the motions or briefs should add up to 80 pages,

21  not each one can be 80 pages, is what what you're saying?

22        MR. GOLDBERG:  Correct, correct.  And what we had

23  proposed was that in given the number of defendants' number of

24  issues, what we had proposed was a total of 120 pages for

25  these three briefs so that they would all add up, all

 1   together, the first round of briefing would be 120 pages and

 2   plaintiffs would have --

 3          THE COURT:  Here's my question, Mr. Goldberg.  You

 4   would know this better than me, because luckily, I don't file

 5   motions anymore, but doesn't the local rules give each party

 6   40 or 45 pages?  So why do you need leave to serve more pages?

 7          MR. GOLDBERG:  Well, right.  I mean, the briefing one

 8   that is 40 pages when here, each party -- there are 50 parties

 9   so you would presumably have a lot more pages, each party

10   would be entitled to 40.

11          THE COURT:  No, no, no.

12          MR. GOLDBERG:  So what we're doing at -- right.  So

13   what we're doing at 120 pages is saying, you know, each level

14   of the supply chain would potentially have 40 pages.  We're

15   just trying to find a total number of pages that would allow

16   us the opportunity to make all of the arguments for all of the

17   defendants as to all of the claims.

18          THE COURT:  I'm confused because --

19          MS. SMITH:  Judge Schneider, I'm sorry to interrupt

20   you.  May I ask Mr. Goldberg a question?

21          Mr. Goldberg, this is Loretta Smith.  Hi.  If the

22   total number of pages of your omnibus motion for all three

23   kinds of defendants, if there's 120 pages and your proposal is

24   that you would be able to determine what number of pages you

25   could use to write up, for example, the manufacturers' MTD.

1    And a concern might be, I can anticipate Judge Kugler's

2    question, is that, you know, might it be that you could

3    consider a limit, or let's say the manufacturers' MTD, Mr.

4    Goldberg, because I think, you know, an 80-page MTD brief for

5    the manufacturers is something that would be a question for

6    Judge Kugler.

7            MR. GOLDBERG:  Sure.  I'd like -- we want -- we are

8    flexible in terms of, you know, is it 80, 100, 120.  We just

9    need the total number of pages to be able to make all of these

10   different arguments on behalf of all of the different

11   defendants.  And if it were, you know, 50 pages for the

12   manufacturers and 30 and 30 so that you have a total of 110,

13   that would be fine.

14           If the Court wants to limit the entire set to

15   80 pages and says, okay, defendants, you have 80 pages for

16   these -- total for these three briefs, then, you know, we'll

17   live with that.

18           It will be hard because there are so many different

19   arguments that need to be raised.  But all we're at -- we will

20   live with -- if that makes sense for Judge Kugler, then we can

21   live with that.  If the Court wants to say, you know, three

22   briefs at 40 pages each, so that each level of the supply

23   chain is getting the amount allowable under the rules.  But

24   what we're trying to do is by -- we think the manufacturer

25   brief needs to be longer because it's going to take on the

1    common issues.

2          So, you know, we would say 50, 30 and 30, and that

3    way, you know -- and maybe that's the outer limit for the

4    manufacturer defendant brief and each of the other two briefs

5    get to be 30 pages.

6          MS. SMITH:  Thank you.

7          THE COURT:  Okay.  Loretta, would you just touch base

8    with Judge Kugler and get back to me?

9          MS. SMITH:  I will.

10          THE COURT:  Okay.  We'll get back to you, counsel, on

11    how many pages.  Thanks for verifying that.

12          Next issue on the agenda was the plaintiffs' fact

13    sheet deficiencies.  I suppose we're going to hear more about

14    that on the 27th.

15          MS. GOLDENBERG:  Yes, Your Honor.  This is Marlene

16    Goldenberg for the plaintiffs.  We had a productive meet and

17    confer earlier this week where I think we were able to come to

18    an agreement on most issues.  We have been told by the

19    defendants that we can expect to see a revised list of alleged

20    deficiencies in advance of the next conference, and if we

21    can't work through those, then they'll submit a list of cases

22    to use for a show cause order and then let you know at that

23    time if we have any issues with it.

24          THE COURT:  No problem.

25          Anything with the short form complaint?

1        Ms. Rebecca:  Yes, Your Honor, this is Alex Ruecka

2   from Duane Morris on behalf of ZHP and the defendants.  There

3   is no current dispute about the short form complaints.  We

4   just raise that issue in our agenda to inform the Court that

5   we had agreed to extend the deadline for fixing the short form

6   complaints from March 23rd to May 20th so that we can review

7   any that remaining deficient at the end of this month.

8        THE COURT:  Perfect.

9        Last issue on the agenda, was the downstream

10  briefing.  I understand the situation we're in, and the

11  briefing schedule extension is approved June 16th for the next

12  brief.  Response brief on June 22nd.  So barring unforeseen

13  circumstances, we'll argue those the end of June and hopefully

14  get those decided at the same time.

15       Okay.  That takes us through the agenda.  Are there

16  any other issues that anyone would like to raise or discuss?

17       MR. GOLDBERG:  Nothing from defendants, Your Honor.

18       MR. SLATER:  Nothing from the plaintiffs, I don't

19  think, Your Honor.

20       MS. WHITELEY:  Your Honor, this is Conlee Whitely.  I

21  do have one thing that we wanted to add to the agenda, if the

22  you can indulge me.

23       THE COURT:  Yes.

24       MS. WHITELEY:  We just wanted to let the Court know

25  that we're going to be filing in the next couple of days a

```
 1   motion proposing a leadership for the other sartan cases, and
 2   we just wanted to warn you that was coming.  It took some time
 3   to figure out who wanted to be involved and to what extent,
 4   but we have something prepared to send your way shortly.
 5            THE COURT:  Then perfect.  Thank you.  I neglected to
 6   raise that, but I have it in my notes, so much appreciated.
 7            Okay.  So we'll get back to you on the number of
 8   pages on the briefing and we'll enter an order confirming the
 9   schedules, the rulings, and as soon as we get confirmation
10   about whether the end of the month is going to be in person or
11   by phone, we'll get back to you.
12            Thank you, very much, everybody.  We're adjourned.
13            (5:07 p.m.)
14            - - - - - - - - - - - - - - - - -
15
16            I certify that the foregoing is a correct transcript
17   from the record of proceedings in the above-entitled matter.
18
19   /S/ Karen Friedlander, CRR, RMR
     Court Reporter/Transcriber
20
21   May 15, 2020
     Datett
22
23
24
25
```

*United States District Court*
*Camden, New Jersey*

**/**

*/S* [1] - 38:19

**0**

*07068* [1] - 1:12

**1**

*1* [2] - 6:13
*10* [4] - 15:4, 15:5, 17:15, 17:23
*100* [1] - 35:8
*103* [1] - 1:11
*10th* [2] - 17:8, 25:18
*110* [1] - 35:12
*12* [3] - 29:12, 29:17, 30:1
*120* [9] - 28:19, 28:20, 28:25, 30:5, 33:24, 34:1, 34:13, 34:23, 35:8
*13* [3] - 1:6, 4:1, 4:3
*15* [6] - 6:11, 23:22, 25:19, 25:20, 25:23, 38:21
*15219* [1] - 2:19
*15th* [2] - 6:7, 23:3
*1638* [1] - 2:9
*16th* [1] - 37:11
*17* [1] - 25:20
*17th* [4] - 2:16, 24:6, 24:7, 25:18
*1835* [1] - 1:17
*19-2875* [1] - 4:3
*19103* [2] - 1:18, 2:16
*1:19-md-02875-RBK-JS* [1] - 1:4
*1st* [1] - 6:12

**2**

*2019* [2] - 15:5, 17:8
*2020* [7] - 1:6, 4:1, 4:3, 6:7, 6:11, 6:14, 38:21
*2029* [1] - 3:3
*20th* [1] - 37:6
*2150* [1] - 2:12
*22nd* [1] - 37:12
*23* [3] - 20:4, 20:19, 21:22
*23rd* [1] - 37:6
*2500* [1] - 2:22
*27th* [6] - 24:6, 24:9, 25:14, 26:18, 27:10, 36:14
*2800* [1] - 3:6
*2900* [1] - 1:17

**29th** [1] - 6:14

**3**

*30* [7] - 2:16, 24:7, 35:12, 36:2, 36:5
*300* [1] - 3:3
*30305* [1] - 2:22
*31* [1] - 21:8
*316* [2] - 1:14, 15:5
*32502* [1] - 1:15
*328* [3] - 20:5, 20:7, 21:8
*3333* [1] - 2:22
*33950* [1] - 2:6
*38th* [1] - 2:19

**4**

*40* [7] - 28:8, 28:21, 34:6, 34:8, 34:10, 34:14, 35:22
*41-page* [1] - 21:10
*44* [1] - 14:3
*45* [2] - 24:9, 34:6
*45-page* [1] - 14:3
*45202* [1] - 3:7
*483s* [1] - 20:17
*4:00* [1] - 1:7
*4:01* [1] - 4:1

**5**

*50* [3] - 34:8, 35:11, 36:2
*55* [2] - 20:6, 20:7
*55402* [1] - 2:13
*56* [1] - 20:6
*57* [2] - 20:6, 21:7
*5:07* [1] - 38:13

