IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____)
Joseph Barth.,                         )
                          Plaintiff,   )        Civil No. 19-20755 (RBK/JS)
     v.                                )
                                       )        **Opinion**
Ajay Vulimiri,                         )
                          Defendant.   )
_____)

**KUGLER**, United States District Court Judge

Currently before the Court is the motion ["the motion"] (ECF Doc. 5) by defendant Ajay Vulimiri ["Vulimiri" or "defendant"] to dismiss the complaint of Joseph Barth ["Barth" or "plaintiff"] under Fed. R. Civ. P. ["FRCP" or "Rule"] 12(b)(6) for failure to state a claim upon which relief may be granted.  This matter arises from plaintiff Barth's counts against Vulimiri for trademark infringement (Count 1), tortious interference with contract and prospective economic advantage (Count 2), fraud (Count 3), and breach of New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq. (Count 4).

**The COURT HAVING REVIEWED** the parties' submissions without a hearing as Rule 78.1 (b) permits, and for the reasons below, and for good cause shown,

the Court **DENIES defendant's motion as to Counts 1, 2, and 3 of the Complaint (ECF Doc. 1) and GRANTS defendant's motion as to Count 4.**  An appropriate Order of this date accompanies this Opinion.

**1.0    Facts and Procedure**

This case is not the Court's first foray into the calamity known as the Asset Purchase Agreement ["the APA"] between Mr. Barth and Hit Doctor Tri-State Arsenal, LLC ["TSA"].[1]

The Court includes background about the APA only to make clear the obligations of Barth and TSA and TSA's licensees, which is relevant both to defining Vulimiri's status as a TSA sub-licensee, and to deciding the motion.

On 28 September 2017, TSA and Barth entered into the APA whereby Barth's baseball

---

[1] *See especially* in *Hit Doctor Tri-State Arsenal, LLC v. Barth et al.,* Civil Action No. 19-14579, at ECF Doc. 44, this Court's opinion denying plaintiff Hit Doctor Tri-State Arsenal's motion for preliminary injunction with temporary restraints.

training/coaching/development business ["the Business"] was sold.  It is important to get clear that the sold items included ONLY the tangibles of equipment and fixtures and certain intangibles.  The sold intangibles were: the good will attributable to the business as well as the websites, www.hitdoctor.com and www.tristatearsenal.com , the Business's social media platform web pages, such as Facebook, Twitter, and Instagram (and the Business credentials for accessing these), plus customers and other items.[2]  What was NOT sold was any intellectual property, including any trademark owned by Barth.

The APA also stated a condition precedent to the closure of the purchase, which was to occur on 13 October 2017 and comprised the execution of a Consulting Agreement and of a License Agreement between the parties.[3]  On 13 October 2017, at the closing of the APA, the parties executed the required License Agreement, and the required Consulting Agreement.

To repeat, what was NOT sold in the APA was any of Barth's trademarks.  Key to this motion is a crystal clear understanding of how the APA and License Agreement, operating together, parcel out to Barth and to TSA separate use rights to Barth's licensed trademarks.[4]  To be clear, **Barth continued to own all three marks.**  The License Agreement carved out a separate and distinct Region wherein each party could use the licensed marks.  The other party was NOT permitted to use the trademarks outside their specified Region.

**To the point, the APA and the License gave TSA an exclusive, perpetual, royalty-free, and non-cancelable license to use and to sub-license the marks ONLY within the Region of Maryland, Pennsylvania, Delaware, New Jersey, New York, Connecticut, and Florida.**  Correspondingly, **the**

---

[2] 1.3. (of the Executed APA) Intangibles. All of Seller's goodwill attributable to the Business, all telephone numbers used in the Business including but not limited to (856)354-0201, the websites www.thehitdoctor.com and www.tristatearsenal.com and all content thereon, the Business's Facebook page, Twitter handle and Instagram ID, and all other social medial platforms and all content thereon, including but not limited to those of Hit Doctor Academy and Tri-State Arsenal travel teams, prepaid advertising, leasehold improvements, supplier, vendor, **and customer lists** and information, signage, sales, lease, and service materials and records, display systems, the computer system, the telephone system, software, contacts, and all other documentation pertaining to the Business, and all warranties relating to the Assets (collectively, the "Intangibles").

