UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____          CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION                   1:19-md-02875-RBK-JS

_____          ORAL ARGUMENT AND RULINGS
                                       ON DISPUTES RAISED IN
                                       PARTIES' MAY 26, 2020
                                       LETTERS [DOCKET NOS. 439,
                                       440]
                                       (Via telephone)


        Wednesday, May 27, 2020
        Commencing at 11:00 a.m.

B E F O R E:                    THE HONORABLE JOEL SCHNEIDER,
                                UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey 07068
        For the Plaintiff

        LEVIN PAPANTONIO
        BY:  DANIEL A. NIGH, ESQUIRE
        316 S. Baylen, Suite 600
        Pensacola, Florida 32502
        For the Plaintiff

        GOLOMB & HONIK PC
        BY:  RUBEN HONIK, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania 19103
        For the Plaintiff

        Karen Friedlander, Official Court Reporter
             friedlanderreporter@gmail.com
                  (856) 756-0160

        Proceedings recorded by mechanical stenography;
     transcript produced by computer-aided transcription.

```
 1   A P P E A R A N C E S: - CONTINUED

 2       KANNER & WHITELEY LLC
         BY:  CONLEE S. WHITELEY, ESQUIRE
 3            LAYNE HILTON, ESQUIRE
         701 Camp Street
 4       New Orleans, Louisiana 70130
         For the Plaintiff
 5
         GOLDENBERG LAW PLLC
 6       BY:  MARLENE J. GOLDENBERG, ESQUIRE
         800 Lasalle Avenue
 7       Suite 2150
         Minneapolis, Minnesota 55402
 8       For the Plaintiff

 9       DUANE MORRIS LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
10            ALEXANDRA WALEKO, ESQUIRE
         30 S. 17th Street
11       Philadelphia, Pennsylvania 19103
         For the Defendant ZHP and the Joint Defense Group
12
         PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
13       BY:  CLEM C. TRISCHLER, ESQUIRE
         One Oxford Centre, 38th Floor
14       Pittsburgh, Pennsylvania 15219
         For the Defendant Mylan and the Joint Defense Group
15
         GREENBERG TRAURIG LLP
16       BY:  LORI G. COHEN, ESQUIRE
              VICTORIA DAVIS LOCKARD, ESQUIRE
17       3333 Piedmont Road, NE, Suite 2500
         Atlanta, Georgia 30305
18       For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
19       Pharma, Inc.

20       BARNES & THORNBURG LLP
         BY:  SARAH E. JOHNSTON, ESQUIRE
21       2029 Century Park East, Suite 300
         Los Angeles, CA 90067-2904
22       For the Defendant, CVS Health Co.

23       ULMER & BERNE LLP
         BY:  JEFFREY DANIEL GEOPPINGER
24       600 Vine Street
         Suite 2800
25       Cincinnati, OH 45202
         For the Defendant, AmerisourceBergen
```

*United States District Court*
*Camden, New Jersey*

1    <u>**A P P E A R A N C E S: - CONTINUED**</u>

2        CIPRIANI & WERNER, P.C.
         JESSICA M. HEINZ, ESQUIRE
3        450 Sentry Parkway, Suite 200
         Blue Bell, PA  19422
4        For the Defendant, Aurobindo Pharma USA, Inc., Aurolife
         Pharma, LLC and Aurrobindo Pharma, Ltd.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (ALL PARTIES VIA TELEPHONE, May 27, 2020, 11:00

2   a.m.)

3          THE COURT:  We're on the record.  This is the

4   Valsartan MDL litigation, Docket No. 19-2875.  The Court

5   understands that there are in excess of 35 or so people on the

6   phone.  That's fine.  The Court assumes only leadership

7   counsel is going to speak.  For the benefit of the court

8   reporter, please state your name before you talk.  We'll get

9   their entries of appearance.  If anyone else wants to speak,

10  that's fine, just make sure you announce your name before you

11  speak so the court reporter can take it down.  But for

12  purposes of the entries of appearance, why don't we just get

13  leadership counsel to enter their appearances.

14          So start with plaintiff.

15          MR. SLATER:  Good morning, Your Honor, Adam Slater

16  for plaintiffs.

17          MR. NIGH:  Good morning, Your Honor, Daniel Nigh for

18  plaintiffs.

19          MS. WHITELEY:  Conlee Whiteley on behalf of

20  plaintiffs.

21          MR. HONIK:  Good morning, Your Honor, Ruben Honik for

22  plaintiffs.

23          THE COURT:  And defendants.

24          MR. GOLDBERG:  Good morning, Your Honor, this is Seth

25  Goldberg from Duane Morris on behalf of the ZHP entities and

1   defendants.

2          MS. COHEN:  Good morning, Your Honor, this is Lori

3   Cohen with Greenberg Traurig on behalf of Teva and defendants,

4   and also Miss Lockard, Victoria Lockard is on the phone as

5   well, and she may be speaking on some topics as in the past

6   conferences.

7          MR. TRISCHLER:  Good morning, Your Honor, Clem

8   Trischler on behalf of Mylan Pharmaceuticals.

9          MS. JOHNSTON:  Good morning, Your Honor.  This is

10  Sarah Johnston on behalf of CVS Pharmacy and the retailer

11  defendants.

12         MR. GEOPPINGER:  Good morning, Your Honor, Jeff

13  Geoppinger at Ulmer & Berne on behalf of AmerisourceBergen and

14  the wholesaler defendants.

15         THE COURT:  All right.  I think that's all the

16  leadership counsel.

17         Counsel, I received your letters.  We have a meaty

18  agenda for this morning's call.  We'll get through it.  We're

19  on schedule for I think a two o'clock call with Judge Kugler.

20  There might be some issues in the letters that we're not going

21  to address on this call, we'll address this afternoon, but we

22  can address any issues the parties want to raise.

23         With regards to the letters, I would suggest we start

24  with the order in Mr. Slater's letter.  I think that makes

25  sense, and we'll go through the agenda in the order that

1    Mr. Slater set out.  But, of course, if there's any issues

2    that the parties want to raise on this call, they're free to.

3         So let's start with Mr. Slater's letter.  The first

4    issue is the Aurobindo, Hetero production issue.  Of course,

5    the Court has no objection to the agreed-upon date for the

6    relevant discovery and I think the only issue is when

7    Aurobindo is going to produce its documents and if they're

8    going to do a rolling production.  Is that right, Mr. Slater?

9         MR. SLATER:  I think Ms. Hilton is going to address

10   this one for us, Your Honor.

11        MS. HILTON:  Good morning, Your Honor, Layne Hilton

12   on behalf of plaintiffs.  Yes, that is correct.  We had, in

13   the context of meeting and conferring about the beginning of

14   the relevant start date, we had proposed to both Hetero and

15   Aurobindo a completion date for core discovery on I think

16   June 25th.  Both Hetero and Aurobindo asked for July 31st

17   deadlines for completion of core discovery, and with respect

18   to Hetero, we were amenable to such a request because Hetero

19   made additional commitments to produce rolling documents by

20   the dates that we set forth in our letter.

21        There was an open issue with Aurobindo.  We had a

22   meet and confer with counsel on Friday and we had made a

23   request that we could -- if we could receive some commitments

24   of dates certain by which we could receive some portions of

25   their core discovery, you know, we may be amenable to the

1    July 31st date.  But absent some commitment, we were concerned

2    that we would receive everything on July 31st, and that's sort

3    of the only outstanding dispute if -- unlike with -- sorry --

4         THE COURT:  Can I just ask a point of clarification,

5    counsel?  So it sounds like you have everything worked out

6    with Hetero.  Are they going to make a rolling production

7    between whatever date it starts and July 31st?  Is that what

8    you agreed to?

9         MS. HILTON:  Yes, Your Honor.  And Hetero has

10   actually, prior to even the commencement of the discussions

11   with them about the relevant start date, Hetero had been

12   producing core discovery, I believe, in April and in May.  So

13   we had already received some core discovery from them, and so

14   I think the only -- and I'll let counsel for Hetero speak on

15   that.

16        The only -- you know, we have some outstanding things

17   that they had collected that are in line for production, but

18   because we had agreed to a January 1st, 2011 start date for

19   the relevant period, there were some additional documents they

20   had to go back to their client and collect, and that was why

21   they asked for a July 31st completion date.

22        THE COURT:  So is it fair to state that at least with

23   regard to Hetero, the parties have an agreement or

24   understanding about the date documents are going to be

25   produced, with a completion date of no later than July 31st?

```
 1          MS. HILTON:  Yes, Your Honor.

 2          THE COURT:  Okay.  Aurobindo counsel, what say you?

 3          MS. HEINZ:  Good morning, Your Honor, this is Jessica

 4   Heinz for Aurobindo Limited.  I had a good meet and confer

 5   with Layne Hilton.  We discussed exactly what she said.  We

 6   are open to a rolling production probably similar to what

 7   Hetero has agreed to.  I just don't -- I'm waiting on

 8   confirmation from my clients about how soon we can get the

 9   documents that they've asked us to prioritize.

10          I was hoping I was going to hear from them before the

11   conference today but I have not yet.  So I'm still hopeful

12   that we can agree to rolling production deadlines before

13   July 31st and have that be the final deadline.  Unfortunately,

14   I haven't heard from them yet.

15          (Cross talk.)

16          THE COURT:  Counsel, here's the Court's ruling.  I

17   have said in the past that Aurobindo, at least its related

18   companies, as the Court understands it, has been aware of this

19   litigation for months.  It's been aware of the Court order

20   regarding core discovery, and we're going to hold Aurobindo's

21   feet to the fire.  They knew about this conference, they had

22   an opportunity to get in touch with you.  I don't know why

23   they didn't.

24          The Court's order is going to provide that Aurobindo

25   has to provide a rolling production as of June 30th, July 15,
```

1  with a completion date of no later than July 31st, okay?

2  That's what the Court's order is going to say.

3          This has been going on too long.  It's time to close

4  this loop and it will be closed no later than July 31st.

5          Next issue.

6          MS. HEINZ:  Thank you, Your Honor.

7          THE COURT:  The API and Manufacturing Defendant Fact

8  Sheets.  Obviously, this is a meaty issue.  And let's see if

9  we can address it.

10          Not quite sure how to do it, but Mr. Slater, just

11  globally, what -- I read the letter.  Help the Court

12  understand globally what the issue is.  Is the issue that

13  defendant doesn't want to answer these questions in the fact

14  sheets because they say they're going to produce the documents

15  and plaintiffs can get the information from the documents, and

16  if so, what questions are we talking about so we can

17  specifically address them.

18          MR. SLATER:  Thank you, Your Honor.  I'll just --

19  I'll answer the global question then when we get into the

20  specifics.  Two other members of our executive committee will

21  walk through the specifics if we have to get that done.

22  That's really, as Your Honor frames it, the main holdup is

23  that there were several questions where we're trying to trace

24  the medications back or the drugs back to particular lots and

25  batches which should be able to be done, and to be able to

1   figure certain information out, such as, you know, date of

2   manufacture and things like that, which will help us for

3   important product ID issues for the liability case.  And

4   really, we hope for this compromise to try to help you cut to

5   the chase on this, to say, look, if you don't want to tell us

6   exactly what the answer is, at least don't make us rustle

7   through the entire forest to find out which tree answers this

8   question, and we did a test case during the meet and confer

9   where the defense sent a spreadsheet that would help to answer

10  one of our requests, and we said, well, why don't we model

11  this that way going forward so you at least tell us which

12  spreadsheets or which documents the answers are in so that we

13  save a lot of time, we don't risk having incomplete or

14  inaccurate answers.  And really, nobody is the worse for wear

15  if we have certainty and we move through their efficient

16  state.

17          We're not sure if the defense is accepting that

18  because they haven't gotten back to us on the specific

19  request, and we were hoping that was a good compromise.

20          THE COURT:  One of the issues or problems that I'm

21  wrestling with is I'm trying to understand how this fits with

22  Paragraph 5 in the order the Court entered on January 28th,

23  Docket No. 360.  That particular paragraph was recited in

24  defendant's letter where the Court took a middle ground about

25  this product tracing issue.

```
 1           I don't quite have my arms around how that
 2   Paragraph 5 relates to this fact sheet issue, if it does.
 3           Are they apples and oranges or are they related?
 4           (Cross talk)
 5           MR. SLATER:  I think it is, to some extent, apples to
 6   oranges, because again, we're not asking for a reproduction of
 7   anything.  We're not asking for a duplicate production of
 8   anything.  We're asking, through the DFS, as Your Honor is
 9   well aware, to link up on a case-specific level, specifics of
10   a plaintiff's case and where the document production will be
11   millions of pages, it makes a lot more sense for the parties
12   to be on the same page as to which information specifically
13   applies to a specific plaintiff.
14           THE COURT:  Okay, I'm -- should the -- is the best
15   way to approach this to look at the particular questions at
16   issue?  I'm still trying to --
17           MS. WALEKO:  Your Honor, if I may, just one second,
18   this is Alex Waleko of Duane Morris on behalf of the ZHP
19   defendants.  I'll be addressing this issue on behalf of the
20   manufacturer defendants today.  And I think possibly the most
21   efficient way to get to this issue is if I could have a chance
22   to explain what the manufacturer defendant has agreed to
23   provide at this point in time and kind of describe what
24   exactly what the dispute is, and then I do think it makes
25   sense to go through these particular disputed questions and
```

1  the redlines that we attached to our filings, because they are

2  the kind of specific issues about each of the questions.

3       THE COURT:  Counsel, that's fine.  I think that's a

4  good idea, just to sort of -- to preface what we're going to

5  talk about.

6       Are the questions at issue what you set out at Page 8

7  of your letter, are those the questions at issue?

8       MS. WALEKO:  Let me see what Page 8 says.  Those

9  are -- those are some of the questions that here we also

10 attached a redline as Exhibit D.  To start, I think it helps

11 us to first explain the types of information that the

12 manufacturer defendants had already agreed to provide.

13      The questions that are not currently in dispute,

14 which are shown in Exhibit D and Exhibit E are the questions

15 that go towards what we've been calling product identification

16 information.

17      As Mr. Slater just mentioned, one point that's the

18 main goal with this fact sheet is to try to trace the

19 individual pills that each plaintiff received upward through

20 the supply chain all the way down to the specific batch of

21 APIs that ended up in that plaintiff's pill.

22      And to do that, the manufacturers have agreed to

23 provide product identification information and that is

24 information such as the lot and batch number for the Valsartan

25 -- the date of manufacture, the date of sale, the customer,

1    the date of expiration, et cetera, that type of data that

2    would facilitate plaintiffs in their goal of trying to trace

3    that product through the supply chain to identify who are the

4    relevant defendants, who manufactured this product, and --

5             THE COURT:  Okay.  Counsel, could I ask for some

6    clarification here?

7             So you've said you're going to identify -- well, the

8    defendants are going to identify the lot, batch number,

9    customer.  Does that -- in the first instance, are you talking

10   about the plaintiff has to identify for you some initial

11   information for you to provide that information?

12            MS. WALEKO:  Yes.  That's been plaintiff's plan and

13   -- with the way that the supply chain works in the generic

14   drug market, the idea is that plaintiff currently proposed

15   four fact sheets directed toward the four different levels of

16   the supply chain.  So one towards the retailers, one to the

17   wholesalers and then one to the finished dose and API

18   manufacturers, one to each of them, respectively.

19            And the idea is that the retailers will start with

20   the information provided in the Plaintiff Fact Sheet and the

21   retailers will respond to their own Defendant Fact Sheet and

22   then the wholesalers will go next and they'll use, you know,

23   that cumulative information and then answer their own fact

24   sheets and so on up the supply chain for the API

25   manufacturers, with the idea being that obviously the API

1    manufacturers have no way to tell independently on their own

2    which specific consumer in the United States received API from

3    which particular batch.  The idea is to trace this information

4    up the supply chain.  So the caveat being --

5            THE COURT:  Okay, so -- can I stop you there,

6    Counsel?  Get back to a question I asked.

7            Are we talking about the individual/plaintiffs who

8    are going to be identified pursuant to Paragraph 5 of that

9    order I mentioned?

10           MS. WALEKO:  Yes, yes.

11           THE COURT:  Okay.  So there is a relationship between

12   Paragraph 5 and the fact sheet then, right?

13           MS. WALEKO:  There is.  And, Your Honor, going back

14   to Paragraph 5 of the fact sheet.  This dispute about the

15   appropriate scope of the fact sheet, you know, it goes all the

16   way back to January before the Court issued that ruling.  So,

17   you know, this might sound like somewhat of a similar dispute

18   and that's because this is the argument at that January case

19   management conference.

20           The Court already heard this issue and the Court, you

21   know, decided it and whether it is the Defendant Fact Sheet to

22   this product identification information.

23           THE COURT:  Okay.  So in the first instance, there's,

24   what, how many people, approximately, are going to be

25   identified in Paragraph 5, about 40 plus or minus are we

1  talking about?

2           MS. WALEKO:  I think -- my understanding of the total

3  of Paragraph 5 would come to 54 plaintiffs because it is the

4  class representatives of which I believe there are 24 economic

5  loss and 10 medical monitoring and then Paragraph 5 also

6  allows 20 personal injury plaintiffs.

7           So 24, 10 and 20 is 54.

8           And one point on that I did want to mention that I

9  think it is very critical context for why the manufacturers

10 are so concerned about --

11          THE COURT:  Hold on.  Hold on, Counsel.  Before we

12 get to arguments, please let me understand the whole

13 background, okay, because it will help me understand your

14 argument.

15          Now we have 54 plaintiffs and pursuant to the order,

16 these 54 plaintiffs are going to produce, in my words, every

17 piece of paper they have regarding the Valsartan, et cetera,

18 prescriptions they got, right?  Whatever product ID

19 information they have is going to be produced to the

20 defendants, right?

21          MS. WALEKO:  Correct.

22          THE COURT:  All right.  In the first instance, the

23 retailer is going to answer -- well, who answers first, the

24 retailer defendant?

25          MS. WALEKO:  That is my understanding of the plan,

1    Your Honor.

2         THE COURT:  Okay.  Retailer defendants answer as to

3    these 54 people and then it goes up the supply chain

4    eventually to the finished dose manufacturers and the API

5    manufacturers, right?

6         MS. WALEKO:  Correct.

7         THE COURT:  And what plaintiff is looking for is

8    whatever traceability information the manufacturers have that

9    relate to the product that these particular plaintiffs got

10   from, say, Walgreens or a Walmart, right?

11        MS. WALEKO:  Correct.

12        THE COURT:  Okay.  So at least with regard to the

13   product ID traceability information we're talking about, we're

14   talking about the manufacturers only, quote unquote, my words,

15   only have to address at least in this initial stage,

16   hopefully, information just for these 54 people, right?

17        MS. WALEKO:  Yes, and there is -- I would like to add

18   some context to that.

19        THE COURT:  Okay.  Now I'm going to turn the floor

20   over to you.  You explain the defendants' position and now I

21   can better understand your argument.

22        MS. WALEKO:  Sure.  Thank you, Your Honor.

23        So as I mentioned, the manufacturers have agreed to

24   provide that type of product identification information that

25   would allow the plaintiff to trace their product to the supply

 1   chain.  And I think one extra point about these 54 plaintiffs

 2   and doing this exercise is that it's important to remember

 3   that for most of these plaintiffs, they receive Valsartan many

 4   times over a period of years.  So we're seeing a lot of

 5   plaintiffs who received a refill on their prescription every

 6   30 to 90 days over many years.  So for each of these

 7   plaintiffs, they've probably received several hundred bottles

 8   of Valsartan and this product identification exercise would

 9   have to be performed for each of those bottles to confirm

10   where did they come from, et cetera.

11         And so even though the world of plaintiffs has been

12   annexed at this point to 54 plaintiffs, this will be quite a

13   burden of exercise that the manufacturers have already agreed

14   to engage in and have agreed to answer questions in the fact

15   sheet.

16         Now, where the dispute is --

17         THE COURT:  Can I ask you a question, Counsel?

18         MS. WALEKO:  Sure.

19         THE COURT:  In order for your clients to try and

20   attempt to do this traceability analysis, will you be getting

21   the information you need?  In other words, if you get a batch

22   number, you know, some sort of number from the retailer up the

23   food chain, can your client then trace it to a particular

24   batch, when it was made, where it was made?

25         MS. WALEKO:  That is -- I think there are two --

1   really two questions there.  The first and easier question is,

2   if we, if we as the manufacturers deal with these, the lot and

3   batch number from the wholesaler or the retailer, then yes, we

4   can provide additional information.  If we have the lot or

5   batch number, we can answer questions about when that lot or

6   batch was manufactured, to whom it was sold, the expiration

7   date, the date of sale, et cetera.

8          However, the main question, though, is can the

9   manufacturers or retailers provide that lot or batch number

10  information to the manufacturers, and my understanding is that

11  the Wholesaler and the Retailer Fact Sheets are still under

12  negotiation.  I think this is an issue that's going to come up

13  or has come up in their macro discovery briefing that's not

14  been completed yet.

15         But my understanding is that the industry does not

16  track lot and batch number in this way, and so the

17  manufacturers have agreed to provide this information and have

18  continued their good faith negotiations about what the scope

19  of their Manufacturer Defendant Fact Sheet should be.

20         But this product tracing project may ultimately prove

21  quite difficult, if not impossible.  And so that is one of the

22  issues as to that case.

23         THE COURT:  Two questions for you.  In order for your

24  clients, the finished dose and the API manufacturers, to

25  provide the traceability information that plaintiffs are

1    looking for, what is the absolute minimum information you must

2    -- your clients must have to do the search?  Is it a lot or

3    batch number?  Is it something else?  And clearly, if that

4    information is not provided to your client, can't your client

5    just say, we can't do it?

6        MS. WALEKO:  It is -- I believe that we cannot answer

7    both of these questions without receiving the lot and batch

8    number from responses and other areas, other Defendant Fact

9    Sheets.  And that is actually why -- we have designed the fact

10   sheets so that we do answer right off the bat, yes/no whether

11   the manufacturers are able to identify the lot and batch

12   number based on the information that they have received, and

13   plaintiffs have agreed to those questions.

14       And, I mean, just for more context, the reason that

15   this product tracing becomes so complicated is based on the

16   records I've seen from the ZHP defendants, ZHP manufactures

17   multiple batches and multiple lots per day and sells to many

18   customers, and so without that type of precise lot and batch

19   information, it honestly -- it does become really complicated

20   and product identification could be a hole that is very

21   difficult for the plaintiffs in this case.

22       THE COURT:  It seems to me that this is a pretty

23   critical area and I'm querying you whether you said you think

24   the lot and batch number is the minimum information you need.

25       Have you rolled up your sleeves with your clients

1    under the difficult circumstances we're all working with to

2    give a definitive answer to the Court and the plaintiffs that

3    at an absolute minimum, no question about it, unless we have

4    the lot and batch number, we can't give you what you want?

5    Are you prepared to make that representation to the Court and

6    to the plaintiffs?

7          MS. WALEKO:  Yes, Your Honor.  My conversations with

8    our client, their level of visibility then goes down to when

9    they sell a batch of API to another client like Teva or

10   Torrent, they don't even know that that's a big guide in use

11   in the United States market.  That's really where their

12   visibility ends.  So without lot and batch information, at the

13   very least -- I mean, I think it is impossible for defendants

14   to provide this type of plaintiff-specific, this is the pill

15   that ended up in this plaintiff's hands in New Jersey

16   information.

17         THE COURT:  Okay.  So, I interrupted you.  If you

18   want to continue, Counsel.

19         MS. WALEKO:  Sure.  I think I was just getting to

20   framing where the real dispute is, because I mentioned we have

21   agreed to provide and answer these product identification

22   questions, to the extent we're able to, from the information

23   we've received, from the supply chain and plaintiff.

24         The dispute here is that plaintiff wants the

25   defendant actually to go beyond these product identification

1    questions and also requires the manufacturer to then review

2    their own productions and identify other categories and other

3    specific documents that are potentially relevant to that

4    plaintiffs' case.

