UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
IN RE:                        )    19-MD-2875(RBK-JS)
                              )
                              )
                              )    Camden, NJ
VALSARTAN NDMA PRODUCTS       )    October 10, 2019
LIABILITY LITIGATION          )    2:00 p.m.
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JOEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:        ADAM M. SLATER, ESQUIRE
                           CHRISTOPHER J. GEDDIS, ESQUIRE
                           MAZIE, SLATER, KATZ &
                           FREEMAN, LLC
                           103 Eisenhower Parkway
                           2nd Floor
                           Roseland, NJ    07068


                           RUBEN HONIK, ESQUIRE
                           DAVID J. STANOCH, ESQUIRE
                           GOLOMB & HONIK, PC
                           1835 Market Street
                           Suite 2900
                           Philadelphia, PA    19103


                           DANIEL NIGH, ESQUIRE
                           LEVIN PAPANTONIO
                           316 South Baylen Street
                           Pensacola, FL    32502


                           CONLEE S. WHITELEY, ESQUIRE
                           KANNER & WHITELEY, LLC
                           701 Camp Street
                           New Orleans, LA    70130

APPEARANCES:   (continued)


For the Plaintiffs:        GEORGE T. WILLIAMSON, ESQUIRE
                           FARR, FARR, EMERICH, HACKETT,
                           CARR & HOLMES, P.A.
                           99 Nesbit Street
                           Punta Gorda, FL   33950


For the Defendants:        SETH A. GOLDBERG, ESQUIRE
                           DUANE MORRIS, LLP
                           30 South 17th Street
                           Philadelphia, PA   19103


                           CLEM C. TRISCHLER, ESQUIRE
                           PIETRAGALLO GORDON ALFANO
                           BOSICK & RASPANTI, LLP
                           One Oxford Centre
                           38th Floor
                           Pittsburgh, PA   15219


                           BRIAN RUBENSTEIN, ESQUIRE
                           GREENBERG TRAURIG
                           1717 Arch Street, Suite 400
                           Philadelphia, PA   19103


                           JANET L. POLETTO, ESQUIRE
                           ROBERT E. BLANTON, JR., ESQUIRE
                           673 Morris Avenue
                           Springfield, NJ   07081


                           JESSICA M. HEINZ, ESQUIRE
                           CIPRIANI & WERNER, PC
                           450 Sentry Parkway, Suite 200
                           Blue Bell, PA   19422


