UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
IN RE:                           )   Case No. 19-MD-2875-RBK-JS
                                 )
VALSARTAN PRODUCTS LIABILITY     )
LITIGATION                       )
                                 )   Camden, NJ
                                 )   November 6, 2019
---------------------------------)   4:13 a.m.
```

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE JOEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:          ADAM M. SLATER, ESQUIRE
                             MAZIE, SLATER, KATZ & FREEMAN, LLC
                             103 Eisenhower Parkway, 2nd Floor
                             Roseland, NJ  07068

                             BEHRAM V. PAREKH, ESQUIRE
                             KIRTLAND & PACKARD, LLP
                             1638 South Pacific Coast Highway
                             Redondo Beach, CA  90277

                             DANIEL A. NIGH, ESQUIRE
                             COUNSEL NOT ADMITTED TO
                             USDCNJ BAR
                             LEVIN PAPANTONIO
                             316 S. Baylen, Suite 600
                             Pensacola, FL  32502

                             RUBEN HONIK, ESQUIRE
                             DAVID J. STANOCH, ESQUIRE
                             GOLOMB & HONIK, PC
                             1835 Market Street, Suite 2900
                             Philadelphia, PA  19103

                             CONLEE S. WHITELEY, ESQUIRE
                             KANNER & WHITELEY, LLC
                             701 Camp Street
                             New Orleans, LA  70130

2

APPEARANCES: Continued

For the Plaintiffs:          MARLENE GOLDENBERG, ESQUIRE
                             GOLDENBERG LAW, PLLC
                             800 Lasalle Avenue
                             Suite 2150
                             Minneapolis, MN  55402

For the Defendants:          BRIAN RUBENSTEIN, ESQUIRE
                             GREENBERG TRAURIG, LLP
                             1717 Arch Street
                             Suite 400
                             Philadelphia, PA 19103

                             SETH A. GOLDBERG, ESQUIRE
                             DUANE MORRIS, LLP
                             30 South 17th Street
                             Philadelphia, PA  19103

                             JASON M. REEFER, ESQUIRE
                             PIETRAGALLO GORDON ALFANO
                             BOSICK & RASPANTI, LLP
                             One Oxford Centre
                             38th Floor
                             Pittsburgh, PA  15219


Audio Operator:              SARAH ECKERT


Transcribed by:              DIANA DOMAN TRANSCRIBING, LLC
                             P.O. Box 129
                             Gibbsboro, New Jersey  08026
                             Office:  (856) 435-7172
                             Fax:     (856) 435-7124
                             Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1                        I N D E X

2    TOPICS OF DISCUSSION:

3    COURT'S UNDERSTANDING OF CHRONOLOGY:              PAGE

4      By Judge Schneider                                 5

5    DEFENDANT FACT SHEETS:                            PAGE

6      By Mr. Goldberg                              6, 15

7      By Mr. Slater                               11, 16

8      By Mr. Nigh                                     14

9    MACRO DISCOVERY ISSUES:                           PAGE

10     By Judge Schneider                              19

11     By Mr. Goldberg                                 20

12   MEET AND CONFER PROCESS AND ESI:                  PAGE

13     By Judge Schneider                          20, 24

14     By Mr. Goldberg                             21, 25

15     By Mr. Slater                           23, 24, 26

16   SHORT FORM COMPLAINTS:                            PAGE

17     By Judge Schneider                              27

18     By Mr. Slater                                   28

19   APRIL 29TH REQUEST FOR INFORMATION:               PAGE

20     By Judge Schneider                              29

21     By Mr. Slater                                   29

22     By Mr. Goldberg                                 30

23   IN-PERSON MEET AND CONFER:                        PAGE

24     By Judge Schneider                              31

25

Colloquy                                                    4

1        (The following conference was heard 4:13 p.m.)

2             THE COURT:  Excuse me for holding you up.  This is

3    Judge Schneider.  We're on the record in In Re: Valsartan MDL,

4    19-MD-2875.  Can we have the names of counsel on the phone

5    starting with plaintiffs.

6             MR. SLATER:  Good morning, Your Honor, Adam Slater

7    for the plaintiffs.

8             MR. HONIK:  Ruben Honik.

9             MR. NIGH:  Daniel Nigh.

10            MS. WHITELY:  Good afternoon.  Conlee Whitely.

11            MR. PAREKH:  Good afternoon.  Behram Parekh.

12            MR. STANOCH:  Good afternoon.  David Stanoch.

13            MS. GOLDENBERG:  This is Marlene Goldenberg.

14            THE COURT:  Okay, it sounds like that's the

15   plaintiffs' team.  For the defense?

16       (Pause in proceedings)

17            THE COURT:  Defendant?

18            MR. REEFER:  Jason Reefer for Mylan Pharmaceuticals.

19            MR. RUBENSTEIN:  Brian Rubenstein for Teva.

20       (Pause in proceedings)

21            THE COURT:  Defendants, enter your appearances,

22   please.

23            UNIDENTIFIED SPEAKER:  You have to press star-1 to

24   unmute.

