```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


IN RE:                           )    19-MD-2875(RBK-JS)
                                 )
                                 )    Camden, NJ
VALSARTAN NDMA PRODUCTS          )    March 11, 2020
LIABILITY LITIGATION             )    4:01 p.m.


             TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
               BEFORE THE HONORABLE JOEL SCHNEIDER
                  UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiffs:       ADAM M. SLATER, ESQUIRE
                          MAZIE, SLATER, KATZ &
                          FREEMAN, LLC
                          103 Eisenhower Parkway
                          2nd Floor
                          Roseland, NJ 07068

                          DANIEL NIGH, ESQUIRE
                          LEVIN PAPANTONIO
                          316 South Baylen Street
                          Pensacola, FL 32502

                          CONLEE WHITELEY, ESQUIRE
                          KANNER & WHITELEY, LLC
                          701 Camp Street
                          New Orleans, LA 70130

                          BEHRAM V. PAREKH, ESQUIRE
                          KIRKLAND & PACKARD, LLP
                          1638 S. Pacific Coast Highway
                          Redondo Beach, CA 90277

For the Defendants:       SETH A. GOLDBERG, ESQUIRE
                          BARBARA SCHWARTZ, ESQUIRE
                          DUANE MORRIS, LLP
                          30 South 17th Street
                          Philadelphia, PA 19103

                          JEFFREY D. GEOPPINGER, ESQUIRE
                          ULMER & BERNE LLP
                          600 Vine Street, Suite 2800
                          Cincinnati, OH 45202

                          SARAH JOHNSTON, ESQUIRE
                          BARNES & THORNBURG LLP
                          2029 Century Park East,
                          Suite 300
                          Los Angeles, CA 90067
```

```
Audio Operator:          SARAH ECKERT

Transcribed by:          DIANA DOMAN TRANSCRIBING, LLC
                         P.O. Box 129
                         Gibbsboro, NJ 08026
                         Office: (856) 435-7172
                         Fax:    (856) 435-7124
                         Email:  dianadoman@comcast.net
```

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

1                          I N D E X

3    COLLOQUY RE:                                           PAGE
4    Background issues                                         4
5    Downstream defendant discovery                            8
6    Over-identification of defendants                         8
7    Issues to address at March 25th conference               13

1           (The following was heard via telephone conference
2       at 4:01 p.m.)
3            THE COURT: Good afternoon, counsel. This is Judge
4   Schneider in New Jersey. We're on the record in the matter of
5   the Valsartan MDL, Docket No. 19-2875.
6            Can we have the names of -- well, maybe we should
7   have the names of lead counsel who will probably talk. And if
8   anyone else is going to talk, just state your name so that --
9   well, state your name whoever is going to talk so that the
10  court reporter who's transcribing this, if necessary, knows
11  who's talking.
12           So let's start with plaintiffs' counsel.
13           MR. SLATER: Good morning, Your Honor, Adam Slater
14  for plaintiffs.
15           MR. NIGH: Good morning, Your Honor. Daniel Nigh
16  for plaintiffs.
17           MS. WHITELEY: Good afternoon, Your Honor. This is
18  Conlee Whiteley for plaintiffs.
19           THE COURT: Okay. Defense counsel?
20           MR. GOLDBERG: Good afternoon, Judge. This is Seth
21  Goldberg for defendants.
22           MALE VOICE: Your Honor, (inaudible) for Mylan.
23           MS. JOHNSTON: Good afternoon, Your Honor, this is
24  Sarah Johnston on behalf of the retailer and pharmacy
25  defendants.

1     MR. GEOPPINGER: Good afternoon, Your Honor. Jeff
2  Geoppinger on behalf of the wholesaler defendants.
3     THE COURT: Okay. There may be other people on the
4  line, so whoever is going to talk, again, just state your name
5  for the court reporter.
6     I got your letters. Thank you very much. It
7  doesn't look like we have a heavy agenda for this call. I
8  just have a couple of things to touch on, and then we'll get
9  to the agenda.
10    The first thing is, we received your letters the
11 other day regarding the management of the case. Thank you
12 very much, they were comprehensive.
13    I have spoken to Judge Kugler. He obviously is
14 going to read and take the issue under advisement. Judge
15 Kugler advises me he will be present for the March 25th
16 conference, and I strongly suspect that the letters will be
17 discussed at the conference.
18    As of course I noted, I don't determine the game
19 plan for the case in that respect that we're talking about,
20 that's solely a decision that Judge Kugler's going to make.
21 And after he reviews your letters, he'll talk to you about it
22 on March 25th, I think it is.
23    Getting to the March 25th conference, obviously
24 we're aware of all the developments regarding the virus
25 situation and we're of course aware that with regard to the

