*CONFIDENTIAL DRAFT DOCUMENT AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA) CONTAMINATION PRODUCTS LIABILITY LITIGATION** | : : : : : | **HON. ROBERT B. KUGLER** **MASTER DOCKET NUMBER** Civil No. 1:19-md-02875-RBK-JS |
| **This Document Relates to All Actions** | : | |

# DECLARATION OF BRETT HARROP IN SUPPORT OF LETTER BRIEF OBJECTIONS AND MOTION FOR PROTECTIVE ORDER OF MCKESSON CORPORATION/WHOLESALERS ON "MACRO" DISCOVERY ISSUES ARISING FROM PLAINTIFFS' PROPOSED SET OF REQUESTS FOR PRODUCTION

I, Brett Harrop, hereby declare as follows:

## Identification

1. My name is Brett Harrop. I have been employed by McKesson Corporation ("McKesson" or the "Company") since July 1, 1991. During this time, I have been a project manager for Special Projects; Distribution Center manager, and a Director of Finance. The statements made in this declaration ("Declaration") are based upon my personal knowledge and information obtained during the course of my job duties and responsibilities. Currently, I serve as Vice President Distribution Operations.

## Duties and responsibilities

2. As Vice President Distribution Operations, my job duties and responsibilities require that I be, and I am, familiar with McKesson's practices regarding: the logistical processes of running a Distribution Center, including standard operating procedures, policymaking, working with human resources, and government and regulatory compliance.

**CONFIDENTIAL DRAFT DOCUMENT AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT**

## Plaintiffs' Draft RFPs to Wholesalers and Specific Objections

3. I am familiar with Plaintiffs' proposed Set of Requests for Production of Documents to Wholesalers ("Draft RFPs" or "RFPs") (ECF 413-3). This Declaration supports the Wholesalers' letter brief ("Letter Brief") regarding Macro Issues, filed simultaneously herewith, generally, and supports McKesson's objections to and request for a protective order regarding such RFPs, specifically.

4. In particular, this Declaration supports McKesson's objections to RFPs 2 and 4 (the "Subject Requests"), in which Plaintiffs seek documents generated during and information from the time period of January 1, 2012 until December 31, 2019 ("Requested Time Period") related to McKesson's purchases and sales of valsartan-containing drugs (VCDs).

5. RFPs Nos. 2 and 4 specifically seek the following Wholesaler Profit Info, to which McKesson objects and moves for protection:

- RFP No. 2 seeks the gross and net price paid by each Wholesaler for each individual purchase of VCDs from 2012-2019 from each Defendant Manufacturer.

- RFP No. 4 seeks the gross and net price paid by each Retailer Defendant for each individual purchase of VCDs from 2012-2019 to each Defendant Wholesaler.

Plaintiffs' Draft RFPs (ECF 413-3).

## McKesson Does Not Keep Wholesaler VCD Profit Info in the Ordinary Course of Business

6. Plaintiffs seek profit figures (gross and net price on each individual sale over 8 years) for VCDs as a drug class, something McKesson does not maintain.

*CONFIDENTIAL DRAFT DOCUMENT AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT*

7. McKesson does not, in the ordinary course of business, calculate the cost of or profits from particular NDC numbers or even by class of pharmaceuticals.

8. In particular, McKesson has not, in the ordinary course of business, from 2012 to the present, calculated their cost of, or profits from, VCD sales.

9. To calculate such profits would require a significant expenditure of time and resources by McKesson.

10. To calculate profits, McKesson would be required to determine all of the expenses, taxes and overhead attributable to VCDs only over eight years. To determine expenses, taxes and overhead attributable to these eight years-worth of VCD sales would require significant additional data collection and work – and potentially work that could not be done by McKesson's own employees, but would need to be completed by an outside expert retained for this specific task.

11. Therefore, to accomplish the task would require not only diverting McKesson accountants from normal business operations, but hiring accounting and tax experts to make sure profits were not overstated.

### **McKesson's Profit Info is Highly Proprietary and Constitutes Trade Secrets**

12. To Wholesalers, there are serious competitive and commercial sensitivities associated with generic drug pricing, and Wholesalers takes steps to protect the confidential and proprietary data and information relating to sourcing, pricing and distributing pharmaceutical products.

13. Because of the complexity of sourcing and selling generic drugs within a highly competitive environment, Wholesalers are particularly sensitive to disclosure of non-public pricing information.

*CONFIDENTIAL DRAFT DOCUMENT AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT*

14. The pricing and selling of generic drugs is more complicated than that of name-brand drugs. With a name-brand drug, there is typically only one manufacturer. In contrast, FDA may approve dozens of entities to manufacture and sell a particular generic drug in multiple different formulations.

15. Wholesalers source generic drugs from multiple entities with varying contracts, negotiations, and pricing structures.

16. Wholesalers consider their non-public information regarding sourcing and pricing of generic drugs to be one of their most commercially sensitive, highly confidential, and proprietary trade secrets.

17. Generic drugs are sold in far greater proportion than name-brand drugs and therefore account for a substantial portion of prescription drug sales for Wholesalers, including McKesson; this results in a highly competitive environment among Wholesalers and across the various entities selling and sourcing generic drugs to pharmacy customers.

18. Retailers compete with each other to source and sell generic drugs, including to negotiate the most competitive pricing for these drugs with Wholesalers.

19. The viability of Wholesalers' generic drug business therefore demands that the confidentiality of pricing information be carefully maintained, in light of the real risk of loss of significant competitive and economic advantage and/or loss of customers if one of Wholesalers' Retailer customers learned what another competitor customer was paying for a particular drug.

20. Therefore, Wholesalers, including McKesson, take great steps to maintain the confidentiality of their financial data, including non-public pricing information.

*CONFIDENTIAL DRAFT DOCUMENT AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT*

## Implications for the Current Litigation

21. Given the way pharmaceuticals are sold – by Agreements covering multiple NDC numbers – and McKesson's systems containing sales and purchase history information, McKesson does not store the Requested Info as part of its normal course of business.

22. The work required to parse out specific sales and/or purchases of the multiple of VCDs to each Defendant Retailer and from each Defendant Manufacturer over a 7 year period would be burdensome, expensive, and time-consuming.

23. The work required to determine the net and gross price for each of those sales and purchases would require burdensome and expensive collection and expert-level analysis of extraneous information, such as taxes, rent, etc.

24. Additionally, Wholesalers, such as McKesson, take great care to ensure that competitors and/or suppliers and customers do not obtain access to or learn of their confidential financial data and pricing information, and disclosure of sensitive and confidential financial data and pricing information to the public and/or to other defendants who are parties to this litigation would alter the competitive balance that allows the generic drug market to function efficiently. It could also limit McKesson and other Wholesalers' ability to negotiate future sales and sourcing contracts.

25. I am aware that nearly every defendant in this litigation is a supplier, a customer or a competitor in some way and any cross-pollination of competitive pricing information would cause irreparable harm in the form of tangible loss of business or profits. In the event of such an occurrence, it would be impossible to undo the damage of such a disclosure.

5

*CONFIDENTIAL DRAFT DOCUMENT AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed <sup>6/9/2020</sup> ___ June, 2020, in Eden, Utah _____.

_____
Brett Harrop
Vice President Distribution Operations

6