*CONFIDENTIAL INFORMATION*
*PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA) CONTAMINATION PRODUCTS LIABILITY LITIGATION | : : : : : | HON. ROBERT B. KUGLER  MASTER DOCKET NUMBER Civil No. 1:19-md-02875-RBK-JS |
| This Document Relates to All Actions | : | |

## DECLARATION OF CARDINAL HEALTH WITNESS

I, Brian Renner, the undersigned, hereby declare as follows:

1. I am a Director of Finance at Cardinal Health, Inc., a position I have held for five years. In that capacity I am responsible for, among other things, supplier rebates billings. I have personal knowledge of the facts set forth below based on my experience, employment, understanding and review of corporate records. If called and sworn as a witness, I could and would testify thereto.

2. I understand that Plaintiffs in the above action seek from Cardinal Health, Inc. and other Wholesaler Defendants profit information, including gross and net price, on each individual purchase and sale of Valsartan-containing pharmaceutical products ("Valsartan" or "VCDs") from Manufacturer Defendants and to Retailer Defendants. Cardinal Health, Inc. and affiliated entities (together, "Cardinal Health"), however, do not in the ordinary course of business maintain such profit information (including net pricing) on individual pharmaceutical product sales or at the product level. Nor am I aware of Cardinal Health, in the ordinary course of business, from 2012 to the present, calculating profits (including net pricing) either from individual VCD sales or at the VCD product level as requested by Plaintiffs.

CONFIDENTIAL INFORMATION
PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER

3. As discussed below, to produce information necessary to calculate net pricing and profits from individual VCD sales or at the product level, **if at all possible**, would require a substantial expenditure of money and resources by Cardinal Health.

<u>Cardinal Health Has Complex and Individualized Purchase and Sale Arrangements with Suppliers and Retailers</u>

4. At a high level, Cardinal Health as a Wholesaler generally engages in the purchase and sale of brand and generic drugs as follows.

5. Cardinal Health enters into agreements with suppliers (including certain of the Manufacturer Defendants ("Suppliers")), under which Suppliers agree to provide a variety of pharmaceuticals, including VCDs, to Cardinal Health pursuant to complex and particularized price calculations.

6. Pursuant to these agreements, Cardinal Health makes individual purchases of a variety of pharmaceuticals, including VCDs, from Manufacturers on an as-needed basis.

7. Cardinal Health also enters into agreements with customers including certain of the Retail Pharmacy Defendants (together, "Retailers") under which Cardinal Health as a Wholesaler agrees to provide Retailers a variety of pharmaceuticals, including VCDs, pursuant to complex and particularized price calculations.

<u>Cardinal Health Measures Profits at the Customer Level, and Not at the Individual Sale or Product Level</u>

8. The pricing of such purchases and sales of pharmaceuticals is complex in part because Cardinal Health approaches pricing and measures profits at the customer and manufacturer level, based on a "market basket" of different marketed brand and generic products. Cardinal Health does not measure profit on any one product or group of products; nor can that be done as Plaintiffs suggest. By way of example, in order to evaluate the profitability of a particular branded product in a given customer contract, one would have to consider, among

2

*CONFIDENTIAL INFORMATION*
*PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER*

other things, the volume of generic products the customer was required to purchase in order to obtain the corresponding discount or rebate off of that branded product, which varies depending on myriad factors including market developments, additional services requested, timing of delivery (e.g., rush deliveries, or multiple deliveries per day), and difficulty of handling products (e.g., refrigeration or security requirements). The end result is that the pricing and profitability of each product is dynamic and inextricably linked to other products in the basket.

<u>Cardinal Health Does Not Calculate Individual VCD Purchase/Sale Profits Information</u>

9. Cardinal Health does not have the ability to run the report requested by Plaintiffs for its profits for VCD purchases or sales on an individual transaction or product basis. Information required as inputs to the calculations needed for such a report (discussed in Paragraph 10 below), to the extent they exist, would reside in a variety of electronic systems as well as in the documentation of individual purchase transactions and agreements, which are maintained in various forms in various locations, repositories and archives ("Sources") – many of which are managed by different teams.

10. To attempt to calculate profits and net pricing on an individual VCD level, Cardinal Health would need to collect from the various Sources for each purchase and sale requested at least the following categories of information:

  a) **Rebates**, which are fees and/or post-sale returns of a portion of the invoice price determined by a variety of factors (e.g., based on the volume and mix of products purchased);

  b) **Discounts**, which are post-sale price reductions for prompt/cash payment;

  c) **Chargebacks**, which are the differences between the pricing specified for sale by Cardinal Health and the WAC paid by Cardinal Health to each Supplier; and

  d) **Wholesale Acquisition Cost ("WAC"),** which is the invoice amount paid by Cardinal Health to the Supplier; or **"invoice price",** which is the invoice amount paid to Cardinal Health from its Retailer.

