# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **In re: Valsartan Products Liability Litigation** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

## DECLARATION OF GRACE ALLEN

I, Grace Allen, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1. I am authorized to provide this declaration on behalf of Express Scripts, Inc. ("Express Scripts"), a Defendant in the above-captioned proceeding.

2. I am currently the Vice President of Client Pricing and Underwriting for Express Scripts.

3. In that capacity, I am familiar with the competitive and commercial sensitivities associated with generic drug reimbursement rates to pharmacies, as well as pricing guarantees negotiated with Express Scripts' Clients for valsartan-containing drugs ("VCDs"). Likewise, in that capacity, I have personal knowledge regarding the steps Express Scripts and its affiliated mail-order pharmacy entities take to safeguard confidential and proprietary financial data and information relating to pharmacy reimbursement rates and Client pricing for pharmaceutical products, including VCDs.

4. Express Scripts is a pharmacy benefits manager ("PBM"). As a PBM, Express Scripts contracts with employers and other third-party payors ("TPPs"), to safely, consistently, and affordably facilitate the dispensation of prescription drugs to members of the sponsors.

5. Express Scripts does not dispense prescription drugs. Instead, Express Scripts maintains a "network" of third-party retail pharmacies that meet Express Scripts' standards and requirements and from which its Clients' members may be able to obtain prescription drugs, depending on the particular Client's agreement and plan design. In addition, Express Scripts' affiliated mail-order pharmacy entities may dispense certain types of prescription drugs. Often, plan members pay some portion of the cost of a particular drug and TPPs agree to pay or reimburse the remainder of that cost, pursuant to heavily negotiated and highly confidential agreements and plan designs.

6. I understand that Plaintiffs in this multidistrict litigation are seeking production of information concerning the amounts paid by TPPs for VCDs dispensed by Express Scripts' affiliated mail-order entities to Express Scripts members.

7. I also understand that many named defendants in this litigation are pharmaceutical drug manufacturers or wholesalers, which may source pharmaceutical products for Express Scripts' affiliated mail-order pharmacies. I also understand that many named defendants are pharmacies that participate in Express Scripts' retail pharmacy network. Some of these pharmacy defendants are affiliated with PBMs that compete with Express Scripts in the market for PBM services.

8. The rates negotiated between Express Scripts and TPPs for generic drugs like VCDs, which I understand is included among the data Plaintiffs in this litigation have requested by seeking the amounts paid or reimbursed by TPPs for VCDs dispensed by Express Scripts'

affiliated mail-order entities, are a highly sensitive and closely guarded trade secret, the secrecy of which Express Scripts considers one of its central value propositions. This pricing is subject to heavily negotiated agreements with TPPs, which have strongly worded confidentiality provisions that restrict and forbid public disclosure of pricing and rates.

9. If Express Scripts' PBM competitors or network pharmacies, or the entities that source prescription drugs for Express Scripts' affiliated mail-order pharmacies, were to obtain data or documents regarding the rates offered to TPPs, those entities could use it to their advantage in negotiating sourcing or network agreements with Express Scripts, among other competitive injuries.

10. This sensitivity applies both to current pricing information and historical pricing information, as negotiated prices often build from rates provided in prior years.

11. Express Scripts and its affiliated pharmacy entities have accordingly undertaken extensive steps to maintain the confidentiality of the types of data and information requested by Plaintiffs in this litigation. These efforts include inserting confidentiality protections into its agreements with TPPs, expending substantial time, capital, and effort to abide by and enforce such provisions, employing restrictions and clearances to limit access to this information—and data and information concerning dispensation by Express Scripts' affiliated mail-order entities— to employees that have a need to know it.

12. Indeed, certain of Express Scripts' PBM Services Agreements would potentially permit a TPP Client to seek relief in the event that financial data or information is disclosed to third parties.

13. Disclosure of such sensitive and confidential financial data and information to the public and/or to other defendants who are parties to this litigation, even at a condensed or

3

HB: 4840-8600-8767.1

aggregate level, would fundamentally alter the competitive balance that allows the generic drug market to function efficiently and hinder Express Scripts' or its affiliated pharmacy entities' abilities to negotiate in the marketplace.

14. Accordingly, even a litigation protective order would be insufficient to protect all parties involved from inadvertent disclosure of this highly sensitive information. Many of the defendants either compete in the marketplace or are contracted with each other through heavily negotiated agreements. As such, any disclosure would cause irreparable harm. It would be impossible to undo the damage of such a disclosure.

Executed on this 2nd day of ~~May~~ June, 2020

*Grace E Allen*

_____

Grace Allen