# EXHIBIT D

UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN<br>PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Actions | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

## DECLARATION OF DANNY TSAI

I, Danny Tsai, hereby declare pursuant to 28 U.S.C. 1746 as follows:

1. I understand that Humana Pharmacy, Inc. ("Humana Pharmacy") is currently named as a defendant in litigation regarding generic valsartan, losartan, and irbesartan products. I further understand that the plaintiffs are seeking to discover information regarding Humana Pharmacy's contracts with pharmacy benefit managers (PBMs), including the amounts reimbursed by PBMs for the products at issue. I submit this declaration in order to explain why this information is extremely sensitive. Humana Pharmacy would suffer significant competitive harm if this information were to be disclosed.

2. I currently support Humana Pharmacy, Inc. as an Associate Vice President of Financial Planning & Analysis. In that role, I am responsible for the financial operations of Humana Pharmacy, Inc. including accounting, budgeting, forecasting, and billing/collections.

3. I have served in this role since 2019. Prior to that, I served as a Director of Financial Planning & Analysis.

4. As a result of my experience, I am familiar with the competitive and commercial sensitivities of the pharmacy business and pharmacy-PBM contracting.

5. By way of example, I am familiar with the following issues:

   a. Most of the prescription drugs that Humana Pharmacy dispenses are covered by an insurance plan. Humana Pharmacy very rarely dispenses to uninsured individuals. All of the drugs at issue in this litigation require a prescription.

   b. Humana Pharmacy enters into contracts with multiple PBMs. Each PBM represents a different insurance plan or plans. By entering into contracts with PBMs, Humana Pharmacy is able to accept different insurance plans as an "in-network" pharmacy.

   c. If Humana Pharmacy has a contractual agreement with a PBM to accept a particular insurance plan, Humana Pharmacy is an "in-network" pharmacy for patients covered by that plan. If Humana Pharmacy has no such agreement, it is an "out-of-network" pharmacy for patients covered by that plan.

   d. Humana Pharmacy is an "in-network" pharmacy for the vast majority of drugs it dispenses. Although Humana Pharmacy could dispense drugs to a patient as an "out-of-network" pharmacy, it rarely does so. It is almost always more cost-effective for a patient to fill a prescription at an "in-network" pharmacy.

   e. The amount that insured patients pay for drugs at an "in-network" pharmacy is governed by the terms of their insurance plan. The amount that Humana Pharmacy receives for such drugs is governed by the terms of Humana Pharmacy's contracts with PBMs.

   f. The PBM contracts specify how much the insurance plan will reimburse Humana Pharmacy for the drug.

6. It is important for Humana Pharmacy to protect information about its PBM contracting and PBM pricing from PBMs.

   a. Humana Pharmacy's PBM contracts include strict privacy and confidentiality terms. To disclose this information would be in breach of the PBM contracts.

   b. Similarly, Humana Pharmacy often communicates to PBMs that it will not share this information, even if no contract results. To disclose this information would damage Humana Pharmacy's standing in the commercial community, and it would damage the trust relationships that Humana Pharmacy has built with PBMs.

   c. PBMs that know the terms of Humana Pharmacy's other PBM contracts may refuse to contract with Humana Pharmacy for anything more than the lowest reimbursement rate.

   d. If any of Humana Pharmacy's PBM contracts were to dissolve, Humana Pharmacy would likely lose the customers that are insured by the plans represented by the PBM.

7. Based on these considerations, I believe Humana Pharmacy would suffer considerable harm to its competitive position if its reimbursement rates and PBM contract information were disclosed to PBMs.

8. It is also important for Humana Pharmacy to protect information about drug reimbursement from competing pharmacies, including those also named as defendants in this lawsuit.

   a. Competitors may leverage this information to engage in predatory pricing. For instance, the competitor may agree to accept reimbursement at a lower rate that the competitor knows Humana Pharmacy cannot match.

9. Based on these considerations, I believe Humana Pharmacy would suffer considerable harm to its competitive position if its reimbursement rates were disclosed to competing pharmacies.

10. I understand that several other large national pharmacy chains are also named as defendants in this litigation, such as Wal-Mart, Walgreens, Kroger, Albertsons, Rite-Aid, Express Scripts, and CVS. These companies are direct competitors of Humana Pharmacy. Based on my experience in the industry, I believe these companies likely regard their drug reimbursement information and PBM contracts the same way Humana Pharmacy regards its own information. That is to say, I believe they consider their information to be highly confidential. I believe they would not want Humana Pharmacy to learn their information.

11. These competing pharmacies have their own relationships with PBMs. In addition, some of them—such as Express Scripts and CVS—are affiliated with PBMs. Therefore, if Humana Pharmacy's information is disclosed to these competing pharmacies, there is a risk that PBMs would obtain the information, as well.

12. Humana Pharmacy goes to great lengths to protect information about its PBM contracts and reimbursement rates. For instance, Humana Pharmacy:

    a. maintains the confidential contracts and reimbursement rates on a private electronic drive that is accessible only with valid login credentials for Humana employees directly involved in the rate negotiation and contracting;

    b. limits the distribution of the contract and rate information to solely the key finance, analytics, and operational leadership teams on a "need to know" basis;

    c. maintains strict privacy rules and regulations governing employee access and protocols;

    d. maintains stringent cybersecurity systems to ensure that the above protocols are followed.

13. I understand that courts sometimes enter protective orders that require counsel to protect the confidentiality of information. I do not believe that such an order would be sufficient in this case.

    a. I assume that the partners, associates, and support staff at the various law firms would make good-faith efforts to protect the confidentiality of Humana Pharmacy's information. Nevertheless, inadvertent disclosures happen.

    b. I understand that more than 100 attorneys have appeared in this case. If Humana Pharmacy's information is produced, presumably all of these many attorneys and their law firms would have access to it. At each firm, numerous individuals (partners, associates, support staff) would have access to Humana Pharmacy's information. The more individuals have access to the information, the greater risk of an inadvertent disclosure. For instance, a third party might overhear plaintiffs' counsel discussing the information. A third party might see one of Humana Pharmacy's documents over counsel's shoulder. Or one of Humana Pharmacy's documents (or a memo or email that references Humana Pharmacy's information) may simply be dropped in public.

    c. Setting aside disclosure concerns, there is a risk that any lawyer who views Humana Pharmacy's information will retain that information in his or her mind. I assume that counsel will comply with a court order to destroy the information upon conclusion of the litigation. But it is extremely difficult to "unring the bell" once Humana Pharmacy's information is viewed. Of course, Humana expects its own

counsel to guard vigilantly against any use of this information that might disadvantage Humana Pharmacy. But counsel who represent other parties do not have the same duties to Humana Pharmacy, and they cannot be expected to have the same care. Again, these concerns are exacerbated by the sheer number of individuals that would gain access to Humana Pharmacy's information.

d. Even if Humana Pharmacy's information is produced on an "Attorneys' Eyes Only" basis, or even if Humana Pharmacy's information is produced only to Plaintiffs, PBMs and competing pharmacies may discover the information if it is filed with the court or referenced in a court hearing.

I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true.

Dated: 5/20/20         Signed: _____