# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **In re: Valsartan Products Liability Litigation** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

### DECLARATION OF DICK DERKS

I, Dick Derks, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1. I am authorized to provide this declaration on behalf of Walmart Inc. (Walmart), a Defendant in the above-captioned proceeding.

2. I have worked at Walmart for six (6) years and am employed as Director of Generic Rx, Pharmacy Merchandising. In that role, I am responsible for sourcing generic drugs for Walmart's retail network.

3. In my capacity as Director of Generic Rx, Pharmacy Merchandising, I am familiar with the competitive and commercial sensitivities associated with generic drug pricing.

4. Walmart is, among other things, a national pharmacy. While the precise methods of sourcing and selling generic drugs undoubtedly vary across retail pharmacies, in my capacity as Walmart's Director of Generic Rx, Pharmacy Merchandising, I understand that the complexity of these transactions is not unique to Walmart.

1

5. Because of the complexity of sourcing and selling generic drugs within a highly competitive environment, production of non-public pricing information imposes a significant confidentiality risk upon Walmart for the reasons explained in this Declaration.

6. The pricing and selling of generic drugs is very complicated. While with a name-brand drug there is typically only one manufacturer, for generic drugs the FDA may approve multiple entities to manufacture and sell a particular generic drug in different formulations. That means that pharmacies may and do source generic drugs from different entities with varying contracts, negotiations, and pricing structures. Some generic drugs are purchased directly from a manufacturer; others are purchased indirectly through a wholesaler.

7. Walmart considers non-public information regarding the sourcing and pricing of the generic drugs it sells to be one of its most commercially sensitive, highly confidential, and proprietary trade secrets. Generic drugs are dispensed in far greater proportion than name-brand drugs, and therefore account for a substantial portion of prescription drug sales for pharmacies. There is a highly competitive environment among retail pharmacy chains and across the various entities selling and sourcing generic drugs to those retail pharmacy chains, with all participants – pharmacies and distributors – seeking to obtain the best pricing terms.

8. Retail pharmacies compete with each other to source and sell generic drugs, including to negotiate the most competitive pricing for these drugs with wholesalers and suppliers. A large percentage of Walmart's prescriptions dispensed and a significant portion of Walmart's prescription drug sales come from generic drugs, so protecting the confidential sourcing and pricing of those generic drugs is of paramount importance. If, for example, a competitor or a wholesaler learned the prices Walmart pays to source one of its generic drugs, that competitor or wholesaler could leverage that information to get its own better prices, putting

Walmart at a competitive disadvantage. The viability of Walmart's generic drug business therefore demands that the confidentiality of pricing information be fully protected and carefully maintained because of the significant competitive and economic impact if a Walmart competitor or wholesaler learned what it was paying for a particular drug at a particular time in the drug supply marketplace.

9. Walmart has made significant efforts to maintain the confidentiality of its sourcing data, including non-public pricing information. For example, contracts relating to drug sourcing and pricing are maintained in a password protected system to which only key Walmart employees are allowed access. Furthermore, the financial details of Walmart drug supplier contracts, including negotiations related to those contracts, are maintained within a specific department and are not shared with other departments at Walmart.

10. Walmart has taken great care to ensure that its competitors, and drug wholesalers other than those with whom it transacts business, do not obtain access to or learn of its confidential financial data and pricing information. The disclosure of such sensitive information to the public and/or to other defendants in this litigation who are competitors of Walmart, or to wholesalers other than those with whom Walmart contracts, would alter the important and delicate competitive balance that allows the generic drug market to function efficiently and, ultimately, to benefit consumers. It would also limit Walmart's ability to negotiate future sales and sourcing contracts. Walmart's contracts with its suppliers include confidentiality provisions, so disclosure of this information, even if pursuant to a protective order, would result in adverse consequences to Walmart's ability to negotiate and contract with its suppliers in the future.

11. Given the sensitivity of such financial and pricing data, Walmart is highly concerned that a protective order is insufficient to prevent an inadvertent disclosure of the

foregoing information. Considering that many other defendants in this litigation are direct competitors of Walmart or are suppliers with whom Walmart does or may contract for the purchase of generic drugs, any inadvertent disclosure of upstream pricing information would have adverse financial consequences to Walmart. If Walmart's confidential financial and pricing data ends up in the hands of a competitor or of suppliers generally, it would cause irreparable harm. In the event of such a disclosure, it would be impossible to undo the damage to Walmart's ability to obtain the most favorable pricing of generic drugs dispensed to its customers.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed May __, 2020 at Bentonville, Arkansas.
5/12/2020 | 08:40 CDT

*Dick Derks*

Dick Derks