# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **In re: Valsartan Products Liability Litigation** | MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Court Judge<br><br>Honorable Joel Schneider,<br>Magistrate Judge |

**DECLARATION OF RITE AID**

I, __Owen P. McMahon____, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1. I am authorized to provide this declaration on behalf of Rite Aid, a Defendant in the above-captioned proceeding.

2. I have worked at Rite Aid for over twenty (20) years and I have been employed as Vice President ("VP") of Pharmaceutical Purchasing since 2015. A brief overview of my duties as VP of Pharmaceutical Purchasing include, but is not limited to, the following: develop short and long term strategic procurement practices to increase sales and gross profit margins; review, analyze, and negotiate strategic purchasing agreements for pharmaceutical products; oversee, manage, and coordinate activities of pharmacy pricing associates; serve as an internal expert in the area of pharmaceutical product purchasing and distribution for all functional areas of the business; and participate in the development and execution of financial control processes to ensure the accurate accounting of purchases and associated revenue.

3. In my capacity as VP of Pharmaceutical Purchasing, I am familiar with the competitive and commercial sensitivities associated with generic drug pricing. Likewise, in that

1

capacity, I have personal knowledge regarding the steps Rite Aid takes to protect the confidential and proprietary financial data and information relating to sourcing, pricing and distributing pharmaceutical products.

4. Rite Aid is a national pharmacy. It is one of several retail pharmacy defendants in this multi-district litigation. Although the precise methods of sourcing and selling generic drugs undoubtedly vary across retail pharmacies, in my capacity as VP of Pharmaceutical Purchasing. I understand that the complexity of these transactions is not unique to Rite Aid.

5. Because of the complexity of sourcing and selling generic drugs within a highly competitive environment, production of non-public pricing information imposes a significant burden on Rite Aid, for the reasons explained in this Declaration.

6. The pricing and selling of generic drugs is more complicated than that of name-brand drugs. With a name-brand drug, there is typically only one manufacturer. In contrast, FDA may approve dozens of entities to manufacture and sell a particular generic drug in multiple different formulations. Pharmacies may source generic drugs from multiple entities with varying contracts, negotiations, and pricing structures. Some generic drugs are purchased directly from a manufacturer; others are purchased indirectly through a wholesaler.

7. Rite Aid considers non-public information regarding the sourcing and pricing of generic drugs it sells to be one of its most—if not its most—commercially sensitive, highly confidential, and proprietary trade secrets. Generic drugs are dispensed in far greater proportion than name-brand drugs and therefore account for a substantial portion of prescription drug sales for pharmacies; this results in a highly competitive environment among retail pharmacy chains and across the various entities selling and sourcing generic drugs to those retail pharmacy chains.

8. Retail pharmacies compete with each other to source and sell generic drugs, including to negotiate the most competitive pricing for these drugs with wholesalers and suppliers. The cost of generic pharmaceuticals are the basis for how Rite Aid makes money as a business, exposing the cost would undermine our ability to conduct business with payers and PBMs. The vast majority of our business is dispensing medications and the majority of products dispensed are generics, providing pricing would provide details to the market that could be used against us when negotiating contracts with PBMs. We make the margin between the price that a PBM will reimburse us for a product and the cost we can buy the product at. If PBMs had access to these costs they could effectively lower our reimbursement decreasing our ability to generate margin on the vast majority of our business. Exposing the pricing could also eliminate our ability to negotiate with pharmaceutical manufacturers and wholesalers as they would be able to offer less competitive bids. The viability of Rite Aid's generic drug business therefore demands that the confidentiality of pricing information be carefully maintained, in light of the real risk of the significant competitive and economic advantage that would be gained if competitors of Rite Aid learned what Rite Aid was paying for a particular drug.

9. Rite Aid has undertaken extensive steps to maintain the confidentiality of its financial data, including non-public pricing information. For example, the wholesale, distributor and generic manufacturer agreements are in a repository only accessible to a select few people due to the sensitivity of this information. Those agreements are the basis for how generics are priced and the structure of rebates associated with our purchases.

10. Additionally, to ensure that sensitive financial data and other information regarding pricing and costs are only disclosed to third parties under adequate confidentiality provisions, Rite Aid also requires that its employees follow clear guidelines to ensure confidentiality of sensitive

financial information is maintained. All Rite Aid employees must comply with these requirements in requesting disclosure of any financial information outside the company. These requirements apply not only to pricing data, but to all financial information Rite Aid considers commercially sensitive and a trade secret.

11. Rite Aid has taken great care to ensure that competitors do not obtain access to or learn of its confidential financial data and pricing information. Disclosure of sensitive and confidential financial data and pricing information to the public and/or to other defendants who are parties to this litigation would alter the competitive balance that allows the generic drug market to function efficiently. It could also limit Rite Aid's ability to negotiate future sales and sourcing contracts.

12. Given the tremendous effort Rite Aid has put into protecting its sensitive financial and pricing data, Rite Aid is highly concerned that a litigation protective order would be insufficient to protect all parties involved from inadvertent disclosure of the same. Considering nearly every defendant is a competitor in some way, any improper disclosure is likely to end up in the hands of a third party which would cause irreparable harm. In the event of such an occurrence, it would be impossible to undo the damage of such a disclosure.

Date: June 8, 2020

By: _____
Owen McMahon
Vice President of Pharmaceutical
Purchasing for Rite Aid