# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **In re: Valsartan Products Liability Litigation** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

### DECLARATION OF BRITT TURNER

I, Britt Turner, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1. I am authorized to provide this declaration on behalf of The Kroger Co., a Defendant in the above-captioned proceeding.

2. I have worked at The Kroger Co. for 34 years and am employed as the Director of Pharmacy Procurement.

3. In my capacity as Director of Pharmacy Procurement, I am familiar with the competitive and commercial sensitivities associated with generic drug pricing. Likewise, in that capacity, I have personal knowledge regarding the steps Kroger Pharmacy takes to protect the confidential and proprietary financial data and information relating to sourcing, pricing and distributing pharmaceutical products.

4. Kroger Pharmacy is a national pharmacy. It is one of several retail pharmacy defendants in this multi-district litigation. Although the precise methods of sourcing and selling generic drugs undoubtedly vary across retail pharmacies, in my capacity as Director of Pharmacy Procurement, I understand that the complexity of these transactions is not unique to Kroger.

5.	Because of the complexity of sourcing and selling generic drugs within a highly competitive environment, production of non-public pricing information imposes a significant burden on Kroger, for the reasons explained in this Declaration.

6.	The pricing and selling of generic drugs is more complicated than that of name-brand drugs. With a name-brand drug, there is typically only one manufacturer. In contrast, FDA may approve dozens of entities to manufacture and sell a particular generic drug in multiple different formulations. Pharmacies may source generic drugs from multiple entities with varying contracts, negotiations, and pricing structures. Some generic drugs are purchased directly from a manufacturer; others are purchased indirectly through a wholesaler.

7.	Kroger considers non-public information regarding the sourcing and pricing of generic drugs it sells to be one of its most—if not its most—commercially sensitive, highly confidential, and proprietary trade secrets. Generic drugs are dispensed in far greater proportion than name-brand drugs and therefore account for a substantial portion of prescription drug sales for pharmacies; this results in a highly competitive environment among retail pharmacy chains and across the various entities selling and sourcing generic drugs to those retail pharmacy chains.

8.	Retail pharmacies compete with each other to source and sell generic drugs, including to negotiate the most competitive pricing for these drugs with wholesalers and suppliers. The viability of Kroger's generic drug business therefore demands that the confidentiality of pricing information be carefully maintained, in light of the real risk of the significant competitive and economic advantage that would be gained if competitors of Kroger learned what Kroger was paying for a particular drug.

9. Kroger has undertaken extensive steps to maintain the confidentiality of its financial data, including non-public pricing information. For example, this data is stored on the Kroger network where only few people on my team have access to it.

10. Additionally, to ensure that sensitive financial data and other information regarding pricing and costs are only disclosed to third parties under adequate confidentiality provisions, Kroger also requires that its employees follow a process designed to confirm that a non-disclosure agreement, protective order or other confidentiality protections are in place before distribution of sensitive financial information. All Kroger employees must comply with these requirements in requesting disclosure of any financial information outside the company. These requirements apply not only to pricing data, but to all financial information Kroger considers commercially sensitive and a trade secret.

11. Kroger has taken great care to ensure that competitors do not obtain access to or learn of its confidential financial data and pricing information. Disclosure of sensitive and confidential financial data and pricing information to the public and/or to other defendants who are parties to this litigation would alter the competitive balance that allows the generic drug market to function efficiently. It could also limit Kroger's ability to negotiate future sales and sourcing contracts.

12. Given the tremendous effort Kroger has put into protecting its sensitive financial and pricing data, Kroger is highly concerned that a litigation protective order would be insufficient to protect all parties involved from inadvertent disclosure of the same. Considering nearly every defendant is a competitor in some way, any improper disclosure is likely to end up in the hands of a third party which would cause irreparable harm. In the event of such an occurrence, it would be impossible to undo the damage of such a disclosure.

_6/3/20_  
Date

_Britt Turner_ (signature)  
Britt Turner