# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **In re: Valsartan Products Liability Litigation** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

## DECLARATION OF MEGAN MISTARZ

I, Megan Mistarz, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1.  I am authorized to provide this declaration on behalf of Walgreens Boots Alliance, Inc. ("Walgreens"), a Defendant in the above-captioned proceeding.

2.  I have worked at Walgreens for nearly thirteen (13) years and am employed as Senior Director, Payor & Provider Solutions. In that role, I manage the team that provides analytic and operational support to Walgreens' managed care sales and contracting teams.

3.  In my capacity as Senior Director, Payor & Provider Solutions, I am familiar with the competitive and commercial sensitivities associated with generic drug reimbursement and pricing. Likewise, in that capacity, I have personal knowledge regarding the steps Walgreens takes to safeguard confidential and proprietary financial data and information relating to pricing of, and reimbursement for, pharmaceutical products, including the generic versions of Valsartan at issue in this litigation.

4.  I understand that Plaintiffs in this litigation are seeking production of information concerning the price that Third-Party Payors ("TPPs") paid or reimbursed Walgreens for

1

Valsartan dispensed to customers. The term Third-Party Payor refers generally to any entity (other than the patient) that reimburses a pharmacy for the cost of all or a portion of the cost of a patient's prescription.

5. The process by which pharmacies are reimbursed for prescriptions is complicated. For Walgreens, the process is generally as follows: First, the patient provides his or her prescription and insurance card to the pharmacy. Second, Walgreens submits the claim for the prescription to the TPP or its claims processor ("Processor"). Third, the Processor returns to Walgreens the amount owed by the patient for the prescription and the amount owed by the TPP for the prescription. The returned amounts, i.e., the adjudicated amounts, are the total payment expected by the pharmacy for the dispensed prescription; however, this amount may not be the final amount paid by the TPP. At certain agreed-upon time periods (e.g., quarterly, annually, etc.) depending on the contract between Walgreens and each TPP, Walgreens and the TPP will undergo a reconciliation process for all prescriptions dispensed in that time period. For example, if a TPP has agreed to reimburse Walgreens for all generic prescriptions at a certain reimbursement rate, but on aggregate for all generic prescriptions dispensed during that period the TPP has underpaid the pharmacy compared to the contracted reimbursement rate, then the difference between the overall adjudicated amount and contracted amount is negotiated by the parties. The negotiated amount is agreed to as an aggregate amount and is not allocated among individual drugs, let alone individual consumer transactions.

6. There are different types of TPPs. Some TPPs are employers or health insurance plans. Other TPPs are Pharmacy Benefit Managers ("PBMs"). Rather than contract directly with pharmacies, some employers/health care plans use PBMs to negotiate on their behalf. In these cases, the employer/health care plan is referred to as the "Client" of the PBM. On behalf of

the Client, the PBM constructs a network of pharmacies to be included within the Client's benefit plans and negotiates pricing with those pharmacies.

7. When a PBM constructs a network of pharmacies to be included in a particular Client's plan, it is driven by the Client's needs and preferences. For example, some Clients elect to include a narrow range of pharmacies, which excludes certain pharmacy providers, because the PBM has contracted with other pharmacies at more aggressive pricing in exchange for the potential of those pharmacies acquiring a higher share of prescriptions. Other Clients prefer to include a wider range of pharmacies, while still trying to reduce their costs and those of their beneficiaries/members.

8. Because of the complexity of dispensing and reimbursement for generic drugs within this highly competitive environment, the dissemination of non-public reimbursement information imposes a significant risk on Walgreens. Non-public information regarding the pricing of generic drugs is among the most commercially sensitive of Walgreens' trade secrets, given the highly competitive environment not only among retail pharmacy chains, but also the various entities selling and sourcing generic drugs to those retail pharmacy chains.

9. The amount TPPs reimburse Walgreens for each prescription is a guarded trade secret. The contracts that Walgreens has with various TPPs contain highly sensitive and confidential information, and those contracts contain confidentiality provisions prohibiting the disclosure of that information. Further, even prior contracts remain highly confidential because although contracts and reimbursement rates may change over time, rate structures often build off discussions from year to year, so disclosure of "old" rates or contracts are likely to strongly suggest what current contracts contain.

10. For example, all retail pharmacies (including those that are defendants in this case) want to negotiate the best possible pricing for themselves and their customers. That involves (a) providing services to TPPs, (b) being considered "in network" for those TPPs, and (c) receiving fair reimbursement from TPPs. Other retail pharmacy defendants could gain a significant competitive and economic advantage over Walgreens if they learned this confidential information, and especially what each TPP reimburses Walgreens for dispensing generic drugs to the TPP's beneficiaries and members.

11. Further, because TPPs may negotiate different reimbursement rates for different pharmacies or different Clients, disclosure of a TPPs reimbursement rate or the reimbursement rate contracted between the TPP and its Client could fundamentally alter the way the retail pharmacy industry operates.

12. Walgreens has made great efforts to maintain the confidentiality of its financial data, including non-public pricing information. For example, access to this information is highly curtailed even within Walgreens. Very few key employees have access to this information. These employees sit on a locked floor within the building. Even on that locked floor, paper copies of confidential documents such as contracts must be kept in locked drawers. In terms of electronic files, confidential financial data is located on a particular shared drive that only certain employees have access to, which is maintained by virtue of authenticator IDs linked to Walgreens' electronic file structure. Further, employees with access to confidential financial information are required to sign a non-disclosure agreement. These requirements apply not only to pricing data, but to financial information Walgreens considers commercially sensitive and a trade secret.

13. Disclosure of sensitive and confidential financial data and pricing information to the public and/or to other defendants who are parties to this litigation would fundamentally alter the competitive balance that allows the generic drug market to function efficiently and hinder Walgreens' ability to negotiate future contracts with TPPs.

14. Given the extreme commercial sensitivity of pricing/reimbursement information and the great lengths Walgreens has gone to protect its sensitive financial and pricing data, Walgreens is concerned that a protective order would be insufficient to protect against the inadvertent disclosure of this information. Considering that every retail pharmacy defendant is a competitor of Walgreens, any improper disclosure could be crippling to the entire industry, and would be impossible to undo.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed May 18, 2020 at Highland Park, Illinois.

*Megan M. Mistarz*
Megan Mistarz