NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

**Duane Morris®**

*FIRM and AFFILIATE OFFICES*

SETH A. GOLDBERG
DIRECT DIAL: +1 215 979 1175
PERSONAL FAX: +1 215 689 2198
*E-MAIL:* SAGoldberg@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

July 14, 2020

**VIA ECF**

The Honorable Joel Schneider
United States Magistrate Judge
District of New Jersey

    Re:    <u>In re Valsartan, Losartan, and Irbesartan Products Liability Litigation</u>
               Case No. 1:19-md-02875-RBK-JS

Dear Judge Schneider:

    This letter is to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on July 15.

    **1.  Update on Manufacturers' Document and ESI Productions**

    It is anticipated that Manufacturers Defendants will be producing documents on July 15, 2020 per the Order dated April 20, 2020 (ECF No. 416). The Manufacturer Defendants have been meeting with Behram Parek, counsel for Plaintiffs, on an individual basis to discuss their ESI pursuant to the parties' respective stipulated orders. *See* ECF Nos. 485, 487, 489, 490, 493, 497.

    **2.  Discovery to be Produced by the Retail Pharmacy Defendants**

    Following the hearing on macro discovery matters, the Court approved Requests for Production to the Retail Pharmacy Defendants (the "Retailers") on July 10, 2020, ordering responses and full productions by August 14, 2020. The Retailers intend to begin producing documents on August 14, but rather than delay informing the Court of the difficulties inherent in *completing* productions by this date, the Retailers request a modification of the schedule to add additional dates for the rolling production of certain categories of documents that either could not have been collected until after the hearing on macro issues, and/or that require substantial review and production efforts before production, with productions to be completed by October 13, 2020. Good cause to modify the current schedule exists for the following reasons:

DuaneMorris

July 14, 2020
Page 2

      First, while the Retailers had already begun identifying and/or collecting certain categories of documents in advance of the macro discovery hearing, the Retailers understood that—as had been the case with the Manufacturers—discovery obligations would be triggered by the Court's order of a final set of document requests following macro discovery hearings, not prior to there being operative discovery. Indeed, certain categories of documents could not have been collected earlier because the scope of collection and production from the Retailers' sources were dependent on the Court's order on the macro discovery issues. In particular, the production of documents Plaintiffs seek in response to Requests 1, 4, and 5 (sourcing and dispensing data) represent voluminous data that must be exported, reviewed, and anonymized, and that process could not begin until the Retailers knew what data points to pull as a result of the Court's macro discovery issues ruling. To the extent required, anonymizing (or pseudonym-izing) records to remove personal identifying information to address privacy and/or HIPAA concerns is not a simple task, and it may require specialized scripts to be created and run over or through the data to be produced. The Retailers have always advised Plaintiffs in meet-and-confer discussions that production of the responsive sales data, following the macro hearing, would take significant time, and there simply is no way that this data can be (or could ever have been) produced in this time frame.[1]

      Second, while there have been discussions over the last few conferences about the production of certain specific "exemplar" documents, these requests were made by plaintiffs to other defense tiers—not to the Retailers—and accordingly did not relate to the draft document requests directed to the Retailers. This was in part because the Retailers agreed to produce certain sales data without the time limitations sought by other defendants, such that the exemplar discussion raised to the Court did not involve the Retailers. Although the documents requests approved by the Court as to the Retailers do reference other types of documents to be produced "as exemplar," these exemplar documents were not the subject of any specific issue raised prior to the hearing on macro discovery issues. The Retailer Defendants therefore respectfully submit that the exemplar issue should not foreclose the Retailers' request for an adjusted production schedule.

---

[1] This is especially true given the difficulties of remote collections currently experienced by many of these defendants. Many of the relevant individuals working on document collection for many of the Retailers, including outside counsel, in-house counsel, discovery vendors, and custodians of the sales data or relevant policies, are still subject to restrictions on travel and/or office work due to the COVID-19 pandemic. Although much of the collection work can be done remotely or through a limited staff on site (some of whom may need to receive special permission to go into the office), collection and production simply cannot be done now as efficiently as could be done before the COVID-19 pandemic. Further, each of the Retailers have different document collection processes and systems, so there is not uniformity in the particular requests that are more easily producible.

DuaneMorris

July 14, 2020
Page 3

Finally, although the Retailers request a slightly modified schedule for production, it is worth noting that if granted, the Retailers would be on target to complete productions more than a month before the manufacturers, whose Requests for Production were finalized on December 23, 2019, more than six months ago.

In light of the above challenges, and to avoid multiple submissions for good cause from the individual Retailers outlining more specific collection difficulties, the Retailers propose the following schedule, which may be modified only for further good cause:

- August 14, 2020: Retailers to provide written responses and initial production of documents;
- September 14, 2020: Second production of responsive documents;
- October 13, 2020: Final production of documents.

### 3. Teva Defendants' Use of Continuous Multimodal Learning (CMML) Technology to Prioritize Documents for Review

The Teva Defendants are preparing to make a significant and meaningful ESI production on July 15 in accordance with the Court's Orders, the ESI Protocol, and the Plaintiffs' request to prioritize certain of Teva's custodians, which has not been in any way impacted by the use of the technology discussed below. In an effort to facilitate the review and processing of the millions of documents captured by the applicable search terms, the Teva Defendants' discovery vendor, Consilio, suggested deployment of certain of its technology assisted review capabilities. Specifically, Consilio recommended a well-recognized CMML platform to assist in identifying and prioritizing for review documents most likely to be responsive. The ESI Protocol specifically contemplates the use of such review technology and provides only that the parties "***will cooperate in good faith*** regarding the disclosure and formulation of . . . *any TAR/predictive coding **prior to using any such technology to narrow the pool of collected documents to a set to undergo review** for possible production*." Despite the use of such technology being authorized by the ESI Protocol, and Teva's assurance that it has not to date used the CMML platform to eliminate any documents from the review pool, Plaintiffs have failed to cooperate in good faith and are objecting to the Teva Defendants' use of the CMML technology, for any purpose. Plaintiffs have offered no basis in fact or law for their objection, and have refused to take seriously any effort by the Teva Defendants to demonstrate how the technology works, including both access to the Teva Defendants' ESI consultant and a white paper prepared specifically at their request. Nor have Plaintiffs countered the ample legal authority the Teva Defendants have shared that authorizes CMML as a practical and preferable solution for large e-discovery data sets. In addition to being unfounded, Plaintiffs' complaints are premature as the Plaintiffs have not even received the Teva Defendants' production yet in order make any declaration about its deficiency. The Teva Defendants are preparing a Motion with respect to this issue and will be prepared to preview this issue for the Court.

DuaneMorris

July 14, 2020
Page 4

                                    Respectfully submitted,

                                    */s/ Seth A. Goldberg*

                                    Seth A. Goldberg

cc:    Adam Slater, Esq. (*via email*, *for distribution to Plaintiffs' Counsel*)
        Jessica Priselac, Esq. (*via email*, *for distribution to Defendants' Counsel*)
        Sarah Johnston, Esq. (*via email*)
        Jeffrey Geoppinger, Esq. (*via email*)
        Lori G. Cohen, Esq. (*via email*)
        Clem C. Trischler, Esq. (*via email*)