

Jeffrey W. Greene
Tel 617.310.6031
Fax 617.987.0931
greenej@gtlaw.com

July 14, 2020

**VIA CM/ECF**

The Honorable Joel Schneider
United States District Court for the District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

      Re:    *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation., U.S. District Court for the District of New Jersey; Case No. 1:19-md-02875-RBK-JS*

Dear Judge Schneider:

    Defendants Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, Actavis Pharma, Inc., and Arrow Pharm (Malta) Ltd. (collectively, "Teva" or the "Teva Defendants") respectfully submit this letter brief in support of our request for an order enforcing the Electronic Discovery Protocol ("ESI Protocol") (Dkt. 127) and affirming the Teva Defendants' electronic document review and production process. As set forth more fully below, the Teva Defendants have expended extraordinary resources to comply with this Court's discovery expectations and the spirit of the applicable rules and are in the final stages of preparing a substantial document production for delivery on July 15th in compliance with the Court's Orders (Dkt. 303 and Dkt. 493), the ESI Protocol, and Plaintiffs' prioritization preferences and requests. Yet on the eve of this production, Plaintiffs are attempting to unreasonably delay and derail not only the July 15th production, but also the Teva Defendants' review and production methodology as a whole by raising unfounded objections and refusing to meaningfully meet and confer in good faith. Plaintiffs' ill-prepared and improper attempt to re-litigate the ESI Protocol entered by this Court, unnecessarily adding cost and ensuring delay and prejudice to Teva, should be swiftly foreclosed by this Court and the Federal Rules of Civil Procedure's focus on proportionality.

    Over one year ago, the parties began negotiating the parameters of an ESI Protocol. On June 19, 2019, this Court entered the stipulated ESI Protocol as an Order of the Court. Now, ***thirteen months later***, Plaintiffs refuse to abide by the terms of this Court's Order and instead seek to assert complete control over Teva's discovery process. The goal of Plaintiff's actions is clear: to make the discovery process in this case as punitive and as costly as possible for Teva. Specifically, Plaintiffs are objecting to the Teva Defendants' use of a technology platform to assist

The Honorable Joel Schneider
July 14, 2020
2

with its prioritization and review of documents known as continuous multi-modal learning ("CMML").[1] Plaintiffs' objections are in stark contrast to the ESI Protocol's express allowance of such a process. Although the Teva Defendants have gone to great lengths to be transparent and reasonable with Plaintiffs about the use of CMML, Plaintiffs have refused to meaningfully meet and confer in good faith and now seek to dictate the manner in which documents are reviewed and produced, rather than the substance of the document productions themselves.

For the reasons set forth more fully below, this Court should enforce the terms of the ESI Protocol by foreclosing Plaintiffs' attempt to unilaterally control Teva's method of electronic document review and instead allow the Teva Defendants to continue to appropriately leverage the CMML process with Plaintiffs' good faith cooperation moving forward. This will allow the Teva Defendants to reasonably prioritize its review and production of responsive documents and further the Court's goals in advancing e-discovery in a proportional manner.

### I.      RELEVANT PROCEDURAL BACKGROUND

On June 19, 2019, this Court entered the ESI Protocol which states, in relevant part:

> ***The parties agree that they will cooperate in good faith*** regarding the disclosure and formulation of appropriate search methodology, search terms and protocols, ***and any TAR/predictive coding prior to using any such technology to narrow the pool of collected documents to a set to undergo review for possible production***. The parties agree to meet and confer as early as possible, to discuss, inter alia:
>
> - Search methodology(ies) to be utilized (including but not limited to Boolean searches and technology assisted review/predictive coding);
> - Disclosure and selection of all search terms, including foreign language (e.g., Chinese) and search terms based upon actual terminology used in the producing party's documents;
> - Search protocol, including but not limited to the custodial and non-custodial sources to which the search methodology(ies) will be applied; and
> - Post-search error sampling and sampling/testing reports.

(Dkt. 127) (emphasis added). Notably, this Order does not require that Defendants must first seek Plaintiffs' permission and/or consent for utilizing e-discovery analytics and/or predictive coding. Instead, the Court requires the parties to reasonably cooperate in good faith. *Id*.

