# Exhibit A

# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°
David M. Estes
_____

*Certified by the Supreme Court of
 New Jersey as a Civil Trial Attorney

**Writer's Direct Dial**: (973) 228-0454
**Writer's Email:** aslater@mazieslater.com

Karen G. Kelsen°
Cheryll A. Calderon
Adam M. Epstein°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
_____

°Member of N.J. & N.Y. Bars

August 17, 2020

**Via Email**
SAGoldberg@duanemorris.com
Seth A. Goldberg, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103-4196

Re:    *In Re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL 2875 (Discovery Deficiencies and Request for Additional Custodians)

Counsel:

I write regarding apparent and potential deficiencies in Defendants' productions, which were ordered to begin on a rolling basis on July 15, 2020. This includes non-compliance with the agreed upon ESI Protocol and the failure to produce critical documents and custodial files. Plaintiffs also write to advise of additional individuals who have been identified as necessary custodians based on our review of the documents produced.

## I. Privilege Logs

To date, only three privilege logs have been produced, by one defendant, Aurobindo, despite the fact that a review of the productions demonstrates that documents have been withheld or have been redacted. Per the ESI Protocol, Section V, Paragraph A, the "the producing party will provide an updated summary log with each production of privileged material, in an electronically searchable format (e.g. Excel), containing, for each document claimed as privileged…" The same time frame applies to the redaction logs.

1

Defendants ZHP, Mylan, Hetero, Teva, and Torrent have yet to provide any privilege or redaction logs with any of their productions thus far. The Aurobindo log does not provide adequate information to assess the claims of privilege.

Please immediately produce all Privilege and Redaction Logs for each Defendant's production, fully compliant with the ESI protocol to allow Plaintiffs to fully assess the bases on which Defendants have withheld or redacted each document.

## II. Production Indexes

Pursuant to Paragraph I of the ESI Protocol, "[e]ach production shall also contain a Production Index, which shall be updated with each production, setting forth the (1) dates, (2) Bates number range, (3) source(s) (e.g., custodians, database) of the materials contained in each production volume, (4) whether the production was a replacement production, and (5) the date of withdrawal of protected designation and replacement with no protected designation for applicable Bates ranges, if applicable. To date, each defendant has produced a deficient Production Index with each of its productions. Specifically, in the "Source" column where specific information is to be provided regarding from which custodian, database etc. the documents have been produced, the indexes often simply list "Custodial Production" or "Non-Custodial Production." This non-specific information is not compliant with the ESI protocol and plaintiffs request that new, compliant Production Indexes be produced immediately.

## III. Prioritization of Documents

Plaintiffs identified a list of discrete and narrowly tailored non-custodial documents they requested Defendants prioritize in their rolling productions, including testing results (i.e. chromatograms, mass spectrometry, etc.), and documents related to the initial nitrosamine investigation. The Court ordered that Defendants comply with these prioritization requests. Further, all Defendants have repeatedly indicated that they are compliant. However, based on an initial review of the documents produced, Defendants' productions appear to be deficient in the following manners.

### *Testing*

Based on our initial review of the rolling productions, Plaintiffs have only received a limited production of testing documents from ZHP and have received *no* non-custodial testing documents from the other Defendants. Plaintiffs request a date certain by which the documentation of all testing results will be produced. Because the testing documents are so central to the litigation, Plaintiffs are amenable to a focused meet and confer with each

2

Defendant to locate these documents in the productions and to discuss the format of their production.

*Novartis/ZHP Issue*

With respect to Defendant ZHP, Plaintiffs requested that documents pertaining to and/or relating to Novartis' investigation into, and disclosure of, the contamination of ZHP's Valsartan API be prioritized for production. As of today, Plaintiffs have received only a small selection of deviation reports related to the investigation, and these deviation reports were produced as paper hard-copy documents devoid of pertinent metadata. This is especially troubling, as almost all communications between Novartis and Defendant ZHP occurred in electronic form. For example, Novartis appeared to alert ZHP to its finding that there were aberrant peaks in the API product by an email. *See* ZHP00021305. Every such document – especially and including emails and their attachments, are required to be produced pursuant to the ESI protocol. Plaintiffs ask for confirmation about which additional documents and ESI related to Novartis' investigation exist, and when those productions will be complete.

