# EXHIBIT B

**From:** Davis, D'Lesli M.
**Sent:** Tuesday, January 14, 2020 4:31 PM
**To:** Adam Slater <ASlater@mazieslater.com>
**Cc:** rhonik@golombhonik.com; c.whiteley@kanner-law.com; Norris, Ellie <ellie.norris@nortonrosefulbright.com>; Kaplan, Andrew <AKaplan@crowell.com>; Dennis, Mimi <MDennis@crowell.com>; Jeff Geoppinger <jgeoppinger@ulmer.com>
**Subject:** Re: Valsartan - Wholesalers' Draft of Plaintiffs First Requests for Production to Wholesaler Defendants

Hi Adam et al -

As follow-up to Jeff's email, I wanted to raise a few other issues below.

**Wholesalers are not named in and have not been served with the Consolidated Amended Economic Loss Class Action Complaint:** I know I mentioned this fact in our Christmas Eve meet and confer, but have not seen any machinations on that front. As a result, I do note that, from our clients' perspective, they are not parties to the Economic Loss Class Action.

**Plaintiffs' document obligations:** Additionally for discussion, we spent time analyzing Plaintiffs' document production obligations in the Economic Loss Class Action, given the fact that Plaintiffs seem to, unusually, want to push the commercial, insurance-heavy, class cert case ahead of the individual cancer personal injury cases. We were able to create a specific list of documents (attached hereto) that we believe Eco Loss Class Reps (both Consumer and TPPs) are obligated to produce with their PFS responses, and hope that getting this in front of you can help you get the PFS documents, which are sure to be voluminous, together. We are particularly concerned about MSP's ability to procure this type of detail from their many arms-length Assignors. Please confirm that all Eco Loss Plaintiffs are on track to timely collect these key documents from their many agents as required by Defendants to discover the basis of Plaintiffs' Economic Loss claims.

**Plaintiffs' Eco Loss damages:** Our analysis also led us to the conclusion that, despite Plaintiffs' claim of the need for broad damage information from downstream Defendants, in fact, nearly all of the agreements and financial information that will support Plaintiffs' Economic Loss damage claim (to recoup all amounts (gross + fees - discounts = net) spent by TPPs and Consumers on VCDs since 2012) are maintained by Plaintiffs and their agents, not Defendants. Please confirm these documents are also on their way.

**Eco Loss schedule:** Finally, the same document discussing Plaintiffs' document obligations contemplates what a schedule in this Economic Loss case would need to address. Given the urgency of certification discovery, issues and time ramifications, it may make sense to begin thinking in these terms as well.

Many thanks,

D'Lesli

(McKesson)

**D'Lesli M. Davis** | Partner
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600, Dallas, Texas  75201-7932, United States
Tel +1 214 855 8221 | Fax +1 214 855 8200
dlesli.davis@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT**

*Law around the world*
nortonrosefulbright.com


 **CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

**VALSARTAN MDL PLAINTIFFS/WHOLESALER MEET AND CONFER 1.14.2020:
IMPLICATIONS OF PLAINTIFFS' ECONOMIC LOSS CASE & DISCOVERY REQUESTS ON
PLAINTIFFS' OWN PRODUCTION AND CERTIFICATION BURDENS
AND ON CASE SCHEDULING CONSIDERATIONS**

A. **Plaintiffs' document obligations**

1. Assuming the Economic Loss case is the lead case, Plaintiffs (both Consumer and TPP) are obligated as an initial matter to produce the complex contracts and related documents set forth below to allow a determination of whether the Consumer/TPP classes:

   a) each had similar coverage, were treated similarly under the Plans and/or did Plan business the same way;
   
   b) were covered by and/or provided similar insurance products under the various Plans;
   
   c) were injured and, if so, in the same way; and
   
   d) have named class reps whose claims are typical.

2. For Class Rep MSP, this will require such documents from its many Assignors and their agents handling the claims of the (according to MSP counsel) 73,311 VCD-taking insureds enrolled in an unknown number of Plans, offering an unknown number of Products.

