# Exhibit A

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
_____
                                    CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS          19-md-02875-RBK-JS
LIABILITY LITIGATION
                                    TELEPHONIC STATUS
                                    CONFERENCE WITH ORAL
_____     ARGUMENT AND RULINGS ON
                                    DEFENDANTS' FACT SHEETS
```

    Mitchell H. Cohen Building & U.S. Courthouse
    4th & Cooper Streets
    Camden, New Jersey  08101
    July 29, 2020
    Commencing at 10:20 a.m.

**B E F O R E:**                  THE HONORABLE JOEL SCHNEIDER,
                                  UNITED STATES MAGISTRATE JUDGE
                                  AND
                                  THE HONORABLE ROBERT B. KUGLER,
                                  UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S:**

    MAZIE SLATER KATZ & FREEMAN, LLC
    BY:  ADAM M. SLATER, ESQUIRE
    103 EISENHOWER PARKWAY
    ROSELAND, NEW JERSEY  07068
    For the Plaintiffs

    GOLOMB & HONIK, P.C.
    BY:  RUBEN HONIK, ESQUIRE
    1835 MARKET STREET, SUITE 2900
    PHILADELPHIA, PENNSYLVANIA  19103
    For the Plaintiffs

    LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR P.A.
    BY:  DANIEL A. NIGH, ESQUIRE
    316 S. BAYLEN, SUITE 600
    PENSACOLA, FL 32502
    For the Plaintiffs

            Carol Farrell, Official Court Reporter
                   cfarrell.crr@gmail.com
                        856-318-6100

    Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription.

1  Schneider.  We think it's consistent, Your Honor, with what we
2  discussed with you on the very first day of this MDL.  And
3  we'd like to at least start talking about such a schedule.
4         And I'll just mention that in Zantac, again, ten
5  months from the formation of the MDL, plaintiffs have to
6  disclose the types of cancer, and then 15 months from there,
7  *Daubert* motions will be closed, the Court will schedule a
8  *Daubert* hearing.  We would propose some sort of schedule like
9  that as a parallel track, not to interfere with what we know
10 is your priority as you have described to us, but we think
11 that is important to do at the same time, and we would -- just
12 wanted to brief to the Court on this right now and, hopefully,
13 we can work with plaintiffs in a constructive manner to get a
14 schedule like that underway.
15        THE COURT:  Well, before I hear from Mr. Slater, I
16 know what he's going to say because he put it in his letter,
17 Zantac is an interesting case, but it's more of a single issue
18 case than valsartan is, so it's more amenable, as Benicar was,
19 to the general causation issue.
20        Having said that, I'm not unsympathetic to the
21 position you are in.  There has to be a reckoning at some
22 point as to all these cancer claims, and they can't -- I don't
23 think at the end of the day the science is going to support
24 this thinking, this theory -- well, it's not even a theory of
25 the plaintiffs, but the claims of some of these plaintiffs

1  that every conceivable cancer out there is caused by the
2  impurities in the valsartan-containing drugs. And there is
3  going to have to be a winnowing of that, and there's going to
4  be a focus by the plaintiffs on what actual cancers they claim
5  have been caused or will be caused in the future by these
6  valsartan-containing drugs, and that will trigger the need for
7  experts and then *Daubert* and all that kind of stuff.
8      And I don't think Judge Schneider and I have any real
9  objection to a parallel effort to take some discovery on those
10 kinds of issues, too. I just don't think we need it this day,
11 today, to enter any orders that are setting up general
12 causation. And I think you and Mr. Slater or whomever on
13 behalf of the plaintiffs need to talk about this more, and
14 it's obviously something we will continue to discuss at
15 meetings in the future.
16     But you're right, there has to be a reckoning, a day
17 of reckoning, as to these cancer claims, and it can't go on
18 forever.
19     Mr. Slater, did you want to add anything?
20     MR. SLATER: I don't think so, Your Honor. I think
21 you obviously understand our position, and I don't think that
22 you're going to get a giant push back from the plaintiffs that
23 at some point the specific cancers that are actually going to
24 be at issue need to be identified in our general causation
25 expert reports. I think it's just more a matter of when

1  that's going to happen.  You know, there's things like
2  discovery that we would like to have from the defendants who
3  presumably have been looking at this question as well.  We
4  want to see what their documents say and what their internal
5  people say and what literature they've been looking at, and
6  have the benefit of that when we write our expert reports and
7  understand what they know.  And then, of course, you know,
8  serve expert reports on general causation for the personal
9  injury cases.
10             You know, our main concern is really just, as you, I
11 think hit it, is timing and, you know, a parallel track, you
12 know, I guess it's the devil's in the details because there is
13 so much happening right now, and there is so much that we're
14 doing, that and as you -- I know you appreciate the expert
15 reports are -- they don't address exactly the same question in
16 the economic loss context, and that's really where our focus
17 is at this point, what we're building towards, so as long as
18 we have the ability to do this in a methodical way, you know,
19 and which we're happy to talk to the defense about, just
20 dealing with the practicalities of what has to be done, you
21 know, for the next, you know, six months or so, there is a lot
22 happening.
23             I don't see any reason why after that, you know, this
24 big burst of discovery happens, why that's not something that
25 we can start to initiate.  I think it makes sense.

1          THE COURT:  Well, it's almost August, so why don't we
2    focus on this.  Why don't we have our goal to be before the
3    end of this year -- by the end of this year to have in place
4    orders governing general causation and expert reports on those
5    issues.  Okay?  So we will continue to discuss this with the
6    idea that by the end of the year, we'll have this in place
7    with a schedule.  All right?
8          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
9          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
10         MS. COHEN:  I think what we will do is just move
11   forward, prepare what we think is a meaningful, efficient
12   schedule, send it to plaintiff, and we can start discussing
13   that so we don't get behind schedule, with an aim to having it
14   done by the end of year but hopefully sooner, because it is a
15   very important issue for the defense side.
16         And, again, not to argue this today, but we do think
17   this is very analogous to Zantac, in terms of the alleged
18   impurities causing cancer, so I think we can learn from that
19   schedule and hopefully make it, you know, even more simpler
20   from here.
21         THE COURT REPORTER:  I'm sorry.  This is the court
22   reporter.  Who was speaking then?
23         MS. COHEN:  Yes, it was Lori Cohen.  Sorry to speak
24   quickly on that.
25         THE COURT:  Are there any other issues that we need