```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
 2

 3   _____        CIVIL ACTION NUMBER:

     IN RE:  VALSARTAN PRODUCTS
 4   LIABILITY LITIGATION              1:19-md-02875-RBK-JS

 5   _____        STATUS CONFERENCE
                                        (Via telephone)
 6

 7        Wednesday, September 30, 2020
          Commencing at 10:00 a.m.

 8   B E F O R E:          THE HONORABLE JOEL SCHNEIDER,
                           UNITED STATES MAGISTRATE JUDGE
 9                (Page 38) THE HONORABLE ROBERT B. KUGLER,
                           UNITED STATES DISTRICT JUDGE
10

     A P P E A R A N C E S:
11

12        MAZIE SLATER KATZ & FREEMAN, LLC
          BY:  ADAM M. SLATER, ESQUIRE
13        103 Eisenhower Parkway
          Roseland, New Jersey 07068
14        For the Plaintiff

15        GOLOMB & HONIK PC
          BY:  RUBEN HONIK, ESQUIRE
16        1835 Market Street, Suite 2900
          Philadelphia, Pennsylvania 19103
17        For the Plaintiff

18        KANNER & WHITELEY LLC
          BY:  CONLEE S. WHITELEY, ESQUIRE
19        701 Camp Street
          New Orleans, Louisiana 70130
20        For the Plaintiff

21

22

23        Karen Friedlander, Official Court Reporter
                friedlanderreporter@gmail.com
24                  (856) 756-0160

25        Proceedings recorded by mechanical stenography;
          transcript produced by computer-aided transcription.
```

```
 1  A P P E A R A N C E S: - CONTINUED

 2

 3        LEVIN PAPANTONIO
          BY:  DANIEL A. NIGH, ESQUIRE
 4        316 S. Baylen, Suite 600
          Pensacola, Florida 32502
 5        For the Plaintiff

 6        GOLDENBERG LAW PLLC
          BY:  MARLENE J. GOLDENBERG, ESQUIRE
 7        800 Lasalle Avenue
          Suite 2150
 8        Minneapolis, Minnesota 55402
          For the Plaintiff

 9        DUANE MORRIS LLP
          BY:  SETH A. GOLDBERG, ESQUIRE
10        30 S. 17th Street
          Philadelphia, Pennsylvania 19103
11        For the Defendant ZHP and the Joint Defense Group

12        GREENBERG TRAURIG LLP
          BY:  LORI G. COHEN, ESQUIRE
13             STEVEN M. HARKINS, ESQUIRE
          3333 Piedmont Road, NE, Suite 2500
14        Atlanta, Georgia 30305
          For the Defendants, Teva Pharmaceutical Industries Ltd.,
15        Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
          Pharma, Inc.
16
          BARNES & THORNBURG LLP
17        BY:  SARAH E. JOHNSTON, ESQUIRE
          2029 Century Park East, Suite 300
18        Los Angeles, CA 90067-2904
          For the Defendant, CVS Health Co.
19
          ULMER & BERNE LLP
20        BY:  JEFFREY DANIEL GEOPPINGER, ESQUIRE
          600 Vine Street
21        Suite 2800
          Cincinnati, OH 45202
22        For the Defendant, AmerisourceBergen

23        PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
          BY:  CLEM C. TRISCHLER, ESQUIRE
24        One Oxford Centre, 38th Floor
          Pittsburgh, Pennsylvania 15219
25        For the Defendant Mylan and the Joint Defense Group
```

1                    (ALL PARTIES VIA TELEPHONE, September 30, 2020,

2     10:17 a.m.)

3                    JUDGE SCHNEIDER:  We're on the record.  This is the

4     Valsartan MDL Docket 19-2875.

5                    Can we have the names of lead counsel for the

6     plaintiff and defendant, and again, whoever is going to talk,

7     please announce your name first so the court reporter can take

8     your name down.

9                    MR. SLATER:  Good morning, Your Honor, Adam Slater on

10    behalf of the plaintiffs.

11                   MR. HONIK:  Good morning, Your Honor, Ruben Honik for

12    plaintiffs.

13                   MR. NIGH:  Good morning, Your Honor, Daniel Nigh for

14    plaintiffs.

15                   MS. WHITELEY:  Good morning, Your Honor, Conlee

16    Whiteley on behalf of the plaintiffs.

17                   JUDGE SCHNEIDER:  Okay.  And defendants?

18                   MR. GOLDBERG:  Good morning, Your Honor, this is Seth

19    Goldberg for the ZHP related parties and the defendants.

20                   MS. COHEN:  Good morning, Your Honor, this is Lori

21    Cohen for the Teva defendants and the defendants at large.

22                   MR. GEOPPINGER:  Good morning, Your Honor, Jeff

23    Geoppinger on behalf of wholesaler defendants and

24    AmerisourceBergen.

25                   MS. JOHNSTON:  Good morning, Your Honor, this is

1    Sarah Johnston for the retailer and pharmacy defendants, and

2    CVS and Rite Aid.

3              JUDGE SCHNEIDER:  Okay.  Sounds like we have the

4    names of the lead counsel.

5              Thank you for the letters which I've received late

6    yesterday and reviewed.  Judge Kugler is going to be available

7    at 11 o'clock to join us.  The order to show cause issues, of

8    course, Judge Kugler will deal with.

9              I want to touch base with the parties, see if there's

10   any objections.  The portion of the letter where defendants

11   raised the issue about the handling of the BI claim, I think

12   that's appropriate for discussion with Judge Kugler, so why

13   don't we table that for when he joins us.

14             For the benefit of everyone else on the phone, I

15   thought we had a very productive call earlier in the week with

16   just a limited group of counsel.  We didn't decide anything,

17   so don't get nervous.  Well, we did decide things, we gave

18   extensions of time, which is fine, but there were no

19   substantive decisions made except that there's a recognition

20   that logistical problems of the upcoming depositions of the

21   defendants, especially ZHP, are going to be enormous.

22             We recognize there's substantial problems and

23   roadblocks, but we have to get through them and it's

24   important, given the recognition that the logistical problems

25   are going to be enormous, that the parties meet and confer

1    about these issues starting now, which they're doing which is

2    great, and the Court, of course, is available to assist the

3    parties in getting through the morass that we have to deal

4    with.

5              We are looking to start depositions in either the

6    later part of this year or the beginning of next year.  Just

7    the class representative depositions, that should be

8    relatively straightforward, and we should get through that or

9    you should get through that pretty easy, but the depositions

10   of the defendants are not going to be easy and, like I said,

11   we'll just have to forge through it.

12             So that's a brief summary as far as the Court is

13   concerned.  I think you're going to hear from Judge Kugler.

14   As I told counsel on the phone call earlier in the week, the

15   motions to dismiss are going to be decided on a fast track, at

16   least till I'm told otherwise.  I'm not deciding the motions,

17   so, of course, I can't control that, but don't be surprised if

18   you get a decision on those motions before the end of the

19   year, which is great, because that will enable us to move

20   forward on all aspects of the case, we'll know what's in and

21   what's out, and we could firm up, to a greater extent, how to

22   proceed with the management of the case.

23             So that's the background I wanted to provide.  Like I

24   said, I have the letters.

25             Mr. Slater, let's start with the plaintiffs, as we

 1    always do.  Are there -- what issues should we address on this

 2    call?

 3              MR. SLATER:  Well, I think just as a placeholder, I

 4    think you're right, Your Honor, the deposition protocol issue

 5    is something we're now discussing.  Unless Your Honor wants us

 6    to, you know, walk through the issues, I don't know that we

 7    really need to go through that today, so as long as that's

 8    okay, I think we can jump to the next issue, which is closely

 9    related, but I think it's worthwhile to talk about, which is

10    the request by the plaintiff, which I'm hopeful that the

11    defendants will embrace in light of the issues that they've

12    raised.

13              For us to enter into a focused meet-and-confer

14    process, to have a transparent discussion while document

15    productions are occurring, so that the plaintiffs can get an

16    understanding of who the witnesses really are, who are going

17    to be the ones that need to be deposed and in what priority

18    order, and frankly, which ones will have less or more

19    logistical issues.  For example, as we know, ZHP has

20    operations in China, but they are subsidiaries who distributed

21    for them and a lot of operations are here in the U.S.

22              So, you know, we feel, for example, that they

23    probably have very important witnesses in the U.S., and one

24    example would be Mr. Du, John Du.  And just for the Court's

25    information, yesterday we wrote to ZHP's counsel to schedule a

1    call on the status of the productions and the prioritizations

2    so we can get some firm, concrete information about where we

3    stand, and in that communication, we asked that John Du's

4    custodial file be prioritized because it's our understanding

5    he's here in United States, he's obviously an important

6    person.  As we learn things like that and know that, for

7    example, that John Du is here in New Jersey, you know, we felt

8    it behooved us to say, let's prioritize the complete

9    production of his custodial file and let's find out other

10    people like that so we can prioritize important witness and

11    important corporate representatives and potentially take as

12    much of a bite out of the important discovery as we can with

13    less logistical issues and push to the back things that might

14    be more difficult or less important.

15            JUDGE SCHNEIDER:  Let me make one comment about what

16    you said, because I think this issue is closely related to the

17    deposition protocol issues.  So it's ripe for discussion.

18            How do we make sure that meaningful meet-and-confer

19    discussions occur, you know, from here on out through the end

20    of the year?

21            I mean, we have our regular call, we have a call

22    every two weeks, we have a call at the end of the month.

23    That's fine to talk about the big picture issues in the case

24    and to move the whole case forward, but the parties really

25    have to roll up their sleeves about this deposition protocol

1  and deposition issue.

2       How do we make sure that the momentum is going

3  forward and meaningful discussions take place?  Do we order

4  meet-and-confer sessions?  Do we have separate phone calls

5  with the Court because if the Court schedules then we know

6  they're going to happen?

7       I'm looking to the defendants for guidance because

8  unless -- I just feel unless we stay on top of this, it's

9  going to get away from us, and not only what I call the

10 substantive issues you're talking about, Mr. Slater, but also

11 the procedural logistical aspects.  The parties just have to

12 roll up their sleeves to get this done.  How do we make sure

13 that gets done?  Mr. Goldberg --

14      MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

15 Your Honor, I think it would be, you know, I think it would be

16 very helpful, especially from ZHP's standpoint, to have some

17 discussions with the Court because my primary concern about

18 having meet and confers individually with plaintiffs is

19 oftentimes, you know, in this case and just about every other

20 case, the parties don't really appreciate the challenges the

21 other side has to endure in terms of scheduling the work they

22 have to do, in terms of preparing witnesses for depositions,

23 the cost and burden placed on the corporate parties who have

24 to give up time and expense for depositions.  And the Court to

25 this point has seemed to appreciate that these are real

1    issues, they're real issues for all of the foreign defendants

2    in this case.  They are issues that are present in every case,

3    but magnify exponentially in this case because of COVID.

4         I would not be opposed to having a proposal from

5    plaintiffs about the corporate representative defendants that

6    they think are appropriate.  Of course, we don't have the

7    30(b)(6) notices yet so, you know, those seem to go hand in

8    hand, and then to have some discussions with Your Honor like

9    we had on Saturday, which I agree, was very productive,

10   because I think that disputing these issues and litigating

11   these issues in letter briefs and argument oftentimes a lot

12   gets lost in the translation, and being open about these

13   things because, quite frankly, one place we don't want to be

14   is agreeing to some prioritization of depositions, agreeing to

15   the possibility that deponents could possibly talk -- be

16   deposed outside of China, only to then have on the back end, a

17   whole bunch of other depositions that are requested.

18        So we think -- you know, I think Your Honor's

19   involvement to bring down what might be an otherwise

20   contentious set of issues could be very helpful.

21        JUDGE SCHNEIDER:  Let me ask the question,

22   Mr. Slater.  We'll get back to what you said, Mr. Goldberg.  I

23   think my background is helpful, obviously because I was in

24   practice for so long.  But I told you I had that case which

25   involved a Swiss defendant overseas, language difficulty, it

1    was illegal -- the whole deposition in Switzerland, they had

2    to be taken in Italy.  So I've been there and done that.

3            But, Mr. Slater, you know, we're focused so much on

4    ZHP obviously, and we're going to spend a lot of time on ZHP,

5    but would it be helpful, do you have a plaintiff

6    representative who is addressing these issues separately with

7    each of the main defendants or the defendants you want to

8    depose?

9            For example, I know you're involved, but do you have

10   one person who deals with Teva, one person who deals with

11   Mylan, one person who deals with ZHP, et cetera, et cetera?

12   Because if the same person has to deal with all the

13   defendants, we'll never get this done.

14           MR. SLATER:  Your Honor, we do have on our side teams

15   of attorneys dedicated to each defendant for various purposes.

16   So they certainly are not going to have that issue.

17           And if I could just for a moment respond to what Mr.

18   Goldberg said.  I think this is sort of a watershed kind of

19   moment in the case I think, and I think that there's a real

20   fundamental -- the lack of a better word, a cultural issue in

21   terms of -- and I don't mean it in the literal sense, but in

22   terms of how we're going to proceed, and what I mean by that

23   is this:  We ask for a meet-and-confer process to identify the

24   key deponent and those that will have more or less logistical

25   issues in order to make discovery smoother and more efficient.

1      The brief answer to your first question to

2   Mr. Goldberg, or -- helping this get done, basically what you

3   heard is, you know, to take a basketball analogy, we're going

4   to go into the four corners and maybe we'll shoot the ball at

5   some point and our goal is to push the ball up the floor.

6      And for Mr. Goldberg to say, with all due respect,

7   that this is going to become some sort of a contentious

8   process, it's not going to be contentious on our end because

9   we're asking for things that are so fundamental and so basic,

10  that it's amazing to me that in an MDL of this magnitude, we

11  even have to involve the Court.

12      But as Your Honor knows and you can hear it from the

13  response, the defense will never agree to these meet and

14  confers without a Court order just like you did, frankly, in

15  *Benicar* which worked terrifically.  What Your Honor was able

16  to do, for example, and I know you'll remember this, ESI was a

17  very complex process because we had Japan, we had the U.S., we

18  had the tremendous database from clinical studies and a lot of

19  very complex things we worked with, and what Your Honor told

20  us is, you know what, the lawyers on both sides are going to

21  get in a room -- now obviously, we're not going to do that,

22  but Zoom and Teams and all these other things work just as

23  well -- and you're going to sit there with your consultants

24  and you're going to hammer out and you'll have questions asked

25  and answered, and you're going to work through this, and if

1   there's something you can't get and they won't answer a

2   question, come to me and it worked -- it ended up being a

3   situation where we -- I don't think we really ever had to come

4   to Your Honor.

5         So it was transparent, it was in good faith and it

6   worked, and frankly, that's the normal course of litigation at

7   this level.  But what we're getting is, and I want to make it

8   very clear, the defendants need to stop acting as if this

9   lawsuit is some kind of inconvenience, and realize that they

10  sold tens of millions or hundreds of millions of dollars worth

11  of drugs into the United States market that were contaminated

12  with a carcinogen, and now, when they're called to hale into

13  the United States courts to answer civilly for that, they say,

14  well, this is really hard for us and we want to hide behind

15  the border of China and we're not even going to let our people

16  out unless we write the terms and all of these issues are tied

17  up together.

18        From the plaintiffs' perspective and from a

19  jurisprudential perspective, that's our -- that's just really

20  not acceptable and it's not a starting point to anything other

21  than what Mr. Goldberg promised, which is contentiousness,

22  because we're asking for basic things, we can't get them.

23        So what we need is the Court to order the defendants

24  to be as transparent as possible, who are the different

25  custodians, who are the witnesses, who is where, who speaks

1    English, who can be deposed in the U.S., who can be deposed

2    from Spain or other places, because we don't see this process

3    of taking depositions as difficult.  It's -- as you said, Your

4    Honor, so there's some things we have to do.  There are people

5    taking depositions in heavy litigations all over the United

6    States of witnesses around the world and around the country

7    and it's working.

8           And we have enough money in this litigation on both

9    sides and enough technology available that we'll be able to do

10   it.  It won't be as easy as sitting in a room with a witness,

11   but that's the times we're in and we have to live with that

12   because we're certainly not going to put this off forever.

13          So, you know, that's my long-winded answer to your

14   question, but I think it's really, really important to start

15   to orient this litigation to the fact that we have the right

16   to push the ball up the court, and that's what's expected of

17   us by Your Honor and Judge Kugler, and we need to be able to

18   have the Court's imprimatur so we can start to do that.

19          MR. GOLDBERG:  Your Honor, may I respond, please?

20          JUDGE SCHNEIDER:  Yes, but let me just say,

21   Mr. Goldberg, that's what we're trying to do, we're trying to

22   move the case forward.  I think, my feeling is right now,

23   we're in a really good position.  The document production

24   hopefully will be done soon.  You're going to get a decision

25   probably, no guarantee, before the end of the year on the

1    motions to dismiss.  You're going to start depositions in

2    January.  We have three months to get some protocol together

3    and the logistics lined up.  So I think things are lined up

4    really good.  So let's just focus on how we do that.

5          And again, ZHP is important, you know, they're a

6    target, but I don't want to focus a hundred percent of our

7    efforts on ZHP and ignore everybody else, because that's going

8    to be part of the case.

9          So again, I raise the question, what's the best way

10   to get the parties to roll up their sleeves and to

11   meaningfully discuss these issues and let's move the ball

12   forward.  I'm happy to devote my resources and the Court's

13   resources to help the parties.  There's no doubt in my mind,

14   zero doubt, that if we weren't dealing in this COVID world,

15   we'd be in a conference room and we can get this done.

16         It's incredibly difficult to do it over the phone and

17   via Zoom, but that's the world we live in and we just have to

18   move forward.  So let's just figure out a way to do it.

19         Mr. Goldberg, what do you -- how can you help us?

20         MR. GOLDBERG:  Yes, Your Honor, I think just to

21   respond to what Mr. Slater said because it's a little bit of

22   posturing and almost did not hear what I said.

23         For one thing, plaintiffs have not made any proposals

24   about any witness's deposition.  They have had core discovery

25   documents for more than a year, our document productions have

1  begun.  They've had 18 months to be evaluating this case and

2  doing whatever independent research, in addition to the

3  document productions they can do.

