# EXHIBIT C

2020 WL 2786926
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

David AFZAL, et. al., Plaintiffs,
v.
BMW OF NORTH AMERICA,
LLC., et al. Defendants.

Civil Action No. 15-8009
|
Filed 05/29/2020

**Attorneys and Law Firms**

Bruce Daniel Greenberg, Susana Cruz Hodge, Lite Depalma Greenberg, LLC, Newark, NJ, Joseph Bryce Kenney, Sauder Schelkopf LLC, Berwyn, PA, Matthew D. Schelkopf, McCune Wright Arevalo LLP, Berwyn, PA, Paul John Scarlato, Goldman Scarlato & Penny PC, Conshohocken, PA, for Plaintiff David Afzal.

Bruce Daniel Greenberg, Lite Depalma Greenberg, LLC, NEWARK, NJ, Matthew D. Schelkopf, McCune Wright Arevalo LLP, Berwyn, PA, Paul John Scarlato, Goldman Scarlato & Penny PC, Conshohocken, PA, for Plaintiff Angkhana Dechartivong.

Christopher J. Dalton, Rosemary Joan Bruno, Argia J. Dimarco, Buchanan, Ingersoll & Rooney, PC, Newark, NJ, Daniel Zev Rivlin, Buchanan, Ingersoll & Rooney, PC, New York, NY, Lauren Adornetto Woods, Buchanan Ingersoll & Rooney PC, Princeton, NJ, for Defendant BMW of North America, LLC.

**OPINION**

Arleo, United States District Judge

*1 THIS MATTER comes before the Court by way of Plaintiffs David Afzal's ("Afzal") and Angkhana Dechartivong's ("Dechartivong," and together with Afzal, "Plaintiffs") Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. ECF No. 157. Defendant BMW of North America, LLC, ("BMW" or "Defendant") opposes the motion. ECF No. 170. For the reasons that follow, Plaintiffs' Motion is denied.

**I. BACKGROUND**

**A. Factual Background**

This case concerns whether BMW defectively designed a car's engine so that a component wears out too quickly and failed to disclose that defect to purchasers.

Plaintiffs claim that BMW designed the S65 engine in its 2008-2013 M3 vehicles (the "Class Vehicles") with insufficient space (also known as clearance) between the rod and the metal component between the rod and the casing, known as the "bearing." Second Am. Compl. ("SAC") ¶¶ 2-3, ECF No. 32. As the bearings wear out, small pieces of metal debris circulate though the engine via contaminated engine oil, damaging other components, and can cause catastrophic engine failure, including while the vehicle is in operation. Id. ¶ 2. Plaintiffs contend BMW knew of this defect and failed to disclose it to Class Vehicle purchasers. Id. ¶ 73. Two Plaintiffs, both California residents who allegedly suffered premature rod bearing wear, bring this action on behalf of themselves and seek to represent two classes. Id. ¶¶ 17-25, 26-32.

**1. Plaintiff Afzal**

Afzal purchased a 2011 BMW M3 in a private sale in the summer of 2013. Afzal Dep. at 53:16-17, Rivlin Decl. Ex. 8, ECF No. 171.10. In May 2015, he "heard noises coming from the vehicle" that he "believe[d] were symptomatic of rod bearing wear." Id. at 79:10-18. Afzal twice took his vehicle to a BMW dealer and was told that the noise "was related to the [heat] expansion in the manifold" and not rod bearing wear. Id. at 82:4-9; 83:1-4. After his second visit to the BMW dealer, Afzal took his car to an independent service center, which diagnosed his problem as premature rod bearing wear and replaced his rod bearings. Id. at 84:6-85:3.

Afzal also made other modifications to his vehicle. He modified his transmission, the vehicle's software, and added an aftermarket air intake and exhaust. Id. 91:12-101:18. Invoices from an aftermarket supplier also suggest that Mr. Afzal used a supercharger on his vehicle. Harrington Report at 37, Rivlin Decl. Ex. 1, ECF No. 171.1.

**2. Plaintiff Dechartivong**

On December 24, 2014, Dechartivong purchased a 2011 M3 for her husband Andy Dechartivong ("Andy") from an authorized BMW dealer. Dechartivong Dep. at 22:6-10, Rivlin Decl. Ex. 10, ECF No. 171.12. On at least three occasions, Andy took his M3 to a racetrack and had his laps timed, either as part of a High-Performance Driving Education class or for an open track day event. Id. at 32:21-34:7. In preparation for some of these events, Andy modified the wheels and tires on his M3. Id. at 55:5-15. It was at one of these events at Sonoma raceway in Sonoma, California, that Dechartivong's M3 broke down. Id. at 42:11-18, 50:18-51:1. Andy initially took his Class Vehicle to an independent BMW shop, which dismantled the engine, told him it had seized "due to the rod bearings," and recommended replacing the entire engine. Id. at 63:10-21. Andy then towed his M3 to a BMW dealer for inspection, before having it towed to his garage, where it has sat ever since. Id. at 63:25-64:6; 65:8-15. Andy died in December 2018, and the Court substituted his wife Angkhana as a named plaintiff on August 12, 2019. ECF No. 163.

