

Jeffrey W. Greene
Tel 617.310.6031
Fax 617.987.0931
greenej@gtlaw.com

October 13, 2020

<u>**VIA CM/ECF**</u>

The Honorable Joel Schneider
United States District Court for the District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

  Re: <u>**In re Valsartan, Losartan, and Irbesartan Products Liability Litigation**</u>
     Case No. 1:19-md-02875-RBK-JS; The Teva Defendants' Letter Motion for
     Cost-Shifting and/or Further Relief Under Rule 26's Proportionality Limits

Dear Judge Schneider:

  Defendants Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, Actavis Pharma, Inc., and Arrow Pharm (Malta) Ltd. (collectively, "Teva" or the "Teva Defendants") respectfully submit this letter brief in support of their request for an order foreclosing additional review of documents that based on state-of-the-art technology-assisted review ("TAR") used according to eDiscovery best practices, are predicted to be non-responsive and/or to shift the cost of Teva's further non-responsive document review by ordering Plaintiffs to reimburse Teva's costs and fees associated with reviewing documents that its Continuous Multi-Modal Learning ("CMML") platform predicts are non-responsive. Completing a linear manual review on these ***hundreds of thousands of documents that are non-responsive*** has no proportional benefit to either party here.

  As set forth below, the vast majority of these documents are non-responsive as predicted by CMML, and Teva should not be forced to go through the grossly disproportionate exercise of reviewing them solely for Plaintiffs to obtain no additional materially relevant information in discovery than they are already receiving via the responsive documents that have been produced.[1] The total cost to Teva associated with engaging in this senseless discovery exercise is ***millions of***

---

[1] As Teva has previously made clear to the Court, utilizing a technology such as CMML has been shown to be far more effective and efficient than engaging a massive team of attorneys to perform a linear manual review. Thus, Plaintiffs have already received the benefit of a more accurate and timely process being used (and more relevant documents being prioritized for review and thus earlier production). Despite their interests being furthered by Teva's use of CMML for the production of documents, Plaintiffs continue in their steadfast refusal to let Teva use CMML to cull non-responsive documents. They cannot have it both ways.

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com

***dollars*** (not to mention the significant amount of time it unnecessarily diverts from Teva's defense team focusing on relevant discovery) and far outweighs any potential benefit to Plaintiffs associated with this review. If Plaintiffs still disagree with Teva as to the potential benefit, based on the data and evidence set forth below, they should be ordered to pay for the cost of the additional review.

As the Court is well-aware, Teva previously filed a letter brief in support of its motion for an order enforcing the Electronic Discovery Protocol ("ESI Protocol") (Dkt. 127) affirming the Teva Defendants' electronic document review and production process utilizing the CMML system. As set forth in Teva's previous filings relating to CMML, the Teva Defendants had not yet relied on CMML to exclude any documents from its review, but rather were utilizing CMML to simply prioritize their review so that Plaintiffs would receive the most relevant documents first. (Dkt. 516). Despite Teva and the Court's herculean efforts to reach agreement with Plaintiffs on a validation protocol surrounding Teva's use of CMML, the Plaintiffs continued to unreasonably insist on Teva both reviewing and producing thousands of non-responsive documents, which is not consistent with the Federal Rules. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case . . . . (emphasis added)). Accordingly, Teva was left with no choice but to withdraw its motion to enforce the ESI Protocol. (Dkt. 544). Now, after additional review, no validation protocol is necessary, as Teva has detailed data to demonstrate to Plaintiffs, and also the Court, that its CMML platform is working consistent with Teva's representations and that the value of continued linear manual review of documents labeled non-responsive by CMML is negligible in comparison to the enormous cost and burden for Teva.

For example, since the parties and the Court last spoke, and since Teva continued in its review of the ESI of the six priority custodians, Teva undertook to review a uniform random sample of 15,000 documents from the high-priority custodians that the CMML platform has indicated are non-responsive. Out of 15,000 documents, and after a quality control process, the reviewing attorneys deemed merely 109 to be responsive, an elusion of only 0.73%. *See* Declaration of Maura Grossman ("Grossman Dec."), ¶5. This process involved 330.6 hours of attorney review time, all of which was wasted given that 99% of the documents reviewed will not be produced given that they have been deemed non-responsive by attorneys. *See* Declaration of Deborah Ketchmark ("Consilio Dec."), at ¶3.

Moreover, of the 109 responsive documents that Teva's review found in the non-responsive set of 15,000, almost all of them are duplicative of documents already produced or would be considered only marginally responsive. Stated differently, the *de minimis* number of responsive documents that Teva's onerous and expensive non-responsive review has uncovered are neither materially relevant nor dispositive documents. This only further demonstrates the disproportionate nature of the unreasonable review that Plaintiffs insist Teva engage in solely to force Teva to spend millions of unnecessary dollars.

