# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | : : : : : : : : : | HON. ROBERT B. KUGLER HON. JOEL SCHNEIDER<br><br>Civil No. 19-2875 (RBK/JS) |

### DECLARATION OF MAURA R. GROSSMAN IN SUPPORT OF THE TEVA DEFENDANTS' LETTER BRIEF REQUESTING AN ORDER FORECLOSING REVIEW OF ADDITIONAL NON-RESPONSIVE DOCUMENTS AND/OR SHIFTING COSTS OF REVIEW TO PLAINTIFFS

Pursuant to 28 U.S.C. § 1746, I, Maura R. Grossman, declare:

1. For the sake of brevity, in lieu of reiterating my background and qualifications, I refer the Court to my *curriculum vitae*—previously filed as an attachment to the July 24, 2020 Letter Brief of Jeffrey W. Greene, (Dkt. 527-3)—setting forth my qualifications to serve as an expert on technology-assisted review ("TAR") in this matter, particularly as relates to continuous active learning® ("CAL®")—often referred to as "TAR 2.0."

2. I was retained by Greenberg Traurig in the above-captioned litigation to assist the Teva Defendants on matters relating to search and review, as well as validation methodologies involving CAL®, in particular, to oversee the Teva Defendants' review process to ensure that the Teva Defendants' productions are reasonable, made in good faith, and consistent with their obligations under Fed. R. Civ. P. 26(g). I have undertaken and validated over a hundred TAR reviews in the past, and have also negotiated and/or developed validation protocols, including but not limited to, the validation protocol used by the parties in *In re Broiler Chicken Antitrust*

*Litigation*, Case No. 1:16-cv-08637 (N.D. Ill. Jan. 3, 2018) (Order Regarding Search Methodology for Electronically Stored Information [Dkt. 586]) (the "*Broilers* Protocol").

3. I submit this declaration on behalf of the Teva Defendants in Support of their Letter Brief Requesting an Order Foreclosing Review of Additional Non-Responsive Documents and/or Shifting Costs of Review to Plaintiffs. I have personal knowledge of the matters set forth herein, and if called upon and sworn as a witness, I could and would competently testify thereto.

4. After a preliminary validation exercise conducted in September 2020, the Teva Defendants' contract attorneys reviewed and coded a uniform random sample of 15,000 documents—from the custodial files of the "high-priority" custodians identified in Plaintiffs' May 7, 2020 letter to Defendants—that were predicted to be non-responsive by the Brainspace CMML model ("CMML"). Of the 15,000 documents coded by the contract attorneys, a sample of slightly more than 10% was re-reviewed by Greenberg Traurig attorneys for the purposes of quality control ("QC"). The QC sample consisted of every document in the 15,000 sample coded responsive by the contract attorneys, as well as the top-scoring 500 documents coded non-responsive by the contract attorneys, and a random sample of 1,000 of the rest of the 15,000 documents.

5. The contract attorneys identified 70 of the 15,000 documents (0.46%) to be responsive. Based on QC by the Greenberg Traurig attorneys, the estimated number of responsive documents was revised to 109 (0.73%).

6. The Teva Defendants then ran eleven (11) additional rounds of CMML on the documents of the "high-priority" custodians in an effort to find additional responsive documents and found 1,607 more. At this point, the Teva Defendants determined that no additional responsive documents could be found with reasonable effort, a conclusion with which I agreed.

7. A final validation process was performed using a simplified *Broilers* Protocol. This exercise employed a uniform random sample of 500 documents drawn from the documents of the "high-priority" custodians that had already been produced, were identified for production, or were withheld on the basis of privilege, as well as 1,000 randomly selected documents from

the remaining documents of the "high-priority" custodians (*i.e.*, those withheld from production on the basis of non-responsiveness). This validation process estimated that CMML had identified 92.2% of the responsive documents for the "high-priority" custodians. Put another way, I estimate that CMML missed only 0.6% of the remaining 260,375 documents in the null set.

8. Based on the above estimates, I can conclude that it would be necessary to review approximately 166 non-responsive documents to find each additional responsive document in the null set. Thus, at this time, further review of the documents of the "high-priority" custodians predicted by CMML to be non-responsive would be disproportionate and inconsistent with the requirements set forth in Fed. R. Civ. P. 26(g).

9. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of October, 2020 in Waterloo, Ontario, Canada.

*/s/ Maura R. Grossman*
Maura R. Grossman, J.D., Ph.D.