1           UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW JERSEY
2

3   _____          CIVIL ACTION NUMBER:
    IN RE:  VALSARTAN PRODUCTS
4   LIABILITY LITIGATION             1:19-md-02875-RBK-JS

5   _____          STATUS CONFERENCE
                                      (Via telephone)
6

          Wednesday, October 14, 2020
7         Commencing at 4:05 p.m.

8   B E F O R E:              THE HONORABLE JOEL SCHNEIDER,
                              UNITED STATES MAGISTRATE JUDGE
9

10  A P P E A R A N C E S:

11      MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
12      103 Eisenhower Parkway
        Roseland, New Jersey 07068
13      For the Plaintiff

14      GOLOMB & HONIK PC
        BY:  RUBEN HONIK, ESQUIRE
15      1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania 19103
16      For the Plaintiff

17      LEVIN PAPANTONIO
        BY:  DANIEL A. NIGH, ESQUIRE
18      316 S. Baylen, Suite 600
        Pensacola, Florida 32502
19      For the Plaintiff

20      KANNER & WHITELEY LLC
        BY:  CONLEE S. WHITELEY, ESQUIRE
21      701 Camp Street
        New Orleans, Louisiana 70130
22      For the Plaintiff

23          Karen Friedlander, Official Court Reporter
                friedlanderreporter@gmail.com
24                  (856) 756-0160

25          Proceedings recorded by mechanical stenography;
        transcript produced by computer-aided transcription.

```
 1   A P P E A R A N C E S: - CONTINUED

 2

 3        DUANE MORRIS LLP
          BY:  SETH A. GOLDBERG, ESQUIRE
 4             REBECCA E. BAZAN, ESQUIRE
          30 S. 17th Street
 5        Philadelphia, Pennsylvania 19103
          For the Defendant ZHP and the Joint Defense Group
 6
          GREENBERG TRAURIG LLP
 7        BY:  VICTORIA LOCKHARD, ESQUIRE
               JEFF GREENE, ESQUIRE
 8        3333 Piedmont Road, NE, Suite 2500
          Atlanta, Georgia 30305
 9        For the Defendants, Teva Pharmaceutical Industries Ltd.,
          Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
10        Pharma, Inc.

11        BARNES & THORNBURG LLP
          BY:  SARAH E. JOHNSTON, ESQUIRE
12        2029 Century Park East, Suite 300
          Los Angeles, CA 90067-2904
13        For the Defendant, CVS Health Co.

14        ULMER & BERNE LLP
          BY:  JEFFREY DANIEL GEOPPINGER, ESQUIRE
15        600 Vine Street
          Suite 2800
16        Cincinnati, OH 45202
          For the Defendant, AmerisourceBergen
17
          PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
18        BY:  CLEM C. TRISCHLER, ESQUIRE
          One Oxford Centre, 38th Floor
19        Pittsburgh, Pennsylvania 15219
          For the Defendant Mylan and the Joint Defense Group
20
          RIVERO MESTRE LLP
21        BY:  ANDRÉS RIVERO, ESQUIRE
          2525 Ponce De Leon Blvd. Ste. 1000
22        Miami, FL  33134
          For MSP
23   A L S O   P R E S E N T:

24        Judge Magistrate Williams

25
```

*United States District Court*
*Camden, New Jersey*

```
 1                  (ALL PARTIES VIA TELEPHONE, October 14, 2020,
 2   4:03 p.m.)
 3            THE COURT:  Good afternoon, everyone, this is Judge
 4   Schneider.  If you're not speaking, could you please put your
 5   phone on mute, because we can hear some background noise.
 6   Great.
 7            Sarah, are you there?
 8            THE DEPUTY CLERK:  I'm here, Judge.
 9            THE COURT:  And do we have a court reporter?
10            THE COURT REPORTER:  Yes, Judge, Karen Friedlander.
11            THE COURT:  Hi, Karen.
12            Okay.  We're on the record.  This is Judge Schneider
13   in the Valsartan MDL, Docket No. 19-2875.
14            Can we have the entries of appearance of lead counsel
15   for both sides and whoever is going to talk, please, as
16   always, state your name so the court reporter knows who's
17   talking.
18            Let's start with the plaintiff.
19            MR. SLATER:  Hello, Your Honor, Adam Slater for
20   plaintiffs.
21            MR HONIK:  Good afternoon, Your Honor, Ruben Honik
22   for plaintiffs.
23            MR. NIGH:  Good afternoon, Your Honor, Daniel Nigh
24   for plaintiffs.
25            MS. WHITELEY:  Good afternoon, Your Honor, this is
```

1    Conlee Whiteley on behalf of plaintiffs.

2            THE COURT:  And defendants.

3            MR. GOLDBERG:  Good afternoon, Judge, this is Seth

4    Goldberg on behalf of the ZHP parties and the defendants.

5            MS. LOCKARD:  Hi, Judge, it's Victoria Lockard from

6    Greenburg Traurig for Teva and on behalf of the defendants, I

7    also have Jeff Greene from Greenberg Traurig and Dr. Maura

8    Grossman on.  I know they may not be needed, based on Your

9    Honor's e-mail, but in case, we do have them on just in case.

10            MR. TRISCHLER:  Good afternoon, Your Honor, Clem

11    Trischler for the Mylan defendants.

12            MR. GEOPPINGER:  Good afternoon, Your Honor, Jeff

13    Geoppinger for the distributor defendants and

14    AmerisourceBergen.

15            MS. JOHNSTON:  And good afternoon, Your Honor, Sarah

16    Johnston on behalf of the retailer and pharmacy defendants,

17    CVS and Rite Aid.

18            THE COURT:  Thank you for your letters, Counsel.

19    We'll deal with all of the issues.  I want to tell you that we

20    have a special guest star on this conference call today,

21    Magistrate Judge Williams, and she'll be on this call.  In

22    case you don't know, Magistrate Judge Williams is going to

23    take over the management of the case from a magistrate judge

24    perspective when I retire from the bench as of January 15, so

25    we thought now is a good start to start bringing Magistrate

1   Judge Williams up to speed and to transition things.

2          Are you there, Judge Williams?

3          JUDGE WILLIAMS:  I am here.

4          THE COURT:  Okay.  Well, we appreciate you being on

5   the call.

6          JUDGE WILLIAMS:  Thank you.

7          THE COURT:  Counsel, I received your letters.  We're

8   going to deal with all the issues as we always do.  If you'll

9   indulge me, I might go a little out of order, but I have all

10  my notes and when we wrap up, all the issues will be dealt

11  with.

12         I'd like to start with the Teva issue, and Mr. Greene

13  and the consultant, you're welcome to stay on the call as long

14  as you want, but when we're done talking about the Teva issue,

15  if you want to hang up, I won't feel insulted.

16         We're going to have to bring this issue to a head,

17  we're going to have to decide it.  I'm not going to decide it

18  before the plaintiffs have a fair and sufficient opportunity

19  to respond to the letter, but Teva raises some very important

20  issues.

21         I know the parties differ.  Obviously, I'm very, very

22  familiar with the background and since Teva raised it and they

23  requested certain relief, we're going to have deal with the

24  issue and decide it.

25         So, Mr. Slater, I just want to find out from

1    plaintiffs' perspective, how much time you want to respond to

2    Teva's letter.  As long as it's reasonable, it's fine with the

3    Court.  I do want to get the issue resolved before

4    January 15th, because of my background on the issue, and what

5    we've been through up to date.  I don't think it's appropriate

6    to put it on Judge Williams's plate, so what do you think?

7           MR. SLATER:  Thank you, Your Honor.  Having looked at

8    their letter again after I e-mailed Your Honor immediately

9    after receiving it, I think that we'll need at least two weeks

10   to respond because they raised a bunch of different points.

11          If we can get it to Your Honor before that, we

12   certainly will, we just have a lot going on, so I think just

13   to be safe, if two weeks is acceptable, that would be the

14   outside for us.

15          THE COURT:  Okay.  Why don't we say October 30th.

16   Okay?

17          MR. SLATER:  Thank you.

18          THE COURT:  All right.  And Teva, can you respond by

19   November 6th?

20          MR. GREENE:  Hi, Your Honor, it's good to talk with

21   you again.  Jeff Greene here.  We certainly can, Your Honor.

22   I do think, you know, to the extent if there's any sort of

23   expeditious handling that we could get here, that would be

24   helpful because there is, obviously, you know, production

25   deadlines at the end, you know, production deadlines coming up

1    at the end of November, and my concern and this was our

2    concern all along was, you know, if this gets pushed out too

3    long, we're going to be in a position where we may not have

4    our production complete by November 30th, if we're not allowed

5    to leverage CAML and to, you know, assert proportionality for

6    the review of the nonresponsive documents.

7         So that's the only concern I have is drawing this

8    out, and I'm not suggesting the Court is, puts Teva in a

9    difficult position where we don't really know where this is

10   going to go, if that makes sense.

11        THE COURT:  Well, we're going to do this, Mr. Greene.

12   We're not going to cut short plaintiffs' right to respond to

13   your letter, so we're going to give plaintiffs until

14   October 30 to respond.  We'll give Teva until November 6 to

15   reply, and we will tee up the issue for argument at the

16   mid-November conference.  I'll talk to you about the date of

17   that.  It will probably be November 11.  It's a Court holiday,

18   but I'm still prepared to go forward with the call on that

19   date.

20        I understand the issue that you raised.  I'm not

21   unsympathetic to it, however, the issue was raised just

22   yesterday, the implications of the issue are enormous in the

23   context of this case, at least as far as plaintiffs are

24   concerned.  I think the issue deserves a full and complete

25   hearing, and if it means that Teva doesn't get a decision as

1  promptly as they would like, we'll just have to live with the

2  consequences.

3          I can tell you, Mr. Greene, that under no

4  circumstances is the Court extending any deadline for any

5  defendant to produce its responsive documents and ESI.  We

6  have been over this time and time again in this case.  It was

7  back in the -- either the early winter or spring, I don't

8  recall right now, we set a deadline for the production.

9          I remember it was Mr. Trischler who approached the

10  Court and asked for an extension of time, because, apparently,

11  the defendants didn't anticipate that it would take as much

12  time as it did to produce the documents.  I remember that it

13  was Mr. Trischler who asked for an extension of time until

14  November 29 to complete the production.  I remember that

15  plaintiffs objected to the lengthy time period it would take

16  to complete the production.

17          The Court gave the defendants the benefit of the

18  doubt and gave the defendants exactly what they asked for.

19  They wanted that extension until November 29th, over

20  plaintiffs' objection, the Court granted the extension, and it

21  included the rolling production dates.

22          Since the Court granted defendants what they asked

23  for over plaintiffs' objection and the defendants have been on

24  notice of this deadline for months and months and months, no

25  good cause has been established to extend the deadlines.

1      So that's the Court's position with regard to the

2  request, if there is one, to extend any deadlines to complete

3  the ESI and document production that presently exists.

4      I would like to address a couple of issues with

5  regard to Teva's letter, which I think would help the Court

6  make an informed decision about what to do.

7      It would be very helpful, plaintiff, to the Court's

8  eventual ruling in this case, if you're going to rely on cases

9  where the Court ordered the defendants to produce or review,

10  quote unquote, nonresponsive documents.  If you could make

11  sure you cite those cases and point them out, because I would

12  like to see precedent of that, if it exists.  And I know when

13  we had our separate conversations, I recall Teva arguing that

14  no case has ever required a defendant to review documents

15  which are deemed nonresponsive pursuant to a TAR review, and I

16  seem to recall that it was plaintiffs who disputed that point,

17  so I'm particularly interested in seeing those cases.

18      From Teva's point of view, when you get to reply, if

19  you -- and I assume you will, Teva frequently argues in its

20  brief and it did in its latest brief that there are cases

21  permitting TAR review with -- I'm sorry, search term review

22  with layered TAR review.

23      Again, I very much would like to see those cases

24  because that would be a very important precedent that the

25  Court would have to review in order to make an informed

1    decision.

2         So I've read, I'm familiar with the older briefs that

3    were filed.  I've obviously read Teva's brief that was filed

4    yesterday, and it just seems to me that the parties can help

5    the Court by focusing their arguments and discussion not

6    exclusively on these points that I've just raised, but I've

7    highlighted for you what would be particularly persuasive to

8    the Court.

9         I know that Teva has time and time again relied upon

10   their consultant/expert who apparently represents that there

11   has been no case where a validation protocol included a review

12   of nonresponsive documents, or, where a Court has ordered a

13   defendant to review, quote unquote, nonresponsive documents.

14        Plaintiff disputes that point.  Those are the cases I

15   would really like to see, and I'll read those cases and will

16   study them and that will help me make an informed decision

17   about what to do in this case.

18        DR. GROSSMAN:  Your Honor, Your Honor --

19        THE COURT:  Let me just --

20        DR. GROSSMAN:  Okay.

21        THE COURT:  Can I just --

22        DR. GROSSMAN:  Yeah, I just wanted to correct

23   something.

24        THE COURT:  Okay.  There might be more than one thing

25   to correct, but let me just -- I think there was one other

1   point -- I think that was Ms. Cohen.  Let me just make one

2   other point and then I'll turn the floor over.  Bear with me

3   one second.

4         I want to direct the question to Mr. Slater and this

5   may be a point that you want to discuss in your brief.  On

6   Footnote 2, Page 3 of Teva's letter, they represent that they

7   had a communication with the plaintiffs at the November 15,

8   2019, in-person ESI meeting, that they said they were

9   considering TAR review, and they reserved their right to do it

10  but they haven't made a final decision.

11        I don't know what plaintiffs' position is with regard

12  to that representation, so it would be helpful to the Court to

13  know the history of discussions regarding the TAR review

14  because I know that the electronic discovery protocol in the

15  case, that is a Court order and was entered with the consent

16  of the parties, talks about TAR review and when does this --

17  it may address when to disclose it, et cetera, et cetera.

18        But I think that's an important point that the Court

19  needs to know.  I know plaintiffs' position, apparently, if I

20  remember right, was that this -- the thought that Teva was

21  going to do this TAR review was sprung on it at the last

22  moment.  Teva takes the position that they raised it at the

23  November 15th meeting.  I don't know what plaintiffs' position

24  is regarding that disclosure, so it would be helpful if the

25  Court -- for the Court if you also addressed that issue.

1    Thank you, Mr. Slater.

2           MR. SLATER:  You're welcome, Your Honor.

3           THE COURT:  You wanted to say something?

4           DR. GROSSMAN:  This is Dr. Grossman.  I just wanted

5    to clarify what I understood the position that Teva and myself

6    said to you.  I do not believe we represented that there's

7    never been any review of nonresponsive documents.  Parties

8    have certainly agreed to that.

9           I am not aware of any case outside of a punitive

10   context, in other words, something had went wrong or a party

11   had failed to produce in time or a party sua sponte changed

12   course midstream and didn't notify the other side.  But I'm

13   not aware of any case outside of those two contexts where a

14   party has been ordered to produce nonresponsiveness --

15   nonresponsive documents.

16          I think it would be fair to say the majority view is

17   that plaintiffs are not entitled to nonresponsive documents.

18   I just didn't want you to believe that we had said there's

19   never ever ever been a case where nonresponsiveness --

20   nonresponsive docs haven't been reviewed.

