**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____    CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION                1:19-md-02875-RBK-JS

_____    STATUS CONFERENCE
                                    (Via telephone)

        Wednesday, October 28, 2020
        Commencing at 10:00 a.m.

B E F O R E:              THE HONORABLE JOEL SCHNEIDER,
                          UNITED STATES MAGISTRATE JUDGE
                (Page 57) THE HONORABLE ROBERT B. KUGLER,
                          UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey 07068
        For the Plaintiff

        GOLOMB & HONIK PC
        BY:  DAVID JOHN STANOCH, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania 19103
        For the Plaintiff

        KANNER & WHITELEY LLC
        BY:  CONLEE S. WHITELEY, ESQUIRE
        701 Camp Street
        New Orleans, Louisiana 70130
        For the Plaintiff




        Karen Friedlander, Official Court Reporter
             friedlanderreporter@gmail.com
                  (856) 756-0160

        Proceedings recorded by mechanical stenography;
        transcript produced by computer-aided transcription.

```
 1   A P P E A R A N C E S: - CONTINUED

 2

 3       DUANE MORRIS LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
 4       30 S. 17th Street
         Philadelphia, Pennsylvania 19103
 5       For the Defendant ZHP and the Joint Defense Group

 6       GREENBERG TRAURIG LLP
         BY:  VICTORIA LOCKHARD, ESQUIRE
 7            STEVEN M. HARKINS, ESQUIRE
         3333 Piedmont Road, NE, Suite 2500
 8       Atlanta, Georgia 30305
         For the Defendants, Teva Pharmaceutical Industries Ltd.,
 9       Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
         Pharma, Inc.

10       BARNES & THORNBURG LLP
         BY:  SARAH E. JOHNSTON, ESQUIRE
11       2029 Century Park East, Suite 300
         Los Angeles, CA 90067-2904
12       For the Defendant, CVS Health Co.

13       ULMER & BERNE LLP
         BY:  JEFFREY DANIEL GEOPPINGER, ESQUIRE
14       600 Vine Street
         Suite 2800
15       Cincinnati, OH 45202
         For the Defendant, AmerisourceBergen
16
         PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
17       BY:  CLEM C. TRISCHLER, ESQUIRE
         One Oxford Centre, 38th Floor
18       Pittsburgh, Pennsylvania 15219
         For the Defendant Mylan and the Joint Defense Group
19
         RIVERO MESTRE LLP
20       BY:  ANDRÉS RIVERO, ESQUIRE
         2525 Ponce De Leon Blvd. Ste. 1000
21       Miami, FL  33134
         For MSP
22

23

24

25
```

```
 1              (ALL PARTIES VIA TELEPHONE, October 28, 2020,

 2   10:02 a.m.)

 3              JUDGE SCHNEIDER:  Good morning, Counsel.  This is

 4   Judge Schneider.  I hope everyone is well.

 5              Sarah, are you there?

 6              THE DEPUTY CLERK:  I'm here, Judge.

 7              JUDGE SCHNEIDER:  Do we have a court reporter?

 8              THE DEPUTY CLERK:  Yes, Karen's on the line.

 9              JUDGE SCHNEIDER:  Hi, Karen.

10              THE COURT REPORTER:  Hi, Judge.

11              JUDGE SCHNEIDER:  Let's go on the record, Karen.

12              Again, this is Judge Schneider.  We're on the record

13   in the Valsartan MDL-2875.

14              Can we have the names of lead counsel on the phone

15   starting with plaintiffs.

16              MR. SLATER:  Good morning, Your Honor, Adam Slater on

17   behalf of plaintiffs.

18              JUDGE SCHNEIDER:  Anyone else on plaintiffs' team

19   want to enter their appearance?  If not, that's fine with the

20   Court, but usually a number of people enter their appearances,

21   but if not, that's okay.

22              MR. SLATER:  I hate to be all alone here.

23              MR. STANOCH:  David Stanoch, liaison counsel for

24   plaintiffs, not to leave Mr. Slater, Judge.

25              MR. RIVERO:  And Judge, I'll join, Andrés Rivero,
```

1    counsel for MSP.

2            MS. WHITELEY:  Good morning, Your Honor, this is

3    Conlee Whiteley on behalf of plaintiffs.

4            JUDGE SCHNEIDER:  Good morning, Ms. Whiteley.

5            All right.  Why don't we go for the defense then.

6            MR. GOLDBERG:  Thank you, Judge.  This is Seth

7    Goldberg on behalf of the ZHP parties and the defendants.

8            MS. LOCKARD:  Good morning, this is Victoria Lockard

9    from Greenberg Traurig on behalf of the Teva entities and the

10   defendant.

11           MR. TRISCHLER:  Good morning, Your Honor, Clem

12   Trischler for Mylan Pharmaceuticals and the defense group.

13           MR. GEOPPINGER:  Good morning, Your Honor, Jeffrey

14   Geoppinger for AmerisourceBergen and the wholesaler

15   defendants.

16           MS. JOHNSTON:  Good morning, Your Honor, this is the

17   Sarah Johnston for the retailer pharmacy defendants as well as

18   CVS and Rite Aid.

19           JUDGE SCHNEIDER:  Okay.  Good morning, everyone.

20           I received your letters.  Thank you very much.  They

21   were comprehensive.  I'm prepared to talk about all of the

22   issues you want to talk about.

23           Before we get into the agenda, I'd just like to get

24   my arms around just generally where things are and some

25   general questions.

1          Judge Kugler, I spoke with him, we have prepared for

2   this conference, he's read your submissions, and unless you

3   have any objections, immediately after this part of the call,

4   he'll join us to deal with his issues and anything you want to

5   address with Judge Kugler.

6          So we're at the end of October.  I know under the

7   current schedule, the defendants are supposed to be complete

8   with their document and ESI production by the end of November.

9          Are we generally on track with that, counsel?  And

10  how are things going on that front?

11         MR. GOLDBERG:  Your Honor, this is Seth Goldberg for

12  defendants.  I believe we are.  I believe all of the

13  defendants are working through their productions and are

14  producing documents on a rolling basis to plaintiffs, and I

15  don't know if there are any particular issues right now, so it

16  seems like we're headed in the right direction.

17         JUDGE SCHNEIDER:  Terrific, that's really good news.

18         On another general note, you know, we'll talk about

19  the deposition protocols today, and I wholeheartedly agree

20  with what I said several times before, the logistical issues

21  regarding to these depositions are just incredibly

22  complicated.  I can't imagine, I know I've never been involved

23  in a case where it's been as complicated as this case, but

24  with the sophistication of the counsel in this case and the

25  Courts help, I'm sure we'll get through it.

1        But we'll get into -- like I said, we'll get into the

2   deposition protocol issues, but in terms of scheduling, have

3   the parties started discussions about when and where the

4   depositions are going to take place?

5        Let's start with the plaintiffs, because I think

6   that's a little bit more straightforward.  Have there been

7   discussions about when the class plaintiffs' deps are going to

8   start and where they are scheduled?

9        MR. SLATER:  Your Honor, it's Adam Slater.  We

10  provided in the last few days, dates and periods of time when

11  I think most of the class plaintiffs are available to be

12  deposed.  We'll get more dates.  They haven't been requested

13  by the defense, but we just unilaterally started providing

14  them, because we have, you know, a concern that the Court's

15  aware of that the defense doesn't want to proceed in the

16  timeframe that Your Honor has expressed, so we've just started

17  unilaterally providing dates in November, December, and

18  hopefully, the defense will start to accept those dates and

19  schedule the depositions.

20       We assume that the plaintiff depositions will be done

21  via Zoom.  I don't think -- or a similar technology.  We don't

22  really think there's a reasonable alternative at this point.

23       JUDGE SCHNEIDER:  Mr. Goldberg, any discussion

24  amongst your group about when these depositions are going to

25  start, how you're going to coordinate them, who's going to

 1    take them, et cetera?

 2         MR. GOLDBERG:  Yes, Your Honor, and we received

 3    plaintiffs' letter, I think it was Monday evening, providing

 4    us with a list of class representatives and dates in November

 5    and December.  We're going to look at that.

 6         You know, the Court has set the period for those

 7    depositions to be conducted through, I believe it's mid-March,

 8    and as the Court noted during the last conference, the

 9    defendants will determine when we're going to start those

10    depositions, probably appreciate getting those dates.  I think

11    we are looking toward probably after the new year to begin

12    those depositions, but we are going to coordinate and we'll

13    let plaintiffs know, hopefully this week, whether we're going

14    to propose some dates or whether we're going to ask them to

15    get additional dates.

16         I think it would make sense for plaintiffs and be

17    reasonable for them to start asking their class representative

18    clients to look through dates in the first three months of

19    2021.

20         JUDGE SCHNEIDER:  Okay.  Well, that's fine,

21    Mr. Goldberg.  And I agree, when you start those -- not you,

22    when the defendants start those depositions, it's completely

23    up to them.  It's your call.

24         I know the Court order provides currently that the

25    deps are going to start no later than January 15th.  I'm just

1    going to make a minor change to that, to make it January 18th,

2    which is the Monday rather than the Friday.  If the 18th is a

3    holiday, we'll make it the 19th.  I don't think that

4    materially affects anything.

5            But, again, it's totally within the defendants'

6    control when they start, as long as they finish up by the

7    date.

8            Do the parties intend to communicate about who's

9    going to take what plaintiffs' deposition?  I think that makes

10   a lot of sense.  I'm not -- I read the protocol.  I'm not sure

11   there was a provision in there about identifying who's going

12   to take the deposition, so that, you know, communications

13   don't have to flow -- every communication doesn't have to flow

14   through liaison counsel to avoid a bottleneck.

15           Is that something you're going to do, to advise each

16   other of who's going to take each deposition, who's going to

17   be the lead questioner anyway?

18           MR. SLATER:  Your Honor, it's Adam Slater.  I don't

19   think we addressed it, but it's a great point and I think that

20   we probably should add a provision that the lawyer who's going

21   to be leading -- defending the deposition should be identified

22   and the questioner, that way -- you're right.  So that there

23   could be direct contact and not have to involve 20 lawyers.  I

24   think it's a great idea, we should definitely include it.

25           JUDGE SCHNEIDER:  Yeah, I do too.  I think it should

1  be included.  I think, I think, I'm not a hundred percent

2  sure, I may have seen something in the protocol about

3  communications go through liaison counsel and frankly, I think

4  that's a recipe for disaster.

5          Mr. Slater, Mr. Goldberg, you've got your hands full

6  with so many issues.  The nitty-gritty of a deposition

7  probably is not something you need to get involved in, but the

8  lead defense attorney and the lead questioner should be able

9  to work those issues out.

10          MR. SLATER:  I agree.

11          JUDGE SCHNEIDER:  I agree, it should be in the

12  protocol.

13          Maybe another thing that should be in the protocol

14  is, if you can agree on a court reporter or multiple court

15  reporters so you know who's going to do these things and that

16  person or company or persons can get down the procedure that

17  you all want to follow to make things go smoother for you.

18  Again, I'll leave that up to you.

19          MR. SLATER:  Your Honor, it's Adam Slater.  Just to

20  notify you, we've spoken with Golkow who handled all the

21  depositions in the Benicar litigation, and we've told the

22  defense that, and I don't know that they've confirmed, but

23  hopefully, there won't be any objections to that and we

24  absolutely can do that.  I think there's no way to do this

25  seamlessly, other than to have one company handling

1    everything, because obviously, there's scheduling and

2    technical issues, et cetera, so it makes a lot of sense to use

3    one company.

4         JUDGE SCHNEIDER:  Okay, great.  I'm not ordering it,

5    but I think it makes sense to use one or two companies.  If

6    the plaintiffs want to use one, the defense wants to use one,

7    you know, that's fine, but probably it makes sense to use, you

8    know, a maximum of one or two companies.

9         So it sounds like the plaintiffs' deps, you know,

10   that's the low-hanging fruit in this case.  You'll be handling

11   that and that looks like it's going to be fine.

12        I know one of the issues that you want to discuss

13   with Judge Kugler is the additional BI depositions you want to

14   take, Mr. Goldberg, and that's fine.  I had a brief

15   conversation with Judge Kugler about that yesterday.  If you

16   want to raise that today, that's fine.

17        I think he was anticipating addressing that at the

18   end of the November meeting, but if you want to raise it

19   today, that's fine, no problem.  But it's not something that's

20   going ignored.  We're aware of that request of the defendants.

21        The more problematic issue, obviously, is the

22   depositions of the defendants.  We have the complications of

23   the foreign depositions, the Chinese, the Indian depositions.

24   Those are one category and then, of course, there's the

25   category of witnesses who hopefully are in the United States

1    that are going to be deposed.

2         Have there been discussions amongst the parties about

3    who's going to be deposed when, et cetera, et cetera?

4         MR. SLATER:  Hello, Your Honor, Adam Slater again.

5    Those discussions have begun.  If they're not done and they're

6    certainly going to need to advance further, we, as the

7    plaintiffs, have expressed to the defense that what we want to

8    do, and, Your Honor, we started to discuss those prioritized

9    people for depositions at least as a starting point plus

10   trying to get identification of who would be the designated

11   corporate representatives, and, you know, it's our hope, as

12   we've expressed to defense liaison, that we can work together

13   to try to be practical in terms of, for example, who gets

14   designated as a corporate representative, so that it can be

15   more easily done, hopefully, in the United States, or much

16   closer in time zones, so that it can be done more seamlessly

17   and with a lot less inefficiency, so that we could try to --

18   as we discussed previously, try to maybe reduce the number of

19   fact depositions we ultimately have to take as best as we can.

20        I think it's a conversation that has to continue, but

21   from our perspective, we think that the selection of corporate

22   representatives and the timing of the depositions have to take

23   into account where somebody is located, what language they

24   speak and, you know, I think that if we work together on that,

25   we can significantly reduce the logistical issues and make it

1    much more easy to get these depositions accomplished.

2        JUDGE SCHNEIDER:  Yes, that certainly makes a lot of

3    sense, but I would hope one of the reasons we started this

4    more intensive effort about this issue is a recognition of how

5    difficult it is going to be.

6        So if the depositions of the defendants are going to

7    start in mid-January, the parties really have to roll up their

8    sleeves and start talking about who's going to be deposed

9    where and when.

10        Which reminds me, if it's not already in the

11   deposition protocol, I think it should be, and if it's not,

12   we'll order it.

13        But defendants should be required to identify who the

14   designated 30(b)(6) witnesses are going to be, who are going

15   to appear for their testimony.

16        I know in the run-of-the-mill cases, the plaintiff

17   usually finds out when the deposition starts, but this

18   certainly isn't the run-of-the-mill case.  So there should be

19   an agreement amongst the parties, X days or weeks, whatever,

20   before the deposition is taken, the defendant should be

21   required to identify who the designated witness or witnesses

22   are, and that makes a lot of sense, because I know, and we'll

23   discuss it in a few minutes, there's this issue about

24   individual and corporate depositions, and you don't want to

25   depose the same person twice, makes a lot of sense, but in

1  order to accomplish that goal, the designee witness has to be

2  identified.

3        So, I think that's something important that should be

4  in the protocol, if it's not already in there.

5        Also, Mr. Slater, I think it's important to make sure

6  that the plaintiffs designate -- I don't know if you have a

7  person or a group of persons who is going to be responsible

8  for each defendant so that that defendant knows who to contact

9  about any questions and logistical issues.

10        I don't know, say, if you're going to have just one

11  person who's going to do all the ZHP depositions, or do you

12  have a team of people who are going to do the ZHP depositions.

13  But there should be a point person for the plaintiffs that Mr.

14  Goldberg or Mr. Trischler or, you know, Ms. Lockard knows for

15  their client, who they can talk to about issues, again, rather

16  than funneling everything through you.

17        MR. SLATER:  We'll do that, Your Honor.  I think to

18  some extent, we're still waiting for some guidance as to

19  whether there's going to be any prioritization of any of the

20  particular defendants, you know, based on some sort of, you

21  know, trial plan as we discussed months and months ago.

22        But in either case, we'll certainly have a point

23  person for scheduling and logistical issues for the sets of

24  depositions for each manufacturer, of course.

25        JUDGE SCHNEIDER:  I know that when we had that call a

 1   week or two or three ago with Judge Kugler, he had indicated

 2   that he's going to address that with the parties at the end of

 3   -- at the end of November call.  I think that call is

 4   scheduled for November 22nd or thereabouts, so the timing

 5   should work out good to get further indication from Judge

 6   Kugler about how the case is going to proceed, priorities.

 7   Plaintiff can set them and then more intensive discussions can

 8   take place about who's going to be deposed, where, et cetera.

 9            Okay.  Those were the general questions I had.  We

10   can get into the more specific issues.  Let me say at the

11   outset, that I read, obviously, I read what the parties

12   submitted.  It looks like at least with regard to one specific

13   category of issues, the Rule 34 document requests to the

14   third-party payors, it looks like the parties are meeting and

15   discussing on this issue.

16            If the parties don't object, I certainly have no

17   problems if they continue their discussions and whatever

18   issues remain, we can address them at the November 11th call.

19   But it seems like the parties are making progress, and I don't

20   want to stand in the way of that.

21            To the extent there's any objection that the document

22   requests are late, that objection is overruled.  The Court has

23   already said that the Rule 34 document requests may be served.

24   The substance of what's appropriate or not appropriate remains

25   to be decided or agreed upon, but we're not going to foreclose

 1    the defendants from making those document requests, nor are we

 2    going to foreclose the defendants from raising their

 3    contention that documents that were responsive to the fact

 4    sheets weren't produced.

 5            So that may give the parties some guidance on some

 6    issues, but if the parties are agreeable, I certainly am not

 7    going to stand in the way of additional discussions to

 8    hopefully work out all the issues, and again, whatever

 9    remains, we can discuss on November 11th.

10            What do you all think?

11            MR. GOLDBERG:  Your Honor, this is Seth Goldberg for

12    the defendants, and that is what we proposed to plaintiffs on

13    Saturday.  I just want to clarify, the letter that the Court

14    received yesterday, we had proposed continuing to meet and

15    confer with plaintiffs on Saturday.  We asked them if that was

16    acceptable.  They did not respond to us until yesterday

17    afternoon, about 15 minutes before they filed their letter

18    yesterday evening.

19            Consequently, we were -- we had to brief the issue

20    fully for submission on Monday.  It seems that the parties are

21    in agreement to meet and confer and hopefully, we'll be able

22    to resolve the issues by November 11th.

23            JUDGE SCHNEIDER:  Okay.  Great.  That's fine.  I

24    raised that issue first because it was easy to get out of the

25    way.

1          I have your letter in front of me, Mr. Goldberg.  Do

2   you want to go through these sort of big picture issues on the

3   deposition protocol to see if we can get them resolved so we

4   can finalize the protocol?

5          MR. GOLDBERG:  Sure.

6          Excuse the background noise, of course this is the

7   day that the lawns in the neighborhood are getting mowed.

8   Hopefully, that will stop soon.  My neighbor has a much bigger

9   yard than I do.

10          (Laughter.)

11          JUDGE SCHNEIDER:  Well, let me just say, let me just

12   say, I may have said this before, Mr. Goldberg, I almost never

13   get on a call these days where there's not a crying baby, a

14   landscaper or a contractor in the background, so don't worry

15   about it.

16          MR. SLATER:  Your Honor, it's Adam Slater.  Before we

17   get into this, I just want to make the Court aware and

18   possibly remind Mr. Goldberg, we have not completed our

19   meet-and-confer process on the deposition protocol.  I just

20   want to make it clear for the Court because we just literally

21   in our letter brought the Court up to date on the fact that

22   the discussions were ongoing.

23          So we were surprised to see statements that certain

24   things had been finalized, or that the macro issues were ready

25   to be teed up for the Court.  I mean, if you want to have a

1    discussion of it, we will, but we never completed the process,

2    we thought we were still talking.  So this was a surprise to

3    us that their letter, the defense letter was framed as if

4    everything -- certain things were agreed to and other things

5    were ready to be argued.  We thought the process was still

6    going.

7         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

8    You know, that seems to be inconsistent with the fact that I

9    sent Mr. Slater the protocol with the macro issues and

10   identified those that we would be raising with the Court and

11   have not heard back and so was under the impression that we

12   were in agreement.

13        You know, if plaintiffs want to continue to talk

14   about the protocol, any particular issues they want to

15   discuss, we can do that, certainly, not, you know, no need to

16   finalize the protocol today.

17        These few issues we might, you know, we might want to

18   address now, since they've been raised with plaintiffs a

19   number of times.  We've discussed them a number of times.

20   These issues seem to be ripe, but happy to, you know, put it

21   off and we can discuss it in two weeks.  It's up to Your

22   Honor.

23        JUDGE SCHNEIDER:  Well, we can deal with these three

24   issues or four issues now, but if there's going to be

25   additional issues, I would prefer that you meet and confer and

1    we can address them on November 11 or thereabouts.

2          I'm not surprised that Mr. Slater had said that there

3    were a couple of provisions in at least one of the addendums I

4    saw that -- I would be surprised if plaintiff in the first

5    instance agreed to it, so I expected that that was going to

6    happen, but why don't we deal with these issues now and any

7    additional issues, we'll deal with on November 11, and then --

8    it's a little bit later than I hoped, but it would still be

9    great if we could get a final protocol with addendums entered

10   before the end of November.

11         So why don't we forge ahead on these issues and we

12   understand that there may be additional disputes, and if there

13   are, parties will talk about it and we'll raise it and address

14   it at the next call on November 11.

15         Mr. Goldberg, do you want to start with the issues

16   you've raised?

