# Exhibit K

KeyCite Yellow Flag - Negative Treatment
Distinguished by Crosmun v. Trustees of Fayetteville Technical Community College, N.C.App., August 6, 2019

2012 WL 2526982
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Abingdon Division.

Robert ADAIR, etc., Plaintiff,
v.
EQT PRODUCTION
COMPANY, Defendant.
Eva Mae Adkins, Etc., Plaintiff,
v.
EQT Production Company, Defendant.

Nos. 1:10CV00037, 1:10CV00041.
|
June 29, 2012.

**Attorneys and Law Firms**

Daniel E. Seltz, Lieff, Cabraser, Heimann & Bernstein, LLP, New York, NY, for Plaintiffs.

Wade W. Massie, Penn, Stuart & Eskridge, Abingdon, VA, for Defendant.

**OPINION AND ORDER**

JAMES P. JONES, District Judge.

***1** In these related cases, the defendant has duly objected to the magistrate judge's orders requiring production of employee emails without an opportunity for the defendant to first review them for privileged and confidential matters and without shifting the cost of that review to the plaintiffs. Alternatively, the defendant requests that any discovery of the emails be postponed until motions for class certification are determined so that the court might then better decide the need for any production or cost-shifting.

After briefing by the parties, I will overrule the defendant's objections, but with minor modifications to the magistrate judge's orders to better protect the defendant's legitimate interests.

**I. Background.**

These two cases assert claims against EQT Production Company ("EQT"), a multi-state oil and gas producer, related to its production of coalbed methane natural gas ("CBM") from the plaintiffs' property. Plaintiff Adair's interest in CBM was forced-pooled under the Virginia Gas and Oil Act and as a so-called "deemed lessor," he seeks damages for allegedly excessive deductions from royalties paid into escrow. Plaintiff Adkins voluntarily leased her CBM interest to EQT and she accuses EQT of underpaying royalties, in particular by improperly deducting certain post-production costs. Both plaintiffs seek class certification of their claims.

Discovery was initially stayed in these cases pending determination of motions to dismiss. After resolution of the motions to dismiss, the stay was lifted and the plaintiffs served written discovery. There was no bifurcation of discovery between class certification and the merits phases of the litigation and EQT was ordered by the magistrate judge (who has been referred the supervision of discovery matters) to respond to the discovery requests.

The parties jointly moved for entry of agreed-upon protective orders ("Protective Order"), which the court approved in each case .[1] The Protective Order allows a disclosing party to designate material, including electronically stored information ("ESI"), as confidential. Materials designated confidential may be used "only for the purposes of this action." The Protective Order also limits the persons to whom confidential material may be further disclosed.

The parties also jointly moved for, and the court entered, a "Protective Order Allowing Clawback Rights" ("Clawback Order"). The Clawback Order states that "in order to facilitate discovery and avoid delays, ... [t]he producing party is specifically authorized to produce Protected Documents without a prior privilege review, and the producing party shall not be deemed to have waived any privilege or production in not undertaking such a review." "Protected Documents" are defined by the Clawback Order as "any information or documents that are subject to an objection on the basis of attorney-client privilege or the work-product doctrine or any other privilege or immunity against discovery."

**derol *2** EQT proceeded to produce certain documents responsive to some of the plaintiffs' requests, including contracts, pooling

orders, and well and lease files. However, EQT objected to other discovery on various grounds, although EQT did not specifically object on the ground of the cost of production of its ESI. The magistrate judge overruled EQT's objections and with some modifications, required it to produce the documents.

Two days after the magistrate judge issued her ruling, EQT filed the present Motion for a Protective Order on Production of Emails and Other Electronically Stored Information. EQT asked the magistrate judge either to find that production was not necessary or to shift the costs of reviewing and producing ESI to the plaintiffs. EQT also asked the court to suspend production of ESI pending a determination on class certification.

In support of its motion, EQT submitted the Declaration of James Perkins. Perkins is a principal with Innovative Discovery, LLC ("ID"), which EQT has retained for litigation support services, including the processing and producing of ESI. EQT has provided ID with electronic copies of emails which EQT retrieved from its records. These files contain approximately 370 gigabytes ("GB") of data, estimated to contain 5,550,000 documents.

