

Jeffrey W. Greene
Tel 617.310.6031
Fax 617.987.0931
greenej@gtlaw.com

November 6, 2020

**VIA: CM/ECF**

The Honorable Joel Schneider
United States District Court for the District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

      Re:    **In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation**
                **Case No. 1:19-md-02875-RBK-JS; The Teva Defendants' Reply Letter for Cost-Shifting and/or Further Relief Under Rule 26's Proportionality Limits**

Dear Judge Schneider:

      Defendants Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, Actavis Pharma, Inc., and Arrow Pharm (Malta) Ltd. (collectively, "Teva" or the "Teva Defendants") respectfully submit this reply letter brief in further support of their request for an order foreclosing additional review of documents its state-of-the-art technology-assisted review ("TAR") tool predicts to be non-responsive and/or to shift the cost of Teva's further non-responsive document review by ordering Plaintiffs to reimburse Teva's costs and fees associated with reviewing documents that its Continuous Multi-Modal Learning ("CMML") platform predicts are non-responsive. As set forth more fully in our moving brief, completing a linear manual review on these ***hundreds of thousands of documents that are non-responsive*** has no proportional benefit to either party here.

      Plaintiffs' opposition to Teva's proportionality motion is plagued by a fundamental misunderstanding on the part of Plaintiffs about the CMML process and completely fails to demonstrate that Plaintiffs would suffer any prejudice if the motion were granted (or suffer any prejudice due to the manner in which the CMML process has been utilized by Teva). This is evidenced by the fact that the declaration submitted together with Plaintiffs' opposition is an exact replica of the declaration Plaintiffs submitted over the summer in opposition to Teva's motion to enforce the ESI Protocol. In other words, Plaintiffs ignore (and fail to refute) any of the evidence Teva submitted in support of its proportionality motion, including Dr. Grossman's declaration, which lays out significant details about the CMML process followed by Teva. Rather than raising

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

www.gtlaw.com

any meaningful arguments about the process Teva has followed, Plaintiffs simply rehash the same misguided arguments in their steadfast refusal to allow for the use of CMML at all.

Plaintiffs' misplaced effort to cast themselves as being deprived of critical discovery by Teva's use of CMML ignores the significant searches, review, and actual productions Teva has made to date. Plaintiffs overlook the fact that Teva has already spent thousands of hours and more than a million dollars on document discovery in this case, all of which is separate and apart from the efforts Teva would need to undertake to review documents CMML predicts are non-responsive which, as set forth in Teva's moving brief, would cost another $228,000 in review costs alone. This is not a situation where Teva is seeking to avoid its discovery obligations. Teva's quality control and validation exercises are the most robust that Teva's CAL expert Dr. Maura Grossman has ever seen. Dr. Grossman invented CAL, serves as a special master overseeing countless TAR and CAL processes, and certainly would not risk her world-renown reputation to somehow assist Teva in hiding relevant documents via the CMML process. For the reasons set forth more fully below, Teva's motion should be allowed.

### I.  RELEVANT BACKGROUND RELATING TO THE PARTIES EXCHANGES IN DISCOVERY

Plaintiffs' version of the exchanges between the parties in discovery is revisionist history necessitating correction. As the Court is well-aware, the parties spent months negotiating discovery parameters in this case, including search terms. While Plaintiffs would like the Court to believe that Teva somehow misled them into believing that there was no possibility that Teva would rely on TAR, Teva expressly reserved its rights to use TAR one year ago, and never made any affirmative statements to Plaintiffs that it was no longer reserving its right to do so. Thus, for the entirety of the search-term negotiation process, Plaintiffs were well-aware that Teva was still considering whether to use TAR, and contrary to Plaintiffs' assertions, there was never any agreed-upon process to use search terms *or* TAR; instead, it was always Teva's understanding that it could leverage technology if the search terms yielded too many hits for a manual review.

