# **<u>EXHIBIT C</u>**

| Case | Cited in Plaintiffs' Opposition for the Following Proposition | Case Actually Stands for the Following Proposition |
|---|---|---|
| *Progressive Cas. Ins. Co. v. Delaney*, 2014 WL 3563467 (D. Nev. July 18, 2014) | Plaintiffs claim that the Court in *Progressive* "refused to allow the defendant to proceed to layer a TAR review on top of a document set already narrowed … by application of search terms." (Opposition, p. 9). Plaintiffs further state that, therefore, the Court concluded that the defendant could not apply TAR and the "defendant was ordered to produce every document hit by the search terms, including those that the defendant claimed to be non-responsive." (Opposition, p. 10). | Conveniently missing from Plaintiffs' description of the *Progressive* case is the contextual background that the Court was heavily focused on there. Specifically, the defendant had *already missed the document production deadline*, without even having produced a single document, when it decided to raise the possibility of using TAR. The Court rejected the defendant's attempts to do so, finding that the defendant lacked transparency in their process by waiting until after the production deadline to raise it. For that reason, the Court ordered that the defendant produce all documents hitting on the search terms within 14 days. In doing so, the Court acknowledged all of the benefits that TAR would ordinarily provide but held that the defendant deprived itself of the ability to use TAR under those particular facts, which are inapplicable here. |
| *In re: Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 16-md-2724, 2019 WL 8106511 (E.D. Pa. 2019). | Plaintiffs claim that this case establishes the "propriety of orders compelling production of documents without a relevance or responsiveness review," as the Court ordered defendants to review all the documents hitting on search terms for privilege only, and to produce the remainder without regard to responsiveness. (Opposition, p. 11). | Plaintiffs cite to a case management order that is completely taken out of context in their letter brief. Indeed, as set forth in Teva's brief, the *In re: Generic Pharmaceuticals* litigation involves a robust ESI protocol that expressly allows for layering TAR on top of search terms. The case management order upon which Plaintiffs rely was limited to a small subset of documents and did not apply to the entirety of the custodial dataset as Plaintiffs would lead the Court to believe. |
| *In re Actavis Holdco U.S. Inc., et al.*, No. 19-3549, 2019 WL 8437021 (3d Cir. 2019) | Plaintiffs cite this case for the notion that the Third Circuit recently denied a mandamus application directing the production of documents without a review for responsiveness, and only a review for privilege or a clawback for unrelated product information. (Opposition, p. 11) | The mandamus application to the Third Circuit emanated out of the District Court's decision in *In re Generic Pharmaceuticals Pricing Antitrust Litig.* referenced above. Accordingly, this *mandamus* decision is also taken out of context because, again, the order directing the production of all documents |

| | | |
|---|---|---|
| | | tha thit on the search terms was limited to a specific subset of documents. The remainder of the custodial data was subject to a robust ESI Protocol that expressly allowed for layering TAR on top of search terms. |
| *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-cv-101, 2018 WL 6729794 (M.D. Pa. Dec. 21, 2018) | Plaintiffs cite the *Consumer Protection* case as part of a string cite for the notion that all documents hitting on search terms should be produced without regard to whether they are responsive. (Opposition, p. 11). | The background section of this case provides very little context. Notwithstanding, the *Consumer Protection* case has nothing to do with TAR or CAL. Instead, the defendant sought to compel the CFPB's production of documents that hit on two search terms, each of which were the defendant-company's name (*i.e.*, Navient and Pioneer). This was not a case where the Court ordered a wholesale production of documents hitting on countless search terms. The order was limited to two very specific terms. And, notwithstanding the order, the Court gave the CFPB permission to review all of the documents for privilege prior to producing them. |
| *UPMC v. Highmark, Inc.*, No. 2:12-cv-00692, 2013 WL 12141530 (W.D. Pa. Jan. 22, 2013) | Plaintiffs cite the *UPMC* case as part of a string cite for the notion that all documents hitting on search terms should be produced without regard to whether they are responsive. (Opposition, p. 12). | The *UPMC* case involved a motion to compel documents responsive to one specific document request. The Court acknowledged that it may not be true that "every single document will be relevant to UPMC's claims. Highmark has not demonstrated that there are any concrete subject areas that are not relevant, nor has Highmark suggested any feasible way of separating arguably irrelevant material from relevant material. Instead, Highmark offers only the unsubstantiated argument that" UPMC is not entitled to every single document that has anything to do with John Paul [the alleged wrongdoer]. *UPMC*, 2013 WL 12141530, at *2. For that reason, the Court granted the motion to compel the defendant to produce all documents mentioning the name of the wrongdoer, John Paul. Contrary to the *UPMC* case, however, Teva has offered a feasible way of separating relevant and irrelevant material: |

