# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

| | |
|---|---|
| David A. Mazie* | Karen G. Kelsen° |
| Adam M. Slater*° | Cheryll A. Calderon |
| Eric D. Katz*° | Adam M. Epstein° |
| David M. Freeman | Cory J. Rothbort*° |
| Beth G. Baldinger | Michael R. Griffith° |
| Matthew R. Mendelsohn° | Christopher J. Geddis |
| David M. Estes | Alexander Q. Reynoso |
| | Samuel G. Wildman |
| | Julia S. Slater° |

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney
°Member of N.J. & N.Y. Bars

November 9, 2020

**VIA ECF**
Honorable Joel Schneider
United States Magistrate Judge
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
1 John F. Gerry Plaza, Courtroom 3C
4th and Cooper Streets
Camden, New Jersey 08101

      Re:    IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION
             Civil No. 19-2875 (RBK/JS)

Dear Judge Schneider:

Please accept this letter on behalf of the Plaintiffs in advance of the upcoming November 11, 2020 status conference.

**Teva TAR Application**. This issue has been fully briefed.

**Fact Witness Deposition Protocol**. The parties have spoken several times and have narrowed the potential disputes. The remaining issues appear to be the following: (1) Defendants' request to include language addressing future Losartan and Irbesartan related testimony, despite the Court's instruction to the parties during the most recent case management conference (10/28/20 Tr. 22:11-23:1) that the issue be deferred in light of the language precluding duplicative

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 2

questioning that is already in the protocol;  (2) Plaintiffs' request to include the caveat that the parties should give their best efforts to go forward with depositions once scheduled – Plaintiffs felt this language would be helpful in light of the multiple references to reasons why a deposition might be cancelled, postponed, or suspended;  (3) Plaintiffs' request to provide for the Defendants to identify their designation of 30(b)(6) corporate representatives within 20 days after the meet and confer process, or within some reasonable time thereafter, rather than waiting until 14 days before the depositions since the parties have committed to coordination of corporate representative depositions and depositions in individual capacities (Plaintiffs offered early December as a compromise but Defendants would not discuss any alternatives), so waiting until 14 days prior is not feasible in many cases, particularly given the proximity of the deposition schedule to the ongoing document production;  (4) Defendants' unwillingness to include a phrase indicating that space limitations is a basis to limit in person attendance at depositions; and  (5) Plaintiffs' request for 75% increase in time for depositions taken with translators, rather than the 50% suggested by Defendants.  Plaintiffs anticipate submission of a joint redline to the Court, so these issues can be easily addressed.

**30(b)(6) Deposition Notices**.  Plaintiffs have met and conferred with Torrent, Aurobindo, Hetero, and ZHP with regard to the objections served in response to the 30(b)(6) notices.  The discussions with Torrent, Aurobindo, and Hetero were quite productive, and revised notices were sent to each of these three Defendants by the end of last week.  These notices will be agreed to, or a few narrow disputes will be identified at most for the Court's decision at the November 11, 2020 status conference.  To the extent there are any remaining disputes Plaintiffs believe it makes sense to submit the notices in question with redlining to show the issue, on Tuesday, November 10, 2020,

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 3

to avoid burdening the Court with issues that are likely being resolved through this letter, and in the hope that there will be full agreement on the notices such that no objections will be served going forward. The discussion with ZHP involved a larger number of issues, some of which are complex as presented, and the parties will need more time to try to eliminate or at least reduce the issues. A call is being scheduled with Teva (and may occur today), and Plaintiffs are waiting to hear from Mylan in response to Plaintiffs' communication seeking to schedule a meet and confer.

**Meet and Confers on Defendant Employee Deponents.** The parties have begun discussing the potential corporate witnesses who are to be deposed in their individual capacities; however, these discussions have not advanced to the point of prioritization or scheduling. To date there have been no discussions regarding specific witnesses who might be designated as corporate witnesses, and Plaintiffs are hopeful that these discussions can begin shortly in order to begin to address scheduling issues, for example related to which and how many topics a witness may be designated to address, which also need to be deposed in their individual capacities, and where and when these depositions can proceed.

**Third-Party Subpoenas.** Pursuant to the Court's Order (ECF 575), Plaintiffs identified the entities on which they planned to serve third party subpoenas and subsequently served them by October 15, 2020. These subpoenas were sent to the process server on October 15, 2020, and were then served almost entirely during the subsequent week. In so doing, all Defendants received advance notice of the third parties which are now at issue, rendering the concerns about notice identified in Aurobindo and Torrent's motions baseless. (*See* ECF 609-3, p. 4.)

