# Exhibit A

2012 WL 5183908

2012 WL 5183908
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Miriam HASKINS, et al, Plaintiffs,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY, Defendant.

Civil No. 10–5044 (RMB/JS).
|
Oct. 18, 2012.

**Attorneys and Law Firms**

Daniel Posternock, Barron & Posternock, L.L.P., Moorestown, NJ, for Plaintiffs.

Edward J. Reich, SNR Denton US LLP, New York, NY, for Defendant.

*MEMORANDUM OPINION AND ORDER*

JOEL SCHNEIDER, United States Magistrate Judge.

 **\*1** This matter is before the Court on plaintiffs' discovery application. *See* Plaintiffs' Sept. 4 and 10, 2012, Letter Briefs ("LB"); Defendant's Sept. 10, 2012, Letter Brief ("LB"). The issues before the Court generally involve whether defendant, First American Title Insurance Company ("First American"), is in "possession, custody, or control" of documents held by its "independent title agents," and whether First American is under a duty to direct its agents to "preserve" the documents.

Plaintiffs filed suit against First American because of an alleged scheme to overcharge customers for title insurance when they refinanced their residential mortgages. *See* Complaint at ¶ 1, Doc. No. 1. Most of First American's New Jersey title insurance policies are issued by "independent title agents."[1] Plaintiffs seek copies of a representative sample of the agents' closing files to determine if and why other customers were overcharged. First American entered into separate agency contracts with each agent, which addressed the agent's duties and responsibilities, including the maintenance of their First American files. Plaintiffs seek class certification and define the proposed class as all New Jersey consumers who paid premiums in excess of regulated

title insurance refinance rates during the defined class period. *See id.* at ¶ 9. This Opinion and Order memorializes the Court's rulings on the record after completion of the recent oral argument.

**Discussion**

Plaintiffs present two unresolved discovery disputes. First, whether First American has possession, custody, or control of the requested documents (closing files) in the physical possession of its agents such that it must produce the documents. Second, whether First American must issue a "litigation hold" to its agents to ensure that the requested documents are preserved. The parties recently reached an agreement on the first issue. First American agreed to contact its agents and to request them to produce approximately 300–400 agreed upon representative closing files. Because the parties reached an agreement about what files to produce, the Court did not specifically rule at oral argument whether First American had possession, custody, or control of its agents' closing files. However, in order to decide whether First American must direct its agents to implement a litigation hold, the Court must decide whether it has possession, custody, or control over its agents' closing files.

Pursuant to Fed.R.Civ.P. 34(a) a party may request another party to produce documents within that party's "possession, custody, or control." *See Camden Iron & Metal, Inc. v. Marubeni Am. Corp.,* 138 F.R.D. 438, 442 (3d Cir.1991). Federal courts construe "control" very broadly for Rule 34 purposes. *See id.* Consequently, there is control if a party "has the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.3d 142, 160 (3d Cir.2004). A party is not required to have physical possession of documents for control to be present. *See Camden Iron & Metal,* 138 F.R.D. at 441. It logically follows that a litigating party has control of documents if a contractual obligation requires a non-party to provide requested documents to the litigating party upon demand. *See id.* at 160–61 (finding control because manual specifically requires that papers and files of non-party be made available to appellant at all "reasonable times"); *Boucher v. First Am. Title Ins. Co.,* No. C10–199RAJ, 2011 WL 5299497, at \*4 (W.D.Wash. Nov.4, 2011) (finding that contract established control over documents in non-party's possession because "one agreement, for example, requires the agent to produce any documents ... at 'any reasonable time upon request from [defendant].') (internal citations omitted). Additionally, control exists if a party has "a right to access the [requested] documents or obtain copies

2012 WL 5183908

of them." *Andrews v. Holloway,* 256 F.R.D. 136, 145 n. 13 (D.N.J.2009); *see also Rosie v. Romney,* 256 F.Supp.2d 115, 119 (D.Mass.2003) (determining that control exists because defendant had contractual right to examine and copy information from non-party agencies).

