

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA 15219
412.263.2000   FAX: 412.263.2001
WWW.PIETRAGALLO.COM

DIRECT DIAL NO.: 412.263.1816
DIRECT FAX NO: 412.263.4246
FILE NO.: MYLAN-112578
EMAIL:  cct@pietragallo.com

November 9, 2020

**Via ECF**

The Honorable Joel Schneider
United States Magistrate Judge
USDC, DISTRICT OF NEW JERSEY
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

   Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
      USDC, District of New Jersey, No. 1:19-md-2875-RBK-JS

Dear Judge Schneider:

  Defendants Mylan N.V., Mylan Pharmaceuticals Inc., and Mylan Laboratories Ltd. (collectively, "Mylan") respectfully submit this letter brief joining in the Teva Defendants' request for an order foreclosing additional review of documents that, based on technology-assisted review ("TAR"),[1] are predicted to be non-responsive and/or shifting to Plaintiffs the cost of Mylan's review of documents that Mylan's TAR platform predicts are non-responsive.

  Mylan expressly incorporates the legal arguments contained in the Teva Defendants' October 13, 2020 letter brief, Dkt. 594, and Mylan offers the following information regarding its review of custodial electronically stored information ("ESI") in support of the relief requested herein.

  **I.** **BACKGROUND**

  The ESI Protocol governing electronic discovery in this litigation expressly contemplates that a producing party may utilize TAR to reduce the number of documents to be reviewed:

> The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols, **and any TAR/predictive coding prior to using any such technology to narrow the pool of collected documents to a set to undergo review for possible production**.

---

[1] Mylan is using the TAR 2.0 platform that is party of the Relativity eDiscovery platform. This platform is comparable to the Continuous Multi-Modal Learning ("CMML") platform being utilized by the Teva Defendants.

(Dkt. 127, pp. 3-4 [emphasis added].) The ESI Protocol requires only that, prior to utilizing TAR to cut off review of documents, the parties meet and confer "as necessary and appropriate."

Significantly, no later than November 15, 2019, Mylan put Plaintiffs on notice during an in-person meeting to discuss ESI issues that Mylan reserved the right to utilize TAR to the extent it became appropriate over the course of custodial ESI discovery. Subsequently, during a status conference with the Court on July 15, 2020, counsel for Mylan reaffirmed Mylan's reservation of its right to utilize TAR to end its custodial ESI review to the extent the TAR platform ultimately identified a set of documents that were unlikely to be responsive. Mylan wrote to Plaintiffs on July 24 and again confirmed this reservation in writing. (Ex. A, July 24, 2020 letter from C. Trischler to B. Parekh.) In that same correspondence, Mylan advised Plaintiffs that before Mylan utilizes TAR to forgo its review of documents predicted by TAR to be non-responsive, Mylan would inform the Plaintiffs so that the parties could meet and confer. (*Id.*) Plaintiffs did not object to this approach.

On October 28, 2020, counsel for Mylan informed Plaintiffs that, with regard to the 13 "priority" custodians identified by Plaintiffs on May 7, 2020, Mylan had reached the so-called "null set"—meaning TAR has determined that the remaining, unreviewed documents from those custodial files are unlikely to be responsive, such that further review would not be proportionate. Before contacting Plaintiffs, Mylan performed validation exercises, discussed in more detail below, and confirmed that the documents remaining in the priority custodian null set are overwhelmingly non-responsive.

Plaintiffs have expressed a willingness to further discuss Mylan's potential use of TAR to cease eyes-on review of null set documents, subject to various conditions. Likewise, Mylan has indicated a willingness to provide meaningful data to Plaintiffs to allow Plaintiffs to independently validate Mylan's basis for cutting off the review. The meet and confer is ongoing, but as of yet, the parties have not reached an agreement.

In order to preserve these issues in light of the upcoming ESI discovery deadline, Mylan must seek leave of Court to cut off its review at the null set, or to grant Mylan a short extension and to require Plaintiffs to pay for Mylan's linear review of these non-responsive documents.

