UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Actions | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

## DEFENDANTS' OBJECTION TO THE APPOINTMENT OF A SPECIAL MASTER FOR GENERAL DISCOVERY MATTERS

### INTRODUCTION

The discovery issues raised in this multidistrict litigation (MDL) since it was ordered in February 2019 have not required the assistance of a special master. Despite docket-congestion in the New Jersey District, and disruptions resulting from COVID-19, by the time Magistrate Judge Schneider retires on January 15, 2021, he will have assisted the parties through virtually all of the preliminary pleadings and written discovery that will be required of them as to valsartan, and will have established the protocols for the fact witness depositions that will be taken. His retirement also will coincide with the beginning of a new phase of these proceedings that will be comprised of valsartan-focused fact witness depositions (scheduled to begin shortly after Judge Schneider retires), expert discovery as to general causation and class certification, *Daubert* hearings as to those experts, and class certification

DM1\11551359.1

and dispositive motions. By clearing out the discovery "underbrush," Judge Schneider has paved the way for a smooth transition of his duties to Magistrate Judge Williams, who was recently assigned by the Court to succeed Judge Schneider on this litigation upon his retirement. Under these circumstances, and for additional reasons discussed below, the appointment of a special master upon Judge Schneider's retirement to manage general discovery issues is unnecessary and not warranted, and Defendants object to any such appointment.

## PERTINENT FACTUAL BACKGROUND

This MDL consolidates and coordinates pre-trial proceedings in cases asserting claims arising out of alleged impurities in three blood pressure drugs: valsartan, irbesartan, and losartan. (ECF Nos. 1, 325). Shortly after the MDL was ordered by the Judicial Panel on Multidistrict Litigation (JPML) on February 14, 2019, Plaintiffs filed three master complaints that assert personal injury, economic loss, and medical monitoring claims, respectively, based exclusively on the alleged impurities in valsartan. (ECF Nos. 122-23, 398). Defendants' joint motions to dismiss the valsartan claims pursuant to FRCP 12 are pending. Plaintiffs have not filed master complaints asserting claims involving irbesartan or losartan.

Consequently, the MDL proceedings as to those claims have not advanced since they were transferred here by the JPML on December 18, 2019.[1]

In contrast, the MDL proceedings as to the claims involving valsartan have advanced such that in 2021 the Court will be focusing on the merits of the general causation and class certification aspects of Plaintiffs' personal injury and class action claims. Judge Schneider's retirement, effective as of January 15, 2021, will coincide with this new phase of these proceedings. Judge Schneider has worked closely with the parties since announcing his retirement in early 2020 to resolve virtually all of the preliminary pleading and written discovery-related matters in order to ensure a smooth transition of the MDL to Magistrate Judge Williams. *See* Transcript of CMC, ECF No. 601, pp. 22 (10/14/2020) ("Magistrate Judge Williams is going to take over the management of the case from a magistrate judge perspective when I retire from the bench as of January 15, so we thought now is a good time to start bringing Magistrate Judge Williams up to speed and to transition things.").

By the time Judge Schneider retires, the parties will have completed the following pre-trial, discovery-related events, setting the stage for fact witness

---

[1] It is expected that many of the pre-trial issues resolved in connection with valsartan will be applicable to and utilized by the Court and the parties in the MDL proceedings as to irbesartan and losartan, thereby streamlining and enhancing the efficiency of those proceedings. *See, e.g.*, Transcript of CMC, ECF No. 601, pp. 18-22 (10/14/2020).

depositions, expert discovery on manufacturing, scientific, and class certification issues, *Daubert* proceedings, and class certification and dispositive motions:

- Short Form Complaints (ECF No. 187);
- Plaintiff Fact Sheets and related information productions (ECF No. 283);
- Defendant Fact Sheets (entire supply chain) and related information productions (ECF No. 546);
- Rule 34 Document Requests (entire supply chain and consumer and third-party payor class representatives) and related document productions (ECF Nos. 328, 416, 509, 611);
- 30(b)(6) Deposition Notices served on manufacturers (ECF Nos. 575, 585); and
- Deposition Protocol and related Addendums for the depositions of Chinese and Indian nationals residing in mainland China and India (ECF No. 585).

In connection with the above events, the Court has made numerous rulings that define the parameters of discovery in the MDL, and that will assist the parties in progressing toward a resolution of the claims at issue. For example, Judge Schneider has ruled on the scope of discovery from the manufacturers, wholesalers, and retailers, (*see, e.g.*, ECF Nos. 127, 303, 328, 507), and similarly defined the scope of discovery as to the class representatives in approving the Rule 34 requests served on them (*see, e.g.*, ECF Nos. 597, 611). Similarly, in the coming weeks, the Court will establish the rules for fact depositions, including the depositions of the foreign nationals residing in China and India, which, as Judge Schneider acknowledged, involve complex issues regarding foreign laws and related logistics; complexities that are compounded by the travel restrictions and quarantines imposed

4

around the world due to COVID-19. *See* Transcript of CMC, ECF No. 610, pp. 36-43 (10/28/2020); ECF No. 611. These rulings, and others that govern the parameters of the parties' written discovery and fact witness depositions, will inure to Judge Williams' benefit, and that of the Court and the parties themselves.

