# EXHIBIT A

2012 WL 2344865
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Denise AGOSTINO, et al., Plaintiffs,
v.
QUEST DIAGNOSTICS, INC., et al., Defendants.

Civil Action No. 04–4362 (SRC).
|
June 20, 2012.

**Attorneys and Law Firms**

Lisa J. Rodriguez, Trujillo Rodriguez & Richards, LLC, Haddonfield, NJ, For Plaintiff.

Diane A. Bettino, Mark S. Melodia, Ryan L. Di Clemente, Reed Smith, LLP, Pittsburgh, PA, James S. Murphy, Garrity, Graham, Favetta & Flinn, PC, East Hanover, NJ, Melissa Jennifer Brown, Marks O'Neill O'Brien & Courtney PC, Pennsauken, NJ, for Defendant.

## OPINION

CHESLER, District Judge.

**1* This matter comes before the Court on the motion for an award of attorneys' fees filed by Plaintiffs Richard and Janet Grandalski ("Plaintiffs" or the "Grandalskis") [docket entry 350]. Defendant Quest Diagnostics Inc. ("Quest") has opposed the motion. The Court has reviewed the papers filed by the parties and concludes that appointment of a special master to prepare a report on the appropriate lodestar is warranted under the circumstances of this action.

Federal Rule of Civil Procedure 53 empowers the Court to appoint a master, provide for the master's compensation, and specify the master's powers. Relevant to the instant motion for attorneys fees, Rule 53(a)(1) authorizes the Court to appoint a special master for certain reasons, enumerated as follows:

> (1) Scope. Unless a statute provides otherwise, a court may appoint a master only to:
>
> (A) perform duties consented to by the parties;
>
> (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:
>
> (i) some exceptional condition; or
>
> (ii) the need to perform an accounting or resolve a difficult computation of damages; or
>
> (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

Fed.R.Civ.P. 53(a)(1). The governing rule as well as Third Circuit jurisprudence make clear that appointment of a special master must be limited in scope and is not justified simply because of docket congestion or the complexity of factual and/or legal issues. See La Buy v. Howes Leather Co., 352 U.S. 249, 259, 77 S.Ct. 309, 1 L.Ed.2d 290(1957); Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 991 F.2d 1080, 1086–87 (3d Cir.1993). In *La Buy,* the Supreme Court "noted that while masters could 'aid judges' in the performance of specific duties, they could not be permitted to 'displace the court.' " Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 441 (quoting La Buy, 352 U.S. at 256). The Third Circuit has cautioned that the mere voluminous nature of a task does not make it appropriate for reference to a special master, particularly in light of the availability of assistance from magistrate judges in handling all manner of pre-trial matters and motion practice. See Prudential Ins. Co. of Am., 991 F.2d at 1087. On the other hand, the Court of Appeals has also indicated that "utilizing the special master to perform some specialized matters of account or difficult computation of damages, ... or some other time consuming or detailed tasks that the district court judge or a magistrate judge would be less efficient in accomplishing" is a justifiable reference pursuant to Rule 53. *Id.; see also Beazer East,* 412 F .3d at (noting that accountings and damages computations were matters that could be referred to a special master because they did not generally call for particular judicial insight). Indeed, Rule 53(a) (1)(B)(ii), quoted above, expressly approves of this basis for appointing a special master. For the following reasons, the Court finds that the circumstances of this action and the work required to decide Plaintiffs' motion for attorneys' fees constitute both exceptional circumstances and present the need for a difficult and detailed accounting.

**\*2** Plaintiffs seek to recover attorneys fees based on winning summary judgment on three of their six claims. In particular they prevailed against Defendants Quantum Collections ("Quantum") and Credit Bureau Central ("CBC") on their claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k, and against Defendant Quest on their claim under the Nevada Consumer Fraud Act ("NCFA"), Nev. Stat. Ann. § 41.600. Both of these statutes contain mandatory fee-shifting provisions, which entitle the prevailing party to an award of reasonable attorneys' fees and costs. See 15 U.S.C. § 1692k(a)(3); Nev. Stat. Ann. § 41.600.3(c).

The Court has reviewed the papers and finds that the request for statutory attorneys' fees is hardly a straightforward matter of reviewing attorney time records to determine that the time spent on pursuing the Grandalskis' prevailing claims was reasonable. This case has a long and complex procedural history. As the parties all recognize, it did not begin nor was it prosecuted as a simple action in which a few individual plaintiffs asserted claims for relief under only the FDCPA and the NCFA. Rather, it was filed in 2004 as a putative nationwide class action based on the allegedly unlawful billing practices of Quests and various debt collectors. The action sought recovery of hundreds of millions of dollars under a variety of legal theories, including the consumer fraud statutes of New Jersey, the other 49 states and the District of Columbia; under the Racketeer Influenced and Corrupt Organizations Act; and under the Employee Retirement Income Security Act of 1974, among others. The Grandalskis, who were not named in the original Complaint, joined the action in 2005. Plaintiffs sought class certification twice and were unsuccessful both times. Thereafter, the claims of many named Plaintiffs were resolved by settlement. Ultimately, the Grandalskis, individually and not in any representative capacity, moved for summary judgment, and prevailed on three claims, obtaining $40 in compensatory damages and $2,000 in statutory damages. Now, they seek an award of attorneys' fees in the amount of $722,344.74 and costs in the amount of $21,652.57. Plaintiffs maintain that they combed through the bills and filtered out work done on unsuccessful motion practice as well as the majority of general litigation efforts unrelated to vindicating the claims of the Grandalskis, as opposed to the 16 other named plaintiffs and the putative class. This "modified lodestar analysis," as Plaintiffs have called it, has reduced their total lodestar of over $9 million in fees and almost a half million dollars in unreimbursed litigation costs. Defendants counter that Plaintiffs' broad approach to sifting out fees incurred in connection with years of litigation in what aspired to be a multi-million dollar nationwide class action shirks Plaintiffs' responsibility to present an accurate and itemized accounting of time actually spent on litigating the Grandalskis' successful individual claims under the FDCPA and the NCFA.

