**GT GreenbergTraurig**

Jeffrey W. Greene
Tel 617.310.6031
Fax 617.987.0931
greenej@gtlaw.com

November 18, 2020

**VIA: CM/ECF**
The Honorable Joel Schneider
United States District Court for the District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

Re: **In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation**
Case No. 1:19-md-02875-RBK-JS; The Teva Defendants' Supplemental Letter Brief for Cost-Shifting and/or Further Relief Under Rule 26's Proportionality Limits

Dear Judge Schneider:

Teva's supplemental proportionality filing is intended to address four specific issues raised during oral argument on November 11th: (1) Teva complied with the ESI Protocol and, in fact, provided more transparency into its TAR process than the ESI Protocol and/or case law requires; (2) the ESI Protocol expressly permits layering TAR on top of search terms; (3) Teva met and conferred extensively with Plaintiffs' counsel, who ultimately refused to agree to a reasonable validation protocol; and (4) Teva did more than what was required by the draft TAR validation protocol insisted upon by Plaintiffs, who cannot show any prejudice.[1]

**I.   Teva Complied with the ESI Protocol and, In Fact, Provided More Transparency into its TAR Process than the ESI Protocol and/or Case Law Requires**

The ESI protocol contains the following language: "The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols, and any TAR/predictive coding prior to using any such technology to narrow the pool of collected documents to a set to undergo review for possible production." (Dkt. 127). By its plain language, **nothing in the ESI Protocol requires the parties to *agree* on a TAR methodology or gives Plaintiffs the right to unilaterally direct the TAR**

---

[1] Teva is focusing on these issues because they were the focus of the oral argument. However, Teva takes this opportunity to remind the Court that its motion centers on a straightforward proportionality argument in that Teva should not be forced to spend millions of dollars to review hundreds of thousands of documents it has shown will be overwhelmingly non-responsive.

The Honorable Joel Schneider
November 18, 2020
Page 2

**process**. It simply requires that Teva disclose its use of TAR (before it decides to use TAR to cutoff review of documents), and that the parties cooperate in good faith, both of which is exactly what Teva did here. If anyone failed to cooperate in good faith, it is the Plaintiffs, who have failed (despite multiple meet and confer attempts by Teva) to even meaningfully consider Teva's use of CMML unless Teva agrees to turn over thousands of non-responsive documents, which is not required by applicable law or the ESI Protocol. Any lack of cooperation is entirely Plaintiffs' own doing, and they cannot now complain that Teva locked them out of the CMML process when Plaintiffs were never willing to meaningfully work with Teva in the first instance. **Without having pointed to *a single deficiency* in any of Teva's document productions to date,** Plaintiffs have nevertheless attacked the CMML process and metrics that Teva has provided as part of their vexatious campaign to drive up costs and burden Teva.

The type of transparency exhibited by Teva is exactly what the ESI Protocol in this case requires, and has been deemed acceptable by other courts. For example in *Kaye v. N.Y.C. Health and Hospitals Corp.*, 2020 WL 283702 (S.D.N.Y. Jan. 2020), the Court denied Plaintiff's request for court intervention into the discovery process, in part, because Plaintiff had failed to provide any evidence that the Defendant's ESI process was skewed. In other words, there was "no basis for the Court to endorse 'discovery on discovery.'" *Id.* at *1. Specifically, the Court explained:

> In this case, defendants have represented that they have provided detailed information regarding the collection criteria they used, the name of their continuous active learning ("CAL") software, their CAL review workflow, and how they intend to validate the review results. ***That is sufficient information to make the production transparent***. While plaintiff complains that defendants must provide her with search terms and a review of the "culling" process, and contends that defendants' refusal to do so is "contrary to the law," she cites no authority in support of her position. ***When documents are produced in discovery, whether they be produced electronically or otherwise, the Court does not believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process.***
>
> ***It is only if a party can articulate a good faith basis to do so by identifying some deficiency in the production, as is well-settled***, *see, e.g., Grant*, 2019 U.S. Dist. LEXIS 221368, 2019 WL 7067088, at *1, ***that an inquiry into the producing party's methodology would be appropriate.*** *Kaye*, at *2 (emphasis added).

