Exhibit 16

Munoz v. China Expert Technology, Inc., Not Reported in F.Supp.2d (2011)
2011 WL 5346323

2011 WL 5346323
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Carlos MUNOZ, et al., Plaintiffs,

v.

CHINA EXPERT TECHNOLOGY,
INC., et al., Defendants.

No. 07 Civ. 10531(AKH).
|
Nov. 7, 2011.

*ORDER REGULATING DISCOVERY*

[ALVIN K. HELLERSTEIN](), District Judge.

 **\*1** I have reviewed the parties' memoranda recommending how discovery should proceed, I rule as follows:

1. Rules 33 and 34 interrogatories and requests to produce shall be served upon the parties, pursuant to a schedule requiring:

a. Service within 20 days from this order;

b. Responses 30 days thereafter;

c. Answers to interrogatories and production of documents 60 days after service (¶ 1a, above)

d. Production will be made, to the extent practical, in strict conformity to Federal and Local Rules, in searchable, electronic format, at the offices of requesting counsel.

e. Disputes will be tendered to me promptly, using the procedures of Individual Rule 2E.

2. Defendants argue that the procedures of the Hague Convention should first be followed. These procedures are slow and cumbersome, and subject discovery to the law of the country where the producing party is located. However, this lawsuit is four years old, and discovery just now beginning. The lawsuit is properly in this Court's jurisdiction, involves securities sold in the United States and under the protection of United States' laws governing United States capital markets,

and implicates important United States' policies and practices. In the circumstances, discovery will proceed under the Federal Rules of Civil Procedure. *See [Societe Nationale mdustrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa,]() 482 U.S. 522, 542–44, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987).*

3. Defendants argue that the laws of the People's Republic of China limit discovery, impose secrecy, and punish violations under the criminal laws. Defendants will have to choose how to proceed, whether pursuant to the Federal Rules of Civil Procedure and the orders of this Court, or out of concern for their perceptions of the real strictures of Chinese laws, to the extent that such laws purport to punish compliance with the orders of this court. If defendants do not act in accordance with the law and practices of the United States courts, sanctions may be appropriate, including the striking of pleadings and other appropriate sanctions.

China's state secrecy and other related laws (as outlined in Section III.A. of Defendants' Joint Memorandum of Law in Response to Plaintiffs' Brief Regarding Discovery) criminalize the disclosure of information that relates to Chinese national security and other potentially sensitive interests. These laws have broad sweep and can preclude disclosure of a host of nebulously defined categories of information. *See [Richmark Corp. v. Timber Falling Consultants,]() 959 F.2d 1468, 1477 (9th Cir.1992)*. And thus they are viewed with some skepticism in U.S. courts. The Supreme Court has stated that "[i]t is well settled that [foreign 'blocking'] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute," *[Societe Nationals,]() 482 U.S. at 544 n. 29*. Rather, any deference to state secrets laws should be decided by examining the facts in each individual case. *See id.*

 **\*2** The Ninth Circuit was presented with a case similar to this one, where a company with information in China feared sanctions if it were to comply with a U.S. court's discovery order. Nonetheless, the Ninth Circuit deemed discovery under the Federal Rules appropriate, and I find that court's reasons for doing so to be helpful in the case at hand. Following *Societe Nationale,* the *Richmark* court employed a multi-factor balancing test to determine whether discovery was appropriate under the Federal Rules. And "the most important" factor was the "balance of national interests"— the determination as to "whether disclosure would affect important substantive policies or interests of either the United

2011 WL 5346323

States or the PRC." *Richmark,* 959 F.2d at 1476 (internal quotation marks omitted).

This factor alone is enough to tip the balance in favor of a presumption of disclosure in this case. The national interest of the United States is observably strong; China's is speculative. China Expert Technology, Inc. ("CXTI") was incorporated in the United States, and its shares were traded publicly in this country. CXTI filed disclosure statements with the SEC, And the alleged fraud affected U.S. investors and U.S. capital markets. The United States has a strong interest in both regulating its domestic corporations and ensuring the integrity of its financial markets.

The effect of disclosure on China's national interests, however, is at this stage unproven and uncertain. Though CXTI apparently contracted with local Chinese governments, any state secret sensitivity China may claim is immediately put into question by the fact that China knew that the company with which it contracted was subject to American disclosure laws. CXTI communicated openly with investors about its financial condition, and filed documents with the SEC. Furthermore, as plaintiffs point out, all discovery they seek has already been turned over to PKF Hong Kong and PKF New York. Memorandum Outlining Plaintiffs' Suggestions For Discovery Against Foreign–Based Defendants In This Case at 22. Finally, the defendants have not explained how Chinese state secrecy laws apply to Hong Kong, where certain defendants are located.

I do not, by stating these propositions, intend to pre-judge discovery issues that may arise, or deter parties from exercising their rights to seek specific judicial rulings regarding specific discovery issues. As I understand from the pleadings, CXTI was engaged to develop computer capability and facilities in China, and there could be broad reach to the laws of China regarding state secrets, confidentiality of contracts filed with the government, and accountants' work. I suspect that many of the documents that may be subject to assertions of state and archival secrecy may be relevant—perhaps, highly relevant—to the issues of this case. There may be need for this Court, as the Court presiding over these proceedings and any trial, to make rulings that balance relevance against assertions of secrecy, and which seek to preserve the policies of China's laws on state secrets and federal policy in relation to issuer's and accountants' obligations. I fully understand that specific issues will require specific hearings and rulings, and I intend to provide an appropriate forum to consider such issues, whether raised by

using Individual Rule 2E or motion practice under the Federal Rules of Civil Procedure.

> **\*3**  4. Approximately 30 days after production is made, on a date and time that plaintiffs' counsel will obtain from chambers, counsel shall attend a conference in my Courtroom 14D to discuss the witnesses whose depositions are to be taken, and deposition practice.

> a. Depositions will take place convenient to witnesses, the witness being the person examined rather than the party that was noticed.

> b. Persons resident in China will be produced for examination in Hong Kong, provided that the depositions are conducted according to the laws and practices of the Federal Rules of Civil Procedure and Local Rules of Court. If such laws and practices cannot be or are not followed, the depositions will be resumed in New York City, with costs (including attorneys' fees and expenses) to be taxed against the party responsible for such failures.

> c. Disputes that arise in the course of depositions, to the extent that they cannot feasibly be resolved through joint letters submitted under Individual Rule 2E, will be resolved through telephone conferences, either with me or with Hon. James C. Francis IV, the magistrate judge appointed to the case.

> 5. This order does not treat discovery of third parties. Plaintiffs' papers state that the identities of third parties are not now known. We do know that CXTI operated through Chinese subsidiary corporations, and that CXTI was a shell corporation, incorporated in Nevada and operating and headquartered in China. The parties should proceed through party-discovery first (including, to be treated as parties, the Chinese subsidiary corporations), and, to the extent feasible, before raising issues of third-party discovery.

This order also does not treat discovery of plaintiffs' investigator in China, nor whether such discovery would be appropriate. If discovery is desired, it should be the subject of a special proceeding.

> 6. Simultaneous with the procedures outlined in the preceding paragraphs of this order, and within 20 days of this order, the parties shall propose a plan for conducting discovery relevant to the certification of a class, followed by appropriate motions.

7. Questions as to any of the above may be submitted by joint letter following the practices of Individual Rules 1D and 2E.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 5346323

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.