# Exhibit 17

Case 1:19-md-02875-RMB-SAK   Document 638-17   Filed 11/23/20   Page 2 of 12
                                    PageID: 15424
Meggitt (Orange County), Inc. v. Nie Yongzhong, Not Reported in F.Supp.3d (2015)
2015 WL 1809354

2015 WL 1809354
Only the Westlaw citation is currently available.
United States District Court,
C.D. California,
Southern Division.

MEGGITT (ORANGE COUNTY), INC., et al., Plaintiffs,
v.
NIE YONGZHONG, et al., Defendants.

No. SACV 13–0239–DOC (DFMx).
|
Signed April 21, 2015.

**Attorneys and Law Firms**

Charles August Kertell, Yasser M. El–Gamal, Manatt Phelps and Phillips LLP, Costa Mesa, CA, Lawrence Robert Laporte, Robert W. Dickerson, Jr., Manatt, Phelps & Phillips, LLC, Los Angeles, CA, for Plaintiffs.

Christian Anstett, Jaime W. Marquart, Baker Marquart LLP, Los Angeles, CA, Daniel Johnson, Jr., Corey R. Houmand, Jacob Joseph Orion Minne, Jason Evan Gettleman, Michael J. Lyons, Morgan Lewis and Bockius LLP, Palo Alto, CA, Christopher J. Banks, Lorraine M. Casto, Morgan Lewis & Bockius LLP, San Francisco, CA, Todd William Smith, Morgan, Lewis & Bockius LLP, Irvine, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS [480]**

DAVID O. CARTER, District Judge.

 *1  Before the Court is Plaintiffs' Motion for Sanctions ("Motion") (Dkt.480). This matter came for hearing on April 20, 2015. Having considered the briefing, oral arguments, and relevant exhibits, the Motion is GRANTED IN PART. The Court finds that sanctions are an appropriate remedy for a number of the discovery abuses described in Plaintiffs' Motion. However, terminating sanctions are inappropriate. The Court will impose monetary sanctions and may instruct the jury or preclude evidence as described below. In addition, the Court finds it appropriate at this time to STRIKE Defendants' affirmative defense of unclean hands, as Defendants concede that Plaintiffs did not engage in the wrongful conduct described in the Answer.

**I. Background**

This is a trade secrets case in which Plaintiffs Meggitt (Orange County), Inc. ("Meggitt OC") (formerly, Meggitt San Juan Capistrano, Inc.) and Meggitt (Maryland), Inc. ("Meggitt MA") (collectively, "Meggitt" or "Plaintiffs") are suing former Meggitt (Xiamen) Sensors & Controls Co. Ltd. ("Meggitt Xiamen") employee Nie Yongzhong (who also goes by Bill Nie) ("Nie") and his company Xiamen Niell Electronics Co. Ltd. ("Niell–Tech") for stealing Meggitt trade secrets, and eventually using those trade secrets to manufacture several products using Meggitt's trade secret information. *See* Fourth Amended Complaint ("FOAC") (Dkt.386). Plaintiffs also bring claims for federal false advertising regarding the promotion of products that Defendant Niell–Tech did not actually produce and unfair competition.

This Motion is premised upon Defendants' purported discovery misconduct and misrepresentations to the Court over the course of this litigation.

**A. Facts**

Plaintiffs make the following allegations in the FOAC.

Meggitt MA and Meggitt OC are leading designers and manufacturers of sensors and accelerometers for vibration, shock, and pressure measurements, which have a variety of uses including in aircraft engines, pacemakers, and seismic measurements. FOAC ¶ 13. Meggitt manufactures products at Meggitt Xiamen[1]—where Defendant Nie was employed as an engineer between October 2005 and August 2011. *Id.* ¶ 14.

While working at Meggitt Xiamen, Nie had access to Meggitt's trade secret, confidential, and proprietary information which he specifically agreed not to disclose or use. *Id.* ¶ 16.

In April 2010, Nie founded Niell–Tech, while he was still employed at Meggitt Xiamen. *Id.* ¶ 17. Niell–Tech now manufactures and markets sensors and accelerometers of the same shape and size, with the identical specifications, as several Meggitt products. *Id.* ¶ 18. Plaintiffs allege that Niell–Tech's products could not have been developed and manufactured to precisely match Meggitt's dimensions and specifications unless Defendants

possessed and used Meggitt's trade secret, confidential, and proprietary information (for example, its assembly instructions, calibration software/source code). *Id.* ¶¶ 19–20. Plaintiffs identify "job travelers" as a specific source of substantial trade secret information. *Id.* ¶¶ 21–23. Nie was instructed on Meggitt PLC's Code of Conduct, including the need to protect the intellectual property and confidential information of the company. *Id.* ¶ 23.

**\*2** Plaintiffs contend that Defendants could not have achieved the same quality for its products, or achieved the same specifications of Meggitt's products, without a significant investment of capital and labor and more time than elapsed before Defendants started selling products. *Id.* ¶ 25.

Based on the foregoing, Plaintiffs bring suit for trade secret misappropriation under California Civil Code § 3426.

Plaintiffs also bring a cause of action for federal false advertising under 15 U.S.C. § 1125(a), based upon Defendants' false representation of "being a well-established, strong, reputable and reliable company with qualified engineers, and a wide range of product offerings." *Id.* ¶ 32. Plaintiffs identify material misrepresentations to support their position, including Defendants advertisement in product brochures and data sheets for 47 products that do not exist or were not manufactured, *id.* ¶¶ 33, 40–73; advertisements for products in data sheets that used Meggitt's trade secret, confidential, and proprietary information, mimicking the specifications for Meggitt's products, *id.* ¶¶ 34–35, 74–80; and Defendants' advertisement on Niell–Tech's website about having experts and engineers from Endevco (Meggitt OC) and Wilcoxon (Meggitt Maryland). *Id.* ¶¶ 36, 81–83.

