1          **UNITED STATES DISTRICT COURT**
          **FOR THE DISTRICT OF NEW JERSEY**
2

3  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬      CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS
4  LIABILITY LITIGATION          1:19-md-02875-RBK-JS

5  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬      STATUS CONFERENCE
                          (Via telephone)
6

       Tuesday, November 24, 2020
7      Commencing at 10 a.m.

8  B E F O R E:              THE HONORABLE ROBERT KUGLER,
                          UNITED STATES DISTRICT JUDGE
9                          THE HONORABLE  JOEL SCHNEIDER,
                          UNITED STATES MAGISTRATE JUDGE
10

A P P E A R A N C E S:
11

       MAZIE SLATER KATZ & FREEMAN, LLC
12     BY:  ADAM M. SLATER, ESQUIRE
       103 Eisenhower Parkway
13     Roseland, New Jersey 07068
       For the Plaintiff
14

       GOLOMB & HONIK PC
15     BY:  DAVID JOHN STANOCH, ESQUIRE
       1835 Market Street, Suite 2900
16     Philadelphia, Pennsylvania 19103
       For the Plaintiff
17

       LEVIN PAPANTONIO
18     BY:  DANIEL A. NIGH, ESQUIRE
       316 S. Baylen, Suite 600
19     Pensacola, Florida 32502
       For the Plaintiff
20

21

22        Karen Friedlander, Official Court Reporter
              friedlanderreporter@gmail.com
23                 (856) 756-0160

24        Proceedings recorded by mechanical stenography;
       transcript produced by computer-aided transcription.
25

```
 1   A P P E A R A N C E S: - CONTINUED

 2

 3       KANNER & WHITELEY LLC
         BY:  LAYNE HILTON, ESQUIRE
 4       701 Camp Street
         New Orleans, Louisiana 70130
 5       For the Plaintiff

 6       DUANE MORRIS LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
 7            BARBARA A. SCHWARTZ, ESQUIRE
         30 S. 17th Street
 8       Philadelphia, Pennsylvania 19103
         For the Defendant ZHP and the Joint Defense Group
 9
         GREENBERG TRAURIG LLP
10       BY:  VICTORIA LOCKHARD, ESQUIRE
              JEFFREY W. GREENE, ESQUIRE
11            STEVE HARKINS, ESQUIRE
         3333 Piedmont Road, NE, Suite 2500
12       Atlanta, Georgia 30305
         For the Defendants, Teva Pharmaceutical Industries Ltd.,
13       Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
         Pharma, Inc.
14
         CIPRIANI & WERNER, P.C.
15       BY:  JESSICA M. HEINZ, ESQUIRE
         450 Sentry Parkway, Suite 200
16       Blue Bell, PA  19422
         For the Defendant, Aurobindo Pharma USA, Inc., Aurolife
17       Pharma, LLC and Aurrobindo Pharma, Ltd.

18       HILL WALLACK, LLP
         BY:  NAKUL SHAH, ESQUIRE
19       21 Roszel Road
         Princeton, NJ 08543
20       For Defendant, Hetero

21       KIRKLAND & ELLIS LLP
         BY:  ALEXIA BRANCATO, ESQUIRE
22       601 Lexington Avenue
         New York, NY 10022
23       For Defendant, Torrent

24       PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
         BY:  JASON M. REEFER, ESQUIRE
25       38th Floor, One Oxford Centre
         Pittsburgh, PA  15219
         For Defendant, Mylan
```

```
 1              (ALL PARTIES VIA TELEPHONE, November 24, 2020,
 2    10:02 a.m.)
 3              JUDGE SCHNEIDER:  Good morning, everybody.  This is
 4    Judge Schneider.  How are you?
 5              RESPONSE:  Good morning, Your Honor.
 6              JUDGE KUGLER:  Good morning, it's Judge Kugler.  How
 7    is everybody?
 8              RESPONSE:  Good morning, Your Honor.
 9              JUDGE KUGLER:  Is Judge Schneider on yet?
10              JUDGE SCHNEIDER:  Good morning, Judge Kugler.  I
11    didn't tell the 53 people on the call yet that you may be
12    especially ornery today after the Eagles debacle on Sunday,
13    but now they know.
14              JUDGE KUGLER:  Although I didn't stay at a Holiday
15    Inn Express last night, today was free coffee Tuesday at the
16    Wawa convenient stores which are back here in the Northeast,
17    so I took advantage of that, so I'm in a really good mood
18    today.
19              (Laughter.)
20              JUDGE KUGLER:  So I hope everyone is well and I hope
21    everyone can have a joyous Thanksgiving.  I know times are
22    tough, and I know some of you and us have loved ones who have
23    been affected by this disease, and I know that many, many
24    states, including New Jersey, has severe restrictions on our
25    ability to be with family, but we do all have a lot to still
```

1    be thankful for.  There are a lot of people suffering and I

2    think we're in pretty good shape, all of us, so have a happy

3    Thanksgiving to all.

4         We are going to change things, the way we normally

5    conduct these phone conferences and I'm going to go first,

6    because there are some decisions that I'm going to make about

7    the future of this case, and thank you for your proposed case

8    management orders and your very thorough letters.

9         I know we got overnight from defense counsel this new

10   amended class action Complaint, and I think that Judge

11   Schneider will be dealing with that, and that issue that's

12   been raised that we really haven't confronted before now,

13   we've sort of taken a laissez-faire approach to these

14   amendments, but I think we need to have a more formalized

15   process in place, or we tend to get away from us.

16        Okay.  First thing I want to start with is an issue

17   once again raised and I'm not being critical here, trust me,

18   I'm not being critical at all, and this is in Ms. Cohen's

19   letter about personal jurisdiction.  You're not going to be

20   filing motions on personal jurisdiction at this time.

21        Let me make it clear once again, that I do not have

22   jurisdiction or authority to get -- conduct trials in any of

23   these cases that came from other states.  My authority, unless

24   the parties consent, is to try only those cases that were

25   originated and belong in the District of New Jersey, and

1    that's -- I mean, that's going to open up discussions about

2    trial dates in general.

3        When you get back to your jurisdictions from whence

4    you came, you can certainly raise these issues of personal

5    jurisdiction.  I thought we were very, very clear in entering

6    the direct file order that no one was waiving any objections

7    whatsoever to being in the District of New Jersey from the

8    standpoint of personal jurisdiction or venue.

9        So let's talk about trials generally.  I mean, you

10   all know that we've been shut down here in the District of New

11   Jersey since March and last I heard, like 25 districts of the

12   94 around the country in the last two weeks have shut down

13   again because of this COVID pandemic that's going on.

14       Our current plan in this district is that we were

15   going to begin in mid-January criminal trials involving single

16   defendants not in custody, just to start the process.

17       No plan whatsoever for civil trials.  I don't think

18   that's going to happen given what's going on back here in the

19   East with this pandemic.  I would be surprised if we actually

20   try any cases, civil cases and criminal cases this spring.  I

21   think it's more realistic to anticipate trials in the summer.

22       Now, having said that, I think there's a

23   misunderstanding among clients and the public about what's

24   going to happen in the courts when we do finally open up.

25   Let's all hope that's true, the news about these vaccinations

1   and that we can get them to millions of people by the end of

2   the year, early spring, and let's hope that everybody then

3   thinks that come summer, we can go about our business.  But

4   it's not going to be like the mall is reopening.

5           We're in the service business here in the courts but

6   we're not in the retail business here in the courts.  It's not

7   going to be like you can go to the mall in June and Macy's is

8   open like it used to be open, you buy what you want.  I don't

9   think people appreciate what's happened.

10          Since early March, when we essentially shut down

11   trials, because the government has continued to indict people.

12   Our federal grand jury here in Camden shut down for about two

13   months and resumed in June to late September, and then we just

14   impaneled a brand-new grand jury in early October.  So they've

15   been returning indictments.  Lawyers have been filing lawsuits

16   in all these months.

17          So let's assume we can start trials in the summer,

18   that's a 15-month period we've gone without any trials in the

19   courts.  That's an incredible backlog, particularly with the

20   criminal cases.  It's going to take us, in my opinion, years

21   to catch up to.  So I don't think anybody, and this is just

22   generally, not just for this case, should have any

23   expectations that, you know, we've been -- in New Jersey at

24   least, we've been putting off trials for three months at a

25   time and then three months and a trial that -- then when the

1    three months ends finally that, you know, you're next up on

2    the list and you're going to get your case tried.  Well, that

3    just isn't going to happen.  That's not going to happen

4    anywhere in the country.

5         We can talk about, you know, we can conceptualize in

6    the future trials and bellwether trials and I have some

7    feelings about bellwether trials, I'm not a big fan of them

8    but I accept them.

9         But just remember two things.  Number 1, the

10   COVID-induced backlog, and Number 2, this Court, me, I don't

11   have the ability to try anything over your opposition, unless

12   the case originated and belongs in the District of New Jersey.

13        So don't file any personal jurisdiction motions at

14   this time.  I appreciate that you want to, but I'm not going

15   to permit it.

16        Can we talk about the easy stuff first.  The orders

17   to show cause, because -- the fact sheet deficiencies.  This

18   is at Page 18 of Ms. Cohen's letter.  There are apparently two

19   people Chance Huey, H-U-E-Y, and Donald Stewart,

20   S-T-E-W-A-R-T, which apparently, you don't want to have

21   dismissed at this time, because you apparently are going to

22   resolve that, so you want those removed from the order to show

23   cause.

24        Do you want them carried to next month on the order

25   to show cause list, Ms. Cohen?

```
 1          MR. HARKINS:  Your Honor, this is Steve Harkins with

 2   Greenberg Traurig for the Teva defendants and the joint

 3   defense group.  We can remove them, we do not need to carry

 4   them forward.  To the extent that we're unable to resolve the

 5   issues, we will add them back to the next conference.  So they

 6   can be removed without carrying forward at this time.

 7          JUDGE KUGLER:  All right.  You got four others,

 8   Dorothy Battle, B-A-T-T-L-E; Louis Fisher, F-I-S-H-E-R;

 9   Theodore Keller, K-E-L-L-E-R; and Alcus, A-L-C-U-S, Gunter,

10   G-U-N-T-E-R.

11          Should they be dismissed?  Any objection?

12          MR. STANOCH:  Your Honor, this is David Stanoch for

13   plaintiffs, for the plaintiffs' group.  We've contacted the

14   counsel for those four plaintiffs' cases on multiple

15   occasions.  I understand that they're aware of it and if

16   they're not on this call now, I think you are correct, that

17   they would be dismissed at this time.

18          JUDGE KUGLER:  Anybody want to speak on behalf of any

19   of the four plaintiffs?

20          Apparently not.  They will be dismissed, those four.

21          We have now, nine.  This begins at Page 20 of the

22   letter.  Nine defendants.  You want to move to an order to

23   show cause, any changes to those nine?

24          MR. HARKINS:  Your Honor, for the defendants, those

25   nine are still pending, so unless there's -- plaintiffs'
```

1    counsel, we need to discuss them, we would request at this

2    time orders to show cause for each of those nine cases

3    returnable at the December case management conference.

4         JUDGE KUGLER:  Any objection from any plaintiff?

5         MR. STANOCH:  This is David Stanoch for plaintiffs.

6    No objection, Judge.

7         JUDGE KUGLER:  All right.  These nine.  James Suits,

8    S-U-I-T-S; Charleston Pittman, P-I-T-T-M-A-N; Dan Torghele,

9    T-O-R-G-H-E-L-E; Danny Tarhune, T-A-R-H-U-N-E; Durl, D-U-R-L,

10   Welch, W-E-L-C-H; Patrick Belcuore, B-E-L-C-U-O-R-E; Linda

11   White; Maria Noble, N-O-B-L-E; and Ralph Carmley,

12   C-A-R-M-L-E-Y.

13        They will be listed in an order to show cause why

14   they shouldn't be dismissed for the December meeting.

15        All right, then we have 13 cases.  This begins at

16   Page 27.  They've already been listed once.  You want to list

17   them a second time before we get to the order to show cause.

18   Any changes in those 13?

19        MR. HARKINS:  Again, no changes for defendants, Your

20   Honor.

21        JUDGE KUGLER:  Any plaintiffs have anything to say

22   about these 13?

23        MR. STANOCH:  David Stanoch for plaintiffs.  No, Your

24   Honor, we will continue to work with defendants in the

25   meantime on these remaining 13 in the meantime.

1    JUDGE KUGLER:  All right.  They would be Richard

2  Ramirez; Jacqueline McClennon, M-c-C-L-E-N-N-O-N; Flebia,

3  F-L-E-B-I-A, Hawkins; Evelyn Hardcastle, H-A-R-D-C-A-S-T-L-E;

4  Susan Bird, B-I-R-D; Kelly Smoot, S-M-O-O-T; Rebecca Paul,

5  P-A-U-L; Houchin, H-O-U-C-H-I-N, Troyce, T-R-O-Y-C-E; John

6  Cambron, C-A-M-B-R-O-N; Thomas Aikens, A-I-K-E-N-S; Sharon

7  Lomax, L-O-M-A-X; John Napolitano; and Betty Hebert,

8  H-E-B-E-R-T, that will be listed again in December.

9    And then on Page 34, we have ten who the defendants

10  would like to now list again.  Any objection or changes on

11  those ten?

12    MR. HARKINS:  No changes for defendants, Your Honor.

13    JUDGE KUGLER:  Any plaintiff want to speak behalf of

14  those?

15    MR. STANOCH:  David Stanoch for plaintiffs.  No, no

16  change.

17    JUDGE KUGLER:  All right.  They will then be relisted

18  in December.

19    William Lehr, L-E-H-R; Donna Locke, L-O-C-K-E; John

20  Schiano, S-C-H-I-A-N-O; Sonja, S-O-N-J-A, Newcombe,

21  N-E-W-C-O-M-B-E; Naomi Williams; Johnny Ware, W-A-R-E; James

22  Gibson; Lyrik, L-Y-R-I-K, Hightower; Fannie, F-A-N-N-I-E,

23  Walsh; and Euric, E-U-R-I-C, Thomas, will be listed again.

24    Okay.  There's also a list of state cases.  Can I

25  assume that you don't need the Court to intervene in any of

1   those state cases at the moment, or do you?  Anybody want to

2   speak on that?

3           MR. GOLDBERG:  Your Honor, this is Seth Goldberg for

4   the parties and the defendants.  I believe that is correct.  I

5   believe right now all of the state court cases are in such a

6   status as they do not need the Court's intervention at this

7   time.

8           JUDGE KUGLER:  Okay.  All right.  In the defendants'

9   proposed case management order, we suggest that they should be

10  able to file future dispositive motions.  Because there will

11  be no summary judgment motions filed without leave of the

12  Court.  Those need to be phased when we get to that stage,

13  which is down the road apiece.

14          Okay.  Let's -- before I get off the order to show

15  cause, we had a letter a couple of weeks ago from a lawyer, I

16  think, in Louisiana, who represents one of the plaintiffs

17  whose case had been dismissed at the order to show cause

18  stage, wanting to set aside and vacate that order.  Please

19  appreciate that we cannot do that by letters, otherwise you

20  lose track of these things.  So he was instructed to file a

21  formal motion.  So if you're in a position where you represent

22  or know someone who represents a plaintiff whose case has been

23  dismissed at the order to show cause stage, you need to file a

24  formal motion and follow the requirements of the rule, you

25  know, that demonstrate why you didn't timely do what you

1    needed to do and why we should set it aside.

2         So please remember that in the future.  We can't --

3    we can't do these things by informal letters just because it's

4    hard to show that everyone gets notice of these things and we

5    need to have a formalized process when we're setting aside

6    orders of the Court.

7         All right.  Let's get to this as to where we go now.

8    Where are we going with this thing?  I have read both letters,

9    both sides, and I think where we're going to go with this is

10   that we're going to set this thing up for general causation,

11   expert reports, to be served such that come early fall, we can

12   have hearings, *Daubert* hearings on general causation issues.

13        I'm also, as I had indicated in prior discussions

14   with counsel, want to start discovery on all of the issues, on

15   all of the tracks in this case, which means class

16   certification issues and all those kinds of things, we need to

17   start cranking up.

18        I do agree with defense counsel that I'm not going to

19   decide class certification until after the *Daubert* decisions

20   are made, because if -- if the defendants are correct and if

21   the plaintiffs cannot demonstrate general causation, then

22   there's really no purpose in class action.  But you're going

23   to be doing discovery on those issues of class certification,

24   so that if the plaintiffs' experts survive the *Daubert*, then

25   we can move immediately into class certification motions and

 1    decide those motions at that time.

 2            I understand that Rule 23 says for class actions,

 3    that the Court should at an early practical time decide class

 4    certification, but it's not practicable in this kind of a case

 5    at this time.  It's a class certification issue.

 6            We'll do that in due course after we have a full

 7    airing of the general causation issues.

 8            Now, looking at the schedule proposed by counsel,

 9    this is Paragraph Roman Numeral III of case management

10    schedule of the defendants' proposed case management order

11    that has the deadlines.  It gives the plaintiffs until Monday,

12    Monday, to disclose the types of cancer for which they will

13    provide expert reports.

14            I think that's a little -- just a little aggressive,

15    folks.  I think the plaintiffs -- I do agree the plaintiffs

16    need to start delineating very soon the cancers which they

17    believe were caused by these -- well, impurities or

18    contaminants, I guess it depends on which side if you're

19    sitting in the case, but these substances.  We need an

20    identification of where the plaintiffs think this is going to

21    go.

22            But I think next week is just too soon and I would

23    propose and I suggest and I think it would be fair, required

24    by the end of the year, the plaintiffs to disclose what

25    cancers they expect, anticipate that they'll be able to show

1    were caused by these products.

2            Just so that the plaintiffs -- I mean, that the

3    defendants can start figuring out who's doing what and who

4    wants what.

5            So I think it's really more appropriate -- I don't

6    have any problem with the April 1st suggestion that completing

7    fact discovery on the issues related to general causation.  I

8    don't know that it's possible to also serve all the

9    plaintiffs' expert reports on general causation at the same

10   time.

11           They may need to take into account what is discovered

12   in order to express their expert opinions, so I think May 1st

13   is probably a better date for the plaintiffs' expert reports

14   on general causation accompanied by proposed dates of

15   deposition for the plaintiffs' experts.

16           And then, I think, I think a month should be enough,

17   the month of May, to complete the plaintiffs' expert

18   depositions on causation and to also put defendants' expert

19   reports on causation.  And again, a list of dates on each

20   expert report -- each expert, I'm sorry, is available for

21   deposition, and then we can complete the expert depositions by

22   the end of July, file the *Daubert* motions by the end of

23   August.  I'm not sure you'd need five weeks for a reply on

24   that, so I would suggest that perhaps November 1st for any

25   replies is sufficient on the *Daubert* motions, and then I'll

 1   set hearings as soon as we get those papers on *Daubert* motion

 2   at that time.

 3        We should begin the class certification discovery.

 4   Maybe -- anticipating that Judge Schneider will be talking to

 5   you about that amended class action Complaint and what that

 6   does is affect the schedule, but he can deal with that.

 7        Bellwether trials.  Bellwether selection process.  I

 8   agree with defendants that they should suggest 20 potential

 9   plaintiffs so you have a total of 40 plaintiffs, which you're

10   taking discovery on for the personal injury cases.  Where that

11   leads, I don't know yet.  It would certainly be preferable if

12   we're going to do bellwether trials to choose the trials from

13   that 40, but my experience with that has not been satisfactory

14   because you end up with a lot of cases getting dismissed when

15   they're listed for trial.

16        So what I -- what I will do is, I will make random

17   selections if we get to that stage of bellwether trial for

18   that.

19        All right.  Does anybody have any questions now about

20   where we're going with this thing?  We'll start with the

21   plaintiffs.  Who wants to speak for the plaintiffs?

22        MR. SLATER:  Hello, Your Honor, it's Adam Slater, how

23   are you?

24        JUDGE KUGLER:  I'm fine, Mr. Slater, how are you

25   doing?

```
 1        MR. SLATER:  I don't want to step on anyone's toes.
 2   I just have a couple of questions on the schedule dates just
 3   to clarify a couple things and then I'll let any of my
 4   colleagues who want to jump in do so.  We're certainly not
 5   going to reargue anything you've said.
 6        The deadlines that you set, I just want to make sure
 7   that we're clear.  The May 1st deadline we understand is to
 8   serve plaintiffs' reports and get the plaintiffs' experts
 9   deposed in May.  Please tell me if I understood correctly,
10   that the defense experts' reports will then be served -- I
11   wasn't sure if you were saying the beginning of June or the
12   beginning of July, with them to be deposed in July?  I just
13   want to make sure we know that deadline.
14        JUDGE KUGLER:  June 1st for defense experts with
15   dates that the defense experts are available for depositions.
16        MR. SLATER:  And I was going to suggest, Your Honor,
17   just -- because obviously, we have an interest in moving
18   things along as well as we can, would it make sense, because
19   you had said July, would it make sense to depose the defense
20   experts by the end of June, that way we can get our *Daubert*
21   motions to the Court.  I think you said by August, that's
22   fine, by the beginning of August, and then the next question
23   was, you said replies on *Daubert* by the end of November.  I
24   would suggest that we, from the plaintiffs' perspective,
25   certainly don't -- will not need that much time.  If the
```

1  motions are served at the beginning of August, or even at the

2  end of August, I don't think we'll need till the end of

3  November to reply to that.

4          So if you would like to push things forward a little

5  bit, I think that there's some room to work us forward a

6  little bit or back as the case may be.

7          JUDGE KUGLER:  All right.  So what you're suggesting

8  is, the depositions of the defendants' *Daubert* experts -- not

9  *Daubert* experts, but you know what I mean, be done in June.

10  So by July 1, we'll complete the defendants' expert

11  depositions, correct?  Is that what you're saying, Mr. Slater?

12          MR. SLATER:  Yes, Your Honor.

13          JUDGE KUGLER:  All right.  I don't have any problem

14  with that.  Let's see if we can do that.

15          MS. LOCKARD:  If I may, it's Victoria Lockard from

16  Greenberg Traurig and on behalf of defendants.  We just need

17  to make sure we build in enough time to -- you know, we will

18  need to take the deposition of plaintiffs' causation expert,

19  and then we'll need time to get the transcripts, get those to

20  our experts, and -- so I just want to make sure we have, you

21  know, a good 60 days between when we get their expert report

22  and are obligated to then produce our expert reports with

23  dates of deposition.

24          I don't think we can turn that around in 30 days.

25          JUDGE KUGLER:  Well, I think you can.  Why don't you

```
 1   give it a try, we'll see how it goes.  Just try to turn that
 2   around in 30 days and then -- but we'll keep the -- I think
 3   you're right, the proposal in the defendants' case management
 4   order has the replies not till November 11th.  I don't think
 5   you need that much time to do that.
 6           MR. SLATER:  I can tell you from our perspective,
 7   Your Honor, unless somebody wants to, on our side, quiet me
 8   down, I would think 45 days would be more than enough time to
 9   respond to the Daubert motions, and we'll of course be filing
10   affirmative motions against defense experts as well, so it
11   will be -- I assume contemporaneous.
12           JUDGE KUGLER:  Yeah.  Both sides by August 30th have
13   to file the Daubert motions.  And then has October 7th for
14   opposition, and then can you -- and I was suggesting
15   November 1st granting replies.  That will give you three
16   weeks.  After the oppositions to reply to the other side's
17   opposition.  Okay?
18           MR. SLATER:  That's great, Your Honor, thank you very
19   much.
20           MS. LOCKARD:  We can live with it.
21           JUDGE KUGLER:  Set that up and we'll get hearings and
22   that, you know, I'm confident that we will have the courthouse
23   open at that time and I contemplate that those hearings are
24   going to take a week or two, and it's generally been my
25   practice on a Daubert challenge to permit the expert to
```

1   testify.  Perhaps you want the experts to testify, the other

2   side's expert to be further cross-examined, but, you know, we

3   can set all that up and decide how to do that.

4        Okay.  Any other questions about where we're going

5   with that?

6        MR. NIGH:  Your Honor, this is Daniel Nigh.  For the

7   bellwether cases, we actually didn't contemplate when we

8   picked 20 cases that those were purely for plaintiffs'

9   bellwether techs.  So if we're going to do a bellwether plan,

10   we would just ask the planners to pick 20 bellwether -- just

11   like defendants are picking 20 bellwether picks.

12        Those 20 cases we picked were solely for the purpose

13   of getting completed DFSs and we picked them more to make sure

14   that we had coverage across the scope of defendants as opposed

15   to just picking our best 20 bellwether plaintiff picks.  So if

16   we're going to do that, we would prefer to at least have our

17   chance of picking fresh bellwether picks.

18        JUDGE KUGLER:  That's fine.  When can you have that

19   done?

20        MR. NIGH:  I think we can get it done -- I think the

21   defendants are going to be on the same page and we would

22   probably exchange bellwether picks at the same time, I think

23   we can get it done in 30 days.

24        JUDGE KUGLER:  Okay.  30 days, both sides.

25        MS. LOCKARD:  Your Honor, and we can discuss this,

1   but, you know, just to be clear for the record, that now means

2   that we, on the defense side, will have to initiate the

3   defendant fact sheet process for another plus 40 plaintiffs,

4   and the entire process of that takes months because it is a

5   waterfall production of defendant fact sheet, you know, based

6   on the supply chain, the distribution chain.

7         So, you know, that is problematic and somewhat --

8   somewhat, we have put in all of this work for the initial 20

9   defense fact sheet picks.  We've started working them up on

10   the defense side, you know, we've started producing and

11   pulling together the defendant fact sheet information and that

12   now will essentially be all for nothing, if we're going to

13   cast those aside and start with, you know, a fresh new pick of

14   20 from the plaintiffs.

15         JUDGE KUGLER:  What's the status of the 20 you

16   already have?  Have you completed the defendant fact sheet

17   process?

18         MS. LOCKARD:  We have not completed, and I believe

19   someone can correct me, but I think that we would be scheduled

20   to finalize the last defendant fact sheet in February, if

21   that's correct.

22         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

23   Just to provide a little color in case Your Honor is not

24   aware.  Each of the levels of the supply chain for the

25   defendants have to provide responses to a defendant fact sheet

1   for each of the plaintiffs, and so all of the retailers have

2   been providing defendant fact sheets for those initial 20,

3   which took -- I think they were provided 60 to 90 days, I

4   forget the exact date, I think it might be 90 days, and then

5   that goes up to the wholesalers, because the wholesalers can't

6   complete their defendant fact sheets without information from

7   the retailer fact sheets.  They get 90 days and then that goes

8   up to the finished dose manufacturers, who need the

9   information from the downstream defendants and then to the API

10  manufacturers.

11       We had been proceeding on the notion that those

12  initial 20 selected by plaintiffs would go through the

13  defendant fact sheet process, which should be completed

14  somewhere around February/March.  It depends really on when

15  the plaintiffs file their plaintiff fact sheets, we think.  So

16  we should have that process completed in large part in

17  February/March, adding the 20 plaintiffs that defendants

18  propose would obviously result in the additional work for

19  those defendant fact sheets, but adding 20 more on top, you

20  know, which would require a significant amount of time in

21  terms of discovery from the defendant.

22       MR. NIGH:  Your Honor, this is Daniel Nigh.  My one

23  response to that would be if we -- you know, for the first

24  time, we've been given a proposal from the defendants on

25  bellwethers and we weren't asked to discuss bellwethers in

1    terms of scheduling, but if they want to, in terms of the

2    timing, they're going to be asking for fresh picks right now.

3           So in terms of the clock, I don't see the fact of us,

4    you know, simultaneously exchanging picks would extend the

5    clock at all, because they're going to have to do all that DFS

6    on their picks anyway.  It was never plaintiff bellwether

7    picks.  It was picks to do discovery on, and we did it from a

8    cross section of different defendants.

9           So that wasn't our intention but to the extent that

10   they're worried about the level of work and we haven't had any

11   of this discussion, but we could -- if that happened, 20 and

12   20, I mean, 40 is a very large pool, we could have a smaller

13   pool, we can do 15 and 15.  That type of thing would be fine

14   with us, this idea of those being plaintiff picks, and now

15   they get to do fresh defendant picks, to me, I would just ask

16   that we be able to do, if we're doing this for the purpose of

17   bellwether, we'd be able to have bellwether picks.

18          MS. LOCKARD:  And just to correct, for the record, we

19   submitted to the Court and the plaintiff, at the end of

20   September, our proposed case management schedule.  We

21   resubmitted this schedule with some adjustment on October 30th

22   and then we heard back from plaintiff on this, just a couple

23   of weeks ago.

24          So, you know, I take issue with this suggestion that

25   this is the first time we've raised that, you know, we've

1    raised this and we've tried to have this discussion a few

2    times, and plaintiffs have not wanted to deal with the

3    personal injury plaintiff selection or workup, and so they've

4    continued to push it to the back burner.

5         Now, in terms of the numbers, we would need to -- you

6    know, we need to discuss this I think among the defense, that,

7    you know, from my perspective and from Teva's, you know, I

8    think we would be fine with some fewer number than 20, you

9    know, maybe 15, you know, maybe even we could go down to 12.

10   But, you know, I don't have any authority from the other

11   defendants to agree to that just yet.

12        That may be something we can meet and confer with the

13   plaintiff on if the Court's inclined to allow them to go back

14   to the bell and pick new plaintiffs.

15        If that happens, however, then I think it's fair that

16   we take -- you know, we, you know, we continue the deadlines

17   for the previous 20, so that we're not having to work up 20

18   plaintiff cases that aren't even in the bellwether pool for

19   selection.  I don't understand why plaintiff would pick 20

20   cases that they wouldn't anticipate being, you know, the

21   bellwethers or at least the focused cases that -- if that is

22   what it is, then at this point, you know, I don't understand.

23   It seems that they don't need to provide discovery on cases

24   that aren't even going to be in the bellwether pool.

25        We need to be working up the real cases so that we

 1  can have some sense of what a trial would look like and be in

 2  a position, you know, to discuss these with any settlement

 3  master that is being selected.

 4          So, you know, if we're starting over, then we need to

 5  put the others aside.

 6          JUDGE KUGLER:  Well, this is Judge Kugler.  I think

 7  that's an excellent suggestion.  I think we ought to have the

 8  opportunity to discuss this with plaintiffs' counsel and with

 9  the rest of the defendants.

10          But I do think it's a really good idea to limit the

11  numbers, and I also think it's a good idea that -- not just

12  abandon the ones that you've already done all the work on.

13          So why don't you talk about that with each other in

14  the next month, and then in the December meetings, we can

15  perhaps -- well, perhaps, you can agree on when and how many

16  to make these disclosures and we'll go from there, since, you

17  know, we're not going to try these cases for quite awhile

18  anyway.

19          All right.  I want to talk about the special master

20  at this time.  Unless there's anything else that counsel want

21  me to address.  Is there anything else before I get to this

22  issue of special masters that you'd like to address?

23          MR. GOLDBERG:  Nothing from defendant.

24          JUDGE KUGLER:  That's Mr. Goldberg, correct?

25          MR. GOLDBERG:  Correct, Your Honor.

```
 1            JUDGE KUGLER:  All right.  I'm going to ask Judge

 2   Schneider to hang up at this time and we'll get him back when

 3   it's appropriate.

 4            JUDGE SCHNEIDER:  Okay.  Just send me a text and I'll

 5   call back in.

 6            JUDGE KUGLER:  Okay.  No problem.

 7            (Judge Schneider leaves the call.)

 8            JUDGE KUGLER:  This is a process that has been going

 9   on for many, many months.  We discussed this even back before

10   we closed the courts down, and back in our -- back when we

11   were able to have informal off-the-record discussions, it's an

12   issue that I raised with counsel, and since that time, I've

13   gotten some letters from both sides and then because I agreed

14   to tee this up for today, I got letters from both sides about

15   this issue of special master.

16            The plaintiff doesn't seem to object to the idea, but

17   I'll give them an opportunity to speak, but defendant does

18   seem to object to the idea.  Who is going to speak on behalf

19   of the defendants?

20            MR. GOLDBERG:  Your Honor, this is Seth Goldberg for

21   the defendants.

22            JUDGE KUGLER:  All right.  Mr. Goldberg, you're a

23   little garbled in your phone there.

24            MR. GOLDBERG:  I'm sorry.  Is that any better?

25            JUDGE KUGLER:  Yeah.  Seems to be a little better.
```

 1   Thank you.  So what do you want to say?

 2          MR. GOLDBERG:  Well, Your Honor, as we've discussed

 3   previously, in defendants' view, there is no need at this time

 4   to appoint a special master to assist the Court in this

 5   matter, and, you know, we can point to Judge Schneider's

 6   management of the discovery in this case as the best example,

 7   and we can also look at where this case is headed as Your

 8   Honor has already, you know, today set a schedule for general

 9   causation that really is beginning a new phase of this case.

10          Judge Schneider to this point, in his role as a

11   magistrate has cleared out virtually all of the preliminary

12   pleading issues, such as the short-form Complaints, the Master

13   Complaints and has cleared out all of the written discovery,

14   or least put the parties on a path to complete written

15   discovery.

16          The manufacturer defendants are completing their

17   document productions this week, the wholesaler and retailer

18   defendants, the downstream defendants, I think are completing

19   their document productions.  The Court has established a

20   process for plaintiff fact sheets, for defendant fact sheets,

21   as Your Honor just heard.  The parties are working through

22   those, so disputes as to all of these issues have really been

23   resolved by Judge Schneider in terms of what would be required

24   with respect to the scope of discovery.

25          Of course, Judge Schneider will hear some more of

1   that -- those kinds of issues over the next few weeks.

2          But what it really shows is that this case is

3   manageable by the Court, by Your Honor with the assistance of

4   a magistrate judge.  This is not the kind of case where the

5   parties have, you know, knock down, drag them out disputes

6   that are overburdening the Court.  We've been able to resolve

7   most things by agreement, or by routine discovery motions to

8   this point.

9          Going forward, the case is really headed into a

10  different phase.  We are now going to get into fact

11  depositions with respect to the defendant employees and the

12  cross-representatives and now per your order today, the

13  personal injury plaintiffs, and so, we're really headed into a

14  place where the disputes are about discovery, will be of a

15  different nature than what Judge Schneider has presided over

16  to this point.

17         So in defendants' view, there does not seem to be the

18  kind of exceptional condition that warrants the appointment of

19  a special master, nor does there seem to be and I --

20  notwithstanding COVID, because Judge Williams has been

21  assigned, nor does there seem to be the lack of an

22  availability of the magistrate judge to assist Your Honor in

23  these proceedings.

24         And it's worth noting, Your Honor, that when you read

25  plaintiffs' letter, well, they are open to the suggestion of a

 1   special master, but they have not identified to the Court, nor

 2   could they, is a compelling need for a special master, and

 3   that's really what is required, is a compelling need to impose

 4   upon the parties the cost and the potential delay in these

 5   proceedings of a special master.

 6          So for those reasons, we don't think a special master

 7   is warranted at this time.

 8          JUDGE KUGLER:  Who wants to speak for the plaintiffs?

 9          MR. SLATER:  Hello, Your Honor, it's Adam Slater.

10          Your Honor, this is obviously a decision that is well

11   within the Court's discretion, and our letter was written with

12   that in mind as well as with a complete understanding of what

13   Your Honor has communicated to us during discussions over the

14   course of this year.

15          There's no doubt from what Your Honor has been

16   telling us and what Your Honor reiterated today that there is

17   a compelling need for us to have the type of support that a

18   special master can provide.  What Your Honor described a

19   little earlier in this conference regarding the criminal

20   backlog in these courts is a scary situation, and those of us

21   who practice in New Jersey understand the load that a

22   magistrate carries for a heavy criminal docket.  So that's

23   something that we are closely aware of.

24          We do not agree that the case is now on some sort of

25   a smooth track without any foreseeable difficulties.  In fact,

1    the preliminaries in this case have been incredibly complex

2    and we are now transitioning into the most complex phase of

3    the case when we're actually going to start taking the

4    critical depositions around the world in order to establish

5    the factual record for the types of issues that are going to

6    be addressed over the course of the next year or so, per Your

7    Honor's case management order.

8          We certainly believe that, you know, the way that

9    Judge Schneider has handled this litigation has probably, and

10   I'll put this in quotes, "spoiled" the litigants on both sides

11   and allowed the litigants to fall into a sense of complacency.

12         Judge Schneider has spent an incredible amount of

13   time focused on this litigation, his level of availability is

14   unprecedented.  The level of work that he puts into this is

15   unprecedented; the conference calls on the weekend, the

16   e-mails at night, the messages from him giving us guidance on

17   upcoming conferences is not something any litigant would ever

18   be conditioned to expect from a magistrate judge in the State

19   of New Jersey in light of the immense caseloads that they

20   carry, aside from the situation we're now facing with COVID.

21         When you look at the entire landscape, the thing that

22   we emphasized in our brief is continuity and Judge Schneider

23   has a level of what we will call institutional knowledge about

24   this litigation which cannot be replicated.  Judge Donio and

25   Judge Williams and I guess Judge Williams is the assigned

1  magistrate, technically, are wonderful judges.  Judge Williams

2  is a tremendous judge, but there's only so much that one

3  person can absorb.

4          Judge Schneider has been absorbing this for years.

5  Just look at the issues we're going to argue today, the level

6  of granular complexity in just deciding 30(b)(6) topics and

7  how they're to be phrased, et cetera.  So the plaintiffs

8  interested in keeping this litigation moving and being able to

9  get to a point where we can -- get to a point where we can get

10  class certification done, where we can get to trials piece by

11  piece of this litigation and eventually bring things to a

12  head.  And whether Judge Schneider were to be put in as a

13  special master for all issues, or for a segment of the issues

14  which he and the magistrate could then work out between

15  themselves and give us that constant access, we believe that

16  would be a tremendous benefit to this litigation.

17          So unless there's any questions, I think that's the

18  plaintiffs' position, Your Honor.

19          JUDGE KUGLER:  I don't have any questions.  Thank

20  you.

21          Mr. Goldberg, did you want to respond in any way?

22          MR. GOLDBERG:  No, Your Honor, except on the very

23  last point, and to note in our letter to Your Honor.  If Your

24  Honor is inclined to appoint Judge Schneider as the special

25  master and again, we don't -- we don't think that any special

 1  master is necessary, then the way to achieve the continuity

 2  that Mr. Slater mentioned would be to have Judge Schneider

 3  preside over the issues he's been presiding over, which would

 4  be the written discovery issues, issues pertaining to the fact

 5  depositions, but that new issues, issues pertaining to general

 6  causation and *Daubert* and class certification would be

 7  allocated to Judge Williams, as those are really things that

 8  Judge Williams can pick out, as both judges would be picking

 9  those up for the first time, and in that way, Your Honor could

10  achieve the continuity now minimizing the burden on the

11  parties, including the cost burden and the time delay of

12  having things routed through a special master.

13       JUDGE KUGLER:  Okay.  Thank you for your briefing on

14  this matter and thank you for what you've said.  They're very

15  cogent comments on both sides.

16       But I think the balance certainly favors appointment

17  of a special master.  As we all know, this has come to a head

18  because of the impending retirement of Judge Schneider from

19  this.  One needs to look at Rule 53(a)(1)(c) which sets the

20  standard.  The Court can appoint a special master only to

21  address pretrial matters that cannot be effectively and timely

22  addressed by an available district judge or magistrate judge.

23       This is one of the most complex cases currently

24  pending in the United States, there's three different drugs,

25  and we haven't really gotten into the other two drugs yet.

 1   There's all kind of different classes of complaints, you've

 2   got the personal injuries, you've got the class action medical

 3   monitoring, you've got third-party payor class actions, et

 4   cetera.

 5          Should the medical monitoring class action be

 6   certified, claims can be in the millions of people.  There's

 7   dozens of defendants, there's all kinds of wires of the

 8   distribution chain that we're going through, trying to figure

 9   out who's who.  And although it's not necessarily reflected in

10   the orders entered by the Court, Judge Schneider has decided

11   hundreds of issues.

12          Now as to availability, we have two other current

13   magistrate judges in Camden who are simply swamped with work.

14   We're in a district, as many of you know, that's been in a

15   judicial emergency status for years now.  While we expect a

16   new magistrate judge to come on soon after Judge Schneider's

17   retirement, that person has spent his entire career as a

18   prosecutor, has never handled a civil case.  We can't exactly

19   ask him to step into the breach.

20          Now the Judicial Conference of the United States has

21   authorized a fourth magistrate judge position in Camden, but

22   we don't expect to be able to fill that under the budget

23   requirements until sometime late in the spring.  So that won't

24   do us much good, whoever that new person is.

25          Now perhaps the recent election will change things

1   and we'll get some of our six vacancies filled, but who knows.

2   And even if that logjam, whatever the reasons, there's this

3   logjam in filling seats in New Jersey, let's assume that that

4   gets solved somehow, it's still probably going to take a year

5   before we have new district judges.

6           I think many of you know that I have an enormous

7   docket of criminal cases, I have 90 defendants awaiting trial,

8   many of them are complex trials that are going to take months

9   to try, many others are going to take weeks to try.  I have

10  over 800 pending civil cases, and frankly, I'm informing civil

11  litigants that I will not be reaching their trials this year,

12  next year, or probably not the year after.

13          So clearly, we have no available district or

14  magistrate judges and clearly, this COVID pandemic has made

15  matters much worse.

16          Defendant relies on a number of cases, but they're

17  not helpful.  They cite the *La Buy*, L-A-B-U-Y, Supreme Court

18  case from 1957, but that was a referral to a special master

19  for trial of two antitrust matters and that case was decided

20  over a decade before Congress passed the Multidistrict

21  Litigation Act which eventually led to the creation of the

22  JPMDL, and that case was decided over 40 years before the

23  extensive 2003 amendment of Rule 53, which the commentary says

24  that Rule 53 is revised extensively to reflect changing

25  practices in using masters.

1          From the beginning, in 1938, Rule 53 focused

2    primarily on special masters who performed trial function.

3    Since then, however, Courts have gained experience with

4    masters appointed to perform a variety of pretrial and

5    post-trial function.  And further, the commentary says the

6    employment of masters to participate in pretrial proceedings

7    has developed extensively over the past two decades as some

8    district courts have felt the need for additional help in

9    managing complex litigation.

10         That was written almost 20 years ago.  I think it's

11   important to remember how Rule 53 amendment came about, and

12   this is how rules get amended and happen.  The Judicial

13   Conference of the United States is the governing body of the

14   United States Judiciary.  It's composed of a chief judge in

15   each circuit and a district judge from each circuit, the Chief

16   Justice of the United States is the chair who rarely votes,

17   and the Judicial Conference has committees which advise it, as

18   such things as the budget and personnel and rules, and there

19   is a committee on the rule, including one on the civil and one

20   on criminal, one on bankruptcy, et cetera, and the rules

21   committees are made up mostly of judges, but they also have

22   some academics and lawyers, and after public hearings, the

23   committee then proposes a new rule or a rule change to the

24   Judicial Conference which then votes whether to approve it or

25   not.

1       If approved, it goes to the United States Supreme

2  Court and they are rare, and on occasion, some justices have

3  objected to some rule changes, the Supreme Court then decides

4  whether to approve the rule, and if they do, then it goes to

5  Congress, the Chief Justice sends it to Congress, Congress has

6  180 days to reject it.  If they remain silent, the rule or

7  amendment goes into effect.

8       So the 2003 amendments to Rule 53, which noted the

9  change in practice, from the days when we just had special

10  masters performing trial functions, to now where we have

11  special masters doing the job, is clearly approved by the

12  Supreme Court.

13       Defendants also rely heavily on *Prudential Insurance*

14  *Company versus U.S. Gypsum,* which is a 1993 Third Circuit

15  case.  That was not an MDL case and again, it was a full

16  decade before the complete rewrite of Rule 53, and it came at

17  a time when I think that we believed and certainly the

18  Judicial Conference believed, that expansion of magistrate

19  judge system in the United States would be able to cure the

20  then critical congestion in the courts.  In that case, the

21  *Prudential* case, the referral to a special master came after

22  five years of discovery, and it directed the special master to

23  rule on contested dispositive motions.

24       I have no intention of having a master in this case

25  rule on any dispositive motion.

1         The case the defendants don't cite is *Glover*,

2   G-L-O-V-E-R, *versus Wells Fargo Home Mortgage*, which appears

3   at 629 Federal Appendix 331, Third Circuit case from 2015, and

4   certain was denied by the Supreme Court in 2016.  And though

5   it's not precedential, it is instructive, and that was a class

6   action case raising four closure-related issues.  It was

7   nowhere near as complex as our case.

8         And in that case, after only 21 discovery-related

9   motions, which such -- described as aggressive motion

10  practice, how quaint, the magistrate judge on the case

11  appointed a special master to continue the discovery issues.

12  The Circuit noted the apparent change by 2015 in the process

13  of appointing special masters and noting that that Supreme

14  Court case *La Buy* was decided long before the change in

15  Rule 53.  Therefore, the Third Circuit approved the

16  appointment of a special master for discovery-related issues.

17        I think Judge Sleet, District of Delaware, got it

18  right in the *Joint Stock Society* case, which is reported at

19  104 F. Supp. 2d 390, District of Delaware, 20 years ago, even

20  way back then before the Rule 53 amendment.

21        Before that, the critical concerning cases wherein

22  issues referred to a special master over the objection of one

23  of the parties, is whether the district judge has

24  impermissibly abdicated his or her constitutional powers by

25  authorizing the master who lacks the distinct attributes of

1    Article 3 status can make dispositive rulings which determine

2    the fundamental light or interest of the parties.

3         We don't have that situation here.  Masters are not

4    going to be exercising Article 3 rights.

5         Now, JPMDL doesn't break out the statistics and there

6    is some talk in your letters about the statistics.  The clerk

7    of the court was able to identify for us 12 other MDL cases

8    they felt were less complex than this one, and in which one or

9    more special masters has been appointed.

10        And there's 2738, the *Talcum Powder* case.  Although

11   there's over 20,000 cases, there's only one defendant and one

12   product.

13        2820, the *Dicamba*, D-I-C-A-M-B-A, *Herbicide* case,

14   there's less than 50 cases.

15        2824, the *Gold King Mine* case, there were only six

16   actions in that case and the special master there is a formal

17   magistrate judge.

18        2841, the *Monat,* M-O-N-A-T, *Hair Care Products* case,

19   there's one defendant, 13 cases.

20        2850, *Wear White Industries Employee Antitrust,* now

21   closed, but there were 13 cases, three defendant groups.

22        2879, the *Marriott Customer Data Breach* case, there

23   were 90 actions, only one principal defendant.

24        2914, *ERMI LLC* patent litigation, that was all about

25   one patent, 12 different lawsuits, again, special master is

 1    appointed.

 2          2656, *Domestic Airline Travel Antitrust* case, 100

 3    cases, conspiracy to fix prices by direct purchasers.

 4          2599, *Takata,* T-A-K-A-T-A, *Air Bag*, 350 total cases,

 5    economic loss of personal injury.

 6          2333, the *Lipitor Antitrust* case, there's 34 total

 7    actions, and that was an action by direct purchasers and

 8    third-party payers in the patent case.

 9          2311, the *Automotive Parts Antitrust.*  There's 370

10    actions and plaintiffs were end payers, direct purchasers,

11    dealerships, original equipment manufacturers and even states.

12          2151, the *Toyota Unintended Acceleration* cases, 450

13    total cases, one defendant.  There were economic loss class

14    actions and personal injury cases.

15          They also supply us a number of cases, about 20, in

16    which there's been more than one special master in 20.

17          So I think it's fair to characterize this as one of

18    the most complex MDLs currently pending in the United States.

19    I think it's very clear that we do not have the ability to

20    effectively and timely address pretrial matters in this case.

21          Defendants also raised the issue of cost, and again,

22    Rule 53 (a)(3) and 53(g) required that I look at the issue of

23    cost and the fairness of imposing the likely expenses on the

24    parties, that I must protect against unreasonable expense or

25    delay.  I'm not -- I have not seen what the like could

 1  possibly be, as to unreasonable expenses, you know, the

 2  defendants cite an hourly rate that they think they'll have to

 3  pay, but there's no perspective and no context.

 4       For example, none of the defendants are willing to

 5  tell me how much collectively they've charged their clients

 6  thus far in this case.  I bet it's in the millions of dollars.

 7  None of the defendants have indicated to me what their budgets

 8  are.  I'm quite confident that these corporate defendants

 9  required counsel to submit a budget with an estimated cost in

10  the future, based on my experience in these cases, and, you

11  know, I do pay attention to these MDL cases around the

12  country.

13       I anticipate the collective defense costs in this

14  case will exceed, by the end, $100 million.  So when you take

15  that into consideration and when you see the perspective of

16  what it costs for special masters, it's miniscule.

17       And it goes without saying that some of these

18  defendants are some of the largest corporations in the world

19  with billions of dollars in annual profits.

20       So I don't think raising the issue of cost is helpful

21  whatsoever.

22       I will take the defendants' suggestion that we'll

23  allocate these costs of special masters 50/50, between the

24  plaintiffs' side and the defense side.

25       How you reallocate that among your various people is

1    up to you to figure out in the first instance, and, of course,

2    you know, I can resolve any of those.

3          Now, as I have stated in the past, I think we should

4    have separate special masters for the settlement part of this.

5    And I have given defense counsel till November 30th to suggest

6    names, and I will do that also regarding a special master for

7    discovery purposes.  I'll give you till November 30th, and

8    trust me, folks, I know Thursday is Thanksgiving this week, I

9    get it, but these are the dates that you asked for.  I mean,

10   this is an issue we've been kicking around for many, many

11   months.

12         So by November 30th, as to the discovery special

13   master, you can suggest names.  If you can both sides agree on

14   Judge Schneider, that's great, but I'm not telling you you

15   have to or don't have to.  That's your choice.  If you can't

16   agree on Judge Schneider as the discovery special master,

17   well, then, I'll find somebody else.

18         You've got till the 30th to suggest names to me for

19   settlement master.

20         Now, I may or may not agree with your selection.

21   It's my intention at this point to inform you in early

22   December who I select as special masters for discovery and for

23   settlement purposes, because I believe that you have a right

24   to object on grounds of conflict of interest or bias for

25   anyone I select.

```
 1          So there will be a period of time after I inform you
 2   of the names where you can submit objections on those grounds
 3   and we'll see how that goes.  So I expect to hear from
 4   everybody by Monday if you want to suggest names.  You don't
 5   have to suggest names, but if you want, this is your
 6   opportunity.
 7          All right.  Any question about special master?
 8          MR. GOLDBERG:  Nothing from defendants, Your Honor.
 9          MR. SLATER:  We have no questions, Your Honor.  We
10   have no questions, Your Honor, from the plaintiffs.  Thank
11   you.
12          JUDGE KUGLER:  All right.  Now, apparently you're
13   done with me.  Maybe for some of you, that's a good thing.
14          So let me get Judge Schneider back on the line.  He
15   may, I don't know how long he's going to be, but I looked at
16   your agenda.  There's a lot of things apparently he's going to
17   discuss.  He may find it necessary to take a break, but let me
18   get him to tune in.
19          (Judge Schneider joins the call.)
20          JUDGE SCHNEIDER:  Hello, this is Judge Schneider.
21          JUDGE KUGLER:  Hey, Judge Schneider, it's Judge
22   Kugler.  I'm going to turn this over to you.  I'm done with my
23   portion of this.  I told counsel that depending how long you
24   run, you may want to take a break at some point or they may
25   want to take a break.
```

 1          So, everybody, please have a safe, healthy

 2   Thanksgiving, and we'll talk to you soon.  Take care.

 3          (JUDGE KUGLER LEAVES THE CALL.)

 4          JUDGE SCHNEIDER:  Good morning, everyone.  I received

 5   your letters, obviously, I read them.  Sounds like we have a

 6   lot to chew on and I would appreciate your help in discussing

 7   generally how we should approach these issues.

 8          Let me start with the Amended Complaint issue that

 9   Judge Kugler and I had a chance to discuss.

10          This is the Amended Complaint that was filed

11   yesterday in the Erie case.  We're going to -- we're going to

12   enter an order vacating the Amended Complaint and requiring

13   that if the plaintiffs want to file an Amended Complaint, they

14   have to file a motion seeking leave.

15          In addition, an order is going to be entered at --

16   like Judge Kugler said, we've been a little lax with these

17   Amended Complaints, and to avoid any situations of the sort

18   that we have with regard to the Erie Complaint, we're going to

19   require that all requests to amend the Complaint be

20   accompanied by motions.

21          I will point out that local Rule 15.1 requires that

22   when a motion to amend is filed, it has to indicate whether or

23   not there's consent or an objection to the motion and a

24   redline copy of the proposed amendment has to be provided.

25          That will enable us, especially in this case, to

1    accelerate the decisions on the motion.  Most of the -- most

2    if not all of the requests to amend were not terribly

3    substantive, so it was pretty routine that the amendments were

4    granted.  As to those sorts of amendments, when the motion is

5    filed, we'll take a look at them.  If it indicates there's no

6    objection, we'll enter an order granting the motion even

7    before the return date.

8         But if there's going to be an objection to a motion,

9    you know, they'll be briefing, and, you know, appropriate,

10   like I said, appropriate briefs and we'll decide it on the

11   merits.

12        So that's what we're going to do with regard to the

13   Amended Complaint.  We'll enter an order with the date -- I

14   took good notes -- the dates that Judge Kugler indicated, and

15   we'll memorialize that in a case management order that you'll

16   get probably -- well, maybe even before the holiday, but I'm

17   not sure.

18        In looking at the agenda, we'll obviously address any

19   issues the parties want to address.  There's a lot of meaty

20   issues to address.  I'd appreciate the thoughts of counsel

21   about the best way to approach this.

22        We have the 30(b)(6) issues, we have the addendum

23   issues.  Looking at my notes from review of the plaintiffs'

24   letter, the ZHP production deficiency issue, the wholesaler

25   discovery issue.  I think those are the big issues to deal

1   with.

2           You know, we could spend all day, if we have to go

3   through each issue for each of the one, two, three, four,

4   five, six defendants.  My thoughts are, I think the most

5   important issues in terms of timing is probably the addendums

6   to the depositions because those are going to start in

7   mid-January, and then -- so I would propose we deal with that

8   first and then the 30(b)(6) issues, if we have time.

9           Any objection, any different thoughts about if

10  there's a more pressing or important issue than the addendums?

11          MR. SLATER:  Hello, Your Honor, it's Adam Slater.  I

12  think that the 30(b)(6) issue is probably more pressing and we

13  want to certainly address that today because the trigger point

14  for the defendants to start talking to us about who their

15  corporate reps are and start to being -- which will allow us

16  to start talking about who we need to depose beyond corporate

17  reps, all of that is triggered on getting these 30(b)(6)

18  notices finalized.

19          JUDGE SCHNEIDER:  All right.  Mr. Goldberg, any

20  objection if we deal with those issues first?

21          MR. GOLDBERG:  That's fine, Your Honor.

22          JUDGE SCHNEIDER:  So let's talk about how to approach

23  this, because I know there's different issues for each of the

24  six people.

25          Is there a way we can identify the common issues that

 1    cut across all the notices and deal with those first, and then

 2    if we have to, to deal with the individual issues.

 3         MR. SLATER:  Yes, Your Honor.  I was going to

 4    suggest -- again, it's Adam Slater for the record.  We've

 5    provided the notices to Your Honor in -- just in a random

 6    order starting with Aurobindo.

 7         I think the way that it would play out is, we can

 8    start with Aurobindo, for example, and as an issue comes up

 9    that is addressed by the Court, when we get to the next party,

10    if the same issue is there, you know, Your Honor will likely

11    have addressed it, and if there's any specific nuance to

12    another defendant, they can certainly raise it.  But I would

13    think that after we get through a couple of these, because

14    there's not that many issues in dispute at this point, that by

15    the time we get through a few of them, we'll be getting to the

16    point where you will be able to ask defense counsel if there's

17    any other issues that haven't been addressed yet.  So I was

18    thinking that might be an efficient way to go through it, and

19    by the end, we will then have each of the notices completed

20    and we'll be able to know what we need to do with them and get

21    them entered.

22         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

23    -- I actually disagree about trying to proceed with the

24    30(b)(6) notices.  I disagree about the efficiency.  We did in

25    our letter present to the Court the global issues that run

1  across the notices, and we think we can walk through those

2  global issues with Your Honor fairly efficiently at the

3  beginning of this discussion, before Your Honor gets to the

4  parties' specific notices.

5          JUDGE SCHNEIDER:  I agree.  Let's deal with the

6  global issues first and then we can get to the individual

7  issues.

8          I have your letter, or Ms. Cohen's letter in front of

9  me.  Should we start on Page 2, Mr. Goldberg, subsection A1,

10 jurisdiction.  Is that the appropriate place to start?

11         MR. GOLDBERG:  That is, Your Honor, and I am going to

12 pass the baton to my colleague, Barbara Schwartz, who has

13 really been focusing on the 30(b)(6) issues.

14         JUDGE SCHNEIDER:  Great.  Ms. Schwartz, I think Judge

15 Kugler dealt with the first issue dealing with jurisdiction,

16 where he said, and it will be memorialized in an order, that

17 no jurisdiction motions are going to be filed without leave of

18 Court.  So is the first general global dispute moot?

19         MS. SCHWARTZ:  Yes, Your Honor.  I think Judge

20 Kugler's comments addressed that issue.

21         JUDGE SCHNEIDER:  Okay.  Let's go to the second

22 issue.  Limitation to Valsartan for sale in the United States

23 market.

24         Let's hear from the defendants and then we'll hear

25 from plaintiffs.

1       MS. SCHWARTZ:  Sure, Your Honor, and before jumping

2  in specifically to this topic, just a general comment really

3  relating to all our general topics here, is that we're really

4  seeking to do two things, and those are to limit the notices

5  to the parameters that the Court set out in the macro

6  discovery order that was entered around this time last year,

7  and also, to identify the topics with the requisite

8  particularity which will enable the defendant to identify the

9  correct corporate designee and adequately prepare those

10  designees as necessary.

11      So I mean, those principles don't really apply to

12  this topic.  What we're seeking to do is to expressly

13  incorporate the Court macro discovery rulings on the scope of

14  discovery with regard to the specific product at issue in this

15  case.

16      So on November 20th, 2019, Your Honor rendered an

17  oral opinion where you noted that this case involved sales of

18  Valsartan in the United States and that is where the focus of

19  plaintiffs' discovery should be.

20      In the associated macro discovery order, I believe at

21  Paragraph 7 did include a limited exception.

22      JUDGE SCHNEIDER:  Ms. Schwartz, can I just -- just to

23  make sure we're on the same page, because I looked at this

24  last night, are we talking about the Court's order dated

25  November 25, 2019?

1          MS. SCHWARTZ:  Yes.

2          JUDGE SCHNEIDER:  Okay.  Great.  So we're on the same

3    page.  Great.  Continue.

4          MS. SCHWARTZ:  Great.  So in that order that you just

5    referenced at Paragraph 7, you reiterate the focus on product

6    intended for the United States market with the limited

7    exception or documents from any source regarding unknown and

8    unidentified testing peaks to a general toxic impurity in

9    Valsartan API or Valsartan.

10          JUDGE SCHNEIDER:  Can I jump in here.  Ms. Schwartz,

11    I'm sorry, again, for interrupting.  I just want to make sure

12    that we got the right paragraph.  I don't know if you have the

13    order in front of you.

14          Paragraph 7 specifically addresses the request for

15    foreign sales marketing materials and agreements.  Is that the

16    paragraph you intend to refer to?

17          MS. SCHWARTZ:  That's right.

18          JUDGE SCHNEIDER:  Okay.  Great.  Okay, I'm sorry.

19    Continue.

20          MS. SCHWARTZ:  What the manufacturer defendants are

21    requesting here is that the scope of discovery that is

22    expressly laid out both in your November 20th oral opinion and

23    in that November 25th order, be expressly applied to the

24    30(b)(6) notices.  As they're written currently, the 30(b)(6)

25    notices would apply to any Valsartan product, that stands for

 1   any market and that's a massive expansion of the scope of

 2   discovery beyond the parameters of that order.

 3          JUDGE SCHNEIDER:  Can I ask you a question there?

 4   Because if you have the order in front of you, should we read

 5   Paragraphs 6 and 7 together?

 6          Paragraph 6 deals with requests for foreign

 7   regulatory documents.  Generally, the Court held that they are

 8   off limits except for certain specific categories of

 9   documents, and anything regarding Valsartan contamination and

10   documents regarding potential or actual nitrosamine

11   contamination prior to July 2018.

12          MS. SCHWARTZ:  Right.  So one of the other issues is

13   that we are seeking, to the extent plaintiff has not typically

14   incorporated that language into the notice, that that language

15   would also be applied.

16          So, for example, in the ZHP notice, plaintiffs and

17   defendants have reached agreement to specifically include that

18   language in the notice, and we would also request that that

19   language be applied in the notices for all the manufacturer

20   defendants.

21          JUDGE SCHNEIDER:  Thank you.

22          So the Court understands the general objection.  What

23   might be helpful for the Court is to look at a specific notice

24   and the specific language that plaintiff uses.

25          So I have plaintiffs' letter and I know attached to

1  it are the different 30(b)(6) notices for -- that they sent

2  out.  Which ones should we use as sort of the sample?

3      MS. SCHWARTZ:  I think the ZHP notice probably is the

4  most comprehensive.  I know that is attached as Exhibit A to

5  defendants' letter.

6      JUDGE SCHNEIDER:  Okay.  Let me get that.  Exhibit 8?

7      MS. SCHWARTZ:  Exhibit A.

8      JUDGE SCHNEIDER:  A.  Okay.  Hold on one second.

9      MR. SLATER:  Just for the record, you're looking at

10  the third amended notice I assume?

11      JUDGE SCHNEIDER:  I'm looking at -- I have

12  Mr. Slater's November 23 letter.  It looks like the exhibits

13  are by numbers.  So what number should I look at?

14      MR. SLATER:  I'm pulling out Exhibit 14, No. 14, Your

15  Honor, which is the third amended notice to ZHP, if that's

16  what counsel wants to start with.

17      MS. SCHWARTZ:  Okay.  We can work with that.

18      JUDGE SCHNEIDER:  Okay.  Let me pull it up.  11, 13.

19  Okay.  I have Exhibit 14.  Can you point me to the specific

20  language and page that is at issue?

21      MS. SCHWARTZ:  Yes.  So Page 4 is where the real

22  substance of the notice begins, and I believe six, six small

23  paragraphs.  It begins:  "All references to the API."  I

24  believe that's where we should begin.

25      JUDGE SCHNEIDER:  Okay.  Go.

1          MR. SLATER:  Your Honor, can I just -- I apologize

2     for interrupting.  I just want to make one thing clear, and we

3     can get to it when the time comes.

4          I don't believe that all defendants have made this

5     same objection, but counsel can continue.

6          But you can continue, Counsel.

7          JUDGE SCHNEIDER:  Okay.  So Exhibit A is what, a

8     deposition section?

9          MS. SCHWARTZ:  That's correct.

10         JUDGE SCHNEIDER:  Or general instruction?

11         So what would be the objection to this paragraph that

12    you're referring to, one, two, three, four, five, six

13    paragraphs of Exhibit A to Exhibit 14.

14         MS. SCHWARTZ:  This paragraph, and I believe the

15    following paragraph defines Valsartan APA and Valsartan

16    finished dose to include any Valsartan API or finished dose

17    manufactured by this defendant.  So that would include those,

18    those products not intended for the United States market.

19         We would wish to include language specifically

20    limiting this definition to products intended for the United

21    States.

22         JUDGE SCHNEIDER:  Unless the caveat in Paragraph 6 of

23    the November 25, 2019, order applies, right?

24         MS. SCHWARTZ:  That's correct, Your Honor.

25         JUDGE SCHNEIDER:  Okay.  Mr. Slater, what say you?

1          MR. SLATER:  Okay.  A few responses to this.  Number

2   1, Your Honor ruled during the macro discussion, very clearly

3   that we were entitled to discovery with regard to what

4   occurred in the facilities where the Valsartan API and

5   finished dose that was intended for sale in the United States

6   were manufactured.  The order never limited us to only -- to

7   only obtain information -- I'm sorry, Judge?

8          JUDGE SCHNEIDER:  Okay.  So why do these specific

9   paragraphs that Ms. Schwartz is referring to don't include

10  that language?  They don't limit the facilities at issue to

11  what is identified in the order, do they?

12         MR. SLATER:  Well, it's not -- what they're doing is

13  they're trying to just jump past your order.  And let me

14  explain to you some of the consequences of what they're trying

15  to do here.

16         The meet-and-confer process was extensive.  I was in

17  every single one of those discussions and counsel said to us,

18  well, you should only be able to ask our 30(b)(6)

19  representatives about the Valsartan that actually was sold

20  into the U.S.  And so I asked, I said, well, but you had

21  contamination occurring throughout the facilities.  You didn't

22  have a different manufacturing process, you didn't use

23  different solvents, you didn't have standard operating

24  procedures that were different depending on where it was going

25  to be sent.

1          In fact, Your Honor, if counsel were correct about

2     their interpretation, the entire basis for the worldwide

3     recall, the Novartis discovery of this problem would be off

4     limits to us, because that was API that was sent to Novartis's

5     arm in Europe to evaluate for sale in Europe.  It happened to

6     come from the same facility, manufactured by the same process

7     and that triggered the worldwide recall.

8          So what they're trying to do is create the impossible

9     distinction to draw, which is contrary to the ruling.

10         If you go through your order, for example, and I'm

11     coming back to the facilities, it was recognized early in this

12     case when we were talking about figuring out the cause of the

13     contamination, that we need to figure out what was happening

14     in those facilities that manufactured the API and finished

15     dose.

16         Again, it's all manufactured in the exact same way on

17     the same assembly line with the same processes, et cetera.  So

18     it would be virtually impossible to take a deposition limited

19     to just what was sold in the U.S. because again, the documents

20     are written that way, and, Your Honor, we provided you

21     Exhibits 4, 5, 6, 7, and 8, which are examples of documents

22     that we have obtained in discovery to date, which show you

23     that the inquiries regarding contamination, peaks, quality

24     assurance processes, et cetera, have been coming to.  And

25     we'll talk about ZHP first, because they jumped in to be the

1  lead dog on this, to ZHP from suppliers, distributors, et

2  cetera, around the world.

3          We have Korea, we have people in China, we have

4  people in Europe, companies all over asking questions of them

5  and ZHP having to try to explain what's going on.

6          So the entire contamination issue to not be split up

7  the way that they're asking to do, it's essentially an effort

8  to cut us off from asking witnesses about a tremendous number

9  of massively relevant documents.

10          And again, the Novartis example is Exhibit A on this.

11  That was what triggered the worldwide recall and that occurred

12  in Europe with a sample of API sent to an arm of Novartis in

13  Europe.

14          So, you know, I hopefully have answered it, but if

15  you go further down into your order, Your Honor, you also

16  establish that foreign regulatory evidence is relevant.  And

17  in No. 7, there is a sweeping bit of information that Your

18  Honor read which says that we are allowed to take discovery of

19  information that's in the possession, custody, and control of

20  the defendants containing information from any source, any

21  source in the world, regarding unknown and unidentified

22  testing peaks or general toxic impurities in Valsartan API or

23  Valsartan.

24          So why is that important?  Because this is a problem

25  that was discovered outside the United States.  It's an issue

1    that people were coming to ZHP, going back to 2014 and

2    earlier, asking questions about suspicious findings on their

3    own chemical analysis of Valsartan and asking questions, and

4    unfortunately, ZHP, they're the ones who again jumped to the

5    front of the line, was untruthful with those companies and

6    untruthful with those people and deflected those requests, and

7    the internal e-mails show that they pointedly said, don't tell

8    them this information, tell them about this testing, don't

9    answer that question.

10         So a big part of this case is going to be that the

11   inquiries were coming from all over the world about these

12   impurities and problems and contamination, far earlier than it

13   ever was known in the United States.

14         So again, the facilities is what Your Honor put in

15   play, and the facilities is what we should have the right to

16   take depositions on in accordance with the macro order.

17         MS. SCHWARTZ:  Your Honor --

18         JUDGE SCHNEIDER:  Hold on, hold on, Ms. Schwartz.

19   Why can't the notice track the language in the order?  Because

20   as I'm looking at the language right now, it doesn't indicate

21   that the testimony is limited to just the facilities at issue

22   in this case.

23         If you read it --

24         MR. SLATER:  It actually does, Your Honor.  I'm

25   sorry, I didn't mean to interrupt.  Let me --

         1              JUDGE SCHNEIDER:  If it does, point it out to me.

         2              MR. SLATER:  Sure.  And I want to -- I will point it

         3    out to you.  Turn to Page 5, please, the testing section, and

         4    I want to say to Your Honor something, the unfortunate thing

         5    is that ZHP jumped in to argue this motion, because most of

         6    the major disputes that have been put in front of the Court

         7    have been generated by ZHP, whereas most of these issues have

         8    been worked out very reasonably with the other defendants who

         9    understood what things meant and didn't have this request for

        10    USP on that Valsartan.  That language only came from ZHP.

        11              But look at Page 5, the testing section.  Look at

        12    Question No. 3.  That definition wasn't intended to be that

        13    granular.  No. 3, the testing performed by ZHP or its agents

        14    to evaluate the purity and contents of ZHP's API regardless of

        15    intended sale location manufactured in any facility that

        16    manufactured ZHP's Valsartan API for sale in the United

        17    States.

        18              That's exactly what counsel is saying we didn't do,

        19    when it's right there in black and white.  We did that

        20    throughout the notice, at their request, and if you flip the

        21    pages, you'll see that language redlined in to this third

        22    amended notice, every single question they asked for it.

        23    Everywhere they pointed to that problem, we added it.

        24              So again, I want to be very clear, Your Honor, these

        25    notices were heavily edited through the meet-and-confer

1   process to get to a point where we addressed, we believe every

2   single valid concern, and you can see, if you keep flipping

3   through it, Page 5, Page 6, Page 7, you can go all the way to

4   the end.  You will see every question where that is an issue,

5   the issue of the facilities, we actually put in specific

6   language encompassing the macro ruling.

7            JUDGE SCHNEIDER:  I know, but could we put this issue

8   to bed by just making it clear perhaps in the two paragraphs

9   that Ms. Schwartz pointed out, that -- that -- that the macro

10  order controls, and it's not every facility that ZHP

11  manufactured Valsartan in, but only those that manufactured

12  for sale in the U.S., wouldn't that put this issue to bed?

13           MR. SLATER:  I'm happy to do it, Your Honor.  We can

14  do that also.  It's not a problem to add that language and it

15  may even be in a few of the other notices already, because

16  again, you understand the problem we had is, the defendants

17  wouldn't negotiate with us en masse.  We were told we had to

18  negotiate with each separately, which -- that's why I was

19  surprised when counsel stepped up and said, no, we -- now we

20  want to argue together, when we weren't able to negotiate

21  together.  But, yes, I'm happy to add the language upfront.

22  That should take care of the issue.

23           JUDGE SCHNEIDER:  Ms. Schwartz, isn't the polestar in

24  all of this that this macro order controls?

25           MS. SCHWARTZ:  That's correct.

1          JUDGE SCHNEIDER:  The macro order indicates --

2     there's no dispute about that, the macro order indicates what

3     facilities are at issue, and doesn't -- with that

4     clarification, does that address the -- and the specific

5     addition of the language, just to make it clear, do these two

6     paragraphs that we're talking about, does that address your

7     issue?

8          MS. SCHWARTZ:  I do agree that it's correct to

9     specifically include the language of the macro discovery

10    order.  I just do want to clear up a point of possible

11    confusion or continued dispute, if I can refer you to Request

12    3, which Mr. Slater just used as an example.

13         JUDGE SCHNEIDER:  Request 3, I got it.

14         MS. SCHWARTZ:  Great.  We would still maintain that

15    the product that should be at issue in discovery is the

16    product intended for sale in the United States with the

17    limited exception laid out in Paragraph 7 of the macro

18    discovery order, rather than any product made in a facility

19    that manufactured U.S. product.

20         JUDGE SCHNEIDER:  Yeah, I don't think that's right,

21    because, suppose, you know, I don't know how it works in China

22    or ZHP, but if you have one -- one facility, and if the -- I'm

23    making this up, one portion of the facility makes Valsartan

24    for South Korea and one portion makes Valsartan for the United

25    States.  If the South Korea portion is contaminated with

1  whatever, that would be relevant to -- clearly relevant to

2  this case, even though that Valsartan wouldn't be sold in the

3  United States.

4        So I don't think we can narrow the discovery that

5  you're seeking, whatever -- I think Mr. Slater is right about

6  this.  Whatever happens in the facility is relevant to the

7  case, because if it's contaminated for South Korea, that would

8  be relevant to whether it's contaminated in the United States.

9        So that's my ruling on that issue.

10       Ms. Schwartz, are we done with that?

11       MS. SCHWARTZ:  Your Honor, I do believe that that's

12 inconsistent with at least my reading of the macro discovery

13 order, and I'll note that the language in the macro discovery

14 order addressing some limited discovery of foreign regulatory

15 documents would -- should provide plaintiffs with relevant

16 information regarding those types of issues for product, for

17 other markets that you've addressed, especially combined with

18 the language giving them discovery of general toxic impurities

19 and unidentified testing peaks.

20       So I'm not sure -- we don't believe that just

21 wholesale allowing discovery of any products manufactured in

22 those facilities is necessary or even necessarily appropriate

23 here, because plaintiffs attribute other exceptions would be

24 getting the type of information that they are arguing is

25 material to the case.

1      JUDGE SCHNEIDER:  The Court disagrees and has ruled

2  on that issue.

3      MS. SCHWARTZ:  All right, thank you.

4      JUDGE SCHNEIDER:  Next.

5      MS. SCHWARTZ:  The next issue that we have is the

6  topic addressing foreign regulatory matters.  We explained

7  this as a global issue.  In the ZHP notice we're looking at,

8  we believe it's been resolved and we would seek similar

9  resolution across the notices directly to all defendants.

10      So going back to Page 4, eighth paragraph expressly

11  incorporates the language of the Court's macro discovery order

12  addressing the scope of foreign regulatory discovery and we

13  would just seek that this paragraph be incorporated into the

14  notices for all defendants.

15      MR. SLATER:  It already is.

16      MS. SCHWARTZ:  Then this is resolved.  Thank you.

17      JUDGE SCHNEIDER:  Okay.  Next.

18      MS. SCHWARTZ:  The next issue is the relevant time

19  period.  This is another instance where we're just referring

20  to the macro discovery order and -- with the expressed

21  inclusion of a provision noting that the relevant time period

22  applicable to a given defendant that is laid out in that macro

23  discovery order is applicable to the Rule 30(b)(6) notice.

24      MR. SLATER:  There's no objection that it would be.

25  I didn't think we had to copy the whole macro order into the

     1    notice.  Everybody understands the macro order controls.

     2            JUDGE SCHNEIDER:  That's certainly the case.

     3            Next issue.

     4            MS. SCHWARTZ:  The next issue is the scope of a

     5    number of requests that have been included, that reference two

     6    uncertain terms and the terms that we're discussing here are

     7    CGMPs, standard operating procedures, policies and procedures.

     8            We note that there are an untold number of CGMPs,

     9    standard operating procedures, policies, procedures, and our

    10    dispute is that we are entitled to a certain level of

    11    particularity so that we can identify the appropriate

    12    corporate designee and adequately prepare that designee on

    13    these topics.

    14            So for these requests relating to these very broad

    15    general terms, we're seeking particular identification of the

    16    CGMPs, SOPs, policies and procedures at issue.  We understand

    17    that might not actually at this point look like an actual

    18    point-by-point list, so our proposal is that those be limited

    19    to the CGMPs, SOPs, policies and procedures referenced in FDA

    20    correspondence or documents relating to the investigation into

    21    the macro --

    22            MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

    23    May I just ask that you remind people to put their phones on

    24    mute if they're not talking.  There's more and more background

    25    noise happening on this call.

 1          JUDGE SCHNEIDER:  I agree with that.  So if you're

 2     not speaking, please put your phone on mute.

 3          All right, Mr. Slater, what say you about Roman

 4     Numeral V?

 5          MR. SLATER:  Your Honor, in order to give you the

 6     context of what the request actually says, I'd ask Your Honor

 7     to turn to Page 7, please, in our notice, the third amended

 8     notice to ZHP, and you can look at Request No. 21.  Again,

 9     this was language that was heavily negotiated and has been

10     agreed to.

11          And this language, we believe, is more than

12     sufficient for specificity.  But let me take a step back

13     because counsel at the very end, all of a sudden in their

14     letter to the Court, came up with this argument, we should be

15     limited to discovery of the standard operating procedures and

16     good manufacturing practices that might have been mentioned in

17     the FDA documents.

18          Your Honor recognized early in the case that the

19     plaintiffs may not want to be limited to and embrace

20     everything the FDA did or did not do, and we said on the

21     record, no, we don't want to be limited, we're going to do our

22     own investigation and Your Honor acknowledged that's

23     appropriate.

24          Your Honor stated on the record, on November 20,

25     2019, on Page 14, Line 16, in this regard, and I'm quoting:

1    "Plaintiffs need to find out if these facilities followed

2    current good manufacturing procedures or practices.

3    Plaintiffs are entitled to find out if these facilities have

4    actual or constructive notice of the contaminated Valsartan

5    API."

6           That was the context of that statement but it

7    obviously applies to the finished dose as well.  So we have a

8    request here which adopts your language in both the transcript

9    and the order, from the macro rulings, which specifically

10   denote the types of standard operating procedures we're

11   interested in.

12          We're not interested in those that relate, for

13   example, to how big the box is or what type of tape you put on

14   the box.  This is specific to the exact language that Your

15   Honor stated on the record, which I believe has been agreed to

16   by every party, or virtually every party, other than ZHP.

17          The last part of what counsel is saying is they want

18   us to list them, and they said their fallback is the FDA

19   correspondence.

20          I will tell you, Your Honor, one of the things that

21   was very refreshing about this process, once we found out we

22   were going to talk to all six of these manufacturers

23   separately, is that the tone and the level of cooperation was

24   quite different across the defendants, and many of these

25   things were worked out in a very different way than what Your

1    Honor hears on these calls, and that's something that was

2    refreshing to us and something that we're going to start

3    taking note of and informing the Court of more often as we

4    move forward.

5          This is a great example.  In the discussion with the

6    other defendants, it actually was embraced by several of them

7    that what we will do, is we will have the meet-and-confer

8    process, not just on these requests, but this is a good

9    example, the SOPs, where we will sit down with the defendants

10   and we will say, okay, tell us which of those SOPs, that --

11   you've given us many, because as Your Honor knows, you get 20

12   revisions and you don't know when they were in effect, et

13   cetera, and some of the defendants said, well, we don't want

14   to be having our 30(b)(6) witness surprised, we'd rather know

15   exactly which ones applied.

16         We said great, let's meet and confer.  You'll show us

17   which ones were in effect, you'll show us which specific SOPs

18   and CGMPs applied.  We'll then go back to the documents and

19   tell you if we see other ones, and that way, we can narrow the

20   field so when we walk into the deposition, both sides are

21   educated going in.

22         The only party to cross that language out, to my

23   knowledge, at this point, was ZHP.  They don't want to meet

24   and confer on anything, but the other defendants do.

25         So that's going to be a process we're going to do by

1    consent, but with regard to the language and I know I'm saying

2    a lot, but I think it was important to lay this all out for

3    the Court.

4         The language in this request is quite specific.  It's

5    limited to the area Your Honor specified in the macro

6    decisions, and we believe are very fair and appropriate

7    requests on the SOPs and CGMPs.

8         JUDGE SCHNEIDER:  Mr. Slater, can I ask your

9    indulgence?  Please point me again to the specific page and

10   number where the CGMP issue is listed.

11        MR. SLATER:  The CGMP issue is -- you talk about in

12   the course of your ruling and then during the course of your

13   transcript, you talk about --

14        JUDGE SCHNEIDER:  No, no, I'm sorry.  No, no.  I mean

15   in the notice.  I'm sorry.  In the notice.

16        MR. SLATER:  Oh, in the notice, I'm sorry.

17        Question 21 or Topic 21.

18        JUDGE SCHNEIDER:  All right.  21 talks about SOPs.

19        MR. SLATER:  Right.

20        JUDGE SCHNEIDER:  And it gives pretty good

21   specificity about the type of SOPs that you're interested in,

22   right?

23        MR. SLATER:  Absolutely.  It adopts the language from

24   Your Honor's oral ruling.

25        JUDGE SCHNEIDER:  Ms. Schwartz, let's just look at

1    21.  I know it only -- that only pertains to SOPs and not

2    CGMP.  What are you looking for that's not there?

3            MS. SCHWARTZ:  Your Honor, this addresses broad

4    categories of SOPs and doesn't really delineate them with the

5    particularity that's required for us to understand the SOPs

6    that the designee will be expected to be prepared to testify

7    on.

8            JUDGE SCHNEIDER:  Well, I don't know if I agree with

9    that because it specifically says those SOPs that are intended

10   to prevent, detect, et cetera, et cetera, any impurity or

11   contamination, for example.

12           So Mr. Slater is absolutely right, you can rule out

13   the size of the box or plastic wrapping or anything like that,

14   or what kind of shoes they have to wear to work on the

15   production line, that's not what he's interested in.  It seems

16   to me, Paragraph 21 gives appropriate notice to ZHP about what

17   they're looking for, and I don't know at this point if they

18   can provide any more detail.

19           Certainly they're not going to limit it to what's in

20   the FDA documents, because rightly or wrongly, we know that

21   the plaintiffs are not necessarily agreeing with what the FDA

22   did.

23           And that's their position.  I don't know if it's

24   going to be right or wrong, but, you know, from Day 1, that's

25   the position they're taking in the case.

1          So at least with regard to 21 and 22, the objection

2     is overruled.

3          Is this the same issue with regard to 23 and 24?

4          MS. SCHWARTZ:  Your Honor, 23 and 24 are quite a bit

5     broader.  They don't include a similar limitation that we've

6     seen in the previous requests, so 23 asks for ZHP's

7     applications of CGMPs in connection with the manufacture of

8     Valsartan API throughout the facility.  That's a very broad

9     category of many, many CGMPs.

10         MR. SLATER:  Counsel, we'll add it.  I don't mean to

11    cut you off, but in the interest of time, we'll just add it.

12         Your Honor, just so you know, you know, we're working

13    in the interest of time.  Yeah, we'll just add it.  I mean, we

14    were working through six sets of notices, so when we finalize

15    them, we're happy to add the language so that that language

16    will be in all SOP and CGMP requests.

17         JUDGE SCHNEIDER:  That takes care of that.

18         In the Court's view, that provides sufficient

19    specificity for ZHP to appropriately identify which person or

20    persons should be produced in response to the 30(b)(6) notice.

21         MS. SCHWARTZ:  Thank you, Your Honor.

22         JUDGE SCHNEIDER:  So I think that takes us up to

23    Roman Numeral VI, time frame.

24         MS. SCHWARTZ:  Yes.  There are two requests which are

25    Topics 58 and 59 in this notice, where -- where plaintiff

1    represents that they expect testimony on certain sample

2    documents, and the current language obligates plaintiffs to

3    provide those sample documents 30 days in advance of the

4    deposition.  The defendants' position, that given the large

5    number of topics, the complexities of preparing a witness

6    under today's circumstances with COVID and foreign defendants,

7    identifying the right person, adequately preparing them, that

8    we would like 60 days to review these documents and prepare

9    the witness.

10         MR. SLATER:  Your Honor, 30 days is more than enough.

11   These depositions are slated to start in less than two months.

12   So technically, we'd have to start serving them now and we

13   don't even have full document productions.  And I'll also add,

14   this is the party, ZHP, that doesn't want to meet and confer

15   with us on anything.  They're the party that's struck every

16   single meet-and-confer phrasing that we put into this notice.

17         So with respect to counsel, 30 days is more than

18   enough.  I mean, we can't have our depositions completely

19   prepared 60 days before, and this was language that we put in,

20   that we're going to meet and confer, because we want to talk

21   to the defendants and we want to make these depositions to the

22   extent possible on especially the sale and pricing and the

23   profits and the market, size and market share and things like

24   this, more confirmatory than exploratory, and most of the

25   defendants have agreed to that, to actually meet and confer to

1    the point where the deposition can be again confirmatory of

2    information that's been informally shared rather than

3    exploratory.

4          So, you know, I think 30 days is more than enough,

5    especially if a party wants to meet and confer on the robust

6    and transparent level.

7          MS. SCHWARTZ:  Your Honor, just to clarify our

8    position.  We have not sought to strike the language with the

9    meet and confer.  We are perfectly willing to meet and confer

10   with plaintiffs on this issue.

11         I can also note that the sales and price

12   introductions were made in May through July of this year, so

13   plaintiffs would have the ability to provide these documents

14   with particularity required by Rule 30 today.  So we don't

15   believe that 60 days is too much of a burden here.

16         JUDGE SCHNEIDER:  Ms. Schwartz, let's leave it at 30

17   days with this caveat, if there's good cause in a particular

18   instance why you need more than 30 days, you can make an

19   application to the Court, and if you establish good cause,

20   we'll get it to you sooner.  But prima facie 30 days should be

21   enough, but if there's a special case, special circumstances

22   that warrant it, we'll grant more time.

23         So I think that will protect your client's interest.

24         MS. SCHWARTZ:  Thank you, Your Honor.

25         JUDGE SCHNEIDER:  Okay.  Number 7.

1          MS. SCHWARTZ:  Yes.  The last global issue we have is

2     really a series of small issues, but it's about the

3     characterization of what plaintiffs are calling contamination

4     here.  So we've had multiple rounds of new notices due to meet

5     and confers between the plaintiffs and defendants for, you

6     know, in the case of every defendant, and during the course of

7     those new notices, plaintiffs added in language seeking

8     information regarding, quote unquote, actual and potential

9     nitrosamine contamination.  We have a few issues of this.

10          The first use of the word, "potential."  Potential is

11     the vague ambiguous term that really calls for nothing more

12     than speculation.  I don't understand how you prepare a

13     designee on a potential issue.  So we're seeking that due to

14     the complete lack of clarity there, that any reference of

15     potential contamination be stricken from the notices.

16          MR. SLATER:  Your Honor, the phrasing potential or

17     actual nitrosamine contamination is actually found in multiple

18     places.  It's found in the macro order in Paragraph 6.  It's

19     found in the transcript when Your Honor was addressing testing

20     for actual or potential contamination.

21          Again, this is on Page 22, Line 24 of the November 20

22     transcript.

23          I think that counsel well understands the

24     distinction.  Every single pill that was sold was not tested.

25     Every lot was not tested.  This went on for years before

 1    anybody had an inkling that these pills were being

 2    contaminated with something which is used purposefully to give

 3    cancer to laboratory animals.  That's what NDMA is used for.

 4    No one knew that for years.

 5            So part of our proof in this case and part of our

 6    both causation and damage modeling is all going to rely on us

 7    not only pointing to what was proven to be contaminated by

 8    actual testing of those lots, but also, based on the evidence

 9    that we are accumulating through the documents and most

10    important through these depositions, which lots were likely

11    contaminated, or the flip side, which pills and lots is the

12    defendant unable to exclude as being contaminated.

13            And Your Honor remembers we had that discussion about

14    two years ago where I begged for an informal market share

15    meet-and-confer process, where all the parties would get

16    together and figure out the scope of what was actually or

17    potentially contaminated in the U.S. market and the defendants

18    said, no, you can do that when you take your corporate rep

19    depositions.

20            So that is where we are at and that terminology is

21    very clear.  It's obviously highly relevant and we would ask

22    that that objection be denied.

23            JUDGE SCHNEIDER:  Last word, Ms. Schwartz.

24            MS. SCHWARTZ:  Yeah, Your Honor, to highlight the

25    ambiguity, I think it might make sense to look at one of the

1   specific topics.  So if we could turn to Topic 20, I think

2   this is an example that highlights how unclear the use of

3   potential -- this topic requests testimony on the extent of

4   the actual and potential nitrosamine contamination of ZHP's

5   Valsartan API finished dose in the United States both in terms

6   of the concentration per pill and across all of the lots and

7   batches.

8           It's unclear to me how a designee could testify as to

9   potential contamination in terms of concentration for pills or

10  identifying batches speculatively.

11          JUDGE SCHNEIDER:  This was the language used in the

12  macro discovery order.  It was entered after extensive

13  argument.  We didn't have this dispute at that time, I don't

14  know why we're having this dispute at this time.

15          I don't know how I could include that language in the

16  November 2019 order, but say it's inappropriate for the notice

17  of deposition, so it stays in.

18          MS. SCHWARTZ:  Thank you, Your Honor.  We have one

19  more aspect of this issue as well, which is the use of the

20  term "contamination."  We -- the manufacturer defendants'

21  position is that anywhere in this notice where the word,

22  "contamination" is being used to refer to the presence of

23  nitrosamines in Valsartan, that it would be a more accurate

24  and clear way of phrasing the notice to use the words

25  "presence of nitrosamine impurities."

```
 1          I don't think that there's a dispute in this case

 2   that the nitrosamines are believed to be impurities, but the

 3   question of contamination is really a factual question that

 4   will be answered in this litigation.

 5          THE COURT:  I respectfully disagree, Ms. Schwartz.

 6   We have been using that term throughout the course of this

 7   litigation.  Let me see if I could pull up the macro discovery

 8   order right now.

 9          We used it in the -- I'm looking at Paragraph 6 of

10   the order.  We used it at that time, no objection.  So I think

11   as my mother would say, I think we're cutting the salami a

12   little too thin.

13          Obviously, we know defendants' position that it's

14   alleging that even if this -- these chemicals were present, it

15   doesn't cause any injuries, that's clear, you're not making

16   any admissions by this language, so it stays in because again,

17   we used it in the November 2019 order and there's no reason to

18   take it out of the case now.

19          So does that deal with the big-picture issues with

20   regard to the 30(b)(6) issues, and now, do we have to go

21   through each notice individually to address the issues?

22          MS. SCHWARTZ:  Your Honor, that disposes of the

23   issues we presented as global issues, and may dispose of all

24   the issues for certain defendants, but I believe there are

25   still some small individualized issues pertaining to specific
```

 1    notices.

 2           JUDGE SCHNEIDER:  Well, let's deal with ZHP, because

 3    you have the floor, so let's deal with all the ZHP issues, get

 4    them resolved, and then we'll move on to each individual

 5    defendant.

 6           MS. SCHWARTZ:  All right.  So for ZHP, we have really

 7    just one issue, and before we burden the Court with

 8    discussion, it's not clear from the most recent version of the

 9    notice that was sent to us very shortly before the position

10    statements were submitted if this is still a live dispute.

11           I don't know if Mr. Slater's had the chance to review

12    that portion of the briefing in detail, but if you could just

13    advise if this is still a dispute we should be raising with

14    the Court, I'd be grateful.

15           MR. SLATER:  I read everything you wrote, I read your

16    entire papers until three in the morning last night.  Happy to

17    discuss anything.

18           Is the issue that you're raising the, quote unquote,

19    acceptable question?

20           MS. SCHWARTZ:  Yes.

21           MR. SLATER:  It's a simple issue, Your Honor.  Within

22    the case of ZHP, they have a very close relationship with

23    their downstream entities, Huahua, Solco, and Prinston.  So

24    what we did in response to some of the questions by defense

25    counsel, if we go to Exhibit A on Page 4 of the ZHP notice, at

 1    the very beginning, there's a statement that says:  "All

 2    topics, referenced information and documents known to and/or

 3    in the possession, custody or control of ZHP in the ordinary

 4    course of business."

 5            Do you see that, Your Honor?

 6            JUDGE SCHNEIDER:  I'm on -- I have Exhibit A and I

 7    see the very first paragraph that mentions Solco.  Is that

 8    what we're referring to?

 9            MR. SLATER:  On Page 4, if you have the ZHP notice,

10    you might have gone to the Solco notice, but it's the same

11    language, so it's immaterial.

12            JUDGE SCHNEIDER:  Let me make sure I got the right

13    exhibit.  Okay.

14            MR. SLATER:  They were together in my exhibits.  They

15    were -- all the ZHP family, the companies we put together

16    under one exhibit tab with ZHP at the front.

17            JUDGE SCHNEIDER:  Okay.

18            MR. SLATER:  But again, the language is identical on

19    this issue.

20            JUDGE SCHNEIDER:  Okay.  I think I -- I think I --

21    let me just make sure we're both on the same page.  I see all

22    the different ones.  Okay.  All topics, blah, blah, blah,

23    blah, in control of ZHP in the ordinary course of its

24    business.  Is that what we start with?

25            MR. SLATER:  Correct.  I had been -- a few inquiries

1  had come from some of the manufacturers we negotiated with

2  early on.  They said, look, we want to make sure, you're not

3  trying to turn our 30(b)(6) witnesses into independent experts

4  who have to go out and gather information.

5       I said, no, of course not.  We understand what a

6  30(b)(6) witness is obligated to testify to, and we just

7  documented it there to give some comfort.

8       The issue with ZHP is, they want to have their

9  30(b)(6) witness testify, but not be responsible to no

10  information that in the ordinary course, would have been

11  acceptable to ZHP through it's wholly-owned subsidiaries that

12  handled all of its U.S. operations.

13       And to a large extent, they've addressed this issue

14  because they specified the requests for which Solco, Prinston,

15  and Huahua will produce corporate representatives and that's

16  why we have separate notices to each of them limited to those

17  requests.  But ZHP basically is saying, look, just because

18  these entities have that information, we shouldn't have to

19  know about it, and our position is reasonable, if it's

20  accessible to you, if in the ordinary course of business,

21  that's information that would be passed along and you would

22  have access to it, then it would come within the normal scope

23  of what a 30(b)(6) witness would know.  So I was surprised

24  that this was a topic of controversy.

25       MS. SCHWARTZ:  Your Honor, our position is that the

1   language that's currently in the notice, more than -- that the

2   language as currently in the notice is more than sufficient to

3   address ZHP's obligation.  The custody -- I'm sorry, the

4   standard under the rules is information within the possession,

5   custody and control of the noticed party in the ordinary

6   course of business, and that's the standard that we believe

7   should apply.

8          Plaintiffs had asked us to make some sort of

9   representation regarding our ability to provide information

10  that, quote unquote, acceptable to ZHP, and we don't see any

11  benefit in introducing a layer of confusion and adding a

12  standard that is not the standard required by the rules.

13         I think it's also worth noting that ZHP has been very

14  forthcoming in response -- or the ZHP parties have been very

15  forthcoming in response to these notices.  We agreed to

16  provide designees to testify on each topic and we've gone so

17  far as to respond on behalf of the same corporate entities

18  that might part of the ZHP family, Solco, Huahua U.S., and

19  Prinston and we've done so in a way so that Solco, Huahua

20  U.S., and Prinston will each provide a designee on the topics

21  that are primarily within its own possession, custody and

22  control in the ordinary course of business.

23         So we feel that the language of the agreement that

24  plaintiff is trying to seek here is just going to impose a

25  burden on ZHP that exceeds the scope of the rules, introduces

1    ambiguity and doesn't actually solve anything because some

2    entity is going to provide testimony on each of these topics.

3         The question is here, is ZHP going to be responsible

4    for all of those, or will it be the entity that's really in

5    possession, custody, and control of the relevant information.

6         JUDGE SCHNEIDER:  Ms. Schwartz, do I understand you

7    right, that at least with regard to this one sentence we're

8    referring to, as it's phrased right now, in the ordinary -- in

9    the possession, custody or control of ZHP in the ordinary

10   course of its business, you don't object to that.

11        Do I understand that correctly?

12        MS. SCHWARTZ:  That's correct.  As it's stated in the

13   current notice, we do not object to that sentence.

14        JUDGE SCHNEIDER:  Okay.  So is the dispute that

15   Mr. Slater is asking you to confirm something that you

16   believe, "you," being ZHP, believes is beyond what's required

17   under the rules, and this specific language.

18        MS. SCHWARTZ:  That's right.  We don't have a problem

19   with the specific language included in the notice.  Our

20   objection is that -- is to the fact that Mr. Slater is

21   requesting that ZHP affirm it will produce a designee to the

22   extent any given information is accessible to it as opposed to

23   in its possession, custody, or control.

24        JUDGE SCHNEIDER:  I agree with ZHP on this one.  The

25   language is appropriate as it's stated.  I don't think any

1  further clarification is needed.  We know what the rules and

2  case law requires, and that's what the witness has to testify

3  to, what's in the possession, custody, or control of ZHP.

4          So I think the language is appropriate and it stands

5  as is with no further additions.

6          MS. SCHWARTZ:  Thank you, Your Honor.

7          JUDGE SCHNEIDER:  So, Ms. Schwartz, does that take

8  care of the ZHP notice?

9          MS. SCHWARTZ:  That does.

10         JUDGE SCHNEIDER:  Mr. Slater, should we go through

11 the other companies one by one?

12         MR. SLATER:  I think so, Your Honor.  I think they

13 should be done quickly because Your Honor has addressed most

14 of the issues already I think.

15         JUDGE SCHNEIDER:  I say let's run through them and

16 get it done.  So I'm looking at --

17         MR. SLATER:  Great.

18         JUDGE SCHNEIDER:  -- at your letter.  I think we'll

19 do them in order.  No. 9, Exhibit 9 is Aurobindo.  Is their

20 counsel on the phone?

21         MS. HEINZ:  Yes, Your Honor, this is Jessica Heinz

22 for Aurobindo.

23         JUDGE SCHNEIDER:  Hi, Ms. Heinz.  Are there any

24 issues with the notice that we need to deal with?

25         MS. HEINZ:  We covered them when we discussed the

1  global disputes, Your Honor.

2        JUDGE SCHNEIDER:  Okay, great.  So we're done with

3  Aurobindo then, right?

4        MS. HEINZ:  Correct.

5        JUDGE SCHNEIDER:  So, Ms. Heinz, can you speak for

6  all the defendants then?

7        (Laughter.)

8        JUDGE SCHNEIDER:  Exhibit 10, Hetero.  Is their

9  counsel on the phone?

10       MR. SHAH:  Yes, Your Honor.  This is Nakul Shah on

11  behalf of Hetero Drugs and Hetero Labs.

12       JUDGE SCHNEIDER:  Are you hopefully going to be as

13  positive as Ms. Heinz was?

14       MR. SHAH:  Well, yes, Your Honor.  We've had a number

15  of very productive meet and conferrals with plaintiffs'

16  counsel.  We have just one outstanding issue which we're

17  continuing to meet and confer with plaintiffs' counsel on and

18  I'm not sure whether it's ripe for discussion just now.

19       JUDGE SCHNEIDER:  Let's do it now.  Let's get it done

20  with, let's get it done with.  Let's do it right now.

21       MS. GOLDENBERG:  We have identified a number of

22  discreet topics within plaintiffs' 30(b)(6) notice that it's

23  Hetero's position that a Hetero 30(b)(6) witness would not be

24  competent to testify and provide the most fruitful and useful

25  testimony with respect to those discreet topics.

1          We've informed plaintiffs' counsel that we believe

2     that other members of that supply chain are equally

3     represented by their own counsel and that are separate and

4     distinct from Hetero Drugs and Hetero Labs would be able to

5     provide that more useful and fruitful testimony.

6          Now it's just a matter of whether plaintiff will

7     agree to allow those specific topics to be addressed by a

8     separate notice to that separate member of the supply chain.

9          MR. SLATER:  Yes, yes, we can do that, I think, Your

10    Honor, and then -- I'm sorry, Your Honor, go ahead.

11         JUDGE SCHNEIDER:  No, go ahead, go ahead, Mr. Slater.

12         MR. SLATER:  I was going to say, I'm aware that

13    Camber in particular I think is the entity for the most part,

14    possibly Hetero U.S.A. on the discreet issue on FDA

15    communications, but we're open to meeting and conferring to

16    the extent that Camber will agree to accept a notice based on

17    them telling us which topics they can also address, and, you

18    know, I would assume that that should be a smooth issue to

19    address.  If there's any, you know, dispute, we can probably

20    discuss it later.

21         But this is just a question of Camber saying, hey,

22    we'll tell you, for example, about the sales numbers in the

23    U.S. I think, if it gets to that type of question, and if they

24    have better data and they'll work with us transparently.  We

25    have no problem with getting the best data possible.

```
 1            JUDGE SCHNEIDER:  Sounds good to me.  I'll let you
 2   work it out.
 3            MR. SLATER:  Thank you.
 4            JUDGE SCHNEIDER:  Torrent.  Exhibit 11.
 5            MS. BRANCATO:  Good morning, Your Honor, this is
 6   Alexia Brancato from Kirkland and Ellis on behalf of Torrent,
 7   and at this time, Your Honor -- I'm sorry.  Go ahead.
 8            JUDGE SCHNEIDER:  Did I hear you correctly?  You
 9   broke up a little bit.  Did you say, there's no other issues
10   for Torrent to address?
11            MS. BRANCATO:  Correct, Your Honor.
12            JUDGE SCHNEIDER:  Well, that's delightful to hear.
13            Exhibit 12, Mylan.
14            MR. REEFER:  Good afternoon, Judge.  This is Jason
15   Reefer for Mylan.  There's no Mylan specific issues remaining
16   to be decided today.  I just want to mention, just for the
17   record, that Mylan and plaintiffs' side, Mr. Slater, have had
18   productive discussions.  We are expecting a slightly modified
19   notice, if not reflected in the exhibits provided to the Court
20   last evening, based on further discussions since then, but
21   nothing to discuss with respect to Mylan at this time.
22            MR. SLATER:  And that's confirmed, Your Honor.  I
23   agreed to put in some phrasing which I think may even mimic
24   some of the things that we agreed to today.  So that's not
25   going to be an issue.
```

1          JUDGE SCHNEIDER:  Terrific.  Exhibit 13, Teva.

2          MR. HARKINS:  Your Honor, this is Steve Harkins from

3     Greenburg Traurig for the Teva defendants.  We have not had a

4     chance to discuss some of our most recent redlines with

5     plaintiffs' counsel.  We were negotiating over the weekend.

6          There are a few specific issues that we can raise at

7     this time, mostly related just to modifications based on

8     Teva's status as a finished dose manufacturer as opposed to an

9     API manufacturer and I'm happy to walk through those quickly

10    if you'd like to.

11         JUDGE SCHNEIDER:  Let's do it.

12         MR. HARKINS:  So the first issue is with respect to

13    Request No. 8 and 9, and in the redline that we sent

14    Mr. Slater over the weekend, we had asked to strike these two

15    requests.  Specifically, just because of the language used

16    here referring to any entity or person other than Teva or its

17    agents but known to Teva.

18         And I'll specifically refer to the preceding

19    requests, Nos. 1 and 2 and 5 and 6, where we have no objection

20    to providing someone to testify on Teva's understanding of the

21    cause of the contamination of the API and to the testing

22    performed by Teva or its agents to evaluate the purity and

23    contents of ZHP's API.  Specifically, our language is just --

24    our objection is just to this language which we're not quite

25    clear what to do with on Teva's knowledge as to testing that

1    might be performed or evaluations performed by other than Teva

2    or its agents.  So those are two requests that we would ask to

3    strike.

4         JUDGE SCHNEIDER:  But let me give you a hypothetical.

5    Suppose Teva has knowledge that one of its customers is

6    testing its product, it knows about the results of that

7    product, but that customer is not an agent.  It's hard to

8    contest that that information wouldn't be relevant.  Isn't

9    that what plaintiffs are getting at?  So why wouldn't this be

10   relevant?  If the company doesn't have that information,

11   that's fine, that's all they have to say.  But if they do have

12   that information, why should it be off limits for discovery

13   purposes?

14        MR. HARKINS:  Your Honor, to the extent it's in the

15   possession and knowledge of Teva or its agents, we believe

16   that would be covered by the first two requests in this

17   section under that hypothetical.

18        JUDGE SCHNEIDER:  I don't see the harm in keeping

19   this in, Counsel.  We all know what the standard for a

20   30(b)(6) witness is.  It's information that the company has,

21   and that's all this request asks for.  It doesn't ask the

22   company to do an independent investigation to answer a general

23   question.  It's only asking for information the company

24   already knows, so it stays in.

25        MR. HARKINS:  Understood, Your Honor.  The next

1    section which we have an ongoing objection to, is Request No.

2    19 through 25.  And it may simply be that this is something

3    that the parties could resolve as a result of continued

4    negotiations.  These requests refer to evaluation of Teva's

5    solvents used during the finished dose manufacturing process

6    and testing on solvents utilized in Teva's finished dose

7    manufacturing process.

8         So we would ask that this be limited, in that while

9    the solvents at issue relate to the API manufacturing process,

10   there's no relationship between the alleged contamination and

11   any of Teva's solvents utilized in Teva's finished dose

12   manufacturing process, and similarly, the finished dose

13   manufacturing processes, which are unrelated to testing.

14   Again, we acknowledge that testing of the incoming API and

15   testing on Teva's finished dose, that might have demonstrated

16   nitrosamines is relevant, but to the extent that these are

17   discussing testing, Teva would have done on its own solvents

18   or excipients that are not implicated in the formation of

19   nitrosamine, we think these requests are properly directed to

20   the API manufacturer and can be struck.

21        MR. SLATER:  Your Honor, if that's what the witness

22   says, then that's going to be a short section of the

23   deposition to say we didn't use solvents to manufacture the

24   finished dose, so we can cross that off the list.  But it's

25   certainly something we need to confirm and none of the other

1    finished dose manufacturers have objected to that request.

2              JUDGE SCHNEIDER:  I agree, because if the -- if the

3    company doesn't have this knowledge, that's all the witness

4    has to say.  And this topic, it goes to the whole 30(b)(6)

5    deposition, is not asking the company to do an independent

6    investigation to answer a question, it's only asking for

7    information that the company knows about.

8              So if it doesn't know about it, that's a simple

9    answer and that would be satisfactory.

10             So these topics stay in.

11             MR. HARKINS:  Your Honor, the final item we have here

12   is with respect to No. 32.  This process development section

13   covers a number of topics.  We have no objection subject to

14   some minor language modifications that I believe the parties

15   have agreed to on 33 through 38.

16             32, however, requests us to provide a witness on the

17   modifications with regard to the use of solvents and the

18   tetrazole ring formation step in the manufacturing process for

19   ZHP's API.  The remaining topics all cover the evaluation that

20   Teva would have performed in relation to that step and

21   knowledge of the risks of formation as a result of the

22   manufacturing processes, but the modifications and any

23   discussions or input that would have gone into the actual

24   decision to make those modifications is again properly

25   directed to the API manufacturer.

 1          MR. SLATER:  Again, Your Honor, this is the

 2    information they have, so this question goes directly to what

 3    is the relationship between those modifications to the

 4    process, which we all know ZHP has conceded, they say that's

 5    why the -- why the contamination started, although we've now

 6    proven through the documents it actually started much earlier

 7    with a prior process.

 8          But when they changed the process, that also was a

 9    cause, and we want to know what Teva knows about that.

10    Presumably, they went to ZHP and said, hey, dude, what

11    happened here, for lack of a legal way to describe it, and how

12    did this happen.  And to the extent ZHP provided information

13    to Teva or Teva got that information independently, for

14    example, from the FDA or another regulatory agency, we

15    certainly have a right to ask Teva about it.

16          JUDGE SCHNEIDER:  Agreed.  If the company has that

17    knowledge, it's a relevant area of inquiry, and if their

18    response is like the other topics we just dealt with, that it

19    doesn't have responsive information, that's a perfectly

20    sufficient answer.  So this topic stays in.

21          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

22    Just to clarify for the record.  ZHP has not conceded

23    anything, and Mr. Slater just stated that it has, so I just

24    want that to be clear for the record.

25          MR. HARKINS:  For Teva, that direction is understood.

1    We appreciate that and that takes care of all of the remaining

2    objections that we don't believe are occupied by the global

3    resolutions.

4            JUDGE SCHNEIDER:  Okay.  Great.  So I think we've

5    dealt with all the 30(b)(6) depositions.

6            Mr. Slater, can you get us the final notices without

7    date, and we'll memorialize it in a Court order to indicate

8    that these are Court-ordered topics and there shall be no

9    additional objections to them.

10            MR. SLATER:  Absolutely, Your Honor.  I will endeavor

11    to get them by tomorrow.  It might be tough, but I will tell

12    you no later than Monday.  Is that acceptable?

13            JUDGE SCHNEIDER:  Of course.  I said a week.

14            MR. SLATER:  Oh, I didn't even hear it.  Sorry, Your

15    Honor, your comment before about the sandwich, I started

16    thinking about food, so I lost track, sorry.

17            (Laughter.)

18            MR. SLATER:  Slicing the salami.

19            That's fine, Your Honor, we'll try to get it before

20    that, but thank you for the week.

21            JUDGE SCHNEIDER:  Okay.  No problem.  If you need

22    more time, just let us know.

23            I think another important area is the addendums, but

24    how about -- does anyone have an objection if we take a break

25    to let everyone stretch their legs and use their facilities

 1    and if they want to get a bite and then we'll come back and

 2    finish all this.

 3            MR. GOLDBERG:  That's great, Your Honor.

 4            JUDGE SCHNEIDER:  1:15 to 1:30, fine with me.  I'll

 5    let you decide.  If you need until 1:30, that's fine with me.

 6    I have all afternoon.

 7            Karen, are you okay.

 8            THE COURT REPORTER:  Yes, Judge.

 9            JUDGE SCHNEIDER:  Okay.  Let's reconvene at 1:30.

10    We'll deal with the addendum issue and any other issues we

11    need to deal with.

12            So we're adjourned as of now and we'll reconvene in

13    one hour.  Thank you, everybody.

14            RESPONSE:  Thank you, Your Honor.

15            (RECESS TAKEN; 12:33 p.m.)

16            (RECESS ENDED; 1:30 p.m.)

17            JUDGE SCHNEIDER:  Good afternoon, everybody.  This is

18    Judge Schneider.

19            We're back on the record in Valsartan.  I think the

20    issue that we're going to address is the addendums, the reason

21    for the call, similar to what we did with the 30(b)(6)

22    deposition objections.  Are there other general objections to

23    the -- let me start again.

24            Similar to what we did with the 30(b)(6) deposition

25    notice objections, are there general objections to the

1    addendums that cut across all of the documents so we can deal

2    with them upfront?

3              (Connection interference).

4              THE COURT:  Let me do this, let me hang up and call

5    back.

6              JUDGE SCHNEIDER:  Okay.  This is Judge Schneider.

7    Back on the record.  I think, Mr. Goldberg, you were about to

8    say something.

9              MR. GOLDBERG:  I was, Your Honor.  I was going to say

10   that again.  I think that there are some similarities between

11   the two addendums.  I think that in going through the Chinese

12   addendum may, you know, be beneficial in terms of the Indian

13   addendum, although I'm not as familiar with that addendum and

14   the specifics of the objections.  I do know that the Indian

15   addendum has a provision regarding any protocol that, you

16   know, we will discuss to some extent in the Chinese addendum,

17   but that may be a different issue with respect to the Indian

18   addendum.

19             But I think we can cover some of this by walking

20   through the Chinese addendum and then if there's anything left

21   for the Indian addendum, it may not be much.

22             JUDGE SCHNEIDER:  One of the things that concerns me

23   about the ZHP addendum is, I know there are issues particular

24   to China.  I'd like to keep those client-specific issues to

25   the end, but if Mr. Slater agrees, I'm happy to tackle ZHP

1    first.

2            MR. SLATER:  Your Honor, I'm fine with that.  Only

3    because, ultimately, the Chinese addendum really is only for

4    ZHP anyway.  But I think it could go either way, but I'm fine

5    with starting as Mr. Goldberg had suggested.  I don't think

6    that will cause a delay.

7            JUDGE SCHNEIDER:  Okay.  Where's the best place to

8    look on these letters to --

9            MR. GOLDBERG:  Yes, Your Honor, in the letter that

10   defendants had, we picked up a discussion on the protocols on

11   Page 7 of the letter.  Exhibit G of the defendants' exhibits

12   is a chart that has the terms of the Chinese addendum, the

13   terms the defendants have proposed and the terms that

14   plaintiffs have proposed -- or the edits that plaintiffs have

15   proposed based on defendants' proposal.

16           So if Your Honor has -- okay.

17           JUDGE SCHNEIDER:  Go ahead, Mr. Goldberg.

18           MR. GOLDBERG:  Yes, I was going to say, just so Your

19   Honor knows, that we originally filed the draft addendum a few

20   weeks ago at ECF 604-2.  That original -- the terms of that

21   original addendum are set forth in this exhibit under

22   defendants' proposal.  We just thought this was an easier way

23   for Your Honor to see the differences between the parties.

24           JUDGE SCHNEIDER:  Terrific.  I have Exhibit G in

25   front of me, and why don't we just go down the issues one by

 1  one.

 2          MR. GOLDBERG:  Right.

 3          So the first issue where there's a difference, in the

 4  language the defendants have proposed we have -- in the

 5  underlying language, is language that we have proposed, that

 6  defendants -- plaintiffs would suggest to you to leave it.

 7  And this first volution seems to us to be -- this language to

 8  us has been necessary, it's necessary for this addendum to

 9  reflect the voluntary nature of the deposition.

10          Plaintiffs have not taken any steps to secure the

11  approval of the Chinese government to depose any witness in

12  China, either in person or by video, notwithstanding having

13  the core discovery documents since mid-July 2018 -- I'm sorry,

14  2019, and as a result, the only way a Chinese national can be

15  deposed in this action is if a Chinese national agrees to

16  leave China and go to another country to have the deposition

17  conducted.  And that agreement is necessary because were there

18  to be a deposition in China without government approval, the

19  Chinese witness and anybody participating in that deposition

20  would be subject to criminal penalties under China law.

21          So we think it's -- we think it's essential to this

22  addendum that the voluntary agreement of the witness be

23  acknowledged, and we have proposed that language --

24          JUDGE SCHNEIDER:  Let me ask you a question.  Let me

25  ask you a question.  Hypothetical, I don't know who plaintiff

1  wants to depose, but suppose they want to depose an officer or

2  director of ZHP.  That person is a resident of China, lives in

3  China.  Would the Court have authority to order that person to

4  appear for deposition and if it means that person has to go to

5  Hong Kong to be deposed, so be it.

6       So that deposition wouldn't be voluntary, it would be

7  Court-ordered.  So help me understand this.  If plaintiff

8  wants to take the deposition of a representative of a party

9  defendant who, in the ordinary course of things, has to be

10  produced in response to a notice of deposition, and if the

11  person has to fly someplace to be deposed, it's not voluntary,

12  is it?

13       MR. GOLDBERG:  Well, Your Honor, I think there are a

14  few different things at issue there.  In the -- in the case of

15  a Chinese national, the Court does not have jurisdiction over

16  a Chinese employee of ZHP.  So in that case, the Court would

17  not be able to order an employee of ZHP to be deposed in this

18  litigation.

19       The question -- so for those kind of fact witnesses,

20  the only way they can be deposed in this litigation is if they

21  agree to do so on a voluntary basis.

22       JUDGE SCHNEIDER:  Okay.  That's why -- you may be

23  right about that.  I don't know.  I'm not rendering an

24  opinion, but that's why in my hypothetical, I made it easy.

25  If plaintiff wants to depose an officer or director of the

1    company, if they serve that notice of deposition, plaintiffs

2    do, ZHP is a party defendant in the United States District

3    Court, don't they have an obligation to produce that witness

4    for deposition even if that witness has to fly to Hong Kong

5    and that wouldn't be voluntary.

6         So do we have two classes?  If a guy or gal is on the

7    production line, maybe, maybe not, they have to appear in

8    response to a notice of deposition.  So do we have two classes

9    of witnesses and might there be witnesses who have to appear

10    in response to the notice -- might there be witnesses who have

11    to appear in response to a notice whether they like it or not.

12         MR. GOLDBERG:  Your Honor, I think a -- I think you

13    have identified a possible distinction between the types of

14    deponents.  The -- I think with the individual fact witnesses,

15    it seems clear that this Court does not have jurisdiction over

16    a Chinese citizen to be a fact witness.  Whether it has

17    jurisdiction over ZHP, to order ZHP to have a 30(b)(6)

18    representative testify is a different question, and, you know,

19    it really gets to the jurisdiction of the Court over ZHP.

20         We have in Section A5 of this protocol, done what we

21    had done in the past, which is to add language preserving the

22    defense and the lack of personal jurisdiction.  And, you know,

23    the Court has not yet rendered an order that it has

24    established a personal jurisdiction over ZHP.  The parties

25    have not yet briefed it.  And as Judge Kugler mentioned

 1   earlier, the parties will not be briefing personal

 2   jurisdiction at this time.  So we preserve that defense.

 3          Our intention, of course, is to provide -- provide

 4   corporate testimony pursuant to the 30(b)(6) notice.  In fact,

 5   ZHP has agreed to provide -- ZHP is the only defendant that

 6   has agreed to provide --

 7          (Connection interference.)

 8          JUDGE SCHNEIDER:  Maybe Mr. Goldberg could hang up

 9   and call back in.  Maybe that will help.  That's what I did.

10          (Connection interference.)

11          MR. GOLDBERG:  So I was saying, Your Honor, ZHP

12   has -- intends to provide 30(b)(6) testimony as to all of the

13   topics.  The issue of jurisdiction hasn't been decided yet, so

14   -- and an argument could be made that the Court lacks personal

15   jurisdiction, either specific or general over ZHP, but that

16   argument, if -- Judge Kugler has said that no party is going

17   to be briefing that at this time.

18          But in going back to this addendum, our view is that

19   at this point, anybody who is going to testify, involved in

20   leaving the country would be doing so on a voluntary basis.

21   You know, we can consider whether there should be some

22   language as to the 30(b)(6) witnesses in particular, you know,

23   and I don't really know how to straddle that distinction in

24   this, especially without the jurisdictional issues having been

25   heard, but it's certainly the case that for the individual

 1    fact witnesses, their testimony would be on a voluntary basis.

 2            JUDGE SCHNEIDER:  One more question and then we'll

 3    turn it over to Mr. Slater.

 4            If the plaintiffs disagree with you and believe that

 5    jurisdiction is appropriate, if this language is included in

 6    the protocol, are you asking plaintiffs to concede the point?

 7    I mean, I suppose the plaintiffs wouldn't have an objection if

 8    it said something to the effect that ZHP is preserving its

 9    right to object to jurisdiction and ZHP believes it is

10    producing its witnesses voluntary.  But I suppose plaintiffs'

11    objection -- and we'll hear from Mr. Slater -- is that you're

12    asking plaintiffs to admit that when they may not admit it,

13    they may disagree with you.

14            MR. GOLDBERG:  Well, I think that that -- that

15    language, I think that language may be, you know, may be the

16    compromise between A.1 and A.5 which plaintiffs have not --

17    not objected to, and, in fact, they've accepted, if you look

18    on the next page of this chart at the top.

19            JUDGE SCHNEIDER:  Right.

20            MR. GOLDBERG:  They accepted this language.

21            JUDGE SCHNEIDER:  Right.

22            MR. GOLDBERG:  And they've acknowledged to the extent

23    otherwise preserved.

24            I think the most important piece of this, Judge, and

25    just stepping back for a moment, is the fact that this

1    addendum is more than just, you know, simple terms that affect

2    these litigants in this case, and, you know, giving -- given

3    the burden that these Chinese witnesses, whether 30(b)(6) or

4    individual, are going to have to endure, so to speak, in terms

5    of leaving their country, traveling to another country,

6    potentially during a global pandemic.  That what we're trying

7    to do with this addendum and what we think is reasonable to

8    do, is to provide the right safeguards that will allow these

9    witnesses to participate in this case with an understanding

10   that their rights are being safeguarded as well.

11           JUDGE SCHNEIDER:  Mr. Slater?

12           MR. SLATER:  Yes, Your Honor.  Thank you.  I would

13   like to give just sort of an overall general observation which

14   is I think that this issue doesn't even belong in the

15   addendum, and I think that there's been a little bit of

16   overlap between what this is, which our understanding is, like

17   the main protocol is that it's a functional document in terms

18   of the mechanics of how this is going to be accomplished.

19           There should be some sort of an order or a legal

20   brief or a place for the parties to editorialize their

21   positions on issues.  So I think that that's just my first

22   observation, which would simplify a lot of what we have here,

23   because it's not necessary to have that in the addendum.

24   That's a separate issue.  This is the addendum for if somebody

25   is deposed here, here's how it's going to work.  So I think

1   that can simplify things.

2           We have a couple concerns.  One, counsel during our

3   meet and confer, we said on this particular point, is there

4   any witness who we put in our initial group of priority

5   witnesses who is telling you they refuse to be deposed, and

6   the answer was, we don't know, and you're going to see, that's

7   going to be sort of a recurrent theme on a lot of the

8   provisions in here which are put in sort of as placeholders.

9   But there's obviously consequences to us agreeing to --

10          (Connection interference.)

11          MR. SLATER:  And we certainly as plaintiffs, do not

12  want to agree, as Your Honor enunciated, that anybody's

13  deposition is voluntary, certainly anybody who is a 30(b)(6)

14  witness and anyone who is a managing agent, an officer, a

15  director, executive, et cetera, would not be, quote unquote,

16  voluntary, and there -- you know, if counsel wants to set

17  aside the issue about lower level employees, we don't have to

18  argue that today.

19          So for those reasons, that's why we wanted to strike

20  this provision.  To some extent, we just left it in as plain

21  vanilla.  It governs the depositions of people who reside in

22  Mainland China, because that's what the addendum is for, as

23  opposed to having some editorialized comment about, you know,

24  whether a witness is doing so voluntarily.

25          If Your Honor is inclined towards your recommendation

1    to have the language saying, this is the ZHP position, you

2    know, then we know we'd obviously have to have language that

3    says the plaintiffs disagree and dispute this and the issue is

4    not determined by this addendum in any way.

5         I suppose that would be an answer, but what we don't

6    want ultimately is issues like, you know, voluntary to hang

7    out there, because then what happens in February when one of

8    these depositions is supposed to happen and three days before

9    or two days before, we find out, oh, this person has chosen

10   not to be deposed and it's not going to go forward, and you

11   have no recourse.  So that was our, you know, our main

12   concerns on this.

13        So, you know, first suggestion -- suggestion would be

14   just to adopt our language which is neutral.

15        JUDGE SCHNEIDER:  Mr. Goldberg, I can't ask

16   plaintiffs to include language making an admission that they

17   disagree with.  Plaintiffs disagree that it's voluntary.  I

18   can't ask plaintiffs to give up that argument.  I mean, I

19   suppose if you want a legal determination, it would require a

20   motion and briefing.

21        MR. GOLDBERG:  Your Honor.

22        JUDGE SCHNEIDER:  Then it's an admission that

23   plaintiffs don't want to make.

24        MR. GOLDBERG:  Your Honor, you know, the point is

25   that it is voluntary, and whether that -- these ten words are

1    in there or not, won't change the legal issue, you know.  The

2    fact of the matter is, that at a minimum, the fact witnesses

3    who choose to be deposed in this case are doing just that, and

4    the important part is that the Court acknowledges that these

5    plaintiffs are voluntarily participating in this case if they

6    choose to be deposed and provide, you know, the requisite

7    safeguard for their participation.

8         JUDGE SCHNEIDER:  Mr. Goldberg, I can't make that

9    determination in a vacuum.  I don't know who -- hold on.  I

10   don't know -- hold on.  Let's put this issue to bed.

11        The Court's position is, if the plaintiff wants to

12   include language that ZHP takes the position that the

13   appearance is voluntary, that's fine, and plaintiffs disagree,

14   and I'm not going to ask or order the plaintiffs to make an

15   admission that they don't agree with, and I'm not going to

16   make a legal determination about whether a particular witness

17   is voluntary or not, without knowing who the witness is, what

18   their position is, et cetera, et cetera.

19        So that's the Court's ruling.  If ZHP wants to

20   include language that it takes the position that it's

21   voluntary, that's fine.  After that, the plaintiffs disagree

22   on that, that's the -- that's my ruling.  Next.

23        MR. GOLDBERG:  Understood.

24        So the next provision that the parties have a dispute

25   on is -- and they kind of go together in a way are A3 and A4

 1     and this may have -- well, I think the Indian issue is a

 2     little bit different, but we have proposed language that in

 3     these depositions of Chinese nationals, it's not just the

 4     Federal Rules of Civil Procedure or the Federal Rules of

 5     Evidence and the New Jersey rules that apply.

 6              Certainly those rules govern the conduct of the -- of

 7     counsel, and those rules are applicable to the testimony and

 8     how it would be used, but there are other laws at play in

 9     terms of these depositions.  Had plaintiff chosen to, they

10     could have, through The Hague Convention, filed a letter of

11     request and under Chinese Civil Procedure Law, sought a

12     deposition of a Chinese national.  The Chinese nationals

13     are -- and this is particularly important, and it really is,

14     you know, a discussion in and of itself.  But it is

15     particularly important that this addendum acknowledge that the

16     Chinese witnesses are subject to Chinese privacy and state

17     secret laws, and we think it's absolutely essential that this

18     addendum make clear that the Chinese witness be able to assert

19     an objection under Chinese State Secret Law, or I'd be happy

20     to expound on that, Your Honor, if it would be helpful, you

21     know, in sort of where we are in terms of this litigation with

22     the Chinese state secret issues.  But, you know, and maybe --

23     maybe remind the Court where we were on this issue back in

24     December.

25              But in December of 2019, when Your Honor was ruling

 1    on the macro issues and on the scope of discovery, at the

 2    hearing on December 18th, Your Honor was very clear that the

 3    state secret concern -- that the state secret concern is a

 4    very important concern in this case, and that at the

 5    appropriate time, we would handle the state secret issues.

 6          I don't think we're at that appropriate time yet,

 7    because there hasn't been testimony about a state secret.  But

 8    what we want to do is preserve their right, that should

 9    plaintiffs ask a question at a deposition that could elicit

10    state secret testimony, and we think it's very unlikely and

11    again, I can expound on some of the nuances of the state

12    secret law.  I just don't know how deep Your Honor wants to go

13    into that right now, but I'm happy to.

14          But what we would like to do is be able to preserve

15    the right for the witness to assert a state secret objection

16    which could then be heard just like a privilege objection by

17    Your Honor, and that's why I've have incorporated these laws

18    into these provisions.

19          JUDGE SCHNEIDER:  Mr. Goldberg, here's a thought that

20    occurs to me.  I understand your position perfectly, but I

21    think you're asking for inclusion of language as an admission

22    that plaintiffs don't want to make.  What I would suggest we

23    do to put this issue to bed is, one, to get the protocol done,

24    you can just say same as last paragraph, ZHP's position is

25    such and such, plaintiffs disagree.  Why don't -- at the end

1     of this process, we're going to have a list of issues that are

2     going to be disputed.

3          One is to what extent does the Chinese State Secret

4     blah, blah, blah, apply to these depositions.  Let's tee that

5     up in a motion and before the depositions are taken, let's get

6     those issues decided so that when you eventually take these

7     depositions, it can go relatively smoothly.

8          But what occurs to me is, these issues are very, very

9     complicated.  If plaintiff concedes the point, great, no

10    problem.  I doubt that's going to happen, and the Court is not

11    prepared to make a legal determination at this time without

12    the benefit of hearing the party's positions on this.

13         Whoever -- if you're not speaking, could you put your

14    phone on mute, please.  There's a lot of background noise.

15    Someone is doing the dishes, I think.  Thank you.

16         So, Mr. Goldberg, what about if at the end of when we

17    get through these -- all these points, I mean, this would be a

18    perfect example of something to tee up in a motion.  To what

19    extent does the Chinese State Secret law operate to be

20    applicable to these depositions, and what may or may not be

21    asserted.  You've got --

22         MR. GOLDBERG:  Your Honor, I don't think that's a --

23    I think that approach could work.  I mean, I think, in fact,

24    you know, right now, there's neither a motion to compel the

25    testimony or a motion for protective order on the State Secret

1    issue.

2          The time really is if somebody were to be asked a

3    question that would elicit the testimony.  But I'm open to

4    trying to brief the issue before the depositions get started.

5    You know, I -- and, you know, I think the important thing is,

6    I guess if Your Honor were to make a ruling that a witness

7    could assert a State Secret objection, that could then be

8    resolved by the Court, you know, they would need --

9          JUDGE SCHNEIDER:  Does plaintiff agree to that?  If

10   plaintiff agrees to that, I'm perfectly fine with that.  If

11   Mr. Slater agrees to that, just like a normal privilege

12   objection, that would be fine.

13         Mr. Slater, what do you say?

14         MR. SLATER:  The ask is to have us agree that in real

15   time, we could get down a line of questioning and have a

16   lawyer from China standing in the deposition room directing

17   the witness not to answer questions.  I think that's probably

18   not a good idea because of the issues with timing and cost and

19   everything else we're talking about with these depositions.

20   You know, the law, we said in the *Schindler Elevator Corp.*

21   case is very clear that the burden is on ZHP or any foreign

22   entity to show that these foreign laws are production and I

23   think Your Honor's inclination to tee this up, we would prefer

24   to have it teed up in December and have it disposed of because

25   we need to have it out of the way.  It's just -- I think it

1   would be much too disruptive to have that happen in the middle

2   of a deposition.

3          And I can tell you, Your Honor, for context, we asked

4   Mr. Goldberg and his team during the meet and confer a

5   specific question.  We said, well, is there any Chinese

6   privacy or State Secret issue implicated so far by any of the

7   issues as to which we've been taking discovery, or as to any

8   of the deposition topics, and the answer was, no, and, in

9   fact, there's not been one document either withheld or

10  redacted based on any such contention or any reliance on any

11  foreign law, for that matter.

12         So, you know, again, we were certainly not

13  comfortable just leaving it hanging out there because of the

14  difficulty that we'll face if it just pops up in real time.

15  Because as Your Honor just said, it's better to get these

16  things out of the way so the depositions go smoothly, much

17  like you've done with this Rule 34 requests in the past, much

18  as you've just done with the Rule 30(b)(6) notices, so that

19  the issues are all vetted, there's no more objections and now

20  we just go forward.

21         So we're certainly not going to agree to this

22  language being included because we don't think that ZHP will

23  ever be able to meet its burden to implicate Chinese law, and

24  for the reasons stated, we're very concerned leaving that out

25  there as some abstract threat of dropping in at some point in

 1   time later.

 2            MR. GOLDBERG:  Your Honor, this is Seth Goldberg

 3   again.

 4            JUDGE SCHNEIDER:  Last word, last word.

 5            MR. GOLDBERG:  Yeah, first of all, I -- Mr. Slater

 6   has mischaracterized what was discussed in the meet and

 7   confer.  ZHP is likely to provide the plaintiffs with a log of

 8   documents that are -- have been withheld for state secret.

 9   The time for that has not yet occurred, and we expect that any

10   announcement of such documents is going to be very, very

11   smooth relative to the overall production, and it raises the

12   very issue which Your Honor noted back in December, which is

13   that if there is a state secret issue, you should put it on a

14   privilege log or a state secret log and the Court will address

15   it when it's ripe.

16            The thing that -- unlike a document, if we're going

17   into depositions, we don't know what questions plaintiffs are

18   going to ask, but if plaintiffs ask a question that somehow

19   involved the Chinese government and we've identified these in

20   our brief, that we think would fall within the state secret

21   rule, the plaintiff, the witness should not be subject to

22   criminal penalties, because they have to provide that

23   testimony in the deposition.

24            We think that is an exceedingly narrow area, so much

25   so that I expect that if we produce a log with state secret

1    documents, it will be less than one percent of the overall

2    production, but it -- given that narrowness, there would be no

3    burden for having a Chinese lawyer present at the deposition

4    to assist us in providing counsel to the witness.

5           But we can raise that issue in a brief before the

6    depositions or during the depositions.

7           JUDGE SCHNEIDER:  Yeah, it may be that a specific

8    answer can't be given until we know what the specific question

9    is, but we might be able to give guidance on what is a state

10   secret and who can assert it.  I think we have to tee it up in

11   a motion.  It's a complicated issue, Chinese State Secret

12   laws, so I can't make a ruling without knowing what the law

13   is.

14          So I'm not going to ask plaintiffs to make an

15   admission they don't agree to.  If you want to say, this is

16   your -- ZHP's position, great, and plaintiffs disagree with

17   it, but at the end of -- when we get through all these issues,

18   we'll probably have a list of legal issues that we may be able

19   to give guidance on and a motion should be filed and we'll do

20   the best we can to give guidance on it.

21          One issue would be the State Secret, I guess -- I

22   don't know if there's going to be an issue about whether The

23   Hague applies, but we can add that to the list, and I think

24   it's better to try and get some direction before the deps,

25   rather than kicking the can down the road and -- you know,

1    these depositions are going to be hard enough.  To run into

2    all these problems at a deposition would be incredibly

3    unwieldy.

4         So I'd like to see if we could give some direction to

5    the parties before the deposition that would make things go a

6    bit smoother.  One way to do that is to tee up some of these

7    legal issues in a motion.

8         So let's go through the list and at the end of the

9    list, we'll have the list of the issues and we'll decide who's

10   going to file the motion or not.

11        MR. GOLDBERG:  That makes sense, Your Honor.  I think

12   that makes a lot of sense.

13        I think in light of that, I'm just looking at -- if

14   we can jump down.  I think we can -- on these legal issues, I

15   think we can now skip to T10, which has to do with the

16   location of the depositions.  And now I guess we're on more of

17   these practical terms now.

18        Our language -- the defendants' language -- and

19   defendants have proposed that the Chinese nationals be deposed

20   in Hong Kong, which is by and large the general practice of

21   deposing Chinese nationals is to do their depositions in Hong

22   Kong for a number of reasons.  One, you know, of many

23   countries that are, you know, that will accept Chinese

24   nationals, Hong Kong has -- is the most permissive or the

25   least restrictive with respect to travel permits.  The Chinese

1    national can come in and out.  They don't need a visa.  What

2    they do is they get what's called a Hong Kong travel permit.

3    Two, it's relatively close, although it's still quite a trip.

4    It's a ten-hour trip from ZHP's facilities.  They have to take

5    a train to Shanghai and fly to Hong Kong and it's a ten-hour

6    trip in total, and that's just to be -- just to take a

7    videoconference.

8          So we have proposed Hong Kong, and plaintiffs, they

9    haven't objected to Hong Kong, but what they have proposed is

10   adding language that we should try to choose a -- we should

11   try to use a location that causes the least difficulties with

12   the differences in time zone.  Of course, Hong Kong is 12

13   hours ahead, plaintiffs' counsel presumably are going to be

14   taking depositions from the U.S.

15         There's -- plaintiffs have not proposed an

16   alternative location that is as easy for the witnesses to

17   enter, that is within, you know, a reasonable travel time,

18   and, you know, of course we have the COVID restrictions to

19   contend with as well.

20         Right now, Chinese nationals probably can't get into

21   most countries around the world.

22         JUDGE SCHNEIDER:  Mr. Slater?

23         MR. SLATER:  Thank you, Your Honor.  I think that the

24   -- that this issue really ties together with the issues just a

25   little further down on the chart that counsel provided you.

1   And if you look at the C12 issue with our proposed language on

2   behalf of the plaintiffs, I think that the two go together in

3   this sense.  We were very concerned about all of the

4   difficulties we were hearing, and there are practical

5   difficulties with deposing witnesses in Hong Kong, especially

6   where it's not reasonable to assume that people will be

7   traveling there from the United States.  I don't even think

8   you can at this point, that's what I was told by somebody last

9   week.

10          But to be able to work out the language that we

11  propose in C12, it gives us, I think, more of what counsel

12  referred to in their brief as the flexibility and you'll see

13  we actually use that term, flexibility and compromise, and

14  this is what I'm talking about.

15          If the deposition starts at 9:00 a.m. in Hong Kong,

16  that's 9:00 p.m. on the east coast.  To do the deposition in

17  one sitting would be difficult for anybody other than a

18  long-haul truck driver or a late night DJ.

19          It would be rough and probably not reasonable and it

20  wouldn't be reasonable to flip the times and start at

21  9:00 p.m. in Hong Kong and ask a witness to do that overnight.

22  But what we suggested to the defense and it sounds like we

23  have agreement on the concept, is to break up the depositions,

24  for witnesses deposed by video in Hong Kong, so that they can

25  be done in chunks to allow the depositions to be conducted

1    with people not taking the questioning in the middle of the

2    night.

3            And, you know, so that's where we think we're

4    ultimately going to get to, and we think that's a reasonable

5    method to accomplish the depositions, taking into account the

6    distance and the time zone differences.

7            The language that we asked to have included, I don't

8    think should be controversial.  If we agree to another

9    location that maybe more convenient, that's wonderful.  If we

10   can try to do it and try to find a more convenient location as

11   time goes forward, I would think that would be something we

12   would endeavor to do.  I can say for the record, plaintiffs

13   certainly don't expect the Chinese nationals, who are deposed

14   pursuant to this protocol, those that, you know, that may have

15   the discretion to agree or not agree to be deposed in certain

16   locations, because I don't want to waive our position that

17   they were produced and that we can compel --

18           (Connection interference.)

19           MR. SLATER:  -- they can't because of COVID,

20   understood, and if we can do these depositions in smaller

21   chunks through Hong Kong, then that probably alleviates most

22   of our or all of our concerns because then we're dealing with

23   the reasonable fact that some people are going to need a break

24   from depositions at midnight or so and move to the next day.

25           So I hope that's helpful, because I think that

1    that's -- we really worked hard on our side certainly and I

2    think that ZHP has agreed to the concept.  We can't agree on a

3    number of hours for each block.  I'm not sure that that needs

4    to be agreed today or put in the addendum.  I think

5    reasonableness should guide both sides, but, you know,

6    hopefully, that gives the Court a little bit more of a wider

7    view of what we're dealing with, and hopefully, a good look at

8    what we think is a good solution to what looked like a very

9    difficult problem with the time zone difference.

10              JUDGE SCHNEIDER:  Let me --

11              MR. GOLDBERG:  Your Honor.

12              JUDGE SCHNEIDER:  Let me just finish, Mr. Goldberg.

13   I think we should go with the defendants' proposal and not

14   include the additional language that plaintiffs want.  I have

15   a feeling that as time goes on and we know who's going to be

16   deposed, you'll be able to work out these issues, but in order

17   to move this along, I think it's premature to make a ruling as

18   to whether to break up a deposition, whether to do the

19   deposition in the Philippines or some other place.  Hong Kong

20   is the default setting.  If the parties agree to do it in

21   another place, that's fine.

22              Plaintiffs, you can file an application for good

23   cause showing why a deposition shouldn't be in Hong Kong or

24   why there should be two sessions instead of one session, but

25   we have to move this along, and prima facie defendants'

```
 1   language is appropriate and reasonable and we'll go with it.
 2           MR. SLATER:  I'll add a caveat to that.  I'm sorry,
 3   Your Honor, one caveat.  The agreed-to-be-deposed language is
 4   still in that provision, so I would ask that that be removed
 5   or held by, you know, biding the time when Your Honor rules on
 6   that issue, if it actually gets briefed.
 7           JUDGE SCHNEIDER:  That's right, because we don't want
 8   to make that admission.  Residing in Mainland China who is
 9   deposed in this action, blah, blah, blah.  Let's do it that
10   way, Mr. Goldberg, okay?
11           MR. GOLDBERG:  That's fair.
12           JUDGE SCHNEIDER:  Okay.  Next issue.
13           MR. GOLDBERG:  So the next issue is about cost, and I
14   think we'll -- I think what you wanted to do, we had proposed
15   that the parties should split the cost of these depositions,
16   the travel time, for the witnesses.  Defendants will -- will
17   agree to bear a cost for a reasonable number of depositions
18   and we think we're going to have a reasonable number in this
19   case, but we just wanted to, you know, preserve the point that
20   we may come back to the Court to ask for costs if the number
21   becomes unreasonable.
22           JUDGE SCHNEIDER:  Mr. Goldberg, I think it's
23   appropriate that you preserve your right to apply for costs.
24   I don't think it's appropriate to include a provision unless
25   the plaintiffs agree that they're going to share the costs.
```

 1    When and if the time comes that you make your application,

 2    we'll deal with it.

 3            MR. GOLDBERG:  Thank you, Your Honor.

 4            So the next point is about the length of the

 5    deposition, and our proposal was that the deposition be seven

 6    hours, it would be in accordance with Hong Kong time or really

 7    the time where the witness is located, but we expect as Your

 8    Honor pointed -- pointed out, that Hong Kong would be the

 9    default, and that the deposition would be conducted, you know,

10    over the course of a seven-hour day, but beginning Hong Kong

11    time, and there could be, you know, the question increased the

12    time if there are technical problems from the videoconference

13    connectivity, which we expect there may be, or other technical

14    problems due to the Zoom or due to whatever technology the

15    parties are going to use.

16            You know, we had proposed, and we'll certainly

17    discuss with plaintiffs the possibility of having, you know,

18    instead of a seven-hour day of 9:00 a.m. until 6:00 p.m. Hong

19    Kong time, you know, two consecutive five-hour days starting

20    at 7:00 a.m. Hong Kong time, so that lawyers in the U.S. can

21    be taking the deposition in the evening U.S. time.

22            So we're happy to try to work that out with

23    plaintiffs, but we would propose our language be in the

24    protocol subject to agreement on that kind of two-day

25    five-hour block session.

1          JUDGE SCHNEIDER:  Didn't we already address this

2     issue, about the length of depositions, and there was a

3     dispute as to whether it should be increased by 50 percent or

4     75 percent, if there's -- and the Court ruled 75 percent?

5          MR. GOLDBERG:  Yeah, that's a little bit of a

6     different issue.  I mean, this is really talking about the

7     length of the deposition before you add on the translation

8     time.

9          JUDGE SCHNEIDER:  Oh, seven hours.

10         MR. GOLDBERG:  Right.  And this is just proposing

11    that that seven hours start as provided under the federal

12    rules at the time zone in the location where the witness

13    resides.  So we can discuss -- I don't think Your Honor needs

14    to rule on C12 at this point.  I think we can discuss this

15    with plaintiffs if they would like to, you know, continue the

16    discussion about the time of the depositions.

17         JUDGE SCHNEIDER:  Okay.  Fine with me.

18         MR. GOLDBERG:  The next issue, I think this really

19    ties in with C15 to some degree, and it has to do with the

20    number of times a Chinese witness would be expected to travel

21    from China to Hong Kong for a deposition, and, you know, we

22    think that there should only be one -- that the plaintiff

23    should be limited to -- absent good cause, that the

24    expectation should be that a witness will only travel to Hong

25    Kong one time.

```
 1          JUDGE SCHNEIDER:  Isn't that implicit, though?  Do we
 2  have to say that explicitly?  Isn't it the general practice --
 3  in fact, I think there's a federal rule on this, that says you
 4  can't depose a witness a second time and you have to apply to
 5  the Court for approval.  Why do we have to put this in there?
 6  I mean, hypothetically, suppose the witness gets sick and has
 7  to leave early, he'll come back a second day.
 8          The way the language is written now, he doesn't -- he
 9  or she doesn't come back, but I know there's a federal rule on
10  this that says a person could only be deposed once without
11  leave of Court.
12          So --
13          MR. GOLDBERG:  Okay, that's --
14          JUDGE SCHNEIDER:  Why do we need something in there?
15          MR. GOLDBERG:  We can -- we can live with that, you
16  know, understanding, Your Honor.
17          JUDGE SCHNEIDER:  It would be up to -- if the
18  plaintiff wants to depose, it would be up to the plaintiff to
19  make an application.
20          MR. GOLDBERG:  Right.
21          So if we could go down to C15, that's really the next
22  big issue and I think this is an important issue.  This really
23  ties into what Judge Kugler was saying at the beginning of the
24  day, which is, of course, the COVID-19 has impacted everyone
25  around the world.  There are -- of course, due to the surge,
```

1   we're seeing the kinds of shutdowns and quarantines that we

2   saw earlier this year, and that's occurring in China again,

3   both intra-China.  So now intra-China just like in the U.S.,

4   it's harder to travel around China due to COVID.  They had

5   relaxed intra-China travel over the summer, but just like us,

6   those restrictions are going back up.

7          But more importantly, Chinese nationals, right now,

8   were we to have these depositions, a Chinese national

9   traveling to Hong Kong would have to quarantine for 14 days in

10  Hong Kong and 14 days upon their return to China.  So a total

11  of 28 days of quarantine for the deposition.  And, you know,

12  we think there's plenty of support for the notion that Courts

13  can be flexible in terms of scheduling with respect to

14  COVID-19.

15         This Court has already been very clear that, you

16  know, it will be and it acknowledges that COVID-19 is good

17  cause for making changes to the schedule.

18         But I thought, you know, it's important to point out

19  here that -- and this gets to some of the things we discussed

20  about the number of witnesses and who will be deposed and

21  we'll be discussing this more with plaintiffs.  But plaintiffs

22  have proposed that 15 Chinese witnesses be deposed in their

23  individual fact witness capacity, and, in our view, we think

24  we could designate five or -- five to seven of those witnesses

25  to cover the entire ZHP 30(b)(6) notice.

1            And our proposal or our thinking would be that those

2  30(b)(6) witnesses would not be deposed until the COVID-19

3  travel restrictions have been lifted, because it seems to be

4  unfair to expect Chinese nationals, even as 30(b)(6)

5  witnesses, to travel to Hong Kong during the global pandemic,

6  to be out of work for 28 days, to run the risk of contracting

7  COVID-19 or to transmitting it to their family members, and we

8  don't see any real urgency.

9            Now, of course, this is not -- this is not to delay

10  the deposition, but if these depositions of these five to

11  seven witnesses needed to wait a few months until the COVID-19

12  restrictions are lifted or relaxed in a material way, you

13  know, we think that that makes a lot of sense, especially

14  given that counsel wouldn't, as they said, they wouldn't

15  travel to a different country under these circumstances, and I

16  don't see how this Court should expect witnesses to do -- to

17  travel under these conditions.

18            JUDGE SCHNEIDER: Mr. Goldberg, you and everyone else

19  in this case can be a hundred percent certain that this Court

20  will never put someone's health and safety at risk for a

21  deposition in the case.

22            That goes for everybody.  If we put this language in

23  there, it just invites fights and troubles.  We don't even

24  know who's going to be deposed and when.

25            Why don't we wait to see if there's going to be a

1  problem in the future and we'll deal with it.  Simple as that.

2  When plaintiff finally decides who they want to depose, if

3  there's this quarantine situation in China, 14 days plus 14

4  days, we'll deal with it.  But to put that in right now is

5  just -- it's just buying trouble.  It's inevitably going to

6  lead to a fight when there may not be a need to do it.

7       So my ruling is, let's not put that language in

8  there, but rest assured, that if someone's health or safety or

9  welfare is at risk, they're not going to be deposed.  Simple

10 as that.

11      That goes for everybody.

12      MR. GOLDBERG:  That's fair, Your Honor.  That should

13 -- I appreciate that.

14      JUDGE SCHNEIDER:  It's on the record.  Yeah, I mean,

15 there's no way, there's zero chance that this Court is going

16 to put anyone's health and safety and welfare at risk for

17 deposition.  It just won't happen.

18      But let's avoid a fight now and see down the road if

19 we're going to have an issue with it.

20      That's what I would say.  Any other issues?

21      MR. GOLDBERG:  I'm just looking at the -- I'm looking

22 at the chart.  The next issue, 16 I think is covered under the

23 legal issue, would be part of the legal issues with regard to

24 the laws of the other country.

25      Same with D17.

```
 1          D18 is an important issue.  I just wanted to alert
 2   the Court to it because it falls --
 3          JUDGE SCHNEIDER:  Leave it in.  Leave it in, Mr.
 4   Goldberg.  That's perfectly reasonable.
 5          MR. GOLDBERG:  Thank you, Your Honor.
 6          And C19 is a particularly sensitive issue, one that,
 7   you know, we're sensitive about raising, and it's also raised
 8   in the Indian addendum.  We think it should be beyond question
 9   that there should be no disparagement regarding Chinese or
10   Indian or any other countries' heritage or culture or
11   government, and we think it's important to have this
12   explicitly in.
13          We all know how depositions can get heated at times.
14   We all know, you know, that there are possibilities for saying
15   things that could cross the line regrettably.  That's happened
16   a few times in this case already, and what we don't want is to
17   have any kind of comment disrupt the testimony.  And it could
18   be, you know -- it should just be explicit that Chinese
19   heritage, culture, traditions, the witness's fluency in
20   English, you know, should really be off limits, and we don't
21   think this is a controversial position.  This is something
22   that all parties should agree to.
23          JUDGE SCHNEIDER:  Is this really going to be an issue
24   in this case?
25          MR. GOLDBERG:  You know, Your Honor, unfortunately, I
```

1    think it can be.  And remember, we live in a society here

2    where, you know, we've had our highest level, you know, make

3    some not very flattering comments about the Chinese, and

4    unfortunately, that does filter down, and we have had some

5    comments in this case already that would be deemed offensive

6    by the Chinese.

7            MR. SLATER:  Your Honor, since it was already

8    addressed in the -- I'm sorry, Your Honor.

9            JUDGE SCHNEIDER:  I was going to say, can we just

10   include something to the effect that all counsel shall -- all

11   counsel are expected to conduct themselves in a civil and

12   professional manner and, you know, they can make application

13   to the Court for appropriate -- I don't know, but --

14           MR. SLATER:  You know, Judge, it's already addressed

15   in the deposition protocol.  The main deposition protocol

16   already addresses the issue.

17           THE COURT:  Contains sort of this general civility --

18           MR. SLATER:  Yes, don't be offensive.  Yes, I don't

19   have it in front of me, but it has language to the effect of,

20   you know, don't say offensive, disparaging things.  I mean,

21   certainly, I think that covers it, and I don't know that we

22   have to go down the rabbit hole figuring out how someone's

23   fluency in English could be a reasonable thing to bring up.

24   Not in a disparaging way, but in a fact-based way.  So it's

25   just not necessary.

1          MR. GOLDBERG:  Your Honor, I don't see why it would

2     be controversial to have the specific language that counsel

3     shouldn't make comments regarding the Chinese government,

4     Chinese heritage, or Chinese culture or tradition which could

5     be very offensive if taken the wrong way.

6          There's no reason that any of these comments --

7     there's no reason to comment on any of this with a witness,

8     but, you know, because we're -- and it's, I think particularly

9     important given that we are going to be in a Zoom setting

10    where I may be in one place, my witness may be in another,

11    counsel may -- and for plaintiffs may be in another, and if a

12    statement is made, it's very hard to even, you know, work with

13    your witness to try to explain, you know, and try to, you

14    know, sort of do damage control and could be highly disruptive

15    to the deposition.

16         JUDGE SCHNEIDER:  Well, here's what I say.  I'm not

17    going to order that this language be included in the addendum,

18    but I am very confident that Judge Kugler and I are on the

19    same page, that it's completely unacceptable for anyone to act

20    uncivilly or unprofessional, and to fail to respect the

21    customs and practices of someone who may be from a foreign

22    country, and that the Court will have zero patience that -- if

23    anyone breaches this.  I don't think it's going to happen with

24    this case.

25         I'm not going to order this infringement on someone's

1    first amendment rights, but I think this is a nonissue.  It's

2    not going to happen, and there's already a provision,

3    according to Mr. Slater, that parties have to act civilly and

4    professionally.  But you can rest assured that if that does

5    occur, it will be addressed harshly.

6          There's absolutely no excuse for that on all sides.

7    I don't think it's going to happen, given that counsel in this

8    case, and I think we're just buying trouble if we include this

9    language in there.  So I'm not going to order it to be

10   included.

11         MR. GOLDBERG:  Thank you, Your Honor.  The last point

12   on this has to do with exhibits that might contain a foreign

13   language that would be potentially shown to a witness.

14         We had initially tried to have a process where the

15   parties would exchange those translated documents before the

16   deposition, so they could agree upon what the documents say.

17   And in particular, with the Chinese, just as with the

18   exhibits, and also at the deposition, the need to have two

19   translators.  There are often differences in how the Chinese

20   language is interpreted, and we think that it's important that

21   going into the deposition, the parties are on the same page as

22   to what a document that's written in a foreign language says

23   before the witness testifies about the document.

24         We tried to write that up in a certain way, which is

25   the language we proposed.  Plaintiffs had a different --

1    different proposal, which was that they could provide

2    translations to us or the counsel that would be -- deposing

3    counsel, and this is most likely plaintiffs, would provide the

4    translated -- could provide the translated documents if they

5    chose to before the deposition, but didn't have to, and, you

6    know, I appreciate the concern that plaintiffs have that they

7    don't want to share with defendants the depositions (sic) that

8    they intend to show the witness.  They don't want the witness

9    to be able to be prepared without that document, I understand

10   that.

11       The challenge here is that we don't want to use

12   deposition time to debate about the language in an exhibit.

13   And so, you know, we'd propose two alternatives.  We shared

14   one with -- we shared it with plaintiffs this morning,

15   although we haven't had a chance to discuss it.  Maybe we'll

16   get to agreement on this.

17       But what we propose is that either the parties

18   exchange these kinds of exhibits with enough time to resolve

19   any dispute, at least two days in advance of the deposition,

20   or that -- that the time that it takes to debate about these

21   issues at a deposition, if the documents had not been provided

22   beforehand should count as deposition time.

23       JUDGE SCHNEIDER:  Mr. Slater?

24       MR. SLATER:  Yes, Your Honor.  You know, for obvious

25   reasons, we can't agree to a provision requiring us to preview

1    the documents that we may use during the deposition, nor can

2    we can agree to a provision that requires us to go through a

3    process to agree to the translations prior to the deposition.

4    So our provision made that -- I mean, that we can choose to do

5    voluntarily in our -- you know, if we choose to do it, we can

6    do it.  If we choose not to, we can take the deposition and go

7    forward.

8            But it's unworkable to force us to preview every

9    foreign language document we're going to be using in a

10   deposition prior.  You know, for obvious reasons, we just

11   can't agree to something like that.  If they want to discuss a

12   little more of our language, we're fine with that, but, you

13   know, the language we were sent today essentially -- to

14   defense counsel during these hearings this morning, and I'm

15   reading this as requiring us to provide all documents we're

16   going to use in the deposition in advance if they have foreign

17   language in it, which, of course, we cannot agree to.

18           MR. GOLDBERG:  Your Honor.

19           JUDGE SCHNEIDER:  Go ahead.

20           MR. GOLDBERG:  I mean, the thing is, that if we don't

21   have agreement as to what the documents say, at least a few

22   days in advance, so that we can raise with the Court any

23   dispute about differing translations.  The testimony may not

24   be accurate, counsel for the witness may not be able to

25   properly provide counsel as to, you know, the deposition,

1    object if necessary.  We need to be able to understand what

2    the document says and how it's being interpreted.

3         And if there are differing translations, that's going

4    to be a problem for everyone.  And if counsel doesn't want to

5    share the documents with us ahead of time, then it should be

6    very clear that any time spent having to translate the

7    document during the deposition would be counted as deposition

8    time.

9         MR. SLATER:  Your Honor, there is no such provision

10   in the *Benicar* litigation which Your Honor is very familiar

11   with, where we deposed --

12         (Connection interference)

13         MR. SLATER:  I'm sure there's a bunch of people

14   hoping I won't be able to dial back in.  Should I do that

15   right now, Your Honor?

16         JUDGE SCHNEIDER:  I think that would be helpful.

17         MR. SLATER:  I will do it right now.

18         (Mr. Slater dials back into the call.)

19         MR. SLATER:  Hello, Your Honor, I'm back.  Is that

20   better for everybody?  I'll be short-winded.

21         In the *Benicar* litigation, we had no such provision,

22   we deposed 19 or 20 Japanese-speaking witnesses through

23   translators with actually no disputes and no problems.  So we

24   just intend to proceed as we did there.  This provision, for

25   all the reasons stated, would be unfair and prejudicial to

1    plaintiffs.

2         JUDGE SCHNEIDER:  I'm not going to order plaintiffs

3    to reveal its work product before the deposition.  We're going

4    to leave for another day and not include in the order a

5    provision about how to count time.  If it's a problem, you'll

6    deal with it.  The Court will deal with it at the appropriate

7    time, but I think it's an issue better left for the future.

8         It wasn't a problem in *Benicar*, it seemed to go

9    smoothly.  We certainly didn't go through this type of

10   argument when we did the protocol in that case.  I don't know

11   why we're doing it in this case, but be that as it may, I

12   think we're just buying trouble if we put the provision in

13   there now.

14        So the Court's ruling is, don't include it.

15        Next.

16        MR. SLATER:  Judge, that's the end of the Chinese --

17   the language addendum of the Chinese nationals.  I was going

18   to suggest that in light of the length of the hearing and the

19   detail with which we addressed the Chinese addendum, that

20   perhaps the parties can meet and confer further on the Indian

21   and the other addendum, with an eye towards trying to finalize

22   them all at the same time, if that is acceptable to the Court

23   and to the defense.

24        THE COURT:  It's acceptable to me if Mr. Goldberg

25   agrees.  I think our next call is the 13th, so we could put

1  the issue of the addendums on the agenda for the 13th.

2          MR. GOLDBERG:  That's fair, Your Honor.

3          JUDGE SCHNEIDER:  Hopefully, the issues if any are

4  left will be narrowed.

5          MR. SLATER:  Will that conclude the legal issues that

6  Your Honor wants to tee up at this point?

7          JUDGE SCHNEIDER:  Oh, good question.

8          Well, actually -- I'm sorry, I was in the wrong

9  month.  Actually, the next Valsartan call is December 9th, not

10 the -- I was in January.  December 9th is the next Valsartan

11 call.  So we'll tee it up for that.

12          Mr. Goldberg, apart from the State Secret issue, what

13 other issues do you think is appropriate to tee up in a

14 motion?  Do you want to tee up the number of depositions or

15 you'll work that out?  Are there Hague Convention issues,

16 anything else we need to deal with of a legal matter?

17          MR. SLATER:  I do think the number of depositions is

18 something that we all need to tee up and maybe we'll be able

19 to make progress in terms of meet and confers.  I think that

20 also goes with respect to the 30(b)(6) notice.

21          While, you know, Your Honor made progress in terms of

22 approving the topics, we haven't talked yet about how much

23 time would be allotted for the 30(b)(6) depositions, and

24 whether there should be limits on the time for those, given

25 the extensive number of topics and notices in these

```
 1   depositions.  So we would have that issue.

 2          I think that there are issues as to the applicability

 3   of The Hague Convention --

 4          JUDGE SCHNEIDER:  Okay.

 5          MR. GOLDBERG:  -- that defendants want to raise, that

 6   could be it.

 7          JUDGE SCHNEIDER:  Okay.

 8          MR. GOLDBERG:  I think December 9th may be ambitious.

 9          JUDGE SCHNEIDER:  No, I think that's too early, I

10   agree, that's too early.  What I was going to maybe think of

11   is December 23rd before Christmas to tee up all those issues

12   before -- in a motion filed before Christmas.

13          MR. GOLDBERG:  That makes sense to us, Your Honor.

14          MR. SLATER:  That makes sense.

15          JUDGE SCHNEIDER:  Yeah.

16          MR. SLATER:  Your Honor, one thing.

17          JUDGE SCHNEIDER:  Go ahead, Mr. Slater.

18          MR. SLATER:  I was just going to say, on the number

19   of -- the number of deponents, I think at the end,

20   Mr. Goldberg said that it may be premature.  I think it is,

21   and I know from my discussions with some of the defendants,

22   they didn't want to have that discussion because at this

23   point, there is no reason to believe we're going to have a

24   dispute on that, and we're certainly going to work

25   cooperatively to try to avoid that being an issue, for all the
```

     1    reasons that have been discussed for months.

     2          So I think that arguing over arbitrary limits will

     3    become very sticky and probably not necessary, since the

     4    numbers will be different, probably per defendant, and giving

     5    a bright line on that is probably work that we don't need to

     6    do.  I think we should wait and see if there's a problem and

     7    then address it then.

     8          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

     9    think that should be on the schedule for December 23rd.  It

    10    would incentivize the parties to reach an agreement, because,

    11    you know, we think it's important to have limits -- it's

    12    important for our clients to understand, you know, who's going

    13    to be deposed, when they're going to be deposed, and what the

    14    disruption to their business is going to be in terms of the

    15    number of depositions.

    16          JUDGE SCHNEIDER:  I agree with you, Mr. Goldberg.  If

    17    -- and I think it's important.  Plaintiff, if I'm picking a

    18    number out of the sky, I'm not ruling, of course, but, you

    19    know, if you know you have -- pick a number -- ten

    20    depositions, strategically, you're going to decide who to

    21    depose and who not to depose.  If you go into the process

    22    thinking you have an unlimited number, you may be prejudiced

    23    at the end of the day.

    24          So I think it's in everyone's best -- and with the

    25    proviso that if there's good cause, you'll get more, but I do

1    think there should be a presumptive limit.

2         MR. SLATER:  Well, there's a --

3         JUDGE SCHNEIDER:  Go ahead.

4         MR. SLATER:  I am very sorry, Your Honor, for the

5    delay, I didn't mean to talk over you.  I never want to do

6    that.

7         JUDGE SCHNEIDER:  No, no, I understand, it's

8    problematic on the phone.  Go ahead.

9         MR. SLATER:  I was going to say, that as a practical

10   matter, this can't be addressed December 23.  For example,

11   defendants --

12        (Call dropped)

13        MR. SLATER:  Because we won't even know the corporate

14   representatives until December 20 for the order, if we get the

15   order entered Monday, with the corporate rep notices.  It

16   pushes beyond that if the order is entered Wednesday, so I'm

17   just asking that we hold that issue in abeyance.

18        We are very aware, Your Honor, and I can state for

19   the record on behalf of the plaintiffs, we do not believe we

20   have unlimited depositions and we have stated on the record

21   many times that we are interested in trying to streamline the

22   number of depositions, but that starts with the 30(b)(6)s and

23   who's going to be produced and where.

24        JUDGE SCHNEIDER:  You raised good points, Mr. Slater.

25   Why don't we discuss this on December 9 and see where we are.

```
 1          MR. SLATER:  Okay.

 2          JUDGE SCHNEIDER:  Okay.  So the Court -- one question

 3   I had is, have you all started to talk about actually

 4   scheduling depositions, and where and when they're going to be

 5   taken, since I think the start date is what, January 19th or

 6   18th?

 7          MR. SLATER:  We have started to talk in obscure

 8   terms.  We have not made much progress other than some, you

 9   know, generalities.

10          Until we know who the 30(b)(6) witnesses are and the

11   defendants have told us and that we accept this, they wanted

12   to know what the topics were going to be so they could make

13   those decisions.  That's really the starting point and

14   everything will flow from that.

15          JUDGE SCHNEIDER:  Yeah, but again, that's fine, but

16   the low-hanging fruit is the class action plaintiffs, right?

17          MR. SLATER:  Oh, that's being worked through.  That's

18   not something I'm handling personally.  If someone wants to

19   chime in and explain.  But I know that dates are being

20   provided.

21          MR. GOLDBERG:  Your Honor, we have not received

22   dates.

23          JUDGE SCHNEIDER:  No problem.

24          MR. GOLDBERG:  We have not received dates for the

25   plaintiffs' representatives for the period January 15th
```

```
 1  through end of March.

 2          JUDGE SCHNEIDER:  Ouch.

 3          MR. GOLDBERG:  And we have asked for those dates and

 4  then once we have those, we can start to try to figure out how

 5  to slot the witnesses in.

 6          JUDGE SCHNEIDER:  You ought to start talking about

 7  it.

 8          MR. GOLDBERG:  Plaintiffs need to provide the dates.

 9          MR. SLATER:  Your Honor, we understand that, and as

10  you remember, we provided dates in November and December for

11  most of the corporate reps -- or most of the class

12  representatives, and that the defense didn't want to proceed.

13  So we now are going back and getting dates from everybody from

14  scratch and they will be provided very shortly.

15          JUDGE SCHNEIDER:  I suggest you get cracking on that.

16  Have you discussed, Mr. Slater, this will be in your

17  bailiwick, are there American witnesses who are going to be

18  deposed so we don't run into the translation and travel issues

19  with the foreign witnesses?

20          MR. SLATER:  That's a great question, Your Honor.  A

21  few of the defendants have told us in the meet-and-confer

22  process that they expect to produce witnesses in the United

23  States to address some topics, but they haven't determined

24  which or told us which yet, because they were waiting for the

25  notices.
```

1    We have asked over and over again to try to get those

2    discussions going.  I can tell you, for example, with ZHP,

3    there's not going to be a surprise to Your Honor on this.

4    We've asked multiple times and John Du, the designated

5    representative, because he's here in the United States and

6    presumably as an officer of ZHP would be knowledgeable about

7    many things and there's been no commitment to that and

8    obviously, there's no obligation to a commitment yet.  But

9    we've been asking and what we've been told is that the -- some

10    witnesses will be produced in the U.S.  Some of the defendants

11    have been more forthcoming than others about a commitment to

12    do so as much as possible, and some have basically said,

13    you'll have to wait and see.

14    So we started the discussions and we certainly would

15    hope that everybody is going to endeavor to name as many

16    corporate reps in the United States as possible because that

17    obviously benefits everybody.

18    MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

19    mean, you know, I really take issue with Mr. Slater's repeated

20    mischaracterizations of discussions that are happening in meet

21    and confers, and it's been done throughout this many-hour

22    session about ZHP.

23    We've had discussions, we've even put it in our

24    brief, Your Honor, that there are U.S. witnesses that can be

25    deposed, not necessarily 30(b)(6) witnesses for ZHP, as those

1    witnesses reside in China, but there are employees of the U.S.

2    entities which also received 30(b)(6) notices that can be

3    deposed in the U.S., and I think other defendants have

4    proposed U.S.-backed witnesses and/or U.S. 30(b)(6) witnesses.

5           In fact, from ZHP's standpoint, the 30(b)(6)

6    witnesses for ZHP, as we put in our brief, may number five to

7    seven witnesses, which -- it really shouldn't be an issue,

8    when they get deposed, plaintiffs can proceed with those

9    witnesses that are in the U.S., and there's been no -- there's

10   been no disagreement about that.

11          JUDGE SCHNEIDER:  Well, I would suggest the parties

12   start cracking on this discussion, because the depositions are

13   going to start on January 19th, and pursuant to the schedule

14   that Judge Kugler gave you this morning, let's see, I have my

15   notes here, all fact discovery and all issues including

16   general causation and class certification have to be done by

17   April 1, 2021.  That's not a whole lot of time.

18          So I think it's important for the parties to get

19   cracking on these issues about who's going to be deposed, when

20   and where.  I'll leave it in your very capable hands.

21          Anyway, I don't -- looking through my notes and I

22   went through the letters about the issues to be discussed, it

23   talks about -- there was an issue, two other issues I have

24   listed in plaintiffs' letter are ZHP production deficiencies

25   and wholesaler discovery.

 1           Mr. Slater, are there issues we need to deal with in

 2      that vein?

 3           MR. SLATER:  I'm going to hand off to Mr. Parekh who

 4      I think is going to handle our argument and potentially

 5      Ms. Hilton as well regarding the ZHP --

 6           (Connection interference.)

 7           MR. PAREKH:  Good afternoon, Your Honor, this is

 8      Behram Parekh.  The only issue that we're having with this

 9      particular item is the establishment inspection reports which

10      defendants have produced from the FDA, have a lot of

11      redactions, and we've just asked to be able to sit down with

12      defendants and try and figure out if we can determine, you

13      know, an agreed-to tooling for those redactions.  Some of them

14      from our side appear to be relatively obvious that we can fill

15      in, so that we don't waste time at depositions asking

16      witnesses those questions.  And defendants have just said

17      no -- or ZHP has said no at this point.

18           And we just wanted to reply this issue.  We're still

19      trying to meet and confer with ZHP on this issue and we'll be

20      meeting and conferring with other defendants as well, and

21      wanted to get your guidance on that.

22           JUDGE SCHNEIDER:  Can't you just subpoena the

23      unredacted documents from the FDA?

24           MR. PAREKH:  That does not appear to be something

25      that we can do.

```
 1          JUDGE SCHNEIDER:  Why not?

 2          MS. HILTON:  Your Honor, I can chime in on this.

 3   This is Layne Hilton.  I actually did subpoena one of -- or

 4   not subpoena, I FOIA'd -- through the Freedom of Information

 5   Act, one of the establishment inspection reports, specifically

 6   the August 2018 establishment inspection report.  And when it

 7   was produced to me, which of course pursuant to the Court's

 8   order, we then produced to defendants, it contained these

 9   redactions.

10          My understanding is that when the FDA produces

11   documents pursuant to FOIA requests, they are required to

12   redact out what they believe to be sensitive, commercial

13   information that belongs to the entity for which is the

14   subject of the document, in this case, ZHP.

15          So we did actually proactively FOIA this document and

16   we received it well before we ever received it in the

17   production.  It's simply that we received it with redactions.

18          JUDGE SCHNEIDER:  I guess my question is, why didn't

19   you subpoena -- why don't you subpoena the complete document,

20   then the Court has jurisdiction over the issue and then we

21   could rule on the issue.  But if it's in the context of a

22   FOIA, we don't have jurisdiction.

23          MS. HILTON:  Right, Your Honor.  Well, yeah, you make

24   a really valid point here.  We'll look into the possibility of

25   subpoenaing it, and then, you know, potentially, if ZHP would
```

```
 1   consent to the release of the information, we may be able to

 2   get somewhere.  So we'll research that possibility on our end.

 3         JUDGE SCHNEIDER:  Subject to the confidentiality

 4   designations, what have you.  But I think the subpoena should

 5   ask for unredacted copies, not redacted copies, and --

 6   wouldn't it be up to the FDA to then file a motion for

 7   protective order and then we can decide the issue and get

 8   the -- if appropriate, get the unredacted documents.

 9         MS. HILTON:  Yes, Your Honor, we'll look into that.

10         JUDGE SCHNEIDER:  Good.  Yeah, I think that would be

11   a prudent way to proceed if ZHP says they don't have the

12   unredacted documents.

13         MS. SCHWARTZ:  Your Honor, this is Barbara Schwartz

14   for the ZHP defendants.  That's correct, ZHP does not have the

15   unredacted documents.  It only has the copies from the FDA

16   with the redactions as they've been produced.

17         JUDGE SCHNEIDER:  But presumably -- well, that's -- I

18   know, that's strange, though, that ZHP doesn't have complete

19   copies of its own documents?  But be that as it may, if that's

20   your position, fine.  Presumably the FDA has unredacted

21   copies.  So it seems to me a subpoena is the appropriate way

22   to proceed, and then we'll -- those are important documents,

23   so we ought to tee up that issue.

24         MS. SCHWARTZ:  Your Honor, just to make clear, the

25   documents are not our documents, they are FDA documents.
```

1          JUDGE SCHNEIDER:  Oh, well, I'm sorry, I apologize,

2   you're right.  They're FDA inspection reports and what, did

3   they send you -- not you, ZHP redacted copies?

4          MS. SCHWARTZ:  That's correct.

5          JUDGE SCHNEIDER:  Okay.  Well, then, undoubtedly --

6   I'm repeating myself, the FDA has -- is the only source of the

7   complete copies, so let them say why they can't produce

8   complete copies.

9          MR. PAREKH:  Your Honor, this is Behram Parekh.  Just

10  so that we're clear on this.  I mean, we can certainly do

11  that.  It's my experience in prior cases that the FDA under

12  Title 21, Section 20 of the CFR, has the right to not produce

13  those records and decline to produce on the basis that it --

14  the only way to get those records from the FDA is via a FOIA

15  request.  We can obviously do some more research on this

16  issue.  The last time I did this was about five years ago, but

17  that sort of -- that was what I was trying to get at at the

18  beginning.

19         JUDGE SCHNEIDER:  Well, I'd like to see the law on

20  that, that says that the FDA doesn't have to comply with a

21  Court order.

22         Anyway, I think you should serve a subpoena and then

23  it will be up to the FDA to file a motion for protective order

24  or plaintiffs file a motion to compel.  We'll get them before

25  the Court and we'll decide the issue.

```
 1          MR. PAREKH:  We will do that, Your Honor.  Thank you.
 2          JUDGE SCHNEIDER:  Great.
 3          Then the wholesaler discovery, was there an issue
 4   there, Counsel?
 5          MR. STANOCH:  Your Honor, David Stanoch for
 6   plaintiffs.  We'll be very brief.  There's only two things
 7   here, Your Honor.  One is the normal sort of
 8   request-by-request sort of deficiencies that we believe exist
 9   with each defendant.  They claim they all couldn't get on the
10   phone before this.  We'll accept that.  We're happy to talk to
11   them.  It would just be helpful if Your Honor sort of
12   reiterates that we don't need all three parties on to
13   coordinate for one call, to talk about defendants' specific
14   objections.
15          Of course, if there's an overarching issue, we're
16   happy to say they have to go talk amongst themselves, but we
17   shouldn't have to get a Goldilocks date where their stars
18   align for everyone just to meet and confer.  So I think
19   there's nothing on that one.
20          Except, Your Honor, Issue 2, which is the issue in
21   our letter and Mr. Slater's letter on Page 15 regarding all
22   defendants -- wholesaler defendants' objections producing
23   certain data on the basis of the Drug Supply Chain Security
24   Act.
25          We concisely set forth that the first time we saw
```

1    this after months of back and forth and argument and Court

2    rulings, is in their written objections.  We had hoped to

3    resolve it informally, but after, you know, last time we

4    talked to them about this was November 3rd.  Here we are

5    November 24th, haven't heard back from them.  We don't want

6    this to slip through the cracks.

7            So if Your Honor would like, perhaps it could be teed

8    up for a later time, but I think it's something we're going to

9    have to address.

10            JUDGE SCHNEIDER:  Can someone speak to the

11    wholesalers on this issue?  Because I don't know what the --

12    what actually happened, but if I recall correctly, I think

13    plaintiffs breached that -- that the first time the issue was

14    raised was just recently.  Everybody knows how much time we've

15    spent dealing with these objections.  Is this a new objection

16    that was just raised?

17            MR. GEOPPINGER:  Your Honor, Jeff Geoppinger on

18    behalf of the wholesalers and AmerisourceBergen.  No, Your

19    Honor, this language has been in our responses since August

20    when they received the first round of responses to their

21    request for production.

22            So it is not -- it is not a new issue, it's a new

23    issue that the plaintiffs reached out to us a meet and confer

24    on, on November 3rd.  You know, Mr. Stanoch suggested we

25    haven't heard back from them.  On November 3rd, we discussed

 1  that issue, along with the letter on the deficiencies he

 2  described which we just received on November 18th, along with

 3  a repeat of this issue on -- about this particular response,

 4  not -- I wouldn't qualify it as an objection.  It's part of

 5  our written response to those requests for production.

 6         So, you know, we're willing -- we need to meet and

 7  confer on the other issues.  Somebody can address this one

 8  along the way there.  We think we should at least give that a

 9  shot.  I think there's a very practical way to, you know,

10  attempt to resolve this, because while the wholesalers have,

11  you know, stated in their response, not objection, that there

12  is a prohibition on them producing a certain bit of data

13  called P3 data that is potentially responsive to these

14  requests, these requests are broader than that.

15         We have produced documents in response to these

16  requests, and there's other documents produced by us as well

17  as potentially the manufacturers and the retailers who don't

18  have the kind of prohibition that, for some reason that is on

19  the wholesalers, that is on -- that's in the Supply Chain

20  Security Act.  There may be a way to, you know, practically to

21  resolve this, by looking at those other documents which likely

22  have a lot of the information in them.

23         To answer your question, this isn't a new objection,

24  Your Honor.  It's not an objection in our view at all.  It's

25  part of our response.

1          JUDGE SCHNEIDER:  Okay.  Can I make a suggestion

2     that, of course, you should meet and confer on it, but work it

3     out amongst yourselves, agree on a briefing schedule using

4     letter briefs to see if we can tee this issue up on the

5     December 23rd call so we can put it to bed.

6          Whatever briefing schedule you agree to, that you

7     can't -- if you can't work out an issue, that's fine, but why

8     don't we try and get this issue teed up and behind us on

9     December 23rd.

10         MR. GEOPPINGER:  All right.  Your Honor, hopefully,

11    we will be able to have a practical solution before that, but

12    we will have a briefing schedule --

13         JUDGE SCHNEIDER:  I hope so.

14         MR. STANOCH:  For plaintiffs, thank you, Your Honor.

15         JUDGE SCHNEIDER:  You're welcome.  Okay.

16         I think -- let me look at Mr. Goldberg's letter.

17         MS. LOCKARD:  Your Honor, this is Victoria Lockard

18    from Greenberg Traurig and Teva.  We -- and we submitted the

19    letter this time because the executive committee has -- we've

20    agreed to take turns because it --

21         JUDGE SCHNEIDER:  No problem.  No problem at all.

22         MS. LOCKARD:  We have Jeff Greene on the line.  We

23    had included the TAR issue in the agenda.  I don't know if

24    there's much to discuss there, but I wanted to make sure that

25    we were heard on that, and Jeff, if you're on, if there's

 1   anything we need to put on the record and the Judge is

 2   inclined to hear it, then I think that's the only other issue

 3   we had in our letter as such.

 4        JUDGE SCHNEIDER:  I'll hear anything you want to say,

 5   but I think the parties have exhaustively briefed and argued

 6   the issue.  I saw Mr. Slater's discussion of the issue in his

 7   letter.  I hope it's not necessary, I don't think it is, to

 8   respond to that.  You're going to get the Court's ruling

 9   promptly on it, so.

10        I don't want to cut anybody off.  I want to make sure

11   that everyone feels comfortable that they've had a full and

12   fair opportunity to present their argument, but I don't know

13   what can be raised that has not already been raised, unless

14   you could say that you worked it out and the issue is moot.

15        MS. LOCKARD:  Unfortunately, that's not the case,

16   Your Honor.  I wish I could.

17        MR. GREENE:  Hey, Your Honor, Jeff Greene.  Just a

18   quick point and I'm not -- obviously, I'm going to take

19   seriously what you just said.  I think the only thing I would

20   say with respect to the submission from Mr. Slater yesterday

21   was, you know, concerned sort of misrepresentations that

22   Mr. Slater alleged, and I think, for example, with respect to

23   the 5,000 documents that, you know, during the discussion that

24   we had over the summer, you know, I think it's clear that that

25   was proposed.

     1          I think, Your Honor, you came to us during those

     2     discussions and said, give us your best and final, you know,

     3     in terms of an offer to make this, you know, to get Mr. Slater

     4     to accept.  We did that with the proviso that Your Honor would

     5     actually be looking at those 5,000 documents after Teva had

     6     called out the documents relating to privilege and/or other

     7     product information.

     8          So it was never contemplated and I think it's a

     9     misrepresentation to say that we had turned over -- that we

    10     had volunteered as part of a TAR protocol that we never agreed

    11     to, to turn over 5,000 documents to plaintiffs.  And, you

    12     know, I think that at the end of the day, Your Honor, and just

    13     to sort of reiterate, you know, this is really just about

    14     proportionality, and it's not about the do's and don'ts of

    15     TAR, but, you know, if I'm allowed 20 words or less and I was

    16     never good at math so I can't count all that well, but it's

    17     not about TAR.  This is about proportionality and it's about

    18     Teva having to review four million or potentially millions of

    19     nonresponsive documents, when we know the technology is there,

    20     we know the metrics are there, and the rules were adjusted --

    21     the Federal Rules were adjusted for this very purpose to take

    22     proportionality into consideration.

    23          So with that, Your Honor, I'll stop and I certainly

    24     don't want to argue all the points we've made ad nauseam.  So

    25     I thank you for your indulgence.

1          JUDGE SCHNEIDER:  Thank you.  I really don't think

2     there's anything I need to hear from plaintiffs on the issue.

3     I know the parties' positions in detail, and I expect you'll

4     get the Court's ruling promptly.

5          Are there any other issues to address?

6          Okay.  Well, thank you, Counsel.  I think it was a

7     productive day.  I'm trying to get everything done before the

8     end of the year, so you can get your depositions started.

9          We'll see -- we'll keep on working in that vein and

10    there being nothing else, we'll adjourn.

11         And, Karen, I can't thank you enough under difficult

12    circumstances for helping us out with the transcripts.

13         So just like Judge Kugler said, we hope everyone

14    stays safe, have a great holiday, good luck, and we're

15    adjourned.

16         (3:19 p.m.)

17         - - - - - - - - - - - - - - - - -

18

19         I certify that the foregoing is a correct transcript

20    from the record of proceedings in the above-entitled matter.

21

22    /S/ Karen Friedlander, CRR, RMR
      Court Reporter/Transcriber_____
23

24    November 25, 2020
      Date
25

**$**

**$100** *[1]* - 39:14

**0**

**07068** *[1]* - 1:13
**08543** *[1]* - 2:19

**1**

**1** *[6]* - 7:9, 17:10, 52:2, 66:24, 83:19, 135:17
**10** *[2]* - 1:7, 80:8
**100** *[1]* - 38:2
**10022** *[1]* - 2:22
**103** *[1]* - 1:12
**104** *[1]* - 36:19
**10:02** *[1]* - 3:2
**11** *[2]* - 50:18, 82:4
**11th** *[1]* - 18:4
**12** *[5]* - 23:9, 37:7, 37:25, 82:13, 109:12
**12:33** *[1]* - 89:15
**13** *[8]* - 9:15, 9:18, 9:22, 9:25, 37:19, 37:21, 50:18, 83:1
**13th** *[2]* - 127:25, 128:1
**14** *[9]* - 50:14, 50:19, 51:13, 62:25, 117:9, 117:10, 119:3
**15** *[5]* - 22:13, 23:9, 117:22, 140:21
**15-month** *[1]* - 6:18
**15.1** *[1]* - 42:21
**15th** *[1]* - 132:25
**16** *[2]* - 62:25, 119:22
**17th** *[1]* - 2:7
**18** *[1]* - 7:18
**180** *[1]* - 35:6
**1835** *[1]* - 1:15
**18th** *[3]* - 102:2, 132:6, 142:2
**19** *[2]* - 85:2, 126:22
**19103** *[2]* - 1:16, 2:7
**1938** *[1]* - 34:1
**19422** *[1]* - 2:15
**1957** *[1]* - 33:18
**1993** *[1]* - 35:14
**19th** *[2]* - 132:5, 135:13
**1:15** *[1]* - 89:4
**1:19-md-02875-RBK-JS** *[1]* - 1:4
**1:30** *[4]* - 89:4, 89:5, 89:9, 89:16
**1st** *[6]* - 14:6, 14:12, 14:24, 16:7, 16:14,

18:15

**2**

**2** *[4]* - 7:10, 46:9, 83:19, 140:20
**20** *[32]* - 8:21, 15:8, 19:8, 19:10, 19:11, 19:12, 19:15, 20:8, 20:14, 20:15, 21:2, 21:12, 21:17, 21:19, 22:11, 22:12, 23:8, 23:17, 23:19, 34:10, 36:19, 38:15, 38:16, 62:24, 64:11, 70:21, 72:1, 126:22, 131:14, 139:12, 145:15
**20,000** *[1]* - 37:11
**200** *[1]* - 2:15
**2003** *[2]* - 33:23, 35:8
**2014** *[1]* - 55:1
**2015** *[2]* - 36:3, 36:12
**2016** *[1]* - 36:4
**2018** *[3]* - 49:11, 92:13, 137:6
**2019** *[8]* - 47:16, 47:25, 51:23, 62:25, 72:16, 73:17, 92:14, 101:25
**2020** *[2]* - 1:6, 3:1
**2021** *[1]* - 135:17
**20th** *[2]* - 47:16, 48:22
**21** *[10]* - 2:18, 36:8, 62:8, 65:17, 65:18, 66:1, 66:16, 67:1, 139:12
**2151** *[1]* - 38:12
**22** *[2]* - 67:1, 70:21
**23** *[6]* - 13:2, 50:12, 67:3, 67:4, 67:6, 131:10
**2311** *[1]* - 38:9
**2333** *[1]* - 38:6
**23rd** *[4]* - 129:11, 130:9, 143:5, 143:9
**24** *[5]* - 1:6, 3:1, 67:3, 67:4, 70:21
**24th** *[1]* - 141:5
**25** *[4]* - 5:11, 47:25, 51:23, 85:2
**2500** *[1]* - 2:11
**2599** *[1]* - 38:4
**25th** *[1]* - 48:23
**2656** *[1]* - 38:2
**27** *[1]* - 9:16
**2738** *[1]* - 37:10
**28** *[2]* - 117:11, 118:6
**2820** *[1]* - 37:13
**2824** *[1]* - 37:15

**3**

**3** *[6]* - 37:1, 37:4, 56:12, 56:13, 58:12, 58:13
**30** *[13]* - 2:7, 17:24, 18:2, 19:23, 19:24, 68:3, 68:10, 68:17, 69:4, 69:14, 69:16, 69:18, 69:20
**30(b)(6)** *[43]* - 30:6, 43:22, 44:8, 44:12, 44:17, 45:24, 46:13, 48:24, 50:1, 52:18, 60:23, 64:14, 67:20, 73:20, 76:3, 76:6, 76:9, 76:23, 80:22, 80:23, 84:20, 86:4, 88:5, 89:21, 89:24, 94:17, 95:4, 95:12, 95:22, 97:3, 98:13, 105:18, 117:25, 118:2, 118:4, 128:20, 128:23, 132:10, 134:25, 135:2, 135:4, 135:5
**30(b)(6)s** *[1]* - 131:22
**30305** *[1]* - 2:11
**30th** *[6]* - 18:12, 22:21, 40:5, 40:7, 40:12, 40:18
**316** *[1]* - 1:18
**32** *[2]* - 86:12, 86:16
**32502** *[1]* - 1:19
**33** *[1]* - 86:15
**331** *[1]* - 36:3
**3333** *[1]* - 2:11
**34** *[3]* - 10:9, 38:6, 105:17
**350** *[1]* - 38:4
**370** *[1]* - 38:9
**38** *[1]* - 86:15
**38th** *[1]* - 2:24
**390** *[1]* - 36:19
**3:19** *[1]* - 146:16
**3rd** *[3]* - 141:4, 141:24, 141:25

**4**

**4** *[5]* - 50:21, 53:21, 60:10, 74:25, 75:9
**40** *[5]* - 15:9, 15:13,

**2841** *[1]* - 37:18
**2850** *[1]* - 37:20
**2879** *[1]* - 37:22
**2900** *[1]* - 1:15
**2914** *[1]* - 37:24
**2d** *[1]* - 36:19

**20:3**, 22:12, 33:22
**45** *[1]* - 18:8
**450** *[2]* - 2:15, 38:12

**5**

**5** *[5]* - 53:21, 56:3, 56:11, 57:3, 83:19
**5,000** *[3]* - 144:23, 145:5, 145:11
**50** *[2]* - 37:14, 115:3
**50/50** *[1]* - 39:23
**53** *[10]* - 3:11, 33:23, 33:24, 34:1, 34:11, 35:8, 35:16, 36:15, 36:20, 38:22
**53(a)(1)(c** *[1]* - 31:19
**53(g** *[1]* - 38:22
**58** *[1]* - 67:25
**59** *[1]* - 67:25

**6**

**6** *[8]* - 49:5, 49:6, 51:22, 53:21, 57:3, 70:18, 73:9, 83:19
**60** *[5]* - 17:21, 21:3, 68:8, 68:19, 69:15
**600** *[1]* - 1:18
**601** *[1]* - 2:21
**604-2** *[1]* - 91:20
**629** *[1]* - 36:3
**6:00** *[1]* - 114:18

**7**

**7** *[11]* - 47:21, 48:5, 48:14, 49:5, 53:21, 54:17, 57:3, 58:17, 62:7, 69:25, 91:11
**701** *[1]* - 2:3
**70130** *[1]* - 2:4
**75** *[2]* - 115:4
**756-0160** *[1]* - 1:23
**7:00** *[1]* - 114:20
**7th** *[1]* - 18:13

**8**

**8** *[3]* - 50:6, 53:21, 83:13
**800** *[1]* - 33:10
**856** *[1]* - 1:23

**9**

**9** *[4]* - 79:19, 83:13, 131:25
**90** *[5]* - 21:3, 21:4, 21:7, 33:7, 37:23
**94** *[1]* - 5:12

**9:00** *[4]* - 110:15, 110:16, 110:21, 114:18
**9th** *[3]* - 128:9, 128:10, 129:8

**A**

**a)(3** *[1]* - 38:22
**A.1** *[1]* - 96:16
**A.5** *[1]* - 96:16
**a.m** *[5]* - 1:7, 3:2, 110:15, 114:18, 114:20
**A1** *[1]* - 46:9
**A3** *[1]* - 100:25
**A4** *[1]* - 100:25
**A5** *[1]* - 94:20
**abandon** *[1]* - 24:12
**abdicated** *[1]* - 36:24
**abeyance** *[1]* - 131:17
**ability** *[5]* - 3:25, 7:11, 38:19, 69:13, 77:9
**able** *[31]* - 11:10, 13:25, 22:16, 22:17, 25:11, 27:6, 30:8, 32:22, 35:19, 37:7, 45:16, 45:20, 52:18, 57:20, 81:4, 93:17, 101:18, 102:14, 105:23, 107:9, 107:18, 110:10, 112:16, 124:9, 125:24, 126:1, 126:14, 128:18, 136:11, 138:1, 143:11
**absent** *[1]* - 115:23
**absolutely** *[5]* - 65:23, 66:12, 88:10, 101:17, 123:6
**absorb** *[1]* - 30:3
**absorbing** *[1]* - 30:4
**abstract** *[1]* - 105:25
**academics** *[1]* - 34:22
**accelerate** *[1]* - 43:1
**Acceleration** *[1]* - 38:12
**accept** *[6]* - 7:8, 81:16, 108:23, 132:11, 140:10, 145:4
**acceptable** *[6]* - 74:19, 76:11, 77:10, 88:12, 127:22, 127:24
**accepted** *[2]* - 96:17, 96:20
**access** *[2]* - 30:15, 76:22
**accessible** *[2]* - 76:20,

78:22
**accompanied** [2] - 14:14, 42:20
**accomplish** [1] - 111:5
**accomplished** [1] - 97:18
**accordance** [2] - 55:16, 114:6
**according** [1] - 123:3
**account** [2] - 14:11, 111:5
**accumulating** [1] - 71:9
**accurate** [2] - 72:23, 125:24
**achieve** [2] - 31:1, 31:10
**acknowledge** [2] - 85:14, 101:15
**acknowledged** [3] - 62:22, 92:23, 96:22
**acknowledges** [2] - 100:4, 117:16
**act** [2] - 122:19, 123:3
**Act** [4] - 33:21, 137:5, 140:24, 142:20
**Actavis** [2] - 2:12
**action** [10] - 4:10, 12:22, 15:5, 32:2, 32:5, 36:6, 38:7, 92:15, 113:9, 132:16
**ACTION** [1] - 1:3
**actions** [7] - 13:2, 32:3, 37:16, 37:23, 38:7, 38:10, 38:14
**actual** [9] - 49:10, 61:17, 63:4, 70:8, 70:17, 70:20, 71:8, 72:4, 86:23
**ad** [1] - 145:24
**Adam** [4] - 15:22, 28:9, 44:11, 45:4
**ADAM** [1] - 1:12
**add** [12] - 8:5, 57:14, 57:21, 67:10, 67:11, 67:13, 67:15, 68:13, 94:21, 107:23, 113:2, 115:7
**added** [2] - 56:23, 70:7
**addendum** [33] - 43:22, 89:10, 90:12, 90:13, 90:15, 90:16, 90:18, 90:20, 90:21, 90:23, 91:3, 91:12, 91:19, 91:21, 92:8, 92:22, 95:18, 97:1, 97:7, 97:15, 97:23, 97:24, 98:22, 99:4,

78:22
**addendums** [7] - 44:5, 44:10, 88:23, 89:20, 90:1, 90:11, 128:1
**adding** [4] - 21:17, 21:19, 77:11, 109:10
**addition** [2] - 42:15, 58:5
**additional** [4] - 21:18, 34:8, 88:9, 112:14
**additions** [1] - 79:5
**address** [23] - 24:21, 24:22, 31:21, 38:20, 43:18, 43:19, 43:20, 44:13, 58:4, 58:6, 73:21, 77:3, 81:17, 81:19, 82:10, 89:20, 106:14, 115:1, 130:7, 133:23, 141:9, 142:7, 146:5
**addressed** [16] - 29:6, 31:22, 45:9, 45:11, 45:17, 46:20, 57:1, 59:17, 76:13, 79:13, 81:7, 121:8, 121:14, 123:5, 127:19, 131:10
**addresses** [3] - 48:14, 66:3, 121:16
**addressing** [4] - 59:14, 60:6, 60:12, 70:19
**adequately** [3] - 47:9, 61:12, 68:7
**adjourn** [1] - 146:10
**adjourned** [2] - 89:12, 146:15
**adjusted** [2] - 145:20, 145:21
**adjustment** [1] - 22:21
**admission** [6] - 99:16, 99:22, 100:15, 102:21, 107:15, 113:8
**admissions** [1] - 73:16
**admit** [2] - 96:12
**adopt** [1] - 99:14
**adopts** [2] - 63:8, 65:23
**advance** [4] - 68:3, 124:19, 125:16, 125:22
**advantage** [1] - 3:17
**advise** [2] - 34:17, 74:13
**affect** [2] - 15:6, 97:1

**affected** [1] - 3:23
**affirm** [1] - 78:21
**afternoon** [4] - 82:14, 89:6, 89:17, 136:7
**agency** [1] - 87:14
**agenda** [4] - 41:16, 43:18, 128:1, 143:23
**agent** [2] - 84:7, 98:14
**agents** [5] - 56:13, 83:17, 83:22, 84:2, 84:15
**aggressive** [2] - 13:14, 36:9
**ago** [7] - 11:15, 22:23, 34:10, 36:19, 71:14, 91:20, 139:16
**agree** [42] - 12:18, 13:15, 15:8, 23:11, 24:15, 28:24, 40:13, 40:16, 40:20, 46:5, 58:8, 62:1, 66:8, 78:24, 81:7, 81:16, 86:2, 93:21, 98:12, 100:15, 104:9, 104:14, 105:21, 107:15, 111:8, 111:15, 112:2, 112:20, 113:17, 113:25, 120:22, 123:16, 124:25, 125:2, 125:3, 125:11, 125:17, 129:10, 130:16, 143:3, 143:6
**agreed** [17] - 25:13, 62:10, 63:15, 68:25, 77:15, 82:23, 82:24, 86:15, 87:16, 95:5, 95:6, 112:2, 112:4, 113:3, 136:13, 143:20, 145:10
**agreed-to** [1] - 136:13
**agreed-to-be-deposed** [1] - 113:3
**agreeing** [2] - 66:21, 98:9
**agreement** [10] - 27:7, 49:17, 77:23, 92:17, 92:22, 110:23, 114:24, 124:16, 125:21, 130:10
**agreements** [1] - 48:15
**agrees** [5] - 90:25, 92:15, 104:10, 104:11, 127:25
**ahead** [11] - 81:10, 81:11, 82:7, 91:17, 109:13, 125:19, 126:5, 129:17,

131:3, 131:8
**aided** [1] - 1:24
**Aikens** [1] - 10:6
**AIKENS** [1] - 10:6
**Air** [1] - 38:4
**airing** [1] - 13:7
**Airline** [1] - 38:2
**Alcus** [1] - 8:9
**ALCUS** [1] - 8:9
**alert** [1] - 120:1
**ALEXIA** [1] - 2:21
**Alexia** [1] - 82:6
**ALFANO** [1] - 2:23
**align** [1] - 140:18
**ALL** [1] - 3:1
**alleged** [2] - 85:10, 144:22
**alleging** [1] - 73:14
**alleviates** [1] - 111:21
**allocate** [1] - 39:23
**allocated** [1] - 31:7
**allotted** [1] - 128:23
**allow** [5] - 23:13, 44:15, 81:7, 97:8, 110:25
**allowed** [3] - 29:11, 54:18, 145:15
**allowing** [1] - 59:21
**almost** [1] - 34:10
**alternative** [1] - 109:16
**alternatives** [1] - 124:13
**ambiguity** [2] - 71:25, 78:1
**ambiguous** [1] - 70:11
**ambitious** [1] - 129:8
**amend** [3] - 42:19, 42:22, 43:2
**amended** [7] - 4:10, 15:5, 34:12, 50:10, 50:15, 56:22, 62:7
**Amended** [6] - 42:8, 42:10, 42:12, 42:13, 42:17, 43:13
**amendment** [6] - 33:23, 34:11, 35:7, 36:20, 42:24, 123:1
**amendments** [4] - 4:14, 35:8, 43:3, 43:4
**American** [1] - 133:17
**AmerisourceBergen** [1] - 141:18
**amount** [2] - 21:20, 29:12
**analysis** [1] - 55:3
**animals** [1] - 71:3
**announcement** [1] - 106:10

**annual** [1] - 39:19
**answer** [11] - 55:9, 84:22, 86:6, 86:9, 87:20, 98:6, 99:5, 104:17, 105:8, 107:8, 142:23
**answered** [2] - 54:14, 73:4
**anticipate** [4] - 5:21, 13:25, 23:20, 39:13
**anticipating** [1] - 15:4
**Antitrust** [4] - 37:20, 38:2, 38:6, 38:9
**antitrust** [1] - 33:19
**anyway** [5] - 22:6, 24:18, 91:4, 135:21, 139:22
**APA** [1] - 51:15
**apart** [1] - 128:12
**API** [22] - 21:9, 48:9, 50:23, 51:16, 52:4, 53:4, 53:14, 54:12, 54:22, 56:14, 56:16, 63:5, 67:8, 72:5, 83:9, 83:21, 83:23, 85:9, 85:14, 85:20, 86:19, 86:25
**apiece** [1] - 11:13
**apologize** [2] - 51:1, 139:1
**apparent** [1] - 36:12
**appear** [6] - 93:4, 94:7, 94:9, 94:11, 136:14, 136:24
**appearance** [1] - 100:13
**Appendix** [1] - 36:3
**applicability** [1] - 129:2
**applicable** [4] - 60:22, 60:23, 101:7, 103:20
**application** [5] - 69:19, 112:22, 114:1, 116:19, 121:12
**applications** [1] - 67:7
**applied** [5] - 48:23, 49:15, 49:19, 64:15, 64:18
**applies** [3] - 51:23, 63:7, 107:23
**apply** [7] - 47:11, 48:25, 77:7, 101:5, 103:4, 113:23, 116:4
**appoint** [3] - 26:4, 30:24, 31:20
**appointed** [4] - 34:4, 36:11, 37:9, 38:11
**appointing** [1] - 36:13
**appointment** [3] -

27:18, 31:16, 36:16
**appreciate** [8] - 6:9,
7:14, 11:19, 42:6,
43:20, 88:1, 119:13,
124:6
**approach** [5] - 4:13,
42:7, 43:21, 44:22,
103:23
**appropriate** [23] -
14:5, 25:3, 43:9,
43:10, 46:10, 59:22,
61:11, 62:23, 65:6,
66:16, 78:25, 79:4,
96:5, 102:5, 102:6,
113:1, 113:23,
113:24, 121:13,
127:6, 128:13,
138:8, 138:21
**appropriately** [1] -
67:19
**approval** [3] - 92:11,
92:18, 116:5
**approve** [2] - 34:24,
35:4
**approved** [3] - 35:1,
35:11, 36:15
**approving** [1] - 128:22
**April** [2] - 14:6, 135:17
**arbitrary** [1] - 130:2
**area** [4] - 65:5, 87:17,
88:23, 106:24
**argue** [5] - 30:5, 56:5,
57:20, 98:18, 145:24
**argued** [1] - 144:5
**arguing** [2] - 59:24,
130:2
**argument** [9] - 62:14,
72:13, 95:14, 95:16,
99:18, 127:10,
136:4, 141:1, 144:12
**arm** [2] - 53:5, 54:12
**Article** [2] - 37:1, 37:4
**aside** [7] - 11:18, 12:1,
12:5, 20:13, 24:5,
29:20, 98:17
**aspect** [1] - 72:19
**assembly** [1] - 53:17
**assert** [4] - 101:18,
102:15, 104:7,
107:10
**asserted** [1] - 103:21
**assigned** [2] - 27:21,
29:25
**assist** [3] - 26:4,
27:22, 107:4
**assistance** [1] - 27:3
**associated** [1] - 47:20
**assume** [7] - 6:17,
10:25, 18:11, 33:3,
50:10, 81:18, 110:6

**assurance** [1] - 53:24
**assured** [2] - 119:8,
123:4
**Atlanta** [1] - 2:11
**attached** [2] - 49:25,
50:4
**attempt** [1] - 142:10
**attention** [1] - 39:11
**attribute** [1] - 59:23
**attributes** [1] - 36:25
**August** [8] - 14:23,
16:21, 16:22, 17:1,
17:2, 18:12, 137:6,
141:19
**Aurobindo** [6] - 2:16,
45:6, 45:8, 79:19,
79:22, 80:3
**Aurolife** [1] - 2:16
**Aurrobindo** [1] - 2:16
**authority** [4] - 4:22,
4:23, 23:10, 93:3
**authorized** [1] - 32:21
**authorizing** [1] - 36:25
**Automotive** [1] - 38:9
**availability** [3] - 27:22,
29:13, 32:12
**available** [4] - 14:20,
16:15, 31:22, 33:13
**Avenue** [1] - 2:21
**avoid** [3] - 42:17,
119:18, 129:25
**awaiting** [1] - 33:7
**aware** [5] - 8:15,
20:24, 28:23, 81:12,
131:18
**awhile** [1] - 24:17

## B

**background** [2] -
61:24, 103:14
**backlog** [3] - 6:19,
7:10, 28:20
**Bag** [1] - 38:4
**bailiwick** [1] - 133:17
**balance** [1] - 31:16
**bankruptcy** [1] - 34:20
**BARBARA** [1] - 2:6
**Barbara** [2] - 46:12,
138:13
**based** [9] - 20:5,
39:10, 71:8, 81:16,
82:20, 83:7, 91:15,
105:10, 121:24
**basis** [6] - 53:2, 93:21,
95:20, 96:1, 139:13,
140:23
**batches** [2] - 72:7,
72:10
**baton** [1] - 46:12

**Battle** [1] - 8:8
**BATTLE** [1] - 8:8
**Baylen** [1] - 1:18
**bear** [1] - 113:17
**become** [1] - 130:3
**becomes** [1] - 113:21
**bed** [5] - 57:8, 57:12,
100:10, 102:23,
143:5
**beforehand** [1] -
124:22
**begged** [1] - 71:14
**begin** [3] - 5:15, 15:3,
50:24
**beginning** [11] -
16:11, 16:12, 16:22,
17:1, 26:9, 34:1,
46:3, 75:1, 114:10,
116:23, 139:18
**begins** [4] - 8:21,
9:15, 50:22, 50:23
**behalf** [10] - 8:18,
10:13, 17:16, 25:18,
77:17, 80:11, 82:6,
110:2, 131:19,
141:18
**behind** [1] - 143:8
**Behram** [2] - 136:8,
139:9
**Belcuore** [1] - 9:10
**BELCOURE** [1] - 9:10
**believes** [2] - 78:16,
96:9
**Bell** [1] - 2:15
**bell** [1] - 23:14
**bellwether** [19] - 7:6,
7:7, 15:7, 15:12,
15:17, 19:7, 19:9,
19:10, 19:11, 19:15,
19:17, 19:22, 22:6,
22:17, 23:18, 23:24
**bellwethers** [3] -
21:25, 23:21
**belong** [2] - 4:25,
97:14
**belongs** [2] - 7:12,
137:13
**beneficial** [1] - 90:12
**benefit** [3] - 30:16,
77:11, 103:12
**benefits** [1] - 134:17
**Benicar** [3] - 126:10,
126:21, 127:8
**best** [8] - 19:15, 26:6,
43:21, 81:25, 91:7,
107:20, 130:24,
145:2
**bet** [1] - 39:6
**better** [8] - 14:13,
25:24, 25:25, 81:24,

105:15, 107:24,
126:20, 127:7
**Betty** [1] - 10:7
**between** [11] - 17:21,
30:14, 39:23, 70:5,
85:10, 87:3, 90:10,
91:23, 94:13, 96:16,
97:16
**beyond** [5] - 44:16,
49:2, 78:16, 120:8,
131:16
**bias** [1] - 40:24
**biding** [1] - 113:5
**big** [6] - 7:7, 43:25,
55:10, 63:13, 73:19,
116:22
**big-picture** [1] - 73:19
**billions** [1] - 39:19
**Bird** [1] - 10:4
**BIRD** [1] - 10:4
**bit** [11] - 17:5, 17:6,
54:17, 67:4, 82:9,
97:15, 101:2, 108:6,
112:6, 115:5, 142:12
**bite** [1] - 89:1
**black** [1] - 56:19
**blah** [10] - 75:22,
75:23, 103:4, 113:9
**block** [2] - 112:3,
114:25
**Blue** [1] - 2:15
**body** [1] - 34:13
**BOSICK** [1] - 2:23
**box** [3] - 63:13, 63:14,
66:13
**Brancato** [1] - 82:6
**BRANCATO** [3] -
2:21, 82:5, 82:11
**brand** [1] - 6:14
**brand-new** [1] - 6:14
**Breach** [1] - 37:22
**breach** [1] - 32:19
**breached** [1] - 141:13
**breaches** [1] - 122:23
**break** [8] - 37:5,
41:17, 41:24, 41:25,
88:24, 110:23,
111:23, 112:18
**brief** [9] - 29:22,
97:20, 104:4,
106:20, 107:5,
110:12, 134:24,
135:6, 140:6
**briefed** [3] - 94:25,
113:6, 144:5
**briefing** [9] - 31:13,
43:9, 74:12, 95:1,
95:17, 99:20, 143:3,
143:6, 143:12
**briefs** [2] - 43:10,

143:4
**bright** [1] - 130:5
**bring** [2] - 30:11,
121:23
**broad** [3] - 61:14,
66:3, 67:8
**broader** [2] - 67:5,
142:14
**broke** [1] - 82:9
**budget** [3] - 32:22,
34:18, 39:9
**budgets** [1] - 39:7
**build** [1] - 17:17
**bunch** [1] - 126:13
**burden** [9] - 31:10,
31:11, 69:15, 74:7,
77:25, 97:3, 104:21,
105:23, 107:3
**burner** [1] - 23:4
**business** [10] - 6:3,
6:5, 6:6, 75:4, 75:24,
76:20, 77:6, 77:22,
78:10, 130:14
**buy** [1] - 6:8
**Buy** [2] - 33:17, 36:14
**buying** [2] - 119:5,
123:8, 127:12
**BY** [10] - 1:12, 1:15,
1:18, 2:3, 2:6, 2:9,
2:14, 2:18, 2:21,
2:24

## C

**C-A-R-M-L-E-Y** [1] -
9:12
**C12** [3] - 110:1,
110:11, 115:14
**C15** [2] - 115:19,
116:21
**C19** [1] - 120:6
**CALL** [1] - 42:3
**Camber** [3] - 81:13,
81:16, 81:21
**Cambron** [1] - 10:6
**CAMBRON** [1] - 10:6
**Camden** [3] - 6:12,
32:13, 32:21
**Camp** [1] - 2:3
**cancer** [2] - 13:12,
71:3
**cancers** [2] - 13:16,
13:25
**cannot** [5] - 11:19,
12:21, 29:24, 31:21,
125:17
**capable** [1] - 135:20
**capacity** [1] - 117:23
**Care** [1] - 37:18
**care** [5] - 42:2, 57:22,

67:17, 79:8, 88:1
**career** [1] - 32:17
**Carmley** [1] - 9:11
**carried** [1] - 7:24
**carries** [1] - 28:22
**carry** [2] - 8:3, 29:20
**carrying** [1] - 8:6
**case** [99] - 4:7, 6:22,
7:2, 7:12, 9:3, 11:9,
11:17, 11:22, 12:15,
13:4, 13:9, 13:10,
13:19, 17:6, 18:3,
20:23, 22:20, 26:6,
26:7, 26:9, 27:2,
27:4, 27:9, 28:24,
29:1, 29:3, 29:7,
32:18, 33:18, 33:19,
33:22, 35:15, 35:20,
35:21, 35:24, 36:1,
36:3, 36:6, 36:7,
36:8, 36:10, 36:14,
36:18, 37:10, 37:13,
37:15, 37:16, 37:18,
37:22, 38:2, 38:6,
38:8, 38:20, 39:6,
39:14, 42:11, 42:25,
43:15, 47:15, 47:17,
53:12, 55:10, 55:22,
59:2, 59:7, 59:25,
61:2, 62:18, 66:25,
69:21, 70:6, 71:5,
73:1, 73:18, 74:22,
79:2, 93:14, 93:16,
95:25, 97:2, 97:9,
100:3, 100:5, 102:4,
104:21, 113:19,
118:19, 118:21,
120:16, 120:24,
121:5, 122:24,
123:8, 127:10,
127:11, 137:14,
144:15
**caseloads** [1] - 29:19
**cases** [42] - 4:23, 4:24,
5:20, 6:20, 8:14, 9:2,
9:15, 10:24, 11:1,
11:5, 15:10, 15:14,
19:7, 19:8, 19:12,
23:18, 23:20, 23:21,
23:23, 23:25, 24:17,
31:23, 33:7, 33:10,
33:16, 36:21, 37:7,
37:11, 37:14, 37:19,
37:21, 38:3, 38:4,
38:12, 38:13, 38:14,
38:15, 39:10, 39:11,
139:11
**cast** [1] - 20:13
**catch** [1] - 6:21
**categories** [2] - 49:8,

66:4
**category** [1] - 67:9
**causation** [14] - 12:10,
12:12, 12:21, 13:7,
14:7, 14:9, 14:14,
14:18, 14:19, 17:18,
26:9, 31:6, 71:6,
135:16
**caused** [2] - 13:17,
14:1
**causes** [1] - 109:11
**caveat** [4] - 51:22,
69:17, 113:2, 113:3
**Centre** [1] - 2:24
**certain** [10] - 36:4,
49:8, 61:10, 68:1,
73:24, 111:15,
118:19, 123:24,
140:23, 142:12
**certainly** [28] - 5:4,
15:11, 16:4, 16:25,
29:8, 31:16, 35:17,
44:13, 45:12, 61:2,
66:19, 85:25, 87:15,
95:25, 98:11, 98:13,
101:6, 105:12,
105:21, 111:13,
112:1, 114:16,
121:21, 127:9,
129:24, 134:14,
139:10, 145:23
**certification** [10] -
12:16, 12:19, 12:23,
12:25, 13:4, 13:5,
15:3, 30:10, 31:6,
135:16
**certified** [1] - 32:6
**cetera** [12] - 30:7,
32:4, 34:20, 53:17,
53:24, 54:2, 64:13,
66:10, 98:15, 100:18
**CFR** [1] - 139:12
**CGMP** [4] - 65:10,
65:11, 66:2, 67:16
**CGMPs** [8] - 61:7,
61:8, 61:16, 61:19,
64:18, 65:7, 67:7,
67:9
**Chain** [2] - 140:23,
142:19
**chain** [6] - 20:6, 20:24,
32:8, 81:2, 81:8
**chair** [1] - 34:16
**challenge** [2] - 18:25,
124:11
**Chance** [1] - 7:19
**chance** [6] - 19:17,
42:9, 74:11, 83:4,
119:15, 124:15
**change** [8] - 4:4,

10:16, 32:25, 34:23,
35:9, 36:12, 36:14,
100:1
**changed** [1] - 87:8
**changes** [7] - 8:23,
9:18, 9:19, 10:10,
10:12, 35:3, 117:17
**changing** [1] - 33:24
**characterization** [1] -
70:3
**characterize** [1] -
38:17
**charged** [1] - 39:5
**Charleston** [1] - 9:8
**chart** [4] - 91:12,
96:18, 109:25,
119:22
**chemical** [1] - 55:3
**chemicals** [1] - 73:14
**chew** [1] - 42:6
**chief** [1] - 34:14
**Chief** [2] - 34:15, 35:5
**chime** [1] - 132:19,
137:2
**China** [21] - 54:3,
58:21, 90:24, 92:12,
92:16, 92:18, 92:20,
93:2, 93:3, 98:22,
104:16, 113:8,
115:21, 117:2,
117:3, 117:4, 117:5,
117:10, 119:3, 135:1
**Chinese** [52] - 90:11,
90:16, 90:20, 91:3,
91:12, 92:11, 92:14,
92:15, 92:19, 93:15,
93:16, 94:16, 97:3,
101:3, 101:11,
101:12, 101:16,
101:18, 101:19,
101:22, 103:3,
103:19, 105:5,
105:23, 106:19,
107:3, 107:11,
108:19, 108:21,
108:23, 108:25,
109:20, 111:13,
115:20, 117:7,
117:8, 117:22,
118:4, 120:9,
120:18, 121:3,
121:6, 122:3, 122:4,
123:17, 123:19,
127:16, 127:17,
127:23
**choice** [1] - 40:15
**choose** [5] - 15:12,
100:3, 100:6,
109:10, 125:4,
125:5, 125:6

chose [1] - 124:5
**chosen** [2] - 99:9,
101:9
**Christmas** [2] -
129:11, 129:12
**chunks** [2] - 110:25,
111:21
**CIPRIANI** [1] - 2:14
**circuit** [1] - 34:15
**Circuit** [4] - 35:14,
36:3, 36:12, 36:15
**circumstances** [4] -
68:6, 69:21, 118:15,
146:12
**cite** [3] - 33:17, 36:1,
39:2
**citizen** [1] - 94:16
**CIVIL** [1] - 1:3
**Civil** [2] - 101:4,
101:11
**civil** [7] - 5:17, 5:20,
32:18, 33:10, 34:19,
121:11
**civility** [1] - 121:17
**civilly** [1] - 123:3
**claim** [1] - 140:9
**claims** [1] - 32:6
**clarification** [2] - 58:4,
79:1
**clarify** [3] - 16:3, 69:7,
87:22
**clarity** [1] - 70:14
**class** [21] - 4:10,
12:15, 12:19, 12:22,
12:23, 12:25, 13:2,
13:3, 13:5, 15:3,
15:5, 30:10, 31:6,
32:2, 32:3, 32:5,
36:5, 38:13, 132:16,
133:11, 135:16
**classes** [3] - 32:1,
94:6, 94:8
**clear** [24] - 4:21, 5:5,
16:7, 20:1, 38:19,
51:2, 56:24, 57:8,
58:5, 58:10, 71:21,
72:24, 73:15, 74:8,
83:25, 87:24, 94:15,
101:18, 102:2,
104:21, 117:15,
126:6, 138:24,
139:10, 144:24
**cleared** [2] - 26:11,
26:13
**clearly** [5] - 33:13,
33:14, 35:11, 52:2,
59:1
**clerk** [1] - 37:6
**client** [1] - 90:24
**client's** [1] - 69:23

**client-specific** [1] -
90:24
**clients** [3] - 5:23, 39:5,
130:12
**clock** [2] - 22:3, 22:5
**close** [2] - 74:22,
109:3
**closed** [2] - 25:10,
37:21
**closely** [1] - 28:23
**closure** [1] - 36:6
**closure-related** [1] -
36:6
**coast** [1] - 110:16
**coffee** [1] - 3:15
**cogent** [1] - 31:15
**Cohen** [1] - 7:25
**Cohen's** [3] - 4:18,
7:18, 46:8
**colleague** [1] - 46:12
**colleagues** [1] - 16:4
**collective** [1] - 39:13
**collectively** [1] - 39:5
**color** [1] - 20:23
**combined** [1] - 59:17
**comfort** [1] - 76:7
**comfortable** [2] -
105:13, 144:11
**coming** [4] - 53:11,
53:24, 55:1, 55:11
**Commencing** [1] - 1:7
**comment** [5] - 47:2,
88:15, 98:23,
120:17, 122:7
**commentary** [2] -
33:23, 34:5
**comments** [6] - 31:15,
46:20, 121:3, 121:5,
122:3, 122:6
**commercial** [1] -
137:12
**commitment** [3] -
134:7, 134:8, 134:11
**committee** [3] - 34:19,
34:23, 143:19
**committees** [2] -
34:17, 34:21
**common** [1] - 44:25
**communicated** [1] -
28:13
**communications** [1] -
81:15
**companies** [4] - 54:4,
55:5, 75:15, 79:11
**Company** [1] - 35:14
**company** [9] - 84:10,
84:20, 84:22, 84:23,
86:3, 86:5, 86:7,
87:16, 94:1
**compel** [3] - 103:24,

111:17, 139:24
**compelling** [3] - 28:2, 28:3, 28:17
**competent** [1] - 80:24
**complacency** [1] - 29:11
**Complaint** [9] - 4:10, 15:5, 42:8, 42:10, 42:12, 42:13, 42:18, 42:19, 43:13
**complaints** [1] - 32:1
**Complaints** [3] - 26:12, 26:13, 42:17
**complete** [12] - 14:17, 14:21, 17:10, 21:6, 26:14, 28:12, 35:16, 70:14, 137:19, 138:18, 139:7, 139:8
**completed** [6] - 19:13, 20:16, 20:18, 21:13, 21:16, 45:19
**completely** [2] - 68:18, 122:19
**completing** [3] - 14:6, 26:16, 26:18
**complex** [8] - 29:1, 29:2, 31:23, 33:8, 34:9, 36:7, 37:8, 38:18
**complexities** [1] - 68:5
**complexity** [1] - 30:6
**complicated** [2] - 103:9, 107:11
**comply** [1] - 139:20
**composed** [1] - 34:14
**comprehensive** [1] - 50:4
**compromise** [2] - 96:16, 110:13
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**concede** [1] - 96:6
**conceded** [2] - 87:4, 87:22
**concedes** [1] - 103:9
**concentration** [2] - 72:6, 72:9
**concept** [2] - 110:23, 112:2
**conceptualize** [1] - 7:5
**concern** [5] - 57:2, 102:3, 102:4, 124:6
**concerned** [3] - 105:24, 110:3, 144:21
**concerning** [1] - 36:21
**concerns** [4] - 90:22,

98:2, 99:12, 111:22
**concisely** [1] - 140:25
**conclude** [1] - 128:5
**condition** [1] - 27:18
**conditioned** [1] - 29:18
**conditions** [1] - 118:17
**conduct** [4] - 4:5, 4:22, 101:6, 121:11
**conducted** [3] - 92:17, 110:25, 114:9
**confer** [25] - 23:12, 52:16, 56:25, 64:7, 64:16, 64:24, 68:14, 68:16, 68:20, 68:25, 69:5, 69:9, 71:15, 80:17, 98:3, 105:4, 106:7, 127:20, 133:21, 136:19, 140:18, 141:23, 142:7, 143:2
**conference** [4] - 8:5, 9:3, 28:19, 29:15
**CONFERENCE** [1] - 1:5
**Conference** [5] - 32:20, 34:13, 34:17, 34:24, 35:18
**conferences** [2] - 4:5, 29:17
**conferrals** [1] - 80:15
**conferring** [2] - 81:15, 136:20
**confers** [3] - 70:5, 128:19, 134:21
**confident** [3] - 18:22, 39:8, 122:18
**confidentiality** [1] - 138:3
**confirm** [2] - 78:15, 85:25
**confirmatory** [2] - 68:24, 69:1
**confirmed** [1] - 82:22
**conflict** [1] - 40:24
**confronted** [1] - 4:12
**confusion** [2] - 58:11, 77:11
**congestion** [1] - 35:20
**Congress** [2] - 33:20, 35:5
**connection** [7] - 67:7, 90:3, 95:7, 95:10, 98:10, 126:12, 136:6
**Connection** [1] - 111:18
**connectivity** [1] - 114:13
**consecutive** [1] -

114:19
**consent** [4] - 4:24, 42:23, 65:1, 138:1
**consequences** [2] - 52:14, 98:9
**consider** [1] - 95:21
**consideration** [2] - 39:15, 145:22
**conspiracy** [1] - 38:3
**constant** [1] - 30:15
**constitutional** [1] - 36:24
**constructive** [1] - 63:4
**contacted** [1] - 8:13
**contain** [1] - 123:12
**contained** [1] - 137:8
**containing** [1] - 54:20
**contains** [1] - 121:17
**contaminants** [1] - 13:18
**contaminated** [9] - 58:25, 59:7, 59:8, 63:4, 71:2, 71:7, 71:11, 71:12, 71:17
**contamination** [21] - 49:9, 49:11, 52:21, 53:13, 53:23, 54:6, 55:12, 66:11, 70:3, 70:9, 70:15, 70:17, 70:20, 72:4, 72:9, 72:20, 72:22, 73:3, 83:21, 85:10, 87:5
**contemplate** [2] - 18:23, 19:7
**contemplated** [1] - 145:8
**contemporaneous** [1] - 18:11
**contend** [1] - 109:19
**contention** [1] - 105:10
**contents** [2] - 56:14, 83:23
**contest** [1] - 84:8
**contested** [1] - 35:23
**context** [5] - 39:3, 62:6, 63:6, 105:3, 137:21
**continue** [8] - 9:24, 23:16, 36:11, 48:3, 48:19, 51:5, 51:6, 115:15
**CONTINUED** [1] - 2:1
**continued** [4] - 6:11, 23:4, 58:11, 85:3
**continuing** [1] - 80:17
**continuity** [3] - 29:22, 31:1, 31:10
**contracting** [1] - 118:6

**contrary** [1] - 53:9
**control** [10] - 54:19, 75:3, 75:23, 77:5, 77:22, 78:5, 78:9, 78:23, 79:3, 122:14
**controls** [3] - 57:10, 57:24, 61:1
**controversial** [3] - 111:8, 120:21, 122:2
**controversy** [1] - 76:24
**convenient** [3] - 3:16, 111:9, 111:10
**Convention** [3] - 101:10, 128:15, 129:3
**cooperation** [1] - 63:23
**cooperatively** [1] - 129:25
**coordinate** [1] - 140:13
**copies** [8] - 138:5, 138:15, 138:19, 138:21, 139:3, 139:7, 139:8
**copy** [2] - 42:24, 60:25
**core** [1] - 92:13
**Corp** [1] - 104:20
**corporate** [13] - 39:8, 44:15, 44:16, 47:9, 61:12, 71:18, 76:15, 77:17, 95:4, 131:13, 131:15, 133:11, 134:16
**corporations** [1] - 39:18
**correct** [21] - 8:16, 11:4, 12:20, 17:11, 20:19, 20:21, 22:18, 24:24, 24:25, 47:9, 51:9, 51:24, 53:1, 57:25, 58:8, 75:25, 78:12, 80:4, 82:11, 138:14, 139:4
**correctly** [4] - 16:9, 78:11, 82:8, 141:12
**correspondence** [2] - 61:20, 63:19
**cost** [10] - 28:4, 31:11, 38:21, 38:23, 39:9, 39:20, 104:18, 113:13, 113:15, 113:17
**costs** [6] - 39:13, 39:16, 39:23, 113:20, 113:23, 113:25
**counsel** [52] - 4:9, 8:14, 9:1, 12:14,

12:18, 13:8, 24:8, 24:20, 25:12, 39:9, 40:5, 41:23, 43:20, 45:16, 50:16, 51:5, 52:17, 53:1, 56:18, 57:19, 62:13, 63:17, 67:10, 68:17, 70:23, 74:25, 79:20, 80:9, 80:16, 80:17, 81:1, 81:3, 83:5, 98:2, 98:16, 101:7, 107:4, 109:13, 109:25, 110:11, 118:14, 121:10, 121:11, 122:2, 122:11, 123:7, 124:2, 124:3, 125:14, 125:24, 125:25, 126:4
**Counsel** [4] - 51:6, 84:19, 140:4, 146:6
**count** [3] - 124:22, 127:5, 145:16
**counted** [1] - 126:7
**countries** [2] - 108:23, 109:21
**countries'** [1] - 120:10
**country** [10] - 5:12, 7:4, 39:12, 92:16, 95:20, 97:5, 118:15, 119:24, 122:22
**couple** [6] - 11:15, 16:2, 16:3, 22:22, 45:13, 98:2
**course** [32] - 13:6, 18:9, 26:25, 28:14, 29:6, 40:1, 65:12, 70:6, 73:6, 75:4, 75:23, 76:5, 76:10, 76:20, 77:6, 77:22, 78:10, 88:13, 93:9, 95:3, 109:12, 109:18, 114:10, 116:24, 116:25, 118:9, 125:17, 130:18, 137:7, 140:15, 143:2
**Court** [21] - 1:22, 7:10, 33:17, 35:2, 35:3, 35:12, 36:4, 36:14, 46:18, 88:7, 88:8, 93:7, 94:3, 94:15, 116:11, 117:15, 118:16, 118:19, 119:15, 139:21, 141:1
**COURT** [1] - 1:1
**court** [1] - 11:5
**Court's** [12] - 11:6, 23:13, 28:11, 47:24, 60:11, 67:18,

100:11, 100:19,
127:14, 137:7,
144:8, 146:4
**Court-ordered** [2] -
88:8, 93:7
**courthouse** [1] -
18:22
**Courts** [2] - 34:3,
117:12
**courts** [8] - 5:24, 6:5,
6:6, 6:19, 25:10,
28:20, 34:8, 35:20
**cover** [3] - 86:19,
90:19, 117:25
**coverage** [1] - 19:14
**covered** [3] - 79:25,
84:16, 119:22
**covers** [2] - 86:13,
121:21
**COVID** [9] - 5:13, 7:10,
27:20, 29:20, 33:14,
68:6, 109:18,
111:19, 117:4
**COVID-19** [6] -
116:24, 117:14,
117:16, 118:2,
118:7, 118:11
**COVID-induced** [1] -
7:10
**cracking** [3] - 133:15,
135:12, 135:19
**cracks** [1] - 141:6
**cranking** [1] - 12:17
**create** [1] - 53:8
**creation** [1] - 33:21
**criminal** [9] - 5:15,
5:20, 6:20, 28:19,
28:22, 33:7, 34:20,
92:20, 106:22
**critical** [5] - 4:17,
4:18, 29:4, 35:20,
36:21
**cross** [6] - 19:2, 22:8,
27:12, 64:22, 85:24,
120:15
**cross-examined** [1] -
19:2
**cross-**
  **representatives** [1] -
  27:12
**culture** [3] - 120:10,
120:19, 122:4
**cure** [1] - 35:19
**current** [5] - 5:14,
32:12, 63:2, 68:2,
78:13
**custody** [10] - 5:16,
54:19, 75:3, 77:3,
77:5, 77:21, 78:5,
78:9, 78:23, 79:3

**customer** [1] - 84:7
**Customer** [1] - 37:22
**customers** [1] - 84:5
**customs** [1] - 122:21
**cut** [5] - 45:1, 54:8,
67:11, 90:1, 144:10
**cutting** [1] - 73:11

### D

**D17** [1] - 119:25
**D18** [1] - 120:1
**damage** [2] - 71:6,
122:14
**Dan** [1] - 9:8
**Daniel** [2] - 19:6,
21:22
**DANIEL** [1] - 1:18
**Danny** [1] - 9:9
**data** [5] - 81:24, 81:25,
140:23, 142:12,
142:13
**Data** [1] - 37:22
**date** [8] - 14:13, 21:4,
43:7, 43:13, 53:22,
88:7, 132:5, 140:17
**dated** [1] - 47:24
**dates** [15] - 5:2, 14:14,
14:19, 16:2, 16:15,
17:23, 40:9, 43:14,
132:19, 132:22,
132:24, 133:3,
133:8, 133:10,
133:13
**Daubert** [14] - 12:12,
12:19, 12:24, 14:22,
14:25, 15:1, 16:20,
16:23, 17:8, 17:9,
18:9, 18:13, 18:25,
31:6
**David** [5] - 8:12, 9:5,
9:23, 10:15, 140:5
**DAVID** [1] - 1:15
**days** [32] - 17:21,
17:24, 18:2, 18:8,
19:23, 19:24, 21:3,
21:4, 21:7, 35:6,
35:9, 68:3, 68:8,
68:10, 68:17, 68:19,
69:4, 69:15, 69:17,
69:18, 69:20, 99:8,
99:9, 114:19, 117:9,
117:10, 117:11,
118:6, 119:3, 119:4,
124:19, 125:22
**deadline** [2] - 16:7,
16:13
**deadlines** [3] - 13:11,
16:6, 23:16
**deal** [22] - 15:6, 23:2,

43:25, 44:7, 44:20,
45:1, 45:2, 46:5,
73:19, 74:2, 74:3,
79:24, 89:10, 89:11,
90:1, 114:2, 119:1,
119:4, 127:6,
128:16, 136:1
**dealerships** [1] -
38:11
**dealing** [5] - 4:11,
46:15, 111:22,
112:7, 141:15
**deals** [1] - 49:6
**dealt** [3] - 46:15,
87:18, 88:5
**debacle** [1] - 3:12
**debate** [2] - 124:12,
124:20
**decade** [2] - 33:20,
35:16
**decades** [1] - 34:7
**December** [22] - 9:3,
9:14, 10:8, 10:18,
24:14, 40:22,
101:24, 101:25,
102:2, 104:24,
106:12, 128:9,
128:10, 129:8,
129:11, 130:9,
131:10, 131:14,
131:25, 133:10,
143:5, 143:9
**decide** [10] - 12:19,
13:1, 13:3, 19:3,
43:10, 89:5, 108:9,
130:20, 138:7,
139:25
**decided** [7] - 32:10,
33:19, 33:22, 36:14,
82:16, 95:13, 103:6
**decides** [2] - 35:3,
119:2
**deciding** [1] - 30:6
**decision** [2] - 28:10,
86:24
**decisions** [5] - 4:6,
12:19, 43:1, 65:6,
132:13
**decline** [1] - 139:13
**deemed** [1] - 121:5
**deep** [1] - 102:12
**default** [2] - 112:20,
114:9
**Defendant** [5] - 2:8,
2:16, 2:19, 2:22,
2:25
**defendant** [34] - 20:3,
20:5, 20:11, 20:16,
20:20, 20:25, 21:2,
21:6, 21:13, 21:19,

21:21, 22:15, 24:23,
25:17, 26:20, 27:11,
33:16, 37:11, 37:19,
37:21, 37:23, 38:13,
45:12, 47:8, 51:17,
60:22, 70:6, 71:12,
74:5, 93:9, 94:2,
95:5, 130:4, 140:9
**defendants** [85] -
5:16, 8:2, 8:22, 8:24,
9:19, 9:24, 10:9,
10:12, 11:4, 12:20,
14:3, 15:8, 17:16,
19:11, 19:14, 19:21,
20:25, 21:9, 21:17,
21:24, 22:8, 23:11,
24:9, 25:19, 25:21,
26:16, 26:18, 32:7,
33:7, 35:13, 36:1,
38:21, 39:2, 39:4,
39:7, 39:8, 39:18,
41:8, 44:4, 44:14,
46:24, 48:20, 49:17,
49:20, 51:4, 54:20,
56:8, 57:16, 60:9,
60:14, 63:24, 64:6,
64:9, 64:13, 64:24,
68:6, 68:21, 68:25,
70:5, 71:17, 73:24,
80:6, 83:3, 91:10,
91:13, 92:4, 92:6,
108:19, 113:16,
124:7, 129:5,
129:21, 131:11,
132:11, 133:21,
134:10, 135:3,
136:10, 136:12,
136:16, 136:20,
137:8, 138:14,
140:22
**Defendants** [1] - 2:12
**defendants'** [21] -
11:8, 13:10, 14:18,
17:8, 17:10, 18:3,
26:3, 27:17, 39:22,
50:5, 68:4, 72:20,
73:13, 91:11, 91:15,
91:22, 108:18,
112:13, 112:25,
140:13, 140:22
**defense** [23] - 4:9, 8:3,
12:18, 16:10, 16:14,
16:15, 16:19, 18:10,
20:2, 20:9, 20:10,
23:6, 39:13, 39:24,
40:5, 45:16, 74:24,
94:22, 95:2, 110:22,
125:14, 127:23,
133:12
**Defense** [1] - 2:8
**deficiencies** [4] -

7:17, 135:24, 140:8,
142:1
**deficiency** [1] - 43:24
**defines** [1] - 51:15
**definition** [2] - 51:20,
56:12
**deflected** [1] - 55:6
**degree** [1] - 115:19
**Delaware** [2] - 36:17,
36:19
**delay** [6] - 28:4, 31:11,
38:25, 91:6, 118:9,
131:5
**delightful** [1] - 82:12
**delineate** [1] - 66:4
**delineating** [1] - 13:16
**demonstrate** [2] -
11:25, 12:21
**demonstrated** [1] -
85:15
**denied** [2] - 36:4,
71:22
**denote** [1] - 63:10
**deponents** [2] - 94:14,
129:19
**depose** [11] - 16:19,
44:16, 92:11, 93:1,
93:25, 116:4,
116:18, 119:2,
130:21
**deposed** [34] - 16:9,
16:12, 92:15, 93:5,
93:11, 93:17, 93:20,
97:25, 98:5, 99:10,
100:3, 100:6,
108:19, 110:24,
111:13, 111:15,
112:16, 113:3,
113:9, 116:10,
117:20, 117:22,
118:2, 118:24,
119:9, 126:11,
126:22, 130:13,
133:18, 134:25,
135:3, 135:8, 135:19
**deposing** [3] - 108:21,
110:5, 124:2
**deposition** [70] -
14:15, 14:21, 17:18,
17:23, 51:8, 53:18,
64:20, 68:4, 69:1,
72:17, 85:23, 86:5,
89:22, 89:24, 92:9,
92:16, 92:18, 92:19,
93:4, 93:6, 93:8,
93:10, 94:1, 94:4,
94:8, 98:13, 101:12,
102:9, 104:16,
105:2, 105:8,
106:23, 107:3,

108:2, 108:5,
110:15, 110:16,
112:18, 112:19,
112:23, 114:5,
114:9, 114:21,
115:7, 115:21,
117:11, 118:10,
118:21, 119:17,
121:15, 122:15,
123:16, 123:18,
123:21, 124:5,
124:12, 124:19,
124:21, 124:22,
125:1, 125:3, 125:6,
125:10, 125:16,
125:25, 126:7, 127:3
**depositions** [59] -
14:18, 14:21, 16:15,
17:8, 17:11, 27:11,
29:4, 31:5, 44:6,
55:16, 68:11, 68:18,
68:21, 71:10, 71:19,
88:5, 98:21, 99:8,
101:3, 101:9, 103:4,
103:5, 103:7,
103:20, 104:4,
104:19, 105:16,
106:17, 107:6,
108:1, 108:16,
108:21, 109:14,
110:23, 110:25,
111:5, 111:20,
111:24, 113:15,
113:17, 115:2,
115:16, 117:8,
118:10, 120:13,
124:7, 128:14,
128:17, 128:23,
129:1, 130:15,
130:20, 131:20,
131:22, 132:4,
135:12, 136:15,
146:8
**deps** [1] - 107:24
**describe** [1] - 87:11
**described** [3] - 28:18,
36:9, 142:2
**designate** [1] - 117:24
**designated** [1] - 134:4
**designations** [1] -
138:4
**designee** [8] - 47:9,
61:12, 66:6, 70:13,
72:8, 77:20, 78:21
**designees** [2] - 47:10,
77:16
**detail** [4] - 66:18,
74:12, 127:19, 146:3
**detect** [1] - 66:10
**determination** [4] -

99:19, 100:9,
100:16, 103:11
**determine** [2] - 37:1,
136:12
**determined** [2] - 99:4,
133:23
**developed** [1] - 34:7
**development** [1] -
86:12
**DFS** [1] - 22:5
**DFSs** [1] - 19:13
**dial** [1] - 126:14
**dials** [1] - 126:18
**Dicamba** [1] - 37:13
**DICAMBA** [1] - 37:13
**difference** [2] - 92:3,
112:9
**differences** [4] -
91:23, 109:12,
111:6, 123:19
**different** [24] - 22:8,
27:10, 27:15, 31:24,
32:1, 37:25, 44:9,
44:23, 50:1, 52:22,
52:23, 52:24, 63:24,
63:25, 75:22, 90:17,
93:14, 94:18, 101:2,
115:6, 118:15,
123:25, 124:1, 130:4
**differing** [2] - 125:23,
126:3
**difficult** [3] - 110:17,
112:9, 146:11
**difficulties** [4] - 28:25,
109:11, 110:4, 110:5
**difficulty** [1] - 105:14
**direct** [4] - 5:6, 38:3,
38:7, 38:10
**directed** [3] - 35:22,
85:19, 86:25
**directing** [1] - 104:16
**direction** [3] - 87:25,
107:24, 108:4
**directly** [2] - 60:9,
87:2
**director** [3] - 93:2,
93:25, 98:15
**disagree** [12] - 45:23,
45:24, 73:5, 96:4,
96:13, 99:3, 99:17,
100:13, 100:21,
102:25, 107:16
**disagreement** [1] -
135:10
**disagrees** [1] - 60:1
**disclose** [2] - 13:12,
13:24
**disclosures** [1] -
24:16
**discovered** [2] -

14:11, 54:25
**discovery** [58] - 12:14,
12:23, 14:7, 15:3,
15:10, 21:21, 22:7,
23:23, 26:6, 26:13,
26:15, 26:24, 27:7,
27:14, 31:4, 35:22,
36:8, 36:11, 36:16,
40:7, 40:12, 40:16,
40:22, 43:25, 47:6,
47:13, 47:14, 47:19,
47:20, 48:21, 49:2,
52:3, 53:3, 53:22,
54:18, 58:9, 58:15,
58:18, 59:4, 59:12,
59:13, 59:14, 59:18,
59:21, 60:11, 60:12,
60:20, 60:23, 62:15,
72:12, 73:7, 84:12,
92:13, 102:1, 105:7,
135:15, 135:25,
140:3
**discovery-related** [2]
- 36:8, 36:16
**discreet** [3] - 80:22,
80:25, 81:14
**discretion** [2] - 28:11,
111:15
**discuss** [20] - 9:1,
19:25, 21:25, 23:6,
24:2, 24:8, 41:17,
42:9, 74:17, 81:20,
82:21, 83:4, 90:16,
114:17, 115:13,
115:14, 124:15,
125:11, 131:25,
143:24
**discussed** [9] - 25:9,
26:2, 79:25, 106:6,
117:19, 130:1,
133:16, 135:22,
141:25
**discussing** [4] - 42:6,
61:6, 85:17, 117:21
**discussion** [15] -
22:11, 23:1, 46:3,
52:2, 64:5, 71:13,
74:8, 80:18, 91:10,
101:14, 115:16,
129:22, 135:12,
144:6, 144:23
**discussions** [14] - 5:1,
12:13, 25:11, 28:13,
52:17, 82:18, 82:20,
86:23, 129:21,
134:2, 134:14,
134:20, 134:23,
145:2
**disease** [1] - 3:23
**dishes** [1] - 103:15

**dismissed** [8] - 7:21,
8:11, 8:17, 8:20,
9:14, 11:17, 11:23,
15:14
**disparagement** [1] -
120:9
**disparaging** [2] -
121:20, 121:24
**dispose** [1] - 73:23
**disposed** [1] - 104:24
**disposes** [1] - 73:22
**dispositive** [4] -
11:10, 35:23, 35:25,
37:1
**dispute** [18] - 45:14,
46:18, 58:2, 58:11,
61:10, 72:13, 72:14,
73:1, 74:10, 74:13,
78:14, 81:19, 99:3,
100:24, 115:3,
124:19, 125:23,
129:24
**disputed** [1] - 103:2
**disputes** [6] - 26:22,
27:5, 27:14, 56:6,
80:1, 126:23
**disrupt** [1] - 120:17
**disruption** [1] -
130:14
**disruptive** [2] - 105:1,
122:14
**distance** [1] - 111:6
**distinct** [2] - 36:25,
81:4
**distinction** [3] - 53:9,
70:24, 94:13, 95:23
**distribution** [2] - 20:6,
32:8
**distributors** [1] - 54:1
**district** [8] - 5:14,
31:22, 32:14, 33:5,
33:13, 34:8, 34:15,
36:23
**District** [7] - 4:25, 5:7,
5:10, 7:12, 36:17,
36:19, 94:2
**DISTRICT** [3] - 1:1,
1:1, 1:8
**districts** [1] - 5:11
**DJ** [1] - 110:18
**do's** [1] - 145:14
**docket** [2] - 28:22,
33:7
**document** [15] -
26:17, 26:19, 68:13,
97:17, 105:9,
106:16, 123:22,
123:23, 124:9,
125:9, 126:2, 126:7,
137:14, 137:15,

137:19
**documented** [1] - 76:7
**documents** [50] -
48:7, 49:7, 49:9,
49:10, 53:19, 53:21,
54:9, 59:15, 61:20,
62:17, 64:18, 66:20,
68:2, 68:3, 68:8,
69:13, 71:9, 75:2,
87:6, 90:1, 92:13,
106:8, 106:10,
107:1, 123:15,
123:16, 124:4,
124:21, 125:1,
125:15, 125:21,
126:5, 136:23,
137:11, 138:8,
138:12, 138:15,
138:19, 138:22,
138:25, 142:15,
142:16, 142:21,
144:23, 145:5,
145:6, 145:11,
145:19
**dog** [1] - 54:1
**dollars** [2] - 39:6,
39:19
**Domestic** [1] - 38:2
**don'ts** [1] - 145:14
**Donald** [1] - 7:19
**done** [25] - 17:9,
19:19, 19:20, 19:23,
24:12, 30:10, 41:13,
41:22, 59:10, 77:19,
79:13, 79:16, 80:2,
80:19, 80:20, 85:17,
94:20, 94:21,
102:23, 105:17,
105:18, 110:25,
134:21, 135:16,
146:7
**Donio** [1] - 29:24
**Donna** [1] - 10:19
**Dorothy** [1] - 8:8
**dose** [15] - 21:8,
51:16, 52:5, 53:15,
63:7, 72:5, 83:8,
85:5, 85:6, 85:11,
85:12, 85:15, 85:24,
86:1
**doubt** [2] - 28:15,
103:10
**down** [21] - 5:10, 5:12,
6:10, 6:12, 11:13,
18:8, 23:9, 25:10,
27:5, 54:15, 64:9,
91:25, 104:15,
107:25, 108:14,
109:25, 116:21,
119:18, 121:4,

121:22, 136:11
**downstream** [3] - 21:9, 26:18, 74:23
**dozens** [1] - 32:7
**draft** [1] - 91:19
**drag** [1] - 27:5
**draw** [1] - 53:9
**driver** [1] - 110:18
**dropped** [1] - 131:12
**dropping** [1] - 105:25
**Drug** [1] - 140:23
**Drugs** [2] - 80:11, 81:4
**drugs** [2] - 31:24, 31:25
**Du** [1] - 134:4
**DUANE** [1] - 2:5
**dude** [1] - 87:10
**due** [7] - 13:6, 70:4, 70:13, 114:14, 116:25, 117:4
**during** [15] - 28:13, 52:2, 65:12, 70:6, 85:5, 97:6, 98:2, 105:4, 107:6, 118:5, 125:1, 125:14, 126:7, 144:23, 145:1
**Durl** [1] - 9:9
**DURL** [1] - 9:9

## E

**e-mails** [2] - 29:16, 55:7
**Eagles** [1] - 3:12
**early** [12] - 6:2, 6:10, 6:14, 12:11, 13:3, 40:21, 53:11, 62:18, 76:2, 116:7, 129:9, 129:10
**easier** [1] - 91:22
**east** [1] - 110:16
**East** [1] - 5:19
**easy** [3] - 7:16, 93:24, 109:16
**ECF** [1] - 91:20
**economic** [2] - 38:5, 38:13
**edited** [1] - 56:25
**editorialize** [1] - 97:20
**editorialized** [1] - 98:23
**edits** [1] - 91:14
**educated** [1] - 64:21
**effect** [6] - 35:7, 64:12, 64:17, 96:8, 121:10, 121:19
**effectively** [2] - 31:21, 38:20
**efficiency** [1] - 45:24
**efficient** [1] - 45:18

**efficiently** [1] - 46:2
**effort** [1] - 54:7
**eighth** [1] - 60:10
**Eisenhower** [1] - 1:12
**either** [5] - 91:4, 92:12, 95:15, 105:9, 124:17
**election** [1] - 60:25
**Elevator** [1] - 104:20
**elicit** [2] - 102:9, 104:3
**Ellis** [1] - 82:6
**ELLIS** [1] - 2:20
**embrace** [1] - 62:19
**embraced** [1] - 64:6
**emergency** [1] - 32:15
**emphasized** [1] - 29:22
**Employee** [1] - 37:20
**employee** [2] - 93:16, 93:17
**employees** [3] - 27:11, 98:17, 135:1
**employment** [1] - 34:6
**en** [1] - 57:17
**enable** [2] - 42:25, 47:8
**encompassing** [1] - 57:6
**end** [27] - 6:1, 13:24, 14:22, 15:14, 16:20, 16:23, 17:2, 22:19, 38:10, 39:14, 45:19, 57:4, 62:13, 90:25, 102:25, 103:16, 107:17, 108:8, 127:16, 129:19, 130:23, 133:1, 138:2, 145:12, 146:8
**endeavor** [3] - 88:10, 111:12, 134:15
**ENDED** [1] - 89:16
**ends** [1] - 7:1
**endure** [1] - 97:4
**English** [2] - 120:20, 121:23
**enormous** [1] - 33:6
**enter** [4] - 42:12, 43:6, 43:13, 109:17
**entered** [7] - 32:10, 42:15, 45:21, 47:6, 72:12, 131:15, 131:16
**entering** [1] - 5:5
**entire** [7] - 20:4, 29:21, 32:17, 53:2, 54:6, 74:16, 117:25
**entities** [4] - 74:23, 76:18, 77:17, 135:2
**entitled** [2] - 52:3, 61:10, 63:3

**entity** [6] - 78:2, 78:4, 81:13, 83:16, 104:22, 137:13
**enunciated** [1] - 98:12
**equally** [1] - 81:2
**equipment** [1] - 38:11
**Erie** [2] - 42:11, 42:18
**ERMI** [1] - 37:24
**especially** [8] - 3:12, 42:25, 59:17, 68:22, 69:5, 95:24, 110:5, 118:13
**ESQUIRE** [13] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:6, 2:9, 2:10, 2:10, 2:14, 2:18, 2:21, 2:24
**essential** [2] - 92:21, 101:17
**essentially** [4] - 6:10, 20:12, 54:7, 125:13
**establish** [3] - 29:4, 54:16, 69:19
**established** [2] - 26:19, 94:24
**establishment** [3] - 136:9, 137:5, 137:6
**estimated** [1] - 39:9
**et** [12] - 30:7, 32:3, 34:20, 53:17, 53:24, 54:1, 64:12, 66:10, 98:15, 100:18
**Euric** [1] - 10:23
**EURIC** [1] - 10:23
**Europe** [5] - 53:5, 54:4, 54:12, 54:13
**evaluate** [3] - 53:5, 56:14, 83:22
**evaluation** [2] - 85:4, 86:19
**evaluations** [1] - 84:1
**Evelyn** [1] - 10:3
**evening** [2] - 82:20, 114:21
**eventually** [3] - 30:11, 33:21, 103:6
**everywhere** [1] - 56:23
**evidence** [2] - 54:16, 71:8
**Evidence** [1] - 101:5
**exact** [3] - 21:4, 53:16, 63:14
**exactly** [3] - 32:18, 56:18, 64:15
**examined** [1] - 19:2
**example** [18] - 26:6, 39:4, 45:8, 49:16, 53:10, 54:10, 58:12, 63:13, 64:5, 64:9,

66:11, 72:2, 81:22, 87:14, 103:18, 131:10, 134:2, 144:22
**examples** [1] - 53:21
**exceed** [1] - 39:14
**exceedingly** [1] - 106:24
**exceeds** [1] - 77:25
**excellent** [1] - 24:7
**except** [3] - 30:22, 49:8, 140:20
**exception** [2] - 47:21, 48:7, 58:17
**exceptional** [1] - 27:18
**exceptions** [1] - 59:23
**exchange** [3] - 19:22, 123:15, 124:18
**exchanging** [1] - 22:4
**excipients** [1] - 85:18
**exclude** [1] - 71:12
**excuse** [1] - 123:6
**executive** [2] - 98:15, 143:19
**exercising** [1] - 37:4
**exhaustively** [1] - 144:5
**Exhibit** [18] - 50:4, 50:6, 50:7, 50:14, 50:19, 51:7, 51:13, 54:10, 74:25, 75:6, 79:19, 80:8, 82:4, 82:13, 83:1, 91:11, 91:24
**exhibit** [4] - 75:13, 75:16, 91:21, 124:12
**Exhibits** [1] - 75:4
**exhibits** [7] - 50:12, 75:14, 82:19, 91:11, 123:12, 123:18, 124:18
**exist** [1] - 140:8
**expansion** [2] - 35:18, 49:1
**expect** [15] - 13:25, 29:18, 32:15, 32:22, 41:3, 68:1, 106:9, 106:25, 111:13, 114:7, 114:13, 118:4, 118:16, 133:22, 146:3
**expectation** [1] - 115:24
**expectations** [1] - 6:23
**expected** [2] - 66:6, 115:20, 121:11
**expecting** [1] - 82:18
**expense** [1] - 38:24

**expenses** [2] - 38:23, 39:1
**experience** [4] - 15:13, 34:3, 39:10, 139:11
**expert** [16] - 12:11, 13:13, 14:9, 14:12, 14:13, 14:17, 14:18, 14:20, 14:21, 17:10, 17:18, 17:21, 17:22, 18:25, 19:2
**experts** [12] - 12:24, 14:15, 16:8, 16:14, 16:15, 16:20, 17:8, 17:9, 17:20, 18:10, 19:1, 76:3
**experts'** [1] - 16:10
**explain** [4] - 52:14, 54:5, 122:13, 132:19
**explained** [1] - 60:6
**explicit** [1] - 120:18
**explicitly** [2] - 116:2, 120:12
**exploratory** [2] - 68:24, 69:3
**expound** [2] - 101:20, 102:11
**Express** [1] - 3:15
**express** [1] - 14:12
**expressed** [1] - 60:20
**expressly** [4] - 47:12, 48:22, 48:23, 60:10
**extend** [1] - 22:4
**extensive** [4] - 33:23, 52:16, 72:12, 128:25
**extensively** [2] - 33:24, 34:7
**extent** [16] - 8:4, 22:9, 49:13, 68:22, 72:3, 76:13, 78:22, 81:16, 84:14, 85:16, 87:12, 90:16, 96:22, 98:20, 103:3, 103:19
**eye** [1] - 127:21

## F

**face** [1] - 105:14
**facie** [2] - 69:20, 112:25
**facilities** [15] - 52:4, 52:10, 52:21, 53:11, 53:14, 55:14, 55:15, 55:21, 57:5, 58:3, 59:22, 63:1, 63:3, 88:25, 109:4
**facility** [8] - 53:6, 56:15, 57:10, 58:18, 58:22, 58:23, 59:6, 67:8

*facing* [1] - 29:20
*fact* [40] - 7:17, 14:7, 20:3, 20:5, 20:9, 20:11, 20:16, 20:20, 20:25, 21:2, 21:6, 21:7, 21:13, 21:15, 21:19, 22:3, 26:20, 27:10, 28:25, 31:4, 53:1, 78:20, 93:19, 94:14, 94:16, 95:4, 96:1, 96:17, 96:25, 100:2, 103:23, 105:9, 111:23, 116:3, 117:23, 121:24, 135:5, 135:15
*fact-based* [1] - 121:24
*factual* [2] - 29:5, 73:3
*fail* [1] - 122:20
*fair* [8] - 13:23, 23:15, 38:17, 65:6, 113:11, 119:12, 128:2, 144:12
*faire* [1] - 4:13
*fairly* [1] - 46:2
*fairness* [1] - 38:23
*fall* [3] - 12:11, 29:11, 106:20
*fallback* [1] - 63:18
*falls* [1] - 120:2
*familiar* [2] - 90:13, 126:10
*family* [4] - 3:25, 75:15, 77:18, 118:7
*fan* [1] - 7:7
*Fannie* [1] - 10:22
*FANNIE* [1] - 10:22
*far* [4] - 39:6, 55:12, 77:17, 105:6
*Fargo* [1] - 36:2
*favors* [1] - 31:16
*FDA* [21] - 61:19, 62:17, 62:20, 63:18, 66:20, 66:21, 81:14, 87:14, 136:10, 136:23, 137:10, 138:6, 138:15, 138:20, 138:25, 139:2, 139:6, 139:11, 139:14, 139:20, 139:23
*February* [2] - 20:20, 99:7
*February/March* [2] - 21:14, 21:17
*Federal* [4] - 36:3, 101:4, 145:21
*federal* [4] - 6:12, 115:11, 116:3, 116:9

*feelings* [1] - 7:7
*felt* [2] - 34:8, 37:8
*few* [14] - 23:1, 27:1, 45:15, 52:1, 57:15, 70:9, 75:25, 83:6, 91:19, 93:14, 118:11, 120:16, 125:21, 133:21
*fewer* [1] - 23:8
*field* [1] - 64:20
*fight* [2] - 119:6, 119:18
*fights* [1] - 118:23
*figure* [6] - 32:8, 40:1, 53:13, 71:16, 133:4, 136:12
*figuring* [3] - 14:3, 53:12, 121:22
*file* [15] - 5:6, 7:13, 11:10, 11:20, 11:23, 14:22, 18:13, 21:15, 42:13, 42:14, 108:10, 112:22, 138:6, 139:23, 139:24
*filed* [9] - 11:11, 42:10, 42:22, 43:5, 46:17, 91:19, 101:10, 107:19, 129:12
*filing* [3] - 4:20, 6:15, 18:9
*fill* [2] - 32:22, 136:14
*filled* [1] - 33:1
*filling* [1] - 33:3
*filter* [1] - 121:4
*final* [3] - 86:11, 88:6, 145:2
*finalize* [3] - 20:20, 67:14, 127:21
*finalized* [1] - 44:18
*finally* [3] - 5:24, 7:1, 119:2
*findings* [1] - 55:2
*fine* [22] - 15:24, 16:22, 19:18, 22:13, 23:8, 44:21, 84:11, 88:19, 89:4, 89:5, 91:2, 91:4, 100:13, 100:21, 104:10, 104:12, 112:21, 115:17, 125:12, 132:15, 138:20, 143:7
*finish* [2] - 89:2, 112:12
*finished* [15] - 21:8, 51:16, 52:5, 53:14, 63:7, 72:5, 83:8, 85:5, 85:6, 85:11, 85:12, 85:15, 85:24,

86:1
*first* [28] - 4:5, 4:16, 7:16, 21:23, 22:25, 31:9, 40:1, 44:8, 44:20, 45:1, 46:6, 46:15, 46:18, 53:25, 70:10, 75:7, 83:12, 84:16, 91:1, 92:3, 92:7, 97:21, 99:13, 106:5, 123:1, 140:25, 141:13, 141:20
*Fisher* [1] - 8:8
*FISHER* [1] - 8:8
*five* [11] - 14:23, 35:22, 44:4, 51:12, 114:19, 114:25, 117:24, 118:10, 135:6, 139:16
*five-hour* [2] - 114:19, 114:25
*fix* [1] - 38:3
*flattering* [1] - 121:3
*Flebia* [1] - 10:2
*FLEBIA* [1] - 10:3
*flexibility* [2] - 110:12, 110:13
*flexible* [1] - 117:13
*flip* [3] - 56:20, 71:11, 110:20
*flipping* [1] - 57:2
*Floor* [1] - 2:24
*floor* [1] - 74:3
*Florida* [1] - 1:19
*flow* [1] - 132:14
*fluency* [2] - 120:19, 121:23
*fly* [3] - 93:11, 94:4, 109:5
*focus* [2] - 47:18, 48:5
*focused* [3] - 23:21, 29:13, 34:1
*focusing* [1] - 46:13
*FOIA* [4] - 137:11, 137:15, 137:22, 139:14
*FOIA'd* [1] - 137:4
*folks* [2] - 13:15, 40:8
*follow* [1] - 11:24
*followed* [1] - 63:1
*following* [1] - 51:15
*food* [1] - 88:16
*FOR* [1] - 1:1
*force* [1] - 125:8
*foreign* [16] - 48:15, 49:6, 54:16, 59:14, 60:6, 60:12, 68:6, 104:21, 104:22, 105:11, 122:21, 123:12, 123:22,

125:9, 125:16, 133:19
*foreseeable* [1] - 28:25
*forget* [1] - 21:4
*form* [1] - 26:12
*formal* [3] - 11:21, 11:24, 37:16
*formalized* [2] - 4:14, 12:5
*formation* [3] - 85:18, 86:18, 86:21
*forth* [3] - 91:21, 140:25, 141:1
*forthcoming* [3] - 77:14, 77:15, 134:11
*forward* [10] - 8:4, 8:6, 17:4, 17:5, 27:9, 64:4, 99:10, 105:20, 111:11, 125:7
*four* [8] - 8:7, 8:14, 8:19, 8:20, 36:6, 44:3, 51:12, 145:18
*fourth* [1] - 32:21
*frame* [1] - 67:23
*frankly* [1] - 33:10
*free* [1] - 3:15
*Freedom* [1] - 137:4
*FREEMAN* [1] - 1:11
*fresh* [4] - 19:17, 20:13, 22:2, 22:15
*Friedlander* [1] - 1:22
*friedlanderreporter*
*@gmail.com* [1] -
1:22
*front* [8] - 46:8, 48:13, 49:4, 55:5, 56:6, 75:16, 91:25, 121:19
*fruit* [1] - 132:16
*fruitful* [2] - 80:24, 81:5
*full* [4] - 13:6, 35:15, 68:13, 144:11
*function* [2] - 34:2, 34:5
*functional* [1] - 97:17
*functions* [1] - 35:10
*fundamental* [1] - 37:2
*future* [7] - 4:7, 7:6, 11:10, 12:2, 39:10, 119:1, 127:7

## G

*G-U-N-T-E-R* [1] - 8:10
*gained* [1] - 34:3
*gal* [1] - 94:6
*garbled* [1] - 25:23
*gather* [1] - 76:4
*general* [28] - 5:2,

12:10, 12:12, 12:21, 13:7, 14:7, 14:9, 14:14, 26:8, 31:5, 46:18, 47:2, 47:3, 48:8, 49:22, 51:10, 54:22, 59:18, 61:15, 84:22, 89:22, 89:25, 95:15, 97:13, 108:20, 116:2, 121:17, 135:16
*generalities* [1] - 132:9
*generally* [5] - 5:9, 6:22, 18:24, 42:7, 49:7
*generated* [1] - 56:7
*GEOPPINGER* [2] - 141:17, 143:10
*Geoppinger* [1] - 141:17
*Georgia* [1] - 2:11
*Gibson* [1] - 10:22
*given* [14] - 5:18, 21:24, 40:5, 60:22, 64:11, 68:4, 78:22, 97:2, 107:2, 107:8, 118:14, 122:9, 123:7, 128:24
*global* [11] - 45:25, 46:2, 46:6, 46:18, 60:7, 70:1, 73:23, 80:1, 88:2, 97:6, 118:5
*Glover* [1] - 36:1
*GLOVER* [1] - 36:2
*Gold* [1] - 37:15
*GOLDBERG* [61] - 2:6, 11:3, 20:22, 24:23, 24:25, 25:20, 25:24, 26:2, 30:22, 41:8, 44:21, 45:22, 46:11, 61:22, 87:21, 89:3, 90:9, 91:9, 91:18, 92:2, 93:13, 94:12, 95:11, 96:14, 96:20, 96:22, 99:21, 99:24, 100:23, 103:22, 106:2, 106:5, 108:11, 112:11, 113:11, 113:13, 114:3, 115:5, 115:10, 115:18, 116:13, 116:15, 116:20, 119:12, 119:21, 120:5, 120:25, 122:1, 123:11, 125:18, 125:20, 128:2, 129:5, 129:8, 129:13, 130:8,

132:21, 132:24,
133:3, 133:8, 134:18
**Goldberg** [32] - 11:3,
20:22, 24:24, 25:20,
25:22, 30:21, 44:19,
45:22, 46:9, 61:22,
87:21, 90:7, 91:5,
91:17, 95:8, 99:15,
100:8, 102:19,
103:16, 105:4,
106:2, 112:12,
113:10, 113:22,
118:18, 120:4,
127:24, 128:12,
129:20, 130:8,
130:16, 134:18
**Goldberg's** [1] -
143:16
**GOLDENBERG** [1] -
80:21
**Goldilocks** [1] -
140:17
**GOLOMB** [1] - 1:14
**GORDON** [1] - 2:23
**govern** [1] - 101:6
**governing** [1] - 34:13
**government** [6] -
6:11, 92:11, 92:18,
106:19, 120:11,
122:3
**governs** [1] - 98:21
**grand** [2] - 6:12, 6:14
**grant** [1] - 69:22
**granted** [1] - 43:4
**granting** [2] - 18:15,
43:6
**granular** [2] - 30:6,
56:13
**grateful** [1] - 74:14
**great** [9] - 18:18,
40:14, 46:14, 48:2,
48:3, 48:4, 48:18,
58:14, 64:5, 64:16,
79:17, 80:2, 88:4,
89:3, 103:9, 107:16,
133:20, 140:2,
146:14
**Greenberg** [3] - 8:2,
17:16, 143:18
**GREENBERG** [1] - 2:9
**Greenburg** [1] - 83:3
**Greene** [2] - 143:22,
144:17
**GREENE** [2] - 2:10,
144:17
**grounds** [2] - 40:24,
41:2
**group** [3] - 8:3, 8:13,
98:4
**Group** [1] - 2:8

**groups** [1] - 37:21
**guess** [6] - 13:18,
29:25, 104:6,
107:21, 108:16,
137:18
**guidance** [5] - 29:16,
107:9, 107:19,
107:20, 136:21
**guide** [1] - 112:5
**Gunter** [1] - 8:9
**guy** [1] - 94:6
**Gypsum** [1] - 35:14

## H

**Hague** [4] - 101:10,
107:23, 128:15,
129:3
**Hair** [1] - 37:18
**hand** [1] - 136:3
**handle** [2] - 102:5,
136:4
**handled** [3] - 29:9,
32:18, 76:12
**handling** [1] - 132:18
**hands** [1] - 135:20
**hang** [4] - 25:2, 90:4,
95:8, 99:6
**hanging** [2] - 105:13,
132:16
**happy** [12] - 4:2,
57:13, 57:21, 67:15,
74:16, 83:9, 90:25,
101:19, 102:13,
114:22, 140:10,
140:16
**hard** [5] - 12:4, 84:7,
108:1, 112:1, 122:12
**Hardcastle** [1] - 10:3
**HARDCASTLE** [1] -
10:3
**harder** [1] - 117:4
**HARKINS** [11] - 2:10,
8:1, 8:24, 9:19,
10:12, 83:2, 83:12,
84:14, 84:25, 86:11,
87:25
**Harkins** [2] - 8:1, 83:2
**harm** [1] - 84:18
**harshly** [1] - 123:5
**haul** [1] - 110:18
**Hawkins** [1] - 10:3
**head** [2] - 30:12, 31:17
**headed** [3] - 26:7,
27:9, 27:13
**health** [3] - 118:20,
119:8, 119:16
**healthy** [1] - 42:1
**hear** [11] - 26:25, 41:3,
46:24, 82:8, 82:12,

88:14, 96:11, 144:2,
144:4, 146:2
**heard** [8] - 5:11,
22:22, 26:21, 95:25,
102:16, 141:5,
141:25, 143:25
**hearing** [4] - 102:2,
103:12, 110:4,
127:18
**hearings** [7] - 12:12,
15:1, 18:21, 18:23,
34:22, 125:14
**hears** [1] - 64:1
**heated** [1] - 120:13
**heavily** [3] - 35:13,
56:25, 62:9
**heavy** [1] - 28:22
**Hebert** [1] - 10:7
**HEBERT** [1] - 10:8
**Heinz** [4] - 79:21,
79:23, 80:5, 80:13
**HEINZ** [4] - 2:14,
79:21, 79:25, 80:4
**held** [2] - 49:7, 113:5
**hello** [5] - 15:22, 28:9,
41:20, 44:11, 126:19
**help** [4] - 34:8, 42:6,
93:7, 95:9
**helpful** [7] - 33:17,
39:20, 49:23,
101:20, 111:25,
126:16, 140:11
**helping** [1] - 146:12
**Herbicide** [1] - 37:13
**heritage** [3] - 120:10,
120:19, 122:4
**Hetero** [8] - 2:19, 80:8,
80:11, 80:23, 81:4,
81:14
**Hetero's** [1] - 80:23
**Hi** [1] - 79:23
**highest** [1] - 121:2
**highlight** [1] - 71:24
**highlights** [1] - 72:2
**highly** [2] - 71:21,
122:14
**Hightower** [1] - 10:22
**HILL** [1] - 2:17
**HILTON** [4] - 2:3,
137:2, 137:23, 138:9
**Hilton** [2] - 136:5,
137:3
**hold** [6] - 50:8, 55:18,
100:9, 100:10,
131:17
**hole** [1] - 121:22
**Holiday** [1] - 3:14
**holiday** [2] - 43:16,
146:14
**Home** [1] - 36:2

**Hong** [27] - 93:5, 94:4,
108:20, 108:21,
108:24, 109:2,
109:5, 109:8, 109:9,
109:12, 110:5,
110:15, 110:21,
110:24, 111:21,
112:19, 112:23,
114:6, 114:8,
114:10, 114:18,
114:20, 115:21,
115:24, 117:9,
117:10, 118:5
**HONIK** [1] - 1:14
**Honor** [206] - 3:5, 3:8,
8:1, 8:12, 8:24, 9:20,
9:24, 10:12, 11:3,
15:22, 16:16, 17:12,
18:7, 18:18, 19:6,
19:25, 20:22, 20:23,
21:22, 24:25, 25:20,
26:2, 26:8, 26:21,
27:3, 27:22, 27:24,
28:9, 28:10, 28:13,
28:15, 28:16, 28:18,
30:18, 30:22, 30:23,
30:24, 31:9, 41:8,
41:9, 41:10, 44:11,
44:21, 45:3, 45:5,
45:10, 45:22, 46:2,
46:3, 46:11, 46:19,
47:1, 47:16, 50:15,
51:1, 51:24, 52:2,
53:1, 53:20, 54:15,
54:18, 55:14, 55:17,
55:24, 56:4, 56:24,
57:13, 59:11, 61:22,
62:5, 62:6, 62:18,
62:22, 62:24, 63:15,
63:20, 64:1, 64:11,
65:5, 66:3, 67:4,
67:12, 67:21, 68:10,
69:7, 69:24, 70:16,
70:19, 71:13, 71:24,
72:18, 73:22, 74:21,
75:5, 76:25, 79:6,
79:12, 79:13, 79:21,
80:1, 80:10, 80:14,
81:10, 82:5, 82:7,
82:11, 82:22, 83:2,
84:14, 84:25, 85:21,
86:11, 87:1, 87:21,
88:10, 88:15, 88:19,
89:3, 89:14, 90:9,
91:2, 91:9, 91:16,
91:19, 91:23, 93:13,
94:12, 95:11, 97:12,
98:12, 98:25, 99:21,
99:24, 101:20,
101:25, 102:2,
102:12, 102:17,

103:22, 104:6,
105:3, 105:15,
106:2, 106:12,
108:11, 109:23,
112:11, 113:3,
113:5, 114:3, 114:8,
115:13, 116:16,
119:12, 120:5,
120:25, 121:7,
121:8, 122:1,
123:11, 124:24,
125:18, 126:9,
126:10, 126:15,
126:19, 128:2,
128:6, 128:21,
129:13, 129:16,
130:8, 131:4,
131:18, 132:21,
133:9, 133:20,
134:3, 134:18,
134:24, 136:7,
137:2, 137:23,
138:9, 138:13,
138:24, 139:9,
140:1, 140:5, 140:7,
140:11, 140:20,
141:7, 141:17,
141:19, 142:24,
143:10, 143:14,
143:17, 144:16,
144:17, 145:1,
145:4, 145:12,
145:23
**Honor's** [3] - 29:7,
65:24, 104:23
**HONORABLE** [2] -
1:8, 1:9
**hope** [9] - 3:20, 5:25,
6:2, 111:25, 134:15,
143:13, 144:7,
146:13
**hoped** [1] - 141:2
**hopefully** [6] - 54:14,
80:12, 112:6, 112:7,
128:3, 143:10
**hoping** [1] - 126:14
**Houchin** [1] - 10:5
**HOUCHIN** [1] - 10:5
**hour** [8] - 89:13,
109:4, 109:5,
114:10, 114:18,
114:19, 114:25,
134:21
**hourly** [1] - 39:2
**hours** [5] - 109:13,
112:3, 114:6, 115:9,
115:11
**Huahua** [4] - 74:23,
76:15, 77:18, 77:19
**Huey** [1] - 7:19

HUEY [1] - 7:19
hundred [1] - 118:19
hundreds [1] - 32:11
hypothetical [4] -
84:4, 84:17, 92:25,
93:24
hypothetically [1] -
116:6

**I**

idea [6] - 22:14, 24:10,
24:11, 25:16, 25:18,
104:18
identical [1] - 75:18
identification [2] -
13:20, 61:15
identified [5] - 28:1,
52:11, 80:21, 94:13,
106:19
identify [6] - 37:7,
44:25, 47:7, 47:8,
61:11, 67:19
identifying [2] - 68:7,
72:10
III [1] - 13:9
immaterial [1] - 75:11
immediately [1] -
12:25
immense [1] - 29:19
impacted [1] - 116:24
impaneled [1] - 6:14
impending [1] - 31:18
impermissibly [1] -
36:24
implicate [1] - 105:23
implicated [2] - 85:18,
105:6
implicit [1] - 116:1
important [24] - 34:11,
44:5, 44:10, 54:24,
65:2, 71:10, 88:23,
96:24, 100:4,
101:13, 101:15,
102:4, 104:5,
116:22, 117:18,
120:1, 120:11,
122:9, 123:20,
130:11, 130:12,
130:17, 135:18,
138:22
importantly [1] -
117:7
impose [2] - 28:3,
77:24
imposing [1] - 38:23
impossible [2] - 53:8,
53:18
impurities [6] - 13:17,
54:22, 55:12, 59:18,

72:25, 73:2
impurity [2] - 48:8,
66:10
IN [1] - 1:3
inappropriate [1] -
72:16
Inc [3] - 2:12, 2:13,
2:16
incentivize [1] -
130:10
inclination [1] -
104:23
inclined [4] - 23:13,
30:24, 98:25, 144:2
include [18] - 47:21,
49:17, 51:16, 51:17,
51:19, 52:9, 58:9,
67:5, 72:15, 99:16,
100:12, 100:20,
112:14, 113:24,
121:10, 123:8,
127:4, 127:14
included [8] - 61:5,
78:19, 96:5, 105:22,
111:7, 122:17,
123:10, 143:23
including [4] - 3:24,
31:11, 34:19, 135:15
inclusion [2] - 60:21,
102:21
incoming [1] - 85:14
inconsistent [1] -
59:12
incorporate [1] -
47:13
incorporated [3] -
49:14, 60:13, 102:17
incorporates [1] -
60:11
increased [2] -
114:11, 115:3
incredible [2] - 6:19,
29:12
incredibly [1] - 29:1,
108:2
independent [3] -
76:3, 84:22, 86:5
independently [1] -
87:13
Indian [8] - 90:12,
90:14, 90:17, 90:21,
101:1, 120:8,
120:10, 127:20
indicate [3] - 42:22,
55:20, 88:7
indicated [3] - 12:13,
39:7, 43:14
indicates [3] - 43:5,
58:1, 58:2
indict [1] - 6:11

indictments [1] - 6:15
individual [7] - 45:2,
46:6, 74:4, 94:14,
95:25, 97:4, 117:23
individualized [1] -
73:25
individually [1] -
73:21
induced [1] - 7:10
indulgence [2] - 65:9,
145:25
Industries [2] - 2:12,
37:20
inevitably [1] - 119:5
inform [2] - 40:21,
41:1
informal [3] - 12:3,
25:11, 71:14
informally [1] - 69:2,
141:3
Information [1] -
137:4
information [35] -
20:11, 21:6, 21:9,
52:7, 54:17, 54:19,
54:20, 55:8, 59:16,
59:24, 69:2, 70:8,
75:2, 76:4, 76:10,
76:18, 76:21, 77:4,
77:9, 78:5, 78:22,
84:8, 84:10, 84:12,
84:20, 84:23, 86:7,
87:2, 87:12, 87:13,
87:19, 137:13,
138:1, 142:22, 145:7
informed [1] - 81:1
informing [1] - 33:10,
64:3
infringement [1] -
122:25
initial [4] - 20:8, 21:2,
21:12, 98:4
initiate [1] - 20:2
injuries [2] - 32:2,
73:15
injury [5] - 15:10,
23:3, 27:13, 38:5,
38:14
inkling [1] - 71:1
Inn [1] - 3:15
input [1] - 86:23
inquiries [3] - 53:23,
55:11, 75:25
inquiry [1] - 87:17
inspection [4] - 136:9,
137:5, 137:6, 139:2
instance [3] - 40:1,
60:19, 69:18
instead [2] - 112:24,
114:18

institutional [1] -
29:23
instructed [1] - 11:20
instruction [1] - 51:10
instructive [1] - 36:5
Insurance [1] - 35:13
intend [3] - 48:16,
124:8, 126:24
intended [8] - 48:6,
51:18, 51:20, 52:5,
56:12, 56:15, 58:16,
66:9
intends [1] - 95:12
intention [4] - 22:9,
35:24, 40:21, 95:3
interest [6] - 16:17,
37:2, 40:24, 67:11,
67:13, 69:23
interested [6] - 30:8,
63:11, 63:12, 65:21,
66:15, 131:21
interference [6] - 95:7,
95:10, 98:10,
111:18, 126:12,
136:6
interference) [1] -
90:3
internal [1] - 55:7
interpretation [1] -
53:2
interpreted [2] -
123:20, 126:2
interrupt [1] - 55:25
interrupting [2] -
48:11, 51:2
intervene [1] - 10:25
intervention [1] - 11:6
intra [3] - 117:3, 117:5
intra-China [3] -
117:3, 117:5
introduces [1] - 77:25
introducing [1] -
77:11
introductions [1] -
69:12
investigation [4] -
61:20, 62:22, 84:22,
86:6
invites [1] - 118:23
involved [3] - 47:17,
95:19, 106:19
involving [1] - 5:15
Issue [1] - 140:20
issue [140] - 4:11,
4:16, 13:5, 22:24,
24:22, 25:12, 25:15,
38:21, 38:22, 39:20,
40:10, 42:8, 43:24,
43:25, 44:3, 44:10,
44:12, 45:8, 45:10,

46:15, 46:20, 46:22,
47:14, 50:20, 52:10,
54:6, 54:25, 55:21,
57:4, 57:5, 57:7,
57:12, 57:22, 58:3,
58:7, 58:15, 59:9,
60:2, 60:5, 60:7,
60:18, 61:3, 61:4,
61:16, 65:10, 65:11,
67:3, 69:10, 70:1,
70:13, 72:19, 74:7,
74:18, 74:21, 75:19,
76:8, 76:13, 80:16,
81:14, 81:18, 82:25,
83:12, 85:9, 89:10,
89:20, 90:17, 92:3,
93:14, 95:13, 97:14,
97:24, 98:17, 99:3,
100:1, 100:10,
101:1, 101:23,
102:23, 104:1,
104:4, 105:6,
106:12, 106:13,
107:5, 107:11,
107:21, 107:22,
109:24, 110:1,
113:6, 113:12,
113:13, 115:2,
115:6, 115:18,
116:22, 119:19,
119:22, 119:23,
120:1, 120:6,
120:23, 121:16,
127:7, 128:1,
128:12, 129:1,
129:25, 131:17,
134:19, 135:7,
135:23, 136:8,
136:18, 136:19,
137:20, 137:21,
138:7, 138:23,
139:16, 139:25,
140:3, 140:15,
140:20, 141:11,
141:13, 141:22,
141:23, 142:1,
142:3, 143:4, 143:7,
143:8, 143:23,
144:2, 144:6,
144:14, 146:2
issues [102] - 5:4, 8:5,
12:12, 12:14, 12:16,
12:23, 13:7, 14:7,
26:12, 26:22, 27:1,
29:5, 30:5, 30:13,
31:3, 31:4, 31:5,
32:11, 36:6, 36:11,
36:16, 36:22, 42:7,
43:19, 43:20, 43:22,
43:23, 43:25, 44:5,
44:8, 44:20, 44:23,

44:25, 45:2, 45:14,
45:17, 45:25, 46:2,
46:6, 46:7, 46:13,
49:12, 56:7, 59:16,
70:2, 70:9, 73:19,
73:20, 73:21, 73:23,
73:24, 73:25, 74:3,
79:14, 79:24, 82:9,
82:15, 83:6, 89:10,
90:23, 90:24, 91:25,
95:24, 97:21, 99:6,
101:22, 102:1,
102:5, 103:1, 103:6,
103:8, 104:18,
105:7, 105:19,
107:17, 107:18,
108:7, 108:9,
108:14, 109:24,
112:16, 119:20,
119:23, 124:21,
128:3, 128:5,
128:13, 128:15,
129:2, 129:11,
133:18, 135:15,
135:19, 135:22,
135:23, 136:1,
142:7, 146:5
item [2] - 86:11, 136:9
itself [1] - 101:14

## J

Jacqueline [1] - 10:2
James [2] - 9:7, 10:21
January [6] - 5:15,
44:7, 128:10, 132:5,
132:25, 135:13
Japanese [1] - 126:22
Japanese-speaking
[1] - 126:22
JASON [1] - 2:24
Jason [1] - 82:14
Jeff [4] - 141:17,
143:22, 143:25,
144:17
JEFFREY [1] - 2:10
JERSEY [1] - 1:1
Jersey [11] - 1:13,
3:24, 4:25, 5:7, 5:11,
6:23, 7:12, 28:21,
29:19, 33:3, 101:5
JESSICA [1] - 2:14
Jessica [1] - 79:21
job [1] - 35:11
JOEL [1] - 1:9
John [4] - 10:5, 10:7,
10:19, 134:4
JOHN [1] - 1:15
Johnny [1] - 10:21
joins [1] - 41:19

Joint [2] - 2:8, 36:18
joint [1] - 8:2
joyous [1] - 3:21
JPMDL [2] - 33:22,
37:5
judge [15] - 27:4,
27:22, 29:18, 30:2,
31:22, 32:16, 32:21,
34:14, 34:15, 35:19,
36:10, 36:23, 37:17,
41:19
Judge [59] - 3:4, 3:6,
3:9, 3:10, 4:10, 9:6,
15:4, 24:6, 25:1,
25:7, 26:5, 26:10,
26:23, 26:25, 27:15,
27:20, 29:9, 29:12,
29:22, 29:24, 29:25,
30:1, 30:4, 30:12,
30:24, 31:2, 31:7,
31:8, 31:18, 32:10,
32:16, 36:17, 40:14,
40:16, 41:14, 41:20,
41:21, 42:9, 42:16,
43:14, 46:14, 46:19,
52:7, 82:14, 89:8,
89:18, 90:6, 94:25,
95:16, 96:24,
116:23, 121:14,
122:18, 127:16,
135:14, 144:1,
146:13
JUDGE [199] - 1:8, 1:9,
3:3, 3:6, 3:9, 3:10,
3:14, 3:20, 6:7, 8:18,
9:4, 9:7, 9:21, 10:1,
10:13, 10:17, 11:8,
15:24, 16:14, 17:7,
17:13, 17:25, 18:12,
18:21, 19:18, 19:24,
20:15, 24:6, 24:24,
25:1, 25:4, 25:6,
25:8, 25:22, 25:25,
28:8, 30:19, 31:13,
41:12, 41:20, 41:21,
42:3, 42:4, 44:19,
44:22, 46:5, 46:14,
46:21, 47:22, 48:2,
48:10, 48:18, 49:3,
49:21, 50:6, 50:8,
50:11, 50:18, 50:25,
51:7, 51:10, 51:22,
51:25, 52:8, 55:18,
56:1, 57:7, 57:23,
58:1, 58:13, 58:20,
60:1, 60:4, 60:17,
61:2, 62:1, 65:8,
65:14, 65:18, 65:20,
65:25, 66:8, 67:17,
67:22, 69:16, 69:25,
71:23, 72:11, 74:2,

75:6, 75:12, 75:17,
75:20, 78:6, 78:14,
78:24, 79:7, 79:10,
79:15, 79:18, 79:23,
80:2, 80:5, 80:8,
80:12, 80:19, 81:11,
82:1, 82:4, 82:8,
82:12, 83:1, 83:11,
84:4, 84:18, 86:2,
87:16, 88:4, 88:13,
88:21, 89:4, 89:9,
89:17, 90:6, 90:22,
91:7, 91:17, 91:24,
92:24, 93:22, 95:8,
96:2, 96:19, 96:21,
97:11, 99:15, 99:22,
100:8, 102:19,
104:9, 106:4, 107:7,
109:22, 112:10,
112:12, 113:7,
113:12, 113:22,
115:1, 115:9,
115:17, 116:1,
116:14, 116:17,
118:18, 119:14,
120:3, 120:23,
121:9, 122:16,
124:23, 125:19,
126:16, 127:2,
128:3, 128:7, 129:4,
129:7, 129:9,
129:15, 129:17,
130:16, 131:3,
131:7, 131:24,
132:2, 132:15,
132:23, 133:2,
133:6, 133:15,
135:11, 136:22,
137:1, 137:18,
138:3, 138:10,
138:17, 139:1,
139:5, 139:19,
140:2, 141:10,
143:1, 143:13,
143:15, 143:21,
144:4, 146:1
judges [6] - 30:1,
31:8, 32:13, 33:5,
33:14, 34:21
judgment [1] - 11:11
judicial [1] - 32:15
Judicial [5] - 32:20,
34:12, 34:17, 34:24,
35:18
Judiciary [1] - 34:14
July [8] - 14:22, 16:12,
16:19, 17:10, 49:11,
69:12, 92:13
jump [1] - 16:4, 48:10,
52:13, 108:14
jumped [3] - 53:25,

55:4, 56:5
jumping [1] - 47:1
June [6] - 6:7, 6:13,
16:11, 16:14, 16:20,
17:9
jurisdiction [22] -
4:19, 4:20, 4:22, 5:5,
5:8, 7:13, 46:10,
46:15, 46:17, 93:15,
94:15, 94:17, 94:19,
94:22, 94:24, 95:2,
95:13, 95:15, 96:5,
96:9, 137:20, 137:22
jurisdictional [1] -
95:24
jurisdictions [1] - 5:3
jury [2] - 6:12, 6:14
Justice [2] - 34:16,
35:5
justices [1] - 35:2

## K

KANNER [1] - 2:2
Karen [3] - 1:22, 89:7,
146:11
KATZ [1] - 1:11
keep [4] - 18:2, 57:2,
90:24, 146:9
keeping [2] - 30:8,
84:18
Keller [1] - 8:9
KELLER [1] - 8:9
Kelly [1] - 10:4
kicking [2] - 40:10,
107:25
kind [10] - 13:4, 27:4,
27:18, 32:1, 66:14,
93:19, 100:25,
114:24, 120:17,
142:18
kinds [5] - 12:16, 27:1,
32:7, 117:1, 124:18
King [1] - 37:15
Kirkland [1] - 82:6
KIRKLAND [1] - 2:20
knock [1] - 27:5
knowing [2] - 100:17,
107:12
knowledge [8] -
29:23, 64:23, 83:25,
84:5, 84:15, 86:3,
86:21, 87:17
knowledgeable [1] -
134:6
known [3] - 55:13,
75:2, 83:17
knows [8] - 33:1,
64:11, 84:6, 84:24,
86:7, 87:9, 91:19,

141:14
Kong [27] - 93:5, 94:4,
108:20, 108:22,
108:24, 109:2,
109:5, 109:8, 109:9,
109:12, 110:5,
110:15, 110:21,
110:24, 111:21,
112:19, 112:23,
114:6, 114:8,
114:10, 114:19,
114:20, 115:21,
115:25, 117:9,
117:10, 118:5
Korea [4] - 54:3,
58:24, 58:25, 59:7
Kugler [14] - 3:6, 3:10,
24:6, 41:22, 42:9,
42:16, 43:14, 46:15,
94:25, 95:16,
116:23, 122:18,
135:14, 146:13
KUGLER [37] - 1:8,
3:6, 3:9, 3:14, 3:20,
8:7, 8:18, 9:4, 9:7,
9:21, 10:1, 10:13,
10:17, 11:8, 15:24,
16:14, 17:7, 17:13,
17:25, 18:12, 18:21,
19:18, 19:24, 20:15,
24:6, 24:24, 25:1,
25:6, 25:8, 25:22,
25:25, 28:8, 30:19,
31:13, 41:12, 41:21,
42:3
Kugler's [1] - 46:20

## L

laboratory [1] - 71:3
Labs [2] - 80:11, 81:4
LABUY [1] - 33:17
lack [4] - 27:21, 70:14,
87:11, 94:22
lacks [2] - 36:25,
95:14
laid [3] - 48:22, 58:17,
60:22
laissez [1] - 4:13
laissez-faire [1] - 4:13
landscape [1] - 29:21
language [98] - 49:14,
49:18, 49:19, 49:24,
50:20, 51:19, 52:10,
55:19, 55:20, 56:10,
56:21, 57:6, 57:14,
57:21, 58:5, 58:9,
59:13, 59:18, 60:11,
62:9, 62:11, 63:8,
63:14, 64:22, 65:1,
65:4, 65:23, 67:15,

68:2, 68:19, 69:8, 70:7, 72:11, 72:15, 73:16, 75:11, 75:18, 77:1, 77:2, 77:23, 78:17, 78:19, 78:25, 79:4, 83:15, 83:23, 83:24, 86:14, 92:4, 92:5, 92:7, 92:23, 94:21, 95:22, 96:5, 96:15, 96:20, 99:1, 99:2, 99:14, 99:16, 100:12, 100:20, 101:2, 102:21, 105:22, 108:18, 109:10, 110:1, 110:10, 111:7, 112:14, 113:1, 113:3, 114:23, 116:8, 118:22, 119:7, 121:19, 122:2, 122:17, 123:9, 123:13, 123:20, 123:22, 123:25, 124:12, 125:9, 125:12, 125:13, 125:17, 127:17, 141:19

**large** [5] - 21:16, 22:12, 68:4, 76:13, 108:20

**largest** [1] - 39:18

**last** [19] - 3:15, 5:11, 5:12, 20:20, 30:23, 47:6, 47:24, 63:17, 70:1, 71:23, 74:16, 82:20, 102:24, 106:4, 110:8, 123:11, 139:16, 141:3

**late** [3] - 6:13, 32:23, 110:18

**Laughter** [3] - 3:19, 80:7, 88:17

**law** [9] - 79:2, 92:20, 102:12, 103:19, 104:20, 105:11, 105:23, 107:12, 139:19

**Law** [2] - 101:11, 101:19

**laws** [6] - 101:8, 101:17, 102:17, 104:22, 107:12, 119:24

**lawsuits** [2] - 6:15, 37:25

**lawyer** [3] - 11:15, 104:16, 107:3

**lawyers** [3] - 6:15, 34:22, 114:20

**lax** [1] - 42:16

**lay** [1] - 65:2

**layer** [1] - 77:11

**Layne** [1] - 137:3

**LAYNE** [1] - 2:3

**lead** [2] - 54:1, 119:6

**leads** [1] - 15:11

**least** [12] - 6:24, 19:16, 23:21, 26:14, 59:12, 67:1, 78:7, 108:25, 109:11, 124:19, 125:21, 142:8

**leave** [12] - 11:11, 42:14, 46:17, 69:16, 92:6, 92:16, 116:7, 116:11, 120:3, 127:4, 135:20

**LEAVES** [1] - 42:3

**leaves** [1] - 25:7

**leaving** [4] - 95:20, 97:5, 105:13, 105:24

**led** [1] - 33:21

**left** [4] - 90:20, 98:20, 127:7, 128:4

**legal** [13] - 87:11, 97:19, 99:19, 100:1, 100:16, 103:11, 107:18, 108:7, 108:14, 119:23, 128:5, 128:16

**legs** [1] - 88:25

**Lehr** [1] - 10:19

**LEHR** [1] - 10:19

**length** [4] - 114:4, 115:2, 115:7, 127:18

**less** [5] - 37:8, 37:14, 68:11, 107:1, 145:15

**letter** [28] - 4:19, 7:18, 8:22, 11:15, 27:25, 28:11, 30:23, 43:24, 45:25, 46:8, 49:25, 50:5, 50:12, 62:14, 79:18, 91:9, 91:11, 101:10, 135:24, 140:21, 142:1, 143:4, 143:16, 143:19, 144:3, 144:7

**letters** [10] - 4:8, 11:19, 12:3, 12:8, 25:13, 25:14, 37:6, 42:5, 91:8, 135:22

**level** [10] - 22:10, 29:13, 29:14, 29:23, 30:5, 61:10, 63:23, 69:6, 98:17, 121:2

**levels** [1] - 20:24

**LEVIN** [1] - 1:17

**Lexington** [1] - 2:21

**LIABILITY** [1] - 1:4

**lifted** [2] - 118:3, 118:12

**light** [4] - 29:19, 37:2, 108:13, 127:18

**likely** [6] - 38:23, 45:10, 71:10, 106:7, 124:3, 142:21

**limit** [5] - 24:10, 47:4, 52:10, 66:19, 131:1

**limitation** [2] - 46:22, 67:5

**limited** [15] - 47:21, 48:6, 52:6, 53:18, 55:21, 58:17, 59:14, 61:18, 62:15, 62:19, 62:21, 65:5, 76:16, 85:8, 115:23

**limiting** [1] - 51:20

**limits** [7] - 49:8, 53:4, 84:12, 120:20, 128:24, 130:2, 130:11

**Linda** [1] - 9:10

**Line** [2] - 62:25, 70:21

**line** [9] - 41:14, 53:17, 55:5, 66:15, 94:7, 104:15, 120:15, 130:5, 143:22

**Lipitor** [1] - 38:6

**list** [15] - 7:2, 7:25, 9:16, 10:10, 10:24, 14:19, 61:18, 63:18, 85:24, 103:1, 107:18, 107:23, 108:8, 108:9

**listed** [7] - 9:13, 9:16, 10:8, 10:23, 15:15, 15:16, 135:24

**litigant** [1] - 29:17

**litigants** [4] - 29:10, 29:11, 33:11, 97:2

**Litigation** [1] - 33:21

**litigation** [15] - 29:9, 29:13, 29:24, 30:8, 30:11, 30:16, 34:9, 37:24, 73:4, 73:7, 93:18, 93:20, 101:21, 126:10, 126:21

**LITIGATION** [1] - 1:4

**live** [4] - 18:20, 74:10, 116:15, 121:1

**lives** [1] - 93:2

**LLC** [5] - 1:11, 2:2, 2:25, 61:10, 63:23, 69:6, 98:17, 121:2

**LLP** [5] - 2:5, 2:9, 2:17, 2:20, 2:23

**load** [1] - 28:21

**local** [1] - 42:21

**located** [1] - 114:7

**location** [7] - 56:15, 108:16, 109:11, 109:16, 111:9, 111:10, 115:12

**locations** [1] - 111:16

**LOCKARD** [8] - 17:15, 18:20, 19:25, 20:18, 22:18, 143:17, 143:22, 144:15

**Lockard** [2] - 17:15, 143:17

**Locke** [1] - 10:19

**LOCKE** [1] - 10:19

**LOCKHARD** [1] - 2:9

**log** [4] - 106:7, 106:14, 106:25

**logjam** [2] - 33:2, 33:3

**Lomax** [1] - 10:7

**LOMAX** [1] - 10:7

**long-haul** [1] - 110:18

**look** [24] - 24:1, 26:7, 29:21, 30:5, 31:19, 38:22, 43:5, 49:23, 50:13, 56:11, 61:17, 62:8, 65:25, 71:25, 76:2, 76:17, 91:8, 96:17, 110:1, 112:7, 137:24, 138:9, 143:16

**looked** [3] - 41:15, 47:23, 112:8

**looking** [17] - 13:8, 43:18, 43:23, 50:9, 50:11, 55:20, 60:7, 66:2, 66:17, 73:9, 79:16, 108:13, 119:21, 135:21, 142:21, 145:5

**looks** [1] - 50:12

**lose** [1] - 11:20

**loss** [2] - 38:5, 38:13

**lost** [1] - 88:16

**Louis** [1] - 8:8

**Louisiana** [2] - 2:4, 11:16

**loved** [1] - 3:22

**low** [1] - 132:16

**low-hanging** [1] - 132:16

**lower** [1] - 98:17

**Ltd** [2] - 2:12, 2:16

**luck** [1] - 146:14

**Lyrik** [1] - 10:22

**LYRIK** [1] - 10:22

**M**

**macro** [26] - 47:5, 47:13, 47:20, 52:2, 55:16, 57:6, 57:9,

57:24, 58:1, 58:2, 58:9, 58:17, 59:12, 59:13, 60:11, 60:20, 60:22, 60:25, 61:1, 61:21, 63:9, 65:5, 70:18, 72:12, 73:7, 102:1

**Macy's** [1] - 6:7

**MAGISTRATE** [1] - 1:9

**magistrate** [15] - 26:11, 27:4, 27:22, 28:22, 29:18, 30:1, 30:14, 31:22, 32:13, 32:16, 32:21, 33:14, 35:18, 36:10, 37:17

**mails** [2] - 29:16, 55:7

**main** [3] - 97:17, 99:11, 121:15

**Mainland** [2] - 98:22, 113:8

**maintain** [1] - 58:14

**major** [1] - 56:6

**mall** [2] - 6:4, 6:7

**manageable** [1] - 27:3

**management** [10] - 4:8, 9:3, 11:9, 13:9, 13:10, 18:3, 22:20, 26:6, 29:7, 43:15

**managing** [2] - 34:9, 98:14

**manner** [1] - 121:12

**manufacture** [2] - 67:7, 85:23

**manufactured** [11] - 51:17, 52:6, 53:6, 53:14, 53:16, 56:15, 56:16, 57:11, 58:19, 59:21

**manufacturer** [8] - 26:16, 48:20, 49:19, 72:20, 83:8, 83:9, 85:20, 86:25

**manufacturers** [7] - 21:8, 21:10, 38:11, 63:22, 76:1, 86:1, 142:17

**manufacturing** [10] - 52:22, 62:16, 63:2, 85:5, 85:7, 85:9, 85:12, 85:13, 86:18, 86:22

**many-hour** [1] - 134:21

**March** [3] - 5:11, 6:10, 133:1

**Maria** [1] - 9:11

**market** [8] - 46:23, 48:6, 49:1, 51:18, 68:23, 71:14, 71:17

**Market** [1] - 1:15
**marketing** [1] - 48:15
**markets** [1] - 59:17
**Marriott** [1] - 37:22
**masse** [1] - 57:17
**massive** [1] - 49:1
**massively** [1] - 54:9
**master** [32] - 24:3, 24:19, 25:15, 26:4, 27:19, 28:1, 28:2, 28:5, 28:6, 28:18, 30:13, 30:25, 31:1, 31:12, 31:17, 31:20, 33:18, 35:21, 35:22, 35:24, 36:11, 36:16, 36:22, 36:25, 37:16, 37:25, 38:16, 40:6, 40:13, 40:16, 40:19, 41:7
**Master** [1] - 26:12
**masters** [14] - 24:22, 33:25, 34:2, 34:4, 34:6, 35:10, 35:11, 36:13, 37:3, 37:9, 39:16, 39:23, 40:4, 40:22
**material** [2] - 59:25, 118:12
**materials** [1] - 48:15
**math** [1] - 145:16
**matter** [7] - 26:5, 31:14, 81:6, 100:2, 105:11, 128:16, 131:10
**matters** [5] - 31:21, 33:15, 33:19, 38:20, 60:6
**MAZIE** [1] - 1:11
**McClennon** [1] - 10:2
**MCCLENNON** [1] - 10:2
**MDL** [3] - 35:15, 37:7, 39:11
**MDLs** [1] - 38:18
**mean** [25] - 5:1, 5:9, 14:2, 17:9, 22:12, 40:9, 47:11, 55:25, 65:14, 67:10, 67:13, 68:18, 96:7, 99:18, 103:17, 103:23, 115:6, 116:6, 119:14, 121:20, 125:4, 125:20, 131:5, 134:19, 139:10
**means** [3] - 12:15, 20:1, 93:4
**meant** [1] - 56:9
**meantime** [2] - 9:25
**meaty** [1] - 43:19

**mechanical** [1] - 1:24
**mechanics** [1] - 97:18
**medical** [2] - 32:2, 32:5
**meet** [30] - 23:12, 52:16, 56:25, 64:7, 64:16, 64:23, 68:14, 68:16, 68:20, 68:25, 69:5, 69:9, 70:4, 71:15, 80:15, 80:17, 98:3, 105:4, 105:23, 106:6, 127:20, 128:19, 133:21, 134:20, 136:19, 140:18, 141:23, 142:6, 143:2
**meet-and-confer** [6] - 52:16, 56:25, 64:7, 68:16, 71:15, 133:21
**meeting** [3] - 9:14, 81:15, 136:20
**meetings** [1] - 24:14
**member** [1] - 81:8
**members** [2] - 81:2, 118:7
**memorialize** [2] - 43:15, 88:7
**memorialized** [1] - 46:16
**mention** [1] - 82:16
**mentioned** [3] - 31:2, 62:16, 94:25
**mentions** [1] - 75:7
**merits** [1] - 43:11
**messages** [1] - 29:16
**method** [1] - 111:5
**metrics** [1] - 145:20
**mid** [3] - 5:15, 44:7, 92:13
**mid-January** [2] - 5:15, 44:7
**mid-July** [1] - 92:13
**middle** [2] - 105:1, 111:1
**midnight** [1] - 111:24
**might** [15] - 21:4, 45:18, 49:23, 61:17, 61:16, 71:25, 75:10, 77:18, 84:1, 85:15, 88:11, 94:9, 94:10, 107:9, 123:12
**million** [2] - 39:14, 145:18
**millions** [4] - 6:1, 32:6, 39:6, 145:18
**mimic** [1] - 82:23
**mind** [1] - 28:12
**Mine** [1] - 37:15
**minimizing** [1] - 31:10
**minimum** [1] - 100:2

**miniscule** [1] - 39:16
**minor** [1] - 86:14
**mischaracterization s** [1] - 134:20
**mischaracterized** [1] - 106:6
**misrepresentation** [1] - 145:9
**misrepresentations** [1] - 144:21
**misunderstanding** [1] - 5:23
**modeling** [1] - 71:6
**modifications** [6] - 83:7, 86:14, 86:17, 86:22, 86:24, 87:3
**modified** [1] - 82:18
**moment** [2] - 11:1, 96:25
**Monat** [1] - 37:18
**MONAT** [1] - 37:18
**Monday** [5] - 13:11, 13:12, 41:4, 88:12, 131:15
**monitoring** [2] - 32:3, 32:5
**month** [5] - 7:24, 14:16, 14:17, 24:14, 128:9
**months** [13] - 6:13, 6:16, 6:24, 6:25, 7:1, 20:4, 25:9, 33:8, 40:11, 68:11, 118:11, 130:1, 141:1
**mood** [1] - 3:17
**moot** [2] - 46:18, 144:14
**morning** [11] - 3:3, 3:5, 3:6, 3:8, 3:10, 42:4, 74:16, 82:5, 124:14, 125:14, 135:14
**MORRIS** [1] - 2:5
**Mortgage** [1] - 36:2
**most** [24] - 27:7, 29:2, 31:23, 38:18, 43:1, 44:4, 50:4, 56:5, 56:7, 68:24, 71:9, 74:8, 79:13, 80:24, 81:13, 83:4, 96:24, 108:24, 109:21, 111:21, 124:3, 133:11
**mostly** [2] - 34:21, 83:7
**mother** [1] - 73:11
**motion** [27] - 11:21, 11:24, 15:1, 35:25, 36:9, 42:14, 42:22, 42:23, 43:1, 43:4,

43:6, 43:8, 56:5, 99:20, 103:5, 103:18, 103:24, 103:25, 107:11, 107:19, 108:7, 108:10, 128:14, 129:12, 138:6, 139:23, 139:24
**motions** [18] - 4:20, 7:13, 11:10, 11:11, 12:25, 13:1, 14:22, 14:25, 16:21, 17:1, 18:9, 18:10, 18:13, 27:7, 35:23, 36:9, 42:20, 46:17
**move** [7] - 8:22, 12:25, 64:4, 74:4, 111:24, 112:17, 112:25
**moving** [2] - 16:17, 30:8
**MR** [165] - 8:1, 8:12, 8:24, 9:5, 9:19, 9:23, 10:12, 10:15, 11:3, 15:22, 16:1, 16:16, 17:12, 18:6, 18:18, 19:6, 19:20, 20:22, 21:22, 24:23, 24:25, 25:20, 25:24, 26:2, 28:9, 30:22, 41:8, 41:9, 44:11, 44:21, 45:3, 45:22, 46:11, 50:9, 50:14, 51:1, 52:1, 52:12, 55:24, 56:2, 57:13, 60:15, 60:24, 61:22, 62:5, 65:11, 65:16, 65:19, 65:23, 67:10, 68:10, 70:16, 74:15, 74:21, 75:9, 75:14, 75:18, 75:25, 79:12, 79:17, 80:10, 80:14, 81:9, 81:12, 82:3, 82:14, 82:22, 83:2, 83:12, 84:14, 84:25, 85:21, 86:11, 87:1, 87:21, 87:25, 88:10, 88:14, 88:18, 89:3, 90:9, 91:2, 91:9, 91:18, 92:2, 93:13, 94:12, 95:11, 96:14, 96:20, 96:22, 97:12, 98:11, 99:21, 99:24, 100:23, 103:22, 104:14, 106:2, 106:5, 108:11, 109:23, 111:19, 112:11, 113:2, 113:11, 113:13, 114:3, 115:5, 115:10, 115:18, 116:13, 116:15,

116:20, 119:12, 119:21, 120:5, 120:25, 121:7, 121:14, 121:18, 122:1, 123:11, 124:24, 125:18, 125:20, 126:9, 126:13, 126:17, 126:19, 127:16, 128:2, 128:5, 128:17, 129:5, 129:8, 129:13, 129:14, 129:16, 129:18, 130:8, 131:2, 131:4, 131:9, 131:13, 132:1, 132:7, 132:17, 132:21, 132:24, 133:3, 133:8, 133:9, 133:20, 134:18, 136:3, 136:7, 136:24, 139:9, 140:1, 140:5, 141:17, 143:10, 143:14, 144:17
**MS** [61] - 17:15, 18:20, 19:25, 20:18, 22:18, 46:19, 47:1, 48:1, 48:4, 48:17, 48:20, 49:12, 50:3, 50:7, 50:17, 50:21, 51:9, 51:14, 51:24, 55:17, 57:25, 58:8, 58:14, 59:11, 60:3, 60:5, 60:16, 60:18, 61:4, 66:3, 67:4, 67:21, 67:24, 69:7, 69:24, 70:1, 71:24, 72:18, 73:22, 74:6, 74:20, 76:25, 78:12, 78:18, 79:6, 79:9, 79:21, 79:25, 80:4, 80:21, 82:5, 82:11, 137:2, 137:23, 138:9, 138:13, 138:24, 139:4, 143:17, 143:22, 144:15
**Multidistrict** [1] - 33:20
**multiple** [4] - 8:14, 70:4, 70:17, 134:4
**must** [1] - 38:24
**mute** [3] - 61:24, 62:2, 103:14
**Mylan** [6] - 2:25, 82:13, 82:15, 82:17, 82:21

---

**N**

---

**Nakul** [1] - 80:10

**NAKUL** [1] - 2:18
**name** [1] - 134:15
**names** - 40:6, 40:13, 40:18, 41:2, 41:4, 41:5
**Naomi** [1] - 10:21
**Napolitano** [1] - 10:7
**narrow** [3] - 59:4, 64:19, 106:24
**narrowed** [1] - 128:4
**narrowness** [1] - 107:2
**national** [6] - 92:14, 92:15, 93:15, 101:12, 109:1, 117:8
**nationals** [10] - 101:3, 101:12, 108:19, 108:21, 108:24, 109:20, 111:13, 117:7, 118:4, 127:17
**nature** [2] - 27:15, 92:9
**nauseam** [1] - 145:24
**NDMA** [1] - 71:3
**NE** [1] - 2:11
**near** [1] - 36:7
**necessarily** [4] - 32:9, 59:22, 66:21, 134:25
**necessary** [12] - 31:1, 41:17, 47:10, 59:22, 92:8, 92:17, 97:23, 121:25, 126:1, 130:3, 144:7
**need** [57] - 4:14, 8:3, 9:1, 10:25, 11:6, 11:12, 11:23, 12:5, 12:16, 13:16, 13:19, 14:11, 14:23, 16:25, 17:2, 17:16, 17:18, 17:19, 18:5, 21:8, 23:5, 23:6, 23:23, 23:25, 24:4, 26:3, 28:2, 28:3, 28:17, 34:8, 44:16, 45:20, 53:13, 63:1, 69:18, 79:24, 85:25, 88:21, 89:5, 89:11, 104:8, 104:25, 109:1, 111:23, 116:14, 119:6, 123:18, 126:1, 128:16, 128:18, 130:5, 133:8, 136:1, 140:12, 142:6, 144:1, 146:2
**needed** [3] - 12:1, 79:1, 118:11
**needs** [3] - 31:19, 112:3, 115:13
**negotiate** [3] - 57:17,
57:18, 57:20
**negotiated** [2] - 62:9, 76:1
**negotiating** [1] - 83:5
**negotiations** [1] - 85:4
**neutral** [1] - 99:14
**never** [8] - 22:6, 32:18, 52:6, 118:20, 131:5, 145:8, 145:10, 145:16
**NEW** [1] - 1:1
**new** [16] - 4:9, 6:14, 20:13, 23:14, 26:9, 31:5, 32:16, 32:24, 33:5, 34:23, 70:4, 70:7, 141:15, 141:22, 142:23
**New** [13] - 1:13, 2:4, 2:22, 3:24, 4:25, 5:7, 5:10, 6:23, 7:12, 28:21, 29:19, 33:3, 101:5
**Newcombe** [1] - 10:20
**NEWCOMBE** [1] - 10:21
**news** [1] - 5:25
**next** [31] - 7:1, 7:24, 8:5, 13:22, 16:22, 24:14, 27:1, 29:6, 33:12, 45:9, 60:4, 60:5, 60:17, 60:18, 61:3, 61:4, 84:25, 96:18, 100:22, 100:24, 111:24, 113:12, 113:13, 114:4, 115:18, 116:21, 119:22, 127:15, 127:25, 128:9, 128:10
**Nigh** [2] - 19:6, 21:22
**NIGH** [4] - 1:18, 19:6, 19:20, 21:22
**night** [6] - 3:15, 29:16, 47:24, 74:16, 110:18, 111:2
**nine** [6] - 8:21, 8:22, 8:23, 8:25, 9:2, 9:7
**nitrosamine** [6] - 49:10, 70:9, 70:17, 72:4, 72:25, 85:19
**nitrosamines** [3] - 72:23, 73:2, 85:16
**NJ** [1] - 2:19
**Noble** [1] - 9:11
**NOBLE** [1] - 9:11
**noise** [2] - 61:25, 103:14
**none** [3] - 39:4, 39:7, 85:25
**nonissue** [1] - 123:1
**nonresponsive** [1] - 145:19
**normal** [3] - 76:22, 104:11, 140:7
**normally** [1] - 4:4
**Northeast** [1] - 3:16
**Nos** [1] - 83:19
**note** [5] - 30:23, 59:13, 61:8, 64:3, 69:11
**noted** [4] - 35:8, 36:12, 47:17, 106:12
**notes** [4] - 43:14, 43:23, 135:15, 135:21
**nothing** [7] - 20:12, 24:23, 41:8, 70:11, 82:21, 140:19, 146:10
**notice** [52] - 12:4, 49:14, 49:16, 49:18, 49:23, 50:3, 50:10, 50:15, 50:22, 55:19, 56:20, 56:22, 60:7, 60:23, 61:1, 62:7, 62:8, 63:4, 65:15, 65:16, 66:16, 67:20, 67:25, 68:16, 72:16, 72:21, 72:24, 73:21, 74:9, 74:25, 75:9, 75:10, 77:1, 77:2, 78:13, 78:19, 79:8, 79:24, 80:22, 81:8, 81:16, 82:19, 89:25, 93:10, 94:1, 94:8, 94:10, 94:11, 95:4, 117:25, 128:20
**noticed** [1] - 77:5
**notices** [29] - 44:18, 45:1, 45:5, 45:19, 45:24, 46:1, 46:4, 47:4, 48:24, 48:25, 49:19, 50:1, 56:25, 57:15, 60:9, 60:14, 67:14, 70:4, 70:7, 70:15, 74:1, 76:16, 77:15, 88:6, 105:18, 128:25, 131:15, 133:25, 135:2
**noting** [4] - 27:24, 36:13, 60:21, 77:13
**notion** [2] - 21:11, 117:12
**notwithstanding** [2] - 27:20, 92:12
**Novartis** [3] - 53:3, 54:10, 54:12
**Novartis's** [1] - 53:4
**November** [26] - 1:6, 3:1, 14:24, 16:23,
17:3, 18:4, 18:15, 40:5, 40:7, 40:12, 47:16, 47:25, 48:22, 48:23, 50:12, 51:23, 62:24, 70:21, 72:16, 73:17, 133:10, 141:4, 141:5, 141:24, 141:25, 142:2
**nowhere** [1] - 36:7
**nuance** [1] - 45:11
**nuances** [1] - 102:11
**NUMBER** [1] - 1:3
**Number** [2] - 7:9, 7:10
**number** [32] - 23:8, 33:16, 38:15, 50:13, 52:1, 54:8, 61:5, 61:8, 65:10, 68:5, 69:25, 80:14, 80:21, 86:13, 108:22, 112:3, 113:17, 113:18, 113:20, 115:20, 117:20, 128:14, 128:17, 128:25, 129:18, 129:19, 130:15, 130:18, 130:19, 130:22, 131:22, 135:6
**numbers** [5] - 23:5, 24:11, 50:13, 81:22, 130:4
**Numeral** [3] - 13:9, 62:4, 67:23
**NY** [1] - 2:22

**O**

**object** [7] - 25:16, 25:18, 40:24, 78:10, 78:13, 96:9, 126:1
**objected** [4] - 35:3, 86:1, 96:17, 109:9
**objection** [35] - 8:11, 9:4, 9:6, 10:10, 36:22, 42:23, 43:6, 43:8, 44:9, 44:20, 49:22, 51:5, 51:11, 60:24, 67:1, 71:22, 73:10, 78:20, 83:19, 83:24, 85:1, 86:13, 88:24, 96:7, 96:11, 101:19, 102:15, 102:16, 104:7, 104:12, 141:15, 142:4, 142:11, 142:23, 142:24
**objections** [14] - 5:6, 41:2, 88:2, 88:9, 89:22, 89:25, 90:14, 105:19, 140:14,
140:22, 141:2, 141:15
**obligated** [2] - 17:22, 76:6
**obligates** [1] - 68:2
**obligation** [3] - 77:3, 94:3, 134:8
**obscure** [1] - 132:7
**observation** [2] - 97:13, 97:22
**obtain** [1] - 52:7
**obtained** [1] - 53:22
**obvious** [3] - 124:24, 125:10, 136:14
**obviously** [14] - 16:17, 21:18, 28:10, 42:5, 43:18, 63:7, 71:21, 73:13, 98:9, 99:2, 134:8, 134:17, 139:15, 144:18
**occasion** [1] - 35:2
**occasions** [1] - 8:15
**occupied** [1] - 88:2
**occur** [1] - 123:5
**occurred** [3] - 52:4, 54:11, 106:9
**occurring** [2] - 52:21, 117:2
**occurs** [2] - 102:20, 103:8
**October** [3] - 6:14, 18:13, 22:21
**OF** [1] - 1:1
**off-the-record** [1] - 25:11
**offensive** [4] - 121:5, 121:18, 121:20, 122:5
**offer** [1] - 145:3
**officer** [4] - 93:1, 93:25, 98:14, 134:6
**Official** [1] - 1:22
**often** [2] - 64:3, 123:19
**once** [4] - 4:17, 4:21, 9:16, 63:21, 116:10, 133:4
**one** [72] - 5:6, 11:16, 21:22, 30:2, 31:19, 31:23, 34:19, 34:20, 36:22, 37:8, 37:11, 37:19, 37:23, 37:25, 38:13, 38:16, 38:17, 44:3, 49:12, 50:8, 51:2, 51:12, 52:17, 58:22, 58:23, 58:24, 63:20, 71:4, 71:25, 72:18, 74:7, 75:16, 78:7, 78:24, 79:11, 80:16, 84:5, 89:13,

*90:22, 91:25, 92:1, 96:2, 98:2, 99:7, 102:23, 103:3, 105:9, 107:1, 107:21, 108:6, 108:22, 110:17, 112:24, 113:3, 115:22, 115:25, 120:6, 122:10, 124:14, 129:16, 132:2, 137:3, 137:5, 140:7, 140:13, 140:19, 142:7*

**One** [1] - 2:24

**ones** [8] - 3:22, 24:12, 50:2, 55:4, 64:15, 64:17, 64:19, 75:22

**ongoing** [1] - 85:1

**open** [8] - 5:1, 5:24, 6:8, 18:23, 27:25, 81:15, 104:3

**operate** [1] - 103:19

**operating** [5] - 52:23, 61:7, 61:9, 62:15, 63:10

**operations** [1] - 76:12

**opinion** [4] - 6:20, 47:17, 48:22, 93:24

**opinions** [1] - 14:12

**opportunity** [4] - 24:8, 25:17, 41:6, 144:12

**opposed** [4] - 19:14, 78:22, 83:8, 98:23

**opposition** [3] - 7:11, 18:14, 18:17

**oppositions** [1] - 18:16

**oral** [3] - 47:17, 48:22, 65:24

**order** [83] - 5:6, 7:22, 7:24, 8:22, 9:13, 9:17, 11:9, 11:14, 11:17, 11:18, 11:23, 13:10, 14:12, 18:4, 27:12, 29:4, 29:7, 42:12, 42:15, 43:6, 43:13, 43:15, 45:6, 46:16, 47:6, 47:20, 47:24, 48:4, 48:13, 48:23, 49:2, 49:4, 51:23, 52:6, 52:11, 52:13, 53:10, 54:15, 55:16, 55:19, 57:10, 57:24, 58:1, 58:2, 58:10, 58:18, 59:13, 59:14, 60:11, 60:20, 60:23, 60:25, 61:1, 62:5, 63:9, 70:18, 72:12, 72:16, 73:8, 73:10, 73:17, 79:19,*

*88:7, 93:3, 93:17, 94:17, 94:23, 97:19, 100:14, 103:25, 112:16, 122:17, 122:25, 123:9, 127:2, 127:4, 131:14, 131:15, 131:16, 137:8, 138:7, 139:21, 139:23*

**ordered** [2] - 88:8, 93:7

**orders** [5] - 4:8, 7:16, 9:2, 12:6, 32:10

**ordinary** [9] - 75:3, 75:23, 76:10, 76:20, 77:5, 77:22, 78:8, 78:9, 93:9

**original** [3] - 38:11, 91:20, 91:21

**originally** [1] - 91:19

**originated** [2] - 4:25, 7:12

**Orleans** [1] - 2:4

**ornery** [1] - 3:12

**otherwise** [2] - 11:19, 96:23

**ouch** [1] - 133:2

**ought** [3] - 24:7, 133:6, 138:23

**outside** [1] - 54:25

**outstanding** [1] - 80:16

**overall** [3] - 97:13, 106:11, 107:1

**overarching** [1] - 140:15

**overburdening** [1] - 27:6

**overlap** [1] - 97:16

**overnight** [2] - 4:9, 110:21

**overruled** [1] - 67:2

**own** [6] - 55:3, 62:22, 77:21, 81:3, 85:17, 138:19

**owned** [1] - 76:11

**Oxford** [1] - 2:24

---

**P**

**P.C** [1] - 2:14

**p.m** [6] - 89:15, 89:16, 110:16, 110:21, 114:18, 146:16

**P3** [1] - 142:13

**PA** [2] - 2:15, 2:25

**page** [9] - 19:21, 47:23, 48:3, 50:20, 65:9, 75:21, 96:18,

*122:19, 123:21*

**Page** [19] - 7:18, 8:21, 9:16, 10:9, 46:9, 50:21, 56:3, 56:11, 57:3, 60:10, 62:7, 62:25, 70:21, 74:25, 75:9, 91:11, 140:21

**pages** [1] - 56:21

**pandemic** [5] - 5:13, 5:19, 33:14, 97:6, 118:5

**PAPANTONIO** [1] - 1:17

**papers** [2] - 15:1, 74:16

**paragraph** [11] - 48:12, 48:14, 48:16, 49:6, 51:11, 51:14, 51:15, 60:10, 60:13, 75:7, 102:24

**Paragraph** [8] - 13:9, 47:21, 48:5, 51:22, 58:17, 66:16, 70:18, 73:9

**paragraphs** [5] - 50:23, 51:13, 52:9, 57:8, 58:6

**Paragraphs** [1] - 49:5

**parameters** [2] - 47:5, 49:2

**Parekh** [3] - 136:3, 136:8, 139:9

**PAREKH** [4] - 136:7, 136:24, 139:9, 140:1

**Parkway** [2] - 1:12, 2:15

**part** [13] - 21:16, 40:4, 55:10, 63:17, 71:5, 77:18, 81:13, 100:4, 119:23, 142:4, 142:25, 145:10

**participate** [2] - 34:6, 97:9

**participating** [2] - 92:19, 100:5

**participation** [1] - 100:7

**particular** [10] - 61:15, 69:17, 81:13, 90:23, 95:22, 98:3, 100:16, 123:17, 136:9, 142:3

**particularity** [4] - 47:8, 61:11, 66:5, 69:14

**particularly** [5] - 6:19, 101:13, 101:15, 120:6, 122:8

**parties** [35] - 4:24, 11:4, 26:14, 26:21, 27:5, 28:4, 31:11,

*36:23, 37:2, 38:24, 43:19, 71:15, 77:14, 85:3, 86:14, 91:23, 94:24, 95:1, 97:20, 100:24, 108:5, 112:20, 113:15, 114:15, 120:22, 123:3, 123:15, 123:21, 124:17, 127:20, 130:10, 135:11, 135:18, 140:12, 144:5*

**PARTIES** [1] - 3:1

**parties'** [2] - 46:4, 146:3

**Parts** [1] - 38:9

**party** [13] - 32:3, 38:8, 45:9, 63:16, 64:22, 68:14, 68:15, 69:5, 77:5, 93:8, 94:2, 95:16

**party's** [1] - 103:12

**pass** [1] - 46:12

**passed** [2] - 33:20, 76:21

**past** [5] - 34:7, 40:3, 52:13, 94:21, 105:17

**patent** [3] - 37:24, 37:25, 38:8

**path** [1] - 26:14

**patience** [1] - 122:22

**Patrick** [1] - 9:10

**Paul** [1] - 10:4

**PAUL** [1] - 10:5

**pay** [2] - 39:3, 39:11

**payers** [2] - 38:8, 38:10

**payor** [1] - 32:3

**PC** [1] - 1:14

**peaks** [4] - 48:8, 53:23, 54:22, 59:19

**penalties** [2] - 92:20, 106:22

**pending** [4] - 8:25, 31:24, 33:10, 38:18

**Pennsylvania** [2] - 1:16, 2:7

**Pensacola** [1] - 1:19

**people** [19] - 3:11, 4:1, 6:1, 6:9, 6:11, 7:19, 32:6, 39:25, 44:24, 54:3, 54:4, 55:1, 55:6, 61:23, 98:21, 110:6, 111:1, 111:23, 126:13

**per** [4] - 27:12, 29:6, 72:6, 130:4

**percent** [5] - 107:1, 115:3, 115:4, 118:19

**perfect** [1] - 103:18

**perfectly** [5] - 69:9, 87:19, 102:20, 104:10, 120:4

**perform** [1] - 34:4

**performed** [6] - 34:2, 56:13, 83:22, 84:1, 86:20

**performing** [1] - 35:10

**perhaps** [8] - 14:24, 19:1, 24:15, 32:25, 57:8, 127:20, 141:7

**period** [5] - 6:18, 41:1, 60:19, 60:21, 132:25

**permissive** [1] - 108:24

**permit** [3] - 7:15, 18:25, 109:2

**permits** [1] - 108:25

**person** [13] - 30:3, 32:17, 32:24, 67:19, 68:7, 83:16, 92:12, 93:2, 93:3, 93:4, 93:11, 99:9, 116:10

**personal** [15] - 4:19, 4:20, 5:4, 5:8, 7:13, 15:10, 23:3, 27:13, 32:2, 38:5, 38:14, 94:22, 94:24, 95:1, 95:14

**personally** [1] - 132:18

**personnel** [1] - 34:18

**persons** [1] - 67:20

**perspective** [5] - 16:24, 18:6, 23:7, 39:3, 39:15

**pertaining** [3] - 31:4, 31:5, 73:25

**pertains** [1] - 66:1

**Pharma** [4] - 2:13, 2:16, 2:16

**Pharmaceutical** [1] - 2:12

**Pharmaceuticals** [1] - 2:12

**phase** [3] - 26:9, 27:10, 29:2

**phased** [1] - 11:12

**Philadelphia** [2] - 1:16, 2:7

**Philippines** [1] - 112:19

**phone** [8] - 4:5, 25:23, 62:2, 79:20, 80:9, 103:14, 131:8, 140:10

**phones** [1] - 61:23

**phrased** [2] - 30:7, 78:8

**phrasing** [4] - 68:16,

70:16, 72:24, 82:23
**pick** [6] - 19:10, 20:13,
23:14, 23:19, 31:8,
130:19
**picked** [4] - 19:8,
19:12, 19:13, 91:10
**picking** [5] - 19:11,
19:15, 19:17, 31:8,
130:17
**picks** [13] - 19:11,
19:15, 19:17, 19:22,
20:9, 22:2, 22:4,
22:6, 22:7, 22:14,
22:15, 22:17
**picture** [1] - 73:19
**piece** [3] - 30:10,
30:11, 96:24
**Piedmont** [1] - 2:11
**PIETRAGALLO** [1] -
2:23
**pill** [2] - 70:24, 72:6
**pills** [3] - 71:1, 71:11,
72:9
**Pittman** [1] - 9:8
**PITTMAN** [1] - 9:8
**Pittsburgh** [1] - 2:25
**place** [8] - 4:15, 27:14,
46:10, 91:7, 97:20,
112:19, 112:21,
122:10
**placeholders** [1] -
98:8
**places** [1] - 70:18
**plain** [1] - 98:20
**plaintiff** [34] - 9:4,
10:13, 11:22, 19:15,
21:15, 22:6, 22:14,
22:19, 22:22, 23:3,
23:13, 23:18, 23:19,
25:16, 26:20, 49:13,
49:24, 67:25, 77:24,
81:6, 92:25, 93:7,
93:25, 100:11,
101:9, 103:9, 104:9,
104:10, 106:21,
115:22, 116:18,
119:2, 130:17
**Plaintiff** [4] - 1:13,
1:16, 1:19, 2:4
**plaintiffs** [106] - 8:13,
8:19, 9:5, 9:21, 9:23,
10:15, 11:16, 12:21,
13:11, 13:15, 13:20,
13:24, 14:2, 15:9,
15:21, 20:3, 20:14,
21:1, 21:12, 21:15,
21:17, 23:2, 23:14,
27:13, 28:8, 30:7,
38:10, 41:10, 42:13,
46:25, 49:16, 59:15,

59:23, 62:19, 63:1,
63:3, 66:21, 68:2,
69:10, 69:13, 70:3,
70:5, 70:7, 77:8,
84:9, 91:14, 92:6,
92:10, 94:1, 96:4,
96:6, 96:7, 96:12,
96:16, 98:11, 99:3,
99:16, 99:17, 99:18,
99:23, 100:5,
100:13, 100:14,
100:21, 102:9,
102:22, 102:25,
106:7, 106:17,
106:18, 107:14,
107:16, 109:8,
109:15, 110:2,
111:12, 112:14,
112:22, 113:25,
114:17, 114:23,
115:15, 117:21,
122:11, 123:25,
124:3, 124:6,
124:14, 127:1,
127:2, 131:19,
132:16, 133:8,
135:8, 139:24,
140:6, 141:13,
141:23, 143:14,
145:11, 146:2
**plaintiffs'** [30] - 8:13,
8:14, 8:25, 12:24,
14:9, 14:13, 14:15,
14:17, 16:8, 16:24,
17:18, 19:8, 24:8,
27:25, 30:18, 39:24,
43:23, 47:19, 49:25,
80:15, 80:17, 80:22,
81:1, 82:17, 83:5,
96:10, 109:13,
132:25, 135:24
**plan** [3] - 5:14, 5:17,
19:9
**planners** [1] - 19:10
**plastic** [1] - 66:13
**play** [3] - 45:7, 55:15,
101:8
**pleading** [1] - 26:12
**plenty** [1] - 117:12
**plus** [2] - 20:3, 119:3
**point** [44] - 23:22,
26:5, 26:10, 27:8,
27:16, 30:9, 30:23,
40:21, 41:24, 42:21,
44:13, 45:14, 45:16,
50:19, 56:1, 56:2,
57:1, 58:10, 61:17,
61:18, 64:23, 65:9,
66:17, 69:1, 95:19,
96:6, 98:3, 99:24,
103:9, 105:25,

110:8, 113:19,
114:4, 115:14,
117:18, 123:11,
128:6, 129:23,
132:13, 136:17,
137:24, 144:18
**point-by-point** [1] -
61:18
**pointed** [4] - 56:23,
57:9, 114:8
**pointedly** [1] - 55:7
**pointing** [1] - 71:7
**points** [3] - 103:17,
131:24, 145:24
**polestar** [1] - 57:23
**policies** [4] - 61:7,
61:9, 61:16, 61:19
**pool** [4] - 22:12,
22:13, 23:18, 23:24
**pops** [1] - 105:14
**portion** [5] - 41:23,
58:23, 58:24, 58:25,
74:12
**position** [25] - 11:21,
24:2, 30:18, 32:21,
66:23, 66:25, 68:4,
69:8, 72:21, 73:13,
74:9, 76:19, 76:25,
80:23, 99:1, 100:11,
100:12, 100:18,
100:20, 102:20,
102:24, 107:16,
111:16, 120:21,
138:20
**positions** [3] - 97:21,
103:12, 146:3
**positive** [1] - 80:13
**possession** [9] -
54:19, 75:3, 77:4,
77:21, 78:5, 78:9,
78:23, 79:3, 84:15
**possibilities** [1] -
120:14
**possibility** [3] -
114:17, 137:24,
138:2
**possible** [7] - 14:8,
58:10, 68:22, 81:25,
94:13, 134:12,
134:16
**possibly** [2] - 39:1,
81:14
**post** [1] - 34:5
**post-trial** [1] - 34:5
**potential** [13] - 15:8,
28:4, 49:10, 70:8,
70:10, 70:13, 70:15,
70:16, 70:20, 72:3,
72:4, 72:9
**potentially** [8] - 71:17,

97:6, 123:13, 136:4,
137:25, 142:13,
142:17, 145:18
**Powder** [1] - 37:10
**powers** [1] - 36:24
**practicable** [1] - 37:10
**practical** [6] - 13:3,
108:17, 110:4,
131:9, 142:9, 143:11
**practically** [1] -
142:20
**practice** [6] - 18:25,
28:21, 35:9, 36:10,
108:20, 116:2
**practices** [4] - 33:25,
62:16, 63:2, 122:21
**precedential** [1] - 36:5
**preceding** [1] - 83:18
**prefer** [2] - 19:16,
104:23
**preferable** [1] - 15:11
**prejudiced** [1] -
130:22
**prejudicial** [1] -
126:25
**preliminaries** [1] -
29:1
**preliminary** [1] - 26:11
**premature** [2] -
112:17, 129:20
**prepare** [4] - 47:9,
61:12, 68:8, 70:12
**prepared** [4] - 66:6,
68:19, 103:11, 124:9
**preparing** [2] - 68:5,
68:7
**presence** [2] - 72:22,
72:25
**present** [4] - 45:25,
73:14, 107:3, 144:12
**presented** [1] - 73:23
**preserve** [5] - 95:2,
102:8, 102:14,
113:19, 113:23
**preserved** [1] - 96:23
**preserving** [2] - 94:21,
96:8
**preside** [1] - 31:3
**presided** [1] - 27:15
**presiding** [1] - 31:3
**pressing** [2] - 44:10,
44:12
**presumably** [5] -
87:10, 109:13,
134:6, 138:17,
138:20
**presumptive** [1] -
131:1
**pretrial** [4] - 31:21,
34:4, 34:6, 38:20

**pretty** [3] - 4:2, 43:3,
65:20
**prevent** [1] - 66:10
**preview** [2] - 124:25,
125:8
**previous** [2] - 23:17,
67:6
**previously** [1] - 26:3
**price** [1] - 69:11
**prices** [1] - 38:3
**pricing** [1] - 68:22
**prima** [2] - 69:20,
112:25
**primarily** [2] - 34:2,
77:21
**princeton** [1] - 2:19
**principal** [1] - 37:23
**principles** [1] - 47:11
**Prinston** [4] - 74:23,
76:14, 77:19, 77:20
**priority** [1] - 98:4
**privacy** [2] - 101:16,
105:6
**privilege** [4] - 102:16,
104:11, 106:14,
145:6
**proactively** [1] -
137:15
**problem** [21] - 14:6,
17:13, 25:6, 53:3,
54:24, 56:23, 57:14,
57:16, 78:18, 81:25,
88:21, 103:10,
112:9, 119:1, 126:4,
127:5, 127:8, 130:6,
132:23, 143:21
**problematic** [2] - 20:7,
131:8
**problems** [5] - 55:12,
108:2, 114:12,
114:14, 126:23
**Procedure** [2] - 101:4,
101:11
**procedures** [10] -
52:24, 61:7, 61:9,
61:16, 61:19, 62:15,
63:2, 63:10
**proceed** [6] - 45:23,
126:24, 133:12,
135:8, 138:11,
138:22
**proceeding** [1] - 21:11
**Proceedings** [1] -
1:24
**proceedings** [5] -
27:23, 28:5, 34:6
**process** [34] - 4:15,
5:16, 12:5, 15:7,
20:3, 20:4, 20:17,
21:13, 21:16, 25:8,

26:20, 36:12, 52:16, 52:22, 53:6, 57:1, 63:21, 64:8, 64:25, 71:15, 85:5, 85:7, 85:9, 85:12, 86:12, 86:18, 87:4, 87:7, 87:8, 103:1, 123:14, 125:3, 130:21, 133:22

**processes** [4] - 53:17, 53:24, 85:13, 86:22

**produce** [9] - 17:22, 76:15, 78:21, 94:3, 106:25, 133:22, 139:7, 139:12, 139:13

**produced** [12] - 1:24, 67:20, 93:10, 111:17, 131:23, 134:10, 136:10, 137:7, 137:8, 138:16, 142:15, 142:16

**produces** [1] - 137:10

**producing** [4] - 20:10, 96:10, 140:22, 142:12

**product** [13] - 37:12, 47:14, 48:5, 48:25, 58:15, 58:16, 58:18, 58:19, 59:16, 84:6, 84:7, 127:3, 145:7

**production** [11] - 20:5, 43:24, 66:15, 94:7, 104:22, 106:11, 107:2, 135:24, 137:17, 141:21, 142:5

**productions** [3] - 26:17, 26:19, 68:13

**productive** [3] - 80:15, 82:18, 146:7

**Products** [1] - 37:18

**PRODUCTS** [1] - 1:3

**products** [4] - 14:1, 51:18, 51:20, 59:21

**professional** [1] - 121:12

**professionally** [1] - 123:4

**profits** [2] - 39:19, 68:23

**progress** [3] - 128:19, 128:21, 132:8

**prohibition** [2] - 142:12, 142:18

**promptly** [2] - 144:9, 146:4

**proof** [1] - 71:5

**properly** [3] - 85:19,

86:24, 125:25

**proportionality** [3] - 145:14, 145:17, 145:22

**proposal** [9] - 18:3, 21:24, 61:18, 91:15, 91:22, 112:13, 114:5, 118:1, 124:1

**propose** [7] - 13:23, 21:18, 44:7, 110:11, 114:23, 124:13, 124:17

**proposed** [25] - 4:7, 11:9, 13:8, 13:10, 14:14, 22:20, 42:24, 91:13, 91:14, 91:15, 92:4, 92:5, 92:23, 101:2, 108:19, 109:8, 109:9, 109:15, 110:1, 113:14, 114:16, 117:22, 123:25, 145:4, 144:25

**proposes** [1] - 34:23

**proposing** [1] - 115:10

**prosecutor** [1] - 32:18

**protect** [2] - 38:24, 69:23

**protective** [3] - 103:25, 138:7, 139:23

**protocol** [11] - 90:15, 94:20, 96:6, 97:17, 102:23, 111:14, 114:24, 121:15, 127:10, 145:10

**protocols** [1] - 91:10

**proven** [2] - 71:7, 87:6

**provide** [31] - 13:13, 20:23, 20:25, 23:23, 28:18, 59:15, 66:18, 68:3, 69:13, 77:9, 77:16, 77:20, 78:2, 80:24, 81:5, 86:16, 95:3, 95:5, 95:6, 95:12, 97:8, 100:6, 106:7, 106:22, 124:1, 124:3, 124:4, 125:15, 125:25, 133:8

**provided** [12] - 21:3, 42:24, 45:5, 53:20, 82:19, 87:12, 109:25, 115:11, 124:21, 132:20, 133:10, 133:14

**provides** [1] - 67:18

**providing** [3] - 21:2, 83:20, 107:4

**provision** [15] - 60:21, 90:15, 98:20, 100:24, 113:4, 113:24, 123:2, 124:25, 125:2, 125:4, 126:9, 126:21, 126:24, 127:5, 127:12

**provisions** [2] - 98:8, 102:18

**proviso** [2] - 130:25, 145:4

**prudent** [1] - 138:11

**Prudential** [2] - 35:13, 35:21

**public** [2] - 5:23, 34:22

**pull** [2] - 50:18, 73:7

**pulling** [2] - 20:11, 50:14

**purchasers** [3] - 38:3, 38:7, 38:10

**purely** [1] - 19:8

**purity** [2] - 56:14, 83:22

**purpose** [4] - 12:22, 19:12, 22:16, 145:21

**purposefully** [1] - 71:2

**purposes** [3] - 40:7, 40:23, 84:13

**pursuant** [5] - 95:4, 111:14, 135:13, 137:7, 137:11

**push** [2] - 17:4, 23:4

**pushes** [1] - 131:16

**put** [37] - 14:18, 20:8, 24:5, 26:14, 29:10, 30:12, 55:14, 56:6, 57:5, 57:7, 57:12, 61:23, 62:2, 63:13, 68:16, 68:19, 75:15, 82:23, 98:4, 98:8, 100:10, 102:23, 103:13, 106:13, 112:4, 116:5, 118:20, 118:22, 119:4, 119:7, 119:16, 127:12, 127:25, 134:23, 135:6, 143:5, 144:1

**puts** [1] - 29:14

**putting** [1] - 6:24

**Q**

**quaint** [1] - 36:10

**qualify** [1] - 142:4

**quality** [1] - 53:23

**quarantine** [3] - 117:9,

117:11, 119:3

**quarantines** [1] - 117:1

**questioning** [2] - 104:15, 111:1

**questions** [14] - 15:19, 16:2, 19:4, 30:17, 30:19, 41:9, 41:10, 54:4, 55:2, 55:3, 74:24, 104:17, 106:17, 136:16

**quick** [1] - 144:18

**quickly** [2] - 79:13, 83:9

**quiet** [1] - 18:7

**quite** [7] - 24:17, 39:8, 63:24, 65:4, 67:4, 83:24, 109:3

**quote** [4] - 70:8, 74:18, 77:10, 98:15

**quotes** [1] - 29:10

**quoting** [1] - 62:25

**R**

**rabbit** [1] - 121:22

**raise** [6] - 5:4, 45:12, 83:6, 107:5, 125:22, 129:5

**raised** [24] - 4:12, 4:17, 22:25, 23:1, 25:12, 38:21, 120:7, 131:24, 141:14, 141:16, 144:13

**raises** [1] - 106:11

**raising** [5] - 36:6, 39:20, 74:13, 74:18, 120:7

**Ralph** [1] - 9:11

**Ramirez** [1] - 10:2

**random** [2] - 15:16, 45:5

**rare** [1] - 35:2

**rarely** [1] - 34:16

**RASPANTI** [1] - 2:23

**rate** [1] - 39:2

**rather** [4] - 58:18, 64:14, 69:2, 107:25

**RE** [1] - 1:3

**reach** [1] - 130:10

**reached** [2] - 49:17, 141:23

**reaching** [1] - 33:11

**read** [8] - 12:8, 27:24, 42:5, 49:4, 54:18, 55:23, 74:15

**reading** [2] - 59:12, 125:15

**real** [5] - 23:25, 50:21, 104:14, 105:14,

118:8

**realistic** [1] - 5:21

**reallocate** [1] - 39:25

**really** [44] - 3:17, 4:12, 12:22, 14:5, 21:14, 24:10, 26:9, 26:22, 27:2, 27:9, 27:13, 28:3, 31:7, 31:25, 46:13, 47:2, 47:3, 47:11, 66:4, 70:2, 70:11, 73:3, 74:6, 78:4, 91:3, 94:19, 95:23, 101:13, 104:2, 109:24, 112:1, 114:6, 115:6, 115:18, 116:21, 116:22, 120:20, 120:23, 132:13, 134:19, 135:7, 137:24, 145:13, 146:1

**reargue** [1] - 16:5

**reason** [6] - 73:17, 89:20, 122:6, 122:7, 129:23, 142:18

**reasonable** [13] - 76:19, 97:7, 109:17, 110:6, 110:19, 110:20, 111:4, 111:23, 113:1, 113:17, 113:18, 120:4, 121:23

**reasonableness** [1] - 112:5

**reasonably** [1] - 56:8

**reasons** [9] - 28:6, 33:2, 98:19, 105:24, 108:22, 124:25, 125:10, 126:25, 130:1

**Rebecca** [1] - 10:4

**received** [9] - 42:4, 132:21, 132:24, 135:2, 137:16, 137:17, 141:20, 142:2

**recent** [3] - 32:25, 74:8, 83:4

**recently** [1] - 141:14

**RECESS** [2] - 89:15, 89:16

**recognized** [2] - 53:11, 62:18

**recommendation** [1] - 98:25

**reconvene** [2] - 89:9, 89:12

**record** [19] - 20:1, 22:18, 25:11, 29:5, 45:4, 50:9, 62:21,

62:24, 63:15, 82:17,
87:22, 87:24, 89:19,
90:7, 111:12,
119:14, 131:19,
131:20, 144:1
**recorded** [1] - 1:24
**records** [2] - 139:13,
139:14
**recourse** [1] - 99:11
**recurrent** [1] - 98:7
**redact** [1] - 137:12
**redacted** [3] - 105:10,
138:5, 139:3
**redactions** [5] -
136:11, 136:13,
137:9, 137:17,
138:16
**redline** [2] - 42:24,
83:13
**redlined** [1] - 56:21
**redlines** [1] - 83:4
**REEFER** [2] - 2:24,
82:14
**Reefer** [1] - 82:15
**refer** [5] - 48:16,
58:11, 72:22, 83:18,
85:4
**reference** [2] - 61:5,
70:14
**referenced** [3] - 48:5,
61:19, 75:2
**references** [1] - 50:23
**referral** [2] - 33:18,
35:21
**referred** [2] - 36:22,
110:12
**referring** [6] - 51:12,
52:9, 60:19, 75:8,
78:8, 83:16
**reflect** [2] - 33:24,
92:9
**reflected** [2] - 32:9,
82:19
**refreshing** [2] - 63:21,
64:2
**refuse** [1] - 98:5
**regard** [12] - 42:18,
43:12, 47:14, 52:3,
62:25, 65:1, 67:1,
67:3, 73:20, 78:7,
86:17, 119:23
**regarding** [15] - 28:19,
40:6, 48:7, 49:9,
49:10, 53:23, 54:21,
59:16, 70:8, 77:9,
90:15, 120:9, 122:3,
136:5, 140:21
**regardless** [1] - 56:14
**regrettably** [1] -
120:15

**regulatory** [6] - 49:7,
54:16, 59:14, 60:6,
60:12, 87:14
**reiterate** [2] - 48:5,
145:13
**reiterated** [1] - 28:16
**reiterates** [1] - 140:12
**reject** [1] - 35:6
**relate** [2] - 63:12, 85:9
**related** [5] - 14:7,
36:6, 36:8, 36:16,
83:7
**relating** [4] - 47:3,
61:14, 61:20, 145:6
**relation** [1] - 86:20
**relationship** [3] -
74:22, 85:10, 87:3
**relative** [1] - 106:11
**relatively** [3] - 103:7,
109:3, 136:14
**relaxed** [2] - 117:5,
118:12
**release** [1] - 138:1
**relevant** [15] - 54:9,
54:16, 59:1, 59:6,
59:8, 59:15, 60:18,
60:21, 71:21, 78:5,
84:8, 84:10, 85:16,
87:17
**reliance** [1] - 105:10
**relies** [1] - 33:16
**relisted** [1] - 10:17
**rely** [2] - 35:13, 71:6
**remain** [1] - 35:6
**remaining** [4] - 9:25,
82:15, 86:19, 88:1
**remember** [5] - 7:9,
12:2, 34:11, 121:1,
133:10
**remembers** [1] - 71:13
**remind** [2] - 61:23,
101:23
**remove** [1] - 8:3
**removed** [3] - 7:22,
8:6, 113:4
**rendered** [2] - 47:16,
94:23
**rendering** [1] - 93:23
**reopening** [1] - 6:4
**rep** [2] - 71:18, 131:15
**repeat** [1] - 142:3
**repeated** [1] - 134:19
**repeating** [1] - 139:6
**replicated** [1] - 29:24
**replies** [4] - 14:25,
16:23, 18:4, 18:15
**reply** [4] - 14:23, 17:3,
18:16, 136:18
**report** [3] - 14:20,
17:21, 137:6

**reported** [1] - 36:18
**REPORTER** [1] - 89:8
**Reporter** [1] - 1:22
**reports** [11] - 12:11,
13:13, 14:9, 14:13,
14:19, 16:8, 16:10,
17:22, 136:9, 137:5,
139:2
**represent** [1] - 11:21
**representation** [1] -
77:9
**representative** [3] -
93:8, 94:18, 134:5
**representatives** [6] -
27:12, 52:19, 76:15,
131:14, 132:25,
133:12
**represented** [1] - 81:3
**represents** [3] - 11:16,
11:22, 68:1
**reps** [4] - 44:15,
44:17, 133:11,
134:16
**Request** [4] - 58:11,
62:8, 83:13, 85:1
**request** [16] - 9:1,
48:14, 49:18, 56:9,
56:20, 58:13, 62:6,
63:8, 65:4, 84:21,
86:1, 101:11,
139:15, 140:8,
141:21
**request-by-request**
[1] - 140:8
**requesting** [2] - 48:21,
78:21
**requests** [27] - 42:19,
43:2, 49:6, 55:6,
61:5, 61:14, 64:8,
65:7, 67:6, 67:16,
67:24, 72:3, 76:14,
76:17, 83:15, 83:19,
84:2, 84:16, 85:4,
85:19, 86:16,
105:17, 137:11,
142:5, 142:14,
142:15
**require** [3] - 21:20,
42:19, 99:19
**required** [10] - 13:23,
26:23, 28:3, 38:22,
39:9, 66:5, 69:14,
77:12, 78:16, 137:11
**requirements** [2] -
11:24, 32:23
**requires** [3] - 42:21,
79:2, 125:2
**requiring** [3] - 42:12,
124:25, 125:15
**requisite** [2] - 47:7,

100:6
**research** [2] - 138:2,
139:15
**reside** [2] - 98:21,
135:1
**resident** [1] - 93:2
**resides** [1] - 115:13
**residing** [1] - 113:8
**resolution** [1] - 60:9
**resolutions** [1] - 88:3
**resolve** [9] - 7:22, 8:4,
27:6, 40:2, 85:3,
124:18, 141:3,
142:10, 142:21
**resolved** [5] - 26:23,
60:8, 60:16, 74:4,
104:8
**respect** [14] - 26:24,
27:11, 68:17, 80:25,
82:21, 83:12, 86:12,
90:17, 108:25,
117:13, 122:20,
128:20, 144:20,
144:22
**respectfully** [1] - 73:5
**respond** [4] - 18:9,
30:21, 77:17, 144:8
**RESPONSE** [3] - 3:5,
3:8, 89:14
**response** [15] - 21:23,
67:20, 74:24, 77:14,
77:15, 87:18, 93:10,
94:8, 94:10, 94:11,
142:3, 142:5,
142:11, 142:15,
142:25
**responses** [4] - 20:25,
52:1, 141:19, 141:20
**responsible** [2] - 76:9,
78:3
**responsive** [2] -
87:19, 142:13
**rest** [3] - 24:9, 119:8,
123:4
**restrictions** [5] - 3:24,
109:18, 117:6,
118:3, 118:12
**restrictive** [1] - 108:25
**resubmitted** [1] -
22:21
**result** [4] - 21:18,
85:3, 86:21, 92:14
**results** [1] - 84:6
**resumed** [1] - 6:13
**retail** [1] - 6:6
**retailer** [2] - 21:7,
26:17
**retailers** [2] - 21:1,
142:17
**retirement** [2] - 31:18,

32:17
**return** [2] - 43:7,
117:10
**returnable** [1] - 9:3
**returning** [1] - 6:15
**reveal** [1] - 127:3
**review** [4] - 43:23,
68:8, 74:11, 145:18
**revised** [1] - 33:24
**revisions** [1] - 64:12
**rewrite** [1] - 35:16
**Richard** [1] - 10:1
**rightly** [1] - 66:20
**rights** [3] - 37:4,
97:10, 123:1
**ring** [1] - 86:18
**ripe** [2] - 80:18,
106:15
**risk** [4] - 118:6,
118:20, 119:9,
119:16
**risks** [1] - 86:21
**Road** [2] - 2:11, 2:18
**road** [3] - 11:13,
107:25, 119:18
**ROBERT** [1] - 1:8
**robust** [1] - 69:5
**role** [1] - 26:10
**Roman** [3] - 13:9,
62:3, 67:23
**room** [2] - 17:5,
104:16
**Roseland** [1] - 1:13
**Roszel** [1] - 2:18
**rough** [1] - 110:19
**round** [1] - 141:20
**rounds** [1] - 70:4
**routed** [1] - 31:12
**routine** [2] - 27:7, 43:3
**rule** [15] - 11:24,
34:19, 34:23, 35:3,
35:4, 35:6, 35:23,
35:25, 66:12,
106:21, 115:14,
116:3, 116:9, 137:21
**Rule** [16] - 13:2, 31:19,
33:23, 33:24, 34:1,
34:11, 35:8, 35:16,
36:15, 36:20, 38:22,
42:21, 60:23, 69:14,
105:17, 105:18
**ruled** [3] - 52:2, 60:1,
115:4
**rules** [14] - 34:12,
34:18, 34:20, 77:4,
77:12, 77:25, 78:17,
79:1, 101:5, 101:6,
101:7, 113:5,
115:12, 145:20
**Rules** [3] - 101:4,

145:21
**ruling** [16] - 53:9, 57:6, 59:9, 65:12, 65:24, 100:19, 100:22, 101:25, 104:6, 107:12, 112:17, 119:7, 127:14, 130:18, 144:8, 146:4
**rulings** [4] - 37:1, 47:13, 63:9, 141:2
**run** [6] - 41:24, 45:25, 79:15, 108:1, 118:6, 133:18

## S

**safe** [2] - 42:1, 146:14
**safeguard** [1] - 100:7
**safeguarded** [1] - 97:10
**safeguards** [1] - 97:8
**safety** [3] - 118:20, 119:8, 119:16
**salami** [2] - 73:11, 88:18
**sale** [8] - 46:22, 52:5, 53:5, 56:15, 56:16, 57:12, 58:16, 68:22
**sales** [4] - 47:17, 48:15, 69:11, 81:22
**sample** [4] - 50:2, 54:12, 68:1, 68:3
**sandwich** [1] - 88:15
**satisfactory** [2] - 15:13, 86:9
**saw** [3] - 117:2, 140:25, 144:6
**scary** [1] - 28:20
**schedule** [13] - 13:8, 13:10, 15:6, 16:2, 22:20, 22:21, 26:8, 117:17, 130:9, 135:13, 143:3, 143:6, 143:12
**scheduled** [1] - 20:19
**scheduling** [3] - 22:1, 117:13, 132:4
**Schiano** [1] - 10:20
**SCHIANO** [1] - 10:20
**Schindler** [1] - 104:20
**SCHNEIDER** [162] - 1:9, 3:3, 3:10, 25:4, 41:20, 42:4, 44:19, 44:22, 46:5, 46:14, 46:21, 47:22, 48:2, 48:10, 48:18, 49:3, 49:21, 50:6, 50:8, 50:11, 50:18, 50:25, 51:7, 51:10, 51:22,

51:25, 52:8, 55:18, 56:1, 57:7, 57:23, 58:1, 58:13, 58:20, 60:1, 60:4, 60:17, 61:2, 62:1, 65:8, 65:14, 65:18, 65:20, 65:25, 66:8, 67:17, 67:22, 69:16, 69:25, 71:23, 72:11, 74:2, 75:6, 75:12, 75:17, 75:20, 78:6, 78:14, 78:24, 79:7, 79:10, 79:15, 79:18, 79:23, 80:2, 80:5, 80:8, 80:12, 80:19, 81:11, 82:1, 82:4, 82:8, 82:12, 83:1, 83:11, 84:4, 84:18, 86:2, 87:16, 88:4, 88:13, 88:21, 89:4, 89:9, 89:17, 90:6, 90:22, 91:7, 91:17, 91:24, 92:24, 93:22, 95:8, 96:2, 96:19, 96:21, 97:11, 99:15, 99:22, 100:8, 102:19, 104:9, 106:4, 107:7, 109:22, 112:10, 112:12, 113:7, 113:12, 113:22, 115:1, 115:9, 115:17, 116:1, 116:14, 116:17, 118:18, 119:14, 120:3, 120:23, 121:9, 122:16, 124:23, 125:19, 126:16, 127:2, 128:3, 128:7, 129:4, 129:7, 129:9, 129:15, 129:17, 130:16, 131:3, 131:7, 131:24, 132:2, 132:15, 132:23, 133:2, 133:6, 133:15, 135:11, 136:22, 137:1, 137:18, 138:3, 138:10, 138:17, 139:1, 139:5, 139:19, 140:2, 141:10, 143:1, 143:13, 143:15, 143:21, 144:4, 146:1
**Schneider** [27] - 3:4, 3:9, 4:11, 15:4, 25:2, 25:7, 26:10, 26:23, 26:25, 27:15, 29:9, 29:12, 29:22, 30:4, 30:12, 30:24, 31:2,

31:18, 32:10, 40:14, 40:16, 41:14, 41:19, 41:20, 41:21, 89:18, 90:6
**Schneider's** [2] - 26:5, 32:16
**Schwartz** [16] - 46:12, 46:14, 47:22, 48:10, 52:9, 55:18, 57:9, 57:23, 59:10, 65:25, 69:16, 71:23, 73:5, 78:6, 79:7, 138:13
**SCHWARTZ** [45] - 2:6, 46:19, 47:1, 48:1, 48:4, 48:17, 48:20, 49:12, 50:3, 50:7, 50:17, 50:21, 51:9, 51:14, 51:24, 55:17, 57:25, 58:8, 58:14, 59:11, 60:3, 60:5, 60:16, 60:18, 61:4, 66:3, 67:4, 67:21, 67:24, 69:7, 69:24, 70:1, 71:24, 72:18, 73:22, 74:6, 74:20, 76:25, 78:12, 78:18, 79:6, 79:9, 138:13, 138:24, 139:4
**scope** [11] - 19:14, 26:24, 47:13, 48:21, 49:1, 60:12, 61:4, 71:16, 76:22, 77:25, 102:1
**scratch** [1] - 133:14
**seats** [1] - 33:3
**second** [5] - 9:17, 46:21, 50:8, 116:4, 116:7
**secret** [15] - 101:17, 101:22, 102:3, 102:5, 102:7, 102:10, 102:12, 102:15, 106:8, 106:13, 106:14, 106:20, 106:25, 107:10
**Secret** [9] - 101:19, 103:3, 103:19, 103:25, 104:7, 105:6, 107:11, 107:21, 128:12
**Section** [2] - 94:20, 139:12
**section** [8] - 22:8, 51:8, 56:3, 56:11, 84:17, 85:1, 85:22, 86:12
**secure** [1] - 92:10
**Security** [2] - 140:23, 142:20

**see** [31] - 17:14, 18:1, 22:3, 39:15, 41:3, 56:21, 57:2, 57:4, 64:19, 73:7, 75:5, 75:7, 75:21, 77:10, 84:18, 91:23, 98:6, 108:4, 110:12, 118:8, 118:16, 118:25, 119:18, 122:1, 130:6, 131:25, 134:13, 135:14, 139:19, 143:4, 146:9
**seeing** [1] - 117:1
**seek** [3] - 60:8, 60:13, 77:24
**seeking** [8] - 42:14, 47:4, 47:12, 49:13, 59:5, 61:15, 70:7, 70:13
**seem** [5] - 25:16, 25:18, 27:17, 27:19, 27:21
**segment** [1] - 30:13
**select** [2] - 40:22, 40:25
**selected** [2] - 21:12, 24:3
**selection** [4] - 15:7, 23:3, 23:19, 40:20
**selections** [1] - 15:17
**send** [2] - 25:4, 139:3
**sends** [1] - 35:5
**sense** [11] - 16:18, 16:19, 24:1, 29:11, 71:25, 108:11, 108:12, 110:3, 118:13, 129:13, 129:14
**sensitive** [3] - 120:6, 120:7, 137:12
**sent** [7] - 50:1, 52:25, 53:4, 54:12, 74:9, 83:13, 125:13
**sentence** [2] - 78:7, 78:13
**Sentry** [1] - 2:15
**separate** [6] - 40:4, 76:16, 81:3, 81:8, 97:24
**separately** [2] - 57:18, 63:23
**September** [2] - 6:13, 22:20
**series** [1] - 70:2
**seriously** [1] - 144:19
**serve** [4] - 14:8, 16:8, 94:1, 139:22
**served** [3] - 12:11, 16:10, 17:1

**service** [1] - 6:5
**serving** [1] - 68:12
**session** [3] - 112:24, 114:25, 134:22
**sessions** [1] - 112:24
**set** [12] - 11:18, 12:1, 12:10, 15:1, 16:6, 18:21, 19:3, 26:8, 47:5, 91:21, 98:16, 140:25
**SETH** [1] - 2:6
**Seth** [9] - 11:3, 20:22, 25:20, 45:22, 61:22, 87:21, 106:2, 130:8, 134:18
**sets** [2] - 31:19, 67:14
**setting** [3] - 12:5, 112:20, 122:9
**settlement** [4] - 24:2, 40:4, 40:19, 40:23
**seven** [8] - 114:5, 114:10, 114:18, 115:9, 115:11, 117:24, 118:11, 135:7
**seven-hour** [2] - 114:10, 114:18
**several** [1] - 64:6
**severe** [1] - 3:24
**SHAH** [3] - 2:18, 80:10, 80:14
**Shah** [1] - 80:10
**shall** [2] - 88:8, 121:10
**Shanghai** [1] - 109:5
**shape** [1] - 4:2
**share** [5] - 68:23, 71:14, 113:25, 124:7, 126:5
**shared** [3] - 69:2, 124:13, 124:14
**Sharon** [1] - 10:6
**sheet** [9] - 7:17, 20:3, 20:5, 20:9, 20:11, 20:16, 20:20, 20:25, 21:13
**sheets** [7] - 21:2, 21:6, 21:7, 21:15, 21:19, 26:20
**shoes** [1] - 66:14
**short** [3] - 26:12, 85:22, 126:20
**short-form** [1] - 26:12
**short-winded** [1] - 126:20
**shortly** [2] - 74:9, 133:14
**shot** [1] - 142:9
**show** [18] - 7:17, 7:22, 7:25, 8:23, 9:2, 9:13, 9:17, 11:14, 11:17,

11:23, 12:4, 13:25, 53:22, 55:7, 64:16, 64:17, 104:22, 124:8
**showing** [1] - 112:23
**shown** [1] - 123:13
**shows** [1] - 27:2
**shut** [4] - 5:10, 5:12, 6:10, 6:12
**shutdowns** [1] - 117:1
**sic** [1] - 124:7
**sick** [1] - 116:6
**side** [10] - 13:18, 18:7, 20:2, 20:10, 39:24, 71:11, 82:17, 112:1, 136:14
**side's** [2] - 18:16, 19:2
**sides** [11] - 12:9, 18:12, 19:24, 25:13, 25:14, 29:10, 31:15, 40:13, 64:20, 112:5, 123:6
**significant** [1] - 21:20
**silent** [1] - 35:6
**similar** [4] - 60:8, 67:5, 89:21, 89:24
**similarities** [1] - 90:10
**similarly** [1] - 85:12
**simple** [5] - 74:21, 86:8, 97:1, 119:1, 119:9
**simplify** [2] - 97:22, 98:1
**simply** [3] - 32:13, 85:2, 137:17
**simultaneously** [1] - 22:4
**single** [6] - 5:15, 52:17, 56:22, 57:2, 68:16, 70:24
**sit** [2] - 64:9, 136:11
**sitting** [2] - 13:19, 110:17
**situation** [4] - 28:20, 29:20, 37:3, 119:3
**situations** [1] - 42:17
**six** [9] - 33:1, 37:15, 44:4, 44:24, 50:22, 51:12, 63:22, 67:14
**size** [2] - 66:13, 68:23
**skip** [1] - 108:15
**sky** [1] - 130:18
**slated** [1] - 68:11
**Slater** [39] - 15:22, 15:24, 17:11, 28:9, 31:2, 44:11, 45:4, 51:25, 58:12, 59:5, 62:3, 65:8, 66:12, 78:15, 78:20, 79:10, 81:11, 82:17, 83:14, 87:23, 88:6, 90:25,

96:3, 96:11, 97:11, 104:11, 104:13, 106:5, 109:22, 123:3, 124:23, 126:18, 129:17, 131:24, 133:16, 136:1, 144:20, 144:22, 145:3
**SLATER** [78] - 1:11, 1:12, 15:22, 16:1, 16:16, 17:12, 18:6, 18:18, 28:9, 41:9, 44:11, 45:3, 50:9, 50:14, 51:1, 52:1, 52:12, 55:24, 56:2, 57:13, 60:15, 60:24, 62:5, 65:11, 65:16, 65:19, 65:23, 67:10, 68:10, 70:16, 74:15, 74:21, 75:9, 75:14, 75:18, 75:25, 79:12, 79:17, 81:9, 81:12, 82:3, 82:22, 85:21, 87:1, 88:10, 88:14, 88:18, 91:2, 97:12, 98:11, 104:14, 109:23, 111:19, 113:2, 121:7, 121:14, 121:18, 124:24, 126:9, 126:13, 126:17, 126:19, 127:16, 128:5, 128:17, 129:14, 129:16, 129:18, 131:2, 131:4, 131:9, 131:13, 132:1, 132:7, 132:17, 133:9, 133:20, 136:3
**Slater's** [5] - 50:12, 74:11, 134:19, 140:21, 144:6
**Sleet** [1] - 36:17
**slicing** [1] - 88:18
**slightly** [1] - 82:18
**slip** [1] - 141:6
**slot** [1] - 133:5
**small** [3] - 50:22, 70:2, 73:25
**smaller** [2] - 22:12, 111:20
**Smoot** [1] - 10:4
**SMOOT** [1] - 10:4
**smooth** [3] - 28:25, 81:18, 106:11
**smoother** [1] - 108:6
**smoothly** [3] - 103:7, 105:16, 127:9
**society** [1] - 121:1
**Society** [1] - 36:18

**Solco** [6] - 74:23, 75:7, 75:10, 76:14, 77:18, 77:19
**sold** [4] - 52:19, 53:19, 59:2, 70:24
**solely** [1] - 19:12
**solution** [2] - 112:8, 143:11
**solve** [1] - 78:1
**solved** [1] - 33:4
**solvents** [8] - 52:23, 85:5, 85:6, 85:9, 85:11, 85:17, 85:23, 86:17
**someone** [7] - 11:22, 20:19, 83:20, 103:15, 122:21, 132:18, 141:10
**someplace** [1] - 93:11
**sometime** [1] - 32:23
**somewhat** [2] - 20:7, 20:8
**somewhere** [2] - 21:14, 138:2
**Sonja** [1] - 10:20
**SONJA** [1] - 10:20
**soon** [5] - 13:16, 13:22, 15:1, 32:16, 42:2
**sooner** [1] - 69:20
**SOP** [1] - 67:16
**SOPs** [12] - 61:16, 61:19, 64:9, 64:10, 64:17, 65:7, 65:18, 65:21, 66:1, 66:4, 66:5, 66:9
**sorry** [20] - 14:20, 25:24, 48:11, 48:18, 52:7, 55:25, 65:14, 65:15, 65:16, 77:3, 81:10, 82:7, 88:14, 88:16, 92:13, 113:2, 121:8, 128:8, 131:4, 139:1
**sort** [18] - 4:13, 28:24, 42:17, 50:2, 77:8, 97:13, 97:19, 98:7, 98:8, 101:21, 121:17, 122:14, 139:17, 140:7, 140:8, 140:11, 144:21, 145:13
**sorts** [1] - 43:4
**sought** [2] - 69:8, 101:11
**sounds** [3] - 42:5, 82:1, 110:22
**source** [4] - 48:7, 54:20, 54:21, 139:6
**South** [1] - 58:24,

58:25, 59:7
**speaking** [3] - 62:2, 103:13, 126:22
**special** [40] - 24:19, 24:22, 25:15, 26:4, 27:19, 28:1, 28:2, 28:5, 28:6, 28:18, 30:13, 30:24, 30:25, 31:12, 31:17, 31:20, 33:18, 34:2, 35:9, 35:11, 35:21, 35:22, 36:11, 36:13, 36:16, 36:22, 37:9, 37:16, 37:25, 38:16, 39:16, 39:23, 40:4, 40:6, 40:12, 40:16, 40:22, 41:7, 69:21
**specific** [28] - 45:11, 46:4, 47:14, 49:8, 49:23, 49:24, 50:19, 52:8, 57:5, 58:4, 63:14, 64:17, 65:4, 65:9, 72:1, 73:25, 78:17, 78:19, 81:7, 82:15, 83:6, 90:24, 95:15, 105:5, 107:7, 107:8, 122:2, 140:13
**specifically** [11] - 47:2, 48:14, 49:17, 51:19, 58:9, 63:9, 66:9, 83:15, 83:18, 83:23, 137:5
**specificity** [3] - 62:12, 65:21, 67:19
**specifics** [1] - 90:14
**specified** [2] - 65:5, 76:14
**speculation** [1] - 70:12
**speculatively** [1] - 72:10
**spend** [1] - 44:2
**spent** [4] - 29:12, 32:17, 126:6, 141:15
**split** [2] - 54:6, 113:15
**spoiled** [1] - 29:10
**spring** [3] - 5:20, 6:2, 32:23
**stage** [4] - 11:12, 11:18, 11:23, 15:17
**standard** [11] - 31:20, 52:23, 61:7, 61:9, 62:15, 63:10, 77:4, 77:6, 77:12, 84:19
**standing** [1] - 104:16
**standpoint** [2] - 5:8, 135:5
**stands** [2] - 48:25, 79:4
**STANOCH** [7] - 1:15,

8:12, 9:5, 9:23, 10:15, 140:5, 143:14
**Stanoch** [6] - 8:12, 9:5, 9:23, 10:15, 140:5, 141:24
**stars** [1] - 140:17
**start** [31] - 4:16, 5:16, 6:17, 12:14, 12:17, 13:16, 14:3, 15:20, 20:13, 29:3, 42:8, 44:6, 44:14, 44:15, 44:16, 45:8, 46:9, 46:10, 50:16, 64:2, 68:11, 68:12, 75:24, 89:23, 110:20, 115:11, 132:5, 133:4, 133:6, 135:12, 135:13
**started** [10] - 20:9, 20:10, 87:5, 87:6, 88:15, 104:4, 132:3, 132:7, 134:14, 146:8
**starting** [5] - 24:4, 45:6, 91:5, 114:19, 132:13
**starts** [2] - 110:15, 131:22
**state** [19] - 10:24, 11:1, 11:5, 101:16, 101:22, 102:3, 102:5, 102:7, 102:10, 102:11, 102:15, 106:8, 106:13, 106:14, 106:20, 106:25, 107:9, 131:18
**State** [10] - 29:18, 101:19, 103:3, 103:19, 103:25, 104:7, 105:6, 107:11, 107:21, 128:12
**statement** [3] - 63:6, 75:1, 122:12
**statements** [1] - 74:10
**States** [27] - 31:24, 32:20, 34:13, 34:14, 34:16, 35:1, 35:19, 38:18, 46:22, 47:18, 48:6, 51:18, 51:21, 52:5, 54:25, 55:13, 56:17, 58:16, 58:25, 59:3, 59:8, 72:5, 94:2, 110:7, 133:23, 134:5, 134:16
**STATES** [3] - 1:1, 1:8, 1:9
**states** [3] - 3:24, 4:23, 38:11
**statistics** [2] - 37:5,

37:6
**status** [5] - 11:6, 20:15, 32:15, 37:1, 83:8
**STATUS** [1] - 1:5
**stay** [2] - 3:14, 86:10
**stays** [5] - 72:17, 73:16, 84:24, 87:20, 146:14
**stenography** [1] - 1:24
**step** [5] - 16:1, 32:19, 62:12, 86:18, 86:20
**stepped** [1] - 57:19
**stepping** [1] - 96:25
**steps** [1] - 92:10
**Steve** [2] - 8:1, 83:2
**STEVE** [1] - 2:10
**Stewart** [1] - 7:19
**STEWART** [1] - 7:20
**sticky** [1] - 130:3
**still** [10] - 3:25, 8:25, 33:4, 58:14, 73:25, 74:10, 74:13, 109:3, 113:4, 136:18
**Stock** [1] - 36:18
**stop** [1] - 145:23
**stores** [1] - 1:2
**straddle** [1] - 95:23
**strange** [1] - 138:18
**strategically** [1] - 130:20
**streamline** [1] - 131:21
**Street** [3] - 1:15, 2:3, 2:7
**stretch** [1] - 88:25
**stricken** [1] - 70:15
**strike** [4] - 69:8, 83:14, 84:3, 98:19
**struck** [2] - 68:15, 85:20
**stuff** [1] - 7:16
**subject** [7] - 86:13, 92:20, 101:16, 106:21, 114:24, 137:14, 138:3
**submission** [1] - 144:20
**submit** [2] - 39:9, 41:2
**submitted** [3] - 22:19, 74:10, 143:18
**subpoena** [8] - 136:22, 137:3, 137:4, 137:19, 138:4, 138:21, 139:22
**subpoenaing** [1] - 137:25
**subsection** [1] - 46:9

**subsidiaries** [1] - 76:11
**substance** [1] - 50:22
**substances** [1] - 13:19
**substantive** [1] - 43:3
**sudden** [1] - 62:13
**suffering** [1] - 4:1
**sufficient** [5] - 14:25, 62:12, 67:18, 77:2, 87:20
**suggest** [17] - 11:9, 13:23, 14:24, 15:8, 16:16, 16:24, 40:5, 40:13, 40:18, 41:4, 41:5, 45:4, 92:6, 102:22, 127:18, 133:15, 135:11
**suggested** [3] - 91:5, 110:22, 141:24
**suggesting** [2] - 17:7, 18:14
**suggestion** [8] - 14:6, 22:24, 24:7, 27:25, 39:22, 99:13, 143:1
**Suite** [4] - 1:15, 1:18, 2:11, 2:15
**Suits** [1] - 9:7
**SUITS** [1] - 9:8
**summary** [1] - 11:11
**summer** [5] - 5:21, 6:3, 6:17, 117:5, 144:24
**Sunday** [1] - 3:12
**Supp** [1] - 36:19
**suppliers** [1] - 54:1
**Supply** [2] - 140:23, 142:19
**supply** [5] - 20:6, 20:24, 38:15, 81:2, 81:8
**support** [2] - 28:17, 117:12
**suppose** [8] - 58:21, 84:5, 93:1, 96:7, 96:10, 99:5, 99:19, 116:6
**supposed** [1] - 99:8
**Supreme** [6] - 33:17, 35:1, 35:3, 35:12, 36:4, 36:13
**surge** [1] - 116:25
**surprise** [1] - 134:3
**surprised** [4] - 5:19, 57:19, 64:14, 76:23
**survive** [1] - 12:24
**Susan** [1] - 10:4
**suspicious** [1] - 55:2
**swamped** [1] - 32:13
**sweeping** [1] - 54:17

**system** [1] - 35:19

## T

**T10** [1] - 108:15
**tab** [1] - 75:16
**tackle** [1] - 90:25
**Takata** [1] - 38:4
**TAKATA** [1] - 38:4
**TAKEN** [1] - 89:15
**Talcum** [1] - 37:10
**talks** [2] - 65:18, 135:23
**tape** [1] - 63:13
**TAR** [4] - 143:23, 145:10, 145:15, 145:17
**Tarhune** [1] - 9:9
**TARHUNE** [1] - 9:9
**team** [1] - 105:4
**technical** [2] - 114:12, 114:13
**technically** [2] - 30:1, 68:12
**technology** [2] - 114:14, 145:19
**techs** [1] - 19:9
**tee** [14] - 25:14, 103:4, 103:18, 104:23, 107:10, 108:6, 128:6, 128:11, 128:13, 128:14, 128:18, 129:11, 138:23, 143:4
**teed** [1] - 104:24, 141:7, 143:8
**telephone** [1] - 1:5
**TELEPHONE** [1] - 3:1
**ten** [6] - 10:9, 10:11, 99:25, 109:4, 109:5, 130:19
**ten-hour** [2] - 109:4, 109:5
**tend** [1] - 4:15
**term** [4] - 70:11, 72:20, 73:6, 110:13
**terminology** [1] - 71:20
**terms** [29] - 21:21, 22:1, 22:3, 23:5, 26:23, 44:5, 61:6, 61:15, 72:5, 72:9, 90:12, 91:12, 91:13, 91:20, 97:1, 97:4, 97:17, 101:1, 101:21, 108:17, 117:13, 128:19, 128:21, 130:14, 132:8, 145:3
**terribly** [1] - 43:2

**terrific** [2] - 83:1, 91:24
**tested** [2] - 70:24, 70:25
**testifies** [1] - 123:23
**testify** [12] - 19:1, 66:6, 72:8, 76:6, 76:9, 77:16, 79:2, 80:24, 83:20, 94:18, 95:19
**testimony** [17] - 55:21, 68:1, 72:3, 78:2, 80:25, 81:5, 95:4, 95:12, 96:1, 101:7, 102:7, 102:10, 103:25, 104:3, 106:23, 120:17, 125:23
**testing** [17] - 48:8, 54:22, 55:8, 56:3, 56:11, 56:13, 59:19, 70:19, 71:8, 83:21, 83:25, 84:6, 85:6, 85:13, 85:14, 85:15, 85:17
**tetrazole** [1] - 86:18
**Teva** [21] - 2:12, 2:12, 8:2, 83:1, 83:3, 83:16, 83:17, 83:22, 84:1, 84:5, 84:15, 85:17, 86:20, 87:9, 87:13, 87:15, 87:25, 143:18, 145:5, 145:18
**Teva's** [9] - 23:7, 83:8, 83:20, 83:25, 85:4, 85:6, 85:11, 85:15
**text** [1] - 25:4
**thankful** [1] - 4:1
**Thanksgiving** [4] - 3:21, 4:3, 40:8, 42:2
**THE** [4] - 1:1, 1:8, 1:9, 42:3
**the court** [59] - 10:25, 11:11, 12:6, 13:3, 16:21, 22:19, 26:4, 26:19, 27:3, 27:6, 28:1, 31:20, 32:10, 37:7, 45:9, 45:25, 47:5, 47:13, 49:7, 49:22, 49:23, 56:6, 60:1, 62:14, 64:3, 65:3, 69:19, 73:5, 74:7, 74:14, 82:19, 89:8, 90:4, 93:3, 93:15, 93:16, 94:19, 94:23, 95:14, 100:4, 101:23, 103:10, 104:8, 106:14, 112:6, 113:20,

115:4, 116:5, 120:2, 121:13, 121:17, 122:22, 125:22, 127:6, 127:22, 127:24, 132:2, 137:20, 139:25
**theme** [1] - 98:7
**themselves** [3] - 30:15, 121:11, 140:16
**Theodore** [1] - 8:9
**therefore** [1] - 36:15
**they've** [6] - 6:14, 9:16, 23:3, 39:5, 76:13, 96:17, 96:22, 138:16, 144:11
**thin** [1] - 73:12
**thinking** [4] - 45:18, 88:16, 118:1, 130:22
**thinks** [1] - 6:3
**Third** [3] - 35:14, 36:3, 36:15
**third** [6] - 32:3, 38:8, 50:10, 50:15, 56:21, 62:7
**third-party** [2] - 32:3, 38:8
**Thomas** [2] - 10:6, 10:23
**thorough** [1] - 4:8
**thoughts** [3] - 43:20, 44:4, 44:9
**threat** [1] - 105:25
**three** [11] - 6:24, 6:25, 7:1, 18:15, 31:24, 37:21, 44:3, 51:12, 74:16, 99:8, 140:12
**throughout** [5] - 52:21, 56:20, 67:8, 73:6, 134:21
**Thursday** [1] - 40:8
**ties** [3] - 109:24, 115:19, 116:23
**timely** [3] - 11:25, 31:21, 38:20
**timing** [3] - 22:2, 44:5, 104:18
**Title** [1] - 139:12
**today** [15] - 3:12, 3:15, 3:18, 25:14, 26:8, 27:12, 28:16, 30:5, 44:13, 69:14, 82:16, 82:24, 98:18, 112:4, 125:13
**today's** [1] - 68:6
**toes** [1] - 16:1
**together** [10] - 20:11, 49:5, 57:20, 57:21, 71:16, 75:14, 75:15, 100:25, 109:24,

*110:2*

**tomorrow** *[1]* - 88:11
**tone** *[1]* - 63:23
**took** *[3]* - 3:17, 21:3, 43:14
**tooling** *[1]* - 136:13
**top** *[2]* - 21:19, 96:18
**Topic** *[2]* - 65:17, 72:1
**topic** *[8]* - 47:2, 47:12, 60:6, 72:3, 76:24, 77:16, 86:4, 87:20
**topics** *[25]* - 30:6, 47:3, 47:7, 61:13, 68:5, 72:1, 75:2, 75:22, 77:20, 78:2, 80:22, 80:25, 81:7, 81:17, 86:10, 86:13, 86:19, 87:18, 88:8, 95:13, 105:8, 128:22, 128:25, 132:12, 133:23
**Topics** *[1]* - 67:25
**Torghele** *[1]* - 9:8
**TORGHELE** *[1]* - 9:9
**Torrent** *[4]* - 2:22, 82:4, 82:6, 82:10
**total** *[6]* - 15:9, 38:4, 38:6, 38:13, 109:6, 117:10
**tough** *[2]* - 3:22, 88:11
**towards** *[2]* - 98:25, 127:21
**toxic** *[3]* - 48:8, 54:22, 59:18
**Toyota** *[1]* - 38:12
**track** *[4]* - 11:20, 28:25, 55:19, 88:16
**tracks** *[1]* - 12:15
**tradition** *[1]* - 122:4
**traditions** *[1]* - 120:19
**train** *[1]* - 109:5
**transcript** *[5]* - 1:24, 63:8, 65:13, 70:19, 70:22
**transcription** *[1]* - 1:24
**transcripts** *[2]* - 17:19, 146:12
**transitioning** *[1]* - 29:2
**translate** *[1]* - 126:6
**translated** *[3]* - 123:15, 124:4
**translation** *[2]* - 115:7, 133:18
**translations** *[4]* - 124:2, 125:3, 125:23, 126:3
**translators** *[2]* - 123:19, 126:23

**transmitting** *[1]* - 118:7
**transparent** *[1]* - 69:6
**transparently** *[1]* - 81:24
**TRAURIG** *[1]* - 2:9
**Traurig** *[4]* - 8:2, 17:16, 83:3, 143:18
**Travel** *[1]* - 38:2
**travel** *[13]* - 108:25, 109:2, 109:17, 113:16, 115:20, 115:24, 117:4, 117:5, 118:3, 118:5, 118:15, 118:17, 133:18
**traveling** *[3]* - 97:5, 110:7, 117:9
**tremendous** *[3]* - 30:2, 30:16, 54:8
**trial** *[10]* - 5:2, 6:25, 15:15, 15:17, 24:1, 33:7, 33:19, 34:2, 34:5, 35:10
**trials** *[18]* - 4:22, 5:9, 5:15, 5:17, 5:21, 6:11, 6:17, 6:18, 6:24, 7:6, 7:7, 15:7, 15:12, 30:10, 33:8, 33:11
**tried** *[4]* - 7:2, 23:1, 123:14, 123:24
**trigger** *[1]* - 44:13
**triggered** *[3]* - 44:17, 53:7, 54:11
**trip** *[3]* - 109:3, 109:4, 109:6
**trouble** *[3]* - 119:5, 123:8, 127:12
**troubles** *[1]* - 118:23
**Troyce** *[1]* - 10:5
**TROYCE** *[1]* - 10:5
**truck** *[1]* - 110:18
**true** *[1]* - 5:25
**trust** *[2]* - 4:17, 40:8
**try** *[23]* - 4:24, 5:20, 7:11, 18:1, 24:17, 33:9, 54:5, 88:19, 107:24, 109:10, 109:11, 111:10, 114:22, 122:13, 129:25, 133:4, 134:1, 136:12, 143:8
**trying** *[14]* - 32:8, 45:23, 52:13, 52:14, 53:8, 76:3, 77:24, 97:6, 104:4, 127:21, 131:21, 136:19, 139:17, 146:7
**Tuesday** *[2]* - 1:6,

*3:15*

**tune** *[1]* - 41:18
**turn** *[9]* - 17:24, 18:1, 41:22, 56:3, 62:7, 72:1, 76:3, 96:3, 145:11
**turned** *[1]* - 145:9
**turns** *[1]* - 143:20
**two** *[35]* - 5:12, 6:12, 7:9, 7:18, 18:24, 31:25, 32:12, 33:19, 34:7, 44:3, 47:4, 51:12, 57:8, 58:5, 61:5, 67:24, 68:11, 71:14, 83:14, 84:2, 84:16, 90:11, 94:6, 94:8, 99:9, 109:3, 110:2, 112:24, 114:19, 114:24, 123:18, 124:13, 124:19, 135:23, 140:6
**two-day** *[1]* - 114:24
**type** *[7]* - 22:13, 28:17, 59:24, 63:13, 65:21, 81:23, 127:9
**types** *[5]* - 13:12, 29:5, 59:16, 63:10, 94:13
**typically** *[1]* - 49:13

---

## U

**U.S** *[20]* - 35:14, 52:20, 53:19, 57:12, 58:19, 71:17, 76:12, 77:18, 77:20, 81:23, 109:14, 114:20, 114:21, 117:3, 134:10, 134:24, 135:1, 135:3, 135:4, 135:9
**U.S.-backed** *[1]* - 135:4
**U.S.A** *[1]* - 81:14
**ultimately** *[3]* - 91:3, 99:6, 111:4
**unable** *[2]* - 8:4, 71:12
**unacceptable** *[1]* - 122:19
**uncertain** *[1]* - 61:6
**uncivilly** *[1]* - 122:20
**unclear** *[2]* - 72:2, 72:8
**under** *[16]* - 32:22, 68:6, 75:16, 77:4, 78:17, 84:17, 91:21, 92:20, 101:11, 101:19, 115:11, 118:15, 118:17, 119:22, 139:11,

*146:11*

**underlying** *[1]* - 92:5
**understood** *[6]* - 16:9, 56:9, 84:25, 87:25, 100:23, 111:20
**undoubtedly** *[1]* - 139:5
**unfair** *[2]* - 118:4, 126:25
**unfortunate** *[1]* - 56:4
**unfortunately** *[4]* - 55:4, 120:25, 121:4, 144:15
**unidentified** *[3]* - 48:8, 54:21, 59:19
**Unintended** *[1]* - 38:12
**UNITED** *[3]* - 1:1, 1:8, 1:9
**United** *[27]* - 31:24, 32:20, 34:13, 34:14, 34:16, 35:1, 35:19, 38:18, 46:22, 47:18, 48:6, 51:18, 51:20, 52:5, 54:25, 55:13, 56:16, 58:16, 58:24, 59:3, 59:8, 72:5, 94:2, 110:7, 133:22, 134:5, 134:16
**unknown** *[2]* - 48:7, 54:21
**unless** *[9]* - 4:23, 7:11, 8:25, 18:7, 24:20, 30:17, 51:22, 113:24, 144:13
**unlike** *[1]* - 106:16
**unlikely** *[1]* - 102:10
**unlimited** *[2]* - 130:22, 131:20
**unprecedented** *[2]* - 29:14, 29:15
**unprofessional** *[1]* - 122:20
**unquote** *[4]* - 70:8, 74:18, 77:10, 98:15
**unreasonable** *[3]* - 38:24, 39:1, 113:21
**unredacted** *[6]* - 136:23, 138:5, 138:8, 138:12, 138:15, 138:20
**unrelated** *[1]* - 85:13
**untold** *[1]* - 61:8
**untruthful** *[2]* - 55:5, 55:6
**unwieldy** *[1]* - 108:3
**unworkable** *[1]* - 125:8
**up** *[59]* - 5:1, 5:24, 6:21, 7:1, 12:10,

*12:17, 15:14, 18:21, 19:3, 20:9, 21:5, 21:8, 23:17, 23:25, 25:2, 25:14, 31:9, 34:21, 40:1, 45:8, 50:18, 54:6, 57:19, 58:10, 58:23, 62:14, 67:22, 73:7, 82:9, 90:4, 91:10, 95:8, 99:18, 103:5, 103:18, 104:23, 104:24, 105:14, 107:10, 108:6, 110:23, 112:18, 116:17, 116:18, 117:6, 121:23, 123:24, 128:6, 128:11, 128:13, 128:14, 128:18, 129:11, 138:6, 138:23, 139:23, 141:8, 143:4, 143:8*

**upcoming** *[1]* - 29:17
**upfront** *[2]* - 57:21, 90:2
**urgency** *[1]* - 118:8
**USA** *[2]* - 2:12, 2:16
**useful** *[2]* - 80:24, 81:5
**uses** *[1]* - 49:24
**USP** *[1]* - 56:10
**utilized** *[2]* - 85:6, 85:11

---

## V

**vacancies** *[1]* - 33:1
**vacate** *[1]* - 11:18
**vacating** *[1]* - 42:12
**vaccinations** *[1]* - 5:25
**vacuum** *[1]* - 100:9
**vague** *[1]* - 70:11
**valid** *[2]* - 57:2, 137:24
**VALSARTAN** *[1]* - 1:3
**Valsartan** *[27]* - 46:22, 47:18, 48:9, 48:25, 49:9, 51:15, 51:16, 52:4, 52:19, 54:22, 54:23, 55:3, 56:10, 56:16, 57:11, 58:23, 58:24, 59:2, 63:4, 67:8, 72:5, 72:23, 89:19, 128:9, 128:10
**vanilla** *[1]* - 98:21
**variety** *[1]* - 34:4
**various** *[1]* - 39:25
**vein** *[2]* - 136:2, 146:9
**venue** *[1]* - 5:8
**version** *[1]* - 74:8

**versus** [2] - 35:14, 36:2
**vetted** [1] - 105:19
**VI** [1] - 67:23
**VIA** [1] - 3:1
**via** [1] - 139:14
**Via** [1] - 1:5
**Victoria** [2] - 17:15, 143:17
**VICTORIA** [1] - 2:9
**video** [2] - 92:12, 110:24
**videoconference** [2] - 109:7, 114:12
**view** [7] - 26:3, 27:17, 67:18, 95:18, 112:7, 117:23, 142:24
**virtually** [3] - 26:11, 53:18, 63:16
**visa** [1] - 109:1
**voluntarily** [3] - 98:24, 100:5, 125:5
**voluntary** [17] - 92:9, 92:22, 93:6, 93:11, 93:21, 94:5, 95:20, 96:1, 96:10, 98:13, 98:16, 99:6, 99:17, 99:25, 100:13, 100:17, 100:21
**volunteered** [1] - 145:10
**volution** [1] - 92:7
**votes** [2] - 34:16, 34:24

## W

**wait** [4] - 118:11, 118:25, 130:6, 134:13
**waiting** [1] - 133:24
**waive** [1] - 111:16
**waiving** [1] - 5:6
**walk** [3] - 46:1, 64:20, 83:9
**walking** [1] - 90:19
**WALLACK** [1] - 2:17
**Walsh** [1] - 10:23
**wants** [16] - 14:4, 15:21, 18:7, 28:8, 50:16, 69:5, 93:1, 93:8, 93:25, 98:16, 100:11, 100:19, 102:12, 116:18, 128:6, 132:18
**Ware** [1] - 10:21
**WARE** [1] - 10:21
**warrant** [1] - 69:22
**warranted** [1] - 28:7
**warrants** [1] - 27:18

**waste** [1] - 136:15
**waterfall** [1] - 20:5
**Wawa** [1] - 3:16
**Wear** [1] - 37:20
**wear** [1] - 66:14
**Wednesday** [1] - 131:16
**week** [7] - 13:22, 18:24, 26:17, 40:8, 88:13, 88:20, 110:9
**weekend** [3] - 29:15, 83:5, 83:14
**weeks** [8] - 5:12, 11:15, 14:23, 18:16, 22:23, 27:1, 33:9, 91:20
**Welch** [1] - 9:10
**WELCH** [1] - 9:10
**welcome** [1] - 143:15
**welfare** [2] - 119:9, 119:16
**Wells** [1] - 36:2
**WERNER** [1] - 2:14
**whatsoever** [3] - 5:7, 5:17, 39:21
**whence** [1] - 5:3
**whereas** [1] - 56:7
**wherein** [1] - 36:21
**White** [2] - 9:11, 37:20
**white** [1] - 56:19
**WHITELEY** [1] - 2:2
**whole** [3] - 60:25, 86:4, 135:17
**wholesale** [1] - 59:21
**wholesaler** [5] - 26:17, 43:24, 135:25, 140:3, 140:22
**wholesalers** [6] - 21:5, 141:11, 141:18, 142:10, 142:19
**wholly** [1] - 76:11
**wholly-owned** [1] - 76:11
**wider** [1] - 112:6
**William** [1] - 10:19
**Williams** [7] - 10:21, 27:20, 29:25, 30:1, 31:7, 31:8
**willing** [3] - 39:4, 69:9, 142:6
**winded** [1] - 126:20
**wires** [1] - 32:7
**wish** [2] - 51:19, 144:16
**withheld** [2] - 105:9, 106:8
**witness** [45] - 64:14, 68:5, 68:9, 76:6,

76:9, 76:23, 79:2, 80:23, 84:20, 85:21, 86:3, 86:16, 92:11, 92:19, 92:22, 94:3, 94:4, 94:16, 98:4, 98:14, 98:24, 100:16, 100:17, 101:18, 102:15, 104:6, 104:17, 106:21, 107:4, 110:21, 114:7, 115:12, 115:20, 115:24, 116:4, 116:6, 117:23, 122:7, 122:10, 122:13, 123:13, 123:23, 124:8, 125:24
**witness's** [1] - 120:19
**witnesses** [42] - 54:8, 76:3, 93:19, 94:9, 94:10, 94:14, 95:22, 96:1, 96:10, 97:3, 97:9, 98:5, 100:2, 101:16, 109:16, 110:5, 110:24, 113:16, 117:20, 117:22, 117:24, 118:2, 118:5, 118:11, 118:16, 126:22, 132:10, 133:5, 133:17, 133:19, 133:22, 134:10, 134:24, 134:25, 135:1, 135:4, 135:6, 135:7, 135:9, 136:16
**wonderful** [2] - 30:1, 111:9
**word** [5] - 70:10, 71:23, 72:21, 106:4
**words** [3] - 72:24, 99:25, 145:15
**works** [1] - 58:21
**workup** [1] - 23:3
**world** [7] - 29:4, 39:18, 54:2, 54:21, 55:11, 109:21, 116:25
**worldwide** [3] - 53:2, 53:7, 54:11
**worried** [1] - 22:10
**worse** [1] - 33:15
**worth** [2] - 27:24, 77:13
**wrapping** [1] - 66:13
**write** [1] - 123:24
**written** [11] - 26:13, 26:14, 28:11, 31:4, 34:10, 48:24, 53:20,

116:8, 123:22, 141:2, 142:5
**wrongly** [1] - 66:20
**wrote** [1] - 74:15

## Y

**year** [14] - 6:2, 13:24, 28:14, 29:6, 33:4, 33:11, 33:12, 47:6, 69:12, 117:2, 146:8
**years** [11] - 6:20, 30:4, 32:15, 33:22, 34:10, 35:22, 36:19, 70:25, 71:4, 71:14, 139:16
**yesterday** [2] - 42:11, 144:20
**York** [1] - 2:22
**yourselves** [1] - 143:3

## Z

**zero** [2] - 119:15, 122:22
**ZHP** [93] - 2:8, 43:24, 49:16, 50:3, 50:15, 53:25, 54:1, 54:5, 55:1, 55:4, 56:5, 56:7, 56:10, 56:13, 57:10, 58:22, 60:7, 62:8, 63:16, 64:23, 66:16, 67:19, 68:14, 74:2, 74:3, 74:6, 74:22, 74:25, 75:3, 75:9, 75:15, 75:16, 75:23, 76:8, 76:11, 76:17, 77:10, 77:13, 77:14, 77:18, 77:25, 78:3, 78:9, 78:16, 78:21, 78:24, 79:3, 79:8, 87:4, 87:10, 87:12, 87:22, 90:23, 90:25, 91:4, 93:2, 93:16, 93:17, 94:2, 94:17, 94:19, 94:24, 95:5, 95:11, 95:15, 96:8, 96:9, 99:1, 100:12, 100:19, 104:21, 105:22, 106:7, 112:2, 117:25, 134:2, 134:6, 134:22, 134:25, 135:6, 135:24, 136:5, 136:17, 136:19, 137:14, 137:25, 138:11, 138:14, 138:18, 139:3
**ZHP's** [11] - 56:14, 56:16, 67:6, 72:4, 77:3, 83:23, 86:19,

102:24, 107:16, 109:4, 135:5
**zone** [4] - 109:12, 111:6, 112:9, 115:12
**Zoom** [2] - 114:14, 122:9