# EXHIBIT A

# EXHIBIT A-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
### OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    aaiPharma Inc., 2320 Scientific Park Drive Wilmington, NC 28405.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date: __10/15/2020__

CLERK OF COURT

OR

_____          /s/        Marlene        J. Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition*. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery*. A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions*. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection*.

(A) *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:** Alcame Corporations (formerly AAlpharma Services Corp.), Alcame Corporation, 145 Fieldcrest Avenue, Edison, NJ 08837

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

OR

_____          /s/ Marlene J. Goldenberg
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
### OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Altus Formulation, 17 800 rue Lapointe, Mirabel (Quebec), Canada J7J 0W8

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

   (i) fails to allow a reasonable time to comply;

   (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

   (iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

   (i) disclosing a trade secret or other confidential research, development, or commercial information; or

   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

   (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

   (ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
### OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Amsal Chem Pvt. Ltd., Plot # A, 401-402, Brahmanpuri, GIDC, Ankleshwar GIDC, Ankleshwar, Gujarat 393002, India

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

   (i) fails to allow a reasonable time to comply;

   (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

   (iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

   (i) disclosing a trade secret or other confidential research, development, or commercial information; or

   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

   (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

   (ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.


(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.
5. All documents related to any inspection conducted by You, or for which you (or employees working on your behalf) were present of any of the following facilities, including, but not limited to, photographs, documents collected, video recordings, audio recordings, emails, travel receipts, itineraries, visa requests, and the like
   a) Unit III (FEI: 3005406526)
   b) Unit V (FEI: 3008307735)
   c) Unit IX (FEI: 3009093782)
   d) Gaddapotharam (FEI: 2004378446)

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Avantor, 222 Red School Lane, Phillipsburg, NJ 08865

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

 Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

 The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;     scheriff@goldenberglaw.com     (legal     assistant); valsartan@csdisco.com (ESI Vendor).

# RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

### A.    Definitions

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-6

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:** AXIS Clinicals Ltd., 1711 Highway 10 East, Dilworth, Minnesota 56304

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____     _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

### A.    Definitions

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3.  Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1.  All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2.  A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a.  Date
    b.  Recipients and/or Senders of the Communication
    c.  General Subject Matter
    d.  Basis of Privilege

**ANDA and DMF File Documents**

1.  All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1.  All communications between you and any Defendant relating to nitrosamines.
2.  All communications between you and any Defendant concerning any toxicology assessment.
3.  All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4.  All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5.  All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6.  All draft reports edited by you for comment and provided to any Defendant.
7.  All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8.  All testing protocols used by you to test for the presence of nitrosamines in any drug.
9.  All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1.  All documents relating to the decision on whether to recall or not to recall any ARBs API.
2.  All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3.  All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4.  All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-7

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     AXIS Clinicals Ltd., Abhijit Chaudhari, 1-1211/1, Survey no. 66 (part) & 67 (part), Miyapur, Serilingampally, Hyderabad 50049, India

   *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

   Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

_____
   The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

                    CLERK OF COURT                              OR

        _____            _____
        *Signature of Clerk or Deputy Clerk*              *Attorney's signature*
_____
The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).
_____

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

   (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

      (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

      (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

         (i) is a party or a party's officer; or

         (ii) is commanded to attend a trial and would not incur substantial expense.

   (2) *For Other Discovery.* A subpoena may command:

      (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

      (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

   (2) *Command to Produce Materials or Permit Inspection.*

      (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

      (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

         (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
### OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Azbil Telstar Technologies Registered Agent, 1504 Grundy Ln, Bristol, PA 19007

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date: __10/15/2020__

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.
11. All notes, recordings, images, reports, memoranda, internal or external communications, or other documents created or produced by you in regard to the audit conducted by you at the facility of Zhejiang Huahai Pharmaceutical Co. Ltd., Chuannan Site No. 1 Branch Factory, Coastal Industrial Zone, Duqiao, Linhai, Zhejiang 317016.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by you related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.

3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. **All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.**

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-9

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    CABB AG Registered Agent, c/o Seth A. Goldberg 30 South 17th Street, Philadelphia, PA 19103-4196

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date: __10/15/2020__

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# **SCHEDULE A**

## A.    Definitions

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3.  Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

4.  Any contracts, purchase orders or invoices concerning the sale from you to any Defendant of any goods, materials, chemicals or other tangible items related to or used in the manufacture of any ARB drug or any component thereof.

## Communications with Relevant Parties

1.  All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2.  A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a.  Date
    b.  Recipients and/or Senders of the Communication
    c.  General Subject Matter
    d.  Basis of Privilege

## ANDA and DMF File Documents

1.  All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1.  All communications between you and any Defendant relating to nitrosamines.

2.  All communications between you and any Defendant concerning any toxicology assessment.

3.  All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.

4.  All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.

5.  All reports and/or draft reports provided to you regarding the nitrosamine investigation

6.  All draft reports edited by you for comment and provided to any Defendant.

7.  All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.

8.  All testing protocols used by you to test for the presence of nitrosamines in any drug.

9.  All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.

10. All documents or communications relating to nitrosamine testing of any drug.

11. All documents, reports or communications concerning any testing, analysis, audits or inspections for the formation or presence of nitrosamines which were performed by you, on your behalf or at the direction of others of any process, equipment, goods, or facilities under your control and utilized in the manufacture of Valeryl Chloride.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
**4.** All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
### OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**     Cambrex, One Meadowlands Plaza, East Rutherford, NJ 07073

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  _10/15/2020_____

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

# RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

### A.     Definitions

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1.  All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2.  Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3.  Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4.  Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5.  Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6.  Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1.  All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2.  All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3.  All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4.  All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-11

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**     Catalent, Inc.,  14 Schoolhouse Road Somerset, NJ 08873.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  _10/15/2020_____

| CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _/s/_____Marlene___J. |

Goldenberg_____

| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |
|---|---|

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.


(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3.  Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1.  All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2.  A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a.  Date
    b.  Recipients and/or Senders of the Communication
    c.  General Subject Matter
    d.  Basis of Privilege

## ANDA and DMF File Documents

1.  All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1.  All communications between you and any Defendant relating to nitrosamines.
2.  All communications between you and any Defendant concerning any toxicology assessment.
3.  All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4.  All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5.  All reports and/or draft reports provided to you regarding the nitrosamine investigation
6.  All draft reports edited by you for comment and provided to any Defendant.
7.  All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8.  All testing protocols used by you to test for the presence of nitrosamines in any drug.
9.  All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1.  All documents relating to the decision on whether to recall or not to recall any ARBs API.
2.  All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3.  All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:** Catalent Micron Technologies, Inc., c/o Registered Agent, Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| Catalent Micron Technologies, Inc., Analytical Services, 333 Phoenixville Pike, Malvern, PA 19355 | December 8, 2020 |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:

Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

_____

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

4. Any purchase orders or statements of work related to the physical and chemical testing of ARB API, excipients or Finished Dose drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.
11. Any testing protocols, methods or method validation information submitted to you by or on behalf of any Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
12. All images of any ARB API or Finished Dose drug submitted to you by or on behalf of any Defendant.

