| | | |
|---|---|---|
| NEW YORK | **DuaneMorris®** | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | SETH A. GOLDBERG | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1175 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 215 689 2198 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* SAGoldberg@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | *www.duanemorris.com* | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

December 8, 2020

**VIA ECF**

The Honorable Joel Schneider
United States Magistrate Judge
District of New Jersey

      Re:    **In re Valsartan, Losartan, and Irbesartan Products Liability Litigation**
                **Case No. 1:19-md-02875-RBK-JS**

Dead Judge Schneider:

      This letter is to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on December 9, 2020.

**1.**     **Deposition Protocol Addendums and Identification of Deposition Issues for Case Management Conference**

      **(a)**     **Chinese Addendum**

      As the Court may recall, the parties exchanged drafts of the Chinese Addendum in advance of the CMC on November 24, 2020, and during that CMC, the Court went through the parties' competing proposed terms, section by section, as set forth in the Chart at ECF 687-7. Following the CMC, Defendants sent plaintiffs a revised Chinese Addendum tracking the rulings the Court made during the CMC. Notwithstanding the Court's earlier rulings, Plaintiffs have proposed additional edits to four paragraphs, A.2, A.5, C.11, and C.13 (*see* Plaintiffs additional proposals at Ex. A) on which the Court has already ruled. *See* 11-24-20 Hrg. Tr. at 100:19-22 (ruling on A.2); *id.* at 102:22-25, 107:15-17 (ruling on A.5); *id.* at 112:12-113:1 (ruling on C.11); *id.* at 120:1-4 (ruling on C.13). Accordingly, Defendants propose the Court approve the version of the Chinese Addendum attached at Ex. B.

DuaneMorris

December 8, 2020
Page 2

**(b)   Indian Addendum**

Similar to the Chinese Addendum, the Defendants have also revised the Indian Addendum in accordance with the rulings the Court made during the November 24, 2020 CMC. The Defendants likewise provided this version of the Indian Addendum to Plaintiffs, although at the time of this writing Plaintiffs have not yet had an opportunity to respond. To the extent that parties are not in agreement at the time of the CMC, Defendants will request that this Court enter the version of the Indian Addendum attached at Ex. C.

**(c)   Israeli/EU Addendum**

On November 22, Teva forwarded a proposed Addendum Governing Depositions of Israeli and European Union Nationals Residing Outside the United States, which largely tracks the Indian Addendum. The Teva Defendants will continue to meet and confer with Plaintiffs over the terms of the Addendum and in particular the potential need for compliance with the Hague Evidence Convention and reasonable parameters for number and length of depositions.

**(d)   Issues for Briefing**

Per the Court's directive on November 24, 2020 and CMO No. 22, Defendants identify the following issues that may need to be resolved by motion on December 23 if the parties are not able to reach agreement on them before then. *See* 11-24-20 Hrg. Tr. at 128-29 (JUDGE SCHNEIDER: "What I was going to maybe think of is December 23rd before Christmas to tee up all those issues before – in a motion filed before Christmas."); CMO No. 22 (ECF 640) ("By December 23, 2020, defendants are granted leave to file a motion to compel/protective order regarding all deposition issues not resolved by that date."):

1. Number of fact depositions;

2. Length of 30(b)(6) depositions;

3. Applicability of Chinese state secret and privacy laws; and

4. Applicability of the Hague Evidence Convention.

**2.   Meet and Confers on Depositions**

The Manufacturing Defendants are in different states of progress with respect to meeting and conferring with Plaintiffs per the Court's November 25th order that "the parties shall complete fulsome discussions regarding the names, dates, and locations of depositions to be taken starting on January 19, 2021."

DuaneMorris

December 8, 2020
Page 3

### (a)   ZHP

Given the complexities involved with the Chinese depositions, the ZHP parties have proposed a complete schedule of depositions that includes almost every current employee on Plaintiffs' "priority" list of fact witness deponents located in both the United States and China, as well as two additional witnesses Plaintiffs had not prioritized. *See* Ex. D. The ZHP parties' proposed schedule also identified those fact witnesses who would cover each of the 59 topics included in the 30(b)(6) notices served on the ZHP parties. *Id.* Plaintiffs requested additional time to evaluate the ZHP parties' proposed schedule. The ZHP parties see no reason why the Court should not enter an Order approving their proposed deposition schedule.

### (b)   Aurobindo

On December 3, 2020, Plaintiffs identified the attorney who will be responsible for meeting and conferring with counsel for the Aurobindo parties (hereinafter "Aurobindo") regarding depositions. On December 4, 2020, Aurobindo's counsel emailed Plaintiffs' counsel to schedule a meet and confer teleconference. Plaintiffs' counsel proposed Friday, December 11, 2020, and counsel for Aurobindo agreed. Aurobindo is in the process of gathering information in preparation for the meet and confer with Plaintiffs' counsel.

