

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

A T T O R N E Y S   A T   L A W

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA  15219
412.263.2000    FAX: 412.263.2001
WWW.PIETRAGALLO.COM

DIRECT DIAL NO.:  412.263.1816
DIRECT FAX NO:  412.263.4246
EMAIL:  cct@pietragallo.com

December 21, 2020

**Via ECF**

The Honorable Robert Kugler
Senior United States District Judge
USDC, DISTRICT OF NEW JERSEY

The Honorable Joel Schneider
United States Magistrate Judge
USDC, DISTRICT OF NEW JERSEY

Re:     *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
           USDC, District of New Jersey, No. 1:19-md-2875-RBK-JS

Dear Judge Kugler and Judge Schneider:

On behalf of the Defendants' Executive Committee, this letter is to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on December 22, 2020.

## 1.  Manufacturer Defendant Depositions

With the exception of the ZHP Parties, the Manufacturer Defendants and Plaintiffs are still meeting and conferring regarding the number of depositions to be taken. As set forth below, the ZHP Parties and Plaintiffs have met and conferred a number of times, and the ZHP Parties proposed number of deponents and the schedule for their depositions should be approved.

### a.  The ZHP Parties' Proposed Number of Deponents and Schedule for their Depositions Should be Approved.

Through the bi-weekly conferences with the Court over the past few months, the record that has been developed over the past few months regarding the ZHP Parties' depositions is clear and warrants the approval of the number of deponents the ZHP Parties have proposed, and the schedule the ZHP Parties have proposed for those depositions.

The Court has repeatedly acknowledged the overwhelming logistical challenges of deposing witnesses on the other side of the world during a global pandemic when travel restrictions and quarantines prevent them from traveling freely to mutually agreeable locations for their depositions, *see, e.g.*, 9/16/20 Tr. 21:11-13 (The Court: "[I]t's an amazingly complex situation that's complicated by the fact that we have foreign defendants and we're in the midst of this pandemic."), and Plaintiffs have repeatedly expressed their intention, given these logistical

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 2

challenges, of streamlining the number and length of depositions they request to take, and, where possible, to order their depositions such that U.S.-based witnesses, and others that present fewer logistical challenges would be deposed before foreign witnesses, *see, e.g.*, 10/28/20 Tr. 11:11-19 (Mr. Slater: "[I]t's our hope, as we've expressed to defense liaison, that we can work together to try to be practical in terms of, for example, who gets designated as a corporate representative, so that it can be more easily done, hopefully, in the United States, or much closer in time zones, so that it can be done more seamlessly and with a lot less inefficiency, so that we could try to -- as we discussed previously, try to maybe reduce the number of fact depositions we ultimately have to take as best as we can."); 11/24/20 Tr. at 131:18-23 ("[W]e do not believe we have unlimited depositions and we have stated on the record many times that we are interested in trying to streamline the number of depositions.").

However, in contrast to their representations to the Court about wanting transparency from the Manufacturer Defendants in providing information about their witnesses so that the depositions can be streamlined, *see, e.g.*, 9/30/20 Tr. 12:23 (Mr. Slater: "So what we need is the Court to order the defendants to be as transparent as possible, who are the different custodians, who are the witnesses, who is where, who speaks English, who can be deposed in the U.S., who can be deposed from Spain or other places, because we don't see this process of taking depositions as difficult."), and contradicting their claim of being cooperative with the Manufacturer Defendants about scheduling these depositions, *see, e.g.*, 10/28/20 Tr. 44:5-8 ("And we're hoping that -- because the defense wants to work with us on certain things, on how many witnesses we depose, we're hopeful that that's going to be something that they will work with us on."), when presented with such information and cooperation by the ZHP Parties, Plaintiffs have refused to agree to a limit on the depositions and to reject the ZHP Parties' proposal about the locale and timing of the depositions, thereby stymieing the process.

Accordingly, the ZHP Parties request the Court approve the proposal they have made to Plaintiffs, set forth below, regarding the presumptive limit on the number of ZHP Party depositions, with Plaintiffs being able to make an application for good cause at a later date if additional witnesses are needed. S*ee* 11/24/20 Tr. at 130:16-26, 131:1 (The Court: "If you go into the process thinking you have an unlimited number, you may be prejudiced at the end of the day. So I think it's in everyone's best -- and with the proviso that if there's good cause, you'll get more, ***but I do think there should be a presumptive limit***.").

(i)     **The ZHP Parties' Proposed Schedule of Depositions**

Since October, the ZHP Parties have been prepared to substantively address the questions of which witnesses should be deposed, where, when, and the topics on which the witnesses may be designated to provide Rule 30(b)(6) testimony.[1]

---

[1] While the ZHP Parties are not required to identify the witnesses who will be designated on the Rule 30(b)(6) Notice topics until December 22 (Dkt. 664), all of the witnesses they intend to designate were identified on December 8.

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 3

     Plaintiffs initially proposed 17 priority individual ZHP party fact witnesses on October 7. *See* Exhibit B (Oct. 7 Email from Hilton).[2] Per the Court's November 25 order that "the parties shall complete fulsome discussions regarding the names, dates, and locations of depositions to be taken starting on January 19, 2021," the ZHP Parties contacted Plaintiffs' counsel on December 3 to request a meet and confer. (*See* Dkt. 640.) Plaintiffs requested that the parties meet and confer several days later, on December 8.

