Exhibit BB

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALSARTAN**<br>**PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Judge<br><br>Honorable Joel Schneider,<br>Magistrate Judge |

## <u>PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO WHOLESALER DEFENDANTS</u>

### <u>TO ALL WHOLESALER DEFENDANTS AND THEIR ATTORNEYS OF RECORD:</u>

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Local Civil Rule 34.1, and in accordance with the Court's prior rulings, Plaintiffs propound the following second set of requests upon each Wholesaler Defendant. These requests are without prejudice to Plaintiffs' rights to serve other requests consistent with Rules 26 and 34.

Plaintiffs and Wholesaler Defendants agree that the requests for production that follow represent the Court-Approved Requests for Production to be answered by the Wholesaler Defendants in accordance with the Court's ruling on discovery issues following argument of the Parties on July 6, 2020, (D.E. 507), and incorporated herein. The Wholesaler Defendants have advised, and Plaintiffs understand, that there may be differences in the type and extent of data available and the type and extent of data available in a reasonably accessible format. Following service of these requests for production, each Wholesaler Defendant shall serve its own individual responses to the requests set forth below, specifying any issues that the Wholesaler Defendant has with responding to the requests. The Parties will meet and confer in good faith on the substance of any such responses, including to the extent necessary to address Plaintiffs' reasonable questions regarding Wholesaler Defendant's answers.

**DEFINITIONS:**

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

 **"Manufacturer Defendants"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for, or the finished dose formulation of, valsartan.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**"Documents"** includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database. ~~For purposes of these discovery requests, "Documents" shall refer only to centrally stored, non-custodial data maintained by the Wholesaler Defendants in the ordinary course of business, and shall not refer to emails or custodial data held by individual employees of the Wholesaler Defendants.~~

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

 **"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Personal Injury Complaint (Dkt. No. 121), including any agents, employees, or predecessor entities.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan" or "Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Wholesaler Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. No. 398), , including any agents, employees, or predecessor entities.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

**INSTRUCTIONS:**

**Non-privileged information:** These Requests seek only information that is not privileged or otherwise protected from disclosure by applicable protection, including but not limited to work product protection or other requirements imposed or protections afforded by applicable law or regulation.  This does not relieve any responding Defendant from serving a privilege log consistent with the Federal Rules of Civil Procedure.

**DOCUMENTS TO BE PRODUCED:**

1. All documents relating to any representation or warranty provided by any manufacturer or seller of VCDs to you or any other downstream purchaser.

2. All documents relating to any representation or warranty provided by or passed on by you to any downstream purchaser.

3. All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with manufacturers, etc.).

4. All agreements relating to your sale of VCDs.

5. All documents reflecting your inventory management policies, practices and procedures.

6. All documents relating to the stock life for VCDs maintained in your own inventories, including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.

7. All documents relating to the stock life for VCDs maintained in your customers' inventories, including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and your proprietary inventory management systems for retail pharmacies (e.g., McKesson InventoryManager, McKesson SupplyManager, Cardinal Inventory Management Solutions, Amerisource ABC Order, etc.).

8. All communications between you and any Manufacturer Defendant relating to your purchase of, or the recalls of, VCDs.

9. All communications between you and any Retail Pharmacy Defendant relating to your sale or, the recalls of, VCDs.

10. Organizational charts or other documents sufficient to show the names, titles, and responsibilities of employees or agents involved in the following functions: (i) the purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and shipping of VCDs; (iv) the recall of VCDS.

11. To AmeriSource only: All documents relating to any policies, practices, or procedures for documents that accompany shipments of VCDs that you purchase, or that you sell. **[To AmeriSource only because they were only Wholesaler Defendant not to produce a "final written policy" on what shipment documents accompany incoming or outgoing VCD shipments.]**

6

Dated: December __, 2020

/s/ Adam Slater
Adam M. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
aslater@mazieslater.com

Ruben Honik
**Golomb & Honik, PC**
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 278-4449
rhonik@golumbhonik.com

Daniel Nigh
**Levin Papantonio**
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7013
dnigh@levinlaw.com

Conlee Whiteley
**Kanner & Whiteley, LLC**
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
c.whiteley@kanner-law.com

## CERTIFICATE OF SERVICE

I certify that on the ___ day of December 2020, I electronically transmitted the attached document to counsel of record for all Wholesaler Defendants.

*/s/ Adam M. Slater*
Adam M. Slater

Exhibit CC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALSARTAN PRODUCTS LIABILITY LITIGATION** **This Document Relates to All Actions** | MDL No. 2875 Honorable Robert B. Kugler, District Judge Honorable Joel Schneider, Magistrate Judge |

## PLAINTIFFS' SECOND AMENDED SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO RETAIL PHARMACY DEFENDANTS

## TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Local Civil Rule 34.1, and in accordance with the Court's rulings at oral argument on December 11, 2019 and December 18, 2019, and in the Order filed on December 13, 2019, as well as the Court's Orders on macro discovery issues filed on November 25, 2019, Plaintiffs propound the following second amended set of requests upon each Retail Pharmacy Defendant. These requests are without prejudice to Plaintiffs' rights to serve other requests consistent with Rules 26 and 34.

