**BARNES & THORNBURG LLP**

2029 Century Park East, Suite 300<br>
Los Angeles, CA 90067-2904 U.S.A.<br>
(310) 284-3880<br>
Fax (310) 284-3894<br>
<br>
www.btlaw.com

Sarah E. Johnston
Partner
310.284.3798
sarah.johnston@btlaw.com

December 22, 2020

**Via ECF**

The Honorable Robert Kugler
Senior United States District Judge
USDC, DISTRICT OF NEW JERSEY

The Honorable Joel Schneider
United States Magistrate Judge
USDC, DISTRICT OF NEW JERSEY

      Re:    *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
               USDC, District of New Jersey, No. 1:19-md-2875-RBK-JS

Dear Judge Kugler and Judge Schneider:

      The Downstream Defendants submit this supplemental letter to address certain statements and misrepresentations made by plaintiffs in their letter filed with the Court yesterday, December 21, 2020. (*See* Dkt. No. 685.) Specifically, in their letter, Plaintiffs (1) state that the Downstream Defendants have "refused to meet and confer" with Plaintiffs regarding the draft supplemental requests for production and draft 30(b)(6) notices prepared by Plaintiffs; and (2) that the Downstream Defendants have waived objections to Plaintiffs' draft discovery, such that the Court should enter the drafts as final at tomorrow's case management conference. (*Id.* at 14-15.)

      Plaintiffs' briefing on this issue is inaccurate, and mischaracterizes the current status of discovery negotiations with the Downstream Defendants.

      First, with respect to the Downstream Defendants' efforts to meet and confer with Plaintiffs, it simply is not the case that the Downstream Defendants have refused to meet and confer with Plaintiffs. Beginning with an initial meet and confer with Plaintiffs' counsel on December 15, 2020, representatives for the Retail Pharmacy Defendants and the Wholesaler/Distributor Defendants have conferred with representatives from the Plaintiff Executive Committee at least five times regarding Plaintiffs' proposed discovery on the Downstream Defendants, both as a standalone issue, and as it relates to greater discussions with Plaintiffs' and defense leadership regarding case management scheduling and fact discovery cutoffs affecting all tiers of the supply chain. **The parties' prior meet and confers, which have been ongoing and conducted in good faith by the Downstream Defendants, are specifically acknowledged by Plaintiffs on page 1 of their own letter to the Court.** (Dkt. No. 685 at 1.) To state or insinuate that the Downstream Defendants have done anything other than meet and confer

The Honorable Robert Kugler
The Honorable Joel Schneider
December 22, 2020
Page 2

repeatedly with Plaintiffs regarding the complex scheduling and discovery issues raised by Case Management Order 22, as it concerns Downstream Defendant discovery, mischaracterizes the diligent efforts the parties have made to address these issues in the time since the last status conference.

Plaintiffs' assertion that the Downstream Defendants have waived their objections to Plaintiffs' draft discovery documents is similarly inaccurate and ignores the extensive discussions the parties have had with respect to discovery and case management issues in the past two weeks. The Downstream Defendants have been clear with Plaintiffs—and with the Court at the December 9 conference—that they have concerns regarding the propriety of the draft discovery, and with the scope and substance of Plaintiffs' draft supplemental document requests and deposition notice topics. These concerns were communicated to Plaintiffs' counsel on the afternoon of December 15. On that same call, however, Plaintiffs' counsel and counsel for the Downstream Defendants' *also* discussed – consistent with both sides' prior statements to the Court – that the timing of the drafts served by Plaintiffs was of particular concern, given that it afforded the parties limited time to confer on the discovery, which necessitates buy-in of more than ten defendants, and to complete the discovery, given the current April 1 general fact discovery cut-off. Counsel further agreed that it had always been both Plaintiffs' and the Downstream Defendants' understanding that discovery as to the downstream defendants would trail behind discovery on the manufacturer defendants, and that neither side had contemplated that discovery concluding by April 1. (*See* Transcript of September 30, 2020 Status Conference at 24:7-15 (discussion between the Court and Plaintiffs' counsel that initial deposition discovery would focus on the API and finished does manufacturers)). The parties therefore agreed to meet and confer on possible modifications to the discovery schedule to reflect both Plaintiffs' and the Downstream Defendants' original intentions with respect to Downstream Defendant discovery.

As noted above, conversations since then have focused on issues concerning the timing of future meet and confers regarding the discovery, and the timing that any additional Downstream Defendant discovery would start – specifically, that discovery from the Downstream Defendants would occur after April 1. Although those discussions have *not* focused on the substance of Plaintiffs' draft requests for production and draft 30(b)(6) notices, that reflects only what the Downstream Defendants' understood to be a collective effort by Plaintiffs and Defendants to negotiate the scheduling issues up front. At no point have the Downstream Defendants ever suggested that they were waiving their prior concerns regarding the scope and substance of Plaintiffs' proposed drafts. And, at no point prior to filing their letter brief with the Court did Plaintiffs ever suggest that they would interpret or construe the parties' discussions to amount to a waiver of the Downstream Defendants' right to object to or, as has previously been this Court's preference, at least negotiate the scope and substance of the discovery itself.[1] Given the

---

[1] It bears mention that Plaintiffs' request to the Court would have the effect of affording the Downstream Defendants less time to respond to Plaintiffs' proposed *draft* discovery than they would otherwise have had under the Federal Rules of Civil Procedure, which affords a party at least 30 days to serve responses and objections. The Downstream Defendants have never understood that they had been served with final discovery instruments, and appreciate the Court's preference that draft discovery be negotiated between the parties, but highlight this disparity only to underscore how abbreviated the timeline has been, to date, and how prejudicial it would be to grant Plaintiffs' request at this time, particularly given the Downstream Defendants' efforts to meet and confer with Plaintiffs up to this point.

**BARNES & THORNBURG** LLP

The Honorable Robert Kugler
The Honorable Joel Schneider
December 22, 2020
Page 3

Downstream Defendants' diligent efforts to confer with Plaintiffs regarding discovery scheduling and case management issues, and given that the parties have since reached an agreement on a proposal to modify the discovery deadlines in keeping with their original expectations regarding downstream discovery being staggered behind manufacturer discovery, the Downstream Defendants submit that Plaintiffs' request regarding the draft supplement requests for production and draft 30(b)(6) notices as to the Downstream Defendants should be denied.

        Respectfully submitted,

        Sarah E. Johnston

cc:    All Counsel of Record (via ECF Service)