1

2

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

4

5 ━━━━━━━━━━━━━━━━━━━━━━                 CIVIL ACTION NUMBER:

IN RE:  VALSARTAN, LOSARTAN,
6 AND IRBESARTAN PRODUCTS                1:19-md-02875-RBK-JS
LIABILITY LITIGATION

7                                        STATUS CONFERENCE
                                         (Via telephone)
8 ━━━━━━━━━━━━━━━━━━━━━━

          Tuesday, December 22, 2020
9         Commencing at 10:05 a.m.

10 B E F O R E:          THE HONORABLE JOEL SCHNEIDER,
                         UNITED STATES MAGISTRATE JUDGE
11            (Page 64) THE HONORABLE ROBERT B. KUGLER,
                        UNITED STATES DISTRICT JUDGE

12 A P P E A R A N C E S:

13

          MAZIE SLATER KATZ & FREEMAN, LLC
14        BY:  ADAM M. SLATER, ESQUIRE
          103 Eisenhower Parkway
15        Roseland, New Jersey 07068
          For the Plaintiff
16
          GOLOMB & HONIK PC
17        BY:  RUBEN HONIK, ESQUIRE
               DAVID JOHN STANOCH, ESQUIRE
18        1835 Market Street, Suite 2900
          Philadelphia, Pennsylvania 19103
19        For the Plaintiff
20        KANNER & WHITELEY LLC
          BY:  CONLEE S. WHITELEY, ESQUIRE
21        701 Camp Street
          New Orleans, Louisiana 70130
22        For the Plaintiff

23          Karen Friedlander, Official Court Reporter
                   friedlanderreporter@gmail.com
24                     (856) 756-0160

25        Proceedings recorded by mechanical stenography;
          transcript produced by computer-aided transcription.

A P P E A R A N C E S: - CONTINUED

LEVIN PAPANTONIO
BY:  DANIEL A. NIGH, ESQUIRE
316 S. Baylen, Suite 600
Pensacola, Florida 32502
For the Plaintiff

GOLDENBERG LAW PLLC
BY:  MARLENE J. GOLDENBERG, ESQUIRE
800 Lasalle Avenue
Suite 2150
Minneapolis, Minnesota 55402
For the Plaintiff

DUANE MORRIS LLP
BY:  SETH A. GOLDBERG, ESQUIRE
30 S. 17th Street
Philadelphia, Pennsylvania 19103
For the Defendant ZHP and the Joint Defense Group

GREENBERG TRAURIG LLP
BY:  VICTORIA LOCKHARD, ESQUIRE
     STEVEN HARKINS, ESQUIRE
     LORI COHEN, ESQUIRE
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
For the Defendants, Teva Pharmaceutical Industries Ltd.,
Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
Pharma, Inc.

ULMER & BERNE LLP
BY:  JEFFREY DANIEL GEOPPINGER, ESQUIRE
600 Vine Street
Suite 2800
Cincinnati, OH 45202
For the Defendant, AmerisourceBergen

BARNES & THORNBURG LLP
BY:  SARAH E. JOHNSTON, ESQUIRE
2029 Century Park East, Suite 300
Los Angeles, CA 90067-2904
For the Defendant, CVS Health Co.

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
BY:  CLEM C. TRISCHLER, ESQUIRE
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
For the Defendant Mylan and the Joint Defense Group

1

A L S O   P R E S E N T:

2

3       Judge Vanaskie

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (ALL PARTIES VIA TELEPHONE, December 22, 2020,

2    10:08 a.m.)

3    JUDGE SCHNEIDER:  This is Judge Schneider.  We're on

4    the record in the Valsartan MDL 19-2875.  Just like in the

5    past, if you're not speaking, could you please put your phone

6    on mute, because it sounds like there's some interference

7    right now.

8    We'll get the entries of appearance of the people who

9    intend to speak.  I know there's 49 or more people on the

10    phone.  I think we only need for the record whoever is going

11    to speak, lead counsel.  But if anyone else wants to put their

12    appearance on the record, that's fine, and then we'll proceed.

13    So starting with the plaintiffs, can you enter your

14    appearances, please.

15    MR. SLATER:  Yes.  Good morning, Your Honor, Adam

16    Slater on behalf of the plaintiffs.

17    MR HONIK:  Good morning, Your Honor, Ruben Honik for

18    plaintiffs.

19    MR. NIGH:  Good morning, Your Honor, Daniel Nigh for

20    plaintiffs.

21    MS. WHITELEY:  Good morning, Your Honor, Conlee

22    Whiteley on behalf of plaintiffs.

23    JUDGE SCHNEIDER:  And defendants.

24    MR. GOLDBERG:  Good morning, Your Honor, Seth

25    Goldberg from Duane Morris on behalf of the ZHP parties and

1  defendants.

2        MS. LOCKARD:  Good morning, Your Honor, Victoria

3  Lockard on behalf of the Teva entities and the defense group.

4  Also Lori Cohen is on as well as Steve Harkins from GT.

5        MR. TRISCHLER:  Good morning, Your Honor.  Sorry.

6  Good morning, Your Honor, this is Clem Trischler for the Mylan

7  entities and the defense group.

8        MR. GEOPPINGER:  Good morning, Your Honor, this is

9  Jeffrey Geoppinger for AmerisourceBergen and the wholesaler

10  defendants.

11        MS. JOHNSTON:  Good morning, Your Honor, Sarah

12  Johnston on behalf of the retailer and pharmacy defendants,

13  CVS Pharmacy, Inc., and Rite Aid Corporation.

14        JUDGE SCHNEIDER:  Okay.  I think we have the entries

15  of lead counsel.  I just want to inform you, Counsel, that

16  Judge Vanaskie is on the phone.  He's going to listen in and

17  see how things go on these conference calls, as well as -- I

18  don't know if Judge Williams is on the call yet, but I expect

19  Judge Williams will join us in a matter of moments.

20        As we've been doing in the past, we'll address the

21  letter -- the issues that I typically handle in the early part

22  of this call.  Judge Kugler is obviously up to date on what

23  happens, he's read the letters, and I anticipate that when

24  we're done with the issues that we have to deal with, we'll

25  take a very short break, we'll update Judge Kugler and then

1   he'll join us and deal with any issues that Judge Kugler has

2   to address.

3          Before we get into the substance of the issues in the

4   parties' letters, which have been received and read, I just

5   want to make sure we're all on the same page in terms of the

6   schedule moving forward.

7          There's a lot of work to be done in the short term,

8   as you know, but I think things are well in place to move

9   things along and I'll just go through with you my notes on the

10  schedule moving forward, and if anyone has any different

11  understanding, please let me know.

12         I'll start with today.  Sometime today the

13  manufacturing defendants are going to identify the witnesses

14  who are going to be produced in response to the 30(b)(6)

15  witness deposition notices that have been Court approved as

16  well as the topics that they're going to address.

17         By December 31st, the plaintiffs are going to

18  disclose the types of cancer at issue in the case.

19         In order to address, as best as I can, the

20  third-party subpoena issues, I scheduled a separate call just

21  on January 5th at 2 o'clock just to deal with that motion to

22  quash issues, and I suppose as long as we're together, any

23  other miscellaneous issues the parties want to address.

24         We have a call scheduled on January 13th, our typical

25  mid-month status call.  After that, depositions are required

1    to be started on January 19th, the day after Martin Luther

2    King day.  I guess the correct way to just phrase it is --

3    you're free to start depositions earlier than that date, but

4    they shall be started no later than that date.

5              And then last, it's not on the schedule right now,

6    but I think you know about it, the January status conference

7    will be held on January 27th, the last Wednesday of the month.

8              So going forward, Counsel, that's the schedule the

9    Court knows about.  The Court is aware of the different

10   motions that have been filed that need to be addressed.  There

11   is a motion to amend filed by the plaintiffs, Docket No. 669,

12   and then there's the -- Judge Williams will handle that, the

13   return date is after I'm gone.  The third-party subpoena

14   motions and issues, I'll deal with them as best as I can on

15   the January 5th phone call.

16             One of the questions I had and maybe you can help the

17   Court with this, is I saw that Master Complaints were filed in

18   the Losartan and Irbesartan matters.  I think pursuant to

19   prior orders in the case, responses to their -- to those

20   motions are stayed.  I've already indicated that if the

21   plaintiffs' request short form Complaints be filed, if there's

22   going to be multiple Losartan and Irbesartan cases, they will

23   need to be forwarded to the defendant, meet and confer about

24   any disputes and present the final, or the final disputed

25   version to the Court to resolve any objections before that

1  form is approved by the Court.

2          Mr. Goldberg, for the defendants, or whoever wants to

3  speak to it, is there anything the Court needs to address, at

4  least in the short term about the Losartan and Irbesartan

5  Master Complaints?

6          MR. GOLDBERG:  Your Honor, I don't think there's

7  anything that we need to address today.  I know the defendants

8  are evaluating those Master Complaints and some of the issues

9  related to them, in particular, how the stipulation for

10 dismissal of peripheral defendants that we've been using in

11 Valsartan might be used with respect to Irbesartan and

12 Losartan, but we have not discussed that with plaintiffs yet.

13 So I think we will -- that's one thing we'll be discussing

14 with them.  But for right now, I think we're still evaluating

15 the Master Complaint.

16          JUDGE SCHNEIDER:  I think that's fine.  I don't think

17 there's any prejudice to the defendants since the deadline to

18 respond to the Complaint is stayed.  So you can just sit tight

19 and do your meet and confers.

20          As Judge Kugler indicated, he expects to enter a

21 series of decisions on the various motions to dismiss, so that

22 might provide some guidance about the legal issues that are

23 going to be viable with regard to the Losartan and Irbesartan

24 Master Complaints.

25          From the plaintiffs' perspective, do you have any

 1   sense right now if we're going to see multiple Losartan and

 2   Irbesartan complaints similar to what we're seeing with

 3   Valsartan?

 4         MR. SLATER:  Hello, Your Honor, it's Adam Slater.

 5   It's hard to say how many.  We expect some.  I don't believe

 6   that we expect the same volume of personal injury complaints

 7   and -- as we have with the Valsartan cases, but that could

 8   change.  That's our early understanding.

 9         And I would like to just signal for the Court and the

10   defense that in reviewing the Complaints that were just filed,

11   I expect that we're going to be amending to clean up a few

12   things, so I just wanted to alert everybody that we're

13   probably going to do that within the next, I would say, week

14   or so.  Just because the complaints were filed in somewhat of

15   a hurried fashion, there's a few things we want to clean up.

16         JUDGE SCHNEIDER:  All right.  Is there anything of a

17   terribly substantive nature, Mr. Slater?

18         MR. SLATER:  Not that I'm aware of.  I could be

19   corrected by someone else on our group, if necessary, but I

20   don't think there's anything that's, you know, at a very high

21   level of substantive importance that I'm aware of.

22         I am aware of a bunch of things that just need to be

23   cleaned up because they either -- they were inadvertently left

24   out or unstated the way we wanted to or things like that.  But

25   I'm not sure of anything that's, you know, overly substantive

1    beyond, you know, the claims that are already stated.

2            JUDGE SCHNEIDER:  Can you give the Court a target

3    date, Mr. Slater, when that will be done, so I can just enter

4    an order granting the plaintiffs leave of court to file both

5    Amended Complaints without the necessity of a formal motion or

6    consent order, given that the defendants aren't prejudiced at

7    all because their response is stayed, and when they do -- when

8    you do get to the point where the defendants have a position

9    about how they want to respond to those Complaints, at least

10   they'll have a final version of what the response is.

11           So it really doesn't matter to the Court, Mr. Slater,

12   but just so things don't slip through the cracks, is there a

13   target date?  If not, I'll just give you one.  January 15th

14   sounds okay to me.  Is that all right?

15           MR. SLATER:  That's great, Judge, thank you.  I was

16   going to try to squeeze it in, but with the holidays coming, I

17   think that would work really well.  We'll try to beat that,

18   but that -- we thank you for that.

19           JUDGE SCHNEIDER:  Okay.  I don't see any prejudice

20   whatsoever to the defendants, especially if we're not talking

21   about terribly substantive complaints.

22           Okay.  Unless anyone thinks differently, I think it's

23   a good idea to start getting into the letters.  I have the

24   letters.  We ought to proceed like we usually do.  We'll deal

25   with plaintiffs' letters first.  The Court has received it,

1    read the dropbox and the attachments, although I'm a little

2    rusty on my Chinese, Mr. Slater.  And then after we're done

3    with the plaintiffs' letter, we'll proceed to the defendants'

4    letter if there's any issues remaining.

5           So I have your letter in front of me, Mr. Slater.

6    Why don't we start on Page 1 and proceed through.

7           MR. SLATER:  Great, Your Honor.  I think the first

8    issue is the case management order issues and I'll let

9    Mr. Honik address that.

10           MR HONIK:  Your Honor, good morning.  I think each of

11    the parties communicated to the Court that we've been in some

12    discussions about potentially seeking some modification to the

13    existing case management order, No. 22, and a particular

14    discovery to be completed by April 1.

15           We've met extensively, including as late as

16    10 o'clock last night and, I think -- I think it's fair to say

17    that we have a joint proposal to the Court, and I would invite

18    Mr. Goldberg to articulate on behalf of the defendants and the

19    parties jointly where we are on this issue.

20           MR. GOLDBERG:  Thank you.  Your Honor, this is Seth

21    Goldberg.  Just to pick up where Mr. Honik left off, the

22    parties have discussed some possible modifications to the

23    schedule that we'd like to propose to the Court in a complete

24    written schedule.  We're still working out some of the interim

25    deadlines, but effectively, what we are trying to do, given

1    the Court's order in November setting a schedule for general

2    causation, there are some discovery issues that need to be

3    addressed with respect to general causation that -- that were

4    not in the earlier orders the Court entered.

5              There are third-party depositions or -- and discovery

6    that the parties foresee.  Plaintiffs have suggested the

7    possibility of additional discovery from downstream

8    defendants, and the parties have discussed a schedule for a

9    class certification briefing to go along with the schedule for

10   general causation, consistent with Judge Kugler's directives

11   in November.

12             There are a couple of key dates for the parties that

13   we have agreed on that are anchors for some of these different

14   discovery issues and briefing issues.  Having reached

15   agreement on these key dates last night, we anticipate being

16   able to flesh out the schedule and provide it to the Court

17   over the next few days.

18             Importantly, for Your Honor and for Judge Kugler, the

19   one thing we haven't done is alter the pre-April 1 discovery

20   schedule, so that going forward, we will be taking all of the

21   employee depositions that Your Honor has ordered to begin on

22   January 19th and to end by April 1, as well as all of the

23   currently-named putative class representatives will be

24   deposed.

25             So the schedule we are putting together is really

1    trying to add the other phase of discovery beyond April 1 on

2    some of the issues that we think can -- should, should slide

3    to a period between, say, April 1 and August 1.

4         So what we're looking at is, in the current

5    discovery, January to April 1, additional discovery on some of

6    the issues that aren't as pertinent to general causation, like

7    some of the third-party discovery, like some of the downstream

8    defendant discovery, and then on the back end of that, we're

9    going to work in a briefing schedule for class certification.

10        So we hope to propose that to the Court.  If not,

11   then I guess it probably -- it might not be the end of this

12   week, given the holiday, but if not, it will be early next

13   week.

14        JUDGE SCHNEIDER:  So are the parties suggesting that

15   third-party discovery not begin and downstream discovery not

16   begin until April 1, '21?

17        MR. GOLDBERG:  Not exactly, and we're still working

18   this out.  Of course, Your Honor is going to hear issues

19   related to third parties on January 5th and there will be

20   document productions, if Your Honor orders them.  The parties

21   are planning to be negotiating regarding additional downstream

22   defendant discovery, if any is necessary.

23        But what the schedule proposes is that -- what we've

24   been discussing is that certain of the discovery that would

25   come after April 1 would be discovery that's not pertinent or

1   necessary for the general causation aspects of the case, and

2   given the extensive number of depositions that the parties

3   will be taking between January 19 and April 1, which will

4   include dozens of employee depositions and dozens of class

5   representative depositions, and I should have added that we're

6   going to add to that pre-April 1 schedule at least ten

7   personal injury plaintiff depositions, but we are trying to

8   move to a period after April 1, some of this discovery that

9   doesn't bear on the general causation issues.

10          And this really emanates from CMO 22 and some of the

11   discussion that we had with Judge Kugler back on

12   November 24th, which required -- two things happened, really.

13   Judge Kugler, during the November 24th hearing, suggested and

14   set a schedule for general causation, and stated that general

15   causation issues would be decided before class certification

16   issues.

17          In entering the CMO 22, that order provides that all

18   discovery would be complete by April 1, which, based on the

19   language in that order, brought forward discovery well beyond

20   party discovery.  It brought forward the need potentially to

21   do all treaters, the need to do all third parties, the need to

22   do any and all downstream defendant discovery, and the parties

23   in good faith met and discussed that.

24          In terms of general causation, some of that discovery

25   is not necessary and to achieve the objective of having the

1    general causation issues teed up for the *Daubert* schedule that

2    Judge Kugler set for May through -- beginning May of 2019 --

3    May of 2021.  We needed to at a minimum complete the employee

4    deps, some of the personal injury deps, but we didn't want to

5    take off the class certification deps, but, you know, I think

6    all of the parties involved recognized that trying to complete

7    all of the third-party discovery, add to the schedule

8    downstream defendant discovery, that may not bear on general

9    causation issues was really going to be a significant burden

10   on the parties.

11         And -- so we got together to see if we could come up

12   with an agreed-upon schedule that we could propose to the

13   Court in the hope that the Court would agree that the schedule

14   is consistent with what the Court ordered in terms of timing,

15   in terms of the issues that the Court wanted to resolve, in

16   the order the Court wanted to resolve them.

17         MR HONIK:  Your Honor, if I may, this is Ruben Honik.

18   Just to expand a little bit on some of the points that

19   Mr. Goldberg made.  Our discussions really attempted to answer

20   the question, how can we preserve all of the deadlines imposed

21   by Judge Kugler with respect to serving expert reports on

22   causation, the *Daubert* timeline, and all the rest, while at

23   the same time providing a bit of relief in terms of completion

24   of what now looks like many dozens of depositions.

25         And so what we did was to studiously avoid in any way

1    altering the key deadlines for advancing the case.  And what I

2    mean by that is, there will be no proposed change to when

3    expert reports on general causation are propounded, when

4    depositions of those experts occur.  There's no disruption to

5    the *Daubert* timeline, and, in fact, what we thought might be

6    appropriate is to suggest in somewhat of a parallel track, the

7    addition of some deadlines for Rule 23 briefings.

8         And so we've reached agreement at least between the

9    parties on that and hope to do it, but I want to assure the

10   Court that what we'll be proffering to the Court will not

11   disrupt the timeline vis-a-vis the movement of the case.  In a

12   larger sense, it will just provide a bit of relief in terms of

13   completing certain -- I don't want to say nonessential, but

14   the depositions that don't go as directly to meeting the

15   deadlines for general causation, *Daubert* and the like, and

16   alleving (sic) some of the pressure of completing all of that

17   by April 1, by extending it into the latter part of the spring

18   and summer.

19        JUDGE SCHNEIDER:  I think I have two comments.  One,

20   I understand what you're suggesting.  It's very refreshing

21   that you're working hard to come up with a plan, especially

22   keeping the current deadlines.  I don't think Judge Kugler has

23   any intention of moving those deadlines, but I would suggest

24   that when Judge Kugler joins the call in a few minutes, you

25   just relate to him what your general thoughts are.

1          You're still meeting and conferring on the schedule.

2    I have my own thoughts.  I'll share them with Judge Kugler

3    confidentially and then you can give him the benefit of your

4    thoughts.  That's one.

5          Two, let's assume, you know, what you're suggesting

6    is blessed.  Plaintiffs, might there be issues, say, for

7    example, with the third-party subpoenas, that you'll decide

8    is, in fact, relevant, and *Daubert* issues that you'll want to

9    take before April 1, you anticipate that that will or may

10   occur?

11         MR. SLATER:  Your Honor, Adam Slater.  Yes, that

12   absolutely could occur.  We're -- that's something that will

13   probably have to be addressed at the January 5 conference, if

14   there's a remaining issue.  But it's certainly something we

15   have to look at and, you know, we're cognizant of that and if

16   a report has to be supplemented or something like that has to

17   be done, I think we'll just have to be practical about it.

18         MR HONIK:  And, Your Honor, Ruben Honik, if I may.

19   As much as we -- you know, our intent is to adhere to the

20   current deadlines for experts and the like, we also flagged an

21   issue of some concern to us that may impact that, and that is

22   if concern key witnesses that we need to depose are not

23   deposed until March or late March.

24         It will present enormous problems in terms of

25   presenting the testimony of those key witnesses to our experts

1    in order to meet that deadline, and so what I'm suggesting is

2    that, you know, a lot of these issues are now, you know,

3    they're intermingled.  And it's certainly our hope and

4    intention to meet the deadline, but if we can't line up the

5    depositions of these key witnesses, an issue that we've raised

6    in our letter, it will present a real problem in meeting

7    certain of the deadlines, including, in particular, expert

8    reports on causation.

9           JUDGE SCHNEIDER:  Well, just by way of example, you

10   know, I'm generally familiar with the third-party subpoena

11   issue.  I've read the papers that have been submitted thus

12   far.

13          Undoubtedly, many of those third parties can be

14   deferred if Judge Kugler agrees with your proposal, but

15   correct me if I'm wrong, I think one of the third parties

16   you're seeking to discover, was it Sandoz who blew the lid on

17   all of this by testing?  Am I right about that?

18          MR. SLATER:  Your Honor, it's Adam Slater.  It's

19   Novartis.  You are thinking about the -- they are --

20          JUDGE SCHNEIDER:  Okay.

21          MR. SLATER:  They did receive a subpoena, though,

22   yes.

23          JUDGE SCHNEIDER:  Okay.  So listen, maybe I'm wrong,

24   but I'm thinking, from the plaintiffs' perspective, you may

25   not want to defer that third-party subpoena because of their

1    importance in this case.  Is that a subpoena you anticipate

2    that you'll want to pursue sooner rather than later?

3         I mean, you know, we know there's a lot of third

4    parties.  Maybe the bulk of them, I don't know, right now,

5    that it's okay to defer.

6         Is Novartis in that category?

7         MR. SLATER:  I think that's something we'd have to

8    look at very closely, and frankly, it's not an issue that was

9    discussed during these extensive meet and confers, but that is

10   a legitimate question, and if they're going to be deposed,

11   they likely should be deposed before April 1st.

12        JUDGE SCHNEIDER:  Well, in order to, you know,

13   crystallize the issues for the January 6th call, and I know

14   your brief is not due until December 31st, I think it would be

15   really, really helpful if you say -- let's assume for the sake

16   of argument, I don't know, Judge Kugler blesses your

17   suggestion.  I think it makes general sense, but I'm not, you

18   know, the captain of the ship.

19        If there's going to be one or two or three subpoenas

20   that you think need to be teed up right away because they have

21   to be resolved before April 1, identify what those are, so

22   come January 5th or 6th, when we talk, you know, we don't have

23   to deal with issues that you're going to deal with down the

24   road, but we can talk about the immediate issues.

25        I think you understand what I'm trying to say, right?

1           MR. SLATER:  Crystal clear.

2           MR. GOLDBERG:  I hope.

3           JUDGE SCHNEIDER:  Okay.  So maybe we can narrow,

4    maybe -- my expression, you've heard me say it a million

5    times, you can sharpen your pencil.  All the issues are going

6    to be important but, Judge, maybe these are the issues you

7    want to focus on right away, which will help us get all this

8    done in the limited time we have.

9           So again, when we get together with Judge Kugler in a

10   few minutes, we'll certainly alert him that there's issues on

11   the radar screen and you can, you know, explain it, okay?

12          So that takes care of Point No. 1.

13          Let's go to Point No. 2, the manufacturer deposition

14   issues.

15          MR. SLATER:  Thank you, Your Honor.  It's Adam Slater

16   again for the record.  I think the easiest way to present the

17   issue is to tell you what's ongoing and then to focus the

18   issues that I think Your Honor will have to hear.

19          As to all of the manufacturers, other than ZHP, we

20   are in an ongoing meet-and-confer process.  Those defendants

21   have until today to identify the specific 30(b)(6) corporate

22   representatives and what specific topics each will be speaking

23   to, and at that point, we're going to have a much better idea

24   of what time periods will be needed, where these people are

25   being produced, and in some cases, the manufacturers have

1   already told us where witnesses will be produced.

2        We've had discussion about English or foreign

3   language needs.  So those conversations are ongoing and to

4   this point, I think has gone very well.

5        I mean, there's going to be a few sticky issues.

6   There's no doubt about, for example, the length of some of the

7   depositions, but so far, there's not been any major disputes

8   in the discussions, and we're optimistic that the discussions

9   will continue that way and that there will be minimal issues

10  for the Court to have to address.

11       I think that the theme of it has been, certainly from

12  our perspective, that we all have to work together in an

13  intense way for months coming up and then the beyond, so we

14  have to all be reasonable with one another because it's the

15  only way to get along in this lifeboat together.

16       ZHP, I'm going to purposely --

17       JUDGE SCHNEIDER:  I don't mean to cut you off,

18  Mr. Slater, but let me just jump in here.  That's fine.

19       One of the questions I had, I think I know the answer

20  to this, but has your group at least identified a point of

21  contact for each of the manufacturer defendants, who's going

22  to take the deposition.  Do the defendants know who to

23  communicate with about the issue?

24       MR. SLATER:  We have -- we have notified that several

25  weeks ago, I believe it is, point of contact for the

1  deposition scheduling process.  We have not yet made any

2  determination as to who is going to depose each witness, but

3  the defense knows who to communicate with with regard to all

4  scheduling issues, and the meet-and-confer process has been

5  involving that, in that way, so that the points of contacts

6  were on every call with me when I was negotiating the 30(b)(6)

7  notices.

8         So each of our representatives was involved in that

9  process, and now they're all -- every point of contact is

10  involved in the negotiations over the depositions, the

11  locations, the time period, et cetera.

12        So there's continuity, and our expectation is that as

13  we continue the process forward, there will be hopefully

14  smooth communication, because I know that was something that

15  Your Honor wanted to make sure was not an issue.  And I think

16  we've addressed it.

17        JUDGE SCHNEIDER:  Fantastic.  I think it's refreshing

18  and appropriate that there seems to be a dedication to meeting

19  and conferring about these issues, which is exactly what good

20  counsel should do.

21        You've heard me say this before.  I'm not of the view

22  that merely because there's a discovery dispute doesn't mean

23  the parties haven't met and conferred.  I understand that

24  there could be good faith differing mindsets, even though the

25  parties act in utmost good faith.

1          So it's refreshing to hear that.

2          So let's -- let's now go to ZHP.  I have a handle on

3    what the issue is having read the letters and studied the

4    letters.  I wish we could -- I don't know why ZHP is so

5    problematic.

