1    **UNITED STATES DISTRICT COURT**
     **FOR THE DISTRICT OF NEW JERSEY**
2

3    ────────────────────────────

                                    CIVIL ACTION NUMBER:
4    IN RE:   VALSARTAN PRODUCTS
     LIABILITY LITIGATION           19-md-02875-RBK-JS
5
                                    TELEPHONIC STATUS
6    ────────────────────────────   CONFERENCE WITH ORAL
                                    ARGUMENT AND RULINGS
7

8        Mitchell H. Cohen Building & U.S. Courthouse
         4th & Cooper Streets
9        Camden, New Jersey   08101
         January 5, 2021
10       Commencing at 3:30 p.m.

11   **B E F O R E:**          THE HONORABLE JOEL SCHNEIDER,
                               UNITED STATES MAGISTRATE JUDGE
12

     **A P P E A R A N C E S:**
13

14       MAZIE SLATER KATZ & FREEMAN, LLC
         BY:  ADAM M. SLATER, ESQUIRE
15       103 Eisenhower Parkway
         Roseland, New Jersey   07068
16       For the Plaintiffs

17       GOLOMB & HONIK, P.C.
         BY:  RUBEN HONIK, ESQUIRE
18          DAVID J. STANOCH, ESQUIRE
         1835 Market Street, Suite 2900
19       Philadelphia, Pennsylvania  19103
         For the Plaintiffs
20
         KANNER & WHITELEY, LLC
21       BY:  CONLEE S. WHITELEY, ESQUIRE
         701 Camp Street
22       New Orleans, Louisiana  70130
         For the Plaintiffs

23           Camille Pedano, Official Court Reporter
                   camillepedano@gmail.com
24                    609-774-1494

25   Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

```
 1   A P P E A R A N C E S  (Continued):

 2

 3         GOLDENBERG LAW, PLLC
           BY:  MARLENE J. GOLDENBERG, ESQUIRE
 4         800 Lasalle Avenue, Suite 2150
           Minneapolis, Minnesota  55402
 5         For the Plaintiffs

 6         DUANE MORRIS LLP
           BY:  SETH A. GOLDBERG, ESQUIRE
 7              GREGORY D. HERROLD, ESQUIRE
           30 South 17th Street
 8         Philadelphia, Pennsylvania  19103
           For the Defendants, Prinston Pharmaceuticals,
 9         Solco Healthcare U.S. LLC, and
           Zhejiang Huahai Pharmaceuticals Ltd.
10
           PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
11         BY:  CLEM C. TRISCHLER, ESQUIRE
                FRANK H. STOY, IV, ESQUIRE
12         One Oxford Centre, 38th Floor
           Pittsburgh, Pennsylvania  15219
13         For the Defendant, Mylan Pharmaceuticals Inc.

14         GREENBERG TRAURIG LLP
           BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
15              LORI G. COHEN, ESQUIRE
           3333 Piedmont Road, NE, Suite 2500
16         Atlanta, Georgia  30305
           For the Defendants, Teva Pharmaceutical Industries Ltd.,
17         Teva Pharmaceuticals USA, Inc., Actavis LLC,
           and Actavis Pharma, Inc.
18
           CIPRIANI & WERNER, P.C.
19         BY:  JESSICA M. HEINZ, ESQUIRE
           450 Sentry Parkway
20         Blue Bell, Pennsylvania  19422
           For the Defendants, Aurolife Pharma LLC
21         and Aurobindo Pharma USA, Inc.

22   A L S O   P R E S E N T:

23         HON. THOMAS I. VANASKIE (Ret.)
           Special Master
24

25
```

*United States District Court*
*Camden, New Jersey*

1   (PROCEEDINGS held in open court before The Honorable Joel

2   Schneider, United States Magistrate Judge, at 3:30 p.m.)

3        THE COURT:  Good afternoon, everyone.  This is Judge

4   Schneider.  Let me start by thanking everyone for accommodating

5   the Court's schedule moving this conference call back a little

6   bit.  The Court ran into some unavoidable scheduling problems

7   and we appreciate your courtesies.

8        We're on the record in the Valsartan MDL, Docket

9   Number 19-2875.  Why don't we start with the entries of

10  appearance, the lead counsel for the plaintiffs and defendants;

11  and if there's anyone else who wants to put their appearance on

12  the record, let's do it.  And for the benefit of the court

13  reporter, whoever talks, please announce your name first.  And

14  if you're not speaking, could you please put your phone on mute

15  so that there's no interference.

16       Plaintiffs, let's start with your entries of

17  appearance.

18       MR. SLATER:  Good afternoon, Your Honor.  Adam Slater

19  for the plaintiffs.

20       MR. HONIK:  Good afternoon, Your Honor.  Ruben Honik

21  for plaintiffs.

22       MS. WHITELEY:  Good afternoon, Your Honor.  This is

23  Conlee Whiteley on behalf of plaintiffs.

24       THE COURT:  All right.  Why don't we get the entries

25  of appearance for the defendants.

1    MR. GOLDBERG:  Good afternoon, Your Honor.  This is

2  Seth Goldberg on behalf of the ZHP parties and the defendants.

3    MS. COHEN:  Good afternoon, Your Honor.  This is Lori

4  Cohen with Greenberg Traurig on behalf of the Teva defendants

5  and the Executive Committee for the defense.

6    MR. TRISCHLER:  Good afternoon, Your Honor.  Clem

7  Trischler for the Mylan defendants and the defense group.

8    MR. GEOPPINGER:  Good afternoon, Your Honor.  Jeff

9  Geoppinger for the wholesaler defendants and AmerisourceBergen.

10    THE COURT:  All right.  It looks like that's all the

11  entries of appearance we have at the moment.

12    The main event this afternoon is, of course, the

13  subpoena issue; but I'd like to start out by identifying if

14  there's any other issues that we should address this afternoon

15  while we're together.

16    I received Mr. Goldberg's letter about the deposition

17  schedule.  If the parties are prepared to address that, why

18  don't we address that.

19    Are there any other issues, aside from the subpoena

20  issue, that the parties want to discuss today?

21    MR. SLATER:  Your Honor, we would also just bring Your

22  Honor up to date on what's been happening with our negotiations

23  with Mylan.  We reached an agreement in principal earlier this

24  afternoon, and to talk about some deposition scheduling issues

25  in general as opposed to in specific.  And one other issue that

1    has come up with Mylan that we've discussed with Mr. Trischler,

2    asking Your Honor to just make a call on it for us.  We don't

3    think it requires any briefing, it's a pretty straightforward

4    question.  And then there's an issue when we talk about ZHP

5    with the State Secret log that they sent us and the period of

6    time during which challenges will be resolved.  I think we have

7    a 30-day time period in the order which is going to start to be

8    problematic with depositions coming up soon.

9            THE COURT REPORTER:  Excuse me, Your Honor.  Was that

10   Mr. Slater?

11           MR. SLATER:  Yes.  Sorry about that.  That was Adam

12   Slater.

13           THE COURT REPORTER:  Thank you.

14           THE COURT:  You reached agreement in principal with

15   Mylan, is that on the TAR issue?

16           MR. SLATER:  Yes, Your Honor.

17           THE COURT:  So just submit a consent order, similar to

18   what you did with Teva, and that will be entered.  That's

19   terrific.

20           Did you say -- as long as we're on Mylan, did you say

21   there's another issue with Mylan?

22           MR. SLATER:  Right.  There's a very narrow issue

23   having to do with 3:30(b)(6), witnesses appointed -- or

24   designated, I should say, by Mylan where they were not named as

25   custodians by Mylan and we asked them to make custodial

1   productions for these witnesses, since they're obviously

2   important, and there has been some discussion with them, with

3   Mylan, previously when the custodians were being selected and

4   we were assured at least in one of the cases the witness wasn't

5   really very important.  Now the person's a 30(b)(6) rep.  We've

6   tried to work it out and we even offered to take custodial

7   productions for two out of three, but Mylan was unable to agree

8   to that.  So we were just looking for a call from Your Honor,

9   you know, we're requesting custodial productions for these

10  witnesses who are going to be deposed.

11      THE COURT:  Do you know when these particular three

12  witnesses will be deposed, Mr. Slater?

13      MR. SLATER:  I don't have the schedule in front of me

14  but it can't be before the middle of February because we don't

15  have -- Mylan is not offering any witnesses before the middle

16  of February at this point, so probably March.

17      THE COURT:  Mr. Trischler, do you want to be heard

18  before the Court rules?  If you're speaking, Mr. Trischler, you

19  might be on mute because I can't hear you.

20      MR. TRISCHLER:  Thank you, Your Honor.  I was.  My

21  apologies.  This is Clem Trischler.

22      Just addressing briefly the Court's last question

23  first, the three corporate designees to which Mr. Slater

24  referred are Derrick Glover, Daniel Snyder, D-E-R, and Katie

25  Reed, R-E-E-D.  The dates upon which they have been offered for

1    deposition are March 4, March 9 and March 16.  We believe that

2    compelling additional custodial productions from these three

3    witnesses would be inappropriate and inconsistent with the

4    proportionality requirements of the Federal Rules of Civil

5    Procedure.  To the extent the Court wants to hear my legal

6    argument now, I'm happy to do it.  I wasn't sure if Your Honor

7    wanted me just to frame or understand the issue or if you

8    wanted me to get into why I think the production would be

9    inappropriate.

10              THE COURT:  I think I understand the issue.

11              Here's the Court's ruling:  Plaintiffs' request for

12   the custodial productions is denied without prejudice.  If,

13   when you take the depositions, Mr. Slater, it turns out that

14   there are relevant documents that you didn't previously know

15   about or that have not been produced, you can make an

16   application to the Court to produce them.  The record has been

17   clear in the case.  The Court has said multiple times that if

18   documents are produced after a deposition that should have been

19   produced before a deposition, you will not be prejudiced.  So

20   if it turns out, and I don't know what the case will be, that

21   there are material relevant documents that aren't either

22   cumulative or nonmaterial, then you certainly have a good basis

23   to apply to the Court to redepose the witness.  That's the risk

24   that Mylan takes in not producing the documents before the

25   deposition.  And the Court believes that that's a fair

1    balancing of the parties' interest in the case since, at the

2    end of the day, no one will be prejudiced.

3         So, in sum, the Court's ruling is the custodial

4    productions for these three 30(b)(6) witnesses from Mylan are

5    denied without prejudice, the plaintiffs' right to make an

6    application after the depositions are taken if it believes that

7    there are material additional relevant documents that are

8    responsive and have not previously been produced.  So that

9    takes care of the Mylan issue.

10        Before we get into the ZHP deposition scheduling, did

11   you want to talk generally, Mr. Slater, about the deposition

12   scheduling?

13        MR. SLATER:  I just wanted to let Your Honor know that

14   we're still talking to all the parties.  We are really trying

15   hard to convince all of the defendants en masse, as a group, to

16   spread out the witnesses because at this point, I don't have

17   numbers on it, but most of the witnesses, the overwhelming

18   majority, if not 90 percent or more, it's probably over 90

19   percent, are all being offered to us in March.  So you already

20   know the issue we have with ZHP.  Well, that's being compounded

21   because, for example, Teva and Mylan have said, well, until we

22   finish our document productions, which were delayed because of

23   their TAR issues, we don't want to produce any witnesses.

24   Other defendants are saying, well, that's when our witnesses

25   are available.  So everybody has a reason why, you know, most

1  of their witnesses are going to be deposed in March.

2         So, you know, we're going to be put in a very, very

3  difficult situation.  We don't have unlimited resources, we

4  don't have unlimited numbers of people who can take these

5  depositions, and it's going to put us in a fire drill at the

6  end and, you know, some encouragement from the Court with some

7  teeth would be very helpful because Your Honor set a schedule

8  and said, you can start the depositions before January 19th if

9  you want, you don't have to but you can, and you left -- so,

10 basically, you left us three months to do all the depositions

11 and now we're being left with basically a month or a little

12 more than a month to do virtually every deposition that matters

13 and that's just not equitable.  And I raised this issue in the

14 context of ZHP previously but it's become -- it's now a

15 litigation-wide issue and it's not fair to the plaintiffs,

16 frankly, when all this time was given to do depositions which

17 was already -- when I say all this time, the time that was

18 given has now been whittled down by about a third -- to about a

19 third of what was actually given by the Court which could not

20 have been the intent.  It certainly wasn't our understanding

21 when the time was given that we would have to squeeze all the

22 important witnesses or virtually all of them into the last 30

23 days.

24         THE COURT:  Here's what I would like you to do, Mr.

25 Slater.  The Court is sympathetic to your position because the

1    parties have been on notice for umpteen months that depositions

2    were going to start on January 19th or 18th.  We didn't know, I

3    think, until the end of December that Judge Kugler was going to

4    set the outside date for the depositions but it was anticipated

5    that there would be regular and continuous depositions of all

6    parties, plaintiffs and defendants, starting on July 19th --

7    January 19th.

8          So here's what I have to say about that:  Between now

9    and January 13th you work with the defendants to move these

10   depositions up.  It's unacceptable to the Court that 90 percent

11   of the depositions start in March.  And if the defendants don't

12   agree to produce witnesses earlier than that, I'll order them

13   to be produced on January 13.

14         So, roll up your sleeves, all the parties; be

15   reasonable and professional.  It's unacceptable that we're

16   pushing all of these depositions back to the March and April

17   time period.  It's a short time period and there's no reason

18   whatsoever to delay the start of the depositions and leave a

19   gap between mid-January and March.

20         The Court is completely unsympathetic to the argument

21   that these document productions haven't been done yet.  They

22   should have been done already.  When we're dealing with Mylan,

23   we're talking about the documents that they represented to the

24   Court were nonresponsive, i.e., irrelevant; so they shouldn't

25   have any material effect on the depositions that are going

1    forward.

2            So I think I've made this Court's position clear and

3    leave it to the good graces of the parties to work this out;

4    and if they don't work it out, I'll start ordering depositions

5    to be taken in January and February.  We have to spread them

6    out in fairness to all the parties.  That doesn't just go for

7    the defendants' depositions; that goes for the plaintiffs'

8    depositions as well.  It's equally unfair to move all the

9    plaintiffs' depositions back to the end of the fact discovery

10   deadline, so I would assume the parties are working to spread

11   out the calendar.

12           So that's all I have to say about that issue.

13           MS. LOCKARD:  Your Honor, it's Victoria Lockard for

14   Teva and the defendants.

15           I just want to make the record clear on the issue

16   regarding the plaintiffs' depositions.  We have begun

17   scheduling those and, in fact, the very first plaintiff class

18   rep deposition has been noticed already for January 19th and

19   several others to follow.  So, there certainly are depositions

20   happening in January of the plaintiffs.  So I just want to make

21   sure that Your Honor is aware that the plaintiffs' depositions

22   are moving forward on the very first day.

23           THE COURT:  Well, that's good to hear.  I would

24   assume, hopefully, the same thing is going to happen with the

25   defendants' depositions as well, in fairness to all parties.

1            Why don't we then -- last issue, that I remember

2    anyway, is the ZHP depositions.

3            Mr. Goldberg, do you want to start?

4            MR. GOLDBERG:  Sure, Your Honor.  Thank you.

5            And let me just start by saying, Your Honor, that our

6    deposition schedule, the deposition schedule that we propose,

7    we proposed it back on December 8th because the Court ordered

8    us -- ordered defendants to do it by then.  We did it, we

9    presented it to the Court in two different filings, most

10   recently in Document Number 684.  And I wanted to, on the point

11   Your Honor was just covering --

12           THE COURT:  Can I just add one thing, Mr. Goldberg?

13   I'm sorry for interrupting.

14           Can I assume you're just referring to ZHP?

15           MR. GOLDBERG:  Well, I'm referring to the ZHP party

16   depositions.

17           THE COURT:  Yes.  You're only talking for ZHP and not

18   the other defendants.

19           MR. GOLDBERG:  Correct.  Correct, Your Honor.

20           THE COURT:  I'm obviously aware of the deposition

21   schedule issue with regard to ZHP, and there was a proposed

22   schedule that I remember was proposed either the day or the

23   morning of a conference call, but now it's been a couple of

24   weeks.  I understand that issue.  I want the record to be clear

25   that that wasn't the case with regard to all the defendants in

1    the case.  I'm not aware that any defendant other than ZHP has

2    proposed a specific deposition schedule as early as ZHP did.

3            So please continue.

4            MR. GOLDBERG:  Thank you, Your Honor.

5            And the reason I wanted to remind the Court of that,

6    there are a few reasons but, one, the Court should know that

7    ZHP has actually proposed depositions to begin in January.  We

8    are -- we -- under the schedule that we have proposed,

9    including the modifications we presented to the Court today, a

10   ZHP party witness will be deposed every week beginning the week

11   of January 19th.  So we have met the Court's expectation that

12   at least from ZHP's -- ZHP's standpoint, the depositions will

13   begin in January.

14           We -- we have -- have provided that schedule back in

15   December 8th because of the unique circumstances that ZHP is in

16   and the extraordinary measures ZHP is going through to

17   cooperate with the Court's schedule in producing witnesses that

18   will travel outside of China for depositions during COVID-19.

19   And so part of the reason for providing that schedule is to get

20   some certainty from those witnesses who are going to have to

21   quarantine for up to 28 days.

22           We argued during the last conference about the

23   schedule with respect to Mr. Du's deposition and the fact that

24   plaintiffs asked ZHP if some of the testing-related witnesses

25   could be moved up to earlier in March.  We have discussed

1    these -- those issues with our client over the holiday period

2    and we have provided to plaintiffs a new date for Mr. Du's

3    deposition.  We weren't able to move him up to before January

4    14th, as the Court requested, but we were able to move him up

5    an entire month, from March 18th to February 17th, and we've

6    made that proposal to plaintiffs today.

7              In addition, we propose, as plaintiffs requested,

8    flipping the dates of some of the witnesses in March so that

9    the testing, the quality assurance people, could be deposed

10   earlier than March and some of the regulatory and salespeople

11   could be deposed later in March.  One of the testing people we

12   found out can't be deposed until the very end of March because

13   his wife is expecting in late February, early March, and he

14   doesn't want to be out of the country on a 28-day quarantine

15   while his wife delivers.

16             Now, I think if Your Honor looked at the schedule

17   that we proposed, the fact that we proposed a deposition for a

18   ZHP witness in just about every week between January 19th and

19   April 1, that we moved Mr. Du's deposition up an entire month

20   from the date we proposed, that we flipped some of the dates of

21   our test witnesses so they're earlier in March, the fact that

22   we've made this proposal and it's been pending now for just

23   about a month without any reason that it should not have been

24   accepted that we think it's time now for the Court to approve

25   our schedule subject to the modifications today so that our

 1    client and the witnesses can start to prepare all of the

 2    logistical -- for all of the logistical issues that have to be

 3    resolved in order for them to travel in just a few months out

 4    of the country for the depositions.

 5            THE COURT:  Mr. Goldberg, can I ask a question?  I

 6    have your letter in front of me.  In the previous letter you

 7    had prepared a chart with the names of the witnesses and the

 8    dates of the depositions.  Is this a supplement to that chart,

 9    your letter?

10            MR. GOLDBERG:  Correct, Your Honor.  That chart, for

11    Your Honor's reference, is at -- it is at Document 684.  It was

12    Exhibit A to that document, on December 21st, and the letter

13    that I sent to Your Honor today proposes changes to that chart

14    for the specific witnesses we've identified in the letter

15    today.

16            THE COURT:  Okay.  And before I forget, I just want to

17    make one notation for the record.  It is true that there are a

18    number of depositions of ZHP in March; however, in ZHP's case,

19    it's the Court's finding that ZHP has established good cause

20    why it couldn't produce those witnesses earlier.

21            One, it's been represented to the Court that the

22    Chinese New Year is celebrated in the interim.  This Court has

23    no personal knowledge of how they celebrate the New Year in

24    China, but it's been represented that it has a significant

25    impact on the parties' schedule.

1          Two, the Court has said previously that ZHP is facing

2     enormous practical difficulties arranging for depositions,

3     travel, what have you.  The Court has not heard the same from

4     any other defendant.  So I think ZHP is in a unique position

5     and that accounts for why it might be appropriate in ZHP's

6     instance for an inordinate number of depositions to be held in

7     March instead of earlier.  But before the Court rules on a

8     schedule, the Court wants to hear from Mr. Slater.

9          MR. SLATER:  Thank you, Your Honor.  It's Adam Slater.

10          With all -- respectfully, it's premature to rule on

11    this, Your Honor.  You have already entered an order that said

12    that we were going to have until the 11th of January to talk

13    about scheduling.  Earlier in this call you said that you would

14    resolve these issues on the 13th if they can't be agreed to.

15    Counsel literally sent us a letter today -- I haven't even read

16    it.  I'm pulling it up on my screen of my computer as we're

17    talking right now -- and he wants Your Honor to order the

18    schedule before we even have a chance to go through it.  And

19    what I'm seeing here, I don't see any of the names of the

20    people that Your Honor ordered to be deposed at the last

21    conference a few weeks ago.  So we have to go through this and

22    talk to them.  They keep coming to Your Honor with schedules,

23    including one they sent at 11:00 today, and say order it.

24    It's -- it's the height of inequitable, unfair gamesmanship.

25    We'll work with them, we'll talk to them.  I understand your

1  ruling about the timing, Your Honor, but with all due respect

2  to ZHP, they could have produced witnesses before the new year.

3  They could have produced them in January and early February.

4  Instead, they pushed them all to the end.  So they have control

5  of this calendar in a way that's going to -- as you said, it's

6  inordinate, Your Honor's allowing them to do it but the idea

7  that Mr. Goldberg walks into this hearing and says, order our

8  schedule today, when we haven't even had a chance internally on

9  the plaintiffs' side to even look at it or talk about it and to

10 get back to them.  We're not trying to do anything like that to

11 them.  I don't understand why Mr. Goldberg keeps doing that.

12 It's not helpful and, frankly, it's an illustration of some of

13 the problems we've had.  When Your Honor asked a month or so

14 ago why are there so many issues with ZHP, that's because

15 things like this happen.  It's not -- it's not how we

16 reasonably work with one another.

17         Ultimately, we understand what your rulings are.  We

18 don't have a lot of input into this.  We understand we're going

19 to be severely jammed up, especially when they add the other

20 six or seven people in who they haven't even given dates for,

21 unless in my quick scan of the letter it was in there and I

22 missed it.

23         And the other thing we should also talk about is we

24 discussed this at the last hearing with Your Honor.  Your Honor

25 came up with a grand idea to resolve all these issues which we

1    were not happy with, and I was honest about that, but you gave

2    them an opportunity and said if you produce Jun Du in January,

3    I'm going to give you your schedule.  So what do they do?  They

4    don't give us Jun Du.  They -- instead, they moved a couple

5    witnesses.  We have to look and see where they moved them to,

6    are they overlapping, et cetera, and then they're producing Jun

7    Du in February.  So there's been a little bit of a change, it

8    sounds like.  Again, I haven't even had a chance to compare the

9    dates to see how different they are.  I haven't had a chance to

10   meet with our team and talk about it or to speak to the defense

11   once again about it.

12          So I -- we strongly object to any rulings being made

13   today when there's orders in place that say more time would be

14   provided; and when the defense is sending us a letter today and

15   saying please order it today, I don't think that would be

16   reasonable or fair to us.

17          THE COURT:  Consistent with --

18          MR. SLATER:  And I can tell you one other thing,

19   Judge.  They haven't -- they're not producing a witness every

20   week between now and March.  I'm looking right here at the

21   calendar right now.  There are weeks when no depositions are

22   scheduled.  So that was hyperbole.  It's not accurate.

23          THE COURT:  Consistent with the approach the Court has

24   taken throughout the case that it prefers not to rule on an

25   issue until the parties have exhausted their meet and confer

 1   obligations and requirements, the Court will address this issue

 2   on January 13, which will give plaintiffs and ZHP time to see

 3   if they can work out an agreement on this issue.  I certainly

 4   agree that if the schedule, if, I don't know, was first

 5   provided to the plaintiffs this afternoon or this morning,

 6   plaintiffs haven't had enough time to confer with their group

 7   about it.

 8        In addition, I don't know what the answer to this

 9   question is, but I would assume the final deposition schedule

10   for ZHP that the Court adopts and approves will include

11   proposed dates for the deponents that the Court granted

12   plaintiffs last conference call leave to depose.  Mr. Du, of

13   course, is in the unique category because the Court granted

14   plaintiffs -- I'm sorry, ZHP leave to file a motion for a

15   protective order, so the Court understands why his deposition

16   would be scheduled towards the end of the fact discovery

17   deadline; but we need dates for those witnesses and we need the

18   parties to meet and confer and see if they are at logger jams

19   on the proposed dates.  So the Court will address this issue,

20   as well as the proposed dates for the other depositions, on

21   January 13.

22        Are there any other issues that we should address

23   before we get to the subpoena issue?

24        MR. SLATER:  Your Honor, it's Adam Slater.  I just

25   want to correct one thing Your Honor said.  You just misspoke.

1    You said Jun Du.  I think you meant Mr. Boahua Chen, the one

2    where you said they could move for the protective order.  I

3    just wanted to clear that up for the transcript.

4            MR. GOLDBERG:  Your Honor --

5            THE COURT:  Mr. Slater is correct.  I meant to refer

6    to Mr. B. Chen.  That was the witness that the Court granted

7    ZHP leave to file a motion for a protective order on.

8            Mr. Goldberg, did you want to --

9            MR. GOLDBERG:  Your Honor, yes.  I did want to touch

10   base on --

11           THE COURT REPORTER:  Excuse me.  Who's speaking?

12           MR. GOLDBERG:  I'm sorry.  This is Seth Goldberg.

13           THE COURT REPORTER:  Thank you.

14           MR. GOLDBERG:  Your Honor may recall when we sent Your

15   Honor a letter, I think it was December 31st, about the

16   additional witnesses who are, all four of them, employees who

17   are not subject to the Court's subpoena power, and Your Honor

18   responded to that letter and directed the parties to the

19   decision Your Honor issued in *In Re:  Benicar* at 2016 Westlaw

20   5817262, which really confirmed our view that those employees

21   are not proper for deposition in this case.  And just as Your

22   Honor found as to the two witnesses in the *Benicar* decision,

23   while plaintiffs may have shown on a prima facie basis that

24   these witnesses have relevant information, they are not

25   witnesses who would be subject to a deposition notice, and

1    plaintiffs have not provided any -- have not provided a minimum

2    request granted by the Chinese government which is what they

3    would have to do to secure these depositions.

