

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

*FIRM and AFFILIATE OFFICES*

SETH A. GOLDBERG
DIRECT DIAL: +1 215 979 1175
PERSONAL FAX: +1 215 689 2198
*E-MAIL:* SAGoldberg@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

January 12, 2021

**VIA ECF**

The Honorable Joel Schneider
United States Magistrate Judge
United States District Court - District of New Jersey
Mitchell H. Cohen U.S. Courthouse
4th & Cooper Streets, Room 2060
Camden, NJ 08101

      **Re:**    **In re Valsartan/Irbesartan/Losartan MDL**

Dear Judge Schneider:

      This letter is to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on January 13, 2021.

## I.    The Depositions of Manufacturer Defendants' Employees

      Plaintiffs have never taken seriously their obligation to schedule the depositions of the Manufacturer Defendants' employees. After the Court first raised the issue in August, *see* Hr. Tr. 8/26/20 23:5-10. (THE COURT: "I think we need to hear from plaintiffs about their plan for these depositions… is plaintiff going to start with -- with the API people, the finished dose people, individuals, 30(b)(6), start a discussion of how many and where, issues like that."), Plaintiffs claimed they wanted to engage in "transparent" negotiations with Manufacturer Defendants about the depositions, *see* Hr. Tr. 9/30/20, 12:23-13:3 (Mr. Slater: "So what we need is the Court to order the defendants to be as transparent as possible, who are the different

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 2

custodians, who are the witnesses, who is where, who speaks English, who can be deposed in the U.S., who can be deposed from Spain or other places, because we don't see this process of taking depositions as difficult."). Recognizing the logistical challenges presented by deposing foreign witnesses during a global pandemic, Plaintiffs claimed their intention to streamline the number of depositions, and to use 30(b)(6) testimony to do so. Hr. Tr. 11/24/20, 131:19-23 (Mr. Slater: "We do not believe we have unlimited depositions and we have stated on the record many times that we are interested in trying to streamline the number of depositions, but that starts with the 30(b)(6)s and who's going to be produced and where.").

However, even to this day Plaintiffs refuse to agree to a limit on the number of depositions, *see* Hr. Tr. 11/24/20 130:2-6 (Mr. Slater: So I think that arguing over arbitrary limits will become very sticky and probably not necessary, since the numbers will be different, probably per defendant, and giving a bright line on that is probably work that we don't need to do."), even though the Court explained that "***there should be a presumptive limit***." *Id*. at 130:21-131:1 (THE COURT: If you go into the process thinking you have an unlimited number, you may be prejudiced at the end of the day. So I think it's in everyone's best -- and with the proviso that if there's good cause, you'll get more, but I do think there should be a presumptive limit."). When the Court ordered the parties to "complete fulsome discussions regarding the names, dates, and locations of depositions to be taken starting on January 19, 2021," *see* CMO 22, Plaintiffs did not make a single proposal to any Manufacturer Defendant about a deposition schedule, but instead argued that such discussions could not be completed because they were still evaluating the Manufacturer Defendants' document productions. *See* Hr. Tr. 12/9/20 24:16-25:5; 28:19-30:9. The Court responded: "In a case of this complexity and size, you cannot wait until every last piece of paper is produced to start to take depositions. You have to start somewhere, especially since you have a pretty tight deadline to get everything done. So the longer you wait, not you, the parties wait, the harder it's going to be to meet that deadline, and I don't think it's going to be extended." Hr. Tr. 12/9/20 33:20-34:2. Nevertheless, Plaintiffs largely waited until last week to make proposals and negotiate regarding the number of witnesses and the length of 30(b)(6) testimony they were seeking from the Manufacturer Defendants.

Accordingly, for the reasons discussed below, the Manufacturer Defendants respectfully request the Court grant their individual proposals regarding the

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 3

scheduling of their employees' depositions, including their proposed limits on the number of hours of 30(b)(6) testimony.

