# Exhibit F

2005 WL 2521886
Only the Westlaw citation is currently available.
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also Third Circuit
LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,
Third Circuit.

Elaine L. CHAO, Secretary of Labor,
United States Department of Labor
v.
John J. KORESKO; Regional Employers'
Assurance Leagues; Delaware Valley
League; Penn-Mont Benefit Services,
Inc.; Koresko & Associates, Appellants.

Nos. 04-3614, 05-1440, 05-1946, 05-2673.
|
Argued Sept. 29, 2005.
|
Decided Oct. 12, 2005.

Appeals from the United States District Court for the Eastern District of Pennsylvania. (D.C.Misc. No. 04-mc-00074). District Judge: Honorable Mary A. McLaughlin.

**Attorneys and Law Firms**

Virginia L. Miller [Argued], Anderson, Kill & Olick, Philadelphia, PA, for Appellants.

Gail Perry [Argued], Eleanor L. Beard, U.S. Department of Labor, Plan Benefits Security Division, Washington, DC, for Appellee.

Before RENDELL, FUENTES and WEIS, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

**\*1** John J. Koresko, V ("Koresko"), Regional Employers' Assurance Leagues, Delaware Valley League, Penn-Mont Benefit Services, Inc. ("Penn Mont"), and Koresko & Associates (together, "Respondents"), appeal two sets of orders issued by the District Court. In the first set of orders, the "enforcement orders," the District Court granted the Department of Labor ("DOL")'s Petition to Enforce Administrative Subpoenas ("May 11 Order"), rejected Respondents' privilege claims and ordered Respondents to comply with the subpoenas ("August 23 Order"). The second set of orders, the "contempt orders," denied DOL's Renewed Motion for Adjudication of Contempt ("January 10 Order"), adjudged Respondents Koresko, Penn-Mont and Koresko & Associates (the "Contempt Respondents") in contempt, ordered them to pay compensatory costs and coercive fines ("March 17 Orders"), and directed the Contempt Respondents to pay $5,312.50 to DOL in compensation for fees and costs associated with the contempt proceedings ("April 25 Order").

Respondents raise myriad issues on appeal. We address their arguments with respect to the enforcement orders and the contempt orders separately below. Because we conclude that none of Respondents' contentions rises to the level of legal error or abuse of the District Court's discretion, we will affirm all of the District Court's orders.

As we write solely for the parties, who are familiar with the facts and the procedural history of this case, we will discuss only the legal issues presented and related material facts.

*I. The Enforcement Orders*
The District Court had jurisdiction over the subpoena enforcement proceedings under section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, as made applicable by section 504(c) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1134(c), and section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1). District court orders enforcing administrative subpoenas are final and appealable under 28 U.S.C. § 1291 because " 'there is no ongoing judicial proceeding that would be delayed by an appeal.' " *Univ. of Med. & Dentistry of N.J. v. Corigan,* 347 F.3d 57, 63 (3d Cir.2003) (quoting *In re Subpoena Duces Tecum,* 228 F.3d 341, 346 (4th Cir.2000)).

Respondents challenge both of the District Court's enforcement orders. First, they argue that District Court's grant of DOL's Petition to Enforce Administrative Subpoenas in its May 11 Order was improper. Second, they dispute the District Court's rejection of their privilege claims in its August 23 Order. We address each of these issues in turn.

