# Exhibit I

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 2 of 10 PageID: 19353

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

2015 WL 1928184
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

AUTODESK, INC., Plaintiff,
v.
ZWCAD SOFTWARE CO. LTD., ZWCAD Design Co., Ltd., HK ZWCAD Software Ltd. and Global Force Direct, LLC. d/b/a ZWCADUSA, Defendants.

Case No. 5:14–cv–01409–EJD
|
Signed March 27, 2015

**Attorneys and Law Firms**

Michael A. Jacobs, Richard S.J. Hung, Morrison & Foerster LLP, San Francisco, CA, for Plaintiff.

Kenneth Michael Walczak, Charles Hyunchul Jung, Nassiri & Jung LLP, San Francisco, CA, for Defendants.

**ORDER DENYING MOTION TO ADOPT THE HAGUE CONVENTION OR IN THE ALTERNATIVE TO MODIFY THE PROTECTIVE ORDER**

**(Re: Docket No. 52)**

PAUL S. GREWAL, United States Magistrate Judge

 **\*1** Not happy with what it says is the wholesale theft of its proprietary source code, Plaintiff Autodesk, Inc. brought this suit against Defendants ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd.[1] for copyright infringement and misappropriation of trade secrets.[2] That much is not all that unusual; this district is no stranger to such claims. What is a bit unusual is that much of the evidence relevant to the plaintiff's claims is located in the People's Republic of China. To mitigate the risk that discovery of its data and documents outside of China may subject it to liability under Chinese state secret and privacy laws, ZWSoft moves for a protective order directing that discovery be conducted under the Hague Convention on Taking Evidence Abroad in Civil or Commercial Matters.[3] ZWSoft alternatively seeks an order that ZWSoft's source code already deposited in Beijing be made available for inspection only in China and the parties adopt ZWSoft's amended protective order.[4]

Because the court agrees with Autodesk that ZWSoft has not shown that a genuine risk of liability under Chinese law or other factors justify the additional protective measures it seeks, ZWSoft's motion is DENIED.

**I.**

Fed.R.Civ.P. 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." "The court may, for good cause," issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."[5]

The Supreme Court has "long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation."[6] American courts considering whether to order discovery from a foreign litigant should therefore "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state."[7]

When a conflict exists between the discovery authorized under the Federal Rules of Civil Procedure and sovereign interests implicated by such discovery, a court may direct parties to conduct discovery under the Hague Convention on Taking of Evidence Abroad in Civil and Commercial Matters.[8] However, the Hague Convention does not deprive the court of its ordinary powers to compel a foreign litigant to produce evidence[9] or require "the use of its procedures to the exclusion of the Federal Rules procedures whenever evidence located abroad is sought for use in an American court."[10]

 **\*2** Rather, a party seeking to apply the Hague Convention procedures has the burden to "demonstrate appropriate reasons for employing Convention procedures."[11] Although the Supreme Court has not "articulate[d] specific rules to guide" whether adoption of the Hague Convention procedures

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 3 of 10 PageID: 19354

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

is proper, a court may consider "the particular facts, sovereign interests and likelihood that resort to [Hague Convention] procedures will prove effective."[12]

Autodesk provides computer-aided design software which "create[s] digital models and workflows that allow visualization, simulation and analysis of designs before implementation."[13] AutoCAD is Autodesk's "flagship product" and largest revenue-generating product.[14] Autodesk alleges that ZWSoft engaged in wholesale copying of "large portions of Autodesk source code" in order to create its software program ZWCAD+.[15]

In 2014, Autodesk filed suit against ZWSoft and its United States-based distributor Global Force Direct, LLC in the Northern District of California, San Francisco Division for copyright infringement and trade secret misappropriation.[16] Autodesk later amended its complaint to add Hong Kong-based corporation HK ZWCAD Software Ltd. as a defendant.[17]

Autodesk also initiated summary proceedings against ZWSoft before the Hague District Court in the Netherlands.[18] ZWSoft opposed discovery of its source code outside of China, and the parties ultimately agreed that ZWSoft could produce its source code in China for the purposes of the Dutch action.[19] The Dutch court then ordered ZWSoft to produce its source code to a custodian in China.[20]

