1
2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

3

4    IN RE:  VALSARTAN PRODUCTS
      LIABILITY LITIGATION

5

6

7

**CIVIL ACTION NUMBER:**

**19-md-02875-RBK-JS**

**TELEPHONIC STATUS
CONFERENCE WITH ORAL
ARGUMENT AND RULINGS**

8    Mitchell H. Cohen Building & U.S. Courthouse
      4th & Cooper Streets
      Camden, New Jersey  08101

9    January 13, 2021
      Commencing at 4:00 p.m.

10

11   **B E F O R E:**                **THE HONORABLE JOEL SCHNEIDER,
                                    UNITED STATES MAGISTRATE JUDGE**

12

13   **A P P E A R A N C E S:**

      MAZIE SLATER KATZ & FREEMAN, LLC
14    BY:  ADAM M. SLATER, ESQUIRE
      103 Eisenhower Parkway
15    Roseland, New Jersey  07068
      For the Plaintiffs

16

      GOLOMB & HONIK, P.C.
17    BY:  RUBEN HONIK, ESQUIRE
           DAVID J. STANOCH, ESQUIRE
18    1835 Market Street, Suite 2900
      Philadelphia, Pennsylvania  19103
19    For the Plaintiffs

20    KANNER & WHITELEY, LLC
      BY:  CONLEE S. WHITELEY, ESQUIRE
21    701 Camp Street
      New Orleans, Louisiana  70130
22    For the Plaintiffs

23          Camille Pedano, Official Court Reporter
                    camillepedano@gmail.com
24                    609-774-1494

25   Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

*United States District Court
Camden, New Jersey*

1    **A P P E A R A N C E S (Continued):**

2      LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
     BY:  DANIEL A. NIGH, ESQUIRE
3      316 S. Baylen, Suite 600
     Pensacola, Florida 32502
4      For the Plaintiffs

5      SLACK & DAVIS, LLP
     BY: JOHN RANDOLPH DAVIS, ESQUIRE
6      2705 Bee Cove Road, Suite 220
     Austin, Texas  78746
7      For the Plaintiffs

8      DUANE MORRIS, LLP
     BY:  SETH A. GOLDBERG, ESQUIRE
9      30 South 17th Street
     Philadelphia, Pennsylvania  19103
10      For the Defendants, Prinston Pharmaceuticals,
     Solco Healthcare U.S. LLC, and
11      Zhejiang Huahai Pharmaceuticals Ltd.

12      PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
     BY:  CLEM C. TRISCHLER, ESQUIRE
13      One Oxford Centre, 38th Floor
     Pittsburgh, Pennsylvania  15219
14      For the Defendant, Mylan Pharmaceuticals Inc.

15      GREENBERG TRAURIG, LLP
     BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
16        LORI G. COHEN, ESQUIRE
     3333 Piedmont Road, NE, Suite 2500
17      Atlanta, Georgia  30305
     For the Defendants, Teva Pharmaceutical Industries Ltd.,
18      Teva Pharmaceuticals USA, Inc., Actavis LLC,
     and Actavis Pharma, Inc.
19

20      CIPRIANI & WERNER, P.C.
     BY:  JESSICA M. HEINZ, ESQUIRE
     450 Sentry Parkway
21      Blue Bell, Pennsylvania  19422
     For the Defendants, Aurolife Pharma LLC
22      and Aurobindo Pharma USA, Inc.

23      ULMER & BERNE, LLP
     BY:  JEFFREY D. GEOPPINGER, ESQUIRE
24      600 Vine Street, Suite 2800
     Cincinnati, Ohio 445202
25      For the Wholesaler Defendants and AmerisourceBergen

1  **A P P E A R A N C E S (Continued):**

2      BARNES & THORNBURG, LLP
       BY:  SARAH E. JOHNSTON, ESQUIRE
3      2029 Century Park East, Suite 300
       Los Angeles, California  90067
4      For the Retailer Defendants and CVS Pharmacy, Inc., and
       Rite Aid Corporation
5
       KIRKLAND & ELLIS, LLP
6      BY:  BRITTNEY NAGLE, ESQUIRE
       601 Lexington Avenue
7      New York, New York  10022
       For the Defendants, Torrent Pharma, Inc., and Torrent
8      Pharmaceuticals Ltd.

9  **A L S O   P R E S E N T:**

10      HON. THOMAS I. VANASKIE (Ret.)
        Special Master

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (PROCEEDINGS held in open court before The Honorable Joel

2    Schneider, United States Magistrate Judge, at 4:00 p.m.)

3            THE COURT:  Good afternoon, everyone.  This is Judge

4    Schneider.  We're on the record in the Valsartan MDL, Docket

5    Number 19-2875.  There's more than 40 people on the phone.  If

6    you're not speaking, can you please put your phone on mute.

7    Anyone who wants to put their appearance on the record is

8    welcome to, but for the time being, just the people who expect

9    to speak put your names on the record.

10           And last, for the benefit of the court reporter, if

11   you are going to speak this afternoon, please announce your

12   name first so the court reporter knows who's speaking.

13           Let's start with appearances for the plaintiffs.

14           MR. SLATER:  Hello, Your Honor.  Adam Slater for the

15   plaintiffs.

16           MS. WHITELEY:  Good afternoon, Your Honor.  Conlee

17   Whiteley on behalf of plaintiffs.

18           MR. NIGH:  Good afternoon, Your Honor.  Daniel Nigh on

19   behalf of plaintiffs.

20           THE COURT:  Defendants.

21           MR. GOLDBERG:  Good afternoon, Your Honor.  This is

22   Seth Goldberg on behalf of ZHP parties and defendants.

23           MS. COHEN:  Good afternoon, Your Honor.  This is Lori

24   Cohen with Greenberg Traurig, and Victoria Lockard is on as

25   well, on behalf of the Teva defendants and the Executive

1　Committee.

2　　　　MR. TRISCHLER:  Good afternoon, Your Honor.  Clem

3　Trischler for the Mylan defendant and the Defense Group.

4　　　　MS. JOHNSTON:  Good afternoon, Your Honor.  Sarah

5　Johnston on behalf of the retailer and pharmacy defendants as

6　well as CVS Pharmacy, Inc., and Rite Aid Corporation.

7　　　　MR. GEOPPINGER:  Good afternoon, Your Honor.  Jeffrey

8　Geoppinger on behalf of the wholesaler defendants and

9　AmerisourceBergen.

10　　　　THE COURT:  All right, counsel, this is what I have

11　planned for this afternoon.  I'd like to address all of the

12　issues in the parties' recent letters, the Court has read them,

13　understands the issues, then open the floor up to address any

14　other issue anyone else wants to raise and then I'm going to

15　excuse myself from the call.  The Special Master should be on

16　the call and I'll let you speak with him after I excuse myself

17　from the call.

18　　　　The first thing I'd like to do on this call is just

19　to identify what I believe to be the outstanding issues, none

20　of which I am going to address today but I thought it would be

21　a good opportunity to just put a placeholder what is

22　outstanding.  So these are the issues that I'm aware need to be

23　addressed that will not be addressed today or by this Court.

24　　　　One is the various motions to amend, they're

25　outstanding.  Really, the main event is plaintiffs' motion to

1    amend dealing with the named plaintiffs.

2            Two, as set forth in my recent letter, the dispute as

3    to whether ZHP has to produce voluntarily the disputed

4    witnesses for deposition; i.e., whether they're managing

5    agents, there is a briefing schedule for that issue.

6            Third, another issue that was listed in my recent

7    order, there's a briefing schedule for, which is whether or not

8    the defendants have a duty to produce documents from their

9    foreign subsidiaries, i.e., whether they possess control, what

10   have you, the foreign subsidiary's documents.

11           Four, the remaining third-party subpoena document

12   issues that are still outstanding.

13           And five, the proposed schedule that the parties

14   agreed to that you forwarded to Judge Kugler and I presume

15   Judge Kugler's going to deal with that issue.  I haven't heard

16   from Judge Kugler on that issue, candidly.  I expect that the

17   schedule the parties proposed is going to be approved, but I

18   certainly am not going to make that decision; and, like I said,

19   I haven't spoken to Judge Kugler about it but I would

20   anticipate in due course that's going to be granted.

21           So those are the issues that are not going to be

22   addressed and decided today, which now takes us to the parties'

23   letters.

24           The main event, of course, is the scheduling of the

25   different depositions and the length of the parties' 30(b)(6)

1    depositions.  What I would like to do is get all the other

2    issues out of the way and save that issue for last because that

3    is the most weighty or meaty issue we have to deal with today.

4          So the first issue I would like to deal with is the

5    issue regarding who's going to bear the cost of the records

6    that are being obtained by defendants' vendor.  I have a

7    question about that.  I'm not sure who's going to answer it

8    today but my question is, is there some type of document

9    repository set up or to be set up in this case where the

10   records that are being obtained from these various third

11   parties are going to be kept and if someone wants access to

12   them, they'll have to request that?  Can someone speak to what

13   type of repository is being set up?

14         MS. LOCKARD:  Your Honor, hello.  This is Victoria

15   Lockard from Greenberg Traurig on behalf of Teva and the

16   Executive Committee.

17         Yes.  The short answer is yes.  So the defendants

18   collectively have entered into an engagement with a vendor by

19   the name of Marker, M-A-R-K-E-R, for collection of these

20   records.  And so the process is that the authorizations are

21   provided to Marker.  They are collecting the records and

22   hosting them on a secure portal.  That portal is accessible to

23   any of the defendants currently and will be made accessible to

24   the plaintiffs for a cost.  So there is a cost associated with

25   collecting the records.  That cost, the collection costs, are

1   being split among any party who wants access to the records.

2   And then, as is typically done, there's a reproduction or -- or

3   a per-page cost for parties who then download those records

4   from that portal.

5          So we have discussed with Marker and discussed with

6   plaintiffs that, you know, we -- we would expect plaintiffs to

7   operate under the same arrangement that all of the defendants

8   do so that, you know, it's exactly the same for defendants and

9   plaintiffs.  They will have access to the portal and pay the

10  same cost.  And this would not be a 50/50, in other words,

11  defendants paying collectively half and plaintiffs paying

12  collectively half.  Rather, it would be I guess more of a I

13  guess that's per stirpes, I don't know, but if there are five

14  defendants downloading the records plus plaintiffs, then

15  plaintiffs would only have to pay for one-sixth of those; and

16  as additional parties download more documents, then credits are

17  assigned among the participating parties.  So that's how it's

18  set up to work currently.

19          THE COURT:  Thank you, counsel.

20          This is the Court's ruling on the records issue.  I

21  read the briefs, I'm familiar with the issue and I don't think

22  that we need further argument on it.

23          This exact issue came up in the *Benicar* case.  The

24  Court issued an order in that case.  The Court is going to

25  incorporate, by reference, its March 18, 2016, order in the

1  *Benicar* case, Docket Number 15-2606, Docket Number 419.  In

2  effect, what that order says is that the defendants are going

3  to compile the records and put them in the repository and that

4  if the plaintiffs want copies of the records, they have to pay

5  for them.

6       I'll also direct the parties to the April 19, 2016,

7  Case Management Order Number 23 entered in the *Benicar* case.

8  That's Docket Number 459 in *Benicar*.  That was the protocol

9  that was consented to by the parties and approved by the Court.

10      So the Court's order is going to incorporate, by

11  reference, the two orders from *Benicar*, Docket Numbers 419 and

12  459.

13      Next issue that I saw in the papers, and this may not

14  be an issue because for the life of me I don't understand it,

15  there was an issue raised about plaintiffs' objections to the

16  Rule 34 document requests for the class representative

17  plaintiffs in the economic matters.  I read plaintiffs' emails

18  and what I got out of it was that all plaintiffs are doing is

19  asserting their privilege objections.  They're not asserting

20  substantive objections to the requests, which, of course, is

21  appropriate since the Court resolved all objections.  In no

22  way, shape or form did this Court ever rule that a party

23  couldn't assert privilege objections.

24      So is there a genuine issue that has to be addressed

25  regarding this plaintiffs' objections issue?

1      MR. STANOCH:  Your Honor, this is David Stanoch for
2  the plaintiffs.
3      No.  I spoke with defense counsel about this this
4  morning.  We're going to work it out.  If they want us to amend
5  something to make things clear to put this to bed, we'll do it.
6      THE COURT:  Okay.
7      MS. HEINZ:  Your Honor, if I may, this is Jessica
8  Heinz for the Aurobindo defendants.
9      I just wanted to confirm, yes, I spoke with
10  plaintiffs' counsel today.  We had a very nice conversation.  I
11  told him, you know, all we're really looking for is for the
12  plaintiffs to do the same thing that MSPRC did, which was to
13  just serve amended responses that removed any of the objection
14  language.  We can understand if the plaintiffs, you know,
15  believe that there are responsive documents that are protected
16  by privilege, and, as counsel and I discussed this morning, you
17  know, if that's the case, you know, we would just ask that the
18  plaintiffs produce a privilege log like the defendants did for
19  them.  And I don't think we have any disagreement there.  We
20  would just ask, you know, for a privilege log that complies
21  with the assigned protocol.  And, you know, given that the
22  depositions are scheduled to start next week, we're hoping that
23  we can get this put to rest within a week.
24      THE COURT:  Thank you, Ms. Heinz.  You're correct that
25  whenever a party asserts a privilege objection, a privilege log

1   is required.  That goes for the defendants and the plaintiffs.

2   And I assume that will be done.

3          Next issue I saw in the papers was some issue

4   regarding the Chinese secrecy law.  It wasn't clear to the

5   Court what the actual dispute is, if there is one.  Certainly,

6   and we've talked about this before, if ZHP is asserting some

7   sort of objection based on the Chinese secrecy law, there has

8   to be a privilege log supplied.

9          I saw the briefing on this issue but I wasn't quite

10  clear why.  So can someone raise the issue if it is a genuine

11  dispute.

12         MR. SLATER:  Hello, Your Honor.  Adam Slater, for the

13  record.

14         We had an exchange with defense counsel after we filed

15  these papers.  The reason we provided that law was to provide

16  the context for why the information was needed in a privilege

17  log that we believe was not provided.  Defense counsel has

18  agreed to provide a more fulsome privilege log to the State

19  Secret documents, so-called, providing for -- the most

20  important three categories of information are to identify the

21  actual Chinese State Secret law that they are referring to, the

22  text of it, so we can actually know what they're asserting.

23         Second, we need fulsome descriptions of the documents

24  so that we can evaluate and ultimately the Court can evaluate

25  the propriety of the claim of privilege, and that's why we,

1  again, cited the law that talked about the fact that, for

2  example, if a whole document doesn't all encompass a, quote,

3  unquote, State Secret, then part of the document has to be

4  produce and part doesn't.  So they're going to provide us a

5  more fulsome description so we can evaluate that.

6         And also provide, third, the names and titles of the,

7  quote, unquote, cast of characters that are named in the log or

8  need to be added to the log naming the people that the

9  documents were sent to, the custodians, the keepers, the people

10  who sent the documents, et cetera, so we know all the people

11  involved with the documents; and then with all that

12  information, we'll be in a position to evaluate the claim and

13  most likely to tee up the issues for the Court to address.

14         As the Court had told us previously, you didn't want

15  to address the State Secret issue until it was actually a ripe

16  issue either in the context of the documents or ultimately a

17  witness; and I think we ultimately decided now that we have the

18  documents, we know the scope of what's being claimed, and I

19  think that was the mechanism Your Honor directed us to use to

20  address the State Secret issue.

21         So I think defense counsel said they will have that to

22  us by the 22nd, which is fine.

23         THE COURT:  Good.  Okay.  So we'll put that issue

24  aside.

25         The last two issues may not be issues.  I saw a

1    reference to an objection regarding the T3 data for the

2    wholesalers and written discovery and dep notices to the

3    pharmacies and the wholesalers.  Am I correct that there's

4    nothing to address now but the parties are still meeting and

5    conferring on that?

6            MR. STANOCH:  David Stanoch for plaintiffs.

7            Correct, Your Honor.

8            THE COURT:  Okay.  So the only issue left on my agenda

9    is the most meaty issue for this call, the depositions of the

10   defendants.  And I've read all your papers.

11           It seems to me that we have at least two issues.  One

12   issue is the length of the 30(b)(6) depositions; and then the

13   second issue, scheduling of the various depositions.

14           I suppose we should start with ZHP because that seems

15   to take up the most time in the parties' briefs and so forth.

16   Let me start with what I think is, hopefully, the easier issue,

17   the scheduling issue.

18            Mr. Goldberg, if I remember correctly, there was an

19   original schedule which was supplemented by a letter with an

20   indication that I think Mr. Du was available for deposition, I

21   don't know, the second week of February.  Am I right about

22   that?

23           MR. GOLDBERG:  Correct, Your Honor, February 17.

24           THE COURT:  All right.  Is that the schedule that ZHP

25   is proposing?

 1          MR. GOLDBERG:  Yes.  Your Honor, at Exhibit D of the

 2   letter that we provided, you'll see our full schedule, which

 3   also includes the dates of the additional witness the Court has

 4   asked us to provide.  And the column on the right, the last

 5   column on the right says 1/5/2021 proposal and that would be

 6   the proposal that's the December 8th proposal plus the few

 7   modifications the Court has asked us to propose.  So that

 8   1/5/21 proposal would be the final proposal.

 9          THE COURT:  And that's Exhibit D, right?

10          MR. GOLDBERG:  Exhibit D as in David.

11          THE COURT:  Got it.

12          So, Mr. Slater, we didn't get to the length of the

13   30(b)(6) depositions yet, but is there an objection to that

14   schedule?

15          MR. SLATER:  Your Honor, I don't want to say there's

16   an objection but I think that because of some differences

17   between us on the length of the depositions and a few things, I

18   think that our calendars, and we provided the calendar at

19   Exhibit B to our submission yesterday and submitted the updated

20   calendar today, which is really the one we would defer to, from

21   our perspective would be the schedule that we would -- we would

22   say is the correct one because it -- because it's dependent

23   somewhat on the length of the depositions.  And I believe we

24   got an email today from counsel, I'm not even sure if theirs or

25   ours -- I'm sure ours doesn't encompass it -- one of the

1  witnesses they said has to have their date changed, so we have

2  to check that.

3        So, I mean, the parties can certainly reconcile the

4  calendars at the end of this hearing, you know, tomorrow when

5  we do in line with whatever rulings you make.  I think they're

6  very close and almost the same.

7        I will say, not to get too far into it at this point,

8  but when you look at the calendar, and, in particular, ours,

9  because that really shows it on a calendar, you see what March

10 looks like and --

11       THE COURT:  I got it.

12       MR. SLATER:  -- you see what we're up against --

13       THE COURT:  I got it.  I understand the issue.

14       MR. SLATER:  Okay.

15       THE COURT:  Okay.  I understand.  We're going to start

16 with ZHP, though.  Okay.

17       MR. SLATER:  That's what I'm talking about, ZHP.

18       THE COURT:  I got it.

19       So turning to -- we're still dealing with just ZHP.

20 Turning to the length of the 30(b)(6) depositions, am I

21 correct, Mr. Goldberg, that ZHP is proposing to produce ten

22 witnesses in response to the 30(b)(6) topics and that plaintiff

23 intends to depose all of those ten as fact witnesses?

24       MR. GOLDBERG:  You're correct, Your Honor.

25       THE COURT:  So the parties dispute how we should

 1    approach this.

 2              If I'm correct, ZHP has proposed that the Court set a

 3    limit on the number of hours the 30(b)(6) witness has to be

 4    deposed and plaintiff can divide up those hours however they

 5    want.

 6              Plaintiffs' proposal is that it be allocated a certain

 7    number of days for each of the ten responsive 30(b)(6)

 8    witnesses.  Is that correct?

 9              MR. GOLDBERG:  That's correct, Your Honor.

10              THE COURT:  I've read your papers.

11              MR. GOLDBERG:  Yes.

12              THE COURT:  I have it all, Mr. Goldberg.  I spent a

13    lot of time going through these papers and looking at the

14    numbers.

15              The Court is going to go with the plaintiffs' method

16    of allocating time.  I'm prepared to give you the Court's

17    rulings on how much time is allocated to each of the ten

18    witnesses.  I'll, of course, confirm it in an order to be

19    entered.  And I'll give you a little bit of background about

20    how I got to where I am.

21              The issue of how much time to be afforded for a

22    30(b)(6) deposition is clearly a discretionary issue.  There's

23    no hard-and-fast rule about what to do, especially in a complex

24    MDL like this, and that's why it would be in the parties' best

25    interest to resolve the issue amongst themselves.  Since they

1    didn't do that, it falls to the Court to decide.  We've been at

2    this for too long to let this issue go on any further and the

3    Court's going to make a final definitive ruling today.

4         The Court's analysis takes into consideration what it

5    believes the most important topics for the questioning is:  The

6    testing done on the API, the results of that testing, and the

7    product tracing issue, and what notice there was, if any, of

8    the nitrosamine contamination.  It seems to the Court that

9    those are the most important issues and I'd be surprised if the

10   parties disagree.

11        Under plaintiffs' original proposal -- and we're just

12   talking about these ten 30(b)(6)/fact witnesses -- plaintiffs

13   propose a total of 23 and a half days of testimony combined for

14   these ten witnesses, 30(b)(6) testimony and fact testimony.

15   That adds up to 164 -- 164.5 hours or the equivalent of 13 and

16   a half days.  Of that 164.5 hours, 70 hours are for the fact

17   depositions, ten times seven is 70.  So as the Court analyzed

18   it, plaintiffs' initial proposal was they wanted 94.5 hours of

19   deposition testimony for the Rule 30(b)(6) witnesses or 13 and

20   a half days.  ZHP had proposed only 20 hours of Rule 30(b)(6)

21   testimony or two days plus six hours.

