

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

*FIRM and AFFILIATE OFFICES*

SETH A. GOLDBERG
DIRECT DIAL: +1 215 979 1175
PERSONAL FAX: +1 215 689 2198
*E-MAIL:* SAGoldberg@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

January 20, 2021

**VIA ECF**

The Honorable Karen M. Williams
United States Magistrate Judge
United States District Court - District of New Jersey
Mitchell H. Cohen U.S. Courthouse
4th & Cooper Streets, Room 2060
Camden, NJ  08101

The Honorable Thomas I. Vanaskie (Ret.)
Special Master for Discovery
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA 19103

> **Re:   In re Valsartan/Irbesartan/Losartan MDL**

Dear Judge Williams and Judge Vanaskie:

Pursuant to the Court's order dated January 11, 2021 (ECF No. 727), this supplemental letter brief is to provide the Manufacturer Defendants' positions with respect to whether they may be ordered to accept service of document subpoenas that Plaintiffs have not even attempted to serve on the foreign third parties to which they are directed, and to obtain documents and ESI from those third parties that may be responsive to the unserved subpoenas based on Plaintiffs' unfounded assertion that the Manufacturer Defendants are in possession, custody, or control of any such information that might be in the third parties' possession.

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 2

## I.     INTRODUCTION

Having not taken any steps to perfect and serve subpoenas on the foreign third parties identified below under the Hague Convention and other international treaties, as required under Rule 45, Plaintiffs would have this Court order the Manufacturer Defendants to accept service of the unserved subpoenas and to collect and produce information in the possession of the foreign third parties that may be responsive to the unserved subpoenas. However, Plaintiffs have not demonstrated that the Manufacturer Defendants have "possession, custody, or control" over the information in any of the third parties' possession such that a Manufacturer Defendant could compel the third party to provide that information to the Manufacturer Defendant to be produced in this litigation. Accordingly, the Court should deny Plaintiffs' request for the Court to order the Manufacturer Defendants to respond to accept service of and then respond to the unserved subpoenas on behalf of, or in place of, the third parties.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In October of 2020, Plaintiffs originally attempted to serve document subpoenas on 75 different third-parties purportedly related to one or more of the Manufacturer Defendants. *See* Ex. A, ECF No. 652-10, 10/15/20 and 10/16/20 Emails from B. Stellpflug.  Each of the subpoenas was virtually identical, seeking approximately 11 different categories of information through between 45 and 55 document requests, notwithstanding the very different businesses represented by each of the third parties. For example, a lawyer at Duane Morris LLP was served with a subpoena that was virtually identical to a subpoena served on a Chinese manufacturer of raw material starting ingredient. *Compare* Ex. B, Subpoena issued to F. Ball of Duane Morris, *with* Ex. C, Subpoena issued to Linhai Huanan Chemical Co. Ltd.

Twenty-three of the subpoenas sought documents from foreign third parties. To the best of the Manufacturer Defendants' knowledge, Plaintiffs have not effected foreign service on any of these subpoenas, nor have they even attempted to satisfy the requirements for foreign service, such as through the Hague Convention. Thus, none of the foreign third parties have provided documents in response to any of the subpoenas and the question whether the Manufacturer Defendants should be directed

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 3

to collect and produce responsive documents that are in the possession of each of the 23 third parties is at issue.

After several meet and confer sessions, Plaintiffs refused to withdraw any of the subpoenas prior to the Case Management Conference on Wednesday, November 11, 2020, and agreed to narrow just two subpoenas. *See* ECF No. 652-3, 12/4/20 Def. Brief in Support of Mtn. to Quash, at 7. Accordingly, Defendants were forced to raise their objections to the subpoenas in their letter brief dated November 9, 2020, which included, *inter alia*, improper notice, the overbreadth and irrelevancy of the requests, and defiance of the Macro Discovery and Confidentiality Orders directives. *See* Ex. D, ECF No. 620, 11/9/20 Def. Ltr Brief at 16. At the November 11 Case Management Conference, Magistrate Judge Schneider ordered a briefing schedule wherein the Manufacturer Defendants were to file an omnibus motion that addressed issues and disputes common to all of the Manufacturer Defendants as well as any separate motions addressing defendant-specific issues by December 4, 2020. *See* ECF No. 629 at ¶ 4.

