1
2
3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

4        **CIVIL ACTION NUMBER:**

**IN RE:  VALSARTAN PRODUCTS**
**LIABILITY LITIGATION**          **19-md-02875-RBK-JS**

5
_____          **TELEPHONIC**
6                                          **STATUS CONFERENCE**

7        Mitchell H. Cohen Building & U.S. Courthouse
         4th & Cooper Streets
8        Camden, New Jersey  08101
         January 27, 2021
9        Commencing at 10:00 a.m.

10  **B E F O R E:**          **THE HONORABLE ROBERT B. KUGHER,**
                             **UNITED STATES DISTRICT JUDGE**
11                           **SPECIAL MASTER THE HONORABLE THOMAS I.**
                             **VANASKIE**
12

**A P P E A R A N C E S:**

13

14       MAZIE SLATER KATZ & FREEMAN, LLC
         BY:  ADAM M. SLATER, ESQUIRE
15       103 Eisenhower Parkway
         Roseland, New Jersey  07068
16       For the Plaintiffs

17       GOLOMB & HONIK, P.C.
         BY:  RUBEN HONIK, ESQUIRE
18            DAVID J. STANOCH, ESQUIRE
         1835 Market Street, Suite 2900
19       Philadelphia, Pennsylvania  19103
         For the Plaintiffs

20       KANNER & WHITELEY, LLC
         BY:  CONLEE S. WHITELEY, ESQUIRE
21       701 Camp Street
         New Orleans, Louisiana  70130
22       For the Plaintiffs

23            Camille Pedano, Official Court Reporter
                    camillepedano@gmail.com
24                      609-774-1494

25   Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3         LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
          BY:  DANIEL A. NIGH, ESQUIRE
4         316 S. Baylen, Suite 600
          Pensacola, Florida 32502
          For the Plaintiffs
5

6         SLACK & DAVIS, LLP
          BY: JOHN RANDOLPH DAVIS, ESQUIRE
          2705 Bee Cove Road, Suite 220
7         Austin, Texas  78746
          For the Plaintiffs
8

9         KIRTLAND & PACKARD LLP
          BY:  BEHRAM V. PAREKH, ESQUIRE
          1638 South Pacific Coast Highway
10        Redondo Beach, California  90277
          For the Plaintiffs
11

12        DAMON J. BALDONE & ASSOCIATES
          BY:  THOMAS DUNN, ESQUIRE
          162 New Orleans Boulevard
13        Houma, Louisiana  70364
          For the Plaintiffs
14

15        GOLDENBERG LAW, LLC
          BY:  MARLENE J. GOLDENBERG, ESQUIRE
          800 Lasalle Avenue, Suite 2150
16        Minneapolis, Minnesota  55402
          For the Plaintiffs
17

18        DUANE MORRIS, LLP
          BY:  SETH A. GOLDBERG, ESQUIRE
          30 South 17th Street
19        Philadelphia, Pennsylvania  19103
          For the Defendants, Prinston Pharmaceuticals,
20        Solco Healthcare U.S. LLC, and
          Zhejiang Huahai Pharmaceuticals Ltd.
21

22        PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
          BY:  CLEM C. TRISCHLER, ESQUIRE
          One Oxford Centre, 38th Floor
23        Pittsburgh, Pennsylvania  15219
          For the Defendant, Mylan Pharmaceuticals Inc.

24

25

1   **A P P E A R A N C E S (Continued):**

2       GREENBERG TRAURIG, LLP
        BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
3            LORI G. COHEN, ESQUIRE
             STEVEN M. HARKINS, ESQUIRE
4       3333 Piedmont Road, NE, Suite 2500
        Atlanta, Georgia  30305
5       For the Defendants, Teva Pharmaceutical Industries Ltd.,
        Teva Pharmaceuticals USA, Inc., Actavis LLC,
6       and Actavis Pharma, Inc.

7       CIPRIANI & WERNER, P.C.
        BY:  JESSICA M. HEINZ, ESQUIRE
8       450 Sentry Parkway
        Blue Bell, Pennsylvania  19422
9       For the Defendants, Aurolife Pharma LLC
        and Aurobindo Pharma USA, Inc.
10
        ULMER & BERNE, LLP
11      BY:  JEFFREY D. GEOPPINGER, ESQUIRE
        600 Vine Street, Suite 2800
12      Cincinnati, Ohio 45202
        For the Wholesaler Defendants and AmerisourceBergen
13
        BARNES & THORNBURG, LLP
14      BY:  SARAH E. JOHNSTON, ESQUIRE
        2029 Century Park East, Suite 300
15      Los Angeles, California  90067
        For the Retailer Defendants and CVS Pharmacy, Inc., and
16      Rite Aid Corporation

17

18  **ALSO PRESENT:**

19      LORETTA SMITH, ESQUIRE
        Judicial Law Clerk to The Honorable Robert B. Kugler
20

21

22

23

24

25

1   (PROCEEDINGS held in open court before The Honorable Robert B.

2   Kugler, United States District Judge, and Special Master The

3   Honorable Thomas I. Vanaskie, at 10:00 a.m.)

4           JUDGE VANASKIE:  All right.  I think we should get

5   started now.  I would ask the attorneys who are not going to be

6   speaking during the course of this conference to put their

7   phones on mute.  I'll also ask at this time for counsel who are

8   -- who will be speaking during this conference call to enter

9   their appearance now.  And as our court reporter said, I'd

10  remind you to identify yourself when you speak.

11          Who do we have entering an appearance on behalf of the

12  plaintiffs today?

13          MR. SLATER:  Good morning, Your Honor.  Adam Slater on

14  behalf of the plaintiffs.

15          MR. HONIK:  Good morning, Your Honor.  Ruben Honik for

16  plaintiffs.

17          MR. NIGH:  Good morning, Your Honor.  Daniel Nigh for

18  plaintiffs.

19          JUDGE VANASKIE:  All right.

20          MS. WHITELEY:  Good morning, Your Honor.  Conlee

21  Whiteley on behalf of plaintiff.

22          JUDGE VANASKIE:  All right.

23          MR. DUNN:  Good morning, Your Honor.  Tom Dunn on

24  behalf of plaintiff.

25          JUDGE VANASKIE:  Very well.  I'm going to say that's

1    the slate for the plaintiffs thus far.

2          And who will be speaking on behalf of defendants

3    today?

4          MR. GOLDBERG:  Good morning, Your Honor.  This is Seth

5    Goldberg from Duane, Morris on behalf of the ZHP parties and

6    the defendants.

7          MS. COHEN:  Good morning, Your Honor.  This is Lori

8    Cohen with the law firm of Greenberg, Traurig on behalf of the

9    Teva defendants as well as the defense leadership group.

10         JUDGE VANASKIE:  Very well.

11         MS. LOCKARD:  And this is Victoria -- I'm sorry,

12    Victoria Lockard.

13         JUDGE VANASKIE:  I'm sorry.

14         MS. LOCKARD:  Sure.  Victoria Lockard from Greenberg,

15    Traurig as well on behalf of Teva and the defense leadership.

16         MR. TRISCHLER:  Clem Trischler, Your Honor, good

17    morning, for Mylan Pharmaceuticals and the defense group.

18         JUDGE VANASKIE:  Good morning.

19         MR. GEOPPINGER:  Good morning, Your Honor.  Jeff

20    Geoppinger for the wholesaler defendants and AmerisourceBergen.

21         JUDGE VANASKIE:  All right.  Very well.

22         MS. JOHNSTON:  And good morning, Your Honor.  Sarah

23    Johnston on behalf of the retailer pharmacy defendants, CVS

24    Pharmacy, Inc., and Rite Aid Corporation.

25         JUDGE VANASKIE:  All right.  Thank you all very much.

1    And what I propose to do today is to proceed through the agenda

2    as was submitted to me in the letter I received from defense

3    counsel, Item Number -- it's Docket Number -- Document Number

4    786 from Lori Cohen filed last night.  And so we'll start with

5    -- we'll proceed in order with the exception of Item Number 5

6    which I'll defer to the end of our call, and that will be

7    covered with the call with Judge Kugler.

8          So the first item is the parties' agreement on

9    bellwether pool selection and proposed order.  Where does that

10   stand right now?  And who will be addressing that for the

11   defendants?

12         MS. LOCKARD:  Your Honor, Victoria Lockard from

13   Greenberg, Traurig.

14         I believe this is in response to the instruction from

15   Judge Kugler that the parties meet and confer over the

16   bellwether process and come up with a proposal for Judge Kugler

17   to consider with respect to selection of that trial pool.  And

18   the parties met and conferred and we did come up with a process

19   for that and both sides have selected proposed picks which gave

20   us a total number of about 28 potential bellwether pool

21   plaintiffs on the personal injury side.  And it's -- you know,

22   I think at this point we just need to get that process

23   committed to an order, which we're currently negotiating over.

24   There are a couple of terms that the parties still need to work

25   out.  And so I hope that we can address those with Judge

 1    Kugler.  I think those were his issues from the initial

 2    conference when we discussed it.

 3              JUDGE VANASKIE:  Okay, great.

 4              Anything from the plaintiffs on that issue?

 5              MR. NIGH:  No, Your Honor.  I agree.

 6              THE COURT REPORTER:  Excuse me.  Was that Mr. Slater?

 7              MR. NIGH:  Daniel Nigh.  Sorry.

 8              THE COURT REPORTER.  Thank you.

 9              JUDGE VANASKIE:  Thanks, Camille.  Sorry about that.

10              Item Number 2, state coordination order, is that also

11    a matter for Judge Kugler?  And who will be speaking on behalf

12    of the defense group on this point?

13              MR. GOLDBERG:  Your Honor, this is Seth Goldberg and

14    I'll be speaking on that.  And it likely will be an issue for

15    Judge Kugler.

16              The issue's not ripe yet.  We did want to bring it to

17    the Court's attention that we have provided plaintiffs with a

18    proposed joint coordination order that will -- that would

19    coordinate discovery between the MDL and any state court

20    actions, and there are a number out there that have claims that

21    mirror the claims in the MDL, and we would just like to be able

22    to ensure that the discovery in the MDL takes the lead and that

23    that's what's envisioned by the joint coordination order that

24    we propose.

25              So we sent it to plaintiffs a few weeks ago and we'll

1    meet and confer on that and raise it with the Court hopefully

2    at the next conference.

3             JUDGE VANASKIE:  Okay.  Plaintiffs?

4             MR. SLATER:  Hello, Your Honor.  Adam Slater for the

5    plaintiffs.

6             Yes, this is clearly not something that's ripe.  We've

7    looked at this proposal.  I'm fine with whoever addresses it,

8    whether it's Your Honor or Judge Kugler.  I certainly take --

9    you know, I'm not going to take a position on that.  I'm fine

10   with however it's handle.

11            You know, one of the things that Your Honor should be

12   aware of, as far as I know, I have not been made aware of any

13   state court case that's actually advancing towards discovery.

14   All of the state court cases in New Jersey, which I think there

15   might be ten to 12 or ten to 15, are stayed, administratively

16   stayed, essentially, and nothing's happening in those cases to

17   allow the MDL to go ahead and move forward.  I'm not aware of

18   anything else happening in any other courts.

19            So there's certainly a question about the need for

20   this and then there's certainly some provisions that we're

21   going to have to discuss with the defense and potentially with

22   the Court because there's issues that are probably much more

23   sensitive for the plaintiffs than the defense, and there's also

24   questions about whether or to what extent certain things can be

25   imposed on a state litigation.

1          So those are just a few of the overlaying issues.  But

2    since I think both sides agree this is not nearly ripe, you

3    know, I think it's just something we're informing the Court of

4    the potential issue that the defense wishes to raise.

5          JUDGE VANASKIE:  All right.  Very well.  I think

6    there's no need for further discussion at this time.

7          Do you want to say anything, Seth?

8          MR. GOLDBERG:  No.  I agree with Mr. Slater, Your

9    Honor.

10          JUDGE VANASKIE:  All right.  Very well.

11          Item Number 3, the schedule and plan for ongoing

12    mid-month teleconferences.  And, Seth, I just wanted to

13    understand your position on this.  You're suggesting that we

14    have a mid-month conference but it be only with lead counsel,

15    with leadership counsel?

16          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I'm

17    going to defer to Ms. Cohen to raise this issue with the Court.

18          JUDGE VANASKIE:  Okay.

19          MS. COHEN:  Good morning, Judge.  This is Lori Cohen

20    again on behalf of the defense and the leadership group as well

21    as the Teva defendants.

22          I think that's right, Judge, that this is, you know, a

23    pretty straightforward issue, that in the original CMO2, this

24    was, you know, entered long ago, it was described as a

25    telephone conference, excuse me, with the Magistrate, Judge

1    Schneider, to go with the leadership counsel.  And, again, it's

2    not -- certainly not meant to exclude anybody but I think

3    basically what's evolved over time is that these mid-month, you

4    know, gatherings have turned into like a second CMC.  There's a

5    lot of resources expended and a lot of time.

6          So I think, on behalf of the defense, we're thinking

7    it would be more efficient, especially as we get to know you

8    and spend more time with you, to make it more limited in terms

9    of the attendees.  And so that's what we were proposing, as we

10   said in our letter, consistent with the original CMO.

11         Also related to that, we were thinking on the defense,

12   again, subject to what you think, is that perhaps we can try to

13   do these as Zoom calls, if that was something that you were

14   interested in, again, just in the spirit of trying to get to

15   know you better and spending more time with you face-to-face.

16   I know, of course, we had the opportunity to do that with Judge

17   Schneider early on and we haven't had a chance to do it with

18   you.  So that would be another thought we had related to that.

19         And then the third sort of aspect which relates to

20   this I raised last night to Mr. Slater in an email that I know

21   that, again, over time things have evolved such as there are a

22   lot of communications that go between Mr. Slater and

23   Mr. Goldberg with Judge Schneider, and now with you, just the

24   two of them, we proposed last night that at least the

25   leadership group should be copied on these communications.

1   And, again, there's only five of us on behalf of the defense

2   side, it's Mr. Goldberg, Mr. Trischler, myself, Mr. Geoppinger

3   and Ms. Johnston, on behalf of the wholesalers and the

4   retailers.  So we were thinking that in communication, though

5   not to expand your time or cause inefficiencies, but we really

6   would prefer if we could all just be copied on those emails,

7   and in the spirit of, again, getting to know you and, again,

8   there's a lot of different interests at stake here.

9        So those are the three components of this request that

10  we, indeed, go -- go to sort of the leadership group attending

11  the mid-month conferences; number two, that we consider

12  potentially doing Zoom or video calls; and number three, that

13  we get away from the pure one-on-one emails and, again, just

14  have the defense leadership group and if the plaintiffs want to

15  have their leadership group included, that we expand those

16  emails so that it's not coming to just one person, especially

17  in a time of extreme busyness, we don't want something to come

18  in, have Mr. Goldberg be out of pocket and the rest of us not

19  see it quickly.

20       JUDGE VANASKIE:  That's understandable.  And so you

21  understand, I "Reply All".

22       MS. COHEN:  Good.  Great.

23       JUDGE VANASKIE:  So if the email did not include all

24  the leadership counsel, that's why you wouldn't have received a

25  response.  So I would suggest any email communication to me

 1   include all leadership counsel so everybody's aware of what's

 2   going on.

 3         MS. COHEN:  Thank you, Your Honor.  That's exactly

 4   what we would like, too.  So we appreciate that.

 5         JUDGE VANASKIE:  All right.  Who wants to address this

 6   issue for the plaintiffs?

 7         MR. SLATER:  This is Adam Slater, again, Your Honor.

 8   I'll take the issues one at a time.

 9         The first issue with having lead counsel on the

10   mid-month calls as opposed to all counsel, that's fine with the

11   plaintiffs.  And just so Your Honor understands the background,

12   that's always how it was done but what happened was I believe,

13   if my recollection is correct, the defense advised Judge

14   Schneider that since certain issues affected defendants who

15   were in this sprawling litigation, those defendants were

16   demanding or requesting the right to be on those calls, too.

17   So Judge Schneider opened it up to them.  It was not something

18   the plaintiffs, you know, encouraged, and we think that if lead

19   counsel's on, we should still be able to do all the business

20   necessary.  You know, we just want to make sure that we can

21   continue to use these mid-month conferences substantively to

22   keep addressing issues because there's so much that comes up,

23   if we have to only address significant issues once a month, the

24   litigation will bog down.  But I'm not hearing that, so that's

25   fine.

1    As far as who gets copied on emails to Your Honor, you

2    know, the way that we function and we have functioned in the

3    past was these emails are to you in our capacity as liaison

4    counsel.  And Judge Schneider actually recently, and a few

5    times in the litigation, has had to advise other counsel that's

6    not liaison counsel not to be emailing him on these, you know,

7    private emails that are off ECF because that's not what that

8    process was made for and he was getting inundated.  People were

9    sending emails from all reaches of the defense group and he

10   said you just -- I can't have that.

11   If there are certain communications that are more

12   formal, obviously, we -- we address or copy the other lawyers.

13   But we would like to be able to still have the ability, on a

14   streamlined basis, to have just liaison counsel communicate

15   with Your Honor on issues that can be addressed much more

16   informally because, as you can imagine, if we copy everybody,

17   then everybody's going to want to have input and say something,

18   and the ability of us to move in an off-the-record, prompt way

19   will become -- it'll get bogged down and it won't work the way

20   that it was really envisioned, that as liaison counsel, those

21   are supposed to be the only lawyers that are communicating

22   directly with the Court.

23   So I just would like to have the ability to have

24   communications where it's just myself and Mr. Goldberg because

25   then we can handle things with Your Honor that don't require a

 1   lot of other people to be involved on a much quicker,

 2   streamlined basis.

 3          JUDGE VANASKIE:  Adam, how many other people are we

 4   talking about?

 5          MR. SLATER:  I think on the defense side, they're

 6   talking about at least five other people; and on the

 7   plaintiffs' side, we have four co-leads.

 8          JUDGE VANASKIE:  Okay.

 9          MS. COHEN:  And, Your Honor, I'm happy to --

10          MR. GOLDBERG:  Your Honor, this is -- Your Honor, this

11   is Seth Goldberg, if I may.

12          There's never been a point where Judge Schneider asked

13   that other counsel, especially the Executive Committee counsel,

14   not be copied on email that are coming from liaison counsel.

15   The purpose was to keep Judge Schneider and Your Honor from

16   getting hit with email coming from all sides and having those

17   email go through liaison counsel.  But there's never an email

18   that Mr. Slater and I had with Judge Schneider or that we'll

19   have with you that I'm not sharing with Executive Committee and

20   other defense counsel.  And what we're proposing is actually to

21   enhance the efficiency, especially given that we're headed into

22   a period of very busy depositions, that it's a simple copy the

23   Executive Committees on both sides.  Plaintiffs have one email

24   address, they have a distribution list for their Executive

25   Committee, so we're really talking about adding four emails,

1    Mr. Trischler, Ms. Cohen, Mr. Geoppinger and Ms. Johnston, to

2    the emails that Adam and I will have in our capacity as liaison

3    counsel.  So we don't really see why there's --

4              MR. SLATER:  Your Honor --

5              MR. GOLDBERG:  -- why there's a burden here.

6              MR. SLATER:  Your Honor, it's Adam Slater.

7              I was never suggesting that we don't communicate with

8    our group on our end.  I can assure you that when I'd

9    communicate with Judge Schneider in the past and when I would

10   communicate with Your Honor, I'm not running rogue and doing my

11   own agenda.  Lead counsel on our side is aware of what's

12   happening and I assume Mr. Goldberg is doing the same thing.

13   For example, Mr. Goldberg's talking about this one email

14   address, that's our Executive Committee, that's another 12

15   lawyers.  I think we have 12 or so attorneys on our Executive

16   Committee.

17             So, you know, I have no problems, if there's a major

18   issue and people need to know about it, that's fine.  I just

19   want to be able to retain the ability to have efficient, direct

20   communications just with liaison counsel with Your Honor so

21   that easy things can just be addressed, like, hey, can we just

22   have an extension on this, we've agreed on it, is that okay; or

23   we have a problem here, can we get on the phone and talk to you

24   about something.  Because if everyone's copied, everyone's

25   going to want to be on the call, we're not going to be able to

1  work in an informal, off-record way, where my experience has

2  been a lot of things get done when there's just, you know, two

3  people on the call representing all interests as opposed to

4  eight or ten people.  It's just much easier to get business

5  done in a more efficient way.  That's all I'm trying to do is

6  retain that as a way to resolve things and keep the litigation

7  moving.

8          MS. COHEN:  And, Your Honor, this is Lori Cohen again.

9  I just wanted to add a few thoughts, since I raised it.

10          I'm not trying to be a rabble-rouser here or create

11  any inefficiencies.  To the contrary, we are going to be moving

12  into a very busy phase.  I use the example of the email that

13  Mr. Slater sent on Tuesday, so I guess that was yesterday,

14  about a Motion to Amend the Master Complaint, I mean that was

15  something that we felt like it would have been easy to copy the

16  other four members of the defense Executive Committee, and we

17  would have liked to have been in the mix on getting that email.

18  If Mr. Slater wants to say to Mr. Goldberg, hey, let's have a

19  call, he doesn't have to copy all of us; but an email like

20  that, why shouldn't we be involved in that, if that was the

21  original intent of the Executive Committee.  And, also, you

22  know, frankly, we want to get to know you better, we want to

23  have a voice in this, we want to be involved as the Executive

24  Committee.  And, again, I think when the liaison attorneys were

25  selected, it was more to help processes and so forth and we're

1   here to work as a team and represent the different interests.

2          So, again, I would just respectfully ask that the four

3   other members be included on these emails, and I don't think it

4   should be much burden to Mr. Slater and his team.  We know how

5   not to inundate you as well.  We certainly are not going to

6   have five of us responding.  We will coordinate our responses.

7          JUDGE VANASKIE:  You know, I like transparency and I

8   don't think it's a burden, Adam, to include the Executive

9   Committee.  If I have the titles wrong, please understand I'm

10  talking about the additional four or five attorneys on the

11  defense side being copied on communications to me that come

12  from Seth, for example, because I was -- I was a bit concerned

13  when I -- and it's not only this one that came in on Tuesday, I

14  got one in over the weekend that I responded to, and I am

15  concerned that I'm responding -- I am responding to "All", but

16  it concerns me that it's not at least the leadership group.

17         So, you know, let's go back to the process of copying

18  the leadership group, the four or five attorneys, on the

19  defense side.  On the plaintiffs' side, you all decide among

20  yourselves who should be copied on the communications to me.  I

21  know you're sending them off to your group so they're aware of

22  things.  If you don't want to put them on the email to me, I

23  understand that; but if Seth emails me, I would expect that he

24  would include the plaintiff leadership group as recipients of

25  the emails as well so that when I "Reply All," everybody knows

1    what's going on and don't -- and you don't have to worry about

2    is Adam unavailable to forward that email on.  And I don't know

3    what your internal processes are.  You might have some internal

4    process in place that makes that more automatic.  But this way

5    it is more transparent.  I don't view it as creating an undue

6    burden.  And if all of a sudden I'm getting inundated with

7    emails when somebody sends a simple request about extension of

8    time or similar -- a similar matter, well, then we'll have to

9    rethink this.

10          So let's at least put everybody on the same wavelength

11   in terms of the communications to and from me with respect to

12   these types of procedural matters.  So I would ask going

13   forward that we do that.  I don't think that imposes an undue

14   burden and I'm confident it's not going to result in my being

15   inundated.  We didn't open up the floodgates to say anybody can

16   email me at any time.  We still want to work through Adam and

17   Seth on these communications; it's just who's going to hear

18   back from me when I'm replying, as I did this past weekend and

19   this past week, to email requests that required prompt action.

20   Both of them were dealing with deadlines and you wanted to

21   avoid the work, and I applaud you for reaching out to me and

22   I'll always try to make sure I reply to you promptly.  But this

23   way everybody will know what's going on.

24          So let's, moving forward, implement that as part of

25   your processes.  I know it's a bit of a pain, Adam, to now have

1   to add in, but you can do it by way of a list server or

2   something.

3        MR. SLATER:  Understood, Judge.

4        JUDGE VANASKIE:  Okay.  Good.

5        In terms of the attendance at these mid-month calls, I

6   would like to just have leadership counsel on, unless I get

7   objections, you know -- when I joined this call a couple

8   minutes early, there were over 30 persons on the call already.

9   If there are counsel who want to be included who have a problem

10  with this, I need to know that.  And I suggest you work

11  through, on the plaintiffs' side, you work through Adam, and on

12  the defense side, you work through Seth, letting them know

13  whether you're in agreement with this approach.  I have no

14  problem with it.  We can still address issues, we can still

15  resolve issues.  I think these twice-monthly calls are very

16  important to keep the case moving forward.

17        In my prior Special Master experience, at the outset I

18  was conducting weekly conference calls because they were

19  fighting over everything and we kept the matter moving.  I'm

20  not suggesting weekly calls here, but I do think they are

21  important.  So I'm comfortable going forward, if it's just the

22  leadership group, you'll have to let me know who gets copied on

23  those notices for it, for those calls; but I'd be happy to

24  restrict it to that, as long as there's not, you know, a

25  significant objection on either side of the V for this matter.

1          And then on the question of the format of the call,

2  conducting it by Zoom, if we limit the size of the group, I

3  have no problem conducting this by Zoom.  I agree, it's an

4  opportunity to try to get to know each other a little bit -- a

5  little bit better.  I've -- I've been using Zoom quite

6  extensively and so would have no problem with that.

7          Adam, I didn't get your views on this so maybe I

8  should, before I weigh in too much, get your view.

9          MR. SLATER:  You know, Judge, I didn't comment on it

10 because I felt like whatever you preferred was fine.  You know,

11 that's just going to mean that we're going to have to brush our

12 hair at home, I guess, on Wednesdays every couple weeks now.

13         JUDGE VANASKIE:  You're going to have to look

14 presentable, that's for sure.

15         But if that's all right with everyone, I'd like to try

16 it by Zoom and see how it goes because I think it is a way of

17 at least -- I think it's a better way to communicate because

18 you can see people as well.  And --

19         MS. COHEN:  And, Judge, this is Lori Cohen again.

20 We're happy to sort of take the lead on trying to coordinate

21 that, since I raised this issue.  We'll even send Mr. Slater a

22 hair brush if it helps.

23         You know, on the issue of who attends these, as well,

24 certainly on the defense side, if anyone has a special issue or

25 if Mr. Slater says to us, I really need to, you know, address

1    an issue with X person, then we certainly can make exceptions

2    and invite, you know, more people.  I think we were just

3    thinking sort of as a general rule to try and keep it more

4    limited; and also for the advantage of having Zoom, having it

5    limited would be helpful.

6         JUDGE VANASKIE:  Yes, I agree.  So I think we can

7    proceed on that basis, that we'll have these mid-month -- the

8    mid-month calls will be to a limited group and conducted by

9    Zoom and we'll see how it goes.  Obviously, if that poses to be

10   a problem, we can be flexible.

11        MS. COHEN:  Thank you, Your Honor.

12        JUDGE VANASKIE:  Anything else on Item Number 3 on the

13   agenda?

14        (No response.)

15        JUDGE VANASKIE:  Item Number 4, the proposed

16   litigation overview, did you want to be heard on this, Mr.

17   Slater?

18        MR. SLATER:  Yes, Your Honor.

19        Frankly, we don't, from the plaintiffs' perspective,

20   think there's absolutely any need to submit yet another brief

21   or analysis.  We're all very busy, we have plenty going on.

22   I'm not really -- and I certainly don't think -- Your Honor's

23   been on the calls for a month or so, you're up to date on all

24   the active issues.  Judge Kugler's issued three decisions going

25   through the merits of the case and the overview of the

1  litigation.  I'm just not sure what it is that's seeking to be

2  accomplished beyond what's already happening, which is in

3  realtime everything that's hot in this litigation, and all of

4  the issues have been crystalized, really, over the last month

5  or two, so I would think -- yeah, I don't see a need for it.

6  We certainly don't, frankly, want the extra work and don't feel

7  like there's any need to doing an update or an overview or

8  anything like that, especially since it'll become -- there'll

9  be -- there'll be spin, both sides will be competing to

10  characterize the litigation in the way that they want to, and I

11  don't see any benefit to that at this stage of the litigation.

12       JUDGE VANASKIE:  Who will address this issue on behalf

13  of the defendants?

14       MS. COHEN:  Your Honor, it's Lori Cohen and I will

15  address this as well.

16       JUDGE VANASKIE:  All right.

17       MS. COHEN:  And so, again, here, really, really it

18  comes down to your preference, Your Honor, because we had

19  raised this I believe last month in our -- in some of our

20  communications with counsel that we thought this might be a

21  nice way to introduce you to the litigation.  It really comes

22  down to what you need and whether you think it will be useful.

23  I think this stems from some prior litigations where perhaps

24  there's been a change of Magistrate or a change in Special

25  Master and something like this has been done, and I think in

1    those instances, at least in my experience, that the person

2    receiving the information thought it was very helpful.

3          So we certainly don't want to inundate you with extra

4    work or information.  We also could do a, you know, 30 minutes

5    on a Zoom call, whatever you think is helpful.  We were just

6    offering this up to you as something that we thought could be

7    beneficial and has been beneficial in other cases.  We're not

8    trying to create busywork but rather we thought this could be

9    useful for you.  And, again, we just wanted to propose that to

10   see what you thought.

11         JUDGE VANASKIE:  Well, I think it could be useful to

12   me.  I don't want to impose on you.  I think it might be more

13   efficient than me -- and Judge Schneider gave me a great

14   overview and identified for me the key documents that I should

15   review.  I'm thinking about getting a summary from counsel, and

16   I'll put -- I'll ask you if you can suggest a page limit.  I'm

17   not looking to put work on you, Adam, I know how crazy busy you

18   all are, but I'm thinking it would be a more efficient way for

19   me to be up to speed on the matter rather than me wading

20   through the orders and decisions that have been entered in this

21   matter.

22         So let me hear, again, from you, Adam, and then maybe

23   you can suggest a page limit for this so, you know -- and I

24   know --

25         MR. SLATER:  Sure.

```
 1          JUDGE VANASKIE:  -- the logistics, I understand that.

 2          MR. SLATER:  Well --

 3          JUDGE VANASKIE:  [Audio distortion] a litigator.  Go

 4   ahead.

 5          MR. SLATER:  I would suggest a three-page limit and I

 6   would suggest that we be directed not to put in advocacy into

 7   these letters.  If this is -- if this is meant to bring Your

 8   Honor up to speed on who the players are and what the status is

 9   of the case, I can't imagine three pages wouldn't be

10   sufficient.  And I -- again, we've all filed massive briefs

11   recently where we took, you know, our advocacy positions and

12   laid them out, and I think that will simplify it.

13          You know, I can tell you on our end, you know, we're

14   going to brief this in a, you know, in a way where we'll

15   probably just say this is who the people in the case are, these

16   are the groups of defendants, these are the groups of the

17   claims and this is where we stand right now and here's what's

18   scheduled and basically just recite and attach the upcoming

19   case management order schedule because, again, from our

20   perspective, you know, we don't think there's much more needed.

21   So as long as we know those parameters can be, you know,

22   observed, I think that it -- then it's not as heavy a lift.

23          If this is going to be an advocacy piece, then, you

24   know, then it becomes a much more difficult thing on both sides

25   because then both sides are just trying to convince the Court
```

1   of the merit of their positions in this litigation, which,

2   again, I don't think that's really what we need right now.

3            JUDGE VANASKIE:  Lori?

4            MS. COHEN:  Yes, thank you, Your Honor.

5            So, again, we have a slight disagreement.  I would

6   think that three pages, it would be very challenging to put

7   even the basics in.  And I agree with Mr. Slater, we shouldn't

8   be advocating in this because there's plenty of that to go

9   around in our briefs; but I would propose ten pages at the

10  outside.  Again, our thought was something on each side giving

11  sort of their view on the overview of the litigation claims,

12  defenses, the status, key rulings, basic background

13  information.  So we perhaps could work on sort of an agenda,

14  like here are the five things each side should address, but I'm

15  thinking that three pages would not give Your Honor that much

16  and then you'd have to be, you know, going through attachments.

