# Exhibit 1

```
 1

 2

 3                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
 4

 5  _____        CIVIL ACTION NUMBER:

    IN RE:  VALSARTAN, LOSARTAN,
 6  AND IRBESARTAN PRODUCTS        1:19-md-02875-RBK-JS
    LIABILITY LITIGATION
 7                                 STATUS CONFERENCE
                                   (Via telephone)
 8  _____

          Tuesday, December 22, 2020
 9        Commencing at 10:05 a.m.

10  B E F O R E:          THE HONORABLE JOEL SCHNEIDER,
                          UNITED STATES MAGISTRATE JUDGE
11              (Page 64) THE HONORABLE ROBERT B. KUGLER,
                          UNITED STATES DISTRICT JUDGE
12
    A P P E A R A N C E S:
13
          MAZIE SLATER KATZ & FREEMAN, LLC
14        BY:  ADAM M. SLATER, ESQUIRE
          103 Eisenhower Parkway
15        Roseland, New Jersey 07068
          For the Plaintiff
16
          GOLOMB & HONIK PC
17        BY:  RUBEN HONIK, ESQUIRE
               DAVID JOHN STANOCH, ESQUIRE
18        1835 Market Street, Suite 2900
          Philadelphia, Pennsylvania 19103
19        For the Plaintiff

20        KANNER & WHITELEY LLC
          BY:  CONLEE S. WHITELEY, ESQUIRE
21        701 Camp Street
          New Orleans, Louisiana 70130
22        For the Plaintiff

23           Karen Friedlander, Official Court Reporter
                  friedlanderreporter@gmail.com
24                    (856) 756-0160

25         Proceedings recorded by mechanical stenography;
         transcript produced by computer-aided transcription.
```

1    six other witnesses who ZHP is disputing.  Mr. Chen appears to

2    be in a different category.  I'll give you my preliminary

3    thoughts, and then we can hear argument.

4         The first is with regard to Mr. Chen.  I'm not that

5    sympathetic to the apex argument for this reason, because it

6    appears that Mr. Chen had responsible positions before he

7    became, you know, the top of the food chain, so to speak.

8         So I don't think it's, you know, completely correct

9    to say he's an apex witness, because a lot of the information

10   that plaintiffs want is directed at knowledge he obtained and

11   knew about before he was in his current position as CEO.

12        With regard to the other witnesses that plaintiffs

13   seek to dispose, the Court has read the submissions of the

14   parties, and I think prima facie, the plaintiffs have made a

15   very good case for why these witnesses have relevant

16   knowledge, merely because they report to a witness that

17   otherwise is being deposed, I don't think is a -- a good faith

18   argument that their testimony is duplicative.  I looked back

19   in the record and it looks like, and I could be wrong about

20   this, but I think in *Benicar*, 20 foreign depositions were

21   permitted of Daiichi, and here, plaintiff is proposing to take

22   20 depositions of U.S. and foreign ZHP.

23        That being said, so that's my preliminary thoughts,

24   that prima facie plaintiffs have made that case, but I

25   understand there's going to be depositions in the case, and

1   you're going to know a lot more later on that you don't know

2   now, and I would think if these witnesses probably won't be

3   deposed until March anyway, one, plaintiff may decide their

4   testimony is not needed because it's duplicative, and I

5   certainly don't think plaintiffs have any interest in taking

6   duplicative testimony.

7          And, Mr. Goldberg, for ZHP, if other depositions are

8   taken, you might have a better record to show, in fact, that

9   this testimony is, in fact, duplicative, cumulative, or

10  nonmaterial.  But at least based on the present record, it

11  appears prima facie, that, you know, these are pretty

12  important witnesses, including Mr. Chen.

13         So at least what my initial impression is, but I'll

14  hear argument on it, is to say plaintiffs have made a prima

15  facie case that these witnesses are subject to deposition, but

16  subject to what the parties learn through the other

17  depositions, there's -- it's without prejudice to ZHP to

18  present a record, which is not available now, to show, in

19  fact, that these depositions are not materially important and

20  should be quashed.

21         So that's my thinking right now.

22         Mr. Goldberg, we'll hear your thoughts.

23         MR. GOLDBERG:  Thank you, Your Honor.  And I think

24  what Your Honor is saying is that while the prima facie case

25  has been shown, these depositions shouldn't be added to the

 1    schedule yet.

 2         JUDGE SCHNEIDER:  Well, I think they should be

 3    planned, but without prejudice to ZHP's -- let's face it, if

 4    they're not planned, they're not going to get done or they're

 5    going to get done late.  So they have to be locked in.  I

 6    think they do have to be locked in.

 7         But it's without prejudice to ZHP to present a record

 8    that, in fact, these depositions are cumulative, duplicative,

 9    not material, et cetera, et cetera.  That's what I'm saying.

10         MR. GOLDBERG:  Thank you, Your Honor, for that

11    clarification.

12         I just want to focus on Mr. Chen, because I think

13    that that's really the most important of these witnesses,

14    obviously, for our client to have the CEO of their company

15    deposed, especially during COVID-19, where now, just like the

16    other witnesses, Mr. Chen would have to travel to Hong Kong

17    and be quarantined for 28 days, goes to -- directly to the

18    rebuttable presumption that is set by the Apex Doctrine which

19    is that an apex deposition is presumed to be unduly burdensome

20    and that burden is most definitely compounded, given these

21    circumstances of deposing a Chinese national that has to

22    travel to Hong Kong and quarantine for 28 days.  Plaintiffs --

23         JUDGE SCHNEIDER:  Can I ask a question?  Mr. Slater,

24    can you correct me, because I read your papers, how much of

25    the information that you want from Mr. Chen is derived from

Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA), LOSARTAN, and IRBESARTAN PRODUCTS LIABILITY LITIGATION | Civil No. 19-2875 (RBK/JS) |
|---|---|

## **ORDER**

The Court having held a conference call with counsel on December 22, 2020; and this Order intending to confirm the rulings made by the Court that are reflected in the transcript of the proceedings; and accordingly,

It is hereby ORDERED this 31st day of December 2020 as follows:

1. Counsel for ZHP shall promptly advise plaintiffs and the Court whether Mr. Du is available to be deposed in the United States before January 14, 2021. If yes, the Court is inclined to approve ZHP's proposed deposition schedule attached to defendants' December 21, 2020 letter, Exhibit A. If Mr. Du is not available to be deposed prior to the proposed deposition dates of March 18-19, 2021, and if counsel cannot agree on ZHP's deposition dates, the ZHP deposition schedule shall be an agenda item for the scheduled January 13, 2021 conference call.

2. ZHP shall use reasonable good faith efforts to move up the proposed March 2021 dates for ZHP's depositions.

3. Based on counsels' submissions to date, plaintiffs are granted leave to depose Y. Hu, Y. Liu, F. Tang, M. Xu and E. Tasi. ZHP shall promptly provide plaintiffs with proposed dates for their depositions.

4. Based on counsels' submissions to date, leave is granted to depose B. Chen. However, after a sufficient deposition record is developed, ZHP is granted leave to file a Motion for Protective Order to quash Mr. Chen's deposition. Plaintiffs are also granted leave to file a motion requesting production of Mr. Chen's custodial file. ZHP shall provide a proposed date for Mr. Chen's deposition in the event ZHP's motion for protective order is denied.

5. The parties shall serve the agreed upon EU/Israel Addendum to the Deposition Protocol prior to the January 13, 2021 conference call. If disputes exist, they shall be put on the agenda for the January 13, 2021 call.

6. If not resolved beforehand, the parties' dispute regarding the DSCSA shall be put on the agenda for the January 13, 2021 call.

7. By January 15, 2021, plaintiffs are granted leave to file amended complains as to the Losartan and Irbesartan Master Complaints, without prejudice to defendants' right to assert all applicable defenses. All responses to the amended complaints are STAYED pending further Order of the Court.

8. The January 2021 monthly status conference call will be held on January 27, 2021 at 10:00 a.m. All submissions regarding the call shall be served by January 25, 2021.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

2

Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA), LOSARTAN, and IRBESARTAN PRODUCTS LIABILITY LITIGATION | Civil No. 19-2875 (RBK/JS) |

## ORDER

The Court having held a phone status conference with counsel on January 5, 2021; and this Order intending to confirm the Court's rulings reflected in the transcript of the proceedings [Doc. No. 719]; and for all the reasons stated by the Court,

IT IS HEREBY ORDERED this 11th day of January, 2021, as follows:

1. Plaintiffs' request for the production of the custodial documents/ESI of Mylan's Rule 30(b)(6) deposition witnesses is DENIED, without prejudice to plaintiffs' right to move for the production in the future for good cause shown.

2. The parties have been directed to complete their meet and confer sessions with regard to the scheduling of all fact depositions. To the extent any scheduling disputes remain, the Court will use its best reasonable efforts to decide the disputes during the scheduled January 13, 2021 conference call. To prepare for the call, and if disputes exist, plaintiffs and defendants shall serve their proposed deposition schedules.

3. The final deposition schedule for ZHP witnesses shall include proposed dates for all ZHP witnesses, including Mr. Chen, even if ZHP will not be voluntarily producing the witnesses. The Court's goal is to "lock in" dates in the event the depositions go forward.

4. By **January 20, 2021**, ZHP is granted leave to serve a supplemental letter brief regarding whether it is required to produce the disputed witnesses for deposition or whether plaintiffs are required to serve the witnesses with subpoenas or other required process. Plaintiffs may respond by **February 1, 2021**. ZHP may reply by **February 5, 2021**. The Court determines that the present record is not sufficiently developed for it to make an informed decision on this important issue.

5. To the extent the issue is not resolved, the Court will address during the January 13, 2021 conference call the dispute regarding who pays the cost of obtaining plaintiffs' medical records.

6. By **January 20, 2021,** defendants are granted leave to serve a supplemental letter brief regarding whether they are in possession, custody, or control of the disputed foreign entities' documents/ESI. Plaintiffs may respond by **February 1, 2021**. Defendants may reply by **February 5, 2021.** The Court determines that the present record is not sufficiently developed for it to make an informed decision on this important issue.

<u>s/ Joel Schneider</u>
JOEL SCHNEIDER
United States Magistrate Judge

Exhibit 4

In re: Benicar (Olmesartan) Products Liability Litigation, Not Reported in Fed. Supp. (2016)
2016 WL 5817262

KeyCite Yellow Flag - Negative Treatment

Distinguished by Lauris v. Novartis AG, E.D.Cal., December 8, 2016

2016 WL 5817262
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey,
Camden Vicinage.

IN RE: BENICAR (OLMESARTAN)
PRODUCTS LIABILITY LITIGATION.

Master Docket No. 15-2606 (RBK/JS)
|
Signed 10/04/2016

**MEMORANDUM OPINION AND ORDER**

JOEL SCHNEIDER, United States Magistrate Judge

**\*1** Plaintiffs' motion to compel depositions and documents requests defendants to produce for deposition in the United States two German nationals employed by defendants' affiliated company in Germany. Plaintiffs also request defendants to produce its European affiliate's documents.[1] For the reasons to be discussed plaintiffs' motion is DENIED.

Background

This is an approximate 1,800 case Multidistrict Litigation ("MDL") involving defendants' olmesartan prescription drugs.[2] The named defendants are Daiichi Sankyo, Inc., Daiichi Sankyo Co., Ltd., Daiichi Sankyo U.S. Holdings, Inc., Forest Laboratories, LLC, Forest Laboratories, Inc., Forest Pharmaceuticals, Inc., and Forest Research Institute, Inc.[3] The Daiichi defendants designed, manufactured and sold the drugs at issue.[4] For a time the Forest defendants marketed the drugs.

Daiichi Sankyo, Inc. and Daiichi Sankyo U.S. Holdings, Inc. are U.S. companies. Daiichi Sankyo, Inc. is a wholly-owned subsidiary of Daiichi Sankyo U.S. Holdings, Inc. which operates as a holding company. Daiichi Sankyo Co., Ltd. is the parent company of Daiichi Sankyo U.S. Holdings, Inc. Daiichi Sankyo, Inc. operates as the commercial home office and U.S. corporate headquarters of Daiichi Sankyo Co., Ltd., which is a Japanese corporation with its principal place of business in Japan. See generally Master Answer of Daiichi Defendants ¶¶ 20, 23-27, 30-31 [Doc. No. 82]. For the purpose of this motion the relevant Daiichi corporate business units are located in Japan, the United States and Europe.

