UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

IN RE:  VALSARTAN, LOSARTAN,
AND IRBESARTAN PRODUCTS
LIABILITY LITIGATION

_____

CIVIL ACTION NUMBER:

1:19-md-02875-RBK-KW

STATUS CONFERENCE
(Via telephone)

          Wednesday, February 3, 2021
          Commencing at 1:05 p.m.

B E F O R E:          SPECIAL MASTER,
                      THE HONORABLE THOMAS I. VANASKIE

A P P E A R A N C E S:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey 07068
        For the Plaintiff

        GOLOMB & HONIK PC
        BY:  RUBEN HONIK, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania 19103
        For the Plaintiff

        SLACK & DAVIS, LLP
        BY:  JOHN RANDOLPH DAVIS, ESQUIRE
        2705 Bee Cove Road, Suite 220
        Austin, Texas 78746
        For the Plaintiffs

                Karen Friedlander, Official Court Reporter
                    friedlanderreporter@gmail.com
                         (856) 756-0160

            Proceedings recorded by mechanical stenography;
        transcript produced by computer-aided transcription.

1   A P P E A R A N C E S: - CONTINUED

2       DUANE MORRIS LLP
        BY:  SETH A. GOLDBERG, ESQUIRE
3       30 S. 17th Street
        Philadelphia, Pennsylvania 19103
4       For the Defendant, ZHP and the Joint Defense Group

5       GREENBERG TRAURIG LLP
        BY:  VICTORIA LOCKHARD, ESQUIRE
6       3333 Piedmont Road, NE, Suite 2500
        Atlanta, Georgia 30305
7       For the Defendants, Teva Pharmaceutical Industries Ltd.,
        Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
8       Pharma, Inc.

9       PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
        BY:  CLEM C. TRISCHLER, ESQUIRE
10           FRANK H. STOY, ESQUIRE
        One Oxford Centre, 38th Floor
11      Pittsburgh, Pennsylvania 15219
        For the Defendant, Mylan and the Joint Defense Group

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (ALL PARTIES VIA TELEPHONE, February 3, 2021,

2   1:00 p.m.)

3        JUDGE VANASKIE:  Let's get started.  I received a

4   letter yesterday evening requesting on an emergent basis a

5   conference call to address the scheduling issues in this

6   matter and that letter came from Mr. Trischler, and I received

7   a response letter earlier this morning from Mr. Slater.

8        And so, Mr. Trischler, you got the ball rolling.  Do

9   you want to address this matter first?

10       Let me back up for a minute.  Everyone identify

11  yourselves when you speak and we'll call upon you first,

12  Mr. Trischler, and then I'll simply ask anybody else who wants

13  to be heard to identify yourselves and you'll have a chance to

14  be heard.

15       But we'll start with Mr. Trischler.

16       MS. SMITH:  Excuse me, Judge, before we start --

17  excuse me, Mr. Trischler, before we start, I just wanted to

18  find out if there was a court reporter on the phone call.  Did

19  we get one?

20       THE COURT REPORTER:  Yes, Karen Friedlander

21       JUDGE VANASKIE:   Yes, Karen is on the phone.

22       MS. SMITH:  I didn't mean to interrupt, Judge, I just

23  wanted to make sure.

24       JUDGE VANASKIE:  That's okay.  We had asked that

25  earlier and Karen said she was here with us.  We're all set to

```
 1   go.  All right?  Okay.  Mr. Trischler.
 2          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.
 3   Clem, go ahead, I'm sorry, I didn't know you were on.
 4          MR. TRISCHLER:  That's okay, Seth.  Thank you, Your
 5   Honor, this is Clem Trischler.  I was going to lead my remarks
 6   by indicating that I had been tied up in a few other matters
 7   last evening and this morning, and I know there have been a
 8   few developments since this issue was initially raised, so I
 9   was going to invite some of my colleagues to add to the
10   initial comments that I make, but to quickly summarize where
11   we were, we spent a lot of time as the defense group thinking
12   about some of the issues that came up in our call last
13   Wednesday, and in particular, the comment from plaintiffs that
14   they were not going to be able to complete their review of
15   production materials prior to the depositions of witnesses.
16          And without trying to cast blame on anyone, because
17   there's a long history with respect to the production and, you
18   know, and I'm certain that if we had to relitigate that
19   history, the plaintiffs will tell this Court that there were
20   delays that they found unacceptable on the defense side, we
21   would tell the Court that all case management orders were
22   complied with and good faith attempts were made to produce
23   documents as quickly as possible and that incredible amounts
24   of resources were devoted to the production effort.
25          But without getting into any of that and without
```

1    doing -- engaging in any he said/she said blame game, what we

2    really tried to do is look at, okay, if there is a problem

3    here, what is the solution, and we -- and the conclusion we

4    came to is the solution is very clear, the solution is not to

5    proceed blindly with depositions that will only set the stage

6    for motion after motion after motion with arguments being made

7    that, well, we didn't have a chance to review this document so

8    we need to re-depose this witness.  And rather than proceeding

9    in such an inefficient fashion, what we concluded on the

10   defense side was that the logical thing to do, given that we

11   don't have any trial dates, given that COVID has created a

12   situation where there's unlikely to be a trial of any of these

13   cases for some time, that the logical thing to do would be to

14   pause, to allow plaintiff time to complete its document

15   review.

16       There are other outstanding discovery issues on our

17   side that we've run into with respect to production of medical

18   records for some of the plaintiffs that would give, you know,

19   a pause would give us time to do that.  And so what we were

20   basically proposing, and that pause being a period of 90 days,

21   to allow the document discovery issues to be addressed, to

22   allow any issues with privilege logs and related issues to be

23   addressed.

24       We get all that taken care of and then instead of

25   doing the depositions from what was planned to be January 19

1    to March 30, that we essentially move those dates back to May,

2    June, July time period.  You know, frankly, I don't see how

3    that solution was prejudicial to anybody.  We spent a lot of

4    time thinking about it, trying to get a consensus of some

5    50-plus on our side.  I believe we achieved that consensus and

6    then so we've presented it to the plaintiffs yesterday, and

7    the plaintiffs were, you know, very cooperative in terms of

8    hearing us on short notice and, you know, we talked about the

9    fact we wanted to bring it to the Court for immediate

10   consideration.  And so I want to thank the plaintiffs for

11   their responsiveness to, you know, considering our proposal.

12          I know that Mr. Slater has recently proposed a

13   counterproposal that I really haven't had a chance to look, at

14   for various personal reasons, but essentially, I think what

15   I've outlined is the idea behind the motion, the thought

16   process behind the motion, and we believe that there's -- it

17   is a solution that solves problems that helps us avoid endless

18   discovery issues down the road and doesn't prejudice any party

19   to this litigation.

20          And so with that, before hearing any questions or

21   comments from the Court, I'd certainly invite Seth or anyone

22   else on my side to add anything that I may have missed in

23   light of recent developments.

24          MR. GOLDBERG:  Thanks, Clem.  This is Seth Goldberg

25   for the record.  I did want to just add, you know, Clem

1    referred to a pause, and I don't know that we would actually

2    use -- we didn't actually propose a pause where there would be

3    no depositions for the 90 days, but we had been proposing were

4    that, you know, there would be nothing accomplished during

5    that 90 days.

6          And, in fact, during the meet and confer yesterday

7    and as set forth in our letter, we certainly intend to have

8    depositions be taken during that 90-day period if it's

9    warranted and to be resolving any of the other discovery

10   issues.  What we had proposed was to push all of the dates in

11   the current scheduling order back by 90 days so that there

12   would be more flexibility in this schedule, and, Your Honor,

13   at least with respect to ZHP, is very aware of how compressed

14   this schedule is, and that it is causing overlap in

15   depositions, and our concern that really has already come up

16   in depositions of defendants and depositions of plaintiffs is

17   that we could get to a point where witnesses are being

18   recalled to testify about documents that have already --

19   documents that were produced before the deposition and that

20   the recalling of witnesses could become extremely disruptive

21   to the overall case management schedule.

22          And so what we thought was a straightforward

23   extension of all deadlines by 90 days would give the parties

24   the flexibility to rework the schedule in such a way as to

25   increase the likelihood that counsel would be prepared going

1    into a deposition and reduce the likelihood that a witness

2    would be recalled for additional testimony down the line.

3          Plaintiffs' proposal today I think does two things;

4    one, rather than a straightforward extension of the deadlines

5    of -- all of the deadlines for 90 days, plaintiffs have

6    proposed restructuring the internal deadlines in the case

7    management order, and I'll just point out for Your Honor that

8    those deadlines that are in the current order were carefully

9    negotiated by the parties over weeks and weeks, and they

10   reflect deadlines that affect not just the manufacturer

11   defendants who are here on this issue at depositions, but

12   affect all of the supply chain defendants.  And so defendants

13   are not and would not agree, we have not proposed, nor do we

14   agree to a restructuring of the internal deadlines in

15   calendar.

16         We simply proposed a straightforward across-the-board

17   extension of each of the deadlines to avoid any sort of

18   restructuring, and plaintiffs' letter today proposes some

19   additional conditions on an extension, some of which are not,

20   you know, not material really to the extension being

21   requested, but, of course, some which have to do with the

22   scheduling of depositions.

23         We are certainly open to working with plaintiffs to

24   establish a new schedule that reflects more reasonability and

25   more flexibility to avoid overlap and to ensure adequate

1    preparation for depositions.

2         JUDGE VANASKIE:  All right.  Anyone else want to be

3    heard on behalf of the defendants before I call upon

4    Mr. Slater?

5         Thank you, Mr. Goldberg.  Mr. Slater.

6         MR. SLATER:  Yes, Your Honor, hello, Adam Slater for

7    the record.  We laid out in our letter what we think is a

8    pretty concise statement of what our position is on this, and

9    trying to cut to the chase on it, we were much more

10   comfortable with 30 days, but we didn't want to get into a

11   situation where we said 30, they said 90, and then we'd have

12   to come back.  So we figured we would just try to go to the

13   middle now on the 60 days and we actually laid out a schedule

14   that doesn't disrupt the key deadlines very much at all, and

15   that was our most important concern for the following reason:

16        We believe that this is a product where we are now of

17   -- production deficiencies that we've been airing for, you

18   know, months and months going back to last summer, and we

19   were, you know, repeatedly told, no, the productions are going

20   to be compliant and we now know that, as we said in the

21   letter, we're getting productions for witnesses after their

22   depositions or during their depositions.

23        So what we're concerned about is that this problem

24   they've now manifested at a level that, obviously, the

25   defendant take it very seriously, which we appreciate, but we

1  don't want that to then be a reason why all the deadlines get

2  pushed out so far that the most important dates, which are

3  class certification filings, *Daubert* filings, and then

4  allowing the Court to, you know, get into a posture to rule on

5  those things, get disrupted very much, and that's why we

6  worked what we did into the schedule because there was some

7  time that was built in already, we believe, when we looked at

8  the schedule last night and this morning, and that's why we

9  proposed the schedule we proposed.

10         We also, as Your Honor saw, proposed some, what we

11  call parameters, and those were all set in order to, you know,

12  taking everybody at face value of what they're saying in order

13  to again cause the least disruption while at the same time

14  solve the problems that have been enunciated, such as,

15  problems getting documents to us that allows them -- that

16  allows a little more time and hopefully enough time to get

17  more documents out, but lets depositions to continue, requires

18  rescheduling of depositions now, requires they be spread out

19  in a more reasonable way, because we'll have more time to work

20  with, that will help both sides, and then address two issues

21  that we think will really help to make sure that we don't walk

22  into a deposition and the defense, for example, finds out, oh,

23  an important document wasn't produced.  And I gave the example

24  of the standard operating procedures and quality manuals,

25  because that's an area where there's so many different

1    versions and drafts and revisions, that -- I think that if the

2    interest is in not repeating the depositions, that in that

3    type of a category of documents, with those 30(b)(6)

4    depositions, there should be confirmation before the

5    deposition of which ones actually applied and when, so that

6    there's no question.  And then, for example, when the defense

7    goes through that exercise with us, if something is missing,

8    because they consult with their 30(b)(6) witness who says,

9    well, you know, you also need this and this and they realize

10   it hasn't been produced or identified, then that can be done

11   so we can do our own quality control before the deposition

12   rather than doing a fire drill during and after the

13   deposition, because we'd prefer to take the depositions once

14   also.

15          So that's where that suggestion came from.  We think

16   that should be -- if there's an extension codified in an

17   order, and the second thing is really a -- the next step

18   beyond the conversation we had in the last conference about

19   the privilege logs.

20          Again, taking what the defendants are saying at face

21   value, it's critical that we put in a systemic process to

22   address the privilege logs, address the process for

23   challenging privileged designations, and what I've -- what

24   we've suggested in our letter is what we did in *Benicar*.  We

25   had a standing meet and confer, people on both sides of the

1    case, just met on a rolling basis and just plowed through the

2    privilege logs and it worked great, agreement was reached for

3    the most part, I don't think any of the privilege challenges

4    had to go to the Court, because the people meeting and

5    conferring were realistic enough to know, okay, this is one

6    that you're going to get anyway, et cetera.

7         So it institutionalized a process to deal with the

8    privilege, and that's the privilege logs and privilege

9    challenges on a rolling basis.

10        So again, what we put in there were means that we

11   thought would help to give a more robust protection for all

12   the parties to make sure that we're put to the test before the

13   depositions happened to try to get the documents identified

14   and produced, so that the depositions can go smoothly, and

15   again, avoid the need for re-deposition.

16        We're obviously not waiving our right because if, for

17   example, as has occurred with some depositions already,

18   important documents are produced, for example, from a

19   witness's custodial file after he or she is deposed.  We

20   certainly, you know, need to look at that.  We're not saying

21   we're going to ask for a re-deposition in every single

22   instance.

23        Those lawyers who were involved in *Benicar* -- I did

24   one of the co-leads.  I think we might have continued one

25   witness's deposition for a day or two, and there were no other

1  re-depositions with the same type of parameters.  So we would

2  hope that with an extension of 60 days along the lines of what

3  we've suggested in our letter, we can stick to our schedule,

4  we don't get the case thrown off, the back-end deadlines that

5  matter the most are essentially preserved, and then the

6  parties can start to work in a very cooperative way to get the

7  schedules nailed down, to get the documents identified and

8  then -- then take these depositions, and I'll hand off to my

9  colleagues on the plaintiffs' side, if anybody feels something

10  should be added to what I've said.

11      JUDGE VANASKIE:  All right.  Mr. Trischler or

12  Mr. Goldberg, do you want to respond and then we can hash this

13  out?

14      MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

15  will just emphasize, again, that defendants will not agree to

16  the kind of schedule changes that plaintiffs have proposed and

17  cannot agree.  That schedule reflects weeks and weeks of

18  negotiation.  It also reflects dates that -- a schedule of

19  dates that are based on Judge Kugler's rulings about the

20  timing of general causation and class certification.

21      Judge Kugler was very clear that there would be no

22  class certification if there's no general causation and set

23  the schedule so that general causation issues will be resolved

24  before class certification.  Plaintiffs are using this as an

25  opportunity, potentially, to compress that schedule that was

1   so carefully crafted and was just negotiated and presented to

2   Judge Kugler on January 5th, and reworking the internal dates

3   in the schedule is not something that defendants proposed, it

4   was not discussed yesterday, and it is not something that is

5   agreeable to defendants to the point of going forward on the

6   current schedule, as Judge Schneider has said, because we

7   think that that would be over -- that would not be the

8   appropriate outcome to something that can be done very

9   straightforward, which is just a 60- or 90-day extension of

10  all dates.

11        And if there's a -- if, Your Honor, I suppose a

12  60-day extension of all dates is preferable, but short of

13  that, defendants would simply stick with the current schedule.

14        JUDGE VANASKIE:   All right.  Thank you for that.

15        Mr. Slater, what about the point that Mr. Goldberg

16  makes that this revised CMO 22 was carefully negotiated and

17  structured in such a way that it makes sense to have certain

18  deadlines follow certain events by a specified period of time.

19  Number one, is that accurate and why shouldn't we be honoring

20  that?

21        MR. SLATER:  Well, it's  -- I don't really, with all

22  due respect, I don't -- to Mr. Goldberg, I don't agree.  I

23  don't think we agree and the idea that the, quote unquote,

24  deadlines are somehow being changed in some substantial way,

25  I'm not sure what Mr. Goldberg's talking about.

1    I mean, we lay out in our letter a few deadlines

2    being moved out for the discovery to be done and for the

3    expert reports to be written and served and for the expert

4    depositions, but we've -- we've preserved the class

5    certification deadline on September 3rd for us to file our

6    motions and serve those expert reports.  They're not dependent

7    on what is being argued today about the productions and the

8    fact witness depositions.  So there's no reason to change that

9    date.

10    We're still going to have all of our general

11    causation experts deposed before that date, August 31st on our

12    schedule.  All we've done is move that date out from July 1 to

13    August 31 to recognize the 60-day extension.  I mean, it was

14    done rote.

15    And the other dates, all we did was move out a few of

16    the *Daubert* deadlines somewhat just to again recognize that we

17    would need a little -- to push those out a little because the

18    expert depositions needed to get done.

19    There's no change in the back end other than a few

20    dates.  It's really very small, so I don't accept what counsel

21    is saying and, you know, if their concern is that they want to

22    get the time to produce their documents so we don't have to

23    re-depose their witnesses, then this schedule does that, it

24    gives them the leeway to do it, it allows everything to be

25    spaced out a little bit more in a way that probably works

 1  better.  I'm not sure what their concern is, because again, it

 2  doesn't change anything in terms of the sequence of the case.

 3          Class certification motion, we didn't change any of

 4  those dates.  We didn't change anything with that, and the

 5  *Daubert* catches up at the end, because we shrunk the time for

 6  our brief to be filed and we shrunk some of the other

 7  deadlines, so it's virtually the same.  I don't really

 8  understand the criticism or the defense saying, well, if we

 9  don't -- if we don't just get to push all the dates out, we're

10  not going to agree.

