

Victoria Lockard
Tel 678.553.2103
lockardv@gtlaw.com

February 19, 2021

**VIA ECF & EMAIL**

Hon. Thomas I. Vanaskie, Special Master (TIV@stevenslee.com)
Stevens & Lee, PC
1500 Market St., East Tower, Suite 1800
Philadelphia, PA 19103-7360

  Re: *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, **U.S. District Court for the District of New Jersey; Case No. 1:19-md-02875-RBK-JS**

Dear Special Master Vanaskie:

On behalf of Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Activas LLC, and Actavis Pharma, Inc. (collectively "Teva"); Zhejiang Huahai Pharmaceutical Co., Ltd.,  and Prinston Pharmaceutical Inc., Solco Healthcare U.S., LLC, Huahai U.S., Inc. (collectively, the "ZHP Parties"); Aurobindo Pharma USA, Inc., Aurolife Pharma LLC and Aurobindo Pharma, Ltd. (collectively "Aurobindo"); and Mylan N.V., Mylan Pharmaceuticals Inc., and Mylan Laboratories Ltd. (collectively "Mylan") (collectively "The Manufacturing Defendants"),[1]  we are submitting this letter brief in connection with the privilege log issues raised during our February 17, 2021 Status Conference.[2]

---

[1] While there are several other Manufacturing Defendants in this litigation, for purposes of this letter brief, the term "Manufacturing Defendants" shall only refer to the defendants specifically referenced herein.

[2] Defendants Torrent Pharmaceuticals Ltd. and Torrent Pharma, Inc. do not believe Plaintiffs have properly and timely raised a dispute with respect to Torrent's privilege log. To the extent the Court will allow Plaintiffs to raise an untimely dispute, Torrent joins in Defendants' arguments.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 2

## I.    OVERVIEW OF THE ISSUE AND SUMMARY OF THE MANUFACTURING DEFENDANTS' POSITION

This letter brief focuses on the specific issue of whether the Manufacturing Defendants should be required to produce to Plaintiffs' counsel a detailed legend or cast of characters setting forth the name, title, department, and email address of not just the attorneys involved with the privileged communications referenced on the Manufacturing Defendants' privilege logs (which they have already agreed to do),  but thousands of other non-attorney individuals whose names appear on the Manufacturing Defendants' privilege logs. First, neither the law cited by Plaintiffs' counsel in its February 11, 2011 letter to Your Honor, (*see* Plaintiff's February 11, 2021 letter to the Court ("Pls' Letter")), nor the ESI Protocol agreed upon by the counsel for the Parties requires that such information be included with the Manufacturing Defendants' privilege logs. Second, the burden and expense associated with complying with Plaintiffs' demand is disproportionate to the needs of this proceeding.

## II.    FACTUAL BACKGROUND AND INFORMATION RELEVANT TO THE PARTIES' DISPUTE

### A.    Governing Case Management Orders Relating to Defendants' Documents Privilege Logs.

Prior to the commencement of the Manufacturing Defendants' document productions, the parties heavily negotiated an extensive ESI protocol. The Court entered this stipulated ESI protocol on June 19, 2019.  *See* Case Management Order No. 8 ("CMO 8") [Dkt. 127].[3] The parties specifically negotiated and included in the ESI protocol a section dealing with the topic of Privilege and Work Product Claims and Redactions.  *See* CMO  8, Section V, at 15-19.  In Section V of the ESI Protocol, the parties stipulated and agreed, in pertinent part, as follows:

---

[3] A copy of CMO 8 is attached to this letter brief.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 3

**A. Privileged Information and Attorney Work Product.** The parties agree that for documents withheld from production on the basis of attorney-client privilege or the work product doctrine and/or any other applicable privilege, the producing party will provide an ***updated summary log with each production of privileged material, in an electronically searchable format (e.g., Excel), containing, for each document claimed as privileged, and as required by applicable law. including Fed. R. Civ. P. 26(b)(5)(A), a description of "the nature of the documents, communications, or tangible things not produced or disclosed- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim,***" ***as well as an export of the metadata fields listed below*** (to the extent such information exists and has not been suppressed or redacted for privilege):

- FIRSTBATES
- LASTBATES
- BEGATTACH
- ENDATTACl-1
- PARENT_BATES
- CHILD_BATES
- ATTACHMENT COUNT
- CUSTODIAN (in the format LASTNAME, FIRSTNAME, MIDDLENAME)
- DUPLICATE CUSTODIANS (in the format LASTNAME, FIRSTNAME.
- MIDDLENAME)
- FROM
- TO
- CC
- BCC
- SUBJECT
- DATE SENT
- DATE RECEIVED
- FILENAME
- AUTHOR
- DATE_CREATED
- FILETYPE
- PRIV _CLAIM (the basis for the claim of privilege, e.g .• sent lo/from outside counsel)
- STATUS OF PRIVILEGE DESIGNATION (e.g., attorney-client, attorney-work-product)

