# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

*FIRM and AFFILIATE OFFICES*

SETH A. GOLDBERG
DIRECT DIAL: +1 215 979 1175
PERSONAL FAX: +1 215 689 2198
E-MAIL: SAGoldberg@duanemorris.com

*www.duanemorris.com*

February 24, 2021

**VIA ECF**

The Honorable Robert Kugler
Senior United States District Court Judge
District of New Jersey

The Honorable Karen M. Williams
United States Magistrate Judge
District of New Jersey

The Honorable Thomas Vanaskie
Special Master
Stevens & Lee

Re:   **In re Valsartan, Losartan, and Irbesartan Products Liability Litigation**
      **Case No. 1:19-md-02875-RBK-JS**

Dead Judges Kugler, Williams, and Vanaskie:

This letter is to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on February 24, 2021. This letter serves as a corrected version of the letter filed as Dkt. 968, which inadvertently omitted a portion of Aurobindo's statement on discovery status.

## 1.    Plaintiff Deposition Issues

As the Court is aware, depositions of the Plaintiff class representatives have been taking place since late January. Despite several requests from various Manufacturer Defendants for Plaintiffs to ensure that witnesses will be technologically ready to proceed with depositions, there

February 24, 2021
Page 2

DuaneMorris

have been a number of issues that have arisen. Most Defendants have opted to have an additional Veritext technician, compensated by Defendants for the time spent resolving a Plaintiff's technological deficiencies, available during each deposition. The following are examples of these issues:

On February 2, 2021 counsel for Hetero Drugs Ltd. and Hetero Labs Ltd. (collectively, "HLL") took the deposition of Economic Loss class representative Larry Semmel. Mr. Semmel and the defending attorney logged in right at the scheduled deposition start time. It quickly became clear that Mr. Semmel was unequipped and unprepared to participate with functioning audio and video. After a delay of almost an hour, the Veritext technician was able to walk Mr. Semmel through instructions to make the Zoom deposition possible. Had the witness and defending attorney logged in early, much of the wasted time could have been avoided.

On February 15, 2021, counsel for ZHP took the deposition of Economic Loss class representative Dennis Kaplan. Shortly after the scheduled deposition start time, it became apparent that Mr. Kaplan had never used Zoom before and was using a browser/system that does not support Zoom. The Veritext technician made a phone call to Mr. Kaplan in an effort to guide him through the login process. After about 30 minutes, the plaintiff was still unable to log in, and the deposition was canceled.

On February 17, 2021, counsel for ZHP took the deposition of Economic Loss class representative Ronald Molinaro. Plaintiffs' counsel informed counsel for ZHP less than 24 hours before the scheduled start of the deposition that Mr. Molinaro would be participating via iPhone and would need physical copies of documents/exhibits. ZHP arranged for delivery of the documents via FedEx "first overnight" delivery (i.e. by 8:30 AM), but due to weather, shipment was delayed. ZHP was forced to email the documents to a FedEx Office location close to Mr.

February 24, 2021
Page 3

DuaneMorris

Molinaro's home and have them printed there (at ZHP's added expense). The deposition was able to move ahead after a 1.5 hour delay.

The above is a small sampling of the technological issues that have surfaced during the class representative depositions. Many, if not all, of these issues could have been avoided had Plaintiffs made a stronger effort to communicate with Defendants and/or logged in a few minutes before the scheduled deposition start time. Defendants ask that the Court require Plaintiffs to log into the Zoom application 15-20 minutes before the scheduled start time so there is time to troubleshoot any technical issues. Defendants also seek a ruling disallowing the uses of cell phones and requiring Plaintiffs to attend depositions using a computer.

**2.      Rule 34 Requests Directed to Bellwether Trial Plaintiff Pool**

Defendants intend to serve Rule 34 document requests on plaintiffs selected for the bellwether trial pool prior to those individuals' depositions. Defendants provided a draft of the requests to Plaintiffs' counsel on February 18, 2021. The Parties met and conferred on February 23, 2021, and Plaintiffs have agreed to provide any global objections and/or redlines to Defendants no later than Wednesday, March 3. The Parties anticipate being in a position to argue any disputed issues at the March mid-month conference.

**3.      Dismissal of Peripheral Defendants**

The Parties are continuing discussions about extending the peripheral Defendants' dismissal order previously entered in the Valsartan litigation to the losartan and irbesartan cases. Language was exchanged between counsel for the parties yesterday related to the relevant time period and it is hopeful that an agreement will be reached in the near future and the order can be submitted to the Court for entry.

**4.      Bellwether Trial Pool Plaintiff Dismissals**

**Duane Morris**

February 24, 2021
Page 4

As discussed at the January 27, 2021 Case Management Conference, the parties met and conferred over a process for selection of plaintiffs for a Bellwether Trial Pool. By agreement, on January 15, 2021, counsel for each side simultaneously disclosed fifteen (15) personal injury plaintiffs for inclusion in the Bellwether Trial Pool. The parties' respective disclosures are attached as **Exhibits A** and **B**. Plaintiffs and Defendants disclosed two of the same picks, resulting in a total of twenty-eight (28) cases in the Bellwether Trial Pool. Subject to the Court's approval, the parties have memorialized these selections in the attached proposed Draft Order Establishing Trial Pool ("Draft Order") (attached as **Exhibit C**). The parties have agreed as to the language of the Draft Order, except for the dismissal provision of paragraph 7, which remains in dispute. Defendants' proposed language states: "Bellwether Trial Pool cases may be dismissed only by court order, on terms that the Court considers proper. In the event this Court permits a Bellwether Trial Pool case to be voluntarily dismissed, the Party who selected that case for the pool may pick a replacement case from the entirety of the personal injury cases filed in or transferred to the MDL." While plaintiffs agree that the selecting party should be allowed to pick a replacement case in the event of a bellwether dismissal, plaintiffs will not agree that bellwether cases may be dismissed only by court order, and instead insist upon the right to voluntarily dismiss bellwether cases by filing a unilateral notice of dismissal. Defendants' proposal simply puts these bellwether cases in the same procedural stance for dismissal pursuant to Rule 41 as if an answer had been filed. Pursuant to FRCP 41(a), a court order is required for voluntary dismissal, unless all parties stipulate their consent or no answer (or motion for summary judgment) has been filed. Answers have not been filed to date in this litigation only because, in the interest of efficiency in the MDL, Judge Kugler ruled that all Plaintiffs' allegations were deemed automatically denied by Defendants and formal answers were unnecessary. *See* CMO 2 (Dkt. 72) (ordering "defendants are not required to file an

