# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

IN RE: VALSARTAN,                          :
LOSARTAN, and IRBESARTAN         :    MDL No. 19-2875 (RBK/KW)
PRODUCTS LIABILITY LITIGATION :
                                                         :
**This Order Relates to all Cases**        :

# SPECIAL MASTER ORDER NO. 5

# MARCH 2, 2021

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Plaintiffs have challenged the adequacy of the privilege logs submitted on behalf of several groups of defendants.[1] Counsel have addressed this matter in

---

[1] Specifically, plaintiffs challenge the adequacy of the privilege logs submitted on behalf of the Teva, ZHP, Aurobindo, Torrent, and Mylan defendants.  As to the Torrent defendants, however, plaintiffs failed to challenge the adequacy of their logs within the time frame established by Special Master Order #2.  That order required plaintiffs to identify any purportedly deficient log by February 15, 2021, but plaintiffs did not complain to Torrent about its privilege log until the evening of February 17, 2021.  (Doc. 941, Ex. D.)  Special Master Order #2 informed the parties that, "[a]bsent compelling and necessitous circumstance, the deadlines established by this Order will not be extended."  Plaintiffs did not seek an extension of the deadline for asserting challenges to the privilege logs and have not addressed the untimeliness of its challenge to the Torrent log in their most recent submissions.  Accordingly, the adequacy of Torrent's privilege log will not be addressed in this order, which will be limited to the logs submitted on behalf of the Teva, ZHP, Aurobindo and Mylan defendants.  Plaintiffs and Torrent, of course, remain free to meet and confer with respect to the question of whether withheld documents are, in fact, protected from discovery.

recent bi-monthly conference calls and in letter briefs filed on the docket. (*See* Docs. 865, 941, 945, and 969.)

Plaintiffs contend that the privilege logs are inadequate in two major respects. First, the privilege logs do not identify by job title, department and email address the persons on the logs, *i.e.*, the "cast of characters."[2] And second, the logs purportedly fail to provide "substantive, precise descriptions of the content of each communication, and the basis for the assertion of privilege, sufficient to enable Plaintiffs to assess the . . . privilege claims at issue." (Doc. 945 at 4.)

Defendants respond by first asserting that the privilege logs provide the information required by the applicable law and section V of the court-approved ESI Protocol (Doc. 127 at 15-18), and neither the applicable law nor the Protocol requires provision of a "cast of characters." Second, Defendants assert that their agreement to provide identifying information with respect to those who are lawyers and other legal personnel on the logs should be sufficient to enable an assessment of the privilege claims. Defendants further claim that to provide the requested identifying information for the non-lawyers on the privilege logs would impose a disproportionate burden and expense. Finally, as to the descriptions of the documents withheld from discovery, Defendants argue that, except for Mylan,

---

[2] The Hetero defendants have agreed to provide the "cast of characters" information.

"Plaintiffs have not, to date, attempted to meet and confer with any of the other Manufacturing Defendants regarding the substance of their privilege assertions and this request for relief is therefore not ripe for consideration at this time." (Doc. 969 at 14.)

### I. "CAST OF CHARACTERS"

Plaintiffs assert that the name, title, department, and email address of each person on the privilege logs is "critical foundational information in order to know who was involved in the subject communication and to weigh the claim of privilege against the reality that even if an attorney is on a document, most or all of the communication is often business related and not the provision of or request for privileged legal advice." (Doc. 865 at 4.) This contention is premised upon the well-settled proposition that "not all communications between a client and lawyer are privileged. The attorney client privilege only insulates communications that assist the attorney to formulate and render legal advice." *Peterson v. Bernardi*, 262 F.R.D. 424, 428 (D.N.J. 2009).

