**GT GreenbergTraurig**

Lori G. Cohen
Tel 678.553.2385
Fax 678.553.2386
cohenl@gtlaw.com

March 9, 2021

**VIA ECF**

Special Master the Honorable Thomas Vanaskie
Stevens & Lee
1500 Market Street, East Tower
18th Floor
Philadelphia, PA 19103

> Re: **In re Valsartan, Losartan, and Irbesartan Products Liability Litigation**
> **Case No. 1:19-md-02875-RBK-JS**

Dear Special Master Vanaskie:

This letter is to provide Defendants' positions with respect to the topics on the agenda for the Teleconference with the Court on March 10, 2021.

### 1. Bellwether Plaintiff Discovery

Defendants served written discovery requests on the bellwether Plaintiffs, consistent with their understanding that Defendants were entitled to seek additional discovery from Plaintiffs at the bellwether stage. Plaintiffs objected to responding to any of Defendants' requests. The Parties met and conferred regarding this issue, and Plaintiffs expressed that their position is that Defendants are not entitled to propound any global written discovery requests on all bellwether Plaintiffs. Although Defendants disagree with this position, following the meet-and-confer, in the interest of compromise, Defendants agreed to withdraw their written discovery requests. Plaintiffs indicated during the meet-and-confer that they would be open to responding to written discovery requests specific to individual bellwether Plaintiffs. Accordingly, Defendants will serve individualized written discovery requests on the bellwether Plaintiffs as needed.

### 2. Dismissal Procedure for Peripheral Defendants

An agreed upon Protocol for Dismissal of Certain Defendants Without Prejudice and Amended Stipulated Order regarding Dismissal of Peripheral Defendants to Include Losartan and Irbesartan was sent to the Court for entry on March 4, 2021.

### 3. Update on Service of Losartan and Irbesartan Master Complaints

To the DEC's knowledge, all represented defendants have been in touch with Plaintiffs' counsel regarding service of the losartan and irbesartan master complaints. There is no outstanding issue as to the vast majority of defendants: The majority of defendants have agreed to waive formal



Special Master the Honorable Thomas Vanaskie
Page 2

service (and many of those waivers have already been filed); some who were not defendants in the valsartan case have agreed to accept electronic service after initial formal service; and there are a few defendants who were improperly named or who have already been dismissed, and those parties are working with plaintiffs on appropriate stipulations to that effect. One foreign Defendant, Teva Pharmaceutical Industries Ltd., has not agreed to waive formal service through the Hague Convention.

To the extent these service issues are not already resolved by that time, the individual Defendants will be prepared to address them at the March Case Management Conference with Judge Kugler.

### 4. The ZHP Parties' State Secret Log

There is no issue or dispute regarding the ZHP Parties' state secret log that is ripe for resolution by the Court. The parties held their first meet and confer on this issue last week, on Friday, March 5, 2021, and have not completed the meet and confer process. Court involvement now would be premature, and could curtail or derail the meet and confer process that has only just begun.

By way of background, Chinese law imposes criminal and civil penalties on any individual who transmits "state secrets" outside of the country. *See* People's Republic of China State Secrecy Law, at Art. 31 and Criminal Law of the People's Republic of China, at Art. 111. China's state secrecy laws prohibit the disclosure of several categories of information, and violations of state secrecy laws are severely punished. *Id.* ("Whoever…supplies State secrets or intelligence [to] an individual outside the territory of China shall be sentenced to fixed-term imprisonment of not less than five years but not more than 10 years; if the circumstances are especially serious, he shall be sentenced to fixed-term imprisonment of not less than 10 years or life imprisonment")). To that end, every document that was collected in China by the ZHP Parties not only had to be reviewed for responsiveness and privilege, but also had to be reviewed by a lawyer in China to determine whether the document implicated any of China's state secrecy laws. Of the millions of pages reviewed and produced by the ZHP Parties, only 91 responsive documents were found to contain information protected by China's state secrecy laws, and a log containing those documents was provided to Plaintiffs in accordance with the ESI Protocol and Judge Schneider's prior orders.

