# Exhibit E

```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY


 _____
                                      CIVIL ACTION NUMBER:
 IN RE:  VALSARTAN PRODUCTS
 LIABILITY LITIGATION                 1:19-md-02875-RBK-JS

 _____       STATUS CONFERENCE
                                      (Via telephone)


        Wednesday, October 14, 2020
        Commencing at 4:05 p.m.

 B E F O R E:              THE HONORABLE JOEL SCHNEIDER,
                           UNITED STATES MAGISTRATE JUDGE


 A P P E A R A N C E S:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey 07068
        For the Plaintiff

        GOLOMB & HONIK PC
        BY:  RUBEN HONIK, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania 19103
        For the Plaintiff

        LEVIN PAPANTONIO
        BY:  DANIEL A. NIGH, ESQUIRE
        316 S. Baylen, Suite 600
        Pensacola, Florida 32502
        For the Plaintiff

        KANNER & WHITELEY LLC
        BY:  CONLEE S. WHITELEY, ESQUIRE
        701 Camp Street
        New Orleans, Louisiana 70130
        For the Plaintiff

            Karen Friedlander, Official Court Reporter
                    friedlanderreporter@gmail.com
                         (856) 756-0160

        Proceedings recorded by mechanical stenography;
    transcript produced by computer-aided transcription.
```

```
 1  A P P E A R A N C E S: - CONTINUED

 2
        DUANE MORRIS LLP
 3      BY:  SETH A. GOLDBERG, ESQUIRE
             REBECCA E. BAZAN, ESQUIRE
 4      30 S. 17th Street
        Philadelphia, Pennsylvania 19103
 5      For the Defendant ZHP and the Joint Defense Group

 6      GREENBERG TRAURIG LLP
        BY:  VICTORIA LOCKHARD, ESQUIRE
 7           JEFF GREENE, ESQUIRE
        3333 Piedmont Road, NE, Suite 2500
 8      Atlanta, Georgia 30305
        For the Defendants, Teva Pharmaceutical Industries Ltd.,
 9      Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
        Pharma, Inc.
10
        BARNES & THORNBURG LLP
11      BY:  SARAH E. JOHNSTON, ESQUIRE
        2029 Century Park East, Suite 300
12      Los Angeles, CA 90067-2904
        For the Defendant, CVS Health Co.
13
        ULMER & BERNE LLP
14      BY:  JEFFREY DANIEL GEOPPINGER, ESQUIRE
        600 Vine Street
15      Suite 2800
        Cincinnati, OH 45202
16      For the Defendant, AmerisourceBergen

17      PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
        BY:  CLEM C. TRISCHLER, ESQUIRE
18      One Oxford Centre, 38th Floor
        Pittsburgh, Pennsylvania 15219
19      For the Defendant Mylan and the Joint Defense Group

20      RIVERO MESTRE LLP
        BY:  ANDRÉS RIVERO, ESQUIRE
21      2525 Ponce De Leon Blvd. Ste. 1000
        Miami, FL  33134
22      For MSP

23  A L S O   P R E S E N T:

24      Judge Magistrate Williams

25
```

1  to on my copy, is that --
2          MS. LOCKARD:  I think that's a formatting issue.
3          THE COURT:  Okay.
4          MS. LOCKARD:  Because I think plaintiffs limited it
5  to hypertension or cancer.
6          THE COURT:  Okay.  So there's no dispute about
7  potentially Roman Numeral IV A, is there?
8          MS. LOCKARD:  The dispute is plaintiffs wanted to
9  limit this.  They added hypertension or cancer and deleted any
10 reason.  Our proposal --
11         THE COURT:  Oh, I see, I see, I see.
12         MS. LOCKARD:  We want a full list of medical
13 providers for the past ten years and plaintiff wanted only to
14 provide medical providers who treated for the hypertension and
15 the cancer.  And again, we feel that, you know, we don't know
16 what's in the history for these patients, what they may have
17 told their medical providers.  We're entitled to get those
18 medical records.  I don't know how we get the medical records
19 if we don't know who to ask them from.  It all goes to their
20 quality of life.  They're --
21         THE COURT:  Let me give you a hypothetical that comes
22 up not infrequently.  An OB/GYN doctor, plaintiff says, that
23 has no relevance to the case, I have a privacy interest in
24 those records, I have lung cancer or liver cancer, it has
25 nothing to do with my OB/GYN treatment.  Why should I have to

