# Exhibit T

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 2 of 11
                                    PageID: 22628
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

2016 WL 7108455
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey,
Camden Vicinage.

IN RE RIDDELL CONCUSSION
REDUCTION LITIGATION.

Civil No. 13-7585 (JBS/JS)
|
Signed 12/05/2016

## OPINION

[JOEL SCHNEIDER](), United States Magistrate Judge

**\*1** This Opinion decides plaintiffs' challenge to 272 documents on defendants' privilege log that were reviewed in camera. The documents primarily concern communications between and amongst Riddell's employees, including an occasional in-house and outside counsel, and Riddell's outside public relations ("P.R."), marketing, crisis management and/or "messaging" consultants.[1] In particular, the Opinion must of necessity address two regularly occurring vexing issues. One, whether emails exchanged amongst corporate employees are privileged even though they are not sent to or received from an in-house corporate attorney. Two, whether corporate emails copied to in-house counsel touching on legal issues are privileged if they also contain mixed discoverable business information. For the reasons to be discussed, plaintiffs' challenges to defendants' privilege designations are sustained in part and overruled in part.

Background
This is a proposed nationwide class action filed by purchasers of Riddell's Revolution football helmets from 2007 to present seeking the return of a "price premium" allegedly paid for the helmets. The case focuses on the concussion reduction capabilities of Riddell's helmets and defendants' pricing, advertising and marketing of the helmets. The crux of plaintiffs' case is the claim that Riddell's Revolution helmets offered no greater protection against concussions than other helmets and, therefore, the price premium they paid should be reimbursed. Plaintiffs claim Riddell's use of the terms "concussion reduction technology" or "CRT" was false and misleading. Riddell denies all liability allegations.

Riddell's alleged privileged documents can generally be described as communications between and amongst its sales representatives and outside consultants regarding P.R., marketing, crisis management and/or "messaging" issues. Riddell's privilege assertions are only supported by the Declaration of its current General Counsel, Brian P. Roche, Esquire.[2] Roche generally states that Riddell's "sales representatives receive legal guidance, input and approval from counsel" (& 11), its sales representatives are "integral to the provision of legal advice by counsel for Riddell" (& 12), and it is "frequently necessary for Riddell's sales representatives to solicit, receive, and disseminate advice from counsel in performance of their duties[.]"(& 13). In addition, Roche explains that in connection with its business Riddell has relied on outside marketing, P.R. and crisis management consultants to implement business strategies (& 15). Roche states these companies "acted as extensions of Riddell's in-house personnel, and as such, regularly sought and received legal advice from Riddell's in-house and outside counsel[.]" (& 15). One company Riddell relied upon was MSL which performed its functions in connection with a Congressional inquiry and FTC investigation of different sporting goods companies (& 17). In addition to MSL, Riddell worked with Cohn & Wolfe, Empire Green Creative and Headrush Creative who served the equivalent role as an in-house marketing department (& 20).

**\*2** Roche also explains that in connection with the FTC's investigation of sporting goods companies from 2009 to 2013, the Sports and Fitness Industry Association ("SFIA"), formerly the Sporting Goods Manufacturers Association, represented the interests of its member companies (&& 21-22). According to Roche, Riddell was asked "for legal advice and input in connection with representing the member companies' shared legal interests." (& 22). One additional company mentioned in Riddell's documents is Simbex Product Development. Riddell hired Simbex to assist in the development of certain technologies or devices (& 23).[3]

As to all of the referenced companies Roche states there was an expectation of privacy and confidentiality over Riddell's communications. Nevertheless, Roche did not address any particular documents and merely discussed plaintiffs' objections in generalities.[4]

Not knowing the substance of Riddell's documents, plaintiffs could only surmise as to their content. Plaintiffs' general argument is that Riddell's documents are not privileged because they merely involve routine business correspondence

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 3 of 11
                                      PageID: 22629
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

between sales employees and third-parties. July 25, 2016 Letter Brief ("PLB") at 5-7. Plaintiffs point out they are challenging 210 documents where Riddell's employees communicated with third-parties in the absence of an attorney. Rather than being privileged, plaintiffs argue the communications were exchanged in the "everyday course of business." Id. at 5. Plaintiffs also challenge 62 documents sent to or by Riddell's sales representatives. Although counsel is sometimes copied on email chains, plaintiffs believe these documents involve "routine [business] communications." Id. at 7.

**\*3** Riddell argues its communications with third parties such as MSL are privileged because these entities performed the same role as employees and acted as the "functional equivalent" of an employee. RLB at 9. As to the communications by and between its sales agents, Riddell argues these entities were involved with counsel regarding "legal strategies, responses to sensitive media inquiries, draft congressional testimony, mitigating the risk of investigation or litigation, and legal advice on Riddell's public facing marketing (including press releases and advertising copy)." Id. at 8.

