# Exhibit X

| **From:** | David J. Stanoch |
| **To:** | Johnston, Sarah; Geoppinger, Jeff |
| **Cc:** | Valsartan PEC |
| **Subject:** | Valsartan - Draft Discovery to Retail Pharmacy and Wholesaler Defendants |
| **Date:** | Tuesday, December 8, 2020 7:39:00 PM |
| **Attachments:** | Valsartan - DRAFT 2nd Set of Doc Reqs. to Retailers.pdf |
| | Valsartan - DRAFT 2nd Set of Doc Reqs. to Wholesalers.pdf |
| | Valsartan - draft 30b6 depo notice to retailers.pdf |
| | Valsartan - draft 30b6 depo notice to wholesalers.pdf |

Dear Sarah and Jeff,

In your respective roles as liaison counsel for Retail Pharmacy and Wholesaler Defendants, please find attached Plaintiffs' draft Rule 30(b)(6) notices and draft second sets of document requests. Please let us know dates next week for meet and confers on these items. We intend to present any un-agreed issues to the Court at the CMC at the end of December, so they may be promptly entered by the Court and responded-to sufficiently in advance of the April 1, 2021 fact discovery deadline. In the meantime, please provide us dates for each Retail Pharmacy and Wholesaler Defendant's Rule 30(b)(6) deposition within the fact discovery period. For your reference, the red strikethrough text shows what we removed from the preliminary statements and definitions/instructions in the first sets of document requests.

Regards,
Dave


David J. Stanoch
Kanner & Whiteley, L.L.C.
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
www.kanner-law.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALSARTAN**<br>**PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Judge<br><br>Honorable Joel Schneider,<br>Magistrate Judge |

## PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO WHOLESALER DEFENDANTS

### TO ALL WHOLESALER DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Local Civil Rule 34.1, and in accordance with the Court's prior rulings, Plaintiffs propound the following second set of requests upon each Wholesaler Defendant. These requests are without prejudice to Plaintiffs' rights to serve other requests consistent with Rules 26 and 34.

~~Plaintiffs and Wholesaler Defendants agree that the requests for production that follow represent the Court-Approved Requests for Production to be answered by the Wholesaler Defendants in accordance with the Court's ruling on discovery issues following argument of the Parties on July 6, 2020, (D.E. 507), and incorporated herein. The Wholesaler Defendants have advised, and Plaintiffs understand, that there may be differences in the type and extent of data available and the type and extent of data available in a reasonably accessible format. Following service of these requests for production, each Wholesaler Defendant shall serve its own individual responses to the requests set forth below, specifying any issues that the Wholesaler Defendant has with responding to the requests. The Parties will meet and confer in good faith on the substance of any such responses, including to the extent necessary to address Plaintiffs' reasonable questions regarding Wholesaler Defendant's answers.~~

**DEFINITIONS:**

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"Manufacturer Defendants"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for, or the finished dose formulation of, valsartan.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**"Documents"** includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database. ~~For purposes of these discovery requests, "Documents" shall refer only to centrally stored, non-custodial data maintained by the Wholesaler Defendants in the ordinary course of business, and shall not refer to emails or custodial data held by individual employees of the Wholesaler Defendants.~~

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Personal Injury Complaint (Dkt. No. 121), including any agents, employees, or predecessor entities.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan" or "Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Wholesaler Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. No. 398), , including any agents, employees, or predecessor entities.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

**INSTRUCTIONS:**

**Non-privileged information:** These Requests seek only information that is not privileged or otherwise protected from disclosure by applicable protection, including but not limited to work product protection or other requirements imposed or protections afforded by applicable law or regulation.  This does not relieve any responding Defendant from serving a privilege log consistent with the Federal Rules of Civil Procedure.

**DOCUMENTS TO BE PRODUCED:**

1. All documents relating to any representation or warranty provided by any manufacturer or seller of VCDs to you or any other downstream purchaser.

2. All documents relating to any representation or warranty provided by or passed on by you to any downstream purchaser.

3. All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with manufacturers, etc.).

4. All agreements relating to your sale of VCDs.

5. All documents reflecting your inventory management policies, practices and procedures.

6. All documents relating to the stock life for VCDs maintained in your own inventories, including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.

