# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, : | |
| LOSARTAN, and IRBESARTAN : | MDL No. 19-2875 (RBK/KW) |
| PRODUCTS LIABILITY LITIGATION : | |
| : | |
| **This Order Relates to all Cases** : | |

## SPECIAL MASTER ORDER NO. 6

## MARCH 12, 2021

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

The Manufacturer Defendants have moved to quash Plaintiffs' subpoenas directed to non-party foreign entities. (Doc. 652.) The motion to quash raised a number of issues, most of which were resolved by the Honorable Joel Schneider prior to his retirement.[1] Two issues, however, were left unresolved by Judge

---

[1] By text order entered on January 11, 2021 (Doc. 724), Judge Schneider confirmed rulings he made on the motion to quash during oral argument held telephonically on January 5, 2021. Specifically, Judge Schneider resolved issues concerning the standing of the Manufacturer Defendants' to challenge the third-party subpoenas; whether Plaintiffs had complied with the notice requirements of Fed. R. Civ. P. 45(a)(4); whether the Manufacturer Defendants could have a "first look" at the documents and electronically stored information ("ESI") before being produced to Plaintiffs; whether the subpoenas called for production outside the geographic limits of the "place of compliance" provisions of Fed. R. Civ. P. 45(c); and whether the information sought by Plaintiffs was relevant. Judge Schneider's rulings can be found at pages 34 through 37 and 55 through 70 of the transcript of the January 5, 2011 oral argument. (Doc. 719).

Schneider due to the lack an adequate record: (1) whether the Manufacturer Defendants could be compelled to accept service of the subpoenas on behalf of the foreign non-parties; and (2) whether the Manufacturer Defendants could be compelled to produce the information sought by Plaintiffs on the theory that the documents held by the third parties were within the "possession, custody or control" of the Manufacturer Defendants.  *See* Fed. R. Civ. P. 45(a)(1)(iii) ("Every subpoena must . . . command each person to whom it is directed to produce documents [and ESI] . . . *in that person's possession, custody or control*." (Emphasis added.)).  By Order entered on January 11, 2021, the Court established a supplemental briefing schedule on the question of whether the Manufacturer Defendants "are in possession, custody, or control of the disputed foreign entities' documents/ESI."  (Doc. 727 at 2.)  The supplemental briefing was completed with the submission of the Manufacturer Defendant's letter brief on February 10, 2021.  (Doc. 860.)

### I.     ACCEPTANCE OF SERVICE OF SUBPOENAS

The Manufacturer Defendants argue that "Rule 45 requires the Hague Convention Procedures to be followed when a party attempts to obtain discovery from a non-party foreign national and/or corporation."  (Doc. 766 at 4.)  They point out that the targets of the subpoenas "are (1) not parties to the lawsuit; (2) have not voluntarily subjected themselves to the discovery process; (3) are foreign

corporations; and (4) are not otherwise subject to the jurisdiction of the Court." (*Id*.) They further assert that Plaintiffs seek to require that they accept service of the subpoenas in order to avoid the lengthy delays that often result when Hague Convention procedures are employed.

Plaintiffs have not cited any authority supporting the proposition that the Manufacturer Defendants can be compelled to accept service of subpoenas directed to foreign entities so that Plaintiffs can avoid the time-consuming and cumbersome Hague Convention procedures. Indeed, Plaintiffs have not cited any case holding that a party to litigation can be compelled to accept service of a subpoena addressed to a foreign entity that is not a party to the case. And courts have refused to allow a party to avoid its obligation to effectuate service of a subpoena on a non-party by requiring another person to do so. *See Natl. Rifle Assn. of Am. v. Cuomo*, 118CV566TJMCFH, 2020 WL 777252, at *5 (N.D.N.Y. Feb. 18, 202) ("Although it may be more cumbersome and less expedient, plaintiff may appropriately resort to the Hague Convention for proper service upon the Lloyd's entities."). *See also Inland Waters Pollution Control, Inc. v. Jigawon, Inc.*, 05-74785, 2008 WL 11357838, at *3 (E.D. Mich. Feb. 21, 2008) (witness's lawyer may not be compelled to accept service of a subpoena for the nonparty witness).

