IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____ :
                                          :
IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN :    MDL No. 2875 (RBK-KMW)
PRODUCTS LIABILITY LITIGATION             :
                                          :
                                          :
                                          :    **MTD OPINION 6: Liability of FDA**
                                          :    **Liaisons, Wrongful Death, Survival**
                                          :    **Actions, Loss of Consortium, Punitive**
                                          :    **Punitive Damages, Unjust Enrichment**
                                          :
*This Document Relates To All Actions*.    :
_____ :

KUGLER, United States District Judge:

Before the Court in this Multi-District Litigation ["MDL"] that concerns the sale in the U.S. of prescription generic drugs containing Valsartan ["VCDs"][1] and which were found to contain cancer-causing contaminants ["VCDs at issue"] are three Motions to Dismiss ["MTDs"] .

Since these MTDs  seek dismissal of several claims for each set of plaintiffs, the Court is issuing a series of opinions  to resolve the MTDs.  Each opinion is numbered in the series, this opinion being the third in the series.   This OPINION 6, which is LAST in the series resolves the arguments relating to claims for  FDA Liaisons,  Wrongful Death, Survival Actions, Loss of Consortium, Punitive Damages, and Unjust Enrichment.

An ORDER  6 of this date accompanies this OPINION 6.

Each MTD was brought by a different category of defendant, which is at a separate level in the drug supply chain.  The defendant categories[2] are:

---

[1] Although this MDL consolidates cases that allege injury from the U.S. sales of contaminated valsartan, irbesartan and losartan, as of yet, there are no master complaints in this MDL that concern losartan and irbesartan.   Therefore, defendants' motions here concern ONLY claims that allege injury relating to contaminated valsartan.

[2] Defendants also include repackagers and relabellers.  These were categorized as peripheral defendants and dismissed without prejudice from the MDL and without waiving any of their rights.  *See* ECF Doc. 248.

1) The manufacturers ["Mfrs"], which include manufacturers of the Active Pharmaceutical Ingredient ["API"] ["API Mfrs"] and manufacturers that make the finished Valsartan drug product ["Finished Mfrs"];

2) the business entities in the U.S. that obtain the finished drug product from the Mfrs ["Wholesalers"]; and distribute it to retail businesses in the U.S.; and

3) the retail businesses in the U.S. from which individuals can obtain the finished drug ["Pharmacies"].

Each MTD seeks dismissal of claims in all three Master Complaints.  These include:

1) Economic Loss Master Complaint ["ELMC"] (ECF Doc. 121) filed 17 June 2019 by individual plaintiffs and plaintiff business entities that paid for and/or insured the VCDs at issue taken by individual plaintiffs and alleges economic damages;

2)  Amended Personal Injury Master Complaint ["PIMC"] (ECF Doc. 122) filed 17 Jun 2019 by those individual plaintiffs who ingested the VCDs at issue and who were personally injured, including those who developed cancers or had cellular or bodily injury as a result; and

3) Medical Monitoring Master Complaint ["MMMC"] (ECF Doc. 123) filed 17 Jun 2019 by those individual plaintiffs who ingested the VCDs at issue and therefore bear an increased risk of developing cancer and consequently seek a fund to finance continued medical monitoring of that risk.

The previous five opinions have resolved issues relating to:

Lack of Standing;

Preemption by federal law and specifically by the Food Drug and Cosmetic Act

Primary Jurisdiction by the FDA;

 Subsumption:

 Deficiencies In Specific Claims, including fraud, unjust enrichment, negligence, negligence *per* se, strict liability, and breach of express and of implied warranty.

**The COURT HAVING REVIEWED** the parties' submissions (without a hearing in accordance with Rule 78.1 (b))  relating to, and for the reasons stated below, and for good cause shown:

The Court **DENIES** the defendants' motions to dismiss any claim in any Master Complaint against Prinston, Aurobindo Pharma USA, and Hetero USA on the ground plaintiffs have alleged properly these entities do not function exclusively as  FDA Liaisons;

To  the extent plaintiffs' tort, strict liability, warranty, and/or fraud cause(s) of action underlying their wrongful death, survivor, or consortium claims has(ve) been dismissed **WITH PREJUDICE** in this Court's previous motion to dismiss opinions,  the Court **GRANTS in part** defendants' motion to dismiss the plaintiffs' wrongful death, survivor, and/or consortium claims in the PIMC ;

To the extent,  plaintiffs' tort, strict liability, warranty, and/or fraud cause(s) of action underlying their wrongful death, survivor, or consortium claims has(ve) **NOT** been dismissed **WITH PREJUDICE** in this Court's previous  motion to dismiss opinions,  then the Court **DENIES in part** defendants' motion to dismiss plaintiffs' wrongful death, survivor claim, and/or consortium claims in the PIMC;.

The Court recognizes that if plaintiffs' underlying tort, strict liability, warranty, and/or fraud cause(s) of action has(ve) been dismissed **WITHOUT PREJUDICE** in this Court's previous motion to dismiss opinions, then Plaintiffs may amend those underlying cause(s) of action to support their derivative claims within the period set forth in the accompanying Order;

The Court **DENIES** defendants' motions to dismiss the claim in the PIMC for a punitive damages remedy.   Nevertheless, the Court appreciates that the law of each state varies as to the availability of a punitive damages remedy, which may be limited by, among other things, the state law applicable to the decedent plaintiff's claims requiring a showing of willful disregard;

The Court **GRANTS without prejudice** defendants' motions to dismiss those unjust enrichment claims in the ELMC arising under the laws of Florida, Iowa, Kansas, and Louisiana because these states require pleading no adequate remedy at law exists.   To the extent plaintiffs are able to plead no adequate remedy at law exists in these states, the Court **GRANTS** plaintiffs leave to amend the unjust enrichment claims in these states within the period set forth in the accompanying Order;

The Court **GRANTS without prejudice** defendants' motions to dismiss those unjust enrichment claims in the ELMC arising under the laws of Alabama,  Florida, Hawaii, Idaho, Illinois, Louisiana, Massachusetts, Mississippi, Oklahoma, South Carolina, and West Virginia because these states prohibit the pleading an unjust enrichment claim when an adequate remedy at law exists. To the extent, plaintiffs must plead and are able to plead in these states that no adequate remedy at law exists in order to advance the unjust enrichment claims in those states, the Court **GRANTS** plaintiffs the right to amend the claims in these states within the period set forth in the accompanying Order;

The Court **DENIES** defendants' motion to dismiss the unjust enrichment claims in the ELMC on the basis that plaintiffs need not plead they conferred a direct benefit to defendants in order to have pleaded properly an unjust enrichment claim.

The Court **DENIES** defendants' motions to dismiss the unjust enrichment claims in the ELMC on the basis that the partial benefit plaintiffs received impairs neither unjust enrichment claim nor the demand for restitution or disgorgement;

The Court **DENIES**  defendants', and in particular the Pharmacies', motions to dismiss the unjust enrichment claims in the ELMC on the specific basis of argued innocent seller status.

**FACTS AND BACKGROUND**

As this Opinion is written primarily for the parties, the Court refers the parties to the other five Opinions in this series for the facts and background of this matter.

## 1.0    MOTION TO DISMISS STANDARD

Other than for standing, defendants' motions rely on *Fed.R.Civ.Proc.* ["FRCP" or "Rule"] *12(b)(6)*, which governs a court's dismissal of an action for failure to state a claim upon which relief can be granted. In evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009) [(*quoting Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008)]. Put simply, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The general inquiry in determining the plausibility of a claim on its face focuses not on the possible success of its merits, but "whether [plaintiffs] should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.,* 311 F.3d 198, 215 (3d Cir.2002). The specific inquiry (*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir.2010)) involves the court's completing these three steps:

1) stating "the elements a plaintiff must plead to state a claim." *Ibid.*  [*quoting Iqbal,* 556 U.S. at 675];

2) identifying the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 [*quoting Iqbal,* 556 U.S. at 680]; and

3) assuming the veracity of well-pleaded factual allegations, "determine[s] whether they plausibly give rise to an entitlement for relief." *Ibid.*

Practically speaking, the third-step, plausibility analysis is a "context-specific task requiring the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.  A claim fails when a court can infer only that it is merely possible rather than plausible. *Ibid.*  Plausibility cannot

lie upon legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements". *Id.* at 678.  The specific information a court reviews in deciding a motion

to dismiss is limited to the allegations contained in the complaint, exhibits attached to the complaint

and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196

(3d Cir.1993).

**2.0     WHETHER PLAINTIFFS FAILED TO STATE CLAIMS AGAINST FDA LIAISONS**

In their MTD (ECF 520-3), the Manufacturer ["mfr"] defendants contend that each of the

following subsidiaries, namely, Prinston, Aurobindo Pharma USA ["APUSA"], and Hetero USA

["HUSA"], of these respective manufacturers Zhejiang Huahai Pharmaceuticals, Ltd., Aurobindo India

Ltd., and Hetero India, is an agent under 21 C.F.R. § 207.69(b)[3] by which the FDA can always have a U.S.

"communications" contact between it and the foreign manufacturers.  ECF Doc. 520-3: 57-58.  The mfr

defendants call each of these subsidiaries,   Prinston, APUSA, and HUSA, as an "FDA Liaison".  The

Court uses this term herein.

21 C.F.R. §207.69 demands a foreign manufacturer name an FDA liaison that must be domiciled

in the U.S. and capable of executing the following functions:  receive and review communications from

the FDA to the foreign manufacturer;

---

[3] 21 CFR §207.69 states in its entirety:
(a) Official contact. Registrants subject to the registration requirements of this part must designate an official contact for each establishment. The official contact is responsible for:(1) Ensuring the accuracy of registration and listing information; and
(2) Reviewing, disseminating, routing, and responding to all communications from FDA including emergency communications.

(b) United States agent. Registrants of foreign establishments subject to this part must designate a single United States agent. The United States agent must reside or maintain a place of business in the United States and may not be a mailbox, answering machine or service, or other place where a person acting as the United States agent is not physically present. The United States agent is responsible for:
(1) Reviewing, disseminating, routing, and responding to all communications from FDA including emergency communications;
(2) Responding to questions concerning those drugs that are imported or offered for import to the United States;
(3) Assisting FDA in scheduling inspections; and
(4) If FDA is unable to contact a foreign registrant directly or expeditiously, FDA may provide the information and/or documents to the United States agent. FDA's providing information and/or documents to the United States agent is equivalent to providing the same information and/or documents to the foreign registrant.
Source: 81 FR 60212, Aug. 31, 2016, unless otherwise noted.  Authority:  21 U.S.C. 321, 331, 351, 352, 355, 360, 360b, 371, 374, 381, 393; 42 U.S.C. 262, 264, 271.Current through January 21, 2021; 86 FR 6268.

respond to the FDA's questions regarding the manufacturer's imported drugs; and

aid in scheduling FDA inspections of the manufacturing premises outside the United States.

In a word, an FDA liaison is a communication "go-between" or "conduit" between the FDA and the mfr

defendant.   Mfr defendants contend, by virtue of this "contact" role, FDA liaisons can bear no liability

for any claims against defendants, and consequently, there can be no facts that support such liability.

As plaintiffs are categorically unable to plead sufficient facts to implicate the liability of any FDA liaison

in any claim, the mfr defendants argue all claims against the FDA liaisons must be dismissed.   *Id.* at 58.

The mfr defendants put forward *Moore et al. v. Medeva Pharms., Inc.,* No. 01-311-M, 2004 WL

57084, (D.N.H. 13 Jan 2004) as an example of a district court's dismissal of claims against a foreign

manufacturer's FDA liaison.[4]  Defendants further assert that the pleaded allegations that: HUSA and

Prinston are  potentially liable for engaging in the manufacturing, sale, and distribution of VCDS; and

APUSA designed, manufactured, and tested the VCDs, are mere assertions unsupported by facts in the

Complaints.  These mere assertions cannot be considered plausible and therefore the Court cannot take

them as true, when considering the motions to dismiss.

Mfr defendants' argument distills to:  1) Prinston, APUSA, and HUSA, as FDA liaisons, are mere

point-of- contact agents between the FDA and the foreign manufacturers and as such cannot share in

any imputed liability against the mfr defendants; and 2) plaintiffs' allegations that the FDA liaisons

served additional roles in mfr defendants' organizations, by which they contributed to the mfrs' liability,

are unsupported. *Id.* at 59.

