UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

                                    CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION                19-md-02875-RBK-JS

_____    STATUS CONFERENCE VIA
                                    REMOTE ZOOM VIDEOCONFERENCE

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        March 10, 2021
        Commencing at 4:00 p.m.

B E F O R E:            SPECIAL MASTER THE HONORABLE THOMAS
                        I. VANASKIE

A P P E A R A N C E S:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey  07068
        For the Plaintiffs

        GOLOMB & HONIK, P.C.
        BY:  RUBEN HONIK, ESQUIRE
             DAVID STANOCH, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania  19103
        For the Plaintiffs

        GOLDENBERG LAW, LLC
        BY:  MARLENE J. GOLDENBERG, ESQUIRE
        800 Lasalle Avenue, Suite 2150
        Minneapolis, Minnesota  55402
        For the Plaintiffs

                Camille Pedano, Official Court Reporter
                     camillepedano@gmail.com
                          609-774-1494

        Proceedings recorded by mechanical stenography; transcript
             produced by computer-aided transcription.

```
 1   A P P E A R A N C E S (Continued):

 2        KANNER & WHITELEY, LLC
          BY:  CONLEE S. WHITELEY, ESQUIRE
 3        701 CAMP STREET
          NEW ORLEANS, LOUISIANA  70130
 4        For the Plaintiffs

 5        DUANE MORRIS, LLP
          BY:  JESSICA PRISELAC, ESQUIRE
 6             KELLY A. BONNER, ESQUIRE
          30 South 17th Street
 7        Philadelphia, Pennsylvania  19103
          For the Defendants, Prinston Pharmaceuticals,
 8        Solco Healthcare U.S. LLC, and
          Zhejiang Huahai Pharmaceuticals Ltd.
 9
          PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
10        BY:  CLEM C. TRISCHLER, ESQUIRE
               FRANK H. STOY, ESQUIRE
11        One Oxford Centre, 38th Floor
          Pittsburgh, Pennsylvania  15219
12        For the Defendant, Mylan Pharmaceuticals Inc.

13        GREENBERG TRAURIG, LLP
          BY:  ALEXANDRA BACH LOGAS, ESQUIRE
14             STEVEN M. HARKINS, ESQUIRE
          3333 Piedmont Road, NE, Suite 2500
15        Atlanta, Georgia  30305
          For the Defendants, Teva Pharmaceutical Industries Ltd.,
16        Teva Pharmaceuticals USA, Inc., Actavis LLC,
          and Actavis Pharma, Inc.
17
          CIPRIANI & WERNER, P.C.
18        BY:  JESSICA M. HEINZ, ESQUIRE
               ETHAN FELDMAN, ESQUIRE
19        450 Sentry Parkway
          Blue Bell, Pennsylvania  19422
20        For the Defendants, Aurolife Pharma LLC
          and Aurobindo Pharma USA, Inc.
21
          HILL WALLACK, LLP
22        BY:  ERIC I. ABRAHAM, ESQUIRE
               NAKUL Y. SHAH, ESQUIRE
23        21 Roszel Road
          Princeton, New Jersey 08540
24        Attorney for Defendants, Hetero Drugs and Hetero Labs

25
```

1   **A P P E A R A N C E S (Continued):**

2       ULMER & BERNE LLLP
        BY:  JEFFREY D. GEOPPINGER, ESQUIRE
3       600 VINE STREET, SUITE 2800
        CINCINNATI, OHIO  45202
4       For the Wholesaler Defendants and AmerisourceBergen

5       BARNES & THORNBURG LLP
        BY:  SARAH E. JOHNSTON, ESQUIRE
6            KRISTEN L. RICHER, ESQUIRE
        2029 CENTURY PARK EAST, SUITE 300
7       LOS ANGELES, CALIFORNIA  90067
        For the Retailer Defendants and CVS Pharmacy

8

9

10

11  **ALSO PRESENT:**

12      Loretta Smith, Esquire
        Judicial Law Clerk to The Honorable Robert B. Kugler
13
        Larry MacStravic, Courtroom Deputy
14

15

16

17

18

19

20

21

22

23

24

25

1          (PROCEEDINGS held via remote Zoom videoconference

2    before Special Master The Honorable Thomas I. Vanaskie at 4:00

3    p.m.)

4          JUDGE VANASKIE:  So I've indicated in replies to email

5    exchange between Mr. Slater, Mr. Goldberg and myself that we'll

6    take up the issues that Mr. Slater wanted to address, and I'm

7    looking at the email now, Mr. Slater, you're going to address

8    the ZHP state secrets issue, the alleged deficiencies in the

9    Hetero discovery, and any other ZHP or Hetero privilege or

10   confidentiality issues that might come up.

11         So why don't we get right to those issues, as I said,

12   so you can return to your deposition.

13         MR. SLATER:  Thank you.

14         JUDGE VANASKIE:  So I guess the first issue is the ZHP

15   state secrets issue.

16         MR. SLATER:  Correct.  Thank you, Your Honor.

17         I think that our brief hopefully laid this out.  Our

18   bottom-line position is a series of about 91 documents, it's 91

19   documents, were withheld.  We do not believe that that log

20   establishes the basis to withhold those documents from us.  We

21   feel that the information is scant and that even based on the

22   descriptions that are there, which are not very helpful, even

23   with what's there, we gave some examples of things like

24   valsartan quality problems being discussed apparently with the

25   regulatory agency in China.  So on its face, because of the way

1    that the log is set up, it doesn't meet its burden.  There's no

2    explanation of exactly which law provisions are asserted,

3    there's no analysis, there's no description of the subject

4    matter of any detail or any analysis.

5           So our first request would be to just strike -- strike

6    the log and have all the documents produced, but our fallback

7    position is that the log would have to be fixed very quickly.

8    I've laid out in a letter or we've laid out in a letter for

9    Your Honor what we think needs to be done if they're going to

10   be given yet another chance to fix this log.

11          And we've also laid out an issue which I don't know

12   that has to be decided today but we wanted Your Honor to be

13   aware that there was core discovery orders way back when in

14   this case that required regulatory communications to be

15   produced, and it appears from this log that there were some

16   that were not produced nor was a protective order sought at

17   that time, which is concerning to us.  And if we get those

18   documents, we'll, obviously, be able to look and see, you know,

19   how much -- how squarely they fit within that order, but we're

20   very concerned.  And Your Honor has the law.  Even if some of

21   these documents could be arguably within some of these laws,

22   and they cited seven to eight general sections of laws so I

23   don't see how that can be a competent argument, but even so,

24   Your Honor would have the right to order production anyway.

25          So we can go either way but we wanted to put this

1  before Your Honor because, obviously, time is of the essence to

2  us and we didn't feel like it was something we should wait on

3  or take time with.

4        JUDGE VANASKIE:  All right.  Who will be addressing

5  this issue on behalf of ZHP?

6        MS. PRISELAC:  Your Honor, this is Jessica Priselac

7  for the ZHP defendants.  Good afternoon.

8        JUDGE VANASKIE:  Good afternoon.

9        MS. PRISELAC:  So, Your Honor, you know, to start

10  with, from a legal perspective, in their letter, the plaintiffs

11  have cited no rule, no precedent or court order that would

12  entitle them to have this log stricken and the documents

13  produced.  From a factual perspective, the fact that ZHP was

14  required by Chinese law to withhold some documents on the basis

15  of state secrecy laws of China is not a surprise to the

16  plaintiffs.  This issue was brought to the attention of the

17  plaintiffs and the Court in 2019.

18        I would direct Your Honor to ECF 2290 from 2019 in

19  which the defendants laid out this issue and also to the

20  transcript of Judge Schneider's proceeding from December 18th,

21  2019.  And that's important because to the extent the

22  plaintiffs are now claiming that ZHP should have moved for a

23  protective order or that it has somehow violated the Macro

24  Discovery Order, the December conference I just referenced is

25  directly -- directly contradicts that argument because during

1    that conference, what Judge Schneider said is that he

2    understood this to be an issue and that the way he wanted the

3    parties to handle it was by ZHP providing something akin to a

4    privilege log; and after that -- after ZHP provided that log,

5    the plaintiffs could review it and the plaintiffs could

6    challenge entries to that log once that process was completed.

7    And that's exactly what the parties have been doing up until

8    last week.

9          Now, turning to the log itself, the plaintiffs, in

10   their letter, complained -- have complained about purported

11   deficiencies in the log, and I'd be happy to address those if

12   Your Honor had any questions.  The logs are attached as Exhibit

13   H and I to the plaintiffs' letter and they're quite detailed,

14   in our opinion; but, you know, more to the point is that during

15   our first meet and confer on this issue, which was on Friday,

16   essentially, what the plaintiffs told us is that they have

17   enough information to make a determination, in their opinion,

18   that these documents were all, in their words, relevant and,

19   therefore, they did not care what Chinese law applied or what

20   the log said; they believe that the Chinese -- that these

21   documents, under U.S. law, should be produced because they're

22   relevant.

23         Now, to that end, we don't think getting into an

24   argument about whether the log is or isn't sufficient is worth

25   pursuing at this point if the -- if the plaintiffs' position

1  essentially is, and it also, you know, goes through their

2  papers, is that they just don't believe that this Court should

3  uphold Chinese secrecy laws.  And so if that's the issue, and

4  that's what we gather from the meet and confer on Friday, then

5  our position is that the plaintiffs should be required to

6  engage in the meet-and-confer process regarding their

7  *Aerospatiale* factors, which is the Supreme Court case that we

8  cited in our letter, and that goes through the different

9  factors that the parties must consult about and the Court must,

10  obviously, weigh in on to determine whether a blocking statute

11  should be upheld by a U.S. court.

12        So, in that vein, we don't believe the meet-and-confer

13  process is over, Your Honor, because during the call on Friday,

14  the plaintiffs weren't even prepared to discuss those points.

15        And just finally, Your Honor, I just briefly want to

16  point out that we're talking about 91 documents here.  That's

17  less than one-tenth of one percent of the documents at issue in

18  this case; but on the flip side, my client faces extreme civil

19  and criminal penalties if they produce these documents, which

20  is why it's really important to -- if we were going to take

21  this issue any further in front of the Court, we would request

22  full briefing because it is a really nuanced issue of comity in

23  international law that can't be addressed in a letter brief at

24  this point.

25        Thank you, Your Honor.

1        JUDGE VANASKIE:  Mr. Slater?

2        MR. SLATER:  Sure.  Thank you, Your Honor.

3        I'm trying to find a good analogy for what the

4   response is here, and I think it's sort of endemic to what's

5   been happening in the litigation, I think it's going to be

6   thematic of a lot of the issues you're going to hear today,

7   which is, I'm going to make up a term, I'm not the funniest guy

8   but it's like death by a thousand meet and confers.  You know,

9   the defense in this litigation is grinding us to a halt if they

10  could.  They want to meet and confer on this topic for weeks or

11  months.  We don't have time.  And, you know, it's pretty clear

12  from our letter that we were prepared for the meet and confer.

13  We went in there with five people, we raised every substantive

14  comment we could.  We didn't say that it's adequate law.  What

15  we said is we need to do everything we can to push forward

16  right now.  So, you know, either the logs should be stricken or

17  they should, you know, have to fix it in the next couple days

18  and we should be able to get these issues before Your Honor.

19        Also --

20        JUDGE VANASKIE:  Sorry about that.

21        MR. SLATER:  That's okay.  I'm glad it was you, not

22  me.

23        You know, and one of the things that's getting lost

24  here is, A, they said that they have lawyers approaching the

25  Chinese government.  We have no report on that.  That should

1   have been produced by now.  They told us on Friday.  They --

2   I'm sorry, I'm distracted.  Someone walked in here.

3        They have lawyers in China apparently approaching the

4   government.  They told us that Friday.  They haven't documented

5   that or shown us what they've said to the government.  They --

6   they admitted that some of the documents on their face appeared

7   not to fall within the law, and yet they haven't designated

8   them.

9        So, you know, I think that the unfortunate reality of

10  this litigation at this point is, we, as the plaintiffs, and

11  this is an example, we have to come to Your Honor, we're going

12  to have to keep plowing ahead, putting the plow in the dirt and

13  pushing because if we go the way that they want to on this

14  issue, it'll go on for two months and then the depositions will

15  be over and then it'll be over and we, obviously, don't have

16  the time for that.

17        JUDGE VANASKIE:  All right.  Any response, Ms.

18  Priselac?

19        MS. PRISELAC:  Your Honor, whether or not my clients

20  have approached the Chinese government to get permission to

21  produce these documents is really outside of the scope of

22  anything we have a duty to report to Mr. Slater or to his

23  clients and it's really not part of the analysis.  The reality

24  is my client has undertaken that effort because they have zero

25  interest in withholding these documents and they have no

 1   control over this.  This is in control of the Chinese

 2   government.

 3        Secondly, we did not agree that anything on that log

 4   should be produced.  We said we would look into questions that

 5   the plaintiffs had during that meet and confer.  And, Your

 6   Honor, to be frank, the plaintiffs were not prepared to discuss

 7   any of these issues on Friday.  And part of our problem on

 8   Friday is that they weren't prepared, including Mr. Slater

 9   telling me he didn't even have a copy of the log to discuss in

10   front of him.

11        So we would respectfully request that they be directed

12   to meet and confer substantively with us on these issues.

13        JUDGE VANASKIE:  I'm very concerned about the time it

14   takes to get these issues resolved and I'm concerned about the

15   delay that attends the meet and confer.  You had a meet and

16   confer on the issue and now you're suggesting it wasn't

17   adequate and have another meet and confer.

18        Also, I do want to say, you gave me a lot to chew on

19   for this conference with very little time.

20        What I'd like to suggest is that I hear argument on

21   this issue next Monday or Tuesday, that's the 15th or 16th of

22   March.  That's not a lengthy delay.  Perhaps you could meet and

23   confer in the interim.  But I want to decide it and I want to

24   resolve it quickly.

25        MS. PRISELAC:  Your Honor --

1          JUDGE VANASKIE:  I don't feel equipped to decide it

2    today.

3          Go ahead, Ms. Priselac.

4          MS. PRISELAC:  I'm sorry.  Your Honor, you know,

5    having, you know, reviewed a substantial amount of the case law

6    on this issue, typically what happens in these cases is that

7    both sides present declarations on the applicability of Chinese

8    law to the documents at issue.

9          I think the first issue I have is that I don't know

10   exactly what Mr. Slater is saying on this log doesn't meet the

11   *Aerospatiale* factors.  I tried to have that conversation on

12   Friday; he refused to have it.

13         The second is in order for the Chinese law firm that

14   does make these determinations to present Your Honor with a

15   declaration, a sworn declaration, on these subjects, is going

16   to take time given the time difference, the fact that, you

17   know, they're in another country, and we're going to have to

18   have a more specific set of entries that Mr. Slater is

19   challenging in order for them to write that declaration.

20         The issue is that I -- for example, I can't look at

21   these documents even, which is why these declarations have to

22   come from the Chinese law firm.

23         So, to that end, we would need at least two weeks to

24   get that briefing together.

25         MR. SLATER:  We obviously object, Your Honor.  We're

1    fully in line with Your Honor's plan to take argument on this

2    early next week.

3         JUDGE VANASKIE:  Yes, my view of this is that it's the

4    logs that are at issue here, and it's a question of the

5    adequacy of the logs; and if the logs are not adequate, then

6    documents should be produced or the logs supplemented, but I

7    want it get to this quickly.  I don't want to wait two weeks

8    and then have, well, let us supplement our log.

9         MS. PRISELAC:  Well, Your Honor, I'm not -- I'm not

10   proposing that.  My proposal is that -- my -- I think there are

11   two different issues here.  Right?  The sufficiency of the log,

12   which Mr. Slater is claiming is insufficient on the one hand

13   but claiming it's plenty sufficient on the other hand to say

14   that these documents are produced.  I don't think really the

15   log is the issue.  I think the *Aerospatiale* briefing is the

16   issue.  And so my point was that, you know, there's no

17   precedence, you know, that these types of documents should be

18   produced because of an insufficiency of the log.

19        The case law is clear that any Court deciding these

20   factors has to go through a complete *Aerospatiale* analysis.  So

21   that's different than a privilege log analysis or that type of

22   legal analysis.

23        JUDGE VANASKIE:  Anything else, Mr. Slater?

24        MR. SLATER:  No, Your Honor.

25        JUDGE VANASKIE:  No.  I'm going to hold argument on

1     this.  We'll schedule a time for next Tuesday and I will be

2     focusing on the log and the arguments that have been presented.

3     If, Ms. Priselac, you'd like to file a reply on the matters

4     that were briefed by Mr. Slater, you can do so by Monday.  But

5     this needs to move forward and I am concerned about delay.  And

6     so we'll hear the argument, we'll make a decision based upon

7     the logs.  If there is something else or if we -- if it turns

8     out that we cannot make a decision, well, then we'll just have

9     to wait the declaration, but I'm going to decide right now

10    whether the logs were adequate to invoke the privilege, the

11    state secret privilege.  At least that's what my focus seems to

12    be right now.

13            All right.  What's the next issue you were going to

14    take up, Mr. Slater?

15            MR. SLATER:  Thank you, Your Honor.  I feel very

16    special today.  Thank you.

17            The Hetero issues, and -- and I'll say this:  We've

18    laid out where we are and we've given Your Honor our most

19    recent letter that we wrote to Hetero's counsel.  They've asked

20    to talk to us again.  We've expressed that we're very

21    concerned, we've expressed our skepticism.  I'm supposed to

22    depose a witness, I believe it's either Monday and Tuesday or

23    Tuesday and Wednesday next week who's a cGMP witness on issues

24    where we definitely do not have all of the quality manuals and

25    SOPs.  We don't want to move the deposition.  We're looking to

1    get these depositions done.

2           Counsel reached out and said he wants to talk.

3           What I would ask at this point is this:  That we try

4    to exhaust whatever efforts we can exhaust with Hetero by the

5    end of this week or early next week; and then I think that at

6    that point we're going to have to come to the Court for some

7    definitive relief.  It may be by the end of the week.  I think

8    our next meet and confer is going to really be where the rubber

9    hits the road.  I think we're out of options because, again, I

10   know Your Honor wants us to push forward and we want to meet

11   that.  We want to get it done.  So I don't see any alternative

12   on our end.

13          JUDGE VANASKIE:  You know, I read the submission by

14   Hetero and I read your submission on this issue and it was like

15   ships passing in the night.  One side's saying, you know, we're

16   going to work it all out and the other side's saying we need a

17   resolution now.

18          Who's speaking on behalf of Hetero?

19          MR. SHAH:  Good afternoon, Your Honor.  This is Nakul

20   Shah on behalf of Hetero.

21          JUDGE VANASKIE:  Good afternoon, Nakul.

22          MR. SHAH:  Your Honor, since our last conference on

23   February 24th, Hetero's made significant progress in addressing

24   the issues that plaintiffs have raised.  Since that time we've

25   made document productions, we've specifically addressed issues

1  raised by the plaintiffs and we've made an effort to prioritize

2  the issues that were relevant to the upcoming depositions.

3       We simply ask that Your Honor afford us the

4  opportunity to continue to meet and confer with the plaintiffs

5  as well as continue to make subsequent document productions.

6  In fact, this morning we contacted plaintiffs' counsel as well

7  with an additional production on an additional issue.

8       We believe that we are ticking off the issues that

9  plaintiffs have raised and we're optimistic that we will be

10 able to resolve all of the issues that plaintiffs have raised

11 and we believe we've been cooperating with plaintiffs as well.

12      We don't think it's necessary for judicial

13 intervention at this time, in light of the fact that we've been

14 continuing to cooperate with plaintiffs, and we do anticipate

15 remedying all of the issues that plaintiffs raised.

16      JUDGE VANASKIE:  All right.  Thank you, Mr. Shah.

17      Would it be possible to get a status report by next

18 Tuesday in terms of where things stand with respect to your

19 continuing efforts to reach a resolution on these issues.

20      MR. SHAH:  Yes, Your Honor.

21      MR. SLATER:  Absolutely.

22      JUDGE VANASKIE:  So that's what we'll ask for, a

23 status report by next Tuesday to determine the resolution of --

24 to determine where these issues stand.  And I'm trying to make

25 a note here to make sure I get an order out on that.

1          MR. ABRAHAM:  We appreciate that.  You'll just have to

2    let us know what your thinking is for the depositions next

3    week.

4          MR. SLATER:  I think we need to talk to you all.  And

5    it may not be -- I mean, I'm in a deposition today and

6    tomorrow.  So there's plenty of people who are working on this

7    project with us so I know we can talk late tomorrow if we need

8    to.

9          MR. ABRAHAM:  Okay.  I mean, I spoke to Layne about

10   8:30 last night, so she certainly knows where to reach me, but

11   we're around.

12         JUDGE VANASKIE:  All right.  And that's Mr. Abraham

13   who was talking?

14         MR. ABRAHAM:  Yes, this is Eric Abraham.

15         JUDGE VANASKIE:  All right.  Thank you.

16         MR. ABRAHAM:  Thank you very much, Judge.

17         JUDGE VANASKIE:  Thank you.  All right.

18         Mr. Slater, next issue.

19         MR. SLATER:  I think that's all I had.  I had just put

20   in a cautionary tail about any privilege or confidentiality

21   issues with ZHP and Hetero but I don't think any are on the --

22   are on the agenda.

23         So as long as there's nothing else to be raised, I can

24   go back to the deposition, with your permission.

25         MS. BONNER:  Your Honor, respectfully, my name is

```
 1   Kelly Bonner.  I'm appearing on behalf of -- hello?
 2           JUDGE VANASKIE:  Hello?
 3           MS. BONNER:  Yes, Your Honor, can you hear me?  This
 4   is Kelly Bonner on behalf of the ZHP parties.  Hello?  Your
 5   Honor?
 6           MR. SLATER:  I think the Judge may be having an issue
 7   with the Internet, possibly connection.  It looks like he
 8   clicked off and will probably sign back in.
 9           Was I lost on this for a while or was I coming
10   through?  Because everything froze for a second.  Everybody was
11   frozen.
12           MS. WHITELEY:  No.  Adam, we can hear you and Kelly
13   just fine.
14           MR. SLATER:  Okay.  Hi, Conlee.
15           MS. WHITELEY:  Hi Adam.  Hi Kelly.
16           MS. BONNER:  Hello.
17           MS. SMITH:  Perhaps while we are waiting for Judge
18   Vanaskie to rejoin us, I just want to let the parties know the
19   last opinion for the motions to dismiss is in Judge Kugler's
20   hands, so I'm expecting it to be issued some time this week.
21           MR. SLATER:  Thank you.  You're off the hook.
22           MS. SMITH:  Thank you.
23           JUDGE VANASKIE:  All right.  Can you hear me?
24           MS. BONNER:  Yes, Your Honor, I can hear you.
25           JUDGE VANASKIE:  And it dropped on my end.
```

 1    Apparently, I had the problem.

 2              So, Mr. Slater, you were about to conclude?

 3              MR. SLATER:  I thought I was.

 4              JUDGE VANASKIE:  Okay.

 5              MR. SLATER:  All I had said was, unless there's a

 6    Hetero or a ZHP issue that's outstanding, but I don't think

 7    there are any.  So if that's true, I can, with your permission,

 8    I can go back to the deposition.

 9              JUDGE VANASKIE:  Yes.  I apologize to the group.  As I

10    said, the call dropped on my end.

11              Ms. Bonner, did you want to say anything?

12              MS. BONNER:  Yes, Your Honor.  Just speaking on behalf

13    of the ZHP parties with respect to confidentiality issues,

14    because they were put on the agenda for today, we would just

15    like to make very clear that the ZHP parties respectfully

16    request that these issues be deferred and that any deadlines

17    for motions to seal be held in abeyance until such time as the

18    Court issues its decision on the outstanding motion to seal,

19    which was fully briefed on Monday.

20              JUDGE VANASKIE:  And as I understand it as well, Ms.

21    Bonner, I'm glad you raised the question, the documents in

22    question could be used at depositions, if necessary; it's just

23    that they're to be treated as confidential.  All right.

24              MS. BONNER:  That is correct, Your Honor.

25              JUDGE VANASKIE:  So, Mr. Slater, I think we can

```
 1   proceed and then get a ruling from me on the motion to seal.

 2          MR. SLATER:  Thank you so much.

 3          JUDGE VANASKIE:  All right.  Thank you.

 4          MS. BONNER:  Thank you, Your Honor.

 5          JUDGE VANASKIE:  Thanks.

 6          MR. SLATER:  Thank you.  Have a very nice day.  Good

 7   luck, everyone.

 8          (Mr. Slater leaves the videoconference.)

 9          JUDGE VANASKIE:  All right.  So we'll go back to the

10   agenda letter that I received from Mr. Slater.  I will go in

11   the order that he has established.

12          The first issue that he raised has to deal with

13   bellwether plaintiffs' discovery or discovery from bellwether

14   plaintiffs, and it seemed to me that this issue has been

15   resolved with the defendants being able to serve discovery

16   requests on an individualized basis as necessary.

17          Who will be addressing this issue for the defense

18   team?

19          MS. LOGAS:  Good afternoon, Your Honor.  Alexander

20   Bach Logas, counsel for Teva.  Yes, Your Honor apprehended it

21   correctly.

22          THE COURT REPORTER:  I'm sorry.  Excuse me.  You're

23   going to have to start again.  I lost you.  If you would,

24   please.  Thank you.

25          MS. LOGAS:  Sure, yes.  Absolutely.
```

1          Your Honor apprehended the issue correctly.  We were

2   able to resolve this issue.  Yesterday we met and conferred on

3   the proposed discovery requests and we agreed to withdraw those

4   requests and will instead serve case-specific discovery

5   requests in the cases as needed.

6          So in light of that, I believe the parties are in

7   agreement that there's no dispute for the Court to consider

8   today on this issue.

9          JUDGE VANASKIE:  Great.  Good.  Thank you.

10         MS. LOGAS:  You're welcome.

11         JUDGE VANASKIE:  We're getting some feedback and it

12  might be coming from 1813***218, I'm not sure who that is, it's

13  on the phone.  If you could mute your phone, that might be

14  helpful.

15         All right.  The next issue I have is the dismissal

16  order for the peripheral defendants.  And I take it that's just

17  a matter of us getting Judge Kugler to sign the order?

18         Who wants to address that on behalf of plaintiffs?

19  Anybody?

20         In the absence of Mr. Slater, we don't have a

21  spokesperson for the plaintiffs.

22         How about on the defence side?

23         Wait a minute.  Mr. Honik, you're on.

24         MR. HONIK:  Your Honor, I'm looking through the

25  letter, and I apologize that no one's been assigned to it.

 1   With your indulgence, maybe we could just put it on the back

 2   burner and we can circle back at the end.  I do believe it's

 3   just a housekeeping matter.

 4          JUDGE VANASKIE:  Yes, I think it is.  The only thing

 5   that was in the letter was the proposed order was submitted to

 6   the Court.

 7          MR. HONIK:  I think it is just housekeeping and your

 8   statement that it just requires Judge Kugler's attention and

 9   signature is correct.

10          JUDGE VANASKIE:  Okay.  Very well.  Thank you.

11          MS. WHITELEY:  Your Honor?

12          JUDGE VANASKIE:  Yes.

13          MS. WHITELEY:  That's correct.

14          JUDGE VANASKIE:  Ms. Whiteley.

15          MS. WHITELEY:  On behalf of the plaintiff, that's

16   correct.  We confirmed this before the call.  I couldn't get

17   off mute quickly enough.  And we were just giving you a status

18   update on that.

19          JUDGE VANASKIE:  All right.  Very well.  Thanks.

20          The next issue on the agenda is the update of service

21   of losartan and irbesartan master complaints.  And this should

22   be a matter that's almost resolved, I take it?  Is it correct

23   that the only existing defendant existing on the Valsartan

24   matter that's declining to accept service except through the

25   Hague Convention process is Teva?

1          MR. HARKINS:  Your Honor, good afternoon.  This is

2    Steven Harkins with Greenberg, Traurig on behalf of the Teva

3    defendants and the joint defense group.  I believe that is

4    correct.  The only entity previously served in Valsartan that

5    is declining to accept service is Teva Pharmaceutical

6    Industries Limited.

7          JUDGE VANASKIE:  Okay.  Any prospect of them changing

8    their mind?

9          MR. HARKINS:  Your Honor, I don't believe so at this

10   time.  We are familiar with the Court's prior order that

11   addressed a similar issue; and, of course, if an order is

12   entered asking Teva to waive service or to accept service by

13   some other means, we'll certainly comply.  We do believe that

14   there is a slightly different issue with the notice of claims

15   related to a different type of drug as opposed to different

16   claims all related to the same valsartan drug, which was

17   addressed previously.  I don't believe that Teva's position is

18   going to change but certainly we'll see and can be prepared to

19   address this with the Court if they believe any further

20   argument's required.

21         JUDGE VANASKIE:  All right.  Thank you, Mr. Harkins.

22         Who will address this issue on behalf of the

23   plaintiffs?  Do we have a spokesperson?  Can I impose on you,

24   Mr. Honik or Mr. Stanoch?

25         MR. STANOCH:  Yes, Your Honor, hi.  This is David

```
 1   Stanoch for the plaintiff.  I'll take the baton for this.  I
 2   believe Ms. Goldenberg is on a plane and she obviously did not
 3   land in time.
 4           Your Honor, Teva Industries, the one that Mr. Harkins
 5   referred to, is already in the case for the Valsartan matter.
 6   Judge Kugler had entered an order earlier that a defendant in
 7   the case in this MDL for one purpose is in it for all purposes.
 8   We simply could have amended the operative Valsartan complaints
 9   to add the losartan and irbesartan allegations, which Judge
10   Kugler told us to break out into separate complaints for
11   everyone's convenience, so we don't believe we should be
12   penalized for making it convenient for all of the lawyers and
13   the Court and now have to wait six months to serve a defendant
14   who's already here through the Hague in Israel when they're
15   participating in discovery, we have their documents, we're
16   deposing their people, we're deposing their Israeli people in a
17   couple weeks.  So we don't think this sort of delay is
18   consistent with Judge Kugler's prior treatment of these issues
19   in this case and that Teva should be directed to accept service
20   or waive service through the Hague in this instance.
21           JUDGE VANASKIE:  All right.  Anything else on this
22   issue?
23           MR. HARKINS:  Your Honor, on behalf of Teva, the only
24   thing I would note, as was previously understood when we were
25   waiting for the ruling on this initial issue with respect to
```

 1  service of multiple Valsartan complaints, Teva's continuing to

 2  comply with its discovery requirements.  We have not objected

 3  to the production of documents on the basis that Teva Limited

 4  was not served.  And I certainly anticipate that if service of

 5  a losartan complaint was again required, we would similarly

 6  continue to participate in discovery and all that that entails

 7  while that process was playing out.

 8          JUDGE VANASKIE:  Mr. Stanoch, can you submit to me a

 9  proposed order that would require Teva to accept service of

10  these?  I'm not sure I've got the authority to do that but I'd

11  go ahead and exercise it if I do.

12          MR. STANOCH:  Yes, Your Honor, we'll do that.

13          JUDGE VANASKIE:  All right.  Thank you.

14          I think we're now up to the Aurobindo issues.

15          MR. HONIK:  Your Honor, Ruben Honik, good afternoon,

16  once again.

17          As Mr. Stanoch noted, Ms. Goldenberg is just -- I

18  think she's just connecting.  Perhaps we can -- what I was

19  going to propose is that we go on to whatever the next

20  defendant-specific discovery issue.  For example, I'm covering

21  Mylan.  I'm happy to do that for Your Honor while Ms.

22  Goldenberg gets on.  She's been very close to the Aurobindo

23  negotiations, there are a lot of granular issues and she asked

24  to be heard toward the end of today's conference and perhaps we

25  can move on to the other defendant discovery updates.

```
 1            JUDGE VANASKIE:  That's a good suggestion.  There's
 2    quite a lot on Aurobindo to discuss.
 3            MR. HONIK:  Yes.
 4            JUDGE VANASKIE:  So let's move to the Mylan discovery
 5    issues.
 6            MR. HONIK:  Yes, Your Honor.  And I can be heard on
 7    that, with your permission.
 8            JUDGE VANASKIE:  Yes, please.
 9            MR. HONIK:  There are two issues, Judge.  One is
10    arguably unripe according to Mylan.  I will nonetheless address
11    it with Your Honor because we believe it is ripe.
12            Before we get to the second of the two issues, the
13    first one is clearly ripe.
14            And let me begin by saying that we started Tuesday of
15    this week the deposition, a three-day deposition, of a 30(b)(6)
16    representative from Mylan corporate who's in charge of quality
17    assurance globally that is going to continue for three days.
18    We've completed one; we've got two more days to go.  At about
19    1:16 in the morning Saturday we received what can only be
20    described as a document dump of 35,000 documents.  And
21    astonishing as that may be on its face, what's even more
22    astonishing is that 20,000 of those identified documents have
23    been withheld on the basis that they're not responsive.  And if
24    this were the first time that such a thing happened, we would
25    be running around trying to figure it out; but it didn't take
```

 1    us long to figure out what's happened here because it's

 2    unfortunately, happened multiple times before.

 3            And let me say parenthetically that, and I know Mr.

 4    Trischler is on the line, we've worked rather cooperatively to

 5    iron out a lot of problems and so I don't mean in any way to

 6    suggest that they haven't responded in good faith.  But what we

 7    have here is a situation, as our letter to the Court points

 8    out, that in reviewing more than 4,000 of those documents in

 9    very short order, we noticed that they undoubtedly had to be

10    relevant and responsive to this litigation.  And we say that

11    because the references on there are to words and phrases that

12    go directly to this case.

