| | **Duane Morris®** | |
|---|---|---|
| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | SETH A. GOLDBERG | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 215 979 1175 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 215 689 2198 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* SAGoldberg@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | www.duanemorris.com | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

March 15, 2021

**VIA ECF & EMAIL**

Hon. Thomas I. Vanaskie, Special Master
(TIV@stevenslee.com)
Stevens & Lee, PC
1500 Market St., East Tower, Suite 1800
Philadelphia, PA 19103-7360

      Re:    *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation,*
              U.S. District Court for the District of New Jersey; Case No. 1:19-md-02875-RBK-JS

Dear Special Master Vanaskie:

Zhejiang Huahai Pharmaceutical Co., Ltd. ("ZHP") hereby opposes Plaintiffs' claim that ZHP's Chinese State Secret Review Log should be stricken.[1] *See* Dkt. 1011.

---

[1] ZHP notes that Plaintiffs have not moved to compel the production of any of the 91 documents on ZHP's State Secret Review Log. Instead, in their bi-monthly conference letter agenda submitted on March 9, 2021, *see* Dkt. 1011, Plaintiffs requested the Court strike ZHP's State Secret Review Log. ZHP maintains its objection to Plaintiffs' request as procedurally improper, and that ZHP has been prejudiced by the incomplete meet and confer process and curtailed briefing on this issue. *See supra*, Section I.

DuaneMorris

March 15, 2021
Page 2

Plaintiffs have cited no rule, case, or court order that would justify their request that the log be stricken and the 91 documents set forth therein be immediately produced. As detailed herein, Plaintiffs' request should be denied because:

- The State Secret Review Log produced to Plaintiffs sufficiently demonstrates that the documents listed are subject to Chinese state secrecy laws that prohibit their production;

- The question of whether this Court should recognize that Chinese law prohibits production of the documents at issue is not governed by cases regarding the sufficiency of privilege logs, but instead by the Supreme Court's decision in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa*, 482 U.S. 522 (1987) regarding discovery blocking statutes, and the *Aerospatiale* factors weigh in favor of permitting ZHP to redact or withhold the documents at issue; and

- ZHP has not violated any order of this Court with respect to the state secrecy issue; rather, ZHP has followed the process set forth by the Court in December 2019 to assert state secrecy claims.

As outlined herein, permitting ZHP to withhold or redact the 91 documents at issue would have no bearing on Plaintiffs' ability to pursue their claims in this litigation. In stark contrast, ordering ZHP to produce the documents at issue would put ZHP in the untenable position of having to decide whether ZHP and its employees should face potential criminal and civil penalties in China by disclosing the documents, or face sanctions in this Court for non-compliance with a discovery order.

I. **THE LOG PROVIDES SUFFICIENT INFORMATION TO ESTABLISH THAT THE DOCUMENTS AT ISSUE ARE SUBJECT TO CHINA'S STATE SECRECY LAW**

As described in the Declaration of Yang Xueyu, attached hereto as **Exhibit A** (the "Yang Declaration"), a lawyer at the law firm Hui Zhong, who is licensed to practice in both China and the State of New York, the scope of what constitutes a state secret under Chinese law is broad. Yang Declaration, ¶¶ 8-10. However, ZHP has endeavored to ensure that China's blocking statutes

DuaneMorris

March 15, 2021
Page 3

were applied as narrowly as permissible—going so far as to engage two law firms to perform a first level review of documents collected in response to Plaintiffs' document requests to determine if the documents were subject to China's state secrecy laws, and then engaging a third law firm, Hui Zhong, to perform a second level quality check to ensure that all documents withheld or redacted were properly done so on the basis of China's state secrecy laws.  Yang Declaration, ¶¶ 14-15.

After the second level review was complete, only 91 documents out of the more than 270,000 documents ZHP and its Chinese subsidiaries produced were withheld or redacted on the basis of China's state secrecy laws.  Further, each of the 91 documents falls within two narrow categories of Chinese state secrets: (1) official documents made by Chinese regulatory authorities in the pharmaceutical industry when performing their duties or responding to specific questions upon ZHP's request; and (2) meeting minutes, reports and summaries made by ZHP with respect to its communications with regulatory authorities, the majority of which involve and reflect information and specific instructions from Chinese regulatory authorities.  Yang Declaration, ¶ 20.