**6**

*60* [1] - 28:20
*600* [2] - 1:14, 3:6

**7**

*701* [1] - 2:3
*70130* [1] - 2:3
*756-0160* [1] - 1:20

**8**

*8* [2] - 15:5, 17:9
*80* [13] - 28:6, 28:7, 28:15, 28:23, 29:1, 29:21, 33:19, 33:20, 33:21, 35:8, 35:15
*80-page* [1] - 35:4
*800* [1] - 2:12

**856** [1] - 1:20

**9**

*90067-2904* [1] - 3:3
*90277* [1] - 2:9
*99* [1] - 2:6

**A**

*ability* [1] - 7:12
*able* [6] - 14:17, 25:7, 26:14, 34:24, 35:9, 36:17
*above-entitled* [1] - 38:17
*absolutely* [2] - 20:3, 26:19
*accommodate* [1] - 27:1
*accompli* [1] - 21:5
*according* [1] - 26:11
*account* [1] - 23:10
*acknowledging* [1] - 32:9
*Act* [1] - 31:2
*Actavis* [2] - 2:23
*ACTION* [1] - 1:3
*acts* [1] - 13:20
*Adam* [4] - 4:14, 8:9, 14:6, 15:16
*ADAM* [1] - 1:11
*add* [4] - 12:13, 33:20, 33:25, 37:21
*additional* [1] - 9:21
*address* [4] - 9:4, 9:5, 19:24, 28:2
*adjourned* [1] - 38:12
*administratively* [1] - 7:13
*adopted* [2] - 12:20, 12:23
*advance* [1] - 36:20
*affects* [1] - 24:1
*afternoon* [7] - 4:15, 4:16, 4:18, 4:25, 5:4, 5:6, 12:10
*afterwards* [1] - 15:24
*agenda* [9] - 5:20, 7:20, 12:2, 21:11, 36:12, 37:4, 37:9, 37:15, 37:21
*ago* [2] - 10:1, 18:4
*agree* [2] - 7:22, 9:11
*agreeable* [1] - 27:13
*agreed* [15] - 14:24, 15:12, 15:14, 17:10, 17:18, 17:22, 19:11, 21:13, 21:16, 22:7, 22:14, 23:9, 24:24,

25:11, 37:5
*agreed-upon* [2] - 14:24, 24:24
*agreement* [5] - 11:3, 11:4, 11:6, 26:16, 36:18
*ahead* [2] - 5:12, 27:23
*aided* [1] - 1:22
*air* [1] - 9:14
*Alex* [1] - 37:1
*ALEXANDRA* [1] - 2:15
*ALFANO* [1] - 2:18
*ALL* [1] - 4:1
*allegations* [4] - 30:21, 31:1, 31:8, 32:2
*alleged* [1] - 36:19
*allow* [1] - 34:15
*allowable* [1] - 35:23
*almost* [2] - 22:19, 24:25
*alone* [2] - 20:10, 32:8
*aloud* [1] - 29:13
*ALSO* [1] - 3:9
*amend* [3] - 10:17, 12:16, 21:17
*AmerisourceBergen* [2] - 3:7, 5:8
*amount* [1] - 35:23
*Angeles* [1] - 3:3
*answer* [3] - 16:5, 20:3, 24:6
*anticipate* [3] - 17:25, 22:20, 35:1
*apologize* [1] - 19:8
*appearance* [1] - 4:8
*appearances* [1] - 4:8
*appendix* [1] - 15:4
*applied* [1] - 23:7
*applying* [1] - 22:13
*appreciate* [3] - 5:17, 8:19, 18:3
*appreciated* [1] - 38:6
*approved* [3] - 15:3, 15:7, 37:11
*April* [1] - 22:17
*argue* [1] - 37:13
*ARGUMENT* [1] - 1:5
*argument* [2] - 12:5, 14:20
*arguments* [4] - 14:25, 34:16, 35:10, 35:19
*assert* [1] - 31:25
*assertive* [1] - 32:23
*assumption* [1] - 27:2
*Atlanta* [1] - 2:22
*attached* [3] - 17:10, 18:7, 21:11
*attaching* [1] - 14:24

*attention* [2] - 7:2, 21:1
*attorneys* [1] - 22:1
*Aurobindo* [6] - 9:9, 9:22, 9:25, 10:6, 10:11, 11:11
*Avenue* [1] - 2:12
*avoid* [1] - 8:17
*aware* [2] - 12:3, 15:23

**B**

*background* [1] - 14:21
*backtrack* [1] - 10:12
*BARNES* [1] - 3:2
*barring* [1] - 37:12
*base* [2] - 6:22, 36:7
*based* [3] - 16:10, 24:21, 31:18
*basis* [1] - 32:8
*Bates* [1] - 26:4
*Baylen* [1] - 1:14
*Beach* [1] - 2:9
*bear* [2] - 27:15, 27:16
*began* [1] - 19:23
*behalf* [7] - 5:7, 9:17, 12:15, 27:21, 27:24, 35:10, 37:2
*BEHRAM* [1] - 2:8
*Behram* [4] - 4:21, 7:8, 7:25, 8:4
*believes* [1] - 12:7
*below* [1] - 17:11
*benefit* [1] - 4:8
*BERNE* [1] - 3:5
*better* [1] - 34:4
*between* [1] - 12:3
*bit* [5] - 5:21, 6:1, 14:21, 21:3, 33:12
*blessed* [1] - 15:3
*board* [1] - 19:19
*bodily* [1] - 29:19
*BOSICK* [1] - 2:18
*bottom* [1] - 10:24
*box* [1] - 7:10
*breach* [1] - 32:22
*BRIAN* [1] - 2:21
*Brian* [1] - 5:10
*brief* [22] - 22:23, 28:1, 28:3, 28:4, 28:7, 28:8, 28:13, 29:11, 30:21, 31:4, 31:6, 31:13, 31:15, 32:21, 33:1, 35:4, 35:25, 36:4, 37:12
*briefing* [8] - 6:17, 16:25, 27:11, 34:1, 34:7, 37:10, 37:11, 38:8

**briefs** [10] - 23:23, 28:12, 28:16, 28:20, 30:20, 33:20, 33:25, 35:16, 35:22, 36:4
**bring** [3] - 26:14, 30:1
**broad** [1] - 25:9
**brought** [3] - 7:1, 20:25, 29:13
**Brown** [1] - 7:9
**BrownGreer** [1] - 7:2
**bulk** [1] - 31:7
**bumped** [1] - 30:5
**burdensomeness** [1] - 13:11
**BY** [12] - 1:11, 1:14, 1:17, 2:2, 2:5, 2:8, 2:11, 2:15, 2:18, 2:21, 3:2, 3:5

## C

**CA** [1] - 3:3
**California** [1] - 2:9
**Camp** [1] - 2:3
**candidly** [1] - 29:9
**captured** [1] - 13:2
**case** [12] - 5:21, 5:22, 6:1, 7:6, 7:11, 9:9, 14:16, 21:6, 25:22, 32:12, 33:4, 33:8
**cases** [7] - 7:3, 7:4, 7:5, 7:12, 7:17, 36:21, 38:1
**cast** [1] - 23:3
**categories** [2] - 19:4, 23:5
**caught** [1] - 27:13
**caused** [1] - 8:17
**Centre** [1] - 2:19
**Century** [1] - 3:3
**certain** [3] - 10:2, 17:18, 17:19
**certainly** [5] - 11:11, 12:14, 13:21, 23:5, 30:9
**certify** [1] - 38:16
**cetera** [2] - 16:15, 17:17
**chain** [8] - 27:25, 28:3, 31:8, 31:17, 32:6, 32:10, 34:14, 35:23
**chance** [2] - 21:10, 22:16
**change** [1] - 25:14
**changed** [3] - 13:8, 16:9, 25:17
**changing** [2] - 23:22, 25:20
**check** [1] - 7:10
**cincinnati** [1] - 3:7

**circumstances** [1] - 37:13
**CIVIL** [1] - 1:3
**claim** [2] - 31:21, 32:23
**claims** [8] - 29:24, 29:25, 30:22, 31:1, 31:22, 32:1, 33:6, 34:17
**class** [2] - 29:18, 29:23
**Clem** [3] - 4:25, 12:11, 19:22
**CLEM** [1] - 2:18
**Clerk** [1] - 3:10
**client** [2] - 24:2, 24:9
**close** [1] - 17:14
**co** [1] - 11:15
**Co** [1] - 3:4
**co-counsel** [1] - 11:15
**Coast** [1] - 2:9
**colleagues** [1] - 12:13
**collect** [1] - 22:13
**collected** [1] - 13:5
**collecting** [4] - 7:24, 8:21, 8:23, 18:25
**collective** [1] - 13:3
**comfortable** [1] - 15:20
**coming** [3] - 8:22, 25:5, 38:2
**Commencing** [1] - 1:7
**common** [5] - 28:2, 31:7, 31:10, 36:1
**communicated** [1] - 27:12
**complaint** [5] - 30:13, 30:18, 32:16, 33:6, 36:25
**complaints** [12] - 27:18, 29:11, 29:22, 29:23, 30:2, 30:11, 31:25, 32:23, 32:25, 33:13, 37:3, 37:6
**complete** [4] - 6:13, 10:16, 11:5, 19:10
**completely** [2] - 16:21, 21:8
**completion** [1] - 11:23
**comprise** [1] - 29:24
**computer** [1] - 1:22
**computer-aided** [1] - 1:22
**concern** [1] - 35:1
**concession** [1] - 16:23
**conditions** [1] - 17:16
**conducting** [1] - 24:22
**confer** [4] - 13:13, 21:18, 33:17, 36:17