[3] The APA also contained a non-competition clause by which Barth was constrained for two years after the termination of the Consulting Agreement from directly or indirectly competing **in the Region** against TSA in activities similar or related to the Business.  That is, Barth was expressly constrained from engaging in baseball coaching, recruiting or related services.  **The APA Background identified the following states as the Region:  Maryland, Pennsylvania, Delaware, New Jersey, New York, Connecticut, and Florida.**   TSA and any of its agents, including licensees, were equally constrained to engaging in baseball coaching, recruiting or related services **outside the Region.**

[4] The licensed marks included a trademark registered before the U.S. Patent and Trademark Office ["USPTO"] Registration No. 75871575, a fanciful service mark, consisting of words and logo, as pictured here.                     THE **HIT DOCTOR**                  .

The other two licensed marks are common law marks, Tri-State Arsenal and Arsenal Baseball.  Both marks were applied for before the USPTO, but did not achieve registration.  Nonetheless, as both applications evidence first use dating at least 20 years, and because of their continuous use more or less nationwide, these marks may be infringed under common law, certainly in New Jersey, in the Region, and outside the Region.

**APA and the License gave Barth the right to use these marks outside of the Region, that is, outside Maryland, Pennsylvania, Delaware, New Jersey, New York, Connecticut, and Florida**[5] To be clear, the License Agreement precluded Barth's use of the licensed marks in the Region, even though Barth continued to own the marks.

### 3.0    Legal Standard

To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to state a claim for relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining the plausibility of a claim is a "context-specific task" (*Iqbal*, 556 U.S. at 679) in which the court, drawing on its judicial experience and common sense, conducts a three-step analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Such analysis focuses on the factual allegations in the complaint to separate out and deny merely possible claims while retaining the plausible ones. *Iqbal*, 556 U.S. at 679.

The court's analysis is sequential:

first, identifying the pleading standard of the claim, that is, those factual elements a plaintiff must plead to state a claim (*Santiago*, 629 F.3d at 130 [*quoting Iqbal*, 556 U.S. at 675]);

second, disregarding those factual allegations that are not well-pleaded—that is, "are no more than conclusions"—because a court cannot assume these are true (*Id.* at 131 [*quoting Iqbal*, 556 U.S. at 680]); and

third, accepting as true all well-pleaded factual allegations and reasonable inferences drawn from these and assesses against the pleading standard "whether they plausibly give rise to an entitlement for relief." *Id.* [quoting *Iqbal*, 556 U.S. at 680]; *Land v. Helmer*, 843 F.Supp. 2d 547, 550 (D.N.J 2012).

In summary, the court looks to the face of the complaint, takes well-pleaded allegations there as true and views them in a light most favorable to the non-moving party (here, Barth). It then assesses whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224,231 (3d Cir. 2008) [*citing Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)].

---

[5] TSA and Barth are parties to an action before this Court in which TSA has pleaded trademark infringement. In that action, TSA disputes there the meaning of the term Region, which Barth opposes. However, since Region as a disputed term has not been resolved in the TSA-Barth action, the Court relies here on the precise wording of the agreements to identify the Region. Such reliance does not implicate the Court's construction of a disputed term, but rather respects the plain language of the agreements TSA and Barth actually executed.

4.0    Analysis

As a preliminary matter, this Court acknowledges its subject matter jurisdiction here because the action pleads a federal question relating to trademark infringement—that is, 28 U.S.C. 1331 is operating here with 15 U.S.C. 1115(a).  The Court acknowledged its general, personal jurisdiction over the defendant because he is domiciled in New Jersey.  This Court also has supplemental jurisdiction over the New Jersey state law claims for tortious interference with contract and prospective economic advantage, fraud, and trade secret misappropriation pursuant to 28 U.S.C. 1367(a).