5           So, for example, the manufacturers have agreed to

6    identify, say, the, you know -- the manufacturers have agreed

7    to provide the product's identification information.  Once

8    they just have that information, they can go and find --

9    review those testing results that the manufacturers produced

10   and identify the particular tests that they believe relates to

11   their case, and the object of this dispute is what the

12   manufacturers maintain that the fact sheets should be limited

13   to product identification which, as Your Honor mentioned, is a

14   critical issue and it will be a very burdensome and difficult

15   issue for the manufacturers and all of their defendants, but

16   truthfully, the Defendant Fact Sheet that the manufacturers

17   have agreed to is already going to be a time-consuming

18   process.

19          And then beyond product identification, we believe

20   that it's plaintiffs' burden to look through the documents,

21   identify what they believe is relevant to their case,

22   especially because once they have this product identification

23   information, they are equally able to sort through the

24   productions and find the specific documents that they're

25   interested in.

 1            And I think, getting back to Your Honor's question

 2     about Paragraph 5 of the January 28th order, and if this

 3     probably sounds familiar and it's because it was the same

 4     dispute that was at issue in January, and it is our position

 5     that the Court has already ruled on this and at that time, the

 6     manufacturers had actually asked the Court to forego the fact

 7     sheet entirely, because all of this information that

 8     plaintiffs are requesting, including the information

 9     visibility necessary to trace product and show product ID

10     would be available to plaintiffs in the documents that the

11     manufacturers are producing.

12            THE COURT:  Okay.  Can I stop you there, Counsel?

13            MS. WALEKO:  Sure.

14            THE COURT:  Because maybe we ought to get into the

15     specific questions at issue, but let me take in your letter,

16     Mr. Slater's letter, what seems to me to be the clearest

17     issue, and I'm referring to Page 6, Section D.

18            Defendants want to know the date of the recall

19     notices, right?  I could be wrong, but I would suspect that

20     your clients can press a button and get a printout of that

21     very easily.  I'm getting the impression from the plaintiffs

22     that your clients are going to produce thousands if not

23     millions of documents and you want them to look through those

24     documents to pick out the recall notices and to prepare charts

25     of the dates.  To me, that makes no sense.

1          So let's use that as an example.  Let's just use the

2    recall notices as an example of -- bless you.

3          Plaintiffs want to know the date you sent the recall

4    notices.  What's so hard about that?  What's wrong with that?

5          MS. WALEKO:  Sure, Your Honor.  Well, the finalized

6    recall notices first -- that were finalized in conjunction

7    with the FDA, they have already been produced through core

8    discovery and the plaintiffs have that information, they know

9    the date at which each defendant announced their voluntary

10   recall.  That is also information that's available on the

11   FDA's website.  And it's available, historically, too, so

12   plaintiffs can see the date that that recall first announced

13   and had been updated.

14         THE COURT:  Let me ask you a question.  One of the

15   disputes that we're going to get to later on this call is

16   defendants want plaintiffs to list their medical expenses.

17   What's the difference?  Plaintiffs say, we produced the

18   medical bills.  You can find out for yourself what the

19   expenses are.  What's the difference between that issue where

20   the defendants want the plaintiffs to list their medical

21   expenses and here, the plaintiffs want the defendants to list

22   the dates of the recall notices; what's the difference?

23         MS. WALEKO:  Sure, Your Honor, I think there are two

24   differences.  One that's more legal and one that's more

25   practical.  The first difference is that we're requiring the

1  plaintiffs to tally up their medical expenses.  That's

2  consistent with the plaintiff's obligation in every case to do

3  a calculation of the damages that they're seeking, and then

4  second, from a more practical standpoint or an efficiency

5  standpoint, I think there's obviously a difference to having

6  each individual plaintiff type up, you know, calculate the

7  damages they're seeking and provide that information in a --

8  in a, you know, in one spot, versus having the same small

9  group of defendants to answer the same question not just 54

10  times, but potentially, you know, 250 times because they have

11  to do it 42 times per plaintiff.  And so it's kind of a

12  question of where is the most efficient place to allocate that

13  burden, given the nature of these cases and the types of

14  questions that are being asked.

15         THE COURT:  Counsel, I'll give you an A-plus for a

16  valiant try, but in the Court's view, there's absolutely no

17  difference between what the defendants are asking the

18  plaintiffs to do and what, at least as to this one example,

19  and what the plaintiffs are asking the defendants to do.

20         Anyway, what's the best way to proceed now?  Do we go

21  to the particular questions at issue?

22         MS. WALEKO:  I think so, Your Honor.  I think it

23  makes sense for everyone to look at Exhibit D to the

24  defendant's filing because there are some unique issues, and

25  if the Court is inclined to order that the defendants actually

1   can include from it the disputed questions, there are some

2   specific issues with each question as to the wording that

3   might be changed, and I also think, you know, maybe the

4   question that the dates of the recall notices might be -- it

5   has a different burden than some of the other questions that

6   are in dispute.

7          THE COURT:  I picked the easiest example.  I have --

8   I have Exhibit D and E in front of me.

9          Could we address E first?  I defer to you.

10         MS. WALEKO:  Sure, Your Honor.  I think, I think

11  Exhibit E makes sense because the finished dose manufacturer

12  version is almost identical except it has a couple of extra

13  questions in it.

14         THE COURT:  Okay.  Let's go one by one.  We'll hear

15  your argument, we'll hear Mr. Slater's argument and we'll get

16  a ruling.

17         MS. WALEKO:  Sure.  The first redline that you'll see

18  on the first page of Exhibit E is about the time to respond.

19         THE COURT:  Let me just -- oh, 90 days.  Let's save

20  that.  Let's deal with the substantive issue.  We'll deal with

21  the timing issue later.

22         MS. WALEKO:  Okay.  Then the next issue on the second

23  page of Exhibit E as we go through these levels on the side,

24  the first question is asking the defendants to identify the

25  nitrosamine testing performed on the accepted API, and this is

```
 1   -- again, this is an example of the type of information that

 2   is equally available to plaintiffs once they have the product

 3   identification information and the type of information that

 4   becomes, you know, an unfair burden on the defendant to kind

 5   of -- to respond to the same question multiple times for

 6   plaintiff and over and over again on -- ultimately, it is

 7   plaintiff's burden to prove their own case and to find these

 8   documents.

 9          THE COURT:  Let me just hear from Mr. Slater.  So I

10   just want to make sure.  With regards to this particular

11   question, we're only, in my words, "only" referring to the

12   information that the 54 plaintiffs were going to provide.  Is

13   that right?

14          MS. WALEKO:  Yes.

15          THE COURT:  Okay.  So before we turn it over to

16   Mr. Slater, in the normal course of things, when a defendant

17   produces documents, if this Court asks all plaintiffs, I don't

18   mean to limit it to defendants, defendant or plaintiffs, to

19   require the parties to identify the responsive Bates numbers

20   to the request.  So if the Court did that for this question,

21   it would effectively be the same, wouldn't it?

22          MS. WALEKO:  I'm sorry, Your Honor, I don't think I

23   fully understood what that question was.

24          THE COURT:  If I understand the issue right, and I'm

25   making this up.  Plaintiffs are going to -- I'm sorry,
```

1    defendants are going to produce, I'm picking a number, 200,000

2    testing documents, okay?  Not all of those -- some of those

3    but not all of those relate to the products of the 54

4    plaintiffs.  Defendants want plaintiffs to go through those

5    200,000 documents to identify the testing relevant to the 54

6    plaintiffs.  Is that right?

7            MS. WALEKO:  That's right, Your Honor, and I think

8    this is an excellent example, too, of the benefit that

9    plaintiffs received 200,000 test results, and I think that

10   might be high.  ZHP, for example, has manufactured about a

11   thousand batches of Valsartan API under its --

12           THE COURT:  No, I said documents.

13           (Cross talk.)

14           MS. WALEKO:  So that was -- the plaintiffs would like

15   the defendants to go through for each lot or batch that the

16   plaintiffs received and it might be 30 different lots or

17   batches over the course of several years that they took the

18   drug and pinpoint each testing result that that -- that

19   applied to that plaintiff product.

20           And I think that's a great illustration of how it

21   burdensome it is for the defendants to answer even one of

22   these fact sheets because if you remember that at the same

23   time, you know, defendants have to be focusing on working up

24   their own defenses and working up their own cases, and what

25   this type of question is doing is shifting the burden of

 1  finding the relevant documents and proving plaintiff's case to

 2  the defendant, and it's something that's going to be

 3  incredibly difficult, especially with the pace that the Court

 4  wants to get these cases resolved.

 5          THE COURT:  I want to -- before I turn it over to

 6  Mr. Slater, I just want to make sure I got it right.

 7          Hypothetically, I'm making this up, there's 200,000

 8  pages of documents regarding testing that the defendants have

 9  done.  That's all the -- that's the universe of testing

10  documents.  Some of those 200,000 documents relate to the 54

11  plaintiffs, but not all of them.

12          Defendants' position is that the plaintiffs should

13  look through those 200,000 documents to try and find the

14  documents that relate to the 54 plaintiffs that we're

15  concerned about.  Is that what the defendants' position is?

16          MS. WALEKO:  Yes.

17          THE COURT:  Okay.  Mr. Slater, let's hear from you.

18          MR. SLATER:  Judge, as they do in the Congress, I'm

19  going to give up my time to Ms. Goldenberg and Mr. Williamson

20  on our executive --

21          (Court reporter asks counsel to repeat.)

22          MR. SLATER:  I'm handing off, Your Honor, to

23  Ms. Goldenberg and Mr. Williamson who are prepared to argue

24  the specific points here, so I don't want to -- it's their

25  issue, so I'm going to hand off to them, if that's okay.

 1          THE COURT:  Sure.

 2          MS. GOLDENBERG:  Your Honor, this is Marlene

 3   Goldenberg.  Good morning.  And I think, you know, you kind of

 4   hit the nail on the head.  We're not asking them to itemize a

 5   number of things for us.  We're really just looking for them

 6   to go to plaintiffs, the right place.  You know, if these

 7   documents have been produced, then that's it, it makes their

 8   job a lot easier and they can just give us a base number, but

 9   it's not always clear, you know, which document relates to

10   which batch, and to ask us to just jump in and guess at that,

11   it's really a waste of our time when we are trying to be

12   efficient and move towards trial specifically.

13          So if we're able to just resolve this quickly by

14   having the defendant say, here's where you get this

15   information and it's only for 54 plaintiffs, that seems like a

16   reasonable compromise for both sides.

17          THE COURT:  The first issue we're dealing with,

18   Ms. Goldenberg, is Roman Numeral II, capital D on Page 2 of

19   Exhibit E.

20          Does that particular question relate to this issue

21   that we're -- we've been talking about for the past few

22   minutes?

23          MS. GOLDENBERG:  And I just want to make sure I'm in

24   the same place as you, Your Honor.  Exhibit E, Section II,

25   Sub D as in dog, is that right?

```
 1          THE COURT:  Yes.  That's the same issue we've been
 2  dealing with.
 3          MS. GOLDENBERG:  Right.
 4          MR. SLATER:  Marlene, it's Section B actually.
 5          THE COURT:  No, it's Roman Numeral II, capital D.
 6  I'm in the redline version, Exhibit E.
 7          MR. SLATER:  I apologize, Your Honor.
 8          THE COURT:  D as in dog.
 9          MS. GOLDENBERG:  Yes.  I think the short answer, Your
10  Honor, is that your section is yes, it all relates to what we
11  were just talking to.  It's our understanding, especially with
12  the defendants being in the superior place of knowledge of
13  understanding how this works and where the testing was done,
14  you know, if this were an individual case, we could just order
15  an interrogatory or a request for production and they would be
16  required to identify these documents by Bates number.
17          So I don't think that we're adding any additional
18  burden to what would normally be expected in a litigation.
19          THE COURT:  The Court's ruling on this issue is that
20  the defendants' objection is overruled.  The Court struck a
21  compromise between the party's respective positions when it
22  limited the number of, in my words, traceability analysis that
23  had to be done.  We started with apparently the number 54 now,
24  which is a fair compromise, given the scope of the case.
25          The defendants haven't established that this would be
```

1    an undue burden, and in the normal course of things when

2    defendants produce documents, voluminous documents, which they

3    undoubtedly will in this case, it's this Court's practice and

4    I think it's in accordance with the case law, to require

5    parties to identify the Bates numbers of the particular

6    documents that are responsive to a particular request.

7            So there would be no additional burden by, in the

8    Court's view, having the defendants respond to the particular

9    inquiry as an issue.

10           So the objection to Roman Numeral II, D, Page 2, as

11   we just argued, is overruled.

12           Next issue, defendant.

13           MS. WALEKO:  So, this next -- the next redline on

14   this page actually I think -- I think there might not be a

15   dispute about this one or -- this one question asks for the

16   date of manufacture two times, and so the defendants deleted

17   the second time it asked for it.  But I'll let Ms. Goldenberg

18   clarify, if that's okay.

19           MS. GOLDENBERG:  As long as you did it once, we're

20   fine.

21           MS. WALEKO:  Yes.

22           Okay.  So I believe the next disputed issue is on the

23   third page of this exhibit.  And unfortunately, it looks like

24   we deleted several sections and they got lumped into a single

25   comment bubble here.

1          So, Your Honor, the first question here, if you read

2     that comment bubble, it says:  "Identify the data you collect

3     and store as part of electronic data interchange 867

4     charge-back report."

5          (Cross talk.)

6          MS. WALEKO:  That is -- my understanding is that it

7     is -- that it is an electronic platform used that some

8     companies may use to handle purchase orders and charge back

9     other transactional data, and our position on this question is

10    a little different than what we had been arguing for the past

11    few minutes.

12         Although plaintiffs try to phrase this question as

13    something plaintiff-specific, we get data fields and a type of

14    data stored through this electronic data interchange is not a

15    plaintiff-specific question and it is an issue that is being

16    handled and should be handled through the meet and confers

17    regarding sales and pricing information.

18         In fact, the original document request that the

19    plaintiffs served on the manufacturers requested similar data

20    fields and charge-back reports.  Those were formerly Request

21    No. 109 and 111 and plaintiff withdrew those requests before

22    the requests were finalized by the Court, and so our position

23    is that this information is more appropriately handled through

24    the sales and pricing negotiations and also specifically

25    withdrawn from the frontline document requests, and those

1    should be handled through those ongoing meet and confers about

2    the types of sales and pricing information that the plaintiffs

3    need on a global basis.

4          THE COURT:  Plaintiff?

5          MS. GOLDENBERG:  This is Marlene Goldenberg.  I was

6    going to popcorn to Layne Hilton or Dave Stanoch on this one.

7          THE COURT:  You're going to have to hurry up and talk

8    before the Court --

9          MS. HILTON:  Your Honor, Layne Hilton on behalf of

10   plaintiff.  I haven't looked at this but, you know, my

11   understanding is we are in the process of meeting and

12   conferring on the global sales and pricing data.  And so to

13   the extent that the request is something that defendants

14   intend to negotiate with us on an aggregate basis in a good

15   faith manner, I think, you know, we are amenable to that.

16         But as will be discussed later on, I guess in the

17   hearing, you know, we have some general issues with the sales

18   and data production and so, you know, with the proviso that

19   whatever the Court decides or rules on with respect to the

20   aggregate sales and data production, you know, I think we are

21   open to having those meet and confers.

22         THE COURT:  Objection sustained on the defendants.

23         This should not be included in the fact sheet but

24   we'll reserve the discussion of this particular issue when we

25   get to the sales and pricing discussion.

1          Defendant, next issue.

2          MS. WALEKO:  Sure.  The next question, Your Honor, is

3    a little past that little paragraph symbol in the bubble and

4    it starts with:  "State whether you supplied each test result

5    identified in response to Question II(B) for the FDA to any

6    other entity or person, et cetera."

7          I think this question initially fell within the

8    defendants' position that this is the type of information that

9    plaintiffs are equally capable of identifying, but

10   understanding that Your Honor has overruled that objection, I

11   think there are parts of the language here that need to be

12   changed.

13         One, is that it says:  "To any other entity or

14   person, e.g., your actual or prospective customers or

15   defendants."  We maintain that that should be edited to say:

16   "Your actual customers or defendants."

17         THE COURT:  "Prospective customers" is certainly an

18   overbroad term that really doesn't belong in these fact

19   sheets.

20         That could be anybody, right?

21         MS. WALEKO:  Yes, and it's overbroad and it's vague

22   so we do think it should be limited to "actual customers or

23   other defendants," to the extent that their not just one and

24   the same.

25         THE COURT:  Agreed.  Agreed.  Aside from that, is

 1    there any -- knowing the Court's ruling previously, is there

 2    any other objection to this particular question?

 3           MS. WALEKO:  Not for that particular question, Your

 4    Honor.

 5           THE COURT:  Okay.  The next question is:  "The dates

 6    of the recall notices."  Can you tell the Court why this

 7    should not be included, other than you think plaintiffs should

 8    look through defendants' documents, the documents that the

 9    defendants are going to produce, because the Court is inclined

10    just to order the defendants to produce this because it's just

11    so easy.

12           MS. WALEKO:  Sure, Your Honor, that was our objection

13    to this question.  So I understand the Court's ruling on that.

14           THE COURT:  Objection overruled as to the recall

15    objection.

16           Next question is:  "Identify all drugs to have

17    recalled or otherwise identify it as actually or potentially

18    contaminated."

19           I mean, don't we know what drugs have been recalled?

20    Isn't that basic information everybody knows?

21           MS. WALEKO:  Well, Your Honor, our position on this

22    question is it is actually duplicative of several of the other

23    questions of the Defendants' Fact Sheet.  So the other

24    questions -- you know, the question right before it says:

25    "Provide the date on which you sent the recall notice that

1    apply to any of the affected drugs," meaning the drugs that

2    this plaintiff took.  So that question already answers whether

3    the affected drug was recalled, and similarly, the second half

4    of Section F, defendants should identify if the drugs were,

5    quote, actually or potentially contaminated.  And that's

6    answered by the identification of the testing information.  I

7    think the testing results speak for themselves, and there

8    would be, you know, what constitutes, quote, contamination in

9    terms of -- it's a disputed issue in this case and so, the

10   defendants' burden at most should be to identify those testing

11   results, not to take a stance on what contamination means.

12          And I'll also note that the plaintiffs did agree to

13   delete this question from the API's Defendant Fact Sheet, but

14   it is still in the finished dose one.

15          THE COURT:  Plaintiff, do we have a dispute about

16   this?

17          MS. GOLDENBERG:  Your Honor, I think that we can

18   probably work to merge the information into another question

19   so that we don't have anything that's duplicative.  But, from

20   our standpoint, it's our understanding that they haven't

21   tested every batch.  So what we're looking for here is their

22   knowledge about whether or not a particular batch was

23   contaminated or was not, and that's going to be an important

24   issue for us later, if they're going to take a position that

25   only some of this was affected.  It would be important for us

1    to know if that's going to be their position early on.

2          But, if their position is that if something is

3    recalled, then it is probably contaminated, I think we can

4    live with that and we can merge that into another question.

5          (Cross talk.)

6          THE COURT:  I don't want to take the wind out of your

7    sails, defendants, but the defendants have made their position

8    clear throughout the course of this litigation, so there's no

9    need for you to repeat what you already stated a thousand

10   times.

11         MS. WALEKO:  Thank you, Your Honor.

12         THE COURT:  This question:  "Identify all affected

13   drugs that you have recalled or otherwise identified as

14   actually or potentially contaminated."

15         I mean, everybody knows what drugs have been

16   recalled, so I don't see why that has to be answered again,

17   and "actually or potentially contaminated" is just too broad.

18         Objection sustained.

19         Let's go to the next question:  "Were any drugs

20   returned to your possession as a result of a recall letter."

21         Plaintiff, what are you getting at here?

22         MS. GOLDENBERG:  Your Honor, this is aimed at helping

23   us understand whether or not the pills in the particular lot

24   or batch that were taken by our clients still exist and

25   whether or not they might be available for testing.

```
 1          THE COURT:  Well, why don't you ask them -- why don't
 2   you ask it that way?
 3          (Laughter)
 4          MS. GOLDENBERG:  We can if that would be easier.
 5          THE COURT:  I mean, you stated it so clearly on the
 6   phone.
 7          MS. GOLDENBERG:  Sometimes I get it right on my
 8   second try.
 9          THE COURT:  I think you're entitled to know if
10   samples of the same exact drugs is limited to the 54
11   plaintiffs are existing.  I mean, both sides probably want to
12   know that.  So if you could phrase the question as clearly,
13   Ms. Goldenberg, as you just discussed on the record, that
14   would be great.
15          MS. GOLDENBERG:  I would be happy to, Your Honor.
16          MS. WALEKO:  And, Your Honor, just two points on this
17   as well.  So question also 8 asks for the date that the
18   defendants regained possession of the drug and also the
19   current location.  We don't think that those issues are
20   relevant and they just become, you know, one extra piece of
21   information that we would be required to answer over and over
22   through each Defendant Fact Sheet.
23          And second, I did want to note that the API
24   Manufacturer Defendant Fact Sheet asks this question about the
25   API and finished dose affected drugs, and so that language I
```

 1  think needs to be corrected on that fact sheet.

 2          THE COURT:  You mean as opposed to just the 54

 3  plaintiffs?

 4          MS. WALEKO:  No, we asked the API manufacturers

 5  whether any finished dose drugs were returned to them, and I

 6  don't think that makes sense to ask the API manufacturers --

 7  makes sense to ask that of the finished dose manufacturers.

 8          THE COURT:  As opposed -- okay.  You think it's the

 9  question that the finished dose people have to answer and not

10  the API people?

11          MS. GOLDENBERG:  I think it ends up as to the

12  finished dose.

13          Alex, you can correct me if I'm wrong, but I think

14  what you're saying here is the API should only have to answer

15  if API was referring to the finished dose manufacturer should

16  only have to answer if they refused the finished dose product

17  back?

18          MS. WALEKO:  Correct.  Thank you, Ms. Goldenberg.

19          THE COURT:  I agree with that.  I don't think the API

20  people should have to answer if something went to the finished

21  dose manufacturing people.  The finished dose people are going

22  to answer that question.

23          MS. GOLDENBERG:  Certainly we only want each

24  manufacturer to have to answer about what they have in their

25  own possession.  We aren't sure if there might be a customer

1   who would have returned a finished dose product to an API

2   manufacturer, and so that's the reason that was in there.

3           THE COURT:  All right.  So, I think the clarification

4   that the defendants wanted, each group is going to answer just

5   as to their own group, right?

6           MS. GOLDENBERG:  Yes, each group would answer as to

7   what's in their possession, right.

8           THE COURT:  Right.

9           Any other dispute we haven't ruled on?

10          MS. GOLDENBERG:  Your Honor, I think it was just what

11  Ms. Waleko got up and said, the return --

12          (Court reporter asks counsel to repeat.)

13          MS. GOLDENBERG:  I apologize, this is Marlene

14  Goldenberg again.

15          The only issue that we hadn't gotten a ruling on yet

16  was whether or not the defendants had to provide information

17  about the dates that they got their API back, and to me, this

18  just seems like basic chain of custody information, but I

19  would think it would be tracked in every case, and so that's

20  the reason that we had asked for that information as well.

21          THE COURT:  Agreed.  It should be relatively easy to

22  obtain if the first question is answered whether you have it.

23  It's certainly easy to obtain when they gathered and where it

24  is.  So that has to be provided.

25          Any other questions or issues regarding Exhibit E?

1        MS. WALEKO:  Yes, Your Honor.  The next issue is

2   actually reflected in the redline to Question G.  Starts about

3   how to answer only if plaintiffs answer yes.  The question --

4        THE COURT:  Yes, I understand this question.  Here's

5   how I think it should be dealt with.  I'm looking for the

6   easiest way out.  The plaintiffs should speak to their clients

7   and ask them if they've been in contact with any other

8   defendant, and if the answer is yes, the plaintiffs should

9   identify those individuals for the defendants and the

10  defendants should search for the information they have

11  regarding those contacts.

12       I think that makes so much more sense than having the

13  defendant search 54 people when it would be so much easier for

14  the plaintiffs to identify which of the 54 the defendants have

15  to search for information.

16       So what I'm saying is, Plaintiffs, the burden is on

17  you in good faith to talk to your clients.  If they answer

18  yes, that they've been in contact with any of the defendants

19  regarding the recall, et cetera, give those names to the

20  defendants and then the defendants have to search for the

21  responsive information regarding that contact.  I think that's

22  a fair compromise on this issue.