                           STEVEN M. HARKINS, ESQUIRE
                           GREENBERG, TRAURIG
                           Terminus 200
                           3333 Piedmont Avenue, Suite 2500
                           Atlanta, GA   30305

```
Audio Operator:          SARAH ECKERT


Transcribed by:          DIANA DOMAN TRANSCRIBING, LLC
                         P.O. Box 129
                         Gibbsboro, New Jersey  08026-0129
                         Office:  (856) 435-7172
                         Fax:     (856) 435-7124
                         Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

4

I N D E X

ARGUMENT:                                                        PAGE

Re:  Hetero and Aurobindo corporate representatives

     By Mr. Slater                                              7, 8

     By Ms. Poletto                                            8, 9

     By Ms. Heinz                                                 9

Re:  Fact sheets

     By Mr. Slater                                               13

     By Mr. Rubenstein                                           13

Re:  Motions for extensions

     By Mr. Slater                                               14

     By Mr. Stanoch                                              15

Re:  One lead plaintiffs' counsel for each defendant

     By Mr. Slater                                               17

     By Mr. Trischler                                            17

     By Mr. Goldberg                                            18

1          (The following telephone conference was held at 2:00

2    p.m.)

3          MS. WHITELEY:  Good afternoon, Your Honor.  This is

4    Conlee Whiteley.

5          THE COURT:  Are we the only people on the line, Ms.

6    Whiteley?

7          MS. WHITELEY:  No, Your Honor.  I believe there's at

8    least one other person I heard click in.

9          MR. RUBENSTEIN:  Hi, Your Honor.  This is Brian

10   Rubenstein with Greenberg, Traurig on behalf of the Teva

11   defendants.

12          (Automated telephone voice announcing that attorneys

13   are now in the conference.)

14          THE COURT:  This is -- this is Judge Schneider.  Do

15   we -- do we have on the conference the people who were going

16   to talk on behalf of the plaintiffs' group and the defendants'

17   group?

18          MR. GOLDBERG:  Your Honor, on behalf of defendants

19   and -- this is Seth Goldberg.

20          THE COURT:  Great.  How about the plaintiffs?

21          MR. GEDDIS:  Your Honor, this is Chris Geddis from

22   Mazie, Slater, Katz and Freeman.  Adam is just finishing up a

23   deposition I know, but I know that he's going to be on the

24   call.

25          THE COURT:  All right.  Let's wait a moment.

Colloquy                                                                          6

1                    (Pause in proceedings)

2            THE COURT:  Is there anyone else who could speak on

3     behalf of the plaintiffs while we're waiting for Mr. Slater?

4     Mr. Honik?

5            MR. HONIK:  Your Honor, I can certainly try.  I

6     apologize.  I happen to be in my car in between appointments.

7     I alerted my plaintiffs' co-counsel that I might not even be

8     on the call, but I can -- we can certainly, you know, begin

9     the conversation.

10           THE COURT:  Okay.

11           MS. WHITELEY:  Daniel is also on the phone, Your

12    Honor, as well as I, and we could go forward.

13           THE COURT:  Terrific.

14           MR. HONIK:  We can.

15           THE COURT:  Okay.  I have the letters from counsel.

16    Thank you very much.  What I'd like to do is to save for the

17    last issue to be discussed the custodian and search term

18    issue.  That seems to be the most problematic.  So let's --

19    let's save that for last.

20           So I want to go down the issues that are in

21    plaintiffs' letter, start with number two, make sure we cover

22    all the issues in defendants' letter, and then we'll circle

23    back to deal with the custodian and search term issue.

24           Somebody is moving around.  Can you -- can you put

25    your phone on mute, please.

1          MR. SLATER:  Hello, Your Honor.  I don't know if

2     that was me.  It's Adam Slater.  I just finished my deposition

3     so I'm on the call.  I don't know if that was me, but I

4     apologize.

5          THE COURT:  Okay.  So just to bring you up to speed,

6     we'll save the custodian and search term issue for the last

7     item to discuss since that seems to be the most problematic.

8     I have the parties' letters.

9          The first issue is the Hetero and Aurobindo

10    corporate representatives.  Is it correct that the Hetero

11    issue is moot now?  Somebody help me.

12         MR. SLATER:  I don't think it's moot on Hetero yet

13    because we're still waiting to confirm service and -- but I

14    think the letter, Your Honor, said that they plan to produce

15    the documents.

16         So if they're producing all the documents, it's moot

17    as to the core discovery documents, if that's what they're

18    offering to produce.  But it was unclear whether they have all

19    of the documents that the foreign entities have.

20         THE COURT:  I don't know.  That was my impression,

21    but is Hetero's counsel on the phone?  Mr. --

22         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