25            MR. GOLDBERG:  Good afternoon, Judge.  This is Seth

Colloquy                                    5

1    Goldberg for the defendants.

2              THE COURT:  Anyone else besides the three of you?

3          (Pause in proceedings)

4              THE COURT:  Okay.  Counsel, I have your letters,

5    thank you very much, and I briefly skimmed the macro briefs

6    that came in.  Before we get to the issues in your agenda, I

7    just thought it would be helpful to go over the chronology

8    because it looks like there's going to be a lot of work done

9    over the next month of so, and I want to make sure we're on the

10   same page.  So bear with me, I'm going to read to you what my

11   understanding of the chronology is and you can tell me if we're

12   all on the same page.

13             Yesterday the opening briefs were filed regarding the

14   macro discovery issues that the Court identified in its order.

15   The responses to the opening briefs are due on November 18th,

16   and on November 20 we're going to have oral arguments on the

17   macro issues, and the Court is going to use its best efforts to

18   rule on those issues at the conference.

19             In addition, also due on November 20 is the final

20   version of defendants' fact sheets.  On December 6 -- I'm

21   sorry, on November 27, the parties' letter briefs regarding all

22   discovery disputes are due, ESI and Rule 34 issues.  The

23   responsive letter briefs are due on December 6.

24             And on December 11, the goal is to argue and

25   hopefully, absent unforeseen circumstances, decide all

Colloquy                                                          6

1    outstanding discovery disputes, and then at that time or

2    shortly thereafter, the initial custodian list and search term

3    list will be finalized, the objections to the Rule 34 document

4    requests will be finalized, and we'll set a deadline for the

5    production of the responsive ESI and documents.

6        So that -- that's the chronology the Court has.  Does

7    anyone have anything different or were they under a different

8    impression about where we are?

9        (Pause in proceedings)

10        THE COURT:  Great.  Fantastic.  Okay, why don't we go

11    through the discovery letters.  I have Mr. Goldberg's -- well,

12    let me start with -- well, let's do this easier.  Let's start

13    easy to hard.  Defendants' fact sheet I guess we have to

14    clarify because this issue overlaps a couple of the issues,

15    whether the fact sheet is going to be directed to just the API

16    and finished dose manufacturing defendants, or whether it's

17    also going to be directed to the retailers and

18    wholesalers/repackagers and pharmacies.

19        I know the respective parties' positions on that from

20    the letters.  In terms of the draft that's been exchanged, has

21    it only been directed to the API and finished dose

22    manufacturing defendants?

23        MR. GOLDBERG:  No, it was directed to all defendants.

24    Your Honor, this is Seth Goldberg.  If I could give you --

25    remind Your Honor of the -- the chronology just with respect to

1    the defendant fact sheet to -- which may be helpful here.

2    Early in the spring or early in the summer, the Court had

3    ordered the first iteration of the defendant fact sheet to be

4    produced, and the plaintiffs produced that first version which

5    did not delineate at all between any levels of the supply

6    chain.  It was just a series of requests, not -- not directed

7    to any specific levels of the supply chain.

8              The Court then set a deadline for September for

9    defendants to respond and to -- to that defendant fact sheet,

10   and we did in mid September I believe, and we proposed a

11   defendant fact sheet that was focused exclusively on the

12   manufacturing defendants because based on the discussions that

13   the parties were having with the Court with respect to core

14   discovery which was limited to the manufacturing defendants,

15   and the document requests were limited to the manufacturing

16   defendants, and comments that we had with the -- with -- in

17   conferences with Your Honor to the effect that the discovery

18   relating to the downstream levels of the supply chain was not

19   as pertinent to the liability issues, our draft of the

20   defendant fact sheet in mid September was focused on the

21   manufacturing defendants.

22             In conference with Your Honor in September about that

23   defendant fact sheet, Your Honor suggested that if plaintiffs

24   wanted to have all of the defendants be in the defendant fact

25   sheet, then that was -- that was appropriate and plaintiffs

1    should provide a revised defendant fact sheet accordingly.  On

2    October 12, plaintiffs provided a fact sheet and for the first

3    time, delineated the defendant fact sheet by supply chain

4    level.  So and what has happened since is basically there are

5    now, you know, separate tracts of meet and confers on the

6    defendant fact sheet.

7         The manufacturing defendants are having a meet and

8    confer process with plaintiffs as to the defendant fact sheet

9    questions that focus on the manufacturing defendants, and the

10   retailers are having -- my understanding is have started a

11   process to have a meet and confer -- you know, instead of meet

12   and confers with plaintiffs on the retailer-specific areas --

13   you know, a retailer-specific defendant fact sheet, and the

14   reason is, you know, I mean not only that -- that chronology,

15   but the kinds of information that these different levels of the

16   supply chain would produce are -- are categorically different.

17        And so after getting that October 12th defendant fact

18   sheet, the retailers took it upon themselves to reach out to

19   plaintiffs and to begin the process of a meet and confer on the

20   retailer part of the fact sheet, and that process is ongoing.