1   in-person conference that we have, people come from out of
2   town and have to fly in.  So no definite decision has been
3   made yet, but we are in the process of making contingency
4   plans on our end if we're going to hold that conference by
5   phone or video.  It's an absolute certainty that if any lawyer
6   is reluctant to fly in because of the virus situation, that
7   will be accommodated.
8              Ms. Johnston, I know you're on the coast.  I don't
9   know what your feeling is about flying or not, but I'm going
10  to consult with Judge Kugler very closely about this issue the
11  next couple of days to see if we can come up with some sort of
12  resolution.
13             We are in touch with our IT department about if and
14  how we can set up a video conference.
15             So what I'm saying is, that no definite decision has
16  been made about what to do about the in-person conference on
17  March 25th, but we absolutely positively will make appropriate
18  accommodations.  We'll let you know as soon as possible.  And
19  even if we go ahead with the in-person conference, which I
20  can't say we will or we won't, anyone who has a reluctance to
21  come in, we'll make accommodations for them.
22             So I'm trying to put your minds at ease, and we're
23  not going to compel someone to come to Camden who is reluctant
24  to do so because of the virus situation.  Obviously our
25  preference would be to do it in person, but we think this is

1   an extraordinary situation, as I'm sure you do.  So we'll just
2   have to make accommodations for it.
3            Any questions about that?
4            MR. GOLDBERG:  None from the defense, Your Honor.
5            THE COURT:  Okay.  Just looking at the schedule, let
6   me just confirm that if there's going to be any disputes
7   regarding confidentiality, I think those letter briefs are due
8   on March 13.  And of course we received noticed about the
9   agreement regarding the briefing on the "macro" issues.  We of
10  course have no problem with that, that's fine.  I'm glad the
11  parties worked that out.
12           Are there going to be any issues on the
13  confidentiality dispute?
14           MR. GOLDBERG:  Your Honor, this is Seth Goldberg on
15  behalf of the defense.  I think -- I think the defense are --
16  the defendants are still, you know, working on -- working
17  through the issues and, you know, should be reaching out to
18  plaintiffs this week to make that determination.
19           THE COURT:  Okay.  I think the briefs are due the
20  13th, today is the -- I think today is the 11th, so I assume
21  you're working on that.  And the macro brief issue speaks for
22  itself.  I assume that the retailer and wholesaler and if
23  there's any distributor "macro" issues, they're going to be
24  briefed and teed up for argument on March 25th.  Okay?
25           So those are the background issues I wanted to

1    cover.  I have the letters.  Let's -- let's go through the
2    issues that the parties put in their letters.
3             One, downstream defendant discovery, retail
4    pharmacy.  Is there anything else to say, counsel?
5             MS. JOHNSTON:  Your Honor, Sarah Johnston for the
6    retail pharmacy defendants.  No, I think that the summary
7    that's in the letter that was filed is fairly accurate.  We
8    continue to make some progress and hopefully now the scope of
9    potential macro issues, and we'll continue to meet and confer
10   prior to the 25th.
11            THE COURT:  Okay.  Did someone want to say
12   something?
13       (No response)
14            THE COURT:  Moving on.  A second issue, over-
15   identification of defendants.  Let's deal first with the group
16   that's already been identified.  The last thing in the world
17   we want to do, capital L-A-S-T, is have someone fly in to deal
18   with an issue like this.
19            Defendant, Mr. Goldberg, I see amendments are coming
20   in.  Are there any left over from the original grouping?
21            MS. SCHWARTZ:  Your Honor, this is Barbara Schwartz
22   for the ZHP defendants.  We have received some amendments, I
23   believe only two, and the rest have not shared their problem
24   at this point.
25            THE COURT:  How many are in the original list?

1           MS. SCHWARTZ:  One second.
2        (Pause)
3           MS. SCHWARTZ:  I believe at least 20.
4           THE COURT:  20?  And you've only received two
5    amendments?
6           MS. SCHWARTZ:  That's correct.
7           THE COURT:  Can you -- can you let me know on the
8    original list what's left?  And again because of the virus
9    situation, I'm reluctant to order them to come in person or
10   for other reasons.  But maybe I'll just order them to respond
11   to an order to show cause.  I can't believe we're dealing with
12   these types of issues.
13          Can you --
14          MR. SLATER:  Your Honor, this is Adam Slater.  If --
15   Barbara, if you send us the list of the firms that are still
16   delinquent, we'll call them and tell them that we can't
17   understand why they're not fixing this problem, because we
18   sent out information to all the firms; everybody's been on
19   notice of what Your Honor said at the last conference, so we
20   thought this would be taken care of.
21          So if -- if they'll send us a list, you know, I'll
22   make a point of reaching out to these people and letting them
23   know that they need to do this right away.
24          THE COURT:  Yeah.
25          MR. SLATER:  Again.