3

**CONFIDENTIAL INFORMATION**
**PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER**

11. This information would be voluminous – reporting on in excess of 500,000 transactions – and require significant resources to obtain, if even possible. Cardinal Health would then be required to take at least the following steps: (a) convert such information into a useable form for input into a common database; (b) identify gaps and normalize the fields so that they align to the correct transactions; (c) perform the needed calculations, whereby Cardinal Health would subtract from the WAC/invoice price all rebates, discounts and chargebacks returned to purchaser; and (d) validate the results.

12. I understand that Cardinal Health has never previously attempted to assemble the information requested by Plaintiffs for VCDs, much less to perform the additional work needed to approximate net pricing. Because of this and other factors, including the interdependent pricing based on the basket of products for each customer (*see* Paragraph 8, *supra*), the eight year time period over which information has been demanded, and the varied datasets originating in different (sometimes acquired) Cardinal Health organizations with inputs and administration from various persons, the process not only will be highly burdensome, but the resulting calculation requested by Plaintiffs will likely be incomplete and unrepresentative of actual profits.

<u>Calculating Profits on Individual Purchase Transactions Would Be Highly Burdensome</u>

13. To attempt to calculate profits on the requested purchases of VCDs, Cardinal Health would need to engage multiple teams to extract and analyze the referenced information from various Sources. By way of example, I have estimated below the work required to collect information regarding **rebates**, which is but one of several inputs in the net pricing calculation requested by Plaintiffs. Significant additional burden would be imposed by the collection and

**CONFIDENTIAL INFORMATION**
**PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER**

calculation of additional inputs (including discounts, chargebacks and WAC) required for this calculation.

14. *Rebate Information:* Cardinal Health would need to engage its Finance Operations and/or Information Technology ("IT") teams to collect rebate data from two separate systems. Data from April 2017 forward exists on "Vistex", which is a part of Cardinal Health's SAP data systems. Data preceding April 2017 exists in "RMS", which is a legacy rebate management system that was retired in 2017.

15. To extract post-April 2017 rebate information from Vistex is estimated to take Cardinal Health's Finance Operations team approximately two hours per NDC number. This is because there are multiple agreements and amendments per NDC, and each has to be researched to obtain the relevant terms as well. There are more than 70 unique NDC numbers for the requested transactions, so this would take more than 140 hours.

16. The pre-April 2017 RMS data is located in an external cloud based repository. I understand that extracting data from this cloud repository requires IT to create unique programming and queries customized to the required information, which are estimated to take another approximately 160 hours to perform. Additional work would then be required to connect fee billing data back to detailed supporting information, which is maintained separately, as well as to validate and make the information useable in the requested calculation.

17. Further, there also are non-recurring rebate items (e.g., price protection and service level penalties) that are not centrally recorded and that would have to be researched and calculated manually, requiring yet additional hours.

18. *Additional Inputs to the Net Pricing Calculation:* Additional teams and resources will be required to collect discounts, chargeback and WAC information.

5

*CONFIDENTIAL INFORMATION*
*PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER*

    a)    Cardinal Health would need to engage its Accounts Payable team to collect **discount** information from its SAP system from 2017 forward, as well as any legacy system prior to 2017. These discounts are calculated based on the purchaser's particular performance under its Agreement, the requirements for which will vary from those under other Agreements, as well as over time.

    b)    To obtain **chargeback** information, Cardinal Health would need to engage its Chargebacks team to collect from Sources including the SAP system. The information is in active and archived form, depending on the time frame. Chargebacks are determined based on further contract specific information.

    c)    To obtain **WAC** information, Cardinal Health would need to engage its Data Analytics team to collect from the Master Item File system ("MIF").

19. It would take a significant effort, requiring coordination with each of those teams, to attempt even to quantify the number of hours required to perform collections and analysis of discounts, chargebacks and WAC information.

<u>Calculating Profits on Individual Sale Transactions Would Be Even More Burdensome</u>

20. Cardinal Health has sold VCDs to thousands of customers over the eight year time frame requested by Plaintiffs. Because of this and because sales records often are kept separately from purchase records including in the Sales Data Warehouse ("SDW"), which is a Teradata system, I anticipate that the process for isolating sales to the Retailer Defendants, collecting such data, and calculating profits, would be even more complex, time-consuming,

6

**CONFIDENTIAL INFORMATION**
**PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER**

costly, and uncertain than the already highly burdensome process regarding purchase information described above.