In accordance with the requirements of the ESI Protocol, on February 24, 2020, the parties began negotiating search terms. This initial meet and confer occurred after the Teva Defendants collected and processed the custodial email files for a representative sample of 16 custodians, applied the search terms to not only the email but also email attachments, and reviewed and

---

[1] CMML is a technology platform that utilizes a standardized, defensible process to analyze textual content to allow for rapid relevant document discovery.  The predictive scores from the CMML model are used to prioritize document review, ensuring that the most relevant documents are reviewed (and produced) first.

The Honorable Joel Schneider
July 14, 2020
3

analyzed the initial "hit reports" to identify terms that required adjustment. As previously briefed, the Teva Defendants' subsequently joined a joint defense counterproposal to modify the original search terms, before reaching agreement with Plaintiffs' counsel on a Stipulation and Order Regarding ESI Search Terms as to the Teva Defendants. (Dkt. 493).

After significant negotiation and insistence on the Plaintiffs' part to seek broad search terms, once the parties finalized the list of agreed-upon search terms on June 24, 2020, the Teva Defendants instructed their discovery vendor to apply the final set of terms to the collected custodial data (of 17 custodians, including the Teva custodians whom Plaintiffs had requested to be prioritized) which, after deduplication and email threading efforts[2], yielded 2.7 million documents. *See* Declaration of Deborah Ketchmark from Consilio ("Consilio Dec."), at ¶ 2. Teva expects this number to increase to approximately 3.7 million documents once additional custodians are loaded to the database. *Id.* ¶ 3. Thus, faced with the extreme burden associated with reviewing and producing this staggering volume of documents (the vast majority of which appear to be non-responsive due to the overly-broad the search terms Plaintiffs insisted were necessary) the Teva Defendants began exploring options to ensure that a review of these documents was done in the most efficient manner possible.

### a. Teva's Efforts to Prioritize Review

Recognizing the Teva Defendants' discovery burden, and the enormous amount of data collected, the Teva Defendants' discovery vendor, Consilio, suggested deployment of certain of its technology assisted review capabilities in order efficiently organize production deadlines in this case. Specifically, Consilio recommended utilizing a CMML platform to assist in identifying and prioritizing for review documents most likely to be responsive. In the most simple terms, CMML allows Teva to more quickly identify, review and produce responsive documents by leveraging advanced data processing tools to recognize the documents most likely to be responsive, and then populating those documents to the top of the review queue. In other words, this process is far more efficient than a traditional linear review because it ensures that likely responsive documents are reviewed (and produced) first, rather than Teva having to waste time and resources reviewing swaths of non-responsive documents up front (none of which would be produced in any event due to being non-responsive). Not to mention, *it benefits Plaintiffs* by enabling larger responsive sets of documents to be produced earlier as opposed to later.

In more technical terms, the CMML application follows a TAR 2.0 or a Continuous Active Learning ("CAL") methodology. Unlike a TAR 1.0 workflow, where a distinct set of documents (often referred to as a "seed set") is used to train the application until stability is reached (i.e., the application is no longer benefiting from additional training), the CMML workflow is an iterative process, where the training of the application is continuous, and does not rely on a seed set. Rather, CMML has the flexibility to begin prioritizing documents based on any subset of documents that

---

[2] Deduplication removes exact duplicate copies of documents. Email threading operates to ensure that the fullest email chain is included in the database.

**Greenberg Traurig, LLP | Attorneys at Law**

One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com

The Honorable Joel Schneider
July 14, 2020
4

have been evaluated and coded with a responsive or non-responsive coding value.[3] As more documents are reviewed and submitted as subsequent training examples, the CMML application improves in its ability to distinguish between responsive and non-responsive content. CMML's reliability has been confirmed from both a statistical/academic perspective and its use is recommended by Consilio for best practices. *See* Consilio Dec., at ¶ 8.