## IV. Additional Custodians

As part of Plaintiffs' ongoing review of documents, Plaintiffs have identified the following individuals who Plaintiffs request be added to the list of agreed-upon ESI custodians. Not only are these custodians key employees likely to have responsive and highly relevant documents, but their employment spans the entire relevant time period from 2011 until present. Were this not enough, Plaintiffs repeatedly requested that all necessary custodians be identified by Defendants, including custodians related to API procurement and sales, prior to the entry of the Court's Order on this issue. However, Defendants never once mentioned these potential employees. Because Plaintiffs were required to negotiate in the absence of internal documents, the Court left open the possibility that custodians could and would be added for good cause. As set forth below, Plaintiffs are confident that good cause can be shown as to these individuals.[1]

*ZHP*

- **Xavier Tang:** Mr. Tang appeared to be a primary point person tasked with communicating with API customers such as Novartis. *See* ZHP00021305. Tang also was listed as the "Sales and Marketing" manager for ZHP's API products. *See* ZHP00063697.

---

[1] Plaintiffs note that there were many more additional custodians that could have been added in preparing this list, but were not. Plaintiffs specifically narrowed their request in an attempt only request on a limited set of obviously key people.

3

- **Guillem Boixados:** Guillem Boixados appeared to have communications both with Novartis and Teva.  More critically important, Boixados also appeared to travel and meet with Teva employees *multiple times* during the relevant time period, including in 2012 (when Boixados traveled to Croatia), in 2015, and *again* in 2016 when ZHP and Teva met in Barcelona.  *See* TEVA-MDL2875-00069858, TEVA-MDL2875-00051929, and TEVA-MDL2875-00052679.

- **Karen Xu:** Like Tang and Boixados, Karen Xu also appeared to be a key point person tasked with communicating with API customers.  In addition to her communications with Novartis, Karen Xu also communicated with Defendant Teva, beginning as early as 2011.  *See* ZHP00021305, TEVA-MDL2875-00051289.  Karen Xu's communications with Teva began as early as 2011, and continued up until January 2020.  *See* TEVA-MDL2875-00051178.  Like Boixados, Xu also was present at many of the in-person meetings, including the 2016 meeting between Teva and ZHP in Barcelona.  *See* TEVA-MDL2875-00052679.

*Teva*

- **Walton Wang**: Walton Wang appeared to be intimately involved in quality audit issues related to Defendant ZHP as early as 2011, describing the situation at Huahai's facility as a ███████████  *See* TEVA-MDL2875-00051286.

- **Pan Lin**: Pan Lin was an auditor employed by Teva, and personally inspected ZHP's facilities in 2011.  In this inspection, Mr. Lin observed that ZHP's ████████████████████████████████████  *See* TEVA-MDL2875-00051288.  Mr. Lin appeared to be the designated auditor for ZHP in the years after 2011, including in 2018 after the contamination was known, when Mr. Lin was tasked with ████████████████████████████████████████  *See* TEVA-MDL2875-00021602.

- **Ashit Vyas**: Ashit Vyas appeared to be a key point person tasked with communicating with Defendant ZHP starting as early as 2011.  Indeed, Mr. Vyas is the person who ████████████████████████████████████████████  *See* TEVA-MDL2875-00051289.  Ashit Vyas continued to be included on discussions regarding the selection of Valsartan API with both Defendant ZHP as well as Defendant Mylan since the beginning of the relevant period.  *See* TEVA-MDL2875-00051696.  Indeed, Ashit Vyas was intimately involved with ████████████████████████ ████████████████████████████████████  *See* TEVA-MDL2875-00051683.

4

Please advise on these issues, and we will of course be happy to discuss. If we cannot resolve these issues, Plaintiffs will seek resolution at the upcoming case management conference.

Very Truly Yours,

ADAM M. SLATER

cc: Counsel for Defendants Teva, Mylan, Aurobindo, Torrent and Hetero Labs
Valsartan PEC

5