3. For both the Consumer and TPP classes, these documents include, but are not limited to:

   a) **Policies and Benefit Plans**: All insurance policies and benefit plan agreements (collectively "Plans") and specifications (and amendments) for the Plans and for each insurance policy or benefit plan product ("Insurance Product") which would provide VCD coverage;
   
   b) **The "Plan Document"**: The formal plan document (and amendments) for all Plans providing VCD coverage;
   
   c) **PBM agreements**: All agreements (and amendments) between the Class Reps or Assignor TPPs, Policies/Plans and each of their PBMs, including pricing and incentive contracts;
   
   d) **PDLs**: All Formularies/Preferred Drug Lists (and amendments) for all Plans, including specific formulary tier placement of the VCDs for each Insurance Product within such Plan using the subject PDL/Formulary;
   
   e) **P&T Committee Minutes**: All minutes of the Plan and/or TPP's Pharmacy and Therapuetics Committee, reflecting review and testing (or absence thereof) of the safety of VCDs on the relevant PDLs for each Plan and Insurance Product;
   
   f) **Quality Assurance programs**: All PBM and/or Plan Drug Utilization Reviews, medication therapy and quality assurance programs, meetings and documents;
   
   g) **Claims Processing Agreements**: All agreements with third parties for claims processing, eligibility or other administrator duties any PBM is required to perform;
   
   h) **Pharmacy Help Desk**: All Plan and/or PBM Pharmacy Help Desk notes regarding VCD contamination questions and complaints;
   
   i) **Administration agreements**: All administration agreements (and amendments) between Class Reps and any Employer, Plan and/or third party providing administration services for any Plan;
   
   j) **Network, purchase and/or pricing agreements**: All agreements (and amendments) between any TPP, PBM, Plan and/or any Wholesaler and/or Pharmacy for VCDs;
   
   k) **Prescription drug compensation**: All reimbursements, contract payments and/or other payments by Plans and their PBMs covering VCDs, including calculations of point of sale prices, and actual payments made;
   
   l) **Fees, discounts, rebates, etc.**: All agreements regarding, and calculations and amounts of discounts and fees, including any DIR fees, access, base, formulary,

1

        market share and/or volume financial incentives, administrative fees, data fees and any interest thereon resulting therefrom and all reconciliations and adjustments;

m) **Cost Sharing**: All coinsurance, full pays, co-pays, deductible limits, benefit exclusions or other amounts the Plans are entitled to collect and/or did collect from Members, such amounts and the calculations of same for VCDs;

n) **Prescription Drug Contracted Rate and similar rates**: All relevant calculations of the Prescription Drug Contracted Rate and other rates relevant to amounts covered and/or paid for VCDs;

o) **Member medical records**: All VCD-receiving Member medical records with patient tests and physician notes (to reflect benefits/side effects of VCDs, and knowledge of alleged contamination by Member, physician and TPP, and continued use); and

p) **Actual Gross and Net Cost / Damages Info**: Spreadsheets detailing: a) gross purchase price of recalled VCDs, number of pills purchased, specific discounts thereto, specific fees thereto, and resulting net purchase price for each Plan and specific Insurance Product within such Plan by year; and b) gross purchase price of non-recalled VCDs, number of pills purchased, specific discounts thereto, specific fees thereto, and resulting net purchase price for each Plan and specific Insurance Product within such Plan by year

**B. Economic Loss schedule considerations:**

| PROPOSED ECONOMIC LOSS CLASS ACTION CERTIFICATION CONSIDERATION | |
|---|---|
| Filing or Action | Date Due |
| Defendants' Rule 12 and 9 Economic Loss Class Action Motions due: subject matter jurisdiction, personal jurisdiction**, failure to state a claim and failure to plead fraud with specificity | |
| Plaintiffs' Response to Rule 12 and 9 Motions | |
| Defendants' Reply in Support of Motions | |
| Plaintiffs complete production of all Class Rep Agreements and Damages Documentation | |
| Hearing on Rule 12 and 9 Motions | |
| Decision on Rule 12 and 9 Motions | |
| Defendants' Answer (if Rule 12 and 9 Motions denied) | |
| Plaintiffs' Motion for Class Certification | |
| Focused Class Certification Depositions and Expert Depositions | |
| Plaintiffs' Expert Designations and Reports for Class Certification | |
| Defendants' Expert Designations and Reports for Class Certification | |
| Plaintiffs' Memorandum in Support of Motion for Class Certification | |
| Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification | |
| Plaintiffs' Reply on Class Certification | |
| Class Certification Hearing | |
| Certification Decision | |
| Petition for discretionary interlocutory appeal under Rule 23(f) – can be brought by any party | |

2