4        I think the first thing that needs to happen is that

5  plaintiffs need to make a proposal about the depositions,

6  which could then provide a framework for us to be discussing

7  them, and we can then meet and confer.  And I wasn't

8  suggesting Your Honor needs to be involved immediately.  I was

9  really trying to respond to Your Honor's very real concern

10  that the parties can sometimes get waylaid in these

11  discussions, and if Your Honor would prefer to have us meet

12  and confer for a few sessions and see if we can resolve

13  things, see if we can narrow issues, of course, by all means,

14  let's do that.

15        It needs to begin, I think, with plaintiffs'

16  presentation of a list of potential witnesses as to each of

17  the defendants.  I think Your Honor is right that the focus on

18  ZHP is too narrow, because these cases may proceed among many

19  different defendants at different times.

20        We have not -- we had a discussion on Saturday, and

21  plaintiffs put it in their presentation submission for the

22  Court yesterday about prioritizing witnesses based on some of

23  the logistical concerns.  Of course, that makes sense.

24        So my suggestion would be to have plaintiffs make a

25  proposal in the coming weeks and let's begin a meet-and-confer

1  process on that, and if the parties can't, you know, seem to

2  be at some loggerheads as to certain things, we can bring

3  those to Your Honor's attention, and if Your Honor would like

4  to be involved earlier, of course, that's welcome as well.

5         JUDGE SCHNEIDER:  Well, we know that by tomorrow,

6  plaintiffs are going to serve their 30(b)(6) notices.  We know

7  by the 16th, the defendants are going to serve their

8  objections to those notices.

9         MR. GOLDBERG:  Your Honor, those were the two

10  dates --

11         JUDGE SCHNEIDER:  Oh, you're right.

12         MR. GOLDBERG:  Those were the two dates --

13         JUDGE SCHNEIDER:  We moved that back two weeks.

14         MR. GOLDBERG:  -- moved that back two weeks.

15         JUDGE SCHNEIDER:  I'm sorry, we moved that back two

16  weeks, I apologize.

17         So that's a good place to start, but I don't want to

18  waste a month until those objections are filed.

19         I think I said this before, Mr. Slater, in order to

20  have meaningful meet-and-confer discussions, it can't be a

21  blank slate.  So I think Mr. Goldberg's suggestion to at least

22  put something out there is a good start, even if it's just

23  basic, like, we're going to depose John Du.  When are we going

24  to get his custodial file?  Are we going to limit it to seven

25  hours?  Who's going to be there, blah, blah.  Where is it

1  going to be?  Is it going to be via Zoom?  What do we do about

2  exhibits, et cetera, et cetera.

3       There's got to be key people at this stage of the

4  case for each of the defendants you want to depose, who are on

5  the -- sort of the -- I call it the lottery pick list that no

6  matter what happens, you're going to depose them, let's get

7  started.  Let's get started with that sort of discussion.

8       MR. SLATER:  That's the discussion that I'm

9  proposing, Your Honor.  The discussion -- I mean, for defense

10  counsel to suggest that they don't have a starting point is a

11  little bit surprising since we have custodial lists for each

12  defendant.  That custodial list for each defendant presupposed

13  that each defendant complied with their disclosure obligation

14  and told us who the key witnesses were.  We then did our

15  digging and added other people.

16       So we're happy to do that and tell them, but that's

17  not a problem, you know, it's not a problem to do that.  But

18  one of the things I think that we have to remember is this,

19  this is again a push.  Judge, we don't want to talk till they

20  tell us these -- who they want to depose in what order and the

21  worst thing is, tell us -- we want to sit down and go through

22  the custodians, we'll find out, where is this person based?

23  Does this person speak English?  Does this person, you know,

24  need to be in the United States at some point, putting aside

25  coronavirus issues.  All the sorts of logistical issues.

 1          That doesn't need to wait.  I mean, we're starting

 2   with the custodian lists and we can give them some names of

 3   people that look important, but remember, Judge, we have been

 4   shut down every time that I've asked for the defendant to tell

 5   us when the custodial productions will be done for particular

 6   witnesses, when the prioritization will be done and the

 7   defense's response at every stage has been, you don't get to

 8   know that, you'll get it when you get it and when it's done,

 9   you'll know that it's done.

10          So I think that we need to have, what we're asking

11   for from last year, which is a transparent process discussion.

12   This is not going to work.  Your Honor, we've been asking for

13   a transparent process, we've been asking for disclosure and

14   openness about the production.  The defense has completely

15   stonewalled us the entire time.  It's not being compelled and

16   so now here we are, we still don't know if any custodial

17   production is complete or when it will be complete, whether or

18   not the prioritization is actually occurring because every

19   time we ask, we're told, we are working on it.

20          So what we need is not we're going to go work this

21   out and talk, we'll lose another month or two in the snap of a

22   finger.  What we need is --

23          JUDGE SCHNEIDER:  Mr. Slater, let me -- if I was in

24   the defendants' shoes, here's what my reaction would be.  I

25   don't want to sit down with you and go over a list of 60

1   people one by one and for 60 people tell you if they speak

2   English, what country they're involved in.  I don't think you

3   want that either, but without prejudice to the plaintiff,

4   without prejudice to the plaintiffs, can't you identify for

5   each of the main defendants, say, five or ten people, that

6   are, you're going to -- are likely to be deposed and --

7           (Interference.)

8           JUDGE SCHNEIDER:  Mr. Slater, what I was saying, if I

9   was a defendant, and I don't think you want this, you don't

10  want to sit down with the defendants and go over a list of 60

11  people one by one.  There's got to be five or ten people for

12  each of the main defendants that -- the odds are pretty good

13  you're going to request that they be deposed, right?  Why

14  can't --

15          MR. SLATER:  I'm not saying no to that, Your Honor.

16          JUDGE SCHNEIDER:  Why can't you start with those

17  people without prejudice to anybody and, you know, use those

18  as sort of exemplars to get this process going.

19          MR. SLATER:  We absolutely can and we will, and we'll

20  be serving the 30(b)(6) notices and we'll, you know, expect

21  that we'll find out quickly who they are proposing to respond

22  to these things, and we may need the Court's intervention.

23          I'm not saying no to that.  All I'm saying is, we're

24  still at a major knowledge deficit because the documents are

25  coming to us on this rolling basis and we don't even know what

1    we have in terms of the overall production.  I'm not saying no

2    to what you're saying, Your Honor, and we don't need to sit in

3    a room and have them read off 60 witnesses.  They should put

4    that in writing to us.

5          I mean, that's easy for them to do, as you just say

6    look at all the identified custodians, here's where they are,

7    here's their language, you know, they can speak in English or

8    not or this is what language or dialect they'll have to be

9    deposed in.  I mean, that would be important to have because

10    Mr. Goldberg has made the point -- and again, we're not

11    focusing only on ZHP, it just happens to be at the top of the

12    list of what we discussed.

13          He said there's many dialects.  Well, let's start

14    getting that information in writing so we can start reaching

15    out to translation companies and get the translators appointed

16    that speak those dialects in advance as well.

17          So there should be multi prongs to this

18    meet-and-confer process.  Exactly what Your Honor said, with

19    the understanding that it would be nice if the defendants

20    would tell us which custodial files are complete, when they'll

21    be complete and start to actually share information so we can

22    plan.

23          Because again, Your Honor, we may identify six or

24    seven ZHP witnesses or six or seven Teva witnesses, and then

25    it will turn out that someone else that wasn't among those is

1   actually the perfect witness, they speak English, we don't

2   need to use a translator, it's in a time zone that's not as

3   far away.  All these things you're hearing about, it would be

4   very helpful if they would be required to just start giving us

5   that information now, because someone who is in our initial

6   list may be so difficult to depose that we'll say, you know,

7   we need to find some other people that are a little easier and

8   who knows.  I mean, these are things we need to know.

9        Obviously, we're going to want to investigate and

10  make sure that it all makes sense in terms of whether someone

11  really is difficult to get, but I think it has to be all these

12  things at once.

13       And you're right, Your Honor, this is the time to do

14  it.

15       MR. HONIK:  Your Honor, this is Ruben Honik, if I

16  may.  In the course of listening to this conversation, several

17  of us on the plaintiffs' side circulated by way of reminder,

18  excuse me, a letter that was sent to Mr. Goldberg on May 7th,

19  and in it, even at that early juncture, we were able to

20  prioritize and identify a limited number, but nonetheless, a

21  specific number of ZHP, Mylan, Teva, Aurobindo and Torrent

22  custodians that were priorities to us.

23       And so, in many respects, we've been really working

24  on the very issue you're talking about for some months, and I

25  don't remember offhand and somebody can certainly jump in,

 1    whether we had a specific response to our May 7th letter to

 2    Mr. Goldberg.

 3         But to your point, with respect to ZHP, we identified

 4    Jenson Wy, Min Li, Jecai Je, Jie Wang.  From Mylan, there was

 5    Mahanti and Rawjee and so on.  So we've sort of initiated --

 6    not sort of, we have initiated precisely the suggestion that

 7    the Court is proposing, and we'd be delighted to continue to

 8    engage, but this is a point of order, in early May, the very,

 9    very thing that you're talking about and recommending to the

10    parties, we initiated.

11         JUDGE SCHNEIDER:  So, Mr. Honik, let me ask you this,

12    just again without prejudice to anybody, can we use that

13    priority custodian list as at least an initial proposal of

14    people plaintiffs want to depose?

15         MR. HONIK:  I believe that we can, subject only to

16    our team internally call containing to see whether from May

17    until now, in view of the rolling production that we've

18    received.

19         JUDGE SCHNEIDER:  Okay.

20         MR. HONIK:  If we would verify that, but I think the

21    answer is yes.

22         JUDGE SCHNEIDER:  Okay.  Great.

23         So let's say -- let's say in one week, whatever the

24    week from today is, the plaintiffs will use that priority

25    custodian list with any update as an initial,

1    without-prejudice list of people plaintiffs are going to

2    request to be deposed, and then if the parties have to meet

3    and confer about the issues Mr. Slater talked about, where are

4    they located, do they speak English, can you do it in person,

5    where they're going to be deposed.

6          Is that a good way to get started on this process?

7          MR. SLATER:  It sounds great.

8          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

9    don't oppose, you know, having a discussion about those

10   custodians.  Of course, those are the custodians that all of

11   the defendants have been using their good faith efforts to

12   prioritize for purposes of the document prosecution.

13         I do want to -- just as Your Honor is saying, without

14   prejudice to plaintiffs.  Defendants by no means, no way agree

15   that those are proper deponents, that the number is acceptable

16   and reserve all of our rights as to each one of those in terms

17   of whether they should be deposed.

18         But to get the process started, you know, if that's

19   the list that they want to use, we can do that.  I want to

20   remind Your Honor about our discussion Saturday and even about

21   the comments today.  You know, as in *Benicar,* the list of

22   custodians gets narrowed to the list of key deponents, not the

23   other way around, and especially in this case, where you have

24   all of the logistical concerns.  Mr. Slater seemed to be very

25   clear about it on Saturday that what really needs to happen is

```
 1   a number of deponents that can cover the issues should be --
 2   should be identified.  Another thing --
 3             JUDGE SCHNEIDER:  Well, we've got to start somewhere.
 4             MR. GOLDBERG:  Absolutely.
 5             JUDGE SCHNEIDER:  We have to start somewhere.
 6             MR. GOLDBERG:  Right, and I just wanted to --
 7             JUDGE SCHNEIDER:  Let's do it this way.  We'll start
 8   this way.  Mr. Honik, question for you:  Are we going to use
 9   -- I mean, is a good place to start with the API and finished
10   dose manufacturers, are those the initial targets that we're
11   talking about?
12             MR. HONIK:  I think if we're operating under the
13   default position of the Court, which is that we're proceeding
14   with the economic class as the leading edge, the answer is
15   yes.
16             JUDGE SCHNEIDER:  Okay.  For the time being, we are,
17   subject to any change, and we'll do that.
18             So we'll get this preliminary, without-prejudice list
19   of plaintiff and defendant, the defendants by October 6th.
20   I'm going to order each of the parties, they have to meet and
21   confer by two weeks after that, so that will bring us, you
22   know, to a week or so before the October conference, but
23   you'll also -- well, the 30(b)(6) issue is going to have to be
24   pushed back a few.
25             You'll also have plaintiffs' list of third-party
```

1    subpoenas to be served pretty soon.  They're going to be

2    served by October 15, and then if I can help move the process

3    along, let me know, we'll get on an informal call like we did

4    the other day.

5         You have to get the generic deposition protocol

6    together, and I don't know, I have suggested there be an

7    addendum for each of the deponents because of the special

8    circumstances of each of them.  That should be discussed with

9    each of the defendants, and by the end of -- by the end of

10   October call, we should be pretty far down the road.

11        Anybody else have any gems of wisdom about how we can

12   move this along?  I mean, it's within your control.  This is

13   your case.  The Court can only do so much.  Mr. Slater is

14   right, given the expertise and experience of the counsel in

15   this case, I mean, you should be able to work this out.

16        You know, you heard me say this again, the logistical

17   problems in this case surpass any other case that probably is

18   out there, but we have to deal with it.

19        Any thoughts, Counsel, Mr. Goldberg?

20        MR. GOLDBERG:  Your Honor, just a few maybe points of

21   guidance because I think, you know, this discussion started

22   with Section 2 of their letter, which is about meeting and

23   conferring regarding corporate depositions, and, you know, as

24   we discussed on Saturday, of course, defendants expect that

25   any witness would only be deposed once.

 1            And our view is that if a defendant -- if a deponent

 2    is going to be a 30(b)(6) witness and a witness in his

 3    individual capacity, that those be done in a way that's, you

 4    know, efficient, either in the same deposition, same day, or

 5    consecutive days.

 6            I just am interested to know -- I mean, we are going

 7    to discuss this custodial list in terms of the corporate, the

 8    30(b)(6) notice, or in terms of individual depositions?

 9            JUDGE SCHNEIDER:  I'm sorry, Mr. Goldberg, can you --

10    what is the question?

11            MR. GOLDBERG:  We understand that -- if based on

12    plaintiffs' letter, that this is an issue that we are going to

13    be talking about these witnesses in the context of corporate

14    depositions.

15            JUDGE SCHNEIDER:  You mean 30(b)(6)?

16            MR. GOLDBERG:  Yes.

17            MR. SLATER:  No, no, that wasn't how the letter was

18    written.  I don't want you to --

19            JUDGE SCHNEIDER:  No.

20            MR. SLATER:  It's both, it's both.  I'm sorry, Judge.

21            JUDGE SCHNEIDER:  It's not just a 30(b)(6) issue,

22    because defendants won't even -- well, substantively, but it's

23    all depositions, Mr. Goldberg.  The individual depositions and

24    the 30(b)(6) depositions.  Why would it be any other way?

25            MR. GOLDBERG:  Okay, just because of how it's written

1  in plaintiffs' letter.  The header is meet and confer

2  regarding corporate depositions.  I just wanted to be clear

3  because one thing, if that is the case, we want to make clear

4  that a witness will only be deposed once, and if the witness

5  is going to be deposed in both capacities, that's fine, but

6  that those depositions would be done either on the same day or

7  consecutive days.

8         JUDGE SCHNEIDER:  You could talk about that, but I

9  took Mr. Slater's reference to corporate depositions to mean

10  individuals as well as the 30(b)(6).  I didn't think -- I

11  don't -- I didn't take it to mean that Mr. Slater only wanted

12  to talk about 30(b)(6), right, Mr. Slater?

13         MR. SLATER:  That's correct, Your Honor.  I was

14  talking about people that work for or testify on behalf of the

15  corporate defendants.

16         JUDGE SCHNEIDER:  Okay.

17         MR. GOLDBERG:  That's fine, Your Honor.

18         JUDGE SCHNEIDER:  So the parties are going to be

19  working -- meaningfully meet and confer two weeks, within the

20  two weeks after they get plaintiffs' letter in a week.

21         Whoever's phone is ringing, can you please mute your

22  phone as a courtesy to the other people on the phone, please?

23  Thank you.

24         Plaintiffs' letter in a week without prejudice to

25  both sides.  Meaningful meet and confers and I would suggest

1    you designate, plaintiff, one person to talk to each of the

2    defendants because if it's the same person on all the

3    defendants, it will never get done.  We'll have an omnibus

4    discussion at the end of October.

5           I'm more than happy to get involved if you think it

6    would be helpful.  You know how to reach me, okay?

7           MR. SLATER:  Yes.

8           JUDGE SCHNEIDER:  Let's go back to the agenda.

9    Mr. Slater.

10          MR. SLATER:  Your Honor, the next issue was the

11   request by the defendants to serve document requests that

12   either duplicate or would amend the PFSs about eight months

13   after the PSS responses were complete with all authorizations

14   being served, but it was served yesterday.  Your Honor won't

15   be surprised that our initial reaction is, why is this

16   happening now at this phase, when the PFS was supposed to

17   cover all these issues.  But, you know, it's not to be argued

18   today, I assume, and we'll look at it more and reach out to

19   the defense.

20          JUDGE SCHNEIDER:  Okay.  Is this the issue about the

21   third-party payor document request?

22          MR. SLATER:  I think it's both third-party payer and

23   individuals where they're asking for all sorts of information

24   that we would have assumed -- it appears what happened is all

25   the authorizations were served and it appears -- and that we

1   could be wrong, that the defendants never sent them to

2   anybody, because to my knowledge, no plaintiffs have been

3   served with documents obtained with those authorizations which

4   would obviously be required.

5          So it appears that just nothing happened for eight

6   months with trying to use those authorizations, but it's

7   individuals and TPPs they're asking for information from,

8   which largely duplicates the PFS or they have all the

9   information in the PFS and have the ability for most of this

10  year to have obtained that information already.

11         JUDGE SCHNEIDER:  Okay.  I know --

12         MR. GOLDBERG:  Your Honor --

13         JUDGE SCHNEIDER:  Hold on one second, Mr. Goldberg.

14  I know the TPP issue and the parties have to meet and confer

15  on that one.  So I'm not sure there's anything we can do on

16  this call, but is there a new request for documents to the,

17  say, the class rep plaintiffs who are going to be deposed?