### B. Procedural History

*2 Plaintiffs filed this action on November 10, 2015. Compl., ECF No. 1. BMW moved to dismiss several of Plaintiffs' original claims for failure to state a claim, and on October 17, 2016, the Court granted BMW's motion in part, dismissing Plaintiffs' breach of implied warranty, Song-Beverly Act, Consumer Legal Remedies Act, False Advertising Law, Unfair Competition Law and common law fraud claims, without prejudice. Afzal v. BMW of N. Am., LLC, ("Afzal I"), No. 15-8009, 2016 WL 6126913, at *10 (D.N.J. Oct. 17, 2016).

Plaintiffs filed the operative SAC on December 6, 2016, asserting eleven causes of action, all under California law. They claim that BMW's defective design of the rod bearings and failure to disclose this defect to purchasers gives rise to claims under: (1) the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., SAC ¶¶ 110-22; (2) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, for a fraudulent business practice, SAC ¶¶ 123-31; (3) violation of the UCL for an unlawful business practice, id. ¶¶ 132-37; (4) violation of the UCL for an unfair business practice, id. ¶¶ 138-45; (5) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., SAC ¶¶ 146-52; (6) breach of express warranty, SAC ¶¶ 153-61; (7) breach of the implied warranty of merchantability and fitness for purpose, on behalf of Dechartivong only, id. ¶¶ 162-67; (8) breach of a written warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., SAC ¶¶ 168-79; (9) violation of the Song-Beverly Act, Cal. Civ. Code §§ 1791.1, 1792 et seq., on behalf of Dechartivong only, SAC ¶¶ 180-86; (10) breach of the implied covenant of good faith and fair dealing, id. ¶¶ 187-90; and (11) common law fraud, id. ¶¶ 191-95.

BMW moved to dismiss the SAC on December 20, 2016. ECF Nos. 17, 19. The Court denied that motion on July 27, 2017. Afzal v. BMW of N. Am., LLC, ("Afzal II"), No. 15-8009, 2017 WL 3207232, at *7 (D.N.J. July 27, 2017). BMW answered the SAC on October 20, 2017, and after taking discovery, Plaintiffs filed this Motion for Class Certification on June 29, 2019.

### II. LEGAL STANDARD

Every putative class action must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy. City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc., 867 F.3d 434, 438 (3d Cir. 2017) (citations omitted). In addition to the Rule 23(a) requirements, a class action must be one of the types recognized by Rule 23(b). Boyle v. Progressive Specialty Ins. Co., No. 09-5515, 2018 WL 2770166, at *4 (E.D. Pa. June 7, 2018). Plaintiffs here seek certification under subsection (b)(3).

The Rule 23 requirements are "not mere pleading standards;" rather, "[p]roper analysis under Rule 23 requires rigorous consideration of all the evidence and arguments offered by the parties." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316, 321 (3d Cir. 2008). A district court must "consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class." Id. at 320. Additionally, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits ... [and] [f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." Id. at 307, 320. "Weighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands." Id. at 323. See also In re Thalomid & Revlimid Antitrust Litig., No. 14-6997, 2018 WL 6573118, at *78 (D.N.J. Oct. 30, 2018).

### III. PROPOSED CLASSES

**\*3** Plaintiffs seek certification of two classes, a "Dealership Class" and a "Warranty Class." Pl. Mem. at 9-10, ECF No. 157. The Dealership Class is defined as:

> All persons who after November 12, 2011, purchased a model year 2008 to 2013 BMW M3 (the "Class Vehicle") in California from an authorized BMW dealership, and who resided in California at the time of that purchase, and who as of the date of the Court's Certification Order, either
>
> 1. Currently owns a Class Vehicle with 120,000 miles or less; or
>
> 2. Currently or formerly owned a Class Vehicle and, when the Class Vehicle had 120,000 miles or less, incurred out-of-pocket costs to replace the connecting rod bearings in the Class Vehicle.

Id. Plaintiffs seek to certify this class under Rule 23(b)(3), or alternatively as a liability only class, for their California claims under: (1) the CLRA; (2) the UCL for "fraudulent business practices", (3) "unlawful business practice", and (4) "unfair business practice"; (5) the FAL; and (6) for breach of implied warranty under the Song-Beverly Act. Id. at 10.