At this point, the issue before the Court is not what the ESI Protocol permits or does not permit as it relates to CMML. Rather, the Court must rule on a straightforward proportionality eDiscovery dispute. Teva should not be forced to spend months and millions of dollars reviewing

The Honorable Joel Schneider
October 13, 2020
Page 3

electronic documents that it ***already knows*** are likely to be non-responsive based on well-known technology that has become the norm in eDiscovery. Forcing Teva to do so is the exact scenario that the December 2015 proportionality amendments to Rule 26 were intended to prevent—needlessly wasting resources on disproportionate discovery. *See e.g.,* Hon. John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015) ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality . . . ."). And, to the extent the Court is inclined to force Teva to review all documents that hit on search-terms even though predicted to be non-responsive, the costs associated with having to undertake this review should be ***shifted to the Plaintiffs*** who have unreasonably attempted to thwart Teva's efforts to leverage this now industry standard technology.

### I. RELEVANT PROCEDURAL BACKGROUND

On July 14, 2020, Teva filed a letter brief in support of its motion to enforce the ESI Protocol by foreclosing Plaintiffs' attempt to unilaterally control Teva's method of electronic document review and to allow the Teva Defendants to leverage the CMML platform. (Dkt. 516). As set forth more fully therein, Teva engaged in a meet and confer process with Plaintiffs prior to filing its motion and provided Plaintiffs with a substantial amount of information relating to CMML. (Dkt. 516, at Exhibits A – H). Despite these efforts, Plaintiffs objected to Teva's proposed use of CMML, prompting Teva to file its motion to enforce the ESI Protocol.

On July 15, 2020, the parties appeared before Your Honor for a case management conference, the majority of which focused on Teva's proposed use of CMML. During the conference, certain other co-defendants made their intent to use a Continuous Active Learning ("CAL") process known to the parties and the Court. At the conclusion of the hearing, the Court ordered that no party was to use CAL to limit its review of documents pending a further ruling. The Court also set a deadline for additional submissions on the issue to be filed by July 24, 2020.

On July 24, 2020, Plaintiffs filed their opposition to Teva's motion, largely arguing that Plaintiffs would not have engaged in search-term negotiations had they known of Teva's intent to use a CAL process.[2] (Dkt. 526). Plaintiffs claimed that it was the layering of CMML on top of search terms that was problematic.

On that same day, Teva responded to Plaintiffs' letter explaining that layering CMML on top of search terms is an accepted methodology and numerous courts around the country have found that such a process is fully defensible. (Dkt. 527, at Exhibits A and B). Notwithstanding, and in the spirit of cooperation, Teva informed the Court and Plaintiffs that it would "agree to apply CMML across its current custodial dataset of approximately 8 million documents, without regard to whether the documents hit on a search term, if such an agreement would expedite resolution of this dispute." (Dkt. 527). In that same filing, Teva pointed out that it had retained the

---

[2] As has been reiterated multiple times over the past few months, the Teva Defendants *expressly indicated* to Plaintiffs at the November 15, 2019 in-person ESI meeting (which was occurring as negotiations over the search terms were nearing their conclusion and the parties clearly understood search terms would be used as the initial mechanism to identify a set of documents for review), that they had not determined whether to use technology-assisted review but reserved the right to do so.

The Honorable Joel Schneider
October 13, 2020
Page 4

internationally recognized technology-assisted review ("TAR") and CAL expert, Dr. Maura R. Grossman, who could assist the parties in agreeing to a validation protocol, the purpose of which would be to validate that Teva's CMML process had worked and that as few as possible responsive documents were left behind. (Dkt. 527).

Thereafter, the Court engaged both parties in a series of meaningful negotiations surrounding a validation protocol. In hours of discussions between Teva and Plaintiffs, Teva and the Court, and the parties with the Court participating, counsel for Teva painstakingly explained how the CMML system operates and fielded questions on review methodology. Teva provided a detailed draft validation protocol prepared with the aid of one the world's foremost expert (and similar to other validation protocols that have been entered approvingly by Courts), and thereafter made a series of revisions to this protocol incorporating edits and comments from Plaintiffs and the Court. Ultimately, Teva acquiesced or provided solutions to almost all of the Plaintiffs' concerns surrounding Teva's proposed validation protocol, except for Plaintiffs insistence on both receiving and reviewing thousands, if not hundreds of thousands, of non-responsive documents from Teva. This latter point of contention ultimately sank the parties' negotiations, leaving Teva with no choice but to withdraw its motion to enforce the ESI Protocol on August 5th and to continue with its linear manual review of the documents hitting on search terms, using CMML only to prioritize the review but not to exclude any documents from the review process, as expressly ordered by the Court at that time, reserving all of its rights to revisit the issue as necessary, including the right to seek cost-shifting in the future. (Dkt. 544).[3]

On August 6, 2020, Plaintiffs responded to Teva's withdrawal notice and asked for an order either forcing Teva to (i) utilize the TAR protocol as drafted and revised by Plaintiffs' (which still contemplated production of non-responsive documents), or (ii) engaging in a linear manual review of all documents hitting on search terms, but reimbursing Plaintiffs' costs and fees related to the TAR dispute, and preventing Teva from revisiting this issue again. (Dkt. 545).