21          THE COURT:  Dr. Grossman, thank you very much for

22   that clarification, and I think you raise a good point that I

23   assume Mr. Slater and his group is going to address in his

24   reply due in two weeks.

25          I know that Teva takes the position as it stated in

1    its letter that it served, that the Court has to really

2    address only the proportionality issue.  One of the things

3    that I assume plaintiffs are going to address in their letter

4    is whether there was a breach of the electronic discovery

5    protocol in this case because of the alleged late disclosure,

6    which would bring this case into the, quote unquote, punitive

7    context that you talked about.

8         There is a dispute in this case and Teva's letter

9    means that we're going to have to squarely address it, whether

10   there was a breach of the electronic discovery protocol or

11   not, because of plaintiffs' contention, which may be disputed

12   by Teva, that there was a late disclosure of the use of TAR.

13        So I don't know right now, we'll have to see what the

14   record is and how things develop, whether this case falls

15   within the, quote unquote, punitive line of cases.

16        But even if it doesn't, we'll have -- this Court will

17   have to address the issue of outside the punitive context,

18   does it have the authority to order Teva to produce

19   nonresponsive -- quote unquote, nonresponsive documents.

20        So I'm not making any decision now, Dr. Grossman.  I

21   appreciate your clarification and I thank you for doing that.

22   I think -- I'm not trying to mislead or misstate anything, but

23   there are a number of different issues here, and I know from

24   reading Teva's letter and the background this Court has as to

25   this dispute, that a lot of the representations that Teva

1  makes in its letter are going to be disputed by plaintiffs,

2  and that's what I'm here for and eventually, I'm going to have

3  to rule.

4       Is there anything else we need to deal with on the

5  Teva issue?  And like I said, if the doctor and Mr. Greene

6  want to excuse themselves, that's fine, if they want to stay

7  on the call, that's fine, but I would like to exhaust that

8  issue now so we give them an opportunity to excuse themselves

9  if they want to remove themselves from the call.

10      MR. SLATER:  Nothing further from plaintiffs, Your

11  Honor.

12      MR. GREENE:  Your Honor, this is Jeff Greene.  Thank

13  you for your time.  Nothing further from defendant Teva on

14  this.

15      THE COURT:  Okay.  Doctor, if you want to stay on the

16  call, you're welcome to.  But, like I said, I won't be

17  insulted if you excuse yourselves.

18      MR. GREENE:  Thank you, Your Honor.

19      THE COURT:  That was the first issue I wanted to deal

20  with.  Again, I'm taking this a little out of order.

21      Mr. Goldberg, there was a request in your letter to

22  extend the plaintiffs' class rep depositions.  Let's be clear,

23  the Court didn't order that these deps start on December 1.

24  If you want to start them December 1, God bless you, that's

25  fine with the Court.  The Court order stated that they shall

 1   start no later than January 15th.  That decision is up to the

 2   defendants, but I know that in your letter filed yesterday,

 3   you requested an extension of those deadlines.  The Court will

 4   hear you on that issue.

 5            MR. GOLDBERG:  Thank you, Your Honor, and I'm going

 6   to turn this over to my colleague, Rebecca Bazan, who has been

 7   focusing on this specific issue.

 8            MS. BAZAN:  Thank you, Mr. Goldberg.  Good afternoon,

 9   Your Honor, this is Rebecca Bazan, that's spelled B-A-Z-A-N,

10   from Duane Morris.

11            Your Honor put into place this four-tiered sort of

12   reverse waterfall process for defendant fact sheets and as far

13   back at least as January, we've discussed that the main

14   purpose of that defendant fact sheet process is the product

15   identification issue, and hand-in-hand with the product

16   identification issue is the proper defendant identification

17   issue, and plaintiffs argued that they needed the defendant

18   fact sheets to be filled out at every level so they could get

19   answers to the product identification issue.

20            And we think it's important that the proper

21   defendants be identified or at least have the possibility of

22   being identified so that they can attend every class

23   representative deposition that purports to include product

24   that they've manufactured or sold.

25            So we requested that the timeframe for punitive class

1    representative depositions be extended to allow at least the

2    majority of the defendant fact sheet process to run its

3    course.

4        THE COURT:  Do the plaintiffs want to be heard on

5    this issue?

6        MR. SLATER:  Yes, Your Honor, Adam -- go ahead,

7    David, go ahead.

8        MR. STANOCH:  Thanks, Adam.  You can jump in.  Your

9    Honor, this is David Stanoch for the plaintiff.  Your Honor,

10   we disagree with defendants' position that the cascading

11   defendants' fact sheet process has -- was implicated here for

12   the 20 or so class reps.  The issue of identification was

13   principally important on the personal injury side for the

14   hundreds and hundreds of people.  And at the time, defendants'

15   issue was the burden and needing time and they didn't want to

16   be swamped with dozens and dozens and dozens and hundreds of

17   these at once.

18       That's not what we're talking about here.  The class

19   representatives have completed their fact sheets nine months

20   ago.  There's no active deficiency that were ever listed for

21   Judge Kugler, they have all the records they need.

22       Even if all of that was not true, Your Honor, we're

23   talking 20 or so people that these defendants can easily find

24   in their own data and poll to get whatever additional

25   information they think they need and figure it out outside of

1    the DFS process.

2         Most of the fact sheets already identify down to

3    street address, pharmacies used and which defense pharmacy,

4    NDC codes of the manufacturers' products, to the extent it was

5    available in the pharmacy records.  All this information is at

6    their fingertips and has been at their fingertips for months

7    and months and months.

8         So we disagree with the -- we have a number, a

9    majority of our class reps are available anytime after

10   Thanksgiving to sit for deposition, we're ready to go, and the

11   suggestion that this has to wait until the end of the fact

12   sheet process in mid-April 2021, and then further, they say

13   the end of August 31st, strikes us as a gross delay in this

14   case, given the narrow scope of the small number of class reps

15   that are at issue here.

16        MS. BAZAN:  Your Honor, if I --

17        MR. SLATER:  I'm sorry.  Let me just add to that just

18   for the plaintiffs, please.

19        Your Honor, we're going to be continuing to provide

20   dates for class representatives, including the TPPs.  It's my

21   understanding that dates in November are going to be provided,

22   and in December.  Our interest is in moving this case forward,

23   which, you know, we've heard the Court loud and clear that the

24   case needs to move, and, you know, it's pretty obvious what's

25   happening and we don't want to -- we don't want to push any

1    deadline off.  We want to start producing people very soon to

2    be deposed.

3         I mean, these are simple depositions.  What could you

4    be asking a class rep, that that class rep themselves is going

5    to know about.  They took the drug, they paid for it.  You

6    know, that's pretty much it.  How long can these depositions

7    take?  Two hours?  It's hard to fathom.

8         So from our perspective, we want to move forward with

9    this as soon as possible.  We took to heart what Your Honor

10   told us months and months and months ago, which is the

11   low-hanging fruit for depositions is going to be the plaintiff

12   class reps.

13        So, you know, we're looking to start parading them up

14   for depositions and get these -- which should be very simple

15   straightforward depositions if they're taken appropriately,

16   done as soon as possible.

17        MS. BAZAN:  Your Honor, if I may.

18        THE COURT:  Last word, Ms. Bazan.

19        MS. BAZAN:  Thank you, Your Honor.  The defendant

20   fact sheets were always negotiated together, the class

21   representatives and the personal injury plaintiffs.  Your

22   Honor entered an order specifically laying out the trigger

23   date for the class representatives and for the personal injury

24   plaintiffs.  There are 34 punitive class representatives, 24

25   from the economic loss Master Complaint and ten from the

1    medical monitoring Master Complaint.

2              So it is hard to understand at this moment how, you

3    know, plaintiffs fought so hard to have this defendant fact

4    sheet processed, which some of the defendants at least fought

5    and plaintiff fought for, said it was absolutely necessary.

6              So it's either important or it's not in terms of

7    product identification in identifying the proper defendants.

8    Plaintiff had always taken the position before today that it

9    was necessary.

10             MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  If

11   I may add one point, which is that the thing that we're asking

12   for is to enlarge the period of time for the class

13   representative depositions, because as it's currently ordered,

14   the two-or-three-month period that has been set, won't be

15   sufficient to take all of the depositions in time for all of

16   the defendant fact sheets to be completed.

17             For example, there are some class representatives

18   whose defendant fact -- whose plaintiff fact sheets have only

19   been completed in the past month or two, and so their

20   defendant -- the defendant fact sheets for those class

21   representatives are on a delayed schedule as a result of the

22   delayed completion of the plaintiff fact sheet.

23             And so what we want to be -- what we're really more

24   concerned about, you know, enlarging the end date period, you

25   know, enlarging the period so that we can complete the

1    depositions in -- as the defendant fact sheets are being

2    completed.

3         MS. BAZAN:  And one other thing I would like to note.

4    This is Rebecca Bazan again.  You know, plaintiffs are saying

5    that they are offering up dates for November or December, but

6    the Court I believe will get to later in this call, we're

7    still negotiating whether the class representatives including

8    the TPP class representatives will have to respond by document

9    requests.

10         Once those are entered, then they'll have a certain

11   amount of time to respond, but November is just not feasible

12   for being able to begin these depositions.

13         MR. SLATER:  Your Honor, for the plaintiffs, we don't

14   mind if they want to say that there may be a need to take

15   depositions of class reps beyond January or February, if that

16   becomes necessary, because obviously, there may be reasons why

17   they have to happen, so we don't have a problem with that.  We

18   just want to get this process going and get started.  That's

19   our position.

20         THE COURT:  Thank you, Counsel.

21         The Court's ruling is the request to extend or change

22   the current scheduling deadlines of the depositions of the

23   class plaintiffs is denied.  In the Court's view, no good

24   cause has been established to extend these deadlines.  If we

25   keep on extending deadlines in this case, we'll never get this

1    case over with.

2            The Court is going to say something with regard to

3    these plaintiffs' depositions that apply to all depositions in

4    this case.  If it turns out, and let me just add, that I take

5    this position not only in this MDL, but I take the same

6    position in the thousands of cases that I manage and handle.

7    If we wait until every last breath or piece of paper is

8    produced to start scheduling depositions, they'll never get

9    done and the case will languish forever.

10            If a deposition is taken and it turns out that

11    documents or relevant information is produced after that

12    deposition that should have been produced before the

13    deposition and is material to the deposition, you'll get a

14    chance to redepose the witness.

15            In the years of experience this Court has had, that

16    very, very, very rarely happens, but when it does, the

17    consequence is that the witness gets redeposed.  The beauty of

18    that procedure is that it incentivizes the deponent to

19    complete their document production before their scheduled

20    deposition so that they don't run the risk of being deposed a

21    second time.

22            In the Court's view, the defendants have and will

23    have more than sufficient information to adequately depose

24    these class plaintiffs.

25            But if it turns out that material information is

1   produced after these plaintiffs' depositions that should have

2   been produced before the deposition, I'll put this in an order

3   to be entered, the Court will very seriously consider a

4   request to redepose that witness.

5           So the bottom line is, these depositions are going to

6   start and end according to the schedule set forth in the

7   order.

8           It's up to the defendants when they want to start

9   these depositions.  If they want to squeeze them in, they'll

10  wait until January 15th to start.  If they want to give

11  themselves breathing room, they'll start them December 1, but

12  I won't be here to make the decision.  But if I was making the

13  decision, come the end of the deadline, if the defendants

14  start complaining that they don't have enough time to complete

15  the deps, I'll say why did you start them on January 15th

16  instead of December 1?  That was totally and completely within

17  the defendants' control how much time they want to complete

18  and take these depositions.

19          The order is clear on the schedule.  No good cause

20  has been established or shown to extend these deadlines, and

21  the order's not going to be extended, but I will add this, I

22  think Mr. Goldberg raised a good point that the Court had not

23  considered, and will make this accommodation.  In fairness to

24  the defendants, they should have plaintiffs' answers to fact

25  sheets before the deposition.

1          I don't know if this is going to come into play or

2   not, but I'm going to add to the Court's order, that at a

3   minimum, plaintiffs have to provide the fact sheets at least

4   21 days before their depositions are taken, and that should

5   protect the defendants and give them time, if information is

6   produced late, and that was something that the Court hadn't

7   considered, but I think it is an important point to protect

8   the defendants' interests.

9          I don't know if that will ever come into play given

10  the schedule in this case, but in the exercise of caution, I'm

11  going to add that to the Court's order.

12         The next issue --

13         MR. GOLDBERG:  Your Honor.

14         THE COURT:  Yes.

15         MR. GOLDBERG:  I would like to -- this is Seth

16  Goldberg.  I can come back to that point, when we talk about

17  the Rule 34 discovery.

18         THE COURT:  Okay.  The next item I want to raise is,

19  I note that the defendants and perhaps the plaintiffs have

20  asked for oral argument on the Rule 12 motions.

21         Counsel, that's an issue that's going to be totally

22  and completely decided by Judge Kugler.  I'll try and get an

23  answer for you before the end of the month, but if I don't get

24  back to you before the end of the month, you can certainly

25  raise that issue with Judge Kugler at the end of the month.

1    But I'm afraid that it's not something I have any input into,

2    so I can't help you with that issue.

3            The last issue I want to address before we get to the

4    agenda items that the parties raised is, the current order

5    provides that the deposition protocol has to be at least a

6    draft of it or hopefully a final version, which we're thinking

7    is going to be submitted by the end of the month or at least a

8    list of the disputes, and I had suggested, I think there

9    should be an addendum for each of the parties, because each of

10   the manufacturer defendants are going to face peculiar

11   problems.

12           Can I assume the parties are on track with their

13   discussions about the deposition protocol and things are

14   moving forward on that?  Because the defendant deps are going

15   to start no later than January 15th.  We know the enormous,

16   enormous logistical problems that those depositions are going

17   to create, so it's just critical to keep the case on track,

18   that we keep these issues on the front burner.

19           So have the parties been having these discussions

20   about the protocol?

21           MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  We

22   met -- we had a few discussions a few weeks ago.  We met again

23   today to talk about the protocol.  Our hope is that we will at

24   a minimum have agreement on most of the terms and have, as you

25   put it, you know, be able to raise issues for you to resolve,

1   if any, at the end of the month.

2        So we are -- we are working toward that objective.

3        THE COURT:  Mr. Goldberg, have the parties discussed

4   whether it's appropriate to have these separate addendums for

5   each of the manufacturer defendants?

6        MR. GOLDBERG:  That is not something we have

7   discussed, so we can put that on the agenda for our next call

8   as a group.

9        THE COURT:  Okay.  Because I just anticipate, if I'm

10  wrong, that would be great, I hope I'm wrong, but I

11  just anticipate there will be peculiar items, peculiar issues,

12  you know.  The ZHP has its own issues, obviously, that may be

13  different from Teva, or Mylan, or Aurobindo, et cetera.

14        MR. GOLDBERG:  I think that's a fair point, and, you

15  know, we'll work that into our discussions.

16        THE COURT:  Okay.  Let's get to the parties' agenda

17  items, and the first item I have on the list is what you

18  raised, Mr. Goldberg, the document requests.

19        The separate document request is the economic class

20  plaintiffs.  I don't think there's a dispute that if it's

21  duplicative of what's in the fact sheet, you know, they don't

22  have to be answered, but, of course, I anticipate there's

23  going to be a dispute about whether they are, in fact,

24  duplicative, right?