17         MR. GOLDBERG:  Sure.  There are three issues that we

18   put in, and this is just with respect to the deposition

19   protocol, not the addendums, although, it may bear on the

20   addendums, but the first issue is that defendants have raised

21   the point that those witnesses that are being deposed pursuant

22   to the Master Complaint may end up being noticed for

23   depositions should there be an Irbesartan or -- and/or

24   Losartan Master Complaint and they may be noticed for

25   depositions pursuant to those Master Complaints, and what we

1   suggested to plaintiffs is that we add language to the

2   protocol that the parties would agree now that on -- should

3   witnesses in the Valsartan action be noticed for depositions

4   in the irbesartan and/or losartan actions, that the parties

5   would simply work together for those later depositions to try

6   to narrow them to avoid retreading ground covered in the

7   Valsartan matter, to the extent there is any, so that those

8   depositions are more streamlined and efficient.

9           And we've proposed language in our letter that went

10  out to add to the protocol to cover that issue, as you can see

11  on Page 2 of our -- at the top of Page 2 of our letter.

12          JUDGE SCHNEIDER:  Isn't that hard to -- in concept,

13  isn't that hard to dispute, Mr. Slater?

14          MR. SLATER:  In concept, it's hard to dispute, but

15  then when we started to ask questions of Mr. Goldberg during

16  the meet and confer, which I'm going to again say -- we should

17  talk through these now, I think it's a good idea, but I want

18  the Court to be fully aware that we had left it that we were

19  still discussing these issues, so we wouldn't brief the issues

20  if we knew it was being presented.

21          So in the meet and confer, we said, great concept,

22  now let me ask you a question.  So if a witness, for example,

23  was deposed about the contamination of the Valsartan, are you

24  going to agree that that testimony is going to apply to

25  losartan and irbesartan.  And the answer was, well, we'll have

1    to see what the testimony was.

2         So do we have to ask the question in a generalized

3    sense during the Valsartan deposition in terms of the drug, or

4    do we have to ask it in the context of Valsartan, or do we

5    have to also include irbesartan and losartan despite the fact

6    that we haven't initiated specific discovery on those drugs

7    and don't know if there are separate issues, so we're not

8    educated on that before the depositions?  And the answers

9    were, you know, basically, we'll see or we'll figure it out.

10        So we have no problem with the concept.  The problem

11   is, that the concept predisposes that the details will be

12   easily agreed to.  We have no interest in asking a witness the

13   same question over and over again, if the testimony is

14   adequate and covers the issue the first time.

15        But I just gave you a couple of examples that are

16   really basic, and the answer from the defense was, we don't

17   know.  I asked, was the losartan manufactured the same way,

18   does it have the same contamination causes across all the

19   defendants.

20        The answer was, we don't know, we haven't looked into

21   that yet, or we don't -- we can't tell you that.

22        So we were being asked to agree to something where

23   the defense was telling us, we don't know whether this is even

24   feasible on the fundamental issues.  So that -- the devil is

25   in the details on this.  There's no objection to the concept

```
 1   that if somebody's been deposed on a common issue, and it's
 2   overlapping to the losartan or irbesartan cases later, that it
 3   doesn't need to be repeated, you know, we have clean
 4   testimony, we're not going to be looking to do it again
 5   anyway.
 6           So again, the details, you know, beg for a little
 7   more -- I just don't think it's an issue that needs to be
 8   addressed in the protocol at this point, because the protocol
 9   already addresses, in general, duplication, and again, there
10   is no agreement on how the details will interact between these
11   different drugs.
12           JUDGE SCHNEIDER:  But, for example, the thought that
13   occurs to me is, let's say the same witness is produced for
14   losartan or irbesartan, however you pronounce it, we certainly
15   don't have to spend the first hour or two at the deposition
16   going over the gentleman's work history or employment history
17   and educational background, right?
18           MR. SLATER:  I think we agree to that, I don't think
19   we'd have to repeat those questions.  That's the low-hanging
20   fruit, to steal Your Honor's phrase.  I'm talking the
21   nitty-gritty stuff that's the actual substantive testimony.
22           JUDGE SCHNEIDER:  All right.
23           MR. SLATER:  But I will ask -- I'm sorry, go ahead,
24   Judge.
25           JUDGE SCHNEIDER:  No, you go ahead.
```

1    MR. SLATER:  I was just going to say, so does that

2 presuppose that in the Valsartan deposition, we need to take

3 stuff away and ask about their involvement with losartan and

4 irbesartan -- I do not believe it would be appropriate.

5    (Court reporter asks counsel to repeat.)

6    MR. SLATER:  What I said is that we don't believe it

7 would be appropriate for us to have to address losartan and

8 irbesartan during the Valsartan depositions, because,

9 obviously, that's something we have no specific discovery on

10 and that would take away time to develop the Valsartan case.

11    JUDGE SCHNEIDER:  I think the best thing is, and I

12 was just going to say, Mr. Goldberg, I think the best thing to

13 do is to defer this issue, let the parties talk about it, and

14 see if you can reach a consensus.  I do seem to recall, Mr.

15 Slater is correct, that there is a provision already in the

16 protocol about duplicative testimony.

17    You can be assured that we're not going to permit a

18 witness to be harassed.  I don't think the plaintiffs would do

19 that anyway, nor do I think the plaintiffs have an interest in

20 duplicating grounds that have already gone over, but it's hard

21 to -- it's hard to disagree with the general notion that there

22 are going to be specific questions regarding losartan, for

23 example, that are not applicable to Valsartan.

24    So I would suggest we just defer this issue for the

25 moment and let the parties discuss it further and maybe, maybe

```
 1   not, we'll have to address it in the future.  Okay?
 2           Why don't we go on to the second issue, Mr. Goldberg.
 3   Now, this is an important issue.  Who may attend depositions.
 4   Certainly, I don't think there's objection if people listen in
 5   on depositions.  I don't think that's what you're concerned
 6   about.  The parties are concerned about who's going to have a
 7   right to question at depositions, is that right, Mr. Goldberg?
 8           MR. GOLDBERG:  Yes, Your Honor, there are a few
 9   issues.  One, we agreed, we don't think there's any reason the
10   defendant in this MDL should not be able to attend a
11   deposition, if it's by video, then it's, you know, either the
12   video or listening in to the deposition.  If it's in person,
13   that right still exists.  You know --
14           JUDGE SCHNEIDER:  And let me just ask, is there any
15   dispute about that?  Put questioning aside, but, plaintiffs,
16   is there any serious dispute that any defendant who wants to
17   listen in on a dep can listen in?
18           MR. SLATER:  Nope.  No, Your Honor.  It's Adam
19   Slater.  No dispute.
20           JUDGE SCHNEIDER:  Let's get to the harder question.
21           MR. GOLDBERG:  So in terms of the questioning, there
22   are -- there are a couple of provisions in the protocol that
23   matter here.  So in terms of an action where a defendant is a
24   -- a particular action in which a defendant is named, a party
25   is named as a defendant in that action, so, say, a personal
```

1  injury case, where you have three different manufacturers, the

2  wholesaler and two different retailers, you know, it's our

3  view that each of those defendants has a right to question the

4  witness with facts -- about facts specific to that defendant.

5       I mean, this is what happens in PI cases all the

6  time.  In particular, questions like product identification

7  are, you know, particularly pertinent to a specific defendant,

8  and our approach would be to allocate, among the different

9  defendants the questioning, so that you'd have one lead

10 attorney who would ask the vast majority of questions of the

11 witness.

12      But to the extent there are some particular questions

13 that a specific defendant, who's been named in the case would

14 like to ask, that the defendants would allocate their time

15 accordingly to allow for that question, and, of course,

16 reserving the right, if necessary, to ask for additional time.

17      But going in, our approach would be to allocate the

18 time to fit within the seven hours.

19      So that's the issue of defendants named in a specific

20 action.

21      There is another issue which, you know, which relates

22 to a specific provision in the protocol that I'm going to try

23 to direct Your Honor to, but effectively, what it does, it

24 puts all of the defendants in the MDL on notice that any

25 witness's testimony can be used against that defendant, even

 1    if the defendant is not named in a specific action.

 2         So in a way, every defendant has, you know, has an

 3    interest in appearing at the deposition in light of that

 4    provision, and there is a possibility, I suppose, that a

 5    witness could provide some testimony that a, you know, an

 6    individual defendant might feel the need to ask a question to

 7    the witness, and in light of that provision, I don't see how

 8    the defendant can be precluded from asking the witness a

 9    question, and I'm just trying to find the provision.

10         If you're looking at Exhibit A to our letter on

11    Page 16, it might appear to Your Honor in the marginalia and

12    deleted language of what it says is, the testimony can be used

13    in this litigation against anybody who was served with notice

14    of the deposition or otherwise had reasonable notice thereof.

15         So, of course, every defendant in this MDL has notice

16    of a deposition.  So our --

17         JUDGE SCHNEIDER:  I think I -- okay.  I'm sorry, go

18    ahead.

19         MR. GOLDBERG:  Our thinking is that with respect to

20    the, you know, cases where individual defendants are named, we

21    would allocate the time between the defendants to try to fit

22    it within seven hours, with a lead attorney asking the vast

23    majority of the questions, and, of course, there is this --

24    and so that's one issue that we -- and we've proposed language

25    for that.

1          But, you know, there is this background issue that
2    could result in some -- some defendant that is attending the
3    deposition also needing to ask a question, and we wanted to
4    make sure the Court was aware of that, and that really goes to
5    why there is a right to attend a deposition.
6          JUDGE SCHNEIDER:  Well, that issue is resolved.
7    Everybody can attend the depositions.  The real question is
8    whether they can question.
9          So on the issue of whether a deposition can be used
10   against any defendant in the MDL, these cases are consolidated
11   for discovery and case management, so don't the Federal Rules
12   of Procedure, you know, provide that if a deposition is taken
13   in the case, it can be used against any party, right?  You
14   can't prevent that, can you?  You can't usurp the Federal
15   Rules of Civil Procedure.
16         MR. GOLDBERG:  Right.  The Federal Rules of Procedure
17   and evidence will control, and so it's just important that,
18   you know, a party who's attending -- that the parties have the
19   right to attend the deposition in light of those rules, and if
20   necessary, be able to confront the witness in light of those
21   rules.
22         JUDGE SCHNEIDER:  Well, again, we're talking
23   conceptually, but certainly, if they take the plaintiff,
24   whoever is named in that plaintiffs' Complaint, those
25   defendants who are on notice, that, you know, there may be

1    testimony at the deposition about product ID and use of their

2    products.  So more than likely, they're going to attend that

3    deposition.

4          And if there's questions regarding their specific

5    circumstances, there's probably no dispute that they have a

6    right to follow-up questioning about product ID issues and

7    issues specific to themselves.

8          I'm not picking on anybody.  Let's say CVS.  If the

9    plaintiff testified that CVS was their pharmacy, CVS was named

10   in that Complaint, no one can seriously dispute that that

11   attorney has a right to question the witness about CVS-related

12   issues.

13         That seems to be indisputable.

14         MR. SLATER:  I have no dispute on that, Judge.

15         JUDGE SCHNEIDER:  Right.  The harder question would

16   be, what happens if you get to a deposition and the plaintiff

17   says, oh, yeah, I remember that, I also went to Walgreens, and

18   if Walgreens happens to be at that deposition, fine, they ask

19   their questions.  But Walgreens may choose not to be there

20   because they weren't named in the Complaint, and then they

21   subsequently find out they were named.  The harder question

22   then becomes what rights does Walgreens have to then question

23   the witness that they weren't on notice of that they were

24   going to be named.

25         It seems to me that has to be worked out because

 1   Walgreens has to be protected, right?

 2          MR. GOLDBERG:  Correct, Your Honor.  Under those

 3   circumstances, we would probably ask that the witness be

 4   called back for another deposition.

 5          JUDGE SCHNEIDER:  About those specific limited

 6   issues, right?

 7          MR. GOLDBERG:  Right.  Correct.

 8          JUDGE SCHNEIDER:  And just another thought,

 9   Mr. Goldberg, we've all been at depositions and we know how

10   those go, but I hope it's not envisioned that when you go

11   around the table, that each of the, you know, product ID

12   companies, the companies that are so worried about product ID

13   issues, that they follow up on the general subject areas, you

14   know --

15          MR. GOLDBERG:  Correct.

16          JUDGE SCHNEIDER:  -- product, QI.  I hope that's not

17   envisioned, but absolutely a hundred percent they have a right

18   to follow up on product ID issues specific to their client.

19          MR. GOLDBERG:  You're right, Your Honor, and that's

20   -- we do not envision having that kind of duplication and

21   that's why we proposed the language that we have proposed.

22          JUDGE SCHNEIDER:  So would it be appropriate to

23   include a provision that, you know, someone has a right to

24   make an application for good cause shown, to redepose a

25   witness about a subject area, and I would think that if a

1    defendant is not named in the Complaint, they're not on notice

2    that they're going to be named at a deposition, but they are

3    named at a deposition.  It just seems to me that's good cause

4    to question -- to redepose the witness about that limited

5    area, which would mean that not every defendant has to attend

6    every deposition in order to protect their interests.

7         MR. GOLDBERG:  Yes, Your Honor, I do think you're on

8    to something and why don't we talk with plaintiffs about

9    whether there's specific language that addresses it that we

10   can come up with, that addresses that point.

11        JUDGE SCHNEIDER:  Right.  Okay.  And while we're on

12   that subject, I did think there should be a caveat that if

13   there's good cause, you can make an application to redepose a

14   witness about a specific subject area, but shouldn't there

15   also be a caveat, that this doesn't go for either side, it

16   goes for both sides, plaintiffs or defendants, that you have a

17   right to apply for more than the seven hours or the

18   seven-plus-50-percent hours to depose a witness.

19        There may be witnesses that it's expected you're

20   going to take more than seven hours.  I mean, I'm not picking

21   on anybody, I'm not making a ruling.

22        In a few minutes, we're going to talk about the MSP

23   issue and that might be someone that the plaintiffs reasonably

24   believe they can't get done in seven hours.  There may be a

25   defense witness who has an incredible number of documents and

1    they're in a foreign language and maybe one-and-a-half days

2    isn't enough, so shouldn't there be something in the protocol

3    about a good cause showing that making an application to

4    either redepose a witness or to extend the time to take a

5    deposition.

6         If you can't agree.  My experience has been good

7    counsel agree on issues like that, but sometimes there's

8    disputes.

9         MR. SLATER:  Your Honor, it's Adam Slater.  I think

10   we may already have the language in there to that effect.  If

11   not, it makes sense.  I do want to correct one thing, or just

12   make one thing clearer for Your Honor.  This is in the

13   category of, we didn't agree to the protocol, and frankly, the

14   defense knew it, because they put in the 50 percent additional

15   time and that's the amount of extra time we asked for.

16        We had 75 percent and so just to flag that for Your

17   Honor.  I mean, I think we had 50 percent or 75 percent in

18   Benicar, that was just Japanese translators who were sitting

19   in the room with the witnesses.

20        JUDGE SCHNEIDER:  We'll talk about that.  I

21   understand that's a gigantic problem.  I have taken, when I

22   was in practice, translated depositions and realized how

23   incredibly cumbersome and difficult they are.

24        MR. SLATER:  -- but you say we agree to as

25   plaintiffs.  We don't have a problem in concept of what you

```
 1  said.  It makes sense, and we should be able to work these

 2  things out.

 3          JUDGE SCHNEIDER:  Okay.  So then let's go to the

 4  third issue, which is the individual capacity corporate reps.

 5          Again, we'll let you talk about it further.  I only

 6  make this comment.  I'm not ruling.  Whatever you agree to is

 7  fine with me.

 8          My experience, though, has been the opposite of what

 9  I understand you're proposing.  I think you're proposing that

10  the witness be deposed in the corporate capacity first and

11  then deal with the individual issues.

12          I don't know, my experience has been that the

13  individual is deposed first and then the company designates

14  which portion of that testimony, if not all of it, shall be

15  30(b)(6) testimony.  But if you want to do it the other way

16  around, of course, I have no objection to it.  It was just

17  interesting that my experience is a little bit different than

18  yours.

19          MR. GOLDBERG:  Well, Your Honor, this is Seth

20  Goldberg.  I think, I think the main point of this is really

21  that the depositions be conducted on -- either on the same day

22  or consecutive days.

23          Whether you order it individual first, 30(b)(6)

24  second, or 30(b)(6) first, individual second, I suppose that

25  could be decided among counsel before the deposition, but, you
```

1   know, there are some witnesses who are going to be designated

2   for the topics in the plaintiffs' 30(b)(6) notice, and what we

3   don't want to do is have a situation where a witness is

4   deposed on those topics on one day and weeks later is called

5   back to be deposed on their individual -- in their individual

6   capacity.

7          And so what we think makes sense is to start with the

8   30(b)(6) topics, which are more discreet, and in some cases,

9   you know, a witness may only have one or two topics.

10         You finish those topics and then you commence the

11  seven-hour individual testimony, and, Your Honor, if it need

12  be to slip into the next day, you finish the testimony, then

13  you do that.  But what we don't want to do is split these up

14  by weeks and months, especially given the very challenging

15  logistical issues.

16         JUDGE SCHNEIDER:  It sounds to me like that's an

17  issue you're going to work out.

18         I would assume that plaintiff has the same interest

19  as you in doing the depositions efficiently and whatever order

20  you agree to is fine with me, of course.  If there's a

21  dispute, we'll address it.

22         So long as plaintiff is given sufficient notice,

23  which it sounds like they will about who's going to testify

24  about what 30(b)(6) topic.  I don't know, it seems pretty

25  straightforward that you'll be able to work that out.

1          MR. GOLDBERG:  Your Honor, this is particularly

2     important and I think there's been a little bit of confusion

3     here.  We understood that there would need to be additional

4     meet and confer about the addendums, which were only provided

5     to plaintiffs on Friday, but these macro issues have been the

6     subject of back-and-forth meet and confers for more than a

7     month, and these three particular issues did not need to be

8     the subject of additional meet and confer, and on this

9     particular issue, the -- and that's why we proposed the

10    language we did, was so that we didn't have to have further

11    negotiation on this issue, or on any of these three issues.

12          The language seems to cover everything that we've

13    discussed on all three of these issues and I haven't heard any

14    disagreement about that language.

15          But on this particular issue, we do want there to be

16    some clarity that where there is an individual deponent, a

17    witness who's deposed in their individual capacity and that

18    witness is also designated to cover 30(b)(6) topics, that

19    those -- that the depositions in those capacities be conducted

20    on consecutive -- on the same day or on consecutive days to

21    avoid the burdens that would come with having those

22    depositions separated.

23          MR. SLATER:  Your Honor, Adam Slater.  I'm not sure

24    what Mr. Goldberg is concerned about or why he's concerned

25    about what we're doing today.  We told him on the phone when

 1   we had our meet and confer that we agreed that if a witness

 2   was both a fact witness and a 30(b)(6) witness, that the

 3   deposition should happen all at once.

 4        So I'm not sure why he has this concern, because we

 5   specifically agreed, and, in fact, I said to Mr. Goldberg, you

 6   know, in litigations I've been involved in where a witness was

 7   both a fact witness and was designated on important issues,

 8   the line between corporate and personal testimony or

 9   individual testimony is so blurred and interacted that -- I've

10   had depositions where we just took the person as a corporate

11   rep and just did everything under that umbrella because it's

12   just seamless and you just do it all, you know, you just fold

13   everything into one large deposition.  And he said, well,

14   that's an interesting idea, that could make a lot of sense,

15   I'll get back to you.

16        And then we never heard back, because we tried to

17   schedule a follow-up meet and confer to both talk about the

18   prioritization of specific witnesses and the 30(b)(6)

19   witnesses at once with our team and their team, and we were

20   trying to schedule the call for yesterday and defense counsel

21   couldn't do it yesterday, so they told us they would provide

22   other dates to talk, either later this week, presumably later

23   this week, so I just don't want Your Honor to think that we're

24   in some unreasonable place where we're not agreeing to basic

25   things we've already agreed to, and that this meet and confer

1    was done, because it wasn't.  We were literally waiting for

2    them to get back to us with answers to some of our questions

3    and to schedule a further discussion.

4         So I don't think there's a lot of space here.  If

5    their concern is solely that a witness who's both a fact

6    witness and a 30(b)(6) witness will be deposed either, you

7    know, on consecutive days or whatever, or during one time

8    period, we agree, that makes perfect sense.  I won't be

9    surprised if we find out that witnesses on the defense side

10   turn out not to be available on consecutive days and we start

11   hearing from the defense, we can give you a day on Tuesday and

12   then another day next Monday.

13        So we're in agreement on that.

14        JUDGE SCHNEIDER:  Mr. Goldberg, I think I understand

15   your concern, it's legitimate.  I think the way to handle this

16   is to say, the drop-dead date for finalized general deposition

17   protocol, maybe not the addendum, but the general deposition

18   protocol is November 11th.  Any issue not raised is waived and

19   we'll get the deposition, general deposition protocol entered

20   and finalized on November 11.  And we'll see where we are with

21   the addendum, which the Court recognizes raises a lot of

22   sticky issues, but it's a legitimate concern that this is just

23   going on and on and on.

24        So I thought it was going to be today, you know,

25   we'll give the parties two more weeks to talk about this, and

1  whatever issues are not raised by November 11, well, they're

2  waived and we'll just go with what we've got.

3          So I think that takes care of your concern.  All

4  right?

5          MR. GOLDBERG:  Thank you.

6          JUDGE SCHNEIDER:  But the harder issue -- I think

7  we'll get to deposition protocol, it's pretty standard stuff.