In its initial discovery responses, EQT had identified eight employees whose emails would be most likely to contain relevant information and the plaintiffs agreed to limit email discovery to those individuals. Perkins represents that the emails of those persons contain 68.86 GB of data and that it would cost $18,936.50 to process that data.[2] Perkins estimates that a document-by-document review of these emails by contract attorneys for privilege and "responsiveness" at a market rate of $49 per hour would cost $759,181.50. He opines that review using "analytics"—a method of categorizing and organizing document review—might reduce the cost of review to $421,767, plus an incremental cost of $15,493.

Perkins also notes that ID could electronically search for potentially privileged documents using search terms, remove the documents responsive to those terms, and produce the remaining documents without individual review. Perkins estimated that such a search would remove approximately 30% of the documents. The potentially privileged documents would then be reviewed. Review of the potentially privileged documents of the eight custodians would cost $160,960.52.

The magistrate judge ordered the parties to propose additional search terms that might be used to find emails particularly responsive to the plaintiffs' discovery requests and the parties did so. These limitations included such search terms as "deduct* and royalt* " and "post w/5 production," as well as the names of persons involved in state regulation of CMB and others.

In her opinion on EQT's motion for a protective order, the magistrate judge determined that while it would be legally permissible to shift the costs of review and production, either in whole or in part, to the plaintiffs under Federal Rule of Civil Procedure 26(b)(2)(C), such cost-shifting was unnecessary here. Instead, the magistrate judge found that the costs of production of the emails of the eight key employees could be satisfactorily mitigated by:

*3 (1) Using the limiting subject-matter search terms as proposed by the parties in order to find and produce only those emails likely relevant to the subject matter of these cases;

(2) Limiting the period of review from January of 2005 to the present, rather than the unlimited time period as requested;

(3) Removing any emails to and from a list of identified inside and outside legal counsel for EQT, in order to minimize possible privileged matters; and

(4) Production of the remaining documents without prior individual document review.

The magistrate judge reasoned that since all of the emails produced would be designated confidential and protected from disclosure under the standing Protective Order and any privileged emails included in the production would be protected from waiver under the Clawback Order, review of the limited emails without document-by-document review would be permissible. Production without prior review would save the bulk of the cost estimated by Perkins and relied upon by EQT in its motion.

Based on these findings, and the limitations directed, the magistrate judge ordered the defendant to produce the emails to the plaintiff at its own cost. See Adair v. EQT Prod. Co., No. 1:10cv00037, 2012 WL 1965880, at *4–5 (W.D.Va. May 31, 2012) (Sargent, J.)

II. Analysis.

A magistrate judge's ruling as to nondispositive matters may be reversed only on a finding that the order is clearly erroneous or contrary to law. 28 U.S.C.A. § 636(b)(1)(A) (West 2006); Fed.R.Civ.P. 72(a). An order is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Minyard Enters., Inc. v. Se. Chem. & Solvent Co .,* 184 F.3d 373, 380 (4th Cir.1999) (internal quotation marks and citation omitted). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United Mktg. Solutions, Inc. v. Fowler,* No. 1:09–CV–1392–GBL–TCB, 2011 WL 837112, at *2 (E.D.Va. Mar. 2, 2011) (internal quotation marks and citation omitted). Decisions of a magistrate judge on discovery issues normally should be accorded considerable deference. *In re Outsidewall Tire Litig.,* 267 F.R.D. 466, 470 (E.D.Va.2010).

This case highlights some of the more complicated and contentious issues at play in present day civil litigation. As the magistrate judge noted, the proliferation of ESI and its production have dramatically increased the burdens, financial and otherwise, associated with discovery. It is clear that the magistrate judge sought to find an efficient, reasonable, and fair solution to the particular difficulties in this case.

EQT objects to the magistrate judge's determination that cost-shifting is not necessary because production can proceed using electronic searches for responsiveness and privilege and without further individual review.[3] Such an order, EQT argues, infringes on its attorney-client privilege and work product protections and is not justified under either Rule 26 or Federal Rule of Evidence 502.[4] EQT's argument is essentially that electronic searching is not adequate to protect its rights and that the magistrate judge's order effectively requires it to produce possible privileged and other confidential documents. EQT claims that only individual review of each of the documents prior to production would be an adequate protection from unwarranted disclosure.