Specifically, as the Court is well aware, the ESI protocol was initially finalized, with the understanding by all involved that negotiations over the custodians and search terms would follow. (*See, e.g.*, Apr. 24, 2019 Trans., 44:13-22). The Court entered the stipulated ESI Protocol as an order of the Court on June 19, 2019. This ESI protocol contains the following language: "The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols, and any TAR/predictive coding **prior to using any such technology to narrow the pool of collected documents to a set to undergo review for possible production**." (Dkt. 127) (emphasis added). At the August 14, 2019, Teleconference, the parties discussed with the Court how to initiate the meet and confer process on search terms. (*See, e.g.*, Aug. 14, 2019 Trans., 66-68). The Court concluded that while Defendants were to take the lead on preparing a preliminary list of custodians, Plaintiffs would "take the first cut at the search terms," (*id.*, 70:11-14), with the initial list of proposed search terms to be exchanged in September 2019, (*id.*, 72:17-20). The ultimate goal of these negotiations was to finalize the search terms in December 2019. (*Id.*, 73:19-74:1).

The parties engaged in numerous meet and confers on the search terms, while at the same time, the parties negotiated over the proper number and scope of ESI custodians. (*See* **EXHIBIT A**, Counsel Decl. ¶¶ 2-3). These negotiations continued throughout October and November, with the goal of presenting any outstanding disputes with respect to the search terms to the Court in December. (Counsel Decl. ¶¶ 2-3). During the November 6, 2019 Teleconference with the Court, defense counsel pointed out that the Defendants were not in position to start testing proposed search terms when the parties had not even reached a preliminary list of agreed ESI custodians. (*See* Nov. 6, 2019 Trans., 30:7-20). Indeed, in order to test search terms, one must have physically collected the data from the respective custodians in order to do so.

At the request of Plaintiffs' counsel, the Court ordered the parties to attend in-person meetings to discuss ESI by November 15, 2019. (Dkt. 292). Plaintiffs sent a letter listing topics they intended to address at this meeting. (*See* Counsel Decl. Exhibit A-1). One of these topics was TAR – which was never discussed in the context of the ongoing search-term negotiations taking place at this same time – and specifically Plaintiffs asked Defendants to "[c]onfirm whether defendants have used or intend to use TAR (including predictive coding) for searching, locating, determining the relevancy of, or review of documents." (Counsel Decl. ¶¶ 2, 4 & Exhibit A-1). In response, and because Teva was expressly reserving its right to use TAR if it ultimately decided it needed to do so, Teva's counsel arranged to have two TAR specialists from their document vendor available to discuss TAR issues to the extent these arose during the meeting. (Counsel Decl. ¶ 5).

During the meeting on November 15, 2019, Teva's counsel informed Plaintiffs that they had representatives from their vendor, UnitedLex, available to discuss Teva's potential use of TAR. (Counsel Decl. ¶ 6). Plaintiffs declined to ask these representatives any questions. (*Id.*). Rather, the parties had a short discussion of TAR which was limited to two points: (1) the parties agreed that the ESI protocol addressed the use of TAR; and (2) in responding to a request from Teva's counsel to explain what Plaintiffs concerns were about the use of TAR, Plaintiffs' counsel stated that they would want to know if Teva intended to use TAR to make review determinations without attorney's eyes on the documents. (Counsel Decl. ¶ 7). This is consistent with the ESI Protocol, which only requires the disclosure of TAR if a party intends to eliminate the review of documents using TAR. This is also reflected in the handwritten notes of Teva's counsel which read: "– ESI protocol covers TAR" and "– want to know if using for responsive review." (*Id.*). Teva's counsel again reiterated that they had not made any determination about whether and how they would use TAR, but agreed they would abide by the ESI protocol if they later chose to do so. (Counsel Decl. ¶ 8). Teva's counsel is aware that every other Defendant who participated in these meetings similarly reserved their right to use TAR. (Counsel Decl. ¶ 9).

At no time during this ESI meeting, either during the portion devoted to TAR or otherwise, did Plaintiffs indicate that it was their understanding a defendant needed to choose between search terms *or* TAR. This is because the clear understanding of the parties—**which Teva contends is largely based the plain language of the negotiated ESI protocol**—was that Defendants would

The Honorable Joel Schneider
November 6, 2020
Page 4

raise the use of TAR and meet and confer "prior to using any such technology to narrow the pool of collected documents to a set to undergo review for possible production." (Dkt. 127). As of November 15, 2019, Teva of course could not yet have used such technology to narrow the pool of collected documents. (Counsel Decl. ¶ 10). The same was true for most of the following year, as the parties engaged in negotiations and motions practice over the final search terms. (Counsel Decl. ¶ 11). Only in June 2020, after Teva changed ediscovery vendors[1] and the final search terms were agreed to and approved, did Teva determine that the use of TAR was necessary to timely and cost-effectively manage its document review. (*Id.* ¶ 12). Teva then affirmatively raised the issue of TAR with Plaintiffs' counsel on July 1, 2020 – **five months before the deadline for Teva's document production and immediately after Teva made the decision to employ CMML.**

Plaintiffs cannot claim they were not apprised of Teva (or any other Defendants') potential use of TAR, and these discussions plainly were not framed or considered as an "either or" with respect to the use of search terms. Moreover, there can be no claim of prejudice to Plaintiffs from Teva's decision to employ TAR in this manner when the issue was raised with ample time to meet and confer ahead of the November production deadline.