| | | |
|---|---|---|
| | | and that is through the use of CMML. The *UPMC* decision had nothing to do with TAR and is wholly inapplicable here. |
| *Williams v. Taser Int'l, Inc.*, No. CIVA 106CV-0051, 2007 WL 1630875, at *6 (N.D. Ga. June 4, 2007) | Plaintiffs cite the *Williams* case as part of a string cite for the notion that all documents hitting on search terms should be produced without regard to whether they are responsive. (Opposition, p. 12). | The *Williams* case did not involve any type of TAR. Instead, the Court in Williams found the parties incapable of working together through discovery, and therefore ordered the defendant to run specific search terms and to produce all documents hitting on the search terms. In doing so, the Court expressly permitted the defendant to review each and every document for purposes of determining whether they were privileged. *Williams*, 2007 WL 1630875, at *6. |
| *Chen-Oster v. Goldman Sachs & Co.*, No. 10 Civ. 6950, 2014 WL 716521 (S.D.N.Y. Feb. 18, 2014) | Plaintiffs cite the *Chen-Oster* case as part of a string cite for the notion that all documents hitting on search terms should be produced without regard to whether they are responsive. (Opposition, p. 12). | The Court in *Chen-Oster* did not order the defendant to produce all documents hitting on search terms without regard to responsiveness. In fact, the Court clarified that "[t]here is no evidence that the parties agreed—and I did not order—that documents identified by the search tool would be produced without regard to whether they were relevant as defined by the earlier discovery demands and responses." *Chen-Oster*, 2014 WL 716521, at *1. |
| *Adair v. EQT Prod. Co.*, No. 1:10cv00037, 2012 WL 1965880 (W.D. Va. May 31, 2012) | Plaintiffs cite the May 2012 *Adair* case as part of a string cite for the notion that all documents hitting on search terms should be produced without regard to whether they are responsive. (Opposition, p. 12). | In the *Adair* case, the defendant presented evidence that manually reviewing all documents hitting on search terms would cost approximately $4 million. The defendant did not suggest the use of TAR or any other analytics tools. Nowhere in the decision is there any mention of TAR or CAL. Instead, the Court ordered the defendant to produce all of the documents that hit on the search terms without review in order to reduce the costs and entered a clawback provision for privileged and confidential documents. Important to note, however, is that in *Adair*, not a single document had yet been turned over. Thus, the Court sought to strike this balance in |

| | | |
|---|---|---|
| | | order to ensure that the plaintiff received responsive materials and that defendant's costs were not excessive. Here, however, Teva has already produced thousands of responsive documents and is continuing to do so. The only documents that would not be reviewed or produced here are non-responsive documents as predicted by CMML. |
| *Adair v. EQT Prod. Co.*, Nos. 1:10cv00037, 1:10cv00041, 2012 WL 2526982, at *4-6 (W.D. Va. June 29, 2012) | Plaintiffs cite the June 2012 *Adair* case as part of a string cite for the notion that all documents that hit on search terms should be produced without regard to whether they are responsive. (Opposition, p. 12). | The June 2012 *Adair* decision is the District Court's affirmance of the Magistrate's Order referenced above. For the same reasons as set forth above, this case is distinguishable from the present set of circumstances. |
| *Burke v. Ability Ins. Co.*, 291 F.R.D. 343 (D. S.D. May 31, 2013) | Plaintiffs cite the *Burke* case as part of a string cite for the notion that all documents hitting on search terms should be produced without regard to whether they are responsive. (Opposition, p. 13). | The *Burke* case involved a motion to compel documents hitting on a search term for particular document requests. For one particularly important document request, the Court found it appropriate to require the defendant to turn over the documents hitting on those respective search terms. This case had nothing to do with TAR or any other analytics tool and again, the decision was entered to ensure the plaintiff received the *responsive* materials, which Plaintiffs here are receiving via Teva's process. |
| *Rio Tinto PLC v. Vale S.A. et al.*, 306 F.R.D. 125 (S.D.N.Y. 2015) | Plaintiffs cite the *Rio Tinto* case to support the notion that the parties should agree on a TAR protocol that involves the sharing of documents, as the parties in *Rio Tinto* agreed to "share seed sets of documents, and to allow the requesting party to obtain quality control reports during the reviews." (Opposition, p. 13). | *Rio Tinto* involved a TAR 1.0 process, not CAL. As Teva has repeatedly made clear, there is no such thing as a fixed "seed set" of training documents when it comes to a TAR 2.0 model, which is the CMML platform that Teva is utilizing here. And, while the *Rio Tinto* matter involved TAR 1.0, Magistrate Judge Peck nonetheless reaffirmed the use of TAR, noting that in the three years since he decided *Da Silva Moore*, it is "now black letter law that where the producing party wants to utilize TAR document review, courts will permit it." *Rio Tinto*, 306 F.R.D. at 127. More importantly, and in expressly citing an article co-authored by Dr. |