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 4

Since that time, Plaintiffs have been engaging in meet and confers with Defendants, as well as counsel for a number of these third parties. As a result of these efforts, Plaintiffs have worked with counsel for these third party entities to narrow and refine the scope of the requests.

While the parties and third parties are still working through some issues, there are a few discrete issues that are ripe for Court intervention. Resolution of these issues will allow the parties to resolve other related disputes that are currently being negotiated.

### *Defendants Should Accept Service of Third Party Subpoenas for Certain Foreign Entities Who Were Hired to Perform Work For Them*

Many entities from which Plaintiffs seek discovery are located outside of the United States. As the Court saw earlier in the case, service of process through the Hague Convention on International Service of Process can take months, if not years, to accomplish. Many of these foreign entities were hired by Defendants to perform services which are central to the issues in this case, such as product or API testing and facility inspections and audits.

Fed. R. Civ. P. requires that a party produce documents within its "possession, custody, or control." As Judge Schneider wrote in *Haskins v. First American Title Ins. Co.,*

> Pursuant to Fed.R.Civ.P. 34(a) a party may request another party to produce documents within that party's "possession, custody, or control." *See Camden Iron & Metal, Inc. v. Marubeni Am. Corp.,* 138 F.R.D. 438, 442 (3d Cir.1991). Federal courts construe "control" very broadly for Rule 34 purposes. *See id.* Consequently, there is control if a party "has the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.3d 142, 160 (3d Cir.2004). A party is not required to have physical possession of documents for control to be present. *See Camden Iron & Metal,* 138 F.R.D. at 441. It logically follows that a litigating party has control of documents if a contractual obligation requires a non-party to provide requested documents to the litigating party upon demand. *See id.* at 160–61 (finding control because manual specifically requires that papers

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 5

> and files of non-party be made available to appellant at all "reasonable times"); *Boucher v. First Am. Title Ins. Co.,* No. C10–199RAJ, 2011 WL 5299497, at *4 (W.D.Wash. Nov.4, 2011) (finding that contract established control over documents in non-party's possession because "one agreement, for example, requires the agent to produce any documents ... at 'any reasonable time upon request from [defendant].') (internal citations omitted). Additionally, control exists if a party has "a right to access the [requested] documents or obtain copies of them." *Andrews v. Holloway,* 256 F.R.D. 136, 145 n. 13 (D.N.J.2009); *see also Rosie v. Romney,* 256 F.Supp.2d 115, 119 (D.Mass.2003) (determining that control exists because defendant had contractual right to examine and copy information from non-party agencies).

*Haskins v. First Am. Title Ins. Co.*, No. CIV. 10-5044 RMB/JS, 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012) (Ex. A hereto).

The third parties at issue here were hired by Defendants to perform work, testing, and/or inspections on their behalf. Therefore, the work product was done for and at the request of a contractual relationship between the parties. Because the work product Plaintiffs now seek was done for Defendants, Defendants have access to the information Plaintiffs seek and should now be required to obtain it and produce it here.

An analogous example in cases like these exists where Plaintiffs are required to provide authorizations for Defendants to obtain medical and tax records. Plaintiffs generally do not have complete sets of either in their possession but are routinely asked to obtain and provide this information to Defendants in cases. Similarly here, Defendants should be required to obtain information in the hands of these foreign third parties and produced it here.

Plaintiffs further note that if this Court does order Defendants to accept service of the subpoenas for the foreign third parties, Plaintiffs will then engage in additional meet and confer

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 6

sessions with each of the Defendants to work through any objections that they might then have standing to assert.

### *Mylan-Specific Issues*

On October 29, 2020, Mylan indicated that it refused to accept service of any subpoenas for third parties it had engaged that were located overseas. Subsequently, on October 29, 2020, Mylan served objections to the subpoenas that had been served on Mylan. Mylan cannot have its cake and eat it too. Fed. R. Civ. P. 45(d)(2)(B) clearly provides that objections to a subpoena may only be served by parties "commanded to produce documents or tangible things." If Mylan is willing to accept service of the subpoenas and assume responsibility for obtaining and producing documents, they may properly serve objections, and Plaintiffs are willing to meet and confer with Mylan to resolve these objections. However, if Mylan continues to refuse to accept serve of these subpoenas and maintains they must be served directly on these third parties, then it has no standing to object, and these objections should be treated as invalid and moot.