 **\*2** First American's agency contracts contain language plainly indicating that it has control over and access to its agents' closing files. In the course of discovery, the parties produced copies of several agency contracts between First American and its agents. First American agreed the contracts are representative of the "thousands" of agency contracts it may have entered into.[2] In the Fidelity Title Abstract Company contract Fidelity is required to:

> Maintain and carefully preserve for a period of not less than ten (10) years or any period required by statute or regulation of Territory, whichever period is greater, in a manner and form prescribed or approved by COMPANY, all records, books, books of account, files, documents, correspondence, bank records, title evidence and material of all kinds in any way relating to the activities of AGENT under this Agreement or to the Policies issued by Agent (hereinafter termed "Documentation") and make all Documentation available for inspection and examination by COMPANY at any reasonable time.

Plaintiffs' Sept. 4, 2012, LB, Ex. B at 18, FID0003. The Finiti Title contract contains similar language, requiring that Finiti:

> Maintain and carefully preserve all records, books, books of accounts, files, documents, correspondence, bank records, title evidence and material of any kind that relate in any way to the Agency and this agreement or to the Policies issued by Agent (hereinafter termed "Documentation"), and make all Documentation available for inspection and examination by First American at any reasonable time upon request by First American.

*Id.* at 2, FIN002. Further, the TransContinental Title Insurance Company contract requires TransContinental to:

> Permit First American to examine, audit and copy all financial information and records upon reasonable prior notice.

Defendant's Sept. 24, 2012, Fax at 13, FA/Haskins 002191. These contracts clearly require First American's agents to make their documents available to First American upon request. Since First American has the legal right to obtain its agents' documents on demand, this establishes control pursuant to Rule 34. *See Thompson,* 380 F.3d at 160.

It is true, as First American argues, that some of its contracts contain language that establishes that the requested files are the property of the agent. The MeyMax Title Agency, CTL Title Insurance, and Equititle contracts provide:

> Each file and its complete contents, or a duplicate copy thereof, pertaining to a Title Insurance Policy of Insurer are the property of the Agent, unless insurance laws provide to the contrary. During the term of this Agreement (and continuing after termination of this Agreement for whatever cause), Insurer shall have the continued right of access to, and continued use of, these files including the ability to make copies from time to time.

Plaintiffs' Sept. 4, 2012, LB, Ex. B at 13, MEY0005, and 23, CTL0004; Defendant's Sept. 24, 2012, Fax at 7, FA/Haskins 002184. However, despite this language, First American still has the continued right of access to and use of its agents' files. Further, the Equititle contract specifically provides in a separate clause that First American shall:

> **\*3** Have the right at all reasonable times to examine all accounts of Agent and to check any and all checks, books, records, and files of Agent, which pertain to the Business of Title Insurance.

Defendant's Sept. 24, 2012, Fax at 7, FA/Haskins 002184. First American's right to access and use its agents' files establishes that it controls the files within the meaning of Rule 34. *See Andrews,* 256 F.R.D. at 145 n. 13; *see also Rosie,* 256 F.Supp. at 119.

A recent case from the Western District of Washington that also involved First American is directly on point. *See Boucher, supra.* In *Boucher,* plaintiffs alleged that First American failed to give a legally mandated discount to customers in Washington who refinanced their homes. *Boucher,* 2011 WL 5299497, at \*1. The court denied plaintiffs' first motion for class certification because plaintiffs identified only five people who qualified but did not receive the discount. The *Boucher* court permitted plaintiffs to file a renewed motion for certification and to conduct discovery to ascertain a class that satisfied Fed.R.Civ.P. 23(a). *Id.* at \*1. As part of this discovery the plaintiffs requested that First American produce documents from refinance transactions in the physical possession of its independent title agents. *Id.* at \*1–2. First American's objection to the production was overruled. The court determined that First American must produce documents in the physical possession of its agents because its agency contract evidenced that it had "control" of