## II. MYLAN'S DOCUMENT REVIEW PROCESS

For months, Mylan has employed a massive team of contract reviewers, as well as seven outside counsel dedicated to quality control, to engage in the manual review of 698,221 documents from the email files of the "priority" custodians. (Ex. B, Consilio Decl. at ¶ 3.) The documents being reviewed are all documents that "hit" on ESI search terms, and have been prioritized by TAR. Recently, with respect to the "priority" custodians, Mylan crossed over from reviewing documents that TAR deemed to be potentially responsive to those contained in the presumptively non-responsive null set. (Ex. B, Consilio Decl. at ¶ 4.) Mylan is also currently reviewing documents related to its other 39 ESI custodians in order to prioritize the production of responsive documents and to reach a global null set of documents that TAR deems likely to be non-responsive.

In total, Mylan has now manually reviewed approximately 2.0 million documents to date and will soon reach the "global" null set with respect to all custodians.

At present, there are 670,739 documents contained in the "priority" custodian null set. (Ex. B, Consilio Decl. at ¶ 4.) Given this significant volume of likely non-responsive documents, Mylan initiated efforts to validate its TAR model before approaching the Plaintiffs regarding Mylan's request to cut off the review as to the "priority" custodians. Specifically, Mylan spent approximately 425 hours reviewing a uniform random sample of 15,000 of documents contained in the null set. (Ex. B, Consilio Decl. at ¶ 5.) This sample set review ultimately revealed only 96 responsive documents. (Ex. B, Consilio Decl. at ¶ 5.) Thus, Mylan's initial validation exercise revealed that only 0.64% of the documents in the null set sample for the "priority" custodians were responsive. (Ex. B, Consilio Decl. at ¶ 5.) Based on this, Mylan and its eDiscovery consultants concluded that TAR correctly predicted that further review of this null set would not reveal a statistically significant number of responsive documents. Further, of the 96 documents that were identified, the vast majority could be characterized as marginally responsive at best.

After this review was complete, Mylan then ran several additional rounds of "training" on the TAR model in an effort to find additional responsive documents within the priority custodian null set, reviewed additional documents contained in the null set, and identified additional documents for production. Mylan then initiated its meet and confer with Plaintiffs to cut off the review in accordance with the ESI Protocol.

In order to meet the Court's November 29th production deadline with respect to only the 670,739 documents contained in the "priority" custodian null set, Mylan would need to retain an additional 200 contract attorneys, each of whom would need to spend 40 or more hours a week solely on document review for this case, for a total of between 16,000 and 20,000 hours, and 2-3 weeks. (Ex. B, Consilio Decl. at ¶ 6.) This would equate to a cost of approximately $850,000 to review the documents that TAR predicts are non-responsive. Importantly, this is just for the first level review of the "priority" custodian null set. (Ex. B, Consilio Decl. at ¶ 7.) Notably, these numbers **do not** factor in the time and money that Mylan would also need to spend on the review of the null set for Mylan's remaining 39 ESI custodians. Further, none of these numbers account for the many hours that must be spent by outside counsel attorneys on redactions, privilege designations, preparation of a privilege log, and quality control review. Mylan anticipates these costs would ultimately be well in excess of $2,000,000, which is in addition to the many millions of dollars Mylan has already spent on ESI discovery in this litigation.

### III.  RELIEF REQUESTED

In accordance with the Federal Rules of Civil Procedure, the applicable caselaw, and the ESI Protocol, Mylan joins in Teva's Motion and requests that this Court enter an order (i) foreclosing additional review of "priority" custodian documents that are predicted by TAR to be non-responsive, and (ii) permitting Mylan to undertake the same validation exercises with regard to its remaining 39 ESI custodians. In the alternative, to the extent Mylan is required to review documents that TAR predicts are non-responsive, Mylan respectfully requests that this Court grant

Mylan an additional 30 days to complete this manual review, and consider allocating costs associated with this review to the Plaintiffs.

                                             Respectfully submitted,

                                             Clem C. Trischler

c:       All Counsel of Record (via ECF service)