## ARGUMENT

Judge Schneider's management of the discovery issues in this MDL without the assistance of a special master demonstrates that the appointment of a special master for general discovery issues is unnecessary. This is especially true given that (i) Judge Williams has been assigned to this MDL, (ii) Judge Schneider's retirement will coincide with this MDL entering into a new phase, and (iii) Judge Schneider has already cleared away virtually all of the discovery underbrush ensuring a smooth transition for Judge Williams.

**I.  THE APPOINTMENT OF A SPECIAL MASTER IS NOT NECESSARY OR WARRANTED.**

In this Circuit, the appointment of a special master should be "the exception and not the rule." *Prudential Ins. Co. v. U.S. Gypsum Co.*, 991 F.2d 1080, 1084 (3d Cir. 1993) (granting mandamus and directing district court to withdraw and vacate reference to special master); *Bare v. State Auto Grp.*, No. 5:13-cv-2812, 2013 WL 3878606, at *2 (E.D. Pa. July 26, 2013) (noting that "[t]he use of special masters must be sparingly used by district judges"); *see also* Fed. R. Civ. P. 53 (advisory committee notes to 2003 amendment to subdivision a) ("A pretrial master should be

appointed only when the need is clear."). Absent the parties' consent, a special master may only be appointed to hold trial proceedings or recommend findings of fact on non-jury issues where an "exceptional condition" warrants the appointment, or to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a).

It is not disputed that this Court has an increasingly congested docket, especially in light of COVID-19, and that the MDL raises multifaceted procedural issues, as well as complex scientific and economic issues. However, all that notwithstanding, the "appointment of a special master must be limited in scope and is not justified simply because of docket congestion or the complexity of factual and/or legal issues." *Agostino v. Quest Diagnostics, Inc.*, No. 2:04-cv-4362, 2012 WL 2344865, at *1 (D.N.J. June 20, 2012) (attached as Ex. A); *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259 (1957) ("[C]ongestion in itself is not such an exceptional circumstance as to warrant a reference to a master."); *Prudential Ins. Co.*, 991 F.2d at 1087 (citing *La Buy* and emphasizing "[n]either the volume of work generated by a case nor the complexity of that work will suffice to meet the 'exceptional condition' standard promulgated by Rule 53").

In *Prudential*, the Third Circuit granted mandamus to strike the appointment of a special master where there were no "particular, unique, special or exceptional

circumstances with which a magistrate judge could not deal effectively or which would require that a magistrate judge be replaced by a special master[,]" 991 F.2d at 1085. Judge Schneider's management of the discovery issues in the MDL, which has been entirely without the assistance of a special master, demonstrates that discovery in this matter can be managed by a magistrate judge. This is especially true given that Judge Schneider's retirement will coincide with the MDL entering into a new phase, and, given the fact that by the time he retires, Judge Schneider will have resolved virtually all of the preliminary pleading, written discovery, and fact deposition issues required of the valsartan parties, and thus ensuring a smooth transition for Judge Williams.

Judge Schneider's management of this MDL without the assistance of a special master shows the contrast between this MDL and *In re: Liquid Aluminum Sulfate Antitrust Litigation*, where the "breadth and frequency of the parties' discovery disputes," which the Court noted were likely to continue with regularity into the foreseeable future, caused the magistrate judge there to require the assistance of a special master. *See* Order, MDL No. 2687 (D.N.J. Mar. 13, 2018) (attached as Ex. B), pp. 2, 4. There, in appointing a special master, Judge Linares noted that neither "the number of disputes at issue or the need for [] intensive case management is inappropriate in a case of this size and complexity[,]" *id*. at 3, but the "level of case management" required by the parties was, without the appointment of a special

master, "simply not sustainable given the docket congestion in the District of New Jersey and the press of other matters on the Court's docket[,]" especially given the judicial vacancies in the District of New Jersey then. *Id*. at 4. That is not the case with this MDL.

Significantly, as Defendants have previously noted in correspondence with the Court, *see* Letter from S. Goldberg, 9/2/20, attached as Ex. C, consistent with the above legal principles, multidistrict litigation matters generally proceed *without* the appointment of a special master and, where special masters are appointed, the appointment is usually so the special master can address a discrete issue, as opposed to general discovery matters. In fact, of the 183 MDLs pending in July 2020, (i) special masters were appointed in only approximately one-third of the 183 MDLs; (ii) in all but four of those MDLs the referrals were made with the consent of all of the parties (45 cases) or without their objection (16 cases); (iii) in the vast majority of MDLs (88%), general pre-trial discovery issues were being managed by the Court; and (iv) general pre-trial discovery issues were referred to special masters in only 22 MDLs. *See* Ex. C.