**\*3** In the Court's view, the motion for attorneys' fees warrants reference to a special master pursuant to Federal Rule of Civil Procedure 53. The motion presents the need for labor-intensive scrutiny of voluminous billing records generated by teams of attorneys from six different firms over the course of almost eight years of litigation. This task is complicated by the need to reconcile the modest victory obtained on behalf of the Grandalskis with the disproportionate resources dedicated to the litigation, a discrepancy which reflects the fact that this case was filed and prosecuted as a putative class action that twice failed to achieve certification under Federal Rule of Civil Procedure 23. Plaintiffs are entitled to attorneys fees based on the success of three individual claims, but determining an appropriate fee award requires identification of the time and effort spent litigating these claims. Instead, however, Plaintiffs support their fee petition with a calculation which begins with the total lodestar for the unsuccessful class action, categorizes the professional time spent on the case according to the nature of the work and applies discounts depending on the relationship of the category to the Grandalskis' claims. Plaintiffs' broad brush approach sacrifices accuracy in favor of efficiency. The Court finds that the volume of billing entries that must be analyzed and the scrutiny required to determine whether the task was reasonably necessary to prosecute the claims on which the Grandalskis prevailed support reference of the motion for attorneys fees to a master. The Court will therefore exercise its discretion under Federal Rule of Civil Procedure 53 and appoint a special master to analyze the record and prepare a report calculating the lodestar of Plaintiffs' attorneys, based on identification of the tasks reasonably related to legal representation of the Grandalskis on their individual FDCPA and NCFA claims and multiplication of the hours dedicated to those tasks by a reasonable hourly rate charged by practitioners who regularly prosecute such claims.

In short, the unusual route this action has taken to achieve a tempered victory for the Grandalskis, together with the demanding task of computing appropriate and reasonable attorneys' fees under the applicable fee-shifting statutes,

warrant appointment of a special master. The special master will assist the Court with the discrete task of reviewing the billing records and disentangling work by Plaintiffs' attorneys that was reasonable necessary to secure the victory from work dedicated to other claims and/or the Rule 23 aspects of this action. Assigning this limited role to the special master certainly does not create a situation in which the Court would be essentially displaced by the special master and thus does not implicate the concerns expressed by the Supreme Court in *La Buy.*

Rule 53(b) directs that before appointing a master, the Court must "give the parties notice and an opportunity to be heard," which includes the opportunity for the parties to suggest candidates for appointment as special master. Fed.R.Civ.P. 53(b)(1). This Opinion shall constitute the required notice, and the accompanying Order shall provide the opportunity for the parties to express their views in writing to the Court.

***4** Rule 53(b) further provides that the Court shall also specify the basis for fixing the master's compensation under Rule 53(g). Rule 53(g)(2) authorizes the Court to order that the master's compensation be paid by the parties and gives the Court broad discretion in allocating payment among the parties. *See* *Newton v. Consol. Gas Co. of N.Y.,* 259 U.S. 101, 105, 42 S.Ct. 438, 66 L.Ed. 844 (1922); *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1220 (6th Cir.1987); *see also* *Carter v. Shop Rite Foods, Inc.,* 503 F.Supp. 680, 691 (N.D.Tex.1980) (citing Moore's Federal Practice for this proposition). In this case, the Court is of the view that the cost of appointing a special master to review the attorneys' fees motion and prepare a report, consistent with the Court's foregoing instructions, should be equally borne by Plaintiffs and Defendants. On this matter, the Court finds the reasoning of the district court in *Carter v. Shop Rite Foods* persuasive. Carter was a Title VII gender discrimination class action in which the Plaintiffs had prevailed on liability. *Carter,* 503 F.Supp. at 680. Pursuant to Rule 53, the District Court appointed a special master to compute the backpay awards to which class members were entitled. *Id.* The *Carter* court found that the master's fees and expenses for preparing the report should be split equally by the two sides to the litigation, noting that the court had referred the backpay computation to a master on its own motion, that neither side had clearly prevailed on the issues presented to the master and that the master's work benefitted both sides as well as the court. *Id.* at 692. Likewise, in this action, the appointment of a special master to compute reasonable attorneys' fees has been initiated by the Court. The need for special master arises from the difficult and detail-oriented computation presented by the disconnect between the tremendous time and resources devoted to developing this case and the ultimately modest success on behalf of two individual Plaintiffs. Although Plaintiffs did prevail on three claims based on fee-shifting statutes, that narrow view of the litigation disregards the reality that this case was litigated as a putative class action but failed to achieve certification despite two attempts by the Plaintiffs. In other words, Plaintiffs' victory is neither clear nor absolute, such that they should not have to bear some of the cost required to disentangle the billing records with which they have provided the Court in support of their motion for attorneys' fees.

This Court will accordingly issue an Order advising the parties that it will refer the attorneys' fee motion to a special master, pursuant to Rule 53, for a report and recommendation consistent with the foregoing instructions. The Order will provide the parties with an opportunity to be heard on the matter. Moreover, the Court further notes that, in accordance with the rule, it will appoint the special master only after the selected candidate for the position files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455. *See* Fed.R.Civ.P. 53(b)(3).

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2344865

---