There can be no dispute that nothing in Rule 26 "obligates counsel to disclose the manner in which documents are collected, reviewed and produced in response to a discovery request." *Brown v. Barnes & Noble, Inc.*, 2019 U.S. Dist. LEXIS 22062, at *9 (S.D.N.Y. Dec. 2019). (citing Karl Schieneman and Thomas C. Gricks III, *The Implications of Rule 26(g) on the Use of Technology-Assisted Review*, 7 FED. CTS. L. REV. 239, 254 (2013)). Thus, when it comes to ESI, "a producing party arguably could choose to adopt the ESI protocol it deems best aimed at locating relevant documents, consistent with its obligations under Rule 26, ***without disclosing its process to the requesting party***." *Id* at *9-10 (emphasis added); *see also*, *Livingston v. City of Chicago*,

The Honorable Joel Schneider
November 18, 2020
Page 3

2020 U.S. Dist. LEXIS 160797 (N.D. Ill. Sept. 2020) ("The City has disclosed the TAR software … it intends to use and how it intends to validate the review results, which in this case is sufficient information to make the production transparent. ***Plaintiffs' insistence that the City must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules governing discovery***.") (emphasis added); *In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, No. 3:12-MD-2391, 2013 WL 1729682 (N.D. Ind. Apr. 18, 2013) ("[Plaintiffs] want to know … how *Biomet* used certain documents before disclosing them. Rule 26(b)(1) doesn't make such information disclosable… Neither the Sedona Conference nor the Seventh Circuit project expands a federal district court's powers, ***so they can't provide me with the authority to compel discovery of information not made discoverable by the Federal Rules***.") (emphasis added); Andrew Jay Peck, *A VIEW FROM THE BENCH AND THE TRENCH(ES) IN RESPONSE TO JUDGE MATTHEWMAN'S NEW PARADIGM FOR EDISCOVERY: IT'S MORE COMPLICATED*, 71 Fla. L. Rev. F. 143 (2020) ("TAR should now be an accepted methodology. Accordingly, ***opposing counsel does not need, and should not receive, input into the responding party's TAR methodology***; further transparency or negotiation of protocols is unnecessary. As Sedona Principle 6 teaches, the responding party is in the best position to determine how it will meet its Rule 26(g) obligation to respond to discovery requests.") (emphasis added).

Even if Teva did not involve Plaintiffs in the CMML process as much as they would have preferred, Plaintiffs have offered no reason to believe, or even suspect, that Teva's CMML process was deficient. Indeed, while Plaintiffs would prefer to peek behind the curtain at every turn, "there is nothing so exceptional about ESI production that should cause courts to insert themselves as super-managers of the parties' internal review processes, including training of TAR software, or to permit discovery about such process, in the absence of evidence of good cause such as a showing of gross negligence in the review and production process, the failure to produce relevant specific documents known to exist or that are likely to exist, or other malfeasance." *Winfield v. City of N.Y.*, No. 15-cv-05236, 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017); *see also, Entrata, Inc. v. Yardi Sys.*, Civ. A. No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS 185744 (D. Utah Oct. 2018) (Court declined motion to compel documents plaintiff withheld in reliance on TAR due to defendant's failure to identify "any specific examples of deficiencies in [plaintiff's] document production or any specific reason why it questions the adequacy of [plaintiff's] document collection and review.").

The case law is clear that it is inappropriate to hold TAR to a higher standard than manual review. *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 129 (S.D.N.Y. 2015) ("One point must be stressed – it is inappropriate to hold TAR to a higher standard than keywords or manual review. Doing so discourages the parties from using TAR for fear of spending more in motion practice than the savings from using TAR for review."). Here, Plaintiffs would not have been entitled to any information or metrics about Teva's review if Teva were to have manually reviewed each document containing a search-term hit. They should not be granted more simply because of Teva's decision to use CMML, which has been shown to be a more effective and efficient process. *See* Maura R. Grossman & Gordon v. Cormack, *Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review*, 17 Rich. J.L. & Tech 11 (2011). Teva has nevertheless provided Plaintiffs with exceedingly more information than they would otherwise be entitled to in a manual review.