Finally, Plaintiffs assert an unfair competition claim under California Business and Professions Code § 17200 and common law.

Defendants filed an answer to the FOAC on December 4, 2014 ("Answer") (Dkt.388). In the Answer, Defendants assert several affirmative defenses, including an affirmative defense for "unclean hands." The defense is premised on allegedly defective "Meggitt" and Meggitt Xiamen products. Answer ¶ 106. Specifically, Nie charges that "[t]his shifting of weld positions compromised the strength, quality, and accuracy of the Meggitt speed sensors that were being manufactured at Meggitt Xiamen." *Id.* ¶ 108. Nie allegedly supported the recall of Meggitt products, which management disagreed with. *Id.* ¶ 114. Nie purportedly resigned as a result. *Id.* ¶ 117. In addition, Nie asserts that he opposed cost-cutting measures by "Meggitt and Meggitt Xiamen," including the shut-down of central air-conditioners. *Id.* ¶ 119. In the Opposition to the Motion to Strike this affirmative defense, Defendants asserted that "Mr. Nie was forced to retain those documents in order to clear his name in the event of a catastrophic failure associated with Meggitt's defective sensor products." Opp'n Mot. to Strike (Dkt.395) at 5–6.

**B. Procedural History**

A complaint was filed on February 2, 2013 (Dkt.1). On September 26, 2013, the Court granted Plaintiff Meggitt (San Juan Capistrano)'s motion for a preliminary injunction. Order Re: Plaintiff's Motion for a Preliminary Injunction, Sept. 26, 2013 (Dkt.41); Order Granting Plaintiff's Motion for Preliminary Injunction and Expedited Discovery (Dkt.43).[2]

**\*3** The Preliminary Injunction provided, among other things, that:

- Defendants are enjoined from marketing, selling, or offering for sale, the following products: Niell–Tech's model CAYD051V product; Niell–Tech's model CAYD053–50 product; and Niell–Tech's model CAYD063V product.

- Defendants shall return to Plaintiff any and all records or documents reflecting Plaintiff's trade secret, confidential, and/or proprietary information, including, but not limited to, job travelers, photographs, drawings, work instructions, acceptance test procedures, and any other proprietary or confidential information belonging to Meggitt, or any records, documents and/or information derived therefrom, and any and all documents created or recreated from memory or otherwise by Defendant Nie either during or after his employment with Meggitt (Xiamen) Sensors & Controls Co. Ltd. that contain information pertaining to Meggitt's confidential, proprietary information, or trade within fifteen (15) days of this Order.

- Defendant shall respond to Plaintiff's First Set of Interrogatories to Defendant Nie, Plaintiff's First Set of Interrogatories to Defendant Niell–Tech, Plaintiff's First Set of Requests for Production of Documents and Things to Defendant Nie, and Plaintiff's First Set of Requests for Production of Documents and Things to Defendant Niell–Tech with fifteen (15) days of the date this Order is entered.

Case 1:19-md-02875-RMB-SAK   Document 638-17   Filed 11/23/20   Page 4 of 12
                                     PageID: 15426
Meggitt (Orange County), Inc. v. Nie Yongzhong, Not Reported in F.Supp.3d (2015)
2015 WL 1809354

On November 15, 2013, the Court set initial dates in this matter. Scheduling Order, Nov. 15, 2013 (Dkt.52). The discovery cut-off date was set for July 18, 2014; expert discovery for November 7, 2014; motion cut off for January 12, 2015; and trial set for March 10, 2015.

On June 16, 2014, Plaintiffs filed a Motion for Sanctions ("June Motion") (Dkt.190). The June Motion was based upon false interrogatory responses, failure to produce Meggitt documents covered by the Preliminary Injunction, and non-compliance with discovery orders, among other issues. *See generally* Memorandum in Support of Motion for Sanctions (Dkt.191). The Court denied the Motion on November 3, 2014. Order Granting Motion for Relief from Scheduling Order, Denying Motion for Sanctions, and Denying Motion to Review Magistrate Judge Orders, Nov. 3, 2014 (Dkt.377). The Court wrote:

> It is clear that each side is deeply frustrated by the other's purported gamesmanship. The Court is often called upon to referee discovery disputes, but the caustic tone of this litigation is deeply troubling and strays from the cordiality and respect that the legal profession—and, indeed, the courts—hope to cultivate. For its part, the Court regrettably contributed to this problem by describing one of the party's tactics as "artful," which has served only to further sour matters. In light of the increased time for discovery, the Court is confident that reason and professionalism will prevail, and most of these disputes can be amicably resolved by the parties and their counsel.
>
> **\*4** Of Plaintiffs' grievances, the Court is disinclined to sanction Defendants for the filing of various motions or the assertions of various defenses. Furthermore, even if Plaintiffs' complaints were all true and meritorious, it is very doubtful that terminating sanctions would be the appropriate relief in this case.
>
> Therefore, the Court DENIES the Motion for Sanctions WITHOUT PREJUDICE. The Court invites the parties to reconsider whether sanctions, an extraordinary remedy, are appropriate. If either Plaintiffs or Defendants conclude that sanctions are truly necessary and elect to file another motion, then they should be mindful of at least two issues: (1) the Court will strictly enforce Local Rule 7–3's requirement to meet and confer, and insists that such a conference take place in person; and (2) the Court is inclined to grant such a motion only upon a substantial showing of either material misrepresentations to the Court or clear non-compliance with the Court's orders.