13. Any samples of any ARB API or Finished Dose drug submitted to you by or on behalf of any Defendant that have been maintained by you.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
**4.** All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

## Solvent Manufacturing, Recovery, and Recycling

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

## Toxicology Assessments

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-13

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Charles Wang c/o Seth Goldberg, esq.,Duane Morris

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  _10/15/2020_____

CLERK OF COURT

                                                      OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

## A.     Definitions

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term
"finished dose manufacturer" also includes entities who hold ANDAs.

14.  "Defendants" means all Defendants who have been named within MDL 2875,
including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero
Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical
Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals
Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero
USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma
Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.;
Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The
Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.;
Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.;
Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC;
Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen
Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies,
LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.;
The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance;
and Wal-Mart, Inc.


## DOCUMENT TO BE PRODUCED


**General**

1.  A copy of your most current CV.

**Corporate Organization**


**Contracts**

1.  Documents sufficient to show when You were first retained by Defendant ZHP to perform
work related to a toxicology assessment.
2.  Any document evidencing the scope or nature or work you performed for Defendant ZHP
(including any contracts) that related to a toxicology assessment (either formal, or informal).


1.  .

**Nitrosamine Contamination**

1.  All communications between you and any Defendant relating to nitrosamines.

2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding nitrosamines
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All documents or communications relating to nitrosamine testing of any drug, including any nitrosamine testing provided to you by any Defendant.
9. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**Communications with the FDA**

1. Documents sufficient to show whether You ever communicated on behalf of Defendant ZHP with the FDA with regards to nitrosamine impurities and/or the toxicological assessment of NDMA (including the determination of an acceptable daily limit)

**Communications with Other Third Parties**

1. All communications between you and Zi-Qiang regarding Defendant ZHP and/or any toxicology assessment conducted by you on behalf of Defendant ZHP.
2. All communications between you and Frederick Ball (or any person working for Frederick Ball) regarding Defendant ZHP and/or any toxicology assessment conducted by you on behalf of Defendant ZHP.   .
3. All communications between you and Dylan Yao regarding Defendant ZHP and/or any toxicology assessment conducted by you on behalf of Defendant ZHP.
4. All communications between you and any employees of Alavanda Consulting, including, but not limited to Derek Zhang, regarding Defendant ZHP and/or any toxicology assessment conducted by you on behalf of Defendant ZHP.

**Testing Data**

Documents sufficient to show whether You conducted any independent testing of API for nitrosamine impurity, and/or whether you conducted any independent AMES or DEREK testing on behalf of ZHP to assess the genotoxic potential or toxicological impact of a nitrosamine contamination.

**Toxicology Analysis and/or Assessment**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.

2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API

3. All documents provided to you by any Defendant for use and/or review in anticipation of preparing any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs, including, but not limited to, any testing results of nitrosamine levels in API, DEREK and/or AMES testing.

4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

5. All toxicology assessments, including all draft reports, final reports, redlined reports related to the nitrosamine impurity in ZHP's drugs.

# EXHIBIT A-14

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Chemir Pharma Services, 2672 Metro Blvd., Maryland Heights, MO 63043.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  _10/15/2020_

| CLERK OF COURT | |
|---|---|
| OR | |
| _____ | _/s/_    Marlene    J. Goldenberg_____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) Contempt. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-15

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Chemo Group India, c/o Seth A. Goldberg 30 South 17th Street, Philadelphia, PA 19103-4196

   *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

   Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _ 10/15/2020 _____

                              CLERK OF COURT

                                         OR

   _____          _/s/ Marlene J. Goldenberg
   *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

    drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by you related to any and all Sartan products.
5. Any documents related to credits or refunds anticipated or issued for the return of any ARB API or Finished Dose drug from any Defendant or other party to you.
6. Any documents related to credits or refunds anticipated or issued for the return of any ARB API or Finished Dose drug from you to any Defendant.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.

3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. **All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.**

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Cobalt Pharmaceuticals Inc., 6733 Mississauga Rd., Suite 400 Mississauga, L5N 6J5 Canada.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____        _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# <u>SCHEDULE A</u>

**A.** **Definitions**

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-17

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Cybernetik Technologies P Ltd., 303 Mahatma Coop Hsg Soc, Near Gandha Bhavan, Kothrud, Pune 411038, India

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

**Corporate Organization**

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

**Contracts**

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-18

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Dohmen Life Science Services, LLC, c/o Registered Agent, Cynthia A. Laconte, 800 Woodland Prime, Ste 200, W127N7564 Flint Dr, Menomonee Falls, WI  53051.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: 10/15/2020

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity, including Eversana Life Science Services, LLC, of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which

information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

5. All recall status reports, documents relied upon in the preparation of the recall status reports and all communications concerning the recall status reports in regard to all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.

2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.

3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.

4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.

5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.

2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.

3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.

4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.

5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.

6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.

2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.

3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.

**4.** All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

## Solvent Manufacturing, Recovery, and Recycling

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

## Toxicology Assessments

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-19

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**     Douglas Campbell, c/o InterProQRA, 120 Route 17 North, Paramus, NJ 07652

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  _10/15/2020_

                              CLERK OF COURT

                                          OR

    _____         _/s/ Marlene J. Goldenberg_
    *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

## A.    Definitions

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd. (Z; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### General

1. A copy of your most current CV.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.
4. Contracts with ZHEJIANG HUAHAI PHARMACEUTICAL CO. LTD. regarding services being provided for cGMP services.

5. Any contracts executed by you on behalf of Zhejiang Huahai Pharmaceutical Co. Ltd. for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## Communications with Other Third Parties

1. All communications between you and Zi-Qiang regarding Zhejiang Huahai Pharmaceutical Co. Ltd. or the nitrosamine contamination.
2. All communications between you and Frederick Ball (or any person working for Frederick Ball) regarding Zhejiang Huahai Pharmaceutical Co. Ltd. or the nitrosamine contamination.
3. All communications between you and Peter Saxon regarding Zhejiang Huahai Pharmaceutical Co. Ltd. or the nitrosamine contamination.
4. All communications between you and Charles Wang regarding Zhejiang Huahai Pharmaceutical Co. Ltd. or the nitrosamine contamination.
5. All communications between you and Derek Zhang regarding Zhejiang Huahai Pharmaceutical Co. Ltd. or the nitrosamine contamination.
6. All communications between you and Dylan Yao regarding Zhejiang Huahai Pharmaceutical Co. Ltd. or the nitrosamine contamination.
7. All communications between you and any other person, including former or current FDA inspectors regarding Zhejiang Huahai Pharmaceutical Co. Ltd. or the nitrosamine contamination.

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.

4.  All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5.  All reports and/or draft reports provided to you regarding the nitrosamine investigation
6.  All draft reports edited by you for comment and provided to any Defendant.
7.  All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8.  All testing protocols used by you to test for the presence of nitrosamines in any drug.
9.  All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.
11. All communications between you and Zhejiang Huahai Pharmaceutical Co. Ltd. regarding the FDA's investigation into the Nitrosamine Contamination.
12. All documents (either in final or draft form) in your possession regarding the FDA's investigation into the Nitrosamine contamination.
13. All notes taken during meetings and/or phone calls with the FDA regarding the nitrosamine contamination.
14. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination and/or Zhejiang Huahai Pharmaceutical Co. Ltd.'s manufacture of Valsartan, or Irbesartan.
15. Any notes, memoranda, images, reports or other documents concerning

**Recall-Related Documents**

1.  All documents relating to the decision on whether to recall or not to recall any ARBs API.
2.  All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3.  All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4.  All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1.  All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2.  All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3.  All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4.  All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5.  All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.