### (c)   Mylan

Mylan is still in the process of determining which witnesses will be prepared to testify on the topics identified by Plaintiffs in the 30(b)(6) notice directed to Mylan. Counsel for Mylan and the Plaintiffs are in the process of scheduling a meet and confer to further discuss depositions.

### (d)   Teva

Teva and Plaintiffs have emailed about an additional meet and confer on Wednesday or Thursday of this week to further discuss the Teva fact witness and 30(b)(6) depositions. Teva is in the process of determining the appropriate witnesses with knowledge and availability to address each of the finalized 30(b)(6) topics. Teva will disclose its list of 30(b)(6) witnesses to Plaintiffs by December 24, 2020, consistent with the Court's 20 day deadline for such disclosures.

### (e)   Torrent

Counsel for Torrent met and conferred with counsel for Plaintiffs on Tuesday, December 8. While it is too soon to confirm any of Torrent's 30(b)(6) designees, the parties discussed Torrent's ongoing efforts to interview potential designees, and that the parties will prioritize US-based witnesses. Torrent will continue to interview potential witnesses, and will provide information regarding their location and any necessary translation needs by December 24, 2020.

Duane Morris

December 8, 2020
Page 4

### (f) Class Representatives

Plaintiffs' counsel have been providing on a rolling basis possible deposition dates for the economic loss, medical monitoring, and third party payor putative class representatives. Defendants have been providing responses on a rolling basis, and the parties have agreed to dates for many of these depositions. The parties continue to regularly communicate, and Defendants anticipate that the remainder of the depositions will be scheduled shortly.

### 3. Production of Insurance Information

Rather than focusing on the important discovery tasks at hand, Plaintiffs are once again attempting to expand the scope of discovery well beyond what the Court clearly ordered last year.

Last year, pursuant to the Court's orders and Fed. R. Civ. P. 26(a)(1)(iv), the Manufacturer Defendants made their required insurance disclosures and produced insurance agreements and reservations of rights letters related to this litigation. *See* ECF 120 ("By July 15, 2019, and to the extent not already done, all API Manufacturer and Supplier defendants, and the finished Product/Dose Manufacturing defendants (hereinafter 'covered defendants'), shall supplement in writing their insurance disclosures to identify all applicable primary and excess/umbrella insurance policies responsive to Fed. R. Civ. P. 26 (a)(1)(A)(iv). The identification shall include all named and additional insureds, dates of policy, and policy limits. . . . The covered defendants shall also produce all Reservation of Rights and declination letters regarding their coverage demands."). Specifically, the Manufacturer Defendants produced "any insurance agreement under which ***an insurance business*** may be liable . . . to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(iv) (emphasis added). *See* ECF 98 & 120 (incorporating Rule 26(a) expressly). Despite the fact that Rule 26 is limited to agreements with insurance businesses, as well as the fact that Court's prior orders specifically incorporate Rule 26, Plaintiffs are now claiming that pursuant to Rule 26 they are entitled to "***any*** indemnification agreements relevant to this litigation." *See* Ex. E (12-3-20 Email from C. Geddis to J. Priselac and S. Goldberg).

The parties have discussed the issue of insurance disclosures on numerous occasions with the Court. *See, e.g.*, 5-29-19 Tr.; 6-12-19 Tr.; 8-14-19 Tr. The production of indemnification agreements was never raised by Plaintiffs when the insurance issue was discussed with the Court last year, and the case law interpreting Rule 26 makes clear that it is not so broad as to include "any" indemnification agreement related to a litigation. For example, in *In re Zicam Cold Remedy Mktg., Sales Pracs., and Prods. Liab. Litig.*, the plaintiff sought to compel the production of an indemnification agreement between two defendants. No. 09-md-2096, 2010 WL 4715951, at *1 (D. Ariz. Nov. 15, 2010). In support of its denial of the plaintiff's motion, the court stated:

> First, plaintiffs contend that defendants must produce the agreement under Rule 26(a)(1)(A)(iv), Fed. R. Civ. P., which requires automatic disclosure of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." The Advisory Committee notes explain

DuaneMorris

December 8, 2020
Page 5

> that the "provision applies only to persons 'carrying on an insurance business' and thus covers insurance companies and not the ordinary business concern that enters into a contract of indemnification." Fed. R .Civ. P. 26, advisory committee notes (1970 amendments).
>
> Because no insurance business is a party to the agreement, Rule 26, Fed. R. Civ. P., does not require its automatic disclosure. The rule explicitly applies only to agreements covering the potential liability of insurance businesses, and the Advisory Committee notes make clear that the rule does not reach contracts of indemnification.