     In advance of that meeting, the ZHP Parties expended significant time and effort to compile a proposed schedule of depositions that included, subject to COVID-19 travel restrictions and quarantine requirements, the dates the witnesses would be available, the locale of their deposition, and whether the witness would also be designated to provide testimony as to any of the 59 Rule 30(b)(6) topics[3] approved by the Court on December 4. *Id.* The fourteen witnesses comprise almost every current employee on Plaintiffs' "priority" list of fact witness deponents, as well as two additional witnesses Plaintiffs had not prioritized. *See* Exhibit A.[4] The schedule the ZHP Parties proposed addresses the challenges presented by the restrictions in place due to COVID-19 and

---

[2] On October 20, 2020, the ZHP Parties met and conferred with Plaintiffs, prepared to substantively discuss all of the priority deponents. During that meeting, Plaintiffs expressed their view that the session should be an information-gathering session regarding deponent locations and languages. When, at the conclusion of the meeting, Defendants asked when they could begin discussing the deponents more substantively, Plaintiffs expressed that they needed to understand the logistical issues first and would later revisit more substantive discussions regarding the deponents. By email on October 24, the ZHP Parties asked Plaintiffs to identify the point of contact would be for the substantive discussions of deponents and inviting a meet and confer. *See* Exhibit C (Oct. 24, 2020 Email from Goldberg). The parties met and conferred on November 3 for three hours, mostly focusing on the Rule 30(b)(6) Notices. *See* Exhibit D (Nov. 4, 2020 Email from Priselac). Upon receiving amended Rule 30(b)(6) Notices on November 16, the Parties again met and conferred yet again on both November 18 and November 19. During those meetings, Defendants proposed that a subset of Plaintiffs' priority witnesses could serve as both fact witnesses and corporate designees, eliminating cumulative depositions of lower-level employees, and Plaintiffs agreed to consider the proposal.

[3] The Rule 30(b)(6) Notices directed to the ZHP Parties and approved by the Court consist of seven general categories of 30(b)(6) testimony and 59 sub-categories. The general categories are: (1) Testing of Valsartan API; (2) Quality Assurance and Quality Control Activities; (3) Process Development; (4) Communications with Regulatory Authorities; (5) ZHP's Communications with API and Finished Dose Customers and Downstream Customers; (6) Compliance with cGMPs; and (7) Product Tracing. (*See* Dkt 651.)

[4] The schedule at Exhibit A is nearly identical to a schedule the ZHP Parties first proposed on December 8, with slight changes to dates due to changing witness availability. Other than with regard to certain dates, the proposal is materially the same as the December 8 proposal, with the addition of one fact witness.

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 4

Plaintiffs' representations about wanting to streamline the number of depositions and to use 30(b)(6) testimony, where possible, to do so.

Specifically, the ZHP Parties provided information and proposed deposition dates and locations for the following witnesses:

| No. | Witness | Party | 30(b)(6)? | Department |
|-----|---------|-------|-----------|------------|
| 1. | John Iozzia | Huahai US | No | API Marketing |
| 2. | Lijie Wang | Prinston | Yes | Regulatory Affairs |
| 3. | Remonda Gergis | Prinston | No | Quality Assurance |
| 4. | Hai Wang | Solco | Yes | Finished Dose Sales |
| 5. | Jun Du | ZHP/ Prinston/ Huahai US | No | N/A |
| 6. | Jay (Jie) Wang | ZHP | Yes | Business Development |
| 7. | Linda (Lihong) Lin | ZHP | Yes | Regulatory Affairs |
| 8. | Peng Dong | ZHP | Yes | Production |
| 9. | Eric Gu | SynCores | Yes | Research and Development |
| 10. | Minli Zhang | ZHP | Yes | Finished Dose Quality |
| 11. | Qiangming Li | ZHP | Yes | API Quality Control |
| 12. | Min Li | ZHP | Yes | Analytical Operations |
| 13. | Jucai Ge | ZHP | Yes | API Quality Assurance |

Rather than comply with the Court's order to "complete fulsome discussions" about the depositions, Plaintiffs were wholly unprepared to discuss the depositions during the meet and confer on December 8, saying that they would need additional time to evaluate the proposal.[5] On

_____

[5] Plaintiffs did not provide *any* response to the ZHP Parties' proposal until nine days later, on December 17, when they confirmed dates for only four of the thirteen proposed dates in response

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 5

December 17, and contrary to Plaintiffs' previously-stated intention to streamline the depositions, Plaintiffs proposed seven additional deponents, including facially inappropriate witnesses such as an employee of a non-party and ZHP's Chairman. The parties met and conferred on December 18,[6] with Defendants objecting to six of the newly-proposed deponents.

The ZHP Parties satisfied their meet and confer obligations regarding the deponents on December 8 and have proposed a reasonable schedule, attached as Exhibit A, that should be entered.

      (ii)      **The ZHP Parties' Proposed Schedule is Consistent with the Parties' Efforts to Streamline the Depositions and the Court's Guidance.**

Plaintiffs' primary objection to the ZHP Parties' proposed schedule is the proposed deposition dates for the designees who will testify on testing and process development topics are toward the end of the deposition period. However, as the ZHP Parties explained to Plaintiffs, this schedule was necessitated by the nature of ZHP's business and the COVID-19 pandemic and is entirely in line with the Court's guidance and Plaintiffs' prior representations.