Plaintiffs understand and have been advised by the Retail Pharmacy Defendants that the requests that follow represent the Court-Approved Requests for Production to be answered by the Retail Pharmacy Defendants, and are a uniform discovery instrument negotiated by the Retail Pharmacy Defendants at the direction of the Court and follow several rulings by the Court on discovery issues,[1] including but not limited to the Court's ruling on macro discovery following

---

[1] Each request is to be interpreted consistent with the Court's oral rulings at the November 20, 2019 hearing on macro discovery issues; the November 25, 2019 Order on macro discovery issues pertaining to the Manufacturing Defendants (Dkt. 303); the parties' representations as reflected in the record of the December 11, 2019 discovery hearing; and the Court's oral and/or written rulings following the December 11, 2019 discovery hearing, the January 15, 2020 discovery hearing, the January 28, 2020 discovery conference, the February 13, 2020 discovery conference, and the July 6, 2020 macro discovery hearing.

argument of the parties on July 6, 2020. The Retail Pharmacy Defendants have advised, and Plaintiffs understand, that there remain differences in the ability of each Retail Pharmacy Defendant to respond to the requests below, including differences in what data is available, and in the type and extent of data that is available in a reasonably accessible format. Following service of these requests for production, each Retail Pharmacy Defendant shall serve its own individual responses to the requests set forth below, including identification of any specific issues that the Retail Pharmacy Defendant has with the requests. The parties will meet and confer in good faith on the substance of any such responses, to the extent necessary, and to address any deficiencies or Plaintiffs' reasonable questions regarding Retail Pharmacy Defendants' responses.

**DEFINITIONS:**

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"API Manufacturer"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for valsartan.

**"Finished Dose Manufacturer"** includes any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

**"Manufacturer Defendants"** includes API Manufacturers and Finished Dose Manufacturers including any subsidiaries or affiliated entities.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**"Documents"** includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof.

This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form). Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database. ~~For purposes of these discovery requests, "Documents" shall refer only to centrally stored, non-custodial data maintained by the retailer pharmacy in the ordinary course of business and available via reasonable search of available records and in a reasonably accessible format, and shall not refer to documents or data maintained solely by individual stores or pharmacies, or to emails or custodial data held by individual employees of the Retail Pharmacy Defendants.~~

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. 398), including any agents or predecessor entities.

**"TPP"** refers to Third Party Payors, including health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third party payors, and any other health benefit provider in the United States of America and its territories.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan"** or **"Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Retail Pharmacy Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. 398), including any agents, employees, or predecessor entities, to the extent known to the Retail Pharmacy Defendants.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

**INSTRUCTIONS:**

**Non-privileged information:** These Requests seek only information that is not privileged or otherwise protected from disclosure by applicable protection, including but not limited to work product protection or other requirements imposed or protections afforded by applicable law or regulation.  This does not relieve any responding Defendant from serving a privilege log consistent with the Federal Rules of Civil Procedure.

**DOCUMENTS TO BE PRODUCED:**

1. **All documents relating to any representation or warranty provided by any manufacturer, wholesaler, or other seller of VCDs to you directly or indirectly.**

2. **All documents relating to any representation or warranty provided by or passed on by you to any consumer or third-party payor who paid any amount for VCDs sold by you.**

3. **All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with wholesalers, etc.).**

4. **All agreements relating to your sale of VCDs (e.g., contracts with third-party payors, pharmacy benefits managers, etc.).**

5. **All documents reflecting your inventory management policies, practices and procedures pertinent to VCDs.**

6. **All documents relating to the stock life for VCDs maintained in your own inventories (both distribution center and store levels), including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.**

7. **All documents relating to the stock life for VCDs maintained in your inventories (both distribution center and store levels), including but not limited to FIFO, LIFO, JIT,**

turnover ratio, replenishment/re-order triggers, and your proprietary inventory
management systems.

8. All communications between you and any Wholesaler or Manufacturer Defendant
   relating to your purchase of, or the recalls of, VCDs.

9. Organizational charts or other documents sufficient to show the names, titles, and
   responsibilities of employees or agents involved in the following functions:  (i) the
   purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and
   shipping of VCDs; (iv) the recall of VCDS.


Dated: December __, 2020


/s/ Adam Slater
Adam M. Slater                          Ruben Honik
**Mazie Slater Katz & Freeman,**       **Golomb & Honik, PC**
**LLC**                                 1835 Market Street
103 Eisenhower Parkway                  Suite 2900
Roseland, NJ 07068                      Philadelphia, PA 19103
Tel: (973) 228-9898                     (215) 278-4449
aslater@mazieslater.com                 rhonik@golumbhonik.com

Daniel Nigh                             Conlee Whiteley
**Levin Papantonio**                    **Kanner & Whiteley, LLC**
316 South Baylen Street                 701 Camp Street
Pensacola, FL 32502                     New Orleans, LA 70130
Tel.: (850) 435-7013                    (504) 524-5777
dnigh@levinlaw.com                      c.whiteley@kanner-law.com

## CERTIFICATE OF SERVICE

I certify that on the ___ day of December 2020, I electronically transmitted the attached document to counsel of record for all Retail Pharmacy Defendants.