6          I suppose one of the issues is, one, they're in

7    China, two, it's a little foreign to us, this Chinese New Year

8    and having the fact that they're shut down.

9          I wish there was a way to move -- I'm sympathetic to

10    the argument but I understand the practicalities of the

11    situation.  But I wish there was a way we could move some of

12    the more important issues up, and I think -- what's the

13    gentleman's name, Mr. Du, I think, the fellow we met with, I

14    would hope that -- I wish there was a way we could get him to

15    appear either late January, early February, because that I

16    think would give the plaintiffs some comfort in not having to

17    wait until the last minute to squeeze in these depositions.

18          I think it's terrific that ZHP went ahead and took

19    the bull by the horns and proposed the schedule, but on the

20    other hand, it is a bit problematic that some of the witnesses

21    are pushed off to the end, and it's going to be very, very

22    difficult for plaintiffs to get their expert reports in time.

23          So can we figure out a way that we can make both

24    sides equally unhappy and get it done.

25          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

 1    Can I respond to that for a moment?

 2            JUDGE SCHNEIDER:  Of course.

 3            MR. GOLDBERG:  You know, because I do think ZHP was

 4    very much the first penguin in the water and sometimes, you

 5    know, that's a little bit of a sacrifice.  Our letter goes to

 6    great length to explain the different meet and confers that

 7    we've had with plaintiffs.  And we've tried to identify for

 8    the Court some of the places, just a few places in the record

 9    where we have discussed the many different challenges of

10    deposing these Chinese nationals.

11            But first and foremost, the primary challenge is

12    COVID-19 and the fact that witnesses have to travel from China

13    to Hong Kong in order to be deposed, and Your Honor may recall

14    the numerous discussions we've had about that.

15            One of the -- one of the problems with traveling from

16    China to Hong Kong during -- which is a ten-hour trip, which

17    has to be made by train and plane, because our witnesses need

18    to go from the Qinghai Province to Shanghai, and then Shanghai

19    to Hong Kong.

20            There are travel restrictions throughout China as a

21    result of the spike, and then there is a 14-day quarantine

22    period in arriving in Hong Kong and a 14-day quarantine period

23    in returning from Hong Kong.

24            And we discussed these issues numerous times in

25    September and October with the Court and the plaintiffs.

1        In connection with those discussions, Your Honor and

2   plaintiffs indicated the desire to have the U.S. witnesses

3   deposed on the front-end, and to push back the very

4   challenging depositions of the Chinese witnesses, and we

5   prepared a schedule that keeps in mind those comments, but

6   also the reality that witnesses, in just a few weeks,

7   witnesses would not be able to travel to China -- I'm sorry,

8   from China to Hong Kong without these quarantine requirements

9   and without, you know, the safety concerns resulting from

10  COVID-19.

11        One of the reasons we put the Chinese witnesses into

12  March and tried to line them up for -- as soon after the

13  Chinese New Year as we could, and we set out -- if you look at

14  Exhibit A of our letter, you will see the schedule.

15        So hopefully, by then, we'll have a better

16  understanding of some of the quarantine restrictions and

17  hopefully some of the restrictions will be relaxed because,

18  you know, at this point, you know, we haven't -- at this

19  point, we are still under a 28-day quarantine period for a

20  single deposition, and hopefully, you know, that will be

21  relaxed by March.

22        It is a, you know, it's a necessary evil in this case

23  that all of the pertinent manufacturing issues and the

24  witnesses who can speak about them are in China, because

25  that's where the API was manufactured, and, you know, we just

1  don't have people in the U.S. that are involved in the API

2  manufacturing, the people in the U.S. are involved in the

3  finished dose sales.

4        JUDGE SCHNEIDER:  Can I -- Mr. Goldberg, I have a

5  question for you.  Because I think we just need to -- there's

6  no perfect solution, let's face it.  So we have to balance the

7  interests of the parties.

8        Why can't we move up the deposition of Mr. Du?

9        MR. GOLDBERG:  A couple of -- for a few reasons, and

10  I think, you know, one of the important things here is,

11  Mr. Du -- Mr. Du's importance in this case has really been

12  inflated, and, you know, some of this results from the fact

13  that he is the only ZHP employee in the U.S.

14        But Mr. Du is the vice chair of the board.  He is not

15  involved in any of the day-to-day functions that pertain to

16  this case.

17        He's not involved in the API manufacturing, as

18  evidenced by the fact that he's here in the U.S.  He's not

19  involved in the API testing, which happens in China.  He's not

20  involved in the API quality assurance or quality control,

21  which happens in China.  He's not involved in the API

22  communications with customers, which happens in China.

23        These are all plaintiffs' 30(b)(6) topics, and for

24  each of those topics, we've identified the witness that's most

25  knowledgeable.  Mr. Du will -- is actually going to be

1    traveling to China at the end of this month, and he'll be in

2    China through -- excuse me -- through mid-February.

3         So, you know, we sort of have a -- you know, we have

4    that logistical problem.  We understand that plaintiffs want

5    to depose Mr. Du in the U.S.  He will be in China for the next

6    six or seven weeks, and so we proposed him soon after he comes

7    back from China.  Unlike --

8         JUDGE SCHNEIDER:  I don't mean to interrupt, but on

9    the one hand, I'm trying to balance the interests of the

10   parties, and you've heard me say this before, I'm just not a

11   very good poker player.  So I'm sympathetic to ZHP's argument

12   about the other witnesses and the schedule, but on the other

13   hand, whether you like it or not, plaintiff thinks Mr. Du is

14   an important witness.  So they want him.

15        So why can't the parties get him as early as

16   possible?  Is the situation on the one hand, and I don't doubt

17   it, the situation in China is so bad with the quarantine, et

18   cetera, et cetera, but on the other hand, we hear that this

19   witness is going to China, is going to be there for six weeks.

20        So how bad -- how bad could it be?

21        MR. GOLDBERG:  Your Honor, there are a lot of

22   different factors in play.  Mr. Du is traveling to China for a

23   work-related issue that we believe -- that requires him to

24   travel for this period of time, January through mid-February.

25        We believe he's a U.S. citizen and his immigration

1  status allows him to travel to China and to travel back,

2  however, he will have quarantine requirements on both ends.

3  But when he is in China, under China law, he will not be able

4  to be deposed while he's there.

5           So when he is in China, he is going to be under the

6  same requirements or the same legal restrictions as the

7  Chinese nationals.  In deposition, in a --

8           JUDGE SCHNEIDER:  Is he going to be in Hong Kong?

9           MR. GOLDBERG:  He will not be in Hong Kong, he'll be

10  in China.  So he would have to travel to Hong Kong to be

11  deposed, and then he would also at that point have to undergo

12  the same 28-day quarantine restrictions.  He will be traveling

13  to Shanghai and to ZHP's facilities in Qinghai.

14           The one -- you know, the one concession that we've

15  tried to offer to plaintiffs to address their question, you

16  know, they have suggested that they would like the testing

17  witnesses to be earlier in March.  It was -- we put together

18  the schedule and what we did was just try to line up the many

19  different Chinese witnesses that have to be deposed in March.

20           We can certainly look at trying to take a few of the

21  people that are at the end of March that plaintiffs would

22  prefer to come earlier, to be earlier in March, and flip the

23  March schedule around to the extent we can.

24           Of course, this is not, you now, this has not been

25  without a lot of discussion with our client about schedules,

 1   and about, you know, the fact that people are going to

 2   potentially need to travel and be quarantined.

 3        This is -- this is really an extraordinary situation.

 4   I think we've all gotten used to our view of COVID, but their

 5   -- you know, we're talking about having people going, during a

 6   global pandemic, traveling ten hours and submitting themselves

 7   to an isolated quarantine in a hotel room to be deposed, for

 8   14 days, and then to come back and be deposed -- and be

 9   quarantined, potentially exposing themselves and their family

10   members to COVID, and we're treating it as though it's like

11   any other deposition and it's simply not.

12        And what we've tried to do -- and Your Honor has been

13   gracious throughout September through December in

14   acknowledging the safety concerns, and what we tried to do was

15   put together a schedule that was facilitating of the Court's

16   objectives.

17        We are the only defendant -- the reason that we're

18   talking about ZHP right now is because we have been

19   forthcoming because we have tried to work with plaintiffs to

20   put together a schedule that made sense in light of the

21   realities of deposing Chinese nationals, who are restricted

22   under Chinese law from being deposed in China during a global

23   pandemic.  And furthermore, Mr. Du --

24        JUDGE SCHNEIDER:  Let me jump in here, Mr. Goldberg.

25   Can Mr. Du be available at the end of February to be deposed

1  in the United States since he's apparently returning in

2  mid-February?

3        MR. GOLDBERG:  We can identify -- we can identify the

4  date he is returning.  I believe it is February 25th, and the

5  challenge there, is -- now there are two practical challenges.

6  One is, he then, when he gets back, has to quarantine for two

7  weeks.  Two, is obviously the jet lag of being in China for

8  many weeks or for -- actually for six or seven weeks, and then

9  having to be deposed right away.  I really don't -- I would

10 like to try to avoid that.

11        So if he's returning February 25, that's why we put

12 him on the schedule where we did, was to give him time to

13 quarantine and to be able to be prepared.

14        JUDGE SCHNEIDER:  Okay.  Let's hear from Mr. Slater.

15        MR. SLATER:  Thank you, Your Honor.  Adam Slater, for

16 the record.  Just speaking to Mr. Du, who we just discussed,

17 you know, maybe one easy solution, since this is a business

18 trip that was scheduled with full knowledge by ZHP of the

19 upcoming schedule and the fact that we needed to take all

20 these depositions in a very condensed time period, maybe the

21 best solution would be to figure out when he's leaving and

22 perhaps he can leave a little bit later.  I mean, it's a

23 business trip.  I don't know what the constraints are, but

24 he's going to be there until February 25.

25        So whether he leaves in -- I don't know what his date

 1   is to leave, I thought it was in January, per our discussion.

 2   Maybe he can leave a few weeks later and we could depose him

 3   before he goes and then he doesn't have to worry about it

 4   anymore.  That would seem to be one solution to him.

 5           JUDGE SCHNEIDER:  Mr. Slater, what's the earliest,

 6   earliest, possible date you'll be ready to depose Mr. Du?

 7           MR. SLATER:  There's a lot of people that I work with

 8   that are going to hate me for answering this question.  You

 9   know, I would like to believe that we could do it in 10 days.

10   You know, we're still going through the documents, obviously a

11   lot of the documents were still produced, but we could put

12   teams on this and do what we have to do to get the deposition

13   done, if we had to, 10, 14 days, something like that.

14           I think that that would be, you know, certainly two

15   weeks.  I can't imagine that would be problematic.  That's

16   something we -- again, there will be a lot of people wearing

17   plaintiff hats right now that will not be happy with me saying

18   that, but we all have to make -- you know, do what we have to

19   do.

20           JUDGE SCHNEIDER:  Mr. Goldberg, could you inquire --

21   hold on.  Can you inquire -- here's what -- I'd like to

22   accommodate both sides.  I understand the concerns.

23           If we could get Mr. Du the first week in January, the

24   Court is prepared to bless the schedule that you proposed,

25   even though some of the most important witnesses are pushed

1    back, with the proviso, I'm going to ask ZHP to just use its

2    best good faith efforts to try and move up the March

3    depositions.

4          If it can't, it can't, but I think a fair compromise

5    is to get Mr. Du out of the way, and it will provide an

6    incredible backdrop for plaintiff that could help all the

7    other depositions in the case.

8          I don't think that that is an unfair compromise if

9    the Court is willing to bless your schedule.  Can you look

10   into that, Mr. Goldberg?  It would mean that he'd have to push

11   his trip back a week.  That's not the end of the world.  He

12   can be on the phone or Zoom if he has any business, and at

13   least, we could get this process started.

14         Can you look into that?

15         MR. GOLDBERG:  Yes, of course, Your Honor, we will

16   look into what his travel requires, when he has travel plans,

17   the specific dates and we will confirm with plaintiffs.

18         JUDGE SCHNEIDER:  I know he may have travel plans,

19   and I know he may have meetings set up in all likelihood, but

20   it's an important case, it's a big case.  We have a lot of

21   issues to deal with, and I think it's a tremendous benefit to

22   ZHP and the Court appreciates its good faith efforts to work

23   with plaintiff.

24         It just -- it's a very fair trade, I think, from

25   ZHP's perspective to have a deposition schedule of 14

1  witnesses blessed, if one person has to move back their flight

2  by a week.

3          MR. GOLDBERG:  Your Honor, I don't -- I don't

4  disagree.  I do want to flag one thing, and the reason I

5  haven't is because I just have not been able to verify this.

6          JUDGE SCHNEIDER:  Okay.

7          MR. GOLDBERG:  Which is -- which is that Mr. Du's

8  travel is the result of his being on the board of ZHP, and the

9  Chinese SEC requires all board members to be in the country

10 for a meeting at least once a year at the beginning of the

11 year.  He was not able to do that in 2019 because of COVID,

12 and that is what his result -- why his travel, from my

13 understanding, but I did not want to raise that without being

14 able to verify that with our client.

15         But my understanding is, that's why this travel is

16 happening now.

17         JUDGE SCHNEIDER:  But we don't know what --

18         MR. GOLDBERG:  I don't know when those meetings are,

19 and I would --

20         JUDGE SCHNEIDER:  Okay.

21         MR. GOLDBERG:  -- and we will endeavor to do that.

22         I did want the Court to understand that this is --

23 yes, this is a very serious case, and of course, our client

24 has taken this case to be at the highest importance, and --

25 which is why we have been so forthcoming, but this is not a

1   situation where Mr. Du has planned business travel during the

2   deposition period, knowing that it was coming.

3         This is actually an order that he's being asked to

4   comply with by the Chinese government, and that's how they do

5   things over there.  But we will confirm that.

6         JUDGE SCHNEIDER:  Okay.

7         MR. GOLDBERG:  I appreciate Your Honor acknowledging

8   that the schedule that we have provided, and, you know, we

9   will do our best to adhere to Your Honor's guidance.

10        JUDGE SCHNEIDER:  Okay.  The touchstone in this case,

11  as everybody knows from day one, has been good faith.  So

12  let's just, in good faith, see if this is feasible.

13        What the Court would like to do, if feasible,

14  depending upon, you know, the Communist government and all its

15  requirements, if Mr. Du can appear for deposition before

16  January 8th in the United States, the Court is prepared to

17  bless the schedule that was attached to defendants' letter

18  for, whatever it is, the 13 or 14 deponents.  We'll have to

19  deal with the objectionable people, but under very difficult

20  circumstances for all concerned, the Court is sympathetic to

21  the incredible logistical problems defendants have, but on the

22  other hand, the Court is sympathetic to plaintiffs not being

23  put in the position where critical information they need for

24  their expert reports is produced too late in the case for them

25  to effectively use it.

1          But I've given you my thoughts.  Just let us -- I

2   won't enter an order, Mr. Goldberg, until the Court hears back

3   from you, hopefully before the end of the week, about whether

4   this compromise is feasible or not.

5          MR. GOLDBERG:  Okay.

6          MR. SLATER:  Your Honor, it's Adam Slater.  I just --

7   I think that it's very important that I say a couple things.

8   We don't -- I just want to make it clear, I understand Your

9   Honor is talking about is a compromise, but Jun Du is one

10  witness that is important, but I don't think that when this

11  schedule was set that the Court or the plaintiffs, certainly,

12  or anyone really, objectively looking at this, understood that

13  for the most part, and with regard to virtually every

14  important witness from ZHP, the first month and a half of the

15  schedule was going to be unused, except for a couple of

16  witnesses in the U.S., who they've now confirmed to you,

17  Mr. Goldberg confirmed to you, have no knowledge about the

18  core issues on general causation.

19         And I'll give you a very good example of why we're so

20  up against it here.  We assumed we would get, for example, the

21  testing witnesses early, not after an entire dark month of

22  February, because a lot of those documents are in Chinese.  So

23  what we need to be able to do is go through those testing

24  documents as soon as possible and the process documents, which

25  was the -- which are -- the process witnesses deal with how

1    they develop these manufacturing processes that turns out to

2    contaminate the pills with nitrosamines, or the API with

3    nitrosamine.

4          We need to be able to go through those documents with

5    these witnesses and get an understanding of the baseline of

6    what everything is so we can then work with our experts to

7    incorporate an analysis of not just those documents, as

8    exemplars, but hundreds of test results or more, an analysis,

9    et cetera.

10          So without that foundational testimony, our experts

11   could be going down one road and then find out on their

12   schedule, in the last week before their expert report, is that

13   we've drawn incorrect assumptions.  And this is just one

14   example of -- and again, our purpose in this discussion with

15   Your Honor is not to malign ZHP as much as to try to find an

16   equitable solution to this.  But if the expert reports are due

17   April 1st, that schedule with regard to ZHP is unworkable.

18          JUDGE SCHNEIDER:  The expert reports are due May 2nd.

19          MR. SLATER:  May 2nd, I'm sorry, I meant -- I

20   misspoke the month.  But the point being, the deposition --

21   some of these witnesses on that schedule, they're the dates

22   that are offered for them, testing witness.  Min Li, they've

23   offered on March 31st or April 1st.

24          So that leaves our expert with an enormously

25   condensed time period on multiple issues, because we're not

1    going to have foundational testimony.

2         Look, we're going to have to live with whatever Your

3    Honor orders, but I just to make -- we weren't saying Jun Du

4    is a trade.  This isn't the Herschel Walker to Minnesota

5    trade, which I know you're familiar with.

6         And we have until January 11th under your order

7    before we're required to accept the dates.  So we're just very

8    concerned that this schedule that they provided to us is

9    somehow ordered now.  It's going to be extremely prejudicial

10   because we still believe that witnesses could be produced

11   before the holiday that starts around February 12th or so, and

12   we don't know why a handful of witnesses couldn't go to Hong

13   Kong before that rather than going in March and at least

14   spread out this testimony and get us the foundational

15   testimony we need.

16        If that can't happen, there's nothing we can do, but

17   then we just have to understand that we're going to be jammed

18   up at the end of this process.  It's just a fact, and I want

19   to make sure that's very clear for the record, because again,

20   the defense got massive extensions, and I think one of the

21   concerns I voiced to Your Honor way back when was we're going

22   to get jammed up at the end and we were assured that wouldn't

23   happen, so we're now saying to the Court, we believe that is

24   what's going to happen, and remember, there's a whole host of

25   other manufacturers and, you know, if -- there's nothing to be

1    surprising if some of them or most of them say that they want

2    to produce most of their witnesses towards the end also.

3         It's going to become impossible for us because that

4    deposition period was supposed to be three months, and we're

5    going to -- if we have to do every important witness for six

6    or seven defendants in less than 30 days, that's going to be

7    very difficult.

8         JUDGE SCHNEIDER:  Okay.  The Court appreciates your

9    concern, Mr. Slater.  I do not think that there's a perfect

10   solution to all of this.  And we're dealing with foreign

11   witnesses and quarantine issues and COVID and language

12   difficulties, and I believe that Mr. Goldberg is acting in

13   good faith when he represents that right now, these are the

14   earliest practical dates these witnesses could be available.

15        I don't see evidence that there was any strategic

16   reason to push them back, but paramount is the fact to lock in

17   these depositions so at least the parties could plan.

18        Unfortunately, I won't be able to make the decision,

19   but, you know, throughout the course of the case if there was

20   good cause to make changes, at least this Court would

21   seriously consider the parties' concerns and address them.

22   Come April, you know, you'll have a month between the last of

23   the depositions apparently, and then experts are done, and if

24   you need some accommodation and there's good cause, you can

25   always make your application to the Court, but at least in

1    this Court's view, there's no perfect solution, and let's just

2    move on, okay?

3            But the record is clear, unquestionably clear,

4    Mr. Slater, that this is not plaintiffs' compromise, this is

5    the Court's compromise.  That -- there's no mistake about

6    that, that the plaintiffs acceded to this proposal.  This was

7    solely the Court's idea.

8            MR. SLATER:  Understood, Judge.  I would just ask one

9    small thing that -- because ZHP has committed to try to move

10   some of these testing process witnesses earlier in March and

11   we do have a January 11th deadline to -- set to confirm the

12   dates.

13           I would just ask that we play that out, because that

14   would, you know, every -- if we can move up people from the

15   end of March to the beginning, that makes a big difference.

16           JUDGE SCHNEIDER:  I think that's a fair -- my order

17   is going to, like I said, my touchstone is always good faith.

18   ZHP is going to use good faith efforts to use -- to move these

19   depositions up earlier in March.  We have no reason to doubt

20   anyone in this case is not acting in good faith.  There's been

21   no evidence of that throughout the case, and we'll get an

22   answer by that date, so hopefully, these things have a way of

23   working out and hopefully, this will too, but we'll just have

24   to go through this.

25           So the next issue is these -- I think there's five or

1   six other witnesses who ZHP is disputing.  Mr. Chen appears to

2   be in a different category.  I'll give you my preliminary

3   thoughts, and then we can hear argument.

4         The first is with regard to Mr. Chen.  I'm not that

5   sympathetic to the apex argument for this reason, because it

6   appears that Mr. Chen had responsible positions before he

7   became, you know, the top of the food chain, so to speak.

8         So I don't think it's, you know, completely correct

9   to say he's an apex witness, because a lot of the information

10  that plaintiffs want is directed at knowledge he obtained and

11  knew about before he was in his current position as CEO.

12        With regard to the other witnesses that plaintiffs

13  seek to dispose, the Court has read the submissions of the

14  parties, and I think prima facie, the plaintiffs have made a

15  very good case for why these witnesses have relevant

16  knowledge, merely because they report to a witness that

17  otherwise is being deposed, I don't think is a -- a good faith

18  argument that their testimony is duplicative.  I looked back

19  in the record and it looks like, and I could be wrong about

20  this, but I think in *Benicar*, 20 foreign depositions were

21  permitted of Daiichi, and here, plaintiff is proposing to take

22  20 depositions of U.S. and foreign ZHP.

23        That being said, so that's my preliminary thoughts,

24  that prima facie plaintiffs have made that case, but I

25  understand there's going to be depositions in the case, and

1   you're going to know a lot more later on that you don't know

2   now, and I would think if these witnesses probably won't be

3   deposed until March anyway, one, plaintiff may decide their

4   testimony is not needed because it's duplicative, and I

5   certainly don't think plaintiffs have any interest in taking

6   duplicative testimony.

7           And, Mr. Goldberg, for ZHP, if other depositions are

8   taken, you might have a better record to show, in fact, that

9   this testimony is, in fact, duplicative, cumulative, or

10  nonmaterial.  But at least based on the present record, it

11  appears prima facie, that, you know, these are pretty

12  important witnesses, including Mr. Chen.

13          So at least what my initial impression is, but I'll

14  hear argument on it, is to say plaintiffs have made a prima

15  facie case that these witnesses are subject to deposition, but

16  subject to what the parties learn through the other

17  depositions, there's -- it's without prejudice to ZHP to

18  present a record, which is not available now, to show, in

19  fact, that these depositions are not materially important and

20  should be quashed.

21          So that's my thinking right now.

22          Mr. Goldberg, we'll hear your thoughts.

23          MR. GOLDBERG:  Thank you, Your Honor.  And I think

24  what Your Honor is saying is that while the prima facie case

25  has been shown, these depositions shouldn't be added to the

1   schedule yet.

2          JUDGE SCHNEIDER:  Well, I think they should be

3   planned, but without prejudice to ZHP's -- let's face it, if

4   they're not planned, they're not going to get done or they're

5   going to get done late.  So they have to be locked in.  I

6   think they do have to be locked in.

7          But it's without prejudice to ZHP to present a record

8   that, in fact, these depositions are cumulative, duplicative,

9   not material, et cetera, et cetera.  That's what I'm saying.

10         MR. GOLDBERG:  Thank you, Your Honor, for that

11  clarification.

12         I just want to focus on Mr. Chen, because I think

13  that that's really the most important of these witnesses,

14  obviously, for our client to have the CEO of their company

15  deposed, especially during COVID-19, where now, just like the

16  other witnesses, Mr. Chen would have to travel to Hong Kong

17  and be quarantined for 28 days, goes to -- directly to the

18  rebuttable presumption that is set by the Apex Doctrine which

19  is that an apex deposition is presumed to be unduly burdensome

20  and that burden is most definitely compounded, given these

21  circumstances of deposing a Chinese national that has to

22  travel to Hong Kong and quarantine for 28 days.  Plaintiffs --

23         JUDGE SCHNEIDER:  Can I ask a question?  Mr. Slater,

24  can you correct me, because I read your papers, how much of

25  the information that you want from Mr. Chen is derived from

1    the other positions he held, sort of the front-line positions

2    he held at ZHP, rather than in his capacity as CEO?

3         MR. SLATER:  I think that a great deal of the

4    information we're seeking from him is from his work in

5    performing what we'll call day-to-day duties.  For example,

6    the FDA inspections that he attended, the -- his role as the

7    chairman of Shanghai SynCores, which created the process by

8    which the API was manufactured and contaminated.

9         There is no other witness on the list who worked at

10   Shanghai SynCores when that process was developed.  The one

11   witness from SynCores is Eric Gu, didn't start there,

12   according to ZHP, until 2014, so that's another -- you know,

13   so I can give you some examples.

14        So absolutely, this is not just a -- I mean, part of

15   the deposition will certainly revolve around, you know, you're

16   the chief decision maker, et cetera, but I would say that the

17   majority of it will be the decision making on a day-to-day

18   basis as to processes and strategy and things like that, which

19   -- and remember, the amount of information we've been able to

20   show Your Honor about his unique role and his unique knowledge

21   comes from other people's productions, because we don't even

22   have his custodial production yet, which we expect will be

23   very, very fruitful when it's produced in advance of the

24   deposition.

25        JUDGE SCHNEIDER:  So, Mr. Goldberg, doesn't that put

1  a different light on Mr. Chen's position?  Because it's one

2  thing, and we've been through this -- we've all been through

3  this in many different cases.  If they're deposing a CEO

4  because he may have signed a form contract and he doesn't have

5  any personal knowledge of what happened, but here, we have a

6  situation where plaintiffs are seeking to depose the gentleman

7  in large part because of the information he gains when he was,

8  in my words, in a front-line position.

9       So doesn't that put this apex issue in a different

10  context?

11       MR. GOLDBERG:  Your Honor, no.  In my view, it does

12  not, and I do not think that Mr. Slater has provided Your

13  Honor with any record that would be close to sufficient to

14  establish unique knowledge that cannot be obtained from a

15  lower-level employee on any issue, and that is the standard.

16       What -- and let me just back up for one second to

17  point out that plaintiffs have identified -- have provided the

18  Court with about 14 documents that they believe are associated

19  with Mr. Chen, that they claim support his apex deposition.

20       We've only been provided with those documents when

21  the Court -- when plaintiffs filed their brief yesterday.

22  They did not share those with us, and so we have not had a

23  chance to evaluate them fully, and -- on this very important

24  issue, we would want to have full briefing before any order is

25  made.