4         THE COURT:  Mr. Goldberg, hold on.  Let me just jump

5    in here.  Mr. Goldberg, you're correct.  I, I guess, forgot

6    about that letter.  You're absolutely correct about that

7    letter.

8         Mr. Slater, is there going to be a response to that

9    letter?

10         MR. SLATER:  Your Honor, I assume if they're seeking a

11   protective order that they would file a motion or if that's

12   their motion, then we'll oppose it and then it can be heard on

13   the 13th, if that's all they're submitting.  I assumed they

14   were going to file something, because we don't agree with them

15   at all.  We think that these witnesses reached a level to where

16   they can be deposed through this mechanism.  I mean, we're

17   going to have to talk.  There's factual issues.  Are they a,

18   quote, unquote, managing agent, which is a very broad term and

19   encompasses people that are not at a high level in the

20   companies.  You know, they very well -- there's certain of them

21   that we're very confident fall within that definition, there

22   might be a couple of close calls, but whatever it is, they need

23   to make a record and we need to oppose it because we don't

24   agree with them.

25         THE COURT:  Well, Mr. Goldberg, are you willing to sit

1    on the letter brief that you filed?

2         MR. GOLDBERG:  Well, Your Honor, we didn't file a

3    letter brief.  We're happy to brief the issue fully if Your

4    Honor would like that.  We wanted to draw your attention to the

5    issue because we had raised it in our original papers on this

6    and Your Honor did not rule on it.  But if Your Honor would

7    like to have briefing on this issue, we think it's appropriate,

8    we -- we will be happy to -- to provide that to the Court.

9         THE COURT:  Okay.  Well --

10        MR. GOLDBERG:  This is an important issue that needs

11   to be briefed.

12        THE COURT:  The letter brief that you filed,

13   Mr. Goldberg, was pretty fulsome but --

14        MR. GOLDBERG:  Well, Your Honor --

15        THE COURT:  Do you want to supplement that record,

16   Mr. Goldberg?

17        MR. GOLDBERG:  Yes, I believe so, because Your Honor

18   may recall in that briefing, we had only been provided with the

19   so-called evidence of these witnesses' relevance a day or two

20   before.  The documents had only been presented to the Court in

21   plaintiffs' filing.  We had not had a chance to evaluate these

22   issues fully.  And we had requested in that brief the

23   opportunity to brief these issues as well as the issue

24   regarding Mr. Chen.

25        THE COURT:  Mr. Chen we already decided, that's not

1  going to be re-briefed.  The record is clear enough on that

2  issue, as far as the Court ruled last time that plaintiffs have

3  made a prima facie case that he's relevant.  They're not just

4  seeking his knowledge in his position as an apex employee but

5  they're also seeking his knowledge about the multiple different

6  positions he had while he worked at the company.  So as far as

7  the Court is concerned, the Chen issue is decided.  If you

8  think the deposition record is developed in your favor,

9  Mr. Goldberg, you can file a motion for a protective order down

10  the road.

11        With regard to the four or five other individuals, we

12  don't need a motion, Mr. Goldberg.  When do you want to file a

13  supplemental letter brief on the issue?

14        MR. GOLDBERG:  Well, we'll have to develop some

15  factual record with our client and given the circumstances, I'm

16  dealing with a Chinese client, it may take a little bit of

17  time.  I'd say a week or two, if the Court would permit that.

18  Two weeks would be ideal.

19        THE COURT:  Two weeks it is.

20        Mr. Slater, how much time do you want to respond?

21        MR. SLATER:  I'm anticipating a massive brief.

22  Probably -- probably ten days.  I mean, I was thinking that

23  they were going to file something by tomorrow and we were going

24  to respond by, you know, later in the week.  But if they're

25  going to do a big -- you know, do this type of briefing, then

 1   we're going to need time because we don't know what's coming.

 2          I will say, though, Judge, when they say to you, we

 3   didn't know about these witnesses, and I'm paraphrasing, until

 4   we educated them about these witnesses, these are their

 5   employees.  They -- they're the ones who said we don't want to

 6   produce them.  Frankly, their time to make these motions or

 7   make these arguments was when we argued about whether they're

 8   going to be deposed, which we argued at the last hearing.  I'm

 9   not sure why they're now getting to move on a separate basis

10   when that was the time and that was the time to raise all

11   arguments.  So, frankly, we object to them doing any more

12   briefing.  We think that issue -- they've -- they've waived

13   that at this point because they already made all their

14   arguments.  It's a shame, this is going to get pushed now into

15   February, potentially, you know.  But, again, when they say

16   they needed us to educate them about who their employees are

17   and they have to now develop a factual record, weren't they

18   supposed to develop the factual record before they opposed the

19   depositions to begin with?  You know, I'm asking the question

20   as a rhetorical question.  I think the answer is yes, of course

21   they should have.

22          So now they're just pushing this out beyond when

23   you're going to be presiding over the issue to Judge Vanaskie

24   now because this is going to be until late January or February

25   when the issue really, from our perspective, already's been

1    ruled on.

2            THE COURT:  Okay.

3            MR. GOLDBERG:  Your Honor, this is --

4            THE COURT:  Mr. Goldberg, hold on.  I'm sorry.

5            JUDGE VANASKIE:  Sorry, Your Honor.  This is Tom

6    Vanaskie.  I just wanted the record to reflect that I have been

7    on the call from the beginning, so I can enter my appearance.

8            MR. SLATER:  Thank you, Judge.  I will never assume

9    you're not on the phone again.  I apologize for the assumption.

10           THE COURT REPORTER:  I'm sorry, Your Honor.  I'm not

11   sure who that was that was speaking.

12           MR. SLATER:  That was Adam Slater.  Sorry about that.

13           THE COURT:  Mr. Goldberg, you have two weeks from

14   today to file a supplement to your letter brief.  Mr. Slater,

15   you have -- plaintiffs have until the 29th to oppose it.  ZHP,

16   you have --

17           (Telephonic interruption.)

18           THE COURT:  ZHP has until February 5, Friday, to file

19   its reply.  Presumably the issue will be teed up for the

20   mid-February conference call.  In the meantime, ZHP is ordered

21   to give proposed tentative dates for these witnesses'

22   depositions, in the event the Court decides that the

23   depositions should go forward without the witnesses being

24   served.  The Court has already stated that it's going to deal

25   with the ZHP deposition schedule, as well as the deposition

1    schedule of the other defendants, on January 13.  If it turns

2    out that the depositions are not ordered, then they can be

3    taken off the schedule; but to make sure there's no lag or

4    undue delay, ZHP will be ordered to give proposed tentative

5    dates for these witnesses' depositions as well as Mr. Chen.

6          Anything else we need to discuss before we get to the

7    subpoena issue, counsel?

8          MR. STANOCH:  Your Honor, David Stanoch for

9    plaintiffs.  There is a potential issue regarding the documents

10   that the defendants are requesting via provided authorizations

11   by the consumer class representatives in the medical monitoring

12   and economic loss cases.

13         On December 22nd I reached out to counsel and said,

14   counsel, you know, you've been asking for all these

15   authorizations, we've been providing authorizations for months,

16   we have not received any documents yet in response.  Counsel

17   put me in contact with their records collections vendor and

18   then finally, just 30 minutes ago, Your Honor, the records

19   collection vendor tells me I should be receiving information on

20   credentials and pricing concerning the records.  I don't think

21   plaintiff should have to pay for the records in the class cases

22   that the defendants are requesting pursuant to the

23   authorizations.  These are not PI cases.  They're class cases.

24   If there's a class standalone case, the defendants would be

25   obligated to provide us with all the documents they obtain via

1    subpoena, authorization or otherwise, and this shouldn't be an

2    exception.

3         MS. LOCKARD:  Your Honor, Victoria Lockard here.  We

4    were not aware this issue was coming up today, but, yes, in

5    fact, you know, we have been working with our medical records

6    collector vendor, Marker, to collect these records.  We've been

7    working, I thought, well with plaintiff to get these

8    authorizations.  You know, I understand, we look back at Your

9    Honor's orders in *Benicar*, we understand this issue, there was

10   a battle over whether plaintiffs had to pay for their share of

11   the records and the Court ruled that the plaintiffs had to pay

12   for their share just as all of the defendants do.  And so we

13   have entered into a cost-sharing agreement among the

14   defendants.  Marker is administering that for us.  And all

15   plaintiffs have to do is go on Marker's website, download the

16   records, and they will be charged, you know, a portion of the

17   collection fee just like the defendants.  I don't know why --

18   you know, these records are going to be used by the parties.  I

19   don't know why plaintiffs would not have to pay for them if

20   defendants do.  They will be used by plaintiffs just as -- just

21   as well.

22        MR. STANOCH:  Your Honor, David Stanoch again.

23        Again, these are class plaintiffs.  We're not

24   affirmatively using these medical records.  In fact, Your Honor

25   will recall that I argued this December 2019 saying that we

1    believe medical records for class plaintiffs seeking out-of-

2    pocket losses is completely irrelevant.  And Your Honor

3    overruled that and said, just give them the authorizations and

4    let them get the records.

5              So it's not a case where I'm saying that my clients

6    had cancer and I would need the medical records myself to

7    substantiate that.  I'm not trying to do an end-run around

8    that.  We're talking here about records that they're requesting

9    in a class case that they're going to use at depositions which

10   are occurring in now a couple weeks, and I'm being told now

11   that I have to start paying for these records and I'm not going

12   to know what the records are and they haven't been Bates

13   labeled and they're going to surprise my witnesses at

14   depositions.

15             THE COURT:  Counsel, what I'd like you to do is I

16   would like, Mr. Stanoch, for you to talk with Ms. Lockard about

17   this issue.  I've heard references that the Court previously

18   ruled on this issue, that this issue has previously been

19   raised.  I'd like to see the record.  If you can't work it out,

20   include this issue in the letter briefs for the January 13 call

21   and the Court will decide it on that day.  But I think I would

22   like to see the record if it's being referred to before issuing

23   a ruling on the issue.

24             MR. STANOCH:  It's David Stanoch.

25             That's fine, Your Honor.  The record I was referring

1    to was December 2019 concerning whether class plaintiffs need

2    to provide authorizations for medical records, nothing about

3    costs, but we're happy to do that.  You know, I would ask, in

4    the meantime, that they treat -- that the defendants treat all

5    the records for our clients that they're getting as highly

6    confidential under the protective order because that's

7    something we don't have control of and we can't stamp it

8    without a paywall apparently.

9           THE COURT:  Well, if they're medical records, is there

10   any question that they're going to be confidential?

11          MS. LOCKARD:  No, Your Honor.  Those records will be

12   treated as confidential.  They will also be Bates labeled

13   before the deposition.  We don't -- you know, we don't intend

14   to surprise plaintiffs.  It's just our understanding that in

15   the typical course, they would get these records from the

16   vendor and pay for them.  But I appreciate the opportunity to

17   submit a letter brief on this because I have not had a

18   conversation with plaintiffs about this to date.  So this is

19   the first discussion we're really having.  We'll try to work it

20   out.  If we can't, we'll submit our letter briefs on the issue.

21          THE COURT:  All right.  Well, if you can't work it

22   out, we'll decide it on January 13.

23          Counsel, any other issues before we get to the

24   subpoena issue?

25          (No response.)

1          THE COURT:  Okay.  All right.  Here's my first

2    question with regard to the subpoena issue, and I think it's an

3    important one:  If I recall at the last conference, there was a

4    general understanding that Judge Kugler and the Court would be

5    sympathetic to a modification of the scheduling order in the

6    case so that all the energies, at least in the near future,

7    could be placed on the general causation issue that's going to

8    be teed up in the parties' *Daubert* motions.  I seem to recall,

9    and if I'm wrong, please correct me, that at the time there was

10   a discussion that if that was going to occur, then it may be

11   that some of these subpoena issues could be deferred based on

12   the new schedule.

13         So my question is, have the parties met and conferred

14   about the schedule that they're going to propose to the Court,

15   when will it be proposed to the Court, and what impact would or

16   should that new schedule have on the subpoena issue?

17         MR. GOLDBERG:  Thank you, Your Honor.  This is Seth

18   Goldberg.

19         The parties have conferred about the schedule and we

20   will be filing it today.  Both sides have signed off on it, we

21   just didn't get a chance to do it before the hearing today.

22         The schedule does envision that third-party discovery

23   would be pushed off to April 1, for the period between April 1

24   and August 1.  Whether it affects -- what's at issue today are

25   the document subpoenas that were issued to the third parties or

1  that plaintiffs propose to serve on third parties.  There are

2  no deposition subpoenas at issue.

3        THE COURT:  Okay.  So the discussion was that the

4  depositions of the third parties would be deferred until after

5  April 1, but was there any discussion about deferring the

6  document subpoenas while we focus on the general causation

7  issues?

8        MR. GOLDBERG:  No, there wasn't.  I think the parties

9  envisioned, and certainly plaintiffs can correct me if I'm

10  wrong, but I do think it's fair to say that the parties

11  envisioned the current issue about the document subpoenas would

12  be resolved now since the parties were briefing the issues.  If

13  documents are ordered to be produced, they can be produced; but

14  no depositions would occur of those third parties that are

15  subject to these subpoenas or any other third parties until

16  after -- after April 1.

17        THE COURT:  Let me hear from plaintiffs.

18        There are what, 60 or 70 subpoenas before the Court?

19  In your view, plaintiff, the document subpoenas, document

20  subpoenas, in your view, plaintiffs, is there a need to

21  immediately address all of those subpoenas or is it appropriate

22  to defer some of the less-important ones for a bit of time and

23  just focus on the most important subpoenas that are going to be

24  material to your general causation issue?

25        MS. GOLDENBERG:  Your Honor, this is Arlene Goldenberg

1   for the plaintiffs.

2        You know, I think that this issue is fully briefed

3   today and we'd love to get as much guidance from the Court as

4   possible.  And the reason for that is many of these entities

5   that are subject to these subpoenas have information that we

6   believe are relevant to general causation.  We'd love to get

7   these depositions of the parties done, taking these documents

8   into account once and not have to come back to the Court.  So I

9   think, in our view, the sooner we can get these all resolved,

10  the better off we'll all be.

11       THE COURT:  Well, one of the questions, Ms.

12  Goldenberg, that we talked about during our last call was, like

13  I said, there's 60 or 70 third-party subpoenas.  As a practical

14  matter, it's going to be difficult, if not impossible, to deal

15  with every one of those subpoenas during this call.

16       Are there subpoenas of a particular importance that

17  you want to focus on for this -- in the immediate near future,

18  or are you saying, Judge, all of them are equally important and

19  we want them all moved on tomorrow?

20       MS. GOLDENBERG:  You know, we certainly can triage

21  them, Your Honor.  I think that just in looking at the briefs,

22  you know, the defendants haven't raised specific issues with

23  regard to every single entity.  So while there are that many

24  issues in front of the Court, there aren't specific entity

25  issues that need to be ruled on as to every single one of the

1    70 subpoenas.

2         With that said, you know, I think if we did need to

3    direct the Court to a focus today, it's certainly any entity

4    that has testing results related to NDMA contamination or that

5    have information about cGMP compliance would be the most

6    helpful to get those moving now.

7         THE COURT:  Well, frankly, that's not a big help to

8    the Court.  So what I'm hearing from the plaintiffs is, let's

9    just deal with all the subpoenas at one time.  So tell me what,

10   plaintiffs, what is your suggestion for how we handle this?

11   The Court's prepared to rule with regard to the standing

12   issues.  The Court's prepared to rule on this hundred-mile

13   issue.  The Court's prepared to rule on the first look issue.

14   I don't think the record is sufficient enough for the Court to

15   rule on the service on the foreign defendants issue.  We

16   haven't heard from the defendants responding to plaintiffs'

17   submission.  There's a million and one relevancy issues to deal

18   with.  I suppose we can go through them one by one.  And then

19   you have the individual -- the individual depositions -- excuse

20   me, deposition subpoenas or the document subpoenas for ZHP,

21   Mylan, Aurobindo, the privilege issue with Aurobindo.  How do

22   you want to approach this, plaintiff?

23         MS. GOLDENBERG:  Sure, Your Honor, and I think,

24   actually, that was the way I was going to suggest we move

25   forward, too.  There are a number of overarching issues that

1  you just named; and if we can get your guidance on those, I

2  think that would actually take care of a number of them.

3      You know, I will note that the defendants have

4  objected to all of the subpoenas; but in order to object to a

5  subpoena, you actually have to make a specific objection other

6  than just stating the word "relevance" and moving on.  And in a

7  lot of cases, what I've done to break this down for Your Honor

8  is I've got a couple different categories of documents or of

9  entities that I think we can deal with in groups.

10      So there are six that we have agreed to withdraw and I

11  think you certainly have those, and those are listed in our

12  briefs.  There are then the domestic issues that only have the

13  general issues raised as to those that I think Your Honor has

14  just mentioned, and if we deal with those, our position is that

15  there aren't any specific relevance issues that need to be

16  dealt with on those because the defendants haven't raised them

17  properly in their briefing.

18      There are some domestic entities with specific

19  objections and I count one, two, three -- five of those only;

20  and then there are four entities that also only have general

21  disputes that can be dealt with in a group; and then there are

22  four additional foreign entities that have specific objections

23  that were raised as to them.

24      So really we're only dealing with nine entities where

25  the defendants went through and raised specific objections and

```
 1   I think those are the only objections that need to be ruled on

 2   in an entity-specific fashion.

 3        THE COURT:  Well, let me do this, counsel:  Let me

 4   give you the Court's rulings on the issues that I think the

 5   Court has a full record on and can address, and then let's see

 6   where that gets us.  Okay?

 7        So the first issue is standing.

 8        MR. HERROLD:  Your Honor, I -- I'm sorry.  This is

 9   Greg Herrold from Duane Morris on behalf of manufacturing

10   defendants.

11        I'm sorry to interrupt, Your Honor.  I just wanted to

12   make clear for the record that I wasn't sure if Your Honor was

13   aware of the reply brief that manufacturing defendants filed

14   yesterday afternoon or evening.  I just want to make that clear

15   on the record that there was a reply brief filed yesterday on

16   this topic.

17        THE COURT:  What time was it filed, counsel?

18        MR. HERROLD:  I believe it was around 6 p.m.

19        THE COURT:  Well, I can tell you --

20        MR. HERROLD:  My apologies if the --

21        THE COURT:  I can tell you the Court didn't see it,

22   the Court didn't read it.  It's been the practice in the case,

23   frankly, like Mr. Goldberg did this morning, to make sure the

24   Court sees a late submission, to email it to the Court.  I

25   apologize if I missed it, counsel, but I didn't see it.
```

1          MR. HERROLD:  I apologize, Your Honor.  I don't

2   believe a courtesy copy was emailed separately in addition to

3   the electronic notification.

4          THE COURT:  Be that as it may, here's the Court's

5   ruling on the standing issue, whether the defendants have

6   standing to object to the third-party subpoenas.

7          One, as to privilege and work product, the

8   defendants, they definitely have standing to object to the

9   subpoenas on that ground.

10          Two, the Court finds that, yes, the defendants do

11  have standing to object on the grounds that the subpoenas

12  exceed the scope of the Court's discovery orders in the case,

13  mainly the Macro Discovery Order.

14          Three, the defendants do not have standing to object

15  on the ground of burden.  That's an objection that must be

16  asserted by the recipient of the subpoena.

17          Four, yes, the defendants do have grounds to object

18  on the grounds of proportionality.

19          Five, yes, the defendants do have grounds to object on

20  the grounds of relevancy.  I know there's a dispute amongst

21  that.  The Court cites to the *Costantino* decision where the

22  Court previously ruled on that issue, 2015 Westlaw 12806490, at

23  *3, District of New Jersey, November 4, 2015.

24          And six, no, the defendants do not have standing to

25  object on privacy grounds.

1          Issue Number 2, did the defendants violate the notice

2     requirements?  That objection is overruled and that objection

3     is denied.  The Court agrees with the plaintiffs that

4     sufficient notice was given to the defendants so they had an

5     opportunity to object to the subpoenas.  That's why we're here.

6     The Court has previously ruled that if any documents are

7     produced, they should be kept secretive until the Court rules.

8     So that objection is overruled.

9          Three, the defendants' objection to the first look

10    argument, the first look request, is denied.  That doesn't mean

11    that the plaintiffs can look at privileged and work product

12    documents.  That issue will have to be resolved before the

13    subpoenas are responded to.

14         On the geographic limit issue, the Court overrules

15    defendants' objections.  The plaintiffs are just asking for the

16    recipients to mail; and, in any event, the defendants have no

17    standing to object on that basis since that's an objection that

18    the recipients of the subpoenas have to serve -- have to

19    assert.

20         With regard to the service on the foreign defendants

21    issue and whether these defendants have control over the

22    foreign defendants, it's the Court 's finding that the record

23    is not sufficient for the Court to rule on the issue.

24    Defendants, I assume you want to respond to that argument?  Is

25    that what's in the reply brief?

1          MR. HERROLD:  This is Greg Herrold from Duane Morris.

2          Yes, Your Honor, the reply brief did have a response

3    to the issue dealing with possession, custody and -- purported

4    possession, custody and control over foreign subpoenaed

5    entities that was raised in plaintiffs' opposition.

6          THE COURT:  This is what I'm going to do:  I'm going

7    to look at those papers before January 13.  If I feel

8    comfortable that I have my arms around the issue by January 13,

9    I'll rule on it.  If, more than likely, the Court feels that it

10   doesn't have its arms around the issue and is not comfortable

11   with the present record, it'll just defer the issue to be

12   decided by my successor.

13         So, Ms. Goldenberg, where does that leave us?

14         MS. GOLDENBERG:  I think that's very helpful, Your

15   Honor.

16         Just before we move on from this point, on the foreign

17   defendants service of process issue, we understand your ruling

18   and that makes sense to us.  I will paraphrase the defendants'

19   argument and they can tell you if they think I got it wrong,

20   but my understanding of what they're saying in their reply

21   brief is that we need to affirmatively produce to them

22   contracts that they have with these foreign entities showing

23   that they have access to the documents.  And my response to

24   that is, we only have what they give us.  So if they chose not

25   to produce those contracts, then they're putting us in an

1    impossible position of having to prove a negative.  I would

2    assert that if they really want to take that position, they

3    should have to give us a contract showing that they don't have

4    access to the documents.  Otherwise, there's really no way for

5    us to have a true understanding of what level of control they

6    did have over these entities.

7         We were able to cite to four contracts that we did

8    find and, of course, we're still digging through the large

9    mountain of documents that were produced to us at the eleventh

10   hour according to the production schedule.  But, you know, if

11   we really are going to have a meaningful conversation about

12   that, we need them to give us some documents and give us a

13   reason for why they can't get these to us.

14        THE COURT:  Well, I'll take a look at the record, Ms.

15   Goldenberg, and, like I said, I'll let you know if I feel

16   comfortable that the record is sufficient and whether it's ripe

17   for a decision on January 13.  My instinct, without looking at

18   the documents, is that this Court will feel uncomfortable

19   deciding such an important issue without a fulsome record; but

20   I really can't give a definitive decision until I look at that

21   reply brief.  So --

22        MS. GOLDENBERG:  Understood, Your Honor.  I just

23   wanted to make sure you had that if you decided to look back on

24   the issue.

25        THE COURT:  Yes, that's a pretty important issue with

1    important implications for the case; so I want to make sure

2    that the record is sufficiently developed for the Court to

3    address it.

4           MR. HERROLD:  Your Honor, this is Greg Herrold from

5    Duane Morris.

6           Defendants are perfectly comfortable relying on the

7    reply brief we filed.  I would just like to offer a brief

8    response to what Ms. Goldenberg just said and stress that if it

9    is plaintiffs who are asserting that defendants have

10   possession, custody and control over these third-party,

11   nonparty documents, then it is plaintiffs' burden to establish

12   that.  It is not defendants' burden to provide plaintiffs with

13   every possible document that they could use to establish that.

14          And, furthermore, plaintiffs are in possession of the

15   defendants' document productions in response to Rule 34 now.

16   So as they continue to review them, I'm sure that they can have

17   their eye out for any possible documents that would potentially

18   help them make their argument that defendants have possession,

19   custody and control.

20          THE COURT:  You know, if you remember, going back to

21   the very, very beginning of this case, when we were talking

22   about the production of core discovery, we had the issue --

23   granted, it's not identical because here we're dealing with

24   third parties, but the issue that we were faced with early on

25   in the case with core discovery is whether the named defendants

1    in this case had to produce the documents of their subsidiaries

2    overseas, and what I had urged the Court -- what I had urged

3    the parties to do is to weigh the pros and cons of not

4    producing the documents even without an admission that there's

5    control.

6         At the end of the day, if I recall correctly, and I

7    don't remember which party it was, there was only one defendant

8    who did not agree to produce the documents of its foreign

9    subsidiary, and I specifically recall saying that I was very,

10   very reluctant to do it but the Court's hand was forced that it

11   had to give plaintiffs leave to take discovery on the issue

12   whether the defendant had control over its foreign subsidiary.

13   And I had urged the defendant to evaluate its position because

14   if it wound up losing that issue, there were really important

15   implications for it.  And at the end of the day, even though we

16   had to go through several conferences, if you remember, that

17   defendant finally agreed to produce the documents of its

18   subsidiary probably because it weighed the risks of an adverse

19   ruling if the Court found it had control over its foreign

20   subsidiary's documents.

21        Now, here we have a totally -- not totally, but here

22   we have a different situation because we're dealing with third

23   parties.  But, ultimately, the Court's going to have to decide

24   if a defendant has control over a foreign third party's

25   documents.  The implications of that ruling are pretty

1    important.  So if the defendants want that issue to be teed up,

2    fine, no problem, we'll tee it up.  But I just wonder if after

3    this phone call the defendants want to rethink their position

4    about whether they'll produce these documents without

5    prejudice.  They have the right to object on the grounds that

6    they don't have control over a foreign third party's documents.

7    So that's all I have to say about the issue.

8         You'll know on January 13 if the Court feels

9    comfortable that the record's sufficiently developed on this

10   issue.  My guess is no but I don't know until I read the reply

11   brief.  And then if the Court feels comfortable, I'll rule.  If

12   not, I'll just leave the issue for my successor.