### A.    The Court Should Limit the Cumulative Hours of 30(b)(6) Testimony.

The Federal Rules of Civil Procedure set a presumptive limit on the number of depositions at ten per party, and provide that a deposition is limited to one seven hour day, unless the parties stipulate or the Court orders otherwise. Fed. R. Civ. P. 30(d). Where the number of fact and 30(b)(6) depositions are likely to exceed the FRCP's presumptive limit of 10 depositions, courts may limit the cumulative time for 30(b)(6) testimony. For example, in *Buie and Smith,* the Court set cumulative limits for 30(b)(6) testimony in order to prevent the 30(b)(6) deposition process from being excessively long. *See also Buie v. D.C., 327 F.R.D. 1, 15 (D.D.C. 2018)* ("[g]iven the scope of the 30(b)(6) Notice, permitting [plaintiff] to examine each designated deponent for seven hours is likely to make the 30(b)(6) deposition excessively long … [t]he Court will, therefore, exercise its discretion to modify the time limit for the 30(b)(6) deposition, and set an ***18-hour limit*** for testimony"); *see also Smith v. Smith*, No. 19-10330, 2020 WL 1933820, at *6 (E.D. Mich. Apr. 22, 2020) ("[h]owever, in recognition of the potentially broad scope of Rule 30(b)(6), permitting a seven-hour examination of each of the four designees will render the Rule 30(b)(6) deposition excessively long …[t]he Court will, therefore, exercise its discretion to modify the time limit for the 30(b)(6) deposition, and set a ***fourteen-hour limit*** for the cumulative testimony".).

There are 52 business days between January 19 and April 1. Yet, as set forth below, Plaintiffs have proposed the Manufacturer Defendants collectively provide far more days of 30(b)(6) and fact witness testimony. Accordingly, the Court must limit the length of the 30(b)(6) depositions so that they can be completed during the period allotted for the depositions. The Manufacturer Defendants propose the Court should set a limit on the cumulative number of hours of 30(b)(6) testimony per Manufacturer Defendant, as the Courts above did, with Plaintiffs being able to extend the time for good cause shown. Plaintiffs' 30(b)(6) notices comprise dozens of topics, many of which overlap in ways, are duplicative in ways, or simply require less questioning time than other topics. Plaintiffs drafted the notices knowing they would not have unlimited time. The topics in those notices have been agreed upon since November 24, and Plaintiffs have thus had months to determine how best to

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 4

streamline the depositions on those topics. Instead, of proposing hours of 30(b)(6) testimony, they have proposed days, and when factoring in fact witness depositions, more days than the Court has allowed for the depositions of Defendants.

**B.      The Court Should Approve the Deposition Schedules Proposed by the Manufacturer Defendants.**

As set forth below, each of the Manufacturer Defendants has proposed a schedule for the depositions of their witnesses that takes into account the time period allotted for the depositions and the scope of the 30(b)(6) notices that Plaintiffs have served. Accordingly, their proposed deposition schedules should be approved.

*1.      The Deposition Schedule ZHP Proposed on December 8 Should be Approved.*

Notwithstanding their representations to the Court, when Plaintiffs met with ZHP on December 8, Plaintiffs were completely unprepared to discuss the schedule of depositions ZHP proposed in advance of that meeting. That schedule proposed 13 ZHP party witnesses for fact deposition, identified 10 of those employees who would be designated as 30(b)(6) witnesses, and set forth dates each of the witnesses was available. *See* Ex. A, Email from J. Priselac, 12/8/20, *see also* ECF No. 655-4. The Court did not approve ZHP's deposition schedule during the December 9 conference, notwithstanding ZHP's compliance with the Court's order requiring "the parties shall complete fulsome discussions regarding the names, dates, and locations of depositions" by that conference.[1] *See* ECF No. 640.

Plaintiffs did not respond to the ZHP parties' December 8 proposal until December 17, when they agreed to the dates for four of the U.S. based witnesses as proposed by the ZHP parties, but said nothing about any of the other dates. *See* Ex. B, Email from A. Slater, 12/17/20. When the parties met and conferred on December 18, Defendants asked Plaintiffs whether they had a proposal regarding the number of hours that should be allocated for Rule 30(b)(6) testimony, but Plaintiffs were still

---

[1] Per the Court's November 25 order that "the parties shall complete fulsome discussions regarding the names, dates, and locations of depositions to be taken starting on January 19, 2021," ZHP contacted Plaintiffs' counsel on December 3 to request a meet and confer. *See* ECF No. 640. Plaintiffs requested that the parties meet and confer several days later, on December 8.