A. The District Court's Order Enforcing the Administrative Subpoenas

We review a district court's order enforcing administrative subpoenas for abuse of discretion. *FDIC v. Wentz,* 55 F.3d 905, 908 (3d Cir.1995). The procedure for enforcing administrative subpoenas is well established. First, the agency must demonstrate, through affidavits of its agents, that its subpoena meets the threshold requirements for enforcement, *SEC v. Wheeling-Pittsburgh Steel Corp.,* 648 F.2d 118, 128 (3d Cir.1981) (en banc): "(1) the inquiry must be within the authority of the agency, (2) the demand for production must not be too indefinite, and (3) the information sought must be reasonably relevant to the authorized inquiry." *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 574 (3d Cir.1980). "If the government makes this preliminary showing, the burden then shifts to the respondent to prove that enforcement of the subpoena would be improper...." *Wheeling-Pittsburgh,* 648 F.2d at 128. Enforcement of a subpoena is improper where it would amount to an abuse of the court's process. *Powell v. United States,* 379 U.S. 49, 58 (1964). "Such an abuse would take place if the [subpoena] had been issued for an improper purpose, such as to harass the [respondent] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* After each party has had an opportunity to argue its position, the District Judge may direct further proceedings, including discovery, if she concludes that the record is inadequate to make a final decision. On the other hand, if the judge finds that the record is sufficient, she may grant or deny the petition for enforcement. At all times during this procedure, the respondent "bear[s] the initial burden of convincing the trial judge that the claimed abuse of process is not frivolous." *Wheeling-Pittsburgh,* 648 F.2d at 128.

*2 Respondents raise three main objections to the District Court's enforcement of DOL's subpoenas. First, they argue that the District Court improperly relied on "conclusory" statements to find that the subpoenas satisfied the threshold enforcement criteria. Second, they contend that the District Court applied the wrong standard in evaluating their claim that DOL's investigation was improperly motivated. Third, they assert that the District Court erred in refusing to inquire into DOL's statutory authority to issue the subpoenas. As we explain below, we conclude that the District Court's grant of DOL's petition to enforce its subpoenas was proper in all respects.

In this case, DOL supported its Petition for Enforcement with a declaration from Investigator Bindu A. George, and the District Court found that the declaration satisfied DOL's obligation to establish that its subpoenas met the threshold requirements for enforcement. *Chao v. Koresko,* No. 04-MC-74, slip op. at 3 (E.D.Pa. May 11, 2004). Respondents argue that the District Court improperly relied on the "conclusory" statements in Investigator George's declaration. As described above, however, our standard administrative subpoena enforcement procedure specifically contemplates that an agency will use affidavits or sworn declarations to satisfy its initial burden. *See Wheeling-Pittsburgh,* 648 F.2d at 128. Moreover, weighing the sufficiency of the parties' submissions is precisely the type of decision that is committed to the District Court's discretion. Although we wonder how DOL could possibly need all of the documents it has listed in its subpoenas, we find no basis for concluding that the District Court abused its discretion in this first phase of the enforcement analysis.[1]

In the second phase of its enforcement analysis, the District Court evaluated Respondents claims that DOL was improperly motivated and concluded that, even assuming the facts that Respondents alleged were true, Respondents had failed to meet their burden of establishing that DOL was acting in bad faith or for an improper purpose. *Koresko,* No. 04-MC-74, slip op. at 4-5. Respondents contend that the District Court erred by applying the standard from *United States v. Aero Mayflower Transit Co.,* 831 F.2d 1142, 1145-47 (D.C.Cir.1987), which held that a respondent had to show that the agency was acting in bad faith or for an improper purpose to overcome the agency's *prima facie* enforcement showing, *id.* at 1145, rather than analyzing their claims under the framework that we laid out in *Wheeling-Pittsburgh,* which allows that a respondent might be able to establish that enforcement of a subpoena would abuse the court's process even where the respondent fails to demonstrate bad faith. 648 F.2d at 125. Respondents' contention lacks merit. Even if we were to find that *Wheeling-Pittsburgh* articulates a broader standard than *Aero Mayflower,* the outcome of the case would not change-the District Court has already determined that the facts alleged by Respondents do not meet the *Wheeling-Pittsburgh* standard. Although the District Court's analysis was framed in terms of "bad faith" and "improper purpose," the District Court compared the facts alleged by Respondents to those alleged in *Wheeling-Pittsburgh* on its way to finding that Respondents' claims were insufficiently troubling to warrant further investigation. *See Koresko,* No. 04-MC-74, slip op. at 5 ("Even assuming that the investigation was prompted by a complaint by SCM, that fact does not rise to the level of bad faith or improper purpose by the agency. *See*

*Securities and Exchange Commission v. Wheeling-Pittsburgh Steel Corp.,* 648 F.2d 118, 127 (3d Cir.1981)."). Under these circumstances, we cannot find that the District Court abused its discretion in the second phase of the enforcement analysis.