Meanwhile, in the Northern District of California, GFD answered the complaint, and the parties entered into a stipulated protective order.[21] After ZWSoft appeared in the case,[22] the case was reassigned to the San Jose division for all further proceedings.[23] ZWSoft then moved to dismiss the case[24] and also asked Autodesk to stipulate to follow Hague Convention procedures with regard to the data being sought from China or to amend the protective order to allow for examination of ZWSoft's data in China.[25] Autodesk declined to consent to adoption of Hague Convention procedures and the parties could not reach a compromise on how to amend the protective order.[26]

**\*3** ZWSoft then filed this motion, seeking that the court order the parties to conduct discovery under the Hague Convention, or in the alternative, that the court order ZWSoft's source code to be made available for inspection in China and order adoption of ZWSoft's amended protective order.[27]

## II.

This court has jurisdiction under 28 U.S.C. § 1332. This motion was referred to the undersigned pursuant to Civ. L.R. 72–1.[28]

## III.

At issue is whether the court should order the adoption of the Hague Convention procedures or in the alternative order adoption of ZWSoft's amended protective order. Because ZWSoft has not shown that application of the Hague Convention procedures here is justified under *Aérospatiale,* the court denies ZWSoft's request to order its adoption.[29] Because ZWSoft has not shown that good cause exists for the additional procedures outlined in its amended protective order, the court also denies ZWSoft's request that the court amend the protective order and require examination of its source code and related documents in China.

**\*4** *First,* ZWSoft has not established that genuine sovereign interests pertain to production of the source code and related documents at issue here. As both parties acknowledge, Chinese law prohibits exporting state secrets from China without the government's permission.[30] However, ZWSoft has not shown that production of its source code and related documents necessarily implicates this prohibition. In particular, ZWSoft does not adequately support its contention that China "may" consider its source code to be or contain state secret information.[31] While ZWSoft may be right that information that could be considered "ordinary business information in the United States" may constitute a state secret under Chinese law, ZWSoft offers nothing specific to the materials at issue here.[32]

ZWSoft also do not adequately support its claim that it is "reasonable" to believe that the Chinese government could consider its source code to contain state secrets.[33] Article 2 of China's State Secrets Law defines state secrets as "matters that have a vital bearing on state security and national interests and, as specified by legal procedure, are entrusted to a limited number of people for a given period of

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 4 of 10 PageID: 19355

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

time."[34] Article 8 expands this definition to include, among other materials, matters that involve "national economic and social development" and "science and technology."[35] ZWSoft claims that because government interpretation of these "broad" categories is "lacking," it is "reasonable" to believe that China could find that ZWSoft's source code is a secret state because it constitutes "technology" the exportation of which from a "successful and growing PRC corporation" would impact China's "national and economic development."[36]

However, ZWSoft not only does not cite to authority or expert declarations that support this belief, but also fails to respond to testimony from Autodesk's expert Hui Zhang, a former intellectual property judge on the Supreme People's Court of the People's Republic of China and an intellectual property attorney, who challenges ZWSoft's assertions about Chinese secrecy law.[37] In particular, Zhang contends that contrary to ZWSoft's claims, "Chinese law does not prohibit the disclosure of source code developed by Chinese companies outside of China" and that "there is no broad prohibition against exporting documents relating to 'science and technology.' "[38] Rather, the Chinese government "[n]ormally" considers documents to contain state secrets only if they are "prepared by government agencies or are related to a government-funded project."[39] Further, Zhang contends that in order to be a state secret, ZWSoft's source code must be designated as such by the Chinese government.[40] Because ZWSoft's source code was developed by "a private company, for private business purposes," Zhang opines that "it is highly unlikely that the source code contains state secrets."[41]

Rather than presenting expert testimony or other authority that contradicts Zhang's assertions about Chinese law, ZWSoft claims that Autodesk disregards the "very real and potentially [severe] consequences" ZWSoft could face under Chinese law.[42] In particular, ZWSoft contends that the court must "gloss" over Zhang's qualification that the Chinese government "[n]ormally" considers only documents prepared by government agencies or in relation to a government-fund project to be state secrets and Zhang's acknowledgment that she is not "aware" of any cases in which the CAD software or documents relating to CAD software were found to contain state secrets in order to conclude that there is no real risk of liability here.[43] ZWSoft is correct that Zhang's declaration is not equivalent to a "guarantee" that ZWSoft will not "face stiff and severe government penalties for cross-border production."[44] However, in light of ZWSoft's failure to respond with expert testimony or other authority that contradicts Zhang's assertions, the court cannot credit ZWSoft's unsubstantiated claims that production of its source code and related document would subject it to genuine risk of violating Chinese state secrecy laws.