22        So plaintiffs are proposing 13 and a half days and ZHP

23   is proposing two days and six hours.  The Court's ruling is

24   going to wind up somewhere between but not exactly.

25        The bottom line is that the Court's ruling, and I'll

1    give it to you, is that there's going to be a total of 45.5

2    hours of Rule 30(b)(6) deposition testimony or six and a half

3    days compared to the 13 and a half days that the plaintiff

4    proposed.  And this is how I allocated the days.  And I'll do

5    my best to pronounce these names correctly.  And keeping in

6    mind, again, that the Court just used its best discretion in

7    determining what's reasonable, fair and appropriate.

8          L. Wang, W-A-N-G, one day total.  And when the Court

9    says total, it's talking about 30(b)(6) testimony and fact

10   testimony.  H. Wang, W-A-N-G, 1.5 days; L. Lin, L-I-N, 1.5

11   days; J. Wang, W-A-N-G, 1.5 days; H. Gu, G-U, 1.5 days; J. Ge,

12   G-E, 1.5 days; M. Zhang, Z-H-A-N-G, two days; O. Lee Dong --

13   I'm sorry, it's O. Dong, D-O-N-G, 1.5 days; P. Dong, two days;

14   and M. Li, L-I, two and a half days.

15         In reading the plaintiffs' papers, M. Li apparently

16   was the only -- of course, they're all important, but M. Li was

17   the only witness that plaintiff especially highlighted of

18   special importance and that's why the Court allocated two and a

19   half days.

20         If the Court's math is right, that adds up to 16.5

21   days or 115.5 hours.  Seventy of that is fact, seven times ten,

22   fact depositions.  So the Court allocated 45 and a half hours

23   to Rule 30(b)(6) deposition testimony compared to what

24   plaintiff originally proposed of 94.5 and what defendant ZHP

25   had proposed of 20 hours.

```
 1          The Court is going to approve ZHP's deposition
 2   schedule that's attached as Exhibit D.  The Court previously
 3   explained why.  ZHP, to the Court's knowledge, was the only
 4   party who stepped up to the plate, gave their deposition
 5   schedule early, even though the first service was on the eve of
 6   a conference as I understand that issue, but they did step up
 7   to the plate; plus, it's no secret, the practical and
 8   logistical problems that ZHP is facing, the Chinese New Year,
 9   the language, the travel, the quarantine, COVID.  We would have
10   liked to have Mr. Du deposed earlier but I assume, like I do
11   for everybody, that they're acting in complete good faith and
12   this was the earliest practical date, February 17, that he
13   could be available.
14          I understand that all the ZHP deps are in March and
15   that is going to be taken into account when we deal with the
16   other parties in the case because I've already stated we're not
17   going to let all these depositions be pushed back to March,
18   it's just not fair to the plaintiffs, when the parties have
19   been on notice for months and months and months that these
20   depositions were going to start on January 18 or 19.  And it's
21   a shame that the parties only started to seriously talk about
22   scheduling these depositions in the past few days or the last
23   week or two.  This should have been going on for the past
24   couple months, but it is what it is and we'll just deal with
25   it.
```

1          So, I think I've addressed the ZHP deposition issue.

2   Mr. Goldberg, I've made it clear, the Court is not ruling on

3   whether these disputed witnesses have to be produced because

4   they're employees.  There's a briefing schedule on that.  I'm

5   not going to decide that.  But at least we have the days

6   available in case the Court's ruling is that they have to

7   appear; and if their -- if their request is denied, no harm no

8   foul, just take them off the schedule.  Okay?

9          Any other issues --

10         MR. GOLDBERG:  Yes, Your Honor.

11         THE COURT:  -- for ZHP before we move on to the next

12   party?

13         MR. SLATER:  Your Honor, it's Adam Slater.  I'm

14   certainly not going to reargue the issue.  I just want to, if I

15   could, just state a couple things very briefly because I just

16   have concerns about where we'll be later.  I don't want later

17   for someone to say I didn't say these things.

18         One, and this is more for the record, the letter that

19   defense counsel filed about alleging that we were not engaging

20   in these discussions was false.  And I'm not going to get into

21   it any deeper than to say we've been engaging with them and,

22   unfortunately, we felt there were a lot of issues with good

23   faith of what was being presented and whether or not there was

24   a fulsome discussion on both sides.  So there were a lot of

25   things said in that letter that just were not accurate.

1    We've been engaged in these discussions, I personally

2  have been, for months or for a month or two, however long it's

3  been since they gave us the schedule, a month.

4    Number two, I want to just clarify, the amount of time

5  that Your Honor has assigned to us, I assume, but I want to

6  make sure, we can use that time as we see fit because I'm just

7  going to state for the record the time is not going to be

8  adequate probably for many of these witnesses.  We're now going

9  to be in a severely prejudiced position to try and take these

10  depositions and we're just going to need to probably -- I don't

11  even know if we're going to be able to take any individual fact

12  testimony from any of these witnesses at this point because

13  we're probably going to need most or all of the time for the

14  30(b)(6).  I just want to make sure that it's clear for the

15  record that we can use that time as we see fit.

16    And, you know, you said you were going to address the

17  calendar and scheduling.  What I started to say before, if you

18  look at the calendar we supplied Your Honor both yesterday and

19  today, which was slightly updated, and you look at what we're

20  facing just with ZHP -- you know, I get that ZHP has all these

21  different problems and Mr. Du has travel arrangements through

22  the company and there's New Year's and all and everything, but

23  the fact that that's being used to prejudice plaintiffs I think

24  is unfair.  I think that we're being significantly prejudiced

25  and I think that it's going to become clear as these

1    depositions roll out, and hopefully defense counsel will be

2    reasonable as we're taking these depositions when and if we

3    say, look, we need more time to finish this person.  Because if

4    we can't complete a deposition, obviously, we have the right to

5    move under good cause, and if they take a witness back to China

6    from Hong Kong and we later prevail, we're going to expect that

7    witness to fly back from China to Hong Kong to have their

8    deposition continued, if it turns out that we prevail and show

9    that we actually have significant subsequent questioning that

10   we couldn't get to based on the massive documents that we're

11   going to have to deal with.

12           I'm certainly not challenging the decision and I hope

13   there's no disrespect.  Like I say, I just want to make a

14   record of those issues and, of course, to confirm, because it's

15   important, that we can use that time as we see fit.  Otherwise,

16   we're really in a bind, even worse than we already are.

17           THE COURT:  Okay.  Let me address the three points

18   that you raised, Mr. Slater.

19           As to the first point where you disagree with ZHP's

20   summary of the parties' discussions, the record will reflect

21   that that issue played absolutely no role in the Court's

22   decision.  As far as I'm concerned, it was just static and had

23   no impact on the Court's ruling.

24            Two, with regard to the time, let's use an example.

25   Start with the first witness, L. Wang, W-A-N-G.  The Court

1    allocated one day to his or her deposition.  As far as the

2    Court's concerned, it's up to the plaintiffs to decide whether

3    they want to use that one day for 30(b)(6) testimony or fact

4    testimony.  That's your decision.  And that one day of time is

5    not being allocated by the Court, if that's what you meant.  If

6    you -- if what you mean is can you horse trade with ZHP to give

7    an hour -- I'll take an hour here if I give up an hour here,

8    well, that's up to you and ZHP.  I'm not going to weigh in on

9    that issue.  If you can work that out, fine; but the Court's

10   not getting involved in that issue.

11        But with regard to the allocation of the 30(b)(6) and

12   fact testimony, am I correct that that's what you wanted to

13   inquire about, Mr. Slater, or was it something different?

14        MR. SLATER:  No.  That was it, Your Honor.  You

15   addressed it, that we can use the time as we see fit, which is

16   what I was looking to confirm.

17        THE COURT:  And the last issue with regard to the

18   calendar, I'm well aware of it.  I've said it's extremely

19   unfair to the plaintiffs to push everything back to March.

20   We're not going to let that happen.  The parties have known

21   about these depositions for months.  They certainly had time to

22   make arrangements and we're just not pushing everything back to

23   March.

24        So let's go through the list.

25        The next company I have on my list is Mylan.

1          MR. DAVIS:  Your Honor, I'm sorry.  Your Honor, I'm

2     John Davis for the plaintiffs.

3          MR. GOLDBERG:  Your Honor?

4          THE COURT:  Sure.

5          MR. GOLDBERG:  Your Honor, I'm sorry, this is Seth

6     Goldberg.  I didn't have a chance to weigh in on the points

7     that Mr. Slater raised at the end, and I just would like to

8     clarify one thing about those points and the allocation of time

9     that a witness would have.  And I understand what you're saying

10    about somebody who has a day of testimony.

11         The question goes to somebody like Peng Dong, for

12    instance, who you've said would be deposed for two full days.

13    Under the rules, they would get seven hours of fact testimony

14    and then, obviously, that would be a day of 30(b)(6) testimony.

15    You know, I -- I think we would be concerned that, you know,

16    the schedule would then somehow turn into an entire schedule of

17    30(b)(6) testimony.  And if that were the case, you know, our

18    witnesses are now going to be deposed for a lot longer than

19    they would -- they would otherwise have been deposed for if all

20    they were going to be providing is 30(b)(6) testimony.  And so

21    we think -- you know, we will certainly work with plaintiffs.

22    And what we had proposed was for every hour of 30(b)(6)

23    testimony that they -- that there would be some allocation --

24    there would be some sliding scale but that we would not be

25    doing away with the 30(b)(6) -- with the fact testimony

```
 1   entirely.
 2          THE COURT:  Well, let me tell you the Court's ruling.
 3   And to make it perfectly clear so there's no mistake on the
 4   record, the Court reiterates its holding that it is not
 5   allocating the days that the Court has ordered for plaintiffs.
 6   The Court has discretion to permit a party to take more than
 7   seven hours of deposition.  And if there's ever a case where
 8   that seven-hour limit should be extended, this is it, due to
 9   the incredible complexity and technicality of the issues to be
10   addressed on top of the fact that these depositions are being
11   taken by Zoom, on top of the fact that we're dealing with
12   foreign language and travel.
13          So to make it unmistakably clear, if the plaintiffs
14   want to use two days for 30(b)(6) deposition testimony and no
15   time for fact deposition testimony, that is their prerogative.
16   The Court is not going to step on plaintiffs' discretion to
17   decide how it wants to allocate their time.  The Court has
18   limited significantly the time that plaintiffs represented they
19   needed.  In order to be fair to all parties, the Court
20   sharpened its pencil and looked at the notices and looked at
21   the topics and tried to come up with a reasonable allocation of
22   days, and I'm going to leave it to the plaintiffs to decide how
23   they want to use their time.
24          MR. GOLDBERG:  I understand, Your Honor.  Just one
25   point, if I may.
```

1    If they -- if they were to choose to use all of the

2  time for a witness as 30(b)(6) time, and later in the case that

3  witness was going to be presented at trial, for example, we

4  wouldn't want to be heard that they should be able to take that

5  deposition -- that witness's deposition as a fact deposition,

6  and that we have somehow, you know -- that -- that they should

7  somehow then get that fact deposition.  I mean, I think we

8  would argue that they would have waived the ability to have a

9  fact deposition at that point.

10    THE COURT:  Mr. Goldberg, if I was ruling on that

11  issue, I would agree with you one thousand percent.

12    MR. GOLDBERG:  Okay.

13    THE COURT:  Plaintiffs have two days to take that

14  deposition.  They can allocate it however they want, but they

15  can't come back and ask for three days because they took two

16  days to take a Rule 30(b)(6) deposition.  I -- you know, I

17  would assume that that shouldn't be a matter of legitimate

18  debate, but this Court has made it clear that if it was ruling

19  on the issue, it has no doubt, zero doubt, that plaintiffs'

20  request to take a seven-hour deposition, after it took a

21  two-day 30(b)(6) deposition, when it had two days, the request

22  would be denied.

23    MR. GOLDBERG:  Thank you.

24    THE COURT:  So why don't we move on to the next topic,

25  which is Mylan, I think.

1          MR. DAVIS:  Yes, Your Honor.  It's John Davis for the

2    plaintiffs.  I'm sorry to have cut you off there before.

3          I just wanted to give an update.  Clem -- Mr.

4    Trischler and I had some productive conversations.  We've

5    agreed to on the who, who's going to be deposed, and I think,

6    you know, given the Court's ruling, I think we're going to

7    agree on the scheduling, which we're already pretty close to a

8    full set schedule anyways.

9          I do want to talk about the deposition length, though.

10   And we have quite a sticking point there.  And I don't want to

11   blame Mr. Trischler, my impression would be it's more the

12   clients, but, you know, we never got really an offer more than

13   seven hours total.  And so if you read the letter and the

14   insert on Mylan, that insert was our latest proposal to Mylan

15   in a compromise.  And I felt, to some extent, that I was almost

16   negotiating with myself there.  And that was a proposal of, I

17   believe, three days with Mr. Glover, who is a witness that

18   Mylan designated for over half of the 54 30(b)(6) topics, I

19   believe 28 of them, two days with Mr. Talton and Mr. Molnar,

20   one and a half days with Snider and one day with Ms. Reed, and

21   given the Court's guidance, which is, we can use the time as we

22   see fit, I think that's particularly optimistic for Mylan.

23   There are three of the witnesses we don't even have custodial

24   files for.  I recognize Your Honor already ruled on that.  But

25   I think that I'd say -- you know, I'm not going to ask for much

1  more than what I had asked for of Mylan in our meet and

2  confers, but I think given the way Your Honor's gone with this,

3  I think that's actually, you know, a reasonable spot to arrive

4  at.

5          THE COURT:  Counsel, I'm a little confused about Mylan

6  because -- and it could be how I read the letter.  At first I

7  thought the letter indicated that Mylan was only producing one

8  witness in response to the 30(b)(6) notice, but then the letter

9  goes on to talk about, you know, the four or five people that

10  you just mentioned.  What did I miss?

11          MR. DAVIS:  My apologies if that was unclear.  I

12  believe what I was trying to say was that Mylan had designated

13  a single witness for 28 of the 54 topics and that's across

14  various topical areas.  And so, you know -- his name is Derrick

15  Glover.  And, obviously, for that many topics spread across

16  numerous topical areas, we're going to need quite a substantial

17  amount of time with him.

18          My proposal to Mylan had been three days total and I

19  think that's -- that's reasonable, three days including --

20  including any time that I would use for a fact deposition.  I

21  can re-list the other four witnesses and the times that I

22  proposed to Mylan for those.  Again, that was in the spirit of

23  compromise, if you wish me to list those.

24          THE COURT:  Before we hear from Mylan, what I'm

25  hearing you saying is you may not be there yet but it seems

```
 1   like you're going to agree on who's going to be deposed and the
 2   schedule to depose those witnesses, but the issue to be
 3   addressed is how long the 30(b)(6) deposition plaintiffs have;
 4   am I correct about that?
 5             MR. DAVIS:  Yes, Your Honor.  I mean, I guess just
 6   with the caveat that, you know, we didn't have any role in who
 7   Mylan designated as the corporate designees.  I think we might
 8   have made different choices but that's, you know, not something
 9   we can have input in, at least that's my understanding of
10   corporate designees.  But, yes, we've agreed on several
11   US-based fact witnesses, several India-based fact witnesses.  I
12   think, you know, the Court's guidance on the time length is
13   going to shore up any final issues that may have lingered to
14   today as regards to scheduling of them.  But I think the
15   scheduling is something that we can work out; it's the time
16   lengths that we're concerned with today.
17             THE COURT:  And what I'm hearing is plaintiffs'
18   proposal is, and I'm going by the number of days, three plus
19   two plus one plus one and a half, which is you want a total of
20   seven and a half days of 30(b)(6) deposition testimony; am I
21   right?
22             MR. DAVIS:  Three plus two plus two plus one and a
23   half plus one.  Three for Glover, two for Talton, two for
24   Molnar, one and a half for Snider, one for Reed.
25             THE COURT:  Okay.  So I have my math wrong.  Then it's
```

1   five, six, eight, nine -- nine and a half, is that what it adds

2   up to?

3           MR. DAVIS:  Three, five, seven, eight -- nine and a

4   half days total, Your Honor.

5           THE COURT:  Okay.  So nine and a half times seven -- I

6   have my handy computer in front of me, bear with me -- is --

7   9.5 times seven -- 9.5 times seven is 66.5 hours.

8           So let's hear from Mylan.

9           MR. TRISCHLER:  Thank you, Your Honor.  Clem Trischler

10  on behalf of the Mylan defendants.

11          Perhaps just to make sure we have a clear record

12  before we talk about what's at -- where the parties disagree, I

13  think it might be helpful for context, at the very least, to

14  talk about where there's agreement because I think, for the

15  most part, the vast majority of the issues with respect to the

16  deposition schedule of the Mylan defendants has been resolved

17  based on a number of meet-and-confer conferences that the

18  parties have conducted.

19          First of all, the parties have agreed to a total of 12

20  witness depositions for Mylan.  Five of those witnesses have

21  been designated to cover the 30(b)(6) topics directed to the

22  Mylan defendants.  The remaining seven are fact witness

23  depositions.  We have offered dates for those depositions

24  throughout the months of February and March.  For the most

25  part, that schedule is agreed upon between the parties.

1    I think what Mr. Davis and I discussed as recently as

2  last evening and this morning was that once we had some final

3  guidance from the Court as to the amount of time that was going

4  to be permitted with each of these depositions, that would help

5  us finalize the start date and end dates for the various

6  depositions; but, generally speaking, with respect to the

7  schedule, Your Honor, it's 99.9 percent there.

8    So the witnesses -- the identification of the

9  witnesses has been agreed upon, the schedule is generally

10  agreed upon.

11    Where we disagree is, as has been discussed, is the

12  amount of time that the plaintiffs are seeking for these

13  depositions.  I believe that nine and a half days of testimony

14  for five corporate witnesses is excessive.  The Rules of Civil

15  Procedure, as we all know, establish limits for a reason.  I

16  certainly agree with the Court's comments at the outset of this

17  conference that those limitations on discovery are

18  discretionary, but I believe, you know, nine and a half days is

19  simply too much.

20    What we proposed in the alternative was 14 hours for

21  the deposition of the 30(b)(6) witnesses to be spread across

22  the five witnesses as the plaintiff deems fit.  So that would

23  be 14 hours on top of the -- since they want to take the

24  witnesses as fact depositions, start with the seven,

25  presumptive seven hours, plus 14 and a half to be spread across

1    the five witnesses as they see fit.

2         I think that the argument that the plaintiffs

3    consistently make is, well, there's a whole lot of topics here,

4    Judge, and there's a whole lot of things to cover and so we

5    need a lot of time.  And so they serve a 30(b)(6) notice that

6    has 50-plus topics but when you look carefully at the notice,

7    Your Honor, there's really five issues that are covered in the

8    -- with subject matters that are repeated over and over and

9    over again and are phrased in a slightly different manner; but

10   really what the subject matters are, number one, process

11   development; number two, testing, cGMP and manufacturing

12   controls; number three; risk assessments with respect to

13   nitrosamines and the contamination that was found; number four,

14   regulatory affairs issues; and, number five, sales issues.  And

15   there's a designee that's been identified on each one of those

16   subjects.

17            THE COURT:  How about product treatment?

18            MR. TRISCHLER:  Excuse me?

19            THE COURT:  Product treatment.

20            MR. TRISCHLER:  That falls under the sales umbrella.

21   I think that the notice talks about sales and tracing.  And so

22   there's a witness that's designated on each of those subjects

23   and I submit just because you list those subjects over and over

24   again and phrase them slightly differently doesn't make the

25   deposition more complex than it is; it doesn't justify days and

1    days of deposition testimony.

2            And so, you know, I realize that the Court has to do

3    -- is in a difficult position trying to find a, you know, a

4    balance and trying to find what's fair, but I think a proposal

5    that we've made that is double the presumptive time that's

6    authorized under the Federal Rules of Civil Procedure is more

7    than fair; and subjecting five witnesses to nine and a half

8    days of testimony I think goes over the edge and is too much.

9            THE COURT:  Let me ask a question about Mylan just to

10   find out if it's the same calculation as it was with ZHP

11   because I think it's a very, very important point.

12            When we were dealing with the ZHP witnesses, we were

13   only dealing with the 30(b)(6) witnesses who were also going to

14   be fact witnesses.  So, for example, when we talked about one

15   day for one of those witnesses, it was one day total for

16   30(b)(6) and fact testimony.  So plaintiffs had proposed three

17   days for Mr. Glover.

18            Plaintiff, am I correct that when you said three days,

19   you were assuming that would be the total of 30(b)(6) and fact

20   testimony?

21            MR. DAVIS:  Yes, Your Honor, that is correct.  And

22   that's why I made a point to mention that, you know, Mylan is

23   somewhat unique amongst the defendants.  I don't think any

24   other defendant put forth a corporate designee that was not

25   listed as a custodian.  And so, you know, we're -- we're

1    willing to accept the designees that have been given to us

2    since, obviously, we have to; but that use of fact witness time

3    is somewhat, you know, less, we're less able to use three of

4    these witnesses.  We don't even have custodial files.

5            MR. TRISCHLER:  So, Your Honor, if I could address

6    that issue.  That's totally irrelevant to the issue of the

7    topic of the deposition.

8            THE COURT:  Hold on.  Hold on.  Mr. Trischler, I don't

9    mean to interrupt you but I don't want to lose my train of

10   thought.  I want to nail this down and, of course, then I'll

11   turn the floor over to you.

12            Plaintiff talked about these five witnesses who were

13   going to be produced from Mylan now who were going to be

14   responsive to the 30(b)(6) notice.

15            Plaintiff, are you also seeking to depose these five

16   as fact witnesses?