On December 4, 2020, the Manufacturer Defendants submitted their Motion to Quash and for a Protective Order Regarding Plaintiffs' subpoenas directed to third parties (Defendants' "Motion to Quash"). *See* ECF No. 652 and supporting documents. On December 31, 2020, Plaintiffs submitted their Opposition to Defendants' Motion to Quash (Plaintiffs' "Opposition"). *See* ECF No. 705. On January 4, 2021, the Manufacturer Defendants submitted their Reply Brief in further support of their Motion to Quash (Defendants' "Reply"). *See* ECF No. 710. On January 5, 2021, Judge Schneider heard oral argument from the parties on the issue of the Plaintiffs' subpoenas directed to third parties. During oral argument, the Court stated that it was deferring its decision regarding service and responses to the foreign subpoenas. Hr. Tr. 1/5/21 at 41:21-42:12. On January 11, 2021, the Court entered an Order stating:

> By January 20, 2021, defendants are granted leave to serve a supplemental letter brief regarding whether they are in possession, custody, or control of the disputed foreign entities' documents/ESI. Plaintiffs may respond by February 1, 2021. Defendants may reply by February 5, 2021.

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 4

ECF No. 727, ¶ 6.

## III.   ARGUMENT

The foreign third parties are not subject to the Court's personal jurisdiction and are outside the limits of the Court's subpoena power. Accordingly, Plaintiffs should serve the foreign third parties pursuant to the pertinent international treaty, as required by Rule 45. Plaintiffs cannot evade proper foreign service by claiming that Defendants should be required to respond to the subpoenas directed at the foreign third parties because Plaintiffs have not and cannot establish that Defendants have possession, custody or control over the foreign third parties' documents.

### A.   Plaintiffs Must Serve the Foreign Third Parties Via the Hague Convention Procedures

Rule 45 requires the Hague Convention procedures to be followed when a party attempts to obtain discovery from a non-party foreign national and/or corporation. *See* Fed. R. Civ. P. 45; *Abbott Labs v. Impax Labs.*, 2004 U.S. Dist. LEXIS 13487, *6-7 ("As a threshold matter, I agree with the parties that application to the Hague Convention is appropriate here, as the witnesses are non parties to the lawsuit, have not voluntarily subjected themselves to the discovery, are citizens of France, and are not otherwise subject to the jurisdiction of this court."); *AstraZeneca v. RanBaxy Pharms., Inc.* 2008 U.S. Dist. LEXIS 6337, 2008 WL 314627 (requiring parties to follow the Hague Convention procedures when attempting to solicit non-party, foreign national for a deposition).

Here, the foreign third parties are: (1) not parties to the lawsuit; (2) have not voluntarily subjected themselves to the discovery process; (3) are foreign corporations; and (4) are not otherwise subject to the jurisdiction of the Court. Thus, Plaintiffs should be required to employ the procedures set forth in the Hague Convention for service of their third party subpoenas.

In an effort to circumvent service via the Hague Convention, Plaintiffs, in their Opposition, cite to the decision rendered in *Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522, 539–40, 107 S.Ct. 2542, 2553, 96 L.Ed.2d 461 (1987). *See* ECF No. 705, at 6. That decision is inapposite. Plaintiffs failed to highlight the fact that the foreign entity in that case was actually

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 5

a party to the litigation, and thus, was subject to the District Court's Personal Jurisdiction. *See Id.* at 5-6. Rather, the Supreme Court noted "[t]he question presented in this case concerns the extent to which a federal district court must employ the procedures set forth in the Convention when *a party* seek answers to interrogatories, the production of documents, and admissions from a French adversary *over whom the court has personal jurisdiction.*" *Société Nationale*, 482 U.S. at 524 (emphasis added). In this case, none of the foreign third parties from whom Plaintiffs are seeking documents are parties to this action, nor are they subject to the Court's personal jurisdiction. Accordingly, Rule 45 dictates that the Hague Convention procedures must be followed for service of the subpoenas.