17  I'm thinking ten pages would be a good amount.  It's sort of

18  akin to even Science Day that we sometimes have in these

19  litigations where each side has a non-advocacy presentation.

20  So, again, I'm not suggesting that this has to be to the full

21  extent of that, but I would think about ten pages each side.

22  And we could talk about either doing it, whatever Your Honor

23  thinks is more beneficial, either a letter or we can do a

24  PowerPoint; again, open to suggestions.  It's really for you

25  and what you think would be most helpful to you.

```
 1           JUDGE VANASKIE:  All right.  Anything else, Adam?

 2           MR. SLATER:  No, Your Honor.

 3           JUDGE VANASKIE:  All right.  Here's what I -- I would

 4   like the letters, I would like the written summary.  And I

 5   think, from my perspective, that's a more efficient thing to

 6   do.  I'm -- I do think three pages are too little.  I don't

 7   want to be viewed as -- well, I'm just going to split it down

 8   the middle.  What I'm going to suggest is no more than ten

 9   pages and not an advocacy piece, just an information piece that

10   is useful to bring me up to speed.

11           Yes, I have learned a lot in the last month in

12   attending these conference calls and now conducting this

13   conference call; but having something like that to fall back to

14   would be extremely useful, from my perspective.  So let's do it

15   on that basis.

16           Now, how much time do you want before you submit

17   these?  I don't intend to impose any deadline but what are you

18   thinking on that, Lori?

19           MS. COHEN:  Maybe two weeks.  Would that be enough

20   time?  Or, I don't know, Mr. Slater, if you want to push it out

21   more than that.  Again, I think that we want to get it to you

22   as quickly as possible to help you.  Would that give it to you

23   soon enough or do you want it sooner?

24           JUDGE VANASKIE:  You know, it would be nice if I had

25   it before the next call.
```

```
 1          MS. COHEN:  Okay.

 2          JUDGE VANASKIE:  That's what I'm thinking.

 3          MS. COHEN:  Great.

 4          JUDGE VANASKIE:  Again, when I say ten pages, I mean

 5     double-spaced, I don't want ten pages single-spaced.  That's

 6     what the local rules require so that's good for my old eyes.

 7          MS. COHEN:  Okay.

 8          JUDGE VANASKIE:  All right?  Okay?  Is that all right

 9     with you, Adam?

10          MR. SLATER:  Oh, whatever you say is okay.  Should we

11     not have exhibits so we don't turn this into a monstrous

12     submission?

13          JUDGE VANASKIE:  Yes, I would not suggest including

14     exhibits.  Ten pages of narrative should be fine.

15          Now, I will tell you this:  If you want to, this gets

16     a little bit creative, I teach a law school class on electronic

17     evidence and we have an E-filing component and I require my

18     students to link to the record items that they cite in the

19     filing that they have to make.  It can be done but I'm not

20     requiring it.  If you do that, or if you want instructions, I

21     can send you instructions on how that can be done.  It

22     certainly is more efficient for the reader of a matter to click

23     on a link and it goes right to that document, but it won't be

24     required.

25          No exhibits.  You can certainly -- I expect that
```

1   you'll cite back to the record to specific document numbers or

2   docket entry items and we'll go from there.

3          Any questions on that?

4          MS. COHEN:  No.  We would love to have whatever you're

5   offering in terms of the link and how you like that, that would

6   be helpful.

7          JUDGE VANASKIE:  Yeah.  I'll send you what I provide

8   to my students on how to link back to the ECF record.

9          MS. COHEN:  Great.  Thank you.

10          JUDGE VANASKIE:  Thank you.

11          MR. SLATER:  Your Honor, it's Adam Slater.  You're

12   talking about hyperlinking, right?

13          JUDGE VANASKIE:  Yes, hyperlinking.

14          MR. SLATER:  Okay.

15          MS. COHEN:  Great.  Thank you, Your Honor.

16          JUDGE VANASKIE:  I'll send everybody -- when I say

17   everybody, you know, it would be helpful if for now I get an

18   email with all the addresses of the lead counsel on both sides

19   so I can put my own list together so I can then reply that way.

20   But I realize what I can do is just send it to Seth and Adam

21   and then you can distribute it, but however you think would be

22   best.

23          MS. COHEN:  We're happy to put together a list on the

24   defense side and get that to you today.

25          JUDGE VANASKIE:  Okay.  What about you, Adam?  Do you

```
 1   want to be just the conduit?

 2           MR. SLATER:  Well, if you want all the addresses, I

 3   think -- I think Ms. Cohen has them, so if she wants to provide

 4   you our email addresses and names, too, I will certainly agree

 5   to letting her do that.

 6           It sounded like you were going to do that, right,

 7   Lori?

 8           MS. COHEN:  That's fine.  I'll just -- I'll just have

 9   you send me an email of who you want included so we can compile

10   it.

11           MR. SLATER:  We're talking about the mid-week -- I

12   mean for the communications with the Judge, it would be the

13   four co-leads.

14           MS. COHEN:  Okay.

15           JUDGE VANASKIE:  Okay?  All right, great.

16           All right.  Item Number 5 we'll cover with Judge

17   Kugler when we bring him on the call.

18           Item Number 6 is this question of what to do about

19   scheduling the deposition of the ZHP employees.  Who's

20   addressing this issue on behalf of the defense group?

21           MR. GOLDBERG:  Your Honor, this is Seth Goldberg on

22   behalf of the ZHP parties.

23           We have set forth this issue in a number of different

24   filings and you have our positions on Page 10 of Ms. Cohen's

25   letter.
```

1    Just to recap for Your Honor, then I thought I would

2    just hit a few points.  Judge Schneider approved this schedule

3    of the ZH party employee depositions on January 15.  He heard

4    argument on that on January 13 and the order -- the schedule

5    that he approved was actually submitted to him on January 5th.

6    And if Your Honor looks at Exhibit E of our letter, you'll see

7    the ZHP party deposition proposal that was before Judge

8    Schneider on December 8th and January 5th.  So where we are now

9    is we have a schedule that's been approved.

10    Since Judge Schneider approved that schedule, Mr.

11    Slater and plaintiffs have complained that the schedule that

12    Judge Schneider approved results in the overlapping of ZH party

13    depositions and there -- that's not disputable.  That has been

14    at issue since the December 8th proposal that we made.  It's

15    always been explicit in these proposals that there would be

16    some overlap of the ZHP party witnesses due to the complexities

17    of deposing Chinese nationals in this case.  And so I thought I

18    should just raise a few points.  But, you know, what -- what is

19    clear is that the overlapping of depositions that's at issue is

20    really of plaintiffs' own doing.  And there are three things

21    that have happened over the last five months that make that

22    clear.

23    First, you know, plaintiffs raise this issue now about

24    the overlapping of depositions as if -- as if it's a new issue,

25    as if somehow it wasn't before Judge Schneider, but it has

1  always been at issue.  Judge Schneider first raised the

2  scheduling of depositions back in August of 2020.  And at the

3  September 16th conference, I raised with plaintiffs and the

4  Court the fact that these depositions were going to have to be

5  done notwithstanding the 12-hour time zone difference between

6  the East Coast, Eastern Standard Time, and Hong Kong time.  And

7  I don't know how much Your Honor has read the submissions

8  related to depositions and so it's a little bit hard to -- I

9  don't know how detailed to get, but Your Honor may be aware

10 that the Chinese national witnesses --

11         JUDGE VANASKIE:  Yes, I am familiar with the

12 background.

13         MR. GOLDBERG:  Oh, okay.

14         JUDGE VANASKIE:  Sorry to interrupt.  I just wanted to

15 let you know so you didn't have to go into too much detail, but

16 I understand they have to travel, I understand they can only be

17 deposed in Hong Kong or some other place, one of the letters

18 mentioned Macao or Singapore.  So I am familiar with that issue

19 and the difficulties that that presents.

20         MR. GOLDBERG:  Right.

21         JUDGE VANASKIE:  I'm also familiar with the fact that

22 you've got to increase the time for translation and many of

23 these witnesses are -- you need the translator.  So, yes, I'm

24 familiar with those -- those matters.

25         MR. GOLDBERG:  Okay.  Very good, Your Honor.

1          So I think the point about the time zone difference,

2     and one thing that's really important is, plaintiff could

3     alleviate that issue if they, themselves, wanted to travel to

4     Hong Kong to take these depositions.  They've known about this

5     12-hour time zone difference since we started discussing the

6     depositions back in August and September, and the time zone

7     difference would go away if plaintiffs' counsel wanted to

8     travel to Hong Kong for the depositions.  There's certainly

9     nothing prohibiting a U.S. citizen from traveling to Hong Kong

10    and being there and -- you know, but since the outset of

11    talking about depositions, plaintiffs have, and understandably,

12    taken a position that due to COVID, they're not willing to

13    travel for the depositions and that the depositions should be

14    done by Zoom.

15          You know, of course, it really underscores the effort

16    that ZHP is undertaking by sending witnesses and having

17    witnesses volunteer to travel ten hours to Hong Kong for the

18    depositions when plaintiffs' counsel are, themselves, not

19    willing to do so.

20          So, you know, the time zone issue is a fact.  It could

21    be alleviated by traveling closer to Hong Kong or to Hong Kong,

22    but that is something plaintiffs' counsel is choosing not to

23    do.

24          The other complicating factor for the schedule is the

25    witnesses that plaintiffs chose to request to depose in late

1    December, on December 8th, ZHP proposed 13 witnesses total,

2    seven of whom are in China, and all seven of those Chinese

3    witnesses were designated to cover all of the topics in

4    plaintiffs' 30(b)(6) notice.  And after December -- after that

5    December 8th schedule, plaintiffs then, on December 17th,

6    proposed adding additional -- seven additional witnesses.  Five

7    of those witnesses Judge Schneider has granted defendants leave

8    to move for a protective order.  And, Your Honor, we filed a

9    protective order motion as to four of those witnesses last

10   week.  The fifth witness is the CEO of ZHP and we'll be filing

11   a motion for a protective order as to his deposition at the end

12   of the deposition record.  But these five -- these five

13   witnesses, plus two additional witnesses, were proposed after

14   December 8th, on December 17th.  Judge Schneider asked us to

15   add those witnesses to the schedule, even though those

16   depositions -- some of those depositions may not happen; and by

17   adding those witnesses to the schedule, we've loaded -- loaded

18   up the number of witnesses that need to be deposed in March.

19   And, of course, given the time zone difference and given the 75

20   percent add-on for translation time, it -- it creates a

21   situation where there's going to be overlapping depositions.

22   But plaintiffs, you know, knew this going in when they proposed

23   adding those witnesses.

24           And there are really two other points to make, which

25   is that plaintiffs have had the opportunity twice to, at least

1    twice, to have a change to the schedule to accommodate the

2    depositions that they are -- or to accommodate their concern

3    about overlapping depositions.

4         On November 24th, Judge Kugler modified the case --

5    the scheduling order in this case and set a deadline for fact

6    discovery as to general causation to be completed on April 1.

7    And on the same day, at that same conference, the issue of the

8    Chinese depositions, the time zone differences, the

9    translations, that was all at issue on the same day before

10   Judge Schneider.  And if Your Honor reviews the 11/24

11   transcript, you'll see that all of these issues were discussed

12   at length.  But plaintiffs did not raise this concern about

13   overlapping depositions or any concern about the Chinese

14   depositions when Judge Kugler issued his order about the

15   general -- about the fact discovery for general causation.

16        Then on January 6, the parties submitted to Judge

17   Kugler a revised scheduling order that sought to push a number

18   of depositions and discovery that do not relate to general

19   causation to the April 1st through August 1st period.  And that

20   was really the opportunity for plaintiffs to say, you know,

21   Judge, we have a problem with the schedule as it relates to the

22   depositions of the Chinese witnesses.  And, in fact, the day

23   before the parties submitted that schedule to Judge Kugler, the

24   January 5th proposal that's set forth in Exhibit D was

25   presented to Judge Schneider and plaintiffs -- that was -- that

1   was really the time for plaintiffs to say there was a problem

2   with the schedule.  They -- they didn't do that.  And so as a

3   result, we have this -- we have this situation where there are

4   overlapping depositions in March.

5           The ZHP parties have tried -- had proposed some

6   modifications that plaintiffs did not accept.  We proposed that

7   those disputed witnesses be pushed into April.  And -- and not

8   only -- not only did we make that proposal because those

9   witnesses are in dispute, but those witnesses do not bear on

10  general causation, which -- which is the issue that needs to be

11  resolved or the discovery that needs to be completed by April

12  1.  None of the disputed witnesses or any of the additional

13  witnesses that plaintiffs proposed on December 17th are

14  necessary -- none of their testimony is necessary for the issue

15  of general causation.  All of the 30(b)(6) topics that

16  plaintiffs have identified will be the subject of testimony in

17  March, and, you know, plaintiffs -- plaintiffs did not agree to

18  moving witnesses into April; but just as we moved other

19  witnesses that did not have a general causation issue in their

20  testimony to beyond April, one -- one reason to consider moving

21  some of these witnesses to after April is that their testimony

22  does not bear on general causation.

23          Plaintiffs did not accept our suggested modifications

24  and so the ZHP parties are prepared to move forward with the

25  schedule that Judge Schneider approved.

1    Plaintiffs will tell you -- I'm sure Mr. Slater will

2    tell you that this morning, about five minutes before this

3    conference, he sent the proposal over to the ZHP parties to

4    continue to discuss this.  And, you know, it's really -- it's

5    really something that the only meaningful proposals we've

6    gotten from plaintiffs about the schedule have come after the

7    January 5th scheduling order, after Judge Schneider's order,

8    but just in scanning Mr. Slater's proposal, he has -- he has

9    accepted the dates of the witnesses that were proposed on

10   December 8th with some slight modifications but he still

11   maintains that all of the additional witness that were in his

12   December 17th letter, their depositions need to be moved,

13   acknowledging that it's their depositions that are creating the

14   problem with overlap.

15       And so, you know, our view is if -- if plaintiffs do

16   not want to have the overlap that's being caused by the seven

17   additional witnesses they proposed on December 17th, that those

18   witnesses should be moved into April; otherwise, the ZHP

19   parties are prepared to move forward with all the depositions

20   as ordered by Judge Schneider on January 15th.

21       JUDGE VANASKIE:  Adam, what are you looking to

22   accomplish here?

23       MR. SLATER:  Well, the first thing I'm looking to

24   accomplish, Judge -- this is Adam Slater, for the record --

25       JUDGE VANASKIE:  Right.

1          MR. SLATER:  -- is to give you our position in less

2     than a half an hour, so I'm going to try to do that.

3          JUDGE VANASKIE:  Okay.

4          MR. SLATER:  I'm going to try to be a person who's

5     trying to resolve an issue as opposed to smearing the other

6     side before saying, but we'll talk but they're stuck with what

7     they got.  I'm someone who tries to work through something and

8     find something that's reasonable as best we can.

9          So I'm going to start with what the defense said on

10    Page 12 of their brief, which is consistent with the ongoing

11    meet and confer that we have been in process with, which says

12    that the ZHP parties are not opposed to modifying the schedule.

13    So that's -- I think both sides recognize we need to modify the

14    schedule.

15          And I will say one other thing.  As Your Honor has, in

16    our letter, an attachment which is an email exchange between

17    myself and Judge Schneider and Mr. Goldberg, on Judge

18    Schneider's last day as a federal Magistrate where we were

19    trying to work through some of these things and Judge

20    Schneider, before he entered the order, was going back and

21    forth with us talking about the problems with the schedule and

22    before we entered -- he entered the order, he said, it looks

23    like ZHP will be unable to resolve the issue today with

24    plaintiffs or even get together to resolve the issue today, and

25    he concluded with he feels our pain and wishes us the best of

 1    luck, which I appreciated.

 2            So he entered the order because I think he had to

 3    enter an order, but I think it's not accurate to say that it

 4    was understood that was the end of the road.  And I think, you

 5    know, to give ZHP credit, I'm glad that they've continued to

 6    talk to us and acknowledged in their letter to Your Honor they

 7    want to talk.

 8            So where does that leave us?

 9            Number one, we never said no to April.  We said yes to

10    April.  But what we said is we can't do that without the

11    approval of the Court because there's a scheduling deadline.

12    So we said, let's talk to Judge Vanaskie and let's figure out

13    if we have the leeway to move some of the depositions into the

14    early part of April which helps to give us some breathing room.

15    That's number one.

16            Number two, the problems that we're having is, and I'm

17    not going to go back over the history of why February got

18    sliced out and January, but Your Honor understands it and Judge

19    Schneider placed on the record at the last conference with all

20    counsel that he understands that the plaintiffs are in a

21    horrible position because of this, and -- and I certainly think

22    the defense understands that as well, and I -- and I would like

23    to believe they're either trying to get the schedule done

24    because they want to move beyond it, not to put us in a tough

25    situation like going to Hong Kong when one of my associates

 1   just sent to me an email showing that U.S. citizens are not

 2   allowed to travel to Hong Kong.  And I appreciate Mr.

 3   Goldberg's offer for me to fly to Hong Kong right now but in

 4   this day and age, with what's going on with public health, I'd

 5   prefer not to get on a plane and go live in Hong Kong or

 6   somewhere else, if that's a state that's on a complete lockdown

 7   right now, it's very hard to move around, or go live somewhere

 8   for two or three weeks away from home.  I understand witnesses

 9   must do that, but that's a litigation reality.  For counsel to

10   do that within the United States, it's very hard and we can't

11   go to Hong Kong.

12             So where does that leave us?

13             What I sent to Mr. Goldberg yesterday -- or today, I

14   should say, was something that we've been working through to

15   try to reduce the overlap.  The current schedule has two and

16   three depositions going simultaneously, and these are

17   depositions starting at 7:00 at night Eastern going to midnight

18   Eastern because of the time zone difference to take the

19   depositions up.  So what I'm not going to do is negotiate dates

20   and witnesses with Your Honor, but what I would suggest is

21   this:  We sent what we thought reduced the overlap.  It's

22   dependent on Your Honor giving us the right to move some

23   depositions into April, with the understanding that if we have

24   to move depositions later -- we don't agree with defense

25   counsel that none of these witnesses will relate to general

1   causation.  We haven't been through all their custodial files

2   yet, as I'm sure they have not either, but I'm sure everybody

3   touches on general causation to one extent or another.  We

4   would need to have an understanding it may be necessary to

5   supplement some expert reports because we won't have as much

6   time to get the transcripts and get them to our experts.  That

7   shouldn't be a problem because our base reports will be done

8   and served.

9           So we served a schedule today that reduces the

10  overlap.  For example, during the first week of March, rather

11  than starting two witnesses on Sunday night at 7 p.m., we

12  suggested let's start one witness at 7 p.m. and start the other

13  witness Tuesday night at 7 p.m. so there's less overlap.

14  That's an example.

15          My -- my under -- the bottom line is we would ask Your

16  Honor, let us continue to talk, let us try to work the schedule

17  out.  If we can't, we can contact Your Honor and tell you we've

18  exhausted our discussion and this is where we are.  I would

19  like to believe that if we have April to work with, if we can

20  try to reduce the overlap, I think that would be good for

21  everybody.  So we just need more time to work this out.

22          Thank you.

23          JUDGE VANASKIE:  All right.  Thank you very much,

24  Adam.

25          What is the deadline for the briefing on the

1 protective order motion?

2        MR. SLATER:  Friday.  Our brief is due Friday in

3 opposition, I believe, unless I have that wrong; but I think

4 it's Friday.

5        JUDGE VANASKIE:  And is there a date for --

6        MR. GOLDBERG:  I believe -- I believe there is a

7 deadline for reply on February 5th.

8        JUDGE VANASKIE:  All right.  So that would be

9 important for me to resolve that as promptly as possible.  That

10 would help with scheduling.

11        If none of the -- all of the witnesses are going to be

12 deposed, I understand it, it doesn't change anything.

13        Seth, did you want to be heard?

14        MR. GOLDBERG:  Yeah.  Your Honor, I just think that it

15 is important to -- like, when we think about April 1, that

16 going beyond April 1 -- and I understand what plaintiffs are

17 saying is that they would be willing to -- or they would want

18 to move witnesses into April 1 or beyond April 1 but they're

19 concerned that that would -- that they would then need to push

20 back the filing of their expert reports on general causation,

21 which --

22        MR. SLATER:  That's not what I said.

23        JUDGE VANASKIE:  Well, what are you saying, Adam?

24        MR. SLATER:  I said we would meet the deadline for our

25 expert reports but we may have to serve a supplement at some

 1    point, if we took a handful of depositions in April, to address

 2    that testimony to the extent relevant, but we're not suggesting

 3    to change the expert report deadline.

 4            JUDGE VANASKIE:  Okay.

 5            Can all of this be done without affecting the schedule

 6    for the submission of the in limine motions that are

 7    contemplated, or maybe it's summary judgment motions on

 8    causation, but the motion practice that's expected on

 9    causation?

10            MR. GOLDBERG:  The motion practice --

11            MR. SLATER:  That's much later in the process.

12            MR. GOLDBERG:  Right, right.

13            MR. SLATER:  But I didn't --

14            JUDGE VANASKIE:  I --

15            MR. SLATER:  I'm sorry, Your Honor.  It's Adam Slater.

16            I did misspeak.  Our brief on the protective order I'm

17    told is due Monday, not Friday.

18            JUDGE VANASKIE:  Okay.

19            MR. GOLDBERG:  Your Honor, I think -- I do think it's

20    worth noting that those -- the depositions that would

21    potentially be moved in April, three or four of them really can

22    be sales related, which should have no impact whatsoever on

23    general causation, leaving two or three individual witnesses,

24    were they to even be deposed, but those would be witnesses that

25    are the subject of protective order motions because their

1    testimony is cumulative of their -- of their supervisors who

2    will be deposed and who will be deposed on the 30(b)(6) topics

3    that plaintiffs think bear on general causation.  So it's very

4    unlikely that any of those additional witnesses would have any

5    testimony that's material to any expert's report.  But we

6    certainly do not want to be somehow conceding that plaintiffs

7    should be able to supplement their expert reports by taking

8    testimony in April.

9         JUDGE VANASKIE:  All right.  You know, to me, it does

10   seem that this is a matter that warrants further meet and

11   confer of counsel, that it is a resolvable issue.  I understand

12   your concern, Seth, in terms of you don't want to all of a

13   sudden get hit with a supplemental expert witness report that,

14   you know, just gives an opportunity to expand information that

15   could have and should have been presented initially.  And I'm

16   not hearing that is the intention on the plaintiffs' part, but

17   I do think this is a matter that can be resolved.  I think

18   there can be enough flexibility with the ability to get these

19   depositions scheduled -- scheduled in a manner that you're not

20   double-tracking and triple-tracking, I think that's a term

21   that's been used, the depositions.

22         So what I would urge is that you continue to discuss

23   this.  Obviously, a proposal was sent to you.  I don't have

24   that proposal nor should I have it at this stage.  But I think

25   you can move forward with your discussions and see what you can

 1   -- see what you can reach agreement on.  By the time of our

 2   next call in February, we'll be in a better position maybe to

 3   have resolved those motions for protective orders and to give

 4   you some certainty going forward.  But in the meantime, I

 5   wouldn't defer -- defer your discussions to see what you can do

 6   to avoid these overlapping depositions or simultaneous

 7   depositions occurring, with an understanding that some

 8   depositions would be taken in April, but I think that would be

 9   all right if it doesn't affect the overall schedule of the

10   case.

11          I understand the concern on expert witnesses and we'll

12   have to address that issue down the road, I suppose.

13          But, you know, this is a lengthy explanation from me

14   and a lengthy presentation from each side on a matter that I

15   think just requires more discussion with a view towards trying

16   to reach an agreement because I think you're -- I agree with

17   Judge Schneider, I feel your pain in terms of the double-

18   tracking and triple-tracking of depositions and would like to

19   see if you could find a way to avoid it.

20          Perhaps, Adam, you'll be able to reach an

21   understanding that some of these witnesses that you want to

22   depose won't really affect the causation analysis or provide

23   information that affects that analysis, won't require

24   supplementation of an expert witness report, for example, and

25   that would make it easier to move that deposition of that

 1    particular person to April.

 2            So I think that's about all we can do on this

 3    particular issue at this time.

 4            All right.  Let's go to --

 5            MR. SLATER:  Thank you, Your Honor.

 6            JUDGE VANASKIE:  -- the update on -- it looks like

 7    everything is set for Aurobindo, Teva and Torrent; is that

 8    correct?

 9            MR. NIGH:  Your Honor, this is Daniel Nigh for the

10    plaintiffs.

11            I will say for Aurobindo and Torrent, we do have a few

12    outstanding issues, but, you know, mainly the time that the

13    depositions are going to start, you know, being one of them,

14    and, for Aurobindo, some arguments about a few additional

15    witnesses that we want to take that defendants think are

16    duplicative.  But other than that, at this point, we have

17    agreed upon schedules, we're moving forward with those

18    depositions.  We've agreed upon the amount of time for the

19    30(b)(6) witnesses.

20            So I would say that at this point those other issues

21    we're continuing to meet and confer.  I hope that we'll be able

22    to reach agreements on those issues.  I don't think there's

23    anything that needs to be decided today.

24            JUDGE VANASKIE:  Okay.  Adam?

25            MS. WHITELEY:  And, Your Honor, this is Conlee

1  Whiteley for Teva -- to address the Teva depositions.  We have

2  worked just about everything out.  We are working out a few

3  kinks with deposition dates and timing to accommodate the

4  witnesses' attorneys' schedules and also be more as to exactly

5  which fact depositions will be taken.  But I think we've been

6  meeting and conferring successfully and we will be able to work

7  out those issues.

8          JUDGE VANASKIE:  Very well.

9          Anything else, Adam, from your perspective on Teva,

10  Torrent and Aurobindo?

11          MR. SLATER:  No, Your Honor.  I think that those on

12  plaintiffs' side that needed to address it have addressed it.

13  Thank you.

14          JUDGE VANASKIE:  Okay.  Well, the next issue

15  proceeding through this agenda is the summary of defendants'

16  document production.  It seems to me that this is an issue that

17  you teed up or you raised, Adam, and I'm not exactly sure what

18  you're -- what you're looking for here in terms -- in terms of

19  you certainly have alerted me to the fact that much of the

20  document production occurred near the end of the production

21  period, and I was aware of that, thank you.  But tell me what

22  point you're trying to make here or what are you looking for or

23  are you just letting me know that this is a difficulty you're

24  confronting?

25          MR. SLATER:  Yeah, Your Honor, I'm going to hand this

1    off to another member of our team.

2         I'll just briefly say this was to get Your Honor up to

3    date that there are ongoing issues and we think that there may

4    be some -- some more issues coming up.  But I want to hand off

5    to another member of my team who I think was going to address

6    this more specifically.

7         MR. PAREKH:  Your Honor, this is Behram Parekh.

8         We really wanted to raise this issue because, you

9    know, as we've been reviewing these documents, given the volume

10   and then the schedule for the deposition, it's become clear

11   that there's absolutely no way, despite throwing bodies at

12   this, that we're going to be able to get through these

13   documents in time, given the number of documents and the number

14   of defendants, to be completely prepared for these depositions,

15   and we wanted to make sure that Your Honor was aware of this

16   issue and that, you know, there may be a time in the future

17   where we come back to Your Honor and say, you know, we took

18   this deposition in February.  After that point, we discovered

19   these documents that are relevant to this particular witness or

20   are relevant to a different witness that we didn't take, but we

21   were not able to review those documents in time and now need to

22   either schedule a second deposition of that witness or to

23   schedule a deposition of a witness that we did not think we

24   needed a deposition of.

25        We believe that this is the situation that was created

 1    by the defendants, by their failure to abide by the rolling

 2    productions, and by producing 70 to 80 percent of their

 3    documents at the very last moment.

 4         Defendants also continue to produce documents.  We

 5    just got another set of documents in yesterday and it's, you

 6    know, virtually untenable for us to be able to -- to be able to

 7    be taking depositions and then keep getting documents in and

 8    then for defendants to take the position that, no, you don't

 9    get to take that deposition over because, you know, you only

10    get one shot at it.

11         So we just wanted to raise this issue and make sure

12    that it was on Your Honor's radar so that there wouldn't be an

13    -- you know, so that if three months from now we come back to

14    Your Honor, there's no claim that we didn't raise this in a

15    timely fashion.

16         JUDGE VANASKIE:  I see.  All right.  Who will be

17    addressing this issue on the defense side?

18         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

19    will start but I'll certainly invite Ms. Cohen or Mr. Trischler

20    to weigh in.

21         We really didn't know where plaintiffs were going with

22    this because we did not meet and confer on this issue.  I mean,

23    we asked them what they thought this issue was to be about.

24         You know, the record will be very clear for Your Honor

25    that the defendants met their rolling production obligations

1 and produced documents throughout the rolling production

2 period.  Not surprisingly, given the number of search terms,

3 which was over 400, the number of ESI custodians for ZHP, for

4 example, there were more than 80, from many of the other

5 defendants there were more than two dozen.  Much of the

6 document production wasn't ready and processed to be produced

7 until they were in the production.

8         However, what we did, each defendant, was to produce

9 documents based on the priority order that plaintiffs requested

10 on May 7.  And for all of the priority custodians, the

11 documents were produced and plaintiffs were given a number of

12 opportunities with Judge Schneider to prioritize, to request

13 prioritization in their production and defendants satisfied

14 those requests to prioritize.

15         So we certainly take issue with the notion that

16 plaintiffs are now, two months after the substantial completion

17 of the document productions, and without any specificity,

18 trying to put down a marker that they are going to come back

19 and ask for additional depositions.  Of course, defendants

20 don't want to have their witnesses be deposed more than once,

21 and it's -- it's, you know -- the question is whether we should

22 be going forward with any of the deposition exams.  But we

23 certainly think the record reflects that defendants satisfied

24 their document production obligations, there have been no

25 material deficiencies with respect to those document

 1   productions, and we don't -- we don't really think that

 2   plaintiffs are making this -- are laying -- laying down this

 3   marker, you know, it certainly seems to be premature, at best,

 4   to be laying down this marker.

 5          But I'll invite Ms. Cohen and Mr. Trischler, since we

 6   did not know where plaintiffs were going with this issue.

 7          MR. TRISCHLER:  Your Honor, Clem Trischler.  I'll take

 8   Seth's suggestion and add some perspective for the Mylan

 9   defendants, in particular.

10          You know, Mr. Goldberg's absolutely correct that all

11   of the defendants worked diligently to produce documents in

12   response to the Court's ESI order, the search terms and the

13   custodians.  In the case of Mylan, we had over 50 custodians

14   that were on the list, we worked diligently to review millions

15   of documents and to produce responsive material.  Plaintiffs

16   have had all of that material since November.

17          I'm not looking to cast aspersion or blame on anybody

18   but what I heard Mr. Parekh say this morning is they're not

19   ready to take these depositions and so they want carte blanche

20   permission from the Court then to depose everybody twice.

21   That's not the solution or the remedy.  If what I'm hearing

22   from the plaintiffs is that they have not been through the

23   production in the 60 days they've had the documents to be ready

24   to take these depositions, then the solution is to suspend the

25   deposition schedule.  We worked really hard, on the defense

1   side, to come up with an agreement for plaintiffs.  We agreed

2   to produce witnesses early in February.  We've got 12 witnesses

3   from all -- in the United States and in India that we've agreed

4   to produce and make available.  And if the plaintiffs are

5   saying now that we're not ready, that we haven't been through

6   your documents, so we're going to depose these witnesses but,

7   oh, by the way, don't be surprised if we come back and say,

8   well, now that we've reviewed these documents we want to depose

9   them all again, that's not fair and that's not appropriate.

10  And I'll take them at their word, if they haven't been through

11  them, then let's suspend the deposition.  But you can't just

12  raise this issue as sort of a get-out-of-jail-free card and

13  say, yeah, we'll go forward with these depositions but now we

14  get to do it again.  That's what I'm hearing and that's what I

15  don't think is fair.

16         So I think if Mr. Parekh is right that the plaintiffs

17  have not been through the documents, then let's suspend all the

18  depositions and the Court can decide how much time they need to

19  get through the rest of the documents and then we'll start

20  again.

21         JUDGE VANASKIE:  Well, I don't think that's going to

22  happen, by the way.  I don't think we're going to suspend

23  depositions.