In order to put the current discovery dispute in context it is helpful to summarize the discovery to date. An important issue addressed early in the case was to identify the documents and Electronically Stored Information (collectively, "ESI") defendants would be directed to produce. Although Daiichi does business worldwide, early on the Court ruled that only ESI from Daiichi U.S. and Japan had to be produced.[5] October 2, 2015 Order ¶ 4. [Doc. No. 152]. After the Court held several oral arguments and discovery conferences, Orders were entered listing the extensive custodial files to be searched and the long list of English and Japanese search terms to be used. Defendants estimate that to date they produced 64 million pages of documents. Defs.' Opp'n at 5.

**\*2** In order to efficiently manage this MDL and before depositions started, it was decided that the first phase of discovery would focus on only general and specific causation issues. Specifically, whether the drugs at issue caused the alleged sprue-like enteropathy ("SLE") symptoms plaintiffs complain about.[6] Thus far plaintiffs have taken twenty (20) depositions of present and former Daiichi U.S. employees and eighteen (18) depositions of present and former Daiichi Japan employees. Defs.' Opp'n at 5. We are now on the eve of the conclusion of the first phase of fact discovery. Virtually all fact discovery regarding causation issues was completed by September 30, 2016.[7] Following this phase of discovery plaintiffs' causation expert reports are due November 30, 2016, defendants' expert reports are due January 31, 2017, expert depositions must be completed by February 28, 2017, and Daubert and summary judgment motions are due by March 31, 2017. CMO No. 26. [Doc. No. 626]. The date for the Daubert hearing has not yet been set.[8]

As noted, to date the Court has not required defendants to produce ESI from any corporate entity other than Daiichi U.S. and Japan.[9] However, this did not prevent plaintiffs from requesting foreign documents. On January 14, 2016, the Court granted plaintiffs "leave to file a discovery motion requesting the production of additional foreign documents and addressing whether the documents are within defendants' 'possession, custody or control.' " January 14, 2016 Order ¶ 9. [Doc. No. 223]. The Court has repeatedly advised the parties if good cause existed it would reconsider its prior discovery

In re: Benicar (Olmesartan) Products Liability Litigation, Not Reported in Fed. Supp. (2016)
2016 WL 5817262

rulings made before a fulsome record was developed. The present motion to compel was filed on September 14, 2016.

Turning to the present motion, plaintiffs ask the Court to compel defendants to produce for deposition in the United States Stephan Freudenthaler and Ulf Stellmacher, two high-ranking employees of Daiichi Sankyo Europe GmbH ("Daiichi Europe"). Pls.' Br. at 2, 12. [Doc. No. 886-1]. According to plaintiffs, Stellmacher is the Director of Daiichi Europe's clinical safety and pharmacovigilance department ("CSPV") and Freudenthaler is the "head of CSPV in Europe."[10] Id. at 1. Plaintiffs argue Stellmacher played a "central role in the global evaluation, and reporting of the health issues posed by [olmesartan] Induced Enteropathy." Id. at 6. Similarly, plaintiffs assert Freudenthaler played a "central role with regard to Olmesartan Induced SLE [sprue-like enteropathy] on a global basis." Id. at 9.

Unfortunately for the Court, the parties did not clarify the exact role CSPV plays in the global Daiichi organization.[11] On different occasions plaintiffs refer to the CSPV as a "department" (id. at 2), a "[g]lobal CSPV committee" (id.), and an "organization within Daiichi Sankyo." Id. at 3. Defendants' opposition is noticeably silent on the issue and provides no assistance in trying to sort out the parties' precise corporate relationships. The Court surmises there are separate CSPV committees within Daiichi Japan, U.S. and Europe, and that representatives from these separate corporate entities are members of a global CSPV committee. The CSPV plays a critical role because it is "responsible to process, evaluate, and take action in response to reports of adverse events/adverse drug reactions." Pls.' Br. at 2.

**\*3** The gravamen of plaintiffs' argument is that since Daiichi Europe is one of seven business units of Daiichi's "global management structure," defendants have sufficient control over Daiichi Europe such that defendants should be compelled to produce Stellmacher and Freudenthaler for deposition. Plaintiffs focus on the fact that Daiichi's global organization is overseen by a " 'Global Management Committee' which develops global strategy and supports the CEO.' " Id. at 2. Plaintiffs also emphasize there is a close integration of Daiichi Japan, U.S. and Europe through the global CSPV organization. Id. at 5. Plaintiffs sum up their argument as follows:

> Freudenthaler and Stellmacher are employed by a "Business Unit" of Daiichi Sankyo Japan, are part of an integrated global organization within the overall global

entity, and both have had extensive involvement with Olmesartan induced enteropathy, and they possess a host of relevant information. Thus their depositions are necessary and highly relevant to this litigation. Moreover, there is no particular sovereign interest at play in this case that would justify deviating from the Federal Rules of Civil Procedure, under which the depositions of Freudenthaler and Stellmacher should be compelled.

Id. at 14.

As to their request for documents from Daiichi Europe, plaintiffs cite deposition testimony from defendants' witnesses to the effect there was regular communications and exchange of information and documents between different business units around the world, including between Daiichi U.S. and Daiichi Europe. See id. at 3-4. As to plaintiffs' specific document requests, plaintiffs ask defendants to search the requested deponents' custodial files using twenty (20) English and German search terms. Plaintiffs also served nine (9) general document requests directed to Daiichi Europe. Id. at 20-22.

Not unexpectedly, defendants oppose plaintiffs' motion. Defendants argue: (1) the Court cannot compel the depositions of foreign non-party witnesses employed by a party's corporate affiliate (Defs.' Opp'n at 1-2), (2) plaintiffs have not shown good cause to take the requested depositions (id. at 4), (3) it is unduly burdensome to take the depositions (id. at 5), (4) if the depositions are taken only one deposition should be compelled (id. at 6), and (5) the requested depositions should take place in Europe or plaintiffs should have to pay the expenses related to the deponents' travel to the United States. Id. Defendants also argue plaintiffs' document requests are cumulative, burdensome and overly broad. Id. at 11-13.

Discussion

1. Depositions of Stellmacher and Freudenthaler

The Court agrees with defendants that it cannot compel Stellmacher and Freudenthaler to appear in the United States to be deposed. These witnesses are employed by non-party Daiichi Europe. Pursuant to Fed. R. Civ. P. 30(b)(1) only a party or an officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a deposition notice. Campbell v. Sedgwick Detert, Moran & Arnold, C.A. No. 11-642 (ES/SCM), 2013 WL 1314429, at *12 (D.N.J. Mar. 28, 2013); see also 8A Charles Alan Wright et al., Federal Practice and Procedure § 2107 (3d ed. 2016).[12]

Case 1:19-md-02875-RMB-SAK    Document 826-1    Filed 02/01/21    Page 15 of 42
PageID: 20596

In re: Benicar (Olmesartan) Products Liability Litigation, Not Reported in Fed. Supp. (2016)

2016 WL 5817262

Since the requested deponents do not fit into these categories their depositions may not be compelled.[13]

**\*4** To support their argument that the Court can compel affiliated non-party foreign witnesses to be deposed, plaintiffs primarily rely on Alcan Int'l Ltd. v. S.A. Day Mfg. Co., 176 F.R.D. 75 (W.D.N.Y. 1996). However, Alcan is an outlier that the Court declines to follow. In Alcan, the plaintiffs refused to produce for deposition employees of its German affiliate. The plaintiffs argued the noticed foreign employees were not parties to the dispute and they must be subpoenaed pursuant to the procedures authorized by the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). Id. at 77-78. In deciding that the plaintiffs must produce foreign non-party witnesses, including an ex-employee, the Alcan decision focused on whether information sought from the plaintiffs' foreign affiliate was within the plaintiffs' "custody or control." Id. at 78. The court noted the "transactional relationship between the corporate entities was pivotal." Id. Importantly, the decision made no distinction between the request for the plaintiffs' documents and the request to depose employees of plaintiffs' foreign affiliates. Id. at 79. When it decided the plaintiffs would be compelled to produce foreign non-party witnesses from its corporate affiliate, the court noted the corporate entities were members of the same unified worldwide business entity, the entities used the same corporate logo, and the entities had regular contact. The court also noted it was "inconceivable" the plaintiffs did not have access to the requested information. Id.

The problem with Alcan is that it conflates the standard for when a corporate party must produce its affiliate's documents with the standard for which witnesses a corporate party must produce for deposition. A party is required to produce documents within its "possession, custody, or control" even if documents are possessed by a separate entity. Haskins v. First American Title Ins. Co., C.A. No. 10-5044 (RMB/JS), 2012 WL 5183908, at \*1 (D.N.J. Oct. 18, 2012). The physical location of documents, even outside the jurisdiction of the court, is irrelevant. Gerling Int'l Ins. Co. v. C.I.R., 839 F.2d 131, 140 (3d Cir. 1988) (citations omitted). However, pursuant to Fed. R. Civ. P. 30(b)(1) a corporation is only required to produce an officer, director, or managing agent for deposition. As well-stated in Ethyphorm S.A. France v. Abbott Labs., 271 F.R.D. 82, 90 (D. Del. 2010), "there is no textual basis in the federal rules for [the] argument that the 'control' test is applicable to the court's

consideration regarding [the] request to depose individual witnesses pursuant to Fed. R. Civ. P. 30."

Another instructive case is In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria, C.A. No. MDL 1428 (SAS/THK), 2006 WL 1328259 (S.D.N.Y. May 16, 2006). In that MDL the plaintiffs requested the defendant corporation to produce for deposition employees of a non-party affiliate. In support of their request the plaintiffs argued the defendant controlled the non-party affiliate. Id. at \*9. Like the decision in Ethyphorm, and the Court's ruling here, the court in In re Ski Train Fire rejected the notion that the control test is determinative as to whether a corporate party must produce for deposition employees of its foreign affiliate. The court stated:

> Unlike the language of Rule 34, Rule 30 of the Federal Rules of Civil Procedure does not require a party to litigation to produce persons for deposition who are merely alleged to be in the party's control. Rather, a party or any other person can be noticed for deposition, and subpoenaed if necessary. If the person sought for deposition is not within the subpoena power of a United States court, then procedures according to international treaty must be followed.

> The [non-party affiliate] employees are not employed by [the defendant]. Nor are they within the subpoena power of this or any other federal court. Therefore, they must be deposed in Austria according to Austrian procedures.

Id.

To the extent plaintiffs rely on Calderon v. Experian Info. Sols., Inc., 290 F.R.D. 508 (D. Idaho 2013), the reliance is misplaced. In that case the district court affirmed a Magistrate Judge's decision requiring the defendant to produce employees of its sister company in Chile for deposition. Id. at 510. However, the court's ruling was based in part on the finding that the requested deponents were defendants' managing agents. Id. at 518-19. No such argument is made here with regard to Stellmacher and Freudenthaler. Further, Calderon also relied on the erroneous "control" test to determine if the defendant had to produce for deposition foreign employees of its non-party affiliated company. Id. at 514. As noted, the Court declines to follow the Alcan "control" test for deciding when foreign employees of a party's corporate affiliate must be produced for deposition.

**\*5** Plaintiffs' reliance is also misplaced to the extent they rely on cases addressing whether a corporate party must obtain information from its foreign affiliate in response to a Rule

30(b)(6) notice. When served with a Rule 30(b)(6) notice a corporation has a duty to prepare its witness to testify as to matters known or reasonably available to the corporation. Harris v. New Jersey, 259 F.R.D. 89, 92 (D.N.J. 2007). Courts use the "control" standard of Fed. R. Civ. P. 34(a) as a guidepost to determine whether a Rule 30(b)(6) witness must testify as to the knowledge of non-party corporate affiliates. Sanofi-Aventis v. Sandoz, Inc., 272 F.R.D. 391, 394-95 (D.N.J. 2011). Thus, if a corporate defendant controls information possessed by a non-party foreign affiliate, the knowledge is subject to the Rule 30(b)(6) deposition notice. Id. at 395. The fact that a Rule 30(b)(6) corporate designee may be compelled to testify about information possessed by a foreign corporate affiliate is not the same issue as whether a non-party foreign employee may be compelled to testify pursuant to Fed. R. Civ. P. 30(b)(1). The Rule 30(b)(6) cases plaintiffs rely upon are inapposite.