11          I mean, at this point, my view is that a situation

12  has been put before Your Honor.  We ask Your Honor to solve

13  it.  We have given what we think is a very reasoned,

14  thoughtful response with what I've referred to as robust

15  parameters to try to make sure that we work in a way that this

16  is -- doesn't become an issue again, and then another request

17  is made to extend the deadlines.

18          I suppose if the defense wants to withdraw their

19  request, I suppose they can do whatever they want, but, you

20  know, I'm not playing chicken here, I'm trying to get to a

21  reasonable outcome of a scheduling issue in a large MDL.  So I

22  don't agree with what Mr. Goldberg said and I think that our

23  schedule doesn't create the problem he's claiming it creates.

24          And the last thing I'll say is this:  Whatever was

25  submitted the beginning of January was back when the universe

1    wore in, was where the defense was telling us, we've complied

2    with all our document production obligations, the plaintiffs

3    are wrong, they keep saying the sky is falling, they're wrong.

4    We know that universe and that reality doesn't exist because

5    we know that documents are still being produced en masse now,

6    and they're going to continue to be produced.  So what we did

7    and what we negotiated at that time were basically preserving

8    and it was based on a different set of facts than what's now

9    been admitted to the Court.

10           MR. HONIK:  Your Honor, this is Ruben Honik.  With

11   the Court's permission, I would like to add a few points of

12   context to what Mr. Slater has already shared that goes

13   directly to your question about the relevant dates at the end

14   of this calendar year.

15           JUDGE VANASKIE:  Very well, Mr. Honik, go ahead.

16           MR. HONIK:  Thank you.  Your Honor, since 2019 and

17   for virtually all of 2020, both Judge Kugler and Judge

18   Schneider made it perfectly clear to all the parties that the

19   leading decisional edge of this case would be resolution of

20   the economic claims, and as such, the Court was completely

21   focused on getting us to an economic class trial preceded by

22   motions on Rule 23 class certification.

23           For much of this past year, the defendants resisted

24   that, and wanted very much to have the Court entertain a

25   separate track to address general causation, and after the

1  better part of a year of advocating that position, the Court

2  relented, and said, okay, here's what we're going to do so

3  long as it could be accomplished by about the end of calendar

4  year 2021, I'm still going to entertain class certification,

5  that's the leading edge of this case, but the Court allowed

6  for a separate track to be developed on general causation.

7  And as a result of that, and with that as the focus, the

8  parties came up with dates at the end of -- roughly at the end

9  of calendar 2021, and from that important set of dates, we

10  backed into a period to complete discovery, and as Your Honor

11  well knows, originally the Court wanted us to complete all of

12  fact discovery by April.

13         We then agreed and the Court agreed and permitted us

14  to modify that to let some of the discovery be completed by

15  August.  But the point of this context that I'm giving Your

16  Honor is that it was critically important to Judge Kugler that

17  at or by the end of this calendar year, that we would reach

18  the decisional stage on both class certification and *Daubert*,

19  and to emphasize what Mr. Slater has already said, much of

20  that is going to be unrelated to the completion of this

21  discovery.

22         That is to say, we can file and intend to file our

23  Rule 23 motion for class certification in September.  There's

24  no reason to alter that, and I dare say, we'll honor what

25  Judge Kugler has insisted should be our schedule.  So I wanted

```
 1   Your Honor to have the benefit of that.

 2             JUDGE VANASKIE:  Thank you very much.

 3             MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

 4   May I --

 5             JUDGE VANASKIE:  Yes, Mr. Goldberg.  Absolutely.

 6   What's your response?

 7             MR. GOLDBERG:  I think it's really important for Your

 8   Honor to understand the dates here, and what I'm saying about

 9   compressing is, there is no question that the parties went to

10   Judge Kugler in December, we asked for permission in proposing

11   this schedule and we very carefully, through many weeks,

12   negotiated that schedule over many communications, and it

13   involved every level of the supply chain because all of the

14   scheduling changes would affect discovery obligations as to

15   the retailers and the wholesalers and the plaintiffs,

16   including class representatives who were named at the time and

17   eventually named in an amended class action complaint.

18             It also affected the third-party discovery that's

19   pending, and the schedule we came up with together have class

20   certification being filed in late -- in September and the

21   class certification issues running in the fall and into the

22   early part of 2022.  It had general causation issues being

23   resolved and general causation briefing being -- *Daubert*

24   briefing being completed in November of 2021, November 1st, so

25   that the Court would have sufficient time between
```

1    November 1st, 2021, and March 15th, 2022, when the *Daubert*

2    briefing on class certification would be completed, to resolve

3    the issues of general causation, mindful that Judge Kugler was

4    very clear on November 24th that general causation -- that if

5    there is no general causation, there would be no class

6    certification.

7          What plaintiff has proposed is to move all of the

8    general causation dates back by 60 or 45 days, but to leave

9    the class certification dates unchanged and thereby confessing

10   the general causation and class certification schedule such

11   that the time that the parties agreed would be provided to

12   Judge Kugler to decide the general causation issue is

13   compressed, if not eviscerated, so that we won't have a

14   general causation issue, a general causation decided before

15   class certification.

16         So what we are suggesting is either all of the dates

17   are moved back by 60 or 90 days in order to preserve the

18   structure that Judge Kugler approved, which is for general

19   causation to precede class certification so that the issue of

20   general causation could be decided before class certification,

21   or to have no extension, but to rework the internal deadlines

22   to eliminate that separation would be contradictory to what

23   the parties negotiated and to what Judge Kugler said about

24   general causation and class certification.

25         JUDGE VANASKIE:  All right.  Thank you very much.

     1    Anybody else on the defense side?

     2             Let me ask a question of either Mr. Honik or

     3    Mr. Slater.  How are you prejudiced if we move everything

     4    back, say, 60 days, all these interim deadlines that were

     5    established in revised CMO 22?

     6             MR. SLATER:  Hello, Your Honor, it's Adam Slater.  I

     7    think we're prejudiced --

     8             JUDGE VANASKIE:  Thank you, Mr. Slater.

     9             MR. SLATER:  Yes.  I think we're prejudiced in the

    10    sense that the most important deadlines for us are the ones

    11    that get us to the point where we can ultimately get to a

    12    class certification posture and get to trial if this

    13    litigation can't be resolved.

    14             I mean, Your Honor, when you came in, we had just

    15    spent a year with the defendants producing documents.  They

    16    got massive extensions early in 2020 due to COVID and said, no

    17    problem, we're going to get everything produced by November

    18    and there won't be a document dump and none of those things

    19    happened.  So it would be very unfair now for this situation

    20    to now kick the back-end date out 60 or 90 days because they

    21    don't need to be, and from our perspective, the deadlines were

    22    already pushed out so far due to how long it took the document

    23    productions to take place, that that would be very

    24    prejudicial.

    25             I mean, we want to get to the point where we can get

1    class cert addressed.  We want to get to the point where

2    *Daubert* can be decided on the general causation experts.  We

3    want to be able to get to a point where this important work is

4    done and the decisions are made so that if the litigation is

5    not going to be resolved, we can go to trial, and we don't

6    want this to be something where it's another two years or so

7    before we can get this litigation in a posture for a trial,

8    because that doesn't benefit anybody.

9           So that's where the prejudice is because there's a

10   back end of delay that's already built in, so it continues to

11   happen.  So we want to minimize that.

12          JUDGE VANASKIE:  But the structure that you had

13   negotiated before called for, and I just want to make sure I

14   understand this.  I have revised CMO 22 here in front of me.

15   Called for the deadline to file *Daubert* motions regarding

16   general causation on August 31st, and then your deadline for

17   class certification of September 3rd, so in short order after

18   the deadline for the *Daubert* motions.  And now you're

19   proposing that class cert be sought before the *Daubert* motions

20   are filed?

21          MR. SLATER:  Judge, all it is is the filing of the

22   class cert motions and service of our expert reports.  That's

23   the -- that's happened, and then all of the other deadlines

24   regarding class cert at the back end aren't touched, they're

25   not moved at all.  So all this does is it puts more pressure

1    on us, frankly, to get our briefs and our expert reports in on

2    that so that that process is initiated.  But the rest of the

3    sequence of the case, when you look at the deadlines that

4    we've proposed, it doesn't change anything at the back end.

5            The *Daubert* will still be decided first and then the

6    class certification will be decided.  We haven't changed that

7    sequence at all.

8            MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

9    That's precisely --

10            JUDGE VANASKIE:  Yes.

11            MR. GOLDBERG:  -- the problem.  That's precisely the

12    problem.  The problem is, by not changing the back-end dates

13    on class certification but pushing back general causation, you

14    are now compressing the time for the Court to decide general

15    causation before the Court decides class certification, and

16    the back-end dates have to change in order to keep the

17    structure, and plaintiffs are looking at this as an

18    opportunity to, you know, either renegotiate or relitigate the

19    schedule, when all we are proposing is a very straightforward

20    moving back of all of the dates.

21            And on the point of prejudice, it should be noted

22    that whether the case is trial ready 60 days later or 90 days

23    later is really immaterial, given that there's not going to be

24    a trial in this case in 2021 or in early 2022, as Judge Kugler

25    said in November.  He's telling all civil litigants that

1    trials are not happening this year or next year, given the

2    backlog due to COVID on his criminal docket.

3          So we really can't see how plaintiffs could be

4    prejudiced by a 60- or a 90-day extension of these deadlines,

5    and certainly defendants would be prejudiced by having to have

6    witnesses re-deposed, and defendants would be prejudiced by

7    not being able to take the depositions of the class

8    representatives and personal injury plaintiffs without having

9    all of the documents.  And that's also an issue that we've --

10   we are dealing with.

11         MR. HONIK:  Your Honor, this is Ruben Honik.  May I

12   be heard again?

13         JUDGE VANASKIE:  Yes, Mr. Honik.

14         MR. HONIK:  Your Honor, I was the principal

15   negotiator with Mr. Goldberg on this schedule, and he will

16   recall that their original schedule had all of these so-called

17   back-end dates into the latter part of '21 -- excuse me, into

18   '22 and into '23, and we were emphatic that that was way too

19   long, not consistent with what Judge Kugler had ordered us to

20   do, and we reached a firm agreement that by mid-February, all

21   briefing, all briefing on class certification would be

22   complete.

23         That was the foundation of this agreement, and using

24   that as the end date by which the Court would have all the

25   briefing, we then filled in the intermediate dates before, but

 1    the concept that we negotiated, agreed to and the Court

 2    eventually blessed, began with an understanding that class

 3    certification would be fully briefed by all the parties as of

 4    mid-February.

 5              It's presumptuous of any of us to think that just

 6    because we briefed something that the Court is somehow going

 7    to decide it on that same schedule, and the fact remains,

 8    there's no reason why *Daubert* motions on general causation

 9    cannot be briefed and argued while we brief class

10    certification.  All that means is the Court will have the

11    thoughts of the parties in briefs on its desk ready for

12    decision.  That decisional point is going to be up to Judge

13    Kugler.  All we're maintaining is and identifying the problem

14    that the defendants have brought to your attention on an

15    emergent basis is a discovery problem.  It should have no

16    direct bearing or overbearing on these other dates.  There's

17    no reason.

18              We're the ones that have the burden of filing the

19    opening brief on the class.  We're the ones that are going to

20    be challenged on *Daubert*.  That can still take place with some

21    minor adjustments that we have, and it's still sequenced in a

22    way where general causation, which frankly goes primarily to

23    the personal injury cases, and -- and I respectfully disagree

24    with Mr. Goldberg's characterization of its relationship to

25    class, but that's for another day.

1    The bottom line is, we can do both.  We can brief the

2  *Daubert* issues on general causation and almost simultaneously

3  brief Rule 23, and at the same time, provide the needed relief

4  on documents and depositions, which is the problem that's on

5  the table.  And I know it's neat and easy to simply say move

6  everything 60 days, but respectfully, Your Honor, the

7  negotiation that Mr. Goldberg keeps referring to, the seminal,

8  foundational agreement was that all briefing on class would be

9  complete by mid-February.

10    JUDGE VANASKIE:  Thank you, Mr. Honik.  What I'm

11  struggling with here though, and maybe you'll want to respond

12  to this question, is that you did have it sequenced.  I mean,

13  you did have these deadlines sequenced, and I guess what

14  you're saying is, you backed into these deadlines by saying

15  completion of briefing on the class certification motion by

16  mid-February of 2022, and then you backed into all of these.

17  Is that what you're saying, that the key date here was

18  February of '22?

19    MR HONIK:  Yes, and the Court had already indicated

20  to the parties that April was going to be our discovery

21  cutoff.  So what we were doing -- I mean, the Court really

22  didn't even entertain when class cert would be heard or

23  briefed, and we introduced that into the negotiation.  The

24  Court was only interested in ensuring that the fact discovery

25  would be completed, and then the defendants in their continued

 1    insistence, the general causation, and frankly, they spent a

 2    year and a half trying to convince the Court unsuccessfully

 3    that the bodily injury claim should go first.

 4         They kept insisting that bellwether personal injury

 5    trial should go first, and Judge Kugler has rejected it,

 6    continues to reject it, hasn't -- doesn't have a bellwether

 7    preceding class cert.

 8         It's clear to us, Your Honor, that the class cert is

 9    the issue that Judge Kugler wants to get to, and only after

10    the defendants' persistence did he create a separate track for

11    general causation.  What our proposed schedule does is

12    preserves that.  It also respects the idea that Judge Kugler

13    wanted this to really occur by the end of this calendar year,

14    and because there's largely a disconnection between completing

15    this fact discovery and those deadlines, what we've done is to

16    try to accommodate the request of the defendants by

17    enlargening (sic) the discovery period by 60 days, but not

18    doing major disruption to the deadlines associated with

19    general causation, *Daubert*, and Rule 23.

20         And if you look with care at our proposed schedule, I

21    think it threads the needle and does both.  It respects the

22    negotiated endpoint of February, but at the same time,

23    provides relief to complete this discovery in what is likely a

24    more reasonable matter.

25         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

1          JUDGE VANASKIE:  Yes, Mr. Goldberg.

2          MR. GOLDBERG:  Yes.  If Your Honor still would

3    entertain more on this.

4          JUDGE VANASKIE:  Yes, I want to hear from you on

5    this.  Go ahead.

6          MR. GOLDBERG:  This is, you know, this is really

7    plaintiffs taking an opportunity to reset a schedule and to,

8    you know, relitigate this issue or renegotiate this issue.

9          And when we discussed this with plaintiffs yesterday,

10   this was not something that was brought up by plaintiffs

11   during the call yesterday and it was certainly something that

12   we did not envision plaintiffs would put into their brief

13   today, but it is also recharacterizing the history of the

14   negotiations in a way that does not square with what happened

15   and the schedule that the parties agreed on and proposed to

16   Judge Kugler reflects the very deliberate structuring of two

17   phases of discovery, each approximately about four months,

18   followed by the completion of the general causation *Daubert*

19   issues, and hopefully, a ruling on those in late 2021, and

20   then the completion of the class certification *Daubert*

21   briefing in early 2022, finishing in March of 2022 and a

22   potential ruling on class certification after that.

23          But it was -- it was always discussed that there

24   would be this structuring, because Judge Kugler was explicit

25   that there would be no class certification if general

1    causation had not been established.

2         What plaintiffs' schedule does is really ignore not

3    just, not just the decisions about class certification -- the

4    agreements made about the structure of the schedule as to

5    class certification and general causation, the plaintiffs are

6    also proposing compressing the two phases of discovery that

7    need to follow in lockstep because we are still dealing with

8    the third-party production issues, we're still dealing with a

9    very large number of defendant depositions that are going to

10   be of witnesses scattered around the globe, doing these things

11   by Zoom on different time zones and really trying to compress

12   all of that.

13        Because you'll notice on their proposed schedule,

14   they are leaving the deadline for the second phase of

15   discovery to be unchanged, so they're really proposing pushing

16   the first phase of discovery into the second phase and

17   compressing everything as it relates to discovery, and then

18   compressing general causation and class certification, and it

19   is -- it is entirely inconsistent with the agreements the

20   parties reached after very careful negotiation, and proposed

21   to Judge Kugler on January 5th.

22        And at the end, plaintiffs have not demonstrated why

23   they would be prejudiced, and it really -- it really changed,

24   unlikely that there could be any prejudice by a 60-day

25   deadline or a 90-day deadline for all of these internal dates.

 1          JUDGE VANASKIE:  All right.  Thank you very much.

 2          Anything else on this from the plaintiffs' side?

 3          MR HONIK:  Your Honor, at the risk of saying too much

 4    on this subject, I think.

 5          JUDGE VANASKIE:  Mr. Honik?

 6          MR HONIK:  Yes, Your Honor, thank you.  I'll be

 7    brief.  The very idea that Judge Kugler has somehow ruled that

 8    general causation must proceed the class certification, it is

 9    fallacious, and here's why.  We don't have to prove it and

10    Your Honor knows this better than most.  At the Rule 23 stage,

11    we don't have to prove on the merits causation in the strict

12    sense that we do in, say, bodily injury cases.  What we have

13    to prove is that it's susceptible to common proofs, and so

14    this idea that I've now heard a half dozen times from

15    Mr. Goldberg, that it has to so strictly precede it, I just

16    think is incorrect.  It's not what Judge Kugler has ruled,

17    it's an interpretation of, frankly, Judge Kugler's comments

18    about a year's insistence by the defendants that they have BI,

19    bellwether, and causation, and it's a compromise that the

20    Court struck.

21          In other words, the Court allowed for this separate

22    track, but it didn't link it in the way that Mr. Goldberg is

23    saying.

24          And so the only point I'm trying to make, it's less a

25    function or a matter of plaintiffs' prejudice, but of honoring

1    what Judge Kugler has insisted is the way he wants to run this

2    case, and that is, to entertain class certification of the

3    economic claims first, and to do so at or by the end of this

4    year.

5            That was the basis for the negotiation, and what we

6    sent in in the way of a proposed schedule I think adequately

7    reflects and respects what Judge Kugler expected of us, while

8    at the same time, providing some relief as to what is really a

9    discrete discovery issue.