A party need only log the topmost e-mail in a thread so long as the description of the subject matter includes enough information sufficient to demonstrate the privilege and as long as all lesser-contained e-mails are also independently privileged. If all lesser-contained e-mails are not independently privileged, the topmost e-mail thread must be redacted rather than withheld. To the extent a party

Hon. Thomas I. Vanaskie
February 19, 2021
Page 4

seeks to use categorical logs in lieu of providing the information above, the producing party will initiate a meet and confer with the requesting party, and if unable to reach agreement, move the Court to allow such logs upon a showing of good cause. However, documents comprising attorney client communications and/or attorney work product relating solely to the defense of this litigation. and solely between outside counsel or outside counsel and in-house counsel. and dated after the start of the litigation. need not be included on a privilege log. If a producing party believes that documents dated after the start of the litigation for a particular custodian should not be included on a privilege log, they shall meet and confer with the requesting party, and if unable to reach agreement, move the Court to allow such omission upon a showing of good cause.

If the requesting party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within thirty (30) days of such a request, the producing party must either (i) provide the requested information or (ii) challenge the request. Either party may seek to expedite this time period upon good cause shown. If a party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the parties must request a conference with the court before any motions may be tiled. Withdrawal of privilege designations shall be noted on the summary log, indicating the fact and date of withdrawal of the privilege designation.

*See* CMO 8, at 15-18 (emphasis supplied).

Nothing in this language – or any other section of the ESI protocol – requires Defendants to provide a legend for any individuals (attorney or otherwise) listed in the privilege logs. Indeed, at no point during the negotiation of the ESI Protocol did Plaintiffs even request that a legend[4] listing the name, title, department, and email address of every individual named in the privilege logs be provided with the privilege logs, nor did Plaintiffs ever raise this request with the Court in connection with a proposed modification to the ESI Protocol.

On February 4, 2021, Your Honor entered Special Master Order No. 2 in which the deadlines set forth in Revised CMO 22 were extended by 60 days [Dkt. 843]. In this Special

---

[4] Plaintiffs' counsel has sometimes referred to this document as a "cast of characters" document, but for purposes of this letter brief, the Manufacturing Defendants will refer to it as a legend.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 5

Master Order, Your Honor imposed a deadline of February 15, 2021 for Plaintiffs to identify any privilege log that Plaintiffs contend is inadequate and the reasons for the claimed inadequacy. Your Honor also directed counsel to meet and confer to attempt to resolve Plaintiffs' objections to the adequacy of the privilege logs and report to the Court no later than February 22, 2021 on their efforts to resolve disputes pertaining to the privilege logs. Special Master Order No. 2 at 3.

**B. The Manufacturing Defendants' Production of Documents and Privilege Logs.**

Pursuant to the agreements reached in the stipulated ESI protocol, the Manufacturer Defendants produced their responsive documents on a rolling basis from July 15, 2020, through November 30, 2020, resulting in production of millions of pages. Teva produced approximately 167,000 documents during its rolling productions in 2020. The ZHP Parties have produced approximately 340,000 documents. The Aurobindo parties produced approximately 140,000 pages.

Following these initial productions, Teva engaged in an extensive TAR review (subject to the parties' agreed-upon validation protocol ordered by the Court), resulting in several more recent document productions. Teva's document productions are now substantially complete. The ZHP Parties' productions are now substantially complete. The Aurobindo parties are currently discussing the production of several more custodial files from Aurobindo Pharma Ltd.

Pursuant to the requirements of the ESI Protocol, the Manufacturing Defendants produced their privilege logs following the completion of their respective document productions. On December 29, 2020, Teva produced a privilege log that fully complied with the requirements of

Hon. Thomas I. Vanaskie
February 19, 2021
Page 6

Section V of the ESI protocol ("Teva December 29 Privilege Log").[5]  The December 29 Privilege Log listed 9,854 documents, some of which were withheld entirely and others of which were produced in part with redactions. Aurobindo's first privilege log was produced on April 9, 2020. In October 2020 Plaintiffs raised several purported deficiencies with Aurobindo and the parties met-and-conferred and were able to reach an agreement on an amended log that fully complies with the requirements of the ESI Protocol, which Aurobindo served on October 26, 2020. The most recent version was served on December 28, 2020 and includes 100 documents.[6]