February 24, 2021
Page 5

DuaneMorris

answer to plaintiffs' complaints. By so discharging defendants' requirement under Fed. R. Civ. Proc. ["Rule"] 8(b), the Court acknowledges each defendant would have pleaded they denied and/or lacked knowledge or information regarding the allegations in each complaint."). Aside from the procedural considerations, Court approval of voluntary dismissals is necessary and prudent to maintain the integrity and intent of the bellwether selection process and to ensure the parties remain on fair and equal footing. Otherwise, Plaintiffs are left with the one-sided ability to voluntarily dismiss and reselect at their will and for any reason, conceivably cycling through any number of bellwether plaintiffs, at any time in the process, including post-discovery and just prior to trial. Defendants, on the other hand, have no such ability.

Additionally, since negotiation of the proposed Draft Order Establishing Trial Pool, Judge Kugler issued his February 3, 2021 Order and Opinion No. 5 on Defendants' Motion to Dismiss, dismissing with prejudice, *inter alia*, a large number of claims pursuant to Defendants' subsumption defense. Dkt. 839. The Court's Order resulted in the dismissal of most if not all of the claims of at least nine of the twenty-eight bellwether plaintiffs (those from Louisiana, New Jersey, Ohio, and Tennessee). *Id.* The Parties met and conferred, on February 19 and 23 regarding the impact of the Court's Order. Pursuant to the Defendants' proposed language in paragraph 7 of the proposed Order, Defendants maintain the parties should be entitled to select replacement bellwether plaintiffs for some or all of these, given the dismissal of almost a third of the claims, and the fact that re-pled claims would likely not be representative of the MDL at large.

**5.    Hetero Discovery Status**

Counsel for Defendants Hetero Drugs Ltd. and Hetero Labs Ltd. (collectively, "HLL") are engaged in ongoing discussions with Plaintiffs regarding alleged deficiencies in HLL's document productions. Counsel for HLL has met and conferred with Plaintiffs on February 10, February 18,

DuaneMorris

February 24, 2021
Page 6

and February 22. The Parties' meet and confers have been productive, and Plaintiffs have identified the specific issues they seek HLL to cure. Thus far, HLL has re-produced its Discovery Production Index and has produced an affidavit as requested by Plaintiffs, and also anticipates transmitting additional documents requested, as well as an updated privilege log this week. Furthermore, counsel for HLL has engaged in extensive email communications with Plaintiffs to address specific questions with respect to document metadata. As of the February 22, 2021 meet and confer, the Parties have neared agreement with respect to resolving Plaintiffs' issues regarding HLL's document production metadata. HLL is continuing to work in good faith with Plaintiffs to resolve the remaining issues identified by Plaintiffs. HLL do not believe this issue requires judicial intervention at this time.

**6.    Camber Deposition Status**

Plaintiffs' counsel sent a proposed Notice to Camber's counsel on Saturday February 20, 2021 along with a request to approve the finalization of the Notice, the name of the deponent and dates of availability before Wednesday's conference. Camber's counsel intends on providing the name of the witness and the dates of availability before Wednesday's conference as so requested.

**7.    Aurobindo Discovery Status**

The parties have continued to meet and confer since the status conference on February 17, 2021. The parties reached an agreement on the Plaintiffs' request for hit-count information. Aurobindo Pharma USA, Inc. and Aurolife Pharma LLC agreed to provide their hit-counts per custodian by the end of this week. The parties have also had several productive meet-and-confers regarding Plaintiffs' request for Aurobindo Pharma Ltd. to agree to a list of custodians.

Aurobindo Pharma Ltd. is located in India. They have maintained throughout this litigation that personal jurisdiction is lacking and have preserved that defense. They have also joined other

DuaneMorris

February 24, 2021
Page 7

defendants in requesting leave to brief the issue of personal jurisdiction on multiple occasions. The Court denied those requests. The Court has entered several Orders preserving jurisdictional defenses and acknowledging no defendant waives personal jurisdiction in this litigation, including but not limited to Case Management Order ("CMO") No. 2 [Dkt. 72], CMO-3 [Dkt. 76], CMO-19 [Dkt. 376], the Court's Orders dated January 30, 2020 [Dkt. 360], and the Addendum to CMO-20 via the Court's Order dated December 30, 2020 [*See* Dkt. 701 at Exhibit 2, "Supplemental Protocols Governing Depositions of Indian Nationals Residing in India"].

In July 2020, Plaintiffs reached out to counsel for Aurobindo to discuss custodians. Counsel for Aurobindo emailed a proposed list of five (5) custodians to Plaintiffs' counsel on August 25, 2020. Plaintiffs did not respond and did not raise this again until February 2, 2021. Since then, the parties have since had several productive meet-and-confers. Aurobindo asked Plaintiffs if they would agree to sign a Stipulation regarding preservation of all jurisdictional defenses if Aurobindo agreed to a list of custodians. On Monday, February 22, 2021, defense counsel sent Plaintiffs a proposed draft of the Stipulation.

The parties have reached an agreement in principle that all personal jurisdictional defenses are preserved and Aurobindo Pharma Ltd. will agree to a list of custodians that covers the relevant time period in the Court's Order dated November 20, 2019 [Dkt. 303]. Plaintiffs have no objection to the terms of the Stipulation except they would like Aurobindo to agree to more custodians.