While defendants correctly note that the ESI Protocol does not explicitly require production of the "cast of characters" information that plaintiffs are requesting, it does provide, consistent with Fed. R. Civ. P. 26(b)(5)(A), that the information provided on a privilege log be sufficient to "'enable other parties to assess the claim.'" (Doc. 127 at 16.) The information on a privilege log should be

sufficiently complete to "enable the Court to determine such issues as whether the documents were prepared in anticipation of litigation, whether the information was intended to be confidential and whether there has been a waiver of the privileges." *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989). "Such information is also necessary for the party seeking discovery to have a full and fair opportunity to oppose the assertion of privilege." *Id.*

The "cast of characters" information, *i.e.,* the name, title, department, and email address of each person listed on a privilege log, is indeed essential to assessing the claim of attorney-client privilege or work product protection. Such information would enable plaintiffs to understand the position and role of those sending or receiving communications claimed to be exempt from discovery. As noted above, the fact that a lawyer is involved in the communication is not sufficient to establish the existence of the attorney client privilege. And the disclosure of information to some non-lawyers may waive the privilege.

Pointing to the large number of documents claimed to be privileged and the lack of an automated function to provide the "cast of characters" information, defendants assert that the burden and time to produce the information requested is inordinate and disproportionate to the needs of the case. It appears, however, that only Teva faces a substantial burden. It has withheld from discovery thousands of documents. Teva claims that its privilege logs list "almost 3,000 unique

4

individuals." (Doc. 941 at 6.)  Providing the requested information via a manual process for 3,000 persons does indeed present a formidable task, but the sheer number of persons claimed to be within the attorney-client privilege circle, whose circumference should be presumably small, raises concerns that defendants have been too liberal in their privilege designations.  In any event, Teva would have had to assess the position and role of each person in each supposedly privileged communication, and thus should be able to provide the identifying information plaintiffs seek.

As to the other defendants, the burden of providing "cast of character" information does not appear to be substantial.  Plaintiffs have represented that there are less than 50 persons at issue on Aurobindo's logs, and the ZHP logs involve about 200 persons.  As to Mylan, plaintiffs have reached an agreement pursuant to which Mylan will "de-designate the majority of its prior claims to privilege" and "provide the position, department, and email address [for] those who are . . . in-house attorneys, paralegals, and outside counsel on the remaining documents." (Doc. 945 at 2 n.1.)  Plaintiffs and Mylan have further agreed to meet and confer on specific issues with respect to particular withheld documents.[3]  (*Id.*)

---

[3] In light of this agreement, there is no basis for requiring Mylan to provide the "cast of characters" information.  Presumably, the other defendants should be able to offer a similar agreement – de-designation of the majority of withheld documents and a legend identifying the legal personnel – and thereby avoid the burden of identifying scores of individuals.

Accordingly, Teva, Aurobindo, and ZHP will be required to provide the name, title, department, and email address of each person listed on their privilege logs. Because of the time sensitivity of this matter, they will be directed to provide the required information within seven (7) days from the date of this Order.

## II.     SUFFICIENCY OF DOCUMENT DESCRIPTIONS

Plaintiffs have provided examples of what they contend to be insufficiently precise descriptions of withheld documents. ZHP, for instance, withheld documents with the nondescript statement, "'Email requesting legal advice regarding regulatory issues.'" (Doc. 865 at 7.) Teva withheld documents that are described as "'reflecting legal advice regarding marketing issues.'" (*Id.*) Aurobindo withheld documents "reflecting legal advice regarding regulatory issues and litigation communications." (*Id*. at 8.)

To be sure, these descriptions are imprecise and vague. But defendants have represented that plaintiffs have not sought to meet and confer about the descriptions of withheld documents, and plaintiffs have not disputed this representation. The meet and conferral process facilitates resolution of these types of disputes. And the provision of "cast of character" information may also enable a better understanding as to why particular documents are exempt from discovery. In any event, an order requiring "more precise" descriptions of withheld documents is likely only to engender yet more disputes as to whether the amended

6

descriptions are precise enough.  Under these circumstances, it is preferable to require the parties to meet and confer after the "cast of characters" information is provided on amended privilege logs.  Hopefully, the meaningful dialogue contemplated by the meet and confer process will narrow the universe of documents about which there can be a legitimate dispute as to privilege.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Teva, Aurobindo, and ZHP shall provide the name, title, department, and email address of each person listed on their privilege logs within seven (7) days from the date of this Order.

2. Challenges to privilege designations may be made by letter brief addressed to the Special Master only after the involved parties have met and conferred in a good faith effort to resolve the disputes.

s/ Thomas I. Vanaskie
Hon. Thomas I. Vanaskie (Ret.)
Special Master