On Friday's meet and confer, counsel for ZHP requested that the parties go through the relatively small amount of entries on the log to determine whether the parties could come to some type of resolution on each, as Plaintiffs failed to identify specific challenges in advance of the meet and confer. While Plaintiffs' counsel identified a few entries to which they had a specific challenge (and counsel for ZHP agreed to look into those specific challenges), for the vast majority of the log's entries, Plaintiffs did not have a specific challenge or objection. When counsel for ZHP attempted to go through the remaining entries with Plaintiffs' counsel, Plaintiffs' counsel refused to do so and instead took the position that Plaintiffs would not meet and confer on the remaining log entries because all of the remaining documents were relevant based on their review of the log's descriptions. When reminded that the standard for production was not relevancy, but instead the



Special Master the Honorable Thomas Vanaskie
Page 3

multi-factor test set forth by the Supreme Court in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court*, 482 U.S. 522, 546 (1987),[1] Plaintiffs' counsel indicated that they intended to move to strike the entire log during this week's conference with the Court, and would also ask the Court to order that every document on the log be produced immediately. When asked for the rule or precedent that would support such a request for relief, Plaintiffs' counsel could not cite one.

In short, Plaintiffs have failed to complete the meet and confer process on the log and its contents, and have not even attempted to meet and confer with the ZHP Parties on the *Aerospatiale* factors. Accordingly, the ZHP Parties respectfully request that Plaintiffs' request be denied, and that Plaintiffs' counsel be directed to continue to meet and confer with the ZHP Parties.

**5. ZHP's Motion to Seal**

The ZHP Parties' Reply Supporting their Motion to Seal ("Motion to Seal") was filed on Monday, March 8, 2021 (Dkt. 1003). Thus, the Motion to Seal is fully briefed and ripe for the Court's review and decision. That extensive briefing, which was ordered by the Court, is comprehensive of any issues that Plaintiffs have or may raise regarding the ZHP Parties' confidentiality designations. Rather than provide the Court the opportunity to consider that briefing, Plaintiffs have raised the ZHP Parties' confidentiality designations as an issue for this conference. Given that (i) Plaintiffs will not experience any prejudice by the Court's deciding this issue upon review of the parties' briefs, and, if necessary, argument thereon, (ii) the ZHP Parties and Defendants stand to be materially be harmed if this issue rushed to judgment, as opposed to being considered carefully by the Court, and (iii) such consideration is what the Court envisioned when it set a briefing schedule for this issue, the ZHP Parties respectfully request the Court defer this issue until such time as the Court has had an opportunity to review the parties' briefing, and raise any questions with the parties the Court may have.

Since filing the motion – which was necessitated by Plaintiffs refusal to continue meeting and conferring in an attempt to reach a global resolution on the confidentiality issues – the ZHP Parties have met court-ordered deadlines in making confidentiality designations for the transcripts and exhibits of three ZHP Party depositions. See Deposition Protocol (Dkt. 632) and Protective Order (Dkt. 139). In response to these designations, Plaintiffs have propounded blanket objections to the appropriateness of every single designation made by the ZHP Parties and have demanded a

---

[1] Under *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court*, where a party seeks to discover documents that are barred from production by the laws of another country, the Court must consider: "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Aerospatiale*, 482 U.S. at 544 n.28.

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
Terminus 200 Building, 3333 Piedmont Road NE, 25th Floor ■ Atlanta, Georgia 30305 ■ Tel 678.553.2100 ■ Fax 78.553.2212



Special Master the Honorable Thomas Vanaskie
Page 4

rushed meet and confer process in order to prematurely raise this issue with the Court at this conference. In turn, the ZHP Parties have repeatedly requested that (i) in advance of the next meet and confer, Plaintiffs identify specific challenges and explain how they relate to public health issues and (ii) for the parties to agree to suspend any deadlines for repetitive motion practice before the Court has ruled on the pending motion.