1  going on here, Your Honor.  This is Seth Goldberg.  You know,
2  there is a dispute as to whether the request that we're now
3  seeking are duplicative.  That's been the only objection
4  asserted to the requests.  We don't think they are and we had
5  a meet and confer with plaintiffs and, you know, after hearing
6  their position that they are duplicative, we identified the
7  specific documents that we think are not duplicative.  They
8  are in our insert on Page 2 of our submission.
9         And I think one point -- and there are a few points I
10 would like to cover on this issue on the duplicative point, we
11 don't think they are duplicative.  The wording in the
12 plaintiff fact sheets is not written to cover any of these
13 kinds of documents that are on Page 2 of our submission, in
14 particular, are the insurance and deductible information.
15         But if they are duplicative, you know, plaintiffs
16 should have to certify that they searched for and collected
17 these kind of documents that are in their possession, and what
18 they have very clearly said in their paper is that they didn't
19 do that and they shouldn't have to do that now.
20         And, you know, of course, defendants have been
21 required to produce not only core discovery throughout 2019
22 before even getting to document requests, but then total, 140
23 document requests, about 70 to 80 just on the manufacturer
24 defendants.
25         So we don't read the plaintiff fact sheet as being

```
 1  the limit on defendants' discovery of the economic class
 2  representatives, both the consumers and the TPPs.  We read it
 3  as a source of information that is central to a specific
 4  plaintiffs' claim, and -- but not the information, not the
 5  information that's core to their class certification
 6  allegations.
 7           And the information we're seeking now with the Rule
 8  34 requests are truly essential to the questions about
 9  ascertainability and their damages calculation, and this kind
10  of information is not covered in the plaintiff fact sheets,
11  it's information that we need to be able to understand their
12  theory and to be able to defend or oppose their motion for
13  class certification.  And, you know, in essence, they're
14  claiming that they should be reimbursed a hundred percent of
15  any payment made for any of defendants' ECDs even if they
16  weren't contaminated, and what we're trying to do is to obtain
17  the information that is in their possession that shows all of
18  the variations from consumer to consumer, not just these class
19  reps, but remember, they represent thousands and thousands of
20  alleged consumers of these drugs, and all of these consumers
21  who are paying co-pays, who have insurance, all of their
22  payments are subject to pharmacy benefit plans, formularies,
23  drug -- out-of-pocket caps, pricing tiers, preferred pharmacy
24  options, preferred delivery options, each of which changes the
25  price that any one plaintiff or any one consumer would pay for
```

1  because that is most likely to get the most comprehensive
2  medical history, and with all these questions, it's very
3  unlikely you're not going to get to the bottom of any
4  plaintiff's medical history.
5           MS. LOCKARD:  Can we include a question in this that
6  asks, are you using your gynecologist as your family doctor,
7  so that we can sort out those individuals who may be doing
8  that?
9           THE COURT:  Or why don't you say, who do you use as
10 your family doctor.
11          MS. LOCKARD:  Or primary care.
12          THE COURT:  That's fine.
13          MR. SLATER:  I was just going to say --
14          THE COURT:  That's fine.
15          MR. SLATER:  I was going to say family doctor slash
16 primary care provider.
17          THE COURT:  Perfectly appropriate.  I think that's
18 perfectly appropriate.
19          MR. SLATER:  So we've never objected to the primary
20 care provider, because obviously for the reasons you've
21 stated.
22          THE COURT:  Right.
23          MS. LOCKARD:  And who do you use for that.
24          And certainly, you know, if it's an instance where
25 the allegation is, you know, that the OB/GYN was the

*1*  diagnosing physician or treating physician --

*2*      THE COURT:  You'll get it.

*3*      MS. LOCKARD:  -- for breast cancer or --

*4*      THE COURT:  You'll get it.  No question about it.

*5*      MR. SLATER:  There's no objection to that.  The
*6*  diagnosing doctors, the treating doctors are all -- we've not
*7*  objected to that.

*8*      MS. LOCKARD:  Okay.  So if the OB/GYN is the treating
*9*  or the diagnosing physician, then we're entitled to get that
*10* information.

*11*     MR. SLATER:  Yeah, we've already said the diagnosing
*12* or treaters for cancer.

*13*     THE COURT:  For the cancer.

*14*     MR. SLATER:  Right.

*15*     THE COURT:  Yes, I'll -- yes.

*16*     MR. SLATER:  Is the next section the medical
*17* background section?

*18*     THE COURT:  There's a lot of red on these pages.

*19*     MS. LOCKARD:  So I think --

*20*     MR. SLATER:  Red means correct.

*21*     (Laughter.)

*22*     MS. LOCKARD:  The first dispute relates to the
*23* tobacco use and we think we should be entitled to get into
*24* their history of tobacco use at any time.  Plaintiffs wanted
*25* to limit this to a number of years, within 10 or 15 years of

*1*      THE COURT: Time out, Mr. Goldberg, time out.

*2*      The Court's ruling is that the defendants have a
*3* right to serve Rule 34 document requests. The Court does not
*4* recall it being envisioned that the fact sheets would be
*5* exhaustive with regard to all of the information the
*6* defendants needed for class certification purposes.

*7*      So the real issue is whether the requests are
*8* appropriate, extensive, et cetera, et cetera, the propriety of
*9* each of the document requests. That's the real issue, not
*10* whether defendants have a right to serve them or not, okay?

*11*      So I didn't mean to cut you off, Mr. Goldberg, but I
*12* knew how I was going to rule on that issue and I didn't want
*13* to belabor the point.

*14*      So now the issue becomes, how are we going to deal
*15* with this issue.

*16*      I am not prepared during this call to go through each
*17* request one by one to make a ruling, nor do I know if the
*18* parties have exhausted their efforts to try and reach an
*19* agreement, or are they at an impasse on what needs to be
*20* produced.

*21*      Plaintiff, what's your position on that?

*22*      MR. RIVERO: Judge, may I be heard for a moment?
*23* This is Andrés Rivero. I represent MSP, Judge, and I was
*24* trying to make a comment. I know the Court has ruled, but if
*25* I may, and I think it does relate to the general question.