Discussion [5]

The Court's discussion will be divided into two parts. The Court will first discuss the general legal principles it will apply. The Court will then apply the principles to Riddell's documents to decide if they are privileged.

1. General Privilege Principles

    a. Attorney-Client Privilege

The Court sits in diversity and, therefore, will apply New Jersey law to decide attorney-client privilege issues. Fed. R. Evid. 501; In re Human Tissue Products Liab. Litig., 255 F.R.D. 151, 156 (D.N.J. 2008)(citation omitted). The burden of establishing that a document is privileged is on the party asserting the privilege. Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996). The attorney-client privilege protects communications when: (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994).

Importantly, the attorney-client privilege does not apply just because a statement was made by or to an attorney. Thus, the mere fact that Riddell's counsel is copied on emails does not prove a document is privileged. Spiniello Companies v. Hartford Fire Insurance Company, C.A. No. 07-cv-2689 (DMC), 2008 WL 2775643, at \*2 (D.N.J. July 14, 2008)(simply copying or "cc'ing" an attorney on an email is not enough to establish a privilege); Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D. Pa. 1997)("[W]hat would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda"). This makes perfect sense because otherwise parties could facilely avoid producing relevant discovery by simply copying an attorney on every email. See Orion Corp. v. Sun Pharmaceutical Industries, Ltd., C.A. Nos. 07-5436 (MLC), 08-5545 (MLC), 2010 WL 686545, at \*8 (D.N.J. Feb. 22, 2010)("Because the privilege may be employed to obstruct the search for truth, the privilege is not absolute and care must be taken to insure the privilege is not abused").

**\*4** Further, the attorney-client privilege applies to communications and not facts. Rhone-Poulenc Rorer, Inc., 32 F. 3d at 862 ("The client ... may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.")(citation and quotation omitted); see also Louisiana Mun. Police Employees Retirement System v. Sealed AirCorp, 253 F.R.D. 300, 305 (D.N.J. 2008)("In all instances, the facts underlying any given communication remain discoverable"). Instead, "[t]he [attorney-client] privilege protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423-24 (3d Cir. 1991) (citation, quotation and emphasis omitted).

Case 1:19-md-02875-RMB-SAK    Document 1011-20    Filed 03/09/21    Page 4 of 11
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)
PageID: 22630

An attorney who is not performing legal services or relaying legal advice and who performs non-legal duties does not qualify for the privilege. *Payton v. New Jersey Turnpike Authority*, 148 N.J. 524, 550-51 (1997); *Fredericks v. Atlantic City Bd. of Educ.*, C.A. No. 08-3082 (RBK/JS) 2010 WL 3429605 at *5 n.6 (D.N.J. Aug. 26, 2010)(not infrequently lawyers are engaged to perform non-legal services); see also *Ellerstein v. Herman Body Co.*, 23 N.J. 348, 352 (1957), adopting the lower Court's ruling that if an attorney "is engaged for the rendition of work which inherently is not the practices of law and his knowledge of law may along the line come into play, the engagement is for non-legal work." This is true even if litigation may arise from the subject of the attorney's activities. *Payton*, 148 N.J. at 551.

### b. Corporate Counsel and Mixed Communications

In the present case a number of contested documents were sent to or from Riddell's in-house corporate counsel. It is of course true that the attorney-client privilege applies to in-house counsel. *Rowe v. E.I. Dupont*, C.A. Nos. 06-1810 (RMB/AMD) and 06-3080 (RMB/AMD), 2008 WL 4514092, at *7-8 (D.N.J. Sept. 30, 2008). However, it is well-recognized in the corporate context that it is difficult to apply the attorney-client privilege because in-house counsel often participates in and renders decisions about business issues. Id. at 8. Business advice is not protected by the attorney-client privilege. Id. at *7. However, if a communication is designed to meet predominately legal problems the attorney-client privilege may apply. Id. at *8. Only if an attorney is acting as a lawyer and giving advice with respect to the legal implications of an issue may the privilege be properly invoked. Id. at 8 (citation omitted). As explained in *Payton*, 148 N.J. at 550, "a fine line exists between an attorney who provides legal services or advice to an organization and one who performs essentially nonlegal duties." Thus, the Court must determine the exact role that Riddell's attorneys played with regard to each claimed privileged document. Id. The general rule is that "while legal advice given to a client by an attorney is protected by the privilege, business advice generally is not." *Louisiana Mun. Police*, 253 F.R.D. at 305; see also *Rowe*, 2008 WL 4514092, at *8, noting that modern corporate counsel become involved in all aspects of the company they work for and that "in-house counsel participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues").