7. All documents relating to the stock life for VCDs maintained in your customers' inventories, including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and your proprietary inventory management systems for retail pharmacies (e.g., McKesson InventoryManager, McKesson SupplyManager, Cardinal Inventory Management Solutions, Amerisource ABC Order, etc.).

8. All communications between you and any Manufacturer Defendant relating to your purchase of, or the recalls of, VCDs.

9. All communications between you and any Retail Pharmacy Defendant relating to your sale or, the recalls of, VCDs.

10. Organizational charts or other documents sufficient to show the names, titles, and responsibilities of employees or agents involved in the following functions: (i) the purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and shipping of VCDs; (iv) the recall of VCDS.

11. To AmeriSource only: All documents relating to any policies, practices, or procedures for documents that accompany shipments of VCDs that you purchase, or that you sell. [To AmeriSource only because they were only Wholesaler Defendant not to produce a "final written policy" on what shipment documents accompany incoming or outgoing VCD shipments.]

Dated: December __, 2020

/s/ Adam Slater
Adam M. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
aslater@mazieslater.com

Ruben Honik
**Golomb & Honik, PC**
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 278-4449
rhonik@golumbhonik.com

Daniel Nigh
**Levin Papantonio**
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7013
dnigh@levinlaw.com

Conlee Whiteley
**Kanner & Whiteley, LLC**
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
c.whiteley@kanner-law.com

## CERTIFICATE OF SERVICE

I certify that on the __ day of December 2020, I electronically transmitted the attached document to counsel of record for all Wholesaler Defendants.

*/s/ Adam M. Slater*
Adam M. Slater

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALSARTAN** **PRODUCTS LIABILITY LITIGATION** **This Document Relates to All Actions** | MDL No. 2875 Honorable Robert B. Kugler, District Judge Honorable Joel Schneider, Magistrate Judge |

**PLAINTIFFS' SECOND AMENDED SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO RETAIL PHARMACY DEFENDANTS**

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Local Civil Rule 34.1, and in accordance with the Court's rulings at oral argument on December 11, 2019 and December 18, 2019, and in the Order filed on December 13, 2019, as well as the Court's Orders on macro discovery issues filed on November 25, 2019, Plaintiffs propound the following second amended set of requests upon each Retail Pharmacy Defendant. These requests are without prejudice to Plaintiffs' rights to serve other requests consistent with Rules 26 and 34.

~~Plaintiffs understand and have been advised by the Retail Pharmacy Defendants that the requests that follow represent the Court-Approved Requests for Production to be answered by the Retail Pharmacy Defendants, and are a uniform discovery instrument negotiated by the Retail Pharmacy Defendants at the direction of the Court and follow several rulings by the Court on discovery issues,[1] including but not limited to the Court's ruling on macro discovery following~~

---

~~[1] Each request is to be interpreted consistent with the Court's oral rulings at the November 20, 2019 hearing on macro discovery issues; the November 25, 2019 Order on macro discovery issues pertaining to the Manufacturing Defendants (Dkt. 303); the parties' representations as reflected in the record of the December 11, 2019 discovery hearing; and the Court's oral and/or written rulings following the December 11, 2019 discovery hearing, the January 15, 2020 discovery hearing, the January 28, 2020 discovery conference, the February 13, 2020 discovery conference, and the July 6, 2020 macro discovery hearing.~~

argument of the parties on July 6, 2020. The Retail Pharmacy Defendants have advised, and Plaintiffs understand, that there remain differences in the ability of each Retail Pharmacy Defendant to respond to the requests below, including differences in what data is available, and in the type and extent of data that is available in a reasonably accessible format. Following service of these requests for production, each Retail Pharmacy Defendant shall serve its own individual responses to the requests set forth below, including identification of any specific issues that the Retail Pharmacy Defendant has with the requests. The parties will meet and confer in good faith on the substance of any such responses, to the extent necessary, and to address any deficiencies or Plaintiffs' reasonable questions regarding Retail Pharmacy Defendants' responses.