Instead, Plaintiffs rely upon cases where courts have held that a party could be compelled to produce documents from non-parties over which it exercised the

3

requisite degree of control such that the documents were regarded as within the control of the party to the case. (Doc. 705 at 6-7; Doc. 824 at 3.) Particular reliance is placed upon *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129 (D. Del. 1986), in which the District of Delaware ruled that "[i]f a party has control over or shares control of documents with a third person, then a court can order production by means of its power over the party litigant." (Doc. 824 at 3.)

The control issue, however, is distinct from the question of whether a party can be compelled to accept service of a subpoena on behalf of a non-party. Effectuation of service carries with it consequences, including the duty to comply with the subpoena under penalty of contempt of court. *See* Fed. R. Civ. P. 45(g). A foreign non-party cannot be subjected to the authority of the court by having a party accept service of a subpoena on its behalf. Accordingly, Plaintiffs' request that the Manufacturer Defendants be compelled to accept service of the subpoenas on behalf of the non-party targets of the subpoenas will be denied.[2]

## II.    POSSESSION, CUSTODY, OR CONTROL

Even though the Manufacturer Defendants cannot be ordered to accept service of the subpoenas on behalf of non-parties, there remains the question of

---

[2] Plaintiffs, of course, remain free to comply with the provisions of Fed. R. Civ. P. 45 to effect service on a foreign entity.

whether production of the requested material can be required on the theory that the documents are nonetheless within the possession, custody, or control of the Manufacturer Defendants. It appears evident that the Manufacturer Defendants do not have actual "possession" of the documents sought from the non-parties. Presumably, Plaintiffs have already requested that the Manufacturer Defendants produce the very documents they now seek from the non-parties and any such documents in the Manufacturer Defendants' possession have been produced.[3] Instead, the dispositive question is whether the Manufacturer Defendants have control over the documents sought from third parties.

"The court can compel a corporate entity that is deemed to be in 'control' of documents to produce those documents, even if they are also in the possession and control of a nonparty." *Swindell Dressler Intern. Co. v. Travelers Cas. and Sur. Co.*, 827 F. Supp. 2d 498, 505 (W.D. Pa. 2011). The converse is equally true: "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce." *Gerling Intern. Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988).

---

[3] Plaintiffs have asked that Aurobindo now be "compelled to formally respond to Plaintiffs' foreign subpoenas, pointing to Bates numbers for documents that are responsive and have been produced." (Doc. 824 at 6.) Plaintiffs, however, have not pointed to any authority that would require Aurobindo to confirm that it has produced the documents sought via third party subpoenas, and Aurobindo will not be compelled to do so.

The dispositive question here, therefore, is whether the Manufacturer Defendants can be deemed to be in "control" of the documents sought in the third-party subpoenas.[4]

Plaintiffs' position on what constitutes control has evolved over the course of the extensive briefing on this issue.  Initially, citing *Swindell Dressler,* Plaintiffs asserted that "[i]t has been well established that the test for control is not defined as mere possession, but as *the legal right to obtain such documents on demand*." (Doc. 705 at 6 (emphasis added), quoting *Swindell Dressler*, 827 F. Supp. 2d at 505.).   Plaintiffs then cited to cases where the legal right to obtain documents was based upon terms in contracts between the party and a non-party.  (Doc. 705 at 6-7.)  In their February 1, 2021 submission, while conceding that they "are unable to point to the precise contractual language" that confers upon the Manufacturer Defendants the right to compel the targets of the third-party subpoenas to produce of the documents in question, (Doc. 824 at 4), Plaintiffs asserted that "contracts are