In their opposition (ECF Doc. 577:104-105), plaintiffs argue they did indeed plead facts in the

Master Complaints that depict the business reality that each of these entities, besides serving as FDA

---

[4] The dismissal in *Moore* relied on the fact that the FDA liaison there was merely a communications contact between the drug manufacturer and the FDA.

liaisons, executed for the foreign manufacturers additional roles, for which these entities share in the manufacturer's liability. In particular, plaintiffs point to the following pleaded facts:

For Prinston: the ELMC at ¶¶ 51-52, the PIMC at ¶¶ 37-39 and the MMMC at ¶¶ 23 all assert that Prinston has been engaged in manufacturing, marketing, and distributing the VCDs at issue. This bare assertion, without more, would be insufficient to implicate Prinston's having more than a mere intermediary role as Zhejiang Huahai Pharmaceutical's FDA liaison. However, the Master Complaints at these cited paragraphs also plead that Prinston, a New Jersey-headquartered subsidiary of ZHP, owns Solco, also headquartered at the same New Jersey location, which operates as a distributor and marketer for ZHP.

Moreover, the Master Complaints plead these specific assertions:

1)       Prinston had offered the VCDs at issue for sale on its website (ELMC ¶369 and n. 101; MMMC ¶335 and n. 95; PIMC ¶ 358 and n.105);

2)       Some repackagers publicly reported recalls of their VCDs at issue were obtained from Prinston, implying Prinston was a supplier (ELMC ¶¶ 113, 119; MMMC ¶¶ 97,99; PIMC ¶36;

3)       VCDs manufactured at ZHP for ZHP's subsidiary Prinston Pharmaceutical contained NDMA levels of between 15,180 and 16,300 ng ( ELMC ¶ 241 and n. 49; MMMC § 203 and n. 46; and PIMC ¶¶ 60, 284 and n. 114, reporting statements from FDA press releases.

For Aurobindo Pharma USA ['APUSA"]:

1) In the ELMC at n. 11, plaintiffs provide a URL for APUSA's website. The Court visited this page[5] on APUSA's website and saw the following statement:

---

[5] https://careers-aurobindousa.icims.com/jobs/intro?hashed=-626006123&mobile=false&width=1148&height=500&bga=true&needsRedirect=false&jan1offset=-300&jun1offset=-240, last accessed 8 March 2021.

> *Aurobindo Pharma USA, Inc. is a generic pharmaceutical manufacturer and distributor and is a*
>
> *wholly owned subsidiary of Aurobindo Pharma Limited, a leading generic pharmaceutical*
>
> *company based in India. Headquartered in HITEC City, Hyderabad, India, founded in 1986 and*
>
> *becoming a public company in India in 1992.   Aurobindo Pharma USA, Inc. is **committed to***
>
> ***delivering** a broad portfolio of quality, affordable generic pharmaceuticals to pharmacists and*
>
> *patients.  [emphasis added].*

While recognizing that plaintiffs did not plead this statement in their Complaints and that this

statement may not apply to APUSA's role during the relevant period pleaded in the Complaints, the

Court nonetheless takes note of this statement as a matter of public record as permitted in *Pension*

*Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d at 1196.  The above statement lends plausibility

to the allegation that APUSA was involved in the downstream delivery in the U.S. of the Aurobindo

manufacturer's VCDs of interest during the Complaint period.

2) Moreover, plaintiffs included in the PIMC ¶374 at n. 149 and 150  URLs of a page on  APUSA's

website as last accessed on 5 June 2019.  Most notably, when accessed by the Court, one of these

pages[6] states in relevant part the following regarding APUSA's business:

> ***Customer satisfaction is paramount to our success***
>
> - *Understand our business, our industry, and what is important to our customers; stay current and informed. Anticipate and understand the impact of our actions on the customer*
> - *Strive for 100% accuracy in all customer-related activities including orders, shipments, and correspondence*
> - *Establish long-term relationships with customers based on integrity and trust*
> - *Actively seek and utilize customer feedback*
> - *Responsive to customer complaints and inquiries*

This statement leaves little doubt as to APUSA's business intent and role in aiding shipments, orders,

etc. and supports the allegation of  Aurobindo Pharma Ltd.'s involvement in U.S. sales  of the VCDs of

---

[6] https://www.aurobindousa.com/company/our-story/ , last accessed 8 March 2021.

interest.  Even if APUSA is not executing the actual downstream delivery, APUSA is the overall

managing business entity for generic drug delivery in the U.S.  as identified in the second web page

provided in the PIMC¶ 374.[7]

These pleadings plausibly point to APUSA's  role in  the U.S. marketing and  distribution of

Aurobindo Pharma Ltd.'s VCDs of interest that is more than and distinct from its role as FDA liaison.

For Hetero USA ["HUSA"]:

Plaintiffs plead in the ELMC¶ 58, the MMMC ¶30, and the PIMC ¶63 that HUSA is the US

representation of Hetero and provide a link to HUSA's Linked-In page,[8] which states:

> Hetero USA Inc. was established in the year 2010. We are the US representation of HETERO, a
> privately owned; research based global pharmaceutical company. We have a significant
> presence in the development and marketing of finished dosages (comprising of various dosage
> forms of wide range of therapeutic categories), active pharmaceutical ingredients (API's), over-
> the-counter products.

The word "We", referring to Hetero USA, plausibly points the business community to HUSA's

experience in the development and marketing of finished dose drugs and APIs in the U.S. market,

which plausibly included the VCDs of interest.

The Court  has found a paucity of case law on the issue of whether FDA liaisons bear liability for

the actions of the product manufacturer or its downstream supply chain actors.  In *Moore et al. v.*

*Medeva Pharms., Inc.,* No. 01-311-M, 2004 WL 57084, (D.N.H. 13 Jan 2004), cited by defendants, the

court did find on a motion for summary judgment that "the **undisputed** material facts demonstrate

that CPI [the FDA liaison] did not manufacture, sell, distribute, or administer the vaccine in question"

and that plaintiffs had "failed to articulate how CPI's status as the manufacturer's United States agent,

or its listing in the Physicians' Desk Reference as an 'affiliate' of the manufacturer, might give rise to

---

[7] https://www.aurobindousa.com/company/our-story/aurocontrol/,  last accessed 8 March 2021.
[8] https://www.linkedin.com/company/hetero-usa-inc/, last accessed 8 March 2021.

strict liability". *Id. at *2.* [emphasis added]. For the present motions, *Moore* shows that absent pleaded facts plausibly showing an FDA liaison's behavior supplemental to that of a communication agent, the principal's liability cannot implicate the FDA liaison.

From its own research, the Court finds that *Adverio Pharma GmbH et al. v. Alembic Pharmaceuticals Ltd. et al.*, C. A. No. 18-73-LPS, 2019 WL 581618 at *5 (D. Del., 13 Feb 2019) adds to *Moore.* In a motion to dismiss context, the *Adverio* court looked to the sparsely pleaded allegations about the FDA liaison, INC, which totaled only a sentence or two in the entire complaint[9] and dismissed the claim of patent infringement against it because INC had merely collated and submitted ANDA materials to the FDA. "[T]here was no specific, express allegation that" ... INC "intends to (or will be) involved in the commercial manufacture, use, or sale of the proposed ANDA Product." *Id.* at *2.

In these cases, the unifying factor is that the entities identified as "FDA liaisons" had no other role either for the defendant product manufacturer or in the downstream supply chain than as a contact agent with the FDA. The unified finding is that, lacking any commercial role, the FDA liaison can bear no liability for any claims of injury resulting from the product.

However, this dispute is not resolvable by resorting to literalism as to titles. That is, titling an entity as "FDA liaison" does not give that entity an automatic pass on products liability claims. What defendants do not dispute directly is whether the FDA liaisons held "other roles" inside the mfr defendants' organization and/ or participated in downstream activities of preparing, marketing, or distributing the VCDs at issue. What defendants do dispute is whether plaintiffs have pleaded sufficiently that these "other roles" plausibly educe the alleged liability of the mfr defendants.

Following *Fowler*, 578 F.3d at 212 and *Santiago*, 629 F.3d at 130, the Court does not engage in a question of fact-finding in a motion to dismiss. There is no weighing as to how Prinston or APUSA or

---

[9] INC was completely independent from, and not subsidiary to, the defendant manufacturer, and had been appointed an FDA liaison and filed the generic manufacturer's ANDA before the FDA.

HUSA <u>actually</u> did or not sell or help orchestrate U.S. sales of VCDs at issue.  Rather, the Court takes plaintiffs' allegations as true and examines them for their plausibility.  Unlike in *Adverio*, plaintiffs here pleaded these entities had a specific, other role that was sufficiently different from that of FDA liaison and which implied shared commercial responsibility for marketing or distributing the VCDs of interest.

The Court finds that the key to resolving in a motion to dismiss whether plaintiffs have alleged enough to implicate the liability of an entity that also serves as an FDA liaison is a reasonable, specific pleading that the liaison executes for the product manufacturer a separate function that contributes to the alleged liable behavior of the manufacturer.  Using that key, the Court finds the pleadings cited herein sufficiently assert that Prinston, APUSA, and HUSA, while serving as FDA liaisons, also functioned in the U.S. distribution chain of their respective mfr defendants for  the VCDs at issue.

Accordingly, The Court **DENIES** the defendants' motions to dismiss any claim in any Master Complaint against Prinston, Aurobindo Pharma USA, and Hetero USA on the ground plaintiffs have alleged properly these entities do not function exclusively as  FDA Liaisons.

### 3.0    PIMC CLAIMS FOR WRONGFUL DEATH, SURVIVAL, LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

In their motion to dismiss (ECF Doc. 530-3:54), the mfr defendants seek dismissal of the following three claims in the PIMC:  wrongful death (ECF Doc. 122, PIMC ¶¶580-587) [alleging wrongful death damages are due to survivors of deceased plaintiffs]; survival of deceased plaintiffs' claims (PIMC ¶¶588-592); and loss of consortium (PIMC ¶¶ 594-600).   They assert that, since these claims are derivative, they should be dismissed for the same reasons as the underlying tort claims in the PIMC. Defendants cite several cases in the Third Circuit, including *Marie v. McGreevey*, 314 F.3d 136, 140 (3d Cir. 2002) [*quoting Guardina v. Bennett,* 545 A.2d 139, 145 (N.J. 1998)]; and *Shuker v. Smith & Nephew, PLC*,  885  F.3d 760, 777-778 (3d Cir.).

In their opposition (ECF Doc. 577:94), plaintiffs also assert these claims are derivative, and because of that, the Court should deny the motion to dismiss for the same reason that It denies dismissal of the underlying claims in the PIMC.  Plaintiffs cite cases from the New Jersey Supreme Court and the Third Circuit, including *Guardina v. Bennett,* 545 A.2d 139, 145 (N.J. 1998) and *Smith v. Whitaker,*  734 A.2d 243, 249 (N.J. 1999).

The parties are each seeking their own resolution of these claims based on the same argument: that these claims are derivative and rise and fall with the underlying liability claims.

Before deciding the motions, the Court reviews why the parties are calling these claims "derivative".[10]  Presently, all American states have statutes that create a right of recovery for wrongful death.  There are primarily two discrete categories of wrongful death statutes.  The first is based on the English "Lord Campbell Act", upon which most states' statutes are patterned ["Lord Campbell-type"].[11]  These statutes create a <u>new</u> cause of action for those individuals named in the particular statute, termed "statutory beneficiaries" or just "beneficiaries".   The <u>new</u> cause of action arises from the separate and independent economic injury beneficiaries experience owing to the decedent's death, and is different from any claim the deceased might have pursued if they had survived.