13            By way of a tiny bit of background, the reason Mylan

14    is in this case, the root cause analysis about which there's no

15    dispute that placed NDEA and NDMA in their product that was

16    sold in the United States really resulted from a problem with

17    recovered solvent.  Part of the chemical process in making the

18    API involves the use of a solvent and in the case of Mylan and

19    others in this case, but Mylan in particular, they didn't use

20    fresh solvent on every occasion; in fact, they've always used

21    recovered or recycled solvent.  And they had an outside vendor

22    who did that for them by the name of Lantech and there was a

23    second named Vega.  And I'm only giving the Court this

24    background because as we went through the withheld documents,

25    at least more than 4,000 of them, they all referred to this

1   outside vendor, they referred to valsartan and they referred to

2   a great number of words and phrases that admittedly concern all

3   the issues here.

4          So we bring this matter up to the Court because the

5   30(b)(6) deponent that's under oath now and has two more days

6   to present testimony represents more than 50 percent of the

7   30(b)(6) topics that we're covering.  So I dare say we need to

8   have some resolution about whether those 20,000 withheld

9   documents which we think almost certainly are relevant and

10  should be produced should be ordered to be produced

11  immediately.

12         JUDGE VANASKIE:  All right.  Is it Mr. Trischler?

13         MR. TRISCHLER:  Yes, it's Clem Trischler, Your Honor,

14  representing the Mylan defendants.  Good afternoon.

15         JUDGE VANASKIE:  Good afternoon.

16         MR. TRISCHLER:  There are several issues that, you

17  know, that I think need to be brought to the Court's attention.

18         First, I would take issue with Mr. Honik's

19  characterization of the production last week as a document

20  dump.  This is ancient history but I guess it's important since

21  the plaintiff has brought it up.

22         Judge Schneider issued an order in November of last

23  year suspending the obligation of Mylan to complete its

24  production of custodial files until the parties worked out

25  issues regarding Mylan's right to use TAR in order to cut off

1    custodial review.  We resolved those issues through numerous

2    and lengthy meet-and-confer processes in November, December,

3    January, and I sent correspondence to the plaintiffs telling

4    them that based on that, we would finish our production on

5    March 5, which is precisely what we did.  And so to suggest

6    that there's some document dump on the eve of depositions is

7    just unfair and, you know, an attempt to rewrite history in a

8    way that's just not accurate.

9          But to the point of this issue -- the other issue that

10   we have to this point that Mylan has not produced relevant

11   documents, I take issue with that because, again, what we have

12   here is a situation where the plaintiffs are looking to rewrite

13   the discovery rules and the discovery orders in this case.

14         There was an agreement in place since September of

15   last year that irrelevant and nonresponsive documents that are

16   attached to an otherwise responsive email need not be produced.

17   Part of the ESI protocol that reads, "Parties may withhold a

18   document within a responsive document family that is entirely

19   nonresponsive because it does not concern the product at issue

20   or otherwise relate to claims or defenses."  And so what we're

21   dealing with here, Judge, and I know it's -- in your shoes,

22   it's hard to -- when you haven't seen any of these documents,

23   it's hard to sort through it all, but what we're really talking

24   about here is situations where there'll be a custodial email

25   that's been produced where someone might say, here are our

1    latest nitrosamine test results and so the file name in that

2    email will be labeled nitrosamine testing and the plaintiff

3    looks at that file name and says, oh my gosh, that's got to be

4    relevant.  But when you look at the attachments, it might be,

5    and I'm looking at one right now, it's nitrosamine test results

6    for a product called nizatidine, it's nitrosamine test results

7    for a product called clarithromycin, it's nitrosamine test

8    results for a product called metformin, none of which are

9    relevant and all of which in the Macro Discovery rulings which

10   were made by the Court, the Court has said you don't need to

11   produce documents relating to other products.  And those are

12   the documents that have been essentially withheld.

13          And so it's not surprising that when you look at these

14   file names -- because in 2019, after the recalls that came

15   about in 2018, the FDA put in place a lot of new measures.

16   They required risk assessments for nitrosamines for all

17   products.  And so you'll have emails that will say, here are

18   our latest risk assessments and it might attach risk

19   assessments for seven products.  One might be valsartan, the

20   other half-dozen aren't.  We're not required to produce those

21   other half-dozen but because they might be labeled nitrosamine

22   risk assessments on the initial email or on the file name,

23   plaintiff thinks they're relevant.

24          We've laid eyes on these documents, we know what our

25   obligations are under the Rules of Civil Procedure, and in

1   laying eyes on these documents, we've made a determination that

2   they're not relevant or responsive to the discovery requests in

3   this case.  And simply because they have a file name that's

4   curious to the plaintiff doesn't change that.  It doesn't mean

5   that, you know, that the documents suddenly become relevant or

6   that we ignore the core discovery orders that were entered, the

7   Macro Discovery Orders and the ESI protocol, all of which we've

8   operated under and produced these materials.

9        And so it's certainly not a ripe issue, I think Mr.

10  Honik acknowledged that; but if they want to argue it anyway,

11  you know, that's fine.  I'm all for expediency, but at some

12  point you have to -- you have to actually look at an issue and

13  consider it; and the plaintiffs, you know, look at a file name

14  and say it's relevant and somehow they're in a better position

15  to judge that than people who've actually looked at the

16  document and made the determination as to what it really is.

17       JUDGE VANASKIE:  Mr. Trischler, how have the 20,000

18  documents that are nonresponsive been identified?  Do you have

19  them identified by Bates number in some manner?

20       MR. TRISCHLER:  I don't -- I don't know the answer to

21  that.  I think Mr. Stoy from my office is on the line.  He

22  would probably be able to answer that, Judge.

23       JUDGE VANASKIE:  All right.

24       MR. STOY:  Good afternoon, Your Honor.

25       JUDGE VANASKIE:  Good afternoon.

```
 1          MR. STOY:  This is Frank Stoy.

 2          The documents in question I believe were sent to us on

 3   a spreadsheet by the plaintiffs and we could -- we have the

 4   ability to identify them by Bates number.

 5          JUDGE VANASKIE:  Okay.  What I was going to suggest,

 6   and, Mr. Honik, I want to get your reaction to this, is that,

 7   and I've done this before, that you get a statistically valid

 8   sampling of the documents withheld as nonresponsive and you

 9   review them, and they'd have to be selected randomly, so they

10   have to be selected randomly, rather than producing 20,000

11   documents for either you to review or me to review, it'd be

12   certainly a much smaller set, and you can review them to

13   determine, yes, they're either responsive, they're largely

14   responsive, which would call into question the designation as

15   nonresponsive, or they really are not responsive, and so you

16   can have some level of confidence that they've been

17   appropriately determined by Mylan to be nonresponsive.

18          What about that approach?

19          MR. HONIK:  Your Honor, I think essentially the

20   approach is good; but I have to say that, in essence, we've

21   done that.  And let me take a half-step back, if I could.

22          JUDGE VANASKIE:  Okay.

23          MR. HONIK:  I think Your Honor's first decision in

24   this case, major one anyway, from my memory, was moving out the

25   deposition and discovery schedule by 60 days.  You'll remember
```

1   that.

2           JUDGE VANASKIE:  Yes.

3           MR. HONIK:  And you'll remember the underpinning for

4   that was, in part, an abundant fear on the part of defendants

5   that they would produce witnesses for whom inadequate document

6   production has occurred and that plaintiffs would come back and

7   want another bite at the apple.

8           So image the dilemma that we're in now.  We're about

9   to take a 30(b)(6) deposition of a global quality assurance

10  person from Mylan on Tuesday, it's Saturday night and we get

11  35,000 documents sent to us, 20,000 of which are withheld.

12  This is -- this is the actual recipe for exactly the thing

13  defendants wanted to avoid.

14          So, number one, it's -- it's an oober-ripe issue to

15  determine now.

16          Now, the question you've asked is the best one, which

17  is, how practically can we roll up our sleeves and figure this

18  out?  Because I'm sure the Court doesn't want to prejudice us

19  plaintiffs from reviewing documents that may be very germane to

20  depositions that are ongoing today.

21          The answer, Your Honor, is we've really done that.

22  Despite the short window of time between Saturday and today,

23  actually between then and Tuesday, we pared down the 20 ,000

24  documents to a little over 4,000 documents and put it on a

25  spreadsheet and sent it to Mr. Trischler's office.

1         And just to give you a flavor for what we are talking

2    about, we didn't pick fanciful things and they weren't in our

3    imagination.

4         So, for example, among the attachments they apparently

5    withheld is, for example, something called o-Xylene failures

6    and VST2 report.  Now, we don't need to take random samples.  I

7    think the Court should look at the 4,000 or so documents or

8    some smaller subset because we believe with all our heart that

9    these that we've picked out are directly on point to the theory

10   of this case, to what we want to examine their witnesses about,

11   and I would commend to you the list that we've prepared, the

12   Court can certainly entertain a fewer number, certainly, than

13   4,000; but we've already done the task of providing a sample, a

14   cross-sample, of documents that we believe very strongly should

15   be produced to us.

16        JUDGE VANASKIE:  Do you want the full 4,200 documents

17   produced?

18        MR. HONIK:  We do, Your Honor, or at the least we want

19   some explanation for why such things as, you know, o-Xylene

20   failure report, evaluation report regarding NDMA, valsartan

21   NDMA, can be withheld.  It can't be the case, it seems to me,

22   that all 4 ,000 of them, although titled in this provocative

23   way, are truly unresponsive or unrelated.  And we have a

24   history here.  If this were the first time that this happened,

25   and the explanation was that we're jumping to a conclusion

1   about what the item is, you know, maybe Mr. Trischler would be

2   right.  But the fact remains this is maybe the third or fourth

3   round where we've had to do this.  We've pressed them, we've

4   had meet and confers in many instances, we've had some help

5   from Judge Schneider, and they ended up producing a great many

6   of these documents that were originally withheld; and all I'm

7   trying to do at this juncture, now that the 30(b)(6) deposition

8   horse has left the barn, is not be in the very position that

9   Mr. Trischler sought to avoid, which is our having to recall

10  one or more of their witnesses for a second bite at the apple.

11           Instead, I think the better and more practical thing

12  to do is to make an immediate evaluation.  I think the

13  documents should be produced to the Court.  If the Court

14  determines that they're relevant in the way we suspect they

15  are, they should be turned over to us immediately.  We're

16  there.

17           JUDGE VANASKIE:  Mr. Trischler, what would be involved

18  in producing the 4,199 documents?

19           MR. TRISCHLER:  In terms -- mechanically, in terms of

20  how --

21           JUDGE VANASKIE:  Mechanically, just logistically, yes.

22  I mean, you say they're nonresponsive.  So if they're

23  nonresponsive, what's the burden to you to produce them?

24  That's what I'm -- you know, is there any prejudice beyond the

25  expense of producing, electronically, I suppose, 4,200

     1   documents?

     2          MR. TRISCHLER:  Simply the -- I don't think we're

     3   objecting on burdensome.  We're objecting on, you know, Rule

     4   26, Your Honor, that it's simply not relevant or responsive.

     5   Why doesn't a defendant open the vaults to the corporation

     6   because a plaintiff filed a lawsuit?  I mean, if the documents

     7   aren't relevant or responsive, there's no obligation to produce

     8   them.  And so now we've come to an argument that, well, we

     9   don't know if the documents are relevant, but what would be the

    10   harm; let's just turn them over.  That's not the way discovery

    11   works.  And to suggest that simply because we're curious about

    12   a document -- and really, you know, Mr. Honik is being polite,

    13   and I certainly appreciate that, they're curious about a

    14   document, but really what they're saying is, we don't believe

    15   you, Mr. Trischler, and we don't believe your client when you

    16   say these documents aren't relevant.  That's not the way

    17   discovery --

    18          JUDGE VANASKIE:  We have been down that road before

    19   and that's why we used a production of a sample of documents in

    20   a scenario very similar where there was this, "I don't believe

    21   you," and all these documents aren't responsive.

    22          MR. HONIK:  Your Honor, I do believe Mr. Trischler.

    23   The problem is this, and we can't lose sight of this:  We

    24   negotiated for months and months and months and the Court

    25   entered an order that identified the custodians and identified

 1  custodial -- or identified terms, search terms.  This isn't

 2  just some random collection of documents.  These are hits using

 3  terms that were negotiated and have now been embodied in an

 4  order.  They're not just a document sitting in the corporate

 5  vault.  They are documents that were hits because they had

 6  terms like Lantech, like valsartan, like o-Xylene failures.

 7  These are all the issues in the case.  And so it's not a --

 8  it's not a trust issue.  It's a, we've been down this road; we

 9  already have a lens through which these documents were

10  identified; they are producing 35,000 but withholding 20.

11  We're now at the decisional point where somebody needs to look

12  at them.  And, respectfully, I think what Mr. Trischler has now

13  confirmed is that, mechanically, it's a matter of pushing a

14  button and getting them in front of you.  And I would invite

15  the Court to look at as many as you feel comfortable looking at

16  from the 4,100, and if they look, as we suspect they do,

17  entirely relevant, directly relevant, I certainly would

18  request, respectfully, that we have them, because we've got Mr.

19  Glover's continued deposition this Friday, and we've got Day 3

20  I think on either the 18th or 25th.  What I want to do is honor

21  what Mr. Trischler said to the Court, which is not have to

22  petition the Court to redepose this gentleman or any of their

23  witnesses because they didn't give us the documents in a timely

24  fashion.

25          MR. TRISCHLER:  Well, Your Honor, the interesting

1    thing is that these are all custodial files, none of which

2    belong to Mr. Glover and none of which they -- all the

3    custodial documents belonging to Mylan have been produced, and

4    they're free to depose Mr. Glover on that.  They already -- as

5    Mr. Honik's pointed out, they've already done it for a day.

6    We've already got nine other Mylan depositions lined up.  The

7    plaintiffs are going to have plenty of opportunity to ask the

8    custodians that they're seeking to depose about relevant

9    documents that are in their files.

10         And the one thing I think we can all agree on is, Mr.

11    Honik's right, we have been down this road before.  We did

12    negotiate search terms.  We did agree on a court order.  And

13    the agreement in the court order says that when you have

14    unrelated documents that are hit on as part of the search

15    terms, you don't have to produce those unrelated, irrelevant

16    documents; and that's what we've done.  So if we're going to

17    operate under the court order, that's fine, let's do it; but it

18    cuts both ways.  Curiosity doesn't overcome the burden that the

19    plaintiffs have of showing that the documents are relevant.

20    And for the documents to be discoverable, the documents have to

21    be relevant.  The order of the Court says we don't produce

22    irrelevant, unrelated, nonresponsive documents just because

23    it's part of a family of documents that are hit on in search

24    terms.

25         MR. HONIK:  Your Honor --

1          MR. TRISCHLER:  I find that, again, it's not an

2     argument of burden but I find it irresponsible to overturn the

3     Rules of Civil Procedures and say just turn over 4,000

4     documents because we're curious or because they might be

5     relevant.  I don't think that's the proper approach.  I don't

6     think any defendant should be held to that requirement.

7          MR. HONIK:  Your Honor needs to be aware that Mr.

8     Glover was not a custodian whose custodial file was produced.

9     They refused to do that.  And yet he is a 30(b)(6) corporate

10    designee on topics, among other things, testing and Lantech.

11         These documents, these 35,000 documents, come from 60

12    different custodians.  So this is actually the gristmill of

13    material that we have, the limited amount of material that we

14    have to examine this 30(b)(6) witness, and the identifiers that

15    we set out in our letter to the Court are exactly the 30(b)(6)

16    topics that Mr. Glover's being examined on.

17         How can -- how can a document that's about a

18    Lantech -- a series of Lantech transactions and processes that

19    are the very subject of this case, and testing, two topics that

20    are in the notice of deposition, the 30(b)(6) topic for which

21    Mr. Glover is being produced, how can they not be germane to

22    his examination?

23         MR. TRISCHLER:  They're not germane because they have

24    nothing to do with valsartan.  I'm looking at the documents

25    right now, Your Honor, and I'm looking at a spreadsheet on the

1    status of nitrosamine testing that has nothing to do with

2    anything that happened at Unit 8, it has nothing to do with

3    valsartan.  You know, we keep talking about ancient history.

4    Mr. Glover brought up -- they brought up the fact that Mr.

5    Glover, there hasn't been a custodial production for him.

6    Judge Schneider ruled there didn't need to be.

7         And so what this really comes down to is an attempt

8    simply to overturn and reargue issues that have already been

9    litigated, decisions that have already been made about what

10   needs to be produced and what's not produced, and, you know, as

11   I said, we've laid eyes on these documents, made determinations

12   that are not -- that they're not responsive, we've made

13   productions in accordance with the discovery rulings of this

14   Court, and simply because the plaintiffs are not sure about

15   file names, they want to set that all aside.  It's not fair --

16   it's not fair to Mylan, it wouldn't be fair to any defendant.

17   It's not the proper standard for making discovery rulings.

18        JUDGE VANASKIE:  But there has to be some process in

19   place by which you assess whether or not the determination of a

20   document being nonresponsive is tested.  There has to be some

21   process in place for that.  As I said, in another matter we did

22   random sampling and made a determination in the case that there

23   were very few, if any, responsive documents.  But it's a

24   cumbersome process.  I'm not looking to do that.

25        I'm wondering, I'll wonder out loud here, whether the

 1    most expedient way to handle this matter is say produce the

 2    4,200 documents.  The burden of producing -- of reviewing them

 3    would be on them, not on you.  It's already --

 4         MR. TRISCHLER:  If I were to -- if we were to make

 5    rulings because it's expedient and efficient in lieu of due

 6    process and fairness to litigants, I don't think that would be

 7    the appropriate approach.

 8         JUDGE VANASKIE:  I don't see any due process problem

 9    here.  Maybe I'm missing it.

10         MR. TRISCHLER:  Well, there's been no motion filed, no

11    review of the documents, simply a representation that we're

12    curious about them, and if the Court's going to entertain that

13    in a order, we'll just produce them because it'll be easy, I

14    suggest that that's a due process concern, without looking at

15    the merits of the argument and simply saying, let's set it all

16    aside because it would be the efficient and speedy thing to do.

17    I don't think that's a proper approach.

18         JUDGE VANASKIE:  Well, I think, with all due respect,

19    we're to be concerned with efficiency and with costs and that's

20    what I'm trying to avoid, the delay that this process may

21    entail.

22         MR. TRISCHLER:  We've already incurred substantial

23    costs, Judge.  There's already been over -- my client's already

24    produced over 250,000 documents, millions of pages of documents

25    that have cost them millions and millions of dollars, and so

1    when the suggestion being made that we really need a few more

2    documents that we're not sure are relevant so we can

3    cross-examine this witness doesn't fly, respectfully.

4            JUDGE VANASKIE:  All right.  Mr. Honik?

5            MR. HONIK:  Your Honor, Mylan is protected here.

6    There is a protective order.  They have the ability to claw it

7    back.  Mr. Trischler has already confirmed with a keystroke we

8    could have these documents.  And let me just say how this

9    problem really arose.

10            Over a year ago, whenever it was that we negotiated

11    search terms and custodians, we didn't really understand that

12    this was a process problem that translated across products and

13    manufacturing units.  That is to say that this solvent problem

14    was very pervasive and that nitrosamines were present in a lot

15    of different places.  And when the FDA went and investigated

16    it, and this is the second issue that we have with Mylan, the

17    one that I termed as "ripe" but I think Mr. Trischler will

18    disagree, one of the core set of things that Judge Schneider

19    ordered was all correspondence between the companies, in this

20    case Mylan, and the FDA and relevant attachments.  And, indeed,

21    they've produced for us inspection reports, correspondence and

22    the like concerning one of their units or the unit where they

23    made valsartan.  That is Unit 8.

24            However, subsequent to the two FDA inspections there,

25    in Unit 7, a sister unit, there was an FDA report that

1   significantly relied upon observations from the Unit 8

2   inspection because the nitrosamine-recovered solvent issue was

3   present in both units.  And so you can't really read the Unit 8

4   reports without understanding what they said about Unit 7.

5          That's an example of this problem that's now very

6   pervasive in the Mylan part of this case where nitrosamines,

7   its presence, due to this process failure because of the

8   recovered solvent, is across some of their units.  And they

9   have -- they've refused to produce the Unit 7 correspondence,

10  which is part of the FDA discovery, again, on this rather

11  narrow sense or view that it's not the unit where the valsartan

12  was produced.

13         I think this issue is ripe, too.  I think it's -- it

14  cries out for some attention because it's going to require us

15  to redepose Mr. Glover and others until we get that.

16         So, this is all of a piece, and I agree with the Court

17  that there needs to be a process to determine whether these

18  documents which are claimed to be unresponsive or fall outside

19  the narrow guidelines of the core discovery, the FDA

20  communications, it needs to be looked at sooner than later so

21  that we can avoid the very problem that Mr. Trischler sought to

22  avoid by getting the extension that we're now working under.

23         And I would respectfully request, Your Honor, that

24  there's no due process harm, there's a protective order entered

25  that protects the integrity of their documents, there's an

1    ability to claw it back, and I think the idea of Your Honor

2    taking a look at the documents, and, in particular, of the

3    4,100 we've listed, if you look at the letter, ten or 12, if

4    you do no more than that, Your Honor, I think you'll get a

5    terrific flavor of it and I would then encourage the Court to

6    direct the production of all 4,199 of the documents that we've

7    identified.

8            I think you're on mute, Judge.

9            JUDGE VANASKIE:  My dogs were around.

10           Are you suggesting, Mr. Honik, that I look at the

11   documents at the bottom of Page 27 and top of Page 28 --

12           MR. HONIK:  I do, Your Honor.

13           JUDGE VANASKIE:  -- and make a determination if all or

14   the overwhelming majority are not responsive to say okay?

15           MR. HONIK:  So, Judge, I think that because of the

16   urgency of this matter and the fact that we're in the middle of

17   this 30(b)(6) deposition with a witness who has more than 50

18   percent of the topics, I would -- I would suggest, because

19   there's no difference between Mr. Trischler sending you 15

20   documents or 4,000, electronically speaking, that you get the

21   4,199 and look at the 15 or so documents and then -- and then

22   go from there.  Because I think once you see that the ones

23   we've highlighted are perhaps the best examples, I think the

24   Court will see pretty readily, if you look at additional ones,

25   by way of cross-sampling or sampling, that we've got a massive

 1   amount of documents from that cache of 4,100 documents that

 2   should be turned over to us immediately.  You should get them

 3   all.

 4           JUDGE VANASKIE:  Mr. Trischler?

 5           MR. TRISCHLER:  Your Honor, the issue of the documents

 6   first, I have -- if the Court wants to do an *in camera* review

 7   of the documents highlighted by the plaintiff in their --

 8           THE COURT REPORTER:  Excuse me, Mr. Trischler, you're

 9   breaking up.  I could not hear you.  I apologize.

10           MR. TRISCHLER:  Should I start over?

11           THE COURT REPORTER:  No.  I could just tell you where

12   you were.

13           "-- if the Court wants to do an *in camera* review of

14   the documents highlighted by the plaintiff in their --"

15           MR. TRISCHLER:  -- we will certainly comply with that

16   directive and provide Your Honor with the -- with the

17   documents.  You know, if we haven't made the right call on

18   relevance and responsiveness, then the documents should be

19   produced.  So if Your Honor wants to review, as I said, some

20   subset of documents or the 4,100 that the plaintiffs have

21   culled out, I'll follow the Court's directive as far as that

22   goes.

23           Can I address the point that Mr. Honik raised with

24   respect to Unit 7?

25           JUDGE VANASKIE:  Yes.

```
 1          MR. TRISCHLER:  All right.  Your Honor, there was a
 2  ruling that was entered by this Court in discovery that made --
 3  it was crystal clear that regulatory communications should be
 4  produced in this case with respect to those facilities where
 5  the defendants manufactured the valsartan API, the active
 6  pharmaceutical ingredient, or where the valsartan finished dose
 7  products were manufactured.
 8          What the plaintiffs are now seeking with this latest
 9  motion is to, once again, disregard Macro Discovery rulings and
10  say, even though, Mylan, you've produced all regulatory
11  communications for Unit 8, which is where the API is
12  manufactured and where one of the finished dose products is
13  manufactured, and you've produced regulatory communications
14  with your Nashik facility and your Morgantown facility where
15  other valsartan-containing finished dose products were
16  produced, so you've complied with the order but I don't care,
17  we don't care, we want more, we want your documentation
18  regarding regulatory communications for Unit 7, a facility
19  where valsartan was never made, a facility where valsartan API
20  has never been produced, but we want it notwithstanding what
21  Judge Schneider's discovery ruling says.
22          And if we're going to go back and revisit discovery
23  rulings that were made six to eight months ago for Mylan, and
24  then I fear what usually happens in this litigation, for then
25  every other defendant, we're never going to finish discovery in
```

```
 1    this case.

 2           And so this issue -- this issue probably is ripe on

 3    behalf of Mylan, if Your Honor wants to, but there's not really

 4    much more to discuss.  We have a court order, we produced

 5    documents in response to the court order, and now the

 6    plaintiffs are saying it's not enough, we want to go back and

 7    we want to revisit that and we want regulatory communications

 8    for, now they say Unit 7 but the next part of the slippery

 9    slope will be probably for all facilities.  And if so --

10           MR. HONIK:  Your Honor, respectfully --

11           MR. TRISCHLER:  -- it's contrary to the court order.

12           MR. HONIK:  Your Honor, respectfully, that's not

13    correct, and no one wants to complete discovery with Mylan more

14    than me.  And we want to do it efficiently and we've been doing

15    it efficiently.

16           Respectfully, when this order, now long ago, was

17    placed on the docket, Judge Schneider was abundantly clear that

18    if for good cause there was reason to revisit some of the very

19    granular rulings that he made, that we, we, all of us,

20    defendants and plaintiffs alike, are free -- we're free to do

21    that.

22           What I would encourage Your Honor to do, because I

23    know this is a -- this is a granular issue and if you haven't,

24    as I'm sure you haven't, been following all of the nuances,

25    each of the defendants' root cause analyses are a bit
```

1  different.  And Mr. Trischler is literally correct that Unit 8

2  was the place where valsartan API was made, but what we

3  discovered that Mylan's root cause analysis, for example, is

4  different than ZHP's.  ZHP had a problem with the creation of

5  their tetrazole ring.  The problem with Mylan, as we've now

6  come to discover, and only discovery could have revealed this

7  to us, is that they were using recycled solvent that -- that

8  placed an impurity into the chemical process.  And they did

9  that at more than one facility.  And as you could have

10 predicted, when the FDA discovered this, and there's no dispute

11 about it, they not only examined the use of this recycled or

12 recovered solvent in Unit 8, they also looked at it with a lot

13 of care in Unit 7, all under the guise of this FDA recall.

14         So what am I encouraging the Court to do?  I would ask

15 the Court, respectfully, to look at three things:  The

16 inspection report from December 10, 2018, and June 15, 2019,

17 from Unit 8, full stop, and the February 28th, 2020, Unit 7

18 inspection, and you will see that they're all connected.  You

19 will see that they all look at the very theory of liability

20 that we have in this case.  And I respectfully submit that if

21 you see that connection, Your Honor, you will see that we've

22 made a very tailored request to Mr. Trischler.  We're not

23 fishing.  We're simply asking him to give us the correspondence

24 between the company and the FDA with respect to that Unit 7

25 inspection.  Why?  Because it's inextricably woven and

1   connected to the Unit 8 inspection.  Any reasonable person

2   reading those reports in *pari materia* will see the

3   connectivity; and I think if the Court were to do that, you'll

4   see instantly why we've asked for them, why we've tailored our

5   request just to that correspondence and to that one report and

6   the relevant attachments.  It's not a large request, it's

7   highly tailored, and I think the Court will be able to see it

8   for itself if you do nothing more than look at those three

9   inspection reports.

10          I think you're muted, Judge.

11          JUDGE VANASKIE:  I keep forgetting I'm muted.

12          I haven't looked at the inspection reports yet so it's

13  premature for me to do anything on this matter.  I would be

14  inclined to look at them and perhaps we'll have another

15  discussion about this, this particular issue dealing with Unit

16  7.

17          Getting back to the nonresponsive documents, I would

18  ask, I think there are 12 documents that are listed at the

19  bottom of Page 27 going over to the top of Page 28, I'd ask

20  that they be produced to me for my review *in camera*.  I would

21  ask that the 4,200 documents -- that I receive a listing by

22  Bates number of the 4,200 documents that I would then run a

23  random sampling program against to identify particular

24  documents to be produced so I can review, on a statistically

25  valid basis, the documents to determine the degree to which

 1    they are responsive or not responsive.

 2            How much time do you need, Mr. Trischler?

 3            MR. TRISCHLER:  Well, I was going to first ask, Your

 4    Honor, how would you propose that we submit the 12 documents

 5    and the list to you?

 6            JUDGE VANASKIE:  You could email them to me.  I don't

 7    see that as a problem.  Email it to me at my law firm address.

 8            MR. TRISCHLER:  Okay.  And then so I will email the

 9    documents and the list to you and cc, without enclosure, the

10    Plaintiffs' Steering Committee.  Is that acceptable?

11            JUDGE VANASKIE:  That is acceptable.

12            MR. TRISCHLER:  All right.  And I would defer to Mr.

13    Stoy, if I may, as far as what time it may take to accomplish

14    that task, Your Honor.

15            JUDGE VANASKIE:  Okay.

16            MR. STOY:  Your Honor, this is Frank Stoy.  We should

17    be able to have the documents to you as early as this evening.

18    And I would propose that we would just send the spreadsheet

19    that plaintiffs have provided to us, which contains the Bates

20    numbers of the documents which you could then use to generate a

21    random sample.

22            Once you have the document Bates numbers that you

23    wanted us to pull, you could let us know and then we can pull

24    them and it shouldn't take very long to have that done.

25            JUDGE VANASKIE:  All right.  Very well.  All right?

1        MR. HONIK:  Yes, sir.

2        JUDGE VANASKIE:  Anything else on this issue?

3        MR. HONIK:  No, Your Honor.  Thank you.

4        JUDGE VANASKIE:  All right.  Thank you very much.

5        The next matter I have concerns the retailer and

6    wholesaler discovery issues.

7        MR. STANOCH:  Yes.  Good afternoon, Your Honor.  David

8    Stanoch for plaintiffs.

9        I think the parties' respective letters spell this out

10   very nicely and crystalize the issue for Your Honor.

11       Simply put, we served draft discovery December 8th,

12   2020.  It's now March 10th, 2021.  We've had a couple calls.

13   We've been told by both defendants, they say this in their

14   letter, that they don't think they should have to negotiate

15   discovery, not even produce discovery, negotiate any further

16   discovery, while the scope of the complaints are in flux, and

17   that it should come to a halt.  It's been three months that

18   we've lost, essentially, this entire period since December 8th.

19   We could have just propounded these requests under Rule 30 and

20   34, they would have served their objections in 30 days, this

21   would have been teed up at the end of January already.  Yet,

22   here we are, because we said we would talk to them and took

23   them at their word that they were ready to talk substantively

24   and engage in discussions and provide the red lines and we

25   don't have it.

1          We disagree with both sets of these defendants, Your

2   Honor, the wholesalers and retailers, that they should be

3   immune to discovery at this point.  There's never been a stay

4   of discovery in this case.  Multiple defendants raised that

5   issue before with Judge Kugler or Magistrate Judge Schneider,

6   directly and obliquely, and there's never been such a stay.

7   Retailers dicker that, oh, well, they're not seeking a

8   constructive or actual stay.  Well, when you say you want to

9   pause negotiation of discovery and answering discovery?  Judge,

10  that's a stay.

11         So we think that we've already lost all of the time

12  between December and now, which we had gained from the parties'

13  frantic efforts to have Judge Kugler grant an extension, and

14  that we need to get going with these two defendants.  They're

15  party defendants.  If defendants have their way, Judge, and say

16  that nothing should happen until the amended complaints are

17  done -- Ms. Smith mentions that we may have a final Motion to

18  Dismiss order in a few days, let's say Friday, from Judge

19  Kugler.  We then have 30 days to file amended complaints.  They

20  will oppose our motions for leave to file those amended

21  complaints.  We then file replies.  We then argue that before

22  Judge Kugler.  Next thing you know, Judge, here we are in the

23  middle of the summer and we still have nothing to show for all

24  of this.

25         We think, at a minimum, that we should get substantive

1  red lines to the draft document requests and deposition notices

2  from these two sets of defendants, and that any disputes be

3  raised to Your Honor at the next CMC status call; and then we

4  could proceed and Your Honor can decide then, once the actual

5  language is set even, can decide whether there may need to be a

6  pause or stay or what have you in answering it, but at least

7  then we're ready to go and we have it on hand.  And if Your

8  Honor needs to narrow it or modify it, he can, but that way we

9  don't lose even more time now in this case for this discovery.

10         JUDGE VANASKIE:  All right.  Who will be addressing

11  this on behalf of the retailer and wholesaler defendants?

12         MR. GEOPPINGER:  Your Honor -- Your Honor, Jeff

13  Geoppinger on behalf of the wholesalers.  Ms. Johnston will

14  speak for the retailers.

15         Your Honor, the bottom line here is there are orders.

16  There are orders on the Rule 12 motions.  They radically alter

17  the case against my client and the wholesalers, generally, to

18  the extent that we are out of the case.  Order Number 2

19  dismissed us, full stop, out of the case.

20         The wholesalers shouldn't be required to expend lots

21  of time and money and effort on discovery that's untethered to

22  any claim in the case.  We need amended complaints.  Okay?  The

23  plaintiffs originally were to amend their complaints by January

24  27th.  They've taken steps to extend that deadline to now 30

25  days until after the last order.  The wholesalers are

1    essentially -- you know, they don't want to file an amended

2    complaint until they have all the orders in front of them; and

3    we're essentially asking for the same thing, Your Honor.  We

4    don't want to be made to undergo discovery and to negotiate

5    discovery and to be involved in discovery in a case, candidly,

6    we're not right in right now until the plaintiffs have at least

7    filed their motions to amend the complaints.

8         I've heard a lot about speed and expediency and we're

9    in a rush and we've got to push forward today.  I hear a lot of

10   that when the defendants are on the hook for something, but I

11   note that the plaintiffs have taken their time in filing these

12   amended complaints.  And they certainly can do that.  They can

13   do it whenever they want.  They are the master of their

14   complaint.