A review of ZHP's log, attached hereto as Exhibits 1 & 2 to the Yang Declaration, supports ZHP's claims.  Specifically, the log includes metadata about each document, including: the title or subject line of the document; the date it was sent, received, or created; the custodian of the document; and the author, sender, and/or recipient of the document.  In addition, the log includes a listing of the Chinese laws barring the production of the documents, as well as a description sufficient to demonstrate that document falls into one of the two narrow categories described in the Yang Declaration.

DuaneMorris

March 15, 2021
Page 4

Plaintiffs' March 9, 2021 letter belies any argument they may try to assert that the log is in any way deficient; rather, Plaintiffs have made clear in their letter and during the meet and confer process that their real objection is not to the sufficiency of the log, ***but rather to ZHP's assertion of China's state secrecy laws as a basis for withholding or redacting document in this litigation***.[2] See Dkt. 1011 at 10-15. Accordingly, the issue to be decided is not whether ZHP's log is sufficient to demonstrate that China's state secrecy laws apply, but whether Plaintiffs can compel production under U.S. law.

II.   **THE *AEROSPATIALE* FACTORS WEIGH IN FAVOR OF ALLOWING ZHP TO WITHHOLD THE DOCUMENTS ON ITS STATE SECRET REVIEW LOG FROM PRODUCTION**

Indeed, Plaintiffs acknowledge that United State Supreme Court precedent requires this Court to carefully analyze the factors set forth in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa*, 482 U.S. 522 (1987), in deciding whether Chinese state secret laws "excuse noncompliance with discovery rules." See Dkt. 1011 at 12 (citing *Aerospatiale*, 482 at 544 n.29). Yet, despite reciting these factors, Plaintiffs failed to analyze a single one. *Id.* at 12-17. Instead, Plaintiffs attempt to skirt this analysis by making a blanket request for production of these documents because, allegedly, "ZHP's state secret log does not satisfy ZHP's burden." *Id.* at 13. However, even if this Court were to find ZHP's State Secret Review Log to be deficient, which it is not, Plaintiffs have cited no rule or case that would justify an order compelling the

---

[2] Plaintiffs took this blanket approach during the meet and confer process, refusing to evaluate and discuss each of the 91 documents on ZHP's log individually. In contrast, as set forth in the Yang Declaration, and as discussed below, each document on the log satisfies the requirements under *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa*, 482 U.S. 522 (1987).

DuaneMorris

March 15, 2021
Page 5

production of the documents at issue. Rather, as set forth below, this Court must analyze and balance each *Aerospatiale* factor prior to ordering the production of any document on ZHP's State Secret Review Log.

In setting forth the careful balancing test required for American courts to decide whether to order the production of discovery that is barred by the laws of a foreign county, the United States Supreme Court cautioned that American courts "should exercise ***special vigilance*** to protect foreign litigants[.]" *Aerospatiale*, 482 U.S. at 546 (emphasis added). In recognition of the "disadvantageous position" "that unnecessary, or unduly burdensome, discovery may place [foreign litigants] in[,]" the United States Supreme Court mandated that courts "should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.*

To accomplish these goals, the United States Supreme Court set forth the following factors to be balanced prior to ordering the production of discovery banned by foreign statutes: "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Aerospatiale*, 482 U.S. at 544, n.28 (1987). As the Court noted in *Aerospatiale*, this list is not exhaustive and courts often consider two other factors: (6) the extent and nature of the hardship on the party from whom discovery is sought, and (7) the good faith of

DuaneMorris

March 15, 2021
Page 6

the party resisting discovery. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477-80 (9th Cir. 1992) (analyzing both the hardship and good faith factors); *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1281 (7th Cir. 1990) (analyzing the extent and nature of hardship defendant will face if it complies with the discovery order).

Accordingly, in determining whether ZHP should produce the 91 documents at issue, this Court must first balance these factors—all of which weigh in favor of allowing ZHP to withhold or redact the 91 documents in its State Secret Review Log. Accordingly, for the reasons set forth below, this Court should deny Plaintiffs' "request" for the production of these documents.