**conference** [10] - 4:4, 4:10, 6:19, 6:21, 6:23, 10:25, 26:24, 27:10, 36:20
**conferral** [1] - 30:5
**conferring** [1] - 29:8
**confine** [1] - 29:20
**confirm** [1] - 6:3
**confirmation** [1] - 38:9
**confirming** [1] - 38:8
**confused** [1] - 34:18
**confusion** [2] - 29:5, 29:14
**CONLEE** [1] - 2:2
**Conlee** [2] - 4:19, 37:20
**connecters** [1] - 23:6
**consider** [2] - 13:7, 35:3
**constantly** [1] - 21:2
**consumer** [1] - 29:24
**contacted** [2] - 16:1, 16:2
**contemplate** [1] - 16:17
**contemplated** [8] - 16:6, 18:5, 18:16, 19:7, 20:2, 20:14, 20:24, 21:21
**contemplating** [1] - 16:16
**contention** [2] - 13:10, 14:5
**contest** [1] - 14:2
**contesting** [1] - 17:23
**context** [1] - 33:4
**CONTINUED** [2] - 2:1, 3:1
**contrary** [1] - 27:3
**control** [1] - 7:2
**conventional** [1] - 29:12
**convert** [1] - 6:23
**core** [8] - 9:10, 9:20, 9:21, 10:2, 10:9, 10:16, 11:5, 11:24
**corona** [1] - 23:15
**coronavirus** [3] - 22:15, 24:23, 25:1
**correct** [4] - 33:7, 33:22, 38:16
**correctly** [1] - 7:14
**counsel** [15] - 5:16, 8:16, 10:7, 10:14, 11:10, 11:15, 11:18, 11:21, 18:23, 25:21, 27:12, 27:16, 29:2, 36:10
**counterproposal** [5] -

12:18, 12:23, 20:1, 22:4, 22:6
**counterproposals** [1] - 20:13
**counts** [1] - 21:15
**couple** [4] - 5:19, 12:4, 16:1, 37:25
**course** [4] - 4:11, 6:16, 12:4, 32:1
**Court** [2] - 1:19, 38:19
**court** [1] - 15:7
**COURT** [1] - 1:1
**Court's** [11] - 6:4, 11:18, 12:11, 12:12, 13:21, 14:23, 20:2, 23:17, 25:13, 32:3, 32:8
**court-approved** [1] - 15:7
**covered** [1] - 22:6
**covering** [1] - 31:9
**crack** [1] - 12:12
**crisis** [6] - 5:22, 6:2, 9:8, 23:10, 23:15
**cross** [2] - 17:3, 33:15
**CRR** [1] - 38:19
**current** [3] - 8:8, 23:1, 37:3
**custodians** [5] - 10:4, 10:6, 10:13, 20:21, 22:19
**cuts** [1] - 29:18
**CVS** [1] - 3:4

## D

**DANIEL** [2] - 1:14, 3:5
**data** [6] - 12:24, 13:4, 14:2, 14:4, 20:20
**date** [4] - 6:13, 7:16, 11:23, 25:20
**dates** [1] - 27:12
**Datett** [1] - 38:21
**days** [3] - 24:7, 24:9, 37:25
**de** [1] - 16:14
**de-duplication** [1] - 16:14
**deadline** [7] - 9:10, 10:15, 23:1, 23:3, 23:5, 23:22, 37:5
**deadlines** [7] - 6:15, 22:25, 23:9, 23:12, 23:14, 23:18
**deal** [3] - 6:17, 19:15, 33:6
**dealing** [9] - 5:23, 5:24, 6:16, 25:15, 28:3, 28:4, 32:3, 33:6, 33:12

**deals** [1] - 31:20
**December** [11] - 14:23, 15:4, 17:8, 17:15, 17:23, 20:4, 20:19, 21:4, 21:22, 22:8, 22:15
**decide** [13] - 23:21, 23:23, 24:3, 24:5, 24:6, 24:8, 25:18, 25:19, 31:11, 32:24, 33:9
**decided** [1] - 37:14
**deciding** [1] - 24:4
**decision** [1] - 14:13
**defendant** [9] - 16:2, 24:12, 25:16, 26:6, 26:9, 28:1, 29:15, 32:21, 36:4
**Defendant** [4] - 2:17, 2:20, 3:4, 3:7
**defendants** [38] - 4:22, 5:5, 5:8, 5:11, 6:7, 9:9, 12:15, 12:21, 12:24, 13:5, 13:18, 13:23, 15:13, 17:21, 18:24, 21:9, 21:15, 21:20, 23:1, 23:10, 24:19, 25:8, 25:14, 25:23, 26:3, 29:20, 29:25, 30:21, 30:23, 31:9, 32:5, 34:17, 34:23, 35:11, 35:15, 36:19, 37:2, 37:17
**Defendants** [1] - 2:23
**defendants'** [6] - 5:1, 6:10, 26:2, 26:10, 31:6, 33:23
**Defense** [2] - 2:17, 2:20
**defense** [6] - 4:24, 15:19, 16:6, 16:17, 26:23, 27:1
**defenses** [1] - 31:18
**defer** [1] - 18:16
**deficiencies** [2] - 36:13, 36:20
**deficient** [1] - 37:7
**delay** [4] - 9:6, 23:4, 23:14, 23:17
**delayed** [1] - 5:21
**delaying** [1] - 24:4
**delays** [1] - 8:17
**demonstrated** [1] - 20:25
**depositions** [2] - 8:10, 8:12
**described** [1] - 17:11
**designed** [1] - 19:20
**detailed** [1] - 17:10

**determine** [1] - 34:24
**developing** [1] - 15:19
**developments** [1] - 6:24
**devised** [1] - 17:10
**different** [12] - 18:8, 24:18, 31:17, 31:18, 32:4, 32:5, 32:9, 32:10, 35:10, 35:18
**digested** [1] - 30:8
**directed** [4] - 27:18, 29:3, 30:18, 32:15
**directions** [1] - 11:18
**directive** [1] - 29:20
**discovery** [15] - 4:4, 9:12, 9:13, 9:20, 9:22, 10:3, 10:9, 10:16, 10:18, 11:6, 11:24, 11:25, 14:15, 26:21
**discreet** [3] - 8:6, 16:1, 19:2
**discrete** [1] - 19:14
**discuss** [4] - 5:17, 6:16, 30:21, 37:16
**discussing** [1] - 8:2
**discussion** [4] - 12:6, 12:9, 15:7, 19:23
**discussions** [5] - 9:18, 9:24, 10:10, 10:12, 20:16
**dismiss** [9] - 7:10, 30:14, 30:15, 30:18, 31:20, 32:4, 32:17, 32:19, 32:22
**dismissed** [3] - 7:5, 7:6, 7:11
**dismissing** [1] - 7:9
**dispute** [8] - 12:3, 15:11, 17:18, 22:25, 23:6, 23:16, 26:3, 37:3
**disputed** [1] - 17:11
**disputes** [3] - 9:4, 9:5, 26:15
**DISTRICT** [2] - 1:1, 1:1
**divided** [2] - 30:7, 32:14
**Docket** [5] - 4:3, 15:5, 20:5, 20:7, 21:7
**document** [4] - 15:17, 16:21, 26:4, 26:20
**documents** [23] - 6:8, 6:10, 8:7, 8:13, 9:11, 10:12, 10:23, 13:1, 13:15, 14:9, 14:10, 14:11, 15:9, 16:23, 17:13, 18:14, 18:25, 20:20, 23:2, 23:7,

25:22
**done** [10] - 6:8, 6:12, 13:17, 15:18, 15:23, 16:12, 21:19, 21:21, 26:22, 29:15
**down** [1] - 16:21
**downstream** [1] - 37:9
**dozens** [1] - 25:5
**drabs** [1] - 16:7
**dribs** [1] - 16:7
**Drug** [1] - 31:2
**drug** [1] - 18:10
**Duane** [1] - 37:2
**DUANE** [1] - 2:14
**due** [2] - 22:15, 24:23
**duplication** [1] - 16:14
**duplicative** [1] - 33:2
**during** [1] - 4:9
**duties** [5] - 31:18, 31:19, 31:21, 32:4, 32:10