4.1    Trademark Infringement (Count 1)

Since the APA, License Agreement, and Consulting Agreement between TSA and Barth gave Barth **continued ownership of the three marks but limited Barth's use of the marks to outside of the Region, it is axiomatic trademark law that anyone who uses the licensed marks outside the Region without Barth's express written approval would be liable for trademark infringement.**  Thus, a proper understanding of the use rights of Barth's licensed trademarks is the required foundation to deciding whether Barth has pleaded in his complaint a plausible entitlement to trademark infringement relief.

To properly plead trademark infringement under federal trademark law, the Lanham Act, for either a registered mark under 15 U.S.C. §1114, or an unregistered mark under 15 U.S.C. §1125(a), requires a plaintiff to demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 210 (internal citation omitted).

For the fanciful, Hit Doctor mark, the trademark registration demonstrates its validity and legal protectability.  For the marks Tri-State Arsenal and Arsenal Baseball, Barth's trademark applications show that Barth had used them at least from June 1999 for his baseball programs, etc.  Such long, continued use creates a presumption for at least regional and nationwide protection, especially when considering these marks were also domain names used <u>nationally</u> by Barth before the execution of the APA.  Put succinctly, Tri-State Arsenal and Arsenal Baseball, both as a 20-year in use common law mark and as a domain name used nationally, create a rebuttable presumption of national infringement rights, even though TSA now owns the domains names of Tri-State Arsenal and Arsenal Baseball.

Marks "are confusingly similar if ordinary consumers would likely conclude that [they] share a common source, affiliation, connection or sponsorship." *A & H Sportswear, Inc.*, 237 F.3d at 216

...

[*quoting Fisons Horticulture v. Vigoro Indus.*, 30 F.3d 466, 477 (3d. Cir. 1994)].  Although typically relying on a ten- factor test to assess the likelihood of confusion (*A & H Sportswear, Inc.*, 237 F.3d at 212 [*citing Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (1983)]), the Third Circuit has stated if "the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself." *Interpace,* 721 F.2d at 462.  *See also A & H Sportswear, Inc.*, 237 F.3d at 214 *[* "If products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves."].  Indeed, the first and most important factor is "the degree of similarity between the owner's mark and the alleged infringing mark." *E.A. Sween Co., Inc.*, 19 F. Supp. 3d at 569.

      Here, the marks are exactly the same because TSA licensed Barth's marks as per the APA and the License Agreement and then sublicensed them to Vulimiri.  Using the same marks outside the licensed Region would create likelihood of confusion because Vulimiri is a competitor to Barth and it would be impossible to tell who is the licensed user and who is not outside the licensed Region.

      Vulimiri's arguments about the insufficiency of the complaint do not appear to express a correct understanding of the APA and License Agreement between TSA and Barth.   From Vulimiri's Reply (ECF Doc. 10), it would appear that Vulimiri considers that, since he is operating **from a New Jersey base** that he is using the licensed marks within the Region.