23       Any objection, Defendants?

24       MS. GOLDENBERG:  No, Your Honor.  That's the position

25  we were advocating for and that's what Question III.B.7 in the

1  Plaintiffs' Fact Sheet asks the plaintiffs whether they have

2  ever contacted any of these defendants.  So that's what that

3  language was designed to capture and I think Your Honor --

4          THE COURT:  Okay.  I'm sorry, is that already in the

5  Plaintiffs' Fact Sheets?

6          MS. GOLDENBERG:  That question is in the Plaintiffs'

7  Fact Sheets.

8          THE COURT:  Oh, great.  So then it's simple, you get

9  a positive answer to that question because the answer is going

10 to be under oath, the defendant should then search for those

11 particular plaintiffs which, at best, is a subset of 54.  Hard

12 to believe that all 54 contacted the defendants, maybe a

13 handful did, but if so, they did under oath then.  It seems

14 reasonable to require the defendants to track down those

15 communications.

16         MS. GOLDENBERG:  Your Honor, I think from the

17 plaintiffs' perspective, if I could just tell you why we care

18 about this.  What we're trying to avoid is, you know -- or we

19 want to make sure that -- ideally, before trial, we want to

20 make sure we have an understanding of what information the

21 defendants have on our clients, and sometimes contacts can go

22 one way from the manufacturer to our clients in the form of

23 letters.  I've had clients send me letters that they've gotten

24 from the manufacturer where the manufacturer has requested

25 that they send the pills back or that there are some kind of

 1    offers to, you know, and that come with forms that they want

 2    to sign where this might waive their legal rights if they send

 3    their pills back and get a certain amount of money from the

 4    manufacturer.

 5              To the extent the defendants have tried to reach out

 6    to our clients and that's, you know, a one-way communication,

 7    I think that we're entitled to any information that they have

 8    concerning our clients or any attempts they've made to get in

 9    touch with them, and that's the reason that we had pushed back

10    on this question.

11              THE COURT:  Well, I agree that if the defendants

12    reached out to the plaintiffs, you need to get those

13    communications, but, in the first instance, the plaintiffs

14    should check with their clients whether that, in fact,

15    occurred, because this way, the defendants don't have to

16    search 54 people when they may not all be relevant to your

17    question.

18              If the plaintiffs have a client who says, yeah, I

19    remember getting communications or a form letter from the

20    defense, from somebody, but I really can't say who it was or

21    when, then the defendants would have to search.

22              But if the plaintiffs say, no, I never received any

23    communication, why should the defendants then search for that

24    particular person.

25              MS. WALEKO:  Your Honor, this is Alex Waleko again.

1    I think that's correct.  And one other thing I'd like to point

2    out is, one of the finalized document requests does require

3    the manufacturers to produce all communications that they sent

4    to any consumers in the United States.  And so -- this

5    particular question, too, seems like something that plaintiffs

6    are actually better equipped to look at those documents and

7    determine whether, you know, it's their name or their address

8    in any of those communications.

9         MS. GOLDENBERG:  Yeah, I mean, there has been

10   instances where if a defendant has an address wrong for a

11   plaintiff, or they have an e-mail address wrong, they might

12   have served that communication and our client might not have

13   gotten it.

14        What I don't want to have happen is we get to trial

15   and the defendants raise something, like, well, we tried to

16   reach out and tell them that maybe they should stop taking

17   those drugs and the communication never made it to our client

18   and we've never gotten that document because our client didn't

19   know it was supposed to reach them.

20        THE COURT:  The Court ruled on this issue.  We're in

21   speculation territory now, Plaintiff.  If your client

22   represents that they received a communication from the

23   defendant that they don't have a copy or can't track it down,

24   the defendant has to search for that, and if there's a

25   particular plaintiff who answers in their fact sheet that,

```
 1   yes, they were contacted by the defendant or, yes, they

 2   communicated with the defendant on their own, then the

 3   defendant has to search for the communication.

 4        But the burden in the first instance is on the

 5   plaintiff to identify those particular plaintiffs who had

 6   communications.

 7        Next issue, are there any?

 8        MS. WALEKO:  There are more, Your Honor.  The next

 9   issue is the comment bubble that's all the way at the bottom

10   of this Page 8.  Search for personal injury cases.  This is

11   the question about alternate causes.

12        THE COURT:  Are you on Exhibit E?

13        MS. WALEKO:  Still on Exhibit E.

14        Oh, I'm sorry, Page 3.  I was looking at the wrong

15   page number.

16        THE COURT:  Okay.  Where should I be looking for this

17   particular question?  Oh, here it is.  I have it.

18        MS. WALEKO:  This is the question to defendants to

19   identify alternate causes and this question is just --

20        THE COURT:  Doesn't this have to be provided in your

21   defendants' expert report?

22        MS. WALEKO:  Yes, our position is that it's premature

23   to answer -- to see the Defendant Fact Sheet and that should

24   be answered and provided at the same time as the expert

25   report.  So we would --
```

1          (Cross talk.)

2          THE COURT:  Objection sustained.  The question is

3     deleted.

4          Next issue.

5          MS. WALEKO:  The next issue is that same comment

6     bubble, you'll see it starts with the header "Documents."

7          THE COURT:  "We get these," blah, blah, blah.

8          MS. WALEKO:  And actually, unfortunately, the bubble

9     got cut off because it was -- I think it's because it was too

10    long, but there were four or five document requests at the end

11    of the fact sheet and defendants, all of them, are covered by,

12    you know, the very fulsome document requests that the Court

13    has already finalized regarding the manufacturers, and so our

14    position is that we should not be --

15          (Cross talk.)

16          THE COURT:  This is Judge Schneider.  Objection

17    sustained.  I think we already went through the document

18    request long ago.  It was fulsome, extensive.  It's hard to

19    conceive that there are documents that are included with this

20    fact sheet draft that haven't already been requested, so

21    objection sustained.

22          Does that take care of Exhibit E?

23          MS. WALEKO:  Yes, Your Honor, that takes care of

24    Exhibit E other than the time to respond which you were going

25    to return to.

1          THE COURT:  Okay.  Let's talk about that.

2          Plaintiffs, what say you?

3          MS. GOLDENBERG:  I'm sorry, on Exhibit E, Your Honor?

4          THE COURT:  Yes.  The fact -- when do the defendants

5     have to answer the fact sheet?  What's plaintiffs' position?

6          MS. GOLDENBERG:  So, we had originally proposed 30

7     days, defendants proposed 90.  We had offered to compromise at

8     45, but they're holding at 90.  The problem with the 90-day

9     turnaround, Your Honor, is that we're looking at three

10    different 90-day periods that each of the defendants was

11    awarded this amount of time to answer, and then we're going to

12    be looking at nine months before any single plaintiff has a

13    completed Defendant Fact Sheet, and that just seems like too

14    long, especially since we were to crystallize the issues today

15    on the phone call and simplify what the defendants have to

16    provide.  I think that 45 days for each level of this is more

17    than sufficient time.

18         THE COURT:  Is it envisioned, Ms. Goldenberg, that

19    the retailers are going to answer within 45 days and then 45

20    days after that, the next group, and 45 days after that, the

21    next group.  Is that what you envision?

22         MS. GOLDENBERG:  We have -- and someone can correct

23    me if I'm wrong, but my understanding is that the retailers

24    and the wholesalers are supposed to answer together at the

25    same time followed by the finished dose manufacturers, 45 or

1    90 days later, followed by the API manufacturers, 45 or 90

2    days after that.  So it's a three-tier process.

3            THE COURT:  Okay.  Retailers, wholesalers first, then

4    the finished dose manufacturers, then the API manufacturers?

5            MS. GOLDENBERG:  Correct.

6            THE COURT:  Okay.  What is the trigger for the 45

7    days?  Let's talk -- suggest 45 days.  Let's talk about an

8    exact date.  What do plaintiffs propose?

9            MS. GOLDENBERG:  So plaintiffs propose -- so the

10   triggering event, to answer your first question, is the

11   completed Plaintiff Fact Sheet by the plaintiffs.  So the

12   plaintiffs serves the Plaintiff Fact Sheet, it goes to all the

13   defendants and that starts the clock on the first tier of the

14   Defendant Fact Sheet for the wholesalers and pharmacies.  So

15   that would be -- let's start with --

16           THE COURT:  So it would be 45 days from -- this will

17   be attached to a Court order approving the fact sheet, right?

18           MS. GOLDENBERG:  Correct.

19           THE COURT:  Okay.  So let's hear defendants'

20   position.

21           MS. WALEKO:  Sure, Your Honor.  Our position is that

22   this type of granular and very detailed information is going

23   to be quite difficult for the defendants to collect and

24   provide, and so that's the reason that we're asking for 90

25   days.  And again, it's important to remember that even though

1   that there's 54 plaintiffs, we really have to do this product

2   ID exercise and now also identify additional documents

3   multiple times for each of those 54 plaintiffs and so that

4   will be a time-consuming process.

5          And because the trigger date will be first the

6   completion of the Plaintiff Fact Sheet and that, you know, for

7   each supply chain level, the completion of the Defendant Fact

8   Sheet for the preceding supply chain defendant, what's going

9   to end up happening is that likely most if not all of these

10  Defendant Fact Sheets will have to be answered at one time

11  because we are so much farther ahead with the Plaintiff Fact

12  Sheets right now.

13         And so the defendants are looking at a situation in

14  which they're asked to provide this detailed information for,

15  you know, each of the 25 -- out of the pills that each of the

16  54 plaintiffs received more or less at the same time, and

17  that's obviously going to be an incredibly time-consuming

18  process and so 90 days really is necessary.

19         And I would also add that I actually think -- I've

20  been on all of the meet and confers, I don't think plaintiffs

21  ever actually proposed to us 30 days.  Until about two weeks

22  ago, the dispute was between 60 days and 90 days and then the

23  plaintiffs recently changed it to 45 days.

24         And I will also mention that the defendants actually

25  in Benicar, the timed response to that fact sheet was 60 days

 1    and that was a much less complicated fact sheet, because it

 2    really just asked for, you know, dear doctor letters and

 3    communications with the plaintiffs' physicians because that

 4    was a branded drug at issue.

 5              And so here we have a fact sheet that it's much more

 6    complicated and that will require a lot more time and energy

 7    for the defendants to answer, and so to give us 90 days is

 8    reasonable and, frankly, necessary.

 9              THE COURT:  I have a question for you, Defendant.

10              With regard to the information that the plaintiffs

11    have to provide in the first instance, hasn't that

12    information, for the most part, already been provided?

13              MS. WALEKO:  I'm sorry, I couldn't hear Your Honor.

14    Could you repeat that, please?

15              THE COURT:  Yeah.  I agree with you, there's some

16    background noise.  Whoever is not speaking, could you please

17    put your phone on mute and that would help the court reporter

18    and all of us.

19              But, Defendants, with regards -- the 54 plaintiffs in

20    the first instance, they had to produce all their product ID

21    information, right?

22              MS. GOLDENBERG:  Correct.

23              THE COURT:  For the most part, hasn't that already

24    been done?

25              MS. GOLDENBERG:  I believe that's been done through

 1    the Plaintiff Fact Sheet where they're required to attach

 2    pharmacy records and photos of any bottles or labels that they

 3    have in their possession.

 4         THE COURT:  The Court will give 60 days from the date

 5    of the Court order approving the fact sheet to respond to the

 6    fact sheet.

 7         I agree with you, that this is a more complicated

 8    situation than Benicar, no question about it, but on the other

 9    hand, I don't have the exact dates in front of me.  But in

10    Benicar, it just seems like the whole procedure went along so

11    much smoother that it didn't take as long as it took to

12    finalize the fact sheet.

13         Defendants have been on notice for quite some time

14    about the general nature of the information that they're going

15    to have to produce.  They should have already produced it.  We

16    have granted the defendants' and plaintiffs' concessions on

17    timing and I just think it's time that we try and bring this

18    all together.  You've been before this Court before.

19         If there's good cause when we get to 60 days for a

20    particular extension, you can make your application.  If we

21    start with 90 days, it will push out to 150 days or 120 days.

22    So I think 60 days is a fair compromise.  Even with that, it's

23    still going to take, at best, six months to get all this

24    information.  So 60 days it is.

25         MS. JOHNSTON:  Your Honor, this is Sarah Johnston for

1    the retailer defendants.  Can I just ask for a clarification?

2         THE COURT:  Yes.

3         MS. JOHNSTON:  So the -- as Your Honor knows, the

4    discovery process for the downstream defendant is trailing

5    that of the manufacturer defendant than we are.  We've been in

6    the process of negotiating the macro discovery issues and the

7    Rule 34 requests which have been teed up till the end of June,

8    that it is our understanding that plaintiffs had tabled the

9    discussion of the DFS for the retailer defendants until after

10   the Rule 34 macro discovery issues have been decided.

11        So we -- I believe, since our last decisions on that

12   DFS, which was back in March and have not received revisions

13   back, with the understanding that the issue of tables already

14   worked on Rule 34 issues.

15        So I understand and I recognize Your Honor's rule

16   regarding 60 days for completion of the fact sheets that are

17   currently under discussion, but I think it may have been

18   premature to determine the length of time that it's going to

19   take to respond to the fact sheets that is -- it's still very

20   much in draft form, at least for the retailer defendants.

21        THE COURT:  Okay.  So let's make sure this is clear

22   on the record.  Is it agreed with the plaintiff that the

23   retailer/wholesaler fact sheets, whenever they're finalized,

24   in the first instance are going to be produced first and then

25   after that, then the finished dose manufacturers go, and then

 1    after that, the API manufacturers have to answer.

 2            Is there general agreement on that?

 3            MS. JOHNSTON:  Yes, Your Honor.

 4            MR. GEOPPINGER:  Your Honor, Jeff Geoppinger for the

 5    wholesaler defendants.  Generally speaking, that sounds

 6    agreeable other than Ms. Johnston pointed out the downstream

 7    defendants don't have a fact sheet to be looking at at the

 8    moment.  But in the order of things, that seems certainly the

 9    reasonable way to go.

10            Obviously, the content of that fact sheet may affect

11    that, assuming there's not something that we would actually

12    have to have from somebody upstream to answer the questions

13    they have.  But if that's the order of proceedings and the

14    fact sheet matches with it, that seems like the reasonable way

15    to go.

16            THE COURT:  All right.  There's general agreement on

17    that.

18            And then we have to decide the macro issues for the

19    downstream parties, which if things go according to plan,

20    we're going to finalize those at the end of June, and is it

21    correct that the retailer/wholesaler fact sheets will not be

22    finalized at least until after the, quote unquote, macro

23    issues are resolved?

24            MS. JOHNSTON:  This is Sarah Johnston, Your Honor.

25    Yes, that's correct.

1          THE COURT:  Okay.  So what is wrong with saying that

2    whenever the retailer/wholesaler fact sheets are finalized and

3    the Court enters the order approving that, they have to be

4    answered.  What's wrong with that?  What am I missing?

5          MR. GEOPPINGER:  Your Honor, Jeff Geoppinger for the

6    wholesalers.  And just, Your Honor, the only caveat to that is

7    obviously we're going to bring it, your suggestion of 60 days

8    which seems like enough time, but I just mention that we're

9    saying that in the abstract because we don't know exactly

10   what's in that fact sheet yet.  But certainly, once the fact

11   sheet is entered, we will be certain at some point it needs to

12   be answered in 60 days seems, in the abstract, like enough

13   time, but again, that will all depend on what's actually in

14   that fact sheet.

15         So I would only say from our perspective and

16   Ms. Johnston may have more to add on this, but that we would

17   like to, you know, reserve our right on that date -- or that

18   time period, depending upon what the fact sheet ultimately

19   looks like.

20         THE COURT:  The order is going to say 60 days.

21         Next issue.

22         MS. WALEKO:  Your Honor, this is Alex Waleko again

23   and I just -- this might have been just covered but I wanted

24   to clarify to make sure we're on the same page because it is

25   important.  I just wanted to clarify that the trigger for the

 1   60-day deadline for the manufacturers -- for the finished dose

 2   manufacturers will be the completion of the -- for the -- you

 3   know, the completion of the wholesaler and retailers' response

 4   to their fact sheet, not the entry of the Court's order

 5   finalizing the Manufacturer Fact Sheet.

 6         THE COURT:  You are correct, Counsel.

 7         MS. WALEKO:  Okay, thank you.

 8         THE COURT:  If there is a consensus that we're going

 9   to go in this order, but that's the fact sheet, that's

10   different than the document production.

11         MS. WALEKO:  Correct.  Okay.  Thank you, Your Honor.

12         THE COURT:  Okay.  So your client has all the time in

13   the world now to get themselves in order about how to search

14   for these documents and where to look, et cetera, et cetera,

15   and they're going to have months and months to do this, so the

16   Court will be hard-pressed to understand how the fact sheets

17   can't be answered within 60 days of the trigger date, given

18   that it has months and months and months before that date has

19   been triggered.

20         So why don't we go to the next issue, and if I'm

21   correct, are we now up to Page 8 of Mr. Slater's letter

22   regarding the sales and pricing information?

23         MS. WALEKO:  Your Honor, this is Alex Waleko again.

24   I'm sorry to bring us back to the fact sheet, but there is one

25   unique question to the API fact sheet, which is Exhibit D, not

1    Exhibit E.  And understanding the Court's -- well, it is

2    Page 2 of Exhibit E.

3              THE COURT:  Got it.

4              MS. WALEKO:  And it's the fourth comment bubble down

5    that says:  "For each affected API, identify whether any

6    solvent used was"  --

7              THE COURT:  Yes.

8              MS. WALEKO:  This is again a question that is -- I

9    think it is uniquely burdensome among all of the questions

10   that have been asked in the Defendant Fact Sheet.  So we --

11   you know, the defendants -- the manufacturers object to this

12   question on the same basis that they had objected to --

13             THE COURT:  Why is it burdensome, Counsel?

14             MS. WALEKO:  Well, as it's currently written, it's

15   asking about any solvents and there are -- each manufacturer

16   uses a different set of solvents but there are multiple

17   solvents, not all of which are particularly relevant to the

18   issue, and also, this type of information is actually, at

19   least from my understanding of my own client's records, is not

20   kept in one document.  So this will actually require the

21   defendant to go through manufacturer records that are quite

22   long and complicated to identify the supplier of the

23   particular solvent used in that batch of API.

24             Because the way this works is that the drug master

25   file actually discloses the names of the solvents, you know,

 1    their chemical names, and then the approved suppliers of those

 2    solvents, but then identifying the particular solvent -- the

 3    particular solvent -- the supplier for the solvent used on any

 4    given day is not something that's retrievable by the push of

 5    the button.  It's actually quite difficult based on the way

 6    that these records are kept.

 7            THE COURT:  Hold on, Counsel.

 8            Am I correct, Plaintiff, by reading your letter, that

 9    you have offered to compromise and only list the solvents that

10    would be relevant to the contamination we're talking about in

11    this case?  Am I correct about that, Plaintiffs?

12            MS. GOLDENBERG:  Yes, Your Honor.

13            THE COURT:  Okay.  So the defendants' objection is

14    overruled with the proviso that plaintiffs are going to

15    sharpen their pencils and identify the particular solvents at

16    issue as represented in their letter.  Okay?

17            Does that take care of Exhibit E?

18            MS. WALEKO:  Yes, and we're definitely finished with

19    the fact sheet, Your Honor, thank you.

20            THE COURT:  Oh, great.  Thank you, Counsel.

21            The sales and pricing documents.  Can I give you my

22    general thoughts on that.  It seems to me that this is a very,

23    very important issue to the case and I want to make sure the

24    Court has its arms around this issue and gives it sufficient

25    time.

1        I need some time to digest this information and I

2   would suggest that we just have a separate call, just about

3   this one particular issue and only with the parties who the

4   issue concerns, and I'd like to proposes a date maybe next

5   week to give the parties additional time to meet and confer

6   about the sales and pricing information.  I think it would be

7   productive to give you more time to meet and confer and to

8   have a call just on this one issue because I can see how

9   important it is to the case.

10       I suspect we don't have any objection to that?

11       MR. GOLDBERG:  No objection from defendants, Your

12  Honor.

13       THE COURT:  Okay.  With regard to the people who are

14  at issue with regard to the sales and pricing information,

15  would it be possible to have a call next Wednesday, June 3rd,

16  at 4:00 p.m.?

17       (Cross talk.)

18       MR. SLATER:  -- on the plaintiff's side.  Everyone

19  else?

20       MR. TRISCHLER:  My apologies, Your Honor.  Clem

21  Trischler for Mylan Pharmaceuticals.  I have depositions

22  actually in Minneapolis set that day.  Would it be possible to

23  do it at 4:30, and there's a reasonable chance I'll be

24  concluded by then?

25       THE COURT:  I have no objection.  Anyone else?

```
 1            MR. GOLDBERG:  That works for ZHP.

 2            THE COURT:  Okay.  4:30 on June 3rd.  Just one issue,

 3   the sales and pricing deficiency issue, only with the parties

 4   who need to be involved in that discussion.  I was giving some

 5   thought to whether we should have individual calls, but it

 6   seems to me that some of the issues overlap, so it might be --

 7   it is more productive, I think, to have all the interested

 8   parties on the same call, okay?  So we'll deal with the sales

 9   and pricing information next Wednesday.

10            If there's any -- if you meet and confer over the

11   next week, if there's any additional information you think the

12   Court should see before that call, feel free to send it along.

13   I'm going to make sure that I'm up to speed on the issue and

14   give you -- can give it appropriate thought and consideration,

15   okay?

16            Then we're up to Issue No. 4, the macro issues.

17   There's not much to discuss there.  Because we have the

18   briefing schedule on the argument, so we can skip over that.

19            Prioritization, I've read the issue.  I don't

20   understand why there's a dispute about this, quite frankly.  I

21   think it makes perfect sense for the plaintiffs to identify

22   the documents that they're most concerned about.  In fact,

23   that's what the defendants have been asking for, and why is

24   there a problem prioritizing the production, Defendants?

25            MR. GOLDBERG:  Your Honor, this is Seth Goldberg for
```

 1    defendants.  I don't think there is a problem.  We provided a

 2    letter to plaintiffs on Friday.  We invited them to have

 3    individual meet and confers with each of the defendants

 4    because the prioritization is somewhat of an individualized

 5    issue, given that we all maintain our documents in different

 6    ways and some documents may be easier to get at than others

 7    for some defendants and it may be different for others.

 8          But we have invited them to have that meet and confer

 9    and we intend to work through with them how to prioritize.

10    They've expressed their preference and each defendant will

11    assess that with plaintiffs and hopefully get to the point of

12    having some agreed upon -- if not agreed-upon prioritization,

13    at least a sense of how the information will flow out.

14          Keep in mind that the Court ordered back in mid-April

15    plaintiffs to provide a letter on prioritization and for

16    defendants to use good faith to produce documents in a

17    prioritized way.  So I don't see that there is a dispute.

18    There is the need to have the individual meet and confers now.

19          THE COURT:  Mr. Goldberg, I have your May 22nd letter

20    from Ms. Hilton in front of me where you suggest these

21    individual meet and confers.  Well, one, I question

22    Ms. Hilton's letter was written May 7th, why hasn't this been

23    done already?  And two, I don't see any particular objection

24    by any particular defendant to what Ms. Hilton proposed.  Just

25    a general, we need to talk about it.

```
 1              MR. GOLDBERG:  Yeah, I think you're right, Your
 2   Honor.  We don't have a dispute.
 3              THE COURT:  Tell me what --
 4              MR. GOLDBERG:  Well, I don't think there is any -- I
 5   think the question is simply, if you look at Mrs. Hilton's
 6   letter, for example, they have set out a priority order,
 7   contracts and agreements, API manufacturing, quality assurance
 8   documents, finished dose manufacturing quality assurance
 9   documents, foreign regulatory documents.  Many of these have
10   already been produced, for example, the foreign regulatory
11   documents have already been produced.
12              THE COURT:  Good, good.
13              MR. GOLDBERG:  So I think what we envision, what we
14   would like to do is go through this prioritization with
15   plaintiffs on an individual basis to determine if -- for ZHP,
16   it might be easier to prioritize contracts and agreements
17   verses quality assurance, but for Torrent, it might be easier
18   to prioritize quality assurance over contracts and agreements
19   just because of how the information is kept.
20              And so we have no dispute about the notion of
21   prioritizing, it's just that -- how each specific defendant
22   prioritizes needs to be paired to how the information is kept
23   at that defendant --
24              (Cross talk.)
25              THE COURT:  This is Judge Schneider.  I'm going to
```

1    make it easy.  The Court's going to order that the priority --

2    that the defendants have to exercise reasonable good faith

3    efforts to prioritize their production in accordance with

4    Ms. Hilton's letter.  This issue has been going on for a

5    couple of weeks.  I don't want it to go on for another couple

6    of weeks.  If there's a particular problem, I'm sure you'll

7    work it out with defendant -- with plaintiff.