23    understand they are on.  Just a reminder that in order to be

24    heard, you have to press star-1 to unmute yourself from this

25    line.

1          MS. POLETTO:  Thank you, Seth.  I was desperately

2    trying to figure out how to unmute you.  I just hit 1; nothing

3    was happening.  I apologize, Your Honor.  Yes, it's Janet

4    Poletto.  I'm on for Hetero, USA.

5          As I had indicated to Mr. Slater, Hetero, USA, is

6    prepared to produce the remaining core discovery obtaining

7    from Hetero Labs those documents it did not previously have in

8    its possession.  The only exception being documents that

9    another defendant in the case has, that being Camber.

10         And I don't know what conversations plaintiff had

11   with Camber or not, but we were prepared to produce remaining

12   core discovery, get whatever we need from India.  We have we

13   believe all this at this point in time and are going through

14   it and --

15              THE COURT:  Great.

16         MS. POLETTO:  -- should be able to produce that by

17   the end of next week.

18              THE COURT:  Terrific.  Why don't you produce those,

19   and, Mr. Slater, if there's an issue, just let us know so that

20   for the time being we'll just note that it appears subject to

21   confirmation that the Hetero 30(b)(6) deposition on the

22   control issue is not necessary, which leaves us with

23   Aurobindo.  I have --

24              MR. SLATER:  I'm sorry to interrupt, but there's one

25   piece of that that I want to just make sure we're clear on.

Heinz - Argument                                                    9

1    Ms. Poletto said Hetero Labs.  I just want to make sure,

2    because there's two Indian entities.  One's Hetero Drugs,

3    Limited, and we've been working to serve both of them

4    separately.  I'm just curious if they are producing for that.

5    I'm sorry to interrupt.  I just wanted to make sure on that

6    one.

7            MS. POLETTO:  From my understanding, Adam, there

8    would be no core discovery documents that would be coming

9    directly from Hetero Drugs, but to the extent there are, then

10   we would be obtaining those as well.

11           MR. SLATER:  Thank you.  Sorry to interrupt.

12           THE COURT:  Okay.  Is Aurobindo's counsel on the

13   phone?

14           MS. HEINZ:  Yes, Your Honor.

15           THE COURT:  Are we going ahead with your 30(b)(6)

16   deposition on the control issue?

17           MS. HEINZ:  At this time it looks like we are still

18   going forward.  I still don't have any updates regarding

19   whether Aurobindo, Limited, has been served.  I believe they

20   were served in an Irbesartan case that was dismissed either

21   shortly before or shortly after the MDL was formed, but that's

22   all the information that I have.  I'm not aware of them being

23   served yet in this action, in this MDL.

24           So at this point we are still going to proceed with

25   the deposition.  I did serve objections and I have been -- Mr.

Heinz - Argument                    10

1    Slater and I have been conversing on those throughout the past

2    few weeks, hoping to reach an agreement with him on the scope.

3    Obviously, we're looking at the narrow -- related to the

4    documents that we have not produced pursuant to the Court's

5    discovery order.

6              THE COURT:  All right.  Let me -- let me just step

7    in here.  To the extent you don't work out your objections,

8    we're going to address all of those issues next Wednesday at

9    the in-person conference.

10             I briefly looked at your objections, Aurobindo, and

11   let's make something clear.  It's understood that the Court

12   identified the core discovery documents that have to be

13   produced.  However, the purpose of the 30(b)(6) deposition is

14   to see if the domestic entity has "control" such that it

15   should produce the foreign documents.

16             That document production or request is broader than

17   the core discovery.  Plaintiffs are going to need those

18   documents which relate to the control issue in order to make

19   their case.  So it wasn't entirely clear to the Court what

20   the nature of the objection was, but if the nature of the

21   objection is, the only documents that have to be produced are

22   the core discovery, that's incorrect.  In order to --

23             MS. HEINZ:  It's --

24             THE COURT:  Okay.

25             MS. HEINZ:  I'm sorry, I apologize.

1    THE COURT:  Okay.  Let me just finish.  In order to

2  get to the answer to the question whether or not there's

3  control, plaintiff is entitled to request relevant documents

4  regarding the control issue which likely are different than

5  the core discovery.  I just wanted to make that clear, because

6  I wasn't clear from the objections whether or not that was the

7  position Aurobindo was taking.

8    MS. HEINZ:  It's a little different from my

9  perspective anyway.  The way I'm looking at it is, I view --

10  obviously, the issue is whether they have control of these

11  documents, but that's just it.  The way I'm looking at it is

12  it's these documents that the Court ordered pursuant to the

13  core discovery, and the way that their notice was phrased was

14  very broad.

15    It seemed like they were asking, you know, about