21        THE COURT:  Can I ask -- can I butt in just for a

22   couple of seconds, Mr. Goldberg?  Real quickly, are the three

23   -- are there only three other categories of defendants?  One,

24   retailers; two, wholesalers/repackaging defendants; and three,

25   pharmacies?

1    MR. GOLDBERG:  I believe -- I believe -- yeah, I

2  believe that -- I mean, I think the way you could -- you could

3  slice it is to say that you've got the manufacturing defendants

4  as one category, and within that you have your API and your --

5  your finished dose manufacturers.

6          You have kind of a middle category which are the

7  wholesalers, distributors and repackagers.  And then you have a

8  third category which are the pharmacy defendants, which we've

9  been referring to as -- as the retailer defendants.

10         THE COURT:  Are there multiple parties in the other

11  two categories -- wholesalers, distributors, repackagers as one

12  category, and pharmacies in another?  Is it just one party or

13  two or are there multiple parties?

14         MR. GOLDBERG:  Yeah, there are multiple parties in

15  each of these three categories.  You know, there are -- from

16  the repackager distributor standpoint, there are at least, you

17  know, I would say between five and ten in this category.  The

18  pharmacy category has expanded quite a bit over the past few

19  months.

20         At the early stages of this litigation, there were

21  one or two major pharmacies and Walgreens and Walmart and as --

22  as the litigation has progressed, there are now I'd say

23  another, you know, probably between five and ten very large

24  retail pharmacy chains.  And of course the -- the quality of

25  the information that those pharmacies have, how they keep that

1   information and what that information can be used for with

2   respect to this litigation is really vastly different from the

3   manufacturing-type information that the manufacturing

4   defendants have.

5          And, you know, the wholesale distributor/repackager

6   information likewise is going to be of a different quality than

7   the information that the other two groups have.  So it makes

8   sense that, you know, there are really separate tracts of

9   discussion with plaintiffs on the kinds of information that

10  might be necessary to this case from these different tracts.

11         THE COURT:  Mr. -- let me make --

12         MR. GOLDBERG:  And --

13         THE COURT:  Let me butt in here.  Mr. Slater, what

14  would you think --

15         MR. GOLDBERG:  Yes, Judge.

16         THE COURT:  What would you think of this suggestion.

17  Okay, first, discovery directed to these two other categories

18  of defendants is unquestionably relevant to the case and

19  plaintiffs are not going to be barred from conducting relevant

20  discovery.

21         It's not only relevant to probably ultimate liability

22  issues and economic damage claims, but I believe it's also

23  going to be relevant to -- and I said this before, class

24  certification issues, ascertainability, management -- issues of

25  that sort.  So you don't have to argue that you're entitled to

1    this discovery.  By the chronology that I gave, we have a lot

2    to do between now and December 11.

3              As relevant as the discovery is as to these two

4    categories, it really can't be disputed that the more important

5    discovery issues are related to the manufacturing defendants,

6    API and finished dose.

7              What I would suggest we do is let's focus all of our

8    efforts between now and December 11 on the manufacturing

9    defendants.  A lot of what we decide on the macro issues, the

10   ESI and Rule 34 issues, will inform what happens with the

11   wholesalers and the pharmacies, and why don't we say between

12   December 11, whatever we can get done and the next January

13   meeting, then we will immediately turn to those other two

14   categories of defendants.

15             I haven't -- I just wonder if it makes sense because

16   we are -- we do have a lot of material significant work to do

17   in the next month if we just put these two categories aside

18   with the assurances that they're going to be addressed in

19   January.

20             MR. SLATER:  I think that that's -- with one

21   exception, I think that's basically how we are proceeding, the

22   only exception is the defendant fact sheet, and I think that

23   including those two categories of defendant -- of the

24   defendants' fact sheet really shouldn't be a problem and

25   shouldn't really create a great deal of effort, and I think

1    it's also -- it does create problems for us as the fact sheets

2    start to get exchanged if we don't have responses from the --

3    the other groups -- I'll call them the

4    distributor/repackagers/wholesaler group versus the

5    retailer/pharmacy group because we're -- we're expecting

6    especially with regard to the retailers that information that

7    they will provide will, from our understanding, likely be very

8    important to help the manufacturing defendants to be able to

9    actually respond to the defendant fact sheet.

10           And I -- I know -- I think Daniel's on -- Mr. Nigh's

11   on the phone, I'd ask maybe if he -- if you want more

12   explanation on that, he could give you a little more detail.

13   It ultimately looks that there's going to be cross-referencing

14   to try to figure out which -- which batch is which lot, where

15   it came from, when it was manufactured.

16           And we -- our understanding is we're going to need

17   information from the lower further along levels of the supply

18   chain to help inform the manufacturing defendants to provide --

19           THE COURT:  Right.

20           MR. SLATER:  -- information about --

21           THE COURT:  Right.

22           MR. SLATER:  -- the relevant factors and lots to each

23   plaintiff.