1        MR. PAREKH:  Your Honor, this is Behram Parekh.  We
2   have one case that's been on that list and marked as
3   delinquent twice now.  We amended back in January to fix the
4   issue, but we still keep finding ourselves on the list.  So
5   I'm not sure that that list is completely accurately.  And
6   we've informed defendants of that fact as well.
7        THE COURT:  All right.  Defendant, before you send
8   me the latest list from the old group, could you double check?
9        MS. SCHWARTZ:  We will do that, yes.
10       THE COURT:  All right.  And I have your list that's
11  attached to the letter, Exhibit A.  The first case, Espada,
12  Docket 20-2196, that's a problem, no question about it.  But
13  clearly why is it a problem if a complaint just --
14       MR. SLATER:  Your Honor, I don't mean to -- I'm
15  sorry, I didn't mean to interrupt.  Espada, I'm told by my
16  associate, Chris Geddis, was -- was fixed and that it's been
17  filed and it's on ECF.
18       THE COURT:  Good.  Okay.  So that -- you're going to
19  double check all this, defendant.  But the remaining three,
20  the complaint is they named John Doe parties.  Why is that a
21  problem?  Why is that an over-identification problem?  It may
22  be that they have genuine John Doe issues, so why should they
23  be on the list?
24       MS. SCHWARTZ:  Right.  The issue is that they're
25  identifying only John Does above the retailer or pharmacy

1  level, so there's no identification of the specific supply
2  chain that they're making their allegations against.
3           THE COURT:  And my question is, why isn't that
4  legitimate?  What's wrong with that if the -- if the plaintiff
5  doesn't have that information?  Why is that a problem?  Why is
6  that an over-identification problem?
7           MS. SCHWARTZ:  Presumably they have pharmacy records
8  that they will need to supply later in the process that should
9  be identifying at a minium the labeler or someone in the
10 supply chain that would allow them to assert a more specific
11 claim.
12          THE COURT:  Well, isn't that their obligation down
13 the road?  But why should we require -- if someone doesn't
14 know who the defendant they should name is, why should the
15 Court order them to do that if -- if it's a legitimate John
16 Doe issue?  So I'm just thinking, that shouldn't be on the
17 list.  I'm questioning what's improper about that?
18          So why don't you take that -- let's -- let's short
19 circuit this.  Take the John Doe names off your list because I
20 don't think that's an over-identification problem.  Later on
21 in the case if they seek to amend, we'll deal with the issue
22 about amendments under the rules of procedure, if they're
23 permitted.
24          I know what New Jersey law is, I'm not sure New
25 Jersey law applies on that, but we know under New Jersey law

1    you have to use reasonable diligence, and we have cases all
2    the time where we deny John Doe amendments because reasonable
3    diligence wasn't used.
4           I don't know what the situation is in this case,
5    frankly, so I can't say one way or the other whether the
6    amendment is going to be granted in the future.  But insofar
7    as the present complaints stand, I don't think it's improper
8    to name John Doe parties, so they should be taken off the
9    list.
10          So again if you could just send me the updated list
11   after you double check it, I'll advise counsel that we're not
12   going to require an in-person appearance on March 25th, but
13   I'm going to issue an order to show cause to explain why they
14   don't respond to the Court orders.  All right?
15          MS. SCHWARTZ:  Understood.  We'll double check the
16   list and then circulate a new one.
17          MR. SLATER:  Yeah, maybe you want to circulate the
18   list to plaintiffs before you send it to the Court, that way
19   we can circulate it to the plaintiff counsel and then they can
20   tell us if there are any more cases that shouldn't be on the
21   list, just to save the Court problems.
22          MS. SCHWARTZ:  We can do that.
23          THE COURT:  Okay.  Good idea.
24          Plaintiff fact sheets, on the Mullins and Cantrell
25   case, they're in the case until they're out.  So they're under