21.     By way of example, to determine the **rebates** applicable to each sale requested, Cardinal Health would need to engage its Accounting team and Distribution Center Region Coordinators to collect the underlying contracts and related documentation, including invoices, receipts, and credits, containing the required information. Rebate information is not maintained in any one database, but instead exists in disparate systems and repositories across Cardinal Health's many distribution centers. In some instances, there are as many as five or six different rebates that may be applicable to each sale and/or customer, which may be tied to performance criteria for products other than VCDs as well as other factors (*see* Paragraph 8, *supra*).

22.     Cardinal Health would further need to engage Cardinal Health's IT teams to collect from its SDW and SAP systems further inputs to the profits calculations, **discount** and **invoice price** information for each individual sale over the eight-year period.

23.     Once all available documentation and data sets are collected, then the Accounting team and Region Coordinators would be required to extract the needed information, normalize and validate it, and analyze it to enable it to be integrated with the other collected information such to perform the profit calculations. As with purchase transaction information, it would take a significant effort, requiring coordination with each of those teams, to attempt to quantify the number of hours required to perform collections and analysis of the inputs needed to conduct the net pricing calculation requested by Plaintiffs.

24.     Plaintiffs also have demanded the data of Cardinal Health, Inc.'s affiliated entities that also purchased and sold VCDs over the time frame proposed by Plaintiffs. I understand that these affiliates keep at least some of the needed information in different systems managed by

*CONFIDENTIAL INFORMATION*
*PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER*

different teams, in particular for older data. Collecting and performing the tasks needed to try to calculate profits for these affiliates would likely require further complex and costly processes and yet additional allocations of resources.

<u>Pricing Information Is Highly Sensitive and Proprietary</u>

25. Finally, there are serious competitive and commercial sensitivities associated with drug pricing. Cardinal Health takes steps to protect the confidential and proprietary data and information relating to sourcing, pricing, and distributing pharmaceutical products.

26. Cardinal Health sources drugs from multiple entities with varying contracts, negotiations, and pricing structures.

27. Because of the complexity of sourcing and selling drugs within a highly competitive environment, Cardinal Health is particularly sensitive to any disclosure of its non-public pricing information.

28. Cardinal Health considers its non-public information regarding sourcing and pricing of drugs to be one of its most commercially sensitive, highly confidential, and proprietary trade secrets.

29. The viability of Cardinal Health's drug business therefore demands that the confidentiality of pricing information be carefully maintained, in light of the real risk of loss of significant competitive and economic advantage and/or loss of customers if one of Cardinal Health's customers learned what another competitor customer was paying for a particular drug. In addition, Cardinal Health owes strict obligations to its contract partners to take all reasonable steps to maintain the confidentiality of certain of their designated information including pricing information.

8

*CONFIDENTIAL INFORMATION*
*PRODUCED UNDER CONFIDENTIALITY AND PROTECTIVE ORDER*

30. In the event of an unauthorized disclosure of such information, it may be impossible to undo the damage. This danger and associated concern applies not only to current pricing information but also to historical pricing information, which will show Cardinal Health's prior dealings, as well as its business and pricing strategies and processes – which is closely held and valuable competitive intelligence to both Cardinal Health's competitors and customers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on June 15, 2020.

*Brian Renner*
Brian Renner (Jun 15, 2020 14:52 EDT)

Brian Renner

9

# Final Renner (Pricing) Declaration - CONFIDENTIAL INFORMATION

Final Audit Report                                             2020-06-15

| | |
|---|---|
| Created: | 2020-06-15 |
| By: | jenna.hochstetler@cardinalhealth.com |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAcpB4hdW1SeOMGnh9dAj112ugfGPhq5at |

## "Final Renner (Pricing) Declaration - CONFIDENTIAL INFORMATION" History

- Document created by jenna.hochstetler@cardinalhealth.com
  2020-06-15 - 6:22:01 PM GMT- IP address: 199.230.203.246

- Document emailed to Brian Renner (brian.renner@cardinalhealth.com) for signature
  2020-06-15 - 6:23:31 PM GMT

- Email viewed by Brian Renner (brian.renner@cardinalhealth.com)
  2020-06-15 - 6:27:34 PM GMT- IP address: 199.230.203.251

- Document e-signed by Brian Renner (brian.renner@cardinalhealth.com)
  Signature Date: 2020-06-15 - 6:52:53 PM GMT - Time Source: server- IP address: 199.230.203.251

- Signed document emailed to Brian Renner (brian.renner@cardinalhealth.com) and jenna.hochstetler@cardinalhealth.com
  2020-06-15 - 6:52:53 PM GMT