### b. The Parties' Meet and Confer Process

In accordance with the ESI Protocol (which requires the parties to work in good faith to disclose "any TAR/predictive coding ***prior to using any such technology to narrow the pool of collected documents to a set to undergo review*** for possible production")[4], and in an effort to provide transparency and cooperate in good faith, the Teva Defendants disclosed their use of CMML to Plaintiffs by letter on July 1, 2020. *See* Declaration of Jeffrey Greene ("Greene Dec."), at **Exhibit A**. In near immediate response, and without providing any substantive basis or justification, Plaintiffs indicated that they "do not agree to Teva's proposal to use CMML for review and production of documents to Plaintiffs at this time" and proposed a meet and confer telephone conference. *See* Greene Dec., at **Exhibit B**. Despite Plaintiffs' position, the Teva Defendants indicated their good faith agreement to a meet and confer telephone conference (*see* Greene Dec., at **Exhibit C**) and provided additional information regarding CMML to Plaintiffs via correspondence on July 6, 2020. *See* Greene Dec., at **Exhibit D**.

On July 8, 2020, the parties engaged in a meet and confer telephone conference. In order to ensure that the Teva Defendants could answer any substantive questions Plaintiffs might have about CMML, the Teva Defendants invited Xavier Diokno, a senior director of data analytics from Consilio, to participate on the call and answer any technical questions from Plaintiffs' team. During that conference, lead counsel for Plaintiffs (Mr. Slater), ***while acknowledging that he had not read any of the Teva Defendants' correspondence or cited case law***, stated he was nonetheless continuing to categorically object to the Teva Defendants' use of CMML (thereby reading a consent provision into the ESI Protocol that does not exist). In so doing, counsel offered for the first time in this litigation the remarkable position that if a document hits on any search term, it is "relevant" to the case and therefore must be reviewed and produced (absent privilege). The Teva Defendants explained that the use of keyword searches is to identify *potentially* responsive documents, and then a review process (dictated by the applicable court rules and caselaw and executed by the responding party) is undertaken to determine which documents are indeed responsive and must be produced.[5] The Teva Defendants made clear that this was the process they were undertaking, and the documents produced to Plaintiffs on July 15th will have been reviewed

---

[3] A more fulsome description of the CMML platform is described in the white paper provided to Plaintiffs, attached as Exhibit E to the Declaration of Jeffrey Greene.

[4] To be clear, Teva has not yet reached a point where it has "narrowed the pool of collected documents to a set to undergo review" and has stated as much to Plaintiffs. If or when CMML indicates that the continued review of documents is unreasonable (because, for example, the documents left in the review queue are largely non-responsive), Teva has already informed Plaintiffs that it will meet and confer over this process, as the ESI Protocol requires.

[5] The Teva Defendants further explained that a custodial document would be marked "responsive" during the ESI review if it related to or was relevant to the claims and defenses in the Valsartan litigation and/or was responsive to the Plaintiffs' pending Request for Production.

Greenberg Traurig, LLP | Attorneys at Law
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001
www.gtlaw.com

The Honorable Joel Schneider
July 14, 2020
5

prior to production. The Teva Defendants also made clear the benefits of CMML *e.g.* the most relevant documents within the designated custodial set are prioritized for review and production first – while less responsive documents are deprioritized.

Plaintiffs' lead ESI attorney, Behram Parekh, next indicated they needed to better understand the technology in order to make a determination as to whether they would object to the Teva Defendants' use of CMML (again, despite the fact that the ESI Protocol does not require Plaintiffs' assent). Thus, pursuant to Plaintiffs' explicit request for more information, the Teva Defendants prepared a detailed overview describing the CMML technology and included two exhibits from Consilio (totaling 21 pages) that detail exactly how the technology works. *See* Greene Dec., at **Exhibit E**. Plaintiffs asked that the overview specifically address the issue of prioritization of custodians and related data. The Teva Defendants agreed to do so and sent 21 pages worth of information surrounding CMML. *See* Greene Dec., at **Exhibit E,** p. 3.