18         MR. GOLDBERG:  Yes, Your Honor, there is.  This is

19  Seth Goldberg again for the record.

20         There are a number of requests that we have served

21  that are not covered by the plaintiffs' fact sheet and we

22  informed plaintiffs back in January of this year that we

23  intended to serve these kinds of requests and Your Honor, back

24  in July of last year, acknowledged that there could be

25  additional requests outside of the plaintiffs' fact sheet and

1    the requests in the plaintiff fact sheet are exceptionally

2    narrow in that they are focused really on a plaintiffs' -- a

3    class representative's use of Valsartan or the other sartans

4    and don't get into all of the information about their plans,

5    their various insurance plans throughout the relevant time

6    period, which for any number of the consumer class

7    representatives could have changed throughout different --

8    throughout the relevant period to any number of plans, and the

9    information that we're looking for, which we have set out in

10   our submission to Your Honor, also the request themselves are

11   attached as Exhibit C to our submission, but they get at the

12   differences in co-pays that a consumer class representative

13   might have paid for both Valsartan and any other sartan and

14   any other replacement drug that they're claiming should have

15   been or would have been prescribed and taken, had plaintiffs

16   known about the alleged impurities, the deductibles that were

17   paid for the Valsartan or other sartans or replacement drugs,

18   the different plans and formularies and pricing tiers and all

19   of this information, which I've set out in a bit of detail for

20   Your Honor to review, is necessary for each class

21   representative to demonstrate that they were injured as a

22   result of the alleged impurity, and it is not as simple as

23   plaintiffs claim as a refund of a co-pay.

24           What needs --

25           JUDGE SCHNEIDER:  Are we just talking about the

1    economic plaintiffs?

2        MR. GOLDBERG:  Yes, yes.  These are the consumer

3    class representatives, correct, Your Honor.

4        JUDGE SCHNEIDER:  Okay.  All right.  You're going to

5    meet and confer, that's the issue I said you have to talk to

6    those parties before we address the merits of any objection.

7        I'll just tell you one reaction I had when I saw

8    that.  Can't you get all the information that you request by

9    serving a subpoena on the plaintiffs' insurer?

10       MR. GOLDBERG:  You know, I don't know about all.  Of

11   course, I expect most, but the, you know, one of the issues we

12   have, you know, served similar requests on the TPPs.  You

13   know, we expect that MSP, you know, may not have all of the

14   information from all of the 700-plus assignors, that it needs

15   to have the information from, and for us to not be able to get

16   that information from the most direct source, the consumers,

17   and they should have it, because the carriers do give them the

18   information too.

19       The consumers are a party in this case, and for us to

20   be required to go to a third party when a party has the

21   information is sort of, you know, turning the rules a little

22   bit upside down and putting the burden more on the defendants

23   to obtain discovery than the consumers to prove their case, to

24   establish the fact of damages that demonstrate that they are

25   proper class representatives.

 1          JUDGE SCHNEIDER:  Okay.  I don't want to argue the

 2   merits of the economic plaintiffs now, because you're going to

 3   meet and confer with those counsel, and we can tee that issue

 4   up for the conference call in two weeks.

 5          MR. PAREKH:  Your Honor, if I may, I apologize.

 6          JUDGE SCHNEIDER:  I was more concerned about if there

 7   are any document requests to the other plaintiffs, not the

 8   economic plaintiffs.

 9          MR. GOLDBERG:  Right, right.

10          JUDGE SCHNEIDER:  Okay.

11          MR. GOLDBERG:  These are focused on the consumer

12   class and TPP reps.

13          JUDGE SCHNEIDER:  Okay.

14          MR. HONIK:  Your Honor, with respect to -- this is

15   Ruben Honik, Your Honor.  I just wanted to point out before we

16   move forward, that when we produced the PSSs, we also provided

17   authorizations for each of those plaintiffs to obtain their

18   pharmacy records, their health insurance records and even

19   their health provider records.

20          So the question that the Court asked about, can't you

21   subpoena, you know, such and such third party, the defendants

22   don't even have to do that.  They already possess the right

23   based on the authorizations that we've provided for each and

24   every one of the class plaintiffs to obtain all of the records

25   that they could conceivably want.

1         So I just wanted that to be clear, the baseline for

2    everyone's understanding before we meet and confer.

3         JUDGE SCHNEIDER:  Yeah, that would make it even

4    easier.  So you'll talk about this and we'll tee this issue up

5    for the next call in two weeks.

6         I thought Mr. Slater said there were separate

7    document requests of the other plaintiffs, and if not, that's

8    fine, you don't have to deal with it.

9         Mr. Slater, what other issues?

10        MR. SLATER:  The other issues are Judge Kugler

11   issues, unless I'm missing something.

12        I'm sorry to not give you another one to talk about.

13        (Laughter.)

14        JUDGE SCHNEIDER:  On the order to show causes that

15   they're requesting, are there objections to the

16   appropriateness of any of the lists?

17        MR. SLATER:  I'll defer to Marlene Goldenberg on

18   that, who's handling that issue for us.

19        MS. GOLDENBERG:  Good morning, Your Honor.  I don't

20   believe so.  We had a long meet and confer with both sides at

21   the end of last week and worked through a number of these

22   issues and I think on the cases that are remaining, the

23   attorneys have all been notified, and unless anyone is on the

24   call and has something else to say, I don't believe there are

25   any objections.

 1          JUDGE SCHNEIDER:  Well, Ms. Goldenberg, you are a

 2   source of fresh air.  It's so nice to hear that.

 3          MS. GOLDENBERG:  Well, we try.

 4          JUDGE SCHNEIDER:  Mr. Goldberg, any issues that you

 5   have that we ought to address now, other than Judge Kugler

 6   issues?  And so far issues with Judge Kugler that I would

 7   consider are your requests to accelerate the BI issues and the

 8   order to show cause.  Anything else?

 9          MR. GOLDBERG:  I don't believe so, Your Honor.

10          JUDGE SCHNEIDER:  Okay.  So just sort of to sum up

11   what we've discussed, it's critical that the parties roll up

12   their sleeves on the deposition protocol and the logistics of

13   taking the depositions.  Barring unforeseen circumstances, we

14   want depositions to start probably in January.  The class

15   reps, that's easy.  There's no reason they can't start and

16   move forward.

17          We were supposed to get a proposal for the start and

18   end of those deps, I don't know if you have it, but if you

19   don't have one, we'll set it.  It will be reasonable.

20   Hopefully, we'll start your defendants' deps as well in

21   January, but in order to do so, it's really going to take a

22   lot of work on the parties to talk about these issues.

23          We're going to get a letter from plaintiffs in a week

24   to supplement their custodian list without prejudice, an

25   initial list of proposed deponents.  Parties have two weeks to

 1   meet and confer, roll up their sleeves, try and work these

 2   issues about who, what, where, why, when, and then if we have

 3   to have a separate call before the end of October, we'll do

 4   it.  But certainly it will be an issue for the call in

 5   October.

 6        I'm sorry, there was someone who wanted to say

 7   something and I interrupted.

 8        MR. SLATER:  No, sorry, Your Honor, it was Adam

 9   Slater who was interrupting you.  I apologize.

10        One thing, and it was in the letter, and we did not,

11   you're right, give you our full schedule, but we have made it

12   clear in the letter that we will be prepared to start

13   producing class reps no later than after Thanksgiving.  If we

14   can do any earlier than that, we are going to endeavor to do

15   so, but we're willing to be bound to start producing the class

16   reps en masse starting after Thanksgiving at the latest, and

17   to try to do as many as we can before the end of the year and

18   if it will spill over some into January, you know, we would

19   expect all class reps will be deposed, you know, no later than

20   January.

21        JUDGE SCHNEIDER:  Mr. Goldberg, you have --

22        MR. GOLDBERG:  Your Honor, this is one thing.

23        JUDGE SCHNEIDER:  I'm sorry, go ahead.

24        MR. GOLDBERG:  Go ahead, I'm sorry.

25        JUDGE SCHNEIDER:  Go ahead.

```
 1          MR. GOLDBERG:  I was going to say, we --
 2          JUDGE SCHNEIDER:  I'm going to shut up.  Go ahead.
 3          MR. GOLDBERG:  This is going to be -- of course, we
 4   want to take those depositions.  We're going to need to have
 5   the discovery about them, their plan information that we had
 6   requested.  The purpose of these depositions, the purpose of
 7   these depositions is to determine whether the class
 8   representatives satisfy the requirements of Rule 23, and so I
 9   would, without -- without rearguing this point, I would just
10   ask the Court to review our submission on this issue.
11          We've attached material on the issue as well, but,
12   you know, until we have the relevant plan information that we
13   can use to discuss with each of the class representatives
14   about their plans, about their co-pays, about their
15   deductibles, we can't do what we need to do as defendants in
16   terms of Rule 23.
17          So plaintiffs have --
18          JUDGE SCHNEIDER:  Well, let me tell you,
19   Mr. Goldberg, the defendants better start getting it in gear.
20   You have authorizations, focus those records, and there's
21   medical monitoring plaintiffs that there's no more document
22   requests, they could be deposed.  So let's start getting
23   things in gear and moving this case forward.
24          It's time to move forward.  We're going to deal with
25   the economic claimant document issue.  We're hopefully going
```

1    to get that issue decided by the middle of October.  You have

2    the authorizations -- not you, the defendants have the

3    authorizations right now, they've had them for a while.  Go

4    get the records.  We're going to start these depositions,

5    we're not going to hold them off.  We've got to get moving.

6    We've got to get moving on this case.  It's time.

7            The depositions of the plaintiffs are the low-hanging

8    fruit in this case, and there really shouldn't be any major

9    complications to move this forward.  And insofar as the

10   medical monitoring class action plaintiffs, you can do those

11   tomorrow.

12           So, I don't know, do you have a team ready to start

13   scheduling or working with plaintiffs to get these scheduled?

14   If not, let's get that done, because I'd like the parties to

15   work out amongst themselves when these deps are going to be

16   taken, but if the parties can't agree, I'll --

17           MR. GOLDBERG:  Your Honor, I don't disagree about the

18   medical monitoring.  We'll work to see if we can prioritize

19   those.  The economic loss consumers obviously have some

20   different issues because of the plan information and their

21   claims about co-pays and being refunded.

22           So we'll work on that and we hear Your Honor on our

23   obligation to start taking these depositions.

24           JUDGE SCHNEIDER:  Okay.  Great.  So I think we have

25   exhausted the issues we're going to discuss.

1          Can I suggest we can either -- you can either --

2     well, why don't you hold on, I'll hang up, alert Judge Kugler

3     that we're ready to proceed.  He texted me and said he has a

4     very short criminal hearing.

5          But while I'm gone, there certainly are issues you

6     all can discuss to hopefully move the ball forward, but I'll

7     be in touch with Judge Kugler, get him on this line and then

8     we can proceed and probably the better thing is just to hang

9     on and talk rather than reconvening at a separate time.

10          So I'm going to hang up and hopefully as soon as

11     Judge Kugler is available, which will be soon, we'll get him

12     on the line and discuss the other issues.

13          (Pause.)

14          (Judge Kugler joins the call.)

15          JUDGE KUGLER:  Okay.  I assume all the usual suspects

16     are on the line?

17          MR. SLATER:  Yes, they are, Your Honor, we are.

18          JUDGE KUGLER:  I think the first thing we need to do

19     in the orders to show cause, we have two in which the -- still

20     no response from the previous August 20th case management

21     conference to David Stano, S-T-A-N-O, and Therese,

22     T-H-E-R-E-S-E, Foutere, F-O-U-T-E-R-E.

23          Any movement on those two?

24          MR. HARKINS:  Your Honor, this is Steve Harkins with

25     Greenberg Traurig for the TEVA defendants and the joint

1    defense group.  I don't believe we've had any updates on those

2    cases and they still remain deficient.

3           JUDGE KUGLER:  Okay.  Any response from anybody on

4    behalf of these plaintiffs?  Apparently not.

5           MS. GOLDENBERG:  Your Honor, this is Marlene

6    Goldenberg.  I don't believe anyone from those firms was on

7    the call.

8           Mr. Harkins, can you confirm that you did reach out

9    to these two attorneys again?

10          MR. HARKINS:  Yes, they've both been contacted.

11          JUDGE KUGLER:  Any application from defense counsel

12   now?

13          I assume defendants would like me to dismiss these

14   two cases, is that correct?

15          MR. HARKINS:  Yes.  Apologies, Your Honor.  Yes, we

16   at this time ask for dismissal of the David Stano and the

17   Therese Foutere case.

18          JUDGE KUGLER:  Okay.  Motion is granted.

19          Now you have a number of them also listed.  Do you

20   want orders to show cause issued in these matters?

21          MR. HARKINS:  Your Honor, again, this is Steve

22   Harkins with Greenberg Traurig.  We have one update as of this

23   morning.  The second case on our list, Karen Meade, case No.

24   1:19-cv-15351 has been cleared as of this morning and can be

25   removed.

1          As to the other nine cases on the list, we have no

2     updates that I'm aware of, and would request orders to show

3     cause returnable at the October case management conference for

4     these nine cases.

5          JUDGE KUGLER:  Any objection from any plaintiffs'

6     counsel?

7          Okay.  Hearing no objection, we will shift those

8     over, denying remaining ones to an order to show cause.  That

9     would be Margaret Gehefer, G-E-H-E-F-E-R.  Karen Meade, that

10    will be dismissed.  The ownership -- the listing will be

11    dismissed.  Joseph Gioia, G-I-O-I-A; Collette Bray, B-R-A-Y;

12    Linda Frain, F-R-A-I-N; Edwin Lewis, L-E-W-I-S; Virginia

13    Bowden, B-O-W-D-E-N; Susan Mefford, M-E-F-F-O-R-D; Judy

14    Griffit, G-R-I-F-F-I-T; Linda Lewis, L-E-W-I-S.

15         All right.  Now, there's a number of other core

16    deficiencies which is at Page 18 of defense counsel's letter.

17         Any update on all those?

18         MR. HARKINS:  Your Honor, this is, again, Steve

19    Harkins for the defense.  The only update that we have on

20    this.  There's one case on here, Rose D'Andrea, which has been

21    cured and can be removed as a first listing.  It will not be

22    included on subsequent case management conference statements.

23    But from our side, we have no other update on this set.  So

24    again, we are not requesting any show cause orders at this

25    time with respect to any of the cases on the remaining lists.

```
 1            JUDGE KUGLER:  There are 11.  We'll shift to a second

 2   listing, then, on that one, and there's a first listing you

 3   have nine, nine on that.  Any updates on those nine at the end

 4   of your letters?

 5            MR. HARKINS:  No, Your Honor, no updates.  Those are

 6   first listing cases where we will be requesting a show of

 7   cause only if they're not cured by the October case management

 8   conference.

 9            JUDGE KUGLER:  All right.  We'll shift those into the

10   next case management conference then.

11            All right.  What other issues would you like to

12   discuss with me today?  We'll start with -- why don't we start

13   with defense counsel.

14            MS. COHEN:  I'm happy to jump in.  I didn't want to

15   leapfrog over Mr. Goldberg.  This is Lori Cohen with Greenberg

16   Traurig.  Good morning, Your Honor.

17            JUDGE KUGLER:  Good morning.

18            MS. COHEN:  I'm happy to address one issue that we

19   put on the letter, which is the issue of having an overall

20   case schedule for this.  In the letter that we submitted under

21   the Duane Morris adverse header.  It's Item 2, entry of case

22   management schedule.  And so this seems to be one of my

23   refrains, as Judge Schneider knows.  I tend to raise it, you

24   know, in every conference either in the Judge Schneider

25   session or last time, I think in July before you, Your Honor.
```

1      This is sort of the issue that I keep coming back to,

2   and again, one of the reasons it's come up is because we're at

3   the point in time where obviously this litigation is not

4   mature yet, but it is maturing.

5      We heard Judge Schneider this morning, you know, to

6   quote him saying, it's time to move forward, and I just want

7   to adopt that same quote because we do think it is time to

8   move forward on a parallel track, not to slow down what the

9   Court has started and what we're talking about on a parallel

10  track for the personal injury cases.

11     We think it's important.  You know, I harken back to

12  the first conference before Your Honor where we talked about

13  the importance of causation.  We have since, obviously, some

14  of us are involved in the Zantac Ranitidine litigation in

15  Florida before Judge Rosenberg.  That is a much newer

16  litigation.

17     They have a schedule that has them reaching *Daubert*

18  motions and a hearing on that 18 months from the start of the

19  MDL.  We're obviously 18 months in already, so we do think

20  it's important to get that going and have a structure and a

21  framework and a schedule.  We have presented the plaintiffs

22  with a schedule recently, as Mr. Slater and I discussed on the

23  call a moment ago before you joined.  Obviously, they need

24  time to look at that and we will meet and confer on that.

25     But we do think it's very important to get something

1    in place.  I think last time Your Honor said let's have

2    something in place by the end of the year.  We think now is

3    the time to be talking about it.  We want the Court's

4    imprimatur of this, you know, approach, if you will.  There's

5    567 personal injury cases still in the litigation and we think

6    it's important to have a schedule to keep us on track.

7         Even now we won't have a hearing before the

8    Ranitidine litigation, but again, we're just asking the Court

9    to give us the blessing and the encouragement and approval of

10   moving this forward even before the end of the year, in terms

11   of getting a structure in place.

12        JUDGE KUGLER:  Who wants to speak for the plaintiffs?

13        MR. SLATER:  Hello, Your Honor, it's Adam Slater.

14   How are you?

15        JUDGE KUGLER:  I'm fine.  How are you doing?

16        MR. SLATER:  Good.  I think I'll initially address it

17   and then obviously, if any of my co-counsel would like to say

18   something, they obviously can and should.

19        A couple of points on this.  First of all, this is

20   not Zantac, this is Valsartan, and it's become very puzzling

21   to us on the plaintiffs' side why the defense keeps talking

22   about a different litigation that has some similarity, but a

23   lot of significant differences and is not any sort of a

24   blueprint for what we do here.  So we're not really sure why

25   that's being held up as a model.