The "Warranty Class" is defined as

> All persons who after November 12, 2011, purchased a model year 2008 to 2013 BMW M3 (the "Class Vehicle") that was within the temporal or mileage limits of BMW's New Vehicle Limited Warranty (48 months/50,000 miles), and who resided in California at the time of that purchase.

Id. at 9-10. Plaintiffs seek certification of the Warranty Class as a liability only class for their claims for breach of: (1) express warranty; (2) express warranty under the MMWA; and (3) the implied covenant of good faith and fair dealing. Id. at 10. Each class excludes Defendants, their affiliates, employees, officers and directors, persons or entities that purchased Class Vehicles for resale or retail, the parties' attorneys, and any judges assigned to this case. Id. at 10 n.7.

## IV. ANALYSIS

Plaintiffs bear the burden of demonstrating their compliance with Rule 23's requirements by a preponderance of the evidence. Mielo v. Steak'n Shake Operations, Inc., 897 F.3d 467, 484 (3d Cir. 2018). Defendants raise several arguments against certification, focusing primarily on whether the named plaintiffs are adequate representatives of the proposed classes, whether their claims are typical of those in the class, and whether common questions predominate over individual ones.

The Court concludes that Plaintiffs have failed to carry their burden of demonstrating that the Dealership Class is sufficiently numerous, that neither Afzal nor Dechartivong have claims that are typical of the Warranty Class, and that both Plaintiffs are adequate representatives of their classes. Plaintiffs have further failed to demonstrate that the Dealership Class is ascertainable.

### A. Rule 23(a) Requirements [1]

[1] Because Plaintiffs have failed to demonstrate that the Dealership Class is sufficiently numerous, or that the claims of the named representatives are typical of the Warranty Class, Plaintiffs fail to carry their burden under Rule 23(a). Additionally, as noted in Section IV.B.1, infra, the Dearlership Class is not ascertainable, and therefore fails to comply with the Rule 23(b)(3). Given these deficiencies, the Court need not reach consider whether there are questions of law and fact common to the class, whether class counsel is adequate, whether the class action is superior to other methods of adjudication, or whether common questions predominate over individual ones.

#### 1. Numerosity

**\*4** Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum number of plaintiffs required to show that a class is sufficiently numerous, but generally, where a plaintiff can demonstrate that there are more than 40 potential plaintiffs, they have met their burden of demonstrating numerosity. Mielo, 897 F.3d at 486 (citing Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)). Here, Plaintiffs have demonstrated that BMW sold thousands of Class Vehicles in California, and their expert Walter Bratic estimates that 5,829 are still in use. Bratic Report at 8,

Greenberg Decl. Exs. Z, BB, ECF No. 154.6. BMW does not contest this, as they make no mention of numerosity in their brief. Plaintiffs have thus demonstrated that the Warranty Class is sufficiently numerous, as there is at least one class member associated with each purchaser of a Class Vehicle.

But Plaintiffs have not demonstrated that the Dealership Class is sufficiently numerous. Unlike the Warranty Class, the Dealership Class definition includes several criteria beyond residence and their Class Vehicle's characteristics at the time of purchase. To be a member, a person must either still own a Class Vehicle with fewer than 120,000 miles, or have paid out of pocket to replace their rod bearings before the vehicle reached that mileage. Pl. Mem. at 9-10. "[W]here a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone," but must find, on a preponderance of the evidence, that the specific subset is sufficiently numerous. Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 358 (3d Cir. 2013). Plaintiffs must "fulfill [their] burden of supplying circumstantial evidence specific to the products and problems involved the litigation" to show the subset of the larger pool is sufficiently numerous. Id. at 357; see also Mielo, 897 F.3d at 486.

Here, Plaintiffs have not supplied any circumstantial evidence regarding the possible size of the Dealership class. Plaintiffs' only evidence of numerosity is Bratic's report, which estimates the number of Class Vehicles still in use. Bratic Report at 8-9. This misses the mark for the Dealership Class because that class is a subset of all Class Vehicles sold in California, and the two named plaintiffs here demonstrate why. Both Afzal and Dechartivong have Class Vehicles that are still "in use."[2] But only Dechartivong is a member of the Dealership Class, because his vehicle came from an authorized BMW dealer. Dechartivong Dep. at 22:6-10. Afzal, who purchased his vehicle in a private sale, cannot be a member of the Dealership Class. Afzal Dep. at 53:16-17. As such, there will is not a Dealership Class member associated with each Class Vehicle. Even more troubling for Plaintiffs here, not only is Afzal not a member of the Dealership Class, the evidence suggests that there is no possible Dealership Class member associated with his vehicle. According to service records, Afzal is the third owner of his Class Vehicle, and there is nothing in the record to suggest any prior owner replaced the connecting rod bearings. See Afzal Service History, Harrington Report at 34. Afzal therefore demonstrates that there will not necessarily be a Dealership Class member associated with each Class Vehicle distributed to California for sale.