On August 7, 2020, Teva responded to Plaintiffs' unfounded request for costs and fees as well as its premature attempts to bar Teva from making a subsequent showing for cost-sharing. (Dkt. 548). As stated therein, the Court had previously made clear on numerous occasions that any party may ask the Court to revisit an issue upon a showing of good faith, and that Teva would not waste the Court's time with any TAR issue "without ample showing of a good reason for doing so

---

[3] Ultimately, as the law was clear (both from the caselaw previously cited to the Court as well as the input of our discovery expert Dr. Maura Grossman) that in utilizing CMML as Teva proposed, defendants **should not have to turn over non-responsive documents**, which undisputedly would not be required in a linear manual review process. *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 129 (S.D.N.Y. 2015) ("[I]t is inappropriate to hold TAR to a higher standard than keywords or manual review."); *see also Winfield v. City of New York*, No. 15CV05236LTSKHP, 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017) ("[P]erfection in ESI discovery is not required . . . ."); *Aurora Cooperative Elevator Co. v. Aventine Renewable Energy-Aurora West, LLC*, No. 4:12CV230, 2015 WL 10550240, at *2 (D. Neb. Jan. 6, 2015) ("The [FRCP] rules do not authorize ordering the defendants to disclose irrelevant information."). Plaintiffs' unreasonable refusal to acknowledge these legal standards forced Teva to withdraw its prior motion, while reserving its rights. *See Livingston v. City of Chicago*, Civ. A. No. 1:16-cv-10156, Dkt. No. 309 (N.D. Ill. Sept. 3, 2020) (where Plaintiffs objected to the defendant's use of CAL, the Court explained that "***Plaintiffs' insistence that the City must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules governing discovery***." (emphasis added)).

The Honorable Joel Schneider
October 13, 2020
Page 5

and the presentation of additional facts, data or metrics that are not yet available at this point in the process." (Dkt. 548). Plaintiffs, seemingly needing the last word, filed a response to Teva's letter on August 8th. (Dkt. 549).

## II.     TEVA'S DOCUMENT REVIEW PROCESS

For the last month, Teva has been continuing in its linear manual review of the **nearly 3.7 million** documents that hit on search terms and has been prioritizing its review using CMML. To date, before any motions to dismiss have even been ruled upon,[4] Teva has manually reviewed 668,385 electronic documents (164,028 documents of the high-priority custodians alone). *See* Consilio Dec., ¶2. Some time ago, however, Teva crossed over from reviewing documents that CMML deemed likely to be responsive for the high-priority custodians and has reviewed documents that CMML deemed likely to be non-responsive. Teva spent 330.6 hours reviewing a uniform random sample of 15,000 of these non-responsive priority custodial documents, only to find that merely 109 are responsive after a quality control process. *See* Grossman Dec., ¶5. In other words, as Teva's CMML process correctly predicted, this process is showing itself to be a colossal waste of time, as Teva is spending significant time and resources reviewing irrelevant documents, only to find a handful of marginally responsive documents for ultimate production to Plaintiffs, most of which are cumulative or duplicative of documents already produced to Plaintiffs.

Currently, there are 260,375 documents that hit on search terms that remain to be reviewed for the high-priority custodians, approximately 258,813 of which the CMML platform believes to be non-responsive. Grossman Dec., ¶7. In order to meet the Court's November 29th production deadline, Teva would need to retain 43 attorneys to review all of these documents, each of whom would need to spend 40 or more hours a week solely on document review for this case, for a total of 5,424 hours and 3.5 weeks. Consilio Dec., ¶4. Even utilizing all available means to efficiently and cost-effectively perform this review, it would still cost Teva approximately $228,000 to review the documents that CMML predicts are non-responsive.[5] Consilio Dec., ¶5. Extrapolating from the current metrics seen by Teva as it relates to the non-responsive materials, Teva suspects that only 1,562 documents or 0.6% will be marginally responsive and produced to Plaintiffs as a result of this additional review effort. And, these numbers are just for a straightforward responsiveness review of the six high-priority custodians, but do not include the time and money that Teva would also need to spend on the review of the remaining 30 custodians' non-responsive data, redactions, privilege designations, a privilege log workflow, and a quality control process by outside counsel.

Ultimately, there can be no straight-faced (much less reasonable) argument that the eDiscovery review process Teva is currently being forced to undertake, as a result of Plaintiffs' unreasonable positions that are contrary to current eDiscovery best practices and applicable law, is proportionate to the needs of this case. This is particularly true when all of this time and money is yielding only a minimal number of duplicative, marginally responsive documents being

---

[4] Teva's Motion to Dismiss was filed on July 17, 2020 and remains pending. (Dkt. No. 520).
[5] Teva would need to review 166 non-responsive documents in order to find one marginally responsive document. Grossman Dec., ¶8. To be clear, these estimates are for the six high-priority custodians only. This exercise would take substantially longer and cost Teva hundreds of thousands more dollars if Teva is forced to undergo a similar exercise for the remaining custodians.

**Greenberg Traurig, LLP | Attorneys at Law**

www.gtlaw.com

produced to Plaintiffs. Teva raised this issue with Plaintiffs by initiating a meet and confer process via a telephone conference on October 5, 2020. During the meet and confer, Plaintiffs' counsel requested additional information, which Teva provided via a letter sent on October 6th. (*See* **Exhibit A**). On October 9th, Teva then engaged in a follow-up telephone conference with Plaintiffs to discuss the letter and provide additional details on its validation process. During that call, Teva also agreed to identify for Plaintiffs the 109 responsive documents it found during a review of the 15,000 non-responsive set in order for Plaintiffs to see that they are marginally responsive and duplicative of information already produced. After considering Teva's request, Plaintiffs' counsel informed Teva yesterday, on October 12th, that Plaintiffs would not agree, thereby necessitating this letter motion.