25        MR. GOLDBERG:  Well, right.  There are a few things

1    going on here, Your Honor.  This is Seth Goldberg.  You know,

2    there is a dispute as to whether the request that we're now

3    seeking are duplicative.  That's been the only objection

4    asserted to the requests.  We don't think they are and we had

5    a meet and confer with plaintiffs and, you know, after hearing

6    their position that they are duplicative, we identified the

7    specific documents that we think are not duplicative.  They

8    are in our insert on Page 2 of our submission.

9         And I think one point -- and there are a few points I

10   would like to cover on this issue on the duplicative point, we

11   don't think they are duplicative.  The wording in the

12   plaintiff fact sheets is not written to cover any of these

13   kinds of documents that are on Page 2 of our submission, in

14   particular, are the insurance and deductible information.

15        But if they are duplicative, you know, plaintiffs

16   should have to certify that they searched for and collected

17   these kind of documents that are in their possession, and what

18   they have very clearly said in their paper is that they didn't

19   do that and they shouldn't have to do that now.

20        And, you know, of course, defendants have been

21   required to produce not only core discovery throughout 2019

22   before even getting to document requests, but then total, 140

23   document requests, about 70 to 80 just on the manufacturer

24   defendants.

25        So we don't read the plaintiff fact sheet as being

1    the limit on defendants' discovery of the economic class

2    representatives, both the consumers and the TPPs.  We read it

3    as a source of information that is central to a specific

4    plaintiffs' claim, and -- but not the information, not the

5    information that's core to their class certification

6    allegations.

7            And the information we're seeking now with the Rule

8    34 requests are truly essential to the questions about

9    ascertainability and their damages calculation, and this kind

10   of information is not covered in the plaintiff fact sheets,

11   it's information that we need to be able to understand their

12   theory and to be able to defend or oppose their motion for

13   class certification.  And, you know, in essence, they're

14   claiming that they should be reimbursed a hundred percent of

15   any payment made for any of defendants' ECDs even if they

16   weren't contaminated, and what we're trying to do is to obtain

17   the information that is in their possession that shows all of

18   the variations from consumer to consumer, not just these class

19   reps, but remember, they represent thousands and thousands of

20   alleged consumers of these drugs, and all of these consumers

21   who are paying co-pays, who have insurance, all of their

22   payments are subject to pharmacy benefit plans, formularies,

23   drug -- out-of-pocket caps, pricing tiers, preferred pharmacy

24   options, preferred delivery options, each of which changes the

25   price that any one plaintiff or any one consumer would pay for

1    any prescription, let alone all of their prescriptions.

2            And all of these variations from prescription to

3    prescription, payment to payment, plaintiff to plaintiff, make

4    their case for ascertainability and a class-wide damages model

5    very challenging, and we -- we need this information, this is

6    kind of essential information that defendants are allowed --

7    permitted to obtain in discovery.

8            THE COURT:  Can I -- Mr. Goldberg, can I interrupt

9    for one moment?

10           Are there two issues that we have to address, one,

11   will defendants be permitted to serve Rule 34 document

12   requests, because plaintiffs argue that defendants are limited

13   to what's in the fact sheets.  If we get over that hurdle, is

14   the second issue what we usually deal with, propriety of each

15   of the document requests?

16           MR. GOLDBERG:  I don't think so, because plaintiffs

17   have not objected to any of the requests on any other basis

18   that they are duplicative, and the reality is -- and this is

19   what we -- we tried to have a discussion with them and, Your

20   Honor, if you look on Page 3, I believe, of our submission --

21   no, I'm sorry, Page 4, we tried to have a discussion with them

22   to understand if they, you know -- if we were missing

23   something, if this information wasn't somehow relevant to

24   their damages analysis, wasn't somehow relevant to how they

25   intend to prove up class certification, and, you know, they

 1    don't object on a relevance basis, they can't object on a

 2    burden basis, and, you know, it's really, I think especially

 3    when it comes to the TPPs, that they are purporting to

 4    represent an unknown number of assignors, okay.  In their

 5    master -- MSP recovery in particular, represents the claims of

 6    assignors.  In the Master Complaint, they identify three

 7    assignors, Emblem, SummaCare and ConnectaCare.  And those

 8    three assignors completed plaintiff fact sheets.  However, the

 9    information that they provided is incomplete, even if these

10    requests were duplicative, the information those assignors

11    provided is incomplete.

12         So we would need to understand, do they intend to

13    supplement their incomplete production of things like

14    formularies and plan agreements and pricing to the extent they

15    claim it's duplicative.

16         But one thing that's missing, if I may, Your Honor.

17         THE COURT:  Okay.  Go ahead.

18         MR. GOLDBERG:  I just want to make one more point,

19    which is that there are potentially other assignors, and we

20    don't know the number, but those assignors represent the

21    purchases that plaintiffs seek to claim in their damages

22    model.  So unless plaintiffs are going to -- are going to

23    limit their damages to the three assignors who are named in

24    the Complaint, then we need more -- we -- and I don't think

25    they will, but you can ask them, are they going to limit their

1   damages to those three assignors, because if not, then all of

2   the other assignors whose claims they are going to include in

3   their damages analysis need to respond to the plaintiff fact

4   sheets or to the Rule 34 discovery or both.

5          THE COURT:  Okay.  Plaintiff, let me start with

6   asking you the first basic question.  Are you objecting to

7   defendants' right to serve Rule 34 document requests before we

8   even get to the issue of the propriety of each of the

9   requests?  What's your position on that?

10         MR. STANOCH:  Good afternoon, again, Your Honor.

11  David Stanoch for plaintiffs.  And the answer to that is, yes,

12  we do.  I can elaborate, if Your Honor would like to.

13         THE COURT:  Well, I want to hear your objection and

14  then I want to rule on it.

15         MR. STANOCH:  Yes, thank you, Your Honor.  Your

16  Honor, last year the parties exhaustively argued the plaintiff

17  fact sheets, including the economic loss fact sheets before

18  Your Honor, and at that time, Your Honor was asking defense

19  counsel, is this the information you'll need for class

20  certification, and that's what the defense counsel indicated.

21  There were requests that we said went beyond class

22  certification.

23         For example, Your Honor may recall, I think I argued

24  it, was, they wanted health care provider information and I

25  said to Your Honor then last year, I said, that has nothing to

1    do with the economic loss, how much they paid, how much they

2    were damaged, and the defendants said otherwise, and Your

3    Honor granted that, and there is a full health care provider

4    authorization for all of the providers who treated

5    hypertension with Valsartan or otherwise, even in other drugs.

6         So the purpose of that at that time was to make sure

7    the class cert issues, not potentially all merits issues for

8    all times, but the class cert issues were all understood and

9    put forth, and we proceeded on that basis and we filled out

10   the fact sheets and submitted them nine months ago to the

11   defendants.

12        And then we submitted trial plans to Your Honor or to

13   Judge Kugler, in early March, and nowhere in the trial plan

14   for the defendants did they identify any need or any

15   additional formal written discovery beyond what was in the

16   fact sheets and authorizations which they wrote and the Court

17   blessed.

18        And now here we are six or seven months later and

19   they're saying, wait, we do, in fact, need several more

20   documents.  And it was a bit of a moving target a bit, Your

21   Honor, they had draft Rule 34 requests and then they give us a

22   condensed list, and then they have nine contention questions

23   to us as counsel, it was a little confusing, but that's where

24   we are and why we object on the initial issue, Your Honor.

25        MR. GOLDBERG:  May I respond, Your Honor?

```
 1            THE COURT:  Time out, Mr. Goldberg, time out.

 2            The Court's ruling is that the defendants have a

 3   right to serve Rule 34 document requests.  The Court does not

 4   recall it being envisioned that the fact sheets would be

 5   exhaustive with regard to all of the information the

 6   defendants needed for class certification purposes.

 7            So the real issue is whether the requests are

 8   appropriate, extensive, et cetera, et cetera, the propriety of

 9   each of the document requests.  That's the real issue, not

10   whether defendants have a right to serve them or not, okay?

11            So I didn't mean to cut you off, Mr. Goldberg, but I

12   knew how I was going to rule on that issue and I didn't want

13   to belabor the point.

14            So now the issue becomes, how are we going to deal

15   with this issue.

16            I am not prepared during this call to go through each

17   request one by one to make a ruling, nor do I know if the

18   parties have exhausted their efforts to try and reach an

19   agreement, or are they at an impasse on what needs to be

20   produced.

21            Plaintiff, what's your position on that?

22            MR. RIVERO:  Judge, may I be heard for a moment?

23   This is Andrés Rivero.  I represent MSP, Judge, and I was

24   trying to make a comment.  I know the Court has ruled, but if

25   I may, and I think it does relate to the general question.
```

1      Your Honor, and let me just say hello to Judge

2  Williams as well.

3      Judge, it's ironic, it was 354 days ago, I was before

4  you arguing many of the precise issues that are being raised

5  by the defendants now.

6      At that time, Judge, you may or may not recall,

7  Judge, but I had engaged in good faith with the defendants at

8  that time before that hearing, Ms. Lockard argued it, you

9  heard it, Judge, we had a full discussion about the matter and

10  at the end, you ruled that we were -- that what was ordered to

11  be done in the fact sheet was what we would have to do, but

12  that if the other side made a -- showed a genuine need for

13  class certification purposes, they could expand that.

14      Now, Judge, I understand the ruling.  I just want to

15  say this.  As you go to this consideration, they've made no

16  showing.  In fact, there's a -- contrary to what Mr. Goldberg

17  has said, there's significant duplication, there's significant

18  categories that are irrelevant to any claim that we have.  And

19  frankly, Judge, the issue about the -- they know that we gave

20  information on 62 percent of all of the individuals, the

21  assignors had -- in our total amounts, so Mr. Goldberg said he

22  doesn't know how much it is.  They know and Ms. Lockard argued

23  it.  They know it's 62 percent.  We gave them the exact

24  number.  We spent months on this, Judge.  We provided to them

25  in March.  They have never once objected to those as being in

```
 1   any way inadequate, contrary to what Mr. Goldberg is saying

 2   that they're incomplete.

 3        They've had at this point, seven months and they

 4   never said boo.  Judge, it took us months.  We had to go --

 5   these are assignors, we went to a ConnectaCare, to SummaCare,

 6   to Emblem, worked through what was ordered by the Court and

 7   responded to it.

 8        Judge, I understand that you're going to go deeper

 9   into this.  I wanted to make those statements.  I'm not

10   expecting that you would change the ruling, but to make sure

11   that it's clear that we did a lot of work, we relied on an

12   order of the Court which was a year ago, and they never

13   objected for seven months, Judge, and that needs to bear in

14   the consideration of how this goes forward.

15        THE COURT:  Well, counsel, everything you said is

16   consistent with the Court's conclusion.  Where we are is the

17   propriety of each of their requests, and we're going to have

18   to deal with that.

19        And the question I asked from the plaintiffs'

20   perspective, do they believe they have exhausted their good

21   faith efforts to eliminate or at least narrow the disputes

22   with the defendants.  That's the question I would like

23   answered.

24        MR. RIVERO:  I'll answer that one briefly for us,

25   Judge.  There are 35 -- pardon me, 38 document requests, many
```

1    of which are duplicative and irrelevant, and I'm certainly

2    always willing to try in good faith, because I think it would

3    be absurd to ask the Court to address all 38 of those.

4            MR. STANOCH:  And, Your Honor, David Stanoch on the

5    consumer side.  I agree that we have not fully exhausted the

6    meet-and-confer process and with this latest letter from

7    yesterday from defendants.  We should be able, hopefully, very

8    promptly, to narrow some of these things for further

9    discussion.

10           THE COURT:  Okay.  Well, let's talk about when you're

11   going to meet and when we're going to tee up these issues to

12   get decided, okay?  And if it means that we have to decide

13   them at the conference at the end of the month, that's

14   perfectly fine with the Court.

15           I just want to be satisfied that the parties can

16   represent to the Court, now that we're over the hurdle of

17   whether or not defendants have a right to at least serve these

18   requests, we're now to the nitty-gritty that we deal with all

19   the time, the propriety of each request, and I'd rather

20   resolve this issue sooner rather than later, so I can get

21   discovery dispute letters from you both in time to address

22   this during the conference at the end of the month.

23           MR. STANOCH:  Your Honor, David Stanoch again for

24   plaintiffs.

25           We'd be happy -- some combination of us to move

1  promptly on this, and if it has to be the conference in two

2  weeks, so be it, but if it can happen sooner, we're committed

3  to doing that at the Court's convenience.

4        MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  Of

5  course, defendants, you know, will be happy to meet with

6  plaintiffs.  I do just want to make, you know, two statements

7  to just correct the record, that we had a discussion last week

8  about the requests and at plaintiffs' request, we came up with

9  a narrower set, which is reflected in this list of what we

10  believe are not duplicative.  We're happy to go through this

11  list with plaintiffs and talk about our requests.

12        Plaintiffs, you know, refer to the timing of things.

13  I just wanted to be clear, we attached last week to our -- or

14  two weeks ago to our submission, doc 582, Exhibit B, a

15  document that we provided to plaintiffs on January 4th of

16  2020, identifying just about every one of these documents and

17  letting them know, we expected them to be produced.

18        So this is not like defendants had waited and not

19  raised this issue before.  But we're happy to work with

20  plaintiffs and, I mean, given all of the things that are going

21  on, we certainly will work to get this resolved for the

22  end-of-the-month conference.

23        THE COURT:  Okay.  So served -- each side will serve

24  their discovery dispute letters on this Rule 34 dispute by

25  Monday, the 26th, and we'll tee up the issue for argument and

1   decision at the conference on the 28th.

2          MR. STANOCH:  Thank you, Your Honor.

3          MR. GOLDBERG:  Thank you, Your Honor.

4          THE COURT:  Next issue I have is the schedule for

5   class rep deps.  I think we discussed that already.

6          The next issue is the Aurobindo privilege log issue.

7          Plaintiff, are we only talking about the one page

8   that was attached to your letter?

9          MR. SLATER:  Hi, Your Honor, it's Adam Slater.  It

10  is, and in fairness to Aurobindo, Aurobindo, they've asked us

11  if we would be amenable to discussing this with them before

12  asking for a ruling from the Court.  We've scheduled a call

13  with them Friday, so we're happy to discuss that with them and

14  hold this issue for two weeks in the hope that we could

15  resolve it.  But the answer to your -- so that's the long

16  answer, almost, not to your question, but to a different

17  question.  But the answer is, yes, to your question.  That was

18  the entire privilege log that's been served.

19         THE COURT:  I'm perfectly fine to give the parties a

20  chance to work this out.  So that's fine.  We don't have to

21  address the substance of it today and hopefully, you could

22  work it out, and if you can't, raise it at the appropriate

23  time.

24         MR. SLATER:  Thank you.

25         THE COURT:  The next item I have on my list is the

1    pace of defendants' production.  We deal with this issue every

2    conference, Mr. Slater.  I don't know what to tell you.