8          The harder issue is obviously the addendums.  Do I

9  take it that, Mr. Slater, the parties are still talking about

10 that, right?

11         MR. SLATER:  We have not yet had a chance to confer

12 with the defense.  They sent us the addendums Friday night and

13 as I said, we're scheduling our opportunities to talk, and

14 you're right, there are a lot of issues there in that

15 addendum.

16         JUDGE SCHNEIDER:  So we'll defer that for now and see

17 where we are on November 11 and maybe we'll get lucky and

18 we'll be able to finalize that by November 22nd.

19         I guess just a general question I had is with regard

20 to China and India, do the plaintiffs have to follow either

21 The Hague procedure or the particular procedures, say, the

22 Indian General Central Authority, and if so, does that impact

23 deposition scheduling issues?

24         Mr. Goldberg and counsel for the Indian parties, can

25 you address that?

1      MR. GOLDBERG:  Your Honor, I can address it for the

2  Chinese nationals, and then I'll let counsel, my co-counsel

3  address it for the Indian nationals.

4      And I think we covered this or mentioned this before,

5  but in order to take the deposition of a Chinese national who

6  resides in Mainland China, the plaintiffs have to follow The

7  Hague Convention and Chinese Civil Procedure and obtain a

8  letter of request approved by the Ministry of Justice in

9  China, and absent that, a deposition of a Chinese national who

10  resides in Mainland China cannot be conducted in Mainland

11  China without criminal penalties for those who participate in

12  the deposition.  And that includes video testimony, as well.

13      So somebody who's at ZHP and lives near ZHP and they

14  need to be deposed in this case, unless plaintiffs have gotten

15  permission from the Chinese government to take that

16  deposition, even by video, they can't do it.  And plaintiffs

17  have made no attempt to obtain that letter of request and get

18  that approval, so, you know, we're left with, you know, a

19  situation where we, ZHP, or any other Chinese national could

20  insist that plaintiffs obtain that letter of request and that

21  approval and not be deposed until that happened, and that

22  would be the right of any of -- any Chinese national.

23      As a practical matter, I think it's likely that some

24  ZHP employees and perhaps other Chinese nationals, if they've

25  been noticed or subpoenaed, I think plaintiffs have third --

1    Chinese nationals on their third-party witness list would

2    agree to be deposed in this action, but such agreement would

3    require the Chinese national to actually travel out of China

4    for the deposition, and that's, you know, we've set forth some

5    of those issues or restrictions in our deposition addendum

6    because we want the Court to be well-aware of this unique

7    circumstance.

8            We have suggested that a Chinese national would be

9    deposed in Hong Kong.  Because of all of the countries in the

10   world, Hong Kong has the easiest, is the most permissive with

11   respect to entry of Chinese nationals from Mainland China.

12           So if a witness -- if a Chinese national agrees to be

13   deposed in this case, they would agree to be deposed in Hong

14   Kong, which if it's a ZHP employee would still require ten

15   hours of travel.  And if it's by video, they would be

16   traveling ten hours to be deposed by video.

17           So obviously, you know, to take a voluntary

18   deposition in this case is demonstrating a real commitment by

19   the witness, and absent that, plaintiff can -- they certainly

20   are permitted, they haven't made any attempt and, in fact,

21   have outright refused to make an attempt to obtain a letter of

22   request to depose a witness in China.

23           I'll let my colleague speak about whether a

24   deposition has to be done -- how a deposition would have to be

25   done with respect to India.

```
 1          MR. SLATER:  Your Honor, it's Adam Slater.  Do you
 2   want me to address that at all or wait?  I'll do whatever you
 3   want.
 4          JUDGE SCHNEIDER:  Yeah, why don't you just address
 5   the Chinese dep first.
 6          MR. SLATER:  Okay.  ZHP needs to realize that they
 7   are a defendant in a United States federal litigation, and
 8   they're fully within the jurisdiction of this Court, and I
 9   think the sooner they realize that, the better.
10          For Counsel to say, we haven't started the letter of
11   request process, where they've told us that we would then have
12   to take the depositions -- if we could get into China, under
13   very circumscribed circumstances, with state secrets and
14   police officers standing over our shoulders or whatever other
15   things happen in China, I don't know, it's been presented as
16   this very, very difficult process, and I still don't
17   understand, frankly, what state secrets apply to this case, or
18   how it could, and if they're actually going to make such
19   objections in the depositions, in which case, we probably
20   should litigate that issue so we don't have a lot of
21   disruption in the depositions, but we're not going to China to
22   depose these witnesses.
23          Our position is this, Your Honor, and this is what I
24   was saying before about trying to work cooperatively to
25   identify the best witnesses to be 30(b)(6) witnesses to bring
```

1   to the United States or maybe they're already here, like John

2   Du who lives in the United States, or they could be done in

3   closer countries where there can be more convenience and

4   efficiency.

5          That's the problem, because we're hearing this from

6   the defense where they're essentially threatening us and

7   saying, well, our witnesses who work for a defendant that is

8   under the jurisdiction of this Court and the Federal Rules of

9   Civil Procedure may not agree to be, deposed, and our position

10  on that is, then you're going to be in default of your

11  discovery obligations and we'll ask for a liability judgment,

12  because we're not going to go to China where we can't get in

13  anyway.

14         So what Your Honor just heard crystallizes a level of

15  why we have a level of frustration in dealing with ZHP.  They

16  seem to have this sense of entitlement that they can or can't

17  do what they want when they're before this Court and under the

18  jurisdiction of the Court.

19         We've done research.  There's a lot of law that says

20  that we should be able to compel their corporate

21  representatives to be deposed in the District of New Jersey.

22  Now, if there are issues with certain witnesses not being able

23  to get here from China, then they can designate other people,

24  or find a way to accommodate this.

25         We are certainly willing to work with them on the

1    logistics if the witnesses have to be deposed by video from

2    another part of the world.

3         But, for example, I don't think it's feasible to

4    start those depositions at 9:00 p.m. and understand that we

5    have to complete them by six -- five or six o'clock in the

6    morning.

7         I mean, it sounds good to work with each other in the

8    time zones, but we also have to address practical reality.

9         Again, this -- what you just heard from the defense

10   for ZHP is singular to ZHP at this point.  We haven't heard

11   that kind of push-back from other defendants from any other

12   countries where they've been so -- I'm going to use the word

13   "obstructive" in the sense of trying to work through these

14   issues.

15        Now, we're hopeful that the meet-and-confer process

16   which is now ongoing with the 30(b)(6) individual witnesses

17   will bear fruit, but you've just heard what we're facing in

18   these calls.  So that's -- that's in the short version, our

19   position on where we are and maybe pre-stages some of the

20   issues the Court may have to rule on, and we're going to ask

21   for orders that are going to ultimately, if this is their

22   position, going to compel witnesses to go where the Court

23   tells them to go because they're under the jurisdiction of

24   this Court.  They sold these products in the United States,

25   taking advantage of United States laws to make a lot of money,

 1    and now they're being called before the Court and need to

 2    cooperate.

 3           JUDGE SCHNEIDER:  So, Mr. Slater, does it look like

 4    the Court is going to have to decide the issue, of course,

 5    after submission of briefs, as to where the depositions of the

 6    Chinese nationals are going to be taken?

 7           MR. SLATER:  If the answer is, if their position is

 8    really that we have to find a way to depose these people in

 9    China, then there's -- then obviously, that's unworkable and

10    isn't going to happen, and there would be an issue to decide.

11           If that's just something they're throwing up for a

12    negotiating position, then it's probably not an issue at this

13    point, but we have to then determine if we can work out an

14    outside China location for some of the witnesses.

15           So I don't know.  It's going to ultimately depend on

16    where they draw the line and how cooperative they are on

17    working with us to name corporate representatives who can

18    cover as much of the key testimony as possible in an efficient

19    and a convenient location as possible -- yeah, if they can do

20    that, then I don't see why there should be any reason for the

21    Court to be involved in that, but, that's under the control of

22    the defense in terms of what line they want to draw in the

23    sand.

24           JUDGE SCHNEIDER:  Question for you, though, question:

25    I'm not sure we know the answer now, but hypothetically, this

1   is purely hypothetically, suppose these depositions because of

2   the COVID situation have to be taken by video, does it make a

3   difference if the witness is in Hong Kong or Los Angeles, if

4   it's only --

5          MR. SLATER:  I apologize, Judge, I didn't -- the

6   answer to the question is, the only -- the only thing that

7   matters if that's the case, and we expect all the depositions

8   to be taken by video.  The only issue is going to be the time

9   zone and the scheduling and whether or not these depositions

10  happen in seven, or eight, or nine-hour chunks, or we break

11  them up, because people cannot stay up until five in the

12  morning taking depositions.

13         JUDGE SCHNEIDER:  We'll deal with that issue.  I

14  think that's a legitimate issue, but we can deal with that.

15  But it almost seems like if there's an acknowledgement that

16  these depositions have to be -- are going to be taken by video

17  and it's illegal to take a video deposition in China, and if,

18  capital I, capital F, the witnesses are willing to go to Hong

19  Kong to have a video deposition, there doesn't seem to be a

20  dispute then about that, ultimately we'll have to address the

21  length of the deposition, the time it's going to start and

22  end, so that we may be talking about a moot issue, because if

23  it's video, then it doesn't matter where the witness is,

24  right?

25         MR. SLATER:  I think that's generally correct.  I

1   think there's still the caveat of -- we think that with the

2   corporate representative depositions, that there's authority

3   to have those happen in the District of New Jersey.

4          JUDGE SCHNEIDER:  Okay.

5          MR. SLATER:  And we're hoping that -- because the

6   defense wants to work with us on certain things, on how many

7   witnesses we depose, we're hopeful that that's going to be

8   something that they will work with us on.

9          THE COURT:  Okay.  Fair enough, fair enough.  So I

10  think what we're -- ultimately, where we are is that not

11  unexpectedly, this is an issue that still has to be hashed out

12  because of the acknowledged logistical problems that come with

13  the Chinese witnesses.

14         So we'll let you and Mr. Goldberg talk it out.

15         Let's talk about India.  I'm not sure who's going to

16  talk about the Indian depositions.

17         MR. TRISCHLER:  Your Honor, this is Clem Trischler.

18  I don't want to step on anyone's toes, so if there's anyone

19  else on our side that wants to speak about it, I'm certainly

20  happy to defer, and if the Court wants to get into some of the

21  specifics of the interplay of the Federal Rules of Civil

22  Procedure and The Hague Convention as it applies to India, my

23  colleague, Frank Stooli is on the line and I may defer to

24  Frank for some of the -- any specific questions that the Court

25  may have, but just to address a few things, if I may.

1        I think, as it relates to India, you know, I think

2   some of this discussion may be a bit premature because in

3   fairness, and as Mr. Slater said, we could reasonably submit

4   in the addendum to them.  We haven't really had a chance to

5   hash it out, so I don't think anyone can really say how much

6   is in dispute, if any, and what we can work out and what we

7   cannot work out.

8        So I'm optimistic that many of these issues will be

9   capable of being resolved.

10       I think that India does follow, but I can't tell you,

11  though, is I think India does follow The Hague Evidence

12  Convention.  And that in the case of individuals who are

13  citizens of the nation of India, who are not 30(b)(6)

14  representatives, who are not parties to this litigation but

15  individual employees who reside in India, international law

16  would require that there be -- that those requirements be

17  followed and that would involve similar to what Mr. Goldberg

18  issued, a request being sent to an authority in India and

19  permission to take the deposition.

20       Granted, now, I think one of the things that we

21  consistently talked about, and I don't -- you know, we're not

22  raising international law as a hurdle or an obstacle or an

23  impediment to discovery, it's just a reality.

24       But I think what we've talked about when we've had

25  discussions with the plaintiffs' side is that we do think the

1    30(b)(6) depositions should come first as it relates to

2    manufacturers based in India.

3         We are not taking the position that 30(b)(6)

4    depositions cannot be taken.  You know, frankly, in the case

5    of my client, I'm hoping that many of the 30(b)(6) designees

6    that we made will be -- designations that we made will be U.S.

7    based, so that we can try and do those depositions and that

8    sort of discovery first.

9         But once we get past the 30(b)(6) stage, if plaintiff

10   believes there are Indian nationals that they still want to

11   dispose, we are going to have to face the issue of foreign law

12   and the reality that those are citizens of another nation,

13   they're not parties, they're not subject to the jurisdiction

14   of this Court, and that those depositions have to be taken

15   either by agreement, and if not by agreement, then pursuant to

16   the foreign laws.

17        JUDGE SCHNEIDER:  Well, here's the question -- you

18   know, to be more practical, I want to make sure I understand

19   what you're saying.

20        Now, when I read Mr. Goldberg's letter and I could be

21   wrong, I read Mr. Goldberg's letter to indicate that, you

22   know, if these witnesses -- if their witness -- if the Chinese

23   witness -- whoever is typing, can you put your phone on mute,

24   please?  That would be very helpful.

25        So with regard to ZHP, I understood the situation to

1    be if the witnesses go to Hong Kong, there may be issues about

2    having someone who has to fit in, but we don't have to worry

3    about The Hague or any other issues.

4         But what I read, the portion of the letter regarding

5    India, I got the impression that the Indian entities are going

6    to insist upon compliance with some provisions required by The

7    Hague Evidence Convention or this Indian Central Authority.

8         Is that the case, and is that the same case if,

9    suppose, the Indian witness goes to another country, can we

10   avoid those complications and inevitable delay.

11        MR. TRISCHLER:  As to the last question first, Your

12   Honor, if the witness were to appear voluntarily in, you know,

13   in another country, then certainly the deposition can be

14   taken.  That's, you know, that's simply discovery by agreement

15   at that point.  And there are no foreign laws that are being

16   implicated.

17        What -- I think what we were -- what we were

18   attempting to do in the draft of the addendum, on behalf of

19   all of the Indian manufacturers, was simply to preserve, to

20   advise the Court and to preserve the objection to serial

21   requests for individuals, depositions of foreign nationals

22   that we don't think is proper.

23        You know, on behalf of my client, I'm not drawing any

24   line in the sand at this point saying that Mylan

25   Pharmaceuticals is not going to, you know, is unwilling to

1    produce any Indian witnesses for deposition in, you know,

2    wherever the witness appears.

3              I'm certainly willing to work with the plaintiff on

4    that.

5              All I'm saying is that at some point in time, there

6    may be a point where we need to say, you know, we can't do it,

7    we can't do any more.  I think -- that's why I said, I started

8    my comments by saying I think some of this is premature,

9    because I'd like to have some time to continue to talk to the

10   plaintiff about how we can do this and what we can work

11   through.

12             JUDGE SCHNEIDER:  Okay.

13             MR. TRISCHLER:  But these issues are there and they

14   are real.

15             JUDGE SCHNEIDER:  Okay.  I think that's fair enough

16   and you should have an opportunity --

17             MS. LOCKARD:  Your Honor, if I may, I want to make

18   sure I preserve this as well.  Victoria Lockard, the Teva

19   defendants.

20             We, on behalf of Teva, we've had an initial meet and

21   confer with the plaintiff on this and we do have a number of

22   witnesses who are based in Israel and Europe, but I think Mr.

23   Trischler has, you know, stated the position that Teva is also

24   in, which is that, you know, we're continuing to evaluate

25   this.  We have a number of witnesses in the U.S.  We can start

1   there, and, you know, we don't intend to, you know, blockade

2   discovery either, but we do think that there are going to be

3   some basic procedural requirements that it should not, should

4   not be too difficult to accomplish.

5        But I wanted to make sure I was heard on that for

6   Teva.

7        JUDGE SCHNEIDER:  Fair enough.  But I think the

8   bottom line is that obviously, discussions have to further

9   advance between the parties, one, about who's going to be

10  deposed and where, again, if we're going to do this -- if

11  you're going to do the depositions by video, and it's illegal

12  -- or it's not illegal in India, but if you do a deposition in

13  India, you have to go through the gymnastics of The Hague

14  Convention.

15       Hopefully, the witness and the parties will agree,

16  you know, the witness could fly to another country, take the

17  video deposition there, and you could work it out.  But again,

18  the bottom line is, it's just a subject of further discussion

19  between the plaintiffs and defendants about the mechanics and

20  logistics of getting this done.

21       It doesn't sound insurmountable, but unquestionably,

22  incredibly difficult.  So hopefully, the parties will continue

23  to talk.

24       We'll get the general deposition protocol finalized

25  November 11, see where we are with the addendums on

1    November 11, and maybe on that date, we can set a final date

2    for the submission of the addendums, with the recognition that

3    they create more complications and difficulties than a general

4    deposition protocol.

5            But where there's a will, there's a way, and

6    especially since the depositions are likely to be taken by

7    video, there should be a way to get this done.

8            Of course, the issues about when the depositions are

9    going to start, exhibits, the interpreters, how long the

10   depositions are, they have to be worked out.  But again, like

11   I said, where there's a will, there's a way.

12           So we'll -- you know, I appreciate the input of the

13   defendants, it's very helpful to get this discussion started.

14   And going back to my original point, Mr. Slater, whoever is

15   going to take the lead for these depositions for your group, I

16   don't know if there's going to be a person or a group who does

17   Teva, a person in your group who's going to do Mylan, they

18   ought to be the ones who talk directly to these parties to try

19   and work out these issues.

20           Okay.  So I think we sort of finished the discussion

21   of the deposition protocol.  We know what we're going to do

22   with that.  We have agreed to put off the Rule 34 document

23   requests with the final date of November 11th to get those

24   resolved.

25           The next issue I see on the agenda is the

1    coordination of the state cases.

2        I mean, could there be -- there obviously can't be

3    any disagreement that there should be as much coordination as

4    possible between the state and federal cases.  Anything the

5    Court can do to help in that regard, we'll do.  It just makes

6    perfect sense.

7        Any ideas about what we could or should be doing, and

8    is the thing to do to talk to the plaintiffs' attorneys in

9    those cases and to get them on board?  Because we don't have

10   any jurisdiction over the state cases.

11       MR. SLATER:  Your Honor, Adam Slater.  Yes, we would

12   like to.  We've reached out without tremendous success on one

13   of the litigations, but what we need, and I expressed this to

14   Mr. Goldberg last week, is we need them to get us fully up to

15   date on what's happening in these litigations.

16       We just found out that there were motions to dismiss

17   filed in some other cases.

18       A VOICE:  Nicole speaking.  Hello?

19       MR. SLATER:  It's Adam Slater.

20       JUDGE SCHNEIDER:  Who is this talking?  Well, that

21   might have been someone who is talking on another phone call,

22   Mr. Slater, so just continue.

23       MR. SLATER:  Got it.

24       It would be -- we need the defense to immediately,

25   when they find out about another case somewhere else to notify

 1    us, let us know the status.  I mean, I just looked at their

 2    chart and saw that motions to dismiss have been filed in some

 3    of those cases.  I don't know what the issues are that they've

 4    moved on.  I don't know, you know, if this is something where

 5    you're going to suddenly start receiving decisions from

 6    another Court where we weren't even on notice to even talk to

 7    the plaintiffs and perhaps find out if we can coordinate with

 8    their briefing or find out what's happening, et cetera, et

 9    cetera.

10          So we need to be on notice of all the cases and who

11    the lawyers are so we can reach out to them and then, of

12    course, we will and do whatever we can to try to work towards

13    coordination, you know, understanding we don't have complete

14    control either, if they're not part of -- certainly not part

15    of our team.

16          But we're at a little bit of a loss on, I think, some

17    of these cases because we don't know about them.

18          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

19          JUDGE SCHNEIDER:  Yes, go ahead.

20          MR. GOLDBERG:  This is Seth Goldberg.  I was going to

21    say, I think we -- there are a number of different state court

22    cases obviously, we've put them in our submission and I think

23    we obviously have an interest in trying to have these

24    coordinated.  We certainly will do our best to alert

25    plaintiffs' counsel to them.  In the past, we tried to do

1    that.  It's not -- you know, plaintiffs, I think have an

2    obligation if they're wanting to get notice from us to then do

3    what they can in a responsive way to try to get these things

4    resolved, and get these things coordinated.

5           So, you know, we certainly want to do that.  The New

6    Jersey cases have all been held in abeyance.  There are some

7    other jurisdictions out there that, you know, we need to try

8    to get some coordination on, so that those cases, if they get

9    beyond motions to dismiss, don't get ahead of the MDL.

10          JUDGE SCHNEIDER:  Well, I think Mr. Slater's idea is

11   a good one, to make sure that their group is updated on the

12   status of those cases, and I don't know, you have more

13   experience doing this than we do, but I would think that if

14   the plaintiff group in this case talks to the plaintiffs in

15   those cases, it seems logical that something should be worked

16   out about coordination.  It just makes absolutely zero sense

17   for those cases not to be coordinated somehow with this MDL.

18          So hopefully, that will be worked out, and whatever

19   this Court can do to foster coordination, just let us know.

20   We can certainly reach out to the New Jersey judges, that's

21   easy, and if we have to, we'll reach out to the state court

22   judges in the other states as well.

23          But if you have any ideas about what we can do to

24   help foster coordination, we are all for it.

25          But in the first instance, I think Mr. Slater's

1  plaintiffs' group ought to talk to the plaintiffs in these

2  state cases and then if that doesn't work out and you think it

3  would be helpful if myself or Judge Kugler contacts the judge

4  in those other state cases, by golly we'll do it.

5           MR. GOLDBERG:  Thank you, Judge.

6           JUDGE SCHNEIDER:  I'm looking through the agenda.  I

7  don't see any issues, any other issues for this call.  You

8  tell me.  Are there any other issues that we need to talk

9  about?