 *4 EQT makes this argument despite previously offering the process proposed by the magistrate judge as an alternative method of review. In EQT's Motion for a Protective Order, it stated, "It would also be possible to exclude potentially privileged documents through the use of search terms, like the names of in-house counsel. The remainder of the documents could be produced without review for responsiveness or privilege. The potentially privileged documents would then be individually reviewed by contract attorneys." (Mot. for Protective Order 8.) EQT argues that the Protective Order and the Clawback Order are insufficient to protect its rights to attorney-client privilege and confidentiality despite having moved, jointly with the plaintiffs, for the entry of the orders.[5]

EQT's arguments are misplaced. While it is correct to state that Rule 26 limits discovery to "nonprivileged" and relevant information, the fact is that the plaintiffs do not seek, and the magistrate judge has not ordered, EQT to produce privileged or nonrelevant information. The order simply recognizes, in line with Rule 26 and Rule 502, that in the world of ESI, new perspectives and approaches are needed to complete discovery in an efficient and reasonable manner. *See Hopson v. Mayor & City Council of Balt.,* 232 F.R.D. 228, 232 (D.Md.2005) (noting that courts faced with the challenges of electronic discovery have adopted innovative method to deal with the issues). One possible resolution relies on electronic searching to narrow the universe of relevant documents and to ferret out potentially privileged documents. The recent amendments to Rules 26 and 502 contemplate such an approach.

However, this approach would not be appropriate without the existence of the Protective Order and Clawback Order. The Orders protect any inadvertently produced privileged documents from waiver and any nonrelevant documents from use or disclosure outside this litigation. The magistrate judge's order does not require EQT to waive the privilege or the work product protection nor does it require the public disclosure of confidential documents because the Protective Order and the Clawback Order make this impossible.[6]

To be sure, there is the potential for privileged or nonrelevant documents to slip through the cracks and be turned over to the other side. EQT argues that this is the real harm it faces if the magistrate's order is allowed to stand. This is an understandable concern. However, the risk of inadvertent disclosure is present in every case, and particularly present in those cases in which the document production is of significant size. Such inadvertent production can occur and does occur whether the documents are searched and reviewed electronically or by human eyes. *See FDIC v. Marine Midland Realty Credit Corp.,* 138 F.R.D. 479, 479–480 (E.D.Va.1991) ("The inadvertent production of a privileged document is a specter that haunts every document intensive case."). EQT has not shown that the use of electronic searching would

substantially increase the number of inadvertently produced privileged documents such that electronic searching is an unacceptable form of document review.

**\*5** It should be emphasized that EQT does not complain of the cost or burden of retrieving the emails in question. It has already retrieved the emails.[7] EQT's position is that the only reasonable search for privileged and responsive documents is done by human beings on an individual document basis. As the bulk of trending case law and the recent amendments to the rules indicate, this is an untenable position. *See Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 290 (S.D.N.Y.2003) ("[M]any parties to document-intensive litigation enter into so-called 'claw-back' agreements that allow the parties to forego privilege review altogether in favor of an agreement to return inadvertently produced privileged documents."); *Rajala v. McGuire Woods, LLP,* Civil Action No. 08–2638–CM–DJW, 2010 WL 2949582, at \*5 (D.Kan. July 22, 2010) (noting that a clawback order can "protect a party or parties from the undue burden and expense of reviewing vast numbers of documents for privilege before they are produced); *see also Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence, Addendum to Advisory Committee Notes* (explaining that subdivision (d) "is designed to enable a court to enter an order, whether on motion of one or more parties or one on its own motion, that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege.").

EQT also argues that the amount involved in the litigation, even if the plaintiffs are successful, does not justify the expenditure of EQT's estimated production costs. It supports this argument with its estimates of the plaintiffs' maximum monetary recovery. The plaintiffs dispute these estimates and in any event, the magistrate judge's approach removes the need for most of EQT's projected costs.