II. **LEGAL ARGUMENT**[2]

   a. **It is Disproportionate to the Needs of the Case to Force Teva into Reviewing Hundreds of Thousands of Non-Responsive Documents**

Plaintiffs have no response to Teva's claim that it is disproportionate to the needs of a case to force a party to spend hundreds of thousands of dollars to review hundreds of thousands of documents that are irrelevant to the claims or defenses in this litigation.

First, Plaintiffs claim that Teva was "given the opportunity" to "flip the search methodology" from search terms to TAR but Teva declined out of concern for putting a "mutually acceptable" TAR protocol on the docket. (Opposition, p. 3). However, at no point in time did the parties reach agreement on any TAR protocol, as Plaintiffs continued to insist that Teva produce thousands of non-responsive documents which neither the Rules of Civil Procedure, nor any case law requires. Further, there was no search methodology for Teva to "flip." This premise rests on the flawed assumption that a party must choose *either* search terms *or* TAR but cannot use both. As Teva has repeatedly made clear, it is perfectly acceptable to layer TAR or CAL on top of search terms as Teva has done here. *See In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, No. 3:12-MD-2391, 2013 WL 1729682, at *2 (N.D. Ind. Apr. 18, 2013) (finding that layering TAR on top of search terms "**complies fully with the requirements of Federal Rules of Civil Procedure 26(b) and 34(b)(2)**.") (emphasis added); s*ee also*, *City of Rockford v Mallinckrodt ARD Inc.*, No. 3:17-cv-50107, at Dkt. 158 (N.D. Ill. August 14, 2018) (where Court's order on ESI indicates that keyword terms may be used to cull the document population prior to the application of TAR so long as parties meet and confer in good faith regarding a mutually agreeable protocol); *In re Broiler Chickens Antitrust Litigation*, Civ. A. No. 1:16-cv-08637, at Dkt. 586 (N.D. Ill. Jan. 13, 2018)

---

[1] The decision to change vendors was unrelated to this litigation and was a company-wide business decision in order to have one preferred vendor to host data and handle ediscovery matters.
[2] Teva incorporates by reference the Standard of Review as set forth more fully in its moving brief.

(entering Order Regarding Search Methodology for Electronically Stored Information which expressly contemplates search term culling prior to the applying TAR/CAL unless the requesting party specifically identifies a limited number of custodians whose data would not be culled in this fashion); *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 131-132 (S.D.N.Y. 2015) (approving ESI protocol which allows for use of search terms for purposes of culling the document universe in addition to utilizing TAR, where the responding party deems culling reasonable and appropriate and takes steps including meeting and conferring in good faith with the opposing party).

### b. Jaffe's Declaration is Unsupported and Fails to Contradict any of Teva's Metrics Relating to CMML

Next, Plaintiffs assert—in a wholly conclusory fashion and without support—that they have established that the CMML "system has not been applied as intended." (Opposition, p. 3, n. 1). In support of this claim, Plaintiffs cite to the declaration of Jonathan Jaffe. As mentioned above, however, the declaration submitted by Plaintiffs is a <u>verbatim</u> copy of the initial Jaffe declaration submitted on July 24, 2020, back when Teva was not relying on CMML to cutoff its review of documents and was simply leveraging the technology to prioritize documents. On July 28th, Teva submitted a declaration of Dr. Grossman in response to Jaffe's initial declaration, responding to <u>all</u> of Jaffe's blatant misunderstanding of the CAL process.