| | | |
|---|---|---|
| | | Grossman, Judge Peck recognized that where CAL is being used (as opposed to TAR 1.0), "the contents of the seed set is much less significant." *Id*. at 128. |
| *In re Actos*, No. MDL No. 6:11-md-2299, 2012 WL 7861249 (W.D. La. July 27, 2012) | Plaintiffs cite this case for the notion that they should have extensive input into Teva's training process and a party utilizing TAR should share their "seed set" of documents. (Opposition, p. 13). | As Teva has repeatedly made clear, there is no such thing as a fixed "seed set" of training documents when it comes to a TAR 2.0 model, which is the CMML platform that Teva is utilizing here. CMML involves *continuous* training, so if Plaintiffs wanted insight into the documents Teva was using to train the system, they would effectively have to review every single document that Teva has reviewed to date. Moreover, scientific literature shows that such scrutiny of training documents is unnecessary with a CAL system. |
| *In re Mercedes-Benz Emissions Litig.*, No. 2:16-cv-881, 2020 WL 103975 (D.N.J. Jan. 9, 2020) | Plaintiffs claim that in the *Mercedes-Benz* case, "Judge Cavanaugh made clear that where a defendant chooses to use search terms, and the plaintiffs and the Court rely on and implement that selection, the defendant cannot be permitted to later upend the process and seek to change the methodology when it has buyer's remorse." (Opposition, p. 14). | Plaintiffs grossly mischaracterize the *Mercedes-Benz* case by claiming that *defendants* wanted to "upend the process" by switching from search terms to TAR. Contrary to Plaintiffs' mischaracterization, however, it was the *plaintiffs* in the *Mercedes-Benz* case that sought to compel *defendants'* use of TAR (where the defendants preferred to rely on search terms and a manual review). In denying Plaintiffs' request, the Court squarely held that "responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for producing their own electronically stored information." *Mercedes-Benz*, 2020 WL 103975, at *1. |
| *Hyles v. New York City*, No. 10 Civ. 3119, 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016) | Plaintiffs make a fleeting reference to the *Hyles* case by indicating that it is "inapplicable" and should be "disregarded" because the *Hyles* case involved a situation where the plaintiff was seeking to compel the defendant to utilize TAR. (Opposition, p. 14). | The *Hyles* case highlights the benefits of TAR and the fact that it is more reliable than a linear review of documents hitting on search terms. After stating that "TAR is the best and most efficient search tool," and after agreeing with the plaintiff that the production would not be as complete using keywords, Magistrate Judge Peck reiterated that "the standard is not perfection, or using the 'best' |

| | | |
|---|---|---|
| | | tool, but whether the search results are reasonable and proportional." For that reason, the Court was not inclined to compel the defendant to use TAR if they preferred a different methodology. |
| *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2018 WL 1146371 (N.D. Ill. Jan. 3, 2018) | Plaintiffs attempt to distinguish *In re Broiler Chicken* by noting that the ESI Protocol and TAR Protocol in that case was negotiated at the outset of discovery and, thus, the plaintiff there was aware throughout the search-term negotiations that the defendants might use TAR. According to Plaintiffs, here, they were unaware during the search-term negotiations that defendants here might use TAR. (Opposition, pp. 15-16). | Teva relies on the *In re Broiler* ESI Protocol which makes clear that layering TAR or CAL on top of search terms is an acceptable and defensible process—something that Plaintiffs have contested from the moment Teva raised CMML. Moreover, the ESI Protocol in *In re Broiler* required certain disclosures throughout the TAR process. Here, the ESI Protocol requires that Teva disclose its use of TAR prior to using it to remove documents from manual review, which is exactly what Teva did here. |