### *Aurobindo, Torrent, and Teva Issues*

On October 30, 2020, Aurobindo, Teva, and Torrent filed a Motion to Quash and for a Protective Order (ECF 609). Later that day, the Court notified the Parties that these motions would be summarily denied if Defendants did not file affidavits that complied with L.R. 37.1(b)(1) by November 10, 2020. (ECF 613.) The Court further noted that these motions would be discussed at the November 11, 2020 conference call. Because these meet and confer calls with these Defendants have not yet taken place, Plaintiffs have outlined general responses to the motion below and will brief the issue fully if Defendants are permitted to proceed.

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 7

Standing

Similar to Mylan, the Teva Defendants assert incongruent defenses. They assert they have standing to bring the motion because these third party subpoenas apparently implicate "information protected by the attorney-client privilege [and] the work product doctrine.." (ECF 609-3, pp. 2-3). However, this cannot be the case. To the extent that these third parties are entities not owned by the Teva Defendants, there should not be any privileged documents in the hands of these entities. If the documents were freely distributed to outside parties, then any privilege claim is forfeited. *Bensel v. Air Line Pilots Assoc.*, 248 F.R.D. 177, 179 (D.N.J. 2008). Similarly, attorney work product relating to this case should be solely within the hands of the Teva Defendants and their counsel. Any protections relating to work product would also be forfeited to the extent any attorney work product was distributed to third parties. *Koch Materials Co. v. Shore Slurry Seal, Inc.,* 208 F.R.D. 109, 121–22 (D.N.J.2002).

Scope

Plaintiffs have already demonstrated a willingness to retract or narrow these subpoenas when a third party or defendant can explain why this might be warranted. Plaintiffs are willing to continue to seek reasonable discovery, but at this time, Defendants have not provided Plaintiffs with this information. Moreover, to the extent Defendants take the position that they are "unaware of what information or documentation the Third Parties have in their possession," (ECF 609-3, p. 1) they are not in the best position to tell Plaintiffs how to narrow these requests. If Defendants are unwilling to accept these subpoenas or to gather documents, then these meet and confers must take place with the third parties themselves, and the third parties are apparently in a superior position to assist Plaintiffs in narrowing their requests to the extent necessary.

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 8

*ZHP-Specific Issues*

As of this date, the Parties have had a number of meet and confer calls to discuss the third party subpoenas. At this time, no issues are ripe for the Court's intervention, though Plaintiffs anticipate that some ZHP-related issues may appear on the agenda in two weeks.

**Defendants' Additional Document Requests to Economic Loss Consumer Class Plaintiffs and TPP Class Plaintiffs.** Plaintiffs are pleased to report that they have reached agreement on the additional documents requests Defendants wish to serve on the economic loss class action consumer plaintiffs. The parties are very far along with discussions on Defendants' additional document requests they wish to serve on the economic loss TPP plaintiffs. Plaintiffs are hopeful the parties can reach agreement by the upcoming CMC. With respect to discovery as to Plaintiff MSP Recovery Claims, Series LLC's assignors, the parties met and conferred multiple times since the last conference and have worked on a stipulation that would clarify that MSPRC is not pursuing individual claims in this case other than those three alleged in the master economic loss complaint. The parties are working on finalizing that stipulation and hope to finish it before Wednesday's status conference.

A separate issue has arisen, however, about Defendants' newly-revealed desire to serve additional document requests on the medical monitoring class actions plaintiffs as well, which is something they did not disclose until a few days ago. This is addressed more fully below.

**Requests and Depositions as to Medical Monitoring Plaintiffs.** For the last two months, Defendants have exclusively focused on additional document requests they wished to propound on the consumer and TPP class plaintiffs in the economic loss class action. These are the same

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 9

plaintiffs for whom Plaintiffs' counsel proposed deposition dates a few weeks ago, and whose depositions Plaintiffs understand will begin no later than January 18, 2021.

However, on the evening of Thursday, November 5, Defendants raised for the first time their desire to propound additional document requests on the medical monitoring class plaintiffs. Based on the Court's prior rulings, Plaintiffs do not disagree with Defendants' ability to seek additional appropriate discovery from these plaintiffs, as they have done with the economic loss class plaintiffs. But Plaintiffs do question the timing and sequence of this discovery.