2012 WL 5183908

the documents pursuant to Rule 34.[3] *Id.* at *3–4. The court relied on virtually identical contract language to what is at issue here. *Compare id.* at *4 ("One agreement ... requires the agent to produce any documents 'of any kind that relate in any way to the activities of [the] Agent governed by the Agency and this AGREEMENT or the Policies issued by [the] Agent' at 'any reasonable time upon request from [defendant].' "), *with* Finiti and Fidelity contracts, *supra.* In *Boucher,* First American provided no evidence to show that contracts with its other agents varied in a manner that would prevent the court from determining the requisite control existed. Further, the court found that "there is no better source for ... agency documents than [defendant]." *Id. Boucher* is directly on point and supports the Court's ruling that First American has "possession, custody, or control" of the closing files in its agents' physical possession.

First American argues it should not be required to produce documents in the physical possession of its agents because it does not possess or control the requested documents. However, the case law First American relies on is inapposite. In the cases First American relies upon, the third parties with physical possession of the requested information were not contractually required to provide the litigating party with documents. *See Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1426–27 (7th Cir.1993) (third party with possession of demanded documents had no contractual obligation to provide plaintiffs with documents); *Klesch & Co. Ltd. v. Liberty Media Corp.,* 217 F.R.D. 517, 520–21 (D.Colo.2003) (finding that defendant corporation had no control over documents in sister corporation's possession).

 **\*4**  First American also argues it should not be compelled to produce the requested closing files because it cannot "force" its agents to comply. This argument is rejected for the reason that First American may claim that the agent breached its contract if the agent does not produce the requested files.[4]

Having determined that First American "controls" its agents' closing files, the Court will now address plaintiffs' request that First American be ordered to direct its agents to preserve their closing files for the possible use or production in the case. A duty to preserve documents arises when a party "knows or reasonably should know" that litigation is foreseeable. *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.* 348 F.Supp.2d 332, 336 (D.N.J.2004). The duty to preserve does not extend to every document. Rather, a party is only obligated to preserve information that is reasonably related to foreseeable litigation. *Id.* But once the obligation to preserve

arises, a party must "put in place a litigation hold to ensure the preservation of relevant documents." *Major Tours, Inc. v. Colorel,* No. 05–3091(JBS/JS), 2009 WL 2413631, at *2 (D.N.J. Aug.4, 2009) (citing *Zublake v. UBS Warburg, LLC "Zublake IV",* 220 F.R.D. 212, 218 (S.D.N.Y.2003)). Furthermore, for a litigation hold to be suitable, a party must identify potentially relevant sources of information, implement procedures to retain that information, and produce information responsive to discovery requests. *See Zublake v. UBS Warburg, LLC,* 229 F.R.D. 422, 432–33 (S.D.N.Y.2004).

If a party fails to produce documents after a litigation hold should be in place that party may be subject to sanctions due to a failure to preserve. *See Mosaid,* 348 F.Supp.2d at 335. One possible sanction is a spoliation inference.[5] *Id.* For a spoliation inference to be imposed four factors must be present: (1) the evidence must have been in the party's control; (2) it must be relevant to claims or defenses in the case; (3) it must have actually been suppressed or withheld by the party; and (4) the duty to preserve evidence must have been reasonably foreseeable to the party. *See Bull v. United Parcel Serv., Inc.,* 665 F.3d 68, 73–74 (3d Cir.2012). Since a spoliation inference is a possible sanction for failure to implement a litigation hold, it follows that a litigation hold only applies to documents within a party's possession, custody, or control. As already discussed, this includes documents that are not necessarily in the party's physical possession. Therefore, a litigation hold may extend to third parties, and courts have issued orders to this effect. *See In re Flash Memory Antitrust Litig.,* No. C–07–00086– SBA, 2008 WL 1831668, at *1 (N.D.Cal. Apr.22, 2008) (stating that the duty to preserve "extends to documents ... in the possession, custody and control of the parties to this action, and any employees, agents ... or other non-parties who possess materials reasonably anticipated to be subject to discovery."); *see also RMS Servs.-USA, Inc. v. Houston,* No. 06–15585, 2007 WL 1058923, at *1 (E.D.Mich. Apr.5, 2007).