## II. DELAY AND EXPENSE WEIGH AGAINST APPOINTING A SPECIAL MASTER.

In deciding whether to appoint a special master, Rule 53 requires the Court to "consider the fairness of imposing the likely expenses on the parties" and to "protect against unreasonable expense and delay." Fed. R. Civ. P. 53(a)(3). Given that

Plaintiffs assert three different types of claims—personal injury, economic loss, and medical monitoring—arising separately out of alleged impurities in three different drugs, all of which implicate dozens of different defendants at each level of the generic drug supply chain, this MDL is likely to proceed for many years until fully resolved. Were a special master appointed here, the Report and Recommendation process would add a layer of fact finding and adjudication to this action that could delay the progress of these already-lengthy proceedings. Moreover, the appointment of a special master at an hourly rate of $600-$800 would result in a significant expense for the parties in special master fees over several years. *See* Ex. C.[2] Where, as here, pre-trial issues can be effectively managed by the Court, the imposition of such delay and special master fees on the parties would be unfair.

### III. ISSUES SHOULD BE ALLOCATED BETWEEN JUDGE WILLIAMS AND JUDGE SCHNEIDER TO MINIMIZE DELAY AND EXPENSE.

Should the Court be inclined to appoint Judge Schneider as a special master to assist Judge Williams, Defendants request the Court allocate the issues that would be raised with Judge Schneider and Judge Williams, such that, upon their agreement, the parties would raise with Judge Schneider issues as to discovery matters he was involved with before his retirement, such as written discovery, document

---

[2] Defendants contend any fees resulting from the appointment of a special master, should one be appointed, should be apportioned equally between the parties, with Plaintiffs bearing 50% of the expense and Defendants bearing 50% of the expense.

productions, and fact witness depositions, and Judge Williams would manage discovery and other pre-trial matters that Judge Schneider has not yet addressed, such as issues pertaining to experts, general causation, and class certification. Such allocation would allow for "continuity" as to matters Judge Schneider oversaw before his retirement, while potentially reducing delay and expense resulting from his appointment as special master.

## CONCLUSION

For all of the foregoing reasons Defendants object to the appointment of a special master, and respectfully request a special master not be appointed.

Dated:  November 11, 2020

>  /s/ *Seth A. Goldberg*
> Seth A. Goldberg, Esq.
> *Lead Counsel and Liaison Counsel for Defendants*
>
> DUANE MORRIS LLP
>
> Seth A. Goldberg, *Lead Counsel and Liaison Counsel for Defendants*
> Barbara A. Schwartz
> 30 South 17th Street
> Philadelphia, PA 19103
> Tel.:  (215) 979-1000
> Fax:  (215) 979-1020
> SAGoldberg@duanemorris.com
> BASchwartz@duanemorris.com

10

*Attorneys for Zhejiang Huahai Pharmaceutical Co., Ltd., Prinston Pharmaceutical Inc., and Solco Healthcare US, LLC*

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP

Clem C. Trischler, *Lead Counsel for Defendants*
Jason M. Reefer
38th Floor, One Oxford Centre
Pittsburgh, PA 15219
Tel.: (412) 263-2000
Fax: (412) 263-2001
CCT@pietragallo.com
JMR@pietragallo.com

*Attorneys for Mylan Laboratories, Ltd. and Mylan Pharmaceuticals, Inc.*

GREENBERG TRAURIG, LLP

Lori G. Cohen, *Lead Counsel for Defendants*
Victoria D. Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA 30305
Tel.: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

11

Gregory E. Ostfeld
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel.: (312) 476-5056
Fax: (312) 899-0420
ostfeldg@gtlaw.com

Brian H. Rubenstein
1717 Arch Street
Suite 400
Philadelphia, PA 19103
Tel.: (215) 988-7864
Fax: (215) 689-4419
rubensteinb@gtlaw.com

*Attorneys for Teva Pharmaceuticals USA Inc., Teva Pharmaceutical Industries, Ltd., Actavis LLC, and Actavis Pharma, Inc.*

ULMER & BERNE LLP

Jeffrey D. Geoppinger
600 Vine Street
Suite 2800
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
jgeoppinger@ulmer.com

*Attorney for AmerisourceBergen Corporation and Liaison Counsel for Wholesaler Defendants*

12

       BARNES & THORNBURG LLP

       Sarah E. Johnston
       Kristen L. Richer
       2029 Century Park East, Suite 300
       Los Angeles, California 90067
       Telephone: (310) 284-3880
       Fax: (310) 284-3894
       Sarah.Johnston@btlaw.com
       Kristen.Richer@btlaw.com

         *Attorneys for Defendants CVS Pharmacy, Inc. and Rite Aid Corporation, and on behalf of the Retailer and Pharmacy Defendants*

13