The Honorable Joel Schneider
November 18, 2020
Page 4

Yet, to no avail, the only alleged "issues" Plaintiffs point out with respect to Teva's CMML process are illusory at best. Plaintiffs' alleged issues with Teva's CMML process are the following:

1) Teva did not start with the entire set of all custodial files, rather than the narrowed search term set;
2) Teva did not use the core discovery documents to educate the system;
3) Teva excluded documents from TAR review, such as video and pictures;
4) Teva denied Plaintiffs the ability to submit training documents; and
5) Teva did not give Plaintiffs reports on the review as the review proceeded.

These five factors are not legitimate issues with Teva's CMML process or metrics, but are, instead, Plaintiffs' displeasure with their inability to fully insert themselves into the driver's seat of Teva's review process, which, as set forth below, is wholly inappropriate under Rule 26. Teva offered these compromises in an effort to resolve its dispute over the use of CMML in this matter but Plaintiffs categorically rejected them by insisting on the production of thousands of non-responsive documents, rather than negotiate on details consistent with the controlling caselaw. Now they brashly seek a windfall from this Court rewarding their behavior that frustrated the meet and confer process at every turn.

Nevertheless, Teva addresses these factors in turn:

1) Teva offered to conduct its TAR review on the entire set of custodial files over the summer—when it would have had more time to conduct the review had Plaintiffs promptly agreed to the use of TAR—while the parties were attempting to negotiate a validation protocol. However, because Plaintiffs continued in their unreasonable insistence that Teva produce thousands of non-responsive documents as a part of this validation protocol, the parties never reached an agreement and Teva was, therefore, not required to apply CMML across the full custodial dataset. At this point in time, it would be too costly and time consuming to start the process anew, particularly after Teva has proven that the process it followed worked as it should have. As the caselaw referenced below makes clear, it is fully defensible and acceptable to layer TAR on top of search terms when proportionality factors warrant it. Any claimed "prejudice" on the part of Plaintiffs is belied by the fact that (i) they were willing to accept keywords before manual review, which has been shown to be inferior to TAR; and (ii) they have accepted Mylan's TAR process, which presumably follows this same layering approach.

2) This is false. Teva did use the vast majority of non-ANDA documents from the core discovery to educate the TAR system. Teva also used keywords to identify a comprehensive initial set of training documents. As we have pointed out repeatedly, unlike TAR 1.0, CAL does not depend on a fixed "seed set" of documents used to train the system. Rather, every document reviewed by Teva—including the core discovery documents—has been used to train the system in an iterative fashion. Teva's training of the CMML system was more than adequate as shown by the TAR recall achieved at the end of the process.

3) Teva did not exclude any *documents* from its CMML process. Photographs and videos must be treated separately from a TAR process because file types that lack text are not suitable for TAR in

The Honorable Joel Schneider
November 18, 2020
Page 5

the first place. If Teva had included photographs and videos in CMML, they would have been missed entirely by the TAR process because the CMML system would not recognize those file types as responsive. Thus, it was to entirely appropriate and to Plaintiffs' benefit that Teva treated these file types separately, by reviewing them manually in order to ensure that any responsive photographs and videos were produced.

4) Plaintiffs complain that they were denied the opportunity to submit training documents. Teva, again, offered to accept some training documents as a concession to Plaintiffs during its negotiations over the summer, not because it was necessary or required. Plaintiffs seem to have a fundamental misunderstanding about the difference between TAR 1.0 and 2.0. With CAL, **there is no fixed or identifiable "seed set" of documents used to train a TAR 2.0 system**; rather, in a TAR 2.0 context, the party can simply begin reviewing a random sample of documents that hit on the search terms. The initial training documents do not impact the *efficacy* of the CMML system, they only impact the *efficiency* of the training process; in other words, the system learns faster with certain documents than others, but *it will eventually reach the same place because all documents that are reviewed become training documents in a TAR 2.0 process*. Teva has already reviewed hundreds of thousands of documents and had more than a sufficient number of training documents to train the CMML system, regardless of whether Plaintiffs were allowed to propose others.