The Order also modified the applicable dates in this case—setting the discovery cut-off date for January 16, 2015, the motion cut-off for March 16, 2015, the final pre-trial conference for April 27, 2015, and trial for May 19, 2015. *Id.* at 3.

On December 22, 2014, Plaintiffs moved to strike Defendants' affirmative defenses, including their unclean hands defense (Dkt.389). The Court granted in part and denied in part the Motion, but declined to strike the unclean hands defense, based upon the allegations in the Answer. "Taking the allegations as true, Defendant has pled sufficient facts to establish the potential, if farfetched, relationship between the Plaintiffs' claims and the bad acts alleged by Defendants." Order Re: Motion to Strike (Dkt.389) at 4. The Court found that "Defendants [pled] sufficient facts to provide [fair] notice" and that "the facts as pled [did] not foreclose the existence of a nexus as required for the unclean hands defense.... Defendants' theory, although implausible, raises issues of fact and law such that the issue is unsuited for resolution at this juncture.... Thus, for purposes of the present motion, Defendants' fourth affirmative defense is pled sufficiently to overcome a motion to strike an 'insufficient' defense." *Id.*

Neither party filed a summary judgment motion.

In the past several months, discovery has been ongoing and heated. Magistrate Judge McCormick has ruled on several last-minute discovery motions. *See, e.g.,* Discovery Orders (Dkts.459, 462, 470).

Plaintiffs filed the present Motion on March 23, 2015 (Dkts.480, 481). The Motion raises many of the same issues presented in the June Motion, for example, inconsistent interrogatory responses and the failure to produce Meggitt documents in Defendants' possession (in fact, denying their existence). *See* Memorandum in Support of Motion for Sanctions (Dkt.481). Defendants filed an Opposition on March 30, 2015 (Dkt. 507; Sealed Dkt. 516). Plaintiffs filed a Reply on April 6, 2015 (Dkt.534).

**\*5** The alleged discovery abuses on which Plaintiffs base their Motion are detailed below.

**C. Discovery History**

**1. Meggitt Documents in General**

After the Court entered the Preliminary Injunction on September 26, 2013, Defendants were required to promptly (within 15 days) return to Meggitt (1) all of Meggitt's trade secret, confidential, and/or proprietary information, including, but not limited to, job travelers, photographs, drawings, work instructions, acceptance test procedures, (2) any other proprietary or confidential information belonging to Meggitt, (3) any records, documents and/or information derived from Meggitt's information, and (4) any and all documents created or recreated from memory or otherwise by Defendant Nie either during or after his employment with Meggitt Xiamen.

Defendants returned no documents to Meggitt by the October 11, 2013 deadline. At the time, Defendants represented that they had none of Meggitt's documents. *See, e.g.,* Defendant Nie's Responses to Plaintiff Meggitt, Inc.'s First Set of Requests for Production of Documents and Things, October 11, 2013 ("Nie October Responses") (Dkt.69–10) at 10–11 (*e.g.,* RFP 7 for "documents in your possession, custody, or control that Nie obtained from Meggitt or any parent, subsidiary, or affiliate of Meggitt." "Responding Party has no responsive documents in his possession, custody or control."); Defendant Xiamen Niell Electronics Co., Ltd.'s Responses To Plaintiff Meggitt, Inc.'s First Set of Requests For Production of Documents and Things, October 11, 2013 ("Niell–Tech October Reponses") (Dkt.69–11) at 10–11 (same). On November 13, 2013, Nie again asserted that he had none of Meggitt's documents in his possession, custody, or control. Defendant Bill Nie's First Supplemental Responses to Plaintiff Meggitt, Inc.'s Interrogatories (Set One) (Verified) ("November Responses") (Sealed Dkt. 76) at 10–11.

Meggitt filed Motions to Compel with Magistrate Judge McCormick on December 20, 2013 (Dkts. 65 & 66). Defendants opposed the motions, representing that they had no Meggitt documents in their possession, custody, or control. Joint Stipulations Re: Motions to Compel (Sealed Dkt. 75) at 49:7–8, (Sealed Dkt. 74) at 40:17–18.

Based upon these numerous representations, on January 6, 2014, Magistrate Judge McCormick did not compel production of Meggitt documents, as it was not clear to the Court at that point that Defendants had not fulfilled their discovery obligations. He wrote:

> Plaintiff takes issue with Defendants' assertion that they have no responsive documents in their possession, custody,
> or control. Rule 26(e) imposes upon Defendants a duty to supplement or correct these responses if they learn that their prior responses have been incorrect. To the extent Defendants fail to abide by this requirement, the consequences of such a failure are set forth in Rule 37(c)(1). It does not appear to the Court that at this point in the proceedings it is appropriate or necessary for the Court to address any such consequences, as it is not clear that Defendants have failed to abide by their responsibilities to produce all responsive documents and/or supplement or correct their discovery responses. If and when such a failure becomes arguably apparent, the parties are invited to bring the appropriate motion.