6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

**Inspection Documents**

1. All communications between You and Zhejiang Huahai Pharmaceutical Co. Ltd. regarding the FDA inspections of the following Zhejiang Huahai Pharmaceutical Co. Ltd. Facilities:
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)
2. All communications between You and employees at the FDA, including but not limited to, Milind Ganjawala, regarding inspections related to the following Zhejiang Huahai Pharmaceutical Co. Ltd. facilities:
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)
3. All documents related to any FDA inspection conducted by You, or witnessed by you, of any of the following facilities, including, but not limited to, notes, photographs, documents collected, video recordings, audio recordings, emails, travel receipts, itineraries, visa requests, and the like
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)

**January 29-31 Audit**

1. All documents related to the January 29-31 inspection conducted by You of FEI:3003885745, including, but not limited to, notes, photographs, documents collected, video recordings, and audio recordings.
2. Documents sufficient to show all persons you spoke to during the January 29-31 audit.
3. All documents in your possession collected during the January 29-31 audit including, but not limited to all documents cited in Section 4.1.3 of your April 29, 2019, final report.
4. All Communications between You and Ziqiang Gu regarding the January 29-31 Audit.
5. All documents regarding your travel to China for the January 29-31, 2019 Audit, including, but not limited to, receipts, flight and travel itineraries, visa requests, and hotel bills.

**March 8-9 Audit**

1. All Communications between You and Ziqiang Gu regarding the March 8-9, 2019 Audit.


**Evaluation of Quality Management System and CAPAs**

1. All communications between You, Zi-Qiang Gu, employees at Zhejiang Huahai Pharmaceutical Co. Ltd., and/or employees at Duane Morris regarding the April 29, 2019 Audit Report prepared by You and Zi-Qiang for Zhejiang Huahai Pharmaceutical Co. Ltd..

2. All documents reviewed and/or collected by you in preparation for your creation of the April 29, 2019 Audit Report.

3. All draft versions of the April 29, 2091, Audit Report in Your possession.

# EXHIBIT A-20

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Envoy Health Care LLC, 800 Concourse Parkway South, Suite 200, Maitland, FL 32751.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date: __10/15/2020__

CLERK OF COURT

OR

_____          /s/          Marlene          J. Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:

Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

   (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

      (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

      (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

         (i) is a party or a party's officer; or

         (ii) is commanded to attend a trial and would not incur substantial expense.

   (2) *For Other Discovery.* A subpoena may command:

      (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

      (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

   (2) *Command to Produce Materials or Permit Inspection.*

      (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

      (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

         (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-21

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Eurofins Lancaster Laboratories, Inc., 2425 New Holland Pike, Lancaster, PA 17601

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020_____

CLERK OF COURT

OR

_____                _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-22

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |
|---|---|

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**   Eversana Life Science Services, LLC Registered Agent, 17877 Chesterfield Airport Rd, Chesterfield, Missouri 63005

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity, including Dohmen Life Science Services, LLC, of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which

information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.
5. All recall status reports, **documents relied upon in the preparation of the recall status reports and all communications concerning the recall status reports in regard to all Sartan products.**

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.
6. Any ARB products or API remaining in your possession.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.

**4.** All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1.  All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2.  Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3.  Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4.  Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5.  Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6.  Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1.  All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2.  All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3.  All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4.  All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-23

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Galbraith Laboratories, Inc., 2323 Sycamore Drive, Knoxville, TN 37921-1700

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _10/15/2020_

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

   (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

     (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

     (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

       (i) is a party or a party's officer; or

       (ii) is commanded to attend a trial and would not incur substantial expense.

   (2) *For Other Discovery.* A subpoena may command:

     (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

     (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

   (2) *Command to Produce Materials or Permit Inspection.*

     (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

     (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

       (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-24

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Gibralter Laboratories, Inc., 122 Fairfield Road, Fairfield, NJ 07004

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  _10/15/2020_

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition*. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery*. A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions*. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection*.

(A) *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) Contempt. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-25

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Gibralter Laboratories, Inc., 122 Fairfield Rd., Fairfield, NJ 07004.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          __/s/_____Marlene____J.
Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.     Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3.  Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1.  All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2.  A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a.  Date
    b.  Recipients and/or Senders of the Communication
    c.  General Subject Matter
    d.  Basis of Privilege

## ANDA and DMF File Documents

1.  All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1.  All communications between you and any Defendant relating to nitrosamines.
2.  All communications between you and any Defendant concerning any toxicology assessment.
3.  All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4.  All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5.  All reports and/or draft reports provided to you regarding the nitrosamine investigation
6.  All draft reports edited by you for comment and provided to any Defendant.
7.  All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8.  All testing protocols used by you to test for the presence of nitrosamines in any drug.
9.  All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1.  All documents relating to the decision on whether to recall or not to recall any ARBs API.
2.  All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3.  All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4.  All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1.  All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2.  All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3.  All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4.  All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5.  All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1.  All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2.  All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3.  All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4.  All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5.  All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6.  Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1.  Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2.  All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3.  Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4.  All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-26

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**     Gintegra Group International LLC, USA, c/o Registered Agent: Plaza del Museo, Apto 1493
Ciudadela SJ, Puerto Rico 00919

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the
following documents, electronically stored information, or objects, and to permit inspection, copying,
testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises,
land or other property possessed or controlled by you at the time, date and location set forth below, so
that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any
designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of
compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and
(g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who
have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402,
mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-27

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    ICON Laboratory Services, Inc., 8282 Halsey Road, Whitesboro, NY 13492

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _10/15/2020_____

CLERK OF COURT

OR

_____           _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;       scheriff@goldenberglaw.com       (legal       assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

**Corporate Organization**

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

**Contracts**

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.

2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-28

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Integrated Analytical Laboratories, LLC, 273 Franklin Road, Randolph, NJ 07869.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _10/15/2020_

CLERK OF COURT

OR

_____          _/s/_____Marlene_____J. Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition*. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery*. A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions*. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection*.

        (A) *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.      Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-29

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**  International Trading Pharmaceuticals Laboratories, Inc., 470 Chamberlain Avenue, Suite 12, Paterson, NJ, 07522.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

<table>
<tr><td>CLERK OF COURT</td><td></td></tr>
<tr><td></td><td>OR</td></tr>
<tr><td>_____<br>Goldenberg</td><td>_/s/_____Marlene____J.</td></tr>
<tr><td>*Signature of Clerk or Deputy Clerk*</td><td>*Attorney's signature*</td></tr>
</table>

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

 (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

   (i) is a party or a party's officer; or

   (ii) is commanded to attend a trial and would not incur substantial expense.