*Id.* The court also noted that the indemnity agreement between defendants was not relevant to the case, as it did not "relate to a claim or defense" and was not "within the scope of discoverable material." *Id.*

The plaintiffs in *Transocean Grp. Holdings PTY Ltd. v. South Dakota Soybean Processors, LLC* similarly sought the production of indemnity agreements between co-defendants pursuant to Rule 26(a)(1)(A)(iv). No. 07-652, 2008 WL 11383667, at *1 (D. Minn. Nov. 19, 2008). However, the court recognized that "[u]nder Rule 26(a)(1)(A)(iv), parties are not required to produce indemnity agreements; they are only required to produce insurance contracts." *Id.* Indeed, while defendants are required to disclose agreements with their insurers, indemnity agreements between co-defendants are not relevant to the case and not discoverable under Rule 26. *See id.; see also Bell v. Ramirez*, No. 13-7916, 2017 WL 4315030, at *1 (S.D.N.Y. Sept. 26, 2017) (noting that, even if the oral indemnity agreement between two defendants existed in documentary form, Federal Rule of Civil Procedure 26(a)(1)(A)(iv) imposed no obligation on the defendants to disclose such an agreement); *Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.*, No. 1:07-cv-258, 2008 WL 6759958, at *3 (E.D. Tenn. June 4, 2008) (holding that "the required disclosure of indemnification agreements applies only to indemnification by an 'insurance business' and not to other indemnification agreements which do not involve an insurance company").

Neither the Court's orders, the relevant transcripts, nor Rule 26 require the production of indemnification agreements beyond those that could exist between a Manufacturing Defendant and an insurance business. The Manufacturer Defendants object to producing any documents or information that goes beyond the Court's discovery orders or Rule 26, and request that the Court put an end to Plaintiffs' burdensome and harassing requests for such information.

**4.      Torrent Confidentiality Designations**

Torrent received a letter from Plaintiffs challenging the confidentiality designations for five documents from Torrent's custodial productions on October 27, 2020. Torrent provided written responses on November 11, 2020, and the parties engaged in a meet and confer on November 13, 2020. At that meet and confer, counsel for Torrent informed Plaintiffs that it would consider Plaintiffs' position and would discuss with their client. While Torrent believed meet and confer efforts to be ongoing, Plaintiffs notified Torrent on December 2, 2020 that in their view,

DuaneMorris

December 8, 2020
Page 6

Torrent has waived its ability to challenge the requested de-designation. Although counsel for Torrent disagreed with Plaintiffs' interpretation of the protective order, counsel made a request for a brief extension in order to continue discussion with their client, which Plaintiffs refused to grant.

Each of the five documents Plaintiffs challenge are properly designated as "Confidential" pursuant to the protective order (ECF 139) because (1) they are non-public and (2) they contain proprietary information and highly sensitive commercial information regarding Torrent's internal processes, investigations, and communications with its customers that, if disclosed, could cause competitive harm. Specifically:

1. TORRENT-MDL2875-00006126: This document is an email exchange where a Torrent employee forwards an inquiry from a customer about Torrent's API manufacturer. This document must remain designated as confidential because it contains sensitive information regarding Torrent's approach to handling the recalls and its communications with customers.

2. TORRENT-MDL2875-00006097: This document is an email chain between Torrent and a customer providing directions to the customer regarding Torrent valsartan and providing an update on Torrent's communications with the FDA. This document must remain designated as confidential because it contains sensitive information regarding Torrent's approach to handling the recalls and its communications with customers.

3. TORRENT-MDL2875-00072713: This document is an internal email chain between Torrent employees discussing Torrent's approach to investigating the impurity and handling the recalls. This document must remain designated as confidential because it contains sensitive information regarding Torrent's approach to handling the recalls and its approach to investigating the cause. While the recall itself may be public, Torrent's approach to handling it is not, nor is Torrent's investigation into the impurity.

4. TORRENT-MDL2875-00100222: This document is a letter from ZHP notifying Torrent of potential contaminated product and asking Torrent to take certain steps. This document must remain designated as confidential because it contains sensitive communications between ZHP and Torrent regarding contaminated API and next steps.

5. TORRENT-MDL2875-00100153: This document is an email chain with a customer that becomes a Torrent-internal chain regarding investigating the impurity, testing of products for the market in Finland, and handling recalls in Finland. This document must remain designated as confidential because it contains sensitive information regarding Torrent's approach to handling the recalls and its approach to investigating and testing drug products.