It is an unavoidable fact that the ZHP Parties' corporate designees on testing and process development are Chinese nationals who work at the manufacturing site in China. As the parties have agreed in the Chinese Addendum, attached as Exhibit F, the parties must allow these employees to observe the Chinese New Year, which takes place from February 12-26, 2021. As previously explained to Plaintiffs, even if ZHP's employees wanted to travel during and near that time period, they would be unable to because the country shuts down during that time period to celebrate.

In addition, as the Court has noted, no witness will be expected to put themselves in danger by traveling during the COVID-19 pandemic, which is of particular concern at this time when case numbers are spiking around the globe. 11-24-20 Hrg. Tr. at 118:18-21 ("[Y]ou and everyone else in this case can be a hundred percent certain that this Court will never put someone's health and safety at risk for a deposition in the case."). As everyone is well aware, depositions are scheduled to begin in less than one month, and there is no certainty that the pandemic concerns will have subsided by then. It is even less certain whether the Chinese nationals could travel within China in order to reach Shanghai to fly to Hong Kong in one month, let alone obtain a travel permit to be permitted to enter Hong Kong.

---

to an email from the ZHP Parties' counsel expressing dismay that Plaintiffs had not responded to the proposal. *See* Exhibit G (Dec. 17 Email from Priselac).

[6] During this meet and confer, Defendants asked Plaintiffs whether they had a proposal regarding the number of hours that should be allocated for Rule 30(b)(6) testimony. Plaintiffs confirmed that they had not formulated a proposal and inquired whether the ZHP Parties would be willing to continue to meet and confer beyond the case management conference on this issue.

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 6

Further, since September, Plaintiffs have been requesting on the record that the U.S. witnesses be deposed first to avoid issues with logistics and translation. *See, e.g.*, 9-30-20 Hrg. Tr. at 12:23-25, 13:1-3 (MR. SLATER: "So what we need is the Court to order the defendants to be as transparent as possible, who are the different custodians, who are the witnesses, who is where, who speaks English, who can be deposed in the U.S., who can be deposed from Spain or other places, because we don't see this process of taking depositions as difficult."); 9-30-20 Hrg. Tr. at 7:9-14 (MR. SLATER: "[L]et's find out other people like that [who are located in the U.S.] so we can prioritize important witness and important corporate representatives and potentially take as much of a bite out of the important discovery as we can with less logistical issues and push to the back things that might be more difficult or less important.").

The Court has also recognized that the depositions of witnesses in the U.S. are logistically easier to schedule. *See, e.g.*, 10-28-20 Hrg. Tr. at 10:21-25, 11:1 (THE COURT: "Those are one category and then, of course, there's the category of witnesses who hopefully are in the United States that are going to be deposed."); 11-24-20 Hrg. Tr. at 133:15-19 ("[A]re there American witnesses who are going to be deposed so we don't run into the translation and travel issues with the foreign witnesses?").

Accordingly, the schedule proposed by the ZHP Parties is the only one that is workable within the schedule set by the Court: the depositions of ZHP's employees currently in China, which includes ZHP's 30(b)(6) designees who are competent to testify as to process development and testing, must occur after the Chinese New Year but before April 1, 2020. The ZHP Parties' proposal schedules the ZHP entities' U.S. based witnesses first, with the depositions of ZHP's employees located in China to follow after the Chinese New Year. While the ZHP Parties have offered to try to move deponents who are more important to Plaintiffs earlier in March, this is the only compromise that the ZHP Parties can possibly make at this juncture.

(iii)    **The Witnesses Plaintiffs Identified on December 17 Should Not Be Deposed.**

The following deponents, which Plaintiffs identified only *four days ago* on December 17 should not be deposed in this litigation:

- Yuelin Hu of ZHP's API Quality Assurance Department;
- Yanfeng (Lucy) Liu of ZHP's Regulatory Affairs Department;
- Fengyang (Xavier) Tang of ZHP's Business Development Department;
- Mi (Karen) Xu of ZHP's Business Development Department;
- Eric Tsai of Prinbury BioPharm; and
- Baohua Chen, Chairman of ZHP's Board of Directors.

The key objections to the selection of these deponents are summarized here, and the ZHP Parties request leave to submit a more fulsome brief on these issues.

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 7

>    **(1)    Most of the Newly-Identified Deponents are Duplicative of Deponents the ZHP Parties Have Agreed to Produce.**

Running directly counter to Plaintiffs' stated goal of streamlining the depositions, most of the newly-identified fact witnesses are lower-level ZHP employees who are duplicative of other deponents the ZHP Parties have agreed to produce. Specifically:

- Yuelin Hu works in ZHP's API Quality Assurance Department and reports directly to Jucai Ge, who ZHP has agreed to produce both as a fact witness and as a corporate designee on matters relating to API Quality Assurance (*see* table at p.4, *supra*);

- Lucy Liu works in ZHP's Regulatory Affairs Department and reports directly to Linda Lin, who ZHP has agreed to produce both as a fact witness and as a corporate designee on matters relating to Regulatory Affairs (*see* table at p.4, *supra*); and

- Xavier Tang and Mi Xu work in ZHP's Business Development Department and report to Jie Wang, who ZHP has agreed to produce both as a fact witnesses and as a corporate designee on matters relating to communications with customers (*see* table at p.4, *supra*).