*/s/ Adam M. Slater*
Adam M. Slater

# Exhibit DD

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | Hon. Robert. B. Kugler |
| This Document Relates To:<br>*All Actions* | Civ. No. 19-2875 (RBK/JS) |

**PLAINTIFFS' NOTICE OF VIDEOTAPED DEPOSITION
TO [WHOLESALER] PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:      ADDRESSEE

*Counsel for Defendant XXXXX*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take the deposition upon oral examination of one or more designated corporate representatives with regard to the topics set forth on Exhibit A attached hereto. The deposition(s) will commence on  a date to be determined, at 9:00 a.m., at a location to be determined, and continue from day to day as needed.

The deposition(s) will be taken upon oral examination before an officer authorized to administer oaths and will continue from day to day, until completed. Testimony given during the deposition will be recorded by sound video recording and stenographic means.

DATED this _____ day of December, 2020

**MAZIE SLATER KATZ & FREEMAN, LLC**


By: ___/s/ *Adam M. Slater*_____
          Adam M. Slater
          103 Eisenhower Parkway, Suite 207
          Roseland, New Jersey 07068
          Telephone: 973-228-9898

          ***Attorneys for Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I, Adam M. Slater, hereby certify that on December ___, 2020, I caused true and correct copies of the foregoing to be transmitted via ECF to all counsel having registered an appearance on ECF, with courtesy copies served on counsel for Wholesaler Name, and Defendants' liaison counsel, via email.

DATED this ___ day of December, 2020.

**MAZIE SLATER KATZ & FREEMAN, LLC**

By: ___/s/ *Adam M. Slater*_____
      Adam M. Slater
      103 Eisenhower Parkway, Suite 207
      Roseland, New Jersey 07068
      Telephone: 973-228-9898

      *Attorneys for Plaintiffs*

## EXHIBIT A

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"Manufacturer Defendants"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for, or the finished dose formulation of, valsartan.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Personal Injury Complaint (Dkt. No. 121), including any agents, employees, or predecessor entities.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan" or "Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Wholesaler Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. No. 398), including any agents, employees, or predecessor entities.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

## TOPICS

1.  The testing and testing results of VCDs provided to you, or the testing and testing results of VCDs prepared by or for you.

2.  Your understanding of the cause of any contamination of VCDs with nitrosamines including NDMA.

3.  The extent of the nitrosamine contamination of VCDs, both in terms of the concentration per pill, and across all of the lots/batches.

4.  Your communications with any Manufacturer Defendant, Retail Pharmacy Defendant, or regulatory authority (including but not limited to the FDA) relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

5.  Your communications with any of your customers, or consumers or third-party payors, relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

6.  All oral and written statements (defined to include representations and warranties) that you received from any Manufacturer Defendant regarding quality, purity, content, or contamination issues related to VCDs.

7.  All oral and written statements (defined to include representations and warranties) that you made to or passed on to any customer or purchaser (including, e.g., Retailer Pharmacy Defendants, other retail pharmacies, consumers, or third-party payors) regarding the quality, purity, content, or contamination issues related to VCDs.

8.  Your product recall for VCDs, including who you communicated with, how, about what, and the retention, sequestration, return, or destruction of VCDs.

9.  All credits, indemnification, refunds, and/or penalties paid or provided by you in connection with actual or potential nitrosamine contamination of VCDs.

10. All credits, indemnification, refunds, and/or penalties paid or provided to you in connection with actual or potential nitrosamine contamination of VCDs.

11. Your compliance or non-compliance with cGMPs as it relates to the quality assurance, quality control, and sale of VCDs.

12. Tracing of VCDs purchased by you (e.g., by NDC number, lot, batch, quantity, expiration date, and other metrics), and sold downstream by you for ultimate intended use by consumers in the United States.

13. The pricing of VCDs purchased by you for ultimate sale in the United States.

14.     The pricing of VCDs sold by you for ultimate use in the United States.

15.     The gross and net profits to you from your sale of VCDs in the United States.

16.     The quantity/units of VCDs sold in the United States.

17.     The purchase and sales data produced by you in this litigation (sample documents to be provided ahead of deposition during meet and confer process).

18.     The stock life for VCDs in your inventories, including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems

19.     The stock life for VCDs in your customers' inventories, FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and your proprietary inventory management systems for retail pharmacies

# Exhibit EE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

IN RE: VALSARTAN, LOSARTAN, AND
IRBESARTAN PRODUCTS LIABILITY
LITIGATION

Hon. Robert. B. Kugler

This Document Relates To:

*All Actions*

Civ. No. 19-2875 (RBK/JS)

## PLAINTIFFS' NOTICE OF VIDEOTAPED DEPOSITION
## TO [RETAIL PHARMACY] PURSUANT TO FED. R. CIV. P. 30(b)(6)

TO:    ADDRESSEE

*Counsel for Defendant XXXXX*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take the

deposition upon oral examination of one or more designated corporate representatives with regard

to the topics set forth on Exhibit A attached hereto. The deposition(s) will commence on  a date to

be determined, at 9:00 a.m., at a location to be determined, and continue from day to day as needed.

The deposition(s) will be taken upon oral examination before an officer authorized to

administer oaths and will continue from day to day, until completed. Testimony given during the

deposition will be recorded by sound video recording and stenographic means.