1          But I do want to point out, to correct Mr. Slater.

2    Mr. Slater referred to the FDA regulatory documents that

3    they've identified.  These are at Exhibits E through O of

4    their papers.

5          There is no dispute that Mr. Chen, as the highest

6    ranking official at ZHP, attends FDA inspections at the ZHP

7    plant, but so do a cast of the employees that manage the very

8    specific issues that are the subject of the inspection, and

9    each one of those individuals is going to be deposed in this

10   case.

11         And what plaintiffs have done in their exhibits, and

12   I would ask Your Honor to carefully review them, is they've

13   only handed you or presented to Your Honor a few pages of each

14   of the underlying documents.  You'll see in each one of these,

15   Exhibits E through O, there are pages -- the exhibits are 37,

16   45, 50 pages, and you can tell that, because at the bottom,

17   the documents say Page 1 of 37, 2 of 37, et cetera.

18   Plaintiffs have just presented you with snippets of those

19   pages that show you that Mr. Chen was at the inspection.

20         But that's really unremarkable.  All of the 30(b)(6)

21   witnesses we've identified are people who attended the

22   inspections with Mr. Chen.  That is really the quintessential

23   satisfaction of the *Apex Doctrine.*  Plaintiffs can ask those

24   lower-level employees, and they will, because these are

25   30(b)(6) topics.

1        They can ask Hai Wang, Jay Wang, Linda Lin, Peng

2   Dong, Remonda Gergis, Qiangming Li, the questions about these

3   inspections about what happened day to day.

4        Mr. Chen is not a day to day -- he's not involved in

5   the issues in this case from day to day.

6        JUDGE SCHNEIDER:  So let me say this, Mr. Slater --

7   Mr. Goldberg.  ZHP is granted leave, and I'll put this in the

8   order, to file a motion for protective order to bar Mr. Chen's

9   deposition in light of the deposition testimony that has been

10  taken in the case.

11       So right now, I don't think the record supports the

12  argument that the deposition should be quashed.  That being

13  said, if you're right that these other witnesses are going to

14  present the testimony that plaintiffs hope to get from

15  Mr. Chen, then you'll be able to present that in your motion

16  for protective order with a record, but now the record just

17  doesn't support it.

18       So if the record supports your claim that he doesn't

19  have personal knowledge, I guess there's been no affidavit

20  from him either, you'll probably put that in your motion, you

21  know, I would expect what the ruling would be.  But at least

22  there would be a record to make the ruling on.  But right now,

23  the record just doesn't support the position.

24       So it's not like the deposition is definitely a

25  hundred percent going forward.  If you can support your motion

 1   with appropriate good cause, you know, maybe, maybe not,

 2   you'll -- they'll quash it.  But it's not going to be --

 3          MR. GOLDBERG:  Your Honor --

 4          JUDGE SCHNEIDER:  But it's not going to be quashed

 5   right now.

 6          MR. GOLDBERG:  Right, I appreciate that, Your Honor,

 7   I just want to comment.  I appreciate that because I think

 8   that is consistent with how this doctrine is applied.  We've

 9   presented some cases to the Court.  I've even gone back and

10   found a case that Your Honor entered called *Younes versus*

11   *7-Eleven*, where this issue came up, and it really is the

12   practice that you make this decision if the deposition

13   testimony has shown that the witness can actually provide

14   unique information that wasn't able to be attained from the

15   lower-level employees.  And that -- and so Your Honor's

16   approach is consistent with those decisions.

17          JUDGE SCHNEIDER:  Okay.  Good.  So I finally did

18   something right, Mr. Slater.

19          (Laughter.)

20          MR. SLATER:  Your Honor, it's Adam Slater.  Can I

21   wrap this up, if I could.  By the way, I think that

22   Mr. Goldberg just flipped the burden.  So we don't agree with

23   his characterization of the burden.  I don't think we have the

24   burden so much as they'll have the burden, but that can be

25   decided some other time.

```
 1          JUDGE SCHNEIDER:  It's his motion for protective

 2   order, so it's his burden, of course.

 3          MR. SLATER:  Right.  And the other -- the thing I was

 4   going to ask is, I think that we've more than made a showing

 5   of the relevance and the need for the custodial file for this

 6   witness, and certainly, we know that a motion is going to be

 7   filed, we're going to be preparing for his deposition and we

 8   know, also, we asked for the order emanating from today's

 9   conference to direct ZHP to produce Mr. Chen's custodial file.

10          You know, I think we should have it before we start

11   the depositions, because there's likely to be documents in

12   there that will be very illustrative -- illuminating to us.

13   So we ask for the custodial file to be produced, you know, as

14   soon as practicable.

15          JUDGE SCHNEIDER:  Here's what I think you should do,

16   Mr. -- hold on.  Hold on.  Here's what I think you should do,

17   Mr. Slater.  When you respond to the motion, you should

18   include your request for the custodial file.  The Court's not

19   prepared to order it at this time, but if the Court does not

20   -- that the deposition goes forward, the Court can also decide

21   if his custodial files should be produced.  Okay?

22          MR. SLATER:  Your Honor, without the custodial file

23   of Mr. Chen, we don't even have the ability to explore other

24   witnesses, and to know what unique information he does have,

25   because we don't have his file.  I mean, Your Honor, you
```

1   denied it earlier in the case, that -- I think I said that the

2   request was denied earlier in the case, but Your Honor, and we

3   cited the transcripts that we could come back, I think that

4   we've more than made a showing and there's absolutely no

5   prejudice to the defense in his custodial file being produced.

6        They've made representations about him not having any

7   special role.  There's no reason why we shouldn't have that

8   custodial file.  There's not any good reason not to have that

9   produced to us now.  It's so important to us on a witness that

10  may be potentially one of the most, if not the most important

11  witnesses in this case, when it's all said and done, because,

12  for example, the documents we gave Your Honor showed that he

13  was pushing the policy within the company to optimize the API

14  manufacturing process to cut costs, and that's ultimately what

15  the FDA was told was the reason for this, and we believe that

16  in base this case is going to come down to ZHP deciding to cut

17  costs with their uses of solvents and thus, creating the

18  nitrosamine contamination problem as a result of a pursuit of

19  profit, and we have significant documents on that, but we have

20  to see this man's custodial file to be able to understand

21  fully.

22       There can't be any reasonable objection at this point

23  to that.

24       JUDGE SCHNEIDER:  The Court's ruling is that if

25  Mr. Chen is as important as you say, you'll be able to make

1   your record in the other depositions that are taken in the

2   case and the millions of other documents that have been

3   produced in the case, and that the Court is not going to order

4   Mr. Chen's custodial file to be produced at this time, but

5   certainly, I would expect when you respond to ZHP's motion for

6   a protective order, that you will include a request that his

7   custodial file be produced, and like ZHP, by then, you should

8   have a more robust record to support the request.

9            Next issue on the agenda is No. 4, the Teva TAR

10  protocol.  I'm eminently delighted that the issue has been

11  tabled to -- to be worked out.  I'm thrilled that millions of

12  dollars will not have been wasted and I commend the parties

13  for working it out, as it did.

14           My only comment is -- and I got the e-mail and I'll

15  sign the protocol.  I remember that Mylan had a similar-type

16  issue.  Hopefully, that could be worked out, but I would think

17  that a very, very, very easy way for Mylan to get this behind

18  it, is to agree to the same protocol, if the plaintiffs have

19  no objection, to the protocol that Teva agreed to, which

20  appears eminently reasonable.

21           So hopefully, Mylan, we can put that issue behind us

22  and not have -- in short, there doesn't seem to be any good

23  reason why Mylan can't file -- can't follow the same protocol

24  that the parties agreed to with Teva.

25           So I commend the parties.  The order will be entered.

1          MR. GOLDBERG:  Your Honor.

2          JUDGE SCHNEIDER:  Yes.

3          MR. TRISCHLER:  Excuse me, Your Honor, Clem

4    Trischler, if I may.  On behalf of Mylan, I certainly

5    appreciate the Court's comments and I did note that yesterday,

6    receiving notice of the filing and the Teva protocol, I've not

7    had a chance to study it.

8          Mr. Slater and I, and other members of our team have

9    certainly continued to talk about Mylan's request to cut off

10   the review based on TAR, and I think we continue to work on

11   that.

12         There are some different -- again, without having

13   studied the protocol, I know there are some differences in how

14   the documents were collected by Teva that differ from how

15   Mylan's collection of documents was made, and, you know, their

16   ability to eliminate the use of search terms and having to go

17   back and reinvent the wheel.  So there may be some differences

18   that preclude Mylan from simply adopting the Teva protocol,

19   and I just wanted to make that point to the Court.

20         We're certainly going to look at it and continue to

21   talk to Mr. Slater and the members of the plaintiffs' group on

22   that, but, you know, I just simply wanted to point out, Your

23   Honor, that it may not be as simple as it first appears,

24   simply because we collected documents based on search terms.

25         And if we had to go back and collect entire custodial

1    productions without regard to the search terms, that would be

2    adding to the expenses that we're trying to eliminate.

3        So there are simply some differences and that's all I

4    wanted to point out to the Court.  I remain confident we'll be

5    able to work it out, but it may not be as simple as it first

6    appears.

7        JUDGE SCHNEIDER:  Thank you for that, Mr. Trischler.

8    I don't doubt that you're correct, and I'm just hopeful,

9    whatever you and plaintiffs agree on will certainly be blessed

10   by the Court.

11       So if there are nuances and differences, it's of no

12   matter to the Court as long as you agree to it.

13       The Issue No. 5 on the agenda is the wholesaler and

14   retailer pharmacy defendant discovery dispute.

15       I have a question about that.

16       If your proposal about the schedule change is

17   adopted, is this an issue we need to address now?

18       MR. STANOCH:  Your Honor, this is David Stanoch for

19   plaintiffs.  No.  As of 10 p.m. last night, if the parties'

20   proposed scheduling modification is accepted by Judge Kugler,

21   we do not need to address this issue now.

22       So perhaps we can wait and see what Judge Kugler says

23   and then if necessary, reconvene later today, Your Honor, if

24   necessary, on this.

25       JUDGE SCHNEIDER:  That's perfectly fine with the

 1    Court.  I'm sorry.

 2          MS. JOHNSTON:  Yes, Your Honor, for the -- sorry,

 3    Your Honor, this is Sarah Johnston for the retailer and

 4    pharmacy defendants.  I agree with Mr. Stanoch.  I think this

 5    is something that can be pushed off pending the discussion

 6    with Judge Kugler.  So we would agree.

 7          JUDGE SCHNEIDER:  The only question I have and I

 8    guess we don't have to resolve it now is -- and just help me

 9    by refreshing my recollection.

10          Did we ever enter a set of document requests or fact

11    sheets that the wholesaler defendants had to answer?  In other

12    words, Court-approved fact sheets or document requests?  Can

13    you refresh my recollection about that?

14          MR. STANOCH:  Your Honor, David Stanoch for

15    plaintiffs.  The answer is yes to both.  The Court did enter

16    the approved defendant fact sheets for all tiers of defendants

17    including the wholesaler defendants, and on the document

18    request front, yes, starting from December through July, there

19    were meet and confers and then letter briefing and ultimately

20    Your Honor entered a first set of document requests to the

21    wholesale defendants.

22          You know, at the time, I think it was the

23    understanding or implicit understanding of everyone, including

24    the Court, that those were narrowed and focused in breadth and

25    scope, much more so than the manufacturer requests and that

1   there would be a later time, perhaps, for additional discovery

2   requests to these tiers of defendants, and that's what the

3   issue is here in No. 5.

4       JUDGE SCHNEIDER:  We don't have to decide that issue

5   right now, but what did trouble me a bit, and I don't want to

6   make a big megillah out of it now, especially if it's an issue

7   we could push back, is that if there was an objection that

8   could have been asserted to the request that the Court already

9   addressed and Court approved, but now that objection is being

10  asserted, that would be very troublesome to the Court.

11      And when I saw the discussion about the objection

12  based on the Drug Supply Chain Security Act, I just wondered

13  if that was an issue in this case, was it an issue that could

14  have and should have been raised earlier, and if not, at least

15  I would think you would defeat the purpose of the Court's

16  order, because again, you heard me say this a thousand times

17  in this case, let's tee up all the objections, get them

18  resolved, so there's no objection to the Court-approved

19  requests.

20      Was this drug supply issue an objection that could

21  have and should have been raised earlier in the case, or is

22  this something that is just coming to fruition because of

23  these new requests that plaintiffs want to make?

24      MR. GEOPPINGER:  Your Honor, Jeff Geoppinger for the

25  wholesaler defendants.  And, Your Honor, I think we've moved

 1    on to Issue 6 in the letter, and -- about that, what I'll call

 2    the T-3 data.

 3          And, Your Honor, the issue was, in the original

 4    request, the plaintiffs asked for exemplars of shipment

 5    documents.  And in responding to those -- and that request was

 6    not one that was subject to briefing and much debate,

 7    actually, Your Honor, at all.

 8          It was -- in the final approved request, the

 9    wholesaler defendants answered that request.  The wholesaler

10    defendants each produced documents responsive to that request,

11    shipment documents.

12          But in making their response, Your Honor, and in

13    preparing that response, the wholesaler defendants realized

14    that T-3 data, which is an electronic transmission of data,

15    not an actual physical document, the T-3 data that is sent

16    down the -- sent along the supply chain from the manufacturers

17    to the wholesalers, from the wholesalers to the retailers,

18    with some modifications, is outlined in our declarations that

19    were filed with the briefing.

20          We realize that the Drug Supply Chain Security Act

21    has a very specific prohibition on wholesalers disclosing any

22    of that data, which we believe would include an exemplar of

23    that data in response to those two particular requests.

24          We included that statement, you know, after the part

25    where we said we're producing documents responsive to this

1    request, the shipment documents, we provided the plaintiffs

2    notice in our response as of -- our first responses to those

3    requests in, I believe, August, that this particular

4    prohibition in the statute required, obligated the defendant,

5    the wholesaler defendants to maintain the confidentiality of

6    that information.

7         So, Your Honor, the plaintiffs have -- it

8    characterizes an objection in a waiver issue.  However, the

9    wholesaler defendants firmly believe, Your Honor, that this

10   is, you know, this is the statutory requirement, the law of

11   the United States that they're required to follow, and they

12   have indicated to the plaintiffs in their responses that they

13   would do so.

14        But those responses, you know, it's not like we

15   didn't produce any documents in response to that, what -- that

16   request, which is a little bit broader than just asking for

17   this data.  We produced those documents, we just provided the

18   plaintiffs notice that with respect to this electronic data,

19   there is this prohibition and that we cannot have an exemplar

20   of that electronic data with substantive information in it,

21   because the statute says we're not allowed to disclose it.

22        JUDGE SCHNEIDER:  Counsel -- hold on, hold on.

23   Counsel, if you answered my question, I didn't get it, and I

24   don't understand it.

25        The question was, was this an objection?  Was this an

1    issue that could have been asserted in response to the request

2    that the Court and the parties spent so much time dealing

3    with?  That was my question.

4         MR. GEOPPINGER:  The statutory provision --

5    prohibition certainly existed prior to the briefing and the

6    discussions of the request for production.  However, that's --

7         JUDGE SCHNEIDER:  That's what I thought.  So if the

8    statute provision was there, why wasn't it raised when the

9    Court entered its order, because the Court order is perfectly

10   clear that these are Court-approved and no objections are

11   permitted.

12        MR. GEOPPINGER:  I understand that, Your Honor, and

13   the two-part answer is, first, Your Honor, when putting

14   together the request, the request is not for T-3 data, the

15   request is for shipment documents.  In putting together our

16   response to the request, we looked at the issue of the

17   shipment documents, we produced those.  We look at this issue

18   of the T-3 data, which was -- was generally discussed in terms

19   of what gets passed along, but was not necessarily

20   encompassed, you know, at first blush within the request.

21        The request has not given us the T-3 data.  But in

22   looking at it, we consider whether the data would be

23   responsive, and we recognize this prohibition on the data and

24   we provided notice of it.

25        And, Your Honor, I appreciate wholeheartedly that the

1    Court order RFPs saying no objections, but I respectfully

2    submit, Your Honor, that the statutory prohibition is not an

3    objection we're asserting, it's a requirement under the law

4    that we're complying with.

5             JUDGE SCHNEIDER:  Plaintiff, I don't think we need to

6    hear counsel argument on this, because the issue is not going

7    to be decided at this point.

8             But that was a very troublesome point that was raised

9    in the letter, because, you know, one of the -- one of the

10   guide stones in this case, and we've done it a million,

11   million times is, let's get all the objections teed up,

12   decided, so we get clean responses to discovery, we can move

13   this process along.

14            I don't know if I'm going to be around to decide this

15   issue.  I know how I would decide it.  But since it doesn't

16   have to be decided today, it will just be deferred.

17            The next issue is --

18            MR. STANOCH:  Your Honor, I'm sorry.  I need to

19   belabor it.  David Stanoch for plaintiffs.  I agree -- we

20   agree with everything you've said, Judge, but I guess that's

21   -- these are extant requests that have been out there, that we

22   negotiated from December 2019 through August of 2020, and then

23   we -- and now here we are in December 2020.

24            This is not a category that can get deferred.  We

25   think it should be teed up and if Your Honor would like us to

1    -- or the defendants to brief the motion for protective order,

2    they're the ones saying they can't produce it, maybe that's

3    the way to go.

4          But we don't -- I think this is different than the

5    other issue of new requests we want to serve which may be able

6    to wait a little bit versus requests that we argued, briefed,

7    Court entered.  It's now ripe, and whatever Your Honor would

8    like to do, we think we should tee it up.

9          JUDGE SCHNEIDER:  Okay.  Here's what you do, Counsel.

10   What I'm hearing from you, Mr. Stanoch is, this is an issue

11   related to the Court-approved requests; is that right?

12         MR. STANOCH:  Correct, Your Honor.

13         JUDGE SCHNEIDER:  All right.  I want the -- I'm going

14   to order the parties to file simultaneous briefs on this issue

15   by January 4th, on the DSCSA issue, whatever it's called, and

16   then we're going to have a phone call on January 5th to deal

17   with the subpoenas, and we'll put this issue on the agenda for

18   that call as well.

19         The only other issue I want to address is whether

20   there was a forfeit or the waiver of the objection, based on

21   the DSCSA.  Do we have to deal with the redaction issue also?

22         MR. SLATER:  Hello, Your Honor, it's Adam Slater.

23   You know, I certainly think that the redaction issue needs to

24   be addressed, if not today, in the very short term, because

25   Your Honor can see, for example, the burdens that are being

1    placed on us in having to exclude documents and discussion

2    from our briefs, and can imagine what's going to happen when

3    we start taking the depositions and motions for protective

4    orders get filed and all these other things.  Plus the

5    significant public health ramifications of what occurred on

6    the watches of these various manufacturers.

7            So, you know, we certainly want to be able to get

8    that process rolling, because if we do prevail, we certainly

9    want to have Torrent begin to de-designate documents and clean

10   up its production, and, you know, similar challenges have been

11   made to other defendants.  And, for example, on today's

12   filing, there's a need for ZHP to follow the rule in terms of

13   whether it wants to seal those documents that were not filed

14   publicly today.

15           So it's just certainly something that we wouldn't

16   want to linger much longer.  It doesn't have to be today, but

17   certainly, something we want to address in the near term.

18           JUDGE SCHNEIDER:  Okay.  Is -- what are you asking

19   for, a removal of all of the redactions, Mr. Slater?

20           MR. SLATER:  Well, in terms of the Torrent documents,

21   what we're asking for is that those documents be de-designated

22   because we don't believe that --

23           JUDGE SCHNEIDER:  You're going to get a ruling on

24   that.  Don't worry about that.

25           MR. SLATER:  Okay.

```
 1          JUDGE SCHNEIDER:  The redaction issue on Page 18 of
 2   the letter.
 3          MR. SLATER:  I'm sorry.  I might be speaking to a
 4   different issue.
 5          JUDGE SCHNEIDER:  The Torrent issue is --
 6          (Reporter asks judge to repeat.)
 7          MR. SLATER:  Your Honor, I was not speaking to that
 8   issue, so I apologize.  I thought you went to the Torrent
 9   issue.  That's not an issue for me to speak to.  I apologize.
10          JUDGE SCHNEIDER:  No, but I -- what I had said,
11   Karen, is the Torrent, T-O-R-R-E-N-T, issue is well in hand.
12          I'm talking about the redaction issue on Page 18 of
13   the letter.
14          MR. GEOPPINGER:  Your Honor, Jeff Geoppinger again
15   for the wholesaler defendants.  I believe that that redaction
16   issue which you're referring to is -- has come up in the
17   context of the fact that the plaintiffs have asked us to
18   produce entire copies of supplier agreements.  And the two
19   issues with that are, first of all, Your Honor, there isn't a
20   request in a Court order, an approved request, that are in
21   effect that seeks supplier agreements.
22          Secondly, the redaction issue with those documents, I
23   believe, stems from the fact that there is a -- there was a
24   request to which the wholesaler defendants responded, No. 21,
25   for the production of indemnity agreements.
```

1        And certain defendants produced copies of those

2   indemnity agreements which are encompassed within larger

3   agreements that the plaintiffs have now suggested we should --

4   the redactions in those larger agreements should be removed so

5   that the entire supplier agreement can be produced.

6        I would point out, Your Honor, again, the supplier

7   agreements, there is no requests for those and the redactions

8   were appropriate as to the rest of the agreement, so we could

9   produce the indemnity provisions which were provided to the

10  plaintiffs.

11       So we believe we've complied with the very specific

12  requests for the indemnity provisions, and that there isn't

13  one for the supplier -- the entirety of the supplier

14  agreements, which are highly confidential documents.

15       MR. STANOCH:  Your Honor, David Stanoch.  I could

16  respond substantively but I think it's more efficient if we

17  table this pending the scheduling issue, and this could be

18  something that's worked out, in the event the parties'

19  proposal and scheduling is agreed to.

20       JUDGE SCHNEIDER:  That's what I was going to suggest,

21  Mr. Stanoch.  We have so many more important issues to deal

22  with.  Not that this isn't important, but I do think we should

23  defer this to wait to see what happens with Judge Kugler and

24  the schedule.

25       No. 7, deposition protocol addendums.  I'm delighted

1   again that the parties have worked this out.  If you send that

2   to the Court, it will be promptly entered and approved.

3          With regard to the Torrent confidentiality

4   designation, you will get a ruling on that promptly.

5          With regard to the stipulation No. 9, very last thing

6   in Mr. Slater's letter presented to the Court, and it will be

7   entered and approved.

8          Mr. Goldberg, are there any issues on your letter

9   that we haven't addressed thus far?

10         MR. GOLDBERG:  I'm just paging through that right

11  now, Your Honor.  I will note for the Court that the Chinese

12  and Indian addendums are at Exhibit F and H of defendants'

13  letter if Your Honor wanted to order -- wanted to approve

14  those.

15         JUDGE SCHNEIDER:  Right.

16         MR. GOLDBERG:  Or we could submit them separately.

17         JUDGE SCHNEIDER:  I'll take it.  Don't worry,

18  Mr. Goldberg.  That's fine.

19         MR. GOLDBERG:  And the only other issue on our letter

20  I think is the -- the show cause orders for the plaintiff fact

21  sheet deficiencies, and that's a Judge Kugler issue, so I

22  think we have -- I think we've completed all the issues that

23  were before Your Honor today.

24         JUDGE SCHNEIDER:  Okay.  Great.  So, this is what I

25  suggest, Counsel.  It's 12 o'clock now.  I'm going to get in

 1  touch with Judge Kugler.  You can either hang in or call back

 2  in.

 3          Let me suggest we all call back in or stay on the

 4  line until 12:15, and then I expect by then, Judge Kugler will

 5  be on the line.  Okay?

 6          MR. SLATER:  Sounds good.  Thank you, Your Honor.

 7          MR. GOLDBERG:  Thank you, Your Honor.

 8          JUDGE SCHNEIDER:  12:15, we'll be back.  Thank you,

 9  Counsel.  Bye.

10          (Recess taken; 12:00 p.m.)

11          (Recess ended; 12:15 p.m.)

12          JUDGE KUGLER:  Couple things I guess we're going to

13  go over this morning or this afternoon.

14          I expect to enter the order under Rule 53 appointing

15  Judge Vanaskie sometime today, and if not today, tomorrow.  So

16  you'll see that will hit your docket pretty soon.

17          As you've seen, I've filed my first opinion orders in

18  your motions for dismissal.  As I finish them, I will roll

19  them out.  I'm doing this -- doing them as quickly as I can do

20  them, but I think we're making good progress on them, and in

21  that regard, please don't file motions for reconsideration.

22  It's a very difficult burden to meet.  They're not going to be

23  well-received, I can tell you that.  That's the point of the

24  motion.

25          If you think I'm wrong and I've made a mistake,

1    that's fine, given all the issues in this case, we will be

2    making mistakes, but that's what the Court of Appeals is for.

3    And in that regard, I can tell you that I've never granted a

4    1292(b) motion to certify a judgment, and nor would I think it

5    would be appropriate in this case, because I can't see how

6    that would materially advance the ultimate termination of any

7    parts of this litigation.

8           With that said, we have some orders to show cause to

9    go through today, and this is Mr. Trischler's letter from

10   yesterday, beginning at Page 11.  There were three matters, he

11   says, that had been agreed.

12          First is James Suits, S-U-I-T-S.  Apparently you've

13   agreed to put that off; is that correct?

14          MR. TRISCHLER:  Your Honor -- go ahead, Steve.

15          MR. HARKINS:  Your Honor, this is Steve Harkins with

16   Greenberg Traurig for the Teva defendants and the defense

17   group.  That is correct, and in addition to the three cases

18   that we have listed here, we've also received some additional

19   updates since last May.  Four cases where we are no longer

20   requesting dismissal.

21          JUDGE KUGLER:  Well, in the Suits matter, do you want

22   them listed next month or is that to be dismissed totally?

23   The first one.

24          MR. HARKINS:  Your Honor, the parties have agreed to

25   remove that.  If we need to relist the case, we will do so at

1    that time.

2        JUDGE KUGLER:  Okay, James Suits will be -- the order

3    to show cause will be dismissed.

4        Linda White is the next one, that order to show cause

5    will be dismissed, and the Maria Noble, N-O-B-L-E, case

6    apparently has been dismissed.  So that order to show cause

7    will be dismissed.

8        Now, you have -- these others, apparently, you have

9    some information on these others.  Go ahead.

10        MR. HARKINS:  Yes, Your Honor, again, Steven Harkins.

11    The first case, the parties have agreed to remove the

12    Torghele, T-O-R-G-H-E-L-E, case.  So that order to show cause

13    can be dismissed.

14        JUDGE KUGLER:  Okay.

15        MR. HARKINS:  And the Ralph Carnley, C-A-R-N-L-E-Y,

16    case, we received an update last night, so that can be

17    dismissed as well.

18        JUDGE KUGLER:  Okay.  Any other matters to -- of the

19    orders to show cause to be dismissed at this time?