13        So, Ms. Goldenberg, let's get back to the question I

14   asked.  In light of the Court's rulings, where does that leave

15   us?

16        MS. GOLDENBERG:  Yes, Your Honor.  I think those

17   rulings were very helpful and I was just reviewing my notes on

18   what you had said.

19        So my understanding, based on your rulings, is that

20   defendants are left with objections to privilege and work

21   product, proportionality and relevancy, and they had an

22   opportunity to raise those as to specific entities in their

23   briefing and they only did that as to nine, between the

24   domestic and the foreign entities.  And so what I'm hoping for

25   is a ruling now that we can say that as to those specific

1   issues on specific entities, if they weren't raised in the

2   briefing, then the opportunity to do that is gone, and now

3   we're only dealing with nine specific entities.

4          THE COURT:  Let me see if I have the nine entities.

5   Hold on, Ms. Goldenberg.  Two, four, six, seven.  When we deal

6   with ZHP, I might be pronouncing this wrong, is it Azbil,

7   A-Z-B-I-L, Bagmo, B-A-G-M-O, Linhai, L-I-N-H-A-I, and VXL?  Is

8   that ZHP?

9          MS. GOLDENBERG:  I think you got it right.  I have

10   them grouped a little bit differently in my notes, but if

11   you're reading in order on their brief, then that's accurate.

12          THE COURT:  As to -- I'm sorry.

13          MS. GOLDENBERG:  I apologize.  Go ahead, Your Honor.

14          THE COURT:  I was reading from Page 23 of defendant's

15   brief.

16          MS. GOLDENBERG:  Got it.  And we did withdraw a

17   couple, Your Honor.  So I'll just read for the record the

18   subpoenas that we've withdrawn.  CABB AG, Shiva Pharmachem,

19   Tiefenbacher, T-I-E-F-E-N-B-A-C-H-E-R, API, the fourth one is

20   Malvern Instruments, Number 5 is Amsal Chemicals, and Number 6

21   is Frederick Ball, and that's the ZHP subpoena that we resolved

22   with counsel prior to this motion being briefed.

23          So the entities that remain as to ZHP, you mentioned

24   Azbil, and I believe that domestically for ZHP that's the only

25   one.  And then there are foreign entities, I assume that your

1    prior rulings were for (telephonic interruption) domestic

2    entities today, knowing that you are going to wait on the

3    foreign entities.  Is that accurate?

4              THE COURT:  Someone buzzed in while you were speaking,

5    Ms. Goldenberg.

6              MS. GOLDENBERG:  I apologize.  You know what?  And I

7    think I misspoke, so that interruption was fortuitous.

8              So, yeah, VXL Life Sciences is a foreign entity with

9    specific objections that ZHP raised, and then we have Azbil as

10   before, and Amsal Chemical Company.

11             THE COURT:  Amsal Chemical Group India?

12             MS. GOLDENBERG:  Yes, them too.

13             THE COURT:  So just to be clear, I only have four ZHP

14   deposition subpoenas that are still at issue.  Is that right?

15             MS. GOLDENBERG:  Document subpoenas, yeah, I believe

16   that's accurate.

17             THE COURT:  Right, we're only talking about document

18   subpoenas.

19             For Aurobindo, they're the company that objected on

20   work product privilege, correct?

21             MS. GOLDENBERG:  Correct.

22             THE COURT:  There's Meridian Consulting and ToxRox

23   Consulting, right?

24             MS. GOLDENBERG:  Yep.

25             THE COURT:  And then from Mylan we have Amsal Chemical

1    Pvt.; is that right?

2           MS. GOLDENBERG:  I'm not going to correct your

3    pronunciation.

4           THE COURT:  That's the Brooklyn coming out in me, Ms.

5    Goldenberg.

6           MS. GOLDENBERG:  You know what, Your Honor, I

7    apologize.  We withdrew Amsal.

8           THE COURT:  Okay.  So Mylan is out.  So now I only

9    have two, four, six.  What are the other ones at issue?

10           MS. GOLDENBERG:  I have Chemo Group India, which we

11    talked about, Linhai Huanan Chemicals, which is another ZHP,

12    ProPharma Group, which is one we haven't talked about.

13           THE COURT:  Is that also ZHP?

14           MS. GOLDENBERG:  I believe that is, yes.

15           THE COURT:  ProPharma?  ProPharma?

16           MS. GOLDENBERG:  Yep, that's P-R-O-P-H-A-R-M-A.

17           THE COURT:  Okay.  So that's -- what else?  So now I

18    have two, four, five, six, seven at issue, and I think you said

19    there's nine?

20           MS. GOLDENBERG:  Yes, but let me go over the domestic

21    ones.  So, domestically, as you mentioned, we have Meridian and

22    ToxRox that are Aurobindo entities; we have Stericycle where

23    the defendants objected just to the breadth of the subpoena; we

24    have --

25           THE COURT:  Hold on.  I didn't get that last one.

1    What was the last one you mentioned?

2            MS. GOLDENBERG:  Stericycle.

3            THE COURT:  How do you spell that?

4            MS. GOLDENBERG:  S-T-E-R-I-C-Y-C-L-E.

5            THE COURT:  And what defendant is that directed

6    towards?

7            MS. GOLDENBERG:  They handled issues for a number of

8    defendants, I believe.  Let's see.  They are in -- they're

9    listed on Page 27 of the defendants' brief.  And, yes, they're

10   a recall provider and consultant.  And I believe they're under

11   the ZHP heading.

12           THE COURT:  Okay.  So now I have seven; six for ZHP --

13   well, actually, one, two, three, four, five -- I have eight;

14   six for ZHP and two for Aurobindo.

15           MS. GOLDENBERG:  Well, let's do this, Your Honor.  If

16   you don't mind, can we start with the two Aurobindo ones and

17   move on to the rest afterwards, and I think we'll be able to

18   square up which ones you don't have?

19           THE COURT:  Okay.  I think that's a good idea.

20           The issue with regard to Aurobindo is, as I

21   understand, that is whether these documents are protected by

22   work product and attorney-client because they were prepared in

23   connection with responding to the FDA's 483; is that correct?

24           MS. GOLDENBERG:  Yes, Your Honor.

25           THE COURT:  Aurobindo, it's your burden of proof.  Do

1  you want to argue on this issue?

2        MS. HEINZ:  Yes, Your Honor.  Hi, this is Jessica

3  Heinz for the Aurobindo defendants.

4        So we actually included an argument in reply that was

5  filed yesterday evening.  I apologize to the Court as well for

6  that late filing.  But, basically, what we put in our reply was

7  to clarify that, you know, this -- the plaintiffs are a little

8  misguided in their argument.  The documents were prepared by --

9  or prepared with a consultant who assisted legal counsel for

10  Aurobindo, outside counsel, in giving Aurobindo advice on how

11  to respond to an FDA warning letter, and the case law -- there

12  is case law to support that, you know, documents in the

13  possession of a consultant that assists outside counsel are

14  covered by the work product doctrine and are also protected by

15  the attorney-client privilege, even though they're in the

16  possession of a third party.

17        We had asked -- to address this, we had proposed, you

18  know, just being able to review the documents before they are

19  produced to plaintiffs' counsel and prepare any necessary

20  privilege log and address it that way.  We thought that was a

21  reasonable approach.  I don't know if the plaintiffs have

22  responded to that.  I don't know if they -- I think they're

23  just, you know, asking that they be able to have the documents

24  right out.

25        We have also suggested, if the Court, you know, is not

1    -- doesn't agree that the subpoenas should be quashed because,

2    obviously, we believe that they should be quashed based on

3    these two protections, that, you know, if -- if we -- if the

4    Court isn't inclined to give us, you know, the opportunity to

5    review them and prepare the necessary privilege log, we would

6    ask that the Court grant us an *in camera* review.

7            THE COURT:  Ms. Goldenberg, do you want to respond?

8            MS. GOLDENBERG:  Yes, Your Honor.

9            Our understanding of the role that these two entities

10   had was that they were -- they were retained for the sole

11   purpose of responding to an FDA 483 letter, which is a routine

12   matter that Aurobindo would have had to do whether or not this

13   MDL ever came to be.

14           And so, you know, we also have seen Hetero, who also

15   works with Meridian, has already volunteered to produce

16   documents on their behalf.

17           And so the first argument about whether or not the

18   subpoena should be quashed, I think this just underscores the

19   relevancy of these documents and these entities to this

20   litigation, but to the extent that there's a privilege or a

21   work product claim, you know, this all would have happened

22   regardless of whether or not we were here, and I think that

23   that's the brightest line that we can draw.  So, you know, we

24   don't have documents yet from them but the documents that we've

25   seen show that these have relevant information about how the

1    FDA -- or how the responses to the 483 letters were handled,

2    what testing was done, and if Aurobindo is going to stand today

3    and say that these are their experts for litigation here, you

4    know, I think that's a different story and we would agree to

5    allow them to do a privilege review.  But based on what we

6    know, which is just that they were hired for the mere purpose

7    of responding to the FDA, outside of anything that happens in

8    this courtroom, it doesn't sound like those objections are

9    valid.

10           THE COURT:  Here's what the Court's going to do,

11    counsel:  I would prefer not to rule on the issue until I read

12    Aurobindo's response.  I'm very, very familiar with the law in

13    this area.  I have written numerous opinions dealing with the

14    exact issue before the Court.  One of the opinions the Court --

15    comes to the Court's mind is the *Riddell* concussion litigation

16    opinion.  Ms. Heinz is correct that documents prepared by a

17    consultant could be privileged or work product.  However, the

18    more important issue, as far as the Court's concerned, is what

19    is the primary purpose the documents were prepared.

20           With regard to work product, I think that's a

21    relatively easy issue.  Was the primary purpose of the

22    preparation of the documents a business purpose responding to

23    the FDA or preparing for litigation?

24           With regard to the attorney-client issue, I'll just

25    have to look at the briefs and the supporting documents to

1    decide.  The issue whether legal advice as opposed to business

2    advice is what's being imported.  We know, of course, that

3    business advice is not protected by the attorney-client

4    privilege.

5         So the bottom line is the Court's very familiar with

6    the law in this area; it has written on this on numerous

7    occasions.  I'll read the briefs and you'll get a ruling on

8    this issue by no later than January 13.

9         So then we're left with the six ZHP subpoenas.  Is it

10   six?  I think so.

11        MS. GOLDENBERG:  I think that's --

12        THE COURT:  What is the issue with regard to these six

13   subpoenas?  Do we have to go through each one individually.

14        MS. GOLDENBERG:  You know, we may because they've

15   raised specific objections as to each one, but I think they're

16   pretty quick.  And I can also point you to the page on our

17   brief where we address them and I think we can dispense with

18   them pretty quickly, if that's all right with Your Honor.

19        THE COURT:  All right.  Let's go one by one.

20        MS. GOLDENBERG:  All right.  Well, if we start

21   alphabetically, we get Azbil, and they are discussed at Page 11

22   of our brief, and I think the dispute here is that ZHP takes

23   the position that their audit was done for the purpose of

24   certifying compliance with European union regulations and we

25   had discussed this at a hearing I want to say about a month

1  ago, Your Honor, where you had ruled that any audit that shows

2  testing results that are relevant to the facility that made

3  US-grade valsartan was still relevant and that that would be

4  the appropriate determination or interpretation of your Macro

5  Discovery Order.  And what Azbil did was they came in and they

6  did an audit on June 13 and 14 of 2017 where they looked at not

7  just strictly EMA compliance but they looked at all of these

8  processes and procedures that are also relevant to cGMP

9  compliance in the United States and they inspected the very

10  factory that makes US-grade valsartan.  So even if the endpoint

11  wasn't a U.S. agency, the issues being discussed and inspected

12  are the very same issues that caused the problem in the

13  valsartan that made its way to the United States consumers.

14          THE COURT:  Let's hear from ZHP.

15          MR. HERROLD:  Thank you, Your Honor.  This is Greg

16  Herrold.

17          I would just like to reiterate that ZHP did detail its

18  objection in both its moving brief and the reply brief to the

19  ZHP-related entities.

20          With regard to Azbil specifically, Azbil is a Spanish

21  company that conducted an audit on behalf of a Spanish client

22  of ZHP for the purpose of European regulatory affairs.  The

23  European and the foreign regulatory reports are expressly off

24  limit by the Macro Discovery Order.  And, furthermore, it

25  appears that if plaintiffs have effected service on Azbil, they

1    have appeared to serve the incorrect entity because it's

2    defendants' understanding that plaintiffs have not served any

3    foreign entities; however, it was represented that Azbil may

4    have produced responses or objections.  Defendants have not

5    been provided with a copy of those responses or objections.

6    However, this is emblematic of the fact that plaintiffs seem

7    to, you know, indiscriminately send subpoenas to subsidiaries

8    or -- or entities that are purportedly related to the entities

9    they're actually looking for actually related to the valsartan

10    and the issues at hand in the matter of the case without regard

11    to making sure that they have the correct entities and do their

12    homework to ensure that they are actually relevant to the case.

13         So it's our position that the appropriate entity that

14    would be served in this is a Spanish foreign entity.  If

15    plaintiffs are representing that they have served that entity,

16    then that's another argument.  However, to the extent they have

17    not served it and they are requesting that ZHP accept service

18    on Azbil's behalf and then produce documents on Azbil's behalf,

19    then that would mirror the arguments in the foreign entity

20    reply brief that we spoke of earlier and plaintiffs have not

21    demonstrated that defendants have any responsibility or

22    obligation to accept service or respond to the subpoenas on

23    behalf of these foreign entities.

24         THE COURT:  Well, with regard to the world issue,

25    counsel, you're correct that that issue is not going to be

1  decided on this phone call.  I understood Ms. Goldenberg's

2  argument to be as follows, and if I'm wrong, she will let me

3  know.  And I didn't hear you respond to this argument.

4           I understood the argument to be that there was an

5  inspection of a facility or factory that made valsartan that

6  was sold in the United States.  Is that correct?

7           MS. GOLDENBERG:  If you're asking me, Your Honor, yes.

8           THE COURT:  Yes, I know, that was your argument.  I'm

9  asking ZHP.

10          MR. HERROLD:  This is Greg Herrold.

11          Well, yes.  A company called Azbil Telstar

12  Technologies SLU did conduct an audit of its Chuannan facility

13  in June 2017, that's correct.

14          THE COURT:  Okay.  So the Court's ruling is plaintiffs

15  have established the relevancy of this subpoena.  The Court is

16  not deciding whether the ZHP defendant in this case has such

17  control over that entity that ZHP has to produce the documents.

18  If there's an issue about service, that's an issue that Azbil

19  has to assert, not ZHP.  But as to the relevancy of the

20  information, based on the Court's prior rulings on the case,

21  and its knowledge of the issues in the case, plaintiffs are

22  certainly requesting relevant information because it goes to

23  the conditions in the factory that made the valsartan that was

24  sold in the United States which has been and is a paramount

25  issue in this case.

1          Next.

2          MS. GOLDENBERG:  Thank you, Your Honor.

3          And I'll just mention, too, just to clear the record

4    on this, we have not received documents from them, but we have

5    been in touch with their counsel and they -- and have had one

6    meet and confer thus far.  My understanding is that if we are

7    going to get documents, it would be from them directly; but if

8    they tell us that that's not true, then we can address that

9    issue in subsequent briefing on the foreign entities.

10          Now, with that, Chemo Group India is the next one.

11    This is another ZHP entity and, hence, judging by the name you

12    can see that this is a foreign entity so we'll only deal with

13    the arguments substantively made as to them.

14          Our position, again, it appears on Pages 11 and 12 of

15    our brief, and our understanding is that they performed testing

16    on valsartan API for ZHP, and we are happy to confine our

17    requests to information relating to that testing but believe

18    that it is relevant and should be produced.

19          THE COURT:  Is it testing on the valsartan API that

20    was sold in the United States?

21          MS. GOLDENBERG:  That is my understanding.

22          THE COURT:  So why is there any objection to the

23    relevance of this document subpoena?  ZHP?

24          MR. HERROLD:  Greg Herrold, Your Honor.

25          Well, if -- if plaintiffs are willing to tailor their

1    request of this Chemo Group subpoena to only the subject matter

2    that they just expressed, then -- then that is -- that is

3    actually welcome news to ZHP.  The reason that ZHP objected,

4    and the reason they objected to all of these subpoenas, quite

5    frankly, is the vast overbreadth.  And plaintiffs, in their

6    opposition brief, claim that the subpoena directed to Chemo

7    Group India only seeks materials related to testing performed

8    for valsartan API through ZHP.  And if you actually look at the

9    subpoena that was produced to ZHP, that's just not true.  There

10   is ten or 11, the same requests in every other subpoena that

11   was sent out.  So ZHP objected to the wholly irrelevant and

12   overbroad categories and requests that were included in the --

13   in the Chemo Group's subpoena as the other ones.

14           So if plaintiffs are willing to narrowly tailor the

15   subpoena, then defendants can agree to discuss that and have

16   another conversation with them.

17           THE COURT:  Great.  So the Court's ruling is this:

18   That plaintiffs' subpoena directed to Chemo Group India is

19   permitted as to the request for testing on ZHP's valsartan API

20   and that is going to be the only subject of the document

21   subpoena that plaintiffs serve.

22           Next issue.

23           MS. GOLDENBERG:  The next one is Linhai Huanan

24   Chemical Company Limited.  This is addressed, Your Honor, at

25   Page 12 of our brief, and it's our understanding that this

1    company supplied product to many of the defendants that were

2    ultimately used in the manufacture of valsartan.  And, again,

3    we're only seeking materials relating to valsartan or

4    potentially to losartan and irbesartan, so we don't have to go

5    back to them later on when discovery continues as to the other

6    sartan drugs, but because this is a wholly owned subsidiary of

7    ZHP, it's our reading of the Court's prior rulings and, you

8    know, agreements that were reached between counsel that ZHP

9    should be producing documents as to this entity without the

10   need to brief the issue on the foreign parties like we will

11   later for the rest of them.

12          THE COURT:  Well, let's deal with two issues.  One is

13   the relevancy issue and one is the service issue.

14          As to relevancy, I think you said that this company

15   supplied materials to the defendant.  What defendants?  What

16   materials are you talking about?

17          MS. GOLDENBERG:  So our understanding, and we had

18   limited documents as to this entity at the beginning, and we're

19   happy to meet and confer with ZHP to narrow the scope of this,

20   but I believe that it's solvents and other starting materials

21   that were, you know, used in the process that created NDMA in

22   the drug.  The relevant defendants are Prinston, Solco, Mylan,

23   Aurobindo and Teva.

24          THE COURT:  Is it material used in the finished dose

25   or the API?

1          MS. GOLDENBERG:  I believe that it's in the API, yes.

2          THE COURT:  So are you looking for the material that

3    this company supplied by the defendants that was used to make

4    their API --

5          MS. GOLDENBERG:  Correct.

6          THE COURT:  -- the valsartan API?

7          And putting aside -- let's put aside the service issue

8    for the moment, ZHP, if the subpoena is so limited, any

9    objection?

10          MR. HERROLD:  Greg Herrold, Your Honor.

11          I -- ZHP takes issue with the representation that the

12    starting ingredient specifically supplied by Linhai or any

13    starting ingredient in general is, quote, unquote, extremely

14    material or whatever phrase Ms. Goldenberg used.  Starting

15    ingredients have little to no impact on the actual chemical

16    reaction that could allegedly cause the impurities in

17    valsartan.  Without -- without divulging internal conversations

18    with consulting chemists or clients, the scientific opinion

19    that ZHP has looked at on that topic is pretty clear.  So ZHP

20    would -- would object that even if Linhai did provide a

21    starting ingredient that that's still not relevant to the issue

22    in the case, which is the alleged impurities within the

23    valsartan API or the valsartan.

24          That being said, it's difficult to -- it's difficult

25    to say whether or not there would be an objection because the

1  subpoena, as it is now, is so overbroad that it would almost

2  have to be a total -- it would have to be 95 percent of it

3  crossed out to become relevant.

4          So, in theory, if plaintiffs were willing to limit

5  expressly to a testing material and the testing material that

6  conforms to the four corners of the Macro order and to which

7  they are entitled, which is testing and results regarding

8  mycosamine contamination of the valsartan or valsartan API or

9  other carcinogens, general toxic impurities or residual

10 solvents in the valsartan API and valsartan, then it would be

11 relevant.  Quite frankly, it's difficult to determine at this

12 time whether or not that would even be -- the starting

13 ingredients would even be relevant or comply with the Macro

14 Discovery Order.  So we would reserve our right to object

15 pursuant to seeing what kind of narrowly tailored subpoena and

16 revision plaintiffs were willing to provide.

17         THE COURT:  This is the issue before the Court:  The

18 Court understands plaintiffs' request to be for documents

19 related, regarding, what have you, materials that Linhai

20 supplied that were used in the valsartan API manufactured by

21 the defendants.  Do you object to that request?  That's the

22 only issue the Court's dealing with.

23         MR. HERROLD:  No, Your Honor.  That's -- that's --

24 that's perfectly acceptable.  There would be no objection to

25 that.  And I -- I would just state for the record --

1        THE COURT:  What is --

2        MR. HERROLD:  If I may, Your Honor, I would just state

3   for the record that --

4        THE COURT:  Excuse me, counsel.  I'm talking.

5        MR. HERROLD:  My apologies, Your Honor.

6        THE COURT:  What is your position on the service

7   issue?  Plaintiffs' request is asking for ZHP to produce these

8   documents.  What is your position?

9        MR. HERROLD:  Greg Herrold.

10        Your Honor, ZHP's position is that we would object to

11   ZHP producing Linhai's documents.  As laid out in our reply

12   brief, Linhai is a foreign company.  In order for -- in order

13   for ZHP to accept service of the subpoena and produce documents

14   on behalf of Linhai, ZHP would need to be authorized by Linhai

15   to do so.  ZHP has not been authorized to do so.

16        Furthermore, plaintiffs have not produced any evidence

17   that ZHP has possession, custody or control over the documents.

18   I'm happy to get into the argument that's in the possession,

19   custody at this time, Your Honor, but in deference to your

20   request to defer that to another day, the short answer is, yes,

21   ZHP would object to producing the documents on behalf of

22   Linhai.

23        THE COURT:  Okay.  The Court's ruling is, for

24   relevancy purposes, plaintiffs are permitted to request

25   documents from Linhai regarding materials used in the valsartan

1   API manufactured for the defendants.

2          As to the service issue, again, the Court is going to

3   look at that issue and will let you know by January 13 whether

4   it believes it has sufficient information to make a ruling and

5   if it's comfortable making a ruling on that issue or if it's

6   going to defer decision on that issue.

7          Next, Ms. Goldenberg.

8          MS. GOLDENBERG:  Next, Your Honor, is VXL Life

9   Sciences.  And this is addressed on Page 12 of our brief.  It's

10  my understanding that this entity helped ZHP develop

11  chromatography testing, which, of course, goes to the core

12  issues in this case.  And we would simply like to know how that

13  testing was set up, what endpoints were looked for and, you

14  know, I -- this seems to fall pretty squarely within the Macro

15  Discover Order, so I guess I'll just be interested to hear why

16  defendants are objecting to this one.

17         THE COURT:  So you want documents regarding

18  chromatography testing that was developed on what have you for

19  ZHP?

20         MS. GOLDENBERG:  Yes, so how the tests were developed,

21  what the testing protocols were, and whether there are actual

22  test results that are in their possession.

23         THE COURT:  ZHP, it seems to the Court it's hard to

24  argue that this material is not relevant but what's your

25  objection?

1          MR. HERROLD:  Greg Herrold.

2          Well, Your Honor, again, ZHP objected to this subpoena

3     because a subpoena to VXL had the same 45 to 50 requests as

4     every other subpoena.  So during October, November ZHP had

5     these discussions through four or five meet and confers with

6     plaintiff counsel and attempted to do what plaintiff counsel is

7     doing right now, which is appropriately narrow the scope of the

8     subpoena to comply with the Macro Discovery Order.

9          If plaintiffs are now willing to tailor those requests

10    to comply with the testing that is permitted under the Macro

11    Discovery Order, then, of course, plaintiffs -- or ZHP does not

12    object to discovery that is within the Macro Discovery Order.

13         THE COURT:  Okay.  The Court's ruling is plaintiffs'

14    request for chromatography testing documents related to ZHP are

15    relevant and that will be the subject of plaintiffs' subpoena.

16         Next, Ms. Goldenberg.

17         MR. HERROLD:  Your Honor, if I may, briefly?

18         THE COURT:  Yes.

19         MR. HERROLD:  Very briefly.  I believe for most of

20    these, and I just want to reiterate for the record, VXL will

21    have -- it's an Indian entity so it will have the same service

22    issues regardless of the relevancy determination.  I just

23    wanted to reiterate that point.  Thank you.

24         THE COURT:  There's been no service issue raised

25    before the Court so I'm not addressing it.

1          Next issue, Ms. Goldenberg.

2          MS. GOLDENBERG:  The next two, Your Honor, are

3    Stericycle and Return Logistics Corporation.  These entities

4    both -- I think, you know, maybe we're going to resolve this

5    one quickly based upon what I've heard defense counsel say.

6          You know, these are vendors who helped with the

7    recalls and we are interested in the role that they played in

8    the recall, how they went about doing it, who they contacted,

9    what draft of notices went out or were exchanged before they

10   went out to the public and how the recall was executed, and I

11   think that's it.  But I understand they also -- they also spoke

12   to patients and have hotlines, and so to the extent there are

13   any communications that might be classified as adverse event

14   reports or, you know, later on, any communications that might

15   have taken place with the bellwether plaintiffs, which we can

16   deal with later, we're interested in that as well.

17         THE COURT:  Okay.  I understood the request for

18   documents regarding the valsartan recall for the defendants.

19   What else is it you're asking for?

20         MS. GOLDENBERG:  And you're right, Your Honor, I

21   probably should clarify it.

22         So as to the recall, what we're interested in is how

23   the recall was carried out, what -- what types of PR statements

24   or notices were drafted, we would like draft and final reports

25   that went out to physicians, third-party payers or patients,

1    we're interested in any press releases that were put out, to

2    the extent that was done by these entities, and then, I think I

3    said this, but just how the recall was generally carried out.

4         THE COURT:  I thought you talked about if there's any

5    communications with the plaintiffs?