The Honorable Joel Schneider
January 12, 2021
Page 5

not willing to discuss the schedule for the remaining ZHP party depositions, except to protest that not all of the China-based ZHP witnesses should be deposed in March, especially those involved in testing and testing, and that Jun Du's deposition should be earlier than March.

Rather than approve the ZHP parties' schedule during the December 22 Case Management Conference, on December 31, the Court issued an order stating the Court was inclined to approve that schedule if the ZHP parties moved Jun Du's deposition to the first few weeks of January, and directed ZHP to make a good faith effort to move up some of the March depositions. *See* ECF No. 704. On January 5, 2021, the ZHP parties informed the Court and Plaintiffs that Jun Du could be available on February 17, a month earlier than originally proposed, and proposed flipping around the schedule so that the witnesses involved in testing and quality would be deposed on the dates originally proposed for regulatory and sales witnesses, with those witnesses being deposed on the dates originally proposed for the testing and quality witnesses. *See* Ex. C, Goldberg letter, 1/5/20. Thus, with the exception of moving up Jun Du's deposition by a month, all of the dates proposed by the ZHP parties remained the same on January 5 as they were proposed on December 8. *See* Ex. D, ZHP Party Deposition Proposal.

Nevertheless, during the January 5 conference with the Court, Plaintiffs argued that it was still premature for the Court to approve ZHP's proposed schedule. 1/5/21 Hr. Tr. 16:10-24 (Mr. Slater: "With all -- respectfully, it's premature to rule on [ZHP's proposed schedule], Your Honor … we have to go through this and talk to them. They keep coming to Your Honor with schedules, including one they sent at 11:00 today, and say order it. It's -- it's the height of inequitable, unfair gamesmanship."). During that conference the Court did not approve ZHP's proposed schedule, but noted that ZHP had established good cause for proposing the schedule of dates it had proposed.

THE COURT: Okay. And before I forget, I just want to make one notation for the record. It is true that there are a number of depositions of ZHP in March; however, in ZHP's case, it's the Court's finding that ZHP has established good cause why it couldn't produce those witnesses earlier. One, it's been represented to the Court that the Chinese New Year is celebrated in the interim. This Court has no personal knowledge of how they celebrate the New Year in China, but

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 6

it's been represented that it has a significant impact on the parties'
schedule.

Two, the Court has said previously that ZHP is facing enormous
practical difficulties arranging for depositions, travel, what have you.
The Court has not heard the same from any other defendant. So I think
ZHP is in a unique position and that accounts for why it might be
appropriate in ZHP's instance for an inordinate number of depositions
to be held in March instead of earlier.

Hr. Tr. 15:16-16:7.

Not once during the conferences with the Court on December 9, December
22, or January 5 did the Plaintiffs raise any objection to any of the dates that ZHP's
proposed on December 8 for the ten 30(b)(6) witnesses ZHP designated, nor did
Plaintiffs ever claim those dates would not provide Plaintiffs with sufficient time to
take their 30(b)(6) testimony. Moreover, despite negotiating with Defendants to
modify the discovery schedule the Court established on November 25, 2020, *see*
CMO 22, and proposing to the Court a new schedule for discovery the morning of
January 6, *see* CMO 22 Redline (adopted by ECF No. 726), Plaintiffs never
mentioned the time they would be seeking for the ZHP party depositions. However,
on the afternoon of January 6, leaving just 4 business days before the Court is to rule
on this issue, and without providing any basis, let alone making a showing of good
cause, Plaintiffs proposed *13.5 days of 30(b)(6) testimony* from the ZHP parties. *See*
Ex. E. Email from Slater, 1/6/21. Based on a 7-hour deposition day, that's *94.5 hours
of 30(b)(6) testimony*, proposed for the first time *just a few days ago*.