**\*3** Respondents' argument that the District Court erred by failing to inquire into DOL's jurisdiction to investigate Respondents is similarly unfounded. As the District Court properly pointed out, the agency is not required to establish jurisdiction as an element of its *prima facie* case. *Koresko,* No. 04-MC-74, slip op. at 3 (quoting *Donovan v. Shaw,* 668 F.3d 985, 989 (8th Cir.1982)). The case that Respondents cite to support their position, *EEOC v. Shell Oil Co.,* 466 U.S. 54 (1984), is inapposite here because it is based on Title VII. Title VII, unlike ERISA, requires a valid charge of discrimination as a prerequisite to an EEOC investigation. A case decided by the Court of Appeals for the Eighth Circuit considering a subpoena issued by DOL pursuant to ERISA provides a better comparison. The court there noted that "[i]t is well-settled that a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute," *Donovan,* 668 F.2d at 989 (citations omitted), and concluded that the district court's refusal to entertain the respondent's defense of lack of coverage under the statute was proper. *Id.* Similarly, here, the District Court found that DOL had established a *prima facie* case for enforcement. Because coverage by the statute is not an element of DOL's *prima facie* case, and lack of coverage is not a defense to enforcement, the District Court's failure to inquire into DOL's jurisdiction to investigate Respondents was proper.

In sum, none of the issues that Respondents raise regarding the District Court's enforcement of DOL's subpoenas amounts to an abuse of discretion. We will accordingly affirm the District Court's May 11 Order.

### B. Respondents' Privilege Claims

Respondents assert that many of the documents requested by DOL in its subpoenas are covered by various privileges. After reviewing Respondents' privilege log and various "samples" of the allegedly privileged documents, the District Court rejected Respondents' privilege claims.[2] The Court expressed frustration with Respondents' submissions and concluded that they should not be allowed more time to support their claims. *Chao v. Koresko,* No. 04-MC-74, slip op. at 4 (E.D.Pa. Aug. 2, 2004). On appeal, Respondents contest the District Court's legal finding that the statutory tax preparer privilege does not apply to this dispute, the Court's factual findings as to the applicability of the attorney-client and other privileges to the requested documents, and the District Court's refusal to allow Respondents to supplement their initial privilege submission. We reject all of Respondents' arguments and conclude that the District Court's privilege decisions were proper.

Our review of the District Court's determinations as to the scope of asserted privileges is plenary. *United States v. Liebman,* 742 F.2d 807, 809 (3d Cir.1984). We agree with the District Court's that the tax preparer privilege does not apply here. The language of the statute is clear-the "privilege" *"may only be asserted* in-(A) any noncriminal tax matter before the Internal Revenue Service; and (B) any noncriminal tax proceeding in Federal court brought by or against the United States." 26 U.S.C. § 7525(a)(2) (emphasis added). This case, a civil proceeding by DOL to enforce an administrative subpoena, is neither. Respondents' primary concern seems to be that DOL will share information it receives with the IRS, but they have not cited any authority that expands the tax preparer privilege beyond its express statutory limits. Because this proceeding is clearly outside of the statutory bounds of the tax preparer privilege, we conclude that the privilege is inapplicable here.