*5 Further, ZWSoft's reliance on the *Xue Feng* case for the proposition that China's willingness to designate information as a state secret years after it is removed from China presents a risk of liability here is misplaced.[45] A Beijing court sentenced American geologist Xue Feng to eight years in prison after he was found guilty of "spying and collecting state secrets."[46] The Beijing court found that he had sold documents "on geological conditions of onshore oil wells and a database that gave the coordinates of more than 30,000 oil and gas wells" that belonged to a government-owned company and its subsidiary to a United States energy company.[47] In contrast, as Autodesk notes, here there is no indication that ZWSoft's source code and related documents contain information about government-owned companies or that ZWSoft would be required to produce its source code for any other purpose than in connection with this litigation under a protective order.[48]

ZWSoft also does not adequately support its claim that exporting its source code and related documents outside of China presents a legitimate risk of violating China's "amorphous" privacy laws.[49] ZWSoft claims that China's Ministry of Industry and Information Technology issued nonbinding data privacy guidelines that do not clearly define "sensitive data" and "suggest" that the Chinese government must consent to transfers of information outside of China's borders.[50] However, even if ZWSoft is correct that Chinese privacy laws are not clear, a generalized assertion that production of ZWSoft's source code *may* violate Chinese privacy laws is not sufficient to establish that a genuine sovereign interest is at issue.

ZWSoft's reliance on the *Peter Humphrey* case is similarly insufficient to show that production of ZWSoft's source code presents a genuine risk of violating Chinese privacy laws.[51] There, a Shanghai court sentenced antifraud specialists Peter Humphrey and Yu Yingzeng to fines and over two years of prison for misusing Chinese citizens' personal information.[52] The defendants acknowledged that they had "purchased personal information about Chinese citizens on behalf of

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 5 of 10 PageID: 19356

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

clients."[53] In contrast, here there is no indication that ZWSoft's source code and other related documents contain personal information about Chinese citizens.

ZWSoft may be correct that ZWSoft cannot allege precisely what information within its source code and related documents the Chinese government might consider to be a state secret because "the ambiguity in the PRC's state secrecy laws" makes it "unclear when and how they can be applied."[54] However, Chinese companies may not avoid producing documents in United States litigation by citing to broad concerns that liability may be imposed under "unclear" or "amorphous" Chinese laws.[55] Because ZWSoft has not cited to expert testimony or other authorities that support its characterizations of Chinese state secrecy and privacy laws, ZWSoft's generalized allegations that production of its source code and related documents may subject it to liability under Chinese laws are insufficient to establish that a genuine sovereign interest is at issue here.

**\*6** ***Second***, the "likelihood that "resort to [Hague Convention] procedures will [not] prove effective" weighs against use of the Hague Convention here.[56] In particular, the Hague Convention procedures are not an effective alternative because these procedures may limit discovery to exclude relevant source code and related documents. To obtain discovery under the Hague Convention, the district court must submit a Letter of Request to the Central Authority in China, which will forward the letter to the Supreme People's Court.[57] The Supreme People's Court will "only execute pretrial discovery requests for documents which ... are of direct and close connection to the subject matter of the litigation."[58]

Although "there is evidence that China has honored many judicial requests for documents,"[59] this evidence does not negate the risk the "direct and close connection" limitation may not allow for broad enough discovery here. In particular, the Supreme People's Court may limit ZWSoft's production to portions of its source code that directly relate to "common bugs, errors and idiosyncrasies" which Autodesk stated in the complaint even though Autodesk contends that ZWSoft engaged in "wholesale copying of the underlying source code" rather than merely copying the bugs.[60]

Further, discovery under the Hague Convention is too slow to be an effective alternative to the Federal Rules of Civil Procedure. "[I]t is generally recognized that procedures under the Hague Convention are far more cumbersome than under the Federal Rules of Civil Procedure."[61] As ZWSoft notes, the court in *Tiffany* rejected the plaintiff's assertion that "China's Hague Convention procedures 'do not offer a meaningful avenue to discovery' because the process is likely to be 'unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules.' "[62] However, in *Tiffany* the court ultimately concluded that application of Hague Convention procedures was proper in part because the discovery requests at issue implicated China's "significant interest in enforcing its bank secrecy laws."[63] In contrast, here ZWSoft has not shown that production of its source code and related documents presents a genuine risk of liability under Chinese law such that "the benefits of compliance with PRC laws" justify the costs imposed by application of the Hague Convention.[64]