17            MR. DAVIS:  I think, you know, similar to what Your

18   Honor said in regards to ZHP, I think, you know, we would just

19   kind of use our time as -- if we're -- you know, for example, I

20   propose one and a half days with Dr. Snider, for example, and I

21   think the way we propose handling it, I think like Your Honor

22   suggested with regard to ZHP, is, you know, if we feel like at

23   the end of that one and a half days that we just need to use

24   all of that for 30(b)(6), that's a decision we'll have to live

25   with.  But -- but Your Honor is correct, what I proposed is a

1     time for both 30(b)(6) and fact witness time.

2         THE COURT:  Okay.  So, again, it's so hard to try and

3     come up with a reasoned basis for how many hours to limit these

4     depositions to; but in the first instance, plaintiff is asking

5     for nine and a half days or 66.5 hours.  Of that 66.5 hours, 35

6     of those hours are for fact depositions, right?  So plaintiff

7     is asking for 31.5 hours of 30(b)(6) deposition testimony

8     because they're going to get that seven anyway.  Plaintiffs are

9     asking for 31.5 and Mylan is saying give them 14.  So, you

10     know, that's what -- it may not be the most scientific way to

11     look at this, but I'm trying to come up with some reasonable,

12     rational basis to try and reach a fair conclusion.

13         MR. TRISCHLER:  Your Honor, this is Clem Trischler, if

14     I may.

15         You know, I'll accept the Court's math because you've,

16     obviously, spent more time crunching those numbers than I have,

17     but, you know, what dawns on me, and if we're looking at a fair

18     result, a fair result is one that ought to be equitable and

19     apply equally across all of the defendants.  What the Court did

20     with respect to ZHP, who was producing ten corporate designees,

21     was to allow 45.5 hours of corporate -- of corporate designee

22     time spread across ten witnesses, which is about four and a

23     half -- by my math, about four and a half hours per witness.

24     Mylan's producing five depositions.  If we apply the same

25     rationale, when we proposed 14 hours, a compromise would be

 1    something along the lines of 21 hours.  That would be --

 2              MR. DAVIS:  Your Honor, may I respond to that?

 3              MR. TRISCHLER:  -- the same amount of time that the

 4    Court has provided plaintiffs with respect to ZHP; I don't know

 5    why Mylan should be treated differently.  And, again, the

 6    argument that under Rule 30(b)(6) that we can identify any

 7    manager or person who consents to testify on behalf of the

 8    corporation who's prepared to address the subject matters, the

 9    fact that they're not a designee doesn't matter, and the fact

10    that they don't have a custodial file doesn't entitle the

11    plaintiff to, you know, additional time to conduct the witness

12    deposition.

13              So I think that -- I sympathize with the Court's

14    struggle to find an equitable solution.  My argument as to

15    what's equitable is that it ought to be equally applied to all

16    the parties.  And based on the rulings that we have so far, 31

17    and a half hours of 30(b)(6) time to the plaintiffs on top of

18    seven hours for each of the corporate designees wouldn't strike

19    me as fair.  It strikes me as excessive and more than what the

20    other defendants have been required to provide.

21              MR. DAVIS:  Your Honor, may I respond to a few points?

22              THE COURT:  Last word.

23              MR. DAVIS:  Sure.  Yeah, I don't -- I think that Mr.

24    Trischler's argument has a logical fallacy to it, which is,

25    Mylan should be getting a benefit from producing fewer witness.

1    It's the same number of topics or mostly the same number of

2    topics.  And so I don't think there's any logical basis to

3    saying that they should get some kind of break because they

4    produced fewer witnesses.

5            In addition, you know, I only brought up the lack of

6    custodial files to say that, you know, we would be wanting to

7    use most of this time for 30(b)(6) time and that's the basis

8    for, you know -- and, again, I prefaced my argument with this,

9    is that what I put in the letter was not our litigation

10   position, it was my compromise position.  That's what I came in

11   with.

12           So I started from a point of being reasonable.  I

13   don't think Mr. Trischler's client was being all that

14   reasonable in asking for, at first, seven hours total, which I

15   think would be about seven minutes per topic, if you do the

16   math, which is barely enough time to get a question or two in.

17           So, I mean, I would just say with that, I don't think

18   that -- that Mylan should get a break for producing fewer

19   witnesses.

20           THE COURT:  Okay.  Here's my question, last question

21   to you, plaintiff:  Can you give me the names again?  I have

22   Mr. Glover's name.  Can you go through the other four

23   witnesses?

24           MR. DAVIS:  Sure.  My proposal is three days for Mr.

25   Glover, two days for Mr. Talton, that's T-A-L-T-O-N, two days

1    for Mr. Molnar, it's M-O-L-N-A-R, 1.5 days with Dr. Snider,

2    S-N-I-D-E-R, and one day with Ms. Katie Reed, R-E-E-D.

3           THE COURT:  Okay.  Here's the Court's ruling and I'm

4    going to do it the same way we did it with ZHP.

5           Glover, three days, Talton one and a half days,

6    Molnar, Snider, Reed, one day.  That's a total of three, four,

7    five, six, 7.5 -- 7.5 days.

8           Next is Teva.

9           MS. WHITELEY:  Good afternoon, Your Honor.  This is

10   Conlee Whiteley on behalf of the plaintiffs.

11          We met and conferred with Teva's counsel up until a

12   couple moments before this call and we have made a good bit of

13   progress.  For starters, and most importantly, at least, that

14   was what our primary concern was, we've been able to move some

15   dates into February.  Two of those have been confirmed with

16   actual dates and names and we're working on placing the other

17   three.  So that alleviates some of the dates that were being in

18   March.

19          We also began talking about the hours to be allocated.

20   Teva wanted to -- has proposed, I believe, 20 and we were not

21   able to agree to just have a lump sum and we believe that to be

22   not enough number -- the hours would not be enough for all of

23   the witnesses.  We were not able to come to agreement on a

24   per-witness amount; but we did discuss how to allocate between

25   the 30(b)(6) time period and the fact time period and were

 1   making progress.

 2           I believe within the guidelines you set between ZHP

 3   and Mylan, and Teva's just about in the middle there in terms

 4   of the witness number, and, of course, the topics are very

 5   similar, that we can reach an agreement based on the progress

 6   we've made today.

 7           THE COURT:  So, Ms. Whiteley, are you suggesting that

 8   the Court permit Teva and plaintiffs to work it out?

 9           MS. WHITELEY:  Yes, Your Honor.  What my suggestion

10   would be, and, you know, subject to Teva's response, would be

11   that we put together a chart that identifies the witnesses, as

12   you've done, and then allocate the hours or days for each and

13   submit it to the Court for approval.

14           THE COURT:  Any objection, Teva?  Or do you want to

15   just hash it out now?

16           MS. LOCKARD:  I don't have an objection to that, Your

17   Honor.  It's Victoria Lockard, for the record.

18           We did make some progress on the call today and, you

19   know, we acknowledge that your Court -- Your Honor's rulings

20   would sort of guide us in finalizing this.  So I think we

21   should be able to reach agreement.

22           I will just note for the record, I think we had agreed

23   to five of the seven 30(b)(6) witness dates so far, and we're

24   shortly away from confirming the other two, and we have managed

25   to move three, possibly four of those to February.  So I think

 1  that alleviated the crunch time that the Court was concerned

 2  about.  So we're making good progress and I think that we could

 3  avoid taking up the Court and the other parties' time and just

 4  get this resolved on our own today or this week.

 5          THE COURT:  Thank you, counsel.

 6          Next issue is Aurobindo.  Is there a dispute,

 7  plaintiff?  Maybe somebody's talking but they're on mute.

 8          MR. NIGH:  Is Ruben on the line?  I'm not sure if he's

 9  on.  I saw an email saying --

10          THE COURT REPORTER:  I'm sorry.  Who's speaking?

11          MR. NIGH:  This is Daniel Nigh.  I was just seeing if

12  Ruben Honik is on the line.

13          THE COURT:  He might be but he might be on mute.  I

14  can't hear him.

15          We'll come back to Aurobindo.  Maybe we could track

16  down counsel in the meantime.

17          Do I understand that Hetero is worked out?

18          MR. SLATER:  Yes, Your Honor.  This is Adam Slater.

19  Hetero is worked out.

20          THE COURT:  Okay.  And then before we turn back to

21  Aurobindo --

22          THE COURT REPORTER:  Your Honor, I apologize.  You're

23  breaking up terribly now.  I don't know if somebody logged on

24  that's interfering with you, but right now you're breaking up.

25          THE COURT:  Whoever's not speaking, can you please put

1    your phone on mute so the interference can stop.  Thank you.

2            Torrent, is there plaintiffs who want to speak to

3    Torrent?

4            MR. NIGH:  Yes, Your Honor.  This is Daniel Nigh for

5    the plaintiffs.

6            We have reached an agreement as to the 12 witnesses

7    that we're going to take.  The way that ours looks --

8    unfortunately, we don't have a chart to send to you because we

9    have reached a lot of this agreement over yesterday and early

10   this afternoon, but we have 12 witnesses.  Amongst those 12,

11   there are four that are 30(b)(6).  Two of them overlap.  So by

12   that I mean there are -- there are one, two, three, four, five,

13   six -- there are nine that are fact witnesses only, there are

14   two that are 30(b)(6) only, and then there are two that are

15   both fact and 30(b)(6).

16           THE COURT:  Okay.

17           MR. NIGH:  So with that, we've agreed on those.  We've

18   agreed on dates for nearly all of the 12 proposed, except for

19   three of them are former employees and we've agreed with

20   Torrent that Torrent doesn't represent the former employees at

21   this time and that we will go ahead and subpoena those former

22   employees.

23           We -- our one level of dispute is on the four

24   30(b)(6) deposition dates -- I mean, not the dates but the

25   times.  So we have four 30(b)(6) deponents.  Their names are

1  Reddy Naravatla, Kelly Gegenheimer, Sushil Jaiswal and

2  Maitreyee Mukherji.  The defendants have proposed a total of 15

3  hours for all depositions.  We, on the flip side, believe that

4  we should allocate an amount of time for each of these.

5          In terms of their 30(b)(6) testimony, Reddy Naravatla

6  is just a 30(b)(6) and that does not overlap with fact.  And so

7  we believe that we should have a total of two days for that

8  witness.

9          Kelly Gegenheimer is an overlapping witness such that

10 it's a fact witness plus a 30(b)(6).  There aren't as many

11 topics with that witness, so we would propose -- as many

12 30(b)(6) topics, so we would propose one and a half days for

13 Kelly Gegenheimer.

14         Then there is Sushil Jaiswal, and there are many

15 topics, in fact, the majority of topics in terms of 30(b)(6)

16 notice that we propounded, many of those topics that they are

17 putting up Jaiswal for.  So we, actually -- this is the one

18 that we need the most time on, and we propose a total of two

19 and a half days for Jaiswal.

20         And then for Mukherji, there -- this is a -- just a

21 30(b)(6) only and not a fact witness, so we just propose the

22 one day on Mukherji for those 30(b)(6) topics.

23         THE COURT:  So my math is that's a total of seven

24 days; am I right, Mr. Nigh?

25         MR. NIGH:  Yes.

1          THE COURT:  A question before we turn to Torrent.  Is

2    Torrent in any materially different position in this case than

3    Mylan?  Because in Mylan's case, the Court ordered a total of

4    seven and a half days.  Is Torrent, again, to repeat, in a

5    materially different position or similar position as Mylan?

6          Mr. Nigh, did you hear me?

7          MR. NIGH:  I can hear you.  I apologize.  I -- I think

8    that they are fairly similar between Mylan and Torrent in terms

9    of the number of topics that need to be covered.  Torrent is a

10   finished dose manufacturer but also is receiving their product

11   from ZHP and certainly have, you know, several interesting, you

12   know, topics and issues and things of that nature.  Mylan is a

13   API manufacturer.  But, overall, I think that they're, in terms

14   of the amount of testimony that we need and the documents and

15   sorting the amount of time would be similar between the two for

16   30(b)(6) testimony.

17         THE COURT:  Okay.  Let's hear from Torrent's counsel.

18   Plaintiffs are proposing seven days so 49 hours and Torrent has

19   proposed 15 hours.

20         MS. NAGLE:  Hi, Your Honor.  This is Brittney Nagle on

21   behalf of Torrent.

22         So I would just ask that, you know, similar to the

23   Teva defendants, that Your Honor tables this for tonight and

24   lets us continue to work with the plaintiffs.

25         So as of this afternoon, the disagreement was that we

1  had proposed 15 hours and plaintiffs had actually proposed 25

2  hours to be allocated among the four 30(b)(6).  And to be

3  clear, when I say 15 and 25, that is just purely 30(b)(6).

4  That does not include the seven hours for fact testimony for

5  those that are dually designated.

6          And then I spoke to plaintiffs' counsel right before

7  this call and I received a proposal at about ten past four with

8  a breakdown of, again, just 30(b)(6) testimony, not including

9  the fact hours for dually designated witnesses, that adds up to

10 30 hours.  So a little bit higher than where we were this

11 afternoon and certainly a lot lower than, you know, the numbers

12 we're throwing out now.

13         So I would just ask Your Honor that, you know, given

14 that we haven't gotten a chance, you know, on our end to circle

15 up and then to even broach the subject with plaintiffs and see

16 if we could come to an agreement, I would ask that Your Honor

17 defer on making any rulings tonight and let us continue to work

18 this out.

19         THE COURT:  That's perfectly fine with me if Mr. Nigh

20 agrees.

21         MR. NIGH:  Your Honor, I agree with that proposal.

22         THE COURT:  Okay.  So we'll table Torrent.

23         The only party left, which we'll circle back on, is

24 Aurobindo.  Have we tracked down the attorneys who are going to

25 address that issue?

1          MR. HONIK:  Your Honor, this is Ruben Honik.  I

2    apologize for coming on the call so very late.  I just got on

3    in the last four or five minutes.  And myself and Mr. Oberfeld

4    I think are prepared to address Aurobindo.

5          THE COURT:  Okay.  So why don't you tell me what

6    you -- what the dispute is.

7          MR. HONIK:  Your Honor, the dispute is about the

8    number of individuals and when we're to commence the 30(b)(6)

9    witnesses.  Aurobindo has offered the 30(b)(6) witnesses only

10   beginning March 22nd.  And as I'm sure has been covered earlier

11   in this conference and before, I mean, that just puts us in a

12   -- in an untenable position.

13         So issue number one is ensuring that we get some of

14   these witnesses at the earliest possible juncture and certainly

15   no later than the beginning of February, if possible.

16         THE COURT:  That's easy.

17         What's the second issue.

18         MR. HONIK:  The second issue, Your Honor, concerns the

19   individual witnesses.  There were originally 16 identified.

20   It's been represented that six of them are former employees and

21   we understand Aurobindo may not have control over them; and for

22   reasons related to how they appeared in documents that we've

23   reviewed, there were two that were listed twice.  So there's a

24   net eight individual witnesses that we propose taking, and,

25   simply stated, we haven't gotten any dates from Aurobindo and

1  we've included the eight in our proposed schedule that was

2  Exhibit -- sent in as an exhibit.  I believe, unfortunately,

3  March was excluded but we -- we selected dates that were

4  acceptable from our standpoint for the eight individual

5  witnesses and would ask the Court to order them.

6          THE COURT:  Are these eight witnesses, are they

7  American witnesses?

8          MR. HONIK:  As I understand it, but I could -- I could

9  be corrected, they're Indian nationals that Aurobindo has

10  confirmed can be produced.

11          THE COURT:  Are they in the United States or India?

12          MR. HONIK:  To the best of my knowledge, they're all

13  in India; but, again, I --

14          MS. HEINZ:  Your Honor, this is Jessica for Aurobindo.

15  They are all in the U.S.

16          THE COURT:  Okay.  That's even better.

17          MS. HEINZ:  Your Honor --

18          THE COURT:  I'm sorry.  Is the issue -- put apart the

19  dates of the depositions.  Is the issue whether plaintiff is

20  going to be permitted to take the depositions of these eight

21  individuals?  Is that what the dispute is?

22          MR. HONIK:  I don't believe that's the case.

23          MS. HEINZ:  Your Honor, I have been meeting and

24  conferring with the plaintiffs.  I wish that we could have done

25  so earlier.  I actually just received this list of additional

1   witnesses last Thursday.  I initially -- when I designated my

2   30(b)(6) witnesses, I did receive a request to propose earlier

3   dates.  I have been looking into that and I haven't done so

4   yet.  But when I spoke with plaintiffs' counsel just yesterday,

5   I told them that I do think we're going to be able to reach an

6   agreement on producing some of these eight fact witnesses that

7   they have proposed and I think we're going to be able to

8   propose dates in February for some of those that we agree on,

9   and I think we can also provide some earlier dates in March for

10  the 30(b)(6) witnesses as well.

11          I would just ask the Court that we be granted the

12  opportunity to continue to meet and confer with the plaintiffs.

13  We just -- you know, after I received the request for earlier

14  dates, I did offer time to meet and confer with the plaintiffs

15  and would have thought that maybe we could discuss these

16  witnesses at that time.  I didn't receive a response to my

17  proposed dates to meet and confer, and then I got this list

18  last Thursday and I, again, asked to meet and confer with

19  counsel, which we did yesterday.  And then shortly before the

20  conference call, I think within the hour before the conference

21  call, you know, counsel reached out to me again with some

22  additional proposed dates for the witnesses.

23          So I would just ask that we be granted an opportunity

24  to continue to meet and confer on this.  You know, I think that

25  the Court's rulings so far today have been very helpful and

1  we'd just ask for some more time to reach an agreement with the

2  plaintiffs.  I'm confident that we're going to be able to work

3  something out.

4          THE COURT:  Before we get to that, is there also a

5  dispute about the length of the 30(b)(6) depositions like there

6  was with some other parties?

7          MR. HONIK:  Your Honor, this is Ruben Honik.

8          I would say that there has been some dispute.

9  Inasmuch as I haven't been on this call, I don't know whether

10  there's been some guidance from the Court; but because there is

11  disproportionality among the 30(b)(6) designees in terms of

12  number of topics, we had proposed that some of the witnesses,

13  for example, be set aside for two days and I don't believe we

14  reached agreement with counsel on that but perhaps it exists

15  now.

16          THE COURT:  How many total days are you proposing that

17  it would take for Aurobindo's 30(b)(6) depositions?

18          MS. HEINZ:  So we -- I apologize.

19          MR. HONIK:  Go ahead, Jessica.

20          MS. HEINZ:  I misheard you, Judge.  I thought you said

21  Ms. Heinz.  I apologize.  Should I go --

22          MR. HONIK:  Feel free -- feel free to jump in,

23  Jessica.

24          MS. HEINZ:  Thanks, Ruben.

25          So we proposed, in terms of numbers of hours for our

1   three 30(b)(6) witnesses, we proposed 21 hours, Your Honor,

2   which is seven days -- I mean, I apologize, three days of seven

3   hours.

4           THE COURT:  And, Mr. Honik, what do you propose?

5           MR. HONIK:  Your Honor, if you look at the exhibits

6   that we sent into the Court, Steven Lucas is the first of the

7   30(b)(6)'s -- and, Andrew, if you're on the call, please

8   correct me if I'm any way wrong -- two days for Mr. Lucas,

9   given the number of topics assigned to him, two days for Blessy

10  Johns, given the number of topics assigned there, and two and a

11  half days for Sanjay Singh, given the overwhelming number of

12  topics assigned to Mr. Singh.

13          THE COURT:  Well, counsel, I'm going to take your

14  guidance.  It seems to the Court there's two issues outstanding

15  --

16          THE COURT REPORTER:  Excuse me, Your Honor.  Your

17  Honor, excuse me.  You're breaking up again.  I'm unable to

18  hear you.  "It seems to the Court there's two issues

19  outstanding."

20          THE COURT:  It seems to the Court there's two issues

21  outstanding because you apparently reached a meeting of the

22  minds that these eight individuals are going to be deposed.

23  One issue is when the depositions are going to be taken; and,

24  two, the length of the 30(b)(6) depositions.  I'm taking

25  guidance --

1          MR. HONIK:  That's correct.

2          THE COURT:  I'm taking guidance from the parties.  If

3     you want me to rule on this issue now, I will; I'm prepared to

4     do that.  I'm prepared to order that Aurobindo produce all of

5     its witnesses in February because we've been through this how

6     many times, pushing all these depositions back to March.  It's

7     just not fair.

8          So do you want me to address and rule on when the

9     depositions are going to be taken and the length of the

10    30(b)(6) depositions or do you want to defer and work it out

11    amongst yourselves?  You tell me what you want to do.

12         MR. HONIK:  Your Honor, I've been late to today's

13    conference, and, again, I apologize because it sounds like

14    you've given considerable guidance.  I think hearing Jessica as

15    I have today, I would -- I would prefer to have a very short

16    window of a day or two to try to have a meeting of minds

17    between counsel, but recognizing that if we don't that there's

18    some, you know, fall-back opportunity to have the Court help

19    the process move forward.

20         THE COURT:  Torrent, is that -- sorry.  Aurobindo, is

21    that what you want, too?

22         MS. HEINZ:  Your Honor, I appreciate what Ruben has

23    said and, you know, that's fine with me.  However -- and I

24    understand that Ruben hasn't been on the call this whole time

25    but I would just ask that we don't have a -- any sort of limit

1  on us set by the Court since that wasn't done for the other

2  defendants that are going to continue to meet and confer.

3         THE COURT:  I don't know what you mean by a limit,

4  counsel.

5         MS. HEINZ:  I'm referring to Ruben's request for a

6  short window of time, I suppose, to meet, confer and get back

7  to the Court.  I don't think an order on that is necessary.  I

8  think that we're going to be able to work this out.