**B.      Plaintiffs Have Not Established that Defendants Have Possession, Custody or Control Over the Foreign Third Parties' Documents**

Plaintiffs attempt to avoid the procedures for proper foreign service established by Rule 45 by asserting that Defendants should be required to respond to the subpoenas on behalf of the foreign third parties. However, try as they might, Plaintiffs cannot avoid attempting service pursuant to the Hague procedures because Plaintiffs cannot establish that Defendants have possession, custody or control over the foreign third parties' documents.

A party is not obligated to produce documents that it does not possess or cannot obtain. *Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.,* 316 F.R.D. 89 (D. Del. 2016); *see also Eisenband v. Pine Belt Auto., Inc.*, 2020 WL 1486045, at *8 (D.N.J. Mar. 27, 2020) (awarding Defendant summary judgment because Plaintiffs could not show that Defendant had control over third party's documents). The party seeking production of documents bears the burden of establishing the opposing party's control over those documents. *Camden Iron and Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991). A party has control over a non-party's documents if the party has the legal right or ability to obtain the documents from another source upon demand. *See Haskins v. First Am. Title Ins. Co.,* No. CIV. 10-5044 RMB/JS, 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012) (citing *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.3d 142, 160 (3d Cir.2004)). In order to show that a party has a contractual right to obtain documents, the requesting party must point to language of the governing contract between the party and the third party. *See e.g. Id.; Eisenband,* 2020 WL 1486045, at *8.

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 6

Although distinguishable from the facts here for reasons not germane, *Haskins*, a case relied on heavily by Plaintiffs, illustrates of the types of agreements and language that this Court has found to be sufficient in establishing a party's possession, custody and control over a third party's documents. The court in *Haskins* ruled that defendant insurance company had possession, custody and control over its own agents' closing files and therefore could be compelled to produce the documents in response to Rule 34 discovery requests (***not subpoenas to non-parties)*** because of specific language in the defendant's governing contracts with each of its agents. *Id.* at *4 ("[defendant] also argues it should not be compelled to produce the requested closing files because it cannot "force" its agents to comply …[t]his argument is rejected for the reason that [defendant] may claim that the agent breached its contract if the agent does not produce the requested file"). Specifically, the contracts at issue contained the following clauses that conferred a legal right to the defendant insurance company to take control over its agents' closing files:

> Equititle's contract requires it to "cooperate and assist in the defense of any litigation … if requested and approved [by defendant] …"
>
> … and Finiti's contract requires it to "[c]omply with all instructions … requirements, directives … in addition to legal and industry practices." (citations omitted) …
>
> … Further, the TransContinental contract provides that TransContinental shall forward all relevant information to [defendant] when it learns of a legal claim and that the "[Agent] agrees to cooperate with [defendant] in a timely manner in the handling of any claim." (citations omitted)… [t]hese provisions further demonstrate [defendant's] control of the requested closing files.
> *Id.* at n. 4.

As set forth below, unlike the insurer in *Haskins*, Plaintiffs have failed to point to operative governing agreements or specific language to establish that any

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 7

Defendant has been conferred the right by any of the foreign third parties to obtain information that is in their position.

### C.   ZHP Cannot Be Forced to Respond On Behalf of the Foreign Third Parties Identified by Plaintiffs

Plaintiffs originally proposed serving subpoenas on 22 third parties purportedly related to ZHP. After the meet and confer process and the subsequent briefing schedule and oral argument, four foreign third parties purportedly related to ZHP remain at issue: Azbil Telstar Technologies ("Azbil"); Chemo Group India; VXL Life Sciences ("VXL"), and Linhai Huanan Chemical Co. Ltd. ("Linhai").[1] *See* ECF No. 705, at 11-12. However, ZHP does not have possession, custody or control over documents belonging to Azbil, Chemo Group India, VXL or Linhai, and Plaintiffs have failed to satisfy their burden to provide sufficient evidence to show otherwise. Plaintiffs have not pointed to a single governing or controlling agreement between ZHP and any of these foreign third parties that even suggests,