24         I understand this to be just raising the issue or

25  presenting it for my awareness that there may be a necessity to

 1    ask for a redeposition of a witness.  We'll have to address

 2    that issue if and when it comes up or you continue to have a

 3    dialogue about this particular -- about this particular item.

 4          I didn't mean to preempt -- who else would be

 5    addressing this?  Is it Lori that will be addressing it or --

 6          MS. COHEN:  Yes, Your Honor, although my colleague,

 7    Ms. Lockard, I think is going to address the --

 8          JUDGE VANASKIE:  All right.

 9          MS. COHEN:  -- document issues.

10          MS. LOCKARD:  Yes, Your Honor, for Teva, this is

11    Victoria Lockard, and we agree with what our co-defendants have

12    expressed here.

13          This has been an issue, I think, that has been

14    percolating around the edges for quite some time.  And this is

15    exactly why I think the letter briefing will be helpful to you,

16    Judge, so you could see what the prior orders and discussions

17    were.  But the plaintiffs have been representing since this

18    process started that they're sitting back with an army of

19    reviewers to go through these documents as we produce them.

20    We're now hearing that that's not the case, that they're not

21    able to get through them.  Again, like Mr. Trischler said, that

22    may be fine, we understand, it's a lot of material, but, you

23    know, we have not -- for Teva, we have not -- we don't think

24    this is going to be an issue.  We have scheduled our

25    depositions to occur within the Court's order.  We're working

1   around the clock to try to complete our productions.  And to

2   suggest that we, that the defense as a whole, did not comply

3   with the Judge's orders on the rolling production is just not

4   true.  And there's a lot of history and a lot of water under

5   the bridge there with respect to how the electronic discovery

6   process went and the decisions and orders that were made.

7          So, you know, Teva, for one, is continuing its rolling

8   production pursuant to Judge Schneider's orders and the

9   agreement of the parties, and we intend to complete our

10  production on February 15th.  But there will always be

11  documents here or there that -- that may be located through the

12  process of prepping our witnesses that maybe get produced, and

13  Judge Schneider has always said, you know, plaintiffs, you're

14  not going to have every single document out there when you take

15  a deposition.

16         So we don't think there's any -- there's any ground to

17  say at this point that there's a basis for reserving the right

18  to come back and redepose our witnesses.  That's just -- that's

19  just not fair and if there is a rare exception or, you know,

20  very good cause for doing that, we would just ask that the

21  plaintiffs communicate with the defendants as to which

22  particular witness, which documents, and which parties,

23  because, so far, I don't think any defendant, certainly not

24  Teva, has been notified that this is a burdening issue for any

25  particular defendant.

1          JUDGE VANASKIE:  All right.  Thank you.

2          Behram, do you have a brief rebuttal?

3          MR. PAREKH:  Sure, Your Honor.  This is Behram Parekh,

4     for the record.

5          So our whole point here is that when we raised this

6     issue in December with Judge Schneider, and we've been raising

7     this issue with Judge Schneider at every point in the

8     production process, Judge Schneider had stated previously and

9     has -- and continued to state that we would not be prejudiced

10    if defendants did what they ended up doing and produced 80

11    percent of their documents or 75 percent of their documents,

12    depending on the defendant, on the last day of the rolling

13    production.  You know, that is not a rolling production.  A

14    rolling production is a relatively evenly divided production.

15         We've had reviewers sitting idle for months on end

16    while defendants continued to produce dribs and drabs of

17    documents and then produce a massive dump of documents on the

18    very last day or even after the very last day of the production

19    deadline.

20         In addition, one of the other issues that Seth came up

21    with was this idea of priority custodians.  We identified

22    priority custodians and priority topics months in advance and

23    we continued to ask defendants, have you completed production

24    for this particular custodian, have you completed production

25    for this particular topic, and each time we were told, no, we

1   cannot say that we have completed production for that

2   custodian.  So to say that they prioritized those custodians,

3   they may have prioritized those custodians but they didn't

4   complete that priority custodian production.

5        So at any point in time for them to say, oh, we, you

6   know, complied with our obligations is ingenuous.  They did not

7   comply with their obligations to do a rolling production.  What

8   they did was they did a document dump of the vast, vast

9   majority of the documents on the very last day and then said,

10  you know what?  Hey, we're done because, you know, that's what

11  we did and we hit the last-day deadline.

12       JUDGE VANASKIE:  All right.  You know, right now I

13  think this is just consciousness aware, you know, making me

14  aware of the issue and I certainly was aware of it before, and

15  I appreciate each side has a different perspective here, but I

16  think the appropriate approach will be, you know, if -- if it

17  occurs that you felt you didn't have the opportunity to

18  adequately prepare to take a witness's deposition to either

19  seek leave to redepose or postpone the deposition if you think

20  you need additional time.  But right now it's in a vacuum.  I

21  don't think there's anything that's properly teed up for a

22  resolution at this time.

23       So I think we just leave it at that and move on then

24  to the next issue, unless -- unless somebody feels strongly

25  otherwise that need to be heard more on this.

```
 1              (No response.)

 2              JUDGE VANASKIE:  All right.  The update on the P3 data

 3    issue, we're supposed to -- you're working on a stipulation, I

 4    take it.  How's that going?

 5              MR. GEOPPINGER:  Your Honor --

 6              MR. STANOCH:  Good morning, Your Honor.  Go ahead,

 7    Jeff.

 8              MR. GEOPPINGER:  Okay.  Your Honor, Jeff Geoppinger

 9    for the wholesaler defendants.  As we put in our briefs, and as

10    you may recall, there's an issue with respect to the production

11    of this particular data and the defendants Teva have noted in

12    their responses that there's a set prohibition on it, the

13    plaintiffs disagree.  We're negotiating, hopefully, a

14    stipulation that will obviate all of this and we've exchanged

15    several drafts and we're working hard, hopefully, to get this

16    tied up before the end of next week so we don't have to file a

17    brief on the 8th.

18              JUDGE VANASKIE:  Okay.  Good.  I hope you can get it

19    resolved.

20              Who wants to talk on this issue from the plaintiffs'

21    perspective?  I'm sorry.

22              MR. STANOCH:  Your Honor, David Stanoch for

23    plaintiffs.

24              We agree with Mr. Geoppinger's summation in where we

25    are.  Nothing to add.
```

1          JUDGE VANASKIE:  Okay.  Very well.  Great.

2          The next issue is the Short Form Complaints for

3   Losartan and Irbesartan and implementing orders with respect to

4   service of process on the defendants.  Is there anything to

5   discuss on this issue and who will be addressing it from the

6   defense perspective?

7          MS. HEINZ:  Hi, Your Honor.  This is Jessica Heinz.  I

8   represent the Aurobindo defendants.

9          JUDGE VANASKIE:  All right.

10         MS. HEINZ:  I can address that on behalf of the

11  defendants.

12         I have been meeting and conferring with Marlene

13  Goldenberg on the plaintiffs' side.  We've had several

14  meet-and-confer calls and we've been exchanging emails and

15  drafts.  I think we just have to finalize one more thing

16  relating to the draft of the Short Form Complaint and we should

17  be able to submit that to the Court, hopefully, by the end of

18  this week, an agreed-upon draft for the Short Form Complaint as

19  well as the implementing order.

20         There is another issue, though, that we're continuing

21  to meet and confer on, which is the service of process of the

22  Master Complaints for the Irbesartan and Losartan complaints.

23  And I think Marlene can correct me if I'm wrong, but we are

24  continuing to meet and confer on that and hope to provide the

25  Court with an update at the next conference.

```
 1            JUDGE VANASKIE:  All right.

 2            MS. GOLDENBERG:  Your Honor --

 3            JUDGE VANASKIE:  Is Marlene on the line?

 4            MS. GOLDENBERG:  I am.  Good morning -- or good

 5    afternoon almost.

 6            Jessica and I have had a number of productive

 7    conversations and I agree we are nearly done on the Short Form

 8    Complaints and the associated implementing order, and we

 9    should, I think, be able to get that to you today if not

10    tomorrow morning at the very latest.

11            With regard to the service of process issue, I did

12    want to preview this issue for Your Honor just so you

13    understand a little bit of why this might come up.

14            A number of the defendants in this litigation, of

15    course, are located overseas, and we ran into this at the

16    beginning of the Valsartan litigation where a number of the

17    foreign defendants insisted on being served through the Hague,

18    and Hague service, as I'm sure you're aware, is a very

19    time-consuming process that can take upwards of a year because

20    you have to serve the defendant in person in accordance with

21    the country's local rules and in the language of the country.

22            JUDGE VANASKIE:  Yes, I'm aware.

23            MS. GOLDENBERG:  Right.  So, you know, last time, that

24    took a long time and it took a long time to get parties in the

25    case.  And when -- now that we're starting the Losartan and
```

1    Irbesartan portion of this MDL, many, if not most, of these

2    defendants are already here and represented by counsel.  And so

3    for them to now take the position that they somehow don't know

4    this litigation exists or that they wouldn't have adequate

5    notice of the litigation absent being served through the Hague

6    is really just going to bog down this litigation and delay us

7    potentially by months, if not years.

8          And so I'm hoping that the Court will provide some

9    helpful guidance on instructing the parties to accept waivers

10   of services since they already have counsel.  For any new

11   defendant, if to the extent they're new, not in this MDL

12   before, and located overseas, the order that we previously

13   received, and I believe it was from Judge Schneider early on in

14   this litigation, was that we just need to serve those

15   defendants once through the Hague if they're abroad and that

16   that will be deemed sufficient notice for them to be in this

17   case; and from then on, the electronic service that all the

18   parties have stipulated to should be sufficient.

19         JUDGE VANASKIE:  And is the order you're referring to,

20   is that Document 99?

21         MS. GOLDENBERG:  You're better at this than I am

22   already.  I can look it up.

23         JUDGE VANASKIE:  I'm actually looking at the defense

24   letter brief.

25         MS. GOLDENBERG:  I have it as well.  Let's see.  Yes,

1    it is Docket 99, you're right.

2         JUDGE VANASKIE:  Okay.  All right.  All right.  So

3    you're going to continue to meet and confer to see if you can

4    resolve this issue without a precedent in Document 99 in terms

5    of how best to proceed.  So right now I think that's all we can

6    determine at this point in time is that you're going to

7    continue to try to work this out in terms of the service issue;

8    and, if not, if you're unable to reach an agreement, and

9    defendants have asked for the opportunity to brief it, we'll

10   certainly grant them that opportunity, but we'll try to get

11   that done promptly, too, you know, with a quick deadline.

12   Hopefully, we won't have to.  I hope you can reach agreement.

13        MS. GOLDENBERG:  I hope so, too, Your Honor.

14        I'll just point out also that, you know, we didn't

15   actually have to file additional Master Complaints here.  We

16   could have simply amended the Valsartan Master Complaint but we

17   chose, for convenience sake, for all the parties, to, you know,

18   be nice and give them separate Master Complaints; but I would

19   hope that we wouldn't be penalized and required to take an

20   extra year to serve them again just because of the format of

21   the new pleadings.  But we'll continue to meet and confer and

22   circle back in two weeks if we have a dispute.

23        JUDGE VANASKIE:  All right.  Very well.

24        Anything else on this issue?

25        (No response.)

1          JUDGE VANASKIE:  Okay.  Thank you.

2          Item Number 11 on the agenda, the filing of amended

3     complaints, that's been taken care of.  I will be issuing an

4     order on that.  That was the email I received earlier this

5     week.

6          And it looks like perhaps the last item on the agenda

7     is the Mylan privilege log.  Who will be addressing this?

8          MR. DAVIS:  Yes, Your Honor, John Davis for the

9     plaintiff.

10          JUDGE VANASKIE:  Okay.

11          MR. DAVIS:  So I don't think there's much to talk

12     about today.  We're going to continue to meet and confer with

13     Mylan on their log.  I will say that there are issues we have

14     with them that are both systemic and specific to categories of

15     documents.

16          One issue I do think we need some guidance on today,

17     however, is, I had asked counsel for Mylan for a legend

18     identifying attorneys and whether they're in-house counsel or

19     outside counsel around Christmastime, and we just got something

20     from Mylan's counsel this morning.  Unfortunately, it's, in my

21     opinion, woefully inadequate.  There's a number of names on the

22     list.  About half of those names are just names.  There's no

23     information about who they are.  For the other half, it

24     identifies email addresses to note, I suppose, that they are

25     Mylan employees, but there's no reference to whether they're in

1    the legal department or whether they're in, for example, a

2    different department, like quality control, which, you know,

3    would have a substantial effect I think on whether, you know,

4    some of those communications are actually deemed privileged or

5    not.

6            As you're aware, Your Honor, in-house counsel wear two

7    hats.  They're both employees and counsel.  And so claims of

8    privilege regarding communications with in-house counsel

9    employees should be viewed a little more skeptically.  And

10   having that information as to, you know, where those people

11   reside within the company structure, as well as having, you

12   know, even some basic information, perhaps the other half of

13   the people on the list were literally just a name, I think

14   that's, you know, a major sticking point in us being able to

15   meet and confer because there are 2,500 entries or something --

16   2,200 entries, I believe, on Mylan's latest privilege log with

17   hundreds and hundreds of names on them and we've been unable,

18   until we got this legend, and I still think we're going to be

19   unable really to do anything after this legend that we got this

20   morning, to actually have a productive meet and confer when we

21   can't tell, you know, who the lawyers are, what their roles are

22   even, anything about them, perhaps just names on this list.

23           So, you know, I'd hate to, you know, spend another two

24   weeks just to come back to you on this legend point.  I think

25   we can really get to work if we got some guidance on -- on what

1    Mylan needs to tell us regarding the identity of the lawyers on

2    their log and their roles within the company.

3            JUDGE VANASKIE:  All right.  Who will address this

4    issue for Mylan?

5            MR. TRISCHLER:  Clem Trischler, Your Honor, for the

6    Mylan defendants.

7            JUDGE VANASKIE:  That's fine.

8            MR. TRISCHLER:  As I recall, the privilege log for

9    Mylan was produced on or around December 30, consistent with

10   the Court order that it be issued in this case and entered

11   about the same time as the privilege logs were produced for

12   every manufacturer defendant to this litigation.  Until, I want

13   to say Sunday of this week, about two days ago, the only issue

14   that I ever heard from the plaintiffs about the privilege log

15   was whether we could produce a legend to identify who the

16   lawyers are for Mylan to help the plaintiffs evaluate who was a

17   recipient, who was an author of a document, whether that person

18   was or was not a lawyer, and I agreed to do that.  And we

19   provided that log this morning, I believe.  And now the

20   plaintiffs are saying, well, now that you provided a log with

21   the names of the lawyers, that's not good enough; now you need

22   to tell us additional information.

23           We will meet and confer with them to do that, Judge.

24   But, you know, part of the problem here is, you know, an issue

25   that I think not only Mylan has seen but all the defendants

1  have seen throughout this litigation is that the plaintiffs use

2  these conferences to bypass the rules with respect to discovery

3  processes.  There's an order in this case that if there's an

4  issue with respect to a privileged document, there's a

5  procedure that's supposed to be followed.  And the plaintiffs

6  are simply bypassing it because they see a conference coming up

7  on Wednesday and say, well, let's have a -- you know, let's

8  have a meet and confer with Mylan over the weekend so we can

9  raise it with the Court, and that's not the way it's supposed

10  to work.  If there are issues with the identification of the

11  lawyers, I'll certainly talk to Mr. Davis about it and see if

12  we can work through those issues.

13          The first time the plaintiffs -- although they had the

14  log the end of December, the first time the plaintiffs

15  substantively raised any issue with any of the privileged

16  declarations that Mylan made was on Monday at five minutes

17  after midnight.  And there's an ESI protocol that says we have

18  30 days to respond to the 370 documents that they've asked us

19  about, and we will do that when we have a fair opportunity to

20  do it; but simply raising it without, you know, following the

21  protocol, without following the rules, without really

22  exhausting the meet and confer, I don't think is appropriate.

23          You know, Mr. Slater talked at the beginning of this

24  conference about how we have a lot of things to do, there's a

25  lot of moving parts to this litigation and when we constantly

1  raise issues where meet and confers haven't been exhausted,

2  it's counterproductive.  And that's really what we have here

3  with this log.

4         As I said, plaintiffs asked for the names of the

5  lawyers on the entry.  We provided that to them.  Now they have

6  other questions.  We'll work to address those.  We'll respond

7  to the items that they've questioned as far as whether they're

8  privileged or not and provide our response in the appropriate

9  time so that the Court can then address it; but, really, the

10  whole issue is premature, from my perspective.

11         MR. DAVIS:  Your Honor, may I respond to that briefly?

12         JUDGE VANASKIE:  Yes, you may.

13         MR. DAVIS:  This is John Davis, again, for the

14  plaintiff.

15         So, again, I said at the outset that we're continuing

16  to meet and confer with Mylan on our issues that are with the

17  privilege log documents themselves.  We have, as I said, we

18  have issues that are systemic and we've identified about 400

19  documents that we are meet and conferring on.  We're still

20  going to do that.

21         My issue is that I've been asking for this legend for

22  the better part of a month now, and then we get it, perhaps

23  coincidentally, the morning of this call, and then I hear, oh,

24  it's -- you know, we need to meet and confer about this more.

25  And we have depositions coming up, as Your Honor's aware, we've

 1    been talking a lot about the specific schedule and the

 2    compressed schedule and perhaps the need to, you know, at least

 3    push a few depositions back to April, as you've heard.  And I

 4    think that, you know, to at least get some guidance on this

 5    legend is -- would be helpful for our meet and confers with

 6    Mylan on the -- on the substantive privilege log itself.

 7            JUDGE VANASKIE:  John, what additional detail are you

 8    looking for on what you're calling the legend?

 9            MR. DAVIS:  Sure.  We'd asked --

10            JUDGE VANASKIE:  I am picturing --

11            MR. DAVIS:  Yes, Your Honor.  We had asked for this

12    legend in December identifying who the counsel are, whether

13    they're in-house counsel and their roles at the company, and

14    what we got this morning only lists names and email addresses

15    for about half the people on the list; and then it's just a

16    name for the other half of people, it's literally just a name.

17    So we have no idea who they are, whether they're -- you know,

18    perhaps they're outside counsel, I don't know because all I

19    have is literally just a name.

20            So I think what I would be asking for is for Mylan,

21    for the in-house people where they've identified internal email

22    addresses, to say whether they are part of Mylan's legal

23    department or whether they are part of a different part of the

24    company, whether they're like, for example, in quality control

25    or regulatory, because it's much more likely, in my opinion, at

 1    least, that if, you know, an email relates to, for example,

 2    what Mylan has described on a number of their privilege log

 3    entries as a privileged communication relating to, quote,

 4    quality control testing, which I have, you know, a lot of

 5    concerns about whether those kinds of documents can be

 6    privileged, I'm not sure what lawyers have to say about

 7    testing, for example, whether, you know, if that -- if that

 8    lawyer on that chain is part of the quality control department

 9    as opposed to the actual legal department within the company,

10    then, in my view, that makes it a lot more susceptible to

11    challenge because that in-house attorney is much more likely to

12    be acting not as an attorney on that communication.

13          As for the people that there are just names on, we

14    need more information to even understand who these people are.

15          JUDGE VANASKIE:  So, John, are you looking for where

16    they are in the organizational chart in terms of what

17    department they're placed in, are they just legal department?

18    I mean, if you get something that comes back and says legal

19    department, is that sufficient or do you need more?  I'm trying

20    to understand exactly what you're looking for.

21          MR. DAVIS:  Sure, yes.  I think that that would --

22    that would actually work, you know, for the in-house people,

23    you know, if they reside in the corporate structure in the

24    legal department, to say that; if they reside in, you know, I

25    threw out the example of quality, the QC department, quality

1  control, to say that; and for people who we just have names

2  for, at minimum, to provide email addresses for them or if

3  it's -- I'm assuming that probably a lot of those people are

4  outside counsel, what firm they are at.

5          JUDGE VANASKIE:  Yes.  Clem, what -- why can't that

6  information be produced?  Maybe you haven't had a chance to

7  confer on this but it's basic information, it doesn't seem like

8  it would be burdensome to produce.

9          MR. TRISCHLER:  Well, there's a lot of things that can

10  be produced.  I guess what I would say, Judge, is there's a lot

11  of things that can be produced that don't necessarily have to

12  be produced or should they be produced.  This is just an

13  example of, you know, my complaint and problem with the process

14  because we don't have a meaningful meet and confer.

15          When we talked on this issue on Sunday, January 24,

16  when we talked about the legend, what we talked about providing

17  was names and email addresses and that's what we provide, and

18  then today we hear now we don't want just names and email

19  addresses, we need to know what department they are in, what

20  role they provide, and for the hundreds of names that are on

21  there, basically doing an interrogatory, what to ask and you

22  need to tell us what each person does within the organization.

23  I don't think that's appropriate nor necessary for that level

24  of detail for a privilege log.

25          Obviously, if the Court asks me to and instructs me to

1    indicate whether the person is or is not employed within the

2    legal department, I'm going to do it; but I don't think that

3    level of detail is necessary or required.

4              JUDGE VANASKIE:  Well, I --

5              MR. SLATER:  Your Honor, it's Adam -- I apologize,

6    Judge.

7              JUDGE VANASKIE:  Go ahead.

8              MR. SLATER:  Your Honor, it's Adam Slater.

9              I've tried to stay out of this -- I've tried to stay

10   out of this but I thought maybe just it could be helpful sort

11   of from the outside looking in, because these discussions are

12   going on at different levels with the various defendants and

13   some of them, you know, cooperative and some, you know,

14   obviously, this issue is here.

15             In past litigations, I have found, and, in fact, in

16   *Benicar* we did this, we got what we called a cast of characters

17   from each defendant with regard to the people on the privilege

18   log, giving their position, their title and their department;

19   that way when someone looked at the list of names on the log,

20   you could look at the cast of characters, you'd know who they

21   are, where they fit into the organization.  It certainly

22   doesn't take much work to do that because they're all listed

23   already.

24             I would just suggest that across the board that would

25   be very helpful because we're going to be in a process of

1    privilege challenges that's going to need to be a meet and

2    confer process to try to not overburden Your Honor as the

3    depositions come forward because we're going to be looking to

4    get loads of privileged documents as depositions approach,

5    because it's in both sides' interests not to have these

6    privilege challenges extend past the person's deposition, and

7    then have an important document come out and then have to fall

8    within Judge Schneider's order that said if that happens, you

9    redepose.  We prefer to avoid that, too.  So if everybody could

10   provide that, I think across the board, that would be very

11   helpful to us.

12          MR. TRISCHLER:  Your Honor, this is Clem Trischler.

13          JUDGE VANASKIE:  Yes.

14          MR. TRISCHLER:  Sure.  Thank you.  I apologize for

15   cutting you off, Your Honor.

16          This is my -- I believe what Mr. Slater just proposed

17   and what the plaintiffs have now asked of Mylan for the first

18   time is overly burdensome.  We've talked about the fact that

19   the discovery in this case across multiple manufacturers has

20   been extremely, extremely broad.  It involved review -- it

21   required reviews of millions of -- literally millions and

22   millions of documents.  Out of those, we have identified, on

23   behalf of Mylan, I think a little more than 2,000 documents for

24   which we claim privilege.  And now what the plaintiffs are

25   asking is that we go through those 2,000 entries and we provide

 1    name, rank, serial number information for every recipient and

 2    every author of a document that's on that 2,200-item log, and

 3    that every manufacturer in the case do the exact same thing.  I

 4    submit, Your Honor, that that's extremely burdensome,

 5    particularly in the context where we're trying to get ready for

 6    depositions, where the plaintiffs complain that they haven't

 7    gotten documents soon enough, that they can't even get through

 8    the documents that they have, and now we're going to have to

 9    take -- it's not simple and it's not easy to produce all that

10    information that the plaintiffs are now asking for and, as I

11    said, every time -- and weren't asking for as recently as

12    Sunday.

13         JUDGE VANASKIE:  Adam, what was the cast-of-character

14    information that was produced in the *Benicar* litigation?

15         MR. SLATER:  The person's position, their title and

16    their department, which is obviously needed in order to

17    evaluate the claim of privilege across any documents to know

18    who were the recipients because that's obviously the

19    fundamental -- one of the fundamental questions.

20         JUDGE VANASKIE:  All right.  You know, I think that

21    that should be provided.  I do believe that information should

22    be provided.  It doesn't seem to me to be overly burdensome to

23    do.  I know some of you do but --

24         THE COURT REPORTER:  Excuse me, Your Honor.  You're

25    breaking up.

1          JUDGE VANASKIE:  That's basic information that should

2     be produced to enable a party to determine whether there's a

3     basis for challenging the assertion of privilege.

4          So I would require across the board that when there's

5     a privilege log, that information be provided, call it a

6     legend, that identifies those who were participants in the

7     communication and the department they work in and the title.

8          MR. GOLDBERG:  Your Honor?

9          JUDGE VANASKIE:  Yes.

10          MR. GOLDBERG:  Your Honor, I'm sorry to interrupt.

11     This is Seth Goldberg.  I do think Your Honor is missing a

12     piece of history, which is that this issue was explicitly

13     addressed when we negotiated the ESI protocol.

14          JUDGE VANASKIE:  Okay.

15          MR. GOLDBERG:  And it wasn't included, this request.

16     And I'll certainly invite my Duane, Morris colleagues who would

17     like to speak up on this issue to do so, but the parties have

18     been preparing logs now based on an ESI protocol that was

19     issued in 2019, and to now re-litigate the issue is really

20     going to result in an unfair burden on defendants to redo work

21     that they've been doing based on the current ESI protocol

22     that's been in existence for more than a year.

23          JUDGE VANASKIE:  Okay.  Thank you for that.

24          What if we were to limit it, in this instance I'm just

25     dealing with the Mylan documents.  I think there are about 370

1    documents that are in question.  Is that accurate, John?

2          MR. DAVIS:  Well, it's -- that's our first, you know,

3    set that we're meet and conferring on.  As I mentioned, Your

4    Honor, we have issues that are systemic with Mylan's privilege

5    log as well.  The descriptive entries are really cut and paste

6    over and over again; but we're -- and that's an issue we've

7    raised with Mylan and we're continuing to meet and confer

8    about.

9          The issue with the -- with the legend and, you know,

10   the cast of characters, so to speak, is that, you know, it's

11   not just an issue for those 370 documents; this is an issue

12   across the board.  The defendants chose to withhold on

13   privilege ground so many documents.  I mean, Mylan alone has

14   2,200 documents on their latest privilege log given to us about

15   a week and a half or two weeks ago, and, you know, it's their

16   burden to demonstrate privilege.  And I think that it's

17   entirely appropriate for us to -- you know, they've made this

18   work for themselves by designating all these documents as

19   privileged and having hundreds and hundreds of names on their

20   list.  And, you know, we can't evaluate adequately for either

21   the 400 documents or 370 or whatever or for the 2,200 documents

22   on Mylan's entire list whether they're privileged without

23   understanding who is on those communications that provides the

24   basis for privilege.  And I'm sure that's an issue for the

25   other defendants as well.

1          JUDGE VANASKIE:  Did the ESI protocol require that

2     type of information be produced when asserting the privilege?

3          MR. SLATER:  Your Honor, it's Adam Slater.

4          That was not addressed one way or the other.  The ESI

5     protocol basically just said a privilege log will be provided

6     and the understanding was that it would be an appropriate

7     privilege log.  We never litigated the contents of it.  We

8     assumed, as plaintiffs, that the defense would comply with the

9     federal rules and I believe that was Judge Schneider's

10    expectation, that we would get a fulsome description of who the

11    people are that are on the document, who received it, either

12    directly or by cc, and a fulsome discussion of the content of

13    the document so that a meaningful evaluation could be made for

14    purposes of a privilege challenge.  So it was not addressed in

15    any specificity as Mr. Goldberg suggested.  It was left just do

16    a proper privilege log.

17         MR. PAREKH:  Your Honor, this is Behram Parekh.  I was

18    the one who negotiated the ESI protocol with defendants at the

19    time and I think what Mr. Goldberg is doing is confusing two

20    things.  The ESI privilege log -- the protocol for the ESI

21    privilege log provides -- it says they need to provide a log in

22    compliance with federal law.  It also says in addition to

23    whatever is needed, there needs to be an X for the specific

24    metadata fields that are listed in the ESI protocol providing

25    additional information about documents that are being withheld.

1  That list of metadata fields does not obviate defendants'

2  obligation to provide a privilege log that complies with the

3  federal rules.  That is just additional information that they

4  are required to produce for electronically stored information.

5  And to say that because there's that list of additional

6  metadata that that is all they are required to produce does not

7  comply with the actual language in the privilege log, which is

8  Page 16, Subparagraph 5(A), of the ESI protocol which is Docket

9  entry 127.

10       JUDGE VANASKIE:  Okay.  So, John, what you're

11  essentially saying is that, at least as to Mylan, you think the

12  privilege log is inadequate.

13       MR. DAVIS:  Yes, Your Honor.  I mean, as Behram -- Mr.

14  Parekh was saying, you know, the fact that they've had to

15  produce metadata such as, you know, From, To, CC fields and

16  custodian fields, those obviously don't say who's a lawyer and

17  who's not a lawyer, and what their role is with the company.

18  That's the basis for privilege is, for attorney-client

19  communication privilege, at least, is that there's a lawyer on

20  it and that lawyer is providing legal advice or legal advice is

21  being sought from them; and if you don't even know who the

22  lawyers are or whether they're acting as in-house employees or

23  in-house lawyers, there's no way to really evaluate the claim

24  of privilege, which, again, I emphasize, Your Honor, is their

25  burden to establish.

1          JUDGE VANASKIE:  Right.

2          MR. TRISCHLER:  Your Honor, this is Clem Trischler.

3          JUDGE VANASKIE:  Yes.

4          MR. TRISCHLER:  I'll just close by saying just simply

5     because the plaintiffs say it's so doesn't make it so.  When

6     they sit here and say Mylan's privilege log is inadequate under

7     the federal rules, I disagree.  We have provided information

8     regarding the names of the recipients of the documents, the

9     names of the authors of the documents and a description of the

10    documents with sufficient clarity and detail that we believe

11    anyone can make a fair determination as to whether it's

12    privileged.  They disagree, obviously, but that doesn't make it

13    so.

14          JUDGE VANASKIE:  Right.

15          MR. TRISCHLER:  And there's a process that's supposed

16    to be followed that was agreed upon months ago, over a year

17    ago, and when it's convenient to the plaintiffs, they want to

18    ignore it and simply come in and ask the Court to enter an

19    order without the log ever being reviewed, without the

20    supplemental information ever being considered, and asking this

21    Court to impose a duty on Mylan that hasn't been imposed on any

22    other party to this litigation, and then unilaterally changing

23    protocols to say, well, yeah, that's right, it wouldn't be fair

24    to impose it on Mylan so let's just now impose it on all the

25    defendants.  That's not fair and that's not productive and

1    that's not going to get us to the point of trying to move this

2    case forward to the deposition process, which is what we're

3    supposed to be on the eve of.

4         What I've heard during this conference today is, you

5    know, plaintiffs need more time to review documents, they want

6    privilege logs rewritten that is going -- that if we provided

7    the name, rank and serial number information for every person

8    on the log that they've requested, it's going to take a month

9    to do that, Judge.  And -- and, you know, I submit the

10   plaintiffs can't have their cake and eat it too.  If they want

11   that, then, again, I'll say the same thing I said before, then

12   the deposition process needs to be adjourned.  We need to spend

13   time to get the document production issue in order before we

14   move on to something else or else all we're going to be doing

15   is -- is creating more issues down the road because you can see

16   where this is headed.  We're going to be forced into

17   depositions in the next 30 to 45 days and the plaintiffs are

18   going to say in every case, we didn't have time to get through

19   these documents, even though they were produced in time and in

20   compliance with the Court's order, and so we want to depose all

21   these witnesses again.  I haven't gotten -- we didn't get

22   through any of the privileged documents and we've got to go

23   through all that, and we're just going -- it's going to be

24   endless litigation over document production issues and requests

25   to redo depositions, and I don't think it can go -- I don't

1   think that is the most efficient process for this litigation.