Even though defendants may not be compelled to produce Stellmacher and Freudenthaler for deposition, the deposition inquiry is not at an end. If good cause exists to take the depositions plaintiffs may proceed pursuant to the provisions of the Hague Convention and the conditions imposed by the German Ministry of Justice.[14] For the following reasons, however, the Court finds that at this time plaintiffs have not established good cause to depose Stellmacher and Freudenthaler.[15]

To date plaintiffs' discovery directed to defendants has been extensive, lengthy and costly. Defendants have produced tens of millions of document and thus far plaintiffs have taken thirty-eight (38) Daiichi fact depositions. Given the breath of plaintiffs' discovery the Court is disinclined to authorize more depositions unless the new testimony is likely to be materially important and non-cumulative. Stated differently, the requested depositions must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In view of the Court's intimate knowledge of the litigation, and the fact that the current focus of discovery is general and specific causation, the Court finds that in this instance the proportionality analysis weighs in plaintiffs' favor. CDK Glob., LLC v. Tulley Auto. Grp., Inc., C.A. No. 15-3103 (KM/JBC), 2016 WL 1718100, at *9 (D.N.J. Apr. 29, 2016) (citation omitted) (stating Rule 26(b)(1) authorizes a court to limit "redundant or disproportionate discovery").

Given their positions with the CSPV it is undoubtedly the case that Stellmacher and Freudenthaler possess relevant knowledge. Nevertheless, this is not the touchstone for whether they should be deposed. Instead, what is compelling is the fact it is likely the causation testimony plaintiffs want to address with the new witnesses has already been covered at other depositions, including the ten (10) pharmacovigilance employees of Daiichi U.S. and Daiichi Japan already deposed. This being the case the burden and expense associated with taking the requested foreign depositions outweighs the likely benefit of the requested testimony.

*6 Plaintiffs' arguments directed to the interrelatedness of the different Daiichi companies undercuts their need to depose Stellmacher and Freudenthaler. Plaintiffs repeatedly focus on Daiichi's global management structure, the control exercised by Daiichi Japan, and the ease and frequency with which information is shared amongst Daiichi's different business units. This being the case, it is likely the bulk of the relevant causation knowledge possessed by Stellmacher and Freudenthaler has or could have been obtained from the thirty-eight (38) Daiichi witnesses deposed to date. Given defendants' corporate structure and global management, the Court is skeptical that meaningful discovery regarding any alleged causal connection between defendants' olmesartan drugs and plaintiffs' symptoms is singularly possessed by Stellmacher, Freudenthaler, or even Daiichi Europe. This conclusion is supported by the deposition testimony plaintiffs cite to the effect that there was an effort to be consistent amongst Daiichi's business units (Pls.' Br. at 4), and decisions with a global impact were made with input from Daiichi U.S., Japan and Europe. Id. at 5.

Plaintiffs ask to depose Stellmacher because he "played a central role in the global evaluation and reporting of the health issues posed by [Olmesartan] Induced Enteropathy." Id. at 6. However, plaintiffs acknowledge the protocols for the operation of the global CSPV unit established principles of global signal protection in order to "ensure a consistent global approach to a safety signal." Id. Moreover, plaintiffs argue members of the Global CSPV Committee "would discuss and assess how evolving regulatory expectations in each Daiichi region could have global impact across the regions." Id. at 5. Plaintiffs' arguments, therefore, support the Court's finding it is unlikely the requested deponents have materially relevant causation knowledge not otherwise known by the thirty-eight (38) Daiichi witnesses deposed to date.

Plaintiff argue they need to depose Stellmacher and Freudenthaler because they are knowledgeable about a European Advisory Board and a report on sprue-like enteropathy prepared for German authorities that has or will

In re: Benicar (Olmesartan) Products Liability Litigation, Not Reported in Fed. Supp. (2016)
2016 WL 5817262

Case 1:19-md-02875-RMB-SAK    Document 826-1    Filed 02/01/21    Page 17 of 42
PageID: 20598

address the causation issues at the heart of this MDL. Id. at 12. However, plaintiffs have not shown this information was not available from other witnesses. Moreover, since defendants allege they produced the referenced report in March 2016, plaintiffs had an opportunity to question Daiichi's deponents about the document. See Defs.' September 29, 2016 Letter. [Doc. No. 909]. If the Court permitted depositions to be taken to answer every conceivable question litigants raise, and fill every "gap" a party raises, discovery would never end. Moreover, the Court would be abdicating its role to efficiently manage the litigation. See Fed. R. Civ. P. 26(b)(1) Advisory Committee Note to 2015 Amendment. ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). In sum, good cause does not exist to depose Stellmacher and Freudenthaler because plaintiffs have not shown the requested deponents possess materially relevant non-cumulative information. Plaintiffs have also not shown the information they want from the witnesses was not otherwise available from the Daiichi witnesses they already deposed.[16]

### 2. Daiichi Europe's Documents

Based on the present record it is not a difficult question to decide if defendants may be compelled to produce Daiichi Europe's documents. The answer is clearly yes. Defendants are required to produce documents within their control. "Courts within the Third Circuit have broadly interpreted 'control' in the context of document production." Sanofi-Aventis, 272 F.R.D. at 394 (citing Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441 (D.N.J. 1991)). Control is present for the purpose of a document production when a party can obtain documents from the related entity to meet its business needs. Id. (citing Gerling, 839 F.2d at 140-41); see also Camden Iron, 138 F.R.D. at 443. "[A] company's ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigation corporation's control." Barton v. RCI, LLC, C.A. No. 10-3657 (PGS), 2013 WL 1338235, at *7 (D.N.J. Apr. 1, 2013) (quoting Camden Iron, 138 F.R.D. at 443). Plaintiffs have plainly demonstrated defendants have control over Daiichi Europe's documents.

**\*7** Allen Feldman, Vice-President, CSPV, and "highest level executive in the United States CSPV department from 2004 to 2016," testified that he had the ability to get documents from Daiichi's different business units and vice-versa. Pls.'

Br. at 2, 4-5. Another Daiichi U.S. witness testified it was "no big deal" to obtain documents and information from Daiichi Europe. Id. at 5. Additionally, Tina Ho, the Executive Director of Pharmacovigilance and a member of the Global CSPV Committee from 2004 to 2016, testified she interacted almost daily with Europe and Japan, and exchanged documents with them on a "routine basis." Id. The cited deposition testimony establishes that defendants can obtain documents from Daiichi Europe in the normal course of their business. Thus, plaintiffs have established that defendants have sufficient control over Daiichi Europe's documents such that the Court may direct defendants to produce the documents. Further, it is not insignificant that defendants do not contest they have control over Daiichi Europe's documents. In view of the contentious nature of this MDL, if such control was lacking defendants undoubtedly would have vigorously contested the issue.

To be sure, however, just because defendants "control" Daiichi Europe's documents does not necessarily mean defendants will be directed to answer plaintiffs' document requests. This is true because, on the whole, the Court finds that plaintiffs' document requests are overbroad and far-reaching. For example, plaintiffs ask for all formal and informal reports and analysis of defendants' drugs, Power Points and minutes of meetings regarding the drugs, documents regarding regulatory actions in Europe, and any discussion or analysis regarding the mechanism between the drugs and sprue-like enteropathy. Id. at 21-22. These broad document requests essentially bring the parties back to square one in the litigation. These are the sort of general document requests that were served and addressed early on. The Court will not direct defendants to respond to document requests that will not advance the litigation and that will invariably result in more discovery disputes and duplicative and cumulative productions.[17]

To be clear, the Court is not foreclosing an Order directing defendants to respond to appropriate document requests asking for relevant Daiichi Europe documents that have not already been produced. Instead of general and overbroad requests, however, plaintiffs' requests must be specific, focused and narrow. In view of the tremendous efforts already devoted to this MDL, and the fact that fact discovery regarding causation issues is virtually complete, plaintiffs must specifically identify what they want rather than making omnibus requests.[18] The Court will consider directing defendants to produce additional documents from Daiichi Europe but only if plaintiffs satisfy the Court the requests

Case 1:19-md-02875-RMB-SAK    Document 826-1    Filed 02/01/21    Page 18 of 42
PageID: 20599
In re: Benicar (Olmesartan) Products Liability Litigation, Not Reported in Fed. Supp. (2016)
2016 WL 5817262

are well-grounded, materially relevant and non-cumulative. Given the stakes in the litigation, the interests of justice weigh in favor of authorizing limited additional document discovery but only if plaintiffs show that materially relevant Daiichi Europe documents impacting the interests of 1800 plaintiffs have not already been produced.

Accordingly, for all the reasons discussed above,

IT IS HEREBY ORDERED this 4th day of October, 2016, that plaintiff's Motion to Compel is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 5817262

Conclusion and Order

Footnotes

1 Presently before the Court is plaintiffs' "Motion to Compel Depositions of Stephan Freudenthaler and Ulf Stellmacher" with a request for the production of European documents [Doc. No. 886]. The Court received defendants' opposition [Doc. No. 901] and recently held oral argument where it denied plaintiffs' motion. This Memorandum Opinion explains in more detail the basis of the Court's ruling.

2 These drugs are Benicar®, Benicar HCT®, Azor®, and Tribenzor®.

3 For the purpose of the present motion the Forest defendants played no role.

4 The Court will collectively refer to all the Daiichi party defendants as "Daiichi."

5 The Court will refer collectively to the Daiichi defendants based in the United States as "Daiichi U.S." The term "Daiichi Japan" refers to Daiichi Sankyo Co., Ltd.

6 These include gastrointestinal symptoms such as nausea, vomiting, diarrhea and weight loss.

7 The Court granted plaintiffs leave to take some additional depositions after September 30, 2016, but cautioned this would not extend any other scheduling deadline. See September 1, 2016 Order at 3. [Doc. No. 874].

8 In addition to the cases in this MDL, approximately 73 related cases are consolidated in New Jersey State Court as Multicounty Litigation ("MCL"). Discovery in the federal MDL and state MCL has been coordinated. The Court anticipates a joint Daubert-type hearing will be held in the Spring or Summer of 2017. The state equivalent to Daubert is Kemp ex rel. Wright v. State, 174 N.J. 412 (2002).

9 To be sure, however, defendants were not excused from producing responsive European documents in their possession. See October 2, 2015 Order ¶ 4. [Doc. No. 152]. This accounts for why plaintiffs' present motion relies upon foreign documents.

10 Pharmacovigilance is defined as the "the science and activities relating to the detection, assessment, understanding and prevention of adverse effects or any other drug-related problem." See World Health Organization, Pharmacovigilance, http://who.int/medicines/areas/quality_safety/safety_efficac y/pharmvigi/en/ (last visited Oct. 4, 2016).

11 The parties have never defined the precise legal-relationship between Daiichi Europe and the party defendants. The Court does not know for sure if there is a parent/subsidiary relationship or some other sort of corporate affiliation. Nevertheless, given there is no dispute that Daiichi Japan and Daiichi U.S. are separate corporate entities, the precise corporate relationship between Daiichi Europe and defendants is not determinative as to the present motion.

12 Plaintiffs have not argued that Stellmacher and Freudenthaler are defendants' managing agents. Whether an individual is a "managing agent" is to be determined "pragmatically on an ad hoc basis." Wright et al., supra, § 2103 (citations omitted). Courts look to three factors to decide if a witness is a "managing agent":

[Whether] the individual involved is invested by the corporation with general powers to exercise his discretion and judgment in dealing with corporate matters, whether he or she can be depended upon to carry out the employer's direction to give testimony at the demand of a party engaged in litigation with the employer, and whether he or she can be expected to identify with the interests of the corporation rather than with those of the other parties.

Id.; see also M.F. Bank Restoration Co. v. Elliott, Bray & Riley, C.A. No. 92-0049, 1994 WL 8131, at *2 (E.D. Pa. Jan. 11, 1994).

13 Although not specifically argued by plaintiffs, Fed. R. Civ. P. 45 provides them no solace. Rule 45 does not authorize the service of a subpoena on a foreign witness. The scope of Rule 45 is limited to service in the United States or service of a subpoena on a United States national or resident in a foreign country. Fed. R. Civ. P. 45(b)(2)-(3).