10           Now, with that, I'll stop and thank you.

11           JUDGE VANASKIE:  All right.  Thank you very much.

12           Couple more questions.  I'm trying to understand, is

13   each side in this matter is saying, it has to be our way, or

14   just keep the schedule in place as it exists today?

15           Are you saying that, Mr. Slater?

16           MR. SLATER:  No, Your Honor.  I think what we're

17   saying is, we've made our best argument.  We've explained to

18   the Court the parameters we think would be necessary to make

19   sure we don't run into more problems, but the issue has been

20   joined and it's for Your Honor to resolve the question and

21   we'll obviously abide by whatever you rule.

22           JUDGE VANASKIE:  All right.  And I was relieved to

23   hear, Mr. Goldberg, that you're not proposing a pause in

24   depositions, for example, that depositions can still go

25   forward, because to me, that's very important that progress

 1   continue to be made in that area, and not pause everything

 2   until all production issues have been resolved.  And so I

 3   would, under any circumstance, expect that there are

 4   depositions that can move forward now and should move forward

 5   now, even if there are some outstanding document production

 6   issues.  And bearing in mind that if a party wants to

 7   re-depose a witness, they carry a pretty heavy burden of

 8   showing the need for that.

 9        But let me go back to the question I had,

10   Mr. Goldberg, and that is, are you saying that unless every

11   deadline is moved back either 60 or 90 days, you're

12   withdrawing your request and you'll stick to the original

13   schedule?

14        MR. GOLDBERG:  Your Honor, I think that one of the

15   challenges here is this schedule affects far more than just

16   the manufacturer defendants, and so I cannot answer that

17   question without understanding what the different dates are

18   and how that would affect the other supply chain defendants,

19   but --

20        JUDGE VANASKIE:  But you are supporting a request --

21   excuse me, I'm sorry to interrupt.  I thought you were

22   finished.

23        But you are supporting a request that all the

24   deadlines be moved back either 60 or 90 days.

25        MR. GOLDBERG:  Correct, and we would certainly

 1  compromise from our 90 to 60, and then have it be all dates,

 2  but we couldn't agree to an internal restructuring, because it

 3  affects all of the supply chain --

 4          JUDGE VANASKIE:  Okay.

 5          MR. GOLDBERG:  -- and their different obligations.

 6          JUDGE VANASKIE:  All right.  Now, Mr. Slater, there

 7  were a couple of additional points in the letter that you sent

 8  to me earlier today.  You were requesting the following

 9  parameters be established:

10          First, depositions that are imminent, that is

11  scheduled in February, can be rescheduled on a

12  witness-by-witness basis, but the parties should endeavor not

13  to change the dates of all February depositions, especially

14  those scheduled at the end of the month.

15          Now, that seems reasonable to me.

16          What's your view on that, Mr. Goldberg?

17          MR. GOLDBERG:  I think our view is -- what we don't

18  want to be doing is having depositions in February with the

19  specter that these witnesses will be called back

20  automatically.

21          JUDGE VANASKIE:  Right.  Understood.

22          MR. GOLDBERG:  And that if plaintiffs want to go

23  forward with a deposition in February, that they do so with

24  the understanding that, as Your Honor put it, having a

25  re-deposition is a very high burden, and not automatic, and

 1  that -- that's where we would come out on the first issue.

 2          JUDGE VANASKIE:   All right.  Mr. Slater, is your

 3  understanding different than that?

 4          MR. SLATER:  Yeah, I mean, we're not going to play a

 5  game of three-card monte with the defense, we're not going to

 6  take a deposition at our peril.  I think that that -- you

 7  know, that's very problematic and I think it's not reasonable

 8  to ask.  I think that -- that's why we said a

 9  witness-by-witness basis.  If the defense says, look, this

10  witness, we've completed the production, then we can move

11  forward.  If the defense says, look, we need to get more

12  documents to you, then we wouldn't.

13          I mean, they know what they have and don't have.  So

14  it's for them to say.  I mean, we just want to be able to --

15          JUDGE VANASKIE:   Sure.

16          MR. SLATER:  -- take these depositions on the cusp

17  and we're not going to --

18          JUDGE VANASKIE:  That's what I want to do.

19          MR. SLATER:  Yeah, we're not going to roll the dice

20  though and then find out which cup the ball is under at the

21  end of the day to see if it turns out --

22          JUDGE VANASKIE:  Right.

23          MR. SLATER:  -- oh, well, you know, you waived your

24  right even though we served, you know, ten really important

25  documents a month later.  I mean, it's -- it has to be won by

1    the same rule that applies on whether we need to re-depose.

2    Again, we don't want to, but if something gets produced

3    afterwards, you'd have to, you know, entertain it.

4            So they know what's been produced and not, so they

5    should be able to say, you know, this witness should be able

6    to be a go, and if not, we have to, you know, start

7    rescheduling in a reasonable way right away, which is one of

8    the other points we made in this letter.

9            JUDGE VANASKIE:  And that point is, again, what?

10           MR. SLATER:  That the balance of the depositions

11    should commence no later than the beginning of March and be

12    spread evenly.

13           JUDGE VANASKIE:  Right.

14           MR. SLATER:  And I think -- and we actually put in

15    that we should get the new schedule done within two weeks.

16           JUDGE VANASKIE:  Right.

17           MR. SLATER:  That's Point 3, so that we have -- the

18    parties are forced to nail down what the dates are now and get

19    that all on the calender, just so this issue doesn't linger.

20           JUDGE VANASKIE:   Sure, sure, understood.

21           MR. SLATER:  It will save you some headaches, I'm

22    sure.

23           JUDGE VANASKIE:  Well, absolutely, and that's what

24    I'm looking to do, save me some headaches.

25            I'm looking, you know, to me, everything sounds

 1    pretty reasonable.  And nobody is going to agree, I guess I'm

 2    going to have to just propose what I think is reasonable.

 3            Again, redeposition will not be lightly undertaken,

 4    but there certainly can be circumstances that may warrant it.

 5    But I'm not looking for this to be an open invitation for

 6    seeking redeposition of witnesses, but you're not -- nobody is

 7    foreclosed on either side, if the circumstances warrant having

 8    another -- having that person sit again for a deposition.  So

 9    I just want to try to be clear on that.

10            Item No. 4 in your list of parameters is meeting --

11    honoring their meet-and-confer obligations with regard to the

12    30(b)(6) deps.  You already have that obligation.

13            Now, what are you seeking by this?

14            MR. SLATER:  Well, we thought we did, and we had an

15    issue earlier this week with Hetero where we contacted Hetero

16    and sent them at the end of last week and then early Monday,

17    some of these standard operating procedures for their quality

18    control and CGMP application, and said, look, we're not

19    finding a lot of things we should be finding, are we on the

20    right track with what we have here?  What else should we be --

21    you know, what else was in effect, because the alternative is,

22    we sit down with your witness and say, list everything for us,

23    and then I just have associates and others in the firms just

24    pulling documents off the batches and then we find out the

25    witness says, well, you know, there's a quality manual.

1    We couldn't find one predating a certain date, and

2    they say, well, that should be there, and then we say, all

3    right, well, it wasn't there.  And now you're in a situation

4    where we say, well, we're going to have to redepose this

5    witness when we get that important manual.

6    So what we're trying to avoid -- and Hetero's view

7    was, we're not here to help you and tell you how to take a

8    deposition.  But if you have a specific question, maybe we'll

9    answer it.  We got no answers to any of our questions and the

10   deposition was supposed to start tomorrow, I'm taking it on

11   that part of the deposition, you know, we're doing the best we

12   can, but we are very, very sure that there's a bunch of SOPs

13   that we don't have, either different iterations, what was in

14   effect at different time periods.  We just -- I've got, you

15   know, five people scouring the production for days and there's

16   certain things we're just not finding.  We even sent an e-mail

17   with a list of documents; we got no response.  They say, we're

18   not responding to your request for documents, and all it was

19   was a request for, tell us, did you produce these, they're

20   mentioned in your other documents, we need them, and there was

21   no cooperation.

22   So what we're asking for now is, for the order to say

23   that the parties must meet and confer and do what's necessary

24   to make sure that the key documents -- I mean, these are

25   objective documents, this isn't like subjective good

 1    lawyering.  This is just having the rule book basically so

 2    both sides know which rule book was in effect at a certain

 3    period of time, so we're dealing with the same level playing

 4    field and not going into a deposition and finding out that

 5    something wasn't produced or was named something differently

 6    and then having the risk of having to depose the witness

 7    again.

 8         So we're asking for Your Honor to order that so that

 9    all the defendants will have to actually in good faith meet

10    and confer well in advance of the depositions and make sure we

11    have these key control and systemic documents.

12         I don't see why anyone would have a problem with it

13    because the uncertainly creates a risk for the defense,

14    frankly, for redeposition if the documents weren't produced.

15         JUDGE VANASKIE:  Exactly, exactly.  Does anybody want

16    to be heard on this point for the defendants?

17         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

18    I'll chime in and then I certainly will invite my colleagues

19    to weigh in as well.

20         I think Your Honor is right that defendants have a

21    meet-and-confer obligation.  I think the challenge is really

22    trying to define the parameters of what happens in a meet and

23    confer in the abstract, and each of the defendants has

24    different document productions, different policies, different

25    SOPs, different sales information.  This is not a

1   1-size-fits-all case.

2          Each of the defendants has produced millions of pages

3   of documents to plaintiffs and not all of the defense counsel

4   are prepared on a given meet and confer to identify which

5   document was -- was an operative document six years ago, eight

6   years ago.  Remember, Your Honor, the relevant period --

7          JUDGE VANASKIE:  Right.

8          MR. GOLDBERG:  -- goes back to 2007 or '8 for some of

9   the defendants and all the way back to 2012 for others.  And

10  certainly, the defendants, I think, are open to meeting and

11  conferring and talking about the 30(b)(6) topics, but one of

12  the things that's happened in the past, is that plaintiffs are

13  using these kinds of opportunities to depose counsel and to

14  have counsel testify about what a document is, whether a

15  document was the operative document, whether the document

16  governed a certain area of the business, and that's not really

17  our role.  We certainly would like to enhance the efficiency

18  of depositions so that plaintiffs are asking about --

19  potentially about the right documents, but it's very hard for

20  counsel to be answering questions about the company's

21  business.  That's what the depositions are for.

22          I agree with plaintiffs, you know, it is a challenge

23  when you've collected and produced millions of pages, it is a

24  challenge to identify the key documents.  That's -- the

25  challenge goes for us, too.  We're dealing with the same

1    production set as well.

2          That's part of the litigation process, and you get a

3    lot of documents and you try your best.  We're certainly open

4    to discussing -- we would -- I would certainly suggest to Your

5    Honor that an order that would somehow impose on counsel a

6    burden to answer questions about documents that the counsel

7    have no firsthand knowledge about, would not be -- it would be

8    an order that would be very hard for counsel to adhere to, and

9    it would be potentially exposing counsel and their clients to

10   arguments later down the line that -- that they didn't

11   participate in a 30(b)(6) in good faith, or that they failed

12   to say something in a 30(b)(6) at a meet and confer that

13   warranted a new deposition.

14         It just seems to be very hard to identify the right

15   parameters for what a meet and confer or Rule 30(b)(6) topics

16   should be.

17         MR. SLATER:  Your Honor, it's Adam Slater.

18         JUDGE VANASKIE:  Sure, Mr. Slater.

19         MR. SLATER:  What you just heard and experienced, the

20   bob and weave, is why we need an order.  For counsel to say

21   this is some kind of a difficult process.  They have an

22   obligation to prepare their 30(b)(6) witness to testify on

23   this subject matter, so I'm not asking counsel to go and be a

24   witness, we're asking counsel who is going to confer with the

25   30(b)(6) corporate representative, which is a significant

1  designation.  That person, presumably, will be familiar with

2  the document and be able to say these are the ones that

3  matter.

4         So what you just heard is why we need an order,

5  otherwise, the meet and confers turn into a bob and a weave

6  and we never get anywhere.  That was Exhibit A for why we need

7  Your Honor to order this process.

8         JUDGE VANASKIE:  And Item No. 5.  Mr. Slater, you

9  want a cast of characters list of the name, position,

10 department, and e-mail addresses of each person named in the

11 privilege log, and all privilege logs are to be revised and

12 re-served to the extent necessary to provide the required

13 substantive descriptions of the documents.

14        Now, that's a pretty substantial undertaking, at

15 least with respect to redoing the privilege logs.

16        MR. SLATER:  Yeah, Judge.

17        JUDGE VANASKIE:  That presumes that they are

18 inadequate.  How do I know that?

19        MR. SLATER:  Well, this is how -- I think it

20 shouldn't be substantial if they comply with the rules that

21 we're all familiar with, then they're compliant, and they'll

22 say, okay, we stand by it.  If it's not compliant, then we'll

23 go to Your Honor, and we certainly can submit some examples,

24 but if this is a self-executing order, they know -- the

25 defense knows what a compliant privilege log is.

1       It's not a burden, frankly, that's unreasonable at

2  all, because they have an obligation to do it.  If they

3  haven't done it, they need to do it, so anybody on the defense

4  side who says this is unreasonable, it's only unreasonable if

5  they have to actually do it from their perspective, but that

6  means, it's reasonable because it's necessary.

7       So I wouldn't accept that that's a burden at all, and

8  what this will allow us to do is actually to start to talk to

9  the defendants about the privilege designation and to be able

10  to know who -- they created the log, nobody forced them to do

11  it.  Nobody forced them to choose those documents, but they

12  have an obligation to let us know who the players are on each

13  document and to understand the substance of the document so we

14  can have a substantive conversation.

15       If one of the defendants thinks that they have a

16  compliant privilege log, they can send us an e-mail tonight or

17  tomorrow and say, look, our privilege log complies.  We can

18  look at it.  If we agree, we say great.  If we don't agree,

19  then we'll submit it to Your Honor for the next conference and

20  say this is what we don't think is adequate.  I mean, that's

21  an easy one to take care of.

22       JUDGE VANASKIE:  Yeah.

23       Who wants to address this on behalf of the defense?

24       MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

25  Clem -- if Mr. Trischler is on the line, you know, I think

1    this is an issue that he has -- that Mylan has been addressing

2    with plaintiffs, so I'll let him speak first, but I'll be

3    happy to jump in after.

4            MR. STOY:  Good afternoon, Your Honor, this is Frank

5    Stoy on behalf of Mylan.  Mr. Trischler had to unfortunately

6    jump off of this call and return to the deposition that he was

7    conducting in another matter.

8            I can speak briefly to this at least with respect to

9    Mylan.  We've been meeting and conferring with the plaintiffs

10   about some issues that they have raised with us with respect

11   to our privilege log.  We have agreed to provide some of the

12   cast-of-character-type information that Mr. Slater has

13   referenced here in the form of a legend to assist plaintiffs

14   in analyzing the documents that we have put on our log.

15           Beyond that, it -- at least at this point, we're

16   analyzing some additional specific documents, about 400, that

17   plaintiffs have identified to us that they think there may be

18   privileged issues with, we are going to reproduce documents I

19   think by the end of this week, to the extent that we're

20   withdrawing privilege designations from those, and then we can

21   continue the meet and confer with plaintiffs on those -- on

22   additional documents to the extent necessary, which I believe

23   is what's contemplated by the ESI protocol that is in place in

24   this case.

25           So it's been our view, I don't think that the type of

1    broad relief that Mr. Slater appears to be requesting today is

2    necessary.  I think we're fulfilling our obligations under the

3    ESI protocol right now, and, you know, we don't view any

4    reason for any additional order on this subject at this point.

5         MR. DAVIS:  Your Honor, this is John Davis.  I've

6    been involved in the discussions with Mylan.  Can I respond?

7         JUDGE VANASKIE:  Yes, absolutely, Mr. Davis.

8         MR. DAVIS:  Sure.  As I mentioned, if you recall the

9    last time we spoke about this, I said that I had issues with

10   Mylan's privilege logs that were both systemic and specific,

11   and some of those 400-plus documents, including a number that

12   I've identified for Frank that relate to a deponent that's

13   supposed to be deposed on Friday, we've provided those, but

14   there are systemic issues with Mylan's log, as Adam said, the

15   repeat copy/pasting of the same descriptive entries over and

16   over again I think is unacceptable.

17        I'm moving forward -- you know, my intent was never

18   to not move forward on that, but I'm still allowed to present

19   individual documents, especially with depositions coming up,

20   to try and get those in advance of the deposition.

21        So I don't think -- and maybe you didn't mean this,

22   Frank, but in no way am I waiving any of those systemic issues

23   that I have with Mylan's log as a whole.

24        MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

25        JUDGE VANASKIE:  Yes, Mr. Goldberg.

 1          MR. GOLDBERG:  I will first say that issues have not

 2     been raised with respect to other manufacturer defendants'

 3     privilege logs and that's why I had turned this to Mylan.

 4          We don't think the relief plaintiff is requesting in

 5     this letter is appropriate as to the other manufacturer

 6     defendants.  Issues as to their privilege logs have now been

 7     raised and are not ripe, if there are any, because they have

 8     not been raised.

 9          JUDGE VANASKIE:  Yes.  On this issue of privilege

10     logs, it needs to be presented in an appropriate fashion.

11     It's being presented to me, from my perspective, in an

12     abstract manner.  I'm being told that information has not been

13     provided that is essential for assessing whether a document

14     should be protected by whatever privilege is being claimed,

15     and that may very well be the case, but I really can't decide

16     this in a vacuum.

17          I can't order somebody to provide, for example, a

18     list of characters without understanding whether the log

19     itself would be sufficient to identify the person in their

20     role.  I'm being told it's not there, and if that's the case,

21     then I respectfully submit that the log would be deficient,

22     but just to ask somebody to do something is not the

23     appropriate way for this issue to be resolved.

24          What I would expect is that you would try to resolve

25     it between yourselves, who ever -- whosever privilege log is

1   at issue, and the plaintiffs, and if you can't, then you tee

2   it up for a resolution by me, recognizing that probably what

3   you'd have to do is let me take a look at the privilege log.