In accordance with Judge Schneider's August 27, 2020 Order [Dkt. 564], the Manufacturing Defendants have 30 days from the completion of their supplemental document productions to provide Plaintiffs with a corresponding privilege log. Teva is working on its supplemental privilege log ("Teva Supplemental Privilege Log," and together with Teva's December 29 Privilege Log, the "Teva Privilege Logs"), which is currently due March 15, 2021. At the present time, Teva anticipates there will be approximately 10,500 additional documents listed on its Supplemental Privilege Log and a total of over 20,000 documents on both Teva Privilege Logs. The Aurobindo parties may have to supplement their Privilege Log if the parties are able to reach an agreement on the production of additional custodial files.

The Teva Privilege Logs contain the names of almost 3000 unique individuals. As of the submission of this letter brief, Teva has identified approximately 150 of these individuals as legal personnel, and approximately 2800 as non-attorneys.  Teva's December 29 Privilege Log includes

_____

[5] Teva produced its initial privilege log on October 1, 2020, which listed 16 privileged documents. Teva's December 29 Privilege Log is a large document and is not being attached to this letter brief. If, however, the Court wishes to review it, Teva can provide it, or excerpts from it, to the Court.
[6] Due to the length of Aurobindo's Log, a copy is not being attached to this letter; however, if the Court would like to review it, a copy will be provided.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 7

the full email addresses of these attorneys and non-attorneys, and the Teva Supplemental Privilege Log will do the same. As noted above, Teva has already agreed to provide Plaintiffs with a legend for the legal personnel appearing on the Teva Privilege Logs. In addition, a number of Teva's documents were produced to Plaintiffs with redactions, so Plaintiffs' counsel have access to headings and signature blocks on the face of those documents. . Likewise, the Aurobindo parties agreed to produce a legend of all legal personnel listed on their Log and some of the documents were only partially redacted such that Plaintiffs should be able to see the information regarding individuals listed on those documents.

### C. The Burden Associated with Plaintiffs' Requested Additions to the Manufacturing Defendants' Privilege Logs.

Prior to the February 17, 2021 conference call with the Court, counsel for the Plaintiffs conferred with counsel for the Manufacturing Defendants regarding their challenges to the sufficiency of the identifying information for individuals whose names appeared on the Manufacturing Defendants' respective privilege logs. These communications were undertaken directly with each Manufacturing Defendant and not on a global basis.

### 1. Teva's Privilege Log Discussions

Plaintiffs first requested production of a "cast of characters" at the January 13, 2021 Teleconference with Judge Schneider in connection with the discussion of ZHP's log of State Secret documents. To that date, Teva had not had any discussions with Plaintiffs' counsel about the adequacy of Teva's Privilege Logs. At the January 27, 2021 Case Management Conference, Plaintiffs again requested such a "legend," this time in the context of Mylan's privilege log, which was the only Defendant's log added to the agenda for that CMC. Counsel for Mylan pointed out that the parties' discussions had not contemplated this type of legend and emphasized the serious

Hon. Thomas I. Vanaskie
February 19, 2021
Page 8

burden this would place on Defendants to provide this information for all individuals rather than just legal personnel. Out of an abundance of caution, given those discussions on calls with the Court, Teva raised the issue of potential deficiencies with Plaintiffs during a meet and confer call on February 5, 2021. Teva indicated that it was preparing a legend or cast of characters with this information for all legal personnel identified on Teva's Privilege Logs. Plaintiffs did not identify any other issues with Teva's Privilege Logs during that call.

On February 10, 2021, Plaintiffs emailed Teva's counsel and stated that they were seeking a "cast of characters" for all personnel, in addition to the legend of legal personnel previously discussed. (*See* 02/10/21 email correspondence from D. Stanoch, attached as Exhibit A). On February 16, 2021, Teva responded and confirmed it had agreed to produce a "cast of characters" for any *legal personnel* for Teva and its affiliates, appearing on the Teva Privilege Logs ("Teva Legal Personnel Legend") and could provide that information by February 22, 2021.[7] (*See* 02/16/21 email correspondence from S. Harkins, attached as Exhibit B). During the February 17, 2021 conference call with the Court, Plaintiffs' counsel argued that the Manufacturing Defendants should also provide a legend for all non-attorneys. Teva and other manufacturers opposed this request on burdensomeness grounds.