The Aurobindo parties have agreed to a total of 23 custodians, including 16 from the U.S. entities, which have already been produced to Plaintiffs except for one that the parties just agreed to, and 7 from the India entity including:

| Custodians Offered by Aurobindo Pharma Ltd. | Department |
|---|---|

DuaneMorris

February 24, 2021
Page 8

| M V Rama Krishna | API Unit XI Operations Head |
|---|---|
| Sarath kumar Kamavarapu | API Unit XI Quality In charge |
| Hanumanthu Penchalaiah | Global Pharmacovigilance Head |
| Pravatkumar Tripathy | Unit 7 Quality In-charge |
| N Somasundaram | Unit 7 Operations Head |
| Mahesh B Shinde | Unit 7 Quality Head |
| Mallikarjuna Reddy Kurre | Unit 7 Operations Head |
| Dr. Srinivas K. Rama | API Unit XI Quality Head |

Plaintiffs have agreed to those 7 custodians, and would like to add:

| Custodians Proposed by Plaintiffs | Department |
|---|---|
| MV Subba Raju | Manufacturing Department |
| T Rajasekhar Reddy | Manufacturing Department |
| P. Sateesh Kumar | Manufacturing, Science, and Technology |
| GV Srinivasa Sudhakar Varma | Engineering & Utility |
| N Somasundaram | Quality Control |
| A Srinivasa Reddy | Warehouse |
| R Srinivasa Rao | Quality Assurance |
| A Srikanth | Quality Assurance |
| Anyone responsible for interfacing with Lantech Pharmaceuticals | |

Aurobindo's list includes the heads of quality and manufacturing at each relevant facility. Aurobindo objects to the additional custodians proposed by the Plaintiffs on grounds that their production would be unduly burdensome and duplicative given that Aurobindo has already reviewed well over 1 million documents and have now agreed to review and produce 7 more custodial files, particularly in light of Plaintiffs' delay in responding to Aurobindo's proposed list of custodians offered in August, 2020.

**8.      Privilege Log Deficiencies Status**

This issue currently before this Court is whether the Manufacturing Defendants should be required to produce to Plaintiffs' counsel a detailed legend or cast of characters setting forth the name, title, department, and email address of not just the attorneys involved with the privileged communications referenced on the Manufacturing Defendants' respective privilege logs

February 24, 2021
Page 9

**Duane**Morris

(collectively the "Privilege Logs"), but also thousands of other non-attorney individuals whose names appear on the Manufacturing Defendants' respective privilege logs. Plaintiffs submitted their position on this issue in their February 11, 2021 letter to Your Honor ("Plaintiffs' February 11 Letter" or "Pls. Feb. 11 Ltr.") (Dkt. 865), and the Manufacturing Defendants submitted their combined response to this letter on February 19, 2021 ("Manufacturing Defendants' February 19 Letter" or "Mfg. Dfs. Feb. 19 Ltr.") (Dkt. 941). Plaintiffs Responded by letter on February 22, 2021 ("Plaintiffs' February 22 Letter")." (Dkt. 945).

In the Manufacturing Defendants' February 19 Letter (Dkt. 941), we explained the agreed upon terms of the stipulated ESI Protocol, discussed relevant New Jersey law on the issue now before the Court, and provided summaries of our respective production of documents, submission of privilege logs and status of our respective discussions with Plaintiffs' counsel. Plaintiffs' February 22 Letter does not address the controlling law cited by the Manufacturing Defendants, misstates the requirements of the ESI protocol, misrepresents the status of the parties' discussions relating to privilege logs, and makes baseless claims that the Manufacturing Defendants are intentionally dragging their feet in terms of producing documents and submitting intentionally misleading and deceptive privilege logs. Plaintiffs also improperly attempt to expand the issue now before Your Honor to include Plaintiffs' substantive challenges to the Manufacturing Defendants' privilege log descriptions and make unreasonable demands regarding the turnaround time for complying with their challenges. The Manufacturing Defendants' responses are set forth below.

**(a)        The Law Supports the Manufacturing Defendants' Position.**

In our February 19 Letter, the Manufacturing Defendants set forth relevant New Jersey law supporting our position that the Privilege Logs comply with the requirements of New Jersey law.

DuaneMorris

February 24, 2021
Page 10

The Manufacturing Defendants also distinguished the various cases cited by Plaintiffs in their February 11 Letter. Dkt. 941 at 15-18. While Plaintiffs assert that "settled law in this Circuit" requires the Manufacturing Defendants' Privilege Logs to "contain the information needed to 'enable other parties to assess the claim' of privilege, Dkt. 865 at 2, Plaintiffs do not cite to a single case where a legend such as the one being sought in this case was ordered by a Court.[1] Instead, the law requires what the Manufacturing Defendants did in this case – provide information regarding the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document, and the privilege or privileges asserted." Dkt. 941 at 15 (citing Fed. R. Civ. P. 26(b)(5)(a)) and *id.* at 17-18 (citing *Torres v. Kuzniasz*, *Wei v. Bodner*, and *Jaroslawicz v. Engelhard Corp*.).

**(b)    The ESI Protocol Does Not Require the Information That Plaintiffs Now Seek.**

As noted in our February 19 Letter, counsel for the Parties in this case negotiated at length the terms of the ESI Protocol governing document productions and privilege logs to be used in this litigation. *Id.* at 2-4. This ESI Protocol went into effect on June 19, 2019, approximately 21 months ago. Based on the express agreements reached by the parties in this ESI Protocol, the Manufacturing Defendants began gathering, reviewing, coding, and producing their electronic documents and providing their Privilege Logs that complied with the Section V of this protocol. *Id.* at 5-14. Plaintiffs now claim that all of the Manufacturing Defendants' privilege logs must contain more information than the 22 categories of data expressly agreed upon by the parties in

---

[1] While Plaintiffs may have received this type of information from Defendants in other cases, it appears this was through the agreement of parties and not required under the law or ordered by the Court. No such agreement exists here.