Plaintiffs have refused to agree to either request and insist on rushing this issue before the Court, despite the fact that they face absolutely no prejudice by awaiting further clarification on this issue. Plaintiffs can use the designated documents in deposing ZHP Party witnesses, and the Court can resolve the issue, and any outstanding issues involving designated documents, by reviewing the challenged documents in camera. Nor is there is any risk of harm to any individual because the drugs were recalled over two years ago. In contrast to the complete absence of any prejudice to Plaintiffs, the ZHP Parties face significant prejudice if the documents at issue are ordered to be made public, as they contain ZHP Parties' commercially sensitive and proprietary information, which, if disclosed, results in all of the ZHP Parties' direct competitors—the other defendants in this litigation—having access to this information.

The ZHP Parties have agreed to meet and confer on the confidentiality designations, and the only dispute is whether, should those efforts fail, additional time and money should be wasted to file duplicative motions on the same basis during the pendency of the now fully-briefed Motion to Seal. Accordingly, the ZHP Parties request that any deadlines for motions to seal be held in abeyance until the Court issues its decision on the pending Motion to Seal.

6. **Hetero Discovery Issues**

Counsel for Defendants Hetero Drugs Ltd. and Hetero Labs Ltd. (collectively, "HLL") either have resolved or are in the process of resolving each of the items Plaintiffs have raised regarding HLL's document productions. On February 24, 2021, subsequent to the parties' last Case Management Conference, HLL: (1) updated the privilege log and provided the "Cast of Characters"; (2) providing the SOP-related documents Plaintiffs requested; (3) identified custodians and "hit-counts" for custodial documents; and (4) reviewed and de-designating documents identified previously as "Confidential." On March 5, 2021, HLL provided a Supplemental ESI Production encompassing documents for additional custodians as requested by Plaintiffs. On March 5, 2021, HLL further provided an extended metadata and new export file that remedied the metadata deficiencies that Plaintiffs identified in HLL's document productions.

On March 8, 2021, Plaintiffs identified additional documents that Plaintiffs contend are not present in HLL's document productions. Plaintiffs have also raised new general and non-specific objections regarding the sufficiency of HLL's updated privilege log. HLL has informed Plaintiffs that it is investigating the specific document production deficiencies raised by Plaintiffs and will continue to work in good faith to resolve any remaining issues. HLL will also meet and confer with Plaintiffs regarding any remaining issues with the privilege log. HLL has made significant



Special Master the Honorable Thomas Vanaskie
Page 5

progress in resolving many of the issues raised by Plaintiffs, and do not believe any remaining issues require judicial intervention at this time in light of the parties' continued cooperation.

**7. Aurobindo Discovery Issues**

    **I.    Aurobindo Pharma Ltd.'s Custodial Files**

During the February Case Management Conference, the Court ruled that Aurobindo Pharma Ltd. must produce the files for all custodians listed in Plaintiffs' Position Statement [Dkt. 967] by March 12, 2021 and March 19, 2021. An Order was not entered.

On March 4, 2021, counsel for Aurobindo mailed a letter to Plaintiffs' counsel that explained the enormous burden Aurobindo is facing and gave an update on Aurobindo's collection and review of the custodial files followed by a proposal to meet and confer regarding a roll-out production. *See* a copy of defense counsel's letter attached hereto as Exh. A. The parties subsequently met-and-conferred twice on Friday, March 5, 2021.