Even if some portion of an attorney's role is to give legal advice this does not end the privilege inquiry. Often times an attorney's role is mixed. In instances of mixed communications the Court must determine "whether the primary purpose and content of the [communication] is predominantly legal." *Rowe*, at *11 (overruling privilege objection to a document because it did not reflect the exercise of a predominantly legal function as opposed to business advice). As noted in *Rowe*, "[o]nly if [an] attorney is acting as a lawyer giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked[.]" On the other hand, "if a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege." Id. (citation and quotation omitted). As further noted in a recent well-reasoned decision:

> **\*5** There is broad consensus in other jurisdictions that, if the non-legal aspects of the consultation are integral to the legal assistance given and the legal assistance is the *primary purpose* of the consultation, both the client's communications and the lawyer's advice and assistance that reveals the substance of those communications will be afforded the protection of the privilege.

*Harrington v. Freedom of Information Commission*, 323 Conn. 1, 144 A.3d 405, 416 (Conn. 2016)(citation and quotation omitted)(emphasis in original). [6]

The test for the application of the attorney-client privilege to communications with legal counsel in which a mixture of services are sought is whether counsel was participating in the communications primarily for the purpose of rendering legal advice or assistance. Therefore, merely because a legal issue can be identified that relates to on-going communications does not justify shielding the communications from discovery. The lawyer's role as a lawyer must be primary to her participation. *In re Vioxx*

Case 1:19-md-02875-RMB-SAK    Document 1011-20    Filed 03/09/21    Page 5 of 11
PageID: 22631
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

Products Liability Litigation, 501 F. Supp. 2d 789, 798 (E.D. La. Sept. 4, 2007).

Some relevant factors courts consider to determine the primary purpose of a mixed communication include: (1) the context of the communication and the content of the document; (2) whether the legal purpose permeates the document and can be separated from the rest of the document; and (3) whether legal advice is specifically requested and the extent of the recipient list. Phillips v. C. R. Bard, Inc., 290 F.R.D. 615, 629 (D. Nev. 2013). Judicial scrutiny should focus on the nature of the relationship between in-house counsel and others and the type of information or communication involved. United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 563 (App. Div. 1984).

### c. Inter-Corporate Communications

Many of the challenged documents involve communications between and amongst Riddell's employees that do not involve an attorney. The Court agrees with Riddell that simply sharing documents amongst corporate employees does not necessarily vitiate a privilege. These communications remain privileged if they assist the attorney to formulate and render legal advice. Westinghouse Elec. Corp., 951 F.2d at 1424 (the client may allow disclosure to an agent assisting the attorney in giving legal advice); HPD Laboratories, Inc. v. Clorox Co., 202 F.R.D. 410, 414 (D.N.J. 2011). ("To qualify for protection, statements to and from third parties must be made in confidence for the purpose of obtaining legal advice from the lawyer")(citation, quotation and emphasis omitted). As noted in O'Boyle v. Borough of Longport, 218 N.J. 168, 185 (2014), "[t]he privilege ... extends to consultations with third parties whose presence and advice are necessary to the legal representation." Disclosure of attorney-client communications that are necessary to advance the representation, do not waive the privilege. Id. However, the privilege is waived if the document is shared beyond persons with a "need to know." TransWeb, LLC v. 3M Innovative Properties Co., C.A. No. 10-4413 (FSH)(PS), 2012 WL 2878075, at *3 (D.N.J. July 13, 2012). General group wide descriptions do not permit the court to determine if the recipients require, or have the capacity to act upon, the information distributed. Id.

### d. Riddell's Third-Party Agents

**\*6** The majority of challenged documents involve communications between and amongst Riddell's third-party agents which were mainly hired for P.R. and communications purposes. The Court agrees with Riddell that the mere fact an attorney communicates with a third-party does not necessarily waive the attorney-client privilege. This is so because "[w]hen disclosure to a third-party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege." Westinghouse Elec. Corp., 951 F.2d at 1424; O'Boyle, 218 N.J. at 309 ("If ... the third party is a person to whom disclosure of confidential attorney-client communications is necessary to advance the representation, disclosure will not waive the privilege"); In re Grand Jury, 705 F.3d 133, 160 (3rd Cir. 2012)("Privileged persons include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation")(citation and quotation omitted); Tractenberg v. Township of West Orange, 416 N.J. Super. 354, 376 (App. Div. 2010)(privilege extends to "the necessary intermediaries and agents through whom the communications are made")(citation and quotation omitted); In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 219 (S.D.N.Y. 2001)("[T]here is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice."