**DEFINITIONS:**

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"API Manufacturer"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for valsartan.

**"Finished Dose Manufacturer"** includes any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of valsartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

**"Manufacturer Defendants"** includes API Manufacturers and Finished Dose Manufacturers including any subsidiaries or affiliated entities.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**"Documents"** includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof.

This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form). Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database. ~~For purposes of these discovery requests, "Documents" shall refer only to centrally stored, non-custodial data maintained by the retailer pharmacy in the ordinary course of business and available via reasonable search of available records and in a reasonably accessible format, and shall not refer to documents or data maintained solely by individual stores or pharmacies, or to emails or custodial data held by individual employees of the Retail Pharmacy Defendants.~~

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. 398), including any agents or predecessor entities.

**"TPP"** refers to Third Party Payors, including health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third party payors, and any other health benefit provider in the United States of America and its territories.

 **"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan"** or **"Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Retail Pharmacy Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. 398), including any agents, employees, or predecessor entities, to the extent known to the Retail Pharmacy Defendants.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.


**INSTRUCTIONS:**

**Non-privileged information:** These Requests seek only information that is not privileged or otherwise protected from disclosure by applicable protection, including but not limited to work product protection or other requirements imposed or protections afforded by applicable law or regulation. This does not relieve any responding Defendant from serving a privilege log consistent with the Federal Rules of Civil Procedure.

**DOCUMENTS TO BE PRODUCED:**

1. **All documents relating to any representation or warranty provided by any manufacturer, wholesaler, or other seller of VCDs to you directly or indirectly.**

2. **All documents relating to any representation or warranty provided by or passed on by you to any consumer or third-party payor who paid any amount for VCDs sold by you.**

3. **All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with wholesalers, etc.).**

4. **All agreements relating to your sale of VCDs (e.g., contracts with third-party payors, pharmacy benefits managers, etc.).**

5. **All documents reflecting your inventory management policies, practices and procedures pertinent to VCDs.**

6. **All documents relating to the stock life for VCDs maintained in your own inventories (both distribution center and store levels), including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.**

7. **All documents relating to the stock life for VCDs maintained in your inventories (both distribution center and store levels), including but not limited to FIFO, LIFO, JIT,**

turnover ratio, replenishment/re-order triggers, and your proprietary inventory management systems.

8.  All communications between you and any Wholesaler or Manufacturer Defendant relating to your purchase of, or the recalls of, VCDs.

9.  Organizational charts or other documents sufficient to show the names, titles, and responsibilities of employees or agents involved in the following functions: (i) the purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and shipping of VCDs; (iv) the recall of VCDS.

Dated: December __, 2020

/s/ Adam Slater
Adam M. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
aslater@mazieslater.com

Daniel Nigh
**Levin Papantonio**
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7013
dnigh@levinlaw.com

Ruben Honik
**Golomb & Honik, PC**
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 278-4449
rhonik@golumbhonik.com

Conlee Whiteley
**Kanner & Whiteley, LLC**
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
c.whiteley@kanner-law.com

## CERTIFICATE OF SERVICE

I certify that on the ___ day of December 2020, I electronically transmitted the attached document to counsel of record for all Retail Pharmacy Defendants.


_/s/ Adam M. Slater_____
Adam M. Slater

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | Hon. Robert. B. Kugler |
| This Document Relates To: *All Actions* | Civ. No. 19-2875 (RBK/JS) |

**PLAINTIFFS' NOTICE OF VIDEOTAPED DEPOSITION
TO [WHOLESALER] PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:     ADDRESSEE

*Counsel for Defendant XXXXX*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take the deposition upon oral examination of one or more designated corporate representatives with regard to the topics set forth on Exhibit A attached hereto. The deposition(s) will commence on a date to be determined, at 9:00 a.m., at a location to be determined, and continue from day to day as needed.

The deposition(s) will be taken upon oral examination before an officer authorized to administer oaths and will continue from day to day, until completed. Testimony given during the deposition will be recorded by sound video recording and stenographic means.