---

[4] It has been recommended that "before any requests for documents or ESI from a custodial non-party are issued or enforced, the threshold analysis should be whether a party to the litigation has possession, custody, or control of the documents or ESI." *See* The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties, Second Edition,* 22 SEDONA CONF. J. 1, 17 (forthcoming 2021).  It may have proven more efficient if Plaintiffs had first sought the documents they contend are within the control of the Manufacturer Defendants pursuant to Fed. R. Civ. P. 34 requests instead of by way of Rule 45 subpoenas.  That appears to have been the route taken in *Afros*, upon which Plaintiffs place heavy reliance.

not the only manner of establishing control over documents." (*Id.* at 3.) Instead, argued Plaintiffs, "[i]f a party to litigation has the *practical ability* to obtain discovery from a non-party, courts in the Third Circuit have compelled production." (*Id.*) Thus, it appears the Plaintiffs have moved away from the "legal right" test to "the practical ability" test to compel the Manufacturer Defendants to produce documents that are not within their actual possession or custody, but are supposedly within their control. (Doc. 824 at 3-4.) Plaintiffs argue that, because most of the third party subpoena targets performed work for the Manufacturer Defendants, the documents they seek could be obtained by the Manufacturer Defendants, irrespective of any contractual right to compel the third parties to produce them.

In support of the assertion that the "practical ability" test has been applied in the Third Circuit, Plaintiffs cite the District Court decisions in *Moretti v. Hertz Corp.*, CV 14-469-LPS, (D. Del. Sept. 30, 2018); *Dartell v. Tibet Pharm., Inc.*, CV 14-3620 (JMV), 2016 WL 11653632, at *4 (D.N.J. Feb. 29, 2016)[5]; and *Afros*,

---

[5] The Court in *Dartell* refused to require HSBC Bank USA to produce documents held by its Hong Kong affiliate, "finding that the corporate relationship between HSBC Bank USA and HSBC HK does not present the 'rare circumstances' to justify disregarding the separate and distinct corporate identity of HSBC." *Id.* at *4. Thus, *Dartell* does not advance Plaintiffs' cause.

7

*supra.*[6] (Doc. 824 at 3-4.) There are, however, rulings from District Courts, including the District of New Jersey, that reject the "practical ability" test in favor of the "legal right" test. *See, e.g.*, *Eisenband v. Pine Belt Automotive, Inc.*, CV178549FLWLHG, 2020 WL 1486045, at *8 (D.N.J. Mar. 27, 2020) ("'It has been well established that the test for control is not defined as mere possession, but as *the legal right to obtain such documents on demand*.'" (quoting *Swindell Dressler,* 827 F. Supp. 2d at 505.)); *In re Novartis and Par Antitrust Litig.*, 2:19-MC-00149, 2019 WL 5722055, at *6 (E.D. Pa. Nov. 5, 2019) ("The court has declined to apply a broader definition of 'control' that would also include an inquiry into the practical ability of the subpoenaed party to obtain documents.") *Zaloga v. Borough of Moosic*, 3:10-CV-2604, 2012 WL 1899665, at *2 (M.D. Pa. May 24, 2012) (same); *LG Philips LCD Co., Ltd. v. Tatung Co.*, CV 04-343 JJF, 2007 WL 9771322, at *5 (D. Del. Feb. 14, 2007), report and recommendation adopted, CV 04-343-JJF, 2007 WL 9771352 (D. Del. July 3, 2007) ("What is necessary . . . is a conclusion that the party subject to production has *a legal right to obtain the documents on demand* made to the non-party.").

---

[6] In *Afros,* the court found that evidence of intercorporate relationships supported its determination that the documents were within the control of the party such that it could be compelled to produce documents in the possession of a related non-party. 113 F.R.D. at 132. With one exception, no evidence has been presented to date that shows any intercorporate relationships between the Manufacturer Defendants and the subpoenaed non-parties.