It is important to note the Lord Campbell-type  wrongful death action affords recovery to a beneficiary based only on a monetary benefit reasonably expected from the deceased had they lived.  Some courts view a Lord Campbell-type wrongful death action as  <u>new after the decedent's death,</u> and therefore not derivative.[12]   However, other courts have said that a survivor's right of recovery under this

---

10 This discussion benefits from a number of sources, including James E. Rooks, Jr., Recovery for Wrongful Death, § 1:12. <u>Modern American state wrongful death statutes</u>, May 2020 Update; Theodore I. Koskoff ,12 Am. Jur. Trials 317,  February 2021 Update; Lonnie E. Griffith, Jr.,  Stephen Lease,  Jeanne M. Naffky, and Karl Oakes,  23  Corpus Juris Secondum, <u>Death § 23</u> *et seq*., February 2021 Update; and Restatement (Third) of Torts, <u>§ 21Definition of "Harm to Persons or Property": Recovery for Economic Loss,</u> comment c.

11 Most states including the District of Columbia and Puerto Rico, **excepting** Alabama, Connecticut, Delaware, Indiana, Iowa, Kentucky, Maine, Massachusetts, and Missouri, have a "Lord Campbell Act"-type wrongful death statute.

12 *See, e.g.,  Wood v. Wayman,* 47 So. 3d 1212 (Ala. 2010); *Boeken v. Philip Morris USA Inc*., 217 Cal. App. 4th 992, 159 Cal. Rptr. 3d 195 (2d Dist. 2013).

type of wrongful death statute is necessarily derivative in that the right has surfaced only because of the past actionable conduct by another entity.[13]  Some of these wrongful death statutes may also include a recovery for the loss of consortium, that is, companionship and accompanying emotional damages, etc. besides the economic loss of the decedent's earning ability cut short.

The second main category of wrongful death statute is  a "continuation" type, which allows a claim for personal injuries  the decedent had during life to "continue" after death for the benefit of the decedent's estate. These statutes also include the decedent's death itself as an element of damages.[14] A few states have hybrid statutes that combine both the Lord Campbell-type and the continuation actions.[15] And, only Massachusetts has a punitive-type wrongful death statute. [16]

Besides wrongful death statutes, there are also "survival" statutes, which provide for the survival of any cause of action for injuries that a decedent may have had against a wrongdoer at the time of the decedent's death.[17]  These statutes persist in states that have a more or less exclusive Lord Campbell-type wrongful death statute, thereby alleviating the harshness of the common law, which dictated death ended a victim's right to pursue the defendant's liability.

Generally, the difference between a survival statute and a wrongful death statute is the nature of the damages that may be recovered and who may collect them.   The survival statute continues a decedent's cause of action beyond death to redress the decedent's **estate for the decedent's pre-death injuries** caused by a wrongful or strictly liable act.   A wrongful death statute permits **designated survivors** to sue for the survivors' injuries resulting from **a wrongful act perpetrated on the decedent before death.**

---

[13] *See, e.g., Traynom v. Cinemark USA, Inc.,* 2013 WL 1668336 (D. Colo. 2013); *Stamp v. Vail Corp.,* 172 P.3d 437 (Colo. 2007); *Hobart v. Holt,* 222 Or. App. 550, 194 P.3d 820 (2008); *In re Labatt Food Service,* L.P., 279 S.W.3d 640 (Tex. 2009).
[14] Continuation, wrongful death statutes are found in Alabama, Connecticut, Delaware, Indiana, Iowa, Kentucky, Maine, and Missouri .
[15] Hybrid, wrongful death statutes are found in Tennessee and Georgia.
[16] Recovery depends largely on the culpability of the defendant.
[17] Survival statutes can be akin to "continuation" statutes.

The term "wrongful act" has been construed liberally and different states permit recovery on various theories of liability, including negligence or defect / insufficiency due to negligence; a negligent act or omission; or willful, wanton or reckless act; unlawful violence; a crime; criminal negligence; an offense or quasi-offense, in or relating to unsafe machinery, way or appliance; or the breach of any express or implied warranty of the purity or fitness of any foods, drugs, medicines, beverages, or any and all other articles intended for human consumption.

To be clear, a "continuation"- type wrongful death action AND/OR a survival action (that accompanies a Lord Campbell Act-type wrongful death action) must arise from liability set forth in existing state law rather than from the wrongful death statute itself. The liability that girds a "continuation"- type or a survival action is clearly "derived" from behavior that incurs liability under separate state law—common or statutory--and which is committed against the decedent pre-death. And, therein lies the legal and linguistic foundation for the parties' identifying a wrongful death or survival action as "derivative", since these actions—regardless of type—must arise from a defendant's conduct committed before the decedent's death and which impose liability under relevant state law.

It is primarily because the claims of wrongful death, survival, and loss of consortium **derive** from underlying liability—whether tort, strict liability, warranty, fraud, etc.—that the Court agrees with both parties' requests. If these underlying causes of action have been dismissed with prejudice by the Court, then the derivative claims depending on the dismissed causes of action likewise cannot be actionable and must be dismissed. However, to the extent, underlying causes of action have not been dismissed or have been dismissed without prejudice, then the derivative claims remain actionable, at least at this motion to dismiss stage.

Accordingly, to the extent plaintiffs' tort, strict liability, warranty, and/or fraud cause(s) of action underlying their wrongful death, survivor, or consortium claims has(ve) been dismissed **WITH**

PREJUDICE in this Court's previous MTD opinions, the Court **GRANTS in part** defendants' motion to dismiss the plaintiffs' wrongful death, survivor, and/or consortium claims in the PIMC .

Accordingly, to the extent, plaintiffs' tort, strict liability, warranty, and/or fraud cause(s) of action underlying their wrongful death, survivor, or consortium claims has(ve) **NOT** been dismissed **WITH PREJUDICE** in this Court's previous MTD opinions, then the Court **DENIES in part** defendants' motion to dismiss plaintiffs' wrongful death, survivor claim, and/or consortium claims in the PIMC.

Accordingly, the Court recognizes that if plaintiffs' underlying tort, strict liability, warranty, and/or fraud cause(s) of action has(ve) been dismissed **WITHOUT PREJUDICE** in this Court's previous MTD opinions, then plaintiffs may amend those underlying cause(s) of action to support their derivative claims within the period set forth in the accompanying Order.

**4.0    WHETHER DEMAND FOR PUNITIVE DAMAGES IN THE PIMC STATES CLAIM FOR RELIEF**

A demand for punitive damages is not a legal claim itself but at most a request for a particular remedy. *Trusted Transportation Solutions, LLC v. Guarantee Insurance Company*, Civ. No. 16-cv-7094 (NLH/JS), 2020 WL 2111026 at *4 (D.N.J. 4 May 2020).   Most states impose punitive damages[18] mainly to punish defendants for wrongful conduct and to deter that kind of conduct in the future.  Not typically intended to compensate a plaintiff,[19] punitive damages nonetheless may recompense victims when the legal harm is not measurable by a sum certain or generally uncompensable.[20]   Some pundits

---

[18] This discussion on the definition and goals of a punitive damage remedy benefits from Richard E. Kaye, <u>Chapter 60 Damages</u> § 72 -73 , AMERICAN LAW OF PRODUCTS LIABILITY 3d, February 2021 Update; and, Jay M. Zitter, <u>Allowance of Punitive Damages in Drugs and Narcotics Products Liability Cases</u>, 31 AMERICAN LAW REPORTS 7TH, ART. 31 (Originally published in 2017), Updated Weekly; and Kenton R. Rose, Donald I. Strauber, Mary T. Yelenick, and Robin D. Ball, <u>Chapter 77: Products Liability § 37</u>, 6 SUCCESSFUL PARTNERING BETWEEN INSIDE AND OUTSIDE COUNSEL, April 2020 Update.

[19] Who has already been compensated by compensatory damages under a tort, contract, fraud, etc., liability.

[20] E.g., under New Jersey law, *N. J. S. A. 2A:58C-5, NJ ST 2A:58C-5* (Current through L.2020, c. 136 and J.R. No. 2.):

  c.   *Punitive damages shall not be awarded if a drug or device or food or food additive which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 et seq. or the "Public Health Service Act," 58 Stat. 682, 42 U.S.C. § 201 et seq. and was approved or licensed; or is generally recognized as safe and effective pursuant to conditions established by the federal Food and Drug Administration and applicable regulations, including packaging and labeling regulations.*

consider punitive damages compensatory for certain conduct having such a damaging effect as to cause major civil injury to society at large.[21]

The U.S. Supreme Court has clarified limits on the availability and allowable amounts of punitive damages in products liability actions, in light of the Due Process Clause in the U.S. Constitution.[22]  All courts, state and federal, must consider three factors in allowing punitive damages:

1) the "reprehensibility" of defendant's conduct as directed to plaintiff and occurring only the jurisdiction;

2) the ratio between the proposed punitive damage award and compensatory damage award to be no more than 9:1 (especially where the compensatory damage award is significant); and

3)  civil or criminal sanctions, but respecting punitive damages do not substitute for criminal sanctions.

A few jurisdictions[23] have precluded by statute  or through case law awards of punitive or exemplary damages.  For example, a New Hampshire statute outlaws punitive damages in all actions except when specifically authorized by statute.  Louisiana lacks a specific statute allowing punitive damages, so these are unavailable in products liability actions. Nebraska's Constitution, Article VII §5

---

*However, where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question, punitive damages may be awarded. For purposes of this subsection, the terms "drug," "device," "food," and "food additive" have the meanings defined in the "Federal Food, Drug, and Cosmetic Act."*

[21] The 9/11 attacks on the twin towers of the World Trade Center come to mind.

[22] *See Philip Morris USA v. Williams*, 549 U.S. 346, 353–55, 127 S. Ct. 1057, 166 L. Ed. 2d 940, Prod. Liab. Rep. (CCH) P 17676 (2007) [the "Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties"];

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 155 L. Ed. 2d 585, Prod. Liab. Rep. (CCH) P 16805, (2003) [although the Court would not "impose a bright-line ratio which a punitive damages award cannot exceed.... few awards exceeding a single-digit ratio between punitive and compensatory damages … will satisfy due process."];

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S. Ct. 1678, 149 L. Ed. 2d 674, 58 U.S.P.Q.2d 1641 (2001) ["courts of appeals should apply a *de novo* standard of review when passing on district courts' determinations of the constitutionality of punitive damages awards,"];

*BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568, 575–86, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) [3 guideposts  "identify unconstitutionally excessive" punitive damages awards: (1) the "degree of reprehensibility of the defendant's conduct," (2) the "ratio [of the punitive damages award] to the actual harm inflicted on the plaintiff," and (3) the "difference between [the punitive damages award] and the civil penalties authorized or imposed in comparable cases"];

*Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 420–26, 114 S. Ct. 2331, 129 L. Ed. 2d 336, Prod. Liab. Rep. (CCH) P 13895 (1994) [the "Constitution imposes a substantive limit on the size of punitive damages awards" and  the Due Process Clause guarantees judicial review of punitive damages awards to protect against arbitrary deprivation of property].

[23] Richard E. Kaye, <u>Chapter 60 Damages</u> § 74 , AMERICAN LAW OF PRODUCTS LIABILITY 3d, February 2021 Update.

contravenes punitive, vindictive, or exemplary damages, making punitives unavailable there.  Punitive damages are also generally unavailable in Washington and Puerto Rico.

Looking to their motion to dismiss brief (ECF Doc. 520-3: 54-57), the Court sees that mfr defendants assert the PIMC fails to allege reasonably-believable facts that support a claim for punitive damages, even under the most lenient state law standard, as required under *Twombly* and *Iqbal*.[24] Defendants further aver the PIMC must demonstrate at a minimum defendants' gross negligence; and even if that is so demonstrated, only a minority of states actually permit such damages. *Id*. at 55. Defendants declare that all states permitting punitive damages characterize "gross" negligence as more than mere negligence, requiring actual knowledge of the risk of damage or conscious or wanton indifference to the safety of others.  *Id*. at 56.  Specifically, defendants assert the PIMC's allegations do not imply wanton, reckless, or knowing disregard of the carcinogenic substances contained in the VCDs at issue but merely repeat what's been pleaded in other tort claims and do not expressly plead gross negligence or willful disregard.  *Ibid.*   Therefore, they argue, since the pleaded facts do not show the required element of gross negligence, these claims should be dismissed.  *Id*. at 57.