15        So I respectfully suggest, Your Honor, that the

16   plaintiffs should file their master -- their amended -- or,

17   excuse me, their motions to amend the complaints, we'll see

18   what claims are even possibly in this litigation still against

19   the wholesaler defendants, and we'll go from there.

20        The motions to dismiss have to mean something, Your

21   Honor.  The judge spent a lot of time on them and they are

22   there, and the plaintiffs can't just proceed in discovery like

23   they don't exist and they didn't have any effect on the claims

24   in the case.

25        The plaintiffs say there's never been a stay during

1  pending, you know, motion practice.  I mean, that's a little

2  disingenuous when the motion practice is extended out because

3  the plaintiffs have sought to do so.

4        I would suggest, Your Honor, you know, as a

5  compromise, if any, that maybe we would -- we would trigger the

6  defendants' meet and confers and negotiation of these, and Ms.

7  Johnston will speak for herself, but, you know, at least off of

8  when the plaintiffs decide to file their motions to amend the

9  complaints.

10       JUDGE VANASKIE:  All right.  Ms. Johnston.  I think

11  you're muted.  We are not hearing you.

12       MS. JOHNSTON:  I'm muted.

13       JUDGE VANASKIE:  Okay.  Now we hear you.

14       MS. JOHNSTON:  Is that better?  Okay.  This actually

15  happened earlier today on another Zoom.  So let me know if I

16  drop at all.

17       Again, Your Honor, good afternoon.  Sarah Johnston for

18  the retailer defendants.  My colleague, Kristen Richer, I

19  believe, is also here.  Ms. Richer and I have been working for

20  the pharmacy defendants to negotiate discovery matters here and

21  she may have some additional things to add if I miss anything.

22       I think Mr. Geoppinger said it well.  I think that

23  there are three fairly fundamental but important misstatements

24  or misrepresentations in plaintiffs' submissions to the Court.

25       I think first is the idea that we are seeking a

1    constructive or actual stay on discovery, and I don't think

2    that that's something that could even be possible given the

3    fact that we are continuing and have continued to participate

4    in the discovery process through not only our significant first

5    round discovery productions, which were just completed in the

6    fall of last year, and through the DFS process which continues

7    up to now.  We are active participants in discovery.  We are

8    not seeking to shirk the obligations that have already been

9    ordered or agreed to, and those continue.

10         The second issue that we disagree with plaintiffs on

11   is the idea that we are not willing to participate in the

12   meet-and-confer process at this time.  I think that that's

13   disingenuous and we think that the history that's laid out in

14   plaintiffs' letter is incorrect.

15         Following a significant number of meet and confers

16   with plaintiffs' counsel about a month ago, we sent the letter

17   that's attached as Exhibit C to the defense submission from

18   yesterday.  Exhibit C is a letter laying out not just the fact

19   that we think that it does make sense to press pause on --

20         JUDGE VANASKIE:  We lost you again.

21         MS. JOHNSTON:  Are you there?  Can you hear me?

22         JUDGE VANASKIE:  Yes, now we can.

23         MS. JOHNSTON:  Sorry about that.  I think I need a

24   restart of the computer, not of all this.

25         So, Your Honor, we sent a letter to plaintiffs'

1  counsel about a month ago.  It laid out our positions.  We've

2  attached it to our submission.  I won't go through the details

3  of that because I don't think it's necessary but, yes, in the

4  first page of a six- or seven-page letter we say we do not

5  think it makes sense for further discovery to be negotiated at

6  this point for all the reasons that Mr. Geoppinger stated,

7  because the pleadings are in flux and because plaintiffs have

8  extended the deadline to move to amend.

9         We are in a very similar position to the wholesaler

10 defendants in that the claims against the retailers and

11 pharmacies have been significantly pared down.  We're not

12 talking about a stay at the outset of an MDL where motions to

13 dismiss are pending.  We're talking about a litigation that is

14 two years in and we are facing substantially fewer, if any,

15 claims, depending on what the outcome of the sixth forthcoming

16 order is.

17        With that said, we've sent this letter and, yes, we do

18 lay out that preliminary position but then go on for six pages

19 outlining each place where we believe that the discovery either

20 is unclear and ask for a clarification or we believe it's

21 duplicative of discovery that we've already agreed to or

22 already produced and asking for clarification.

23        The only dispute that I hear from plaintiffs as to

24 what we've done in the meet-and-confer process is not adhering

25 to a traditional red line versus a different means of meeting

1    and conferring.  That letter did not come without substantial

2    effort on our parts to not only talk to plaintiffs but talk to

3    our cohorts in the retailer and pharmacy group to work out what

4    it is that we found to be problematic or questionable about the

5    discovery and then to communicate that to plaintiffs.  That

6    letter has gone unanswered.

7            So if we're talking about the passage of time and

8    who's responsible for lost time, the letter that was sent on

9    February 16th that we had never received an answer to that lays

10   out our position is a pretty significant culprit in the

11   lost-time argument.

12           And then I think the third issue here that we feel

13   there is a misrepresentation of is the issue of timing.

14           JUDGE VANASKIE:  I'm sorry, I missed that.

15           MS. JOHNSTON:  Is the issue of timing.

16           JUDGE VANASKIE:  Okay.

17           MS. JOHNSTON:  I think Mr. Geoppinger touched on this

18   and I think that, you know, his point is correct, but when

19   plaintiffs say we could have served this discovery in December

20   and gotten responses by now, yes, that's true, in a litigation

21   in which that was the discovery track.  Here we had CMO 22

22   which stated that additional downstream discovery was to

23   commence on April 1st.  That deadline has been continued by 60

24   days with additional discovery as to the downstream defendants

25   to commence on June 1.  So to now have to brief and argue this

```
 1  issue before the Court at this time when we are talking about a
 2  triggering deadline that won't begin until June 1st is -- is,
 3  again, a misrepresentation.  And so I think that's the position
 4  we find ourselves in --
 5          THE COURT REPORTER:  I'm sorry, Ms. Johnston, you
 6  broke up.
 7          MS. JOHNSTON:  My apologies.  I think I'm wrapping up,
 8  if you can hear me.
 9          THE COURT REPORTER:  Yes.
10          MS. JOHNSTON:  But I think that's our position, Your
11  Honor.  I don't know if Ms. Richer has anything to add or if
12  there are any questions, but we're certainly happy to discuss
13  this further to the extent that there are questions.
14          JUDGE VANASKIE:  Thank you.
15          Ms. Richer, do you have anything to add?
16          MS. RICHER:  No, Your Honor.  I think Ms. Johnston
17  really captured all of our positions on this.  I'm happy to
18  answer any questions you may have.
19          JUDGE VANASKIE:  Well, let me ask one question and I
20  can ask it of all three of you on the defense side.
21          What's involved in submitting back a red line version
22  of the RFPs, the requests for production or the written
23  discovery requests?
24          MS. RICHER:  Your Honor, I can speak to that at least
25  as to the retail pharmacy defendants.
```

1          JUDGE VANASKIE:  All right.

2          MS. RICHER:  We did contemplate sending plaintiffs an

3    RFP but as we explained in the February 16 letter, candidly, we

4    did not think that that would be constructive given how

5    foundational some of their questions were.  And one thing that

6    I, you know, as the person who was working most closely on this

7    for a good amount of time, took umbrage to was the suggestion

8    in plaintiffs' letter, and in prior correspondence to us, that

9    we were simply objecting to the scope of discovery.

10          I think if Your Honor looks at the contents of the

11    letter, I mean, we laid out RFP that are very specific

12    questions about what plaintiffs were seeking, why it was

13    necessary, given the discovery already produced to date, and

14    why it was necessary, given extensive discovery, overlapping

15    discovery, from some of the upstream entities on those very

16    same issues.  And the idea that we're simply talking here about

17    negotiating some simple document production is just simply not

18    the case.  If Your Honor looks at the draft proposed by

19    plaintiffs, they're seeking extensive custodial discovery and

20    some of the requests as drafted are quite unwieldily.

21          So rather than do something that, frankly, I would

22    have found offensive had I received it, which is receiving a

23    red line that completely crossed everything out, just asked a

24    bunch of questions, we really tried in good faith to explain

25    where we were struggling with these RFPs and to ask questions

1  that would solicit helpful responses from plaintiffs so that we

2  could move things forward.

3          We now find ourselves in the situation explained in

4  the letter and by Ms. Johnston and Mr. Geoppinger regarding the

5  awkward timing of this as it relates to motions to dismiss and

6  the Court's rulings on those.  So we think it's worth making

7  that point.  But the idea that we simply aren't trying or we're

8  refusing to participate or that we haven't been participating

9  and trying to work this out amongst our group of, you know,

10  approximately ten retailers is simply not the case.

11          JUDGE VANASKIE:  All right.  Thank you, Ms. Richer.

12          MR. GEOPPINGER:  Your Honor, if I may just add to

13  that.

14          JUDGE VANASKIE:  Go ahead, Mr. Geoppinger.  Go ahead.

15          MR. GEOPPINGER:  I agree with what Ms. Richer is

16  saying in terms of the specifics on the requests.  The bigger

17  picture issue, Your Honor, is, as Mr. Stanoch told you, those

18  were served before there were motions to dismiss -- or, excuse

19  me, orders on the motions to dismiss.  So, you know, as I note

20  in the letter, the discovery has to be tied to the plaintiffs'

21  case and that discovery was tied to claims that --

22          THE COURT REPORTER:  I'm sorry.  "Was tied to claims

23  that --"

24          MR. GEOPPINGER:  It was tied to a number of claims

25  that don't exist anymore.

1          Now, some of them will not be coming back.  They were

2    dismissed with prejudice.  The plaintiffs will file a motion to

3    amend their complaint and we will see how that plays out.  But

4    at present, there's a bunch of claims that were at issue on

5    December 8th that are no longer at issue.  And the discovery

6    should be tied to the claims so it makes perfect sense, from

7    our perspective, to have at least an understanding of what it

8    is the plaintiffs are going to do with respect to an attempt to

9    amend the complaint before we are in a position where we have

10   to respond to them about what requests we think are, you know,

11   in play and which are not.

12          If we respond on requests that we don't think are in

13   play, I feel -- you know, I'm concerned that we're going to

14   hear an argument back that they are because we didn't respond

15   sufficiently enough when we were unsure what the pleadings

16   were, which is why we'd like to know, from the wholesalers'

17   perspective and the retailers', I understand, as well, what is

18   it that the plaintiffs plan to do with these, you know, these

19   motions to amend the complaints.  Where are we going on these

20   claims?  They certainly aren't going to be as broad as they

21   were on December 8th, and we should have that -- we should have

22   the visibility on that before we're in a position to do further

23   discovery.

24          JUDGE VANASKIE:  Thank you, Mr. Geoppinger.

25          Mr. Stanoch, have you replied to the February 16th

1    letter?

2            MR. STANOCH:  Your Honor, we disagreed with the

3    premise because -- I've never been accused of

4    misrepresentations at all, let alone so much in one hearing,

5    Your Honor, when I'm simply quoting back their own letter

6    saying they want to pause and do not want to negotiate

7    additional discovery while the claims are in flux.

8            We don't need to meet and confer ad nauseam, Judge.

9    We met and conferred.  This is the same thing you saw earlier

10   today.  We explained to them in multiple calls what we want.

11   Judge, we attached these requests.  They are not very large.

12   There's only nine different requests.  They told us on the meet

13   and confer, Judge, that they couldn't even begin to answer a

14   request for organizational charts, Judge, organizational

15   charts.  These other requests, these are not fishing, Judge;

16   they're very focused:  Two requests for reps and warranties,

17   two requests for the agreement you used to purchase or sell

18   valsartan drugs, communications between -- inter-defendant

19   communications regarding the valsartan recalls, and inventory

20   management policies.  Why is it important, Judge?  Because

21   regardless of the claims, and I'll tell Mr. Geoppinger right

22   now, we are going to ament the claims, they are -- they are

23   still in the case now, they will be in the case.  Ms. Johnston

24   concedes that her clients are in the case at least for some

25   claims right now.  We shouldn't be penalized for having their

1    agreement to have an orderly process to amend the complaint at

2    once so we didn't have to file five or six motions for leave.

3              But the inventory management policies, Judge, it's for

4    the traceability, and that's going to cut across all of the

5    claims.  They tell us they can't trace where these drugs go.

6    Okay.  You know, we've explained to them that even if you can't

7    trace them with an identifier, and there was a lot of

8    litigation last year, over seven months, about this, Judge, and

9    I'm happy to send you hyperlinks about it because we had an

10   expert put in a declaration even, that they can't trace the

11   numbers, so we say, okay, well, then give us your inventory

12   policies.  You're the largest distributors and retailers in the

13   country, if not the world, surely your personnel, who submitted

14   declarations before in this case, have some sort of policy to

15   tell us how often a product stays on the shelf or not.  We've

16   explained this to them.

17             It's not my job, Your Honor, to know what documents

18   these defendants have.  They say, what do you want for reps and

19   warranties?  I gave examples of what we thought there might be

20   in terms of labeling, in terms of agreements.  I don't know

21   what else it is.  It's incumbent on them to tell me.  If it's

22   truly been produced already, then that's the response to the

23   document request, Judge.  There's been duplication alone that

24   they already produced it, that's an easy fix.

25             Their side insisted on document requests to the class

1  rep plaintiffs and over half of the new requests were

2  completely duplicative of the document requests to the economic

3  loss and medical monitoring Plaintiff Facts Sheets.  And I said

4  this to them multiple times and their side's response was, it

5  doesn't matter, we didn't ask it in the precise way, we're

6  asking it again now to make sure.  We're entitled to do the

7  same thing.

8        For example, they had to produce indemnity agreements

9  to us from the heavily negotiated requests the first time.

10 They heavily redacted supply agreements so they only gave us,

11 in some instances, the clause that says indemnity agreement.  I

12 said, okay, well, now we're at the next phase of litigation, we

13 want the full agreement because it's going to show things like

14 the pricing, the supply terms, the reps and warranties.  They

15 said, sorry, you didn't ask for that, serve a new request.

16 Okay, here it is.  And now I'm being told that they don't

17 understand what the request is, that it's too broad and it's

18 duplicative.

19       I can go on and on with other examples, Judge, but

20 from my perspective, that's the flavor of what we're dealing

21 with, and the fact that now I'm hearing that we should pause

22 this until the summer before we even talk about four or five

23 categories of things, half of which are going to be centrally

24 located, including organizational charts?

25       I'm happy to answer any other specific questions,

 1  Judge.

 2          MS. RICHER:  Your Honor, if I may.

 3          JUDGE VANASKIE:  You certainly may.

 4          MS. RICHER:  So I don't want to get into the weeds

 5  here on what we are and are not saying about the RFPs because

 6  to spite what Mr. Stanoch is saying, I think our letter on this

 7  is pretty clear.  And we are not saying it's impossible for us

 8  to produce organizational charts, for example.  We're saying

 9  the way that you have drafted this request encompasses nearly

10  every employee at, for example, CVS, my client, a national

11  retail pharmacy chain with thousands of stores across the

12  country.  You cannot possibly mean that you want organization

13  charts for every single individual who works at CVS or that

14  that would even be helpful to you.

15          MR. STANOCH:  And I told you that, Ms. Richer.  I told

16  you that.  I'm sorry to interrupt, but I told you that.

17          JUDGE VANASKIE:  Please don't interrupt.

18          MR. STANOCH:  I apologize, Judge.

19          JUDGE VANASKIE:  Please don't interrupt.

20          MR. STANOCH:  You're right, Judge.

21          MS. RICHER:  So the letter set forth a series of

22  questions and makes a number of comments about the requests as

23  drafted and asks for information.

24          A response to that would be helpful.  Ideally, it

25  would not have been Mr. Stanoch arguing about it at every

1 conference on this.  Ideally, we would have actually met and

2 conferred; but we are also suggesting that it doesn't make

3 sense to meet and confer given what's happening with the

4 pleadings.

5 I think, you know, there are a number of questions

6 laid out in this letter about each of these RFPs that are very

7 fair questions and answers to which would help both sides move

8 things along here.  And, again, as we explained, given what's

9 happening with the pleadings, we don't think it makes sense to

10 have that conversation at the moment.

11 We think it would make -- you know, Mr. Stanoch seemed

12 very confident that plaintiffs' motion for leave to amend the

13 complaint will be granted.  I don't think defendants think that

14 that's a given, certainly not with respect to every single

15 issue that was dismissed under the Court's Rule 12 rulings; but

16 at least, as Mr. Geoppinger said, at least seeing the pleadings

17 would certainly be helpful on that, and we haven't had an

18 opportunity to do that yet, in part, because the orders have

19 been issued on a rolling basis and, in part, because plaintiffs

20 have decided that they would rather respond all at one time

21 once all of those orders are issued.

22 You know, this isn't some sort of attempt to stay

23 discovery.  We are very engaged.  My client right now is

24 searching for documents responsive to the DFS.  So the idea

25 that we're not participating in discovery in this case is

1   really not accurate.  We are trying to do something that,

2   frankly, we thought --

3          THE COURT REPORTER:  I'm sorry, you're going to have

4   to repeat that.  You broke up.

5          MS. RICHER:  We are suggesting that it makes sense to

6   push pause in the discovery hear, and, frankly, we thought it

7   made sense for both plaintiffs and defendants because it's not

8   efficient to negotiate about the specifics of RFPs in a vacuum.

9          JUDGE VANASKIE:  Well, here's what I think.  It seems

10  to me that there are some issues that discovery should be had

11  because it is likely that the wholesalers and retailers will

12  stay in the case in some way with respect to some claims.  I

13  also agree with you that it's difficult, on the defense side,

14  to respond not knowing exactly what claims will survive.  But I

15  heard some examples of types of discovery that you could meet

16  and confer on and agree it can go forward.  It doesn't have

17  to -- we don't have to get one complete agreed-upon set of

18  requests before discovery can go forward at least to a limited

19  extent.  And I think -- I think, respectfully, you should meet

20  and confer, there should be a response to that February 16th

21  letter, and you should be able to identify some areas on which

22  discovery can go forward and some where you simply say, we

23  don't think this is going to stay in the case so we shouldn't

24  have to produce that discovery.

25          So what I'm going to direct you to do is to, Mr.

1   Stanoch, to reply to that February 16th letter and also for you

2   all, after your replies, to meet and confer to see if you can

3   reach agreement on what is discoverable now, even though the

4   pleadings still are in flux.  All right?

5           MR. STANOCH:  Your Honor, David Stanoch for

6   plaintiffs.  That's fine, Your Honor.  I'd like to apologize to

7   Ms. Richer and to yourself for my interruption before.

8           We will do that, Your Honor.  I would just note that

9   that letter you referenced was from the retailers.  We don't

10  have any written communication from the wholesalers.  We've

11  talked to them on the phone and they said they'd get us red

12  lines, they never did; and then they sent an email saying

13  whatever it says, it's attached to the letter.  So I don't have

14  anything to respond to from them.

15          So I'd ask in the first instance, at least with the

16  wholesalers, they send us their response about our requests and

17  then we can get into the back and forth like you suggested with

18  us and the retailers.

19          JUDGE VANASKIE:  All right.  Mr. Geoppinger?

20          MR. GEOPPINGER:  I agree with everything the retailers

21  put in their response, Your Honor.  We have the same issues.

22  The requests, if we want to talk about the specifics of the

23  requests, I don't think we need to do that here, but I think

24  the letter lays out, you know, issues that are common to both

25  the retailers and the wholesalers, the entire downstream chain

1    for that matter.

2            So I think Mr. Stanoch can respond to that letter and

3    we'll -- and that will address our issues as well.  I mean SOPs

4    are SOPs.

5            JUDGE VANASKIE:  All right.

6            MR. STANOCH:  That's fine for plaintiff, Your Honor.

7            JUDGE VANASKIE:  Okay.  Thanks.  I think there's one

8    more issue.

9            MR. HONIK:  Ms. Goldenberg is with us, Your Honor.

10           JUDGE VANASKIE:  Okay.  Oh, two more issues.  Oh boy.

11           Camille, how are you?  Are you holding up okay?

12           THE COURT REPORTER:  Yes, Your Honor.  Thank you.

13           JUDGE VANASKIE:  Do you need a break?

14           THE COURT REPORTER:  No, thanks.  I'm fine.

15           JUDGE VANASKIE:  All right.  Well, before we go and

16   turn to Ms. Goldenberg on the -- well, I'll get to it.  I want

17   to address the question of bellwether discovery from the

18   defendants.

19           MS. LOGAS:  Yes, Your Honor, Alexandra Bach Logas,

20   counsel for Teva.  I think this should be fairly shortly --

21   fairly easy to resolve.

22           The parties met and conferred yesterday about the

23   issues raised under the memo topic titled Bellwether Discovery

24   From Defendants relating to the fact sheets for both parties.

25   The parties have already made some progress on the issues and

1    are in agreement to continue meeting and conferring on these

2    issues.  And the parties agreed yesterday, during our meet and

3    confer, that we would inform Your Honor that these items are

4    not ripe for discussion or resolution at today's hearing.

5        JUDGE VANASKIE:  All right.  Very well.  That was an

6    easy one.

7        MS. LOGAS:  I told you.

8        JUDGE VANASKIE:  Yes.

9        Ms. Goldenberg?

10       MS. GOLDENBERG:  Good afternoon, Your Honor.  And I

11   appreciate you punting this to the end.  I'd like to say that

12   our issues are short but I don't think that that's true.  So

13   I'm happy to start with whichever one you want or we can just

14   take it from the top of our agenda letter.

15       JUDGE VANASKIE:  Well, why don't you take it from the

16   top of your agenda letter.  I'm going to turn a light on in

17   here because it's starting to get dark so I can look at my

18   notes.

19       MS. GOLDENBERG:  Sure.  So just for Your Honor's

20   reference then, we are starting on Page 18 of the letter that

21   was filed by plaintiffs, and the first issue that we've got on

22   here is the continued document production issues.

23       So I wanted to begin with the part where we've been

24   able to be accommodating to the defendants.  We had a meet and

25   confer with Ms. Heinz on Thursday or Friday last week and she

1   indicated to us that they are in the process of collecting

2   these custodial files but that they are not going to be able to

3   meet the deadlines that Your Honor put in place.  They are

4   willing to produce four of those custodial files in a first

5   production and I believe three in a second, and then they have

6   a number of other files that they decided to send snail mail

7   to -- or their client decided to send via snail mail to Ms.

8   Heinz, and those are apparently caught in Customs and that is

9   one of the reasons they're giving us for not being able to meet

10  the deadlines.

11          I informed Ms. Heinz that, candidly, I'd never heard

12  of anyone trying to ship hard drives that way and asked her if

13  it was possible to send these via FTP and if Aurobindo had

14  copies of these hard drives.  She told me that they do have

15  copies of the data but hasn't volunteered to get the data any

16  faster.

17          So the first issue is, you know, we've told Ms. Heinz,

18  look, we are -- I don't want to say sympathetic because we need

19  the documents, but we understand that this is a big project and

20  we want to be flexible where we can, and we have volunteered to

21  give them an extension until April 9th to complete their

22  production under certain parameters that are outlined in our

23  agenda letter.

24          With that said, though, Your Honor, we do need to take

25  these depositions and we'd like the Court to adopt the schedule

1    that we put forth in our agenda letter that gives Aurobindo a

2    little bit of a cushion but at the same time gives us some

3    reassurance that at some point there will, in fact, be an end

4    to this process.

5              JUDGE VANASKIE:  All right.  Ms. Heinz.

6              MS. HEINZ:  Good afternoon, Your Honor.

7              JUDGE VANASKIE:  Good afternoon.

8              MS. HEINZ:  This is Jessica Heinz for the Aurobindo

9    defendants.

10             Yes, after we received the Court's ruling last week,

11   we have been working feverishly over here to comply with the

12   Court's rulings.  We rounded up a hundred -- over a hundred

13   attorneys who have started reviewing documents.  We are in

14   possession of eight of the custodial files.  Those are

15   undergoing review.

16             We did meet and confer with plaintiffs.  We were able,

17   like Ms. Goldenberg just said, we were able to reach an

18   agreement that we will produce four on March 12th and I think

19   Ms. Goldenberg said three on April 1st, it's actually four.  I

20   think their position statement may have included an incorrect

21   person but I reached out to Marlene yesterday to let them know

22   who exactly would be on that April 1st list.

23             We are currently waiting on an additional -- or the

24   remainder of the custodial files which is -- the last time at

25   the conference we knew it was -- I think it was eight and then

1    we had to disclose the Lantech focused custodians based on the

2    list of descriptions in Ms. Goldenberg's position statement and

3    we have identified those individuals.  There are three of them.

4         So there are 11 custodial files that remain to be

5    processed by our eDiscovery vendor.  Those are the ones that

6    were -- they had to be placed on hard drives and mailed

7    overseas and they are going through Customs.  Unfortunately, we

8    don't have any control over how quickly that is going to take.

9    And I understand Ms. Marlene -- Ms. Goldenberg said that, you

10   know, she's not familiar with data having to be put on a hard

11   drive.  This data was very large.  It could not be transferred

12   via an FTP link.  We had to put it on these hard drives; they

13   had to ship them overseas.

14        As I put in my position statement, it's very difficult

15   for us -- we do appreciate the plaintiffs, you know, working

16   these rolling deadlines out with us to give us a little bit

17   more time.  The only reason why I haven't been able to agree to

18   a date is because I don't know how quickly these hard drives

19   are going to pass through Customs.  Unfortunately, I don't have

20   any visibility into that process.  I'm hoping that I may, next

21   week, which is why I would like -- I think it would be helpful

22   if we have an opportunity to provide a status report to the

23   Court and Ms. Goldenberg and hopefully we can meet and confer

24   further once that report is filed and reach an agreement that

25   works for both of the parties.

1          MS. GOLDENBERG:  Your Honor, if I may, on the Customs

2     issue, there is no amount of data, I just confirmed in the

3     background with people smarter than me, that is too large to be

4     sent via FTP.  It's just a matter of how long you leave the

5     computer on and how long it takes the transfer to go through.

6          So, again, with all due respect, there's just no

7     reason that these files needed to be sent this way.  And while

8     it is, of course, defendant's prerogative how they want to

9     transmit their data, the deadline shouldn't depend on that.

10          JUDGE VANASKIE:  Ms. Heinz?

11          MS. HEINZ:  Your Honor, if I may, yes.  This is 11

12     custodial files.  It's over a million documents, I'm sure.  The

13     files that we currently have, the eight that we currently have,

14     it's over a million documents just them.  And so it's my

15     understanding that this is way too large to be transferred via

16     an FTP.  The quickest way for us to get these documents was to

17     put them on these hard drives and ship them overseas priority

18     so that we could get them as quickly as we could.

19          I can assure Your Honor that we are working feverishly

20     and diligently over here to get these documents to the

21     plaintiffs, per Your Honor's ruling, and we do appreciate the

22     plaintiffs working with us so far on the eight that we

23     currently have, and we hope we can continue working with them;

24     but at this point I can't agree to a date because I just don't

25     know how -- at this point I just don't know how quickly they're

1    going to be released.

2            MS. GOLDENBERG:  Your Honor, if I could suggest that

3    Ms. Heinz attempt the transfer via FTP or have some vendor test

4    this out before she says she can't do it, because what I

5    haven't heard her say is that she's tried.  And I've heard from

6    multiple different people who I've checked with on this issue

7    that this really isn't a big deal; that a million documents get

8    transferred all the time and maybe it takes a day or two but it

9    certainly doesn't take three weeks and it certainly doesn't

10   involve Customs.

11           JUDGE VANASKIE:  Ms. Heinz?

12           MS. HEINZ:  Your Honor, like I said in my position

13   statement, I'm certainly willing to go back to my client and --

14   it's my understanding that they have tried to do this.  If they

15   have not, I'll certainly let Ms. Goldenberg know and we can

16   certainly try that.  It's my understanding this has been

17   attempted and that that's the reason why we did not go forward

18   with that and that's why they put them on these hard drives.

19           I am -- I can definitely go back and look into that

20   further and provide a status report to Ms. Goldenberg and with

21   the Court, if you prefer, but my goal is to try and get these

22   as quickly as I can, per the Court's rulings, and work it out

23   with the plaintiffs so that everybody has what they need for

24   these depositions.

25           JUDGE VANASKIE:  Why don't you provide a status report

1  by next Tuesday as to where things stand with Customs, see if

2  there's been any movement.  And also in your status report, let

3  us know what efforts have been made to do this by FTP or what

4  efforts will be made to do this by FTP, and we'll move it

5  forward that way.

6       Ms. Goldenberg, is there anything else to discuss at

7  this time?

8       MS. GOLDENBERG:  Yes, Your Honor, there's a little

9  bit, but I'll try and tie it together.

10      So the next issue is sort of a combination between

11 Part A of the agenda letter under Aurobindo and the next part

12 about noncustodial sources.

13      What we have found in the document production, which,

14 you know, we've audited numerous times, and as you've probably

15 heard from the conferences that you've been a part of already,

16 we have questioned Aurobindo repeatedly on why these custodial

17 files are so small.  And so this time around I wanted to make

18 sure we gave Your Honor some concrete examples, and those

19 appear on Page 18 of our agenda letter.

20      And so what you can see in the letter is that we've

21 shown Your Honor that, for example, in Steve Lucas's file, he

22 is someone who was deemed to be a critical person for a number

23 of issues dealing with the FDA after this recall, and somehow

24 we only have five emails that were produced for him prior to

25 the recall date.

1          Similarly, Jasleen Gupta, another custodian that, to

2    our understanding, was critical to this FDA recall and

3    investigation process, has no emails in her custodial file that

4    were produced after the recall.

5          We also looked at the noncustodial sources that we've

6    received documents from based on the production index that

7    Aurobindo has provided to us, and to the best of what we can

8    tell, the only source that they searched at all that's

9    noncustodial is a regulatory file, and that just doesn't cover

10   the scope of the Rule 34 requests that we asked for.

11         And so during meet and confers, we have repeatedly

12   asked Ms. Heinz for some explanation for why these custodial

13   files are so small and for whether or not we've received all

14   responsive documents from noncustodial sources relating to our

15   Rule 34 requests and we haven't gotten anything official or

16   even unofficial that gives us any kind of comfort in that

17   response.

18         And so what we're asking for this time around is a

19   list from Aurobindo of the noncustodial sources of data that

20   they looked at to respond to our Rule 34 requests, and then

21   also a list of data sources that were searched as to each

22   custodian because in reviewing documents yesterday, almost all

23   of the documents that I found in custodial files seem to have

24   file paths linked to Outlook.  What I didn't see were things

25   that showed that hard drives had been searched, file cabinets

1   or anything else, and we all know that a person's custodial

2   file is certainly broader than just an Outlook program.

3        JUDGE VANASKIE:  Ms. Heinz?

4        MS. HEINZ:  Yes, Your Honor.  Respectfully, I'm not

5   quite sure what the plaintiffs think is missing from the

6   productions.  It's kind of hard for me to respond to what

7   Marlene is saying because I have produced everything that is

8   responsive from these custodial files and I can't remedy what

9   she's calling a deficiency if I don't know exactly why she

10  believes -- what she thinks is missing.  I'm happy to continue

11  to meet and confer with her about that, but I don't think it's

12  necessary and I think it would be overly burdensome to make my

13  client engage in discovery on discovery, particularly when we

14  are working so hard over here to produce these 18 custodial

15  files that we are now ordered to produce before these

16  depositions get started.  I think our time, you know, should be

17  devoted to that.  And if Ms. Goldenberg thinks it's necessary

18  to go for discovery on discovery, you know, we would prefer to

19  file a motion for a protective order on that and have some

20  briefing deadlines on that because we think that it's overly

21  burdensome to engage in that, given everything else that's

22  going on.  I think the priority is to get these documents out

23  ahead of these depositions.

24       JUDGE VANASKIE:  Ms. Goldenberg, what are you looking

25  for?  I have a note here that you want to confirm all sources

1    of data were searched.  What would you expect would be produced

2    to provide that confirmation?

3           MS. GOLDENBERG:  Sure, Your Honor.  So I'm not looking

4    for anything super complicated.  I just want a list of the

5    places that they looked for information.  So for noncustodial

6    documents, it's just a list of databases or sources that they

7    searched.

8           So, for example, most companies have a central source

9    that -- where they can save data that's accessible to all

10   employees.  They might also have an adverse event database.

11   And so all of these places are locations where we would expect

12   the defendant to be looking for documents that are responsive

13   to our requests.

14          So for noncustodial sources, it's just a list of what

15   they are, what they searched and whether or not documents were

16   produced from it; and for custodial sources, it's just a list

17   of the data sources that they searched to respond to document

18   requests for -- as to each custodian.  And so, again, it's not

19   hard; it's just, we looked at this person's computer, they had

20   an iPad, they had a phone and they had a cabinet behind their

21   desk.

22          So I don't anticipate this taking very long,

23   especially if the defendants are telling us on the record that

24   they already did it.

25          JUDGE VANASKIE:  Ms. Heinz, what would be so

1    burdensome about doing that?

2         MS. HEINZ:  It's burdensome because we are in the

3    middle of a very large review and production right now that is

4    custodial discovery.  This is discovery on discovery.  And, you

5    know, it's a little disingenuous to say that she doesn't know

6    -- that Ms. Marlene -- that Ms. Goldenberg doesn't know what we

7    have searched for.  We were just ordered to produce our SOPs,

8    which we have produced from all three of the Aurobindo

9    entities, along with copies of each entity's SOP index.  We

10   have also produced our contracts with customers and we have

11   located some additional contracts with customers that we will

12   be producing very shortly.  We have also produced our

13   certificates of analysis as well as our complaints and adverse

14   event reports.  So all of that is in there and so it should go

15   without saying that those noncustodial sources were searched.

16        I don't understand why we need to spend the time going

17   through and providing a list to the plaintiffs when they have

18   what they need and they're not voicing exactly what's missing.

19   They just want some kind of reassurance that these sources were

20   searched and, respectfully, that's not the way discovery works.