### A. The Documents on ZHP's State Secret Review Log are Not Vital to Plaintiffs' Claims

The first factor the Court must consider is the importance of the foreign discovery requested. When the information sought "does not stand or fall on the present discovery order" and is "in a sense cumulative" courts are generally unwilling to override foreign secrecy laws. *See In re Westinghouse Elec. Corp. Uranium Conts. Litig.*, 563 F.2d 992, 999 (10th Cir. 1977) (finding the trial court erred in holding corporation in contempt and imposing sanctions for its failure to comply with discovery order). Indeed, the requested documents must be more than "merely relevant" – they must be "*vital*" or "*crucial*" to the claims in the litigation. *See e.g., Reinsurance Co. of Am*, 902 F.2d at 1279-81 (holding plaintiff was not entitled to discover information considered "service secrets" under Romanian law where "[t]he disputed materials are the subject of a post-judgment interrogatory request and *not vital* to the case-in-chief") (emphasis added); *In re Activision Blizzard, Inc. Stockholder Litigation*, 86 A.3d 531, 544 (Del. Ch. 2014) ("This factor calls on the court to consider the degree to which the information sought is **more than merely**

DuaneMorris

March 15, 2021
Page 7

*relevant* under the broad test generally for evaluating discovery requests.") (*emphasis added*); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 440 (E.D.N.Y. 2008) ("Because the scope of civil discovery in the United States is broader than that of many foreign jurisdictions, some courts have applied a more stringent test of relevancy when applying the Federal Rules to foreign discovery.").

Plaintiffs cannot make any plausible argument (nor have they in their March 9, 2021 submission) that any of the 91 documents barred from production by China's state secrecy laws is relevant to the litigation, let alone meets the heightened standard of showing any is vital. The 91 documents on ZHP's State Secret Review Log concern communications with **Chinese** regulatory bodies, *see* Yang Declaration, ¶¶ 19-21; however, this entire litigation revolves around generic drugs that were sold in the *U.S.* market to *U.S.* consumers, and whether the defendants acted in accordance with the regulations enforced by the *U.S.* Food and Drug Administration ("FDA"). There is not a single allegation in this litigation that could possibly concern Chinese consumers, who the Chinese regulatory authorities aim to protect, and there is no plausible argument that the substance of what the Chinese Food and Drug Administration discussed with ZHP is in any way relevant to Plaintiffs' claims, let alone "vital" or "critical."

Further, the 91 documents on ZHP's log do not contain any information that Plaintiffs do not already have in their possession and are therefore "cumulative." The ZHP Parties have produced more than 3.5 million pages of documents, including communications with the FDA ***and*** other nations' regulatory agencies concerning the allegations at issue in this litigation. *See infra*, Section II.D. Therefore, any information in the 91 documents would be largely "cumulative" of

DuaneMorris

March 15, 2021
Page 8

the information contained within the hundreds of thousands of regulatory and other documents already within Plaintiffs' possession.[3]

Moreover, a number of courts have ruled these types of documents in product liability cases ***do not even meet the threshold for relevance under Fed. R. Civ. P. Rule 26***. Indeed, in many cases involving drug products manufactured for the U.S. market, courts have ruled that documents concerning regulatory bodies other than the U.S. FDA are not subject to discovery. *See In re Seroquel Prod. Liab. Litig.*, No. 06-1769, 2009 WL 223140, at *6 (M.D. Fla. Jan. 30, 2009), *aff'd*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009) ("[F]oreign regulatory actions have no relevance to Plaintiffs' main case."); *Pa. Tr. Co. v. Dorel Juvenile Grp., Inc.*, 851 F. Supp. 2d 831, 842-43 (E.D. Pa. 2011) (granting defendant's motion to exclude evidence of foreign regulatory actions and labeling requirements and stating that plaintiff failed to demonstrate how "[defendant's] obligations under [foreign] law are relevant here").

Accordingly, this factor weighs heavily in favor of nondisclosure because these documents concerning communications with the Chinese regulatory authorities are not relevant, important, or anywhere near "vital" to this litigation.

### B. Plaintiffs' Broad and Overreaching Discovery Requests are Not Specific

The second factor directs the Court to consider the degree of specificity of the requests for foreign discovery. "Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged." *Richmark Corp.*, 959 F.2d at 1475. The court must look to

---

[3] The documents produced by ZHP in this litigation demonstrate that all of the information provided by ZHP to the FDA and foreign regulatory agencies was the same, and, if necessary, Plaintiffs may confirm this fact during their 30(b)(6) deposition of ZHP's head of regulatory affairs.

DuaneMorris

March 15, 2021
Page 9

the degree to which the foreign discovery requests are "narrowly tailored" to the claims and defenses of the litigation.  *Strauss,* 249 F.R.D. at 440-41.