### E

**e-mail** [2] - 16:14, 27:15
**earliest** [1] - 23:21
**easier** [2] - 33:9, 33:12
**East** [1] - 3:3
**economic** [8] - 17:16, 29:18, 29:23, 29:24, 30:13, 30:18, 31:22, 32:17
**edits** [1] - 26:12
**effect** [1] - 10:21
**efficient** [1] - 32:6
**EIR** [1] - 11:20
**Eisenhower** [1] - 1:11
**either** [4] - 19:7, 24:5, 24:11, 26:14
**encountered** [1] - 8:5
**end** [8] - 6:19, 8:22, 10:25, 11:22, 26:15, 37:7, 37:13, 38:10
**endorsed** [1] - 25:12
**enter** [2] - 4:8, 38:8
**entered** [1] - 21:4
**entire** [3] - 19:11, 32:9, 35:14
**entities** [5] - 8:21, 10:6, 10:18, 11:3, 17:17
**entitled** [2] - 34:10, 38:17
**entries** [1] - 4:6
**envision** [2] - 30:12, 30:13
**ESI** [5] - 6:16, 12:3, 14:15, 14:22, 26:20
**ESQUIRE** [12] - 1:11,

1:14, 1:17, 2:2, 2:5, 2:8, 2:11, 2:15, 2:15, 2:18, 2:21, 3:2
**essentially** [2] - 19:17, 19:25
**established** [2] - 15:25, 17:1
**establishment** [3] - 10:3, 10:8, 20:17
**et** [2] - 16:15, 17:17
**evaluate** [2] - 13:10, 27:7
**evaluating** [2] - 17:11, 32:4
**event** [1] - 23:17
**evidence** [1] - 13:23
**exactly** [4] - 19:13, 25:23, 26:7, 32:8
**example** [6] - 16:14, 25:3, 29:16, 29:23, 32:13, 34:25
**examples** [1] - 13:13
**except** [1] - 23:14
**exceptions** [1] - 12:22
**excuse** [2] - 13:16, 17:24
**executive** [1] - 5:2
**Exhibit** [2] - 14:24, 15:4
**exhibit** [2] - 15:7, 21:10
**existing** [1] - 10:17
**expect** [2] - 29:16, 36:19
**expects** [1] - 10:21
**expert** [1] - 14:15
**express** [1] - 32:22
**extend** [1] - 37:5
**extension** [1] - 37:11
**extent** [2] - 31:10, 38:3

### F

**face** [1] - 16:11
**fact** [5] - 26:2, 26:6, 26:10, 36:12
**factual** [3] - 30:21, 31:1, 32:1
**fair** [3] - 13:3, 13:22, 19:24
**fait** [1] - 21:4
**false** [3] - 21:3, 22:20, 22:21
**fantastic** [1] - 7:15
**far** [2] - 8:5, 16:25
**FARR** [1] - 2:5
**FDA** [1] - 25:4
**February** [2] - 22:3, 22:16

**Ferretti** [4] - 7:25, 8:6, 18:23, 19:8
**few** [5] - 8:6, 8:22, 15:1, 18:8, 18:9
**figure** [2] - 19:15, 38:3
**file** [5] - 25:14, 29:17, 30:17, 30:25, 34:4
**filed** [1] - 30:20
**filing** [1] - 37:25
**finalize** [1] - 26:17
**fine** [3] - 24:11, 24:13, 35:13
**firm** [1] - 7:10
**FIRM** [1] - 2:5
**firms** [1] - 7:11
**first** [8] - 4:10, 10:1, 12:2, 20:25, 24:8, 24:9, 32:15, 34:1
**fit** [1] - 28:12
**five** [1] - 19:14
**fixing** [1] - 37:5
**flexible** [1] - 35:8
**Floor** [1] - 2:19
**floor** [1] - 14:20
**Florida** [2] - 1:15, 2:6
**focus** [2] - 31:12, 31:14
**focused** [1] - 31:4
**follow** [2] - 21:21, 22:14
**followed** [2] - 15:15, 19:3
**following** [2] - 20:9, 22:4
**FOR** [1] - 1:1
**foregoing** [1] - 38:16
**foreign** [1] - 9:9
**foreseeable** [1] - 6:5
**foreshadow** [1] - 16:18
**Form** [1] - 20:17
**form** [3] - 36:25, 37:3, 37:5
**formal** [1] - 23:20
**formalized** [1] - 20:1
**formula** [1] - 10:19
**forth** [1] - 17:22
**forward** [3] - 6:4, 6:24, 8:16
**frankly** [1] - 22:2
**FREEMAN** [1] - 1:10
**Friday** [1] - 27:6
**Friedlander** [2] - 1:19, 38:19
**friedlanderreporter @gmail.com** [1] - 1:20
**front** [3] - 15:17, 17:6, 17:9
**fruit** [1] - 22:2

**fruitful** [1] - 10:9
**fully** [3] - 22:14, 22:17, 22:19
**fulsome** [2] - 24:8, 24:9
**future** [1] - 6:5

### G

**generic** [1] - 25:15
**Geoppinger** [1] - 5:7
**GEOPPINGER** [3] - 3:5, 5:6, 5:7
**GEORGE** [1] - 2:5
**George** [1] - 4:17
**Georgia** [1] - 2:22
**given** [6] - 14:7, 14:8, 22:18, 24:24, 33:23
**globally** [1] - 13:24
**Goldberg** [14] - 4:24, 11:9, 22:9, 24:15, 29:9, 30:3, 30:12, 33:5, 33:14, 33:16, 34:3, 34:20, 34:21, 35:4
**GOLDBERG** [25] - 2:15, 4:23, 7:22, 8:19, 11:9, 22:9, 22:12, 24:17, 26:5, 26:8, 27:5, 27:19, 27:23, 27:25, 28:11, 28:15, 28:18, 28:24, 30:19, 33:14, 33:22, 34:7, 34:12, 35:7, 37:17
**GOLDENBERG** [4] - 2:11, 2:11, 4:20, 36:15
**Goldenberg** [2] - 4:20, 36:16
**GOLOMB** [1] - 1:16
**Gorda** [1] - 2:6
**GORDON** [1] - 2:18
**gotta** [1] - 28:8
**Grant** [1] - 11:14
**grant** [1] - 28:10
**great** [4] - 5:3, 26:17, 28:23
**GREENBERG** [1] - 2:21
**Greenberg** [1] - 5:11
**Grier** [1] - 7:9
**gross** [3] - 14:9, 14:10
**Group** [2] - 2:17, 2:20
**group** [4] - 4:24, 12:23, 27:24, 32:13
**groups** [3] - 30:17, 33:7
**guess** [1] - 27:2

## H

**hand** [1] - 18:1
**handled** [2] - 20:18, 22:1
**handling** [1] - 33:8
**hands** [2] - 23:19, 26:25
**hanging** [1] - 22:2
**hard** [2] - 29:1, 35:18
**head** [1] - 19:25
**headed** [1] - 13:19
**Health** [1] - 3:4
**hear** [6] - 4:11, 9:15, 12:5, 18:20, 19:21, 36:13
**heard** [3] - 4:11, 4:12, 17:5
**heavy** [1] - 16:19
**hello** [2] - 4:14, 14:6
**Hetero** [9] - 9:9, 9:18, 9:22, 9:24, 10:1, 10:6, 10:11, 11:10, 11:15
**hi** [1] - 34:21
**highlighted** [2] - 21:12, 21:16
**Highway** [1] - 2:9
**hit** [3] - 6:2, 9:8, 21:15
**hits** [1] - 14:9
**hold** [1] - 17:4
**holding** [1] - 4:4
**Honik** [3] - 4:15, 29:7, 33:3
**HONIK** [5] - 1:16, 1:17, 4:15, 29:7, 32:20
**Honor** [51] - 4:14, 4:15, 4:16, 4:18, 4:23, 4:25, 5:4, 5:6, 7:8, 7:14, 8:4, 8:19, 9:15, 11:8, 11:9, 11:14, 11:19, 12:1, 12:10, 13:12, 14:6, 14:14, 14:18, 15:16, 15:23, 15:24, 16:4, 18:3, 18:19, 18:22, 19:22, 19:25, 20:4, 20:14, 21:9, 21:13, 22:9, 23:25, 25:25, 26:5, 26:15, 26:19, 27:5, 27:19, 28:11, 29:7, 36:15, 37:1, 37:17, 37:19, 37:20
**HONORABLE** [1] - 1:8
**hope** [1] - 6:1
**hopeful** [1] - 10:10
**hopefully** [6] - 5:25, 7:20, 8:17, 8:22, 26:14, 37:13

## HUDSON

**HUDSON** [3] - 9:15, 9:17, 11:8
**Hudson** [1] - 9:17
**hundred** [4] - 15:6, 28:13, 28:25, 30:4

## I

**identified** [2] - 19:4, 19:14
**identify** [4] - 6:9, 8:23, 8:25, 10:4
**imminent** [1] - 16:22
**imposed** [1] - 23:1
**improved** [1] - 13:15
**IN** [1] - 1:3
**in-person** [1] - 6:21
**inadequate** [1] - 16:11
**Inc** [2] - 2:23, 2:24
**include** [2] - 10:25, 11:20
**included** [1] - 10:11
**including** [3] - 11:24, 12:25, 19:18
**incorporated** [1] - 15:6
**incredibly** [1] - 16:10
**independently** [1] - 32:4
**India** [1] - 11:15
**Indian** [1] - 10:6
**indicate** [1] - 6:6
**indicated** [3] - 6:20, 22:24, 23:13
**indicating** [1] - 26:21
**indulge** [2] - 5:18, 37:22
**Industries** [1] - 2:23
**inform** [1] - 37:4
**information** [9] - 7:3, 7:24, 8:21, 12:15, 12:17, 13:9, 16:7, 22:13, 24:22
**informed** [2] - 7:6, 10:7
**initial** [1] - 12:12
**injury** [3] - 29:19, 31:21, 32:16
**innocent** [1] - 31:3
**inspection** [3] - 10:3, 10:8, 20:17
**inspector** [1] - 25:4
**instance** [1] - 12:25
**instead** [1] - 8:18
**intend** [4] - 8:25, 22:14, 22:17, 27:1
**intended** [1] - 24:20
**intending** [1] - 17:24
**intention** [2] - 27:20
**interests** [1] - 7:16