      Paragraphs 17 to 19 of Barth's Complaint (ECF Doc. 1) pleaded with sufficient clarity that Vulimiri is using the marks Barth licensed to TSA in violation of the APA and License Agreement, that is, Vulimiri is using the Licensed Marks to market his baseball programs outside the Region Licensed to TSA.   In a motion to dismiss, this Court has been reluctant to rule upon the interpretation of agreements.  *See Everett Laboratories, Inc. v. River's Edge Pharmaceuticals, LLC*, No. 09–3458, 2010 WL 1424017 (D.N.J. 8 April 2010) [court denied defendant's motion to dismiss since it would be premature to rule upon the nature and extent of a prior settlement agreement's terms]).  Nonetheless, having already reviewed these same agreements in *Hit Doctor Tri-State Arsenal, LLC v. Barth et al.,* Civil Action No. 19-14579, at ECF Doc. 44, this Court notes that the plain language of the License Agreement permits TSA as the exclusive licensee of the relevant trademarks to use the marks ONLY in the Region.  To be clear, the License Agreement means the marketing, advertising, and selling of baseball programs IS PERMITTED ONLY IN THE REGION.  To be clearer, Vulimiri as a sub-licensee of TSA does NOT acquire more rights than the exclusive licensee TSA.  Thus, since marketing would include online advertising, social media websites, etc., use of the marks from a base within the Region to market or operate baseball programs OUTSIDE OF THE LICENSED REGION without Barth's express permission could implicate trademark infringement.

      Accordingly, since Barth has pleaded Vulimiri's competitor status and unlicensed use of the

marks outside the Region, Barth has stated a plausible claim for federal trademark infringement and **the motion to dismiss this count is denied.**

### 4.2    Tortious Interference with contract and prospective economic advantage

The New Jersey Supreme Court in P*rinting Mart-Morristown v. Sharp Electronics Corp,* 116 N.J. 739, 751, 563 A.2d 31, 37 (1989) has specified a four-prong pleading standard for this tort:

1) the plaintiff was in the pursuit of business;

2) interference to that business was done intentionally without justification or excuse;

3) the interference caused the loss of prospective gain or anticipated economic benefits;

4) the loss caused damage.

Relative to these prongs, Barth's Complaint (ECF Doc. 1) alleges at ¶¶15 -19 that:

1)  regarding the pursuit of business: Barth has continued to operate his business of baseball training, camps, etc. after the APA and the License Agreements with TSA, to wit, that Barth has engaged a number of licensee to use the trademarks Tri-State Arsenal and Arsenal Baseball for baseball programs in states outside the Region;

2) regarding the intentionality of the business interference:  Vulimiri contacted Barth's licensees' teams outside the Licensed Territory, in states like Kentucky and West Virginia, informed them Barth had retired and that he Vulimiri had taken over running the Tri-State Arsenal National Baseball Programs, and offered price discounts to players from Barth's licensees' teams (outside the Region) to entice them to join Vulimiri's Tri-State National Scout Team;

3) regarding that interference caused loss of prospective gain:   Barth alleges Vulimiri is pilfering players from Barth's legitimate licensees' teams outside the Region;

4) regarding that the loss causes economic damage:  Barth alleges Vulimiri's pilfering is based on Vulimiri's infringing use of Barth's marks outside the Region, which threatens the economic viability of Barth's relationship with his licensees.

In ECF Doc. 5 at ¶5 Vulimiri's response alleges that" he is not in violation of any agreements because he is **operating out of** the 7 licensed territories".   While appreciating this statement is based on Vulimiri's interpretation of the APA and License Agreement, the Court looks to the plain language of the agreements for its interpretation and sees Vulimiri's allegation goes to the merits of the pleadings and not to their insufficiency.  The allegations in Barth's complaint meet the New Jersey pleading standard for this tort, and thus the Court **denies the motion to dismiss as to this count.**

### 4.3    Fraud

The New Jersey Supreme Court has specified that a properly pleaded cause of action for common-law fraud alleges these five elements:

(1) material misrepresentation of a present or past fact;

(2) knowledge or belief by defendant of its falsity;

(3) intention that another person rely on it;

(4) reasonable reliance by the other person; and

(5) resulting damages. *Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 147, 117 A.3d 1221, 1231 (2015) [*citing Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 172–73, 876 A.2d 253, 260 (2005)].