8          The Court's order is saying reasonable good faith

9    efforts have to be expended.  Here, plaintiffs did precisely

10   what the Court ordered them to do.  They were very specific

11   about their priorities.  On its face, it appears reasonable,

12   and it's going to be approved.

13         If you have a particular problem, work it out with

14   the plaintiff and I expect all parties to be reasonable.

15         Next issue is the plaintiff's leadership structure.

16   I think we'll discuss that this afternoon on the call at 2.  I

17   don't anticipate any problem.

18         Plaintiff Fact Sheets.  Defendants, what do we do

19   here?  I think, if I remember right, there's a 38 or 40-page

20   list of deficiencies?

21         MS. LOCKARD:  Your Honor, this is Victoria Lockard

22   from Greenberg Traurig.  So first of all, there is a -- there

23   are chart deficiencies.  Plaintiffs' team were deficient.  We

24   have met and conferred with the plaintiff.

25         At present, none of these plaintiffs are ripe for a

```
 1   show cause order.  We have 36 of them out of, you know, over

 2   250 personal injury plaintiffs.  We would like to appear on

 3   initial cause list at the June 26 --

 4           (Court reporter asks counsel to repeat.)

 5           MS. LOCKARD:  250 personal injury plaintiffs.  We

 6   currently have 36 that would be like next month -- and I'm not

 7   on speaker, but let me know if there's a problem.

 8           So we had our meet and confer.  I believe there are

 9   two key issues yet to be resolved by the Court today that

10   allow us to further narrow down --

11           (Court reporter asks counsel to repeat.)

12           MS. LOCKARD:  There are two issues that I think the

13   Court could resolve today that would help us narrow down our

14   list.  In the first you'll note is the authorizations being

15   provided.  Now, keep in mind, Your Honor, we have about 4/5ths

16   of the Plaintiff Fact Sheets have complied, even though what

17   we're seeing appears to be a rate exists, by and large, the

18   majority of plaintiffs have complied now, pretty much made

19   their complaint, but we have about a fifth of them who we have

20   identified as sufficient, and we -- the process is working.

21   We went through our meet and confer, we eliminated some of the

22   more trivial deficiencies.

23           We agreed, I believe, to alert what would be

24   considered core deficiencies and we shared that list with

25   plaintiff's counsel and that really is what's driving the list
```

1    that you have.

2         But the key issues that you could particularly help

3    us with us today are the authorizations first and foremost.

4    In some cases, you have given a blank authorization without

5    any specification of a provider.  They're in the Plaintiff

6    Fact Sheet and specifically provide that each plaintiff needs

7    to provide an authorization for each provider and, you know,

8    this was heavily negotiated, Your Honor, in the call back in

9    July of last year where you had detailed conversations about

10   which providers plaintiffs would provide authorizations for.

11        So their position now for those individuals is

12   appropriate, is directly contradictory to what they said back

13   in July which was they want a tight control over these

14   providers, that they want authorizations for just a limited

15   number, those treating the cancer and those treating the

16   hypertension and the primary care physician primarily.  And

17   because it was mentioned in that way, then they were talking

18   about a minimal burden on plaintiff to provide the canceled

19   authorization.  But I --

20        THE COURT:  I got it, I got it, I got it.

21        Plaintiff, what say you?

22        MR. NIGH:  Your Honor, this is Daniel Nigh.  I think

23   it's classified and characterized -- I don't agree with the

24   characterization on what has been listed as a core deficiency

25   in any way, or the number of plaintiffs.  I think what we're

 1   seeing in terms of the number of plaintiffs that are showing

 2   up right now are just the number of plaintiffs that are,

 3   frankly, would have ripened to this state, because that was

 4   the number of cases on file back then.  So if --

 5           THE COURT:  Could I ask a question, Mr. Nigh?

 6           MR. NIGH:  Yes.

 7           THE COURT:  If the defendants had said, for present

 8   purposes, nobody has to be listed on an order to show cause,

 9   so put that aside.  Counsel said there's two issues that are

10   ripe for decision, and from reading the papers, I agree.

11           The first issue, can you speak just to the

12   authorization issue.

13           MR. NIGH:  Absolutely.

14           THE COURT:  I think defendants are saying they want

15   authorization for each individual provider rather than one

16   generic authorization.  They've cited the approved fact sheet

17   which talks about each provider.  So tell me why the Court

18   should order the plaintiffs to comply with the Court-approved

19   fact sheets.

20           MR. NIGH:  Well, because I'm reading the PFS right

21   here, and I think what they are saying is they're providing a

22   blank authorization and signing that authorization and giving

23   the defendants permission to include which providers they want

24   to include in that authorization.  They're saying that's a

25   core deficiency, and I disagree, because they have all the

1    information that they have where they could, you know,

2    depending on which health providers they want to go out and

3    request information from, they can fill that into that blank

4    authorization.

5           There is nothing in the authorization sections I'm

6    reading that suggest that that would be incomplete.  It's not.

7    It gives them every ability to say, you have the ability to

8    fill in the health care providers that you want to fill in and

9    they can do that.

10          Now, there are some plaintiff law firms who want to

11   be a little choosier and direct specifically who the

12   defendants can request from, and those plaintiff law firms can

13   have that ability to where they can say, you can only request

14   from these health care providers and they only provide them

15   those limited authorizations.  But if anything, providing a

16   blank authorization for them to be able to fill in gives them

17   even more capability to be able to request the providers that

18   are listed in the Plaintiff Fact Sheet.  So that's not

19   exactly --

20          THE COURT:  Thank you, Mr. Nigh.

21          And on this particular issue, the Court rules in

22   defendants' favor.  It's perfectly reasonable for the

23   defendants to ask for a specific medical authorization.  I

24   don't know why the plaintiffs wouldn't want that.  It gives

25   them protection.  I don't have the fact sheet in front of me,

1    but from the language counsel read, it requires individual

2    authorizations.  So the Court ruling on that particular issue

3    is that those authorizations have to be provided.

4          Second issue, Counsel?

5          MS. LOCKARD:  Second issue is a medical description,

6    computation and that is on Page --

7          (Court Reporter asks counsel to repeat.)

8          THE COURT:  I didn't hear, let me interrupt here,

9    Counsel.  We've gone over --

10         MS. LOCKARD:  Go ahead.

11         THE COURT:  I ordered the defendants to provide the

12   specific information that plaintiffs asked for.  I'm ordering

13   the plaintiffs to provide the specific information that the

14   defendants are asking for.  Defendants want a breakdown of a

15   list of the medical expenses.  It's entirely reasonable to

16   provide that information.  It's relevant.  Defendants

17   shouldn't have to dig through and compile their own list, so

18   defendants' request is granted.  They want a summary of the

19   medical expenses claimed.  It has to be provided.

20         I don't mean to take the wind out of your sails,

21   Counsel, but we've been at this for a while.

22         MR. NIGH:  Your Honor, I think there's one additional

23   issue, though, that's current here in terms of medical

24   expenses.  So a lot of law firms do not order medical expenses

25   because it's not relevant in a products liability case

1    oftentimes at this stage.  So the way that a lot of law firms

2    are responding to this question is saying, we don't have

3    medical expenses.  That's the answer, you know, at this point.

4           So if they have them, we agree that they can itemize

5    them and send those to the defendants is the way it's asked

6    for in the PFS, but to then say that somehow the defendants

7    have to -- or the plaintiffs have to go out and get those

8    documents that they don't have, that's not required by the

9    PFS.

10          THE COURT:  Well, let's do this, then.  Absolutely,

11   hundred percent, each of the class representatives has to

12   summarize and list the medical expenses that they're claiming

13   in the case.  To me, that's a no-brainer.

14          MR. NIGH:  I agree.

15          THE COURT:  I guess the question is whether that

16   should be required of every plaintiff in the case at this time

17   of the case.

18          Defendants, can I hear your position on that?  You're

19   going to get --

20          (Cross talk.)

21          THE COURT:  Go ahead.

22          MS. LOCKARD:  It's Victoria Lockard, for the record.

23   Yes, so we believe that every plaintiff or an individual

24   personal injury plaintiff should have to provide this.  It is

25   significant information.  We need it produced, assessments

1    that we're doing for these cases.  It's elementary in any

2    personal injury case.  It just has to be provided, such so

3    that it's part of the Entry 6 initial disclosures, it's the

4    third item on the list, a computation of any damages being

5    claimed in the case.

6         So it may be that it's common practice for plaintiffs

7    in this litigation not to order their records, the daily

8    records, but just hit the documentation and evidence they need

9    to prove their case, but it shouldn't be and that's not what

10   is provided under the federal rules, it's not what was

11   discussed for this Court in July last year, and it's not what

12   is provided in the Plaintiff Fact Sheet.

13        We negotiated this, we put in a chart here, we didn't

14   hear anything back about, you know, at the time plaintiffs

15   can't provide this information.  It's part of the essential

16   core information they need to prove their case and we're

17   entitled to it.

18        THE COURT:  Can I ask for your indulgence, Counsel.

19   Are you able, relatively easily, to point me on the docket

20   where I can look at the fact sheet and a particular relevant

21   section, whatever those fact sheet says, that has to be done,

22   we're not going backwards.

23        I'm not in the office, so I don't have the fact sheet

24   in front of me handy, but can you put your fingers on where in

25   the docket the Court can look at the fact sheet?  Does anyone

 1    recall the date that that particular order was entered?

 2            MR. STANOCH:  ECF 249, filed on 10-3-19, CMO 68,

 3    Approving Plaintiffs' Fact Sheets, Your Honor.

 4            THE COURT:  Okay.  I have it right in front of me.

 5            MS. LOCKARD:  It should be around Page 17 of where

 6    the explicit listing is.

 7            MR. NIGH:  And, Your Honor, we spoke on multiple

 8    occasions that this is a request for information, but the

 9    plaintiff doesn't have the information.  That doesn't

10    necessarily -- I mean, they can be asked to request

11    information but plaintiff doesn't have it.  That doesn't

12    require them to then go and seek out that information to

13    respond to Plaintiff Fact Sheets.  That was never envisioned.

14            THE COURT:  Mr. Nigh, I think the law at least with

15    regard to documents is if documents are in your custody,

16    control, or possession, and I think it would be hard for a

17    particular plaintiff to argue that they don't have control

18    over access to their medical bills.

19            So I'm looking at G on Page 17 now, it says:  "Please

20    list all of your medical expenses," blah, blah, blah, blah,

21    blah, and it doesn't say only if those bills are in your

22    possession.

23            I think the defendants are right here, Mr. Nigh, we

24    negotiated the fact sheets a long time and those fact sheets

25    require plaintiffs to list their medical expenses, so the

```
 1    Court is going to order they have to be provided.  Okay?
 2          With regard to the fact sheet, Defendants, we
 3    addressed the two general issues you said you had.  Are there
 4    any other issues we need to deal with at the moment on the
 5    fact sheets?
 6          MS. LOCKARD:  Not at the moment, Your Honor.  I think
 7    that should get us a long way along the process.
 8          THE COURT:  The last issue is the Short Form
 9    Complaint.  Let me tell you what my thoughts are about that.
10          With regard to the defendants who have identified all
11    defendants, superficially, that's unacceptable.  I'm going to
12    order all of those attorneys to be on the phone or in person
13    -- no, this next get together is June, the middle of June.
14    I'm going to order those particular attorneys to be on the
15    phone to explain why they haven't amended their Short Form
16    Complaints to particularize the defendants they're suing.
17          Defendants, are there any other issues regarding the
18    Short Form Complaints that we need to deal with?
19          MS. WALEKO:  This is Alex Waleko again.  No, Your
20    Honor, it's just these five plaintiffs right now who have
21    failed to meet the deadline to amend their Complaint, and then
22    going forward, as additional problematic Short Form Complaints
23    come in, we have been liaison with plaintiffs' counsel to try
24    to resolve those informally.
25          So there may be additional cases in the future, but
```

1  for right now, these are the five that have not been resolved

2  by their -- a physical deadline.

3       THE COURT:  I'm hopeful that between now and the

4  middle of June when we next get together, these attorneys will

5  file amended Complaints, particularizing the defendants they

6  want to sue, but if they don't do it, we'll talk to them and

7  get some sort of explanation about what's going on.

8       That takes us through Mr. Slater's letter.

9       Are there any issues in defendants' letter that we

10  haven't addressed?  Mr. Goldberg?

11       MR. GOLDBERG:  I don't believe so, Your Honor.  I'm

12  just scanning to make sure the agenda is actually the same.

13       THE COURT:  I know we reserved on the pricing

14  information.  Again, I just see that as such an important

15  issue to the case that's going to require us really to dig

16  deep into the facts and arguments that I think a separate call

17  on that issue is warranted.

18       So we'll do that next week.  So this afternoon, I

19  know the leadership issue is before Judge Kugler.  I suppose

20  we can talk about any other issue you want to raise with Judge

21  Kugler, but he's on notice to be available for that call at

22  2 o'clock.

23       Are there any other issues while we're all together

24  on this call that we need to address?  If you can't think of

25  any but think of it this afternoon, we can address it this

```
 1    afternoon at 2 o'clock.

 2           MR. SLATER:  Your Honor, it's Adam Slater.  This is a

 3    minor detail with the prioritization as we were moving from

 4    issue to issue.  Your Honor ordered with regard to the May 7

 5    letter from Ms. Hilton.  I just wanted for the record just to

 6    add in what was in the letter to Your Honor that we had

 7    qualified our request on 8-21 to ensure that we get all of the

 8    testing results from all chromatograms and it states in the

 9    letter, but I just wanted to just place on the record and just

10    ask that that also confirms our understanding that would come

11    within your order as well.

12           THE COURT:  Thank you for clarifying that,

13    Mr. Slater.  If the May 7 priority letter as clarified and

14    supplemented by the May 21st letter, right?

15           MR. SLATER:  Yes.  Thank you, Your Honor.

16           THE COURT:  Okay.  Good.  Next item.

17           Okay.  Counsel, I appreciate your time.  We'll

18    reconvene.

19           Hopefully, is the court reporter, are you available

20    -- oh, no, Carl is going to do that, I think.

21           Okay.  There being no further issues, thank everyone

22    for their time.  We're adjourned and we'll talk to you in an

23    hour.  Thank you.

24           (1:00 p.m.)

25           - - - - - - - - - - - - - - - - -
```

1

2          I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4

5     /S/ Karen Friedlander, CRR, RMR
      Court Reporter/Transcriber
6

7     May 29, 2020
      Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| / | | | | |
|---|---|---|---|---|

**/**

/S [1] - 75:5

**0**

07068 [1] - 1:15

**1**

10 [2] - 16:5, 16:7
10-3-19 [1] - 71:2
103 [1] - 1:14
109 [1] - 33:21
111 [1] - 33:21
11:00 [2] - 1:10, 5:1
120 [1] - 52:21
15 [1] - 9:25
150 [1] - 52:21
15219 [1] - 3:14
17 [2] - 71:5, 71:19
17th [1] - 3:10
1835 [1] - 1:20
19-2875 [1] - 5:4
19103 [2] - 1:21, 3:11
19422 [1] - 4:3
1:00 [1] - 74:24
1:19-md-02875-RBK-JS [1] - 1:5
1st [1] - 8:18

**2**

2 [6] - 30:18, 32:10, 57:2, 63:16, 73:22, 74:1
20 [2] - 16:6, 16:7
200 [1] - 4:3
200,000 [6] - 28:1, 28:5, 28:9, 29:7, 29:10, 29:13
2011 [1] - 8:18
2020 [4] - 1:7, 1:9, 5:1, 75:7
2029 [1] - 3:21
2150 [1] - 3:7
21st [1] - 74:14
22nd [1] - 61:19
24 [2] - 16:4, 16:7
249 [1] - 71:2
25 [1] - 50:15
250 [3] - 25:10, 64:2, 64:5
2500 [1] - 3:17
25th [1] - 7:16
26 [2] - 1:7, 64:3
27 [2] - 1:9, 5:1
2800 [1] - 3:24
28th [2] - 11:22, 23:2
29 [1] - 75:7

2900 [1] - 1:20

**3**

3 [1] - 46:14
30 [5] - 3:10, 18:6, 28:16, 48:6, 50:21
300 [1] - 3:21
30305 [1] - 3:17
30th [1] - 9:25
316 [1] - 1:17
31st [9] - 7:16, 8:1, 8:2, 8:7, 8:21, 8:25, 9:13, 10:1, 10:4
32502 [1] - 1:18
3333 [1] - 3:17
34 [3] - 53:7, 53:10, 53:14
35 [1] - 5:5
36 [2] - 64:1, 64:6
360 [1] - 11:23
38 [1] - 63:19
38th [1] - 3:13
3rd [2] - 59:15, 60:2

**4**

4 [1] - 60:16
4/5ths [1] - 64:15
40 [1] - 15:25
40-page [1] - 63:19
42 [1] - 25:11
439 [1] - 1:7
440 [1] - 1:8
45 [11] - 48:8, 48:16, 48:19, 48:20, 48:25, 49:1, 49:6, 49:7, 49:16, 50:23
450 [1] - 4:3
45202 [1] - 3:25
4:00 [1] - 59:16
4:30 [2] - 59:23, 60:2

**5**

5 [9] - 11:22, 12:2, 15:8, 15:12, 15:14, 15:25, 16:3, 16:5, 23:2
54 [27] - 16:3, 16:7, 16:15, 16:16, 17:3, 17:16, 18:1, 18:12, 25:9, 27:12, 28:3, 28:5, 29:10, 29:14, 30:15, 31:23, 39:10, 40:2, 42:13, 42:14, 43:11, 43:12, 44:16, 50:1, 50:3, 50:16, 51:19
55402 [1] - 3:7

**6**

6 [2] - 23:17, 70:3
60 [11] - 50:22, 50:25, 52:4, 52:19, 52:22, 52:24, 53:16, 55:7, 55:12, 55:20, 56:17
60-day [1] - 56:1
600 [2] - 1:17, 3:24
68 [1] - 71:2

**7**

7 [2] - 74:4, 74:13
701 [1] - 3:3
70130 [1] - 3:4
756-0160 [1] - 1:24
7th [1] - 61:22

**8**

8 [5] - 13:6, 13:8, 39:17, 46:10, 56:21
8-21 [1] - 74:7
800 [1] - 3:6
856 [1] - 1:24
867 [1] - 33:3

**9**

90 [11] - 18:6, 26:19, 48:7, 48:8, 49:1, 49:24, 50:18, 50:22, 51:7, 52:21
90-day [2] - 48:8, 48:10
90067-2904 [1] - 3:21

**A**

A-plus [1] - 25:15
a.m [2] - 1:10, 5:2
ability [3] - 67:7, 67:13
able [9] - 10:25, 20:11, 21:22, 22:23, 30:13, 67:16, 67:17, 70:19
above-entitled [1] - 75:3
absent [1] - 8:1
absolute [2] - 20:1, 21:3
absolutely [3] - 25:16, 66:13, 69:10
abstract [2] - 55:9, 55:12
accepted [1] - 26:25
accepting [1] - 11:17
access [1] - 71:18
accordance [2] - 32:4, 63:3
according [1] - 54:19

Actavis [1] - 3:18
ACTION [1] - 1:4
actual [2] - 35:14, 35:16, 35:22
Adam [2] - 5:15, 74:2
ADAM [1] - 1:14
add [4] - 17:17, 50:19, 55:16, 74:6
adding [1] - 31:17
additional [11] - 7:19, 8:19, 19:4, 31:17, 32:7, 50:2, 59:5, 60:11, 68:22, 72:22, 72:25
address [13] - 6:21, 6:22, 7:9, 10:9, 10:17, 17:15, 26:9, 45:7, 45:10, 45:11, 73:24, 73:25
addressed [2] - 72:3, 73:10
addressing [1] - 12:19
adjourned [1] - 74:22
advocating [1] - 42:25
affect [1] - 54:10
affected [6] - 37:1, 37:3, 37:25, 38:12, 39:25, 57:5
afternoon [5] - 6:21, 63:16, 73:18, 73:25, 74:1
agenda [3] - 6:18, 6:25, 73:12
aggregate [2] - 34:14, 34:20
ago [2] - 47:18, 50:22
agree [10] - 9:12, 37:12, 40:19, 44:11, 51:15, 52:7, 65:23, 66:10, 69:4, 69:14
agreeable [1] - 54:6
agreed [23] - 7:5, 8:8, 8:18, 9:7, 12:22, 13:12, 13:22, 17:23, 18:13, 18:14, 19:17, 20:13, 21:21, 22:5, 22:6, 22:17, 35:25, 41:21, 53:22, 61:12, 64:23
agreed-upon [2] - 7:5, 61:12
agreement [3] - 8:23, 54:2, 54:16
agreements [3] - 62:7, 62:16, 62:18
ahead [3] - 50:11, 68:10, 69:21
aided [1] - 2:1
aimed [1] - 38:22
alert [1] - 64:23

Alex [6] - 12:18, 40:13, 44:25, 55:22, 56:23, 72:19
ALEXANDRA [1] - 3:10
ALFANO [1] - 3:12
ALL [1] - 5:1
allocate [1] - 25:12
allow [2] - 17:25, 64:10
allows [1] - 16:6
almost [1] - 26:12
alternate [2] - 46:11, 46:19
amenable [3] - 7:18, 7:25, 34:15
amend [1] - 72:21
amended [2] - 72:15, 73:5
AmerisourceBergen [2] - 3:25, 6:13
amount [2] - 44:3, 48:11
analysis [2] - 18:20, 31:22
AND [1] - 1:6
Angeles [1] - 3:21
annexed [1] - 18:12
announce [1] - 5:10
announced [2] - 24:9, 24:12
answer [41] - 10:13, 10:19, 11:6, 11:9, 14:23, 16:23, 17:2, 18:14, 19:5, 20:6, 20:10, 21:2, 21:21, 25:9, 28:21, 31:9, 39:21, 40:9, 40:14, 40:16, 40:20, 40:22, 40:24, 41:4, 41:6, 42:3, 42:8, 42:17, 43:9, 46:23, 48:5, 48:11, 48:19, 48:24, 49:10, 51:7, 54:1, 54:12, 69:3
answered [8] - 37:6, 38:16, 41:22, 46:24, 50:10, 55:4, 55:12, 56:17
answers [6] - 11:7, 11:12, 11:14, 16:23, 37:2, 45:25
anticipate [1] - 63:17
anyway [1] - 25:20
API [27] - 10:7, 14:17, 14:24, 14:25, 15:2, 17:4, 19:24, 21:9, 26:25, 28:11, 39:23, 39:25, 40:4, 40:6, 40:10, 40:14, 40:15,

40:19, 41:1, 41:17,
49:1, 49:4, 54:1,
56:25, 57:5, 57:23,
62:7
**API's** [1] - 37:13
**APIs** [1] - 13:21
**apologies** [1] - 59:20
**apologize** [2] - 31:7,
41:13
**appear** [1] - 64:2
**appearance** [2] - 5:9,
5:12
**appearances** [1] -
5:13
**apples** [2] - 12:3, 12:5
**application** [1] - 52:20
**applied** [1] - 28:19
**applies** [1] - 12:13
**apply** [1] - 37:1
**appreciate** [1] - 74:17
**approach** [1] - 12:15
**appropriate** [3] -
15:15, 60:14, 65:12
**appropriately** [1] -
33:23
**approved** [4] - 58:1,
63:12, 66:16, 66:18
**approving** [3] - 49:17,
52:5, 55:3
**Approving** [1] - 71:3
**April** [2] - 8:12, 61:14
**area** [1] - 20:23
**areas** [1] - 20:8
**argue** [2] - 29:23,
71:17
**argued** [1] - 32:11
**arguing** [1] - 33:10
**ARGUMENT** [1] - 1:6
**argument** [6] - 15:18,
16:14, 17:21, 26:15,
60:18
**arguments** [2] - 16:12,
73:16
**arms** [2] - 12:1, 58:24
**aside** [2] - 35:25, 66:9
**assess** [1] - 61:11
**assessments** [1] -
69:25
**assumes** [1] - 5:6
**assuming** [1] - 54:11
**assurance** [4] - 62:7,
62:8, 62:17, 62:18
**Atlanta** [1] - 3:17
**attach** [1] - 52:1
**attached** [3] - 13:1,
13:10, 49:17
**attempt** [1] - 18:20
**attempts** [1] - 44:8
**attorneys** [3] - 72:12,
72:14, 73:4

**Aurobindo** [10] - 4:4,
7:4, 7:7, 7:15, 7:16,
7:21, 9:2, 9:4, 9:17,
9:24
**Aurobindo's** [1] - 9:20
**Aurolife** [1] - 4:4
**Aurrobindo** [1] - 4:4
**authorization** [13] -
65:4, 65:7, 65:19,
66:12, 66:15, 66:16,
66:22, 66:24, 67:4,
67:5, 67:16, 67:23
**authorizations** [7] -
64:14, 65:3, 65:10,
65:14, 67:15, 68:2,
68:3
**available** [7] - 23:10,
24:10, 24:11, 27:2,
38:25, 73:21, 74:19
**Avenue** [1] - 3:6
**avoid** [1] - 43:18
**awarded** [1] - 48:11
**aware** [3] - 9:18, 9:19,
12:9

**B**

**background** [2] -
16:13, 51:16
**backwards** [1] - 70:22
**BARNES** [1] - 3:20
**base** [1] - 30:8
**based** [3] - 20:12,
20:15, 58:5
**basic** [2] - 36:20,
41:18
**basis** [4] - 34:3, 34:14,
57:12, 62:15
**bat** [1] - 20:10
**batch** [25] - 13:20,
13:24, 14:8, 15:3,
18:21, 18:24, 19:3,
19:5, 19:6, 19:9,
19:16, 20:3, 20:7,
20:11, 20:18, 20:24,
21:4, 21:9, 21:12,
28:15, 30:10, 37:21,
37:22, 38:24, 57:23
**batches** [4] - 10:25,
20:17, 28:11, 28:17
**Bates** [3] - 27:19,
31:16, 32:5
**Baylen** [1] - 1:17
**become** [2] - 20:19,
39:20
**becomes** [2] - 20:15,
27:4
**beginning** [1] - 7:13
**behalf** [10] - 5:19,
5:25, 6:3, 6:8, 6:10,

6:13, 7:12, 12:18,
12:19, 34:9
**Bell** [1] - 4:3
**belong** [1] - 35:18
**benefit** [2] - 5:7, 28:8
**Benicar** [3] - 50:25,
52:8, 52:10
**Berne** [1] - 6:13
**BERNE** [1] - 3:23
**best** [4] - 12:14, 25:20,
43:11, 52:23
**better** [2] - 17:21, 45:6
**between** [7] - 8:7,
15:11, 24:19, 25:17,
31:21, 50:22, 73:3
**beyond** [2] - 21:25,
22:19
**big** [1] - 21:10
**bills** [3] - 24:18, 71:18,
71:21
**blah** [8] - 47:7, 71:20,
71:21
**blank** [6] - 65:4, 66:22,
67:3, 67:16
**bless** [1] - 24:2
**Blue** [1] - 4:3
**BOSICK** [1] - 3:12
**bottles** [3] - 18:7,
18:9, 52:2
**bottom** [1] - 46:9
**brainer** [1] - 69:13
**branded** [1] - 51:4
**breakdown** [1] - 68:14
**briefing** [2] - 19:13,
60:18
**bring** [3] - 52:17, 55:7,
56:24
**broad** [1] - 38:17
**bubble** [7] - 32:25,
33:2, 35:3, 46:9,
47:6, 47:8, 57:4
**burden** [14] - 18:13,
22:20, 25:13, 26:5,
27:4, 27:7, 28:25,
31:18, 32:1, 32:7,
37:10, 42:16, 46:4,
65:18
**burdensome** [4] -
22:14, 28:21, 57:9,
57:13
**button** [1] - 23:20,
58:5
**BY** [10] - 1:14, 1:17,
1:20, 3:2, 3:6, 3:9,
3:13, 3:16, 3:20,
3:23

**C**

**CA** [1] - 3:21

**calculate** [1] - 25:6
**calculation** [1] - 25:3
**Camp** [1] - 3:3
**canceled** [1] - 65:18
**cancer** [1] - 65:15
**cannot** [1] - 20:6
**capability** [1] - 67:17
**capable** [1] - 35:9
**capital** [2] - 30:18,
31:5
**capture** [1] - 43:3
**care** [7] - 43:17, 47:22,
47:23, 58:17, 65:16,
67:8, 67:14
**Carl** [1] - 74:20
**case** [31] - 11:3, 11:8,
12:9, 12:10, 15:18,
19:22, 20:21, 22:4,
22:11, 22:21, 25:2,
27:7, 29:1, 31:14,
31:24, 32:3, 32:4,
37:9, 41:19, 58:11,
58:23, 59:9, 68:25,
69:13, 69:16, 69:17,
70:2, 70:5, 70:9,
70:16, 73:15
**case-specific** [1] -
12:9
**cases** [8] - 25:13,
28:24, 29:4, 46:10,
65:4, 66:4, 70:1,
72:25
**categories** [1] - 22:2
**causes** [2] - 46:11,
46:19
**caveat** [2] - 15:4, 55:6
**Centre** [1] - 3:13
**Century** [1] - 3:21
**certain** [4] - 7:24,
11:1, 44:3, 55:11
**certainly** [5] - 35:17,
40:23, 41:23, 54:8,
55:10
**certainty** [1] - 11:15
**certify** [1] - 75:2
**cetera** [8] - 14:1,
16:17, 18:10, 19:7,
35:6, 42:19, 56:14
**chain** [13] - 13:20,
14:3, 14:13, 14:16,
14:24, 15:4, 17:3,
18:1, 18:23, 21:23,
41:18, 50:7, 50:8
**chance** [2] - 12:21,
59:23
**changed** [3] - 26:3,
35:12, 50:23
**characterization** [1] -
65:24
**characterized** [1] -

65:23
**charge** [3] - 33:4,
33:8, 33:20
**charge-back** [2] -
33:4, 33:20
**chart** [2] - 63:23,
70:13
**charts** [1] - 23:24
**chase** [1] - 11:5
**check** [1] - 44:14
**chemical** [1] - 58:1
**choosier** [1] - 67:11
**chromatograms** [1] -
74:8
**cincinnati** [1] - 3:25
**CIPRIANI** [1] - 4:2
**circumstances** [1] -
21:1
**cited** [1] - 66:16
**CIVIL** [1] - 1:4
**claimed** [2] - 68:19,
70:5
**claiming** [1] - 69:12
**clarification** [4] - 8:4,
14:6, 41:3, 53:1
**clarified** [1] - 74:13
**clarify** [3] - 32:18,
55:24, 55:25
**clarifying** [1] - 74:12
**class** [2] - 16:4, 69:11
**classified** [1] - 65:23
**clear** [3] - 30:9, 38:8,
53:21
**clearest** [1] - 23:16
**clearly** [3] - 20:3, 39:5,
39:12
**Clem** [2] - 6:7, 59:20
**CLEM** [1] - 3:13
**client** [12] - 8:20,
18:23, 20:4, 21:8,
21:9, 44:18, 45:12,
45:17, 45:18, 45:21,
56:12
**client's** [1] - 57:19
**clients** [16] - 9:8,
18:19, 19:24, 20:2,
20:25, 23:20, 23:22,
38:24, 42:6, 42:17,
43:21, 43:22, 43:23,
44:6, 44:8, 44:14
**clock** [1] - 49:13
**close** [1] - 10:3
**closed** [1] - 10:4
**CMO** [1] - 71:2
**Co** [1] - 3:22
**Cohen** [1] - 6:3
**COHEN** [2] - 3:16, 6:2
**collect** [3] - 8:20, 33:2,
49:23
**collected** [1] - 8:17

**commencement** [1] - 8:10

**Commencing** [1] - 1:10

**comment** [5] - 32:25, 33:2, 46:9, 47:5, 57:4

**commitment** [1] - 8:1

**commitments** [2] - 7:19, 7:23

**committee** [1] - 10:20

**common** [1] - 70:6

**communicated** [1] - 46:2

**communication** [6] - 44:6, 44:23, 45:12, 45:17, 45:22, 46:3

**communications** [7] - 43:15, 44:13, 44:19, 45:3, 45:8, 46:6, 51:3

**companies** [2] - 9:18, 33:8

**compile** [1] - 68:17

**complaint** [1] - 64:19

**Complaint** [2] - 72:9, 72:21

**Complaints** [4] - 72:16, 72:18, 72:22, 73:5

**completed** [3] - 19:14, 48:13, 49:11

**completion** [10] - 7:15, 7:17, 8:21, 8:25, 10:1, 50:6, 50:7, 53:16, 56:2, 56:3

**complicated** [6] - 20:15, 20:19, 51:1, 51:6, 52:7, 57:22

**complied** [2] - 64:16, 64:18

**comply** [1] - 66:18

**compromise** [9] - 11:4, 11:19, 30:16, 31:21, 31:24, 42:22, 48:7, 52:22, 58:9

**computation** [2] - 68:6, 70:4

**computer** [1] - 2:1

**computer-aided** [1] - 2:1

**conceive** [1] - 47:19

**concerned** [4] - 8:1, 16:10, 29:15, 60:22

**concerning** [1] - 44:8

**concerns** [1] - 59:4

**concessions** [1] - 52:16

**concluded** [1] - 59:24

**confer** [9] - 7:22, 9:4, 11:8, 59:5, 59:7, 60:10, 61:8, 64:8, 64:21

**conference** [3] - 9:11, 9:21, 15:19

**conferences** [1] - 6:6

**conferred** [1] - 63:24

**conferring** [2] - 7:13, 34:12

**confers** [7] - 33:16, 34:1, 34:21, 50:20, 61:3, 61:18, 61:21

**confirm** [1] - 18:9

**confirmation** [1] - 9:8

**confirms** [1] - 74:10

**Congress** [1] - 29:18

**conjunction** [1] - 24:6

**Conlee** [1] - 5:19

**CONLEE** [1] - 3:2

**consensus** [1] - 56:8

**consideration** [1] - 60:14

**considered** [1] - 64:24

**consistent** [1] - 25:2

**constitutes** [1] - 37:8

**consumer** [1] - 15:2

**consumers** [1] - 45:4

**consuming** [3] - 22:17, 50:4, 50:17

**contact** [3] - 42:7, 42:18, 42:21

**contacted** [3] - 43:2, 43:12, 46:1

**contacts** [2] - 42:11, 43:21

**contaminated** [6] - 36:18, 37:5, 37:23, 38:3, 38:14, 38:17

**contamination** [3] - 37:8, 37:11, 58:10

**content** [1] - 54:10

**context** [4] - 7:13, 16:9, 17:18, 20:14

**continue** [1] - 21:18

**CONTINUED** [2] - 3:1, 4:1

**continued** [1] - 19:18

**contracts** [3] - 62:7, 62:16, 62:18

**contradictory** [1] - 65:12

**control** [3] - 65:13, 71:16, 71:17

**conversations** [2] - 21:7, 65:9

**copy** [1] - 45:23

**core** [11] - 7:15, 7:17, 7:25, 8:12, 8:13, 9:20, 24:7, 64:24,

65:24, 66:25, 70:16

**correct** [19] - 7:12, 16:21, 17:6, 17:11, 40:13, 40:18, 45:1, 48:22, 49:5, 49:18, 51:22, 54:21, 54:25, 56:6, 56:11, 56:21, 58:8, 58:11, 75:2

**corrected** [1] - 40:1

**counsel** [22] - 5:7, 5:13, 6:16, 6:17, 7:22, 8:5, 8:14, 9:2, 9:16, 13:3, 14:5, 25:15, 29:21, 41:12, 64:4, 64:11, 64:25, 66:9, 68:1, 68:7, 72:23, 74:17

**Counsel** [13] - 15:6, 16:11, 18:17, 21:18, 23:12, 56:6, 57:13, 58:7, 58:20, 68:4, 68:9, 68:21, 70:18

**couple** [3] - 26:12, 63:5

**course** [6] - 7:1, 7:4, 27:16, 28:17, 32:1, 38:8

**COURT** [1] - 1:2

**Court** [12] - 1:23, 27:17, 29:21, 41:12, 49:17, 52:18, 64:4, 64:11, 66:18, 68:7, 70:11, 75:5

**Court's** [13] - 9:16, 9:24, 10:2, 25:16, 31:19, 32:3, 32:8, 36:1, 36:13, 56:4, 57:1, 63:1, 63:8

**Court-approved** [1] - 66:18

**covered** [2] - 47:11, 55:23

**critical** [3] - 16:9, 20:23, 22:14

**Cross** [2] - 9:15, 47:15

**cross** [8] - 12:4, 28:13, 33:5, 38:5, 47:1, 59:17, 62:24, 69:20

**CRR** [1] - 75:5

**crystallize** [1] - 48:14

**cumulative** [1] - 14:23

**current** [2] - 39:19, 68:23

**custody** [2] - 41:18, 71:15

**customer** [3] - 13:25, 14:9, 40:25

**customers** [5] - 20:18, 35:14, 35:16, 35:17,

35:22

**cut** [2] - 11:4, 47:9

**CVS** [2] - 3:22, 6:10

---

# D

**daily** [1] - 70:7

**damages** [3] - 25:3, 25:7, 70:4

**Daniel** [2] - 5:17, 65:22

**DANIEL** [2] - 1:17, 3:23

**data** [11] - 14:1, 33:2, 33:3, 33:9, 33:13, 33:14, 33:19, 34:12, 34:18, 34:20

**date** [32] - 7:5, 7:14, 7:15, 8:1, 8:7, 8:11, 8:18, 8:21, 8:24, 8:25, 10:1, 11:1, 13:25, 14:1, 19:7, 23:18, 24:3, 24:9, 24:12, 32:16, 36:25, 39:17, 49:8, 50:5, 52:4, 55:17, 56:17, 56:18, 59:4, 71:1

**Date** [1] - 75:7

**dates** [8] - 7:20, 7:24, 23:25, 24:22, 26:4, 36:5, 41:17, 52:9

**Dave** [1] - 34:6

**DAVIS** [1] - 3:16

**days** [32] - 18:6, 26:19, 48:7, 48:16, 48:19, 48:20, 49:1, 49:2, 49:7, 49:16, 49:25, 50:18, 50:21, 50:22, 50:23, 50:25, 51:7, 52:4, 52:19, 52:21, 52:22, 52:24, 53:16, 55:7, 55:12, 55:20, 56:17

**deadline** [4] - 9:13, 56:1, 72:21, 73:2

**deadlines** [2] - 7:17, 9:12

**deal** [6] - 19:2, 26:20, 60:8, 72:4, 72:18

**dealing** [2] - 30:17, 31:2

**dealt** [1] - 42:5

**dear** [1] - 51:2

**decide** [1] - 54:18

**decided** [2] - 15:21, 53:10

**decides** [1] - 34:19

**decision** [1] - 66:10

**decisions** [1] - 53:11

**deep** [1] - 73:16

**Defendant** [21] - 3:11, 3:14, 3:22, 3:25, 4:4, 10:7, 14:21, 15:21, 19:19, 20:8, 22:16, 37:13, 39:22, 39:24, 46:23, 48:13, 49:14, 50:7, 50:10, 51:9, 57:10

**defendant** [30] - 10:13, 12:22, 16:24, 21:25, 24:9, 27:4, 27:16, 27:18, 29:2, 30:14, 32:12, 35:1, 42:8, 42:13, 43:10, 45:10, 45:23, 45:24, 46:1, 46:2, 46:3, 50:8, 53:4, 53:5, 57:21, 61:10, 61:24, 62:21, 62:23, 63:7

**defendant's** [2] - 11:24, 25:24

**defendants** [109] - 5:23, 6:1, 6:3, 6:11, 6:14, 12:19, 12:20, 13:12, 14:4, 14:8, 16:20, 17:2, 20:16, 21:13, 22:15, 23:18, 24:16, 24:20, 24:21, 25:9, 25:17, 25:19, 25:25, 26:24, 27:18, 28:1, 28:4, 28:15, 28:21, 28:23, 29:8, 31:12, 31:25, 32:2, 32:8, 32:16, 34:13, 34:22, 35:15, 35:16, 35:23, 36:9, 36:10, 37:4, 38:7, 39:18, 41:4, 41:16, 42:9, 42:10, 42:14, 42:18, 42:20, 43:2, 43:12, 43:14, 43:21, 44:5, 44:11, 44:15, 44:21, 44:23, 45:15, 46:18, 47:11, 48:4, 48:7, 48:10, 48:15, 49:13, 49:23, 50:13, 50:24, 51:7, 52:13, 53:1, 53:9, 53:20, 54:5, 54:7, 57:11, 59:11, 60:23, 61:1, 61:3, 61:7, 61:16, 63:2, 63:18, 66:7, 66:14, 66:23, 67:12, 67:23, 68:11, 68:14, 68:16, 69:5, 69:6, 69:18, 71:23, 72:10, 72:11, 72:16, 72:17, 73:5

**Defendants** [5] - 3:18, 42:23, 51:19, 60:24, 72:2

**Defendants'** [1] -

36:23
**defendants'** [14] -
17:20, 29:12, 29:15,
31:20, 35:8, 36:8,
37:10, 46:21, 49:19,
52:16, 58:13, 67:22,
68:18, 73:9
**defense** [3] - 11:9,
11:17, 44:20
**Defense** [2] - 3:11,
3:14
**defenses** [1] - 28:24
**defer** [1] - 26:9
**deficiencies** [4] -
63:20, 63:23, 64:22,
64:24
**deficiency** [3] - 60:3,
65:24, 66:25
**deficient** [1] - 63:23
**definitely** [1] - 58:18
**definitive** [1] - 21:2
**delete** [1] - 37:13
**deleted** [3] - 32:16,
32:24, 47:3
**depositions** [1] -
59:21
**describe** [1] - 12:23
**description** [1] - 68:5
**designed** [2] - 20:9,
43:3
**detail** [1] - 74:3
**detailed** [3] - 49:22,
50:14, 65:9
**determine** [3] - 45:7,
53:18, 62:15
**DFS** [3] - 12:8, 53:9,
53:12
**difference** [6] - 24:17,
24:19, 24:22, 24:25,
25:5, 25:17
**differences** [1] - 24:24
**different** [9] - 14:15,
26:5, 28:16, 33:10,
48:10, 56:10, 57:16,
61:5, 61:7
**difficult** [7] - 19:21,
20:21, 21:1, 22:14,
29:3, 49:23, 58:5
**dig** [2] - 68:17, 73:15
**digest** [1] - 59:1
**direct** [1] - 67:11
**directed** [1] - 14:15
**directly** [1] - 65:12
**disagree** [1] - 66:25
**discloses** [1] - 57:25
**disclosures** [1] - 70:3
**discovery** [12] - 7:6,
7:15, 7:17, 7:25,
8:12, 8:13, 9:20,
19:13, 24:8, 53:4,

53:6, 53:10
**discuss** [2] - 60:17,
63:16
**discussed** [4] - 9:5,
34:16, 39:13, 70:11
**discussion** [5] -
34:24, 34:25, 53:9,
53:17, 60:4
**discussions** [1] - 8:10
**dispute** [19] - 8:3,
12:24, 13:13, 15:14,
15:17, 18:16, 21:20,
21:24, 22:11, 23:4,
26:6, 32:15, 37:15,
41:9, 50:22, 60:20,
61:17, 62:2, 62:20
**disputed** [4] - 12:25,
26:1, 32:22, 37:9
**disputes** [1] - 24:15
**DISPUTES** [1] - 1:6
**DISTRICT** [2] - 1:2,
1:2
**docket** [2] - 70:19,
70:25
**DOCKET** [1] - 1:7
**Docket** [2] - 5:4, 11:23
**doctor** [1] - 51:2
**document** [11] -
12:10, 30:9, 33:18,
33:25, 45:2, 45:18,
47:10, 47:12, 47:17,
56:10, 57:20
**documentation** [1] -
70:8
**documents** [48] - 7:7,
7:19, 8:19, 8:24, 9:9,
10:14, 10:15, 11:12,
22:3, 22:20, 22:24,
23:10, 23:23, 23:24,
27:8, 27:17, 28:2,
28:5, 28:12, 29:1,
29:8, 29:10, 29:13,
29:14, 30:7, 31:16,
32:2, 32:6, 36:8,
45:6, 47:19, 50:2,
56:14, 58:21, 60:22,
61:5, 61:6, 61:16,
62:8, 62:9, 62:11,
69:8, 71:15
**Documents** [1] - 47:6
**dog** [2] - 30:25, 31:8
**done** [9] - 10:21,
10:25, 29:9, 31:13,
31:23, 51:24, 51:25,
61:23, 70:21
**dose** [20] - 14:17,
17:4, 19:24, 26:11,
37:14, 39:25, 40:5,
40:7, 40:9, 40:12,
40:15, 40:16, 40:21,

41:1, 48:25, 49:4,
53:25, 56:1, 62:8
**down** [8] - 5:11, 13:20,
21:8, 43:14, 45:23,
57:4, 64:10, 64:13
**downstream** [3] -
53:4, 54:6, 54:19
**draft** [2] - 47:20, 53:20
**driving** [1] - 64:25
**drug** [6] - 14:14,
28:18, 37:3, 39:18,
51:4, 57:24
**drugs** [13] - 10:24,
36:16, 36:19, 37:1,
37:4, 38:13, 38:15,
38:19, 39:10, 39:25,
40:5, 45:17
**DUANE** [1] - 3:9
**Duane** [2] - 5:25,
12:18
**duplicate** [1] - 12:7
**duplicative** [2] -
36:22, 37:19
**during** [1] - 11:8

## E

**e-mail** [1] - 45:11
**e.g** [1] - 35:14
**early** [1] - 38:1
**easier** [7] - 19:1, 30:8,
39:4, 42:13, 61:6,
62:16, 62:17
**easiest** [2] - 26:7, 42:6
**easily** [2] - 23:21,
70:19
**East** [1] - 3:21
**easy** [4] - 36:11,
41:21, 41:23, 63:1
**ECF** [1] - 71:2
**economic** [1] - 16:4
**edited** [1] - 35:15
**effectively** [1] - 27:21
**efficiency** [1] - 25:4
**efficient** [4] - 11:15,
12:21, 25:12, 30:12
**efforts** [2] - 63:3, 63:9
**Eisenhower** [1] - 1:14
**electronic** [3] - 33:3,
33:7, 33:14
**elementary** [1] - 70:1
**eliminated** [1] - 64:21
**end** [4] - 47:10, 50:9,
53:7, 54:20
**ended** [2] - 13:21,
21:15
**ends** [2] - 21:12, 40:11
**energy** [1] - 51:6
**engage** [1] - 18:14
**ensure** [1] - 74:7

**enter** [1] - 5:13
**entered** [3] - 11:22,
55:11, 71:1
**enters** [1] - 55:3
**entire** [1] - 11:7
**entirely** [2] - 23:7,
68:15
**entities** [1] - 5:25
**entitled** [4] - 39:9,
44:7, 70:17, 75:3
**entity** [2] - 35:6, 35:13
**entries** [2] - 5:9, 5:12
**entry** [1] - 56:4
**Entry** [1] - 70:3
**envision** [2] - 48:21,
62:13
**envisioned** [2] -
48:18, 71:13
**equally** [3] - 22:23,
27:2, 35:9
**equipped** [1] - 45:6
**especially** [4] - 22:22,
29:3, 31:11, 48:14
**ESQUIRE** [13] - 1:14,
1:17, 1:20, 3:2, 3:3,
3:6, 3:9, 3:10, 3:13,
3:16, 3:16, 3:20, 4:2
**essential** [1] - 70:15
**established** [1] -
31:25
**et** [8] - 14:1, 16:17,
18:10, 19:7, 35:6,
42:19, 56:14
**event** [1] - 49:10
**eventually** [1] - 17:4
**evidence** [1] - 70:8
**exact** [3] - 39:10, 49:8,
52:9
**exactly** [5] - 9:5, 11:6,
12:24, 55:9, 67:19
**example** [10] - 22:5,
24:1, 24:2, 25:18,
26:7, 27:1, 28:8,
28:10, 62:6, 62:10
**excellent** [1] - 28:8
**except** [1] - 26:12
**excess** [1] - 5:5
**executive** [2] - 10:20,
29:20
**exercise** [5] - 18:2,
18:8, 18:13, 50:2,
63:2
**exhibit** [1] - 32:23
**Exhibit** [21] - 13:10,
13:14, 25:23, 26:8,
26:11, 26:18, 26:23,
30:19, 30:24, 31:6,
41:25, 46:12, 46:13,
47:22, 47:24, 48:3,
56:25, 57:1, 57:2,

58:17
**exist** [1] - 38:24
**existing** [1] - 39:11
**exists** [1] - 64:17
**expect** [1] - 63:14
**expected** [1] - 31:18
**expended** [1] - 63:9
**expenses** [12] - 24:16,
24:19, 24:21, 25:1,
68:15, 68:19, 68:24,
69:3, 69:12, 71:20,
71:25
**expert** [2] - 46:21,
46:24
**expiration** [2] - 14:1,
19:6
**explain** [4] - 12:22,
13:11, 17:20, 72:15
**explanation** [1] - 73:7
**explicit** [1] - 71:6
**expressed** [1] - 61:10
**extension** [1] - 52:20
**extensive** [1] - 47:18
**extent** [5] - 12:5,
21:22, 34:13, 35:23,
44:5
**extra** [3] - 18:1, 26:12,
39:20

## F

**face** [1] - 63:11
**facilitate** [1] - 14:2
**Fact** [34] - 10:7, 14:20,
14:21, 15:21, 19:11,
19:19, 20:8, 22:16,
36:23, 37:13, 39:22,
39:24, 43:1, 43:5,
43:7, 46:23, 48:13,
49:11, 49:12, 49:14,
50:6, 50:7, 50:10,
50:11, 52:1, 56:5,
57:10, 63:18, 64:16,
65:6, 67:18, 70:12,
71:3, 71:13
**fact** [60] - 10:13, 12:2,
13:18, 14:15, 14:23,
15:12, 15:14, 15:15,
18:14, 20:9, 22:12,
23:6, 28:22, 33:18,
34:23, 35:18, 40:1,
44:14, 45:25, 47:11,
47:20, 48:4, 48:5,
49:17, 50:25, 51:1,
51:5, 52:5, 52:6,
52:12, 53:16, 53:19,
53:23, 54:7, 54:10,
54:14, 54:21, 55:2,
55:10, 55:14, 55:18,
56:4, 56:9, 56:16,

*56*:24, 56:25, 58:19, 60:22, 66:16, 66:19, 67:25, 70:20, 70:21, 70:23, 70:25, 71:24, 72:2, 72:5
**facts** [1] - 73:16
**failed** [1] - 72:21
**fair** [4] - 8:22, 31:24, 42:22, 52:22
**faith** [6] - 19:18, 34:15, 42:17, 61:16, 63:2, 63:8
**familiar** [1] - 23:3
**favor** [1] - 67:22
**FDA** [2] - 24:7, 35:5
**FDA's** [1] - 24:11
**federal** [1] - 70:10
**feet** [1] - 9:21
**fell** [1] - 35:7
**few** [2] - 30:21, 33:11
**fields** [2] - 33:13, 33:20
**fifth** [1] - 64:19
**figure** [1] - 11:1
**file** [3] - 57:25, 66:4, 73:5
**filed** [1] - 71:2
**filing** [1] - 25:24
**filings** [1] - 13:1
**fill** [4] - 67:3, 67:8, 67:16
**final** [1] - 9:13
**finalize** [2] - 52:12, 54:20
**finalized** [8] - 24:5, 24:6, 33:22, 45:2, 47:13, 53:23, 54:22, 55:2
**finalizing** [1] - 56:5
**fine** [4] - 5:6, 5:10, 13:3, 32:20
**fingers** [1] - 70:24
**finished** [21] - 14:17, 17:4, 19:24, 26:11, 37:14, 39:25, 40:5, 40:7, 40:9, 40:12, 40:15, 40:16, 40:20, 40:21, 41:1, 48:25, 49:4, 53:25, 56:1, 58:18, 62:8
**fire** [1] - 9:21
**firms** [4] - 67:10, 67:12, 68:24, 69:1
**first** [31] - 7:3, 13:11, 14:9, 15:23, 16:22, 16:23, 19:1, 24:6, 24:12, 24:25, 26:9, 26:17, 26:18, 26:24, 30:17, 33:1, 41:22, 44:13, 46:4, 49:3,

49:10, 49:13, 50:5, 51:11, 51:20, 53:24, 63:22, 64:14, 65:3, 66:11
**fits** [1] - 11:21
**five** [3] - 47:10, 72:20, 73:1
**Floor** [1] - 3:13
**floor** [1] - 17:19
**Florida** [1] - 1:18
**flow** [1] - 61:13
**focusing** [1] - 28:23
**followed** [2] - 48:25, 49:1
**food** [1] - 18:23
**FOR** [1] - 1:2
**forego** [1] - 23:6
**foregoing** [1] - 75:2
**foreign** [2] - 62:9, 62:10
**foremost** [1] - 65:3
**forest** [1] - 11:7
**Form** [4] - 72:8, 72:15, 72:18, 72:22
**form** [3] - 43:22, 44:19, 53:20
**formerly** [1] - 33:20
**forms** [1] - 44:1
**forth** [1] - 7:20
**forward** [2] - 11:11, 72:22
**four** [3] - 14:15, 47:10
**fourth** [1] - 57:4
**frames** [1] - 10:22
**framing** [1] - 21:20
**frankly** [3] - 51:8, 60:20, 66:3
**free** [2] - 7:2, 60:12
**FREEMAN** [1] - 1:13
**Friday** [2] - 7:22, 61:2
**Friedlander** [2] - 1:23, 75:5
**friedlanderreporter@gmail.com** [1] - 1:24
**front** [6] - 26:8, 52:9, 61:20, 67:25, 70:24, 71:4
**frontline** [1] - 33:25
**fully** [1] - 27:23
**fulsome** [2] - 47:12, 47:18
**future** [1] - 72:25

## G

**gathered** [1] - 41:23
**general** [7] - 34:17, 52:14, 54:2, 54:16, 58:22, 61:25, 72:3

**generally** [1] - 54:5
**generic** [2] - 14:13, 66:16
**GEOPPINGER** [4] - 3:23, 6:12, 54:4, 55:5
**Geoppinger** [3] - 6:13, 54:4, 55:5
**Georgia** [1] - 3:17
**given** [6] - 25:13, 31:24, 56:17, 58:4, 61:5, 65:4
**global** [3] - 10:19, 34:3, 34:12
**globally** [2] - 10:11, 10:12
**goal** [2] - 13:18, 14:2
**Goldberg** [4] - 5:25, 60:25, 61:19, 73:10
**GOLDBERG** [9] - 3:9, 5:24, 59:11, 60:1, 60:25, 62:1, 62:4, 62:13, 73:11
**GOLDENBERG** [31] - 3:5, 3:6, 30:2, 30:23, 31:3, 31:9, 32:19, 34:5, 37:17, 38:22, 39:4, 39:7, 39:15, 40:11, 40:23, 41:6, 41:10, 41:13, 42:24, 43:6, 43:16, 45:9, 48:3, 48:6, 48:22, 49:5, 49:9, 49:18, 51:22, 51:25, 58:12
**Goldenberg** [20] - 29:19, 29:23, 30:3, 30:18, 32:17, 34:5, 39:13, 40:18, 41:14, 48:18
**GOLOMB** [1] - 1:19
**GORDON** [1] - 3:12
**granted** [2] - 52:16, 68:18
**granular** [1] - 49:22
**great** [4] - 28:20, 39:14, 43:8, 58:20
**GREENBERG** [1] - 3:15
**Greenberg** [2] - 6:3, 63:22
**ground** [1] - 11:24
**group** [6] - 25:9, 41:4, 41:5, 41:6, 48:20, 48:21
**Group** [2] - 3:11, 3:14
**guess** [3] - 30:10, 34:16, 69:15
**guide** [1] - 21:10

## H

**half** [1] - 37:3
**hand** [2] - 29:25, 52:9
**handful** [1] - 43:13
**handing** [1] - 29:22
**handle** [1] - 33:8
**handled** [4] - 33:16, 33:23, 34:1
**hands** [1] - 21:15
**handy** [1] - 70:24
**happy** [1] - 39:15
**hard** [5] - 24:4, 43:11, 47:18, 56:16, 71:16
**hard-pressed** [1] - 56:16
**head** [1] - 30:4
**header** [1] - 47:6
**health** [3] - 67:2, 67:8, 67:14
**Health** [1] - 3:22
**hear** [10] - 9:10, 26:14, 26:15, 27:9, 29:17, 49:19, 51:13, 68:8, 69:18, 70:14
**heard** [2] - 9:14, 15:20
**hearing** [1] - 34:17
**heavily** [1] - 65:8
**HEINZ** [3] - 4:2, 9:3, 10:6
**Heinz** [1] - 9:4
**help** [8] - 10:11, 11:2, 11:4, 11:9, 16:13, 51:17, 64:13, 65:2
**helping** [1] - 38:22
**helps** [1] - 13:10
**Hetero** [11] - 7:4, 7:14, 7:16, 7:18, 8:6, 8:9, 8:11, 8:14, 8:23, 9:7
**high** [1] - 28:10
**HILTON** [5] - 3:3, 7:11, 8:9, 9:1, 34:9
**Hilton** [8] - 7:9, 7:11, 9:5, 34:6, 34:9, 61:20, 61:24, 74:5
**Hilton's** [1] - 61:22, 62:5, 63:4
**historically** [1] - 24:11
**hit** [2] - 30:4, 70:8
**hold** [4] - 9:20, 16:11, 58:7
**holding** [1] - 48:8
**holdup** [1] - 10:22
**hole** [1] - 20:20
**honestly** [1] - 20:19
**HONIK** [3] - 1:19, 1:20, 5:21
**Honik** [1] - 5:21
**Honor** [88] - 5:15, 5:17, 5:21, 5:24, 6:2,

6:7, 6:9, 6:12, 7:10, 7:11, 8:9, 9:1, 9:3, 10:6, 10:18, 10:22, 12:8, 12:17, 15:13, 17:1, 17:22, 21:7, 22:13, 24:5, 24:23, 25:22, 26:10, 27:22, 28:7, 29:22, 30:2, 30:24, 31:7, 31:10, 33:1, 34:9, 35:2, 35:10, 36:4, 36:12, 36:21, 37:17, 38:11, 38:22, 39:15, 39:16, 41:10, 42:1, 42:24, 43:3, 43:16, 44:25, 46:8, 47:23, 48:3, 48:9, 49:21, 51:13, 52:25, 53:3, 54:3, 54:4, 54:24, 55:5, 55:6, 55:22, 56:11, 56:23, 58:12, 58:19, 59:12, 59:20, 60:25, 62:2, 63:21, 64:15, 65:8, 65:22, 68:22, 71:3, 71:7, 72:6, 72:20, 73:11, 74:2, 74:4, 74:6, 74:15
**Honor's** [2] - 23:1, 53:15
**HONORABLE** [1] - 1:11
**hope** [1] - 11:4
**hopeful** [2] - 9:11, 73:3
**hopefully** [3] - 17:16, 61:11, 74:19
**hoping** [2] - 9:10, 11:19
**hour** [1] - 74:23
**hundred** [2] - 18:7, 69:11
**hurry** [1] - 34:7
**hypertension** [1] - 65:16
**hypothetically** [1] - 29:7

## I

**ID** [6] - 11:3, 16:18, 17:13, 23:9, 50:2, 51:20
**idea** [5] - 13:4, 14:14, 14:19, 14:25, 15:3
**ideally** [1] - 43:19
**identical** [1] - 26:12
**identification** [14] - 13:15, 13:23, 15:22, 17:24, 18:8, 20:20, 21:21, 21:25, 22:7, 22:13, 22:19, 22:22,

27:3, 37:6
**identified** [6] - 15:8, 15:25, 35:5, 38:13, 64:20, 72:10
**identify** [29] - 14:3, 14:7, 14:8, 14:10, 20:11, 22:2, 22:6, 22:10, 22:21, 26:24, 27:19, 28:5, 31:16, 32:5, 33:2, 36:16, 36:17, 37:4, 37:10, 38:12, 42:9, 42:14, 46:5, 46:19, 50:2, 57:5, 57:22, 58:15, 60:21
**identifying** [2] - 35:9, 58:2
**II** [4] - 30:18, 30:24, 31:5, 32:10
**II(B** [1] - 35:5
**III.B.7** [1] - 42:25
**illustration** [1] - 28:20
**important** [9] - 11:3, 18:2, 37:23, 37:25, 49:25, 55:25, 58:23, 59:9, 73:14
**impossible** [2] - 19:21, 21:13
**impression** [1] - 23:21
**IN** [2] - 1:4, 1:6
**inaccurate** [1] - 11:14
**Inc** [3] - 3:18, 3:19, 4:4
**inclined** [2] - 25:25, 36:9
**include** [3] - 26:1, 66:23, 66:24
**included** [3] - 34:23, 36:7, 47:19
**including** [1] - 23:8
**incomplete** [2] - 11:13, 67:6
**incredibly** [2] - 29:3, 50:17
**independently** [1] - 15:1
**individual** [11] - 13:19, 25:6, 31:14, 60:5, 61:3, 61:18, 61:21, 62:15, 66:15, 68:1, 69:23
**individual/plaintiffs** [1] - 15:7
**individualized** [1] - 61:4
**individuals** [2] - 42:9, 65:11
**indulgence** [1] - 70:18
**Industries** [1] - 3:18
**industry** [1] - 19:15
**informally** [1] - 72:24

**information** [90] - 10:15, 11:1, 12:12, 13:11, 13:16, 13:23, 13:24, 14:11, 14:20, 14:23, 15:3, 15:22, 16:19, 17:8, 17:13, 17:16, 17:24, 18:21, 19:4, 19:10, 19:17, 19:25, 20:1, 20:4, 20:12, 20:19, 20:24, 21:12, 21:16, 21:22, 22:7, 22:8, 22:23, 23:7, 23:8, 24:8, 24:10, 25:7, 27:1, 27:3, 27:12, 30:15, 33:17, 33:23, 34:2, 35:8, 36:20, 37:6, 37:18, 39:21, 41:16, 41:18, 41:20, 42:10, 42:15, 42:21, 43:20, 44:7, 49:22, 50:14, 51:10, 51:12, 51:21, 52:14, 52:24, 56:22, 57:18, 59:1, 59:6, 59:14, 60:9, 60:11, 61:13, 62:19, 62:22, 67:1, 67:3, 68:12, 68:13, 68:16, 69:25, 70:15, 70:16, 71:8, 71:9, 71:11, 71:12, 73:14
**initial** [4] - 14:10, 17:15, 64:3, 70:3
**injury** [6] - 16:6, 46:10, 64:2, 64:5, 69:24, 70:2
**inquiry** [1] - 32:9
**instance** [8] - 14:9, 15:23, 16:22, 44:13, 46:4, 51:11, 51:20, 53:24
**instances** [1] - 45:10
**intend** [2] - 34:14, 61:9
**interchange** [2] - 33:3, 33:14
**interested** [2] - 22:25, 60:7
**interrogatory** [1] - 31:15
**interrupt** [1] - 68:8
**interrupted** [1] - 21:17
**invited** [2] - 61:2, 61:8
**involved** [1] - 60:4
**issue** [82] - 7:4, 7:6, 7:21, 10:5, 10:8, 10:12, 11:25, 12:2, 12:16, 12:19, 12:21, 13:6, 13:7, 15:20, 19:12, 22:14, 22:15,

23:4, 23:15, 23:17, 24:19, 25:21, 26:20, 26:21, 26:22, 27:24, 29:25, 30:17, 30:20, 31:1, 31:19, 32:9, 32:12, 32:22, 33:15, 34:24, 35:1, 37:9, 37:24, 41:15, 42:1, 42:22, 45:20, 46:7, 46:9, 47:4, 47:5, 51:4, 53:13, 55:21, 56:20, 57:18, 58:16, 58:23, 58:24, 59:3, 59:4, 59:8, 59:14, 60:2, 60:3, 60:13, 60:19, 61:5, 63:4, 63:15, 66:11, 66:12, 67:21, 68:2, 68:4, 68:5, 68:23, 72:8, 73:15, 73:17, 73:19, 73:20, 74:4
**Issue** [1] - 60:16
**issued** [1] - 15:16
**issues** [30] - 6:20, 6:22, 7:1, 11:3, 11:20, 13:2, 19:22, 25:24, 26:2, 34:17, 39:19, 41:25, 48:14, 53:6, 53:10, 53:14, 54:18, 54:23, 60:6, 60:16, 64:9, 64:12, 65:2, 66:9, 72:3, 72:4, 72:17, 73:9, 73:23, 74:21
**item** [2] - 70:4, 74:16
**itemize** [2] - 30:4, 69:4

### J

**January** [6] - 8:18, 11:22, 15:16, 15:18, 23:2, 23:4
**Jeff** [3] - 6:12, 54:4, 55:5
**JEFFREY** [1] - 3:23
**JERSEY** [1] - 1:2
**Jersey** [2] - 1:15, 21:15
**JESSICA** [1] - 4:2
**Jessica** [1] - 9:3
**job** [1] - 30:8
**JOEL** [1] - 1:11
**Johnston** [5] - 6:10, 52:25, 54:6, 54:24, 55:16
**JOHNSTON** [6] - 3:20, 6:9, 52:25, 53:3, 54:3, 54:24
**Joint** [2] - 3:11, 3:14
**JUDGE** [1] - 1:11

**Judge** [6] - 6:19, 29:18, 47:16, 62:25, 73:19, 73:20
**July** [13] - 7:16, 8:1, 8:2, 8:7, 8:21, 8:25, 9:13, 9:25, 10:1, 10:4, 65:9, 65:13, 70:11
**jump** [1] - 30:10
**June** [10] - 7:16, 9:25, 53:7, 54:20, 59:15, 60:2, 64:3, 72:13, 73:4

### K

**KANNER** [1] - 3:2
**Karen** [2] - 1:23, 75:5
**KATZ** [1] - 1:13
**keep** [2] - 61:14, 64:15
**kept** [4] - 57:20, 58:6, 62:19, 62:22
**key** [2] - 64:9, 65:2
**kind** [6] - 12:23, 13:2, 25:11, 27:4, 30:3, 43:25
**knowing** [1] - 36:1
**knowledge** [2] - 31:12, 37:22
**knows** [3] - 36:20, 38:15, 53:3
**Kugler** [3] - 6:19, 73:19, 73:21

### L

**labels** [1] - 52:2
**language** [4] - 35:11, 39:25, 43:3, 68:1
**large** [1] - 64:17
**Lasalle** [1] - 3:6
**last** [4] - 53:11, 65:9, 70:11, 72:8
**Laughter** [1] - 39:3
**law** [6] - 32:4, 67:10, 67:12, 68:24, 69:1, 71:14
**LAW** [1] - 3:5
**Layne** [4] - 7:11, 9:5, 34:6, 34:9
**LAYNE** [1] - 3:3
**leadership** [5] - 5:6, 5:13, 6:16, 63:15, 73:19
**least** [13] - 8:22, 9:17, 11:6, 11:11, 17:12, 17:15, 21:13, 25:18, 53:20, 54:22, 57:19, 61:13, 71:14
**legal** [2] - 24:24, 44:2

**length** [1] - 53:18
**less** [2] - 50:16, 51:1
**letter** [26] - 6:24, 7:3, 7:20, 10:11, 11:24, 13:7, 23:15, 23:16, 38:20, 44:19, 56:21, 58:8, 58:16, 61:2, 61:15, 61:19, 61:22, 62:6, 63:4, 73:8, 73:9, 74:5, 74:6, 74:9, 74:13, 74:14
**LETTERS** [1] - 1:7
**letters** [6] - 6:17, 6:20, 6:23, 43:23, 51:2
**level** [4] - 12:9, 21:8, 48:16, 50:7
**levels** [2] - 14:15, 26:23
**LEVIN** [1] - 1:16
**liability** [2] - 11:3, 68:25
**LIABILITY** [1] - 1:5
**liaison** [1] - 72:23
**likely** [1] - 50:9
**limit** [1] - 27:18
**Limited** [1] - 9:4
**limited** [6] - 22:12, 31:22, 35:22, 39:10, 65:14, 67:15
**line** [1] - 8:17
**link** [1] - 12:9
**list** [15] - 24:16, 24:20, 24:21, 58:9, 63:20, 64:3, 64:14, 64:24, 64:25, 68:15, 68:17, 69:12, 70:4, 71:20, 71:25
**listed** [3] - 65:24, 66:8, 67:18
**listing** [1] - 71:6
**LITIGATION** [1] - 1:5
**litigation** [5] - 5:4, 9:19, 31:18, 38:8, 70:7
**live** [1] - 38:4
**LLC** [4] - 1:13, 3:2, 3:18, 4:4
**LLP** [5] - 3:9, 3:12, 3:15, 3:20, 3:23
**location** [1] - 39:19
**LOCKARD** [9] - 3:16, 63:21, 64:5, 64:12, 68:5, 68:10, 69:22, 71:5, 72:6
**Lockard** [4] - 6:4, 63:21, 69:22
**look** [12] - 11:5, 12:15, 22:20, 23:23, 25:23, 29:13, 36:8, 45:6, 56:14, 62:5, 70:20,

70:25
**looked** [1] - 34:10
**looking** [12] - 17:7, 20:1, 30:5, 37:21, 42:5, 46:14, 46:16, 48:9, 48:12, 50:13, 54:7, 71:19
**looks** [2] - 32:23, 55:19
**loop** [1] - 10:4
**LORI** [1] - 3:16
**Lori** [1] - 6:2
**Los** [1] - 3:21
**loss** [1] - 16:5
**Louisiana** [1] - 3:4
**Ltd** [2] - 3:18, 4:4
**lumped** [1] - 32:24

## M

**macro** [6] - 19:13, 53:6, 53:10, 54:18, 54:22, 60:16
**MAGISTRATE** [1] - 1:11
**mail** [1] - 45:11
**main** [3] - 10:22, 13:18, 19:8
**maintain** [3] - 22:12, 35:15, 61:5
**majority** [1] - 64:18
**management** [1] - 15:19
**manner** [1] - 34:15
**manufacture** [3] - 11:2, 13:25, 32:16
**manufactured** [3] - 14:4, 19:6, 28:10
**manufacturer** [15] - 12:20, 12:22, 13:12, 22:1, 26:11, 40:15, 40:24, 41:2, 43:22, 43:24, 44:4, 53:5, 57:15, 57:21
**Manufacturer** [3] - 19:19, 39:24, 56:5
**manufacturers** [40] - 13:22, 14:18, 14:25, 15:1, 16:9, 17:4, 17:5, 17:8, 17:14, 17:23, 18:13, 19:2, 19:9, 19:10, 19:17, 19:24, 20:11, 22:5, 22:6, 22:9, 22:12, 22:15, 22:16, 23:6, 23:11, 33:19, 40:4, 40:6, 40:7, 45:3, 47:13, 48:25, 49:1, 49:4, 53:25, 54:1, 56:1, 56:2, 57:11

**manufactures** [1] - 20:16
**manufacturing** [3] - 40:21, 62:7, 62:8
**Manufacturing** [1] - 10:7
**March** [1] - 53:12
**Market** [1] - 1:20
**market** [2] - 14:14, 21:11
**Marlene** [4] - 30:2, 31:4, 34:5, 41:13
**MARLENE** [1] - 3:6
**master** [1] - 57:24
**matches** [1] - 54:14
**matter** [1] - 75:3
**MAY** [1] - 1:7
**MAZIE** [1] - 1:13
**MDL** [1] - 5:4
**mean** [11] - 20:14, 21:13, 27:18, 36:19, 38:15, 39:5, 39:11, 40:2, 45:9, 68:20, 71:10
**meaning** [1] - 37:1
**means** [1] - 37:11
**meaty** [2] - 6:17, 10:8
**mechanical** [1] - 1:25
**medical** [16] - 16:5, 24:16, 24:18, 24:20, 25:1, 67:23, 68:5, 68:15, 68:19, 68:23, 68:24, 69:3, 69:12, 71:18, 71:20, 71:25
**medications** [1] - 10:24
**meet** [17] - 7:22, 9:4, 11:8, 33:16, 34:1, 34:21, 50:20, 59:5, 59:7, 60:10, 61:3, 61:8, 61:18, 61:21, 64:8, 64:21, 72:21
**meeting** [2] - 7:13, 34:11
**members** [1] - 10:20
**mention** [3] - 16:8, 50:24, 55:8
**mentioned** [6] - 13:17, 15:9, 17:23, 21:20, 22:13, 65:17
**merge** [2] - 37:18, 38:4
**met** [1] - 63:24
**mid** [1] - 61:14
**mid-April** [1] - 61:14
**middle** [3] - 11:24, 72:13, 73:4
**might** [16] - 6:20, 15:17, 26:3, 26:4, 28:10, 28:16, 32:14,

38:25, 40:25, 44:2, 45:11, 45:12, 55:23, 60:6, 62:16, 62:17
**millions** [2] - 12:11, 23:23
**mind** [2] - 61:14, 64:15
**minimal** [1] - 65:18
**minimum** [3] - 20:1, 20:24, 21:3
**Minneapolis** [2] - 3:7, 59:22
**Minnesota** [1] - 3:7
**minor** [1] - 74:3
**minus** [1] - 15:25
**minutes** [2] - 30:22, 33:11
**Miss** [1] - 6:4
**missing** [1] - 55:4
**model** [1] - 11:10
**moment** [3] - 54:8, 72:4, 72:6
**money** [1] - 44:3
**monitoring** [1] - 16:5
**month** [1] - 64:6
**months** [8] - 9:19, 48:12, 52:23, 56:15, 56:18
**morning** [11] - 5:15, 5:17, 5:21, 5:24, 6:2, 6:7, 6:9, 6:12, 7:11, 9:3, 30:3
**morning's** [1] - 6:18
**MORRIS** [1] - 3:9
**Morris** [2] - 5:25, 12:18
**most** [8] - 12:20, 18:3, 25:12, 37:10, 50:9, 51:12, 51:23, 60:22
**move** [2] - 11:15, 30:12
**moving** [1] - 74:3
**MR** [34] - 5:15, 5:17, 5:21, 5:24, 6:7, 6:12, 7:9, 10:18, 12:5, 29:18, 29:22, 31:4, 31:7, 54:4, 55:5, 59:11, 59:18, 59:20, 60:1, 60:25, 62:1, 62:4, 62:13, 65:22, 66:6, 66:13, 66:20, 68:22, 69:14, 71:2, 71:7, 73:11, 74:2, 74:15
**MS** [111] - 5:19, 6:2, 6:9, 7:11, 8:9, 9:1, 9:3, 10:6, 12:17, 13:8, 14:12, 15:10, 15:13, 16:2, 16:21, 16:25, 17:6, 17:11,

17:17, 17:22, 18:18, 18:25, 20:6, 21:7, 21:19, 23:13, 24:5, 24:23, 25:22, 26:10, 26:17, 26:22, 27:14, 27:22, 28:7, 28:14, 29:16, 30:2, 30:23, 31:3, 31:9, 32:13, 32:19, 32:21, 33:6, 34:5, 34:9, 35:2, 35:21, 36:3, 36:12, 36:21, 37:17, 38:11, 38:22, 39:4, 39:7, 39:15, 39:16, 40:4, 40:11, 40:18, 40:23, 41:6, 41:10, 41:13, 42:1, 42:24, 43:6, 43:16, 44:25, 45:9, 46:8, 46:13, 46:18, 46:22, 47:5, 47:8, 47:23, 48:3, 48:6, 48:22, 49:5, 49:9, 49:18, 49:21, 51:13, 51:22, 51:25, 52:25, 53:3, 54:3, 54:24, 55:22, 56:7, 56:11, 56:23, 57:4, 57:8, 57:14, 58:12, 58:18, 63:21, 64:5, 64:12, 68:5, 68:10, 69:22, 71:5, 72:6, 72:19
**multiple** [6] - 20:17, 27:5, 50:3, 57:16, 71:7
**must** [2] - 20:1, 20:2
**mute** [1] - 51:17
**Mylan** [3] - 3:14, 6:8, 59:21

## N

**nail** [1] - 30:4
**name** [3] - 5:8, 5:10, 45:7
**names** [3] - 42:19, 57:25, 58:1
**narrow** [2] - 64:10, 64:13
**nature** [2] - 25:13, 52:14
**NE** [1] - 3:17
**necessarily** [1] - 71:10
**necessary** [3] - 23:9, 50:18, 51:8
**need** [16] - 18:21, 20:24, 34:3, 35:11, 38:9, 44:12, 59:1, 60:4, 61:18, 61:25, 69:25, 70:8, 70:16, 72:4, 72:18, 73:24
**needs** [4] - 40:1,

55:11, 62:22, 65:6
**negotiate** [1] - 34:14
**negotiated** [2] - 65:8, 70:13, 71:24
**negotiating** [1] - 53:6
**negotiation** [1] - 19:12
**negotiations** [2] - 19:18, 33:24
**never** [4] - 44:22, 45:17, 45:18, 71:13
**NEW** [1] - 1:2
**New** [3] - 1:15, 3:4, 21:15
**next** [31] - 10:5, 14:22, 26:22, 32:12, 32:13, 32:22, 35:1, 35:2, 36:5, 36:16, 38:19, 42:1, 46:7, 46:8, 47:4, 47:5, 48:20, 48:21, 55:21, 56:20, 59:4, 59:15, 60:9, 60:11, 63:15, 64:6, 72:13, 73:4, 73:18, 74:16
**NIGH** [9] - 1:17, 5:17, 65:22, 66:6, 66:13, 66:20, 68:22, 69:14, 71:7
**Nigh** [6] - 5:17, 65:22, 66:5, 67:20, 71:14, 71:23
**nine** [1] - 48:12
**nitrosamine** [1] - 26:25
**no-brainer** [1] - 69:13
**nobody** [2] - 11:14, 66:8
**noise** [1] - 51:16
**none** [1] - 63:25
**normal** [2] - 27:16, 32:1
**normally** [1] - 31:18
**NOS** [1] - 1:7
**note** [3] - 37:12, 39:23, 64:14
**nothing** [1] - 67:5
**notice** [3] - 36:25, 52:13, 73:21
**notices** [8] - 23:19, 23:24, 24:2, 24:4, 24:6, 24:22, 26:4, 36:6
**notion** [1] - 62:20
**number** [25] - 13:24, 14:8, 18:22, 19:3, 19:5, 19:9, 19:16, 20:3, 20:8, 20:12, 20:24, 21:4, 28:1, 30:5, 30:8, 31:16, 31:22, 31:23, 46:15,

65:15, 65:25, 66:1, 66:2, 66:4
**NUMBER** [1] - 1:4
**numbers** [2] - 27:19, 32:5
**Numeral** [3] - 30:18, 31:5, 32:10

## O

**o'clock** [3] - 6:19, 73:22, 74:1
**oath** [2] - 43:10, 43:13
**object** [2] - 22:11, 57:11
**objected** [1] - 57:12
**objection** [19] - 7:5, 31:20, 32:10, 34:22, 35:10, 36:2, 36:12, 36:14, 36:15, 38:18, 42:23, 47:2, 47:16, 47:21, 58:13, 59:10, 59:11, 59:25, 61:23
**obligation** [1] - 25:2
**obtain** [2] - 41:22, 41:23
**obviously** [6] - 10:8, 14:25, 25:5, 50:17, 54:10, 55:7
**occasions** [1] - 71:8
**occurred** [1] - 44:15
**OF** [1] - 1:2
**offered** [2] - 48:7, 58:9
**offers** [1] - 44:1
**office** [1] - 70:23
**Official** [1] - 1:23
**oftentimes** [1] - 69:1
**OH** [1] - 3:25
**ON** [1] - 1:6
**once** [5] - 22:7, 22:22, 27:2, 32:19, 55:10
**One** [1] - 3:13
**one** [40] - 7:10, 11:10, 11:20, 12:17, 13:17, 14:16, 14:17, 14:18, 16:8, 18:1, 19:21, 24:14, 24:24, 25:8, 25:18, 26:14, 28:21, 32:15, 34:6, 35:13, 35:23, 37:14, 39:20, 43:22, 44:6, 45:1, 45:2, 50:10, 56:24, 57:20, 59:3, 59:8, 60:2, 61:21, 66:15, 68:22
**one-way** [1] - 44:6
**ongoing** [1] - 34:1
**open** [3] - 7:21, 9:6, 34:21
**opportunity** [1] - 9:22

**opposed** [2] - 40:2, 40:8
**ORAL** [1] - 1:6
**oranges** [2] - 12:3, 12:6
**order** [36] - 6:24, 6:25, 9:19, 9:24, 10:2, 11:22, 15:9, 16:15, 18:19, 19:23, 23:2, 25:25, 31:14, 36:10, 49:17, 52:5, 54:8, 54:13, 55:3, 55:20, 56:4, 56:9, 56:13, 62:6, 63:1, 63:8, 64:1, 66:8, 66:18, 68:24, 70:7, 71:1, 72:1, 72:12, 72:14, 74:11
**ordered** [4] - 61:14, 63:10, 68:11, 74:4
**ordering** [1] - 68:12
**orders** [1] - 33:8
**original** [1] - 33:18
**originally** [1] - 48:6
**Orleans** [1] - 3:4
**otherwise** [2] - 36:17, 38:13
**ought** [1] - 23:14
**outstanding** [2] - 8:3, 8:16
**overbroad** [2] - 35:18, 35:21
**overlap** [1] - 60:6
**overruled** [5] - 31:20, 32:11, 35:10, 36:14, 58:14
**own** [12] - 14:21, 14:23, 15:1, 22:2, 27:7, 28:24, 40:25, 41:5, 46:2, 57:19, 68:17
**Oxford** [1] - 3:13

## P

**P.C** [1] - 4:2
**p.m** [2] - 59:16, 74:24
**PA** [1] - 4:3
**pace** [1] - 29:3
**page** [7] - 12:12, 26:18, 26:23, 32:14, 32:23, 46:15, 55:24
**Page** [12] - 13:6, 13:8, 23:17, 30:18, 32:10, 46:10, 46:14, 56:21, 57:2, 68:6, 71:5, 71:19
**pages** [2] - 12:11, 29:8
**paired** [1] - 62:22
**PAPANTONIO** [1] -

1:16
**paper** [1] - 16:17
**papers** [1] - 66:10
**Paragraph** [9] - 11:22, 12:2, 15:8, 15:12, 15:14, 15:25, 16:3, 16:5, 23:2
**paragraph** [2] - 11:23, 35:3
**Park** [1] - 3:21
**Parkway** [2] - 1:14, 4:3
**part** [5] - 33:3, 51:12, 51:23, 70:3, 70:15
**particular** [41] - 10:24, 11:23, 12:15, 12:25, 15:3, 17:9, 18:23, 22:10, 25:21, 27:10, 30:20, 32:5, 32:6, 32:8, 34:24, 36:2, 36:3, 37:22, 38:23, 43:11, 44:24, 45:5, 45:25, 46:5, 46:17, 52:20, 57:23, 58:2, 58:3, 58:15, 59:3, 61:23, 61:24, 63:6, 63:13, 67:21, 68:2, 70:20, 71:1, 71:17, 72:14
**particularize** [1] - 72:16
**particularizing** [1] - 73:5
**particularly** [2] - 57:17, 65:2
**PARTIES** [1] - 5:1
**parties** [12] - 6:22, 7:2, 8:23, 12:11, 27:19, 32:5, 54:19, 59:3, 59:5, 60:3, 60:8, 63:14
**PARTIES'** [1] - 1:7
**parts** [1] - 35:11
**party's** [1] - 31:21
**past** [8] - 6:5, 9:17, 30:21, 33:10, 35:3
**PC** [1] - 1:19
**pencils** [1] - 58:15
**Pennsylvania** [3] - 1:21, 3:11, 3:14
**Pensacola** [1] - 1:18
**people** [12] - 5:5, 15:24, 17:3, 17:16, 40:9, 40:10, 40:20, 40:21, 42:13, 44:16, 59:13
**per** [2] - 20:17, 25:11
**percent** [1] - 69:11
**perfect** [1] - 60:21
**perfectly** [1] - 67:22

**performed** [2] - 18:9, 26:25
**period** [3] - 8:19, 18:4, 55:18
**periods** [1] - 48:10
**permission** [1] - 66:23
**person** [4] - 35:6, 35:14, 44:24, 72:12
**personal** [6] - 16:6, 46:10, 64:2, 64:5, 69:24, 70:2
**perspective** [2] - 43:17, 55:15
**PFS** [3] - 66:20, 69:6, 69:9
**Pharma** [4] - 3:19, 4:4, 4:4
**Pharmaceutical** [1] - 3:18
**Pharmaceuticals** [3] - 3:18, 6:8, 59:21
**pharmacies** [1] - 49:14
**Pharmacy** [1] - 6:10
**pharmacy** [1] - 52:2
**Philadelphia** [2] - 1:21, 3:11
**phone** [7] - 5:6, 6:4, 39:6, 48:15, 51:17, 72:12, 72:15
**photos** [1] - 52:2
**phrase** [2] - 33:12, 39:12
**physical** [1] - 73:2
**physician** [1] - 65:16
**physicians** [1] - 51:3
**pick** [1] - 23:24
**picked** [1] - 26:7
**picking** [1] - 28:1
**piece** [2] - 16:17, 39:20
**Piedmont** [1] - 3:17
**PIETRAGALLO** [1] - 3:12
**pill** [2] - 13:21, 21:14
**pills** [5] - 13:19, 38:23, 43:25, 44:3, 50:15
**pinpoint** [1] - 28:18
**Pittsburgh** [1] - 3:14
**place** [5] - 25:12, 30:6, 30:24, 31:12, 74:9
**plaintiff** [41] - 5:14, 12:13, 13:19, 14:10, 14:14, 17:7, 17:25, 21:14, 21:23, 21:24, 25:6, 25:11, 27:6, 28:19, 33:13, 33:15, 33:21, 34:4, 34:10, 37:2, 37:15, 45:11, 45:25, 46:5, 48:12,

53:22, 63:7, 63:14, 63:18, 63:24, 65:6, 65:18, 65:21, 67:10, 67:12, 69:16, 69:23, 69:24, 71:9, 71:11, 71:17
**Plaintiff** [19] - 1:15, 1:18, 1:21, 3:4, 3:8, 14:20, 38:21, 45:21, 49:11, 49:12, 50:6, 50:11, 52:1, 58:8, 64:16, 65:5, 67:18, 70:12, 71:13
**plaintiff's** [10] - 12:10, 13:21, 14:12, 21:15, 25:2, 27:7, 29:1, 59:18, 63:15, 64:25
**plaintiff-specific** [3] - 21:14, 33:13, 33:15
**plaintiffs** [109] - 5:16, 5:18, 5:20, 5:22, 7:12, 10:15, 14:2, 16:3, 16:6, 16:15, 16:16, 17:9, 18:1, 18:3, 18:5, 18:7, 18:11, 18:12, 19:25, 20:13, 20:21, 21:2, 21:6, 23:8, 23:10, 23:21, 24:3, 24:8, 24:12, 24:16, 24:17, 24:20, 24:21, 25:1, 25:18, 25:19, 27:2, 27:12, 27:17, 27:18, 27:25, 28:4, 28:6, 28:9, 28:14, 28:16, 29:11, 29:12, 29:14, 30:6, 30:15, 33:12, 33:19, 34:2, 35:9, 36:7, 37:12, 39:11, 40:3, 42:3, 42:6, 42:8, 42:14, 43:1, 43:11, 44:12, 44:13, 44:18, 44:22, 45:5, 46:5, 48:2, 49:8, 49:9, 49:11, 49:12, 50:1, 50:3, 50:16, 50:20, 50:23, 51:10, 51:19, 53:8, 58:14, 60:21, 61:2, 61:11, 61:15, 62:15, 63:9, 63:25, 64:2, 64:5, 64:18, 65:10, 65:25, 66:1, 66:2, 66:18, 67:24, 68:12, 68:13, 69:7, 70:6, 70:14, 71:25, 72:20
**Plaintiffs** [2] - 42:16, 58:11
**plaintiffs'** [8] - 22:4, 22:20, 43:17, 48:5, 51:3, 52:16, 63:23,

72:23
**Plaintiffs'** [4] - 43:1, 43:5, 43:6, 71:3
**plan** [3] - 14:12, 16:25, 54:19
**platform** [1] - 33:7
**PLLC** [1] - 3:5
**plus** [2] - 15:25, 25:15
**point** [11] - 8:4, 12:23, 13:17, 16:8, 18:1, 18:12, 45:1, 55:11, 61:11, 69:3, 70:19
**pointed** [1] - 54:6
**points** [2] - 29:24, 39:16
**popcorn** [1] - 34:6
**portions** [1] - 7:24
**position** [20] - 17:20, 23:4, 29:12, 29:15, 33:9, 33:22, 35:8, 36:21, 37:24, 38:1, 38:2, 38:7, 42:24, 46:22, 47:14, 48:5, 49:20, 49:21, 65:11, 69:18
**positions** [1] - 31:21
**positive** [1] - 43:9
**possession** [7] - 38:20, 39:18, 40:25, 41:7, 52:3, 71:16, 71:22
**possible** [2] - 59:15, 59:22
**possibly** [1] - 12:20
**potentially** [6] - 22:3, 25:10, 36:17, 37:5, 38:14, 38:17
**practical** [2] - 24:25, 25:4
**practice** [2] - 32:3, 70:6
**preceding** [1] - 50:8
**precise** [1] - 20:18
**precisely** [1] - 63:9
**preface** [1] - 13:4
**preference** [1] - 61:10
**premature** [2] - 46:22, 53:18
**prepare** [1] - 23:24
**prepared** [2] - 21:5, 29:23
**prescription** [1] - 18:5
**prescriptions** [1] - 16:18
**present** [2] - 63:25, 66:7
**press** [1] - 23:20
**pressed** [1] - 56:16
**pretty** [2] - 20:22, 64:18

**previously** [1] - 36:1
**pricing** [12] - 33:17, 33:24, 34:2, 34:12, 34:25, 56:22, 58:21, 59:6, 59:14, 60:3, 60:9, 73:13
**primarily** [1] - 65:16
**primary** [1] - 65:16
**printout** [1] - 23:20
**priorities** [1] - 63:11
**prioritization** [6] - 60:19, 61:4, 61:12, 61:15, 62:14, 74:3
**prioritize** [5] - 9:9, 61:9, 62:16, 62:18, 63:3
**prioritized** [1] - 61:17
**prioritizes** [1] - 62:22
**prioritizing** [2] - 60:24, 62:21
**priority** [3] - 62:6, 63:1, 74:13
**problem** [7] - 48:8, 60:24, 61:1, 63:6, 63:13, 63:17, 64:7
**problematic** [1] - 72:22
**problems** [1] - 11:20
**procedure** [1] - 52:10
**proceed** [1] - 25:20
**proceedings** [2] - 54:13, 75:3
**Proceedings** [1] - 1:25
**process** [9] - 22:18, 34:11, 49:2, 50:4, 50:18, 53:4, 53:6, 64:20, 72:7
**produce** [13] - 7:7, 7:19, 10:14, 16:16, 23:22, 28:1, 32:2, 36:9, 36:10, 45:3, 51:20, 52:15, 61:16
**produced** [12] - 2:1, 8:25, 16:19, 22:9, 24:7, 24:17, 30:7, 52:15, 53:24, 62:10, 62:11, 69:25
**produces** [1] - 27:17
**producing** [2] - 8:12, 23:11
**product** [29] - 11:3, 11:25, 13:15, 13:23, 14:3, 14:4, 15:22, 16:18, 17:9, 17:13, 17:24, 17:25, 18:8, 19:20, 20:15, 20:20, 20:21, 21:25, 22:13, 22:19, 22:22, 23:9, 27:2, 28:19, 40:16,

41:1, 50:1, 51:20
**product's** [1] - 22:7
**production** [15] - 7:4, 7:8, 8:6, 8:17, 9:6, 9:12, 9:25, 12:7, 12:10, 31:15, 34:18, 34:20, 56:10, 60:24, 63:3
**productions** [2] - 22:2, 22:24
**productive** [2] - 59:7, 60:7
**products** [2] - 28:3, 68:25
**PRODUCTS** [1] - 1:4
**project** [1] - 19:20
**propose** [2] - 49:8, 49:9
**proposed** [6] - 7:14, 14:14, 48:6, 48:7, 50:21, 61:24
**proposes** [1] - 59:4
**prospective** [2] - 35:14, 35:17
**protection** [1] - 67:25
**prove** [4] - 19:20, 27:7, 70:9, 70:16
**provide** [33] - 9:24, 9:25, 12:23, 13:12, 13:23, 14:11, 17:24, 19:4, 19:9, 19:17, 19:25, 21:14, 21:21, 22:7, 25:7, 27:12, 36:25, 41:16, 48:16, 49:24, 50:14, 51:11, 61:15, 65:6, 65:7, 65:10, 65:18, 67:14, 68:11, 68:13, 68:16, 69:24, 70:15
**provided** [14] - 14:20, 20:4, 41:24, 46:20, 46:24, 51:12, 61:1, 64:15, 68:3, 68:19, 70:2, 70:10, 70:12, 72:1
**provider** [4] - 65:5, 65:7, 66:15, 66:17
**providers** [7] - 65:10, 65:14, 66:23, 67:2, 67:8, 67:14, 67:17
**providing** [1] - 66:21, 67:15
**proving** [1] - 29:1
**proviso** [2] - 34:18, 58:14
**purchase** [1] - 33:8
**purposes** [2] - 5:12, 66:8
**pursuant** [2] - 15:8, 16:15

**push** [2] - 52:21, 58:4
**pushed** [1] - 44:9
**put** [4] - 51:17, 66:9, 70:13, 70:24

**Q**

**qualified** [1] - 74:7
**quality** [4] - 62:7, 62:8, 62:17, 62:18
**querying** [1] - 20:23
**questions** [30] - 10:13, 10:16, 10:23, 12:15, 12:25, 13:2, 13:6, 13:7, 13:9, 13:13, 13:14, 18:14, 19:1, 19:5, 19:23, 20:7, 20:13, 21:22, 22:1, 23:15, 25:14, 25:21, 26:1, 26:5, 26:13, 36:23, 36:24, 41:25, 54:12, 57:9
**quickly** [1] - 30:13
**quite** [9] - 10:10, 12:1, 18:12, 19:21, 49:23, 52:13, 57:21, 58:5, 60:20
**quote** [4] - 17:14, 37:5, 37:8, 54:22

**R**

**raise** [4] - 6:22, 7:2, 45:15, 73:20
**RAISED** [1] - 1:6
**RASPANTI** [1] - 3:12
**rate** [1] - 64:17
**rather** [1] - 66:15
**RE** [1] - 1:4
**reach** [3] - 44:5, 45:16, 45:19
**reached** [1] - 44:12
**read** [4] - 10:11, 33:1, 60:19, 68:1
**reading** [4] - 58:8, 66:10, 66:20, 67:6
**real** [1] - 21:20
**really** [15] - 10:22, 11:4, 11:14, 19:1, 20:19, 21:11, 30:5, 30:11, 35:18, 44:20, 50:1, 50:18, 51:2, 64:25, 73:15
**reason** [5] - 20:14, 41:2, 41:20, 44:9, 49:24
**reasonable** [12] - 30:16, 43:14, 51:8, 54:9, 54:14, 59:23, 63:2, 63:8, 63:11, 63:14, 67:22, 68:15

**recalled** [6] - 36:17, 36:19, 37:3, 38:3, 38:13, 38:16
**receive** [4] - 7:23, 7:24, 8:2, 18:3
**received** [14] - 6:17, 8:13, 13:19, 15:2, 18:5, 18:7, 20:12, 21:23, 28:9, 28:16, 44:22, 45:22, 50:16, 53:12
**receiving** [1] - 20:7
**recently** [1] - 50:23
**recited** [1] - 11:23
**recognize** [1] - 53:15
**reconvene** [1] - 74:18
**record** [7] - 5:3, 39:13, 53:22, 69:22, 74:5, 74:9, 75:3
**recorded** [1] - 1:25
**records** [7] - 20:16, 52:2, 57:19, 57:21, 58:6, 70:7, 70:8
**redline** [5] - 13:10, 26:17, 31:6, 32:13, 42:2
**redlines** [1] - 13:1
**referring** [3] - 23:17, 27:11, 40:15
**refill** [1] - 18:5
**reflected** [1] - 42:2
**refused** [1] - 40:16
**regained** [1] - 39:18
**regard** [9] - 8:23, 17:12, 51:10, 59:13, 59:14, 71:15, 72:2, 72:10, 74:4
**regarding** [12] - 9:20, 16:17, 29:8, 33:17, 41:25, 42:11, 42:19, 42:21, 47:13, 53:16, 56:22, 72:17
**regards** [3] - 6:23, 27:10, 51:19
**regulatory** [2] - 62:9, 62:10
**relate** [5] - 17:9, 28:3, 29:10, 29:14, 30:20
**related** [2] - 9:17, 12:3
**relates** [4] - 12:2, 22:10, 30:9, 31:10
**relationship** [1] - 15:11
**relatively** [2] - 41:21, 70:19
**relevant** [16] - 7:6, 7:14, 8:11, 8:19, 14:4, 22:3, 22:21, 28:5, 29:1, 39:20, 44:16, 57:17, 58:10,

68:16, 68:25, 70:20
**remember** [5] - 18:2, 28:22, 44:19, 49:25, 63:19
**repeat** [7] - 29:21, 38:9, 41:12, 51:14, 64:4, 64:11, 68:7
**report** [3] - 33:4, 46:21, 46:25
**reporter** [8] - 5:8, 5:11, 29:21, 41:12, 51:17, 64:4, 64:11, 74:19
**Reporter** [2] - 1:23, 68:7
**Reporter/ Transcriber** [1] - 75:5
**reports** [1] - 33:20
**representation** [1] - 21:5
**representatives** [2] - 16:4, 69:11
**represented** [1] - 58:16
**represents** [1] - 45:22
**reproduction** [1] - 12:6
**Request** [1] - 33:20
**request** [17] - 7:18, 7:23, 11:19, 27:20, 31:15, 32:6, 33:18, 34:13, 47:18, 67:3, 67:12, 67:13, 67:17, 68:18, 71:8, 71:10, 74:7
**requested** [3] - 33:19, 43:24, 47:20
**requesting** [1] - 23:8
**requests** [8] - 11:10, 33:21, 33:22, 33:25, 45:2, 47:10, 47:12, 53:7
**require** [9] - 27:19, 32:4, 43:14, 45:2, 51:6, 57:20, 71:12, 71:25, 73:15
**required** [5] - 31:16, 39:21, 52:1, 69:8, 69:16
**requires** [2] - 22:1, 68:1
**requiring** [1] - 24:25
**reserve** [2] - 34:24, 55:17
**reserved** [1] - 73:13
**resolve** [3] - 30:13, 64:13, 72:24
**resolved** [4] - 29:4, 54:23, 64:9, 73:1

**respect** [2] - 7:17, 34:19
**respective** [1] - 31:21
**respectively** [1] - 14:18
**respond** [8] - 14:21, 26:18, 27:5, 32:8, 47:24, 52:5, 53:19, 71:13
**responding** [1] - 69:2
**response** [3] - 35:5, 50:25, 56:3
**responses** [1] - 20:8
**responsive** [3] - 27:19, 32:6, 42:21
**result** [3] - 28:18, 35:4, 38:20
**results** [5] - 22:9, 28:9, 37:7, 37:11, 74:8
**retailer** [9] - 6:10, 16:23, 16:24, 17:2, 18:22, 19:3, 53:1, 53:9, 53:20
**Retailer** [1] - 19:11
**retailer/wholesaler** [3] - 53:23, 54:21, 55:2
**retailers** [7] - 14:16, 14:19, 14:21, 19:9, 48:19, 48:23, 49:3
**retailers'** [1] - 56:3
**retrievable** [1] - 58:4
**return** [2] - 41:11, 47:25
**returned** [3] - 38:20, 40:5, 41:1
**review** [2] - 22:1, 22:9
**revisions** [1] - 53:12
**rights** [1] - 44:2
**ripe** [2] - 63:25, 66:10
**ripened** [1] - 66:3
**risk** [1] - 11:13
**RMR** [1] - 75:5
**Road** [1] - 3:17
**rolled** [1] - 20:25
**rolling** [6] - 7:8, 7:19, 8:6, 9:6, 9:12, 9:25
**Roman** [3] - 30:18, 31:5, 32:10
**Roseland** [1] - 1:15
**RUBEN** [1] - 1:20
**Ruben** [1] - 5:21
**Rule** [3] - 53:7, 53:10, 53:14
**rule** [1] - 53:15
**ruled** [3] - 23:5, 41:9, 45:20
**rules** [3] - 34:19, 67:21, 70:10
**ruling** [8] - 9:16,

15:16, 26:16, 31:19, 36:1, 36:13, 41:15, 68:2
**RULINGS** [1] - 1:6
**rustle** [1] - 11:6

**S**

**sails** [2] - 38:7, 68:20
**sale** [2] - 13:25, 19:7
**sales** [13] - 33:17, 33:24, 34:2, 34:12, 34:17, 34:20, 34:25, 56:22, 58:21, 59:6, 59:14, 60:3, 60:8
**samples** [1] - 39:10
**Sarah** [3] - 6:10, 52:25, 54:24
**SARAH** [1] - 3:20
**save** [2] - 11:13, 26:19
**scanning** [1] - 73:12
**schedule** [2] - 6:19, 60:18
**Schneider** [2] - 47:16, 62:25
**SCHNEIDER** [1] - 1:11
**scope** [3] - 15:15, 19:18, 31:24
**search** [13] - 20:2, 42:10, 42:13, 42:15, 42:20, 43:10, 44:16, 44:21, 44:23, 45:24, 46:3, 46:10, 56:13
**second** [9] - 12:17, 25:4, 26:22, 32:17, 37:3, 39:8, 39:23, 68:4, 68:5
**section** [2] - 31:10, 70:21
**Section** [4] - 23:17, 30:24, 31:4, 37:4
**sections** [2] - 32:24, 67:5
**see** [12] - 10:8, 13:8, 24:12, 26:17, 38:16, 46:23, 47:6, 59:8, 60:12, 61:17, 61:23, 73:14
**seeing** [3] - 18:4, 64:17, 66:1
**seek** [1] - 71:12
**seeking** [2] - 25:3, 25:7
**sell** [1] - 21:9
**sells** [1] - 20:17
**send** [5] - 43:23, 43:25, 44:2, 60:12, 69:5
**sense** [11] - 6:25, 12:11, 12:25, 23:25,

25:23, 26:11, 40:6, 40:7, 42:12, 60:21, 61:13
**sent** [4] - 11:9, 24:3, 36:25, 45:3
**Sentry** [1] - 4:3
**separate** [2] - 59:2, 73:16
**served** [2] - 33:19, 45:12
**serves** [1] - 49:12
**set** [6] - 7:1, 7:20, 13:6, 57:16, 59:22, 62:6
**SETH** [1] - 3:9
**Seth** [2] - 5:24, 60:25
**several** [5] - 10:23, 18:7, 28:17, 32:24, 36:22
**shared** [1] - 64:24
**sharpen** [1] - 58:15
**sheet** [39] - 12:2, 13:18, 15:12, 15:14, 15:15, 18:15, 23:7, 34:23, 40:1, 45:25, 47:11, 47:20, 48:5, 49:17, 50:25, 51:1, 51:5, 52:5, 52:6, 52:12, 54:7, 54:10, 54:14, 55:10, 55:11, 55:14, 55:18, 56:4, 56:9, 56:24, 56:25, 58:19, 66:16, 67:25, 70:20, 70:21, 70:23, 70:25, 72:2
**Sheet** [23] - 14:20, 14:21, 15:21, 19:19, 22:16, 36:23, 37:13, 39:22, 39:24, 43:1, 46:23, 48:13, 49:11, 49:12, 49:14, 50:6, 50:8, 52:1, 56:5, 57:10, 65:6, 67:18, 70:12
**Sheets** [11] - 10:8, 19:11, 20:9, 43:5, 43:7, 50:10, 50:12, 63:18, 64:16, 71:3, 71:13
**sheets** [17] - 10:14, 14:15, 14:24, 20:10, 22:12, 28:22, 35:19, 53:16, 53:19, 53:23, 54:21, 55:2, 56:16, 66:19, 71:24, 72:5
**shifting** [1] - 28:25
**Short** [4] - 72:8, 72:15, 72:18, 72:22
**short** [1] - 31:9
**show** [3] - 23:9, 64:1,

66:8
**showing** [1] - 66:1
**shown** [1] - 13:14
**side** [2] - 26:23, 59:18
**sides** [2] - 30:16, 39:11
**sign** [1] - 44:2
**significant** [1] - 69:25
**signing** [1] - 66:22
**similar** [3] - 9:6, 15:17, 33:19
**similarly** [1] - 37:3
**simple** [1] - 43:8
**simplify** [1] - 48:15
**simply** [1] - 62:5
**single** [2] - 32:24, 48:12
**situation** [2] - 50:13, 52:8
**six** [1] - 52:23
**skip** [1] - 60:18
**SLATER** [13] - 1:13, 1:14, 5:15, 7:9, 10:18, 12:5, 29:18, 29:22, 31:4, 31:7, 59:18, 74:2, 74:15
**Slater** [11] - 5:15, 7:1, 7:8, 10:10, 13:17, 27:9, 27:16, 29:6, 29:17, 74:2, 74:13
**Slater's** [6] - 6:24, 7:3, 23:16, 26:15, 56:21, 73:8
**sleeves** [1] - 20:25
**small** [1] - 25:8
**smoother** [1] - 52:11
**sold** [1] - 19:6
**solvent** [5] - 57:6, 57:23, 58:2, 58:3
**solvents** [7] - 57:15, 57:16, 57:17, 57:25, 58:2, 58:9, 58:15
**someone** [1] - 48:22
**sometimes** [2] - 39:7, 43:21
**somewhat** [2] - 15:17, 61:4
**soon** [1] - 9:8
**sorry** [8] - 8:3, 27:22, 27:25, 43:4, 46:14, 48:3, 51:13, 56:24
**sort** [5] - 8:2, 13:4, 18:22, 22:23, 73:7
**sound** [1] - 15:17
**sounds** [3] - 8:5, 23:3, 54:5
**speaker** [1] - 64:7
**speaking** [3] - 6:5, 51:16, 54:5
**specific** [19] - 11:18,

12:9, 12:13, 13:2, 13:20, 15:2, 21:14, 22:3, 22:24, 23:15, 26:2, 29:24, 33:13, 33:15, 62:21, 63:10, 67:23, 68:12, 68:13
**specifically** [6] - 10:17, 12:12, 30:12, 33:24, 65:6, 67:11
**specification** [1] - 65:5
**specifics** [3] - 10:20, 10:21, 12:9
**speculation** [1] - 45:21
**speed** [1] - 60:13
**spot** [1] - 25:8
**spreadsheet** [1] - 11:9
**spreadsheets** [1] - 11:12
**stage** [2] - 17:15, 69:1
**stance** [1] - 37:11
**standpoint** [3] - 25:4, 25:5, 37:20
**STANOCH** [1] - 71:2
**Stanoch** [1] - 34:6
**start** [10] - 5:14, 6:23, 7:3, 7:14, 8:11, 8:18, 13:10, 14:19, 49:15, 52:21
**started** [1] - 31:23
**starts** [5] - 8:7, 35:4, 42:2, 47:6, 49:13
**state** [5] - 5:8, 8:22, 11:16, 35:4, 66:3
**states** [1] - 74:8
**STATES** [2] - 1:2, 1:11
**States** [3] - 15:2, 21:11, 45:4
**stenography** [1] - 1:25
**still** [8] - 9:11, 12:16, 19:11, 37:14, 38:24, 46:13, 52:23, 53:19
**stop** [3] - 15:5, 23:12, 45:16
**store** [1] - 33:3
**stored** [1] - 33:14
**Street** [4] - 1:20, 3:3, 3:10, 3:24
**struck** [1] - 31:20
**structure** [1] - 63:15
**Sub** [1] - 30:25
**subset** [1] - 43:11
**substantive** [1] - 26:20
**sue** [1] - 73:6
**sufficient** [3] - 48:17, 58:24, 64:20
**suggest** [5] - 6:23,

49:7, 59:2, 61:20, 67:6
**suggestion** [1] - 55:7
**suing** [1] - 72:16
**Suite** [6] - 1:17, 1:20, 3:7, 3:17, 3:21, 4:3
**suite** [1] - 3:24
**summarize** [1] - 69:12
**summary** [1] - 68:18
**superficially** [1] - 72:11
**superior** [1] - 31:12
**supplemented** [1] - 74:14
**supplied** [1] - 35:4
**supplier** [2] - 57:22, 58:3
**suppliers** [1] - 58:1
**supply** [11] - 13:20, 14:3, 14:13, 14:16, 14:24, 15:4, 17:3, 17:25, 21:23, 50:7, 50:8
**suppose** [1] - 73:19
**supposed** [2] - 45:19, 48:24
**suspect** [2] - 23:19, 59:10
**sustained** [5] - 34:22, 38:18, 47:2, 47:17, 47:21
**symbol** [1] - 35:3

## T

**tabled** [1] - 53:8
**tables** [1] - 53:13
**talks** [1] - 66:17
**tally** [1] - 25:1
**team** [1] - 63:23
**teed** [1] - 53:7
**TELEPHONE** [1] - 5:1
**telephone** [1] - 1:8
**term** [1] - 35:18
**terms** [5] - 37:9, 66:1, 68:23
**territory** [1] - 45:21
**test** [3] - 11:8, 28:9, 35:4
**tested** [1] - 37:21
**testing** [13] - 22:9, 26:25, 28:2, 28:5, 28:18, 29:8, 29:9, 31:13, 37:6, 37:7, 37:10, 38:25, 74:8
**tests** [1] - 22:10
**Teva** [4] - 3:18, 3:18, 6:3, 21:9
**THE** [2] - 1:2, 1:11
**The court** [170] - 5:3,

5:4, 5:6, 5:7, 5:11, 5:23, 6:15, 7:5, 8:4, 8:22, 9:2, 9:16, 9:18, 9:19, 10:7, 10:11, 11:20, 11:22, 11:24, 12:14, 13:3, 14:5, 15:5, 15:11, 15:16, 15:20, 15:23, 16:11, 16:22, 17:2, 17:7, 17:12, 17:19, 18:17, 18:19, 19:23, 20:22, 21:2, 21:5, 21:17, 23:5, 23:6, 23:12, 23:14, 24:14, 25:15, 25:25, 26:7, 26:14, 26:19, 27:9, 27:15, 27:20, 27:24, 28:12, 29:3, 29:5, 29:17, 30:1, 30:17, 31:1, 31:5, 31:8, 31:19, 31:20, 33:22, 34:4, 34:7, 34:8, 34:19, 34:22, 35:17, 35:25, 36:5, 36:6, 36:9, 36:14, 37:15, 38:6, 38:12, 39:1, 39:5, 39:9, 40:2, 40:8, 40:19, 41:3, 41:8, 41:21, 42:4, 43:4, 43:8, 44:11, 45:20, 46:12, 46:16, 46:20, 47:2, 47:7, 47:12, 47:16, 48:1, 48:4, 48:18, 49:3, 49:6, 49:16, 49:19, 51:9, 51:15, 51:17, 51:23, 52:4, 52:5, 53:2, 53:21, 54:16, 55:1, 55:3, 55:20, 56:6, 56:8, 56:12, 56:15, 57:3, 57:7, 57:13, 58:7, 58:13, 58:20, 58:23, 59:13, 59:25, 60:2, 60:11, 61:14, 61:19, 62:3, 62:12, 62:25, 63:10, 64:9, 64:12, 65:20, 66:5, 66:7, 66:14, 66:17, 67:20, 67:21, 68:2, 68:8, 68:11, 69:10, 69:15, 69:21, 70:18, 70:25, 71:4, 71:14, 71:25, 72:8, 73:3, 73:13, 74:12, 74:16, 74:19
**themselves** [2] - 37:7, 56:13
**they've** [8] - 9:9, 18:7, 42:7, 42:18, 43:23, 44:8, 61:10, 66:16
**third** [2] - 32:23, 70:4

**THORNBURG** [1] - 3:20
**thoughts** [2] - 58:22, 72:9
**thousand** [2] - 28:11, 38:9
**thousands** [1] - 23:22
**three** [2] - 48:9, 49:2
**three-tier** [1] - 49:2
**throughout** [1] - 38:8
**tier** [2] - 49:2, 49:13
**tight** [1] - 65:13
**time-consuming** [3] - 22:17, 50:4, 50:17
**timed** [1] - 50:25
**timing** [1] - 26:21, 52:17
**today** [6] - 9:11, 12:20, 48:14, 64:9, 64:13, 65:3
**together** [5] - 48:24, 52:18, 72:13, 73:4, 73:23
**took** [4] - 11:24, 28:17, 37:2, 52:11
**topics** [1] - 6:5
**Torrent** [2] - 21:10, 62:17
**total** [1] - 16:2
**touch** [2] - 9:22, 44:9
**toward** [1] - 14:15
**towards** [3] - 13:15, 14:16, 30:12
**trace** [7] - 10:23, 13:18, 14:2, 15:3, 17:25, 18:23, 23:9
**traceability** [5] - 17:8, 17:13, 18:20, 19:25, 31:22
**tracing** [3] - 11:25, 19:20, 20:15
**track** [3] - 19:16, 43:14, 45:23
**tracked** [1] - 41:19
**trailing** [1] - 53:4
**transactional** [1] - 33:9
**transcript** [2] - 2:1, 75:2
**transcription** [1] - 2:1
**Traurig** [2] - 6:3, 63:22
**TRAURIG** [1] - 3:15
**treating** [2] - 65:15
**tree** [1] - 11:7
**trial** [3] - 30:12, 43:19, 45:14
**tried** [2] - 44:5, 45:15
**trigger** [4] - 49:6, 50:5, 55:25, 56:17
**triggered** [1] - 56:19

**triggering** [1] - 49:10
**TRISCHLER** [3] - 3:13, 6:7, 59:20
**Trischler** [2] - 6:8, 59:21
**trivial** [1] - 64:22
**truthfully** [1] - 22:16
**try** [9] - 11:4, 13:18, 18:19, 25:16, 29:13, 33:12, 39:8, 52:17, 72:23
**trying** [6] - 10:23, 11:21, 12:16, 14:2, 30:11, 43:18
**turn** [3] - 17:19, 27:15, 29:5
**turnaround** [1] - 48:9
**two** [14] - 6:19, 10:20, 18:25, 19:1, 19:23, 24:23, 32:16, 39:16, 50:21, 61:23, 64:9, 64:12, 66:9, 72:3
**type** [12] - 14:1, 17:24, 20:18, 21:14, 25:6, 27:1, 27:3, 28:25, 33:13, 35:8, 49:22, 57:18
**types** [3] - 13:11, 25:13, 34:2

## U

**Ulmer** [1] - 6:13
**ULMER** [1] - 3:23
**ultimately** [3] - 19:20, 27:6, 55:18
**unacceptable** [1] - 72:11
**under** [7] - 19:11, 21:1, 28:11, 43:10, 43:13, 53:17, 70:10
**understood** [1] - 27:23
**undoubtedly** [1] - 32:3
**undue** [1] - 32:1
**unfair** [1] - 27:4
**unfortunately** [3] - 9:13, 32:23, 47:8
**unique** [2] - 25:24, 56:25
**uniquely** [1] - 57:9
**United** [3] - 15:2, 21:11, 45:4
**UNITED** [2] - 1:2, 1:11
**universe** [1] - 29:9
**unless** [1] - 21:3
**unlike** [1] - 8:3
**unquote** [2] - 17:14, 54:22

**up** [26] - 12:9, 13:21, 14:24, 15:4, 17:3, 18:22, 19:12, 19:13, 20:25, 21:15, 25:1, 25:6, 27:25, 28:23, 28:24, 29:7, 29:19, 34:7, 40:11, 41:11, 50:9, 53:7, 56:21, 60:13, 60:16, 66:2
**updated** [1] - 24:13
**upstream** [1] - 54:12
**upward** [1] - 13:19
**USA** [2] - 3:18, 4:4
**uses** [1] - 57:16

### V

**vague** [1] - 35:21
**valiant** [1] - 25:16
**VALSARTAN** [1] - 1:4
**Valsartan** [6] - 5:4, 13:24, 16:17, 18:3, 18:8, 28:11
**verses** [1] - 62:17
**version** [2] - 26:12, 31:6
**versus** [1] - 25:8
**VIA** [1] - 5:1
**Via** [1] - 1:8
**Victoria** [3] - 6:4, 63:21, 69:22
**VICTORIA** [1] - 3:16
**view** [2] - 25:16, 32:8
**Vine** [1] - 3:24
**visibility** [3] - 21:8, 21:12, 23:9
**voluminous** [1] - 32:2
**voluntary** [1] - 24:9

### W

**waiting** [1] - 9:7
**waive** [1] - 44:2
**Waleko** [6] - 12:18, 41:11, 44:25, 55:22, 56:23, 72:19
**WALEKO** [62] - 3:10, 12:17, 13:8, 14:12, 15:10, 15:13, 16:2, 16:21, 16:25, 17:6, 17:11, 17:17, 17:22, 18:18, 18:25, 20:6, 21:7, 21:19, 23:13, 24:5, 24:23, 25:22, 26:10, 26:17, 26:22, 27:14, 27:22, 28:7, 28:14, 29:16, 32:13, 32:21, 33:6, 35:2, 35:21, 36:3, 36:12, 36:21, 38:11, 39:16,

40:4, 40:18, 42:1, 44:25, 46:8, 46:13, 46:18, 46:22, 47:5, 47:8, 47:23, 49:21, 51:13, 55:22, 56:7, 56:11, 56:23, 57:4, 57:8, 57:14, 58:18, 72:19
**Walgreens** [1] - 17:10
**walk** [1] - 10:21
**Walmart** [1] - 17:10
**wants** [3] - 5:9, 21:24, 29:4
**warranted** [1] - 73:17
**waste** [1] - 30:11
**ways** [1] - 61:6
**wear** [1] - 11:14
**website** [1] - 24:11
**Wednesday** [3] - 1:9, 59:15, 60:9
**week** [3] - 59:5, 60:11, 73:18
**weeks** [3] - 50:21, 63:5, 63:6
**WERNER** [1] - 4:2
**WHITELEY** [3] - 3:2, 3:2, 5:19
**Whiteley** [1] - 5:19
**whole** [2] - 16:12, 52:10
**Wholesaler** [1] - 19:11
**wholesaler** [4] - 6:14, 19:3, 54:5, 56:3
**wholesalers** [6] - 14:17, 14:22, 48:24, 49:3, 49:14, 55:6
**Williamson** [2] - 29:19, 29:23
**wind** [2] - 38:6, 68:20
**withdrawn** [1] - 33:25
**withdrew** [1] - 33:21
**wording** [1] - 26:2
**words** [5] - 16:16, 17:14, 18:21, 27:11, 31:22
**works** [4] - 14:13, 31:13, 57:24, 60:1
**world** [2] - 18:11, 56:13
**worse** [1] - 11:14
**wrestling** [1] - 11:21
**written** [2] - 57:14, 61:22

### Y

**year** [2] - 65:9, 70:11
**years** [3] - 18:4, 18:6, 28:17
**yes/no** [1] - 20:10

**yourself** [1] - 24:18

### Z

**ZHP** [8] - 3:11, 5:25, 12:18, 20:16, 28:10, 60:1, 62:15