16  control of any documents.  So I just wanted to make sure that

17  we were focused on, you know, the core discovery that we

18  didn't produce and control over that information.

19    THE COURT:  Well, we'll hash out all of these issues

20  next Wednesday.  You know the Court's position with regard to

21  this 30(b)(6) issue.

22    I think it's a distraction.  I think it's -- I

23  regret that we're going through it and -- and taking time from

24  the crux of the case to get to this control issue.  But if

25  that's the position your client takes, the Court has no

1    recourse but to give plaintiff the right to take this

2    discovery.  So to the extent there's any disputes remaining

3    regarding Aurobindo's 30(b)(6) deposition, we'll address them

4    and decide them next Wednesday.

5            The next issue, the macro -- the macro discovery

6    issue.  I would really like to finalize this issue next -- by

7    next Wednesday.  I want to identify the -- what I call the

8    macro or big picture issues that we need to address in order

9    that the parties can sharpen their pencils with regard to the

10   custodian and search term issues.

11           I saw that defendants took a stab at it.  If the

12   parties can meet and confer on this issue before next

13   Wednesday, I'd like to leave next Wednesday with a final list

14   of the -- of these issues we have to address.  We'll agree

15   upon a briefing schedule and get those discovery issues

16   decided promptly.

17           With regard to defendants' letter, certainly some of

18   them are self-explanatory, but the Court is going to need more

19   help when there's sort of a general issue about the scope of

20   relevant testing.  We need to be more specific, you know, are

21   we talking about time frame?  Are we talking about countries,

22   et cetera, et cetera?

23           So the parties are going to be asked to brief these

24   issues so we could be able to specifically identify the issues

25   that we have to tee up and decide.  So that'll be another

1    issue that will be on the agenda for next Wednesday, and we

2    hope to finalize that list next Wednesday and get a briefing

3    schedule as well.

4              Can you update the Court on the fact sheets?

5              MR. SLATER:  On the defendants' fact sheets, Your

6    Honor, frankly, it's our -- it's completely on the plaintiffs.

7    I think that we just have not gotten it done because we

8    focused so much on the meet and confer process with the --

9    with the custodians issue, and we owe that to them, and we're

10   going to try to get that to them by tomorrow by the end of the

11   day.  But it's on us, we acknowledge that, and we need to get

12   it to them.

13             THE COURT:  Okay.

14             MR. SLATER:  They had -- they had sent us a red line

15   and a re-drafting of it and we have to get back to them.

16             THE COURT:  Okay.  The ball's in the plaintiffs'

17   court, and hopefully we'll get that soon.

18             General discovery requests, I guess responses or

19   objections rather are due October 15, and we'll see what

20   happens.

21             Third-party fact sheets, I guess that's in

22   defendants' court?

23             MR. RUBENSTEIN:  Hi, Your Honor.  This is Brian

24   Rubenstein with Greenberg Traurig.  So we actually sent a

25   revised draft to the plaintiffs on October 4th, and we were

1    hoping to meet and confer this week I think, you know, as Mr.

2    Slater said, I think the meet and confer process on the

3    custodians probably got in the way.

4         But, you know, I think there's only just a few

5    limited issues that we need to discuss, and we should be able

6    to hopefully resolve those by next week's in-person

7    conference.

8         MR. SLATER:  I agree, Your Honor.  I've been told by

9    the people who represent the TPPs that they're very -- it's

10   very close and there aren't a lot of differences, but we'll

11   get back to them by tomorrow with our response if it hasn't

12   already happened, which it sounds like it didn't.

13        THE COURT:  All right.  Sounds good.

14        Mr. Slater, I don't know if you or Mr. Goldberg can

15   answer this, but you saw on the docket there was a bunch of

16   motions for extensions that were filed.  I hope there's a way

17   that we can short-circuit this rather than having to decide

18   whatever it is 20 or 30 or 40 similar-type motions.  I don't

19   quite understand what the issue is and why all of the sudden

20   this issue came up.

21        MR. SLATER:  I'm not sure either, Your Honor.

22        I'm making an assumption that it might be the

23   deadline to file a short form complaint, and I'm thinking that

24   there -- whether or not there would be a request by Mr.

25   Goldberg or a defendant for an extension to answer, so if

1    that's the issue, I would just suggest maybe we can enter into

2    some sort of an order to give people a little more time, if

3    that's -- if it's reasonable and just get them done and tell

4    everybody's don't, you know, don't keep filing these motions

5    or try to get them all done within a period of time.

6            But I don't know the specific circumstances.  Those

7    people haven't contacted certainly myself, so I wasn't aware

8    of the issue existed until Your Honor forwarded those -- those

9    notices, which I'm sure is not fun for the Clerk's Office to

10   have to deal with.

11           THE COURT:  It looks like they were all filed by

12   this Kentucky counsel.  Can someone from your group contact

13   this Kentucky counsel and see if there's a way that will

14   short-circuit this?

15           MR. SLATER:  Absolutely.

16           THE COURT:  Okay.  Thank you very much.

17           I don't know, is Optum in the case and United Health

18   Group in the case?  It looks like they're asking for an

19   extension of time to serve those defendants.

20           MR. SLATER:  I'm assuming they were named in their

21   complaint, Your Honor.  I haven't read their complaint, but

22   I'm assuming that they named them.

23           THE COURT:  Were they in the case before?

24           MR. STANOCH:  Yes.  Your Honor, this is David

25   Stanoch for plaintiff.  OptumRX has a mail order pharmacy and

1   is named in the Master Complaints which were filed in June,

2   but I think that was the first time they were added to the

3   action at that time.  So they should be here, and we did

4   effect service on them for the MDL, but I'm not sure of the

5   specific situation with this case, but we can look into it.

6          THE COURT:  Much appreciated.  So hopefully we'll

7   have an update by next Wednesday.

8          All right.  Before we get to the custodian and

9   search term issue, are there any other issues to address on

10  this call?  Okay.  Sounds like none.

11         Obviously, we're getting different versions of what

12  happened at the meeting, not surprising, but I was encouraged

13  by Mr. Goldberg's letter which indicates that steps are being

14  taken to move forward on this issue.

15         One suggestion I have and I don't know if you

16  already have this in place is, one thing that occurs to the

17  Court that makes this a little complicated is we have

18  different defendants that have to be dealt with.  I don't know

19  exactly how many, somewhere between five and eight I guess.

20         If it hasn't been done, I think it would be very

21  helpful if the plaintiffs could identify one attorney who is

22  the lead contact for each of the defendants.  So, for example,

23  every defendant doesn't have to go through Mr. Slater or some

24  other plaintiffs' counsel.  There would be one plaintiffs'

25  attorney who is -- who is taking the lead with regard to each

Slater - Argument                              17

1    of the defendants, so that that defendant would know the one

2    person it should go to to communicate.  Has that been done,

3    and if it hasn't, do you see any reason why it shouldn't be

4    done?

5         MR. SLATER:  We haven't done that in a formal sense,

6    but I think that as a de facto matter it's been happening.

7    Because, for example, after the meeting or during the closing

8    of the meeting on Monday, we had an agreement with the

9    defendants to get a time to speak to them, and different

10   attorneys from our group have engaged with the defendants.

11   And I would assume that those attorneys who were on those

12   calls with those particular defendants, would continue to

13   run point for those discussions that have began.  So I think

14   as a de facto matter that basically is occurring at this

15   point.

16        THE COURT:  Okay.  So from the defendants'

17   perspective, you're all on the phone.  Do each of you know who

18   your primary point of contact is?

19        MR. TRISCHLER:  Good afternoon, Your Honor.  This is

20   Clem Trischler for the Mylan defendants.

21        I have been -- the answer to your question is yes.

22   We have had conferences as recently as today.  I think Layne

23   Hilton and Marlene Goldenberg have been the primary folks that

24   we've been dealing with, but I certainly know whom to talk to

25   on plaintiffs' side to keep the lines of communications

Goldberg - Argument                    18

1    moving.  And that -- you know, that works so far from our

2    perspective.  Discussions have been productive and are moving

3    forward.

4           THE COURT:  Okay.  Good.  Does that go for all of

5    our defendants?

6           MR. GOLDBERG:  Seth Goldberg for ZHP and -- myself,

7    Barbara Schwartz and Alex Waleko are the people taking the

8    lead on this for us.  And we have also been in contact with

9    Layne Hilton since the October 7th meeting to follow up, and

10   we will reach out to Layne with the follow-up information that

11   we're going to be getting based on that meeting.

12          THE COURT:  All right.  It sounds like things are

13   moving along.  We'll address where we are with regard to each

14   of the defendants at next Wednesday's conference.

15          From the Court's perspective, as I said in my email,

16   we want to give the parties an opportunity to try and work

17   this out amongst themselves.  We insist that the parties act

18   in good faith which I think they're doing.  It absolutely,

19   positively has to be a collaborative process, because if it's

20   not, it'll never get done.

21          If need be, the Court is prepared to order

22   representatives of the defendants to meet informally with the

23   plaintiffs, but before we do that, as we've said, we want to

24   fulfill our commitment to the defendants that the parties

25   first be afforded the opportunity to try and work it out

1    themselves.

2         So you have another week at this issue.  We're going

3    to deal with each of the individual defendants next Wednesday.

4    I would prepare to be here all day on Wednesday because we

5    have some important issues to deal with, and you could also

6    use the facilities of the courthouse while you're all here to

7    have separate meetings or altogether.  So we'll see where we

8    are next Wednesday, what additional work has to be done.

9         This is one of the -- if not, the most important

10   issue that we have to deal with in the case.  It's going to

11   set the groundwork for the entire ESI production.  My feeling

12   is, having done this many, many times in practice and on the

13   bench that the more time we invest in the short term to get

14   this right the more time and money we save in the long term.

15        No one is going to convince me otherwise, but it's

16   in the defendants' best interest to have as fulsome an ESI

17   production as possible.  It's much cheaper and more efficient

18   and less cumbersome to do it one time rather than to have to

19   go back and do it again.  So I strongly encourage the parties

20   to continue to work together in good faith in the

21   collaborative process to work out the custodians and search

22   terms that have to be set.

23        If it means we have to order production of

24   organizational charts, of course, we'll do that.  I mean,

25   that's just -- I don't know why we need an order to do that.

 1          Another issue you have to discuss is the translation

 2     issue if these documents are going to be in a foreign

 3     language.  I don't know if we're going to have the same

 4     problem we had in <u>Benicar</u> where each side had to get their own

 5     translator to -- because of differences in translation, but

 6     these are the type of issues we -- we should work out now,

 7     because come December, this all has to be finalized and

 8     starting the new year, that's when the defendants are going to

 9     have to do their search.

10          So there's not a whole lot of time to get all this

11     done, so I commend the parties and encourage the parties to

12     continue their diligent efforts to try and reach some sort of

13     an agreement.  And we'll find out next Wednesday where we

14     stand.  I don't know if there's anything else we can add on

15     this issue except encouraging the parties to continue to meet

16     and confer and that's all I have to say about the issue.

17          Anyone else have anything to add?

18          MR. SLATER:  Your Honor, it's Adam Slater.

19          The only thing I would add is in the context of the

20     macro discovery issues, I think that these discussions with

21     the defendants are helping to let us know what issues may

22     exist.  And I think that -- I know we want to try to get it

23     done by next week, but I have a sneaky suspicion that when we

24     get the defendants' responses to our -- our document requests,

25     that they will probably, through that process, many issues

Colloquy                                                                          21

1    will come up.

2             So we obviously will do what we can to get you the

3    issues that we have by next week.  But my expectation is that

4    in the discussions we may learn that there are some other

5    macro-type issues that become more -- more focused.

6             For example, just looking at their letters today

7    from ZHP, there's -- there seems to be an issue about the

8    relationship between ZHP and their U.S. entities and the true

9    nature of it and what their function is.  And it seems to be

10   that there's something about that corporate organization that

11   they're putting up as some sort of an objection or -- or a

12   segmenting of discovery, so I don't know if that's going to

13   continue to be an issue.

14            It's just an example that jumped out at me reading

15   the document today, but I just wanted to flag that for the

16   Court that we're probably still a little bit early in our

17   educational process on the plaintiffs' side to know what

18   really is at issue.

19            THE COURT:  Mr. Slater, it's unfortunate the way the

20   timing worked out, that the conference is the 16th, and the

21   responses are due the 15th, but we'll deal with it and if you

22   need a little bit more time, we'll deal with it.  We'll get it

23   done.

24            MR. SLATER:  Thank you, Judge.

25            THE COURT:  All right.  Anything else for the

1    plaintiffs?  And anything else for the defendants?

2             MR. GOLDBERG:  No, Your Honor.

3             THE COURT:  All right.  Thank you, counsel.  Have a

4    good day and we're adjourned.

5             MR. SLATER:  Thank you.

6             (Telephone conference concluded at 2:30 p.m.)

7                              *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      **C E R T I F I C A T I O N**

2

3

4

5              I, Lois A. Vitarelli, court approved transcriber,

6       certify that the foregoing is a correct transcript from the

7       official electronic sound recording of the proceedings in the

8       above-entitled matter.

9

10

11

12

13   _____          October 24, 2019

14   LOIS A. VITARELLI

15   DIANA DOMAN TRANSCRIBING, LLC

16

17

18

19

20

21

22

23

24

25