24           THE COURT:  We don't have to argument relevancy.

25   There's no question --

Colloquy                                    13

1       MR. SLATER:  Right, right.

2       THE COURT:  -- it's relevant.  I'm looking at the

3  practicality of the situation.  The Court's order had said that

4  the defendant fact sheets have to be finalized by November 20.

5  I think it's a heavy lift to have to be able to get these other

6  two categories finalized by November 20.

7       The manufacturing defendants are clearly the most

8  important, and I wonder -- I just think it would be better if

9  we could have one fact sheet for the API and finished dose

10  manufacturers, and then we'll have another fact sheet to be

11  entered in January for the other two categories of defendants.

12       Yes, you won't get the information at the same time,

13  but it essentially will be contemporaneous and you're going to

14  have more than enough documents to digest, so I don't really

15  see any --

16       MR. SLATER:  Your Honor --

17       THE COURT:  -- prejudice to the plaintiffs and I

18  don't know if anyone can reasonably argue that there's so much

19  work to do in the next month we should really focus on the

20  manufacturing defendants.

21       UNIDENTIFIED SPEAKER:  (Inaudible).

22       MR. SLATER:  Judge, I'm not -- I'm not -- let me just

23  talk for one second, Daniel, and I'll hand off to you.

24  I'm not pushing back a little hard on it, Judge, I'm saying

25  what we -- what we understand and I think that it may even be

1    that once again we'll explain -- the next question may be for

2    the manufacturing defendants, is that correct, that you need

3    this information to provide your responses, but I'll hand off

4    to Daniel right now.

5          MR. NIGH:  Yeah, the defense fact sheets are -- are

6    for that individual plaintiff and the medication they took and

7    the story behind that medication.  So my understanding is the

8    manufacturers -- right now the manufacturers want to only

9    respond based on lot and batch numbers that the plaintiff

10   provide in their PFS.

11         That -- that's not really that helpful for us because

12   we don't have lot and batch numbers often times whereas the

13   pharmacies have the lot and batch numbers.  So the structure

14   really would be that the manufacturers in order to be able to

15   respond about the story about the medication taken by that

16   plaintiff specifically, they really have to have the

17   information from the pharmacies first, you know, before they

18   can respond to that information.  That's the structure that we

19   have.

20         I mean, I agree it's a heavy list of a lot of

21   information that we've got to be dealing with in the meantime,

22   but if anything, I think if we're going to -- if we

23   -- if the direction from the Court is to -- you know, to put

24   off that, then I would ask that we put off the whole defense

25   fact sheet in negotiating it until the -- until the January

Colloquy                                                  15

1    date, because frankly until we have the information from the

2    pharmacies about the lot and batch number for that individual

3    client, the manufacturers can't respond to that specific lot

4    and batch number --

5              MR. SLATER:  Correct.

6              MR. NIGH:  -- for that client.

7              THE COURT:  Well, I have a --

8              UNIDENTIFIED SPEAKER:  YOUR HONOR --

9              THE COURT:  -- I have a feeling we're not going to

10   have an objection from the manufacturers to put off the fact

11   sheet until January, but let's hear from them.

12             MR. GOLDBERG:  Well, that's right.  I mean, if that's

13   -- if that's something that the Court would consider, yeah I --

14   of course we wouldn't.  There are a lot of other issues that we

15   are negotiating about.  I mean, we've got 122 document requests

16   to negotiate about, as well as 422 search terms.

17             And those issues will also -- you know, be -- be

18   coming up for briefing, so if the Court were inclined to push

19   the defendant fact sheet, I -- I agree, I don't think

20   defendants will object to that.  It might make the other

21   discussions more productive.

22             THE COURT:  Mr. Slater, for the plaintiffs, do I take

23   it there's no objection given the trade-off or the short delay,

24   but we'll finalize all the defendants fact sheets in January?

25             MR. SLATER:  I think that's fine.  I just -- I just

1    want to, you know, protect us in terms of, you know, what our

2    obligations are going to be and, you know, that -- that we're

3    going to get the defense fact sheets responded to in some

4    reasonable time after the plaintiff fact sheets are going to be

5    served.

6         Maybe we can extend the deadline to respond to those

7    since there's not going to be anything pressing, that the

8    defense respond to their fact sheet, and I think also would be

9    helpful if the defense can tell us now if the manufacturers, if

10   they agree with us that they need information from the -- the

11   retailers at the very least in order to respond, that would be

12   helpful.

13        So again, there's plenty going on.  Just as long as

14   we do things in a -- in a fashion that -- you know, that is

15   balanced to both sides, I have no problem with that.  There's

16   clearly enough work to do.

17        THE COURT:  Okay, so let's do this then.  Let's --

18   I'll work out the dates.  I think we're getting together in a

19   week or so.  We'll have to talk about dates for meetings in

20   January, February, et cetera.  I'll talk to Judge Kugler.  But

21   we'll target that we're going to finalize all -- there will be

22   fact sheets for all defendants.

23        We'll have one for the API and finished dose

24   defendants, and we'll have one for all the other defendants,

25   but probably will be broken into categories.  We're going to

1     finalize that in January and I guess we should talk about

2     whether there are also going to be Rule 34 document requests to

3     the other two categories.  Plaintiffs?

4                MR. SLATER:  I would think definitely.

5                THE COURT:  Okay.  So let's --

6                MR. GOLDBERG:  Your Honor -- Your Honor, this is --

7                THE COURT:  Mr. Goldberg, we're not going to limit

8     those defendants to just the fact sheets, but the proviso is

9     that I would not expect that the document requests to the other

10    two categories will be nearly as extensive as the ones to the

11    manufacturing defendants.

12               And you can be rest assured that there's not going to

13    be 122 document requests of Walmart or Walgreens.  We're going

14    to focus on just the relevant issues for I guess plaintiffs

15    economic model, the ascertainability issue.  I don't know what

16    else those parties would be --

17               MR. SLATER:  Your Honor --

18               THE COURT:  -- would be important to.

19               MR. SLATER:  Well, Your Honor, those defendants also

20    had, as we discussed a little bit before, independent

21    obligations to confirm that the products were what they were

22    selling, so there's -- they have liability input to this.  We

23    don't know what data they were provided by the defendants -- by

24    these manufacturers.  We assume they were provided information

25    about testing and confirming that the products were what they

1   were supposed to be.  And I know the way that things have gone

2   we focused on the manufacturers because that's where the

3   contamination originated.

4            However, as this case develops, it may very well be

5   that there's going to become sharp demarcations between some of

6   these defendants to the point where they're going to be not on

7   the same page at all, that there's going to be significant

8   disputes as between and among one -- one another.

9            And ultimately to the extent that there's going to be

10  either judgments or resolutions, there's -- there's a

11  possibility that these downstream defendants like the retailers

12  may end of paying significant portions of any judgment

13  depending on what access we can -- we can get to with some of

14  the other defendants.

15           I mean, those issues I mentioned at a prior

16  conference.  We don't know how that's going to play out but

17  we're certainly -- we're going to -- if the point comes to that

18  payment of judgments, et cetera, we're going to be pursuing

19  those entities where we can actually get paid with the least

20  amount of heartache.

21           THE COURT:  I understand.  But what I'm saying is

22  when it comes to Rule 34 document requests directed to the

23  other two categories, the Court is going to sharpen its pencil

24  very sharp.  It will only permit directed specific relevant

25  document requests which the Court expects will not nearly be as

Colloquy                                    19

1    extensive and burdensome as the request directed to the

2    manufacturing defendants, so we'll work out a schedule for

3    that.    There will be Rule 34 requests, but as I said, the Court

4    is going to sharpen the pencil very sharp.

5            Let's -- let's move on to the next issues.    I'm not

6    sure what we have to discuss about the macro discovery issues

7    except I would make this one general comment.    I think we have

8    reached the point in 2019 -- almost 2020, given the

9    sophistication of counsel, their experience and the complexity

10   of this litigation, that we should not be dealing with

11   boilerplate objections to discovery.

12           And if a burdensome objection is made without any

13   supporting evidence, that's a boilerplate objection.    Everybody

14   knows what a boilerplate objection is.    I just think we're past

15   the point where we have to deal with that issue.

16           And I would just suggest -- ask the defendants if

17   they can go back and look at their answers/objections and if

18   you want to supplement and clarify, do it because we should not

19   be dealing with those types of issues in this sophisticated

20   type of litigation with the sophisticated parties and attorneys

21   we have in this case.    That's all I have to say about the macro

22   issues.    Anybody else have any macro issues --

23           MR. GOLDBERG:    Your Honor --

24           THE COURT:    -- they want to address?

25           MR. GOLDBERG:    -- yeah, this is Seth Goldberg.    I do

1    just want to address that issue, Your Honor, that you raised

2    it.   The defendants have agreed with plaintiffs, we had a meet

3    and confer on Monday and we have agreed to provide revised

4    objections --

5            THE COURT:   Fantastic.

6            MR. GOLDBERG:   -- objections to the document

7    requests --

8            THE COURT:   Fantastic.

9            MR. GOLDBERG:   -- and, you know, our hope is that

10   they will be satisfactory so the Court does not have to --

11           THE COURT:   Fantastic.

12           MR. GOLDBERG:   -- you know, wrestle with these

13   issues.   And we -- you know, we intend to get them to

14   plaintiffs next week.

15           THE COURT:   Fantastic.   I much appreciate it and not

16   surprising given the caliber of counsel in this case.   Anything

17   else regarding the macro issues?

18       (Pause in proceedings)

19           THE COURT:   Okay, great.   On the ongoing meet and

20   confer process, all I can say is I just strongly encourage you

21   to talk as much as you can.   I'm not one who thinks just

22   because you have a discovery dispute, parties are acting in bad

23   faith.   I know there's good faith discovery disputes.   We'll

24   spend all day and night resolving any good faith discovery

25   dispute you want.   Just try and exhaust your efforts to try and

1    work it out, and if you can't we'll deal with it.  That's all I

2    have to say about the -- the meet and confer process.

3              I would just add -- let me just add one comment.  For

4    those of you -- everyone except Mr. Goldberg wasn't at the

5    meeting we had with ZHP.  I'm not going to reveal any

6    confidences obviously.  I can only tell you from my

7    perspective, I thought it was tremendously helpful.

8              Maybe, maybe not, plaintiff didn't get all the

9    information they wished they got, but it certainly clarified a

10   lot of the basic issues.  There was no harm, no foul.

11   Everything went smoothly.  So I would encourage the defendants

12   if -- if they have a knowledgeable ESI person or IT person,

13   it's not the worst thing in the world to sit down informally

14   with plaintiffs.

15             If you're worried, do it here at the courthouse, I'll

16   make myself available for the meeting if in case you're worried

17   about that.  I think it was tremendously beneficial ZHP stepped

18   up to the plate in good faith and I just think it advanced the

19   ball tremendously in the case.  That's all I have to say about

20   the meet and confer ESI topics.  Anything else anybody else

21   have?

22             MR. GOLDBERG:  Yeah, Your Honor, this is -- this is

23   Seth Goldberg.  I just wanted to raise something because, you

24   know, in looking at some of these issues that have been raised

25   and in particular that when we talk about ESI, one of the

1    things that hasn't happened I think across the board, although

2    I haven't been at each meet and confer but it's based on my

3    understanding with my -- with my defendant colleagues, is that

4    while defendants have proposed lists of ESI custodians, there

5    has been no agreement on the lists of ESI custodians.

6           And for -- for many of the defendants, plaintiffs

7    have not provided responses with, and even with respect to the

8    ZHP, while we appeared in Your Honor's courtroom a few weeks

9    ago to talk about ESI discovery, we still have no list from

10   plaintiffs about what they think the right ESI custodians are.

11          And to the extent that plaintiffs want us to do -- do

12   work around ESI and search for -- for documents and build

13   document databases, it's very hard to do unless we have an

14   agreed upon list of ESI custodians.

15          And, you know, defendants are -- have proposed their

16   ESI custodians, have supplemented those lists and have not

17   heard back from plaintiffs and there has not yet been

18   agreements as to ESI custodian lists and I would -- I think it

19   would be helpful to this process if plaintiffs could -- could

20   provide that information, provide who they think the ESI

21   custodians should be.

22          Because what I don't want to have happen is later in

23   November, there be lists -- very long lists of ESI custodians

24   proposed by plaintiffs and because of a lack of time, the Court

25   -- because of the lack of time to negotiate about plaintiffs'

Colloquy                                    23

1    proposals, defendants are stuck responding to very long lists

2    of ESI custodians.

3                THE COURT:  Mr. Slater, could you speak to that?

4                MR. SLATER:  Your Honor, it's hard to --

5                THE COURT:  -- I certainly think --

6                MR. SLATER:  -- understand where that's coming from.

7    The process is ongoing.  We're trying to learn all the names of

8    the people that are going to matter.  As much as we're trying,

9    we -- you know, we put it on a letter to be very frank with the

10   Court, in my experience I'm pretty confident that as we start

11   to see the documents and as we start to take depositions, that

12   we're going to find out about people that were never disclosed

13   to us.

14               I think that's going to happen here and we're doing

15   the best we can.  I don't know why Mr. Goldberg is asking for a

16   list right now.  They've been giving us names, we've been

17   giving them names.  As he said, he's not involved in the meet

18   and confers having to do with the other defendants so he hasn't

19   been there.

20               But both sides are trying to I assume work as hard as

21   we can to try to compile those lists.  That's the process we're

22   in right now, so the lists aren't done because we're in the

23   meet and confer process.  I mean, I suppose if he wants we can

24   send him a list of the names that we know, but he knows the

25   same list we know within the names from him and we've told him

Colloquy                                    24

 1    the names that we have and asked about all those people as Your

 2    Honor, you know -- you know, we've done name after name after

 3    name, so we're -- we're doing the best we can to define the

 4    list.

 5              THE COURT:  Well, it's not just a one-way street,

 6    defendants to plaintiffs.  I'm not intimately aware obviously

 7    of what you've exchanged and not exchanged, but it has to be a

 8    two-way street.  Plaintiffs exchange names, defendants exchange

 9    names, you talk, some are added, some are subtracted.

10              But Mr. Goldberg seems to be saying that the

11    defendants, it would be helpful to them if they just had some

12    preliminary idea of who plaintiff is thinking of.  I mean,

13    after all, by November 20 you're going to send your letters to

14    the Court, that's only two weeks away.

15              MR. SLATER:  Yeah.  No, I don't disagree.  I mean,

16    we're still waiting for things.  For example, to my knowledge

17    and Mr. Goldberg can correct me -- correct me if he wants, I

18    don't think we have -- even have the English translations of

19    those Chinese org charts that we were discussing when we

20    appeared in Court for that meeting.

21              My understanding is though we were promised they were

22    coming, we still don't have them so, you know, if they want us

23    to send the list, I mean, we're compiling custodian lists.

24    We're doing it in concert with the defense, but we can send

25    them those lists next week.  It's not a problem.  You know, I'm

1    not in every one of the meet and confers either.  My

2    understanding is our team has been disclosing the names they

3    know and have been running them by the defense, so I don't

4    think there's going to be a lot of surprises.  But, I mean, we

5    can send them the lists that we have as of next week.  That's

6    no problem.

7                 THE COURT:  Thanks.  Appreciate it.

8                 MR. SLATER:  Thank you.  But ultimately if they're

9    very important but, you know, again Mr. Goldberg can correct me

10   if I'm wrong, but if I'm right that they haven't even given us

11   the translated organizational charts, you know, he still has 24

12   teeth to pull out of the mouth and we're getting maybe one

13   halfway out at this point.

14                MR. GOLDBERG:  Yes, you're correct, we haven't

15   provided those organizational charts in English.  You've had

16   them and we can provide them.  We've been dealing with some

17   other things in this case.  But the point is that for none of

18   the other defendants and not ZHP, I -- I think what you have is

19   longs lists of ESI custodians that you haven't provided to

20   defendants, and that is going to make the process very

21   difficult if those long lists are produced to us much later in

22   November and --

23                THE COURT:  You'll get that --

24                MR. GOLDBERG:  -- we will --

25                THE COURT:  You'll get that next week.  You'll get

                                    Colloquy                          26

1    that next week, Mr. --

2               MR. SLATER:  Yeah, one -- one comment.  I don't know

3    -- I don't know if Mr. Goldberg thinks that we have some long

4    secret list that we're holding back, but I think that it's very

5    important, Judge, to put -- put our finger on what just

6    happened because Mr. Goldberg initiated a discussion saying I

7    want their list of custodians now, and then in the side comment

8    says yeah, you're right, we didn't give you the translated org

9    charts yet.

10              I mean, this is such fundamental information and we

11   don't have org charts from all the defendants, we don't have

12   completed ones.  We have ZHP saying we'll find you those

13   charts, then he says well, we'll get around to it but we've

14   been busy, when they promised, Your Honor, multiple times going

15   back weeks and weeks that they would be promptly produced and

16   they haven't been.

17              I think that if we're going to be pushed like this,

18   then there should be an order that we get those translated org

19   charts -- complete org charts from all the defendants.  No more

20   they keep falling out of the tree three weeks or three months

21   from now, you know, in the next couple days.

22              I mean, we're doing the best we can but -- but for

23   Mr. Goldberg to sit there and stridently say we're holding back

24   long lists -- which we're not, while he's not even giving us

25   translated organizational charts is -- is very problematic and

Colloquy                                                    27

1    it's -- and I think it shows a strategy and I think and I think

2    it's emblematic of a lot of what's been going on, especially

3    with ZHP in discovery in this case.

4            And I would ask for the Court to direct them to

5    produce all of the org charts in the next couple days fully

6    translated.  They've had plenty of time.  They've promised this

7    to the Court multiple times and I think that it's really,

8    really -- it's on the borderline of outrageous for counsel to

9    make that demand to the Court just now while they won't even in

10   good faith get us the org charts in English.

11           THE COURT:  Okay, we're going to -- we're going to

12   move on but I'll cover the org charts in the order to be

13   entered.

14           The next issue is the short form complaints.  I think

15   we're on the same page on that.  There's absolutely no question

16   that we have to do it according to the order, we have to do it

17   so that the statistics and tallies can be appropriately added

18   up or compiled.

19           The only -- the thought that occurred to me, Mr.

20   Goldberg, was if we knew the complaints or docket numbers of

21   the case -- cases that have to do it the right way, we're happy

22   to enter an order requiring them to do it by X date, and if

23   they don't do it, we'll issue an order to show cause and if

24   they don't do it, the case will be dismissed.  So is it

25   possible to just send me a list?  Can someone put together a

1   list --

2              MR. GOLDBERG:  Yes.

3              THE COURT:  -- of the docket numbers that have to be

4   done the right way?

5              MR. GOLDBERG:  Yeah, I believe we can get that to you

6   this week, Your Honor.

7              THE COURT:  Okay.  And I'm sure the plaintiffs'

8   counsel, now being on notice of the issue, will -- will notify

9   their group that there's no debate that these filings have to

10  be done in accordance with the order so we can keep track of

11  all the cases.

12             We're only talking about a hundred or so cases now

13  and in theory, we might be talking about ten, 20 times that

14  amount, so we'd better get it right at the beginning or else

15  we'll pay the price down the road.  So I'll wait for that list,

16  Mr. Goldberg, and we'll enter the order.

17             MR. GOLDBERG:  Thank you.

18             MR. SLATER:  And, Judge, we agree.  So if -- Mr.

19  Goldberg, if you want to send us the list of those cases

20  especially and identify for us a particular law firm, we can

21  then reach out in our liaison capacity and speak to these firms

22  directly to try to give them a kick to make sure they do what

23  they're supposed to do as well.

24             MR. GOLDBERG:  Absolutely.

25             THE COURT:  Okay, thank you.  And then the last issue

1    on the agenda is the April 29 request for information.  I'm not

2    sure what the Court needs to do on this except I assume this is

3    just part of the parties' meet and confer discussions.

4              MR. SLATER:  Judge, I think what -- frankly we're

5    going to need is for the Court to order the defense to actually

6    meet and confer on this and actually start to give up

7    information, because they've essentially refused to.  And if

8    you just looked at their letter, they said we'll give

9    information to the plaintiffs when we determine that we -- that

10   they need it or when we feel like giving it to them.

11             I'm paraphrasing, but we had a very, very robust meet

12   and confer in the Benicar litigation which spanned many

13   conference calls and you actually ordered us to get in person

14   into a conference room with our IT tech consultant so that we

15   could talk through the detailed issues that needed to be

16   addressed so that the document production could actually be set

17   up before it starts rolling out.  And from all indications from

18   the defense, they don't want to do this.  They keep telling us

19   it's -- it's premature.

20             THE COURT:  No.

21             MR. SLATER:  You know, we don't even --

22             THE COURT:  No.

23             MR. SLATER:  -- we don't even have -- we don't even

24   know if they have (inaudible).  I think contained in an email

25   the other day they have not yet even started doing any testing

1    of search terms.  They haven't done any work on that which puts

2    them months and month behind where that issue was in the other

3    litigation and if they're really not testing yet and they're

4    not able to even give up information about their platforms and

5    servers, et cetera, when -- when it's ready for the documents

6    to roll out, we're going to have all sorts of issues.

7              MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

8    mean, a couple of things.  This really -- the last point really

9    gets to this issue about the fact that we haven't reached

10   agreement on ESI custodians and plaintiffs want there to be

11   testing, want there to be work done on the ESI --

12             (Automated attendant announces someone has left the

13   conference)

14             MR. GOLDBERG:  -- but there -- there isn't even

15   agreement on the custodians that have been proposed.  And to

16   start doing testing without a list of ESI custodians would

17   require -- would result in a piecemeal process for defendants

18   and a very costly one, and -- and Mr. Slater is not being

19   truthful with respect to the reference to the letter that we

20   sent.

21             We have not only discussed different categories of

22   ESI during the individual meet and confers, but we've agreed to

23   produce or discuss six categories which are fairly broad as

24   part of this process and to provide information about TAR (ph)

25   and predictive coding, about vendors, about non-company

1   computers and devices, about backup storage and archiving,

2   about network servers, and about email messaging and

3   communication.

4          This is -- this is a -- this is a process.  We have

5   by -- by and large, this is an individual defendant process.

6   Some of this was discussed with Mr. Duke (phonetic) for ZHP

7   before Your Honor, and the process is underway.  I do think if

8   we can get to a place where we have some agreement on ESI

9   custodians, the process will be enhanced.

10         THE COURT:  Can I ask this question?  Mr. Slater, are

11  we talking about the individual API and finished dose

12  manufacturing defendants?

13         MR. SLATER:  At this point we are because that's

14  how --

15         THE COURT:  Right.

16         MR. SLATER:  -- because that's how we've been

17  staging  --

18         THE COURT:  Right.

19         MR. SLATER:  -- the discussion.

20         THE COURT:  All right, what I'm going to do is I

21  don't think this is the most productive way to do this is by

22  letters or emails or phone calls, I'm going to order an in-

23  person meeting of the -- even if it's just the attorneys by the

24  November 15th, so that's nine days or so, because the letters

25  to the Court are due the 27th.  So I don't have to tell you

1    that meeting in person is the best way to do it.

2              I'm going to look at the local rule whether to

3    require a knowledgeable IT person to be there, but the local

4    rules require that everyone identify the IT person who has the

5    most knowledge regarding blah, blah, blah, blah, blah, blah.

6    So the parties are going to meet -- you don't have to meet

7    here, you can meet in a law office, but of course we'll make

8    facilities available.

9              But I agree with Mr. Slater that you just have to sit

10   down over a conference room table and -- and do this because

11   it's just too cumbersome to do it given a case like this over

12   the phone or by email, so I'll put that in the order.  Are

13   there any other issues we want to address?

14             Okay, I think the next time we're going to get

15   together in person is the 20th.  We're going to have oral

16   argument on the macro issues.  If there's any other issues we

17   need to address while we're together we'll do it, and if

18   there's nothing else, this matter is adjourned.  Thank you,

19   counsel.

20             ALL COUNSEL:  Thank you, Judge.

21             (Proceedings concluded, 5:00 p.m.)

22                                * * *

23

24

25

33

# C E R T I F I C A T I O N

1

2

3          I, Diane Gallagher, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8    _____          _____

9    DIANE GALLAGHER                            DATE

10   DIANA DOMAN TRANSCRIBING, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25