1    a duty to respond to the discovery, and keep them on the list
2    of the parties who don't respond.  Until they're out of the
3    case, they're in the case.
4              All right.  That -- I think that takes care of the
5    issues in the parties' agenda.  Like I said, it was a light
6    agenda this week.  But I made a list of the issues that we're
7    going to address on March 25th, whether by video, phone, or in
8    person.
9              The macro issues regarding the wholesale
10   distributors and the retailers, I made a note that I think as
11   to Hetero and Aurobindo, we were going to make sure we set a
12   deadline for them to produce their core discovery and
13   designate their relevant time frame.
14             What is the status of the defendants' fact sheets?
15             MR. GOLDBERG:  Your Honor, if you're referring to
16   the manufacturer defendant fact sheets or the --
17             THE COURT:  Yes.
18             MR. GOLDBERG:  -- or the downstream defendant fact
19   sheets?
20             THE COURT:  I'm sorry, I meant the manufacturer.
21             MR. GOLDBERG:  So, Your Honor, I think -- I think
22   where that is, I believe it was in -- either in January or
23   early February that the Court issued an order requiring that
24   -- that the defendant fact sheets would be negotiated as to
25   the specific requests with respect to any manufacturing

1   defendant fact sheet, and that they would -- and that would be
2   in connection with the identification I believe of 20 personal
3   injury plaintiffs and -- and I think also the class
4   representative in the economic loss case.  And those -- those
5   plaintiffs have not been identified, and I think the parties
6   have -- have been focusing on other areas, and so we haven't
7   -- we haven't advanced the ball with respect to the
8   manufacturer defendant fact sheets since that order.
9              I think it's somewhat -- it's somewhat dependent I
10  think on plaintiffs identifying the plaintiffs that they want
11  to pursue the defendant fact sheets for.
12             THE COURT:  I have to look at that.  I have to look
13  at that order.  I don't have it in front of me.  But I -- I
14  think my recollection is that they had to trace the supply or
15  something to that effect for 20 people only.  But I don't
16  think the fact sheets were just limited to that.  Am I wrong
17  about that, Mr. Slater?
18             MR. SLATER:  Yeah, there's a little bit more
19  information there.  I think that -- I think this is something
20  that just fell out of focus because of everything else we've
21  been doing.
22             THE COURT:  Okay.
23             MR. SLATER:  It's on us.  So we'll -- we'll
24  re-engage on this and then have a report to you.  If we don't
25  have something briefed to you, we'll certainly have the report

1   for where we are --
2           THE COURT: Fair enough.
3           MR. SLATER: -- on the 25th.
4           THE COURT: Okay. Fair enough. And then as I
5   understood the parties' letters, and I think they're right,
6   after we decide the macro issues, hopefully on the 25th, then
7   the requests for production and the fact sheets directed to
8   the downstream defendants are going to be finalized, right?
9           MR. GOLDBERG: Yes.
10          THE COURT: Okay.
11          MS. SCHWARTZ: Yes, Your Honor. Sarah Johnston for
12  the retailer defendants. I think that the -- what -- what has
13  been proposed by plaintiffs and I believe has been accepted by
14  the wholesalers and the retailers, is that we finalize the
15  Rule 34 discovery and then pick up the discussion on the DFS
16  based on the Court's rulings at that time.
17          THE COURT: I think that makes sense. No problem.
18          Ms. Johnston, am I right or am I wrong that there
19  might be -- there might be a reluctance on your part to fly
20  in?
21          MS. SCHWARTZ: You know, the reluctance grows a
22  little bit day by day. I think that closer to the 25th, we'll
23  see. But depending on where things shake out in terms of the
24  -- the macro discovery issues and -- and the state of the
25  world on the 24th, I think we can make the decision then.

1           THE COURT:  Yeah.  Okay.  I've exhausted the list of
2    issues I wanted to address.  For the good of the order, anyone
3    else want to address any other issue?
4           Oh, Mr. Goldberg, any word from China, how things
5    are going?
6           MR. GOLDBERG:  Well, I -- I think -- I think China
7    is still -- you know, and now we're getting a little bit more
8    of the flavor for what -- you know, what they're dealing with
9    in China.  The one thing that I do know is that while our
10   client continues to increase its operations, it's still not
11   fully operational.
12          And one of the challenges we're having in terms of,
13   you know, possibly resuming the document collection process,
14   which is where we left off at the end of January, is that
15   anyone who travels into the Linhai province, which is where
16   our client is, is then required to remain there under
17   quarantine for 14 days, and that's obviously posing a problem
18   for our document collection vendor.
19          You know, they're reluctant to -- to send someone to
20   go and collect documents, I don't even know that they can get
21   everything, but only to be stuck in the Linhai province for 14
22   days at a minimum.  And then, you know, there are other travel
23   restrictions throughout the country, but that's the most
24   prominent one that -- that I think is, you know, of
25   significant concern for us right now.

1            THE COURT:  Is your client located at ground zero in
2     China?
3            MR. GOLDBERG:  It's about four hours away, but the
4     way they have -- my understanding is that the country is sort
5     of -- they've sort of created these bands of restriction so
6     there's like a yellow territory, a red territory, and a green
7     territory.  And if you travel in or through one of these
8     territories, you're automatically -- each territory has a --
9     has a quarantine restriction associated with it and you're
10    automatically then quarantined, you know, in accordance with
11    that, and the Linhai province is in -- is in a yellow
12    territory.
13           THE COURT:  So is it -- is it like the Hotel
14    California, you can check out, but you can't leave?
15           MR. GOLDBERG:  Exactly.  You can check in, but you
16    can't leave.
17        (Laughter)
18           MR. GOLDBERG:  Right.
19           THE COURT:  Well, you know, it's interesting because
20    I know plaintiffs, I read the letter obviously, you proposed
21    that we start with the ZHP pyramid, but how in the world can
22    we do that, given the situation in China?
23           MR. SLATER:  Your Honor, I'm not -- it's Adam
24    Slater.  I'm not hearing Mr. Goldberg say that it's something
25    that would be -- that this would be an issue that would

Case 1:19-md-02875-RMB-SAK   Document 469   Filed 06/15/20   Page 18 of 20 PageID: 7519

Colloquy                                                              18

1    disrupt that.  I mean when we were in court with Your Honor
2    recently, we were told that all defendants are going to
3    respond to the discovery request.
4              I think, for example, you know, without being too
5    technical, what Mr. Goldberg's talking about, people from
6    their vendor not being able to go, that doesn't change the
7    fact that I would say the large proportion of the documents
8    and information can be transmitted either electronically or
9    through the transmission of hard drives from one office to
10   another.
11             So I don't think you have to be on site to do the
12   work that their vendors are doing.  They're probably not
13   processing on an on-site database.  I'm sure it's some sort of
14   a cloud database or something of that nature.  So it doesn't
15   -- we don't see this as being -- you know, as that being a
16   problem.
17             And again I know that you've been very vigilant in
18   asking the question of Mr. Goldberg, but that is not something
19   that ZHP has been raising and it's something you don't see in
20   any -- in their letter, and they knew from our meetings and
21   they knew from all our discussions that's how we saw this and
22   they haven't raised that as an issue.
23             MR. GOLDBERG:  Your Honor, this is Seth Goldberg.
24   I'm sorry, I -- in January or February we were very clear with
25   the Court and the Court was very clear with us that this was

```
 1   the kind of circumstance that was going to result in a -- in a
 2   postponement of the discovery as to ZHP.  And you may recall
 3   that this -- and we can go back to the transcript on this, it
 4   happened right at the January 28th conference when we were
 5   supposed to pick up, that's when we were supposed to begin the
 6   process of collecting documents because at that point we had
 7   agreed to search terms.
 8             And Mr. Slater is 100 percent incorrect.  In order
 9   to collect the custodial files and the documents at ZHP, it
10   does require there to be an on-site collection, and that has
11   been postponed, and Your Honor has been clear that the
12   coronavirus provides the kind of due cause for such
13   postponement.
14             THE COURT:  Well, the -- Mr. Slater --
15             MR. SLATER:  Again -- I'm sorry, Judge.
16             THE COURT:  We're not going to resolve the issue on
17   this phone call.  This will be discussed with Judge Kugler
18   when we address the letters, whether or the 25th or soon after
19   that.  So, you know, I think it's pointless to talk about it
20   further on this phone call.  If you want to talk offline
21   amongst yourselves, that's fine.  But I don't think we're
22   going to get anywhere with further discussion about this
23   issue.
24             Okay.  Is there anything else anybody else wants to
25   talk about before we adjourn?
```

1        MR. GOLDBERG:  Nothing from the defense, Your Honor.
2        THE COURT:  Okay.  There being nothing else,
3   everybody be safe.  We'll be in contact with you as soon as
4   possible about the accommodation for the 25th.  And I just
5   repeat again, the Court is very cognizant of the problem and
6   we'll make all reasonable accommodations for the parties and
7   counsel.
8        Thank you.  We're adjourned.
9           (Proceedings concluded at 4:29 p.m.)
10                      * * * * *
11
12                 C E R T I F I C A T I O N
13        I, Roxanne Galanti, court approved transcriber,
14  certify that the foregoing is a correct transcript from the
15  official electronic sound recording of the proceedings in the
16  above-entitled matter.
17
18
19  _____             March 18, 2020
20  ROXANNE GALANTI
21  DIANA DOMAN TRANSCRIBING, LLC
22
23
24
25