But rather than review and discuss any of the substance of the materials Teva sent, Plaintiffs instead responded merely 36 minutes later indicating that "Plaintiffs do not agree to Teva's proposed use of CMML as an overlay to the use of search terms for the production of ESI." *See* Greene Dec., at **Exhibit F**. Thereafter, the Teva Defendants responded on July 12, 2020, explaining its compliance with the ESI Protocol and informing Plaintiffs that, to the extent Teva is forced to bring this dispute to the attention of the Court "to simply confirm what [we] are entitled to do pursuant to the existing ESI Protocol, black-letter law, and accepted ESI discovery practices, please note that we will not hesitate to seek an award of fees and costs for this unnecessary diversion." See Greene Dec., at **Exhibit G**. The following morning, Plaintiffs responded that "Plaintiffs object to Teva's proposed use of CMML." *See* Greene Dec., at **Exhibit H**.

Significantly, Plaintiffs' steadfast, unfounded, and substantively unexplained rejection of Teva's use of CMML was prematurely made without even having received or reviewed Teva's first production of ESI, to be made tomorrow. Despite the Teva Defendants' efforts to work in good faith and provide transparency to Plaintiffs in the process of electronic discovery, the Teva Defendants are left with no choice but to file the instant correspondence.

## II.     STANDARD OF REVIEW

Where a party violates a discovery Order entered by the Court (particularly one that was stipulated to by the parties), it is not uncommon for a Court to enforce that Order. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, Civil Action No. 04-2819 (SRC), 2010 U.S. Dist. LEXIS 88718, at *2 (D.N.J. Aug. 27, 2010) (examining a Motion to Enforce the Stipulated Protective Order). Federal courts have inherent power and authority to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise. *HSH Nordbank v. M/V Ahmetbey,* No. 03-3520, 2004 U.S. Dist. LEXIS 1303, at *19 (E.D. Pa. Jan. 30, 2004) ("It is inherent in the power of this Court to enforce its own orders.") (citing *Chambers v. Nasco Co.*, 501 U.S. 32, 44 (1991)). This includes orders entered based on stipulations of the parties. *Faulkner v. Phila. Hous. Auth.*, CIVIL ACTION No. 94-1584, 1995 U.S. Dist. LEXIS

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com

The Honorable Joel Schneider
July 14, 2020
6

5274, at *2 (E.D. Pa. Apr. 18, 1995) (granting Motion to Enforce a prior order of the Court and a stipulation between the parties). Plaintiffs' failure to cooperate in good faith regarding Teva's use of CMML is a clear violation of the ESI Protocol.

### III. ARGUMENT

#### a. The ESI Protocol Authorizes CMML and the Court should enforce the ESI Protocol

The ESI Protocol—which the parties stipulated to—authorizes the use of CMML on its face. As set forth above, Section (II) of the ESI Protocol makes clear that the parties are to "cooperate in good faith" regarding "any TAR/predictive coding prior to using any such technology to narrow the pool of collected documents to a set to undergo review for possible production."[6] (Dkt. 127). In layman's terms, the ESI Protocol indicates that a party can use a platform such as CMML to prioritize its review of responsive documents. Where a party chooses to do so, it merely needs to disclose its use of technology, which Teva has undisputedly done.

Only at the point when a party is going to "use any such technology to narrow the pool" of documents to undergo review (i.e., when that party is no longer going to continue in its review of documents because CMML is indicating that the remainder of the documents in the review platform are non-responsive and thus it would be a waste of time and resources to review those documents), are the parties to meet and confer to discuss "post-searching error sampling and sampling/testing reports." (Dkt. 127). In other words, the parties are to confer on what type of sampling and testing has been done to confirm that the remaining pool of documents (which a party has signaled it does not intend to review) are truly non-responsive. Any other interpretation of the ESI protocol is untenable.

Here, Teva has strictly complied with the requirements of the ESI Protocol. By disclosing its use of CMML, Teva made clear that it is not yet at a point where it is stopping the review of documents CMML deems non-responsive but, if or when it reached that point, Teva would confer with Plaintiffs in good faith as the ESI Protocol requires. Despite Teva's efforts to maintain transparency throughout the discovery process—as the adage says, no good deed goes unpunished—and Teva now finds itself in a position where Plaintiffs are objecting to Teva's use of CMML for any purpose despite there being no requirement that Plaintiffs agree to this method of review and production in the first instance. Even worse, Plaintiffs conduct here is injecting unnecessary delay into the process, because instead of engaging in good faith meet and confer conversations on substance with Teva about how the parties could work together to as we approach the next phase, Plaintiffs have cut the discussions short and solely stand on categorical objections. Because Plaintiffs' explicit assent is not required for Teva to utilize CMML, this Court should enforce the ESI Protocol and confirm Teva is authorized to use CMML in its review and production

---

[6] CMML is not a TAR 1.0 platform and thus, the Teva Defendants question whether this section of the ESI Protocol relating to "TAR/predictive coding" is even applicable. In an abundance of caution, however, the Teva Defendants are still seeking to comply with this provision of the ESI Protocol and expect the same from Plaintiffs.

The Honorable Joel Schneider
July 14, 2020
7

process and that Plaintiffs must cooperate in good faith with Teva as appropriate utilization of CMML technology continues moving forward.

### b. The Responding Party has the Absolute Right to Choose its Method of Review and Production

In addition to this Court having expressly permitted the use of CMML technology by way of the ESI Protocol, it is uncontroverted black letter law that a responding party gets to choose its method of review and production. Indeed, "responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for producing their own electronically stored information." *In re Mercedes-Benz Emissions Litigation*, 2020 WL 103975, at *1 (D. N.J. Jan. 9, 2020). The ESI Protocol echoes this sentiment: "Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit … a party's production obligations under applicable law…." (Dkt. 127). Plaintiffs have offered no authority to the contrary since none exists.

Here, absent Plaintiffs' showing of any deficiency by Teva, Teva unquestionably has the right to control its document review and production process without unreasonable interference on the part of Plaintiffs. Plaintiffs have not—and cannot—point to any deficiency in Teva's production, *because they are categorically disputing Teva's use of CMML before even having received a document production with electronic discovery*. Plaintiffs' premature complaints about Teva's use of CMML is solely intended to frustrate the discovery process and should be rejected by this Court.

### c. Courts Endorse CMML as a Practical and Preferable Solution

There is an overwhelming amount of authority that favors the use of a Continuous Active Learning platform such as CMML (all of which was provided to Plaintiffs in advance of this filing). Indeed, Courts have recognized that a platform such as CMML is preferable in large electronic discovery matters such as this case.

As one court in the District of New Jersey has recently recognized, there is "wide acceptance that TAR is … superior to keyword searching." *In re Mercedes-Benz*, 2020 WL 103975, at *1. To be clear, Teva is not proposing that the search terms agreed upon by the parties now be discarded; instead, Teva is proposing that the CMML platform be used to prioritize the review of documents hitting on those agreed upon search terms as an additional process that ensures responsive documents will be prioritized for production. This belt-and-suspenders approach allows efficiency in the process while also ensuring that discoverable documents are reviewed and produced. *Hyles v. New York City*, 2016 WL 4077114, at *1 (S.D.N.Y. Aug. 1, 2016) ("TAR is the best and most efficient search tool. That is particularly so, according to research studies, where the TAR methodology uses continuous active learning ("CAL"), which eliminates issues about the seed set and stabilizing the TAR tool."); *Progressive Cas. Ins. Co. v. Delaney*, 2014 WL 3563467, at *2 (D. Nev. July 18, 2014) ("Predictive coding has emerged as a far more

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place | Suite 2000 | Boston, Massachusetts 02110 | T +1 617.310.6000 | F +1 617.310.6001

www.gtlaw.com

The Honorable Joel Schneider
July 14, 2020
8

accurate means of producing responsive ESI in discovery. Studies show it is far more accurate than human review or keyword searches which have their own limitations.")

Thus, the caselaw is abundantly clear: CMML is permissible (and, in fact, is favored by courts), and the Teva Defendants (not Plaintiffs) are entitled to dictate the method in which they review and produce documents. Plaintiffs have not pointed to any authority (nor is Teva aware of any) that requires the Teva Defendants to blindly review every document that hits on a search term without the aid of technology in prioritizing which of those documents to review first. This archaic view on the discovery process is not only contrary to governing case law but is simply an effort by Plaintiffs to thwart the discovery process here.

### d. **The Court Should Enforce the ESI Protocol, and Affirm the Teva Defendants' Use of CMML**

While the ESI Protocol does not require Plaintiffs' prior consent for Teva to utilize a CMML platform for the production of documents, the Teva Defendants nonetheless seek the Court's enforcement of the ESI Protocol, as Plaintiffs mistakenly believe that nothing short of their express permission for the use of CMML is required. Contrary to Plaintiffs' misguided beliefs, and as set forth above, CMML is not a mechanism for a party to avoid its discovery obligations but is instead widely recognized as best practices for large electronic discovery matters (and actually benefits Plaintiffs by prioritizing responsive documents for faster production). *See* Consilio Dec., at ¶ 8. And, without CMML, Teva will needlessly spend significant time and resources reviewing non-responsive materials up front, which will delay the discovery process and Plaintiffs' receipt of the responsive materials to which they are entitled.

Forcing Teva to needlessly review all documents without any regard for prioritizing the order of those documents within custodian sets will necessarily result in Teva spending countless hours *reviewing documents that have nothing to do with the claims or defenses in this case* before even reaching documents that are discoverable and responsive for review. *See, e.g.*, Greene Dec., at **Exhibits I, J**, **K, and L** for examples of documents that hit on the search terms but have nothing to do with the issues in the instant litigation, including documents relating to a completely unrelated recall for one of Teva's other products (fluocinolone acetonide topical solution) having nothing to do with nitrosamine contamination or valsartan (the product at issue). As these documents make clear, the current search terms are returning hits for many thousands of documents that are indisputably non-responsive, and the use of CMML is allowing Teva to forgo review of these documents for the time being so that it can focus on producing responsive documents to Plaintiffs and meet their discovery obligations.

To wit, an initial estimate from Consilio suggests that the antiquated process demanded by Plaintiffs here would ultimately cost the Teva Defendants **north of $6 million dollars** and take 30-months with a team of 35 reviewers working 40 hours per week, or 11 months with a team of

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com

The Honorable Joel Schneider
July 14, 2020
9

100 reviewers working 40 hours per week.[7] *See* Consilio Dec., ¶¶ 4-7. All of which would create an unnecessary delay in the discovery process, and would result in a waste of Teva's resources as it relates to wholly non-responsive documents. Not to mention this e-discovery process has been ordered to begin before the Teva Defendants (or any defendants) have been authorized to file Rule 12 motions, which we expect will narrow the claims and thus the scope of discovery significantly. Contrary to Plaintiffs' unjustified chest-pounding here, Teva is entitled to prioritize the documents and review them in the order in which Teva sees fit consistent with the applicable rules and caselaw. Plaintiffs approach here divorces itself from today's e-discovery best practices and is the antithesis of promoting proportional discovery.

To be clear, and contrary to Plaintiffs' protestations otherwise, the parties' use of search terms does not make otherwise non-responsive documents responsive. The use of keywords simply identifies a broad universe of documents that *may* be responsive, i.e., pertinent to the litigation, subject to further review. The Court's enforcement of the ESI Protocol here will allow Teva the right to dictate how those documents are reviewed and produced consistent with the applicable rules and law, which is standard discovery practice. And, more importantly, the Court's enforcement of the ESI Protocol will prevent Plaintiffs from creating manufactured issues (not based in law or fact) surrounding Teva's ESI production ***before they have even received or reviewed a single document in Teva's forthcoming production of thousands of documents.*** The Court's Order in this regard will not prevent Plaintiffs from raising any issues they may believe exist with Teva's production, meeting and conferring in good faith, and filing a motion to compel if necessary. Any complaints about Teva's ESI production in the interim, however, are wholly illusory and theoretical. For that reason, good cause exists for this Court to enter an order: 1) enforcing the ESI Protocol by overruling Plaintiffs' categorical objection to Teva's use of CMML; 2) demanding that Plaintiffs cooperate in good faith with the Teva Defendants in further application of appropriate CMML utilization as the instant discovery review progresses, including but not limited to meaningfully meeting and conferring as required; and 3) awarding appropriate fees and costs to the Teva Defendants as discussed further below.

### e. The Court Should Award the Teva Defendants Costs and Fees, as Plaintiffs' Failure to Cooperate in Good Faith is a Violation of the ESI Protocol

When a party is found to have violated a court order, courts routinely award the aggrieved party the fees and expenses incurred to enforce the order. See, e.g., *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (noting that attorneys' fees are appropriate where a party violates a Court order, particularly where "'the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order.'" (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cr. 1977)).

---

[7] These numbers are based on the review pace of the attorneys who have been reviewing documents for responsiveness, as well as the pace required to perform redactions where necessary.

The Honorable Joel Schneider
July 14, 2020
10

Here, and despite the clear requirement in the ESI Protocol that the parties are to "cooperate in good faith," Plaintiffs have failed to meaningfully meet and confer (instead frustrating the process by not reviewing materials provided in detail and refusing to focus meet and confer conversations on the substance of the technology involved). Specifically, Mr. Slater admitted during the parties' telephone conference that he had not read Teva's initial correspondence (or case law cited therein) surrounding CMML—resulting in a telephone conference (which Teva paid to have a senior data analytics team member from our vendor join) that was an utter waste of time. Then, despite making an explicit request during that conference for Teva to send additional materials about CMML, which Teva and its vendors expended time and resources on, Plaintiffs clearly failed to review any of the materials sent and responded merely a half hour later continuing in their unfounded categorical objection. And, even worse, Plaintiffs are forcing Teva's hand in having to bring this dispute to the attention of the Court, resulting in further prejudicial costs and wasted resources that were necessary to draft the instant filing, the same week the Teva Defendants are finalizing thousands of documents for production.

For these reasons, and in the interests of enforcing discovery proportionality as embodied in this Court's ESI Protocol, the Teva Defendants respectfully request that the Court order Plaintiffs to reimburse Teva for the expenses and fees resulting from the instant filing and unnecessary diversions during the CMML negotiations.[8]

### IV.    CONCLUSION

For the reasons set forth more fully above, the Teva Defendants' respectfully request that this Court enter an order: 1) enforcing the ESI Protocol by overruling Plaintiffs' categorical objection to Teva's use of CMML; 2) demanding that Plaintiffs cooperate in good faith with the Teva Defendants in further application of appropriate CMML utilization as the discovery review progresses, including but not limited to meaningfully meeting and conferring as required with the Teva Defendants moving forward; and 3) awarding Teva Defendants costs and fees associated with the instant filing and unnecessary diversions during the CMML negotiations.

---

[8] If the Court allows the instant request, the Teva Defendants will promptly file a declaration relating to the costs and fees associated with the CMML negotiations and this motion.

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com

The Honorable Joel Schneider
July 14, 2020
11

Dated: July 13, 2020                    Respectfully submitted,

                                        */s/ Jeffrey Greene*
                                        Jeffrey Greene
                                        GREENBERG TRAURIG, LLP
                                        One International Place
                                        Suite 2000
                                        Boston, MA 02110
                                        Telephone:    (617) 310-6031
                                        Fax:          (617) 897-0931
                                        greenej@gtlaw.com

                                        */s/ Lori G. Cohen*
                                        Lori G. Cohen
                                        Victoria D. Lockard
                                        Steven M. Harkins
                                        Terminus 200
                                        3333 Piedmont Rd., NE
                                        Suite 2500
                                        Atlanta, Georgia 30305
                                        Tel: (678) 553-2385
                                        Fax: (678) 553-2386
                                        cohenl@gtlaw.com
                                        lockardv@gtlaw.com
                                        harkinss@gtlaw.com

                                        Brian H. Rubenstein
                                        1717 Arch Street
                                        Suite 400
                                        Philadelphia, PA 19103
                                        Tel: (215) 988-7864
                                        Fax: (215) 689-4419
                                        rubensteinb@gtlaw.com

                                        *Attorneys for Teva Pharmaceuticals USA, Inc.,*
                                        *Teva Pharmaceutical Industries Ltd., Actavis LLC,*
                                        *and Actavis Pharma, Inc.*

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com

The Honorable Joel Schneider
July 14, 2020
12

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2020, I served the foregoing letter to the Court was served on all counsel of record via filing in the CM/ECF system.

*/s/ Jeffrey Greene*

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com