1      Point two.  We discussed exactly this issue and

2  that's really what it is, it's a rehash of the same issue in

3  July and, Your Honor, we supplied you the transcript so that

4  you could see what we discussed and what you said and so

5  everybody would be on the same page.  Your Honor said we would

6  endeavor to set a schedule for the general causation/personal

7  injury issues to try to be entered by the end of the year, and

8  the defense at that point said, well, we're going to get a

9  schedule to the plaintiffs now and we'll start to meet and

10  confer on it now in July.  They never sent us a schedule, they

11  never discussed it.  We saw it when it was filed last night.

12  That's point two.

13      I think that if you look at their case management

14  order, it really demonstrates why we really need, frankly,

15  Your Honor, to make clear to all of us and to -- and really

16  put this issue to bed in terms of how we're proceeding.

17      We've been proceeding based on everything you've told

18  us that, you know, the target is to have an economic loss

19  trial in the class action and we've been proceeding on that

20  basis.  We've been focusing on the API and finished dose

21  manufacturers and that makes sense.

22      These proposals that the defense has submitted now is

23  a massive, massive schedule for the entire case to be handled

24  all at the same time.  And when I say it demonstrates why we

25  need to really focus in on the segment of this litigation that

1    we're going to try to bring to a nadir or a pressure point at

2    some point, where we're going to get either through class

3    certification and trial is if you look at their schedule,

4    they're proposing, and counsel said they're not looking to

5    delay anything that the Court is looking to do, this schedule

6    pushes to the earliest possible trial date in 2023.

7        So when you look at that, from our perspective, we're

8    ready to start producing class plaintiffs, as we discussed a

9    few moments ago, in November.  We're ready to start producing

10   the class plaintiffs and start running through them, and these

11   are definitions which are very straightforward.  There's very

12   few real substantive questions that have to be asked.

13       The documents show what people paid for things and

14   they can be asked if they got sick or not, I suppose, even

15   though they are class reps and would be asked, but those

16   depositions we would expect are going to start happening very

17   soon.

18       And the schedule they have is so pushed out that this

19   litigation will just be bogged down in basically discovery and

20   motion practice, et cetera, for the next three years before

21   Your Honor would have the opportunity to try a case, or even

22   get to class certification, which I think they have that being

23   filed late 2022, those motions.  We're looking to file those

24   class certification motions soon, early next year at the

25   latest.  We're looking to push forward as we've been told by

1    Your Honor we should be doing and Judge Schneider has said we

2    need to move.

3        So, you know, from our perspective, the schedule the

4    defense has provided to Your Honor demonstrates that we really

5    would like to be able to focus on the economic loss part of

6    the case and, as Your Honor said, set a schedule by the end of

7    the year to take up general causation-type issues as defense

8    has framed them and have that track as well but we can't do it

9    all at once because as demonstrated by this proposed schedule,

10   that's just a recipe to put this litigation in a paper mode

11   without any opportunity to get to an end point with any part

12   of the litigation for at least three years.

13       MS. COHEN:  And, Your Honor, I'm happy to respond to

14   some of those points as quickly -- this is Lori Cohen again.

15       Again, just looking back to -- we have the transcript

16   as well, obviously, and I think Your Honor agreed with us that

17   -- to quote you, that there has to be a winnowing of the

18   cases, there has to be a focus on what actual cancers, to use

19   your word, a claim has been caused -- will cause in the

20   future.  So that's really the starting point.

21       We're not wed to the dates in here.  We wanted to

22   give it as an opening salvo.  We want the plaintiffs to

23   respond to it.  I think you suggest that we have something in

24   place by the end of year and we agree, but we really want to

25   have again, a winnowing of the types of cancers, and that's

1    why we have a couple of the dates that are very key in our

2    proposed schedule.

3         We have November 30th as a date by which -- there's

4    plenty of time between now and November 30th.  Plaintiff can

5    disclose the types of cancer to which they will provide expert

6    reports.  We don't see any reason why at this late stage, this

7    many months into an MDL, they can't provide it to us on

8    November 30th.

9         And then we have a March 1st, 2021 date, where they

10   should disclose, not specific experts or reports, but at least

11   the disciplines and speciality areas.  And again, I think

12   that's consistent with what you and Judge Schneider said that

13   you didn't have any objection to this parallel effort, but we

14   don't think that it should be consumer fraud followed by these

15   PI cases.  There's too many of them, they're too important,

16   you know, again, getting to the heart of what is the universe

17   that we're all facing on the defense side.

18        I mean, I stood before the JP&L in this case.  We

19   opposed to having the personal injury cases in here.  We

20   wanted to have it just consumer fraud and the plaintiff said,

21   no, there's so many PI cases coming, there may be thousands.

22        We know that hasn't happened yet, but we think it's

23   very important to get started on this.  We're happy to discuss

24   schedules.  But Zantac is very similar.  Zantac in many ways

25   is more complex, but again, talking about holding something up

1    as an example, we hear about *Benicar* all the time and that's

2    not even the same allegations.

3         So I think it's fair for us to request this and I

4    think it's important for us to get this structured now and get

5    going on it as opposed to doing consumer fraud and then

6    followed by the personal injury.  We want it to be parallel,

7    we think it's very important to do it that way.

8         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

9    May I just add a point that I think is very important on the

10   schedule.

11        We had a call on Saturday with Judge Schneider and

12   one of the things that Mr. Slater raised and that we discussed

13   is the fact that embedded in plaintiffs' class action claims,

14   the economic loss and medical monitoring is causation, and

15   plaintiffs intend to show in both claims, both class action --

16   both sets of class action claims, that the impurities in

17   Valsartan were capable of causing cancer.

18        And as you'll see, one of the things that our

19   schedule does as a result of that -- that issue, is to put the

20   *Daubert* motions with respect to causation before class

21   certifications, because obviously, it would be unfair to have

22   class certifications decided before the science, if the class

23   certification claims are, in fact, dependent on the science.

24        So we think that's another reason that these have to

25   proceed on a parallel track and that the PI case and medical

```
 1   monitoring case, which brings in causation, should be --
 2   should be set forth in a schedule like the one we had
 3   proposed.
 4         JUDGE KUGLER:  Well, look, I have not changed my mind
 5   about this.  First, there are not that many similarities
 6   between this and Zantac, so we're really not going to be bound
 7   by what's going on in Zantac.  But I continue to believe that
 8   we need to start a parallel track on what defense calls
 9   general causation or might be called the bodily injury and
10   personal injury cases.
11         Defense counsel submitted last night a proposed
12   order.  Plaintiffs have not had a chance to talk to them.
13         It is my intention that the November conference, at
14   the end of November, to enter an order governing discovery on
15   the general causation/bodily injury claims.
16         I also agree with defense counsel that there needs to
17   be sometime mid next year, service of expert reports on those
18   issues and Daubert hearings, if necessary.
19         So what I'm telling you is, that you need to continue
20   discussing this with the eye towards the November status
21   conference, late November status conference, the Court
22   entering an order governing the discovery on that parallel
23   track.  It's going to have to be parallel.  We're not taking
24   any resources away from the discovery and all the work that
25   needs to be done that's already scheduled and set up.
```

1          So sounds to me like you're going to have to get a

2     whole other army of lawyers involved to do that kind of

3     discovery in those other issues, but that's where we're going

4     to go with this in the future.

5          Anything else?

6          MS. COHEN:  No.  Thank you very much, Your Honor.

7          MR. GOLDBERG:  Nothing from defendants, Your Honor.

8          MR. SLATER:  That's it for plaintiffs, Your Honor.

9     Thank you for that.

10         JUDGE KUGLER:  All right.  Anything else you want to

11    talk about today other than the fact that the Phillies were

12    better than the Mets this year?

13         MR. GOLDBERG:  Nothing from defendants, Your Honor.

14         (Laughter.)

15         JUDGE KUGLER:  Sorry.  Mr. Slater, I could not resist

16    with Judge Schneider also on the line.

17         MR. SLATER:  No, I understand, Your Honor.  I was

18    going to say, nothing from the Yankee fan.

19         JUDGE KUGLER:  Hey, the Yankees looked pretty good

20    last night.

21         MR. SLATER:  I know, I'm scared of that, it's scaring

22    me.

23         JUDGE KUGLER:  No, don't let it scare you.  I mean,

24    when they get hot, they are unbeatable and maybe they're going

25    into a streak now, but we'll see.

1    Anything else, folks, other than stay safe and stay

2 well?  I don't know when we're going to get you in the

3 courtroom.  We're not doing any civil matters in the

4 courthouse at the moment.  We are doing criminal matters in

5 the courthouse, not jury trials yet, we're actually doing

6 criminal matters in the courthouse but no civil matters yet.

7    I don't know when we're going to start shifting to

8 civil matters in the courthouse, probably not until the new

9 year.  So we'll have to continue to do this by phone or Zoom

10 or whatever.

11    But stay safe, everybody, and we'll talk to you soon,

12 okay?  Thank you.

13    RESPONSE:  Thank you, Your Honor.

14    (11:47 a.m.)

15    - - - - - - - - - - - - - - - -

16

17    I certify that the foregoing is a correct transcript

18 from the record of proceedings in the above-entitled matter.

19

20 */S/ Karen Friedlander, CRR, RMR*
*Court Reporter/Transcriber*

21

22 *September 30, 2020*
*Date*

23

24

25

## /

/S [1] - 51:20

## 0

07068 [1] - 1:13

## 1

103 [1] - 1:12
10:00 [1] - 1:7
10:17 [1] - 3:2
11 [2] - 4:7, 41:1
11:47 [1] - 51:14
15 [1] - 25:2
15219 [1] - 2:24
16th [1] - 16:7
17th [1] - 2:10
18 [4] - 15:1, 40:16, 42:18, 42:19
1835 [1] - 1:15
19-2875 [1] - 3:4
19103 [2] - 1:16, 2:10
1:19-cv-15351 [1] - 39:24
1:19-md-02875-RBK-JS [1] - 1:4
1st [1] - 47:9

## 2

2 [2] - 25:22, 41:21
2020 [3] - 1:6, 3:1, 51:22
2021 [1] - 47:9
2022 [1] - 45:23
2023 [1] - 45:6
2029 [1] - 2:17
20th [1] - 38:20
2150 [1] - 2:7
23 [2] - 36:8, 36:16
2500 [1] - 2:13
2800 [1] - 2:21
2900 [1] - 1:15

## 3

30 [4] - 1:6, 2:10, 3:1, 51:22
30(b)(6 [10] - 9:7, 16:6, 19:20, 24:23, 26:2, 26:8, 26:15, 26:21, 26:24, 27:12
30(b)(6) [1] - 27:10
300 [1] - 2:17
30305 [1] - 2:14
30th [3] - 47:3, 47:4, 47:8
316 [1] - 2:3

## 32502 [1] - 2:4

3333 [1] - 2:13
35 [1] - 1:9
38th [1] - 2:24

## 4

45202 [1] - 2:21

## 5

55402 [1] - 2:7
567 [1] - 43:5

## 6

60 [4] - 18:25, 19:1, 19:10, 20:3
600 [2] - 2:3, 2:20
6th [1] - 24:19

## 7

700-plus [1] - 31:14
701 [1] - 1:18
70130 [1] - 1:19
756-0160 [1] - 1:24
7th [2] - 21:18, 22:1

## 8

800 [1] - 2:6
856 [1] - 1:24

## 9

90067-2904 [1] - 2:18

## A

a.m [3] - 1:7, 3:2, 51:14
ability [1] - 29:9
able [6] - 11:15, 13:9, 13:17, 21:19, 25:15, 31:15, 46:5
above-entitled [1] - 51:18
absolutely [2] - 19:19, 24:4
accelerate [1] - 34:7
acceptable [2] - 12:20, 23:15
acknowledged [1] - 29:24
Actavis [2] - 2:15
acting [1] - 12:8
ACTION [1] - 1:3
action [5] - 37:10, 44:19, 48:13, 48:15, 48:16

## actual [1] - 46:18

Adam [3] - 3:9, 35:8, 43:13
ADAM [1] - 1:12
add [1] - 48:9
added [1] - 17:15
addendum [1] - 25:7
addition [1] - 15:2
additional [1] - 29:25
address [5] - 6:1, 31:6, 34:5, 41:18, 43:16
addressing [1] - 10:6
adopt [1] - 42:7
advance [1] - 20:16
adverse [1] - 41:21
agenda [1] - 28:8
ago [2] - 42:23, 45:9
agree [6] - 9:9, 11:13, 23:14, 37:16, 46:24, 49:16
agreed [1] - 46:16
agreeing [2] - 9:14
ahead [4] - 35:23, 35:24, 35:25, 36:2
Aid [1] - 4:2
aided [1] - 1:25
air [1] - 34:2
alert [1] - 38:2
ALFANO [1] - 2:23
ALL [1] - 3:1
allegations [1] - 48:2
alleged [2] - 30:16, 30:22
almost [1] - 14:22
amazing [1] - 11:10
amend [1] - 28:12
AmerisourceBergen [2] - 2:22, 3:24
analogy [1] - 11:3
Angeles [1] - 2:18
announce [1] - 3:7
answer [6] - 11:1, 12:1, 12:13, 13:13, 22:21, 24:14
answered [1] - 11:25
API [2] - 24:9, 44:20
apologies [1] - 39:15
apologize [3] - 16:16, 32:5, 35:9
application [1] - 39:11
appointed [1] - 20:15
appreciate [2] - 8:20, 8:25
approach [1] - 43:4
appropriate [2] - 4:12, 9:6
appropriateness [1] - 33:16
approval [1] - 43:9

## areas [1] - 47:11

argue [1] - 32:1
argued [1] - 28:17
argument [1] - 9:11
army [1] - 50:2
aside [1] - 17:24
aspects [2] - 5:20, 8:11
assignors [1] - 31:14
assist [1] - 5:2
assume [3] - 28:18, 38:15, 39:13
assumed [1] - 28:24
Atlanta [1] - 2:14
attached [2] - 30:11, 36:11
attention [1] - 16:3
attorneys [3] - 10:15, 33:23, 39:9
August [1] - 38:20
Aurobindo [1] - 21:21
authorizations [9] - 28:13, 28:25, 29:3, 29:6, 32:17, 32:23, 36:20, 37:2, 37:3
available [4] - 4:6, 5:2, 13:9, 38:11
Avenue [1] - 2:6
aware [1] - 40:2

## B

background [2] - 5:23, 9:23
ball [5] - 11:4, 11:5, 13:16, 14:11, 38:6
BARNES [1] - 2:16
barring [1] - 34:13
base [1] - 4:9
based [5] - 15:22, 17:22, 26:11, 32:23, 44:17
baseline [1] - 33:1
basic [3] - 11:9, 12:22, 16:23
basis [2] - 19:25, 44:20
basketball [1] - 11:3
Baylen [1] - 2:3
become [2] - 11:7, 43:20
bed [1] - 44:16
begin [5] - 15:15, 15:25
beginning [1] - 5:6
begun [1] - 15:1
behalf [5] - 3:10, 3:16, 3:23, 27:14, 39:4
behind [1] - 12:14
behooved [1] - 7:8

## benefit [1] - 4:14

Benicar [3] - 11:15, 23:21, 48:1
BERNE [1] - 2:19
best [1] - 14:9
better [4] - 10:20, 36:19, 38:8, 50:12
between [2] - 47:4, 49:6
BI [2] - 4:11, 34:7
big [1] - 7:23
bit [4] - 14:21, 17:11, 30:19, 31:22
bite [1] - 7:12
blah [2] - 16:25
blank [1] - 16:21
blessing [1] - 43:9
blueprint [1] - 43:24
bodily [1] - 49:9
bogged [1] - 45:19
border [1] - 12:15
BOSICK [1] - 2:23
bound [2] - 35:15, 49:6
Bowden [1] - 40:13
BOWDEN [1] - 40:13
Bray [1] - 40:11
BRAY [1] - 40:11
brief [2] - 5:12, 11:1
briefs [1] - 9:11
bring [4] - 9:19, 16:2, 24:21, 45:1
brings [1] - 49:1
bunch [1] - 9:17
burden [2] - 8:23, 31:22
BY [10] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:9, 2:12, 2:17, 2:20, 2:23

## C

CA [1] - 2:18
Camp [1] - 1:18
cancer [2] - 47:5, 48:17
cancers [2] - 46:18, 46:25
capable [1] - 48:17
capacities [1] - 27:5
capacity [1] - 26:3
carcinogen [1] - 12:12
carriers [1] - 31:17
case [44] - 5:20, 5:22, 7:23, 7:24, 8:19, 8:20, 9:2, 9:3, 9:24, 10:19, 13:22, 14:8, 15:1, 17:4, 23:23, 25:13, 25:15, 25:17,

27:3, 31:19, 31:23, 36:23, 37:6, 37:8, 38:20, 39:17, 39:23, 40:3, 40:20, 40:22, 41:7, 41:10, 41:20, 41:21, 44:13, 44:23, 45:21, 46:6, 47:18, 48:25, 49:1

**cases** [15] - 15:18, 33:22, 39:2, 39:14, 40:1, 40:4, 40:25, 41:6, 42:10, 43:5, 46:18, 47:15, 47:19, 47:21, 49:10

**causation** [6] - 42:13, 46:7, 48:14, 48:20, 49:1, 49:9

**causation-type** [1] - 46:7

**causation/bodily** [1] - 49:15

**causation/personal** [1] - 44:6

**caused** [1] - 46:19

**causes** [1] - 33:14

**causing** [1] - 48:17

**Centre** [1] - 2:24

**Century** [1] - 2:17

**certain** [1] - 16:2

**certainly** [5] - 10:16, 13:12, 21:25, 35:4, 38:5

**certification** [4] - 45:3, 45:22, 45:24, 48:23

**certifications** [2] - 48:21, 48:22

**certify** [1] - 51:17

**cetera** [5] - 10:11, 17:2, 45:20

**challenges** [1] - 8:20

**chance** [1] - 49:12

**change** [1] - 24:17

**changed** [2] - 30:7, 49:4

**China** [3] - 6:20, 9:16, 12:15

**cincinnati** [1] - 2:21

**circulated** [1] - 21:17

**circumstances** [2] - 25:8, 34:13

**CIVIL** [1] - 1:3

**civil** [3] - 51:3, 51:6, 51:8

**civilly** [1] - 12:13

**claim** [3] - 4:11, 30:23, 46:19

**claimant** [1] - 36:25

**claiming** [1] - 30:14

**claims** [6] - 37:21, 48:13, 48:15, 48:16,

48:23, 49:15

**class** [31] - 5:7, 24:14, 29:17, 30:3, 30:6, 30:12, 30:20, 31:3, 31:25, 32:12, 32:24, 34:14, 35:13, 35:15, 35:19, 36:7, 36:13, 37:10, 44:19, 45:2, 45:8, 45:10, 45:15, 45:22, 45:24, 48:13, 48:15, 48:16, 48:20, 48:22

**clear** [7] - 12:8, 23:25, 27:2, 27:3, 33:1, 35:12, 44:15

**cleared** [1] - 39:24

**CLEM** [1] - 2:23

**clinical** [1] - 11:18

**closely** [2] - 6:8, 7:16

**co** [5] - 30:12, 30:23, 36:14, 37:21, 43:17

**Co** [1] - 2:18

**co-counsel** [1] - 43:17

**co-pay** [1] - 30:23

**co-pays** [3] - 30:12, 36:14, 37:21

**Cohen** [3] - 3:21, 41:15, 46:14

**COHEN** [6] - 2:12, 3:20, 41:14, 41:18, 46:13, 50:6

**Collette** [1] - 40:11

**coming** [1] - 15:25, 19:25, 42:1, 47:21

**Commencing** [1] - 1:7

**comment** [1] - 7:15

**comments** [1] - 23:21

**communication** [1] - 7:3

**companies** [1] - 20:15

**compelled** [1] - 18:15

**complete** [6] - 7:8, 18:17, 20:20, 20:21, 28:13

**completely** [1] - 18:14

**complex** [3] - 11:17, 11:19, 47:25

**complications** [1] - 37:9

**complied** [1] - 17:13

**computer** [1] - 1:25

**computer-aided** [1] - 1:25

**conceivably** [1] - 32:25

**concern** [2] - 8:17, 15:9

**concerned** [2] - 5:13, 32:6

**concerns** [2] - 15:23,

23:24

**concrete** [1] - 7:2

**confer** [22] - 4:25, 6:13, 7:18, 8:4, 10:23, 15:7, 15:12, 15:25, 16:20, 20:18, 23:3, 24:21, 27:1, 27:19, 29:14, 31:5, 32:3, 33:2, 33:20, 35:1, 42:24, 44:10

**conference** [13] - 14:15, 24:22, 32:4, 38:21, 40:3, 40:22, 41:8, 41:10, 41:24, 42:12, 49:13, 49:21

**CONFERENCE** [1] - 1:5

**conferring** [1] - 25:23

**confers** [3] - 8:18, 11:14, 27:25

**confirm** [1] - 39:8

**CONLEE** [1] - 1:18

**Conlee** [1] - 3:15

**consecutive** [2] - 26:5, 27:7

**consider** [1] - 34:7

**consistent** [1] - 47:12

**consultants** [1] - 11:23

**consumer** [7] - 30:6, 30:12, 31:2, 32:11, 47:14, 47:20, 48:5

**consumers** [4] - 31:16, 31:19, 31:23, 37:19

**contacted** [1] - 39:10

**containing** [1] - 22:16

**contaminated** [1] - 12:11

**contentious** [3] - 9:20, 11:7, 11:8

**contentiousness** [1] - 12:21

**context** [1] - 26:13

**continue** [4] - 22:7, 49:7, 49:19, 51:9

**CONTINUED** [1] - 2:1

**control** [2] - 5:17, 25:12

**conversation** [1] - 21:16

**core** [2] - 14:24, 40:15

**corners** [1] - 11:4

**coronavirus** [1] - 17:25

**corporate** [9] - 7:11, 8:23, 9:5, 25:23, 26:7, 26:13, 27:2, 27:9, 27:15

**correct** [4] - 27:13,

31:3, 39:14, 51:17

**cost** [1] - 8:23

**counsel** [15] - 3:5, 4:4, 4:16, 5:14, 6:25, 17:10, 25:14, 32:3, 39:11, 40:6, 41:13, 43:17, 45:4, 49:11, 49:16

**Counsel** [1] - 25:19

**counsel's** [1] - 40:16

**country** [2] - 13:6, 19:2

**couple** [2] - 43:19, 47:1

**course** [13] - 4:8, 5:2, 5:17, 9:6, 12:6, 15:13, 15:23, 16:4, 21:16, 23:10, 25:24, 31:11, 36:3

**COURT** [1] - 1:1

**Court** [3] - 12:3, 11:14, 51:20

**Court's** [5] - 6:24, 13:18, 14:12, 19:22, 43:3

**courtesy** [1] - 27:22

**courthouse** [4] - 51:4, 51:5, 51:6, 51:8

**courtroom** [1] - 51:3

**courts** [1] - 12:13

**cover** [2] - 24:1, 28:17

**covered** [1] - 29:21

**COVID** [2] - 9:3, 14:14

**criminal** [2] - 38:4, 51:4, 51:6

**critical** [1] - 34:11

**CRR** [1] - 51:20

**cultural** [1] - 10:20

**cured** [2] - 40:21, 41:7

**custodial** [9] - 7:4, 7:9, 16:24, 17:11, 17:12, 18:5, 18:16, 20:20, 26:7

**custodian** [4] - 18:2, 22:13, 22:25, 34:24

**custodians** [7] - 12:25, 17:22, 20:6, 21:22, 23:10, 23:22

**CVS** [2] - 2:18, 4:2

**D**

**D'Andrea** [1] - 40:20

**damages** [1] - 31:24

**Daniel** [1] - 3:13

**DANIEL** [2] - 2:3, 2:20

**database** [1] - 11:18

**date** [3] - 45:6, 47:3, 47:9

**Date** [1] - 51:22

31:3, 39:14, 51:17

**dates** [4] - 16:10, 16:12, 46:21, 47:1

**Daubert** [3] - 42:17, 48:20, 49:18

**David** [2] - 38:21, 39:16

**days** [2] - 26:5, 27:7

**deal** [6] - 4:8, 5:3, 10:12, 25:18, 33:8, 36:24

**dealing** [1] - 14:14

**deals** [3] - 10:10, 10:11

**decide** [2] - 4:16, 4:17

**decided** [3] - 5:15, 37:1, 48:22

**deciding** [1] - 5:16

**decision** [2] - 5:18, 13:24

**decisions** [1] - 4:19

**dedicated** [1] - 10:15

**deductibles** [2] - 30:16, 36:15

**default** [1] - 24:13

**Defendant** [4] - 2:11, 2:18, 2:22, 2:25

**defendant** [10] - 3:6, 9:25, 10:15, 17:12, 17:13, 18:4, 19:9, 24:19, 26:1

**Defendants** [1] - 2:14

**defendants** [46] - 3:17, 3:19, 3:21, 3:23, 4:1, 4:10, 4:21, 5:10, 6:11, 8:7, 9:1, 9:5, 10:7, 10:13, 12:8, 12:23, 15:17, 15:19, 16:7, 17:4, 19:5, 19:10, 19:12, 20:19, 23:11, 23:14, 24:19, 25:9, 25:24, 26:22, 27:15, 28:2, 28:3, 28:11, 29:1, 31:22, 32:21, 36:15, 36:19, 37:2, 38:25, 39:13, 50:7, 50:13

**defendants'** [2] - 18:24, 34:20

**defense** [18] - 11:13, 17:9, 18:14, 28:19, 39:1, 39:11, 40:16, 40:19, 41:13, 43:21, 44:8, 44:22, 46:4, 46:7, 47:17, 49:8, 49:11, 49:16

**Defense** [2] - 2:11, 2:25

**defense's** [1] - 18:7

**defer** [1] - 33:17

**deficiencies** [1] -

40:16
**deficient** [1] - 39:2
**deficit** [1] - 19:24
**definitions** [1] - 45:11
**delay** [1] - 45:5
**delighted** [1] - 22:7
**demonstrate** [2] - 30:21, 31:24
**demonstrated** [1] - 46:9
**demonstrates** [3] - 44:14, 44:24, 46:4
**denying** [1] - 40:8
**dependent** [1] - 48:23
**deponent** [2] - 10:24, 26:1
**deponents** [6] - 9:15, 23:15, 23:22, 24:1, 25:7, 34:25
**depose** [7] - 10:8, 16:23, 17:4, 17:6, 17:20, 21:6, 22:14
**deposed** [16] - 6:17, 9:16, 13:1, 19:6, 19:13, 20:9, 23:2, 23:5, 23:17, 25:25, 27:4, 27:5, 29:17, 35:19, 36:22
**deposition** [9] - 6:4, 7:17, 7:25, 8:1, 10:1, 14:24, 25:5, 26:4, 34:12
**depositions** [30] - 4:20, 5:5, 5:7, 5:9, 8:22, 8:24, 9:14, 9:17, 13:3, 13:5, 14:1, 15:5, 25:23, 26:8, 26:14, 26:23, 26:24, 27:2, 27:6, 27:9, 34:13, 34:14, 36:4, 36:6, 36:7, 37:4, 37:7, 37:23, 45:16
**deps** [3] - 34:18, 34:20, 37:15
**designate** [1] - 28:1
**detail** [1] - 30:19
**determine** [1] - 36:7
**devote** [1] - 14:12
**dialect** [1] - 20:8
**dialects** [2] - 20:13, 20:16
**differences** [2] - 30:12, 43:23
**different** [7] - 12:24, 15:19, 30:7, 30:18, 37:20, 43:22
**difficult** [5] - 7:14, 13:3, 14:16, 21:6, 21:11

**difficulty** [1] - 9:25
**digging** [1] - 17:15
**direct** [1] - 31:16
**disagree** [1] - 37:17
**disciplines** [1] - 47:11
**disclose** [2] - 47:5, 47:10
**disclosure** [2] - 17:13, 18:13
**discovery** [10] - 7:12, 10:25, 14:24, 31:23, 36:5, 45:19, 49:14, 49:22, 49:24, 50:3
**discuss** [3] - 14:11, 26:7, 36:13, 37:25, 38:6, 38:12, 41:12, 47:23
**discussed** [10] - 20:12, 25:8, 25:24, 34:11, 42:22, 44:1, 44:4, 44:11, 45:8, 48:12
**discussing** [3] - 6:5, 15:6, 49:20
**discussion** [12] - 4:12, 6:14, 7:17, 15:20, 17:7, 17:8, 17:9, 18:11, 23:9, 23:20, 25:21, 28:4
**discussions** [6] - 7:19, 8:3, 8:17, 9:8, 15:11, 16:20
**dismiss** [3] - 5:15, 14:1, 39:13
**dismissal** [1] - 39:16
**dismissed** [2] - 40:10, 40:11
**disputing** [1] - 9:10
**distributed** [1] - 6:20
**DISTRICT** [3] - 1:1, 1:1, 1:9
**Docket** [1] - 3:4
**document** [11] - 6:14, 13:23, 14:25, 15:3, 23:12, 28:11, 28:21, 32:7, 33:7, 36:21, 36:25
**documents** [5] - 14:25, 19:24, 29:3, 29:16, 45:13
**dollars** [1] - 12:10
**done** [16] - 8:12, 8:13, 10:2, 10:13, 11:2, 13:24, 14:15, 18:5, 18:6, 18:8, 18:9, 26:3, 27:6, 28:3, 37:14, 49:25
**dose** [2] - 24:10, 44:20
**doubt** [2] - 14:13, 14:14

**down** [10] - 3:8, 9:19, 17:21, 18:4, 18:25, 19:10, 25:10, 31:22, 42:8, 45:19
**drug** [1] - 30:14
**drugs** [2] - 12:11, 30:17
**Du** [4] - 6:24, 7:7, 16:23
**Du's** [1] - 7:3
**Duane** [1] - 41:21
**DUANE** [1] - 2:9
**due** [1] - 11:6
**duplicate** [1] - 28:12
**duplicates** [1] - 29:8

## E

**earliest** [1] - 45:6
**early** [3] - 21:19, 22:8, 45:24
**easier** [2] - 21:7, 33:4
**East** [1] - 2:17
**easy** [5] - 5:9, 5:10, 13:10, 20:5, 34:15
**economic** [9] - 24:14, 31:1, 32:2, 32:8, 36:25, 37:19, 44:18, 46:5, 48:14
**edge** [1] - 24:14
**Edwin** [1] - 40:12
**efficient** [2] - 10:25, 26:4
**effort** [1] - 47:13
**efforts** [2] - 14:7, 23:11
**eight** [2] - 28:12, 29:5
**Eisenhower** [1] - 1:12
**either** [9] - 5:5, 19:3, 26:4, 27:6, 28:12, 38:1, 41:24, 45:2
**embedded** [1] - 48:13
**embrace** [1] - 6:11
**en** [1] - 35:16
**enable** [1] - 5:19
**encouragement** [1] - 43:9
**end** [21] - 5:18, 7:19, 7:22, 9:16, 11:8, 13:25, 25:9, 28:4, 33:21, 34:18, 35:3, 35:17, 41:3, 43:2, 43:10, 44:7, 46:6, 46:11, 46:24, 49:14
**endeavor** [2] - 35:14, 44:6
**ended** [1] - 12:2
**endure** [1] - 8:21
**engage** [1] - 22:8
**English** [6] - 13:1,

17:23, 19:2, 20:7, 21:1, 23:4
**enormous** [2] - 4:21, 4:25
**enter** [2] - 6:13, 49:14
**entered** [1] - 44:7
**entering** [1] - 49:22
**entire** [2] - 18:15, 44:23
**entitled** [1] - 51:18
**entry** [1] - 41:21
**ESI** [1] - 11:16
**especially** [3] - 4:21, 8:16, 23:23
**ESQUIRE** [11] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:9, 2:12, 2:13, 2:17, 2:20, 2:23
**establish** [1] - 31:24
**et** [5] - 10:11, 17:2, 45:20
**evaluating** [1] - 15:1
**exactly** [2] - 20:18, 44:1
**example** [7] - 6:19, 6:22, 6:24, 7:7, 10:9, 11:16, 48:1
**except** [1] - 4:19
**exceptionally** [1] - 30:1
**excuse** [1] - 21:18
**exemplars** [1] - 19:18
**exhausted** [1] - 37:25
**Exhibit** [1] - 30:11
**exhibits** [1] - 17:2
**expect** [6] - 19:20, 25:24, 31:11, 31:13, 35:19, 45:16
**expected** [1] - 13:16
**expense** [1] - 8:24
**experience** [1] - 25:14
**expert** [2] - 47:5, 49:17
**expertise** [1] - 25:14
**experts** [1] - 47:10
**exponentially** [1] - 9:3
**extensions** [1] - 4:18
**extent** [1] - 5:21
**eye** [1] - 49:20

## F

**F-O-U-T-E-R-E** [1] - 38:22
**facing** [1] - 47:17
**fact** [8] - 13:15, 29:21, 29:25, 30:1, 31:24, 48:13, 48:23, 50:11
**fair** [1] - 48:3
**faith** [2] - 12:5, 23:11

**fan** [1] - 50:18
**far** [4] - 5:12, 21:3, 25:10, 34:6
**fast** [1] - 5:15
**felt** [1] - 7:7
**few** [5] - 15:12, 24:24, 25:20, 45:9, 45:12
**figure** [1] - 14:18
**file** [4] - 7:4, 7:9, 16:24, 45:23
**filed** [3] - 16:18, 44:11, 45:23
**files** [1] - 20:20
**fine** [6] - 4:18, 7:23, 27:5, 27:17, 33:8, 43:15
**finger** [1] - 18:22
**finished** [2] - 24:9, 44:20
**firm** [2] - 5:21, 7:2
**firms** [1] - 39:6
**first** [10] - 3:7, 11:1, 15:4, 38:18, 40:21, 41:2, 41:6, 42:12, 43:19, 49:5
**five** [2] - 19:5, 19:11
**floor** [1] - 11:5
**Floor** [1] - 2:24
**Florida** [2] - 2:4, 42:15
**focus** [7] - 14:4, 14:6, 15:17, 36:20, 44:25, 46:5, 46:18
**focused** [4] - 6:13, 10:3, 30:2, 32:11
**focusing** [2] - 20:11, 44:20
**folks** [1] - 51:1
**followed** [2] - 47:14, 48:6
**FOR** [1] - 1:1
**foregoing** [1] - 51:17
**foreign** [1] - 9:1
**forever** [1] - 13:12
**forge** [1] - 5:11
**formularies** [1] - 30:18
**forth** [1] - 49:2
**forward** [16] - 5:20, 7:24, 8:3, 13:22, 14:12, 14:18, 32:16, 34:16, 36:23, 36:24, 37:9, 38:6, 42:6, 42:8, 43:10, 45:25
**four** [1] - 11:4
**Foutere** [2] - 38:22, 39:17
**Frain** [1] - 40:12
**FRAIN** [1] - 40:12
**framed** [1] - 46:8
**framework** [2] - 15:6, 42:21

*frankly* [5] - 6:18, 9:13, 11:14, 12:6, 44:14
*fraud* [3] - 47:14, 47:20, 48:5
*FREEMAN* [1] - 1:11
*fresh* [1] - 34:2
*Friedlander* [2] - 1:23, 51:20
*friedlanderreporter @gmail.com* [1] - 1:23
*fruit* [1] - 37:8
*full* [1] - 35:11
*fundamental* [2] - 10:20, 11:9
*future* [2] - 46:20, 50:4

## G

*G-E-H-E-F-E-R* [1] - 40:9
*gear* [2] - 36:19, 36:23
*Gehefer* [1] - 40:9
*gems* [1] - 25:11
*general* [4] - 44:6, 46:7, 49:9, 49:15
*generic* [1] - 25:5
*GEOPPINGER* [2] - 2:20, 3:22
*Geoppinger* [1] - 3:23
*Georgia* [1] - 2:14
*Gioia* [1] - 40:11
*GIOIA* [1] - 40:11
*given* [2] - 4:24, 25:14
*goal* [1] - 11:5
*Goldberg* [24] - 3:19, 8:13, 8:14, 9:22, 10:18, 11:2, 11:6, 12:21, 13:21, 14:19, 20:10, 21:18, 22:2, 23:8, 25:19, 26:9, 26:23, 29:13, 29:19, 34:4, 35:21, 36:19, 41:15, 48:8
*GOLDBERG* [31] - 2:9, 3:18, 8:14, 13:19, 14:20, 16:9, 16:12, 16:14, 23:8, 24:4, 24:6, 25:20, 26:11, 26:16, 26:25, 27:17, 29:12, 29:18, 31:2, 31:10, 32:9, 32:11, 34:9, 35:22, 35:24, 36:1, 36:3, 37:17, 48:8, 50:7, 50:13
*Goldberg's* [1] - 16:21
*Goldenberg* [3] - 33:17, 34:1, 39:6
*GOLDENBERG* [5] -

2:5, 2:6, 33:19, 34:3, 39:5
*GOLOMB* [1] - 1:14
*GORDON* [1] - 2:23
*governing* [2] - 49:14, 49:22
*granted* [1] - 39:18
*great* [5] - 5:2, 5:19, 22:22, 23:7, 37:24
*greater* [1] - 5:21
*Greenberg* [3] - 38:25, 39:22, 41:15
*GREENBERG* [1] - 2:12
*Griffit* [1] - 40:14
*GRIFFIT* [1] - 40:14
*group* [2] - 4:16, 39:1
*Group* [2] - 2:11, 2:25
*guarantee* [1] - 13:25
*guidance* [2] - 8:7, 25:21

## H

*hale* [1] - 12:12
*hammer* [1] - 11:24
*hand* [2] - 9:7, 9:8
*handled* [1] - 44:23
*handling* [2] - 4:11, 33:18
*hang* [3] - 38:2, 38:8, 38:10
*hanging* [1] - 37:7
*happy* [7] - 14:12, 17:16, 28:5, 41:14, 41:18, 46:13, 47:23
*hard* [1] - 12:14
*harken* [1] - 42:11
*HARKINS* [7] - 2:13, 38:24, 39:10, 39:15, 39:21, 40:18, 41:5
*Harkins* [4] - 38:24, 39:8, 39:22, 40:19
*header* [2] - 27:1, 41:21
*health* [2] - 32:18, 32:19
*Health* [1] - 2:18
*hear* [6] - 5:13, 11:12, 14:22, 34:2, 37:22, 48:1
*heard* [3] - 11:3, 25:16, 42:5
*hearing* [5] - 21:3, 38:4, 40:7, 42:18, 43:7
*hearings* [1] - 49:18
*heart* [1] - 47:16
*heavy* [1] - 13:5
*held* [1] - 43:25

*hello* [1] - 43:13
*help* [3] - 14:13, 14:19, 25:2
*helpful* [6] - 8:16, 9:20, 9:23, 10:5, 21:4, 28:6
*helping* [1] - 11:2
*hide* [1] - 12:14
*hold* [3] - 29:13, 37:5, 38:2
*holding* [1] - 47:25
*HONIK* [8] - 1:14, 1:15, 3:11, 21:15, 22:15, 22:20, 24:12, 32:14
*Honik* [5] - 3:11, 21:15, 22:11, 24:8, 32:15
*Honor* [86] - 3:9, 3:11, 3:13, 3:15, 3:18, 3:20, 3:22, 3:25, 6:4, 6:5, 8:14, 8:15, 9:8, 10:14, 11:12, 11:15, 11:19, 12:4, 13:4, 13:17, 13:19, 14:20, 15:8, 15:11, 15:17, 16:3, 16:9, 17:9, 18:12, 19:15, 20:2, 20:18, 20:23, 21:13, 21:15, 23:8, 23:13, 23:20, 25:20, 27:13, 27:17, 28:10, 28:14, 29:12, 29:18, 29:23, 30:10, 30:20, 31:3, 32:5, 32:14, 32:15, 33:19, 34:9, 35:8, 35:22, 37:17, 37:22, 38:17, 38:24, 39:5, 39:15, 39:21, 40:18, 41:5, 41:16, 41:25, 42:12, 43:1, 43:13, 44:3, 44:5, 44:15, 45:21, 46:1, 46:4, 46:6, 46:13, 46:16, 48:8, 50:6, 50:7, 50:8, 50:13, 50:17, 51:13
*Honor's* [3] - 9:18, 15:9, 16:3
*HONORABLE* [2] - 1:8, 1:9
*hopeful* [1] - 6:10
*hopefully* [5] - 13:24, 34:20, 36:25, 38:6, 38:10
*hot* [1] - 50:24
*hours* [1] - 16:25
*hundred* [1] - 14:6
*hundreds* [1] - 12:10

## I

*identified* [3] - 20:6, 22:3, 24:2
*identify* [4] - 10:23, 19:4, 20:23, 21:20
*ignore* [1] - 14:7
*illegal* [1] - 10:1
*immediately* [1] - 15:8
*importance* [1] - 42:13
*important* [20] - 4:24, 6:23, 7:5, 7:10, 7:11, 7:12, 7:14, 13:14, 14:5, 18:3, 20:9, 42:11, 42:20, 42:25, 43:6, 47:15, 47:23, 48:4, 48:7, 48:9
*imprimatur* [2] - 13:18, 43:4
*impurities* [2] - 30:16, 48:16
*impurity* [1] - 30:22
*IN* [1] - 1:3
*Inc* [2] - 2:15, 2:15
*included* [1] - 40:22
*inconvenience* [1] - 12:9
*incredibly* [1] - 14:16
*independent* [1] - 15:2
*individual* [3] - 26:3, 26:8, 26:23
*individually* [1] - 8:18
*individuals* [3] - 27:10, 28:23, 29:7
*Industries* [1] - 2:14
*informal* [1] - 25:3
*information* [21] - 6:25, 7:2, 20:14, 20:21, 21:5, 28:23, 29:7, 29:9, 29:10, 30:4, 30:9, 30:19, 31:8, 31:14, 31:15, 31:16, 31:18, 31:21, 36:5, 36:12, 37:20
*informed* [1] - 29:22
*initial* [6] - 21:5, 22:13, 22:25, 24:10, 28:15, 34:25
*initiated* [3] - 22:5, 22:6, 22:10
*injured* [1] - 30:21
*injury* [8] - 42:10, 43:5, 44:7, 47:19, 48:6, 49:9, 49:10, 49:15
*insofar* [1] - 37:9
*insurance* [2] - 30:5, 32:18
*insurer* [1] - 31:9
*intend* [1] - 48:15

*intended* [1] - 29:23
*intention* [1] - 49:13
*interested* [1] - 26:6
*interference* [1] - 19:7
*internally* [1] - 22:16
*interrupted* [1] - 35:7
*interrupting* [1] - 35:9
*intervention* [1] - 19:22
*investigate* [1] - 21:9
*involve* [1] - 11:11
*involved* [8] - 9:25, 10:9, 15:8, 16:4, 19:2, 28:5, 42:14, 50:2
*involvement* [1] - 9:19
*issue* [30] - 4:11, 6:4, 6:8, 7:16, 8:1, 10:16, 10:20, 21:24, 24:23, 26:12, 26:21, 28:10, 28:20, 29:14, 31:5, 32:3, 33:4, 33:18, 35:4, 36:10, 36:11, 36:25, 37:1, 41:18, 41:19, 42:1, 44:1, 44:2, 44:16, 48:19
*issued* [1] - 39:20
*issues* [46] - 4:7, 5:1, 6:1, 6:6, 6:11, 6:19, 7:13, 7:17, 7:23, 8:10, 9:1, 9:2, 9:10, 9:11, 9:20, 10:6, 10:25, 12:16, 14:11, 15:13, 17:25, 23:3, 24:1, 28:17, 31:11, 33:9, 33:10, 33:11, 33:22, 34:4, 34:6, 34:7, 34:22, 35:2, 37:20, 37:25, 38:5, 38:12, 41:11, 44:7, 46:7, 49:18, 50:3
*Italy* [1] - 10:2
*Item* [1] - 41:21

## J

*January* [6] - 14:2, 29:22, 34:14, 34:21, 35:18, 35:20
*Japan* [1] - 11:17
*Je* [1] - 22:4
*Jecai* [1] - 22:4
*Jeff* [1] - 3:22
*JEFFREY* [1] - 2:20
*Jenson* [1] - 22:4
*JERSEY* [1] - 1:1
*Jersey* [2] - 1:13, 7:7
*Jie* [1] - 22:4
*JOEL* [1] - 1:8
*John* [4] - 6:24, 7:3,

7:7, 16:23
**Johnston** [1] - 4:1
**JOHNSTON** [2] - 2:17, 3:25
**join** [1] - 4:7
**joined** [1] - 42:23
**joins** [2] - 4:13, 38:14
**joint** [1] - 38:25
**Joint** [2] - 2:11, 2:25
**Joseph** [1] - 40:11
**JP&L** [1] - 47:18
**JUDGE** [66] - 1:8, 1:9, 3:3, 3:17, 4:3, 7:15, 9:21, 13:20, 16:5, 16:11, 16:13, 16:15, 18:23, 19:8, 19:16, 22:11, 22:19, 22:22, 24:3, 24:5, 24:7, 24:16, 26:9, 26:15, 26:19, 26:21, 27:8, 27:16, 27:18, 28:8, 28:20, 29:11, 29:13, 30:25, 31:4, 32:1, 32:6, 32:10, 32:13, 33:3, 33:14, 34:1, 34:4, 34:10, 35:21, 35:23, 35:25, 36:2, 36:18, 37:24, 38:15, 38:18, 39:3, 39:11, 39:18, 40:5, 41:1, 41:9, 41:17, 43:12, 43:15, 49:4, 50:10, 50:15, 50:19, 50:23
**Judge** [23] - 4:6, 4:8, 4:12, 5:13, 13:17, 17:19, 18:3, 26:20, 33:10, 34:5, 34:6, 38:2, 38:7, 38:11, 38:14, 41:23, 41:24, 42:5, 42:15, 46:1, 47:12, 48:11, 50:16
**Judy** [1] - 40:13
**July** [4] - 29:24, 41:25, 44:3, 44:10
**jump** [3] - 6:8, 21:25, 41:14
**juncture** [1] - 21:19
**jurisprudential** [1] - 12:19
**jury** [1] - 51:5

### K

**KANNER** [1] - 1:17
**Karen** [4] - 1:23, 39:23, 40:9, 51:20
**KATZ** [1] - 1:11
**keep** [2] - 42:1, 43:6
**keeps** [1] - 43:21
**key** [5] - 10:24, 17:3,

17:14, 23:22, 47:1
**kind** [3] - 10:18, 12:9, 50:2
**kinds** [1] - 29:23
**knowledge** [2] - 19:24, 29:2
**known** [1] - 30:16
**knows** [3] - 11:12, 21:8, 41:23
**KUGLER** [17] - 1:9, 38:15, 38:18, 39:3, 39:11, 39:18, 40:5, 41:1, 41:9, 41:17, 43:12, 43:15, 49:4, 50:10, 50:15, 50:19, 50:23
**Kugler** [12] - 4:6, 4:8, 4:12, 5:13, 13:17, 33:10, 34:5, 34:6, 38:2, 38:7, 38:11, 38:14

### L

**L-E-W-I-S** [1] - 40:14
**lack** [1] - 10:20
**language** [3] - 9:25, 20:7, 20:8
**large** [1] - 3:21
**largely** [1] - 29:8
**Lasalle** [1] - 2:6
**last** [8] - 18:11, 29:24, 33:21, 41:25, 43:1, 44:11, 49:11, 50:20
**late** [4] - 4:5, 45:23, 47:6, 49:21
**latest** [2] - 35:16, 45:25
**Laughter** [2] - 33:13, 50:14
**LAW** [1] - 2:5
**lawsuit** [1] - 12:9
**lawyers** [2] - 11:20, 50:2
**lead** [2] - 3:5, 4:4
**leading** [1] - 24:14
**leapfrog** [1] - 41:15
**learn** [1] - 7:6
**least** [5] - 5:16, 16:21, 22:13, 46:12, 47:10
**less** [4] - 6:18, 7:13, 7:16, 10:24
**letter** [16] - 4:10, 9:11, 21:18, 22:1, 25:22, 26:12, 26:17, 27:1, 27:20, 27:24, 34:23, 35:10, 35:12, 40:16, 41:19, 41:20
**letters** [3] - 4:5, 5:24, 41:4

**level** [1] - 12:7
**LEVIN** [1] - 2:2
**Lewis** [2] - 40:12, 40:14
**LEWIS** [1] - 40:12
**Li** [1] - 22:4
**LIABILITY** [1] - 1:4
**light** [1] - 6:11
**likely** [1] - 19:6
**limit** [1] - 16:24
**limited** [2] - 4:16, 21:20
**Linda** [2] - 40:12, 40:14
**line** [4] - 38:7, 38:12, 38:16, 50:16
**lined** [2] - 14:3
**list** [20] - 15:16, 17:5, 17:12, 18:25, 19:10, 20:12, 21:6, 22:13, 22:25, 23:1, 23:19, 23:21, 23:22, 24:18, 24:25, 26:7, 34:24, 34:25, 39:23, 40:1
**listed** [1] - 39:19
**listening** [1] - 21:16
**listing** [5] - 40:10, 40:21, 41:2, 41:6
**lists** [4] - 17:11, 18:2, 33:16, 40:25
**literal** [1] - 10:21
**litigating** [1] - 9:10
**LITIGATION** [1] - 1:4
**litigation** [13] - 12:6, 13:8, 13:15, 42:3, 42:14, 42:16, 43:5, 43:8, 43:22, 44:25, 45:19, 46:10, 46:12
**litigations** [1] - 13:5
**live** [2] - 13:11, 14:17
**LLC** [3] - 1:11, 1:17, 2:15
**LLP** [5] - 2:9, 2:12, 2:16, 2:19, 2:23
**located** [1] - 23:4
**loggerheads** [1] - 16:2
**logistical** [10] - 4:20, 4:24, 6:19, 7:13, 8:11, 10:24, 15:23, 17:25, 23:24, 25:16
**logistics** [2] - 14:3, 34:12
**long-winded** [1] - 13:13
**look** [8] - 18:3, 20:6, 28:18, 42:24, 44:13, 45:3, 45:7, 49:4
**looked** [1] - 50:19
**looking** [8] - 5:5, 8:7, 30:9, 45:4, 45:5,

45:23, 45:25, 46:15
**Lori** [3] - 3:20, 41:15, 46:14
**LORI** [1] - 2:12
**Los** [1] - 2:18
**lose** [1] - 18:21
**loss** [4] - 37:19, 44:18, 46:5, 48:14
**lost** [1] - 9:12
**lottery** [1] - 17:5
**Louisiana** [1] - 1:19
**low** [1] - 37:7
**low-hanging** [1] - 37:7
**Ltd** [1] - 2:14

### M

**MAGISTRATE** [1] - 1:8
**magnify** [1] - 9:3
**magnitude** [1] - 11:10
**Mahanti** [1] - 22:5
**main** [3] - 10:7, 19:5, 19:12
**major** [2] - 19:24, 37:8
**management** [8] - 5:22, 38:20, 40:3, 40:22, 41:7, 41:10, 41:22, 44:13
**manufacturers** [2] - 24:10, 44:21
**March** [1] - 47:9
**Margaret** [1] - 40:9
**market** [1] - 12:11
**Market** [1] - 1:15
**MARLENE** [1] - 2:6
**Marlene** [2] - 33:17, 39:5
**masse** [1] - 35:16
**massive** [2] - 44:23
**material** [1] - 36:11
**matter** [2] - 17:6, 51:18
**matters** [6] - 39:20, 51:3, 51:4, 51:6, 51:8
**mature** [1] - 42:4
**maturing** [1] - 42:4
**MAZIE** [1] - 1:11
**MDL** [4] - 3:4, 11:10, 42:19, 47:7
**Meade** [2] - 39:23, 40:9
**mean** [17] - 7:21, 10:21, 10:22, 17:9, 18:1, 20:5, 20:9, 21:8, 24:9, 25:12, 25:15, 26:6, 26:15, 27:9, 27:11, 47:18, 50:23

**meaningful** [4] - 7:18, 8:3, 16:20, 27:25
**meaningfully** [2] - 14:11, 27:19
**means** [2] - 15:13, 23:14
**mechanical** [1] - 1:25
**medical** [5] - 36:21, 37:10, 37:18, 48:14, 48:25
**meet** [25] - 4:25, 6:13, 7:18, 8:4, 8:18, 10:23, 11:13, 15:7, 15:11, 15:25, 16:20, 20:18, 23:2, 24:20, 27:1, 27:19, 27:25, 29:14, 31:5, 32:3, 33:2, 33:20, 35:1, 42:24, 44:9
**meet-and-confer** [7] - 6:13, 7:18, 8:4, 10:23, 15:25, 16:20, 20:18
**meeting** [1] - 25:22
**Mefford** [1] - 40:13
**MEFFORD** [1] - 40:13
**merits** [2] - 31:6, 32:2
**Mets** [1] - 50:12
**mid** [1] - 49:17
**middle** [1] - 37:1
**might** [4] - 7:13, 9:19, 30:13, 49:9
**millions** [2] - 12:10
**Min** [1] - 22:4
**mind** [2] - 14:13, 49:4
**Minneapolis** [1] - 2:7
**Minnesota** [1] - 2:7
**missing** [1] - 33:11
**mode** [1] - 46:10
**model** [1] - 43:25
**moment** [4] - 10:17, 10:19, 42:23, 51:4
**moments** [1] - 45:9
**momentum** [1] - 8:2
**money** [1] - 13:8
**monitoring** [5] - 36:21, 37:10, 37:18, 48:14, 49:1
**month** [3] - 7:22, 16:18, 18:21
**months** [8] - 14:2, 15:1, 21:24, 28:12, 29:6, 42:18, 42:19, 47:7
**morass** [1] - 5:3
**morning** [14] - 3:9, 3:11, 3:13, 3:15, 3:18, 3:20, 3:22, 3:25, 33:19, 39:23, 39:24, 41:16, 41:17,

42:5
**MORRIS** [1] - 2:9
**Morris** [1] - 41:21
**most** [3] - 29:9, 31:11, 31:16
**motion** [2] - 39:18, 45:20
**motions** [8] - 5:15, 5:16, 5:18, 14:1, 42:18, 45:23, 45:24, 48:20
**moved** [3] - 16:13, 16:14, 16:15
**movement** [1] - 38:23
**moving** [4] - 36:23, 37:5, 37:6, 43:10
**MR** [67] - 3:9, 3:11, 3:13, 3:18, 3:22, 6:3, 8:14, 10:14, 13:19, 14:20, 16:9, 16:12, 16:14, 17:8, 19:15, 19:19, 21:15, 22:15, 22:20, 23:7, 23:8, 24:4, 24:6, 24:12, 25:20, 26:11, 26:16, 26:17, 26:20, 26:25, 27:13, 27:17, 28:7, 28:10, 28:22, 29:12, 29:18, 31:2, 31:10, 32:5, 32:9, 32:11, 32:14, 33:10, 33:17, 34:9, 35:8, 35:22, 35:24, 36:1, 36:3, 37:17, 38:17, 38:24, 39:10, 39:15, 39:21, 40:18, 41:5, 43:13, 43:16, 48:8, 50:7, 50:8, 50:13, 50:17, 50:21
**MS** [10] - 3:15, 3:20, 3:25, 33:19, 34:3, 39:5, 41:14, 41:18, 46:13, 50:6
**MSP** [1] - 31:13
**multi** [1] - 20:17
**mute** [1] - 27:21
**Mylan** [4] - 2:25, 10:11, 21:21, 22:4

## N

**nadir** [1] - 45:1
**name** [2] - 3:7, 3:8
**names** [3] - 3:5, 4:4,

18:2
**narrow** [3] - 15:13, 15:18, 30:2
**narrowed** [1] - 23:22
**NE** [1] - 2:13
**necessary** [2] - 30:20, 49:18
**need** [25] - 6:7, 6:17, 12:8, 12:23, 13:17, 15:5, 17:24, 18:1, 18:10, 18:20, 18:22, 19:22, 20:2, 21:2, 21:7, 21:8, 36:4, 36:15, 38:18, 42:23, 44:14, 44:25, 46:2, 49:8, 49:19
**needs** [8] - 15:4, 15:8, 15:15, 23:25, 30:24, 31:14, 49:16, 49:25
**nervous** [1] - 4:17
**never** [6] - 10:13, 11:13, 28:3, 29:1, 44:10, 44:11
**new** [2] - 29:16, 51:8
**NEW** [1] - 1:1
**New** [3] - 1:13, 1:19, 7:7
**newer** [1] - 42:15
**next** [8] - 5:6, 6:8, 28:10, 33:5, 41:10, 45:20, 45:24, 49:17
**nice** [2] - 20:19, 34:2
**NIGH** [2] - 2:3, 3:13
**Nigh** [1] - 3:13
**night** [3] - 44:11, 49:11, 50:20
**nine** [5] - 40:1, 40:4, 41:3
**nonetheless** [1] - 21:20
**normal** [1] - 12:6
**nothing** [4] - 29:5, 50:7, 50:13, 50:18
**notice** [1] - 26:8
**notices** [4] - 9:7, 16:6, 16:8, 19:20
**notified** [1] - 33:23
**November** [6] - 45:9, 47:3, 47:4, 47:8, 49:13, 49:14, 49:20, 49:21
**NUMBER** [1] - 1:3
**number** [11] - 21:20, 21:21, 23:15, 24:1, 29:20, 30:6, 30:8, 33:21, 39:19, 40:15

## O

**o'clock** [1] - 4:7

**objection** [4] - 31:6, 40:5, 40:7, 47:13
**objections** [5] - 4:10, 16:8, 16:18, 33:15, 33:25
**obligation** [2] - 17:13, 37:23
**obtain** [3] - 31:23, 32:17, 32:24
**obtained** [2] - 29:3, 29:10
**obviously** [15] - 7:5, 9:23, 10:4, 11:21, 21:9, 29:4, 37:19, 42:3, 42:13, 42:19, 42:23, 43:17, 43:18, 46:16, 48:21
**occur** [1] - 7:19
**occurring** [2] - 6:15, 18:18
**October** [10] - 24:19, 24:22, 25:2, 25:10, 28:4, 35:3, 35:5, 37:1, 40:3, 41:7
**odds** [1] - 19:12
**OF** [1] - 1:1
**offhand** [1] - 21:25
**Official** [1] - 1:23
**oftentimes** [2] - 8:19, 9:11
**OH** [1] - 2:21
**omnibus** [1] - 28:3
**once** [4] - 21:12, 25:25, 27:4, 46:9
**one** [34] - 6:23, 7:15, 9:13, 10:10, 10:11, 14:23, 17:18, 19:1, 19:11, 22:23, 23:16, 27:3, 28:1, 29:13, 29:15, 31:7, 31:11, 32:24, 33:12, 34:19, 35:10, 35:22, 39:22, 40:20, 41:2, 41:18, 41:22, 42:2, 48:12, 48:18, 49:2
**One** [1] - 2:24
**ones** [3] - 6:17, 6:18, 40:8
**open** [1] - 9:12
**opening** [1] - 46:22
**openness** [1] - 18:14
**operating** [1] - 24:12
**operations** [2] - 6:20, 6:21
**opportunity** [2] - 45:21, 46:11
**oppose** [1] - 23:9
**opposed** [3] - 9:4, 47:19, 48:5
**order** [18] - 4:7, 6:18,

8:3, 10:25, 11:14, 12:23, 16:19, 17:20, 22:8, 24:20, 33:14, 34:8, 34:21, 40:8, 44:14, 49:12, 49:14, 49:22
**orders** [4] - 38:19, 39:20, 40:2, 40:24
**orient** [1] - 13:15
**Orleans** [1] - 1:19
**otherwise** [2] - 5:16, 9:19
**ought** [1] - 34:5
**outside** [2] - 9:16, 29:25
**overall** [2] - 20:1, 41:19
**overseas** [1] - 9:25
**ownership** [1] - 40:10
**Oxford** [1] - 2:24

## P

**Page** [2] - 1:9, 40:16
**page** [1] - 44:5
**paid** [3] - 30:13, 30:17, 45:13
**PAPANTONIO** [1] - 2:2
**paper** [1] - 46:10
**parallel** [8] - 42:8, 42:9, 47:13, 48:6, 48:25, 49:8, 49:22, 49:23
**PAREKH** [1] - 32:5
**Park** [1] - 2:17
**Parkway** [1] - 1:12
**part** [4] - 5:6, 14:8, 46:5, 46:11
**particular** [1] - 18:5
**PARTIES** [1] - 3:1
**parties** [23] - 3:19, 4:9, 4:25, 5:3, 7:24, 8:11, 8:20, 8:23, 14:10, 14:13, 15:10, 16:1, 22:10, 23:2, 24:20, 27:18, 29:14, 31:6, 34:11, 34:22, 34:25, 37:14, 37:16
**party** [7] - 24:25, 28:21, 28:22, 31:19, 31:20, 32:21
**Pause** [1] - 38:13
**pay** [1] - 30:23
**payer** [1] - 28:22
**payor** [1] - 28:21
**pays** [3] - 30:12, 36:14, 37:21
**PC** [1] - 1:14
**Pennsylvania** [3] -

1:16, 2:10, 2:24
**Pensacola** [1] - 2:4
**people** [8] - 7:10, 12:15, 13:4, 17:3, 17:15, 18:3, 19:1, 19:5, 19:11, 19:17, 21:7, 22:14, 23:1, 27:14, 27:22, 45:13
**percent** [1] - 14:6
**perfect** [1] - 21:1
**period** [2] - 30:6, 30:8
**person** [11] - 7:6, 10:10, 10:11, 10:12, 17:22, 17:23, 23:4, 28:1, 28:2
**personal** [5] - 42:10, 43:5, 47:19, 48:6, 49:10
**perspective** [4] - 12:18, 12:19, 45:7, 46:3
**PFS** [3] - 28:16, 29:8, 29:9
**PFSs** [1] - 28:12
**Pharma** [1] - 2:15
**Pharmaceutical** [1] - 2:14
**Pharmaceuticals** [1] - 2:15
**pharmacy** [2] - 4:1, 32:18
**phase** [1] - 28:16
**Philadelphia** [2] - 1:16, 2:10
**Phillies** [1] - 50:11
**phone** [8] - 4:14, 5:14, 8:4, 14:16, 27:21, 27:22, 51:9
**PI** [3] - 47:15, 47:21, 48:25
**pick** [1] - 17:5
**picture** [1] - 7:23
**Piedmont** [1] - 2:13
**PIETRAGALLO** [1] - 2:23
**Pittsburgh** [1] - 2:24
**place** [8] - 8:3, 9:13, 16:17, 24:9, 43:1, 43:2, 43:11, 46:24
**placed** [1] - 8:23
**placeholder** [1] - 6:3
**places** [1] - 13:2
**plaintiff** [9] - 3:6, 6:10, 10:5, 19:3, 24:19, 28:1, 30:1, 47:4, 47:20
**Plaintiff** [5] - 1:13, 1:16, 1:19, 2:4, 2:8
**plaintiffs** [46] - 3:10, 3:12, 3:14, 3:16,

*5:25, 6:15, 8:18, 9:5, 14:23, 15:5, 15:21, 15:24, 16:6, 19:4, 22:14, 22:24, 23:1, 23:14, 29:2, 29:17, 29:22, 30:15, 30:23, 31:1, 32:2, 32:7, 32:8, 32:17, 32:24, 33:7, 34:23, 36:17, 36:21, 37:7, 37:10, 37:13, 39:4, 42:21, 43:12, 44:9, 45:8, 45:10, 46:22, 48:15, 49:12, 50:8*
**plaintiffs'** [15] - 12:18, 15:15, 21:17, 24:25, 26:12, 27:1, 27:20, 27:24, 29:21, 29:25, 30:2, 31:9, 40:5, 43:21, 48:13
**plan** [4] - 20:22, 36:5, 36:12, 37:20
**plans** [5] - 30:4, 30:5, 30:8, 30:18, 36:14
**plenty** [1] - 47:4
**PLLC** [1] - 2:5
**point** [19] - 8:25, 11:5, 12:20, 17:10, 17:24, 20:10, 22:3, 22:8, 32:15, 36:9, 42:3, 44:1, 44:8, 44:12, 45:1, 45:2, 46:11, 46:20, 48:9
**points** [3] - 25:20, 43:19, 46:14
**portion** [1] - 4:10
**position** [2] - 13:23, 24:13
**possess** [1] - 32:22
**possibility** [1] - 9:15
**possible** [2] - 12:24, 45:6
**possibly** [1] - 9:15
**posturing** [1] - 14:22
**potential** [1] - 15:16
**potentially** [1] - 7:11
**practice** [2] - 9:24, 45:20
**precisely** [1] - 22:6
**prefer** [1] - 15:11
**prejudice** [9] - 19:3, 19:4, 19:17, 22:12, 23:1, 23:14, 24:18, 27:24, 34:24
**preliminary** [1] - 24:18
**prepared** [1] - 35:12
**preparing** [1] - 8:22
**prescribed** [1] - 30:15
**present** [1] - 9:2
**presentation** [2] -

15:16, 15:21
**presented** [1] - 42:21
**pressure** [1] - 45:1
**presupposed** [1] - 17:12
**pretty** [5] - 5:9, 19:12, 25:1, 25:10, 50:19
**previous** [1] - 38:20
**pricing** [1] - 30:18
**primary** [1] - 8:17
**priorities** [1] - 21:22
**prioritization** [3] - 9:14, 18:6, 18:18
**prioritizations** [1] - 7:1
**prioritize** [5] - 7:8, 7:10, 21:20, 23:12, 37:18
**prioritized** [1] - 7:4
**prioritizing** [1] - 15:22
**priority** [3] - 6:17, 22:13, 22:24
**problem** [2] - 17:17
**problems** [4] - 4:20, 4:22, 4:24, 25:17
**procedural** [1] - 8:11
**proceed** [6] - 5:22, 10:22, 15:18, 38:3, 38:8, 48:25
**proceeding** [4] - 24:13, 44:16, 44:17, 44:19
**proceedings** [1] - 51:18
**Proceedings** [1] - 1:25
**process** [13] - 6:14, 10:23, 11:8, 11:17, 13:2, 16:1, 18:11, 18:13, 19:18, 20:18, 23:6, 23:18, 25:2
**produced** [2] - 1:25, 32:16
**producing** [4] - 35:13, 35:15, 45:8, 45:9
**production** [6] - 7:9, 13:23, 18:14, 18:17, 20:1, 22:17
**productions** [5] - 6:15, 7:1, 14:25, 15:3, 18:5
**productive** [2] - 4:15, 9:9
**PRODUCTS** [1] - 1:3
**promised** [1] - 12:21
**prongs** [1] - 20:17
**proper** [2] - 23:15, 31:25
**proposal** [5] - 9:4, 15:5, 15:25, 22:13,

34:17
**proposals** [2] - 14:23, 44:22
**proposed** [5] - 34:25, 46:9, 47:2, 49:3, 49:11
**proposing** [4] - 17:9, 19:21, 22:7, 45:4
**prosecution** [1] - 23:12
**protocol** [6] - 6:4, 7:17, 7:25, 14:2, 25:5, 34:12
**prove** [1] - 31:23
**provide** [4] - 5:23, 15:6, 47:5, 47:7
**provided** [3] - 32:16, 32:23, 46:4
**provider** [1] - 32:19
**PSS** [1] - 28:13
**PSSs** [1] - 32:16
**purpose** [2] - 36:6
**purposes** [2] - 10:15, 23:12
**push** [5] - 7:13, 11:5, 13:16, 17:19, 45:25
**pushed** [2] - 24:24, 45:18
**pushes** [1] - 45:6
**put** [8] - 13:12, 15:21, 16:22, 20:3, 41:19, 44:16, 46:10, 48:19
**putting** [2] - 17:24, 31:22
**puzzling** [1] - 43:20

**Q**

**questions** [2] - 11:24, 45:12
**quickly** [2] - 19:21, 46:14
**quite** [1] - 9:13
**quote** [3] - 42:6, 42:7, 46:17

**R**

**raise** [2] - 14:9, 41:23
**raised** [3] - 4:11, 6:12, 48:12
**Ranitidine** [2] - 42:14, 43:8
**RASPANTI** [1] - 2:23
**rather** [1] - 38:9
**Rawjee** [1] - 22:5
**RE** [1] - 1:3
**reach** [3] - 28:6, 28:18, 39:8
**reaching** [2] - 20:14,

42:17
**reaction** [3] - 18:24, 28:15, 31:7
**read** [1] - 20:3
**ready** [4] - 37:12, 38:3, 45:8, 45:9
**real** [5] - 8:25, 9:1, 10:19, 15:9, 45:12
**realize** [1] - 12:9
**really** [28] - 6:7, 6:16, 7:24, 8:20, 12:3, 12:14, 12:19, 13:14, 13:23, 14:4, 15:9, 21:11, 21:23, 23:25, 30:2, 34:21, 37:8, 43:24, 44:2, 44:14, 44:15, 44:25, 46:4, 46:20, 46:24, 49:6
**rearguing** [1] - 36:9
**reason** [3] - 34:15, 47:6, 48:24
**reasonable** [1] - 34:19
**reasons** [1] - 42:2
**received** [2] - 4:5, 22:18
**recently** [1] - 42:22
**recipe** [1] - 46:10
**recognition** [2] - 4:19, 4:24
**recognize** [1] - 4:22
**recommending** [1] - 22:9
**reconvening** [1] - 38:9
**record** [3] - 3:3, 29:19, 51:18
**recorded** [1] - 1:25
**records** [6] - 32:18, 32:19, 32:24, 36:20, 37:4
**reference** [1] - 27:9
**refrains** [1] - 41:23
**refund** [1] - 30:23
**refunded** [1] - 37:21
**regarding** [2] - 25:23, 27:2
**regular** [1] - 7:21
**rehash** [1] - 44:2
**related** [3] - 3:19, 6:9, 7:16
**relatively** [1] - 5:8
**relevant** [3] - 30:5, 30:8, 36:12
**remain** [1] - 39:2
**remaining** [3] - 33:22, 40:8, 40:25
**remember** [4] - 11:16, 17:18, 18:3, 21:25
**remind** [1] - 23:20
**reminder** [1] - 21:17
**removed** [2] - 39:25,

40:21
**rep** [1] - 29:17
**replacement** [2] - 30:14, 30:17
**reporter** [1] - 3:7
**Reporter** [1] - 1:23
**Reporter/ Transcriber** [1] - 51:20
**reports** [3] - 47:6, 47:10, 49:17
**representative** [5] - 5:7, 9:15, 10:6, 30:12, 30:21
**representative's** [1] - 30:3
**representatives** [6] - 7:11, 30:7, 31:3, 31:25, 36:8, 36:13
**reps** [6] - 32:12, 34:15, 35:13, 35:16, 35:19, 45:15
**request** [10] - 6:10, 19:13, 23:2, 28:11, 28:21, 29:16, 30:10, 31:8, 40:2, 48:3
**requested** [2] - 9:17, 36:6
**requesting** [3] - 33:15, 40:24, 41:6
**requests** [10] - 28:11, 29:20, 29:23, 29:25, 30:1, 31:12, 32:7, 33:7, 34:7, 36:22
**required** [3] - 21:4, 29:4, 31:20
**requirements** [1] - 36:8
**research** [1] - 15:2
**reserve** [1] - 23:16
**resist** [1] - 50:15
**resolve** [1] - 15:12
**resources** [3] - 14:12, 14:13, 49:24
**respect** [5] - 11:6, 22:3, 32:14, 40:25, 48:20
**respects** [1] - 21:23
**respond** [7] - 10:17, 13:19, 14:21, 15:9, 19:21, 46:13, 46:23
**RESPONSE** [1] - 51:13
**response** [5] - 11:13, 18:7, 22:1, 38:20, 39:3
**responses** [1] - 28:13
**result** [2] - 30:22, 48:19
**retailer** [1] - 4:1

**returnable** *[1]* - 40:3
**review** *[2]* - 30:20, 36:10
**reviewed** *[1]* - 4:6
**rights** *[1]* - 23:16
**ringing** *[1]* - 27:21
**ripe** *[1]* - 7:17
**Rite** *[1]* - 4:2
**RMR** *[1]* - 51:20
**Road** *[1]* - 2:13
**road** *[1]* - 25:10
**roadblocks** *[1]* - 4:23
**ROBERT** *[1]* - 1:9
**roll** *[5]* - 7:25, 8:12, 14:10, 34:11, 35:1
**rolling** *[2]* - 19:25, 22:17
**room** *[4]* - 11:21, 13:10, 14:15, 20:3
**Rose** *[1]* - 40:20
**Roseland** *[1]* - 1:13
**Rosenberg** *[1]* - 42:15
**Ruben** *[3]* - 3:11, 21:15, 32:15
**RUBEN** *[1]* - 1:15
**Rule** *[2]* - 36:8, 36:16
**rules** *[1]* - 31:21
**running** *[1]* - 45:10

## S

**safe** *[2]* - 51:1, 51:11
**salvo** *[1]* - 46:22
**SARAH** *[1]* - 2:17
**Sarah** *[1]* - 4:1
**sartan** *[1]* - 30:13
**sartans** *[2]* - 30:3, 30:17
**satisfy** *[1]* - 36:8
**Saturday** *[6]* - 9:9, 15:20, 23:20, 23:25, 25:24, 48:11
**saw** *[2]* - 31:7, 44:11
**scare** *[1]* - 50:23
**scared** *[1]* - 50:21
**scaring** *[1]* - 50:21
**schedule** *[22]* - 6:25, 35:11, 41:20, 41:22, 42:17, 42:21, 42:22, 43:6, 44:6, 44:9, 44:10, 44:23, 45:3, 45:5, 45:18, 46:3, 46:6, 46:9, 47:2, 48:10, 48:19, 49:2
**scheduled** *[2]* - 37:13, 49:25
**schedules** *[2]* - 8:5, 47:24
**scheduling** *[2]* - 8:21, 37:13

**SCHNEIDER** *[49]* - 1:8, 3:3, 3:17, 4:3, 7:15, 9:21, 13:20, 16:5, 16:11, 16:13, 16:15, 18:23, 19:8, 19:16, 22:11, 22:19, 22:22, 24:3, 24:5, 24:7, 24:16, 26:9, 26:15, 26:19, 26:21, 27:8, 27:16, 27:18, 28:8, 28:20, 29:11, 29:13, 30:25, 31:4, 32:1, 32:6, 32:10, 32:13, 33:3, 33:14, 34:1, 34:4, 34:10, 35:21, 35:23, 35:25, 36:2, 36:18, 37:24
**Schneider** *[7]* - 41:23, 41:24, 42:5, 46:1, 47:12, 48:11, 50:16
**science** *[2]* - 48:22, 48:23
**second** *[3]* - 29:13, 39:23, 41:1
**Section** *[1]* - 25:22
**see** *[10]* - 4:9, 13:2, 15:12, 15:13, 22:16, 37:18, 44:4, 47:6, 48:18, 50:25
**seem** *[2]* - 9:7, 16:1
**segment** *[1]* - 44:25
**sense** *[4]* - 10:21, 15:23, 21:10, 44:21
**sent** *[3]* - 21:18, 29:1, 44:10
**separate** *[4]* - 8:4, 33:6, 35:3, 38:9
**separately** *[1]* - 10:6
**September** *[3]* - 1:6, 3:1, 51:22
**serve** *[4]* - 16:6, 16:7, 28:11, 29:23
**served** *[8]* - 25:1, 25:2, 28:14, 28:25, 29:3, 29:20, 31:12
**service** *[1]* - 49:17
**serving** *[2]* - 19:20, 31:9
**session** *[1]* - 41:25
**sessions** *[2]* - 8:4, 15:12
**set** *[9]* - 9:20, 30:9, 30:19, 34:19, 40:23, 44:6, 46:6, 49:2, 49:25
**Seth** *[5]* - 3:18, 8:14, 23:8, 29:19, 48:8
**SETH** *[1]* - 2:9
**sets** *[1]* - 48:16
**seven** *[3]* - 16:24,

20:24
**several** *[1]* - 21:16
**share** *[1]* - 20:21
**sheet** *[3]* - 29:21, 29:25, 30:1
**shift** *[3]* - 40:7, 41:1, 41:9
**shifting** *[1]* - 51:7
**shoes** *[1]* - 18:24
**shoot** *[1]* - 11:4
**short** *[1]* - 38:4
**show** *[11]* - 4:7, 33:14, 34:8, 38:19, 39:20, 40:2, 40:8, 40:24, 41:6, 45:13, 48:15
**shut** *[2]* - 18:4, 36:2
**sick** *[1]* - 45:14
**side** *[6]* - 8:21, 10:14, 21:17, 40:23, 43:21, 47:17
**sides** *[4]* - 11:20, 13:9, 27:25, 33:20
**significant** *[1]* - 43:23
**similar** *[2]* - 31:12, 47:24
**similarities** *[1]* - 49:5
**similarity** *[1]* - 43:22
**simple** *[1]* - 30:22
**sit** *[5]* - 11:23, 17:21, 18:25, 19:10, 20:2
**sitting** *[1]* - 13:10
**situation** *[1]* - 12:3
**six** *[2]* - 20:23, 20:24
**slate** *[1]* - 16:21
**Slater** *[22]* - 3:9, 5:25, 8:10, 9:22, 10:3, 14:21, 16:19, 18:23, 19:8, 23:3, 23:24, 25:13, 27:11, 27:12, 28:9, 33:6, 33:9, 35:9, 42:22, 43:13, 48:12, 50:15
**SLATER** *[24]* - 1:11, 1:12, 3:9, 6:3, 10:14, 17:8, 19:15, 19:19, 23:7, 26:17, 26:20, 27:13, 28:7, 28:10, 28:22, 33:10, 33:17, 35:8, 38:17, 43:13, 43:16, 50:8, 50:17, 50:21
**Slater's** *[1]* - 27:9
**sleeves** *[5]* - 7:25, 8:12, 14:10, 34:12, 35:1
**slow** *[1]* - 42:8
**smoother** *[1]* - 10:25
**snap** *[1]* - 18:21
**sold** *[1]* - 12:10
**someone** *[4]* - 20:25,

21:5, 21:10, 35:6
**sometime** *[1]* - 49:17
**sometimes** *[1]* - 15:10
**somewhere** *[2]* - 24:3, 24:5
**soon** *[7]* - 13:24, 25:1, 38:10, 38:11, 45:17, 45:24, 51:11
**sorry** *[9]* - 16:15, 26:9, 26:20, 33:12, 35:6, 35:8, 35:23, 35:24, 50:15
**sort** *[11]* - 10:18, 11:7, 17:5, 17:7, 19:18, 22:5, 22:6, 31:21, 34:10, 42:1, 43:23
**sorts** *[2]* - 17:25, 28:23
**sounds** *[3]* - 4:3, 23:7, 50:1
**source** *[2]* - 31:16, 34:2
**Spain** *[1]* - 13:2
**speaks** *[1]* - 12:25
**special** *[1]* - 25:7
**speciality** *[1]* - 47:11
**specific** *[3]* - 21:21, 22:1, 47:10
**spend** *[1]* - 10:4
**spill** *[1]* - 35:18
**stage** *[3]* - 17:3, 18:7, 47:6
**stand** *[1]* - 7:3
**standpoint** *[1]* - 8:16
**Stano** *[2]* - 38:21, 39:16
**STANO** *[1]* - 38:21
**start** *[37]* - 5:5, 5:25, 13:14, 13:18, 14:1, 16:17, 16:22, 19:16, 20:13, 20:14, 20:21, 21:4, 24:3, 24:5, 24:7, 24:9, 34:14, 34:15, 34:17, 34:20, 35:12, 35:15, 36:19, 36:22, 37:4, 37:12, 37:23, 41:12, 42:18, 44:9, 45:8, 45:9, 45:10, 45:16, 49:8, 51:7
**started** *[7]* - 17:7, 23:6, 23:18, 25:21, 42:9, 47:23
**starting** *[6]* - 5:1, 12:20, 17:10, 18:1, 35:16, 46:20
**statements** *[1]* - 40:22
**States** *[5]* - 7:5, 12:11, 12:13, 13:6, 17:24
**STATES** *[3]* - 1:1, 1:8,

1:9
**status** *[3]* - 7:1, 49:20, 49:21
**STATUS** *[1]* - 1:5
**stay** *[4]* - 8:8, 51:1, 51:11
**stenography** *[1]* - 1:25
**Steve** *[3]* - 38:24, 39:21, 40:18
**STEVEN** *[1]* - 2:13
**still** *[5]* - 18:16, 19:24, 38:19, 39:2, 43:5
**stonewalled** *[1]* - 18:15
**stood** *[1]* - 47:18
**stop** *[1]* - 12:8
**straightforward** *[2]* - 5:8, 45:11
**streak** *[1]* - 50:25
**Street** *[4]* - 1:15, 1:18, 2:10, 2:20
**structure** *[2]* - 42:20, 43:11
**structured** *[1]* - 48:4
**studies** *[1]* - 11:18
**subject** *[2]* - 22:15, 24:17
**submission** *[4]* - 15:21, 30:10, 30:11, 36:10
**submitted** *[3]* - 41:20, 44:22, 49:11
**subpoena** *[2]* - 31:9, 32:21
**subpoenas** *[1]* - 25:1
**subsequent** *[1]* - 40:22
**subsidiaries** *[1]* - 6:20
**substantial** *[1]* - 4:22
**substantive** *[3]* - 4:19, 8:10, 45:12
**substantively** *[1]* - 26:22
**suggest** *[4]* - 17:10, 27:25, 38:1, 46:23
**suggested** *[1]* - 25:6
**suggesting** *[1]* - 15:8
**suggestion** *[3]* - 15:24, 16:21, 22:6
**suite** *[1]* - 2:21
**Suite** *[5]* - 1:15, 2:3, 2:7, 2:13, 2:17
**sum** *[1]* - 34:10
**summary** *[1]* - 5:12
**supplement** *[1]* - 34:24
**supplied** *[1]* - 44:3
**suppose** *[1]* - 45:14
**supposed** *[2]* - 28:16,

34:17
**surpass** [1] - 25:17
**surprised** [2] - 5:17, 28:15
**surprising** [1] - 17:11
**Susan** [1] - 40:13
**suspects** [1] - 38:15
**Swiss** [1] - 9:25
**Switzerland** [1] - 10:1

## T

**table** [1] - 4:13
**target** [2] - 14:6, 44:18
**targets** [1] - 24:10
**team** [2] - 22:16, 37:12
**Teams** [1] - 11:22
**teams** [1] - 10:14
**technology** [1] - 13:9
**tee** [2] - 32:3, 33:4
**TELEPHONE** [1] - 3:1
**telephone** [1] - 1:5
**ten** [2] - 19:5, 19:11
**tend** [1] - 41:23
**tens** [1] - 12:10
**terms** [13] - 8:21, 8:22, 10:21, 10:22, 12:16, 20:1, 21:10, 23:16, 26:7, 26:8, 36:16, 43:10, 44:16
**terrifically** [1] - 11:15
**testify** [1] - 27:14
**Teva** [6] - 2:14, 2:15, 3:21, 10:10, 20:24, 21:21
**TEVA** [1] - 38:25
**texted** [1] - 38:3
**Thanksgiving** [2] - 35:13, 35:16
**THE** [3] - 1:1, 1:8, 1:9
**the court** [20] - 3:7, 5:2, 5:12, 8:5, 8:17, 8:24, 11:11, 12:23, 13:16, 15:21, 22:7, 24:13, 25:13, 32:20, 36:10, 42:8, 43:8, 45:5, 49:21
**themselves** [2] - 30:10, 37:15
**Therese** [2] - 38:21, 39:17
**THERESE** [1] - 38:22
**they've** [4] - 6:11, 15:1, 37:3, 39:10
**third** [5] - 24:25, 28:21, 28:22, 31:20, 32:21
**third-party** [3] - 24:25, 28:21, 28:22
**THORNBURG** [1] -

2:16
**thoughts** [1] - 25:19
**thousands** [1] - 47:21
**three** [3] - 14:2, 45:20, 46:12
**throughout** [3] - 30:5, 30:7, 30:8
**tied** [1] - 12:16
**tiers** [1] - 30:18
**today** [6] - 6:7, 22:24, 23:21, 28:18, 41:12, 50:11
**together** [3] - 12:17, 14:2, 25:6
**tomorrow** [2] - 16:5, 37:11
**took** [1] - 27:9
**top** [2] - 8:8, 20:11
**Torrent** [1] - 21:21
**touch** [2] - 4:9, 38:7
**towards** [1] - 49:20
**TPP** [2] - 29:14, 32:12
**TPPs** [2] - 29:7, 31:12
**track** [8] - 5:15, 42:8, 42:10, 43:6, 46:8, 48:25, 49:8, 49:23
**transcript** [4] - 1:25, 44:3, 46:15, 51:17
**transcription** [1] - 1:25
**translation** [2] - 9:12, 20:15
**translator** [1] - 21:2
**translators** [1] - 20:15
**transparent** [5] - 6:14, 12:5, 12:24, 18:11, 18:13
**TRAURIG** [1] - 2:12
**Traurig** [3] - 38:25, 39:22, 41:16
**tremendous** [1] - 11:18
**trial** [3] - 44:19, 45:3, 45:6
**trials** [1] - 51:5
**TRISCHLER** [1] - 2:23
**try** [6] - 34:3, 35:1, 35:17, 44:7, 45:1, 45:21
**trying** [4] - 13:21, 15:9, 29:6
**turn** [1] - 20:25
**turning** [1] - 31:21
**two** [19] - 7:22, 16:9, 16:12, 16:13, 16:14, 16:15, 18:21, 24:21, 27:19, 27:20, 32:4, 33:5, 34:25, 38:19, 38:23, 39:9, 39:14, 44:1, 44:12

**type** [1] - 46:7
**types** [2] - 46:25, 47:5

## U

**U.S** [4] - 6:21, 6:23, 11:17, 13:1
**ULMER** [1] - 2:19
**unbeatable** [1] - 50:24
**under** [2] - 24:12, 41:20
**unfair** [1] - 48:21
**unforeseen** [1] - 34:13
**United** [5] - 7:5, 12:11, 12:13, 13:5, 17:24
**UNITED** [3] - 1:1, 1:8, 1:9
**universe** [1] - 47:16
**unless** [6] - 6:5, 8:8, 12:16, 33:11, 33:23
**up** [24] - 5:21, 7:25, 8:12, 8:24, 11:5, 12:2, 12:17, 13:16, 14:3, 14:10, 32:4, 33:4, 34:10, 34:11, 35:1, 36:2, 38:2, 38:10, 42:2, 43:25, 46:7, 47:25, 49:25
**upcoming** [1] - 4:20
**update** [5] - 22:25, 39:22, 40:17, 40:19, 40:23
**updates** [4] - 39:1, 40:2, 41:3, 41:5
**upside** [1] - 31:22
**USA** [1] - 2:15
**usual** [1] - 38:15

## V

**VALSARTAN** [1] - 1:3
**Valsartan** [6] - 3:4, 30:3, 30:13, 30:17, 43:20, 48:17
**various** [2] - 10:15, 30:5
**verify** [1] - 22:20
**VIA** [1] - 3:1
**via** [2] - 14:17, 17:1
**Via** [1] - 1:5
**view** [2] - 22:17, 26:1
**Vine** [1] - 2:20
**Virginia** [1] - 40:12

## W

**wait** [1] - 18:1
**walk** [1] - 6:6
**Wang** [1] - 22:4
**wants** [2] - 6:5, 43:12

**waste** [1] - 16:18
**watershed** [1] - 10:18
**waylaid** [1] - 15:10
**ways** [1] - 47:24
**wed** [1] - 46:21
**Wednesday** [1] - 1:6
**week** [9] - 4:15, 5:14, 22:23, 22:24, 24:22, 27:20, 27:24, 33:21, 34:23
**weeks** [11] - 7:22, 15:25, 16:13, 16:14, 16:16, 24:21, 27:19, 27:20, 32:4, 33:5, 34:25
**welcome** [1] - 16:4
**Whiteley** [1] - 3:16
**WHITELEY** [3] - 1:17, 1:18, 3:15
**whoever's** [1] - 27:21
**whole** [4] - 7:24, 9:17, 10:1, 50:2
**wholesaler** [1] - 3:23
**willing** [1] - 35:15
**winded** [1] - 13:13
**winnowing** [2] - 46:17, 46:25
**wisdom** [1] - 25:11
**without-prejudice** [2] - 23:1, 24:18
**witness** [8] - 7:10, 13:10, 21:1, 25:25, 26:2, 27:4
**witness's** [1] - 14:24
**witnesses** [13] - 6:16, 6:23, 8:22, 12:25, 13:6, 15:16, 15:22, 17:14, 18:6, 20:3, 20:24, 26:13
**word** [2] - 10:20, 46:19
**world** [3] - 13:6, 14:14, 14:17
**worst** [1] - 17:21
**worth** [1] - 12:10
**worthwhile** [1] - 6:9
**write** [1] - 12:16
**writing** [2] - 20:4, 20:14
**written** [2] - 26:18, 26:25
**wrote** [1] - 6:25
**Wy** [1] - 22:4

## Y

**Yankee** [1] - 50:18
**Yankees** [1] - 50:19
**year** [20] - 5:6, 5:19, 7:20, 13:25, 14:25,

18:11, 29:10, 29:22, 29:24, 35:17, 43:2, 43:10, 44:7, 45:24, 46:7, 46:24, 49:17, 50:12, 51:9
**years** [2] - 45:20, 46:12
**yesterday** [4] - 4:6, 6:25, 15:22, 28:14

## Z

**Zantac** [6] - 42:14, 43:20, 47:24, 49:6, 49:7
**zero** [1] - 14:14
**ZHP** [14] - 2:11, 3:19, 4:21, 6:19, 10:4, 10:11, 14:5, 14:7, 15:18, 20:11, 20:24, 21:21, 22:3
**ZHP's** [2] - 6:25, 8:16
**zone** [1] - 21:2
**Zoom** [4] - 11:22, 14:17, 17:1, 51:9