[2] While Dechartivong's car literally is not "in use" because it needs to be repaired, the fact remains that it could be returned to good working order if properly repaired.

This deficiency is very similar to that in Hayes, where the plaintiffs sought to certify a class of purchasers of service plans sold for "as is" retail products, but excluded four subcategories of those purchasers. 725 F.3d at 353. The only records from defendant to support numerosity could identify those who purchased service plans for items for which the cashier performed a "price override," which generated a list of 3,500 persons. Id. at 357. This list failed to account for those subcategories of purchasers that the class definition excluded, and thus "the only conclusion that can be drawn from the evidence presented to the trial court is that the number of class members would be equal-to-or-less-than 3,500 and equal-to-or-greater-than zero. Within that range, we can only speculate as to the number of class members." Id. at 357-58. The same is true of Dealership Class here. Without some evidence as to the number of vehicles purchased from authorized dealers with fewer than 120,000 miles, or the number of persons who bought Class Vehicles from dealers and paid out-of-pocket to repair their connecting rod bearings within that mileage limit, all the Court can determine is that the number of Dealership Class members is somewhere between 5,829 and one, Dechartivong. But within that range, all the Court can do is speculate. Plaintiffs have therefore failed to demonstrate that the Dealership Class is sufficiently numerous.

### 2. Typicality

**\*5** Plaintiffs also bear the burden of demonstrating that both "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

The typicality requirement ensures that "the class representatives are sufficiently similar to the rest of the class —in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009). If a class representative's claims are typical of the class, "then her pursuit of her own interest will necessarily benefit the class as well." W. Rubenstein, 1 Newberg on Class Actions § 3:28 (5th ed. 2012); see also Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 55 (3d

Case 1:19-md-02875-RMB-SAK   Document 593-3   Filed 10/13/20   Page 6 of 11 PageID: 12480

Afzal v. BMW of North America, LLC, Slip Copy (2020)
2020 WL 2786926

Cir. 1994) ("Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.").

To show typicality, a plaintiff must demonstrate that the putative class representatives' legal claims and theories, factual circumstances, and stake in the case are typical of the class as a whole. This requires the Court to compare the attributes of the class to those of the named plaintiffs. In re Schering Plough, 589 F.3d at 597. After such a comparison, the Court must be satisfied that: (1) the claims of the representatives are generally the same as those of the class, both in terms of the legal theory and factual circumstances underlying that theory; (2) the representatives are not subject to a defense that is inapplicable to many of the class members and likely to become a major focus of the litigation; and (3) the interests and incentives of the representatives are sufficiently aligned to those of the class. Id. at 599. For each inquiry, the representative plaintiffs' claims do not have to align perfectly with those of the class. Factual differences between the representatives' claims and the absent class members claims will not preclude finding typicality if the claims arise from the same event, practice, or course of conduct. Baby Neal, 43 F.3d at 58; see also Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006).

### i. Neither Plaintiff's Claim is Typical of the Warranty Class

BMW argues that neither putative class representative's claims are typical of those of the Warranty Class. Afzal made significant modifications to his Class Vehicle, including software modifications, changes to his transmission timing, and adding a supercharger, each of which imposes additional stress on the engine. Def. Mem. at 30, ECF No. 170. Data recovered from Afzal's M3 also shows he would occasionally drive his M3 to its revolutions-per-minute limit, exceeding it on one occasion. Id. BMW also argues that Dechartivong is an atypical representative as Andy testified he participated in several motorsports events with his Class Vehicle. Id. The Court agrees that both Plaintiffs claims are atypical of the Warranty Class.

To carry their burden on typicality, Plaintiffs must demonstrate that the putative representatives' factual circumstances are sufficiently similar to those of the absent class members, and that they would not be subject to any unique defenses. Plaintiffs' breach of express warranty claim "derives from, and is measured by, the terms of" BMW's Limited Warranty. Granillo v. FCA US LLC, No. 16-153, 2016 WL 9405772, at *11 (D.N.J. Aug. 29, 2016) (quoting Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1144 (N.D. Cal. 2010)). Thus, the success of the Warranty Class's breach of express warranty (and derivative MMWA) [3] claims depend on whether the class representatives can demonstrate that the terms of the warranty cover their losses. Similarly, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing are "premised on the Limited Warranty." Pl. Mem. at 35. Under California law, the success of the breach of the implied covenant claim depend on whether the plaintiff complied with the terms of the Limited Warranty, because the "elements of a claim of breach of the implied covenant are (1) the parties entered into a contract; (2) the plaintiff fulfilled its obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." MH Pillars Ltd. v. Realini, 277 F. Supp. 3d 1077, 1088 (N.D. Cal. 2017). Thus, whether Plaintiffs will succeed on their breach of implied covenant claim requires them to demonstrate that they complied with the Limited Warranty's terms.

---

[3]  Plaintiffs' claims under the MMWA are governed by the terms of the relevant state law on breach of express warranty, and therefore are subject to the terms of BMW's written warranties. Granillo, 2016 WL 9405772, at *15; Afzal I, 2016 WL 6126913, at *7.

---

*6 By its terms, BMW's Limited Warranty does "not apply to ... Modification of the vehicle or installation of any performance accessories or components attached to the vehicle which alters the original engineering and/or operating specifications or which result in damage to the other original components." BMW Limited Warranty at 29, Rivlin Decl. Ex. 13, ECF No. 171.16. Similarly, the "warranty shall be null and void ... if the vehicle has been used in any competitive event." Id.

Afzal testified that he modified his M3's software and transmission timing, and the record also suggests that he installed a supercharger on his vehicle. Afzal Dep. at 91:12-101:18; Harrington Report at 37. Andy testified that he took his Class Vehicle to at least three separate motorsports

events, modified his vehicle in preparation for them, and that his Class Vehicle broke down while he was driving it on a racetrack. Dechartivong Dep. at 33:9-34:7, 55:5-15. Each named Plaintiff has therefore admitted to conduct that, at a minimum, raises the question of whether they complied with BMW's Limited Warranty.

It takes no special foresight to see that BMW will argue at trial that both named Plaintiffs' modifications and Dechartivong's motorsports preclude warranty coverage. These are precisely the types of factual circumstances and unique defenses that render both Plaintiffs' claims atypical, preventing them from effectively pursuing the interests of the remainder of the Warranty Class.

In reply, Plaintiffs argue Afzal's modifications are not atypical, as there may be other class members who modified their vehicles. Pl. Reply Mem. at 13, ECF No. 177. But Plaintiffs bear the burden of demonstrating that Afzal's claims are typical by a preponderance of the evidence, and thus must show that his modifications are somehow typical of the class. Their speculation that some other class members may have made (unknown) modifications to their vehicles does not carry this burden. Afzal faces the same problem with evidence of his driving habits: his practice of routinely taking his car to its revolutions-per-minute limit, even exceeding it at least once, also potentially voids the warranty as damage from "improper operation of the vehicle." BMW Limited Warranty at 28. Without showing that Afzal's driving habits are common to the class, Plaintiffs ensure that his claim is subject to a second unique defense and is thus atypical.

As to Dechartivong, Plaintiffs argue that other class members may have also used their vehicles in motorsports events, thus not necessarily rendering her an atypical representative, and that BMW's Limited Warranty does not define a "competitive event," which could mean Andy's racetrack driving did not void his warranty. Pl. Reply Mem. at 14-15. But these arguments serve to illustrate how these individual defenses are likely to become a major focus of the litigation. There is no suggestion in the record that Andy Dechartivong's use of his Class Vehicle in High Performance Driving Education classes or at open track days is typical of the class, thus this defense is unique to Dechartivong. Plaintiffs have not made any showing that resolving these questions would be of any benefit to the larger class. Whether either named Plaintiff is entitled to warranty coverage by the terms of the Limited Warranty is a defense that is likely to become a major focus of the Warranty Class.

Finally, Plaintiffs do not address how either Afzal or Dechartivong could effectively represent one another: Afzal had a third party that he met on the internet modify the software on his Class Vehicle, while Dechartivong repeatedly took his vehicle to racetracks (after swapping his wheels and tires), where it eventually broke down. If even the claims of the two named Plaintiffs are not sufficiently similar to permit them to represent one another, they cannot demonstrate that their claims are typical of absent Warranty Class members. [4]

[4] Plaintiffs' argument that the court should certify only certain issues for the Warranty Class under Rule 23(c)(4) is without merit, as in order to certify only certain issues, the Court must still be convinced that the representative Plaintiffs' claims are typical. "Certification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met." Rowe v. E.I. Dupont De Nemours & Co., 262 F.R.D. 451, 467 (D.N.J. 2009). As Plaintiff has made no showing of typicality here, the Court declines to exercise its discretion under Rule 23(c)(3) to certify an issue subclass.

### ii. Dechartivong's Claims are Typical of the Dealership Class

**\*7** Unlike the claims of the Warranty Class, Dechartivong's claims are typical of the Dealership Class. [5] The Dealership Class presses a different set of claims, premised on the theory that BMW had a duty to disclose the defect to consumers, but failed to do so, or violated an implied warranty of merchantability by selling a vehicle with an inherent defect. Pl. Mem. at 10. Specifically, Dechartivong's theory of liability for the Dealership Class is that BMW's failure to disclose that the connecting rod bearings wear faster than expected violates the CLRA, three portions of the UCL, the FAL, and the Song-Beverly Act. Id. Where a plaintiff seeks damages under the CLRA, the "fraudulent" business practice prong of the UCL and the FAL stemming from the defendant's failure to disclose a defect, he must demonstrate that the defendant had a duty to disclose it. Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1142 (9th Cir. 2012). Plaintiffs may do so by demonstrating that the alleged connecting rod bearings defects posed a safety concern. [6] Id. As these claims all turn on BMW's alleged failure to comply with its duty to disclose a safety issue in the Class Vehicles, these claims are by

definition typical of the remainder of the class, as they focus exclusively on BMW's conduct and not on Dechartivong. Her claims under the "unlawful" and "unfair" prongs of the UCL are premised on BMW's sale of defective vehicles in violation of California law. SAC ¶¶ 136, 142. Thus, in each case, her claim rises or falls on her ability to demonstrate the presence of a defect in the Class Vehicles. Finally, the Song-Beverly Act claim also requires Dechartivong to demonstrate that the vehicle is merchantable, which under California law means that it is substantially free of defects. Salas v. Toyota Motor Sales, U.S.A., Inc., No. 15-8629, 2019 WL 1940619, at *10 (C.D. Cal. Mar. 27, 2019). Dechartivong's experience, beyond purchasing a Class Vehicle with an alleged defect, is irrelevant to these claims, and her claims are therefore typical of the Dealership Class.

5   As noted above, because Afzal purchased his vehicle in a private sale, he is not a member of the Dealership Class, and therefore cannot serve as its class representative. Afzal Dep. at 53:16-17. It is axiomatic that "a class representative must be part of the class" he or she seeks to represent. E. Texas Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Ridley v. MRS BPO, LLC, No. 18-12696, 2019 WL 6888532, at *3 (D.N.J. Dec. 18, 2019) (same).

6   "California law may also permit claims based on failure to disclose defects central to the functioning of a product even when not related to safety, but the law is unsettled as to such claims." Garcia v. Harley-Davidson Motor Co., Inc., No. 19-02054, 2019 WL 6050768, at *5 (N.D. Cal. Nov. 15, 2019) (collecting cases). The Court does not need to resolve this question for the purposes of the present motion.

### 3. Adequacy

Defendant also contends that Dechartivong is an inadequate representative of the Dealership Class. BMW claims that although the Dealership Class seeks relief including a declaration that the Class Vehicles are defective, this would not serve Dechartivong, because "what he needs to make him whole again is a new engine." Def. Mem. at 27. BMW further contends that because the Dealership Class includes owners of Class Vehicles that have not manifested the defect, that there is no evidence that these members would want a declaration that their car presents a safety hazard. Id. at 28. The Court finds that these conflicts are speculative.

To adequately represent a class, the representative's interests must be aligned with those of the class. The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012). In order to demonstrate that a class representative is inadequate, a conflict of interest must be " 'apparent, imminent, and on an issue at the very heart of the suit.' " In re Ins. Brokerage Antitrust Litig., No. 04-5184, 2007 WL 2589950, at *11 (D.N.J. Sept. 4, 2007) (quoting In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D. Pa. 1999)), aff'd, 579 F.3d 241 (3d Cir. 2009). Put differently, a conflict must be fundamental to preclude a finding of adequacy, and a "conflict that is unduly speculative, however, is generally not fundamental." Dewey, 681 F.3d at 184.

Here, Defendant has identified a purely speculative conflict. There is no evidence in the record to support BMW's contention that other Dealership Class members might not be interested in a declaration that their vehicles are unsafe. Additionally, because a finding of liability on any of the Dealership Class's claims would require finding that the Class Vehicles have an defect that presents a safety issue, it is unclear how a declaration that the Class Vehicles are unsafe would be meaningfully different from a finding of liability on any of the Dealership Class's claims. Therefore, there is no conflict of interest that precludes a finding that Dechartivong is an inadequate representative.[7]

7   The Court declines to address the adequacy of class counsel, because it is declining to certify the class.

### B. Rule 23(b)(3) Requirements

**\*8** In addition to the requirements under Rule 23(a), Plaintiffs must also affirmatively demonstrate that they meet the requirements of one of the categories of class action enumerated in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under this rule, Plaintiffs must also demonstrate that class members are sufficiently ascertainable.

Here, although Plaintiffs have demonstrated that the Warranty Class is ascertainable, the same cannot be said for the Dealership Class. Given these deficiencies, the Court does not reach the questions of superiority and predominance.

### 1. Ascertainability

The ascertainability requirement in Rule 23(b)(3) "functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23." Byrd v. Aaron's Inc., 784 F.3d 154, 162 (3d Cir. 2015), as amended (Apr. 28, 2015). To satisfy ascertainability, the Plaintiffs must demonstrate that: "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.' " Id. (quoting Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013)).

The first criterion merely requires that the class definition not depend on subjective criteria, like a class member's state of mind. See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc., 867 F.3d 434, 439 n.3 (3d Cir. 2017). The second criterion requires the plaintiff to demonstrate by a preponderance of the evidence that all class members can be identified at the certification stage, without resorting to mini-trials or other extensive factfinding measures to determine whether an individual is actually a member of a class. Id. at 439. As with all of the Rule 23 requirements, a court must rigorously analyze the proposed class to determine how the class is to be ascertained. Carrera v. Bayer Corp., 727 F.3d 300, 307 (3d Cir. 2013). The requirement serves three goals: first, clear identification of class members protects the interests of those who would wish to opt out of the class; second, it protects the rights of defendants by clearly stating who would be bound by any final judgment, and third, it ensures that identification of class members can be handled efficiently. In re Thalomid & Revlimid Antitrust Litig., No. 14-6997, 2018 WL 6573118, at *19 (D.N.J. Oct. 30, 2018).

At the certification stage, Plaintiffs do not need to identify each class member, but rather must show that each class member can be efficiently identified. Carrera, 727 F.3d at 308 n.2. Whether and how plaintiffs can meet this requirement depends on the putative class definition and the proposed means of identification. The most straightforward means of identification is where an existing set of records—either the defendant's or those of another reliable source—produces a list of class members. Id. While this is sufficient to demonstrate ascertainability, it is not necessary. Although "there is no records requirement," plaintiffs must still demonstrate that each class member can be identified in a reliable and efficient manner. Byrd, 784 F.3d at 164.

### i. Third Circuit Ascertainability Precedent

A trio of recent Third Circuit cases clarify how plaintiffs can demonstrate ascertainability. Plaintiffs can use a combination of records, such as those from the defendant as well as public records. In Byrd, the Third Circuit reversed a denial of class certification on ascertainability grounds, holding that a class consisting of both those identified in defendants' records as lessees of certain computers and their "household members" was ascertainable. Id. at 170-71. The Court of Appeals approved of the use of both the defendants' records and public records to determine whether an individual was a class member. Id. Importantly, Byrd noted "[t]here will always be some level of inquiry required to verify that a person is a member of a class," and therefore where the proposed method of ascertaining a class does not require a "mini-trial" or individualized fact finding, the class will be sufficiently ascertainable. Id. at 170.

*9 On the other hand, a plaintiff cannot carry his burden of demonstrating ascertainability by using potential class members' affidavits alone. In Carrera, the Third Circuit vacated an order certifying a class consisting of consumers who had purchased a diet supplement. 727 F.3d at 311-12. As that case involved a relatively inexpensive product sold directly to consumers over the counter, it was unlikely that any consumer or retailer had records of all purchasers,[8] so plaintiff proposed using affidavits from customers to self-certify whether they were class members. Id. at 309. Despite the plaintiff's assurances that they would use various statistical and other methods to exclude fraudulent affidavits, the Court of Appeals held that these methods were insufficiently reliable. Id. at 311.

---

[8] Plaintiffs in Carrera proposed using the records of at least one retailer's loyalty cards, in combination with customer affidavits, but the Court of Appeals found plaintiffs failed to show that this would be possible. 727 F.3d at 308-09.

Case 1:19-md-02875-RMB-SAK   Document 593-3   Filed 10/13/20   Page 10 of 11
                                 PageID: 12484
Afzal v. BMW of North America, LLC, Slip Copy (2020)
2020 WL 2786926

Most recently, the Third Circuit approved of using putative class member affidavits, in combination with other reliable records, to satisfy ascertainability. In City Select Auto Sales, plaintiffs sought damages under the Telephone Consumer Protection Act for receiving an unsolicited fax. 867 F.3d at 442. The Court of Appeals held that plaintiffs could satisfy ascertainability through the use of both a database that identified a set larger than the potential class, and the affidavits of class members. Id. The Court rejected the position that affidavits from potential class members could never satisfy the ascertainability requirement, and clarified that "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." Id. at 441.

### ii. The Ascertainability of the Warranty and Dealership Classes

Defendants here raise several challenges to ascertainability. They contend that the Dealership Class is not ascertainable because Plaintiffs have not proposed any method by which they could determine a class member's residence, a Class Vehicle's mileage, why the rod bearings failed in a Class Vehicle that had the bearings replaced, or whether a class member incurred an out-of-pocket loss in connection with a rod bearing repair. Def. Mem. at 21. Defendants further contend that the Warranty Class's residency and mileage limits present ascertainability problems for that class too. Id. at 23. The Court agrees that the Dealership Class is not ascertainable, but for different reasons than Defendant suggests, but finds that the Warranty Class is ascertainable.

As an initial matter, Defendants concede that they can provide a list of Class Vehicles (identifiable by a unique VIN number) distributed to California for sale. Id. at 21. From this list, the Dealership and Warranty Classes impose further restrictions, but the mileage and residency restrictions can be ascertained either by California Department of Motor Vehicles records or on the basis of affidavits submitted by individual class members concerning their vehicles' mileage. While Defendant argues that these records may not determine with certainty whether every Class Vehicle owner is a class member, the ascertainability requirement is not this demanding. At the certification stage, Plaintiffs are not required to "demonstrate that a single record, or set of records, conclusively establishes class membership," only that there is a reliable and administratively feasible means of determining if a putative class member meets the criteria. City Select Auto Sales, 867 F.3d at 441. Defendant's speculation that because some Class Vehicle owners may have registered their cars to a California address while residing in another state is insufficient to defeat ascertainability, as simply asking putative class members whether they resided in California at the time they bought their cars would exclude these individuals. Def. Mem. at 22.

*10 As to mileage, those class members with a vehicle below the 120,000 mile threshold can submit an affidavit for that purpose, or have their mileage verified at a BMW dealer. In any event, it would be quite simple to determine the mileage of any individual Class Vehicle as of a given date. As the analyses of Afzal's and Dechartivong's vehicles make clear, in contested cases putative class member service records and information stored in a vehicle's onboard computer could demonstrate a vehicle's mileage on a certain date. See Harrington Report at 34, 49.

Therefore, because the Warranty Class's only requirements are residency and purchase of a Class Vehicle either as of a certain date or which had a certain mileage, Plaintiffs have shown that this class is ascertainable.

However, the same is not true of those former Class Vehicle owners who would claim membership in the Dealership Class based on incurring out-of-pocket costs in repairing their rod bearings. Plaintiffs have not proposed any method of ascertaining whether a putative class member incurred out-of-pocket costs in repairing their rod bearings. While current owners of Class Vehicles may have service records that could substantiate their claims, the Dealership Class also includes former Class Vehicle owners who incurred such expenses. Pl. Mem. at 9. Nothing in the record suggests former Class Vehicle owners retain service records of vehicles they no longer own.

Even more problematically, the service records Plaintiffs submitted from a third-party data provider (here, Carfax) for Afzal do not reflect his connecting rod bearing replacement. Compare Greenberg Reply Decl. Ex. TT, ECF No. 178 (Afzal Carfax report reflecting data "available as of 12/2/15" that does not mention bearing repair) with id. Ex. UU at 1 (service records for Afzal's "Connecting Rod Bearings" repair dated May 1, 2015). This suggests that third party data—at a minimum from this provider—could not reliably ascertain whether former Class Vehicle owners incurred out-of-pocket costs related to their connecting rod bearings. As Plaintiffs have not demonstrated that a reliable and

Case 1:19-md-02875-RMB-SAK    Document 593-3    Filed 10/13/20    Page 11 of 11
PageID: 12485
Afzal v. BMW of North America, LLC, Slip Copy (2020)
2020 WL 2786926

administratively feasible means exists by which they could ascertain whether former Class Vehicle owners incurred out-of-pocket expenses related to their connecting rod bearings—beyond bare affidavits—they have not satisfied the ascertainability requirement for the Dealership Class.[9]

[9] Because Plaintiffs have failed to demonstrate that the Dealership Class is ascertainable, the Court declines to address whether this class action is superior to other means of resolving the litigation, or whether common questions of law and fact predominate. Additionally, as noted above, the Court declines to address commonality, as it would be futile here. The predominance requirement in Rule 23(b)(3) is "far more demanding than the commonality requirement" and subsumes it, such that commonality under Rule 23(a) is satisfied when predominance is met, but not vice versa. Ferreras v. Am. Airlines, Inc., 946 F.3d 178, 185 (3d Cir. 2019) (quoting In re Hydrogen Peroxide, 552 F.3d at 311). Here, regardless of whether Plaintiffs can satisfy commonality or predominance, their failure to meet the other requirements of Rule 23 precludes class certification.

## V. CONCLUSION

As Plaintiffs have failed to demonstrate that the Dealership Class is sufficiently numerous, or that the named plaintiffs' claims are typical of the Warranty Class, they have failed to demonstrate that the proposed classes and their representatives meet the requirements of Rule 23(a). Similarly, Plaintiffs have failed to demonstrate that the Dealership Class is ascertainable. The Motion for Class Certification is therefore **DENIED WITHOUT PREJUDICE**. To the extent Plaintiffs believe they can cure the deficiencies identified in this Opinion, they may do so on a renewed motion for class certification. An appropriate order accompanies this Opinion.

**All Citations**

Slip Copy, 2020 WL 2786926

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.