For the reasons set forth more fully below, Teva respectfully requests an order foreclosing additional review of documents that based on state-of-the-art TAR and eDiscovery best practices are non-responsive. Alternatively, Teva respectfully requests that the Court shift the cost of Teva's further non-responsive document review by ordering Plaintiffs to reimburse Teva's costs and fees associated with reviewing documents that CMML predicts are non-responsive.

### III. <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "[D]iscovery from reasonably accessible ESI sources proceeds in the same manner as discovery from paper sources, and is subject to the burden and proportionality limits of Rule 26(b)(2)(C)." *Gilmore v. Ford Motor Co.*, Nos. 12-cv-547, 12-cv-548, 2012 WL 12895056, at *3 (W.D. Pa. Dec. 4, 2012). "[W]hen a discovery request purports to require a search for relevant materials, the "standard . . . is reasonableness, not perfection." *Agerbrink v. Model Service LLC*, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017); *see also Sapia v. Bd. of Educ. of the City of Chicago*, 2017 WL 2060344, at *2 (N.D. Ill. May 15, 2017) ("'Parties are entitled to a reasonable opportunity to investigate the facts—and no more.'").

Following the guidance of Rule 26, courts generally find that determining whether a discovery request warrants cost-shifting based on its burdensomeness turns on: the needs of the case; the amount in controversy; the parties' resources; the importance of the issues at stake; and the importance of the proposed discovery in resolving those issues. *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 10–11 (D.D.C. 2017); *see also McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2016 WL 7178745, at *3 (E.D. Mo. Dec. 9, 2016) (evaluating whether to shift expenses by considering the proportionality factors).

The Honorable Joel Schneider
October 13, 2020
Page 7

The seminal decisions outlining the factors utilized to evaluate cost shifting are the product of a series of decisions in *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003), which are often referred to by number, including specifically *Zubulake I*, 217 F.R.D. at 322 and *Zubulake III*, 216 F.R.D. at 284.[6] These factors are:

- The extent to which the request is specifically tailored to discover relevant information;
- The availability of such information from other sources;
- The total costs of production compared to the amount in controversy;
- The total costs of production, compared to the resources available to each party;
- The relative ability of each party to control costs and its incentive to do so;
- The importance of the issues at stake in the litigation; and
- The relative benefits to the parties of obtaining the information.

While the *Zubulake* decisions related to "inaccessible" ESI, based on the 2006 amendments to the Federal Rules, Courts have further "focused on Rule 26(b) proportionality factors to determine which party should bear the costs of discovery without regard to whether ESI was reasonably accessible or not." *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3288058, at *9 (D. Kan. June 18, 2020) ("In 2006, Rule 26(b) was amended to reflect the principles articulated in *Zubulake* and subsequent cases on shifting costs for non-reasonably accessible ESI.").

In *Lawson*, the Court granted the Defendant's Motion to Shift Costs of TAR to Plaintiff. *Lawson*, 2020 WL 3288058, at *1. In doing so, the Court analyzed the proportionality factors discussed above. With respect to the costs of discovery, courts compare the expense associated with eDiscovery to the overall amount in controversy. *Id.* However, the *Lawson* Court recognized that other expenses also factored into the calculus and noted that "[t]he fact that a plaintiff seeks millions in relief does not give him or her license to conduct fishing expeditions that run up the cost of discovery." *Id.* at *12. The Court stated that it would not require the Defendant to shoulder needless litigation expenses simply because it is a large company and the Plaintiff is an individual. *See id.* at *14. The Court further explained that the Plaintiff was "amply funded" and therefore both parties have sufficient resources to bear their fair share of litigation expenses. *Id.*

In analyzing "whether the discovery seeks information on issues 'at the very heart of [the] litigation,'" *id.* at *15, the Court found that the Plaintiff's custodians and search terms were not tailored to obtain relevant discovery. *Id.* at *17. Further, the Court found that this factor weighed heavily in favor of allocating the TAR expenses to the Plaintiff "because, to this day, [the Plaintiff] has not articulated how documents produced through the TAR process were not just relevant (and hence duplicative for evidentiary purposes), but uniquely relevant in such a way that they were important. . . ." *Id.* at *19.

---

[6] "The Third Circuit has adopted [the *Zubulake*] criteria for when cost-shifting might be appropriate in electronic discovery." *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, Civ. A. No. 12-3427 JLL, 2013 WL 541972, at *4 (D.N.J. Feb. 11, 2013) (citing *Wachtel v. Guardian Life Ins.*, 2007 WL 1752036 (D.N.J. June 18, 2007) (following *Zubulake*)).

The Honorable Joel Schneider
October 13, 2020
Page 8

Perhaps most centrally, the *Lawson* Court analyzed whether the burden or expense of the proposed discovery outweighs its likely benefit. The Court looked to the costs associated with TAR and document review in general and noted that the 3.3% responsiveness rate—considerably higher than the responsiveness rate in the set of documents Defendants are seeking not to have to review here—reflected an exceptionally low level of richness that meant, in simple terms, that the TAR technology and team had to work harder than was reasonable to process the remaining documents in the TAR set. *Id.* at 19-20. Given the above, the Court concluded that the substantial burden and expense of the TAR process far outweighed the likely benefits and that this factor weighed heavily in favor of allocating TAR expenses to the Plaintiff. *Id.* at *21. Combining each of these factors, the Court granted the Defendant's Motion to Shift Costs of Technology Assisted Review of ESI to Plaintiff.[7] *Id.* at *1; *see also Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568 (N.D. Ill. 2004) (holding that relevant factors favored shifting costs of electronic discovery requested by plaintiffs, and thus employer would bear 25% and plaintiffs 75%).

### IV.   ARGUMENT

#### a. It is Disproportionate to the Needs of the Case to Force Teva into Reviewing Non-Responsive Documents

There can be no reasonable response to Teva's claim that it is disproportionate to the needs of a case to force a party to review hundreds of thousands of documents that are irrelevant to the claims or defenses in this litigation. During the previous exchanges, Your Honor even acknowledged during the meet and confer process that "the thought of Teva spending millions of unnecessary dollars is so distasteful there just has to be a way to get this done." At that time, Teva came to the Court with what it reasonably predicted CMML would ultimately show in terms of the universe of documents that are responsive. Now, Teva is coming to the Court with metrics demonstrating that Teva's CMML model **has undeniably demonstrated its accuracy**, and that is that 260,375 documents for the high- priority custodians are likely to be largely irrelevant and would be a waste of time and resources to review.[8] Teva learned of this number through an extensive validation process overseen by the leading expert Dr. Grossman, which resulted in a TAR recall of 92.2%, which is as high as can be reasonably obtained by any method, whether linear review or automated. Grossman Dec., ¶7. Thus, there is no longer anything hypothetical in nature about the disproportionate aspect of the continued review at this stage of non-responsive documents here, or the enormous prejudice to Teva if forced to continue without relief. Teva has demonstrated that further review of these non-responsive documents is decidedly disproportionate and burdensome.

As noted above, proportionality is measured by a variety of factors. This case already involves skyrocketing discovery costs and is currently bogged down by a well-funded Plaintiffs'

---

[7] It bears noting that Teva is fully willing to bear the expenses associated with reviewing documents CMML predicts are responsive, which is even more than the Defendants in *Lawson* were willing to do.

[8] While Teva has only undergone the extensive sampling process for the high-priority custodians, Teva expects that the same result will be true as to the remainder of the custodians, leading to millions of documents for review that are non-responsive. Teva is planning to engage in this same validation process for the remaining custodians.

The Honorable Joel Schneider
October 13, 2020
Page 9

group's attempts to force Teva into reviewing millions of irrelevant documents, only a tiny fraction of which may be marginally relevant and duplicative of the information they have already been given. *Lawson*, 2020 WL 3288058 (which found a 3.3% responsiveness rate to be disproportionate; Teva now has only a 0.6% responsiveness rate for the data remaining for the high-priority custodians). As seen by the incredibly low responsiveness rate Teva is currently observing and the 92.2% TAR recall rate, the benefit of continued review is far outweighed by the burdensome cost and time required of Teva's review team. *Id.* at 19-20.[9]

Plaintiffs' discovery requests are not reasonably tailored to locate responsive information, and their oft-repeated assertion that "we don't know what we don't know" is an insufficient basis to justify this tremendous expense and merely confirms they seek to conduct a classic phishing expedition rather than legitimate discovery of the issues. *See id.* at *19 ("[T]o this day, [the Plaintiff] has not articulated how documents produced through the TAR process were not just relevant (and hence duplicative for evidentiary purposes), but uniquely relevant in such a way that they were important . . . ."); *see also, Livingston v. City of Chicago*, Civ. A. No. 1:16-cv-10156, Dkt. No. 309 (N.D. Ill. Sept. 3, 2020) (noting that applying CAL on top of search terms "satisfies the reasonable inquiry standard and is proportional to the needs of this case under the federal rules."). If Teva is compelled to undergo a review of the documents CMML predicts are non-responsive for the high-priority custodians, it will waste weeks of time and resources reviewing these 260,375 non-responsive documents, only to likely produce approximately 1,562 duplicative and marginally relevant document to Plaintiffs based on CMML's predictions and Teva's robust validation efforts to date.

As set forth in *Zubulake* and *Lawson* and discussed above, under FRCP 26(c) this type of an approach is wholly disproportionate to the needs of the case.

      b. **Should Plaintiffs Continue to Insist on Review of Documents Predicted to be Nonresponsive, Plaintiffs Should Bear the Cost of Teva's Non-Responsive Document Review**

To the extent the Court is inclined to force Teva to review all of the documents that hit on search terms, including those that we now know based on CMML and the validation exercise are 99.4% non-responsive, then Plaintiffs should bear the costs associated with such a wasteful exercise to ensure proportionality. If there was ever a case where such cost-shifting was appropriate, this is it.

Rule 26(c) gives courts "discretion … to condition discovery on the requesting party's payment of the costs of the discovery." *Foreclosure Mgmt. Co. v. Asset Mgmt. Hldgs.*, LLC, C.A. No. 07-2388-DJW, 2008 WL 3822773, at *7 (D. Kan. Aug. 13, 2008). Cost-shifting is an important tool "in enforcing the proportionality" standard expressly set forth in Rule 26(b)(1). *F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 676 (N.D. Fl. 2013). Among other factors that bear on

---

[9] Absent relief being ordered here, given the time and resources necessary to complete review of millions of likely non-responsive documents, it will be nearly *impossible* for Teva to meet the Court's November 29th production deadline, even with the [3] contract attorneys Teva has working on this matter

The Honorable Joel Schneider
October 13, 2020
Page 10

whether cost-shifting is appropriate are: "predictions as to the importance and usefulness of the further information," "the quantity of information available from other and more easily accessed sources," and "the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources." *Semsroth v. City of Wichita*, 239 F.R.D. 630, 637 (D. Kan. 2006) (quoting 2006 Advisory Committee Notes to Fed. R. Civ. P. 26(b)(2)).

Cost shifting is clearly appropriate at this juncture. First, "predictions as to the importance and usefulness" of the discovery sought have shown that over 99% of the 260,375 documents remaining to be reviewed for the priority custodians are likely to be non-responsive or irrelevant. *Semsroth*, 239 F.R.D. at 637. The most recent sampling exercise resulted in an elusion of 0.6% for the unreviewed documents for the high-priority custodians, and a large majority of those were marginally responsive meaning that hardly any documents were truly responsive or introduced non-duplicative information.

Courts routinely require the requesting part to shoulder discovery costs when sampling exercises such as the one Teva has undertaken reveal similarly low responsiveness rates. *See, e.g., Moody v. Aircastle Advisor*, LLC, No. 3:13-757-CSH, 2014 WL 1761736, at *2 (D. Conn. Apr. 30, 2014) (denying motion to compel defendant that had spent approximately $90,000 reviewing 8,000 documents to conduct additional ESI searches when sample searches indicated a low responsiveness rate, unless plaintiff agreed to pay costs); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568 (N.D. Ill. 2004) (shifting 75% of production costs in light of 4.5%-6.5% sample responsiveness rate); *Stryker Corp. v. Ridgeway*, No. 1:13-1066, 2015 WL 4425947, at *2 (W.D. Mich. July 20, 2015) (ordering former employee to pay for additional searches of employer's emails due in part to "the manner in which [employer] had already attempted to respond to [employee's] request … and the low probability that there would be any responsive documents.").

Second, the ESI discovery process thus far has shown that the "quantity of information available from other and more easily accessed sources" is superior to these irrelevant documents hitting on the search terms insisted upon by Plaintiffs, which have resulted in the millions of documents at issue. As stated above, documents that CMML predicts are responsive are likely to contain the relevant materials and Teva is manually reviewing each and every one of those documents for potential production to Plaintiffs. Because the remainder of the documents that Plaintiffs insist that Teva review will be extremely expensive and time-consuming, and will bear almost no fruit as compared to the hundreds of thousands of responsive documents already to be produced by Teva, a party like Plaintiffs who nonetheless insist upon it should bear the cost of doing so. *See Wood v. Capital One Servs., LLC*, No. 09-1445, 2011 WL 2154279, at *9 (N.D.N.Y. Apr. 15, 2011) (denying motion to compel expensive ESI where relevant information sought could be obtained through other means unless plaintiff agreed "to underwrite the expense associated with any such search").

Finally, the review and CMML sampling exercises undertaken by Teva in the last month have not revealed any "relevant, responsive information" that is not already being produced to Plaintiffs. Instead, these exercises—encompassing a review of more than 15,000 documents—have yielded very few marginally responsive documents among the documents identified by CMML as non-responsive for the priority custodians, yielding a 92.2% TAR recall rate. In other

The Honorable Joel Schneider
October 13, 2020
Page 11

words, these exercises have only confirmed Teva's position all along—which is that CMML has been highly accurate in its predictions of what is responsive versus non-responsive, and within the 260,375 unreviewed documents, only about 1,562 of those are likely to be marginally responsive.

It should also be noted that the disproportionate burden on Teva does not start and stop with a straightforward review. Instead, all documents reviewed must also go through a detailed quality control process, be reviewed for redactions, potential privilege, and the like. Even using the most efficient means possible, Greenberg Traurig has already spent more than **1,000** hours on ESI issues in this case, costing Teva approximately **$450,000** in GT attorney time alone, all before its motion to dismiss has been ruled upon. Absent relief, Teva will incur the cost of 5,424 hours of further unnecessary attorney review on the high priority custodial documents alone (which will be substantially higher when factoring in the remaining 30 custodians)—all for essentially nothing, as more than 99% of these documents will be deemed non-responsive, consistent with CMML, and will never be produced to Plaintiffs. Grossman Dec., ¶4. ***There is no universe in which this exercise could be considered proportional under the Federal Rules of Civil Procedure and applicable law.*** The Court must grant Teva relief here as a result.

In sum, if Plaintiffs are going to continue to maintain their unreasonable demands forcing Teva to review hundreds of thousands of non-responsive documents for the high-priority custodians (and even more for the remaining custodians) and therefore incur millions of additional dollars in cost, they should be the ones to pay for it.

## V.   CONCLUSION

For the reasons set forth more fully above and in accordance with applicable law and well-accepted eDiscovery best practices, the Teva Defendants' respectfully request that this Court enter an order foreclosing additional review of high priority custodian documents that based on Teva's CMML model are predicted to be non-responsive and are, accordingly, disproportionate to the needs of the case; and/or in the alternative, order Plaintiffs to reimburse Teva's costs and fees moving forward associated with reviewing any documents that Teva's CMML model predicts are non-responsive.

The Honorable Joel Schneider
October 13, 2020
Page 12

Dated: October 13, 2020                     Respectfully submitted,

                                            /s/ Jeffrey Greene
                                            Jeffrey Greene
                                            GREENBERG TRAURIG, LLP
                                            One International Place
                                            Suite 2000
                                            Boston, MA 02110
                                            Telephone:    (617) 310-6031
                                            Fax:          (617) 897-0931
                                            greenej@gtlaw.com

                                            /s/ Lori G. Cohen
                                            Lori G. Cohen
                                            Victoria D. Lockard
                                            Steven M. Harkins
                                            Terminus 200
                                            3333 Piedmont Rd., NE
                                            Suite 2500
                                            Atlanta, Georgia 30305
                                            Tel: (678) 553-2385
                                            Fax: (678) 553-2386
                                            cohenl@gtlaw.com
                                            lockardv@gtlaw.com
                                            harkinss@gtlaw.com

                                            Brian H. Rubenstein
                                            1717 Arch Street
                                            Suite 400
                                            Philadelphia, PA 19103
                                            Tel: (215) 988-7864
                                            Fax: (215) 689-4419
                                            rubensteinb@gtlaw.com

                                            *Attorneys for Teva Pharmaceuticals USA, Inc.,
                                            Teva Pharmaceutical Industries Ltd., Actavis LLC,
                                            and Actavis Pharma, Inc.*

The Honorable Joel Schneider
October 13, 2020
Page 13

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2020, I served the foregoing letter to the Court was served on all counsel of record via filing in the CM/ECF system.

*/s/ Jeffrey Greene*

# **EXHIBIT A**



Victoria Davis Lockard
Tel: (678) 553-2103
Fax: (678) 553-2104
lockardv@gtlaw.com

October 6, 2020

**VIA E-MAIL ONLY TO**

Adam Slater
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Suite 207
Roseland, NJ 07068
aslater@mazieslater.com

> Re:  *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation., U.S. District Court for the District of New Jersey; Case No. 1:19-md-02875-RBK-JS*

Dear Counsel:

Thank you for the productive meet and confer telephone conference yesterday surrounding Defendants Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, Actavis Pharma, Inc., and Arrow Pharm (Malta) Ltd. (collectively, "Teva" or the "Teva Defendants"). As I explained, Teva strongly believes it has a good-faith basis to move for an order: 1) foreclosing additional disproportionate review of documents that based on data analytics and e-discovery best practices, are highly likely to be **non-responsive;** and/or 2) to shift the cost of Teva's further non-responsive document review by ordering Plaintiffs to reimburse Teva its costs and fees associated with reviewing documents that Teva's Continuous Multi-Modal Learning ("**CMML**") platform predicts are non-responsive. We believe, however, that it is in both parties' interests to attempt to reach a prompt and amicable agreement on these issues in lieu of more motions practice. I have attempted to provide answers to the questions you posed yesterday, however, we welcome another meet and confer with you in order to clarify any additional concerns you may have.

As you know, Teva previously filed a letter brief in support of its motion for an order enforcing the Electronic Discovery Protocol ("ESI Protocol") (Dkt. 127) affirming the Teva Defendants' electronic document review and production process utilizing the CMML platform. As set forth in Teva's filings relating to CMML, the Teva Defendants had not yet relied on CMML to exclude any documents from its review, but rather were utilizing CMML to simply prioritize their review so that Plaintiffs would receive (and have received) the most relevant documents first (Dkt. 516). As you know, the parties were unable to agree on a validation protocol, as Teva believed Plaintiffs' request for non-responsive documents went far beyond the requirements set forth in the

Adam M. Slater
October 6, 2020
Page 2

Federal Rules of Civil Procedure and/or applicable case law. Accordingly, Teva felt it had no choice but to withdraw its motion to enforce the ESI Protocol, reserving all of its rights (including its right to seek cost-shifting as appropriate) (Dkt. 544). Since that time, our CMML model has substantiated Teva's earlier contentions.

To demonstrate the accuracy of Teva's CMML model and to further assure you and the Court that Teva is proceeding in accordance with current e-discovery best practices, Teva has spent significant time and resources reviewing samples of documents the CMML system predicted to be non-responsive. This exercise has made it abundantly clear that the value of continued linear review is negligible in comparison to the enormous cost and burden for Teva to continue to review the hundreds of thousands of documents associated with high-priority custodians currently predicted to be non-responsive by CMML.

To demonstrate this point, Teva took it upon itself to review a random sample of 15,000 documents from the high-priority custodians that CMML indicated were non-responsive and had not been manually reviewed. Following review and an additional quality control process, of those 15,000, Greenberg Traurig attorneys deemed merely 109 to be responsive; an elusion of only 0.73%. This process involved 330.6 hours of attorney review time, cost Teva $13,885, and yet 99% of the documents associated with this effort will not be produced to Plaintiffs given their non-responsiveness. And, of the 109 responsive documents that Teva's review found in the non-responsive set, almost all of them are duplicative of documents already produced or would be considered only marginally responsive. Stated differently, the *de minimis* number of responsive documents that Teva's onerous and expensive quality control review uncovered demonstrated that the missed are not highly relevant or dispositive documents. Without Teva being able to rely on CMML's TAR tool moving forward (which has now been shown to have a high level of accuracy), any further review of documents predicted to be non-responsive would eviscerate the notion of proportionality here. We are confident the Court will be satisfied with the performance of Teva's model and see the lack of value of further review of documents deemed to be non-responsive by Teva's CMML model.

As for the specific questions you raised during our telephone conference yesterday, Teva has manually reviewed a total of 628,509 documents to date.[1] 164,028 of those documents were from the six high-priority custodians (out of a total of 424,403 documents that hit on search terms for those six high-priority custodians). For the remaining 260,375 documents that have not yet been reviewed for the six high-priority custodians, Teva intends to ask the Court to permit it to rely on CMML to cut off its review of these documents because CMML predicts that only about 1,900 of the remaining documents are responsive, and again, those are likely to be duplicative and only marginally responsive.

For validation, Teva undertook a validation process similar to that set forth in the protocol for *In re Broilers Chicken*, and the results are fully defensible as defined by that protocol. Specifically, Teva's estimated TAR recall is 92.2%. Based on these numbers, it is clear that Teva

---

[1] This number continues to increase each day as our review continues.

GREENBERG TRAURIG, LLP  ■  Attorneys at Law  ■  www.gtlaw.com

Adam M. Slater
October 6, 2020
Page 3

has already found and reviewed virtually all[2] of the responsive documents for the high-priority custodians in this case and, therefore, continuing to review hundreds of thousands of non-responsive documents only to find a handful of marginally relevant and duplicative documents is a colossal waste of time and resources.

As far as your question about "false positives," we are not quite sure what you mean by that. We assume you are asking for the number of non-responsive documents in the production set for the six high-priority custodians. As noted above, we have reviewed 164,028 documents for the high-priority custodians. From that review, we have produced (or will be producing upon completion of redactions) a total of approximately 31,700 documents. All of the documents that have been produced (or will be produced) have been manually reviewed and coded as responsive, so in theory, there should be no "false positives." The only exception to that is the approximately 15,275 non-responsive documents that were produced (or will be produced) because they are family members of responsive documents.

To be clear, at this point, the issue here is not what the ESI Protocol permits or does not permit as it relates to CMML. Rather, this is a straightforward proportionality argument that the parties must address. Teva should not be forced to spend months and millions of dollars reviewing documents that it already knows are non-responsive, as now shown by its quality control and validation processes, as forth above. Forcing Teva to do so is the exact scenario that the December 2015 proportionality amendments to Rule 26 was intended to prevent—needlessly wasting resources on disproportionate discovery, which is particularly important to evaluate in expansive e-discovery matters. *See e.g.,* Hon. John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015) ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality . . . .").

In light of the foregoing, please let us know your availability as soon as possible for a follow-up telephone conference, wherein we expect to discuss (1) whether Plaintiffs would agree to Teva's use of CMML to exclude further manual review of the 260,375 documents that are largely predicted to be ***non-responsive*** by CMML, in light of the aforementioned metrics and evidence that Teva's review of non-responsive documents is disproportionate to the needs of the case; and/or (2) whether Plaintiffs are willing to enter into a cost-sharing agreement, recognizing the time and expense associated with Teva's further review of non-responsive materials, in the event Plaintiffs do not intend to agree to Teva's use of CMML to cut off the remaining documents of the high-priority custodians from manual review. Respectfully, if you are not willing to consider our request under any reasonable circumstances, please let us know as soon as possible so that we do not waste the parties' time only to reach a dead-end. To the extent we are unable to reach prompt agreement on this issue, we will urgently raise this matter with the Court to avoid further prejudice to Teva. I look forward to hearing from you.

---

[2] The Federal Rules require a reasonable search for responsive documents, which is more than Teva has done at this point.

GREENBERG TRAURIG, LLP ■ Attorneys at Law ■ www.gtlaw.com

Adam M. Slater
October 6, 2020
Page 4

        Very truly yours,

        */s/ Victoria Lockard*
        Victoria Lockard, Esq.
        *Attorney for Teva Pharmaceuticals USA,*
        *Inc., Teva Pharmaceutical Industries Ltd.,*
        *Actavis LLC, and Actavis Pharma, Inc.*

cc:    Lori G. Cohen, Esq. (*via email*)
       Jeffrey Greene, Esq.