3            The outside date, because the production is

4    November 29th, you're going to start your deps hopefully

5    January 15th.  I said it before, Mr. Slater, and again, in

6    every case that I handle, if defendants produce documents late

7    that should have been produced ahead of time, it's going to be

8    in my order, you'll get a chance to redepose the witness and

9    it will be the law of the case.

10           So I think that's only fair.  We can't wait until the

11   defendants produce every last scrap of piece of paper to start

12   deps and the defendants continually represent they're making

13   good faith efforts to produce documents.  I don't know what

14   else this Court can do.

15           MR. SLATER:  Your Honor, it's Adam Slater, and if

16   anyone on my team wants to supplement what I'm saying.  What

17   we're really trying to do is to just let the Court know of our

18   concern because we didn't want at the end to have not kept

19   Your Honor aware.

20           We can just tell you that the document production to

21   date, the numbers of documents and pages are very, very low,

22   compared to what we expect, and we just really want to

23   continue to make a record that we are asking the defendants,

24   for example, when are the custodial productions for any

25   witnesses going to be complete.  So far their response or

1    standing is that -- witness's custodial production is done,

2    because we've asked the question of every defendant, are any

3    of them done, and the answer has been no, or there's been no

4    response.

5            So that's concerning, and you understand, I know,

6    where we're coming from, and there's also things that we're

7    doing now in discussions that we're having, such as, you know,

8    prioritizing deponents and things like that, which, you know,

9    we're making the decisions at this point based on what we know

10    and we, of course, are just trying to protect our record to

11    make it clear that, you know, we don't have all the

12    information.  So there could be somebody who's in 32nd place

13    to be an important witness and then their key documents come

14    to us November 28th and that person is bumped up to, you know,

15    fourth in line or something.

16            We know you understand this, but we also just want to

17    make a point of letting the Court know our concern that the

18    raw numbers of documents are very concerning.  We find it hard

19    to believe we're not going to get a quote unquote document

20    dump as compared to what's been produced in the month of

21    November, which was always saying that would never happen.

22            So we're just trying to protect the record and to

23    also just, you know, flag for Your Honor, again, that there's

24    a lot of other things going on now, or at least some other

25    things going on that are dependent on our knowledge of the

1    case and our knowledge of which witnesses matter and the

2    documents which we just simply don't have.  Thank you.

3         THE COURT:  If you're worried about documenting the

4    record that you believe, you, plaintiffs, believe the document

5    production is not proceeding as rapidly as it is, as it should

6    be, rather, I'm confident that the record is pretty clear on

7    that.

8         MR. SLATER:  Thank you.

9         THE COURT:  But just as clear, just as clear is the

10   defendants' position, that they're complying with the Court's

11   orders and they're acting in good faith, and we'll just have

12   to see at the end of the day where things wind up.  But you

13   heard me say today that the November 29th date is not going to

14   be extended, nor is the date to take the depositions.  So

15   we're full steam ahead.

16        The last issue -- well, I just want to talk about

17   scheduling before we go any further.  I know we have a call at

18   the end of the month, October 28th.  I'm looking at November's

19   calendar.  The mid-month call is November 11th, it's Veterans

20   Day, but I still propose that we hold it.

21        When we get to November, I don't think anyone wants

22   to have a call the Wednesday before Thanksgiving.  So I would

23   propose to move the November call to November 24, 10 o'clock.

24        Does anyone have an objection?

25        MR. SLATER:  No, Your Honor, makes a lot of sense.

1          MR. GOLDBERG:  No objection from defendants, Your

2    Honor.

3          THE COURT:  Okay.  Then I'm looking at December and

4    then we have our mid-month call on December 9th, and I'd

5    prefer not to have the call on December 23rd, it's too close

6    to Christmas Eve, and people hopefully will be enjoying the

7    holidays.

8          Is there any objection to moving the December call to

9    December 22nd, the Tuesday, instead of the Wednesday?

10          MR. SLATER:  No objection.

11          MR. GOLDBERG:  No objection from defendants, Your

12    Honor.

13          THE COURT:  Okay.  So that completes the issues this

14    Court wanted to address with the parties and I think I

15    addressed all the issues in the letters.

16          As we do in all calls, for the good of the order, are

17    there any other issues anyone wants to address?

18          MR. SLATER:  Your Honor, it's Adam Slater.  I just

19    wanted to say hello to Judge Williams.  I think I failed to

20    say hello to her, her being on the phone, I wanted to say

21    hello.

22          JUDGE WILLIAMS:  Thank you.  I appreciate the

23    recognition, but I'm just -- I'm a bystander for now.

24          MR. SLATER:  Thank you.

25          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

1    Just one issue.

2            Can we assume that the October end-of-the-month

3    conference is going to be teleconference and not in person?

4            THE COURT:  Yes, yes, absolutely.  That's absolute.

5    I'll make that clear, I can't say for certain about November

6    and December.  I know Judge Kugler is anxious to get people in

7    person, but he recognizes the practicalities of the situation,

8    and obviously, we'll have to defer to concerns about health

9    and safety.

10           So I can't rule out an in-person conference before

11   the end of the year, but frankly, I would be surprised, but

12   it's probably too early to say what's going to happen at the

13   end of November and December.

14           Any other issues, Counsel?

15           MR. GOLDBERG:  None for defendants, Your Honor.

16           MR. SLATER:  Nothing for plaintiffs, Your Honor.

17           THE COURT:  Okay.  Thank you all.  I'll confirm all

18   of these rulings in an order.  As is always the case, if

19   there's any issue that comes up that will help advance the

20   ball, you don't have to wait until October 28 to raise it.

21   You know how to reach me, and I hope everyone stays safe, and

22   there being no further business, we're adjourned.  Thank you

23   all.

24           (5:14 p.m.)

25

1              -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

2

3              I certify that the foregoing is a correct transcript

4      from the record of proceedings in the above-entitled matter.

5

6      /S/ Karen Friedlander, CRR, RMR
       Court Reporter/Transcriber_____
7

8      October 14, 2020
       Date
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

/S [1] - 43:6

## 0

07068 [1] - 1:12

## 1

1 [4] - 14:23, 14:24, 22:11, 22:16
10 [1] - 40:23
1000 [1] - 2:21
103 [1] - 1:12
11 [1] - 7:17
11th [1] - 40:19
12 [1] - 23:20
14 [3] - 1:6, 3:1, 43:8
140 [1] - 26:22
15 [2] - 4:24, 11:7
15219 [1] - 2:18
15th [7] - 6:4, 11:23, 15:1, 22:10, 22:15, 24:15, 38:5
17th [1] - 2:4
1835 [1] - 1:15
19-2875 [1] - 3:13
19103 [2] - 1:15, 2:4
1:19-md-02875-RBK-JS [1] - 1:4

## 2

2 [3] - 11:6, 26:8, 26:13
20 [2] - 16:12, 16:23
2019 [2] - 11:8, 26:21
2020 [4] - 1:6, 3:1, 36:16, 43:8
2021 [1] - 17:12
2029 [1] - 2:11
21 [1] - 23:4
22nd [1] - 41:9
23rd [1] - 41:5
24 [2] - 18:24, 40:23
2500 [1] - 2:7
2525 [1] - 2:21
26th [1] - 36:25
28 [1] - 42:20
2800 [1] - 2:15
28th [3] - 37:1, 39:14, 40:18
29 [1] - 8:14
2900 [1] - 1:15
29th [3] - 8:19, 38:4, 40:13

## 3

3 [2] - 11:6, 28:20
30 [2] - 2:4, 7:14
300 [1] - 2:11
30305 [1] - 2:8
30th [2] - 6:15, 7:4
316 [1] - 1:18
31st [1] - 17:13
32502 [1] - 1:18
32nd [1] - 39:12
33134 [1] - 2:21
3333 [1] - 2:7
34 [9] - 18:24, 23:17, 27:8, 28:11, 30:4, 30:7, 31:21, 32:3, 36:24
35 [1] - 34:25
354 [1] - 33:3
38 [2] - 34:25, 35:3
38th [1] - 2:18

## 4

4 [1] - 28:21
45202 [1] - 2:15
4:03 [1] - 3:2
4:05 [1] - 1:7
4th [1] - 36:15

## 5

582 [1] - 36:14
5:14 [1] - 42:24

## 6

6 [1] - 7:14
600 [2] - 1:18, 2:14
62 [2] - 33:20, 33:23
6th [1] - 6:19

## 7

70 [1] - 26:23
701 [1] - 1:21
70130 [1] - 1:21
756-0160 [1] - 1:24

## 8

80 [1] - 26:23
856 [1] - 1:24

## 9

90067-2904 [1] - 2:12
9th [1] - 41:4

## A

able [5] - 20:12, 24:25, 27:11, 27:12, 35:7
above-entitled [1] - 43:4
absolute [1] - 42:4
absolutely [2] - 19:5, 42:4
absurd [1] - 35:3
acceptable [1] - 6:13
accommodation [1] - 22:23
according [1] - 22:6
Actavis [2] - 2:9
acting [1] - 40:11
ACTION [1] - 1:3
active [1] - 16:20
ADAM [1] - 1:11
Adam [6] - 3:19, 16:6, 16:8, 37:9, 38:15, 41:18
add [6] - 17:17, 19:11, 21:4, 22:21, 23:2, 23:11
addendum [1] - 24:9
addendums [1] - 25:4
additional [2] - 16:24, 31:15
address [15] - 9:4, 11:17, 12:23, 13:2, 13:3, 13:9, 13:17, 17:3, 24:3, 28:10, 35:3, 35:21, 37:21, 41:14, 41:17
addressed [2] - 11:25, 41:15
adequately [1] - 21:23
adjourned [1] - 42:22
advance [1] - 42:19
afraid [1] - 24:1
afternoon [10] - 3:3, 3:21, 3:23, 3:25, 4:3, 4:10, 4:12, 4:15, 15:8, 30:10
agenda [3] - 24:4, 25:7, 25:16
ago [7] - 16:20, 18:10, 24:22, 31:10, 33:3, 34:12, 36:14
agree [1] - 35:5
agreed [1] - 12:8
agreement [2] - 24:24, 32:19
agreements [1] - 29:14
ahead [5] - 16:6, 16:7, 29:17, 38:7, 40:15
Aid [1] - 4:17
aided [1] - 1:25

ALFANO [1] - 2:17
ALL [1] - 3:1
allegations [1] - 27:6
alleged [2] - 13:5, 27:20
allow [1] - 16:1
allowed [2] - 7:4, 28:6
almost [1] - 37:16
alone [1] - 28:1
amenable [1] - 37:11
AmerisourceBergen [2] - 2:16, 4:14
amount [1] - 20:11
amounts [1] - 33:21
analysis [2] - 28:24, 30:3
ANDRÉS [1] - 2:20
Andrés [1] - 32:23
Angeles [1] - 2:12
answer [7] - 23:23, 30:11, 34:24, 37:15, 37:16, 37:17, 39:3
answered [2] - 25:22, 34:23
answers [2] - 15:19, 22:24
anticipate [4] - 8:11, 25:9, 25:11, 25:22
anxious [1] - 42:6
anytime [1] - 17:9
appearance [1] - 3:14
apply [1] - 21:3
appreciate [3] - 5:4, 13:21, 41:22
approached [1] - 8:9
appropriate [4] - 6:5, 25:4, 32:8, 37:22
appropriately [1] - 18:15
April [1] - 17:12
argue [1] - 28:12
argued [5] - 15:17, 30:16, 30:23, 33:8, 33:22
argues [1] - 9:19
arguing [3] - 9:13, 33:4
argument [3] - 7:15, 23:20, 36:25
arguments [1] - 10:5
ascertainability [2] - 27:9, 28:4
assert [1] - 7:5
asserted [1] - 26:4
assignors [12] - 29:4, 29:6, 29:7, 29:8, 29:10, 29:19, 29:20, 29:23, 30:1, 30:2, 33:21, 34:5
assume [5] - 9:19,

12:23, 13:3, 24:12, 42:2
Atlanta [1] - 2:8
attached [2] - 36:13, 37:8
attend [1] - 15:22
August [1] - 17:13
Aurobindo [4] - 25:13, 37:6, 37:10
authority [1] - 13:18
authorization [1] - 31:4
authorizations [1] - 31:16
available [2] - 17:5, 17:9
aware [3] - 12:9, 12:13, 38:19

## B

background [4] - 3:5, 5:22, 6:4, 13:24
ball [1] - 42:20
BARNES [1] - 2:10
based [4] - 4:8, 39:9
basic [1] - 30:6
basis [4] - 28:17, 29:1, 29:2, 31:9
Baylen [1] - 1:18
Bazan [4] - 15:6, 15:9, 18:18, 20:4
BAZAN [7] - 2:3, 15:8, 15:9, 17:16, 18:17, 18:19, 20:3
bear [2] - 11:2, 34:13
beauty [1] - 21:17
becomes [2] - 20:16, 32:14
begin [1] - 20:12
behalf [4] - 4:1, 4:4, 4:6, 4:16
belabor [1] - 32:13
bench [1] - 4:24
benefit [2] - 8:17, 27:22
BERNE [1] - 2:13
beyond [3] - 20:15, 30:21, 31:15
bit [2] - 31:20
bless [1] - 14:24
blessed [1] - 31:17
Blvd [1] - 2:21
boo [1] - 34:4
BOSICK [1] - 2:17
bottom [1] - 22:5
breach [2] - 13:4, 13:10
breath [1] - 21:7
breathing [1] - 22:11

brief [4] - 9:20, 10:3, 11:5
briefly [1] - 34:24
briefs [1] - 10:2
bring [2] - 5:16, 13:6
bringing [1] - 4:25
bumped [1] - 39:14
bunch [1] - 6:10
burden [2] - 16:15, 29:2
burner [1] - 24:18
business [1] - 42:22
BY [10] - 1:11, 1:14, 1:17, 1:20, 2:3, 2:6, 2:11, 2:14, 2:17, 2:20
bystander [1] - 41:23

## C

CA [1] - 2:12
calculation [1] - 27:9
calendar [1] - 40:19
CAML [1] - 7:5
Camp [1] - 1:21
caps [1] - 27:23
care [2] - 30:24, 31:3
cascading [1] - 16:10
case [32] - 4:9, 4:22, 4:23, 7:23, 8:6, 9:8, 9:14, 10:11, 10:17, 11:15, 12:9, 12:13, 12:19, 13:5, 13:6, 13:8, 13:14, 17:14, 17:22, 17:24, 20:25, 21:1, 21:4, 21:9, 23:10, 24:17, 28:4, 38:6, 38:9, 40:1, 42:18
cases [9] - 9:8, 9:11, 9:17, 9:20, 9:23, 10:14, 10:15, 13:15, 21:6
categories [1] - 33:18
caution [1] - 23:10
central [1] - 27:3
Centre [1] - 2:18
Century [1] - 2:11
cert [2] - 31:7, 31:8
certain [3] - 5:23, 20:10, 42:5
certainly [6] - 6:12, 6:21, 12:8, 23:24, 35:1, 36:21
certification [7] - 27:5, 27:13, 28:25, 30:20, 30:22, 32:6, 33:13
certify [2] - 26:16, 43:3
cetera [5] - 11:17,

25:13, 32:8
challenging [1] - 28:5
chance [3] - 21:14, 37:20, 38:8
change [2] - 20:21, 34:10
changed [1] - 12:11
changes [1] - 27:24
Christmas [1] - 41:6
cincinnati [1] - 2:15
circumstances [1] - 8:4
cite [1] - 9:11
CIVIL [1] - 1:3
claim [4] - 27:4, 29:15, 29:21, 33:18
claiming [1] - 27:14
claims [2] - 29:5, 30:2
clarification [2] - 12:22, 13:21
clarify [1] - 12:5
class [36] - 14:22, 15:22, 15:25, 16:12, 16:18, 17:9, 17:14, 17:20, 18:4, 18:12, 18:20, 18:23, 18:24, 19:12, 19:17, 19:20, 20:7, 20:8, 20:15, 20:23, 21:24, 25:19, 27:1, 27:5, 27:13, 27:18, 28:4, 28:25, 30:19, 30:21, 31:7, 31:8, 32:6, 33:13, 37:5
class-wide [1] - 28:4
clear [10] - 14:22, 17:23, 22:19, 34:11, 36:13, 39:11, 40:6, 40:9, 42:5
clearly [1] - 26:18
CLEM [1] - 2:17
Clem [1] - 4:10
CLERK [1] - 3:8
close [1] - 41:5
co [1] - 27:21
Co [1] - 2:12
co-pays [1] - 27:21
codes [1] - 17:4
Cohen [1] - 11:1
colleague [1] - 15:6
collected [1] - 26:16
combination [1] - 35:25
coming [1] - 6:25, 39:6
Commencing [1] - 1:7
comment [1] - 32:24
committed [1] - 36:2
communication [1] - 11:7

compared [2] - 38:22, 39:20
complaining [1] - 22:14
Complaint [4] - 18:25, 19:1, 29:6, 29:24
complete [10] - 7:4, 7:24, 8:14, 8:16, 9:2, 19:25, 21:19, 22:14, 22:17, 38:25
completed [5] - 16:19, 19:16, 19:19, 20:2, 29:8
completely [2] - 22:16, 23:22
completes [1] - 41:13
completion [1] - 19:22
complying [1] - 40:10
computer [1] - 1:25
computer-aided [1] - 1:25
concern [5] - 7:1, 7:2, 7:7, 38:18, 39:17
concerned [2] - 7:24, 19:24
concerning [2] - 39:5, 39:18
concerns [1] - 42:8
conclusion [1] - 34:16
condensed [1] - 31:22
confer [2] - 26:5, 35:6
conference [10] - 4:20, 7:16, 35:13, 35:22, 36:1, 36:22, 37:1, 38:2, 42:3, 42:10
CONFERENCE [1] - 1:5
confident [1] - 40:6
confirm [1] - 42:17
confusing [1] - 31:23
Conlee [1] - 4:1
CONLEE [1] - 1:20
ConnectaCare [2] - 29:7, 34:5
consent [1] - 11:15
consequence [1] - 21:17
consequences [1] - 8:2
consider [1] - 22:3
consideration [2] - 33:15, 34:14
considered [2] - 22:23, 23:7
considering [1] - 11:9
consistent [1] - 34:16
consultant [1] - 5:13
consultant/expert [1] - 10:10

consumer [4] - 27:18, 27:25, 35:5
consumers [3] - 27:2, 27:20
contaminated [1] - 27:16
contention [2] - 13:11, 31:22
context [4] - 7:23, 12:10, 13:7, 13:17
contexts [1] - 12:13
continually [1] - 38:12
continue [1] - 38:23
CONTINUED [1] - 2:1
continuing [1] - 17:19
contrary [2] - 33:16, 34:1
control [1] - 22:17
convenience [1] - 36:3
conversations [1] - 9:13
core [2] - 26:21, 27:5
correct [4] - 10:22, 10:25, 36:7, 43:3
counsel [7] - 3:14, 5:7, 23:21, 30:19, 30:20, 31:23, 34:15
Counsel [3] - 4:18, 20:20, 42:14
couple [1] - 9:4
course [6] - 12:12, 16:3, 25:22, 26:20, 36:5, 39:10
Court [10] - 1:23, 7:17, 10:12, 11:15, 13:16, 13:24, 21:15, 38:14, 41:14, 43:6
COURT [1] - 1:1
court [1] - 3:9
Court's [11] - 9:1, 9:7, 20:21, 20:23, 21:22, 23:2, 23:11, 32:2, 34:16, 36:3, 40:10
cover [2] - 26:10, 26:12
covered [1] - 27:10
create [1] - 24:17
critical [1] - 24:17
CRR [1] - 43:6
current [2] - 20:22, 24:4
custodial [2] - 38:24, 39:1
cut [2] - 7:12, 32:11
CVS [2] - 2:12, 4:17

## D

damaged [1] - 31:2

damages [7] - 27:9, 28:4, 28:24, 29:21, 29:23, 30:1, 30:3
DANIEL [2] - 1:17, 2:14
Daniel [1] - 3:23
data [1] - 16:24
Date [1] - 43:8
date [9] - 6:5, 7:16, 7:19, 18:23, 19:24, 38:3, 38:21, 40:13, 40:14
dates [4] - 8:21, 17:20, 17:21, 20:5
David [5] - 16:7, 16:9, 30:11, 35:4, 35:23
days [2] - 23:4, 33:3
De [1] - 2:21
deadline [5] - 8:4, 8:8, 8:24, 18:1, 22:13
deadlines [9] - 6:25, 8:25, 9:2, 15:3, 20:22, 20:24, 20:25, 22:20
deal [10] - 4:19, 5:8, 5:23, 14:4, 14:19, 28:14, 32:14, 34:18, 35:18, 38:1
dealt [1] - 5:10
December [13] - 14:23, 14:24, 17:22, 20:5, 22:11, 22:16, 41:3, 41:4, 41:5, 41:8, 41:9, 42:6, 42:13
decide [4] - 5:17, 5:24, 35:12
decided [2] - 23:22, 35:12
decision [10] - 7:25, 9:6, 10:1, 10:16, 11:10, 13:20, 15:1, 22:12, 22:13, 37:1
decisions [1] - 39:9
deductible [1] - 26:14
deemed [1] - 9:15
deeper [1] - 34:8
defend [1] - 27:12
defendant [18] - 8:5, 9:14, 10:13, 14:13, 15:12, 15:14, 15:16, 15:17, 16:2, 18:19, 19:3, 19:16, 19:18, 19:20, 20:1, 24:14, 39:2
Defendant [4] - 2:5, 2:12, 2:16, 2:19
Defendants [1] - 2:8
defendants [50] - 4:2, 4:4, 4:6, 4:11, 4:13,

4:16, 8:11, 8:17, 8:18, 8:22, 8:23, 9:9, 15:2, 15:21, 16:23, 19:4, 19:7, 21:22, 22:8, 22:13, 22:24, 23:5, 23:19, 24:10, 25:5, 26:20, 26:24, 28:6, 28:11, 28:12, 31:2, 31:11, 31:14, 32:2, 32:6, 32:10, 33:5, 33:7, 34:22, 35:7, 35:17, 36:5, 36:18, 38:6, 38:11, 38:12, 38:23, 41:1, 41:11, 42:15

**defendants'** [10] - 16:10, 16:11, 16:14, 22:17, 23:8, 27:1, 27:15, 30:7, 38:1, 40:10

**Defense** [2] - 2:5, 2:19

**defense** [3] - 17:3, 30:18, 30:20

**defer** [1] - 42:8

**deficiency** [1] - 16:20

**delay** [1] - 17:13

**delayed** [2] - 19:21, 19:22

**delivery** [1] - 27:24

**denied** [1] - 20:23

**dependent** [1] - 39:25

**deponent** [1] - 21:18

**deponents** [1] - 39:8

**depose** [1] - 21:23

**deposed** [2] - 18:2, 21:20

**deposition** [11] - 15:23, 17:10, 21:10, 21:12, 21:13, 21:20, 22:2, 22:25, 24:5, 24:13

**depositions** [23] - 14:22, 16:1, 18:3, 18:6, 18:11, 18:14, 18:15, 19:13, 19:15, 20:1, 20:12, 20:15, 20:22, 21:3, 21:8, 22:1, 22:5, 22:9, 22:18, 23:4, 24:16, 40:14

**deps** [6] - 14:23, 22:15, 24:14, 37:5, 38:4, 38:12

**DEPUTY** [1] - 3:8

**deserves** [1] - 7:24

**develop** [1] - 13:14

**DFS** [1] - 17:1

**differ** [1] - 5:21

**different** [4] - 6:10, 13:23, 25:13, 37:16

**difficult** [1] - 7:9

**direct** [1] - 11:4

**disagree** [2] - 16:10, 17:8

**disclose** [1] - 11:17

**disclosure** [1] - 11:24, 13:5, 13:12

**discovery** [11] - 11:14, 13:4, 13:10, 23:17, 26:21, 27:1, 28:7, 30:4, 31:15, 35:21, 36:24

**discuss** [2] - 11:5, 37:13

**discussed** [4] - 15:13, 25:3, 25:7, 37:5

**discussing** [1] - 37:11

**discussion** [6] - 10:5, 28:19, 28:21, 33:9, 35:9, 36:7

**discussions** [6] - 11:13, 24:13, 24:19, 24:22, 25:15, 39:7

**dispute** [8] - 13:8, 13:25, 15:20, 25:23, 26:2, 35:21, 36:24

**disputed** [3] - 9:16, 13:11, 14:1

**disputes** [3] - 10:14, 24:8, 34:21

**distributor** [1] - 4:13

**DISTRICT** [2] - 1:1, 1:1

**doc** [1] - 36:14

**Docket** [1] - 3:13

**docs** [1] - 12:20

**doctor** [1] - 14:5

**Doctor** [1] - 14:15

**document** [17] - 9:3, 20:8, 21:19, 25:18, 25:19, 26:22, 26:23, 28:11, 28:15, 30:7, 32:3, 32:9, 34:25, 36:15, 38:20, 39:19, 40:4

**documenting** [1] - 40:3

**documents** [23] - 7:6, 8:5, 8:12, 9:10, 9:14, 10:12, 10:13, 12:7, 12:15, 12:17, 13:19, 21:11, 26:7, 26:13, 26:17, 31:20, 36:16, 38:6, 38:13, 38:21, 39:13, 39:18, 40:2

**done** [6] - 5:14, 18:16, 21:9, 33:11, 39:1, 39:3

**doubt** [1] - 8:18

**down** [1] - 17:2

**dozens** [3] - 16:16

**DR** [4] - 10:18, 10:20, 10:22, 12:4

**Dr** [4] - 4:7, 12:4, 12:21, 13:20

**draft** [2] - 24:6, 31:21

**drawing** [1] - 7:7

**drug** [2] - 18:5, 27:23

**drugs** [2] - 27:20, 31:5

**DUANE** [1] - 2:2

**Duane** [1] - 15:10

**due** [1] - 12:24

**dump** [1] - 39:20

**duplication** [1] - 33:17

**duplicative** [13] - 25:21, 25:24, 26:3, 26:6, 26:7, 26:10, 26:11, 26:15, 28:18, 29:10, 29:15, 35:1, 36:10

**during** [2] - 32:16, 35:22

## E

**e-mail** [1] - 4:9

**e-mailed** [1] - 6:8

**early** [3] - 8:7, 31:13, 42:12

**easily** [1] - 16:23

**East** [1] - 2:11

**ECDs** [1] - 27:15

**economic** [5] - 18:25, 25:19, 27:1, 30:17, 31:1

**efforts** [3] - 32:18, 34:21, 38:13

**Eisenhower** [1] - 1:12

**either** [2] - 8:7, 19:6

**elaborate** [1] - 30:12

**electronic** [3] - 11:14, 13:4, 13:10

**eliminate** [1] - 34:21

**Emblem** [2] - 29:7, 34:6

**end** [2] - 6:25, 7:1, 17:11, 17:13, 19:24, 22:6, 22:13, 23:23, 23:24, 23:25, 24:7, 25:1, 33:10, 35:13, 35:22, 36:22, 38:18, 40:12, 40:18, 42:2, 42:11, 42:13

**end-of-the-month** [2] - 36:22, 42:2

**engaged** [1] - 33:7

**enjoying** [1] - 41:6

**enlarge** [1] - 19:12

**enlarging** [2] - 19:24, 19:25

**enormous** [3] - 7:22, 24:15, 24:16

**entered** [4] - 11:15, 18:22, 20:10, 22:3

**entire** [1] - 37:18

**entitled** [2] - 12:17, 43:4

**entries** [1] - 3:14

**envisioned** [1] - 32:4

**ESI** [3] - 8:5, 9:3, 11:8

**especially** [1] - 29:2

**ESQUIRE** [12] - 1:11, 1:14, 1:17, 1:20, 2:3, 2:3, 2:6, 2:7, 2:11, 2:14, 2:17, 2:20

**essence** [1] - 27:13

**essential** [2] - 27:8, 28:6

**established** [3] - 8:25, 20:24, 22:20

**et** [5] - 11:17, 25:13, 32:8

**Eve** [1] - 41:6

**eventual** [1] - 9:8

**eventually** [1] - 14:2

**exact** [1] - 33:23

**exactly** [1] - 8:18

**example** [3] - 19:17, 30:23, 38:24

**exclusively** [1] - 10:6

**excuse** [3] - 14:6, 14:8, 14:17

**exercise** [1] - 23:10

**exhaust** [1] - 14:7

**exhausted** [3] - 32:18, 34:20, 35:5

**exhaustive** [1] - 32:5

**exhaustively** [1] - 30:16

**Exhibit** [1] - 36:14

**exists** [2] - 9:3, 9:12

**expand** [1] - 33:13

**expect** [1] - 38:22

**expected** [1] - 36:17

**expecting** [1] - 34:10

**expeditious** [1] - 6:23

**experience** [1] - 21:15

**extend** [6] - 8:25, 9:2, 14:22, 20:21, 20:24, 22:20

**extended** [3] - 16:1, 22:21, 40:14

**extending** [2] - 8:4, 20:25

**extension** [5] - 8:10, 8:13, 8:19, 8:20, 15:3

**extensive** [1] - 32:8

**extent** [3] - 6:22, 17:4, 29:14

## F

**face** [1] - 24:10

**fact** [34] - 15:12, 15:14, 15:18, 16:2, 16:11, 16:19, 17:2, 17:11, 18:20, 19:3, 19:16, 19:18, 19:20, 19:22, 20:1, 22:24, 23:3, 25:21, 25:23, 26:12, 26:25, 27:10, 28:13, 29:8, 30:3, 30:17, 31:10, 31:16, 31:19, 32:4, 33:11, 33:16

**failed** [2] - 12:11, 41:19

**fair** [4] - 5:18, 12:16, 25:14, 38:10

**fairness** [2] - 22:23, 37:10

**faith** [5] - 33:7, 34:21, 35:2, 38:13, 40:11

**falls** [1] - 13:14

**familiar** [2] - 5:22, 10:2

**far** [3] - 7:23, 15:12, 38:25

**fathom** [1] - 18:7

**feasible** [1] - 20:11

**February** [1] - 20:15

**few** [4] - 24:22, 25:25, 26:9

**figure** [1] - 16:25

**filed** [3] - 10:3, 15:2

**filled** [2] - 15:18, 31:9

**final** [2] - 11:10, 24:6

**fine** [7] - 6:2, 14:6, 14:7, 14:25, 35:14, 37:19, 37:20

**fingertips** [2] - 17:6

**first** [3] - 14:19, 25:17, 30:6

**FL** [1] - 2:21

**flag** [1] - 39:23

**floor** [1] - 11:2

**Floor** [1] - 2:18

**Florida** [1] - 1:18

**focusing** [2] - 10:5, 15:7

**Footnote** [1] - 11:6

**FOR** [1] - 1:1

**foregoing** [1] - 43:3

**forever** [1] - 21:9

**formal** [1] - 31:15

**formularies** [2] - 27:22, 29:14

**forth** [2] - 22:6, 31:9

**forward** [5] - 7:18, 17:22, 18:8, 24:14,

34:14
**fought** *[3]* - 19:3, 19:4, 19:5
**four** *[1]* - 15:11
**four-tiered** *[1]* - 15:11
**fourth** *[1]* - 39:15
**frankly** *[2]* - 33:19, 42:11
**FREEMAN** *[1]* - 1:11
**frequently** *[1]* - 9:19
**Friday** *[1]* - 37:13
**Friedlander** *[3]* - 1:23, 3:10, 43:6
**friedlanderreporter @gmail.com** *[1]* - 1:23
**front** *[1]* - 24:18
**fruit** *[1]* - 18:11
**full** *[4]* - 7:24, 31:3, 33:9, 40:15
**fully** *[1]* - 35:5

## G

**general** *[1]* - 32:25
**genuine** *[1]* - 33:12
**Geoppinger** *[1]* - 4:13
**GEOPPINGER** *[2]* - 2:14, 4:12
**Georgia** *[1]* - 2:8
**given** *[3]* - 17:14, 23:9, 36:20
**God** *[1]* - 14:24
**Goldberg** *[18]* - 4:4, 14:21, 15:8, 19:10, 22:22, 23:16, 24:21, 25:3, 25:18, 26:1, 28:8, 32:1, 32:11, 33:16, 33:21, 34:1, 36:4, 41:25
**GOLDBERG** *[19]* - 2:3, 4:3, 15:5, 19:10, 23:13, 23:15, 24:21, 25:6, 25:14, 25:25, 28:16, 29:18, 31:25, 36:4, 37:3, 41:1, 41:11, 41:25, 42:15
**GOLOMB** *[1]* - 1:14
**GORDON** *[1]* - 2:17
**granted** *[3]* - 8:20, 8:22, 31:3
**great** *[2]* - 3:6, 25:10
**GREENBERG** *[1]* - 2:6
**Greenberg** *[1]* - 4:7
**Greenburg** *[1]* - 4:6
**GREENE** *[4]* - 2:7, 6:20, 14:12, 14:18
**Greene** *[7]* - 4:7, 5:12, 6:21, 7:11, 8:3, 14:5, 14:12

**gritty** *[1]* - 35:18
**gross** *[1]* - 17:13
**GROSSMAN** *[4]* - 10:18, 10:20, 10:22, 12:4
**Grossman** *[4]* - 4:8, 12:4, 12:21, 13:20
**group** *[2]* - 12:23, 25:8
**Group** *[2]* - 2:5, 2:19
**guest** *[1]* - 4:20

## H

**hand** *[2]* - 15:15
**hand-in-hand** *[1]* - 15:15
**handle** *[2]* - 21:6, 38:6
**handling** *[1]* - 6:23
**hang** *[1]* - 5:15
**hanging** *[1]* - 18:11
**happy** *[5]* - 35:25, 36:5, 36:10, 36:19, 37:13
**hard** *[4]* - 18:7, 19:2, 19:3, 39:18
**head** *[1]* - 5:16
**health** *[3]* - 30:24, 31:3, 42:8
**Health** *[1]* - 2:12
**hear** *[3]* - 3:5, 15:4, 30:13
**heard** *[5]* - 16:4, 17:23, 32:22, 33:9, 40:13
**hearing** *[3]* - 7:25, 26:5, 33:8
**heart** *[1]* - 18:9
**hello** *[5]* - 3:19, 33:1, 41:19, 41:20, 41:21
**help** *[5]* - 9:5, 10:4, 10:16, 24:2, 42:19
**helpful** *[4]* - 6:24, 9:7, 11:12, 11:24
**hi** *[2]* - 3:11, 37:9
**Hi** *[2]* - 4:5, 6:20
**highlighted** *[1]* - 10:7
**history** *[1]* - 11:13
**hold** *[2]* - 37:14, 40:20
**holiday** *[1]* - 7:17
**holidays** *[1]* - 41:7
**Honik** *[1]* - 3:21
**HONIK** *[3]* - 1:14, 1:14, 3:21
**Honor** *[68]* - 3:19, 3:21, 3:23, 3:25, 4:10, 4:12, 4:15, 6:7, 6:8, 6:11, 6:20, 6:21, 10:18, 12:2, 14:11, 14:12, 14:18, 15:5, 15:9, 15:11, 16:6,

16:9, 16:22, 17:16, 17:19, 18:9, 18:17, 18:19, 18:22, 19:10, 20:13, 23:13, 24:21, 26:1, 28:20, 29:16, 30:10, 30:12, 30:15, 30:16, 30:18, 30:23, 30:25, 31:3, 31:12, 31:21, 31:24, 31:25, 33:1, 35:4, 35:23, 36:4, 37:2, 37:3, 37:9, 38:15, 38:19, 39:23, 40:25, 41:2, 41:12, 41:18, 41:25, 42:15, 42:16
**Honor's** *[1]* - 4:9
**HONORABLE** *[1]* - 1:8
**hope** *[4]* - 24:23, 25:10, 37:14, 42:21
**hopefully** *[5]* - 24:6, 35:7, 37:21, 38:4, 41:6
**hours** *[1]* - 18:7
**hundred** *[1]* - 27:14
**hundreds** *[3]* - 16:14, 16:16
**hurdle** *[2]* - 28:13, 35:16
**hypertension** *[1]* - 31:5

## I

**identification** *[6]* - 15:15, 15:16, 15:19, 16:12, 19:7
**identified** *[3]* - 15:21, 15:22, 26:6
**identify** *[3]* - 17:2, 29:6, 31:14
**identifying** *[2]* - 19:7, 36:16
**immediately** *[1]* - 6:8
**impasse** *[1]* - 32:19
**implicated** *[1]* - 16:11
**implications** *[1]* - 7:22
**important** *[8]* - 5:19, 9:24, 11:18, 15:20, 16:13, 19:6, 23:7, 39:13
**IN** *[1]* - 1:3
**in-person** *[2]* - 11:8, 42:10
**inadequate** *[1]* - 34:1
**Inc** *[2]* - 2:9, 2:19
**incentivizes** *[1]* - 21:18
**include** *[2]* - 15:23, 30:2
**included** *[2]* - 8:21,

10:11
**including** *[3]* - 17:20, 20:7, 30:17
**incomplete** *[4]* - 29:9, 29:11, 29:13, 34:2
**indicated** *[1]* - 30:20
**individuals** *[1]* - 33:20
**indulge** *[1]* - 5:9
**Industries** *[1]* - 2:8
**information** *[24]* - 16:25, 17:5, 21:11, 21:23, 21:25, 23:5, 26:14, 27:3, 27:4, 27:5, 27:7, 27:10, 27:11, 27:17, 28:5, 28:6, 28:23, 29:9, 29:10, 30:19, 30:24, 32:5, 33:20, 39:12
**informed** *[3]* - 9:6, 9:25, 10:16
**initial** *[1]* - 31:24
**injury** *[3]* - 16:13, 18:21, 18:23
**input** *[1]* - 24:1
**insert** *[1]* - 26:8
**instead** *[2]* - 22:16, 41:9
**insulted** *[1]* - 5:15, 14:17
**insurance** *[2]* - 26:14, 27:21
**intend** *[2]* - 28:25, 29:12
**interest** *[1]* - 17:22
**interested** *[1]* - 9:17
**interests** *[1]* - 23:8
**interrupt** *[1]* - 28:8
**ironic** *[1]* - 33:3
**irrelevant** *[2]* - 33:18, 35:1
**issue** *[53]* - 5:12, 5:14, 5:16, 5:24, 6:3, 6:4, 7:15, 7:20, 7:21, 7:22, 7:24, 11:25, 13:2, 13:17, 14:5, 14:8, 14:19, 15:4, 15:7, 15:15, 15:16, 15:17, 15:19, 16:5, 16:12, 16:15, 17:15, 23:12, 23:21, 23:25, 24:2, 24:3, 26:10, 28:14, 30:8, 31:24, 32:7, 32:9, 32:12, 32:14, 32:15, 33:19, 35:20, 36:19, 36:25, 37:4, 37:6, 37:14, 38:1, 40:16, 42:1, 42:19
**issues** *[20]* - 4:19, 5:8, 5:10, 5:20, 9:4,

13:23, 24:18, 24:25, 25:11, 25:12, 28:10, 31:7, 31:8, 33:4, 35:11, 41:13, 41:15, 41:17, 42:14
**item** *[3]* - 23:18, 25:17, 37:25
**items** *[3]* - 24:4, 25:11, 25:17

## J

**January** *[10]* - 4:24, 6:4, 15:1, 15:13, 20:15, 22:10, 22:15, 24:15, 36:15, 38:5
**JEFF** *[1]* - 2:7
**Jeff** *[4]* - 4:7, 4:12, 6:21, 14:12
**JEFFREY** *[1]* - 2:14
**JERSEY** *[1]* - 1:1
**Jersey** *[1]* - 1:12
**JOEL** *[1]* - 1:8
**Johnston** *[1]* - 4:16
**JOHNSTON** *[2]* - 2:11, 4:15
**Joint** *[2]* - 2:5, 2:19
**Judge** *[32]* - 2:24, 3:3, 3:8, 3:10, 3:12, 4:3, 4:5, 4:21, 4:22, 5:1, 5:2, 6:6, 16:21, 23:22, 23:25, 31:13, 32:22, 32:23, 33:1, 33:3, 33:6, 33:7, 33:9, 33:14, 33:19, 33:24, 34:4, 34:8, 34:13, 34:25, 41:19, 42:6
**JUDGE** *[1]* - 1:8, 5:3, 5:6, 41:22
**judge** *[1]* - 4:23
**jump** *[1]* - 16:8

## K

**KANNER** *[1]* - 1:20
**Karen** *[4]* - 1:23, 3:10, 3:11, 43:6
**KATZ** *[1]* - 1:11
**keep** *[3]* - 20:25, 24:17, 24:18
**kept** *[1]* - 38:18
**key** *[1]* - 39:13
**kind** *[3]* - 26:17, 27:9, 28:6
**kinds** *[1]* - 26:13
**knowledge** *[2]* - 39:25, 40:1
**knows** *[1]* - 3:16
**Kugler** *[5]* - 16:21,

23:22, 23:25, 31:13, 42:6

**L**

**languish** [1] - 21:9
**last** [10] - 11:21, 18:18, 21:7, 24:3, 30:16, 30:25, 36:7, 36:13, 38:11, 40:16
**late** [4] - 13:5, 13:12, 23:6, 38:6
**latest** [2] - 9:20, 35:6
**law** - 38:9
**layered** [1] - 9:22
**laying** [1] - 18:22
**lead** [1] - 3:14
**least** [12] - 6:9, 7:23, 15:13, 15:21, 16:1, 19:4, 23:3, 24:5, 24:7, 34:21, 35:17, 39:24
**lengthy** [1] - 8:15
**Leon** [1] - 2:21
**letter** [15] - 5:19, 6:2, 6:8, 7:13, 9:5, 11:6, 13:1, 13:3, 13:8, 13:24, 14:1, 14:21, 15:2, 35:6, 37:8
**letters** [5] - 4:18, 5:7, 35:21, 36:24, 41:15
**letting** [2] - 36:17, 39:17
**level** [1] - 15:18
**leverage** [1] - 7:5
**LEVIN** [1] - 1:17
**LIABILITY** [1] - 1:4
**limit** [3] - 27:1, 29:23, 29:25
**limited** [1] - 28:12
**line** [3] - 13:15, 22:5, 39:15
**list** [6] - 24:8, 25:17, 31:22, 36:9, 36:11, 37:25
**listed** [1] - 16:20
**LITIGATION** [1] - 1:4
**live** [1] - 8:1
**LLC** [3] - 1:11, 1:20, 2:9
**LLP** [6] - 2:2, 2:6, 2:10, 2:13, 2:17, 2:20
**LOCKARD** [1] - 4:5
**Lockard** [3] - 4:5, 33:8, 33:22
**LOCKHARD** [1] - 2:6
**log** [2] - 37:6, 37:18
**logistical** [1] - 24:16
**look** [1] - 28:20

**looked** [1] - 6:7
**looking** [3] - 18:13, 40:18, 41:3
**Los** [1] - 2:12
**loss** [3] - 18:25, 30:17, 31:1
**loud** [1] - 17:23
**Louisiana** [1] - 1:21
**low** [2] - 18:11, 38:21
**low-hanging** [1] - 18:11
**Ltd** [1] - 2:8

**M**

**Magistrate** [4] - 2:24, 4:21, 4:22, 4:25
**magistrate** [1] - 4:23
**MAGISTRATE** [1] - 1:8
**mail** [1] - 4:9
**mailed** [1] - 6:8
**main** [1] - 15:13
**majority** [3] - 12:16, 16:2, 17:9
**manage** [1] - 21:6
**management** [1] - 4:23
**manufactured** [1] - 15:24
**manufacturer** [3] - 24:10, 25:5, 26:23
**manufacturers'** [1] - 17:4
**March** [2] - 31:13, 33:25
**Market** [1] - 1:15
**master** [1] - 29:5
**Master** [3] - 18:25, 19:1, 29:6
**material** [2] - 21:13, 21:25
**matter** [3] - 33:9, 40:1, 43:4
**Maura** [1] - 4:7
**MAZIE** [1] - 1:11
**MDL** [2] - 3:13, 21:5
**mean** [2] - 18:3, 32:11, 36:20
**means** [2] - 7:25, 13:9, 35:12
**mechanical** [1] - 1:25
**medical** [1] - 19:1
**meet** [4] - 26:5, 35:6, 35:11, 36:5
**meet-and-confer** [1] - 35:6
**meeting** [2] - 11:8, 11:23
**merits** [1] - 31:7

**MESTRE** [1] - 2:20
**met** [2] - 24:22
**Miami** [1] - 2:21
**mid** [4] - 7:16, 17:12, 40:19, 41:4
**mid-April** [1] - 17:12
**mid-month** [2] - 40:19, 41:4
**mid-November** [1] - 7:16
**midstream** [1] - 12:12
**might** [2] - 5:9, 10:24
**mind** [1] - 20:14
**minimum** [2] - 23:3, 24:24
**mislead** [1] - 13:22
**missing** [2] - 28:22, 29:16
**misstate** [1] - 13:22
**model** [2] - 28:4, 29:22
**moment** [4] - 11:22, 19:2, 28:9, 32:22
**Monday** [1] - 36:25
**monitoring** [1] - 19:1
**month** [15] - 19:14, 19:19, 23:23, 23:24, 23:25, 24:7, 25:1, 35:13, 35:22, 36:22, 39:20, 40:18, 40:19, 41:4, 42:2
**months** [16] - 8:24, 16:19, 17:6, 17:7, 18:10, 31:10, 31:18, 33:24, 34:3, 34:4, 34:13
**MORRIS** [1] - 2:2
**Morris** [1] - 15:10
**most** [2] - 17:2, 24:24
**motion** [1] - 27:12
**motions** [1] - 23:20
**move** [4] - 17:24, 18:8, 35:25, 40:23
**moving** [4] - 17:22, 24:14, 31:20, 41:8
**MR** [50] - 3:19, 3:21, 3:23, 4:3, 4:10, 4:12, 6:7, 6:17, 6:20, 12:2, 14:10, 14:12, 14:18, 15:5, 16:6, 16:8, 17:17, 19:10, 20:13, 23:13, 23:15, 24:21, 25:6, 25:14, 25:25, 28:16, 29:18, 30:10, 30:15, 31:25, 32:22, 34:24, 35:4, 35:23, 36:4, 37:2, 37:3, 37:9, 37:24, 38:15, 40:8, 40:25, 41:1, 41:10, 41:11, 41:18,

41:24, 41:25, 42:15, 42:16
**MS** [8] - 3:25, 4:5, 4:15, 15:8, 17:16, 18:17, 18:19, 20:3
**MSP** [3] - 2:22, 29:5, 32:23
**mute** [1] - 23:4
**Mylan** [3] - 2:19, 4:11, 25:13

**N**

**name** [1] - 3:16
**named** [1] - 29:23
**narrow** [3] - 17:14, 34:21, 35:8
**narrower** [1] - 36:9
**NDC** [1] - 17:4
**NE** [1] - 2:7
**necessary** [3] - 19:5, 19:9, 20:16
**need** [14] - 6:9, 14:4, 16:21, 16:25, 20:14, 27:11, 28:5, 29:12, 29:24, 30:3, 30:19, 31:14, 31:19, 33:12
**needed** [3] - 4:8, 15:17, 32:6
**needing** [1] - 16:15
**needs** [4] - 11:19, 17:24, 32:19, 34:13
**negotiated** [1] - 18:20
**negotiating** [1] - 20:7
**never** [8] - 12:7, 12:19, 20:25, 21:8, 33:25, 34:4, 34:12, 39:21
**NEW** [1] - 1:1
**New** [2] - 1:12, 1:21
**next** [6] - 23:12, 23:18, 25:7, 37:4, 37:6, 37:25
**NIGH** [2] - 1:17, 3:23
**Nigh** [1] - 3:23
**nine** [3] - 16:19, 31:10, 31:22
**nitty** [1] - 35:18
**nitty-gritty** [1] - 35:18
**noise** [1] - 3:5
**none** [1] - 42:15
**nonresponsive** [11] - 7:6, 9:10, 9:15, 10:12, 10:13, 12:7, 12:15, 12:17, 12:20, 13:19
**nonresponsiveness** [2] - 12:14, 12:19
**note** [2] - 20:3, 23:19
**notes** [1] - 5:10

**nothing** [4] - 14:10, 14:13, 30:25, 42:16
**notice** [1] - 8:24
**notify** [1] - 12:12
**November** [23] - 6:19, 7:1, 7:4, 7:14, 7:16, 7:17, 8:14, 8:19, 11:7, 11:23, 17:21, 20:5, 20:11, 38:4, 39:14, 39:21, 40:13, 40:19, 40:21, 40:23, 42:5, 42:13
**November's** [1] - 40:18
**nowhere** [1] - 31:13
**number** [6] - 13:23, 17:8, 17:14, 29:4, 29:20, 33:24
**NUMBER** [1] - 1:3
**numbers** [2] - 38:21, 39:18

**O**

**o'clock** [1] - 40:23
**object** [3] - 29:1, 31:24
**objected** [4] - 8:15, 28:17, 33:25, 34:13
**objecting** [1] - 30:6
**objection** [9] - 8:20, 8:23, 26:3, 30:13, 40:24, 41:1, 41:8, 41:10, 41:11
**objective** [1] - 25:2
**obtain** [2] - 27:16, 28:7
**obvious** [1] - 17:24
**obviously** [6] - 5:21, 6:24, 10:3, 20:16, 25:12, 42:8
**October** [8] - 1:6, 3:1, 6:15, 7:14, 40:18, 42:2, 42:20, 43:8
**OF** [1] - 1:1
**offering** [1] - 20:5
**Official** [1] - 1:23
**OH** [1] - 2:15
**older** [1] - 10:2
**once** [3] - 16:17, 20:10, 33:25
**one** [21] - 9:2, 10:24, 10:25, 11:1, 11:3, 13:2, 19:11, 20:3, 26:9, 27:25, 28:9, 28:10, 29:16, 29:18, 32:17, 34:24, 36:16, 37:7, 42:1
**One** [1] - 2:18
**opportunity** [2] - 5:18,

14:8
**oppose** [1] - 27:12
**options** [2] - 27:24
**oral** [1] - 23:20
**order** [18] - 5:9, 9:25, 11:15, 13:18, 14:20, 14:23, 14:25, 18:22, 22:2, 22:7, 22:19, 23:2, 23:11, 24:4, 34:12, 38:8, 41:16, 42:18
**order's** [1] - 22:21
**ordered** [6] - 9:9, 10:12, 12:14, 19:13, 33:10, 34:6
**orders** [1] - 40:11
**Orleans** [1] - 1:21
**otherwise** [2] - 31:2, 31:5
**out-of-pocket** [1] - 27:23
**outside** [6] - 6:14, 12:9, 12:13, 13:17, 16:25, 38:3
**own** [2] - 16:24, 25:12
**Oxford** [1] - 2:18

**P**

**p.m** [3] - 1:7, 3:2, 42:24
**pace** [1] - 38:1
**Page** [5] - 11:6, 26:8, 26:13, 28:20, 28:21
**page** [1] - 37:7
**pages** [1] - 38:21
**paid** [2] - 18:5, 31:1
**PAPANTONIO** [1] - 1:17
**paper** [3] - 21:7, 26:18, 38:11
**parading** [1] - 18:13
**pardon** [1] - 34:25
**Park** [1] - 2:11
**Parkway** [1] - 1:12
**particular** [2] - 26:14, 29:5
**particularly** [2] - 9:17, 10:7
**PARTIES** [1] - 3:1
**parties** [15] - 4:4, 5:21, 10:4, 11:16, 12:7, 24:4, 24:9, 24:12, 24:19, 25:3, 30:16, 32:18, 35:15, 37:19, 41:14
**parties'** [1] - 25:16
**party** [3] - 12:10, 12:11, 12:14
**past** [1] - 19:19

**pay** [1] - 27:25
**paying** [1] - 27:21
**payment** [3] - 27:15, 28:3
**payments** [1] - 27:22
**pays** [1] - 27:21
**PC** [1] - 1:14
**peculiar** [3] - 24:10, 25:11
**Pennsylvania** [3] - 1:15, 2:4, 2:18
**Pensacola** [1] - 1:18
**people** [5] - 16:14, 16:23, 18:1, 41:6, 42:6
**percent** [3] - 27:14, 33:20, 33:23
**perfectly** [2] - 35:14, 37:19
**perhaps** [1] - 23:19
**period** [5] - 8:15, 19:12, 19:14, 19:24, 19:25
**permitted** [2] - 28:7, 28:11
**permitting** [1] - 9:21
**person** [5] - 11:8, 39:14, 42:3, 42:7, 42:10
**personal** [3] - 16:13, 18:21, 18:23
**perspective** [4] - 4:24, 6:1, 18:8, 34:20
**persuasive** [1] - 10:7
**Pharma** [1] - 2:9
**Pharmaceutical** [1] - 2:8
**Pharmaceuticals** [1] - 2:9
**pharmacies** [1] - 17:3
**pharmacy** [5] - 4:16, 17:3, 17:5, 27:22, 27:23
**Philadelphia** [2] - 1:15, 2:4
**phone** [2] - 3:5, 41:20
**piece** [2] - 21:7, 38:11
**Piedmont** [1] - 2:7
**PIETRAGALLO** [1] - 2:17
**Pittsburgh** [1] - 2:18
**place** [2] - 15:11, 39:12
**plaintif** [21] - 3:18, 9:7, 10:14, 16:9, 18:11, 19:5, 19:8, 19:18, 19:22, 26:12, 26:25, 27:10, 27:25, 28:3, 29:8, 30:3, 30:5, 30:16, 32:21,

37:7
**Plaintiff** [4] - 1:13, 1:16, 1:19, 1:22
**plaintiffs** [42] - 3:20, 3:22, 3:24, 4:1, 5:18, 7:13, 7:23, 8:15, 9:16, 11:7, 12:17, 13:3, 14:1, 14:10, 15:17, 16:4, 17:18, 18:21, 18:24, 19:3, 20:4, 20:13, 20:23, 21:24, 23:3, 23:19, 25:20, 26:5, 26:15, 28:12, 28:16, 29:21, 29:22, 30:11, 35:24, 36:6, 36:11, 36:12, 36:15, 36:20, 40:4, 42:16
**plaintiffs'** [15] - 6:1, 7:12, 8:20, 8:23, 11:11, 11:19, 11:23, 13:11, 14:22, 21:3, 22:1, 22:24, 27:4, 34:19, 36:8
**plan** [2] - 29:14, 31:13
**plans** [2] - 27:22, 31:12
**plate** [1] - 6:6
**play** [2] - 23:1, 23:9
**pocket** [1] - 27:23
**point** [21] - 9:11, 9:16, 9:18, 10:14, 11:1, 11:2, 11:5, 11:18, 12:22, 19:11, 22:22, 23:7, 23:16, 25:14, 26:9, 26:10, 29:18, 32:13, 34:3, 39:9, 39:17
**points** [3] - 6:10, 10:6, 26:9
**poll** [1] - 16:24
**Ponce** [1] - 2:21
**position** [18] - 7:3, 7:9, 9:1, 11:11, 11:19, 11:22, 11:23, 12:5, 12:25, 16:10, 19:8, 20:19, 21:5, 21:6, 26:6, 30:9, 32:21, 40:10
**possession** [2] - 26:17, 27:17
**possibility** [1] - 15:21
**possible** [2] - 18:9, 18:16
**potentially** [2] - 29:19, 31:7
**practicalities** [1] - 42:7
**precedent** [2] - 9:12, 9:24

**precise** [1] - 33:4
**prefer** [1] - 41:5
**preferred** [2] - 27:23, 27:24
**prepared** [2] - 7:18, 32:16
**prescription** [3] - 28:1, 28:2, 28:3
**prescriptions** [1] - 28:1
**presently** [1] - 9:3
**pretty** [3] - 17:24, 18:6, 40:6
**price** [1] - 27:25
**pricing** [2] - 27:23, 29:14
**principally** [1] - 16:13
**prioritizing** [1] - 39:8
**privilege** [2] - 37:6, 37:18
**problem** [1] - 20:17
**problems** [2] - 24:11, 24:16
**procedure** [1] - 21:18
**proceeded** [1] - 31:9
**proceeding** [1] - 40:5
**Proceedings** [1] - 1:25
**proceedings** [1] - 43:4
**process** [8] - 15:12, 15:14, 16:2, 16:11, 17:1, 17:12, 20:18, 35:6
**processed** [1] - 19:4
**produce** [10] - 8:5, 8:12, 9:9, 12:11, 12:14, 13:18, 26:21, 38:6, 38:11, 38:13
**produced** [11] - 1:25, 21:8, 21:11, 21:12, 22:1, 22:2, 23:6, 32:20, 36:17, 38:7, 39:20
**producing** [1] - 18:1
**product** [5] - 15:14, 15:15, 15:19, 15:23, 19:7
**production** [15] - 6:24, 6:25, 7:4, 8:8, 8:14, 8:16, 8:21, 9:3, 21:19, 29:13, 38:1, 38:3, 38:20, 39:1, 40:5
**productions** [1] - 38:24
**products** [1] - 17:4
**PRODUCTS** [1] - 1:3
**promptly** [3] - 8:1, 35:8, 36:1
**proper** [3] - 15:16,

15:20, 19:7
**proportionality** [2] - 7:5, 13:2
**propose** [2] - 40:20, 40:23
**propriety** [5] - 28:14, 30:8, 32:8, 34:17, 35:19
**protect** [4] - 23:5, 23:7, 39:10, 39:22
**protocol** [8] - 10:11, 11:14, 13:5, 13:10, 24:5, 24:13, 24:20, 24:23
**prove** [1] - 28:25
**provide** [2] - 17:19, 23:3
**provided** [5] - 17:21, 29:9, 29:11, 33:24, 36:15
**provider** [2] - 30:24, 31:3
**providers** [1] - 31:4
**provides** [1] - 24:5
**punitive** [6] - 12:9, 13:6, 13:15, 13:17, 15:25, 18:24
**purchases** [1] - 29:21
**purporting** [1] - 29:3
**purports** [1] - 15:23
**purpose** [2] - 15:14, 31:6
**purposes** [2] - 32:6, 33:13
**pursuant** [1] - 9:15
**push** [1] - 17:25
**pushed** [1] - 7:2
**put** [7] - 3:4, 6:6, 15:11, 22:2, 24:25, 25:7, 31:9
**puts** [1] - 7:8

**Q**

**questions** [2] - 27:8, 31:22
**quote** [6] - 9:10, 10:13, 13:6, 13:15, 13:19, 39:19

**R**

**raise** [6] - 12:22, 23:18, 23:25, 24:25, 37:22, 42:20
**raised** [11] - 5:22, 6:10, 7:20, 7:21, 10:6, 11:22, 22:22, 24:4, 25:18, 33:4, 36:19

**raises** [1] - 5:19
**rapidly** [1] - 40:5
**rarely** [1] - 21:16
**RASPANTI** [1] - 2:17
**rather** [3] - 35:19, 35:20, 40:6
**raw** [1] - 39:18
**RE** [1] - 1:3
**reach** [2] - 32:18, 42:21
**read** [5] - 10:2, 10:3, 10:15, 26:25, 27:2
**reading** [1] - 13:24
**ready** [1] - 17:10
**real** [2] - 32:7, 32:9
**reality** [1] - 28:18
**really** [7] - 7:9, 10:15, 13:1, 19:23, 29:2, 38:17, 38:22
**reasonable** [1] - 6:2
**reasons** [1] - 20:16
**Rebecca** [3] - 15:6, 15:9, 20:4
**REBECCA** [1] - 2:3
**received** [1] - 5:7
**receiving** [1] - 6:9
**recognition** [1] - 41:23
**recognizes** [1] - 42:7
**record** [9] - 3:12, 13:14, 36:7, 38:23, 39:10, 39:22, 40:4, 40:6, 43:4
**recorded** [1] - 1:25
**records** [2] - 16:21, 17:5
**recovery** [1] - 29:5
**redepose** [3] - 21:14, 22:4, 38:8
**redeposed** [1] - 21:17
**refer** [1] - 36:12
**reflected** [1] - 36:9
**regard** [5] - 9:1, 9:5, 11:11, 21:2, 32:5
**regarding** [2] - 11:13, 11:24
**reimbursed** [1] - 27:14
**relate** [1] - 32:25
**relevance** [1] - 29:1
**relevant** [3] - 21:11, 28:23, 28:24
**relied** [2] - 10:9, 34:11
**relief** [1] - 5:23
**rely** [1] - 9:8
**remember** [5] - 8:9, 8:12, 8:14, 11:20, 27:19
**remove** [1] - 14:9
**rep** [4] - 14:22, 18:4, 37:5

**reply** [3] - 7:15, 9:18, 12:24
**reporter** [2] - 3:9, 3:16
**Reporter** [1] - 1:23
**REPORTER** [1] - 3:10
**Reporter/ Transcriber** [1] - 43:6
**represent** [7] - 11:6, 27:19, 29:4, 29:20, 32:23, 35:16, 38:12
**representation** [1] - 11:12
**representations** [1] - 13:25
**representative** [3] - 15:23, 16:1, 19:13
**representatives** [10] - 16:19, 17:20, 18:21, 18:23, 18:24, 19:17, 19:21, 20:7, 20:8, 27:2
**represented** [1] - 12:6
**represents** [2] - 10:10, 29:5
**reps** [6] - 16:12, 17:9, 17:14, 18:12, 20:15, 27:19
**request** [9] - 9:2, 14:21, 20:21, 22:4, 25:19, 26:2, 32:17, 35:19, 36:8
**requested** [3] - 5:23, 15:3, 15:25
**requests** [22] - 20:9, 25:18, 26:4, 26:22, 26:23, 27:8, 28:12, 28:15, 28:17, 29:10, 30:7, 30:9, 30:21, 31:21, 32:3, 32:7, 32:9, 34:17, 34:25, 35:18, 36:8, 36:11
**required** [2] - 9:14, 26:21
**reserved** [1] - 11:9
**resolve** [3] - 24:25, 35:20, 37:15
**resolved** [2] - 6:3, 36:21
**respond** [10] - 5:19, 6:1, 6:10, 6:18, 7:12, 7:14, 20:8, 20:11, 30:3, 31:25
**responded** [1] - 34:7
**response** [2] - 38:25, 39:4
**responsive** [1] - 8:5
**result** [1] - 19:21
**retailer** [1] - 4:16
**retire** [1] - 4:24

**reverse** [1] - 15:12
**review** [15] - 7:6, 9:9, 9:14, 9:15, 9:21, 9:22, 9:25, 10:11, 10:13, 11:9, 11:13, 11:16, 11:21, 12:7
**reviewed** [1] - 12:20
**risk** [1] - 21:20
**Rite** [1] - 4:17
**RIVERO** [4] - 2:20, 2:20, 32:22, 34:24
**Rivero** [1] - 32:23
**RMR** [1] - 43:6
**Road** [1] - 2:7
**rolling** [1] - 8:21
**room** [1] - 22:11
**Roseland** [1] - 1:12
**Ruben** [1] - 3:21
**RUBEN** [1] - 1:14
**Rule** [9] - 23:17, 23:20, 27:7, 28:11, 30:4, 30:7, 31:21, 32:3, 36:24
**rule** [4] - 14:3, 30:14, 32:12, 42:10
**ruled** [2] - 32:24, 33:10
**ruling** [7] - 9:8, 20:21, 32:2, 32:17, 33:14, 34:10, 37:12
**rulings** [1] - 42:18
**run** [2] - 16:2, 21:20

---

**S**

**safe** [2] - 6:13, 42:21
**safety** [1] - 42:9
**Sarah** [2] - 3:7, 4:15
**SARAH** [1] - 2:11
**satisfied** [1] - 35:15
**schedule** [5] - 19:21, 22:6, 22:19, 23:10, 37:4
**scheduled** [2] - 21:19, 37:12
**scheduling** [3] - 20:22, 21:8, 40:17
**SCHNEIDER** [1] - 1:8
**Schneider** [2] - 3:4, 3:12
**scope** [1] - 17:14
**scrap** [1] - 38:11
**search** [1] - 9:21
**searched** [1] - 26:16
**second** [3] - 11:3, 21:21, 28:14
**see** [5] - 9:12, 9:23, 10:15, 13:13, 40:12
**seeing** [1] - 9:17
**seek** [1] - 29:21

**seeking** [2] - 26:3, 27:7
**seem** [1] - 9:16
**sense** [2] - 7:10, 40:25
**separate** [3] - 9:13, 25:4, 25:19
**seriously** [1] - 22:3
**serve** [6] - 28:11, 30:7, 32:3, 32:10, 35:17, 36:23
**served** [3] - 13:1, 36:23, 37:18
**set** [4] - 8:8, 19:14, 22:6, 36:9
**SETH** [1] - 2:3
**Seth** [7] - 4:3, 19:10, 23:15, 24:21, 26:1, 36:4, 41:25
**seven** [3] - 31:18, 34:3, 34:13
**several** [1] - 31:19
**shall** [1] - 14:25
**sheet** [9] - 15:14, 16:2, 16:11, 17:12, 19:4, 19:22, 25:21, 26:25, 33:11
**sheets** [21] - 15:12, 15:18, 16:19, 17:2, 18:20, 19:16, 19:18, 19:20, 20:1, 22:25, 23:3, 26:12, 27:10, 28:13, 29:8, 30:4, 30:17, 31:10, 31:16, 32:4
**short** [1] - 7:12
**showed** [1] - 33:12
**showing** [1] - 33:16
**shown** [1] - 22:20
**shows** [1] - 27:17
**side** [5] - 12:12, 16:13, 33:12, 35:5, 36:23
**sides** [1] - 3:15
**significant** [2] - 33:17
**simple** [2] - 18:3, 18:14
**simply** [1] - 40:2
**sit** [1] - 17:10
**situation** [1] - 42:7
**six** [1] - 31:18
**Slater** [6] - 3:19, 5:25, 11:4, 12:1, 12:23, 37:9, 38:2, 38:5, 38:15, 41:18
**SLATER** [19] - 1:11, 1:11, 3:19, 6:7, 6:17, 12:2, 14:10, 16:6, 17:17, 20:13, 37:9, 37:24, 38:15, 40:8, 40:25, 41:10, 41:18, 41:24, 42:16

**small** [1] - 17:14
**sold** [1] - 15:24
**soon** [3] - 18:1, 18:9, 18:16
**sooner** [2] - 35:20, 36:2
**sorry** [3] - 9:21, 17:17, 28:21
**sort** [2] - 6:22, 15:11
**source** [1] - 27:3
**speaking** [1] - 3:4
**special** [1] - 4:20
**specific** [3] - 15:7, 26:7, 27:3
**specifically** [1] - 18:22
**speed** [1] - 5:1
**spelled** [1] - 15:9
**spent** [1] - 33:24
**sponte** [1] - 12:11
**spring** [1] - 8:7
**sprung** [1] - 11:21
**squarely** [1] - 13:9
**squeeze** [1] - 22:9
**standing** [1] - 39:1
**STANOCH** [6] - 16:8, 30:10, 30:15, 35:4, 35:23, 37:2
**Stanoch** [4] - 16:9, 30:11, 35:4, 35:23
**star** [1] - 4:20
**start** [20] - 3:18, 4:25, 5:12, 14:23, 14:24, 15:1, 18:1, 18:13, 21:8, 22:6, 22:8, 22:10, 22:11, 22:14, 22:15, 24:15, 30:5, 38:4, 38:11
**started** [1] - 20:18
**state** [1] - 3:16
**statements** [2] - 34:9, 36:6
**STATES** [2] - 1:1, 1:8
**STATUS** [1] - 1:5
**stay** [3] - 5:13, 14:6, 14:15
**stays** [1] - 42:21
**Ste** [1] - 2:21
**steam** [1] - 40:15
**stenography** [1] - 1:25
**still** [3] - 7:18, 20:7, 40:20
**straightforward** [1] - 18:15
**Street** [4] - 1:15, 1:21, 2:4, 2:14
**street** [1] - 17:3
**strikes** [1] - 17:13
**study** [1] - 10:16
**sua** [1] - 12:11

**subject** [1] - 27:22
**submission** [4] - 26:8, 26:13, 28:20, 36:14
**submitted** [3] - 24:7, 31:10, 31:12
**substance** [1] - 37:21
**sufficient** [3] - 5:18, 19:15, 21:23
**suggested** [1] - 24:8
**suggesting** [1] - 7:8
**suggestion** [1] - 17:11
**Suite** [4] - 1:15, 1:18, 2:7, 2:11
**suite** [1] - 2:15
**SummaCare** [2] - 29:7, 34:5
**supplement** [2] - 29:13, 38:16
**surprised** [1] - 42:11
**swamped** [1] - 16:16

### T

**talks** [1] - 11:16
**TAR** [8] - 9:15, 9:21, 9:22, 11:9, 11:13, 11:16, 11:21, 13:12
**target** [1] - 31:20
**team** [1] - 38:16
**tee** [3] - 7:15, 35:11, 36:25
**teleconference** [1] - 42:3
**telephone** [1] - 1:5
**TELEPHONE** [1] - 3:1
**ten** [1] - 18:25
**term** [1] - 9:21
**terms** [2] - 19:6, 24:24
**Teva** [24] - 2:8, 2:9, 4:6, 5:12, 5:14, 5:19, 5:22, 6:18, 7:8, 7:14, 7:25, 9:13, 9:19, 10:9, 11:20, 11:22, 12:5, 12:25, 13:12, 13:18, 13:25, 14:5, 14:13, 25:13
**Teva's** [7] - 6:2, 9:5, 9:18, 10:3, 11:6, 13:8, 13:24
**Thanksgiving** [2] - 17:10, 40:22
**THE** [3] - 1:1, 1:8, 3:8
**The court** [82] - 3:3, 3:9, 3:10, 3:11, 3:16, 4:2, 4:18, 5:4, 5:7, 6:2, 6:15, 6:18, 7:8, 7:11, 8:4, 8:9, 8:17, 8:20, 8:22, 9:5, 9:9, 9:24, 10:5, 10:8, 10:19, 10:21, 10:24,

11:12, 11:18, 11:24, 11:25, 12:3, 12:21, 13:1, 14:15, 14:19, 14:23, 14:25, 15:3, 16:4, 17:23, 18:18, 20:6, 20:20, 21:2, 22:3, 22:22, 23:6, 23:14, 23:18, 25:3, 25:9, 25:16, 28:8, 29:17, 30:5, 30:13, 31:16, 32:1, 32:3, 32:24, 34:6, 34:12, 34:15, 35:3, 35:10, 35:14, 35:16, 36:23, 37:4, 37:12, 37:19, 37:25, 38:17, 39:17, 40:3, 40:9, 41:3, 41:13, 42:4, 42:17
**themselves** [5] - 14:6, 14:8, 14:9, 18:4, 22:11
**theory** [1] - 27:12
**they've** [4] - 15:24, 33:15, 34:3, 37:10
**thinking** [1] - 24:6
**THORNBURG** [1] - 2:10
**thousands** [3] - 21:6, 27:19
**three** [5] - 19:14, 29:6, 29:8, 29:23, 30:1
**throughout** [1] - 26:21
**tiered** [1] - 15:11
**tiers** [1] - 27:23
**timeframe** [1] - 15:25
**timing** [1] - 36:12
**today** [5] - 4:20, 19:8, 24:23, 37:21, 40:13
**together** [1] - 18:20
**took** [3] - 18:5, 18:9, 34:4
**total** [2] - 26:22, 33:21
**totally** [2] - 22:16, 23:21
**toward** [1] - 25:2
**TPP** [1] - 20:8
**TPPs** [3] - 17:20, 27:2, 29:3
**track** [2] - 24:12, 24:17
**transcript** [2] - 1:25, 43:3
**transcription** [1] - 1:25
**transition** [1] - 5:1
**TRAURIG** [1] - 2:6
**Traurig** [2] - 4:6, 4:7
**treated** [1] - 31:4
**trial** [2] - 31:12, 31:13
**tried** [2] - 28:19, 28:21
**trigger** [1] - 18:22

**TRISCHLER** [2] - 2:17, 4:10
**Trischler** [3] - 4:11, 8:9, 8:13
**true** [1] - 16:22
**truly** [1] - 27:8
**try** [3] - 23:22, 32:18, 35:2
**trying** [6] - 13:22, 27:16, 32:24, 38:17, 39:10, 39:22
**Tuesday** [1] - 41:9
**turn** [2] - 11:2, 15:6
**turns** [3] - 21:4, 21:10, 21:25
**two** [12] - 6:9, 6:13, 12:13, 12:24, 18:7, 19:14, 19:19, 28:10, 36:1, 36:6, 36:14, 37:14
**two-or-three-month** [1] - 19:14

### U

**ULMER** [1] - 2:13
**under** [1] - 8:3
**understood** [2] - 12:5, 31:8
**UNITED** [2] - 1:1, 1:8
**unknown** [1] - 29:4
**unless** [1] - 29:22
**unquote** [6] - 9:10, 10:13, 13:6, 13:15, 13:19, 39:19
**unsympathetic** [1] - 7:21
**up** [17] - 5:1, 5:10, 5:15, 6:5, 6:25, 7:15, 15:1, 18:13, 20:5, 22:8, 28:25, 35:11, 36:8, 36:25, 39:14, 40:12, 42:19
**USA** [1] - 2:9

### V

**validation** [1] - 10:11
**Valsartan** [2] - 3:13, 31:5
**VALSARTAN** [1] - 1:3
**variations** [2] - 27:18, 28:2
**version** [1] - 24:6
**Veterans** [1] - 40:19
**Via** [1] - 1:5
**VIA** [1] - 3:1
**VICTORIA** [1] - 2:6
**Victoria** [1] - 4:5
**view** [4] - 9:18, 12:16,

20:23, 21:22
**Vine** [1] - 2:14

### W

**wait** [6] - 17:11, 21:7, 22:10, 31:19, 38:10, 42:20
**waited** [1] - 36:18
**wants** [3] - 38:16, 40:21, 41:17
**waterfall** [1] - 15:12
**Wednesday** [3] - 1:6, 40:22, 41:9
**week** [2] - 36:7, 36:13
**weeks** [7] - 6:9, 6:13, 12:24, 24:22, 36:2, 36:14, 37:14
**welcome** [3] - 5:13, 12:2, 14:16
**WHITELEY** [3] - 1:20, 1:20, 3:25
**Whiteley** [1] - 4:1
**wide** [1] - 28:4
**WILLIAMS** [3] - 5:3, 5:6, 41:22
**Williams** [7] - 2:24, 4:21, 4:22, 5:1, 5:2, 33:2, 41:19
**Williams's** [1] - 6:6
**willing** [1] - 35:2
**wind** [1] - 40:12
**winter** [1] - 8:7
**witness** [5] - 21:14, 21:17, 22:4, 38:8, 39:13
**witness's** [1] - 39:1
**witnesses** [2] - 38:25, 40:1
**word** [1] - 18:18
**wording** [1] - 26:11
**words** [1] - 12:10
**worried** [1] - 40:3
**wrap** [1] - 5:10
**written** [2] - 26:12, 31:15
**wrote** [1] - 31:16

### Y

**year** [4] - 30:16, 30:25, 34:12, 42:11
**years** [1] - 21:15
**yesterday** [4] - 7:22, 10:4, 15:2, 35:7
**yourselves** [1] - 14:17

### Z

**ZHP** [3] - 2:5, 4:4,

25:12