10          Let me just summarize my notes about where we are,

11 okay?

12          More than likely, all depositions are probably going

13 to start in January.  I'm not holding you to that, defendants,

14 but it sounds like it's likely.  The Rule 40 -- the Rule 34

15 document request is deferred until November 11.  I anticipate

16 there's going to be issues with MSP.

17          My general reaction to that is certainly, plaintiffs

18 -- I'm sorry, defendants are entitled to take class

19 certification discovery.  I don't know if it's true or not,

20 but defendants have represented in their submission that MSP

21 has only produced information for three of its 94 assignors.

22          You know, my gut reaction without ruling is that's

23 insufficient.  On the other hand, it seems impractical that

24 defendants are going to get information on all 94.

25          I don't know the issues, we'll have to brief it, but

1   it just seems logical if you can break the assignors into

2   different categories and maybe you can agree that defendant

3   can get an appropriate sampling from each category, that would

4   be sufficient for class certification purposes.  But I assume

5   that's an issue you're going to have to discuss and work out.

6           But there's no question that, you know, defendants

7   are entitled to defend class cert.  We've said it time and

8   time again.  The plaintiffs have to have skin in the game, and

9   if it means they have to dig through their files to get

10  information, so be it.  It's a big case and defendants have

11  the right to defend their interests.  That's my general

12  impression on the MSP issue, but I'm sure you're going to

13  discuss that.

14          We set a final date, a drop-dead date of November 11

15  to finalize the general deposition protocol.  All issues not

16  raised by that date are going to be waived, and then we'll

17  revisit the status of the addendums for the foreign companies,

18  but I think based on this discussion and the fact that there

19  seems to be an acknowledgement that we're going to do the

20  deposition -- you're going to do the depositions by video,

21  that certainly helps and goes a long way towards making it a

22  little bit easier to get these depositions done.

23          So that's my summary of what we discussed today.

24          Judge Kugler, as soon as we hang up, or I hang up,

25  I'm going to alert him to what we talked and he's going to

1    join the call, but I wanted to -- oh, on the coordination of

2    state cases, defendants are going to share with plaintiff the

3    information they have and you'll let this Court know if

4    there's anything we can do to help foster coordination, which

5    -- no one can reasonably agree of like mind that the cases

6    shouldn't be coordinated, they absolutely should be.

7            So are there any other issues to address on this

8    call, Counsel, before we take a short break, and I'll get

9    Judge Kugler on the line.

10           MR. SLATER:  Your Honor, nothing for the plaintiffs.

11   Do you want us to hold on and wait or --

12           JUDGE SCHNEIDER:  Yeah, I actually think that would

13   be best.

14           I don't think it's going to be long.  He's in the

15   office.  I'm going to give him a call now.  If you could hold

16   on a few minutes and just wait, I'll go get him.

17           Mr. Goldberg, anything else for the defendants?

18           MR. GOLDBERG:  Nothing for defendants, Your Honor.

19           JUDGE SCHNEIDER:  Okay.  And, oh, one thing I didn't

20   mention is I know we have a briefing schedule for the issues

21   that Teva raised.  I'm going to do my darndest to decide that

22   issue on November 11.  We'll see what the briefs say.

23           The heat's off a little bit because we stayed the

24   review of the, quote unquote, nonresponsive documents so the

25   heat is off a little bit, so, if we don't get a decision on

1    November 11, you'll get a decision very, very close to that,

2    and I think that issue is in hand.

3            MS. LOCKARD:  Thanks, Judge.

4            JUDGE SCHNEIDER:  Okay.  I'm sorry, go ahead.

5            MS. SMITH:  Excuse me, Judge, this is Loretta.  Judge

6    Kugler is in -- at the FSK so I'm told this afternoon, so let

7    me e-mail him to get on the line.

8            JUDGE SCHNEIDER:  I'm sorry, Loretta, what did you

9    say, he's where?

10           MS. SMITH:  He's at the court in Washington.

11           JUDGE SCHNEIDER:  No, he's not.  I'll take care of

12   it, Loretta.

13           MS. SMITH okay.

14           JUDGE SCHNEIDER:  His schedule changed.  He's here

15   today.

16           MS. SMITH:  Okay.  Thanks, Judge.

17           JUDGE SCHNEIDER:  Just hold on, everybody, a few

18   minutes, we'll be back.  Just hold on.

19           (Pause.)

20           JUDGE SCHNEIDER:  I just spoke to Judge Kugler and he

21   should be joining the line at any moment.

22           JUDGE KUGLER:  Good morning, it's Judge Kugler.  How

23   is everybody doing?

24           MR. SLATER:  Well, Your Honor, how are you.

25           MS. LOCKARD:  Good morning.

```
 1          JUDGE KUGLER:  I am well, thank you.  Is the court

 2   reporter on?  Karen, are you on?

 3          THE COURT REPORTER:  Yes, Judge, I'm here.

 4          JUDGE KUGLER:  As I understand it, there's not a

 5   whole lot you need me to do today.  We do have this issue on

 6   the orders to show cause.

 7          Issue 1.  There are a number of people that defense

 8   counsel say still haven't sufficiently responded, but in the

 9   meantime, the Edwin Lewis case has been dismissed.  We'll be

10   dismissing Joseph Gioia, G-I-O-I-A; Karen Meade, M-E-A-D-E;

11   and Paulette Bray, B-R-A-Y; and that leaves six.

12          Is there anybody else that needs to be dismissed or

13   are we going to move to dismiss on these six?

14          MR. PAREKH:  Good morning, Your Honor, this is Behram

15   Parekh.  We submitted and defendants submitted as to Karen

16   Meade, that she should not be on the OSC list the last time

17   and she should not be dismissed this time.

18          JUDGE KUGLER:  Well, it's in the letter I got from

19   Mr. Goldberg.  She's on the list of things that you're no

20   longer seeking a dismissal of, correct?

21          MR. HARKINS:  Your Honor, this is Steven Harkins from

22   Greenberg Traurig for the Teva defendants and the joint

23   defense group.  That's correct with respect to Ms. Meade.  As

24   we indicated in our letter, we are no longer seeking an order

25   to show cause as to that case, and the same goes for the Gioia
```

```
 1   and Bray cases, as you stated.

 2          JUDGE KUGLER:  Okay.  That leaves six more that are

 3   still being carried.  Judy Griffit, G-R-I-F-F-I-T; Susan

 4   Mefford, M-E-F-F-O-R-D; Margaret Gehefer, G-E-H-E-F-E-R;

 5   Virginia Bowden, B-O-W-D-E-N; Linda Frain, F-R-A-I-N; and

 6   Linda Lewis, L-E-W-I-S.

 7          Any objections to dismissal of those six?

 8          MR. HARKINS:  No.  Once again, this is Steve Harkins

 9   for the defense.  With respect to these cases, we have several

10   updates since our position statement was filed on Monday.

11          The Judy Griffit and Susan Mefford cases have been

12   dismissed by stipulation, so we no longer need to request

13   dismissal as to those.

14          The parties have also had further discussions with

15   regard to the Linda Lewis case, and we can remove that case

16   from the request to show cause at this time.

17          JUDGE KUGLER:  Okay.  Linda Lewis, that order to show

18   cause will be dismissed.  Judy Griffit, you're no longer

19   seeking dismissal of that, because that's been dismissed,

20   correct?

21          MR. HARKINS:  Yes, Your Honor, that's correct.

22          JUDGE KUGLER:  And what was the other one that

23   there's a dismissal filed?

24          MR. HARKINS:  Susan Mefford, M-E-F-F-O-R-D.

25          JUDGE KUGLER:  Okay.  All right.  The others, then
```

1    that would be Margaret Gehefer, Virginia Bowden and Linda

2    Frain will be dismissed.  All right.

3          Now, there's also a number of second listings that

4    you seek to shift to an order to show cause.  Any updates on

5    those?

6          MR. HARKINS:  Your Honor, we've received no

7    additional updates with respect to the cases, the eight cases

8    listed for the second listing.  So at this time, we are

9    requesting orders to show cause returnable at the November

10   case management conference as to all eight of these cases.

11         JUDGE KUGLER:  All right.  These will be Dorothy

12   Battle, B-A-T-T-L-E; Donald Stewart, S-T-E-W-A-R-T; Louis

13   Fisher, F-I-S-H-E-R; Louis Weiner, W-E-I-N-E-R; Theodore

14   Keller, K-E-L-L-E-R; Alcuf, A-L-C-U-F, Gunter, G-U-N-T-E-R;

15   James Huey, H-U-E-Y; and Paulette Bray, B-R-A-Y.  Orders to

16   show cause will issue as to those returnable at the November

17   conference as to why they shouldn't be dismissed.

18         And then there's a -- starting at Page 25 of the

19   defense letter, there are a list of -- let me get to the end

20   of this -- 22 names that you seek for second listing; is that

21   correct?

22         MR. HARKINS:  Your Honor, the cases that are listed

23   on the remainder of the defendants' position statement are

24   being listed for the first time, so we are not requesting

25   orders to show cause as to any of them.  If there's anything

1    that plaintiffs' counsel would like to update us on, we are

2    happy to hear that, but otherwise, we think we can continue to

3    meet and confer with plaintiff's counsel ahead of next month's

4    case management conference.

5         MS. GOLDENBERG:  Sorry, Your Honor, this is Marlene

6    Goldenberg for the plaintiffs.  We had a lengthy meet and

7    confer last weekend.  I don't believe that there are any

8    updates beyond what has come in the late evening hours of this

9    week, that the defendants are already aware of.  I just wanted

10   to note for the Court that a number of these deficiencies

11   likely will be cured by the next conference as a lot of these

12   plaintiffs' counsel are just waiting for records to come in

13   from their clients.

14        JUDGE KUGLER:  Okay.  They will be carried, then,

15   until the next conference and you can advise us at the next

16   conference which, if any of these, need to move to an order to

17   show cause.

18        Now, an issue was raised about all the other pending

19   litigation, federal, state.  Is there anything that this Court

20   needs to do about any of that?

21        MR. GOLDBERG:  Your Honor, this is Seth Goldberg for

22   the defendants.  Not at this time.  We'll confer with

23   plaintiffs and, hopefully, plaintiffs will be able to make

24   some progress with the plaintiffs' counsel for those cases,

25   and if there's a way the Court can help, we'll certainly let

```
 1    you know.

 2            JUDGE KUGLER:  Okay.  And then, Mr. Goldberg, at the

 3    end of your letter, you asked about, you've requested oral

 4    argument on the pending motions to dismiss, correct?

 5            MR. GOLDBERG:  Correct, Your Honor.

 6            JUDGE KUGLER:  I'm not in a position today to tell

 7    you whether we're going to have oral argument or not on those

 8    cases.  I generally have it only if I have questions, and I

 9    haven't had enough time to really get into your motions to

10    know whether I had questions, but we will be advising you soon

11    if there will be oral argument.

12            The impediment that we have about oral argument in

13    the courthouse is, New Jersey now has 41 states on its

14    quarantine list, so if you're coming from out of state to New

15    Jersey, you might be facing that problem.  So I can't ask

16    anybody to come from out of state into New Jersey, they would

17    be facing that issue.

18            We're also severely limited in courtroom

19    availability.  We're not really doing any civil matters.

20    We've partially reopened for criminal matters, and even then,

21    the -- there are severe restrictions on the number of people

22    who can be in the courtroom and it's about 12 or 14 people is

23    all we can fit in a courtroom, because of social distancing

24    requirements.

25            But I will advise you in the not too distant future
```

1  as to whether and when we would have oral argument on any of

2  the pending motions.

3          All right.  Anything else that I need to decide today

4  from either side?

5          MR. SLATER:  Nothing from plaintiffs, Your Honor.

6          JUDGE KUGLER:  Okay.  How about defense counsel?

7  Anything else you need -- you want to talk about?  I know you

8  had a long and fruitful discussion with Judge Schneider today.

9          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

10 -- we don't have anything for Your Honor to decide.  I know

11 that at the end of the month, we're going to be talking with

12 Your Honor about the scheduling of depositions of plaintiffs

13 in personal injury cases, and is scheduled for general

14 causation.

15         I just wanted, before we got off, to see if any of my

16 defense colleagues wanted to discuss that with Your Honor.

17         MS. LOCKARD:  Your Honor, it's Victoria Lockard for

18 the Teva defendants.  I just -- just to update you on where

19 that stands, we do intend to submit to Your Honor a proposed

20 schedule.  That would incorporate those elements for the issue

21 of causation as well as personal injury plaintiff depositions,

22 and I believe at the last conference, Your Honor indicated you

23 intended to enter such a schedule in November.

24         So our intent is to send the proposal over to

25 plaintiffs this week and to do our best to meet and confer on

 1   it, and hope to be in a position to submit something that is,

 2   if not fully agreed, then close to being agreed before the

 3   next conference.

 4          JUDGE KUGLER:  That's great.  I look forward to

 5   seeing what you propose and we'll discuss it at the November

 6   conference, okay?

 7          MS. LOCKARD:  Excellent.  Thank you, Judge.

 8          JUDGE KUGLER:  Anything else from anybody, plaintiffs

 9   or defense?

10          MR. GOLDBERG:  Nothing from defendants, Your Honor.

11          JUDGE KUGLER:  All right.  I'd like to speak with

12   Mr. Slater and Mr. Goldberg privately.

13          Is there -- is there a call-in number we can use for

14   just us?

15          MR. SLATER:  Your Honor, this is Seth Goldberg.  I

16   can send an e-mail with a number.

17          JUDGE KUGLER:  Okay.  That's great.

18          MR. SLATER:  I'll send that to you and Mr. Goldberg.

19          (11:55 a.m.)

20                 ------------------

21          I certify that the foregoing is a correct transcript

22   from the record of proceedings in the above-entitled matter.

23   */S/ Karen Friedlander, CRR, RMR*
     *Court Reporter/Transcriber_____*

24

25   *October 30, 2020*
     *Date*

**0**

**07068** [1] - 1:13

**1**

**1** [1] - 58:7
**1000** [1] - 2:20
**103** [1] - 1:12
**10:00** [1] - 1:7
**10:02** [1] - 3:2
**11** [12] - 18:1, 18:7, 18:14, 35:20, 36:1, 36:17, 49:25, 50:1, 54:15, 55:14, 56:22, 57:1
**11:55** [1] - 64:19
**11th** [5] - 14:18, 15:9, 15:22, 35:18, 50:23
**12** [1] - 62:22
**14** [1] - 62:22
**15** [1] - 15:17
**15219** [1] - 2:18
**15th** [1] - 7:25
**16** [1] - 25:11
**17th** [1] - 2:3
**1835** [1] - 1:15
**18th** [2] - 8:1, 8:2
**19103** [2] - 1:16, 2:4
**19th** [1] - 8:3
**1:19-md-02875-RBK-JS** [1] - 1:4

**2**

**2** [2] - 19:11
**20** [1] - 8:23
**2020** [2] - 1:6, 3:1
**2021** [1] - 7:19
**2029** [1] - 2:11
**22** [1] - 60:20
**22nd** [2] - 14:4, 36:18
**25** [1] - 60:18
**2500** [1] - 2:7
**2525** [1] - 2:20
**28** [1] - 3:1
**2800** [1] - 2:14
**29** [1] - 1:6
**2900** [1] - 1:15

**3**

**30** [1] - 2:3
**30(b)(6** [18] - 12:14, 31:15, 31:23, 31:24, 32:2, 32:8, 32:24, 33:18, 34:2, 34:18, 35:6, 39:25, 41:16, 45:13, 46:1, 46:3, 46:5, 46:9

**300** [1] - 2:11
**30305** [1] - 2:7
**33134** [1] - 2:21
**3333** [1] - 2:7
**34** [4] - 14:13, 14:23, 50:22, 54:14
**38th** [1] - 2:17

**4**

**40** [1] - 54:14
**41** [1] - 62:13
**45202** [1] - 2:15

**5**

**50** [2] - 30:14, 30:17
**57** [1] - 1:9

**6**

**600** [1] - 2:14

**7**

**701** [1] - 1:18
**70130** [1] - 1:19
**75** [2] - 30:16, 30:17
**756-0160** [1] - 1:23

**8**

**856** [1] - 1:23

**9**

**90067-2904** [1] - 2:11
**94** [2] - 54:21, 54:24
**9:00** [1] - 41:4

**A**

**a.m** [3] - 1:7, 3:2, 64:19
**abeyance** [1] - 53:6
**able** [10] - 9:8, 15:21, 23:10, 26:20, 31:1, 32:25, 36:18, 40:20, 40:22, 61:23
**absent** [2] - 37:9, 38:19
**absolutely** [4] - 9:24, 28:17, 53:16, 56:6
**accept** [1] - 6:18
**acceptable** [1] - 15:16
**accommodate** [1] - 40:24
**accomplish** [2] - 13:1, 49:4
**accomplished** [1] - 12:1

**accordingly** [1] - 24:15
**account** [1] - 11:23
**acknowledged** [1] - 44:12
**acknowledgement** [2] - 43:15, 55:19
**Actavis** [2] - 2:8
**ACTION** [1] - 1:3
**action** [7] - 19:3, 23:23, 23:24, 23:25, 24:20, 25:1, 38:2
**actions** [1] - 19:4
**actual** [1] - 21:21
**ADAM** [1] - 1:12
**Adam** [12] - 3:16, 6:9, 8:18, 9:19, 11:4, 16:16, 23:18, 30:9, 33:23, 39:1, 51:11, 51:19
**add** [3] - 8:20, 19:1, 19:10
**addendum** [6] - 35:17, 35:21, 36:15, 38:5, 45:4, 47:18
**addendums** [10] - 18:3, 18:9, 18:19, 18:20, 33:4, 36:8, 36:12, 49:25, 50:2, 55:17
**additional** [11] - 7:15, 10:13, 15:7, 17:25, 18:7, 18:12, 24:16, 30:14, 33:3, 33:8, 60:7
**address** [18] - 5:5, 14:2, 14:18, 17:18, 18:1, 18:13, 22:7, 23:1, 32:21, 36:25, 37:1, 37:3, 39:2, 39:4, 41:8, 43:20, 44:25, 56:7
**addressed** [2] - 8:19, 21:8
**addresses** [3] - 21:9, 29:9, 29:10
**addressing** [1] - 10:17
**adequate** [1] - 20:14
**advance** [2] - 11:6, 49:9
**advantage** [1] - 41:25
**advise** [4] - 8:15, 47:20, 61:15, 62:25
**advising** [1] - 62:10
**affects** [1] - 8:4
**afternoon** [2] - 15:17, 57:6
**agenda** [3] - 4:23, 50:25, 54:6
**ago** [2] - 13:21, 14:1

**agree** [22] - 5:19, 7:21, 9:10, 9:11, 9:14, 19:2, 19:24, 20:22, 21:18, 30:6, 30:7, 30:13, 30:24, 31:6, 32:20, 35:8, 38:2, 38:13, 40:9, 49:15, 55:2, 56:5
**agreeable** [1] - 15:6
**agreed** [11] - 14:25, 17:4, 18:5, 20:12, 23:9, 34:1, 34:5, 34:25, 50:22, 64:2
**agreeing** [1] - 34:24
**agreement** [9] - 12:19, 15:21, 17:12, 21:10, 35:13, 38:2, 46:15, 47:14
**agrees** [1] - 38:12
**ahead** [8] - 18:11, 21:23, 21:25, 25:18, 52:19, 53:9, 57:4, 61:3
**Aid** [1] - 4:18
**aided** [1] - 1:25
**Alcuf** [1] - 60:14
**ALCUF** [1] - 60:14
**alert** [2] - 52:24, 55:25
**ALFANO** [1] - 2:16
**ALL** [1] - 3:1
**allocate** [4] - 24:8, 24:14, 24:17, 25:21
**allow** [1] - 24:15
**almost** [2] - 16:12, 43:15
**alone** [1] - 3:22
**alternative** [1] - 6:22
**AmerisourceBergen** [2] - 2:15, 4:14
**amount** [1] - 30:15
**ANDRÉS** [1] - 2:20
**Andrés** [1] - 3:25
**Angeles** [2] - 2:11, 43:3
**answer** [6] - 19:25, 20:16, 20:20, 42:7, 42:25, 43:6
**answers** [2] - 20:8, 35:2
**anticipate** [1] - 54:15
**anticipating** [1] - 10:17
**anyway** [4] - 8:17, 21:5, 22:19, 40:13
**apologize** [1] - 43:5
**appear** [3] - 12:15, 25:11, 47:12
**appearance** [1] - 3:19
**appearances** [1] - 3:20

**appearing** [1] - 25:3
**applicable** [1] - 22:23
**application** [3] - 28:24, 29:13, 30:3
**applies** [1] - 44:22
**apply** [3] - 19:24, 29:17, 39:17
**appreciate** [2] - 7:10, 50:12
**approach** [2] - 24:8, 24:17
**appropriate** [6] - 14:24, 22:4, 22:7, 28:22, 55:3
**approval** [2] - 37:18, 37:21
**approved** [1] - 37:8
**area** [3] - 28:25, 29:5, 29:14
**areas** [1] - 28:13
**argued** [1] - 17:5
**argument** [5] - 62:4, 62:7, 62:11, 62:12, 63:1
**arms** [1] - 4:24
**aside** [1] - 23:15
**assignors** [2] - 54:21, 55:1
**assume** [3] - 6:20, 32:18, 55:4
**assured** [1] - 22:17
**Atlanta** [1] - 2:7
**attempt** [3] - 37:17, 38:20, 38:21
**attempting** [1] - 47:18
**attend** [7] - 23:3, 23:10, 26:5, 26:7, 26:19, 27:2, 29:5
**attending** [2] - 26:2, 26:18
**attorney** [4] - 9:8, 24:10, 25:22, 27:11
**attorneys** [1] - 51:8
**authority** [2] - 44:2, 45:18
**Authority** [2] - 36:22, 47:7
**availability** [1] - 62:19
**available** [2] - 6:11, 35:10
**avoid** [4] - 8:14, 19:6, 33:21, 47:10
**aware** [7] - 6:15, 10:20, 16:17, 19:18, 26:4, 38:6, 61:9

**B**

**B-R-A-Y** [1] - 60:15
**baby** [1] - 16:13

*back-and-forth* [1] - 33:6
*background* [4] - 16:6, 16:14, 21:17, 26:1
*BARNES* [1] - 2:10
*based* [5] - 13:20, 46:2, 46:7, 48:22, 55:18
*basic* [3] - 20:16, 34:24, 49:3
*basis* [1] - 5:14
*Battle* [1] - 60:12
*BATTLE* [1] - 60:12
*bear* [2] - 18:19, 41:17
*becomes* [1] - 27:22
*beg* [1] - 21:6
*begin* [1] - 7:11
*begun* [1] - 11:5
*behalf* [7] - 3:17, 4:3, 4:7, 4:9, 47:18, 47:23, 48:20
*Behram* [1] - 58:14
*believes* [1] - 46:10
*Benicar* [2] - 9:21, 30:18
*BERNE* [1] - 2:13
*best* [7] - 11:19, 22:11, 22:12, 39:25, 52:24, 56:13, 63:25
*better* [1] - 39:9
*between* [6] - 21:10, 25:21, 34:8, 49:9, 49:19, 51:4
*beyond* [2] - 53:9, 61:8
*BI* [1] - 10:13
*big* [2] - 16:2, 55:10
*bigger* [1] - 16:8
*bit* [9] - 6:6, 18:8, 31:17, 33:2, 45:2, 52:16, 55:22, 56:23, 56:25
*blockade* [1] - 49:1
*blurred* [1] - 34:9
*Blvd* [1] - 2:20
*board* [1] - 51:9
*BOSICK* [1] - 2:16
*bottleneck* [1] - 8:14
*bottom* [2] - 49:8, 49:18
*Bowden* [2] - 59:5, 60:1
*BOWDEN* [1] - 59:5
*Bray* [3] - 58:11, 59:1, 60:15
*BRAY* [1] - 58:11
*break* [3] - 43:10, 55:1, 56:8
*brief* [4] - 10:14,

15:19, 19:19, 54:25
*briefing* [2] - 52:8, 56:20
*briefs* [2] - 42:5, 56:22
*bring* [1] - 39:25
*brought* [1] - 16:21
*burdens* [1] - 33:21
*BY* [9] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:10, 2:13, 2:17, 2:20

## C

*CA* [1] - 2:11
*call-in* [1] - 64:13
*Camp* [1] - 1:18
*cannot* [4] - 37:10, 43:11, 45:7, 46:4
*capable* [1] - 45:9
*capacities* [1] - 33:19
*capacity* [4] - 31:4, 31:10, 32:6, 33:17
*capital* [2] - 43:18
*care* [2] - 36:3, 57:11
*carried* [2] - 59:3, 61:14
*case* [31] - 5:23, 5:24, 10:10, 12:18, 13:22, 14:6, 22:10, 24:1, 24:13, 26:11, 26:13, 37:14, 38:13, 38:18, 39:17, 39:19, 43:7, 45:12, 46:4, 47:8, 51:25, 53:14, 55:10, 58:9, 58:25, 59:15, 60:10, 61:4
*cases* [34] - 12:16, 21:2, 24:5, 25:20, 26:10, 32:8, 51:1, 51:4, 51:9, 51:10, 51:17, 52:3, 52:10, 52:17, 52:22, 53:6, 53:8, 53:12, 53:15, 53:17, 54:2, 54:4, 56:2, 56:5, 59:1, 59:9, 59:11, 60:7, 60:10, 60:22, 61:24, 62:8, 63:13
*categories* [1] - 55:2
*category* [5] - 10:24, 10:25, 14:13, 30:13, 55:3
*causation* [2] - 63:14, 63:21
*causes* [1] - 20:18
*caveat* [3] - 29:12, 29:15, 44:1
*Central* [2] - 36:22, 47:7
*Centre* [1] - 2:17

*Century* [1] - 2:11
*cert* [1] - 55:7
*certain* [4] - 16:23, 17:4, 40:22, 44:6
*certainly* [22] - 11:6, 12:2, 12:18, 13:22, 14:16, 15:6, 17:15, 21:14, 23:4, 26:23, 38:19, 40:25, 44:19, 47:13, 48:3, 52:14, 52:24, 53:5, 53:20, 54:17, 55:21, 61:25
*certification* [2] - 54:19, 55:4
*cetera* [7] - 7:1, 10:2, 11:3, 14:8, 52:8, 52:9
*challenging* [1] - 32:14
*chance* [2] - 36:11, 45:4
*change* [1] - 8:1
*changed* [1] - 57:14
*chart* [1] - 52:2
*China* [16] - 36:20, 37:6, 37:9, 37:10, 37:11, 38:3, 38:11, 38:22, 39:12, 39:15, 39:21, 40:12, 40:23, 42:9, 42:14, 43:17
*Chinese* [18] - 10:23, 37:2, 37:5, 37:7, 37:9, 37:15, 37:19, 37:22, 37:24, 38:1, 38:3, 38:8, 38:11, 38:12, 39:5, 42:6, 44:13, 46:22
*choose* [1] - 27:19
*chunks* [1] - 43:10
*cincinnati* [1] - 2:15
*circumscribed* [1] - 39:13
*circumstance* [1] - 38:7
*circumstances* [3] - 27:5, 28:3, 39:13
*citizens* [2] - 45:13, 46:12
*CIVIL* [1] - 1:3
*civil* [1] - 62:19
*Civil* [4] - 26:15, 37:7, 40:9, 44:21
*clarify* [1] - 15:13
*clarity* [1] - 33:16
*class* [7] - 6:7, 6:11, 7:4, 7:17, 54:18, 55:4, 55:7
*clean* [1] - 21:3
*clear* [1] - 16:20
*clearer* [1] - 30:12

*Clem* [2] - 4:11, 44:17
*CLEM* [1] - 2:17
*CLERK* [2] - 3:6, 3:8
*client* [4] - 13:15, 28:18, 46:5, 47:23
*clients* [2] - 7:18, 61:13
*close* [2] - 57:1, 64:2
*closer* [2] - 11:16, 40:3
*Co* [1] - 2:12
*co* [1] - 37:2
*co-counsel* [1] - 37:2
*colleague* [2] - 38:23, 44:23
*colleagues* [1] - 63:16
*coming* [1] - 62:14
*commence* [1] - 32:10
*Commencing* [1] - 1:7
*comment* [1] - 31:6
*comments* [1] - 48:8
*commitment* [1] - 38:18
*common* [1] - 21:1
*communicate* [1] - 8:8
*communication* [1] - 8:13
*communications* [2] - 8:12, 9:3
*companies* [5] - 10:5, 10:8, 28:12, 55:17
*company* [4] - 9:16, 9:25, 10:3, 31:13
*compel* [2] - 40:20, 41:22
*Complaint* [6] - 18:22, 18:24, 26:24, 27:10, 27:20, 29:1
*Complaints* [1] - 18:25
*complete* [3] - 5:7, 41:5, 52:13
*completed* [2] - 16:18, 17:1
*completely* [1] - 7:22
*compliance* [1] - 47:6
*complicated* [2] - 5:22, 5:23
*complications* [3] - 10:22, 47:10, 50:3
*comprehensive* [1] - 4:21
*computer* [1] - 1:25
*computer-aided* [1] - 1:25
*concept* [7] - 19:12, 19:14, 19:21, 20:10, 20:11, 20:25, 30:25
*conceptually* [1] - 26:23

*concern* [6] - 6:14, 34:4, 35:5, 35:15, 35:22, 36:3
*concerned* [4] - 23:5, 23:6, 33:24
*conducted* [4] - 7:7, 31:21, 33:19, 37:10
*confer* [18] - 15:15, 15:21, 16:19, 17:25, 19:16, 19:21, 33:4, 33:8, 34:1, 34:17, 34:25, 36:11, 41:15, 48:21, 61:3, 61:7, 61:22, 63:25
*CONFERENCE* [1] - 1:5
*conference* [11] - 5:2, 7:8, 60:10, 60:17, 61:4, 61:11, 61:15, 61:16, 63:22, 64:3, 64:6
*confers* [1] - 33:6
*confirmed* [1] - 9:22
*confront* [1] - 26:20
*confusion* [1] - 33:2
*Conlee* [1] - 4:3
*CONLEE* [1] - 1:18
*consecutive* [5] - 31:22, 33:20, 35:7, 35:10
*consensus* [1] - 22:14
*consequently* [1] - 15:19
*consistently* [1] - 45:21
*consolidated* [1] - 26:10
*contact* [2] - 8:23, 13:8
*contacts* [1] - 54:3
*contamination* [2] - 19:23, 20:18
*contention* [1] - 15:3
*context* [1] - 20:4
*continue* [7] - 11:20, 14:17, 17:13, 48:9, 49:22, 51:22, 61:2
*CONTINUED* [1] - 2:1
*continuing* [2] - 15:14, 48:24
*contractor* [1] - 16:14
*control* [4] - 8:6, 26:17, 42:21, 52:14
*convenience* [1] - 40:3
*convenient* [1] - 42:19
*Convention* [5] - 37:7, 44:22, 45:12, 47:7, 49:14
*conversation* [2] -

10:15, 11:20
**cooperate** [1] - 42:2
**cooperative** [1] - 42:16
**cooperatively** [1] - 39:24
**coordinate** [3] - 6:25, 7:12, 52:7
**coordinated** [4] - 52:24, 53:4, 53:17, 56:6
**coordination** [9] - 51:1, 51:3, 52:13, 53:8, 53:16, 53:19, 53:24, 56:1, 56:4
**corporate** [11] - 11:11, 11:14, 11:21, 12:24, 31:4, 31:10, 34:8, 34:10, 40:20, 42:17, 44:2
**correct** [13] - 22:15, 28:2, 28:7, 28:15, 30:11, 43:25, 58:20, 58:23, 59:20, 59:21, 60:21, 62:4, 62:5
**Counsel** [3] - 3:3, 39:10, 56:8
**counsel** [21] - 3:14, 3:23, 4:1, 5:9, 5:24, 8:14, 9:3, 22:5, 30:7, 31:25, 34:20, 36:24, 37:2, 52:25, 58:8, 61:1, 61:3, 61:12, 61:24, 63:6
**countries** [3] - 38:9, 40:3, 41:12
**country** [3] - 47:9, 47:13, 49:16
**couple** [3] - 18:3, 20:15, 23:22
**course** [11] - 10:24, 13:24, 16:6, 24:15, 25:15, 25:23, 31:16, 32:20, 42:4, 50:8, 52:12
**COURT** [1] - 1:1
**Court** [11] - 1:22, 22:5, 39:8, 40:8, 40:17, 41:24, 46:14, 52:6, 53:19, 56:3, 61:19
**court** [5] - 3:7, 9:14, 52:21, 53:21
**Court's** [1] - 6:14
**courthouse** [1] - 62:13
**courtroom** [3] - 62:18, 62:22, 62:23
**Courts** [1] - 5:25
**cover** [4] - 19:10, 33:12, 33:18, 42:18

**covered** [2] - 19:6, 37:4
**covers** [1] - 20:14
**COVID** [1] - 43:2
**create** [1] - 50:3
**criminal** [2] - 37:11, 62:20
**crying** [1] - 16:13
**crystallizes** [1] - 40:14
**cumbersome** [1] - 30:23
**cured** [1] - 61:11
**current** [1] - 5:7
**CVS** [6] - 2:12, 4:18, 27:8, 27:9, 27:11
**CVS-related** [1] - 27:11

## D

**DANIEL** [1] - 2:13
**darndest** [1] - 56:21
**date** [10] - 8:7, 16:21, 35:16, 50:1, 50:23, 51:15, 55:14, 55:16
**dates** [10] - 6:10, 6:12, 6:17, 6:18, 7:4, 7:10, 7:14, 7:15, 7:18, 34:22
**DAVID** [1] - 1:15
**David** [1] - 3:23
**days** [8] - 6:10, 12:19, 16:13, 30:1, 31:22, 33:20, 35:7, 35:10
**De** [1] - 2:20
**dead** [2] - 35:16, 55:14
**deal** [7] - 5:4, 17:23, 18:6, 18:7, 31:11, 43:13, 43:14
**dealing** [1] - 40:15
**December** [2] - 6:17, 7:5
**decide** [5] - 42:4, 42:10, 56:21, 63:3, 63:10
**decided** [2] - 14:25, 31:25
**decision** [2] - 56:25, 57:1
**decisions** [1] - 52:5
**default** [1] - 40:10
**defend** [2] - 55:7, 55:11
**defendant** [25] - 4:10, 12:20, 13:8, 23:10, 23:16, 23:23, 23:24, 23:25, 24:4, 24:7, 24:13, 24:25, 25:1, 25:2, 25:6, 25:8, 25:15, 26:2, 26:10,

29:1, 29:5, 39:7, 40:7, 55:2
**Defendant** [4] - 2:4, 2:12, 2:15, 2:18
**defendants** [46] - 4:7, 4:15, 4:17, 5:7, 5:12, 5:13, 7:9, 7:22, 10:20, 10:22, 12:6, 12:13, 13:20, 15:1, 15:2, 15:12, 18:20, 20:19, 24:3, 24:9, 24:14, 24:19, 24:24, 25:20, 25:21, 26:25, 29:16, 41:11, 48:19, 49:19, 50:13, 54:13, 54:18, 54:20, 54:24, 55:6, 55:10, 56:2, 56:17, 56:18, 58:15, 58:22, 61:9, 61:22, 63:18, 64:10
**Defendants** [1] - 2:8
**defendants'** [2] - 8:5, 60:23
**defending** [1] - 8:21
**defense** [31] - 4:5, 4:12, 6:13, 6:15, 6:18, 9:8, 9:22, 10:6, 11:7, 11:12, 17:3, 20:16, 20:23, 29:25, 30:14, 34:20, 35:9, 35:11, 36:12, 40:6, 41:9, 42:22, 44:6, 51:24, 58:7, 58:23, 59:9, 60:19, 63:6, 63:16, 64:9
**Defense** [2] - 2:4, 2:18
**defer** [5] - 22:13, 22:24, 36:16, 44:20, 44:23
**deferred** [1] - 54:15
**deficiencies** [1] - 61:10
**definitely** [1] - 8:24
**delay** [1] - 47:10
**deleted** [1] - 25:12
**demonstrating** [1] - 38:18
**dep** [2] - 23:17, 39:5
**deponent** [1] - 33:16
**depose** [5] - 22:5, 29:18, 38:22, 39:22, 42:8, 44:7
**deposed** [25] - 6:12, 11:1, 11:3, 12:8, 14:8, 18:21, 19:23, 21:1, 31:10, 31:13, 32:4, 32:5, 33:17, 35:6, 37:14, 37:21, 38:2, 38:9, 38:13, 38:16, 40:9, 40:21,

41:1, 49:10
**deposition** [66] - 5:19, 6:2, 8:9, 8:12, 8:16, 8:21, 9:6, 12:11, 12:17, 12:20, 16:3, 16:19, 18:18, 20:3, 21:15, 22:2, 23:11, 23:12, 25:3, 25:14, 25:16, 26:3, 26:5, 26:9, 26:12, 26:19, 27:1, 27:3, 27:16, 27:18, 28:4, 29:2, 29:3, 29:6, 30:5, 31:25, 34:3, 34:13, 35:16, 35:17, 35:19, 36:7, 36:23, 37:5, 37:9, 37:12, 37:16, 38:4, 38:5, 38:18, 38:24, 43:17, 43:19, 43:21, 45:19, 47:13, 48:1, 49:12, 49:17, 49:24, 50:4, 50:21, 55:15, 55:20
**depositions** [68] - 5:21, 6:4, 6:19, 6:20, 6:24, 7:7, 7:10, 7:12, 7:22, 9:21, 10:13, 10:22, 10:23, 11:9, 11:19, 11:22, 12:1, 12:6, 12:24, 13:11, 13:12, 13:24, 18:23, 18:25, 19:3, 19:5, 19:8, 20:8, 22:8, 23:3, 23:5, 23:7, 26:7, 28:9, 30:22, 31:21, 32:19, 33:19, 33:22, 34:10, 39:12, 39:19, 39:21, 41:4, 42:5, 43:1, 43:7, 43:9, 43:12, 43:16, 44:2, 44:16, 46:1, 46:4, 46:7, 46:14, 47:21, 49:11, 50:6, 50:8, 50:10, 50:15, 54:12, 55:20, 55:22, 63:12, 63:21
**deps** [3] - 6:7, 7:25, 10:9
**DEPUTY** [2] - 3:6, 3:8
**designate** [2] - 13:6, 40:23
**designated** [7] - 11:10, 11:14, 12:14, 12:21, 32:1, 33:18, 34:7
**designates** [1] - 31:13
**designations** [1] - 46:6
**designee** [1] - 13:1
**designees** [1] - 46:5

**despite** [1] - 20:5
**details** [4] - 20:11, 20:25, 21:6, 21:10
**determine** [2] - 7:9, 42:13
**develop** [1] - 22:10
**devil** [1] - 20:24
**difference** [1] - 43:3
**different** [7] - 21:11, 24:1, 24:2, 24:8, 31:17, 52:21, 55:2
**difficult** [5] - 12:5, 30:23, 39:16, 49:4, 49:22
**difficulties** [1] - 50:3
**dig** [1] - 55:9
**direct** [2] - 8:23, 24:23
**direction** [1] - 5:16
**directly** [1] - 50:18
**disagree** [1] - 22:21
**disagreement** [2] - 33:14, 51:3
**disaster** [1] - 9:4
**discovery** [9] - 20:6, 22:9, 26:11, 40:11, 45:23, 46:8, 47:14, 49:2, 54:19
**discreet** [1] - 32:8
**discuss** [11] - 10:12, 11:8, 12:23, 15:9, 17:15, 17:21, 22:25, 55:5, 55:13, 63:16, 64:5
**discussed** [5] - 11:18, 13:21, 17:19, 33:13, 55:23
**discussing** [2] - 14:15, 19:19
**discussion** [9] - 6:23, 17:1, 35:3, 45:2, 49:18, 50:13, 50:20, 55:18, 63:8
**discussions** [11] - 6:3, 6:7, 11:2, 11:5, 14:7, 14:17, 15:7, 16:22, 45:25, 49:8, 59:14
**dismiss** [5] - 51:16, 52:2, 53:9, 58:13, 62:4
**dismissal** [5] - 58:20, 59:7, 59:13, 59:19, 59:23
**dismissed** [8] - 58:9, 58:12, 58:17, 59:12, 59:18, 59:19, 60:2, 60:17
**dismissing** [1] - 58:10
**dispose** [1] - 46:11
**dispute** [11] - 19:13, 19:14, 23:15, 23:16,

23:19, 27:5, 27:10, 27:14, 32:21, 43:20, 45:6
**disputes** [2] - 18:12, 30:8
**disruption** [1] - 39:21
**distancing** [1] - 62:23
**distant** [1] - 62:25
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [2] - 40:21, 44:3
**document** [7] - 5:8, 14:13, 14:21, 14:23, 15:1, 50:22, 54:15
**documents** [4] - 5:14, 15:3, 29:25, 56:24
**Donald** [1] - 60:12
**done** [13] - 6:20, 11:15, 11:16, 29:24, 35:1, 38:24, 38:25, 40:2, 40:19, 49:20, 50:7, 55:22
**Dorothy** [1] - 60:11
**down** [1] - 9:16
**draft** [1] - 47:18
**draw** [2] - 42:16, 42:22
**drawing** [1] - 47:23
**drop** [2] - 35:16, 55:14
**drop-dead** [2] - 35:16, 55:14
**drug** [1] - 20:3
**drugs** [2] - 20:6, 21:11
**Du** [1] - 40:2
**DUANE** [1] - 2:2
**duplicating** [1] - 22:20
**duplication** [2] - 21:9, 28:20
**duplicative** [1] - 22:16
**during** [5] - 7:8, 19:15, 20:3, 22:8, 35:7

**E**

**e-mail** [2] - 57:7, 64:16
**easier** [1] - 55:22
**easiest** [1] - 38:10
**easily** [2] - 11:15, 20:12
**East** [1] - 2:11
**easy** [3] - 12:1, 15:24, 53:21
**educated** [1] - 20:8
**educational** [1] - 21:17
**Edwin** [1] - 58:9
**effect** [1] - 30:10
**effectively** [1] - 24:23
**efficiency** [1] - 40:4
**efficient** [1] - 19:8,

42:18
**efficiently** [1] - 32:19
**effort** [1] - 12:4
**eight** [3] - 43:10, 60:7, 60:10
**Eisenhower** [1] - 1:12
**either** [12] - 13:22, 23:11, 29:15, 30:4, 31:21, 34:22, 35:6, 36:20, 46:15, 49:2, 52:14, 63:4
**elements** [1] - 63:20
**employee** [1] - 38:14
**employees** [2] - 37:24, 45:15
**employment** [1] - 21:16
**end** [11] - 5:6, 5:8, 10:18, 14:2, 14:3, 18:10, 18:22, 43:22, 60:19, 62:3, 63:11
**enter** [3] - 3:19, 3:20, 63:23
**entered** [2] - 18:9, 35:19
**entities** [2] - 4:9, 47:5
**entitled** [2] - 54:18, 55:7
**entitlement** [1] - 40:16
**entry** [1] - 38:11
**envision** [1] - 28:20
**envisioned** [2] - 28:10, 28:17
**ESI** [1] - 5:8
**especially** [2] - 32:14, 50:6
**ESQUIRE** [10] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:6, 2:10, 2:13, 2:17, 2:20
**essentially** [1] - 40:6
**et** [7] - 7:1, 10:2, 11:3, 14:8, 52:8
**Europe** [1] - 48:22
**evaluate** [1] - 48:24
**evening** [3] - 7:3, 15:18, 61:8
**Evidence** [2] - 45:11, 47:7
**evidence** [1] - 26:17
**example** [5] - 11:13, 19:22, 21:12, 22:23, 41:3
**examples** [1] - 20:15
**excellent** [1] - 64:7
**excuse** [2] - 16:6, 57:5
**Exhibit** [1] - 25:10
**exhibits** [1] - 50:9
**exists** [1] - 23:13
**expect** [1] - 43:7

**expected** [2] - 18:5, 29:19
**experience** [5] - 30:6, 31:8, 31:12, 31:17, 53:13
**expressed** [4] - 6:16, 11:7, 11:12, 51:13
**extend** [1] - 30:4
**extent** [4] - 13:18, 14:21, 19:7, 24:12
**extra** [1] - 30:15

**F**

**face** [1] - 46:11
**facing** [3] - 41:17, 62:15, 62:17
**fact** [1] - 11:19, 15:3, 16:21, 17:8, 20:5, 34:2, 34:5, 34:7, 35:5, 38:20, 55:18
**facts** [2] - 24:4
**fair** [4] - 44:9, 48:15, 49:7
**fairness** [1] - 45:3
**feasible** [2] - 20:24, 41:3
**federal** [3] - 39:7, 51:4, 61:19
**Federal** [5] - 26:11, 26:14, 26:16, 40:8, 44:21
**few** [8] - 6:10, 12:23, 17:17, 23:8, 29:22, 44:25, 56:16, 57:17
**figure** [1] - 20:9
**filed** [5] - 15:17, 51:17, 52:2, 59:10, 59:23
**files** [1] - 55:9
**final** [4] - 18:9, 50:1, 50:23, 55:14
**finalize** [4] - 16:4, 17:16, 36:18, 55:15
**finalized** [4] - 16:24, 35:16, 35:20, 49:24
**fine** [11] - 3:19, 7:20, 10:7, 10:11, 10:14, 10:16, 10:19, 15:23, 27:18, 31:7, 32:20
**finish** [3] - 8:6, 32:10, 32:12
**finished** [1] - 50:20
**first** [16] - 7:18, 15:24, 18:4, 18:20, 20:14, 21:15, 31:10, 31:13, 31:23, 31:24, 39:5, 46:1, 46:8, 47:11, 53:25, 60:24
**Fisher** [1] - 60:13
**FISHER** [1] - 60:13

**fit** [4] - 24:18, 25:21, 47:2, 62:23
**five** [2] - 41:5, 43:11
**FL** [1] - 2:21
**flag** [1] - 30:16
**Floor** [1] - 2:17
**flow** [2] - 8:13
**fly** [1] - 49:16
**fold** [1] - 34:12
**follow** [9] - 9:17, 27:6, 28:13, 28:18, 34:17, 36:20, 37:6, 45:10, 45:11
**follow-up** [2] - 27:6, 34:17
**followed** [1] - 45:17
**FOR** [1] - 1:1
**foreclose** [2] - 14:25, 15:2
**foreign** [7] - 10:23, 30:1, 46:11, 46:16, 47:15, 47:21, 55:17
**forge** [1] - 18:11
**forth** [2] - 33:6, 38:4
**forward** [1] - 64:4
**foster** [3] - 53:19, 53:24, 56:4
**four** [1] - 17:24
**Frain** [2] - 59:5, 60:2
**FRAIN** [1] - 59:5
**framed** [1] - 17:3
**Frank** [2] - 44:23, 44:24
**frankly** [4] - 9:3, 30:13, 39:17, 46:4
**FREEMAN** [1] - 1:11
**Friday** [3] - 8:2, 33:5, 36:12
**Friedlander** [1] - 1:22
**friedlanderreporter @gmail.com** [1] - 1:23
**front** [2] - 5:10, 16:1
**fruit** [3] - 10:10, 21:20, 41:17
**fruitful** [1] - 63:8
**frustration** [1] - 40:15
**FSK** [1] - 57:6
**full** [1] - 9:5
**fully** [5] - 15:20, 19:18, 39:8, 51:14, 64:2
**fundamental** [1] - 20:24
**funneling** [1] - 13:16
**future** [2] - 23:1, 62:25

**G**

**game** [1] - 55:8
**Gehefer** [2] - 59:4,

60:1
**GEHEFER** [1] - 59:4
**general** [4] - 4:25, 5:18, 14:9, 21:9, 22:21, 28:13, 35:16, 35:17, 35:19, 36:19, 49:24, 50:3, 54:17, 55:11, 55:15, 63:13
**General** [1] - 36:22
**generalized** [1] - 20:2
**generally** [4] - 4:24, 5:9, 43:25, 62:8
**gentleman's** [1] - 21:16
**GEOPPINGER** [2] - 2:13, 4:13
**Geoppinger** [1] - 4:14
**Georgia** [1] - 2:7
**gigantic** [1] - 30:21
**Gioia** [2] - 58:10, 58:25
**GIOIA** [1] - 58:10
**given** [2] - 32:14, 32:22
**goal** [1] - 13:1
**Goldberg** [36] - 4:7, 5:11, 6:23, 7:21, 9:5, 10:14, 13:14, 15:11, 16:1, 16:12, 16:18, 17:7, 18:15, 19:15, 22:12, 23:2, 23:7, 28:9, 31:20, 33:24, 34:5, 35:14, 36:24, 44:14, 45:17, 51:14, 52:18, 52:20, 56:17, 58:19, 61:21, 62:2, 63:9, 64:12, 64:15, 64:18
**GOLDBERG** [29] - 2:3, 4:6, 5:11, 7:2, 15:11, 16:5, 17:7, 18:17, 23:8, 23:21, 25:19, 26:16, 28:2, 28:7, 28:15, 28:19, 29:7, 31:19, 33:1, 36:5, 37:1, 52:18, 52:20, 54:5, 56:18, 61:21, 62:5, 63:9, 64:10
**Goldberg's** [2] - 46:20, 46:21
**GOLDENBERG** [1] - 61:5
**Goldenberg** [1] - 61:6
**Golkow** [1] - 9:20
**golly** [1] - 54:4
**GOLOMB** [1] - 1:14
**GORDON** [1] - 2:16
**government** [1] - 37:15
**granted** [1] - 45:20

great [8] - 8:19, 8:24, 10:4, 15:23, 18:9, 19:21, 64:4, 64:17
Greenberg [2] - 4:9, 58:22
GREENBERG [1] - 2:5
Griffit [3] - 59:3, 59:11, 59:18
GRIFFIT [1] - 59:3
gritty [2] - 9:6, 21:21
ground [1] - 19:6
grounds [1] - 22:20
Group [2] - 2:4, 2:18
group [10] - 4:12, 6:24, 13:7, 50:15, 50:16, 50:17, 53:11, 53:14, 54:1, 58:23
guess [1] - 36:19
guidance [2] - 13:18, 15:5
Gunter [1] - 60:14
GUNTER [1] - 60:14
gut [1] - 54:22
gymnastics [1] - 49:13

### H

Hague [7] - 36:21, 37:7, 44:22, 45:11, 47:3, 47:7, 49:13
half [1] - 30:1
hand [2] - 54:23, 57:2
handle [1] - 35:15
handled [1] - 9:20
handling [2] - 9:25, 10:10
hands [1] - 9:5
hang [2] - 55:24
hanging [2] - 10:10, 21:19
happy [3] - 17:20, 44:20, 61:2
harassed [1] - 22:18
hard [5] - 19:12, 19:13, 19:14, 22:20, 22:21
harder [5] - 23:20, 27:15, 27:21, 36:6, 36:8
HARKINS [7] - 2:6, 58:21, 59:8, 59:21, 59:24, 60:6, 60:22
Harkins [2] - 58:21, 59:8
hash [1] - 45:5
hashed [1] - 44:11
hate [1] - 3:22
headed [1] - 5:16
Health [1] - 2:12

hear [1] - 61:2
heard [8] - 17:11, 33:13, 34:16, 40:14, 41:9, 41:10, 41:17, 49:5
hearing [2] - 35:11, 40:5
heat [1] - 56:25
heat's [1] - 56:23
held [1] - 53:6
hello [2] - 11:4, 51:18
help [5] - 5:25, 51:5, 53:24, 56:4, 61:25
helpful [1] - 46:24, 50:13, 54:3
helps [1] - 55:21
Hi [1] - 3:9
hi [1] - 3:10
history [2] - 21:16
hold [4] - 56:11, 56:15, 57:17, 57:18
holding [1] - 54:13
holiday [1] - 8:3
Hong [6] - 38:9, 38:10, 38:13, 43:3, 43:18, 47:1
HONIK [1] - 1:14
Honor [63] - 3:16, 4:2, 4:11, 4:13, 4:16, 5:11, 6:9, 6:16, 7:2, 8:18, 9:19, 11:4, 11:8, 13:17, 15:11, 16:16, 17:7, 17:22, 23:8, 23:18, 24:23, 25:11, 28:2, 28:19, 29:7, 30:9, 30:12, 30:17, 31:19, 32:11, 33:1, 33:23, 34:23, 37:1, 39:1, 39:23, 40:14, 44:17, 47:12, 48:17, 51:11, 52:18, 56:10, 56:18, 57:24, 58:14, 58:21, 59:21, 60:6, 60:22, 61:5, 61:21, 62:5, 63:5, 63:9, 63:10, 63:12, 63:16, 63:17, 63:19, 63:22, 64:10, 64:15
Honor's [1] - 21:20
HONORABLE [2] - 1:8, 1:9
hope [6] - 3:4, 11:11, 12:3, 28:10, 28:16, 64:1
hoped [1] - 18:8
hopeful [2] - 41:15, 44:7
hopefully [12] - 6:18, 7:13, 9:23, 10:25, 11:15, 15:8, 15:21,

16:8, 49:15, 49:22, 53:18, 61:23
hoping [2] - 44:5, 46:5
hour [3] - 21:15, 32:11, 43:10
hours [9] - 24:18, 25:22, 29:17, 29:18, 29:20, 29:24, 38:15, 38:16, 61:8
Huey [1] - 60:15
HUEY [1] - 60:15
hundred [2] - 9:1, 28:17
hurdle [1] - 45:22
hypothetically [2] - 42:25, 43:1

### I

ID [5] - 27:1, 27:6, 28:11, 28:12, 28:18
idea [4] - 8:24, 19:17, 34:14, 53:10
ideas [2] - 51:7, 53:23
identification [2] - 11:10, 24:6
identified [3] - 8:21, 13:2, 17:10
identify [3] - 12:13, 12:21, 39:25
identifying [1] - 8:11
ignored [1] - 10:20
illegal [3] - 43:17, 49:11, 49:12
imagine [1] - 5:22
immediately [2] - 5:3, 51:24
impact [1] - 36:22
impediment [2] - 45:23, 62:12
implicated [1] - 47:16
important [6] - 13:3, 13:5, 23:3, 26:17, 33:2, 34:7
impractical [1] - 54:23
impression [3] - 17:11, 47:5, 55:12
IN [1] - 1:3
Inc [2] - 2:8, 2:9
include [8] - 8:24, 20:5, 28:23
included [1] - 9:1
includes [1] - 37:12
inconsistent [1] - 17:8
incorporate [1] - 63:20
incredible [1] - 29:25
incredibly [3] - 5:21, 30:23, 49:22
India [14] - 36:20,

38:25, 44:15, 44:22, 45:1, 45:10, 45:11, 45:13, 45:15, 45:18, 46:2, 47:5, 49:12, 49:13
Indian [11] - 10:23, 36:22, 36:24, 37:3, 44:16, 46:10, 47:5, 47:7, 47:9, 47:19, 48:1
indicate [1] - 46:21
indicated [3] - 14:1, 58:24, 63:22
indication [1] - 14:5
indisputable [1] - 27:13
individual [16] - 12:24, 25:6, 25:20, 31:4, 31:11, 31:13, 31:23, 31:24, 32:5, 32:11, 33:16, 33:17, 34:9, 41:16, 45:15
individuals [2] - 45:12, 47:21
Industries [1] - 2:8
inefficiency [1] - 11:17
inevitable [1] - 47:10
information [4] - 54:21, 54:24, 55:10, 56:3
initial [1] - 48:20
initiated [1] - 20:6
injury [2] - 24:1, 63:13, 63:21
input [1] - 50:12
insist [2] - 37:20, 47:6
instance [2] - 18:5, 53:25
insufficient [1] - 54:23
insurmountable [1] - 49:21
intend [3] - 8:8, 49:1, 63:19
intended [1] - 63:23
intensive [2] - 12:4, 14:7
intent [1] - 63:24
interact [1] - 21:10
interacted [1] - 34:9
interest [5] - 20:12, 22:19, 25:3, 32:18, 52:23
interesting [2] - 31:17, 34:14
interests [2] - 29:6, 55:11
international [2] - 45:15, 45:22
interplay [1] - 44:21

interpreters [1] - 50:9
involve [2] - 8:23, 45:17
involved [4] - 5:22, 9:7, 34:6, 42:21
involvement [1] - 22:3
Irbesartan [1] - 18:23
irbesartan [7] - 19:4, 19:25, 20:5, 21:2, 21:14, 22:4, 22:8
Israel [1] - 48:22
issue [51] - 10:21, 12:4, 12:23, 14:15, 15:19, 15:24, 18:20, 19:10, 20:14, 21:1, 21:7, 22:13, 22:24, 23:2, 23:3, 24:19, 24:21, 25:24, 26:1, 26:6, 26:9, 29:23, 31:4, 32:17, 33:9, 33:11, 33:15, 35:18, 36:6, 36:8, 39:20, 42:4, 42:10, 42:12, 43:8, 43:13, 43:14, 43:22, 44:11, 46:11, 50:25, 55:5, 55:12, 56:22, 57:2, 58:5, 58:7, 60:16, 61:18, 62:17, 63:20
issued [1] - 45:18
issues [75] - 4:22, 5:4, 5:15, 5:20, 6:2, 9:6, 9:9, 10:2, 10:12, 11:25, 13:9, 13:15, 13:23, 14:10, 14:13, 14:18, 15:6, 15:8, 15:22, 16:2, 16:24, 17:9, 17:14, 17:17, 17:20, 17:24, 17:25, 18:6, 18:7, 18:11, 18:15, 18:17, 19:19, 20:7, 20:24, 23:9, 27:6, 27:7, 27:12, 28:6, 28:13, 28:18, 30:7, 31:11, 32:15, 33:5, 33:7, 33:11, 33:13, 34:7, 35:22, 36:1, 36:14, 36:23, 38:5, 40:22, 41:14, 41:20, 45:8, 47:1, 47:3, 48:13, 50:8, 50:19, 52:3, 54:7, 54:8, 54:16, 54:25, 55:15, 56:7, 56:20

### J

James [1] - 60:15
January [4] - 7:25, 8:1, 12:7, 54:13
Japanese [1] - 30:18

**JEFFREY** [1] - 2:13
**Jeffrey** [1] - 4:13
**JERSEY** [1] - 1:1
**Jersey** [8] - 1:13, 40:21, 44:3, 53:6, 53:20, 62:13, 62:15, 62:16
**JOEL** [1] - 1:8
**John** [1] - 40:1
**JOHN** [1] - 1:15
**JOHNSTON** [2] - 2:10, 4:16
**Johnston** [1] - 4:17
**join** [3] - 3:25, 5:4, 56:1
**joining** [1] - 57:21
**joint** [1] - 58:22
**Joint** [2] - 2:4, 2:18
**Joseph** [1] - 58:10
**JUDGE** [80] - 1:8, 1:9, 3:3, 3:7, 3:9, 3:11, 3:18, 4:4, 4:19, 5:17, 6:23, 7:20, 8:25, 9:11, 10:4, 12:2, 13:25, 15:23, 16:11, 17:23, 19:12, 21:12, 21:22, 21:25, 22:11, 23:14, 23:20, 25:17, 26:6, 26:22, 27:15, 28:5, 28:8, 28:16, 28:22, 29:11, 30:20, 31:3, 32:16, 35:14, 36:6, 36:16, 39:4, 42:3, 42:24, 43:13, 44:4, 46:17, 48:12, 48:15, 49:7, 51:20, 52:19, 53:10, 54:6, 56:12, 56:19, 57:4, 57:8, 57:11, 57:14, 57:17, 57:20, 57:22, 58:1, 58:4, 58:18, 59:2, 59:17, 59:22, 59:25, 60:11, 61:14, 62:2, 62:6, 63:6, 64:4, 64:8, 64:11, 64:17
**Judge** [29] - 3:4, 3:6, 3:10, 3:12, 3:24, 3:25, 4:6, 5:1, 5:5, 10:13, 10:15, 14:1, 14:5, 21:24, 27:14, 43:5, 54:3, 54:5, 55:24, 56:9, 57:3, 57:5, 57:16, 57:20, 57:22, 58:3, 63:8, 64:7
**judge** [1] - 54:3
**judges** [2] - 53:20, 53:22
**judgment** [1] - 40:11

**Judy** [3] - 59:3, 59:11, 59:18
**jurisdiction** [6] - 39:8, 40:8, 40:18, 41:23, 46:13, 51:10
**jurisdictions** [1] - 53:7
**Justice** [1] - 37:8

### K

**KANNER** [1] - 1:17
**Karen** [6] - 1:22, 3:9, 3:11, 58:2, 58:10, 58:15
**Karen's** [1] - 3:8
**KATZ** [1] - 1:11
**Keller** [1] - 60:14
**KELLER** [1] - 60:14
**key** [1] - 42:18
**kind** [2] - 28:20, 41:11
**knows** [2] - 13:8, 13:14
**Kong** [6] - 38:9, 38:10, 38:14, 43:3, 43:19, 47:1
**Kugler** [12] - 5:1, 5:5, 10:13, 10:15, 14:1, 14:6, 54:3, 55:24, 56:9, 57:6, 57:20, 57:22
**KUGLER** [18] - 1:9, 57:22, 58:1, 58:4, 58:18, 59:2, 59:17, 59:22, 59:25, 60:11, 61:14, 62:2, 62:6, 63:6, 64:4, 64:8, 64:11, 64:17

### L

**L-E-W-I-S** [1] - 59:6
**landscaper** [1] - 16:14
**language** [12] - 11:23, 19:1, 19:9, 25:12, 25:24, 28:21, 29:9, 30:1, 30:10, 33:10, 33:12, 33:14
**large** [1] - 34:13
**last** [7] - 6:10, 7:8, 47:11, 51:14, 58:16, 61:7, 63:22
**late** [2] - 14:22, 61:8
**Laughter** [1] - 16:10
**law** [4] - 40:19, 45:15, 45:22, 46:11
**lawns** [1] - 16:7
**laws** [3] - 41:25, 46:16, 47:15
**lawyer** [1] - 8:20
**lawyers** [2] - 8:23,

52:11
**lead** [7] - 3:14, 8:17, 9:8, 24:9, 25:22, 50:15
**leading** [1] - 8:21
**least** [2] - 11:9, 14:12, 18:3
**leave** [2] - 3:24, 9:18
**leaves** [2] - 58:11, 59:2
**left** [2] - 19:18, 37:18
**legitimate** [3] - 35:15, 35:22, 43:14
**length** [1] - 43:21
**lengthy** [1] - 61:6
**Leon** [1] - 2:20
**less** [1] - 11:17
**letter** [22] - 7:3, 15:13, 15:17, 16:1, 16:21, 17:3, 19:9, 19:11, 25:10, 37:8, 37:17, 37:20, 38:21, 39:10, 46:20, 46:21, 47:4, 58:18, 58:24, 60:19, 62:3
**letters** [1] - 4:20
**level** [2] - 40:14, 40:15
**Lewis** [4] - 58:9, 59:6, 59:15, 59:17
**LIABILITY** [1] - 1:4
**liability** [1] - 40:11
**liaison** [4] - 3:23, 8:14, 9:3, 11:12
**light** [4] - 25:3, 25:7, 26:19, 26:20
**likely** [6] - 27:2, 37:23, 50:6, 54:12, 54:14, 61:11
**limited** [3] - 28:5, 29:4, 62:18
**Linda** [5] - 59:5, 59:6, 59:15, 59:17, 60:1
**line** [11] - 3:8, 34:8, 42:16, 42:22, 44:23, 47:24, 49:8, 49:18, 56:9, 57:7, 57:21
**list** [6] - 7:4, 38:1, 58:16, 58:19, 60:19, 62:14
**listed** [3] - 60:8, 60:22, 60:24
**listen** [3] - 23:4, 23:17
**listening** [1] - 23:12
**listing** [2] - 60:8, 60:20
**listings** [1] - 60:3
**literally** [2] - 16:20, 35:1
**litigate** [1] - 39:20
**litigation** [5] - 9:21,

25:13, 39:7, 45:14, 61:19
**LITIGATION** [1] - 1:4
**litigations** [3] - 34:6, 51:13, 51:15
**lives** [2] - 37:13, 40:2
**LLC** [3] - 1:11, 1:17, 2:8
**LLP** [6] - 2:2, 2:5, 2:10, 2:13, 2:16, 2:19
**located** [1] - 11:23
**location** [2] - 42:14, 42:19
**LOCKARD** [6] - 4:8, 48:17, 57:3, 57:25, 63:17, 64:7
**Lockard** [4] - 4:8, 13:14, 48:18, 63:17
**LOCKHARD** [1] - 2:6
**logical** [2] - 53:15, 55:1
**logistical** [6] - 5:20, 11:25, 13:9, 13:23, 32:15, 44:12
**logistics** [2] - 41:1, 49:20
**look** [4] - 7:5, 7:18, 42:3, 64:4
**looked** [2] - 20:20, 52:1
**looking** [4] - 7:11, 21:4, 25:10, 54:6
**looks** [3] - 10:11, 14:12, 14:14
**Loretta** [3] - 57:5, 57:8, 57:12
**Los** [2] - 2:11, 43:3
**Losartan** [1] - 18:24
**losartan** [9] - 19:4, 19:25, 20:5, 20:17, 21:2, 21:14, 22:3, 22:7, 22:22
**loss** [1] - 52:16
**Louis** [2] - 60:12, 60:13
**Louisiana** [1] - 1:19
**low** [2] - 10:10, 21:19
**low-hanging** [2] - 10:10, 21:19
**Ltd** [1] - 2:8
**lucky** [1] - 36:17

### M

**M-E-F-F-O-R-D** [1] - 59:24
**macro** [3] - 16:24, 17:9, 33:5
**MAGISTRATE** [1] -

1:8
**mail** [2] - 57:7, 64:16
**main** [1] - 31:20
**Mainland** [4] - 37:6, 37:10, 38:11
**majority** [2] - 24:10, 25:23
**management** [3] - 26:11, 60:10, 61:4
**manufactured** [1] - 20:17
**manufacturer** [1] - 13:24
**manufacturers** [3] - 24:1, 46:2, 47:19
**March** [1] - 7:7
**Margaret** [2] - 59:4, 60:1
**marginalia** [1] - 25:11
**Market** [1] - 1:15
**Marlene** [1] - 61:5
**Master** [3] - 18:22, 18:24, 18:25
**materially** [1] - 8:4
**matter** [4] - 19:7, 23:23, 37:23, 43:23
**matters** [3] - 43:7, 62:19, 62:20
**maximum** [1] - 10:8
**MAZIE** [1] - 1:11
**MDL** [6] - 23:10, 24:24, 25:15, 26:10, 53:9, 53:17
**MDL-2875** [1] - 3:13
**Meade** [3] - 58:10, 58:16, 58:23
**MEADE** [1] - 58:10
**mean** [8] - 16:25, 24:5, 29:5, 29:20, 30:17, 41:7, 51:2, 52:1
**means** [1] - 55:9
**meantime** [1] - 58:9
**mechanical** [1] - 1:24
**mechanics** [1] - 49:19
**meet** [17] - 15:14, 15:21, 16:19, 17:25, 19:16, 19:21, 33:4, 33:6, 33:8, 34:1, 34:17, 34:25, 41:15, 48:20, 61:3, 61:6, 63:25
**meet-and-confer** [2] - 16:19, 41:15
**meeting** [2] - 10:18, 14:14
**Mefford** [3] - 59:4, 59:11, 59:24
**MEFFORD** [1] - 59:4
**mention** [1] - 56:20
**mentioned** [1] - 37:4

*MESTRE* [1] - 2:19
*Miami* [1] - 2:21
*mid* [2] - 7:7, 12:7
*mid-January* [1] - 12:7
*mid-March* [1] - 7:7
*might* [7] - 17:17, 25:6, 25:11, 29:23, 51:21, 62:15
*mill* [2] - 12:16, 12:18
*mind* [1] - 56:5
*Ministry* [1] - 37:8
*minor* [1] - 8:1
*minutes* [5] - 12:23, 15:17, 29:22, 56:16, 57:18
*moment* [2] - 22:25, 57:21
*Monday* [5] - 7:3, 8:2, 15:20, 35:12, 59:10
*money* [1] - 41:25
*month* [2] - 33:7, 63:11
*month's* [1] - 61:3
*months* [4] - 7:18, 13:21, 32:14
*moot* [1] - 43:22
*morning* [14] - 3:3, 3:16, 4:2, 4:4, 4:8, 4:11, 4:13, 4:16, 4:19, 41:6, 43:12, 57:22, 57:25, 58:14
*MORRIS* [1] - 2:2
*most* [2] - 6:11, 38:10
*motions* [6] - 51:16, 52:2, 53:9, 62:4, 62:9, 63:2
*move* [2] - 58:13, 61:16
*moved* [1] - 52:4
*mowed* [1] - 16:7
*MR* [76] - 3:16, 3:22, 3:23, 3:25, 4:6, 4:11, 4:13, 5:11, 6:9, 7:2, 8:18, 9:10, 9:19, 11:4, 13:17, 15:11, 16:5, 16:16, 17:7, 18:17, 19:14, 21:18, 21:23, 22:1, 22:6, 23:8, 23:18, 23:21, 25:19, 26:16, 27:14, 28:2, 28:7, 28:15, 28:19, 29:7, 30:9, 30:24, 31:19, 33:1, 33:23, 36:5, 36:11, 37:1, 39:1, 39:6, 42:7, 43:5, 43:25, 44:5, 44:17, 47:11, 48:13, 51:11, 51:19, 51:23, 52:18, 52:20, 54:5, 56:10, 56:18,

57:24, 58:14, 58:21, 59:8, 59:21, 59:24, 60:6, 60:22, 61:21, 62:5, 63:5, 63:9, 64:10, 64:15, 64:18
*MS* [13] - 4:2, 4:8, 4:16, 48:17, 57:3, 57:5, 57:10, 57:13, 57:16, 57:25, 61:5, 63:17, 64:7
*MSP* [6] - 2:21, 4:1, 29:22, 54:16, 54:20, 55:12
*multiple* [1] - 9:14
*mute* [1] - 46:23
*Mylan* [4] - 2:18, 4:12, 47:24, 50:17

## N

*name* [1] - 42:17
*named* [14] - 23:24, 23:25, 24:13, 24:19, 25:1, 25:20, 26:24, 27:9, 27:20, 27:21, 27:24, 29:1, 29:2, 29:3
*names* [2] - 3:14, 60:20
*narrow* [1] - 19:6
*nation* [2] - 45:13, 46:12
*national* [7] - 37:5, 37:9, 37:19, 37:22, 38:3, 38:8, 38:12
*nationals* [8] - 37:2, 37:3, 37:24, 38:1, 38:11, 42:6, 46:10, 47:21
*NE* [1] - 2:7
*near* [1] - 37:13
*necessary* [2] - 24:16, 26:20
*need* [23] - 9:7, 11:6, 17:15, 21:3, 22:2, 25:6, 32:11, 33:3, 33:7, 37:14, 42:1, 48:6, 51:13, 51:14, 51:24, 52:10, 53:7, 54:8, 58:5, 59:12, 61:16, 63:3, 63:7
*needing* [1] - 26:3
*needs* [4] - 21:7, 39:6, 58:12, 61:20
*negotiating* [1] - 42:12
*negotiation* [1] - 33:11
*neighbor* [1] - 16:8
*neighborhood* [1] - 16:7
*never* [4] - 5:22,

16:12, 17:1, 34:16
*NEW* [1] - 1:1
*new* [1] - 7:11
*New* [9] - 1:13, 1:19, 40:21, 44:3, 53:5, 53:20, 62:13, 62:14, 62:16
*news* [1] - 5:17
*next* [9] - 18:14, 32:12, 35:12, 50:25, 61:3, 61:11, 61:15, 64:3
*Nicole* [1] - 51:18
*night* [1] - 36:12
*nine* [1] - 43:10
*nine-hour* [1] - 43:10
*nitty* [2] - 9:6, 21:21
*nitty-gritty* [2] - 9:6, 21:21
*noise* [1] - 16:6
*nonresponsive* [1] - 56:24
*note* [2] - 5:18, 61:10
*noted* [1] - 7:8
*notes* [1] - 54:10
*nothing* [4] - 56:10, 56:18, 63:5, 64:10
*notice* [12] - 24:24, 25:13, 25:14, 25:15, 26:25, 27:23, 29:1, 32:2, 32:22, 52:6, 52:10, 53:2
*noticed* [4] - 18:22, 18:24, 19:3, 37:25
*notify* [2] - 9:20, 51:25
*notion* [1] - 22:21
*November* [29] - 5:8, 6:17, 7:4, 10:18, 14:3, 14:4, 14:18, 15:9, 15:22, 18:1, 18:7, 18:10, 18:14, 35:18, 35:20, 36:1, 36:17, 36:18, 49:25, 50:1, 50:23, 54:15, 55:14, 56:22, 57:1, 60:9, 60:16, 63:23, 64:5
*number* [14] - 3:20, 11:18, 17:19, 29:25, 48:21, 48:25, 52:21, 58:7, 60:3, 61:10, 62:21, 64:13, 64:16
*NUMBER* [1] - 1:3

## O

*o'clock* [1] - 41:5
*object* [1] - 14:16
*objection* [6] - 14:21, 14:22, 20:25, 23:4, 31:16, 47:20

*objections* [4] - 5:3, 9:23, 39:19, 59:7
*obligation* [1] - 53:2
*obligations* [1] - 40:11
*obstacle* [1] - 45:22
*obstructive* [1] - 41:13
*obtain* [4] - 37:7, 37:17, 37:20, 38:21
*obviously* [11] - 10:1, 10:21, 14:11, 22:9, 36:8, 38:17, 42:9, 49:8, 51:2, 52:22, 52:23
*occurs* [1] - 21:13
*October* [3] - 1:6, 3:1, 65:3
*OF* [1] - 1:1
*office* [1] - 56:15
*officers* [1] - 39:14
*Official* [1] - 1:22
*OH* [1] - 2:15
*once* [4] - 34:3, 34:19, 46:9, 59:8
*one* [29] - 9:25, 10:3, 10:5, 10:6, 10:8, 10:12, 10:24, 12:3, 13:10, 14:12, 18:3, 24:9, 25:24, 27:10, 30:1, 30:11, 30:12, 32:4, 32:9, 34:13, 35:7, 45:20, 49:9, 51:12, 53:11, 56:5, 56:19, 59:22
*One* [2] - 2:17, 23:9
*one-and-a-half* [1] - 30:1
*ones* [1] - 50:18
*ongoing* [2] - 16:22, 41:16
*opportunities* [1] - 36:13
*opportunity* [1] - 48:16
*opposite* [1] - 31:8
*optimistic* [1] - 45:8
*oral* [5] - 62:3, 62:7, 62:11, 62:12, 63:1
*order* [11] - 7:24, 12:12, 13:1, 29:6, 31:23, 32:19, 37:5, 58:24, 59:17, 60:4, 61:16
*ordering* [1] - 10:4
*orders* [5] - 41:21, 58:6, 60:9, 60:15, 60:25
*original* [1] - 50:14
*Orleans* [1] - 1:19
*OSC* [1] - 58:16
*otherwise* [1] - 25:14,

61:2
*ought* [2] - 50:18, 54:1
*outright* [1] - 38:21
*outset* [1] - 14:11
*outside* [1] - 42:14
*overlapping* [1] - 21:2
*overruled* [1] - 14:22
*Oxford* [1] - 2:17

## P

*p.m* [1] - 41:4
*Page* [5] - 1:9, 19:11, 25:11, 60:18
*PAREKH* [1] - 58:14
*Parekh* [1] - 58:15
*Park* [1] - 2:11
*Parkway* [1] - 1:12
*part* [4] - 5:3, 41:2, 52:14
*partially* [1] - 62:20
*participate* [1] - 37:11
*particular* [10] - 5:15, 13:20, 17:14, 23:24, 24:6, 24:12, 33:7, 33:9, 33:15, 36:21
*particularly* [2] - 24:7, 33:1
*parties* [31] - 4:7, 6:3, 8:8, 11:2, 12:7, 12:19, 14:2, 14:11, 14:14, 14:16, 14:19, 15:5, 15:6, 15:20, 18:13, 19:2, 19:4, 22:13, 22:25, 23:6, 26:18, 35:25, 36:9, 36:24, 45:14, 46:13, 49:9, 49:15, 49:22, 50:18, 59:14
*PARTIES* [1] - 3:1
*party* [5] - 14:14, 23:24, 26:13, 26:18, 38:1
*past* [2] - 46:9, 52:25
*Paulette* [2] - 58:11, 60:15
*Pause* [1] - 57:19
*payors* [1] - 14:14
*PC* [1] - 1:14
*penalties* [1] - 37:11
*pending* [3] - 61:18, 62:4, 63:2
*Pennsylvania* [3] - 1:16, 2:4, 2:18
*people* [10] - 3:20, 11:9, 13:12, 23:4, 40:23, 42:8, 43:11, 58:7, 62:21, 62:22
*percent* [6] - 9:1, 28:17, 30:14, 30:16,

30:17
**perfect** [2] - 35:8, 51:6
**perhaps** [1] - 37:24, 52:7
**period** [2] - 7:6, 35:8
**periods** [1] - 6:10
**permission** [2] - 37:15, 45:19
**permissive** [1] - 38:10
**permit** [1] - 22:17
**permitted** [1] - 38:20
**person** [10] - 9:16, 12:25, 13:7, 13:11, 13:13, 13:23, 23:12, 34:10, 50:16, 50:17
**personal** [4] - 23:25, 34:8, 63:13, 63:21
**persons** [2] - 9:16, 13:7
**perspective** [1] - 11:21
**pertinent** [1] - 24:7
**Pharma** [1] - 2:9
**Pharmaceutical** [1] - 2:8
**Pharmaceuticals** [3] - 2:8, 4:12, 47:25
**pharmacy** [2] - 4:17, 27:9
**Philadelphia** [2] - 1:16, 2:4
**phone** [4] - 3:14, 33:25, 46:23, 51:21
**phrase** [1] - 21:20
**PI** [1] - 24:5
**picking** [2] - 27:8, 29:20
**picture** [1] - 16:2
**Piedmont** [1] - 2:7
**PIETRAGALLO** [1] - 2:16
**Pittsburgh** [1] - 2:18
**place** [3] - 6:4, 14:8, 34:24
**Plaintiff** [3] - 1:13, 1:16, 1:19
**plaintiff** [17] - 6:20, 12:16, 14:7, 18:4, 26:23, 27:9, 27:16, 32:18, 32:22, 38:19, 46:9, 48:3, 48:10, 48:21, 53:14, 56:2, 63:21
**plaintiff's** [1] - 61:3
**plaintiffs** [47] - 3:15, 3:17, 3:24, 4:3, 5:14, 6:5, 6:11, 7:13, 7:16, 10:6, 11:7, 13:6, 13:13, 15:12, 15:15, 17:13, 17:18, 19:1,

22:18, 22:19, 23:15, 29:8, 29:16, 29:23, 30:25, 33:5, 36:20, 37:6, 37:14, 37:16, 37:20, 37:25, 49:19, 52:7, 53:1, 53:14, 54:1, 54:17, 55:8, 56:10, 61:6, 61:23, 63:5, 63:12, 63:25, 64:8
**plaintiffs'** [14] - 3:18, 6:7, 7:3, 8:9, 10:9, 26:24, 32:2, 45:25, 51:8, 52:25, 54:1, 61:1, 61:12, 61:24
**plan** [1] - 13:21
**plus** [1] - 11:9
**point** [16] - 6:22, 8:19, 11:9, 13:13, 13:22, 18:21, 21:8, 29:10, 31:20, 41:10, 42:13, 47:15, 47:24, 48:5, 48:6, 50:14
**police** [1] - 39:14
**Ponce** [1] - 2:20
**portion** [2] - 31:14, 47:4
**position** [12] - 39:23, 40:9, 41:19, 41:22, 42:7, 42:12, 46:3, 48:23, 59:10, 60:23, 62:6, 64:1
**possibility** [1] - 25:4
**possible** [3] - 42:18, 42:19, 51:4
**possibly** [1] - 16:18
**practical** [4] - 11:13, 37:23, 41:8, 46:18
**practice** [1] - 30:22
**pre** [1] - 41:19
**pre-stages** [1] - 41:19
**precluded** [1] - 25:8
**predisposes** [1] - 20:11
**prefer** [1] - 17:25
**premature** [2] - 45:2, 48:8
**prepared** [2] - 4:21, 5:1
**presented** [2] - 19:20, 39:15
**preserve** [3] - 47:19, 47:20, 48:18
**presumably** [1] - 34:22
**presuppose** [1] - 22:2
**pretty** [2] - 32:24, 36:7
**prevent** [1] - 26:14
**previously** [1] - 11:18
**priorities** [1] - 14:6

**prioritization** [2] - 13:19, 34:18
**prioritized** [1] - 11:8
**privately** [1] - 64:12
**problem** [7] - 10:19, 20:10, 30:21, 30:25, 40:5, 62:15
**problematic** [1] - 10:21
**problems** [2] - 14:17, 44:12
**procedural** [1] - 49:3
**procedure** [2] - 9:16, 36:21
**Procedure** [6] - 26:12, 26:15, 26:16, 37:7, 40:9, 44:22
**procedures** [1] - 36:21
**proceed** [2] - 6:15, 14:6
**Proceedings** [1] - 1:24
**process** [6] - 16:19, 17:1, 17:5, 39:11, 39:16, 41:15
**produce** [1] - 48:1
**produced** [4] - 1:25, 15:4, 21:13, 54:21
**producing** [1] - 5:14
**product** [7] - 24:6, 27:1, 27:6, 28:11, 28:12, 28:16, 28:18
**production** [1] - 5:8
**productions** [1] - 5:13
**PRODUCTS** [1] - 1:3
**products** [2] - 27:2, 41:24
**progress** [2] - 14:19, 61:24
**pronounce** [1] - 21:14
**proper** [1] - 47:22
**proposal** [1] - 63:24
**propose** [2] - 7:14, 64:5
**proposed** [8] - 15:12, 15:14, 19:9, 25:24, 28:21, 33:9, 63:19
**proposing** [2] - 31:9
**protect** [1] - 29:6
**protected** [1] - 28:1
**protocol** [32] - 6:2, 8:10, 9:2, 9:12, 9:13, 12:11, 13:4, 16:3, 16:4, 16:19, 17:9, 17:14, 17:16, 18:9, 18:19, 19:2, 19:10, 21:8, 22:16, 23:22, 24:22, 30:2, 30:13, 35:17, 35:18, 35:19, 36:7, 49:24, 50:4,

50:21, 55:15
**protocols** [1] - 5:19
**provide** [3] - 25:5, 26:12, 34:21
**provided** [2] - 6:10, 33:4
**provides** [1] - 7:24
**providing** [3] - 6:13, 6:17, 7:3
**provision** [8] - 8:11, 8:20, 22:15, 24:22, 25:4, 25:7, 25:9, 28:23
**provisions** [3] - 18:3, 23:22, 47:6
**purely** [1] - 43:1
**purposes** [1] - 55:4
**pursuant** [3] - 18:21, 18:25, 46:15
**push** [1] - 41:11
**push-back** [1] - 41:11
**put** [7] - 17:20, 18:18, 23:15, 30:14, 46:23, 50:22, 52:22
**puts** [1] - 24:24

**Q**

**QI** [1] - 28:16
**quarantine** [1] - 62:14
**questioner** [3] - 8:17, 8:22, 9:8
**questioning** [4] - 23:15, 23:21, 24:9, 27:6
**questions** [16] - 4:25, 13:9, 14:9, 19:15, 21:19, 22:22, 24:6, 24:10, 24:12, 25:23, 27:4, 27:19, 35:2, 44:24, 62:8, 62:10
**quote** [1] - 56:24

**R**

**raise** [3] - 10:16, 10:18, 18:13
**raised** [9] - 15:24, 17:18, 18:16, 18:20, 35:18, 36:1, 55:16, 56:21, 61:18
**raises** [1] - 35:21
**raising** [3] - 15:2, 17:10, 45:22
**RASPANTI** [1] - 2:16
**rather** [2] - 8:2, 13:15
**RE** [1] - 1:3
**reach** [4] - 22:14, 52:11, 53:20, 53:21
**reached** [1] - 51:12

**reaction** [2] - 54:17, 54:22
**read** [7] - 5:2, 8:10, 14:11, 46:20, 46:21, 47:4
**ready** [2] - 16:24, 17:5
**real** [3] - 26:7, 38:18, 48:14
**reality** [3] - 41:8, 45:23, 46:12
**realize** [2] - 39:6, 39:9
**realized** [1] - 30:22
**really** [11] - 5:17, 6:22, 12:7, 20:16, 26:4, 31:20, 42:8, 45:4, 45:5, 62:9, 62:19
**reason** [2] - 23:9, 42:20
**reasonable** [3] - 6:22, 7:17, 25:14
**reasonably** [3] - 29:23, 45:3, 56:5
**reasons** [1] - 12:3
**received** [4] - 4:20, 7:2, 15:14, 60:6
**receiving** [1] - 52:5
**recipe** [1] - 9:4
**recognition** [2] - 12:4, 50:2
**recognizes** [1] - 35:21
**record** [2] - 3:11, 3:12
**recorded** [1] - 1:24
**records** [1] - 61:12
**redepose** [4] - 28:24, 29:4, 29:13, 30:4
**reduce** [2] - 11:18, 11:25
**refused** [1] - 38:21
**regard** [5] - 14:12, 36:19, 46:25, 51:5, 59:15
**regarding** [4] - 5:21, 22:22, 27:4, 47:4
**related** [1] - 27:11
**relates** [3] - 24:21, 45:1, 46:1
**remain** [1] - 14:18
**remainder** [1] - 60:23
**remains** [2] - 14:24, 15:9
**remember** [1] - 27:17
**remind** [1] - 16:18
**reminds** [1] - 12:10
**remove** [1] - 59:15
**reopened** [1] - 62:20
**rep** [1] - 34:11
**repeat** [2] - 21:19, 22:5
**repeated** [1] - 21:3
**Reporter** [1] - 1:22

**reporter** [4] - 3:7, 9:14, 22:5, 58:2
**REPORTER** [2] - 3:10, 58:3
**reporters** [1] - 9:15
**representative** [3] - 7:17, 11:14, 44:2
**representatives** [6] - 7:4, 11:11, 11:22, 40:21, 42:17, 45:14
**represented** [1] - 54:20
**reps** [1] - 31:4
**request** [10] - 10:20, 37:8, 37:17, 37:20, 38:22, 39:11, 45:18, 54:15, 59:12, 59:16
**requested** [2] - 6:12, 62:3
**requesting** [2] - 60:9, 60:24
**requests** [6] - 14:13, 14:22, 14:23, 15:1, 47:21, 50:23
**require** [3] - 38:3, 38:14, 45:16
**required** [3] - 12:13, 12:21, 47:6
**requirements** [3] - 45:16, 49:3, 62:24
**research** [1] - 40:19
**reserving** [1] - 24:16
**reside** [1] - 45:15
**resides** [2] - 37:6, 37:10
**resolve** [1] - 15:22
**resolved** [5] - 16:3, 26:6, 45:9, 50:24, 53:4
**respect** [7] - 18:18, 25:19, 38:11, 38:25, 58:23, 59:9, 60:7
**respond** [1] - 15:16
**responded** [1] - 58:8
**responsible** [1] - 13:7
**responsive** [2] - 15:3, 53:3
**restrictions** [2] - 38:5, 62:21
**result** [1] - 26:2
**retailer** [1] - 4:17
**retailers** [1] - 24:2
**retreading** [1] - 19:6
**returnable** [2] - 60:9, 60:16
**review** [1] - 56:24
**revisit** [1] - 55:17
**rights** [1] - 27:22
**ripe** [1] - 17:20
**Rite** [1] - 4:18

**Rivero** [1] - 3:25
**RIVERO** [3] - 2:19, 2:20, 3:25
**Road** [1] - 2:7
**ROBERT** [1] - 1:9
**roll** [1] - 12:7
**rolling** [1] - 5:14
**room** [1] - 30:19
**Roseland** [1] - 1:13
**Rule** [5] - 14:13, 14:23, 50:22, 54:14
**rule** [1] - 41:20
**Rules** [5] - 26:11, 26:15, 26:16, 40:8, 44:21
**rules** [2] - 26:19, 26:21
**ruling** [3] - 29:21, 31:6, 54:22
**run** [2] - 12:16, 12:18
**run-of-the-mill** [2] - 12:16, 12:18

## S

**sampling** [1] - 55:3
**sand** [2] - 42:23, 47:24
**Sarah** [2] - 3:5, 4:17
**SARAH** [1] - 2:10
**Saturday** [2] - 15:13, 15:15
**saw** [2] - 18:4, 52:2
**schedule** [9] - 5:7, 6:19, 34:17, 34:20, 35:3, 56:20, 57:14, 63:20, 63:23
**scheduled** [3] - 6:8, 14:4, 63:13
**scheduling** [7] - 6:2, 10:1, 13:23, 36:13, 36:23, 43:9, 63:12
**SCHNEIDER** [62] - 1:8, 3:3, 3:7, 3:9, 3:11, 3:18, 4:4, 4:19, 5:17, 6:23, 7:20, 8:25, 9:11, 10:4, 12:2, 13:25, 15:23, 16:11, 17:23, 19:12, 21:12, 21:22, 21:25, 22:11, 23:14, 23:20, 25:17, 26:6, 26:22, 27:15, 28:5, 28:8, 28:16, 28:22, 29:11, 30:20, 31:3, 32:16, 35:14, 36:6, 36:16, 39:4, 42:3, 42:24, 43:13, 44:4, 46:17, 48:12, 48:15, 49:7, 51:20, 52:19, 53:10, 54:6, 56:12, 56:19,

57:4, 57:8, 57:11, 57:14, 57:17, 57:20
**Schneider** [3] - 3:4, 3:12, 63:8
**seamless** [1] - 34:12
**seamlessly** [2] - 9:25, 11:16
**second** [6] - 23:2, 31:24, 60:3, 60:8, 60:20
**secrets** [2] - 39:13, 39:17
**see** [15] - 16:3, 16:23, 19:10, 20:1, 20:9, 22:14, 25:7, 35:20, 36:16, 42:20, 49:25, 50:25, 54:7, 56:22, 63:15
**seeing** [1] - 64:5
**seek** [2] - 60:4, 60:20
**seeking** [3] - 58:20, 58:24, 59:19
**seem** [4] - 17:20, 22:14, 40:16, 43:19
**selection** [1] - 11:21
**send** [3] - 63:24, 64:16, 64:18
**sense** [18] - 7:16, 8:10, 10:2, 10:5, 10:7, 12:3, 12:22, 12:25, 20:3, 30:11, 31:1, 32:7, 34:14, 35:8, 40:16, 41:13, 51:6, 53:16
**sent** [3] - 17:9, 36:12, 45:18
**separate** [1] - 20:7
**separated** [1] - 33:22
**serial** [1] - 47:20
**serious** [1] - 23:16
**seriously** [1] - 27:10
**served** [2] - 14:23, 25:13
**set** [5] - 7:6, 14:7, 38:4, 50:1, 55:14
**Seth** [10] - 4:6, 5:11, 15:11, 17:7, 31:19, 52:18, 52:20, 61:21, 63:9, 64:15
**SETH** [1] - 2:3
**sets** [1] - 13:23
**seven** [7] - 24:18, 25:22, 29:17, 29:20, 29:24, 32:11, 43:10
**seven-hour** [1] - 32:11
**seven-plus-50-percent** [1] - 29:24
**several** [2] - 5:20, 59:9
**severe** [1] - 62:21
**severely** [1] - 62:18

**shall** [1] - 31:14
**share** [1] - 56:2
**sheets** [1] - 15:4
**shift** [1] - 60:4
**short** [2] - 41:18, 56:8
**shoulders** [1] - 11:25
**show** [9] - 58:6, 58:25, 59:16, 59:17, 60:4, 60:9, 60:16, 60:25, 61:17
**showing** [1] - 30:3
**shown** [1] - 28:24
**side** [5] - 29:15, 35:9, 44:19, 45:25, 63:4
**sides** [1] - 29:16
**significantly** [1] - 11:25
**similar** [2] - 6:21, 45:17
**simply** [3] - 19:5, 47:14, 47:19
**singular** [1] - 41:10
**sitting** [1] - 30:18
**situation** [4] - 32:3, 37:19, 43:2, 46:25
**six** [6] - 41:5, 58:11, 58:13, 59:2, 59:7
**skin** [1] - 55:8
**Slater** [25] - 3:16, 3:24, 6:9, 8:18, 9:5, 9:19, 11:4, 13:5, 16:16, 17:9, 18:2, 19:13, 22:15, 23:19, 30:9, 33:23, 36:9, 39:1, 42:3, 45:3, 50:14, 51:11, 51:19, 51:22, 64:12
**SLATER** [36] - 1:11, 1:12, 3:16, 3:22, 6:9, 8:18, 9:10, 9:19, 11:4, 13:17, 16:16, 19:14, 21:18, 21:23, 22:1, 22:6, 23:18, 27:14, 30:9, 30:24, 33:23, 36:11, 39:1, 39:6, 42:7, 43:5, 43:25, 44:5, 51:11, 51:19, 51:23, 56:10, 57:24, 63:5, 64:15, 64:18
**Slater's** [2] - 53:10, 53:25
**sleeves** [1] - 12:8
**slip** [1] - 32:12
**SMITH** [4] - 57:5, 57:10, 57:13, 57:16
**smoother** [1] - 9:17
**social** [1] - 62:23
**sold** [1] - 41:24
**solely** [1] - 35:5

**someone** [4] - 28:23, 29:23, 47:2, 51:21
**sometimes** [1] - 30:7
**somewhere** [1] - 51:25
**soon** [3] - 16:8, 55:24, 62:10
**sooner** [1] - 39:9
**sophistication** [1] - 5:24
**sorry** [6] - 21:23, 25:17, 54:18, 57:4, 57:8, 61:5
**sort** [4] - 13:20, 16:2, 46:8, 50:20
**sound** [1] - 49:21
**sounds** [5] - 10:9, 32:16, 32:23, 41:7, 54:14
**space** [1] - 35:4
**speaking** [1] - 51:18
**specific** [19] - 14:10, 14:12, 20:6, 22:9, 22:22, 24:4, 24:7, 24:13, 24:19, 24:22, 25:1, 27:4, 27:7, 28:5, 28:18, 29:9, 29:14, 34:18, 44:24
**specifically** [1] - 34:5
**specifics** [1] - 44:21
**spend** [1] - 21:15
**split** [1] - 32:13
**spoken** [1] - 9:20
**stage** [1] - 46:9
**stages** [1] - 41:19
**stand** [2] - 14:20, 15:7
**standard** [1] - 36:7
**standing** [1] - 39:14
**stands** [1] - 63:19
**STANOCH** [2] - 1:15, 3:23
**Stanoch** [1] - 3:23
**start** [21] - 6:5, 6:8, 6:18, 6:25, 7:9, 7:17, 7:21, 7:22, 7:25, 8:6, 12:7, 12:8, 18:15, 32:7, 35:10, 41:4, 43:21, 48:25, 50:9, 52:5, 54:13
**started** [9] - 6:3, 6:13, 6:16, 11:8, 12:3, 19:15, 39:10, 48:7, 50:13
**starting** [3] - 3:15, 11:9, 60:18
**starts** [1] - 12:17
**state** [13] - 39:13, 39:17, 51:1, 51:4, 51:10, 52:21, 53:21, 54:2, 54:4, 56:2,

61:19, 62:14, 62:16
**statement** [2] - 59:10, 60:23
**statements** [1] - 16:23
**States** [7] - 10:25, 11:15, 39:7, 40:1, 40:2, 41:24, 41:25
**states** [2] - 53:22, 62:13
**STATES** [3] - 1:1, 1:8, 1:9
**status** [3] - 52:1, 53:12, 55:17
**STATUS** [1] - 1:5
**stay** [1] - 43:11
**stayed** [1] - 56:23
**Ste** [1] - 2:20
**steal** [1] - 21:20
**stenography** [1] - 1:24
**step** [1] - 44:18
**Steve** [1] - 59:8
**STEVEN** [1] - 2:6
**Steven** [1] - 58:21
**Stewart** [1] - 60:12
**STEWART** [1] - 60:12
**sticky** [1] - 35:22
**still** [14] - 13:18, 17:2, 17:5, 18:8, 19:19, 23:13, 36:9, 38:14, 39:16, 44:1, 44:11, 46:10, 58:8, 59:3
**stipulation** [1] - 59:12
**Stooli** [1] - 44:23
**stop** [1] - 16:8
**straightforward** [2] - 6:6, 32:25
**streamlined** [1] - 19:8
**Street** [4] - 1:15, 1:18, 2:3, 2:14
**stuff** [3] - 21:21, 22:3, 36:7
**subject** [8] - 28:13, 28:25, 29:12, 29:14, 33:6, 33:8, 46:13, 49:18
**submission** [5] - 15:20, 42:5, 50:2, 52:22, 54:20
**submissions** [1] - 5:2
**submit** [3] - 45:3, 63:19, 64:1
**submitted** [3] - 14:12, 58:15
**subpoenaed** [1] - 37:25
**subsequently** [1] - 27:21
**substance** [1] - 14:24
**substantive** [1] -

21:21
**success** [1] - 51:12
**suddenly** [1] - 52:5
**sufficient** [2] - 32:22, 55:4
**sufficiently** [1] - 58:8
**suggest** [1] - 22:24
**suggested** [2] - 19:1, 38:8
**Suite** [3] - 1:15, 2:7, 2:11
**suite** [1] - 2:14
**summarize** [1] - 54:10
**summary** [1] - 55:23
**suppose** [4] - 25:4, 31:24, 43:1, 47:9
**supposed** [1] - 5:7
**surprise** [1] - 17:2
**surprised** [4] - 16:23, 18:2, 18:4, 35:9
**Susan** [3] - 59:3, 59:11, 59:24

## T

**table** [1] - 28:11
**talks** [1] - 53:14
**team** [5] - 3:18, 13:12, 34:19, 52:15
**technical** [1] - 10:2
**technology** [1] - 6:21
**teed** [1] - 16:25
**telephone** [1] - 1:5
**TELEPHONE** [1] - 3:1
**ten** [2] - 38:14, 38:16
**terms** [6] - 6:2, 11:13, 20:3, 23:21, 23:23, 42:22
**terrific** [1] - 5:17
**testified** [1] - 27:9
**testify** [1] - 32:23
**testimony** [19] - 12:15, 19:24, 20:1, 20:13, 21:4, 21:21, 22:16, 24:25, 25:5, 25:12, 27:1, 31:14, 31:15, 32:11, 32:12, 34:8, 34:9, 37:12, 42:18
**Teva** [11] - 2:8, 2:8, 4:9, 48:18, 48:20, 48:23, 49:6, 50:17, 56:21, 58:22, 63:18
**THE** [5] - 1:1, 1:8, 1:9, 3:6, 3:8
**The court** [32] - 3:10, 3:19, 7:6, 7:8, 7:24, 14:22, 15:13, 16:17, 16:20, 16:21, 16:25, 17:10, 19:18, 26:4, 35:21, 38:6, 40:18,

41:20, 41:22, 42:1, 42:4, 42:20, 44:9, 44:20, 44:24, 47:20, 51:4, 57:10, 58:1, 58:3, 61:10, 61:25
**themselves** [1] - 27:7
**Theodore** [1] - 60:13
**thereabouts** [2] - 14:4, 18:1
**thereof** [1] - 25:14
**they've** [6] - 9:22, 17:18, 37:24, 39:11, 41:12, 52:3
**thinking** [1] - 25:19
**third** [4] - 14:14, 31:4, 37:25, 38:1
**third-party** [2] - 14:14, 38:1
**THORNBURG** [1] - 2:10
**threatening** [1] - 40:6
**three** [9] - 7:18, 14:1, 17:23, 18:17, 24:1, 33:7, 33:11, 33:13, 54:21
**throwing** [1] - 42:11
**timeframe** [1] - 6:16
**timing** [2] - 11:22, 14:4
**today** [12] - 5:19, 10:16, 10:19, 17:16, 33:25, 35:24, 55:23, 57:15, 58:5, 62:6, 63:3, 63:8
**toes** [1] - 44:18
**together** [3] - 11:12, 11:24, 19:5
**took** [1] - 34:10
**top** [1] - 19:11
**topic** [1] - 32:24
**topics** [6] - 32:2, 32:4, 32:8, 32:9, 32:10, 33:18
**totally** [1] - 8:5
**toward** [1] - 7:11
**towards** [2] - 52:12, 55:21
**track** [1] - 5:9
**transcript** [1] - 1:25
**transcription** [1] - 1:25
**translated** [1] - 30:22
**translators** [1] - 30:18
**Traurig** [2] - 4:9, 58:22
**TRAURIG** [1] - 2:5
**travel** [2] - 38:3, 38:15
**traveling** [1] - 38:16
**tremendous** [1] - 51:12
**trial** [1] - 13:21

**tried** [2] - 34:16, 52:25
**Trischler** [4] - 4:12, 13:14, 44:17, 48:23
**TRISCHLER** [5] - 2:17, 4:11, 44:17, 47:11, 48:13
**true** [1] - 54:19
**try** [11] - 11:13, 11:17, 11:18, 19:5, 24:22, 25:21, 46:7, 50:18, 52:12, 53:3, 53:7
**trying** [6] - 11:10, 25:9, 34:20, 39:24, 41:13, 52:23
**Tuesday** [1] - 35:11
**turn** [1] - 35:10
**twice** [1] - 12:25
**two** [8] - 10:5, 10:8, 14:1, 17:21, 21:15, 24:2, 32:9, 35:25
**typing** [1] - 46:23

## U

**U.S** [2] - 46:6, 48:25
**ULMER** [1] - 2:13
**ultimately** [5] - 11:19, 41:21, 42:15, 43:20, 44:10
**umbrella** [1] - 34:11
**under** [9] - 5:6, 17:11, 28:2, 34:11, 39:12, 40:8, 40:17, 41:23, 42:21
**understood** [2] - 33:3, 46:25
**unexpectedly** [1] - 44:11
**unilaterally** [2] - 6:13, 6:17
**unique** [1] - 38:6
**United** [7] - 10:25, 11:15, 39:7, 40:1, 40:2, 41:24, 41:25
**UNITED** [3] - 1:1, 1:8, 1:9
**unless** [2] - 5:2, 37:14
**unquestionably** [1] - 49:21
**unquote** [1] - 56:24
**unreasonable** [1] - 34:24
**unwilling** [1] - 47:25
**unworkable** [1] - 42:9
**up** [20] - 7:23, 8:6, 9:18, 12:7, 16:21, 16:25, 17:21, 18:22, 27:6, 28:13, 28:18, 29:10, 32:13, 34:17, 42:11, 43:11, 51:14,

55:24
**update** [2] - 61:1, 63:18
**updated** [1] - 53:11
**updates** [4] - 59:10, 60:4, 60:7, 61:8
**USA** [1] - 2:8
**usurp** [1] - 26:14

## V

**Valsartan** [10] - 3:13, 19:3, 19:7, 19:23, 20:3, 20:4, 22:2, 22:8, 22:10, 22:23
**VALSARTAN** [1] - 1:3
**vast** [2] - 24:10, 25:22
**version** [1] - 41:18
**via** [1] - 6:21
**Via** [1] - 1:5
**VIA** [1] - 3:1
**VICTORIA** [1] - 2:6
**Victoria** [3] - 4:8, 48:18, 63:17
**video** [17] - 23:11, 23:12, 37:12, 37:16, 38:15, 38:16, 41:1, 43:2, 43:8, 43:16, 43:17, 43:19, 43:23, 49:11, 49:17, 50:7, 55:20
**view** [1] - 24:3
**Vine** [1] - 2:14
**Virginia** [2] - 59:5, 60:1
**VOICE** [1] - 51:18
**voluntarily** [1] - 47:12
**voluntary** [1] - 38:17

## W

**wait** [3] - 39:2, 56:11, 56:16
**waiting** [3] - 13:18, 35:1, 61:12
**waived** [3] - 35:18, 36:2, 55:16
**Walgreens** [5] - 27:17, 27:18, 27:19, 27:22, 28:1
**wants** [5] - 10:6, 23:16, 44:6, 44:19, 44:20
**Washington** [1] - 57:10
**Wednesday** [1] - 1:6
**week** [7] - 7:13, 14:1, 34:22, 34:23, 51:14, 61:9, 63:25
**weekend** [1] - 61:7

**weeks** [5] - 12:19, 17:21, 32:4, 32:14, 35:25

**Weiner** [1] - 60:13

**WEINER** [1] - 60:13

**well-aware** [1] - 38:6

**Whiteley** [1] - 4:3

**WHITELEY** [3] - 1:17, 1:18, 4:2

**whiteley** [1] - 4:4

**whole** [1] - 58:5

**wholeheartedly** [1] - 5:19

**wholesaler** [2] - 4:14, 24:2

**willing** [3] - 40:25, 43:18, 48:3

**witness** [47] - 12:21, 13:1, 19:22, 20:12, 21:13, 22:18, 24:4, 24:11, 25:5, 25:7, 25:8, 26:20, 27:11, 27:23, 28:3, 28:25, 29:4, 29:14, 29:18, 29:25, 30:4, 31:10, 32:3, 32:9, 33:17, 33:18, 34:1, 34:2, 34:6, 34:7, 35:5, 35:6, 38:1, 38:12, 38:19, 38:22, 43:3, 43:23, 46:22, 46:23, 47:9, 47:12, 48:2, 49:15, 49:16

**witness's** [1] - 24:25

**witnesses** [28] - 10:25, 12:14, 12:21, 18:21, 19:3, 29:19, 30:19, 32:1, 34:18, 34:19, 35:9, 39:22, 39:25, 40:7, 40:22, 41:1, 41:16, 41:22, 42:14, 43:18, 44:7, 44:13, 46:22, 47:1, 48:1, 48:22, 48:25

**word** [1] - 41:12

**world** [2] - 38:10, 41:2

**worried** [1] - 28:12

**worry** [2] - 16:14, 47:2

13:11, 13:12, 37:13, 37:19, 37:24, 38:14, 39:6, 40:15, 41:10, 46:25

**zone** [1] - 43:9

**zones** [2] - 11:16, 41:8

**Zoom** [1] - 6:21

## Y

**yard** [1] - 16:9

**year** [1] - 7:11

**yesterday** [6] - 10:15, 15:14, 15:16, 15:18, 34:20, 34:21

## Z

**zero** [1] - 53:16

**ZHP** [14] - 2:4, 4:7,