Thus, the magistrate judge was correct in her conclusion that cost-shifting was unnecessary in this case because those costs could be mitigated by the use of electronic searching and production, together with the protections of the Protective and Clawback Orders. Further, EQT has never indicated that it would rather assume the costs of individualized human review and production of the emails. Therefore, it is reasonable to assume that, knowing that costs of review and production will not be shifted to the plaintiffs, EQT would not want to pay such costs and would prefer to rely on the production process outlined by the magistrate judge.[8]

I find, however, that certain terms of the magistrate judge's order should be modified to better capture potentially privileged and work-product documents. The magistrate judge's order required the production of all emails sent or received between January 2005 and the present by eight named custodians and which are responsive to a list of search terms. The order further allowed EQT to withhold as potentially privileged any emails to or from a list of names representing inside and outside counsel.[9] This privilege limitation will be expanded to include any emails containing any of the listed names within the body of the email. EQT will be allowed to withhold as potentially privileged any emails containing the terms "privileged," "privileged and confidential," "attorney-client communication," or "attorney work product." Such limitations should capture forwarded emails and other emails wherein privileged information is discussed. In addition, EQT will also be allowed to conduct preproduction individual document review of all emails sent or received on or after April 20, 2010, the day an earlier and related case, *Adkins v. EQT Production Co., et al.,* No. 1:11 CV00031, was filed, in order to ensure that privileged discussion of litigation strategy is not revealed.

III. Conclusion.

**\*6** For the foregoing reasons, it is **ORDERED** as follows:

1. EQT's Objections (ECF Nos. 384, 205) are DENIED;

2. The magistrate judge's Orders (ECF Nos. 380 and 201) are modified in the following manner:

   a. EQT is not required to produce any emails containing in the body of the email the names listed in Paragraph 3 of the magistrate judge's orders.

   b. EQT is not required to produce any emails found with the following search terms in the subject line or the body of the email:

   "attorney-client communication!"

   "attorney client communication!"

   "attorney-client privilege!"

"attorney client privilege!"

"attorney work product"

"privileged and confidential"

c. EQT is not required to produce without prior individual document review any emails sent or received after the date of April 20, 2010, provided that in the event that EQT determines to undertake individual review of emails sent or received after such date, it must begin such review forthwith and produce nonprivileged emails in a rolling fashion as review is completed, and provide an appropriate privilege log.

3. The stays of the magistrate judge's Orders (ECF Nos. 386, 207) are vacated.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2526982

Footnotes

1. These two cases have been essentially single-tracked for discovery purposes, with identical or similar discovery motions and orders entered in each case. For convenience, the duplicative orders and pleadings of the two cases hereafter will be referred to in the singular.
2. The initial processing of the ESI data removes duplicates and places the information into a database for review. The monthly storage fee for the data of the eight custodians would be an additional $1,721.
3. No objection is made to the magistrate judge's conclusion that the court has the authority to order cost-shifting based not on the accessibility of the ESI, but on the undue burden and cost of document review for privilege and responsiveness.
4. Rule 502(d) provides that a clawback order such as the one in this case, which protects against the waiver of the attorney-client privilege or work product protection, will also protect against waiver in "any other federal or state proceeding." Fed.R.Evid. 502(d). This amendment seeks to firmly establish the protection against wavier that a clawback order affords and facilitate discovery by reducing the need and costs of preproduction privilege review. *Id.* advisory committee notes.
5. The Clawback Order includes the flowing language: "The producing party is specifically authorized to produce Protected Documents without a prior privilege review, and the producing party shall not be deemed to have waived any privilege or protection in not undertaking such a review."
6. EQT's concern regarding the disclosure of potentially confidential documents is without basis. The Protective Order forbids the use of any documents designated confidential in any litigation besides this one. The magistrate judge's order provides that all the documents produced under the order will be designated confidential. The fact that a document may contain confidential information does not of itself exempt it from discovery. The plaintiffs in this case are not competitors of EQT in any way and have no interest in or use for proprietary information.
7. Accessibility of the ESI is, at the very least, a highly significant factor in the determination of whether to consider cost-shifting in the e-discovery context. *See Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 318 (S.D.N.Y.2003).
8. The parties must understand that certain e-discovery expenses may be recoverable as costs to the prevailing party. *See CBT Flint Partners, LLC v. Return Path, Inc.,* 676 F.Supp.2d 1376, 1381 (N.D.Ga.2009) ("The enormous burden and expense of electronic discovery are well known. Taxation of these costs will encourage litigants to exercise restraint in burdening the opposing party with the huge cost of unlimited demands for electronic discovery.").
9. EQT argues that the magistrate judge's list of counsel is too limited in that it does not include paralegals and others who could potentially send or receive privileged documents. However, because EQT has not submitted an alternative list or suggested additional names, the list of names set forth in the magistrate judge's order will not be revised.

**End of Document**                                          © 2020 Thomson Reuters. No claim to original U.S. Government Works.