Rather than refute Dr. Grossman's declaration from July 28, 2020, her additional declaration with Teva's latest filing (and the corresponding evidence surrounding Teva's CAL process as detailed in Dr. Grossman's declaration), Plaintiffs simply re-cycle the same Jaffe declaration again. Attached hereto as **EXHIBIT B** is a supplemental declaration of Dr. Grossman, which makes clear that Jaffe's declaration is devoid of any empirical evidence for any of the statements he makes about CAL. (Suppl. Grossman Dec., ¶10). Dr. Grossman's declaration further makes clear that Jaffe's claims are contradicted by scientific literature. *Id*. at ¶11.[3] Put simply, Plaintiffs' alleged issues with Teva's CMML process are pure speculation and unsupported—and are not new.

Third, Plaintiffs claim that they were "locked out of" Teva's CMML process. In making this argument, Plaintiffs allege that they were not given the opportunity to engage in "joint sampling and testing" or having an "agreed set of documents to educate the system."[4] (Opposition, pp. 4-5). This entire argument emphasizes Plaintiffs' lack of understanding as to the difference between TAR 1.0 and TAR 2.0 (otherwise known as CAL or CMML). As Teva has repeatedly made clear, there is no fixed seed or training set of documents used to train a CAL system. Instead, a CAL system is *continuous*, as the name suggests, and is continually trained throughout the entire document review process each time a document is reviewed. Plaintiffs' argument surrounds a TAR 1.0 platform, wherein a party leverages seed set documents and effectively has one opportunity to

---

[3] It is also worth noting that Teva strongly questions the qualifications of Mr. Jaffe to opine on CAL-related issues because, as set forth more fully in Dr. Grossman's declaration attached as EXHIBIT B, it appears that Mr. Jaffe is simply incorrect in virtually all respects.

[4] It should also be noted that, during the parties' attempts to negotiate a validation protocol over the summer, and at the Court's direction to try and come up with a plaintiff-friendly protocol that Plaintiffs could not refuse, Teva acquiesced to almost every request Plaintiffs insisted upon, and yet this was still unsatisfactory to Plaintiffs.

train a system on what is responsive versus non-responsive, and the entirety of the TAR process, therefore, depends on which documents are used to train the system and how those documents are coded. This is not the process Teva is using and Plaintiffs' continued failure to acknowledge or understand this key nuance demonstrates that their position is disingenuous, uninformed, or both.

If Plaintiffs wanted input into the documents used to train the system and the coding being applied to those training documents, that would effectively mean that Plaintiffs would need to <u>review every single document Teva has reviewed</u>. *See Livingston v. City of Chicago*, Civ. A. No. 1:16-cv-10156, Dkt. No. 309 (N.D. Ill. Sept. 3, 2020) (where Plaintiffs objected to the defendant's use of CAL, the Court explained that "***Plaintiffs' insistence that the City must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules governing discovery***." (emphasis added)). Teva has given Plaintiffs white paper on CMML, made its data analytics expert from Consilio available on more than one telephone conference, and has now made Dr. Grossman—the world's leading CAL expert—available on numerous occasions to explain how the CMML process works. Contrary to Plaintiffs' claims, they were not "locked out of" Teva's process but Teva has tried explaining its process to Plaintiffs several different times and in several different ways, none of which appears to resonate because Plaintiffs will not accept Teva's use of CMML no matter the circumstances.

c. <u>**Teva Expressly Reserved its Rights to Use TAR One Year Ago**</u>

Fourth, Plaintiffs belabor the fact that Teva did not re-raise the possibility of using TAR (despite having made clear it was expressly reserving its rights to do so) during the search-term negotiations, again, as if Teva had to choose between search terms or TAR. As the timeline above makes clear, Teva was making every effort to negotiate search terms in a manner that would reduce the overall volume of documents to review. If the search-term population had yielded a reasonable number of documents (or a universe of documents that were proportional to the needs of the case), Teva likely would have engaged in an exhaustive manual review of those documents. However, once the search terms were finalized and applied to Teva's data, they yielded approximately 3.7 million documents. At that point, Teva had no choice but to consider what other eDiscovery tools it had available in order to timely meet the Court's production deadline. Then, in or around June 2020, Teva was in the process of changing eDiscovery vendors. As soon as Teva's data was transferred to a new vendor, and Teva was faced with an enormous and unreasonable amount of documents to review, Teva began working with its vendor to determine the most efficient path forward.

In late June 2020, Teva decided to leverage the CMML process in order to prioritize documents for review. Again, at this point, Teva was only relying on CMML to prioritize the documents but was not eliminating any documents from review. This was done in an effort to ensure that Plaintiffs received the most responsive documents first, and also to speed up the process to ensure that Teva was not wasting time reviewing massive numbers of non-responsive documents to then have nothing to produce to Plaintiffs. Notwithstanding the fact that the ESI Protocol only requires the disclosure of TAR or predictive coding "prior to using any such technology ***to narrow the pool of collected documents to a set to undergo review for possible production***," Teva raised

The Honorable Joel Schneider
November 6, 2020
Page 7

its CMML process with Plaintiffs right away, and with over five months left for review and productions to be completed. (Dkt. 127) (emphasis added).

If Teva had shared Plaintiffs' misguided understanding that a defendant must choose between search terms or TAR, it certainly would have made a decision on TAR prior to the parties' engaging in search-term negotiations. However, because the use of search terms in conjunction with TAR is an often-applied and accepted practice, and the ESI Protocol specifically allows for this approach by only requiring a defendant to disclose its use of TAR if a party is going to eliminate documents from manual review, Teva had no reason to make a decision on whether to use TAR at the outset of discovery. Plaintiffs' attempts to characterize Teva's conduct as purposely and malevolently springing the CMML system on Plaintiffs at the last hour is inaccurate and should be rejected, as Teva made clear *during an in-person ESI meeting one year ago* that it was reserving its rights to use TAR. At no point did Plaintiffs indicate that they needed a decision one way or the other prior to engaging in a search- term negotiation, Plaintiffs did not set any deadline by which they needed Teva to make this decision, and at no point did Plaintiffs follow up with Teva to see whether a final decision had been made. Plaintiffs knew all along that Teva was considering the use of TAR, so their claimed surprise now is disingenuous at best; self-serving gamesmanship at worst.

### d. **Plaintiffs Do Not Cite to a Single Case Requiring a Party Using TAR or CAL to Turn Over Documents the System Deems are Non-Responsive**

Despite a clear invitation from the Court at the last case management conference that Plaintiffs submit authority supporting its request for Teva to turn over thousands—if not hundreds of thousands—of non-responsive documents, Plaintiffs have failed to cite a single case on point.[5]

For example, Plaintiffs cite to *Progressive Cas. Ins. Co. v. Delaney*, 2014 WL 3563467 (D. Nev. July 8, 2014) for the proposition that a "last minute" attempt to impose TAR on top of search terms should be rejected. There, however, after agreeing to search terms and beginning a manual review, the defendant had not even produced a single document, nor did it indicate when it would begin or end producing documents. *Id*. at *5. Instead, Progressive was supposed to start its production in September 2013, and complete it by the end of October 2013. Without having produced any documents, Progressive then raised the idea of using TAR on December 20, 2013—two months after its production deadline. Given the defendant's clear conduct to thwart the discovery process and Court-ordered deadlines, and Progressive's inability to determine when it would even begin producing responsive documents (despite the production deadline having passed), the Court indicated that it did not believe Progressive had the requisite degree of transparency and cooperation in order to permit its use of TAR. For that reason, the Court ordered Progressive to turn over all of the search-term hit documents without delay. None of those facts align with Teva's behavior in this matter.

---

[5] *See* **Exhibit C**, which is a table of all cases cited to by Plaintiffs and an explanation of how they are readily distinguishable here.

The Honorable Joel Schneider
November 6, 2020
Page 8

Here, Teva has been extremely transparent and cooperative in its CMML process. Plaintiffs' only complaint is that Teva did not disclose its use of CAL sooner, which, as explained repeatedly, Teva did not believe it needed to since it was not being used to remove any documents from manual review. And, Teva expressly reserved its right to use TAR one year ago. Despite this issue being the forefront of this litigation for nearly four months, Plaintiffs have failed to identify any aspect of Teva's CMML process that has not been laid out in detail for them. Teva has provided metrics associated with its CMML platform[6], retained the world's leading expert to give Plaintiffs (and the Court) comfort in knowing that Teva's process is fully defensible and reliable, and meanwhile has been producing thousands of responsive documents to Plaintiffs along the way. As the *Progressive* Court makes clear, the producing party should provide the requesting party with the "technology used" (here, CMML, as fully described in the white paper provided to Plaintiffs back in July); "the process" (here, as detailed in all of the discovery correspondence exchanged with Plaintiffs and the Court); and the "methodology" (here, as described in Dr. Grossman's declaration filed in support of Teva's motion). *Id*. at *10. Put simply, all of the cooperation that Progressive *failed* to do (leading the Court to order its production of all documents hitting on search terms), Teva has done. *See Bridgestone Americas, Inc. v. Int'l Business Machines Corp*., No. 3:13-cv-4923014, 2014 WL 4923014 (M.D. Tenn. July 22, 2014) (where defendant opposed plaintiff's request to use TAR as being an "unwarranted change in the original case management order and on the grounds that it is unfair to use predictive coding after an initial screening has been done with search terms," Court rejected this argument finding that plaintiff could layer TAR on top of search terms so long as plaintiff was open and transparent about their process).

Similarly, Plaintiffs' reliance on *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-2724, 2019 WL 8106511 (E.D. Pa. 2019) utterly misconstrues the record in that matter, as Plaintiffs rely on a case management order without regard to the ESI protocol that was also entered in that case. Specifically, Plaintiffs cite to a case management order whereby the Court ordered that all documents hitting on search terms must be produced without regard to relevancy or responsiveness, but could only be reviewed for privilege. This case management order pertained *to a specific subset of documents and search terms* but did not apply to the entirety of the defendants' dataset as Plaintiffs here would lead the Court to believe. Contrary to Plaintiffs' misleading statements, the ESI Protocol entered in the *Generic Pharmaceuticals* litigation contains a robust provision on allowing for the use of TAR, including a requirement (which does not exist in the ESI Protocol here) that defendants disclose the methodology to be employed at the outset of discovery, including "search terms, TAR or other advanced analytics…" A copy of the Generic Pharmaceuticals ESI Protocol is attached hereto as **EXHIBIT D**.

The *Generic Pharmaceuticals'* ESI Protocol further explicitly allows for layering of TAR on top of search terms: "To the extent a Producing Party proposes to use Search terms to pre-cull ESI prior to application of TAR and/or advanced analytics, prior to doing so, they shall meet-and-confer with the Requesting Party regarding whether pre-culling is appropriate and if so, how it is

---

[6] As set forth in Teva's moving brief, Teva's TAR recall with respect to the high priority custodians is 92.2%, and of the documents remaining to be reviewed, CMML predicts that 260,375 are irrelevant and would be a waste of time and resources to review.

to be applied." *Id*., p. 29. Plaintiffs' reference to *In re Actavis Holdco U.S. Inc*., et al., No. 19-3549, 2019 WL 8437021 (3d Cir. 2019) fares no better because, while the case name is different, it was a petition for a writ of mandamus to the Third Circuit from the *In re Generic Pharmaceuticals* case which, again, expressly allowed for the use of TAR. And, as recognized by the Third Circuit as it relates to the subset of documents that the producing party was required to produce without reviewing for relevancy, the producing party was given the option to "review for privilege before production." *Id*. at *1.

As Teva has indicated, there is simply no support for the notion that it must turn over all documents that hit on search terms without regard to whether they are responsive.[7] Plaintiffs' attempt to find a needle-in-a-haystack case management order that is woefully mischaracterized in their brief evidences the fact that there is a dearth of authority requiring a defendant to produce non-responsive documents in the CAL context. Further, Plaintiffs indicate that to "the extent sensitive information about other products is in the documents that can be redacted per the ESI protocol…." (Opposition, p. 17). Plaintiffs fail to explain, however, how Teva could possibly redact the sensitive business information without manually reviewing and redacting it. In other words, requiring Teva to turn over the non-responsive documents to Plaintiffs does nothing to alleviate the disproportionate burden placed on Teva, as it would still need to manually review each and every document prior to production in order to determine whether they contained privileged or sensitive and confidential information that needed to be redacted. The absurdity of this position is self-evident.

Moreover, Plaintiffs characterize Teva's motion as an attempt to "deprive Plaintiffs of documents at this late stage." (Opposition, p. 16). Plaintiffs are missing the fundamental premise of Teva's motion and the entire purpose of CAL: ***Plaintiffs are receiving substantially all of the responsive documents; the only documents that Teva would not be reviewing via CMML are overwhelmingly non-responsive and are not documents that Plaintiffs would receive via a manual review either***. Plaintiffs are not being deprived of any documents, and their opposition in this regard is blatantly wrong. In sum, Plaintiffs' opposition fails to meaningfully address any of the evidence or metrics submitted by Teva in support of its CMML process.

### III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE ANY CONDUCT ON THE PART OF TEVA WORTHY OF SANCTIONS

Plaintiffs request that the Court sanction Teva because: (i) Plaintiffs have incurred expenses for an ESI consultant; (ii) Plaintiffs engaged in a conferral process with Teva and the Court to *attempt to agree* on a validation protocol; and (iii) because Plaintiffs will be "deprived" of documents they believe they are entitled to. (Opposition, p. 17). Tellingly, Plaintiffs do not cite to a single case in support of their request for sanctions. This is because none of these cited-examples are sanction worthy.

First, Teva has also incurred significant expenses to retain Dr. Grossman. Had Plaintiffs meaningfully conferred with Teva on CMML at the outset, Teva would not have needed to bring

---

[7] None of the remaining cases cited by Plaintiffs support this proposition either. *See* Exhibit C.

The Honorable Joel Schneider
November 6, 2020
Page 10

in the world's leading expert to oversee its TAR process, all of which was done in an effort to give Plaintiffs comfort that Teva was employing a valid and reliable methodology. Second, the Federal Rules and Local Rules of this Court require parties to meet and confer in good faith on discovery disputes. As such, Plaintiffs' claim that Teva "wasted its time" in conferring with them over CMML is contradicted by the rules of discovery, which required Teva to do so. Finally, and as set forth repeatedly above, Plaintiffs are not being deprived of any documents. Teva has fulfilled it discovery obligations under Fed. R. Civ. P. 26(g)—indeed, it has made herculean efforts to comply with the letter and spirit of the discovery rules, and nothing as it relates to Teva's CMML process warrants sanctions here.

Moreover, the supposed "prejudice" to Plaintiffs (i.e., the time and effort required to meet and confer and draft a brief—all of which is commonplace in litigation) pales in comparison to the prejudice Teva has suffered via Plaintiffs' outright failure to accept Teva's proposed CMML methodology. Plaintiffs' opposition brief makes it abundantly clear that they have failed to meaningfully consider any of Teva's CMML metrics and have accordingly failed to meaningfully meet and confer as the rules of this Court require. Teva went to great lengths to work together with Plaintiffs to find a mutually agreeable validation protocol, all of which was thwarted by Plaintiffs' refusal to accept anything less than receiving non-responsive documents to which they are not entitled.

To that end, the only party that should be awarded costs and fees here is Teva. As set forth more fully in Teva's moving brief, to the extent the Court is inclined to force Teva to review all of the documents that hit on search terms (including those that we know based on CMML are non-responsive), then Plaintiffs should bear the costs associated with such a wasteful exercise to ensure proportionality. *See LARRY A. LAWSON, Plaintiff, v. SPIRIT AEROSYSTEMS, INC., Defendant.*, No. 18-1100-EFM-ADM, 2020 WL 6343292, at *14 (D. Kan. Oct. 29, 2020) (awarding defendant $754,029.46 in fees and costs associated with defendant's TAR review, finding that defendant "exhausted all efforts to meet and confer. It filed the motion to shift costs only after spending months trying to appease [Plaintiff's] ESI demands, during which [defendant] participated in multiple conferences with [Plaintiff] and the court. [Plaintiff's] position was not substantially justified[.]…")

Accordingly, Plaintiffs' request should be denied.

### IV. CONCLUSION

For the reasons set forth more fully above and in Teva's moving letter brief, the Teva Defendants' respectfully request that this Court enter an order foreclosing additional review of high-priority custodian documents which, based on Teva's CMML model, are predicted to be non-responsive and are, accordingly, disproportionate to the needs of the case; and/or in the alternative, to order Plaintiffs to reimburse Teva's for the costs and fees associated with reviewing the documents that Teva's CMML model predicts are non-responsive.

Dated: November 6, 2020                                        Respectfully submitted,

The Honorable Joel Schneider
November 6, 2020
Page 11

/s/ *Jeffrey Greene*
Jeffrey Greene
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone:    (617) 310-6031
Fax:          (617) 897-0931
greenej@gtlaw.com

/s/ *Lori G. Cohen*
Lori G. Cohen
Victoria D. Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

Brian H. Rubenstein
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Tel: (215) 988-7864
Fax: (215) 689-4419
rubensteinb@gtlaw.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and Actavis Pharma, Inc.*

The Honorable Joel Schneider
November 6, 2020
Page 12

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I served the foregoing letter to the Court was served on all counsel of record via filing in the CM/ECF system.

*/s/ Jeffrey Greene*