To date, the parties' and the Court's focus has been on prioritizing the economic loss class action, not the medical monitoring class action. To wit, (i) Defendants' last few agenda letters to the Court exclusively focused on additional document requests they wished to serve on the economic loss (not the medical monitoring) class plaintiffs; (ii) Plaintiffs had provided deposition dates for the economic loss class plaintiffs only without any correction from Defendants that they were also seeking medical monitoring class plaintiffs' depositions at this time; and (iii) the Court's various orders and guidance have prioritized or focused solely on the economic loss class plaintiffs. *See, e.g.*, 10/16/20 Order (ECF 597) at ¶ 5 ("The parties' discovery dispute letters regarding defendants' Rule 34 document[] requests direct to the economic class plaintiff shall be served by October 26, 2020."); 09/30/20 Tr. at 24 ("MR. HONIK: I think if we're operating under the default position of the Court, which is that we're proceeding with the economic class as the leading edge, the answer is yes. JUDGE SCHNEIDER: Okay. For the time being, we are, subject to any change, and we'll do that.").

Further, while conferring about the document requests to the economic loss class plaintiffs, Plaintiffs explicitly asked Defendants multiple times if they also intended to seek additional

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 10

discovery from medical monitoring class plaintiffs. Defendants remained silent and never indicated they also intended to propound additional discovery on the medical monitoring class plaintiffs.

Thus, it came as a surprise to Plaintiffs to received proposed document requests to medical monitoring plaintiffs a few days ago. Further, in follow-up, Defendants revealed they intended to depose medical monitoring class plaintiffs in the same window of time (January 18 to March 26) as the economic loss class plaintiffs.

Plaintiffs do not oppose Defendants' seeking additional written discovery or depositions of the medical monitoring plaintiffs. However, because the prevailing operating assumption for the better part of a year has been the prioritization of the economic loss class action – the "leading edge" – Plaintiff propose that discovery of in the medical monitoring class action be staggered to trail slightly the written discovery and depositions in the economic loss class action. This will result no disruption of the overall MDL, and will allow the parties to more efficiently focus discovery efforts in the economic loss class action. To this end, Plaintiffs propose that depositions of medical monitoring class plaintiffs begin no later than the close of the January 18 – March 26 period for depositions of economic loss class plaintiffs, and be completed within approximately two months. Similarly, Plaintiffs propose any additional written discovery be served on medical monitoring plaintiffs by the CMC on November 24. This also will allow the parties additional time to confer about the draft requests, as Plaintiffs just received Defendants' draft requests a few days ago; conferred with Defendants the following day; and have just heard back at 5pm eastern from Defendants as to the issues raised during the meet and confer process last Friday.

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 11

**Wholesaler Document Productions.** Two of the three Wholesaler Defendants, AmerisourceBergen and Cardinal Health, claim they have completed their productions in response to the court-approved first set of document requests to these defendants (aside from a supplemental data pull per agreement between the parties). The third, McKesson, has yet to complete its production, including the production of exemplar documents and standard operating procedures. These documents should have been produced last month. These are extremely discrete categories of documents, which were the subject of months-long meet and confer discussions, court argument, and the requests were approved and entered by the Court months ago. McKesson should have completed its production already, like the other two Wholesaler Defendants. They should be directed to complete their production promptly.

Additionally, all three Wholesaler Defendants have objected to producing data responsive to the court-ordered document requests on the basis that the Drug Supply Chain Security Act ("DSCSA") prohibits them from doing so, even under court order. Plaintiffs currently are in the process of conferring with Wholesaler Defendants about this in an attempt to informally resolve the issue. But it is disconcerting that Wholesaler Defendants only raised this objection for the first time after the parties engaged in a months-long meet and confer over the document requests; the parties submitted lengthy letter briefing to the Court; the parties argued at length before the Court over the summer; and after all of which, the Court approved and entered the document requests which Defendants had agreed to answer. Not once during these many months did Wholesaler Defendants suggest there might be a statutory or confidentiality issue of the type they belatedly raised in their written objections.

Honorable Joel Schneider, U.S.M.J.
November 9, 2020
Page 12

Thank you for your courtesies and consideration.

Respectfully,

Adam M. Slater