 **\*5**  Here, the duty to preserve clearly applies to First American because litigation is already in progress. Further, the closing files of First American's agents are plainly relevant to plaintiffs' claim. Thus, if it has not already done so, First American must implement a litigation hold to preserve all documents relevant to this litigation that are in its possession, custody, or control. *See Mosaid,* 348 F.Supp.2d at 336. As this Court has held, documents may be within First American's control even if it does not have physical possession of the documents. *See Flash Memory,* 2008 WL 1831668, at *1. Because First American's contractual language establishes

2012 WL 5183908

that it has possession, custody, or control over relevant documents in the physical possession of its independent title agents, First American's litigation hold must include these documents. Indeed, some of First American's agency contracts anticipated this would occur. In the Finiti contract, Finiti is required to: "[i]mplement procedures and safeguards to comply with the terms of any litigation hold/preservation notice ... that is directed to Agent by/through First American." Defendant's Sept. 24, 2012, Fax at 37, FA/Haskins 002228.

## Conclusion

For all the foregoing reasons,

IT IS hereby ORDERED this 18th day of October, 2012, that by October 18, 2012, First American shall send a request to its applicable present and former independent title agents requesting copies of the approximate 300–400 closing files the parties agreed will be produced. First American shall serve plaintiffs with a copy of the letter to be used. First American shall use its best reasonable efforts to obtain the responsive files within one (1) week of the agents' receipt of First American's request. First American shall promptly produce to plaintiffs copies of the responsive documents on a rolling basis. To the extent responsive documents are not produced by October 31, 2012, plaintiffs shall include them in their motion to compel discovery to be served by October 31, 2012; and it is further

ORDERED that by October 18, 2012, First American shall serve a "litigation hold" letter on its present and former independent title agents in New Jersey from September 29, 2004 to the present who sold Lender's Title Insurance Policies and who had contracts with First American that were the same or substantially similar to the contracts provided to the Court in connection with the October 4, 2012, hearing.[6]

## All Citations

Not Reported in F.Supp.2d, 2012 WL 5183908

Footnotes

1    The Court has made no determination whether First American's agents are "independent." The Court accepts the characterization at face value.

2    The parties produced agency contracts from: CTL Title Insurance Agency, Equititle, Fidelity Title Abstract Company, Finiti Title, MeyMax Title Agency, TransContinental Title Company, and Trillion Title Professionals.

3    The determination of "control" was necessary to decide multiple discovery demands in *Boucher.* For a different dispute addressed by the court plaintiffs were prohibited from obtaining from the title agents "essentially every mortgage document and associated document" from refinance transactions during the class period because it was unduly burdensome, even though defendant had control of the requested documents. The court stated that discovery of requested documents must be limited to an appropriate sample size. *Boucher,* 2011 WL 5299497, at *4. The Court made the same ruling in this case.

4    Equititle's contract requires it to "cooperate and assist in the defense of any litigation ... if requested and approved [by defendant] ..." and Finiti's contract requires it to "[c]omply with all instructions ... requirements, directives ... in addition to legal and industry practices." Defendant's Sept. 24, 2012, Fax at 9, FA/Haskins 002184; Plaintiffs' Sept. 4, 2012, LB Ex. B at 1, FIN001. Further, the TransContinental contract provides that TransContinental shall forward all relevant information to First American when it learns of a legal claim and that the "[Agent] agrees to cooperate with First American in a timely manner in the handling of any claim." Defendant's Sept. 24, 2012, Fax at 14, FA/Haskins 002192. These provisions further demonstrate First American's control of the requested closing files.

5    A spoliation inference is a jury instruction that allows a jury to draw the inference that a party did not produce relevant evidence because that evidence was damaging. *See Mosaid,* 348 F.Supp.2d at 336 (citing *Scott v. IBM Corp.,* 196 F.R.D. 233, 248 (D.N.J.2000)).

6    The dates in this Order were included in the Court's October 5, 2012 Order, Doc. No. 87.

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.