5) Plaintiffs' claim that Teva did not give "reports" on the review as it proceeded is disingenuous. First, it is unclear what type of "reports" Plaintiffs are even referring to. Plaintiffs provide no details about what they would expect to see in such a report. As set forth below and more fully in Teva's moving brief, Teva has provided openness and transparency throughout its entire TAR process, and in fact, *did* provide Plaintiffs with all of the metrics available to Teva when it completed its review of the high-priority custodians. Teva detailed all of its metrics for Plaintiffs from the inception of using the CMML system, including in declarations provided by Dr. Grossman. Moreover, there is no requirement in the ESI protocol or the case law requiring "reports," and no prejudice done here, because "reports" would not have changed the results.

In the end, none of Plaintiffs' complaints about Teva's process are valid. The proof is in the pudding as it relates to the results of Teva's CMML process. As set forth more fully in Dr. Grossman's declaration, Teva reviewed a 15,000 document null set sample, which is the largest null set sample she has seen. (Dkt. 594-1, ¶4). Teva also performed not only a full *Broilers* validation exercise, but a supplemental "mini-*Broilers*" exercise as well. (Dkt. 594-1, ¶7). Producing parties typically undertake one validation process—either one, like *Broilers*, where recall is computed, or one where elusion is computed. Here, to assure Plaintiffs, Teva undertook both. Accordingly, Teva's validation process has more than satisfied the Rule 26(g) reasonableness inquiry, and Plaintiffs have failed to demonstrate otherwise.

## II. The ESI Protocol Expressly Permits Layering TAR on top of Search Terms

Despite clear case law on this point, Plaintiffs continue to insist that Teva somehow violated the ESI protocol by layering TAR on top of search terms. To be clear, and contrary to what Plaintiffs' counsel indicated on the record during oral argument, **at no point during the parties' November 15, 2019 meeting did Plaintiffs indicate Teva had to choose search terms**

The Honorable Joel Schneider
November 18, 2020
Page 6

or **TAR**. (Suppl. Harkins Dec., attached as Exh. A, ¶ 2). Nor is there anything in the ESI Protocol itself that requires Teva to choose one or the other. As Teva has already indicated, it informed Plaintiffs that it was contemplating the use of TAR at the November 15, 2019 in-person ESI meeting, but that it had not yet affirmatively determined whether it needed to do so until further assessment of the time and cost involved in reviewing documents that hit upon the negotiated search terms. At no point during that meeting (or any other meeting) did Plaintiffs indicate they did not want to embark on negotiating search terms until Teva had made a final decision on the use of TAR or that they would take a categorical objection to layering TAR on top of negotiated search terms for proportionality reasons. Plaintiffs were well-aware that, given the tight production deadline and the vast array of discovery they were seeking, Teva might opt to use TAR depending on the volume of documents in need of review, which is exactly what ultimately occurred, and precisely where layering TAR on top of search terms is appropriate. (*See* Supplemental Declaration of Maura R. Grossman, attached as Exh. B, ¶5).

If Plaintiffs wanted Teva to be forced to exclusively choose *either* search terms *or* TAR, it should have made this point clear back when the parties were negotiating the ESI Protocol. Instead, the ESI Protocol expressly contemplates the layering scenario, as it is expressly envisions the utilization of both search terms **and** TAR: "The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols, **and** any TAR/predictive coding." (Dkt. 127) (emphasis added). If the ESI Protocol contemplated that *only* search terms *or* TAR could be used, certainly, there would not be an "and" in the description of the meet and confer obligation but instead would be an "or."

Teva's understanding of the ESI Protocol is bolstered by the fact that other defendants shared this same understanding; namely, Mylan, who (as far as Teva understands from earlier discussions with Mylan) has applied TAR to identify non-responsive materials in the same way Teva has. Plaintiffs cannot claim prejudice on the part of Teva's approach in that Teva layered TAR on top of search terms when Plaintiffs appear to be perfectly accepting of Mylan's process—one that also includes layering TAR on top of search terms.[2] While Teva is not aware of the precise parameters of the validation protocol agreed to by Plaintiffs and Mylan (since Plaintiffs failed to ever share it with Teva), Teva is confident that it does not involve a process requiring Mylan to go back to square one by applying TAR to the entire (un-keyword-culled) custodial dataset.

While Teva has already referenced these cases throughout the briefing submitted to the Court, it bears repeating that multiple courts have permitted the layering of TAR on top of search terms as Teva has done here. *See, e.g., In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, No. 3:12-MD-2391, 2013 WL 1729682, at *2 (N.D. Ind. Apr. 18, 2013) (finding that layering TAR on top of search terms "***complies fully with the requirements of Federal Rules of Civil Procedure 26(b) and 34(b)(2)***.") (emphasis added); s*ee also*, *City of Rockford v Mallinckrodt ARD Inc.*, No. 3:17-cv-50107, at Dkt. 158 (N.D. Ill. August 14, 2018) (where Court's order on ESI

---

[2] It should also be noted that, despite being well-aware that Teva was seeking to use CMML, Plaintiffs never came to Teva and shared the validation protocol proposed for use with Mylan in an attempt to see if such a protocol would be acceptable to Teva. Moreover, As noted numerous times throughout this dispute, Plaintiffs would have needed to negotiate search terms for use with any number of codefendants regardless of whether Teva was permitted to use CMML rather than search terms.

indicates that keyword terms may be used to cull the document population prior to the application of TAR so long as parties meet and confer in good faith regarding a mutually agreeable protocol); *In re Broiler Chickens Antitrust Litigation*, Civ. A. No. 1:16-cv-08637, at Dkt. 586 (N.D. Ill. Jan. 13, 2018) (entering Order Regarding Search Methodology for Electronically Stored Information which expressly contemplates search-term culling prior to the applying TAR/CAL, where the requesting party could specify a limited number of custodians whose data would not be culled in this fashion); *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 131-132 (S.D.N.Y. 2015) (approving ESI protocol which allows for use of search terms for purposes of culling the document universe in addition to utilizing TAR, where the responding party deems culling reasonable and appropriate and takes steps including meeting and conferring in good faith with the opposing party); *Lawson v. Spirit Aerosystems*, No. 18-1100, 2020 U.S. Dist. LEXIS 64381 (D. Kan. Apr. 9, 2020) (allowing TAR to be layered on top of search terms once search term hits proved unworkable and extremely expensive to manually review, as was the case here).

Moreover, Dr. Grossman has indicated that Teva's validation process is the most robust validation process she has seen—even though the process started with the layering of CAL on top of search terms.[3] Plaintiffs have pointed to no case law that is on point and prohibits the layering of TAR on top of search terms in the way Teva has done here, when it is proportional to do so. While Teva offered to apply CMML to the entire custodial dataset months ago *solely as a concession to resolve its dispute with Plaintiffs in good faith* (as the ESI Protocol directs), Teva was not required to do so by the case law and Plaintiffs' continued insistence that Teva still produce non-responsive documents thwarted the parties' ability to reach an agreed-upon protocol. *See Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 137 A.3d 1168, 1180 (2016) ("An enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.").

### III.   Teva Met and Conferred Extensively with Plaintiffs' Counsel, Who Ultimately Refused to Agree to A Reasonable Validation Protocol

As already laid out in significant detail in Teva's previous briefs on this issue, **Teva met and conferred with Plaintiffs on <u>numerous occasions</u> surrounding the use of CMML.** (*See* Dkt 516 at 4-5; Dkt. 594 at 5-6). As a part of those conversations, the parties also met and conferred at length regarding a validation protocol. To recap, the Court ordered the parties to hold in person meetings in November 2019 to discuss, among other things, the potential use of TAR/CAL by Defendants. On November 15, 2019, counsel for the Teva Defendants participated in these meetings and indicated to Plaintiffs' counsel that Teva had not made a determination about how they would use TAR in connection with the case. (Dkt. 616-1, ¶ 8). Teva had two TAR specialists available from its vendor to answer any technical questions Plaintiffs had about Teva's potential use of TAR, and Plaintiffs declined to speak with or pose any questions to these experts. (*Id.* ¶¶ 5-6). Rather, Plaintiffs indicated that (1) the ESI Protocol addressed the use of TAR; and (2) that

---

[3] In fact, Dr. Grossman herself has stated that while in an ideal world, keywords would not be employed before TAR, proportionality considerations may deem otherwise, as is the case here. *See* Maura R. Grossman and Gordon v. Cormack, Comments on "The Implications of Rule 26(g) on the Use of Technology-Assisted Review," 7 Fed. Cts. L. Rev. 286, n. 29 (2014) (noting that additional culling tools can be used where appropriate due to cost).

Plaintiffs wanted to be informed if Teva intended to use TAR to make review determinations without attorney's eyes on the documents. (*Id.* ¶ 7). To the extent Plaintiffs' counsel intended to take the position that the ESI protocol required Teva to choose between either search terms or TAR to review its documents, that categorical position should have been raised ***at that time*** when Teva clearly reserved its right to use TAR and indicated that it might do so in the future. Plaintiffs failed to do so. (Suppl. Harkins Dec., Exh. A, ¶¶ 2-4).

On July 1, 2020, in accordance with the ESI Protocol and consistent with the understanding of Teva based on Plaintiffs' representations during the November 15, 2019 meeting, the Teva Defendants disclosed their use of CMML to Plaintiffs by letter ***prior to using this technology to exclude any documents from review*** (in other words, long before the ESI Protocol required such a disclosure). (Dkt. 516-3). Teva stated it was happy to discuss and answer any questions with regard to this process. (*Id.* at 2). Plaintiffs responded that they objected to Teva's use of CMML and requested dates when Teva could meet and confer on the issue. (Dkt. 516-4). The Teva Defendants responded with additional information on July 6, 2020 (Dkt. 516-6), and scheduled a meet and confer with Plaintiffs' counsel for July 8, 2020 **(**Dkt. 516-1 at 4). Following the July 8, 2020 meet and confer, Teva provided a detailed overview of the CMML platform and further explanations regarding their use of CMML, to which Plaintiffs responded immediately and abruptly (after clearly failing to review any of the materials Teva sent) and repeated that they continued to object to Teva's use of CMML (*Id.*; Dkt. 516-7, 516-8, 516-9, 516-10).

Teva appeared for the July 15, 2020 Teleconference with the Court and presented argument with respect to Teva's use of TAR. The Court set a due date for supplemental disclosures related to the Teva TAR dispute, (Dkt. 524), and Teva responded with a detailed submission supplemented by the expertise of Dr. Grossman, (Dkt. 527). Other Defendants submitted letters at this time which reflect the clear understanding of the parties as to the use of TAR and the requirements of the ESI Protocol. (Dkt. 528 n.1 ("The ESI Protocol only requires a defendant to meet and confer with Plaintiffs if that defendant intends to narrow its review set through the use of TAR/predictive coding."); Dkt. 529 ("[T]o the extent that the CMML platform ultimately identifies a set of documents that are unlikely to be responsive, Mylan reserves its right to meet-and-confer with Plaintiffs in order to limit the manual review of such documents.")).

With the parties approaching an impasse, Teva engaged in a weeks-long continued meet and confer process (including transparent updates to the Court) to try and resolve this dispute:

- Counsel met and conferred on July 28, 2020. (Suppl. Harkins Dec., Exh. A ¶ 5).
- After further argument on the issue at the July 29, 2020 CMC, counsel again met and conferred on August 1, 2020. (*Id.*).
- Teva responded the next day, August 2, 2020, to specific questions posed by Plaintiffs' counsel about Teva's proposed validation protocol. (Exh. C).
- The Court then organized a meet and confer where Your Honor spoke with each party individually as well as together to determine if an agreement was possible throughout the day on August 3, 2020. (Suppl. Harkins Dec., Exh. A ¶ 6).

The Honorable Joel Schneider
November 18, 2020
Page 9

- Teva spoke with the Court again on August 4, 2020, as the Court helpfully tried to mediate a resolution. (Suppl. Harkins Dec., ¶ 7). At the end of this discussion, the Court provided Teva with a copy of the draft validation protocol which included extensive redlining throughout and numerous notes related to continuing disputes. (Exh. D). Most notably, Plaintiffs redlines insisted that the validation protocol allow Plaintiffs to receive a sample of 5,000 ***non-responsive*** documents. As had been conveyed to Plaintiffs' counsel repeatedly, this provision was a clear non-starter for Teva, and despite the parties' and the Court's extensive efforts, as Plaintiffs had demonstrated their refusal to retreat from their position that is unsupported by law (requiring Teva to produce irrelevant discovery), Teva was forced to withdraw its motion to enforce the ESI protocol the next day on August 6, 2020. (Dkt. 544). At no time did the Plaintiffs share a draft of the validation protocol to which the Teva Defendants did or could have agreed

On October 5, 2020, Teva initiated another meet and confer with Plaintiffs' counsel to discuss proportionality and cost-sharing concerns associated with Teva's ongoing review of documents predicted by the CMML platform as non-responsive. (Suppl. Harkins Dec., ¶ 8). Plaintiffs' counsel requested additional information, which Teva provided via letter on October 6, 2020. (Exh. E). The parties engaged in another meet and confer on October 9, 2020, after which Plaintiffs' counsel indicated they once again would not agree to allow Teva to cease review of the non-responsive document set under any proposed circumstances. (Dkt. 594 at 5-6). Teva filed the instant letter motion in response.

**Over the course of nearly four months of meeting and conferring,** Plaintiffs never agreed (or it appears even meaningfully considered) entering into a validation protocol or other arrangement with Teva that did not include the requirement that Teva turn over a large number of non-responsive documents. Teva has made it abundantly clear throughout that such a requirement to produce irrelevant documents is untenable and unsupported by the existing caselaw, which has frustrated the meet and confer process and prevented a meeting of the minds on a validation protocol or cost-sharing arrangement connected with review of the current null set. Plaintiffs refusal to acknowledge the controlling caselaw not be rewarded with a windfall.

    **IV.**    **Teva Did More Than What was Required by the TAR Validation Protocol Insisted upon by Plaintiffs, Who Cannot Show Any Prejudice**

Despite the fact that Teva did not agree with Plaintiffs on a validation protocol over the summer, Teva nevertheless went above and beyond what the draft protocol called for. Specifically, and as set forth more fully in Dr. Grossman's declaration filed with Teva's moving brief, Teva followed the *Broilers Chicken* protocol as written, which is state-of-the-art and calls for more a more rigorous blind validation than most protocols currently in use. (Dkt. 594-1, ¶2). Teva then did *eleven* rounds of quality control checks to ensure that its CMML had captured as many of the responsive documents as reasonably possible. (Dkt. 594-1, ¶6). Teva then followed this with an abbreviated version of the *Broilers Chicken* protocol. (Dkt. 594-1, ¶7). And, while Teva did not agree to turnover non-responsive documents to Plaintiffs, in order to ease Plaintiffs' concerns over alleged responsive documents that might exist in the null-set, Teva then undertook to review *15,000 documents* the CMML system predicted were non-responsive, and on top of that,

The Honorable Joel Schneider
November 18, 2020
Page 10

performed a quality control review of 1,500 of those documents. (*Id.*). Most validation exercises call only for a null set review of approximately 2,400 documents in total; Teva performed more than six times that amount, increasing the precision of its estimate of the number of missed documents. The validation protocol insisted upon by Plaintiffs over the summer would have required Teva to produce 5,000 non-responsive documents but, here, Teva reviewed *three times* that number for the high-priority custodians alone.[4] This is all in addition to performing the *Broilers* validation protocol considered by many to be the gold standard.

From the day Teva disclosed to Plaintiffs that it would be using CMML, it has become abundantly clear that there is no validation protocol that would satisfy Plaintiffs, unless or until Teva agrees to produce thousands of non-responsive documents, which they are not entitled to receive. Despite a clear invitation by the Court for Plaintiffs to cite to cases requiring the production of non-responsive documents solely because a party is using TAR (and/or because a party is layering TAR on top of search terms), Plaintiffs have yet to cite a single case on this point.[5] ***That is because the production of non-responsive documents is not required by (or even contemplated by) any rule of discovery, nor is it required by the ESI Protocol in this case***. Absent their insistence that Teva produce non-responsive documents, Plaintiffs have not proposed anything additional from Teva in the form of validation (which Teva would certainly consider in good faith), nor have Plaintiffs made any suggestions as to what more Teva could have done to demonstrate that its production is reasonable pursuant to Fed. R. Civ. P. 26(g), which is all that is required. Presumably, this is because there is *no* validation process that would satisfy Plaintiffs absent the production of non-responsive documents to which Plaintiffs are not entitled under Fed. R. Civ. P. 26(b)(1). Plaintiffs cannot cite to a single validation protocol that is more comprehensive than the process Teva followed here.

As discussed more fully above, Plaintiffs have failed to provide any meaningful argument as to how they have been prejudiced by Teva's CMML process and, indeed, it is because they have not been prejudiced.

## V.     CONCLUSION

This remains a straightforward proportionality motion and Plaintiffs' lack of prejudice balanced against the enormous cost and prejudice facing Teva weighs heavily in granting Teva relief consistent with the caselaw. Accordingly, the Court should grant Teva's request to cutoff its review of documents the CMML model predicts are non-responsive and/or in the alternative, order Plaintiffs to reimburse Teva for the costs and fees associated with reviewing the documents that Teva's CMML model predicts are non-responsive.

---

[4] Teva has repeated the same for the medium-priority custodians, and is in the process of completing that process for the low-priority custodians, bringing the total number of documents reviewed by Teva the CMML system predicts are non-responsive to a whopping *45,000*.

[5] *See* Exhibit C attached to Teva's reply brief, which details how each case cited to by Plaintiffs is distinguishable here.

The Honorable Joel Schneider
November 18, 2020
Page 11

Dated: November 18, 2020　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Jeffrey Greene*
　　　　　　　　　　　　　　　　　　　　　　　Jeffrey Greene
　　　　　　　　　　　　　　　　　　　　　　　GREENBERG TAURIG, LLP
　　　　　　　　　　　　　　　　　　　　　　　One International Place, Suite 2000
　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02110
　　　　　　　　　　　　　　　　　　　　　　　Telephone:　(617) 310-6031
　　　　　　　　　　　　　　　　　　　　　　　Fax:　　　　(617) 897-0931
　　　　　　　　　　　　　　　　　　　　　　　greenej@gtlaw.com

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Lori G. Cohen*
　　　　　　　　　　　　　　　　　　　　　　　Lori G. Cohen
　　　　　　　　　　　　　　　　　　　　　　　Victoria Davis Lockard
　　　　　　　　　　　　　　　　　　　　　　　Steven M. Harkins
　　　　　　　　　　　　　　　　　　　　　　　Terminus 200
　　　　　　　　　　　　　　　　　　　　　　　3333 Piedmont Rd., NE, Suite 2500
　　　　　　　　　　　　　　　　　　　　　　　Atlanta, Georgia 30305
　　　　　　　　　　　　　　　　　　　　　　　Tel: (678) 553-2385
　　　　　　　　　　　　　　　　　　　　　　　Fax: (678) 553-2386
　　　　　　　　　　　　　　　　　　　　　　　cohenl@gtlaw.com
　　　　　　　　　　　　　　　　　　　　　　　lockardv@gtlaw.com
　　　　　　　　　　　　　　　　　　　　　　　harkinss@gtlaw.com

　　　　　　　　　　　　　　　　　　　　　　　Brian H. Rubenstein
　　　　　　　　　　　　　　　　　　　　　　　1717 Arch Street, Suite 400
　　　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　　　　Tel: (215) 988-7864
　　　　　　　　　　　　　　　　　　　　　　　Fax: (215) 689-4419
　　　　　　　　　　　　　　　　　　　　　　　rubensteinb@gtlaw.com

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and Actavis Pharma, Inc.*

The Honorable Joel Schneider
November 18, 2020
Page 12

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2020, I served the foregoing letter to the Court was served on all counsel of record via filing in the CM/ECF system.

*/s/ Jeffrey Greene*