**\*6** Order Re: Motions to Compel, Jan. 6, 2014 ("January Order") (Dkt.80) at 3.

Defendants made similar representations (to the Court or Plaintiffs' counsel) over the next several months, expressly denying being in possession, custody, or control of Meggitt's documents and representing that they were in substantial compliance with their discovery obligations and had complied with Court orders. *See* Def. Nie's Response to Pls. First Set of Requests for Production of Docs. and Things, January 31, 2014 (Dkt.166–1) at 5:15–8:8; Def. Niell–Tech's Supp. Resp. to Pls. First Set of Requests for Production of Docs. and Things, January 31, 2014 (Dkt.166–2) at 5:15–8:8; Defs' Opp'n to Pls' Mot to Continue, May 19, 2014 (Dkt.174) at 4:22–5:22; Email from Defense counsel Michael J. Lyons to Plaintiffs' Counsel, May 21, 2014 (Dkt 198–1) Ex. B at 8 ("It is important for Defendants to be made aware of the[ ] issues [supporting Plaintiffs' June Motion], because we believe that we have fully complied with our discovery obligations, as we explained in our most recent filing with the Court on Monday."); Letter from Mario Moore to Lawrence LaPorte, June 6, 2014 (Dkt.200–1) ("As an initial matter, discovery has been ongoing for months—defendants have produced voluminous discovery including product samples, technical documents and allowed Plaintiffs access to Defendants' trade secret materials in their secure room on multiple occasions. Thus, and contrary to their objections, Plaintiffs have received 'complete discovery from Defendants,' and this objection should be overruled.").

Despite these representations, on April 10, 2014, Defendant Nie sent an email to Eric Ladiere, an executive at Meggitt, indicating that Nie had Meggitt documents in his possession ("April 2014 Email") (Sealed Dkt. 196). In the email, Nie complained about bad practices that Meggitt or its affiliates had engaged in while he was employed at Meggitt Xiamen.

The email also revealed, however, that Nie still had in his possession documents that Nie retained when he left Meggitt Xiamen in 2011. Nie wrote, "I am keeping all of the evidence (email) both on the defect products (airplane engine sensor and pacemaker sensor) which shipped to the end customer with dutiful attitude.... I hope you can stop the hurt to me and investigate this issue." *Id.*

On June 20, 2014, Defendants began producing additional documents, including documents containing Meggitt confidential and trade secret information. Rothwell Decl. (Dkt.202) ¶ 4. In all, over 300 boxes of documents were produced (comprised of over 700,000 pages of information). *Id.* ¶¶ 2–6. Prior to that, approximately 3,000 pages of documents had been produced—with no Meggitt documents among them. Rothwell Decl. (Dkt.177) ¶ 12. Defendants later admitted that the documents came from a hard drive that Nie took from Meggitt Xiamen in August 2011.

In their Opposition to Meggitt's June Motion, Defendants represented that the production "consist[ed] of documents uncovered recently." Opp'n to Mot. for Sanctions (Dkt.198) at 11. Defendants explain that, after Morgan, Lewis & Bockius LLP appeared in the case to represent Defendants, counsel conducted interviews and "learned of an external hard drive in Mr. Nie's possession." Opp'n at 9. Defendants did not otherwise explain the inconsistencies in Nie's and Niell–Tech's earlier discovery responses.

### 2. Hard Drive

**\*7** Plaintiffs also complain that Defendants failed to produce to them a forensic copy of the hard drive that Nie retained when he left Meggitt Xiamen. Defendants originally maintained that they could not produce a physical hard drive because the of the risk it would be retained by Chinese authorities leaving the country. Later, Defendants offered to return the original device to Meggitt Xiamen. Lyons Decl. Ex. 6, Letter from Daniel Johnson, July 18, 2014 (Dkt.508) at 2. Plaintiffs did not respond.

Plaintiffs received a copy of the hard drive in January 2015, after it had been analyzed by a Defense expert, Robert Young. Young Report, LaPorte Decl., Ex. 2 (Sealed Dkt. 492). Young assessed items including "most recent access date for any of the files cited by [Meggitt's expert] as containing Meggitt's Trade Secrets." *Id* . at 1.

Plaintiffs' expert also used the copy of the hard drive to develop a report as to whether the hard drive had been accessed. Smith Report (Sealed Dkt. 517). Plaintiffs expert concluded the drive was extensively accessed in May 2014.

Meggitt also notes that Defendants' counsel had been in possession of the hard drive since May 2014, HD Chain of Custody Documents, LaPorte Ex. 3 (Dkt.482–3), but only acknowledged having the documents in late June.

### 3. CAYD053–50 Accelerometer Product–Chinese State Secrets

The Preliminary Injunction enjoined Defendants from marketing, selling, or offering for sale their Niell–Tech CAYD053–50 accelerometer product, and granted expedited discovery into Defendants' technical and sales documents and information related to this product.

Defendants initially refused to turn over these documents, asserting various discovery objections. In the January Order, Magistrate Judge McCormick rejected most of Defendants' objections, including Defendants' initial attempt to invoke protections from disclosure under Chinese state secrets law. He wrote:

> Defendants object to many of Plaintiff's document requests and interrogatories on the basis that disclosure of the information sought therein "would possibly subject defendants to criminal penalties in China." Defendants also object that Chinese law precludes them from identifying their government customers. Tellingly, however, Defendants do not cite a specific Chinese law that would bar production of either category of information. A party relying on foreign law has the burden of showing that such law bars production. *Roberts v. Heim,* 130 F.R.D. 430, 438 (N.D.Cal.1990) (citing *United States v. Vetco, Inc.,* 691 F.2d 1281, 1289 (9th Cir.1981)). In the absence of such authority, the Court overrules Defendants' confidentiality objections based on Chinese law."

On January 10, 2014, Defendants moved for a protective order based on Plaintiffs' failure to identify its trade secrets with sufficient particularity (Dkt.83). In addition, during the process of constructing a protective order, Defendants attempted to invoke Chinese law to govern disclosure of documents. Joint Protective Order (Dkt.104–2) at 55 (export control). Judge McCormick declined to adopt their position, and refused to apply Chinese export law absent a showing that it was controlling. Minutes of Motion for a Protective Order (Dkt.112). At the same time, Judge McCormick adopted Plaintiffs' proposal that protected information be produced

Case 1:19-md-02875-RMB-SAK   Document 638-17   Filed 11/23/20   Page 7 of 12
                                   PageID: 15429
Meggitt (Orange County), Inc. v. Nie Yongzhong, Not Reported in F.Supp.3d (2015)
2015 WL 1809354

in Orange County, California. *Id.* at 4–5; Protective Order (Dkt.121) ¶ 7.6(a).

**\*8** On March 12, 2014, Defendants again moved for a protective order, this time explicitly based on "state secrets" (Dkt.139). The Motion argued that "[t]he requested technical information for CAYD053–50 falls under the ambit of the People's Republic of China ("PRC") state secrecy laws and any disclosure is potentially subject to criminal sanction and jail time." *Id.* at 1; Nie Decl. (Dkt.139–2) ¶ 2.[3] Judge McCormick denied the motion on March 21, 2014 (Dkt.151). After a well-reasoned analysis, weighing the PRC's interest in secrecy against the U.S. and Plaintiffs' interest in disclosure, he concluded:

> [A] balancing of the *Richmark* factors weighs in favor of ordering Defendants to produce the discovery about which they assert the applicability of China's state secrets law. This result is particularly warranted in light of (1) Defendants' failure to demonstrate an actual likelihood that production would result in criminal or civil liability in the PRC, (2) the United States's interest in providing a remedy for the clear harm caused by trade secret misappropriation to parties like Plaintiff, and (3) the Court's skepticism about the validity of PRC's interest in preventing disclosure.
> *Id.* at 8. Therefore Defendants were foreclosed from invoking China's state secrets law to avoid disclosure of documents in California.

Plaintiffs also note that the CAYD053–50 product has been marketed and promoted in the United States and Europe, rendering Defendants' state secrets objection highly suspect. Mot. at 14; Mendoza Decl. (Dkt.17) ¶ 22, Ex. E.

Defendants failed to produce the documents to Meggitt in California. Nevertheless, Defendants agreed to allow inspection of the documents in China (although, forbidding the removal of the documents from China). Opp'n to June Mot. (Dkt.198) at 5. Plaintiffs declined to inspect the documents in China.

On March 6, 2015, Defendants produced certain documents related to the CAYD053–50 product after "successfully applying to the Chinese government to have these documents declassified as PRC State Secrets." Mot. at 13 n. 11, Opp'n at 10.

### 4. Interrogatory Responses

Meggitt also bases its request for sanctions on Defendants' various interrogatory responses.

First, in November 2013, Nie represented that he did not have any Meggitt documents in his possession, custody, or control. November Responses (Sealed Dkt. 76). This was clearly false, as evidenced by his April 2014 Email.

Second, Meggitt asked Defendants to identify "all products Niell–Tech has manufactured from April 2010 to the present." First Set of Interrogatories (Dkt.69–1) Interrogatory No. 1. Nie initially asserted over 90 accelerometers and sensors had been produced (Sealed Dkt. 76) ("November List"), but two months later trimmed the list to 64 sensors and accelerometers. Houmand Decl. (Dkt.412) Ex. 3 ("January List"). Plaintiffs identify 38 products that were on the November List but were not on the January List.

**\*9** Third, Meggitt identifies a discrepancy regarding the sales data for Product CA3XYD048. Mot. at 21. Defendants represented that the product was manufactured prior to September 2010 (November Responses at 12:16–19), but failed to identify sales data for the product (November Responses at 9:12–10:5; Supplemental Interrogatory Responses (Sealed Dkt. 432)). Defendants note that Plaintiffs withdrew a motion to compel covering this point, and believed that they had complied with their obligations. Opp'n at 23.

Fourth, Meggitt notes that Nie originally represented that the CAYD053–50 product was classified as a state secret in January 2012 (Dkt.139–2). In Defendants' Third Supplemental Objections to Plaintiffs Second Set of Interrogatories, Defendants maintained that the official classification occurred by the end of 2013 (although Defendants stated that by July 10, 2012 it had received a "certification to produce a military use product," mandating strict secrecy) (Sealed Dkt. 500).

Fifth, Meggitt asserts that Defendants have failed to produce information regarding their CAYD053–10 product. This product was not identified on either the November or January List of products manufactured by Niell–Tech. On January 29, 2014, Nie attested that "technical documents relating to CAYD053–50 and CAYD053–10 have been classified as State Secrets" (Dkt.139–2). The alleged certification indicated that the product had been manufactured (Sealed Dkt. 142). Defendants maintain that there is no CAYD053–

10 product and that it was still in development at the time of the certification. Opp'n at 23.

Sixth, Meggitt asserts that Defendants have failed to provide all technical documents related to their CAYD172–25 and CAYD051V–100B products. These documents were identified by Defendants as having been manufactured. As to the first product, CAYD172–25, Defendants assert that "[d]evelopment of the product is not yet complete." LaPorte Decl. Ex. 11 (Sealed Dkt. 501) at 5:18–19. Plaintiffs note that Defendants produced a physical sample of the product to Meggitt in March 2014. Reply at 1; Transmission Letter, March 25, 2014 (Dkt.166–14). However, in oral arguments Defendants noted that this was just a prototype, and only three were actually manufactured. Defendants also asserted that a prototype for the CAYD051V–100B has not been manufactured, although they have since retracted that position. Supplemental Interrogatory Responses (Dkt.432) Ex. 2 No. 47.

**II. Legal Standard**

**A. Discovery Sanctions**

Under Federal Rule of Civil Procedure 37, the Court may sanction a party for failure to comply with a court order or failing to supplement earlier discovery responses under Rule 26. Fed.R.Civ.P. 37(b)-(c). Sanctions may include:

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> **\*10** **(iii)** striking pleadings in whole or in part;
>
> **(iv)** staying further proceedings until the order is obeyed;
>
> **(v)** dismissing the action or proceeding in whole or in part;
>
> **(vi)** rendering a default judgment against the disobedient party; or
>
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37. Alternately, or in addition, the court may impose on the disobedient party reasonable expenses caused by the failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.*

A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe. Because there is a strong preference for adjudicating cases on their merits, only "willfulness, bad faith, and fault" justify terminating sanctions. *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir.2003). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Id.* at 912 (quoting *Hyde & Drath v. Baker,* 24 F.3d 1162, 1167 (9th Cir.1994)).

Courts apply a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction is just:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." The subparts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. This "test" is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow.

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1096 (9th Cir.2007).

"What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.' " *Id.* at 1097 (quoting *Valley Eng'rs v. Electric Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir.1998)).

**B. Striking Insufficient Defenses**

The court may, on its own, strike from a pleading an insufficient defense. Fed.R.Civ.P. 12(f). The essential function of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) (internal quotation marks and citation omitted), *overruled on other grounds,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983). The grounds for striking a defense must appear

on the face of the pleading under attack, or from matters that the court may take judicial notice. *SEC v. Sands,* 902 F.Supp. 1149, 1165 (C.D.Cal.1995).

### III. Analysis

#### A. General Discovery Sanctions

**\*11** Plaintiffs argue that Defendants' discovery misconduct, chronicled above, merits the award of terminating sanctions.[4]

##### 1. Previous Sanctions Order

Defendants argue generally that, because the Court previously declined to issue sanctions on some overlapping issues, the Court should not or will not now issue sanctions. In its November Order, the Court denied the June Motion without prejudice. The Court was under the sincere hope that cooler minds would prevail. Nevertheless, the Court's ruling by no means foreclosed Plaintiffs from raising the same issues after all parties had been provided additional time for discovery. The Court's ruling also did not decide the propriety of Defendants' discovery practices. Specifically, Defendants claim—with regards to its production obligations for the CAYD053–50 technical documents—that they "reasonably believed that their inspection proposal complied with discovery" in light of the Court's denial of the previous sanctions motion. Opp'n at 13. This inference has no foundation in the text of the Court's November Order or any of its previous orders. Typically, Courts do not modify explicit orders *sub rosa,* and this case was no exception. The denial of sanctions did not tacitly imply Defendants had complied with their obligations.

##### 2. Substantive Discovery Complaints

Having reviewed the record and arguments from both parties, this much has become clear to the Court:

- Defendants knowingly and willfully misrepresented to the Court and Meggitt that they did not have Meggitt documents in their possession, custody, or control. Defendant Nie clearly knew Meggitt documents were in his possession, as is evidenced by the April 2014 Email and Defendants' subsequent conduct. Nie knowingly had in his possession a hard drive with Meggitt documents that he did not turn over to Meggitt for approximately nine months after the Court's Preliminary Injunction, in violation of the terms of the injunction.

- However, the Court does not find defense counsels' representations about when the hard drive was revealed to them to be intentionally misleading. In the course of complex litigation, a few-week delay between becoming aware of a device and revealing it to opposing counsel is excusable. Further, the allegedly late disclosure of the physical hard drive by defendants counsel (as opposed to documents) does not appear to be in bad faith.

- Defendants' failure to turn over CAYD053–50 documents violated Court orders dated February 19, 2014 and March 21, 2014 (Dkts.Dkt.121, 151). The Magistrate Judge had fully considered and rejected Defendants' state-secrets defense. Nothing in the record demonstrates that Defendants sought reconsideration of the Magistrate Judge's order. Although Defendants clearly disagreed with the Magistrate Judge's position, "[d]isagreement with the court is not an excuse for failing to comply with court orders." *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1411 (9th Cir.1990). Finally, the fact that Defendants, in February, could apparently petition and obtain consent to disclose these documents, Opp'n at 13, raises serious questions as the legitimacy of this defense—a defense that had nevertheless been explicitly rejected by the Court. The failure to turn over these documents constitutes a substantial showing of willful noncompliance with the Court's orders.

- **\*12** As to the inconsistent interrogatory responses, the Court does not find that the responses evince bad faith or intentional misrepresentations (outside of Nie's representation regarding possession of Meggitt's documents). The inconsistencies may be attributable to inadvertence and the volume of discovery. The Court notes the inconsistency with regards to the CAYD172–25 product. While this draws into question the reliability of Defendants' records, the inconsistency does not indicate willfulness or bad faith.

Therefore, for failing to timely comply with Court orders regarding the disclosure of Plaintiffs' documents and disclosure of technical documents for the CAYD053–50 product, Defendants are subject to sanctions.

##### 3. Appropriate Remedy

Having found that sanctionable conduct occurred, the Court must now turn to the appropriate remedy. Plaintiffs seek terminating sanctions-the entry of a default judgment against

Case 1:19-md-02875-RMB-SAK   Document 638-17   Filed 11/23/20   Page 10 of 12
                             PageID: 15432
Meggitt (Orange County), Inc. v. Nie Yongzhong, Not Reported in F.Supp.3d (2015)
2015 WL 1809354

Defendants. Terminating sanctions are a measure of last resort, and are appropriate only where the Court has employed other methods to achieve compliance with Court orders.

The Court will consider the *Malone* five-factor test in determining whether to impose terminating sanctions: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Adriana Int'l Corp.,* 913 F.2d at 1412 (citing *Malone v. U.S. Postal Serv.,* 833 F.2d 128 (9th Cir.1987)).

"Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Id.*

A party suffers prejudice if the opposing party's actions "impair the [party's] ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* (citing *Malone,* 833 F.2d at 131). The Ninth Circuit has found that "[d]elay alone has been held to be insufficient prejudice." *Id.* (citing *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.,* 857 F.2d 600, 604 (9th Cir.1988)). Failure to produce documents as ordered, however, is considered sufficient prejudice. *Securities and Exchange Comm'n v. Seaboard Corp.,* 666 F.2d 414, 417 (9th Cir.1982).

Although the Court concludes that Defendants' non-compliance with its orders was willful, Defendants failures—especially in light of the extension of time for discovery—do not "threaten to interfere with the rightful decision of the case." Plaintiffs have had time to review the late-disclosed documents from Nie's hard drive and examine relevant evidence in the case. "[W]hile [Defendants' misconduct] certainly caused serious inconvenience for [Plaintiffs]," it does not appear that the interference was so significant that it will prejudice the outcome of this action. *Kahaluu Const. Co.,* 857 F.2d at 604. Thus, the third factor weighs against terminating sanctions.

 **\*13** The Court also finds that less drastic sanctions are available in this instance. While Plaintiffs invite the Court to "set an example to future litigants" that discovery misconduct will not be condoned, Reply at 4, this message can be conveyed with less dire means. Terminating sanctions, which must be employed sparingly, are not the right vehicle to get across the message. Monetary and evidentiary sanctions can remedy the wrongful conduct. The fifth factor weighs against terminating sanctions.

As the third, fourth, and fifth factors all weigh against terminating sanctions, the Court finds that terminating sanctions are inappropriate.

The Court must then assess other available sanctions.

First: monetary sanctions are appropriate for Defendants' failure to disclose the hard drive that Bill Nie retained and the failure to turn over the CAYD053–50 documents in a timely manner. The amount will be determined as addressed below.

Second: the Court will also consider evidentiary preclusion or an adverse inference instruction regarding the late disclosed documents. That said, the Court finds that the appropriate time to consider the scope of any evidentiary preclusion or structure the (potential) instruction is in the course of ruling on motions in limine and developing the jury instructions. Therefore, the Court will decline to issue a final ruling on preclusion or jury instructions at this time.

### B. Unclean Hands Affirmative Defense

The Court has twice allowed Defendants' "unclean hands" defense to proceed, over Plaintiffs objections. Plaintiffs now raise the issue of Defendants' unclean hands defense in this Motion, arguing that the Defendants used misleading language in their Answer to defeat the Motion to Strike. The Court will decline to issue sanctions as a result of the language in the Answer, but finds it appropriate to exercise its power under Rule 12(f) to strike the defense at this juncture.

In order to prevail on an unclean hands defense, "the defendant must demonstrate that the *plaintiff's* conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987) (citations omitted) (emphasis added). Therefore, it is presupposed that in order for Defendants to present an unclean hands defense, the inequitable conduct must have been perpetrated by Plaintiffs. Defendants, in their Opposition, essentially concede that it was not.

Defendants complain about two alleged areas of impropriety-failure to recall defective products and manipulating the air conditioning in manufacturing facilities. As alleged in the Answer, "Meggitt," necessarily implying Plaintiffs, perpetrated this activity. Contrary to this apparent

Case 1:19-md-02875-RMB-SAK   Document 638-17   Filed 11/23/20   Page 11 of 12
                                        PageID: 15433
**Meggitt (Orange County), Inc. v. Nie Yongzhong, Not Reported in F.Supp.3d (2015)**
2015 WL 1809354

representation, Defendants point out that the defective products were never meant to imply Plaintiffs' products, and the shut-down of the air-conditioning was committed by Meggitt Xiamen with Plaintiffs' knowledge.

**\*14** Plaintiffs request sanctions premised on the fact that Defendants intentionally misled the Court with the unclean hands defense by implying Plaintiffs products were defective or that Plaintiffs had employed cost-cutting measures such as shutting down the air-conditioning. Defendants deny that this impression was imparted intentionally. The Court declines to issue sanctions as to this issue. Discerning between Meggitt's several different corporate entities is not straightforward, and the Court cannot conclude that Defendants willfully misled the Court by using the term "Meggitt" in its Answer, rather than specifying which Meggitt entity in particular was involved in certain actions.

Nevertheless, the Court disagrees that the Answer "clearly delineates between actions taken by different Meggitt entities." Opp'n at 18. To the contrary, the Answer made it appear that Meggitt (Plaintiffs) products were defective and subject to recall. Defendants now concede that the Answer should be interpreted such that Plaintiffs' products were not implicated in potential product failures. Opp'n at 19. Further, Defendants concede it was Meggitt Xiamen that shut-down the air conditioning in its manufacturing facilities. *Id.* at 20. Therefore, Plaintiffs' actions and products were not directly implicated in the misconduct that was alleged.

Defendants may not use the unclean hands defense as a tunnel through which to introduce extraneous information about the misconduct of other corporate entities at trial. 6 McCarthy on Trademarks and Unfair Competition (4th ed. 2010) § 31:48 ("The unclean hands maxim is not a search warrant authorizing the defendant to probe into all the possible types of inequitable conduct ever engaged in by the plaintiff. Plaintiff's inequitable conduct is the basis for a valid defense only if it relates in some way to the subject matter in litigation."). Indeed, "misconduct in the abstract, unrelated to the claim which it is asserted as a defense, does not constitute unclean hands." *Campagnolo S.R.L. v. Full Speed Ahead, Inc.,* 258 F.R.D. 663, 665–66 (W.D.Wash.2009) (citing *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir.1963)). Therefore "equity requires that those seeking its protection shall have acted fairly and without fraud or deceit *as to the controversy in issue." Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985) (emphasis added).

Defendants now assert that Plaintiffs mere knowledge of purported bad acts by other entities within the corporate structure is sufficient to trigger the unclean hands defense. Opp'n at 18–19. This argument falls short. The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Pom Wonderful LLC v. Welch Foods, Inc.,* 737 F.Supp.2d 1105, 1109 (C.D.Cal.2010) (citing *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,* 890 F.2d 165, 173 (9th Cir.1989)). The purported knowledge of wrongdoing by other corporate entities is not related to the subject matter of the current controversy, the theft of Meggitt OC and Meggitt MD's trade secrets and Defendants' false advertising.[5] Thus, it is appropriate to strike the affirmative defense on this basis.

**\*15** The inconsistency in Defendants' positions involving the unclean hands defense is not lost on the Court. Defendants represented from September 2013 to June 2014 that it had none of Plaintiffs' documents. Defendants now are attempting to argue that Meggitt's (or its affiliates') bad acts substantially justified taking Meggitt documents (those documents that Defendants did not have). Nie's April 2014 Email makes it glaringly apparent that Nie knew in April 2014 that he was still in possession of Meggitt's information and nevertheless represented to the Court and to Meggitt that he did not. It is beyond credible that Nie had forgotten about taking a hard-drive containing several hundred thousand pages of documents when he originally responded to discovery requests. Given this gross inconsistency, misrepresentations to the Court, and willful violations of the Court's orders, the Court also strikes the affirmative defense on the independent grounds of failing to comply with the Court's orders to produce Meggitt documents. Fed. R. Civ. Proc. 37(b)(2)(A)(iii).

For the foregoing reasons, the Court STRIKES Defendants' fourth affirmative defense of unclean hands.

### IV. Disposition
For the reasons above, the Motion is GRANTED IN PART.

1) Monetary sanctions will be awarded for Defendants' violations of Court orders in the amount of Plaintiffs' attorneys' fees and costs incurred seeking compliance with (1) the Court's original order to produce Meggitt documents, between September 2013 and June 2014, and (2) the Court's

original order to produce technical documents regarding the CAYD053–50 product and the March order rejecting Defendants state secrets defense, between March 2014 and March 2015.

2) In order to determine the appropriate amount of monetary sanctions, by **April 29, 2015,** Plaintiffs should provide support for all expenses:

  a. to bring the motions to compel with regards to Meggitt documents prior to June 2014;

  b. to meet and confer regarding production of these documents;

  c. to bring the motions for sanctions; and

  d. incurred in any other attempts to obtain Meggitt documents in Defendants' possession prior to June 2014 and the CAYD053–50 technical documents since Magistrate Judge McCormick's March 21, 2014 ruling denying Defendants' state secrets defense.

3) Defendants may file a written response by **May 1, 2015.**

4) A hearing will be held on **May 4, 2015** at 8:30 a.m. to determine the final amount of the sanctions award.

5) The Court will consider an adverse inference instruction and/or evidentiary preclusion as to the withheld documents and the CAYD053–50 product, to be addressed during review of the motions in limine and forming the jury instructions.

6) The Court strikes Defendants' unclean hands defense.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1809354

## Footnotes

1   Meggitt OC, Meggitt Maryland, and Meggitt Xiamen are all indirectly owned subsidiaries of Meggitt PLC.
2   Defendants appealed (Dkt.45), and the injunction was affirmed (Dkt.197).
3   Nie attested that "In January 2012, one of Niell–Tech's accelerometer products, CAYD053–50, was classified as a military use product that involves the state secrets of the People's Republic of China ... From then on, Niell–Tech was required to strictly keep technical documents, including engineering drawings, R & D documents as well as other technical documents relating to CAYD053–50 as highly confidential as required by relevant laws and regulations of PRC concerning state secrets."
4   Plaintiffs' alternative "lesser" sanctions essentially get to the same result. *See* Proposed Order (Dkt.480–1).
5   Had the wrongdoing been committed directly by Plaintiffs this argument would be colorable, but farfetched, as explained in the Court's previous order (Dkt.458). Previously, Defendants argued that Meggitt's documents were retained in the event of a product failure. However, as noted by Plaintiffs, if the products at issue were not Plaintiffs' products, there can be no nexus between the retention of those documents and the purported fear of a product failure. The acknowledgement that Plaintiffs products were not implicated and that they took no direct action in either of the purported bad acts is a bridge too far. Thus, the Court finds it appropriate to strike the unclean hands defense.

**End of Document**                                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.