 (2) *For Other Discovery.* A subpoena may command:

  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

 (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 (2) *Command to Produce Materials or Permit Inspection.*

  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

   (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-30

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
### OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Jost Chemical Co., 8150 Lackland Rd., St. Louis, MO 63114.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: ___10/15/2020_____

                              CLERK OF COURT

                                        OR

_____          __/s/_____Marlene_____J.
Goldenberg_____

          *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-31

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Jubilant Generics, 790 Township Line Road, Suite 175, Yardley, PA 19067.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          __/s/_____Marlene____J. Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public
relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any
other third parties (such as additional cGMP consultants, outside laboratories, regulatory
consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's
investigation into the nitrosamine contamination, including any inspection of a facility where any
ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's
investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of
any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA
employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation,
warning letter, and/or inspections of the any facility used to produce any ARB API, any finished
dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to
nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to
nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB
drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or
API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-32

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**   Lantech Pharmaceutical Ltd., c/o Mr. V Prakash Reddy, Managing Director, Lantech Pharmaceuticals Limited, H. No. 7-2-1735 & 1813/5/A1, Flat 101SBH Building, CZECH Colony, Street No. 2Sanath Nagar, Hyderabad 500018 Telangana India

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____        _____
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

   (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

      (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

      (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

         (i) is a party or a party's officer; or

         (ii) is commanded to attend a trial and would not incur substantial expense.

   (2) *For Other Discovery.* A subpoena may command:

      (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

      (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

   (2) *Command to Produce Materials or Permit Inspection.*

      (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

      (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

         (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-33

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Lantech Pharmaceuticals, H.NO. 7-2-1735&1813/A1, 1ST FLOOR, STREET NO. 2, CZECH COLONY, SBH BUILDING, SANATH NAGAR HYDERABAD, INDIA

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____              _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;    scheriff@goldenberglaw.com    (legal    assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-34

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Linhai Huanan Chemical Co., Ltd. Registered Agent, c/o Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

OR

_____                    /s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

### A.    Definitions

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term
"finished dose manufacturer" also includes entities who hold ANDAs.

14.  "Defendants" means all Defendants who have been named within MDL 2875,
including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero
Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical
Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals
Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero
USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma
Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.;
Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The
Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.;
Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.;
Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC;
Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen
Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies,
LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.;
The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance;
and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1.  All documents and/or communications sufficient to identify your employees, agents, or third
parties responsible for or involved in the (1) drafting of recall notifications for Sartan products,
(2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications
should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return
authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8)
Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or
destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall
information/data, (13) storage of recalled Sartan products.

### Contracts

1.  Documents sufficient to show when You were first retained by any Defendant with which you
had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA
advocacy or communication, public relations relating to the ARB drug recalls, or recall
management.
2.  Any document evidencing the scope or nature or work you performed for any Defendant that
related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.
11. All documents prepared by you or on your behalf related to evaluations or assessments for nitrosamine formation in any process used by you in the manufacture of starting materials supplied to any Defendant concerning an ARB API or Finished Dose drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.

2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.

3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. **All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.**

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-35

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Malvern Instruments Registered Agent, c/o Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date: _10/15/2020_

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.


(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.      Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**5.** All documents related to any testing or analysis conducted by you of any ARB API or ARB Finished Dose drug for particle size or particle size distribution.

## Solvent Manufacturing, Recovery, and Recycling

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

## Toxicology Assessments

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-36

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Medical Affairs Company, c/o Rich Murphy, PharmD, Director, Medical Communications, The Medical Affairs Company, 125 TownPark Drive, Suite 450, Kennesaw, GA 30144

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

                                                          OR

_____          /s/ Marlene J. Goldenberg
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-37

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Meridan Consulting, 300 Carnegie Center Drive, #150, Princeton, NJ 08540

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _ 10/15/2020 _

| CLERK OF COURT | |
|---|---|
| | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _/s/ Marlene J. Goldenberg_<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;    scheriff@goldenberglaw.com    (legal    assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-38

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:** MSN Laboratories Pvt. Ltd., MSN House, Plot No C-24 Industrial Estate, Sanathnagar Hyderabad, 500018 India.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1.  All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2.  Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3.  Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4.  Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5.  Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6.  Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1.  All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2.  All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3.  All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4.  All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-39

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Novartis Pharmaceuticals, Corporation, One Health Plaza, Building 100, East Hanover, NJ 07936

   *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

   Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

                                                                          OR

_____                    _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;         scheriff@goldenberglaw.com         (legal         assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.     Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-40

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Novartis Registered Agent, 1 Health Plaza East Hanover, NJ 07936-1080

   *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
| Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

   Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|        |                |

   The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  _10/15/2020_

                        CLERK OF COURT

                                          OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;       scheriff@goldenberglaw.com       (legal       assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

### A.    Definitions

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.

2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-41

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:** Perritt Laboratories, Inc., 145 South Main Street, Highstown, NJ 05820

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10.  Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11.  "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12.  "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13.  "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-42

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
### OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Prevalere Life Sciences Inc., 8282 Halsey Road, Whitesboro, NY 13492.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          _/s/_____Marlene____J. Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

### A.    Definitions

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-43

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:** Prinbury Biopharm Co., Ltd Registered Agent c/o Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date:  10/15/2020

CLERK OF COURT

OR

_____          /s/ Marlene J. Goldenberg
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-44

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    ProPharma Group, Inc. Registered Agent, c/o Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

   *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

   Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

                   CLERK OF COURT

                              OR

   _____          /s/ Marlene J. Goldenberg
   *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.


(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-45

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

<table>
<tr>
<td>
IN RE: VALSARTAN, LOSARTAN, AND<br>IBESARTAN PRODUCTS LIABILITY<br>LITIGATION
</td>
<td>
No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider
</td>
</tr>
</table>

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Qualanex, 1401 Harris Road, Libertyville, IL 60048

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _10/15/2020_____

CLERK OF COURT

OR

_____                  _/s/ Marlene J. Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of

business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.

2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by Stericycle, Inc. related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.

2.  Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.

3.  Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.

4.  Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.

5.  Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.

6.  Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1.  All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.

2.  All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API

3.  All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.

4.  All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-46

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Ratiopharm, Graf-Arco-Strasse 3 Ulm, D-89079 Germany.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____            _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com; scheriff@goldenberglaw.com (legal assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-47

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Return Logistics International Corporation Registered Agent, 22 Artley Rd, Savannah, Georgia 31408

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

                                                            OR

_____          /s/ Marlene J. Goldenberg
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;    scheriff@goldenberglaw.com    (legal    assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

   (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

      (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

      (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

         (i) is a party or a party's officer; or

         (ii) is commanded to attend a trial and would not incur substantial expense.

   (2) *For Other Discovery.* A subpoena may command:

      (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

      (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

   (2) *Command to Produce Materials or Permit Inspection.*

      (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

      (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

         (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.


(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

### A.    Definitions

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

    drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-48

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Rising Pharmaceuticals, 2 Tower Center Blvd., Suite 1401A, East Brunswick, NJ 08816

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

                        CLERK OF COURT

                                                OR

_____          __/s/ Marlene J. Goldenberg__
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

　(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

　　(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

　　(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

　　　(i) is a party or a party's officer; or

　　　(ii) is commanded to attend a trial and would not incur substantial expense.

　(2) *For Other Discovery.* A subpoena may command:

　　(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

　　(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

　(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

　(2) *Command to Produce Materials or Permit Inspection.*

　　(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

　　(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

　　　(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-49

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:** Peter Saxon,          Saxon International Associates Registered Agent, 10 De Bary Pl, Summit, NJ 07901

  *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

  Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

  The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: ___10/15/2020___

CLERK OF COURT

OR

_____          ___/s/ Marlene J. Goldenberg___
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.      Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

**General**

1. A copy of your most current CV.

**Corporate Organization**

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

**Contracts**

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA

advocacy or communication, public relations relating to the ARB drug recalls, or recall management.

2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

4. Contracts with ZHP regarding services being provided for cGMP services.

5. Any contracts executed by you on behalf of ZHP for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

3. All communications between you and employees at ZHP regarding the filing of Drug Master Files for API generally, and regarding DMF 020939 more specifically.

4. All communications between you and persons at the FDA regarding the filing of Drug Master Files for API on behalf of ZHP, including but not limited to the filing of DMFs for the manufacture of Valsartan API

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.

2. All communications between you and any Defendant concerning any toxicology assessment.

3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.

4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.

5. All reports and/or draft reports provided to you regarding the nitrosamine investigation

6. All draft reports edited by you for comment and provided to any Defendant.

7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.
11. All documents within your possession regarding the contamination of Valsartan, Losartan, and Irbesartan API with Nitrosamines.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make

ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.

6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Documents Regarding FDA Regulatory Compliance and cGMP's**

**1.** All documents, including draft documents, notes, presentations, reports, memorandums created by you and provided to ZHP regarding issues related to the FDA and compliance with cGMPs.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
**4.** All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

## Inspection Documents

1. All communications between You and ZHP regarding the FDA inspections of the following ZHP Facilities
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)
2. All communications between You and employees at the FDA, including but not limited to, Milind Ganjawala, regarding inspections related to the following ZHP facilities
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)
3. All documents related to any FDA inspection conducted by You, or witnessed by you, of any of the following facilities, including, but not limited to, notes, photographs, documents collected, video recordings, audio recordings, emails, travel receipts, itineraries, visa requests, and the like
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)

# EXHIBIT A-50

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    SDS Environmental Services, 115 Route 46, Building E-37, Mountain Lakes, NJ 07046

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date: _ 10/15/2020 _____

CLERK OF COURT

OR

_____        _ /s/ Marlene J. Goldenberg _
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.   Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-51

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    SGS US Testing Co. Inc., 201 Route 17, North Rutherford, NJ 07070.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _10/15/2020_____

CLERK OF COURT

OR

_____                      _/s/_____Marlene_____J. Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;      scheriff@goldenberglaw.com      (legal      assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

## A.    Definitions

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-52

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Shiva Pharmacem Pvt, Ltd. c/o Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

  *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

  Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

  The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

                                                                        OR

_____                    _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;     scheriff@goldenberglaw.com     (legal     assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

**A.    Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.   Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.

2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-53

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |
|---|---|

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**   Snehaa Solvents, 404/405 Rajshree plaza opp. Shreyas Cinema L.B.S., LBS Marg, Ghatkopar West, Mumbai, Maharashtra 400086, India

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.     Definitions**

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-54

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**   Solvias, Inc. Registered Agent, 2125 Center Avenue, Suite 507, Fort Lee, NK 07024

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020_____

CLERK OF COURT

OR

_____        _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.** **Definitions**

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1.  All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2.  Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3.  Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4.  Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5.  Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6.  Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1.  All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2.  All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3.  All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4.  All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-55

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**     Southern Testing & Research Laboratories, 3809 Airport Drive, Wilson, NC 27896.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _10/15/2020_

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _/s/_          Marlene          J. Goldenberg_____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;     scheriff@goldenberglaw.com     (legal     assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

A.    **Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.

2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-56

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

<table>
<tr>
<td>IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION</td>
<td>No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider</td>
</tr>
</table>

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**  Spectral Data Services Inc., 818 Pioneer Street, Champaign, IL 61820.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.

Date: __10/15/2020__

CLERK OF COURT

OR

_____           _/s/_____Marlene_____J._Goldenberg_____

*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:

Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;       scheriff@goldenberglaw.com       (legal       assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

## A.    Definitions

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term
"finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875,
including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero
Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical
Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals
Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero
USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma
Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.;
Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The
Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.;
Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.;
Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC;
Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen
Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies,
LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.;
The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance;
and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third
parties responsible for or involved in the (1) drafting of recall notifications for Sartan products,
(2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications
should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return
authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8)
Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or
destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall
information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you
had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA
advocacy or communication, public relations relating to the ARB drug recalls, or recall
management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that
related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1.  All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2.  Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3.  Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4.  Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5.  Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6.  Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1.  All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2.  All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3.  All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4.  All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-57

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**  Stericycle Expert Solutions Registered Agent, 6026 Lakeside Blvd, Indianapolis, IN 46278

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _10/15/2020_

CLERK OF COURT

OR

_____              _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.     Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.   "FDA" means the United States Food & Drug Administration.

7.   "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.   "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.   "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10.  Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11.  "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12.  "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13.  "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by Stericycle, Inc. related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-58

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    Stericylce, Global Corporate Headquarters, 2355 Waukegan Road, Bannockburn, IL 60015

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: | Date and Time: |
|---|---|
| GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | November 15, 2020 |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020__

CLERK OF COURT

OR

_____          __/s/ Marlene J. Goldenberg__
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

**Corporate Organization**

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

**Contracts**

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by Stericycle, Inc. related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-59

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Tiefenbacher API + Ingredients Registered Agent, c/o Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-60

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |
| --- | --- |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**   Sipra Labs Limited, 7-2-1813/5/A, Adj. to Post Office, Industrial Estate, Sanathnagar Hyderabad - 500018, India

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
| --- | --- |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |
|  |  |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

# RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.


(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1.    "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.    "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.    "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.    "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.    "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of

business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.
3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by Stericycle, Inc. related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.

2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.

3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.

4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.

5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.

6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.

2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API

3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.

4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-61

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK-JS
Hon. Robert Kugler Hon.
Joel Schneider

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
## OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**    ToxRox Consulting, LLC, c/o David Jacobson-Kram, PhD DABT, 5910 Chesterbrook Road,
McLean, VA 22101

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the
following documents, electronically stored information, or objects, and to permit inspection, copying,
testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
| --- | --- |

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises,
land or other property possessed or controlled by you at the time, date and location set forth below, so
that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any
designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of
compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and
(g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

CLERK OF COURT

OR

_____          /s/ Marlene J. Goldenberg
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who
have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402,
mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-62

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**   Vega Lifesciences PVT. LTD., 390/A&B SRILAKSHMI SAI PREST ROAD. NO. 33, VIVEKANANDA NAGAR COLONY, KUKATPALLY, HYDERABAD, INDIA

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;      scheriff@goldenberglaw.com      (legal      assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.     Definitions**

1.  "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.  "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.  "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.  "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.  "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.

2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-63

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Vigilate Biopharma Pvt Ltd., Plot No 52, 57, 1st Floor, Opp: Prerana Hospital, Balaji Nagar, Kakatpally, Hyderabad 500072, India

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue,<br>Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant);
valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

   (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

      (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

      (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

         (i) is a party or a party's officer; or

         (ii) is commanded to attend a trial and would not incur substantial expense.

   (2) *For Other Discovery.* A subpoena may command:

      (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

      (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

   (2) *Command to Produce Materials or Permit Inspection.*

      (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

      (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

         (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

<u>**SCHEDULE A**</u>

**A.    Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.  Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing and shall also include

electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug. Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug. Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation.
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.
4. All return authorization documents and/or communications received by You related to any and all Sartan products.

**Quarantine and/or Destruction**

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

**Communications with the FDA**

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

**Testing Data**

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-64

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    VXL Life Sciences Registered Agent, c/o Seth Goldberg, 30 South 17th Street, Philadelphia, PA 19103-4196

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date:  10/15/2020

CLERK OF COURT

OR

_____          /s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# SCHEDULE A

## A. Definitions

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-65

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:**     WRB Corp., 475 Steamboat Road, Greenwich, CT 06830.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date: __10/15/2020_____

CLERK OF COURT

OR

_____          __/s/_____Marlene____J.

Goldenberg_____

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;          scheriff@goldenberglaw.com          (legal          assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

            (i) is a party or a party's officer; or

            (ii) is commanded to attend a trial and would not incur substantial expense.

    (2) *For Other Discovery.* A subpoena may command:

        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

        (B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

    (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

    (2) *Command to Produce Materials or Permit Inspection.*

        (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

        (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

            (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## <u>SCHEDULE A</u>

**A.    Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

## Communications with Relevant Parties

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.

2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
   a. Date
   b. Recipients and/or Senders of the Communication
   c. General Subject Matter
   d. Basis of Privilege

## ANDA and DMF File Documents

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

## Nitrosamine Contamination

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

## Recall-Related Documents

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-66

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS<br>Hon. Robert Kugler Hon.<br>Joel Schneider |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION

**To:** Zhejiang Menovo Pharmaceutical Co., Ltd., 8 Jingshisan Rd, Shangyu District, Shaoxing, Zhejiang, China.

*Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:<br>GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time:<br><br>November 15, 2020 |
|---|---|

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so. Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;      scheriff@goldenberglaw.com      (legal      assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

**SCHEDULE A**

**A.    Definitions**

1.   "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2.   "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means.   Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3.   "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4.   "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5.   "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, thumb drives, palms, blackberries, cell phones, laptops and firewalls. Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database.

6.  "FDA" means the United States Food & Drug Administration.

7.  "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan, and (3) Irbesartan.  Valsartan means any drug with valsartan as an active ingredient and also includes the API for valsartan on its own, as well as all finished drug formulations of valsartan, including any valsartan containing drug.  Losartan means any drug with losartan as an active ingredient and also includes the API for losartan on its own, as well as all finished drug formulations of losartan, including any losartan containing drug.  Irbesartan means any drug with irbesartan as an active ingredient and also includes the API for irbesartan on its own, as well as all finished drug formulations of irbesartan, including any Irbesartan containing drug. These three ARBs shall be referred to collectively herein as the "Sartan" products.

8.  "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products that have been recalled by the FDA.

9.  "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of substances intended to be used in the manufacture of a drug product and that, when used in the production of a drug, becomes an active ingredient in the drug product. Such substances are intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the structure and function of the body.

10. Relevant Time Period:  Unless otherwise specified, the relevant time period applicable to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

### Corporate Organization

1. All documents and/or communications sufficient to identify your employees, agents, or third parties responsible for or involved in the (1) drafting of recall notifications for Sartan products, (2) the dissemination of Sartan recall notifications, (3) compilation of whom recall notifications should be disseminated to, (4) online tracking system for Sartan recalls, (5) receipt of return authorizations, (6) process of recalled and/or withdrawn Sartan products, (7) Sartan audits, (8) Sartan validation, (9) regulatory compliance, (10) sortation of Sartan products, (11) disposal and/or destruction of recalled and/or withdrawn Sartan products, (12) tracking of Sartan recall information/data, (13) storage of recalled Sartan products.

### Contracts

1. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, public relations relating to the ARB drug recalls, or recall management.
2. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication, ARB

drug recalls, recall processing, product preservation of destruction, product testing, public relations or crisis management relating to the ARB drug recalls, or recall management.

3. Any contracts executed by you on behalf of any Defendant for services to be provided by any other third parties (such as additional cGMP consultants, outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.

**Communications with Relevant Parties**

1. All non-privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including any inspection of a facility where any ARB drug is manufactured.
2. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:
    a. Date
    b. Recipients and/or Senders of the Communication
    c. General Subject Matter
    d. Basis of Privilege

**ANDA and DMF File Documents**

1. All communications between You and any Defendant regarding the filing or supplementation of any Drug Master File relating to any ARB drug.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.

**Recall-Related Documents**

1. All documents relating to the decision on whether to recall or not to recall any ARBs API.
2. All documents and communications relating to the destruction and/or disposal of any ARB drugs or API.
3. All draft and final communications relating to recall letters or notices relating to ARB drugs or API sent to patients, customers, physicians, pharmacies, third-party payors, and distributors.

4. All return authorization documents and/or communications received by You related to any and all Sartan products.

## Quarantine and/or Destruction

1. All documents and/or communications concerning the storage of recalled and/or withdrawn ARB products or API.
2. All documents and/or communications concerning the preservation of contaminated, recalled, and/or withdrawn ARB products or API.
3. All documents and/or communications concerning the method of disposing or destroying ARB products or API.
4. All documents and/or communications pertaining to the testing of any recalled and/or withdrawn ARB products or API and results of such testing.
5. All destruction certifications created related to any ARB products or API.

## Communications with the FDA

1. All agendas and/or memoranda related to meetings (in person, telephonic, or otherwise) and/or teleconferences had with you, and officials with the FDA regarding any ARB API or finished dose drug, nitrosamine contamination, and/or recall.
2. All notes taken during any meeting and/or teleconference had with the FDA relating to any ARB ANDA or DMF held by any Defendant and/or the nitrosamine contamination more generally.
3. All communications made between you and the FDA relating to any ANDA or DMF for any ARB held by any Defendant and/or the nitrosamine contamination more generally.
4. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.
5. All communications between You and the FDA regarding inspections of any Relevant Party's manufacturing facilities where ARB API, Finished Dose ARB drugs, or solvents used to make ARB drugs or API is manufactured, and the FDA's Warning Letter, including all documents requesting a Type B Meeting.
6. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination, including calendar entries, meeting requests, and/or notes.

## Testing Data

1. Copies of all testing provided to you by any Defendant related to the testing of product for nitrosamine contamination.
2. All testing conducted by you, including AMES testing, DEREK testing and the like related to the nitrosamine contamination of any Defendant's drugs.
3. Documents sufficient to show the identification of any samples tested by you, including NDC code, lot number and/or batch number.
4. All testing of any ARB Finished Dose drug or ARB API for nitrosamine impurities in your possession, including testing conducted by You, and Relevant Party, or any Third Party Laboratory retained by you.

**Solvent Manufacturing, Recovery, and Recycling**

1. All SOPs relating to the manufacturing, recovery, or recycling of any solvent which was manufactured for or sold to any Defendant for the use in manufacturing API or finished dose products for any ARB.
2. Documents identifying the method and manner of solvent manufacturing, recovery, or recycling performed on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
3. Documents showing any testing performed by You on solvents manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
4. Documents identifying the type, amount, and date of any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB.
5. Documents identifying the date You delivered any solvents You manufactured, recovered, or recycled on behalf of any Defendant for the use in manufacturing API or finished dose products for any ARB, and the date you delivered same to Defendant.
6. Documents identifying the method, manner, frequency, date, and individuals involved in the cleaning of equipment used to manufacture, recover, or recycle solvents for Defendants' use in the manufacturing of API or finished dose products for any ARB.

**Toxicology Assessments**

1. All communications between you and any Defendant regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API or finished dose ARB drug.
2. All toxicology assessments, including all draft reports, final reports, redlined reports regarding toxicology assessments conducted with respect to nitrosamine impurities and any ARB drug or API, or any solvent used in the manufacture of such API
3. All documents provided to you by any Defendant for use in any toxicology assessment(s) related to the nitrosamine impurity in and Defendant's drugs.
4. All other documents, including academic articles, compendia, news reporting, inspection reports, reviewed by you in the preparation of any toxicology assessments conducted with respect to nitrosamine impurities and any Finished Dose ARB drug, ARB API, or any solvent used in the manufacture of such API or finished dose ARB drug.

# EXHIBIT A-67

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK-JS Hon. Robert Kugler Hon. Joel Schneider |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**
**OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION**

**To:**    Zi Qiang Gu, c/o Seth Goldberg, esq., Duane Morris 30 South 17th Street, Philadelphia, PA 19103-4196

    *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Goldenberg Law, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55401 | Date and Time: November 15, 2020 |
|---|---|

    Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land or other property possessed or controlled by you at the time, date and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property of any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to you duty to respond to this subpoena and the potential consequences of not doing so.
Date:  10/15/2020

                    CLERK OF COURT

                                    OR

_____          _/s/ Marlene J. Goldenberg_
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing the Plaintiffs, who have issued the requests or subpoena are:
Marlene J. Goldenberg, GoldenbergLaw, PLLC, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402, mjgoldenberg@goldenberglaw.com;        scheriff@goldenberglaw.com        (legal        assistant); valsartan@csdisco.com (ESI Vendor).

## RELEVANT PORTIONS OF FED. R. CIV. P. 45

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition*. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery*. A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions*. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection*.

(A) *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

## SCHEDULE A

**A.    Definitions**

1. "Action" means the above-captioned lawsuit: *In re: Valsartan, Losartan and Irbesartan Products Liability Litigation*, MDL No. 2875 (District of New Jersey).

2. "Communication" means the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means. Communications include, but are not limited to all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, chats or instant messages, agendas and other records of communications.

3. "Concern," "Concerning," or "Relating to" means referring to, relating to, describing, evidencing, constituting, pertaining to, containing, describing, embodying, mentioning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, or relating to.

4. "You" or "Your" means the answering party, its employees, agents, and officers and any affiliated entity of the answering party to whom this Subpoena is directed.

5. "Documents" includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing and shall also include
electronic communications, whether maintained presently in the normal course of
business or available in back-up or legacy data formats, wherever found or maintained,
including all servers, hard drives, thumb drives, palms, blackberries, cell phones,
laptops and firewalls. Such reference to documents includes originals and copies,
microfilms and transcripts made, recorded, produced or reproduced by any and every
means. "Documents" also includes the content of any applicable computer database.

6. "FDA" means the United States Food & Drug Administration.

7. "Sartan" or "ARB" includes the three Angiotensin II Receptor Blockers (ARBs) which
have been included within MDL 2875, specifically the drugs: (1) valsartan, (2) losartan,
and (3) Irbesartan. Valsartan means any drug with valsartan as an active ingredient
and also includes the API for valsartan on its own, as well as all finished drug
formulations of valsartan, including any valsartan containing drug. Losartan means
any drug with losartan as an active ingredient and also includes the API for losartan
on its own, as well as all finished drug formulations of losartan, including any losartan
containing drug. Irbesartan means any drug with irbesartan as an active ingredient and
also includes the API for irbesartan on its own, as well as all finished drug formulations
of irbesartan, including any Irbesartan containing drug. These three ARBs shall be
referred to collectively herein as the "Sartan" products.

8. "Recalled Products" means those Valsartan, Losartan, and Irbesartan drug products
that have been recalled by the FDA.

9. "Active Pharmaceutical Ingredient" ("API") means any substance or mixture of
substances intended to be used in the manufacture of a drug product and that, when
used in the production of a drug, becomes an active ingredient in the drug product.
Such substances are intended to furnish pharmacological activity or other direct effect
in the diagnosis, cure, mitigation, treatment or prevention of disease or to affect the
structure and function of the body.

10. Relevant Time Period: Unless otherwise specified, the relevant time period applicable
to all requests is September 1, 2012 to the present.

11. "Regulatory and Regulatory Authority" refers to United States and foreign regulatory
agencies.

12. "API Manufacturer" is defined as any entity that manufactures active pharmaceutical
ingredients (APIs).

13. "Finished Dose Manufacturer" includes any entity that manufactures valsartan in a
finished dosage form that is engaged in manufacturing, preparing, propagating,

compounding, processing, packaging, repackaging, or labeling of valsartan.  The term "finished dose manufacturer" also includes entities who hold ANDAs.

14. "Defendants" means all Defendants who have been named within MDL 2875, including but not limited to: Aurobindo Pharma, Ltd.; Hetero Drugs, Ltd.; Hetero Labs, Ltd.; Mylan Laboratories, Ltd.; Mylan N.V.; Zhejiang Huahai Pharmaceutical Co. Ltd.; Arrow Pharma (Malta) Ltd.; Aurolife Pharma, LLC; Mylan Pharmaceuticals Inc.; Teva Pharmaceutical Industries, Ltd.; Torrent Pharmaceuticals, Ltd.; Hetero USA, Inc.; Prinston Pharmaceutical Inc.; Aceteris, LLC; Actavis, LLC; Actavis Pharma Inc.; A-S Medication Solutions, LLC; Aurobindo Pharma USA, Inc.; AvKARE, Inc.; Bryant Ranch Prepack, Inc.; Camber Pharmaceuticals, Inc.; Cardinal Heatlh; The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals; HJ Harkins Co, Inc.; Huahai U.S. Inc.; Northwind Pharmaceuticals; NuCare Pharmaceuticals, Inc.; Preferred Pharmaceuticals, Inc.; Remedy Repack, Inc.; Solco Healthcare U.S., LLC; Teva Pharmaceuticals USA, Inc.; Torrent Pharma, Inc.; Amerisource Bergen Corporation; Cardinal Health, Inc.; McKesson Corporation; Albertson's Companies, LLC; Cigna Corporation; CVS Health; Express Scripts, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; Optum Rx; Optum, Inc.; Rite Aid Corp.; Walgreens Boots Alliance; and Wal-Mart, Inc.

## DOCUMENT TO BE PRODUCED

**Agreements and CV**

1. A copy of your most recent Curriculum Vitae.
2. Produce all formal and informal agreements, contracts, or licenses that You were/are a party to, with regard to (1) testing, (2) purity and contamination, (3) quality assurance, (4) risk assessment, (5) compliance with current Good Manufacturing Practices, (6) safety, (7) communications with regulatory agencies, (8) formulation, (9) production, (10) distribution, (11) packaging, (12) evaluation, (13) facility audits, with regard Defendant ZHP,  orany Sartan and/or any Sartan ingredient.
3. Documents sufficient to show when You were first retained by any Defendant with which you had a contractual relationship that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication.
4. Any document evidencing the scope or nature or work you performed for any Defendant that related in any way to ARB drugs, cGMP compliance, FDA advocacy or communication.
5. Any contracts within your possession for services to be provided to Defendant ZHP by any other third parties (such as additional cGMP consultants (including, but not limited to Douglas Campbell), outside laboratories, regulatory consultants or the like) related to the manufacture of any ARB drug.
6.
7.

**Communications with Other Third Parties**

1. All communications between you and Peter Saxon regarding ZHP or the nitrosamine contamination.
2. All documents and/or communications exchanged between You and Douglas Campbell, or any person or entity working for him, regarding ZHP or the Nitrosamine contamination.
3. All documents and/or communications exchanged between You and Frederick Ball, or any person or entity working for him, regarding ZHP or the Nitrosamine contamination.
4. All documents and/or communications exchanged between You and Charles Wang, or any person or entity working for him, regarding ZHP or the Nitrosamine contamination.
5. All documents and/or communications exchanged between You and Derek Zhang, or any person or entity working for him, regarding ZHP or the Nitrosamine contamination.
6. A All documents and/or communications exchanged between You and Dylan Yao, or any person or entity working for him, regarding ZHP or the Nitrosamine contamination.

**Nitrosamine Contamination**

1. All communications between you and any Defendant relating to nitrosamines.
2. All communications between you and any Defendant concerning any toxicology assessment.
3. All communications between you and any other person, including former or current FDA employees regarding any Defendant, or the nitrosamine contamination.
4. All documents received by you from any Defendant regarding the nitrosamine investigation, warning letter, and/or inspections of the any facility used to produce any ARB API, any finished dose ARB drug, or any solvent used in manufacturing of any ARB drug.
5. All reports and/or draft reports provided to you regarding the nitrosamine investigation
6. All draft reports edited by you for comment and provided to any Defendant.
7. All documents relating to any CAPA, risk assessment, or toxicology assessment relating to nitrosamine contamination, any ARB drug, or cGMP compliance.
8. All testing protocols used by you to test for the presence of nitrosamines in any drug.
9. All drafts, notes, and final reports relating to any audit you conducted of a Defendant relating to nitrosamines in any ARB API or Finished Dose drug.
10. All documents or communications relating to nitrosamine testing of any drug.
11. All communications between you and ZHP regarding the FDA's investigation into the Nitrosamine Contamination.
12. All documents (either in final or draft form) in your possession regarding the FDA's investigation into the Nitrosamine contamination.
13. All notes taken during meetings and/or phone calls with the FDA regarding the nitrosamine contamination.
14. Documents sufficient to show all meetings, and/or verbal communications had between You and the FDA regarding the Nitrosamine contamination and/or ZHP's manufacture of any Sartan.
15. Copies of all testing provided to you by any Defendant (or third party retained by any Defendant) related to the testing of product for nitrosamine contamination.

16. A log of all privileged communications between you and any Defendant regarding the FDA's investigation into the nitrosamine contamination, including the following fields of information:

a. Date
b. Recipients and/or Senders of the Communication
c. General Subject Matter
d. Basis of Privilege

## Communications with the FDA

1. All documents related to any communications made between you, Defendant ZHP, and/or the FDA relating to any ANDA or DMF for any ARB held by Defendant ZHP, the facilities used to manufacture such products, and/or the nitrosamine contamination more generally, including emails, notes, memoranda and agendas since 2012.
2. All communications sent to or from You and anyone employed by the FDA related to the toxicological assessment of NDMA and/or the nitrosamine impurities.

1. by You, and Relevant Party, or any Third Party Laboratory retained by you.

## Inspection Documents

1. All communications between You and ZHP regarding the FDA inspections of the following ZHP Facilities, including inspections conducted as part of the review and approval of ANDA Application Nos. 204821 (Valsartan) and 206083 (Valsartan HCTZ) :
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)
2. All communications between You and employees at the FDA, including but not limited to, Milind Ganjawala, regarding inspections related to the following ZHP facilities:
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)
3. All documents related to any FDA inspection conducted by You, or witnessed by you, of any of the following facilities, including, but not limited to, notes, photographs, documents collected, video recordings, audio recordings, emails, travel receipts, itineraries, visa requests, and the like
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)
4. All documents (including all notes taken, memoranda, photographs) related to any audits or investigations conducted by you, or discussed with you, into manufacturing deviations at the following facilities:
   a. Xunqiao (FEI: 3003999190)
   b. Chuannan (FEI:  3003885745)

**January 29-31 Audit of the ZHP facility Chuannan (FEI: 3003885745).**

1. All documents related to the January 29-31 inspection conducted by You of FEI:3003885745, including, but not limited to, notes, photographs, documents collected, video recordings, and audio recordings.
2. All documents sufficient to show all persons You interacted with or spoke with during the January 29-31, 2019 Audit of the ZHP facility Chuannan (FEI:3003885745).
3. All documents in your possession collected during the January 29-31, 2019 Audit of the ZHP facility Chuannan (FEI: 3003885745) including, but not limited to all documents cited inYour April 29, 2019 Final Report at Section 4.2.
4. All Communications between You and Douglas Campbell regarding the January 29-31, 2019 Audit of the ZHP facility Chuanna (FEI: 3003885741).
5. All documents related to you travel to China for the January 29-31, 2019 Audit of the ZHP facility Chuannan (FEI:3003885745), including, but not limited to receipts, flight and travel itineraries, visa requests, and hotel invoices.

**March 8-9 Audit of the ZHP facility Chuannan (FEI: 3003885745).**
1. All documents related to the March 8-9, 2019 inspection conducted by You of the ZHP facility Chuannan (FEI:3003885745), including, but not limited to all notes, photographs, documents collected, video recordings and audio recordings.
2. All documents sufficient to show all persons You interacted with or spoke with during the Mach 8-9, 2019 Audit of the ZHP facility Chuannan (FEI:3003885745).
3. All documents in Your possession that were collected during the March 8-9, 2019 Audit of the ZHP facility Chuannan (FEI:3003885745) including, but not limited to all document cited in Your April 29, 2019 Final Report at Section 4.2.
4. All communications between you and Douglas Campbell regarding the March 8-9, 2019 Audit of the ZHP facility Chuannan (FEI:3003885745).
5. All documents related to you travel to China for the March 8-9, 2019 Audit of the ZHP facility Chuannan (FEI:3003885745), including, but not limited to receipts, flight and travel itineraries, visa requests, and hotel invoices.

**Evaluation of Quality Management System and CAPAs**
1. All communications between You, Douglas Campbell, employees at ZHP, and/or employees at Duane Morris regarding the April 29, 2019 Audit Report prepared by You and Douglass Campbell for ZHP.
2. All documents reviewed and/or collected by you in preparation for your creation of the April 29, 2019 Audit Report.
3. All draft versions of the April 29, 2091, Audit Report in Your possession.

**Your Evaluation of the Management System and Corrective and Preventative Actions**
1. All documents between You and Douglas Campbell or any other employees of ZHP related to the April 29, 2019 Audit Report prepared by You and Douglas Campbell for ZHP.
2. All documents between You and Duane Morris or any other employees of ZHP related to the April 29, 2019 Audit Report prepared by You and Douglas Campbell for ZHP.
3. All document You review or collected in preparation of the April 29, 2019 Audit Report prepared for ZHP.
4. All drafts of the April 29, 2019 Audit Report.