In a meet and confer on December 8, 2020, Plaintiffs for the first time took the position that because these documents relate to "public health and safety," they are thus presumably public and not confidential. This position is nonsensical. As an initial matter, the Protective Order does

DuaneMorris

December 8, 2020
Page 7

not say that documents relating to "public health and safety" may not be designated confidential. Moreover, if the Court were to adopt Plaintiffs' view, it would lead to the conclusion that essentially all documents in this litigation should be public. That cannot be the standard.

Finally, even if the Court were to de-designate the five specific documents Plaintiffs flagged (which Torrent does not think should be the case), Plaintiffs' demand that Torrent de-designate "all similar documents" is overbroad and unduly burdensome. Under the terms of the Protective Order, Plaintiffs must "***describe with particularity*** the documents or information in question and shall state the grounds for objection." ECF 129, Section 20(a). "All similar documents" certainly does not meet Plaintiffs' burden to describe the documents "with ***particularity***" pursuant to the Protective Order. Moreover, without the requisite level of particularity, Torrent cannot practically go back and identify "all similar documents." Plaintiffs should be required to identify the documents they believe are not confidential "with particularity."

**5.    Purported Document Production Deficiencies**

   **(a)    Mylan**

On December 1, 2020, Plaintiffs wrote to Mylan requesting a status update with regard to the production of certain FDA correspondence. Mylan is investigating Plaintiffs' request and is available to meet and confer with Plaintiffs' counsel to discuss. The parties have not yet had the opportunity to meet and confer.

Additionally, on December 2, 2020, Plaintiffs sent an email purporting to identify deficiencies in the Mylan's document production. Specifically, Plaintiffs identified forty-four (44) documents that were withheld from Mylan's production as non-responsive family members of responsive documents. Based solely on their review of the file names and associated metadata, Plaintiffs asserted that these documents "appear to be highly relevant to core issues" in the litigation. Plaintiffs further demanded that Mylan produce over 45,000 unredacted additional files which had been withheld from prior productions on the basis of relating being non-responsive as relating to "other products."

By way of investigation, Mylan reviewed the forty-four (44) files identified and determined that the majority (30/44) were either correctly coded as non-responsive and withheld from the production on that basis, or already produced in full. Of the remaining documents, seven (7) were duplicate files that were produced to the Plaintiffs elsewhere in Mylan's production, and seven (7) files were not previously produced. Mylan has agreed to make a supplemental production the latter seven (7) documents. On December 5, 2020, Mylan responded to Plaintiffs providing further information regarding the documents identified by Plaintiffs, including the location of duplicate documents in Mylan's productions.

Mylan maintains that its review was conducted appropriately and in good faith. Nevertheless, Mylan has volunteered to undertake a supplemental review of the more than 45,000



December 8, 2020
Page 8

documents identified by Plaintiffs, and to produce any additional documents to the extent warranted. That supplemental review is in-process.

**(b)  Teva**

On December 3, 2020, Plaintiffs sent an email purporting to identify deficiencies in the Teva Defendants' document production to date. The email listed 80 files which Plaintiffs claimed "appear to be highly relevant to core issues." Based on their review of the file names and associated metadata, Plaintiffs demanded that Teva produce over 34,000 unredacted additional files which had been withheld from prior productions on the basis of "other products." Teva reviewed the 80 files identified and determined that, contrary to Plaintiffs' assertion, the vast majority (49 of 80) were correctly coded as non-responsive and withheld from the production on that basis. Of the remaining 31 documents, 25 identified duplicate files which had in fact already been produced to Plaintiffs. Of the six responsive, not-previously-produced files, four are earlier drafts of package labeling, the final versions of which have already been produced. Teva has agreed to produce these four files as well as two other marginally responsive documents identified by Plaintiffs.

Teva responded to Plaintiffs' email on December 8, 2020, outlining the above and directing Plaintiffs' counsel to the duplicate documents. Teva will continue to review any purported deficiencies, within reason, and is available to meet and confer with Plaintiffs' counsel to discuss. The parties have not yet had the opportunity to meet and confer.

**6.    Losartan Master Complaints**

Defendants look forward to learning Plaintiffs' proposal for filing Master Complaints addressing losartan-related claims and to the opportunity to discuss the management of non-valsartan claims in this MDL.

**7.    Deadline for Service of Wholesaler Defendants' Defense Fact Sheets**

On November 12, 2020, counsel for Wholesaler Defendants were notified by counsel for Retail Pharmacy Defendants that Plaintiffs and Retail Pharmacy Defendants entered into an agreement to provide Retail Pharmacy Defendants to November 25, 2020, to supplement their defense fact sheets ("DFS") to specifically identify all sources from which each Retail Pharmacy Defendant may have purchased an NDC identified by a consumer class representative or personal injury plaintiff in their plaintiff's fact sheet (based on purchases predating the Plaintiff's last fill of that NDC). That information was not provided in the Retail Pharmacy Defendants' initial DFS served October 16 and 30, 2020, respectively. Rather, pursuant to the terms of the DFS initially negotiated between Plaintiffs and the Retail Pharmacy Defendants, those initial DFS referenced copies of purchase records previously produced by the Retail Pharmacy Defendants to Plaintiffs. It is the Wholesaler Defendants understanding that the Retail Pharmacy Defendants agreed to supplement their responses to provide additional information identifying the specific entity or entities from which the Retail Pharmacy Defendant purchased the NDC identified in Plaintiffs'

DuaneMorris

December 8, 2020
Page 9

PFS following discussions with Plaintiffs after the initial service of the Retail Pharmacy Defendants' DFS.

As the court is aware, the DFS process was intended to build upon itself up the supply chain in order to, to the extent possible, recreate the supply chain from the Plaintiff to the Manufacturer. Thus, the supplemental information provided by the Retail Pharmacy Defendants on or about November 25, 2020 identifying the specific entity or entities from which the Retail Pharmacy Defendant purchased the NDC at issue is critical for the completion of Wholesaler Defendants' DFSs.

The Wholesaler Defendants DFS entered by Court Order on August 6, 2020 states "within 60 days of completion of a Defendants' Fact Sheet by all Pharmacy or Retail Defendants, each Wholesaler, Repackager, and Relabeler Defendant . . . **identified in a Defendant Fact Sheet by any Retailer or Pharmacy as an entity in the chain of distribution for drugs purchased and/or consumer by a particular Plaintiff** must complete and serve this Defendants Fact Sheet . . . ." *See* ECF 546, Page ID 10906 (emphasis added). If using the date of Retail Pharmacy Defendants' service of their initial DFS to calculate the deadlines, Wholesaler Defendants' deadlines to complete and serve their DFS would have been December 15, 2020, for consumer class representatives and December 29, 2020, for personal injury plaintiffs. However, the agreement to amend Retail Pharmacy Defendants' DFS by November 25, 2020 re-set the 60 period for Wholesaler Defendants to complete and serve their respective DFSs. Nonetheless, in the spirit of compromise and cooperation, on November 21, 2020, Wholesaler Defendants asked Plaintiffs' counsel to agree to a 30 day extension of the original response deadlines for Wholesalers in light of Retail Pharmacy Defendants' new November 25, 2020 deadline to amend their DFS to provide the above-referenced critical information necessary for Wholesaler Defendants to complete their DFSs. Under Wholesaler Defendants' proposal, they would serve DFS for the Class Plaintiffs by January 14, 2021, and DFSs for the Personal Injury Plaintiffs by January 29, 2021.[1] After several follow-up requests by counsel for Wholesaler Defendants, on December 7, 2020, Plaintiffs' counsel responded and refused to enter into any agreed upon extension of Wholesaler Defendants' deadlines to serve their DFSs.

In keeping with the Court's prior Order regarding the DFS process and deadlines, and the Plaintiffs' agreement to provide the Retail Pharmacy Defendants until November 25, 2020 to amend their DFS to provide the supplemental information, Wholesaler Defendants respectfully ask the Court to confirm that Wholesaler Defendants' deadline for completion and service of their DFSs for the Class and Personal Injury Plaintiffs is 60 days from November 25, 2020 — the deadline for Retail Pharmacy Defendants to supplement their DFS with additional sourcing information — thus setting Wholesaler Defendants' DFS response deadline at January 24, 2021.

---

[1] The January 14, 2021, proposed agreed deadline is ten (10) days prior to the deadline otherwise required by the Court's Order. *See* ECF 564, Page ID 10906.

DuaneMorris

December 8, 2020
Page 10

**8.    Cases Pending Outside the MDL**

On December 8, Defendants provided Plaintiffs with a list of related cases pending outside this MDL, including a description of each case's status, the contact information for the associated plaintiffs' attorneys, and copies of relevant pleadings. This information is also included below for the Court's reference.

At least twelve (12) related actions are pending in various state and federal courts around the country.[2] Some, as indicated below, are currently proceeding. There are an additional eleven (11) actions stayed or being held in abeyance in various state and federal courts. The eight (8) actions pending in Middlesex County, New Jersey are being held in abeyance pending Plaintiff's anticipated MCL application. The parties have discussed that the non-MDL cases should be coordinated with MDL to minimize inconsistent results, inefficiency and expense.

**Federal Cases**

| Case | Court | Assigned Judge | Status | Plaintiff's Counsel |
|---|---|---|---|---|
| *Harris v. Aurobindo Pharma USA, et al.*, 3:20-cv-00609 | M.D. Ala. | Hon. Emily C. Marks | Plaintiff's Motion to Vacate Conditional Transfer Order ("CTO") pending before the JPML; JPML Hearing Session on 12/3/20 | Christopher Daniel Baldwin<br>Beasley Allen Law Firm<br>218 Commerce St<br>Montgomery, AL 36104<br>334-269-2343<br>334-954-7555 (fax)<br>Chris.Baldwin@Beasleyallen.com<br><br>Gerald Clark Brooks, Jr.<br>Tiffany Tolliver<br>Serious Injury Law Group P.C.<br>P O Box 781<br>Montgomery, AL 36101<br>334-832-1001<br>334-832-1002 (fax)<br>gerald@seriouslawyers.com<br>tiffany@seriouslawyers.com |
| *Hernandez v. Aurobindo Pharma* | M.D. Fla. | Hon. Charlene Edwards | Removed from state court on 10/15/20; Defendants' filed a | Christopher Ison<br>Karl Frederick Pansler<br>The Pansler Law Firm, PA |

---

[2] Of these twelve, five (5) are pending in state New Jersey court, where consent orders to hold these cases in abeyance have been filed.

DuaneMorris

December 8, 2020
Page 11

| | | | | |
|---|---|---|---|---|
| *USA, et al.*, 8:20-cv-02409 | | Honeywell; Hon. Julie S. Sneed (Magistrate Judge) | Motion to Transfer with the JPML on November 4, 2020. Plaintiff filed a Response in Opposition to Transfer on November 23, 2020. Defendants filed a Reply on December 2, 2020. Briefing is closed. The District Court vacated the Order to show cause why the case should not be remanded and granted Defendants' Motion to Stay all proceedings pending the JPML's decision on the Motion to Transfer. | 223 N Florida Ave Lakeland, FL 33801 863/683-7500 Christopher@pansler.com karl@pansler.com |

**State Cases**

| Case | Court | Assigned Judge | Status | Plaintiff's Counsel |
|---|---|---|---|---|
| *Brown v. Camber Pharmaceuticals, et al.*, No. 35-cv-2020-900037 | Circuit Court of Greene County, Alabama | Hon. Eddie Hardaway, Jr. | Motion to dismiss filed and pending; Hearing re MTD on 1/26/21 | Gerald Clark Brooks, Jr. Tiffany Tolliver Serious Injury Law Group P.C. P O Box 781 Montgomery, AL 36101 334-832-1001 334-832-1002 (fax) gerald@seriouslawyers.com tiffany@seriouslawyers.com |
| *Smith v. Torrent, et al.*, No. 9-cv-2020-900036 | Circuit Court of Bullock | Hon. Burt Smithhart | Answer filed; joint status report filed; case will be | Gerald Clark Brooks, Jr. Tiffany Tolliver Serious Injury Law Group P.C. P O Box 781 |

DuaneMorris

December 8, 2020
Page 12

| Case | Court | Judge | Status | Counsel |
|---|---|---|---|---|
| | County, Alabama | | trial ready after the October 2021 term | Montgomery, AL 36101<br>334-832-1001<br>334-832-1002 (fax)<br>gerald@seriouslawyers.com<br>tiffany@seriouslawyers.com |
| *Hall v. Torrent, et al.*, No. 66-cv-2020-900047 | Circuit Court of Wilcox County, Alabama | Hon. Collins Pettaway, Jr. | Motion to dismiss filed and pending | Gerald Clark Brooks, Jr.<br>Tiffany Tolliver<br>Serious Injury Law Group P.C.<br>P O Box 781<br>Montgomery, AL 36101<br>334-832-1001<br>334-832-1002 (fax)<br>gerald@seriouslawyers.com<br>tiffany@seriouslawyers.com |
| *Wilson v. Camber, et al.*, 27-cv-2020-900186 | Circuit Court of Dallas County, Alabama | Hon Marvin W. Wiggins | Motion to dismiss filed and pending; Plaintiff will be filing Amended Complaint. Defendant Swift Drug (retailer) has begun serving subpoenas for third party discovery and Plaintiff has served discovery responses | Gerald Clark Brooks, Jr.<br>Tiffany Tolliver<br>Serious Injury Law Group P.C.<br>P O Box 781<br>Montgomery, AL 36101<br>334-832-1001<br>334-832-1002 (fax)<br>gerald@seriouslawyers.com<br>tiffany@seriouslawyers.com |
| *Shanov v. Walgreens Boots, Inc.*, 2020CH01884 | Circuit Court of Cook County, Illinois | Hon. Anna Helen Demacopoulos | Motion to dismiss (or, in the alternative, to stay, or to join a defendant) | Thomas A. Zimmerman, Jr.<br>Sharon A. Harris<br>Matthew C. De Re<br>Jeffrey D. Blake<br>ZIMMERMAN LAW OFFICES, P.C.<br>77 W. Washington St. – Suite 1220 |

DuaneMorris

December 8, 2020
Page 13

| | | | filed and pending | Chicago, IL 60602<br>312-440-0020<br>tom@attorneyzim.com<br>sharon@attorneyzim.com<br>matt@attorneyzim.com<br>jeff@attorneyzim.com<br><br>Boris Parad<br>PARAD LAW OFFICES, P.C.<br>910 Skokie Blvd. – Suite 109<br>Northbrook, IL 60062<br>847-418-2020<br>bparad@paradfirm.com |
|---|---|---|---|---|
| *Rafuls v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, MID-L-4629-20 (N.J. Super.)[3] | New Jersey Sup. Ct. Middlesex County | Hon. Patrick Bradshaw | Consent order for abeyance filed | Adam M Slater<br>Mazie Slater Katz and Freeman LLC<br>103 Eisenhower Parkway, 2nd Floor Roseland, NJ 07068<br>973.228.9898<br>ASLATER@MAZIESLATER.COM |
| *Mooradian v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, MID-L-4603-20 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Christoph Rafano | Consent order for abeyance filed | Adam M Slater<br>Mazie Slater Katz and Freeman LLC<br>103 Eisenhower Parkway, 2nd Floor Roseland, NJ 07068<br>973.228.9898<br>ASLATER@MAZIESLATER.COM |
| *Franco v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, | New Jersey Sup. Ct. | Hon. Christoph Rafano | Consent order for abeyance filed | Adam M Slater<br>Mazie Slater Katz and Freeman LLC |

---

[3] Similar to the New Jersey Superior Court cases listed below, Plaintiffs have agreed to enter stipulated orders to hold *Rafuls*, *Mooradian*, *Franco*, *Cardy*, and *Debose* in abeyance. Plaintiffs have represented that once the number of cases reaches the necessary threshold for a Multicounty Litigation ("MCL") application, such an application will be made. If an MCL is established, Defendants expect a formal coordination order will be granted. If an MCL is not granted, Defendants expect that they will work to execute coordination orders in each action.

DuaneMorris

December 8, 2020
Page 14

| Case | Court | Assigned Judge | Status | Plaintiff's Counsel |
|---|---|---|---|---|
| MID-L-4602-20 (N.J. Super.) | Middlesex County | | | 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |
| *Cardy v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, MID-L-4599-20 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Christoph Rafano | Consent order for abeyance filed | Adam M Slater Mazie Slater Katz and Freeman LLC 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |
| *Debose v. Zhejiang Huahai Pharmaceutical Co., Ltd. et al.*, MID-L-4601-20 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Christoph Rafano | Consent order for abeyance filed | Adam M Slater Mazie Slater Katz and Freeman LLC 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |

**Federal Cases—Stayed**

| Case | Court | Assigned Judge | Status | Plaintiff's Counsel |
|---|---|---|---|---|
| *Thorn v. Mylan Pharmaceuticals, et al.*, Case No. 2:20-cv-00442 | S.D. Ala. | Hon. Kristi K. DuBose; Hon. William E. Cassidy (Magistrate Judge) | Stayed (pending decision by JPML on transfer); Plaintiff's Motion to Vacate CTO pending before JPML; JPML Hearing Session on 12/3/20 | Christopher Daniel Baldwin Beasley Allen Law Firm 218 Commerce St Montgomery, AL 36104 334-269-2343 334-954-7555 (fax) Chris.Baldwin@Beasleyallen.com<br><br>Gerald Clark Brooks, Jr. Tiffany Tolliver Serious Injury Law Group P.C. P O Box 781 Montgomery, AL 36101 334-832-1001 |

DuaneMorris

December 8, 2020
Page 15

| Case | Court | Assigned Judge | Status | Plaintiff's Counsel |
|---|---|---|---|---|
| | | | | 334-832-1002 (fax)<br>gerald@seriouslawyers.com<br>tiffany@seriouslawyers.com |
| *Smiley v. Aurobindo Pharma USA, Inc., et al.*, 2:20-cv-00416 | S.D. Ala. | Hon. Kristi K. Dubose; Hon. P. Bradley Murray (Magistrate Judge) | Stayed (pending decision by JPML on transfer); Plaintiff's Motion to Vacate CTO pending before JPML; JPML Hearing Session on 12/3/20<br><br>Position Statements Submitted on When Case Will be Ready for Trial | Gerald Clark Brooks, Jr.<br>Tiffany Tolliver<br>Serious Injury Law Group P.C.<br>P O Box 781<br>Montgomery, AL 36101<br>334-832-1001<br>334-832-1002 (fax)<br>gerald@seriouslawyers.com<br>tiffany@seriouslawyers.com |
| *Pace v. Solco Healthcare U.S., LLC*, 3:20-cv-00595 | M.D. Ala. | Hon. Stephen Michael Doyle | Stayed (pending decision by JPML on transfer); Plaintiff's Motion to Vacate CTO pending before JPML | Gerald Clark Brooks, Jr.<br>Summer Austin Wells<br>Tiffany Tolliver<br>Serious Injury Law Group P.C.<br>P O Box 781<br>Montgomery, AL 36101<br>334-832-1001<br>334-832-1002 (fax)<br>gerald@seriouslawyers.com<br>summer@seriouslawyers.com<br>tiffany@seriouslawyers.com |

### State Cases—Held in Abeyance

| Case | Court | Assigned Judge | Status | Plaintiff's Counsel |
|---|---|---|---|---|
| *Pedrick v. Zhejiang Huahai* | New Jersey Sup. Ct. | Hon. Bruce Kaplan | Held in Abeyance | Adam M Slater<br>Mazie Slater Katz and Freeman LLC |

DuaneMorris

December 8, 2020
Page 16

| | | | | |
|---|---|---|---|---|
| *Pharmaceutical Co., Ltd., et al.*, MID-L-4616-20 (N.J. Super.) | Middlesex County | | | 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |
| *Dessoye v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, MID-L-4614-20 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Thomas D. McCloskey | Held in Abeyance | Adam M Slater Mazie Slater Katz and Freeman LLC 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |
| *Byrum v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, MID-L-4590-20 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Thomas D. McCloskey | Held in Abeyance | Adam M Slater Mazie Slater Katz and Freeman LLC 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |
| *Wiltshire v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, MID-L-4593-20 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Thomas D. McCloskey | Held in Abeyance | Adam M Slater Mazie Slater Katz and Freeman LLC 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |
| *Lippl v. Zhejiang Huahai Pharmaceutical Co., Ltd., et al.*, MID-L-4591-20 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Bruce Kaplan | Held in Abeyance | Adam M Slater Mazie Slater Katz and Freeman LLC 103 Eisenhower Parkway, 2nd Floor Roseland, NJ  07068 973.228.9898 ASLATER@MAZIESLATER.COM |
| *Orlowsky v. Prinston Pharmaceutical Inc.*, et al., No. MID-L- | New Jersey Sup. Ct. Middlesex County | Hon. J.R. Corman | Held in Abeyance | Roger W Orlando The Orlando Firm, P.C. 13 Pine Street, Third Floor Morristown, New Jersey 07960 Phone: (973) 898-0404 Toll Free: (866) 373-1800 Fax: (404) 373-6999 |

December 8, 2020
Page 17

# DuaneMorris

| 0002554-19 (N.J. Super.) | | | | ROGER@ORLANDOFIRM.COM |
|---|---|---|---|---|
| *Robertson v. Prinston Pharmaceutical Inc.,* et al., No. MID-L-004228-19 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Patrick Bradshaw | Held in Abeyance | Roger W Orlando<br>The Orlando Firm, P.C.<br>13 Pine Street, Third Floor<br>Morristown, New Jersey 07960<br>Phone: (973) 898-0404<br>Toll Free: (866) 373-1800<br>Fax: (404) 373-6999<br>ROGER@ORLANDOFIRM.COM |
| *Garnes v. Zhejiang Huahai Pharmaceutical Co.*, Ltd., No. MID-L-005191-19 (N.J. Super.) | New Jersey Sup. Ct. Middlesex County | Hon. Thomas D. McCloskey | Held in Abeyance | Adam M Slater<br>Mazie Slater Katz and Freeman LLC<br>103 Eisenhower Parkway, 2nd Floor<br>Roseland, NJ  07068<br>973.228.9898<br>ASLATER@MAZIESLATER.COM |

Respectfully submitted,

*/s/ Seth A. Goldberg*

Seth A. Goldberg

cc:   Adam Slater, Esq. (*via email*, *for distribution to Plaintiffs' Counsel*)
      Jessica Priselac, Esq. (*via email*, *for distribution to Defendants' Counsel*)
      Sarah Johnston, Esq. (*via email*)
      Jeffrey Geoppinger, Esq. (*via email*)
      Lori G. Cohen, Esq. (*via email*)
      Clem C. Trischler, Esq. (*via email*)