And, even if the anticipated testimony would not be duplicative, which it will be, notices of deposition would not be properly directed to these corporate employees. Yuelin Hu, Lucy Liu, Xavier Tang, and Mi Xu do not quality as officers, directors or managing agents, and thus should be treated as non-parties for the purpose of depositions. *Karakis v. Foreva Jens Inc.*, No. 08-61470, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009) (citing authorities). Courts consistently hold that depositions of such employees require service of a subpoena pursuant to Federal Rule of Civil Procedure 45. *Id.* For these reasons, Yuelin Hu, Lucy Liu, Xavier Tang, and Mi Xu should not be included in the list of deponents the ZHP Parties will provide for deposition.

>    **(2)    Eric Tsai is Not Employed by any ZHP Party and Should Not Be Deposed.**

One of the individuals that Plaintiffs identified for deposition on December 17 is Eric Tsai, an employee of Prinbury Biopharm. Prinbury Biopharm is not a party to this litigation, and, to the extent any of its employees could be compelled to testify in a deposition, a subpoena pursuant to Federal Rule of Civil Procedure 45 is required.

>    **(3)    Baohua Chen Was Not Materially Involved in the Facts Underlying This Litigation, and His Deposition is Barred by the Apex Doctrine.**

The final newly-identified deponent is Baohua Chen, the Chairman of ZHP's Board of Directors. Mr. Chen is not involved in the issues underlying this case in any material way. Mr. Chen's deposition is barred by the apex doctrine and is neither appropriate nor necessary. Plaintiffs

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 8

have not provided the ZHP Parties with any documents or information establishing Mr. Chen's material involvement with the facts at issue that would warrant his deposition, a showing that must be made in connection with demonstrating a need for an apex deposition.

During the parties' December 18 meet and confer, Plaintiffs attempted to justify the selection of Mr. Chen for deposition, arguing that over 3,000 ZHP employees report to him and that he oversees the operations of ZHP at a high level. Depositions of such high-level corporate officers are routinely barred by courts under the apex doctrine. *United States ex. Rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2015 WL 4973626, *1 (E.D. Pa. Aug. 20, 2015). This doctrine recognizes that deposing "apex" corporate personnel "severely burdens those officers and the entities they represent," and that before allowing a party to proceed, the Court should consider "whether the high-level official has personal or superior unique knowledge of the facts alleged" and "whether the information [sought] could be obtained from lower level employees or through less burdensome means." *Id.*; *Ford Motor Co. v. Edgewood Prop., Inc*., No. 06-1278, 2011 WL 677331, at *2 (D.N.J. Feb. 15, 2011). In weighing these factors, there is "a rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and this burden is undue absent" these two factors, "which go to the lack of a more convenient, less burdensome, and less expensive alternative." *Galmines*, 2015 WL 4973626 at *2.

Here, Plaintiffs propose to *maximize* the ZHP Parties' expense and burden by scheduling a deposition of the ZHP's Chairman, Baohua Chen, even where ZHP has already agreed to produce the Vice Chairman of ZHP's board of directors, Jun Du, for deposition. Moreover, because it is illegal to conduct a deposition for use in U.S. litigation on Chinese soil without the permission of Chinese authorities, which Plaintiffs have not sought, a deposition would require Mr. Chen to leave China, and, given the existing COVID-19 restrictions, quarantine both abroad and on return to China. Even absent this excessive burden and disruption of Mr. Chen's oversight of ZHP, his deposition is exactly the type of duplicative, wasteful, and burdensome discovery the apex doctrine intends to prohibit. Plaintiffs have not articulated what knowledge, if any, Mr. Chen has about the valsartan manufacturing, production, testing, or sales, let alone what "unique" information he possess that cannot be supplied by Jun Du or another employee already being offered for deposition. *Galmines*, 2015 WL 4973626 at *2. Given that neither factor favors Plaintiffs' position, this Court should prevent Plaintiffs from taking the deposition of Baohua Chen, or, in the alternative, grant the ZHP Parties leave to more fully brief this issue.

## 2. Deposition Protocol Addendums

In accordance with the Court's December 10, 2020 Order, the parties have reached agreement on the terms of the Chinese Addendum and the Indian Addendum to the Deposition Protocol. The Chinese Addendum attached hereto as Exhibit F, and the Indian Addendum is attached as Exhibit H. Both are finalized for Court approval.

The parties are in the process of finalizing the EU/Israel Addendum for submission to the Court. The parties hope to be in position to submit the finalized Addendum at or before the December 22 conference.

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 9

**3.  Proposed Amendments to the Discovery Schedule**

The parties have had a series of productive discussions, including on December 18th and 21st, to meet and confer over reasonable adjustments to CMO 22 that both sides deem necessary in order to facilitate the timely and efficient completion of fact discovery, general causation, and class certification briefing. The parties are continuing to work together cooperatively in order to jointly agree on a slightly revised schedule for presentation to the Court.

**4.  Plaintiffs' Motion for Leave to Amend Economic Loss Complaints**

On December 16, 2020, Plaintiffs filed a Motion for Leave to Amend their Consolidated Second Amended Economic Loss Class Action Complaint and five of the so-called "underlying" class action complaints[7] in order to add nineteen (19) brand new plaintiffs to these complaints. (*See* Dkt. 669.) The parties are meeting and conferring regarding Defendants' concerns about Plaintiffs' proposed amendments and will file an opposition brief regarding those issues at the designated time in the event the parties are unable to reach agreement.

**5.  Torrent Confidentiality Designation Dispute**

Pursuant to the Court's December 10, 2020 Order, on December 17, 2020, Torrent submitted the affidavit of Sanjay Gupta supporting Torrent's confidentiality designations.

As shown by Mr. Gupta's affidavit, each of these documents has been properly designated "Confidential" pursuant to the Protective Order (Dkt. 139). As a practical matter, there is no prejudice to Plaintiffs resulting from these documents being designated "Confidential" (and Plaintiffs have not identified any prejudice in any of their submissions on this issue or meet and confers with Torrent). Because these documents are designated as "Confidential" and not "Restricted- Confidential," Plaintiffs can use these documents during depositions, share these documents with their experts, or use them at a potential trial.

Torrent stands on its confidentiality designations, and because Plaintiffs have not articulated any need for these documents to be de-designated or prejudice from their designation, Torrent believes its designations should stand.

---

[7] These include the class action complaints filed by (1) Robin Roberts (18-cv-16075), initially filed in the District of New Jersey; (2) Veronica Longwell (19-cv-7463), filed in the District of Massachusetts and transferred to this Court in CTO-1; (3) Eric Erwin (18-cv-13447), initially filed in the D.N.J.; (4) Elizabeth Duffy (19-cv-8591), initially filed in the Southern District of New York and transferred to this Court in CTO-2; and (5) Joseph Cacaccio (18-cv-6841), initially filed in the Eastern District of New York and transferred to this Court in CTO-1.

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 10

## 6. Manufacturer Document Production Issues

At the December 9, 2020 case management conference, Plaintiffs identified purported issues related to certain non-responsive documents withheld from the document productions of Defendants Mylan, Teva, and ZHP. These documents consist of "family members" of documents that were marked responsive and produced to the Plaintiffs by the Defendants. Per the Court's instruction, the parties are meeting and conferring in an effort to resolve these issues without further involvement from the Court. The meet and confer process is ongoing.

## 7. Wholesaler Discovery Update

At the December 9 conference, the Court denied Plaintiffs' request to attempt to compel production of indemnification agreements from Manufacturer Defendants pursuant to Plaintiffs' Rule 34 Request for Production ("RFP") No. 6 which broadly requested all agreements, contracts, or licenses to which any Manufacturing Defendant is a party. The Court determined that it would be "a stretch" to interpret plaintiffs RFP No. 6 as requesting indemnification agreements, and for that reason among others, denied Plaintiffs' request. Plaintiffs are now similarly attempting to "stretch" their Rule 34 RFPs to Wholesaler Defendants to attempt to require production of highly confidential and proprietary supplier agreements between Wholesaler Defendants and Manufacturer Defendants that have never been requested.

During the parties' meet and confer on December 1, Plaintiffs claimed that their RFP Nos. 4 and 21 each request production of supplier agreements between Wholesaler Defendants and Manufacturer Defendants. The plain language of those RFPs clearly shows they do not. RFP No. 4 requests production of "documents sufficient to identify your final written policies, if any, that set forth the shipment documents you require be provided to you by a Manufacturer Defendant." RFP No. 21 requests production of "final written indemnification agreements applicable to any claims currently pending in MDL 2875 against Wholesaler Defendants." Neither RFP can be broadly construed as a request for production of supplier agreements. Moreover, Plaintiffs' First Set of Requests for Production of Documents to Wholesaler Defendants, dated November 26, 2019 (which the Court struck), included RFPs for agreements, including RFP No. 8 which broadly requested "all formal and informal agreements, contracts, or licenses that [Wholesaler Defendants are] a party to" with Manufacturer Defendants. As such, Plaintiffs clearly were aware of supplier agreements between Wholesaler Defendants and Manufacturer Defendants that could be requested. Yet, following negotiations with Wholesaler Defendants on Plaintiffs' Second Amended Set of Requests for Production of Documents, Plaintiffs chose not to pursue production of supplier agreements. Plaintiffs cannot now claim Wholesaler Defendants have an obligation to produce supplier agreements in response to RFPs that are clearly not directed at those documents.

Plaintiffs also claim they are entitled to production of supplier agreements they have never requested because those agreements may contain warranty provisions and Plaintiffs' RFPs include a section heading titled "warranties/statements" before RFPs Nos. 2-5, none of which request supplier agreements or any warranty agreements. Plaintiffs' effort to compel Wholesaler Defendants to produce entire supplier agreements based on section headings in their RFPs is even

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 11

more of a stretch. Those headings do not serve to request anything, much less entire supplier agreements, parts of which may or may not include warranty provisions. Bottom line, Plaintiffs did not request Wholesaler Defendants produce supplier agreements in their Second Amended Set of RFPs to Wholesaler Defendants, which were heavily negotiated and entered by the Court. The Court should deny Plaintiffs' attempt to re-write RFP Nos. 4 and 21 to now require Wholesaler Defendants to produce supplier agreements.

During the parties' meet and confer, Plaintiffs' counsel also claimed all Wholesaler Defendants' responses to RFP No. 16 are deficient. RFP No. 16 requests Wholesaler Defendants "[p]roduce documents sufficient to identify a list of your significant employees involved in managing the recall of VCDs." In response, each Wholesaler Defendant identified one or more individual employees involved in the management of the VCD recalls, as requested. Plaintiffs now claim those responses are deficient because Wholesaler Defendants did not produce organizational charts for any purported "recall departments." Again, Plaintiffs are attempting to expand the scope of RFPs to include documents that were not actually requested.

Organizational charts is a term of art frequently used in litigation. Request No. 1 in Plaintiffs' First Set of Requests for Production of Documents to Wholesaler Defendants, dated November 26, 2019 (which the Court struck), specifically requested production of organizational charts for various alleged departments, including the "recall department." Like the requests for supplier agreements, Plaintiffs did not ultimately include an RFP for production of organizational charts of any kind in their Second Amended Set of RFPs to Wholesaler Defendants following negotiations with counsel. Plaintiffs could have done so, but chose not to. Rather, they requested the identification of "significant employees involved in managing the recall of VCDs," and that is what Wholesaler Defendants have provided. The Court should deny Plaintiffs' attempt to re-write and expand RFP No. 16 as well.[8]

## 8. Plaintiff Fact Sheet Deficiency Show Cause Order Requests

### (a)    Cases Addressed at the November 24, 2020 Case Management Conference:

As a preliminary matter, Defendants note that the Court issued nine show cause orders returnable at the December 22, 2020 Case Management Conference.

---

[8] Following the parties' meet and confer, on December 8, 2020, Plaintiffs' counsel served a draft set of additional RFPs to Wholesaler Defendants. Those draft RFPs specifically request production of "purchase/supply agreements with manufacturers" and "organizational charts" identifying personnel involved in the recall of VCDs. Those draft RFPs are an admission that the previous RFPs approved by the Court and served on Wholesaler Defendants did not request supplier agreements or organizational charts. Otherwise, there would be no reason for Plaintiffs to include requests for those documents in their most recent draft RFPs.

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 12

The parties have reached an agreement to extend the time to resolve the issues in one of those matters and the order to show cause is withdrawn:

- Suits, James – 20-cv-6547

One matter has been resolved:
- White, Linda - 20-cv-3885

One matter has been dismissed:
- Noble, Maria – 20-cv-08100

Six cases remain subject to an order to show cause at the December 22, 2020 Case Management Conference for failure to substantially complete a PFS:

|  | Plaintiff | Civil Action No. | Law Firm | Core Deficiencies |
|---|---|---|---|---|
| 1. | Pittman, Charleston | 19 - CV- 15638 | Law Offices of John D. Sileo LLC | See Deficiency notice. PFS is substantially incomplete – Section I on product ID is blank.<br><br>Insurance authorizations are not filled out to particular entities. |
| 2. | Torghele, Dan | 19-cv-21034 | Shrager & Sachs | Section I is largely blank.<br><br>XI.A.1 - Failed to provide properly signed, dated, and completed authorization.<br><br>XI.A.6 - Failed to provide properly signed, dated, and completed authorization.<br><br>XI.B.1 - Failed to respond.<br><br>XI.B.6 - Failed to respond. |
| 3. | Terhune, Danny | 1:20-cv-08211 | Watts Guerra | Numerous deficiencies persist after the Amended PFS filing. See Deficiency Notice dated 9/18/20.<br><br>Numerous deficiencies persist after 3 Amended PFS filings. Initial Deficiency Notice was served on 9/18/20.<br><br>Primary/core deficiencies in the Third Amended PFS are as follows: |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 13

| | | | | I.D.4 -7. Did not provide information on other types of cancer, or highest stage diagnosed. Moreover, the information provided in the PFS is inconsistent with produced medical records, which show that Plaintiff's colon cancer (diagnosed in 2013) pre-dates Valsartan by at least 4 years.<br><br>II.D.2 – No employment end date provided.<br><br>III.E. – Did not adequately answer questions about claimed emotional/mental injuries, if any. A mental health authorization also was not provided.<br><br>III.G. – Did not provide amounts of claimed medical expenses. In addition, Plaintiff did not provide any information (date or substance) of conversation with Dr. Altneu about relationship between Valsartan and cancer.<br><br>IV.A. – Did not provide dates of treatment with Drs. Altneu and Lee, and did not indicate whether they are current providers.<br><br>IV.D. – Did not provide dates of insurance coverage with Anthem Blue Cross. Cannot determine whether insurance coverage was applicable during relevant time period or whether there are additional carriers.<br><br>IV.E – Did not state what information he believes his witness, Debra Houshour, possesses.<br><br>IV.G. – Did not provide information on treatments/providers for other conditions (depression/anxiety, diabetes, hyperlipidemia, HTN, obesity).<br><br>VII.A.2. – Did not provide information on cancer diagnoses that are unrelated to Valsartan. For instance, did not identify type of cancer/primary oncologist for the condition requiring chemotherapy back in 2013 (a pre-existing condition which clearly cannot be related to Valsartan use) |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 14

| | | | | VIII. – Incomplete information provided as to family medical history (brother with pancreatic cancer). |
|---|---|---|---|---|
| 4. | Welch, Durl | 20-CV-07999 | Watts Guerra | Deficient PFS. Deficiencies persist after the Third Amended PFS filing. Original Deficiency Notice was served on 9/18/20.<br><br>I.D.1 –Provided medical records from Oklahoma Cancer Center and St. John's Hospital, but failed to provide medical records from Kevin Keller, M.D., demonstrating spine and liver cancer diagnosis or other alleged injury. No records provided from initial cancer diagnosis in February, 2016 despite history of lung cancer. Without these medical records and/or the required authorizations, we are unable to determine whether spine and liver cancer were new primary or metastasized from pre-existing lung cancer.<br><br>III.G.a - c - Failed to provide information regarding medical expenses and instead states "will supplement."<br><br>XI.A.1 - Failed to provide properly signed, undated, and completed authorization for various key providers, including: Dr. Alan Keller (oncologist); Dr. Khan Nguyen (oncologist); Dr. Charles Taylor (oncologist); Dr. Sarah Graham (family medicine); and Dr. Kevin Keller (noted in PFS as doctor treating "spine cancer")<br><br>XI.B.2 - Pharmacy records and records from Oklahoma Cancer Center and St. John's Hospital were provided, but no additional medical records from Kevin Keller, M.D. were produced. |
| 5. | Belcuore, Patrick | 20-CV-07787 | Watts Guerra | Yes. See Deficiency Notice of 9/14/20. All deficiencies remain from 9/14/20 Deficiency Notice except for new sufficient responses to XIB.4 – XI.B.23. All core deficiencies present. |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 15

| 6. | Carnley, Ralph | 20-cv-07946 | Wattas Guerra, LLP | I.C.2 - Failed to attach records. |
|---|---|---|---|---|
| | | | | Documents showing product use. |
| | | | | I.C.3    - Failed to respond. |
| | | | | Dosage of valsartan plaintiff clams to have taken. |
| | | | | I.C.10  - Failed to provide complete information. |
| | | | | Start date of valsartan use. |
| | | | | I.D.5    - Failed to respond. |
| | | | | Highest stage diagnosed for liver and pancreas cancers. |
| | | | | I.D.6 - Failed to respond. |
| | | | | Metastasis of Cancer to other Organs? |
| | | | | I.D.7 - Failed to respond. |
| | | | | Remission Date (if applicable). |
| | | | | I.D.8 - Failed to respond. |
| | | | | Description of treatment for cancers. |
| | | | | III.G.c - Failed to respond. |
| | | | | Medical expenses. |
| | | | | XI.A.1 - Failed to provide properly signed, undated, and completed authorization. |
| | | | | XI.A.6 - Failed to provide properly signed, undated, and completed authorization. |
| | | | | XI.B.1, 2, 4, 10 - Failed to attach documents that plaintiff claims to have attached. |
| | | | | XII - Failed to provide signed and dated, declaration. |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 16

**(b)**    **<u>Second Listing Cases – Order to Show Cause Requested:</u>**

Pursuant to CMO-16, the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. Each of these 11 cases were previously listed on the agenda for a prior CMC. Defendants provided a list including these cases and identified deficiencies to Plaintiffs' leadership counsel for distribution on December 14, 2020, met and conferred with Plaintiffs' counsel on December 17, 2020, and have been available for further meet and confers as needed. Accordingly, Defendants request that an Order to Show Cause be entered in each of these cases, returnable at the next case management conference, as to why the case should not be dismissed.

Defense counsel will be prepared to address the individual issues with respect to each of these cases, to the extent necessary, during the December 22nd Case Management Conference:

| | Plaintiff | Civil Action No. | Law Firm | Core Deficiencies | Deficiency Notice Sent | Prior Agenda Listing |
|---|---|---|---|---|---|---|
| 1. | Smoot, Kelly | 20-cv-8560 | Watts Guerra, LLP | I.C.10    Failed to respond.<br><br>Start and end date for valsartan prescribed by Dr. Wittles.<br><br>I.D.1    Failed to attach records.<br><br>Records showing injury.<br><br>II.D.4.c    Failed to respond.<br><br>Whether and for what period diet includes red and/or processed meats.<br><br>II.D.4.d    Failed to respond.<br><br>Whether and for what period diet includes smoked foods, salted | 9/25/2020 | November |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 17

| | | | | meat and fish, and/or pickled vegetables.<br><br>III.F.2.a    Failed to respond.<br><br>Annual gross income for years 2011-2015 (plaintiff is claiming lost wages).<br><br>III.F.3.a    Failed to respond.<br><br>Annual gross income for years 2017 to 2019 (plaintiff is claiming lost wages).<br><br>III.F.4.a    Failed to respond – total income lost (plaintiff is claiming lost wages).<br><br>III.G.c    Failed to respond.<br><br>Date and expenses for Witham Health Services and Dr. Wittles.<br><br>XI.A.2    Failed to provide properly signed, undated, and completed authorization (tax forms). | | |
| 2. | Troyce, Houchin | 20-cv-08269 | Pendley, Baudin & Coffin, L.L.P. | Failed to file amended PFS<br><br>*See Deficiency Notice* | 10/27/2020 | November |
| 3. | Aikens, Thomas | 20-cv-5187 | Law Offices of Henry Schwartz | Failed to file amended PFS<br><br>*See Deficiency Notice* | 10/06/2020 | November |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 18

| 4. | Lomax, Sharon | 20-cv-05176 | Law Offices of Henry Schwartz | Failed to file amended PFS<br><br>*See Deficiency Notice* | 10/06/2020 | November |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 19

| 5. | Napolitano, John | 20-cv-05174 | Law Offices of Henry Schwartz | Failed to file amended PFS<br><br>*See Deficiency Notice* | 10/06/2020 | November |
|----|----|----|----|----|----|----|
| 6. | Hebert, Betty | 19 - CV- 14647 | Damon J. Baldone | No authorizations or records uploaded.<br><br>II.D.4 Exposure chart is incomplete<br><br>III.C. Non-cancer illness-blank | 7/27/2020 | November |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 20

| | | | | III.D. Current symptom treatment section blank, but indicates yes to current symptoms<br><br>III.H. Specialized damages-unanswered<br><br>VI. Medications- blank | | |
|---|---|---|---|---|---|---|
| 7. | Schiano, John | 20-cv-08677 | Hollis Law Firm | No PFS filed | 10/2/2020 | November |
| 8. | Newcombe, Sonja | 20-cv-10274 | Levin Papantonio | No PFS filed | 10/10/2020 | November |
| 9. | Williams, Naomi | 20-cv-08772 | Levin Papantonio | No PFS filed | 9/18/2020 | November |
| 10. | Ware, Johnny | 20-cv-10365 | Levin Papantonio | No PFS filed | 10/20/2020 | November |
| 11. | Thomas, Euric | 20-cv-12440 | Hollis Law Firm | No PFS filed | 11/7/2020 | November |

**(c)    First Listing Cases – Remaining Core Deficiencies:**

The following Plaintiff Fact Sheets contain core deficiencies which remain unresolved. Defendants provided a list including these cases and identified deficiencies to Plaintiffs on December 14, 2020 and met and conferred with Plaintiffs' counsel on December 17, 2020 and have been available for further meet and confers as needed. This is the first time these cases have been listed. Accordingly, Defendants are not requesting orders to show cause with respect to any of the below cases at this time and will continue to meet and confer to resolve these deficiencies.

| | Plaintiff | Civil Action No. | Law Firm | Core Deficiencies | Deficiency Notice Sent |
|---|---|---|---|---|---|
| 1. | Mayle, Carol | 20-cv-8103 | Bernstein Leibhard | See Deficiency Notice – failed to respond to a majority of Section I and Section II. Section IV.A. needs to be supplemented as it appears the information is cut off. No authorizations produced. | 12/9/2020 |
| 2. | Kimbrough, Alessia | 20-cv-08769 | Watts Guerra | No records produced that demonstrate cancer diagnosis | 10/2/20 |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 21

| 3. | Miller, Richard | 20-cv-08950 | Bernstein Liebhard | Authorizations are not signed | 10/5/2020 |
|---|---|---|---|---|---|
| 4. | Witte, Laurence | 1:19-cv-16971 | Matias J. Adrogue, PLLC | II.D.4.c - Failed to respond. - Ambiguous as to dates of exposure. Please clarify<br><br>III.G.a - Failed to respond re Medical expenses.<br><br>XI.A. - Failed to provide properly signed, undated, and completed authorizations. | 2/4/2020 |
| 5. | Delgado Riffenburg, Deborah | 1:20-cv-02133 | Watts Guerra, LLP | Numerous deficiencies and indicates will supplement the vast majority of the fact sheet.<br><br>XI.A - Failed to provide properly signed, undated, and completed authorizations. | 5/18/2020 |
| 6. | Turrey, Jimmy | 1:20-cv-06111 | Law Offices of Terence Sweeney | No medical records or proof of use provided<br><br>II.D.4 Failed to respond to Exposure chart<br><br>III.C.1-2 Non-cancer injuries- blank<br><br>III.C.3 Please describe medications prescribed<br><br>III.E. Failed to provide name of physician who diagnosed your claim of emotional illness<br><br>VIII. Failed to respond to family medical history<br><br>XI.A - Failed to provide properly signed, undated, and completed authorizations. | 8/14/2020 |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 22

| 7. | Lee, Varice | 20-cv-11086 | Watts Guerra | No Amended PFS filed  - see Deficiency Notice | 11/10/2020 |
|---|---|---|---|---|---|
| 8. | Robinson, Rosa Lee | 20-cv-12084 | Linville Johnson | III. G – Failed to Respond – Medical Expenses | 11/20/2020 |
| 9. | Babin, Amanda | 19-cv-14649 | Damon J. Baldone and Associates | I.C.8 Information provided does not match SFC. Please clarify the discrepancy.<br><br>Labelers/Distributors named in SFC but not in PFS.<br><br>I.C.9 Information provided does not match SFC. Please clarify the discrepancy.<br><br>Repackagers named in SFC but not in PFS.<br><br>I.C.10 Failed to respond.<br><br>Start and end date of use for all valsartan products listed.<br><br>I.C.11 Plaintiff appears to have started listing information for 2 more products. If so, please fill in all the information as required, including name of product, dosage, and start and end dates.<br><br>III.G  Failed to provide medical expense information.<br><br>IV.E. Failed to respond – other witnesses.<br><br>V.G. Failed to provide required information for each condition.<br><br>XI.A. 1, 6, 7 Failed to provide properly signed, undated, and completed authorization.<br><br>XI.B.18-19 Failed to respond. | 09/14/2020 |

The Honorable Robert Kugler
The Honorable Joel Schneider
December 21, 2020
Page 23

**(d)     First Listing Cases – Failure to File PFS:**

The following Plaintiffs have failed to file a Plaintiff Fact Sheet by the applicable deadlines. Defendants provided a list including these cases to Plaintiffs on December 14, 2020 and met and conferred with Plaintiffs' counsel on December 17, 2020 and have been available for further meet and confers as needed. This is the first time these cases have been listed on this agenda. Accordingly, Defendants are not requesting orders to show cause with respect to any of the below cases at this time and will continue to meet and confer to resolve these deficiencies.

|  | Plaintiff | Civil Action No. | Law Firm | Deficiencies | PFS Due |
|---|---|---|---|---|---|
| 1. | Hill, Teddy | 20-cv-14278 | Farr, Farr, Emerich, Hackett, Carr & Holmes P.A. | No PFS filed | 12/11/2020 |
| 2. | Trowbridge, Carolyn | 20-cv-8614 | Hollis Law Firm, P.A. | No PFS filed | 09/08/20 |

Respectfully submitted,

Clem C. Trischler

c:     All Counsel of Record (via ECF service)