DATED this _____ day of December, 2020

**MAZIE SLATER KATZ & FREEMAN, LLC**


By:  /s/ *Adam M. Slater*
       Adam M. Slater
       103 Eisenhower Parkway, Suite 207
       Roseland, New Jersey 07068
       Telephone: 973-228-9898

       ***Attorneys for Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I, Adam M. Slater, hereby certify that on December ___, 2020, I caused true and correct copies of the foregoing to be transmitted via ECF to all counsel having registered an appearance on ECF, with courtesy copies served on counsel for Wholesaler Name, and Defendants' liaison counsel, via email.

DATED this ___ day of December, 2020.

**MAZIE SLATER KATZ & FREEMAN, LLC**

By:___/s/ *Adam M. Slater*_____
         Adam M. Slater
         103 Eisenhower Parkway, Suite 207
         Roseland, New Jersey 07068
         Telephone: 973-228-9898

         *Attorneys for Plaintiffs*

# EXHIBIT A

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"Manufacturer Defendants"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for, or the finished dose formulation of, valsartan.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Personal Injury Complaint (Dkt. No. 121), including any agents, employees, or predecessor entities.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan" or "Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Wholesaler Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. No. 398), including any agents, employees, or predecessor entities.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

## TOPICS

1.  The testing and testing results of VCDs provided to you, or the testing and testing results of VCDs prepared by or for you.

2.  Your understanding of the cause of any contamination of VCDs with nitrosamines including NDMA.

3.  The extent of the nitrosamine contamination of VCDs, both in terms of the concentration per pill, and across all of the lots/batches.

4.  Your communications with any Manufacturer Defendant, Wholesaler Defendant, or regulatory authority (including but not limited to the FDA) relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

5.  Your communications with any of your customers, or consumers or third-party payors, relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

6.  All oral and written statements (defined to include representations and warranties) that you received from any person from whom you purchased VCDs (including Manufacturer or Wholesaler Defendants) regarding quality, purity, content, or contamination issues related to VCDs.

7.  All oral and written statements (defined to include representations and warranties) that you made to or passed on to any consumer or third-party payor that paid any amount for VCDS regarding the quality, purity, content, or contamination issues related to VCDs.

8.  Your product recall for VCDs, including who you communicated with, how, about what, and the retention, sequestration, return, or destruction of VCDs.

9.  All credits, indemnification, refunds, and/or penalties paid or provided by you in connection with actual or potential nitrosamine contamination of VCDs.

10. All credits, indemnification, refunds, and/or penalties paid or provided to you in connection with actual or potential nitrosamine contamination of VCDs.

11. Your compliance or non-compliance with cGMPs as it relates to the quality assurance, quality control, and sale of VCDs.

12. Tracing of VCDs purchased by you (e.g., by NDC number, lot, batch, quantity, expiration date, and other metrics), and sold downstream by you for ultimate intended use by consumers in the United States.

13. The pricing of VCDs purchased by you for ultimate sale in the United States.

14.    The pricing of VCDs sold by you for ultimate use in the United States.

15.    The gross and net profits to you from your sale of VCDs in the United States.

16.    The quantity/units of VCDs sold in the United States.

17.    The purchase and sales data produced by you in this litigation (sample documents to be provided ahead of deposition during meet and confer process).

18.    The stock life for VCDs in your inventories (both distribution centers and retail stores), including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CIVIL ACTION NUMBER:

19-md-02875-RBK-JS

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION                    TELEPHONIC STATUS and
                                        DISCOVERY CONFERENCE
                                        WITH RULINGS ON PLAINTIFFS'
                                        CUSTODIAN LISTS AND
                                        DOCUMENT REQUESTS

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        December 18, 2019
        Commencing at 11:07 a.m.

**B E F O R E:**                THE HONORABLE JOEL SCHNEIDER,
                                UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S (via telephone)**:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey  07068
        For the Plaintiff

        GOLOMB & HONIK, P.C.
        BY:  RUBEN HONIK, ESQUIRE
             DAVID J. STANOCH, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania  19103
        For the Plaintiff

                Carol Farrell, Official Court Reporter
                     cfarrell.crr@gmail.com
                        856-318-6100

        Proceedings recorded by mechanical stenography; transcript
             produced by computer-aided transcription.

IN RE:   VALSARTAN STATUS/DISCOVERY TELECONFERENCE      24

 1   interest.  There is tremendous public interest in this case.

 2   It has enormous public health consequences -- whether a very

 3   popular drug supplied in the United States was contaminated or

 4   not.  Given the public interest and the health and welfare

 5   implications, when it comes to evaluating the burden to the

 6   defendant in the case, the Court has to take that into

 7   consideration.  It's not just a simple matter of dollars and

 8   cents, but on this particular issue, it really isn't a dollar

 9   and cents issue as far as the Court's concerned.

10          The Court's main concern is, again, whether or not,

11   if we add this person to a pretty hefty custodian list, it's

12   likely or probable that we're going to find something that is

13   not otherwise going to be produced.  I don't think that's the

14   case.  I could be proven wrong in the future.  If there is

15   evidence in that regard, so be it.

16          But in terms of a custodian search for documents, the

17   Court sustains Mr. Goldberg's objections and will remove

18   Mr. Chen from the list, and will approve the list absent his

19   name.

20          I'll make it clear.  The Court is not ruling at this

21   time whether or not Mr. Chen is an appropriate deponent.

22   That's a completely different evaluation that the Court has to

23   consider at the relevant time.  If defendant wants to depose

24   Mr. Chen, we'll deal with the issue at that point.  But in no

25   way, shape, or form should the Court's ruling as to whether or

1   not Mr. Chen is an appropriate custodian be deemed as a ruling

2   as to whether or not he may be deposed in the case.

3          So that's the Court's ruling as to Mr. Chen.  I'm

4   going to approve Exhibit B with the removal of his name from

5   the list.

6          MR. SLATER:  Your Honor, we need to substitute

7   somebody for him.

8          THE COURT:  Do you have a name?

9          MR. SLATER:  I would need a couple hours or an hour

10  or two just so I can talk to somebody, to some people, and

11  just figure out who to substitute.

12         THE COURT:  Okay.  Could you e-mail me that name,

13  Mr. Slater, and I'll add it to Exhibit B, so I can enter this

14  order?

15         MR. SLATER:  Of course.

16         THE COURT:  Thank you.

17         All right.  Is the only issue left the issues

18  regarding the document requests?

19         MR. SLATER:  Your Honor --

20         MR. RUBENSTEIN:  Your Honor, very quickly, this is --

21  sorry.  This is Brian Rubenstein for the Teva defendants.

22         There is no objections with respect to Exhibit D, the

23  list of Teva custodians, but there were just a few names that

24  were misspelled, so we can submit a revised list with the

25  proper spellings of those few names.

# Exhibit FF



Slack Davis Sanger LLP
800.455.8686 // slackdavis.com

November 18, 2020

John Davis
Partner
Austin Office
jdavis@slackdavis.com

Jeff Goeppinger
Ulmer & Berne LLP
jgeoppinger@ulmer.com

Re: Wholesaler Deficiency Letter

Dear Jeff:

I write to you in your capacity as liaison counsel for Wholesaler Defendants regarding the productions of Defendants McKesson, Cardinal, and AmeriSource Bergen in response to the court-approved requests for the production of documents ("RFPDs"). (Dkt. No. 509-2.) Counsel for Cardinal and AmeriSource Bergen have advised Plaintiffs' counsel that their respective productions are complete, and the Court has directed McKesson to complete its production by November 25, 2020.  Plaintiffs have reviewed the productions and have identified a number of deficiencies, catalogued herein.

First, it appears Defendants have not produced any documents at all in response to a number of the RFPDs:

- McKesson appears not to have produced any documents in response to RFPDs Nos. 1-11, 16-18, and 20-21. Plaintiffs recognize that McKesson intends to produce more documents but nevertheless notes the deficiency so that McKesson can ensure these documents are produced in the forthcoming production.
- Cardinal appears not to have produced any documents in response to RFPDs Nos. 4, 6-11, 16, and 20.
- AmeriSource Bergen appears not to have produced any documents in response to RFPDs Nos. 4-6, 8-9, 11, 16-17, 20.


Second, it appears that Cardinal and AmeriSource have improperly redacted various agreements entered into between themselves and the Manufacturer Defendants. These documents are highly relevant, and Plaintiffs are entitled to unredacted versions of these agreements to be able to place in context the unredacted language.

- For Cardinal, examples include documents from the following bates range: Card291-295 (Actavis); Card296-297 (Actavis); Card298-303 (AHP); Card304-310 (Auromedics Pharma LLC); Card311-312 (Aurobindo); Card313-314 (Camber); Card315-319 (Camber); Card320-321 (Torrent); Card322-345 (Mylan); Card346-347 (Mylan); Card348-354 (Mylan); Card355-365 (Red Oak/All Suppliers?); Card366-367 (Solco);

6001 Bold Ruler Way, Suite 100
Austin, TX 78746
t. 512.795.8686 //  f. 512.795.8787

3500 Maple Avenue, Suite 1250
Dallas, TX 75219
t. 214.528.8686  //  f. 214.528.6989

100 Lexington Street, Suite 70
Fort Worth, TX 76102
t. 817.288.8988 //  f. 817.288.8999





Slack Davis Sanger LLP
800.455.8686 // slackdavis.com

Card368-373 (Solco); Card374-380 (Teva); Card381-383 (Teva); Card384-393 (Teva); Card394-396 (Teva); Card397-401 (Torrent); Card402-403 (Torrent).

- For AmeriSource Bergen, examples include documents from the following bates range: ABC243 (Actavis); ABC244 (Aurobindo); ABC245 (AvKare); ABC246 (Camber); ABC247 (Major); ABC248 (Mylan); ABC249 (Solco); ABC250-251 (Teva); ABC252 (Torrent).

McKesson has failed to produce any documents evidencing or consisting of agreements between itself and Manufacturer Defendants. Plaintiffs look forward to seeing these in unredacted form in McKesson's forthcoming production.

To the extent there are other agreements consisting of warranties made by manufacturers to Wholesaler Defendants and from you to Retail Pharmacy Defendants or other retailers (RFPDs Nos. 4 and 6) and/or indemnity-related agreements (RFPD No. 21), Plaintiffs expect those to be produced and produced in unredacted form.

Third, Plaintiffs have also not seen any documents relating to employees with recall responsibilities. None of the Wholesaler Defendants has produced organizational charts even though each appears to have an email list serv related to recalls. For instance, AmeriSource and Cardinal each responded to Request No. 16 with a narrative answer (as if this were an interrogatory) instead of produced documents. Please produce responsive documents. Further, please identify the individuals who are or were at all relevant time periods on the above-referenced list servs. For example, for McKesson and AmeriSource Bergen, these email addresses are: ProductRecall@McKesson.com; recall@amerisourcebergen.com.

Fourth, Defendant Cardinal has not produced any emails in its production. Please confirm that all responsive recall-related, testing and inspection-related, complaint-related, as well as any other responsive correspondence was not made through email, or otherwise produce those documents as soon as practicable.

Fifth, we are troubled by AmeriSource's written responses indicating that it does not possess certain documents or does not understand what a given requesting is asking for. For example, AmeriSource claims that it does not have "final written policies" in response to Request No. 4. For Request No. 12, AmeriSource claims that it does not understand what the phrase "specifically governing the VCD recalls" means, and claims in response to Request No. 18 that the request "appears to be based on incorrect premises concerning the requirements of the DSCSA." All of these responses are improper. As you know, the parties met and conferred on the precise wording of each request *for months*; the parties briefed the matter before the Court; and the parties argued each request to the Court. The time to raise concerns over purportedly ambiguous phrases was during that lengthy process, not after the Court approved and entered the parties' agreed-upon requests. Similarly, AmeriSource cannot engage in a game of 'gotcha' by negotiating the production of "final written policies," but then revealing months later in its



Slack Davis Sanger LLP
800.455.8686 // slackdavis.com

written responses that no "final written policies" exist.  AmeriSource's response is all the more unusual given that its competitor and co-Defendant, Cardinal, produced and identified several responsive policies.  It's other competitor and co-Defendant, McKesson, stated it will produce final written policies.  Please amend all of these responses.

Finally, as discussed on November 3, Wholesaler Defendants' written objections to Request Nos. 5 and 7 are not well taken.  Again, throughout the parties' lengthy meet and confer process, briefing, and argument, not once did Wholesaler Defendants intimate that the requests they themselves had previously said were acceptable would be objected to in formal objections on the basis of DSCSA provisions.  Wholesaler Defendants' failure to raise this objection in the months-long lead-up to, and during, the oral argument before the Court constitutes a waiver of this objection.  While Plaintiffs are willing to work with you on a potential compromise, having not heard from you for over two weeks, we have no choice but to insist that Wholesaler Defendants withdraw these objections, or Plaintiffs will have no choice but to take this matter up with the Court.

We look forward to meet-conferring on or hearing back from you these items.


Regards,

/s/

John Davis

*Via email*

Cc: Valsartan PEC

3

# Exhibit GG

Subject: RE: In re valsartan - wholesaler meet-confer

Date:    12/17/2020 2:07 PM

From:    "Geoppinger, Jeff" <jgeoppinger@ulmer.com>

To:      "John Davis" <jdavis@slackdavis.com>

Cc:      "David J. Stanoch" <d.stanoch@kanner-law.com>, "Conlee Whiteley" <c.whiteley@kanner-law.com>, "Davis, D'Lesli M." <dlesli.davis@nortonrosefulbright.com>, "Norris, Ellie" <ellie.norris@nortonrosefulbright.com>, "Mimi Dennis" <MDennis@crowell.com>, "Davis, John" <JDavis@crowell.com>, "Bresnahan, Luke" <LBresnahan@crowell.com>

---

John:

I am following up on our discussion regarding Plaintiffs' request that Wholesaler Defendants produce unredacted supplier agreements and organizational charts for the "recall department" or the "recall group," if any.   Wholesalers note that Plaintiffs have now sent a second set of draft RFPs explicitly seeking production of those agreements (See RFP Nos. 3 and 10 in draft RFPs sent on December 8, 2020).  As you likely know, those RFPs are part of a broader ongoing discussion of the discovery schedule and where Downstream Defendants fit into that schedule.  It is our understanding that the propriety and timing of Wholesaler Defendants' responses to those draft RFPs for supplier agreements and organizational charts (as well as other RFPs) will be subject to further discussion after a determination has been made on the discovery schedule. If that understanding is incorrect and Plaintiffs intend to ask the Court to compel production of those documents pursuant to Plaintiffs' Second Amended Set of Requests for Production of Documents to Wholesaler Defendants at the conference next week (which Wholesaler Defendants contend is improper given that those documents were not previously requested, as evidenced by the recent draft RFPs), please let me know.

With respect to the issue of Wholesaler Defendants' responses to Plaintiffs' RFPs 5 and 7 and the production of exemplars of T3 data by Wholesaler Defendants, as you know from Wholesaler Defendants' written responses to RFPs 5 and 7 and from the Drug Supply Chain Security Act ("DSCSA"), Wholesaler Defendants are prohibited by statute from disclosing T3 data in discovery.  See DSCSA, section 360eee-1(c)(1)(A)(v)(II).  That prohibition is pursuant to a congressionally enacted statute that places a legal obligation on Wholesaler Defendants.  Wholesaler Defendants cannot unilaterally make exceptions to the requirements of the DSCSA, nor waive those requirements.

Nevertheless, as we have discussed, Wholesaler Defendants are amenable to a practical solution regarding provision of exemplar T3 data in a manner that does not violate Wholesaler Defendants' DSCSA obligations.  That includes determining whether Manufacturer Defendants and Pharmacy Defendants have produced documents that include T3 data in response to Plaintiffs' requests for production, as those Defendants are not prohibited from disclosing T3 data by the DSCSA.  We have made inquiries in that regard with those Defendants, and it is Wholesaler Defendants' understanding that those Defendants have produced documents to Plaintiffs that include exemplars of shipping documents that may contain T3 information.  However, those documents have not been produced to Wholesalers, so we cannot point Plaintiffs to them specifically.  Presumably,

however, Manufacturer and Pharmacy Defendants' written discovery responses (which Wholesalers also do not possess) include identification of the documents responsive to particular requests. Plaintiffs can use those references to locate and examine the documents identified by Manufacturer and Pharmacy Defendants and evaluate whether they include the T3 data. For your reference, the T3 data is made up of the transaction information, the transaction history, and the transaction statement. The transaction information fields are the proprietary or established name of the product, the strength and dosage form, the NDC number, the container size, the number of containers, the lot number of the product, the date of the transaction, the date of the shipment (if more than 24 hours after the date of the transaction), the business name and address of the person from whom ownership is being transferred, and the business name and address of the person to whom ownership is being transferred. The transaction history is a statement that includes the transaction information for each prior transaction going back to the manufacturer of the product, and the transaction statement is a statement that the entity transferring ownership has complied with each applicable subsection of the DSCSA Sec. 581(27)(A)-(G).

Armed with this information, please check the documents that have been produced to you and advise whether Plaintiffs have identified exemplar documents containing the T3 data passed from Manufacturers to Wholesalers or received by Pharmacy Defendants. If those documents have been produced, it stands to reason that there is no need to obtain the same exemplar documents/data from Wholesaler Defendants in contravention of their obligations to keep that specific data confidential per the DSCSA.

If you would like to discuss any of this further, please call me at your convenience at the number below. Thank you.

Jeff

------
Jeffrey D. Geoppinger
Ulmer & Berne LLP
p 513.698.5038
c 513.290.7902

---

**From:** John Davis <jdavis@slackdavis.com>
**Sent:** Tuesday, December 15, 2020 9:31 AM
**To:** Geoppinger, Jeff <jgeoppinger@ulmer.com>
**Cc:** David J. Stanoch <d.stanoch@kanner-law.com>; Conlee Whiteley <c.whiteley@kanner-law.com>; Davis, D'Lesli M. <dlesli.davis@nortonrosefulbright.com>; Norris, Ellie <ellie.norris@nortonrosefulbright.com>; Mimi Dennis <MDennis@crowell.com>; Davis, John <JDavis@crowell.com>; Bresnahan, Luke <LBresnahan@crowell.com>
**Subject:** Re: In re valsartan - wholesaler meet-confer

Jeff, where do we stand on this? Thanks,

John

**From:** John Davis <jdavis@slackdavis.com>
**Date:** Wednesday, December 9, 2020 at 2:01 PM
**To:** "Geoppinger, Jeff" <jgeoppinger@ulmer.com>
**Cc:** "David J. Stanoch" <d.stanoch@kanner-law.com>, Conlee Whiteley <c.whiteley@kanner-law.com>, "Davis, D'Lesli M." <dlesli.davis@nortonrosefulbright.com>, "Norris, Ellie" <ellie.norris@nortonrosefulbright.com>, Mimi Dennis <MDennis@crowell.com>, "Davis, John" <JDavis@crowell.com>, "Bresnahan, Luke" <LBresnahan@crowell.com>
**Subject:** Re: In re valsartan - wholesaler meet-confer

Hi Jeff,
Do you have an update for us on the below items? Thanks,

John

**From:** "Geoppinger, Jeff" <jgeoppinger@ulmer.com>
**Date:** Wednesday, December 2, 2020 at 5:16 PM
**To:** John Davis <jdavis@slackdavis.com>
**Cc:** "David J. Stanoch" <d.stanoch@kanner-law.com>, Conlee Whiteley <c.whiteley@kanner-law.com>, "Davis, D'Lesli M." <dlesli.davis@nortonrosefulbright.com>, "Norris, Ellie" <ellie.norris@nortonrosefulbright.com>, Mimi Dennis <MDennis@crowell.com>, "Davis, John" <JDavis@crowell.com>, "Bresnahan, Luke" <LBresnahan@crowell.com>
**Subject:** RE: In re valsartan - wholesaler meet-confer

John and all:

Thanks for the good call yesterday. We've received your email below and respond to set forth with a little more specificity what we believe was concluded with regard to the universe of issues and the next steps to hopefully bring matters to a conclusion. You raised Plaintiffs' current "asks" with regard to Plaintiffs' Second Amended Set of Requests for Production to Wholesaler Defendants ("Wholesaler RFPs") as set forth below, with the exception of McKesson's latest production on which you will circle back. Counsel for Wholesaler Defendants agreed to discuss these new "asks" with their clients and schedule another meet and confer with you.

**Unredacted Supplier Agreements**: You believe that with regard to Wholesaler RFP 4, Plaintiffs' request for Wholesalers' "final written policies, if any, that set forth the shipment documents you require be provided to you by a Manufacturer Defendant" includes a request for the production of unredacted copies of Wholesaler Supplier Agreements with Manufacturer Defendants. You also believe that the section heading in the Wholesaler RFPs reading "warranties/statements (downstream)" requests production of Supplier Agreements, and that Wholesaler RFP 21, requesting production of "final written indemnification agreements," also requests production of unredacted Supplier Agreements in full. You also noted that the unredacted Agreements produced by AmerisourceBergen (in response to Wholesaler RFP 21) were acceptable, though those are standalone documents rather than unredacted Supplier Agreements and may not be available from each Wholesaler Defendant.

Wholesaler Defendants do not agree with the contention that Wholesaler RFPs 4 or 21 include a request for production of unredacted Supplier Agreements. Wholesaler RFP 4 requests "documents sufficient to identify [] final written policies" and RFP 21 specifically requests "final written indemnification agreements". Nonetheless, counsel for Wholesaler Defendants will discuss your request with their clients.

**Testing:** One thing we didn't discuss yesterday but that was mentioned in your letter of November 18 are Wholesaler RFPs 8 and 9 regarding testing. In their written responses Wholesaler Defendants each stated that they did not receive testing documents or test VCDs and that they are not in possession of responsive documents. You did not raise those responses yesterday and we understand any issues related to Wholesaler RFPs 8 and 9 are resolved.

**Recall Employees**: You believe that Wholesaler RFP 16, which seeks "documents sufficient to identify a list of significant employees involved in managing the recall of VCDs," includes a request for production of an organizational chart for the "recall department" or the "recall group," if any. You also believe Wholesaler RFP 16 requires Wholesaler Defendants to "identify the individuals who are or were at all relevant time periods" on a listserv about recalls identified by Plaintiffs in certain Wholesaler Defendants' document productions. Wholesaler Defendants again do not agree that Wholesaler RFP 16 includes a request for production of any organizational chart or the identification of all persons on any listserv distribution list, because, among other reasons, Plaintiffs' initial discovery requests included RFPs specifically referencing organizational charts but the final negotiated RFPs contain no such language. Nonetheless, counsel for Wholesaler Defendants will discuss your request with their clients.

**T3 Data:** With regard to T3 information, you requested that counsel for Wholesaler Defendants contact counsel for Manufacturer Defendants and Retail Pharmacy Defendants and attempt to locate T3 information exemplars produced by those Defendants, and then asked that we confirm whether the fields are the same for Wholesalers' T3 data. When asked if that will resolve the issue, you indicated it might or might not, and the parties would discuss further.

We are now in the process of following up with Wholesalers on the above "asks." If you want to send us some proposed available dates for a further meet and confer, please do so. Thanks.

Jeff

**Jeffrey D. Geoppinger**

**Ulmer**

DIRECT: 513.698.5038
DIRECT FAX: 513.698.5039
MOBILE: 513.290.7902
jgeoppinger@ulmer.com | bio | vcard



**Ulmer & Berne LLP**
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
MAIN: 513.698.5000
Ulmer.com



ULMER & BERNE LLP - CONFIDENTIAL COMMUNICATION
This email and any files transmitted with it are confidential and are intended solely for the use of the individual or entity
to whom it is addressed. If you are not the intended recipient or the person responsible for delivering the email to the
intended recipient, please be advised that you have received this email in error and that any use, dissemination,
forwarding, printing, or copying of this email and any file attachments is strictly prohibited. If you have received this
email in error, please immediately notify us by telephone at 216.583.7000 or by reply email to the sender. Please
delete this email and its attachments from your system and do not retain any copies. You will be reimbursed for
reasonable costs incurred in notifying us.

**From:** John Davis <jdavis@slackdavis.com>
**Sent:** Tuesday, December 1, 2020 3:05 PM
**To:** Geoppinger, Jeff <jgeoppinger@ulmer.com>
**Cc:** David J. Stanoch <d.stanoch@kanner-law.com>; Conlee Whiteley <c.whiteley@kanner-law.com>
**Subject:** In re valsartan - wholesaler meet-confer

Jeff,

Thanks for the call today. A few action items as a result of our conversation.

- I will review McKesson's latest production and circle back on any issues.
- You will get back to us on whether your clients will produce unredacted supply and/or indemnity agreements, as well as the position of each wholesaler on producing warranty documents from manufacturers regardless of whether those exist in the aforementioned agreements or are found in separate agreements.
- You will investigate whether supply agreements or similar agreements contain information responsive to other of the RFPDs (e.g., No. 4, No. 8, or No. 9) and if any produced agreements will be re-produced in unredacted, or any less redacted, form.
- You will consult with your clients and get back to us on No. 16 (recall employees) with more information.
- ABC is to confirm intention of prefatory sentence in response to No. 18, specifically whether any responsive documents (e.g., predecessor policies/procedures in effect prior to the DSCSA) are being withheld.
- T3 data- wholesalers will get back to us on whether the exemplars or data produced by the Manufacturer Defendants, and any exemplars or data produced by Retail Pharmacy Defendants, would constitute the same T3 data in wholesalers' possession; if so, parties will discuss potential compromise (e.g., stipulation, etc.) to seeking T3 data from wholesalers directly

Look forward to connecting again.



**John R. Davis**
*Partner*
**Slack Davis Sanger LLP**
p: 512.795.8686
a: 6001 Bold Ruler Way, Suite 100, Austin, Texas 78746

w:  www.slackdavis.com   e:  jdavis@slackdavis.com

CONFIDENTIALITY NOTICE:  This communication is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If you are not the intended recipient, you are notified that any use, dissemination, distribution, or copying of the communication is strictly prohibited.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.