20        MR. HARKINS:  And the final one is Welch, W-E-L-C-H,

21    we received another update.  That can be dismissed and we are

22    requesting orders to show cause then only as to the remaining

23    three cases.

24        JUDGE KUGLER:  All right.  So that leaves Charleston

25    Pittman, P-I-T-T-M-A-N.  Any objections to that?

| | |
|---|---|
| 1 | MS. GOLDENBERG:  Your Honor, this is Marlene |
| 2 | Goldenberg on behalf of the plaintiffs.  I believe that |
| 3 | Mr. Sileo who represents Mr. Pittman was going to try and be |
| 4 | on the call today.  Mr. Sileo, are you here? |
| 5 | Okay.  It's my understanding that he has a meet and |
| 6 | confer set up with defendants to resolve this issue, but |
| 7 | that's as much information as I have on this particular case. |
| 8 | JUDGE KUGLER:  Okay.  Well, I don't know anything |
| 9 | about that.  Is that true? |
| 10 | MR. HARKINS:  Your Honor, for the defendants, I'm not |
| 11 | aware of that.  I know we have other counsel on the call, but |
| 12 | none of that has been conveyed to us as sort of the |
| 13 | coordinating firm on these. |
| 14 | JUDGE KUGLER:  All right.  Well, that's what we're |
| 15 | going to do.  We're going to -- I'm going to grant the motion, |
| 16 | we'll dismiss the Charleston Pittman matter, and if they want |
| 17 | to have it reinstated, then they can make the appropriate |
| 18 | motion. |
| 19 | MR. SILEO:  Judge, this is John Sileo.  I'm sorry, my |
| 20 | phone was muted. |
| 21 | We did provide all the information.  I'm sorry, but |
| 22 | I'm meeting and conferring with my client, and trying to just |
| 23 | voluntarily dismiss it.  But if this Court is dismissing it, |
| 24 | fair enough.  We've given all the information we have. |
| 25 | JUDGE KUGLER:  I appreciate that you have, Mr. Sileo, |

 1    but we have a process here, and I'm going to dismiss that

 2    matter.

 3         MR. SILEO:  No problem, Your Honor.

 4         JUDGE KUGLER:  Danny Terhune, T-E-R-H-U-N-E.  Any

 5    objection to that dismissal of that case?

 6         Hearing none, the Danny Terhune matter will be

 7    dismissed.

 8         Patrick Belcuore, B-E-L-C-U-O-R-E.  Any objection to

 9    dismissal of that case?

10         Hearing none, that case will be dismissed.

11         By now, there are 11 beginning at Page 16 that the

12    defendants seek listing for orders to show cause.  Is that

13    still, or the defendants seek for 11 of these?

14         MR. HARKINS:  Your Honor, for the defendants, the one

15    case where we did receive an update is the John Schiano,

16    S-C-H-I-A-N-O, case.  That can be removed.

17         We are still requesting orders to show cause as to

18    the remaining 10.

19         JUDGE KUGLER:  No. 7 on that list, does anybody want

20    to speak on behalf of the plaintiffs?

21         MS. GOLDENBERG:  Your Honor, this is Marlene

22    Goldenberg.  I have updates from a couple of the plaintiffs'

23    counsel who have cases on this list.

24         My understanding is that Euric Thomas, the plaintiff

25    fact sheet, if it hasn't been served already, should be served

1    today.  That's the case represented by Hollis law.

2          There is another case, Rosa Lee Robinson, and I

3    apologize, I don't have the numbers written down on the tables

4    here, but those medical expenses, I believe, are going to be

5    supplemented by the firm.

6          And then the last one that I received an update on

7    from counsel, is on the Richard Miller case, and it sounds

8    like authorizations have been uploaded and defense counsel can

9    confirm for me whether or not they received it, but it sounds

10   like all the information has been provided.

11         JUDGE KUGLER:  I don't have the Robinson case on the

12   list of cases that they're seeking an order to show cause.

13         MS. GOLDENBERG:  Oh, you know what, I apologize.  I

14   think that might be on -- that's on the first listing table,

15   so that one, we can get to later.

16         JUDGE KUGLER:  And the other one, you said Miller,

17   Miller case, is that the name?

18         MS. GOLDENBERG:  Richard Miller, I believe is the

19   last one, and that one is, oh, you know what, that's the first

20   listing as well.  Sorry.

21         JUDGE KUGLER:  All right.  So the other ten will be

22   moved to an order to show cause.  That would be Kelly Smoot,

23   S-M-O-O-T; Houchin, H-O-U-C-H-I N, Troyce, T-R-O-Y-C-E; Thomas

24   Aikens, A-I-K-E-N-S.

25         MR. COHEN:  Good afternoon, Your Honor, this is Sam

1    Cohen from the law offices of Henry Schwartz.  Our firm

2    represents Nos. 3 through 5 on this list, Thomas Aikens,

3    Sharon Lomax, and John Napolitano.  We only request a little

4    bit more time, that an order to show cause not be entered.

5    I've been in close contact with Nos. 3 and 4, Aikens and

6    Lomax.  We provided a -- we filed an initial fact sheet and

7    upon receipt of the deficiency notice.  These clients are

8    older and they typically have to, you know -- they moved to

9    South Carolina, they have to travel to the library to, you

10   know, exchange certain items of information.

11         So we've received updates from them, and we are going

12   to file our amended fact sheet imminently.  The only issue is,

13   you know, they provided some incomplete items and information

14   and I figured we'd do it all at once rather than have the

15   inefficiency of going back and forth.

16         So we just request extra time before an order to show

17   cause be entered, so we can file our amended personal injury

18   fact sheet.

19         JUDGE KUGLER:  You have enough time because the cases

20   won't be dismissed until they hit that order to show cause

21   list, which is another 30 days.

22         So my suggestion to you is you confer with defense

23   counsel.  I'm going to put him on the order to show cause list

24   for now, and then we'll see what happens in 30 days and maybe

25   you can work it out with defense counsel at that time and we

```
 1    can dismiss the orders to show cause.

 2             (Reporter asks counsel to repeat.)

 3             JUDGE KUGLER:  Your name, please.

 4             Counsel, your name.

 5             MR. COHEN:  Oh, sure.  My name is Sam Cohen.  I'm

 6    from the law offices of Henry Schwartz.  I'm the associate

 7    handling this case with Mr. Schwartz.

 8             JUDGE KUGLER:  Okay.

 9             What were you saying about No. 5, I think?

10             MR. COHEN:  Yes, No. 5.  So these cases were referred

11    to our office, and we've had difficulty corresponding with

12    this client, so we will likely be moving to be withdrawn as

13    counsel.  And so we're just, you know, again requesting that

14    the order to show cause not be entered so we can make our

15    motion to be removed as counsel.  He's been, you know,

16    nonresponsive and not participating in the completion of this

17    information -- of these fact sheets.

18             JUDGE KUGLER:  Well, I'm going to deny your request.

19    We need to move this along.  So John Napolitano will be

20    subject to an order to show cause.

21             Danny Hebert, H-E-B-E-R-T; Sonja, S-O-N-J-A,

22    Newcombe, N-E-W-C-O-M-B-E; Naomi Williams; Johnny Ware,

23    W-A-R-E; and Euric, E-U-R-I-C, Thomas will be listed, as an

24    order to show cause why they should not be dismissed.

25             And the next list is, there's nine cases and the
```

1  first listing and I guess defense counsel wants to move them

2  along.  Any objections to these nine?  Are there any updates

3  on these nine?

4       MR. HARKINS:  Your Honor, this is Steve -- sorry, go

5  ahead, Marlene.

6       MS. GOLDENBERG:  Sorry, go ahead.

7       MR. HARKINS:  Your Honor, this is Steve Harkins again

8  for the defendants.  We were going to agree, we did receive an

9  update on the Richard -- on the Miller case which

10 Ms. Goldenberg referenced previously.  We agree that can be

11 removed.

12      I don't know if there are any other updates the

13 plaintiffs would like to provide us, but that was the one that

14 we had.

15      JUDGE KUGLER:  I think Rosa Lee Robinson, also,

16 wasn't it?

17      MS. GOLDENBERG:  Yes, Your Honor.  The e-mail I

18 received from that firm's counsel this morning indicated that

19 they plan on supplementing their medical expenses which, it's

20 my understanding, is that's the only thing that's missing.

21      The Court has previously been flexible because there

22 was a later ruling that medical expenses needed to be provided

23 and records needed to be ordered.  So knowing, I believe, that

24 this is the only thing that's missing, we would ask that this

25 case be taken off the list so that firm could be allowed to

 1    supplement.

 2          JUDGE KUGLER:  It's only going to be a second

 3    listing.  We're not even to the order to show cause stage yet

 4    for Rosa Lee Robinson.  So let's just list this and then next

 5    month, hopefully, it will get dropped and we won't have to

 6    worry about it anymore.

 7          Then there are two cases at the end, Teddy Hill and

 8    Carolyn Trowbridge, T-R-O-W-B-R-I-D-G-E, which there are

 9    deficiencies and which defense counsel would like listed.

10          Any comments on those?

11          MR. HARKINS:  Steve Harkins with Greenberg Traurig

12    again.  No updates from defendants on those two cases.

13          JUDGE KUGLER:  Okay.  We will continue to list those.

14          As I understand it, there's an issue about wanting to

15    postpone third-party discovery for a while.

16          Can someone summarize that for me, please.

17          MR. GOLDBERG:  Your Honor, this is Seth Goldberg on

18    behalf of the defendants, and I'll invite plaintiffs' counsel

19    to chime in on this, but the parties have been talking over

20    the past week or so about this schedule that the Court has

21    entered, and what the parties are -- have on their plate in

22    terms of completing between now and April 1, with respect to

23    party depositions, the employees, and the defendants' class

24    representatives and some of the personal injury plaintiffs,

25    and have discussed possibly modifying the schedule to some

1  degree that would keep intact the deadlines the Court has set

2  with respect to general causation issues.

3          Fact discovery as to general causation issues being

4  completed by April 1, so that the parties can meet the Court's

5  deadlines with respect to general causation *Daubert* issues, in

6  May through November, which is set forth in CMO 22.  And

7  moving some of the discovery pertaining to third party --

8  third parties and downstream defendants beyond April 1, and

9  basically trying to have a period of discovery that would

10  focus on the general causation issues between now and April 1,

11  and then the third-party issues and downstream defendants

12  April 1 to August 1, and we've also been discussing adding to

13  the schedule a period of class certification briefing to come

14  at the end of 2021 and into 2022.

15          And we have agreement on a few key dates and are

16  hoping to -- the Court would be open to receiving a schedule

17  from us that would make these modifications, but, of course,

18  we're most mindful in trying not to move the deadlines the

19  Court has already established.

20          JUDGE KUGLER:  Mr. Slater or somebody want to speak

21  for the plaintiffs?

22          MR HONIK:  Your Honor, this is Ruben Honik.  Good

23  afternoon.  Myself and a number of us, as Mr. Goldberg has

24  suggested, have met and conferred on a number of occasions

25  with an eye toward, frankly, creating some relief from a very

1  substantial and maybe onerous discovery period to close on

2  April 1, and discuss whether we could have some overflow

3  discovery occur after that, between April and August, without

4  doing any violence to the remainder of the schedule, that is

5  to say, the general causation deadlines and the related

6  *Daubert* motions and so on.  And we've come to the conclusion

7  together that that can be achieved, and, in fact, make it a

8  little bit more tenable for all of us, you know, frankly, to

9  complete the necessary discovery, which as Your Honor can

10  imagine, really numbers into the many dozens of depositions,

11  when one stops to consider the existing economic class

12  representatives, the ones we're going to be adding, the

13  personal injury, you know, bellwether plaintiffs, if you will.

14        There's a lot to be done.  So Mr. Goldberg, I think,

15  has accurately summarized where we've landed, which is to say

16  that we've tried to build into the existing schedule without

17  doing any violence to the major deadlines of causation,

18  *Daubert* and so forth, but allow a little breathing room to

19  come after April, primarily in the form of third-party

20  depositions, but also some of the personal injury plaintiffs,

21  and we are prepared, subject to your review, to lay that out

22  in the form of a submission so that you can see, you know,

23  where we -- where we want to modify CMO 22.

24        In addition, and I'll stress this as well, in -- in

25  our last case management conference, Your Honor, I thought,

 1   was pretty clear in developing this general causation track

 2   with related *Daubert* briefing and hearing, really leading to a

 3   decision by the Court in this area, but at the same time,

 4   mindful that our eye is still on getting motions for class

 5   certification.

 6        And so part of our meet and confers and agreement,

 7   candidly, has been to propose tacking on some deadlines for

 8   briefing that will somewhat parallel the briefing in *Daubert*

 9   so that by the end or beginning of '22, as specifically

10   February 15th, we've agreed with the defendants that we want

11   to have full briefing on certification to you with some follow

12   up *Daubert* on class experts thereafter.

13        In this way, we believe when Your Honor has had an

14   opportunity to have full briefing on general causation and

15   related *Daubert* of causation experts, the Court will be in a

16   position having, you know, had briefing on Rule 23 in order to

17   turn its attention to that important question in this case.

18        JUDGE KUGLER:  Well, I had to chuckle when I heard

19   you use the word, "onerous."  I'll accept it's difficult, but

20   of course things are always difficult and I think we, from day

21   one, have been telling you that we're going to ride pretty

22   hard on this case and I think we have.  But there are good

23   reasons to do that.

24        But I'm receptive to a proposal, particularly a joint

25   proposal, from counsel as to these third party and downstream

 1  people and discovery of them.

 2          So why don't you keep working on it and submit

 3  something to us in the near future.  We'll take a look at it.

 4  Okay?

 5          MR HONIK:  We'll do that, Your Honor.  Thank you,

 6  Your Honor.

 7          JUDGE KUGLER:  Anything else we want to talk about?

 8  All right.  Well, have a great holiday and Happy New Year.

 9          Please, everyone, stay well, and hopefully, sometime

10  in the spring or if not the spring, the early summer, we can

11  get you all back in the courtroom and meet person to person,

12  which is, I think what we all enjoy more than telephone and

13  certainly video.

14          Thanks, everybody.  Take care of yourselves.

15          (12:38 p.m.)

16          - - - - - - - - - - - - - - - -

17

18          I certify that the foregoing is a correct transcript

19  from the record of proceedings in the above-entitled matter.

20

21  */S/ Karen Friedlander, CRR, RMR*
    *Court Reporter/Transcriber*

22

23  *December 22, 2020*
    *Date*

24

25

**'**

**'21** [1] - 13:16
**'22** [1] - 76:9

**/**

**/S** [1] - 77:21

**0**

**07068** [1] - 1:15

**1**

**1** [26] - 11:6, 11:14, 12:19, 12:22, 13:1, 13:3, 13:5, 13:16, 13:25, 14:3, 14:6, 14:8, 14:18, 16:17, 17:9, 19:21, 20:12, 45:17, 73:22, 74:4, 74:8, 74:10, 74:12, 75:2
**10** [5] - 11:16, 31:9, 31:13, 52:19, 68:18
**103** [1] - 1:14
**10:05** [1] - 1:9
**10:08** [1] - 4:2
**11** [3] - 65:10, 68:11, 68:13
**11th** [2] - 37:6, 39:11
**12** [1] - 63:25
**1292(b** [1] - 65:4
**12:00** [1] - 64:10
**12:15** [3] - 64:4, 64:8, 64:11
**12:38** [1] - 77:15
**12th** [1] - 37:11
**13** [1] - 34:18
**13th** [1] - 6:24
**14** [5] - 29:8, 31:13, 32:25, 34:18, 44:18
**14-day** [2] - 24:21, 24:22
**15219** [1] - 2:25
**15th** [2] - 10:13, 76:10
**16** [1] - 68:11
**17th** [1] - 2:10
**18** [2] - 61:1, 61:12
**1835** [1] - 1:18
**19** [1] - 14:3
**19-2875** [1] - 4:4
**19103** [2] - 1:18, 2:10
**19th** [2] - 7:1, 12:22
**1:19-md-02875-RBK-JS** [1] - 1:6
**1st** [3] - 19:11, 36:17, 36:23

**2**

**2** [3] - 6:21, 20:13, 45:17
**20** [2] - 40:20, 40:22
**2014** [1] - 43:12
**2019** [3] - 15:2, 33:11, 58:22
**2020** [5] - 1:8, 4:1, 58:22, 58:23, 77:23
**2021** [2] - 15:3, 74:14
**2022** [1] - 74:14
**2029** [1] - 2:21
**21** [1] - 61:24
**2150** [1] - 2:7
**22** [8] - 1:8, 4:1, 11:13, 14:10, 14:17, 74:6, 75:23, 77:23
**23** [2] - 16:7, 76:16
**24th** [2] - 14:12, 14:13
**25** [2] - 30:11, 30:24
**2500** [1] - 2:14
**25th** [1] - 30:4
**27th** [1] - 7:7
**28** [2] - 42:17, 42:22
**28-day** [2] - 25:19, 28:12
**2800** [1] - 2:18
**2900** [1] - 1:18
**2nd** [2] - 36:18, 36:19

**3**

**3** [2] - 70:2, 70:5
**30** [4] - 2:10, 38:6, 70:21, 70:24
**30(b)(6** [6] - 6:14, 20:21, 22:6, 26:23, 45:20, 45:25
**300** [1] - 2:21
**30305** [1] - 2:14
**316** [1] - 2:3
**31st** [3] - 6:17, 19:14, 36:23
**32502** [1] - 2:4
**3333** [1] - 2:14
**37** [3] - 45:15, 45:17
**38th** [1] - 2:24

**4**

**4** [2] - 50:9, 70:5
**45** [1] - 45:16
**45202** [1] - 2:19
**49** [1] - 4:9
**4th** [1] - 59:15

**5**

**5** [6] - 17:13, 52:13,

54:3, 70:2, 71:9, 71:10
**50** [1] - 45:16
**53** [1] - 64:14
**55402** [1] - 2:7
**5th** [5] - 6:21, 7:15, 13:19, 19:22, 59:16

**6**

**6** [1] - 55:1
**600** [2] - 2:3, 2:18
**64** [1] - 1:11
**669** [1] - 7:11
**6th** [2] - 19:13, 19:22

**7**

**7** [2] - 62:25, 68:19
**7-Eleven** [1] - 47:11
**701** [1] - 1:21
**70130** [1] - 1:21
**756-0160** [1] - 1:24

**8**

**800** [1] - 2:6
**856** [1] - 1:24
**8th** [1] - 34:16

**9**

**9** [1] - 63:5
**90067-2904** [1] - 2:22

**A**

**A-I-K-E-N-S** [1] - 69:24
**a.m** [2] - 1:9, 4:2
**ability** [2] - 48:23, 51:16
**able** [18] - 12:16, 25:7, 28:3, 30:13, 33:5, 33:11, 33:14, 35:23, 36:4, 38:18, 43:19, 46:15, 47:14, 49:20, 49:25, 52:5, 59:5, 60:7
**above-entitled** [1] - 77:19
**absolutely** [3] - 17:12, 43:14, 49:4
**acceded** [1] - 39:6
**accept** [2] - 37:7, 76:19
**accepted** [1] - 52:20
**accommodate** [1] - 31:22
**accommodation** [1] - 38:24

**according** [1] - 43:12
**accurately** [1] - 75:15
**achieve** [1] - 14:25
**achieved** [1] - 75:7
**acknowledging** [2] - 29:14, 34:7
**Act** [2] - 54:12, 55:20
**act** [1] - 22:25
**Actavis** [1] - 2:15
**acting** [2] - 38:12, 39:20
**ACTION** [1] - 1:5
**actual** [1] - 55:15
**Adam** [9] - 4:15, 9:4, 17:11, 18:18, 20:15, 30:15, 35:6, 47:20, 59:22
**ADAM** [1] - 1:14
**add** [3] - 13:1, 14:6, 15:7
**added** [2] - 14:5, 41:25
**addendums** [2] - 62:25, 63:12
**adding** [3] - 52:2, 74:12, 75:12
**addition** [3] - 16:7, 65:17, 75:24
**additional** [5] - 12:7, 13:5, 13:21, 54:1, 65:18
**address** [15] - 5:20, 6:2, 6:16, 6:19, 6:23, 8:3, 8:7, 11:9, 21:10, 28:15, 38:21, 52:17, 52:21, 59:19, 60:17
**addressed** [7] - 7:10, 12:3, 17:13, 22:16, 54:9, 59:24, 63:9
**adhere** [2] - 17:19, 34:9
**adopted** [1] - 52:17
**adopting** [1] - 51:18
**advance** [2] - 43:23, 65:6
**advancing** [1] - 16:1
**affidavit** [1] - 46:19
**afternoon** [3] - 64:13, 69:25, 74:23
**agenda** [3] - 50:9, 52:13, 59:17
**ago** [1] - 21:25
**agree** [11] - 15:13, 47:22, 50:18, 52:9, 52:12, 53:4, 53:6, 58:19, 58:20, 72:8, 72:10
**agreed** [10] - 12:13, 15:12, 50:19, 50:24, 62:19, 65:11, 65:13,

65:24, 66:11, 76:10
**agreed-upon** [1] - 15:12
**agreement** [6] - 12:15, 16:8, 62:5, 62:8, 74:15, 76:6
**agreements** [8] - 61:18, 61:21, 61:25, 62:2, 62:3, 62:4, 62:7, 62:14
**agrees** [1] - 18:14
**ahead** [5] - 23:18, 65:14, 66:9, 72:5, 72:6
**Aid** [1] - 5:13
**aided** [1] - 1:25
**Aikens** [3] - 69:24, 70:2, 70:5
**alert** [2] - 9:12, 20:10
**ALFANO** [1] - 2:23
**ALL** [1] - 4:1
**alleving** [1] - 16:16
**allow** [1] - 75:18
**allowed** [2] - 56:21, 72:25
**allows** [1] - 28:1
**alter** [1] - 12:19
**altering** [1] - 16:1
**amend** [1] - 7:11
**Amended** [1] - 10:5
**amended** [2] - 70:12, 70:17
**amending** [1] - 9:11
**AmerisourceBergen** [2] - 2:19, 5:9
**amount** [1] - 43:19
**analysis** [2] - 36:7, 36:8
**anchors** [1] - 12:13
**AND** [1] - 1:6
**Angeles** [1] - 2:22
**answer** [6] - 15:19, 21:19, 39:22, 53:11, 53:15, 57:13
**answered** [2] - 55:9, 56:23
**answering** [1] - 31:8
**anticipate** [4] - 5:23, 12:15, 17:9, 19:1
**anyway** [1] - 41:3
**apex** [5] - 40:5, 40:9, 42:19, 44:9, 44:19
**Apex** [2] - 42:18, 45:23
**API** [9] - 25:25, 26:1, 26:17, 26:19, 26:20, 26:21, 36:2, 43:8, 49:13
**apologize** [4] - 61:8, 61:9, 69:3, 69:13

**Appeals** [1] - 65:2
**appear** [2] - 23:15, 34:15
**appearance** [2] - 4:8, 4:12
**appearances** [1] - 4:14
**application** [1] - 38:25
**applied** [1] - 47:8
**appointing** [1] - 64:14
**appreciate** [6] - 34:7, 47:6, 47:7, 51:5, 57:25, 67:25
**appreciates** [2] - 32:22, 38:8
**approach** [1] - 47:16
**appropriate** [6] - 16:6, 22:18, 47:1, 62:8, 65:5, 67:17
**approve** [1] - 63:13
**approved** [12] - 6:15, 8:1, 53:12, 53:16, 54:9, 54:18, 55:8, 57:10, 59:11, 61:20, 63:2, 63:7
**April** [27] - 11:14, 12:19, 12:22, 13:1, 13:3, 13:5, 13:16, 13:25, 14:3, 14:6, 14:8, 14:18, 16:17, 17:9, 19:11, 19:21, 36:17, 36:23, 38:22, 73:22, 74:4, 74:8, 74:10, 74:12, 75:2, 75:3, 75:19
**area** [1] - 76:3
**argued** [1] - 59:6
**argument** [9] - 19:16, 23:10, 27:11, 40:3, 40:5, 40:18, 41:14, 46:12, 58:6
**arriving** [1] - 24:22
**articulate** [1] - 11:18
**aspects** [1] - 14:1
**asserted** [3] - 54:8, 54:10, 57:1
**asserting** [1] - 58:3
**associate** [1] - 71:6
**associated** [1] - 44:18
**assume** [2] - 17:5, 19:15
**assumed** [1] - 35:20
**assumptions** [1] - 36:13
**assurance** [1] - 26:20
**assure** [1] - 16:9
**assured** [1] - 37:22
**Atlanta** [1] - 2:14
**attached** [1] - 34:17
**attachments** [1] - 11:1

**attained** [1] - 47:14
**attempted** [1] - 15:19
**attended** [2] - 43:6, 45:21
**attends** [1] - 45:6
**attention** [1] - 76:17
**August** [5] - 13:3, 56:3, 58:22, 74:12, 75:3
**authorizations** [1] - 69:8
**available** [3] - 29:25, 38:14, 41:18
**Avenue** [1] - 2:6
**avoid** [2] - 15:25, 13:21
**aware** [5] - 7:9, 9:18, 9:21, 9:22, 67:11

## B

**B-E-L-C-U-O-R-E** [1] - 68:8
**backdrop** [1] - 32:6
**bad** [3] - 27:17, 27:20
**balance** [2] - 26:6, 27:9
**bar** [1] - 46:8
**BARNES** [1] - 2:20
**base** [1] - 49:16
**based** [6] - 14:18, 41:10, 51:10, 51:24, 54:12, 59:20
**baseline** [1] - 36:5
**basis** [1] - 43:18
**Baylen** [1] - 2:3
**bear** [2] - 14:9, 15:8
**beat** [1] - 10:17
**became** [1] - 40:7
**become** [1] - 38:3
**begin** [4] - 12:21, 13:15, 13:16, 60:9
**beginning** [6] - 15:2, 33:10, 39:15, 65:10, 68:11, 76:9
**behalf** [10] - 4:16, 4:22, 4:25, 5:3, 5:12, 11:18, 51:4, 67:2, 68:20, 73:18
**behind** [2] - 50:17, 50:21
**belabor** [1] - 58:19
**Belcuore** [1] - 68:8
**bellwether** [1] - 75:13
**benefit** [2] - 17:3, 32:21
**Benicar** [1] - 40:20
**BERNE** [1] - 2:17
**best** [5] - 6:19, 7:14, 30:21, 32:2, 34:9

**better** [3] - 20:23, 25:15, 41:8
**between** [7] - 13:3, 14:3, 16:8, 38:22, 73:22, 74:10, 75:3
**beyond** [5] - 10:1, 13:1, 14:19, 21:13, 74:8
**big** [3] - 32:20, 39:15, 54:6
**bit** [11] - 15:18, 15:23, 16:12, 23:20, 24:5, 30:22, 54:5, 56:16, 59:6, 70:4, 75:8
**bless** [3] - 31:24, 32:9, 34:17
**blessed** [3] - 17:6, 33:1, 52:9
**blesses** [1] - 19:16
**blew** [1] - 18:16
**blush** [1] - 57:20
**board** [3] - 26:14, 33:8, 33:9
**BOSICK** [1] - 2:23
**bottom** [1] - 45:16
**breadth** [1] - 53:24
**break** [1] - 5:25
**breathing** [1] - 75:18
**brief** [3] - 19:14, 44:21, 59:1
**briefed** [1] - 59:6
**briefing** [15] - 12:9, 12:14, 13:9, 44:24, 53:19, 55:6, 55:19, 57:5, 74:13, 76:2, 76:8, 76:11, 76:14, 76:16
**briefings** [1] - 16:7
**briefs** [2] - 59:14, 60:2
**broader** [1] - 44:9
**brought** [2] - 14:19, 14:20
**build** [1] - 75:16
**bulk** [1] - 19:4
**bull** [1] - 23:19
**bunch** [1] - 9:22
**burden** [8] - 15:9, 42:20, 47:22, 47:23, 47:24, 48:2, 64:22
**burdens** [1] - 59:25
**burdensome** [1] - 42:19
**business** [4] - 30:17, 30:23, 32:12, 34:1
**BY** [10] - 1:14, 1:17, 1:20, 2:3, 2:6, 2:9, 2:12, 2:17, 2:21, 2:24
**bye** [1] - 64:9

## C

**CA** [1] - 2:22
**Camp** [1] - 1:21
**cancer** [1] - 6:18
**candidly** [1] - 76:7
**cannot** [2] - 44:14, 56:19
**capacity** [1] - 43:2
**captain** [1] - 19:18
**care** [2] - 20:12, 77:14
**carefully** [1] - 45:12
**Carnley** [1] - 66:15
**CARNLEY** [1] - 66:15
**Carolina** [1] - 70:9
**Carolyn** [1] - 73:8
**case** [64] - 6:18, 7:19, 11:8, 11:13, 14:1, 16:1, 16:11, 19:1, 25:22, 26:11, 26:16, 32:7, 32:20, 33:23, 33:24, 34:10, 34:24, 38:19, 39:20, 39:21, 40:15, 40:24, 40:25, 41:15, 41:24, 45:10, 46:5, 46:10, 47:10, 49:1, 49:2, 49:11, 49:16, 50:2, 50:3, 54:13, 54:17, 54:21, 58:10, 65:1, 65:5, 65:25, 66:5, 66:11, 66:12, 66:16, 67:7, 68:5, 68:9, 68:10, 68:15, 68:16, 69:1, 69:2, 69:7, 69:11, 69:17, 71:7, 72:9, 72:25, 75:25, 76:17, 76:22
**cases** [15] - 7:22, 9:7, 20:25, 44:3, 47:9, 65:17, 65:19, 66:23, 68:23, 69:12, 70:19, 71:10, 71:25, 73:7, 73:12
**cast** [1] - 45:7
**category** [3] - 19:6, 40:2, 58:24
**causation** [25] - 12:2, 12:3, 12:10, 13:6, 14:1, 14:9, 14:14, 14:15, 14:24, 15:1, 15:9, 15:22, 16:3, 16:15, 18:8, 35:18, 74:2, 74:3, 74:5, 74:10, 75:5, 75:17, 76:1, 76:14, 76:15
**Centre** [1] - 2:24
**Century** [1] - 2:21
**CEO** [4] - 40:11, 42:14, 43:2, 44:3

**certain** [5] - 13:24, 16:13, 18:7, 62:1, 70:10
**certainly** [22] - 17:14, 18:3, 20:10, 21:11, 28:20, 31:14, 35:11, 41:5, 43:15, 48:6, 50:5, 51:4, 51:9, 51:20, 52:9, 57:5, 59:23, 60:7, 60:8, 60:15, 60:17, 77:13
**certification** [7] - 12:9, 13:9, 14:15, 15:5, 74:13, 76:5, 76:11
**certify** [2] - 65:4, 77:18
**cetera** [8] - 22:11, 27:18, 36:9, 42:9, 43:16, 45:17
**Chain** [2] - 54:12, 55:20
**chain** [2] - 40:7, 55:16
**chair** [1] - 26:14
**chairman** [1] - 43:7
**challenge** [2] - 24:11, 30:5
**challenges** [3] - 24:9, 30:5, 60:10
**challenging** [1] - 25:4
**chance** [2] - 44:23, 51:7
**change** [3] - 9:8, 16:2, 52:16
**changes** [1] - 38:20
**characterization** [1] - 47:23
**characterizes** [1] - 56:8
**Charleston** [2] - 66:24, 67:16
**Chen** [15] - 40:1, 40:4, 40:6, 41:12, 42:12, 42:16, 42:25, 44:19, 45:5, 45:19, 45:22, 46:4, 46:15, 48:23, 49:25
**Chen's** [4] - 44:1, 46:8, 48:9, 50:4
**chief** [1] - 43:16
**chime** [1] - 73:19
**China** [24] - 23:7, 24:12, 24:16, 24:20, 25:7, 25:8, 25:24, 26:19, 26:21, 26:22, 27:1, 27:2, 27:5, 27:7, 27:17, 27:19, 27:22, 28:1, 28:3, 28:5, 28:10, 29:22, 30:7
**Chinese** [15] - 11:2,

23:7, 24:10, 25:4, 25:11, 25:13, 28:7, 28:19, 29:21, 29:22, 33:9, 34:4, 35:22, 42:21, 63:11
**chuckle** [1] - 76:18
**cincinnati** [1] - 2:19
**circumstances** [2] - 34:20, 42:21
**cited** [1] - 49:3
**citizen** [1] - 27:25
**CIVIL** [1] - 1:5
**claim** [2] - 44:19, 46:18
**claims** [1] - 10:1
**clarification** [1] - 42:11
**class** [11] - 12:9, 12:23, 13:9, 14:4, 14:15, 15:5, 73:23, 74:13, 75:11, 76:4, 76:12
**clean** [4] - 9:11, 9:15, 58:12, 60:9
**cleaned** [1] - 9:23
**clear** [7] - 20:1, 35:8, 37:19, 39:3, 57:10, 76:1
**Clem** [2] - 5:6, 51:3
**CLEM** [1] - 2:24
**client** [6] - 28:25, 33:14, 33:23, 42:14, 67:22, 71:12
**clients** [1] - 70:7
**close** [3] - 44:13, 70:5, 75:1
**closely** [1] - 19:8
**CMO** [4] - 14:10, 14:17, 74:6, 75:23
**Co** [1] - 2:22
**cognizant** [1] - 17:15
**Cohen** [3] - 5:4, 70:1, 71:5
**COHEN** [4] - 2:13, 69:25, 71:5, 71:10
**collect** [1] - 51:25
**collected** [2] - 51:14, 51:24
**collection** [1] - 51:15
**comfort** [1] - 23:16
**coming** [4] - 10:16, 21:13, 34:2, 54:22
**Commencing** [1] - 1:9
**commend** [2] - 50:12, 50:25
**comment** [2] - 47:7, 50:14
**comments** [4] - 16:19, 25:5, 51:5, 73:10
**committed** [1] - 39:9

**communicate** [2] - 21:23, 22:3
**communicated** [1] - 11:11
**communication** [1] - 22:14
**communications** [1] - 26:22
**Communist** [1] - 34:14
**company** [2] - 42:14, 49:13
**Complaint** [2] - 8:15, 8:18
**complaints** [4] - 9:2, 9:6, 9:14, 10:21
**Complaints** [8] - 7:17, 7:21, 8:5, 8:8, 8:24, 9:10, 10:5, 10:9
**complete** [5] - 11:23, 14:18, 15:3, 15:6, 75:9
**completed** [3] - 11:14, 63:22, 74:4
**completely** [2] - 40:8
**completing** [3] - 16:13, 16:16, 73:22
**completion** [2] - 15:23, 71:16
**complied** [1] - 62:11
**comply** [1] - 34:4
**complying** [1] - 58:4
**compounded** [1] - 42:20
**compromise** [6] - 32:4, 32:8, 35:4, 35:9, 39:4, 39:5
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concern** [3] - 17:21, 17:22, 38:9
**concerned** [2] - 34:20, 37:8
**concerns** [5] - 25:9, 29:14, 31:22, 37:21, 38:21
**concession** [1] - 28:14
**conclusion** [1] - 75:6
**condensed** [2] - 30:20, 36:25
**confer** [5] - 7:23, 20:20, 22:4, 67:6, 70:22
**conference** [5] - 5:17, 7:6, 17:13, 48:9, 75:25
**CONFERENCE** [1] - 1:7

**conferred** [2] - 22:23, 74:24
**conferring** [3] - 17:1, 22:19, 67:22
**confers** [5] - 8:19, 19:9, 24:6, 53:19, 76:6
**confident** [1] - 52:4
**confidential** [1] - 62:14
**confidentiality** [2] - 56:5, 63:3
**confidentially** [1] - 17:3
**confirm** [4] - 32:17, 34:5, 39:11, 69:9
**confirmed** [2] - 35:16, 35:17
**Conlee** [1] - 4:21
**CONLEE** [1] - 1:20
**connection** [1] - 25:1
**consent** [1] - 10:6
**consider** [3] - 38:21, 57:22, 75:11
**consistent** [4] - 12:10, 15:14, 47:8, 47:16
**constraints** [1] - 30:23
**contact** [4] - 21:21, 21:25, 22:9, 70:5
**contacts** [1] - 22:5
**contaminate** [1] - 36:2
**contaminated** [1] - 43:8
**contamination** [1] - 49:18
**context** [2] - 44:10, 61:17
**continue** [5] - 21:9, 22:13, 51:10, 51:20, 73:13
**continued** [1] - 51:9
**CONTINUED** [1] - 2:1
**continuity** [1] - 22:12
**contract** [1] - 44:4
**control** [1] - 26:20
**conversations** [1] - 21:3
**conveyed** [1] - 67:12
**coordinating** [1] - 67:13
**copies** [2] - 61:18, 62:1
**core** [1] - 35:18
**corporate** [1] - 20:21
**Corporation** [1] - 5:13
**correct** [10] - 7:2, 18:15, 40:8, 42:24, 45:1, 52:8, 59:12, 65:13, 65:17, 77:18
**corrected** [1] - 9:19

**corresponding** [1] - 71:11
**costs** [2] - 49:14, 49:17
**counsel** [21] - 4:11, 5:15, 22:20, 56:22, 56:23, 58:6, 67:11, 68:23, 69:7, 69:8, 70:23, 70:25, 71:2, 71:4, 71:13, 71:15, 72:1, 72:18, 73:9, 73:18, 76:25
**Counsel** [5] - 5:15, 7:8, 59:9, 63:25, 64:9
**country** [1] - 33:9
**couple** [6] - 12:12, 26:9, 35:7, 35:15, 64:12, 68:22
**course** [9] - 13:18, 24:2, 28:24, 32:15, 33:23, 38:19, 48:2, 74:17, 76:20
**court** [1] - 10:4
**Court** [12] - 1:23, 6:15, 38:20, 53:12, 54:9, 54:18, 57:10, 59:7, 59:11, 61:20, 67:23, 77:21
**COURT** [1] - 1:3
**Court's** [10] - 12:1, 29:15, 39:1, 39:5, 39:7, 48:18, 49:24, 51:5, 54:15, 74:4
**Court-approved** [2] - 53:12, 54:18, 57:10, 59:11
**courtroom** [1] - 77:11
**COVID** [4] - 29:4, 29:10, 33:11, 38:11
**COVID-19** [3] - 24:12, 25:10, 42:15
**cracks** [1] - 10:12
**created** [1] - 43:7
**creating** [2] - 49:17, 74:25
**critical** [1] - 34:23
**CRR** [1] - 77:21
**crystal** [1] - 20:1
**crystallize** [1] - 19:13
**cumulative** [2] - 41:9, 42:8
**current** [4] - 13:4, 16:22, 17:20, 40:11
**currently-named** [1] - 12:23
**custodial** [13] - 43:22, 48:5, 48:9, 48:13, 48:18, 48:21, 48:22, 49:5, 49:8, 49:20,

50:4, 50:7, 51:25
**customers** [1] - 26:22
**cut** [4] - 21:17, 49:14, 49:16, 51:9
**CVS** [2] - 2:22, 5:13

**D**

**Daiichi** [1] - 40:21
**Daniel** [1] - 4:19
**DANIEL** [2] - 2:3, 2:17
**Danny** [3] - 68:4, 68:6, 71:21
**dark** [1] - 35:21
**data** [14] - 55:2, 55:14, 55:15, 55:22, 55:23, 56:17, 56:18, 56:20, 57:14, 57:18, 57:21, 57:22, 57:23
**date** [10] - 5:22, 7:3, 7:4, 7:13, 10:3, 10:13, 30:4, 30:25, 31:6, 39:22
**Date** [1] - 77:23
**dates** [8] - 12:12, 12:15, 32:17, 36:21, 37:7, 38:14, 39:12, 74:15
**Daubert** [12] - 15:1, 15:22, 16:5, 16:15, 17:8, 74:5, 75:6, 75:18, 76:2, 76:8, 76:12, 76:15
**David** [4] - 52:18, 53:14, 58:19, 62:15
**DAVID** [1] - 1:17
**day-to-day** [3] - 26:15, 43:5, 43:17
**days** [9] - 12:17, 29:8, 31:9, 31:13, 38:6, 42:17, 42:22, 70:21, 70:24
**de** [2] - 60:9, 60:21
**de-designate** [1] - 60:9
**de-designated** [1] - 60:21
**deadline** [4] - 8:17, 18:1, 18:4, 39:11
**deadlines** [15] - 11:25, 15:20, 16:1, 16:7, 16:15, 16:22, 16:23, 17:20, 18:7, 74:1, 74:5, 74:18, 75:5, 75:17, 76:7
**deal** [14] - 5:24, 6:1, 6:21, 7:14, 10:24, 19:23, 32:21, 34:19, 35:25, 43:3, 59:16, 59:21, 62:21

dealing [2] - 38:10, 57:2
debate [1] - 55:6
December [9] - 1:8, 4:1, 6:17, 19:14, 29:13, 53:18, 58:22, 58:23, 77:23
decide [6] - 17:7, 41:3, 48:20, 54:4, 58:14, 58:15
decided [5] - 14:15, 47:25, 58:7, 58:12, 58:16
deciding [1] - 49:16
decision [5] - 38:18, 43:16, 43:17, 47:12, 76:3
decisions [2] - 8:21, 47:16
declarations [1] - 55:18
dedication [1] - 22:18
defeat [1] - 54:15
Defendant [4] - 2:11, 2:19, 2:22, 2:25
defendant [7] - 7:23, 13:8, 13:22, 14:22, 15:8, 29:17, 52:14, 53:16, 56:4
Defendants [1] - 2:15
defendants [48] - 4:23, 5:1, 5:10, 5:12, 6:13, 8:2, 8:7, 8:10, 8:17, 10:6, 10:8, 10:20, 11:18, 12:8, 20:20, 21:21, 21:22, 34:21, 38:6, 53:4, 53:11, 53:16, 53:17, 53:21, 54:2, 54:25, 55:9, 55:10, 55:13, 56:5, 56:9, 59:1, 60:11, 61:15, 61:24, 62:1, 65:16, 67:6, 67:10, 68:12, 68:13, 68:14, 72:8, 73:12, 73:18, 74:8, 74:11, 76:10
defendants' [4] - 11:3, 34:17, 63:12, 73:23
defense [12] - 5:3, 5:7, 9:10, 22:3, 37:20, 49:5, 65:16, 69:8, 70:22, 70:25, 72:1, 73:9
Defense [2] - 2:11, 2:25
defer [3] - 18:25, 19:5, 62:23
deferred [3] - 18:14, 58:16, 58:24

deficiencies [2] - 63:21, 73:9
deficiency [1] - 70:7
definitely [2] - 42:20, 46:24
degree [1] - 74:1
delighted [2] - 50:10, 62:25
denied [2] - 49:1, 49:2
deny [1] - 71:18
deponents [1] - 34:18
depose [6] - 17:22, 22:2, 27:5, 31:2, 31:6, 44:6
deposed [18] - 12:24, 17:23, 19:10, 19:11, 24:13, 25:3, 28:4, 28:11, 28:19, 29:7, 29:8, 29:22, 29:25, 30:9, 40:17, 41:3, 42:15, 45:9
deposing [4] - 24:10, 29:21, 42:21, 44:3
deposition [27] - 6:15, 20:13, 21:22, 22:1, 25:20, 26:8, 28:7, 29:11, 31:12, 32:25, 34:2, 34:15, 36:20, 38:4, 41:15, 42:19, 43:15, 43:24, 44:19, 46:9, 46:12, 46:24, 47:12, 48:7, 48:20, 62:25
depositions [36] - 6:25, 7:3, 12:5, 12:21, 14:2, 14:4, 14:5, 14:7, 15:24, 16:4, 16:14, 18:5, 21:7, 22:10, 23:17, 25:4, 30:20, 32:3, 32:7, 38:17, 38:23, 39:19, 40:20, 40:22, 40:25, 41:7, 41:17, 41:19, 41:25, 42:8, 48:11, 50:1, 60:3, 73:23, 75:10, 75:20
deps [3] - 15:4, 15:5
derived [1] - 42:25
designate [1] - 60:9
designated [1] - 60:21
designation [1] - 63:4
desire [1] - 25:2
determination [1] - 22:2
develop [1] - 36:1
developed [1] - 43:10
developing [1] - 76:1
differ [1] - 51:14
difference [1] - 39:15
differences [4] -

51:13, 51:17, 52:3, 52:11
different [14] - 6:10, 7:9, 12:13, 24:6, 24:9, 27:22, 28:19, 40:2, 44:1, 44:3, 44:9, 51:12, 59:4, 61:4
differently [1] - 10:22
differing [1] - 22:24
difficult [6] - 23:22, 34:19, 38:7, 64:22, 76:19, 76:20
difficulties [1] - 38:12
difficulty [1] - 71:11
direct [1] - 48:9
directed [1] - 40:10
directives [1] - 12:10
directly [2] - 16:14, 42:17
disagree [1] - 33:4
disclose [2] - 6:18, 56:21
disclosing [1] - 55:21
discover [1] - 18:16
discovery [36] - 11:14, 12:2, 12:5, 12:7, 12:14, 12:19, 13:1, 13:5, 13:7, 13:8, 13:15, 13:22, 13:24, 13:25, 14:8, 14:18, 14:19, 14:20, 14:22, 14:24, 15:7, 15:8, 22:22, 52:14, 54:1, 58:12, 73:15, 74:3, 74:7, 74:9, 75:1, 75:3, 75:9, 77:1
discuss [1] - 75:2
discussed [10] - 8:12, 11:22, 12:8, 14:23, 19:9, 24:9, 24:24, 30:16, 57:18, 73:25
discussing [3] - 8:13, 13:24, 74:12
discussion [8] - 14:11, 21:2, 28:25, 31:1, 36:14, 53:5, 54:11, 60:1
discussions [7] - 11:12, 15:19, 21:8, 24:14, 25:1, 57:6
dismiss [5] - 8:21, 67:16, 67:23, 68:1, 71:1
dismissal [5] - 8:10, 64:18, 65:20, 68:5, 68:9
dismissed [13] - 65:22, 66:3, 66:5, 66:6, 66:7, 66:13,

66:17, 66:19, 66:21, 68:7, 68:10, 70:20, 71:24
dismissing [1] - 67:23
dispose [1] - 40:13
dispute [3] - 22:22, 45:5, 52:14
disputed [1] - 7:24
disputes [2] - 7:24, 21:7
disputing [1] - 40:1
disrupt [1] - 16:11
disruption [1] - 16:4
DISTRICT [3] - 1:3, 1:3, 1:11
docket [1] - 64:16
Docket [1] - 7:11
doctrine [1] - 47:8
Doctrine [2] - 42:18, 45:23
document [6] - 13:20, 53:10, 53:12, 53:17, 53:20, 55:15
documents [35] - 31:10, 31:11, 35:22, 35:24, 36:4, 36:7, 44:18, 44:20, 45:2, 45:14, 45:17, 48:11, 49:12, 49:19, 50:2, 51:14, 51:15, 51:24, 55:5, 55:10, 55:11, 55:25, 56:1, 56:15, 56:17, 57:15, 57:17, 60:1, 60:9, 60:13, 60:20, 60:21, 61:22, 62:14
dollars [1] - 50:12
done [6] - 5:24, 6:7, 10:3, 11:2, 12:19, 17:17, 20:8, 23:24, 31:13, 38:23, 42:4, 42:5, 45:11, 49:11, 58:10, 75:14
Dong [1] - 46:2
dose [1] - 26:3
doubt [4] - 21:6, 27:16, 39:19, 52:8
down [6] - 19:23, 23:8, 36:11, 49:16, 55:16, 69:3
downstream [9] - 12:7, 13:7, 13:15, 13:21, 14:22, 15:8, 74:8, 74:11, 76:25
dozens [4] - 14:4, 15:24, 75:10
drawn [1] - 36:13
dropbox [1] - 11:1
dropped [1] - 73:5
Drug [2] - 54:12, 55:20

drug [1] - 54:20
DSCSA [2] - 59:15, 59:21
Du [18] - 23:13, 26:8, 26:11, 26:14, 26:25, 27:5, 27:13, 27:22, 29:23, 29:25, 30:16, 31:6, 31:23, 32:5, 34:1, 34:15, 35:9, 37:3
Du's [2] - 26:11, 33:7
Duane [1] - 4:25
DUANE [1] - 2:9
due [9] - 19:14, 36:16, 36:18
duplicative [5] - 40:18, 41:4, 41:6, 41:9, 42:8
during [7] - 14:13, 19:9, 24:16, 29:5, 29:22, 34:1, 42:15
duties [1] - 43:5

## E

e-mail [2] - 50:14, 72:17
earliest [3] - 31:5, 31:6, 38:14
early [7] - 5:21, 9:8, 13:12, 23:15, 27:15, 35:21, 77:10
easiest [1] - 20:16
East [1] - 2:21
easy [2] - 30:17, 50:17
economic [1] - 75:11
effect [1] - 61:21
effectively [2] - 11:25, 34:25
efficient [1] - 62:16
efforts [3] - 32:2, 32:22, 39:18
Eisenhower [1] - 1:14
either [4] - 9:23, 23:15, 46:20, 64:1
electronic [3] - 55:14, 56:18, 56:20
eliminate [2] - 51:16, 52:2
emanates [1] - 14:10
emanating [1] - 48:8
eminently [2] - 50:10, 50:20
employee [5] - 12:21, 14:4, 15:3, 26:13, 44:15
employees [4] - 45:7, 45:24, 47:15, 73:23
encompassed [2] - 57:20, 62:2

**end** [17] - 12:22, 13:8, 13:11, 23:21, 25:3, 27:1, 28:21, 29:25, 32:11, 35:3, 37:18, 37:22, 38:2, 39:15, 73:7, 74:14, 76:9
**endeavor** [1] - 33:21
**ended** [1] - 64:11
**ends** [1] - 28:2
**English** [1] - 21:2
**enjoy** [1] - 77:12
**enormous** [1] - 17:24
**enormously** [1] - 36:24
**enter** [7] - 4:13, 8:20, 10:3, 35:2, 53:10, 53:15, 64:14
**entered** [12] - 12:4, 47:10, 50:25, 53:20, 57:9, 59:7, 63:2, 63:7, 70:4, 70:17, 71:14, 73:21
**entering** [1] - 14:17
**entire** [4] - 35:21, 51:25, 61:18, 62:5
**entirety** [1] - 62:13
**entities** [2] - 5:3, 5:7
**entitled** [1] - 77:19
**entries** [2] - 4:8, 5:14
**equally** [1] - 23:24
**equitable** [1] - 36:16
**Eric** [1] - 43:11
**especially** [4] - 10:20, 16:21, 42:15, 54:6
**ESQUIRE** [13] - 1:14, 1:17, 1:17, 1:20, 2:3, 2:6, 2:9, 2:12, 2:13, 2:13, 2:17, 2:21, 2:24
**establish** [1] - 44:14
**established** [1] - 74:19
**et** [8] - 22:11, 27:17, 27:18, 36:9, 42:9, 43:16, 45:17
**Euric** [2] - 68:24, 71:23
**EURIC** [1] - 71:23
**evaluate** [1] - 44:23
**evaluating** [2] - 8:8, 8:14
**event** [1] - 62:18
**evidence** [2] - 38:15, 39:21
**evidenced** [1] - 26:18
**evil** [1] - 25:22
**exactly** [2] - 13:17, 22:19
**example** [10] - 17:7, 18:9, 21:6, 35:19,

35:20, 36:14, 43:5, 49:12, 59:25, 60:11
**examples** [1] - 43:13
**except** [1] - 35:15
**exchange** [1] - 70:10
**exclude** [1] - 60:1
**excuse** [2] - 27:2, 51:3
**exemplar** [2] - 55:22, 56:19
**exemplars** [2] - 36:8, 56:4
**Exhibit** [2] - 25:14, 63:12
**Exhibits** [2] - 45:3, 45:15
**exhibits** [2] - 45:11, 45:15
**existed** [1] - 57:5
**existing** [3] - 11:13, 75:11, 75:16
**expand** [1] - 15:18
**expect** [9] - 5:18, 9:5, 9:6, 9:11, 43:22, 46:21, 50:5, 64:4, 64:14
**expectation** [1] - 22:12
**expects** [1] - 8:20
**expenses** [4] - 52:2, 69:4, 72:19, 72:22
**expert** [9] - 15:21, 16:3, 18:7, 23:22, 34:24, 36:12, 36:16, 36:18, 36:24
**experts** [8] - 16:4, 17:20, 17:25, 36:6, 36:10, 38:23, 76:12, 76:15
**explain** [2] - 20:11, 24:6
**explore** [1] - 48:23
**exposing** [1] - 29:9
**expression** [1] - 20:4
**extant** [1] - 58:21
**extending** [1] - 16:17
**extensions** [1] - 37:20
**extensive** [2] - 14:2, 19:9
**extensively** [1] - 11:15
**extent** [1] - 28:23
**extra** [1] - 70:16
**extraordinary** [1] - 29:3
**extremely** [1] - 37:9
**eye** [2] - 74:25, 76:4

---

**F**

**face** [2] - 26:6, 42:3
**facie** [5] - 40:14,

40:24, 41:11, 41:15, 41:24
**facilitating** [1] - 29:15
**facilities** [1] - 28:13
**fact** [27] - 16:5, 17:8, 23:8, 24:12, 26:12, 26:18, 29:1, 30:19, 37:18, 38:16, 41:8, 41:9, 41:19, 42:8, 53:10, 53:12, 53:16, 61:17, 61:23, 63:20, 68:25, 70:6, 70:12, 70:18, 71:17, 74:3, 75:7
**factors** [1] - 27:22
**fair** [5] - 11:16, 32:4, 32:24, 39:16, 67:24
**faith** [12] - 14:23, 22:24, 22:25, 32:2, 32:22, 34:11, 34:12, 38:13, 39:17, 39:18, 39:20, 40:17
**familiar** [1] - 18:10, 37:5
**family** [1] - 29:9
**fantastic** [1] - 22:17
**far** [3] - 18:12, 21:7, 63:9
**fashion** [1] - 9:15
**FDA** [4] - 43:6, 45:2, 45:6, 49:15
**feasible** [3] - 34:12, 34:13, 35:4
**February** [11] - 23:15, 27:2, 27:24, 29:25, 30:2, 30:4, 30:11, 30:24, 35:22, 37:11, 76:10
**fellow** [1] - 23:13
**few** [13] - 9:11, 9:15, 12:17, 16:24, 20:10, 21:5, 24:8, 25:6, 26:9, 28:20, 31:2, 45:13, 74:15
**figure** [2] - 23:23, 30:21
**figured** [1] - 70:14
**file** [18] - 10:4, 46:8, 48:5, 48:9, 48:13, 48:18, 48:22, 48:25, 49:5, 49:8, 49:20, 50:4, 50:7, 50:23, 59:14, 64:21, 70:12, 70:17
**filed** [13] - 7:10, 7:11, 7:17, 7:21, 9:10, 9:14, 44:21, 48:7, 55:19, 60:4, 60:13, 64:17, 70:6
**files** [1] - 48:21

**filing** [2] - 51:6, 60:12
**final** [5] - 7:24, 10:10, 55:8, 66:20
**finally** [1] - 47:17
**fine** [6] - 4:12, 8:16, 21:18, 52:25, 63:18, 65:1
**finish** [1] - 64:18
**finished** [1] - 26:3
**firm** [4] - 67:13, 69:5, 70:1, 72:25
**firm's** [1] - 72:18
**firmly** [1] - 56:9
**first** [21] - 10:25, 11:7, 24:4, 24:11, 31:23, 35:14, 40:4, 51:23, 52:5, 53:20, 56:2, 57:13, 57:20, 61:19, 64:17, 65:12, 65:23, 66:11, 69:14, 69:19, 72:1
**five** [1] - 39:25
**flag** [1] - 33:4
**flagged** [1] - 17:20
**flesh** [1] - 12:16
**flexible** [1] - 72:21
**flight** [1] - 33:1
**flip** [1] - 28:22
**flipped** [1] - 47:22
**Floor** [1] - 2:24
**Florida** [1] - 2:4
**focus** [4] - 20:7, 20:17, 42:12, 74:10
**focused** [1] - 53:24
**follow** [4] - 50:23, 56:11, 60:12, 76:11
**food** [1] - 40:7
**FOR** [1] - 1:3
**foregoing** [1] - 77:18
**foreign** [5] - 21:2, 23:7, 38:10, 40:20, 40:22
**foremost** [1] - 24:11
**foresee** [1] - 12:6
**forfeit** [1] - 59:20
**form** [5] - 7:21, 8:1, 44:4, 75:19, 75:22
**formal** [1] - 10:5
**forth** [3] - 70:15, 74:6, 75:18
**forthcoming** [1] - 29:19, 33:25
**forward** [9] - 6:6, 6:10, 7:8, 12:20, 14:19, 14:20, 22:13, 46:25, 48:20
**forwarded** [1] - 7:23
**foundational** [3] - 36:10, 37:1, 37:14
**four** [1] - 65:19

**frankly** [3] - 19:8, 74:25, 75:8
**free** [1] - 7:3
**FREEMAN** [1] - 1:13
**Friedlander** [1] - 1:23, 77:21
**friedlanderreporter@gmail.com** [1] - 1:23
**front** [5] - 11:5, 25:3, 43:1, 44:8, 53:18
**front-end** [1] - 25:3
**front-line** [2] - 43:1, 44:8
**fruitful** [1] - 43:23
**fruition** [1] - 54:22
**full** [4] - 30:18, 44:24, 76:11, 76:14
**fully** [2] - 44:23, 49:21
**functions** [1] - 26:15
**furthermore** [1] - 29:23
**future** [1] - 77:3

---

**G**

**gains** [1] - 44:7
**general** [23] - 12:1, 12:3, 12:10, 13:6, 14:1, 14:9, 14:14, 14:24, 15:1, 15:8, 16:3, 16:15, 16:25, 19:17, 35:18, 74:2, 74:3, 74:5, 74:10, 75:5, 76:1, 76:14
**generally** [2] - 18:10, 57:18
**gentleman** [1] - 44:6
**gentleman's** [1] - 23:13
**GEOPPINGER** [6] - 2:17, 5:8, 54:24, 57:4, 57:12, 61:14
**Geoppinger** [2] - 5:9, 54:24, 61:14
**Georgia** [1] - 2:14
**Gergis** [1] - 46:2
**given** [9] - 10:6, 11:25, 13:12, 14:2, 35:1, 42:20, 57:21, 65:1, 67:24
**global** [2] - 29:6, 29:22
**Goldberg** [23] - 4:25, 8:2, 11:18, 11:21, 15:19, 23:25, 26:4, 29:24, 31:20, 32:10, 35:2, 35:17, 38:12, 41:7, 41:22, 43:25, 46:7, 47:22, 63:8,

63:18, 73:17, 74:23, 75:14
**GOLDBERG** [30] - 2:9, 4:24, 8:6, 11:20, 13:17, 20:2, 23:25, 24:3, 26:9, 27:21, 28:9, 30:3, 32:15, 33:3, 33:7, 33:18, 33:21, 34:7, 35:5, 41:23, 42:10, 44:11, 47:3, 47:6, 51:1, 63:10, 63:16, 63:19, 64:7, 73:17
**Goldenberg** [3] - 67:2, 68:22, 72:10
**GOLDENBERG** [8] - 2:5, 2:6, 67:1, 68:21, 69:13, 69:18, 72:6, 72:17
**GOLOMB** [1] - 1:16
**GORDON** [1] - 2:23
**government** [2] - 34:4, 34:14
**gracious** [1] - 29:13
**grant** [1] - 67:15
**granted** [2] - 46:7, 65:3
**granting** [1] - 10:4
**great** [6] - 10:15, 11:7, 24:6, 43:3, 63:24, 77:8
**GREENBERG** [1] - 2:12
**Greenberg** [2] - 65:16, 73:11
**Group** [2] - 2:11, 2:25
**group** [6] - 5:3, 5:7, 9:19, 21:20, 51:21, 65:17
**GT** [1] - 5:4
**Gu** [1] - 43:11
**guess** [7] - 7:2, 13:11, 46:19, 53:8, 58:20, 64:12, 72:1
**guidance** [2] - 8:22, 34:9
**guide** [1] - 58:10

### H

**Hai** [1] - 46:1
**half** [1] - 35:14
**hand** [7] - 23:20, 27:9, 27:13, 27:16, 27:18, 34:22, 61:11
**handed** [1] - 45:13
**handful** [1] - 37:12
**handle** [3] - 5:21, 7:12, 23:2
**handling** [1] - 71:7

**hang** [1] - 64:1
**Happy** [1] - 77:8
**happy** [1] - 31:17
**hard** [3] - 9:5, 16:21, 76:22
**Harkins** [5] - 5:4, 65:15, 66:10, 72:7, 73:11
**HARKINS** [11] - 2:13, 65:15, 65:24, 66:10, 66:15, 66:20, 67:10, 68:14, 72:4, 72:7, 73:11
**hate** [1] - 31:8
**hats** [1] - 31:17
**Health** [1] - 2:22
**health** [1] - 60:5
**hear** [9] - 13:18, 20:18, 23:1, 27:18, 30:14, 40:3, 41:14, 41:22, 58:6
**heard** [5] - 20:4, 22:21, 27:10, 54:16, 76:18
**hearing** [5] - 14:13, 59:10, 68:6, 68:10, 76:2
**hears** [1] - 35:2
**Hebert** [1] - 71:21
**HEBERT** [1] - 71:21
**held** [3] - 7:7, 43:1, 43:2
**hello** [2] - 9:4, 59:22
**help** [4] - 7:16, 20:7, 32:6, 53:8
**helpful** [1] - 19:15
**Henry** [2] - 70:1, 71:6
**Herschel** [1] - 37:4
**high** [1] - 9:20
**highest** [2] - 33:24, 45:5
**highly** [1] - 62:14
**Hill** [1] - 73:7
**hit** [2] - 64:16, 70:20
**hold** [5] - 31:21, 48:16, 56:22
**holiday** [3] - 13:12, 37:11, 77:8
**holidays** [1] - 10:16
**Hollis** [1] - 69:1
**Hong** [12] - 24:13, 24:16, 24:19, 24:22, 24:23, 25:8, 28:8, 28:9, 28:10, 37:12, 42:16, 42:22
**Honik** [6] - 4:17, 11:9, 11:21, 15:17, 17:18, 74:22
**HONIK** [8] - 1:16, 1:17, 4:17, 11:10,

15:17, 17:18, 74:22, 77:5
**Honor** [112] - 4:15, 4:17, 4:19, 4:21, 4:24, 5:2, 5:5, 5:6, 5:8, 5:11, 8:6, 9:4, 11:7, 11:10, 11:20, 12:18, 12:21, 13:18, 13:20, 15:17, 17:11, 17:18, 18:18, 20:15, 20:18, 22:15, 23:25, 24:13, 25:1, 27:21, 29:12, 30:15, 32:15, 33:3, 34:7, 35:6, 35:9, 36:15, 37:3, 37:21, 41:23, 41:24, 42:10, 43:20, 44:11, 44:13, 45:12, 45:13, 47:3, 47:6, 47:10, 47:20, 48:22, 48:25, 49:2, 49:12, 51:1, 51:3, 51:23, 52:18, 52:23, 53:2, 53:3, 53:14, 53:20, 54:24, 54:25, 55:3, 55:7, 55:12, 56:7, 56:9, 57:12, 57:13, 57:25, 58:2, 58:18, 58:25, 59:7, 59:12, 59:22, 59:25, 61:7, 61:14, 61:19, 62:6, 62:15, 63:11, 63:13, 63:23, 64:6, 64:7, 65:14, 65:15, 65:24, 66:10, 67:1, 67:10, 68:3, 68:14, 68:21, 69:25, 72:4, 72:7, 72:17, 73:17, 74:22, 75:9, 75:25, 76:13, 77:5, 77:6
**Honor's** [2] - 34:9, 47:15
**HONORABLE** [2] - 1:10, 1:11
**hope** [7] - 13:10, 15:13, 16:9, 18:3, 20:2, 23:14, 46:14
**hopeful** [1] - 52:8
**hopefully** [11] - 22:13, 25:15, 25:17, 25:20, 35:3, 39:22, 39:23, 50:16, 50:21, 73:5, 77:9
**hoping** [1] - 74:16
**horns** [1] - 23:19
**host** [1] - 37:24
**hotel** [1] - 29:7
**HOUCHI** [1] - 69:23
**Houchin** [1] - 69:23
**hour** [1] - 24:16

**hours** [1] - 29:6
**hundred** [1] - 46:25
**hundreds** [1] - 36:8
**hurried** [1] - 9:15

### I

**idea** [3] - 10:23, 20:23, 39:7
**identified** [5] - 21:20, 26:24, 44:17, 45:3, 45:21
**identify** [6] - 6:13, 19:21, 20:21, 24:7, 30:3
**illuminating** [1] - 48:12
**illustrative** [1] - 48:12
**imagine** [3] - 31:15, 60:2, 75:10
**immediate** [1] - 19:24
**immigration** [1] - 27:25
**imminently** [1] - 70:12
**impact** [1] - 17:21
**implicit** [1] - 53:23
**importance** [4] - 9:21, 19:1, 26:11, 33:24
**important** [20] - 20:6, 23:12, 26:10, 27:14, 31:25, 32:20, 35:7, 35:10, 35:14, 38:5, 41:12, 41:19, 42:13, 44:23, 49:9, 49:10, 49:25, 62:21, 62:22, 76:17
**importantly** [1] - 12:18
**imposed** [1] - 15:20
**impossible** [1] - 38:3
**impression** [1] - 41:13
**IN** [1] - 1:5
**inadvertently** [1] - 9:23
**Inc** [3] - 2:15, 2:16, 5:13
**include** [4] - 14:4, 48:18, 50:6, 55:22
**included** [1] - 55:24
**including** [5] - 11:15, 18:7, 41:12, 53:17, 53:23
**incomplete** [1] - 70:13
**incorporate** [1] - 36:7
**incorrect** [1] - 36:13
**incredible** [2] - 32:6, 34:21
**indemnity** [4] - 61:25, 62:2, 62:9, 62:12
**Indian** [1] - 63:12

**indicated** [5] - 7:20, 8:20, 25:2, 56:12, 72:18
**individuals** [1] - 45:9
**Industries** [1] - 2:15
**inefficiency** [1] - 70:15
**inflated** [1] - 26:12
**inform** [1] - 5:15
**information** [18] - 34:23, 40:9, 42:25, 43:4, 43:19, 44:7, 47:14, 48:24, 56:6, 56:20, 66:9, 67:7, 67:21, 67:24, 69:10, 70:10, 70:13, 71:17
**initial** [2] - 41:13, 70:6
**injury** [7] - 9:6, 14:7, 15:4, 70:17, 73:24, 75:13, 75:20
**inquire** [2] - 31:20, 31:21
**inspection** [2] - 45:8, 45:19
**inspections** [4] - 43:6, 45:6, 45:22, 46:3
**intact** [1] - 74:1
**intend** [1] - 4:9
**intense** [1] - 21:13
**intent** [1] - 17:19
**intention** [2] - 16:23, 18:4
**interest** [1] - 41:5
**interests** [2] - 26:7, 27:9
**interference** [1] - 4:6
**interim** [1] - 11:24
**intermingled** [1] - 18:3
**interrupt** [1] - 27:8
**invite** [2] - 11:17, 73:18
**involved** [11] - 15:6, 22:8, 22:10, 26:1, 26:2, 26:15, 26:17, 26:19, 26:20, 26:21, 46:4
**involving** [1] - 22:5
**Irbesartan** [6] - 7:18, 7:22, 8:4, 8:11, 8:23, 9:2
**IRBESARTAN** [1] - 1:6
**isolated** [1] - 29:7
**issue** [62] - 6:18, 11:8, 11:19, 17:14, 17:21, 18:5, 18:11, 19:8, 20:17, 21:23, 22:15, 23:3, 27:23, 39:25, 44:9, 44:15, 44:24,

47:11, 50:9, 50:10, 50:16, 50:21, 52:17, 52:21, 54:3, 54:4, 54:6, 54:13, 54:20, 55:3, 56:8, 57:1, 57:16, 57:17, 58:6, 58:15, 58:17, 59:5, 59:10, 59:14, 59:15, 59:17, 59:19, 59:21, 59:23, 61:1, 61:4, 61:5, 61:8, 61:9, 61:11, 61:12, 61:16, 61:22, 62:17, 63:19, 63:21, 67:6, 70:12, 73:14

**Issue** [2] - 52:13, 55:1

**issues** [59] - 5:21, 5:24, 6:1, 6:3, 6:20, 6:22, 6:23, 7:14, 8:8, 8:22, 11:4, 11:8, 12:2, 12:14, 13:2, 13:6, 13:18, 14:9, 14:15, 14:16, 15:1, 15:9, 15:15, 17:6, 17:8, 18:2, 19:13, 19:23, 19:24, 20:5, 20:6, 20:10, 20:14, 20:18, 21:5, 21:9, 22:4, 22:19, 23:6, 23:12, 24:24, 25:23, 32:21, 35:18, 36:25, 38:11, 45:8, 46:5, 61:19, 62:21, 63:8, 63:22, 65:1, 74:2, 74:3, 74:5, 74:10, 74:11

**items** [2] - 70:10, 70:13

## J

**James** [2] - 65:12, 66:2

**jammed** [2] - 37:17, 37:22

**January** [23] - 6:21, 6:24, 7:1, 7:6, 7:7, 7:15, 10:13, 12:22, 13:5, 13:19, 14:3, 17:13, 19:13, 19:22, 23:15, 27:24, 31:1, 31:23, 34:16, 37:6, 39:11, 59:15, 59:16

**Jay** [1] - 46:1

**Jeff** [2] - 54:24, 61:14

**Jeffrey** [1] - 5:9

**JEFFREY** [1] - 2:17

**JERSEY** [1] - 1:3

**Jersey** [1] - 1:15

**jet** [1] - 30:7

**JOEL** [1] - 1:10

**John** [4] - 67:19, 68:15, 70:3, 71:19

**JOHN** [1] - 1:17

**Johnny** [1] - 71:22

**Johnston** [2] - 5:12, 53:3

**JOHNSTON** [3] - 2:21, 5:11, 53:2

**join** [2] - 5:19, 6:1

**joins** [1] - 16:24

**joint** [2] - 11:17, 76:24

**Joint** [2] - 2:11, 2:25

**jointly** [1] - 11:19

**Judge** [35] - 3:2, 4:3, 5:16, 5:18, 5:19, 5:22, 5:25, 6:1, 7:12, 8:20, 10:15, 12:10, 12:18, 14:11, 14:13, 15:2, 15:21, 16:22, 16:24, 17:2, 18:14, 19:16, 20:6, 20:9, 39:8, 52:20, 52:22, 53:6, 58:20, 62:23, 63:21, 64:1, 64:4, 64:15, 67:19

**judge** [1] - 61:6

**JUDGE** [88] - 1:10, 1:11, 4:3, 4:23, 5:14, 8:16, 9:16, 10:2, 10:19, 13:14, 16:19, 18:9, 18:20, 18:23, 19:12, 20:3, 21:17, 22:17, 24:2, 26:4, 27:8, 28:8, 29:24, 30:14, 31:5, 31:20, 32:18, 33:6, 33:17, 33:20, 34:6, 34:10, 36:18, 38:8, 39:16, 42:2, 42:23, 43:25, 46:6, 47:4, 47:17, 48:1, 48:15, 49:24, 51:2, 52:7, 52:25, 53:7, 54:4, 56:22, 57:7, 58:5, 59:9, 59:13, 60:18, 60:23, 61:1, 61:5, 61:10, 62:20, 63:15, 63:17, 63:24, 64:8, 64:12, 65:21, 66:2, 66:14, 66:18, 66:7, 67:14, 67:25, 68:19, 69:11, 69:21, 70:19, 71:3, 71:8, 71:18, 72:15, 73:2, 73:13, 74:20, 76:18, 77:7

**judgment** [1] - 65:4

**July** [1] - 53:18

**jump** [2] - 21:18, 29:24

**Jun** [2] - 35:9, 37:3

## K

**KANNER** [1] - 1:20

**Karen** [3] - 1:23, 61:11, 77:21

**KATZ** [1] - 1:13

**keep** [2] - 74:1, 77:2

**keeping** [1] - 16:22

**keeps** [1] - 25:5

**Kelly** [1] - 69:22

**key** [7] - 12:12, 12:15, 16:1, 17:22, 17:25, 18:5, 74:15

**King** [1] - 7:2

**knowing** [2] - 34:2, 72:23

**knowledge** [8] - 30:18, 35:17, 40:10, 40:16, 43:20, 44:5, 44:14, 46:19

**knowledgeable** [1] - 26:25

**knows** [3] - 7:9, 22:3, 34:11

**Kong** [12] - 24:13, 24:16, 24:19, 24:22, 24:23, 25:8, 28:8, 28:9, 28:10, 37:13, 42:16, 42:22

**Kugler** [22] - 5:22, 5:25, 6:1, 8:20, 12:18, 14:11, 14:13, 15:2, 15:21, 16:22, 16:24, 17:2, 18:14, 19:16, 20:9, 52:20, 52:22, 53:6, 62:23, 63:21, 64:1, 64:4

**KUGLER** [25] - 1:11, 64:12, 65:21, 66:2, 66:14, 66:18, 66:24, 67:8, 67:14, 67:25, 68:4, 68:19, 69:11, 69:16, 69:21, 70:19, 71:3, 71:8, 71:18, 72:15, 73:2, 73:13, 74:20, 76:18, 77:7

**Kugler's** [1] - 12:10

## L

**lag** [1] - 30:7

**landed** [1] - 75:15

**language** [4] - 14:19, 21:3, 38:11

**large** [1] - 44:7

**larger** [3] - 16:12, 62:2, 62:4

**Lasalle** [1] - 2:6

**last** [14] - 7:5, 7:7, 11:16, 12:15, 23:17, 36:12, 38:22, 52:19, 63:5, 65:19, 66:16, 69:6, 69:19, 75:25

**late** [5] - 11:15, 17:23, 23:15, 34:24, 42:5

**latter** [1] - 16:17

**Laughter** [1] - 47:19

**LAW** [1] - 2:5

**law** [7] - 28:3, 29:22, 56:10, 58:3, 69:1, 70:1, 71:6

**lay** [1] - 75:21

**lead** [2] - 4:11, 5:15

**leading** [1] - 76:2

**learn** [1] - 41:16

**least** [15] - 8:4, 10:9, 14:6, 16:8, 21:20, 32:13, 33:10, 37:13, 38:17, 38:20, 38:25, 41:10, 41:13, 46:21, 54:14

**leave** [5] - 10:4, 30:22, 31:1, 31:2, 46:7

**leaves** [3] - 30:25, 36:24, 66:24

**leaving** [1] - 30:2

**Lee** [3] - 69:2, 72:15, 73:4

**left** [2] - 9:23, 11:21

**legal** [2] - 8:22, 28:6

**legitimate** [1] - 19:10

**length** [2] - 21:6, 24:6

**less** [1] - 38:6

**letter** [18] - 5:21, 11:3, 11:4, 11:5, 18:6, 24:5, 25:14, 34:17, 53:19, 55:1, 58:9, 61:2, 61:13, 63:6, 63:8, 63:13, 63:19, 65:9

**letters** [7] - 5:23, 6:4, 10:23, 10:24, 10:25, 23:3, 23:4

**level** [4] - 9:21, 44:15, 45:24, 47:15

**LEVIN** [1] - 2:2

**Li** [2] - 36:22, 46:2

**LIABILITY** [1] - 1:6

**library** [1] - 70:9

**lid** [1] - 18:16

**lifeboat** [1] - 21:15

**light** [3] - 29:20, 44:1, 46:9

**likelihood** [1] - 32:19

**likely** [3] - 19:11, 48:11, 71:12

**limited** [1] - 20:8

**Lin** [1] - 46:1

**Linda** [2] - 46:1, 66:4

**line** [7] - 18:4, 25:12, 28:18, 43:1, 44:8, 64:4, 64:5

**linger** [1] - 60:16

**list** [11] - 43:9, 68:19, 68:23, 69:12, 70:2, 70:21, 70:23, 71:25, 72:25, 73:4, 73:13

**listed** [4] - 65:18, 65:22, 71:23, 73:9

**listen** [2] - 5:16, 18:23

**listing** [5] - 68:12, 69:14, 69:20, 72:1, 73:3

**LITIGATION** [1] - 1:6

**litigation** [1] - 65:7

**live** [1] - 37:2

**LLC** [3] - 1:13, 1:20, 2:15

**LLP** [5] - 2:9, 2:12, 2:17, 2:20, 2:23

**locations** [1] - 22:11

**lock** [1] - 38:16

**LOCKARD** [1] - 5:2

**Lockard** [1] - 5:3

**locked** [2] - 42:5, 42:6

**LOCKHARD** [1] - 2:12

**logistical** [2] - 27:4, 34:21

**Lomax** [2] - 70:3, 70:6

**look** [11] - 17:15, 19:8, 25:13, 28:20, 32:9, 32:14, 32:16, 37:2, 51:20, 57:17, 77:3

**looked** [2] - 40:18, 57:16

**looking** [3] - 13:4, 35:12, 57:22

**looks** [2] - 15:24, 40:19

**Lori** [1] - 5:4

**LORI** [1] - 2:13

**Los** [1] - 2:22

**Losartan** [6] - 7:18, 7:22, 8:4, 8:12, 8:23, 9:1

**LOSARTAN** [1] - 1:5

**Louisiana** [1] - 1:21

**lower** [3] - 44:15, 45:24, 47:15

**lower-level** [3] - 44:15, 45:24, 47:15

**Ltd** [2] - 2:15

**Luther** [1] - 7:1

## M

**MAGISTRATE** [1] - 1:10

**mail** [2] - 50:14, 72:17
**maintain** [1] - 56:5
**major** [2] - 21:7, 75:17
**majority** [1] - 43:17
**maker** [1] - 43:16
**malign** [1] - 36:15
**man's** [1] - 49:20
**manage** [1] - 45:7
**management** [3] - 11:8, 11:13, 75:25
**manufactured** [2] - 25:25, 43:8
**manufacturer** [1] - 20:13, 21:21, 53:25
**manufacturers** [5] - 20:19, 20:25, 37:25, 55:16, 60:6
**manufacturing** [6] - 6:13, 25:23, 26:2, 26:17, 36:1, 49:14
**March** [16] - 17:23, 25:12, 25:21, 28:17, 28:19, 28:21, 28:22, 28:23, 32:2, 36:23, 37:13, 39:10, 39:15, 39:19, 41:3
**Maria** [1] - 66:5
**Market** [1] - 1:18
**Marlene** [3] - 67:1, 68:21, 72:5
**MARLENE** [1] - 2:6
**Martin** [1] - 7:1
**massive** [1] - 37:20
**Master** [5] - 7:17, 8:5, 8:8, 8:15, 8:24
**material** [1] - 42:9
**materially** [2] - 41:19, 65:6
**matter** [8] - 5:19, 10:11, 52:12, 65:21, 67:16, 68:2, 68:6, 77:19
**matters** [3] - 7:18, 65:10, 66:18
**MAZIE** [1] - 1:13
**MDL** [1] - 4:4
**mean** [10] - 16:2, 19:3, 21:5, 21:17, 22:22, 27:8, 30:22, 32:10, 43:14, 48:25
**meant** [1] - 36:19
**mechanical** [1] - 1:25
**medical** [3] - 69:4, 72:19, 72:22
**meet** [14] - 7:23, 8:19, 18:1, 18:4, 19:9, 20:20, 22:4, 24:6, 53:19, 64:22, 67:5, 74:4, 76:6, 77:11
**meet-and-confer** [2] -

20:20, 22:4
**meeting** [6] - 16:14, 17:1, 18:6, 22:18, 33:10, 67:22
**meetings** [2] - 32:19, 33:18
**megillah** [1] - 54:6
**members** [4] - 29:10, 33:9, 51:8, 51:21
**merely** [2] - 22:22, 40:16
**met** [5] - 11:15, 14:23, 22:23, 23:13, 74:24
**mid** [4] - 6:25, 27:2, 27:24, 30:2
**mid-February** [3] - 27:2, 27:24, 30:2
**mid-month** [1] - 6:25
**might** [8] - 8:11, 8:22, 13:11, 16:5, 17:6, 41:8, 61:3, 69:14
**Miller** [3] - 69:7, 69:16, 69:17, 69:18, 72:9
**million** [3] - 20:4, 58:10, 58:11
**millions** [2] - 50:2, 50:11
**min** [1] - 36:22
**mind** [1] - 25:5
**mindful** [2] - 74:18, 76:4
**mindsets** [1] - 22:24
**minimal** [1] - 21:9
**minimum** [1] - 15:3
**Minneapolis** [1] - 2:7
**Minnesota** [2] - 2:7, 37:4
**minute** [1] - 23:17
**minutes** [2] - 16:24, 20:10
**miscellaneous** [1] - 6:23
**missing** [2] - 72:20, 72:24
**misspoke** [1] - 36:20
**mistake** [2] - 39:5, 64:25
**mistakes** [1] - 65:2
**modification** [2] - 11:12, 52:20
**modifications** [3] - 11:22, 55:18, 74:17
**modify** [1] - 75:23
**modifying** [1] - 73:25
**moment** [1] - 24:1
**moments** [1] - 5:19
**month** [9] - 6:25, 7:7, 27:1, 35:14, 35:21, 36:20, 38:22, 65:22, 73:5

**months** [2] - 21:13, 38:4
**morning** [13] - 4:15, 4:17, 4:19, 4:21, 4:24, 5:2, 5:5, 5:6, 5:8, 5:11, 11:10, 64:13, 72:18
**MORRIS** [1] - 2:9
**Morris** [1] - 4:25
**most** [10] - 26:24, 31:25, 35:13, 38:1, 38:2, 42:13, 42:20, 49:10, 74:18
**motion** [17] - 6:21, 7:11, 10:5, 46:8, 46:15, 46:20, 46:25, 48:1, 48:6, 48:17, 50:5, 59:1, 64:24, 65:4, 67:15, 67:18, 71:15
**motions** [9] - 7:10, 7:14, 7:20, 8:21, 60:3, 64:18, 64:21, 75:6, 76:4
**move** [15] - 6:8, 14:8, 23:9, 23:11, 26:8, 32:2, 33:1, 39:2, 39:9, 39:14, 39:18, 58:12, 71:19, 72:1, 74:18
**moved** [3] - 54:25, 69:22, 70:8
**movement** [1] - 16:11
**moving** [5] - 6:6, 6:10, 16:23, 71:12, 74:7
**MR** [91] - 4:15, 4:17, 4:19, 4:24, 5:5, 5:8, 8:6, 9:4, 9:18, 10:15, 11:7, 11:10, 11:20, 13:17, 15:17, 17:11, 17:18, 18:18, 18:21, 19:7, 20:1, 20:2, 20:15, 21:24, 23:25, 24:3, 26:9, 27:21, 28:9, 30:3, 30:15, 31:7, 32:15, 33:3, 33:7, 33:18, 33:21, 34:7, 35:5, 35:6, 36:19, 39:8, 41:23, 42:10, 43:3, 44:11, 47:3, 47:6, 47:20, 48:3, 48:22, 51:1, 51:3, 52:18, 53:14, 54:24, 57:4, 57:12, 58:18, 59:12, 59:22, 60:20, 60:25, 61:3, 61:7, 61:14, 62:15, 63:10, 63:16, 63:19, 64:6, 64:7, 65:14, 65:15, 65:24, 66:10,

66:15, 66:20, 67:10, 67:19, 68:3, 68:14, 69:25, 71:5, 71:10, 72:4, 72:7, 73:11, 73:17, 74:22, 77:5
**MS** [10] - 4:21, 5:2, 5:11, 53:2, 67:1, 68:21, 69:13, 69:18, 72:6, 72:17
**multiple** [3] - 7:22, 9:1, 36:25
**mute** [1] - 4:6
**muted** [1] - 67:20
**Mylan** [8] - 2:25, 5:6, 50:15, 50:17, 50:21, 50:23, 51:4, 51:18
**Mylan's** [2] - 51:9, 51:15

---

## N

**name** [5] - 23:13, 69:17, 71:3, 71:4, 71:5
**named** [1] - 12:23
**Naomi** [1] - 71:22
**Napolitano** [2] - 70:3, 71:19
**narrow** [1] - 20:3
**narrowed** [1] - 53:24
**national** [1] - 42:21
**nationals** [3] - 24:10, 28:7, 29:21
**nature** [1] - 9:17
**NE** [1] - 2:14
**near** [2] - 60:17, 77:3
**necessarily** [1] - 57:19
**necessary** [8] - 9:19, 13:22, 14:1, 14:25, 25:22, 52:23, 52:24, 75:9
**necessity** [1] - 10:5
**need** [27] - 4:10, 7:10, 7:23, 8:7, 9:22, 12:2, 14:20, 14:21, 17:22, 19:20, 24:17, 26:5, 29:2, 34:23, 35:23, 36:4, 37:15, 38:24, 48:5, 52:17, 52:21, 58:5, 58:18, 60:12, 65:25, 71:19
**needed** [6] - 15:3, 20:24, 30:19, 41:4, 72:22, 72:23
**needs** [3] - 8:3, 21:3, 59:23
**negotiated** [1] - 58:22
**negotiating** [2] - 13:21, 22:6
**negotiations** [1] -

22:10
**never** [1] - 65:3
**new** [2] - 54:23, 59:5
**NEW** [1] - 1:3
**New** [5] - 1:15, 1:21, 23:7, 25:13, 77:8
**Newcombe** [1] - 71:22
**NEWCOMBE** [1] - 71:22
**next** [11] - 9:13, 12:17, 13:12, 27:5, 39:25, 50:9, 58:17, 65:22, 66:4, 71:25, 73:4
**Nigh** [1] - 4:19
**NIGH** [2] - 2:3, 4:19
**night** [4] - 11:16, 12:15, 52:19, 66:16
**nine** [3] - 71:25, 72:2, 72:3
**nitrosamine** [2] - 36:3, 49:18
**nitrosamines** [1] - 36:2
**Noble** [1] - 66:5
**NOBLE** [1] - 66:5
**none** [3] - 67:12, 68:6, 68:10
**nonessential** [1] - 16:13
**nonmaterial** [1] - 41:10
**nonresponsive** [1] - 71:16
**Nos** [2] - 70:2, 70:5
**note** [2] - 51:5, 63:11
**notes** [1] - 6:9
**nothing** [2] - 37:16, 37:25
**notice** [5] - 51:6, 56:2, 56:18, 57:24, 70:7
**notices** [2] - 6:15, 22:7
**notified** [1] - 21:24
**Novartis** [2] - 18:19, 19:6
**November** [5] - 12:1, 12:11, 14:12, 14:13, 74:6
**nuances** [1] - 52:11
**NUMBER** [1] - 1:5
**number** [3] - 14:2, 74:23, 74:24
**numbers** [2] - 69:3, 75:10
**numerous** [2] - 24:14, 24:24

---

## O

**o'clock** [3] - 6:21,

11:16, 63:25
**objection** [13] - 49:22, 50:19, 54:7, 54:9, 54:11, 54:18, 54:20, 56:8, 56:25, 58:3, 59:20, 68:5, 68:8
**objectionable** [1] - 34:19
**objections** [7] - 7:25, 54:17, 57:10, 58:1, 58:11, 66:25, 72:2
**objective** [1] - 14:25
**objectively** [1] - 35:12
**objectives** [1] - 29:16
**obligated** [1] - 56:4
**obtained** [2] - 40:10, 44:14
**obviously** [4] - 5:22, 30:7, 31:10, 42:14
**occasions** [1] - 74:24
**occur** [4] - 16:4, 17:10, 17:12, 75:3
**occurred** [1] - 60:5
**October** [1] - 24:25
**OF** [1] - 1:3
**offer** [1] - 28:15
**offered** [2] - 36:22, 36:23
**office** [1] - 71:11
**offices** [2] - 70:1, 71:6
**Official** [1] - 1:23
**official** [1] - 45:6
**OH** [1] - 2:19
**older** [1] - 70:8
**once** [2] - 33:10, 70:14
**one** [54] - 7:16, 8:13, 10:13, 12:19, 16:19, 17:4, 18:15, 19:19, 21:14, 21:19, 23:6, 24:15, 25:11, 26:10, 27:9, 27:16, 28:14, 30:6, 30:17, 31:4, 33:1, 33:4, 34:11, 35:9, 36:11, 36:13, 37:20, 39:8, 41:3, 43:10, 44:1, 44:16, 45:9, 45:14, 49:10, 55:6, 58:9, 62:13, 65:23, 66:4, 66:20, 68:14, 69:6, 69:15, 69:16, 69:19, 72:13, 75:11, 76:21
**One** [1] - 2:24
**onerous** [2] - 75:1, 76:19
**ones** [2] - 59:2, 75:12
**ongoing** [3] - 20:17, 20:20, 21:3
**open** [1] - 74:16
**opinion** [1] - 64:17

**opportunity** [1] - 76:14
**optimistic** [1] - 21:8
**optimize** [1] - 49:13
**order** [50] - 6:19, 10:4, 10:6, 11:8, 11:13, 12:1, 14:17, 14:19, 15:16, 18:1, 19:12, 24:13, 34:3, 35:2, 37:6, 39:16, 44:24, 46:4, 46:16, 48:2, 48:8, 48:19, 50:3, 50:6, 50:25, 54:16, 57:9, 58:1, 59:1, 59:14, 61:20, 63:13, 64:14, 66:2, 66:4, 66:6, 66:12, 69:12, 69:22, 70:4, 70:16, 70:20, 70:23, 71:14, 71:20, 71:24, 73:3, 76:16
**ordered** [4] - 12:21, 15:14, 37:9, 72:23
**orders** [13] - 7:19, 12:4, 13:20, 37:3, 60:4, 63:20, 64:17, 65:8, 66:19, 66:22, 68:12, 68:17, 71:1
**original** [1] - 55:3
**Orleans** [1] - 1:21
**otherwise** [1] - 40:17
**ought** [1] - 10:24
**outlined** [1] - 55:18
**overflow** [1] - 75:2
**overly** [1] - 9:25
**own** [1] - 17:2
**Oxford** [1] - 2:24

## P

**P-I-T-T-M-A-N** [1] - 66:25
**p.m** [4] - 52:19, 64:10, 64:11, 77:15
**page** [1] - 6:5
**Page** [7] - 1:11, 11:6, 45:17, 61:1, 61:12, 65:10, 68:11
**pages** [4] - 45:13, 45:15, 45:16, 45:19
**paging** [1] - 63:10
**pandemic** [1] - 29:6, 29:23
**PAPANTONIO** [1] - 2:2
**papers** [3] - 18:11, 42:24, 45:4
**parallel** [2] - 16:6, 76:8
**paramount** [1] - 38:16

**Park** [1] - 2:21
**Parkway** [1] - 1:14
**part** [8] - 5:21, 16:17, 35:13, 43:14, 44:7, 55:24, 57:13, 76:6
**participating** [1] - 71:16
**particular** [6] - 8:9, 11:13, 18:7, 55:23, 56:3, 67:7
**particularly** [1] - 76:24
**PARTIES** [1] - 4:1
**parties** [40] - 4:25, 6:23, 11:11, 11:19, 11:22, 12:6, 12:8, 12:12, 13:14, 13:19, 13:20, 14:2, 14:21, 14:22, 15:6, 15:10, 16:9, 18:13, 18:15, 19:4, 22:23, 22:25, 26:7, 27:10, 27:15, 38:17, 40:14, 41:16, 50:12, 50:24, 50:25, 57:2, 59:14, 63:1, 65:24, 66:11, 73:19, 73:21, 74:4, 74:8
**parties'** [4] - 6:4, 38:21, 52:19, 62:18
**parts** [1] - 65:7
**party** [16] - 6:20, 7:13, 12:5, 13:7, 13:15, 14:20, 15:7, 17:7, 18:10, 18:25, 73:15, 73:23, 74:7, 74:11, 75:19, 76:25
**passed** [1] - 57:19
**past** [3] - 4:5, 5:20, 73:20
**Patrick** [1] - 68:8
**PC** [1] - 1:16
**pencil** [1] - 20:5
**pending** [2] - 53:5, 62:17
**Peng** [1] - 46:1
**penguin** [1] - 24:4
**Pennsylvania** [3] - 1:18, 2:10, 2:25
**Pensacola** [1] - 2:4
**people** [14] - 4:8, 4:9, 20:24, 26:1, 26:2, 28:21, 29:1, 29:5, 31:7, 31:16, 34:19, 39:14, 45:21, 77:1
**people's** [1] - 43:21
**per** [1] - 31:1
**percent** [1] - 46:25
**perfect** [2] - 26:6, 38:9, 39:1
**perfectly** [2] - 52:25, 57:9

**performing** [1] - 43:5
**perhaps** [3] - 30:22, 52:22, 54:1
**period** [14] - 13:3, 14:8, 22:11, 24:22, 25:19, 27:24, 30:20, 34:2, 36:25, 38:4, 74:9, 74:13, 75:1
**periods** [1] - 20:24
**peripheral** [1] - 8:10
**permitted** [2] - 40:21, 57:11
**person** [3] - 33:1, 77:11
**personal** [9] - 9:6, 14:7, 15:4, 44:5, 46:19, 70:17, 73:24, 75:13, 75:20
**perspective** [4] - 8:25, 18:24, 21:12, 32:25
**pertain** [1] - 26:15
**pertaining** [1] - 74:7
**pertinent** [3] - 13:6, 13:25, 25:23
**Pharma** [1] - 2:16
**Pharmaceutical** [1] - 2:15
**Pharmaceuticals** [1] - 2:15
**pharmacy** [3] - 5:12, 52:14, 53:4
**Pharmacy** [1] - 5:13
**phase** [1] - 13:1
**Philadelphia** [2] - 1:18, 2:10
**phone** [4] - 4:5, 4:10, 5:16, 7:15, 32:12, 59:16, 67:20
**phrase** [1] - 7:2
**physical** [1] - 55:15
**pick** [1] - 11:21
**Piedmont** [1] - 2:14
**PIETRAGALLO** [1] - 2:23
**pills** [1] - 36:2
**Pittman** [3] - 66:25, 67:3, 67:16
**Pittsburgh** [1] - 2:25
**place** [1] - 6:8
**placed** [1] - 2:10
**places** [2] - 24:8
**Plaintiff** [5] - 1:15, 1:19, 1:22, 2:4, 2:8
**plaintiff** [10] - 14:7, 27:13, 31:17, 32:6, 32:23, 40:21, 41:3, 58:5, 63:20, 68:24
**plaintiffs** [59] - 4:13, 4:16, 4:18, 4:20, 4:22, 6:17, 7:11,

**8:12, 10:4, 12:6, 17:6, 23:16, 23:22, 24:7, 24:25, 25:2, 27:4, 28:15, 28:21, 29:19, 32:17, 34:22, 35:11, 39:6, 40:10, 40:12, 40:14, 40:24, 41:5, 41:14, 42:22, 44:6, 44:17, 44:21, 45:11, 45:18, 45:23, 46:14, 50:18, 52:9, 52:19, 53:15, 54:23, 55:4, 56:1, 56:7, 56:12, 56:18, 58:19, 61:17, 62:3, 62:10, 67:2, 68:20, 72:13, 73:24, 74:21, 75:13, 75:20
**plaintiffs'** [10] - 7:21, 8:25, 10:25, 11:3, 18:24, 26:23, 39:4, 51:21, 68:22, 73:18
**plan** [3] - 16:21, 38:17, 72:19
**plane** [1] - 24:17
**planned** [3] - 34:1, 42:3, 42:4
**planning** [1] - 13:21
**plans** [2] - 32:16, 32:18
**plant** [1] - 45:7
**plate** [1] - 73:21
**play** [2] - 27:22, 39:13
**player** [1] - 27:11
**PLLC** [1] - 2:5
**plus** [1] - 60:4
**Point** [2] - 20:12, 20:13
**point** [20] - 10:8, 20:23, 21:4, 21:20, 21:25, 22:9, 25:18, 25:19, 28:11, 36:20, 44:17, 45:1, 49:22, 51:19, 51:22, 52:4, 58:7, 58:8, 62:6, 64:23
**points** [2] - 15:18, 22:5
**poker** [1] - 27:11
**policy** [1] - 49:13
**position** [7] - 10:8, 34:23, 40:11, 44:1, 44:8, 46:23, 76:16
**positions** [3] - 40:6, 43:1
**possibility** [1] - 12:7
**possible** [4] - 11:22, 27:16, 31:6, 35:24
**possibly** [1] - 73:25
**postpone** [1] - 73:15

**potentially** [5] - 11:12, 14:20, 29:2, 29:9, 49:10
**practicable** [1] - 48:14
**practical** [3] - 17:17, 30:5, 38:14
**practicalities** [1] - 23:10
**practice** [1] - 47:12
**pre** [2] - 12:19, 14:6
**pre-April** [2] - 12:19, 14:6
**preclude** [1] - 51:18
**prefer** [1] - 28:22
**prejudice** [6] - 8:17, 10:19, 41:17, 42:3, 42:7, 49:5
**prejudiced** [1] - 10:6
**prejudicial** [1] - 37:9
**preliminary** [2] - 40:2, 40:23
**prepared** [6] - 25:5, 30:13, 31:24, 34:16, 48:19, 75:21
**preparing** [2] - 48:7, 55:13
**present** [9] - 7:24, 17:24, 18:6, 20:16, 41:10, 41:18, 42:7, 46:14, 46:15
**presented** [4] - 45:13, 45:18, 47:9, 63:6
**presenting** [1] - 17:25
**preserve** [1] - 15:20
**pressure** [1] - 16:16
**presumed** [1] - 42:19
**presumption** [1] - 42:18
**pretty** [4] - 41:11, 64:16, 76:1, 76:21
**prevail** [1] - 60:8
**previously** [2] - 72:10, 72:21
**prima** [5] - 40:14, 40:24, 41:11, 41:14, 41:24
**primarily** [1] - 75:19
**primary** [1] - 24:11
**problem** [4] - 18:6, 27:4, 49:18, 68:3
**problematic** [3] - 23:5, 23:20, 31:15
**problems** [3] - 17:24, 24:15, 34:21
**proceed** [4] - 4:12, 10:24, 11:3, 11:6
**Proceedings** [1] - 1:25
**proceedings** [1] - 77:19

**process** [16] - 20:20, 22:1, 22:4, 22:9, 22:13, 32:13, 35:24, 35:25, 37:18, 39:10, 43:7, 43:10, 49:14, 58:13, 60:8, 68:1
**processes** [2] - 36:1, 43:18
**produce** [6] - 38:2, 48:9, 56:15, 59:2, 61:18, 62:9
**produced** [20] - 1:25, 6:14, 20:25, 21:1, 31:11, 34:24, 37:10, 43:23, 48:13, 48:21, 49:5, 49:9, 50:3, 50:4, 50:7, 55:10, 56:17, 57:17, 62:1, 62:5
**producing** [1] - 55:25
**production** [4] - 43:22, 57:6, 60:10, 61:25
**productions** [3] - 13:20, 43:21, 52:1
**PRODUCTS** [1] - 1:6
**proffering** [1] - 16:10
**profit** [1] - 49:19
**progress** [1] - 64:20
**prohibition** [6] - 55:21, 56:4, 56:19, 57:5, 57:23, 58:2
**promptly** [2] - 63:2, 63:4
**proposal** [7] - 11:17, 18:14, 39:6, 52:16, 62:19, 76:24, 76:25
**propose** [1] - 11:23, 13:10, 15:12, 76:7
**proposed** [5] - 16:2, 23:19, 27:6, 31:24, 52:20
**proposes** [1] - 13:23
**proposing** [1] - 40:21
**propounded** [1] - 16:3
**protective** [6] - 46:8, 46:16, 48:1, 50:6, 59:1, 60:3
**protocol** [9] - 50:10, 50:15, 50:18, 50:19, 50:23, 51:6, 51:13, 51:18, 62:25
**provide** [7] - 8:22, 12:16, 16:12, 32:5, 47:13, 67:21, 72:13
**provided** [13] - 34:8, 37:8, 44:12, 44:17, 44:20, 56:1, 56:17, 57:24, 62:9, 69:10, 70:6, 70:13, 72:22

**provides** [1] - 14:17
**providing** [1] - 15:23
**Province** [1] - 24:18
**provision** [2] - 57:4, 57:8
**provisions** [2] - 62:9, 62:12
**proviso** [1] - 32:1
**public** [1] - 60:5
**publicly** [1] - 60:14
**purpose** [2] - 36:14, 54:15
**purposely** [1] - 21:16
**pursuant** [1] - 7:18
**pursue** [1] - 19:2
**pursuit** [1] - 49:18
**push** [4] - 25:3, 32:10, 38:16, 54:7
**pushed** [3] - 23:21, 31:25, 53:5
**pushing** [1] - 49:13
**put** [17] - 4:5, 4:11, 25:11, 28:17, 29:15, 29:20, 30:11, 31:11, 34:23, 43:25, 44:9, 46:7, 46:20, 50:21, 59:17, 65:13, 70:23
**putative** [1] - 12:23
**putting** [3] - 12:25, 57:13, 57:15

## Q

**Qiangming** [1] - 46:2
**Qinghai** [2] - 24:18, 28:13
**quality** [2] - 26:20
**quarantine** [13] - 24:21, 24:22, 25:8, 25:16, 25:19, 27:17, 28:2, 28:12, 29:7, 30:6, 30:13, 38:11, 42:22
**quarantined** [3] - 29:2, 29:9, 42:17
**quash** [2] - 6:22, 47:2
**quashed** [3] - 41:20, 46:12, 47:4
**questions** [3] - 7:16, 21:19, 46:2
**quickly** [1] - 64:19
**quintessential** [1] - 45:22

## R

**radar** [1] - 20:11
**raise** [1] - 33:13
**raised** [5] - 18:5, 54:14, 54:21, 57:8,

58:8
**Ralph** [1] - 66:15
**ramifications** [1] - 60:5
**ranking** [1] - 45:6
**RASPANTI** [1] - 2:23
**rather** [4] - 19:2, 37:13, 43:2, 70:14
**RE** [1] - 1:5
**reached** [2] - 12:14, 16:8
**read** [7] - 5:23, 6:4, 11:1, 18:11, 23:3, 40:13, 42:24
**ready** [1] - 31:6
**real** [1] - 18:6
**realities** [1] - 29:21
**reality** [1] - 25:6
**realize** [1] - 55:20
**realized** [1] - 55:13
**really** [19] - 10:11, 10:17, 12:25, 14:10, 14:12, 15:9, 15:19, 19:15, 26:11, 29:3, 30:9, 35:12, 42:13, 45:20, 45:22, 47:11, 75:10, 76:2
**reason** [9] - 29:17, 33:4, 38:16, 39:19, 40:5, 49:7, 49:8, 49:15, 50:23
**reasonable** [3] - 21:14, 49:22, 50:20
**reasons** [3] - 25:11, 26:9, 76:23
**rebuttable** [1] - 42:18
**receipt** [1] - 70:7
**receive** [3] - 18:21, 68:15, 72:8
**received** [10] - 6:4, 10:25, 64:23, 65:18, 66:16, 66:21, 69:6, 69:9, 70:11, 72:18
**receiving** [2] - 51:6, 74:16
**receptive** [1] - 76:24
**recess** [1] - 64:10
**Recess** [1] - 64:11
**recognize** [1] - 57:23
**recognized** [1] - 15:6
**recollection** [2] - 53:9, 53:13
**reconsideration** [1] - 64:21
**reconvene** [1] - 52:23
**record** [23] - 4:4, 4:10, 4:12, 20:16, 24:8, 30:16, 37:19, 39:3, 40:19, 41:8, 41:10, 41:18, 42:7, 44:13,

46:11, 46:16, 46:18, 46:22, 46:23, 50:1, 50:8, 77:19
**recorded** [1] - 1:25
**records** [1] - 72:23
**redaction** [6] - 59:21, 59:23, 61:1, 61:12, 61:15, 61:22
**redactions** [3] - 60:19, 62:4, 62:7
**referenced** [1] - 72:10
**referred** [2] - 45:2, 71:10
**referring** [1] - 61:16
**refresh** [1] - 53:13
**refreshing** [4] - 16:20, 22:17, 23:1, 53:9
**regard** [8] - 8:23, 22:3, 35:13, 36:17, 40:4, 40:12, 52:1, 63:3, 63:5, 64:21, 65:3
**regarding** [1] - 13:21
**regulatory** [1] - 45:2
**reinstated** [1] - 67:17
**reinvent** [1] - 51:17
**relate** [1] - 16:25
**related** [7] - 8:9, 13:19, 27:23, 59:11, 75:5, 76:2, 76:15
**relaxed** [2] - 25:17, 25:21
**relevance** [1] - 48:5
**relevant** [2] - 17:8, 40:15
**relief** [3] - 15:23, 16:12, 74:25
**relist** [1] - 65:25
**remain** [1] - 52:4
**remainder** [1] - 75:4
**remaining** [4] - 11:4, 17:14, 66:22, 68:18
**remember** [3] - 37:24, 43:19, 50:15
**Remonda** [1] - 46:2
**removal** [1] - 60:19
**remove** [2] - 65:25, 66:11
**removed** [4] - 62:4, 68:16, 71:15, 72:11
**repeat** [2] - 61:6, 71:2
**report** [3] - 17:16, 36:12, 40:16
**Reporter** [3] - 1:23, 61:6, 71:2
**Reporter/Transcriber** [1] - 77:21
**reports** [7] - 15:21, 16:3, 18:8, 23:22,

34:24, 36:16, 36:18
**representations** [1] - 49:6
**representative** [1] - 14:5
**representatives** [5] - 12:23, 20:22, 22:8, 73:24, 75:12
**represented** [1] - 69:1
**represents** [3] - 38:13, 67:3, 70:2
**request** [29] - 7:21, 48:18, 49:2, 50:6, 50:8, 51:9, 53:18, 54:8, 55:4, 55:5, 55:8, 55:9, 55:10, 56:1, 56:16, 57:1, 57:6, 57:14, 57:15, 57:16, 57:20, 57:21, 61:20, 61:24, 70:3, 70:16, 71:18
**requesting** [4] - 65:20, 66:22, 68:17, 71:13
**requests** [15] - 53:10, 53:12, 53:20, 53:25, 54:2, 54:19, 54:23, 55:23, 56:3, 58:21, 59:5, 59:6, 59:11, 62:7, 62:12
**required** [5] - 6:25, 14:12, 37:7, 56:4, 56:11
**requirement** [2] - 56:10, 58:3
**requirements** [4] - 25:8, 28:2, 28:6, 34:15
**requires** [3] - 27:23, 32:16, 33:9
**resolve** [5] - 7:25, 15:15, 15:16, 53:8, 67:6
**resolved** [2] - 19:21, 54:18
**respect** [7] - 8:11, 12:3, 15:21, 56:18, 73:22, 74:2, 74:5
**respectfully** [1] - 58:1
**respond** [6] - 8:18, 10:9, 24:1, 48:17, 50:5, 62:16
**responded** [1] - 61:24
**responding** [1] - 55:5
**response** [10] - 6:14, 10:7, 10:10, 55:12, 55:13, 55:23, 56:2, 56:15, 57:1, 57:16
**responses** [5] - 7:19, 56:2, 56:12, 56:14, 58:12

**responsible** [1] - 40:6
**responsive** [3] - 55:10, 55:25, 57:23
**rest** [2] - 15:22, 62:8
**restricted** [1] - 29:21
**restrictions** [5] - 24:20, 25:16, 25:17, 28:6, 28:12
**result** [4] - 24:21, 33:8, 33:12, 49:18
**resulting** [1] - 25:9
**results** [2] - 26:12, 36:8
**retailer** [3] - 5:12, 52:14, 53:3
**retailers** [1] - 55:17
**return** [1] - 7:13
**returning** [4] - 24:23, 30:1, 30:4, 30:11
**review** [3] - 45:12, 51:10, 75:21
**reviewing** [1] - 9:10
**revolve** [1] - 43:15
**RFPs** [1] - 58:1
**Richard** [3] - 69:7, 69:18, 72:9
**ride** [1] - 76:21
**ripe** [1] - 59:7
**Rite** [1] - 5:13
**RMR** [1] - 77:21
**road** [2] - 19:24, 36:11
**Road** [1] - 2:14
**ROBERT** [1] - 1:11
**Robinson** [4] - 69:2, 69:11, 72:15, 73:4
**robust** [1] - 50:8
**role** [3] - 43:6, 43:20, 49:7
**roll** [1] - 64:18
**rolling** [1] - 60:8
**room** [2] - 29:7, 75:18
**Rosa** [3] - 69:2, 72:15, 73:4
**Roseland** [1] - 1:15
**Ruben** [4] - 4:17, 15:17, 17:18, 74:22
**RUBEN** [1] - 1:17
**Rule** [3] - 16:7, 64:14, 76:16
**rule** [1] - 60:12
**ruling** [6] - 46:21, 46:22, 49:24, 60:23, 63:4, 52:7, 72:22
**rusty** [1] - 11:2

---

## S

**S-U-I-T-S** [1] - 65:12
**sacrifice** [1] - 24:5
**safety** [2] - 25:9, 29:14

**sake** [1] - 19:15
**sales** [1] - 26:3
**Sam** [2] - 69:25, 71:5
**Sandoz** [1] - 18:16
**SARAH** [1] - 2:21
**Sarah** [2] - 5:11, 53:3
**satisfaction** [1] - 45:23
**saw** [2] - 7:17, 54:11
**schedule** [51] - 6:6, 6:10, 7:5, 7:8, 11:23, 11:24, 12:1, 12:8, 12:9, 12:16, 12:20, 12:25, 13:9, 13:23, 14:6, 14:14, 15:1, 15:7, 15:12, 15:13, 17:1, 23:19, 25:5, 25:14, 27:12, 28:18, 28:23, 29:15, 29:20, 30:12, 30:19, 31:24, 32:9, 32:25, 34:8, 34:17, 35:11, 35:15, 36:12, 36:17, 36:21, 37:8, 42:1, 52:16, 62:24, 73:20, 73:25, 74:13, 74:16, 75:4, 75:16
**scheduled** [3] - 6:20, 6:24, 30:18
**schedules** [1] - 28:25
**scheduling** [5] - 22:1, 22:4, 52:20, 62:17, 62:19
**Schiano** [1] - 68:15
**SCHIANO** [1] - 68:16
**Schneider** [1] - 4:3
**SCHNEIDER** [63] - 1:10, 4:3, 4:23, 5:14, 8:16, 9:16, 10:2, 10:19, 13:14, 16:19, 18:9, 18:20, 18:23, 19:12, 20:3, 21:17, 22:17, 24:2, 26:4, 27:8, 28:8, 29:24, 30:14, 31:5, 31:20, 32:18, 33:6, 33:17, 33:20, 34:6, 34:10, 36:18, 38:8, 39:16, 42:2, 42:23, 43:25, 46:6, 47:4, 47:17, 48:1, 48:15, 49:24, 51:2, 52:7, 52:25, 53:7, 54:4, 56:22, 57:7, 58:5, 59:9, 59:13, 60:18, 60:23, 61:1, 61:5, 61:10, 62:20, 63:15, 63:17, 63:24, 64:8
**Schwartz** [3] - 70:1, 71:6, 71:7

**scope** [1] - 53:25
**screen** [1] - 20:11
**seal** [1] - 60:13
**search** [3] - 51:16, 51:24, 52:1
**SEC** [1] - 33:9
**second** [2] - 44:16, 73:2
**secondly** [1] - 61:22
**Security** [2] - 54:12, 55:20
**see** [16] - 5:17, 9:1, 10:19, 15:11, 25:14, 34:12, 38:15, 45:14, 49:20, 52:22, 59:25, 62:23, 64:16, 65:5, 70:24, 75:22
**seeing** [1] - 9:2
**seek** [3] - 40:13, 68:12, 68:13
**seeking** [5] - 11:12, 18:16, 43:4, 44:6, 69:12
**seeks** [1] - 61:21
**seem** [2] - 31:4, 50:22
**send** [1] - 63:1
**sense** [4] - 9:1, 16:12, 19:17, 29:20
**sent** [2] - 55:15, 55:16
**separate** [1] - 6:20
**separately** [1] - 63:16
**September** [2] - 24:25, 29:13
**series** [1] - 8:21
**serious** [1] - 33:23
**seriously** [1] - 38:21
**serve** [1] - 59:5
**served** [2] - 68:25
**serving** [1] - 15:21
**set** [12] - 14:14, 15:2, 25:13, 32:19, 35:11, 39:11, 42:18, 53:10, 53:20, 67:6, 74:1, 74:6
**Seth** [4] - 4:24, 11:20, 23:25, 73:17
**SETH** [1] - 2:9
**setting** [1] - 12:1
**seven** [3] - 27:6, 30:8, 38:6
**several** [1] - 21:24
**shall** [1] - 7:4
**Shanghai** [3] - 24:18, 28:13, 43:7, 43:10
**share** [2] - 17:2, 44:22
**Sharon** [1] - 70:3
**sharpen** [1] - 20:5
**sheet** [5] - 63:21, 68:25, 70:6, 70:12, 70:18

**sheets** [4] - 53:11, 53:12, 53:16, 71:17
**ship** [1] - 19:18
**shipment** [5] - 55:4, 55:11, 56:1, 57:15, 57:17
**short** [6] - 5:25, 6:7, 7:21, 8:4, 50:22, 59:24
**show** [25] - 41:8, 41:18, 43:20, 45:19, 63:20, 65:8, 66:3, 66:4, 66:6, 66:12, 66:19, 66:22, 68:12, 68:17, 69:12, 69:22, 70:4, 70:16, 70:20, 70:23, 71:1, 71:14, 71:20, 71:24, 73:3
**showed** [1] - 49:12
**showing** [2] - 48:4, 49:4
**shown** [2] - 41:25, 47:13
**shut** [1] - 23:8
**sic** [1] - 16:16
**sides** [2] - 23:24, 31:22
**sign** [1] - 50:15
**signal** [1] - 9:9
**signed** [1] - 44:4
**significant** [3] - 15:9, 49:19, 60:5
**Sileo** [4] - 67:3, 67:4, 67:19, 67:25
**SILEO** [2] - 67:19, 68:3
**similar** [3] - 9:2, 50:15, 60:10
**similar-type** [1] - 50:15
**simple** [2] - 51:23, 52:5
**simply** [5] - 29:11, 51:18, 51:22, 51:24, 52:3
**simultaneous** [1] - 59:14
**single** [1] - 25:20
**sit** [1] - 8:18
**situation** [6] - 23:11, 27:16, 27:17, 29:3, 34:1, 44:6
**six** [5] - 27:6, 27:19, 30:8, 38:5, 40:1
**SLATER** [29] - 1:13, 1:14, 4:15, 9:4, 9:18, 10:15, 11:7, 17:11, 18:18, 18:21, 19:7, 20:1, 20:15, 21:24, 30:15, 31:7, 35:6,

**spike** [1] - 24:21
**spread** [1] - 37:14
**spring** [3] - 16:17, 77:10
**squeeze** [2] - 10:16, 23:17
**stage** [1] - 73:3
**standard** [1] - 44:15
**STANOCH** [6] - 1:17, 52:18, 53:14, 58:18, 59:12, 62:15
**Stanoch** [7] - 52:18, 53:4, 53:14, 58:19, 59:10, 62:15, 62:21
**start** [7] - 6:12, 7:3, 10:23, 11:6, 43:11, 48:10, 60:3
**started** [3] - 7:1, 7:4, 32:13
**starting** [2] - 4:13, 53:18
**starts** [1] - 37:11
**statement** [1] - 55:24
**States** [3] - 30:1, 34:16, 56:11
**STATES** [3] - 1:3, 1:10, 1:11
**status** [3] - 6:25, 7:6, 28:1
**STATUS** [1] - 1:7
**statute** [3] - 56:4, 56:21, 57:8
**statutory** [3] - 56:10, 57:4, 58:2
**stay** [2] - 64:3, 77:9
**stayed** [3] - 7:20, 8:18, 10:7
**stems** [1] - 61:23
**stenography** [1] - 1:25
**Steve** [5] - 5:4, 65:14, 65:15, 72:4, 72:7, 73:11
**Steven** [1] - 66:10
**STEVEN** [1] - 2:13
**sticky** [1] - 21:5
**still** [11] - 8:14, 11:24, 13:17, 17:1, 25:19, 31:10, 31:11, 37:10, 68:13, 68:17, 76:4
**stipulation** [2] - 8:9, 63:5
**stones** [1] - 58:10
**stops** [1] - 75:11
**strategic** [1] - 38:15
**strategy** [1] - 43:18
**Street** [4] - 1:18, 1:21, 2:10, 2:18
**stress** [1] - 75:24
**studied** [2] - 23:3,

51:13
**studiously** [1] - 15:25
**study** [1] - 51:7
**subject** [6] - 41:15, 41:16, 45:8, 55:6, 71:20, 75:21
**submission** [1] - 75:22
**submissions** [1] - 40:13
**submit** [3] - 58:2, 63:16, 77:2
**submitted** [1] - 18:11
**submitting** [1] - 29:6
**subpoena** [6] - 6:20, 7:13, 18:10, 18:21, 18:25, 19:1
**subpoenas** [3] - 17:7, 19:19, 59:17
**substance** [1] - 6:3
**substantial** [1] - 75:1
**substantive** [5] - 9:17, 9:21, 9:25, 10:21, 56:20
**substantively** [1] - 62:16
**sufficient** [1] - 44:13
**suggest** [5] - 16:6, 16:23, 62:20, 63:25, 64:3
**suggested** [5] - 12:6, 14:13, 28:16, 62:3, 74:24
**suggesting** [4] - 13:14, 16:20, 17:5, 18:1
**suggestion** [2] - 19:17, 70:22
**suite** [1] - 2:18
**Suite** [5] - 1:18, 2:3, 2:7, 2:14, 2:21
**Suits** [3] - 65:12, 65:21, 66:2
**summarize** [1] - 73:16
**summarized** [1] - 75:15
**summer** [2] - 16:18, 77:10
**supplement** [1] - 73:1
**supplemented** [2] - 17:16, 69:5
**supplementing** [1] - 72:19
**supplier** [6] - 61:18, 61:21, 62:5, 62:6, 62:13
**Supply** [2] - 54:12, 55:20
**supply** [2] - 54:20, 55:16

**support** [5] - 44:19, 46:17, 46:23, 46:25, 50:8
**supports** [2] - 46:11, 46:18
**suppose** [2] - 6:22, 23:6
**supposed** [1] - 38:4
**surprising** [1] - 38:1
**sympathetic** [5] - 23:9, 27:11, 34:20, 34:22, 40:5
**SynCores** [3] - 43:7, 43:10, 43:11

**T**

**T-3** [6] - 55:2, 55:14, 55:15, 57:14, 57:18, 57:21
**T-E-R-H-U-N-E** [1] - 68:4
**table** [2] - 62:17, 69:14
**tabled** [1] - 50:11
**tables** [1] - 69:3
**tacking** [1] - 76:7
**TAR** [2] - 50:9, 51:10
**target** [2] - 10:2, 10:13
**team** [1] - 51:8
**teams** [1] - 31:12
**Teddy** [1] - 73:7
**tee** [2] - 54:17, 59:8
**teed** [4] - 15:1, 19:20, 58:11, 58:25
**TELEPHONE** [1] - 4:1
**telephone** [1] - 1:7, 77:12
**ten** [4] - 14:6, 24:16, 29:6, 69:21
**ten-hour** [1] - 24:16
**tenable** [1] - 75:8
**Terhune** [2] - 68:4, 68:6
**term** [4] - 6:7, 8:4, 59:24, 60:17
**termination** [1] - 65:6
**terms** [14] - 6:5, 14:24, 15:14, 15:15, 15:23, 16:12, 17:24, 51:16, 51:24, 52:1, 57:18, 60:12, 60:20, 73:22
**terribly** [2] - 9:17, 10:21
**terrific** [1] - 23:18
**test** [1] - 36:8
**testimony** [12] - 17:25, 36:10, 37:1, 37:14, 37:15, 40:18, 41:4, 41:6, 41:9, 46:9, 46:14, 47:13

**testing** [7] - 18:17, 26:19, 28:16, 35:21, 35:23, 36:22, 39:10
**Teva** [10] - 2:15, 2:15, 5:3, 50:9, 50:19, 50:24, 51:6, 51:14, 51:18, 65:16
**THE** [1] - 1:3, 1:10, 1:11
**the Court** [70] - 7:8, 7:9, 7:16, 7:25, 8:1, 8:3, 9:9, 10:2, 10:11, 10:25, 11:11, 11:17, 11:23, 12:4, 12:16, 13:10, 15:12, 15:13, 15:14, 15:15, 15:16, 16:9, 16:10, 21:10, 24:8, 24:25, 31:23, 32:9, 32:22, 33:22, 34:13, 34:16, 34:20, 34:22, 35:2, 35:11, 37:23, 38:8, 38:25, 40:13, 44:17, 44:21, 47:9, 48:19, 48:20, 50:3, 51:19, 52:4, 52:10, 52:12, 52:25, 53:15, 53:24, 54:8, 54:10, 57:2, 57:8, 57:9, 57:25, 63:2, 63:6, 63:11, 65:2, 72:21, 73:20, 74:1, 74:16, 74:18, 76:3, 76:15
**theme** [1] - 21:11
**themselves** [2] - 29:6, 29:9
**thereafter** [1] - 76:12
**they've** [5] - 35:16, 36:22, 45:3, 45:12, 49:6
**thinking** [3] - 18:19, 18:24, 41:21
**thinks** [2] - 10:22, 27:13
**third** [20] - 6:20, 7:13, 12:5, 13:7, 13:15, 13:19, 14:21, 15:7, 17:7, 18:10, 18:13, 18:15, 18:25, 19:3, 73:15, 74:7, 74:8, 74:11, 75:19, 76:25
**third-party** [12] - 6:20, 7:13, 12:5, 13:7, 13:15, 15:7, 17:7, 18:10, 18:25, 73:15, 74:11, 75:19
**Thomas** [4] - 68:24, 69:23, 70:2, 71:23
**THORNBURG** [1] - 2:20

36:19, 39:8, 43:3, 47:20, 48:3, 48:22, 59:22, 60:20, 60:25, 61:3, 61:7, 64:6
**Slater** [30] - 4:16, 9:4, 9:17, 10:3, 10:11, 11:2, 11:5, 17:11, 18:18, 20:15, 21:18, 30:14, 30:15, 31:5, 35:6, 38:9, 39:4, 42:23, 44:12, 45:1, 45:2, 46:6, 47:18, 47:20, 48:17, 51:8, 51:21, 59:22, 60:19, 74:20
**Slater's** [1] - 63:6
**slide** [1] - 13:2
**slip** [1] - 10:12
**small** [1] - 39:9
**Smoot** [1] - 69:22
**SMOOT** [1] - 69:23
**smooth** [1] - 22:14
**snippets** [1] - 45:18
**solely** [1] - 39:7
**solution** [7] - 26:6, 30:17, 30:21, 31:4, 36:16, 38:10, 39:1
**solvents** [1] - 49:17
**someone** [2] - 9:19, 73:16
**sometime** [3] - 6:12, 64:15, 77:9
**sometimes** [1] - 24:4
**somewhat** [3] - 9:14, 16:6, 76:8
**Sonja** [1] - 71:21
**SONJA** [1] - 71:21
**soon** [5] - 25:12, 27:6, 35:24, 48:14, 64:16
**sooner** [1] - 19:2
**sorry** [12] - 5:5, 25:7, 36:19, 53:1, 53:2, 58:18, 61:3, 67:19, 67:21, 69:20, 72:4, 72:6
**sort** [3] - 27:3, 43:1, 67:12
**sounds** [5] - 4:6, 10:14, 64:6, 69:7, 69:9
**South** [1] - 70:9
**speaking** [5] - 4:5, 20:22, 30:16, 61:3, 61:7
**special** [1] - 49:7
**specific** [6] - 20:21, 20:22, 32:17, 45:8, 55:21, 62:11
**specifically** [1] - 76:9
**spent** [1] - 57:2

**thoughts** [7] - 16:25, 17:2, 17:4, 35:1, 40:3, 40:23, 41:22
**thousand** [1] - 54:16
**three** [5] - 19:19, 38:4, 65:10, 65:17, 66:23
**thrilled** [1] - 50:11
**throughout** [4] - 24:20, 29:13, 38:19, 39:21
**tiers** [2] - 53:16, 54:2
**tight** [1] - 8:18
**timeline** [3] - 15:22, 16:5, 16:11
**timing** [1] - 15:14
**today** [15] - 6:12, 8:7, 20:21, 52:23, 58:16, 59:24, 60:14, 60:16, 63:23, 64:15, 65:9, 67:4, 69:1
**today's** [2] - 48:8, 60:11
**together** [12] - 6:22, 12:25, 15:11, 20:9, 21:12, 21:15, 28:17, 29:15, 29:20, 57:14, 57:15, 75:7
**tomorrow** [1] - 64:15
**took** [1] - 23:18
**top** [1] - 40:7
**topics** [5] - 6:16, 20:22, 26:23, 26:24, 45:25
**Torghele** [1] - 66:12
**TORGHELE** [1] - 66:12
**Torrent** [6] - 60:9, 60:20, 61:5, 61:8, 61:11, 63:3
**TORRENT** [1] - 61:11
**totally** [1] - 65:22
**touch** [1] - 64:1
**touchstone** [2] - 34:10, 39:17
**toward** [1] - 74:25
**towards** [1] - 38:2
**track** [2] - 16:6, 76:1
**trade** [3] - 32:24, 37:4, 37:5
**train** [1] - 24:17
**transcript** [2] - 1:25, 77:18
**transcription** [1] - 1:25
**transcripts** [1] - 49:3
**transmission** [1] - 55:14
**Traurig** [2] - 65:16, 73:11
**TRAURIG** [1] - 2:12

**travel** [18] - 24:12, 24:20, 25:7, 27:24, 28:1, 28:10, 29:2, 32:16, 32:18, 33:8, 33:12, 33:15, 34:1, 42:16, 42:22, 70:9
**traveling** [5] - 24:15, 27:1, 27:22, 28:12, 29:6
**treaters** [1] - 14:21
**treating** [1] - 29:10
**tremendous** [1] - 32:21
**tried** [7] - 24:7, 25:12, 28:15, 29:12, 29:14, 29:19, 75:16
**trip** [4] - 24:16, 30:18, 30:23, 32:11
**Trischler** [3] - 5:6, 51:4, 52:7
**TRISCHLER** [4] - 2:24, 5:5, 51:3, 65:14
**Trischler's** [1] - 65:9
**trouble** [1] - 54:5
**troublesome** [2] - 54:10, 58:8
**Trowbridge** [1] - 73:8
**TROWBRIDGE** [1] - 73:8
**Troyce** [1] - 69:23
**TROYCE** [1] - 69:23
**true** [1] - 67:9
**try** [8] - 10:16, 10:17, 28:18, 30:10, 32:2, 36:15, 39:9, 67:3
**trying** [11] - 11:25, 13:1, 14:7, 15:6, 19:25, 27:9, 28:20, 52:2, 67:22, 74:9, 74:18
**Tuesday** [1] - 1:8
**turn** [1] - 76:17
**turns** [1] - 36:1
**two** [14] - 14:12, 16:19, 17:5, 19:19, 23:7, 30:5, 30:6, 30:7, 31:14, 55:23, 57:13, 61:18, 73:7, 73:12
**two-part** [1] - 57:13
**type** [1] - 50:15
**types** [1] - 6:18
**typical** [1] - 6:24
**typically** [2] - 5:21, 70:8

## U

**U.S** [9] - 25:2, 26:1,

26:2, 26:13, 26:18, 27:5, 27:25, 35:16, 40:22
**ULMER** [1] - 2:17
**ultimate** [1] - 65:6
**ultimately** [2] - 49:14, 53:19
**under** [8] - 25:19, 28:3, 28:5, 29:22, 34:19, 37:6, 58:3, 64:14
**undergo** [1] - 28:11
**underlying** [1] - 45:14
**understood** [2] - 35:12, 39:8
**undoubtedly** [1] - 18:13
**unduly** [1] - 42:19
**unfair** [1] - 32:8
**unfortunately** [1] - 38:18
**unhappy** [1] - 23:24
**unique** [5] - 43:20, 44:14, 47:14, 48:24
**United** [3] - 30:1, 34:16, 56:11
**UNITED** [3] - 1:3, 1:10, 1:11
**unless** [1] - 10:22
**unlike** [1] - 27:7
**unquestionably** [1] - 39:3
**unremarkable** [1] - 45:20
**unstated** [1] - 9:24
**unused** [1] - 35:15
**unworkable** [1] - 36:17
**up** [33] - 5:22, 9:11, 9:15, 9:23, 11:21, 15:1, 15:11, 16:21, 18:4, 19:20, 21:13, 23:12, 25:12, 26:8, 28:18, 32:2, 32:19, 35:20, 37:18, 37:22, 39:14, 39:19, 44:16, 47:11, 47:21, 54:17, 58:11, 58:25, 59:8, 60:10, 61:16, 67:6, 76:12
**upcoming** [1] - 30:19
**update** [6] - 5:25, 66:16, 66:21, 68:15, 69:6, 72:9
**updates** [6] - 65:19, 68:22, 70:11, 72:2, 72:12, 73:12
**uploaded** [1] - 69:8
**USA** [1] - 2:15
**uses** [1] - 49:17

**utmost** [1] - 22:25

## V

**Valsartan** [4] - 4:4, 8:11, 9:3, 9:7
**VALSARTAN** [1] - 1:5
**Vanaskie** [3] - 3:2, 5:16, 64:15
**various** [2] - 8:21, 60:6
**verify** [2] - 33:5, 33:14
**version** [2] - 7:25, 10:10
**versus** [2] - 47:10, 59:6
**Via** [1] - 1:7
**VIA** [1] - 4:1
**viable** [1] - 8:23
**vice** [1] - 26:14
**VICTORIA** [1] - 2:12
**Victoria** [1] - 5:2
**video** [1] - 77:13
**view** [4] - 22:21, 29:4, 39:1, 44:11
**Vine** [1] - 2:18
**violence** [2] - 75:4, 75:17
**virtually** [1] - 35:13
**vis** [2] - 16:11
**vis-a-vis** [1] - 16:11
**voiced** [1] - 37:21
**volume** [1] - 9:6
**voluntarily** [1] - 67:23

## W

**wait** [4] - 23:17, 52:22, 59:6, 62:23
**waiver** [2] - 56:8, 59:20
**Walker** [1] - 37:4
**Wang** [2] - 46:1
**wants** [4] - 4:11, 8:2, 60:13, 72:1
**Ware** [1] - 71:22
**WARE** [1] - 71:23
**wasted** [1] - 50:12
**watches** [1] - 60:6
**water** [1] - 31:4
**wearing** [1] - 31:16
**Wednesday** [1] - 7:7
**week** [9] - 9:13, 13:12, 13:13, 31:23, 32:11, 33:2, 35:3, 36:12, 73:20
**weeks** [9] - 21:25, 25:6, 27:6, 27:19, 30:7, 30:8, 31:2, 31:15

**Welch** [1] - 66:20
**WELCH** [1] - 66:20
**well-received** [1] - 64:23
**whatsoever** [1] - 10:20
**wheel** [1] - 51:17
**White** [1] - 66:4
**WHITELEY** [3] - 1:20, 1:20, 4:21
**Whiteley** [1] - 4:22
**whole** [1] - 37:24
**wholeheartedly** [1] - 57:25
**wholesale** [1] - 53:21
**wholesaler** [12] - 5:9, 52:13, 53:11, 53:17, 54:25, 55:9, 55:13, 56:5, 56:9, 61:15, 61:24
**wholesalers** [3] - 55:17, 55:21
**Williams** [4] - 5:18, 5:19, 7:12, 71:22
**willing** [1] - 32:9
**wish** [4] - 23:4, 23:9, 23:11, 23:14
**withdrawn** [1] - 71:12
**witness** [16] - 6:15, 22:2, 26:24, 27:14, 27:19, 35:10, 35:14, 36:22, 38:5, 40:9, 40:16, 43:9, 43:11, 47:13, 48:6, 49:9
**witnesses** [42] - 6:13, 17:22, 17:25, 18:5, 21:1, 23:20, 24:12, 24:17, 25:2, 25:4, 25:6, 25:7, 25:11, 25:24, 27:12, 28:17, 28:19, 31:25, 33:1, 35:16, 35:21, 35:25, 36:5, 36:21, 37:10, 37:12, 38:2, 38:11, 38:14, 39:10, 40:1, 40:12, 40:15, 41:2, 41:12, 41:15, 42:13, 42:16, 45:21, 46:13, 48:24, 49:11
**wondered** [1] - 54:12
**word** [1] - 76:19
**words** [2] - 44:8, 53:12
**work-related** [1] - 27:23
**world** [1] - 32:11
**worry** [4] - 31:3, 60:24, 63:17, 73:6
**wrap** [1] - 47:21
**written** [2] - 11:24,

*69:3*

## Y

**year** *[2]* - *33:10, 33:11*
**Year** *[3]* - *23:7, 25:13, 77:8*
**yesterday** *[3]* - *44:21, 51:5, 65:10*
**Younes** *[1]* - *47:10*
**yourselves** *[1]* - *77:14*

## Z

**ZHP** *[33]* - *2:11, 4:25, 20:19, 21:16, 23:2, 23:4, 23:18, 24:3, 26:13, 29:18, 30:18, 32:1, 32:22, 33:8, 35:14, 36:15, 36:17, 39:9, 39:18, 40:1, 40:22, 41:7, 41:17, 42:7, 43:2, 43:12, 45:6, 46:7, 48:9, 49:16, 50:7, 60:12*
**ZHP's** *[5]* - *27:11, 28:13, 32:25, 42:3, 50:5*
**Zoom** *[1]* - *32:12*