6         MS. GOLDENBERG:  So the second part of that was our

7    understanding is that they also had hotlines that patients

8    could call in on.  To the extent any adverse event reports were

9    received through those hotlines, we would be interested in that

10   information as well.

11        And, you know, I guess we haven't picked bellwether

12   plaintiffs yet.  If we had, later we would be interested to

13   know if any of the bellwether plaintiffs had communicated with

14   that entity; but I think in the absence of that information for

15   today, we'll just have to settle for the adverse event

16   information, generally.

17        THE COURT:  So what I'm hearing, ZHP, is, one, the

18   Court sustains an objection to draft documents.  We're only

19   talking about final documents.

20        Plaintiff wants from these companies documents

21   regarding the recall, how it was carried out, et cetera, and

22   any called-in adverse event reports regarding valsartan.  Is

23   there an objection to those documents?

24        MR. HERROLD:  Greg Herrold.

25        No, Your Honor, there's no objection to those

1    documents.  Obviously, the same overbreadth objection to every

2    other topic included in the subpoena that's currently

3    constituted remains.

4            THE COURT:  So the subpoena is approved only as to

5    these documents.

6            Ms. Goldenberg, are there any other companies we need

7    to deal with?

8            MS. GOLDENBERG:  I think we got all of them.  I'm just

9    going through my notes one more time, Your Honor, to make sure

10   I haven't missed anything.

11           There was a brief mention in the defendants' brief

12   about ProPharma Group and so we -- I guess it's debatable as to

13   whether or not there were really specific objections raised to

14   them, but they note on Page 27 that this entity is a

15   pharmacovigilance consultant that was retained by them to

16   assist with regulatory matters.  I'm having difficulty

17   understanding why this one isn't relevant as long as we are

18   seeking documents that relate to, you know, the regulatory

19   consulting they did as to valsartan that was sent to the United

20   States; but, hopefully with that limitation, we shouldn't have

21   a dispute.

22           THE COURT:  Defendant ZHP, is there a dispute

23   regarding ProPharma?

24           MR. HERROLD:  Greg Herrold.

25           Your Honor, I'm sorry, if Ms. Goldenberg expressed it,

1    I missed it.  Have plaintiffs articulated precisely what

2    they're looking for in the ProPharma subpoena rather than the,

3    you know, myriad of requests that are currently in there?

4          MS. GOLDENBERG:  I believe we just did, but I'm happy

5    to put it out there again.

6          So our understanding is that this is a

7    pharmacovigilance consultant that you guys -- that ZHP retained

8    to help with regulatory matters and I think that pretty well

9    captures what we're looking for.  So any documents that were

10   generated in that process are, I think, a fair way to define

11   the scope of this.

12         THE COURT:  I'm sorry, Ms. Goldenberg, I apologize,

13   can you just, again, summarize what it is you're looking for?

14         MS. GOLDENBERG:  Yes.  We are looking for any

15   documents that ProPharma produced relating to the consulting

16   work that they did for ZHP on regulatory matters relating to

17   the valsartan recall in the United States.

18         THE COURT:  Okay.  ZHP, any objection?

19         MR. HERROLD:  Greg Herrold.

20         In theory, no, Your Honor.  I'm just -- I'm looking at

21   the ProPharma subpoena now.  I'm just struggling to find a

22   category that that -- what Ms. Goldenberg articulated neatly

23   fits into.  I think if she can point me to one, I'm happy to.

24   I don't want to waste the Court's time going line by line

25   through the subpoena, but before we agree, I just want to -- I

```
 1   want to narrow it down a little bit.
 2          THE COURT:  Well, let's just say for the sake of
 3   argument the Court approves a document subpoena to ProPharma
 4   for documents relating to consultant matters for ZHP regarding
 5   its recall in the United States and that's what the document
 6   subpoena will be limited to.
 7          Any other issues, Ms. Goldenberg?
 8          MS. GOLDENBERG:  Thankfully, Your Honor, no.
 9          THE COURT:  Why would you say thankfully?  Isn't this
10   a joyful experience?
11          MS. GOLDENBERG:  I thought you were getting sick of me
12   by now.
13          THE COURT:  Hardly.
14          Does that take care of -- I know the Court deferred
15   ruling on certain issues regarding the subpoenas and some of
16   which will be decided by January 13, if not before then, and
17   there may be issues that are deferred for a decision after
18   January 13, but are there any other issues regarding the
19   subpoenas that we should address during this call?
20          MS. GOLDENBERG:  I don't believe so, Your Honor.  None
21   from plaintiff.
22          MR. HERROLD:  Your Honor, Greg Herrold.
23          I'm sorry, Your Honor.  I need to -- none come to my
24   mind right now.  However, I would like to open the floor to any
25   other manufacturing defendants who may have seen something that
```

1    I missed or should be addressed now.

2            THE COURT:  I think that's perfectly appropriate.

3            Are there any other defendants --

4            MR. STOY:  Good afternoon, Your Honor.  This is Frank

5    Stoy on behalf of the Mylan defendants and the defense group.

6            I just wanted to raise one additional issue, Your

7    Honor, and I apologize if this was already covered earlier in

8    the proceedings today, but it was my understanding, and the

9    defendants', based on the brief that the defendants filed, that

10   there were broad Macro issues that were also raised with

11   respect to all of the plaintiffs' subpoenas as being overbroad

12   and in violation of the Court's previous Macro Discovery Orders

13   and that the specific entities that were just discussed by

14   counsel and the Court were those where there were objections to

15   relevance grounds that had to do with particular entities.  So

16   I just wanted to make certain that the overall Macro issues

17   were also being placed before the Court or at least make a

18   record that that was also raised by the defendants.

19           THE COURT:  Well, if there are issues, counsel, I

20   would like you to raise them so if it's appropriate for the

21   Court to address them, it will.  That's why we're here.  So if

22   someone wants to --

23           MR. GOLDBERG:  Your Honor?

24           THE COURT:  Let's hear it.

25           MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

1          I think what the issue is, and it's really exemplified

2     by what just happened with those entities related to ZHP, is

3     that plaintiff served virtually identical subpoenas on all of

4     these third parties that contained 45 to 55 of the same

5     requests.  They're all in -- in -- covering about 11 different

6     categories.  And what defendants have said to plaintiffs since

7     October is that you need to narrow each of the subpoenas to

8     reflect the business of the entity you're serving and the

9     relationship of that entity to this action.  And a good

10    example, although it's been withdrawn, is that plaintiffs tried

11    to subpoena Duane Morris, and in the subpoena to the Duane

12    Morris lawyer who worked on this case, all of the 11 categories

13    about manufacturing that were served on Azbil or ProPharma were

14    also served on Duane Morris.  And it shows the broad-brush

15    approach that plaintiffs took.  And what we have asked for in

16    both our moving papers and in our reply is for the Court to

17    order plaintiffs to narrowly tailor each subpoena to the

18    business relationship between the third party and the facts at

19    issue in this case so that if a manufacturer of a starter

20    ingredient has nothing to do with, say, sales and pricing that

21    that section of the subpoena should be excised and plaintiffs'

22    subpoena should be narrowly focused.

23          To this point, plaintiffs have largely refused to do

24    this kind of narrowing.  And this is the first time, as to the

25    entities that we've discussed today, that Ms. Goldenberg or any

1    other plaintiffs' counsel has been willing to so narrow the

2    subpoenas.  And this could have been done back in October and

3    November and we could have avoided a lot of this process.

4          And so what we would request is that Your Honor order

5    plaintiffs, for those subpoenas that, you know, have not been

6    discussed today, that Your Honor order plaintiffs to narrow the

7    requests in the same way that they have done so with respect to

8    ZHP and these six or seven entities we discussed by focusing in

9    on what the third party does and how what it does relates to

10   the specific facts at issue and to meet and confer with

11   defendants in good faith to do that and not to stonewall

12   defendants and say we have -- we've served the subpoena, it has

13   11 categories and 45 requests and that's the subpoena and you

14   have no standing to object to it.

15         MS. GOLDENBERG:  Your Honor, if I may.

16         THE COURT:  Yes, let's hear from you, Ms. Goldenberg.

17         MS. GOLDENBERG:  Sure.  Well, I think Mr. Goldberg's

18   example of us withdrawing subpoenas is good evidence that we

19   are willing to narrow the subpoenas whenever we can.  You know,

20   we certainly have a lot of documents to review and we don't

21   want to spend time on things that aren't relevant.  So I can

22   tell you that, you know, when we have had meet and confers with

23   the parties, including Duane Morris, we have narrowed the

24   subpoenas once we have had a better understanding of what the

25   role of each entity was.  I don't think there's any order

1    required, we're already doing it, and we only want the relevant

2    documents.  But, you know, during the meet and confers with ZHP

3    and with other entities, they would ask us each time to produce

4    the document that forms the basis for us seeking third-party

5    discovery but they didn't ever give us anything back to tell us

6    why we should narrow it or even whether our documents would

7    encompass the entire scope of the work that these companies

8    did.  So just knowing that we had to serve these subpoenas when

9    we were missing 80 percent of the documents the defendants were

10    later going to dump on us, we had no choice but to serve broad

11    subpoenas, but, of course, we're narrowing them down.  And as

12    you've seen from the hearing today, we're, of course, going to

13    be reasonable and have no plans on changing that course in the

14    future.

15            THE COURT:  Here's what I think we should do, counsel:

16    I think we've made tremendous progress during this phone call.

17    We've ruled on a number of issues.  We're going to request the

18    transcript be prepared as soon as possible.  So some but not

19    all of the subpoenas have been resolved today.

20            I do think the parties should go back and, you know,

21    sharpen their pencils, as the Court has said, and talk about

22    these issues and the Court's rulings with regard to the

23    remaining subpoenas and if there's any other issues or

24    disputes, you should raise them for the end of January

25    conference call.  I believe the date is January 27 but I'm not

1  a hundred percent sure.  I don't think it's ripe and I don't

2  think we have sufficient time for all of these issues to be

3  teed up by the call next week on the 13th.

4         So I do think it's sufficient and fair to give the

5  parties an opportunity to talk about these issues, especially

6  since I haven't heard from the plaintiffs except some general

7  reference that these third-party subpoenas are important.  I

8  believe I had requested during the last conference if there are

9  any subpoenas that we should put on the top of the heap and

10  deal with right away, let's identify them and deal with them.

11  I haven't heard that so it doesn't prepare -- it doesn't seem

12  like there's any imminency to get these rulings.  And why don't

13  you take the time, in light of what was discussed today, in

14  light of plaintiffs' willingness to narrow their deposition

15  subpoenas to the crux of what they're looking for, to give you

16  an opportunity to meet and confer, and if there's any other

17  disputes remaining, and I hope there aren't, you can tee them

18  up for the conference at the end of the month.  Okay.

19         MS. GOLDENBERG:  Your Honor, this is Marlene

20  Goldenberg again.  I just wanted to respond briefly to that and

21  note that I appreciate the Court's position that you want us to

22  sharpen our pencils and we have every intention of continuing

23  to narrow these to the relevant issues that you saw on the call

24  today and that we have been doing with the third parties.

25         With that said, though, we've -- the Court took the

1    painstaking time to put together a briefing schedule on these

2    issues and told the defendants this is your chance to raise

3    issues and they are, once again, it seems like this is a theme

4    today, coming back to the Court and saying we want a second

5    bite at the apple.  If they had specific issues as to entities

6    that they wanted to raise, this was their chance.  And they

7    raised them as to some of the entities, proving that they

8    understood your ruling and that they could, and the fact that

9    they didn't raise them as to other entities, I mean, if we keep

10   doing this process over and over and over again, this is going

11   to get dragged out forever.  Our understanding, going into this

12   hearing today, was this was it.

13            MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

14            THE COURT:  Can I jump in, Mr. Goldberg?

15            MR. GOLDBERG:  Yes.

16            THE COURT:  Ms. Goldenberg, I'm not unsympathetic to

17   your argument.  However, as I stated at the outset of this

18   call, we were dealing with, I don't know, 65, 70, 75 subpoenas.

19   That's an incredible amount of work to address during one phone

20   call.  I think we have made tremendous progress on this phone

21   call and have given direction to the parties about what the

22   Court expects, and the Court is very appreciative of plaintiffs

23   rolling up its sleeves during this conference call and just

24   focusing on the crux of what they really and genuinely need

25   because it's apparent when that interest is expressed that

1    there's no legitimate objection to it.  I would hope that those

2    discussions can continue off the record so they don't need to

3    consume time during these conference calls with the Court.

4         So I do think it's appropriate that the parties take

5    the time with regard to the specific subpoenas that weren't

6    discussed today, based on the Court's guidance, to meet and

7    confer to resolve their issues.  I don't know about you,

8    Ms. Goldenberg, you may be disappointed in the progress during

9    this call but I'm very pleased because I think we are starting

10   to get to the crux of the issues; and as is always the case

11   when the parties confer in good faith, like they have in this

12   phone call, there seems to be a resolution and that's what I

13   hope happens by the end of the month.  If it doesn't happen,

14   all disputes will be decided.  So I think that's how the Court

15   feels.

16        Mr. Goldberg, I interrupted you.  Is there anything

17   else you wanted to say?

18        MR. GOLDBERG:  No, Your Honor.  That captures it.

19   Thank you.

20        THE COURT:  All right.  For the good of the order,

21   counsel, we started this conference call with the non-subpoena

22   issues.  I think we exhausted that.  We've spent a bulk of the

23   time during this call dealing with the subpoena issues.  We

24   dealt with some generic issues and some specific issues.  You

25   have guidance going forward.  The Court identified the issues

1    that it will let you know if they are ripe for a decision on
2    the 13th or going to be deferred.
3              Are there any other issues we need to address during
4    this call?
5              MR. SLATER:  I don't think so for the plaintiffs there
6    are.  If anybody has anything.
7              (No response.)
8              THE COURT:  Defendants, any issues you'd like to
9    raise?
10             MR. GOLDBERG:  Nothing from defendants, Your Honor.
11             THE COURT:  All right.  I want to the thank the court
12   reporter for hanging in through this difficult phone call.  I
13   did send an email to Ms. Eckert asking if we could have this
14   transcript as soon as possible because I'd like to see it to
15   make sure that I get the order right, and if there are any
16   issues to decide by the 13th that are ripe for decision, I'd
17   like to do that.  And you can be assured, defendants, that the
18   first thing I'm going to do after this phone call is get access
19   to your reply brief which I acknowledge I didn't see or read
20   before this call.
21             So thank you very much, counsel.  I hope you continue
22   to stay safe.  We're adjourned.
23             (The proceedings concluded at 5:30 p.m.)
24             - - - - - - - - - - - - - - - - -
25

1          I certify that the foregoing is a correct transcript

2     from the record of proceedings in the above-entitled matter.

3

4

5     /S/ Camille Pedano, CCR, CRR, CRC, RPR
      Court Reporter/Transcriber
6     01/07/2020
         Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Camden, New Jersey*

## /

/S [1] - 75:5

## 0

**01/07/2020** [1] - 75:6
**07068** [1] - 1:15
**08101** [1] - 1:8

## 1

**1** [6] - 14:19, 30:23, 30:24, 31:5, 31:16
**103** [1] - 1:14
**11** [6] - 50:21, 54:14, 55:10, 68:5, 68:12, 69:13
**11:00** [1] - 16:23
**11th** [1] - 16:12
**12** [3] - 54:14, 55:25, 60:9
**12806490** [1] - 36:22
**13** [15] - 10:13, 19:2, 19:21, 26:1, 28:20, 29:22, 38:7, 38:8, 39:17, 42:8, 50:8, 51:6, 60:3, 66:16, 66:18
**13th** [6] - 10:9, 16:14, 21:13, 71:3, 74:2, 74:16
**14** [1] - 51:6
**14th** [1] - 14:4
**15219** [1] - 2:12
**16** [1] - 7:1
**17th** [2] - 2:7, 14:5
**1835** [1] - 1:18
**18th** [2] - 10:2, 14:5
**19-2875** [1] - 3:9
**19-md-02875-RBK-JS** [1] - 1:4
**19103** [2] - 1:18, 2:8
**19422** [1] - 2:20
**19th** [7] - 9:8, 10:2, 10:6, 10:7, 11:18, 13:11, 14:18

## 2

**2** [1] - 37:1
**2015** [2] - 36:22, 36:23
**2016** [1] - 20:19
**2017** [2] - 51:6, 53:13
**2019** [2] - 27:25, 29:1
**2021** [1] - 1:9
**2150** [1] - 2:3
**21st** [1] - 15:12
**22nd** [1] - 26:13
**23** [1] - 43:14
**2500** [1] - 2:15
**27** [3] - 46:9, 64:14,

70:25
**28** [1] - 13:21
**28-day** [1] - 14:14
**2900** [1] - 1:18
**29th** [1] - 25:15

## 3

**3** [1] - 36:23
**30** [3] - 2:7, 9:22, 26:18
**30(b)(6** [2] - 6:5, 8:4
**30-day** [1] - 5:7
**30305** [1] - 2:16
**31st** [1] - 20:15
**3333** [1] - 2:15
**34** [1] - 40:15
**38th** [1] - 2:12
**3:30** [2] - 1:9, 3:2
**3:30(b)(6** [1] - 5:23

## 4

**4** [2] - 7:1, 36:23
**45** [3] - 61:3, 68:4, 69:13
**450** [1] - 2:19
**483** [3] - 46:23, 48:11, 49:1
**4th** [1] - 1:8

## 5

**5** [3] - 1:9, 25:18, 43:20
**50** [1] - 61:3
**55** [1] - 68:4
**55402** [1] - 2:4
**5817262** [1] - 20:20
**5:30** [1] - 74:23

## 6

**6** [2] - 35:18, 43:20
**60** [2] - 31:18, 32:13
**609-774-1494** [1] - 1:24
**65** [1] - 72:18
**684** [2] - 12:10, 15:11

## 7

**70** [4] - 31:18, 32:13, 33:1, 72:18
**701** [1] - 1:21
**70130** [1] - 1:21
**75** [1] - 72:18

## 8

**80** [1] - 70:9
**800** [1] - 2:3
**8th** [2] - 12:7, 13:15

## 9

**9** [1] - 7:1
**90** [3] - 8:18, 10:10
**95** [1] - 58:2

## A

**able** [6] - 14:3, 14:4, 39:7, 46:17, 47:18, 47:23
**above-entitled** [1] - 75:2
**absence** [1] - 63:14
**absolutely** [1] - 21:6
**accept** [3] - 52:17, 52:22, 59:13
**acceptable** [1] - 58:24
**accepted** [1] - 14:24
**access** [3] - 38:23, 39:4, 74:18
**accommodating** [1] - 3:4
**according** [1] - 39:10
**account** [1] - 32:8
**accounts** [1] - 16:5
**accurate** [4] - 18:22, 43:11, 44:3, 44:16
**acknowledge** [1] - 74:19
**Actavis** [2] - 2:17, 2:17
**action** [1] - 68:9
**ACTION** [1] - 1:3
**actual** [2] - 57:15, 60:21
**Adam** [5] - 3:18, 5:11, 16:9, 19:24, 25:12
**ADAM** [1] - 1:14
**add** [2] - 12:12, 17:19
**addition** [3] - 14:7, 19:8, 36:2
**additional** [5] - 7:2, 8:7, 20:16, 34:22, 67:6
**address** [17] - 4:14, 4:17, 4:18, 19:1, 19:19, 19:22, 31:21, 35:5, 40:3, 47:17, 47:20, 50:17, 54:8, 66:19, 67:21, 72:19, 74:3
**addressed** [3] - 55:24, 60:9, 67:1
**addressing** [2] - 6:22, 61:25
**adjourned** [1] - 74:22
**administering** [1] - 27:14
**admission** [1] - 41:4
**adopts** [1] - 19:10

**adverse** [5] - 41:18, 62:13, 63:8, 63:15, 63:22
**advice** [4] - 47:10, 50:1, 50:2, 50:3
**affairs** [1] - 51:22
**affects** [1] - 30:24
**affirmatively** [2] - 27:24, 38:21
**afternoon** [14] - 3:3, 3:18, 3:20, 3:22, 4:1, 4:3, 4:6, 4:8, 4:12, 4:14, 4:24, 19:5, 35:14, 67:4
**afterwards** [1] - 46:17
**AG** [1] - 43:18
**agency** [1] - 51:11
**agent** [1] - 21:18
**ago** [4] - 16:21, 17:14, 26:18, 51:1
**agree** [6] - 6:7, 10:12, 19:4, 21:14, 21:24, 41:8, 48:1, 49:4, 55:15, 65:25
**agreed** [3] - 16:14, 34:10, 41:17
**agreement** [4] - 4:23, 5:14, 19:3, 27:13
**agreements** [1] - 56:8
**agrees** [1] - 37:3
**ahead** [1] - 43:13
**aided** [1] - 1:25
**ALFANO** [1] - 2:10
**alleged** [1] - 57:22
**allegedly** [1] - 57:16
**allow** [1] - 49:5
**allowing** [1] - 17:6
**almost** [1] - 58:1
**alphabetically** [1] - 50:21
**already's** [1] - 24:25
**AmerisourceBergen** [1] - 4:9
**amount** [1] - 72:19
**Amsal** [5] - 43:20, 44:10, 44:11, 44:25, 45:7
**AND** [1] - 1:6
**announce** [1] - 3:13
**answer** [3] - 19:8, 24:20, 59:20
**anticipated** [1] - 10:4
**anticipating** [1] - 23:21
**anyway** [1] - 12:2
**apex** [1] - 23:4
**API** [14] - 43:19, 54:16, 54:19, 55:8, 55:19, 56:25, 57:1, 57:4, 57:6, 57:23, 58:8,

58:10, 58:20, 60:1
**apologies** [3] - 6:21, 35:20, 59:5
**apologize** [9] - 25:9, 35:25, 36:1, 43:13, 44:6, 45:7, 47:5, 65:12, 67:7
**apparent** [1] - 72:25
**appearance** [6] - 3:10, 3:11, 3:17, 3:25, 4:11, 25:7
**appeared** [1] - 52:1
**apple** [1] - 72:5
**application** [2] - 7:16, 8:6
**apply** [1] - 7:23
**appointed** [1] - 5:23
**appreciate** [3] - 3:7, 29:16, 71:21
**appreciative** [1] - 72:22
**approach** [4] - 18:23, 33:22, 47:21, 68:15
**appropriate** [8] - 16:5, 22:7, 31:21, 51:4, 52:13, 67:2, 67:20, 73:4
**appropriately** [1] - 61:7
**approve** [1] - 14:24
**approved** [1] - 64:4
**approves** [2] - 19:10, 66:3
**April** [6] - 10:16, 14:19, 30:23, 31:5, 31:16
**area** [2] - 49:13, 50:6
**argue** [2] - 47:1, 60:24
**argued** [4] - 13:22, 24:7, 24:8, 27:25
**ARGUMENT** [1] - 1:6
**argument** [17] - 7:6, 10:20, 37:10, 37:24, 38:19, 40:18, 47:4, 47:8, 48:17, 52:16, 53:2, 53:3, 53:4, 53:8, 59:18, 66:3, 72:17
**arguments** [5] - 24:7, 24:11, 24:14, 52:19, 54:13
**Arlene** [1] - 31:25
**arms** [2] - 38:8, 38:10
**arranging** [1] - 16:2
**articulated** [2] - 65:1, 65:22
**aside** [3] - 4:19, 57:7
**assert** [3] - 37:19, 39:2, 53:19
**asserted** [1] - 36:16

*asserting* [1] - 40:9
*assist* [1] - 64:16
*assisted* [1] - 47:9
*assists* [1] - 47:13
*assume* [8] - 11:10, 11:24, 12:14, 19:9, 21:10, 25:8, 37:24, 43:25
*assumed* [1] - 21:13
*assumption* [1] - 25:9
*assurance* [1] - 14:9
*assured* [2] - 6:4, 74:17
*Atlanta* [1] - 2:16
*attempted* [1] - 61:6
*attention* [1] - 22:4
*attorney* [4] - 46:22, 47:15, 49:24, 50:3
*attorney-client* [4] - 46:22, 47:15, 49:24, 50:3
*audit* [5] - 50:23, 51:1, 51:6, 51:21, 53:12
*August* [1] - 30:24
*Aurobindo* [15] - 2:21, 33:21, 44:19, 45:22, 46:14, 46:16, 46:20, 46:25, 47:3, 47:10, 48:12, 49:2, 56:23
*Aurobindo's* [1] - 49:12
*Aurolife* [1] - 2:20
*authorization* [1] - 27:1
*authorizations* [7] - 26:10, 26:15, 26:23, 27:8, 28:3, 29:2
*authorized* [2] - 59:14, 59:15
*available* [1] - 8:25
*Avenue* [1] - 2:3
*avoided* [1] - 69:3
*aware* [5] - 11:21, 12:20, 13:1, 27:4, 35:13
*Azbil* [12] - 43:6, 43:24, 44:9, 50:21, 51:5, 51:20, 51:25, 52:3, 53:11, 53:18, 68:13
*AZBIL* [1] - 43:7
*Azbil's* [2] - 52:18

**B**

*Bagmo* [1] - 43:7
*BAGMO* [1] - 43:7
*balancing* [1] - 8:1
*Ball* [1] - 43:21
*base* [1] - 20:10
*based* [8] - 30:11,

42:19, 48:2, 49:5, 53:20, 62:5, 67:9, 73:6
*basis* [5] - 7:22, 20:23, 24:9, 37:17, 70:4
*Bates* [2] - 28:12, 29:12
*battle* [1] - 27:10
*become* [2] - 9:14, 58:3
*begin* [3] - 13:7, 13:13, 24:19
*beginning* [4] - 13:10, 25:7, 40:21, 56:18
*begun* [1] - 11:16
*behalf* [12] - 3:23, 4:2, 4:4, 35:9, 48:16, 51:21, 52:18, 52:23, 59:14, 59:21, 67:5
*believes* [3] - 7:25, 8:6, 60:4
*Bell* [1] - 2:20
*bellwether* [3] - 62:15, 63:11, 63:13
*benefit* [1] - 3:12
*Benicar* [3] - 20:19, 20:22, 27:9
*better* [2] - 32:10, 69:24
*between* [8] - 10:8, 10:19, 14:18, 18:20, 30:23, 42:23, 56:8, 68:18
*beyond* [1] - 24:22
*big* [2] - 23:25, 33:7
*bit* [6] - 3:6, 18:7, 23:16, 31:22, 43:10, 66:1
*bite* [1] - 72:5
*Blue* [1] - 2:20
*Boahua* [1] - 20:1
*BOSICK* [1] - 2:10
*bottom* [1] - 50:5
*breadth* [1] - 45:23
*break* [1] - 34:7
*brief* [8] - 22:1, 22:3, 22:12, 22:22, 22:23, 23:13, 23:21, 25:14, 29:17, 35:13, 35:15, 37:25, 38:2, 38:21, 39:21, 40:7, 42:11, 43:11, 43:15, 46:9, 50:17, 50:22, 51:18, 52:20, 54:15, 55:6, 55:25, 56:10, 59:12, 60:9, 64:11, 67:9, 74:19
*briefed* [4] - 22:11, 23:1, 32:2, 43:22
*briefing* [11] - 5:3,

22:7, 22:18, 23:25, 24:12, 31:12, 34:17, 42:23, 43:2, 54:9, 72:1
*briefly* [4] - 6:22, 61:17, 61:19, 71:20
*briefs* [6] - 28:20, 29:20, 32:21, 34:12, 49:25, 50:7
*brightest* [1] - 48:23
*bring* [1] - 4:21
*broad* [4] - 21:18, 67:10, 68:14, 70:10
*broad-brush* [1] - 68:14
*Brooklyn* [1] - 45:4
*brush* [1] - 68:14
*Building* [1] - 1:7
*bulk* [1] - 73:22
*burden* [4] - 36:15, 40:11, 40:12, 46:25
*business* [5] - 49:22, 50:1, 50:3, 68:8, 68:18
*buzzed* [1] - 44:4
*BY* [8] - 1:14, 1:17, 1:20, 2:3, 2:6, 2:11, 2:14, 2:19

**C**

*CABB* [1] - 43:18
*calendar* [3] - 11:11, 17:5, 18:21
*called-in* [1] - 63:22
*Camden* [1] - 1:8
*camera* [1] - 48:6
*Camille* [2] - 1:23, 75:5
*camillepedano@ gmail.com* [1] - 1:23
*Camp* [1] - 1:21
*cancer* [1] - 28:6
*captures* [2] - 65:9, 73:18
*carcinogens* [1] - 58:9
*care* [3] - 8:9, 34:2, 66:14
*carried* [3] - 62:23, 63:3, 63:21
*case* [32] - 7:17, 7:20, 8:1, 12:25, 13:1, 15:18, 18:24, 20:21, 23:3, 26:24, 28:5, 28:9, 30:6, 35:22, 36:12, 40:1, 40:21, 40:25, 41:1, 47:11, 47:12, 52:10, 52:12, 53:16, 53:20, 53:21, 53:25, 57:22, 60:12, 68:12, 68:19, 73:10

*cases* [6] - 6:4, 26:12, 26:21, 26:23, 34:7
*categories* [5] - 34:8, 55:12, 68:6, 68:12, 69:13
*category* [2] - 19:13, 65:22
*causation* [4] - 30:7, 31:6, 31:24, 32:6
*caused* [1] - 51:12
*CCR* [1] - 75:5
*celebrate* [1] - 15:23
*celebrated* [1] - 15:22
*Centre* [1] - 2:12
*certain* [3] - 21:20, 66:15, 67:16
*certainly* [10] - 7:22, 9:20, 11:19, 19:3, 31:9, 32:20, 33:3, 34:11, 53:22, 69:20
*certainty* [1] - 13:20
*certify* [1] - 75:1
*certifying* [1] - 50:24
*cetera* [2] - 18:6, 63:21
*cGMP* [2] - 33:5, 51:8
*challenges* [1] - 5:6
*chance* [8] - 16:18, 17:8, 18:8, 18:9, 22:21, 30:21, 72:2, 72:6
*change* [1] - 18:7
*changes* [1] - 15:13
*changing* [1] - 70:13
*charged* [1] - 27:16
*chart* [4] - 15:7, 15:8, 15:10, 15:13
*Chemical* [4] - 44:10, 44:11, 44:25, 55:24
*chemical* [1] - 57:15
*Chemicals* [2] - 43:20, 45:11
*chemists* [1] - 57:18
*Chemo* [6] - 45:10, 54:10, 55:1, 55:6, 55:13, 55:18
*Chen* [6] - 20:1, 20:6, 22:24, 22:25, 23:7, 26:5
*China* [2] - 13:18, 15:24
*Chinese* [3] - 15:22, 21:2, 23:16
*choice* [1] - 70:10
*chose* [1] - 38:24
*chromatography* [3] - 60:11, 60:18, 61:14
*Chuannan* [1] - 53:12
*CIPRIANI* [1] - 2:18
*circumstances* [2] - 13:15, 23:15

*cite* [1] - 39:7
*cites* [1] - 36:21
*CIVIL* [1] - 1:3
*Civil* [1] - 7:4
*claim* [2] - 48:21, 55:6
*clarify* [2] - 47:7, 62:21
*class* [9] - 11:17, 26:11, 26:21, 26:23, 26:24, 27:23, 28:1, 28:9, 29:1
*classified* [1] - 62:13
*clear* [11] - 7:17, 11:2, 11:15, 12:24, 20:3, 23:1, 35:12, 35:14, 44:13, 54:3, 57:19
*CLEM* [1] - 2:11
*Clem* [2] - 4:6, 6:21
*client* [9] - 14:1, 15:1, 23:15, 23:16, 46:22, 47:15, 49:24, 50:3, 51:21
*clients* [3] - 28:5, 29:5, 57:18
*close* [1] - 21:22
*Cohen* [2] - 1:7, 4:4
*COHEN* [2] - 2:15, 4:3
*collect* [1] - 27:6
*collection* [2] - 26:19, 27:17
*collections* [1] - 26:17
*collector* [1] - 27:6
*comfortable* [7] - 38:8, 38:10, 39:16, 40:6, 42:9, 42:11, 60:5
*coming* [6] - 5:8, 16:22, 24:1, 27:4, 45:4, 72:4
*Commencing* [1] - 1:9
*Committee* [1] - 4:5
*communicated* [1] - 63:13
*communications* [3] - 62:13, 62:14, 63:5
*companies* [4] - 21:20, 63:20, 64:6, 70:7
*Company* [2] - 44:10, 55:24
*company* [8] - 23:6, 44:19, 51:21, 53:11, 56:1, 56:14, 57:3, 59:12
*compare* [1] - 18:8
*compelling* [1] - 7:2
*completely* [2] - 10:20, 28:2
*compliance* [4] - 33:5, 50:24, 51:7, 51:9

**comply** *[3]* - 58:13, 61:8, 61:10
**compounded** *[1]* - 8:20
**computer** *[2]* - 1:25, 16:16
**computer-aided** *[1]* - 1:25
**concerned** *[2]* - 23:7, 49:18
**concerning** *[2]* - 26:20, 29:1
**concluded** *[1]* - 74:23
**concussion** *[1]* - 49:15
**conditions** *[1]* - 53:23
**conduct** *[1]* - 53:12
**conducted** *[1]* - 51:21
**confer** *[9]* - 18:25, 19:6, 19:18, 54:6, 56:19, 69:10, 71:16, 73:7, 73:11
**conference** *[13]* - 3:5, 12:23, 13:22, 16:21, 19:12, 25:20, 30:3, 70:25, 71:8, 71:18, 72:23, 73:3, 73:21
**CONFERENCE** *[1]* - 1:6
**conferences** *[1]* - 41:16
**conferred** *[2]* - 30:13, 30:19
**confers** *[3]* - 61:5, 69:22, 70:2
**confident** *[1]* - 21:21
**confidential** *[3]* - 29:6, 29:10, 29:12
**confine** *[1]* - 54:16
**confirmed** *[1]* - 20:20
**conforms** *[1]* - 58:6
**CONLEE** *[1]* - 1:20
**Conlee** *[1]* - 3:23
**connection** *[1]* - 46:23
**cons** *[1]* - 41:3
**consent** *[1]* - 5:17
**consistent** *[2]* - 18:17, 18:23
**constituted** *[1]* - 64:3
**consultant** *[7]* - 46:10, 47:9, 47:13, 49:17, 64:15, 65:7, 66:4
**consulting** *[3]* - 57:18, 64:19, 65:15
**Consulting** *[1]* - 44:22, 44:23
**consume** *[1]* - 73:3
**consumer** *[1]* - 26:11
**consumers** *[1]* - 51:13
**contact** *[1]* - 26:17

**contacted** *[1]* - 62:8
**contained** *[1]* - 68:4
**contamination** *[2]* - 33:4, 58:8
**context** *[1]* - 9:14
**continue** *[4]* - 13:3, 40:16, 73:2, 74:21
**Continued** *[1]* - 2:1
**continues** *[1]* - 56:5
**continuing** *[1]* - 71:22
**continuous** *[1]* - 10:5
**contract** *[1]* - 39:3
**contracts** *[3]* - 38:22, 38:25, 39:7
**control** *[14]* - 17:4, 29:7, 37:21, 38:4, 39:5, 40:10, 40:19, 41:5, 41:12, 41:19, 41:24, 42:6, 53:17, 59:17
**conversation** *[3]* - 29:18, 39:11, 55:16
**conversations** *[1]* - 57:17
**convince** *[1]* - 8:15
**Cooper** *[1]* - 1:8
**cooperate** *[1]* - 13:17
**copy** *[2]* - 36:2, 52:5
**core** *[3]* - 40:22, 40:25, 60:11
**corners** *[1]* - 58:6
**corporate** *[1]* - 6:23
**Corporation** *[1]* - 62:3
**correct** *[19]* - 12:19, 15:10, 19:25, 20:5, 21:5, 21:6, 30:9, 31:9, 44:20, 44:21, 45:2, 46:23, 49:16, 52:11, 52:25, 53:6, 53:13, 75:1
**Correct** *[1]* - 57:5
**correctly** *[1]* - 41:6
**cost** *[1]* - 27:13
**cost-sharing** *[1]* - 27:13
**Costantino** *[1]* - 36:21
**costs** *[1]* - 29:3
**counsel** *[30]* - 3:10, 16:15, 26:7, 26:13, 26:14, 26:16, 28:15, 29:23, 35:3, 35:17, 35:25, 43:22, 47:9, 47:10, 47:13, 47:19, 49:11, 52:25, 54:5, 56:8, 59:4, 61:6, 62:5, 67:14, 67:19, 69:1, 70:15, 73:21, 74:11
**Court** *[104]* - 1:23, 3:6, 6:18, 7:5, 7:16, 7:17, 7:23, 7:25, 9:6, 9:19, 9:25, 10:10, 10:20, 10:24, 12:7, 12:9, 13:5, 13:6, 13:9, 14:4, 14:24, 15:21, 15:22, 16:1, 16:3, 16:7, 16:8, 18:23, 19:1, 19:10, 19:11,

15:4
**couple** *[6]* - 12:23, 18:4, 21:22, 28:10, 34:8, 43:17
**course** *[11]* - 4:12, 19:13, 24:20, 29:15, 39:8, 50:2, 60:11, 61:11, 70:11, 70:12, 70:13
**court** *[3]* - 3:1, 3:12, 74:11
**COURT** *[117]* - 1:1, 3:3, 3:24, 4:10, 5:9, 5:13, 5:14, 5:17, 6:11, 6:17, 7:10, 9:24, 11:23, 12:12, 12:17, 12:20, 15:5, 15:16, 18:17, 18:23, 20:5, 20:11, 20:13, 21:4, 21:25, 22:9, 22:12, 22:15, 22:25, 23:19, 25:2, 25:4, 25:10, 25:13, 25:18, 28:15, 29:9, 29:21, 30:1, 31:3, 31:17, 32:11, 33:7, 35:3, 35:17, 35:19, 35:21, 36:4, 38:6, 39:14, 39:25, 40:20, 43:4, 43:12, 43:14, 44:4, 44:11, 44:13, 44:17, 44:22, 44:25, 45:4, 45:8, 45:13, 45:15, 45:17, 45:25, 46:3, 46:5, 46:12, 46:19, 46:25, 48:7, 49:10, 50:12, 50:19, 51:14, 52:24, 53:8, 53:14, 54:19, 54:22, 55:17, 56:12, 56:24, 57:2, 57:6, 58:17, 59:1, 59:4, 59:6, 59:23, 60:17, 60:23, 61:13, 61:18, 61:24, 62:17, 63:4, 63:17, 64:4, 64:22, 65:12, 65:18, 66:2, 66:9, 66:13, 67:2, 67:19, 67:24, 69:16, 70:15, 72:14, 72:16, 73:20, 74:8, 74:11
**Court's** *[34]* - 3:5, 6:22, 7:11, 8:3, 11:2, 13:11, 13:17, 15:19, 20:17, 33:11, 33:12, 33:13, 35:4, 36:4, 36:12, 41:10, 41:23, 42:14, 49:10, 49:15, 49:18, 50:5, 53:14, 53:20, 55:17, 56:7, 58:22, 59:23, 61:13, 65:24, 67:12, 70:22, 71:21, 73:6
**courtesies** *[1]* - 3:7
**courtesy** *[1]* - 36:2
**Courthouse** *[1]* - 1:7
**courtroom** *[1]* - 49:8
**covered** *[2]* - 47:14, 67:7
**covering** *[2]* - 12:11, 68:5
**COVID-19** *[1]* - 13:18
**CRC** *[1]* - 75:5
**created** *[1]* - 56:21
**credentials** *[1]* - 26:20
**crossed** *[1]* - 58:3
**CRR** *[1]* - 75:5
**crux** *[3]* - 71:15, 72:24, 73:10
**cumulative** *[1]* - 7:22
**current** *[1]* - 31:11
**custodial** *[6]* - 5:25, 6:6, 6:9, 7:2, 7:12, 8:3
**custodians** *[2]* - 5:25, 6:3
**custody** *[6]* - 38:3,

19:13, 19:15, 19:19, 20:6, 22:8, 22:20, 23:2, 23:7, 23:17, 25:22, 25:24, 27:11, 28:17, 28:21, 30:4, 30:14, 30:15, 31:18, 32:3, 32:8, 32:24, 33:3, 33:8, 33:14, 35:5, 35:21, 35:22, 35:24, 36:10, 36:21, 36:22, 37:3, 37:6, 37:7, 37:14, 37:22, 37:23, 38:9, 39:18, 40:2, 41:2, 41:19, 42:8, 42:11, 47:5, 47:25, 48:4, 48:6, 49:14, 53:15, 58:17, 58:18, 60:2, 60:23, 61:25, 63:18, 66:3, 66:14, 67:14, 67:17, 67:21, 68:16, 70:21, 71:25, 72:4, 72:22, 73:3, 73:14, 73:25, 75:5
**Court's** *[34]* - 3:5, 6:22, 7:11, 8:3, 11:2, 13:11, 13:17, 15:19, 20:17, 33:11, 33:12, 33:13, 35:4, 36:4, 36:12, 41:10, 41:23, 42:14, 49:10, 49:15, 49:18, 50:5, 53:14, 53:20, 55:17, 56:7, 58:22, 59:23, 61:13, 65:24, 67:12, 70:22, 71:21, 73:6

38:4, 40:10, 40:19, 59:17, 59:19

## D

**Daniel** *[1]* - 6:24
**date** *[6]* - 4:22, 10:4, 14:2, 14:20, 29:18, 70:25
**Date** *[1]* - 75:6
**dates** *[12]* - 6:25, 14:8, 14:20, 15:8, 17:20, 18:9, 19:11, 19:17, 19:19, 19:20, 25:21, 26:5
**Daubert** *[1]* - 30:8
**David** *[3]* - 26:8, 27:22, 28:24
**DAVID** *[1]* - 1:17
**DAVIS** *[1]* - 2:14
**days** *[3]* - 9:23, 13:21, 23:22
**deadline** *[2]* - 11:10, 19:17
**deal** *[13]* - 25:24, 32:14, 33:9, 33:17, 34:9, 34:14, 43:5, 54:12, 56:12, 62:16, 64:7, 71:10
**dealing** *[11]* - 10:22, 23:16, 34:24, 38:3, 40:23, 41:22, 43:3, 49:13, 58:22, 72:18, 73:23
**dealt** *[3]* - 34:16, 34:21, 73:24
**debatable** *[1]* - 64:12
**December** *[8]* - 10:3, 12:7, 13:15, 15:12, 20:15, 26:13, 27:25, 29:1
**decide** *[5]* - 28:21, 29:22, 41:23, 50:1, 74:16
**decided** *[7]* - 22:25, 23:7, 38:12, 39:23, 53:1, 66:16, 73:14
**decides** *[1]* - 25:22
**deciding** *[2]* - 39:19, 53:16
**decision** *[9]* - 20:19, 20:22, 36:21, 39:17, 39:20, 60:6, 66:17, 74:1, 74:16
**defendant** *[11]* - 13:1, 16:4, 41:7, 41:12, 41:13, 41:17, 41:24, 46:5, 53:16, 56:15, 64:22
**Defendant** *[1]* - 2:13
**defendant's** *[1]* -

4

43:14
**Defendants** [3] - 2:8, 2:16, 2:20
**defendants** [81] - 3:10, 3:25, 4:2, 4:4, 4:7, 4:9, 8:15, 8:24, 10:6, 10:9, 10:11, 11:14, 12:8, 12:18, 12:25, 26:1, 26:10, 26:22, 26:24, 27:12, 27:14, 27:17, 27:20, 29:4, 32:22, 33:15, 33:16, 34:3, 34:16, 34:25, 35:10, 35:13, 36:5, 36:8, 36:10, 36:14, 36:17, 36:19, 36:24, 37:1, 37:4, 37:16, 37:20, 37:21, 37:22, 37:24, 38:17, 40:6, 40:9, 40:18, 40:25, 42:1, 42:3, 42:20, 45:23, 46:8, 47:3, 52:4, 52:21, 55:15, 56:1, 56:15, 56:22, 57:3, 58:21, 60:1, 60:16, 62:18, 66:25, 67:3, 67:5, 67:9, 67:18, 68:6, 69:11, 69:12, 70:9, 72:2, 74:8, 74:10, 74:17
**defendants'** [11] - 11:7, 11:25, 37:9, 37:15, 38:18, 40:12, 40:15, 46:9, 52:2, 64:11, 67:9
**defense** [6] - 4:5, 4:7, 18:10, 18:14, 62:5, 67:5
**defer** [4] - 31:22, 38:11, 59:20, 60:6
**deference** [1] - 59:19
**deferred** [5] - 30:11, 31:4, 66:14, 66:17, 74:2
**deferring** [1] - 31:5
**define** [1] - 65:10
**definitely** [1] - 36:8
**definition** [1] - 21:21
**definitive** [1] - 39:20
**delay** [2] - 10:18, 26:4
**delayed** [1] - 8:22
**delivers** [1] - 14:15
**demonstrated** [1] - 52:21
**denied** [4] - 7:12, 8:5, 37:3, 37:10
**deponents** [1] - 19:11
**depose** [1] - 19:12
**deposed** [10] - 6:10,

6:12, 9:1, 13:10, 14:9, 14:11, 14:12, 16:20, 21:16, 24:8
**deposition** [30] - 4:16, 4:24, 7:1, 7:18, 7:19, 7:25, 8:10, 8:11, 9:12, 11:18, 12:6, 12:20, 13:2, 13:23, 14:3, 14:17, 14:19, 19:9, 19:15, 20:21, 20:25, 23:8, 25:25, 29:13, 31:2, 33:20, 44:14, 71:14
**depositions** [47] - 5:8, 7:13, 8:6, 9:5, 9:8, 9:10, 9:16, 10:1, 10:4, 10:5, 10:10, 10:11, 10:16, 10:18, 10:25, 11:4, 11:7, 11:8, 11:9, 11:16, 11:19, 11:21, 11:25, 12:2, 12:16, 13:7, 13:12, 13:18, 15:4, 15:8, 15:18, 16:2, 16:6, 18:21, 19:20, 21:3, 24:19, 25:22, 25:23, 26:2, 26:5, 28:9, 28:14, 31:4, 31:14, 32:7, 33:19
**DER** [1] - 6:24
**Derrick** [1] - 6:24
**designated** [1] - 5:24
**designees** [1] - 6:23
**detail** [1] - 51:17
**determination** [2] - 51:4, 61:22
**determine** [1] - 58:11
**develop** [2] - 23:14, 24:17, 24:18, 60:10
**developed** [5] - 23:8, 40:2, 42:9, 60:18, 60:20
**different** [7] - 12:9, 18:9, 23:5, 34:8, 41:22, 49:4, 68:5
**differently** [1] - 43:10
**difficult** [6] - 9:3, 32:14, 57:24, 58:11, 74:12
**difficulties** [1] - 16:2
**difficulty** [1] - 64:16
**digging** [1] - 39:8
**direct** [1] - 33:3
**directed** [4] - 20:18, 46:5, 55:6, 55:18
**direction** [1] - 72:21
**directly** [1] - 54:7
**disappointed** [1] - 73:8
**Discover** [1] - 60:15

**Discovery** [8] - 36:13, 51:5, 51:24, 58:14, 61:8, 61:11, 61:12, 67:12
**discovery** [10] - 11:9, 19:16, 30:22, 36:12, 40:22, 40:25, 41:11, 56:5, 61:12, 70:5
**discuss** [3] - 4:20, 26:6, 55:15
**discussed** [12] - 5:1, 13:25, 17:24, 50:21, 50:25, 51:11, 67:13, 68:25, 69:6, 69:8, 71:13, 73:6
**discussion** [5] - 6:2, 29:19, 30:10, 31:3, 31:5
**discussions** [2] - 61:5, 73:2
**dispense** [1] - 50:17
**dispute** [4] - 36:20, 50:22, 64:21, 64:22
**disputes** [4] - 34:21, 70:24, 71:17, 73:14
**District** [1] - 36:23
**DISTRICT** [2] - 1:1, 1:1
**divulging** [1] - 57:17
**Docket** [1] - 3:8
**doctrine** [1] - 47:14
**document** [18] - 8:22, 10:21, 15:12, 30:25, 31:6, 31:11, 31:19, 33:20, 40:13, 40:15, 44:15, 44:17, 54:23, 55:20, 66:3, 66:5, 70:4
**Document** [2] - 12:10, 15:11
**documents** [73] - 7:14, 7:18, 7:21, 7:24, 8:7, 10:23, 22:20, 26:9, 26:16, 26:25, 31:13, 32:7, 34:8, 37:6, 37:12, 38:23, 39:4, 39:9, 39:12, 39:18, 40:11, 40:17, 41:1, 41:4, 41:8, 41:17, 41:20, 41:25, 42:4, 42:6, 46:21, 47:8, 47:12, 47:18, 47:23, 48:16, 48:19, 48:24, 49:16, 49:19, 49:22, 49:25, 52:18, 53:17, 54:4, 54:7, 56:9, 56:18, 58:18, 59:8, 59:11, 59:13, 59:17, 59:21, 59:25, 60:17, 61:14,

62:18, 63:18, 63:19, 63:20, 63:23, 64:1, 64:5, 64:18, 65:9, 65:15, 66:4, 69:20, 70:2, 70:6, 70:9
**domestic** [5] - 34:12, 34:18, 42:24, 44:1, 56:5, 61:12, 70:5
**domestically** [2] - 43:24, 45:21
**done** [9] - 10:21, 10:22, 32:7, 34:7, 49:2, 50:23, 63:2, 69:2, 69:7
**dose** [1] - 56:24
**down** [5] - 9:18, 23:9, 34:7, 66:1, 70:11
**download** [1] - 27:15
**draft** [3] - 62:9, 62:24, 63:18
**drafted** [1] - 62:24
**dragged** [1] - 72:11
**draw** [2] - 22:4, 48:23
**drill** [1] - 9:5
**drug** [1] - 56:22
**drugs** [1] - 56:6
**Du** [4] - 18:2, 18:4, 18:7, 20:1
**du** [1] - 19:12
**Du's** [2] - 13:23, 14:2
**du's** [1] - 14:19
**DUANE** [1] - 2:6
**Duane** [7] - 35:9, 38:11, 40:5, 68:11, 68:14, 69:23
**due** [1] - 17:1
**dump** [1] - 70:10
**during** [16] - 5:6, 13:18, 13:22, 32:12, 32:15, 61:4, 66:19, 70:2, 70:16, 71:8, 72:19, 72:23, 73:3, 73:8, 73:23, 74:3

### E

**early** [4] - 13:2, 14:13, 17:3, 40:24
**easy** [1] - 49:21
**Eckert** [1] - 74:13
**economic** [1] - 26:12
**educate** [1] - 24:16
**educated** [1] - 24:4
**effect** [1] - 10:25
**effected** [1] - 51:25
**eight** [1] - 46:13
**Eisenhower** [1] - 1:14
**either** [2] - 7:21, 12:22
**electronic** [1] - 36:3
**eleventh** [1] - 39:9
**EMA** [1] - 51:7

**email** [2] - 35:24, 74:13
**emailed** [1] - 36:2
**emblematic** [1] - 52:6
**employee** [1] - 23:4
**employees** [4] - 20:16, 20:20, 24:5, 24:16
**en** [1] - 8:15
**encompass** [1] - 70:7
**encompasses** [1] - 21:19
**encouragement** [1] - 9:6
**end** [13] - 8:2, 9:6, 10:3, 11:9, 14:12, 17:4, 19:16, 28:7, 41:6, 41:15, 70:24, 71:18, 73:13
**end-run** [1] - 28:7
**endpoint** [1] - 51:10
**endpoints** [1] - 60:13
**energies** [1] - 30:6
**enormous** [1] - 16:2
**ensure** [1] - 52:12
**enter** [1] - 25:7
**entered** [3] - 5:18, 16:11, 27:13
**entire** [3] - 14:5, 14:19, 70:7
**entities** [39] - 32:4, 34:9, 34:18, 34:20, 34:22, 34:24, 38:5, 38:22, 39:6, 42:22, 42:24, 43:1, 43:3, 43:4, 43:23, 43:25, 44:2, 44:3, 45:22, 48:9, 48:19, 51:19, 52:3, 52:8, 52:11, 52:23, 54:9, 62:3, 63:2, 67:13, 67:15, 68:2, 68:25, 69:8, 70:3, 72:5, 72:7, 72:9
**entitled** [2] - 58:7, 75:2
**entity** [22] - 32:23, 32:24, 33:3, 35:2, 44:8, 52:1, 52:13, 52:14, 52:15, 52:19, 53:17, 54:11, 54:12, 56:9, 56:18, 60:10, 61:21, 63:14, 64:14, 68:8, 68:9, 69:25
**entity-specific** [1] - 35:2
**entries** [4] - 3:9, 3:16, 3:24, 4:11
**envision** [1] - 30:22
**envisioned** [2] - 31:9,

31:11
**equally** [2] - 11:8, 32:18
**equitable** [1] - 9:13
**especially** [2] - 17:19, 71:5
**ESQUIRE** [12] - 1:14, 1:17, 1:17, 1:20, 2:3, 2:6, 2:7, 2:11, 2:11, 2:14, 2:15, 2:19
**establish** [2] - 40:11, 40:13
**established** [2] - 15:19, 53:15
**et** [2] - 18:6, 63:21
**European** [3] - 50:24, 51:22, 51:23
**evaluate** [2] - 22:21, 41:13
**evening** [2] - 35:14, 47:5
**event** [7] - 4:12, 25:22, 37:16, 62:13, 63:8, 63:15, 63:22
**evidence** [3] - 22:19, 59:16, 69:18
**exact** [1] - 49:14
**example** [3] - 8:21, 68:10, 69:18
**exceed** [1] - 36:12
**except** [1] - 71:6
**exception** [1] - 27:2
**exchanged** [1] - 62:9
**excised** [1] - 68:21
**Excuse** [1] - 44:11
**excuse** [3] - 5:9, 33:19, 59:4
**executed** [1] - 62:10
**Executive** [1] - 4:5
**exemplified** [1] - 68:1
**exhausted** [2] - 18:25, 73:22
**Exhibit** [1] - 15:12
**expectation** [1] - 13:11
**expecting** [1] - 14:13
**expects** [1] - 72:22
**experience** [1] - 66:10
**experts** [1] - 49:3
**expressed** [3] - 55:2, 64:25, 72:25
**expressly** [2] - 51:23, 58:5
**extent** [6] - 7:5, 48:20, 52:16, 62:12, 63:2, 63:8
**extraordinary** [1] - 13:16
**extremely** [1] - 57:13
**eye** [1] - 40:17

## F

**faced** [1] - 40:24
**facie** [2] - 20:23, 23:3
**facility** [3] - 51:2, 53:5, 53:12
**facing** [1] - 16:1
**fact** [10] - 11:9, 11:17, 13:23, 14:17, 14:21, 19:16, 27:5, 27:24, 52:6, 72:8
**factory** [3] - 51:10, 53:5, 53:23
**facts** [2] - 68:18, 69:10
**factual** [4] - 21:17, 23:15, 24:17, 24:18
**fair** [6] - 7:25, 9:15, 18:16, 31:10, 65:10, 71:4
**fairness** [2] - 11:6, 11:25
**faith** [2] - 69:11, 73:11
**fall** [2] - 21:21, 60:14
**familiar** [2] - 49:12, 50:5
**far** [4] - 23:2, 23:6, 49:18, 54:6
**fashion** [1] - 35:2
**favor** [1] - 23:8
**FDA** [5] - 47:11, 48:11, 49:1, 49:7, 49:23
**FDA's** [1] - 46:23
**February** [11] - 6:14, 6:16, 11:5, 14:5, 14:13, 17:3, 18:7, 24:15, 24:24, 25:18, 25:20
**Federal** [1] - 7:4
**fee** [1] - 27:17
**few** [3] - 13:6, 15:3, 16:21
**file** [10] - 19:14, 20:7, 21:11, 21:14, 22:2, 23:9, 23:12, 23:23, 25:14, 25:18
**filed** [8] - 22:1, 22:12, 35:13, 35:15, 35:17, 40:7, 47:5, 67:9
**filing** [3] - 22:21, 30:20, 47:6
**filings** [1] - 12:9
**final** [3] - 19:9, 62:24, 63:19
**finally** [2] - 26:18, 41:17
**fine** [2] - 28:25, 42:2
**finish** [1] - 8:22
**finished** [1] - 56:24
**fire** [1] - 9:5
**first** [14] - 3:13, 6:23,

11:17, 11:22, 19:4, 29:19, 30:1, 33:13, 35:7, 37:9, 37:10, 48:17, 68:24, 74:18
**fits** [1] - 65:23
**five** [6] - 23:11, 34:19, 36:19, 45:18, 46:13, 61:5
**flipped** [1] - 14:20
**flipping** [1] - 14:8
**Floor** [1] - 2:12
**floor** [1] - 66:24
**focus** [4] - 31:6, 31:23, 32:17, 33:3
**focused** [1] - 68:22
**focusing** [2] - 69:8, 72:24
**follow** [1] - 11:19
**follows** [1] - 53:2
**FOR** [1] - 1:1
**forced** [1] - 41:10
**foregoing** [1] - 75:1
**foreign** [25] - 33:15, 34:22, 37:20, 37:22, 38:4, 38:16, 38:22, 41:8, 41:12, 41:19, 41:24, 42:6, 42:24, 43:25, 44:3, 44:8, 51:23, 52:3, 52:14, 52:19, 52:23, 54:9, 54:12, 56:10, 59:12
**forever** [1] - 72:11
**forget** [1] - 15:16
**forgot** [1] - 21:5
**forms** [1] - 70:4
**fortuitous** [1] - 44:7
**forward** [5] - 11:1, 11:22, 25:23, 33:25, 73:25
**four** [13] - 20:16, 23:11, 34:20, 34:22, 36:17, 39:7, 43:5, 44:13, 45:9, 45:18, 46:13, 58:6, 61:5
**fourth** [1] - 43:19
**frame** [1] - 7:7
**FRANK** [1] - 2:11
**Frank** [1] - 67:4
**frankly** [8] - 9:16, 17:12, 24:6, 24:11, 33:7, 35:23, 55:5, 58:11
**Frederick** [1] - 43:21
**FREEMAN** [1] - 1:13
**Friday** [1] - 25:18
**front** [3] - 6:13, 15:6, 32:24
**full** [1] - 35:5
**fully** [3] - 22:3, 22:22, 32:2

**fulsome** [2] - 22:13, 39:19
**furthermore** [2] - 40:14, 51:24, 59:16
**future** [3] - 30:6, 32:17, 70:14

## G

**gamesmanship** [1] - 16:24
**gap** [1] - 10:19
**general** [11] - 4:25, 30:4, 30:7, 31:6, 31:24, 32:6, 34:13, 34:20, 57:13, 58:9, 71:6
**generally** [3] - 8:11, 63:3, 63:16
**generated** [1] - 65:10
**generic** [1] - 73:24
**genuinely** [1] - 73:12
**geographic** [1] - 37:14
**GEOPPINGER** [1] - 4:8
**Geoppinger** [1] - 4:9
**Georgia** [1] - 2:16
**given** [8] - 9:16, 9:18, 9:19, 9:21, 17:20, 23:15, 37:4, 72:21
**Glover** [1] - 6:24
**Goldberg** [23] - 4:2, 12:3, 12:12, 15:5, 17:7, 17:11, 20:8, 20:12, 21:4, 21:5, 21:25, 22:13, 22:16, 23:9, 23:12, 25:4, 25:13, 30:18, 35:23, 67:25, 72:13, 72:14, 72:21
**GOLDBERG** [25] - 2:6, 4:1, 12:4, 12:15, 12:19, 13:4, 15:10, 20:4, 20:9, 20:12, 20:14, 22:2, 22:10, 22:14, 22:17, 23:14, 25:3, 30:17, 31:8, 67:23, 67:25, 72:13, 72:15, 73:18, 74:10
**Goldberg's** [2] - 4:16, 69:17
**goldenberg** [3] - 48:7, 60:7, 62:1
**Goldenberg** [21] - 31:25, 32:12, 38:13, 39:15, 40:8, 42:13, 43:5, 44:5, 45:5, 57:14, 61:16, 64:6, 64:25, 65:12, 65:22, 66:7, 68:25, 69:16, 71:20, 72:16, 73:8

**GOLDENBERG** [52] - 2:2, 2:3, 31:25, 32:20, 33:23, 38:14, 39:22, 42:16, 43:9, 43:13, 43:16, 44:6, 44:12, 44:15, 44:21, 44:24, 45:2, 45:6, 45:10, 45:14, 45:16, 45:20, 46:2, 46:4, 46:7, 46:15, 46:24, 48:8, 50:11, 50:14, 50:20, 53:7, 54:2, 54:21, 55:23, 56:17, 57:1, 57:5, 60:8, 60:20, 62:2, 62:20, 63:6, 64:8, 65:4, 65:14, 66:8, 66:11, 66:20, 69:15, 69:17, 71:19
**Goldenberg's** [1] - 53:1
**GOLOMB** [1] - 1:16
**GORDON** [1] - 2:10
**government** [1] - 21:2
**graces** [1] - 11:3
**grade** [2] - 51:3, 51:10
**grand** [1] - 17:25
**grant** [1] - 48:6
**granted** [5] - 19:11, 19:13, 20:6, 21:2, 40:23
**great** [1] - 55:17
**GREENBERG** [1] - 2:14
**Greenberg** [1] - 4:4
**Greg** [13] - 35:9, 38:1, 40:4, 51:15, 53:10, 54:24, 57:10, 59:9, 61:1, 63:24, 64:24, 65:19, 66:22
**GREGORY** [1] - 2:7
**ground** [2] - 36:9, 36:15
**grounds** [8] - 36:11, 36:17, 36:18, 36:19, 36:20, 36:25, 42:5, 67:15
**Group** [8] - 44:11, 45:10, 45:12, 54:10, 55:1, 55:7, 55:18, 64:12
**group** [5] - 4:7, 8:15, 19:6, 34:21, 67:5
**Group's** [1] - 55:13
**grouped** [1] - 43:10
**groups** [1] - 34:9
**guess** [5] - 21:5, 42:10, 60:15, 63:11, 64:12
**guidance** [4] - 32:3,

*34:1, 73:6, 73:25*
**guys** [1] - 65:7

## H

**hand** [2] - 41:10, 52:10
**handle** [1] - 33:10
**handled** [2] - 46:7, 49:1
**hanging** [1] - 74:12
**happy** [10] - 7:6, 18:1, 22:3, 22:8, 29:3, 54:16, 56:19, 59:18, 65:4, 65:23
**hard** [2] - 8:15, 60:23
**hardly** [1] - 66:13
**heading** [1] - 46:11
**Healthcare** [1] - 2:9
**heap** [1] - 71:9
**hear** [10] - 6:19, 7:5, 11:23, 16:8, 31:17, 51:14, 53:3, 60:15, 67:24, 69:16
**heard** [8] - 6:17, 16:3, 21:12, 28:17, 33:16, 62:5, 71:6, 71:11
**hearing** [9] - 17:7, 17:24, 24:8, 30:21, 33:8, 50:25, 63:17, 70:12, 72:12
**height** [1] - 16:24
**HEINZ** [2] - 2:19, 47:2
**Heinz** [2] - 47:3, 49:16
**held** [2] - 3:1, 16:6
**help** [3] - 33:7, 40:18, 65:8
**helped** [1] - 60:10, 62:6
**helpful** [5] - 9:7, 17:12, 33:6, 38:14, 42:17
**hence** [1] - 54:11
**HERROLD** [22] - 2:7, 35:8, 35:18, 35:20, 36:1, 38:1, 40:4, 51:15, 53:10, 54:24, 57:10, 58:23, 59:2, 59:5, 59:9, 61:1, 61:17, 61:19, 63:24, 64:24, 65:19, 66:22
**Herrold** [13] - 35:9, 38:1, 40:4, 51:16, 53:10, 54:24, 57:10, 59:9, 61:1, 63:24, 64:24, 65:19, 66:22
**Hetero** [1] - 48:14
**Hi** [1] - 47:2
**high** [1] - 21:19
**highly** [1] - 29:5
**hired** [1] - 49:6

**hold** [4] - 21:4, 25:4, 43:5, 45:25
**holiday** [1] - 14:1
**homework** [1] - 52:12
**HON** [1] - 2:23
**honest** [1] - 18:1
**Honik** [1] - 3:20
**HONIK** [3] - 1:16, 1:17, 3:20
**Honor** [122] - 3:18, 3:20, 3:22, 4:1, 4:3, 4:6, 4:8, 4:21, 4:22, 5:2, 5:9, 5:16, 6:8, 6:20, 7:6, 8:13, 9:7, 11:13, 11:21, 12:4, 12:5, 12:11, 12:19, 13:4, 14:16, 15:10, 15:13, 16:9, 16:11, 16:17, 16:20, 16:22, 17:1, 17:13, 17:24, 19:24, 19:25, 20:4, 20:9, 20:14, 20:15, 20:17, 20:19, 20:22, 21:10, 22:2, 22:4, 22:6, 22:14, 22:17, 25:3, 25:5, 25:10, 26:8, 26:18, 27:3, 27:22, 27:24, 28:2, 28:25, 29:11, 30:17, 31:25, 32:21, 33:23, 34:7, 34:13, 35:8, 35:11, 35:12, 36:1, 38:2, 38:15, 39:22, 40:4, 42:16, 43:13, 43:17, 45:6, 46:15, 46:24, 47:2, 48:8, 50:18, 51:1, 51:15, 53:7, 54:2, 54:24, 55:24, 57:10, 58:23, 59:2, 59:5, 59:10, 59:19, 60:8, 61:2, 61:17, 62:2, 62:20, 63:25, 64:9, 64:25, 65:20, 66:8, 66:20, 66:22, 66:23, 67:4, 67:7, 67:23, 67:25, 69:4, 69:6, 69:15, 71:19, 72:13, 73:18, 74:10
**Honor's** [3] - 15:11, 17:6, 27:9
**Honorable** [1] - 3:1
**HONORABLE** [1] - 1:11
**hope** [4] - 71:17, 73:1, 73:13, 74:21
**hopefully** [2] - 11:24, 64:20
**hoping** [1] - 42:24
**hotlines** [3] - 62:12,

*63:7, 63:9*
**hour** [1] - 39:10
**Huahai** [1] - 2:9
**Huanan** [2] - 45:11, 55:23
**hundred** [2] - 33:12, 71:1
**hundred-mile** [1] - 33:12
**hyperbole** [1] - 18:22

## I

**i.e** [1] - 10:24
**idea** [3] - 17:6, 17:25, 46:19
**ideal** [1] - 23:18
**identical** [2] - 40:23, 68:3
**identified** [2] - 15:14, 73:25
**identify** [1] - 71:10
**identifying** [1] - 4:13
**illustration** [1] - 17:12
**immediate** [1] - 32:17
**immediately** [1] - 31:21
**imminency** [1] - 71:12
**impact** [3] - 15:25, 30:15, 57:15
**implications** [3] - 40:1, 41:15, 41:25
**importance** [1] - 32:16
**important** [15] - 6:2, 6:5, 9:22, 22:10, 30:3, 31:22, 31:23, 32:18, 39:19, 39:25, 40:1, 41:14, 42:1, 49:18, 71:7
**imported** [1] - 50:2
**impossible** [2] - 32:14, 39:1
**impurities** [3] - 57:16, 57:22, 58:9
**IN** [1] - 1:4
**inappropriate** [2] - 7:3, 7:9
**Inc** [4] - 2:13, 2:17, 2:17, 2:21
**inclined** [1] - 48:4
**include** [2] - 19:10, 28:20
**included** [3] - 47:4, 55:12, 64:2
**including** [3] - 13:9, 16:23, 69:23
**inconsistent** [1] - 7:3
**incorrect** [1] - 52:1
**incredible** [1] - 72:19
**India** [5] - 44:11, 45:10, 54:10, 55:7,

*55:18*
**Indian** [1] - 61:21
**indiscriminately** [1] - 52:7
**individual** [2] - 33:19
**individually** [1] - 50:13
**individuals** [1] - 23:11
**Industries** [1] - 2:16
**inequitable** [1] - 16:24
**information** [12] - 20:24, 26:19, 32:5, 33:5, 48:25, 53:20, 53:22, 54:17, 60:4, 63:10, 63:14, 63:16
**ingredient** [4] - 57:12, 57:13, 57:21, 68:20
**ingredients** [2] - 57:15, 58:13
**inordinate** [2] - 16:6, 17:6
**input** [1] - 17:18
**inspected** [2] - 51:9, 51:11
**inspection** [1] - 53:5
**instance** [1] - 16:6
**instead** [3] - 16:7, 17:4, 18:4
**instinct** [1] - 39:17
**Instruments** [1] - 43:20
**intend** [1] - 29:13
**intent** [1] - 9:20
**intention** [1] - 71:22
**interest** [2] - 8:1, 72:25
**interested** [7] - 60:15, 62:7, 62:16, 62:22, 63:1, 63:9, 63:12
**interference** [1] - 3:15
**interim** [1] - 15:22
**internal** [1] - 57:17
**internally** [1] - 17:8
**interpretation** [1] - 51:4
**interrupt** [1] - 35:11
**interrupted** [1] - 73:16
**interrupting** [1] - 12:13
**interruption** [3] - 25:17, 44:1, 44:7
**irbesartan** [1] - 56:4
**irrelevant** [3] - 10:24, 28:2, 55:11
**issue** [121] - 4:13, 4:20, 4:25, 5:4, 5:15, 5:21, 5:22, 7:7, 7:10, 8:9, 8:20, 9:13, 9:15, 11:12, 11:15, 12:1, 12:21, 12:24, 18:25,

*19:1, 19:3, 19:19, 19:23, 22:3, 22:5, 22:7, 22:10, 22:23, 23:2, 23:7, 23:13, 24:12, 24:23, 24:25, 25:19, 26:7, 26:9, 27:4, 27:9, 28:17, 28:18, 28:20, 28:23, 29:20, 29:24, 30:2, 30:7, 30:16, 30:24, 31:2, 31:11, 31:24, 32:2, 33:13, 33:15, 33:21, 35:7, 36:5, 36:22, 37:1, 37:12, 37:14, 37:21, 37:23, 38:3, 38:8, 38:10, 38:11, 38:17, 39:19, 39:24, 39:25, 40:22, 40:24, 41:11, 41:14, 42:1, 42:7, 42:10, 42:12, 44:14, 45:9, 45:18, 46:20, 47:1, 49:11, 49:14, 49:18, 49:21, 49:24, 50:1, 50:8, 50:12, 52:24, 52:25, 53:18, 53:25, 54:9, 55:22, 56:10, 56:13, 57:7, 57:11, 57:21, 58:17, 58:22, 59:7, 60:2, 60:3, 60:5, 60:6, 61:24, 62:1, 67:6, 68:1, 68:19, 69:10*
**issued** [2] - 20:19, 30:25
**issues** [62] - 4:14, 4:19, 4:24, 8:23, 14:1, 15:2, 16:14, 17:14, 17:25, 19:22, 21:17, 22:22, 22:23, 29:23, 30:11, 31:7, 31:12, 32:22, 32:24, 32:25, 33:12, 33:17, 33:25, 34:12, 34:13, 34:15, 35:4, 43:1, 46:7, 51:11, 51:12, 52:10, 53:21, 56:12, 60:12, 61:22, 66:7, 66:15, 66:17, 66:18, 67:10, 67:16, 67:19, 70:17, 70:22, 70:23, 71:2, 71:5, 71:23, 72:2, 72:3, 72:5, 73:7, 73:10, 73:22, 73:23, 73:24, 73:25, 74:3, 74:8, 74:16
**issuing** [1] - 28:22
**it'll** [1] - 38:11
**IV** [1] - 2:11

## J

**jammed** [1] - 17:19
**jams** [1] - 19:18
**January** [34] - 1:9, 9:8, 10:2, 10:7, 10:9, 10:13, 10:19, 11:5, 11:18, 11:20, 13:7, 13:11, 13:13, 14:3, 14:18, 16:12, 17:3, 18:2, 19:2, 19:21, 24:24, 26:1, 28:20, 29:22, 38:7, 38:8, 39:17, 42:8, 50:8, 60:3, 66:16, 66:18, 70:24, 70:25
**Jeff** [1] - 4:8
**JERSEY** [1] - 1:1
**Jersey** [3] - 1:8, 1:15, 36:23
**Jessica** [1] - 47:2
**JESSICA** [1] - 2:19
**Joel** [1] - 3:1
**JOEL** [1] - 1:11
**joyful** [1] - 66:10
**JUDGE** [2] - 1:11, 25:5
**Judge** [9] - 3:2, 3:3, 10:3, 18:19, 24:2, 24:23, 25:8, 30:4, 32:18
**judging** [1] - 54:11
**July** [1] - 10:6
**jump** [2] - 21:4, 72:14
**Jun** [4] - 18:2, 18:4, 18:6, 20:1
**June** [2] - 51:6, 53:13

## K

**KANNER** [1] - 1:20
**Katie** [1] - 6:24
**KATZ** [1] - 1:13
**keep** [2] - 16:22, 72:9
**keeps** [1] - 17:11
**kept** [1] - 37:7
**kind** [2] - 58:15, 68:24
**knowing** [1] - 44:2, 70:8
**knowledge** [4] - 15:23, 23:4, 23:5, 53:21
**Kugler** [2] - 10:3, 30:4

## L

**labeled** [2] - 28:13, 29:12
**lag** [1] - 26:3
**laid** [1] - 59:11
**large** [1] - 39:8
**largely** [1] - 68:23

**Lasalle** [1] - 2:3
**last** [14] - 6:22, 9:22, 12:1, 13:22, 16:20, 17:24, 19:12, 23:2, 24:8, 30:3, 32:12, 45:25, 46:1, 71:8
**late** [4] - 14:13, 24:24, 35:24, 47:6
**law** [4] - 47:11, 47:12, 49:12, 50:6
**LAW** [1] - 2:2
**lawyer** [1] - 68:12
**lead** [1] - 4:13
**least** [4] - 6:4, 13:12, 30:6, 67:17
**leave** [9] - 10:18, 11:3, 19:12, 19:14, 20:7, 38:13, 41:11, 42:12, 42:14
**left** [5] - 9:9, 9:10, 9:11, 42:20, 50:9
**legal** [3] - 7:5, 47:9, 50:1
**legitimate** [1] - 73:1
**less** [1] - 31:22
**less-important** [1] - 31:22
**letter** [24] - 4:16, 15:6, 15:9, 15:12, 15:14, 16:15, 17:21, 18:14, 20:15, 20:18, 21:6, 21:7, 21:9, 22:1, 22:3, 22:12, 23:13, 25:14, 28:20, 29:17, 29:20, 47:11, 48:11
**letters** [1] - 49:1
**level** [3] - 21:15, 21:19, 39:5
**LIABILITY** [1] - 1:4
**Life** [2] - 44:8, 60:8
**light** [3] - 42:14, 71:13, 71:14
**likely** [1] - 38:9
**limit** [3] - 37:14, 51:24, 58:4
**limitation** [1] - 64:20
**Limited** [1] - 55:24
**limited** [3] - 56:18, 57:8, 66:6
**line** [4] - 48:23, 50:5, 65:24
**Linhai** [11] - 43:7, 45:11, 55:23, 57:12, 57:20, 58:19, 59:12, 59:14, 59:22, 59:25
**LINHAI** [1] - 43:7
**Linhai's** [1] - 59:11
**listed** [2] - 34:11, 46:9
**literally** [1] - 16:15
**litigation** [5] - 9:15,

48:20, 49:3, 49:15, 49:23
**LITIGATION** [1] - 1:4
**litigation-wide** [1] - 9:15
**LLC** [5] - 1:13, 1:20, 2:9, 2:17, 2:20
**LLP** [3] - 2:6, 2:10, 2:14
**LOCKARD** [4] - 2:14, 11:13, 27:3, 29:11
**Lockard** [3] - 11:13, 27:3, 28:16
**log** [3] - 5:5, 47:20, 48:5
**logger** [1] - 19:18
**logistical** [2] - 15:2
**Logistics** [1] - 62:3
**look** [14] - 17:9, 18:5, 27:8, 33:13, 37:9, 37:10, 37:11, 38:7, 39:14, 39:20, 39:23, 49:25, 55:8, 60:3
**looked** [5] - 14:16, 51:6, 51:7, 57:19, 60:13
**looking** [12] - 6:8, 18:20, 32:21, 39:17, 52:9, 57:2, 65:2, 65:9, 65:13, 65:14, 65:20, 71:15
**looks** [1] - 4:10
**Lori** [1] - 4:3
**LORI** [1] - 2:15
**losartan** [1] - 56:4
**losing** [1] - 41:14
**loss** [1] - 26:12
**losses** [1] - 28:2
**Louisiana** [1] - 1:21
**love** [2] - 32:3, 32:6
**Ltd** [2] - 2:9, 2:16

## M

**Macro** [12] - 36:13, 51:4, 51:24, 58:6, 58:13, 60:14, 61:8, 61:10, 61:12, 67:10, 67:12, 67:16
**Magistrate** [1] - 3:2
**MAGISTRATE** [1] - 1:11
**mail** [1] - 37:16
**main** [1] - 4:12
**majority** [1] - 8:18
**Malvern** [1] - 43:20
**managing** [1] - 21:18
**manufacture** [1] - 56:2
**manufactured** [2] - 58:20, 60:1
**manufacturer** [1] -

68:19
**manufacturing** [4] - 35:9, 35:13, 66:25, 68:13
**March** [20] - 6:16, 7:1, 8:19, 9:1, 10:11, 10:16, 10:19, 13:25, 14:5, 14:8, 14:10, 14:11, 14:12, 14:13, 14:21, 15:18, 16:7, 18:20
**Marker** [2] - 27:6, 27:14
**Marker's** [1] - 27:15
**Market** [1] - 1:18
**Marlene** [1] - 71:19
**MARLENE** [1] - 2:3
**masse** [1] - 8:15
**massive** [1] - 23:21
**Master** [1] - 2:23
**material** [10] - 7:21, 8:7, 10:25, 31:24, 56:24, 57:2, 57:14, 58:5, 60:24
**materials** [7] - 55:7, 56:3, 56:15, 56:16, 56:20, 58:19, 59:25
**matter** [5] - 32:14, 48:12, 52:10, 55:1, 75:2
**matters** [5] - 9:12, 64:16, 65:8, 65:16, 66:4
**MAZIE** [1] - 1:13
**MDL** [2] - 3:8, 48:13
**mean** [4] - 21:16, 23:22, 37:10, 72:9
**meaningful** [1] - 39:1
**meant** [2] - 20:1, 20:5
**meantime** [2] - 25:20, 29:4
**measures** [1] - 13:16
**mechanical** [1] - 1:25
**mechanism** [1] - 21:16
**medical** [7] - 26:11, 27:5, 27:24, 28:1, 28:6, 29:2, 29:9
**meet** [11] - 18:10, 18:25, 19:18, 54:6, 56:19, 61:5, 69:10, 69:22, 70:2, 71:16, 73:6
**mention** [2] - 54:3, 64:11
**mentioned** [4] - 34:14, 43:23, 45:21, 46:1
**mere** [1] - 49:6
**Meridian** [3] - 44:22, 45:21, 48:15

**met** [2] - 13:11, 30:13
**mid** [2] - 10:19, 25:20
**mid-February** [1] - 25:20
**mid-January** [1] - 10:19
**middle** [2] - 6:14, 6:15
**might** [6] - 6:19, 16:5, 21:22, 43:6, 62:13, 62:14
**mile** [1] - 33:12
**million** [1] - 33:17
**mind** [3] - 46:16, 49:15, 66:24
**minimum** [1] - 21:1
**Minneapolis** [1] - 2:4
**Minnesota** [1] - 2:4
**minutes** [1] - 26:18
**mirror** [1] - 52:19
**misguided** [1] - 47:8
**missed** [5] - 17:22, 35:25, 64:10, 65:1, 67:1
**missing** [1] - 70:9
**misspoke** [2] - 19:25, 44:7
**Mitchell** [1] - 1:7
**modification** [1] - 30:5
**modifications** [2] - 13:9, 14:25
**moment** [2] - 4:11, 57:8
**monitoring** [1] - 26:11
**month** [9] - 9:11, 9:12, 14:5, 14:19, 14:23, 17:13, 50:25, 71:18, 73:13
**months** [4] - 9:10, 10:1, 15:3, 26:15
**morning** [3] - 12:23, 19:5, 35:23
**Morris** [7] - 35:9, 38:1, 40:5, 68:11, 68:12, 68:14, 69:23
**MORRIS** [1] - 2:6
**most** [6] - 8:17, 8:25, 12:9, 31:23, 33:5, 61:19
**motion** [7] - 19:14, 20:7, 21:11, 21:12, 23:9, 23:12, 43:22
**motions** [1] - 24:6, 30:8
**mountain** [1] - 39:9
**move** [9] - 10:9, 11:8, 14:3, 14:4, 20:2, 24:9, 33:24, 38:16, 46:17
**moved** [5] - 13:25, 14:19, 18:4, 18:5,

32:19
**moving** [6] - 3:5, 11:22, 33:6, 34:6, 51:18, 68:16
**MR** [68] - 3:18, 3:20, 4:1, 4:6, 4:8, 4:21, 5:11, 5:16, 5:22, 6:13, 6:20, 8:13, 12:4, 12:15, 12:19, 13:4, 15:10, 16:9, 18:18, 19:24, 20:4, 20:9, 20:12, 20:14, 21:10, 22:2, 22:10, 22:14, 22:17, 23:14, 23:21, 25:3, 25:8, 25:12, 26:8, 27:22, 28:24, 30:17, 31:8, 35:8, 35:18, 35:20, 36:1, 38:1, 40:4, 51:15, 53:10, 54:24, 57:10, 58:23, 59:2, 59:5, 59:9, 61:1, 61:17, 61:19, 63:24, 64:24, 65:19, 66:22, 67:4, 67:23, 67:25, 72:13, 72:15, 73:18, 74:5, 74:10
**MS** [56] - 3:22, 4:3, 11:13, 27:3, 29:11, 31:25, 32:20, 33:23, 38:14, 39:22, 42:16, 43:9, 43:13, 43:16, 44:6, 44:12, 44:15, 44:21, 44:24, 45:2, 45:6, 45:10, 45:14, 45:16, 45:20, 46:2, 46:4, 46:7, 46:15, 46:24, 47:2, 48:8, 50:11, 50:14, 50:20, 53:7, 54:2, 54:21, 55:23, 56:17, 57:1, 57:5, 60:8, 60:20, 62:2, 62:20, 63:6, 64:8, 65:4, 65:14, 66:8, 66:11, 66:20, 69:15, 69:17, 71:19
**multiple** [2] - 7:17, 23:5
**must** [1] - 36:15
**mute** [2] - 3:14, 6:19
**mycosamine** [1] - 58:8
**Mylan** [22] - 2:13, 4:7, 4:23, 5:1, 5:15, 5:20, 5:21, 5:24, 5:25, 6:3, 6:7, 6:15, 7:24, 8:4, 8:9, 8:21, 10:22, 33:21, 44:25, 45:8, 56:22, 67:5
**myriad** [1] - 65:3

## N

**name** [2] - 3:13, 54:11
**named** [3] - 5:24, 34:1, 40:25
**names** [2] - 15:7, 16:19
**narrow** [11] - 5:22, 56:19, 61:7, 66:1, 68:7, 69:1, 69:6, 69:19, 70:6, 71:14, 71:23
**narrowed** [1] - 69:23
**narrowing** [2] - 68:24, 70:11
**narrowly** [4] - 55:14, 58:15, 68:17, 68:22
**NDMA** [2] - 33:4, 56:21
**NE** [1] - 2:15
**near** [2] - 30:6, 32:17
**neatly** [1] - 65:22
**necessary** [2] - 47:19, 48:5
**need** [24] - 19:17, 21:22, 21:23, 23:12, 24:1, 26:6, 28:6, 29:1, 31:20, 32:25, 33:2, 34:15, 35:1, 38:21, 39:12, 56:10, 59:14, 64:6, 66:23, 68:7, 72:24, 73:2, 74:3
**needed** [1] - 24:16
**needs** [1] - 22:10
**negative** [1] - 39:1
**negotiations** [1] - 4:22
**never** [1] - 25:8
**new** [4] - 14:2, 17:2, 30:12, 30:16
**NEW** [1] - 1:1
**New** [6] - 1:8, 1:15, 1:21, 15:22, 15:23, 36:23
**news** [1] - 55:3
**next** [10] - 54:1, 54:10, 55:22, 55:23, 60:7, 60:8, 61:16, 62:1, 62:2, 71:3
**nine** [5] - 34:24, 42:23, 43:3, 43:4, 45:19
**non** [1] - 73:21
**non-subpoena** [1] - 73:21
**none** [2] - 66:20, 66:23
**nonmaterial** [1] - 7:22
**nonparty** [1] - 40:11
**nonresponsive** [1] - 10:24
**notation** [1] - 15:17

**note** [3] - 34:3, 64:14, 71:21
**notes** [3] - 42:17, 43:10, 64:9
**nothing** [3] - 29:2, 68:20, 74:10
**notice** [4] - 10:1, 20:25, 37:1, 37:4
**noticed** [1] - 11:18
**notices** [2] - 62:9, 62:24
**notification** [1] - 36:3
**November** [3] - 36:23, 61:4, 69:3
**NUMBER** [1] - 1:3
**number** [6] - 15:18, 16:6, 33:25, 34:2, 46:7, 70:17
**Number** [5] - 3:9, 12:10, 37:1, 43:20
**numbers** [2] - 8:17, 9:4
**numerous** [2] - 49:13, 50:6

## O

**object** [20] - 18:12, 24:11, 34:4, 36:6, 36:8, 36:11, 36:14, 36:17, 36:19, 36:25, 37:5, 37:17, 42:5, 57:20, 58:14, 58:21, 59:10, 59:21, 61:12, 69:14
**objected** [7] - 34:4, 44:19, 45:23, 55:3, 55:4, 55:11, 61:2
**objecting** [1] - 60:16
**objection** [19] - 34:5, 36:15, 37:2, 37:8, 37:9, 37:17, 51:18, 54:22, 57:9, 57:25, 58:24, 60:25, 63:18, 63:23, 63:25, 64:1, 65:18, 73:1
**objections** [13] - 34:19, 34:22, 34:25, 35:1, 37:15, 42:20, 44:9, 49:8, 50:15, 52:4, 52:5, 64:13, 67:14
**obligated** [1] - 26:25
**obligation** [1] - 52:22
**obligations** [1] - 19:1
**obtain** [1] - 26:25
**obviously** [4] - 6:1, 12:20, 48:2, 64:1
**occasions** [1] - 50:7
**occur** [2] - 30:10, 31:14

**occurring** [1] - 28:10
**October** [3] - 61:4, 68:7, 69:2
**OF** [1] - 1:1
**offer** [1] - 40:7
**offered** [3] - 6:6, 6:25, 8:19
**offering** [1] - 6:15
**Official** [1] - 1:23
**once** [4] - 18:11, 32:8, 69:24, 72:3
**one** [48] - 4:25, 6:4, 8:2, 12:12, 13:6, 14:11, 15:17, 15:21, 16:23, 17:16, 18:18, 19:25, 20:1, 30:3, 32:11, 32:15, 32:25, 33:9, 33:17, 33:18, 34:19, 36:7, 41:7, 43:19, 43:25, 45:12, 45:25, 46:1, 46:13, 49:14, 50:13, 50:15, 50:19, 54:5, 54:10, 55:23, 56:12, 56:13, 60:16, 62:5, 63:17, 64:9, 64:17, 65:23, 67:6, 72:19
**One** [1] - 2:12
**ones** [7] - 24:5, 31:22, 45:9, 45:21, 46:16, 46:18, 55:13
**open** [2] - 3:1, 66:24
**opinion** [2] - 49:16, 57:18
**opinions** [2] - 49:13, 49:14
**opportunity** [9] - 18:2, 22:23, 29:16, 37:5, 42:22, 43:2, 48:4, 71:5, 71:16
**oppose** [3] - 21:12, 21:23, 25:15
**opposed** [3] - 4:25, 24:18, 50:1
**opposition** [2] - 38:5, 55:6
**ORAL** [1] - 1:6
**order** [27] - 5:7, 5:17, 10:12, 15:3, 16:11, 16:17, 16:23, 17:7, 18:15, 19:15, 20:2, 20:7, 21:11, 23:9, 29:6, 30:5, 34:4, 43:11, 58:6, 59:12, 68:17, 69:4, 69:6, 69:25, 73:20, 74:15
**Order** [8] - 36:13, 51:5, 51:24, 58:14, 60:15, 61:8, 61:11, 61:12

**ordered** [7] - 12:7, 12:8, 16:20, 25:20, 26:2, 26:4, 31:13
**ordering** [1] - 11:4
**orders** [3] - 18:13, 27:9, 36:12
**Orders** [1] - 67:12
**original** [1] - 22:5
**Orleans** [1] - 1:21
**otherwise** [2] - 27:1, 39:4
**out-of** [1] - 28:1
**outset** [1] - 72:17
**outside** [5] - 10:4, 13:18, 47:10, 47:13, 49:7
**overall** [1] - 67:16
**overarching** [1] - 33:25
**overbreadth** [2] - 55:5, 64:1
**overbroad** [3] - 55:12, 58:1, 67:11
**overlapping** [1] - 18:6
**overruled** [3] - 28:3, 37:2, 37:8
**overrules** [1] - 37:14
**overseas** [1] - 41:2
**overwhelming** [1] - 8:17
**owned** [1] - 56:6
**Oxford** [1] - 2:12

## P

**P-R-O-P-H-A-R-M-A** [1] - 45:16
**P.C** [2] - 1:16, 2:18
**p.m** [4] - 1:9, 3:2, 35:18, 74:23
**Page** [6] - 43:14, 46:9, 50:21, 55:25, 60:9, 64:14
**page** [1] - 50:16
**Pages** [1] - 54:14
**painstaking** [1] - 72:1
**papers** [3] - 22:5, 38:7, 68:16
**paramount** [1] - 53:24
**paraphrase** [1] - 38:18
**paraphrasing** [1] - 24:3
**Parkway** [2] - 1:14, 2:19
**part** [2] - 13:19, 63:6
**particular** [3] - 6:11, 32:16, 67:15
**parties** [38] - 4:2, 4:17, 4:20, 8:14, 10:1, 10:6, 10:14, 11:3, 11:6, 11:10, 11:25,

18:25, 19:18, 20:18, 27:18, 30:13, 30:19, 30:25, 31:1, 31:4, 31:8, 31:10, 31:12, 31:14, 31:15, 32:7, 40:24, 41:3, 41:23, 56:10, 68:4, 69:23, 70:20, 71:5, 71:24, 72:21, 73:4, 73:11
**parties'** [3] - 8:1, 15:25, 30:8
**party** [13] - 12:15, 13:10, 30:22, 32:13, 36:6, 40:10, 41:7, 47:16, 62:25, 68:18, 69:9, 70:4, 71:7
**party's** [2] - 41:24, 42:6
**patients** [3] - 62:12, 62:25, 63:7
**pay** [5] - 26:21, 27:10, 27:11, 27:19, 29:16
**payers** [1] - 62:25
**paying** [1] - 28:11
**paywall** [1] - 29:8
**Pedano** [2] - 1:23, 75:5
**pencils** [2] - 70:21, 71:22
**pending** [1] - 14:22
**Pennsylvania** [4] - 1:18, 2:8, 2:12, 2:20
**people** [6] - 9:4, 14:9, 14:11, 16:20, 17:20, 21:19
**percent** [6] - 8:18, 8:19, 10:10, 58:2, 70:9, 71:1
**perfectly** [3] - 40:6, 58:24, 67:2
**performed** [2] - 54:15, 55:7
**period** [6] - 5:5, 5:7, 10:17, 14:1, 30:23
**permit** [1] - 23:17
**permitted** [3] - 55:19, 59:24, 61:10
**person's** [1] - 6:5
**personal** [1] - 15:23
**perspective** [1] - 24:25
**Pharma** [3] - 2:17, 2:20, 2:21
**Pharmaceutical** [1] - 2:16
**Pharmaceuticals** [4] - 2:8, 2:9, 2:13, 2:17
**Pharmachem** [1] - 43:18
**pharmacovigilance**

[2] - 64:15, 65:7
**Philadelphia** [2] - 1:18, 2:8
**phone** [10] - 3:14, 25:9, 42:3, 53:1, 70:16, 72:19, 72:20, 73:12, 74:12, 74:18
**phrase** [1] - 57:14
**physicians** [1] - 62:25
**PI** [1] - 26:23
**picked** [1] - 63:11
**Piedmont** [1] - 2:15
**PIETRAGALLO** [1] - 2:10
**Pittsburgh** [1] - 2:12
**place** [2] - 18:13, 62:15
**placed** [2] - 30:7, 67:17
**plaintiff** [10] - 11:17, 26:21, 27:7, 31:19, 33:22, 61:6, 63:20, 66:21, 68:3
**Plaintiffs** [4] - 1:15, 1:19, 1:22, 2:4
**plaintiffs** [80] - 3:10, 3:16, 3:19, 3:21, 3:23, 9:15, 10:6, 11:20, 13:24, 14:2, 14:6, 14:7, 19:2, 19:5, 19:6, 19:12, 19:14, 20:23, 21:1, 23:2, 25:15, 26:9, 27:10, 27:11, 27:15, 27:19, 27:20, 27:23, 28:1, 29:1, 29:14, 29:18, 31:1, 31:9, 31:17, 31:20, 32:1, 33:8, 33:10, 37:3, 37:11, 37:15, 40:9, 40:12, 40:14, 41:11, 47:7, 47:21, 51:25, 52:2, 52:6, 52:15, 52:20, 53:14, 53:21, 54:25, 55:5, 55:14, 55:21, 58:4, 58:16, 59:16, 59:24, 61:9, 61:11, 62:15, 63:5, 63:12, 63:13, 65:1, 68:6, 68:10, 68:15, 68:17, 68:23, 69:5, 69:6, 71:6, 72:22, 74:5
**plaintiffs'** [21] - 7:11, 8:5, 11:7, 11:9, 11:16, 11:21, 17:9, 22:21, 33:16, 38:5, 40:11, 47:19, 55:18, 58:18, 59:7, 61:13, 61:15, 67:11, 68:21,

69:1, 71:14
**plans** [1] - 70:13
**played** [1] - 62:7
**pleased** [1] - 73:9
**PLLC** [1] - 2:2
**pocket** [1] - 28:2
**point** [9] - 6:16, 8:16, 12:10, 24:13, 38:16, 50:16, 61:23, 65:23, 68:23
**portion** [1] - 27:16
**position** [16] - 9:25, 11:2, 16:4, 23:4, 34:14, 39:1, 39:2, 41:13, 42:3, 50:23, 52:13, 54:14, 59:6, 59:8, 59:10, 71:21
**positions** [1] - 23:6
**possession** [10] - 38:3, 38:4, 40:10, 40:14, 40:18, 47:13, 47:16, 59:17, 59:18, 60:22
**possible** [5] - 32:4, 40:13, 40:17, 70:18, 74:14
**potential** [1] - 26:9
**potentially** [3] - 24:15, 40:17, 56:4
**power** [1] - 20:17
**PR** [1] - 62:23
**practical** [2] - 16:2, 32:13
**practice** [1] - 35:22
**precisely** [1] - 65:1
**prefer** [1] - 49:11
**prefers** [1] - 18:24
**prejudice** [3] - 7:12, 8:5, 42:5
**prejudiced** [2] - 7:19, 8:2
**premature** [1] - 16:10
**preparation** [1] - 49:22
**prepare** [4] - 15:1, 47:19, 48:5, 71:11
**prepared** [11] - 4:17, 15:7, 33:11, 33:12, 33:13, 46:22, 47:8, 47:9, 49:16, 49:19, 70:18
**preparing** [1] - 49:23
**present** [1] - 73:7
**presented** [3] - 12:9, 13:9, 22:20
**presiding** [1] - 24:23
**press** [1] - 63:1
**presumably** [1] - 25:19
**pretty** [9] - 5:3, 22:13,

39:25, 41:25, 50:16, 50:18, 57:19, 60:14, 65:8
**previous** [2] - 15:6, 67:12
**previously** [9] - 6:3, 7:14, 8:8, 9:14, 16:1, 28:17, 28:18, 36:22, 37:6
**pricing** [2] - 26:20, 68:20
**prima** [2] - 20:23, 23:3
**primary** [2] - 49:19, 49:21
**principal** [2] - 4:23, 5:14
**Prinston** [2] - 2:8, 56:22
**privacy** [1] - 36:25
**privilege** [10] - 33:21, 36:7, 42:20, 44:20, 47:15, 47:20, 48:5, 48:20, 49:5, 50:4
**privileged** [2] - 37:11, 49:17
**problem** [2] - 42:2, 51:12
**problematic** [1] - 5:8
**problems** [2] - 3:6, 17:13
**Procedure** [1] - 7:5
**procedures** [1] - 51:8
**proceedings** [3] - 67:8, 74:23, 75:2
**PROCEEDINGS** [1] - 3:1
**Proceedings** [1] - 1:25
**process** [5] - 38:17, 56:21, 65:10, 69:3, 72:10
**processes** [1] - 51:8
**produce** [18] - 7:16, 8:23, 10:12, 15:20, 18:2, 24:6, 38:21, 38:25, 41:1, 41:8, 41:17, 42:4, 48:15, 52:18, 53:17, 59:7, 59:13, 70:3
**produced** [18] - 1:25, 7:15, 7:18, 7:19, 8:8, 10:13, 17:2, 17:3, 31:13, 37:7, 39:9, 47:19, 52:4, 54:18, 55:9, 59:16, 65:15
**producing** [8] - 7:24, 13:17, 18:6, 18:19, 41:4, 56:9, 59:11, 59:21
**product** [10] - 36:7,

37:11, 42:21, 44:20, 46:22, 47:14, 48:21, 49:17, 49:20, 56:1
**production** [3] - 7:8, 39:10, 40:22
**productions** [9] - 6:1, 6:7, 6:9, 7:2, 7:12, 8:4, 8:22, 10:21, 40:15
**PRODUCTS** [1] - 1:4
**professional** [1] - 10:15
**progress** [3] - 70:16, 72:20, 73:8
**pronouncing** [1] - 43:6
**pronunciation** [1] - 45:3
**proof** [1] - 46:25
**proper** [1] - 20:21
**properly** [1] - 34:17
**ProPharma** [9] - 45:12, 45:15, 64:12, 64:23, 65:2, 65:15, 65:21, 66:3, 68:13
**proPharma** [1] - 45:15
**proportionality** [3] - 7:4, 36:18, 42:21
**proposal** [2] - 14:6, 14:22
**propose** [4] - 12:6, 14:7, 30:14, 31:1
**proposed** [16] - 12:7, 12:21, 12:22, 13:2, 13:7, 13:8, 14:17, 14:20, 19:11, 19:19, 19:20, 25:21, 26:4, 30:15, 47:17
**proposes** [1] - 15:13
**pros** [1] - 41:3
**protected** [3] - 46:21, 47:14, 50:3
**protections** [1] - 48:3
**protective** [6] - 19:15, 20:2, 20:7, 21:11, 23:9, 29:6
**protocols** [1] - 60:21
**prove** [1] - 39:1
**provide** [6] - 22:8, 26:25, 29:2, 40:12, 57:20, 58:16
**provided** [9] - 13:14, 14:2, 18:14, 19:5, 21:1, 22:18, 26:10, 52:5
**provider** [1] - 46:10
**providing** [2] - 13:19, 26:15
**proving** [1] - 72:7
**public** [1] - 62:10

**pulling** [1] - 16:16
**purported** [1] - 38:3
**purportedly** [1] - 52:8
**purpose** [7] - 48:11, 49:6, 49:19, 49:21, 49:22, 50:23, 51:22
**purposes** [1] - 59:24
**pursuant** [2] - 26:22, 58:15
**pushed** [3] - 17:4, 24:14, 30:23
**pushing** [2] - 10:16, 24:22
**put** [11] - 3:11, 3:14, 9:2, 9:5, 26:17, 47:6, 57:7, 63:1, 65:5, 71:9, 72:1
**putting** [2] - 38:25, 57:7
**Pvt** [1] - 45:1

## Q

**quality** [1] - 14:9
**quarantine** [2] - 13:21, 14:14
**quashed** [3] - 48:1, 48:2, 48:18
**questions** [1] - 32:11
**quick** [2] - 17:21, 50:16
**quickly** [2] - 50:18, 62:5
**quite** [2] - 55:4, 58:11
**quote** [2] - 21:18, 57:13

## R

**R-E-E-D** [1] - 6:25
**raise** [9] - 24:10, 42:22, 67:6, 67:20, 70:24, 72:2, 72:6, 72:9, 74:9
**raised** [17] - 9:13, 22:5, 28:19, 32:22, 34:13, 34:16, 34:23, 34:25, 38:5, 43:1, 44:9, 50:15, 61:24, 64:13, 67:10, 67:18, 72:7
**ran** [1] - 3:6
**RASPANTI** [1] - 2:10
**rather** [1] - 65:2
**Re** [1] - 20:19
**re** [1] - 23:1
**RE** [1] - 1:4
**re-briefed** [1] - 23:1
**reached** [5] - 4:23, 5:14, 21:15, 26:13, 56:8

**reaction** [1] - 57:16
**read** [7] - 16:15, 35:22, 42:10, 43:17, 49:11, 50:7, 74:19
**reading** [3] - 43:11, 43:14, 56:7
**really** [14] - 6:5, 8:14, 20:20, 24:25, 29:19, 34:24, 39:2, 39:4, 39:11, 39:20, 41:14, 64:13, 68:1, 72:24
**reason** [9] - 8:25, 10:17, 13:5, 13:19, 14:23, 32:4, 39:13, 55:3, 55:4
**reasonable** [4] - 10:15, 18:16, 47:21, 70:13
**reasonably** [1] - 17:16
**reasons** [1] - 13:6
**received** [4] - 4:16, 26:16, 54:4, 63:9
**receiving** [1] - 26:19
**recently** [1] - 12:10
**recipient** [1] - 36:16
**recipients** [2] - 37:16, 37:18
**record** [35] - 3:8, 3:12, 7:16, 11:15, 12:24, 15:17, 21:23, 22:15, 23:1, 23:8, 23:15, 24:17, 24:18, 25:6, 28:19, 28:22, 28:25, 33:14, 35:5, 35:12, 35:15, 37:22, 38:11, 39:14, 39:16, 39:19, 40:2, 43:17, 54:3, 58:25, 59:3, 61:20, 67:18, 73:2, 75:2
**record's** [1] - 42:9
**recorded** [1] - 1:25
**records** [21] - 26:17, 26:18, 26:20, 26:21, 27:5, 27:6, 27:11, 27:16, 27:18, 27:24, 28:1, 28:4, 28:6, 28:8, 28:11, 28:12, 29:2, 29:5, 29:9, 29:11, 29:15
**redepose** [1] - 7:23
**Reed** [1] - 6:25
**refer** [1] - 20:5
**reference** [2] - 15:11, 71:7
**references** [1] - 28:17
**referred** [2] - 6:24, 28:22
**referring** [3] - 12:14, 12:15, 28:25
**reflect** [2] - 25:6, 68:8

**refused** [1] - 68:23
**regard** [16] - 12:21, 12:25, 23:11, 30:2, 32:23, 33:11, 37:20, 46:20, 49:20, 49:24, 50:12, 51:20, 52:10, 52:24, 70:22, 73:5
**regarding** [14] - 11:16, 22:24, 26:9, 58:7, 58:19, 59:25, 60:17, 62:18, 63:21, 63:22, 64:23, 66:4, 66:15, 66:18
**regardless** [2] - 48:22, 61:22
**regular** [1] - 10:5
**regulations** [1] - 50:24
**regulatory** [7] - 14:10, 51:22, 51:23, 64:16, 64:18, 65:8, 65:16
**reiterate** [3] - 51:17, 61:20, 61:23
**relate** [1] - 64:18
**related** [9] - 13:24, 33:4, 51:19, 52:8, 52:9, 55:7, 58:19, 61:14, 68:2
**relates** [1] - 69:9
**relating** [5] - 54:17, 56:3, 65:15, 65:16, 66:4
**relationship** [2] - 68:9, 68:18
**relatively** [1] - 49:21
**releases** [1] - 63:1
**relevance** [5] - 22:19, 34:6, 34:15, 54:23, 67:15
**relevancy** [10] - 33:17, 36:20, 42:21, 48:19, 53:15, 53:19, 56:13, 56:14, 59:24, 61:22
**relevant** [24] - 7:14, 7:21, 8:7, 20:24, 23:3, 32:6, 48:25, 51:2, 51:3, 51:8, 52:12, 53:22, 54:18, 56:22, 57:21, 58:3, 58:11, 58:13, 60:24, 61:15, 64:17, 69:21, 70:1, 71:23
**reluctant** [1] - 41:10
**relying** [1] - 40:6
**remain** [1] - 43:23
**remaining** [2] - 70:23, 71:17
**remains** [1] - 64:3
**remember** [5] - 12:1, 12:22, 40:20, 41:7, 41:16

**remind** [1] - 13:5
**rep** [2] - 6:5, 11:18
**reply** [16] - 25:19, 35:13, 35:15, 37:25, 38:2, 38:20, 39:21, 40:7, 42:10, 47:4, 47:6, 51:18, 52:20, 59:11, 68:16, 74:19
**REPORTER** [5] - 5:9, 5:13, 20:11, 20:13, 25:10
**reporter** [2] - 3:13, 74:12
**Reporter** [1] - 1:23
**Reporter/Transcriber** [1] - 75:5
**reports** [5] - 51:23, 62:14, 62:24, 63:8, 63:22
**representation** [1] - 57:11
**representatives** [1] - 26:11
**represented** [4] - 10:23, 15:21, 15:24, 52:3
**representing** [1] - 52:15
**request** [14] - 7:11, 21:2, 37:10, 55:1, 55:19, 58:18, 58:21, 59:7, 59:20, 59:24, 61:14, 62:17, 69:4, 70:17
**requested** [4] - 14:4, 14:7, 22:22, 71:8
**requesting** [6] - 6:9, 26:10, 26:22, 28:8, 52:17, 53:22
**requests** [9] - 54:17, 55:10, 55:12, 61:3, 61:9, 65:3, 68:5, 69:7, 69:13
**required** [1] - 70:1
**requirements** [3] - 7:4, 19:1, 37:2
**requires** [1] - 5:3
**reserve** [1] - 58:14
**residual** [1] - 58:9
**resolution** [1] - 73:12
**resolve** [4] - 16:14, 17:25, 62:4, 73:7
**resolved** [7] - 5:6, 15:3, 31:12, 32:9, 37:12, 43:21, 70:19
**resources** [1] - 9:3
**respect** [4] - 13:23, 17:1, 67:11, 69:7
**respectfully** [1] -

16:10
**respond** [8] - 23:20, 23:24, 37:24, 47:11, 48:7, 52:22, 53:3, 71:20
**responded** [3] - 20:18, 37:13, 47:22
**responding** [5] - 33:16, 46:23, 48:11, 49:7, 49:22
**response** [9] - 21:8, 26:16, 29:25, 38:2, 38:23, 40:8, 40:15, 49:12, 74:7
**responses** [3] - 49:1, 52:4, 52:5
**responsibility** [1] - 52:21
**responsive** [1] - 8:8
**rest** [2] - 46:17, 56:11
**results** [4] - 33:4, 51:2, 58:7, 60:22
**Ret** [1] - 2:23
**retained** [3] - 48:10, 64:15, 65:7
**rethink** [1] - 42:3
**Return** [1] - 62:3
**review** [6] - 40:16, 47:18, 48:5, 48:6, 49:5, 69:20
**reviewing** [1] - 42:17
**revision** [1] - 58:16
**rhetorical** [1] - 24:20
**Riddell** [1] - 49:15
**ripe** [4] - 39:16, 71:1, 74:1, 74:16
**risk** [1] - 7:23
**risks** [1] - 41:18
**road** [1] - 23:10
**Road** [1] - 2:15
**role** [3] - 48:9, 62:7, 69:25
**roll** [1] - 10:14
**rolling** [1] - 72:23
**Roseland** [1] - 1:15
**routine** [1] - 48:11
**RPR** [1] - 75:5
**RUBEN** [1] - 1:17
**Ruben** [1] - 3:20
**Rule** [1] - 40:15
**rule** [11] - 16:10, 18:24, 22:6, 33:11, 33:12, 33:13, 33:15, 37:23, 38:9, 42:11, 49:11
**ruled** [10] - 23:2, 25:1, 27:11, 28:18, 32:25, 35:1, 36:22, 37:6, 51:1, 70:17
**rules** [3] - 6:18, 16:7,

37:7
**Rules** [1] - 7:4
**ruling** [18] - 7:11, 8:3, 17:1, 28:23, 36:5, 38:17, 41:19, 41:25, 42:25, 50:7, 53:14, 55:17, 59:23, 60:4, 60:5, 61:13, 66:15, 72:8
**rulings** [11] - 17:17, 18:12, 35:4, 42:14, 42:17, 42:19, 44:1, 53:20, 56:7, 70:22, 71:12
**RULINGS** [1] - 1:6
**run** [1] - 28:7

# S

**S-T-E-R-I-C-Y-C-L-E** [1] - 46:4
**safe** [1] - 74:22
**sake** [1] - 66:2
**sales** [1] - 68:20
**salespeople** [1] - 14:10
**sartan** [1] - 56:6
**saw** [1] - 71:23
**scan** [1] - 17:21
**schedule** [33] - 3:5, 4:17, 6:13, 9:7, 12:6, 12:21, 12:22, 13:2, 13:8, 13:14, 13:17, 13:19, 13:23, 14:16, 14:25, 15:25, 16:8, 16:18, 17:8, 18:3, 19:4, 19:9, 25:25, 26:1, 26:3, 30:12, 30:14, 30:16, 30:19, 30:22, 39:10, 72:1
**scheduled** [2] - 18:22, 19:16
**schedules** [1] - 16:22
**scheduling** [7] - 3:6, 4:24, 8:10, 8:12, 11:17, 16:13, 30:5
**SCHNEIDER** [1] - 1:11
**Schneider** [2] - 3:2, 3:4
**Sciences** [2] - 44:8, 60:9
**scientific** [1] - 57:18
**scope** [5] - 36:12, 56:19, 61:7, 65:11, 70:7
**screen** [1] - 16:16
**second** [2] - 63:6, 72:4
**Secret** [1] - 5:5
**secretive** [1] - 37:7
**section** [1] - 68:21

secure [1] - 21:3
see [15] - 16:19, 18:5, 18:9, 19:2, 19:18, 28:19, 28:22, 35:5, 35:21, 35:25, 43:4, 46:8, 54:12, 74:14, 74:19
seeing [2] - 16:19, 58:15
seeking [7] - 21:10, 23:4, 23:5, 28:1, 56:3, 64:18, 70:4
seeks [1] - 5:17
seem [3] - 30:8, 52:6, 71:11
sees [1] - 35:24
selected [1] - 6:3
send [2] - 52:7, 74:13
sending [1] - 18:14
sense [1] - 38:18
sent [7] - 5:5, 15:13, 16:15, 16:23, 20:14, 55:11, 64:19
Sentry [1] - 2:19
separate [1] - 24:9
separately [1] - 36:2
serve [6] - 31:1, 37:18, 52:1, 55:21, 70:8, 70:10
served [9] - 25:24, 52:2, 52:14, 52:15, 52:17, 68:3, 68:13, 68:14, 69:12
service [14] - 33:15, 37:20, 38:17, 51:25, 52:17, 52:22, 53:18, 56:13, 57:7, 59:6, 59:13, 60:2, 61:21, 61:24
serving [1] - 68:8
set [3] - 9:7, 10:4, 60:13
Seth [5] - 4:2, 20:12, 30:17, 67:25, 72:13
SETH [1] - 2:6
settle [1] - 63:15
seven [5] - 17:20, 43:5, 45:18, 46:12, 69:8
several [2] - 11:19, 41:16
severely [1] - 17:19
shame [1] - 24:14
share [2] - 27:10, 27:12
sharing [1] - 27:13
sharpen [2] - 70:21, 71:22
Shiva [1] - 43:18
short [2] - 10:17,

59:20
show [1] - 48:25
showing [2] - 38:22, 39:3
shown [1] - 20:23
shows [2] - 51:1, 68:14
sick [1] - 66:11
side [1] - 17:9
sides [1] - 30:20
signed [1] - 30:20
significant [1] - 15:24
similar [1] - 5:17
simply [1] - 60:12
single [2] - 32:23, 32:25
sit [1] - 21:25
situation [2] - 9:3, 41:22
six [12] - 17:20, 34:10, 36:24, 43:5, 45:9, 45:18, 46:12, 46:14, 50:9, 50:10, 50:12, 69:8
SLATER [17] - 1:13, 1:14, 3:18, 4:21, 5:11, 5:16, 5:22, 6:13, 8:13, 16:9, 18:18, 19:24, 21:10, 23:21, 25:8, 25:12, 74:5
Slater [15] - 3:18, 5:12, 6:12, 6:23, 7:13, 8:11, 9:25, 16:8, 16:9, 19:24, 20:5, 21:8, 23:20, 25:12, 25:14
slater [1] - 5:10
sleeves [2] - 10:14, 72:23
SLU [1] - 53:12
Snyder [1] - 6:24
so-called [2] - 22:19
Solco [2] - 2:9, 56:22
sold [3] - 53:6, 53:24, 54:20
sole [1] - 48:10
solvents [2] - 56:20, 58:10
someone [2] - 44:4, 67:22
soon [3] - 5:8, 70:18, 74:14
sooner [1] - 32:9
sorry [14] - 5:11, 12:13, 19:14, 20:12, 25:4, 25:5, 25:10, 25:12, 35:8, 35:11, 43:12, 64:25, 65:12, 66:23

sound [1] - 49:8
sounds [1] - 18:8
South [1] - 2:7
Spanish [3] - 51:20, 51:21, 52:14
speaking [5] - 3:14, 6:18, 20:11, 25:11, 44:4
Special [1] - 2:23
specific [23] - 4:25, 13:2, 15:14, 32:22, 32:24, 34:5, 34:15, 34:18, 34:22, 34:25, 35:2, 42:22, 42:25, 43:1, 43:3, 44:9, 50:15, 64:13, 67:13, 69:10, 72:5, 73:5, 73:24
specifically [3] - 41:9, 51:20, 57:12
spell [1] - 46:3
spend [1] - 69:21
spent [1] - 73:22
spread [3] - 8:16, 11:5, 11:10
square [1] - 46:18
squarely [1] - 60:14
squeeze [1] - 9:21
stamp [1] - 29:7
stand [1] - 49:2
standalone [1] - 26:24
standing [10] - 33:11, 35:7, 36:5, 36:6, 36:8, 36:11, 36:14, 36:24, 37:17, 69:14
standpoint [1] - 13:12
STANOCH [4] - 1:17, 26:8, 27:22, 28:24
Stanoch [4] - 26:8, 27:22, 28:16, 28:24
start [16] - 3:4, 3:9, 3:16, 4:13, 5:7, 9:8, 10:2, 10:11, 10:18, 11:4, 12:3, 12:5, 15:1, 28:11, 46:16, 50:20
started [1] - 73:21
starter [1] - 68:19
starting [8] - 10:6, 56:20, 57:12, 57:13, 57:14, 57:21, 58:12, 73:9
state [2] - 58:25, 59:2
State [1] - 5:5
statements [1] - 62:23
States [9] - 3:2, 51:9, 51:13, 53:6, 53:24, 54:20, 64:20, 65:17, 66:5
STATES [2] - 1:1, 1:11

stating [1] - 34:6
STATUS [1] - 1:5
stay [1] - 74:22
stenography [1] - 1:25
Stericycle [3] - 45:22, 46:2, 62:3
still [5] - 8:14, 39:8, 44:14, 51:3, 57:21
stonewall [1] - 69:11
story [1] - 49:4
STOY [2] - 2:11, 67:4
Stoy [1] - 67:5
straightforward [1] - 5:3
Street [3] - 1:18, 1:21, 2:7
Streets [1] - 1:8
stress [1] - 40:8
strictly [1] - 51:7
strongly [1] - 18:12
struggling [1] - 65:21
subject [4] - 14:25, 20:17, 20:25, 31:15, 32:5, 55:1, 55:20, 61:15
submission [2] - 33:17, 35:24
submit [3] - 5:17, 29:17, 29:20
submitting [1] - 21:13
subpoena [50] - 4:13, 4:19, 19:23, 20:17, 26:7, 27:1, 29:24, 30:2, 30:11, 30:16, 34:5, 36:16, 43:21, 45:23, 48:18, 53:15, 54:23, 55:1, 55:6, 55:9, 55:10, 55:13, 55:15, 55:18, 55:21, 57:8, 58:1, 58:15, 59:13, 61:2, 61:3, 61:4, 61:8, 61:15, 64:2, 64:4, 65:2, 65:21, 65:25, 66:3, 66:6, 68:11, 68:17, 68:21, 68:22, 69:12, 69:13, 73:21, 73:23
subpoenaed [1] - 38:4
subpoenas [54] - 30:25, 31:2, 31:6, 31:11, 31:15, 31:18, 31:19, 31:20, 31:21, 31:23, 32:5, 32:13, 32:15, 32:16, 33:1, 33:9, 33:20, 34:4, 36:6, 36:9, 36:11, 37:5, 37:13, 37:18, 43:18, 44:14, 44:15, 44:18, 48:1, 50:9,

50:13, 52:7, 52:22, 55:4, 66:15, 66:19, 67:11, 68:3, 68:7, 69:2, 69:5, 69:18, 69:19, 69:24, 70:8, 70:11, 70:19, 70:23, 71:7, 71:9, 71:15, 72:18, 73:5
**subsequent** [1] - 54:9
**subsidiaries** [2] - 41:1, 52:7
**subsidiary** [4] - 41:9, 41:12, 41:18, 56:6
**subsidiary's** [1] - 41:20
**substantiate** [1] - 28:7
**substantively** [1] - 54:13
**successor** [2] - 38:12, 42:12
**sufficient** [7] - 33:14, 37:4, 37:23, 39:16, 60:4, 71:2, 71:4
**sufficiently** [2] - 40:2, 42:9
**suggest** [1] - 33:24
**suggested** [1] - 47:25
**suggestion** [1] - 33:10
**Suite** [3] - 1:18, 2:3, 2:15
**sum** [1] - 8:3
**summarize** [1] - 65:13
**supplement** [3] - 15:8, 22:15, 25:14
**supplemental** [1] - 23:13
**supplied** [5] - 56:1, 56:15, 57:3, 57:12, 58:20
**support** [1] - 47:12
**supporting** [1] - 49:25
**suppose** [1] - 33:18
**supposed** [1] - 24:18
**surprise** [2] - 28:13, 29:14
**sustains** [1] - 63:18
**sympathetic** [2] - 9:25, 30:5

**T**

**tailor** [4] - 54:25, 55:14, 61:9, 68:17
**tailored** [1] - 58:15
**talks** [1] - 3:13
**TAR** [2] - 5:15, 8:23
**team** [1] - 18:10
**Technologies** [1] - 53:12
**tee** [2] - 42:2, 71:17
**teed** [4] - 25:19, 30:8,

42:1, 71:3
**teeth** [1] - 9:7
**TELEPHONIC** [1] - 1:5
**telephonic** [2] - 25:17, 44:1
**Telstar** [1] - 53:11
**ten** [2] - 23:22, 55:10
**tentative** [2] - 25:21, 26:4
**term** [1] - 21:18
**terrific** [1] - 5:19
**test** [2] - 14:21, 60:22
**testing** [20] - 13:24, 14:9, 14:11, 33:4, 49:2, 51:2, 54:15, 54:17, 54:19, 55:7, 55:19, 58:5, 58:7, 60:11, 60:13, 60:18, 60:21, 61:10, 61:14
**testing-related** [1] - 13:24
**tests** [1] - 60:20
**Teva** [7] - 2:16, 2:17, 4:4, 5:18, 8:21, 11:14, 56:23
**thankfully** [2] - 66:8, 66:9
**thanking** [1] - 3:4
**THE** [118] - 1:1, 1:11, 3:3, 3:24, 4:10, 5:9, 5:13, 5:14, 5:17, 6:11, 6:17, 7:10, 9:24, 11:23, 12:12, 12:17, 12:20, 15:5, 15:16, 18:17, 18:23, 20:5, 20:11, 20:13, 21:4, 21:25, 22:9, 22:12, 22:15, 22:25, 23:19, 25:2, 25:4, 25:10, 25:13, 25:18, 28:15, 29:9, 29:21, 30:1, 31:3, 31:17, 32:11, 33:7, 35:3, 35:17, 35:19, 35:21, 36:4, 38:6, 39:14, 39:25, 40:20, 43:4, 43:12, 43:14, 44:4, 44:11, 44:13, 44:17, 44:22, 44:25, 45:4, 45:8, 45:13, 45:15, 45:17, 45:25, 46:3, 46:5, 46:12, 46:19, 46:25, 48:7, 49:10, 50:12, 50:19, 51:14, 52:24, 53:8, 53:14, 54:19, 54:22, 55:17, 56:12, 56:24, 57:2, 57:6, 58:17, 59:1, 59:4, 59:6, 59:23, 60:17, 60:23, 61:13,

61:18, 61:24, 62:17, 63:4, 63:17, 64:4, 64:22, 65:12, 65:18, 66:2, 66:9, 66:13, 67:2, 67:19, 67:24, 69:16, 70:15, 72:14, 72:16, 73:20, 74:8, 74:11
**theme** [1] - 72:3
**theory** [2] - 58:4, 65:20
**they've** [3] - 24:12, 50:14
**thinking** [1] - 23:22
**third** [23] - 9:18, 9:19, 30:22, 30:25, 31:1, 31:4, 31:14, 31:15, 32:13, 36:6, 40:10, 40:24, 41:22, 41:24, 42:6, 47:16, 62:25, 68:4, 68:18, 69:9, 70:4, 71:7, 71:24
**third-party** [7] - 30:22, 32:13, 36:6, 40:10, 62:25, 70:4, 71:7
**THOMAS** [1] - 2:23
**three** [10] - 6:7, 6:11, 6:23, 7:2, 8:4, 9:10, 34:19, 36:14, 37:9, 46:13
**throughout** [1] - 18:24
**Tiefenbacher** [1] - 43:19
**TIEFENBACHER** [1] - 43:19
**timing** [1] - 17:1
**today** [32] - 4:20, 13:9, 14:6, 14:25, 15:13, 15:15, 16:15, 16:23, 17:8, 18:13, 18:14, 18:15, 25:14, 27:4, 30:20, 30:21, 30:24, 32:3, 33:3, 44:2, 49:2, 63:15, 67:8, 68:25, 69:6, 70:12, 70:19, 71:13, 71:24, 72:4, 72:12, 73:6
**together** [2] - 4:15, 72:1
**Tom** [1] - 25:5
**tomorrow** [2] - 23:23, 32:19
**took** [2] - 68:15, 71:25
**top** [1] - 71:9
**topic** [3] - 35:16, 57:19, 64:2
**total** [1] - 58:2
**totally** [2] - 41:21
**touch** [2] - 20:9, 54:5
**towards** [2] - 19:16,

46:6
**toxic** [1] - 58:9
**ToxRox** [2] - 44:22, 45:22
**transcript** [5] - 1:25, 20:3, 70:18, 74:14, 75:1
**transcription** [1] - 1:25
**TRAURIG** [1] - 2:14
**Traurig** [1] - 4:4
**travel** [3] - 13:18, 15:3, 16:3
**treat** [1] - 29:4
**treated** [1] - 29:12
**tremendous** [2] - 70:16, 72:20
**triage** [1] - 32:20
**tried** [2] - 6:6, 68:10
**Trischler** [5] - 4:7, 5:1, 6:17, 6:18, 6:21
**TRISCHLER** [3] - 2:11, 4:6, 6:20
**true** [4] - 15:17, 39:5, 54:8, 55:9
**try** [1] - 29:19
**trying** [3] - 8:14, 17:10, 28:7
**turns** [2] - 7:13, 7:20, 26:1
**two** [21] - 6:7, 12:9, 16:1, 20:22, 22:19, 23:17, 23:18, 23:19, 25:13, 34:19, 36:10, 43:5, 45:9, 45:18, 46:13, 46:14, 46:16, 48:3, 48:9, 56:12, 62:2
**type** [1] - 23:25
**types** [1] - 62:23
**typical** [1] - 29:15

**U**

**U.S** [3] - 1:7, 2:9, 51:11
**ultimately** [3] - 17:17, 41:23, 56:2
**umpteen** [1] - 10:1
**unable** [1] - 6:7
**unacceptable** [2] - 10:10, 10:15
**unavoidable** [1] - 3:6
**uncomfortable** [1] - 39:18
**under** [4] - 13:8, 29:6, 46:10, 61:10
**underscores** [1] - 48:18
**understood** [5] - 39:22, 53:1, 53:4,

62:17, 72:8
**undue** [1] - 26:4
**unfair** [2] - 11:8, 16:24
**union** [1] - 50:24
**unique** [3] - 13:15, 16:4, 19:13
**United** [9] - 3:2, 51:9, 51:13, 53:6, 53:24, 54:20, 64:19, 65:17, 66:5
**UNITED** [2] - 1:1, 1:11
**unless** [1] - 17:21
**unlimited** [2] - 9:3, 9:4
**unquote** [2] - 21:18, 57:13
**unsympathetic** [2] - 10:20, 72:16
**up** [25] - 4:22, 5:1, 5:8, 10:10, 10:14, 13:21, 13:25, 14:3, 14:4, 14:19, 16:16, 17:19, 17:25, 20:3, 25:19, 27:4, 30:8, 41:14, 42:1, 42:2, 46:18, 60:13, 71:3, 71:18, 72:23
**urged** [3] - 41:2, 41:13
**US** [2] - 51:3, 51:10
**US-grade** [2] - 51:3, 51:10
**USA** [2] - 2:17, 2:21

**V**

**valid** [1] - 49:9
**VALSARTAN** [1] - 1:4
**Valsartan** [1] - 3:8
**valsartan** [26] - 51:3, 51:10, 51:13, 52:9, 53:5, 53:23, 54:16, 54:19, 55:8, 55:19, 56:2, 56:3, 57:6, 57:17, 57:23, 58:8, 58:10, 58:20, 59:25, 62:18, 63:22, 64:19, 65:17
**Vanaskie** [2] - 24:23, 25:6
**VANASKIE** [2] - 2:23, 25:5
**vast** [1] - 55:5
**vendor** [4] - 26:17, 26:19, 27:6, 29:16
**vendors** [1] - 62:6
**via** [2] - 26:10, 26:25
**VICTORIA** [1] - 2:14
**Victoria** [2] - 11:13, 27:3
**view** [4] - 20:20, 31:19, 31:20, 32:9
**violate** [1] - 37:1

**violation** [1] - 67:12
**virtually** [3] - 9:12, 9:22, 68:3
**volunteered** [1] - 48:15
**VXL** [5] - 43:7, 44:8, 60:8, 61:3, 61:20

# W

**wait** [1] - 44:2
**waived** [1] - 24:12
**walks** [1] - 17:7
**wants** [6] - 3:11, 7:5, 16:8, 16:17, 63:20, 67:22
**warning** [1] - 47:11
**waste** [1] - 65:24
**website** [1] - 27:15
**week** [7] - 13:10, 14:18, 18:20, 23:17, 23:24, 71:3
**weeks** [7] - 12:24, 16:21, 18:21, 23:18, 23:19, 25:13, 28:10
**weigh** [1] - 41:3
**weighed** [1] - 41:18
**welcome** [1] - 55:3
**WERNER** [1] - 2:18
**Westlaw** [2] - 20:19, 36:22
**whatsoever** [1] - 10:18
**Whiteley** [1] - 3:23
**WHITELEY** [3] - 1:20, 1:20, 3:22
**whittled** [1] - 9:18
**wholesaler** [1] - 4:9
**wholly** [2] - 55:11, 56:6
**wide** [1] - 9:15
**wife** [2] - 14:13, 14:15
**willing** [8] - 21:25, 54:25, 55:14, 58:4, 58:16, 61:9, 69:1, 69:19
**willingness** [1] - 71:14
**WITH** [1] - 1:6
**withdraw** [2] - 34:10, 43:16
**withdrawing** [1] - 69:18
**withdrawn** [2] - 43:18, 68:10
**withdrew** [1] - 45:7
**witness** [6] - 6:4, 7:23, 13:10, 14:18, 18:19, 20:6
**witnesses** [35] - 5:23, 6:1, 6:10, 6:12, 6:15, 7:3, 8:4, 8:16, 8:17,

8:23, 8:24, 9:1, 9:22, 10:12, 13:17, 13:20, 13:24, 14:8, 14:21, 15:1, 15:7, 15:14, 15:20, 17:2, 18:5, 19:17, 20:16, 20:22, 20:24, 20:25, 21:15, 24:3, 24:4, 25:23, 28:13
**witnesses'** [3] - 22:19, 25:21, 26:5
**wonder** [1] - 42:2
**word** [1] - 34:6
**works** [1] - 48:15
**world** [1] - 52:24
**wound** [1] - 41:14
**written** [2] - 49:13, 50:6

# Y

**Year** [2] - 15:22, 15:23
**year** [1] - 17:2
**yesterday** [3] - 35:14, 35:15, 47:5

# Z

**Zhejiang** [1] - 2:9
**ZHP** [95] - 4:2, 5:4, 8:10, 8:20, 9:14, 12:2, 12:14, 12:15, 12:17, 12:21, 13:1, 13:2, 13:7, 13:10, 13:15, 13:16, 13:24, 14:18, 15:18, 15:19, 16:1, 16:4, 17:2, 17:14, 19:2, 19:10, 19:14, 20:7, 25:15, 25:18, 25:20, 25:25, 26:4, 33:20, 43:6, 43:8, 43:21, 43:23, 43:24, 44:9, 44:13, 45:11, 45:13, 46:11, 46:12, 46:14, 50:9, 50:22, 51:14, 51:17, 51:19, 51:22, 52:17, 53:9, 53:16, 53:17, 53:19, 54:11, 54:16, 54:23, 55:3, 55:8, 55:9, 55:11, 56:7, 56:8, 56:19, 57:8, 57:11, 57:19, 59:7, 59:11, 59:13, 59:14, 59:15, 59:17, 59:21, 60:10, 60:19, 60:23, 61:2, 61:4, 61:11, 61:14, 63:17, 64:22, 65:7, 65:16, 65:18, 66:4, 68:2, 69:8, 70:2

**ZHP's** [6] - 13:12, 15:18, 16:5, 55:19, 59:10
**ZHP-related** [1] - 51:19