Combined with the 20 days of fact witness testimony they have proposed,[2]
Plaintiffs *are seeking 33.5 days of deposition testimony from ZHP, which they did
not fully propose until last week*. Given that the court has ordered that each
deposition requiring use of a translator (nine ZHP witnesses for whom Plaintiffs seek
eight days of 30(b)(6) testimony and nine days of fact testimony) will automatically

---

[2] Seven of these fact depositions were proposed on December 17, after the Court's
deadline for "fulsome discussions" on the deposition schedule, and will be the
subject of forthcoming protective order motions by the ZHP parties. *See* Ex. F, Email
from Geddis, 12/17/20.

The Honorable Joel Schneider
January 12, 2021
Page 7

be extended by 75%, Plaintiffs have actually proposed *46.25 days of testimony* from the ZHP parties. Based on a 7-hour deposition day, that corresponds to *323 hours of testimony from the ZHP parties*. Were those depositions to be conducted in 3-hour blocks of time, as Plaintiffs once proposed, the parties would need 107 to complete the depositions Plaintiffs have proposed.[3]

Plaintiffs 30(b)(6) notices had been agreed upon by the November 24 Case Management Conference, and drafted well before. Yet, during that conference, when Judge Kugler set the schedule for fact discovery to close on April 1,[4] Plaintiffs said nothing about the time they would seek for the ZHP party depositions. And Plaintiffs remained silent when the Court ordered the Defendant depositions to begin on January 19 and be completed by April 1. *See* CMO 22 (ECF No. 640). Likewise, Plaintiffs said nothing about the time they desired for ZHP party 30(b)(6) testimony to the Court on December 8, December 22, or January 5. In fact, at the December 22 Conference, Plaintiffs complained about the proposed scheduling of party depositions and even conceded that "there's going to be a few sticky issues … [t]here's no doubt about, for example, the length of some of the depositions," but did not mention the time they would be seeking for the ZHP party depositions. Hr. Tr. 12/22/20 20:19-21:10; 37:6-38:7.

To be sure, the 13.5 days of 30(b)(6) testimony, or 94.5 hours, Plaintiffs seek from the ZHP parties is inconsistent with the above legal decisions setting cumulative limits of less than 20 hours. *See e.g. Buie v. D.C., 327 F.R.D.* at *15; Smith*, 2020 WL 1933820, at *6. In contrast to Plaintiffs' proposal, given the topics in Plaintiffs' 30(b)(6) notices, the documents pertinent to those topics, and based on

_____

[3] To the extent Plaintiffs' eleventh-hour proposal of the ZHP parties is an attempt to set the high end of the range for the Court to "split the baby," such tactics should be rejected out of hand.

[4] At that Conference, Judge Kugler also emphasized that, due to the already existing back log of cases (including criminal cases) in New Jersey that has been exponentially exacerbated by the COVID-19 pandemic, the parties should not expect trial of the case any time soon as there is "no plan whatsoever for civil trials," and the backlog is going to take "years to catch up." Hr. Tr. 5:17; 6:20-21. In fact, Judge Kugler stated that he was "informing his civil litigants that [he] *will not be reaching their trials this year, next year, or probably not the year after." Id.* 33:10-12.

The Honorable Joel Schneider
January 12, 2021
Page 8

DuaneMorris

numerous discussions with the employees designated as 30(b)(6) witnesses, ZHP has proposed 20 hours of 30(b)(6) deposition testimony, with 15 hours allocated to the 54 sub-topics to be covered by the seven China-based 30(b)(6) witnesses and five hours to be covered by the 13 sub-topics to be covered by the two U.S.-based 30(b)(6) witnesses. Thus, under ZHP's December 8 proposal, assuming the translation of five days of fact witness testimony and all 15 hours of China-based 30(b)(6) testimony, ZHP's proposal provides for 20.5 days of fact and 30(b)(6) testimony, and Plaintiffs have never objected to any of the dates ZHP proposed for these depositions.[5]

The ZHP parties' proposal of 20 hours for corporate representative testimony is more than adequate to address the seven topics included in Plaintiffs' Rule 30(b)(6) notice. Plaintiffs' proposal of 13.5 *days* for Rule 30(b)(6) testimony from the ZHP parties is disproportionate to Plaintiffs' Rule 30(b)(6) Notices, which consist of only **seven** categories of information. *See* Ex. G, ZHP Party 30(b)(6) Disclosure. As reflected in Exhibit G, each 30(b)(6) category is broken into a number of overlapping and/or duplicative sub-topics. For example:

- Plaintiffs list 20 sub-topics in their Notice the under the topic "Testing of Valsartan API," for which ZHP has designate Qianming Li and Minli Zhang. Of these 20 subtopics, 17 describe testing of solvents, the production equipment used to manufacture valsartan, or the testing of valsartan for purity or content. *Id.* at Nos. 3-20. Thus, just a handful of hours is needed for Mr. Li and Mr. Zhang to cover these topics.

- Similarly, "Quality Assurance and Quality Control Activities" includes 12 sub-topics, which with Jucai Ge and Minli Zhang have been designated by ZHP. Four of these sub-topics (Nos. 21-24) all describe ZHP's application of cGMPs to prevent, detect, and act in response to

---

[5] Even if the depositions of the seven additional witnesses Plaintiffs requested on December 17 were granted, those seven days of fact testimony could be completed by April 1, as proposed by the ZHP parties. However, given their dilatory approach to ZHP's December 8 proposal, and their unreasonable counter-proposal, the Court should not consider adding any depositions to the schedule until Plaintiffs complete the 13 depositions originally proposed by ZHP.

The Honorable Joel Schneider
January 12, 2021
Page 9

*DuaneMorris*

impurities. These sub-topics are also wholly duplicative of the separate "Compliance with GMPs" topic (Nos. 48-49). *Id.* Additionally, four of the sub-topics (Nos. 26-29) address the narrow issue of the use of technical inquiries and deviation reports. For this reason, the corporate designee testimony provided by Ms. Ge and Mr. Zhang can comfortably fit within the 20 hours proposed by the ZHP Parties.

• Likewise, "ZHP's Communications with API and Finished Dose Customers and Downstream Customers" includes 6 sub-topics for which Jie Wang, Hai Wang, and Minli Zhang have been designate by ZHP. Certain of these sub-topics are wholly encompassed by other listed topics. For example, "ZHP's oral and written communications with Novartis with regard to the content/purity/contamination of ZHP's valsartan API" (No. 42) is wholly encompassed in No. 43 ("ZHP's oral and written communications with ZHP's valsartan API Customers . . . regarding quality, purity, or contamination issues related to the ZHP valsartan API."). *Id.* And, ultimately each of the sub-topics calls some for ZHP's communications with downstream supply chain members regarding the quality, purity, or contamination of valsartan and the recall. *Id.* at 42-47. Accordingly, days of testimony by Messrs. Wang, Wang, and Zhang is not needed.

• The topic "Process Development" includes 7 sub-topics, but ultimately seeks information regarding the modification of ZHP's valsartan manufacturing process to adopt the Process II zinc chloride process and related risk evaluation. *Id.* at Nos. 31-37. For this reason, the corporate designee testimony provided by Peng Dong and Eric Gu, who have been designated on these topics, can fit comfortably within the 20 hours proposed by the ZHP parties.

• Further, the sub-topics listed under the "Product Tracing" topic, though not duplicative, each describe discrete, narrow issues that do not require large amounts of deposition time. *See, e.g., id.* at 56 ("The quantity/units of ZHP's finished dose valsartan sold in the United States.").

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 10

Plaintiffs' proposal for weeks of time for Rule 30(b)(6) testimony is particularly unjustified where, as here, the ZHP parties have agreed to produce each of the designees who will provide Rule 30(b)(6) testimony to also testify in his or her individual capacity. In other words, Plaintiffs will have the opportunity to take up to seven hours of testimony from each deponent offered as a corporate designee regarding his or her personal knowledge. This individual fact witness testimony will allow Plaintiffs to obtain information regarding the underlying facts within each deponent's personal knowledge, enabling Plaintiffs to use the time allotted for the corporate deposition in a more focused way.

Plaintiffs' choice to issue Rule 30(b)(6) Notices that contain a long list of duplicative and redundant sub-topics should not entitle them to over *13 days* of corporate testimony. The twenty hours proposed by the ZHP parties, informed by seven hours of personal testimony from each designee, is sufficient to address the seven topics in the Notices. Accordingly, given that the ZHP parties' schedule for depositions, which has been pending since December 8 (as modified on January 5), and which the Court has already ruled is supported with good cause, provides sufficient time for all of the fact and 30(b)(6) testimony reasonably required, the Court should finally approve the deposition schedule the ZHP parties proposed on December 8, as modified on January 5. *See* Ex. D., ZHP's deposition schedule.

## 2. *The Deposition Schedule Mylan Proposed on January 12, 2021 Should be Approved.*

Mylan and Plaintiffs continue to engage in a fulsome meet and confer regarding the number, length, and timing of Rule 30(b)(6) and fact witness depositions, and Mylan remains hopeful that an agreement can be reached in advance of the January 13 conference. Mylan has thus far agreed to produce nine U.S.-based witnesses for deposition beginning on February 5 and then evenly disbursed throughout February and March. The parties' present discussions focus on Plaintiffs' request to depose an additional six witnesses from India. As the Court is aware, see, e.g., Dkt. 604, Defs.' Agenda Statement, at 5; Dkt. 658, Or. ¶ 6, Mylan maintains that Plaintiffs are required to comply with the terms of Hague Evidence Convention in order to obtain depositions of foreign employees. Nonetheless, as stated, the parties are negotiating in good faith in an attempt to resolve these and any remaining differences and, to the extent disputes remain, Mylan will be prepared to detail its proposed deposition schedule during tomorrow's conference.

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 11

### 3.    *Teva's Proposed Deposition Schedule Should be Approved.*

The parties met and conferred on December 10, 2020, to discuss the Teva Defendants' potential 30(b)(6) witnesses. Teva provided names and locations for a number of potential individuals who might be designated as 30(b)(6) witnesses. During this call, Defendants reiterated their request that Plaintiffs identify their intended fact witness deponents, as this determination might impact Teva's 30(b)(6) witness designations. Plaintiffs returned to the same refrain they had used for months, stating only that their priority custodian list as provided in May and subsequently supplemented with several additional names included their likely fact witness deposition targets. When pressed, they also added a single name, Narendra Vadsola, and asked Teva to consider Mr. Vadsola as a potential fact witness.

On December 22, 2020, prior to Teva's required disclosure of 30(b)(6) witnesses and designation of topics that same day, Plaintiffs sent Teva an email listing 19 proposed fact witnesses. Six of these witnesses are individuals Teva had determined to offer as 30(b)(6) deponents. While several of these witnesses had previously been discussed by the parties as possible 30(b)(6) deponents, and three had been identified as priority custodians, six of these witnesses had never been discussed by the parties or identified by Plaintiffs as potential fact witnesses.

As the Court noted at the November 11th Teleconference, it is in the parties' best interest to set a "presumptive limit" on the total number of depositions. (*See* Trans. Nov. 11, 2020 CMC, 130:16-131:1). In light of this, Teva makes the below proposal, intending to address (1) the Court's direction that the parties work to spread out the 30(b)(6) deposition schedule; (2) the need to reasonably limit the total amount of 30(b)(6) deposition testimony as outlined in Part A.1 above; and (3) the Court's direction that a reasonable, presumptive limit be placed on the total number of fact witness depositions.

Teva proposes that a total of 20 hours of deposition testimony be permitted on the 30(b)(6) notice topics, to be divided as Plaintiffs see fit among the seven Teva designated 30(b)(6) witnesses. Teva will offer dates for four of these seven witnesses in February, leaving three 30(b)(6) depositions to take place in March. As for the fact witnesses, Teva proposes that Plaintiffs be given a presumptive limit of ten (10) fact witness depositions. Teva is meeting and conferring with Plaintiffs to explain the duplicative nature of numerous identified potential fact witnesses, particularly in

The Honorable Joel Schneider
January 12, 2021
Page 12

light of the 30(b)(6) designations. Should these 10 depositions demonstrate that other witnesses are likely to possess relevant, non-duplicative personal information, Plaintiffs can seek leave to take additional depositions for good cause. To facilitate the Court's April 1, 2021 deadline for completion of Defendants' depositions, Teva is willing to set tentative dates for witnesses on Plaintiffs list other than the initial 10, and the parties can address—hopefully through agreement but via motions for protective order as needed—whether these depositions need go forward at that time.

### 4.    *Depositions of Employees of the Aurobindo Parties*

On December 22, 2020, the Aurobindo defendants designated three Rule 30(b)(6) witnesses and proposed eight days in March when all of them are available for depositions, including March 22, 23, 24, 25, 26, 29, 30, or 31. Plaintiffs responded that they would appreciate if the depositions could be spread out across the period of time available for depositions. Defense counsel agreed to check on whether more dates could be offered and proposed a meet-and-confer call the last week of December. Plaintiffs did not respond to defense counsel's availability for a meet-and-confer that week. When Plaintiffs' followed up on January 5th and 6th, they stated that they intend to depose each of the 30(b)(6) witnesses in their individual capacity and proposed sixteen (16) additional fact witnesses as well as lengths for all depositions. Regarding the length of 30(b)(6) depositions, they proposed days rather than hours. Specifically, Plaintiffs proposed 2 days each for Blessy Johns and Steve Lucas and 2.5 days for Sanjay Singh. Based on a 7-hour deposition day under the Federal Rules, that is **45.5 hours of testimony from three witnesses**. On top of this, Plaintiffs proposed **16 days of additional fact witness testimony.** The Aurobindo parties propose 20 hours total for all 30(b)(6) witnesses and continue to meet-and-confer with Plaintiffs regarding the additional fact witnesses. On January 8, defense counsel wrote to Plaintiffs' counsel and offered again to meet-and-confer. Defense counsel proposed Monday or Tuesday. Plaintiffs preferred Tuesday. The parties plan to meet-and-confer at 11:30 a.m. today.

Six of Plaintiffs' proposed fact witnesses are former employees of the Aurobindo parties, including Jeffrey Jackowski, Jasleen Gupta, Daniel Burns, Venkata Kota, Srinivasulu Ale, and Arpit Patel. The Aurobindo parties will not agree to accept notices of depositions for those individuals. There are also two other individuals are listed twice on Plaintiffs' list (i.e., Prasad Gorijavolu and Krishna Reddy Chada). Regarding the remaining eight, the Aurobindo parties object for

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 13

various reasons, including burden, duplicative testimony, and relevancy. All of them work under the 30(b)(6) witnesses and any information they could provide would be covered by Blessy Johns, Steve Lucas, and Sanjay Singh. The parties continue to meet-and-confer about these witnesses and the Aurobindo parties are hopeful that an agreement will be reached. In terms of length.

### 5.    The Deposition Schedule Hetero Proposed on January 11, 2021 Should be Approved.

Hetero Drugs and Hetero Labs ("HLL") have met and conferred with Plaintiffs' Counsel on December 15, 2020 and December 30, 2020 regarding HLL's Rule 30(b)(6) depositions. The parties have additionally exchanged proposals with respect to the lengths of the Rule 30(b)(6) depositions. As of January 11, 2021, HLL proposed two, seven-hour days to conduct the deposition of one HLL witness. Further, HLL proposed one, seven-hour day per witness for HLL's remaining Rule 30(b)(6) witnesses. HLL is continuing to meet and confer with Plaintiffs in order to finalize the dates and lengths of HLL's Rule 30(b)(6) depositions

### 6.    The Rule 30(b)(6) Deposition Schedule Torrent Proposed on December 22, 2020 Should be Approved.

Torrent provided Plaintiffs with the names of its four 30(b)(6) designees and dates for their depositions on December 22, 2020.[6] Plaintiffs have not accepted any of the proposed dates for Torrent's 30(b)(6) designees. As a result, the parties have not yet discussed the length of Torrent's 30(b)(6) testimony.

In addition to Torrent's four 30(b)(6) designees, Plaintiffs have requested ten fact witnesses, for a total of 70 hours of fact deposition testimony. Plaintiffs and Torrent are continuing to discuss scheduling for the requested fact witnesses.

---

[6] As Torrent informed Plaintiffs, Torrent initially could not provide dates for the deposition of one its 30(b)(6) designees due to that designee's medical leave as a result of COVID-19. On January 10, 2021, Torrent followed up with Plaintiffs and provided dates for that particular 30(b)(6) designee.

DuaneMorris

The Honorable Joel Schneider
January 12, 2021
Page 14

## II.   Plaintiffs' Refusal to Withdraw Objections by Consumer Economic Loss and Medical Monitoring Class Representatives to Defendants' Court-Approved Discovery Requests

On December 17, 2020, Plaintiffs served Responses and Objections by the Economic Loss and Medical Monitoring Class Representatives to Defendants' Rule 34 Requests for Production of Documents. On December 30, 2020, counsel for Defendants wrote to Plaintiffs' counsel asking that all objections be withdrawn based on the Court's Case Management Order No. 21 ("CMO-21"), which requires that the document requests "shall be responded to without objection." Dkt. No. 633. (See Defendants' letters to Plaintiffs' attached hereto collectively as Exhibit H).[7] On January 7, 2021, counsel for the Consumer Economic Loss and Medical Monitoring Representatives emailed defense counsel taking the position that Plaintiffs' objections are proper and do not violate CMO-21. (See Plaintiffs' email attached hereto as Exhibit I).[8]

The Consumer Economic Loss Class Representatives served "general objections" and specific objections to ten (10) Requests. The Medical Monitoring Plaintiffs served "general objections" and specific objections to all Requests. Notwithstanding any purported basis for the objections, they are improper because they violate CMO-21 and, therefore, they must be withdrawn.

Defendants request that the Court order the Consumer Economic Loss and Medical Monitoring Class Representatives to withdraw all objections and serve amended responses to the Defendants' Requests within seven (7) days given that depositions of these Plaintiffs are scheduled to begin on January 19, 2021.

## III.   Cost Sharing for Plaintiffs' Medical Records

At the January 5, 2021 Conference Call, Plaintiffs raised the issue of cost sharing for Plaintiffs collected medical records. Plaintiffs apparently take the

---

[7] A similar letter was sent to counsel for Plaintiff MSP Recovery Claims, Series LLC ("MSPRC") on December 31, 2020.

[8] On January 4, 2021, counsel for MSPRC served Amended Responses to Defendants' Requests to Defendants' Requests that no longer included objections.

**Duane Morris**

The Honorable Joel Schneider
January 12, 2021
Page 15

position that while they agree to cost sharing for the personal injury Plaintiffs' medical records, they should not be required to share cost for—but are entitled to receive—medical records collected for the class representatives. (*See* Hr. Tr. 1/5/21 26:20-27:2). Review of the transcript wherein the Court addressed records collection at the time the fact sheets were entered and the Court's order in *Benicar* demonstrate that there is no such distinction or basis for Plaintiffs not to share costs—evenly with any other party who decides to access—for these medical records.

First, cost sharing for such records was specifically addressed in CMO 23 from *Benicar*, attached as Exhibit J. In this litigation, Plaintiffs have never previously raised the issue of cost sharing for medical records, and do not appear to object to the collection of records for personal injury Plaintiffs. However, the distinction they attempt to draw for class representatives is unfounded. The parties argued whether the scope of discovery applied to these records for class representatives, and the Court ordered that such records were subject to collection.

To the extent Plaintiffs believe that these records are irrelevant, they are free not to access them and will not be charged. But the test for whether Plaintiffs are required to pay their equal costs for accessing records cannot be whether Plaintiffs deem the records relevant. No rational basis exists for distinguishing between these records for personal injury as opposed to class representative Plaintiffs, and the Court should order that the same cost sharing provisions apply to all medical records collected by Defendants' pursuant to authorizations in this litigation.

Respectfully submitted,

*s/ Seth A. Goldberg*

Seth A. Goldberg

cc: All counsel of record via ECF