**\*4** Determinations of the applicability of privileges to particular documents are committed to the District Judge's discretion. *Rossi v. Standard Roofing, Inc.,* 156 F.3d 452, 477 n. 16 (3d Cir.1998). The burden rests upon the party who claims that requested documents are privileged to "describe the nature of the documents ... in a manner that ... will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). In this case, the District Court specifically found that Respondents had failed to carry that burden:

> [T]he respondents have not supported their claims with the kind of specific information that is required. The Court cannot tell what documents the respondents claim are protected by what privilege[s], by whom the document was prepared, from whom and to whom it was sent, and why it is a privileged communication.

*Koresko,* No. 04-MC-74, slip op. at 4 (E.D.Pa. Aug. 2, 2004). Respondents have attempted to relitigate the privilege issues before us, explaining why they think that various privileges apply to various documents. Their arguments establish only that they disagree with the District Court's decision; they do not establish that the District Court's ruling was incorrect or that the Court abused its discretion in any way. We will not disturb that ruling.

Finally, Respondents argue that the District Court "should have" allowed them more time to clarify their privilege submissions and provide additional information. Like determinations of whether the privilege applies, decisions as to the amount of information that the District Court needs in order to make such determinations are committed to the District Judge's discretion. *Cf. Schwimmer v. United States,* 232 F.3d 855, 863-64 (8th Cir.1956) (finding that district court has "discretion or latitude in the receiving of proof" on questions of waiver of attorney-client privilege). The District Court in this case "spent hours" evaluating Respondents' privilege claims, *Koresko,* No. 04-MC-74, slip op. at 5 (Aug. 2, 2004), and allowed Respondents the opportunity to present their privilege claims both orally and in writing. *Id.* at 4. The Court concluded that Respondents were "unable ... to state with any precision why any of the documents are privileged." *Id.* Given the circumstances, we find that the District Court acted well within its discretion when it declined to give Respondents a third opportunity to advance their privilege claims.

Because Respondents have failed to show that the District Court committed a legal error or abused its discretion with respect to the applicability of privilege to the subpoenaed documents, we will affirm the District Court's August 23 Order.

## II. The Contempt Orders

Respondents challenge the District Court's March 17 contempt orders by arguing (1) that the Court lacked jurisdiction to enter the orders; (2) that the District Court violated Respondents' procedural due process rights in the contempt proceedings; (3) that the District Court erred in ignoring Respondents' defenses to the contempt charges; and (4) that the relief awarded by the District Court, in the form of compensatory costs and coercive fines, was improper. We address each argument in turn.

### A. Jurisdiction

**\*5** Respondents argue that the appeals that they filed from the District Court's May 11, August 23 and January 10 Orders divested the District Court of jurisdiction over further contempt proceedings. But the general rule on which Respondents rely, that filing a notice of appeal immediately transfers jurisdiction from a district court to a court of appeals, is subject to a number of exceptions that apply in this case. *See generally* 20 James Wm. Moore et al., *Moore's Federal Practice* § 303.32[1] (3d ed.1999). For example, the district court retains authority to enforce a judgment that has not been stayed. *Id.* § 303.32[2][c][vi]. The District Court thus properly denied DOL's Motion for Adjudication of Civil Contempt on January 10, deferring enforcement of its May 11 and August 23 Orders until Respondents' Petitions for Rehearing and Rehearing En Banc of its stay application were denied. *Chao v. Koresko,* No. 04-MC-74 (E.D.Pa. Jan. 10, 2005). Once the stay was finally denied, the District Court retained jurisdiction to enforce its May 11 and August 23 orders.

Respondents' appeal of the District Court's January 10 Order did not divest the District Court of that jurisdiction. A district court may proceed with a case if an appeal is filed from a non-appealable order. 20 *Moore's Federal Practice* § 303.32[2][b][iv][B]. "Civil contempt becomes appealable only when the contemnor has refused to comply with the remedial order and the court has exercised its authority either to punish or to coerce compliance." *U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers,* 601 F.2d 1269, 1273 (3d Cir.1979). The District Court's January 10 Order was not appealable- it simply denied DOL's contempt motion and outlined the penalties for any future failures to comply with the Court's August 23 Order. As of January 10, then, the Court had not "exercised its authority either to punish or to coerce compliance." Thus, Respondents' appeal of the January 10 Order could not disturb the District Court's jurisdiction to enforce its May 11 and August 23 Orders. The District Court therefore retained jurisdiction to enter the March 17 Orders adjudging Respondents Koresko, Koresko & Associates and Penn-Mont in contempt.

### B. Respondents' Procedural Due Process Arguments

Respondents contend that the District Court deprived them of their due process rights when it "prospectively" adjudged them in contempt in its January 10 Order and failed to give them adequate opportunity to explain in the hearings that led up to its March 17 Orders. Respondents rely on *Newton v. A.C. & S., Inc.,* 918 F.2d 1121 (3d Cir.1990), to support their due process theory. In that case, the district court issued an order providing for the imposition of fines if the parties failed to settle by a court-imposed deadline. *Id.* at 1124. When the parties failed to meet the deadline, the court "summarily" and without a hearing imposed fines on defendants and defendants' counsel. *Id.* We reversed and instructed the district court to vacate the fines because the district court had failed to provide the parties with "customary procedural safeguards [to] ensure that the parties or their

attorneys have an opportunity to explain the conduct deemed deficient before the fine is imposed and that a record will be available to facilitate appellate review." *Id.* at 1127.

**\*6** The comparison of this case to *Newton* is inept. Whereas the district court in *Newton* imposed fines before any hearing, the District Court here provided Respondents with two opportunities to explain themselves, at hearings on January 7 and March 16, before it imposed any sanctions. Transcripts were made of those hearings and included in the record for appellate review. The due process standard that we articulated for contempt proceedings in *Newton* requires no more.

### C. Respondents' Contempt Defenses

We review a district court's contempt findings for abuse of discretion. *United States v. Sarbello,* 985 F.2d 716, 725 (3d Cir.1993). Abuse of discretion "may be established by showing an error of law or a clearly erroneous judgment or finding of fact." *Id.* Respondents have not challenged the merits of the District Court's contempt findings, so we will not review them here. Instead, Respondents argue that the District Court committed errors of law when it declined to consider Respondents' "substantial compliance" defense and rejected Respondents' offer to produce privileged documents with various protections. We disagree.

The District Court was under no obligation to consider Respondents' substantial compliance defense. As Respondents themselves acknowledge, we have never recognized substantial compliance as a defense to civil contempt. *See Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir.1994). Courts that have recognized this defense define it as follows:

> [S]ubstantial compliance with a court order is a defense to an action for civil contempt. If a violating party has taken "all reasonable steps" to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt.

*General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir.1986) (emphasis added) (citations omitted). We need not consider here whether we should recognize the substantial compliance defense in the future, because even if we were to recognize substantial compliance as a defense to contempt, it would not apply to Respondents. *See Robin Woods,* 28 F.3d at 399. Respondents' failure to disclose the documents in this case is neither "technical" nor "inadvertent." Respondents have acknowledged that they have documents responsive to the subpoena, but have repeatedly declined to produce them.

Although they sincerely believe that some of the documents covered by the subpoenas are protected by privilege, that belief does not excuse their failure to comply with the District Court's order. "[G]ood faith is not a defense to civil contempt." *Id.*

Nor was the District Court required to accept Respondents' offer to produce purportedly privileged documents with "protections." The District Court had already ruled on the merits of Respondents' privilege claims, and Respondents' applications to stay the District Court's order to produce the documents had been denied both by the District Court and by us. The District Court was therefore free to enforce its order. Respondents' attempts to produce the documents in redacted or "protected" form amounts to nothing more than an attempt to relitigate the privilege issue and was therefore properly disregarded by the District Court. *See United States v. Rylander,* 460 U.S. 752, 756 (1983) (" '[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.' " (quoting *Maggio v. Zeitz,* 333 U.S. 56, 69 (1948))).

### D. The Relief Awarded

**\*7** The District Court ordered Respondents to pay $5,312.50 in compensation for attorneys' fees (calculated at a rate of $250 per hour) and costs associated with filing DOL's contempt motion, *Chao v. Koresko,* No. 04-MC-74 (E.D.Pa. Apr. 25, 2005), and a coercive fine of $250 per day beginning January 26, 2005. *Chao v. Koresko,* No. 04-MC-74 (E.D.Pa. Mar. 17, 2005). Respondents argue that the District Court erred as a matter of law in both awards. First, they assert that the Court erroneously awarded DOL costs for motions that it lost and improperly assessed attorneys' fees for DOL's attorneys at a rate comparable to that billed by attorneys in private practice. Second, they argue that the coercive fine is "preempted" by ERISA. We review a district court's civil contempt sanctions for abuse of the court's "wide discretion in fashioning a remedy." Del. *Valley Citizens' Council for Clean Air v. Pennsylvania,* 678 F.2d 470, 478 (3d Cir.1982).

The District Court's award of compensatory costs was proper. The final amount awarded included fees and costs associated with both the January 7 and March 16 hearings. Although it is true that the Court denied DOL's contempt motion after the January 7 hearing, it did so for a purely technical reason-because we had not yet denied Respondents' Petitions for Rehearing and Rehearing En Banc of its stay applications. When the District Court ultimately granted DOL's motion in

its March 17 Orders, it relied on evidence adduced at both the January 7 and the March 16 hearings. In addition, the District Court's April 25 Order indicates that Respondents failed to object to DOL's submissions supporting its request for attorneys' fees when they had the opportunity. *Koresko,* No. 04-MC-74 (E.D.Pa. Apr. 25, 2005). Respondents have thus failed to advance any basis for finding that the District Court abused its discretion in awarding fees and costs associated with both hearings. Nor have they established that the District Court's award of fees at the rate of $250 per hour was excessive. We have expressly authorized district courts to value government attorneys' time at market rates for the purpose of awarding sanctions. *See Napier v. Thirty or More Unidentified Fed. Agents, Employees, or Officers,* 855 F.2d 1080, 1092-93 (3d Cir.1988). We will accordingly affirm the District Court's April 25 Order.

Respondents' argument that the District Court erred in ordering them to pay coercive fines is similarly unavailing. According to Respondents, the provision of ERISA that sets statutory penalties for the failure of "plan administrators" to produce information to DOL at $100 per day limited the District Court's authority to order coercive fines in its contempt proceedings. *See* 29 U.S.C. § 1132(c)(6). But the provision that Respondents cite speaks only to the authority of the Secretary of DOL to assess civil penalties against ERISA plan administrators; nowhere does it evince an intent to limit a district court's discretion to fashion appropriate remedies in contempt proceedings. We conclude that the $250 per day fine imposed by the District Court in this case was well within the District Court's discretion.

**\*8** Because none of the arguments that Respondents raise on appeal demonstrates that the District Court abused its discretion or committed legal error during the enforcement or contempt proceedings, we will affirm the District Court's May 11 and August 23 Orders enforcing DOL's subpoenas and the District Court's March 17 and April 25 Orders adjudging Respondents Koresko, Koresko & Associates and Penn-Mont in contempt and ordering them to pay coercive fines and compensatory costs.

**All Citations**

Slip Copy, 2005 WL 2521886

## Footnotes

1.  Judge Weis considers the request for production of thousands of employee applications for insurance which include medical and personal information to be unduly burdensome and would deny DOL's requests as to those documents.
2.  The Court allowed limited redaction of law firm bills to delete attorney-client privileged or work product-protected information and insurance forms to protect personal health and medical information. *Chao v. Koresko,* No. 04-MC-74 (E.D.Pa. Aug. 23, 2004).

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.