**\*7** ***Third***, ZWSoft has not shown that the "particular facts" of this case warrant application of Hague Convention procedures.[65] ZWSoft's assertion that Autodesk has "propounded extensive and largely unnecessary discovery" lacks merit because at the time ZWSoft took this position, Autodesk had not even served discovery on ZWSoft.[66] Despite this lack of discovery, ZWSoft argues that Autodesk has propounded discovery requests on its United States distributor GFD which are "overly broad as to both time and geographic location and not rationally limited to the needs of the case" and which indicate that ZWSoft "will also receive overly broad written discovery."[67] However, Autodesk's assertion that it propounded these discovery requests on GFD because Autodesk believed that GFD is a small entity with "only three known employees" whose entire business "appears to be directed to the subject matter of this lawsuit" suggests that Autodesk is unlikely to propound similarly broad discovery requests on ZWSoft.[68]

Further, even if the requests Autodesk propounded on GFD did indicate that ZWSoft "will be served with substantially the same requests," ZWSoft's belief that these "anticipated" discovery requests will be overly broad is not sufficient to justify imposition of Hague Convention procedures.[69] Likewise, ZWSoft's citation to its motion to dismiss in support of its assertion that Autodesk is trying to use overly broad discovery requests as a "fishing license" to make up for its failure to put ZWSoft on notice of "what specific software source code is at issue" and to state a claim upon which relief

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 6 of 10 PageID: 19357

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

can be granted is unavailing.[70] Regardless of merits of these claims, ZWSoft's concerns about the potentially overly broad nature of discovery Autodesk may make in the future are not sufficient to justify imposition of the Hague Convention procedures here.

ZWSoft also has not established that inspection of the source code in China is more efficient than production of the source code in the United States. ZWSoft contends that inspection of the source code in China will serve "judicial economy" and avoid duplicative production because ZWSoft has already made the source code available in Beijing under an order of the Dutch court.[71] However, as Autodesk notes, the source code in China was deposited for the use of a neutral expert which the Dutch court had not yet appointed and which Autodesk had not yet analyzed at the time Autodesk's opposition was filed.[72]

ZWSoft's argument that having the data examined by a "native speaker" in China is less expensive than bringing the data to the United States and translating it before production similarly lacks merit.[73] Autodesk asserts that it intends to use local attorneys and experts to examine the source code in the United States and that multiple rounds of source code examination as well as motion practice related to the adequacy of the initial deposit of source code are likely.[74] Requiring Autodesk's attorneys and experts to travel to Beijing every time they need to examine the source code would be more burdensome and expensive than sending the source code to the United States.

ZWSoft is correct that as a large multinational company with multiple offices in China, Autodesk is more able than ZWSoft to shoulder burdens imposed by onerous or expensive discovery.[75] But, as explained above, ZWSoft has not shown than a sovereign interest or other factor justifies the additional expense and burden that examination of the source code in China imposes on Autodesk.

**Fourth**, ZWSoft has not met its burden to show that good cause exists under Rule 26(c) to amend the protective order to require ZWSoft to collect and make available its source code and related documents for inspection in China rather to produce this data in the United States. "A party asserting good cause [under Rule 26(c) ] bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."[76]

 *8  ZWSoft's claim the process outlined in the amended order "is authorized under the Federal Rules of Civil Procedure" lacks merit because this assertion does not establish that production and examination of ZWSoft's source code and related documents in United States will cause a specific prejudice or harm.[77] For instance, ZWSoft claims that Rule 26 authorizes examination of the source code in China because Rule 26 allows courts to limit discovery to promote international comity and because the factors described in proposed amendments to the Federal Rules of Civil Procedure favor adoption of ZWSoft's suggested procedures.[78] ZWSoft also contends that the court may properly order adoption of its amended protective order because Rule 34 allows a party to make documents available "as they are kept in the usual course of business" and because the timelines provided in the amended protective order are consistent with the Federal Rules of Civil Procedure.[79]

However, even if ZWSoft is correct that the Federal Rules of Civil Procedure authorize the production process outlined in its amended order, this compliance is not sufficient to show that good cause exists for amending the order under Rule 26(c). To the contrary, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[80] Further, although ZWSoft is that correct that production of trade secrets and source code presents inherent risks that the information produced may lose its trade secret status or value because it can be "copied or stolen without proper security measures," this risk does not justify amendment of the order.[81] As Autodesk notes, ZWSoft does not state why the existing protective order does not sufficiently protect ZWSoft's information or how the amended order will provide more protection against these risks.[82] ZWSoft itself acknowledges that these risks are "inherent in the production of source code even in the PRC."[83] Similarly, ZWSoft's contentions that it was not meaningfully involved in the current protective order because it was not in the case when the order was entered and that this case allows Autodesk access into the "highly proprietary data of a competitor" do not identify specific prejudice or harm that will result if the current protective order is not amended.[84]

ZWSoft also does not show that there is a genuine risk that production of its source code and related documents under the current protective order could subject ZWSoft to

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 7 of 10 PageID: 19358

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

liability under Chinese state secret and privacy laws. ZWSoft is correct that China has imposed "severe" penalties upon people who have violated its state secrecy or privacy laws.[85] But once again, ZWSoft's generalized, unsubstantiated claims about Chinese law do not establish that there is a "present danger that application of the PRC blocking statutes" could subject ZWSoft to liability if it produces its source code and related documents in the United States.[86]

### IV.

*9 Because ZWSoft has not shown that good cause exists for the application of the Hague Convention or amendment of the protective order, ZWSoft's motion is DENIED.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 1928184

Footnotes

1   The court will refer to these defendants collectively as ZWSoft.
2   *See* Docket No. 62 at ¶¶ 2–3, 24, 33.
3   *See* Docket No. 52 at 1–2; *see also* Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar.18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231.
4   *See* Docket No. 52 at 1.
5   Fed.R.Civ.P. 26(c)(1)(G).
6   *See Socie#te# Nationale Industrielle Ae#rospatiale v. United States Dist. Ct. for the S. Dist. of Iowa,* 482 U.S. 522, 546 (1987) (citing *Hilton v. Guyot,* 159 U.S. 113 (1895)).
7   *See id.*
8   *See, e.g., In re Perrier Bottled Water Litig.,* 138 F.R.D. 348, 356 (D.Conn.1991) (ordering "plaintiffs to employ the procedures set forth in the Hague Evidence Convention in pursuing any discovery from [the defendant], or of materials or information otherwise located in France"); *Husa v. Laboratoires Servier SA,* 740 A.2d 1092, 1096–97 (N.J.1999) (requiring use of Hague Convention procedures in part because a French "blocking statute" is a "cogent expression" of French interests which "should be accommodated, when possible").
9   *See Ae#rospatiale,* 482 U.S. at 539–40 (holding that "the Hague Convention did not deprive the District Court of the jurisdiction it would otherwise possess to order a foreign national party before it to produce evidence physically located within a signatory nation").
10  *See In re Perrier,* 138 F.R.D. at 353 (citing *Ae#rospatiale,* 482 U.S. at 533).
11  *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 305 (3d Cir.2004) (citing *Ae#rospatiale,* 482 U.S. at 547).
12  *See Ae#rospatiale,* 482 U.S. at 544–46; *see also Valois of Am., Inc. v. Risdon Corp.,* 183 F.R.D. 344, 346 (D.Conn.1997).
13  *See* Docket No. 62 at ¶ 1.
14  *See id.* at ¶¶ 12, 15.
15  *See id.* at ¶¶ 21–24.
16  *See* Docket No. 1 at ¶¶ 4, 32–48.
17  *See* Docket No. 62 at ¶ 4.
18  *See* Docket No. 68–3 at ¶ 9.
19  *See id.* at ¶ 10.
20  *See* Docket No. 68–7 at §§ 4.15, 4.16; Docket No. 68–8 at §§ 3.2, 3.3.
21  *See* Docket Nos. 22, 34.
22  Autodesk contends that ZWSoft refused to accept service in China in order to delay the process of the case. *See* Docket No. 68 at 3–4. ZWSoft, in turn, claims that its refusal of service was unintentional and is not an indication that it is unwilling to proceed with the case. *See* Docket No. 71 at 7. The court does not address this dispute because ZWSoft has not established that it is entitled to the requested protective measures regardless of whether denial of service was intentional.
23  *See* Docket Nos. 40, 44.
24  *See* Docket No. 48. This motion is noticed for hearing before the court on April 30, 2015. *See id.* at 1.

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 8 of 10 PageID: 19359

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

25  *See* Docket No. 52–1 at ¶¶ 6–9.

26  *See id.* at ¶¶ 10–16.

27  *See* Docket No. 52 at 1.

28  *See* Docket No. 53.

29  ZWSoft claims that the court should use a five-factor comity analysis that New York district courts have employed in "cases involving whether or not to abide by the Hague Convention" to determine whether application of the Hague Convention is proper here. *See* Docket No. 52 at 13. Autodesk, in turn, contends that the court should consider the factors set forth in *Ae#rospatiale*. *See* Docket No. 52 at 13; *see also Ae#rospatiale,* 482 U.S. at 544 (noting that courts may consider "the particular facts, sovereign interests and likelihood that resort to [Hague Convention] procedures will prove effective"). The comity analysis requires courts to consider "(1) the importance of the documents or information requested to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of retrieving the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States or compliance with the request would undermine the important interests of the state where the information is located." *See Tiffany (NJ) LLC v. Qi Andrew,* 276 F.R.D. 143, 151 (S.D.N.Y.2011) (internal citations omitted). As stated above, because ZWSoft does not show that production of its source code pertains to a sovereign interest, ZWSoft has not established that adoption of the Hague Convention procedures is warranted under either analysis.

However, as Autodesk notes, whereas this motion does not address a particular request for ZWSoft to produce documents, in the cases to which ZWSoft cites, the foreign litigants seeking application of Hague Convention procedures had already been requested to produce certain categories of documents or other items. *See* Docket No. 52 at 13; Docket No. 68 at 5–6; *see also Tiffany,* 276 F.R.D. at 146 (noting objection to plaintiff's motion to compel production of "all documents called for by the subpoenas"); *Strauss v. Credit Lyonnais,* 249 F.R.D. 429, 435 (E.D.N.Y.2008) (noting defendant's objection to plaintiff's discovery requests); *Gucci America, Inc. v. Weixing Li,* 768 F.3d 122, 125 (2d Cir.2014) (noting appeal from district court's order granting plaintiff's motion to compel compliance with a subpoena and an asset freeze injunction). Since the several factors of the five-factor analysis such as the "degree of specificity of the request" cannot be readily analyzed in the absence of a specific request for ZWSoft to produce documents, the court analyzes whether adoption of the Hague Convention is proper under the three factors set forth in *Ae#rospatiale* rather than the five-factor comity analysis used by the New York district courts.

30  *See* Docket No. 52 at 7; Docket No. 68 at 7.

31  *See* Docket No. 52 at 9.

32  *See id.* at 7–8.

33  *See* Docket No. 52 at 9.

34  *See id.* at 8.

35  *See id.* at 8–9.

36  *See id.* at 9.

37  *See* Docket No. 68 at 7–8; Docket No. 68–1 at ¶¶ 1–2; Docket No. 68–2.

38  *See* Docket No. 68–1 at ¶¶ 10–11.

39  *See id.* at ¶ 14.

40  *See id.* at ¶ 13.

41  *See id.* at ¶ 15.

42  *See* Docket No. 71 at 8.

43  *See id.*; *see also* Docket No. 68–1 at ¶¶ 14–15.

44  *See* Docket No. 71 at 5.

45  *See* Docket No. 52 at 8.

46  *See id.* at 8 (citing Charles Hutzler, "Xue Feng, U.S. Geologist, Gets 8–Year Sentence, Was Tortured in China," The Huffington Post, May 25, 2011, http://www.huffingtonpost.com/2010/07/05/xue-feng-us-geologist-get_n_635534.html).

47  *See id.*; *see also* Docket No. 68–1 at ¶¶ 17–18.

48  *See* Docket No. 68 at 8.

49  *See* Docket No. 52 at 9.

50  *See id.*

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 9 of 10 PageID: 19360

Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)
2015 WL 1928184

51  *See* Docket No. 52 at 9–10 (citing James T. Areddy & Laurie Burkitt, "Chinese Privacy Case Raises Risks of Doing Business in Country," The Wall Street Journal, Aug. 12, 2014, http://www.wsj.com/articles/chinese–privacy–case–raises–risks–of–doing–business–in–country–1407860680).

52  *See id.*

53  *See id.*; Docket No. 68–1 at ¶¶ 22–23 (noting that this case involved "tactics used to obtain personal information, such as household records and cell phone usage information" and that defendants were "accused of illegally purchasing, selling and providing personal information about citizens").

54  *See* Docket No. 71 at 7.

55  *See* Docket No. 52 at 7, 9.

56  *See Ae#rospatiale,* 482 U.S. at 544.

57  *See* Hague Evidence Convention, art. 2; *see also* Docket No. 68–1 at ¶¶ 7–9.

58  *See Tiffany,* 276 F.R.D. at 155; *see also* Docket No. 68–1 at ¶ 7 ("Pursuant to Article 23 of the Hague Evidence Convention, China has declared that it will execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents from common law countries, but it may require production of only such documents as are directly and closely related to the subject matter of the litigation.").

59  *See Tiffany,* 276 F.R.D. at 156 (noting that "in the first half of 2010, the Chinese Judicial Assistance Center reported that it provided assistance to the Foreign Affairs Department of the Ministry of Justice in respect of judicial assistance requests for civil and commercial cases including ... investigation and evidence collection for 37 cases and 11 other cases.") (internal citations omitted); *see also* Docket No. 52, Exhibit D.

60  *See* Docket No. 68 at 9.

61  *See Valois of Am.,* 183 F.R.D. at 349; *see also* Docket No. 52 at 11 (acknowledging that discovery under the Hague Convention "typically takes longer than conducting discovery under the Federal Rules of Civil Procedure.").

62  *See* Docket No. 52 at 15; *see also Tiffany,* 276 F.R.D. at 152–53, 156.

63  *See id.* at 156–57, 160–61.

64  *See* Docket No. 52 at 11.

65  *See Ae#rospatiale,* 482 U.S. at 544.

66  *See* Docket No. 52 at 14.

67  *See id.* at 5.

68  *See* Docket No. 68 at 10.

69  *See* Docket No. 52 at 5.

70  *See* Docket No. 71 at 1–3.

71  *See* Docket No. 71 at 5–6.

72  *See* Docket No. 68 at 11.

73  *See* Docket No. 52 at 6.

74  *See* Docket No. 68 at 11.

75  *See* Docket No. 52 at 6.

76  *See Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir.2003) (internal citations omitted).

77  *See* Docket No. 52 at 16.

78  *See id.* at 16–19.

79  *See id.* at 19–21; *see also* Fed.R.Civ.P. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.").

80  *See Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir.1992) (internal citations omitted); *see also Foltz,* 331 F.3d at 1130–31 (citing *Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md.1987) (requiring party seeking a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

81  *See* Docket No. 52 at 18.

82  *See* Docket No. 68 at 12.

83  *See* Docket No. 52 at 18.

84  *See* Docket No. 71 at 7–8.

85  *See* Docket No. 71 at 6 n.4 (citing Erik Echholm, "China 'State Secret': Daily Newspapers," Chicago Tribune, April 27, 2000, http://articles.chicagotribune.com/2000–04–27/news/0004270268_1_xinjiang–radio–free–asia–rebiya–

Case 1:19-md-02875-RMB-SAK   Document 731-9   Filed 01/12/21   Page 10 of 10
PageID: 19361

**Autodesk, Inc. v. ZWCAD Software Co. Ltd., Not Reported in Fed. Supp. (2015)**
2015 WL 1928184

kadeer) (describing how Chinese court sentenced woman to eight years in prison in 2000 for sending local newspapers on which she had marked "official speeches and articles" relating to "the government's fight against ethnic separatism" to her husband in the United States).

86  *See* Docket No. 71 at 6; *see also* Beckman Indus., Inc., 966 F.2d at 476. Autodesk requests that the court admonish ZWSoft not to delay producing the accused source code according to the terms of the existing protective order if it denies ZWSoft's motion. *See* Docket No. 68 at 12–13. However, as ZWSoft notes, because Autodesk had not propounded discovery upon ZWSoft at the time it made this request. Autodesk has "no evidence" to establish that Z–WSoft will not timely produce its source code. *See* Docket No. *71* at 8. The court therefore denies this request.

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.