9         MR. HONIK:  Well, Your Honor, hope springs eternal but

10  my only -- the only point I was trying to make is that we're

11  already pretty deep into January and if we're to get ready for

12  depositions, a lot of them occurring in February, I just want

13  to know, you know, where we stand sooner than later.  So, for

14  example, if we're not able to have a meeting of minds by, say,

15  Monday of next week, I'd like to be able to submit to the Court

16  a letter or something advising the Court where we are and get

17  guidance to the extent that we can't reach agreement.

18         THE COURT:  I'm not putting any constraint, and never

19  have, when the parties can raise disputes with the Court.  The

20  only comment I'll make is Aurobindo is saying it wants time to

21  work this out.  What have the parties been doing the last six

22  months when they knew depositions were going to start in

23  January?  And the parties wait until the 11th hour plus 59

24  minutes to start to roll up their sleeves and talk seriously

25  about this issue.  So it's perfectly understandable why

1  plaintiff would want a day or two, at least; but if you want

2  time to work it out, you got it.

3       So as far as the Court's agenda is concerned, it has

4  addressed all of the issues that it had on its agenda.  We've

5  laboriously gone through the deposition scheduling issue for

6  ZHP, Mylan, Teva, Aurobindo, Hetero and Torrent.  I don't have

7  any other issues on my agenda before I excuse myself.

8       Are there any other issues the parties want to raise

9  while I'm on the phone?

10       MR. SLATER:  Your Honor --

11       MR. GOLDBERG:  Your Honor, this is -- go ahead, Adam.

12       MR. SLATER:  I don't want to interrupt you.  Go ahead.

13       MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

14  Defendants do not have any other issues to raise today.

15       I did want to, on behalf of defendants, thank Your

16  Honor for all of the work you put in with us on this case over

17  the last two years.  It's been a great experience to be working

18  with you and so closely with you, especially on a biweekly

19  basis that Your Honor has -- the schedule that Your Honor has

20  had us on has really given us a chance to work very closely

21  with you and I think I speak for all defendants in saying that

22  we truly enjoyed and appreciated the experience.  So thank you

23  very much.

24       And I'll open it to any of my colleagues who might

25  want to weigh in as well.

1          MR. SLATER:  Hello, Your Honor.  Adam Slater.  Nothing

2     else for the plaintiffs on this hearing.

3          I'm sure everybody on the call would have a lot of

4     very nice things to say to you.  I'm glad that I had an

5     opportunity today to whine to you as I've done for years.  I

6     hope -- I hope -- you know, I'm going to miss whining to you in

7     the future in this capacity in this case and, you know, there's

8     nothing I can really say other than, you know, tremendous

9     respect and thanks for everything that you've done.

10          THE COURT:  Well, I thank you for the kind words,

11     counsel.  It was a pleasure to work with all of you.  And, of

12     course, we've had our differences over time, which is to be

13     expected, but as far as I'm concerned, at all relevant times

14     everyone, on both sides of the V, acted in a thoroughly

15     professional manner and is a credit to their clients and the

16     Court and respect for the Court, and it was just a pleasure.

17          So I'm going to sign off.  I'm going to -- I don't

18     think it's appropriate for me to be on the call while you talk

19     with the Special Master.  I don't think this call will

20     disconnect; but if it does, just call back in.  And good luck

21     to you all.  And I'm going to put together an order confirming

22     the rulings today.

23          Thank you very much everybody.  We're adjourned.  I'm

24     adjourned.

25          MR. GOLDBERG:  Thank you, Your Honor.

1          (Judge Schneider leaves the teleconference.)

2          JUDGE VANASKIE:  All right.  Can you all hear me?

3     This is Tom Vanaskie.

4          I want to make sure we have everything on the record.

5     And I also want to ask Camille, I intend to follow the schedule

6     that Judge Schneider had set in this matter and Judge Kugler

7     had set in this matter with calls every other -- well, it's not

8     every two weeks but in the middle of the month and the end of

9     the month, the second Wednesday and the last Wednesday of the

10    month, unless counsel disagree with that schedule.

11         So let me ask Mr. Slater, what's your view?

12         MR. SLATER:  Hello, Your Honor.  My view is if we can

13    maintain what we've been doing, it's certainly been very

14    helpful to the parties to be able to continually get issues

15    resolved timely.  So I would certainly, for the plaintiffs,

16    advocate to continue it; and I suppose if some miracle happens

17    and we have no issues for you, we can let you know.

18         JUDGE VANASKIE:  Right, exactly.  That would be fine.

19         Mr. Goldberg, what do you think?

20         MR. GOLDBERG:  Thank you, Your Honor.  You know, I

21    would certainly like to discuss this with my colleagues but,

22    you know, I think that we had raised with the Court before your

23    appointment the fact that we thought that the schedule of

24    biweekly hearings was potentially too much and unnecessary and

25    would also result in, you know, an increased cost, not just

1    work time but time for Your Honor, respectfully.  Obviously, we

2    are -- you know, we've got a lot of resources here but, you

3    know, we just haven't had a chance -- we thought Your Honor

4    would give us what you -- your proposal and I think we would

5    like to at least be able to confer among ourselves on the

6    defense side.  Because we also understand that there is going

7    to be a Magistrate appointed that were assigned to the case, I

8    think it was going to be Magistrate Judge Williams; and

9    depending on how the issues would be allocated as between you

10   and Magistrate Williams, we would like to then determine how

11   often we would meet with Your Honor.

12        JUDGE VANASKIE:  I think I can provide some clarity

13   there.

14        My understanding is that Judge Kugler would like me to

15   resolve all -- or address all discovery issues, issue orders

16   that are within the purview of a Special Master, and then if

17   there's a challenge to those orders, it be handled by Judge

18   Williams.  The expectation was that she would not be involved

19   in these conference calls for that reason, that she would be

20   the one he would ask to take up any challenges to any discovery

21   orders that may be issued.  Now, that's my understanding going

22   forward.

23        I certainly would want to give you the opportunity to

24   confer to see if you have another schedule to propose or

25   whether you believe that now that you're moving into

1    depositions that the -- there wouldn't be a necessity for this

2    call, this middle-of-the-month call.  But my experience in

3    handling complex discovery matters is that the calls actually

4    facilitate resolution and expedite the handling of matters and

5    that's why I propose to stay on the same schedule.  But if -- I

6    think you should have the opportunity to confer and let me know

7    whether you'd like to stay on the same schedule and I'll look

8    forward to getting your views.  We can proceed on that basis

9    right now.

10         There is a call scheduled for the 27th of January and

11   I would expect that we would conduct that call as scheduled

12   with me standing in the shoes of Judge Schneider, big shoes to

13   fill for sure, in terms of how he's handled this matter, but

14   that's my expectation going forward in terms of the next

15   conference call would be on the 27th.  And I can confer, as

16   well, with Judge Kugler just to get his views again, but that's

17   my understanding of how he was expecting you to proceed here.

18         MR. GOLDBERG:  Thank you, Your Honor.  We will confer

19   as a group of defendants.  And as Your Honor may know, it's a

20   rather large group, we've got more than 50 defendants that are

21   litigating in this action, and I do appreciate the opportunity

22   to discuss it with them and then come back to Your Honor.

23         If, and maybe, maybe we should say that we will come

24   back to Your Honor if for some reason we have a different

25   proposal than what Your Honor has suggested.

1          JUDGE VANASKIE:  Okay.  That's fine.  That will be

2     fine.  Thank you.

3          What I wanted to ask is that there were several issues

4     that the parties are going to continue to meet and confer on,

5     the ones towards the tail end of the conference call today.  As

6     I understand it, Teva will be getting back in terms of whether

7     they've reached an agreement, Torrent and Aurobindo, and I

8     would hope that you would let me know when you've reached

9     agreement simply by sending -- either filing something of

10    record, I will be monitoring the docket, or emailing it to me

11    at my office address.  And let me know if that's a problem.

12    Because we could do everything through the Court docket, and

13    I'd prefer that it all be done through the Court docket and on

14    the record, but I would ask that you let me know and certainly

15    I'm hopeful that you all have those resolved prior to the 27th

16    of January; but if not, we'll take it up then.  Consistent with

17    what Judge Schneider indicated, I will not impose any deadline

18    by when you must let me know whether you've reached a

19    resolution or that you're deadlocked.  But just please let me

20    know either by putting it on the record, on the docket, or by

21    email to my office address.

22          The other point is that at the beginning of our call,

23    Judge Schneider identified what he believed to be the

24    outstanding matters that haven't been resolved yet, and some

25    are teed up by way of his order of January 11th where he's

 1    identified certain deadlines for filing of briefs that deal

 2    with discovery issues.  So I will be addressing those and we'll

 3    follow the schedule that he has set with respect to those

 4    issues.

 5          The motions to amend I believe will be not handled by

 6    me but I'm going to confer with Judge Kugler on that.

 7          Is there anything else you wanted to discuss with me

 8    today?

 9          MR. SLATER:  Your Honor, it's Adam Slater.

10          Our normal way of proceeding was, so that you would --

11    so that Judge Schneider would not be inundated with emails or

12    correspondence, he had directed us that he should only be

13    communicated with directly through liaison counsel.  I just

14    wanted to confirm if you'd prefer us to continue that practice

15    that we filter anything through liaison to you so that you,

16    again, don't get inundated with random emails and phone calls.

17          JUDGE VANASKIE:  Yes, Mr. Slater, that's how I would

18    like to proceed, through liaison counsel and not individual

19    counsel inundating me.

20          MR. SLATER:  Fair enough.  I think everything else you

21    said makes sense and, you know, we look forward to working with

22    you.

23          JUDGE VANASKIE:  Yes, I look forward to working with

24    you all.  You know, I've had the ability to listen in on the

25    last few conferences and I see how professional everybody is

1  approaching this matter and that's reassuring for me taking on

2  this assignment.

3          Anything else on the defense side?

4          MR. GOLDBERG:  Your Honor, there are two things.

5  First, in the past few days, as we've been getting closer to

6  the depositions, I've noticed that plaintiffs have been filing

7  deposition notices.  Is that something -- and it was something

8  we were going to raise with Judge Schneider earlier but then he

9  stepped -- he decided he was going to turn it over to you

10 today.  But is that something Your Honor would like us to be

11 doing or is there -- is there a reason that we would be filing

12 deposition notices?

13         JUDGE VANASKIE:  Well, let me hear from Mr. Slater on

14 that.

15         MR. SLATER:  Yes, Your Honor.  My understanding was,

16 especially in the context of an MDL where there are lawyers who

17 are not involved in plaintiffs' leadership and there's lawyers,

18 you know, around the country, that we were required to file a

19 deposition notice and have it on ECF so all parties in the

20 litigation would be on notice that depositions were taking

21 place.  I wasn't sure -- I didn't understand that that was

22 something that was controversial.

23         JUDGE VANASKIE:  Mr. Goldberg.

24         MR. GOLDBERG:  It's not controversial.  We just wanted

25 to get clarity from the Court.  We were going to ask Judge

1   Schneider.  I just wanted to have that clarity with the Court

2   because it's just another step.  And if that's -- if that's

3   what has been ordered, we will do that.  We just wanted to work

4   out that technicality.

5           JUDGE VANASKIE:  I think it makes sense what Mr.

6   Slater had to say in terms of providing notice in a matter of

7   this complexity and nationwide concern.  So I would say that

8   yes, the deposition notices should continue to be filed.

9           MR. GOLDBERG:  Thank you.

10          JUDGE VANASKIE:  All right.  Anything else?

11          MR. GOLDBERG:  No, Your Honor.

12          JUDGE VANASKIE:  All right.  Anything else on behalf

13   of the plaintiffs?

14          MR. SLATER:  Nothing for the plaintiffs, Your Honor.

15          JUDGE VANASKIE:  All right.  Mr. Goldberg, I'll look

16   forward to hearing from you in terms of how I proposed we

17   proceed going forward; but we will have the call on the 27th of

18   January and we'll be using the same dial-in number.  The Court

19   has made that available to us to continue to use.  And,

20   Camille, I'm hopeful that we can continue to use you as the

21   court reporter.

22          THE COURT REPORTER:  Yes, Judge.

23          JUDGE VANASKIE:  Okay.  Thank you all very much.  Have

24   a good night.

25          MR. GOLDBERG:  Thank you, Your Honor.  You as well.

1          JUDGE VANASKIE:  Bye-bye.

2          (The proceedings concluded at 5:45 p.m.)

3          - - - - - - - - - - - - - - - - -

4

5

6          I certify that the foregoing is a correct transcript

7     from the record of proceedings in the above-entitled matter.

8

9     /S/ Camille Pedano, CCR, CRR, CRC, RPR
      Court Reporter/Transcriber

10

11    01/14/2021
      Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

/S [1] - 61:9

## 0

**01/14/2021** [1] - 61:11
**07068** [1] - 1:15
**08101** [1] - 1:8

## 1

**1.5** [7] - 18:10, 18:11, 18:12, 18:13, 38:1
**1/5/2021** [1] - 14:5
**1/5/21** [1] - 14:8
**10022** [1] - 3:7
**103** [1] - 1:14
**115.5** [1] - 18:21
**11th** [2] - 51:23, 57:25
**12** [5] - 30:19, 41:6, 41:10, 41:18
**13** [5] - 1:9, 17:15, 17:19, 17:22, 18:3
**14** [5] - 31:20, 31:23, 31:25, 35:9, 35:25
**15** [4] - 42:2, 43:19, 44:1, 44:3
**15-2606** [1] - 9:1
**15219** [1] - 2:13
**16** [1] - 45:19
**16.5** [1] - 18:20
**164** [1] - 17:15
**164.5** [2] - 17:15, 17:16
**17** [2] - 13:23, 19:12
**17th** [1] - 2:9
**18** [2] - 8:25, 19:20
**1835** [1] - 1:18
**19** [2] - 9:6, 19:20
**19-2875** [1] - 4:5
**19-md-02875-RBK-JS** [1] - 1:4
**19103** [2] - 1:18, 2:9
**19422** [1] - 2:21

## 2

**20** [3] - 17:20, 18:25, 38:20
**2016** [2] - 8:25, 9:6
**2021** [1] - 1:9
**2029** [1] - 3:3
**21** [2] - 36:1, 49:1
**220** [1] - 2:6
**22nd** [2] - 12:22, 45:10
**23** [2] - 9:7, 17:13
**25** [2] - 44:1, 44:3
**2500** [1] - 2:16
**2705** [1] - 2:6
**27th** [4] - 56:10, 56:15, 57:15, 60:17

## 2800

**28** [2] - 27:19, 28:13
**2800** [1] - 2:24
**2900** [1] - 1:18

## 3

**30** [2] - 2:9, 44:10
**30(b)(6** [65] - 6:25, 13:12, 14:13, 15:20, 15:22, 16:3, 16:7, 16:22, 17:14, 17:19, 18:23, 23:3, 23:11, 24:14, 24:17, 24:20, 24:22, 24:25, 25:14, 26:2, 26:16, 26:21, 27:18, 28:8, 29:3, 29:20, 30:21, 31:21, 32:5, 33:13, 33:16, 33:19, 34:14, 34:24, 35:1, 35:7, 36:6, 36:17, 37:7, 38:25, 39:23, 41:14, 41:24, 41:25, 42:5, 42:6, 42:12, 42:15, 42:21, 42:22, 43:16, 44:8, 45:8, 45:9, 47:2, 47:10, 48:5, 48:11, 48:17, 49:1, 49:24, 50:10
**30(b)(6)** [6] - 21:14, 41:11, 41:15, 42:10, 44:2, 44:3
**30(b)(6)'s** [1] - 49:7
**30(b)(6)/fact** [1] - 17:12
**300** [1] - 3:3
**30305** [1] - 2:17
**31** [1] - 36:16
**31.5** [2] - 35:7, 35:9
**316** [1] - 2:3
**32502** [1] - 2:3
**3333** [1] - 2:16
**34** [1] - 9:16
**35** [1] - 35:5
**38th** [1] - 2:13

## 4

**40** [1] - 4:5
**419** [2] - 9:1, 9:11
**445202** [1] - 2:24
**45** [1] - 18:22
**45.5** [2] - 18:1, 35:21
**450** [1] - 2:20
**459** [2] - 9:8, 9:12
**49** [1] - 43:18
**4:00** [2] - 1:9, 4:2
**4th** [1] - 1:8

## 5

**50** [1] - 56:20
**50-plus** [1] - 32:6
**50/50** [1] - 8:10
**54** [2] - 27:18, 28:13
**59** [1] - 51:23
**5:45** [1] - 61:2

## 6

**600** [2] - 2:3, 2:24
**601** [1] - 3:6
**609-774-1494** [1] - 1:24
**66.5** [3] - 30:7, 35:5

## 7

**7.5** [2] - 38:7
**70** [2] - 17:16, 17:17
**701** [1] - 1:21
**70130** [1] - 1:21
**78746** [1] - 2:6

## 8

**8th** [1] - 14:6

## 9

**9.5** [2] - 30:7
**90067** [1] - 3:3
**94.5** [2] - 17:18, 18:24
**99.9** [1] - 31:7

## A

**ability** [2] - 26:8, 58:24
**able** [15] - 21:11, 26:4, 34:3, 38:14, 38:21, 38:23, 39:21, 47:5, 47:7, 48:2, 51:8, 51:14, 51:15, 54:14, 55:5
**above-entitled** [1] - 61:7
**absolutely** [1] - 22:21
**accept** [2] - 34:1, 35:15
**acceptable** [1] - 46:4
**access** [3] - 7:11, 8:1, 8:9
**accessible** [2] - 7:22, 7:23
**account** [1] - 19:15
**accurate** [1] - 20:25
**acknowledge** [1] - 39:19
**Actavis** [2] - 2:18, 2:18
**acted** [1] - 53:14
**acting** [1] - 19:11

**action** [1] - 56:21
**ACTION** [1] - 1:3
**actual** [3] - 11:5, 11:21, 38:16
**Adam** [7] - 4:14, 11:12, 20:13, 40:18, 52:11, 53:1, 58:9
**ADAM** [1] - 1:14
**added** [1] - 12:8
**addition** [1] - 37:5
**additional** [5] - 8:16, 14:3, 36:11, 46:25, 47:22
**address** [17] - 5:11, 5:13, 5:20, 12:13, 12:15, 12:20, 13:4, 21:16, 22:17, 34:5, 36:8, 44:25, 45:4, 50:8, 55:15, 57:11, 57:21
**addressed** [9] - 5:23, 6:22, 9:24, 20:1, 23:15, 25:10, 29:3, 52:4
**addressing** [1] - 58:2
**adds** [4] - 17:15, 18:20, 30:1, 44:9
**adequate** [1] - 21:8
**adjourned** [2] - 53:23, 53:24
**advising** [1] - 51:16
**advocate** [1] - 54:16
**affairs** [1] - 32:14
**afforded** [1] - 16:21
**afternoon** [14] - 4:3, 4:11, 4:16, 4:18, 4:21, 4:23, 5:2, 5:4, 5:7, 5:11, 38:9, 41:10, 43:25, 44:11
**agenda** [4] - 13:8, 52:3, 52:4, 52:7
**agents** [1] - 6:5
**agree** [7] - 26:11, 27:7, 29:1, 31:16, 38:21, 44:21, 47:8
**agreed** [12] - 6:14, 11:18, 27:5, 29:10, 30:19, 30:25, 31:9, 31:10, 39:22, 41:17, 41:18, 41:19
**agreement** [13] - 30:14, 38:23, 39:5, 39:21, 41:6, 41:9, 44:16, 47:6, 48:1, 48:14, 51:17, 57:7, 57:9
**agrees** [1] - 44:20
**ahead** [4] - 41:21, 48:19, 52:11, 52:12
**Aid** [2] - 3:4, 5:6

**aided** [1] - 1:25
**ALFANO** [1] - 2:12
**alleging** [1] - 20:19
**alleviated** [1] - 40:1
**alleviates** [1] - 38:17
**allocate** [5] - 25:17, 26:14, 38:24, 39:12, 42:4
**allocated** [10] - 16:6, 16:17, 18:4, 18:18, 18:22, 23:1, 23:5, 38:19, 44:2, 55:9
**allocating** [2] - 16:16, 25:5
**allocation** [4] - 23:11, 24:8, 24:23, 25:21
**allow** [1] - 35:21
**almost** [2] - 15:6, 27:15
**alternative** [1] - 31:20
**amend** [4] - 5:24, 6:1, 10:4, 58:5
**amended** [1] - 10:13
**American** [1] - 46:7
**AmerisourceBergen** [2] - 2:25, 5:9
**amount** [9] - 21:4, 28:17, 31:3, 31:12, 36:3, 38:24, 42:4, 43:14, 43:15
**analysis** [1] - 17:4
**analyzed** [1] - 17:17
**AND** [1] - 1:6
**Andrew** [1] - 49:7
**Angeles** [1] - 3:3
**announce** [1] - 4:11
**answer** [2] - 7:7, 7:17
**anticipate** [1] - 6:20
**anyway** [1] - 35:8
**anyways** [1] - 27:8
**apart** [1] - 46:18
**API** [2] - 17:6, 43:13
**apologies** [1] - 28:11
**apologize** [7] - 40:22, 43:7, 45:2, 48:18, 48:21, 49:2, 50:13
**appear** [1] - 20:7
**appearance** [1] - 4:7
**appearances** [1] - 4:13
**appeared** [1] - 45:22
**applied** [1] - 36:15
**apply** [2] - 35:19, 35:24
**appointed** [1] - 55:7
**appointment** [1] - 54:23
**appreciate** [2] - 50:22, 56:21
**appreciated** [1] -

52:22
**approach** [1] - 16:1
**approaching** [1] - 59:1
**appropriate** [3] - 9:21, 18:7, 53:18
**approval** [1] - 39:13
**approve** [1] - 19:1
**approved** [2] - 6:17, 9:9
**April** [1] - 9:6
**areas** [2] - 28:14, 28:16
**argue** [1] - 26:8
**argument** [6] - 8:22, 32:2, 36:6, 36:14, 36:24, 37:8
**ARGUMENT** [1] - 1:6
**arrangement** [1] - 8:7
**arrangements** [2] - 21:21, 23:22
**arrive** [1] - 28:3
**aside** [2] - 12:24, 48:13
**assert** [1] - 9:23
**asserting** [4] - 9:19, 11:6, 11:22
**asserts** [1] - 10:25
**assessments** [1] - 32:12
**assigned** [7] - 8:17, 10:21, 21:5, 49:9, 49:10, 49:12, 55:7
**assignment** [1] - 59:2
**associated** [1] - 7:24
**assume** [4] - 11:2, 19:10, 21:5, 26:17
**assuming** [1] - 33:19
**Atlanta** [1] - 2:17
**attached** [1] - 19:2
**attorneys** [1] - 44:24
**Aurobindo** [17] - 2:22, 10:8, 40:6, 40:15, 40:21, 44:24, 45:4, 45:9, 45:21, 45:25, 46:9, 46:14, 50:4, 50:20, 51:20, 52:6, 57:7
**Aurobindo's** [1] - 48:17
**Aurolife** [1] - 2:21
**Austin** [1] - 2:6
**authorizations** [1] - 7:20
**authorized** [1] - 33:6
**available** [4] - 13:20, 19:13, 20:6, 60:19
**Avenue** [1] - 3:6
**avoid** [1] - 40:3
**aware** [2] - 5:22, 23:18

## B

**background** [1] - 16:19
**balance** [1] - 33:4
**barely** [1] - 37:16
**BARNES** [1] - 3:2
**based** [7] - 11:7, 22:10, 29:11, 30:17, 36:16, 39:5
**basis** [6] - 35:3, 35:12, 37:2, 37:7, 52:19, 56:8
**Baylen** [1] - 2:3
**bear** [2] - 7:5, 30:6
**become** [1] - 21:25
**bed** [1] - 10:5
**Bee** [1] - 2:6
**began** [1] - 38:19
**beginning** [3] - 45:10, 45:15, 57:22
**behalf** [13] - 4:17, 4:19, 4:22, 4:25, 5:5, 5:8, 7:15, 30:10, 36:7, 38:10, 43:21, 52:15, 60:12
**believes** [1] - 17:5
**Bell** [1] - 2:21
**benefit** [2] - 4:10, 36:25
**Benicar** [5] - 8:23, 9:1, 9:7, 9:8, 9:11
**BERNE** [1] - 2:23
**best** [4] - 16:24, 18:5, 18:6, 46:12
**better** [1] - 46:16
**between** [9] - 14:17, 17:24, 30:25, 38:24, 39:2, 43:8, 43:15, 50:17, 55:9
**big** [1] - 56:12
**bind** [1] - 22:16
**bit** [3] - 16:19, 38:12, 44:10
**biweekly** [2] - 52:18, 54:24
**blame** [1] - 27:11
**Blessy** [1] - 49:9
**Blue** [1] - 2:21
**BOSICK** [1] - 2:12
**bottom** [1] - 17:25
**break** [2] - 37:3, 37:18
**breakdown** [1] - 44:8
**breaking** [3] - 40:23, 40:24, 49:17
**briefing** [4] - 6:5, 6:7, 11:9, 20:4
**briefly** [1] - 20:15
**briefs** [3] - 8:21, 13:15, 58:1

## C

**calculation** [1] - 33:10
**calendar** [7] - 14:18, 14:20, 15:8, 15:9, 21:17, 21:18, 23:18
**calendars** [2] - 14:18, 15:4
**California** [1] - 3:3
**Camden** [1] - 1:8
**Camille** [4] - 1:23, 54:5, 60:20, 61:9
**camillepedano@ gmail.com** [1] - 1:23
**Camp** [1] - 1:21
**candidly** [1] - 6:16
**capacity** [1] - 53:7
**carefully** [1] - 32:6
**case** [17] - 7:9, 8:23, 8:24, 9:1, 9:7, 10:17, 19:16, 20:6, 24:17, 25:7, 26:2, 43:2, 43:3, 46:22, 52:16, 53:7, 55:7
**Case** [1] - 9:7
**cast** [1] - 12:7
**categories** [1] - 11:20
**caveat** [1] - 29:6
**CCR** [1] - 61:9
**Centre** [1] - 2:13
**Century** [1] - 3:3
**certain** [2] - 16:6, 58:1
**certainly** [16] - 6:18, 11:5, 15:3, 20:14, 22:12, 23:21, 24:21, 31:16, 43:11, 44:11, 45:14, 54:13, 54:15, 54:21, 55:23, 57:14
**certify** [1] - 61:6
**cetera** [1] - 12:10
**cGMP** [1] - 32:11
**challenge** [1] - 55:17
**challenges** [1] - 55:20
**challenging** [1] - 22:12
**chance** [4] - 24:6, 44:14, 52:20, 55:3
**changed** [1] - 15:1
**characters** [1] - 12:7

**chart** [2] - 39:11, 41:8
**check** [1] - 15:2
**China** [2] - 22:5, 22:7
**Chinese** [4] - 11:4, 11:7, 11:21, 19:8
**choices** [1] - 29:8
**choose** [1] - 26:1
**Cincinnati** [1] - 2:24
**CIPRIANI** [1] - 2:19
**circle** [2] - 44:14, 44:23
**cited** [1] - 12:1
**CIVIL** [1] - 1:3
**Civil** [2] - 31:14, 33:6
**claim** [2] - 11:25, 12:12
**claimed** [1] - 12:18
**clarify** [2] - 21:4, 24:8
**clarity** [3] - 55:12, 59:25, 60:1
**class** [1] - 9:16
**clear** [11] - 10:5, 11:4, 11:10, 20:2, 21:14, 21:25, 25:3, 25:13, 26:18, 30:11, 44:3
**clearly** [1] - 16:22
**CLEM** [1] - 2:12
**Clem** [4] - 5:2, 27:3, 30:9, 35:13
**client** [1] - 37:13
**clients** [2] - 27:12, 53:15
**close** [2] - 15:6, 27:7
**closely** [2] - 52:18, 52:20
**closer** [1] - 59:5
**Cohen** [2] - 1:7, 4:24
**COHEN** [2] - 2:16, 4:23
**colleagues** [2] - 52:24, 54:21
**collecting** [2] - 7:21, 7:25
**collection** [2] - 7:19, 7:25
**collectively** [3] - 7:18, 8:11, 8:12
**column** [2] - 14:4, 14:5
**combined** [1] - 17:13
**coming** [1] - 45:2
**commence** [1] - 45:8
**Commencing** [1] - 1:9
**comment** [1] - 51:20
**comments** [1] - 31:16
**Committee** [2] - 5:1, 7:16
**communicated** [1] - 58:13
**company** [2] - 21:22,

23:25
**compared** [2] - 18:3, 18:23
**compile** [1] - 9:3
**complete** [2] - 19:11, 22:4
**complex** [3] - 16:23, 32:25, 56:3
**complexity** [2] - 25:9, 60:7
**complies** [1] - 10:20
**compromise** [4] - 27:15, 28:23, 35:25, 37:10
**computer** [2] - 1:25, 30:6
**computer-aided** [1] - 1:25
**concern** [2] - 38:14, 60:7
**concerned** [7] - 22:22, 23:2, 24:15, 29:16, 40:1, 52:3, 53:13
**concerns** [2] - 20:16, 45:18
**concluded** [1] - 61:2
**conclusion** [1] - 35:12
**conduct** [2] - 36:11, 56:11
**conducted** [1] - 30:18
**confer** [15] - 30:17, 47:12, 47:14, 47:17, 47:18, 47:24, 51:2, 51:6, 55:5, 55:24, 56:6, 56:15, 56:18, 57:4, 58:6
**CONFERENCE** [1] - 1:6
**conference** [9] - 19:6, 31:17, 45:11, 47:20, 50:13, 55:19, 56:15, 57:5
**conferences** [2] - 30:17, 58:25
**conferred** [1] - 38:11
**conferring** [2] - 13:5, 46:24
**confers** [1] - 28:2
**confident** [1] - 48:2
**confirm** [5] - 10:9, 16:18, 22:14, 23:16, 58:14
**confirmed** [2] - 38:15, 46:10
**confirming** [2] - 39:24, 53:21
**confused** [1] - 28:5
**CONLEE** [1] - 1:20
**Conlee** [2] - 4:16, 38:10

**consented** [1] - 9:9
**consents** [1] - 36:7
**considerable** [1] - 50:14
**consideration** [1] - 17:4
**consistent** [1] - 57:16
**consistently** [1] - 32:3
**constraint** [1] - 51:18
**contamination** [2] - 17:8, 32:13
**context** [4] - 11:16, 12:16, 30:13, 59:16
**continually** [1] - 54:14
**continue** [11] - 43:24, 44:17, 47:12, 47:24, 51:2, 54:16, 57:4, 58:14, 60:8, 60:19, 60:20
**continued** [1] - 22:8
**Continued** [2] - 2:1, 3:1
**control** [2] - 6:9, 45:21
**controls** [1] - 32:12
**controversial** [2] - 59:22, 59:24
**conversation** [1] - 10:10
**conversations** [1] - 27:4
**Cooper** [1] - 1:8
**copies** [1] - 9:4
**corporate** [8] - 29:7, 29:10, 31:14, 33:24, 35:20, 35:21, 36:18
**Corporation** [2] - 3:4, 5:6
**corporation** [1] - 36:8
**correct** [18] - 10:24, 13:3, 13:7, 13:23, 14:22, 15:21, 15:24, 16:2, 16:8, 16:9, 23:12, 29:4, 33:18, 33:21, 34:25, 49:8, 50:1, 61:6
**corrected** [1] - 46:9
**correctly** [2] - 13:18, 18:5
**correspondence** [1] - 58:12
**cost** [7] - 7:5, 7:24, 7:25, 8:3, 8:10, 54:25
**costs** [1] - 7:25
**counsel** [29] - 5:10, 8:19, 10:3, 10:10, 10:16, 11:14, 11:17, 12:21, 14:24, 20:19, 22:1, 28:5, 38:11, 40:5, 40:16, 43:17,

44:6, 47:4, 47:19, 47:21, 48:14, 49:13, 50:17, 51:4, 53:11, 54:10, 58:13, 58:18, 58:19
**country** [1] - 59:18
**couple** [3] - 19:24, 20:15, 38:12
**course** [9] - 6:20, 6:24, 9:20, 16:18, 18:16, 22:14, 34:10, 39:4, 53:12
**COURT** [72] - 1:1, 4:3, 4:20, 5:10, 8:19, 10:6, 10:24, 12:23, 13:8, 13:24, 14:9, 14:11, 15:11, 15:13, 15:15, 15:18, 15:25, 16:10, 16:12, 20:11, 22:17, 23:17, 24:4, 25:2, 26:10, 26:13, 26:24, 28:5, 28:24, 29:17, 29:25, 30:5, 32:17, 32:19, 33:9, 34:8, 35:2, 36:22, 37:20, 38:3, 39:7, 39:14, 40:5, 40:10, 40:13, 40:20, 40:22, 40:25, 41:16, 42:23, 43:1, 43:17, 44:19, 44:22, 45:5, 45:16, 46:6, 46:11, 46:16, 46:18, 48:4, 48:16, 49:4, 49:13, 49:16, 49:20, 50:2, 50:20, 51:3, 51:18, 53:10, 60:22
**court** [4] - 4:1, 4:10, 4:12, 60:21
**Court** [67] - 1:23, 5:12, 5:23, 8:24, 9:9, 9:21, 9:22, 11:5, 11:24, 12:13, 12:14, 14:3, 14:7, 16:2, 16:15, 17:1, 17:8, 17:17, 18:6, 18:8, 18:18, 18:22, 19:1, 19:2, 20:2, 22:25, 23:5, 25:4, 25:5, 25:6, 25:16, 25:17, 25:19, 26:18, 31:3, 33:2, 35:19, 36:4, 39:8, 39:13, 39:19, 40:1, 40:3, 43:3, 46:5, 47:11, 48:10, 49:6, 49:14, 49:18, 49:20, 50:18, 51:1, 51:7, 51:15, 51:16, 51:19, 53:16, 54:22, 57:12, 57:13, 59:25, 60:1, 60:18, 61:9

**Court's** [24] - 8:20, 9:10, 16:16, 17:3, 17:4, 17:23, 17:25, 18:20, 19:3, 20:6, 22:21, 22:23, 23:2, 23:9, 25:2, 27:6, 27:21, 29:12, 31:16, 35:15, 36:13, 38:3, 47:25, 52:3
**Courthouse** [1] - 1:7
**Cove** [1] - 2:6
**cover** [2] - 30:21, 32:4
**covered** [3] - 32:7, 43:9, 45:10
**COVID** [1] - 19:9
**CRC** [1] - 61:9
**credit** [1] - 53:15
**credits** [1] - 8:16
**CRR** [1] - 61:9
**crunch** [1] - 40:1
**crunching** [1] - 35:16
**custodial** [4] - 27:23, 34:4, 36:10, 37:6
**custodian** [1] - 33:25
**custodians** [1] - 12:9
**cut** [1] - 27:2
**CVS** [2] - 3:4, 5:6

### D

**DANIEL** [1] - 2:2
**Daniel** [3] - 4:18, 40:11, 41:4
**data** [1] - 13:1
**date** [3] - 15:1, 19:12, 31:5
**Date** [1] - 61:11
**dates** [19] - 14:3, 30:23, 31:5, 38:15, 38:16, 38:17, 39:23, 41:18, 41:24, 45:25, 46:3, 46:19, 47:3, 47:8, 47:9, 47:14, 47:17, 47:22
**DAVID** [1] - 1:17
**David** [3] - 10:1, 13:6, 14:10
**Davis** [3] - 24:2, 27:1, 31:1
**DAVIS** [15] - 2:5, 2:5, 2:15, 24:1, 27:1, 28:11, 29:5, 29:22, 30:3, 33:21, 34:17, 36:2, 36:21, 36:23, 37:24
**dawns** [1] - 35:17
**days** [71] - 16:7, 17:13, 17:16, 17:20, 17:21, 17:22, 17:23, 18:3, 18:4, 18:10, 18:11, 18:12, 18:13,

18:14, 18:19, 18:21, 19:22, 20:5, 24:12, 25:5, 25:14, 25:22, 26:13, 26:15, 26:16, 26:21, 27:17, 27:19, 27:20, 28:18, 28:19, 29:18, 29:20, 30:4, 31:13, 31:18, 32:25, 33:1, 33:8, 33:17, 33:18, 34:20, 34:23, 35:5, 37:24, 37:25, 38:1, 38:5, 38:7, 39:12, 42:7, 42:12, 42:19, 42:24, 43:4, 43:18, 48:13, 48:16, 49:2, 49:8, 49:9, 49:11, 59:5
**deadline** [1] - 57:17
**deadlines** [1] - 58:1
**deadlocked** [1] - 57:19
**deal** [7] - 6:15, 7:3, 7:4, 19:15, 19:24, 22:11, 58:1
**dealing** [5] - 6:1, 15:19, 25:11, 33:12, 33:13
**debate** [1] - 26:18
**December** [1] - 14:6
**decide** [5] - 17:1, 20:5, 23:2, 25:17, 25:22
**decided** [3] - 6:22, 12:17, 59:9
**decision** [5] - 6:18, 22:12, 22:22, 23:4, 34:24
**deems** [1] - 31:22
**deep** [1] - 51:11
**deeper** [1] - 20:21
**Defendant** [1] - 2:14
**defendant** [3] - 5:3, 18:24, 33:24
**Defendants** [6] - 2:10, 2:17, 2:21, 2:25, 3:4, 3:7
**defendants** [31] - 4:20, 4:22, 4:25, 5:5, 5:8, 6:8, 7:17, 7:23, 8:7, 8:8, 8:11, 8:14, 9:2, 10:8, 10:18, 11:1, 13:10, 30:10, 30:16, 30:22, 33:23, 35:19, 36:20, 42:2, 43:23, 51:2, 52:14, 52:15, 52:21, 56:19, 56:20
**defendants'** [1] - 7:6
**defense** [8] - 10:3, 11:14, 11:17, 12:21, 20:19, 22:1, 55:6,

59:3
**Defense** [1] - 5:3
**defer** [3] - 14:20, 44:17, 50:10
**definitive** [1] - 17:3
**denied** [2] - 20:7, 26:22
**dep** [1] - 13:2
**dependent** [1] - 14:22
**deponents** [1] - 41:25
**depose** [3] - 15:23, 29:2, 34:15
**deposed** [8] - 16:4, 19:10, 24:12, 24:18, 24:19, 27:5, 29:1, 49:22
**deposition** [41] - 6:4, 13:20, 16:22, 17:19, 18:2, 18:23, 19:1, 19:4, 20:1, 22:4, 22:8, 23:1, 25:7, 25:14, 25:15, 26:5, 26:7, 26:9, 26:14, 26:16, 26:20, 26:21, 27:9, 28:20, 29:3, 29:20, 30:16, 31:21, 32:25, 33:1, 34:7, 35:7, 36:12, 41:24, 52:5, 59:7, 59:12, 59:19, 60:8
**depositions** [45] - 6:25, 7:1, 10:22, 13:9, 13:12, 13:13, 14:13, 14:17, 14:23, 15:20, 17:17, 18:22, 19:17, 19:20, 19:22, 21:10, 22:1, 22:2, 23:21, 25:10, 30:20, 30:23, 31:4, 31:6, 31:13, 31:24, 35:4, 35:6, 35:24, 42:3, 46:19, 46:20, 48:5, 48:17, 49:23, 49:24, 50:6, 50:9, 50:10, 51:12, 51:22, 56:1, 59:6, 59:20
**deps** [1] - 19:14
**Derrick** [1] - 28:14
**description** [1] - 12:5
**descriptions** [1] - 11:23
**designated** [8] - 27:18, 28:12, 29:7, 30:21, 32:22, 44:5, 44:9, 47:1
**designee** [4] - 32:15, 33:24, 35:21, 36:9
**designees** [6] - 29:7, 29:10, 34:1, 35:20, 36:18, 48:11

determine [1] - 55:10
determining [1] - 18:7
development [1] - 32:11
dial [1] - 60:18
dial-in [1] - 60:18
differences [2] - 14:16, 53:12
different [8] - 6:25, 21:21, 23:13, 29:8, 32:9, 43:2, 43:5, 56:24
differently [2] - 32:24, 36:5
difficult [1] - 33:3
direct [1] - 9:6
directed [3] - 12:19, 30:21, 58:12
directly [1] - 58:13
disagree [5] - 17:10, 22:19, 30:12, 31:11, 54:10
disagreement [2] - 10:19, 43:25
disconnect [1] - 53:20
discovery [6] - 13:2, 31:17, 55:15, 55:20, 56:3, 58:2
discretion [3] - 18:6, 25:6, 25:16
discretionary [2] - 16:22, 31:18
discuss [5] - 38:24, 47:15, 54:21, 56:22, 58:7
discussed [5] - 8:5, 10:16, 31:1, 31:11
discussion [1] - 20:24
discussions [3] - 20:20, 21:1, 22:20
disproportionality [1] - 48:11
dispute [11] - 6:2, 11:5, 11:11, 15:25, 40:6, 41:23, 45:6, 45:7, 46:21, 48:5, 48:8
disputed [2] - 6:3, 20:3
disputes [1] - 51:19
disrespect [1] - 22:13
DISTRICT [2] - 1:1, 1:1
divide [1] - 16:4
Docket [5] - 4:4, 9:1, 9:8, 9:11
docket [4] - 57:10, 57:12, 57:13, 57:20
document [5] - 6:11, 7:8, 9:16, 12:2, 12:3

documents [14] - 6:8, 6:10, 8:16, 10:15, 11:19, 11:23, 12:9, 12:10, 12:11, 12:16, 12:18, 22:10, 43:14, 45:22
done [10] - 8:2, 11:2, 17:6, 39:12, 46:24, 47:3, 51:1, 53:5, 53:9, 57:13
Dong [2] - 18:12, 18:13, 24:11
DONG [1] - 18:13
dong [1] - 18:13
dose [1] - 43:10
double [1] - 33:5
doubt [2] - 26:19
down [3] - 34:10, 40:16, 44:24
download [2] - 8:3, 8:16
downloading [1] - 8:14
Dr [2] - 34:20, 38:1
Du [2] - 13:20, 19:10
du [1] - 21:21
dually [2] - 44:5, 44:9
DUANE [1] - 1:2
due [2] - 6:20, 25:8
duty [1] - 6:8

E

earliest [2] - 19:12, 45:14
early [2] - 19:5, 41:9
easier [1] - 13:16
East [1] - 3:3
easy [1] - 45:16
ECF [1] - 59:19
economic [1] - 9:17
edge [1] - 33:8
effect [1] - 9:2
eight [9] - 30:1, 30:3, 45:24, 46:1, 46:4, 46:6, 46:20, 47:6, 49:22
Eisenhower [1] - 1:14
either [3] - 12:16, 57:9, 57:20
ELLIS [1] - 3:5
email [3] - 14:24, 40:9, 57:21
emailing [1] - 57:10
emails [3] - 9:17, 58:11, 58:16
employees [5] - 20:4, 41:19, 41:20, 41:22, 45:20
encompass [2] - 12:2, 14:25

end [7] - 15:4, 24:7, 31:5, 34:23, 44:14, 54:8, 57:5
engaged [1] - 21:1
engagement [1] - 7:18
engaging [2] - 20:19, 20:21
enjoyed [1] - 52:22
ensuring [1] - 45:13
entered [3] - 7:18, 9:7, 16:19
entire [1] - 24:16
entirely [1] - 25:1
entitle [1] - 36:10
entitled [1] - 61:7
equally [2] - 35:19, 36:15
equitable [3] - 35:18, 36:14, 36:15
equivalent [1] - 17:15
especially [4] - 16:23, 18:17, 52:18, 59:16
ESQUIRE [14] - 1:14, 1:17, 1:17, 1:20, 2:2, 2:5, 2:8, 2:12, 2:15, 2:16, 2:20, 2:23, 3:2, 3:6
establish [1] - 31:15
et [1] - 12:10
eternal [1] - 51:9
evaluate [4] - 11:24, 12:5, 12:12
eve [1] - 19:5
evening [1] - 31:2
event [2] - 5:25, 6:24
exact [1] - 8:23
exactly [3] - 8:8, 17:24, 54:18
example [8] - 12:2, 22:24, 26:3, 33:14, 34:19, 34:20, 48:13, 51:14
except [1] - 41:18
excessive [2] - 31:14, 36:19
exchange [1] - 11:14
excluded [1] - 46:3
Excuse [1] - 49:16
excuse [5] - 5:15, 5:16, 32:18, 49:17, 52:7
Executive [2] - 4:25, 7:16
Exhibit [5] - 14:1, 14:9, 14:19, 19:2, 46:2
exhibit [2] - 14:10, 46:2
exhibits [1] - 49:5
exists [1] - 48:14

expect [5] - 4:8, 6:16, 8:6, 22:6, 56:11
expectation [2] - 55:18, 56:14
expected [1] - 53:13
expecting [1] - 56:17
expedite [1] - 56:4
experience [3] - 52:17, 52:22, 56:2
explained [1] - 19:3
extended [1] - 25:8
extent [2] - 27:15, 51:17
extremely [1] - 23:18

F

facilitate [1] - 56:4
facing [2] - 19:8, 21:20
fact [44] - 12:1, 15:23, 17:14, 17:16, 18:9, 18:21, 18:22, 21:11, 21:23, 23:3, 23:12, 24:13, 24:25, 25:10, 25:11, 25:15, 26:5, 26:7, 26:9, 28:20, 29:11, 30:22, 31:24, 33:14, 33:16, 33:19, 34:2, 34:16, 35:1, 35:6, 36:9, 38:25, 41:13, 41:15, 42:6, 42:10, 42:15, 42:21, 44:4, 44:9, 47:6, 54:23
fair [11] - 18:7, 19:18, 25:19, 33:4, 33:7, 35:12, 35:17, 35:18, 36:19, 50:7, 58:20
fairly [1] - 43:8
faith [2] - 19:11, 20:23
fall [1] - 50:18
fall-back [1] - 50:18
fallacy [1] - 36:24
falls [2] - 17:1, 32:20
false [1] - 20:20
familiar [1] - 8:21
far [8] - 15:7, 22:22, 23:1, 36:16, 39:23, 47:25, 52:3, 53:13
fast [1] - 16:23
February [10] - 13:21, 13:23, 19:12, 30:24, 38:15, 39:25, 45:15, 47:8, 50:5, 51:12
Federal [1] - 33:6
felt [2] - 20:22, 27:15
few [6] - 14:6, 14:17, 19:22, 36:21, 58:25, 59:5
fewer [3] - 36:25, 37:4,

37:18
file [2] - 36:10, 59:18
filed [3] - 11:14, 20:19, 60:8
files [3] - 27:24, 34:4, 37:6
filing [4] - 57:9, 58:1, 59:6, 59:11
fill [1] - 56:13
filter [1] - 58:15
final [4] - 14:8, 17:3, 29:13, 31:2
finalize [1] - 31:5
finalizing [1] - 39:20
fine [7] - 12:22, 23:9, 44:19, 50:23, 54:18, 57:1, 57:2
finish [1] - 22:3
finished [1] - 43:10
first [12] - 4:12, 5:18, 7:4, 19:5, 22:19, 22:25, 28:6, 30:19, 35:4, 37:14, 49:6, 59:5
fit [7] - 21:6, 21:15, 22:15, 23:15, 27:22, 31:22, 32:1
five [19] - 6:13, 8:13, 28:9, 30:1, 30:3, 30:20, 31:14, 31:22, 32:1, 32:7, 32:14, 33:7, 34:12, 34:15, 35:24, 38:7, 39:23, 41:12, 45:3
flip [1] - 42:3
Floor [1] - 2:13
floor [2] - 5:13, 34:11
Florida [1] - 2:3
fly [1] - 22:7
follow [2] - 54:5, 58:3
FOR [1] - 1:1
foregoing [1] - 61:6
foreign [3] - 6:9, 6:10, 25:12
form [1] - 9:22
former [4] - 41:19, 41:20, 41:21, 45:20
forth [3] - 6:2, 13:15, 33:24
forward [2] - 50:19, 55:22, 56:8, 56:14, 58:21, 58:23, 60:16, 60:17
forwarded [1] - 6:14
foul [1] - 20:8
four [16] - 6:11, 28:9, 28:21, 32:13, 35:22, 35:23, 37:22, 38:6, 39:25, 41:11, 41:12, 41:23, 41:25, 44:2,

44:7, 45:3
**free** *[2]* - 48:22
**FREEMAN** *[1]* - 1:13
**front** *[1]* - 30:6
**full** *[3]* - 14:2, 24:12, 27:8
**fulsome** *[4]* - 11:18, 11:23, 12:5, 20:24
**future** *[1]* - 53:7

## G

**Ge** *[1]* - 18:11
**GE** *[1]* - 18:12
**Gegenheimer** *[3]* - 42:1, 42:9, 42:13
**generally** *[2]* - 31:6, 31:9
**genuine** *[2]* - 9:24, 11:10
**Geoppinger** *[1]* - 5:8
**GEOPPINGER** *[2]* - 2:23, 5:7
**Georgia** *[1]* - 2:17
**given** *[11]* - 10:21, 27:6, 27:21, 28:2, 34:1, 44:13, 49:9, 49:10, 49:11, 50:14, 52:20
**glad** *[1]* - 53:4
**Glover** *[6]* - 27:17, 28:15, 29:23, 33:17, 37:25, 38:5
**Glover's** *[1]* - 37:22
**GOLDBERG** *[24]* - 2:8, 4:21, 13:23, 14:1, 14:10, 15:24, 16:9, 16:11, 20:10, 24:3, 24:5, 25:24, 26:12, 26:23, 52:11, 52:13, 53:25, 54:20, 56:18, 59:4, 59:24, 60:9, 60:11, 60:25
**Goldberg** *[11]* - 4:22, 13:18, 15:21, 16:12, 20:2, 24:6, 26:10, 52:13, 54:19, 59:23, 60:15
**GOLOMB** *[1]* - 1:16
**GORDON** *[1]* - 2:12
**granted** *[3]* - 6:20, 47:11, 47:23
**great** *[1]* - 52:17
**Greenberg** *[2]* - 4:24, 7:15
**GREENBERG** *[1]* - 2:15
**group** *[2]* - 56:19, 56:20
**Group** *[1]* - 5:3
**Gu** *[1]* - 18:11

**GU** *[1]* - 18:11
**guess** *[3]* - 8:12, 8:13, 29:5
**guidance** *[9]* - 27:21, 29:12, 31:3, 48:10, 49:14, 49:25, 50:2, 50:14, 51:17
**guide** *[1]* - 39:20
**guidelines** *[1]* - 39:2

## H

**half** *[35]* - 8:11, 8:12, 17:13, 17:16, 17:20, 17:22, 18:2, 18:3, 18:14, 18:19, 18:22, 27:18, 27:20, 29:19, 29:20, 29:23, 29:24, 30:1, 30:4, 30:5, 31:13, 31:18, 31:25, 33:7, 34:20, 34:23, 35:5, 35:23, 36:17, 38:5, 42:12, 42:19, 43:4, 49:11
**handled** *[3]* - 55:17, 56:13, 58:5
**handling** *[1]* - 34:21, 56:3, 56:4
**handy** *[1]* - 30:6
**hard** *[2]* - 16:23, 35:2
**hard-and-fast** *[1]* - 16:23
**harm** *[1]* - 20:7
**hash** *[1]* - 39:15
**Healthcare** *[1]* - 2:10
**hear** *[9]* - 28:24, 30:8, 40:14, 43:6, 43:7, 43:17, 49:18, 54:2, 59:13
**heard** *[2]* - 6:15, 26:4
**hearing** *[6]* - 15:4, 28:25, 29:17, 50:14, 53:2, 60:16
**hearings** *[1]* - 54:24
**HEINZ** *[10]* - 2:20, 10:7, 46:14, 46:17, 46:23, 48:18, 48:20, 48:24, 50:22, 51:5
**Heinz** *[1]* - 10:8, 10:24, 48:21
**held** *[1]* - 4:1
**hello** *[5]* - 4:14, 7:14, 11:12, 53:1, 54:12
**help** *[2]* - 31:4, 50:18
**helpful** *[3]* - 30:13, 47:25, 54:14
**Hetero** *[3]* - 40:17, 40:19, 52:6
**Hi** *[1]* - 43:20
**higher** *[1]* - 44:10
**highlighted** *[1]* - 18:17

**hold** *[2]* - 34:8
**holding** *[1]* - 25:4
**HON** *[1]* - 3:10
**Hong** *[2]* - 22:6, 22:7
**Honik** *[4]* - 40:12, 45:1, 48:7, 49:4
**HONIK** *[15]* - 1:16, 1:17, 45:1, 45:7, 45:18, 46:8, 46:12, 46:22, 48:7, 48:19, 48:22, 49:5, 50:1, 50:12, 51:9
**Honor** *[94]* - 4:14, 4:16, 4:18, 4:21, 4:23, 5:2, 5:4, 5:7, 7:14, 10:1, 10:7, 11:12, 12:19, 13:7, 13:23, 14:1, 14:15, 15:24, 16:9, 20:10, 20:13, 21:5, 21:18, 23:14, 24:1, 24:3, 24:5, 25:24, 27:1, 27:24, 29:5, 30:4, 30:9, 31:7, 32:7, 33:21, 34:5, 34:18, 34:21, 34:25, 35:13, 36:2, 36:21, 38:9, 39:9, 39:17, 40:18, 40:22, 41:4, 43:20, 42:23, 44:13, 44:16, 44:21, 45:1, 45:7, 45:18, 46:14, 46:17, 46:23, 48:7, 49:1, 49:5, 49:16, 49:17, 50:12, 50:22, 51:9, 52:10, 52:11, 52:13, 52:16, 52:19, 53:1, 53:25, 54:12, 54:20, 55:1, 55:3, 55:11, 56:18, 56:19, 56:22, 56:24, 56:25, 58:9, 59:4, 59:10, 59:15, 60:11, 60:14, 60:25
**Honor's** *[2]* - 28:2, 39:19
**Honorable** *[1]* - 4:1
**HONORABLE** *[1]* - 1:11
**hope** *[5]* - 22:12, 51:9, 53:6, 57:8
**hopeful** *[2]* - 57:15, 60:20
**hopefully** *[2]* - 13:16, 22:1
**hoping** *[1]* - 10:22
**horse** *[1]* - 23:6
**hosting** *[1]* - 7:22
**hour** *[8]* - 23:7, 24:22, 25:8, 26:20, 47:20, 51:23

**hours** *[46]* - 16:3, 16:4, 17:15, 17:16, 17:18, 17:20, 17:21, 17:23, 18:2, 18:21, 18:22, 18:25, 24:13, 25:7, 27:13, 30:7, 31:20, 31:23, 31:25, 35:3, 35:5, 35:6, 35:7, 35:21, 35:23, 35:25, 36:1, 36:17, 36:18, 37:14, 38:19, 38:22, 39:12, 42:3, 43:18, 43:19, 44:1, 44:2, 44:4, 44:9, 44:10, 48:25, 49:1, 49:3
**Huahai** *[1]* - 2:11

## I

**i.e** *[2]* - 6:4, 6:9
**identification** *[1]* - 31:8
**identified** *[4]* - 32:15, 45:19, 57:23, 58:1
**identifies** *[1]* - 39:11
**identify** *[3]* - 5:19, 11:20, 36:6
**impact** *[1]* - 22:23
**importance** *[1]* - 18:18
**important** *[6]* - 11:20, 17:5, 17:9, 18:16, 22:15, 33:11
**importantly** *[1]* - 38:13
**impose** *[1]* - 57:17
**impression** *[1]* - 27:11
**IN** *[1]* - 1:4
**inasmuch** *[1]* - 48:9
**Inc** *[7]* - 2:14, 2:18, 2:18, 2:22, 3:4, 3:7, 5:6
**include** *[1]* - 44:4
**included** *[1]* - 46:1
**includes** *[1]* - 14:3
**including** *[3]* - 28:19, 28:20, 44:8
**incorporate** *[2]* - 8:25, 9:10
**increased** *[1]* - 54:25
**incredible** *[1]* - 25:9
**India** *[3]* - 29:11, 46:11, 46:13
**India-based** *[1]* - 29:11
**Indian** *[1]* - 46:9
**indicated** *[2]* - 28:7, 57:17
**indication** *[1]* - 13:20
**individual** *[5]* - 21:11, 45:19, 45:24, 46:4, 58:18

**individuals** *[3]* - 45:8, 46:21, 49:22
**Industries** *[1]* - 2:17
**information** *[3]* - 11:16, 11:20, 12:12
**initial** *[1]* - 17:18
**input** *[1]* - 29:9
**inquire** *[1]* - 23:13
**insert** *[1]* - 27:14
**instance** *[2]* - 24:12, 35:4
**intend** *[1]* - 54:5
**intends** *[1]* - 15:23
**interest** *[1]* - 16:25
**interesting** *[1]* - 43:11
**interference** *[1]* - 41:1
**interfering** *[1]* - 40:24
**interrupt** *[2]* - 34:9, 52:12
**inundated** *[2]* - 58:11, 58:16
**inundating** *[1]* - 58:19
**involved** *[4]* - 12:11, 23:10, 55:18, 59:17
**irrelevant** *[1]* - 34:6
**issue** *[61]* - 5:14, 6:5, 6:6, 6:15, 6:16, 7:2, 7:3, 7:4, 7:5, 8:20, 8:21, 8:23, 9:13, 9:14, 9:15, 9:24, 9:25, 11:3, 11:9, 11:10, 12:15, 12:16, 12:20, 12:23, 13:8, 13:9, 13:12, 13:13, 13:16, 13:17, 15:13, 16:21, 16:22, 16:25, 17:2, 17:7, 19:6, 20:1, 20:14, 22:21, 23:9, 23:10, 23:17, 26:11, 26:19, 29:2, 34:6, 40:6, 44:25, 45:13, 45:17, 45:18, 46:18, 46:19, 49:23, 50:3, 51:25, 52:5, 55:15
**issued** *[2]* - 8:24, 55:21
**issues** *[36]* - 5:12, 5:13, 5:19, 5:22, 6:12, 6:21, 7:2, 12:13, 12:25, 13:11, 17:9, 20:9, 20:22, 22:14, 25:9, 29:13, 30:15, 32:7, 32:14, 43:12, 49:14, 49:18, 49:20, 52:4, 52:7, 52:8, 52:14, 54:14, 54:17, 55:9, 55:15, 57:3, 58:2, 58:4

## J

**Jaiswal** [4] - 42:1, 42:14, 42:17, 42:19
**January** [8] - 1:9, 19:20, 51:11, 51:23, 56:10, 57:16, 57:25, 60:18
**JEFFREY** [1] - 2:23
**Jeffrey** [1] - 5:7
**JERSEY** [1] - 1:1
**Jersey** [2] - 1:8, 1:15
**JESSICA** [1] - 2:20
**Jessica** [5] - 10:7, 46:14, 48:19, 48:23, 50:14
**JOEL** [1] - 1:11
**Joel** [1] - 4:1
**JOHN** [2] - 2:5
**John** [2] - 24:2, 27:1
**Johns** [1] - 49:10
**JOHNSTON** [2] - 3:2, 5:4
**Johnston** [1] - 5:5
**JUDGE** [15] - 1:11, 54:2, 54:18, 55:12, 57:1, 58:17, 58:23, 59:13, 59:23, 60:5, 60:10, 60:12, 60:15, 60:23, 61:1
**Judge** [23] - 4:2, 4:3, 6:14, 6:15, 6:16, 6:19, 32:4, 48:20, 54:1, 54:6, 55:8, 55:14, 55:17, 56:12, 56:16, 57:17, 57:23, 58:6, 58:11, 59:8, 59:25, 60:22
**jump** [1] - 48:22
**juncture** [1] - 45:14
**justify** [1] - 32:25

## K

**KANNER** [1] - 1:20
**Katie** [1] - 38:2
**KATZ** [1] - 1:13
**keepers** [1] - 12:9
**keeping** [1] - 18:5
**Kelly** [3] - 42:1, 42:9, 42:13
**kept** [1] - 7:11
**kind** [3] - 34:19, 37:3, 53:10
**KIRKLAND** [1] - 3:5
**knowledge** [2] - 19:3, 46:12
**known** [1] - 23:20
**knows** [1] - 4:12
**Kong** [2] - 22:6, 22:7
**Kugler** [7] - 6:14, 6:16, 6:19, 54:6, 55:14, 56:16, 58:6
**Kugler's** [1] - 6:15

## L

**laboriously** [1] - 52:5
**lack** [1] - 37:5
**language** [3] - 10:14, 19:9, 25:12
**large** [1] - 56:20
**last** [16] - 4:10, 7:2, 12:25, 14:4, 19:22, 23:17, 31:2, 36:22, 37:20, 45:3, 47:1, 47:18, 51:21, 52:17, 54:9, 58:25
**late** [2] - 45:2, 50:12
**latest** [1] - 27:14
**law** [5] - 11:4, 11:7, 11:15, 11:21, 12:1, 3:5
**lawyers** [2] - 59:16, 59:17
**leadership** [1] - 59:17
**least** [7] - 13:11, 20:5, 29:9, 30:13, 38:13, 52:1, 55:5
**leave** [1] - 15:22
**leaves** [1] - 54:1
**Lee** [1] - 18:12
**left** [2] - 13:8, 44:23
**legitimate** [1] - 26:17
**length** [11] - 6:25, 13:12, 14:12, 14:17, 14:23, 15:20, 27:9, 29:12, 48:5, 49:24, 50:9
**lengths** [1] - 29:16
**less** [2] - 34:3
**letter** [11] - 6:2, 13:19, 14:2, 20:18, 20:25, 27:13, 28:6, 28:7, 28:8, 37:9, 51:16
**letters** [2] - 5:12, 6:23
**level** [1] - 41:23
**LEVIN** [1] - 2:2
**Lexington** [1] - 3:6
**Li** [3] - 18:14, 18:15, 18:16
**LI** [1] - 18:14
**LIABILITY** [1] - 1:4
**liaison** [3] - 58:13, 58:15, 58:18
**life** [1] - 9:14
**likely** [1] - 12:13
**limit** [5] - 16:3, 25:8, 35:3, 50:25, 51:3
**limitations** [1] - 31:17
**limited** [1] - 25:18
**limits** [1] - 31:15
**Lin** [1] - 18:10

**LIN** [1] - 18:10
**line** [4] - 15:5, 17:25, 40:8, 40:12
**lines** [1] - 36:1
**lingered** [1] - 29:13
**list** [7] - 23:24, 23:25, 28:21, 28:23, 32:23, 46:25, 47:17
**listed** [3] - 6:6, 33:25, 45:23
**listen** [1] - 58:24
**litigating** [1] - 56:21
**litigation** [2] - 37:9, 59:20
**LITIGATION** [1] - 1:4
**live** [1] - 34:24
**LLC** [5] - 1:13, 1:20, 2:10, 2:18, 2:21
**LLP** [7] - 2:5, 2:8, 2:12, 2:15, 2:23, 3:2, 3:5
**Lockard** [3] - 4:24, 7:15, 39:17
**LOCKARD** [3] - 2:15, 7:14, 39:16
**log** [8] - 10:18, 10:20, 10:25, 11:8, 11:17, 11:18, 12:7, 12:8
**logged** [1] - 40:23
**logical** [2] - 36:24, 37:2
**logistical** [1] - 19:8
**look** [11] - 15:8, 21:18, 21:19, 22:3, 32:6, 35:11, 49:5, 56:7, 58:21, 58:23, 60:15
**looked** [2] - 25:20
**looking** [5] - 10:11, 16:13, 23:16, 35:17, 47:3
**looks** [2] - 15:10, 41:7
**LORI** [1] - 2:16
**Lori** [1] - 4:23
**Los** [1] - 3:3
**lose** [1] - 34:9
**Louisiana** [1] - 1:21
**lower** [1] - 44:11
**Ltd** [3] - 2:11, 2:17, 3:8
**Lucas** [2] - 49:6, 49:8
**luck** [1] - 53:20
**lump** [1] - 38:21

## M

**Magistrate** [4] - 4:2, 55:7, 55:8, 55:10
**MAGISTRATE** [1] - 1:11
**main** [2] - 5:25, 6:24
**maintain** [1] - 54:13

**Maitreyee** [1] - 42:2
**majority** [2] - 30:15, 42:15
**managed** [1] - 39:24
**Management** [1] - 9:7
**manager** [1] - 36:7
**managing** [1] - 6:4
**manner** [2] - 32:9, 53:15
**manufacturer** [2] - 43:10, 43:13
**manufacturing** [1] - 32:11
**March** [12] - 8:25, 15:9, 19:14, 19:17, 23:19, 23:23, 30:24, 38:18, 45:10, 46:3, 47:9, 50:6
**Marker** [3] - 7:19, 7:21, 8:5
**MARKER** [1] - 7:19
**Market** [1] - 1:18
**massive** [1] - 22:10
**Master** [4] - 3:10, 5:15, 53:19, 55:16
**materially** [2] - 43:2, 43:5
**math** [6] - 18:20, 29:25, 35:15, 35:23, 37:16, 42:23
**matter** [8] - 26:17, 36:9, 54:6, 54:7, 56:13, 59:1, 60:6, 61:7
**matters** [7] - 9:17, 32:8, 32:10, 36:8, 56:3, 56:4, 57:24
**MAZIE** [1] - 1:13
**MDL** [3] - 4:4, 16:24, 59:16
**mean** [11] - 15:3, 23:6, 26:7, 29:5, 34:9, 37:17, 41:12, 41:24, 45:11, 49:2, 51:3
**meant** [1] - 23:5
**meantime** [1] - 40:16
**meaty** [2] - 7:3, 13:9
**mechanical** [1] - 1:25
**mechanism** [1] - 12:19
**meet** [11] - 28:1, 30:17, 47:12, 47:14, 47:17, 47:18, 47:24, 51:2, 51:6, 55:11, 57:4
**meet-and-confer** [1] - 30:17
**meeting** [5] - 13:4, 46:23, 49:21, 50:16, 51:14

**mention** [1] - 33:22
**mentioned** [1] - 28:10
**met** [1] - 38:11
**method** [1] - 16:15
**middle** [3] - 39:3, 54:8, 56:2
**middle-of-the-month** [1] - 56:2
**might** [5] - 29:7, 30:13, 40:13, 52:24
**mind** [1] - 18:6
**minds** [3] - 49:22, 50:16, 51:14
**minutes** [3] - 37:15, 45:3, 51:24
**miracle** [1] - 54:16
**misheard** [1] - 48:20
**miss** [2] - 28:10, 53:6
**mistake** [1] - 25:3
**MITCHELL** [1] - 2:2
**Mitchell** [1] - 1:7
**modifications** [1] - 14:7
**MOLNAR** [1] - 38:1
**Molnar** [4] - 27:19, 29:24, 38:1, 38:6
**moments** [1] - 38:12
**Monday** [1] - 51:15
**monitoring** [1] - 57:10
**month** [6] - 21:2, 21:3, 54:8, 54:9, 54:10, 56:2
**months** [8] - 19:19, 19:24, 21:2, 23:21, 30:24, 51:22
**morning** [3] - 10:4, 10:16, 31:2
**MORRIS** [1] - 2:8
**most** [14] - 7:3, 11:19, 12:13, 13:9, 13:15, 17:5, 17:9, 21:13, 30:15, 30:24, 35:10, 37:7, 38:13, 42:18
**mostly** [1] - 37:1
**motion** [1] - 5:25
**motions** [2] - 5:24, 58:5
**move** [6] - 20:11, 22:5, 26:24, 38:14, 39:25, 50:19
**moving** [1] - 55:25
**MR** [83] - 4:14, 4:18, 4:21, 5:2, 5:7, 10:1, 11:12, 13:6, 13:23, 14:1, 14:10, 14:15, 15:12, 15:14, 15:17, 15:24, 16:9, 16:11, 20:10, 20:13, 23:14, 24:1, 24:3, 24:5, 25:24, 26:12, 26:23,

27:1, 28:11, 29:5, 29:22, 30:3, 30:9, 32:18, 32:20, 33:21, 34:5, 34:17, 35:13, 36:2, 36:3, 36:21, 36:23, 37:24, 40:8, 40:11, 40:18, 41:4, 41:17, 42:25, 43:7, 44:21, 45:1, 45:7, 45:18, 46:8, 46:12, 46:22, 48:7, 48:19, 48:22, 49:5, 50:1, 50:12, 51:9, 52:10, 52:11, 52:12, 52:13, 53:1, 53:25, 54:12, 54:20, 56:18, 58:9, 58:20, 59:4, 59:15, 59:24, 60:9, 60:11, 60:14, 60:25
MS [17] - 4:16, 4:23, 5:4, 7:14, 10:7, 38:9, 39:9, 39:16, 43:20, 46:14, 46:17, 46:23, 48:18, 48:20, 48:24, 50:22, 51:5
MSPRC [1] - 10:12
Mukherji [3] - 42:2, 42:20, 42:22
must [1] - 57:18
mute [4] - 4:6, 40:7, 40:13, 41:1
Mylan [34] - 2:14, 5:3, 23:25, 26:25, 27:14, 27:18, 27:22, 28:1, 28:5, 28:7, 28:12, 28:18, 28:22, 28:24, 29:7, 30:8, 30:10, 30:16, 30:20, 30:22, 33:9, 33:22, 34:13, 35:9, 36:5, 36:25, 37:18, 39:3, 43:3, 43:5, 43:8, 43:12, 52:6
Mylan's [2] - 35:24, 43:3

### N

NAGLE [2] - 3:6, 43:20
Nagle [1] - 43:20
nail [1] - 34:10
name [4] - 4:12, 7:19, 28:14, 37:22
named [2] - 6:1, 12:7
names [6] - 4:9, 12:6, 18:5, 37:21, 38:16, 41:25
naming [1] - 12:8
Naravatla [2] - 42:1, 42:5

nationals [1] - 46:9
nationwide [1] - 60:7
nature [1] - 43:12
NE [1] - 2:16
nearly [1] - 41:18
necessary [1] - 51:7
necessity [1] - 56:1
need [13] - 5:22, 8:22, 11:23, 12:8, 21:10, 21:13, 22:3, 28:16, 32:5, 34:23, 42:18, 43:9, 43:14
needed [2] - 11:16, 25:19
negotiating [1] - 27:16
net [1] - 45:24
never [2] - 27:12, 51:18
NEW [1] - 1:1
New [7] - 1:8, 1:15, 1:21, 3:7, 19:8, 21:22
next [10] - 9:13, 10:22, 11:3, 20:11, 23:25, 26:24, 38:8, 40:6, 51:15, 56:14
nice [2] - 10:10, 53:4
Nigh [6] - 4:18, 40:11, 41:4, 42:24, 43:6, 44:19
NIGH [9] - 2:2, 4:18, 40:8, 40:11, 41:4, 41:17, 42:25, 43:7, 44:21
night [1] - 60:24
nine [9] - 30:1, 30:3, 30:5, 31:13, 31:18, 33:7, 35:5, 41:13
nitrosamine [1] - 17:8
nitrosamines [1] - 32:13
none [1] - 5:19
normal [1] - 58:10
note [1] - 39:22
nothing [4] - 13:4, 53:1, 53:8, 60:14
notice [11] - 17:7, 19:19, 28:8, 32:5, 32:6, 32:21, 34:14, 42:16, 59:19, 59:20, 60:6
noticed [1] - 59:6
notices [5] - 13:2, 25:20, 59:7, 59:12, 60:8
NUMBER [1] - 1:3
number [22] - 16:3, 16:7, 21:4, 29:18, 30:17, 32:10, 32:11, 32:12, 32:13, 32:14,

37:1, 38:22, 39:4, 43:9, 45:8, 45:13, 48:12, 49:9, 49:10, 49:11, 60:18
Number [5] - 4:5, 9:1, 9:7, 9:8
Numbers [1] - 9:11
numbers [4] - 16:14, 35:16, 44:11, 48:25
numerous [1] - 28:16

### O

Oberfeld [1] - 45:3
objection [8] - 10:13, 10:25, 11:7, 13:1, 14:13, 14:16, 39:14, 39:16
objections [6] - 9:15, 9:19, 9:20, 9:21, 9:23, 9:25
obtained [2] - 7:6, 7:10
obviously [6] - 22:4, 24:14, 28:15, 34:2, 35:16, 55:1
occurring [1] - 51:12
OF [1] - 1:1
offer [2] - 27:12, 47:14
offered [2] - 30:23, 45:9
office [2] - 57:11, 57:21
Official [1] - 1:23
often [1] - 55:11
Ohio [1] - 2:24
once [1] - 31:2
One [1] - 2:13
one [43] - 5:24, 8:15, 11:5, 13:11, 14:20, 14:22, 14:25, 18:8, 20:18, 23:1, 23:3, 23:4, 24:8, 25:24, 26:11, 27:20, 28:7, 29:19, 29:22, 29:23, 29:24, 32:10, 32:15, 33:14, 33:15, 34:20, 34:23, 35:18, 38:2, 38:5, 38:6, 41:12, 41:23, 42:12, 42:17, 42:22, 45:13, 49:23, 55:20
one-sixth [1] - 8:15
ones [1] - 57:5
open [3] - 4:1, 5:13, 52:24
operate [1] - 8:7
opportunity [8] - 5:21, 47:12, 47:23, 50:18, 53:5, 55:23, 56:6, 56:21

optimistic [1] - 27:22
ORAL [1] - 1:6
Order [1] - 9:7
order [12] - 6:7, 8:24, 8:25, 9:2, 9:10, 16:18, 25:19, 46:5, 50:4, 51:7, 53:21, 57:25
ordered [2] - 25:5, 43:3, 60:3
orders [4] - 9:11, 55:15, 55:17, 55:21
original [2] - 13:19, 17:11
originally [2] - 18:24, 45:19
Orleans [1] - 1:21
otherwise [2] - 22:15, 24:19
ought [2] - 35:18, 36:15
ourselves [1] - 55:5
outset [1] - 31:16
outstanding [8] - 5:19, 5:22, 5:25, 6:12, 49:14, 49:19, 49:21, 57:24
overall [1] - 43:13
overlap [2] - 41:11, 42:6
overlapping [1] - 42:9
overwhelming [1] - 49:11
own [1] - 40:4
Oxford [1] - 2:13

### P

P.A [1] - 2:2
P.C [2] - 1:16, 2:19
p.m [3] - 1:9, 4:2, 61:2
page [1] - 8:3
PAPANTONIO [1] - 2:2
papers [7] - 9:13, 11:3, 11:15, 13:10, 16:10, 16:13, 18:15
Park [1] - 3:3
Parkway [1] - 1:14, 2:20
part [4] - 12:3, 12:4, 30:15, 30:25
participating [1] - 8:17
particular [1] - 15:8
particularly [1] - 27:22
parties [32] - 4:22, 6:13, 6:17, 7:11, 8:3, 8:16, 8:17, 9:6, 9:9, 13:4, 15:3, 15:25, 17:10, 19:16, 19:18,

19:21, 23:20, 25:19, 30:12, 30:18, 30:19, 30:25, 36:16, 48:6, 50:2, 51:19, 51:21, 51:23, 52:8, 54:14, 57:4, 59:19
parties' [7] - 5:12, 6:22, 6:25, 13:15, 16:24, 22:20, 40:3
party [8] - 6:11, 8:1, 9:22, 10:25, 19:4, 20:12, 25:6, 44:23
past [4] - 19:22, 19:23, 44:7, 59:5
pay [3] - 8:9, 8:15, 9:4
paying [2] - 8:11
Pedano [1] - 1:23, 61:9
pencil [1] - 25:20
Peng [1] - 24:11
Pennsylvania [4] - 1:18, 2:9, 2:13, 2:21
Pensacola [1] - 2:3
people [4] - 4:5, 4:8, 12:8, 12:9, 12:10, 28:9
per [5] - 8:3, 8:13, 35:23, 37:15, 38:24
per-page [1] - 8:3
per-witness [1] - 38:24
percent [2] - 26:11, 31:7
perfectly [3] - 25:3, 44:19, 51:25
perhaps [2] - 30:11, 48:14
period [2] - 38:25
permit [2] - 25:6, 39:8
permitted [2] - 31:4, 46:20
person [2] - 22:3, 36:7
personally [1] - 21:1
perspective [1] - 14:21
Pharma [4] - 2:18, 2:21, 2:22, 3:7
Pharmaceutical [1] - 2:17
Pharmaceuticals [5] - 2:10, 2:11, 2:14, 2:18, 3:8
pharmacies [1] - 13:3
Pharmacy [2] - 3:4, 5:6
pharmacy [1] - 5:5
Philadelphia [2] - 1:18, 2:9
phone [5] - 4:5, 4:6, 41:1, 52:9, 58:16

**phrase** [1] - 32:24
**phrased** [1] - 32:9
**Piedmont** [1] - 2:16
**PIETRAGALLO** [1] - 2:12
**Pittsburgh** [1] - 2:13
**place** [1] - 59:21
**placeholder** [1] - 5:21
**placing** [1] - 38:16
**plaintiff** [16] - 15:22, 16:4, 18:3, 18:17, 18:24, 31:22, 33:18, 34:12, 34:15, 35:4, 35:6, 36:11, 37:21, 40:7, 46:19, 52:1
**plaintiffs** [59] - 4:13, 4:15, 4:17, 4:19, 6:1, 7:24, 8:6, 8:9, 8:11, 8:14, 8:15, 9:4, 9:17, 9:18, 10:2, 10:12, 10:14, 10:18, 11:1, 13:6, 17:12, 17:22, 19:18, 21:23, 23:2, 23:19, 24:2, 24:21, 25:5, 25:13, 25:18, 25:22, 26:13, 27:2, 29:3, 31:12, 32:2, 33:16, 35:8, 36:4, 36:17, 38:10, 39:8, 41:2, 41:5, 43:18, 43:24, 44:1, 44:15, 46:24, 47:12, 47:14, 48:2, 53:2, 54:15, 59:6, 60:13, 60:14
**Plaintiffs** [5] - 1:15, 1:19, 1:22, 2:4, 2:7
**plaintiffs'** [16] - 5:25, 9:15, 9:17, 9:25, 10:10, 16:6, 16:15, 17:11, 17:18, 18:15, 25:16, 26:19, 29:17, 44:6, 47:4, 59:17
**planned** [1] - 5:11
**plate** [2] - 19:4, 19:7
**played** [1] - 22:21
**pleasure** [2] - 53:11, 53:16
**plus** [14] - 8:14, 14:6, 17:21, 19:7, 29:18, 29:19, 29:22, 29:23, 31:25, 42:10, 51:23
**point** [11] - 15:7, 21:12, 22:19, 25:25, 26:9, 27:10, 33:11, 33:22, 37:12, 51:10, 57:22
**points** [4] - 22:17, 24:6, 24:8, 36:21
**portal** [4] - 7:22, 8:4, 8:9

**position** [9] - 12:12, 21:9, 33:3, 37:10, 43:2, 43:5, 45:12
**possess** [1] - 6:9
**possible** [2] - 45:14, 45:15
**possibly** [1] - 39:25
**potentially** [1] - 54:24
**practical** [2] - 19:7, 19:12
**practice** [1] - 58:14
**prefaced** [1] - 37:8
**prefer** [3] - 50:15, 57:13, 58:14
**prejudice** [1] - 21:23
**prejudiced** [2] - 21:9, 21:24
**prepared** [5] - 16:16, 36:8, 45:4, 50:3, 50:4
**prerogative** [1] - 25:15
**presented** [2] - 20:23, 26:3
**presume** [1] - 6:14
**presumptive** [2] - 31:25, 33:5
**pretty** [2] - 27:7, 51:11
**prevail** [2] - 22:6, 22:8
**previously** [2] - 12:14, 19:2
**primary** [1] - 38:14
**Prinston** [1] - 2:10
**privilege** [11] - 9:19, 9:23, 10:16, 10:18, 10:20, 10:25, 11:8, 11:16, 11:18, 11:25
**problem** [1] - 57:11
**problems** [2] - 19:8, 21:21
**Procedure** [2] - 31:15, 33:6
**proceed** [4] - 56:8, 56:17, 58:18, 60:17
**proceeding** [1] - 58:10
**Proceedings** [1] - 1:25
**proceedings** [2] - 61:2, 61:7
**PROCEEDINGS** [1] - 4:1
**process** [3] - 7:20, 32:10, 50:19
**PROCTOR** [1] - 2:2
**produce** [6] - 6:3, 6:8, 10:18, 12:4, 15:21, 50:4
**produced** [5] - 1:25, 20:3, 34:13, 37:4, 46:10
**producing** [6] - 28:7,

35:20, 35:24, 36:25, 37:18, 47:6
**product** [4] - 17:7, 32:17, 32:19, 43:10
**productive** [1] - 27:4
**PRODUCTS** [1] - 1:4
**professional** [2] - 53:15, 58:25
**progress** [5] - 38:13, 39:1, 39:5, 39:18, 40:2
**pronounce** [1] - 18:5
**proposal** [18] - 14:5, 14:6, 14:8, 16:6, 17:11, 17:18, 27:14, 27:16, 28:18, 29:18, 33:4, 37:24, 44:7, 44:21, 55:4, 56:25
**propose** [1] - 14:7, 17:13, 34:20, 34:21, 42:11, 42:12, 42:18, 42:21, 45:24, 47:2, 47:8, 49:4, 55:24, 56:5
**proposed** [27] - 6:13, 6:17, 16:2, 17:20, 18:4, 18:24, 18:25, 24:22, 28:22, 31:20, 33:16, 34:25, 35:25, 38:20, 41:18, 42:2, 43:19, 44:1, 46:1, 47:7, 47:17, 47:22, 48:12, 48:25, 49:1, 60:16
**proposing** [4] - 13:25, 15:21, 17:22, 17:23, 43:18, 48:16
**propounded** [1] - 42:16
**propriety** [1] - 11:25
**protected** [1] - 10:15
**protocol** [2] - 9:8, 10:21
**provide** [8] - 11:15, 11:18, 12:4, 12:6, 14:4, 36:20, 47:9, 55:12
**provided** [6] - 7:21, 11:15, 11:17, 14:2, 14:18, 36:4
**providing** [3] - 11:19, 24:20, 60:6
**purely** [1] - 44:3
**purview** [1] - 55:16
**push** [1] - 23:19
**pushed** [1] - 19:17
**pushing** [2] - 23:22, 50:6
**put** [15] - 4:6, 4:7, 4:9, 5:21, 9:3, 10:5,

10:23, 12:23, 33:24, 37:9, 39:11, 40:25, 46:18, 52:16, 53:21
**puts** [1] - 45:11
**putting** [3] - 42:17, 51:18, 57:20

---
**Q**
---

**quarentine** [1] - 19:9
**questioning** [2] - 17:5, 22:9
**quite** [3] - 11:9, 27:10, 28:16
**quote** [2] - 12:2, 12:7

---
**R**
---

**R-E-E-D** [1] - 38:2
**RAFFERTY** [1] - 2:2
**raise** [6] - 5:14, 11:10, 51:19, 52:8, 52:14, 59:8
**raised** [4] - 9:15, 22:18, 24:7, 54:22
**RANDOLPH** [1] - 2:5
**random** [1] - 58:16
**RASPANTI** [1] - 2:12
**rather** [2] - 8:12, 56:20
**rational** [1] - 35:12
**rationale** [1] - 35:25
**re** [1] - 28:21
**RE** [1] - 1:4
**re-list** [1] - 28:21
**reach** [6] - 35:12, 39:5, 39:21, 47:5, 48:1, 51:17
**reached** [8] - 41:6, 41:9, 47:21, 48:14, 49:21, 57:7, 57:8, 57:18
**read** [7] - 5:12, 8:21, 9:17, 13:10, 16:10, 27:13, 28:6
**reading** [1] - 18:15
**ready** [1] - 51:11
**realize** [1] - 33:2
**really** [10] - 5:25, 10:11, 14:20, 15:9, 22:16, 27:12, 32:7, 32:10, 52:20, 53:8
**reargue** [1] - 20:14
**reason** [5] - 11:15, 31:15, 55:19, 56:24, 59:11
**reasonable** [8] - 18:7, 22:2, 25:21, 28:3, 28:19, 35:11, 37:12, 37:14
**reasoned** [1] - 35:3
**reasons** [1] - 45:22

**reassuring** [1] - 59:1
**receive** [2] - 47:2, 47:16
**received** [3] - 44:7, 46:25, 47:13
**receiving** [1] - 43:10
**recent** [3] - 5:12, 6:2, 6:6
**recently** [1] - 31:1
**recognize** [1] - 27:24
**recognizing** [1] - 50:17
**reconcile** [1] - 15:3
**record** [18] - 4:4, 4:7, 4:9, 11:13, 20:18, 21:7, 21:15, 22:14, 22:20, 25:4, 30:11, 39:17, 39:22, 54:4, 57:10, 57:14, 57:20, 61:7
**recorded** [1] - 1:25
**records** [11] - 7:5, 7:10, 7:20, 7:21, 7:25, 8:1, 8:3, 8:14, 8:20, 9:3, 9:4
**Reddy** [2] - 42:1, 42:5
**Reed** [3] - 29:24, 38:2, 38:6
**reed** [1] - 27:20
**reference** [3] - 8:25, 9:11, 13:1
**referring** [2] - 11:21, 51:5
**reflect** [1] - 22:20
**regard** [4] - 22:24, 23:11, 23:17, 34:22
**regarding** [4] - 7:5, 9:25, 11:4, 13:1
**regards** [2] - 29:14, 34:18
**regulatory** [1] - 32:14
**reiterates** [1] - 25:4
**related** [1] - 45:22
**relevant** [1] - 53:13
**remaining** [2] - 6:11, 30:22
**remember** [1] - 13:18
**removed** [1] - 10:13
**repeat** [1] - 43:4
**repeated** [1] - 32:8
**REPORTER** [4] - 40:10, 40:22, 49:16, 60:22
**Reporter** [1] - 1:23
**reporter** [4] - 4:10, 4:12, 60:21
**Reporter/Transcriber** [1] - 61:9
**repository** [3] - 7:9,

7:13, 9:3
**represent** [1] - 41:20
**representative** [1] - 9:16
**represented** [2] - 25:18, 45:20
**reproduction** [1] - 8:2
**request** [7] - 7:12, 20:7, 26:20, 26:21, 47:2, 47:13, 51:5
**requests** [2] - 9:16, 9:20
**required** [3] - 11:1, 36:20, 59:18
**resolution** [2] - 56:4, 57:19
**resolve** [2] - 16:25, 55:15
**resolved** [6] - 9:21, 30:16, 40:4, 54:15, 57:15, 57:24
**resources** [1] - 55:2
**respect** [8] - 30:15, 31:6, 32:12, 35:20, 36:4, 53:9, 53:16, 58:3
**respectfully** [1] - 55:1
**respond** [2] - 36:2, 36:21
**response** [4] - 15:22, 28:8, 39:10, 47:16
**responses** [1] - 10:13
**responsive** [3] - 10:15, 16:7, 34:14
**rest** [1] - 10:23
**result** [3] - 35:18, 54:25
**results** [1] - 17:6
**Ret** [1] - 3:10
**retailer** [1] - 5:5
**Retailer** [1] - 3:4
**reviewed** [1] - 45:23
**ripe** [1] - 12:15
**risk** [1] - 32:12
**Rite** [2] - 3:4, 5:6
**Road** [2] - 2:6, 2:16
**role** [2] - 22:21, 29:6
**roll** [2] - 22:1, 51:24
**Roseland** [1] - 1:15
**RPR** [1] - 61:9
**RUBEN** [1] - 1:17
**Ruben** [7] - 40:8, 40:12, 45:1, 48:7, 48:24, 50:22, 50:24
**Ruben's** [1] - 51:5
**Rule** [7] - 9:16, 17:19, 17:20, 18:2, 18:23, 26:16, 36:6
**rule** [4] - 9:22, 16:23, 50:3, 50:8

**ruled** [1] - 27:24
**Rules** [2] - 31:14, 33:6
**rules** [1] - 24:13
**ruling** [12] - 8:20, 17:3, 17:23, 17:25, 20:2, 20:6, 22:23, 25:2, 26:10, 26:18, 27:6, 38:3
**rulings** [7] - 15:5, 16:17, 36:16, 39:19, 44:17, 47:25, 53:22
**RULINGS** [1] - 1:6

## S

**sales** [3] - 32:14, 32:20, 32:21
**Sanjay** [1] - 49:11
**Sarah** [1] - 5:4
**SARAH** [1] - 3:2
**save** [1] - 7:2
**saw** [5] - 9:13, 11:3, 11:9, 12:25, 40:9
**scale** [1] - 24:24
**schedule** [31] - 6:5, 6:7, 6:13, 6:17, 13:19, 13:24, 14:2, 14:14, 14:21, 19:2, 19:5, 20:4, 20:8, 21:3, 24:16, 27:8, 29:2, 30:16, 30:25, 31:7, 31:9, 46:1, 52:19, 54:5, 54:10, 54:23, 55:24, 56:5, 56:7, 58:3
**scheduled** [3] - 10:22, 56:10, 56:11
**scheduling** [9] - 6:24, 13:13, 13:17, 19:22, 21:17, 27:7, 29:14, 29:15, 52:5
**Schneider** [10] - 4:2, 4:4, 54:1, 54:6, 56:12, 57:17, 57:23, 58:11, 59:8, 60:1
**SCHNEIDER** [1] - 1:11
**scientific** [1] - 35:10
**scope** [1] - 12:18
**second** [6] - 11:23, 13:13, 13:21, 45:17, 45:18, 54:9
**secrecy** [2] - 11:4, 11:7
**secret** [1] - 19:7
**Secret** [5] - 11:19, 11:21, 12:3, 12:15, 12:20
**secure** [1] - 7:22
**see** [14] - 14:2, 15:9, 15:12, 21:6, 21:15, 22:15, 23:15, 27:22,

32:1, 44:15, 55:24, 58:25
**seeing** [1] - 40:11
**seeking** [2] - 31:12, 34:15
**selected** [1] - 46:3
**send** [1] - 41:8
**sending** [1] - 57:9
**sense** [2] - 58:21, 60:5
**sent** [4] - 12:9, 12:10, 46:2, 49:6
**Sentry** [1] - 2:20
**seriously** [2] - 19:21, 51:24
**serve** [2] - 10:13, 32:5
**service** [1] - 19:5
**set** [13] - 6:2, 7:9, 7:13, 8:18, 16:2, 27:8, 39:2, 48:13, 51:1, 54:6, 54:7, 58:3
**Seth** [3] - 4:22, 24:5, 52:13
**SETH** [1] - 2:8
**seven** [26] - 17:17, 18:21, 24:13, 25:7, 25:8, 26:20, 27:13, 29:20, 30:3, 30:5, 30:7, 30:22, 31:24, 31:25, 35:8, 36:18, 37:14, 37:15, 39:23, 42:23, 43:4, 43:18, 44:4, 49:2
**seven-hour** [2] - 25:8, 26:20
**seventy** [1] - 18:21
**several** [4] - 29:10, 29:11, 43:11, 57:3
**severely** [1] - 21:9
**shame** [1] - 19:21
**shape** [1] - 9:22
**sharpened** [1] - 25:20
**shoes** [2] - 56:12
**shore** [1] - 29:13
**short** [3] - 7:17, 50:15, 51:6
**shortly** [2] - 39:24, 47:19
**show** [1] - 22:8
**shows** [1] - 15:9
**side** [3] - 42:3, 55:6, 59:3
**sides** [2] - 20:24, 53:14
**sign** [1] - 53:17
**significant** [1] - 22:9
**significantly** [2] - 21:24, 25:18
**similar** [6] - 34:17, 39:5, 43:5, 43:8,

43:15, 43:22
**simply** [3] - 31:19, 45:25, 57:9
**Singh** [2] - 49:11, 49:12
**single** [1] - 28:13
**six** [8] - 17:21, 17:23, 18:2, 30:1, 38:7, 41:13, 45:20, 51:21
**sixth** [1] - 8:15
**SLACK** [1] - 2:5
**SLATER** [19] - 1:13, 1:14, 4:14, 11:12, 14:15, 15:12, 15:14, 15:17, 20:13, 23:14, 40:18, 52:10, 52:12, 53:1, 54:12, 58:9, 58:20, 59:15, 60:14
**Slater** [14] - 4:14, 11:12, 14:12, 20:13, 22:18, 23:13, 24:7, 40:18, 53:1, 54:11, 58:9, 58:17, 59:13, 60:6
**sleeves** [1] - 51:24
**sliding** [1] - 24:24
**slightly** [3] - 21:19, 32:9, 32:24
**SNIDER** [1] - 38:2
**Snider** [5] - 27:20, 29:24, 34:20, 38:1, 38:6
**so-called** [1] - 11:19
**Solco** [1] - 2:10
**solution** [1] - 36:14
**someone** [4] - 7:11, 7:12, 11:10, 20:17
**somewhat** [4] - 14:23, 33:23, 34:3
**somewhere** [1] - 17:24
**sooner** [1] - 51:13
**sorry** [7] - 18:13, 24:1, 24:5, 27:2, 40:10, 46:18, 50:20
**sort** [3] - 11:7, 39:20, 50:25
**sorting** [1] - 43:15
**sounds** [1] - 50:13
**South** [1] - 2:9
**speaking** [5] - 4:6, 4:12, 31:6, 40:10, 40:25
**Special** [4] - 3:10, 5:15, 53:19, 55:16
**special** [1] - 18:18
**spent** [2] - 16:12, 35:16
**spirit** [1] - 28:22
**split** [1] - 8:1

**spoken** [1] - 6:19
**spot** [1] - 28:3
**spread** [4] - 28:15, 31:21, 31:25, 35:22
**springs** [1] - 51:9
**stand** [1] - 51:13
**standing** [1] - 56:12
**standpoint** [1] - 46:4
**STANOCH** [3] - 1:17, 10:1, 13:6
**Stanoch** [2] - 10:1, 13:6
**start** [11] - 4:13, 10:22, 13:14, 13:16, 15:15, 19:20, 22:25, 31:5, 31:24, 51:22, 51:24
**started** [3] - 19:21, 21:17, 37:12
**starters** [1] - 38:13
**state** [2] - 20:15, 21:7
**State** [5] - 11:18, 11:21, 12:3, 12:15, 12:20
**STATES** [2] - 1:1, 1:11
**States** [2] - 4:2, 46:11
**static** [1] - 22:22
**STATUS** [1] - 1:5
**stay** [2] - 56:5, 56:7
**stenography** [1] - 1:25
**step** [3] - 19:6, 25:16, 60:2
**stepped** [2] - 19:4, 59:9
**Steven** [1] - 49:6
**sticking** [1] - 27:10
**still** [3] - 6:12, 13:4, 15:19
**stirpes** [1] - 8:13
**stop** [1] - 41:1
**Street** [4] - 1:18, 1:21, 2:9, 2:24
**Streets** [1] - 1:8
**strike** [1] - 36:18
**strikes** [1] - 36:19
**struggle** [1] - 36:14
**subject** [5] - 32:8, 32:10, 36:8, 39:10, 44:15
**subjecting** [1] - 33:7
**subjects** [3] - 32:16, 32:22, 32:23
**submission** [1] - 14:19
**submit** [3] - 32:23, 39:13, 51:15
**submitted** [1] - 14:19
**subpoena** [2] - 6:11, 41:21
**subsequent** [1] - 22:9

subsidiaries [1] - 6:9
subsidiary's [1] - 6:10
substantial [1] - 28:16
substantive [1] - 9:20
suggested [2] - 34:22, 56:25
suggesting [1] - 39:7
suggestion [1] - 39:9
Suite [6] - 1:18, 2:3, 2:6, 2:16, 2:24, 3:3
sum [1] - 38:21
summary [1] - 22:20
supplemented [1] - 13:19
supplied [2] - 11:8, 21:18
suppose [3] - 13:14, 51:6, 54:16
surprised [1] - 17:9
Sushil [2] - 42:1, 42:14
sympathize [1] - 36:13

**T**

T3 [1] - 13:1
table [1] - 44:22
tables [1] - 43:23
tail [1] - 57:5
talks [1] - 32:21
TALTON [1] - 37:25
Talton [4] - 27:19, 29:23, 37:25, 38:5
technicality [2] - 25:9, 60:4
tee [1] - 12:13
teed [1] - 57:25
teleconference [1] - 54:1
TELEPHONIC [1] - 1:5
ten [11] - 15:21, 15:23, 16:7, 16:17, 17:12, 17:14, 17:17, 18:21, 35:20, 35:22, 44:7
terms [12] - 39:3, 42:5, 42:15, 43:8, 43:13, 48:11, 48:25, 56:13, 56:14, 57:6, 60:6, 60:16
terribly [1] - 40:23
testify [1] - 36:7
testimony [34] - 17:13, 17:14, 17:19, 17:21, 18:2, 18:9, 18:10, 18:23, 21:12, 23:3, 23:4, 23:12, 24:10, 24:13, 24:14, 24:17, 24:20, 24:23, 24:25, 25:14, 25:15, 29:20, 31:13, 33:1, 33:8,

33:16, 33:20, 35:7, 42:5, 43:14, 43:16, 44:4, 44:8
testing [3] - 17:6, 32:11
Teva [11] - 2:17, 2:18, 4:25, 7:15, 38:8, 38:20, 39:8, 39:14, 43:23, 52:6, 57:6
Teva's [3] - 38:11, 39:3, 39:10
Texas [1] - 2:6
text [1] - 11:22
THE [73] - 1:1, 1:11, 4:3, 4:20, 5:10, 8:19, 10:6, 10:24, 12:23, 13:8, 13:24, 14:9, 14:11, 15:11, 15:13, 15:15, 15:18, 15:25, 16:10, 16:12, 20:11, 22:17, 23:17, 24:4, 25:2, 26:10, 26:13, 26:24, 28:5, 28:24, 29:17, 29:25, 30:5, 32:17, 32:19, 33:9, 34:8, 35:2, 36:22, 37:20, 38:3, 39:7, 39:14, 40:5, 40:10, 40:13, 40:20, 40:22, 40:25, 41:16, 42:23, 43:1, 43:17, 44:19, 44:22, 45:5, 45:16, 46:6, 46:11, 46:16, 46:18, 48:4, 48:16, 49:4, 49:13, 49:16, 49:20, 50:2, 50:20, 51:3, 51:18, 53:10, 60:22
theirs [1] - 14:24
themselves [1] - 16:25
they've [1] - 57:7
third [4] - 6:6, 6:11, 7:10, 12:6
third-party [1] - 6:11
THOMAS [2] - 2:2, 3:10
THORNBURG [1] - 3:2
thoroughly [1] - 53:14
thousand [1] - 26:11
three [24] - 11:20, 22:17, 26:15, 27:17, 27:23, 28:18, 28:19, 29:18, 29:22, 29:23, 30:3, 32:12, 33:16, 33:18, 34:3, 37:24, 38:5, 38:6, 38:17, 39:25, 41:12, 41:19, 49:1, 49:2
throughout [1] - 30:24
throwing [1] - 44:12

Thursday [2] - 47:1, 47:18
timely [1] - 54:15
titles [1] - 12:6
today [23] - 5:20, 5:23, 6:22, 7:3, 7:8, 10:10, 14:20, 14:24, 17:3, 21:19, 29:14, 29:16, 39:6, 39:18, 40:4, 47:25, 50:15, 52:14, 53:5, 53:22, 57:5, 58:8, 59:10
today's [1] - 50:12
together [2] - 39:11, 53:21
Tom [1] - 54:3
tomorrow [1] - 15:4
tonight [2] - 43:23, 44:17
took [2] - 26:15, 26:20
top [4] - 25:10, 25:11, 31:23, 36:17
topic [3] - 26:24, 34:7, 37:15
topical [2] - 28:14, 28:16
topics [24] - 15:22, 17:5, 25:21, 27:18, 28:13, 28:15, 30:21, 32:3, 32:6, 37:1, 37:2, 39:4, 42:11, 42:12, 42:15, 42:16, 42:22, 43:9, 43:12, 48:12, 49:9, 49:10, 49:12
Torrent [17] - 3:7, 41:2, 41:3, 41:20, 43:1, 43:2, 43:4, 43:8, 43:9, 43:18, 43:21, 44:22, 50:20, 52:6, 57:7
Torrent's [1] - 43:17
total [19] - 17:13, 18:1, 18:8, 18:9, 27:13, 28:18, 29:19, 30:4, 30:19, 33:15, 33:19, 37:14, 38:6, 42:2, 42:7, 42:18, 42:23, 43:3, 48:16
totally [1] - 34:6
towards [1] - 57:5
tracing [2] - 17:7, 32:21
track [1] - 40:15
tracked [1] - 44:24
trade [1] - 23:6
train [1] - 34:9
transcript [2] - 1:25, 61:6
transcription [1] -

1:25
TRAURIG [1] - 2:15
Traurig [2] - 4:24, 7:15
travel [3] - 19:9, 21:21, 25:12
treated [1] - 36:5
treatment [2] - 32:17, 32:19
tremendous [1] - 53:8
trial [1] - 26:3
tried [1] - 25:21
TRISCHLER [8] - 2:12, 5:2, 30:9, 32:18, 32:20, 34:5, 35:13, 36:3
Trischler [6] - 5:3, 27:4, 27:11, 30:9, 34:8, 35:13
Trischler's [2] - 36:24, 37:13
truly [1] - 52:22
try [4] - 21:9, 35:2, 35:12, 50:16
trying [5] - 28:12, 33:3, 33:4, 35:11, 51:10
turn [5] - 24:16, 34:11, 40:20, 43:1, 59:9
turning [2] - 15:19, 15:20
turns [1] - 22:8
twice [2] - 45:23
two [53] - 6:2, 9:11, 12:25, 13:11, 17:21, 17:23, 18:12, 18:13, 18:14, 18:18, 19:23, 21:2, 21:4, 22:24, 24:12, 25:14, 26:13, 26:15, 26:21, 27:19, 29:19, 29:22, 29:23, 32:11, 37:16, 37:25, 38:15, 39:24, 41:11, 41:12, 41:14, 42:7, 42:18, 43:15, 45:23, 48:13, 49:8, 49:9, 49:10, 49:14, 49:18, 49:20, 49:24, 50:16, 52:1, 52:17, 54:8, 59:4
two-day [1] - 26:21
type [2] - 7:8, 7:13
typically [1] - 8:2

**U**

U.S [3] - 1:7, 2:10, 46:15
ULMER [1] - 2:23
ultimately [3] - 11:24, 12:16, 12:17
umbrella [1] - 32:20

unable [1] - 49:17
unclear [1] - 28:11
under [7] - 8:7, 17:11, 22:5, 24:13, 32:20, 33:6, 36:6
understandable [1] - 51:25
unfair [2] - 21:24, 23:19
unfortunately [3] - 20:22, 41:8, 46:2
unique [1] - 33:23
United [2] - 4:2, 46:11
UNITED [2] - 1:1, 1:11
unless [1] - 54:10
unmistakably [1] - 25:13
unnecessary [1] - 54:24
unquote [2] - 12:3, 12:7
untenable [1] - 45:12
up [36] - 5:13, 7:9, 7:13, 8:18, 8:23, 12:13, 13:15, 15:12, 16:4, 17:15, 17:24, 18:20, 19:4, 19:6, 23:2, 23:7, 23:8, 25:21, 29:13, 30:2, 35:3, 35:11, 37:5, 38:11, 40:3, 40:23, 40:24, 42:17, 44:9, 44:15, 49:17, 51:24, 55:20, 57:16, 57:25
update [1] - 27:3
updated [2] - 14:19, 21:19
US [1] - 29:11
US-based [1] - 29:11
USA [2] - 2:18, 2:22

**V**

VALSARTAN [1] - 1:4
Valsartan [1] - 4:4
Vanaskie [1] - 54:3
VANASKIE [15] - 3:10, 54:2, 54:18, 55:12, 57:1, 58:17, 58:23, 59:13, 59:23, 60:5, 60:10, 60:12, 60:15, 60:23, 61:1
various [5] - 5:24, 7:10, 13:13, 28:14, 31:5
vast [1] - 30:15
vendor [2] - 7:6, 7:18
Victoria [3] - 4:24, 7:14, 39:17
VICTORIA [1] - 2:15
view [2] - 54:11, 54:12

*views* [2] - 56:8, 56:16
*Vine* [1] - 2:24
*voluntarily* [1] - 6:3

## W

*W-A-N-G* [1] - 22:25
*wait* [1] - 51:23
*waived* [1] - 26:8
*Wang* [4] - 18:8, 18:10, 18:11, 22:25
*WANG* [3] - 18:8, 18:10, 18:11
*wants* [6] - 4:7, 5:14, 7:11, 8:1, 25:17, 51:20
*Wednesday* [2] - 54:9
*week* [6] - 10:22, 10:23, 13:21, 19:23, 40:4, 51:15
*weeks* [1] - 54:8
*weigh* [3] - 23:8, 24:6, 52:25
*weighty* [1] - 7:3
*welcome* [1] - 4:8
*WERNER* [1] - 2:19
*whine* [1] - 53:5
*whining* [1] - 53:6
*WHITELEY* [5] - 1:20, 1:20, 4:16, 38:9, 39:9
*Whiteley* [3] - 4:17, 38:10, 39:7
*whoever's* [1] - 40:25
*whole* [4] - 12:2, 32:3, 32:4, 50:24
*Wholesaler* [1] - 2:25
*wholesaler* [1] - 5:8
*wholesalers* [2] - 13:2, 13:3
*Williams* [3] - 55:8, 55:10, 55:18
*willing* [1] - 34:1
*wind* [1] - 17:24
*window* [2] - 50:16, 51:6
*wish* [2] - 28:23, 46:24
*WITH* [1] - 1:6
*witness* [29] - 12:17, 14:3, 16:3, 18:17, 22:5, 22:7, 22:25, 24:9, 26:2, 26:3, 27:17, 28:8, 28:13, 30:20, 30:22, 32:22, 34:2, 35:1, 35:23, 36:11, 36:25, 38:24, 39:4, 39:23, 42:8, 42:9, 42:10, 42:11, 42:21
*witness's* [1] - 26:5
*witnesses* [61] - 6:4,

15:1, 15:22, 15:23, 16:8, 16:18, 17:12, 17:14, 17:19, 20:3, 21:8, 21:12, 24:18, 27:23, 28:21, 29:2, 29:11, 30:20, 31:8, 31:9, 31:14, 31:21, 31:22, 31:24, 32:1, 33:7, 33:12, 33:13, 33:14, 33:15, 34:4, 34:12, 34:16, 35:22, 37:4, 37:19, 37:23, 38:23, 39:11, 41:6, 41:10, 41:13, 44:9, 45:9, 45:14, 45:19, 45:24, 46:5, 46:6, 46:7, 47:1, 47:2, 47:6, 47:10, 47:16, 47:22, 48:12, 49:1, 50:5
*word* [1] - 36:22
*words* [2] - 8:10, 53:10
*worse* [1] - 22:16
*written* [1] - 13:2

## Y

*Year* [1] - 19:8
*Year's* [1] - 21:22
*years* [2] - 52:17, 53:5
*yesterday* [5] - 14:19, 21:18, 41:9, 47:4, 47:19
*York* [2] - 3:7
*yourselves* [1] - 50:11

## Z

*zero* [1] - 26:19
*Zhang* [1] - 18:12
*ZHANG* [1] - 18:12
*Zhejiang* [1] - 2:11
*ZHP* [32] - 4:22, 6:3, 11:6, 13:14, 13:24, 15:16, 15:17, 15:19, 15:21, 16:2, 17:20, 17:22, 18:24, 19:3, 19:8, 19:14, 20:1, 20:11, 21:20, 23:6, 23:8, 33:10, 33:12, 34:18, 34:22, 35:20, 36:4, 38:4, 39:2, 43:11, 52:6
*ZHP's* [2] - 19:1, 22:19
*Zoom* [1] - 25:11