---

[1] Plaintiffs also identified Prinbury BioPharm for subpoena, a wholly-owned subsidiary of ZHP. However, ZHP has already produced 148,198 pages of documents from foreign, non-party Prinbury BioPharm ("Prinbury"), who is outside this Court's jurisdiction, in response to Plaintiffs' extensive Rule 34 Requests for Production Directed to the Manufacturing Defendants. *See* ECF No. 328. Any relevant discovery pursuant to the Subpoena directed to Prinbury would be duplicative and cumulative of the extensive discovery already produced from Prinbury's records. Further, the decision to direct a subpoena to Prinbury highlights Plaintiffs' intent for the Subpoenas – to obtain evidence outside the scope of the Court's orders limiting the scope of discovery in this matter. See ECF No. 303. To the extent Prinbury possesses materials responsive to the Subpoena that have not already been produced in response to the Rule 34 Requests, which were heavily-litigated and limited in scope by the Court's Macro Discovery Order (ECF No. 303), those materials are outside the scope of discovery ordered by the Court. *See Cooper Health*, 2009 WL 10727982, at *2 (D.N.J. July 1, 2009) (quashing subpoenas beyond scope of prior order limiting discovery).

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 8

let alone proves, that any of these foreign third parties has conferred upon ZHP the authority to accept service or respond to a subpoena on its behalf.

As set forth below, the Court should deny Plaintiffs' request that ZHP should be ordered to collect and produce information that may be responsive to the subpoenas related to Azbil, Chemo Group India, VXL or Linhai, if any, that are in the possession of these foreign third parties.

### 1. ZHP Cannot Accept Service on Behalf of Azbil, Chemo Group India, VXL, or Linhai

As an initial matter, the Court cannot compel Defendants to accept service of a subpoena served on a third party. Any such acceptance must be authorized by the third party. *See Laffey v. Plousis,* 2008 WL 305289, at *5 (D.N.J. Feb. 1, 2008), *aff'd,* 364 F. App'x 791 (3d Cir. 2010) (holding service improper even though fellow employee at defendant's office said he was authorized to accept service, since apparent authority to accept service must be created by acts of the principal – not the agent); FED. R. CIV. P. 45(b)(1). Neither Azbil, Chemo, VXL, nor Linhai have authorized ZHP to accept service of the subpoena directed to them on their behalf. Therefore, ZHP cannot be forced to accept service of these foreign subpoenas because ZHP has not been authorized to accept service by the third party to whom the subpoena is directed.

### 2. ZHP Does Not Have Possession, Custody or Control Over the Foreign Third Parties' Documents

In addition, Plaintiffs cannot circumvent the requirements for foreign service on Azbil, Chemo, VXL, or Linhai, by claiming that ZHP has possession, custody or control over responsive documents in their possession. As described above, the case law is clear that, in order to establish that ZHP has possession, custody and control over the aforementioned third parties' documents, Plaintiffs bear the burden of citing to specific language in a governing agreement that confers upon ZHP the legal right to obtain the third parties' documents. *See, e.g. Haskins,* 2012 WL 5183908, at *1. However, Plaintiffs have not pointed to a single governing contract, let alone specific applicable language therein, between ZHP and any foreign third party that would

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 9

confer upon ZHP the legal right to obtain documents from the third party.[2] From May 28, 2019 to December 31, 2020, ZHP made 96 document productions totaling over 300,000 documents and three million pages, and Plaintiffs have only found a few that even mention Azbil, Chemo Group India, VXL, or Linhai. *See* Exhibit E, Production Letter from ZHP, Dec. 31, 2020. None of the documents that Plaintiffs have presented comprise an agreement, nor even suggest, that ZHP may physically invade the files of the Azbil, Chemo Group India, VXL or Linhai to collect and produce documents in this case.

a.   **Azbil**

Azbil is an audit service provider that performs and/or has performed in the past, audits of ZHP's facilities at the request of ZHP's customers. ZHP does not conduct business directly with Azbil and did not hire Azbil, therefore ZHP does not have any operating or governing agreement with Azbil. The closest thing to a "governing agreement" that ZHP would have with Azbil, is a Letter of Authorization, which authorizes Azbil to share the results of certain audits that it has performed with ZHP's customers in order to comply with European Medicines Requirements. An example of such Letter of Authorization is attached as Exhibit F. ZHP has not entered into any agreement or understanding, including the aforementioned Letter of Authorization, in which Azbil has conferred upon ZHP the authority to possess or control Azbil's documents for purposes of complying with and/or responding to a subpoena served upon Azbil. Furthermore, Azbil has not authorized ZHP to accept service of any subpoena(s) on behalf of Azbil.

ZHP cannot be said to have a legal right to obtain Azbil's documents in order to respond to a subpoena that was directed to Azbil, a fact that is made even more

---

[2] In Footnote 6 of their Opposition, Plaintiffs cite and reference as exhibits four specific technical quality agreements between third parties and Defendants Torrent, Mylan, and Aurobindo, respectively. ECF No. 705 at n.6. Notably, Plaintiffs failed to cite or provide any such technical quality agreement between ZHP and any of the third parties allegedly connected to ZHP. Therefore, Plaintiffs have failed to make a *prima facie* showing that ZHP has possession, custody or control over any foreign third parties' documents based upon specific language in a governing agreement.

*Duane*Morris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 10

obvious by Plaintiffs' representation that ***Azbil has already responded to Plaintiffs' subpoena*** and has been meeting and conferring with Plaintiffs.[3] *See* Ex. G, ECF No. 652-11, 12/3/20 Email from B. Stellpflug. Thus, ZHP does not have possession, custody or control of Azbil's documents and cannot be compelled to respond to the subpoena directed to Azbil.

### b.  VXL

VXL is an Indian company that purchased valsartan API from ZHP. In other words, VXL is a customer of ZHP. An example of a commercial invoice illustrating the commercial relationship between VXL and ZHP is attached as Exhibit H. ZHP has not entered into any governing agreement or understanding, including any purchase orders, change requests, emails or letters, in which VXL has conferred upon ZHP the authority to possess or control VXL's documents for purposes of complying with and/or responding to a subpoena served upon VXL. Furthermore, VXL has not authorized ZHP to accept service of any subpoena(s) on behalf of VXL. Thus, ZHP does not have any legal right to obtain VXL's documents and does not have possession, custody or control over VXL's documents such that it should be ordered to respond to a subpoena directed to VXL.

### c.  Chemo Group India

Chemo Group, now known as Insud Pharma, is a Spanish company that purchased several types of API from ZHP. ZHP did not do business directly with Chemo Group India, but rather sold various types of API to Chemo Group, presumably the parent company of Chemo Group India. Therefore, the fact the Plaintiffs insist on having ZHP respond to a subpoena on behalf of Chemo Group India is perplexing. Nevertheless, ZHP has not entered into any governing agreement or understanding, including any purchase orders, change requests, emails or letters,

---

[3] In the course of meet of confer sessions, Plaintiffs have indicated that, while an entity affiliated with Azbil has responded in some fashion to the subpoena directed to Azbil, Azbil may be challenging that it was properly served by Plaintiffs. Thus, because ZHP has not been privy to Plaintiffs' discussions with Azbil, to the extent that Plaintiffs continue to assert that ZHP should accept service and respond on behalf of Azbil, ZHP objects for the reasons articulated above.

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 11

in which Chemo Group India has conferred upon ZHP the authority to possess or control Chemo Group India's documents for purposes of complying with and/or responding to a subpoena served upon Chemo Group India. Nor has Chemo Group India authorized ZHP to accept service of any subpoena(s) on behalf of Chemo Group India. Thus, there is absolutely no evidence that ZHP has a legal right to obtain documents from Chemo Group India and therefore ZHP cannot be said to have possession, custody or control of Chemo Group's documents in order to respond to a subpoena directed to Chemo Group India.

### d.      Linhai

Linhai is a subsidiary of ZHP that supplies raw starting ingredient material to ZHP. Linhai is one of approximately 40 subsidiaries owned by ZHP around the world, including in the United States, Japan, Germany, Russia, Spain, and India. Although Linhai and ZHP share common ownership, Linhai is an entity that is separate and distinct from ZHP, and mere common ownership is insufficient to establish that ZHP has possession, custody and control over Linhai's documents. *See, e.g. Fried v. JP Morgan Chase & Co.,* 850 F.3d 590, 595 (3d Cir. 2017) (parent companies are not, merely by dint of ownership, liable for the acts of their subsidiaries); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 215 F. Supp. 2d 482, 497 (D.N.J. 2002) ("it is deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries") (internal citations omitted).

Linhai has not authorized ZHP to accept service of any subpoena(s) on behalf of Linhai and Plaintiffs have not pointed to a single governing agreement or contract that confers upon ZHP the legal right to obtain documents to respond to a subpoena on Linhai's behalf. Therefore, ZHP should not be forced to respond to a subpoena that was directed to Linhai, who is not a party to this action.

Simply put, Plaintiffs have not demonstrated that the purely commercial relationships between ZHP and Azbil, Chemo Group, VXL or Linhai have conferred upon ZHP any possession, custody, or control over documents belonging to these third parties. Thus, ZHP cannot be ordered to respond to any of these foreign third party subpoenas.

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 12

### D.     Aurobindo Cannot Be Forced to Respond On Behalf of the Foreign Third Parties Identified by Plaintiffs

As it pertains to Aurobindo, Plaintiffs have issued foreign subpoenas to the following entities: (1) Altus Formulation, located in Canada ("Altus"); (2) AXIS Clinicals Ltd., located in India ("AXIS"); (3) Cybernetik Technologies P Ltd., located in India ("Cybernetik"); (4) Lantech Pharmaceutical Ltd., located in India ("Lantech"); and (5) Vigilate Biopharma Pvt Ltd., located in India ("Vigilate").

As an initial matter, for the reasons outlined above, Plaintiffs' should be forced to comply with the foreign service provisions as set forth in Rule 45 and the Hague Convention, which apply to all of the subpoenas directed to foreign third parties pertaining to Aurobindo.

In addition, Plaintiffs have failed to establish that Aurobindo has possession, custody or control of any of the aforementioned third parties' documents.

### 1.     Aurobindo Does Not Have Possession, Custody or Control of the Third Parties' Documents Identified by Plaintiffs

Plaintiffs have issued subpoenas directed to the aforementioned five foreign entities purportedly related to Aurobindo. Of these five foreign entities, Plaintiffs have attempted to support their "agency" argument only as it pertains to one entity, Lantech. *See* Exhibit D to ECF No. 705. In doing so, Plaintiffs have attempted to use a Root Cause Investigation Report to demonstrate that Aurobindo has possession, custody, and control over Lantech documents. *See* ECF No. 705 at 6.

However, nowhere in this report is there any indication that Aurobindo may inspect, copy, take possession of, etc. any of Lantech's records. Rather, the only mention of Aurobindo, as it pertains to inspecting Lantech's documents, is the indication that Aurobindo may review Lantech's documents as it pertains to performing quality assurance checks for a CMU. *See* Exhibit D to ECF No. 705, at 20, 27. There is no indication that Aurobindo may take possession of these documents, or, as Plaintiffs suggest, can obtain these documents "at will".

Furthermore, as it relates to the Lantech documents at issue, any documents already in Aurobindo's possession have already been produced via Plaintiffs' Rule

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 13

34 Document Requests. Aurobindo produced voluminous documents in response to
Plaintiffs' Requests, and, any documents responsive to any alleged Valsartan
nitrosamine contamination, including those written by Lantech, were produced to
Plaintiffs. Thus, any documents in Aurobindo's possession that relate to Lantech,
and are relevant to this litigation, have already been produced and producing
them again would result in duplicative discovery. Similarly, Aurobindo has already
produced the documents in its possession that are relevant to this litigation from the
remaining foreign third-parties. *Id.* Finally, Aurobindo does not have immediate, or,
"at will" access to the other foreign third-parties' documents.

Accordingly, as Aurobindo does not have possession, custody or control of
any of the foreign third-parties' documents for which subpoenas are directed.

### E. Mylan Does Not Have Control Over Documents Maintained By Foreign Third Parties Identified by Plaintiffs

As already noted, in prior briefing, Plaintiffs suggested that Mylan should be
compelled to produce documents maintained by two unrelated foreign entities,
Lantech Pharmaceuticals ("Lantech") and Snehaa Solvents ("Snehaa"), because
Mylan ostensibly has a contractual right to require these third parties "to make
records available." *See* ECF No. 705, at 7 n.6. Plaintiffs resorted to this argument
because, as Defendants had pointed out, the third-party subpoenas Plaintiffs
apparently never attempted to serve plainly violate the limits on the geographic
scope of Rule 45. *See* ECF No. 652-3, at 13–16. However, the contracts cited by
Plaintiffs expired long ago, as did any rights or obligations Mylan may have had
under those contracts. Plaintiffs' argument, therefore, fails on its own terms, and
their attempt to use Rule 34 as an end around Rule 45 must be denied.

In response to Defendants' motion to quash, which identified clear-cut
deficiencies in the geographic scope of Plaintiffs' third-party subpoenas, Plaintiffs
shifted gears and posited that, through contractual provisions, Mylan has control
over documents maintained overseas by Lantech and Snehaa and, on this basis,
argued that Mylan should somehow be required to produce documents in response
to unserved Rule 45 subpoenas addressed to (but never actually served upon) those

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 14

third parties. *See* ECF No. 652-3, at 13–16; ECF No. 705, 7 n.6.[4] However, as is clear on the face of the documents relied upon by Plaintiffs in support of this position, the contacts themselves are no longer in effect and, moreover, they have not been renewed. *See* ECF No. 705-3 (Snehaa) and ECF No. 705-4 (Lantech). Also, the respective contracts do not contain any survival provisions, and there is no indication whatsoever than any of the obligations under the contracts would survive expiration. An expired contract by its own terms releases the parties from their respective contractual obligations. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 206 (1991). Accordingly, even putting aside the fact that the subpoenas are far broader than any contractual provision identified by Plaintiffs, Mylan does not have the right or ability to obtain the documents from Snehaa and Lantech, and Plaintiffs have failed to meet the requisite burden for establishing control.

**F.     Torrent Cannot Be Forced to Respond to the Subpoena Directed to Sipra Labs, Ltd.**

Only one third party subpoena, directed towards Sipra Labs, Ltd. ("Sipra"), is purportedly related to the Torrent Defendants. Sipra Labs, Ltd. is a foreign third party based in India, and is a Contract Research Organization (CRO) that provided routine raw material testing for Torrent. Torrent does not have authority to accept service on behalf Sipra, nor does Torrent does not have possession, custody, or control over Sipra's documents. Plaintiffs have not pointed to any agreement or contract between Torrent and Sipra that confers upon Torrent the legal right to obtain documents to respond to a subpoena on Sipra's behalf.

Therefore, for the foregoing reasons and those asserted in their opening an reply briefs in Support of their Motion to Quash or for a Protective Order, Torrent respectfully request the Court grant said motion as it applies to Sipra Labs., Ltd.

---

[4] Plaintiffs do not point to any other agreements that supposedly might have allowed Mylan to exercise control over documents maintained by any of the other third parties Plaintiffs sought to subpoena.

DuaneMorris

The Honorable Karen M. Williams
The Honorable Thomas I. Vanaskie (Ret.)
January 20, 2021
Page 15

## IV.    CONCLUSION

Therefore, for the foregoing reasons and those asserted in their opening and reply briefs in Support of their Motion to Quash or for a Protective Order, Defendants respectfully request the Court grant said motion as it applies to the foreign third parties.

Respectfully submitted,


*s/ Seth A. Goldberg*

Seth A. Goldberg


cc: All counsel of record via ECF