2        So either we're going to continue to battle on these

3   document production issues, and then if that's the case, let's

4   do it, let's get it resolved in the next 60 days.  There's no

5   trials happening in 2021 in the District of New Jersey or

6   probably anywhere in the United States.  So let's adjourn the

7   depositions, let's get these issues resolved that the

8   plaintiffs say are real issues.  Let's give this Court a chance

9   to really look at them.  But, you know, to just go full-speed

10  ahead with depositions and then let them clutter the record

11  with document production claims just to lay a foundation so

12  that they can come back later and say we told you, Judge, now

13  let me take all these witnesses a second time, that's not fair,

14  it's not appropriate.  And I realize I'm getting off the log

15  issue but it's all related, Your Honor.

16        JUDGE VANASKIE:  Yes.

17        MR. TRISCHLER:  And it's why I don't think it's ripe

18  to be moving into the depositions if the plaintiffs are going

19  to continue to raise all these issues with respect to privilege

20  logs and for timing and production.

21        JUDGE VANASKIE:  Well, I don't have an adequate basis

22  right now for me to make a determination as to adequacy of

23  privilege logs, I haven't even seen one, and whether it has the

24  requisite information in it.  I'll look at the ESI protocol in

25  terms of what it provides with respect to how you present

1    challenges to privilege assertions, if it does or if it

2    doesn't.  If it doesn't, then the plaintiffs are free to

3    challenge the adequacy of the privilege log or whether

4    particular documents have not been described with sufficient

5    particularity to warrant attorney-client privilege protection

6    or work-product protection.

7            So I really, you know -- John, you were looking for

8    guidance.  I can't give you guidance in a vacuum like this.  I

9    can say, though, that if the logs prove to be inadequate,

10   there's a remedy for that; and that remedy can be either the

11   privilege is waived or you've got to go back and redo your log.

12   But it has to be presented to me in an appropriate way and

13   that's probably by way of a motion.  It's not presented to me

14   in the appropriate way at this time for me to make that

15   determination.  And I don't have a sense, as I said, I haven't

16   even looked at what has been compiled as a privilege log, to

17   make an initial -- an initial determination on that.  So that's

18   about -- I'm sorry I can't give you guidance, I'd love to give

19   you guidance, but I encourage you to meet and confer on this

20   issue and see what you can resolve; but if you can't resolve

21   anything, then you're going to have to file the appropriate

22   motion.

23           And we're not going to defer depositions; they're

24   going to move forward.  And if the consequence of an

25   over-zealous identification of a document's claim to be

 1  privileged proves to be the case, it was over-zealous and

 2  documents should not have been withheld, well, that's the

 3  consequence.  The consequence may have to be redeposition but

 4  that's the consequence of not having properly asserted the

 5  privilege.  And so we're just going to move forward from here

 6  along those lines.

 7        Anything else in terms of the agenda for our

 8  discussion before we try Judge Kugler?

 9        (No response.)

10        JUDGE VANASKIE:  All right.  Not hearing anything, I'm

11  going to put you on hold for a second and see if I can add

12  Judge Kugler to this call.  Hold on.

13        (Brief recess taken at 12:00 p.m.)

14        JUDGE VANASKIE:  Counsel, what I'm going to do is drop

15  off the call for now, get Judge Kugler on and then rejoin.  I

16  think that's the only way I can do this.  So I'll be back to

17  you in a couple of minutes.  Thank you.

18        (Brief recess taken at 12:01 p.m.)

19        JUDGE VANASKIE:  Hi.  Tom Vanaskie.  Good afternoon,

20  Judge Kugler.

21        JUDGE KUGLER:  Hello.  Good afternoon, everybody.  I

22  hope everyone's well.

23        MR. SLATER:  Hello, Judge.

24        MS. GOLDENBERG:  Good afternoon.

25        (All respond good afternoon.)

1          JUDGE KUGLER:  Is Karen Friedlander on the line?

2          THE COURT REPORTER:  No, Judge.  Camille Pedano is on

3     the line.

4          JUDGE KUGLER:  Hello.  How are you?

5          THE COURT REPORTER:  I'm very well, Judge.  Thank you.

6     And yourself?

7          JUDGE KUGLER:  I'm fine.

8          Are they speaking clearly enough today?

9          THE COURT REPORTER:  Yes, they are, Judge.  Thank you

10    very much.

11         JUDGE KUGLER:  Let's not hesitate to tell them when

12    they aren't, okay?

13         THE COURT REPORTER:  Thank you.

14         JUDGE KUGLER:  All right.  A couple of housekeeping

15    items first.

16         I expect to file today or tomorrow Opinion Number 4

17    and Order Number 4 on the defendants' motions to dismiss.

18    Pretty much a repeat of the earlier ones, there's some issues

19    for the plaintiffs, but mostly their claims will survive these

20    motions.

21         Another thing I want to talk to you about is I want to

22    remind the defense counsel when you submit briefs and letters,

23    please double-space them.  It makes it a heck of a lot easier

24    to get through them when you do that.  And also, could you

25    please, when you send in the letters before these conferences,

 1  put at the end the things -- the dismissals and things like

 2  that that you need me to do.  It's just easier to keep track of

 3  an agenda when we do it that way.

 4       Okay.  Let's talk about, I think in defense counsel's

 5  letter of January 26, Ms. Cohen, you had a series of cases on

 6  the list for failure to file sufficient Plaintiff Fact Sheets.

 7  I apologize that we missed the previous orders of dismissal.

 8  That's my fault, we didn't get them.  But I understand there's

 9  four of them, there's Louis Fisher, Dorothy Battle, Alcus

10  Gunter, G-U-N-T-E-R, and Theodore Keller.

11       I understand that counsel for Louis Fisher has

12  contacted us and is filing a motion to set aside that dismissal

13  claiming that he never got notice of the order to show cause,

14  et cetera, et cetera, but stating that they were going to

15  contact defense counsel, tell you what was going on.  Has that

16  happened?

17       MS. COHEN:  Good afternoon, Your Honor.  This is Lori

18  Cohen with Greenberg, Traurig.  Mr. Harkins from our team is

19  going to address this with you --

20       JUDGE KUGLER:  Okay.

21       MS. COHEN:  -- so I'll let him chime in.  Thank you.

22       JUDGE KUGLER:  Good.  Thank you.

23       Mr. Harkins.

24       MR. HARKINS:  Good afternoon, Your Honor.  This is

25  Steve Harkins with Greenberg, Traurig for the Teva defendants

1    and the defense group.

2          We are unaware of Mr. Fisher or his counsel, better,

3    reaching out to the defense group on this issue.  We could

4    raise this on our meet and confer with plaintiffs next week

5    when all counsel are invited to attend.  We notified plaintiffs

6    that we would be addressing these four cases which remain

7    impertinently not dismissed after the November conference.  I

8    am unaware, on behalf of the defendants, of any contact by Mr.

9    Fisher or his counsel to the defense group.  So I apologize for

10   being unable to respond better but, you know, we're not aware

11   of any communication from him to us.

12          JUDGE KUGLER:  Well, that's fine.  Why don't we give

13   them a couple more days to see if they file a motion; if not,

14   we'll just do a dismissal order.  Like I said, it's my fault

15   that we missed these four.  The other three we'll do an order

16   today, the Battle, Gunter and Keller cases we'll do the order

17   of dismissal today.  Okay?

18          MS. SMITH:  Excuse me, Judge.  This is Loretta.

19          Mr. Fisher's counsel has already filed a motion, and I

20   was going to respond to it today.

21          So, Mr. Harkins, are you the person on the defendants'

22   Executive Committee or counsel that responds or is responsible

23   for these lists?  Because, otherwise, I'd like to email you

24   directly about this.

25          MR. HARKINS:  Yes, you can reach out directly to me or

```
 1   any of the rest of the Executive Committee members at

 2   Greenberg, Traurig, Ms. Cohen or Ms. Lockard, and we'll be

 3   happy to coordinate that.

 4          MS. SMITH:  Thanks.

 5          JUDGE KUGLER:  Okay.  Thank you.

 6          MS. GOLDENBERG:  Your Honor, this is Marlene

 7   Goldenberg for the plaintiffs.  I did just want to note that I

 8   am responsible for coordinating these meet-and-confer calls on

 9   the plaintiffs' side.  I was unaware that Mr. Fisher's counsel

10   had an issue with the dismissal and so, candidly, I did not

11   email him or let him know that there was going to be an issue

12   today because I didn't realize there was one.  So I appreciate

13   the Court granting them a few additional days to deal with

14   this, and I will make sure to reach out to his counsel and --

15   the client's counsel and let them know that this is something

16   they need to deal with right away.

17          JUDGE KUGLER:  Well, maybe you can get the plaintiff's

18   counsel together with Mr. Harkins or somebody else on behalf of

19   the defense and they can talk and figure out what needs to be

20   done, if anything.  Okay?

21          MS. GOLDENBERG:  I will be happy to facilitate that.

22          JUDGE KUGLER:  Thank you.

23          All right.  There's a number of other show-cause

24   orders that were returnable today.  According to Ms. Cohen's

25   letter, Mr. Harkins, Smoot, S-M-O-O-T, Aikens, A-I-K-E-N-S, and
```

```
 1   Napolitano matters can be withdrawn, correct?
 2            MR. HARKINS:  Yes, Your Honor, that's correct.
 3            JUDGE KUGLER:  And you have also resolved the Schiano,
 4   S-C-H-I-A-N-O, and Ware, W-A-R-E, matters, so those orders to
 5   show cause can be dismissed, correct?
 6            MR. HARKINS:  Yes, Your Honor.
 7            JUDGE KUGLER:  And the Sharon Lomax case, L-O-M-A-X,
 8   that has been dismissed so we can -- we can dismiss the order
 9   to show cause on that one, correct?
10            MR. HARKINS:  Yes, Your Honor.
11            JUDGE KUGLER:  And that leaves four.  We still have
12   four or have there been any developments since you filed this
13   letter yesterday?
14            MR. HARKINS:  Your Honor, we do have one update.  The
15   Troyce, T-R-O-Y-C-E, case, the parties are working to correct
16   so we can now remove our request to show cause with respect to
17   that case.  We continue to request orders to show cause for
18   Hebert, Newcombe and Williams.
19            JUDGE KUGLER:  All right.  The Hebert matter, do
20   plaintiffs have anything they want to say about that?
21            MS. GOLDENBERG:  Your Honor, this is Marlene
22   Goldenberg again.
23            MR. DUNN:  Your Honor, this is --
24            MS. GOLDENBERG:  Oh, I'm sorry.  Go ahead.
25            MR. DUNN:  -- Attorney Tom Dunn, I work for Damon
```

1    Baldone, and I think the name you're saying is Hebert.  Is it

2    H-E-B-E-R-T?

3              JUDGE KUGLER:  Yes, I'm sorry, I'm not from down

4    there.  So it's Hebert.

5              MR. DUNN:  Yeah, I know.  It's pronounced Hebert.

6              Your Honor, we have filed an amended Plaintiffs' Fact

7    Sheet on December the 29th and I think that we brought

8    everything up to date on that fact sheet.  I was given a list

9    of deficiencies and I went through every page and tried to

10   resolve every question the defense -- the defendants had on it.

11             JUDGE KUGLER:  Well, did -- Mr. Harkins, did you get

12   that?

13             MR. HARKINS:  Your Honor, we did receive the PFS that

14   was filed on December 29th.  By our review, we are still

15   missing records and authorizations that are necessary for the

16   PFS to be substantially complete.  We included the case as

17   still having outstanding deficiencies on our meet-and-confer

18   list which was sent to plaintiffs for the January meet and

19   confer, and then we were attempting to be available to discuss

20   that case, to the extent necessary, on our meet-and-confer call

21   last week.

22             I spoke with counsel for the defense who's been taking

23   lead on this case and as far as we are aware, this is the first

24   time that anything with respect to this plaintiff has been

25   presented to defendants.  We've not had any EL communications,

1    we've not been contacted with respect to the ongoing

2    deficiencies.  I appreciate -- and, you know, again, we're

3    happy to continue to work with defendants -- or, I'm sorry,

4    plaintiffs to the extent possible to cure these deficiencies,

5    but this case has been listed on numerous agendas leading up to

6    this and this is the first that we're being provided anything

7    other than the still being substantially incomplete PFS records

8    and, again, lacking authorizations.

9            JUDGE KUGLER:  Well, I am going to go ahead and grant

10   the Motion to Dismiss in this matter.  Plaintiff's counsel can

11   always move quickly to set that aside when you think you've

12   completed the PFS.

13           MR. DUNN:  Your Honor, we've admitted a PFS five times

14   since September and in August, two times in December, and just

15   this morning there was only one correction made, that was the

16   spelling of a city that was on the PFS.

17           I contacted Nathan Reeder on January the 22nd when he

18   told me he was putting this on the docket for today, and I told

19   him that I've attempted to answer every entry on the PFS.  If

20   he would let me know exactly what he considered a deficiency,

21   I'll cure that deficiency.  I don't see anything that we can

22   answer on there, anything that's not been answered.

23           JUDGE KUGLER:  Well, apparently, you have --

24           MR. DUNN:  That he -- that --

25           JUDGE KUGLER:  Go ahead.

```
 1          MR. DUNN:  Go ahead, Judge.

 2          JUDGE KUGLER:  No.  Go ahead.

 3          MR. DUNN:  I was going to tell you that that email --

 4     that email went out on January 22nd asking for any deficiencies

 5     that they can tell me about.  I didn't get a reply back.

 6          MR. HARKINS:  Your Honor, this is Steve Harkins on

 7     behalf of the defendants.

 8          I would ask that we reserve entering an order on this

 9     case at least so that we can communicate and confirm if that,

10     in fact, happened.  To the extent that counsel reached out to

11     ask about curing these deficiencies, we're happy to postpone

12     this for a month; and if it is a case that would be appropriate

13     for including in the set of orders to be entered today, we can

14     certainly communicate that with the Court.  Again, if

15     plaintiffs' counsel -- and, again, I'm personally unaware of

16     this, but if that, in fact, happened, we can certainly defer

17     this case for another month.

18          JUDGE KUGLER:  All right.  We'll put this on the

19     February order to show cause list for the time being and maybe

20     you can work this out.  Okay?

21          MR. DUNN:  All right, Judge.

22          MR. HARKINS:  Thank you, Your Honor.

23          JUDGE KUGLER:  All right.  That takes us to Newcombe,

24     N-E-W-C-O-M-B-E, any plaintiff want to talk about that?

25          MR. NIGH:  Your Honor, this is Daniel Nigh for the
```

1    plaintiffs.

2         I don't have anything to add here.  I think it's, you

3    know, it's been listed multiple times and it's subject for

4    dismissal.

5         The only housekeeping item I did want to say is that

6    this same case is listed further below, it looks like it's Page

7    10 of the agenda, and it's listed as a first listing case.  I

8    think it just needs to be removed from there on the agenda.  It

9    has been listed multiple times and plaintiff just failed to

10   give us any response on this PFS.  So we don't have anything

11   further to say.

12        JUDGE KUGLER:  I see that it's listed again.  How

13   about that.  And it's the same docket number.  I've had cases

14   in the past where people file multiple lawsuits with multiple

15   lawyers, but this is apparently not that case.

16        Anyway, we'll grant the Motion to Dismiss the Newcombe

17   matter, and it's Number 4 on the first listing on Page 9, so

18   we'll take it off of that first listing.  So that's granted.

19   That will be dismissed.

20        Naomi Williams, any plaintiff counsel want to speak

21   about that?

22        MR. NIGH:  Your Honor, this is Daniel Nigh.  I

23   represent this client as well, and this client doesn't wish to

24   proceed further.  So I think this one's subject for dismissal

25   as well.

 1          JUDGE KUGLER:  That will be dismissed.  Okay.

 2          Then the next series of cases, we have four that the

 3  defendants are seeking to add to the order to show cause list

 4  in February.  Defendants have any changes on any of these?

 5          MR. HARKINS:  No, Your Honor.  No updates on these

 6  cases.  We are --

 7          THE COURT REPORTER:  Excuse me.  I'm sorry, who's

 8  speaking?  I'm sorry, you're going to have to repeat that,

 9  there was too much interference.  Go ahead.

10          MR. HARKINS:  Sorry.  It sounded like there was

11  someone else on.

12          This is Steve Harkins with Greenberg, Traurig for the

13  Teva defendants and the defense group.

14          We are still requesting orders to show cause

15  returnable in February for all four of these cases.

16          JUDGE KUGLER:  Any objection from the plaintiffs?

17          (No response.)

18          JUDGE KUGLER:  All right, these four, Delgato

19  Riffenburg D-E-L-G-A-T-O  R-I-F-F-E-N-B-U-R-G, Babin,

20  B-A-B-I-N, Hill, H-I-L-L, and Trowbridge, T-R-O-W-B-R-I-D-G-E,

21  will be listed on the February order to show cause list.

22          Next group are first listing cases.  There are nine of

23  those.  Any of those need to be removed at this point, Mr.

24  Harkins?

25          MR. HARKINS:  No updates, Your Honor.  Though we will

1    make sure to remove the duplicate case, I believe that was just

2    an oversight on our part, going forward.

3            JUDGE KUGLER:  All right.  Any objection from any

4    plaintiffs as to putting this on a second listing, any of these

5    cases?

6            (No response.)

7            JUDGE KUGLER:  All right.  Patterson,

8    P-A-T-T-E-R-S-O-N, Hodan, H-O-D-A-N, Gibson, Martinez, Stewart,

9    S-T-E-W-A-R-T, Betz, B-E-T-Z, Medrano, M-E-D-R-A-N-O, Hudson

10   and Keller will go to a second listing.

11           All right.  That leaves the first listing, failure to

12   file the Plaintiffs' Fact Statement.  There are six listed but

13   we are going to remove the Newcombe one, so there are five

14   left.  Any updates on those?

15           MR. HARKINS:  No updates, Your Honor.

16           JUDGE KUGLER:  Any objection from the plaintiffs to

17   moving this to a second listing?

18           (No response.)

19           JUDGE KUGLER:  All right.  Motl, M-O-T-L, Greenleaf,

20   Jackson, Thompson, and Futch, F-U-T-C-H, will all be listed

21   next month for a second listing if not resolved by that time.

22           All right.  Now, I'm not sure that any more of these

23   issues that are raised in your letters from yesterday need to

24   be resolved by me.  Is there any other issues you want me to

25   address at this time, any side?  We'll start with plaintiffs.

1          MR. SLATER:  Hello, Your Honor, Adam Slater.  I don't

2    think we have any other issues for you today, Your Honor.

3          JUDGE KUGLER:  How about defense counsel?

4          MS. LOCKARD:  Hi, Your Honor, Victoria Lockard.

5          I just want to address one issue that plaintiffs'

6    counsel and me have been working on with respect to the

7    bellwether plaintiffs.  And Mr. Daniel Nigh I think is leading

8    this for plaintiffs.  I don't know if he anticipates to speak

9    up on this.  But what has occurred, pursuant to Your Honor's

10   instructions to meet and confer over the bellwether pool

11   process, is that parties have met and conferred, we have agreed

12   to that process and we have actually both exchanged bellwether

13   plaintiff picks for the personal injury actions which resulted

14   in a potential trial pool of 28 plaintiffs.

15         So Mr. Nigh and I are working on meet-and-confer

16   conferences to hammer out some of the details with respect to

17   that process and we anticipate submitting an order to Your

18   Honor very soon on those issues that would memorialize the 28

19   picks that were agreed upon and -- and what that means for the

20   case.

21         We also intend, pursuant to the Court's prior

22   scheduling order, I think we're obligated to take ten of the

23   bellwether plaintiffs' depositions by April 1st, and so we're

24   in position to do that, so we will proceed with those

25   depositions in March.

```
 1              And I'll ask Mr. Nigh if he has anything further to
 2    add to that?
 3              MR. NIGH:  No, I think that's a good update.  This is
 4    Daniel Nigh for the plaintiffs.  I think that's a good update.
 5    I don't have anything else to add, except for I will say that
 6    we were able to work together pursuant to Your Honor's request
 7    at the end of November, and we were able to work together on a
 8    process that we would be able to pick -- or make picks on
 9    behalf of plaintiffs and make picks on behalf of defendants and
10    now we have our pool of 28 cases, and we also should be in a
11    position to proceed forward on the first ten bellwether
12    plaintiffs' depositions in March, and we're working on that
13    issue as well.  That's all.
14              JUDGE KUGLER:  All right.  I also note in Ms. Cohen's
15    letter the state court coordination order, and I've read
16    through it.  What do you intend to do with that?  How are you
17    going to proceed with that?
18              MR. GOLDBERG:  Your Honor, this is Seth Goldberg on
19    behalf of the defendants.
20              At this point, we have raised the issue, we'd like to
21    meet and confer with plaintiffs about it.  And we discussed
22    with Judge Vanaskie that really there's not an issue for the
23    Court to resolve today on this; but the intention is to have
24    this Court enter the joint coordination order which would
25    prioritize discovery in the MDL over discovery in any state
```

1    court actions that might proceed to that point.  And the way it

2    would work would be that a judge in a state court action would

3    enter -- would enter the order as well, if that judge deemed it

4    appropriate.  But we can come back to Your Honor in February

5    once we've met with plaintiffs on this issue.

6          JUDGE KUGLER:  Okay.  That's fine.  We'll see -- we'll

7    see the kind of reception you get in the state court on this.

8    I mean, I'm receptive to it, obviously.  There's no reason you

9    should be duplicating discovery efforts between here and

10   various state courts around the country.  So we'll go from

11   there.

12         All right.  Anything else defense counsel would like

13   to discuss today?

14         MR. GOLDBERG:  I don't believe so, Your Honor.

15         JUDGE KUGLER:  Well, thank you very much, everybody.

16   Stay safe, stay well, and we will talk to you in February.

17         (The proceedings concluded at 12:24 p.m.)

18          -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

19          I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter.

21

22   */S/ Camille Pedano, RMR, CRR, CCR, CRC, RPR*
     *Court Reporter/Transcriber*

23

24   *01/28/2021*
     *Date*

25

## /

/S [1] - 94:22

## 0

01/28/2021 [1] - 94:24
07068 [1] - 1:15
08101 [1] - 1:8

## 1

1 [6] - 34:6, 35:12, 41:15, 41:16, 41:18
10 [2] - 29:24, 89:7
103 [1] - 1:14
10:00 [2] - 1:9, 4:3
11 [1] - 61:2
11/24 [1] - 34:10
12 [5] - 8:15, 15:14, 15:15, 37:10, 51:2
12-hour [2] - 31:5, 32:5
127 [1] - 75:9
12:00 [1] - 80:13
12:01 [1] - 80:18
12:24 [1] - 94:17
13 [2] - 30:4, 33:1
15 [2] - 8:15, 30:3
15219 [1] - 2:23
15th [2] - 36:20, 53:10
16 [1] - 75:8
162 [1] - 2:12
1638 [1] - 2:9
16th [1] - 31:3
17th [6] - 2:18, 33:5, 33:14, 35:13, 36:12, 36:17
1835 [1] - 1:18
19-md-02875-RBK-JS [1] - 1:4
19103 [2] - 1:18, 2:19
19422 [1] - 3:8
1st [3] - 34:19, 92:23

## 2

2 [1] - 7:10
2,000 [2] - 70:23, 70:25
2,200 [3] - 62:16, 73:14, 73:21
2,200-item [1] - 71:2
2,500 [1] - 62:15
2019 [1] - 72:19
2020 [1] - 31:2
2021 [2] - 1:8, 78:5
2029 [1] - 3:14
2150 [1] - 2:15
220 [1] - 2:6
22nd [2] - 87:17, 88:4
24 [1] - 68:15

## 3

24th [1] - 34:4
2500 [1] - 3:4
26 [1] - 82:5
27 [1] - 1:8
2705 [1] - 2:6
28 [4] - 6:20, 92:14, 92:18, 93:10
2800 [1] - 3:11
2900 [1] - 1:18
29th [2] - 86:7, 86:14

## 3

3 [2] - 9:11, 21:12
30 [6] - 2:18, 19:8, 23:4, 63:9, 64:18, 77:17
30(b)(6 [4] - 33:4, 35:15, 43:2, 45:19
300 [1] - 3:14
30305 [1] - 3:4
316 [1] - 2:3
32502 [1] - 2:4
3333 [1] - 3:4
370 [4] - 64:18, 72:25, 73:11, 73:21
38th [1] - 2:22

## 4

4 [4] - 21:15, 81:16, 81:17, 89:17
400 [3] - 49:3, 65:18, 73:21
45 [1] - 77:17
450 [1] - 3:8
45202 [1] - 3:12
4th [1] - 1:7

## 5

5 [2] - 6:5, 29:16
5(A [1] - 75:8
50 [1] - 50:13
55402 [1] - 2:16
5th [5] - 30:5, 30:8, 34:24, 36:7, 41:7

## 6

6 [1] - 29:18, 34:16
60 [2] - 50:23, 78:4
600 [2] - 2:3, 3:11
609-774-1494 [1] - 1:24

## 7

7 [4] - 40:11, 40:12, 40:13, 49:10
70 [1] - 48:2
701 [1] - 1:21
70130 [1] - 1:21

## 7

70364 [1] - 2:13
75 [2] - 33:19, 54:11
786 [1] - 6:4
78746 [1] - 2:7
7:00 [1] - 39:17

## 8

80 [3] - 48:2, 49:4, 54:10
800 [1] - 2:15
8th [7] - 30:8, 30:14, 33:1, 33:5, 33:14, 36:10, 56:17

## 9

9 [1] - 89:17
90067 [1] - 3:15
90277 [1] - 2:10
99 [3] - 59:20, 60:1, 60:4

## A

a.m [2] - 1:9, 4:3
abide [1] - 48:1
ability [5] - 13:13, 13:18, 13:23, 15:19, 43:18
able [20] - 7:21, 12:19, 13:13, 15:19, 15:25, 43:7, 44:20, 45:21, 46:6, 47:12, 47:21, 48:6, 52:21, 57:17, 58:9, 62:14, 93:6, 93:7, 93:8
above-entitled [1] - 94:20
abroad [1] - 59:15
absent [1] - 59:5
absolutely [3] - 21:20, 47:11, 50:10
accept [1] - 35:6, 35:23, 59:9
accepted [1] - 36:9
accommodate [3] - 34:1, 34:2, 46:3
accomplish [2] - 36:22, 36:24
accomplished [1] - 22:2
accordance [1] - 58:20
according [1] - 84:24
accurate [2] - 38:3, 73:1
acknowledged [1] - 38:6
acknowledging [1] - 36:13
Actavis [2] - 3:5, 3:6

acting [2] - 67:12, 75:22
action [2] - 18:19, 94:2
ACTION [1] - 1:3
actions [3] - 7:20, 92:13, 94:1
active [1] - 21:24
actual [2] - 67:9, 75:7
Adam [33] - 4:13, 8:4, 12:7, 14:3, 15:2, 15:6, 17:8, 18:2, 18:16, 18:25, 19:11, 20:7, 23:17, 23:22, 26:1, 27:9, 28:11, 28:20, 28:25, 36:21, 36:24, 40:24, 41:23, 42:15, 44:20, 45:24, 46:9, 46:17, 69:5, 69:8, 71:13, 74:3, 92:1
ADAM [1] - 1:14
add [1] - 16:9, 19:11, 33:15, 33:20, 50:8, 56:25, 80:11, 89:2, 90:3, 93:2, 93:5
add-on [1] - 33:20
adding [4] - 14:25, 33:6, 33:17, 33:23
addition [2] - 54:20, 74:22
additional [18] - 17:10, 33:6, 33:13, 35:12, 36:11, 36:17, 43:4, 45:14, 49:19, 55:20, 60:15, 63:22, 66:7, 74:25, 75:3, 75:5, 84:13
address [25] - 6:25, 12:5, 12:23, 13:12, 14:24, 15:14, 19:14, 20:25, 22:12, 22:15, 25:14, 42:1, 44:12, 46:1, 46:12, 47:5, 52:1, 52:7, 57:10, 63:3, 65:6, 65:9, 82:19, 91:25, 92:5
addressed [6] - 13:15, 15:21, 46:12, 72:13, 74:4, 74:14
addresses [10] - 8:7, 28:18, 29:2, 29:4, 61:24, 66:14, 66:22, 68:2, 68:17, 68:19
addressing [9] - 6:10, 12:22, 29:20, 48:17, 52:5, 57:5, 61:7, 83:6
adequacy [2] - 78:22, 79:3

adequate [2] - 59:4, 78:21
adequately [2] - 55:18, 73:20
adjourn [1] - 78:6
adjourned [1] - 77:12
administratively [1] - 8:15
admitted [1] - 87:13
advance [1] - 54:22
advancing [1] - 8:13
advantage [1] - 21:4
advice [1] - 75:20
advise [1] - 13:5
advised [1] - 12:13
advocacy [5] - 24:6, 24:11, 24:23, 25:19, 26:9
advocating [1] - 25:8
affect [2] - 44:9, 44:22
affected [1] - 12:14
affecting [1] - 42:5
affects [1] - 44:23
afternoon [7] - 58:5, 80:19, 80:21, 80:24, 80:25, 82:17, 82:24
age [1] - 39:4
agenda [11] - 6:1, 15:11, 21:13, 25:13, 46:15, 61:2, 61:6, 80:7, 82:3, 89:7, 89:8
agendas [1] - 87:5
ago [6] - 7:25, 9:24, 63:13, 73:15, 76:16, 76:17
agree [13] - 7:5, 9:2, 9:8, 20:3, 21:6, 25:7, 29:4, 35:17, 39:24, 44:16, 52:11, 56:24, 58:7
agreed [10] - 15:22, 45:17, 45:18, 51:1, 51:3, 57:18, 63:18, 76:16, 92:11, 92:19
agreed-upon [1] - 57:18
agreement [8] - 6:8, 19:13, 44:1, 44:16, 51:1, 53:9, 60:8, 60:12
agreements [1] - 45:22
ahead [11] - 8:17, 24:4, 56:6, 69:7, 78:10, 85:24, 87:9, 87:25, 88:1, 88:2, 90:9
Aid [2] - 3:16, 5:24
aided [1] - 1:25

**Aikens** [1] - 84:25
**AIKENS** [1] - 84:25
**akin** [1] - 25:18
**Alcus** [1] - 82:9
**alerted** [1] - 46:19
**ALFANO** [1] - 2:21
**All"** [1] - 11:21
**alleviate** [1] - 32:3
**alleviated** [1] - 32:21
**allow** [1] - 8:17
**allowed** [1] - 39:2
**almost** [1] - 58:5
**alone** [1] - 73:13
**ALSO** [1] - 3:18
**Amend** [1] - 16:14
**amended** [2] - 60:16, 61:2, 86:6
**AmerisourceBergen** [2] - 3:12, 5:20
**amount** [2] - 25:17, 45:18
**analysis** [3] - 21:21, 44:22, 44:23
**Angeles** [1] - 3:15
**answer** [2] - 87:19, 87:22
**answered** [1] - 87:22
**anticipate** [1] - 92:17
**anticipates** [1] - 92:8
**anyway** [1] - 89:16
**apologize** [4] - 69:5, 70:14, 82:7, 83:9
**appearance** [2] - 4:9, 4:11
**applaud** [1] - 18:21
**appreciate** [5] - 12:4, 39:2, 55:15, 84:12, 87:2
**appreciated** [1] - 38:1
**approach** [3] - 19:13, 55:16, 70:4
**appropriate** [13] - 51:9, 55:16, 64:22, 65:8, 68:23, 73:17, 74:6, 78:14, 79:12, 79:14, 79:21, 88:12, 94:4
**approval** [1] - 38:11
**approved** [6] - 30:2, 30:5, 30:9, 30:10, 30:12, 35:25
**April** [24] - 34:6, 34:19, 35:7, 35:11, 35:18, 35:20, 35:21, 36:18, 38:9, 38:10, 38:14, 39:23, 40:19, 41:15, 41:16, 41:18, 42:1, 42:21, 43:8, 44:8, 45:1, 66:3, 92:23

**argument'** [1] - 30:4
**arguments** [1] - 45:14
**army** [1] - 52:18
**aside** [2] - 82:12, 87:11
**aspect** [1] - 10:19
**aspersion** [1] - 50:17
**asserted** [1] - 80:4
**asserting** [1] - 74:2
**assertion** [1] - 72:3
**assertions** [1] - 79:1
**associated** [1] - 58:8
**ASSOCIATES** [1] - 2:11
**associates** [1] - 38:25
**assume** [1] - 15:12
**assumed** [1] - 74:8
**assuming** [1] - 68:3
**assure** [1] - 15:8
**Atlanta** [1] - 3:4
**attach** [1] - 24:18
**attachment** [1] - 37:16
**attachments** [1] - 25:16
**attempted** [1] - 87:19
**attempting** [1] - 86:19
**attend** [1] - 83:5
**attendance** [1] - 19:5
**attendees** [1] - 10:9
**attending** [2] - 11:10, 26:12
**attends** [1] - 20:23
**attention** [1] - 7:17
**attorney** [4] - 67:11, 67:12, 75:18, 79:5
**Attorney** [1] - 85:25
**attorney-client** [2] - 75:18, 79:5
**attorneys** [6] - 4:5, 15:15, 16:24, 17:10, 17:18, 61:18
**attorneys'** [1] - 46:4
**Audio** [1] - 24:3
**August** [4] - 31:2, 32:6, 34:19, 87:14
**Aurobindo** [6] - 3:9, 45:7, 45:11, 45:14, 46:10, 57:8
**Aurolife** [1] - 3:9
**Austin** [1] - 2:7
**author** [2] - 63:17, 71:2
**authorizations** [2] - 86:15, 87:8
**authors** [1] - 76:9
**automatic** [1] - 18:4
**available** [2] - 51:4, 86:19
**Avenue** [1] - 2:15
**avoid** [4] - 18:21, 44:6,

44:19, 70:9
**aware** [18] - 8:12, 8:17, 12:1, 15:11, 17:21, 31:9, 46:21, 47:15, 55:13, 55:14, 58:18, 58:22, 62:6, 65:25, 83:10, 86:23
**awareness** [1] - 51:25

## B

**Babin** [1] - 90:19
**BABIN** [1] - 90:20
**background** [3] - 12:11, 25:12, 31:12
**Baldone** [1] - 86:1
**BALDONE** [1] - 2:11
**BARNES** [1] - 3:13
**base** [1] - 40:7
**based** [3] - 49:9, 72:18, 72:21
**basic** [4] - 25:12, 62:12, 68:7, 72:1
**basics** [1] - 25:7
**basis** [9] - 13:14, 14:2, 21:7, 26:15, 53:17, 72:3, 73:24, 75:18, 78:21
**Battle** [2] - 82:9, 83:16
**battle** [1] - 78:2
**Baylen** [1] - 2:3
**Beach** [1] - 2:10
**bear** [3] - 35:9, 35:22, 43:3
**become** [3] - 13:19, 22:8, 47:10
**becomes** [1] - 24:24
**Bee** [1] - 2:6
**beginning** [2] - 58:16, 64:23
**behalf** [25] - 4:11, 4:14, 4:21, 4:24, 5:2, 5:5, 5:8, 5:15, 5:23, 7:11, 9:20, 10:6, 11:1, 11:3, 22:12, 29:20, 29:22, 57:10, 70:23, 83:8, 84:18, 88:7, 93:9, 93:19
**BEHRAM** [1] - 2:9
**Behram** [5] - 47:7, 54:2, 54:3, 74:17, 75:13
**Bell** [1] - 3:8
**bellwether** [8] - 6:9, 6:16, 6:20, 92:7, 92:10, 92:12, 92:23, 93:11
**below** [1] - 89:6
**beneficial** [3] - 23:7, 25:23
**benefit** [1] - 22:11

**Benicar** [2] - 69:16, 71:14
**BERNE** [1] - 3:10
**best** [5] - 28:22, 37:8, 37:25, 50:3, 60:5
**better** [9] - 10:15, 16:22, 20:5, 20:17, 44:2, 59:21, 65:22, 83:2, 83:10
**between** [5] - 7:19, 10:22, 31:5, 37:16, 94:9
**Betz** [1] - 91:9
**BETZ** [1] - 91:9
**beyond** [5] - 22:2, 35:20, 38:24, 41:16, 41:18
**bit** [7] - 17:12, 18:25, 20:4, 20:5, 27:16, 31:8, 58:13
**blame** [1] - 50:17
**blanche** [1] - 50:19
**Blue** [1] - 3:8
**board** [4] - 69:24, 70:10, 72:4, 73:12
**bodies** [1] - 47:11
**bog** [2] - 12:24, 59:6
**bogged** [1] - 13:19
**BOSICK** [1] - 2:21
**bottom** [1] - 40:15
**Boulevard** [1] - 2:12
**breaking** [1] - 71:25
**breathing** [1] - 38:14
**bridge** [1] - 53:5
**Brief** [2] - 80:13, 80:18
**brief** [9] - 21:20, 24:14, 37:10, 41:2, 42:16, 54:2, 56:17, 59:24, 60:9
**briefing** [2] - 40:25, 52:15
**briefly** [2] - 47:2, 65:11
**briefs** [4] - 24:10, 25:9, 56:9, 81:22
**bring** [4] - 7:16, 24:7, 26:10, 29:17
**broad** [1] - 70:20
**brought** [1] - 86:7
**brush** [2] - 20:11, 20:22
**Building** [1] - 1:7
**burden** [6] - 15:5, 17:4, 17:8, 18:6, 18:14, 72:20, 73:16, 75:25
**burdening** [1] - 53:24
**burdensome** [4] - 68:8, 70:18, 71:4, 71:22

**business** [2] - 12:19, 16:4
**busy** [4] - 14:22, 16:12, 21:21, 23:17
**busyness** [1] - 11:17
**busywork** [1] - 23:8
**BY** [14] - 1:14, 1:17, 1:20, 2:3, 2:6, 2:9, 2:12, 2:15, 2:18, 2:22, 3:2, 3:7, 3:11, 3:14
**bypass** [1] - 64:2
**bypassing** [1] - 64:6

## C

**cake** [1] - 77:10
**California** [2] - 2:10, 3:15
**Camden** [1] - 1:8
**Camille** [4] - 1:23, 7:9, 81:2, 94:22
**camillepedano@ gmail.com** [1] - 1:23
**Camp** [1] - 1:21
**candidly** [1] - 84:10
**cannot** [1] - 55:1
**capacity** [2] - 13:3, 15:2
**card** [1] - 51:12
**care** [1] - 61:3
**carte** [1] - 50:19
**case** [37] - 8:13, 19:16, 21:25, 24:9, 24:15, 24:19, 30:17, 34:4, 34:5, 44:10, 50:13, 52:20, 58:25, 59:17, 63:10, 64:3, 70:19, 71:3, 77:2, 77:18, 78:3, 80:1, 85:7, 85:15, 85:17, 86:16, 86:20, 86:23, 87:5, 88:9, 88:12, 88:17, 89:6, 89:7, 89:15, 91:1, 92:20
**cases** [13] - 8:14, 8:16, 23:7, 82:5, 83:6, 83:16, 89:13, 90:2, 90:6, 90:15, 90:22, 91:5, 93:10
**cast** [5] - 50:17, 69:16, 69:20, 71:13, 73:10
**cast-of-character** [1] - 71:13
**categories** [1] - 61:14
**causation** [15] - 34:6, 34:15, 34:19, 35:10, 35:15, 35:19, 35:22, 40:1, 40:3, 41:20, 42:8, 42:9, 42:23, 43:3, 44:22

**caused** [1] - 36:16
**cc** [1] - 74:12
**CC** [1] - 75:15
**CCR** [1] - 94:22
**Centre** [1] - 2:22
**Century** [1] - 3:14
**CEO** [1] - 33:10
**certain** [3] - 8:24, 12:14, 13:11
**certainly** [29] - 8:8, 8:19, 8:20, 10:2, 17:5, 20:24, 21:1, 21:22, 22:6, 23:3, 27:22, 27:25, 29:4, 32:8, 38:21, 43:6, 46:19, 48:19, 49:15, 49:23, 50:3, 53:23, 55:14, 60:10, 64:11, 69:21, 72:16, 88:14, 88:16
**certainty** [1] - 44:4
**certify** [1] - 94:19
**cetera** [2] - 82:14
**chain** [1] - 67:8
**challenge** [3] - 67:11, 74:14, 79:3
**challenges** [3] - 70:1, 70:6, 79:1
**challenging** [2] - 25:6, 72:3
**chance** [3] - 10:17, 68:6, 78:8
**change** [5] - 22:24, 34:1, 41:12, 42:3
**changes** [1] - 90:4
**changing** [1] - 76:22
**character** [1] - 71:13
**characterize** [1] - 22:10
**characters** [2] - 69:16, 69:20, 73:10
**chart** [1] - 67:16
**chime** [1] - 82:21
**China** [1] - 33:2
**Chinese** [6] - 30:17, 31:10, 33:2, 34:8, 34:13, 34:22
**choosing** [1] - 32:22
**chose** [3] - 32:25, 60:17, 73:12
**Christmastime** [1] - 61:19
**Cincinnati** [1] - 3:12
**CIPRIANI** [1] - 3:7
**circle** [1] - 60:22
**cite** [2] - 27:18, 28:1
**citizen** [1] - 32:9
**citizens** [1] - 39:1
**city** [1] - 87:16
**CIVIL** [1] - 1:3

**claim** [5] - 48:14, 70:24, 71:17, 75:23, 79:25
**claiming** [1] - 82:13
**claims** [7] - 7:20, 7:21, 24:17, 25:11, 62:7, 78:11, 81:19
**clarity** [1] - 76:10
**class** [1] - 27:16
**clear** [4] - 30:19, 30:22, 47:10, 48:24
**clearly** [2] - 8:6, 81:8
**Clem** [6] - 5:16, 50:7, 63:5, 68:5, 70:12, 76:2
**CLEM** [1] - 2:22
**Clerk** [1] - 3:19
**click** [1] - 27:22
**client** [4] - 75:18, 79:5, 89:23
**client's** [1] - 84:15
**clock** [1] - 53:1
**close** [1] - 76:4
**closer** [1] - 32:21
**clutter** [1] - 78:10
**CMC** [1] - 10:4
**CMO** [1] - 10:10
**CMO2** [1] - 9:23
**co** [3] - 14:7, 29:13, 52:11
**co-defendants** [1] - 52:11
**co-leads** [2] - 14:7, 29:13
**Coast** [2] - 2:9, 31:6
**COHEN** [26] - 3:3, 5:7, 9:19, 11:22, 12:3, 14:9, 16:8, 20:19, 21:11, 22:14, 22:17, 25:4, 26:19, 27:1, 27:3, 27:7, 28:4, 28:9, 28:15, 28:23, 29:8, 29:14, 52:6, 52:9, 82:17, 82:21
**Cohen** [15] - 1:7, 5:8, 6:4, 9:17, 9:19, 15:1, 16:8, 20:19, 22:14, 29:3, 48:19, 50:5, 82:5, 82:18, 84:2
**Cohen's** [3] - 29:24, 84:24, 93:14
**coincidentally** [1] - 65:23
**colleague** [1] - 52:6
**colleagues** [1] - 72:16
**comfortable** [1] - 19:21
**coming** [6] - 11:16, 14:14, 14:16, 47:4, 64:6, 65:25

**Commencing** [1] - 1:9
**comment** [1] - 20:9
**committed** [1] - 6:23
**Committee** [11] - 14:13, 14:19, 14:25, 15:14, 15:16, 16:16, 16:21, 16:24, 17:9, 83:22, 84:1
**Committees** [1] - 14:23
**communicate** [8] - 13:14, 15:7, 15:9, 15:10, 20:17, 53:21, 88:9, 88:14
**communicating** [1] - 13:21
**communication** [7] - 11:4, 11:25, 67:3, 67:12, 72:7, 75:19, 83:11
**communications** [15] - 10:22, 10:25, 13:11, 13:24, 15:20, 17:11, 17:20, 18:11, 18:17, 22:20, 29:12, 62:4, 62:8, 73:23, 86:25
**company** [6] - 62:11, 63:2, 66:13, 66:24, 67:9, 75:17
**competing** [1] - 22:9
**compile** [1] - 29:9
**compiled** [1] - 79:16
**complain** [1] - 71:6
**complained** [1] - 30:11
**Complaint** [4] - 16:14, 57:16, 57:18, 60:16
**complaint** [1] - 68:13
**Complaints** [5] - 57:2, 57:22, 58:8, 60:15, 60:18
**complaints** [2] - 57:22, 61:3
**complete** [6] - 39:6, 53:1, 53:9, 55:4, 86:16
**completed** [6] - 34:6, 35:11, 54:23, 54:24, 55:1, 87:12
**completely** [1] - 47:14
**completion** [1] - 49:16
**complexities** [1] - 30:16
**compliance** [2] - 74:22, 77:20
**complicating** [1] - 32:24
**complied** [1] - 55:6
**complies** [1] - 75:2

**comply** [4] - 53:2, 55:7, 74:8, 75:7
**component** [1] - 27:17
**components** [1] - 11:9
**compressed** [1] - 66:2
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**conceding** [1] - 43:6
**concern** [5] - 34:2, 34:12, 34:13, 43:12, 44:11
**concerned** [2] - 17:12, 17:15, 41:19
**concerns** [2] - 17:16, 67:5
**concluded** [2] - 37:25, 94:17
**conducted** [1] - 21:8
**conducting** [4] - 19:18, 20:2, 20:3, 26:12
**conduit** [1] - 29:1
**confer** [32] - 6:15, 8:1, 37:11, 43:11, 45:21, 48:22, 57:14, 57:21, 57:24, 60:3, 60:21, 61:12, 62:15, 62:20, 63:23, 64:8, 64:22, 65:16, 65:24, 68:7, 68:14, 70:2, 73:7, 79:19, 83:4, 84:8, 86:17, 86:19, 86:20, 92:10, 92:15, 93:21
**CONFERENCE** [1] - 1:6
**conference** [18] - 4:6, 4:8, 7:2, 8:2, 9:14, 9:25, 19:18, 26:12, 26:13, 31:3, 34:7, 36:3, 38:19, 57:25, 64:6, 64:24, 77:4, 83:7
**conferences** [5] - 11:11, 12:21, 64:2, 81:25, 92:16
**conferred** [2] - 6:18, 92:11
**conferring** [4] - 46:6, 57:12, 65:19, 73:3
**confers** [2] - 65:1, 66:5
**confident** [1] - 18:14
**confirm** [1] - 88:9
**confronting** [1] - 46:24
**confusing** [1] - 74:19
**CONLEE** [1] - 1:20
**Conlee** [2] - 4:20, 45:25

**consciousness** [1] - 55:13
**consequence** [4] - 79:24, 80:3, 80:4
**consider** [3] - 6:17, 11:11, 35:20
**considered** [2] - 76:20, 87:20
**consistent** [3] - 10:10, 37:10, 63:9
**constantly** [1] - 64:25
**consuming** [1] - 58:19
**contact** [2] - 40:17, 82:15, 83:8
**contacted** [3] - 82:12, 87:1, 87:17
**contemplated** [1] - 42:7
**content** [1] - 74:12
**contents** [1] - 74:7
**context** [1] - 71:5
**continue** [14] - 12:21, 36:4, 40:16, 43:22, 48:4, 52:2, 60:3, 60:7, 60:21, 61:12, 78:2, 78:19, 85:17, 87:3
**continued** [4] - 38:5, 54:9, 54:16, 54:23
**Continued** [2] - 2:1, 3:1
**continuing** [6] - 45:21, 53:7, 57:20, 57:24, 65:15, 73:7
**contrary** [1] - 16:11
**control** [5] - 62:2, 66:24, 67:4, 67:8, 68:1
**convenience** [1] - 60:17
**convenient** [1] - 76:17
**conversations** [1] - 58:7
**convince** [1] - 24:25
**Cooper** [1] - 1:7
**cooperative** [1] - 69:13
**coordinate** [4] - 7:19, 17:6, 20:20, 84:3
**coordinating** [1] - 84:8
**coordination** [5] - 7:10, 7:18, 7:23, 93:15, 93:24
**copied** [8] - 10:25, 11:6, 13:1, 14:14, 15:24, 17:11, 17:20, 19:22
**copy** [5] - 13:12, 13:16, 14:22, 16:15,

16:19
**copying** [1] - 17:17
**corporate** [1] - 67:23
**Corporation** [2] -
3:16, 5:24
**correct** [10] - 12:13,
45:8, 50:10, 57:23,
85:1, 85:2, 85:5,
85:9, 85:15, 94:19
**correction** [1] - 87:15
**counsel** [68] - 4:7, 6:3,
9:14, 9:15, 10:1,
11:24, 12:1, 12:9,
12:10, 13:4, 13:5,
13:6, 13:14, 13:20,
14:13, 14:14, 14:17,
14:20, 15:3, 15:11,
15:20, 19:6, 19:9,
22:20, 23:15, 28:18,
32:7, 32:18, 32:22,
38:20, 39:9, 39:25,
43:11, 59:2, 59:10,
61:17, 61:18, 61:19,
61:20, 62:6, 62:7,
62:8, 66:12, 66:13,
66:18, 68:4, 80:14,
81:22, 82:11, 82:15,
83:2, 83:5, 83:9,
83:19, 83:22, 84:9,
84:14, 84:15, 84:18,
86:22, 87:10, 88:10,
88:15, 89:20, 92:3,
92:6, 94:12
**counsel's** [2] - 12:19,
82:4
**counterproductive** [1]
- 65:2
**country** [2] - 58:21,
94:10
**country's** [1] - 58:21
**couple** [6] - 6:24,
19:7, 20:12, 80:17,
81:14, 83:13
**course** [6] - 4:6,
10:16, 32:15, 33:19,
49:19, 58:15
**COURT** [9] - 1:1, 7:6,
7:8, 71:24, 81:2,
81:5, 81:9, 81:13,
90:7
**court** [9] - 4:1, 4:9,
7:19, 8:13, 8:14,
93:15, 94:1, 94:2,
94:7
**Court** [26] - 1:23, 8:1,
8:22, 9:3, 9:17,
13:22, 24:25, 31:4,
38:11, 50:20, 51:18,
57:17, 57:25, 59:8,
63:10, 64:9, 65:9,

68:25, 76:18, 76:21,
78:8, 84:13, 88:14,
93:23, 93:24, 94:22
**Court's** [5] - 7:17,
50:12, 52:25, 77:20,
92:21
**Courthouse** [1] - 1:7
**courts** [2] - 8:18,
94:10
**Cove** [1] - 2:6
**cover** [2] - 29:16, 33:3
**covered** [1] - 6:7
**COVID** [1] - 32:12
**crazy** [1] - 23:17
**CRC** [1] - 94:22
**create** [2] - 16:10, 23:8
**created** [1] - 47:25
**creates** [1] - 33:20
**creating** [3] - 18:5,
36:13, 77:15
**creative** [1] - 27:16
**credit** [1] - 38:5
**CRR** [1] - 94:22
**crystalized** [1] - 22:4
**cumulative** [1] - 43:1
**cure** [2] - 87:4, 87:21
**curing** [1] - 88:11
**current** [2] - 39:15,
72:21
**custodial** [1] - 40:1
**custodian** [4] - 54:24,
55:2, 55:4, 75:16
**custodians** [8] - 49:3,
49:10, 50:13, 54:21,
54:22, 55:2, 55:3
**cut** [1] - 73:5
**cutting** [1] - 70:15
**CVS** [2] - 3:15, 5:23

---

# D

**DAMON** [1] - 2:11
**Damon** [1] - 85:25
**Daniel** [7] - 4:17, 7:7,
45:9, 88:25, 89:22,
92:7, 93:4
**DANIEL** [1] - 2:3
**data** [2] - 56:2, 56:11
**Date** [1] - 94:24
**date** [4] - 21:23, 41:5,
47:3, 86:8
**dates** [3] - 36:9, 39:19,
46:3
**DAVID** [1] - 1:17
**David** [1] - 56:22
**Davis** [3] - 61:8,
64:11, 65:13
**DAVIS** [12] - 2:5, 2:6,
3:2, 61:8, 61:11,
65:11, 65:13, 66:9,
66:11, 67:21, 73:2,

75:13
**days** [7] - 50:23,
63:13, 64:18, 77:17,
78:4, 83:13, 84:13
**deadline** [10] - 26:17,
34:5, 38:11, 40:25,
41:7, 41:24, 42:3,
54:19, 55:11, 60:11
**deadlines** [1] - 18:20
**deal** [2] - 84:13, 84:16
**dealing** [1] - 18:20,
72:25
**December** [20] - 30:8,
30:14, 33:1, 33:4,
33:5, 33:14, 35:13,
36:10, 36:12, 36:17,
54:6, 63:9, 64:14,
66:12, 86:7, 86:14,
87:14
**decide** [2] - 17:19,
51:18
**decided** [1] - 45:23
**decisions** [3] - 21:24,
23:20, 53:6
**declarations** [1] -
64:16
**deemed** [3] - 59:16,
62:4, 94:3
**Defendant** [1] - 2:23
**defendant** [8] - 49:8,
53:23, 53:25, 54:12,
58:20, 59:11, 63:12,
69:17
**defendants** [58] - 5:2,
5:6, 5:9, 5:20, 5:23,
6:11, 9:21, 12:14,
12:15, 22:13, 24:16,
33:7, 45:15, 47:14,
48:1, 48:4, 48:8,
48:25, 49:5, 49:13,
49:19, 49:23, 50:9,
50:11, 52:11, 53:21,
54:10, 54:16, 54:23,
56:9, 56:11, 57:4,
57:8, 57:11, 58:14,
58:17, 59:2, 59:15,
60:9, 63:6, 63:25,
69:12, 72:20, 73:12,
73:25, 74:18, 76:25,
82:25, 83:8, 86:10,
86:25, 87:3, 88:7,
90:3, 90:4, 90:13,
93:9, 93:19
**Defendants** [5] - 2:19,
3:5, 3:9, 3:12, 3:15
**defendants'** [4] -
46:15, 75:1, 81:17,
83:21
**defense** [45] - 5:9,
5:15, 5:17, 6:2, 7:12,

8:21, 8:23, 9:4, 9:20,
10:6, 10:11, 11:1,
11:14, 12:13, 13:9,
14:5, 14:20, 16:16,
17:11, 17:19, 19:12,
20:24, 28:24, 29:20,
37:9, 38:22, 39:24,
48:17, 50:25, 53:2,
57:6, 59:23, 74:8,
81:22, 82:4, 82:15,
83:1, 83:3, 83:9,
84:19, 86:10, 86:22,
90:13, 92:3, 94:12
**defenses** [1] - 25:12
**defer** [6] - 6:6, 9:17,
44:5, 79:23, 88:16
**deficiencies** [7] -
49:25, 86:9, 86:17,
87:2, 87:4, 88:4,
88:11
**deficiency** [2] - 87:20,
87:21
**delay** [1] - 59:6
**Delgato** [1] - 90:18
**DELGATO** [1] - 90:19
**demanding** [1] - 12:16
**demonstrate** [1] -
73:16
**department** [15] -
62:1, 62:2, 66:23,
67:8, 67:9, 67:17,
67:19, 67:24, 67:25,
68:19, 69:2, 69:18,
71:16, 72:7
**dependent** [1] - 39:22
**depose** [6] - 32:25,
44:22, 50:20, 51:6,
51:8, 77:20
**deposed** [7] - 31:17,
33:18, 41:12, 42:24,
43:2, 49:20
**deposing** [1] - 30:17
**deposition** [21] -
29:19, 30:7, 33:11,
33:12, 44:25, 46:3,
47:10, 47:18, 47:22,
47:23, 47:24, 48:9,
49:22, 50:25, 51:11,
53:15, 55:18, 55:19,
70:6, 77:2, 77:12
**depositions** [70] -
14:22, 30:3, 30:13,
30:19, 30:24, 31:2,
31:4, 31:8, 32:4,
32:6, 32:8, 32:11,
32:13, 32:18, 33:16,
33:21, 34:2, 34:3,
34:8, 34:13, 34:14,
34:18, 34:22, 35:4,
36:12, 36:13, 36:19,

38:13, 39:16, 39:17,
39:19, 39:23, 39:24,
42:1, 42:20, 43:19,
43:21, 44:6, 44:7,
44:8, 44:18, 45:13,
45:18, 46:1, 46:5,
47:14, 48:7, 49:19,
50:19, 50:24, 51:13,
51:18, 51:23, 52:25,
65:25, 66:3, 70:3,
70:4, 71:6, 77:17,
77:25, 78:7, 78:10,
78:18, 79:23, 92:23,
92:25, 93:12
**described** [3] - 9:24,
67:2, 79:4
**description** [2] -
74:10, 76:9
**descriptive** [1] - 73:5
**designated** [1] - 33:3
**designating** [1] -
73:18
**despite** [1] - 47:11
**detail** [5] - 31:15, 66:7,
68:24, 69:3, 76:10
**detailed** [1] - 31:9
**details** [1] - 92:16
**determination** [4] -
76:11, 78:22, 79:15,
79:17
**determine** [2] - 60:6,
72:2
**developments** [1] -
85:12
**dialogue** [1] - 52:3
**difference** [6] - 31:5,
32:1, 32:5, 32:7,
33:19, 39:18
**differences** [1] - 34:8
**different** [8] - 11:8,
17:1, 29:23, 47:20,
55:15, 62:2, 66:23,
69:12
**difficult** [1] - 24:24
**difficulties** [1] - 31:19
**difficulty** [1] - 46:23
**diligently** [2] - 50:11,
50:14
**direct** [1] - 15:19
**directed** [1] - 24:6
**directly** [4] - 13:22,
74:12, 83:24, 83:25
**disagree** [3] - 56:13,
76:7, 76:12
**disagreement** [1] -
25:5
**discovered** [1] - 47:18
**discovery** [13] - 7:19,
7:22, 8:13, 34:6,
34:15, 34:18, 35:11,

53:5, 64:2, 70:19, 93:25, 94:9

**discuss** [6] - 8:21, 36:4, 43:22, 57:5, 86:19, 94:13

**discussed** [3] - 7:2, 34:11, 93:21

**discussing** [1] - 32:5

**discussion** [5] - 9:6, 40:18, 44:15, 74:12, 80:8

**discussions** [4] - 43:25, 44:5, 52:16, 69:11

**dismiss** [2] - 81:17, 85:8

**Dismiss** [2] - 87:10, 89:16

**dismissal** [7] - 82:7, 82:12, 83:14, 83:17, 84:10, 89:4, 89:24

**dismissals** [1] - 82:1

**dismissed** [5] - 83:7, 85:5, 85:8, 89:19, 90:1

**disputable** [1] - 30:13

**dispute** [2] - 35:9, 60:22

**disputed** [2] - 35:7, 35:12

**distortion** [1] - 24:3

**distribute** [1] - 28:21

**distribution** [1] - 14:24

**DISTRICT** [3] - 1:1, 1:1, 1:10

**District** [2] - 4:2, 78:5

**divided** [1] - 54:14

**docket** [3] - 28:2, 87:18, 89:13

**Docket** [3] - 6:3, 60:1, 75:8

**document** [21] - 27:23, 28:1, 46:16, 46:20, 49:6, 49:17, 49:24, 49:25, 52:9, 53:14, 55:8, 63:17, 64:4, 70:7, 71:2, 74:11, 74:13, 77:13, 77:24, 78:3, 78:11

**Document** [3] - 6:3, 59:20, 60:4

**document's** [1] - 79:25

**documents** [56] - 23:14, 47:9, 47:13, 47:19, 47:21, 48:3, 48:4, 48:5, 48:7, 49:1, 49:9, 49:11, 50:11, 50:15, 50:23,

51:6, 51:8, 51:17, 51:19, 52:19, 53:11, 53:22, 54:11, 54:17, 55:9, 61:15, 64:18, 65:17, 65:19, 67:5, 70:4, 70:22, 70:23, 71:7, 71:8, 71:17, 72:25, 73:1, 73:11, 73:13, 73:14, 73:18, 73:21, 74:25, 76:8, 76:9, 76:10, 77:5, 77:19, 77:22, 79:4, 80:2

**done** [15] - 12:12, 16:2, 16:5, 22:25, 27:19, 27:21, 31:5, 32:14, 38:23, 40:7, 42:5, 55:10, 58:7, 60:11, 84:20

**Dorothy** [1] - 82:9

**double** [4] - 27:5, 43:20, 44:17, 81:23

**double-space** [1] - 81:23

**double-spaced** [1] - 27:5

**double-tracking** [1] - 43:20

**down** [12] - 12:24, 13:19, 22:18, 22:22, 26:7, 44:12, 49:18, 50:2, 50:4, 59:6, 77:15, 86:3

**dozen** [1] - 49:5

**drabs** [1] - 54:16

**draft** [2] - 57:16, 57:18

**drafts** [2] - 56:15, 57:15

**dribs** [1] - 54:16

**drop** [1] - 80:14

**Duane** [2] - 5:5, 72:16

**DUANE** [1] - 2:17

**due** [4] - 30:16, 32:12, 41:2, 42:17

**dump** [2] - 54:17, 55:8

**Dunn** [2] - 4:23, 85:25

**DUNN** [10] - 2:12, 4:23, 85:23, 85:25, 86:5, 87:13, 87:24, 88:1, 88:3, 88:21

**duplicate** [1] - 91:1

**duplicating** [1] - 94:9

**duplicative** [1] - 45:16

**during** [4] - 4:6, 4:8, 40:10, 77:4

**duty** [1] - 76:21

---

**E**

**E-filing** [1] - 27:17

**early** [5] - 10:17, 19:8,

38:14, 51:2, 59:13

**easier** [4] - 16:4, 44:25, 81:23, 82:2

**East** [2] - 3:14, 31:6

**Eastern** [3] - 31:6, 39:17, 39:18

**easy** [3] - 15:21, 16:15, 71:9

**eat** [1] - 77:10

**ECF** [2] - 13:7, 28:8

**edges** [1] - 52:14

**effect** [1] - 62:3

**efficiency** [1] - 14:21

**efficient** [8] - 10:7, 15:19, 16:5, 23:13, 23:18, 26:5, 27:22, 78:1

**effort** [1] - 32:15

**efforts** [1] - 94:9

**eight** [1] - 16:4

**Eisenhower** [1] - 1:14

**either** [11] - 19:25, 25:22, 25:23, 38:23, 40:2, 47:22, 55:18, 73:20, 74:11, 78:2, 79:10

**EL** [1] - 86:25

**electronic** [3] - 27:16, 53:5, 59:17

**electronically** [1] - 75:4

**email** [33] - 10:20, 11:23, 11:25, 14:14, 14:16, 14:17, 14:23, 15:13, 16:12, 16:17, 16:19, 17:22, 18:2, 18:16, 18:19, 28:18, 29:4, 29:9, 37:16, 39:1, 61:4, 61:24, 66:14, 66:21, 67:1, 68:2, 68:17, 68:18, 83:23, 84:11, 88:3, 88:4

**emailing** [1] - 13:6

**emails** [14] - 11:6, 11:13, 11:16, 13:1, 13:3, 13:7, 13:9, 14:25, 15:2, 17:3, 17:23, 17:25, 18:7, 57:14

**emphasize** [1] - 75:24

**employed** [1] - 69:1

**employee** [1] - 30:3

**employees** [5] - 29:19, 61:25, 62:7, 62:9, 75:22

**enable** [1] - 72:2

**encourage** [1] - 79:19

**encouraged** [1] - 12:18

**end** [12] - 6:6, 15:8, 24:13, 33:11, 38:4, 46:20, 54:15, 56:16, 57:17, 64:14, 82:1, 93:7

**ended** [1] - 54:10

**endless** [1] - 77:24

**enhance** [1] - 14:21

**ensure** [1] - 7:22

**enter** [6] - 4:8, 38:3, 76:18, 93:24, 94:3

**entered** [8] - 9:24, 23:20, 37:20, 37:22, 38:2, 63:10, 88:13

**entering** [2] - 4:11, 88:8

**entire** [1] - 73:22

**entirely** [1] - 73:17

**entitled** [1] - 94:20

**entries** [5] - 62:15, 62:16, 67:3, 70:25, 73:5

**entry** [4] - 28:2, 65:5, 75:9, 87:19

**envisioned** [2] - 7:23, 13:20

**ESI** [14] - 49:3, 50:12, 64:17, 72:13, 72:18, 72:21, 74:1, 74:4, 74:18, 74:20, 74:24, 75:8, 78:24

**especially** [5] - 10:7, 11:16, 14:13, 14:21, 22:8

**ESQUIRE** [18] - 1:14, 1:17, 1:17, 1:20, 2:3, 2:6, 2:9, 2:12, 2:15, 2:18, 2:22, 3:2, 3:3, 3:3, 3:7, 3:11, 3:14, 3:19

**essentially** [2] - 8:16, 75:11

**establish** [1] - 75:25

**et** [2] - 82:14

**evaluate** [4] - 63:16, 71:17, 73:20, 75:23

**evaluation** [1] - 74:13

**eve** [1] - 77:3

**evenly** [1] - 54:14

**evidence** [1] - 27:17

**evolved** [2] - 10:3, 10:21

**exact** [1] - 71:3

**exactly** [6] - 12:3, 46:4, 46:17, 52:15, 67:20, 87:20

**example** [13] - 15:13, 16:12, 17:12, 40:10, 40:14, 44:24, 49:4, 62:1, 66:24, 67:1,

end [12] - 6:6, 15:8,

67:7, 67:25, 68:13

**exams** [1] - 49:22

**except** [1] - 93:5

**exception** [2] - 6:5, 53:19

**exceptions** [1] - 21:1

**exchange** [1] - 37:16

**exchanged** [2] - 56:14, 92:12

**exchanging** [1] - 57:14

**exclude** [1] - 10:2

**excuse** [4] - 7:6, 9:25, 83:18, 90:7

**Excuse** [1] - 71:24

**Executive** [12] - 14:13, 14:19, 14:23, 14:24, 15:14, 15:15, 16:16, 16:21, 16:23, 17:8, 83:22, 84:1

**exhausted** [2] - 40:18, 65:1

**exhausting** [1] - 64:22

**Exhibit** [2] - 30:6, 34:24

**exhibits** [3] - 27:11, 27:14, 27:25

**existence** [1] - 72:22

**exists** [1] - 59:4

**expand** [3] - 11:5, 11:15, 43:14

**expect** [3] - 17:23, 27:25, 81:16

**expectation** [1] - 74:10

**expected** [1] - 42:8

**expended** [1] - 10:5

**experience** [3] - 16:1, 19:17, 23:1

**expert** [8] - 40:5, 41:20, 41:25, 42:3, 43:7, 43:13, 44:11, 44:24

**expert's** [1] - 43:5

**experts** [1] - 40:6

**explanation** [1] - 44:13

**explicit** [1] - 30:15

**explicitly** [1] - 72:12

**expressed** [1] - 52:12

**extend** [1] - 70:6

**extension** [2] - 15:22, 18:7

**extensively** [1] - 20:6

**extent** [8] - 8:24, 25:21, 40:3, 42:2, 59:11, 86:20, 87:4, 88:10

**extra** [3] - 22:6, 23:3, 60:20

**extreme** [1] - 11:17
**extremely** [4] - 26:14, 70:20, 71:4
**eyes** [1] - 27:6

## F

**face** [2] - 10:15
**face-to-face** [1] - 10:15
**facilitate** [1] - 84:21
**Fact** [3] - 82:6, 86:6, 91:12
**fact** [14] - 31:4, 31:21, 32:20, 34:5, 34:15, 34:22, 46:5, 46:19, 69:15, 70:18, 75:14, 86:8, 88:10, 88:16
**factor** [1] - 32:24
**failed** [1] - 89:9
**failure** [3] - 48:1, 82:6, 91:11
**fair** [8] - 51:9, 51:15, 53:19, 64:19, 76:11, 76:23, 76:25, 78:13
**fall** [2] - 26:13, 70:7
**familiar** [4] - 31:1, 31:18, 31:21, 31:24
**far** [6] - 5:1, 8:12, 13:1, 53:23, 65:7, 86:23
**fashion** [1] - 48:15
**fault** [2] - 82:8, 83:14
**February** [12] - 38:17, 41:7, 44:2, 47:18, 51:2, 53:10, 88:19, 90:4, 90:15, 90:21, 94:4, 94:16
**federal** [5] - 37:18, 74:9, 74:22, 75:3, 76:7
**felt** [3] - 16:15, 20:10, 55:17
**few** [11] - 7:25, 9:1, 13:4, 16:9, 30:2, 30:18, 45:11, 45:14, 46:2, 66:3, 84:13
**fields** [4] - 74:24, 75:1, 75:15, 75:16
**fifth** [1] - 33:10
**fighting** [1] - 19:19
**figure** [2] - 38:12, 84:19
**file** [8] - 56:16, 60:15, 79:21, 81:16, 82:6, 83:13, 89:14, 91:12
**filed** [7] - 6:4, 24:10, 33:8, 83:19, 85:12, 86:6, 86:14
**files** [1] - 40:1
**filing** [6] - 27:17,

27:19, 33:10, 41:20, 61:2, 82:12
**filings** [1] - 29:24
**finalize** [1] - 57:15
**fine** [13] - 8:7, 8:9, 12:10, 12:25, 15:18, 20:10, 27:14, 29:8, 52:22, 63:7, 81:7, 83:12, 94:6
**firm** [2] - 5:8, 68:4
**first** [19] - 6:8, 12:9, 30:23, 31:1, 36:23, 40:10, 64:13, 64:14, 70:17, 73:2, 81:15, 86:23, 87:6, 89:7, 89:17, 89:18, 90:22, 91:11, 93:11
**Fisher** [2] - 82:9, 82:11
**fisher** [1] - 83:2, 83:9
**fisher's** [2] - 83:19, 84:9
**fit** [1] - 69:21
**five** [14] - 11:1, 14:6, 17:6, 17:10, 17:18, 25:14, 30:21, 33:6, 33:12, 36:2, 64:16, 87:13, 91:13
**flexibility** [1] - 43:18
**flexible** [1] - 21:10
**floodgates** [1] - 18:15
**Floor** [1] - 2:22
**Florida** [1] - 2:4
**fly** [1] - 39:3
**followed** [2] - 64:5, 76:16
**following** [2] - 64:20, 64:21
**FOR** [1] - 1:1
**forced** [1] - 77:16
**foregoing** [1] - 94:19
**foreign** [1] - 58:17
**Form** [4] - 57:2, 57:16, 57:18, 58:7
**formal** [1] - 13:12
**format** [2] - 20:1, 60:20
**forth** [4] - 16:25, 29:23, 34:24, 37:21
**forward** [19] - 8:17, 18:2, 18:13, 18:24, 19:16, 19:21, 35:24, 36:19, 43:25, 44:4, 45:17, 49:22, 51:13, 70:3, 77:2, 79:24, 80:5, 91:2, 93:11
**foundation** [1] - 78:11
**four** [12] - 14:7, 14:25, 16:16, 17:2, 17:10, 17:18, 29:13, 33:9,

42:21, 82:9, 83:6, 83:15, 85:11, 85:12, 90:2, 90:15, 90:18
**frankly** [3] - 16:22, 21:19, 22:6
**free** [2] - 51:12, 79:2
**FREEMAN** [1] - 1:13
**Friday** [4] - 41:2, 41:4, 42:17
**Friedlander** [1] - 81:1
**full** [2] - 25:20, 78:9
**full-speed** [1] - 78:9
**fulsome** [2] - 74:10, 74:12
**function** [1] - 13:2
**functioned** [1] - 13:2
**fundamental** [2] - 71:19
**Futch** [1] - 91:20
**FUTCH** [1] - 91:20
**future** [1] - 47:16

## G

**gatherings** [1] - 10:4
**general** [14] - 21:3, 34:6, 34:15, 34:18, 35:10, 35:15, 35:19, 35:22, 39:25, 40:3, 41:20, 42:23, 43:3
**Geoppinger** [4] - 5:20, 11:2, 15:1, 56:8
**GEOPPINGER** [4] - 3:11, 5:19, 56:5, 56:8
**Geoppinger's** [1] - 56:24
**Georgia** [1] - 3:4
**get-out-of-jail-free** [1] - 51:12
**Gibson** [1] - 91:8
**given** [9] - 14:21, 33:19, 47:9, 47:13, 49:2, 49:11, 73:14, 86:8
**glad** [1] - 38:5
**GOLDBERG** [22] - 2:18, 5:4, 7:13, 9:8, 9:16, 14:10, 15:5, 29:21, 31:13, 31:20, 31:25, 41:6, 41:14, 42:10, 42:12, 42:19, 48:18, 72:8, 72:10, 72:15, 93:18, 94:14
**Goldberg** [18] - 5:5, 7:13, 9:16, 10:23, 11:2, 11:18, 13:24, 14:11, 15:12, 16:18, 29:21, 37:17, 39:13, 48:18, 72:11, 74:15, 74:19, 93:18

**Goldberg's** [3] - 15:13, 39:3, 50:10
**GOLDENBERG** [13] - 2:14, 2:15, 58:2, 58:4, 58:23, 59:21, 59:25, 60:13, 80:24, 84:6, 84:21, 85:21, 85:24
**Goldenberg** [3] - 57:13, 84:7, 85:22
**GOLOMB** [1] - 1:16
**GORDON** [1] - 2:21
**grant** [2] - 60:10, 87:9, 89:16
**granted** [2] - 33:7, 89:18
**granting** [1] - 84:13
**great** [8] - 7:3, 11:22, 23:13, 27:3, 28:9, 28:15, 29:15, 57:1
**Greenberg** [7] - 5:8, 5:14, 6:13, 82:18, 82:25, 84:2, 90:12
**GREENBERG** [1] - 3:2
**Greenleaf** [1] - 91:19
**ground** [2] - 53:16, 73:13
**group** [23] - 5:9, 5:17, 7:12, 9:20, 10:25, 11:10, 11:14, 11:15, 13:9, 15:8, 17:16, 17:18, 17:21, 17:24, 19:22, 20:2, 21:8, 29:20, 83:1, 83:3, 83:9, 90:13, 90:22
**groups** [2] - 24:16
**guess** [3] - 16:13, 20:12, 68:10
**guidance** [8] - 59:9, 61:16, 62:25, 66:4, 79:8, 79:18, 79:19
**Gunter** [2] - 82:10, 83:16
**GUNTER** [1] - 82:10

## H

**Hague** [4] - 58:17, 58:18, 59:5, 59:15
**hair** [2] - 20:12, 20:22
**half** [7] - 37:2, 61:22, 61:23, 62:12, 66:15, 66:16, 73:15
**hammer** [1] - 92:16
**hand** [4] - 46:25, 47:4
**handful** [1] - 42:1
**handle** [2] - 8:10, 13:25
**happy** [8] - 14:9, 19:23, 20:20, 28:23, 84:3, 84:21, 87:3,

88:11
**hard** [5] - 31:8, 39:7, 39:10, 50:25, 56:15
**HARKINS** [14] - 3:3, 82:24, 83:25, 85:2, 85:6, 85:10, 85:14, 86:13, 88:6, 88:22, 90:5, 90:10, 90:25, 91:15
**Harkins** [10] - 82:18, 82:23, 82:25, 83:21, 84:18, 84:25, 86:11, 88:6, 90:12, 90:24
**hate** [1] - 62:23
**hats** [1] - 62:7
**headed** [2] - 14:21, 77:16
**health** [1] - 39:4
**Healthcare** [1] - 2:20
**hear** [4] - 18:17, 23:22, 65:23, 68:18
**heard** [8] - 21:16, 30:3, 41:13, 50:18, 55:25, 63:14, 66:3, 77:4
**hearing** [6] - 12:24, 43:16, 50:21, 51:14, 52:20, 80:10
**heavy** [1] - 24:22
**Hebert** [5] - 85:18, 85:19, 86:1, 86:4, 86:5
**HEBERT** [1] - 86:2
**heck** [1] - 81:23
**Heinz** [1] - 57:7
**HEINZ** [3] - 3:7, 57:7, 57:10
**held** [1] - 4:1
**hello** [5] - 8:4, 80:21, 80:23, 81:4, 92:1
**help** [4] - 16:25, 26:22, 41:10, 63:16
**helpful** [12] - 21:5, 23:2, 23:5, 25:25, 28:6, 28:17, 52:15, 59:9, 66:5, 69:10, 69:25, 70:11
**helps** [2] - 20:22, 38:14
**hesitate** [1] - 81:11
**hi** [2] - 57:7, 92:4
**Hi** [1] - 80:19
**Highway** [1] - 2:9
**Hill** [1] - 90:20
**HILL** [1] - 90:20
**history** [3] - 38:17, 53:4, 72:12
**hit** [4] - 14:16, 30:2, 43:13, 55:11
**Hodan** [1] - 91:8

**HODAN** [1] - 91:8
**hold** [2] - 80:11, 80:12
**home** [2] - 20:12, 39:8
**Hong** [13] - 31:6, 31:17, 32:4, 32:8, 32:9, 32:17, 32:21, 38:25, 39:2, 39:3, 39:5, 39:11
**HONIK** [3] - 1:16, 1:17, 4:15
**Honik** [1] - 4:15
**Honor** [134] - 4:13, 4:15, 4:17, 4:20, 4:23, 5:4, 5:7, 5:16, 5:19, 5:22, 6:12, 7:5, 7:13, 8:4, 8:8, 8:11, 9:9, 9:16, 12:3, 12:7, 12:11, 13:1, 13:15, 13:25, 14:9, 14:10, 14:15, 15:4, 15:6, 15:10, 15:20, 16:8, 21:11, 21:18, 22:14, 22:18, 24:8, 25:4, 25:15, 25:22, 26:2, 28:11, 28:15, 29:21, 30:1, 30:6, 31:7, 31:9, 31:25, 33:8, 34:10, 37:15, 38:6, 38:18, 39:20, 39:22, 40:16, 40:17, 41:14, 42:15, 42:19, 45:5, 45:9, 45:25, 46:11, 46:25, 47:2, 47:7, 47:15, 47:17, 48:14, 48:18, 48:24, 50:7, 52:6, 52:10, 54:3, 56:5, 56:6, 56:8, 56:22, 57:7, 58:2, 58:12, 60:13, 61:8, 62:6, 63:5, 65:11, 66:11, 69:5, 69:8, 70:2, 70:12, 70:15, 71:4, 71:24, 72:8, 72:10, 72:11, 73:4, 74:3, 74:17, 75:13, 75:24, 76:2, 78:15, 82:17, 82:24, 84:6, 85:2, 85:6, 85:10, 85:14, 85:21, 85:23, 86:6, 86:13, 87:13, 88:6, 88:22, 88:25, 89:22, 90:5, 90:25, 91:15, 92:1, 92:2, 92:4, 92:18, 93:18, 94:4, 94:14
**Honor's** [5] - 21:22, 48:12, 65:25, 92:9, 93:6
**Honorable** [3] - 3:19, 4:1, 4:3

**HONORABLE** [2] - 1:10, 1:11
**hope** [8] - 6:25, 45:21, 56:18, 57:24, 60:12, 60:13, 60:19, 80:22
**hopefully** [5] - 8:1, 56:13, 56:15, 57:17, 60:12
**hoping** [1] - 59:8
**horrible** [1] - 38:21
**hot** [1] - 22:3
**Houma** [1] - 2:13
**hour** [1] - 37:2
**hours** [1] - 32:17
**house** [9] - 61:18, 62:6, 62:8, 66:13, 66:21, 67:11, 67:22, 75:22, 75:23
**housekeeping** [2] - 81:14, 89:5
**Huahai** [1] - 2:20
**Hudson** [1] - 91:9
**hundreds** [2] - 62:17, 68:20, 73:19
**hyperlinking** [2] - 28:12, 28:13

**I**

**idea** [2] - 54:21, 66:17
**identification** [2] - 64:10, 79:25
**identified** [6] - 23:14, 35:16, 54:21, 65:18, 66:21, 70:22
**identifies** [2] - 61:24, 72:6
**identify** [2] - 4:10, 63:15
**identifying** [2] - 61:18, 66:12
**identity** [1] - 63:1
**idle** [1] - 54:15
**ignore** [1] - 76:18
**imagine** [2] - 13:16, 24:9
**impact** [1] - 42:22
**impertinently** [1] - 83:7
**implement** [1] - 18:24
**implementing** [3] - 57:3, 57:19, 58:8
**important** [6] - 19:16, 19:21, 32:2, 41:9, 41:15, 70:7
**impose** [5] - 23:12, 26:17, 76:21, 76:24
**imposed** [2] - 8:25, 76:21
**imposes** [1] - 18:13
**IN** [1] - 1:4

**in-house** [9] - 61:18, 62:6, 62:8, 66:13, 66:21, 67:11, 67:22, 75:22, 75:23
**inadequate** [4] - 61:21, 75:12, 76:6, 79:9
**Inc** [6] - 2:23, 3:5, 3:6, 3:9, 3:15, 5:24
**include** [4] - 11:23, 12:1, 17:8, 17:24
**included** [6] - 11:15, 17:3, 19:9, 29:9, 72:15, 86:16
**including** [2] - 27:13, 88:13
**incomplete** [1] - 87:7
**increase** [1] - 31:22
**indeed** [1] - 11:10
**India** [1] - 51:3
**indicate** [1] - 69:1
**individual** [1] - 42:23
**Industries** [1] - 3:5
**inefficiencies** [2] - 11:5, 16:11
**informal** [1] - 16:1
**informally** [1] - 13:16
**information** [27] - 23:2, 23:4, 25:13, 26:9, 43:14, 44:23, 61:23, 62:10, 62:12, 63:22, 67:14, 68:6, 68:7, 71:1, 71:10, 71:14, 71:21, 72:1, 72:5, 74:2, 74:25, 75:3, 75:4, 76:7, 76:20, 77:7, 78:24
**informing** [1] - 9:3
**ingenuous** [1] - 55:6
**initial** [3] - 7:1, 79:17
**injury** [2] - 6:21, 92:13
**input** [1] - 13:17
**insisted** [1] - 58:17
**instance** [1] - 72:24
**instances** [1] - 23:1
**instructing** [1] - 59:9
**instruction** [1] - 6:14
**instructions** [3] - 27:20, 27:21, 92:10
**instructs** [1] - 68:25
**intend** [4] - 26:17, 53:9, 92:21, 93:16
**intent** [1] - 16:21
**intention** [2] - 43:16, 93:23
**interested** [1] - 10:14
**interests** [4] - 11:8, 16:3, 17:1, 70:5
**interference** [1] - 90:9
**internal** [3] - 18:3,

66:21
**interrogatory** [1] - 68:21
**interrupt** [2] - 31:14, 72:10
**introduce** [1] - 22:21
**inundate** [2] - 17:5, 23:3
**inundated** [3] - 13:8, 18:6, 18:15
**invite** [4] - 21:2, 48:19, 50:5, 72:16
**invited** [1] - 83:5
**involved** [4] - 14:1, 16:20, 16:23, 70:20
**Irbesartan** [3] - 57:3, 57:22, 59:1
**issue** [94] - 7:4, 7:14, 9:4, 9:17, 9:23, 12:6, 12:9, 15:18, 20:21, 20:23, 20:24, 21:1, 22:12, 29:20, 29:23, 30:14, 30:19, 30:23, 30:24, 31:1, 31:18, 32:3, 32:20, 34:7, 34:9, 35:10, 35:14, 35:19, 37:5, 37:23, 37:24, 43:11, 44:12, 45:3, 46:14, 46:16, 47:8, 47:16, 48:11, 48:17, 48:22, 48:23, 49:15, 50:6, 51:12, 51:24, 52:2, 52:13, 52:24, 53:24, 54:6, 54:7, 55:14, 55:24, 56:3, 56:10, 56:20, 57:2, 57:5, 57:20, 58:11, 58:12, 60:4, 60:7, 60:24, 61:16, 63:4, 63:13, 63:24, 64:4, 64:15, 65:10, 65:21, 68:15, 69:14, 72:12, 72:17, 72:19, 73:6, 73:9, 73:11, 73:24, 77:13, 78:15, 79:20, 83:3, 84:10, 84:11, 92:5, 93:13, 93:20, 93:22, 94:5
**issue's** [1] - 7:16
**issued** [2] - 21:24, 34:14, 63:10, 72:19
**issues** [39] - 7:1, 8:22, 9:1, 12:8, 12:14, 12:22, 12:23, 13:15, 19:14, 19:15, 21:24, 22:4, 34:11, 45:12, 45:20, 45:22, 46:7, 47:3, 47:4, 52:9, 54:20, 61:13, 64:10, 64:12, 65:1, 65:16,

65:18, 73:4, 77:15, 77:24, 78:3, 78:7, 78:8, 78:19, 81:18, 91:23, 91:24, 92:2, 92:18
**issuing** [1] - 61:3
**it'll** [2] - 13:19, 22:8
**Item** [6] - 6:3, 6:5, 7:10, 21:12, 29:18, 61:2
**item** [7] - 6:8, 9:11, 21:15, 29:16, 52:3, 61:6, 89:5
**items** [4] - 27:18, 28:2, 65:7, 81:15
**itself** [1] - 66:6

**J**

**Jackson** [1] - 91:20
**jail** [1] - 51:12
**January** [15] - 1:8, 30:3, 30:4, 30:5, 30:8, 34:16, 34:24, 36:7, 36:20, 38:18, 68:15, 82:5, 86:18, 87:17, 88:4
**Jeff** [3] - 5:19, 56:7, 56:8
**JEFFREY** [1] - 3:11
**JERSEY** [1] - 1:1
**Jersey** [4] - 1:8, 1:15, 8:14, 78:5
**JESSICA** [1] - 3:7
**Jessica** [2] - 57:7, 58:6
**John** [7] - 61:8, 65:13, 66:7, 67:15, 73:1, 75:10, 79:7
**JOHN** [1] - 2:6
**Johnston** [3] - 5:23, 11:3, 15:1
**JOHNSTON** [2] - 3:14, 5:22
**joined** [1] - 19:7
**joint** [3] - 7:18, 7:23, 93:24
**JUDGE** [144] - 1:10, 4:4, 4:19, 4:22, 4:25, 5:10, 5:13, 5:18, 5:21, 5:25, 7:3, 7:9, 8:3, 9:5, 9:10, 9:18, 11:20, 11:23, 12:5, 14:3, 14:8, 17:7, 19:4, 20:13, 21:6, 21:12, 21:15, 22:12, 22:16, 23:11, 24:1, 24:3, 25:3, 26:1, 26:3, 26:24, 27:2, 27:4, 27:8, 27:13, 28:7, 28:10, 28:13,

28:16, 28:25, 29:15,
31:11, 31:14, 31:21,
36:21, 36:25, 37:3,
40:23, 41:5, 41:8,
41:23, 42:4, 42:14,
42:18, 43:9, 45:6,
45:24, 46:8, 46:14,
48:16, 51:21, 52:8,
54:1, 55:12, 56:2,
56:18, 57:1, 57:9,
58:1, 58:3, 58:22,
59:19, 59:23, 60:2,
60:23, 61:1, 61:10,
63:3, 63:7, 65:12,
66:7, 66:10, 67:15,
68:5, 69:4, 69:7,
70:13, 71:13, 71:20,
72:1, 72:9, 72:14,
72:23, 74:1, 75:10,
76:1, 76:3, 76:14,
78:16, 78:21, 80:10,
80:14, 80:19, 80:21,
81:1, 81:4, 81:7,
81:11, 81:14, 82:20,
82:22, 83:12, 84:5,
84:17, 84:22, 85:3,
85:7, 85:11, 85:19,
86:3, 86:11, 87:9,
87:23, 87:25, 88:2,
88:18, 88:23, 89:12,
90:1, 90:16, 90:18,
91:3, 91:7, 91:16,
91:19, 92:3, 93:14,
94:6, 94:15
**judge** [2] - 94:2, 94:3
**Judge** [79] - 4:2, 6:7,
6:15, 6:16, 6:25,
7:11, 7:15, 8:8, 9:19,
9:22, 9:25, 10:16,
10:23, 12:13, 12:17,
13:4, 14:12, 14:15,
14:18, 15:9, 19:3,
20:9, 20:19, 21:24,
23:13, 29:12, 29:16,
30:2, 30:7, 30:10,
30:12, 30:25, 31:1,
33:7, 33:14, 34:4,
34:10, 34:14, 34:16,
34:21, 34:23, 34:25,
35:25, 36:7, 36:20,
36:24, 37:17, 37:19,
38:12, 38:18, 44:17,
49:12, 52:16, 53:8,
53:13, 54:6, 54:7,
54:8, 59:13, 63:23,
68:10, 69:6, 70:8,
74:9, 77:9, 78:12,
80:8, 80:12, 80:15,
80:20, 80:23, 81:2,
81:5, 81:9, 83:18,
88:1, 88:21, 93:22

**Judge's** [1] - 53:3
**judgment** [1] - 42:7
**Judicial** [1] - 3:19

### K

**KANNER** [1] - 1:20
**Karen** [1] - 81:1
**KATZ** [1] - 1:13
**keep** [7] - 12:22,
14:15, 16:6, 19:16,
21:3, 48:7, 82:2
**Keller** [3] - 82:10,
83:16, 91:10
**kept** [1] - 19:19
**key** [2] - 23:14, 25:12
**kind** [1] - 94:7
**kinds** [1] - 67:5
**kinks** [1] - 46:3
**KIRTLAND** [1] - 2:8
**known** [1] - 32:4
**knows** [1] - 17:25
**Kong** [13] - 31:6,
31:17, 32:4, 32:8,
32:9, 32:17, 32:21,
38:25, 39:2, 39:3,
39:5, 39:11
**KUGHER** [1] - 1:10
**KUGLER** [36] - 80:21,
81:1, 81:4, 81:7,
81:11, 81:14, 82:20,
82:22, 83:12, 84:5,
84:17, 84:22, 85:3,
85:7, 85:11, 85:19,
86:3, 86:11, 87:9,
87:23, 87:25, 88:2,
88:18, 88:23, 89:12,
90:1, 90:16, 90:18,
91:3, 91:7, 91:16,
91:19, 92:3, 93:14,
94:6, 94:15
**Kugler** [18] - 3:19, 4:2,
6:7, 6:15, 6:16, 7:1,
7:11, 7:15, 8:8,
29:17, 34:4, 34:14,
34:17, 34:23, 80:8,
80:12, 80:15, 80:20
**Kugler's** [1] - 21:24

### L

**lacking** [1] - 87:8
**laid** [1] - 24:12
**language** [2] - 58:21,
75:7
**Lasalle** [1] - 2:15
**last** [19] - 6:4, 10:20,
10:24, 22:4, 22:19,
26:11, 30:21, 33:9,
37:18, 38:19, 48:3,
54:12, 54:18, 55:9,

55:11, 58:23, 61:6,
86:21
**last-day** [1] - 55:11
**late** [1] - 32:25
**latest** [3] - 58:10,
62:16, 73:14
**Law** [1] - 3:19
**LAW** [1] - 2:14
**law** [3] - 5:8, 27:16,
74:22
**lawsuits** [1] - 89:14
**lawyer** [6] - 63:18,
67:8, 75:16, 75:17,
75:19, 75:20
**lawyers** [13] - 13:12,
13:21, 15:15, 62:21,
63:1, 63:16, 63:21,
64:11, 65:5, 67:6,
75:22, 75:23, 89:15
**lay** [1] - 78:11
**laying** [3] - 50:2, 50:4
**lead** [8] - 7:22, 9:14,
12:9, 12:18, 15:1,
10:20, 28:18, 86:23
**leadership** [16] - 5:9,
5:15, 9:15, 9:20,
10:1, 10:25, 11:10,
11:14, 11:15, 11:24,
12:1, 17:16, 17:18,
17:24, 19:6, 19:22
**leading** [2] - 87:5,
92:7
**leads** [2] - 14:7, 29:13
**learned** [1] - 26:11
**least** [13] - 10:24,
14:6, 17:16, 18:10,
20:17, 23:1, 33:25,
66:2, 66:4, 67:1,
75:11, 75:19, 88:9
**leave** [5] - 33:7, 38:8,
39:12, 55:19, 55:23
**leaves** [2] - 85:11,
91:11
**leaving** [1] - 42:23
**leeway** [1] - 38:13
**left** [2] - 74:15, 91:14
**legal** [9] - 62:1, 66:22,
67:9, 67:17, 67:18,
67:24, 69:2, 75:20
**legend** [1] - 47:7
**legendary** [1] -
62:18, 62:19, 62:24,
63:15, 65:21, 66:5,
66:8, 66:12, 68:16,
72:6, 73:9
**length** [1] - 34:12
**lengthy** [2] - 44:13,
44:14
**less** [2] - 37:1, 40:13
**letter** [14] - 6:2, 10:10,
25:23, 29:25, 30:6,

36:12, 37:16, 38:6,
52:15, 59:24, 82:5,
84:25, 85:13, 93:15
**letters** [6] - 24:7, 26:4,
31:17, 81:22, 81:25,
91:23
**letting** [3] - 19:12,
29:5, 46:23
**level** [2] - 68:23, 69:3
**levels** [1] - 69:12
**LEVIN** [1] - 2:2
**LIABILITY** [1] - 1:4
**liaison** [9] - 13:3, 13:6,
13:14, 13:20, 14:14,
14:17, 15:2, 15:20,
16:24
**lift** [1] - 24:22
**likely** [3] - 7:14, 66:25,
67:11
**limine** [1] - 42:6
**limit** [5] - 20:2, 23:16,
23:23, 24:5, 72:24
**limited** [4] - 10:8,
21:4, 21:5, 21:8
**line** [4] - 40:15, 58:3,
81:1, 81:3
**lines** [1] - 80:6
**link** [4] - 27:18, 27:23,
28:5, 28:8
**list** [20] - 14:24, 19:1,
28:19, 28:23, 50:14,
61:22, 62:13, 62:22,
66:15, 69:19, 73:20,
73:22, 75:1, 75:5,
82:6, 86:8, 86:18,
88:19, 90:3, 90:21
**listed** [11] - 69:22,
74:24, 87:5, 89:3,
89:6, 89:7, 89:9,
89:12, 90:21, 91:12,
91:20
**listing** [9] - 89:7,
89:17, 89:18, 90:22,
91:4, 91:10, 91:11,
91:17, 91:21
**lists** [2] - 66:14, 83:23
**literally** [4] - 62:13,
66:16, 66:19, 70:21
**litigate** [1] - 72:19
**litigated** [1] - 74:7
**LITIGATION** [1] - 1:4
**litigation** [27] - 8:25,
12:15, 12:24, 13:5,
16:6, 21:16, 22:1,
22:3, 22:10, 22:11,
22:21, 25:1, 25:11,
39:9, 58:14, 58:16,
59:4, 59:5, 59:6,
59:14, 63:12, 64:1,
64:25, 71:14, 76:22,

77:24, 78:1
**litigations** [3] - 22:23,
25:19, 69:15
**litigator** [1] - 24:3
**live** [2] - 39:5, 39:7
**LLC** [6] - 1:13, 1:20,
2:14, 2:20, 3:5, 3:9
**LLP** [7] - 2:5, 2:8,
2:17, 2:21, 3:2, 3:10,
3:13
**loaded** [2] - 33:17
**loads** [1] - 70:4
**local** [2] - 27:6, 58:21
**located** [3] - 53:11,
58:15, 59:12
**LOCKARD** [6] - 3:2,
5:11, 5:14, 6:12,
52:10, 92:4
**Lockard** [7] - 5:12,
5:14, 6:12, 52:7,
52:11, 84:2, 92:4
**lockdown** [1] - 39:6
**log** [36] - 61:7, 61:13,
62:16, 63:2, 63:8,
63:14, 63:19, 63:20,
64:14, 65:3, 65:17,
66:6, 67:2, 68:24,
69:18, 69:19, 71:2,
72:5, 73:5, 73:14,
74:5, 74:7, 74:16,
74:20, 74:21, 75:2,
75:7, 75:12, 76:6,
76:19, 77:8, 78:14,
79:3, 79:11, 79:16
**logistics** [1] - 24:1
**logs** [6] - 63:11, 72:18,
77:6, 78:20, 78:23,
79:9
**Lomax** [1] - 85:7
**LOMAX** [1] - 85:7
**look** [5] - 20:13, 59:22,
69:20, 78:9, 78:24
**looked** [3] - 8:7,
69:19, 79:16
**looking** [7] - 23:17,
36:21, 36:23, 46:18,
46:22, 50:17, 59:23,
66:8, 67:15, 67:20,
69:11, 70:3, 79:7
**looks** [5] - 30:6, 37:22,
45:6, 61:6, 89:6
**LORETTA** [1] - 3:19
**Loretta** [1] - 83:18
**Lori** [11] - 5:7, 6:4,
9:19, 16:8, 20:19,
22:14, 25:3, 26:18,
29:7, 52:5, 82:17
**LORI** [1] - 3:3
**Los** [1] - 3:15
**Losartan** [3] - 57:3,

57:22, 58:25
**Louis** [2] - 82:9, 82:11
**Louisiana** [2] - 1:21, 2:13
**love** [2] - 28:4, 79:18
**Ltd** [2] - 2:20, 3:5
**luck** [1] - 38:1

## M

**Macao** [1] - 31:18
**Magistrate** [3] - 9:25, 22:24, 37:18
**maintains** [1] - 36:11
**major** [2] - 15:17, 62:14
**majority** [1] - 55:9
**management** [1] - 24:19
**manner** [1] - 43:19
**manufacturer** [2] - 63:12, 71:3
**manufacturers** [1] - 70:19
**March** [6] - 33:18, 35:4, 35:17, 40:10, 92:25, 93:12
**marker** [3] - 49:18, 50:3, 50:4
**Market** [1] - 1:18
**MARLENE** [1] - 2:15
**Marlene** [5] - 57:12, 57:23, 58:3, 84:6, 85:21
**Martinez** [1] - 91:8
**massive** [2] - 24:10, 54:17
**MASTER** [1] - 1:11
**Master** [8] - 4:2, 16:14, 19:17, 22:25, 57:22, 60:15, 60:16, 60:18
**material** [5] - 43:5, 49:25, 50:15, 50:16, 52:22
**matter** [14] - 7:11, 18:8, 19:19, 19:25, 23:19, 23:21, 27:22, 43:10, 43:17, 44:14, 85:19, 87:10, 89:17, 94:20
**matters** [4] - 18:12, 31:24, 85:1, 85:4
**MAZIE** [1] - 1:13
**MDL** [7] - 7:19, 7:21, 7:22, 8:17, 59:1, 59:11, 93:25
**mean** [10] - 16:14, 20:11, 27:4, 29:12, 48:22, 52:4, 67:18, 73:13, 75:13, 94:8
**meaningful** [3] - 36:5,

68:14, 74:13
**means** [1] - 92:19
**meant** [2] - 10:2, 24:7
**meantime** [1] - 44:4
**mechanical** [1] - 1:25
**Medrano** [1] - 91:9
**MEDRANO** [1] - 91:9
**meet** [36] - 6:15, 8:1, 37:11, 41:24, 43:10, 45:21, 48:22, 57:14, 57:21, 57:24, 60:3, 60:21, 61:12, 62:15, 62:20, 63:23, 64:8, 64:22, 65:1, 65:16, 65:19, 65:24, 66:5, 68:14, 70:1, 73:3, 73:7, 79:19, 83:4, 84:8, 86:17, 86:18, 86:20, 92:10, 92:15, 93:21
**meet-and-confer** [5] - 57:14, 84:8, 86:17, 86:20, 92:15
**meeting** [2] - 46:6, 57:12
**member** [2] - 47:1, 47:5
**members** [3] - 16:16, 17:3, 84:1
**memorialize** [1] - 92:18
**mentioned** [2] - 31:18, 73:3
**merit** [1] - 25:1
**merits** [1] - 21:25
**met** [4] - 6:18, 48:25, 92:11, 94:5
**metadata** [4] - 74:24, 75:1, 75:6, 75:15
**mid** [10] - 9:12, 9:14, 10:3, 11:11, 12:10, 12:21, 19:5, 21:7, 21:8, 29:11
**mid-month** [9] - 9:12, 9:14, 10:3, 11:11, 12:10, 12:21, 19:5, 21:7, 21:8
**mid-week** [1] - 29:11
**middle** [1] - 26:8
**midnight** [2] - 39:17, 64:17
**might** [6] - 8:15, 18:3, 22:20, 23:12, 58:13, 94:1
**millions** [4] - 50:14, 70:21, 70:22
**minimum** [1] - 68:2
**Minneapolis** [1] - 2:16
**Minnesota** [1] - 2:16
**minutes** [5] - 19:8,

23:4, 36:2, 64:16, 80:17
**mirror** [1] - 7:21
**missed** [2] - 82:7, 83:15
**missing** [2] - 72:11, 86:15
**misspeak** [1] - 42:16
**Mitchell** [1] - 1:7
**MITCHELL** [1] - 2:2
**mix** [1] - 16:17
**modifications** [3] - 35:6, 35:23, 36:10
**modified** [1] - 34:4
**modify** [1] - 37:13
**modifying** [1] - 37:12
**moment** [1] - 48:3
**Monday** [2] - 42:17, 64:16
**monstrous** [1] - 27:11
**month** [19] - 9:12, 9:14, 10:3, 11:11, 12:10, 12:21, 12:23, 19:5, 21:7, 21:8, 21:23, 22:4, 22:19, 26:11, 65:22, 77:8, 88:12, 88:17, 91:21
**monthly** [1] - 19:15
**months** [7] - 30:21, 48:13, 49:16, 54:15, 54:22, 59:7, 76:16
**morning** [23] - 4:13, 4:15, 4:17, 4:20, 4:23, 5:4, 5:7, 5:17, 5:18, 5:19, 5:22, 9:19, 36:2, 50:18, 56:6, 58:4, 58:10, 61:20, 62:20, 63:19, 65:23, 66:14, 87:15
**MORRIS** [1] - 2:17
**Morris** [2] - 5:5, 72:16
**most** [3] - 25:25, 59:1, 78:1
**mostly** [1] - 81:19
**Motion** [3] - 16:14, 87:10, 89:16
**motion** [10] - 33:9, 33:11, 41:1, 42:8, 42:10, 79:13, 79:22, 82:12, 83:13, 83:19
**motions** [6] - 42:6, 42:7, 42:25, 44:3, 81:17, 81:20
**motl** [1] - 91:19
**MOTL** [1] - 91:19
**move** [19] - 8:17, 13:18, 33:8, 35:24, 36:19, 38:13, 38:24, 39:7, 39:22, 39:24, 41:18, 43:25, 44:25,

55:23, 77:1, 77:14, 79:24, 80:5, 87:11
**moved** [4] - 35:18, 36:12, 36:18, 42:21
**moving** [11] - 16:7, 16:11, 18:24, 19:16, 19:19, 35:18, 35:20, 45:17, 64:25, 78:18, 91:17
**MR** [115] - 4:13, 4:15, 4:17, 4:23, 5:4, 5:16, 5:19, 7:5, 7:7, 7:13, 8:4, 9:8, 9:16, 12:7, 14:5, 14:10, 15:4, 15:5, 15:6, 19:3, 20:9, 21:18, 23:25, 24:2, 24:5, 26:2, 27:10, 28:11, 28:14, 29:2, 29:11, 29:21, 31:13, 31:20, 31:25, 36:23, 37:1, 37:4, 41:2, 41:6, 41:14, 41:22, 41:24, 42:10, 42:11, 42:12, 42:13, 42:15, 42:19, 45:5, 45:9, 46:11, 46:25, 47:7, 48:18, 50:7, 54:3, 56:5, 56:6, 56:8, 56:22, 61:8, 61:11, 63:5, 63:8, 65:11, 65:13, 66:9, 66:11, 67:21, 68:9, 69:5, 69:8, 70:12, 70:14, 71:15, 72:8, 72:10, 72:15, 73:2, 74:3, 74:17, 75:13, 76:2, 76:4, 76:15, 78:17, 80:23, 82:24, 83:25, 85:2, 85:6, 85:10, 85:14, 85:23, 85:25, 86:5, 86:13, 87:13, 87:24, 88:1, 88:3, 88:6, 88:21, 88:22, 88:25, 89:22, 90:5, 90:10, 90:25, 91:15, 92:1, 93:3, 93:18, 94:14
**MS** [48] - 4:20, 5:7, 5:11, 5:14, 5:22, 6:12, 9:19, 11:22, 12:3, 14:9, 16:8, 20:19, 21:11, 22:14, 22:17, 25:4, 26:19, 27:1, 27:3, 27:7, 28:4, 28:9, 28:15, 28:23, 29:8, 29:14, 45:25, 52:6, 52:9, 52:10, 57:7, 57:10, 58:2, 58:4, 58:23, 59:21, 59:25, 60:13, 80:24, 82:17, 82:21,

83:18, 84:4, 84:6, 84:21, 85:21, 85:24, 92:4
**multiple** [5] - 70:19, 89:3, 89:9, 89:14
**must** [1] - 39:9
**mute** [1] - 4:7
**Mylan** [28] - 2:23, 5:17, 50:8, 50:13, 61:7, 61:13, 61:17, 61:25, 63:1, 63:4, 63:6, 63:9, 63:16, 63:25, 64:8, 64:16, 65:16, 66:6, 66:20, 67:2, 70:17, 70:23, 72:25, 73:7, 73:13, 75:11, 76:21, 76:24
**Mylan's** [6] - 61:20, 62:16, 66:22, 73:4, 73:22, 76:6

## N

**name** [7] - 62:13, 66:16, 66:19, 71:1, 77:7, 86:1
**names** [18] - 29:4, 61:21, 61:22, 62:17, 62:22, 63:21, 65:4, 66:14, 67:13, 68:1, 68:17, 68:18, 68:20, 69:19, 73:19, 76:8, 76:9
**Naomi** [1] - 89:20
**Napolitano** [1] - 85:1
**narrative** [1] - 27:14
**Nathan** [1] - 87:17
**national** [1] - 31:10
**nationals** [1] - 30:17
**NE** [1] - 3:4
**near** [1] - 46:20
**nearly** [2] - 9:2, 58:7
**necessarily** [1] - 68:11
**necessary** [8] - 12:20, 35:14, 40:4, 68:23, 69:3, 86:15, 86:20
**necessity** [1] - 51:25
**need** [40] - 6:22, 6:24, 8:19, 9:6, 15:18, 19:10, 20:25, 21:20, 22:5, 22:7, 22:22, 25:2, 31:23, 33:18, 36:12, 37:13, 40:4, 40:21, 41:19, 47:21, 51:18, 55:20, 55:25, 59:14, 61:16, 63:21, 65:24, 66:2, 67:14, 67:19, 68:19, 68:22, 70:1, 74:21, 77:5, 77:12, 82:2, 84:16, 90:23, 91:23

**needed** [5] - 24:20, 46:12, 47:24, 71:16, 74:23
**needs** [8] - 35:10, 35:11, 45:23, 63:1, 74:23, 77:12, 84:19, 89:8
**negotiate** [1] - 39:19
**negotiated** [2] - 72:13, 74:18
**negotiating** [2] - 6:23, 56:13
**never** [6] - 14:12, 14:17, 15:7, 38:9, 74:7, 82:13
**NEW** [1] - 1:1
**new** [4] - 30:24, 59:10, 59:11, 60:21
**New** [6] - 1:8, 1:15, 1:21, 2:12, 8:14, 78:5
**Newcombe** [4] - 85:18, 88:23, 89:16, 91:13
**NEWCOMBE** [1] - 88:24
**next** [14] - 8:2, 26:25, 44:2, 46:14, 55:24, 56:16, 57:2, 57:25, 77:17, 78:4, 83:4, 90:2, 90:22, 91:21
**nice** [3] - 22:21, 26:24, 60:18
**NIGH** [8] - 2:3, 4:17, 7:5, 7:7, 45:9, 88:25, 89:22, 93:3
**Nigh** [9] - 4:17, 7:7, 45:9, 88:25, 89:22, 92:7, 92:15, 93:1, 93:4
**night** [6] - 6:4, 10:20, 10:24, 39:17, 40:11, 40:13
**nine** [1] - 90:22
**non** [1] - 25:19
**non-advocacy** [1] - 25:19
**none** [4] - 35:12, 35:14, 39:25, 41:11
**note** [3] - 61:24, 84:7, 93:14
**noted** [1] - 56:11
**nothing** [2] - 32:9, 56:25
**nothing's** [1] - 8:16
**notice** [4] - 33:4, 59:5, 59:16, 82:13
**notices** [1] - 19:23
**notified** [2] - 53:24, 83:5

**noting** [1] - 42:20
**notion** [1] - 49:15
**notwithstanding** [1] - 31:5
**November** [4] - 34:4, 50:16, 83:7, 93:7
**Number** [14] - 6:3, 6:5, 7:10, 9:11, 21:12, 21:15, 29:16, 29:18, 61:2, 81:16, 81:17, 89:17
**number** [24] - 6:20, 7:20, 11:11, 11:12, 29:23, 33:18, 34:17, 38:9, 38:15, 38:16, 47:13, 49:2, 49:3, 49:11, 58:6, 58:14, 58:16, 61:21, 67:2, 71:1, 77:7, 84:23, 89:13
**NUMBER** [1] - 1:3
**numbers** [1] - 28:1
**numerous** [1] - 87:5

**O**

**objection** [4] - 19:25, 90:16, 91:3, 91:16
**objections** [1] - 19:7
**obligated** [1] - 92:22
**obligation** [1] - 75:2
**obligations** [4] - 48:25, 49:24, 55:6, 55:7
**observed** [1] - 24:22
**obviate** [2] - 56:14, 75:1
**obviously** [10] - 13:12, 21:9, 43:23, 68:25, 69:14, 71:16, 71:18, 75:16, 76:12, 94:8
**occur** [1] - 52:25
**occurred** [2] - 46:20, 92:9
**occurring** [1] - 44:7
**occurs** [1] - 55:17
**OF** [1] - 1:1
**off-record** [1] - 16:1
**off-the-record** [1] - 13:18
**offer** [1] - 39:3
**offering** [2] - 23:6, 28:5
**Official** [1] - 1:23
**Ohio** [1] - 3:12
**old** [1] - 27:6
**once** [4] - 12:23, 49:20, 59:15, 94:5
**One** [1] - 2:22
**one** [35] - 8:11, 11:13, 11:16, 12:8, 14:23,

15:13, 17:13, 17:14, 31:17, 32:2, 35:20, 37:15, 38:9, 38:15, 38:25, 40:3, 40:12, 45:13, 48:10, 53:7, 54:20, 57:15, 61:16, 71:19, 74:4, 74:18, 78:23, 84:12, 85:9, 85:14, 87:15, 91:13, 92:5
**one's** [1] - 89:24
**one-on-one** [1] - 11:13
**ones** [1] - 81:18
**ongoing** [4] - 9:11, 37:10, 47:3, 87:1
**open** [3] - 4:1, 18:15, 25:24
**opened** [1] - 12:17
**opinion** [2] - 61:21, 66:25
**Opinion** [1] - 81:16
**opportunities** [1] - 49:12
**opportunity** [9] - 10:16, 20:4, 33:25, 34:20, 43:14, 55:17, 60:9, 60:10, 64:19
**opposed** [5] - 12:10, 16:3, 37:5, 37:12, 67:9
**opposition** [1] - 41:3
**Order** [1] - 81:17
**order** [52] - 6:5, 6:9, 6:23, 7:10, 7:18, 7:23, 24:19, 30:4, 33:8, 33:9, 33:11, 34:5, 34:14, 34:17, 36:7, 37:20, 37:22, 38:2, 38:3, 41:1, 42:16, 42:25, 49:9, 50:12, 52:25, 57:19, 58:8, 59:12, 59:19, 61:4, 63:10, 64:3, 70:8, 71:16, 76:19, 77:13, 77:20, 82:13, 83:14, 83:15, 83:16, 85:8, 88:8, 88:19, 90:3, 90:21, 92:17, 92:22, 93:15, 93:24, 94:3
**ordered** [1] - 36:20
**orders** [13] - 23:20, 44:3, 52:16, 53:3, 53:6, 53:8, 57:3, 82:7, 84:24, 85:4, 85:17, 88:13, 90:14
**organization** [2] - 68:22, 69:21
**organizational** [1] -

67:16
**original** [3] - 9:23, 10:10, 16:21
**Orleans** [2] - 1:21, 2:12
**otherwise** [3] - 36:18, 55:25, 83:23
**outset** [3] - 19:17, 32:10, 65:15
**outside** [5] - 25:10, 61:19, 66:18, 68:4, 69:11
**outstanding** [2] - 45:12, 86:17
**over-zealous** [2] - 79:25, 80:1
**overall** [1] - 44:9
**overburden** [1] - 70:2
**overlap** [8] - 30:16, 36:14, 36:16, 39:15, 39:21, 40:10, 40:13, 40:20
**overlapping** [8] - 30:12, 30:19, 30:24, 33:21, 34:3, 34:13, 35:4, 44:6
**overlaying** [1] - 9:1
**overly** [2] - 70:18, 71:22
**overseas** [2] - 58:15, 59:12
**oversight** [1] - 91:2
**overview** [6] - 11:16, 21:25, 22:7, 23:14, 25:11
**own** [3] - 15:11, 28:19, 30:20
**Oxford** [1] - 2:22

**P**

**P.A** [1] - 2:2
**P.C** [2] - 1:16, 3:7
**p.m** [6] - 40:11, 40:12, 40:13, 80:13, 80:18, 94:17
**P3** [1] - 56:2
**Pacific** [1] - 2:9
**PACKARD** [1] - 2:8
**Page** [5] - 29:24, 37:10, 75:8, 89:6, 89:17
**page** [4] - 23:16, 23:23, 24:5, 86:9
**pages** [11] - 24:9, 25:6, 25:9, 25:15, 25:17, 25:21, 26:6, 26:9, 27:4, 27:5, 27:14
**pain** [3] - 18:25, 37:25, 44:17

**PAPANTONIO** [1] - 2:2
**parameters** [1] - 24:21
**Parekh** [6] - 47:7, 50:18, 51:16, 54:3, 74:17, 75:14
**PAREKH** [4] - 2:9, 47:7, 54:3, 74:17
**Park** [1] - 3:14
**Parkway** [2] - 1:14, 3:8
**part** [10] - 18:24, 38:14, 43:16, 63:24, 65:22, 66:22, 66:23, 67:8, 91:2
**participants** [1] - 72:6
**particular** [12] - 45:1, 45:3, 47:19, 50:9, 52:3, 53:22, 53:25, 54:24, 54:25, 56:11, 79:4
**particularity** [1] - 79:5
**particularly** [1] - 71:5
**parties** [21] - 5:5, 6:15, 6:18, 6:24, 29:22, 34:16, 34:23, 35:5, 35:24, 36:3, 36:19, 37:12, 53:9, 53:22, 58:24, 59:9, 59:18, 60:17, 72:17, 85:15, 92:11
**parties'** [1] - 6:8
**parts** [1] - 64:25
**party** [6] - 30:3, 30:7, 30:12, 30:16, 72:2, 76:22
**past** [7] - 13:3, 15:9, 18:18, 18:19, 69:15, 70:6, 89:14
**paste** [1] - 73:5
**Patterson** [1] - 91:7
**PATTERSON** [1] - 91:8
**Pedano** [3] - 1:23, 81:2, 94:22
**penalized** [1] - 60:19
**Pennsylvania** [4] - 1:18, 2:19, 2:23, 3:8
**Pensacola** [1] - 2:4
**people** [23] - 13:8, 14:1, 14:3, 14:6, 15:18, 16:3, 16:4, 20:18, 21:2, 24:15, 62:10, 62:13, 66:15, 66:16, 66:21, 67:13, 67:14, 67:22, 68:1, 68:3, 69:17, 74:11, 89:14
**percent** [4] - 33:20, 48:2, 54:11

**percolating** [1] - 52:14
**perhaps** [10] - 10:12, 22:23, 25:13, 44:20, 61:6, 62:12, 62:22, 65:22, 66:2, 66:18
**period** [4] - 14:22, 34:19, 46:21, 49:2
**permission** [1] - 50:20
**person** [11] - 11:16, 21:1, 23:1, 37:4, 45:1, 58:20, 63:17, 68:22, 69:1, 77:7, 83:21
**person's** [2] - 70:6, 71:15
**personal** [2] - 6:21, 92:13
**personally** [1] - 88:15
**persons** [1] - 19:8
**perspective** [10] - 21:19, 24:20, 26:5, 26:14, 46:9, 50:8, 55:15, 56:21, 57:6, 65:10
**PFS** [8] - 86:13, 86:16, 87:7, 87:12, 87:13, 87:16, 87:19, 89:10
**Pharma** [3] - 3:6, 3:9, 3:9
**Pharmaceutical** [1] - 3:5
**Pharmaceuticals** [5] - 2:19, 2:20, 2:23, 3:5, 5:17
**pharmacy** [1] - 5:23
**Pharmacy** [2] - 3:15, 5:24
**phase** [1] - 16:12
**Philadelphia** [2] - 1:18, 2:19
**phone** [1] - 15:23
**phones** [1] - 4:7
**pick** [1] - 93:8
**picks** [5] - 6:19, 92:13, 92:19, 93:8, 93:9
**picturing** [1] - 66:10
**piece** [4] - 24:23, 26:9, 72:12
**Piedmont** [1] - 3:4
**PIETRAGALLO** [1] - 2:21
**Pittsburgh** [1] - 2:23
**place** [2] - 18:4, 31:17
**placed** [2] - 38:19, 67:17
**plaintiff** [11] - 4:21, 4:24, 17:24, 32:2, 61:9, 65:14, 86:24, 88:24, 89:9, 89:20, 92:13

**Plaintiff** [1] - 82:6
**plaintiff's** [2] - 84:17, 87:10
**Plaintiffs** [8] - 1:15, 1:19, 1:22, 2:4, 2:7, 2:10, 2:13, 2:16
**plaintiffs** [100] - 4:12, 4:14, 4:16, 4:18, 5:1, 6:21, 7:4, 7:17, 7:25, 8:3, 8:5, 8:23, 11:14, 12:6, 12:11, 12:18, 14:23, 30:11, 30:23, 31:3, 32:11, 32:25, 33:5, 33:22, 33:25, 34:12, 34:20, 34:25, 35:1, 35:6, 35:13, 35:16, 35:17, 35:23, 36:1, 36:6, 36:15, 37:24, 38:20, 41:16, 43:3, 43:6, 45:10, 48:21, 49:9, 49:11, 49:16, 50:2, 50:6, 50:15, 50:22, 51:1, 51:4, 51:16, 52:17, 53:13, 53:21, 56:13, 56:23, 63:14, 63:16, 63:20, 64:1, 64:5, 64:13, 64:14, 65:4, 70:17, 70:24, 71:6, 71:10, 74:8, 76:5, 76:17, 77:5, 77:10, 77:17, 78:8, 78:18, 79:2, 81:19, 83:4, 83:5, 84:7, 85:20, 86:18, 87:4, 89:1, 90:16, 91:4, 91:16, 91:25, 92:7, 92:8, 92:14, 93:4, 93:9, 93:21, 94:5
**plaintiffs'** [18] - 14:7, 17:19, 19:11, 21:19, 30:20, 32:7, 32:18, 32:22, 33:4, 43:16, 46:12, 56:20, 57:13, 84:9, 88:15, 92:5, 92:23, 93:12
**Plaintiffs'** [2] - 86:6, 91:12
**plan** [1] - 9:11
**plane** [1] - 39:5
**players** [1] - 24:8
**pleadings** [1] - 60:21
**plenty** [2] - 21:21, 25:8
**plus** [1] - 33:13
**pocket** [1] - 11:18
**point** [21] - 6:22, 7:12, 14:12, 32:1, 42:1, 45:16, 45:20, 46:22, 47:18, 53:17, 54:5,

54:7, 55:5, 60:6, 60:14, 62:14, 62:24, 77:1, 90:23, 93:20, 94:1
**points** [3] - 30:2, 30:18, 33:24
**pool** [6] - 6:9, 6:17, 6:20, 92:10, 92:14, 93:10
**portion** [1] - 59:1
**poses** [1] - 21:9
**position** [12] - 8:9, 9:13, 32:12, 37:1, 38:21, 44:2, 48:8, 59:3, 69:18, 71:15, 92:24, 93:11
**positions** [3] - 24:11, 25:1, 29:24
**possible** [3] - 26:22, 41:9, 87:4
**postpone** [2] - 55:19, 88:11
**potential** [3] - 6:20, 9:4, 92:14
**potentially** [4] - 8:21, 11:12, 42:21, 59:7
**PowerPoint** [1] - 25:24
**practice** [2] - 42:8, 42:10
**precedent** [1] - 60:4
**preempt** [1] - 52:4
**prefer** [3] - 11:6, 39:5, 70:9
**preference** [1] - 22:18
**preferred** [1] - 20:10
**prejudiced** [1] - 54:9
**premature** [2] - 50:3, 65:10
**prepare** [1] - 55:18
**prepared** [3] - 35:24, 36:19, 47:14
**preparing** [1] - 72:18
**prepping** [1] - 53:12
**present** [1] - 78:25
**PRESENT** [1] - 3:18
**presentable** [1] - 20:14
**presentation** [2] - 25:19, 44:14
**presented** [5] - 34:25, 43:15, 79:12, 79:13, 86:25
**presenting** [1] - 51:25
**presents** [1] - 31:19
**pretty** [2] - 9:23, 81:18
**preview** [1] - 58:12
**previous** [1] - 82:7
**previously** [2] - 54:8, 59:12

**Prinston** [1] - 2:19
**prioritization** [1] - 49:13
**prioritize** [3] - 49:12, 49:14, 93:25
**prioritized** [2] - 55:2, 55:3
**priority** [6] - 49:9, 49:10, 54:21, 54:22, 55:4
**private** [1] - 13:7
**privilege** [45] - 61:7, 62:8, 62:16, 63:8, 63:11, 63:14, 65:17, 66:6, 67:2, 68:24, 69:17, 70:1, 70:6, 70:24, 71:17, 72:3, 72:5, 73:4, 73:13, 73:14, 73:16, 73:24, 74:2, 74:5, 74:7, 74:14, 74:16, 74:20, 74:21, 75:2, 75:7, 75:12, 75:18, 75:19, 75:24, 76:6, 77:6, 78:19, 78:23, 79:1, 79:3, 79:5, 79:11, 79:16, 80:5
**privileged** [12] - 62:4, 64:4, 64:15, 65:8, 67:3, 67:6, 70:4, 73:19, 73:22, 76:12, 77:22, 80:1
**problem** [12] - 15:23, 19:9, 19:14, 20:3, 20:6, 21:10, 34:21, 35:1, 36:14, 40:7, 63:24, 68:13
**problems** [3] - 15:17, 37:21, 38:16
**procedural** [1] - 18:12
**procedure** [1] - 64:5
**proceed** [9] - 6:1, 6:5, 21:7, 60:5, 89:24, 92:24, 93:11, 93:17, 94:1
**proceeding** [1] - 46:15
**PROCEEDINGS** [1] - 4:1
**Proceedings** [1] - 1:25
**proceedings** [2] - 94:17, 94:20
**process** [27] - 6:16, 6:18, 6:22, 13:8, 17:17, 18:4, 37:11, 42:11, 52:18, 53:6, 53:12, 54:8, 57:4, 57:21, 58:11, 58:19, 68:13, 69:25, 70:2, 76:15, 77:2, 77:12,

78:1, 92:11, 92:12, 92:17, 93:8
**processed** [1] - 49:6
**processes** [4] - 16:25, 18:3, 18:25, 64:3
**PROCTOR** [1] - 2:2
**produce** [15] - 48:4, 49:8, 50:11, 50:15, 51:2, 51:4, 52:19, 54:16, 54:17, 63:15, 68:8, 71:9, 75:4, 75:6, 75:15
**produced** [17] - 1:25, 49:1, 49:6, 49:11, 53:12, 54:10, 63:9, 63:11, 68:6, 68:10, 68:11, 68:12, 71:14, 72:2, 74:2, 77:19
**producing** [1] - 48:2
**product** [1] - 79:6
**production** [30] - 46:16, 46:20, 48:25, 49:1, 49:6, 49:7, 49:13, 49:24, 50:23, 53:3, 53:8, 53:10, 54:8, 54:13, 54:14, 54:18, 54:23, 54:24, 55:1, 55:4, 55:7, 56:10, 77:13, 77:24, 78:3, 78:11, 78:20
**productions** [4] - 48:2, 49:17, 50:1, 53:1
**productive** [3] - 58:6, 62:20, 76:25
**PRODUCTS** [1] - 1:4
**prohibiting** [1] - 32:9
**prohibition** [1] - 56:12
**prompt** [2] - 13:18, 18:19
**promptly** [3] - 18:22, 41:9, 60:11
**pronounced** [1] - 86:5
**proper** [1] - 74:16
**properly** [2] - 55:21, 80:4
**proposal** [10] - 6:16, 8:7, 30:7, 30:14, 34:24, 35:8, 36:3, 36:8, 43:23, 43:24
**proposals** [2] - 30:15, 36:5
**propose** [4] - 6:1, 7:24, 23:9, 25:9
**proposed** [15] - 6:9, 6:19, 7:18, 10:24, 21:15, 33:1, 33:6, 33:13, 33:22, 35:5, 35:6, 35:13, 36:9, 36:17, 70:16

**proposing** [2] - 10:9,
14:20
**protection** [2] - 79:5,
79:6
**protective** [7] - 33:8,
33:9, 33:11, 41:1,
42:16, 42:25, 44:3
**protocol** [12] - 64:17,
64:21, 72:13, 72:18,
72:21, 74:1, 74:5,
74:18, 74:20, 74:24,
75:8, 78:24
**protocols** [1] - 76:23
**prove** [1] - 79:9
**proves** [1] - 80:1
**provide** [13] - 28:7,
29:3, 44:22, 57:24,
59:8, 65:8, 68:2,
68:17, 68:20, 70:10,
70:25, 74:21, 75:2
**provided** [11] - 7:17,
63:19, 63:20, 65:5,
71:21, 71:22, 72:5,
74:5, 76:7, 77:6,
87:6
**provides** [3] - 73:23,
74:21, 78:25
**providing** [3] - 68:16,
74:24, 75:20
**provisions** [1] - 8:20
**public** [1] - 39:4
**pure** [1] - 11:13
**purpose** [1] - 14:15
**purposes** [1] - 74:14
**pursuant** [4] - 53:8,
92:9, 92:21, 93:6
**push** [4] - 26:20,
34:17, 41:19, 66:3
**pushed** [1] - 35:7
**put** [15] - 4:6, 17:22,
18:10, 23:16, 23:17,
24:6, 25:6, 28:19,
28:23, 38:24, 49:18,
56:9, 80:11, 82:1,
88:18
**putting** [2] - 87:18,
91:4

### Q

**QC** [1] - 67:25
**quality** [6] - 62:2,
66:24, 67:4, 67:8,
67:25
**questioned** [1] - 65:7
**questions** [4] - 8:24,
28:3, 65:6, 71:19
**quick** [1] - 60:11
**quicker** [1] - 14:1
**quickly** [3] - 11:19,
26:22, 87:11

**quite** [2] - 20:5, 52:14
**quote** [1] - 67:3

### R

**rabble** [1] - 16:10
**rabble-rouser** [1] -
16:10
**radar** [1] - 48:12
**RAFFERTY** [1] - 2:2
**raise** [14] - 8:1, 9:4,
9:17, 30:18, 30:23,
34:12, 47:8, 48:11,
48:14, 51:12, 64:9,
65:1, 78:19, 83:4
**raised** [12] - 10:20,
16:9, 20:21, 22:19,
31:1, 31:3, 46:17,
54:5, 64:15, 73:7,
91:23, 93:20
**raising** [3] - 51:24,
54:6, 64:20
**ran** [1] - 58:15
**RANDOLPH** [1] - 2:6
**rank** [2] - 71:1, 77:7
**rare** [1] - 53:19
**RASPANTI** [1] - 2:21
**rather** [3] - 23:8,
23:19, 40:10
**RE** [1] - 1:4
**re** [1] - 72:19
**re-litigate** [1] - 72:19
**reach** [8] - 44:1,
44:16, 44:20, 45:22,
60:8, 60:12, 83:25,
84:14
**reached** [1] - 88:10
**reaches** [1] - 13:9
**reaching** [2] - 18:21,
83:3
**read** [2] - 31:7, 93:15
**reader** [1] - 27:22
**ready** [5] - 49:6,
50:19, 50:23, 51:5,
71:5
**real** [1] - 78:8
**reality** [1] - 39:9
**realize** [3] - 28:20,
78:14, 84:12
**really** [38] - 11:5,
13:20, 14:25, 15:3,
20:25, 21:22, 22:4,
22:17, 22:21, 25:2,
25:24, 30:20, 32:2,
32:15, 33:24, 34:20,
35:1, 36:4, 36:5,
42:21, 44:22, 47:8,
48:21, 50:1, 50:25,
59:6, 62:19, 62:25,
64:21, 65:2, 65:9,
72:19, 73:5, 75:23,

78:9, 79:7, 93:22
**realtime** [1] - 22:3
**reason** [2] - 35:20,
94:8
**reasonable** [1] - 37:8
**rebuttal** [1] - 54:2
**recap** [1] - 30:1
**receive** [1] - 86:13
**received** [5] - 6:2,
11:24, 59:13, 61:4,
74:11
**receiving** [1] - 23:2
**recently** [3] - 13:4,
24:11, 71:11
**reception** [1] - 94:7
**receptive** [1] - 94:8
**recess** [2] - 80:13,
80:18
**recipient** [2] - 63:17,
71:1
**recipients** [3] - 17:24,
71:18, 76:8
**recite** [1] - 24:18
**recognize** [1] - 37:13
**recollection** [1] -
12:13
**record** [13] - 13:18,
16:1, 27:18, 28:1,
28:8, 33:12, 36:24,
38:19, 48:24, 49:23,
54:4, 78:10, 94:20
**recorded** [1] - 1:25
**records** [2] - 86:15,
87:7
**redepose** [3] - 53:18,
55:19, 70:9
**redeposition** [2] -
52:1, 80:3
**redo** [2] - 72:20,
77:25, 79:11
**Redondo** [1] - 2:10
**reduce** [2] - 39:15,
40:20
**reduced** [1] - 39:21
**reduces** [1] - 40:9
**Reeder** [1] - 87:17
**reference** [1] - 61:25
**referring** [1] - 59:19
**reflects** [1] - 49:23
**regard** [2] - 58:11,
69:17
**regarding** [3] - 62:8,
63:1, 76:8
**regulatory** [1] - 66:25
**rejoin** [1] - 80:15
**relate** [2] - 34:18,
39:25
**related** [5] - 10:11,
10:18, 31:8, 42:22,
78:15

**relates** [3] - 10:19,
34:21, 67:1
**relating** [2] - 57:16,
67:3
**relatively** [1] - 54:14
**relevant** [3] - 42:2,
47:19, 47:20
**remain** [1] - 83:6
**remedy** [3] - 50:21,
79:10
**remind** [2] - 4:10,
81:22
**remove** [3] - 85:16,
91:1, 91:13
**removed** [2] - 89:8,
90:23
**repeat** [2] - 81:18,
90:8
**reply** [4] - 18:22,
28:19, 41:7, 88:5
**Reply** [2] - 11:21,
17:25
**replying** [1] - 18:18
**report** [4] - 42:3, 43:5,
43:13, 44:24
**Reporter** [1] - 1:23
**reporter** [1] - 4:9
**REPORTER** [8] - 7:6,
7:8, 71:24, 81:2,
81:5, 81:9, 81:13,
90:7
**Reporter/**
**Transcriber** [1] -
94:22
**reports** [5] - 40:5,
40:7, 41:10, 41:25,
43:7
**represent** [3] - 17:1,
57:8, 89:23
**represented** [1] - 59:2
**representing** [2] -
16:3, 52:17
**request** [8] - 11:9,
18:7, 32:25, 49:12,
72:15, 85:16, 85:17,
93:6
**requested** [2] - 49:9,
77:8
**requesting** [2] - 12:16,
90:14
**requests** [3] - 18:19,
49:14, 77:24
**require** [6] - 13:25,
27:6, 27:17, 44:23,
72:4, 74:1
**required** [7] - 18:19,
27:24, 60:19, 69:3,
70:21, 75:4, 75:6
**requires** [1] - 44:15
**requiring** [1] - 27:20

**requisite** [1] - 78:24
**reserve** [1] - 88:8
**reserving** [1] - 53:17
**reside** [3] - 62:11,
67:23, 67:24
**resolution** [1] - 55:22
**resolvable** [1] - 43:11
**resolve** [11] - 16:6,
19:15, 37:5, 37:23,
37:24, 41:9, 60:4,
79:20, 86:10, 93:23
**resolved** [9] - 35:11,
43:17, 44:3, 56:19,
78:4, 78:7, 85:3,
91:21, 91:24
**resources** [1] - 10:5
**respect** [15] - 6:17,
18:11, 49:25, 53:5,
56:10, 57:3, 64:2,
64:4, 78:19, 78:25,
85:16, 86:24, 87:1,
92:6, 92:16
**respectfully** [1] - 17:2
**respond** [6] - 64:18,
65:6, 65:11, 80:25,
83:10, 83:20
**responded** [1] - 17:14
**responding** [3] - 17:6,
17:15
**responds** [1] - 83:22
**response** [12] - 6:14,
11:25, 21:14, 50:12,
56:1, 60:25, 65:8,
80:9, 89:10, 90:17,
91:6, 91:18
**responses** [2] - 17:6,
56:12
**responsible** [2] -
83:22, 84:8
**responsive** [1] - 50:15
**rest** [3] - 11:18, 51:19,
84:1
**restrict** [1] - 19:24
**result** [3] - 18:14,
35:3, 72:20
**resulted** [1] - 92:13
**results** [1] - 30:12
**Retailer** [1] - 3:15
**retailer** [1] - 5:23
**retailers** [1] - 11:4
**retain** [2] - 15:19, 16:6
**rethink** [1] - 18:9
**returnable** [2] - 84:24,
90:15
**review** [6] - 23:15,
47:21, 50:14, 70:20,
77:5, 86:14
**reviewed** [2] - 51:8,
76:19
**reviewers** [2] - 52:19,

54:15
**reviewing** [1] - 47:9
**reviews** [2] - 34:10, 70:21
**revised** [1] - 34:17
**rewritten** [1] - 77:6
**Riffenburg** [1] - 90:19
**RIFFENBURG** [1] - 90:19
**ripe** [4] - 7:16, 8:6, 9:2, 78:17
**Rite** [2] - 3:16, 5:24
**RMR** [1] - 94:22
**road** [3] - 38:4, 44:12, 77:15
**Road** [2] - 2:6, 3:4
**Robert** [2] - 3:19, 4:1
**ROBERT** [1] - 1:10
**rogue** [1] - 15:10
**role** [2] - 68:20, 75:17
**roles** [3] - 62:21, 63:2, 66:13
**rolling** [9] - 48:1, 48:25, 49:1, 53:3, 53:7, 54:12, 54:13, 54:14, 55:7
**room** [1] - 38:14
**Roseland** [1] - 1:15
**rouser** [1] - 16:10
**RPR** [1] - 94:22
**RUBEN** [1] - 1:17
**ruben** [1] - 4:15
**rule** [1] - 21:3
**rules** [7] - 27:6, 58:21, 64:2, 64:21, 74:9, 75:3, 76:7
**rulings** [1] - 25:12
**running** [1] - 15:10

## S

**safe** [1] - 94:16
**sake** [1] - 60:17
**sales** [1] - 42:22
**Sarah** [1] - 5:22
**SARAH** [1] - 3:14
**satisfied** [2] - 49:13, 49:23
**scanning** [1] - 36:8
**schedule** [32] - 9:11, 24:19, 30:2, 30:4, 30:9, 30:10, 30:11, 32:24, 33:5, 33:15, 33:17, 34:1, 34:21, 34:23, 35:2, 35:25, 36:6, 37:12, 37:14, 37:21, 38:23, 39:15, 40:9, 40:16, 42:5, 44:9, 47:10, 47:22, 47:23, 50:25, 66:1, 66:2

**scheduled** [4] - 24:18, 43:19, 52:24
**schedules** [2] - 45:17, 46:4
**scheduling** [8] - 29:19, 31:2, 34:5, 34:17, 36:7, 38:11, 41:10, 92:22
**Schiano** [1] - 85:3
**SCHIANO** [1] - 85:4
**Schneider** [33] - 10:1, 10:17, 10:23, 12:14, 12:17, 13:4, 14:12, 14:15, 14:18, 15:9, 23:13, 30:2, 30:8, 30:10, 30:12, 30:25, 31:1, 33:7, 33:14, 34:10, 34:25, 35:25, 36:20, 37:17, 37:20, 38:19, 44:17, 49:12, 53:13, 54:6, 54:7, 54:8, 59:13
**Schneider's** [5] - 36:7, 37:18, 53:8, 70:8, 74:9
**school** [1] - 27:16
**Science** [1] - 25:18
**search** [2] - 49:2, 50:12
**second** [8] - 10:4, 47:22, 78:13, 80:11, 91:4, 91:10, 91:17, 91:21
**see** [28] - 11:19, 15:3, 20:16, 20:18, 21:9, 22:5, 22:11, 23:10, 30:6, 34:11, 43:25, 44:1, 44:5, 44:19, 48:16, 52:16, 59:25, 60:3, 64:6, 64:11, 77:15, 79:20, 80:11, 83:13, 87:21, 89:12, 94:6, 94:7
**seek** [1] - 55:19
**seeking** [2] - 22:1, 90:3
**seem** [3] - 43:10, 68:7, 71:22
**selected** [2] - 6:19, 16:25
**selection** [2] - 6:9, 6:17
**send** [7] - 20:21, 27:21, 28:7, 28:16, 28:20, 29:9, 81:25
**sending** [3] - 13:9, 17:21, 32:16
**sends** [1] - 18:7
**sense** [1] - 79:15
**sensitive** [1] - 8:23

**sent** [8] - 7:25, 16:13, 36:3, 39:1, 39:13, 39:21, 43:23, 86:18
**Sentry** [1] - 3:8
**separate** [1] - 60:18
**September** [3] - 31:3, 32:6, 87:14
**serial** [2] - 71:1, 77:7
**series** [2] - 82:5, 90:2
**serve** [4] - 41:25, 58:20, 59:14, 60:20
**served** [4] - 40:8, 40:9, 58:17, 59:5
**server** [1] - 19:1
**service** [6] - 57:4, 57:21, 58:11, 58:18, 59:17, 60:7
**services** [1] - 59:10
**set** [10] - 29:23, 34:5, 34:24, 45:7, 48:5, 56:12, 73:3, 82:12, 87:11, 88:13
**Seth** [18] - 5:4, 7:13, 9:7, 9:12, 9:16, 14:11, 17:12, 17:23, 18:17, 19:12, 28:20, 29:21, 41:13, 43:12, 48:18, 54:20, 72:11, 93:18
**SETH** [1] - 2:18
**Seth's** [1] - 50:8
**seven** [4] - 33:2, 33:6, 36:16
**several** [2] - 56:15, 57:13
**sharing** [1] - 14:19
**Sharon** [1] - 85:7
**Sheet** [1] - 86:7
**sheet** [1] - 86:8
**Sheets** [1] - 82:6
**Short** [4] - 57:2, 57:16, 57:18, 58:7
**shot** [1] - 48:10
**show** [10] - 82:13, 84:23, 85:5, 85:9, 85:16, 85:17, 88:19, 90:3, 90:14, 90:21
**show-cause** [1] - 84:23
**showing** [1] - 39:1
**side** [26] - 6:21, 11:2, 14:5, 14:7, 15:11, 17:11, 17:19, 19:11, 19:12, 19:25, 20:24, 25:10, 25:14, 25:19, 25:21, 28:24, 37:6, 44:14, 46:12, 48:17, 51:1, 55:15, 57:13, 84:9, 91:25
**sides** [9] - 6:19, 9:2,

14:16, 14:23, 22:9, 24:24, 24:25, 28:18, 37:13
**sides'** [1] - 70:5
**significant** [2] - 12:23, 19:25
**similar** [2] - 18:8
**simple** [3] - 14:22, 18:7, 71:9
**simplify** [1] - 24:12
**simply** [5] - 60:16, 64:6, 64:20, 76:4, 76:18
**simultaneous** [1] - 44:6
**simultaneously** [1] - 39:16
**Singapore** [1] - 31:18
**single** [2] - 27:5, 53:14
**single-spaced** [1] - 27:5
**sit** [1] - 76:6
**sitting** [2] - 52:18, 54:15
**situation** [4] - 33:21, 35:3, 38:25, 47:25
**six** [1] - 91:12
**size** [1] - 20:2
**skeptically** [1] - 62:9
**SLACK** [1] - 2:5
**slate** [1] - 5:1
**SLATER** [38] - 1:13, 1:14, 4:13, 8:4, 12:7, 14:5, 15:4, 15:6, 19:3, 20:9, 21:18, 23:25, 24:2, 24:5, 26:2, 27:10, 28:11, 28:14, 29:2, 29:11, 36:23, 37:1, 37:4, 41:2, 41:22, 41:24, 42:11, 42:13, 42:15, 45:5, 46:11, 46:25, 69:5, 69:8, 71:15, 74:3, 80:23, 92:1
**Slater** [27] - 4:13, 7:6, 8:4, 9:8, 10:20, 10:22, 12:7, 14:18, 15:6, 16:13, 16:18, 17:4, 20:21, 20:25, 21:17, 25:7, 26:20, 28:11, 30:11, 36:1, 36:24, 42:15, 64:23, 69:8, 70:16, 74:3, 92:1
**Slater's** [1] - 36:8
**sliced** [1] - 38:18
**slight** [2] - 25:5, 36:10
**smearing** [1] - 37:5
**SMITH** [3] - 3:19, 83:18, 84:4

**Smoot** [1] - 84:25
**SMOOT** [1] - 84:25
**Solco** [1] - 2:20
**solution** [2] - 50:21, 50:24
**someone** [3] - 37:7, 69:19, 90:11
**sometimes** [1] - 25:18
**somewhere** [2] - 39:6, 39:7
**soon** [3] - 26:23, 71:7, 92:18
**sooner** [1] - 26:23
**sorry** [14] - 5:11, 5:13, 7:7, 31:14, 42:15, 56:21, 72:10, 79:18, 85:24, 86:3, 87:3, 90:7, 90:8, 90:10
**Sorry** [1] - 7:9
**sort** [9] - 10:19, 11:10, 20:20, 21:3, 25:11, 25:13, 25:17, 51:12, 69:10
**sought** [2] - 34:17, 75:21
**sounded** [2] - 29:6, 90:10
**South** [2] - 2:9, 2:18
**space** [1] - 81:23
**spaced** [2] - 27:5
**speaking** [7] - 4:6, 4:8, 5:2, 7:11, 7:14, 81:8, 90:8
**special** [1] - 20:24
**SPECIAL** [1] - 1:11
**Special** [3] - 4:2, 19:17, 22:24
**specific** [4] - 28:1, 61:14, 66:1, 74:23
**specifically** [1] - 47:6
**specificity** [2] - 49:17, 74:15
**speed** [4] - 23:19, 24:8, 26:10, 78:9
**spelling** [1] - 87:16
**spend** [3] - 10:8, 62:23, 77:12
**spending** [1] - 10:15
**spin** [1] - 22:9
**spirit** [2] - 10:14, 11:7
**split** [1] - 26:7
**sprawling** [1] - 12:15
**stage** [2] - 22:11, 43:24
**stake** [1] - 11:8
**stand** [2] - 6:10, 24:17
**Standard** [1] - 31:6
**Stanoch** [1] - 56:22
**STANOCH** [1] - 1:17, 56:6, 56:22

**start** [8] - 6:4, 37:9, 40:12, 45:13, 48:19, 51:19, 91:25
**started** [3] - 4:5, 32:5, 52:18
**starting** [3] - 39:17, 40:11, 58:25
**state** [12] - 7:10, 7:19, 8:13, 8:14, 8:25, 39:6, 54:9, 93:15, 93:25, 94:2, 94:7, 94:10
**Statement** [1] - 91:12
**STATES** [2] - 1:1, 1:10
**States** [4] - 4:2, 39:10, 51:3, 78:6
**stating** [1] - 82:14
**status** [2] - 24:8, 25:12
**STATUS** [1] - 1:6
**stay** [4] - 69:9, 94:16
**stayed** [2] - 8:15, 8:16
**stems** [1] - 22:23
**stenography** [1] - 1:25
**Steve** [3] - 82:25, 88:6, 90:12
**STEVEN** [1] - 3:3
**Stewart** [1] - 91:8
**STEWART** [1] - 91:9
**sticking** [1] - 62:14
**still** [14] - 6:24, 12:19, 13:13, 18:16, 19:14, 36:10, 62:18, 65:19, 85:11, 86:14, 86:17, 87:7, 90:14
**stipulated** [1] - 59:18
**stipulation** [2] - 56:3, 56:14
**stored** [1] - 75:4
**straightforward** [1] - 9:23
**streamlined** [2] - 13:14, 14:2
**Street** [4] - 1:18, 1:21, 2:18, 3:11
**Streets** [1] - 1:7
**strongly** [1] - 55:24
**structure** [2] - 62:11, 67:23
**stuck** [1] - 37:6
**students** [2] - 27:18, 28:8
**subject** [5] - 10:12, 35:16, 42:25, 89:3, 89:24
**submission** [2] - 27:12, 42:6
**submissions** [1] - 31:7

**submit** [6] - 21:20, 26:16, 57:17, 71:4, 77:9, 81:22
**submitted** [4] - 6:2, 30:5, 34:16, 34:23
**submitting** [1] - 92:17
**Subparagraph** [1] - 75:8
**substantial** [2] - 49:16, 62:3
**substantially** [2] - 86:16, 87:7
**substantive** [1] - 66:6
**substantively** [2] - 12:21, 64:15
**successfully** [1] - 46:6
**sudden** [2] - 18:6, 43:13
**sufficient** [7] - 24:10, 59:16, 59:18, 67:19, 76:10, 79:4, 82:6
**suggest** [11] - 11:25, 19:10, 23:16, 23:23, 24:5, 24:6, 26:8, 27:13, 39:20, 53:2, 69:24
**suggested** [3] - 35:23, 40:12, 74:15
**suggesting** [5] - 9:13, 15:7, 19:20, 25:20, 42:2
**suggestion** [1] - 50:8
**suggestions** [1] - 25:24
**Suite** [7] - 1:18, 2:3, 2:6, 2:15, 3:4, 3:11, 3:14
**summary** [4] - 23:15, 26:4, 42:7, 46:15
**summation** [1] - 56:24
**Sunday** [4] - 40:11, 63:13, 68:15, 71:12
**supervisors** [1] - 43:1
**supplement** [3] - 40:5, 41:25, 43:7
**supplemental** [2] - 43:13, 76:20
**supplementation** [1] - 44:24
**suppose** [2] - 44:12, 61:24
**supposed** [6] - 13:21, 56:3, 64:5, 64:9, 76:15, 77:3
**surprised** [1] - 51:7
**surprisingly** [1] - 49:2
**survive** [1] - 81:19
**susceptible** [1] - 67:10

**suspend** [4] - 50:24, 51:11, 51:17, 51:22
**systemic** [3] - 61:14, 65:18, 73:4

**T**

**teach** [1] - 27:16
**team** [5] - 17:1, 17:4, 47:1, 47:5, 82:18
**teed** [2] - 46:17, 55:21
**teleconferences** [1] - 9:12
**telephone** [1] - 9:25
**TELEPHONIC** [1] - 1:5
**ten** [13] - 8:15, 16:4, 25:9, 25:17, 25:21, 26:8, 27:4, 27:5, 27:14, 32:17, 92:22, 93:11
**term** [1] - 43:20
**terms** [16] - 6:24, 10:8, 18:11, 19:5, 28:5, 43:12, 44:17, 46:18, 49:2, 50:12, 60:4, 60:7, 67:16, 78:25, 80:7
**testimony** [8] - 35:14, 35:16, 35:20, 35:21, 42:2, 43:1, 43:5, 43:8
**testing** [2] - 67:4, 67:7
**Teva** [16] - 3:5, 3:5, 5:9, 5:15, 9:21, 45:7, 46:1, 46:9, 52:10, 52:23, 53:7, 53:24, 56:11, 82:25, 90:13
**Texas** [1] - 2:7
**THE** [11] - 1:1, 1:10, 1:11, 7:6, 7:8, 71:24, 81:2, 81:5, 81:9, 81:13, 90:7
**themselves** [4] - 32:3, 32:18, 65:17, 73:18
**Theodore** [1] - 82:10
**there'll** [2] - 22:8, 22:9
**they've** [10] - 32:4, 38:5, 50:23, 64:18, 65:7, 66:21, 72:21, 73:17, 75:14, 77:8
**thinking** [10] - 10:6, 10:11, 11:4, 21:3, 23:15, 23:18, 25:15, 25:17, 26:18, 27:2
**thinks** [1] - 25:23
**third** [1] - 10:19
**Thomas** [1] - 4:3
**THOMAS** [3] - 1:11, 2:2, 2:12
**Thompson** [1] - 91:20
**THORNBURG** [1] -

3:13
**thoughts** [1] - 16:9
**three** [11] - 11:9, 11:12, 21:24, 24:5, 24:9, 25:6, 25:15, 26:6, 30:20, 39:8, 39:16, 42:21, 42:23, 48:13, 83:15
**three-page** [1] - 24:5
**threw** [1] - 67:25
**throughout** [2] - 49:1, 64:1
**throwing** [1] - 47:11
**tied** [1] - 56:16
**time-consuming** [1] - 58:19
**timely** [1] - 48:15
**timing** [2] - 46:3, 78:20
**title** [3] - 69:18, 71:15, 72:7
**titles** [1] - 17:9
**today** [26] - 4:12, 5:3, 6:1, 28:24, 37:23, 37:24, 39:13, 40:9, 45:23, 58:9, 61:12, 61:16, 68:18, 77:4, 81:8, 81:16, 83:16, 83:17, 83:20, 84:12, 84:24, 87:18, 88:13, 92:2, 93:23, 94:13
**together** [6] - 28:19, 28:23, 37:24, 84:18, 93:6, 93:7
**Tom** [3] - 4:23, 80:19, 85:25
**tomorrow** [2] - 58:10, 81:16
**took** [5] - 24:11, 42:1, 47:17, 58:24
**topic** [1] - 54:25
**topics** [4] - 33:3, 35:15, 43:2, 54:22
**Torrent** [3] - 45:7, 45:11, 46:10
**total** [2] - 6:20, 33:1
**touches** [1] - 40:3
**tough** [1] - 38:24
**towards** [2] - 8:13, 44:15
**track** [1] - 82:2
**tracking** [4] - 43:20, 44:18
**transcript** [3] - 1:25, 34:11, 94:19
**transcription** [1] - 1:25
**transcripts** [1] - 40:6
**translation** [2] - 31:22, 33:20

**translations** [1] - 34:9
**translator** [1] - 31:23
**transparency** [1] - 17:7
**transparent** [1] - 18:5
**TRAURIG** [1] - 3:2
**Traurig** [7] - 5:8, 5:15, 6:13, 82:18, 82:25, 84:2, 90:12
**travel** [6] - 31:16, 32:3, 32:8, 32:13, 32:17, 39:2
**traveling** [2] - 32:9, 32:21
**trial** [2] - 6:17, 92:14
**trials** [1] - 78:5
**tried** [4] - 35:5, 69:9, 86:9
**tries** [1] - 37:7
**triple** [2] - 43:20, 44:18
**triple-tracking** [2] - 43:20, 44:18
**Trischler** [10] - 5:16, 11:2, 15:1, 48:19, 50:5, 50:7, 52:21, 63:5, 70:12, 76:2
**TRISCHLER** [12] - 2:22, 5:16, 50:7, 63:5, 63:8, 68:9, 70:12, 70:14, 76:2, 76:4, 76:15, 78:17
**Trowbridge** [1] - 90:20
**TROWBRIDGE** [1] - 90:20
**Troyce** [1] - 85:15
**TROYCE** [1] - 85:15
**true** [1] - 53:4
**try** [15] - 10:12, 18:22, 20:4, 20:15, 21:3, 37:2, 37:4, 39:15, 40:16, 40:20, 53:1, 60:7, 60:10, 70:2, 80:8
**trying** [15] - 10:14, 16:5, 16:10, 20:20, 23:8, 24:25, 37:5, 37:19, 38:23, 44:15, 46:22, 49:18, 67:19, 71:5, 77:1
**Tuesday** [3] - 16:13, 17:13, 40:13
**turn** [1] - 27:11
**turned** [1] - 10:4
**twice** [4] - 19:15, 33:25, 34:1, 50:20
**twice-monthly** [1] - 19:15
**two** [21] - 10:24,

11:11, 16:2, 22:5, 26:19, 33:13, 33:24, 38:16, 39:8, 39:15, 40:11, 42:23, 49:5, 49:16, 60:22, 62:6, 62:23, 63:13, 73:15, 74:19, 87:14
**type** [1] - 74:2
**types** [1] - 18:12

## U

**U.S** [4] - 1:7, 2:20, 32:9, 39:1
**ULMER** [1] - 3:10
**unable** [5] - 37:23, 60:8, 62:17, 62:19, 83:10
**unavailable** [1] - 18:2
**unaware** [4] - 83:2, 83:8, 84:9, 88:15
**under** [3] - 40:15, 53:4, 76:6
**underscores** [1] - 32:15
**understandable** [1] - 11:20
**understandably** [1] - 32:11
**understood** [2] - 19:3, 38:4
**undertaking** [1] - 32:16
**undue** [2] - 18:5, 18:13
**unfair** [1] - 72:20
**unfortunately** [1] - 61:20
**unilaterally** [1] - 76:22
**United** [4] - 4:2, 39:10, 51:3, 78:6
**UNITED** [2] - 1:1, 1:10
**unless** [4] - 19:6, 41:3, 55:24
**unlikely** [1] - 43:4
**untenable** [1] - 48:6
**up** [30] - 6:16, 6:18, 12:17, 12:22, 18:15, 21:23, 23:6, 23:19, 24:8, 26:10, 33:18, 39:19, 46:17, 47:2, 47:4, 51:1, 52:2, 54:10, 54:20, 55:21, 56:16, 58:13, 59:22, 64:6, 65:25, 71:25, 72:17, 86:8, 87:5, 92:9
**upcoming** [1] - 24:18
**update** [7] - 22:7, 45:6, 56:2, 57:25, 85:14, 93:3, 93:4

updates [4] - 90:5, 90:25, 91:14, 91:15
**upwards** [1] - 58:19
**urge** [1] - 43:22
**USA** [2] - 3:5, 3:9
**useful** [5] - 22:22, 23:9, 23:11, 26:10, 26:14

## V

**vacuum** [2] - 55:20, 79:8
**VALSARTAN** [1] - 1:4
**Valsartan** [2] - 58:16, 60:16
**VANASKIE** [108] - 1:11, 4:4, 4:19, 4:22, 4:25, 5:10, 5:13, 5:18, 5:21, 5:25, 7:3, 7:9, 8:3, 9:5, 9:10, 9:18, 11:20, 11:23, 12:5, 14:3, 14:8, 17:7, 19:4, 20:13, 21:6, 21:12, 21:15, 22:12, 22:16, 23:11, 24:1, 24:3, 25:3, 26:1, 26:3, 26:24, 27:2, 27:4, 27:8, 27:13, 28:7, 28:10, 28:13, 28:16, 28:25, 29:15, 31:11, 31:14, 31:21, 36:21, 36:25, 37:3, 40:23, 41:5, 41:8, 41:23, 42:4, 42:14, 42:18, 43:9, 45:6, 45:24, 46:8, 46:14, 48:16, 51:21, 52:8, 54:1, 55:12, 56:2, 56:18, 57:1, 57:9, 58:1, 58:3, 58:22, 59:19, 59:23, 60:2, 60:23, 61:1, 61:10, 63:3, 63:7, 65:12, 66:7, 66:10, 67:15, 68:5, 69:4, 69:7, 70:13, 71:13, 71:20, 72:1, 72:9, 72:14, 72:23, 74:1, 75:10, 76:1, 76:3, 76:14, 78:16, 78:21, 80:10, 80:14, 80:19
**Vanaskie** [4] - 4:3, 38:12, 80:19, 93:22
**various** [2] - 69:12, 94:10
**vast** [2] - 55:8
**Victoria** [6] - 5:11, 5:12, 5:14, 6:12, 52:11, 92:4
**VICTORIA** [1] - 3:2

**video** [1] - 11:12
**view** [6] - 18:5, 20:8, 25:11, 36:15, 44:15, 67:10
**viewed** [2] - 26:7, 62:9
**views** [1] - 20:7
**Vine** [1] - 3:11
**virtually** [1] - 48:6
**voice** [1] - 16:23
**volume** [1] - 47:9
**volunteer** [1] - 32:17

## W

**wading** [1] - 23:19
**waived** [1] - 79:11
**waivers** [1] - 59:9
**wants** [4] - 12:5, 16:18, 29:3, 56:20
**Ware** [1] - 85:4
**WARE** [1] - 85:4
**warrant** [1] - 79:5
**warrants** [1] - 43:10
**water** [1] - 53:4
**wavelength** [1] - 18:10
**wear** [1] - 62:6
**Wednesday** [1] - 64:7
**Wednesdays** [1] - 20:12
**week** [11] - 18:19, 29:11, 33:10, 40:10, 56:16, 57:18, 61:5, 63:13, 73:15, 83:4, 86:21
**weekend** [3] - 17:14, 18:18, 64:8
**weekly** [2] - 19:18, 19:20
**weeks** [7] - 7:25, 20:12, 26:19, 39:8, 60:22, 62:24, 73:15
**weigh** [2] - 20:8, 48:20
**WERNER** [1] - 3:7
**whatsoever** [1] - 42:22
**WHITELEY** [4] - 1:20, 1:20, 4:20, 45:25
**Whiteley** [2] - 4:21, 46:1
**whole** [3] - 53:2, 54:5, 65:10
**wholesaler** [2] - 5:20, 56:9
**Wholesaler** [1] - 3:12
**wholesalers** [1] - 11:3
**Williams** [2] - 85:18, 89:20
**willing** [3] - 32:12, 32:19, 41:17
**wish** [1] - 89:23

**wishes** [2] - 9:4, 37:25
**withdrawn** [1] - 85:1
**withheld** [2] - 74:25, 80:2
**withhold** [1] - 73:12
**witness** [12] - 33:10, 36:11, 40:12, 40:13, 43:13, 44:24, 47:19, 47:20, 47:22, 47:23, 52:1, 53:22
**witness's** [1] - 55:18
**witnesses** [50] - 30:16, 31:10, 31:23, 32:16, 32:17, 32:25, 33:1, 33:3, 33:6, 33:7, 33:9, 33:13, 33:15, 33:17, 33:18, 33:23, 34:22, 35:7, 35:9, 35:12, 35:13, 35:18, 35:19, 35:21, 36:9, 36:17, 36:18, 39:8, 39:20, 39:25, 40:11, 41:11, 41:18, 42:23, 42:24, 43:4, 44:11, 44:21, 45:15, 45:19, 49:20, 51:2, 51:6, 53:12, 53:18, 77:21, 78:13
**witnesses'** [1] - 46:4
**woefully** [1] - 61:21
**word** [1] - 51:10
**work-product** [1] - 79:6
**worry** [1] - 18:1
**worth** [1] - 42:20
**written** [1] - 26:4

## Y

**year** [4] - 58:19, 60:20, 72:22, 76:16
**years** [1] - 59:7
**yesterday** [5] - 16:13, 39:13, 48:5, 85:13, 91:23
**yourself** [2] - 4:10, 81:6
**yourselves** [1] - 17:20

## Z

**zealous** [2] - 79:25, 80:1
**ZH** [2] - 30:3, 30:12
**Zhejiang** [1] - 2:20
**ZHP** [16] - 5:5, 29:19, 29:22, 30:7, 30:16, 32:16, 33:1, 33:10, 35:5, 35:24, 36:3, 36:18, 37:12, 37:23, 38:5, 49:3

**zone** [8] - 31:5, 32:1, 32:5, 32:6, 32:20, 33:19, 34:8, 39:18
**Zoom** [10] - 10:13, 11:12, 20:2, 20:3, 20:5, 20:16, 21:4, 21:9, 23:5, 32:14