14 Good cause is necessary to take additional depositions because plaintiffs have or will shortly complete the maximum number of permitted depositions. See Nov. 23, 2015 Order & 1. [Doc. No. 194]. Further, the cumbersome procedures

In re: Benicar (Olmesartan) Products Liability Litigation, Not Reported in Fed. Supp. (2016)

2016 WL 5817262

required by the German Ministry of Justice are summarized in Pinnacle Packaging Co., Inc. v. Constantia Flexibles GmbH, C.A. No. 12-537 (JED/TLW), 2015 WL 9216845, at *2-3 (N.D. Okla. Dec. 17, 2015).

15    To the extent plaintiffs rely upon the Supreme Court's decision in Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522 (1987), to excuse compliance with the Hague Convention, the reliance is misplaced. In that decision the Court held the Hague Convention does not provide the exclusive and mandatory procedure for obtaining documents and information located within the foreign territory of a party's foreign affiliate. Id. at 534-38. The decision did not address a request to depose a foreign national employed by a party's foreign affiliate.

16    The Court is not sympathetic to defendants' argument that the burden of the requested depositions is a material factor weighing in their favor. While being deposed might be unpleasant for Stellmacher and Freudenthaler, the burden they will endure is not materially different than that experienced by tens of thousands of witnesses. Further, the Court is mindful that the alleged burden to the two requested deponents is not weighed against the interests of just one plaintiff. Instead, the interests of approximately 1,800 plaintiffs are at issue.

17    If the Court directs defendants to respond to plaintiffs' document requests as framed, duplicative and cumulative productions are likely given the broad leeway plaintiffs were given when the Court approved their search terms and custodians.

18    The same is true for the twenty (20) search terms plaintiffs want to use to search the custodial files of Stellmacher and Freudenthaler. Searches using general terms such as "sprue-like enteropathy," "enteropathy," and "diarrhea" (id. at 20-21) will undoubtedly result in unnecessary and cumulative hits.

---

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 5

Campbell v. Sedgwick Detert, Moran & Arnold, Not Reported in F.Supp.2d (2013)
2013 WL 1314429

KeyCite Yellow Flag - Negative Treatment

Distinguished by Wyndham Vacation Ownership, Inc. v. Vacation Select Services & Consulting, LLC, D.N.J., September 1, 2020

2013 WL 1314429
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Wilson J. CAMPBELL, Plaintiff,

v.

SEDGWICK DETERT,

MORAN & ARNOLD, Michael
Tanenbaum, James Keale, Thomas
Robertson, et al., Defendants.

Civil No. 11–642–ES–SCM.
|
March 28, 2013.

**Attorneys and Law Firms**

Wilson J. Campbell, U.S. Virgin Islands, Department of Justice, St. Thomas, VI, pro se.

Joseph D. Guarino, Epstein Becker & Green, PC, Newark, NJ, for Defendants.

OPINION AND ORDER ON PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND AND DEFENDANTS' MOTIONS FOR A PROTECTIVE ORDER AND SANCTIONS

STEVEN C. MANNION, United States Magistrate Judge.

**I. INTRODUCTION**

**\*1** Pending before this Court are three motions: A motion for a protective order [D.E. 53] and motion for sanctions [D.E. 59] filed by defendants James Keale, Thomas Robertson, Sedgwick Detert, Moran & Arnold (hereafter, "Sedgwick"), and Michael Tanenbaum (collectively, "Defendants"); and plaintiff Wilson Campbell's ("Plaintiff") motion for leave to file an amended complaint [D.E. 65]. Opposition has been filed with regard to each of the motions. The Court has considered the parties' submissions pursuant to Federal Rule of Civil Procedure 78(b), and for the reasons set forth below the Court grants in part and denies in part Defendants'

motion for a protective order, denies Defendants' motion for sanctions, and grants in part and denies in part Plaintiff's motion for leave to file his Amended Complaint.

**II. BACKGROUND**

A detailed history of the events underlying this action can already be found in Magistrate Judge Waldor's July 2, 2012, Opinion regarding Plaintiff's first motion for leave to file an amended complaint [D.E. 44]. (*See* D.E. 60, Judge Waldor's July 2, 2012, Opinion). Presently, Plaintiff seeks to make the following amendments to his Complaint: Add two individuals, Michael McGeehon and David Saunders, as named defendants; add a breach of contract claim; and clarify and insert additional factual allegations. Judge Waldor denied Plaintiff's first motion requesting identical amendments to the Complaint without prejudice, finding that Plaintiff did not provide a reason for his delay in seeking to add Saunders and McGeehon as defendants, did not fully develop his factual allegations against Saunders, and did not properly plead a claim for breach of contract. *Id.* Judge Waldor then directed Plaintiff to file an appropriate motion to amend within fourteen days of the entry of the Opinion and Order. *Id.*

Plaintiff filed the instant motion to amend on July 17, 2012. Plaintiff alleges that the instant motion to amend addresses the defects noted in Judge Waldor's July 2, 2012, Opinion, and satisfies the requirements set forth in the Federal Rules of Civil Procedure regarding motions to amend the pleadings. (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend). Defendants oppose Plaintiff's motion, and argue that the instant motion is still deficient for all of the reasons set forth in the July 2, 2012, Opinion. (*See* D.E. 68, Defendants' Brief in Opposition to Plaintiff's Motion to Amend).

Discovery in this case has been ongoing since September of 2011, and has been plagued with various disputes since then. (*See, e.g.,* Docket Entry Nos. 20, 25, 26, 31, 32, 33, 34). Defendants allege that Plaintiff is using the discovery process to harass and overburden Defendants, and have filed the instant motion for a protective order as a result. (*See* D.E. 53–1, Defendants' Brief in Support of Motion for Protective Order). Defendants assert that they have already provided "72 answers to interrogatories, 94 responses to document requests and 205 responses to requests to admit," but that Plaintiff has nevertheless served an additional 98 requests, consisting of interrogatories, document demands, requests for admissions, and a notice to inspect the premises of Sedgwick. (*See* D.E. 58, Defendants' Reply Brief in Support of Motion for Protective Order, at \*2). Defendants allege

2013 WL 1314429

that the requested discovery is, *inter alia,* cumulative, unduly burdensome, and irrelevant. *Id.* Plaintiff opposes the motion for a protective order, and contends that his discovery requests are relevant and not unduly burdensome or cumulative. (*See* D.E. 55, Plaintiff's Brief in Opposition). Additionally, Plaintiff asserts that discovery in this matter only effectively began on January 9, 2012, when the Court ordered Defendants to produce discovery, and was then stalled in May of 2012 when Defendants filed the instant motion. *Id.* at *2.

 **\*2** Finally, Defendants have also filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 16. (*See* D.E. 59, Defendants' Motion for Sanctions). The basis for Defendants' motion is Plaintiff's failure to appear for a court-ordered, inperson hearing on June 15, 2012. (*See* D.E. 59–1, Defendants' Brief in Support of Motion for Sanctions). Plaintiff opposes the motion for sanctions, and asserts that his failure to attend the hearing was the result of his own scheduling mistake and that sanctions are not appropriate. (*See* D.E. 66, Plaintiff's Letter Brief in Opposition).

## III. DISCUSSION

In the interest of clarity, the Court will address each of the pending motions separately.

### A. Plaintiff's Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave to amend when justice so requires." While leave to amend is typically granted, it is not an absolute right and the decision to amend rests within the sound discretion of the district court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Courts liberally grant motions to amend if the underlying facts or circumstances relied upon may be a proper subject for relief, granting the amendment would not be unduly prejudicial to the non-moving party, and the movant has not acted with undue delay, bad faith, or dilatory motive. *Id.* An amendment may only be granted if it is not futile, and the opposing party bears the burden of establishing that a proposed amendment should be denied. *Id.*

Plaintiff seeks to amend his Complaint as follows: to add Michael McGeehon, Sedwick's General Counsel, and David Saunders, Sedgwick's Chief of Human Resources, as named defendants; add a claim for breach of contract; and "clarify allegations raised in Plaintiff's Complaint and assert additional factual allegations based on facts uncovered

during discovery." (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *2).

First, the Court will address the proposed McGeehon amendment. An amendment is futile if it fails to state a claim upon which relief may be granted or advances a claim that is legally insufficient on its face. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 175 (3d Cir.2010) (citing *In re Merck & Co. Sec., Derivative, & ERISA Litig.,* 493 F.3d 400 (3d Cir.2007)). "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Accordingly, an amendment is futile if, accepting all of the facts alleged in the pleading as true, the party has failed to plead enough facts to state a claim to relief that is plausible on its face. *See Duran v. Equifirst Corp.,* Civil No. 09–03856, 2010 WL 918444, at *2 (D.N.J. Mar.12, 2010) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Accordingly, this Court must first consider whether Plaintiff has alleged sufficient facts to conclude that McGeehon provided substantial assistance or encouragement of the employer's conduct alleged to be in violation of the New Jersey Law Against Discrimination ("NJLAD"). *See id.*

 **\*3** Here, Plaintiff alleges that McGeehon had knowledge of Plaintiff's August 14, 2008, and September 2008, internal complaints regarding alleged discrimination, and that McGeehon and the named Defendants participated in a plot to retaliate against Plaintiff. (*See* D.E. 65–3, Plaintiff's Proposed Amended Complaint, at ¶¶ 37, 44, 69–86). Plaintiff also alleges that discovery produced in January of 2012 indicates that Defendant Robertson had a privileged discussion with McGeehon and Saunders on February 4, 2009, after Robertson learned of the judicial complaint filed against Plaintiff, and that more than ten emails between McGeehon and Robertson regarding Plaintiff's termination were exchanged on the morning of February 5, 2009, the day that Plaintiff was allegedly forced to resign from Sedgwick. *See id.* at *6–7. The Court notes that in the July 2, 2012, Opinion Judge Waldor, before describing McGeehon's alleged role in the lawsuit, noted that "Plaintiff has alleged several facts that, taken as true, indicate McGeehon played a significant role in Plaintiff's termination." (*See* D.E. 60, July 2, 2012 Opinion, at *11). Judge Waldor concluded her evaluation of futility with regard to the McGeehon amendment by finding that the allegations in the proposed amended Complaint against McGeehon in his individual

2013 WL 1314429

capacity, taken as true, "would likely not be futile." *Id.* This Court agrees. Accordingly, the Court finds that the proposed claims against McGeehon in his individual capacity are not futile. *See Foman v. Davis,* 371 U.S. at 182.

With regard to the timeliness of the proposed amendment to add McGeehon as a named defendant, the Court notes that Plaintiff appears to have had some knowledge of McGeehon's involvement in Plaintiff's termination at the time the original Complaint was filed. Indeed, Judge Waldor stated in the July 2, 2012, Opinion that Plaintiff must provide some explanation as to why McGeehon could not have been added earlier in this action. (*See* D.E. 60, July 2, 2012, Opinion, at *8).

Plaintiff alleges that his delay in requesting leave to amend the Complaint to add both Saunders and McGeehon stems from his obtaining a privilege log through discovery in January of 2012 that allegedly shows that McGeehon "authored and sent an email on February 4, 2009 entitled 'Associate Termination' to Saunders with a copy to Defendant Tanenbaum, Sedgwick's Chair." (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *6). Plaintiff contends that he did not have access to the various e-mails listed on the privilege log that allegedly show McGeehon's and Saunders's involvement in Plaintiff's termination, and that Plaintiff was not aware of said emails when he filed his Complaint in February of 2011. *See id.* at *6–8. Accordingly, Plaintiff argues that he did not know the extent of both McGeehon's and Saunders's involvement in his termination when he filed his initial Complaint, and therefore his instant motion to amend is timely and in good faith. *Id.* at *7.

**\*4** Defendants argue that Plaintiff's delay in seeking leave to amend the Complaint is undue and should accordingly be denied. Specifically, Defendants allege that, by letter dated June 5, 2009, Plaintiff's former counsel contended that Plaintiff participated in a conference call with McGeehon, Sedgwick's general counsel, regarding his resignation from Sedgwick. (*See* D.E. 68, Defendants' Brief in Opposition, at *13). In reply, Plaintiff reiterates that it was not until January of 2012 that he learned that McGeehon had an "active role" in the termination, and was not merely a "mouthpiece," and therefore his delay in seeking leave to amend is not undue. (*See* D.E. 69, Plaintiff's Reply Brief, at *1–2, D.E.).

In light of all of the above, the Court finds that Plaintiff's explanation for his delay in seeking to add McGeehon is sufficient. *See Cureton v. NCAA,* 252 F.3d 267, 273 (3d Cir.2001) (stating that courts, in considering the question of

undue delay, "focus on the movant's reasons for not amending sooner"). "The passage of time, without more, does not require that a motion to amend a complaint be denied[ ... ]." *Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d Cir.1984). Considering that Plaintiff alleges to not have learned of the extent of McGeehon's involvement in discussions regarding his termination until receiving discovery in January of 2009, the Court, in its discretion, does not consider Plaintiff's delay in adding McGeehon as a named defendant to be undue. *See Cureton v. NCAA,* 252 F.3d at 273; *Luppino v. Mercedes–Benz USA, LLC,* Civil No. 09–5582, 2012 WL 850743, at *4 (D.N.J. Mar.8, 2012) (granting motion to amend where Plaintiff could have named defendants months earlier). Furthermore, the Court finds that the addition of McGeehon will not cause undue prejudice, as much of the same discovery that has already been produced in this case or is the subject of currently pending discovery disputes should also apply to McGeehon. *See Adams v. Gould,* 739 F.2d 858, 868 (3d Cir.2001) (stating that amended claims are not likely to cause prejudice to opposing party where addition of new claims will not require additional, extensive discovery).

Next, the Court will address Plaintiff's request to add Saunders as a named defendant. Plaintiff's Proposed Amended Complaint alleges that Saunders received an email from McGeehon regarding Plaintiff's termination from the Firm. (*See* D.E. 65–3, Proposed Amended Complaint, at *14, ¶ 70). The e-mail was allegedly sent to Saunders on February 4, 2009, one day before Defendant Robertson allegedly informed Plaintiff that he would be fired from the firm if he did not immediately resign. (*See id.; see also* D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *6). Plaintiff further alleges that on February 5, 2009, the Firm's Human Resources, of which Saunders is Chief, instructed Defendant Robertson to take Plaintiff's building access card. *Id.*

**\*5** Defendants argue that the proposed amendment to add Saunders is futile, and that Plaintiff's motion should accordingly be denied. A pleading is futile if the facts alleged would not allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal,* 556 U.S. 662, at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In the instant matter, Plaintiff seeks to amend his Complaint to add claims against Saunders in his individual capacity.

After considering the parties' submissions, the Court finds that Plaintiff's Proposed Amended Complaint does not support

2013 WL 1314429

a claim of individual liability as to Saunders under NJ LAD. Pursuant to N.J.S.A. 10:5–12(e), a plaintiff must allege sufficient facts to conclude that Saunders provided "substantial assistance or encouragement" of the employer's conduct alleged to be in violation of NJ LAD. Here, the Proposed Amended Complaint merely alleges that Saunders received an email entitled "Associate Termination" from McGeehon, participated in discussions with McGeehon and Robertson regarding the judicial complaint filed against Plaintiff, and instructed Defendant Robertson to collect Plaintiff's building access card. Such facts illustrate that Saunders, as Chief of Human Resources, likely had knowledge of Plaintiff's termination and was involved to some degree in finalizing Plaintiff's departure from the firm. The Court finds that these facts do not support the contention that Saunders provided "substantial assistance or encouragement" of the misconduct alleged in the proposed amended Complaint within the meaning of NJ LAD. See Failla v. City of Passaic, 146 F.3d 149, 158–59 (3d Cir.1998). Rather, the Court finds that receiving emails regarding the termination of an employee and providing instructions to collect said employee's building access card are consistent with the customary duties and protocols intrinsic to Saunders's role as a human resources director. Accordingly, the Court finds the proposed Amended Complaint to be futile as to the addition of Saunders.

The Court will next turn to Plaintiff's proposed breach of contract amendment. Plaintiff's argument regarding the proposed breach of contact claim revolves around Sedgwick's Employee Assistance Program ("EAP"), a benefit program allegedly available to Sedgwick employees that is designed to assist with personal issues, including legal assistance. (See D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *9–10). Plaintiff claims that when Defendants terminated Plaintiff he was denied benefits to which he was entitled pursuant to the EAP, and as a result incurred damages, including attorney's fees for legal consultations that would have normally been covered by the EAP. Id.

Defendants argue that Plaintiff has failed to state a cause of action for breach of contract, as Plaintiff has not explicitly claimed that the parties entered into a contract regarding the EAP. (See D.E. 68, Defendants' Brief in Opposition, at *19). Instead, Defendants assert that Plaintiff has merely alleged that he was afforded certain benefits under the EAP as part of his employment package, and that Sedgwick ceased to provide those benefits to Defendant after Plaintiff's departure from the firm. Id. Defendants argue that Plaintiff has not

alleged "that Defendants failed to provide him a benefit to which he was entitled while employed by Sedgwick, nor does Plaintiff allege that the Firm agreed to continue to provide him EAP benefits after his separation of employment," and that any obligation Sedgwick may have had to provide Plaintiff with EAP benefits ceased with the termination of his employment at the firm. Id. Defendants further argue that Plaintiff has not alleged that any of the individual defendants were a party to any contract or implied contract between himself and Sedgwick. Id.

**\*6** A party alleging a breach of contract satisfies its pleading requirement if it alleges: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties. Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 210 F.Supp.2d 552, at 561 (D.N.J.2002). Here, Plaintiff essentially alleges that: (1) the EAP benefits were part of his employment contract with Sedgwick; (2) Sedgwick breached its obligations to Plaintiff regarding the EAP benefits; (3) Plaintiff suffered damages as a result of Sedgwick's breach; and (4) Plaintiff performed all of his own contractual duties until he was wrongfully terminated. (See D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *9–10). The Court, bearing in mind the liberal approach to pleadings embodied by Rule 15, finds that Plaintiff has sufficiently pled a claim for breach of contract. See Arthur v. Maersk, Inc., 434 F.3d 196, 202 (3d Cir.2006); Foman v. Davis, 371 U.S. at 182. Accordingly, Plaintiff's proposed amendment to add a claim for breach of contract is granted as to Defendant Sedgwick.

As to the individually named Defendants, it is well established that a claim for breach of contract cannot be maintained against an individual that is not a party to the underlying contract. Figueroa v. City of Camden, 580 F.Supp.2d 390, 408 (D.N.J.2008). Here, Plaintiff has not alleged facts that support the existence of a contract between himself and the individually named Defendants. See id. (dismissing common law action for breach of contract where plaintiff firefighter did not allege individual defendant was a party to the contract between city and its firefighters). Accordingly, the proposed breach of contract claim against the individual Defendants fails to state a claim upon which relief may be granted and therefore must be denied. See id.

Next, the Court will address the factual allegations that Plaintiff seeks to add to his Complaint. Defendants assert that many of the amended factual allegations appear to be immaterial to Plaintiff's claims, redundant, or merely

Campbell v. Sedgwick Detert, Moran & Arnold, Not Reported in F.Supp.2d (2013)

2013 WL 1314429

summarize discovery that has been conducted to date. (*See* D.E. 68, Defendants' Brief in Opposition, at *22). Plaintiff counters that the instant motion for leave to file a proposed amended complaint was prompted by new information found in discovery, and essentially argues that the added and amended factual allegations clarify his original pleading. (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend). The Court has reviewed Plaintiff's amended factual allegations and does not find the proposed amendments to be at odds with Rule 15. As noted above, leave to amend is freely given when justice so requires, and courts "have shown a strong liberality ... in allowing amendments under Rule 15(a)." *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989) (internal citations omitted); *see also Foman v. Davis,* 371 U.S. at 182. The Court will accordingly grant Plaintiff's motion to amend as to the proposed factual allegations.

**\*7** Finally, the Court will briefly address Defendants' statute of limitations argument with respect to the proposed individually named defendants. Defendants note that NJ LAD is governed by a two year statute of limitations, and argue that since Plaintiff alleges that he was wrongfully terminated on February 5, 2009, the applicable statute of limitations on Plaintiff's retaliation and discrimination claims under NJ LAD expired on February 5, 2011. (*See* D.E. 68, Defendants' Brief in Opposition, at *22–23). Thus, Defendants argue that Plaintiff's proposed NJ LAD claims against McGeehon are barred by the statute of limitations, and are therefore futile unless they relate back to the original complaint in accordance with Federal Rule of Civil Procedure 15(c). *Id.* at 23. Defendants assert that the proposed McGeehon amendment does not relate back to Plaintiff's original Complaint, as the claims against McGeehon do not arise out of the conduct that is set forth in the original pleading. *Id.* at *24.

Three conditions must be met for the successful relation back of an amended complaint that adds new parties: (1) the additional claim arose out of the same conduct as the original pleading; (2) the newly named party received such notice of the institution of the action within 120 days of the complaint so that the party will not be prejudiced in maintaining a defense on the merits; and (3) the newly named party must have known or should have known within 120 days, that, but for a mistake made by the plaintiff concerning the newly named party's identity, the action would have been brought against the newly named party in the initial pleading. *Singletary v. Pennsylvania Dept. of Corrections,* 266 F.3d 186, 189 (3d Cir.2001) (internal quotations and citations omitted). The first condition is met in this action because it is

clear that the claims against McGeehon arise out of the same conduct alleged in the original pleading, namely the alleged wrongful termination of Plaintiff. It is also clear that the second condition is met, as McGeehon had both actual notice of the instant lawsuit and sufficient notice of the action under Rule 15(c)(3) by virtue of sharing counsel with the other individually named Sedgwick Defendants. *See Singletary,* 266 F.3d at 196–98. Finally, the third condition for relation back is also met in this matter, as Plaintiff has plausibly argued that he was only learned during discovery that McGeehon may have had an active role in Plaintiff's alleged termination, rather than the role of a mere "mouthpiece." (*See* D.E. 69, Plaintiff's Reply Brief, at *1–2). Accordingly, the Court finds that the McGeehon amendment relates back to the initial filing and is not barred by the statute of limitations. *See Singletary,* 266 F.3d at 196–98.

### *B. Defendants' Motion for a Protective Order*

Next, the Court will consider Defendants' motion for a protective order. Defendants contend that there exists a good faith need for a protective order regarding Plaintiff's discovery requests, as Plaintiff's requests are voluminous, unduly burdensome, and harassing. (*See* D.E. 53–1, Defendants Brief in Support of Motion, at *6–7). Specifically, Defendants seek a protective order: prohibiting Plaintiff from serving additional discovery; permitting Defendants to not be required to respond to Plaintiff's Third Request for Admissions; permitting Defendants to not be required to respond to Plaintiff's Second Set of Interrogatories to Defendant Sedgwick; permitting Defendants to not be required to respond to Plaintiff's Fourth Request for Admissions; permitting Defendants to not be required to respond to Plaintiff's Third Request for Documents; permitting Defendants to not be required to respond to document requests attached to the notices to depose James Keale, Thomas Robertson, Michael Tanenbaum, Suzanne Horn, David Saunders, and Craig Barnes; and ordering that the depositions of Craig Barnes and David Saunders be conducted in California. (*See* D.E. 53–6, Defendants' Proposed Order).

**\*8** Pursuant to Federal Rule of Civil Procedure 26(b), a court may order the discovery of any matter relevant to a party's claims, defenses, or the subject matter involved in the litigation upon a finding of good cause. Rule 26 is construed liberally, and relevance is a broader inquiry at the discovery stage of litigation than at the trial stage. *Tele–Radio Sys. Ltd. v. DeForest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J.1981) (citations omitted). While relevant information need not be

2013 WL 1314429

admissible at trial, the party seeking discovery must "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton,* 192 F.R.D. 154, 159 (D.N.J.2000).

While Rule 26 is generally construed liberally, courts have authority to limit a party's pursuit of information that would otherwise be discoverable where the burden of a discovery request is likely to outweigh the benefits. *See* Fed.R.Civ.P. 26(b)(2) (C); *see also Bayer AG v. Betachem, Inc.,* 173 F.3d 191 (3d Cir.1999). Accordingly, a discovery request may be denied if the court determines that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (1) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether the party seeking discovery has had ample opportunity to obtain the information by other discovery; and (iii) the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C). The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. *A & B Ingredients, Inc. v. Hartford Fire Ins. Co.,* 2010 WL 335616, at *3 (D.N.J. Jan.29, 2010) (quoting *Bowers v. Nat'l Collegiate Athletic Assoc.,* No. 97–2600, 2008 LEXIS 14944, at *14, 2008 WL 1757929 (D.N.J. Feb. 27, 2008).

Courts have further authority to limit the scope of discovery through the issuance of a protective order pursuant to Federal Rule of Civil Procedure 26(c). Pursuant to Rule 26(c), upon a finding of good cause, the court may issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1112, fn. 3 (3d Cir.1986), *cert. denied,* 486 U.S. 976 (1987). Courts are afforded broad latitude under Rule 26(c) in tailoring a protective order to the circumstances of a particular case, and accordingly may issue an order: forbidding the disclosure of discovery; specifying terms, including time and place for the disclosure of discovery; prescribing a discovery method other than the one selected by the party seeking discovery; and forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. *See id.* In seeking a protective order, a party establishes good cause by demonstrating that disclosure will cause a clearly defined and serious injury.

*Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786–87 (3d Cir.1994). However, broad allegations of harm do not support a showing of good cause, so the alleged injury must be supported by specific examples and reasons. *Id.*

**\*9** In determining whether good cause exists, courts must employ a balancing test weighing "the requesting party's need for information against the injury that might result if uncontrolled disclosure" is granted. *Id.* at 787 (internal quotations omitted). If the court ultimately finds that discovery policies require that the materials be disclosed, the issue then becomes whether they should be disclosed in a specific way, or whether any limitations of disclosure should be ordered. *Id.* In making this determination, courts consider the following factors: (i) whether the information is being sought for a legitimate purpose or improper purpose; (ii) whether disclosure will promote fairness and efficiency among litigants; and (iii) whether a party benefiting from the order is a public entity, public official or private litigant and whether the case involves matter of legitimate public interest. *Id.* at 787–88. The party requesting the protective order bears the burden of establishing an alleged lack of relevancy and undue burden. *A & B Ingredients, Inc. v. Hartford Fire Ins. Co .,* 2010 WL 335616, at *4 (D.N.J. Jan.29, 2010).

Defendants assert that good cause exists for the entry of a protective order because Plaintiff's requests are "disproportionate to the claims in this matter and will work a clearly defined and serious injury upon Defendants." (*See* D.E. 53–1, Defendants' Brief in Support of Motion, at *11). Defendants argue that the sheer volume of discovery is unduly burdensome, harassing, and oppressive given the nature of the claims in this action. *Id.* In support of their argument Defendants assert that, despite having already provided over 300 responses to discovery requests by Plaintiff, Plaintiff has requested an additional 98 requests, most of which are cumulative and not reasonably calculated to lead to the discovery of admissible evidence. (*See* D.E. 58, Defendants' Reply Brief, at *2). Defendants argue that Plaintiff's discovery requests relating to the termination of other former Sedgwick attorneys is duplicative and not relevant considering the circumstances that precipitated Plaintiff's resignation. *Id.* at *15–17. Defendants further argue that the electronic discovery sought by Plaintiff, namely documents and emails for the period of January 29, 2009 to May 1, 2009 concerning Plaintiff that were received or sent from various Sedgwick employees and persons not employed by Sedgwick but working in Sedgwick's New Jersey office with a Sedgwick email account is burdensome and overly broad in temporal

Campbell v. Sedgwick Detert, Moran & Arnold, Not Reported in F.Supp.2d (2013)

2013 WL 1314429

scope since Plaintiff's last day of employment was February 5, 2009. *Id.* at *17. Likewise, Plaintiff seeks documents and emails sent or received from various Sedgwick employees that reference Plaintiff from as early as January 1, 2007 to the present, and Defendants argue that such requests are also overly broad and burdensome, or have been previously identified by Defendants and listed on their privilege log. *Id.* at *18. In addition, Defendants note various other discovery requests that they contend are overly broad, irrelevant, or burdensome, such as, *inter alia,* "documents which reflect paid time off for all employees in the Sedgwick New Jersey office from February 2, 2009 to February 6, 2009," and "documents that reflect the gross revenues of Sedgwick from January 1, 2001 to present." *See id.* at *23–24. Similarly, Defendants argue that Plaintiff's request to inspect the premises of Sedgwick's New Jersey Office for the purpose of "measuring, surveying, videotaping, and photographing his former office and the offices of" various Sedgwick employees is irrelevant and unsupported by any reasonable basis. *Id.* at *13–14. The Court will address each category of the discovery at issue in turn.

**\*10** First, the Court will consider Plaintiff's Second Set of Interrogatories Directed to the Designated Representative of Defendant Sedgwick. (*See* D.E. 53–4, Defendants' Ex. K to Motion for Protective Order, at *62–67). Federal Rule of Civil Procedure 33(a)(2) states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)," and that an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." The Court has reviewed Plaintiff's Second Set of Interrogatories directed to Sedgwick and finds that the interrogatories do not warrant the entry of a protective order. Plaintiff's interrogatories are, within the liberal meaning of Rule 26, relevant to Plaintiff's claims. However, the Court notes that Interrogatory No. 4 is unlimited in temporal scope, and accordingly orders that the temporal scope of Interrogatory No. 4 be limited to a period of five years from February 5, 2004, to February 5, 2009. (*See* D.E. 53–4, Defendants' Ex. K to Motion for Protective Order, at *67). If Defendants have previously provided any of the requested information to Plaintiff, or object to a particular interrogatory, Defendants are free to respond accordingly.

Next, the Court will consider Plaintiff's Third and Fourth Requests for Admissions. Federal Rule of Civil Procedure

36 governs requests for admission, and states that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b) (1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed.R.Civ.P. 36(a)(1). The Court has reviewed Plaintiff's Third Request for Admissions to Defendants and finds that the requests for admission are within the liberal meaning of discovery embodied by Rule 26 and do not fall outside the scope of requests for admission as defined by Rule 36. (*See* D.E. 53–4, Defendants' Ex. J to Motion for Protective Order, at *54–60). The Court further notes that Plaintiff's Fourth Request for Admissions requests the genuineness of documents and are appropriately accompanied by copies of the relevant documents in accordance with Fed.R.Civ.P. 36(a)(2). (*See* D.E. 53–5, Defendants' Ex. L to Motion for Protective Order, at *2–5). Therefore, the Court will deny Defendants' motion for a protective order with respect to Plaintiff's Third and Fourth Requests for Admissions. Again, to the extent that Defendants have previously provided any of the requested information to Plaintiff, or object to a particular request, Defendants are free to respond accordingly.

Next, the Court will consider Plaintiff's Third Document Production Demand to Defendants. (*See* D.E. 53–5, Defendants' Ex. M to Motion for Protective Order, at *25–29). Any party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and it is well settled that Rule 26 establishes a fairly liberal discovery policy. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); Fed.R.Civ.P. 26(b) (1). "As a general rule, discovery is permitted of any information that is relevant or may lead to the discovery of relevant evidence." *Romero v. Allstate Ins. Co.,* 271 F.R.D. 96, 101 (E.D.Pa.2010). Federal Rule of Civil Procedure 34 governs the production of documents and reads, in pertinent part, as follows:

**\*11** **(a) In General.** A party may serve on any other party a request within the scope of Rule 26(b):

**(1)** to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

**(A)** any designated documents or electronically stored information-including writings, drawings, graphs, charts, photographs, sound recordings, images, and other

2013 WL 1314429

data or data compilations-stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

**(B)** any designated tangible things; or

**(2)** to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Here, Plaintiff has made twenty six (26) requests for the production of documents, and has also requested documents in connection with various deposition notices. (*See* D.E. 53–5, Defendants' Ex. M to Motion for Protective Order, at *25–29). The Court has reviewed Plaintiff's Third Document Production Demand and notes that Plaintiff's requests are reasonably limited in temporal scope, and reasonably calculated to lead to the discovery of admissible evidence. For instance, Request No. 15 seeks "[a]ll documents and e-mails sent by Deborah Lewis from January 1, 2009 to May 1, 2009 that reference Plaintiff." *See id.* at *27. The Court finds that such requests are relevant to Plaintiff's claims, well within the liberal scope of discovery, and sufficiently designate which documents Plaintiff seeks. *See Consolidated Rendering Co. v. Vermont,* 207 U.S. 541, 543–44, 28 S.Ct. 178, 52 L.Ed. 327 (1908) ("We see no reason why all such books, papers and correspondence which related to the subject of inquiry, and were described with reasonable detail, should not be called for and the company directed to produce them. Otherwise, the State would be compelled to designate each particular paper which it desired, which presupposes an accurate knowledge of which papers, which the tribunal desiring the papers would probably rarely, if ever, have."). Accordingly, the Court will deny Defendants' motion for a protective order with respect to Plaintiff's Third Document Production Demand. However, the Court notes once again that if Defendants have already provided any of the requested information, or object to a particular demand, Defendants are free to respond accordingly.

With regard to the various document demands attached to Plaintiff's deposition notices, the Court finds that a number of the requests do not appear reasonably calculated to lead to the discovery of admissible evidence and warrant the entry of a protective order. Specifically, the Court finds that Request Nos. 10 and 11 attached to the deposition notice for Suzanne Horn [D.E. 53–5, Ex. R, at *52]; and Request Nos. 4, 5, and 7 attached to the deposition notice

for David Saunders [D.E. 53–5, Ex. S, at *57] seek financial information from Sedgwick that is irrelevant to Plaintiff's claims. Furthermore, the Court finds that Request No. 6 attached to the deposition notice for David Saunders is unreasonably broad in temporal and geographic scope. *See id.* That particular request seeks "[a]ll documents that reflect the salary of the highest and lowest paid (non-partner) attorney employed by the New Jersey office from January 1, 2001 to present." *Id.* Accordingly, the Court orders that the request be amended so as to only pertain to attorneys that graduated from law school between the years 1998 and 2000, and to the salaries any such attorneys may have had at the time of Plaintiff's termination.

**\*12** Next, the Court will address Plaintiff's Notice of Inspection. (*See* D.E. 53–5, Defendants' Ex. N to Motion for Protective Order, at *31–33). Plaintiff seeks to inspect the premises of Sedgwick's New Jersey office for the purpose of "measuring, surveying, videotaping, and photographing his former office and the offices of the following employees of Sedgwick: James Keale; Thomas Robertson; Michael Tanenbaum; Suzanne Horn, Sedgwick's Office Manager; Shari Keiser, Associate; Christopher Kehrli, former Associate; and Kecia Barrett–Callahan." (*See* D.E. 53–1, Defendants' Brief in Support of Motion for Protective Order, at *13). Defendants argue that Plaintiff has not made any factual allegations that would provide a basis for his Notice of Inspection, and that Plaintiff is seeking the inspection "for the sole reason to harass and annoy Defendants." *Id.* at *14. Plaintiff argues that he intends to inspect, photograph, and videotape the Sedgwick New Jersey office in order to "aid jurors in their deliberations," by "presenting the jury with photographs showing the location of Plaintiff's office in proximity to several key witnesses," so as to support his claim that he did not voluntarily resign. (*See* D.E. 55, Plaintiff's Brief in Opposition, at *14). While the Court notes that a liberal approach to discovery is generally favored pursuant to Rule 26, the Court also appreciates Defendants' concerns regarding the potential for harassment and disruption with regard to Plaintiff's Notice of Inspection considering the nature of this case. Accordingly, the Court hereby orders that Plaintiff's inspection of Sedgwick's New Jersey Office be set for a time and date to be determined by Defendants, and that said inspection shall not exceed sixty minutes.

Lastly, the Court will consider the depositions of Craig Barnes, a partner in Sedgwick's Los Angeles office, and David Saunders, Sedgwick's Chief of Human Resources

Campbell v. Sedgwick Detert, Moran & Arnold, Not Reported in F.Supp.2d (2013)

2013 WL 1314429

Officer located in San Francisco. (*See* D.E. 53–1, Defendants' Brief in Support of Motion for Protective Order, at \*28). Plaintiff noticed the depositions of Craig Barnes and David Saunders and identified Newark, New Jersey as the location of the depositions. *Id.* Neither Barnes nor Saunders is a party to this litigation. *Id.* Defendants argue that Barnes and Saunders would be unduly burdened if they were forced to travel to New Jersey for their depositions, and that Barnes, as a non-party witness, cannot be compelled to travel more than 100 miles from Los Angeles, California pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(ii). *Id.* at \*29.

Rule 30(b)(1) states, in pertinent part, that "a party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address." Therefore, the default rule is that the examining party "may set the place for the deposition of another party wherever he or she wishes subject to the power of the court to grant a protective order under Rule 26(c)(1)(B) designating a different place." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, *Federal Practice and Procedure* § 2112 (3d ed.2012). Under Rule 30(b)(1), an officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition. Accordingly, Rule 30(b)(1) is clear in that "the location designated for the taking of a deposition is solely within the discretion of the court, thereby requiring each application to be considered on its own facts and equities." *Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94, 97 (S.D.N.Y.1968) (citing *Branyan v. Koninklijke Luchtvaart Maatschappij,* 13 F.R.D. 425, 429 (S.D.N.Y.1953)).

**\*13** However, the general rule regarding the setting for the location of a corporate party's deposition is that the deposition ordinarily takes place at the corporate party's principal place of business. *See Cadent Ltd. v. 3M Unitek Corp.,* 232 F.R.D. 525, 628 (C.D.Cal.2005) (internal citations omitted). "Notwithstanding the generally recognized rule, courts have often required corporate defendants to produce their officers or agents for depositions at locations other than the corporation's principal place of business where there has been no showing that the defendant will suffer any resulting financial hardship." *South Seas Catamaran, Inc. v. Motor Vessel "Leeway",* 120 F.R.D. 17, 21 fn. 5 (D.N.J.1988). In addition, a number of factors "serve to dissipate the presumption [that a corporate party's deposition should be held at its principal place of business and may persuade the Court to require the deposition to be conducted in the forum

district or some other place." *Cadent Ltd. v. 3M Unitek Corp.,* 232 F.R.D. at 628–29. These factors include the "location of counsel for the parties in the forum district, the number of corporate representatives a party is seeking to depose, the likelihood of significant discovery disputes arising which would necessitate resolution by the forum court; whether the persons sought to be deposed often engage in travel for business purposes; and the equities with regard to the nature of the claim and the parties' relationship." *Id.* at 629 (internal citations omitted).

Pursuant to Federal Rule of Civil Procedure 26(c), a court may issue a protective order to regulate the terms, conditions, time or place of discovery. Defendants, as the moving party, bear the burden of showing good cause for the issuance of a protective order. Fed.R.Civ.P. 26(c). Here, Defendants have not provided the Court with any evidence regarding the alleged expense and undue burden associated with holding the depositions of Barnes and Saunders in New Jersey. "Courts have often required corporate defendants to produce their officers or agents for depositions at locations other than the corporation's principal place of business where there has been no showing that the defendant will suffer any resulting financial hardship." *South Seas Catamaran, Inc. v. Motor Vessel "Leeway",* 120 F.R.D. 17, 21 fn. 5 (D.N.J.1988). Furthermore, the Court finds that there are a number of circumstances that weigh against the entry of a protective order ordering that the depositions of Saunders and Barnes be conducted in California. First, both the *pro se* Plaintiff and counsel for the Defendants are located in New Jersey, and it is established that Defendant Sedgwick does business in this district. Also, considering the large number of discovery disputes that have developed thus far in this litigation, there is a high likelihood that disputes will arise during the depositions that may require resolution by the Court. Therefore, because Defendants have not met their burden of showing good cause for the issuance of a protective order, the Court will deny Defendants' request to order that the depositions of Saunders and Barnes be held in California. Accordingly, the Court, in its discretion and mindful that Rule 1 of the Federal Rules of Civil Procedure states that the Rules "should be construed and administered to secure just, speedy, and inexpensive determination of every action and proceeding," will order that the depositions of Saunders and Barnes be either held via video at Sedgwick's New Jersey Office or at that location, with the expenses to be borne by Defendants.

2013 WL 1314429

**\*14**  The Court is not persuaded by Defendants' argument that Barnes is not an officer or managing agent within the meaning of Rule 30. The question of whether an individual is a managing agent, and thus subject to a notice of deposition, is answered on a fact-specific basis. *Triple Crown America, Inc. v. Biosynth AG*, Civil No. 96–7476, 1998 WL 227886, at \*1–2 (E.D.Pa.1998) (citing *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y.1994)). Doubts regarding an individual's status as a "managing agent" are resolved in favor of the examining party. *See Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1452 (D.C.Cir.1986); *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 540–41 (D.Md.1996). The inquiry regarding the identification of a managing agent essentially involves the extent of the individual's decision-making discretion and unsupervised authority, the degree to which his interests converge with those of the corporation, and his general responsibilities, particularly with regard to the matters at issue in the litigation. *Triple Crown America, Inc. v. Biosynth AG*, Civil No. 96–7476, 1998 WL 227886, at \*2 (citing *Founding Church of Scientology*, 802 F.2d at 1453; *In re Honda American Motor Co., Inc.* Dealership Relations Litigation, 168 F.R.D. at 540–41). Here, no evidence has been presented regarding any of the aforementioned criteria, but the Court does note that Barnes, as Managing Partner of Sedgwick's Los Angeles Office, likely has interests that align with those of Defendant Sedgwick, and has decision-making discretion and general authority consistent with that of a managing agent. Accordingly, the Court will order that the deposition of Barnes be conducted at Sedgwick's New Jersey office either in person or via video.

In sum, the Court finds that much of the discovery at issue is reasonably calculated to lead to the discovery of admissible evidence and is proper pursuant to *Federal Rule of Civil Procedure 26*. Defendants have not shown that good cause exists for the issuance of a protective order as to the entire corpus of discovery noted in their submissions. While Defendants bemoan that they have already answered 72 interrogatories in this matter, Defendants do not assert that Plaintiff has served interrogatories in excess of the pre-trial scheduling order's limit of 25 interrogatories per defendant. (*See* D.E. 16, Pretrial Scheduling Order, at \*2, ¶ 6). The Court notes that Defendants have, thus far, answered 23 interrogatories directed to Defendant Keale; 20 interrogatories directed to Defendant Robertson; 22 interrogatories directed to Defendant Tanenbaum; and 17 interrogatories directed to Defendant Sedgwick. (*See* Docket Entry Nos. 53–2, 53–3, Exhibits B–E to Defendants' Motion

for Protective Order). Accordingly, the Court finds that Plaintiff has not exceeded the number of interrogatories per defendant allotted to him, and that the additional 5 interrogatories directed to Defendant Sedgwick are proper. As far as the sheer volume of discovery involved in this case, it is the Court's determination that, considering the number of Defendants, the claims involved, and the factual circumstances alleged in Plaintiff's pleadings, the discovery at issue is not disproportionate and the entry of a broad protective order is therefore unwarranted. *See Cipollone*, 785 F.2d 1108; *A & B Ingredients, Inc.*, 2010 WL 335616, at \*3.

### C. Defendants' Motion for Sanctions

**\*15**  Lastly, the Court will address Defendants' motion for sanctions. Defendants allege that Plaintiff has brought "voluminous, vexatious and predominately irrelevant discovery requests" as part of a strategy of forcing Defendants to incur the maximum attorneys' fees possible, and that, consistent with those claims, Plaintiff has failed to make court ordered appearances on two occasions. (*See* D.E. 59–1, Defendants' Brief in Support of Motion for Sanctions, at \*1). In support of the instant motion for sanctions Defendants emphasize Plaintiff's failure to appear for a court-ordered, in-person hearing scheduled for 11:00 a.m. on June 15, 2012. *See id.* Defendants contend that, as a result of Plaintiff's failure to attend the hearing, Defendants unnecessarily incurred legal fees. *Id.* In addition, Defendants note that Plaintiff had previously failed to appear for a Court ordered conference scheduled for February 16, 2012, and has since appeared fifteen minutes late for a court-ordered teleconference on July 2, 2012. *Id.*

Plaintiff opposes the motion for sanctions, and asserts that his failure to attend the hearing was the result of his own scheduling mistake. (*See* D.E. 66, Plaintiff's Letter Brief in Opposition). Plaintiff alleges that he "incorrectly noted the hearing time for 1:30 p.m. when the matter was actually scheduled for 11:00 a.m.," and that he entered the courthouse shortly before noon and spend approximately one hour preparing his arguments in the court's library. *Id.* When Plaintiff finally entered the courtroom at approximately 1:00 p.m. the Court had already allowed defense counsel to leave the building on account of Plaintiff's non-appearance, and the Court had moved on to other matters. *Id.* Plaintiff alleges that he continued to sit in the courtroom, mistakenly believing that he was early for the hearing, when he was informed by a Court employee that the hearing was scheduled for 11:00 a.m. and that defense counsel had already left the courthouse. *Id.* at \*1–2. At that point Magistrate Judge Waldor returned to the

Campbell v. Seagwick Defert, Moran & Arnold, Not Reported in F.Supp.2d (2013)

2013 WL 1314429

courtroom, and Plaintiff explained his failure to appear for the hearing on the record and apologized for his mistake. *Id.* at *2.

It is established that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders. *See, e.g., Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 242 (3d Cir.2007). This inherent power was recognized by the United States Supreme Court in *United States v. Hudson,* 7 Cranch 32, 11 U.S. 32, 3 L.Ed. 259 (1812), where the Court held that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

**\*16** In addition to the court's inherent authority, Federal Rule of Civil Procedure 16(f) provides that if a party fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a pretrial conference, a district court, upon motion or the court's own initiative, may issue sanctions. Rule 16 further states that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an ward of expenses unjust." Fed.R.Civ.P. 16(f)(2). Under Rule 16(d), monetary sanctions for noncompliance with Rule 16 pretrial orders are required and appropriate absent a showing that the violation was "substantially justified" or the award of expenses is "unjust" under the circumstances of the case. *Tracinda Corp. v. DaimlerChrysler Corp.,* 502 F.3d 212, 241 (3d Cir.2007). As noted by the Third Circuit in *Tracinda Corp.,* " 'unjust' can be variously defined as 'unfair,' 'unreasonable,' 'inequitable,' or 'harsh,' " and these definitions "invite a consideration of the degree of the sanction in light of the severity of the transgression[ ... ]." *Id.* Thus, whether a party's misconduct is intentional, negligent, or inadvertent is a significant factor in assessing the severity of the transgression at issue. S*ee id.*

Here, the Court, in its discretion, does not find that the misconduct at issue warrants an award of sanctions. Plaintiff's failure to timely attend the June 15, 2012, conference at 11:00 a.m. appears to be the result of Plaintiff's own negligence

and not motivated by any improper purpose. After arriving to the courtroom late on June 15, 2012, Plaintiff explained his mistake on the record:

> Your Honor, I apologize for [missing the conference]. It was my understanding that the hearing was going to be held at 1:30. I know we had a conference with Mr. Bruk last—end of last month. And I—I think that I had expressed to the Court earlier, because I have a 7–month–old son, that usually the morning, I can't make it, so I had asked for the conference to be held after lunch. And my apologies to the Court. It was my understanding that it was 1:30. I did not look at the calendar again. I'll honestly admit that, Your Honor. But I believe even when we spoke with Mr. Bruk about two weeks ago, it was the understanding that it was going to be in the afternoon and that there were no other matters scheduled. That's my recollection.

(*See* D.E. 56, Transcript of June 15, 2012, Proceedings, at *2, ¶¶ 10–22). The Court also recognizes that at the June 15, 2012 proceedings Magistrate Judge Waldor, after expressing her disappointment that Plaintiff forgot to check ECF before the scheduled hearing, noted that Defendants had been given leave to file a motion for sanctions "in a vacuum," before the Court was apprised of Plaintiff's side of the story. *See id.* at *5, ¶¶ 19–24.

**\*17** Defendants cite *Grant v. Omni Health Care Sys. of NJ, Inc.,* 2009 WL 3151322 (D.N.J. Sept.24, 2009), and *Miller v. Unum Life Ins. Co. of America,* 2006 U.S. Dist. LEXIS 76079, 2006 WL 3000962 (E.D.Pa. Oct. 19, 2006), in support of the instant motion for sanctions. Both cases may be distinguished from the instant matter. The offending attorney in *Grant* had a long history of misconduct, including, *inter alia,* serving and filing numerous documents late, unprofessional and discourteous conduct, missing deadlines, failing to appear on numerous occasions, and filing motions long after the deadlines set forth in scheduling orders had expired. *See* 2009 WL 3151322, at *1–5. While *Miller* did not feature a pattern of misconduct as egregious as that found in Grant, counsel in that case failed to attend a settlement conference on a date and time selected by counsel for no apparent reason, and in doing so caused opposing counsel to needlessly drive for over four hours from Reading, Pennsylvania to Philadelphia. *See* 2006 U.S. Dist. LEXIS 76079, at *2–3, 2006 WL 3000962.

As noted above, Plaintiff has explained his failure to timely appear at the June 15, 2012, conference, and his failure to appear at said conference has not significantly hindered this litigation. It is this Court's determination that the transgression

2013 WL 1314429

at issue does not warrant an award of sanctions. However, the Court notes that Plaintiff has unfortunately failed to appear or appeared late for more than one court-ordered conference or hearing, and the Court will not tolerate this behavior developing into an established pattern. While the Court recognizes that parties may occasionally suffer unexpected trials and tribulations that hinder their ability to make courtordered appearances, the Court also expects that litigants in this Court respect the judicial process and take appropriate care in ensuring that they correctly calendar court-ordered events, and notify the Court and counsel when they will be unavailable. Accordingly, although the Court does not find that sanctions are appropriate at this juncture, continued failure to respect this Court's scheduled conferences and hearings may warrant the imposition of sanctions in the future.

### IV. CONCLUSION

For the foregoing reasons, and good cause shown,

IT IS on this 28th day of March, 2013,

**ORDERED** that Plaintiff's motion to amend his pleading is granted in part and denied in part. The motion as to

the proposed McGeehon amendment, the proposed breach of contract amendment, and the proposed amended factual allegations is granted. The Court denies Plaintiff's motion as to the proposed Saunders amendment. Plaintiff shall hereafter modify his proposed Amended Complaint in accordance with this Opinion and file and serve his Amended Complaint within the time provided by the Federal Rules of Civil Procedure; and it is

**FURTHER ORDERED** that Defendants' motion for a protective order is granted in part and denied in part. The discovery requests at issue are hereby modified in accordance with this Opinion. The parties will immediately meet and confer regarding a plan to complete the outstanding discovery and file their joint proposal with the Court within ten days; and it is

**\*18 FURTHER ORDERED** that Defendants' motion for sanctions is denied.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1314429

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN N-<br>NITROSODIMETHYLAMINE (NDMA),<br>LOSARTAN, and IRBESARTAN PRODUCTS<br>LIABILITY LITIGATION | Civil No. 19-2875 (RBK/JS) |

## ORDER

It is hereby ORDERED this 30th day of December 2020, that the attached Consent Addendums to the Fact Witness Deposition Protocol [Doc. No. 632] are hereby APPROVED and ENTERED:

1. Exhibit 1 – Supplemental Protocol Governing Depositions of Chinese Nationals Residing in Mainland China.

2. Exhibit 2 – Supplemental Protocols Governing Depositions of Indian Nationals Residing in India.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Case 1:19-md-02875-RMB-SAK   Document 704   Filed 12/30/20   Page 1 of 9 PageID: 18741
Case 1:19-md-02875-RMB-SAK   Document 824-11   Filed 02/16/21   Page 35 of 42
PageID: 20616

Exhibit 1

## ADDENDUM

## SUPPLEMENTAL PROTOCOLS GOVERNING DEPOSITIONS OF CHINESE NATIONALS RESIDING IN MAINLAND CHINA

**A.**     **Scope**

1.      This Addendum shall govern certain aspects of the depositions of Chinese nationals residing in mainland China.

2.      Defendants' position is that any Chinese National who agrees to be deposed in this litigation is being deposed on a voluntary basis as a result of the restrictions imposed by the Hague Evidence Convention and China's Civil Procedure Law, as well as this Court's limited subpoena power over Chinese nationals residing in mainland China. Plaintiffs disagree.

3.      This Addendum supplements and incorporates the provisions of the Deposition Protocol (CMO No. 20), including the COVID-19 Protocols set forth therein, to which it is appended. In the event of a conflict between the Deposition Protocol and this Addendum, the Addendum shall control.

4.      The Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the District of New Jersey shall apply to all depositions of Chinese nationals residing in mainland China.

5.      Defendants' position is that China's privacy and state secret laws are also applicable to the testimony of any witness deposed pursuant to this Addendum. Plaintiffs disagree.

6.      Nothing in this Addendum shall be construed as a waiver of any witness' or party's defense of lack of personal jurisdiction.

## B.     Restrictions Affecting Deposition Location

7.     Defendants represent that Chinese nationals traveling from mainland China to another country for a deposition generally require a visa or permit issued by the destination country to enter the destination country; this includes Hong Kong.[1]

8.     Defendants represent that from time-to-time Chinese nationals residing in mainland China may have to abide by certain intra-China travel restrictions imposed by the Chinese government due to COVID-19.[2]

9.     In addition, Defendants represent that countries have imposed travel restrictions, including entry bans, on Chinese nationals seeking entry from mainland China due to COVID-19.[3] For example, as of December 21, 2020, Chinese nationals traveling from mainland China to Hong Kong are required to quarantine for at least 14 days upon arrival to Hong Kong and for at least 14 days upon return to mainland China.[4]

## C.     Protocols Applicable to Depositions Hereunder

10.     **Location:** Unless otherwise agreed, a Chinese national residing in mainland China will travel from mainland China to Hong Kong for the deposition, including for a deposition taken via videoconference.

---

[1] *See* Immigration Department of the Government of the Hong Kong Special Administrative Region, *Arrangements for Entry to the Hong Kong Special Administrative Region (HKSAR) from the Mainland China*, available at https://www.immd.gov.hk/eng/services/visas/overseas-chinese-entry-arrangement.html#a.

[2] *See* U.S. Embassy & Consulates in China, Covid-19 Information, U.S. Dep't of State (last updated Dec. 8, 2020), available at https://china.usembassy-china.org.cn/covid-19-information/ (noting "[i]f an area of China has resurgence of cases, local authorities may restrict intercity and interstate travel.").

[3] *See, e.g.*, *Interactive Map of Travel Restrictions*, Kayak (last accessed Dec. 20, 2020), available at https://www.kayak.com/travel-restrictions; *U.S. Restrictions*, Centers for Disease Control and Prevention (last accessed Dec. 20, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/travelers/from-other-countries.html (noting ban on Chinese nationals from entering the United States).

[4] *See* U.S. Consulate General Hong Kong & Macau, COVID-19 Information, U.S. Dep't of State (last updated Oct. 19, 2020), available at https://hk.usconsulate.gov/covid-19-information/.

11.     **Length:** Unless otherwise agreed or ordered, a deposition taken pursuant to this Addendum will last for seven (7) hours in accordance with the time zone in which the witness is located for the deposition, as provided for under the Federal Rules of Civil Procedure. The length of a deposition subject to this Addendum that utilizes translation services may be increased by 75% in accordance with the Deposition Protocol (*see* CMO No. 20). The length of a deposition subject to this Addendum may be increased due to delays caused by technical problems, for example resulting from videoconference connectivity interruptions, by the amount of time of such delays, which shall be recorded by the stenographer and videographer. In the event translation services and/or technical problems cause the deposition to extend beyond the time block agreed for a deposition, or to be delayed for a significant length of time, the witness and examining counsel may elect to extend the deposition to a consecutive day.

12.     **Notice:** After counsel, through consultation in accordance with this Addendum, have made good faith efforts to agree upon a date and mutually convenient location for the deposition(s), the Noticing Party shall serve a Notice or an amended Notice reflecting the agreed upon date(s), location(s), and start time(s) based on Hong Kong Standard Time, or the time zone of the other agreed location. The Parties acknowledge that sufficient notice is necessary so the witness and all other attendees, including counsel, translators, and stenographers/videographers may make the necessary travel arrangements and obtain the necessary travel documentation, as applicable.

13.     **Observance of China's Holidays:** Depositions pursuant to this Addendum shall not be noticed for dates during periods Chinese are holidays observed, including the Chinese New Year, for which the period of observance is from February 8, 2021 through February 26, 2021.

# Exhibit 2

## ADDENDUM

## SUPPLEMENTAL PROTOCOLS GOVERNING DEPOSITIONS OF INDIAN NATIONALS RESIDING IN INDIA

**A.** **Scope**

1.     This Addendum shall govern certain aspects of the depositions in this litigation of Indian nationals residing in India.

2.     Defendants' position is that any Indian National (other than an individual testifying pursuant to Rule 30(b)(6) who agrees to be deposed in this litigation is being deposed on a voluntary basis as a result of the restrictions imposed by the Hague Evidence Convention, as well as this Court's limited subpoena power over Indian nationals residing in India. Plaintiffs disagree.

3.     This Addendum supplements and incorporates the provisions of the Deposition Protocol (CMO No. 20), including the COVID-19 Protocols set forth therein, to which it is appended. In the event of a conflict between the Deposition Protocol and this Addendum, the Addendum shall control.

4.     The Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the District of New Jersey shall apply to all depositions of Indian nationals residing in India.

5.     Nothing in this Addendum shall be construed as a waiver of any witness' or party's defense of lack of personal jurisdiction.

**B.** **Restrictions Affecting Deposition Location**

6.     Where an Indian national residing in India is designated to testify in a corporate representative capacity, Plaintiffs may depose the Indian national pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

7. Counsel are expected to cooperate and coordinate the scheduling of depositions on a good faith basis, taking into account that Indian nationals residing in India may be subject to travel restrictions, both internal and external and including entry bans, as well as mandatory quarantine measures, due to COVID-19.[1]

## C.     **Protocols Applicable to Depositions Hereunder**

8.     **Location:**  Unless otherwise agreed, an Indian National residing in India who is appearing for deposition will be deposed in the location in which they work and/or reside. Depositions may be conducted remotely pursuant to the Deposition Protocol (CMO No. 20).

9.     **Length:** Unless otherwise agreed, or ordered, a deposition taken pursuant to this Addendum will last for seven (7) hours in accordance with the time zone in which the witness is located for the deposition, as provided for under the Federal Rules of Civil Procedure. The length of a deposition subject to this Addendum that utilizes translation services may be increased by 75% in accordance with the Deposition Protocol (*see* CMO No. 20). The length of a deposition subject to this Addendum may be increased due to delays caused by technical problems, for example resulting from videoconference connectivity interruptions, by the amount of time of such delays, which shall be recorded by the stenographer and videographer. In the event translation services and/or technical problems cause the deposition to extend beyond the time block agreed for a deposition, or to be delayed for a significant length of time, the witness and examining counsel may elect to extend the deposition to a consecutive day.

---

[1] *See, e.g.*, U.S. Embassy & Consulates in India, Covid-19 Information, U.S. Dep't of State (last updated Aug. 11, 2020), available at https://in.usembassy.gov/covid-19-information/; *Interactive Map of Travel Restrictions*, Kayak (last accessed Oct. 22, 2020), available at https://www.kayak.com/travel-restrictions; *U.S. Restrictions*, Centers for Disease Control and Prevention (last accessed Oct. 22, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/travelers/from-other-countries.html.

10.    **Notice:** After counsel, through consultation in accordance with this Addendum, have made good faith efforts to agree upon a date and mutually convenient location for the deposition(s), the Noticing Party shall serve a Notice or an amended Notice reflecting the agreed upon date(s), location(s), and start time(s) based on India Standard Time, or the time zone of the other agreed location. The Parties acknowledge that sufficient notice is necessary so the witness and all other attendees, such as counsel, a translator and a stenographer may make the necessary travel arrangements and obtain the necessary travel documentation, as applicable.

11.    **Language:** Even where the witness speaks English, all witnesses shall have the right to conduct the deposition in his/her native language and to have an interpreter present in accordance with Deposition Protocol § K.1 and K.2. Notice shall be provided by counsel for the witness in advance of the deposition to the extent an interpreter will be used.