4   I don't know what it looks like right now.

5           Did you want to say something, Mr. Slater?

6           MR. SLATER:  No.  I appreciate what you said, Your

7   Honor.  We just wanted to make sure we got the issue into this

8   letter because we realized this was an inflection point.

9           We will endeavor to get you excerpts from each of the

10  privilege logs that we believe have issues, and we'll tee this

11  up for the next conference so that you'll have the

12  documentation.

13          I don't disagree with you, so -- we just want to make

14  sure that we kept this in the game while we were dealing with

15  all of these different issues together.  Because it obviously

16  benefits the defense again, if they have a privilege

17  designation that ends up being stripped away after a witness's

18  deposition or a 30(b)(6) witness deposition where that

19  document would have been relevant, and it's a significant

20  document, that creates a need to question a witness about it.

21  So we're trying to get this done up front.

22          JUDGE VANASKIE:  Okay.  Appreciate that.

23          MR. SLATER:  We'll get you the record you asked

24  for --

25          JUDGE VANASKIE:  All right.  Thank you.

1          Does anyone else want to be heard on the matters that
2     we've discussed thus far today?
3          All right.  I will be issuing an order.
4          Number 1, I'm -- as I said before, I was happy to
5     hear Mr. Goldberg say that the defense is not seeking a 90-day
6     pause of depositions and that discovery will continue,
7     including depositions.  I expect that I will be issuing an
8     order that extends by 60 days the current deadline for
9     depositions of witnesses.  The order will be more detailed.  I
10    want to study the question of the back end of the schedule and
11    satisfy myself of the importance of keeping the back end of
12    the schedule in place as originally was set forth in revised
13    CMO 22, and I expect that you'll be able to, in the next two
14    weeks, continue your discussions with respect to rescheduling
15    depositions of individual witnesses and reaching agreement
16    about what depositions can proceed at the present time and
17    easing that schedule of depositions in Hong Kong so you're not
18    double-tracking and triple-tracking depositions.
19         I think you'll now have the ability to do that.
20         I want to make it clear that this isn't an invitation
21    to seek another extension of the deadlines.  This is an
22    opportunity to allow you to continue to proceed in an orderly
23    fashion here.  I understand the difficulties with a case of
24    this complexity involving this number of parties, the enormous
25    amount of document discovery that has occurred and

 1   understanding that it's difficult to have it all occur and

 2   then be ready for depositions.

 3        I think now this gives you the necessary flexibility

 4   to move forward in an orderly fashion without it being as

 5   frenetic as it was going to be, but it's got to get done, the

 6   discovery has to be completed within this -- within this

 7   extended period.  As I said, I want to go back and look at CMO

 8   -- revised CMO 22, the back-end deadlines to see if and how

 9   they move.

10        Is there anything else?

11        MS. LOCKARD:  Your Honor, if I may be heard.  It's

12   Victoria Lockard from Greenberg Traurig on behalf of Teva.

13        JUDGE VANASKIE:  Absolutely.

14        MS. LOCKARD:  I haven't jumped in because everything

15   has been, you know, adequately conveyed.  But I did want to

16   make sure that Your Honor is clear when it comes to this issue

17   about the restructuring of the schedule, and not -- not -- I

18   think the back end was discussed, but Mr. Goldberg also

19   mentioned that this will severely compress what is the second

20   phase of fact discovery.

21        And I wanted to make clear that what is understood to

22   happen during that second phase includes the depositions of a

23   number of personal injury bellwether plaintiffs.  It's going

24   to be 18 plaintiffs, all of the treating physicians for 28

25   bellwether plaintiffs, and you can assume there will be three,

1    four, five for each of those, plus the depositions of all the

2    third-party consultants, vendors, that all of the defendants

3    hired to address this issue, plus the depositions of any new

4    putative economic loss class reps, plus the depositions of any

5    wholesaler, retailer, and pharmacy defendant.

6         That is an incredible amount of discovery and

7    depositions to have to take place.  Previously, we had four

8    months.  If we follow the revised, chopped-up reordered

9    schedule, that takes the second phase of fact discovery from

10   four months to two months to get all of that completed.

11        So I just didn't want that to be lost on the Court

12   that in addition to the dispute over the jockeying between

13   general causation and class action, there's also going to be a

14   very real problem when we get to this point in July and June

15   when we're trying to cover all the other fact depositions,

16   besides just the parties.

17        So thank you for allowing me to address that and make

18   that clear.

19        JUDGE VANASKIE:  I appreciate you taking the time now

20   to emphasize that point.

21        Did you want to be heard on that, Mr. Slater, the

22   deadline for Phase 2 discovery?

23        MR. SLATER:  You know, I'm not really sure that any

24   relief was being requested just now, so, I don't know if

25   there's really much to respond to other than --

1          JUDGE VANASKIE:  Well, I think, the point is that

2     under the defense proposal, that would have been pushed back

3     -- they were asking 90 days, but if I said 60, Phase 2

4     discovery deadline would come 60 days after its current date,

5     which I think is August 1st or August 2nd.

6          MR. SLATER:  Yeah, I don't think that we have a

7     problem with that in theory, but I will say that we will seek

8     to probably take some of the third-party witnesses'

9     depositions, if any, are going to be taken and maybe some that

10    we want to take before our expert reports are due.  But unless

11    someone else on the plaintiff side has some particular

12    granular concern, I don't think that I have an issue beyond

13    that.

14         JUDGE VANASKIE:  And did I understand the point

15    correctly, Ms. Lockard?

16         MS. LOCKARD:  Yes, you did get the point, Judge, and

17    the point is that under plaintiffs' proposal, that second

18    phase, that discovery deadline is unchanged, which in essence

19    shrinks it from four months into two months.  And so our

20    proposal is to -- if we're pushing everything off 60, you

21    know, this is another reason why we need to stick to the same

22    cadence and schedule formulation that we agreed to, because --

23    so that everything flows from the prior phase.

24         JUDGE VANASKIE:  All right.  Thank you very much for

25    that.

 1          Is there anything else on behalf of the defense?

 2          All right.  Anything else on behalf of the

 3   plaintiffs?

 4          All right.

 5          Expect an order that extends the discovery deadline

 6   -- the initial discovery deadline, that April 1st deadline, by

 7   60 days, and I'm going to look at all the other deadlines and

 8   see what makes sense.

 9          Anything else?

10          MR. SLATER:  No, Your Honor, for plaintiffs.  Thank

11   you for your consideration on such a quick pace and for

12   listening to all of these unbriefed arguments.

13          JUDGE VANASKIE:  Yeah, I want you all to have a

14   little bit of breathing room here by the order that's being

15   entered in this matter, not to say stop, but to recognize that

16   you can now continue your work, your extensive work,

17   incredible amount of work in hopefully a more orderly fashion,

18   and we can get through these issues that will undoubtedly crop

19   up in an orderly fashion as well.

20          All right.  Thank you all very much.

21          RESPONSE:  Thank you, Your Honor.

22          (2:20 p.m.)

23          - - - - - - - - - - - - - - - -

24          I certify that the foregoing is a correct transcript

25   from the record of proceedings in the above-entitled matter.

1

2    _/S/ Karen Friedlander, CRR, RMR_
     _Court Reporter/Transcriber_____
3

4    _February 3, 2021_
     _Date_
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'21** [1] - 24:17
**'22** [2] - 24:18, 26:18
**'23** [1] - 24:18

**/**

**/S** [1] - 52:2

**0**

**07068** [1] - 1:13

**1**

**1** [2] - 15:12, 47:4
**1-size-fits-all** [1] - 39:1
**103** [1] - 1:12
**15219** [1] - 2:11
**15th** [1] - 20:1
**17th** [1] - 2:3
**18** [1] - 48:24
**1835** [1] - 1:15
**19** [1] - 5:25
**19103** [2] - 1:16, 2:3
**1:00** [1] - 3:2
**1:05** [1] - 1:8
**1:19-md-02875-RBK-KW** [1] - 1:5
**1st** [4] - 19:24, 20:1, 50:5, 51:6

**2**

**2** [2] - 49:22, 50:3
**2007** [1] - 39:8
**2012** [1] - 39:9
**2019** [1] - 17:16
**2020** [2] - 17:17, 21:16
**2021** [9] - 1:7, 3:1, 18:4, 18:9, 19:24, 20:1, 23:24, 28:19, 52:4
**2022** [6] - 19:22, 20:1, 23:24, 26:16, 28:21
**22** [5] - 14:16, 21:5, 22:14, 47:13, 48:8
**220** [1] - 1:18
**23** [5] - 17:22, 18:23, 26:3, 27:19, 30:10
**24th** [1] - 20:4
**2500** [1] - 2:6
**2705** [1] - 1:18
**28** [1] - 48:24
**2900** [1] - 1:15
**2:20** [1] - 51:22
**2nd** [1] - 50:5

**3**

**3** [4] - 1:7, 3:1, 35:17, 52:4
**30** [4] - 2:3, 6:1, 9:10, 9:11
**30(b)(6** [10] - 11:3, 11:8, 36:12, 39:11, 40:11, 40:12, 40:15, 40:22, 40:25, 46:18
**30305** [1] - 2:6
**31** [1] - 15:13
**31st** [2] - 15:11, 22:16
**3333** [1] - 2:6
**38th** [1] - 2:10
**3rd** [2] - 15:5, 22:17

**4**

**4** [1] - 36:10
**400** [1] - 43:16
**400-plus** [1] - 44:11
**45** [1] - 20:8

**5**

**5** [1] - 41:8
**50-plus** [1] - 6:5
**5th** [2] - 14:2, 29:21

**6**

**60** [19] - 9:13, 13:2, 14:9, 20:8, 20:17, 21:4, 21:20, 23:22, 24:4, 26:6, 27:17, 32:11, 32:24, 33:1, 47:8, 50:3, 50:4, 50:20, 51:7
**60-day** [3] - 14:12, 15:13, 29:24

**7**

**756-0160** [1] - 1:23
**78746** [1] - 1:19

**8**

**8** [1] - 39:8
**856** [1] - 1:23

**9**

**90** [14] - 5:20, 7:3, 7:5, 7:11, 7:23, 8:5, 9:11, 20:17, 21:20, 23:22, 32:11, 32:24, 33:1, 50:3
**90-day** [5] - 7:8, 14:9, 24:4, 29:25, 47:5

**A**

**abide** [1] - 31:21
**ability** [1] - 47:19
**able** [9] - 4:14, 22:3, 24:7, 34:14, 35:5, 41:2, 42:9, 47:13
**above-entitled** [1] - 51:25
**absolutely** [4] - 19:5, 35:23, 44:7, 48:13
**abstract** [2] - 38:23, 45:12
**accept** [2] - 15:20, 42:7
**accommodate** [1] - 27:16
**accomplished** [2] - 7:4, 18:3
**accurate** [1] - 14:19
**achieved** [1] - 6:5
**across-the-board** [1] - 8:16
**Actavis** [2] - 2:7
**action** [2] - 19:17, 49:13
**ACTION** [1] - 1:4
**Adam** [4] - 9:6, 21:6, 40:17, 44:14
**ADAM** [1] - 1:12
**add** [4] - 4:9, 6:22, 6:25, 17:11
**added** [1] - 13:10
**addition** [1] - 49:12
**additional** [6] - 8:2, 8:19, 33:7, 43:16, 43:22, 44:4
**address** [9] - 3:5, 3:9, 10:20, 11:22, 17:25, 42:23, 49:3, 49:17
**addressed** [3] - 5:21, 5:23, 22:1
**addresses** [1] - 41:10
**addressing** [1] - 43:1
**adequate** [2] - 8:25, 42:20
**adequately** [2] - 31:6, 48:15
**adhere** [1] - 40:8
**adjustments** [1] - 25:21
**admitted** [1] - 17:9
**advance** [2] - 38:10, 44:20
**advocating** [1] - 18:1
**affect** [4] - 8:10, 8:12, 19:14, 32:18
**affected** [1] - 19:18
**affects** [2] - 32:15, 33:3

**afternoon** [1] - 43:4
**afterwards** [1] - 35:3
**ago** [2] - 39:5, 39:6
**agree** [13] - 8:13, 8:14, 13:15, 13:17, 14:22, 14:23, 16:10, 16:22, 33:2, 36:1, 39:22, 42:18
**agreeable** [1] - 14:5
**agreed** [7] - 18:13, 20:11, 25:1, 28:15, 43:11, 50:22
**agreement** [5] - 12:2, 24:20, 24:23, 26:8, 47:15
**agreements** [2] - 29:4, 29:19
**ahead** [3] - 4:3, 17:15, 28:5
**aided** [1] - 1:25
**airing** [1] - 9:17
**ALFANO** [1] - 2:9
**ALL** [1] - 3:1
**allow** [5] - 5:14, 5:21, 5:22, 42:8, 47:22
**allowed** [3] - 18:5, 30:21, 44:18
**allowing** [2] - 10:4, 49:17
**allows** [3] - 10:15, 10:16, 15:24
**almost** [1] - 26:2
**alter** [1] - 18:24
**alternative** [1] - 36:21
**amended** [1] - 19:17
**amount** [3] - 47:25, 49:6, 51:17
**amounts** [1] - 4:23
**analyzing** [2] - 43:14, 43:16
**AND** [1] - 1:5
**answer** [3] - 32:16, 37:9, 40:6
**answering** [1] - 39:20
**answers** [1] - 37:9
**anyway** [1] - 12:6
**application** [1] - 36:18
**applied** [1] - 11:5
**applies** [1] - 35:1
**appreciate** [4] - 9:25, 46:6, 46:22, 49:19
**appropriate** [4] - 14:8, 45:5, 45:10, 45:23
**approved** [1] - 20:18
**April** [3] - 18:12, 26:20, 51:6
**area** [3] - 10:25, 32:1, 39:16
**argued** [2] - 15:7, 25:9
**argument** [1] - 31:17

**arguments** [3] - 5:6, 40:10, 51:12
**assessing** [1] - 45:13
**assist** [1] - 43:13
**associated** [1] - 27:18
**associates** [1] - 36:23
**assume** [1] - 48:25
**Atlanta** [1] - 2:6
**attempts** [1] - 4:22
**attention** [1] - 25:14
**August** [6] - 15:11, 15:13, 18:15, 22:16, 50:5
**Austin** [1] - 1:19
**automatic** [1] - 33:25
**automatically** [1] - 33:20
**avoid** [5] - 6:17, 8:17, 8:25, 12:15, 37:6
**aware** [1] - 7:13

**B**

**back-end** [6] - 13:4, 21:20, 23:12, 23:16, 24:17, 48:8
**backed** [3] - 18:10, 26:14, 26:16
**backlog** [1] - 24:2
**balance** [1] - 35:10
**ball** [2] - 3:8, 34:20
**based** [2] - 13:19, 17:8
**basis** [7] - 3:4, 12:1, 12:9, 25:15, 31:5, 33:12, 34:9
**batches** [1] - 36:24
**bearing** [2] - 25:16, 32:6
**become** [2] - 7:20, 16:16
**Bee** [1] - 1:18
**began** [1] - 25:2
**beginning** [2] - 16:25, 35:11
**behalf** [6] - 9:3, 42:23, 43:5, 48:12, 51:1, 51:2
**behind** [2] - 6:15, 6:16
**bellwether** [5] - 27:4, 27:6, 30:19, 48:23, 48:25
**benefit** [2] - 19:1, 22:8
**benefits** [1] - 46:16
**Benicar** [1] - 11:24, 12:23
**best** [3] - 31:17, 37:11, 40:3
**better** [3] - 16:1, 18:1, 30:10
**between** [4] - 19:25,

27:14, 45:25, 49:12
**beyond** [3] - 11:18, 43:15, 50:12
**BI** [1] - 30:18
**bit** [2] - 15:25, 51:14
**blame** [2] - 4:16, 5:1
**blessed** [1] - 25:2
**blindly** [1] - 5:5
**board** [1] - 8:16
**bob** [2] - 40:20, 41:5
**bodily** [2] - 27:3, 30:12
**book** [2] - 38:1, 38:2
**BOSICK** [1] - 2:9
**bottom** [1] - 26:1
**breathing** [1] - 51:14
**brief** [7] - 16:6, 25:9, 25:19, 26:1, 26:3, 28:12, 30:7
**briefed** [4] - 25:3, 25:6, 25:9, 26:23
**briefing** [9] - 19:23, 19:24, 20:2, 24:21, 24:25, 26:8, 26:15, 28:21
**briefly** [1] - 43:8
**briefs** [2] - 23:1, 25:11
**bring** [1] - 6:9
**broad** [1] - 44:1
**brought** [2] - 25:14, 28:10
**built** [2] - 10:7, 22:10
**bunch** [1] - 37:12
**burden** [6] - 25:18, 32:7, 33:25, 40:6, 42:1, 42:7
**business** [2] - 39:16, 39:21
**BY** [6] - 1:12, 1:15, 1:18, 2:2, 2:5, 2:9

## C

**cadence** [1] - 50:22
**calendar** [6] - 8:15, 17:14, 18:3, 18:9, 18:17, 27:13
**calender** [1] - 35:19
**cannot** [3] - 13:17, 25:9, 32:16
**card** [1] - 34:5
**care** [3] - 5:24, 27:20, 42:21
**careful** [1] - 29:20
**carefully** [4] - 8:8, 14:1, 14:16, 19:11
**carry** [1] - 32:7
**case** [17] - 4:21, 7:21, 8:6, 12:1, 13:4, 16:2, 17:19, 18:5, 23:3,

23:22, 23:24, 31:2, 39:1, 43:24, 45:15, 45:20, 47:23
**cases** [3] - 5:13, 25:23, 30:12
**cast** [3] - 4:16, 41:9, 43:12
**cast-of-character-type** [1] - 43:12
**catches** [1] - 16:5
**category** [1] - 11:3
**causation** [37] - 13:20, 13:22, 13:23, 15:11, 17:25, 18:6, 19:22, 19:23, 20:3, 20:4, 20:5, 20:8, 20:10, 20:12, 20:14, 20:19, 20:20, 20:24, 22:2, 22:16, 23:13, 23:15, 25:8, 25:22, 26:2, 27:1, 27:11, 27:19, 28:18, 29:1, 29:5, 29:18, 30:8, 30:11, 30:19, 49:13
**causing** [1] - 7:14
**Centre** [1] - 2:10
**cert** [7] - 22:1, 22:19, 22:22, 22:24, 26:22, 27:7, 27:8
**certain** [7] - 4:18, 14:17, 14:18, 37:1, 37:16, 38:2, 39:16
**certainly** [14] - 6:21, 7:7, 8:23, 12:20, 24:5, 28:11, 32:25, 36:4, 38:18, 39:10, 39:17, 40:3, 40:4, 41:23
**certification** [37] - 10:3, 13:20, 13:22, 13:24, 15:5, 16:3, 17:22, 18:4, 18:18, 18:23, 19:20, 19:21, 20:2, 20:6, 20:9, 20:10, 20:15, 20:19, 20:20, 20:24, 21:12, 22:17, 23:6, 23:13, 23:15, 24:21, 25:3, 25:10, 26:15, 28:20, 28:22, 28:25, 29:3, 29:5, 29:18, 30:8, 31:2
**certify** [1] - 51:24
**cetera** [1] - 12:6
**CGMP** [1] - 36:18
**chain** [4] - 8:12, 19:13, 32:18, 33:3
**challenge** [4] - 38:21, 39:22, 39:24, 39:25
**challenged** [1] - 25:20

**challenges** [3] - 12:3, 12:9, 32:15
**challenging** [1] - 11:23
**chance** [3] - 3:13, 5:7, 6:13
**change** [8] - 15:8, 15:19, 16:2, 16:3, 16:4, 23:4, 23:16, 33:13
**changed** [3] - 14:24, 23:6, 29:23
**changes** [2] - 13:16, 19:14
**changing** [1] - 23:12
**character** [1] - 43:12
**characterization** [1] - 25:24
**characters** [2] - 41:9, 45:18
**chase** [1] - 9:9
**chicken** [1] - 16:20
**chime** [1] - 38:18
**choose** [1] - 42:11
**chopped** [1] - 49:8
**chopped-up** [1] - 49:8
**circumstance** [1] - 32:3
**circumstances** [2] - 36:4, 36:7
**civil** [1] - 23:25
**CIVIL** [1] - 1:4
**claim** [14] - 27:3
**claimed** [1] - 45:14
**claiming** [1] - 16:23
**claims** [2] - 17:20, 31:3
**class** [53] - 10:3, 13:20, 13:22, 13:24, 15:4, 16:3, 17:21, 17:22, 18:4, 18:18, 18:23, 19:16, 19:17, 19:19, 19:21, 20:2, 20:5, 20:9, 20:10, 20:15, 20:19, 20:20, 20:24, 21:12, 22:1, 22:17, 22:19, 22:22, 22:24, 23:6, 23:13, 23:15, 24:7, 24:21, 25:2, 25:9, 25:19, 25:25, 26:8, 26:15, 26:22, 27:7, 27:8, 28:20, 28:22, 28:25, 29:3, 29:5, 29:18, 30:8, 31:2, 49:4, 49:13
**clear** [10] - 5:4, 13:21, 17:18, 20:4, 27:8, 36:9, 47:20, 48:16, 48:21, 49:18

**CLEM** [1] - 2:9
**Clem** [5] - 4:3, 4:5, 6:24, 6:25, 42:25
**clients** [1] - 40:9
**CMO** [6] - 14:16, 21:5, 22:14, 47:13, 48:7, 48:8
**co** [1] - 12:24
**co-leads** [1] - 12:24
**codified** [1] - 11:16
**colleagues** [3] - 4:9, 13:9, 38:18
**collected** [1] - 39:23
**comfortable** [1] - 9:10
**coming** [1] - 44:19
**commence** [1] - 35:11
**Commencing** [1] - 1:8
**comment** [1] - 4:13
**comments** [3] - 4:10, 6:21, 30:17
**common** [1] - 30:13
**communications** [1] - 19:12
**company's** [1] - 39:20
**complaint** [1] - 19:17
**complete** [7] - 4:14, 5:14, 18:10, 18:11, 24:22, 26:9, 27:23
**completed** [7] - 18:14, 19:24, 20:2, 26:25, 34:10, 48:6, 49:10
**completely** [1] - 17:20
**completing** [1] - 27:14
**completion** [4] - 18:20, 26:15, 28:18, 28:20
**complexity** [1] - 47:24
**compliant** [5] - 9:20, 41:21, 41:22, 41:25, 42:16
**complied** [2] - 4:22, 17:1
**complies** [1] - 42:17
**comply** [1] - 41:20
**compress** [3] - 13:25, 29:11, 48:19
**compressed** [2] - 7:13, 20:13
**compressing** [5] - 19:9, 23:14, 29:6, 29:17, 29:18
**compromise** [2] - 30:19, 33:1
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concept** [1] - 25:1
**concern** [5] - 7:15, 9:15, 15:21, 16:1, 50:12

**concerned** [1] - 9:23
**concise** [1] - 9:8
**concluded** [1] - 5:9
**conclusion** [1] - 5:3
**conditions** [1] - 8:19
**conducting** [1] - 43:7
**confer** [12] - 7:6, 11:25, 36:11, 37:23, 38:10, 38:21, 38:23, 39:4, 40:12, 40:15, 40:24, 43:21
**CONFERENCE** [1] - 1:6
**conference** [4] - 3:5, 11:18, 42:19, 46:11
**conferring** [3] - 12:5, 39:11, 43:9
**confers** [1] - 41:5
**confessing** [1] - 20:9
**confirmation** [1] - 11:4
**consensus** [2] - 6:4, 6:5
**consideration** [2] - 6:10, 51:11
**considering** [1] - 6:11
**consistent** [1] - 24:19
**consult** [1] - 11:8
**consultants** [1] - 49:2
**contacted** [1] - 36:15
**contemplated** [1] - 43:23
**context** [2] - 17:12, 18:15
**continue** [8] - 10:17, 17:6, 32:1, 43:21, 47:6, 47:14, 47:22, 51:16
**continued** [2] - 12:24, 26:25
**CONTINUED** [1] - 2:1
**continues** [2] - 22:10, 27:6
**contradictory** [1] - 20:22
**control** [3] - 11:11, 36:18, 38:11
**conversation** [2] - 11:18, 42:14
**conveyed** [1] - 48:15
**convince** [1] - 27:2
**cooperation** [1] - 37:21
**cooperative** [2] - 6:7, 13:6
**copy/pasting** [1] - 44:15
**corporate** [1] - 40:25
**correct** [2] - 32:25, 51:24

**correctly** [1] - 50:15
**counsel** [13] - 7:25, 15:20, 39:3, 39:13, 39:14, 39:20, 40:5, 40:6, 40:8, 40:9, 40:20, 40:23, 40:24
**counterproposal** [1] - 6:13
**couple** [2] - 31:12, 33:7
**course** [1] - 8:21
**Court** [3] - 1:22, 4:19, 52:2
**COURT** [1] - 1:2
**court** [1] - 3:18
**Court's** [1] - 17:11
**Cove** [1] - 1:18
**cover** [1] - 49:15
**COVID** [3] - 5:11, 21:16, 24:2
**crafted** [1] - 14:1
**create** [2] - 16:23, 27:10
**created** [2] - 5:11, 42:10
**creates** [3] - 16:23, 38:13, 46:20
**criminal** [1] - 24:2
**critical** [1] - 11:21
**critically** [1] - 18:16
**criticism** [1] - 16:8
**crop** [1] - 51:18
**CRR** [1] - 52:2
**cup** [1] - 34:20
**current** [6] - 7:11, 8:8, 14:6, 14:13, 47:8, 50:4
**cusp** [1] - 34:16
**custodial** [1] - 12:19
**cut** [1] - 9:9
**cutoff** [1] - 26:21

**D**

**dare** [1] - 18:24
**date** [8] - 15:9, 15:11, 15:12, 21:20, 24:24, 26:17, 37:1, 50:4
**Date** [1] - 52:4
**dates** [31] - 5:11, 6:1, 7:10, 10:2, 13:18, 13:19, 14:2, 14:10, 14:12, 15:15, 15:20, 16:4, 16:9, 17:13, 18:8, 18:9, 19:8, 20:8, 20:9, 20:16, 23:12, 23:16, 23:20, 24:17, 24:25, 25:16, 29:25, 32:17, 33:1, 33:13, 35:18

**Daubert** [17] - 10:3, 15:16, 16:5, 18:18, 19:23, 20:1, 22:2, 22:15, 22:18, 22:19, 23:5, 25:8, 25:20, 26:2, 27:19, 28:18, 28:20
**Davis** [2] - 44:5, 44:7
**DAVIS** [4] - 1:17, 1:18, 44:5, 44:8
**days** [24] - 5:20, 7:3, 7:5, 7:11, 7:23, 8:5, 9:10, 9:13, 13:2, 20:8, 20:17, 21:4, 21:20, 23:22, 26:6, 27:17, 32:11, 32:24, 37:15, 47:8, 50:3, 50:4, 51:7
**deadline** [15] - 15:5, 22:15, 22:16, 22:18, 29:14, 29:25, 32:11, 47:8, 49:22, 50:4, 50:18, 51:5, 51:6
**deadlines** [32] - 7:23, 8:4, 8:5, 8:6, 8:8, 8:10, 8:14, 8:17, 9:14, 10:1, 13:4, 14:18, 14:24, 15:1, 15:16, 16:7, 16:17, 20:21, 21:4, 21:10, 21:21, 22:23, 23:3, 24:4, 26:13, 26:14, 27:15, 27:18, 32:24, 47:21, 48:8, 51:7
**deal** [1] - 51:7
**dealing** [6] - 24:10, 29:7, 29:8, 38:3, 39:25, 46:14
**December** [1] - 19:10
**decide** [4] - 20:12, 23:14, 25:7, 45:15
**decided** [5] - 20:14, 20:20, 22:2, 23:5, 23:6
**decides** [1] - 23:15
**decision** [1] - 25:12
**decisional** [3] - 17:19, 18:18, 25:12
**decisions** [2] - 22:4, 29:3
**Defendant** [2] - 2:4, 2:11
**defendant** [3] - 9:25, 29:9, 49:5
**defendants** [31] - 7:16, 8:11, 8:12, 9:3, 11:20, 13:15, 14:3, 14:5, 14:13, 17:23, 21:15, 24:5, 24:6, 25:14, 26:25, 27:16,

30:18, 32:16, 32:18, 38:9, 38:16, 38:20, 38:23, 39:2, 39:9, 39:10, 42:9, 42:15, 45:6, 49:2
**Defendants** [1] - 2:7
**defendants'** [2] - 27:10, 45:2
**defense** [21] - 4:11, 4:20, 5:10, 10:22, 11:6, 16:8, 16:18, 17:1, 21:1, 34:5, 34:9, 34:11, 38:13, 39:3, 41:25, 42:3, 42:23, 46:16, 47:5, 50:2, 51:1
**Defense** [2] - 2:4, 2:11
**deficiencies** [1] - 9:17
**deficient** [1] - 45:21
**define** [1] - 38:22
**delay** [1] - 22:10
**delays** [1] - 4:20
**deliberate** [1] - 28:16
**demonstrated** [1] - 29:22
**department** [1] - 41:10
**dependent** [1] - 15:6
**deponent** [1] - 44:12
**depose** [6] - 5:8, 15:23, 32:7, 35:1, 38:6, 39:13
**deposed** [4] - 12:19, 15:11, 24:6, 44:13
**deposition** [22] - 7:19, 8:1, 10:22, 11:5, 11:11, 11:13, 12:15, 12:21, 12:25, 33:23, 33:25, 34:6, 36:8, 37:8, 37:10, 37:11, 38:4, 40:13, 43:6, 44:20, 46:18
**depositions** [56] - 4:15, 5:5, 5:25, 7:3, 7:8, 7:15, 7:16, 8:11, 8:22, 9:1, 9:22, 10:17, 10:18, 11:2, 11:4, 11:13, 12:13, 12:14, 12:17, 13:1, 13:8, 15:4, 15:8, 15:18, 24:7, 26:4, 29:9, 31:24, 32:4, 33:10, 33:13, 33:18, 34:16, 35:10, 38:10, 39:18, 39:21, 44:19, 47:6, 47:7, 47:9, 47:15, 47:16, 47:17, 47:18, 48:2, 48:22, 49:1, 49:3, 49:4, 49:7, 49:15, 50:9
**deps** [1] - 36:12

**descriptions** [1] - 41:13
**descriptive** [1] - 44:15
**designation** [3] - 41:1, 42:9, 46:17
**designations** [2] - 11:23, 43:20
**desk** [1] - 25:11
**detailed** [1] - 47:9
**developed** [1] - 18:6
**developments** [2] - 4:8, 6:23
**devoted** [1] - 4:24
**dice** [1] - 34:19
**different** [13] - 10:25, 17:8, 29:11, 32:17, 33:5, 34:3, 37:13, 37:14, 38:24, 38:25, 46:15
**differently** [1] - 38:5
**difficult** [2] - 40:21, 48:1
**difficulties** [1] - 47:23
**direct** [1] - 25:16
**directly** [1] - 17:13
**disagree** [2] - 25:23, 46:13
**disconnection** [1] - 27:14
**discovery** [34] - 5:16, 5:21, 6:18, 7:9, 15:2, 18:10, 18:12, 18:14, 18:21, 19:14, 19:18, 25:15, 26:20, 26:24, 27:15, 27:17, 27:23, 28:17, 29:6, 29:15, 29:16, 29:17, 31:9, 47:6, 47:25, 48:6, 48:20, 49:6, 49:9, 49:22, 50:4, 50:18, 51:5, 51:6
**discrete** [1] - 31:9
**discussed** [5] - 14:4, 28:9, 28:23, 47:2, 48:18
**discussing** [1] - 40:4
**discussions** [2] - 44:6, 47:14
**dispute** [1] - 49:12
**disrupt** [1] - 9:14
**disrupted** [1] - 10:5
**disruption** [2] - 10:13, 27:18
**disruptive** [1] - 7:20
**DISTRICT** [2] - 1:2, 1:2
**docket** [1] - 24:2
**document** [22] - 5:7, 5:14, 5:21, 10:23, 17:2, 21:18, 21:22,

32:5, 38:24, 39:5, 39:14, 39:15, 41:2, 42:13, 45:13, 46:19, 46:20, 47:25
**documentation** [1] - 46:12
**documents** [37] - 4:23, 7:18, 7:19, 10:15, 10:17, 11:3, 12:13, 12:18, 13:7, 15:22, 17:5, 21:15, 24:9, 26:4, 34:12, 34:25, 36:24, 37:17, 37:18, 37:20, 37:24, 37:25, 38:11, 38:14, 39:3, 39:19, 39:24, 40:3, 40:6, 41:13, 42:11, 43:14, 43:16, 43:18, 43:22, 44:11, 44:19
**done** [12] - 11:10, 14:8, 15:2, 15:12, 15:14, 15:18, 22:4, 27:15, 35:15, 42:3, 46:21, 48:5
**double** [1] - 47:18
**double-tracking** [1] - 47:18
**down** [6] - 6:18, 8:2, 13:7, 35:18, 36:22, 40:10
**dozen** [1] - 30:14
**drafts** [1] - 11:1
**drill** [1] - 11:12
**DUANE** [1] - 2:2
**due** [5] - 14:22, 21:16, 21:22, 24:2, 50:10
**dump** [1] - 21:18
**during** [7] - 7:4, 7:6, 7:8, 9:22, 11:12, 28:11, 48:22

**E**

**e-mail** [3] - 37:16, 41:10, 42:16
**early** [5] - 19:22, 21:16, 23:24, 28:21, 36:16
**easing** [1] - 47:17
**easy** [2] - 26:5, 42:21
**economic** [4] - 17:20, 17:21, 31:3, 49:4
**edge** [2] - 17:19, 18:5
**effect** [3] - 36:21, 37:14, 38:2
**efficiency** [1] - 39:17
**effort** [1] - 4:24
**eight** [1] - 39:5
**Eisenhower** [1] - 1:12

**either** [7] - 20:16, 21:2, 23:18, 32:11, 32:24, 36:7, 37:13
**eliminate** [1] - 20:22
**emergent** [2] - 3:4, 25:15
**emphasize** [3] - 13:15, 18:19, 49:20
**emphatic** [1] - 24:18
**en** [1] - 17:5
**end** [27] - 13:4, 15:19, 16:5, 17:13, 18:3, 18:8, 18:17, 21:20, 22:10, 22:24, 23:4, 23:12, 23:16, 24:17, 24:24, 27:13, 29:22, 31:3, 33:14, 34:21, 36:16, 43:19, 47:10, 47:11, 48:8, 48:18
**endeavor** [2] - 33:12, 46:9
**endless** [1] - 6:17
**endpoint** [1] - 27:22
**ends** [1] - 46:17
**engaging** [1] - 5:1
**enhance** [1] - 39:17
**enlargening** [1] - 27:17
**enormous** [1] - 47:24
**ensure** [1] - 8:25
**ensuring** [1] - 26:24
**entered** [1] - 51:15
**entertain** [6] - 17:24, 18:4, 26:22, 28:3, 31:2, 35:3
**entirely** [1] - 29:19
**entitled** [1] - 51:25
**entries** [1] - 44:15
**enunciated** [1] - 10:14
**envision** [1] - 28:12
**ESI** [2] - 43:23, 44:3
**especially** [2] - 33:13, 44:19
**ESQUIRE** [7] - 1:12, 1:15, 1:18, 2:2, 2:5, 2:9, 2:10
**essence** [1] - 50:18
**essential** [1] - 45:13
**essentially** [3] - 6:1, 6:14, 13:5
**establish** [1] - 8:24
**established** [3] - 21:5, 29:1, 33:9
**et** [1] - 12:6
**evening** [2] - 3:4, 4:7
**evenly** [1] - 35:12
**events** [1] - 14:18
**eventually** [2] - 19:17, 25:2
**eviscerated** [1] -

20:13
**exactly** [2] - 38:15
**example** [7] - 10:22, 10:23, 11:6, 12:17, 12:18, 31:24, 45:17
**examples** [1] - 11:23
**excerpts** [1] - 46:9
**excuse** [4] - 3:16, 3:17, 24:17, 32:21
**executing** [1] - 41:24
**exercise** [1] - 11:7
**Exhibit** [1] - 41:6
**exist** [1] - 17:4
**exists** [1] - 31:14
**expect** [5] - 32:3, 45:24, 47:7, 47:13, 51:5
**expected** [1] - 31:7
**experienced** [1] - 40:19
**expert** [7] - 15:3, 15:6, 15:18, 22:22, 23:1, 50:10
**experts** [2] - 15:11, 22:2
**explained** [1] - 31:17
**explicit** [1] - 28:24
**exposing** [1] - 40:9
**extend** [1] - 16:17
**extended** [1] - 48:7
**extends** [2] - 47:8, 51:5
**extension** [13] - 7:23, 8:4, 8:17, 8:19, 8:20, 11:16, 13:2, 14:9, 14:12, 15:13, 20:21, 24:4, 47:21
**extensions** [1] - 21:16
**extensive** [1] - 51:16
**extent** [3] - 41:12, 43:19, 43:22
**extremely** [1] - 7:20

**F**

**face** [2] - 10:12, 11:20
**fact** [10] - 6:9, 7:6, 15:8, 18:12, 25:7, 26:24, 27:15, 48:20, 49:9, 49:15
**facts** [1] - 17:8
**failed** [1] - 40:11
**faith** [3] - 4:22, 38:9, 40:11
**fall** [1] - 19:21
**fallacious** [1] - 30:9
**falling** [1] - 17:3
**familiar** [2] - 41:1, 41:21
**far** [4] - 10:2, 21:22,

32:15, 47:2
**fashion** [6] - 5:9, 45:10, 47:23, 48:4, 51:17, 51:19
**February** [13] - 1:7, 3:1, 24:20, 25:4, 26:9, 26:16, 26:18, 27:22, 33:11, 33:13, 33:18, 33:23, 52:4
**few** [6] - 4:6, 4:8, 15:1, 15:15, 15:19, 17:11
**field** [1] - 38:4
**figured** [1] - 9:12
**file** [5] - 12:19, 15:5, 18:22, 22:15
**filed** [3] - 16:6, 19:20, 22:20
**filing** [2] - 22:21, 25:18
**filings** [2] - 10:3
**filled** [1] - 24:25
**finished** [1] - 32:22
**finishing** [1] - 28:21
**fire** [1] - 11:12
**firm** [1] - 24:20
**firms** [1] - 36:23
**first** [11] - 3:9, 3:11, 23:5, 27:3, 27:5, 29:16, 31:3, 33:10, 34:1, 43:2, 45:1
**firsthand** [1] - 40:7
**five** [2] - 37:15, 49:1
**flexibility** [4] - 7:12, 7:24, 8:25, 48:3
**Floor** [1] - 2:10
**flows** [1] - 50:23
**focus** [1] - 18:7
**focused** [1] - 14:18
**follow** [3] - 14:18, 29:7, 49:8
**followed** [1] - 28:18
**following** [2] - 9:15, 33:8
**FOR** [1] - 1:2
**forced** [3] - 35:18, 42:10, 42:11
**foreclosed** [1] - 36:7
**foregoing** [1] - 51:24
**form** [1] - 43:13
**formulation** [1] - 50:22
**forth** [2] - 7:7, 47:12
**forward** [9] - 14:5, 31:25, 32:4, 33:23, 34:11, 44:17, 44:18, 48:4
**foundation** [1] - 24:23
**foundational** [1] - 26:8
**four** [5] - 28:17, 49:1,

49:7, 49:10, 50:19
**Frank** [3] - 43:4, 44:12, 44:22
**FRANK** [1] - 2:10
**frankly** [7] - 6:2, 23:1, 25:22, 27:1, 30:17, 38:14, 42:1
**FREEMAN** [1] - 1:11
**frenetic** [1] - 48:5
**Friday** [1] - 44:13
**Friedlander** [3] - 1:22, 3:20, 52:2
**friedlanderreporter @gmail.com** [1] - 1:23
**front** [2] - 22:14, 46:21
**fulfilling** [1] - 44:2
**fully** [1] - 25:3
**function** [1] - 30:25

**G**

**game** [3] - 5:1, 34:5, 46:14
**general** [35] - 13:20, 13:22, 13:23, 15:10, 17:25, 18:6, 19:22, 19:23, 20:3, 20:4, 20:5, 20:8, 20:10, 20:12, 20:14, 20:18, 20:20, 20:24, 22:2, 22:16, 23:13, 23:14, 25:8, 25:22, 26:2, 27:1, 27:11, 27:19, 28:18, 28:25, 29:5, 29:18, 30:8, 49:13
**Georgia** [1] - 2:6
**given** [6] - 5:10, 5:11, 16:13, 23:23, 24:1, 39:4
**globe** [1] - 29:10
**GOLDBERG** [21] - 2:2, 4:2, 6:24, 13:14, 19:3, 19:7, 23:8, 23:11, 27:25, 28:2, 28:6, 32:14, 32:25, 33:5, 33:17, 33:22, 38:17, 39:8, 42:24, 44:24, 45:1
**Goldberg** [26] - 4:2, 6:24, 9:5, 13:12, 13:14, 14:15, 14:22, 16:22, 19:3, 19:5, 23:8, 24:15, 26:7, 27:25, 28:1, 30:15, 30:22, 31:23, 32:10, 33:16, 38:17, 42:24, 44:24, 44:25, 47:5, 48:18
**Goldberg's** [2] -

14:25, 25:24
**GOLOMB** [1] - 1:14
**GORDON** [1] - 2:9
**governed** [1] - 39:16
**granular** [1] - 50:12
**great** [2] - 12:2, 42:18
**GREENBERG** [1] - 2:5
**Greenberg** [1] - 48:12
**group** [1] - 4:11
**Group** [2] - 2:4, 2:11
**guess** [2] - 26:13, 36:1

**H**

**half** [2] - 27:2, 30:14
**hand** [1] - 13:8
**happy** [2] - 43:3, 47:4
**hard** [3] - 39:19, 40:8, 40:14
**hash** [1] - 13:12
**headaches** [2] - 35:21, 35:24
**hear** [3] - 28:4, 31:23, 47:5
**heard** [12] - 3:13, 3:14, 9:3, 24:12, 26:22, 30:14, 38:16, 40:19, 41:4, 47:1, 48:11, 49:21
**hearing** [2] - 6:8, 6:20
**heavy** [1] - 32:7
**hello** [2] - 9:6, 21:6
**help** [4] - 10:20, 10:21, 12:11, 37:7
**helps** [1] - 6:17
**Hetero** [2] - 36:15
**Hetero's** [1] - 37:6
**high** [1] - 33:25
**hired** [1] - 49:3
**history** [3] - 4:17, 4:19, 28:13
**Hong** [1] - 47:17
**Honik** [7] - 17:10, 17:15, 21:2, 24:11, 24:13, 26:10, 30:5
**HONIK** [9] - 1:14, 1:15, 17:10, 17:16, 24:11, 24:14, 26:19, 30:3, 30:6
**honor** [1] - 18:24
**Honor** [51] - 4:2, 4:5, 7:12, 8:7, 9:6, 10:10, 13:14, 14:11, 16:12, 17:10, 17:16, 18:10, 18:16, 19:1, 19:3, 19:8, 21:6, 21:14, 23:8, 24:11, 24:14, 26:6, 27:8, 27:25, 28:2, 30:3, 30:6, 30:10, 31:16, 31:20,

32:14, 33:24, 38:8,
38:17, 38:20, 39:6,
40:5, 40:17, 41:7,
41:23, 42:19, 42:24,
43:4, 44:5, 44:24,
46:7, 48:11, 48:16,
51:10, 51:21
**HONORABLE** [1] - 1:9
**honoring** [3] - 14:19,
30:25, 36:11
**hope** [1] - 13:2
**hopefully** [3] - 10:16,
28:19, 51:17

### I

**idea** [5] - 6:15, 14:23,
27:12, 30:7, 30:14
**identified** [5] - 11:10,
12:13, 13:7, 43:17,
44:12
**identify** [6] - 3:10,
3:13, 39:4, 39:24,
40:14, 45:19
**identifying** [1] - 25:13
**ignore** [1] - 29:2
**immaterial** [1] - 23:23
**immediate** [1] - 6:9
**imminent** [1] - 33:10
**importance** [1] - 47:11
**important** [12] - 9:15,
10:2, 10:23, 12:18,
18:9, 18:16, 19:7,
21:10, 22:3, 31:25,
34:24, 37:5
**impose** [1] - 40:5
**IN** [1] - 1:4
**inadequate** [1] - 41:18
**Inc** [2] - 2:7, 2:8
**includes** [1] - 48:22
**including** [3] - 19:16,
44:11, 47:7
**inconsistent** [1] -
29:19
**incorrect** [1] - 30:16
**increase** [1] - 7:25
**incredible** [1] - 4:23,
49:6, 51:17
**indicated** [1] - 26:19
**indicating** [1] - 4:6
**individual** [2] - 44:19,
47:15
**Industries** [1] - 2:7
**inefficient** [1] - 5:9
**inflection** [1] - 46:8
**information** [3] -
38:25, 43:12, 45:12
**initial** [2] - 4:10, 51:6
**initiated** [1] - 23:2
**injury** [6] - 24:8,

25:23, 27:3, 27:4,
30:12, 48:23
**insisted** [2] - 18:25,
31:1
**insistence** [2] - 27:1,
30:18
**insisting** [1] - 27:4
**instance** [1] - 12:22
**instead** [1] - 5:24
**institutionalized** [1] -
12:7
**intend** [2] - 7:7, 18:22
**intent** [1] - 44:17
**interest** [1] - 11:2
**interested** [1] - 26:24
**interim** [1] - 21:4
**intermediate** [1] -
24:25
**internal** [6] - 8:6, 8:14,
14:2, 20:21, 29:25,
33:2
**interpretation** [1] -
30:17
**interrupt** [2] - 3:22,
32:21
**introduced** [1] - 26:23
**invitation** [2] - 36:5,
47:20
**invite** [3] - 4:9, 6:21,
38:18
**involved** [3] - 12:23,
19:13, 44:6
**involving** [1] - 47:24
**IRBESARTAN** [1] -
1:5
**issue** [24] - 4:8, 8:11,
16:16, 16:21, 20:12,
20:14, 20:19, 24:9,
27:9, 28:8, 31:9,
31:19, 34:1, 35:19,
36:15, 43:1, 45:9,
45:23, 46:1, 46:7,
48:16, 49:3, 50:12
**issues** [28] - 3:5, 4:12,
5:16, 5:21, 5:22,
6:18, 7:10, 10:20,
13:23, 19:21, 19:22,
20:3, 26:2, 28:19,
29:8, 32:2, 32:6,
43:10, 43:18, 44:9,
44:14, 44:22, 45:1,
45:6, 46:10, 46:15,
51:18
**issuing** [2] - 47:3,
47:7
**item** [1] - 36:10
**Item** [1] - 41:8
**iterations** [1] - 37:13
**itself** [1] - 45:19

### J

**January** [4] - 5:25,
14:2, 16:25, 29:21
**JERSEY** [1] - 1:2
**Jersey** [1] - 1:13
**jockeying** [1] - 49:12
**JOHN** [1] - 1:18
**John** [1] - 44:5
**joined** [1] - 31:20
**Joint** [2] - 2:4, 2:11
**JUDGE** [51] - 3:3,
3:21, 3:24, 9:2,
13:11, 14:14, 17:15,
19:2, 19:5, 20:25,
21:8, 22:12, 23:10,
24:13, 26:10, 28:1,
28:4, 30:1, 30:5,
31:11, 31:22, 32:20,
33:4, 33:6, 33:21,
34:2, 34:15, 34:18,
34:22, 35:9, 35:13,
35:16, 35:20, 35:23,
38:15, 39:7, 40:18,
41:8, 41:17, 42:22,
44:7, 44:25, 45:9,
46:22, 46:25, 48:13,
49:19, 50:1, 50:14,
50:24, 51:13
**Judge** [32] - 3:16,
3:22, 13:19, 13:21,
14:2, 14:6, 17:17,
18:16, 18:25, 19:10,
20:3, 20:12, 20:18,
20:23, 22:21, 23:24,
24:19, 25:12, 27:5,
27:9, 27:12, 28:16,
28:24, 29:21, 30:7,
30:16, 30:17, 31:1,
31:7, 41:16, 50:16
**July** [3] - 6:2, 15:12,
49:14
**jump** [2] - 43:3, 43:6
**jumped** [1] - 48:14
**June** [2] - 6:2, 49:14

### K

**Karen** [5] - 1:22, 3:20,
3:21, 3:25, 52:2
**KATZ** [1] - 1:11
**keep** [3] - 17:3, 23:16,
31:14
**keeping** [1] - 47:11
**keeps** [1] - 26:7
**kept** [2] - 27:4, 46:14
**key** [5] - 9:14, 26:17,
37:24, 38:11, 39:24
**kick** [1] - 21:20
**kind** [2] - 13:16, 40:21

**kinds** [1] - 39:13
**knowledge** [1] - 40:7
**knows** [3] - 18:11,
30:10, 41:25
**Kong** [1] - 47:17
**Kugler** [23] - 13:21,
14:2, 17:17, 18:16,
18:25, 19:10, 20:3,
20:12, 20:18, 20:23,
23:24, 24:19, 25:13,
27:5, 27:9, 27:12,
28:16, 28:24, 29:21,
30:7, 30:16, 31:1,
31:7
**Kugler's** [2] - 13:19,
30:17

### L

**laid** [2] - 9:7, 9:13
**large** [2] - 16:21, 29:9
**largely** [1] - 27:14
**last** [8] - 4:7, 4:12,
9:18, 10:8, 11:18,
16:24, 36:16, 44:9
**late** [2] - 19:20, 28:19
**latter** [1] - 24:17
**lawyering** [1] - 38:1
**lawyers** [1] - 12:23
**lay** [1] - 15:1
**lead** [1] - 4:5
**leading** [2] - 17:19,
18:5
**leads** [1] - 12:24
**least** [5] - 7:13, 10:13,
41:15, 43:8, 43:15
**leave** [1] - 20:8
**leaving** [1] - 29:14
**leeway** [1] - 15:24
**legend** [1] - 42:13
**less** [1] - 30:24
**letter** [14] - 3:4, 3:6,
3:7, 7:7, 8:18, 9:7,
9:21, 11:24, 13:3,
15:1, 33:7, 35:8,
45:5, 46:8
**level** [3] - 9:24, 19:13,
38:3
**LIABILITY** [1] - 1:5
**light** [1] - 6:23
**lightly** [1] - 36:3
**likelihood** [2] - 7:25,
8:1
**likely** [1] - 27:23
**line** [4] - 8:2, 26:1,
40:10, 42:25
**lines** [1] - 13:2
**linger** [1] - 35:19
**link** [1] - 30:22
**list** [5] - 36:10, 36:22,

37:17, 41:9, 45:18
**listening** [1] - 51:12
**litigants** [1] - 23:25
**LITIGATION** [1] - 1:5
**litigation** [5] - 6:19,
21:13, 22:4, 22:7,
40:2
**LLC** [2] - 1:11, 2:7
**LLP** [4] - 1:17, 2:2,
2:5, 2:9
**LOCKARD** [3] - 48:11,
48:14, 50:16
**Lockard** [2] - 48:12,
50:15
**LOCKHARD** [1] - 2:5
**lockstep** [1] - 29:7
**log** [13] - 41:11, 41:25,
42:10, 42:16, 42:17,
43:11, 43:14, 44:14,
44:23, 45:18, 45:21,
45:25, 46:3
**logical** [2] - 5:10, 5:13
**logs** [12] - 5:22, 11:19,
11:22, 12:2, 12:8,
41:11, 41:15, 44:10,
45:3, 45:6, 45:10,
46:10
**look** [13] - 5:2, 6:13,
12:20, 23:3, 27:20,
34:9, 34:11, 36:18,
42:17, 42:18, 46:3,
48:7, 51:7
**looked** [1] - 10:7
**looking** [4] - 23:17,
35:24, 35:25, 36:5
**looks** [1] - 46:4
**LOSARTAN** [1] - 1:4
**loss** [1] - 49:4
**lost** [1] - 49:11
**Ltd** [1] - 2:7

### M

**mail** [3] - 37:16, 41:10,
42:16
**maintaining** [1] -
25:13
**major** [1] - 27:18
**management** [3] -
4:21, 7:21, 8:7
**manifested** [1] - 9:24
**manner** [1] - 45:12
**manual** [2] - 36:25,
37:5
**manuals** [1] - 10:24
**manufacturer** [4] -
8:10, 32:16, 45:2,
45:5
**March** [4] - 6:1, 20:1,
28:21, 35:11

**Market** [1] - 1:15
**masse** [1] - 17:5
**massive** [1] - 21:16
**MASTER** [1] - 1:9
**material** [1] - 8:20
**materials** [1] - 4:15
**matter** [11] - 3:6, 3:9, 13:5, 27:24, 30:25, 31:13, 40:23, 41:3, 43:7, 51:15, 51:25
**matters** [2] - 4:6, 47:1
**MAZIE** [1] - 1:11
**MDL** [1] - 16:21
**mean** [15] - 3:22, 15:1, 15:13, 16:11, 21:14, 21:25, 26:12, 26:21, 34:4, 34:13, 34:14, 34:25, 37:24, 42:20, 44:21
**means** [3] - 12:10, 25:10, 42:6
**mechanical** [1] - 1:24
**medical** [1] - 5:17
**meet** [12] - 7:6, 11:25, 36:11, 37:23, 38:9, 38:21, 38:22, 39:4, 40:12, 40:15, 41:5, 43:21
**meet-and-confer** [2] - 36:11, 38:21
**meeting** [4] - 12:4, 36:10, 39:10, 43:9
**mentioned** [3] - 37:20, 44:8, 48:19
**merits** [1] - 30:11
**met** [1] - 12:1
**mid** [4] - 24:20, 25:4, 26:9, 26:16
**mid-February** [4] - 24:20, 25:4, 26:9, 26:16
**middle** [1] - 9:13
**might** [1] - 12:24
**millions** [2] - 39:2, 39:23
**mind** [1] - 32:6
**mindful** [1] - 20:3
**minimize** [1] - 22:11
**minor** [1] - 25:21
**minute** [1] - 3:10
**missed** [1] - 6:22
**missing** [1] - 11:7
**modify** [1] - 18:14
**Monday** [1] - 36:16
**monte** [1] - 34:5
**month** [2] - 33:14, 34:25
**months** [8] - 9:18, 28:17, 49:8, 49:10, 50:19

**morning** [3] - 3:7, 4:7, 10:8
**MORRIS** [1] - 2:2
**most** [6] - 9:15, 10:2, 12:3, 13:5, 21:10, 30:10
**motion** [8] - 5:6, 6:15, 6:16, 16:3, 18:23, 26:15
**motions** [7] - 15:6, 17:22, 22:15, 22:18, 22:19, 22:22, 25:8
**move** [12] - 6:1, 15:12, 15:15, 20:7, 21:3, 26:5, 32:4, 34:10, 44:18, 48:4, 48:9
**moved** [5] - 15:2, 20:17, 22:25, 32:11, 32:24
**moving** [2] - 23:20, 44:17
**MR** [55] - 4:2, 4:4, 6:24, 9:6, 13:14, 14:21, 17:10, 17:16, 19:3, 19:7, 21:6, 21:9, 22:21, 23:8, 23:11, 24:11, 24:14, 26:19, 27:25, 28:2, 28:6, 30:3, 30:6, 31:16, 32:14, 32:25, 33:5, 33:17, 33:22, 34:4, 34:16, 34:19, 34:23, 35:10, 35:14, 35:17, 35:21, 36:14, 38:17, 39:8, 40:17, 40:19, 41:16, 41:19, 42:24, 43:4, 44:5, 44:8, 44:24, 45:1, 46:6, 46:23, 49:23, 50:6, 51:10
**MS** [5] - 3:16, 3:22, 48:11, 48:14, 50:16
**must** [2] - 30:8, 37:23
**Mylan** [4] - 2:11, 43:1, 43:5, 43:9, 44:6, 45:3
**Mylan's** [3] - 44:10, 44:14, 44:23

**N**

**nail** [1] - 35:18
**nailed** [1] - 13:7
**name** [1] - 41:9
**named** [4] - 19:16, 19:17, 38:5, 41:10
**NE** [1] - 2:6
**neat** [1] - 26:5
**necessary** [7] - 31:18, 37:23, 41:12, 42:6,

43:22, 44:2, 48:3
**need** [17] - 5:8, 11:9, 12:15, 12:20, 15:17, 21:21, 29:7, 32:8, 34:11, 35:1, 37:20, 40:20, 41:4, 41:6, 42:3, 46:20, 50:21
**needed** [2] - 15:18, 26:3
**needle** [1] - 27:21
**needs** [1] - 45:10
**negotiated** [9] - 8:9, 14:1, 14:16, 17:7, 19:12, 20:23, 22:13, 25:1, 27:22
**negotiation** [5] - 13:18, 26:7, 26:23, 29:20, 31:5
**negotiations** [1] - 28:14
**negotiator** [1] - 24:15
**never** [2] - 41:6, 44:17
**NEW** [1] - 1:2
**new** [4] - 8:24, 35:15, 40:13, 49:3
**New** [1] - 1:13
**next** [5] - 11:17, 24:1, 42:19, 46:11, 47:13
**night** [1] - 10:8
**nobody** [4] - 36:1, 36:6, 42:10, 42:11
**none** [1] - 21:18
**noted** [1] - 23:21
**nothing** [1] - 7:4
**notice** [2] - 6:8, 29:13
**November** [6] - 19:24, 20:1, 20:4, 21:17, 23:25
**Number** [2] - 14:19, 47:4
**number** [4] - 29:9, 44:11, 47:24, 48:23
**NUMBER** [1] - 1:4

**O**

**objective** [1] - 37:25
**obligation** [5] - 36:12, 38:21, 40:22, 42:2, 42:12
**obligations** [5] - 17:2, 19:14, 33:5, 36:11, 44:2
**obviously** [4] - 9:24, 12:16, 31:21, 46:15
**occur** [2] - 27:13, 48:1
**occurred** [2] - 12:17, 47:25
**OF** [1] - 1:2
**Official** [1] - 1:22

**once** [1] - 11:13
**One** [1] - 2:10
**one** [12] - 3:19, 8:4, 12:5, 12:24, 14:19, 32:14, 35:7, 37:1, 39:11, 42:15, 42:21
**ones** [5] - 11:5, 21:10, 25:18, 25:19, 41:2
**open** [4] - 8:23, 36:5, 39:10, 40:3
**opening** [1] - 25:19
**operating** [2] - 10:24, 36:17
**operative** [2] - 39:5, 39:15
**opportunities** [1] - 39:13
**opportunity** [4] - 13:25, 23:18, 28:7, 47:22
**order** [24] - 7:11, 8:7, 8:8, 10:11, 10:12, 11:17, 20:17, 22:17, 23:16, 37:22, 38:8, 40:5, 40:8, 40:20, 41:4, 41:7, 41:24, 44:4, 45:17, 47:3, 47:8, 47:9, 51:5, 51:14
**ordered** [1] - 24:19
**orderly** [4] - 47:22, 48:4, 51:17, 51:19
**orders** [1] - 4:21
**original** [2] - 24:16, 32:12
**originally** [2] - 38:11, 47:12
**otherwise** [1] - 41:5
**outcome** [2] - 14:8, 16:21
**outlined** [1] - 6:15
**outstanding** [2] - 5:16, 32:5
**overall** [1] - 7:21
**overbearing** [1] - 25:16
**overlap** [2] - 7:14, 8:25
**own** [1] - 11:11
**Oxford** [1] - 2:10

**P**

**p.m** [3] - 1:8, 3:2, 51:22
**pace** [1] - 51:11
**pages** [2] - 39:2, 39:23
**parameters** [8] - 10:11, 13:1, 16:15, 31:18, 33:9, 36:10,

38:22, 40:15
**Parkway** [1] - 1:12
**part** [6] - 12:3, 18:1, 19:22, 24:17, 37:11, 40:2
**participate** [1] - 40:11
**particular** [2] - 4:13, 50:11
**PARTIES** [1] - 3:1
**parties** [19] - 7:23, 8:9, 12:12, 13:6, 17:18, 18:8, 19:9, 20:11, 20:23, 25:3, 25:11, 26:20, 28:15, 29:20, 33:12, 35:18, 37:23, 47:24, 49:16
**party** [6] - 6:18, 19:18, 29:8, 32:6, 49:2, 50:8
**past** [2] - 17:23, 39:12
**pause** [8] - 5:14, 5:19, 5:20, 7:1, 7:2, 31:23, 32:1, 47:6
**PC** [1] - 1:14
**pending** [1] - 19:19
**Pennsylvania** [3] - 1:16, 2:3, 2:11
**people** [3] - 11:25, 12:4, 37:15
**perfectly** [1] - 17:18
**peril** [1] - 34:6
**period** [9] - 5:20, 6:2, 7:8, 14:18, 18:10, 27:17, 38:3, 39:6, 48:7
**periods** [1] - 37:14
**permission** [2] - 17:11, 19:10
**permitted** [1] - 18:13
**persistence** [1] - 27:10
**person** [4] - 36:8, 41:1, 41:10, 45:19
**personal** [5] - 6:14, 24:8, 25:23, 27:4, 48:23
**perspective** [3] - 21:21, 42:5, 45:11
**Pharma** [1] - 2:8
**Pharmaceutical** [1] - 2:7
**Pharmaceuticals** [1] - 2:7
**pharmacy** [1] - 49:5
**phase** [8] - 29:14, 29:16, 48:20, 48:22, 49:9, 50:18, 50:23
**Phase** [2] - 49:22, 50:3
**phases** [2] - 28:17,

29:6

**Philadelphia** [2] - 1:16, 2:3

**phone** [2] - 3:18, 3:21

**physicians** [1] - 48:24

**Piedmont** [1] - 2:6

**PIETRAGALLO** [1] - 2:9

**Pittsburgh** [1] - 2:11

**place** [6] - 21:23, 25:20, 31:14, 43:23, 47:12, 49:7

**plaintiff** [4] - 5:14, 20:7, 45:4, 50:11

**Plaintiff** [2] - 1:13, 1:16

**Plaintiffs** [1] - 1:19

**plaintiffs** [38] - 4:13, 4:19, 5:18, 6:6, 6:7, 6:10, 7:16, 8:5, 8:23, 13:16, 13:24, 17:2, 19:15, 23:17, 24:3, 24:8, 28:7, 28:9, 28:10, 28:12, 29:5, 29:22, 33:22, 39:3, 39:12, 39:18, 39:22, 43:2, 43:9, 43:13, 43:17, 43:21, 46:1, 48:23, 48:24, 48:25, 51:3, 51:10

**plaintiffs'** [7] - 8:3, 8:18, 13:9, 29:2, 30:2, 30:25, 50:17

**planned** [1] - 5:25

**play** [1] - 34:4

**players** [1] - 42:12

**playing** [2] - 16:20, 38:3

**plowed** [1] - 12:1

**plus** [3] - 49:1, 49:3, 49:4

**point** [24] - 7:17, 8:7, 14:5, 14:15, 16:11, 18:15, 21:11, 21:25, 22:1, 22:3, 23:21, 25:12, 30:24, 35:9, 38:16, 43:15, 44:4, 46:8, 49:14, 49:20, 50:1, 50:14, 50:16, 50:17

**Point** [1] - 35:17

**points** [3] - 17:11, 33:7, 35:8

**policies** [1] - 38:24

**position** [3] - 9:8, 18:1, 41:9

**possible** [1] - 4:23

**posture** [3] - 10:4, 21:12, 22:7

**potential** [1] - 28:22

**potentially** [3] - 13:25, 39:19, 40:9

**precede** [2] - 20:19, 30:15

**preceded** [1] - 17:21

**preceding** [1] - 27:7

**precisely** [2] - 23:9, 23:11

**predating** [1] - 37:1

**prefer** [1] - 11:13

**preferable** [1] - 14:12

**prejudice** [5] - 6:18, 22:9, 23:21, 29:24, 30:25

**prejudiced** [7] - 21:3, 21:7, 21:9, 24:4, 24:5, 24:6, 29:23

**prejudicial** [2] - 6:3, 21:24

**preparation** [1] - 9:1

**prepare** [1] - 40:22

**prepared** [2] - 7:25, 39:4

**present** [2] - 44:18, 47:16

**presented** [4] - 6:6, 14:1, 45:10, 45:11

**preserve** [1] - 20:17

**preserved** [2] - 13:5, 15:4

**preserves** [1] - 27:12

**preserving** [1] - 17:7

**pressure** [1] - 22:25

**presumably** [1] - 41:1

**presumes** [1] - 41:17

**presumptuous** [1] - 25:5

**pretty** [4] - 9:8, 32:7, 36:1, 41:14

**previously** [1] - 49:7

**primarily** [1] - 25:22

**principal** [1] - 24:14

**privilege** [26] - 5:22, 11:19, 11:22, 12:2, 12:3, 12:8, 41:11, 41:15, 41:25, 42:9, 42:16, 42:17, 43:11, 43:20, 44:10, 45:3, 45:6, 45:9, 45:14, 45:25, 46:3, 46:10, 46:16

**privileged** [2] - 11:23, 43:18

**problem** [13] - 5:2, 9:23, 16:23, 21:17, 23:11, 23:12, 25:13, 25:15, 26:4, 38:12, 49:14, 50:7

**problematic** [1] - 34:7

**problems** [4] - 6:17,

10:14, 10:15, 31:19

**procedures** [2] - 10:24, 36:17

**proceed** [4] - 5:5, 30:8, 47:16, 47:22

**proceeding** [1] - 5:8

**proceedings** [1] - 51:25

**Proceedings** [1] - 1:24

**process** [8] - 6:16, 11:21, 11:22, 12:7, 23:2, 40:2, 40:21, 41:7

**produce** [3] - 4:22, 15:22, 37:19

**produced** [15] - 1:25, 7:19, 10:23, 11:10, 12:14, 12:18, 17:5, 17:6, 21:17, 35:2, 35:4, 38:5, 38:14, 39:2, 39:23

**producing** [1] - 21:15

**product** [1] - 9:16

**production** [12] - 4:15, 4:17, 4:24, 5:17, 9:17, 17:2, 29:8, 32:2, 32:5, 34:10, 37:15, 40:1

**productions** [5] - 9:19, 9:21, 15:7, 21:23, 38:24

**PRODUCTS** [1] - 1:5

**progress** [1] - 31:25

**proofs** [1] - 30:13

**proposal** [5] - 6:11, 8:3, 50:2, 50:17, 50:20

**propose** [2] - 7:2, 36:2

**proposed** [18] - 6:12, 7:10, 8:6, 8:13, 8:16, 10:9, 10:10, 13:16, 14:3, 20:7, 23:4, 27:11, 27:20, 28:15, 29:13, 29:20, 31:6

**proposes** [1] - 8:18

**proposing** [8] - 5:20, 7:3, 19:10, 22:19, 23:19, 29:6, 29:15, 31:23

**protected** [1] - 45:14

**protection** [1] - 12:11

**protocol** [2] - 43:23, 44:3

**prove** [3] - 30:9, 30:11, 30:13

**provide** [4] - 26:3, 41:12, 43:11, 45:17

**provided** [3] - 20:11, 44:13, 45:13

**provides** [1] - 27:23

**providing** [1] - 31:8

**pulling** [1] - 36:24

**push** [3] - 7:10, 15:17, 16:9

**pushed** [3] - 10:2, 21:22, 50:2

**pushing** [3] - 23:13, 29:15, 50:20

**put** [8] - 11:21, 12:10, 12:12, 16:12, 28:12, 33:24, 35:14, 43:14

**putative** [1] - 49:4

**puts** [1] - 22:25

## Q

**quality** [4] - 10:24, 11:11, 36:17, 36:25

**questions** [5] - 6:20, 31:12, 37:9, 39:20, 40:6

**quick** [1] - 51:11

**quickly** [2] - 4:10, 4:23

**quote** [1] - 14:23

## R

**raised** [5] - 4:8, 43:10, 45:2, 45:7, 45:8

**RANDOLPH** [1] - 1:18

**RASPANTI** [1] - 2:9

**rather** [3] - 5:8, 8:4, 11:12

**RE** [1] - 1:4

**re** [10] - 5:8, 12:15, 12:21, 13:1, 15:23, 24:6, 32:7, 33:25, 35:1, 41:12

**re-depose** [4] - 5:8, 15:23, 32:7, 35:1

**re-deposed** [1] - 24:6

**re-deposition** [3] - 12:15, 12:21, 33:25

**re-depositions** [1] - 13:1

**re-served** [1] - 41:12

**reach** [1] - 18:17

**reached** [3] - 12:2, 24:20, 29:20

**reaching** [1] - 47:15

**ready** [3] - 23:22, 25:11, 48:2

**real** [1] - 49:14

**realistic** [1] - 12:5

**reality** [1] - 17:4

**realize** [1] - 11:9

**realized** [1] - 46:8

**really** [27] - 5:2, 6:13, 7:15, 8:20, 10:21,

11:17, 14:21, 15:20, 16:7, 19:7, 23:23, 24:3, 26:21, 27:13, 28:6, 29:2, 29:11, 29:15, 29:23, 31:8, 34:24, 38:21, 39:16, 45:15, 49:23, 49:25

**reason** [8] - 9:15, 10:1, 15:8, 18:24, 25:8, 25:17, 44:4, 50:21

**reasonability** [1] - 8:24

**reasonable** [9] - 10:19, 16:21, 27:24, 33:15, 34:7, 35:7, 36:1, 36:2, 42:6

**reasoned** [1] - 16:13

**reasons** [1] - 6:14

**recalled** [2] - 7:18, 8:2

**recalling** [1] - 7:20

**received** [2] - 3:3, 3:6

**recent** [1] - 6:23

**recently** [1] - 6:12

**recharacterizing** [1] - 28:13

**recognize** [3] - 15:13, 15:16, 51:15

**recognizing** [1] - 46:2

**record** [4] - 6:25, 9:7, 46:23, 51:25

**recorded** [1] - 1:24

**records** [1] - 5:18

**redepose** [1] - 37:4

**redeposition** [3] - 36:3, 36:6, 38:14

**redoing** [1] - 41:15

**reduce** [1] - 8:1

**referenced** [1] - 43:13

**referred** [2] - 7:1, 16:14

**referring** [1] - 26:7

**reflect** [1] - 8:10

**reflects** [5] - 8:24, 13:17, 13:18, 28:16, 31:7

**regard** [1] - 36:11

**regarding** [2] - 22:15, 22:24

**reject** [1] - 27:6

**rejected** [1] - 27:5

**relate** [1] - 44:12

**related** [1] - 5:22

**relates** [1] - 29:17

**relationship** [1] - 25:24

**relented** [1] - 18:2

**relevant** [3] - 17:13, 39:6, 46:19

**relief** [6] - 26:3, 27:23,

31:8, 44:1, 45:4, 49:24
**relieved** [1] - 31:22
**relitigate** [3] - 4:18, 23:18, 28:8
**remains** [1] - 25:7
**remarks** [1] - 4:5
**remember** [1] - 39:6
**renegotiate** [2] - 23:18, 28:8
**reordered** [1] - 49:8
**repeat** [1] - 44:15
**repeatedly** [1] - 9:19
**repeating** [1] - 11:2
**reporter** [1] - 3:18
**Reporter** [1] - 1:22
**REPORTER** [1] - 3:20
**Reporter/ Transcriber** [1] - 52:2
**reports** [5] - 15:3, 15:6, 22:22, 23:1, 50:10
**representative** [1] - 40:25
**representatives** [2] - 19:16, 24:8
**reproduce** [1] - 43:18
**reps** [1] - 49:4
**request** [8] - 16:16, 16:19, 27:16, 32:12, 32:20, 32:23, 37:18, 37:19
**requested** [2] - 8:21, 49:24
**requesting** [4] - 3:4, 33:8, 44:1, 45:4
**required** [1] - 41:12
**requires** [2] - 10:17, 10:18
**rescheduled** [1] - 33:11
**rescheduling** [3] - 10:18, 35:7, 47:14
**reset** [1] - 28:7
**resisted** [1] - 17:23
**resolution** [2] - 17:19, 46:2
**resolve** [3] - 20:2, 31:20, 45:24
**resolved** [6] - 13:23, 19:23, 21:13, 22:5, 32:2, 45:23
**resolving** [1] - 7:9
**resources** [1] - 4:24
**respect** [9] - 4:17, 5:17, 7:13, 14:22, 41:15, 43:8, 43:10, 45:2, 47:14
**respectfully** [3] -

25:23, 26:6, 45:21
**respects** [3] - 27:12, 27:21, 31:7
**respond** [4] - 13:12, 26:11, 44:6, 49:25
**responding** [1] - 37:18
**response** [4] - 3:7, 16:14, 19:6, 37:17
**RESPONSE** [1] - 51:21
**responsiveness** [1] - 6:11
**rest** [1] - 23:2
**restructuring** [5] - 8:6, 8:14, 8:18, 33:2, 48:17
**result** [1] - 18:7
**retailer** [1] - 49:5
**retailers** [1] - 19:15
**return** [1] - 43:6
**review** [3] - 4:14, 5:7, 5:15
**revised** [7] - 14:16, 21:5, 22:14, 41:11, 47:12, 48:8, 49:8
**revisions** [1] - 11:1
**rework** [2] - 7:24, 20:21
**reworking** [1] - 14:2
**ripe** [1] - 45:7
**risk** [3] - 30:3, 38:6, 38:13
**RMR** [1] - 52:2
**road** [1] - 6:18
**Road** [2] - 1:18, 2:6
**robust** [2] - 12:11, 16:14
**role** [2] - 39:17, 45:20
**roll** [1] - 34:19
**rolling** [3] - 3:8, 12:1, 12:9
**room** [1] - 51:14
**Roseland** [1] - 1:13
**rote** [1] - 15:14
**roughly** [1] - 18:8
**RUBEN** [1] - 1:15
**Ruben** [2] - 17:10, 24:11
**rule** [5] - 10:4, 31:21, 35:1, 38:1, 38:2
**Rule** [6] - 17:22, 18:23, 26:3, 27:19, 30:10, 40:15
**ruled** [2] - 30:7, 30:16
**rules** [1] - 41:20
**ruling** [2] - 28:19, 28:22
**rulings** [1] - 13:19
**run** [3] - 5:17, 31:1,

31:19
**running** [1] - 19:21

## S

**said/she** [1] - 5:1
**sales** [1] - 38:25
**satisfy** [1] - 47:11
**save** [2] - 35:21, 35:24
**saw** [1] - 10:10
**scattered** [1] - 29:10
**schedule** [48] - 7:12, 7:14, 7:21, 7:24, 8:24, 9:13, 10:6, 10:8, 10:9, 13:3, 13:16, 13:17, 13:18, 13:23, 13:25, 14:3, 14:6, 14:13, 15:12, 15:23, 16:23, 18:25, 19:11, 19:12, 19:19, 20:10, 23:19, 24:15, 24:16, 25:7, 27:11, 27:20, 28:7, 28:15, 29:2, 29:4, 29:13, 31:6, 31:14, 32:13, 32:15, 35:15, 47:10, 47:12, 47:17, 48:17, 49:9, 50:22
**scheduled** [2] - 33:11, 33:14
**schedules** [1] - 13:7
**scheduling** [5] - 3:5, 7:11, 8:22, 16:21, 19:14
**Schneider** [2] - 14:6, 17:18
**scouring** [1] - 37:15
**second** [7] - 11:17, 29:14, 29:16, 48:19, 48:22, 49:9, 50:17
**see** [6] - 6:2, 24:3, 34:21, 38:12, 48:6, 51:8
**seek** [2] - 47:21, 50:7
**seeking** [3] - 36:6, 36:13, 47:5
**self** [1] - 41:24
**self-executing** [1] - 41:24
**seminal** [1] - 26:7
**send** [1] - 42:16
**sense** [4] - 14:17, 21:10, 30:12, 51:8
**sent** [4] - 31:6, 33:7, 36:16, 37:16
**separate** [4] - 17:25, 18:6, 27:10, 30:21
**separation** [1] - 20:22
**September** [4] - 15:5, 18:23, 19:20, 22:17

**sequence** [3] - 16:2, 23:3, 23:7
**sequenced** [3] - 25:21, 26:12, 26:13
**seriously** [1] - 9:25
**serve** [1] - 15:6
**served** [3] - 15:3, 34:24, 41:12
**service** [1] - 22:22
**set** [9] - 3:25, 5:5, 7:7, 10:11, 13:22, 17:8, 18:9, 40:1, 47:12
**SETH** [1] - 2:2
**Seth** [11] - 4:2, 4:4, 6:21, 6:24, 13:14, 19:3, 23:8, 27:25, 38:17, 42:24, 44:24
**severely** [1] - 48:19
**shared** [1] - 17:12
**short** [3] - 6:8, 14:12, 22:17
**showing** [1] - 32:8
**shrinks** [1] - 50:19
**shrunk** [2] - 16:5, 16:6
**sic** [1] - 27:17
**side** [12] - 4:20, 5:10, 5:17, 6:5, 6:22, 13:9, 21:1, 30:2, 31:13, 36:7, 42:4, 50:11
**sides** [3] - 10:20, 11:25, 38:2
**significant** [2] - 40:25, 46:19
**simply** [4] - 3:12, 8:16, 14:13, 26:5
**simultaneously** [1] - 26:2
**single** [1] - 12:21
**sit** [2] - 36:8, 36:22
**situation** [5] - 5:12, 9:11, 16:11, 21:19, 37:3
**six** [1] - 39:5
**sky** [1] - 17:3
**SLACK** [1] - 1:17
**SLATER** [26] - 1:11, 1:12, 9:6, 14:21, 21:6, 21:9, 22:21, 31:16, 34:4, 34:16, 34:19, 34:23, 35:10, 35:14, 35:17, 35:21, 36:14, 40:17, 40:19, 41:16, 41:19, 46:6, 46:23, 49:23, 50:6, 51:10
**Slater** [21] - 3:7, 6:12, 9:4, 9:5, 9:6, 14:15, 17:12, 18:19, 21:3, 21:6, 21:8, 31:15, 33:6, 34:2, 40:17,

40:18, 41:8, 43:12, 44:1, 46:5, 49:21
**small** [1] - 15:20
**SMITH** [3] - 3:16, 3:22
**smoothly** [1] - 12:14
**so-called** [1] - 24:16
**solution** [5] - 5:3, 5:4, 6:3, 6:17
**solve** [2] - 10:14, 16:12
**solves** [1] - 6:17
**someone** [1] - 50:11
**somewhat** [1] - 15:16
**SOPs** [2] - 37:12, 38:25
**sorry** [2] - 4:3, 32:21
**sort** [1] - 8:17
**sought** [1] - 22:19
**sounds** [1] - 35:25
**spaced** [1] - 15:25
**SPECIAL** [1] - 1:9
**specific** [3] - 37:8, 43:16, 44:10
**specified** [1] - 14:18
**specter** [1] - 33:19
**spent** [4] - 4:11, 6:3, 21:15, 27:1
**spread** [2] - 10:18, 35:12
**square** [1] - 28:14
**stage** [3] - 5:5, 18:18, 30:10
**stand** [1] - 41:22
**standard** [2] - 10:24, 36:17
**standing** [1] - 11:25
**start** [7] - 3:15, 3:16, 3:17, 13:6, 35:6, 37:10, 42:8
**started** [1] - 3:3
**statement** [1] - 9:8
**STATES** [1] - 1:2
**STATUS** [1] - 1:6
**stenography** [1] - 1:24
**step** [1] - 11:17
**stick** [4] - 13:3, 14:13, 32:12, 50:21
**still** [11] - 15:10, 17:5, 18:4, 23:5, 25:20, 25:21, 28:2, 29:7, 29:8, 31:24, 44:18
**stop** [2] - 31:10, 51:15
**STOY** [2] - 2:10, 43:4
**Stoy** [1] - 43:5
**straightforward** [5] - 7:22, 8:4, 8:16, 14:9, 23:19
**Street** [2] - 1:15, 2:3
**strict** [1] - 30:11

**strictly** *[1]* - 30:15
**stripped** *[1]* - 46:17
**struck** *[1]* - 30:20
**structure** *[4]* - 20:18, 22:12, 23:17, 29:4
**structured** *[1]* - 14:17
**structuring** *[2]* - 28:16, 28:24
**struggling** *[1]* - 26:11
**study** *[1]* - 47:10
**subject** *[3]* - 30:4, 40:23, 44:4
**subjective** *[1]* - 37:25
**submit** *[3]* - 41:23, 42:19, 45:21
**submitted** *[1]* - 16:25
**substance** *[1]* - 42:13
**substantial** *[3]* - 14:24, 41:14, 41:20
**substantive** *[2]* - 41:13, 42:14
**sufficient** *[2]* - 19:25, 45:19
**suggest** *[1]* - 40:4
**suggested** *[2]* - 11:24, 13:3
**suggesting** *[1]* - 20:16
**suggestion** *[1]* - 11:15
**Suite** *[3]* - 1:15, 1:18, 2:6
**summarize** *[1]* - 4:10
**summer** *[1]* - 9:18
**supply** *[4]* - 8:12, 19:13, 32:18, 33:3
**supporting** *[2]* - 32:20, 32:23
**suppose** *[3]* - 14:11, 16:18, 16:19
**supposed** *[2]* - 37:10, 44:13
**susceptible** *[1]* - 30:13
**systemic** *[5]* - 11:21, 38:11, 44:10, 44:14, 44:22

### T

**table** *[1]* - 26:5
**tee** *[2]* - 46:1, 46:10
**telephone** *[1]* - 1:6
**TELEPHONE** *[1]* - 3:1
**ten** *[1]* - 34:24
**terms** *[2]* - 6:7, 16:2
**test** *[1]* - 12:12
**testify** *[7]* - 7:18, 39:14, 40:22
**testimony** *[1]* - 8:2
**Teva** *[3]* - 2:7, 2:7, 48:12

**Texas** *[1]* - 1:19
**THE** *[2]* - 1:2, 1:9
**The Court** *[28]* - 3:20, 4:21, 6:9, 6:21, 10:4, 12:4, 17:9, 17:20, 17:24, 18:1, 18:5, 18:11, 18:13, 19:25, 23:14, 23:15, 24:24, 25:1, 25:6, 25:10, 26:19, 26:21, 26:23, 27:2, 30:19, 30:21, 31:18, 49:11
**theory** *[1]* - 50:7
**thereby** *[1]* - 20:9
**they've** *[1]* - 9:24
**thinking** *[2]* - 4:11, 6:4
**thinks** *[1]* - 42:15
**third** *[4]* - 19:18, 29:8, 49:2, 50:8
**third-party** *[4]* - 19:18, 29:8, 49:2, 50:8
**THOMAS** *[1]* - 1:9
**thoughtful** *[1]* - 16:14
**thoughts** *[1]* - 25:11
**threads** *[1]* - 27:21
**three** *[2]* - 34:5, 48:25
**three-card** *[1]* - 34:5
**thrown** *[1]* - 13:4
**tied** *[1]* - 4:6
**timing** *[1]* - 13:20
**today** *[8]* - 8:3, 8:18, 15:7, 28:13, 31:14, 33:8, 44:1, 47:2
**together** *[2]* - 19:19, 46:15
**tomorrow** *[2]* - 37:10, 42:17
**tonight** *[1]* - 42:16
**took** *[1]* - 21:22
**topics** *[2]* - 39:11, 40:15
**touched** *[1]* - 22:24
**track** *[5]* - 17:25, 18:6, 27:10, 30:22, 36:20
**tracking** *[2]* - 47:18
**transcript** *[2]* - 1:25, 51:24
**transcription** *[1]* - 1:25
**Traurig** *[1]* - 48:12
**TRAURIG** *[1]* - 2:5
**treating** *[1]* - 48:24
**trial** *[9]* - 5:11, 5:12, 17:21, 21:12, 22:5, 22:7, 23:22, 23:24, 27:5
**trials** *[1]* - 24:1
**tried** *[1]* - 5:2
**triple** *[1]* - 47:18
**triple-tracking** *[1]* -

47:18
**TRISCHLER** *[2]* - 2:9, 4:4
**Trischler** *[10]* - 3:6, 3:8, 3:12, 3:15, 3:17, 4:1, 4:5, 13:11, 42:25, 43:5
**try** *[8]* - 9:12, 12:13, 16:15, 27:16, 36:9, 40:3, 44:20, 45:24
**trying** *[12]* - 4:16, 6:4, 9:9, 16:20, 27:2, 29:11, 30:24, 31:12, 37:6, 38:22, 46:21, 49:15
**turn** *[1]* - 41:5
**turned** *[1]* - 45:3
**turns** *[1]* - 34:21
**two** *[10]* - 8:3, 10:20, 12:25, 22:6, 28:16, 29:6, 35:15, 47:13, 49:10, 50:19
**type** *[4]* - 11:3, 13:1, 43:12, 43:25

### U

**ultimately** *[1]* - 21:11
**unacceptable** *[2]* - 4:20, 44:16
**unbriefed** *[1]* - 51:12
**uncertainly** *[1]* - 38:13
**unchanged** *[3]* - 20:9, 29:15, 50:18
**under** *[5]* - 32:3, 34:20, 44:2, 50:2, 50:17
**understood** *[3]* - 33:21, 35:20, 48:21
**undertaken** *[1]* - 36:3
**undertaking** *[1]* - 41:14
**undoubtedly** *[1]* - 51:18
**unfair** *[1]* - 21:19
**unfortunately** *[1]* - 43:5
**UNITED** *[1]* - 1:2
**universe** *[2]* - 16:25, 17:4
**unless** *[2]* - 32:10, 50:10
**unlikely** *[2]* - 5:12, 29:24
**unquote** *[1]* - 14:23
**unreasonable** *[3]* - 42:1, 42:4
**unrelated** *[1]* - 18:20
**unsuccessfully** *[1]* - 27:2

**up** *[16]* - 3:10, 4:6, 4:12, 7:15, 16:5, 18:8, 19:19, 25:12, 28:10, 44:19, 46:2, 46:11, 46:17, 46:21, 49:8, 51:19
**USA** *[1]* - 2:7

### V

**vacuum** *[1]* - 45:16
**VALSARTAN** *[1]* - 1:4
**value** *[2]* - 10:12, 11:21
**VANASKIE** *[52]* - 1:9, 3:3, 3:21, 3:24, 9:2, 13:11, 14:14, 17:15, 19:2, 19:5, 20:25, 21:8, 22:12, 23:10, 24:13, 26:10, 28:1, 28:4, 30:1, 30:5, 31:11, 31:22, 32:20, 33:4, 33:6, 33:21, 34:2, 34:15, 34:18, 34:22, 35:9, 35:13, 35:16, 35:20, 35:23, 38:15, 39:7, 40:18, 41:8, 41:17, 42:22, 44:7, 44:25, 45:9, 46:22, 46:25, 48:13, 49:19, 50:1, 50:14, 50:24, 51:13
**various** *[1]* - 6:14
**vendors** *[1]* - 49:2
**versions** *[1]* - 11:1
**Via** *[1]* - 1:6
**VIA** *[1]* - 3:1
**Victoria** *[1]* - 48:12
**VICTORIA** *[1]* - 2:5
**view** *[6]* - 16:11, 33:16, 33:17, 37:6, 43:25, 44:3
**virtually** *[2]* - 16:7, 17:17

### W

**waived** *[1]* - 34:23
**waiving** *[2]* - 12:16, 44:22
**walk** *[1]* - 10:21
**wants** *[6]* - 3:12, 16:18, 27:9, 31:1, 32:6, 42:23
**warrant** *[2]* - 36:4, 36:7
**warranted** *[2]* - 7:9, 40:13
**weave** *[2]* - 40:20, 41:5
**Wednesday** *[2]* - 1:7,

4:13
**week** *[3]* - 36:15, 36:16, 43:19
**weeks** *[7]* - 8:9, 13:17, 19:11, 35:15, 47:14
**weigh** *[1]* - 38:19
**whole** *[1]* - 44:23
**wholesaler** *[1]* - 49:5
**wholesalers** *[1]* - 19:15
**withdraw** *[1]* - 16:18
**withdrawing** *[2]* - 32:12, 43:20
**witness** *[19]* - 5:8, 8:1, 11:8, 15:8, 32:7, 33:12, 34:9, 34:10, 35:5, 36:22, 36:25, 37:5, 38:6, 40:22, 40:24, 46:18, 46:20
**witness's** *[3]* - 12:19, 12:25, 46:17
**witness-by-witness** *[2]* - 33:12, 34:9
**witnesses** *[11]* - 4:15, 7:17, 7:20, 9:21, 15:23, 24:6, 29:10, 33:19, 36:6, 47:9, 47:15
**witnesses'** *[1]* - 50:8
**won** *[1]* - 34:25
**words** *[1]* - 30:21
**wore** *[1]* - 17:1
**works** *[1]* - 15:25
**written** *[1]* - 15:3

### Y

**year** *[11]* - 17:14, 17:23, 18:1, 18:4, 18:17, 21:15, 24:1, 27:2, 27:13, 31:4
**year's** *[1]* - 30:18
**years** *[3]* - 22:6, 39:5, 39:6
**yesterday** *[6]* - 3:4, 6:6, 7:6, 14:4, 28:9, 28:11
**yourselves** *[3]* - 3:11, 3:13, 45:25

### Z

**ZHP** *[2]* - 2:4, 7:13
**zones** *[1]* - 29:11
**Zoom** *[1]* - 29:11