With respect to Teva, there are approximately 2,800 non-attorneys whose names appear on the Teva Privilege Logs. Teva has consulted with its e-discovery vendor, Consilio, and confirmed that there is no available technology that would enable it to readily identify the job titles and departments of the individuals listed on the log from the documents identified in the Teva Privilege Logs. In other words, this vendor does not have a "click-of-the-button" mechanism by which it

---

[7] The Teva Legal Personnel Legend will include names and email addresses and, if available, the job titles and departments.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 9

can identify the job titles and departments of these approximate 2,800 individuals. Thus, in order to comply with the request of Plaintiffs' counsel, Teva would have to incur the unreasonable and disproportionate expense of a manual re-review of the approximate 20,000 documents flagged as privileged, with reviewers searching the documents for each individual to look for job titles and/or department information, if such information exists within the documents. Because certain emails will not have signature blocks containing the data that Plaintiffs' desire, Teva would then have to incur the additional time and expense of analyzing the context of each email (beyond simply assessing whether the document is privileged, which is all that Rule 26 requires), in order to try and piece together the role of each individual. Additional hours would then have to be spent on quality control reviews and to manually prepare a legend listing all of the data being belatedly requested by Plaintiffs' counsel now, at the end Defendants' document productions and shortly before depositions are to begin. Teva currently estimates that this total process could take 3-4 weeks, if not longer.

For job titles or departments which are not readily available from Consilio's manual review of the documents listed in Teva's Privilege Logs, counsel would then have to work with Teva's HR departments around the world[8] to attempt to collect this data. Such an undertaking would involve manually entering each name into various Teva and affiliate HR databases to determine which Teva entity employs the individual, and pulling employment information including title and department. Because Teva has subsidiaries and affiliates around the world, this process would be extremely time-consuming and Teva estimates it would likely take a month and 800 hours of vendor time to complete, not including additional attorney time and expenses. In

---

[8] Teva is a global company with over 35 subsidiaries and affiliates around the world employing hundreds of thousands of individuals worldwide.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 10

addition, Teva employees that would have to assist with any such project will be taken away from their other job responsibilities and could not, as Plaintiffs' counsel appears to suggest, simply drop everything they are doing to try and complete this task within a week as requested during the February 17, 2021 conference.

## 2. ZHP's Log Privilege

There are no issues concerning the ZHP Parties' privilege log before the Court. The ZHP Parties served their privilege log on December 30, 2020, *see* Exhibit C, but Plaintiffs waited until February 10, 2021 to make any assertions regarding its adequacy. Plaintiffs have not responded to the ZHP Parties' request to meet and confer regarding those claims. This Court's local rules make clear that the parties are expected to confer in an attempt to resolve any discovery dispute before raising the issue with the Court. L.R. 37.1 ("Counsel shall confer to resolve any discovery dispute."); see also 02/03/2021 Hrg. Tr. at 45:24-46:2 ("What I would expect is that you would try to resolve it between yourselves . . . if you can't, then you tee it up for a resolution by me[.]"). Nevertheless, because Plaintiffs have asserted that all Defendants should be required to provide a legend that describes the role of every individual who sent or received a document, the ZHP Parties join in this motion because requiring the ZHP Parties to provide such a "cast of characters" list would be unduly burdensome.

The ZHP Parties' privilege logs currently contain 1,965 entries relating to withheld and redacted documents. As the ZHP Parties have produced over 340,000 documents, privilege claims are being asserted over only about 0.5% of the documents included in responsive document families. As required by the agreed ESI Protocol (Dkt. 127), for each document, the ZHP Parties' privilege logs provide twenty-two fields of information, including fields indicating all email addresses included in the "To," "From," "cc" and "bcc" lines of any email, as well as the "Author"

Hon. Thomas I. Vanaskie
February 19, 2021
Page 11

of any document, and the custodians in whose files the documents were found.  See Dkt. 127 at 16-17.  There are over 200 unique names or email addresses appearing in these fields.  Creating a legend identifying each and every one of these individuals' names, positions, and departments, as Plaintiffs have requested of all Defendants, would be extremely burdensome for the ZHP Parties.  This is particularly true because the ZHP Parties have been ordered to produce documents originating as early as January 2010.  See Macro Discovery Order (Dkt. 303) at ¶ 10.  The log thus includes the names of former ZHP Party employees as well as employees whose roles with the companies have changed over time.

Notwithstanding the above, the ZHP Parties are willing to provide a list indicating the names of counsel appearing in the privilege log.  However, the ZHP Parties should not be required to provide the extensive list describing the role of every person whose name appears as a sender or recipient that Plaintiffs are requesting because of the immense burden compiling such information would entail.

### 3.  Aurobindo's Privilege Log Discussions

Aurobindo joins Teva's recitation of the history of this dispute under Section 1 above and incorporates the same as though set forth at length herein. Aurobindo's first Privilege Log was produced on April 9, 2020. In October 2020 Plaintiffs raised several purported deficiencies and the parties met-and-conferred and were able to reach an agreement on an amended log that fully complies with the requirements of the ESI Protocol, which Aurobindo served on October 26, 2020. The most recent version was served on December 28, 2020 and includes 100 document that counsel would have to re-review to search for the additional information Plaintiffs' now seek. Aurobindo's eDiscovery vendor, CDS Legal, does not have a mechanism by which it can identify the job titles and departments of every individual mentioned on the log. Similar to Teva, counsel will have to

Hon. Thomas I. Vanaskie
February 19, 2021
Page 12

go through the documents for that information in the same fashion that Teva describes, which Aurobindo incorporates here by reference. There are over 45 individuals listed on Aurobindo's Log. To provide the name, email, title and department of every single one will be a time-consuming and expensive process that will require the attention of counsel to be removed from other matters that could slow down the meet-and-confer process on other issues and cause undue prejudice to the parties, particularly where Aurobindo complied with the ESI Protocol and Plaintiffs have not sought to amend the same.

### 4. Torrent's Privilege Log Discussions

Pursuant to Special Master Vanaskie's Order dated February 4, 2021, the deadline for raising all disputes regarding privilege logs was February 15, 2021 (ECF No. 843). Special Master Vanaskie's order notes that "[a]bsent compelling and necessitous circumstances, the deadlines established by this Order will not be extended." Id. Plaintiffs did not raise any disputes with Torrent by the February 15 deadline. Instead, Plaintiffs waited until February 17 to send Torrent a letter with over five pages of issues related Torrent's privilege log. *See* Exhibit D. Given that Plaintiffs did not raise these disputes by the February 15 deadline and have not offered any "compelling and necessitous circumstances" for the delay, coupled with the fact that Plaintiffs have had Torrent's privilege log since January 4, 2021, Torrent respectfully requests that the Court reject Plaintiffs' attempts to raise these issues now.

### 5. Mylan's Privilege Log Discussions

Unlike other Defendants who have only recently been approached by Plaintiffs regarding their privilege logs, Mylan and Plaintiffs have already engaged in a lengthy meet and confer process, which culminated in Mylan substantially revising its Privilege Log, and agreeing to produce additional documents that were previously withheld. As part of that meet and confer,

Hon. Thomas I. Vanaskie
February 19, 2021
Page 13

Mylan provided a "legend" to Plaintiffs, which contains the name, email address, title, and department for all of the in-house lawyers and paralegals identified on Mylan's privilege log, as well as the name and email address of each outside counsel. Mylan provided this information based on the understanding that it reflected a compromise between the Parties. Specifically, Plaintiffs indicated that they would not seek a full "cast of characters" from Mylan if Mylan agreed to provide the legend identifying the attorneys. (*See* 01/28/21 email correspondence from J. Davis to F. Stoy, attached as Exhibit E). Thus, in addition to joining the Defendants' opposition to the Plaintiffs' request for a full "cast of characters" – which would require Mylan to compile additional information with respect to hundreds of non-lawyer employees – Mylan asserts that it should be excused from providing that information under any circumstances in light of the compromise Mylan negotiated with Plaintiffs. To the extent Plaintiffs request this information with respect to specific documents identified on Mylan's privilege log, Mylan will of course consider such a limited request.

While Plaintiffs argued during the conference that this additional burden and expense should be incurred because they need this information in order to have "a full understanding of each document and what the claim is,"[9] and "dive into and start to talk to the defense substantively about the Manufacturing Defendants' privilege claims,"[10] Plaintiff did not cite to a single privilege log entry that they claimed was insufficient with respect to the identity of the author(s), recipient(s) or individuals copied on various email communications appearing on the Manufacturer Defendants' Privilege Logs, or claim any Defendant failed to comply with the requirements of the ESI Protocol. Plaintiffs also fail to acknowledge the reasonable concessions that the Manufacturing

---

[9] *See* Transcript of February 17, 2021 conference with the Court ("2/17/21 Trans."), at 13.
[10] *Id.,* at 8.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 14

Defendants have offered to eliminate Plaintiffs' claimed inability to fully understand the nature of each document on the Manufacturing Defendants' privilege logs or determine the basis for the claimed privileges. These concessions include the Manufacturing Defendants' offers to provide further identifying information relating to counsel involved with many of the communications on the Manufacturing Defendants' respective privilege logs and Teva's offer to work with Plaintiffs' counsel to provide further information regarding specific documents listed on the Teva Privilege Logs or non-party individuals referenced in them on an as-needed and good faith basis.

### III.    LEGAL ARGUMENTS AND AUTHORITIES

#### A.    The Manufacturing Defendants Have Complied with the ESI Protocol.

As noted above, the parties engaged in lengthy negotiations regarding the ESI Protocol set forth in CMO 8. Section V of this ESI Protocol clearly set forth the information that the parties agreed would be included on the parties' privilege logs. The Manufacturer Defendants' Privilege Logs comply with these requirements.

If, as Plaintiffs' counsel suggested during the February 17, 2021 conference, it is "customary…and what's normally done in these litigations,"[11] to require Defendants to include additional information regarding the titles, departments, and email addresses of each and every individual listed in the privilege log, this is something they could and should have requested *before* the ESI Protocol was finalized and executed by the Court over a year and a half ago in June 2019. Defendants dispute this request is something that is normal, customary, or expected. Plaintiffs have provided no explanation as to why they did not raise this earlier, during ESI protocol negotiations or in the intervening months since they first received Defendants' privilege logs, and, as explained

---

[11] February 17, 2021 Status Conference Transcript at 19

Hon. Thomas I. Vanaskie
February 19, 2021
Page 15

below, the law cited in their February 11, 2021 letter brief to the Court does not support the position that the Manufacturing Defendants are required to provide a legend containing the categories of additional information now sought by Plaintiffs' counsel.

What's more, contrary to the suggestion of Plaintiffs' counsel that it is a routine practice for the parties in large multi-district proceedings to provide a legend similar to what Plaintiffs are now requesting in this case, the Manufacturing Defendants respectfully submit that in their experience this is not the case.

**B. The Manufacturing Defendants Have Complied with Fed. R. Civ. P. 26(b)(5)(A) and Applicable Law.**

Rule 26(b)(5)(A) states that when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the part must**:** (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). On its face, Rule 26(b)(5) does not explicitly require the submission of a cast of characters such as the one being requested by Plaintiffs in this case, nor do any of the cases cited by Plaintiffs in their February 11, 2021 letter to this Court[12] support their suggestion that a legend is necessary to "assess the propriety of [Teva's] privilege designations."[13] Indeed, Plaintiffs are unable to cite *a single case* requiring a party to provide a cast of characters document that includes the additional categories of information they are now seeking to obtain for each and every name appearing on a party's privilege log.

---

[12] *See* Pls. Letter at 5-7.
[13] *Id.* at 4.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 16

For example, *Pippenger v. Gruppe* does not even address privilege logs at all, but does state the well-established general proposition that "a detailed description of the materials in dispute" is required to support a privilege claim. *See* 883 F. Supp. 1201, 1212 (S.D. Ind. 1994). Even in the cited cases where privilege log disputes were mentioned, the focus of the decisions were largely on the sufficiency of the document descriptions, the claimed privileges, or a party's failure to properly identify *the counsel* involved in the privileged communication. For instance, in *Chao v. Koresko*, the circuit court reviewed a district court decision finding that documents were not protected by privilege where the district court "[could not] tell what documents the respondents claim are protected by what privilege[s], by whom the document was prepared, from whom and to whom it was sent, and why it is a privileged communication." No. 04-3614, 2005 WL 2521886, at *13 (3d Cir. Oct. 12, 2005), a deficiency that does not exist with the Manufacturer Defendants' Privilege Logs. *In re Asousa P'ship*, in turn, the court addressed various challenges to a privilege log, including a challenge to the sufficiency of a description regarding a memorandum that did not even identify the parties to the privileged communication. No. 01-12295DWS, 2005 WL 3299823 at *10 (Bankr. E.D. Pa. Nov. 17, 2005), a situation that clearly does not exist int his case.

***None*** of the other cases cited by Plaintiffs in their February 11, 2021 letter brief address the issue now before the court – whether the Manufacturing Defendants must provide a legend containing additional fields of information that were not included in the ESI Protocol. Instead, these cases focus on other issues, such as the timing of the delivery of privilege logs, the sufficiency of document descriptions or claimed privileges, or potential waivers of privileges, none of which are topics that are ripe for consideration at this time in this legal proceeding. *See, e.g., Wachtel v. Health Net, Inc.,* 239 F.R.D. 81, 106 (D.N.J. 2006) (general statement about the purpose and proper timing for service of privilege logs and stating that the court's review process "cannot

Hon. Thomas I. Vanaskie
February 19, 2021
Page 17

begin if the documents, which are the subjects of the log, are never identified in discovery");

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) (general

statements regarding restrictions on invocation of the attorney-client privilege and bases for a

potential waiver such privileged information is disclosed to third parties); *Peterson v. Bernardi,*

262 F.R.D. 424, 428 (D.N.J. 2009) (case involving the inadvertent production of privileged

documents and a claw back request pursuant to Fed. R. Evid. 502 in which the court generally

discussed the parameters for claiming privileges associated with communications with counsel);

*In re Gabapentin Patent Litig.,* 214 F.R.D. 178, 186 (D.N.J. 2003) (discussion in patent case of

general directions with respect to recurrent privilege issues that arose in the course of an in camera

review of documents including a practice of cc'ing counsel on various interoffice memos); *McKee*

*v. PetSmart, Inc.,* 71 F. Supp. 3d 439, 443 (D. Del. 2014) (order on motion to compel involving

claims of waiver of the attorney-client privilege arising out of a "good faith" affirmative defense

pursuant to 29 U.S.C. § 260 in which the court discussed the need to redact a PowerPoint); *Wulz*

*v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 497 (S.D.N.Y 2013) (decision addressing sufficiency

of privilege logs descriptions regarding communications to, from and among members of legal or

other departments of a bank when, in some instances, the log did not identify the involvement of

any lawyers or did not provide sufficient information to determine whether the recipients or

creators of the documents were attorneys, something that the Manufacturing Defendants have done

and/or are willing to do in this proceeding).

Plaintiffs failed to cite two Third Circuit cases that actually ***are*** relevant to the issue now

before this Court. Most notably, in *Torres v. Kuzniasz,* a case not even mentioned in Plaintiffs'

February 11, 2021 letter to the Court, Judge Kugler directly addressed the issue of the components

of a proper privilege log under Rule 26(b)(5) and concluded that such a privilege log must include,

Hon. Thomas I. Vanaskie
February 19, 2021
Page 18

for each withheld document, "the date of the document, the name of its author, the name of its

recipient, the names of all people given copies of the document, the subject of the document, and

the privilege or privileges asserted."  936 F. Supp. 1201, 1208 (D.N.J. 1996) (citing *Wei v. Bodner,*

127 F.R.D. 91, 96 (D. N. J. 1989)).

In the *Wei* decision, Judge Wolfson noted that the above  categories of information were

sufficient to "enable the Court to determine such issues as whether the documents were prepared

in anticipation of litigation, whether the information was intended to be confidential and whether

there has been a waiver of the privileges"  and to provide the party seeking discovery "to have a

full and fair opportunity to oppose the assertion of privilege." 127 F.R.D. at 96.  Neither of these

decisions said anything about a cast of characters document or mention anything about the

necessity under Rule 26(b)(5) to list the titles, departments or email addresses of individuals whose

names appear on a privilege log.  *See also Jaroslawicz v. Engelhard Corp.,* 115 F.R.D. 515, 516

(D.N.J. 1987) (cited in *Wei* as an example of the format for a privilege log, and this log does not

contain the data requested by Plaintiffs).

The information included in the Manufacturer Defendants' privilege logs – especially when

supplemented by a legend allowing Plaintiffs to identify the legal personnel involved – is more

than sufficient to satisfy the requirements of the ESI protocol, the Federal Rules, and the very cases

to which Plaintiffs now cite.

**C. The Proportionality Considerations Underlying Rule 26 Do Not Justify the Burden and Expense of Plaintiff's Late Request for a Legend or Cast of Characters Document Long After the ESI Protocol Was Adopted by the Parties.**

Rule 26(b)(1) makes clear that, unless modified by court order, the scope of discovery in

federal cases is limited to non-privileged materials that are relevant to any party's claims or defense

Hon. Thomas I. Vanaskie
February 19, 2021
Page 19

and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "As recognized by the Third Circuit, although broad, the right to discovery 'is not unlimited and may be circumscribed.'" *Takacs v. Union Cty.*, Civil Action No. 08-711 (KSH)(MAS), 2009 U.S. Dist. LEXIS 87632, at *3 (D.N.J. Sep. 14, 2009) (quoting *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999)). Moreover, discovery cannot be limitless. "There comes a point where the marginal returns on discovery do not outweigh the concomitant burden, expense, and bother. The Court's role is to try and find the right balance." *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. 2013) (Schneider, Mag. J.); *see also* Manual for Complex Litigation Fourth, 11.41 (The "underlying principle of proportionality [in Rule 26(b)(2)] means that even in complex litigation, discovery does not require leaving no stone unturned.").

The proportionality considerations of Rule 26(b)(1), particularly the final factor, weigh against requiring the Manufacturing Defendants to incur the trouble and expense of performing a manual re-review of all of the entries on their Privilege Logs in order to provide the information Plaintiffs are  now seeking in connection with many thousands of non-attorneys whose names appear on the Manufacturing Defendants' privilege logs. *See Takacs* 2009 U.S. Dist. LEXIS 87632, at *3 ("[A] discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues", the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses

Hon. Thomas I. Vanaskie
February 19, 2021
Page 20

imposed as a consequence of the proposed discovery. *Takacs*, 2009 U.S. Dist. LEXIS 87632, at

*3 (quoting FRCP 26 (b)(2)(C)(iii)).

In order to justify the imposition of such a high burden on the Manufacturing Defendants,

Plaintiffs must explain why their untimely request to modify the agreed upon terms of the ESI

Protocol regarding the fields to be included on the Manufacturing Defendants' privilege logs is

necessary.  And they must do so with something more than just generic statements about their

alleged need for a "robust description of the documents so that [they] can make an evaluation and

have a knowledgeable and substantive conversation with the defendants."[14] *See, e.g.,  EEOC v.*

*Princeton Healthcare Sys.*, Civil Action No. 10-4126 (JAP), 2011 U.S. Dist. LEXIS 58056, at *27

(D.N.J. May 31, 2011).

The  only way that the Manufacturing Defendants could now potentially provide this

information at this late stage would be for them to undertake a  very time-consuming and

burdensome manual review of all of the documents that are on their Privilege Logs.

For Teva, such an undue burden and expense is inappropriate where, as here, Teva has

complied with the ESI Protocol, Rule 26(b)(5), relevant case law from this jurisdiction.  Moreover,

as reiterated during the February 17, 2021 conference with the Court, Teva has already agreed to

provide the names of lawyers, legal department and outside counsel for the approximate 150

attorneys listed on the Privilege Logs.  This information, when coupled with the descriptions of

the 22 additional categories documents required by the ESI Protocol to be included on the Privilege

Logs, will enable Plaintiffs to determine the basis of Teva's attorney client privilege and work

product doctrine claims, which is all that Rule 26(b)(5) and relevant Third Circuit case law

---

[14] *See* February 17, 2021 conference transcript, at 18.

Hon. Thomas I. Vanaskie
February 19, 2021
Page 21

requires. Teva is also willing to work with Plaintiffs' counsel to respond to reasonable requests for further information on specific non-attorney individuals whose names appear on the Teva Privilege Logs and whose identifies cannot be determined by Plaintiffs by reviewing other non-privileged documents already produced to Plaintiffs.

Likewise, Aurobindo will incur a great burden and expense in having to review all documents and provide the name, email, title and department of every individual listed on their Log. Aurobindo has complied with the ESI Protocol, the Federal Rules and the Local Rules regarding discovery, and the relevant case law. Moreover, the Plaintiffs reached an agreement with Aurobindo in October 2020 regarding an amended Privilege Log. Aurobindo has also agreed to produce the names, email addresses, titles, and departments of all legal personnel and is willing to meet-and-confer with Plaintiffs' counsel if they should have additional requests for information on other individuals included on Aurobindo's Privilege Log.

For the reasons stated above, the Court should deny Plaintiffs request that the Manufacturer Defendants produce a legend or cast of characters identifying non-legal personnel appearing on the various privilege logs.

Respectfully,

*/s/ Victoria Lockard*
Victoria Lockard, Esq.
*Attorney for Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and Actavis Pharma, Inc.*

Enclosures

cc:    Jessica Priselac, Esq. (*via email, for distribution to Defendants' Counsel*)
       Lori G. Cohen, Esq. (*via* email)

Hon. Thomas I. Vanaskie
February 19, 2021
Page 22

    Seth A. Goldberg, Esq. (*via email*)
    Clem C. Trischler, Esq. (*via email*)
    Sarah E. Johnston, Esq. (*via email*)
    Adam Slater, Esq. (*via email, for distribution to Plaintiffs' Counsel*)
    Daniel A. Nigh, Esq. (*via email*)
    Ruben Honik, Esq. (*via email*)
    David Stanoch, Esq. (*via email*)
    Conlee Whiteley, Esq. (*via email*)