**Duane**Morris

February 24, 2021
Page 11

the ESI Protocol and assert that they have "moved quickly" to request an order expediting this change to the agreed upon process. Dkt. 945 at 2-3.

Tellingly, Plaintiffs offer no explanation as to why they did not seek to include the requested fields of information when the ESI Protocol was first negotiated in 2019 if, as they claim, it is a standard practice in New Jersey to provide the additional fields of information they now seek. Plaintiffs also fail to offer any explanation as to why they made no effort to seek a modification to the terms of Section V of the ESI Protocol until months after receiving the first privilege log from Aurobindo in April 2020, Dkt. 941 at 6, 11, nearly a year ago, and months after receiving the privilege logs from ZHP and Teva. Dkt. 941 at 10. Thus, Plaintiffs' suggestion that they have "moved quickly" to seek the new categories of information of the Manufacturing Defendants' Privilege Logs is without merit. And, as explained below, their efforts to rewrite the ESI Protocol at this late stage of the Manufacturing Defendants' ESI production is improper and will impose an undue burden and expense on the Manufacturing Defendants that is disproportionate to the needs of these cases.

**(c)    Plaintiffs Misrepresent the Status, Timing and Content of Their Privilege Log Discussions with Each of the Manufacturing Defendants.**

As explained in the Manufacturing Defendants' February 19 Letter, Plaintiffs' approach to the timing and content of their discussions with each defendant has differed in material ways. *Id.* at 5-14. Although Plaintiffs assert in their February 22 Letter that they have requested this information at "three consecutive conferences" and Defendants' claims that this is a new issue "are inaccurate," *see* Dkt. 945 at 1, these assertions do not reflect the reality of Plaintiffs' actual communications with the Manufacturing Defendants since both the timing and substance of these communications with each defendant have varied widely.

February 24, 2021
Page 12

**DuaneMorris**

With respect to the timing of Plaintiffs' communications with each defendant, Plaintiffs elected to raise deficiencies with Aurobindo's privilege log in October 2020, approximately six months after this privilege log was first served. Dkt. 941 at 11. Both Teva and ZHP produced their respective privilege logs on December 30, 2020. *Id.* at 6, 10. Plaintiffs did not, however, initiate discussions with Teva or ZHP regarding their respective privilege logs until February 10, 2021, almost six weeks later and the day before they submitted their February 11 Letter to Your Honor. *Id.* at 8, 10. Plaintiffs waited to initiate discussions with Torrent until February 17, 2021, two days after the Court's February 15, 2021 deadline and the day of the parties' last conference with the Court. *Id.* at 12. And, as noted above, Plaintiffs have not yet specifically challenged Torrent's privilege log submitted to Plaintiff on January 4, 2021. *Id.*

The Manufacturing Defendants have been consistent in their responses to Plaintiffs regarding their untimely request to modify their respective privilege logs. All of the Manufacturing Defendants have taken the position that, at this late stage of the discovery process, is it neither appropriate nor proportional to the needs of these cases, to require them to provide a legend for non-attorneys, especially when their records collection vendors are advising them that this would require a manual re-review of documents previously coded pursuant to the terms of the ESI Protocol. They have, however, agreed to provide the requested information for in-house and outside counsel to address Plaintiffs' purported concern that they need "full information" to enable them to assess the Manufacturing Defendants' privilege claims. Dkt. 945 at 2-3. Such a reasonable compromise was expressly reached between Plaintiffs and Mylan, *see* Dkt. 941 at 13, and Plaintiffs have offered no reasonably basis for modifying this agreement with Mylan now or imposing a different obligation on the other Manufacturing Defendants. *Id.* at 13.

DuaneMorris

February 24, 2021
Page 13

> **(d)** **Plaintiffs' Suggestion that the Manufacturing Defendants Are Not Producing Their Responsive Documents in Good Faith and Are Submitting Intentionally Misleading and Deceptive Privilege Logs Are Baseless.**

Plaintiffs' suggestions that the Manufacturing Defendants are not producing their responsive documents in good faith and are submitting intentionally misleading and deceptive privilege logs are offensive and baseless. Dkt. 945 at 2. It defies credulity for Plaintiffs to argue that the Manufacturing Defendants "would prefer to obstruct and try to wear down and distract Plaintiffs and the Court in the hope that the privilege log issue will go away or be forgotten," *see id.,* when all of the Manufacturing Defendants have submitted their privilege logs within the time periods required by this Court's orders and complied with the requirements of the Federal Rules of Civil Procedure,  New Jersey law construing these rules, and the ESI protocol. Likewise, it is highly inappropriate for Plaintiffs to suggest that if the Manufacturing Defendants "had put the same effort into their privilege review and privilege logs as they have expended in their effort to obstruct Plaintiffs' ability to quickly assert informed challenges that the Court can fairly evaluate, this process would be far along" when Plaintiffs waited several weeks, and in some instances and months, to raise their concerns regarding the Manufacturing Defendants' respective privilege logs. *Id.* at 4. And finally, Plaintiffs' **speculation** regarding the propriety of the number of privilege claims asserted on the Privilege Logs and that it is "virtually certain that forcing the rest of the [Manufacturing] Defendants to expeditiously provide the cast of characters and fulsome document descriptions will trigger waves of de-designation and production of improperly withheld documents," ignores the ***actual evidence*** submitted by the Manufacturing Defendants regarding the time-intensive and costly nature of a manual re-review of the defendants' privilege logs and the inability to conduct such a review in a period of just seven days, as Plaintiffs have requested. *Cf.* Defs Feb. 19 Ltr. (Dkt. 941) at 8-12 *with* Pls. Feb. 22 Ltr. (Dkt. 945) at 4-5. Indeed, the process

February 24, 2021
Page 14

**DuaneMorris**

of modifying the privilege logs, if ordered by Your Honor, cannot be reasonably completed in less than a period of weeks.

> **(e)    Plaintiffs Have Improperly Attempted to Expand the Scope of the Relief Requested from This Court Without First Conferring with Each of the Manufacturing Defendants.**

In their February 22 Letter, Plaintiffs appear to be expanding the scope of the relief that they sought in their February 11 letter and the February 17 conference with Your Honor. Plaintiffs now appear to be seeking not only a legend containing additional categories of information relating to attorneys and non-attorneys, but also ask Your Honor to direct the Manufacturing Defendants "to remedy the terse, imprecise, unrevealing descriptions of the substance and basis for each assertion of privilege." Dkt. 945 at 2; *see also id.* at 4. Plaintiffs' effort to expand the scope of the relief originally sought in their February 11 Letter and discussed during the February 17 conference is improper since, as noted above and in the Manufacturing Defendants' February 19 Letter, the **only** defendant with whom Plaintiffs have had a meet and confer discussion regarding the substance of the descriptions contained in its privilege log is Mylan. Plaintiffs have not, to date, attempted to meet and confer with any of the other Manufacturing Defendants regarding the substance of their privilege assertions and this request for relief is therefore not ripe for consideration at this time. *See* Court L.R. 37 ("Counsel shall confer to resolve any discovery dispute."); *see also* 2/03/2021 Hrg. Tr. at 45:25:24-46:2 ("What I would expect is that you would try to resolve it between yourselves…if you can't then you tee it up for a resolution by me.")

> **(f)    The Relief Sought by Plaintiffs is Unreasonable.**

Given the facts set forth above, Plaintiffs' request that all of the Manufacturing Defendants not only provide legends containing the additional requested information regarding both attorneys and non-attorneys whose names appear on the Privilege Logs and that Defendants provide

DuaneMorris

February 24, 2021
Page 15

"substantive, precise descriptions of the content of each communication, and the basis for the assertion of privilege" sufficient to enable Plaintiffs, from their subjective perspective, to assess what they characterize as a "massive number of privilege claims at issue," *see* Dkt. 945 at 4-5, is unreasonable and not warranted by Rule 37 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(b)(2) (A) (court may issue "just orders" relating to discovery disputes). Plaintiffs have not even communicated with many of the Manufacturing Defendants regarding their substantive challenges, so Plaintiffs' demand that all of the Manufacturing Defendants produce logs within 7 days or have its privilege assertions stricken is unreasonable on its face. Likewise, Plaintiffs' suggestion that all of the Manufacturing Defendants should be forced to conduct a manual review of their respective privilege logs to comply Plaintiffs' belated request for further identifying information relating to not just attorneys, but also non-attorneys, is inconsistent with the express agreement reached with Mylan and does not justify the burden and expense of doing and is therefore disproportionate to the needs of these cases.

9.    **ZHP Protective Order Motion Status**

The ZHP Parties' Motion for Protective Order (the "Motion") to prevent the depositions of three employees, Yuelin Hu, Fangyeng (Xavier) Tang, and Mi (Karen) Xu, is fully briefed. *See* Dkt. Nos. 765, 826, and 858. During last week's conference with the Court, Judge Vanaskie explained that he would likely be ruling on the briefing, and would request argument if he deemed it necessary. 2/17/21 Hg. Tr. 6:11-17. Should the Court so desire, the ZHP Parties will be prepared to argue the following points in support of the Motion.

Although still not fully developed, the present record demonstrates that Ms. Hu and Mr. Tang, two lower-level employees, are not "managing agents" under Rule 30(b)(1), and that their testimony, and that of Ms. Xu, would be unreasonably duplicative, cumulative, and burdensome,

DuaneMorris

February 24, 2021
Page 16

particularly given (1) the ZHP's Parties' production of 15 other witnesses (more than any other defendant), including the supervisors of Ms. Hu, Mr. Tang, and Ms. Xu, who will provide fact testimony and testimony on all 59 topics in Plaintiffs' 30(b)(6) notice, including those that overlap with the job responsibilities of Ms. Hu, Mr. Tang, and Ms. Xu, and (2) the health risks and quarantine requirements resulting from COVID-19 to which these witnesses would be exposed in having to travel from China to Hong Kong or another locale for their deposition.

In the alternative, the Court should grant the Motion, without prejudice to Plaintiffs to demonstrate good cause to take the depositions of Ms. Hu, Mr. Tang, and Ms. Xu after taking the 15 agreed-upon ZHP Party depositions.

**10.    Plaintiff Fact Sheets/Show Cause Requests**

**(a)    Plaintiff Theodore Keller's Motion to Reconsider Dismissal for Failure to Complete PFS**

On February 9, 2021 Plaintiff Theodore Keller filed a motion for reconsideration of this court's January 27, 2021 order dismissing with prejudice plaintiff's complaint for failure to complete a Plaintiff Fact Sheet. Pursuant to this court's directives, the Parties have met and conferred regarding plaintiff's attempts to complete his fact sheet, but core deficiencies remain unresolved. It is the defendants' position that the motion for reconsideration should be denied and plaintiff's case remain dismissed with prejudice for failure to substantially complete a plaintiff fact sheet.

| | Plaintiff | Civil Action No. | Law Firm | Core Deficiencies |
|---|---|---|---|---|
| 1. | Keller, Theodore | 1:20-cv-06918 | Shrager, Spivey, & Sachs | <u>III.F.1 – III.F.4.a (Wage Loss)</u> - Still failed to provide complete responses the requests relating to the alleged wage loss claim for the requests regarding: Plaintiff's annual gross income derived from his employment for each of the five years prior to the injury or condition Plaintiff claims was caused by Valsartan use; |

February 24, 2021
Page 17



|  |  |  |  | Plaintiff's annual gross income for every year following the injury or condition Plaintiff claims was caused by Valsartan use; and the total amount of income Plaintiff claims he lost as a result of any condition Plaintiff claims was caused by Valsartan use.<br><br>XI.A.1 (Health Care Authorizations) - No health care authorizations were produced for: Dr. Meribeth (Pathologist); Larry Nickel, MD (Radiologist); Memorial Health System; Colorado Springs Radiologists, PC. Please produce properly executed and undated health care authorizations for each of the aforesaid health care providers, treating facilities, and pharmacies.<br><br>XI.B.2 and X.B.10 (Pharmacy Records) - Failed to produce pharmacy records for the identified pharmacy: Walgreens.<br><br>XI.B.18 (Billing Records) - Plaintiff stated in the PFS that he is still awaiting billing records from providers. Please produce the additional billing records as they become available. |
|--|--|--|--|--|

**(b)     Cases Addressed at the January 27, 2021 Case Management Conference:**

Defendants note that the Court issued four show cause orders returnable at the February

24, 2021 Case Management Conference.

These four cases remain subject to an order to show cause at the February 24, 2021 Case

Management Conference for failure to substantially complete a PFS:

*[remainder of page left intentionally blank – see chart on page 18]*

DuaneMorris

February 24, 2021
Page 18

| | Plaintiff | Civil Action No. | Law Firm | Core Deficiencies |
|---|---|---|---|---|
| 1. | Delgado Riffenburg, Deborah | 1:20-cv-02133 | Watts Guerra, LLP | II.E. Military Service- unanswered<br><br>II.F. Worker's Compensation and Disability Claims-unanswered<br><br>II.G. Life Insurance-unanswered<br><br>II.H. Other lawsuits- unanswered<br><br>II.I. Convictions- unanswered<br><br>II.K. Bankruptcy- unanswered<br><br>III.A.1.a. Hypertension- unanswered<br><br>III.C. 1-6. Non-cancer injuries claimed-Plaintiff will supplement<br><br>III.D. Injuries attributed to Valsartan that persist- Plaintiff will supplement<br><br>III.E. Emotional injury- unanswered, Plaintiff will supplement<br><br>IV. D. Insurance Carriers- Plaintiff will supplement<br><br>V.G. Condition Information- Plaintiff will supplement<br><br>VI.B. Non-prescription drugs- Plaintiff will supplement<br><br>VIII. Family History- Plaintiff will supplement<br><br>XI.A - Failed to provide properly signed, undated, and completed authorizations. |
| 2. | Babin, Amanda | 19-cv-14649 | Damon J. Baldone and Associates | I.C.10 Failed to complete information.<br><br>Start and end date of use for all valsartan products listed. |

February 24, 2021
Page 19

DuaneMorris

| | | | | I.C.11 Plaintiff appears to have started listing information for 2 more products. If so, please fill in all the information as required, including name of product, dosage, and start and end dates.<br><br>III.G  Incomplete medical expense information.<br><br>IV.E. Failed to respond – other witnesses.<br><br>V.G. Failed to provide required information for each condition.<br><br>XI.A. 1, 6, 7 Failed to provide properly signed, undated, and completed authorization.<br><br>XI.B.18-19 Failed to respond. |
|---|---|---|---|---|
| 3. | Hill, Teddy | 20-cv-14278 | Farr, Farr, Emerich, Hackett, Carr & Holmes P.A. | No PFS filed |
| 4. | Trowbridge, Carolyn | 20-CV-08614 | Hollis Law Firm, P.A. | No PFS filed |

**(c)      Second Listing Cases – Order to Show Cause Requested:**

Pursuant to CMO 16 (Dkt. 249), the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. Each of these 8 cases were previously listed on the agenda for a prior CMC. Defendants provided a list including these cases and identified deficiencies to Plaintiffs' leadership counsel for distribution on February 16, 2021, met and conferred with Plaintiffs' counsel on February 18, 2021, and have been available for further meet and confers as needed. Accordingly, Defendants request that an Order to Show Cause be entered in each of these cases, returnable at the next case management conference, as to why the case should not be dismissed.

DuaneMorris

February 24, 2021
Page 20

Defense counsel will be prepared to address the individual issues with respect to each of

these cases, to the extent necessary, during the February 24, 2021 Case Management Conference:

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Notice Sent | Prior Agenda Listing |
|---|---|---|---|---|---|---|
| 1. | Patterson, Linda | 20-cv-14605 | Watts Guerra | Must send PDFs of authorizations. It appears they are image files and some areas are blurred. | 12/31/20 | January |
| 2. | Gibson, James | 20-cv-2875 | Douglas & London | Failed to file amended fact sheet or respond to Deficiency Notice.<br><br>Deficiencies include, but are not limited to, failure to produce records showing product use, failure to provide names and addresses for physicians prescribing valsartan, failure to produce records showing injury, failure to provide dosage and frequency for medications used, failure to describe treatment and outcome of treatment for hypertension, and failure to provide any authorizations. | 12/28/20 | January |
| 3. | Betz, Raymond | 1:20-cv-6471 | Messa & Associates | Please see Deficiency letter for numerous deficiencies.<br><br>No authorizations provided. | 10/8/20 | January |
| 4. | Medrano, Rene | 20-cv-12099 | Fears Nachawati | I.C.1  Plaintiff produced pharmacy records from Mid Valley Pharmacy that demonstrate use of Amlodipine, however Plaintiff has identified use of Amlodipine/Valsartan in the PFS. Please produce proof of use of the identified Amlodipine/Valsartan product. Also, the produced pharmacy records do not include NDC codes. Please produce pharmacy records or other documentation that includes NDC codes. In addition, an authorization for Mid Valley Pharmacy was not provided.<br><br>I.C.4  Failed to provide the NDC Code for the second identified product. | 12/10/20 | January |

DuaneMorris

February 24, 2021
Page 21

| | | | | I.D.1   Plaintiff did not produce medical records for the following identified health care provider: Dr. Habib Ghaddar. Please produce complete medical records for the foregoing identified health care provider. | | |
| | | | | II.D.4.c   Failed to provide the dates of exposure in Plaintiff's diet including red and/or processed meats. Plaintiff's answer is cut off on the PFS form in the Third Amended PFS. Please provide the complete answer and include a supplemental page if the answer will not fit on the PFS form. | | |
| | | | | III.G.a – III.G.c   Plaintiff failed to provide substantive responses to the requests regarding the medical expenses he is seeking recovery for. Plaintiff indicated in the PFS that billing records have been requested. Please provide the medical expense information and the billing records as they become available. | | |
| | | | | XI.A.1   Failed to provide healthcare authorizations for the following: Dr. Ricardo Lerma; Benjamin Salinas; Pamela Lopez FNP; Dr. David E. Yardley; Dr. Christopher Wood; Dr. Debra Woloski; Dr. Habib Ghaddar; Mid Valley Pharmacy; Walgreens; Walmart. | | |
| | | | | XI.A.7   Plaintiff produced a mental health records authorization for Jose Igoa, MD, however the produced mental health records authorization is dated. Please produce a properly executed and undated mental health records authorization for Jose Igoa, MD. | | |
| | | | | XI.B.2   No pharmacy records were produced for the following identified pharmacies: Walgreens or Walmart. | | |
| | | | | XI.B.9   No photographs of the packaging or labeling for the identified Amlodipine Valsartan product was produced. Plaintiff only produced photographs of labeling for a Losartan product. | | |

February 24, 2021
Page 22

DuaneMorris

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | XI.B.18   No medical expense records were produced. Plaintiff indicated in the PFS that billing records have been requested. Please produce the billing records as they become available. | | |
| 5. | Greenleaf, Robert | 20-cv-8785 | Hollis Law | No PFS Filed | PFS Due - 11/28/20 | January |
| 6. | Jackson, Rickey | 20-cv-14927 | Levin Papantonio | No PFS Filed | PFS Due - 12/22/20 | January |
| 7. | Newcomb, Sonja | 20-cv-10274 | Levin Papantonio | No PFS Filed | PFS Due - 8/11/20 | January |
| 8. | Crowe, Robert | 20-cv-08804 | Wiggins, Childs | *See* Deficiency Notice. Largely blank PFS. No records demonstrating diagnosis or pharmacy authorization. | 11/30/20 | January |

**(d)    First Listing Cases – Remaining Core Deficiencies:**

The following Plaintiff Fact Sheets contains core deficiencies which remain unresolved.
Defendants provided a list including these cases and identified deficiencies to Plaintiffs on
February 16, 2021 and met and conferred with Plaintiffs' counsel on February 18, 2021 and have
been available for further meet and confers as needed. This is the first time these cases have been
listed on this agenda. Accordingly, Defendants are not requesting orders to show cause with
respect to any of the below cases at this time and will continue to meet and confer to resolve these
deficiencies.

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Notice Sent |
|---|---|---|---|---|---|
| 1. | Dufrene, Lana | 19-cv-15633 | Gainsburgh Benjamin | Authorizations are deficient, not filled out to particular providers. | 8/18/20 |

February 24, 2021
Page 23

DuaneMorris

| 2. | Walsh, Fannie | 20-cv-11836 | Stark & Stark | Largely blank PFS, missing authorizations | 2/4/21 |
|---|---|---|---|---|---|
| 3. | McReynolds, Samuel | 20-cv-13881 | Oliver Law Group P.C. | I.C.4   The NDC code provided by the Plaintiff for the first listed product (43547-315-09) does not correspond to the identified labeler/distributor. Also, the NDC code provided by the Plaintiff provided by the Plaintiff for the second listed product (68180-102-09) does not correspond to the identified manufacturer or labeler/distributor.<br><br>I.D.1   Plaintiff only produced three pages of medical records. Please produce complete medical records in connection with the alleged injury claimed by the Plaintiff in this case.<br><br>III.A.1.b   Failed to respond to the request to state how the Plaintiff has managed or treated his hypertension, if he has discontinued Valsartan.<br><br>III.B.4.a   Failed to respond to the request to identify each person who gave oral instructions to the Plaintiff about Valsartan and describe what he/she told the Plaintiff.<br><br>III.G.a-III.G.c   Plaintiff indicated that additional billing records have been requested. No billing records from the health care providers themselves have been produced, only an insurance summary of claims reflecting medical expenses has been provided. Additionally, the produced insurance summary contains medical expenses that are not reflected in the PFS and, as a result, it is unclear whether Plaintiff is intending to assert said medical expenses in connection with the alleged injury(ies) of this lawsuit or not.<br><br>IV.A.3   Failed to provide the approximate start date for Plaintiff's treatment with the following identified healthcare provider: | 1/6/21 |

February 24, 2021
Page 24

DuaneMorris

Dr. Constantine Farmakidis. Also, Plaintiff did not provide the approximate dates of his treatment with Dr. Kevin Koch.

IV.A.4   Failed to provide the reason for consultation with the following identified healthcare providers: Dr. Abdulraheem Qasem; Dr. Jeremy Cravens; or Dr. Constantine Farmakidis, instead only the type of provider was identified in the PFS, specifically "colorectal team."

V.G.3   Failed to provide the approximate date of onset for the following identified condition: diabetes.

VI.A.1-VI.A.5   "None" is an insufficient answer to the requests to provide any substantive information regarding the prescription medications taken by Plaintiff on a regular basis for more than three consecutive months in the ten years prior to when Plaintiff first took Valsartan products.The produced pharmacy records contain usage of other medications during the referenced time period.

VI.A.3.b – VI.A.4.c   Plaintiff failed to respond to the requests to provide information regarding Plaintiff's cancer diagnosis that he does not claim resulted from Valsartan use, including: the type of cancer; the date of the cancer diagnosis; the primary oncologist; or the treatment facility.

XI.B.2   Plaintiff only produced three pages of medical records. Please produce complete medical records in relation to the alleged injury.

XI.B.18  No billing records from the health care providers themselves have been produced, only an insurance summary of

February 24, 2021
Page 25



| | | | | claims reflecting medical expenses has been provided. | |
|---|---|---|---|---|---|
| 4. | Thompson, Donald | 20-cv-07988 | Douglas & London | No authorizations, medical records, medical expenses, pharmacy records, or employment records. | 2/10/21 |
| 5. | Little, David | 20-cv-08571 | Kanner & Whiteley | Lacking complete total of medical expenses | 12/07/21 |
| 6. | Selma, Lindsey | 20-cv-07152 | Levin Papantonio | I. D. 7 Failed to respond<br>III. G. a-c Failed to provide medical information<br><br>XI. A. 1 Please provide authorizations for pharmacy providers | 1/25/21 |
| 7. | Thompson, James | 20-cv-114554 | Arnold & Itkin, LLP | III.G.c  Failed to respond.<br><br>Expenses for labs, CT of chest, and colon surgery incurred at Henry Ford Hospital.<br><br>VIII.A.4  Failed to respond.<br><br>Dates of cancer diagnoses for mother and father. | 01/05/21 |
| 8. | Hoppus, Jesse | 20-cv-14967 | Schneider Hammers LLC | III.G.a   Failed to respond.<br><br>Medical expenses.<br><br>XI.A.1, 2, 3, 6        Failed to provide properly signed, undated, and completed authorization. | 01/06/21 |
| 9. | Stone, Alan | 20-cv-15654 | Watts Guerra LLP | I.C.3    Failed to respond.<br><br>Dosage for Valsartan prescribed by Drs. Wood, Riaz, and Garcia.<br><br>I.C.10  Failed to respond.<br><br>Start and end date for Valsartan prescribed by Drs. Wood, Riaz, and Garcia.<br><br>I.C.14  Failed to respond. | 01/12/21 |

DuaneMorris

| | | | | Name and address of pharmacy(ies) that dispensed Valsartan prescribed by Drs. Riaz and Garcia. III.A.1.a  Failed to respond. When were you first diagnosed with hypertension? III.G.c   Failed to respond. Medical expenses for all providers listed. V.G.3   Failed to respond. Date of first hypertension diagnosis. | |
|---|---|---|---|---|---|
| 10. | Flores, Luis | 20-cv-15600 | Watts Guerra LLP | II.A.2.c  Failed to provide complete information. Current address; PO Box is insufficient. III.A.1.a  Failed to respond. When were you first diagnosed with hypertension? III.G     Failed to respond. Medical expenses for South west Methodist Hospital. V.G.4    Failed to respond. Outcome of hypertension treatment. VIII.A.5  Failed to respond. Dates of cancer diagnosis for all family members listed. XII   Failed to provide signed and dated, declaration. Declaration not dated. | 01/12/21 |

DuaneMorris

| 11. | Biggs, Victoria | 20-cv-08737 | Wiggins, Childs, Pantazis, Fisher & Goldfarb | II.H    Failed to respond.<br><br>The state and county in which transvaginal mesh lawsuit was filed.<br>The caption, case name and/or names of adverse parties.<br>The civil action or docket number.<br>Attorney who represented you.<br>Description of the nature of your claim.<br><br>III.G    Failed to respond.<br><br>Section III.G -- Medical expenses.<br><br>III.H.    Failed to respond.<br><br>IV.B.1  Failed to respond.<br><br>Addresses and telephone numbers of treating facilities.<br><br>V.G.4    Failed to provide complete information.<br><br>Outcome of all hypertension treatment.<br><br>VI.A    Failed to respond.<br><br>Name of prescription medication plaintiff used.<br>Healthcare provider(s) that prescribed the medication.<br>Dosage.<br>Name and address of pharmacy.<br><br>XI.A.1  Failed to provide properly signed, undated, and completed authorization.<br><br>XI.A.4  Failed to provide properly signed, undated, and completed authorization.<br><br>XI.A.5  Failed to provide properly signed, undated, and completed authorization.<br><br>XI.A.6  Failed to provide properly signed, undated, and completed authorization. | 12/11/2020 |

February 24, 2021
Page 28

DuaneMorris

| | | | | XI.A.7   Failed to provide properly signed, undated, and completed authorization. | |
|---|---|---|---|---|---|

 

**(e)      First Listing Cases – Failure to File PFS:**

The following plaintiffs have failed to file a Plaintiff Fact Sheet and are beyond the deadline to file. Defendants provided a list including these cases to Plaintiffs on February 16, 2021 and met and conferred with Plaintiffs' counsel on February 18, 2021 and have been available for further meet and confers as needed. This is the first time these cases have been listed on this agenda. Accordingly, Defendants are not requesting orders to show cause with respect to any of the below cases at this time and will continue to meet and confer to resolve these deficiencies.

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | PFS Due (60 days + SFC) |
|---|---|---|---|---|---|
| 1. | Kopp, Daniel | 20-cv-15327 | Levin Papantonio | No PFS Filed | 12/29/20 |
| 2. | Becton, Normal | 20-cv-13752 | Hollis Law Firm | No PFS Filed | 11/30/20 |
| 3. | Osolin, Lillian | 20-cv-15180 | Brown, LLC | No PFS Filed | 1/28/21 |
| 4. | McGuire, Thomas | 20-cv-8692 | Hollis Law Firm | No PFS Filed | 10/27/20 |
| 5. | Righteous, Worikeena | 20-cv-414 | PWB Law Group | No PFS Filed | 06/29/20 |
| 6. | Wilcox, John | 20-CV- 17939 | Babin Law Group | No PFS Filed | 02/02/2020 |
| 7. | Williams, Naomi | 20-CV- 08772 | Levin Papantonio | No PFS Filed | 09/18/2020 |

DuaneMorris

February 24, 2021
Page 29

Respectfully submitted,

*/s/ Seth A. Goldberg*

Seth A. Goldberg

cc:    Adam Slater, Esq. (*via email, for distribution to Plaintiffs' Counsel*)
Jessica Priselac, Esq. (*via email, for distribution to Defendants' Counsel*)
Sarah Johnston, Esq. (*via email*)
Jeffrey Geoppinger, Esq. (*via email*)
Lori G. Cohen, Esq. (*via email*)
Clem C. Trischler, Esq. (*via email*)