The parties agreed that Aurobindo will produce the following custodians' files by March 12, 2021:

    1. Dr. Srinivas K. Rama
    2. Mr. Sarath kumar Kamavarapu
    3. Mr. Mahesh B. Shinde
    4. Mr. Pravatkumar Tripathy

The parties further agreed that Aurobindo will produce the following custodians files by April 1, 2021:

    1. Mr. Sanjay Singh
    2. Mr. M V Rama Krishna
    3. Mr. Mallikarjuna Reddy Kurre

In addition, Aurobindo will produce the files of A. Srikanth by April 1. The remaining 11 custodians' files had to be copied to hard drives and mailed overseas to Aurobindo's eDiscovery vendor because Aurobindo was unable to transfer them via an FTP link due to their large size. All of them are currently held in customs. Plaintiffs proposed rolling deadlines for the production of these custodian's files, including March 15, April 1, and April 9. Aurobindo cannot control how long it will take the files to pass through customs. Aurobindo anticipates that it will have more visibility on this next week. Aurobindo respectfully requests the opportunity to file a status report with the Court next week and continue the meet-and-confer process with Plaintiffs' counsel.

    **II.    Plaintiffs' Request For Depositions of Additional Aurobindo Employees and Former Employees Is Overdue and Should be Denied**



Special Master the Honorable Thomas Vanaskie
Page 6

When the parties met and conferred last week, Plaintiffs mentioned, for the first time, that they are seeking depositions of an indefinite number of individuals from the Aurobindo parties in addition to the eight that the parties have already agreed to. They identified Dr. A. Ram Mohan Rao and Venkata Kota but intend to seek more after they review the additional custodial files. The parties already agreed to a court-approved deposition schedule after months of negotiating dates and Plaintiffs should have raised these individuals back then. Presumably, they reviewed Aurobindo's hundreds of thousands of documents produced to date. All of the individuals Plaintiffs seek to depose are identified in those documents. Furthermore, Venkata Kota was a court-approved custodian for Aurobindo Pharma USA, Inc. and Aurolife Pharma LLC. Thus, there is no excuse for Plaintiffs' delayed request for additional depositions. On February 4, 2021, the Court ordered the parties to submit their agreed-upon schedule of depositions no later than February 17, 2021 because all disputes would be addressed "no later than February 22, 2021." Plaintiffs cannot show good cause why they should not be permitted to circumvent that Order. Moreover, the depositions of Mr. Kota and Dr. Rao are protected by the Apex doctrine. Mr. Kota is Aurolife's former Chief Operating Officer and Dr. Rao is Aurobindo Pharma Ltd.'s Chief Quality Officer. Accordingly, Aurobindo respectfully requests an Order precluding Plaintiffs' request for additional depositions. Alternatively, Aurobindo intends to file a motion for a protective order and requests the Court set briefing deadlines.

**III.  Plaintiffs' Request for A List of Non-Custodial Sources of Information Searched Is Overly Burdensome**

Plaintiffs are seeking discovery on discovery that is unnecessary and overly burdensome to Aurobindo given Plaintiffs' inability to identify any non-custodial documents that are missing from the Aurobindo productions which Plaintiffs have had for months. Given Plaintiffs' position that Aurobindo's productions have been small, they must have reviewed the documents by now and should certainly be able to tell defense counsel if they think anything is missing. After exercising due diligence and a good faith effort to ascertain the existence of non-custodial documents responsive to Plaintiffs' requests, Aurobindo made several rolling productions and continues to supplement as necessary. Accordingly, Aurobindo respectfully requests an Order precluding Plaintiffs' request for a list of sources of information searched for non-custodial documents. Alternatively, Aurobindo intends to include this matter in its motion for a protective order and requests the Court set briefing deadlines.

**IV.  Aurobindo Privilege Designations**

Plaintiffs are challenging privilege designations on Aurobindo's Privilege Log. This dispute is not ripe for the Court's resolution because the parties have not yet exhausted the meet and confer process.

On March 2, 2021, the Court issued Special Master Order No. 5. Therein, it was Ordered that Aurobindo, amongst other defendants, was to provide the name, title, and department of each

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
Terminus 200 Building, 3333 Piedmont Road NE, 25th Floor ■ Atlanta, Georgia 30305 ■ Tel 678.553.2100 ■ Fax 78.553.2212



Special Master the Honorable Thomas Vanaskie
Page 7

person listed on their privilege log, within seven (7) days of that Order. Aurobindo will produce this information to Plaintiffs in accordance with SMO-5. Thus, until the parties have met and conferred *after* the "cast of characters" has been disclosed, a ruling on whether the Meridan and ToxRox documents are protected by the attorney-client privilege and/or work product doctrine is premature.

### 8. Mylan Discovery Issues

On Saturday, March 6, 2021, Plaintiffs raised two new discovery issues with Mylan via email correspondence. Neither issue is ripe to be brought before the Court because the parties have not yet had an opportunity to meet and confer pursuant to L.Civ.R. 37.1(a)(1). As a result, any discussion of these issues at this week's Case Management Conference is premature and will result in a waste of time.

First, following the completion of Mylan's production of outstanding custodial documents last week, Plaintiffs wrote to Mylan asserting that Mylan improperly withheld 4,199 documents from this production. All of the documents in question are "family members" of documents that Mylan marked responsive and produced in full. Further, all of the documents in question were subjected to eyes-on attorney review, and were determined to be non-responsive. Mylan withheld these documents in accordance with an agreement between the Parties that permits the Defendants to withhold non-responsive "family members" of responsive documents. (*See* 9/29/20 email from J. Ferretti to B. Parekh, attached as Exh. B). Per this agreement, Plaintiffs recognized and agreed that "family members" of responsive documents are not necessarily responsive in their own right. Notably, because these documents were withheld, Plaintiffs have not reviewed them. Rather, Plaintiffs assert that these documents are responsive based on nothing more than the titles of the documents, which are known to the Plaintiffs because Mylan produced the "parent" emails of the documents. Plaintiffs have demanded that Mylan immediately reproduce all 4,199 documents. The parties have not yet had an opportunity to meet and confer regarding this issue.

Second, Plaintiffs have raised an issue concerning the production of documents related to an FDA inspection of an API manufacturing facility that did not manufacture valsartan, and is not at issue in this case. Plaintiffs are raising this issue for the first time. Mylan is still investigating the issue, and meet and confer is required.

Plaintiffs apparently intend to raise both of these issues at the March 10, 2021 Case Management Conference, even though the parties have not engaged in a meet and confer. This is but the latest instance where Plaintiffs' have brought discovery issues to the Court in violation of the requirement that the Parties first complete the meet and confer process. Specifically, Plaintiffs' practice is to raise new issues with Mylan , and other Defendants, over the weekend before a Case Management Conference, and then unilaterally place those issues on the agenda for the Conference over the Defendants' objections. Often, the issues Plaintiffs raise require significant investigation by the Defendants before a meaningful meet and confer is even possible. Thus, Plaintiffs' insistence on raising premature discovery issues requires Defendants to address issues with the

<a>
</a>



Special Master the Honorable Thomas Vanaskie
Page 8

Court without adequate opportunity to prepare, and results in wasted time during Case Management Conferences.

Indeed, this is not the first time Plaintiffs have demanded the wholesale reproduction of non-responsive documents without meaningful meet and confer. At the December 9, 2020 Case Management Conference, Plaintiffs asked Judge Schneider to order Mylan to reproduce approximately 77,000 non-responsive "family members" of responsive documents. At the Case Management Conference, Judge Schneider directed the parties to conclude their meet and confer before the Court would address the matter. (Tr. 12/09/20 CMC, 31:1-5, 32:16-20, 33:2-4). He further directed the Plaintiffs to "sharpen the pencil so there could be a specific issue before the Court regarding what to do." (Tr. 12/09/20 CMC, 30:23-25). The Parties ultimately resolved the dispute through further meet and confer, and without Court intervention.

Here, Mylan should be afforded the opportunity to fully meet and confer with Plaintiffs regarding these two new discovery issues, which may lead to a resolution without the involvement of the Court. To the extent the parties cannot resolve the issues, then the appropriate time for the Court to address them is during the Case Management Conference at the end of March.

**9. Retailer and Wholesaler Discovery Issues**

### I. Status of Downstream Discovery Following MTD Rulings

#### A. Wholesaler Defendants

Wholesalers do not see the utility in or propriety of negotiation of additional discovery to Wholesalers, including Rule 34 Requests for Production and Rule 30(b)(6) Deposition Notices, at this time considering the state of the pleadings and the uncertain nature of any surviving claims against Wholesalers. By virtue of the Court's Second Opinion and Order on Defendants' Motions to Dismiss, Wholesaler Defendants are currently dismissed entirely from the ELMC and the MMMC. Further, the various other Orders entered by Judge Kugler on Defendants' Rule 12 motions dismissed fraud-based claims against Wholesalers in their entirety and most of Plaintiffs' other claims against Wholesalers across all complaints, including breach of express warranty, Magnuson-Moss Warranty Act, negligence, negligent misrepresentation and omission. The parties also understand that another Order may be forthcoming that could further narrow, if not eliminate entirely, Plaintiffs' remaining claims against Wholesalers and/or other downstream defendants.

It is axiomatic that the discovery in any case, including MDL proceedings, must be based on the live claims and defenses in the pleadings. Given the uncertainty of pleadings and potential claims against Wholesalers, and with the understanding that Plaintiffs are in the process of drafting motions to request the Court permit amendment of their pleadings, which may or may not involve claims against Wholesalers, further negotiation of potential additional discovery to Wholesalers at this time is neither appropriate nor efficient. Indeed, the difficulty of attempting to negotiate



Special Master the Honorable Thomas Vanaskie
Page 9

proposed discovery requests in the absence of a pleading to guide the parties poses significant challenges not just to Wholesalers, but also to *all* parties. Moreover, because Rule 30 and 34 discovery are directed only at parties, plaintiffs are not able at this time to pursue such discovery requests on Wholesalers in connection with the actions governed by the live ELMC or the MMMC.

On February 25, 2021, Wholesalers advised Plaintiffs' counsel of their position that further negotiation of discovery to Wholesalers was unnecessary and inefficient given the Orders dismissing actions and claims against Wholesalers and the undetermined state of the pleadings. Plaintiffs' counsel's response indicated that they would pursue their draft Rule 34 Requests for Production and Rule 30(b)(6) notice with the Court. Those draft discovery requests were sent to counsel for Wholesalers in December, prior to the issuance of any of the Orders on Defendants' motions to dismiss and at a time when Plaintiffs' understood their deadline to complete all discovery was April 1, 2021. Following receipt of those draft requests, counsel for downstream defendants, including counsel for Wholesalers, met and conferred with Plaintiffs' counsel on multiple occasions in December to discuss the draft discovery. Most of those discussions focused on scheduling issues and the Plaintiffs' and Defendants' Executive Committees' concurrent negotiations regarding extensions to the overall case management schedule. On February 4, 2021, the Court issued an order extending all case management deadlines by 60 days, including the start-date of additional downstream discovery, if any, to June 1, 2021. As such, there is no present time pressure to require Wholesalers to engage in negotiation of discovery when they don't even know the claims against them. As noted in Wholesalers' February 25, 2021, correspondence to Plaintiffs, such negotiations would be inefficient for all involved.

Additionally, Wholesalers note that Plaintiffs were provided deadlines by which to file motions to amend pleadings with the initial Orders entered by the Court on Defendants' Rule 12 motions. Plaintiffs sought and obtained, without objections from Defendants, leave to file their motion to amend their pleadings after the last Order is issued by the Court on the Rule 12 motions, which, as noted above, has yet to occur. Plaintiffs' request to extend their deadlines for filing a motion to amend was based on the practical considerations of filing a single motion to amend, rather than multiple. The decision to pursue that extension and delay the filing of motions to amend the complaints for practical considerations was the Plaintiffs' alone. Plaintiffs should not now be heard to claim Wholesalers' practical and fairness-based request to briefly table negotiation of additional discovery, if any, until after the complaints are amended and the claims are clarified is improper or an attempt to inject undue delay into these proceedings. If Plaintiffs are serious about moving forward with claims against Wholesalers, they can move to amend their complaints at any time. Plaintiffs cannot have their cake and eat it too.

B. <u>Pharmacy Defendants</u>

The Pharmacies incorporate by reference the Wholesalers' statements as closely aligned with the Pharmacies' position on the issue of further discovery. As set forth in the attached



Special Master the Honorable Thomas Vanaskie
Page 10

February 16, 2021 correspondence from the Pharmacies to Plaintiffs (Exh. C),[2] the Pharmacies submit that it makes little sense for Plaintiffs and the Pharmacies to negotiate a second round of Rule 34 discovery requests at this time, given the current state of the pleadings in this litigation. *See id.* at 1-2 (discussing effect of Court's rulings on the Rule 12 motions on Plaintiffs' claims). Most of the claims against the Pharmacies have been dismissed, and the parties anticipate a final motion to dismiss decision from Judge Kugler that could further narrow the plaintiffs, claims, and defendants in this case.

Because the pleadings are so uncertain, and because Plaintiffs still are in the process of drafting proposed amendments to the pleadings, the Pharmacies submit that the most efficient and prudent course is to briefly push pause on the negotiation of additional discovery obligations until the extent of the claims against the Pharmacies is clear. Moreover, as previously conveyed to Plaintiffs, the Court's February 4, 2021 order extending all case management deadlines by 60 days [Dkt. No. 843], including the start-date of additional downstream discovery, if any, to June 1, affords the parties the time to do so.

Although Plaintiffs equate the Pharmacies' reasonable suggestion with an attempt to impose an actual or constructive stay of all discovery against them, the Pharmacies have done no such thing. Indeed, as Plaintiffs are well aware, the Pharmacies continue to participate in downstream discovery via the Defendant Fact Sheet process, including by preparing responses to the newly identified group of bellwether plaintiffs selected by Plaintiffs and Defendants. But it simply makes no sense to negotiate additional discovery, on top of existing obligations, while the scope and nature of the claims against them is in flux.

To the extent Plaintiffs wish to advance negotiation of the draft RFPs in the interim, however, they can do so by responding to the Pharmacies' extensive set of comments and questions, which were included in the Pharmacies' February 16 correspondence to Plaintiffs. *See* Exh. C at 2-5. In previous correspondence, Plaintiffs have attempted to characterize the Pharmacies' comments as mere objections to the scope of the initial draft prepared by Plaintiffs, but that is not the case. Rather, the questions set forth in the letter to Plaintiffs reflect genuine

---

[2] The Pharmacies sent Plaintiffs the attached correspondence on February 16. Prior to sending their letter, the Pharmacies had two conferences with Plaintiffs' counsel to discuss the draft discovery on December 15, 2020 and December 30, 2020, although these discussions also focused on timing and scheduling issues relating to the Plaintiffs and Defendants Executive Committees' concurrent negotiations regarding extensions to the overall case management schedule. The Pharmacies also had an additional call with Plaintiffs on January 12, 2021, during which they discussed the draft Requests for Production ("RFPs") and raised several of the concerns raised in the February 16 letter to Plaintiffs. The Pharmacies have since had several internal discussions regarding Plaintiffs' proposed draft, and counsel for the various Pharmacies have also conferred with their respective clients regarding Plaintiffs' drafts. The February 16 letter reflects the Pharmacies' comments based on those conversations.



Special Master the Honorable Thomas Vanaskie
Page 11

confusion about significant, foundational issues that bear on whether and how a revised Request might be formulated, including:

(1) why Plaintiffs are seeking certain categories of data, because the Pharmacies have already produced documents relating to these issues in their prior Rule 34 productions;

(2) what Plaintiffs actually seek, because the Requests as drafted are so broad and unwieldy that it has been difficult for the Pharmacies to determine where they might collect such information, or how to propose edits that would limit the Requests in a manageable way.

Additional comments, objections to and questions regarding Plaintiffs' draft discovery are included in Exh. C to this letter, at pages 2-5.

      Despite prior calls with Plaintiffs to discuss the draft discovery, the Pharmacies still lack sufficient information and have not received sufficient response from Plaintiffs on these issues to meaningfully and constructively advance the conversation. The Pharmacies most recently communicated this to Plaintiffs on March 2 via email, but have not received a response to that communication. If Plaintiffs wish to respond to the Pharmacies' comments, or to prepare a revised draft that reflects the Pharmacies' feedback, nothing prevents them from doing so at this time.

      Finally, with respect to Plaintiffs' draft 30(b)(6) notice, the Pharmacies note that in their initial conversations with Plaintiffs, Plaintiffs and the Pharmacies discussed that it made most sense to table discussion of the draft notice until after discovery against the manufacturers had progressed, and until after the parties had made some headway on the negotiation of the draft RFPs. As such, the draft 30(b)(6) notice was not discussed at all on prior meet and confers. On February 4, 2021, Plaintiffs reached out to Pharmacy liaison counsel and advised that they wished to "dual track" discussions of the two drafts (RFPs and 30(b)(6) notice). Shortly after that exchange, the Pharmacies sent Plaintiffs their letter regarding their timing concerns and questions regarding the Rule 34 discovery.

      For these reasons, the Pharmacies have not had a substantive discussion with Plaintiffs about the draft 30(b)(6) topics, but have previewed that there are a number of concerns with the topics as drafted, including but not limited to the fact that some of the draft topics appear to be directed to manufacturer defendants (*e.g.* "Your compliance . . . with [current Good Manufacturing Practices] as it relates to the quality assurance, quality control and sale of VCDs"). Others seek information previously deemed off limits by Judge Schneider following the parties' briefing on macro-discovery issues in the summer of 2020 (*e.g.* "[t]he pricing of VCDs purchased by you").

      As with the draft RFPs, the Pharmacies submit that it makes most sense to discuss these topics with Plaintiffs once the pleadings are settled.

GREENBERG TRAURIG, LLP ◼ ATTORNEYS AT LAW ◼ WWW.GTLAW.COM
Terminus 200 Building, 3333 Piedmont Road NE, 25th Floor ◼ Atlanta, Georgia 30305 ◼ Tel 678.553.2100 ◼ Fax 78.553.2212



Special Master the Honorable Thomas Vanaskie
Page 12

### 10. Bellwether Discovery from Defendants

On March 3, 2021, George Williamson, counsel for Plaintiffs, sent Defendants a letter addressing the timeline for the completion of Defendant Fact Sheets and Defendants' deficiency notices for Plaintiff Fact Sheets. Defendants have expressed a willingness to work together with Plaintiffs to address these matters but requested alternative dates for a meet and confer on these issues so the Wholesaler Defendants are able to participate in the discussion, as any modification of the cascading DFS schedule ordered by the Court must be considered by multiple levels of the supply chain. Accordingly, these items are not yet ripe for discussion as the parties have not yet engaged in a meaningful meet and confer.

                Respectfully submitted,

                */s/ Lori G. Cohen*

                Lori G. Cohen

cc:    Adam Slater, Esq. (*via email*, *for distribution to Plaintiffs' Counsel*)
        Jessica Priselac, Esq. (*via email*, *for distribution to Defendants' Counsel*)
        Seth A. Goldberg, Esq. (*via email*)
        Clem C. Trischler, Esq. (*via email*)
        Sarah Johnston, Esq. (*via email*)
        Jeffrey Geoppinger, Esq. (*via email*)