Stated another way, the attorney-client privilege "protects communications made to an attorney's agent where the communication is necessary for the client to obtain informed legal advice from the attorney." E.I. Dupont deNemours & Co. v. MacDermid, Inc., C.A. No. 06-3383 (MLC), 2009 WL 3048421, at *3 (D.N.J. Sept. 17, 2009). Thus, it is unquestionably the case that communications between and amongst Riddell and MSL, et al., for the purpose of securing legal advice are privileged. It is clear, however, that not all communications with an attorney's agent are protected. To be protected communications with a third-party agent must be made in confidence for the purpose of obtaining legal advice from the lawyer. Id. If the communication would have been made in the normal course of business even if the attorney did not need the information to give legal advice, the communication is not privileged. ISS Marine Services,

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 6 of 11
PageID: 22632
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

Inc., 905 F. Supp. 2d at 128. The agent's involvement must be necessary to the lawyer's provision of legal advice. Id.; see also Louisiana Mun. Police, 253 F.R.D. at 311 (privilege not waived if the disclosure was made to an agent whose services are necessary for effective representation of the client's interests). The party claiming the third-party as an agent, in this case Riddell, has the burden to show that a privilege exists and that the privilege has not been waived. Id.

e. Work-Product Doctrine

To the extent Riddell relies on the work-product doctrine to protect its documents (see RLB at 6), the argument is denied.[7] The burden of proving that a document is protected rests with the party asserting the work-product doctrine. Torres, 936 F. Supp. at 1208. The party claiming protection must demonstrate the precise manner in which a document is protected. Id. Blanket assertions do not suffice. Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000).

In order for documents to be protected from discovery pursuant to the work-product doctrine, "it must be reasonably clear based on the surrounding facts and the nature of the materials that they were in fact prepared or obtained because of pending or anticipated litigation." Reich v. Hercules, Inc., 857 F. Supp. 367, 372 (D.N.J. 1994). Documents prepared in the regular course of business are not protected. Rockwell Int'l, 897 F.2d at 1266. Documents created for other purposes that are useful in subsequent litigation are also not attorney work-product. In re: Gabapentin Patent Litigation, 214 F.R.D. 178, 184 (D.N.J. 2003). Thus, a party seeking to invoke the work-product doctrine must prove at least two elements. First, that a document was prepared because of reasonably anticipated litigation. Second, that the material was prepared because of the prospect of litigation and for no other purpose. Id. at 183-84.

 *7  Whether a document was prepared in anticipation of litigation is a difficult determination. Id. In general, however, a party must show more than a "remote prospect," an "inchoate possibility", or a likely chance of litigation. Id. "[A] party must show that there existed an identifiable specific claim of impending litigation when the materials were prepared." Id. (citation and quotation omitted). The "dominant purpose" in preparing the document must be the concern about potential litigation and the concern must be "objectively reasonable." Tractenberg, 416 N.J. Super. at 374. The mere involvement of an attorney does not, in itself, evidence that a document was prepared in anticipation of litigation. Id. Documents created for other purposes that prove useful in subsequent litigation are not attorney work-product. Gabapentin, 214 F.R.D. at 184. To be sure, however, a document may be protected by the work-product doctrine even though it was not prepared by an attorney. For example, the work-product doctrine may apply even if a document was prepared by a party's agent. United Coal Companies v. Powell Const. Co., 839 F.2d 958, 966-67 (3d Cir. 1988).

Riddell's work-product assertion is rejected because there is no evidence its documents were prepared because of impending litigation. It is true that many of Riddell's documents were prepared because of Congressional inquiries into concussions. However, no evidence exists to show this was likely to lead to litigation. As noted, the mere "remote prospect" or "inchoate possibility" of litigation does not satisfy the work-product doctrine. Gabapentin, 214 F.R.D. at 183. The same is true for Riddell's concerns that its literature may result in lawsuits, and even the instance where Riddell investigated a crushed helmet. The work-product doctrine does not apply unless a party shows "there existed an identifiable specific claim of impending litigation when the materials were prepared." Id. (citation and quotation omitted). Riddell has not made this showing. Further, it is not insignificant that Roche's Declaration does not even attempt to justify the applicability of the work-product doctrine. Nowhere does Roche's Declaration say or indicate Riddell's documents were prepared in anticipation of specific litigation.

2. Riddell's Documents

The Court now turns to the 272 documents at issue.

a. 62 Documents Exchanged Amongst Riddell's Employees

Plaintiffs challenge 62 designations involving communications between Riddell's sales employees.[8] Riddell argues the sales employees were necessary to these communications because they were: (1) sales managers relevant to a communication, (2) sales representatives necessary to the collection of information for an attorney, or (3) sales managers and representative "seeking, receiving or disseminating legal advice so that they acted appropriately with respect to customer inquiries or issues." RLB at 7.

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 7 of 11
PageID: 22633
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

Plaintiffs argue defendants' documents are not privileged because they involve "routine conversations" with sales employees.

Having reviewed the 62 documents at issue, the Court finds that most of the documents are not privileged. At bottom, most of the challenged documents address corporate "messaging" concerns and not legal issues or advice. This accounts for why most of the documents were prepared by sales personnel and communications managers. Without summarizing each document, the documents generally concern non-legal business issues such as communications between and about high schools and colleges, comments on competitors' helmets and literature, responses to media inquiries, content of press releases, marketing slides, and content of marketing documents. These are all business and not legal topics.

Frankly, the Court is hard pressed to decipher any legal advice or purpose to these 62 documents. To the extent the content of Riddell's documents may touch on legal issues, which the Court does not find, the documents are not privileged because it is plain the predominant purpose of the communications was to address business and not legal concerns. The attorney-client privilege protects disclosures to obtain legal advice which might not be made absent the privilege. Westinghouse Elec. Corp., 951 F.2d at 1423-24. After reviewing Riddell's documents the Court is convinced that Riddell's privilege assertions do not satisfy this criteria. "Communications which relate to business rather than legal matters do not fall within the protection of the [attorney-client] privilege." *Alpha Painting & Constr. Co., Inc. v. DE River Port Authority of the Comwlth. of PA*, ___ F. Supp. 3d ____, 2016 WL 5339576, at *12 (D.N.J. Sept. 23, 2016).

**\*8** In In re Seroquel Prods. Liab. Litig., No. 6:06-md-1769, Orl-22DAB, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008), the court noted that when documents concern business decisions or are the product of corporate committees responsible for business decisions regarding technological, science, public relations or marketing issues, the party claiming the privilege must show "the communications at issue are more than simply grammatical, editorial, technological, scientific, public relations, or marketing suggestions, and are specifically in the nature of legal advice." Further, in order to prevent abuse attorneys claiming the privilege must demonstrate that the communication would not have been made but for the client's need for legal advice or services. Id. at *8 (citation omitted). Riddell has not made this showing.

To be sure, the Court is not ruling that communications between sales personnel cannot be privileged. The Court has already discussed that these communications may be privileged if they are necessary to provide legal advice. Amongst the 62 documents there are a handful that do not have to be produced. The Court finds PRIV 102 (asking for legal advice on a proposed contract), 576 (asking for legal advice on a draft letter), and 1448 (Legal Hold Notice for unrelated litigation) are privileged. [9]

b. 210 Documents Exchanged with Third-Parties

Plaintiffs challenge 210 documents Riddell exchanged with third-parties. As already discussed, the Court agrees with Riddell that its communications may still be privileged even though it communicates with third-parties such as MSL. The key issue regarding the applicability of the attorney-client privilege in this context is the purpose of the work of Riddell's agents. If the primary purpose was to assist counsel to render legal advice, the privilege applies. If the purpose was to provide business or messaging advice, the privilege does not apply. See generally Payton, 148 N.J. at 550-51; *Emmanouil v. Roggio*, C.A. No. 06-1068 (GEB), 2009 WL 961275, at *2 (April 7, 2009)(the privilege does not extend to any advice which is not legal in nature, i.e., business advice).

(1) MSL

MSL is a public relations firm that consults with clients on communication strategies, Riddell claims 178 MSL documents are privileged. [10] For the same reasons most of Riddell's sales employees' documents are not privileged, the same is true for MSL. Simply stated, even if an attorney was copied on a MSL email chain, the predominant purpose of MSL's documents was to provide business and communication advice, not legal advice. In fact, MSL acknowledged it was hired "to assist in public relations effort." See PRIV 381. This is evident by the subject matter of MSL's documents which concern, inter alia, how to respond to media inquiries, updates on relevant media coverage, preparing for testimony before Congress, updates on Congressional developments and general governmental affairs issues. Indeed, MSL acknowledged it was tasked

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 8 of 11
                                         PageID: 22634
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

to recommend a comprehensive communications program and media relations strategy. See PRIV 381. To the extent attorneys were copied on MSL's documents it was merely for information purposes or for general comments on P.R. strategy. For the most part the attorneys did not provide legal advice or input. If they did it is not apparent their input was a material consideration.

***9** Riddell highlighted a few documents in this category to illustrate its argument that the designated MSL documents are privileged. Once again the examples are not convincing. None of the examples specifically mentions legal advice, opinions, or litigation. Further, the overwhelming context of the documents relates to P.R. and messaging issues. If an attorney is copied on an email it appears to be incidental. None of the documents reference a legal principle nor engage in any legal analysis. If an attorney gave any input the attorney was simply weighing in on business, messaging or marketing issues.

For example, one series of emails from November 2009 discusses a potential "Riddell Innovation History" and a Today Show segment on a competitor's helmet. (PRIV 0639). Other documents concern how to answer potential questions at hearings (PRIV 0042), the content of videos on YouTube (0058, 455) how to address Congressional assumptions about helmets (00231), comments on a competitor's testimony before Congress (00277), and Riddell testimony before Congress (01622). As to this last document, although edits appear to be made by a lawyer, the edits are of a factual nature and do not involve legal advice or opinions. Louisiana Mun. Police, 253 F.R.D. at 305 ("In all instances, the facts underlying any given communication remain discoverable."); In re Vioxx, 501 F. Supp. 2d at 807 (rejecting Merck's assertion that its lawyers edits to documents were privileged because it did not explain how this primarily related to legal assistance being provided).

All of the illustrative examples Riddell relies upon support the Court's conclusion that the purpose of MSL's documents relate to standard P.R. and messaging issues rather than legal advice, opinions or issues. The fact that Riddell, like all businesses, wants to portray itself in a helpful light is not worthy of attorney-client privilege protection, even if an attorney is copied on an email. A "media campaign is not a litigation strategy" even if an attorney deems it advisable. NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 141 (N.D.N.Y. 2007). Further, a public relations campaign and media strategy to bolster a party's public image and reputation is also not privileged. McNamee v. Clemens, No. 09CV 1647(SJ), 2013 WL 6572899, at *6 (E.D.N.Y. 2013). After reviewing the content and context of Riddell's documents, the Court simply does not accept Riddell's conclusion that its examples reflect "legal advice." RLB at 12. Ordinary public relations advice and working with counsel to evaluate the public reaction to different strategic alternatives is not privileged. Egiazaryan v. Zalmayez, 290 F.R.D. 421, 432 (D.N.J. 2013); see also Haugh v. Schroder Inv. Mgmt. N. Am. Inc., No. 02 Civ. 7955 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003)("Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice").

This is not the first case, nor will it be the last, where lawyers claim communications with public relations consultants are privileged. The common theme in the cases that protects these communications is if the public relations consultants' communications are made in connection with ongoing or anticipated litigation and the advice is directed at supporting the client's litigation position, or the P.R. input is necessary for an attorney to provide legal advice. See generally Grand Canyon Sidewalk Development LLC v. Cieslak, C.A. No. 2:15-cv-1189-JAD-GWF, 2:13-cv-00596-JAD-GWF, 2015 WL 4773585 (D. Nev. Aug. 13, 2015)(collecting cases). Whether or not MSL is the "functional equivalent" of Riddell's in-house P.R. department is not determinative here. If MSL simply provided ordinary public relations advice its communications are not privileged. NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 141 (N.D.N.Y. 2007). On the other hand, if MSL provided information needed by Riddell's attorneys to render legal advice its information is privileged. In re Bristol-Myers Squibb Securities Litigation, C.A. No. 00-1990 (SRC), 2003 WL 25962198, at *4 (D.N.J. June 25, 2003). [11] At bottom, most of MSL's documents are not privileged because they reflect ordinary public relations services done for business purposes. The documents do not reflect or even mention that the services were needed for legal advice. "If a communication would have been made even if legal advice were not explicitly sought, then it is difficult to say that the communication's primary purpose was to seek legal advice." U.S. v. ISS Marine Services, Inc., 905 F. Supp. 2d 121, 128 (D.D.C. 2012).

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 9 of 11
                                        PageID: 22635
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

**\*10** Riddell's reliance on Copper Market, supra, is misplaced. In that case the plaintiffs alleged the defendants conspired to manipulate global copper prices and sought documents from RLM, a public relations firm that consulted with a defendant (Sumitomo). However, RLM was only hired after Sumitomo anticipated a Commodities Futures Trading Commission ("CFTC") investigation and related litigation. Id. at 215. The chief object of RLM's engagement was "the management of press statements in the context of anticipated litigation[.]" Id. at 215-16. This was not surprising since RLM specialized in litigation related crisis management. Id. at 221. The role of MSL and Riddell's other consultants in the case is not remotely similar to the role RLM played in Copper Market. Here, MSL was hired for ordinary P.R. work. Unlike Copper Market there was no anticipated or pending litigation for which MSL's services were used or needed. Nor did MSL provide information to Riddell's attorneys that was necessary for them to provide legal advice.

To be sure, however, some of MSL's documents are privileged. These are instances where MSL's documents indicate actual legal advice was conveyed or where this is apparent. These documents include: PRIV 216 (legal analysis by outside counsel), 218 (only 1/4/11, 11:10 a.m. email asking for legal insight), 325 (work-product regarding Schutt Sports lawsuit), 390 (legal analysis of legislation), 443 (only as to 1/14/11, 12:22 p.m. email referring to attorney advice), 448 (legal analysis of box layout), 455 (legal analysis regarding videos), 560 (legal analysis re letter to Congress), 666 (legal analysis re O & A), and 1716 (only as to 10/15/10, 1:14 p.m. email referring to legal advice).

(2) Cohn & Wolfe, Empire Green and Headrush Creative

These companies served as marketing agents or consultants for Riddell. RLB at 13. Their 21 documents reflect that Riddell consulted with the companies with regard to a documentary video and some literature.[12] For the reasons already discussed the documents merely reflect business and commercial communications that are not privileged. However, a number of these documents reflect and discuss privileged attorney advice and communications. The following documents fit into this category and do not have to be produced because they are privileged: PRIV 766 (legal analysis regarding use of terminology), 770 (preparation for attorney meeting), 818 (discussion regarding appropriate legal language for video), 840 (legal analysis regarding use of terminology), 1186 (email discussing attorney advice), 1199 (email discussing attorney advice), and 1285 (legal analysis regarding use of terminology).[13]

(3) SFIA

The Sports & Fitness Industry Association ("SFIA") is the trade association of leading industry sports and fitness brands, suppliers, retailers and partners. RLB at 13. Tom Cove is President of the SFIA. Id. These 10 documents the Court reviewed in camera involve emails from or to Tom Cove that discuss Congressional and regulatory developments and updates.[14] In particular, there is a discussion regarding a bill drafted by Senators Udall and Rockefeller that would give additional authority to the FTC regarding sports or fitness products and safety benefits ("Youth Sports Concussion Act"). Except for PRIV 488, these documents are not privileged because they do not involve legal advice. For the most part the documents merely involve a discussion of the particulars of Senator Udall's bill. Although the Court acknowledges there are emails sent to or from attorneys, the emails are not privileged because they do not contain legal advice. PRIV 488 is different in that it conveys legal advice prepared by an attorney acting in a legal role rather than a lobbying or P.R. role. The Court finds that the community of interest ("COI") doctrine applies to this document. See *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*, C.A. No. 10-6076 (RMB/JS), 2012 WL 1981559 (D.N.J. June 1, 2012). Since SFIA's other nine documents are not privileged, there is no need to decide if the COI doctrine applies. The COI doctrine does not create a new or separate privilege. Instead, it prevents waiver of the attorney-client privilege when otherwise privileged communications are shared with a third-party. Id. at \*4.[15]

Conclusion

**\*11** For the reasons discussed above, plaintiffs' challenges to the 272 documents on defendant's privilege log are SUSTAINED in part and OVERRULED in part. As is evident from the Court's analysis, most of Riddell's documents are not privileged. This results from the fact that the documents do not reflect any legal analysis, opinions or advice, and are merely routine business correspondence. The Court finds that the unprotected documents were not made for the purpose of obtaining legal advice from an attorney or to assist an attorney to formulate and render legal advice to a client. To the extent a legal issue is touched upon, it is evident the predominant purpose of the document was business in

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 10 of 11
                                              PageID: 22636
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

nature. Further, Riddell's privilege claims are not supported by competent evidence. Roche's general Declaration does not satisfy Riddell's burden of proof. To the extent the Court sustained a privilege assertion, it was because the privileged nature of the document was apparent from the face, content or context of the document.

An accompanying Order will be entered.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7108455

## Footnotes

1 The named defendants in the case are Riddell, Inc., Riddell Sports Group, Easton-Bell Sports, Inc., Easton-Bell Sports, LLC, EB Sports Corporation, RBG Holdings Corporation and All-American Sports Corporation. These entities will be collectively referred to as "Riddell" or "defendants".

2 See attachment to Riddell's July 15, 2016 Letter Brief ("RLB").

3 The Court is not able to identify the designated number of the Simbex document at issue and makes no determination whether it is privileged. Riddell should promptly forward a copy of the document to the Court for an in camera review.

4 It is not insignificant that Roche did not specifically address any challenged document. Instead, Roche speaks in broad general terms that courts repeatedly hold is insufficient to satisfy the burden to establish a privilege. *Younes v. 7-Eleven, Inc.*, C.A. Nos. 13-3500, 13-3715, 13-4578, 2014 WL 1959246, at *3 (D.N.J. May 15, 2014)("Broad boilerplate assertions are insufficient to establish that a privilege exists."). For example, in deciding whether a particular document is privileged it is not helpful to merely assert that generally sales representatives "receive legal guidance, input and approval from counsel" and they are "integral to the provision of legal advice." Nor is it helpful to the privilege analysis to know that Riddell's agents "regularly sought and received legal advice from Riddell's ... counsel[.]" This information is silent about whether a particular document is privileged. While the Court is not averse to representative sampling, Roche did not even address any specific categories of documents. In fact, Roche's Declaration did not mention any document. *U.S. v. Rockwell Intern.*, 897 F.2d 1255, 1265 (3d Cir. 1990)(blanket assertions do not support a privilege claim). In addition to relying upon its Declarant's general statements to support its privilege assertions, Riddell also relies upon the conclusions in its letter brief. This is inadequate to support a privilege claim. Id. While Riddell offers to provide more specific information if requested by the Court, the Court is adverse to a "do over" of this dispute. Riddell already had a sufficient opportunity to submit whatever information it wanted in support of its privilege claim.

5 Much of Riddell's submission is spent arguing that plaintiffs waived their right to assert the present objections. The Court discounts the argument and will address the merits of the present dispute. The Court granted plaintiffs leave to challenge Riddell's privilege assertions at the June 27, 2016 conference. It is true that at that time plaintiffs indicated they were only raising 30-50 objections. Nevertheless, the Court would have granted plaintiffs the same leave even if plaintiffs raised objections to 272 documents. The Court rejects any notion that plaintiffs made deliberate misrepresentations to the Court or acted other than in good faith.

6 Rather than using a "primary purpose" test for mixed communications, some courts use a "but for" test. *Graco, Inc. v. PMC Global, Inc.*, C.A. No. 08-1304 (FLW), 2011 WL 666048, at *16 (D.N.J. Feb. 14, 2011)("[T]he party claiming privilege should demonstrate that the communication would not have been made but for the client's need for legal advice or services")(citation and quotation omitted).

7 One exception is PRIV 325 discussed supra.

8 These documents are listed on Exhibit I to Riddell's Letter Brief.

9 Although Riddell did not specifically address each document it claims is privileged, it highlighted a few examples to prove its point. Presumably, Riddell attempted to pick out the best of the bunch. Riddell's

Case 1:19-md-02875-RMB-SAK   Document 1011-20   Filed 03/09/21   Page 11 of 11
 PageID: 22637
In re Riddell Concussion Reduction Litigation, Not Reported in Fed. Supp. (2016)

examples are not convincing. For example, PRIV 007 is a series of emails concerning a youth helmet that had a "cave in." The emails do not involve legal advice but merely an investigation of the incident. The email is not word-product for the reasons discussed infra. PRIV 008 merely involves a discussion about a press release. PRIV 104 discusses a competitor's offer to donate helmets to a high school. PRIV 707 discusses a media inquiry regarding Virginia Tech football helmet ratings. None of these "illustrative" documents address issues necessary for legal advice. Even if a sliver of the documents is necessary for an attorney to render legal advice, it is unquestionably the case that the primary purpose of the documents is related to Riddell's business and not legal concerns.

10    These documents are listed on Exhibit J to Riddell's Letter Brief.

11    New York takes a narrower position that the Court is not applying here. In Egiazaryan, 290 F.R.D. 431, the Court stated the party asserting the privilege must show the disclosure to the public relations firm was necessary for the client to obtain informed legal advice. Also, the necessity element "means more than just useful or convenient, but rather requires that the involvement of the [P.R. Firm] be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications" (citation and quotation omitted).

12    These 21 documents are listed on Exhibit K to Riddell's Letter Brief.

13    The Court agrees with Riddell that PRIV 770 is privileged. The Court disagrees as to 400 (summary of a non-privileged discussion with Congressional Staff), 1187 (comments on videos) and 1285 (use of a new marketing term). PRIV 1286 is interesting in that it mentions that attorneys did not object to a new marketing term to replace CRT. However, Riddell did not satisfy its burden to show the attorney's input was legal in nature. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 95 (D.N.J. 1990)(in order to prevent parties from abusing the attorney-client privilege to thwart otherwise proper discovery, "the claimant must demonstrate that the communication would not have been made but for the client's need for legal advice or services").

14    These 10 documents are listed on defendants' Exhibit L.

15    The Court disagrees with Riddell that PRIV 359 is privileged. PRIV 359 is simply a non-privileged draft letter to Senator Rockefeller.

---

**End of Document**        © 2021 Thomson Reuters. No claim to original U.S. Government Works.