DATED this _____ day of December, 2020

**MAZIE SLATER KATZ & FREEMAN, LLC**


By:___/s/ *Adam M. Slater*_____
        Adam M. Slater
        103 Eisenhower Parkway, Suite 207
        Roseland, New Jersey 07068
        Telephone: 973-228-9898

        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Adam M. Slater, hereby certify that on December ___, 2020, I caused true and correct copies of the foregoing to be transmitted via ECF to all counsel having registered an appearance on ECF, with courtesy copies served on counsel for Wholesaler Name, and Defendants' liaison counsel, via email.

DATED this ___ day of December, 2020.

**MAZIE SLATER KATZ & FREEMAN, LLC**


By: ___/s/ *Adam M. Slater*_____
        Adam M. Slater
        103 Eisenhower Parkway, Suite 207
        Roseland, New Jersey 07068
        Telephone: 973-228-9898

        ***Attorneys for Plaintiffs***

# EXHIBIT A

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"Manufacturer Defendants"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for, or the finished dose formulation of, valsartan.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Personal Injury Complaint (Dkt. No. 121), including any agents, employees, or predecessor entities.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan" or "Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Wholesaler Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. No. 398), including any agents, employees, or predecessor entities.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

**TOPICS**

1.  The testing and testing results of VCDs provided to you, or the testing and testing results of VCDs prepared by or for you.

2.  Your understanding of the cause of any contamination of VCDs with nitrosamines including NDMA.

3.  The extent of the nitrosamine contamination of VCDs, both in terms of the concentration per pill, and across all of the lots/batches.

4.  Your communications with any Manufacturer Defendant, Retail Pharmacy Defendant, or regulatory authority (including but not limited to the FDA) relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

5.  Your communications with any of your customers, or consumers or third-party payors, relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

6.  All oral and written statements (defined to include representations and warranties) that you received from any Manufacturer Defendant regarding quality, purity, content, or contamination issues related to VCDs.

7.  All oral and written statements (defined to include representations and warranties) that you made to or passed on to any customer or purchaser (including, e.g., Retailer Pharmacy Defendants, other retail pharmacies, consumers, or third-party payors) regarding the quality, purity, content, or contamination issues related to VCDs.

8.  Your product recall for VCDs, including who you communicated with, how, about what, and the retention, sequestration, return, or destruction of VCDs.

9.  All credits, indemnification, refunds, and/or penalties paid or provided by you in connection with actual or potential nitrosamine contamination of VCDs.

10. All credits, indemnification, refunds, and/or penalties paid or provided to you in connection with actual or potential nitrosamine contamination of VCDs.

11. Your compliance or non-compliance with cGMPs as it relates to the quality assurance, quality control, and sale of VCDs.

12. Tracing of VCDs purchased by you (e.g., by NDC number, lot, batch, quantity, expiration date, and other metrics), and sold downstream by you for ultimate intended use by consumers in the United States.

13. The pricing of VCDs purchased by you for ultimate sale in the United States.

14.     The pricing of VCDs sold by you for ultimate use in the United States.

15.     The gross and net profits to you from your sale of VCDs in the United States.

16.     The quantity/units of VCDs sold in the United States.

17.     The purchase and sales data produced by you in this litigation (sample documents to be
        provided ahead of deposition during meet and confer process).

18.     The stock life for VCDs in your inventories, including but not limited to FIFO, LIFO,
        JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory
        management systems

19.     The stock life for VCDs in your customers' inventories, FIFO, LIFO, JIT, turnover ratio,
        replenishment/re-order triggers, and your proprietary inventory management systems for
        retail pharmacies

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | Hon. Robert. B. Kugler |
| This Document Relates To: *All Actions* | Civ. No. 19-2875 (RBK/JS) |

**PLAINTIFFS' NOTICE OF VIDEOTAPED DEPOSITION
TO [RETAIL PHARMACY] PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:     ADDRESSEE

*Counsel for Defendant XXXXX*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take the deposition upon oral examination of one or more designated corporate representatives with regard to the topics set forth on Exhibit A attached hereto. The deposition(s) will commence on a date to be determined, at 9:00 a.m., at a location to be determined, and continue from day to day as needed.

The deposition(s) will be taken upon oral examination before an officer authorized to administer oaths and will continue from day to day, until completed. Testimony given during the deposition will be recorded by sound video recording and stenographic means.

DATED this _____ day of December, 2020

**MAZIE SLATER KATZ & FREEMAN, LLC**


By:  /s/ *Adam M. Slater*
       Adam M. Slater
       103 Eisenhower Parkway, Suite 207
       Roseland, New Jersey 07068
       Telephone: 973-228-9898

       ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I, Adam M. Slater, hereby certify that on December ___, 2020, I caused true and correct copies of the foregoing to be transmitted via ECF to all counsel having registered an appearance on ECF, with courtesy copies served on counsel for Wholesaler Name, and Defendants' liaison counsel, via email.

DATED this ___ day of December, 2020.

**MAZIE SLATER KATZ & FREEMAN, LLC**

By:___ */s/ Adam M. Slater*_____
            Adam M. Slater
            103 Eisenhower Parkway, Suite 207
            Roseland, New Jersey 07068
            Telephone: 973-228-9898

            ***Attorneys for Plaintiffs***

# EXHIBIT A

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"Manufacturer Defendants"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for, or the finished dose formulation of, valsartan.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2012 through the December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' June 17, 2019 Master Personal Injury Complaint (Dkt. No. 121), including any agents, employees, or predecessor entities.

**"Valsartan"** or **"VCDs"** means any drug with valsartan as an active ingredient. For purposes of these Requests, "Valsartan" or "VCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Valsartan" or "Recalled VCDs"** means any drug with valsartan as an active ingredient, as well as all finished drug formulations of valsartan, including any valsartan containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Wholesaler Defendant(s) in the ordinary course of business.

**"You," "your"** or **"defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' March 13, 2020 Consolidated Second Amended Economic Loss Class Action Complaint (Dkt. No. 398), including any agents, employees, or predecessor entities.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

## <u>TOPICS</u>

1.    The testing and testing results of VCDs provided to you, or the testing and testing results of VCDs prepared by or for you.

2.    Your understanding of the cause of any contamination of VCDs with nitrosamines including NDMA.

3.    The extent of the nitrosamine contamination of VCDs, both in terms of the concentration per pill, and across all of the lots/batches.

4.    Your communications with any Manufacturer Defendant, Wholesaler Defendant, or regulatory authority (including but not limited to the FDA) relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

5.    Your communications with any of your customers, or consumers or third-party payors, relating to the content/purity/contamination of VCDs with nitrosamines including NDMA.

6.    All oral and written statements (defined to include representations and warranties) that you received from any person from whom you purchased VCDs (including Manufacturer or Wholesaler Defendants) regarding quality, purity, content, or contamination issues related to VCDs.

7.    All oral and written statements (defined to include representations and warranties) that you made to or passed on to any consumer or third-party payor that paid any amount for VCDS regarding the quality, purity, content, or contamination issues related to VCDs.

8.    Your product recall for VCDs, including who you communicated with, how, about what, and the retention, sequestration, return, or destruction of VCDs.

9.    All credits, indemnification, refunds, and/or penalties paid or provided by you in connection with actual or potential nitrosamine contamination of VCDs.

10.    All credits, indemnification, refunds, and/or penalties paid or provided to you in connection with actual or potential nitrosamine contamination of VCDs.

11.    Your compliance or non-compliance with cGMPs as it relates to the quality assurance, quality control, and sale of VCDs.

12.    Tracing of VCDs purchased by you (e.g., by NDC number, lot, batch, quantity, expiration date, and other metrics), and sold downstream by you for ultimate intended use by consumers in the United States.

13.    The pricing of VCDs purchased by you for ultimate sale in the United States.

14.    The pricing of VCDs sold by you for ultimate use in the United States.

15.    The gross and net profits to you from your sale of VCDs in the United States.

16.    The quantity/units of VCDs sold in the United States.

17.    The purchase and sales data produced by you in this litigation (sample documents to be provided ahead of deposition during meet and confer process).

18.    The stock life for VCDs in your inventories (both distribution centers and retail stores), including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.