Pronouncements from the Third Circuit on this issue have been a bit ambiguous. In *Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004), the Court seemed to adopt both standards in consecutive sentences:

> In the context of Fed.R.Civ.P. 34(a), *so long as the party has the legal right or ability* to obtain the documents from another source upon demand, that party is deemed to have control. *In the Rule 34 context, control is defined as the legal right to obtain required documents on demand.* (Emphasis added; citations omitted.)

*Mercy* cited *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988), in which Judge Stapleton wrote for the Court:

> In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce. *Societe Internationale v. McGranery, supra*; *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir.1984) ("control is the test with regard to the production of documents [and] is defined not only as possession, but as the legal right to obtain the documents requested on demand"); *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 (N.D.Ill.1977) ("the test is whether the party has a legal right to control or obtain" the documents); C. Wright & A. Miller, 8 Federal Practice & Procedure § 2210 ("Control is defined ... as the legal right to obtain the documents required on demand").

There is no need to resolve this conundrum because, with one exception, Plaintiffs have not shown that the Manufacturer Defendants have the "legal right" to obtain the documents or the "practical ability" to secure them upon demand. As noted above, Plaintiffs have acknowledged that they are unable to point to contract

9

terms that obligate any of the targets of the third-party subpoenas to produce to particular Manufacturer Defendants the documents sought by Plaintiffs.[7] (Doc. 824 at 4.) Instead, they rely upon conclusory assertions not supported by citation to evidence. Thus, for example, they state that "[b]ecause these third parties were creating the documents sought by Plaintiffs in their capacities as Defendants' agents, Defendants necessarily have control over the work product produced by these entities and should be required to obtain it and produce it." (Doc. 705 at 7.) But there is no evidence that the Third Parties were agents of the Manufacturer Defendants. Instead, the third parties are independent entities with whom the Manufacturer Defendants contracted for performance of certain services or who were mere customers of the Manufacturer Defendants. To the extent that the Third Parties prepared and provided documents to any of the Manufacturer Defendants, they presumably fell within Rule 34 requests propounded by Plaintiffs. Indeed, Aurobindo has represented that documents provided to Aurobindo by the subpoenaed third parties, including Lantech, have already been produced to Plaintiffs by Aurobindo.[8]

---

[7] To the extent that Plaintiffs can point to specific contractual terms that require the third parties to provide documents to any of the Manufacturer Defendants on demand, Plaintiffs can seek reconsideration of this aspect of the holding.

[8] Plaintiffs have asked that Aurobindo "be compelled to formally respond to Plaintiffs' foreign subpoenas, pointing to Bates numbers for documents that are

Plaintiffs argue that the requisite contractual right to obtain documents upon demand can be inferred from Food and Drug Administration (FDA) "guidance on the terms that should be contained within contracts between Drug Manufacturers and suppliers." (Doc. 824 at 4.) This guidance, however, does not supply a contractual right for a Manufacturer Defendant to obtain on demand documents that the Plaintiffs are seeking from third parties. The question is: what did the contracts between the Manufacturer Defendants and the third parties provide with respect to the Manufacturer Defendants' right to compel production of documents from the third parties, not what they contracts should have provided.[9]

---

responsive and have been produced." (Doc. 824 at 6.) Plaintiffs offer no authority in support of this extraordinary request, and the relief sought will not be ordered.

[9] Plaintiffs have asked that the Court compel "(1) the production of all contracts with these third-party subpoena entities kept in the possession of the Defendants arguing for the motion to quash, (2) production of whatever documents can be requested and produced by these subpoena entities, or (3) sworn affidavits from the persons most knowledgeable about the efforts the Defendants made to obtain these documents from the entities." (Doc. 824 at 1.) As to the first item, Plaintiffs should have already requested production of the relevant contracts from the Manufacturer Defendants and Plaintiffs offer no support for their request that the Manufacturer Defendants be compelled to search for and produce contracts in connection with Plaintiffs' subpoenas to non-parties. ZHP has submitted the Declaration of Gregory D. Herrold, Esq., detailing his efforts to ascertain the existence of contracts between ZHP and subpoenaed third parties that may confer upon ZHP a contractual right to demand production of documents. (Doc. 860-2.) Mr. Herrold states that "ZHP has informed me that no such agreements exist." (*Id.* at 4.) In light of this assertion, there is no support for a finding that ZHP has a contractual right to force production of documents from the subpoenaed non-parties. Furthermore, Plaintiffs have not cited any authority for the proposition that a court can compel parties to request documents from non-parties or submit

Plaintiffs assert that "[i]t is absurd on it face to argue that [Manufacturer Defendants do] not have the practical ability to obtain documents from a service provider or customer." (Doc. 824 at 5.) But no support is provided for this assertion. Why would a customer, for example, feel obliged to produce documents merely because a manufacturer asked for their production?

Citing *Afros*, 113 F.R.D. at 129, Plaintiffs observe that "[w]hether a party has the 'practical' ability to obtain documents turns upon (1) the corporate structure encompassing different parties, (2) the nonparty's connection to [the] transaction at issue; and (3) to what degree nonparty will receive benefit of any award in [the] case." (Doc. 824 at 4.) With the exception of Linhai Huanan Chemical Co. Ltd., which is subsidiary of ZHP, Plaintiffs have not shown that there is any relationship between a particular subpoenaed third party and a Manufacturer Defendant. And while Plaintiffs have shown that the third parties have connections to certain matters at issue here, they have not shown that any third party has an interest in the outcome of this case. Under these circumstances, other than Linhai, it cannot be said that the Manufacturer Defendants have the practical ability to obtain the documents sought by the third party subpoenas addressed to foreign entities.

---

affidavits setting forth their efforts to obtain documents from non-parties, and such relief will not be ordered here.

As to Linhai, the record remains inadequately developed to make an informed decision. What is known is that Linhai is a wholly-owned subsidiary of ZHP. Courts "'have held that a litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent.'" *Barton v. RCI, LLC*, CIV.A. 10-3657 PGS, 2013 WL 1338235, at *6 (D.N.J. Apr. 1, 2013) (quoting *Camden Iron and Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991). But the mere existence of a parent/subsidiary relationship may not suffice to establish the parent's control of the subsidiary's documents. *See In re Novartis and Par Antitrust Litig.*, 2019 WL 5722055, at *6 ("Although control is often found when a parent corporation is requested to produce documents of a wholly-owned subsidiary, separate and distinct corporate identities are not readily disregarded. . . ."). As stated in *Barton,* 2013 WL 1338235, at *7:

> [I]n parent/subsidiary situations, the determination of control turns upon whether the intracorporate relationship establishes some legal right, authority or ability to obtain the requested documents on demand and "[e]vidence considered by the courts includes the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship".

These issues have not been explored in this matter. Accordingly, Plaintiffs will be accorded an opportunity to engage in a meet and confer with ZHP to

13

ascertain the information necessary to determine whether the relationship between ZHP and Linhai is such that ZHP should be required to produce the documents sought by the subpoena addressed to Linhai.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Manufacturer Defendants' Motion to Quash Plaintiffs' Third Party Subpoenas (Doc. 652) is granted to the extent that the Manufacturer Defendants will not be compelled to accept service of the subpoenas on behalf of the Third Parties and, with the exception of Linhai Huanan Chemical Co., Ltd., the Manufacturer Defendants will not be compelled to seek to obtain from the subpoenaed third parties the documents that Plaintiffs have requested from those third parties.

2. With respect to Linhai Huanan Chemical Co., Ltd., Plaintiffs and ZHP shall meet and confer on the details of the intercorporate relationship between the two entities and provide a written status report of the results of their discussions by March 22, 2021.

s/ Thomas I. Vanaskie
Hon. Thomas I. Vanaskie (Ret.)
Special Master