Plaintiffs respond (ECF 577:94-97) that whether the PIMC fails to plead facts that demonstrate a claim for punitive damages is a matter of law to be taken up at summary judgment motion stage, not at the motion to dismiss stage.  In their opposition (ECF Doc. 577:94) to defendants' assertion that *Twombly* and *Iqbal* require a certain level of reasonably-believable facts to support pleading punitive damages, plaintiffs rely on Judge Chesler's guidance in *Jones et al. v. Francis et al.*, No. 13-04562, 2013 WL 5603848, at *2 (D.N.J. 11 Oct. 2013), which concerned the viability of a punitive damages claim under Rule 12(b)6):

> the Court notes that Defendants' argument ascribes a breadth to the Supreme Court's
>
> *Twombly* and *Iqbal* decisions that is not warranted by the language of those cases or, in fact,

---

[24] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Federal Rule of Civil Procedure 8(a) itself.... [O]n a Rule 12(b)(6) motion, the "plausibility" pleading regime addresses the types of facts a plaintiff must allege to make out a cause of action, **not the types of damages the alleged cause of action may eventually warrant**. [citations omitted]. Indeed, nothing in *Twombly, Iqbal*, or their progeny refers to pleading requirements for damages request at all; instead, the[se] cases themselves analyze the well-pleaded facts exclusively in the context of the elements of the alleged cause of action. [citations and quotations omitted].   In sum, once a civil complaint shows a claim to be 'facially plausible', *Fowler* [*v. UPMC Shadyside*], 578 F.3d [203], at 210 [3d Cir. 2009], **nothing in Rule 8** or its judicial gloss **suggests, let alone requires, that this Court scrutinize the damages requested by plaintiff as redress for that claim.**  [emphasis added].

*Jones et al.*, 2013 WL 5603848, at *2 (D.N.J. 11 Oct. 2013). The take-away is that Rule 8 does not demand a plausibility review of the pleaded allegations of a punitive damages remedy.

Finding this guidance convincing, the Court agrees that, at the Rule 12(b)(6) stage, the dismissal of a  damages claim  is premature.  <u>Nonetheless</u>, this Court reviews the punitive damages allegations in the PIMC (ECF Doc. 122) to assess the accuracy of defendants' arguments that these claims are facially deficient. The punitive damages claim in the PIMC extends from ¶601 through ¶ 614, with ¶¶ 610-611 expressly stating

*610. As a result of Defendants'* **deliberate disregard** *for the safety of American consumers, including Plaintiff, Plaintiff, as well as many other Americans, developed cancer.*

*611.As a legal and proximate result of Defendants' misconduct,* **callous disregard**, *and omissions, as herein alleged, Plaintiffs sustained the injuries, damages, and losses* **set forth above.**  *[*emphasis added].

In essence, plaintiffs allege that their earlier allegations in the PIMC showed defendants' deliberate / callous disregard or, said differently, gross negligence or recklessness.

Those earlier allegations of deliberate / callous disregard in the PIMC include:

*188. If Defendants had not routinely disregarded the FDA's cGMPs, including those discussed throughout this Complaint and the FDA's investigation reports and warning letter, and **deliberately manipulated and disregarded** sampling data suggestive of impurities, or had fulfilled their quality assurance obligations, Defendants would have identified the presence of these nitrosamine contaminants almost immediately.*

*192. If Defendants had not routinely disregarded the FDA's cGMPs and **deliberately manipulated and disregarded sampling data suggestive of impurities, or had fulfilled their quality assurance obligations**, Defendants would have found the NDMA and NDEA contamination almost immediately.*

*197. As alleged above, FDA investigators visited ZHP's facilities in May 2017. In the words of FDA inspectors, ZHP "invalidat[ed] [OOS] [out of specifications] results [without] scientific justification" and did not implement "appropriate controls … to ensure the integrity of analytical testing," and **routinely disregarded sampling anomalies suggestive of impurities.***

*273. On May 15-19, 2017, the FDA inspected ZHP's facility at Coastal Industrial Zone, Chuannan No. 1 Branch, Linhai City, Zhejiang Province, China. ZHP manufactures all of its valsartan API at this Chuannan facility. That inspection **resulted in the FDA's finding that ZHP repeatedly re-tested out of specification ("OOS") samples until obtaining a desirable result. This practice allegedly dated back to at least September 2016 per the FDA's letter and investigation up***

*to that point. The May 2017 inspection also resulted in FDA's finding that* **"impurities occurring during analytical testing are not consistently documented/quantitated."** *These findings were not made fully available to the public. However, this information was shared or available to ZHP's finished-dose manufacturers, as well as those Defendants further down the distribution chain.*

*275. Furthermore, for OOS sampling results, ZHP routinely invalidated these results without conducting any kind of scientific investigation into the reasons behind the OOS sample result. In fact, in one documented instance, the OOS result was attributed to "pollution from the environment" surrounding the facility. These manipulations of sampling were components of a pattern and practice of systematic data manipulation* **designed to fail to detect and/or intentionally conceal and recklessly disregard the presence of harmful impurities such as NDMA and NDEA.** *[emphasis added].*

Especially as to PIMC ¶¶ 273 and 275 above, plaintiffs pleaded information they had gleaned from FDA reports, which belies defendants' characterization of these allegations as mere conclusions. In addition, PIMC ¶¶ 188, 192, and 197 assert a logical deduction that follows from ¶¶273 and 275, which also belies that these pleadings are merely conclusory. Even if the Court did not ascribe to Judge Chesler's assessment above, the Court would nonetheless find the PIMC does plead a plausible fact basis for the punitive damages claim under the Rule 8 standard, as clarified by *Twombly* and *Iqbal*.

In addition, this District has recently ruled that, even if the previous five opinions resolving defendants' Motion to Dismiss in this matter leave plaintiffs with only negligence claims, in New Jersey plaintiffs could still pursue these claims because the final arbiter of willful disregard is still the jury. *See*

*Trusted Transportation Solutions, LLC v. Guarantee Insurance Company*, Civ. No. 16-cv-7094 (NLH/JS), 2020 WL 2111026  at *5 (D.N.J. 4 May 2020):

> "Thus, the issue of punitive damages comes down to whether, viewing the evidence in the light most favorable to Plaintiff and making all reasonable inferences in its favor, a reasonable jury could find that Defendants acted with actual malice or wanton and willful disregard. This 'is a fact-specific inquiry requiring examination of [Defendants'] intent and knowledge.' *Daloisio v. Liberty Mut. Fire Ins. Co.,* 754 F. Supp. 2d 707, 710 (D.N.J. 2010)" .

Accordingly, the Court **DENIES** defendants' motions to dismiss the claim in the PIMC for a punitive damages remedy.   Nevertheless, the Court appreciates that the law of each state varies as to the availability of a punitive damages remedy, which may be limited by, among other things, the state law applicable to the decedent plaintiff's claims requiring a showing of willful disregard.

**5.0    UNJUST ENRICHMENT**

Plaintiffs pleaded two unjust enrichment claims in the ELMC, [25] a first cause of action against all defendants and the second against all defendants except the Pharmacies.

---

[25] THIRTEENTH CAUSE OF ACTION UNJUST ENRICHMENT(INDIVIDUALLY AND ON BEHALF OF CONSUMER CLASS MEMBERS AGAINST ALL DEFENDANTS)

546.  Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

547.  This cause of action is alleged on behalf of consumer Class Members

Defendants were unjustly enriched at the expense of Plaintiffs and other Class Members by virtue of the latter's paying for Defendants' VCDs.

549. Defendants profited immensely from introducing a carcinogen into the United States for human consumption. On top of that, because Defendants' VCDs were adulterated and misbranded, their distribution and sale in the United States was illegal.

550.  Plaintiffs and other Class Members were unjustly deprived of money obtained by Defendants as a result of the improper amounts paid for Defendants' VCDs. It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation obtained from Plaintiffs and other Class Members as a result of their wrongful conduct alleged in this Complaint.

551.  Plaintiffs and other Class Members are entitled to seek and do seek restitution from Defendants as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendants by virtue of its wrongful conduct.

Plus, the FOURTEENTH CAUSE OF ACTION UNJUST ENRICHMENT (INDIVIDUALLY AND ON BEHALF OF CONSUMER CLASS MEMBERS AGAINST ALL DEFENDANTS EXCEPT PHARMACY DEFENDANTS), which pleads identical allegations as the THIRTEENTH CLAIM.

In their motion to dismiss (ECF Doc. 520-3:50-53),  the mfr defendants set forth several reasons why the ELMC claim of unjust enrichment fails:

1)  the allegations of this claim are factually deficient under *Iqbal* and *Twombly* because they state no basic facts supporting the claim;  *Id.* at 50-51.

2)  some states require a plaintiff to affirmatively plead the absence of an adequate remedy at law for the unjust enrichment claims to be properly pleaded.  Defendants refer the Court to ECF Doc. 520-5:Chart 49, the Exhibit attached to their brief, which lists case law from a few states defendants assert have such a pleading requirement;

 3)  In addition, since the unjust enrichment claim depends on the same allegations of wrongful conduct as the eighteen other causes of action pleaded in the ELMC,  defendants assert at ECF Doc. 520-3:51-52 that this claim must fail because it is duplicative, and also refers the Court to this Exhibit( ECF Doc. 520-5: Charts 52-56), which lists case law from many states defendants assert  do not allow duplicative pleading. Defendants assert, since an  unjust enrichment claim is often considered a claim sounding in equity, these listed states prohibit equitable claims if an adequate remedy at law already exists.

4) As many states' laws pertaining to unjust enrichment claims require the plaintiff to confer a direct benefit on defendant, and as the ELMC pleads no allegation of mfr defendants' direct benefit, the unjust enrichment claim is facially deficient.

An almost identical contention in the Wholesaler's motion to dismiss (ECF Doc. 522-1:14-16) is that plaintiffs fail to allege specific, direct and improper enrichment by the Wholesalers at the expense of plaintiffs. *Id*. at 14-15.  In effect, Wholesalers allege plaintiffs cannot have conferred a direct benefit to them because there was no contractual or transactional relationship between Wholesalers and plaintiffs.  Additionally, plaintiffs did not remunerate Wholesalers directly for the VCDs at issue and so no direct benefit can have been conferred.  Wholesalers also assert an unjust enrichment claim requires

privity between them and the plaintiffs, which the ELMC cannot plead because there was no contract or other relationship between these parties. *Id.* at 15.

The Pharmacy defendants take a slightly different tack.   ECF Doc. 523-1: 26-27.  They argue that the  Restatement (Third) of Restitution and Unjust Enrichment § 3, comment a (Am. Law. Inst. 2011)  states  "Liability to disgorge profits is ordinarily limited to cases of . . . 'conscious wrongdoing,' because the disincentives that are the object of a disgorgement remedy are not required in dealing . . . with inadvertent tortfeasors."   The essence of their argument is that restitution is not available to innocent sellers, i.e. not conscious wrongdoers.  The Pharmacies then support this position with statements from this District's cases:  *In re Cheerios Mktg. & Sales Practices Litig.*, No. 09-cv- 2413, 2012 WL 3952069, at *13 (D.N.J. Sept. 10, 2012). [" 'conscious wrongdoer' is a defendant who is enriched *by misconduct* and who acts (a) *with knowledge* of the underlying wrong to the claimant, or (b) despite a *known* risk that the conduct in question violates the rights of the claimant. Restatement (Third) of Restitution and Unjust Enrichment § 51.3*";* and *S.E.C. v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996)  *aff'd*, 124 F.3d 449 (3d Cir. 1997), in which disgorgement was available only because it was a  securities fraud action.

To sum, defendants' argument is that plaintiffs'  unjust enrichment claims in the ELMC fail to plead not only the proper elements of the claims but also the required facts that show why these claims are not duplicative under state law.  And, under various state laws, these claims also fail to plead plaintiffs' conferral of a direct, unjustified benefit to defendants and  also that defendants must be found wrong-doers, that is, tortfeasors, in order for unjust enrichment to lie.

In opposition (ECF Doc. 577: 71-77), plaintiffs argue:

1)  They are entitled to plead as many separate claims as they have.  Id. at 72-73.

2)  The unjust enrichment claims are not duplicative, even though these and other tort, warranty, or strict liability claims rely on the same facts and plaintiffs cannot ultimately recover under multiple theories.  Id. at 73.

3)   Even for states that require the pleading of a direct benefit to defendants, these states do not require that it was plaintiffs that conferred the benefit.   *Id.*  at 74.

4)  A  benefit that is attenuated because of an attenuated supply-chain relationship between plaintiffs and   Wholesaler defendants does not vitiate a claim against Wholesaler defendants because these defendants nonetheless retained an unjust benefit at the expense of plaintiffs. *Id.* at 76 -77.

5)  Wholesalers and Pharmacies' assertion that plaintiffs have not pleaded sufficient facts of wrongdoing of these defendants, who are "innocent sellers" in a generic drug supply chain, is a fact question requiring further discovery before dismissal at this stage.

First, the Court notes the parties' arguments have raised several long-standing tensions in the law—common, statutory, and pundit-endorsed.   A fundamental tension is that defendants' arguments that state law pleading requirements  prohibit the pleading of an "equitable" claim when an adequate legal claim is available does not jibe well with the general practice expressly permitted by Rule 8[26] of pleading alternative legal claims.  This tension arises primarily because of the unnecessarily strict distinction of unjust enrichment as a claim in equity, distinction that the Restatement calls regrettable and wrong.

The Court finds that, before  resolving the parties' dispute over whether the unjust enrichment claims have been pleaded  sufficiently, a review of general principles in the Restatement (Third) of Restitution and Unjust Enrichment (2011), October 2020 Update ["the Restatement"] is illuminating.

---

[26]Rule 8(d)(2) *Alternative Statements of a Claim or Defense.*  A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

The Restatement, §1 explains that a person unjustly enriched at the expense of another must make restitution to the other, even if no contract between the parties itself expresses or implies such a duty.  There are 3 traditional elements in a claim of unjust enrichment:

(1) a benefit conferred on the defendant by the plaintiff;

(2) an appreciation or knowledge by the defendant of the benefit; and

(3) the acceptance / retention by the defendant of the benefit under circumstances that make it inequitable for the defendant to keep the benefit without payment of its value.

The Restatement §1, comments b and c, consider the more accurate term to be "unjustified enrichment" (rather than "unjust"), which it defines as enrichment having no legal basis because the underlying transaction was ineffective to conclusively alter ownership rights.   Ineffective transactions are defined as *nonconsensual* and result from, among other things, the miscarriage of an attempted contractual exchange after partial performance.  *Ibid.*   Importantly, liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant.   A limiting factor to the remedy of restitution is that in essence it is supplementary and generally not available if the law provides a remedy in contract.

However, whenever either a claim for restitution or for disgorgement of profits from conscious wrongdoing includes the elements of a tort claim or other breach of duty, a defendant may be liable both on a theory of tort and, alternatively, on a theory of unjust enrichment.  *Ibid.*, comment *e (3)* and Restatement § 3, Comment *d*.   From this, the Court concludes the Restatement does not clearly consider unjust enrichment as an exclusive claim in equity as well as moves complainants to allege the defendant wrongfully profited and seek restitution for unjustified enrichment and also seek damages in tort.   Restatement, §1m comment e(3).  The Court also acknowledges that plaintiffs may not receive damages for both claims, but only one.

Further, if a claimant seeks restitution of profits from conduct that may or not be tortious, it is the tort law of the jurisdiction that formally decides the question of unjust enrichment. *See* Restatement § 44, Comment *a*, and the accompanying Reporter's Note. The Court also notes the Restatement does not require wrongdoing, only that defendant's retention of the benefit provided by the claimant would be unjust or inequitable. Restatement §§3, 50, 51, and 52. At this stage of the proceedings, it is unclear whether plaintiffs are eligible for either, both, or neither a restitution remedy or a disgorgement remedy for an unjust enrichment claim.

What is clear, however, is that plaintiffs and defendants dispute not just the pleading requirements for this claim but the scope of pleading that plaintiffs may exercise, i.e., whether pleading in the alternative can move forward. Defendants assert that individual state laws dictate narrowed pleading of unjust enrichment claims. This is because past jurisprudence in many states define unjust enrichment as a claim in equity, consequently disallowing it when there is an adequate claim in law. Plaintiffs, by contrast, plead that Rule 8 generally governs pleading and liberally allows pleading in the alternative, even if two claims seeking similar remedies may not ultimately proceed or be compensated under state law.

## 5.1    Whether plaintiffs can plead tort, warranty, strict liability, and/or fraud claims and also plead unjust enrichment in the alternative.

As noted above, the Restatement §1 comment *e (3)* and Restatement § 3, Comment *d* expressly discuss that, when a complaint alleges a defendant wrongfully profited and seeks restitution for unjustified enrichment, the complaint can also seek damages in tort. The Court further notes that the Restatement makes it perfectly clear that a plaintiff may seek both restitution for unjustified

enrichment as well as damages from wrongdoing.  See Restatement §4.[27]  It is the alternative seeking of restitution alongside a request for damages under other theories that is permissible.

The Court notes that the Restatement §4(2) expressly eschews the "adequacy at law" argument that underlies so many state laws or judicial fiat in which an unjust enrichment claim is treated as sounding in equity and found impermissible when there is an "adequate remedy at law".  The Restatement declares prohibiting an unjust enrichment claim only because there is an adequate remedy at law is not the correct way to proceed because it regards the past rationales of state courts incorrect.[28]  In essence, the false dichotomy of equity vs .at law remedies for unjust enrichment claims is problematic and has for so long improperly accounted for the facts at hand.  The Restatement itself implies the alternative pleading of legal claims and an unjust enrichment claim is permitted and that unjust enrichment has been too easily circumscribed by courts as an equitable claim, and therefore disallowed when legal remedies were available.

By this discussion, the Court is attempting neither to re-write state laws or decide state jurisprudence nor settle the question of whether unjust enrichment is a legal or equitable claim but

---

[27] Restatement § 4 *Restitution May Be Legal or Equitable or Both*:

> "…(2) A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law.
>
> Comment a, Although some remedies in restitution are indeed equitable in origin, there is no requirement that a claimant who seeks any of the remedies described in this Restatement must first demonstrate the inadequacy of a remedy at law. An argument to the contrary should appear antiquated today, but § 4(2) is included to remove any doubt. See comment *e.*" …
>
> *e. Adequacy of remedies at law.* Courts too often recite that one of the requirements of a claim based on unjust enrichment is the absence of an adequate legal remedy. This spurious proposition rests on an obvious fallacy, and it obscures what courts are actually doing when they invoke it. See § 4(2).
>     The quickest demonstration of the fallacy involved in any such statement lies in the fact that a modern claim in restitution or unjust enrichment is so often the equivalent of a cause of action that was available at law. See Comments *b* and *c*. Whenever the claim in unjust enrichment might be so characterized, the suggestion that the claimant must show the absence of a remedy at law is a palpable error. Courts that dismiss a claim of unjust enrichment based on a supposed "inadequacy" requirement are usually motivated by different concerns. See Illustrations 7-8. "

The Reporter's Notes for Restatement §4(2), *comment e* point out that Illustrations 7 and 8 in *comment 3* were examples of courts' wrongly deciding that unjust enrichment cannot lie because there is an adequate remedy at law.   " It is all too easy to find modern decisions referring to an imagined connection between "unjust enrichment" and the adequacy of remedies at law. See 1 Palmer, Law of Restitution § 1.6 (1978 & Supp.)."  Reporter's Notes for Restatement §4(2).

[28] *See supra* note 25.

acknowledges the acumen and expertise of the Restatement.  The Court has taken the position that whether plaintiffs **may plead** multiple theories or under a specific theory of recovery requires applying the law of each relevant state.  In doing so, the Court is therefore implicitly adopting the state's theoretical categorization of an unjust enrichment claim as equitable or as "quasi-contractual" even if not agreeing with it.

In their motions to dismiss, the mfr defendants, the Wholesaler defendants, and the Pharmacy defendants argue the unjust enrichment claims in the ELMC are improperly pleaded considering various pleaded requirements under state laws.   The mfr defendants refer the Court to two separate Exhibits to their Motion to Dismiss, each of which list case law for various states and which defendants argue demonstrate the inapplicability of unjust enrichment claims.

### 5.1.1    Pleading requirement

The first Exhibit (ECF Doc. 520-3, Exhibit 5:49) focuses on a requirement in certain states when pleading unjust enrichment.  That is, in this Exhibit, mfr defendants cite case law that <u>allows</u> unjust enrichment claims <u>only when plaintiffs plead the absence of an adequate remedy at law</u>.  Wholesalers also cite the same cases at ECF Doc. 522, Exhibit 2: 11, Chart 4.[29]  Pharmacies cite to cases pertaining to fact situations when a *bona fide* contract governs the relationship of the parties.  ECF Doc. 523-1, Exhibit 4:C1-C3.   Defendants' cited case law points to a procedural deficiency in the pleading of the unjust enrichment claims.

The Court has reviewed each of the cases cited in footnote 29 and finds the cases cited under Arizona law and North Dakota law do not support the proposition that a plaintiff must plead there is no

---

[29] These states include
<u>Arizona</u>:  *Ajose v. Interline Brands, Inc.*, 187 F. Supp. 3d 899, 915 (M.D. Tenn. 2016);
<u>Florida</u>:  *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005);
<u>Iowa</u>: *Mussmann v. Wal-Mart Stores, Inc.*, No. LA27486, *2001 WL 36234327* (Iowa Dist. Ct. 21 Dec 2001) ;
<u>Louisiana</u>:  *Matheny v. Greer*, 668 So. 2d 1359, 1362 (La. Ct. App. 1996) <u>writ denied</u>, 672 So. 2d 923 (La. 1996);
<u>Kansas</u>:  *Pinkney v. TBC Corp.*, No. 2:19-cv-02680, 2020 WL 1528544, at *7 (D. Kan. 31 Mar  2020);
<u>North Dakota</u>:  *KLE Constr., LLC v. Twalker Dev., LLC*, 887 N.W.2d 536, 538 (N.D. 2016).

adequate remedy in the law for the unjust enrichment claims and discusses its disagreement in footnote 30.[30]

Accordingly, the Court **GRANTS without prejudice** defendants' motions to dismiss those unjust enrichment claims in the ELMC arising under the laws of Florida, Iowa, Kansas, and Louisiana because these states require pleading no adequate remedy at law exists.   To the extent plaintiffs are able to plead no adequate remedy at law exists in these states, the Court **GRANTS** plaintiffs leave to amend the unjust enrichment claims in these states within the period set forth in the accompanying Order.

### 5.1.2   Absence of Pleading Requirement

The second of defendants' Exhibits, ECF Doc. 520-3, Exhibit 5:52-56, focuses on the absence of a pleading requirement.  Mfr defendants cite case law from various states that prohibit unjust enrichment claims when  there is an adequate remedy at state law for the pleaded conduct, regardless of whether this has been pleaded or not.   Wholesalers also cite the same cases at ECF Doc. 522, Exhibit 2:12-16, Chart 5.   The Court has reviewed the cited cases in order to confirm they stand for the proposition that unjust enrichment claims are not permitted in these states.   In footnote 31[31], the Court

---

[30]         In *Ajose v. Interline Brands, Inc.*, 187 F. Supp. 3d at 915, the Tennessee District Court applying Arizona law states that "[i]n Arizona, when a plaintiff brings multiple claims, this pleading requirement may be met where the complaint makes plain that the claim of unjust enrichment is a claim in the alternative. *In re Processed Egg Products Antitrust Litig.*, 851 F.Supp.2d 867, 918 (E.D.Pa.2012) (applying Arizona law to dismiss an unjust enrichment claim)."   However, the *Ajose* court also found that plaintiffs did not plead their unjust enrichment claim was in the alternative and therefore dismissed it.   This Court therefore concludes from the *Ajose* citation that Arizona law does not require a pleading of "no adequate remedy at law."

         In *KLE Constr., LLC v. Twalker  Dev., LLC*, 887 N.W.2d at 539, the North Dakota Supreme Court stated that "the issue of whether a construction lien was an available remedy in this case is more complicated than determining there was evidence KLE believed it could file a construction lien".  Thus, the facts and procedure of this appeal show that pleading whether there was an adequate remedy at law that excluded an unjust enrichment claim was a matter of fact interpretation, not application of a pleading elements rule.   Actually, this case belongs in the second category of prohibiting unjust enrichment claims because there is an adequate remedy at law.  This case did not concern a *per se* pleading deficiency.

[31] Alabama:  *Cmty. Spirit Bank v. Fid. Nat'l Title Ins. Co. of N.Y.*, No. 3:09-cv -430-NW, 2009 WL 10688141, at *5 (N.D. Ala. 22 June  2009), at Motion to dismiss  stage, unjust enrichment claim dismissed.
 Arizona: *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 334 (S.D.N.Y. 2018), at motion to dismiss stage. "Thus, "only" ten states remain in dispute: Arizona, Connecticut, Mississippi, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, West Virginia. The Court concludes that [defendants] arguments are largely right. First, in nine out of the ten states (all but Connecticut), a plaintiff may plead "unjust enrichment" in the alternative only where the validity or enforceability of a contract is in question." Id.  at 333.

**California**: *In re Ford Tailgate Litig.*, No. 3:11-cv-2953, 2014 WL 1007066, at *5 (N.D. Cal. 12 Mar 2014), *order corrected on denial of reconsideration*, No. 3:11-cv-2953, 2014 WL 12649204 (N.D. Cal. 15 Apr 2014) (dismissing unjust enrichment claim and noting to the extent "unjust enrichment is available as an independent claim .. . it will not stand where the claim simply mirrors other statutory or tort claims.)  This implies a fact question.

**Colorado**: *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1207 (Colo. Ct. App. 2009).  At appellate review stage:  *appellate* court found adequate remedy at law.  Implies a fact question at motion to dismiss stage.

**Connecticut**: *Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 187 A.3d 1174, 1183 (Conn. Ct. App. 2018), at appellate review stage:  court found an available remedy at law.  This implies a fact question at motion to dismiss stage.  Moreover, *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 335 found: "[t]he Court concludes that an adequate legal remedy does not bar a damages claim for unjust enrichment under Connecticut law."

**Delaware**: *Total Care Physicians, PA v. O'Hara*, No. Civ.A.99C-11-201-JRS, 2002 WL 31667901, at *10 (Del. Super. Ctr. 29 Oct 2002), at appellate review stage: court found that because of trial decision on the law, unjust enrichment superseded.  Implies a fact question as to whether unjust enrichment is a claim at law or in equity at motion to dismiss stage.

Florida:  *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005), at motion to dismiss stage.  *See supra* fn. 17.

Hawaii:  *Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084 (D. Haw. 2014), at motion to dismiss stage; "Hawaii law makes clear that the absence of an adequate remedy at law is a necessary prerequisite to maintaining an unjust enrichment claim. *Id.* at 1103.

Idaho: *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007), on appellate review of summary judgment.  Idaho Supreme Court confirmed under Idaho law, cannot pursue an unjust enrichment for a breach of contract or, absent a contract, if an adequate legal remedy is available.

Illinois: Guinn v. Hoskins Chevrolet, 836 N.E.2d 681, 704 (Ill. Ct. App. 2005), at motion to dismiss stage; "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law".

**Indiana**:  *Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970, 999 n. 7 (N.D. Ind. 2010), following default judgment of liability against defendants; in damages opinion, judge noted "[u]nder Indiana law, equitable principles such as unjust enrichment will not apply where there exists a remedy at law but he did not actually decide the unjust enrichment claim because the RICO claim was defaulted to.  **The lack of a decision raises a fact question at motion to dismiss stage.**

**Kentucky**:  *U.S. v. Stevens*, 605 F. Supp. 2d 863, 869-70 (W.D. Ky. 2008), at summary judgment stage, dismissal of government's alternative claim for unjust enrichment against corporate director was premature.  **Implies a fact question at motion to dismiss stage.**

 Louisiana: *Walters v. MedSouth Rec. Mgmt., LLC*, 38 So.3d 245, 246–47 (La. 2010), on appeal to Louisiana Supreme Court.  "The remedy of unjust enrichment is subsidiary in nature, and shall not be available if the law provides another remedy. LSA–C.C. art. 2298."

Massachusetts:  *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017), appellate review of courts' dismissal of plaintiff's unjust enrichment claim even though plaintiff's other legal claims dismissed for failure to state a claim under Rule 12(b)(6): "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment".

Mississippi:  In re Gen. Motors LLC Ignition Switch Litig., 339 F. Supp. 3d 262, 335 (S.D.N.Y. 2018)

"Under Mississippi law, 'unjust enrichment is an equitable claim,' *Willis [v. Rehab Solutions, PLLC]*, 82 So.3d [583] at 588; *see also Germany v. Germany*, 123 So.3d 423, 431 (Miss. 2013) ('This Court has made it clear that the remedies of constructive trust and unjust enrichment are equitable.), and 'equitable relief is unavailable if there exists an adequate remedy at law.' *Joel v. Joel*, 43 So.3d 424, 430 n.10 (Miss. 2010)."

**Missouri**:  *Amalaco, LLC v. Butero*, 593 S.W.3d 647, 653 (Mo. Ct. App. 2019), *reh'g and/or transfer denied*(Jan. 21, 2020), *transfer denied*(Mar. 17, 2020), on appeal to Missouri appellate division:  "Where a plaintiff has entered into an express contract for the very subject matter for which he or she seeks recovery—i.e., plaintiff has agreed to an adequate remedy at law in the face of certain events—unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo.App.W.D. 2010)".  **Case involved property rights in a lease, not products liability, implies a fact question at motion to dismiss stage.**

**Nebraska**:  Pilot Inv. Grp. Ltd. v. Hofarth, 550 N.W.2d 27, 33 (Neb. 1996), on appeal to Nevada Supreme Court, unjust enrichment claim dismissed because plaintiffs did not plead all elements of an unjust enrichment claim.  **implies a fact question at motion to dismiss stage.**

**Nevada**: *Small v. Univ. Med. Ctr.of S. Nevada*, No. 2:13-cv-298, 2016 WL 4157309, at *3 (D. Nev. 3 Aug 2016), at motion to dismiss stage; court dismissed unjust enrichment claim without prejudice and granted plaintiffs leave to plead appropriate theory of recovery if they could. **implies a fact question at motion to dismiss stage.**

**New Jersey**  *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000), Judge Cooper stated the law in New Jersey as: "Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties. *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir.1982); *see also Suburban Transfer*, 716 F.2d at 226. Therefore, recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory. *See id.; see also Caputo v. Nice–Pak*

*Prods., Inc.,* 300 N.J.Super. 498, 507, 693 A.2d 494, 498 (App.Div.1997)." **There is no contract here.  Implies a fact question at motion to dismiss stage.**

**New Mexico:** *Figueroa v. Ethicon, Inc.,* No. 2:19-cv-1188 KWR/KRS, 2020 WL 1434249, at *3 (D.N.M.24  Mar  2020), at motion to dismiss stage, district court judge found "it would be premature to dismiss the unjust enrichment claim and it is unclear at this time whether Plaintiff has an adequate remedy at law".  **Implies a fact question at motion to dismiss stage.**

**New York**: *Bourbia v. S.C. Johnson & Son, Inc.,* 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019) Although New York allows plaintiffs to plead unjust enrichment in the alternative, if it "is duplicative of other causes of action," i.e., it "relies on the same conduct that forms the basis of [] other claims" "it should be dismissed".  **Implies a fact question at motion to dismiss stage.**

**North Carolina:** *Hawks v. Brindle,* 275 S.E.2d 277, 282 (N.C. Ct. App. 1981) on appeal to state appellate court of directed verdict for defendants regarding a contract for the sale of land;  unjust enrichment claim denied because there was an adequate remedy at law for the contract issue.   **Case is inapposite as there is no contract here.  Implies a fact question at motion to dismiss stage.**

**Ohio:** *Banks v. Nationwide Mut. Fire Ins. Co.,* No. 99AP-1413, 2000 WL 1742064 (Ohio Ct. App. 28 Nov 2000) post-trial appeal to Ohio court of appeals; subject matter was car insurance contract.  Court stated "Thus, under the theory of *quantum meruit,* a party may recover compensation in the absence of a contract where an unjust enrichment would result if the recipient were permitted to retain the benefit without paying for it. [quotation omitted]. *Id.* at *5.  **No contract at issue in this matter. Implies a fact question at motion to dismiss stage.**

**Oklahoma:** *Naylor Farms, Inc. v.Anadarko OGC Co.,* No. 5:08-cv-668, 2011 WL 7267851, at *1 (W.D. Okla.15  June  2011), on motion for partial summary judgment; " ...to invoke equity jurisdiction, it must be shown that no adequate statutory or legal remedy is available. *Billingsley v. North,* 298 P.2d 418, 422 (Okla.1956)."

**Oregon:** *In re Gen. Motors LLC Ignition Switch Litig.,* 339 F. Supp. 3d 262 (S.D.N.Y. 2018), at motion to dismiss stage; Court stating: "The Oregon Supreme Court has held that a plaintiff 'may plead alternatively on an express contract and in *quantum meruit,*' but that the unjust enrichment claim must be stricken once the parties concede the existence of a valid and enforceable contract." *Kashmir Corp. v. Patterson,* 289 Or. 589, 592-94, 616 P.2d 468 (1980). *Id.* at 339.  **No contract at issue in this matter. Implies a fact question at motion to dismiss stage.**

**Pennsylvania:** *Meehan v. Cheltenham Twp.,* 189 A.2d 593, 595 (Pa. 1963) (holding adequate remedy at law existed so as to divest equity of jurisdiction of action for alleged unjust enrichment since law courts can provide remedy of money damages); **This case is inapposite to the facts here.**

*See Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.,* 933 A.2d 664 (2007), PA appellate court affirmed trial court's award of unjust enrichment, *contravening Meehan v. Cheltenham,* and *stating:* **"**In determining if the **[unjust enrichment]** doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. **….**The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in *quantum meruit."* …*"* ' By its nature, the doctrine of quasi-contract, or unjust enrichment, is inapplicable where a written or express contract exists.' [quotation omitted]" *Id.* at 668-669. *See also Rizzo v. MSA, Inc.,* No. 06-cv-3330, 2010 WL 9597511, Pa.Com.Pl. (5 Nov 2010), 18 Pa. D. & C. 5th 233, in post-trial motion even when the parties had a contract, the court found Meehan v.*Cheltenham* inapplicable (*9-10) defendants received non-contractual benefits; the Court stated  "A claim for unjust enrichment arises from a quasi-contract which 'imposes a duty, not as a result of any agreement, whether expressed or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another'...The most significant element of the doctrine of unjust enrichment is whether the enrichment of the defendant is unjust...*Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.,* 933 A.2d 664, 669 (Pa.Cmwlth.2007), *app. denied,* 596 Pa. 755, 947 A.2d 737 (2008)." *Id.* at *8.

**No contract at issue in this matter. Implies a fact question at motion to dismiss stage.**

South Carolina:  *In re Gen. Motors LLC Ignition Switch Litig.,* 339 F. Supp. 3d 262, 341 (S.D.N.Y. 2018), applying South Carolina law and noting  unjust enrichment is equitable remedy unavailable when there is an adequate remedy at law, regardless of the success of the legal remedy.

**South Dakota:** *Schumacher v. Tyson Fresh Meats, Inc.,* No. 1:02-cv-1027, 2006 WL 7124778, at *4 (D.S.D. 10 Apr  2006) at post-class certification stage, judge de-certifying the unjust enrichment class because of the great variability in states' law and finding that plaintiffs have not pleaded there is no adequate remedy at law.  **Implies if plaintiffs can so plead, there remains a fact question at motion to dismiss stage.**

**Utah**: *Thorpe v. Wash. City,* 243 P.3d 500, 507 (Utah Ct. App. 2010) appellate court found plaintiff had not pleaded there was no adequate remedy at law.  **Implies a fact question at motion to dismiss stage.**

**Virginia:**  *R.M. Harrison Mech. Corp. v. Decker Indus., Inc.,* No. CL08–193, 2008 WL 10669311, at *5 (Va. Cir. Ct. 28  Aug  2008), at motion to dismiss stage, court found  unjust enrichment claim not properly pleaded, but could be allowable if so pleaded and granted leave to amend complaint. And at *6, court states unjust enrichment claim in Virginia is not allowed when there is a bona fide contract. **No contract at issue in this matter. Implies a fact question at motion to dismiss stage.**

has bolded those states about which It disagrees with defendants' conclusions of the cited case law and also provided its comments and observations there in bold.

In addition, plaintiffs did not plead in the ELMC that an express, *bona fide* contract situation existed between plaintiffs and the Pharmacies. Rather, plaintiffs pleaded a "contractual privity" between them and Pharmacies because of the sales transaction by which plaintiffs directly bought the VCDs of interest from Pharmacies. ECF Doc. 121, EIMC §82. In other words, Pharmacies engaged in a sale with plaintiffs by which the VCDs of interest changed ownership because plaintiffs gave the benefit of a cash payment. But there is no *bona fide*, formal sales contract pleaded between Pharmacies and plaintiffs nor is one implied by the allegations at EIMC §§176-178, which generally describe the players in the drug supply chain in the United States and their relationships with each other. Consequently, the Court considers the cases cited by Pharmacies in ECF Doc. 523-1, Exhibit 4:C1-C3 (which focus on a formal contract) to be inapposite.

In addition, even if the adequacy of law argument applies under select jurisdictions, this Court's previous ruling in MTD Opinion 3 (ECF Doc. 775 :3-4), which dismisses the express warranty claims without prejudice against Wholesalers and Pharmacies, may give plaintiffs a separate avenue to pursue. the unjust enrichment claims.

Accordingly, the Court **GRANTS without prejudice** defendants' motions to dismiss those unjust enrichment claims in the ELMC arising under the laws of Alabama, Florida, Hawaii, Idaho, Illinois, Louisiana, Massachusetts, Mississippi, Oklahoma, South Carolina, and West Virginia because these states prohibit the pleading of an unjust enrichment claim when an adequate remedy at law exists. To the extent, plaintiffs must plead and are able to plead in these states that no adequate remedy at law exists in order to advance the unjust enrichment claims in those states, the Court

---

\West Virginia:  *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 341-42 (S.D.N.Y. 2018) applying West Virginia law and noting unjust enrichment is equitable remedy unavailable when there is an adequate remedy at law, regardless of the success of the legal remedy.

**GRANTS** plaintiffs the right to amend the claims in these states within the period set forth in the accompanying Order.

**5.2      Whether plaintiffs must plead they conferred a <u>direct </u>benefit on defendants**

Mfr defendants argue that many states' unjust enrichment laws require plaintiffs to confer a direct benefit upon the defendant. They also aver this direct benefit is akin to a privity requirement and that  plaintiffs have not so pleaded "privity" with them and therefore plaintiffs' unjust enrichment claims must fail.  ECF  Doc. 520-3: 52-53.  Wholesaler defendants also argue plaintiffs have not conferred a direct benefit to them using similar reasoning.  ECF  Doc.  522-1:15-17.   Under mfr and Wholesaler defendants' argument, it may be only Pharmacies upon whom plaintiffs conferred a direct benefit when they paid Pharmacies for VCDs at issue.

Plaintiffs volley with a lengthy footnote of citations from various jurisdictions,[32] which raise doubt as to whether plaintiffs, or another entity, must confer the benefit directly to the benefit

---

[32] Plaintiffs' footnote 36 in ECF Doc. 577:74 is included here in relevant part:
<u>Arkansas</u>: *Thompson v. Bayer Corp.*,2009 WL 362982, at *5 (E.D. Ark. 12 Feb  2009);
<u>California</u>: *St. Paul Fire & Marine Ins.  v. Insurance Co. of State of PA*, 2016 WL 1191808, at *7 (N.D. Cal. 28 Mar 2016);
<u>Colorado</u>: *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008);
<u>Connecticut</u>: *Bank of New York Mellon v. Fidelity Nat'l Title Ins.*, 2013 WL 5663263, at *4 (Conn. Super. Ct. 20 Sep 2013);
<u>District of Columbia</u>: *Minebea Co. v. Papst*, 444 F.Supp.2d 68, 186 (D.D.C. 2006);
<u>Hawaii</u>: *Joslin v. Ota Camp-Makiba Ass'n*, 2019 WL 1500008, at *9-10 (Haw. Ct. App. Apr. 5, 2019;
<u>Illinois</u>: *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 853 (N.D. Ill. 2006);
<u>Indiana</u>: *DiMizio v. Romo*, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001);
<u>Iowa</u>: *State ex rel Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001);
<u>Kansas</u>: *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007);
<u>Kentucky</u>: *Muncy v. InterCloud* Sys.  Inc.., 92 F. Supp. 3d 621, 643 (E.D. Ky. 2015);
<u>Louisiana</u>: *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 2009 WL 901763, at *6 (E.D. La. 25 Mar  2009);
<u>Maine</u>: *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994);
<u>Maryland</u>: Bank of America Corp. v. Gibbons, 918 A.2d 565, 571 (Md. Ct. Spec. App. 2007);
<u>Massachusetts</u>: Massachusetts v. Mylan Labs., 357 F. Supp. 2d 314, 323 (D. Mass. 2005);
<u>Mississippi</u>: *In re B.C. Rogers Poultry, Inc.* , 455 B.R. 524, 569 (S.D. Miss. 2011));
<u>Missouri</u>: Cromeans v. Morgan Keegan & Co., 2013 WL 12129609, at *7 (W.D. Mo. 5 Nov. 5, 2013);
<u>Montana</u>: *Northern Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 457 (Mont.2013)
<u>Nevada</u>: *USACM Liquidating Tr. v. Monaco*, 2010 WL 11579643, at *3 (D. Nev. 27 Jan 2010);
<u>New Hampshire</u>: *Pella Windows and Doors, Inc. v. Faraci*, 580 A.2d 732, 732-33 (N.H. 1990);
<u>New Mexico</u>: *Abraham v. WPX Energy Production, L.L.C.*  20 F.Supp.3d 1244, 1266 (D.N.M. 2014);
<u>New York</u>: *Hughes v. Ester C Co.*,930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013);
<u>North Carolina</u>: *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. App'x. 916, 921 (4th Cir. 2003);
<u>Oregon</u>: *Marchione v. Playboy Enterprises, Inc.*, 2013 WL 876263 at *2 (D. Or. 7 Mar 2013);
<u>Rhode Island</u>: *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *11 (N.D. Cal. 28 Sep  2011);
<u>South Dakota</u>: *Dowling Family Partnership v. Midland Farms*, 865 N.W.2d 854, 857, 863 (S.D. 2015);
<u>Tennessee</u>: *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); and
<u>Vermont</u>: *Gingras v. Rosette*, 2016 WL 2932163, at *26 (D. Vt. 16 May 2016) .

recipient.  That is, plaintiffs' cited case law raises a question of fact as to whether the conferred benefit requires a kind of privity between plaintiffs and each category of defendants (as mfr defendants imply), or whether the benefit may be conferred mediately through a third party.  ECF Doc. 577:74-75.

The Court finds that the case defendants cited as support at ECF Doc. 520-3:67, *In re Packaged Seafood Products Antitrust Litigation*, 242 F.Supp.3d 1033, (S.D. Ca. 2014), does not advance their argument, but rather bolsters plaintiffs' position.  Specifically, the MDL court in *In re Packaged Seafood Products Antitrust Litigation*, 242 F. Supp.3d  at 1089-1094 not only dismissed the unjust enrichment claims under Florida law, but more importantly also found the law in ten other states[33] and the District of Columbia <u>not</u> to require plaintiffs' conferral of a direct benefit. Plus, the Court allowed claims of attenuated unjust enrichment to move forward in those states.  Plaintiffs also cite other case law from Florida that contradicts defendants' assertion that the conferral of a direct benefit is a pleading requirement in Florida.  ECF Doc. 577: 76.  However, plaintiffs' other citations have no effect inasmuch as the unjust enrichment claim in Florida fails on other grounds.  *See supra* Sections 5.1.1 and 5.1.2.

In addition, from the Court's own research,  in another MDL, *In re Automotive Parts Antitrust Litigation*, 50 F.Supp.3d 836, 862 (E.D. Mich. 2014), the District Court denied defendants' motion to dismiss the unjust enrichment claims of indirect purchaser plaintiffs in all the relevant states, except California, whose claim was dismissed on a different ground.[34]

---

[33] These states included all four corners of the United States: Arizona, Kansas, Massachusetts, Michigan, North Carolina, Rhode Island, Utah, West Virginia, and Wisconsin.

[34]     "...the Court recognizes that although the particular elements of unjust enrichment vary from jurisdiction to jurisdiction, when stripped to its essence, a claim of unjust enrichment requires [indirect purchaser plaintiffs] to allege sufficient facts to show that Defendants received a benefit, and under the circumstances of the case, retention of the benefit would be unjust. *See In re Flonase  II* [Flonase Antitrust Litigation]*,* 692 F.Supp.2d [524] at 541 [E.D. Pa. 2010]  (holding that a claim of unjust enrichment requires a plaintiff to plead two elements: 'receipt of a benefit and unjust retention of the benefit at the expense of another'). In support of their unjust enrichment claims, [indirect purchaser plaintiffs] allege that as a result of the challenged conduct, 'Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits' from the sales of Bearings, that 'Defendants have benefitted from their unlawful acts, and that 'it would be inequitable for Defendants to be permitted to retain any of the 'ill-gotten gains' resulting from the overpayments.' (Doc. No. 67 at ¶¶ 322–323; Doc. No. 70 at ¶¶ 356–57)."
        Although the Court agrees that these particular allegations are conclusory, the Court does not read these allegations in isolation, but in light of all of the factual allegations in the complaints. An unjust enrichment claim is used to prevent a defendant from 'profit[ing] by his own wrong.' Restatement (Third) of Restitution & Unjust Enrichment § 3. Here, [indirect purchaser plaintiffs] allege that Defendants profited from their antitrust conspiracy. The Court has addressed the arguments

Accordingly, the Court **DENIES** defendants' motion to dismiss the unjust enrichment claims in the ELMC on the basis that plaintiffs need not plead they conferred a direct benefit to defendants in order to have pleaded properly an unjust enrichment claim.

**5.3     Whether a claim of unjust enrichment fails if plaintiffs have received some iota of benefit**

In ruling on this very issue, the *Automotive Parts* court, cited above, relied on *In re K–Dur Antitrust Litig.*, 338 F.Supp.2d 517, 545 (D.N.J.2004) for the proposition that the exchange of "any consideration" by both sides does not bar recovery under an unjust enrichment theory." *In re Automotive Parts Antitrust Litigation*, 50 F.Supp.3d at 863.  Additionally, the *In re K-Dur* court clarified that plaintiffs' allegations implied the consideration given by defendants was not reasonable, valuable, or adequate and that "[t]he critical inquiry [regarding whether an unjust enrichment claim fails for plaintiff's receipt of some benefit] is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct. *Cardizem I*, 105 F.Supp.2d at 654." *In re K–Dur Antitrust Litig.*, 338 F.Supp.2d. at 544.  "Determinations that depend on evaluating whether a benefit received approximates the value paid are primarily questions of fact, and as such, are not appropriately addressed on a motion to dismiss." *Id.* at 546.

Recently, this District in *Trusted Transportation Solutions, LLC v. Guarantee Insurance Company, et al.*, No. 16-cv-7094 (NLH/JS), 2020 WL 2111026 at *3 (D.N.J. 4 May 2020) also ruled similarly. Whenever a " jury could then conclude that Plaintiff 'received a product that failed to work for its intended purpose or was worth objectively less.' *See Koronthaly* [*v. L'Oreal USA, Inc.*], 374 F. App'x [257] at 259", that "would be sufficient to satisfy the second prong of an unjust enrichment/disgorgement claim." *Trusted Transportation*, 2020 WL 2111026 at *3.  "Therefore, because a reasonable jury could

---

advanced here in other component part cases and, after reviewing the cases, finds no basis for altering its analysis. Therefore, the Court dismisses [indirect purchaser plaintiffs]' claim of unjust enrichment under California law, as it does not recognize a cause of action for unjust enrichment. [citations omitted, dismissal under California law because court found California law required the pleading of wrongdoing in an unjust enrichment claim ] . For the reasons that follow, the Court **declines to dismiss any of the other unjust enrichment claims**." [emphasis added]
*In re Automotive Parts Antitrust Litigation*, 50 F.Supp.3d 836, 862 (E.D. MI, Southern Division 2014).

find that Plaintiff is entitled to disgorgement, the Court will hold that Plaintiff is not precluded at this stage [motion to dismiss] from seeking disgorgement." *Ibid.*

From these cases, the Court sees that this District has twice considered the issue of whether plaintiffs' receipt of partial benefit destroys an unjust enrichment claim and twice found that such partial benefit does not so destroy the claim.   Moreover, the remedy of disgorgement, instead of restitution, is not eliminated at this stage of the proceedings, even in the absence of wrongdoing, but depends on the development of the factual record.

Accordingly, the Court **DENIES** defendants' motions to dismiss the unjust enrichment claims in the ELMC on the basis that the partial benefit plaintiffs received impairs neither the unjust enrichment claim nor the demand for restitution or disgorgement.

### 5.4    Whether plaintiffs must plead wrongdoing and whether they have done so properly

Pharmacy defendants, in particular, argue that Restatement  §3 leans in their favor.  They assert that, as they are "innocent sellers" according to some state statutes, the Restatement §3, titled Wrongful Gain[35], can only mean they bear no liability for unjust enrichment.  They also argue that this District's *In re Cheerios Marketing and Sales Practices Litigation*,   No. 09-cv-2413, 2012 WL 3952069 (D.N.J. 10 Sept. 2012) supports this view.

The Court sees that the  Restatement does not help Pharmacies, not §3 and certainly not §§50 and 52.    The Restatement §3 and its *comment a* are clear: although disgorgement is often the remedy for wrong doing, that does not mean, as  Pharmacies imply, there is no remedy for unjust enrichment gained by those who were not conscious wrongdoers in receiving plaintiffs' benefit.[36]   The Restatement does not state, as Pharmacies imply, that a remedy for unjust enrichment can never apply to "innocent sellers".  The Pharmacies mistakenly equate the term "innocent seller" as used in state laws with the

---

[35] Restatement §3 states:  A person is not permitted to profit by his own wrong.
[36] "Liability to disgorge profits is ordinarily limited to cases of what this Restatement calls 'conscious wrongdoing' " Restatement §3, *comment a.*

term  "innocent recipient", as used in Restatement "§50,[37] and/or with the term "not a conscious

wrongdoer",  as used in Restatement §52.[38]  The Restatement §§50 & 52, when considered in concert,

are clear:  there is a restitution remedy imposed on "innocent recipients" of a plaintiff's benefit even

when that recipient is "not a conscious wrongdoer" because that benefit nonetheless has imparted a

transactional gain that would be unjust for the recipient to retain, and which specific remedy varies by

factual context.  Further, as all the relevant facts have yet to be developed at this stage, but which

conceivably may include  breach of duty by upstream players in the U.S. pharmaceutical chain, that is,

by the API or finished dose manufacturers or by the Wholesalers, Restatement §43[39] may serve to

implicate Pharmacies' liability for restitution under an unjust enrichment claim because of the upstream

players' liability.

    Besides the above discussion of how the Restatement does not support Pharmacies' "innocent

seller" posture, this District has developed unjust enrichment jurisprudence that moves past *In re*

*Cheerios Marketing and Sales Practices Litigation*.  In *Trusted Transportation*,  2020 WL 2111026  at *3

---

[37] Restatement  §50 states:
(1)"An 'innocent recipient' is one who commits no misconduct in the transaction concerned and who bears no responsibility for the unjust enrichment in question (§ 52)."
(2) If nonreturnable benefits would be susceptible of different valuations by the standards identified in § 49(3), **the liability of an innocent recipient is determined as follows**:
  (a) Unjust enrichment from unrequested benefits is measured by the standard that yields the smallest liability in restitution.
  (b) Unjust enrichment from requested benefits is measured by their reasonable value to the recipient. Reasonable value is normally the lesser of market value and a price the recipient has expressed a willingness to pay.
  (c) Reasonable value may be measured by a more restrictive standard if the validity of the recipient's assent is in question (§49(3)(d)); if the claimant has not performed as requested (§ 36); or if prevailing prices include an element of profit that the court decides to withhold from the claimant. [emphasis added]
[38] Restatement §52 states:
(1) A defendant who is not a conscious wrongdoer (§ 51(3)) may nevertheless be responsible for receiving, retaining, or dealing with the benefits that are the subject of a restitution claim. For purposes of this section, a defendant bears such responsibility when a significant cause of the defendant's unjust enrichment is the defendant's
        (a) negligence;
        (b) misrepresentation, whether tortious or not;
        (c) breach or repudiation of a contract with the claimant, whether enforceable or not;
        (d) unreasonable failure, despite notice and opportunity, to avoid or rectify the unjust enrichment in question; or
        (e) bad faith or reprehensible conduct.
[39] § 43 Fiduciary or Confidential Relation
A person who obtains a benefit
                (a) in breach of a fiduciary duty,
                (b) in breach of an equivalent duty imposed by a relation of trust and confidence, or
                (c) in consequence of another's breach of such a duty,
is liable in restitution to the person to whom the duty is owed.

(D.N.J. 4 May 2020),  this District considered *In re Cheerios Marketing and Sales Practices Litigation* but found the fact situation there inapposite because the Cheerios plaintiffs could not show a necessary prong of the unjust enrichment test—namely, that the product which plaintiffs received did not work as intended.   The *Trusted Transportation* Court followed instead the New Jersey Supreme Court in  *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007).

In other motion to dismiss opinions in this series, this Court has acknowledged that the VCDs at issue may have lowered blood pressure but also may have caused cancer or increased the risk of cancer. Thus, it may plausibly be borne out that plaintiffs paid Pharmacies directly for VCDs that worked not as plaintiffs intended. That plaintiffs paid for a product that allegedly induced cancer or gave a higher risk of getting cancer may pose a subsequent fact question as to whether Pharmacies, in particular, were unjustly enriched by plaintiffs' payment.  That fact question is similar to the one in Trusted Transportation and one reason why the court there relied on the *Iliadis* reasoning.

The *Iliades* Court stated the standard for demonstrating a restitution remedy in an unjust enrichment claim:

"To establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.' *VRG Corp. v. GKN Realty Corp.*, 135 *N.J.* 539, 554, 641 *A.2d* 519 (1994). That quasi-contract doctrine also 'requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.' *Ibid.*"

*Iliades*, 922 A.2d at 723.

Pharmacies have not accounted for the fact that they have  benefitted beyond the quasi-contract transaction with plaintiffs, which is:   plaintiffs paid Pharmacies and Pharmacies gave plaintiffs the VCDs at issue in return.  But, there was more to the transaction than this because plaintiffs paid for the VCDs at issue, which were not the drugs plaintiffs thought they were paying for.   Thus, it is plausible to infer that  plaintiffs surrendered a benefit to Pharmacies that was greater than the

consideration they received in return, the contaminated VCDs.  And it is a fact question whether this greater benefit may be beyond the jurisprudential reach of the innocent-seller, state law statutes, which shield Pharmacies from wrongdoing liability.  The Restatement nonetheless points out that unjust enrichment can occur even when there is no wrongdoing as well as because downstream enrichment because of upstream liability still incurs restitution remedies.   Restatement §§3, 43, 50, and 52.  This fact question cannot properly be resolved upon a motion to dismiss.

Accordingly, the Court **DENIES**  defendants', and in particular the Pharmacies', motions to dismiss the unjust enrichment claims in the ELMC on the specific basis of argued innocent seller status.

**6.0     CONCLUSION**

For the reasons stated herein, the Court makes the following rulings:

The Court **DENIES** the defendants' motions to dismiss any claim in any Master Complaint against Prinston, Aurobindo Pharma USA, and Hetero USA on the ground plaintiffs have alleged properly these entities do not function exclusively as  FDA Liaisons;

To  the extent plaintiffs' tort, strict liability, warranty, and/or fraud cause(s) of action underlying their wrongful death, survivor, or consortium claims has(ve) been dismissed **WITH PREJUDICE** in this Court's previous motion to dismiss opinions,  the Court **GRANTS in part** defendants' motion to dismiss the plaintiffs' wrongful death, survivor, and/or consortium claims in the PIMC ;

To the extent,  plaintiffs' tort, strict liability, warranty, and/or fraud cause(s) of action underlying their wrongful death, survivor, or consortium claims has(ve) **NOT** been dismissed **WITH PREJUDICE** in this Court's previous  motion to dismiss opinions,  then the Court **DENIES in part** defendants' motion to dismiss plaintiffs' wrongful death, survivor claim, and/or consortium claims in the PIMC;.

The Court recognizes that if plaintiffs' underlying tort, strict liability, warranty, and/or fraud cause(s) of action has(ve) been dismissed **WITHOUT PREJUDICE** in this Court's previous motion to dismiss opinions, then Plaintiffs may amend those underlying cause(s) of action to support their derivative claims within the period set forth in the accompanying Order;

The Court **DENIES** defendants' motions to dismiss the claim in the PIMC for a punitive damages remedy Nevertheless, the Court appreciates that the law of each state varies as to the availability of a punitive damages remedy, which may be limited by, among other things, the state law applicable to the decedent plaintiff's claims requiring a showing of willful disregard;

The Court **GRANTS without prejudice** defendants' motions to dismiss those unjust enrichment claims in the ELMC arising under the laws of Florida, Iowa, Kansas, and Louisiana because these states require pleading no adequate remedy at law exists.   To the extent plaintiffs are able to plead no adequate remedy at law exists in these states, the Court **GRANTS** plaintiffs leave to amend the unjust enrichment claims in these states within the period set forth in the accompanying Order;

The Court **GRANTS without prejudice** defendants' motions to dismiss those unjust enrichment claims in the ELMC arising under the laws of Alabama,  Florida, Hawaii, Idaho, Illinois, Louisiana, Massachusetts, Mississippi, Oklahoma, South Carolina, and West Virginia because these states prohibit the pleading an unjust enrichment claim when an adequate remedy at law exists. To the extent, plaintiffs must plead and are able to plead in these states that no adequate remedy at law exists in order to advance the unjust enrichment claims in those states, the Court **GRANTS** plaintiffs the right to amend the claims in these states within the period set forth in the accompanying Order;

The Court **DENIES** defendants' motion to dismiss the unjust enrichment claims in the ELMC on the basis that plaintiffs need not plead they conferred a direct benefit to defendants in order to have pleaded properly an unjust enrichment claim.

The Court **DENIES** defendants' motions to dismiss the unjust enrichment claims in the ELMC

on the basis that the partial benefit plaintiffs received impairs neither unjust enrichment claim nor the

demand for restitution or disgorgement;

The Court **DENIES**  defendants', and in particular the Pharmacies', motions to dismiss the

unjust enrichment claims in the ELMC on the specific basis of argued innocent seller status.


**AFTERWORD:**

The Court informs the parties of a recent, conclusive clarification by the Judicial Panel on

Multidistrict Litigation["JPML"] in *In re: Delta Dental Antitrust Litigation*, MDL 2931, --- F.Supp.3d ----,

2020 WL 7382602 (J.P.M.L.  16 December 2020) on the issue of jurisdiction of the transferee court over

individual matters in a multi-district litigation.  Third Circuit jurisprudence features strongly in the

JPML's opinion.  And, this Court, as the transferee court in MDL 2875, finds it valuable to quote the

opinion to dispel any confusion as to its jurisdiction over individual cases in the MDL:

"  * 1...  We have long denied objections to transfer based on the transferee court's alleged lack of

personal jurisdiction:

> **Transfers under Section 1407 are simply not encumbered by considerations of in**
>
> **personam jurisdiction and venue. A transfer under Section 1407 is, in essence, a**
>
> **change of venue for pretrial purposes.** Following a transfer, the transferee judge has
>
> all the jurisdiction and powers over pretrial proceedings in the actions transferred to
>
> him that the transferor judge would have had in the absence of transfer.

*2 *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) (internal citations omitted).

Every federal court to have considered **the issue has affirmed that "the transferee court can exercise**

**personal jurisdiction to the same extent that the transferor court could.** *In re Auto. Refinishing Paint*

*Antitrust Litig.*, 358 F.3d 288, 297 n.11 (3d Cir. 2004). " [emphasis added].

Dated:  12 March 2020                                    /s Robert B. Kugler

                                                        ROBERT B. KUGLER

                                                        United States District Judge