21   You produce the responsive documents and then if something is

22   missing, you know, we're happy to go back and get it for them,

23   if it's -- if it's something relevant and responsive to the

24   request, that's not a problem.  But we don't -- you know, we're

25   up against the clock on all these depositions as well and, you

1  know, we need to devote our time and resources to getting these

2  custodial productions out.

3      JUDGE VANASKIE:  All right.  Well, I'm not going to

4  order at this time any additional discovery on discovery.  You

5  have representations that appropriate sources have been

6  searched.  You're disappointed by the extent of production in

7  terms of what has been produced for particularly key persons,

8  but I don't think that gives me enough basis to say, now go

9  back and list every source that you searched so we make sure

10 that every relevant source was searched.  I think I need

11 something more than that.  And I'm sensitive as well to the

12 burden that's facing Aurobindo.  Now, maybe it's old doing, I

13 understand that.  I'm not making any judgment on that.  I'm

14 just saying given everything that's going on right now, without

15 prejudice, Ms. Goldenberg, I'm not going to grant that request

16 now.  You can always renew it later, especially if you come up

17 with something more concrete in terms of what may be missing.

18      MS. GOLDENBERG:  Noted, Your Honor, and we'll come

19 back to you if we find some other basis to do that.

20      JUDGE VANASKIE:  Thank you.

21      MS. GOLDENBERG:  If we could turn to the next issue

22 then, there is an issue about one of the Lantech custodians.

23 My understanding, and Ms. Heinz can correct me if I'm wrong, is

24 that they are opposing our request to add Dr. A. Ram Mohan Rao

25 as a custodian relating to the Lantech issue.  Ms. Heinz had

1    initially proposed three custodians, and those are listed on

2    Page 22 of our letter, it's Mr. Kasava Reddy, Mr. Ashok Reddy

3    and Mr. Nagaraju, who Ms. Heinz wasn't able to provide his full

4    name over the phone.  I've had a chance to go through our

5    document database and research these three individuals and Mr.

6    Ashok Reddy does look to be an appropriate custodian, as long

7    as it's the same person that we referenced in our agenda

8    letter, and if Ms. Heinz can confirm that today, I think we're

9    fine.

10           The other two, I, you know, candidly, am just

11   concerned are not the right people and we wanted to make sure

12   that we addressed this as soon as we got this information from

13   Ms. Heinz so that we didn't wait until she produced the

14   documents and then we told them to go back and get us more.

15           And so Mr. Kasava Reddy's name only appears twice in

16   the documents that have been produced to date and if they're

17   telling us that this person is relevant to Lantech, then I

18   guess we're interested in hearing why.  And for Mr. Nagaraju,

19   our understanding is that he's a quality assurance or

20   assistance person for a unit that didn't even make valsartan.

21   And so we had proposed the addition of an additional custodian

22   who is someone who had signed off on all of the FDA 483

23   responses about the issues that bring us to this courtroom

24   today; and so far I haven't received word from Ms. Heinz that

25   they're agreeable to that.  Maybe she'll tell me I'm wrong.

1        JUDGE VANASKIE:  And I just want to be clear on this.

2   Is that person a Dr. Ram Mohan Rao?

3        MS. GOLDENBERG:  Yes, it is.

4        JUDGE VANASKIE:  Okay.

5        MS. HEINZ:  Yes, Your Honor, at the last conference in

6   the Court's ruling, Your Honor referenced the descriptions for

7   the Lantech focused custodians that plaintiffs were seeking and

8   ordered us to produce the custodial files for the appropriate

9   individuals responsive to those descriptions.  We identified

10  three people based on that ruling, and Ms. Goldenberg has asked

11  me to identify which of those three custodians will testify --

12  or, I'm sorry, have information regarding those three

13  descriptions that she listed.  I'm working on getting that to

14  her.  I should have that to her shortly.

15       Those are the appropriate people.  We disclosed them

16  pursuant to the Court's ruling.  If -- and to the extent that

17  the plaintiffs are now seeking Dr. Rao's custodial file,

18  they've had the documents now from the Aurobindo U.S. entities

19  for months and months, since November was our -- the final

20  production deadline, and his name has been in there and we have

21  been meeting and conferring repeatedly since then, talking

22  about, you know, these custodians for Aurobindo Pharma Limited

23  and his name is now just coming up from the plaintiffs for the

24  first time last Friday.  He is the chief quality officer at

25  Aurobindo Pharma Limited.

1          As stated in my position statement, you know, we

2     obviously, object to adding him as a custodian at this late

3     juncture and we feel it would be overly burdensome for all of

4     the reasons that I previously went into, which I'm not going to

5     go over again.  But, particularly, you know, they've had these

6     documents for months.  It's not a surprise.  You know, if they

7     see his name in there, he should have been raised earlier and

8     because he's a chief quality officer, we believe that his

9     custodial file and deposition would be protected under the Apex

10    doctrine and we would appreciate having the opportunity to file

11    a motion for a protective order on that as some of the other

12    defendants have had an opportunity to do.  So we cannot agree

13    to just produce Dr. Rao's custodian file or produce him as a

14    deponent.

15          JUDGE VANASKIE:  Ms. Goldenberg.

16          MS. GOLDENBERG:  Your Honor, yes.  I should add, I'm

17    not wedded to four custodians.  I just want the right ones.

18    And so if we find out that we need to drop someone to get Dr.

19    Rao's file, I'm not opposed to that.  But what we put in our

20    papers, you know, is that we're not even sure the other two are

21    the right people and what I just heard from Ms. Heinz is, we'll

22    get back to you but I'm still not going to answer your

23    question.

24          And so, yes, we've known about Dr. Rao, it's someone

25    that we've had flagged as someone who was maybe relevant, but,

 1   you know, we were willing to accept other names from Ms. Heinz.

 2   We cross-checked them and I just don't think that they're the

 3   right people.  And so in the absence of other information, this

 4   is the person that we think we need instead.

 5        JUDGE VANASKIE:  What about the Apex doctrine and the

 6   request of Ms. Heinz to brief that issue?

 7        MS. GOLDENBERG:  Yes, so, you know, I saw Ms. Heinz

 8   raise that issue as to two different individuals, Venkata Kota

 9   and to Dr. Rao.  Venkata Kota is a custodian that Aurobindo

10   agreed to produce the file for, and, you know, arguably -- or I

11   actually think that, you know, a chief operating officer is

12   much more of an apex witness than is a chief quality officer.

13   And so I guess I'm confused about why they're opposing the

14   custodial file.  I was going to get to the deposition issue

15   next, but I'm happy to address that now if you'd like at the

16   same time.

17        JUDGE VANASKIE:  Well, I think right now we're dealing

18   with custodial files.  I don't want to get too far down the

19   road.

20        Ms. Heinz?

21        MS. HEINZ:  I was just going to say, Your Honor, that

22   we have told the plaintiffs before that Mr. Kota is a former

23   employee.  He's no longer employed with Aurobindo.  So we have

24   no -- we're not going to produce him for a deposition.  I just

25   wanted to clarify that.

 1          JUDGE VANASKIE:  Okay.

 2          MS. GOLDENBERG:  Well, that makes it easier.  We can

 3  just notice him up as a former employee, so I think we're down

 4  to one issue.

 5          So for Dr. Rao, the Apex doctrine is here to protect

 6  witnesses who really don't know anything and who are just at

 7  the top of the company; right?  So we don't get to depose Steve

 8  Jobs if my iPhone explodes and hurts my finger; right?  But in

 9  this case, that's not who Dr. Rao is.  Dr. Rao is providing

10  direct advice to his company about what to put in FDA letters

11  or correspondence to the FDA about this contamination issue.

12  He's the one who signs off on a bunch of responses to the FDA

13  about their contamination.  And so this is not a CEO who's

14  aloof on the 51st floor of a building; this is someone who's

15  directly involved here, and the Apex doctrine, there's a wealth

16  of case law, and I actually pulled some for you that says that

17  if the witness does have direct knowledge, then the Apex

18  doctrine doesn't protect them.  And I'll refer Your Honor to

19  the *In Re:  Tylenol* case.  It's 24 --

20          JUDGE VANASKIE:  Is this -- I'm sorry to interrupt

21  you.  I don't mean to do that.  But you filed a letter brief

22  today?

23          MS. GOLDENBERG:  Yes.

24          JUDGE VANASKIE:  So is this in the letter brief you

25  filed today?

```
 1          MS. GOLDENBERG:  It's not because that was actually on
 2   a different issue.
 3          JUDGE VANASKIE:  Okay.  All right.
 4          MS. GOLDENBERG:  And I don't need to read it in the
 5   record if you don't need the case law but --
 6          JUDGE VANASKIE:  Okay.
 7          MS. GOLDENBERG:  -- I certainly have it for you.
 8          JUDGE VANASKIE:  Well, what I'm suggesting is that I
 9   need to take a look at the case law, which I haven't done yet.
10   And so I'm also influenced by the length of this call so far.
11   And I'm going to suggest that I -- when I get the transcript I
12   study this issue and take a look at the cases and make a prompt
13   determination.  It shouldn't be a difficult determination to
14   make.
15          So if you don't mind, I think I will defer on this
16   issue for now.
17          MS. GOLDENBERG:  No problem, Your Honor.
18          JUDGE VANASKIE:  It's been well presented.
19          Now, I haven't looked at the letter brief that was
20   filed today.
21          MS. HEINZ:  Your Honor, if I may.
22          JUDGE VANASKIE:  Yes.
23          MS. HEINZ:  I'm sorry to interrupt you.  I'm just a
24   little confused because we did not brief our argument on the
25   apex issue in our position statement.  We actually -- we -- you
```

1    know, this just arose for the first time last Friday.  We

2    haven't even had a chance to have a meaningful meet and confer

3    with the plaintiffs about it.  But aside from that, you know,

4    other defendants, when this similar issue arose, they had an

5    opportunity to file a brief, and we would -- we would ask for

6    the same opportunity for our clients.  We think that we should

7    have -- and it shouldn't take long, we can turn it around very

8    quickly, but we would appreciate the opportunity to submit a

9    brief on that.

10           JUDGE VANASKIE:  Well, I think you should have that

11   opportunity.  And so how much time do you want?

12           MS. HEINZ:  If Your Honor is willing to give us two

13   weeks, we would appreciate that.  I'll defer to Your Honor, if

14   that's all right.

15           MS. GOLDENBERG:  Your Honor, respectfully, we've got

16   production deadlines here.  I mean, I guess if they want two

17   weeks to brief the issue and it's not going to change their

18   production deadline, I have no problem with that; but, I mean,

19   I can have a brief ready to go by Friday.

20           JUDGE VANASKIE:  Well, are you going to do another

21   brief then, Ms. Goldenberg?

22           MS. GOLDENBERG:  So we also didn't brief this issue.

23   We actually weren't told by Aurobindo that they were opposing

24   this until I saw their agenda letter.  So I don't think this is

25   a complex issue.  It's just, are these two apex witnesses and

 1   I've got the case law pulled so I think this is no more than a,

 2   you know, three-page brief and I can have it done by Friday.

 3          JUDGE VANASKIE:  All right.  We'll take your brief by

 4   Friday and we'll provide Aurobindo until the following Friday

 5   to file a reply brief.

 6          MS. GOLDENBERG:  Just from a procedural matter, Your

 7   Honor, this is Aurobindo's motion for a protective order and

 8   because the burden is theirs, I think the first brief is

 9   theirs.

10          JUDGE VANASKIE:  Okay.  You probably are right on

11   that.

12          Well, Ms. Heinz, I can't give you two weeks.  That's

13   too long a time.

14          MS. HEINZ:  We can have a brief to Your Honor by next

15   Friday.

16          JUDGE VANASKIE:  That's a little bit longer than I'd

17   like.  I'm going to ask for a brief by next Tuesday.  All

18   right?  And then you'll have until Friday, Ms. Goldenberg,

19   based upon representations you made here --

20          MS. GOLDENBERG:  No problem, Your Honor.

21          JUDGE VANASKIE:  -- to reply promptly.

22          MS. GOLDENBERG:  All right.  We're almost to the end.

23          So we've now reached the subject of the letter briefs

24   that were filed today.  This is ToxRox and Meridan.

25          JUDGE VANASKIE:  Go ahead, Ms. Heinz, I'm going to let

1    you interrupt.

2              MS. HEINZ:  I just wanted to turn this over.

3    Actually, my colleague is going to be handling this issue,

4    Ethan Feldman.  He is on the Zoom call.  At this time I'm going

5    to turn it over to him.

6              JUDGE VANASKIE:  All right.  Very well.

7              MS. HEINZ:  Thank you, Your Honor.

8              MR. FELDMAN:  Good evening, Your Honor.

9              JUDGE VANASKIE:  Good evening.

10             Ms. Goldenberg.

11             MS. GOLDENBERG:  Sure.  So, Your Honor, these entities

12   probably sound familiar to you.  I think you started with us

13   right around the time that this third-party discovery hearing

14   happened and it may have been your first call with us, but we

15   had a long hearing with Judge Schneider about a number of

16   third-party subpoenas that the plaintiffs had served.  Two of

17   those entities are the subject of our discussion today, and

18   they are ToxRox and Meridan.  These are two independent

19   consultants that were retained by Aurobindo for the purpose of

20   responding to the FDA's 483 or -- or inspection letters that

21   were sent to Aurobindo's facilities.  And after the oral

22   argument, we had reached an agreement with Aurobindo that they

23   would be producing these documents subject only to review for

24   privilege and work product and the letter brief that I filed

25   this afternoon contained an email from Mr. Feldman saying just

1    that.  We also attached part of the transcript from the hearing

2    where he made that same offer.  And now what we're seeing is

3    that they're trying to say, no, no, no, there was some

4    different ruling about a different third-party subpoena saying

5    that draft documents don't apply and so the plaintiffs don't

6    get that.  And they are also simultaneously withholding a bunch

7    of documents based on privilege and work product that we have

8    challenged as inappropriate designations.  And the overarching

9    basis for that is that these are third-party entities and

10   they're independent third-party entities.  Their documents

11   confirm that and we filed one of those as an exhibit to our

12   brief this afternoon.

13         So they're not agents of the company.  They're not

14   there to provide legal advice for this case or any other case

15   and the responses to the 483 letters would have happened

16   regardless of whether or not this MDL showed up or not.

17         And so any claim of privilege or work product is just

18   wholly inappropriate for these entities.  And Judge Schneider

19   actually addressed this in the hearing and we attached the

20   relevant pages of that transcript for you as well because,

21   otherwise, the transcript's really long, we all sat through

22   that hearing.  But, you know, he said, look, I've already

23   written an opinion on this, it's on point.  And so I know we

24   have sent pages and pages to you on this subject but I'll say

25   Judge Schneider's ruling is the open and closed, you know,

1    dispositive ruling on this issue and there's no reason why

2    privilege or work product should apply to any one of these

3    documents.

4            JUDGE VANASKIE:  Is that the *Riddell* ruling?

5            MS. GOLDENBERG:  It is.

6            JUDGE VANASKIE:  Okay.  All right.  Mr. Feldman.

7            MR. FELDMAN:  Thank you, Your Honor.

8            First of all, I'd like to apologize to Ms. Goldenberg

9    for any appearance of a misrepresentation that may have

10   occurred.  I know we have been working together for a while.  I

11   do value the working relationship we have and it was not my

12   intention to misrepresent or even appear to misrepresent any

13   email sent by her or her colleagues.

14           Ms. Goldenberg indicated that these entities are

15   outside consultants.  This sort of relationship was examined in

16   a case which was fully briefed but, essentially, in the case

17   that was briefed, there were -- there was an FDA warning letter

18   issued.  The entity obtained outside consultants to assist it

19   in its response and the ruling in that case was that the work

20   product privilege was upheld.  It's the same thing that

21   happened in this case.

22           Aurobindo, through its counsel, obtained the services

23   of Meridan and ToxRox in response to an FDA warning letter and

24   their documents, likewise, should be protected by the work

25   product doctrine.

1       Additionally, I wanted to address an email that Ms.

2   Goldenberg referenced that was sent by me with regard to the

3   fact that a lot of these documents here are, indeed, draft

4   documents.  That email was sent after the ruling that Judge

5   Schneider issued that draft documents should not be

6   contemplated in these third-party subpoenas.  So I just wanted

7   to clarify that for the record.

8       I do have in the letter that was filed today Judge

9   Schneider's sustaining the objection to the draft documents.

10  It was in regard to a ZHP specific entity but I also wanted to

11  point out to the Court that later on in that same hearing,

12  Judge Schneider suggested that the parties should use the

13  guidance offered during that hearing to go back and narrow the

14  rest of the subpoenas.

15      So we believe that these documents are both protected

16  by the work product privilege and that since they are draft

17  documents, the Court has already issued a ruling on this and

18  they are not proper under the third-party subpoenas.

19      MS. GOLDENBERG:  Your Honor, you're on mute.

20      JUDGE VANASKIE:  You are right.  I will give you the

21  final word on this issue.

22      MS. GOLDENBERG:  Sure.  So, Your Honor, as to the

23  draft document issue, I'll point out that the reason I attached

24  the transcripts from the argument on the ToxRox and Meridan

25  issue, as well as Mr. Feldman's email, was for the very reason

1    that his first offer came before the draft document ruling ever

2    came out.  So I don't think his intention was ever to include

3    the draft document ruling, to the extent it does apply, which I

4    don't think it does, to the Aurobindo stuff.  And so, again, I

5    think this is just a last-ditch attempt to keep documents that,

6    you know, frankly, should have been turned over to us weeks ago

7    away from attorneys' eyes on the plaintiffs' side.

8         But, again, with regard to these entities, the law is

9    clear that it protects agents of companies.  It doesn't protect

10   anyone that you hire to do anything for any reason.  And the

11   documents that we sent you contain express recommendations from

12   Aurobindo that these entities are independent, that they were

13   retained to do the independent analysis that the FDA asked for.

14   And what I think is most telling is that counsel for Aurobindo

15   even dropped a footnote in their letter saying that they hadn't

16   even been hired when ToxRox and Meridan did this.  So to say

17   that this was done in preparation for litigation is just

18   disingenuous.

19        JUDGE VANASKIE:  You know, there's case law in the

20   data breach area that's been coming out dealing with the

21   question of work product protection for consultants hired to

22   examine what happened and do the analysis in connection with

23   data breach incidents, and the general tenor of those cases is

24   that the work product protection doesn't apply because they are

25   not prepared in anticipation of litigation.

*United States District Court*
*Camden, New Jersey*

1          Do you think that's a relevant area of law for me to

2    look to here, Mr. Feldman?

3          MR. FELDMAN:  Your Honor, if I may, I think that the

4    case *Todd v. STAAR Surgical* is pretty on point here.  Like I

5    said before, that deals with an FDA warning letter, that deals

6    with consultants hired and that also deals with the specific

7    work product protection.  So as a first resort, I would refer

8    Your Honor to that case.

9          JUDGE VANASKIE:  All right.

10         MR. FELDMAN:  And from there, Your Honor is, of

11   course, free to dive down that rabbit hole, if you will.

12         JUDGE VANASKIE:  Okay.  All right.

13         MR. FELDMAN:  I would also like to point out the fact

14   that just because agreements started before a court ruling

15   doesn't mean that plaintiffs should be entitled to circumvent

16   that.  And that is with regard to the fact that draft documents

17   were withheld from previous third-party subpoenas.

18         JUDGE VANASKIE:  All right.  Anything else on this

19   issue, Ms. Goldenberg?  I'm going to take it under advisement.

20         MS. GOLDENBERG:  No, but I think if you're telling me

21   the data breach cases are good for me, then, by all means,

22   please rely on them.

23         JUDGE VANASKIE:  All right.  Is there anything else?

24         MS. GOLDENBERG:  Let me just double-check.  I think --

25   dare I say we might be done?  Yes.

 1              JUDGE VANASKIE:  All right.  We are going to conclude

 2     for today, unless somebody else has something they want to

 3     raise.

 4              MS. PRISELAC:  Your Honor?

 5              JUDGE VANASKIE:  Ms. Priselac.

 6              MS. PRISELAC:  Yes, this is Jessica Priselac for ZHP

 7     entities.

 8              To the extent you are going to schedule an argument,

 9     you said probably Monday or Tuesday of next week?

10              JUDGE VANASKIE:  Yes, I was looking towards Tuesday,

11     but go ahead.

12              MS. PRISELAC:  Would it be possible to schedule it

13     before 2 p.m.?  I conferred with Mr. Goldberg and we'd both

14     like to be present and I do have a conflict at 2 p.m. on

15     Tuesday.

16              JUDGE VANASKIE:  I certainly can do that.

17              MS. PRISELAC:  Thank you.  I very much appreciate it,

18     Your Honor.

19              JUDGE VANASKIE:  Sure thing.  Thanks for letting me

20     know about the conflict.

21              All right.  I have to thank Camille for yoman's work

22     here tonight.  I mean, that's a long time for a court reporter

23     to be going.  Thank you very much.  I'm sensitive to that.  I

24     knew we were going to have a long call but I didn't think it

25     was going to be this long.

1          But thank you all very much.  We'll get the

2     transcript.  I will be issuing some orders based upon things I

3     ordered here today.  I will get out an order that schedules

4     oral argument, Ms. Priselac, for next Tuesday and it will be

5     suitably in advance of 2:00.  All right?

6          I think we're adjourned.  Thank you all very much.

7          (The proceedings concluded at 6:24 p.m.)

8

9

10          - - - - - - - - - - - - - - - - -

11

12          I certify that the foregoing is a correct transcript

13     from the record of proceedings in the above-entitled matter.

14

15     /S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR
        Court Reporter/Transcriber

16

17     03/12/2021
            Date

18

19

20

21

22

23

24

25

## /

/S [1] - 98:15

## 0

**000** [2] - 33:23, 34:22
**03/12/2021** [1] - 98:17
**07068** [1] - 1:14
**08101** [1] - 1:8
**08540** [1] - 2:23

## 1

**1** [1] - 58:25
**10** [2] - 1:8, 48:16
**103** [1] - 1:13
**10th** [1] - 51:12
**11** [2] - 74:4, 75:11
**12** [5] - 44:3, 49:18, 50:4, 53:16, 67:15
**12th** [1] - 73:18
**15** [3] - 44:19, 44:21, 48:16
**15219** [1] - 2:11
**15th** [1] - 11:21
**16** [1] - 60:3
**16th** [5] - 11:21, 58:9, 62:25, 68:20, 69:1
**17th** [1] - 2:6
**18** [3] - 71:20, 77:19, 79:14
**1813***218** [1] - 21:12
**1835** [1] - 1:17
**18th** [2] - 6:20, 37:20
**19-md-02875-RBK-JS** [1] - 1:4
**19103** [2] - 1:17, 2:7
**19422** [1] - 2:19
**1:16** [1] - 26:19
**1st** [4] - 58:23, 59:2, 73:19, 73:22

## 2

**2** [3] - 53:18, 97:13, 97:14
**20** [1] - 33:23, 37:10
**20,000** [5] - 26:22, 28:8, 31:17, 32:10, 33:11
**2018** [2] - 30:15, 48:16
**2019** [5] - 6:17, 6:18, 6:21, 30:14, 48:16
**2020** [2] - 48:17, 51:12
**2021** [2] - 1:8, 51:12
**2029** [1] - 3:6
**21** [1] - 2:23
**2150** [1] - 1:20
**22** [2] - 58:21, 83:2
**2290** [1] - 6:18
**24** [1] - 87:19

**24th** [1] - 15:23
**250,000** [1] - 41:24
**2500** [1] - 2:14
**25th** [1] - 37:20
**26** [1] - 36:4
**27** [2] - 44:11, 49:19
**27th** [1] - 53:24
**28** [2] - 44:11, 49:19
**2800** [1] - 3:3
**28th** [1] - 48:17
**2900** [1] - 1:17
**2:00** [1] - 98:5

## 3

**3** [1] - 37:19
**30** [5] - 2:6, 51:19, 51:20, 52:19, 53:24
**30(b)(6** [10] - 26:15, 28:5, 28:7, 33:9, 35:7, 39:9, 39:14, 39:15, 39:20, 44:17
**300** [1] - 3:6
**30305** [2] - 2:15
**3333** [1] - 2:14
**34** [4] - 51:20, 78:10, 78:15, 78:20
**35,000** [4] - 26:20, 33:11, 37:10, 39:11
**38th** [1] - 2:11

## 4

**4** [1] - 34:22
**4,000** [7] - 27:8, 27:25, 33:24, 34:7, 34:13, 39:3, 44:20
**4,100** [4] - 37:16, 44:3, 45:1, 45:20
**4,199** [3] - 35:18, 44:6, 44:21
**4,200** [5] - 34:16, 35:25, 41:2, 49:21, 49:22
**450** [1] - 2:19
**45202** [1] - 3:3
**483** [3] - 83:22, 91:20, 92:15
**4:00** [2] - 1:9, 4:2
**4th** [1] - 1:7

## 5

**5** [1] - 29:5
**50** [2] - 28:6, 44:17
**51st** [1] - 87:14
**55402** [1] - 1:20

## 6

**60** [3] - 32:25, 39:11, 58:23

**600** [1] - 3:3
**609-774-1494** [1] - 1:23
**6:24** [1] - 98:7

## 7

**7** [10] - 42:25, 43:4, 43:9, 45:24, 46:18, 47:8, 48:13, 48:17, 48:24, 49:16
**701** [1] - 2:3
**70130** [1] - 2:3

## 8

**8** [9] - 40:2, 42:23, 43:1, 43:3, 46:11, 48:1, 48:12, 48:17, 49:1
**800** [1] - 1:20
**8:30** [1] - 17:10
**8th** [4] - 51:11, 51:18, 62:5, 62:21

## 9

**90067** [1] - 3:7
**91** [3] - 4:18, 8:16
**9th** [1] - 72:21

## A

**abeyance** [1] - 19:17
**ability** [3] - 32:4, 42:6, 44:1
**able** [16] - 5:18, 9:18, 16:10, 20:15, 21:2, 31:22, 49:7, 50:17, 68:21, 71:24, 72:2, 72:9, 73:16, 73:17, 74:17, 83:3
**above-entitled** [1] - 98:13
**ABRAHAM** [5] - 2:22, 17:1, 17:9, 17:14, 17:16
**Abraham** [2] - 17:12, 17:14
**absence** [2] - 21:20, 86:3
**absolutely** [2] - 16:21, 20:25
**abundant** [1] - 33:4
**abundantly** [1] - 47:17
**accept** [6] - 22:24, 23:5, 23:12, 24:19, 25:9, 86:1
**acceptable** [2] - 50:10, 50:11
**accessible** [1] - 80:9
**accommodating** [1] -

71:24
**accomplish** [1] - 50:13
**accordance** [1] - 40:13
**according** [1] - 26:10
**accurate** [2] - 29:8, 68:1
**accused** [1] - 63:3
**acknowledged** [1] - 31:10
**Actavis** [2] - 2:16, 2:16
**ACTION** [1] - 1:3
**active** [2] - 46:5, 56:7
**actual** [4] - 33:12, 52:8, 53:4, 56:1
**ad** [1] - 63:8
**ADAM** [1] - 1:13
**Adam** [2] - 18:12, 18:15
**add** [7] - 24:9, 55:21, 59:11, 59:15, 61:12, 82:24, 85:16
**adding** [1] - 85:2
**addition** [1] - 83:21
**additional** [11] - 16:7, 44:24, 55:21, 58:22, 58:24, 63:7, 73:23, 81:11, 82:4, 83:21
**additionally** [1] - 94:1
**address** [13] - 4:6, 4:7, 7:11, 21:18, 23:19, 23:22, 26:10, 45:23, 50:7, 70:3, 70:17, 86:15, 94:1
**addressed** [6] - 8:23, 15:25, 23:11, 23:17, 83:12, 92:19
**addressing** [4] - 6:4, 15:23, 20:17, 53:10
**adequacy** [1] - 13:5
**adequate** [4] - 9:14, 11:17, 13:5, 14:10
**adhering** [1] - 57:24
**adjourned** [1] - 98:6
**admitted** [1] - 10:6
**admittedly** [1] - 28:2
**adopt** [1] - 72:25
**advance** [1] - 98:5
**adverse** [2] - 80:10, 81:13
**advice** [2] - 87:10, 92:14
**advisement** [1] - 96:19
**Aerospatiale** [4] - 8:7, 12:11, 13:15, 13:20
**afford** [1] - 16:3
**afternoon** [18] - 6:7,

6:8, 15:19, 15:21, 20:19, 23:1, 25:15, 28:14, 28:15, 31:24, 31:25, 51:7, 55:17, 71:10, 73:6, 73:7, 91:25, 92:12
**agency** [1] - 4:25
**agenda** [12] - 17:22, 19:14, 20:10, 22:20, 71:14, 71:16, 72:23, 73:1, 77:11, 77:19, 83:7, 89:24
**agents** [2] - 92:13, 95:9
**ago** [6] - 42:10, 46:23, 47:16, 56:16, 57:1, 95:6
**agree** [11] - 11:3, 38:10, 38:12, 43:16, 61:15, 68:13, 68:16, 69:20, 74:17, 75:24, 85:12
**agreeable** [1] - 83:25
**agreed** [6] - 21:3, 56:9, 57:21, 68:17, 71:2, 86:10
**agreed-upon** [1] - 68:17
**agreement** [12] - 21:7, 29:14, 38:13, 63:17, 64:1, 65:11, 65:13, 69:3, 71:1, 73:18, 74:24, 91:22
**agreements** [4] - 64:20, 65:8, 65:10, 96:14
**ahead** [8] - 10:12, 12:3, 25:11, 61:14, 79:23, 90:25, 97:11
**aided** [1] - 1:25
**akin** [1] - 7:3
**alexander** [1] - 20:19
**ALEXANDRA** [1] - 2:13
**Alexandra** [1] - 70:19
**ALFANO** [1] - 2:9
**alike** [1] - 47:20
**allegations** [1] - 24:9
**alleged** [1] - 4:8
**almost** [4] - 22:22, 28:9, 78:22, 90:22
**alone** [2] - 63:4, 64:23
**aloof** [1] - 87:14
**ALSO** [1] - 3:11
**alter** [1] - 53:16
**alternative** [1] - 15:11
**amend** [10] - 53:23, 54:7, 54:17, 55:8, 57:8, 62:3, 62:9, 62:19, 64:1, 67:12

*amended* [8] - 24:8,
52:16, 52:19, 52:20,
53:22, 54:1, 54:12,
54:16
*ament* [1] - 63:22
*AmerisourceBergen*
[1] - 3:4
*amount* [5] - 12:5,
39:13, 45:1, 60:7,
75:2
*analogy* [1] - 9:3
*analyses* [1] - 47:25
*analysis* [11] - 5:3,
5:4, 10:23, 13:20,
13:21, 13:22, 27:14,
48:3, 81:13, 95:13,
95:22
*ancient* [2] - 28:20,
40:3
*ANGELES* [1] - 3:7
*answer* [8] - 31:20,
31:22, 33:21, 58:9,
59:18, 63:13, 65:25,
85:22
*answering* [2] - 52:9,
53:6
*answers* [1] - 67:7
*anticipate* [3] - 16:14,
25:4, 80:22
*anticipation* [1] -
95:25
*anyway* [3] - 5:24,
31:10, 32:24
*apex* [3] - 86:12,
88:25, 89:25
*Apex* [5] - 85:9, 86:5,
87:5, 87:15, 87:17
*API* [5] - 27:18, 46:5,
46:11, 46:19, 48:2
*apologies* [1] - 59:7
*apologize* [6] - 19:9,
21:25, 45:9, 66:18,
69:6, 93:8
*appear* [2] - 77:19,
93:12
*appearance* [1] - 93:9
*appeared* [1] - 10:6
*appearing* [1] - 18:1
*apple* [2] - 33:7, 35:10
*applicability* [1] - 12:7
*applied* [1] - 7:19
*apply* [4] - 92:5, 93:2,
95:3, 95:24
*appreciate* [9] - 17:1,
36:13, 71:11, 74:15,
75:21, 85:10, 89:8,
89:13, 97:17
*apprehended* [2] -
20:20, 21:1
*approach* [5] - 32:18,

32:20, 39:5, 41:7,
41:17
*approached* [1] -
10:20
*approaching* [2] -
9:24, 10:3
*appropriate* [5] - 41:7,
82:5, 83:6, 84:8,
84:15
*appropriately* [1] -
32:17
*April* [4] - 58:23,
72:21, 73:19, 73:22
*area* [2] - 95:20, 96:1
*areas* [1] - 68:21
*arguably* [3] - 5:21,
26:10, 86:10
*argue* [3] - 31:10,
52:21, 58:25
*arguing* [1] - 66:25
*argument* [17] - 5:23,
6:25, 7:24, 11:20,
13:1, 13:25, 14:6,
36:8, 39:2, 41:15,
58:11, 62:14, 88:24,
91:22, 94:24, 97:8,
98:4
*argument's* [1] - 23:20
*arguments* [1] - 14:2
*arose* [3] - 42:9, 89:1,
89:4
*Ashok* [2] - 83:2, 83:6
*aside* [3] - 40:15,
41:16, 89:3
*asserted* [1] - 5:2
*assess* [1] - 40:19
*assessments* [4] -
30:16, 30:18, 30:19,
30:22
*assigned* [1] - 21:25
*assist* [1] - 93:18
*assistance* [1] - 83:20
*assurance* [3] - 26:17,
33:9, 83:19
*assure* [1] - 75:19
*astonishing* [2] -
26:21, 26:22
*Atlanta* [1] - 2:15
*attach* [1] - 30:18
*attached* [9] - 7:12,
29:16, 56:17, 57:2,
63:11, 69:13, 92:1,
92:19, 94:23
*attachments* [4] -
30:4, 34:4, 42:20,
49:6
*attempt* [6] - 29:7,
40:7, 62:8, 67:22,
76:3, 95:5
*attempted* [1] - 76:17

*attends* [1] - 11:15
*attention* [4] - 6:16,
22:8, 28:17, 43:14
*Attorney* [1] - 2:24
*attorneys* [1] - 73:13
*attorneys'* [1] - 95:7
*audited* [1] - 77:14
*Aurobindo* [26] - 2:20,
25:14, 25:22, 26:2,
72:13, 73:1, 73:8,
77:11, 77:16, 78:7,
78:19, 81:8, 82:12,
84:18, 84:22, 84:25,
86:9, 86:23, 89:23,
90:4, 91:19, 91:22,
93:22, 95:4, 95:12,
95:14
*Aurobindo's* [2] -
90:7, 91:21
*Aurolife* [1] - 2:20
*authority* [1] - 25:10
*Avenue* [1] - 1:20
*avoid* [5] - 13:13, 35:9,
41:20, 43:21, 43:22
*aware* [2] - 5:13, 39:7
*awkward* [1] - 61:5

### B

*Bach* [2] - 20:20,
70:19
*BACH* [1] - 2:13
*background* [3] -
27:13, 27:24, 75:3
*barn* [1] - 35:8
*BARNES* [1] - 3:5
*based* [9] - 4:21, 14:6,
29:4, 74:1, 78:6,
84:10, 90:19, 92:7,
98:2
*basis* [10] - 4:20, 6:14,
20:16, 25:3, 26:23,
49:25, 67:19, 82:8,
82:19, 92:9
*Bates* [5] - 31:19,
32:4, 49:22, 50:19,
50:22
*baton* [1] - 24:1
*become* [1] - 31:5
*begin* [4] - 26:14,
59:2, 63:13, 71:23
*behalf* [14] - 6:5,
15:18, 15:20, 18:1,
18:4, 19:12, 21:18,
22:15, 23:2, 23:22,
24:23, 47:3, 53:11,
53:13
*behind* [1] - 80:20
*believes* [1] - 79:10
*Bell* [1] - 2:19
*bellwether* [20] - 20:13,

70:17
*Bellwether* [1] - 70:23
*belong* [1] - 38:2
*belonging* [1] - 38:3
*BERNE* [1] - 3:2
*best* [3] - 33:16, 44:23,
78:7
*better* [3] - 31:14,
35:11, 55:14
*between* [9] - 4:5,
33:22, 33:23, 42:19,
44:19, 48:24, 52:12,
63:18, 77:10
*beyond* [1] - 35:24
*big* [2] - 72:19, 76:7
*bigger* [1] - 61:16
*bit* [6] - 27:13, 47:25,
73:2, 74:16, 77:9,
90:16
*bite* [2] - 33:7, 35:10
*blocking* [1] - 8:10
*Blue* [1] - 2:19
*BONNER* [8] - 2:6,
17:25, 18:3, 18:16,
18:24, 19:12, 19:24,
20:4
*Bonner* [4] - 18:1,
18:4, 19:11, 19:21
*BOSICK* [1] - 2:9
*bottom* [4] - 4:18,
44:11, 49:19, 53:15
*bottom-line* [1] - 4:18
*boy* [1] - 70:10
*breach* [3] - 95:20,
95:23, 96:21
*break* [2] - 24:10,
70:13
*breaking* [1] - 45:9
*brief* [22] - 4:17, 8:23,
58:25, 86:6, 87:21,
87:24, 88:19, 88:24,
89:5, 89:9, 89:17,
89:19, 89:21, 89:22,
90:2, 90:3, 90:5,
90:8, 90:14, 90:17,
91:24, 92:12
*briefed* [4] - 14:4,
19:19, 93:16, 93:17
*briefing* [4] - 8:22,
12:24, 13:15, 79:20
*briefly* [1] - 8:15
*briefs* [1] - 90:23
*bring* [2] - 28:4, 83:23
*broad* [2] - 62:20,
65:17
*broader* [1] - 79:2
*broke* [2] - 59:6, 68:4
*brought* [5] - 6:16,
28:17, 28:21, 40:4
*Building* [1] - 1:7

*building* [1] - 87:14
*bunch* [4] - 60:24,
62:4, 87:12, 92:6
*burden* [7] - 5:1,
35:23, 38:18, 39:2,
41:2, 82:12, 90:8
*burdensome* [6] -
36:3, 79:12, 79:21,
81:1, 81:2, 85:3
*burner* [1] - 22:2
*button* [1] - 37:14
*BY* [10] - 1:13, 1:16,
1:19, 2:2, 2:5, 2:10,
2:13, 2:18, 3:2, 3:5

### C

*cabinet* [1] - 80:20
*cabinets* [1] - 78:25
*cache* [1] - 45:1
*CALIFORNIA* [1] - 3:7
*Camden* [1] - 1:8
*camera* [3] - 45:6,
45:13, 49:20
*Camille* [4] - 1:22,
70:11, 97:21, 98:15
*camillepedano@*
*gmail.com* [1] - 1:23
*CAMP* [1] - 2:3
*candidly* [4] - 54:5,
60:3, 72:11, 83:10
*cannot* [3] - 14:8,
66:12, 85:12
*captured* [1] - 59:17
*care* [4] - 7:19, 46:16,
46:17, 48:13
*case* [59] - 5:14, 8:7,
8:18, 12:5, 13:19,
21:4, 24:5, 24:7,
24:19, 27:12, 27:14,
27:18, 27:19, 29:13,
31:3, 32:24, 34:10,
34:21, 37:7, 39:19,
40:22, 42:20, 43:6,
46:4, 47:1, 48:20,
52:4, 53:9, 53:17,
53:18, 53:19, 53:22,
54:5, 54:24, 60:18,
61:10, 61:21, 63:23,
63:24, 64:14, 67:25,
68:12, 68:23, 87:9,
87:16, 87:19, 88:5,
88:9, 90:1, 92:14,
93:16, 93:19, 93:21,
95:19, 96:4, 96:8
*case-specific* [1] -
21:4
*cases* [5] - 12:6, 21:5,
88:12, 95:23, 96:21
*categories* [1] - 65:23
*caught* [1] - 72:8

*cautionary* [1] - 17:20
*cc* [1] - 50:9
*CCR* [1] - 98:15
*central* [1] - 80:8
*centrally* [1] - 65:23
*Centre* [1] - 2:11
*CENTURY* [1] - 3:6
*CEO* [1] - 87:13
*certain* [1] - 72:22
*certainly* [26] - 17:10,
23:13, 23:18, 25:4,
28:9, 31:9, 32:12,
34:12, 36:13, 37:17,
45:15, 54:12, 59:12,
62:20, 66:3, 67:14,
67:17, 76:9, 76:13,
76:15, 76:16, 79:2,
88:7, 97:16
*certificates* [1] - 81:13
*certify* [1] - 98:12
*cGMP* [1] - 14:23
*chain* [2] - 66:11,
69:25
*challenge* [1] - 7:6
*challenged* [1] - 92:8
*challenging* [1] -
12:19
*chance* [3] - 5:10,
83:4, 89:2
*change* [3] - 23:18,
31:4, 89:17
*changing* [1] - 23:7
*characterization* [1] -
28:19
*charge* [1] - 26:16
*charts* [5] - 63:14,
63:15, 65:24, 66:8,
66:13
*check* [1] - 96:24
*checked* [2] - 76:6,
86:2
*chemical* [2] - 27:17,
48:8
*chew* [1] - 11:18
*chief* [4] - 84:24, 85:8,
86:11, 86:12
*China* [3] - 4:25, 6:15,
10:3
*Chinese* [10] - 6:14,
7:19, 7:20, 8:3, 9:25,
10:20, 11:1, 12:7,
12:13, 12:22
*CINCINNATI* [1] - 3:3
*CIPRIANI* [1] - 2:17
*circle* [1] - 22:2
*circumvent* [1] - 96:15
*cited* [3] - 5:22, 6:11,
8:8
*Civil* [2] - 30:25, 39:3
*civil* [1] - 8:18

*CIVIL* [1] - 1:3
*claim* [2] - 53:22,
92:17
*claimed* [1] - 43:18
*claiming* [3] - 6:22,
13:12, 13:13
*claims* [20] - 23:14,
23:16, 29:20, 54:18,
54:23, 57:10, 57:15,
61:21, 61:22, 61:24,
62:4, 62:6, 62:20,
63:7, 63:21, 63:22,
63:25, 64:5, 68:12,
68:14
*clarification* [2] -
57:20, 57:22
*clarify* [2] - 86:25,
94:7
*clarithromycin* [1] -
30:7
*class* [1] - 64:25
*clause* [1] - 65:11
*claw* [2] - 42:6, 44:1
*clear* [8] - 9:11, 13:19,
19:15, 46:3, 47:17,
66:7, 84:1, 95:9
*clearly* [1] - 26:13
*CLEM* [1] - 2:10
*Clem* [1] - 28:13
*Clerk* [1] - 3:12
*clicked* [1] - 18:8
*client* [9] - 8:18, 10:24,
36:15, 53:17, 66:10,
67:23, 72:7, 76:13,
79:13
*client's* [1] - 41:23
*clients* [4] - 10:19,
10:23, 63:24, 89:6
*clock* [1] - 81:25
*close* [1] - 25:22
*closed* [1] - 92:25
*closely* [1] - 60:6
*CMC* [1] - 53:3
*CMO* [1] - 58:21
*Cohen* [1] - 1:7
*cohorts* [1] - 58:3
*colleague* [2] - 55:18,
91:3
*colleagues* [1] - 93:13
*collecting* [1] - 72:1
*collection* [1] - 37:2
*combination* [1] -
77:10
*comfort* [1] - 78:16
*comfortable* [1] -
37:15
*coming* [5] - 18:9,
21:12, 62:1, 84:23,
95:20
*comity* [1] - 8:22

*commence* [2] -
58:23, 58:25
*Commencing* [1] - 1:9
*commend* [1] - 34:11
*comment* [1] - 9:14
*comments* [1] - 66:22
*Committee* [1] - 50:10
*common* [1] - 69:24
*communicate* [1] -
58:5
*communication* [1] -
69:10
*communications* [9] -
5:14, 43:20, 46:3,
46:11, 46:13, 46:18,
47:7, 63:18, 63:19
*companies* [3] -
42:19, 80:8, 95:9
*company* [4] - 48:24,
87:7, 87:10, 92:13
*competent* [1] - 5:23
*complained* [2] - 7:10
*complaint* [7] - 25:5,
54:2, 54:14, 62:3,
62:9, 64:1, 67:13
*complaints* [16] -
22:21, 24:8, 24:10,
25:1, 51:16, 52:16,
52:19, 52:21, 53:22,
53:23, 54:7, 54:12,
54:17, 55:9, 62:19,
81:13
*complete* [5] - 13:20,
28:23, 47:13, 68:17,
72:21
*completed* [3] - 7:6,
26:18, 56:5
*completely* [2] -
60:23, 65:2
*complex* [1] - 89:25
*complicated* [1] - 80:4
*complied* [1] - 46:16
*comply* [4] - 23:13,
25:2, 45:15, 73:11
*compromise* [1] - 16:5
*computer* [1] - 1:25,
56:24, 75:5, 80:19
*computer-aided* [1] -
1:25
*concedes* [1] - 63:24
*concern* [3] - 28:2,
29:19, 41:14
*concerned* [8] - 5:20,
11:13, 11:14, 14:5,
14:21, 41:19, 62:13,
83:11
*concerning* [2] - 5:17,
42:22
*concerns* [1] - 51:5
*conclude* [2] - 19:2,

97:1
*concluded* [1] - 98:7
*conclusion* [1] - 34:25
*concrete* [2] - 77:18,
82:17
*confer* [29] - 7:15, 8:4,
8:6, 8:12, 9:10, 9:12,
11:5, 11:12, 11:15,
11:16, 11:17, 11:23,
15:8, 16:4, 29:2,
56:12, 57:24, 63:8,
63:13, 67:3, 68:16,
68:20, 69:2, 71:3,
71:25, 73:16, 74:23,
79:11, 89:2
*CONFERENCE* [1] -
1:5
*conference* [8] - 6:24,
7:1, 11:19, 15:22,
25:24, 67:1, 73:25,
84:5
*conferences* [1] -
77:15
*conferred* [5] - 21:2,
63:9, 67:2, 70:22,
97:13
*conferring* [3] - 58:1,
71:1, 84:21
*confers* [5] - 9:8, 35:4,
55:6, 56:15, 78:11
*confidence* [1] - 32:16
*confident* [1] - 67:12
*confidential* [1] -
19:23
*confidentiality* [3] -
4:10, 17:20, 19:13
*confirm* [3] - 79:25,
83:8, 92:11
*confirmation* [1] -
80:2
*confirmed* [4] - 22:16,
37:13, 42:7, 75:2
*conflict* [2] - 97:14,
97:20
*confused* [2] - 86:13,
88:24
*CONLEE* [1] - 2:2
*Conlee* [1] - 18:14
*connected* [2] - 48:18,
49:1
*connecting* [1] - 25:18
*connection* [3] - 18:7,
48:21, 95:22
*connectivity* [1] - 49:3
*consider* [2] - 21:7,
31:13
*consistent* [1] - 24:18
*constructive* [3] -
52:8, 56:1, 60:4
*consult* [1] - 8:9

*consultants* [5] -
91:19, 93:15, 93:18,
95:21, 96:6
*contacted* [1] - 16:6
*contain* [1] - 95:11
*contained* [1] - 91:25
*containing* [1] - 46:15
*contains* [1] - 50:19
*contamination* [2] -
87:11, 87:13
*contemplate* [1] - 60:2
*contemplated* [1] -
94:6
*contents* [1] - 60:10
*continue* [8] - 16:4,
16:5, 25:6, 26:17,
56:9, 71:1, 75:23,
79:10
*continued* [4] - 37:19,
56:3, 58:23, 71:22
*Continued* [2] - 2:1,
3:1
*continues* [1] - 56:6
*continuing* [4] - 16:14,
16:19, 25:1, 56:3
*contracts* [2] - 81:10,
81:11
*contradicts* [1] - 6:25
*contrary* [1] - 47:11
*control* [3] - 11:1, 74:8
*convenience* [1] -
24:11
*convenient* [1] - 24:12
*Convention* [1] -
22:25
*conversation* [2] -
12:11, 67:10
*Cooper* [1] - 1:7
*cooperate* [1] - 16:14
*cooperating* [1] -
16:11
*cooperatively* [1] -
27:4
*copies* [3] - 72:14,
72:15, 81:19
*copy* [1] - 11:9
*core* [4] - 5:13, 31:6,
42:18, 43:19
*corporate* [3] - 26:16,
37:4, 39:9
*corporation* [1] - 36:5
*correct* [12] - 4:16,
19:24, 22:9, 22:13,
22:16, 22:22, 23:4,
47:13, 48:1, 58:18,
82:23, 98:12
*correctly* [2] - 20:21,
21:1
*correspondence* [8] -
29:3, 42:19, 42:21,

43:9, 48:23, 49:5,
60:8, 87:11
**cost** [1] - 41:25
**costs** [2] - 41:19,
41:23
**counsel** [9] - 14:19,
15:2, 16:6, 20:20,
56:16, 57:1, 70:20,
93:22, 95:14
**country** [3] - 12:17,
64:13, 66:12
**couple** [3] - 9:17,
24:17, 51:12
**course** [3] - 23:11,
75:8, 96:11
**Court** [48] - 1:22, 6:17,
8:2, 8:7, 8:9, 8:21,
13:19, 15:6, 19:18,
21:7, 22:6, 23:19,
24:13, 27:7, 27:23,
28:4, 30:10, 33:18,
34:7, 34:12, 35:13,
36:24, 37:15, 37:21,
37:22, 38:21, 39:15,
40:14, 43:16, 44:5,
44:24, 45:6, 45:13,
46:2, 48:14, 48:15,
49:3, 49:7, 55:24,
59:1, 72:25, 74:23,
76:21, 94:11, 94:17,
98:15
**COURT** [10] - 1:1,
20:22, 45:8, 45:11,
59:5, 59:9, 61:22,
68:3, 70:12, 70:14
**court** [10] - 6:11, 8:11,
38:12, 38:13, 38:17,
47:4, 47:5, 47:11,
96:14, 97:22
**Court's** [11] - 23:10,
28:17, 41:12, 45:21,
61:6, 67:15, 73:10,
73:12, 76:22, 84:6,
84:16
**Courthouse** [1] - 1:7
**Courtroom** [1] - 3:13
**courtroom** [1] - 83:23
**cover** [1] - 78:9
**covering** [2] - 25:20,
28:7
**CRC** [1] - 98:15
**creation** [1] - 48:4
**cries** [1] - 43:14
**criminal** [1] - 8:19
**critical** [2] - 77:22,
78:2
**cross** [4] - 34:14,
42:3, 44:25, 86:2
**cross-checked** [1] -
86:2

**cross-examine** [1] -
42:3
**cross-sample** [1] -
34:14
**cross-sampling** [1] -
44:25
**crossed** [1] - 60:23
**CRR** [1] - 98:15
**crystal** [1] - 46:3
**crystalize** [1] - 51:10
**culled** [1] - 45:21
**culprit** [1] - 58:10
**cumbersome** [1] -
40:24
**curiosity** [1] - 38:18
**curious** [5] - 31:4,
36:11, 36:13, 39:4,
41:12
**cushion** [1] - 73:2
**custodial** [30] - 28:24,
29:1, 29:24, 37:1,
38:1, 38:3, 39:8,
40:5, 60:19, 72:2,
72:4, 73:14, 73:24,
74:4, 75:12, 77:16,
78:3, 78:12, 78:23,
79:1, 79:8, 79:14,
80:16, 81:4, 82:2,
84:8, 84:17, 85:9,
86:14, 86:18
**custodian** [10] - 39:8,
78:1, 78:22, 80:18,
82:25, 83:6, 83:21,
85:2, 85:13, 86:9
**custodians** [11] -
36:25, 38:8, 39:12,
42:11, 74:1, 82:22,
83:1, 84:7, 84:11,
84:22, 85:17
**customers** [2] - 81:10,
81:11
**Customs** [6] - 72:8,
74:7, 74:19, 75:1,
76:10, 77:1
**cut** [2] - 28:25, 64:4
**cuts** [1] - 38:18
**CVS** [3] - 3:7, 66:10,
66:13

## D

**dare** [2] - 28:7, 96:25
**dark** [1] - 71:17
**data** [14] - 72:15,
74:10, 74:11, 75:2,
75:9, 78:19, 78:21,
80:1, 80:9, 80:17,
95:20, 95:23, 96:21
**database** [2] - 80:10,
83:5
**databases** [1] - 80:6

**Date** [1] - 98:17
**date** [5] - 60:13, 74:18,
75:24, 77:25, 83:16
**David** [3] - 23:25,
51:7, 69:5
**DAVID** [1] - 1:16
**days** [10] - 9:17,
26:17, 26:18, 28:5,
32:25, 51:20, 52:18,
52:19, 53:25, 58:24
**deadline** [7] - 53:24,
57:8, 58:23, 59:2,
75:9, 84:20, 89:18
**deadlines** [6] - 19:16,
72:3, 72:10, 74:16,
79:20, 89:16
**deal** [2] - 20:12, 76:7
**dealing** [6] - 29:21,
49:15, 65:20, 77:23,
86:17, 95:20
**deals** [3] - 96:5, 96:6
**death** [1] - 9:8
**December** [10] - 6:20,
6:24, 29:2, 48:16,
51:11, 51:18, 52:12,
58:19, 62:5, 62:21
**decide** [6] - 11:23,
12:1, 14:9, 53:4,
53:5, 55:8
**decided** [4] - 5:12,
67:20, 72:6, 72:7
**deciding** [1] - 13:19
**decision** [4] - 14:6,
14:8, 19:18, 32:23
**decisional** [1] - 37:11
**decisions** [1] - 40:9
**declaration** [5] -
12:15, 12:19, 14:9,
64:10
**declarations** [3] -
12:7, 12:21, 64:14
**declining** [2] - 22:24,
23:5
**deemed** [1] - 77:22
**defence** [1] - 21:22
**Defendant** [2] - 2:12
**defendant** [11] -
22:23, 24:6, 24:13,
25:20, 25:25, 36:5,
39:6, 40:16, 46:25,
63:18, 80:12
**defendant's** [1] - 75:8
**defendant-specific**
[1] - 25:20
**defendants** [34] - 6:7,
6:19, 20:15, 21:16,
23:3, 28:14, 33:4,
33:13, 46:5, 47:20,
51:13, 52:1, 52:4,
52:14, 52:15, 53:2,

53:11, 54:10, 54:19,
55:18, 55:20, 57:10,
58:24, 59:25, 64:18,
67:13, 68:7, 70:18,
71:24, 73:9, 80:23,
85:12, 89:4
**Defendants** [7] - 2:7,
2:15, 2:20, 2:24, 3:4,
3:7, 70:24
**defendants'** [2] -
47:25, 55:6
**defense** [6] - 9:9,
20:17, 23:3, 56:17,
59:20, 68:13
**defenses** [1] - 29:20
**defer** [2] - 50:12,
88:15, 89:13
**deferred** [1] - 19:16
**deficiencies** [2] - 4:8,
7:11
**deficiency** [1] - 79:9
**definitely** [2] - 14:24,
76:19
**definitive** [1] - 15:7
**degree** [1] - 49:25
**delay** [5] - 11:15,
11:22, 14:5, 24:17,
41:20
**deponent** [2] - 28:5,
85:14
**depose** [4] - 14:22,
38:4, 38:8, 87:7
**deposing** [2] - 14:22
**deposition** [17] - 4:12,
14:25, 17:5, 17:24,
19:8, 26:15, 32:25,
33:9, 35:7, 37:19,
39:20, 44:17, 53:1,
85:9, 86:14, 86:24
**depositions** [13] -
10:14, 15:1, 16:2,
17:2, 19:22, 29:6,
33:20, 38:6, 72:25,
76:24, 79:16, 79:23,
81:25
**Deputy** [1] - 3:13
**described** [1] - 26:20
**description** [1] - 5:3
**descriptions** [5] -
4:22, 74:2, 84:6,
84:9, 84:13
**designated** [1] - 10:7
**designation** [1] -
32:14
**designations** [1] -
92:8
**designee** [1] - 39:10
**desk** [1] - 80:21
**despite** [1] - 33:22
**detail** [1] - 5:4

**detailed** [1] - 7:13
**details** [1] - 57:2
**determination** [8] -
7:17, 31:1, 31:16,
40:19, 40:22, 44:13,
88:13
**determinations** [2] -
12:14, 40:11
**determine** [7] - 8:10,
16:23, 16:24, 32:13,
33:15, 43:17, 49:25
**determined** [1] - 32:17
**determines** [1] - 35:14
**devote** [1] - 82:1
**devoted** [1] - 79:17
**DFS** [2] - 56:6, 67:24
**dicker** [1] - 52:7
**difference** [2] - 12:16,
44:19
**different** [17] - 8:8,
13:11, 13:21, 23:14,
23:15, 39:12, 42:15,
48:1, 48:4, 57:25,
63:12, 76:6, 86:8,
88:2, 92:4
**difficult** [3] - 68:13,
74:14, 88:13
**dilemma** [1] - 33:8
**diligently** [1] - 75:20
**direct** [5] - 6:18, 44:6,
68:25, 87:10, 87:17
**directed** [2] - 11:11,
24:19
**directive** [2] - 45:16,
45:21
**directly** [7] - 6:25,
27:12, 34:9, 37:17,
52:6, 87:15
**dirt** [1] - 10:12
**disagree** [3] - 42:18,
52:1, 56:10
**disagreed** [1] - 63:2
**disappointed** [1] -
82:6
**disclose** [1] - 74:1
**disclosed** [1] - 84:15
**discover** [1] - 48:6
**discoverable** [2] -
38:20, 69:3
**discovered** [2] - 48:3,
48:10
**Discovery** [5] - 6:24,
30:9, 31:7, 46:9,
70:23
**discovery** [89] - 4:9,
5:13, 20:13, 20:15,
21:3, 21:4, 24:15,
25:2, 25:6, 25:20,
25:25, 26:4, 29:13,
31:2, 31:6, 32:25,

36:10, 36:17, 40:13,
40:17, 43:10, 43:19,
46:2, 46:21, 46:22,
46:25, 47:13, 48:6,
51:6, 51:11, 51:15,
51:16, 52:3, 52:4,
52:9, 53:9, 53:21,
54:4, 54:5, 54:22,
55:20, 56:1, 56:4,
56:5, 56:7, 57:5,
57:19, 57:21, 58:5,
58:19, 58:21, 58:22,
58:24, 59:23, 60:9,
60:13, 60:14, 60:15,
60:19, 61:20, 61:21,
62:5, 62:23, 63:7,
67:23, 67:25, 68:6,
68:10, 68:15, 68:18,
68:22, 68:24, 70:17,
79:13, 79:18, 81:4,
81:20, 82:4, 91:13
**discuss** [7] - 8:14,
11:6, 11:9, 26:2,
47:4, 59:12, 77:6
**discussed** [1] - 4:24
**discussion** [3] -
49:15, 71:4, 91:17
**discussions** [1] -
51:24
**disingenuous** [4] -
55:2, 56:13, 81:5,
95:18
**dismiss** [6] - 18:19,
54:20, 57:13, 61:5,
61:18, 61:19
**Dismiss** [1] - 52:18
**dismissal** [1] - 21:15
**dismissed** [3] - 53:19,
62:2, 67:15
**dispositive** [1] - 93:1
**dispute** [4] - 21:7,
27:15, 48:10, 57:23
**disputes** [1] - 53:2
**disregard** [1] - 46:9
**distracted** [1] - 10:2
**distributors** [1] -
64:12
**DISTRICT** [2] - 1:1,
1:1
**ditch** [1] - 95:5
**dive** [1] - 96:11
**docket** [1] - 47:17
**doctrine** [6] - 85:10,
86:5, 87:5, 87:15,
87:18, 93:25
**document** [27] -
15:25, 16:5, 26:20,
28:19, 29:6, 29:18,
31:16, 33:5, 36:12,
36:14, 37:4, 39:17,

40:20, 50:22, 53:1,
60:17, 64:23, 64:25,
65:2, 71:22, 77:13,
80:17, 83:5, 94:23,
95:1, 95:3
**documentation** [1] -
46:17
**documented** [1] - 10:4
**documents** [145] -
4:18, 4:19, 4:20, 5:6,
5:18, 5:21, 6:12,
6:14, 7:18, 7:21,
8:16, 8:17, 8:19,
10:6, 10:21, 10:25,
12:8, 12:21, 13:6,
13:14, 13:17, 19:21,
24:15, 25:3, 26:20,
26:22, 27:8, 27:24,
28:9, 29:11, 29:15,
29:22, 30:11, 30:12,
30:24, 31:1, 31:5,
31:18, 32:2, 32:8,
32:11, 33:11, 33:19,
33:24, 34:7, 34:14,
34:16, 35:6, 35:13,
35:18, 36:1, 36:6,
36:9, 36:16, 36:19,
36:21, 37:2, 37:5,
37:9, 37:23, 38:3,
38:9, 38:14, 38:16,
38:19, 38:20, 38:22,
38:23, 39:4, 39:11,
39:24, 40:11, 40:23,
41:2, 41:11, 41:24,
42:2, 42:8, 43:18,
43:25, 44:2, 44:6,
44:11, 44:20, 44:21,
45:1, 45:5, 45:7,
45:14, 45:17, 45:18,
45:20, 47:5, 49:17,
49:18, 49:21, 49:22,
49:24, 49:25, 50:4,
50:9, 50:17, 50:20,
64:17, 67:24, 72:19,
73:13, 75:12, 75:14,
75:16, 75:20, 76:7,
78:6, 78:14, 78:22,
78:23, 79:22, 80:6,
80:12, 80:15, 81:21,
83:14, 83:16, 84:18,
85:6, 91:23, 92:5,
92:7, 92:10, 93:3,
93:24, 94:3, 94:4,
94:5, 94:9, 94:15,
94:17, 95:5, 95:11,
96:16
**dogs** [1] - 44:9
**dollars** [1] - 41:25
**done** [16] - 5:9, 15:1,
15:11, 32:7, 32:21,
33:21, 34:13, 38:5,

38:16, 50:24, 52:17,
57:24, 88:9, 90:2,
95:17, 96:25
**dose** [3] - 46:6, 46:12,
46:15
**double** [1] - 96:24
**double-check** [1] -
96:24
**down** [9] - 33:23,
36:18, 37:8, 38:11,
40:7, 57:11, 86:18,
87:3, 96:11
**downstream** [3] -
58:22, 58:24, 69:25
**dozen** [2] - 30:20,
30:21
**Dr** [10] - 82:24, 84:2,
84:17, 85:13, 85:18,
85:24, 86:9, 87:5,
87:9
**draft** [12] - 51:11, 53:1,
60:18, 92:5, 94:3,
94:5, 94:9, 94:16,
94:23, 95:1, 95:3,
96:16
**drafted** [3] - 60:20,
66:9, 66:23
**drive** [1] - 74:11
**drives** [8] - 72:12,
72:14, 74:6, 74:12,
74:18, 75:17, 76:18,
78:25
**drop** [2] - 55:16, 85:18
**dropped** [3] - 18:25,
19:10, 95:15
**drug** [2] - 23:15, 23:16
**drugs** [2] - 63:18, 64:5
**Drugs** [1] - 2:24
**DUANE** [1] - 2:5
**due** [7] - 41:5, 41:8,
41:14, 41:18, 43:7,
43:24, 75:6
**dump** [3] - 26:20,
28:20, 29:6
**duplication** [1] - 64:23
**duplicative** [3] -
57:21, 65:2, 65:18
**during** [8] - 6:25, 7:14,
8:13, 11:5, 54:25,
71:2, 78:11, 94:13
**duty** [1] - 10:22

## E

**early** [3] - 13:2, 15:5,
50:17
**easier** [1] - 87:2
**EAST** [1] - 3:6
**easy** [4] - 41:13,
64:24, 70:21, 71:6
**ECF** [1] - 6:18

**economic** [1] - 65:2
**eDiscovery** [1] - 74:5
**effect** [1] - 54:23
**efficiency** [1] - 41:19
**efficient** [3] - 41:5,
41:16, 68:8
**efficiently** [2] - 47:14,
47:15
**effort** [4] - 10:24, 16:1,
53:21, 58:2
**efforts** [5] - 15:4,
16:19, 52:13, 77:3,
77:4
**eight** [6] - 5:22, 46:23,
73:14, 73:25, 75:13,
75:22
**Eisenhower** [1] - 1:13
**either** [7] - 5:25, 9:16,
14:22, 32:11, 32:13,
37:20, 57:19
**electronically** [2] -
35:25, 44:20
**email** [15] - 4:4, 4:7,
29:16, 29:24, 30:2,
30:22, 50:6, 50:7,
50:8, 69:12, 91:25,
93:13, 94:1, 94:4,
94:25
**emails** [3] - 30:17,
77:24, 78:3
**embodied** [1] - 37:3
**employed** [1] - 86:23
**employee** [3] - 66:10,
86:23, 87:3
**employees** [1] - 80:10
**enclosure** [1] - 50:9
**encompasses** [1] -
66:9
**encourage** [2] - 44:5,
47:22
**encouraging** [1] -
48:14
**end** [13] - 7:23, 12:23,
15:5, 15:7, 15:12,
18:25, 19:10, 22:2,
25:24, 51:21, 71:11,
73:3, 90:22
**ended** [1] - 35:5
**endemic** [1] - 9:4
**engage** [4] - 8:6,
51:24, 79:13, 79:21
**engaged** [1] - 67:23
**entail** [1] - 41:21
**entails** [1] - 25:6
**entered** [6] - 23:12,
24:6, 31:6, 36:25,
43:24, 46:2
**entertain** [2] - 34:12,
41:12
**entire** [2] - 51:18,

69:25
**entirely** [2] - 29:18,
37:17
**entities** [12] - 60:15,
81:9, 84:18, 91:11,
91:17, 92:9, 92:10,
92:18, 93:14, 95:8,
95:12, 97:7
**entitle** [1] - 6:12
**entitled** [3] - 65:6,
96:15, 98:13
**entity** [3] - 23:4,
93:18, 94:10
**entity's** [1] - 81:9
**entries** [2] - 7:6, 12:18
**equipped** [1] - 12:1
**Eric** [1] - 17:14
**ERIC** [1] - 2:22
**ESI** [2] - 29:17, 31:7
**especially** [2] - 80:23,
82:16
**Esquire** [1] - 3:12
**ESQUIRE** [18] - 1:13,
1:16, 1:16, 1:19, 2:2,
2:5, 2:6, 2:10, 2:10,
2:13, 2:14, 2:18,
2:18, 2:22, 2:22, 3:2,
3:5, 3:6
**essence** [2] - 6:1,
32:20
**essentially** [8] - 7:16,
8:1, 30:12, 32:19,
51:18, 54:1, 54:3,
93:16
**established** [1] -
20:11
**establishes** [1] - 4:20
**Ethan** [1] - 91:4
**ETHAN** [1] - 2:18
**evaluation** [2] - 34:20,
35:12
**eve** [1] - 29:6
**evening** [3] - 50:17,
91:8, 91:9
**event** [2] - 80:10,
81:14
**exactly** [9] - 5:2, 7:7,
12:10, 33:12, 39:15,
68:14, 73:22, 79:9,
81:18
**examination** [1] -
39:22
**examine** [4] - 34:10,
39:14, 42:3, 95:22
**examined** [3] - 39:16,
48:11, 93:15
**example** [12] - 10:11,
12:20, 25:20, 34:4,
34:5, 43:5, 48:3,
65:8, 66:8, 66:10,

77:21, 80:8
**examples** [6] - 4:23, 44:23, 64:19, 65:19, 68:15, 77:18
**except** [1] - 22:24
**exchange** [1] - 4:5
**excuse** [2] - 54:17, 61:18
**Excuse** [2] - 20:22, 45:8
**exercise** [1] - 25:11
**exhaust** [2] - 15:4
**exhibit** [1] - 92:11
**Exhibit** [3] - 7:12, 56:17, 56:18
**exist** [2] - 54:23, 61:25
**existing** [2] - 22:23
**expect** [2] - 80:1, 80:11
**expecting** [1] - 18:20
**expediency** [2] - 31:11, 54:8
**expedient** [2] - 41:1, 41:5
**expend** [1] - 53:20
**expense** [1] - 35:25
**expert** [1] - 64:10
**explain** [1] - 60:24
**explained** [6] - 60:3, 61:3, 63:10, 64:6, 64:16, 67:8
**explanation** [4] - 5:2, 34:19, 34:25, 78:12
**explodes** [1] - 87:8
**express** [1] - 95:11
**expressed** [2] - 14:20, 14:21
**extend** [1] - 53:24
**extended** [2] - 55:2, 57:8
**extension** [3] - 43:22, 52:13, 72:21
**extensive** [2] - 60:14, 60:19
**extent** [8] - 6:21, 53:18, 59:13, 68:19, 82:6, 84:16, 95:3, 97:8
**extreme** [1] - 8:18
**eyes** [4] - 30:24, 31:1, 40:11, 95:7

**F**

**face** [3] - 4:25, 10:6, 26:21
**faces** [1] - 8:18
**facilities** [3] - 46:4, 47:9, 91:21
**facility** [5] - 46:14, 46:18, 46:19, 48:9

**facing** [2] - 57:14, 82:12
**fact** [16] - 6:13, 12:16, 16:6, 16:13, 27:20, 35:2, 40:4, 44:16, 56:3, 56:18, 65:21, 70:24, 73:3, 94:3, 96:13, 96:16
**factors** [4] - 8:7, 8:9, 12:11, 13:20
**Facts** [1] - 65:3
**factual** [1] - 6:13
**failure** [1] - 34:20, 43:7
**failures** [2] - 34:5, 37:6
**fair** [4] - 40:15, 40:16, 67:7
**fairly** [2] - 55:23, 70:20, 70:21
**fairness** [1] - 41:6
**faith** [2] - 27:6, 60:24
**fall** [3] - 10:7, 43:18, 56:6
**fallback** [1] - 5:6
**familiar** [3] - 23:10, 74:10, 91:12
**family** [2] - 29:18, 38:23
**fanciful** [1] - 34:2
**far** [6] - 45:21, 50:13, 75:22, 83:24, 86:18, 88:10
**fashion** [1] - 37:24
**faster** [1] - 72:16
**FDA** [20] - 30:15, 42:15, 42:20, 42:24, 42:25, 43:10, 43:19, 48:10, 48:13, 48:24, 77:23, 78:2, 83:22, 87:10, 87:11, 87:12, 93:17, 93:23, 95:13, 96:5
**FDA's** [1] - 91:20
**fear** [2] - 33:4, 46:24
**February** [7] - 15:23, 48:17, 58:9, 60:3, 62:25, 68:20, 69:1
**feedback** [1] - 21:11
**FELDMAN** [6] - 2:18, 91:8, 93:7, 96:3, 96:10, 96:13
**Feldman** [4] - 91:4, 91:25, 93:6, 96:2
**Feldman's** [1] - 94:25
**feverishly** [2] - 73:11, 75:19
**few** [5] - 40:23, 42:1, 52:18
**fewer** [2] - 34:12,

57:14
**figure** [3] - 26:25, 27:1, 33:17
**file** [33] - 14:3, 30:1, 30:3, 30:14, 30:22, 31:3, 31:13, 39:8, 40:15, 52:19, 52:20, 52:21, 54:1, 54:16, 55:8, 62:2, 64:2, 77:21, 78:3, 78:9, 78:24, 78:25, 79:2, 79:19, 84:17, 85:9, 85:10, 85:13, 85:19, 86:10, 86:14, 89:5, 90:5
**filed** [12] - 36:6, 41:10, 54:7, 71:21, 74:24, 87:21, 87:25, 88:20, 90:24, 91:24, 92:11, 94:8
**files** [19] - 28:24, 38:1, 38:9, 72:2, 72:4, 72:6, 73:14, 73:24, 74:4, 75:7, 75:12, 75:13, 77:17, 78:13, 78:23, 79:8, 79:15, 84:8, 86:18
**filing** [1] - 54:11
**final** [2] - 52:17, 84:19, 94:21
**finally** [1] - 8:15
**fine** [7] - 18:13, 31:11, 38:17, 69:6, 70:6, 70:14, 83:9
**finger** [1] - 87:8
**finish** [2] - 29:4, 46:25
**finished** [3] - 46:6, 46:12, 46:15
**firm** [3] - 12:13, 12:22, 50:7
**first** [27] - 4:14, 5:5, 7:15, 12:9, 20:12, 26:13, 26:24, 28:18, 32:23, 34:24, 45:6, 50:3, 55:25, 56:4, 57:4, 65:9, 69:15, 71:21, 72:4, 72:17, 84:24, 89:1, 90:8, 91:14, 93:8, 95:1, 96:7
**fishing** [2] - 48:23, 63:15
**fit** [1] - 5:19
**five** [4] - 9:13, 64:2, 65:22, 77:24
**fix** [3] - 5:10, 9:17, 64:24
**fixed** [1] - 5:7
**flagged** [1] - 85:25
**flavor** [1] - 34:1, 44:5,

65:20
**flexible** [1] - 72:20
**flip** [1] - 8:18
**Floor** [1] - 2:11
**floor** [1] - 87:14
**flux** [4] - 51:16, 57:7, 63:7, 69:4
**fly** [1] - 42:3
**focus** [1] - 14:11
**focused** [3] - 63:16, 74:1, 84:7
**focusing** [1] - 14:2
**follow** [1] - 45:21
**following** [4] - 47:24, 56:15, 90:4
**footnote** [1] - 95:15
**FOR** [1] - 1:1
**foregoing** [1] - 98:12
**forgetting** [1] - 49:11
**former** [2] - 86:22, 87:3
**forth** [3] - 66:21, 69:17, 73:1
**forthcoming** [1] - 57:15
**forward** [10] - 9:15, 14:5, 15:10, 54:9, 61:2, 68:16, 68:18, 68:22, 76:17, 77:5
**foundational** [1] - 60:5
**four** [5] - 65:22, 72:4, 73:18, 73:19, 85:17
**fourth** [1] - 35:2
**frank** [1] - 11:6
**FRANK** [1] - 2:10
**Frank** [2] - 32:1, 50:16
**frankly** [4] - 60:21, 68:2, 68:6, 95:6
**frantic** [1] - 52:13
**free** [4] - 38:4, 47:20, 96:11
**FREEMAN** [1] - 1:12
**fresh** [1] - 27:20
**Friday** [19] - 7:15, 8:4, 8:13, 10:1, 10:4, 11:7, 11:8, 12:12, 37:19, 52:18, 71:25, 84:24, 89:1, 89:19, 90:2, 90:4, 90:15, 90:18
**front** [4] - 8:21, 11:10, 37:14, 54:2
**froze** [1] - 18:10
**frozen** [1] - 18:11
**FTP** [7] - 72:13, 74:12, 75:4, 75:16, 76:3, 76:13, 77:4
**full** [6] - 8:22, 34:16, 48:17, 53:19, 65:13,

83:3
**fully** [3] - 13:1, 19:19, 93:16
**fundamental** [1] - 55:23
**funniest** [1] - 9:7

**G**

**gained** [1] - 52:12
**gather** [1] - 8:4
**general** [2] - 5:22, 95:23
**generally** [1] - 53:17
**generate** [1] - 50:20
**gentleman** [1] - 37:22
**GEOPPINGER** [6] - 3:2, 53:12, 61:12, 61:15, 61:24, 69:20
**Geoppinger** [9] - 53:13, 55:22, 57:6, 58:17, 61:4, 62:24, 63:21, 67:16, 69:19
**geoppinger** [1] - 61:14
**Georgia** [1] - 2:15
**germane** [3] - 33:19, 39:21, 39:23
**given** [12] - 5:10, 12:16, 14:18, 56:2, 60:4, 60:13, 60:14, 67:3, 67:8, 67:14, 79:21, 82:14
**glad** [2] - 9:21, 19:21
**global** [1] - 33:9
**globally** [1] - 26:17
**Glover** [7] - 38:2, 38:4, 39:8, 39:21, 40:4, 40:5, 43:15
**Glover's** [2] - 37:19, 39:16
**goal** [1] - 76:21
**Goldberg** [2] - 4:5, 97:13
**GOLDENBERG** [30] - 1:19, 1:19, 71:10, 71:19, 75:1, 76:2, 77:8, 80:3, 82:18, 82:21, 84:3, 85:16, 86:7, 87:2, 87:23, 88:1, 88:4, 88:7, 88:17, 89:15, 89:22, 90:6, 90:20, 90:22, 91:11, 93:5, 94:19, 94:22, 96:20, 96:24
**Goldenberg** [26] - 24:2, 25:17, 25:22, 70:9, 70:16, 71:9, 73:17, 73:19, 74:9, 74:23, 76:15, 76:20, 77:6, 79:17, 79:24,

*81:6, 82:15, 84:10, 85:15, 89:21, 90:18, 91:10, 93:8, 93:14, 94:2, 96:19*
**Goldenberg's** [1] - 74:2
**GOLOMB** [1] - 1:15
**GORDON** [1] - 2:9
**gosh** [1] - 30:3
**government** [5] - 9:25, 10:4, 10:5, 10:20, 11:2
**grant** [2] - 52:13, 82:15
**granted** [1] - 67:13
**granular** [3] - 25:23, 47:19, 47:23
**great** [3] - 21:9, 28:2, 35:5
**GREENBERG** [1] - 2:13
**Greenberg** [1] - 23:2
**grinding** [1] - 9:9
**gristmill** [1] - 39:12
**group** [4] - 19:9, 23:3, 58:3, 61:9
**guess** [5] - 4:14, 28:20, 83:18, 86:13, 89:16
**guidance** [1] - 94:13
**guidelines** [1] - 43:19
**guise** [1] - 48:13
**Gupta** [1] - 78:1
**guy** [1] - 9:7

### H

**Hague** [3] - 22:25, 24:14, 24:20
**half** [5] - 30:20, 30:21, 32:21, 65:1, 65:23
**half-dozen** [2] - 30:20, 30:21
**half-step** [1] - 32:21
**halt** [2] - 9:9, 51:17
**hand** [3] - 13:12, 13:13, 53:7
**handle** [2] - 7:3, 41:1
**handling** [1] - 91:3
**hands** [1] - 18:20
**happy** [10] - 7:11, 25:21, 59:12, 59:17, 64:9, 65:25, 71:13, 79:10, 81:22, 86:15
**hard** [14] - 29:22, 29:23, 72:12, 72:14, 74:6, 74:10, 74:12, 74:18, 75:17, 76:18, 78:25, 79:6, 79:14, 80:19
**HARKINS** [4] - 2:14,

*23:1, 23:9, 24:23*
**Harkins** [3] - 23:2, 23:21, 24:4
**harm** [2] - 36:10, 43:24
**Healthcare** [1] - 2:8
**hear** [15] - 9:6, 11:20, 14:6, 18:3, 18:12, 18:23, 18:24, 45:9, 54:9, 55:13, 56:21, 57:23, 59:8, 62:14, 68:6
**heard** [8] - 25:24, 26:6, 54:8, 68:15, 72:11, 76:5, 77:15, 85:21
**hearing** [12] - 55:11, 63:4, 65:21, 71:4, 83:18, 91:13, 91:15, 92:1, 92:19, 92:22, 94:11, 94:13
**heart** [1] - 34:8
**heavily** [2] - 65:9, 65:10
**heinz** [1] - 75:10
**Heinz** [24] - 71:25, 72:8, 72:11, 72:17, 73:5, 73:8, 76:3, 76:11, 78:12, 79:3, 80:25, 82:23, 82:25, 83:3, 83:8, 83:13, 83:24, 85:21, 86:1, 86:6, 86:7, 86:20, 90:12, 90:25
**HEINZ** [15] - 2:18, 73:6, 73:8, 75:11, 76:12, 79:4, 81:2, 84:5, 86:21, 88:21, 88:23, 89:12, 90:14, 91:2, 91:7
**held** [3] - 4:1, 19:17, 39:6
**hello** [4] - 18:1, 18:2, 18:4, 18:16
**help** [2] - 35:4, 67:7
**helpful** [7] - 4:22, 21:14, 61:1, 66:14, 66:24, 67:17, 74:21
**herself** [1] - 55:7
**Hetero** [12] - 2:24, 4:9, 14:17, 15:4, 15:14, 15:18, 15:20, 17:21, 19:6
**Hetero's** [2] - 14:19, 15:23
**Hi** [1] - 18:14
**hi** [3] - 18:15, 23:25
**highlighted** [3] - 44:23, 45:7, 45:14
**highly** [1] - 49:7

**HILL** [1] - 2:21
**hire** [1] - 95:10
**hired** [3] - 95:16, 95:21, 96:6
**history** [5] - 28:20, 29:7, 34:24, 40:3, 56:13
**hit** [2] - 38:14, 38:23
**hits** [3] - 15:9, 37:2, 37:5
**hold** [1] - 13:25
**holding** [1] - 70:11
**hole** [1] - 96:11
**Honik** [9] - 21:23, 23:24, 25:15, 31:10, 32:6, 36:12, 42:4, 44:10, 45:23
**HONIK** [23] - 1:15, 1:16, 21:24, 22:7, 25:15, 26:3, 26:6, 26:9, 32:19, 32:23, 33:3, 34:18, 36:22, 38:25, 39:7, 42:5, 44:12, 44:15, 47:10, 47:12, 51:1, 51:3, 51:20
**Honik's** [3] - 28:18, 38:5, 38:11
**honor** [1] - 37:20
**Honor** [156] - 4:16, 5:9, 5:12, 5:20, 5:24, 6:1, 6:6, 6:9, 6:18, 7:12, 8:13, 8:15, 8:25, 9:2, 9:18, 10:11, 10:19, 11:6, 11:25, 12:4, 12:14, 12:25, 13:9, 13:24, 14:15, 14:18, 15:10, 15:19, 15:22, 16:3, 16:20, 17:25, 18:3, 18:5, 18:24, 19:12, 19:24, 20:4, 20:19, 20:20, 21:1, 21:24, 22:11, 23:1, 23:9, 23:25, 24:4, 24:23, 25:12, 25:15, 25:21, 26:6, 26:11, 28:13, 31:24, 32:19, 33:21, 34:18, 36:4, 36:22, 37:25, 38:25, 39:7, 39:25, 42:5, 43:23, 44:1, 44:4, 44:12, 45:5, 45:16, 45:19, 46:1, 47:3, 47:10, 47:12, 47:22, 48:21, 50:4, 50:14, 50:16, 51:3, 51:7, 51:10, 52:2, 53:3, 53:4, 53:8, 53:12, 53:15, 54:3, 54:15, 54:21,

*55:4, 55:17, 56:25, 59:11, 59:16, 59:24, 60:10, 60:18, 61:12, 61:17, 63:2, 63:5, 64:17, 66:2, 69:5, 69:6, 69:8, 69:21, 70:6, 70:9, 70:12, 70:19, 71:3, 71:10, 72:3, 72:24, 73:6, 75:1, 75:11, 75:19, 76:2, 76:12, 77:8, 77:18, 77:21, 79:4, 80:3, 82:18, 84:5, 84:6, 85:16, 86:21, 87:18, 88:17, 88:21, 89:12, 89:13, 89:15, 90:7, 90:14, 90:20, 91:7, 91:8, 91:11, 93:7, 94:19, 94:22, 96:3, 96:8, 96:10, 97:4, 97:18*
**Honor's** [4] - 13:1, 32:23, 71:19, 75:21
**Honorable** [2] - 3:12, 4:2
**HONORABLE** [1] - 1:10
**hook** [2] - 18:21, 54:10
**hope** [1] - 75:23
**hopefully** [2] - 4:17, 74:23
**hoping** [1] - 74:20
**horse** [1] - 35:8
**housekeeping** [2] - 22:3, 22:7
**Huahai** [1] - 2:8
**hundred** [2] - 73:12
**hurts** [1] - 87:8
**hyperlinks** [1] - 64:9

### I

**idea** [6] - 44:1, 55:25, 56:11, 60:16, 61:7, 67:24
**ideally** [2] - 66:24, 67:1
**identified** [10] - 26:22, 31:18, 31:19, 36:25, 37:1, 37:10, 44:7, 74:3, 84:9
**identifier** [1] - 64:7
**identifiers** [1] - 39:14
**identify** [4] - 32:4, 49:23, 68:21, 84:11
**ignore** [1] - 31:6
**image** [1] - 33:8
**imagination** [1] - 34:3
**immediate** [1] - 35:12
**immediately** [3] -

*28:11, 35:15, 45:2*
**immune** [1] - 52:3
**important** [5] - 6:21, 8:20, 28:20, 55:23, 63:20
**impose** [1] - 23:23
**impossible** [1] - 66:7
**impurity** [1] - 48:8
**IN** [1] - 1:4
**inadequate** [1] - 33:5
**inappropriate** [2] - 92:8, 92:18
**Inc** [4] - 2:12, 2:16, 2:16, 2:20
**incidents** [1] - 95:23
**inclined** [1] - 49:14
**include** [1] - 95:2
**included** [1] - 73:20
**including** [2] - 11:8, 65:24
**incorrect** [2] - 56:14, 73:20
**incumbent** [1] - 64:21
**incurred** [1] - 41:22
**indeed** [2] - 42:20, 94:3
**indemnity** [2] - 65:8, 65:11
**independent** [4] - 91:18, 92:10, 95:12, 95:13
**index** [2] - 78:6, 81:9
**indicated** [3] - 4:4, 72:1, 93:14
**individual** [1] - 66:13
**individualized** [1] - 20:16
**individuals** [4] - 74:3, 83:5, 84:9, 86:8
**indulgence** [1] - 22:1
**Industries** [3] - 2:15, 23:6, 24:4
**inextricably** [1] - 48:25
**influenced** [1] - 88:10
**inform** [1] - 71:3
**information** [7] - 4:21, 7:17, 66:23, 80:5, 83:12, 84:12, 86:3
**informed** [1] - 72:11
**ingredient** [1] - 46:6
**initial** [2] - 24:25, 30:22
**insisted** [1] - 64:25
**inspection** [9] - 42:21, 43:2, 48:16, 48:18, 48:25, 49:1, 49:9, 49:12, 91:20
**inspections** [1] - 42:24

**instance** [2] - 24:20,
69:15
**instances** [2] - 35:4,
65:11
**instantly** [1] - 49:4
**instead** [3] - 21:4,
35:11, 86:4
**insufficiency** [1] -
13:18
**insufficient** [1] - 13:12
**integrity** [1] - 43:25
**intention** [2] - 93:12,
95:2
**inter** [1] - 63:18
**inter-defendant** [1] -
63:18
**interest** [1] - 10:25
**interested** [1] - 83:18
**interesting** [1] - 37:25
**interim** [1] - 11:23
**international** [1] -
8:23
**Internet** [1] - 18:7
**interrupt** [6] - 66:16,
66:17, 66:19, 87:20,
88:23, 91:1
**interruption** [1] - 69:7
**intervention** [1] -
16:13
**inventory** [3] - 63:19,
64:3, 64:11
**investigated** [1] -
42:15
**investigation** [1] -
78:3
**invite** [1] - 37:14
**invoke** [1] - 14:10
**involve** [1] - 76:10
**involved** [4] - 35:17,
54:5, 59:21, 87:15
**involves** [1] - 27:18
**iPad** [1] - 80:20
**iPhone** [1] - 87:8
**irbesartan** [2] - 22:21,
24:9
**iron** [1] - 27:5
**irrelevant** [3] - 29:15,
38:15, 38:22
**irresponsible** [1] -
39:2
**Israel** [1] - 24:14
**Israeli** [1] - 24:16
**issue** [100] - 4:8, 4:14,
4:15, 5:11, 6:5, 6:16,
6:19, 7:2, 7:15, 8:3,
8:17, 8:21, 8:22,
10:14, 11:16, 11:21,
12:6, 12:8, 12:9,
12:20, 13:4, 13:15,
13:16, 14:13, 15:14,

16:7, 17:18, 18:6,
19:6, 20:12, 20:14,
20:17, 21:1, 21:2,
21:8, 21:15, 22:20,
23:11, 23:14, 23:22,
24:22, 24:25, 25:20,
28:18, 29:9, 29:11,
29:19, 31:9, 31:12,
33:14, 37:8, 42:16,
43:2, 43:13, 45:5,
47:2, 47:23, 49:15,
51:2, 51:10, 52:5,
56:10, 58:12, 58:13,
58:15, 59:1, 61:17,
62:4, 62:5, 67:15,
70:8, 71:21, 72:17,
75:2, 76:6, 77:10,
82:21, 82:22, 82:25,
86:6, 86:8, 86:14,
87:4, 87:11, 88:2,
88:12, 88:16, 88:25,
89:4, 89:17, 89:22,
89:25, 91:3, 93:1,
94:21, 94:23, 94:25,
96:19
**issued** [7] - 18:20,
28:22, 67:19, 67:21,
93:18, 94:5, 94:17
**issues** [49] - 4:6, 4:10,
4:11, 9:6, 9:18, 11:7,
11:12, 11:14, 13:11,
14:17, 14:23, 15:24,
15:25, 16:2, 16:8,
16:10, 16:15, 16:19,
16:24, 17:21, 19:13,
19:16, 19:18, 24:18,
25:14, 25:23, 26:5,
26:9, 26:12, 28:3,
28:16, 28:25, 29:1,
37:7, 40:8, 51:6,
60:16, 68:10, 69:21,
69:24, 70:3, 70:10,
70:23, 70:25, 71:2,
71:12, 71:22, 77:23,
83:23
**issuing** [1] - 98:2
**it'd** [1] - 32:11
**it'll** [3] - 10:14, 10:15,
41:13
**item** [1] - 35:1
**items** [1] - 71:3
**itself** [2] - 7:9, 49:8

**J**

**January** [3] - 29:3,
51:21, 53:23
**Jasleen** [1] - 78:1
**Jeff** [1] - 53:12
**JEFFREY** [1] - 3:2
**JERSEY** [1] - 1:1

**Jersey** [3] - 1:8, 1:14,
2:23
**JESSICA** [2] - 2:5,
2:18
**Jessica** [3] - 6:6, 73:8,
97:6
**job** [1] - 64:17
**Jobs** [1] - 87:8
**JOHNSTON** [9] - 3:5,
55:12, 55:14, 56:21,
56:23, 58:15, 58:17,
59:7, 59:10
**Johnston** [8] - 53:13,
55:7, 55:10, 55:17,
59:5, 59:16, 61:4,
63:23
**joint** [1] - 23:3
**Judge** [51] - 6:20, 7:1,
17:16, 18:6, 18:17,
18:19, 21:17, 22:8,
24:6, 24:9, 24:18,
26:9, 28:22, 29:21,
31:22, 35:5, 40:6,
41:23, 42:18, 44:8,
44:15, 46:21, 47:17,
49:10, 52:5, 52:9,
52:13, 52:15, 52:18,
52:22, 63:8, 63:11,
63:13, 63:14, 63:15,
63:20, 64:3, 64:8,
64:23, 65:19, 66:1,
66:18, 66:20, 91:15,
92:18, 92:25, 94:4,
94:8, 94:12
**judge** [2] - 31:15,
54:21
**JUDGE** [142] - 4:4,
4:14, 6:4, 6:8, 9:1,
9:20, 10:17, 11:13,
12:1, 13:3, 13:23,
13:25, 15:13, 15:21,
16:16, 16:22, 17:12,
17:15, 17:17, 18:2,
18:23, 18:25, 19:4,
19:9, 19:20, 19:25,
20:3, 20:5, 20:9,
21:9, 21:11, 22:4,
22:10, 22:12, 22:14,
22:19, 23:7, 23:21,
24:21, 25:8, 25:13,
26:1, 26:4, 26:8,
28:12, 28:15, 31:17,
31:23, 31:25, 32:5,
32:22, 33:2, 34:16,
35:17, 35:21, 36:18,
40:18, 41:8, 41:18,
42:4, 44:9, 44:13,
45:4, 45:25, 49:11,
50:6, 50:11, 50:15,
50:25, 51:2, 51:4,

53:10, 55:10, 55:13,
56:20, 56:22, 58:14,
58:16, 59:14, 59:19,
60:1, 61:11, 61:14,
62:24, 66:3, 66:17,
66:19, 68:9, 69:19,
70:5, 70:7, 70:10,
70:13, 70:15, 71:5,
71:8, 71:15, 73:5,
73:7, 75:10, 76:11,
76:25, 79:3, 79:24,
80:25, 82:3, 82:20,
84:1, 84:4, 85:15,
86:5, 86:17, 87:1,
87:20, 87:24, 88:3,
88:6, 88:8, 88:18,
88:22, 89:10, 89:20,
90:3, 90:10, 90:16,
90:21, 90:25, 91:6,
91:9, 93:4, 93:6,
94:20, 95:19, 96:9,
96:12, 96:18, 96:23,
97:1, 97:5, 97:10,
97:16, 97:19
**judgment** [1] - 82:13
**judicial** [1] - 16:12
**Judicial** [1] - 3:12
**jumping** [1] - 34:25
**juncture** [2] - 35:7,
85:3
**June** [3] - 48:16,
58:25, 59:2

**K**

**KANNER** [1] - 2:2
**Kasava** [2] - 83:2,
83:15
**KATZ** [1] - 1:12
**keep** [4] - 10:12, 40:3,
49:11, 95:5
**Kelly** [4] - 18:1, 18:4,
18:12, 18:15
**KELLY** [1] - 2:6
**key** [1] - 82:7
**keystroke** [1] - 42:7
**kind** [3] - 78:16, 79:6,
81:19
**knowing** [1] - 68:14
**knowledge** [1] - 87:17
**known** [1] - 85:24
**knows** [1] - 17:10
**Kota** [3] - 86:8, 86:9,
86:22
**KRISTEN** [1] - 3:6
**Kristen** [1] - 55:18
**Kugler** [8] - 3:12,
21:17, 24:6, 24:10,
52:5, 52:13, 52:19,
52:22
**Kugler's** [3] - 18:19,

22:8, 24:18

**L**

**labeled** [2] - 30:2,
30:21
**labeling** [1] - 64:20
**Labs** [1] - 2:24
**laid** [12] - 4:17, 5:8,
5:11, 6:19, 14:18,
30:24, 40:11, 56:13,
57:1, 60:11, 67:6
**land** [1] - 24:3
**language** [1] - 53:5
**Lantech** [10] - 27:22,
37:6, 39:10, 39:18,
74:1, 82:22, 82:25,
83:17, 84:7
**large** [6] - 49:6, 63:11,
74:11, 75:3, 75:15,
81:3
**largely** [1] - 32:13
**largest** [1] - 64:12
**larry** [1] - 3:13
**Lasalle** [1] - 1:20
**last** [17] - 7:8, 15:22,
17:10, 18:19, 28:19,
28:22, 29:15, 53:25,
56:6, 64:8, 71:25,
73:10, 73:24, 84:5,
84:24, 89:1, 95:5
**last-ditch** [1] - 95:5
**late** [2] - 17:7, 85:2
**latest** [3] - 30:1, 30:18,
46:8
**LAW** [1] - 1:19
**Law** [1] - 3:12
**law** [21] - 5:2, 5:20,
6:14, 7:19, 7:21,
8:23, 9:14, 10:7,
12:5, 12:8, 12:13,
12:22, 13:19, 50:7,
87:16, 88:5, 88:9,
90:1, 95:8, 95:19,
96:1
**laws** [4] - 5:21, 5:22,
6:15, 8:3
**lawsuit** [1] - 36:6
**lawyers** [3] - 9:24,
10:3, 24:12
**lay** [1] - 57:18
**laying** [2] - 31:1, 56:18
**Layne** [1] - 17:9
**lays** [2] - 58:9, 69:24
**least** [14] - 12:23,
14:11, 27:25, 34:18,
53:6, 54:6, 55:7,
59:24, 62:7, 63:24,
67:16, 68:18, 69:15
**leave** [4] - 52:20, 64:2,
67:12, 75:4

**leaves** [1] - 20:8
**left** [1] - 35:8
**legal** [3] - 6:10, 13:22, 92:14
**length** [1] - 88:10
**lengthy** [2] - 11:22, 29:2
**lens** [1] - 37:9
**less** [1] - 8:17
**letter** [62] - 5:8, 6:10, 7:10, 7:13, 8:8, 8:23, 9:12, 14:19, 20:10, 21:25, 22:5, 27:7, 39:15, 44:3, 51:14, 56:14, 56:16, 56:18, 56:25, 57:4, 57:17, 58:1, 58:6, 58:8, 60:3, 60:8, 60:11, 61:4, 61:20, 63:1, 63:5, 66:6, 66:21, 67:6, 68:21, 69:1, 69:9, 69:13, 69:24, 70:2, 71:14, 71:16, 71:20, 72:23, 73:1, 77:11, 77:19, 77:20, 83:2, 83:8, 87:21, 87:24, 88:19, 89:24, 90:23, 91:24, 93:17, 93:23, 94:8, 95:15, 96:5
**letters** [4] - 51:9, 87:10, 91:20, 92:15
**letting** [1] - 97:19
**level** [1] - 32:16
**liability** [1] - 48:19
**LIABILITY** [1] - 1:4
**lieu** [1] - 41:5
**light** [3] - 16:13, 21:6, 71:16
**likely** [1] - 68:11
**likewise** [1] - 93:24
**Limited** [4] - 23:6, 25:3, 84:22, 84:25
**limited** [2] - 39:13, 68:18
**line** [8] - 4:18, 13:1, 27:4, 31:21, 53:15, 57:25, 59:21, 60:23
**lined** [1] - 38:6
**lines** [3] - 51:24, 53:1, 69:12
**link** [1] - 74:12
**linked** [1] - 78:24
**list** [13] - 34:11, 50:5, 50:9, 73:22, 74:2, 78:19, 78:21, 80:4, 80:6, 80:14, 80:16, 81:17, 82:9
**listed** [4] - 44:3, 49:18, 83:1, 84:13

**listing** [1] - 49:21
**literally** [1] - 48:1
**litigants** [1] - 41:6
**litigated** [1] - 40:9
**LITIGATION** [1] - 1:4
**litigation** [12] - 9:5, 9:9, 10:10, 27:10, 46:24, 54:18, 57:13, 58:20, 64:8, 65:12, 95:17, 95:25
**LLC** [6] - 1:12, 1:19, 2:2, 2:8, 2:16, 2:20
**LLLP** [1] - 3:2
**LLP** [5] - 2:5, 2:9, 2:13, 2:21, 3:5
**located** [2] - 65:24, 81:11
**locations** [1] - 80:11
**log** [23] - 4:19, 5:1, 5:6, 5:7, 5:10, 5:15, 6:12, 7:4, 7:6, 7:9, 7:11, 7:20, 7:24, 11:3, 11:9, 12:10, 13:8, 13:11, 13:15, 13:18, 13:21, 14:2
**LOGAS** [6] - 2:13, 20:19, 20:25, 21:10, 70:19, 71:7
**Logas** [2] - 20:20, 70:19
**logistically** [1] - 35:21
**logs** [8] - 7:12, 9:16, 13:4, 13:5, 13:6, 14:7, 14:10
**look** [28] - 5:18, 11:4, 12:20, 30:4, 30:13, 31:12, 31:13, 34:7, 37:11, 37:15, 37:16, 44:2, 44:3, 44:10, 44:21, 44:24, 48:15, 48:19, 49:8, 49:14, 71:17, 72:18, 76:19, 83:6, 88:9, 88:12, 92:22, 96:2
**looked** [9] - 31:15, 43:20, 48:12, 49:12, 78:5, 78:20, 80:5, 80:9, 88:19
**looking** [14] - 4:7, 14:25, 21:24, 29:12, 30:5, 37:15, 39:24, 39:25, 40:24, 41:14, 79:24, 80:3, 80:12, 97:10
**looks** [4] - 18:7, 30:3, 60:10, 60:18
**Loretta** [1] - 3:3
**LOS** [1] - 3:7
**losartan** [3] - 22:21, 24:9, 25:5

**lose** [2] - 36:23, 53:9
**loss** [1] - 65:3
**lost** [8] - 9:23, 18:9, 20:23, 51:18, 52:11, 56:20, 58:8, 58:11
**lost-time** [1] - 58:11
**loud** [1] - 40:25
**LOUISIANA** [1] - 2:3
**Ltd** [2] - 2:8, 2:15
**Lucas's** [1] - 77:21
**luck** [1] - 20:7

**M**

**Macro** [4] - 6:23, 30:9, 31:7, 46:9
**MacStravic** [1] - 3:13
**Magistrate** [1] - 52:5
**mail** [2] - 72:6, 72:7
**mailed** [1] - 74:6
**major** [1] - 32:24
**majority** [1] - 44:14
**management** [2] - 63:20, 64:3
**manner** [1] - 31:19
**manuals** [1] - 14:24
**manufactured** [4] - 46:5, 46:7, 46:12, 46:13
**manufacturing** [1] - 42:13
**March** [5] - 1:8, 11:22, 29:5, 51:12, 73:18
**Market** [1] - 1:17
**Marlene** [4] - 73:21, 74:9, 79:7, 81:6
**MARLENE** [1] - 1:19
**massive** [1] - 44:25
**Master** [1] - 4:2
**master** [3] - 22:21, 54:13, 54:16
**MASTER** [1] - 1:10
**materia** [1] - 49:2
**material** [2] - 39:13
**materials** [1] - 31:8
**matter** [18] - 5:4, 21:17, 22:3, 22:22, 22:24, 24:5, 28:4, 37:13, 40:21, 41:1, 44:16, 49:13, 51:5, 65:5, 70:1, 75:4, 90:6, 98:13
**matters** [2] - 14:3, 55:20
**MAZIE** [1] - 1:12
**MDL** [3] - 24:7, 57:12, 92:16
**mean** [16] - 17:5, 17:9, 27:5, 31:4, 35:22, 36:6, 54:20, 55:1, 60:11, 66:12, 70:3,

87:21, 89:16, 89:18, 96:15, 97:22
**meaningful** [1] - 89:2
**means** [3] - 23:13, 57:25, 96:21
**measures** [1] - 30:15
**mechanical** [1] - 1:24
**mechanically** [3] - 35:19, 35:21, 37:13
**medical** [1] - 65:3
**meet** [39] - 5:1, 7:15, 8:4, 8:6, 8:12, 9:8, 9:10, 9:12, 11:5, 11:12, 11:15, 11:17, 11:22, 12:10, 15:8, 15:10, 16:4, 29:2, 35:4, 55:6, 56:12, 56:15, 57:24, 63:8, 63:12, 67:3, 68:15, 68:19, 69:2, 71:2, 71:24, 72:3, 72:9, 73:16, 74:23, 78:11, 79:11, 89:2
**meet-and-confer** [5] - 8:6, 8:12, 29:2, 56:12, 57:24
**meeting** [3] - 57:25, 71:1, 84:21
**memo** [1] - 70:23
**memory** [1] - 32:24
**mentions** [1] - 52:17
**Meridan** [5] - 90:24, 91:18, 93:23, 94:24, 95:16
**merits** [1] - 41:15
**met** [4] - 21:2, 63:9, 67:1, 70:22
**metformin** [1] - 30:8
**middle** [3] - 44:16, 52:23, 81:3
**might** [12] - 4:10, 21:12, 21:13, 29:25, 30:4, 30:18, 30:19, 30:21, 39:4, 64:19, 80:10, 96:25
**million** [3] - 75:12, 75:14, 76:7
**millions** [3] - 41:24, 41:25
**mind** [2] - 23:8, 88:15
**minimum** [1] - 52:25
**Minneapolis** [1] - 1:20
**Minnesota** [1] - 1:20
**minute** [1] - 21:23
**misrepresent** [2] - 93:12
**misrepresentation** [3] - 58:13, 59:3, 93:9
**misrepresentations** [2] - 55:24, 63:4

**miss** [1] - 55:21
**missed** [1] - 58:14
**missing** [6] - 41:9, 79:5, 79:10, 81:18, 81:22, 82:17
**misstatements** [1] - 55:23
**Mitchell** [1] - 1:7
**modify** [1] - 53:8
**Mohan** [2] - 82:24, 84:2
**moment** [1] - 67:10
**Monday** [5] - 11:21, 14:4, 14:22, 19:19, 97:9
**money** [1] - 53:21
**monitoring** [1] - 65:3
**month** [2] - 56:16, 57:1
**months** [12] - 9:11, 10:14, 24:13, 36:24, 46:23, 51:17, 64:8, 84:19, 85:6
**Morgantown** [1] - 46:14
**morning** [2] - 16:6, 26:19
**MORRIS** [1] - 2:5
**most** [5] - 14:18, 41:1, 60:6, 80:8, 95:14
**Motion** [1] - 52:17
**motion** [11] - 19:18, 20:1, 41:10, 46:9, 55:1, 55:2, 62:2, 67:12, 79:19, 85:11, 90:7
**motions** [14] - 18:19, 19:17, 52:20, 53:16, 54:7, 54:17, 54:20, 55:8, 57:12, 61:5, 61:18, 61:19, 62:19, 64:2
**move** [8] - 14:5, 14:25, 25:25, 26:4, 57:8, 61:2, 67:7, 77:4
**moved** [1] - 6:22
**movement** [1] - 77:2
**moving** [1] - 32:24
**MR** [89] - 4:13, 4:16, 9:2, 9:21, 12:25, 13:24, 14:15, 15:19, 15:22, 16:20, 16:21, 17:1, 17:4, 17:9, 17:14, 17:16, 17:19, 18:6, 18:14, 18:21, 19:3, 19:5, 20:2, 20:6, 21:24, 22:7, 23:1, 23:9, 23:25, 24:23, 25:12, 25:15, 26:3, 26:6, 26:9,

28:13, 28:16, 31:20,
31:24, 32:1, 32:19,
32:23, 33:3, 34:18,
35:19, 36:2, 36:22,
37:25, 38:25, 39:1,
39:7, 39:23, 41:4,
41:10, 41:22, 42:5,
44:12, 44:15, 45:5,
45:10, 45:15, 46:1,
47:10, 47:11, 47:12,
50:3, 50:8, 50:12,
50:16, 51:1, 51:3,
51:7, 53:12, 61:12,
61:15, 61:24, 63:2,
66:15, 66:18, 66:20,
69:5, 69:20, 70:6,
70:9, 91:8, 93:7,
96:3, 96:10, 96:13
**MS** [86] - 6:6, 6:9,
10:19, 11:25, 12:4,
13:9, 17:25, 18:3,
18:12, 18:15, 18:16,
18:17, 18:22, 18:24,
19:12, 19:24, 20:4,
20:19, 20:25, 21:10,
22:11, 22:13, 22:15,
55:12, 55:14, 56:21,
56:23, 58:15, 58:17,
59:7, 59:10, 59:16,
59:24, 60:2, 66:2,
66:4, 66:21, 68:5,
70:19, 71:7, 71:10,
71:19, 73:6, 73:8,
75:1, 75:11, 76:2,
76:12, 77:8, 79:4,
80:3, 81:2, 82:18,
82:21, 84:3, 84:5,
85:16, 86:7, 86:21,
87:2, 87:23, 88:1,
88:4, 88:7, 88:17,
88:21, 88:23, 89:12,
89:15, 89:22, 90:6,
90:14, 90:20, 90:22,
91:2, 91:7, 91:11,
93:5, 94:19, 94:22,
96:20, 96:24, 97:4,
97:6, 97:12, 97:17
**multiple** [6] - 25:1,
27:2, 52:4, 63:10,
65:4, 76:6
**must** [2] - 8:9
**mute** [4] - 21:13,
22:17, 44:8, 94:19
**muted** [4] - 49:10,
49:11, 55:11, 55:12
**Mylan** [25] - 2:12,
25:21, 26:4, 26:10,
26:16, 27:13, 27:18,
27:19, 28:14, 28:23,
29:10, 32:17, 33:10,
38:3, 38:6, 40:16,

42:5, 42:16, 42:20,
43:6, 46:10, 46:23,
47:3, 47:13, 48:5
**Mylan's** [2] - 28:25,
48:3

# N

**Nagaraju** [2] - 83:3,
83:18
**Nakul** [2] - 15:19,
15:21
**NAKUL** [1] - 2:22
**name** [12] - 17:25,
27:22, 30:1, 30:3,
30:22, 31:3, 31:13,
83:4, 83:15, 84:20,
84:23, 85:7
**named** [1] - 27:23
**names** [3] - 30:14,
40:15, 86:1
**narrow** [4] - 43:11,
43:19, 53:8, 94:13
**Nashik** [1] - 46:14
**national** [1] - 66:10
**nauseam** [1] - 63:8
**NDEA** [1] - 27:15
**NDMA** [3] - 27:15,
34:20, 34:21
**NE** [1] - 2:14
**nearly** [1] - 66:9
**necessary** [8] - 16:12,
19:22, 20:16, 57:3,
60:13, 60:14, 79:12,
79:17
**need** [32] - 9:15,
12:23, 15:16, 17:4,
17:7, 28:7, 28:17,
29:16, 30:10, 34:6,
40:6, 42:1, 50:2,
52:14, 53:5, 53:22,
56:23, 63:8, 69:23,
70:13, 72:18, 72:24,
76:23, 81:16, 81:18,
82:1, 82:10, 85:18,
86:4, 88:4, 88:5,
88:9
**needed** [2] - 21:5,
75:7
**needs** [8] - 5:9, 14:5,
37:11, 39:7, 40:10,
43:17, 43:20, 53:8
**negotiate** [7] - 38:12,
51:14, 51:15, 54:4,
55:20, 63:6, 68:8
**negotiated** [5] - 36:24,
37:3, 42:10, 57:5,
65:9
**negotiating** [1] - 60:17
**negotiation** [2] - 52:9,
55:6

**negotiations** [1] -
25:23
**never** [10] - 46:19,
46:20, 46:25, 52:3,
52:6, 54:25, 58:9,
63:3, 69:12, 72:11
**new** [3] - 30:15, 65:1,
65:15
**NEW** [2] - 1:1, 2:3
**New** [3] - 1:8, 1:14,
2:23
**next** [30] - 9:17, 11:21,
13:2, 14:1, 14:13,
14:23, 15:5, 15:8,
16:17, 16:23, 17:2,
17:18, 21:15, 22:20,
25:19, 47:8, 51:5,
52:22, 53:3, 65:12,
74:20, 77:1, 77:10,
77:11, 82:21, 86:15,
90:14, 90:17, 97:9,
98:4
**nice** [1] - 20:6
**nicely** [1] - 51:10
**night** [3] - 15:15,
17:10, 33:10
**nine** [2] - 38:6, 63:12
**nitrosamine** [8] - 30:1,
30:2, 30:5, 30:6,
30:7, 30:21, 40:1,
43:2
**nitrosamine-
recovered** [1] - 43:2
**nitrosamines** [3] -
30:16, 42:14, 43:6
**nizatidine** [1] - 30:6
**noncustodial** [8] -
77:12, 78:5, 78:9,
78:14, 78:19, 80:5,
80:14, 81:15
**none** [3] - 30:8, 38:1,
38:2
**nonetheless** [1] -
26:10
**nonresponsive** [11] -
29:15, 29:19, 31:18,
32:8, 32:15, 32:17,
35:22, 35:23, 38:22,
40:20, 49:17
**note** [6] - 16:25,
24:24, 54:11, 61:19,
69:8, 79:25
**noted** [2] - 25:17,
82:18
**notes** [1] - 71:18
**nothing** [7] - 17:23,
39:24, 40:1, 40:2,
49:8, 52:16, 52:23
**notice** [3] - 23:14,
39:20, 87:3

**noticed** [1] - 27:9
**notices** [1] - 53:1
**notwithstanding** [1] -
46:20
**November** [3] - 28:22,
29:2, 84:19
**nuanced** [1] - 8:22
**nuances** [1] - 47:24
**NUMBER** [1] - 1:3
**Number** [1] - 53:18
**number** [13] - 28:2,
31:19, 32:4, 33:14,
34:12, 49:22, 56:15,
61:24, 66:22, 67:5,
72:6, 77:22, 91:15
**numbers** [3] - 50:20,
50:22, 64:11
**numerous** [2] - 29:1,
77:14

# O

**o-Xylene** [3] - 34:5,
34:19, 37:6
**oath** [1] - 28:5
**object** [2] - 12:25,
85:2
**objected** [1] - 25:2
**objecting** [3] - 36:3,
60:9
**objection** [1] - 94:9
**objections** [1] - 51:20
**obligation** [2] - 28:23,
36:7
**obligations** [2] -
30:25, 56:8
**obliquely** [1] - 52:6
**observations** [1] -
43:1
**obtained** [2] - 93:18,
93:22
**obviously** [7] - 5:18,
6:1, 8:10, 10:15,
12:25, 24:2, 85:2
**occasion** [1] - 27:20
**occurred** [2] - 33:6,
93:10
**OF** [1] - 1:1
**offensive** [1] - 60:22
**offer** [2] - 92:2, 95:1
**offered** [1] - 94:13
**office** [2] - 31:21,
33:25
**officer** [6] - 84:24,
85:8, 86:11, 86:12
**Official** [1] - 1:22
**official** [1] - 71:18
**often** [1] - 64:15
**OHIO** [1] - 3:3
**old** [1] - 82:12
**once** [9] - 7:6, 25:16,

44:22, 46:9, 50:22,
53:4, 64:2, 67:21,
74:24
**One** [1] - 2:11
**one** [38] - 8:17, 9:23,
13:12, 15:13, 24:4,
24:7, 26:9, 26:13,
26:18, 30:5, 30:19,
32:24, 33:14, 33:16,
35:10, 38:10, 42:17,
42:18, 42:22, 46:12,
47:13, 48:9, 49:5,
59:19, 60:5, 63:4,
67:20, 68:17, 70:7,
71:6, 71:13, 72:9,
82:22, 87:4, 87:12,
92:11, 93:2
**one's** [1] - 21:25
**one-tenth** [1] - 8:17
**ones** [4] - 44:22,
44:24, 74:5, 85:17
**ongoing** [1] - 33:20
**oober** [1] - 33:14
**oober-ripe** [1] - 33:14
**open** [2] - 36:5, 92:25
**operate** [1] - 38:17
**operated** [1] - 31:8
**operating** [1] - 86:11
**operative** [1] - 24:8
**opinion** [4] - 7:14,
7:17, 18:19, 92:23
**opportunity** [10] -
16:4, 38:7, 67:18,
74:22, 85:10, 85:12,
89:5, 89:6, 89:8,
89:11
**oppose** [1] - 52:20
**opposed** [2] - 23:15,
85:19
**opposing** [3] - 82:24,
86:13, 89:23
**optimistic** [1] - 16:9
**options** [1] - 15:9
**oral** [2] - 91:21, 98:4
**order** [42] - 5:16, 5:19,
5:24, 6:11, 6:23,
12:13, 12:19, 16:25,
20:11, 21:16, 21:17,
22:5, 23:10, 23:11,
24:6, 25:9, 27:9,
28:22, 28:25, 36:25,
37:4, 38:12, 38:13,
38:17, 38:21, 41:13,
42:6, 43:24, 46:16,
47:4, 47:5, 47:11,
47:16, 52:18, 53:18,
53:25, 57:16, 79:19,
82:4, 85:11, 90:7,
98:3
**Order** [1] - 6:24

*ordered* [7] - 28:10, 42:19, 56:9, 79:15, 81:7, 84:8, 98:3
*orderly* [1] - 64:1
*Orders* [1] - 31:7
*orders* [10] - 5:13, 29:13, 31:6, 53:15, 53:16, 54:2, 61:19, 67:18, 67:21, 98:2
*organization* [1] - 66:12
*organizational* [4] - 63:14, 65:24, 66:8
*originally* [2] - 35:6, 53:23
*ORLEANS* [1] - 2:3
*otherwise* [3] - 29:16, 29:20, 92:21
*ourselves* [2] - 59:4, 61:3
*outcome* [1] - 57:15
*outlined* [1] - 72:22
*outlining* [1] - 57:19
*Outlook* [2] - 78:24, 79:2
*outset* [1] - 57:12
*outside* [6] - 10:21, 27:21, 28:1, 43:18, 93:15, 93:18
*outstanding* [2] - 19:6, 19:18
*overarching* [1] - 92:8
*overcome* [1] - 38:18
*overlapping* [1] - 60:14
*overly* [3] - 79:12, 79:20, 85:3
*overseas* [3] - 74:7, 74:13, 75:17
*overturn* [2] - 39:2, 40:8
*overwhelming* [1] - 44:14
*own* [1] - 63:5
*Oxford* [1] - 2:11

## P

*P.C* [2] - 1:15, 2:17
*p.m* [5] - 1:9, 4:3, 97:13, 97:14, 98:7
*Page* [7] - 44:11, 49:19, 71:20, 77:19, 83:2
*page* [3] - 57:4, 90:2
*pages* [5] - 41:24, 57:18, 92:20, 92:24
*papers* [2] - 8:2, 85:20
*parameters* [1] - 72:22
*pared* [2] - 33:23, 57:11

*parenthetically* [1] - 27:3
*pari* [1] - 49:2
*PARK* [1] - 3:6
*Parkway* [2] - 1:13, 2:19
*Part* [1] - 77:11
*part* [17] - 10:23, 11:7, 27:17, 29:17, 33:4, 38:14, 38:23, 43:6, 43:10, 47:8, 67:18, 67:19, 71:23, 77:11, 77:15, 92:1
*participants* [1] - 56:7
*participate* [4] - 25:6, 56:3, 56:11, 61:8
*participating* [3] - 24:15, 61:8, 67:25
*particular* [4] - 27:19, 44:2, 49:15, 49:23
*particularly* [3] - 79:13, 82:7, 85:5
*Parties* [1] - 29:17
*parties* [15] - 7:3, 7:7, 8:9, 18:4, 18:18, 19:13, 19:15, 21:6, 28:24, 70:22, 70:24, 70:25, 71:2, 74:25, 94:12
*parties'* [2] - 51:9, 52:12
*parts* [1] - 58:2
*party* [9] - 52:15, 91:13, 91:16, 92:4, 92:9, 92:10, 94:6, 94:18, 96:17
*pass* [1] - 74:19
*passage* [1] - 58:7
*passing* [1] - 15:15
*paths* [1] - 78:24
*pause* [6] - 52:9, 53:6, 56:19, 63:6, 65:21, 68:6
*Pedano* [2] - 1:22, 98:15
*penalized* [2] - 24:12, 63:25
*penalties* [1] - 8:19
*pending* [1] - 55:1, 57:13
*Pennsylvania* [4] - 1:17, 2:7, 2:11, 2:19
*people* [12] - 9:13, 17:6, 24:16, 31:15, 75:3, 76:6, 83:11, 84:10, 84:15, 85:21, 86:3
*per* [2] - 75:21, 76:22
*percent* [3] - 8:17, 28:6, 44:18

*perfect* [1] - 62:6
*perhaps* [6] - 11:22, 18:17, 25:18, 25:24, 44:23, 49:14
*period* [1] - 51:18
*peripheral* [1] - 21:16
*permission* [4] - 10:20, 17:24, 19:7, 26:7
*person* [10] - 33:10, 49:1, 60:6, 73:21, 77:22, 83:7, 83:17, 83:20, 84:2, 86:4
*person's* [2] - 79:1, 80:19
*personnel* [1] - 64:13
*persons* [1] - 82:7
*perspective* [5] - 6:10, 6:13, 62:7, 62:17, 65:20
*pervasive* [2] - 42:14, 43:6
*petition* [1] - 37:22
*Pharma* [5] - 2:16, 2:20, 2:20, 84:22, 84:25
*pharmaceutical* [1] - 46:6
*Pharmaceutical* [2] - 2:15, 23:5
*Pharmaceuticals* [4] - 2:7, 2:8, 2:12, 2:16
*pharmacies* [1] - 57:11
*Pharmacy* [1] - 3:7
*pharmacy* [4] - 55:20, 58:3, 59:25, 66:11
*phase* [1] - 65:12
*Philadelphia* [2] - 1:17, 2:7
*phone* [5] - 21:13, 69:11, 80:20, 83:4
*phrases* [2] - 27:11, 28:2
*pick* [1] - 34:2
*picked* [1] - 34:9
*picture* [1] - 61:17
*piece* [1] - 43:16
*Piedmont* [1] - 2:14
*PIETRAGALLO* [1] - 2:9
*Pittsburgh* [1] - 2:11
*place* [7] - 29:14, 30:15, 40:19, 40:21, 48:2, 57:19, 72:3
*placed* [4] - 27:15, 47:17, 48:8, 74:6
*places* [3] - 42:15, 80:5, 80:11
*Plaintiff* [1] - 65:3

*plaintiff* [10] - 22:15, 24:1, 28:21, 30:2, 30:23, 31:4, 36:6, 45:7, 45:14, 70:6
*plaintiffs* [81] - 6:10, 6:16, 6:17, 6:22, 7:5, 7:9, 7:16, 8:5, 8:14, 10:10, 11:5, 11:6, 15:24, 16:1, 16:4, 16:9, 16:10, 16:11, 16:14, 16:15, 20:14, 21:18, 21:21, 23:23, 29:3, 29:12, 31:13, 32:3, 33:6, 33:19, 38:7, 38:19, 40:14, 45:20, 46:8, 47:6, 47:20, 50:19, 51:8, 53:23, 54:6, 54:11, 54:16, 54:22, 54:25, 55:3, 55:8, 56:10, 57:7, 57:23, 58:2, 58:5, 58:19, 60:2, 60:12, 60:19, 61:1, 62:2, 62:8, 62:18, 65:1, 67:19, 68:7, 69:6, 71:21, 73:16, 74:15, 75:21, 75:22, 76:23, 79:5, 81:17, 84:7, 84:17, 84:23, 86:22, 89:3, 91:16, 92:5, 96:15
*Plaintiffs* [4] - 1:14, 1:18, 1:21, 2:4
*plaintiffs'* [12] - 7:13, 7:25, 16:6, 20:13, 55:24, 56:14, 56:16, 56:25, 60:8, 61:20, 67:12, 95:7
*Plaintiffs'* [1] - 50:10
*plan* [2] - 13:1, 62:18
*plane* [1] - 24:2
*play* [2] - 62:11, 62:13
*playing* [1] - 25:7
*plays* [1] - 62:3
*pleadings* [6] - 57:7, 62:15, 67:4, 67:9, 67:16, 69:4
*plenty* [3] - 13:13, 17:6, 38:7
*plow* [1] - 10:12
*plowing* [1] - 10:12
*point* [26] - 7:14, 7:25, 8:16, 8:24, 10:10, 13:16, 15:3, 15:6, 29:9, 29:10, 31:12, 34:9, 37:11, 45:23, 52:3, 57:6, 58:18, 61:7, 73:3, 75:24, 75:25, 92:23, 94:11, 94:23, 96:4, 96:13

*pointed* [1] - 38:5
*points* [2] - 8:14, 27:7
*policies* [3] - 63:20, 64:3, 64:12
*policy* [1] - 64:14
*polite* [1] - 36:12
*position* [20] - 4:18, 5:7, 7:25, 8:5, 23:17, 31:14, 35:8, 57:9, 57:18, 58:10, 59:3, 59:10, 62:9, 62:22, 73:20, 74:2, 74:14, 76:12, 85:1, 88:25
*positions* [2] - 57:1, 59:17
*possession* [1] - 73:14
*possible* [4] - 16:17, 56:2, 72:13, 97:12
*possibly* [3] - 18:7, 54:18, 66:12
*practical* [1] - 35:11
*practically* [1] - 33:17
*practice* [2] - 55:1, 55:2
*precedence* [1] - 13:17
*precedent* [1] - 6:11
*precise* [1] - 65:5
*precisely* [1] - 29:5
*predicted* [1] - 48:10
*prefer* [2] - 76:21, 79:18
*prejudice* [4] - 33:18, 35:24, 62:2, 82:15
*preliminary* [1] - 57:18
*premature* [1] - 49:13
*premise* [1] - 63:3
*preparation* [1] - 95:17
*prepared* [7] - 8:14, 9:12, 11:6, 11:8, 23:18, 34:11, 95:25
*prerogative* [1] - 75:8
*presence* [1] - 43:7
*PRESENT* [1] - 3:11
*present* [7] - 12:7, 12:14, 28:6, 42:14, 43:3, 62:4, 97:14
*presented* [2] - 14:2, 88:18
*press* [1] - 56:19
*pressed* [1] - 35:3
*pretty* [5] - 9:11, 44:24, 58:10, 66:7, 96:4
*previous* [1] - 96:17
*previously* [4] - 23:4, 23:17, 24:24, 85:4
*pricing* [1] - 65:14

***Princeton*** [1] - 2:23
***Prinston*** [1] - 2:7
***prioritize*** [1] - 16:1
***priority*** [2] - 75:17, 79:22
***Priselac*** [7] - 6:6, 10:18, 12:3, 14:3, 97:5, 97:6, 98:4
***PRISELAC*** [11] - 2:5, 6:6, 6:9, 10:19, 11:25, 12:4, 13:9, 97:4, 97:6, 97:12, 97:17
***privilege*** [12] - 4:9, 7:4, 13:21, 14:10, 14:11, 17:20, 91:24, 92:7, 92:17, 93:2, 93:20, 94:16
***problem*** [17] - 11:7, 19:1, 27:16, 36:23, 41:8, 42:9, 42:12, 42:13, 43:5, 43:21, 48:4, 48:5, 50:7, 81:24, 88:17, 89:18, 90:20
***problematic*** [1] - 58:4
***problems*** [2] - 4:24, 27:5
***procedural*** [1] - 90:6
***Procedure*** [1] - 30:25
***Procedures*** [1] - 39:3
***proceed*** [3] - 20:1, 53:4, 54:22
***proceeding*** [1] - 6:20
***proceedings*** [2] - 98:7, 98:13
***PROCEEDINGS*** [1] - 4:1
***Proceedings*** [1] - 1:24
***process*** [27] - 7:6, 8:6, 8:13, 22:25, 25:7, 27:17, 40:18, 40:21, 40:24, 41:6, 41:8, 41:14, 41:20, 42:12, 43:7, 43:17, 43:24, 48:8, 56:4, 56:6, 56:12, 57:24, 64:1, 72:1, 73:4, 74:20, 78:3
***processed*** [1] - 74:5
***processes*** [2] - 29:2, 39:18
***produce*** [27] - 8:19, 10:21, 30:11, 30:20, 33:5, 35:23, 36:7, 38:15, 38:21, 41:1, 41:13, 43:9, 51:15, 65:8, 66:8, 68:24, 72:4, 73:18, 79:14,

79:15, 81:7, 81:21, 84:8, 85:13, 86:10, 86:24
***produced*** [52] - 1:25, 5:6, 5:15, 5:16, 6:13, 7:21, 10:1, 11:4, 13:6, 13:14, 13:18, 28:10, 29:10, 29:16, 29:25, 31:8, 34:15, 34:17, 35:13, 38:3, 39:8, 39:21, 40:10, 41:24, 42:21, 43:12, 45:19, 46:4, 46:10, 46:13, 46:16, 46:20, 47:4, 49:20, 49:24, 57:22, 60:13, 64:22, 64:24, 77:24, 78:4, 79:7, 80:1, 80:16, 81:8, 81:10, 81:12, 82:7, 83:13, 83:16
***producing*** [8] - 32:10, 35:5, 35:18, 35:25, 37:10, 41:2, 81:12, 91:23
***product*** [16] - 27:15, 29:19, 30:6, 30:7, 30:8, 64:15, 91:24, 92:7, 92:17, 93:2, 93:20, 93:25, 94:16, 95:21, 95:24, 96:7
***production*** [22] - 5:24, 16:7, 25:3, 28:19, 28:24, 29:4, 33:6, 36:19, 40:5, 44:6, 59:22, 60:17, 71:22, 72:5, 72:22, 77:13, 78:6, 81:3, 82:6, 84:20, 89:16, 89:18
***productions*** [6] - 15:25, 16:5, 40:13, 56:5, 79:6, 82:2
***PRODUCTS*** [1] - 1:4
***products*** [7] - 30:11, 30:17, 30:19, 42:12, 46:7, 46:12, 46:15
***program*** [2] - 49:23, 79:2
***progress*** [2] - 15:23, 70:25
***project*** [2] - 17:7, 72:19
***prompt*** [1] - 88:12
***promptly*** [1] - 90:21
***proper*** [4] - 39:5, 40:17, 41:17, 94:18
***proposal*** [1] - 13:10
***propose*** [3] - 25:19, 50:4, 50:18
***proposed*** [6] - 21:3, 22:5, 25:9, 60:18,

83:1, 83:21
***proposing*** [1] - 13:10
***propounded*** [1] - 51:19
***prospect*** [1] - 23:7
***protect*** [3] - 87:5, 87:18, 95:9
***protected*** [4] - 42:5, 85:9, 93:24, 94:15
***protection*** [3] - 95:21, 95:24, 96:7
***protective*** [7] - 5:16, 6:23, 42:6, 43:24, 79:19, 85:11, 90:7
***protects*** [2] - 43:25, 95:9
***protocol*** [2] - 29:17, 31:7
***provide*** [9] - 45:16, 51:24, 74:22, 76:20, 76:25, 80:2, 83:3, 90:4, 92:14
***provided*** [3] - 7:4, 50:19, 78:7
***providing*** [4] - 7:3, 34:13, 81:17, 87:9
***provisions*** [1] - 5:2
***provocative*** [1] - 34:22
***pull*** [2] - 50:23
***pulled*** [2] - 87:16, 90:1
***punting*** [1] - 71:11
***purchase*** [1] - 63:17
***purported*** [1] - 7:10
***purpose*** [2] - 24:7, 91:19
***purposes*** [1] - 24:7
***pursuant*** [1] - 84:16
***pursuing*** [1] - 7:25
***push*** [4] - 9:15, 15:10, 54:9, 68:6
***pushing*** [2] - 10:13, 37:13
***put*** [18] - 5:25, 17:19, 19:14, 22:1, 30:15, 33:24, 51:11, 64:10, 69:21, 72:3, 73:1, 74:10, 74:12, 74:14, 75:17, 76:18, 85:19, 87:10
***putting*** [1] - 10:12

### Q

***quality*** [8] - 4:24, 14:24, 26:16, 33:9, 83:19, 84:24, 85:8, 86:12
***questionable*** [1] - 58:4

***questioned*** [1] - 77:16
***questions*** [13] - 7:12, 11:4, 59:12, 59:13, 59:18, 60:5, 60:12, 60:24, 60:25, 65:25, 66:22, 67:5, 67:7
***quickest*** [1] - 75:16
***quickly*** [10] - 5:7, 11:24, 13:7, 22:17, 74:8, 74:18, 75:18, 75:25, 76:22, 89:8
***quite*** [4] - 7:13, 26:2, 60:20, 79:5
***quoting*** [1] - 63:5

### R

***rabbit*** [1] - 96:11
***radically*** [1] - 53:16
***raise*** [2] - 86:8, 97:3
***raised*** [14] - 9:13, 15:24, 16:1, 16:9, 16:10, 16:15, 17:23, 19:21, 20:12, 45:23, 52:4, 53:3, 70:23, 85:7
***Ram*** [2] - 82:24, 84:2
***random*** [5] - 34:6, 37:2, 40:22, 49:23, 50:21
***randomly*** [2] - 32:9, 32:10
***Rao*** [7] - 82:24, 84:2, 85:24, 86:9, 87:5, 87:9
***Rao's*** [3] - 84:17, 85:13, 85:19
***RASPANTI*** [1] - 2:9
***rather*** [5] - 27:4, 32:10, 43:10, 60:21, 67:20
***Re*** [1] - 87:19
***RE*** [1] - 1:4
***reach*** [5] - 16:19, 17:10, 69:3, 73:17, 74:24
***reached*** [4] - 15:2, 73:21, 90:23, 91:22
***reaction*** [1] - 32:6
***read*** [4] - 15:13, 15:14, 43:3, 88:4
***readily*** [1] - 44:24
***reading*** [1] - 49:2
***reads*** [1] - 29:17
***ready*** [3] - 51:23, 53:7, 89:19
***reality*** [2] - 10:9, 10:23
***really*** [25] - 8:20, 8:22, 10:21, 10:23, 13:14, 15:8, 27:16, 29:23,

31:16, 32:15, 33:21, 36:12, 36:14, 40:7, 42:1, 42:9, 42:11, 43:3, 47:3, 59:17, 60:24, 68:1, 76:7, 87:6, 92:21
***reargue*** [1] - 40:8
***reason*** [9] - 27:13, 47:18, 74:17, 75:7, 76:17, 93:1, 94:23, 94:25, 95:10
***reasonable*** [1] - 49:1
***reasons*** [3] - 57:6, 72:9, 85:4
***reassurance*** [2] - 73:3, 81:19
***receive*** [1] - 49:21
***received*** [8] - 20:10, 26:19, 58:9, 60:22, 73:10, 78:6, 78:13, 83:24
***receiving*** [1] - 60:22
***recent*** [1] - 14:19
***recipe*** [1] - 33:12
***recommendations*** [1] - 95:11
***record*** [4] - 80:23, 88:5, 94:7, 98:13
***recorded*** [1] - 1:24
***recovered*** [5] - 27:17, 27:21, 43:2, 43:8, 48:12
***recycled*** [3] - 27:21, 48:7, 48:11
***red*** [6] - 51:24, 53:1, 57:25, 59:21, 60:23, 69:11
***redacted*** [1] - 65:10
***Reddy*** [3] - 83:2, 83:6
***Reddy's*** [1] - 83:15
***redepose*** [2] - 37:22, 43:15
***refer*** [2] - 87:18, 96:7
***reference*** [1] - 71:20
***referenced*** [5] - 6:24, 69:9, 83:7, 84:6, 94:2
***references*** [1] - 27:11
***referred*** [4] - 24:5, 27:25, 28:1
***refused*** [3] - 12:12, 39:9, 43:9
***refusing*** [1] - 61:8
***regard*** [4] - 94:2, 94:10, 95:8, 96:16
***regarding*** [7] - 8:6, 28:25, 34:20, 46:18, 61:4, 63:19, 84:12
***regardless*** [2] - 63:21, 92:16

**regulatory** [8] - 4:25, 5:14, 46:3, 46:10, 46:13, 46:18, 47:7, 78:9
**rejoin** [1] - 18:18
**relate** [1] - 29:20
**related** [2] - 23:15, 23:16
**relates** [1] - 61:5
**relating** [4] - 30:11, 70:24, 78:14, 82:25
**relationship** [2] - 93:11, 93:15
**released** [1] - 76:1
**relevance** [1] - 45:18
**relevant** [32] - 7:18, 7:22, 16:2, 27:10, 28:9, 29:10, 30:4, 30:9, 30:23, 31:2, 31:5, 31:14, 35:14, 36:4, 36:7, 36:9, 36:16, 37:17, 38:8, 38:19, 38:21, 39:5, 42:2, 42:20, 49:6, 81:23, 82:10, 83:17, 85:25, 92:20, 96:1
**relied** [1] - 43:1
**relief** [1] - 15:7
**rely** [1] - 96:22
**remain** [1] - 74:4
**remainder** [1] - 73:24
**remains** [1] - 35:2
**remedy** [1] - 79:8
**remedying** [1] - 16:15
**remember** [2] - 32:25, 33:3
**remote** [1] - 4:1
**REMOTE** [1] - 1:6
**renew** [1] - 82:16
**rep** [1] - 65:1
**repeat** [1] - 68:4
**repeatedly** [3] - 77:16, 78:11, 84:21
**replied** [1] - 62:25
**replies** [3] - 4:4, 52:21, 69:2
**reply** [4] - 14:3, 69:1, 90:5, 90:21
**report** [15] - 9:25, 10:22, 16:17, 16:23, 34:6, 34:20, 42:25, 48:16, 49:5, 74:22, 74:24, 76:20, 76:25, 77:2
**Reporter** [1] - 1:22
**reporter** [1] - 97:22
**REPORTER** [9] - 20:22, 45:8, 45:11, 59:5, 59:9, 61:22, 68:3, 70:12, 70:14

**Reporter/ Transcriber** [1] - 98:15
**reports** [6] - 42:21, 43:4, 49:2, 49:9, 49:12, 81:14
**representation** [1] - 41:11
**representations** [2] - 82:5, 90:19
**representative** [1] - 26:16
**representing** [1] - 28:14
**represents** [1] - 28:6
**reps** [3] - 63:16, 64:18, 65:14
**request** [18] - 5:5, 8:21, 11:11, 19:16, 37:18, 43:23, 48:22, 49:5, 49:6, 63:14, 64:23, 65:15, 65:17, 66:9, 81:24, 82:15, 82:24, 86:6
**requests** [32] - 20:16, 21:3, 21:4, 21:5, 31:2, 51:19, 53:1, 59:22, 59:23, 60:20, 61:16, 62:10, 62:12, 63:11, 63:12, 63:15, 63:16, 63:17, 64:25, 65:1, 65:2, 65:9, 66:22, 68:18, 69:16, 69:22, 69:23, 78:10, 78:15, 78:20, 80:13, 80:18
**require** [2] - 25:9, 43:14
**required** [8] - 5:14, 6:14, 8:5, 23:20, 25:5, 30:16, 30:20, 53:20
**requirement** [1] - 39:6
**requirements** [1] - 25:2
**requires** [1] - 22:8
**research** [1] - 83:5
**resolution** [5] - 15:17, 16:19, 16:23, 28:8, 71:4
**resolve** [4] - 11:24, 16:10, 21:2, 70:21
**resolved** [4] - 11:14, 20:15, 22:22, 29:1
**resort** [1] - 96:7
**resources** [1] - 82:1
**respect** [11] - 16:18, 19:13, 24:25, 41:18, 45:24, 46:4, 48:24, 62:8, 67:14, 68:12,

75:6
**respectfully** [17] - 11:11, 17:25, 19:15, 37:12, 37:18, 42:3, 43:23, 47:10, 47:12, 47:16, 48:15, 48:20, 54:15, 68:19, 79:4, 81:20, 89:15
**respective** [1] - 51:9
**respond** [10] - 62:10, 62:12, 62:14, 67:20, 68:14, 69:14, 70:2, 78:20, 79:6, 80:17
**responded** [1] - 27:6
**responding** [1] - 91:20
**response** [12] - 9:4, 10:17, 47:5, 64:22, 65:4, 66:24, 68:20, 69:16, 69:21, 78:17, 93:19, 93:23
**responses** [5] - 58:20, 61:1, 83:23, 87:12, 92:15
**responsible** [1] - 58:8
**responsive** [23] - 26:23, 27:10, 29:16, 29:18, 31:2, 32:13, 32:14, 32:15, 36:4, 36:7, 36:21, 40:12, 40:23, 44:14, 50:1, 67:24, 78:14, 79:8, 80:12, 81:21, 81:23, 84:9
**responsiveness** [1] - 45:18
**rest** [1] - 94:14
**restart** [1] - 56:24
**resulted** [1] - 27:16
**results** [4] - 30:1, 30:5, 30:6, 30:8
**retail** [1] - 59:25, 66:11
**Retailer** [1] - 3:7
**retailer** [4] - 51:5, 53:11, 55:18, 58:3
**retailers** [11] - 52:2, 52:7, 53:14, 57:10, 61:10, 64:12, 68:11, 69:9, 69:18, 69:20, 69:25
**retailers'** [1] - 62:17
**retained** [2] - 91:19, 95:13
**return** [1] - 4:12
**revealed** [1] - 48:6
**review** [15] - 7:5, 29:1, 32:9, 32:11, 32:12, 41:11, 45:6, 45:13, 45:19, 49:20, 49:24,

73:15, 81:3, 91:23
**reviewed** [1] - 12:5
**reviewing** [5] - 27:8, 33:19, 41:2, 73:13, 78:22
**revisit** [3] - 46:22, 47:7, 47:18
**rewrite** [2] - 29:7, 29:12
**RFP** [2] - 60:3, 60:11
**RFPs** [5] - 59:22, 60:25, 66:5, 67:6, 68:8
**Richer** [2] - 55:18, 66:15
**RICHER** [8] - 3:6, 59:16, 59:24, 60:2, 66:2, 66:4, 66:21, 68:5
**richer** [6] - 55:19, 59:11, 59:15, 61:11, 61:15, 69:7
**Riddell** [1] - 93:4
**ring** [1] - 48:5
**ripe** [8] - 26:11, 26:13, 31:9, 33:14, 42:17, 43:13, 47:2, 71:4
**risk** [4] - 30:16, 30:18, 30:22
**RMR** [1] - 98:15
**road** [5] - 15:9, 36:18, 37:8, 38:11, 86:19
**Road** [2] - 2:14, 2:23
**Robert** [1] - 3:12
**roll** [1] - 33:17
**rolling** [2] - 67:19, 74:16
**root** [3] - 27:14, 47:25, 48:3
**Roseland** [1] - 1:14
**Roszel** [1] - 2:23
**round** [2] - 35:3, 56:5
**rounded** [1] - 73:12
**RPR** [1] - 98:15
**rubber** [1] - 93:4
**Ruben** [1] - 25:15
**RUBEN** [1] - 1:16
**Rule** [7] - 36:3, 51:19, 53:16, 67:15, 78:10, 78:15, 78:20
**rule** [1] - 6:11
**ruled** [1] - 40:6
**Rules** [2] - 30:25, 39:3
**rules** [1] - 29:13
**ruling** [19] - 20:1, 24:25, 46:2, 46:21, 73:10, 75:21, 84:6, 84:10, 84:16, 92:4, 92:25, 93:1, 93:4, 93:19, 94:4, 94:17,

95:1, 95:3, 96:14
**rulings** [11] - 30:9, 40:13, 40:17, 41:5, 46:9, 46:23, 47:19, 61:6, 67:15, 73:12, 76:22
**run** [1] - 49:22
**running** [1] - 26:25
**rush** [1] - 54:9

---

**S**

**sample** [4] - 34:13, 34:14, 36:19, 50:21
**samples** [1] - 34:6
**sampling** [5] - 32:8, 40:22, 44:25, 49:23
**SARAH** [1] - 3:5
**sarah** [1] - 55:17
**sat** [1] - 92:21
**Saturday** [3] - 26:19, 33:10, 33:22
**save** [1] - 80:9
**saw** [3] - 63:9, 86:7, 89:24
**scant** [1] - 4:21
**scenario** [1] - 36:20
**schedule** [5] - 14:1, 32:25, 72:25, 97:8, 97:12
**schedules** [1] - 98:3
**Schneider** [11] - 7:1, 28:22, 35:5, 40:6, 42:18, 47:17, 52:5, 91:15, 92:18, 94:5, 94:12
**Schneider's** [4] - 6:20, 46:21, 92:25, 94:9
**scope** [4] - 10:21, 51:16, 60:9, 78:10
**seal** [3] - 19:17, 19:18, 20:1
**search** [5] - 37:1, 38:12, 38:14, 38:23, 42:11
**searched** [13] - 78:8, 78:21, 78:25, 80:1, 80:7, 80:15, 80:17, 81:7, 81:15, 81:20, 82:6, 82:9, 82:10
**searching** [1] - 67:24
**second** [8] - 12:13, 18:10, 26:12, 27:23, 35:10, 42:16, 56:10, 72:5
**secondly** [1] - 11:3
**secrecy** [2] - 6:15, 8:3
**secret** [1] - 14:11
**secrets** [2] - 4:8, 4:15
**sections** [1] - 5:22
**see** [22] - 5:18, 5:23,

15:11, 23:18, 41:8, 44:22, 44:24, 48:18, 48:19, 48:21, 49:2, 49:4, 49:7, 50:7, 54:17, 62:3, 69:2, 77:1, 77:20, 78:24, 85:7
**seeing** [1] - 67:16, 92:2
**seeking** [9] - 38:8, 46:8, 52:7, 55:25, 56:8, 60:12, 60:19, 84:7, 84:17
**seem** [1] - 78:23
**selected** [2] - 32:9, 32:10
**sell** [1] - 63:17
**send** [6] - 50:18, 64:9, 69:16, 72:6, 72:7, 72:13
**sending** [2] - 44:19, 60:2
**sense** [8] - 43:11, 56:19, 57:5, 62:6, 67:3, 67:9, 68:5, 68:7
**sensitive** [2] - 82:11, 97:23
**sent** [17] - 29:3, 32:2, 33:11, 33:25, 56:16, 56:25, 57:17, 58:8, 69:12, 75:4, 75:7, 91:21, 92:24, 93:13, 94:2, 94:4, 95:11
**Sentry** [1] - 2:19
**separate** [1] - 24:10
**September** [1] - 29:14
**series** [3] - 4:18, 39:18, 66:21
**serve** [4] - 20:15, 21:4, 24:13, 65:15
**served** [7] - 23:4, 25:4, 51:11, 51:20, 58:19, 61:18, 91:16
**service** [10] - 22:20, 22:24, 23:5, 23:12, 24:19, 24:20, 25:1, 25:4, 25:9
**services** [1] - 93:22
**set** [10] - 5:1, 12:18, 32:12, 39:15, 40:15, 41:15, 42:18, 53:5, 66:21, 68:17
**sets** [2] - 52:1, 53:2
**seven** [4] - 5:22, 30:19, 57:4, 64:8
**seven-page** [1] - 57:4
**several** [1] - 28:16
**Shah** [1] - 15:20
**SHAH** [4] - 2:22,

15:19, 15:22, 16:20
**shah** [1] - 16:16
**sheets** [1] - 70:24
**Sheets** [1] - 65:3
**shelf** [1] - 64:15
**ship** [3] - 72:12, 74:13, 75:17
**ships** [1] - 15:15
**shirk** [1] - 56:8
**shoes** [1] - 29:21
**short** [3] - 27:9, 33:22, 71:12
**shortly** [2] - 70:20, 81:12, 84:14
**show** [2] - 52:23, 65:13
**showed** [2] - 78:25, 92:16
**showing** [1] - 38:19
**shown** [2] - 10:5, 77:21
**side** [6] - 8:18, 21:22, 59:20, 64:25, 68:13, 95:7
**side's** [3] - 15:15, 15:16, 65:4
**sides** [2] - 12:7, 67:7
**sight** [1] - 36:23
**sign** [2] - 18:8, 21:17
**signature** [1] - 22:9
**signed** [1] - 83:22
**significant** [4] - 15:23, 56:4, 56:15, 58:10
**significantly** [2] - 43:1, 57:11
**signs** [1] - 87:12
**similar** [4] - 23:11, 36:20, 57:9, 89:4
**similarly** [2] - 25:5, 78:1
**simple** [1] - 60:17
**simply** [19] - 16:3, 24:8, 31:3, 36:2, 36:4, 36:11, 40:8, 40:14, 41:11, 41:15, 48:23, 51:11, 60:9, 60:16, 60:17, 61:7, 61:10, 63:5, 68:22
**simultaneously** [1] - 92:6
**single** [2] - 66:13, 67:14
**sister** [1] - 42:25
**sitting** [1] - 37:4
**situation** [3] - 27:7, 29:12, 61:3
**situations** [1] - 29:24
**six** [5] - 24:13, 46:23, 57:4, 57:18, 64:2
**sixth** [1] - 57:15

**skepticism** [1] - 14:21
**Slater** [18] - 4:5, 4:6, 4:7, 9:1, 10:22, 11:8, 12:10, 12:18, 13:12, 13:23, 14:4, 14:14, 17:18, 19:2, 19:25, 20:8, 20:10, 21:20
**SLATER** [19] - 1:12, 1:13, 4:13, 4:16, 9:2, 9:21, 12:25, 13:24, 14:15, 16:21, 17:4, 17:19, 18:6, 18:14, 18:21, 19:3, 19:5, 20:2, 20:6
**sleeves** [1] - 33:17
**slightly** [1] - 23:14
**slippery** [1] - 47:8
**slope** [1] - 47:9
**small** [2] - 77:17, 78:13
**smaller** [1] - 32:12, 34:8
**smarter** [1] - 75:3
Smith [3] - 3:12, 52:17
**SMITH** [2] - 18:17, 18:22
**snail** [2] - 72:6, 72:7
**Solco** [1] - 2:8
**sold** [1] - 27:16
**solicit** [1] - 61:1
**solvent** [9] - 27:17, 27:18, 27:20, 27:21, 42:13, 43:2, 43:8, 48:7, 48:12
**someone** [8] - 10:2, 29:25, 77:22, 83:22, 85:18, 85:24, 85:25, 87:14
**soon** [1] - 83:12
**sooner** [1] - 43:20
**SOP** [1] - 81:9
**SOPs** [4] - 14:25, 70:3, 70:4, 81:7
**sorry** [14] - 9:20, 10:2, 12:4, 20:22, 56:23, 58:14, 59:5, 61:22, 65:15, 66:16, 68:3, 84:12, 87:20, 88:23
**sort** [7] - 9:4, 24:17, 29:23, 64:14, 67:22, 77:10, 93:15
**sought** [4] - 5:16, 35:9, 43:21, 55:3
**sound** [1] - 91:12
**source** [4] - 78:8, 80:8, 82:9, 82:10
**sources** [13] - 77:12, 78:5, 78:14, 78:19, 78:21, 79:25, 80:6, 80:14, 80:16, 80:17,

81:15, 81:19, 82:5
**South** [1] - 2:6
**speaking** [3] - 15:18, 19:12, 44:20
**SPECIAL** [1] - 1:10
**special** [1] - 14:16
**Special** [1] - 4:2
**specific** [7] - 12:18, 21:4, 25:20, 60:11, 65:25, 94:10, 96:6
**specifically** [1] - 15:25
**specifics** [3] - 61:16, 68:8, 69:22
**speed** [1] - 54:8
**speedy** [1] - 41:16
**spell** [1] - 51:9
**spend** [1] - 81:16
**spent** [1] - 54:21
**spite** [1] - 66:6
**spokesperson** [2] - 21:21, 23:23
**spreadsheet** [4] - 32:3, 33:25, 39:25, 50:18
**squarely** [1] - 5:19
**STAAR** [1] - 96:4
**stand** [3] - 16:18, 16:24, 77:1
**standard** [1] - 40:17
**STANOCH** [10] - 1:16, 23:25, 25:12, 51:7, 63:2, 66:15, 66:18, 66:20, 69:5, 70:6
**stanoch** [1] - 23:24
**Stanoch** [12] - 24:1, 25:8, 25:17, 51:8, 61:17, 62:25, 66:6, 66:25, 67:11, 69:1, 69:5, 70:2
**start** [4] - 6:9, 20:23, 45:10, 71:13
**started** [5] - 26:14, 73:13, 79:16, 91:12, 96:14
**starting** [2] - 71:17, 71:20
**state** [4] - 4:8, 4:15, 6:15, 14:11
**statement** [7] - 22:8, 73:20, 74:2, 74:14, 76:13, 85:1, 88:25
**STATES** [1] - 1:1
**States** [1] - 27:16
**statistically** [2] - 32:7, 49:24
**STATUS** [1] - 1:5
**status** [9] - 16:17, 16:23, 22:17, 40:1, 53:3, 74:22, 76:20, 76:25, 77:2

**statute** [1] - 8:10
**stay** [11] - 52:3, 52:6, 52:8, 52:10, 53:6, 54:25, 56:1, 57:12, 67:22, 68:12, 68:23
**stays** [1] - 64:15
**Steering** [1] - 50:10
**stenography** [1] - 1:24
**step** [1] - 32:21
**steps** [1] - 53:24
**Steve** [2] - 77:21, 87:7
**Steven** [1] - 23:2
**STEVEN** [1] - 2:14
**still** [5] - 52:23, 54:18, 63:23, 69:4, 85:22
**stop** [2] - 48:17, 53:19
**stores** [1] - 66:11
**Stoy** [4] - 31:21, 32:1, 50:13, 50:16
**STOY** [4] - 2:10, 31:24, 32:1, 50:16
**Street** [2] - 1:17, 2:6
**STREET** [2] - 2:3, 3:3
**Streets** [1] - 1:7
**stricken** [2] - 6:12, 9:16
**strike** [2] - 5:5
**strongly** [1] - 34:14
**struggling** [1] - 60:25
**study** [1] - 88:12
**stuff** [1] - 95:4
**subject** [6] - 5:3, 39:19, 90:23, 91:17, 91:23, 92:24
**subjects** [1] - 12:15
**submission** [4] - 15:13, 15:14, 56:17, 57:2
**submissions** [1] - 55:24
**submit** [4] - 25:8, 48:20, 50:4, 89:8
**submitted** [2] - 22:5, 64:13
**submitting** [1] - 59:21
**subpoena** [1] - 92:4
**subpoenas** [5] - 91:16, 94:6, 94:14, 94:18, 96:17
**subsequent** [2] - 16:5, 42:24
**subset** [2] - 34:8, 45:20
**substantial** [3] - 12:5, 41:22, 58:1
**substantially** [1] - 57:14
**substantive** [2] - 9:13, 52:25

**substantively** [2] - 11:12, 51:23
**suddenly** [1] - 31:5
**sufficiency** [1] - 13:11
**sufficient** [2] - 7:24, 13:13
**sufficiently** [1] - 62:15
**suggest** [11] - 11:20, 27:6, 29:5, 32:5, 36:11, 41:14, 44:18, 54:15, 55:4, 76:2, 88:11
**suggested** [2] - 69:17, 94:12
**suggesting** [5] - 11:16, 44:10, 67:2, 68:5, 88:8
**suggestion** [3] - 26:1, 42:1, 60:7
**suitably** [1] - 98:5
**SUITE** [2] - 3:3, 3:6
**Suite** [3] - 1:17, 1:20, 2:14
**summer** [2] - 52:23, 65:22
**super** [1] - 80:4
**supplement** [1] - 13:8
**supplemented** [1] - 13:6
**supply** [2] - 65:10, 65:14
**suppose** [1] - 35:25
**supposed** [1] - 14:21
**Supreme** [1] - 8:7
**surely** [1] - 64:13
**Surgical** [1] - 96:4
**surprise** [2] - 6:15, 85:6
**surprising** [1] - 30:13
**survive** [1] - 68:14
**suspect** [2] - 35:14, 37:16
**suspending** [1] - 28:23
**sustaining** [1] - 94:9
**sworn** [1] - 12:15
**sympathetic** [1] - 72:18

## T

**tail** [1] - 17:20
**tailored** [3] - 48:22, 49:4, 49:7
**TAR** [1] - 28:25
**task** [2] - 34:13, 50:14
**team** [1] - 20:18
**teed** [1] - 51:21
**ten** [2] - 44:3, 61:10
**tenor** [1] - 95:23
**tenth** [1] - 8:17

**term** [1] - 9:7
**termed** [1] - 42:17
**terms** [17] - 16:18, 35:19, 37:1, 37:3, 37:6, 38:12, 38:15, 38:24, 42:11, 61:16, 64:20, 65:14, 82:7, 82:17
**terrific** [1] - 44:5
**test** [5] - 30:1, 30:5, 30:6, 30:7, 76:3
**tested** [1] - 40:20
**testify** [1] - 84:11
**testimony** [1] - 28:6
**testing** [4] - 30:2, 39:10, 39:19, 40:1
**tetrazole** [1] - 48:5
**Teva** [13] - 2:15, 2:16, 20:20, 22:25, 23:2, 23:5, 23:12, 24:4, 24:19, 24:23, 25:3, 25:9, 70:20
**Teva's** [2] - 23:17, 25:1
**THE** [11] - 1:1, 1:10, 20:22, 45:8, 45:11, 59:5, 59:9, 61:22, 68:3, 70:12, 70:14
**theirs** [2] - 90:8, 90:9
**thematic** [1] - 9:6
**theory** [2] - 34:9, 48:19
**there'll** [1] - 29:24
**therefore** [1] - 7:19
**they've** [10] - 10:5, 14:19, 27:20, 32:16, 38:5, 42:21, 43:9, 53:24, 84:18, 85:5
**thinking** [1] - 17:2
**thinks** [3] - 30:23, 79:10, 79:17
**third** [10] - 35:2, 58:12, 91:13, 91:16, 92:4, 92:9, 92:10, 94:6, 94:18, 96:17
**third-party** [8] - 91:13, 91:16, 92:4, 92:9, 92:10, 94:6, 94:18, 96:17
**THOMAS** [1] - 1:10
**Thomas** [1] - 4:2
**THORNBURG** [1] - 3:5
**thousand** [1] - 9:8
**thousands** [1] - 66:11
**three** [18] - 26:15, 26:17, 48:15, 49:8, 51:17, 55:23, 59:20, 72:5, 73:19, 74:3, 76:9, 81:8, 83:1, 83:5, 84:10, 84:11,

84:12, 90:2
**three-day** [1] - 26:15
**three-page** [1] - 90:2
**Thursday** [1] - 71:25
**ticking** [1] - 16:8
**tie** [1] - 77:9
**tied** [5] - 61:20, 61:21, 61:22, 61:24, 62:6
**timely** [1] - 37:23
**timing** [3] - 58:13, 58:15, 61:5
**tiny** [1] - 27:13
**titled** [2] - 34:22, 70:23
**today** [22] - 5:12, 9:6, 12:2, 14:16, 17:5, 19:14, 21:8, 33:20, 33:22, 54:9, 55:15, 63:10, 83:8, 83:24, 87:22, 87:25, 88:20, 90:24, 91:17, 94:8, 97:2, 98:3
**today's** [2] - 25:24, 71:4
**Todd** [1] - 96:4
**together** [3] - 12:24, 77:9, 93:10
**tomorrow** [2] - 17:6, 17:7
**tonight** [1] - 97:22
**took** [2] - 51:22, 60:7
**top** [5] - 44:11, 49:19, 71:14, 71:16, 87:7
**topic** [3] - 9:10, 39:20, 70:23
**topics** [5] - 28:7, 39:10, 39:16, 39:19, 44:18
**touched** [1] - 58:17
**toward** [1] - 25:24
**towards** [1] - 97:10
**ToxRox** [5] - 90:24, 91:18, 93:23, 94:24, 95:16
**trace** [3] - 64:5, 64:7, 64:10
**traceability** [1] - 64:4
**track** [1] - 58:21
**traditional** [1] - 57:25
**transactions** [1] - 39:18
**transcript** [7] - 1:24, 6:20, 88:11, 92:1, 92:20, 98:2, 98:12
**transcript's** [1] - 92:21
**transcription** [1] - 1:25
**transcripts** [1] - 94:24
**transfer** [2] - 75:5, 76:3

**transferred** [3] - 74:11, 75:15, 76:8
**translated** [1] - 42:12
**transmit** [1] - 75:9
**TRAURIG** [1] - 2:13
**Traurig** [1] - 23:2
**treated** [1] - 19:23
**treatment** [1] - 24:18
**tried** [4] - 12:11, 60:24, 76:5, 76:14
**trigger** [1] - 55:5
**triggering** [1] - 59:2
**Trischler** [20] - 27:4, 28:12, 28:13, 31:17, 35:1, 35:9, 35:17, 36:15, 36:22, 37:12, 37:21, 42:7, 42:17, 43:21, 44:19, 45:4, 45:8, 48:1, 48:22, 50:2
**TRISCHLER** [20] - 2:10, 28:13, 28:16, 31:20, 35:19, 36:2, 37:25, 39:1, 39:23, 41:4, 41:10, 41:22, 45:5, 45:10, 45:15, 46:1, 47:11, 50:3, 50:8, 50:12
**Trischler's** [1] - 33:25
**true** [3] - 19:7, 58:20, 71:12
**truly** [2] - 34:23, 64:22
**trust** [1] - 37:8
**try** [4] - 15:3, 76:16, 76:21, 77:9
**trying** [10] - 9:3, 16:24, 26:25, 35:7, 41:20, 61:7, 61:9, 68:1, 72:12, 92:3
**Tuesday** [15] - 11:21, 14:1, 14:22, 14:23, 16:18, 16:23, 26:14, 33:10, 33:23, 77:1, 90:17, 97:9, 97:10, 97:15, 98:4
**turn** [8] - 36:10, 39:3, 70:16, 71:16, 82:21, 89:7, 91:2, 91:5
**turned** [3] - 35:15, 45:2, 95:6
**turning** [1] - 7:9
**turns** [1] - 14:7
**twice** [1] - 83:15
**two** [26] - 10:14, 12:23, 13:7, 13:11, 26:9, 26:12, 26:18, 28:5, 39:19, 42:24, 52:14, 53:2, 57:14, 63:16, 63:17, 70:10, 76:8, 83:10, 85:20,

86:8, 89:12, 89:16, 89:25, 90:12, 91:16, 91:18
**Tylenol** [1] - 87:19
**type** [2] - 13:21, 23:15
**types** [2] - 13:17, 68:15
**typically** [1] - 12:6

## U

**U.S** [5] - 1:7, 2:8, 7:21, 8:11, 84:18
**ULMER** [1] - 3:2
**umbrage** [1] - 60:7
**unanswered** [1] - 58:6
**unclear** [1] - 57:20
**under** [9] - 7:21, 28:5, 30:25, 31:8, 38:17, 43:22, 48:13, 51:19, 67:15, 70:23, 72:22, 77:11, 85:9, 94:18, 96:19
**undergo** [1] - 54:4
**undergoing** [1] - 73:15
**underpinning** [1] - 33:3
**understood** [2] - 7:2, 24:24
**undertaken** [1] - 10:24
**undoubtedly** [1] - 27:9
**unfair** [1] - 29:7
**unfortunate** [1] - 10:9
**unfortunately** [3] - 27:2, 74:7, 74:19
**Unit** [19] - 40:2, 42:23, 42:25, 43:1, 43:3, 43:4, 43:9, 45:24, 46:11, 46:18, 47:8, 48:1, 48:12, 48:13, 48:17, 48:24, 49:1, 49:15
**unit** [4] - 42:22, 42:25, 43:11, 83:20
**UNITED** [1] - 1:1
**United** [1] - 27:16
**units** [4] - 42:13, 42:22, 43:3, 43:8
**unless** [2] - 19:5, 97:2
**unofficial** [1] - 78:16
**unrelated** [4] - 34:23, 38:14, 38:15, 38:22
**unresponsive** [2] - 34:23, 43:18
**unripe** [1] - 26:10
**unsure** [1] - 62:15
**untethered** [1] - 53:21
**unwieldily** [1] - 60:20
**up** [27] - 4:6, 4:10, 5:1,

7:7, 9:7, 14:14,
25:14, 28:4, 28:21,
33:17, 35:5, 38:6,
40:4, 45:9, 51:21,
56:7, 59:6, 59:7,
68:4, 70:11, 73:12,
81:25, 82:16, 84:23,
87:3, 92:16
**upcoming** [1] - 16:2
**update** [2] - 22:18,
22:20
**updates** [1] - 25:25
**upheld** [2] - 8:11,
93:20
**uphold** [1] - 8:3
**upstream** [1] - 60:15
**urgency** [1] - 44:16
**USA** [2] - 2:16, 2:20

**V**

**vacuum** [1] - 68:8
**valid** [2] - 32:7, 49:25
**Valsartan** [5] - 22:23,
23:4, 24:5, 24:8,
25:1
**VALSARTAN** [1] - 1:4
**valsartan** [19] - 4:24,
23:16, 28:1, 30:19,
34:20, 37:6, 39:24,
40:3, 42:23, 43:11,
46:5, 46:6, 46:15,
46:19, 48:2, 63:18,
63:19, 83:20
**valsartan-containing**
[1] - 46:15
**value** [1] - 93:11
**Vanaskie** [2] - 4:2,
18:18
**VANASKIE** [143] -
1:10, 4:4, 4:14, 6:4,
6:8, 9:1, 9:20, 10:17,
11:13, 12:1, 13:3,
13:23, 13:25, 15:13,
15:21, 16:16, 16:22,
17:12, 17:15, 17:17,
18:2, 18:23, 18:25,
19:4, 19:9, 19:20,
19:25, 20:3, 20:5,
20:9, 21:9, 21:11,
22:4, 22:10, 22:12,
22:14, 22:19, 23:7,
23:21, 24:21, 25:8,
25:13, 26:1, 26:4,
26:8, 28:12, 28:15,
31:17, 31:23, 31:25,
32:5, 32:22, 33:2,
34:16, 35:17, 35:21,
36:18, 40:18, 41:8,
41:18, 42:4, 44:9,
44:13, 45:4, 45:25,

49:11, 50:6, 50:11,
50:15, 50:25, 51:2,
51:4, 53:10, 55:10,
55:13, 56:20, 56:22,
58:14, 58:16, 59:14,
59:19, 60:1, 61:11,
61:14, 62:24, 66:3,
66:17, 66:19, 68:9,
69:19, 70:5, 70:7,
70:10, 70:13, 70:15,
71:5, 71:8, 71:15,
73:5, 73:7, 75:10,
76:11, 76:25, 79:3,
79:24, 80:25, 82:3,
82:20, 84:1, 84:4,
85:15, 86:5, 86:17,
87:1, 87:20, 87:24,
88:3, 88:6, 88:8,
88:18, 88:22, 89:10,
89:20, 90:3, 90:10,
90:16, 90:21, 90:25,
91:6, 91:9, 93:4,
93:6, 94:20, 95:19,
96:9, 96:12, 96:18,
96:23, 97:1, 97:5,
97:10, 97:16, 97:19
**vault** [1] - 37:5
**vaults** [1] - 36:5
**Vega** [1] - 27:23
**vein** [1] - 8:12
**vendor** [4] - 27:21,
28:1, 74:5, 76:3
**Venkata** [2] - 86:8,
86:9
**version** [1] - 59:21
**versus** [1] - 57:25
**VIA** [1] - 1:5
**via** [7] - 4:1, 72:7,
72:13, 74:12, 75:4,
75:15, 76:3
**VIDEOCONFERENC
E** [1] - 1:6
**videoconference** [2] -
4:1, 20:8
**view** [2] - 13:3, 43:11
**VINE** [1] - 3:3
**violated** [1] - 6:23
**visibility** [2] - 62:22,
74:20
**voicing** [1] - 81:18
**volunteered** [2] -
72:15, 72:20
**VST2** [1] - 34:6

**W**

**wait** [6] - 6:2, 13:7,
14:9, 21:23, 24:13,
83:13
**waiting** [3] - 18:17,
24:25, 73:23

**waive** [2] - 23:12,
24:20
**walked** [1] - 10:2
**WALLACK** [1] - 2:21
**wants** [8] - 15:2,
15:10, 21:18, 45:6,
45:13, 45:19, 47:3,
47:13
**warning** [3] - 93:17,
93:23, 96:5
**warranties** [3] - 63:16,
64:19, 65:14
**ways** [1] - 38:18
**wealth** [1] - 87:15
**wedded** [1] - 85:17
**Wednesday** [1] -
14:23
**weeds** [1] - 66:4
**week** [14] - 7:8, 13:2,
14:23, 15:5, 15:7,
17:3, 18:20, 26:15,
28:19, 71:25, 73:10,
74:21, 97:9
**weeks** [9] - 9:10,
12:23, 13:7, 24:17,
76:9, 89:13, 89:17,
90:12, 95:6
**weigh** [1] - 8:10
**welcome** [1] - 21:10
**WERNER** [1] - 2:17
**whichever** [1] - 71:13
**WHITELEY** [7] - 2:2,
2:2, 18:12, 18:15,
22:11, 22:13, 22:15
**Whiteley** [1] - 22:14
**who've** [1] - 31:15
**Wholesaler** [1] - 3:4
**wholesaler** [4] - 51:6,
53:11, 54:19, 57:9
**wholesalers** [9] -
52:2, 53:13, 53:17,
53:20, 53:25, 68:11,
69:10, 69:16, 69:25
**wholesalers'** [1] -
62:16
**wholly** [1] - 92:18
**willing** [5] - 56:11,
72:4, 76:13, 86:1,
89:12
**window** [1] - 33:22
**withdraw** [1] - 21:3
**withheld** [11] - 4:19,
26:23, 27:24, 28:8,
30:12, 32:8, 33:11,
34:5, 34:21, 35:6,
96:17
**withhold** [3] - 4:20,
6:14, 29:17
**withholding** [3] -
10:25, 37:10, 92:6

**witness** [7] - 14:22,
14:23, 39:14, 42:3,
44:17, 86:12, 87:17
**witnesses** [6] - 33:5,
34:10, 35:10, 37:23,
87:6, 89:25
**wonder** [1] - 40:25
**wondering** [1] - 40:25
**word** [3] - 51:23,
83:24, 94:21
**words** [3] - 7:18,
27:11, 28:2
**works** [4] - 36:11,
66:13, 74:25, 81:20
**world** [1] - 64:13
**worth** [2] - 7:24, 61:6
**woven** [1] - 48:25
**wrapping** [1] - 59:7
**write** [1] - 12:19
**written** [3] - 59:22,
69:10, 92:23
**wrote** [1] - 14:19

**X**

**Xylene** [3] - 34:5,
34:19, 37:6

**Y**

**year** [5] - 28:23, 29:15,
42:10, 56:6, 64:8
**years** [1] - 57:14
**yesterday** [6] - 21:2,
56:18, 70:22, 71:2,
73:21, 78:22
**yoman's** [1] - 97:21
**yourself** [1] - 69:7

**Z**

**zero** [1] - 10:24
**Zhejiang** [1] - 2:8
**ZHP** [17] - 4:8, 4:9,
4:14, 6:5, 6:7, 6:13,
6:22, 7:3, 7:4, 17:21,
18:4, 19:6, 19:13,
19:15, 48:4, 94:10,
97:6
**ZHP's** [1] - 48:4
**Zoom** [3] - 4:1, 55:15,
91:4
**ZOOM** [1] - 1:6