Here, Plaintiffs' discovery requests are extremely broad and burdensome, not narrowly tailored.  Even after the Court narrowed Plaintiffs' *initial* discovery requests, Plaintiffs' final requests to the Manufacturing Defendants amounted to 122 individual document requests, many of which contain between 5 and 25 subparts.  Dkt. 328 at Ex. A.  Plaintiffs' requests define "Regulatory and Regulatory Authority" as "United States *and foreign regulatory agencies*" without any additional limiter.  *Id.* at Ex. A at 3 (emphasis added).  And along with many other documents, Plaintiffs' requested documents related to communications with *every* foreign and domestic regulatory agency and to sales and marketing in *any* market, despite the fact that each Plaintiff purchased and consumed the products at issue in the United States, products that are only regulated by the U.S. Food and Drug Administration.  While the request for foreign regulatory communications was narrowed by the Court, Plaintiffs were permitted to seek, "for each relevant facility[,]" "all regulatory inspection reports, warning letters akin to what the FDA sends, 483-like documents, the responses to these documents, root causes analyses regarding potential or actual nitrosamine contamination, and documents regarding potential or actual nitrosamine contamination prior to July 2018, that were sent to or received from *any foreign regulatory body* during the designated relevant time period."  Dkt. 303 at 3 (emphasis added).

Considering the extremely broad nature of Plaintiffs' discovery requests, this factor also weighs in favor of nondisclosure.

March 15, 2021
Page 10

DuaneMorris

### C. All Documents at Issue Originated in China and Involve People Located in China

The third *Aerospatiale* factor requires the Court to consider whether the information at issue originated in the United States or abroad. This factor weighs heavily in favor of nondisclosure where all the requested information sought and the people involved in assembling it are located in a foreign country. *See Richmark Corp.*, 959 F.2d at 1475 ("The fact that all the information to be disclosed (and the people who will be deposed or who will produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business."); *Reinsurance Co. of Am.*, 902 F.2d at 1281 (finding the court below correctly denied the motion to compel discovery where "[a]ll the information which plaintiff sought through these interrogatories is located within Romania . . . [t]he offices of [defendant] are located within Romania . . . [a]ny responses to [plaintiff's] interrogatories would have to be prepared in Romania using this information.")

In this case, none of the information in ZHP's State Secret Review Log originated in the United States. Yang Declaration, ¶ 18. All of the information originated in China and concerns Chinese regulatory bodies. Yang Declaration, ¶¶ 18-19. In addition, all custodians responsible for maintaining this information are located in China or were located there during the time the information was collected.[4] Accordingly, this factor weighs in favor of nondisclosure.

---

[4] Custodian Xiaodi Guo, an employee of Defendant Prinston, is no exception. Xiaodi Guo appears on the State Secret Review Log because he works in China on a regular basis, is currently residing

DuaneMorris

March 15, 2021
Page 11

### D. Plaintiffs Have Alternative Means of Obtaining the Information

The Court must next look to determine whether there are alternative means to obtain the requested information. "If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." *Richmark Corp.*, 959 F.2d at 1475; *see also CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, No. 12-CV-08087 CM SN, 2013 WL 2661037, at *10 (S.D.N.Y. June 12, 2013) (denying an order to compel where the requestor could reasonably obtain the sought after information elsewhere).

As stated above (*see supra*, Section II.A), in this case, not only can Plaintiffs obtain the information contained in ZHP's State Secret Review Log elsewhere, they have already obtained this information. The State Secret Review Log's descriptions of the subject matter of the documents demonstrate that the 91 documents concern ZHP reporting information about valsartan products to China's regulatory authorities. Plaintiffs currently possess *millions* of pages of internal and external ZHP communications and documents that describe in detail exactly how the nitrosamine impurity occurred in ZHP's valsartan products, when the impurity was discovered, and how ZHP reported this information to regulatory authorities. Indeed, the information already provided to Plaintiffs goes *well beyond* the information provided to regulatory authorities, and includes *internal* communications regarding ZHP's root cause analyses, deviation reports, ANDA and DMF filings, the ZHP Parties' communications with their customers regarding the impurity, and more.

---

in China, and was in China at the time the information was collected, which are the pertinent concern for this analysis.

DuaneMorris

March 15, 2021
Page 12

As the Supreme Court stressed in *Aerospatiale*, "[j]udicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests." *Aerospatiale*, 482 U.S. at 2557. Plaintiffs' request for ZHP and its employees to violate Chinese state secrecy laws and subject themselves to severe criminal and civil penalties is improper given that there is no basis to claim that the factual information provided to Chinese regulatory authorities differed from the factual information already produced to Plaintiffs in the context of reporting to the relevant regulatory authority in this case, the U.S. FDA. *See* Yang Declaration, ¶ 28. Thus, this factor too weighs heavily in favor of nondisclosure.

E. **The Balance of National Interests Favors Nondisclosure**

Next, the Court must assess the interests of each nation in requiring or prohibiting disclosure of the requested information, which is a factor often given great weight by courts.[5] *See Richmark Corp.*, 959 F.2d at 1476 (referring to this factor as "the most important factor").

In balancing the interests of American and foreign courts, American courts have given deference to a foreign nation's interest in the considerable value they assign to their confidentiality and privacy. *See, e.g., Reinsurance Co*, 902 F.2d at 1280; *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369, 375 (N.D. Ill. 2001). The extent of a foreign nation's interest in protecting its

---

[5] Courts typically ask an expert to opine on the larger geopolitical issues invoked by this factor to assist it in evaluating the conflict of international laws and comity. *See, e.g., Behrens v. Arconic, Inc.*, No. CV 19-2664, 2020 WL 1250956, at *7 (E.D. Pa. Mar. 13, 2020) (relying on "a well-respected expert in French law" when evaluating the interests of each nation in its comity analysis); *CE Int'l Res. Holdings, LLC*, 2013 WL 2661037, at *5-6 (relying on expert's opinion of the Singapore Banking Act when performing its comity analysis). To the extent this Court permits additional briefing on this issue, ZHP respectfully requests the opportunity to submit an expert opinion on this issue.

March 15, 2021
Page 13

"secrets" is evidenced primarily by the scope of its protective laws, the strict enforcement of those laws, and the possibilities of severe sanctions and penalties. *Id.*

In *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, the Seventh Circuit found that Romania's interest in its "service secrets" outweighed the interests of the United States. 902 F.2d at 1279-81. There, the plaintiff sought the defendant's responses to post-judgment interrogatories in order to enforce a judgment against the defendant, and the defendant refused to furnish responses, claiming that Romanian law "forbade the disclosure of the requested information." *Id.* at 1279. In balancing the vital interests of each nation, the Seventh Circuit first acknowledged the United States has an important interest in enforcing final judgments. *Id*. at 1280. However, the court looked to Romania's interest in protecting its state and service secrets and determined that given the scope of its laws and the severe penalties for violations, Romania places great value on its secrecy. *Id*. The court concluded that "[g]iven this choice between the relative interests of Romania in its national secrecy and the American interest in enforcing its judicial decisions, we have determined that Romania's, at least on the facts before us, appears to be the more immediate and compelling." *Id*. at 1280-81.

Similarly, the court in *White v. Kenneth Warren & Son, Ltd.* found England's "interests in confidentiality" outweighed the American court's interest in the production of documents that were deemed confidential under English law. 203 F.R.D. at 375. In that case, the court denied the defendant's request that plaintiffs produce the documents because "the English interests in confidentiality seem quite compelling considering the penalties involved and to the extent their law appears aimed toward domestic affairs." *Id.*

DuaneMorris

March 15, 2021
Page 14

Like Romania and England, China also places great value on the confidentiality afforded to the information and communications of its governmental entities. Yang Declaration, ¶¶ 7-8. China's interest in protecting this information similarly evidenced by the Chinese laws that impose severe criminal and civil penalties on any individual who transmits "state secrets" outside of the country. Yang Declaration, ¶¶ 13, 27. The penalties for transmitting Chinese state secrets outside of China "rang[e] from administrative fines to a criminal sentence" including "imprisonment up to seven years." Yang Declaration, ¶¶ 13, 27. Thus, ZHP's unlawful disclosure of these documents may subject ZHP and its employees to administrative and criminal penalties.

While this Court has an interest in upholding its discovery rules and orders, ZHP should not be put in the cross-hairs of China's great interest in the confidentiality of its government communications and information. China's confidentiality and state secrecy interests are more immediate and compelling than any other interest in this litigation given the nature of Plaintiffs' claims, which are *wholly unrelated* to any action of the Chinese government or any Chinese regulatory authority. Accordingly, this factory weighs strongly in favor of permitting ZHP to withhold the documents at issue from production.

F. **ZHP Faces Extreme Hardship if Ordered to Produce These Documents**

The extent and nature of the hardship that the discovery request is likely to have on the foreign entity is another factor for the Court to consider. "If compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure." *CE Int'l Res. Holdings, LLC*, 2013 WL 2661037, at *15.

As described above (*see supra*, Section II.E), China imposes severe criminal and civil penalties on individuals who violate its state secret laws. Yang Declaration, ¶¶ 13, 27. While

DuaneMorris

March 15, 2021
Page 15

ZHP's counsel is actively seeking permission from the Chinese government to produce the 91 documents at issue (*see infra*, Section II.G), if ZHP discloses this information without that permission, both ZHP and its employees will be at risk of facing severe administrative and criminal penalties. Yang Declaration, ¶¶ 25, 28. Accordingly, this factor weighs heavily in favor of permitting ZHP to withhold the documents at issue.

> **G.    ZHP Has Made, and Continues to Make, Good Faith Attempts to Comply with its Discovery Obligations**

Whether the party that opposes foreign discovery has made a good faith effort to comply with the discovery order is another factor considered by the courts. *See CE Int'l Res. Holdings, LLC*, 2013 WL 2661037, at *16. This factor also weighs in favor of ZHP

In this case, there is no dispute that China has adopted secrecy laws that prevent ZHP's disclosure of certain information. Yang Declaration, ¶¶ 7-9. As such, ZHP's compliance with the law cannot be in bad faith. Moreover, ZHP has acted in good faith in discovery as evidenced by the millions of pages of documents it has produced to Plaintiffs, including documents that contain ZHP's highly proprietary and commercially sensitive information. Of these hundreds of thousands of documents, ZHP has withheld or redacted only 91 documents based on Chinese secrecy laws, and has even gone so far as to hire a third law firm to perform a quality check of the attorneys who performed the first level state secret review. Yang Declaration, ¶ 14-16. In addition, as previously noted, ZHP is continuing its efforts, through the Hui Zhong law firm, to obtain government permission to produce the documents at issue. Yang Declaration, ¶ 25.

Based on ZHP's good faith efforts to produce to Plaintiffs all of the documents it possibly can turn over without violating Chinese law, this factor weighs heavily in favor of ZHP.

DuaneMorris

March 15, 2021
Page 16

In sum, each of the above-described *Aerospatiale* factors weigh heavily in favor of allowing ZHP to withhold or redact the documents in ZHP's State Secret Review Log, and this Court should deny Plaintiffs' "request" that all of these documents be produced.

### III. ZHP HAS NOT VIOLATED ANY ORDER OF THE COURT, NOR WAS IT REQUIRED TO MOVE FOR A PROTECTIVE ORDER

The fact that ZHP was required to withhold certain categories of documents on the basis of China's state secrecy laws has been known to Plaintiffs since 2019. *See, e.g.*, Dkt. 290 ("Where, as here, a defendant is based in China, it must not only take the typical steps required for a thorough document production, but must also conduct an extra layer of review of its documents to ensure compliance with the Guarding of State Secrets Law."). Indeed, rather than requiring ZHP to move for a protective order or declare that ZHP was violating any discovery order by withholding documents on the basis that they implicated China's state secrecy laws, the Court directed ZHP to provide a log of documents that were withheld or redacted on the basis of state secrecy laws:

> If there are relevant documents that are responsive to the document requests that come up in the hits with custodians and the search terms, and if ZHP feels that its hands are tied and it can't produce those documents because of Chinese State Secrecy Law, I would assume that ZHP would identify those documents akin to a privilege log, and then it would be appropriate to deal with the State Secret Law.

Dkt. 334, 12/18/19 Hrg. Tr. at 13:16-22. Accordingly, Plaintiffs' assertion in its March 9 letter that that ZHP should have moved for a protective order, or that ZHP has somehow violated a discovery order, is directly contradicted by the factual record in this case. In prior conferences, Judge Schneider made clear that he expected ZHP to handle the documents withheld on the basis of state secrecy laws the same way it handled privileged documents – by providing a log to the Plaintiffs, after which time Plaintiffs could assert challenges to the entries on that log. That is

DuaneMorris

March 15, 2021
Page 17

exactly the procedure the parties had been following until Plaintiffs abruptly ended the meet and confer process on March 5.

For the reasons set forth herein, ZHP respectfully requests that Plaintiffs' March 9, 2021 request to strike ZHP's State Secret Review Log and for the production of documents listed on same be denied.

Respectfully submitted,

*/s/ Seth A. Goldberg*

Seth A. Goldberg

cc: Adam Slater, Esq. (*via email*, *for distribution to Plaintiffs' Counsel*)
Jessica Priselac, Esq. (*via email*, *for distribution to Defendants' Counsel*)
Sarah Johnston, Esq. (*via email*)
Jeffrey Geoppinger, Esq. (*via email*)
Lori G. Cohen, Esq. (*via email*)
Clem C. Trischler, Esq. (*via email*)