**interrupt** [1] - 34:19
**investigation** [1] - 14:21
**invite** [1] - 12:14
**involved** [2] - 18:18, 38:3
**issue** [20] - 7:1, 7:21, 8:1, 8:15, 9:7, 9:8, 12:2, 14:20, 17:24, 18:15, 22:24, 23:21, 25:18, 25:20, 26:2, 27:11, 30:1, 36:12, 37:4, 37:9
**issued** [1] - 26:8
**issues** [41] - 5:17, 5:19, 7:19, 8:2, 8:5, 8:6, 8:17, 8:23, 9:14, 9:19, 16:1, 17:19, 18:11, 19:1, 19:2, 19:14, 21:24, 21:25, 25:8, 25:15, 28:2, 28:4, 28:5, 29:19, 30:6, 30:7, 31:4, 31:7, 31:9, 31:10, 31:13, 31:14, 33:10, 33:11, 33:24, 36:1, 36:18, 36:23, 37:16
**itself** [1] - 20:9

## J

**Jaffe** [1] - 14:16
**January** [6] - 7:23, 18:4, 19:13, 21:25, 22:16
**Jeff** [1] - 5:7
**JEFFREY** [1] - 3:5
**JERSEY** [1] - 1:1
**Jersey** [1] - 1:12
**Joe** [1] - 7:24
**JOEL** [1] - 1:8
**Johnston** [1] - 5:5
**JOHNSTON** [3] - 3:2, 5:4
**joined** [1] - 25:8
**joining** [1] - 13:5
**joint** [1] - 4:23
**Joint** [2] - 2:17, 2:20
**JUDGE** [1] - 1:8
**Judge** [22] - 5:13, 6:20, 12:20, 21:2, 22:2, 24:11, 27:12, 27:13, 28:9, 29:3, 29:4, 29:5, 29:21, 33:9, 33:14, 33:17, 33:19, 34:19, 35:1, 35:6, 35:20, 36:8
**July** [5] - 6:11, 23:3, 23:22, 25:20, 25:23
**June** [10] - 23:21,

24:6, 24:7, 25:18, 25:19, 25:20, 37:11, 37:12, 37:13

## K

**KANNER** [1] - 2:2
**Karen** [3] - 1:19, 5:13, 38:19
**KATZ** [1] - 1:10
**keep** [1] - 25:21
**keeping** [1] - 7:2
**kept** [1] - 7:16
**key** [2] - 10:4, 10:5
**kinds** [1] - 34:23
**KIRTLAND** [1] - 2:8
**knows** [1] - 15:24
**Kugler** [13] - 6:20, 27:12, 27:13, 28:9, 29:3, 29:6, 29:21, 33:9, 33:17, 33:19, 35:6, 35:20, 36:8
**Kugler's** [1] - 35:1

## L

**Labs** [1] - 11:15
**laid** [3] - 14:12, 15:25, 16:9
**large** [3] - 31:22, 31:23, 31:24
**Lasalle** [1] - 2:12
**last** [7] - 7:1, 8:22, 9:7, 14:8, 26:13, 27:6, 37:9
**lastly** [1] - 21:2
**late** [1] - 16:25
**Lauren** [1] - 9:17
**Law** [1] - 3:10
**LAW** [2] - 2:5, 2:11
**lead** [3] - 12:6, 12:14, 14:15
**leadership** [2] - 7:13, 38:1
**least** [4] - 6:12, 9:24, 19:9, 33:8
**leave** [1] - 34:6
**left** [1] - 9:14
**less** [1] - 24:7
**letter** [19] - 5:18, 14:3, 14:8, 14:12, 15:5, 15:8, 15:25, 16:4, 16:10, 17:6, 17:8, 17:23, 18:7, 18:16, 23:23, 26:21, 26:23, 27:5, 27:7
**letters** [2] - 5:16, 12:4
**level** [4] - 32:5, 32:7, 34:13, 35:22
**levels** [3] - 28:3,

31:17, 32:10
**LEVIN** [1] - 1:13
**LIABILITY** [1] - 1:4
**liberal** [1] - 23:11
**light** [2] - 16:24, 17:1
**limit** [3] - 35:3, 35:14, 36:3
**limited** [3] - 13:15, 13:16, 31:1
**line** [3] - 4:13, 11:11, 11:16
**links** [1] - 12:17
**list** [4] - 20:10, 24:21, 36:19, 36:21
**listed** [1] - 5:17
**listening** [1] - 29:5
**LITIGATION** [1] - 1:4
**litigation** [1] - 32:9
**live** [3] - 35:17, 35:20, 35:21
**LLC** [3] - 1:10, 2:2, 2:23
**LLP** [6] - 2:8, 2:14, 2:18, 2:21, 3:2, 3:5
**local** [1] - 34:5
**look** [6] - 6:4, 14:22, 31:5, 31:13, 31:14, 32:7
**looking** [3] - 7:18, 11:21, 27:15
**Loretta** [7] - 3:10, 5:14, 5:15, 7:1, 29:4, 34:21, 36:7
**Los** [1] - 3:3
**loss** [1] - 31:22
**Louisiana** [1] - 2:3
**low** [1] - 22:2
**Ltd** [1] - 2:23
**luckily** [1] - 34:4

## M

**MAGISTRATE** [1] - 1:8
**mail** [2] - 16:14, 27:15
**management** [1] - 20:21
**Mandarin** [2] - 7:21, 7:23
**manner** [1] - 22:7
**manufacturer** [9] - 26:6, 26:9, 28:1, 30:20, 30:22, 31:6, 31:9, 35:24, 36:4
**manufacturers** [3] - 29:17, 35:5, 35:12
**manufacturers'** [2] - 34:25, 35:3
**manufacturing** [4] - 12:21, 17:16, 32:21,

33:10
**March** [7] - 12:19, 16:3, 19:12, 20:2, 22:4, 22:16, 37:6
**Market** [1] - 1:17
**Marlene** [2] - 4:20, 36:15
**MARLENE** [1] - 2:11
**master** [3] - 29:11, 30:11, 31:25
**material** [1] - 9:23
**materially** [1] - 16:9
**matter** [4] - 4:2, 5:25, 32:13, 38:17
**matters** [1] - 29:9
**MAZIE** [1] - 1:10
**MDL** [1] - 4:3
**mean** [4] - 19:9, 24:5, 28:13, 34:7
**meaningful** [1] - 19:24
**mechanical** [1] - 1:21
**medical** [4] - 17:16, 29:18, 31:23, 32:17
**meet** [3] - 13:13, 21:17, 36:16
**meeting** [1] - 29:8
**mentioned** [3] - 8:20, 20:4, 21:9
**message** [1] - 11:12
**method** [2] - 17:11, 24:24
**methodology** [1] - 16:11
**middle** [1] - 13:21
**midst** [3] - 8:20, 22:13, 25:6
**might** [12] - 6:21, 14:7, 19:5, 28:20, 28:21, 32:12, 32:14, 32:18, 33:12, 35:1, 35:2
**million** [1] - 16:16
**mind** [1] - 25:21
**Minneapolis** [1] - 2:13
**Minnesota** [1] - 2:13
**miscellaneous** [3] - 5:19, 7:19, 9:7
**modifiers** [1] - 19:19
**modify** [1] - 13:24
**moment** [1] - 18:4
**momentum** [1] - 6:2
**Monday** [1] - 27:6
**monitoring** [3] - 29:18, 31:24, 32:17
**month** [6] - 6:20, 10:25, 11:22, 26:15, 37:7, 38:10
**mood** [1] - 28:10
**Morris** [1] - 37:2
**MORRIS** [1] - 2:14
**most** [7] - 12:22,

16:12, 28:9, 30:4, 30:8, 32:6, 36:18
**mostly** [2] - 13:4, 22:1
**motion** [17] - 13:18, 13:20, 13:22, 16:19, 23:20, 25:14, 29:18, 29:22, 30:1, 30:17, 30:25, 31:20, 32:3, 32:14, 32:22, 34:22, 38:1
**motions** [9] - 27:17, 27:20, 29:12, 30:14, 31:5, 32:18, 33:20, 34:5
**move** [1] - 16:21
**MR** [54] - 4:14, 4:15, 4:16, 4:21, 4:23, 4:25, 5:6, 5:10, 7:8, 7:22, 8:4, 8:9, 8:14, 8:19, 11:9, 11:14, 11:19, 12:1, 12:10, 13:12, 14:6, 15:16, 18:1, 18:19, 18:22, 19:22, 22:9, 22:12, 23:25, 24:11, 24:17, 25:25, 26:5, 26:8, 26:19, 26:23, 27:5, 27:19, 27:23, 27:25, 28:11, 28:15, 28:18, 28:24, 29:7, 30:19, 32:20, 33:14, 33:22, 34:7, 34:12, 35:7, 37:17, 37:18
**MS** [14] - 4:18, 4:20, 5:4, 5:13, 9:15, 9:17, 11:8, 29:4, 34:19, 36:6, 36:9, 36:15, 37:20, 37:24
**MTD** [3] - 34:25, 35:3, 35:4
**Mylan** [13] - 2:20, 5:1, 12:5, 12:9, 12:17, 13:5, 13:8, 13:17, 14:1, 14:4, 15:25, 16:2
**Mylan's** [1] - 22:18

**N**

**Nakul** [1] - 11:15
**name** [2] - 4:10, 25:4
**named** [1] - 25:4
**names** [1] - 18:10
**narrative** [1] - 21:3
**NE** [1] - 2:22
**necessary** [1] - 16:12
**need** [16] - 5:13, 10:14, 10:23, 12:7, 13:2, 13:10, 16:13, 20:25, 21:17, 22:21,

25:9, 25:10, 26:10, 34:6, 35:9, 35:19
**needed** [2] - 10:7, 16:13, 20:11, 20:23
**needs** [1] - 35:25
**neglected** [1] - 38:5
**negotiated** [2] - 15:22, 18:23
**negotiations** [1] - 10:5
**Nesbit** [1] - 2:6
**never** [6] - 16:6, 16:16, 18:10, 19:7, 19:9, 21:6
**NEW** [1] - 1:1
**new** [3] - 9:8, 15:13, 17:24
**New** [2] - 1:12, 2:3
**next** [9] - 6:24, 10:24, 20:15, 26:1, 27:11, 36:12, 36:20, 37:11, 37:25
**NIGH** [1] - 1:14
**night** [1] - 26:13
**noncustodial** [1] - 17:13
**note** [4] - 7:7, 10:24, 14:1, 26:1
**noted** [1] - 6:15
**notes** [3] - 6:6, 7:18, 38:6
**nothing** [1] - 37:17, 37:18
**notion** [1] - 25:8
**November** [2] - 6:13, 6:14
**number** [10] - 20:7, 20:12, 30:7, 33:23, 34:15, 34:22, 34:24, 35:9, 38:7
**NUMBER** [1] - 1:3
**numbers** [5] - 14:8, 14:9, 14:10, 26:4

**O**

**objected** [1] - 21:8
**objection** [1] - 21:23
**objections** [4] - 15:1, 21:12, 23:12, 27:10
**obligations** [5] - 31:18, 31:19, 31:21, 32:5, 32:11
**obviously** [2] - 6:21, 23:10
**October** [1] - 6:13
**OF** [1] - 1:1
**office** [2] - 7:25, 22:1
**Official** [1] - 1:19
**often** [1] - 15:23
**OH** [1] - 3:7

**omnibus** [4] - 29:17, 29:22, 29:25, 34:22
**One** [1] - 2:19
**one** [27] - 7:4, 9:7, 10:15, 18:10, 20:7, 22:10, 25:3, 25:14, 27:16, 27:17, 27:18, 27:20, 27:24, 28:13, 28:14, 28:20, 29:8, 29:11, 30:20, 32:24, 33:10, 33:11, 33:21, 34:7, 37:21
**ongoing** [1] - 12:9
**open** [1] - 14:19
**opening** [1] - 28:7
**opportunity** [7] - 9:23, 17:5, 22:22, 24:20, 24:24, 25:10, 34:16
**option** [1] - 24:1
**ORAL** [1] - 1:5
**order** [24] - 10:4, 10:5, 10:9, 10:17, 11:1, 11:24, 14:23, 20:2, 20:4, 20:6, 20:9, 20:14, 20:16, 20:19, 21:4, 21:22, 22:5, 24:14, 25:13, 26:8, 26:11, 36:22, 38:8
**ordered** [1] - 21:14
**original** [1] - 12:22
**Orleans** [1] - 2:3
**outer** [1] - 36:3
**outlined** [1] - 20:6
**outlines** [1] - 12:25
**outside** [1] - 11:23
**overbreadth** [1] - 14:5
**overbroad** [1] - 13:10
**overinclusiveness** [1] - 14:5
**overly** [1] - 25:9
**Oxford** [1] - 2:19

**P**

**p.m** [3] - 1:7, 4:1, 38:13
**Pacific** [1] - 2:9
**PACKARD** [1] - 2:8
**Page** [2] - 17:9, 20:7, 21:7
**page** [2] - 6:6, 20:15
**Pages** [2] - 15:5, 20:6
**pages** [38] - 27:14, 28:6, 28:7, 28:8, 28:9, 28:12, 28:15, 28:19, 28:20, 29:21, 30:4, 30:5, 30:7, 33:16, 33:19, 33:20, 33:21, 33:24, 34:1, 34:6, 34:8, 34:9,

34:13, 34:14, 34:15, 34:22, 34:23, 34:24, 35:9, 35:11, 35:15, 35:22, 36:5, 36:11, 38:8
**PAPANTONIO** [1] - 1:13
**paper** [1] - 8:7
**parameters** [1] - 26:9
**PAREKH** [6] - 2:8, 4:21, 7:8, 8:4, 18:19, 18:22
**Parekh** [8] - 4:21, 7:8, 8:4, 8:24, 14:14, 18:2, 18:16, 24:20
**Park** [1] - 3:3
**Parkway** [1] - 1:11
**part** [4] - 10:9, 12:22, 31:22, 31:23
**parties** [18] - 6:3, 7:20, 9:13, 12:4, 12:8, 13:9, 15:12, 15:14, 17:9, 17:19, 20:16, 21:17, 22:7, 25:11, 27:13, 30:8, 31:16, 34:8
**PARTIES** [1] - 4:1
**party** [4] - 19:7, 34:5, 34:8, 34:9
**party's** [1] - 15:11
**PC** [1] - 1:16
**Pennsacola** [1] - 1:15
**Pennsylvania** [3] - 1:18, 2:16, 2:19
**people** [2] - 4:7
**perceived** [1] - 21:5
**percent** [1] - 15:6
**perfect** [2] - 37:8, 38:5
**perfectly** [1] - 5:23
**perhaps** [1] - 10:10
**period** [3] - 9:12, 10:13, 17:14
**permission** [1] - 12:11
**person** [3] - 6:21, 18:22, 38:10
**personal** [2] - 31:21, 32:16
**perspective** [1] - 19:9
**pertinent** [2] - 30:22, 30:23
**Pharma** [1] - 2:24
**Pharmaceutical** [1] - 2:23
**Pharmaceuticals** [2] - 2:23, 5:1
**Philadelphia** [2] - 1:18, 2:16
**phone** [6] - 4:5, 4:7, 6:18, 6:23, 19:8, 38:11

**pick** [1] - 6:1
**Piedmont** [1] - 2:22
**PIETRAGALLO** [1] - 2:18
**Pittsburgh** [1] - 2:19
**place** [1] - 23:12
**plaintiff** [5] - 4:13, 12:19, 13:9, 14:1, 25:17
**Plaintiff** [7] - 1:12, 1:15, 1:18, 2:4, 2:7, 2:10, 2:13
**plaintiffs** [22] - 6:9, 7:21, 8:2, 9:1, 9:11, 9:18, 11:13, 12:24, 13:10, 14:2, 14:3, 21:1, 21:10, 24:21, 25:7, 25:19, 26:11, 26:13, 27:7, 34:2, 36:16, 37:18
**plaintiffs'** [4] - 11:18, 21:23, 23:12, 36:12
**platforms** [1] - 16:24
**pleading** [1] - 5:2
**PLLC** [1] - 2:11
**point** [8] - 11:10, 13:4, 13:21, 13:22, 19:17, 22:10, 24:18, 29:13
**portions** [3] - 30:14, 30:18, 32:16
**portrayed** [1] - 21:3
**position** [1] - 24:19
**positive** [1] - 15:6
**positives** [1] - 22:21
**possible** [1] - 14:17
**possibly** [1] - 32:20
**potentially** [1] - 34:14
**practice** [3] - 13:21, 16:20, 23:20
**precisely** [4] - 20:12, 20:13, 21:18, 22:6
**prefer** [2] - 23:24, 28:25
**prejudicial** [1] - 16:10
**preliminarily** [1] - 10:15
**prepare** [1] - 14:22
**prepared** [3] - 13:25, 38:4
**present** [1] - 15:11
**PRESENT** [1] - 3:9
**presented** [1] - 17:1
**presumably** [1] - 34:9
**pretty** [1] - 23:11
**pricing** [1] - 6:8
**principally** [1] - 29:8
**priorities** [1] - 6:9
**prioritization** [1] - 26:20
**problem** [4] - 18:6,

18:8, 19:16, 36:24
**procedure** [10] - 15:3, 15:12, 15:14, 17:17, 18:24, 19:3, 19:6, 19:20, 20:1, 20:5
**proceed** [1] - 18:12
**Proceedings** [1] - 1:21
**proceedings** [1] - 38:17
**process** [10] - 7:24, 8:23, 16:17, 16:25, 19:11, 22:5, 22:14, 22:18, 22:22, 25:11
**processing** [1] - 18:14
**produce** [4] - 6:7, 9:10, 10:18, 11:25
**produced** [2] - 1:22, 23:8
**producing** [3] - 10:21, 17:12, 18:14
**product** [1] - 10:21
**production** [3] - 6:10, 9:21, 10:3, 10:7, 10:23, 11:5, 11:20, 11:24, 13:16, 23:2, 24:8, 24:10
**productions** [4] - 6:12, 6:14, 10:10, 16:22
**productive** [1] - 36:16
**PRODUCTS** [1] - 1:3
**progress** [1] - 5:22
**proposal** [4] - 26:12, 28:19, 30:19, 34:23
**propose** [1] - 31:16
**proposed** [11] - 16:17, 19:12, 19:13, 23:10, 27:13, 29:10, 29:21, 30:3, 33:23, 33:24
**proposing** [3] - 33:5, 33:18, 38:1
**protocol** [3] - 15:8, 15:14, 22:4
**provide** [1] - 26:4
**provided** [3] - 13:9, 14:2, 14:12
**punished** [1] - 24:25
**Punta** [1] - 2:6
**purpose** [1] - 18:24
**pursuant** [1] - 17:22
**put** [3] - 16:23, 23:12, 23:19

**Q**

**questions** [3] - 12:5, 14:16, 16:5
**quickly** [1] - 8:25
**quote** [3] - 17:9,

17:14, 20:9

**R**

**raise** [4] - 8:25, 37:4, 37:16, 38:6
**raised** [5] - 17:21, 21:24, 21:25, 22:3, 35:19
**raising** [3] - 8:24, 12:23, 19:24
**ran** [2] - 18:25, 20:24
**rapidly** [1] - 21:24
**RASPANTI** [1] - 2:18
**rather** [1] - 33:5
**RE** [1] - 1:3
**re** [1] - 4:3
**read** [7] - 12:4, 14:3, 14:25, 18:3, 18:13, 21:10, 21:13
**really** [2] - 10:7, 29:14
**reason** [1] - 31:16
**reasonable** [1] - 15:21
**rebecca** [1] - 37:1
**received** [6] - 5:16, 9:21, 10:11, 14:4, 26:12, 27:5
**recent** [2] - 11:19, 30:4
**recited** [1] - 18:6
**recognize** [1] - 13:21
**recollection** [1] - 15:18
**record** [6] - 4:2, 5:14, 7:3, 7:5, 14:22, 38:17
**recorded** [1] - 1:21
**records** [1] - 7:7
**Redondo** [1] - 2:9
**reduced** [1] - 12:7
**referring** [3] - 17:7, 26:6
**refined** [2] - 20:11, 20:22
**reflected** [1] - 7:14
**regarding** [4] - 8:7, 9:18, 10:5, 14:22
**regurgitate** [1] - 16:4
**related** [1] - 20:17
**relatively** [1] - 15:1
**relay** [1] - 11:12
**relevant** [9] - 9:12, 10:13, 10:17, 11:3, 11:25, 16:12, 30:6, 32:15
**remained** [1] - 20:10
**remaining** [2] - 26:15, 37:7
**renegotiate** [1] - 19:18
**repeat** [5] - 5:9, 22:25,

31:22, 31:23, 31:24
**reply** [3] - 25:19, 28:7, 28:8
**reporter** [1] - 4:9
**Reporter** [1] - 1:19
**Reporter/ Transcriber** [1] - 38:19
**reports** [3] - 10:4, 10:8, 20:17
**representative** [1] - 13:17
**request** [3] - 12:16, 13:6, 16:20
**requests** [3] - 6:17, 26:4, 26:25
**required** [1] - 10:8
**resolve** [1] - 9:2
**resolved** [3] - 13:20, 28:2
**respect** [5] - 8:2, 9:19, 20:20, 21:14, 22:10
**respond** [1] - 25:17
**responding** [1] - 12:12
**response** [5] - 13:3, 18:10, 27:1, 28:8, 37:12
**responsive** [2] - 14:17, 23:2
**resulting** [1] - 17:13
**results** [2] - 12:17, 22:18
**retailer** [7] - 5:5, 28:4, 28:5, 31:4, 31:14, 31:15, 33:10
**retailer-specific** [2] - 28:5, 31:4
**retailers** [4] - 30:24, 31:3, 31:11, 32:14
**revealing** [1] - 31:5
**review** [2] - 9:23, 37:6
**reviewing** [1] - 17:12
**revise** [2] - 12:20, 23:4
**revised** [4] - 25:9, 26:10, 26:11, 36:19
**revision** [1] - 19:10
**revisions** [1] - 13:2
**RMR** [1] - 38:19
**Road** [1] - 2:22
**robust** [1] - 16:19
**rolling** [5] - 6:10, 6:11, 23:2, 24:8, 25:22
**Roseland** [1] - 1:12
**round** [1] - 34:1
**Ruben** [2] - 4:15, 29:7
**RUBEN** [1] - 1:17
**RUBENSTEIN** [2] - 2:21, 5:10
**Rubenstein** [1] - 5:10

**Ruecka** [1] - 37:1
**Rule** [3] - 29:12, 29:17, 30:1
**rule** [1] - 31:8
**ruled** [1] - 15:1
**rules** [2] - 34:5, 35:23
**rulings** [1] - 38:9
**run** [4] - 12:18, 17:2, 20:21, 21:15
**running** [1] - 13:14

**S**

**sales** [1] - 6:7
**sampling** [2] - 15:22, 16:12
**SARAH** [1] - 3:2
**Sarah** [1] - 5:5
**sartan** [1] - 38:1
**saw** [2] - 18:15, 26:21
**schedule** [4] - 6:17, 23:23, 27:11, 37:11
**scheduled** [2] - 6:11, 6:19
**schedules** [1] - 38:9
**SCHNEIDER** [1] - 1:8
**Schneider** [2] - 29:4, 34:19
**scratch** [1] - 19:17
**search** [36] - 6:16, 7:23, 8:3, 12:3, 12:7, 12:16, 12:20, 13:1, 13:2, 13:8, 13:24, 14:23, 14:24, 15:19, 15:21, 16:9, 17:2, 17:11, 17:14, 19:1, 19:11, 20:5, 20:8, 20:16, 20:21, 21:15, 22:13, 22:21, 23:4, 23:16, 25:2, 25:3, 25:9, 25:15, 25:17
**searches** [6] - 12:18, 13:14, 20:24, 24:23, 25:6
**searching** [1] - 18:25
**second** [2] - 18:2, 27:16
**section** [1] - 32:15
**sections** [2] - 32:15, 32:18
**see** [7] - 6:22, 11:2, 11:4, 13:20, 28:12, 28:22, 36:19
**seller** [1] - 31:3
**send** [1] - 38:4
**sense** [4] - 30:10, 31:20, 33:5, 35:20
**sensible** [1] - 30:8
**sent** [2] - 18:7, 26:23
**separate** [2] - 30:15,

33:6
**September** [1] - 6:12
**serve** [1] - 34:6
**served** [1] - 21:11
**set** [13] - 7:9, 7:23, 9:12, 10:15, 10:17, 11:4, 11:7, 11:23, 16:9, 17:22, 26:12, 35:14
**Seth** [4] - 4:24, 11:9, 22:9, 33:14
**SETH** [1] - 2:15
**setting** [1] - 26:9
**settle** [1] - 33:9
**Shah** [1] - 11:15
**share** [1] - 32:1
**sheet** [1] - 36:13
**sheets** [4] - 26:2, 26:6, 26:10, 26:11
**short** [3] - 36:25, 37:3, 37:5
**shortly** [1] - 38:4
**show** [2] - 25:16, 36:22
**showed** [1] - 15:9
**shown** [1] - 20:11
**shut** [1] - 16:20
**similarly** [2] - 30:2, 31:3
**simply** [1] - 22:12
**simultaneously** [1] - 17:12
**single** [2] - 29:17, 29:25
**situation** [2] - 5:24, 37:10
**six** [1] - 19:14
**SLATER** [11] - 1:10, 1:11, 4:14, 8:9, 8:14, 14:6, 15:16, 18:1, 26:19, 26:23, 37:18
**Slater** [7] - 4:14, 8:9, 8:13, 14:6, 15:16, 17:5, 26:18
**Slater's** [2] - 15:4, 15:8
**small** [1] - 12:21
**SMITH** [5] - 5:13, 29:4, 34:19, 36:6, 36:9
**Smith** [3] - 3:10, 5:14, 34:21
**someone** [2] - 13:8, 24:13
**soon** [1] - 38:9
**sorry** [5] - 5:10, 18:19, 27:22, 33:14, 34:19
**sort** [5] - 8:6, 10:12, 15:7, 15:8, 23:16
**sound** [1] - 9:3
**South** [1] - 2:9

**speaking** [1] - 26:24
**specific** [10] - 12:8, 16:1, 16:5, 19:1, 24:18, 26:4, 28:1, 28:5, 31:4
**specifically** [1] - 20:18
**spelled** [1] - 22:5
**stage** [1] - 13:19
**stand** [2] - 20:10, 32:8
**stand-alone** [2] - 20:10, 32:8
**standalone** [4] - 17:16, 20:8, 20:13, 20:22
**start** [5] - 5:20, 6:11, 16:25, 23:2, 25:21
**started** [2] - 10:20, 22:2
**starting** [1] - 19:17
**STATES** [2] - 1:1, 1:8
**states** [2] - 20:9, 20:19
**status** [2] - 4:4, 7:16
**statutes** [1] - 31:3
**stay** [3] - 22:25, 23:4, 23:13
**stenography** [1] - 1:21
**stick** [1] - 25:24
**still** [4] - 5:23, 9:14, 10:2, 26:2
**stone** [1] - 23:3
**stop** [1] - 33:3
**straight** [1] - 30:16
**streamline** [1] - 33:1
**Street** [5] - 1:17, 2:3, 2:6, 2:16, 3:6
**string** [1] - 21:15
**strongly** [1] - 24:12
**submit** [3] - 13:13, 21:20, 36:21
**submitted** [5] - 12:15, 12:19, 12:24, 22:3, 22:6
**substantial** [1] - 16:8
**substantive** [2] - 9:19, 10:5
**sufficient** [1] - 14:13
**suggestion** [1] - 24:13
**suite** [1] - 3:6
**Suite** [5] - 1:14, 1:17, 2:12, 2:22, 3:3
**summarize** [1] - 6:5
**supplement** [1] - 18:17
**Supply** [1] - 31:2
**supply** [8] - 27:25, 28:3, 31:8, 31:17, 32:6, 32:10, 34:14, 35:22
**support** [1] - 14:4

**supported** [2] - 13:4, 13:22
**supportive** [1] - 12:16
**suppose** [2] - 33:19, 36:13
**supposed** [3] - 7:10, 16:22, 18:13
**surely** [1] - 25:5
**surprise** [1] - 16:18
**suspect** [2] - 8:1, 17:23
**system** [1] - 7:9

## T

**talks** [3] - 17:15, 20:6, 20:8
**target** [1] - 6:13
**technical** [1] - 14:16
**telephone** [1] - 1:5
**TELEPHONE** [1] - 4:1
**term** [3] - 19:2, 21:16, 25:2
**terms** [49] - 6:9, 6:17, 7:23, 8:3, 12:3, 12:7, 12:17, 12:20, 13:8, 13:24, 14:23, 14:24, 15:19, 15:21, 15:24, 16:9, 17:2, 17:12, 17:14, 17:16, 17:17, 17:18, 19:1, 19:11, 20:5, 20:8, 20:10, 20:13, 20:17, 20:18, 20:21, 20:22, 21:8, 21:9, 21:12, 21:14, 22:7, 22:13, 22:16, 22:21, 23:4, 23:5, 23:16, 25:3, 25:9, 25:15, 25:17, 35:8
**test** [1] - 22:16
**tested** [2] - 20:11, 20:22
**testing** [4] - 15:8, 15:18, 15:22, 16:13
**Teva** [5] - 2:23, 2:23, 5:11, 12:25, 14:9
**THE** [2] - 1:1, 1:8
**The court** [86] - 4:2, 4:9, 4:22, 5:3, 5:9, 5:12, 5:15, 6:15, 7:15, 8:12, 8:15, 9:1, 9:3, 9:16, 10:14, 11:17, 11:22, 11:24, 12:2, 13:7, 13:23, 14:1, 14:8, 14:19, 15:3, 16:20, 17:4, 17:7, 18:7, 18:20, 19:21, 19:23, 21:1, 21:20, 22:7, 22:11, 22:23, 22:24, 22:25,

23:9, 23:13, 24:3, 24:14, 24:15, 25:11, 25:13, 26:1, 26:7, 26:8, 26:17, 26:20, 27:4, 27:9, 27:22, 27:24, 28:6, 28:13, 28:17, 28:22, 29:2, 29:10, 30:9, 30:12, 31:5, 31:12, 31:14, 32:7, 32:12, 32:24, 33:2, 33:3, 33:16, 34:3, 34:11, 34:18, 35:14, 35:21, 36:7, 36:10, 36:24, 37:4, 37:8, 37:23, 37:24, 38:5
**themselves** [2] - 14:11, 29:21
**thereafter** [1] - 6:11
**thinking** [4] - 28:15, 28:17, 28:18, 28:19
**THORNBURG** [1] - 3:2
**threading** [1] - 16:15
**three** [23] - 27:17, 27:20, 28:12, 28:20, 28:23, 29:1, 29:11, 30:14, 30:15, 30:17, 30:20, 31:25, 32:14, 32:18, 32:23, 32:25, 33:7, 33:25, 34:22, 35:16, 35:21
**timeframe** [3] - 10:17, 11:3, 11:25
**today** [7] - 4:3, 7:2, 9:21, 10:11, 14:18, 24:3, 24:4
**together** [2] - 23:24, 34:1
**took** [2] - 23:10, 38:2
**total** [13] - 28:20, 28:23, 28:25, 29:1, 30:4, 30:7, 33:24, 34:15, 34:22, 35:9, 35:12, 35:16
**touch** [5] - 6:22, 7:25, 8:5, 11:12, 36:7
**TPP** [1] - 29:24
**track** [1] - 6:1
**transcript** [2] - 1:22, 38:16
**transcription** [1] - 1:22
**transcripts** [1] - 14:25
**translated** [1] - 8:3
**translation** [2] - 7:21, 8:10
**Traurig** [1] - 5:11
**TRAURIG** [1] - 2:21
**Trischler** [9] - 5:1, 12:11, 16:19, 17:4,

18:21, 19:12, 19:21, 19:23, 23:19
**TRISCHLER** [8] - 2:18, 4:25, 12:10, 13:12, 19:22, 23:25, 24:11, 25:25
**truly** [1] - 31:2
**trust** [1] - 28:11
**try** [2] - 11:13, 26:13
**trying** [5] - 8:23, 19:18, 30:15, 34:15, 35:24
**twice** [1] - 22:19
**two** [8] - 6:25, 7:18, 7:19, 10:16, 10:18, 11:3, 23:24, 36:4
**type** [1] - 29:15

## U

**ULMER** [1] - 3:5
**ultimately** [2] - 16:3, 16:8
**unanticipated** [1] - 23:17
**under** [2] - 15:11, 35:23
**understandable** [1] - 5:23
**understandably** [1] - 5:21
**understood** [1] - 25:25
**undisputed** [2] - 17:13, 23:7
**unforeseen** [2] - 23:15, 37:12
**unfortunately** [1] - 13:19
**unique** [2] - 28:4, 31:2
**UNITED** [2] - 1:1, 1:8
**unless** [1] - 27:3
**unnecessary** [2] - 13:16, 29:14
**unusual** [2] - 5:24, 33:4
**up** [14] - 6:2, 7:9, 7:16, 10:15, 13:4, 14:20, 15:9, 19:5, 25:5, 29:2, 30:5, 33:20, 33:25, 34:25
**upcoming** [1] - 6:5
**USA** [1] - 2:23
**utilize** [1] - 22:17

## V

**VALSARTAN** [1] - 1:3
**Valsartan** [1] - 4:3
**various** [1] - 8:21

**vendor's** *[1] - 16:24*
**verifying** *[1] - 36:11*
**versus** *[1] - 9:20*
**Via** *[1] - 1:5*
**VIA** *[1] - 4:1*
**via** *[1] - 4:5*
**Vine** *[1] - 3:6*
**virtually** *[1] - 19:18*
**volume** *[1] - 12:25*

## Z

**ZHP** *[13] - 2:17, 4:23, 7:20, 8:21, 22:10, 22:12, 22:19, 24:18, 24:23, 25:5, 25:10, 37:2*
**ZHP's** *[1] - 18:23*

## W

**wait** *[1] - 16:5*
**waiting** *[1] - 10:2*
**WALEKO** *[1] - 2:15*
**Wang** *[2] - 25:4*
**Wangs** *[1] - 25:5*
**wants** *[7] - 4:11, 18:17, 24:14, 31:12, 31:14, 35:14, 35:21*
**warn** *[1] - 38:2*
**warranty** *[1] - 32:23*
**Wednesday** *[1] - 1:6*
**week** *[4] - 6:24, 11:20, 27:7, 36:17*
**weeks** *[3] - 8:22, 10:1, 23:24*
**weigh** *[3] - 22:10, 24:16, 24:17*
**WHITELEY** *[5] - 2:2, 2:2, 4:18, 37:20, 37:24*
**Whitely** *[2] - 4:19, 37:20*
**wholesale** *[1] - 19:10*
**wholesaler** *[5] - 28:3, 28:4, 31:13, 33:11*
**wholesalers** *[5] - 5:8, 30:23, 30:25, 31:2, 31:10*
**WILLIAMSON** *[2] - 2:5, 4:16*
**Williamson** *[1] - 4:17*
**wondering** *[2] - 29:13, 29:19*
**WRIGHT** *[3] - 11:14, 11:19, 12:1*
**Wright** *[2] - 11:14, 11:17*
**write** *[1] - 34:25*

## Y

**year** *[1] - 10:22*
**years** *[1] - 16:17*
**yellow** *[2] - 21:12, 21:16*
**yesterday** *[1] - 21:11*