Barth's allegations of fraud in the Complaint rely on paragraphs cited above and on ¶ 33:

Vulimiri is infringing Barth's trademarks in violation of the APA and the License Agreement;

Vulimiri is representing himself as the director of the Tri-Stat Arsenal Baseball Program to persons outside the Licensed Region;

Vulimiri told potential licensees located outside the Region that Barth has retired, and that

Vulimiri is offering discounts to Barth's licensees' players, all of which are intentional acts, are presumably reasonably relied on by these persons, and which will result in probably loss of Barth's economic advantage to use his trademarks without confusion outside the Region.

Vulimiri in his Reply (ECF Doc. 10) repeats his interpretation of the APA and the License Agreement, which he uses to base an argument that this action lacks merit and should be dismissed. Again, Vulimiri's arguments go to the merits of the action and not to the insufficiency of the pleaded elements of fraud. In particular, Vulimiri neither denies the allegations made in the Complaint nor demonstrates that his alleged actions and statements were done or made unintentionally. Whether Vulimiri is or not liable for trademark infringement or tortious interference of business relations or fraud (which is the heart of the dispute between the parties) is not the issue in a motion to dismiss. Rather, such a motion concerns only whether plaintiff has pleaded sufficient facts in the complaint for this Court to determine whether a plausible cause of action exists. In this motion, the Court does not decide the merits of the actual dispute between the parties. Accordingly, Barth has alleged sufficient facts to plead common law fraud in New Jersey and the **motion to dismiss this count is denied.**

### 4.4    Breach of New Jersey Trade Secret Act, N.J.S.A. 56:15-1, et seq.

The New Jersey Trade Secret Act defines trade secret as:

*information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process, that:*

*(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and*

*(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.*

In his Complaint (ECF Doc. 1) at ¶¶7-8, Barth alleges that in 2017 he hired Vulimiri to design a website for his business, Hit Doctor New Generation, Inc. He further alleges that during that project, Vulimiri secretly and without authorization copied Barth's extensive mailing list of baseball players, clients, and business contacts, and used the list to steal business from Barth. Those allegations sufficiently plead that the mailing list constitutes to Barth a trade secret as defined in point (1) above of the statute.

However, these facts do not plead sufficiently efforts to maintain the mailing list as secret from Vulimiri, as required in point (2) above. Such efforts typically include notice that the information is secret or a confidentiality agreement and/or putting the list in a credentialed vault, such as with a password, etc. Importantly, what is not pleaded is whether Vulimiri, as part of his work on Barth's website, had access to Barth's mailing list ; and if so, at what point in 2017 Vulimiri was working with the mailing list; whether the mailing list was a sold asset as defined by the APA §1.3[6] ; and what efforts Barth made to notify Vulimiri the list was secret and to preserve its secrecy.

These missing facts are notable because the execution date of the APA was 28 September 2017. If Barth's mailing list was not an asset sold in the APA, that has not been alleged. If Barth's mailing list was an asset sold in the APA and Vulimiri had access to the mailing list only after the execution date of the APA, there is a question as to whether Barth has standing to plead misappropriation of the list. If Vulimiri had access to the mailing list before the execution date of the APA and there were unambiguous efforts to keep that list secret, then the Complaint does not yet allege sufficient facts to support a plausible claim of relief of trade secret theft under this statute. Moreover, even if the mailing list was a sold asset and Barth, regarding it as a trade secret, exercised efforts to keep the list secret from others than TSA, those facts also have not been alleged.

---

[6] *See supra* note 2.

Accordingly, since the count in Barth's complaint of a breach of New Jersey Trade Secret Act, N.J.S.A. 56:15-1, et seq. does not state a claim upon which relief can be granted, **the motion to dismiss this count is granted without prejudice.**

Further, in this Circuit, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Therefore, in the accompanying Order of this date, plaintiff is given a deadline by which to amend this count in the complaint.

5.0   Conclusion

For the reasons stated herein, Vulimiri's motion to dismiss is **DENIED** as to Barth's counts of trademark infringement, tortious interference with contract and prospective economic advantage, and fraud but is **GRANTED** without prejudice as to Barth's count of breach of New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq.

Dated:  27 May 2020                               /s Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge