UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

_____

CIVIL ACTION NUMBER:

19-md-02875-RBK-JS

CONFERENCE VIA REMOTE
ZOOM VIDEOCONFERENCE

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
March 16, 2021
Commencing at 11:00 a.m.

B E F O R E:            SPECIAL MASTER THE HONORABLE THOMAS
                       I. VANASKIE

A P P E A R A N C E S:

     MAZIE SLATER KATZ & FREEMAN, LLC
     BY:  ADAM M. SLATER, ESQUIRE
          CHRISTOPHER GEDDIS, ESQUIRE
     103 Eisenhower Parkway
     Roseland, New Jersey  07068
     For the Plaintiffs

     GOLOMB & HONIK, P.C.
     BY:  RUBEN HONIK, ESQUIRE
     1835 Market Street, Suite 2900
     Philadelphia, Pennsylvania  19103
     For the Plaintiffs

     KANNER & WHITELEY, LLC
     BY:  CONLEE S. WHITELEY, ESQUIRE
     701 CAMP STREET
     NEW ORLEANS, LOUISIANA  70130
     For the Plaintiffs

               Camille Pedano, Official Court Reporter
                    camillepedano@gmail.com
                        609-774-1494

     Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3    DUANE MORRIS, LLP
     BY:  SETH A. GOLDBERG, ESQUIRE
4         JESSICA PRISELAC, ESQUIRE
          COLEEN W. HILL, ESQUIRE
          LAUREN PUGH, ESQUIRE
5    30 South 17th Street
     Philadelphia, Pennsylvania  19103
6    For the Defendants, Prinston Pharmaceuticals,
     Solco Healthcare U.S. LLC, and
7    Zhejiang Huahai Pharmaceuticals Ltd.

8

9

10   **ALSO PRESENT:**

11
     Loretta Smith, Esquire
12   Judicial Law Clerk to The Honorable Robert B. Kugler

13   Larry MacStravic, Courtroom Deputy

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Camden, New Jersey*

1          (PROCEEDINGS held via remote Zoom videoconference

2    before Special Master The Honorable Thomas I. Vanaskie at 11:00

3    a.m.)

4          JUDGE VANASKIE:  All right.  We're all set.  We're

5    going to start.  I'm going to ask some questions here.

6          The first question I have is, why doesn't the decision

7    I issued on the attorney-client privilege logs requiring cast

8    of characters be presented and that you meet and confer after

9    you get the cast of characters, why shouldn't that be -- why

10   shouldn't that apply here?  I'll ask that first of Mr. Slater.

11         MR. SLATER:  Thank you, Your Honor.

12         We certainly agree that the cast of characters should

13   be provided.  As far as putting off the meet and confer until

14   we get that, we'll do, obviously, whatever Your Honor

15   instructs.

16         One of our concerns is that we have already met and

17   conferred with the defense.  They represented they were going

18   to get back to us on multiple questions we had and acknowledged

19   there were certain documents listed in the log that appeared

20   to, from their perspective, to potentially require D

21   designation and then we never heard back.  So one of our

22   concerns is that -- we'll certainly meet and confer again and

23   we're happy to talk to the defense again, we just don't want it

24   to go on too long because we're concerned that the meet and

25   confers are not yielding any positive advancement of the

1    process at this point.

2            JUDGE VANASKIE:  All right.  Thank you.

3            Mr. Goldberg?

4            MR. GOLDBERG:  Your Honor, I'm going to, on this

5    question, defer to my colleague, Jessica Priselac, who's been

6    involved in the meet and confers with Mr. Slater and can speak

7    to that specific issue.

8            JUDGE VANASKIE:  All right.  Thank you.

9            Ms. Priselac.

10           MS. PRISELAC:  Thank you, Your Honor.

11           You know, we agree and we're happy to meet and confer.

12   We've actually -- we wrote in our previous papers that we

13   thought the meet-and-confer process was abruptly ended.  We're

14   happy to provide a cast of characters to the other side on

15   this.  There are very few people, actually, listed on this log,

16   most of whom are already known; but we are happy to provide

17   that list.  And we do believe the meet-and-confer process would

18   be helpful to hash out some of these issues and we thought it

19   was abruptly ended, and we would be happy to continue to meet

20   and confer with the plaintiffs.

21           JUDGE VANASKIE:  Now, there are only 91 documents

22   involved on this issue, 88 that were completely withheld.  I

23   understand that nine of those -- I want to get this right --

24   nine of the 88 the Chinese government asked that they be held

25   confidential.

1          Have those nine documents been identified for the

2     plaintiffs to say these are the ones we must hold as

3     confidential by direction of Chinese authorities?

4          MS. PRISELAC:  Yes.  Your Honor, in the log, on the

5     description section, where the -- where the document was

6     expressly marked or asked to be held confidential expressly by

7     the Chinese government, those are in the description.

8          JUDGE VANASKIE:  Okay.  You have to understand, it's a

9     little hard for me to read those descriptions.  I'm using the

10    magnifier feature off my iPhone in order to read that text.  I

11    certainly can't read it when I print them out, not at normal --

12    normal levels.

13          In the future, it may be that when you provide this

14    information to me you give me the -- maybe I just realized what

15    I should have done.  I guess I can copy and paste it and

16    enlarge the text that way.

17          MS. PRISELAC:  Actually, Your Honor, we just wanted to

18    make sure because -- in fact, we provided a tremendous amount

19    of metadata so we didn't want to shorten the columns of the

20    actual log, but I totally understand your point.  What we can

21    do, even after this, is I can modify the chart such that it

22    just shows the entry number and the description, and that way

23    it should be quite large.

24          JUDGE VANASKIE:  Okay, if we need to get there.  I'm

25    not sure we need to go that far.  Now I'm thinking more in

1    terms of future disputes that involve these logs.

2         So, Mr. Slater, why don't I simply say, ask for ZHP to

3    provide the cast of characters, and then say, confer document

4    by document?  And let me go back to those nine documents.

5         Is there any dispute as to those nine documents where

6    the Chinese government has asked that they be held

7    confidential?

8         MR. SLATER:  Yes, there is, Your Honor.  Starting with

9    those nine -- and I'll even go back further.  There were three

10   documents that the log says were produced.  I'm having my team

11   actually double-check right now because I had somebody double-

12   check again this morning to make sure, and I was told it looked

13   like slip sheets showing the documents were withheld in their

14   entirety, but we're going to double-check that before we assert

15   that.

16        As far as the documents where the, quote-unquote,

17   Chinese government purportedly said to keep them confidential,

18   I have two thoughts about that:  One, we don't know the

19   context; we don't know who it was.  Maybe it was a clerk at a

20   window somewhere.  We have no idea what the basis was or why

21   that was instructed.  And if ZHP is claiming that's some sort

22   of a special status, are they saying as to all the rest of the

23   documents that since they're not saying they were specifically

24   told to keep it confidential that the rest can be produced?  So

25   I don't think they can have it both ways.  If it has such

1 importance, then the ones they weren't told to keep

2 confidential, according to the log, should all be produced

3 because the government didn't tell them to keep them

4 confidential.  If we're going to go with they all should be

5 maintained as confidential under the defense's theory, then I

6 don't think that gives any extra imprimatur or confidentiality

7 to those documents.  I don't think they could have it both ways

8 is really my position on that.

9        JUDGE VANASKIE:  Well, as I understand, there were 30

10 documents that originated with Chinese authorities, nine of

11 which were asked to be kept confidential.  The other 61

12 documents, as I recall, are documents that would have been

13 produced by ZHP but concern, for example, meetings or

14 communications with Chinese government officials and may,

15 therefore, fall within the Chinese state secret law.  I'm only

16 saying that because I think there's ways forward here.

17        Let me ask Ms. Priselac now -- and, by the way, yes,

18 the fact that nine were asked to be kept confidential doesn't

19 necessarily mean that the others don't fall within the law.  It

20 could mean that; it may not mean that.

21        Ms. Priselac, do you want to respond to Mr. Slater's

22 arguments?

23        MS. PRISELAC:  Sure.  Thank you, Your Honor.

24        I think you hit the nail on the head and I think it's

25 really detailed in Ms. Yang's declaration, who is a New York

1   barred attorney and is held to the -- is an officer of the

2   Court, State of New York, and she describes in her declaration

3   to the Court that the documents are exactly as how you describe

4   them.  There are some that are on their face and expressly

5   requested by the Chinese government to be held confidential,

6   and those are the nine documents of which you spoke.

7          There are 30 documents that directly involve the

8   Chinese government authorities, either information provided or

9   communications directly from Chinese government authorities.

10         The other 61 documents reflect meetings or

11  communications or information that come from the Chinese

12  authorities.  And Ms. Yang has detailed in her declaration how

13  the fact that those aren't expressly asked to be held

14  confidential by the government is neither here nor there

15  because the law is very clear in China that they have to be

16  held confidential.

17         JUDGE VANASKIE:  All right.  Do you want to respond at

18  all, Mr. Slater?

19         MR. SLATER:  I think, you know, ultimately, it comes

20  back to our broader challenges to the log, you know, that's

21  where that really takes us, which is the lack of precision, the

22  lack of analysis, the lack, on its face, of this log actually

23  establishing confidentiality.  I think saying on a log that

24  somebody in the Chinese -- some arm of the Chinese government

25  asked ZHP or told them to keep something confidential, unless

1  we understand the context, we're not in a position to provide

2  that any significance.

3         And I'll come back, I believe that if they're saying

4  that's the basis, again, they can't have it both ways.  If

5  they're saying that's of significance, then the ones they

6  weren't told to keep confidential, I would think, presumably,

7  would have to be produced.

8         JUDGE VANASKIE:  That's a logical argument.  I

9  understand that.

10        MS. PRISELAC:  Your Honor, may I clarify one thing?

11        JUDGE VANASKIE:  Go ahead, Ms. Priselac.  Certainly.

12        MS. PRISELAC:  Of those nine documents -- the nine

13 documents are not documents that someone said had to be held

14 confidential.  If you read Ms. Yang's declaration, she states

15 that on their face they're either marked confidential by the

16 Chinese government --

17        JUDGE VANASKIE:  Right.

18        MS. PRISELAC:  -- or, you know -- it's not that ZHP's

19 saying someone told them to keep them confidential.  It's on

20 their face they are marked confidential.

21        JUDGE VANASKIE:  All right.  Let's get back to the --

22 there is a waiver request pending right now.  Can you give me

23 any information about where that stands or who has -- who has

24 been approached to provide the waiver?  Who has made the

25 approach on behalf of ZHP?

1          MS. PRISELAC:  Sure, Your Honor.

2          And just to step back, ZHP has hired, in total, three

3    law firms to help it address this issue.  Two law firms were

4    originally engaged to do a first-level state secret review and

5    then a third law firm, the Hui Zhong law firm, was engaged to

6    do, essentially, a quality check of the first-level review to

7    make sure that the first-level reviewers were -- review law

8    firms were applying the statutes as narrowly as possible so

9    that ZHP could continue to be as transparent as possible in

10   this litigation.

11         So the Hui Zhong law firm conducted a second-level

12   review, which is how we ultimately came down to these 91

13   documents that fell into the Chinese state secrecy law.

14         After they performed that second-level review, we

15   asked them and the client -- our client asked them, what else

16   can we do to try to get these documents produced.  They told us

17   that there is a -- that, in theory, you can ask the Chinese

18   government for permission to have these documents produced.

19   There's not a -- you know, a straightforward process because

20   there's a lot of government organs involve; but what they did

21   is they approached the local authorities in Zhejiang province

22   to ask their opinion about how they could go about getting

23   these D designated.  At this point in time, they're still

24   trying to figure out exactly -- I'm sorry, Your Honor.

25         (Brief interruption.)

1          MS. PRISELAC:  I'm so sorry, Your Honor.  That was a

2   building announcement.  There is no emergency.

3          JUDGE VANASKIE:  Okay, good.

4          MS. PRISELAC:  I apologize.

5          JUDGE VANASKIE:  That's okay.  Unavoidable.

6          MS. PRISELAC:  Yes, no emergency, according to them.

7          In any event, Your Honor, they've approached the

8   Chinese authorities, but we want to be very transparent:

9   There's no guarantee the Chinese government will give, you

10  know, approval of these, they don't want to misrepresent that,

11  but they are trying to contact the local authorities and the

12  national authorities.  Because if you look on the log, some of

13  these communications are with provincial level and local

14  authorities and some of these logs -- some of these

15  communications are with the national Chinese Food and Drug

16  Administration.  So each separate organ has to be approached

17  separately.

18          JUDGE VANASKIE:  Okay.  Thank you.

19          In the plaintiffs' submission they mentioned several

20  documents by custodian names.  Of course, I won't be able to

21  pronounce them, not yet anyway.  Well, one I probably can,

22  Sophie Tian's documents, also Jucai Ge's documents, I don't

23  have the page numbers in front of me, unfortunately, but they

24  were specifically mentioned documents that were addressed

25  during the meet -- as I understand it, were addressed during

1   the meet and confer, the 60-minute meet and confer that was

2   conducted in this matter.

3        Where does ZHP stand with respect to the production of

4   those documents?

5        MS. PRISELAC:  Your Honor, those documents must be

6   withheld under the Chinese state secret laws.  What we did

7   discuss during the meet-and-confer process is they want -- the

8   plaintiffs asked for an understanding of what the basis of the

9   withholding was and we pointed them to those legal -- the last

10  notations we have in the log; and they also had questions about

11  the descriptions, which we discussed.  And, frankly, Your

12  Honor, during the meet-and-confer process, the feedback we got,

13  after discussing the basis for the withholding and the

14  description, was that the plaintiffs didn't care if Chinese law

15  did apply, they didn't think it should be enforced in this

16  court and that the description told them that it was clearly

17  relevant to this case.

18       So, you know, after a feedback like that, Your Honor,

19  our position is that it seems to us that the plaintiffs don't

20  want any more description.  It's -- the issue they're having is

21  that Chinese law should not apply in this court.

22       JUDGE VANASKIE:  All right.

23       Mr. Slater.

24       THE COURT REPORTER:  Mr. Slater, you're on mute.

25       MR. SLATER:  I was just making sure you were paying

1    attention.

2         Your Honor, your question to counsel was what's the

3    status of the documents we discussed during the meet and

4    confer, which lasted an hour, with five members of our

5    leadership team on the call.  We were very interested in

6    hearing what ZHP had to say and we were very interested in

7    talking.

8         I will acknowledge we said we don't think we should go

9    through all 91 documents because at the pace we were going,

10   that would have been hours and everybody -- as you know, we

11   schedule our days and the block of an hour is a lot of time.

12   And we had gone through what we thought were examples of every

13   type of claim of privilege on there and every type of document

14   and said, if there's something that's unique that we're

15   missing, let us know so we'll understand that there's another

16   issue.  But we were satisfied that we had, we thought, at that

17   point, put enough on their plate that they would get back to

18   us.

19        The answer is, they never responded, they never got

20   back to us.  We were led to believe we were going to get

21   specific substantive information about each of those documents

22   and, in fact, some of the documents appeared to have been sent

23   to witnesses who work in the United States.  It looked like

24   some of the documents used outside-of-China servers or email

25   applications.  So those seem to us to be, you know, pretty

1    low-hanging fruit, and counsel for ZHP acknowledged, you know,

2    we have to take a look at that, you may be right.

3         So coming back to my concern about the meet-and-confer

4    process being, you know, an obstructive device at this point,

5    it seems a little interesting that ZHP's saying, let's talk

6    more when we never got a response to what we stated then.

7         And I will say, Your Honor, our argument, as you know,

8    has a few different layers to it.

9         At bottom, based on the *Aerospatiale* case, we believe

10   that the public interests are so significant and the relevance

11   to this litigation is likely to be so significant, even based

12   on the little bit of information that's there, talking about

13   announcements of NDMA contamination, quality problems, et

14   cetera, that we should get the documents.

15        So that was our argument at the base, but we don't

16   have enough information from ZHP, frankly, to justify

17   withholding the documents, which was our starting point,

18   because our reading of the law, and we've cited the law to Your

19   Honor, and we think the *Wultz* case in the Southern District of

20   New York is a very instructive case, that says, look, you have

21   the burden if you want to assert a privilege, and you have to

22   meet that burden with the information you provide in your log.

23   A privilege log is not a simple administrative device, it's not

24   just supposed to be a list; it's supposed to actually

25   demonstrate, to someone who reads it, this is why the documents

1   should not be produced.  And if a party decides to give cursory

2   or summary type of information, they do so, we believe, at

3   their own peril, because, especially in this case where time

4   marches very quickly and where a week is very significant, and

5   where -- and I think this is important, we challenged the first

6   log that came to us at the end of December.  And I want to make

7   sure that's not lost on Your Honor.  We challenged the log and

8   what we got back at the end of January was an updated log that

9   deleted, I believe, hundreds of entries and added some

10  information but not a lot of information.

11          So there has already been a meet-and-confer process

12  going on since December where ZHP has modified the log to some

13  extent but, from our perspective, not enough.  So from our

14  perspective, the log, on its face, doesn't justify withholding

15  the documents.  I understand that there may be a process where

16  they can have an opportunity to try to beef up or make more

17  specific descriptions and actually give the type of precision

18  that the *Chao* case from the Third Circuit talks about where you

19  actually say, this is the provision that matters and this is

20  why the document is being withheld.  You know, certainly, I

21  couldn't jump up and down a lot if Your Honor said, I'm going

22  to give one more chance on that, but, you know, on its face,

23  the log does not justify withholding, we believe, anything.

24          JUDGE VANASKIE:  Ms. Priselac?

25          MS. PRISELAC:  Thank you, Your Honor.

 1          First, I want to make the point that this is not a

 2     privilege log.  And so a lot of the analyses that Mr. Slater's

 3     trying to make and the comparisons to the case law about

 4     privilege logs are just inapplicable here.  The standards that

 5     are set forth in the *Aerospatiale* case is what matters here.

 6          Now, in order to get to that point of being able to

 7     make an argument about the *Aerospatiale* factors, we agreed, and

 8     Judge Schneider agreed with our approach, that we would, in the

 9     first instance, provide this log that includes the state

10     secrecy privilege and its claims.

11          And I'm glad Mr. Slater brought up the *Wultz* case

12     because the *Wultz* case they cited is very interesting.  In that

13     case it was about the Bank of China claiming certain attorney-

14     client privileges; but if you look at Page 484 of that case,

15     Judge Scheindlin is clear that in a previous order she actually

16     let the Bank of China withhold a huge number of documents on

17     state secrecy privilege.  So the *Wultz* case really, that they

18     have cited, actually just proves our point that attorney-client

19     privilege and state secret privilege are very different.

20          Your Honor, in terms of the actual sufficiency of the

21     log, we think it's pretty clear in that, essentially, the

22     plaintiffs have admitted by making their argument under

23     *Aerospatiale* that there is sufficient information on the log to

24     have it -- for us to have proven, especially now with Ms.

25     Yang's declaration, that these documents fall within the state

1    secrecy provisions of the Chinese government's laws.

2          And so now the question is whether those laws should

3    be upheld in this court, not whether our log is sufficient or

4    not.

5          JUDGE VANASKIE:  Yes, I'm concerned about litigation

6    over the adequacy of the log because that oftentimes just

7    results in more delay.  You get a new log and that log's not

8    sufficiently precise.  And I'm very reluctant to order

9    production on a waiver basis, that is, that you had several

10   opportunities to provide a better description and you didn't do

11   it because what might be sufficient could be in the eye of the

12   beholder.

13         MS. PRISELAC:  Your Honor, can I -- I'm sorry.  Can I

14   make one point on that?

15         JUDGE VANASKIE:  Certainly, you may.

16         MS. PRISELAC:  I do want to stress that -- and this

17   goes back to our client's efforts to really narrow, right, the

18   number of documents that it was withholding on that basis.

19   After the plaintiffs made their first challenge to our log is

20   when our client went and hired a third Chinese law firm to do a

21   quality check of the first-level review, and that's set forth

22   in Ms. Yang's declaration, and they attempted to apply these

23   laws as narrowly as possible which got us down to only 91

24   documents.  I mean, that's less than one-tenth of one percent

25   of what's been produced here.  And at this point -- and we also

1    went back and gave them even more, like, pin sites to the

2    Chinese regulation rather than the overall regulation and we

3    beefed up the description.

4        So we have been making a good-faith effort since they

5    first raised this in December and I don't want that to be lost

6    on the Court.

7        JUDGE VANASKIE:  There were some of the documents, and

8    I think Mr. Slater mentioned this in his argument today, but it

9    was also mentioned in the letter that was sent to me, the

10    letter brief, Document 1011, and that is that some of these

11    documents were distributed outside China.  They may have all

12    originated in China but they were distributed outside China.

13    Why shouldn't those documents be ordered to be produced?

14        MS. PRISELAC:  Yes, Your Honor.

15        So I believe it's five documents that went to one of

16    ZHP's U.S. subsidiaries, which Huahai Pharma US.  The two

17    employees to which those emails went to resigned and those two

18    employees are no longer with the company.  I still have to get

19    the final date of their employment with Huahai US, but they are

20    no longer with the company so copies of those emails no longer

21    exist on a Huahai US server.  So they would have to be

22    collected, and they were collected, in China, right, which is

23    the reason they're actually on this log is because they were

24    collected in China; but we don't have an ability to collect

25    them from the U.S.  And I've asked our vendor and our client to

1   see if any of those -- copies of those documents exist

2   somewhere else in the United States.  So far they haven't been

3   able to locate them and it's primarily because these two

4   employees no longer work for that company.

5           MR. SLATER:  I mean, Your Honor, that answers the

6   question.  If the documents were sent to the U.S., they should

7   be produced.  I mean, I don't understand this argument about --

8   I mean, we have concerns about why the documents no longer

9   exist, I guess we can get to that, in the U.S. and why they

10  weren't held, I guess we can look at the timing of that

11  description, but certainly if they were allowed to leave the

12  Chinese -- if they were allowed to leave China and be sent to

13  the U.S., there's no argument to keep those and they should be

14  produced immediately.

15          MS. PRISELAC:  Well, Your Honor, that's not what

16  *Aerospatiale* says.  It does say where they're collected, where

17  they originated, and where they currently reside are important

18  factors, and in this case all three of those are in China.

19          JUDGE VANASKIE:  Now, we know it's 91 documents.  How

20  many pages of documents are we talking about?

21          MS. PRISELAC:  Your Honor, I do not have a page count

22  but I can provide that to you.  I can get that in the next few

23  days and provide it to you.

24          JUDGE VANASKIE:  Okay.  How long will it take you to

25  provide the cast of characters information?

1    MS. PRISELAC:  I can have that tomorrow by the end of
2  the day, Your Honor.
3    JUDGE VANASKIE:  Okay.  All right.  So I'll direct
4  that that be produced.  I think that's consistent with what
5  we've already decided.
6    You know, to some extent, I'm wondering whether this
7  Chinese state secrecy laws are akin to what's called the
8  deliberative process privilege here in the United States
9  dealing with information considered by government agencies when
10  they're promulgating rules and things like that.  That's
11  neither here nor there, I guess, because we have to look at the
12  Chinese law, but it seems to me to be very much akin to that
13  and that's a qualified privilege, not an absolute privilege.
14  This seems to be similar here, when we look at the *Aerospatiale*
15  factors that need to be taken into account.
16    You know, I'm coming to the conclusion that we can do
17  one of a few things.  Number one, that cast of characters
18  information needs to be provided and, Mr. Slater, you can
19  decide, based upon now the receipt of the cast of characters
20  information, whether you would not want to pursue challenges to
21  specific documents because of the title or position of the
22  people involved in the matter.  You may still want to pursue
23  all 91.
24    I'm debating whether to require you to go meet and
25  confer on all 91 with a court reporter present so that a record

1  is made of the discussions that you have that you could then

2  present to me, hopefully on a document-by-document but it might

3  be all 91, that I then have a more adequate basis.  I'm

4  concerned about going back and forth on privilege logs, and I'm

5  anticipating that the dialogue that you would have would

6  provide more complete information.  I'm not saying the logs are

7  inadequate, I'm not saying that at all; but you could have --

8  to me, it might be the most efficient way and the most

9  expeditious way to move this matter forward.  And then if there

10  are still remaining documents that you want that you claim

11  should not be subject to the Chinese state secrecy law, or more

12  particularly and more precisely, but under the *Aerospatiale* and

13  *Richmark* factors, they should be produced nonetheless, we can

14  look at them on a document-by-document basis.

15        What do you think about that approach?

16        MR. SLATER:  Your Honor, it's interesting, I actually

17  thought about that, about potentially documenting our

18  discussions, and the conclusion I came to on that is this, and

19  it's sort of -- it's what I was saying earlier, that you can't

20  substitute a meet and confer or substitute a brief or

21  substitute an argument to the Court for the privilege log as

22  it's supposed to exist to begin with.  So I think, ultimately,

23  what that would do is substitute the defendant's obligation to

24  provide the type of information we're asking for, which is,

25  identify the specific provision in the Chinese state secret

1    law, identify the specific information in the document that

2    falls within it, tell us that analysis so we understand exactly

3    what you're saying, as opposed to citing seven sections of

4    various laws; and then when we have that information, then I

5    think we could have that type of a discussion.  But I think

6    that, to some extent, it's not fair to us if we have to -- if

7    we get to go -- if we go to a meet and confer and it's at that

8    point that the defense unloads all of this information on us

9    that should be in the log.  If they know it now, if they could

10   provide it in a meet and confer, in terms of the specificity of

11   why they say a document should be withheld, I think that the

12   law requires them and behooves them to provide that information

13   in the log because, again, a log is not just a list, it's

14   supposed to substantively justify the withholding.

15          So I would ask that the defense, if we're going to do

16   that, provide that type of analysis to specific provisions and

17   the specific parts of the documents that trigger them, and then

18   we could sit down and talk to them.  But I'm concerned, the

19   call that you're talking about, I would say, you know, round

20   numbers, you're talking probably four hours of time of people

21   sitting there and going back through all these documents

22   because there's going to be back and forth and we're going to

23   ask questions and we're going to ask for more and it'll end up

24   being a massive transcript, where I think that 90 percent of

25   that information could be put in more efficiently if it's put

1    into the log.  And if ZHP has this information, there's no

2    reason why they wouldn't provide it now because that would

3    actually be more compelling for their own argument to be able

4    to show Your Honor, here's our log, here's our explanations.

5    Because I think right now if you look at the log, there's no

6    way to understand why is a specific document protected.  It's,

7    well, we say it is because there's seven different laws that

8    apply to it and it generally talks about X, Y, Z.

9        And the descriptions, the last thing I'll say, when

10   counsel says we're not -- we're not arguing that we need more

11   fulsome descriptions and that's why we went to *Aerospatiale,*

12   look, you have to argue each level, but the little bit of

13   information that's there is obviously -- the announcement of

14   NDMA in valsartan, that's a bunch of documents; exemption of

15   products, I don't know what that means.  There's another one

16   that says, summary of the reports provided to the authorities,

17   that's information they can be providing in the log.  We don't

18   know what reports, which authorities, what about, what's the

19   subject matter of those reports.  There's another one that

20   says, a report to the Taizhou municipal government regarding

21   public sentiment.  I think that they can provide a lot more

22   information on that.  There's another one that says, and this

23   is Document 69 -- the last one I said was 67.  68 and 69 speak

24   to the valsartan event.

25       So I think that, at this point, it would be, I think,

1   somewhat of an unfair burden if we have to sit there and spend

2   hours and hours while the defense just, basically, will tell

3   us, in boilerplate fashion, these documents are covered by

4   these laws, this is what's addressed, and I think we'll end up

5   here; whereas, if they're given an opportunity to try to make

6   their fulsome production of information in their log, then I

7   think Your Honor will be in a much better place and we'll be in

8   a much better place to know exactly what we're dealing with.

9           JUDGE VANASKIE:  All right.  Ms. Priselac?

10          MS. PRISELAC:  Thank you, Your Honor.

11          You know, we think the log is sufficient and I think

12  that your idea is a good one.  What we could do, because our

13  law firm in China is really the only group of people who can

14  see these documents, right, you know, Mr. Goldberg and I can't,

15  that if we had them on the law firm [sic], as long as whoever

16  is advising plaintiffs' group on Chinese law is on the phone,

17  we could probably make a tremendous amount of progress because

18  when I did try to discuss the Chinese laws with plaintiffs'

19  counsel, whoever is advising them on Chinese law was not on the

20  phone and I, you know, at -- I pretty succinctly pointed

21  exactly to the laws, and they are on the log, that apply and

22  just because seven laws apply doesn't mean our description

23  isn't fulsome.  It means it's actually quite fulsome if seven

24  different laws apply.  So that's on that point.

25          So we'd be happy to do a meet and confer on the

1  record, just as you suggested, with our Chinese law firm on the

2  phone and we'd hope that their Chinese law advisor would also

3  be on the phone.

4       I would also say, Your Honor, too, that, you know, Mr.

5  Slater keeps talking about urgency and there's really no

6  urgency here.  And here's why, is that we're talking about 91

7  documents.  Plaintiffs have millions and millions of documents

8  about the who, what, where, why all of this happened.  If we

9  took our time and actually did go through the meet-and-confer

10  process, the *Aerospatiale* analysis, typically these cases and

11  these decisions involved expert opinions, if we did go through

12  that entire process, while at the same time our client is

13  trying to get permission from the Chinese government to get

14  these documents produced or some of them produced, if we even

15  ended up a year from now with these documents being produced,

16  Judge Kugler has said that this case isn't going to trial for

17  probably three years or more.  So if those documents did become

18  available and were produced at a later date, of course we'd be

19  happy to provide a 30(b)(6) to address them at that time.  But

20  right now this faux sense of urgency I don't think should force

21  us into compressing this process on that, you know -- and many

22  of the cases, you know, takes months and months to decide

23  because of the complex comity issues and the fact that expert

24  opinion is often needed in these cases.

25       JUDGE VANASKIE:  Well, I have to disagree with one

1  thing you said, Ms. Priselac, and that is a sense of urgency.

2  I think there is a sense of urgency with respect to getting

3  these matters resolved.  I know trial's not on the horizon but

4  there is an order in place now that calls for completion of

5  discovery in a relatively short timeframe and the documents may

6  be relevant to the depositions that are occurring, and I do --

7  and I just feel that there's this need to get it resolved.

8          Now maybe, Mr. Slater, you agree with Ms. Priselac and

9  we don't have to give it this urgency that I feel I should.

10         MR. SLATER:  No, Judge, I think there is a need to get

11 these issues addressed now, I think, for a lot of reasons.

12 This is when we're taking the depositions, this is when the

13 record is being made for our experts, this is when the record

14 is being made for dispositive motions, Daubert motions, et

15 cetera, and my understanding has been that the Court expects us

16 to get this work done now.

17         JUDGE VANASKIE:  Right.  Well, I'm looking for the

18 most efficient way, the most expeditious way to get this done

19 and I think you can tell from the comments I've had I'm not a

20 -- you know, I've been down the road with privilege logs before

21 and the back and forth on privilege logs can be more time

22 consuming without yielding any beneficial result.

23         So what I'm going to do is by the end of business

24 tomorrow, or maybe it's 11:59 p.m. tomorrow, the cast of

25 characters is to be provided for these 91 documents, and then

1    I'm going to direct that you meet and confer with a court
2    reporter present and make a record, either document by document
3    or category by category, and then you certainly, Mr. Slater,
4    will have the opportunity to -- and we'll do it on an expedited
5    basis -- move to compel all or some of the documents, and,
6    Ms. Priselac, you'll certainly have an opportunity to respond
7    to that.
8         At that point in time we'll be beyond the log issue.
9    I'm making it clear that I'm not going to find that a privilege
10   or certainly a state secret privilege has been waived because
11   the log was, quote-unquote, inadequate.  We're going to apply
12   the *Aerospatiale* and *Richmark* factors, because I think the
13   *Richmark* factors are relevant as well, to decide this.  And
14   if -- you know, I know that means likely *in camera* review but
15   sometimes that's the only way this can get accomplished.  I'm
16   hopeful that in your meet and confer that there will be
17   agreements to produce some documents and there will be
18   decisions not to pursue some documents, but I am also realistic
19   to know that it's likely that I'll have 91 documents to review.
20   That's why I was asking how many pages are we talking about.
21        MS. PRISELAC:  Your Honor, if I could clarify, and I
22   think this is one of the reasons, you know, expert opinions are
23   often used in these cases from the country of origin of the
24   documents is that our client is completely prohibited from
25   giving these documents even to Duane, Morris's attorneys.  They

1  cannot be shared outside of the United States, so that would

2  prohibit an *in camera* review.

3          JUDGE VANASKIE:  Oh, interesting.

4          MR. SLATER:  Yeah, we disagree, Your Honor.

5  Obviously, that's what *Aerospatiale* says; and it says if the

6  Court decides the documents are to be produced, that,

7  ultimately, United States law controls.

8          MS. PRISELAC:  Well, I don't think that *Aerospatiale*

9  says that if a foreign blocking statute blocks the production

10 of the documents to the United States that there has to be an

11 *in camera* review.

12         JUDGE VANASKIE:  But I could go to China and review

13 them?  I'm not proposing that.

14         MR. SLATER:  I mean, that's a pretty radical

15 interpretation, from our perspective.

16         MS. PRISELAC:  Well, Your Honor, it's not radical.

17 Actually, I think in all of the cases, including the *Wultz* case

18 that Mr. Slater cited, actually a Chinese law expert who was

19 located in China and had the proper Chinese bar was the person

20 who submitted a declaration who had personally reviewed the

21 documents and submitted that declaration to the Court because

22 they could not be reviewed by the Court.

23         JUDGE VANASKIE:  Okay.  I'll look for more authority

24 on that, I suppose.

25         MR. SLATER:  Your Honor, can I request a little

1    guidance on one issue --

2           JUDGE VANASKIE:  Certainly.

3           MR. SLATER:  -- so the meet and confer can move as

4    efficiently as possible?

5           In our past meet and confers with ZHP's counsel,

6    there's been a pretty consistent refrain of, counsel, you're

7    not deposing us, we're the lawyers, you're not deposing us.  I

8    just would like to dispel that before the call because there's

9    no point in us getting into the call if there's going to be a

10   dispute.  It's -- from what you're directing, I would think

11   that we are going to be asking questions of counsel and that we

12   should expect substantive information and responses.  It's the

13   only way for us to get the information.  I just would like to

14   avoid that type of a baseline dispute because I think that's

15   what Your Honor intends.

16          JUDGE VANASKIE:  It is what I intend.  I don't know

17   how you can gather the information that you feel you need to

18   make a document-by-document assessment of what may be and what

19   may not be protected by the state secret privilege without

20   asking those questions and counsel answer.  They're not under

21   oath.  And if they don't have answers, they don't have answers.

22   But that's the only way it can occur.

23          I expect they can ask you questions back, in terms of,

24   you know, why are these documents vital to your pursuit of your

25   claims?  That certainly is a factor that needs to be taken into

1    account.  I would expect there might be inquiries about why

2    aren't the documents that went to the FDA sufficient for you to

3    move forward?

4            So I'm just saying I think it's a two-way street.  It

5    is a meet and confer, and that's how I'd expect it to go

6    forward.

7            MR. SLATER:  Thank you for that guidance.  I agree.

8    Thank you.

9            JUDGE VANASKIE:  All right.

10           MS. PRISELAC:  Your Honor, can I also ask that you

11   order that whoever is advising the plaintiffs on Chinese law be

12   present during the meet and confer as we'll have our Chinese

13   law firm on the phone.

14           JUDGE VANASKIE:  All right.  Mr. Slater, is that

15   possible?  Do you have somebody?

16           MR. SLATER:  I mean, I would think that to some extent

17   it's work product, but if Your Honor wants me to answer the

18   question, I'll answer it right now.

19           JUDGE VANASKIE:  I want you to answer the question.

20           MR. SLATER:  We're not being advised by any outside

21   lawyers.  We think that our team of leadership can read the

22   state secret laws, read the case law and understand what it

23   means.  If we determine to retain somebody, we will and we'll

24   bring them to the call.

25           JUDGE VANASKIE:  Very well.  Thank you.

1    How quickly -- I know you have to confer with your

2 teams, but if I was to direct that the meet and confer occur by

3 next Friday, the 26th of March, is that impossible?

4    MR. SLATER:  No.  We would make it happen because we

5 think it should happen quickly.

6    JUDGE VANASKIE:  Ms. Priselac?

7    MR. GOLDBERG:  Your Honor --

8    JUDGE VANASKIE:  Mr. Goldberg?

9    MR. GOLDBERG:  Yes, Your Honor.  I think that under

10 the -- there's a deposition that's scheduled for next week.  It

11 starts on Sunday evening, U.S. time, and it will be every

12 evening -- it's scheduled to be every evening Sunday through

13 Thursday of next week.  Certainly Ms. Priselac will be occupied

14 for that entire time, as she is involved in defending that

15 deposition.  So we would ask that, at a minimum, Your Honor set

16 the meet and confer for the following week.  I don't know what

17 the dates would be, but looking at my calendar, the week of --

18 early the week of March 29th.

19    MR. SLATER:  Your Honor, I'm not understanding.  The

20 depositions take place at night.  There's a deposition the

21 following week.  I'll be taking that deposition.  I'm not

22 taking the deposition next week; Ms. Hilton is.  It's not that

23 there's a better week or not.  And the depositions are going to

24 take place at night; this meet and confer is going to take

25 place, I would assume, during normal business hours here so

1    that we can, you know, have a -- have our team on the call.  So

2    I don't understand why we would say it can't happen.  I mean,

3    we're ready to do it as early as this Friday or Tuesday,

4    Wednesday after the conference we can do it.  I mean, we want

5    to do this quickly.  We're not looking to drag this out.

6              JUDGE VANASKIE:  Yes.

7              MR. SLATER:  Counsel wants to push it a couple weeks.

8              MR. GOLDBERG:  I appreciate that.  As counsel knows,

9    we are dealing with a 12-hour time difference.  We intend to

10   have the Hui Zhong law firm on this call because they have

11   reviewed the documents and they have the information about the

12   Chinese state secret laws.  Given the time zone difference, we

13   are doing depositions in the evening, business -- during

14   business hours China time.  What Mr. Slater's proposing is that

15   we would do this business hours U.S. time, after-hours China

16   time.

17             We can certainly discuss with the Hui Zhong law firm

18   their availability next week, but the following week

19   Ms. Priselac will be available during the evenings here and

20   business time in China.  But we can work with plaintiffs on

21   finding a time but it is essential, in our view, that the Hui

22   Zhong law firm be able to attend because they're the only ones

23   who have seen these documents.  So that's something Your Honor

24   should consider in scheduling this meet and confer.

25             JUDGE VANASKIE:  Well, it seems to me, correct me if

1    I'm wrong, you will correct me if I'm wrong, that it could be

2    done on March 26 but in the evening.  The deposition will be

3    concluded March 25th.

4          MR. GOLDBERG:  Correct, Your Honor.

5          JUDGE VANASKIE:  I know it puts, you know -- but this

6    is an important matter, I know.

7          What about that, Mr. Slater, that I direct it be

8    completed by March 26?  You have to agree on a time.  The time

9    could be in the evening or late afternoon.

10         MR. SLATER:  That's fine.  We'll work it out.  I would

11   think that the firm in China that's assisting ZHP's counsel

12   will make itself available when this gets scheduled and we'll

13   try to find an agreeable time.  I really hope we don't have to

14   contact Your Honor to schedule a call.

15         JUDGE VANASKIE:  Yes, me too.  Me too.  But I'm going

16   to direct that it be completed by March 26, the meet and

17   confer, and the cast of characters by end of day tomorrow.  And

18   then I expect that you'll send me a status report early the

19   following week, hopefully by Monday, and I'll get back to you,

20   okay, in terms of moving this matter along.  I know there are a

21   lot of other issues that need to be moved along.

22         I've engaged the assistance of an associate in my

23   firm.  I've been doing this all myself so far, but I think I

24   need to get decisions out, so I wanted to let you know that I

25   am utilizing assistance now and you will be -- you know,

1    hopefully things will move a little bit faster.

2             MR. SLATER:  It's been going fast from our

3    perspective, so we have no complaints, Judge.

4             JUDGE VANASKIE:  I'm glad to hear that.  I was

5    concerned about that.

6             What about from the defense perspective?  Because I

7    don't -- you know, I don't want to cause unnecessary expense

8    either, so if you prefer me to look at everything, I'll look at

9    everything and--

10            MR. SLATER:  From the plaintiffs' perspective,

11   whatever you think is most efficacious for you.  Our primary

12   interest is moving things forward, so whatever you think is

13   easiest or best for you --

14            JUDGE VANASKIE:  Yes.

15            MR. SLATER:  -- we support.

16            JUDGE VANASKIE:  Yes.  I can make decisions fast but

17   I'm not as fast a writer as I used to be.

18            Anything else?

19            MR. SLATER:  No, Your Honor, not from plaintiffs.

20            MR. GOLDBERG:  Nothing from the defense, Your Honor.

21            JUDGE VANASKIE:  Oh, there is one more issue, and that

22   was something that you requested, Mr. Slater, and that deals

23   with prohibiting objections on the basis of the state secret

24   privilege at depositions that don't concern any of the

25   documents withheld on the basis of the state secret privilege.

1     MR. SLATER:  Thank you, Your Honor.  I forgot about

2  that.  Thank you, Your Honor.

3     JUDGE VANASKIE:  All right.

4     MS. PRISELAC:  Your Honor?

5     JUDGE VANASKIE:  Go ahead, Ms. Priselac.

6     MS. PRISELAC:  Well, Your Honor, we would oppose that

7  because, obviously, an attorney can ask a question that

8  implicates the state secret privilege even if it isn't in a

9  document on this log.

10     MR. SLATER:  Well, I have to jump in now and give a

11  little history then.

12     We raised this issue originally, specifically with

13  this issue, Your Honor, where we wanted to block ZHP from

14  asserting state secret privilege objections during the

15  depositions and we wanted to have the issue briefed months and

16  months ago with Judge Schneider, and what Judge Schneider

17  resolved was this:  He said, look -- because ZHP said they were

18  going to be serving a log of, quote-unquote, privileged

19  documents, and what Judge Schneider ruled was, okay, this is

20  how we'll handle it:  ZHP, serve your log, then we'll have a

21  context.  And in that context we can then litigate the question

22  of whether or not there's actually a viable privilege to

23  protect these documents and actually stated on the record that,

24  and we actually covered this, that if something's -- for

25  example, if there were no documents, then there would be no

 1    state secret privilege issue.  And if there were a few

 2    documents, it would relate only to those documents.  So I don't

 3    have that transcript at my fingertips.  If necessary, we could

 4    get it to Your Honor.  But that is how this went down.  And

 5    then we ended up in this process which started in December when

 6    we got the first log and went forward.

 7          So that was how Judge Schneider ruled and then handed,

 8    obviously, the plate off to Your Honor.

 9          JUDGE VANASKIE:  All right.  Well, it would be helpful

10    if you provided that transcript to me so that I can take a look

11    at it.  It is a little bit difficult --

12          MR. SLATER:  I will.

13          JUDGE VANASKIE:  Thank you for that, Mr. Slater.

14          It is a little bit difficult for me to rule on this

15    issue sort of in a vacuum, but I certainly understand --

16          MS. PRISELAC:  Your Honor?

17          JUDGE VANASKIE:  -- I understand your position.

18          Go ahead, Ms. Priselac.

19          MS. PRISELAC:  Your Honor, I would respectfully

20    disagree with Mr. Slater's characterization of the record.

21    Judge Schneider made it clear, time and time again, and we can

22    also provide you with those transcripts that says that these

23    issues would be handled, like a privilege objection at a

24    deposition, at which time we could either call His Honor or now

25    Your Honor or we could make a motion after the deposition, and

1    that's how it was to be handled.

2            MR. GOLDBERG:  Your Honor, the reality is --

3            JUDGE VANASKIE:  Go ahead, Mr. Goldberg.

4            MR. GOLDBERG:  -- the reality is, and this was -- this

5    was clear to Judge Schneider and it's clear in the transcripts,

6    which is why he ruled that way, there's no way to know what

7    questions the plaintiffs' counsel will ask at a deposition.

8    There's no way to know whether they will ask a question that

9    could put a witness in the position of having to reveal state

10   secret information.  We think it's unlikely.  And the fact that

11   only 91 of more than 270,000 documents have been produced has

12   been withheld on the basis of state secret I think perforce

13   shows that it's unlikely.  However, should plaintiffs' counsel

14   ask a question, did you discuss this with a Chinese regulatory

15   authority, of course, we would need to state the objection or

16   state -- you know, state the objection and assert the

17   privilege.  And that's how it works in these cases, just as it

18   does with the documents.  If there's testimony that is called

19   for and that -- or a question that would result in the

20   disclosure of a Chinese state secret, the objection is made,

21   the privilege is asserted, and the Court would then rule on

22   that line of questioning and that privilege but would not

23   require the witness to first disclose the state secret and

24   subject the witness to possible criminal penalties.

25           JUDGE VANASKIE:  Have there been any objections thus

1  far at any of the depositions based upon the state secret

2  privilege?

3         MR. GOLDBERG:  No, there have not.  And we would

4  expect it to be very -- I would just stand on the fact that

5  because of the very small, small number of documents that have

6  been identified as potentially state secret, we think it's

7  unlikely that this issue will come up at a deposition; but we

8  absolutely need, and as we said to Judge Schneider, absolutely

9  need to reserve the right and have the ability so that our

10  witnesses are not testifying under the specter of criminal

11  sanctions.

12         JUDGE VANASKIE:  I did have in my notes, and I do want

13  to say this, that I am favorably impressed by the level of

14  review that the documents went through.  I am favorably

15  impressed by it's only 91 documents but it may be the 91 most

16  important documents from plaintiffs' perspective, it may not

17  be.  But at least it shows that you're really operating in good

18  faith here and I did want to note that.

19         So, I won't make a prophylactic ruling with respect to

20  whether objections on the basis of the state secret privilege

21  can be lodged.  We're just going to have to take it as it comes

22  up.

23         MR. SLATER:  Thank you, Your Honor.

24         MR. GOLDBERG:  Thank you, Your Honor.

25         JUDGE VANASKIE:  Anything else for today?

1          MR. SLATER:  At my peril, I'll say no, again.

2          MR. GOLDBERG:  Nothing for the ZHP parties.

3          JUDGE VANASKIE:  Okay.  I won't look at my notes.

4          All right.  Thank you all very much.

5          MR. SLATER:  Thank you, Your Honor.

6          MS. PRISELAC:  Thank you, Your Honor.

7          JUDGE VANASKIE:  Bye-bye.

8          MR. GOLDBERG:  Bye-bye.

9          (The proceedings concluded at 11:57 a.m.)

10

11

12          - - - - - - - - - - - - - - - -

13

14          I certify that the foregoing is a correct transcript

15  from the record of proceedings in the above-entitled matter.

16

17  */S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR*
    *Court Reporter/Transcriber*

18

19  *03/18/2021*
    *Date*

20

21

22

23

24

25

## /

/S [1] - 39:17

## 0

*03/18/2021* [1] - 39:19
*07068* [1] - 1:14
*08101* [1] - 1:8

## 1

*1011* [1] - 18:10
*103* [1] - 1:14
*11:00* [2] - 1:9, 3:2
*11:57* [1] - 39:9
*11:59* [1] - 26:24
*12-hour* [1] - 32:9
*16* [1] - 1:8
*17th* [1] - 2:5
*1835* [1] - 1:17
*19-md-02875-RBK-JS* [1] - 1:4
*19103* [2] - 1:17, 2:5

## 2

*2021* [1] - 1:8
*25th* [1] - 33:3
*26* [3] - 33:2, 33:8, 33:16
*26th* [1] - 31:3
*270,000* [1] - 37:11
*2900* [1] - 1:17
*29th* [1] - 31:18

## 3

*30* [3] - 2:5, 7:9, 8:7
*30(b)(6* [1] - 25:19

## 4

*484* [1] - 16:14
*4th* [1] - 1:7

## 6

*60-minute* [1] - 12:1
*609-774-1494* [1] - 1:23
*61* [2] - 7:11, 8:10
*67* [1] - 23:23
*68* [1] - 23:23
*69* [2] - 23:23

## 7

*701* [1] - 1:20
*70130* [1] - 1:20

## 8

*88* [2] - 4:22, 4:24

## 9

*90* [1] - 22:24
*91* [14] - 4:21, 10:12, 13:9, 17:23, 19:19, 20:23, 20:25, 21:3, 25:6, 26:25, 27:19, 37:11, 38:15

## A

*a.m* [3] - 1:9, 3:3, 39:9
*ability* [2] - 18:24, 38:9
*able* [5] - 11:20, 16:6, 19:3, 23:3, 32:22
*above-entitled* [1] - 39:15
*abruptly* [2] - 4:13, 4:19
*absolute* [1] - 20:13
*absolutely* [2] - 38:8
*accomplished* [1] - 27:15
*according* [2] - 7:2, 11:6
*account* [2] - 20:15, 30:1
*acknowledge* [1] - 13:8
*acknowledged* [2] - 3:18, 14:1
*ACTION* [1] - 1:3
*actual* [2] - 5:20, 16:20
*ADAM* [1] - 1:13
*added* [1] - 15:9
*address* [2] - 10:3, 25:19
*addressed* [4] - 11:24, 11:25, 24:4, 26:11
*adequacy* [1] - 17:6
*adequate* [1] - 21:3
*Administration* [1] - 11:16
*administrative* [1] - 14:23
*admitted* [1] - 16:22
*advancement* [1] - 3:25
*advised* [1] - 30:20
*advising* [3] - 24:16, 24:19, 30:11
*advisor* [1] - 25:2
*Aerospatiale* [12] - 14:9, 16:5, 16:7, 16:23, 19:16, 20:14, 21:12, 23:11, 25:10, 27:12, 28:5, 28:8
*after-hours* [1] - 32:15
*afternoon* [1] - 33:9
*agencies* [1] - 20:9
*ago* [1] - 35:16

*agree* [5] - 3:12, 4:11, 26:8, 30:7, 33:8
*agreeable* [1] - 33:13
*agreed* [2] - 16:7, 16:8
*agreements* [1] - 27:17
*ahead* [4] - 9:11, 35:5, 36:18, 37:3
*aided* [1] - 1:25
*akin* [2] - 20:7, 20:12
*allowed* [2] - 19:11, 19:12
*ALSO* [1] - 2:10
*amount* [2] - 5:18, 24:17
*analyses* [1] - 16:2
*analysis* [4] - 8:22, 22:2, 22:16, 25:10
*announcement* [2] - 11:2, 23:13
*announcements* [1] - 14:13
*answer* [5] - 13:19, 19:20, 30:17, 30:18, 30:19
*answers* [3] - 19:5, 29:21
*anticipating* [1] - 21:5
*anyway* [1] - 11:21
*apologize* [1] - 11:4
*appeared* [2] - 3:19, 13:22
*applications* [1] - 13:25
*apply* [9] - 3:10, 12:15, 12:21, 17:22, 23:8, 24:21, 24:22, 24:24, 27:11
*applying* [1] - 10:8
*appreciate* [1] - 32:8
*approach* [3] - 9:25, 16:8, 21:15
*approached* [4] - 9:24, 10:21, 11:7, 11:16
*approval* [1] - 11:10
*argue* [1] - 23:12
*arguing* [1] - 23:10
*argument* [10] - 9:8, 14:7, 14:15, 16:7, 16:22, 18:8, 19:7, 19:13, 21:21, 23:3
*arguments* [1] - 7:22
*arm* [1] - 8:24
*assert* [3] - 6:14, 14:21, 37:16
*asserted* [1] - 37:21
*asserting* [1] - 35:14
*assessment* [1] - 29:18
*assistance* [2] - 33:22,

33:25
*assisting* [1] - 33:11
*associate* [1] - 33:22
*assume* [1] - 31:25
*attempted* [1] - 17:22
*attend* [1] - 32:22
*attention* [1] - 13:1
*attorney* [5] - 3:7, 8:1, 16:13, 16:18, 35:7
*attorney-client* [2] - 3:7, 16:18
*attorneys* [1] - 27:25
*authorities* [5] - 5:3, 7:10, 8:8, 8:9, 8:12, 10:21, 11:8, 11:11, 11:12, 11:14, 23:16, 23:18
*authority* [1] - 28:23, 37:15
*availability* [1] - 32:18
*available* [3] - 25:18, 32:19, 33:12
*avoid* [1] - 29:14

## B

*Bank* [2] - 16:13, 16:16
*bar* [1] - 28:19
*barred* [1] - 8:1
*base* [1] - 14:15
*based* [4] - 14:9, 14:11, 20:19, 38:1
*baseline* [1] - 29:14
*basis* [13] - 6:20, 9:4, 12:8, 12:13, 17:9, 17:18, 21:3, 21:14, 27:5, 34:23, 34:25, 37:12, 38:20
*become* [1] - 25:17
*beef* [1] - 15:16
*beefed* [1] - 18:3
*begin* [1] - 21:22
*behalf* [1] - 9:25
*beholder* [1] - 17:12
*behooves* [1] - 22:12
*beneficial* [1] - 26:22
*best* [1] - 34:13
*better* [4] - 17:10, 24:7, 24:8, 31:23
*beyond* [1] - 27:8
*bit* [5] - 14:12, 23:12, 34:1, 36:11, 36:14
*block* [2] - 13:11, 35:13
*blocking* [1] - 28:9
*blocks* [1] - 28:9
*boilerplate* [1] - 24:3
*bottom* [1] - 14:9
*brief* [3] - 10:25, 18:10, 21:20

*briefed* [1] - 35:15
*bring* [1] - 30:24
*broader* [1] - 8:20
*brought* [1] - 16:11
*Building* [1] - 1:7
*building* [1] - 11:2
*bunch* [1] - 23:14
*burden* [3] - 14:21, 14:22, 24:1
*business* [6] - 26:23, 31:25, 32:13, 32:14, 32:15, 32:20
*BY* [4] - 1:13, 1:16, 1:19, 2:3
*bye* [4] - 39:7, 39:8
*bye-bye* [2] - 39:7, 39:8

## C

*calendar* [1] - 31:17
*Camden* [1] - 1:8
*camera* [3] - 27:14, 28:2, 28:11
*Camille* [2] - 1:22, 39:17
*camillepedano@gmail.com* [1] - 1:23
*CAMP* [1] - 1:20
*cannot* [1] - 28:1
*care* [1] - 12:14
*case* [17] - 12:17, 14:9, 14:19, 14:20, 15:3, 15:18, 16:3, 16:5, 16:11, 16:12, 16:13, 16:14, 16:17, 19:18, 25:16, 28:17, 30:22
*cases* [6] - 25:10, 25:22, 25:24, 27:23, 28:17, 37:17
*cast* [10] - 3:7, 3:9, 3:12, 4:14, 6:3, 19:25, 20:17, 20:19, 26:24, 33:17
*category* [2] - 27:3
*CCR* [1] - 39:17
*certain* [2] - 3:19, 16:13
*certainly* [15] - 3:12, 3:22, 5:11, 9:11, 15:20, 17:15, 19:11, 27:3, 27:6, 27:10, 29:2, 29:25, 31:13, 32:17, 36:15
*certify* [1] - 39:14
*cetera* [2] - 14:14, 26:15
*challenge* [1] - 17:19
*challenged* [2] - 15:5, 15:7
*challenges* [2] - 8:20,

20:20
**chance** [1] - 15:22
**Chao** [1] - 15:18
**characterization** [1] - 36:20
**characters** [10] - 3:8, 3:9, 3:12, 4:14, 6:3, 19:25, 20:17, 20:19, 26:25, 33:17
**chart** [1] - 5:21
**check** [5] - 6:11, 6:12, 6:14, 10:6, 17:21
**China** [18] - 8:15, 13:24, 16:13, 16:16, 18:11, 18:12, 18:22, 18:24, 19:12, 19:18, 24:13, 28:12, 28:19, 32:14, 32:15, 32:20, 33:11
**Chinese** [44] - 4:24, 5:3, 5:7, 6:6, 6:17, 7:10, 7:14, 7:15, 8:5, 8:8, 8:9, 8:11, 8:24, 9:16, 10:13, 10:17, 11:8, 11:9, 11:15, 12:6, 12:14, 12:21, 17:1, 17:20, 18:2, 19:12, 20:7, 20:12, 21:11, 21:25, 24:16, 24:18, 24:19, 25:1, 25:2, 25:13, 28:18, 28:19, 30:11, 30:12, 32:12, 37:14, 37:20
**CHRISTOPHER** [1] - 1:13
**Circuit** [1] - 15:18
**cited** [4] - 14:18, 16:12, 16:18, 28:18
**citing** [1] - 22:3
**CIVIL** [1] - 1:3
**claim** [2] - 13:13, 21:10
**claiming** [2] - 6:21, 16:13
**claims** [2] - 16:10, 29:25
**clarify** [2] - 9:10, 27:21
**clear** [7] - 8:15, 16:15, 16:21, 27:9, 36:21, 37:5
**clearly** [1] - 12:16
**Clerk** [1] - 2:12
**clerk** [1] - 6:19
**client** [9] - 3:7, 10:15, 16:14, 16:18, 17:20, 18:25, 25:12, 27:24
**client's** [1] - 17:17
**Cohen** [1] - 1:7
**COLEEN** [1] - 2:4

**colleague** [1] - 4:5
**collect** [1] - 18:24
**collected** [4] - 18:22, 18:24, 19:16
**columns** [1] - 5:19
**coming** [2] - 14:3, 20:16
**comity** [1] - 25:23
**Commencing** [1] - 1:9
**comments** [1] - 26:19
**communications** [5] - 7:14, 8:9, 8:11, 11:13, 11:15
**company** [3] - 18:18, 18:20, 19:4
**comparisons** [1] - 16:3
**compel** [1] - 27:5
**compelling** [1] - 23:3
**complaints** [1] - 34:3
**complete** [1] - 21:6
**completed** [2] - 33:8, 33:16
**completely** [2] - 4:22, 27:24
**completion** [1] - 26:4
**complex** [1] - 25:23
**compressing** [1] - 25:21
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concern** [3] - 7:13, 14:3, 34:24
**concerned** [5] - 3:24, 17:5, 21:4, 22:18, 34:5
**concerns** [3] - 3:16, 3:22, 19:8
**concluded** [2] - 33:3, 39:9
**conclusion** [2] - 20:16, 21:18
**conducted** [2] - 10:11, 12:2
**confer** [32] - 3:8, 3:13, 3:22, 4:11, 4:13, 4:17, 4:20, 6:3, 12:1, 12:7, 12:12, 13:4, 14:3, 15:11, 20:25, 21:20, 22:7, 22:10, 24:25, 25:9, 27:1, 27:16, 29:3, 30:5, 30:12, 31:1, 31:2, 31:16, 31:24, 32:24, 33:17
**conference** [1] - 32:4
**conferred** [1] - 3:17
**confers** [3] - 3:25, 4:6, 29:5

**confidential** [20] - 4:25, 5:3, 5:6, 6:7, 6:17, 6:24, 7:2, 7:4, 7:5, 7:11, 7:18, 8:5, 8:14, 8:16, 8:25, 9:6, 9:14, 9:15, 9:19, 9:20
**confidentiality** [2] - 7:6, 8:23
**CONLEE** [1] - 1:19
**consider** [1] - 32:24
**considered** [1] - 20:9
**consistent** [2] - 20:4, 29:6
**consuming** [1] - 26:22
**contact** [2] - 11:11, 33:14
**contamination** [1] - 14:13
**context** [4] - 6:19, 9:1, 35:21
**continue** [2] - 4:19, 10:9
**Continued** [1] - 2:1
**controls** [1] - 28:7
**Cooper** [1] - 1:7
**copies** [2] - 18:20, 19:1
**copy** [1] - 5:15
**correct** [4] - 32:25, 33:1, 33:4, 39:14
**counsel** [13] - 13:2, 14:1, 23:10, 24:19, 29:5, 29:6, 29:11, 29:20, 32:7, 32:8, 33:11, 37:7, 37:13
**count** [1] - 19:21
**country** [1] - 27:23
**couple** [1] - 32:7
**course** [3] - 11:20, 25:18, 37:15
**COURT** [2] - 1:1, 12:24
**Court** [11] - 1:22, 8:2, 8:3, 18:6, 21:21, 26:15, 28:6, 28:21, 28:22, 37:21, 39:17
**court** [5] - 12:16, 12:21, 17:3, 20:25, 27:1
**Courthouse** [1] - 1:7
**Courtroom** [1] - 2:13
**covered** [2] - 24:3, 35:24
**CRC** [1] - 39:17
**criminal** [2] - 37:24, 38:10
**CRR** [1] - 39:17
**cursory** [1] - 15:1
**custodian** [1] - 11:20

# D

**Date** [1] - 39:19
**date** [2] - 18:19, 25:18
**dates** [1] - 31:17
**Daubert** [1] - 26:14
**days** [2] - 13:11, 19:23
**dealing** [3] - 20:9, 24:8, 32:9
**deals** [1] - 34:22
**debating** [1] - 20:24
**December** [4] - 15:6, 15:12, 18:5, 36:5
**decide** [3] - 20:19, 25:22, 27:13
**decided** [1] - 20:5
**decides** [2] - 15:1, 28:6
**decision** [1] - 3:6
**decisions** [4] - 25:11, 27:18, 33:24, 34:16
**declaration** [8] - 7:25, 8:2, 8:12, 9:14, 16:25, 17:22, 28:20, 28:21
**defendant's** [1] - 21:23
**Defendants** [1] - 2:6
**defending** [1] - 31:14
**defense** [7] - 3:17, 3:23, 22:8, 22:15, 24:2, 34:6, 34:20
**defense's** [1] - 7:5
**defer** [1] - 4:5
**delay** [1] - 17:7
**deleted** [1] - 15:9
**deliberative** [1] - 20:8
**demonstrate** [1] - 14:25
**deposing** [1] - 29:7
**deposition** [10] - 31:10, 31:15, 31:20, 31:21, 31:22, 33:2, 36:24, 36:25, 37:7, 38:7
**depositions** [8] - 26:6, 26:12, 31:20, 31:23, 32:13, 34:24, 35:15, 38:1
**Deputy** [1] - 2:13
**describe** [1] - 8:3
**describes** [1] - 8:2
**description** [10] - 5:5, 5:7, 5:22, 12:14, 12:16, 12:20, 17:10, 18:3, 19:11, 24:22
**descriptions** [5] - 5:9, 12:11, 15:17, 23:9, 23:11
**designated** [1] - 10:23

**designation** [1] - 3:21
**detailed** [2] - 7:25, 8:12
**determine** [1] - 30:23
**device** [2] - 14:4, 14:23
**dialogue** [1] - 21:5
**difference** [2] - 32:9, 32:12
**different** [4] - 14:8, 16:19, 23:7, 24:24
**difficult** [2] - 36:11, 36:14
**direct** [5] - 20:3, 27:1, 31:2, 33:7, 33:16
**directing** [1] - 29:10
**direction** [1] - 5:3
**directly** [2] - 8:7, 8:9
**disagree** [3] - 25:25, 28:4, 36:20
**disclose** [1] - 37:23
**disclosure** [1] - 37:20
**discovery** [1] - 26:5
**discuss** [4] - 12:7, 24:18, 32:17, 37:14
**discussed** [2] - 12:11, 13:3
**discussing** [1] - 12:13
**discussion** [1] - 22:5
**discussions** [2] - 21:1, 21:18
**dispel** [1] - 29:8
**dispositive** [1] - 26:14
**dispute** [3] - 6:5, 29:10, 29:14
**disputes** [1] - 6:1
**distributed** [2] - 18:11, 18:12
**District** [1] - 14:19
**DISTRICT** [2] - 1:1, 1:1
**document** [17] - 5:5, 6:3, 6:4, 13:13, 15:20, 21:2, 21:14, 22:1, 22:11, 23:6, 27:2, 29:18, 35:9
**Document** [2] - 18:10, 23:23
**document-by-document** [3] - 21:2, 21:14, 29:18
**documenting** [1] - 21:17
**documents** [90] - 3:19, 4:21, 5:1, 6:4, 6:5, 6:10, 6:13, 6:16, 6:23, 7:7, 7:10, 7:12, 8:3, 8:6, 8:7, 8:10, 9:12, 9:13, 10:13, 10:16, 10:18, 11:20,

11:22, 11:24, 12:4,
12:5, 13:3, 13:9,
13:21, 13:22, 13:24,
14:14, 14:17, 14:25,
15:15, 16:16, 16:25,
17:18, 17:24, 18:7,
18:11, 18:13, 18:15,
19:1, 19:6, 19:8,
19:19, 19:20, 20:21,
21:10, 22:17, 22:21,
23:14, 24:3, 24:14,
25:7, 25:14, 25:15,
25:17, 26:5, 26:25,
27:5, 27:17, 27:18,
27:19, 27:24, 27:25,
28:6, 28:10, 28:21,
29:24, 30:2, 32:11,
32:23, 34:25, 35:19,
35:23, 35:25, 36:2,
37:11, 37:18, 38:5,
38:14, 38:15, 38:16
**done** [4] - 5:15, 26:16,
26:18, 33:2
**double** [3] - 6:11, 6:14
**double-check** [2] -
6:11, 6:14
**down** [6] - 10:12,
15:21, 17:23, 22:18,
26:20, 36:4
**drag** [1] - 32:5
**Drug** [1] - 11:15
**DUANE** [1] - 2:2
**Duane** [1] - 27:25
**during** [10] - 11:25,
12:7, 12:12, 13:3,
30:12, 31:25, 32:13,
32:19, 35:14

### E

**early** [3] - 31:18, 32:3,
33:18
**easiest** [1] - 34:13
**efficacious** [1] - 34:11
**efficient** [2] - 21:8,
26:18
**efficiently** [2] - 22:25,
29:4
**effort** [1] - 18:4
**efforts** [1] - 17:17
**Eisenhower** [1] - 1:14
**either** [5] - 8:8, 9:15,
27:2, 34:8, 36:24
**email** [1] - 13:24
**emails** [2] - 18:17,
18:20
**emergency** [2] - 11:2,
11:6
**employees** [3] -
18:17, 18:18, 19:4
**employment** [1] -

18:19
**end** [7] - 15:6, 15:8,
20:1, 22:23, 24:4,
26:23, 33:17
**ended** [4] - 4:13, 4:19,
25:15, 36:5
**enforced** [1] - 12:15
**engaged** [3] - 10:4,
10:5, 33:22
**enlarge** [1] - 5:16
**entire** [2] - 25:12,
31:14
**entirety** [1] - 6:14
**entitled** [1] - 39:15
**entries** [1] - 15:9
**entry** [1] - 5:22
**especially** [2] - 15:3,
16:24
**Esquire** [1] - 2:11
**ESQUIRE** [8] - 1:13,
1:13, 1:16, 1:19, 2:3,
2:3, 2:4, 2:4
**essential** [1] - 32:21
**essentially** [1] - 10:6,
16:21
**establishing** [1] - 8:23
**et** [2] - 14:13, 26:14
**evening** [4] - 31:11,
31:12, 32:13, 33:2,
33:9
**evenings** [1] - 32:19
**event** [2] - 11:7, 23:24
**exactly** [5] - 8:3,
10:24, 22:2, 24:8,
24:21
**example** [2] - 7:13,
35:25
**examples** [1] - 13:12
**exemption** [1] - 23:14
**exist** [4] - 18:21, 19:1,
19:9, 21:22
**expect** [6] - 29:12,
29:23, 30:1, 30:5,
33:18, 38:4
**expects** [1] - 26:15
**expedited** [1] - 27:4
**expeditious** [2] - 21:9,
26:18
**expense** [1] - 34:7
**expert** [4] - 25:11,
25:23, 27:22, 28:18
**experts** [1] - 26:13
**explanations** [1] -
23:4
**expressly** [4] - 5:6,
8:4, 8:13
**extent** [4] - 15:13,
20:6, 22:6, 30:16
**extra** [1] - 7:6
**eye** [1] - 17:11

### F

**face** [6] - 8:4, 8:22,
9:15, 9:20, 15:14,
15:22
**fact** [7] - 5:18, 7:18,
8:13, 13:22, 25:23,
37:10, 38:4
**factor** [1] - 29:25
**factors** [6] - 16:7,
19:18, 20:15, 21:13,
27:12, 27:13
**fair** [1] - 22:6
**faith** [2] - 18:4, 38:18
**fall** [3] - 7:15, 7:19,
16:25
**falls** [1] - 22:2
**far** [6] - 3:13, 5:25,
6:16, 19:2, 33:23,
38:1
**fashion** [1] - 24:3
**fast** [3] - 34:2, 34:16,
34:17
**faster** [1] - 34:1
**faux** [1] - 25:20
**favorably** [2] - 38:13,
38:14
**FDA** [1] - 30:2
**feature** [1] - 5:10
**feedback** [2] - 12:12,
12:18
**fell** [1] - 10:13
**few** [5] - 4:15, 14:8,
19:22, 20:17, 36:1
**figure** [1] - 10:24
**final** [1] - 18:19
**fine** [1] - 33:10
**fingertips** [1] - 36:3
**firm** [13] - 10:5, 10:11,
17:20, 24:13, 24:15,
25:1, 30:13, 32:10,
32:17, 32:22, 33:11,
33:23
**firms** [3] - 10:3, 10:8
**first** [15] - 3:6, 3:10,
10:4, 10:6, 10:7,
15:5, 16:1, 16:9,
17:19, 17:21, 18:5,
36:6, 37:23
**first-level** [4] - 10:4,
10:6, 10:7, 17:21
**five** [2] - 13:4, 18:15
**following** [4] - 31:16,
31:21, 32:18, 33:19
**Food** [1] - 11:15
**FOR** [1] - 1:1
**force** [1] - 25:20
**foregoing** [1] - 39:14
**foreign** [1] - 28:9
**forgot** [1] - 35:1

**forth** [5] - 16:5, 17:21,
21:4, 22:22, 26:21
**forward** [6] - 7:16,
21:9, 30:3, 30:6,
34:12, 36:6
**four** [1] - 22:20
**frankly** [2] - 12:11,
14:16
**FREEMAN** [1] - 1:12
**Friday** [2] - 31:3, 32:3
**front** [1] - 11:23
**fruit** [1] - 14:1
**fulsome** [3] - 23:11,
24:6, 24:23
**future** [2] - 5:13, 6:1

### G

**gather** [1] - 29:17
**Ge's** [1] - 11:22
**GEDDIS** [1] - 1:13
**generally** [1] - 23:8
**given** [2] - 24:5, 32:12
**glad** [2] - 16:11, 34:4
**GOLDBERG** [13] - 2:3,
4:4, 31:7, 31:9, 32:8,
33:4, 34:20, 37:2,
37:4, 38:3, 38:24,
39:2, 39:8
**Goldberg** [4] - 4:3,
24:14, 31:8, 37:3
**GOLOMB** [1] - 1:16
**good-faith** [1] - 18:4
**government** [18] -
4:24, 5:7, 6:6, 6:17,
7:3, 7:14, 8:5, 8:8,
8:9, 8:14, 8:24, 9:16,
10:18, 10:20, 11:9,
20:9, 23:20, 25:13
**government's** [1] -
17:1
**group** [2] - 24:13,
24:16
**guarantee** [1] - 11:9
**guess** [4] - 5:15, 19:9,
19:10, 20:11
**guidance** [2] - 29:1,
30:7

### H

**handed** [1] - 36:7
**handle** [1] - 35:20
**handled** [2] - 36:23,
37:1
**hanging** [1] - 14:1
**happy** [7] - 3:23, 4:11,
4:14, 4:16, 4:19,
24:25, 25:19
**hard** [1] - 5:9
**hash** [1] - 4:18

**head** [1] - 7:24
**Healthcare** [1] - 2:6
**hear** [1] - 34:4
**heard** [1] - 3:21
**hearing** [1] - 13:6
**held** [10] - 3:1, 4:24,
5:6, 6:6, 8:1, 8:5,
8:13, 8:16, 9:13,
19:10
**help** [1] - 10:3
**helpful** [2] - 4:18, 36:9
**HILL** [1] - 2:4
**Hilton** [1] - 31:22
**hired** [2] - 10:2, 17:20
**history** [1] - 35:11
**hit** [1] - 7:24
**hold** [1] - 5:2
**HONIK** [2] - 1:16, 1:16
**Honor** [66] - 3:11,
3:14, 4:4, 4:10, 5:4,
5:17, 6:6, 7:23, 9:10,
10:1, 10:24, 11:1,
11:7, 12:5, 12:12,
12:18, 13:2, 14:7,
14:19, 15:7, 15:21,
15:25, 16:20, 17:13,
18:14, 19:5, 19:15,
19:21, 20:2, 21:16,
23:4, 24:7, 24:10,
25:4, 27:21, 28:4,
28:16, 28:25, 29:15,
30:10, 30:17, 31:7,
31:9, 31:15, 31:19,
32:23, 33:4, 33:14,
34:19, 34:20, 35:1,
35:2, 35:4, 35:6,
35:13, 36:4, 36:8,
36:16, 36:19, 36:24,
36:25, 37:2, 38:23,
38:24, 39:5, 39:6
**HONORABLE** [1] -
1:10
**Honorable** [2] - 2:12,
3:2
**hope** [2] - 25:2, 33:13
**hopeful** [1] - 27:16
**hopefully** [3] - 21:2,
33:19, 34:1
**horizon** [1] - 26:3
**hour** [2] - 13:4, 13:11
**hours** [8] - 13:10,
22:20, 24:2, 31:25,
32:14, 32:15
**Huahai** [4] - 2:7,
18:16, 18:19, 18:21
**huge** [1] - 16:16
**Hui** [5] - 10:5, 10:11,
32:10, 32:17, 32:21
**hundreds** [1] - 15:9

## I

**idea** [2] - 6:20, 24:12
**identified** [2] - 5:1, 38:6
**identify** [2] - 21:25, 22:1
**immediately** [1] - 19:14
**implicates** [1] - 35:8
**importance** [1] - 7:1
**important** [4] - 15:5, 19:17, 33:6, 38:16
**impossible** [1] - 31:3
**impressed** [2] - 38:13, 38:15
**imprimatur** [1] - 7:6
**IN** [1] - 1:4
**inadequate** [2] - 21:7, 27:11
**inapplicable** [1] - 16:4
**includes** [1] - 16:9
**including** [1] - 28:17
**information** [33] - 5:14, 8:8, 8:11, 9:23, 13:21, 14:12, 14:16, 14:22, 15:2, 15:10, 16:23, 19:25, 20:9, 20:18, 20:20, 21:6, 21:24, 22:1, 22:4, 22:8, 22:12, 22:25, 23:1, 23:13, 23:17, 23:22, 24:6, 29:12, 29:13, 29:17, 32:11, 37:10
**inquiries** [1] - 30:1
**instance** [1] - 16:9
**instructed** [1] - 6:21
**instructive** [1] - 14:20
**instructs** [1] - 3:15
**intend** [2] - 29:16, 32:9
**intends** [1] - 29:15
**interest** [1] - 34:12
**interested** [2] - 13:5, 13:6
**interesting** [4] - 14:5, 16:12, 21:16, 28:3
**interests** [1] - 14:10
**interpretation** [1] - 28:15
**interruption** [1] - 10:25
**involve** [3] - 6:1, 8:7, 10:20
**involved** [5] - 4:6, 4:22, 20:22, 25:11, 31:14
**iPhone** [1] - 5:10
**issue** [14] - 4:7, 4:22,

10:3, 12:20, 13:16, 27:8, 29:1, 34:21, 35:12, 35:13, 35:15, 36:1, 36:15, 38:7
**issued** [1] - 3:7
**issues** [5] - 4:18, 25:23, 26:11, 33:21, 36:23
**it'll** [1] - 22:23
**itself** [1] - 33:12

## J

**January** [1] - 15:8
**JERSEY** [1] - 1:1
**Jersey** [2] - 1:8, 1:14
**JESSICA** [1] - 2:3
**Jessica** [1] - 4:5
**Jucai** [1] - 11:22
**Judge** [12] - 16:8, 16:15, 25:16, 26:10, 34:3, 35:16, 35:19, 36:7, 36:21, 37:5, 38:8
**JUDGE** [56] - 3:4, 4:2, 4:8, 4:21, 5:8, 5:24, 7:9, 8:17, 9:8, 9:11, 9:17, 9:21, 11:3, 11:5, 11:18, 12:22, 15:24, 17:5, 17:15, 18:7, 19:19, 19:24, 20:3, 24:9, 25:25, 26:17, 28:3, 28:12, 28:23, 29:2, 29:16, 30:9, 30:14, 30:19, 30:25, 31:6, 31:8, 32:6, 32:25, 33:5, 33:15, 34:4, 34:14, 34:16, 34:21, 35:3, 35:5, 36:9, 36:13, 36:17, 37:3, 37:25, 38:12, 38:25, 39:3, 39:7
**Judicial** [1] - 2:12
**jump** [2] - 15:21, 35:10
**justify** [4] - 14:16, 15:14, 15:23, 22:14

## K

**KANNER** [1] - 1:19
**KATZ** [1] - 1:12
**keep** [8] - 6:17, 6:24, 7:1, 7:3, 8:25, 9:6, 9:19, 19:13
**keeps** [1] - 25:5
**kept** [2] - 7:11, 7:18
**known** [1] - 4:16
**knows** [1] - 32:8
**Kugler** [2] - 2:12,

25:16

## L

**lack** [3] - 8:21, 8:22
**large** [1] - 5:23
**larry** [1] - 2:13
**last** [3] - 12:9, 23:9, 23:23
**lasted** [1] - 13:4
**late** [1] - 33:9
**LAUREN** [1] - 2:4
**Law** [1] - 2:12
**law** [34] - 7:15, 7:19, 8:15, 10:3, 10:5, 10:7, 10:11, 10:13, 12:14, 12:21, 14:18, 16:3, 17:20, 20:12, 21:11, 22:1, 22:12, 24:13, 24:15, 24:16, 24:19, 25:1, 25:2, 28:7, 28:18, 30:11, 30:13, 30:22, 32:10, 32:17, 32:22
**laws** [14] - 12:6, 17:1, 17:2, 17:23, 20:7, 22:4, 23:7, 24:4, 24:18, 24:21, 24:22, 24:24, 30:22, 32:12
**lawyers** [2] - 29:7, 30:21
**layers** [1] - 14:8
**leadership** [2] - 13:5, 30:21
**least** [1] - 38:17
**leave** [2] - 19:11, 19:12
**led** [1] - 13:20
**legal** [1] - 12:9
**less** [1] - 17:24
**letter** [2] - 18:9, 18:10
**level** [9] - 10:4, 10:6, 10:7, 10:11, 10:14, 11:13, 17:21, 23:12, 38:13
**levels** [1] - 5:12
**LIABILITY** [1] - 1:4
**likely** [3] - 14:11, 27:14, 27:19
**line** [1] - 37:22
**list** [3] - 4:17, 14:24, 22:13
**listed** [2] - 3:19, 4:15
**litigate** [1] - 35:21
**litigation** [3] - 10:10, 14:11, 17:5
**LITIGATION** [1] - 1:4
**LLC** [3] - 1:12, 1:19, 2:6
**LLP** [1] - 2:2
**local** [3] - 10:21,

11:11, 11:13
**locate** [1] - 19:3
**located** [1] - 28:19
**lodged** [1] - 38:21
**log** [45] - 3:19, 4:15, 5:4, 5:20, 6:10, 7:2, 8:20, 8:22, 8:23, 11:12, 12:10, 14:22, 14:23, 15:6, 15:7, 15:8, 15:12, 15:14, 15:23, 16:2, 16:9, 16:21, 16:23, 17:3, 17:6, 17:7, 17:19, 18:23, 21:21, 22:9, 22:13, 23:1, 23:4, 23:5, 23:17, 24:6, 24:11, 24:21, 27:8, 27:11, 35:9, 35:18, 35:20, 36:6
**log's** [1] - 17:7
**logical** [1] - 9:8
**logs** [8] - 3:7, 6:1, 11:14, 16:4, 21:4, 21:6, 26:20, 26:21
**look** [16] - 11:12, 14:2, 14:20, 16:14, 19:10, 20:11, 20:14, 21:14, 23:5, 23:12, 28:23, 34:8, 35:17, 36:10, 39:3
**looked** [2] - 6:12, 13:23
**looking** [3] - 26:17, 31:17, 32:5
**Loretta** [1] - 2:11
**lost** [2] - 15:7, 18:5
**LOUISIANA** [1] - 1:20
**low** [1] - 14:1
**low-hanging** [1] - 14:1
**Ltd** [1] - 2:7

## M

**MacStravic** [1] - 2:13
**magnifier** [1] - 5:10
**maintained** [1] - 7:5
**March** [7] - 1:8, 31:3, 31:18, 33:2, 33:3, 33:8, 33:16
**marches** [1] - 15:4
**marked** [3] - 5:6, 9:15, 9:20
**Market** [1] - 1:17
**massive** [1] - 22:24
**Master** [1] - 3:2
**MASTER** [1] - 1:10
**matter** [7] - 12:2, 20:22, 21:9, 23:19, 33:6, 33:20, 39:15
**matters** [3] - 15:19, 16:5, 26:3

**MAZIE** [1] - 1:12
**mean** [12] - 7:19, 7:20, 17:24, 19:5, 19:7, 19:8, 24:22, 28:14, 30:16, 32:2, 32:4
**means** [4] - 23:15, 24:23, 27:14, 30:23
**mechanical** [1] - 1:24
**meet** [35] - 3:8, 3:13, 3:22, 3:24, 4:6, 4:11, 4:13, 4:17, 4:19, 11:25, 12:1, 12:7, 12:12, 13:3, 14:3, 14:22, 15:11, 20:24, 21:20, 22:7, 22:10, 24:25, 25:9, 27:1, 27:16, 29:3, 29:5, 30:5, 30:12, 31:2, 31:16, 31:24, 32:24, 33:16
**meet-and-confer** [7] - 4:13, 4:17, 12:7, 12:12, 14:3, 15:11, 25:9
**meetings** [2] - 7:13, 8:10
**members** [1] - 13:4
**mentioned** [4] - 11:19, 11:24, 18:8, 18:9
**met** [1] - 3:16
**metadata** [1] - 5:19
**might** [4] - 17:11, 21:2, 21:8, 30:1
**millions** [2] - 25:7
**minimum** [1] - 31:15
**misrepresent** [1] - 11:10
**missing** [1] - 13:15
**Mitchell** [1] - 1:7
**modified** [1] - 15:12
**modify** [1] - 5:21
**Monday** [1] - 33:19
**months** [4] - 25:22, 35:15, 35:16
**morning** [1] - 6:12
**MORRIS** [1] - 2:2
**Morris's** [1] - 27:25
**most** [7] - 4:16, 21:8, 26:18, 34:11, 38:15
**motion** [1] - 36:25
**motions** [2] - 26:14
**MOTIONS** [1] - 1:5
**move** [5] - 21:9, 27:5, 29:3, 30:3, 34:1
**moved** [1] - 33:21
**moving** [2] - 33:20, 34:12
**MR** [40] - 3:11, 4:4, 6:8, 8:19, 12:25, 19:5, 21:16, 26:10,

28:4, 28:14, 28:25, 29:3, 30:7, 30:16, 30:20, 31:4, 31:7, 31:9, 31:19, 32:7, 32:8, 33:4, 33:10, 34:2, 34:10, 34:15, 34:19, 34:20, 35:1, 35:10, 36:12, 37:2, 37:4, 38:3, 38:23, 38:24, 39:1, 39:2, 39:5, 39:8

**MS** [29] - 4:10, 5:4, 5:17, 7:23, 9:10, 9:12, 9:18, 10:1, 11:1, 11:4, 11:6, 12:5, 15:25, 17:13, 17:16, 18:14, 19:15, 19:21, 20:1, 24:10, 27:21, 28:8, 28:16, 30:10, 35:4, 35:6, 36:16, 36:19, 39:6

**multiple** [1] - 3:18
**municipal** [1] - 23:20
**must** [2] - 5:2, 12:5
**mute** [1] - 12:24

# N

**nail** [1] - 7:24
**names** [1] - 11:20
**narrow** [1] - 17:17
**narrowly** [2] - 10:8, 17:23
**national** [2] - 11:12, 11:15
**NDMA** [2] - 14:13, 23:14
**necessarily** [1] - 7:19
**necessary** [1] - 36:3
**need** [12] - 5:24, 5:25, 20:15, 23:10, 26:7, 26:10, 29:17, 33:21, 33:24, 37:15, 38:8, 38:9
**needed** [1] - 25:24
**needs** [2] - 20:18, 29:25
**never** [4] - 3:21, 13:19, 14:6
**new** [1] - 17:7
**NEW** [2] - 1:1, 1:20
**New** [5] - 1:8, 1:14, 7:25, 8:2, 14:20
**next** [6] - 19:22, 31:3, 31:10, 31:13, 31:22, 32:18
**night** [2] - 31:20, 31:24
**nine** [11] - 4:23, 4:24, 5:1, 6:4, 6:5, 6:9, 7:10, 7:18, 8:6, 9:12

**nonetheless** [1] - 21:13
**normal** [3] - 5:11, 5:12, 31:25
**notations** [1] - 12:10
**note** [1] - 38:18
**notes** [2] - 38:12, 39:3
**nothing** [2] - 34:20, 39:2
**NUMBER** [1] - 1:3
**number** [5] - 5:22, 16:16, 17:18, 20:17, 38:5
**numbers** [1] - 11:23, 22:20

# O

**oath** [1] - 29:21
**objection** [4] - 36:23, 37:15, 37:16, 37:20
**objections** [4] - 34:23, 35:14, 37:25, 38:20
**obligation** [1] - 21:23
**obstructive** [1] - 14:4
**obviously** [5] - 3:14, 23:13, 28:5, 35:7, 36:8
**occupied** [1] - 31:13
**occur** [2] - 29:22, 31:2
**occurring** [1] - 26:6
**OF** [1] - 1:1
**officer** [1] - 8:1
**Official** [1] - 1:22
**officials** [1] - 1:22
**often** [2] - 25:24, 27:23
**oftentimes** [1] - 17:6
**one** [21] - 3:16, 3:21, 6:18, 9:10, 11:21, 15:22, 17:14, 17:24, 18:15, 20:17, 23:15, 23:19, 23:22, 23:23, 24:12, 25:25, 27:22, 29:1, 34:21
**one-tenth** [1] - 17:24
**ones** [4] - 5:2, 7:1, 9:5, 32:22
**operating** [1] - 38:17
**opinion** [2] - 10:22, 25:24
**opinions** [2] - 25:11, 27:22
**opportunities** [1] - 17:10
**opportunity** [4] - 15:16, 24:5, 27:4, 27:6
**oppose** [1] - 35:6
**opposed** [1] - 22:3
**order** [6] - 5:10, 16:6,

16:15, 17:8, 26:4, 30:11
**ordered** [1] - 18:13
**organ** [1] - 11:16
**organs** [1] - 10:20
**origin** [1] - 27:23
**originally** [2] - 10:4, 35:12
**originated** [3] - 7:10, 18:12, 19:17
**ORLEANS** [1] - 1:20
**outside** [5] - 13:24, 18:11, 18:12, 28:1, 30:20
**outside-of-China** [1] - 13:24
**overall** [1] - 18:2
**own** [2] - 15:3, 23:3

# P

**P.C** [1] - 1:16
**p.m** [1] - 26:24
**pace** [1] - 13:9
**Page** [1] - 16:14
**page** [2] - 11:23, 19:21
**pages** [2] - 19:20, 27:20
**papers** [1] - 4:12
**Parkway** [1] - 1:14
**particularly** [1] - 21:12
**parties** [1] - 39:2
**parts** [1] - 22:17
**party** [1] - 15:1
**past** [1] - 29:5
**paste** [1] - 5:15
**paying** [1] - 12:25
**Pedano** [1] - 1:22, 39:17
**penalties** [1] - 37:24
**pending** [1] - 9:22
**Pennsylvania** [2] - 1:17, 2:5
**people** [4] - 4:15, 20:22, 22:20, 24:13
**percent** [2] - 17:24, 22:24
**perforce** [1] - 37:12
**performed** [1] - 10:14
**peril** [2] - 15:3, 39:1
**permission** [2] - 10:18, 25:13
**person** [1] - 28:19
**personally** [1] - 28:20
**perspective** [8] - 3:20, 15:13, 15:14, 28:15, 34:3, 34:6, 34:10, 38:16
**Pharma** [1] - 18:16
**Pharmaceuticals** [2] - 2:6, 2:7

**Philadelphia** [2] - 1:17, 2:5
**phone** [5] - 24:16, 24:20, 25:2, 25:3, 30:13
**pin** [1] - 18:1
**place** [6] - 24:7, 24:8, 26:4, 31:20, 31:24, 31:25
**plaintiffs** [11] - 4:20, 5:2, 12:8, 12:14, 12:19, 16:22, 17:19, 25:7, 30:11, 32:20, 34:19
**Plaintiffs** [3] - 1:15, 1:18, 1:21
**plaintiffs'** [7] - 11:19, 24:16, 24:18, 34:10, 37:7, 37:13, 38:16
**plate** [2] - 13:17, 36:8
**point** [16] - 4:1, 5:20, 10:23, 13:17, 14:4, 14:17, 16:1, 16:6, 16:18, 17:14, 17:25, 22:8, 23:25, 24:24, 27:8, 29:9
**pointed** [2] - 12:9, 24:20
**position** [6] - 7:8, 9:1, 12:19, 20:21, 36:17, 37:9
**positive** [1] - 3:25
**possible** [6] - 10:8, 10:9, 17:23, 29:4, 30:15, 37:24
**potentially** [3] - 3:20, 21:17, 38:6
**precise** [1] - 17:8
**precisely** [1] - 21:12
**precision** [2] - 8:21, 15:17
**prefer** [1] - 34:8
**PRESENT** [1] - 2:10
**present** [4] - 20:25, 21:2, 27:2, 30:12
**presented** [1] - 3:8
**presumably** [1] - 9:6
**pretty** [5] - 13:25, 16:21, 24:20, 28:14, 29:6
**previous** [2] - 4:12, 16:15
**primarily** [1] - 19:3
**primary** [1] - 34:11
**Prinston** [1] - 2:6
**print** [1] - 5:11
**Priselac** [15] - 4:5, 4:9, 7:17, 7:21, 9:11, 15:24, 24:9, 26:1, 26:8, 27:6, 31:6,

31:13, 32:19, 35:5, 36:18
**PRISELAC** [30] - 2:3, 4:10, 5:4, 5:17, 7:23, 9:10, 9:12, 9:18, 10:1, 11:1, 11:4, 11:6, 12:5, 15:25, 17:13, 17:16, 18:14, 19:15, 19:21, 20:1, 24:10, 27:21, 28:8, 28:16, 30:10, 35:4, 35:6, 36:16, 36:19, 39:6
**privilege** [32] - 3:7, 13:13, 14:21, 14:23, 16:2, 16:4, 16:10, 16:17, 16:19, 20:8, 20:13, 21:4, 21:21, 26:20, 26:21, 27:9, 27:10, 29:19, 34:24, 34:25, 35:8, 35:14, 35:22, 36:1, 36:23, 37:17, 37:21, 37:22, 38:2, 38:20
**privileged** [1] - 35:18
**privileges** [1] - 16:14
**problems** [1] - 14:13
**Proceedings** [1] - 1:24
**PROCEEDINGS** [1] - 3:1
**proceedings** [2] - 39:9, 39:15
**process** [14] - 4:1, 4:13, 4:17, 10:19, 12:7, 12:12, 14:4, 15:11, 15:15, 20:8, 25:10, 25:12, 25:21, 36:5
**produce** [1] - 27:17
**produced** [21] - 1:25, 6:10, 6:24, 7:2, 7:13, 9:7, 10:16, 10:18, 15:1, 17:25, 18:13, 19:7, 19:14, 20:4, 21:13, 25:14, 25:15, 25:18, 28:6, 37:11
**product** [1] - 30:17
**production** [4] - 12:3, 17:9, 24:6, 28:9
**products** [1] - 23:15
**PRODUCTS** [1] - 1:4
**progress** [1] - 24:17
**prohibit** [1] - 28:2
**prohibited** [1] - 27:24
**prohibiting** [1] - 34:23
**promulgating** [1] - 20:10
**pronounce** [1] - 11:21
**proper** [1] - 28:19

**prophylactic** [1] - 38:19
**proposing** [2] - 28:13, 32:14
**protect** [1] - 35:23
**protected** [2] - 23:6, 29:19
**proven** [1] - 16:24
**proves** [1] - 16:18
**provide** [21] - 4:14, 4:16, 5:13, 6:3, 9:1, 9:24, 14:22, 16:9, 17:10, 19:22, 19:23, 19:25, 21:6, 21:24, 22:10, 22:12, 22:16, 23:2, 23:21, 25:19, 36:22
**provided** [7] - 3:13, 5:18, 8:8, 20:18, 23:16, 26:25, 36:10
**providing** [1] - 23:17
**province** [1] - 10:21
**provincial** [1] - 11:13
**provision** [2] - 15:19, 21:25
**provisions** [2] - 17:1, 22:16
**public** [2] - 14:10, 23:21
**PUGH** [1] - 2:4
**purportedly** [1] - 6:17
**pursue** [3] - 20:20, 20:22, 27:18
**pursuit** [1] - 29:24
**push** [1] - 32:7
**put** [4] - 13:17, 22:25, 37:9
**puts** [1] - 33:5
**putting** [1] - 3:13

## Q

**qualified** [1] - 20:13
**quality** [3] - 10:6, 14:13, 17:21
**questioning** [1] - 37:22
**questions** [8] - 3:5, 3:18, 12:10, 22:23, 29:11, 29:20, 29:23, 37:7
**quickly** [4] - 15:4, 31:1, 31:5, 32:5
**quite** [2] - 5:23, 24:23
**quote** [3] - 6:16, 27:11, 35:18
**quote-unquote** [3] - 6:16, 27:11, 35:18

## R

**radical** [2] - 28:14, 28:16
**raised** [2] - 18:5, 35:12
**rather** [1] - 18:2
**RE** [1] - 1:4
**read** [6] - 5:9, 5:10, 5:11, 9:14, 30:21, 30:22
**reading** [1] - 14:18
**reads** [1] - 14:25
**ready** [1] - 32:3
**realistic** [1] - 27:18
**reality** [2] - 37:2, 37:4
**realized** [1] - 5:14
**really** [9] - 7:8, 7:25, 8:21, 16:17, 17:17, 24:13, 25:5, 33:13, 38:17
**reason** [2] - 18:23, 23:2
**reasons** [2] - 26:11, 27:22
**receipt** [1] - 20:19
**record** [8] - 20:25, 25:1, 26:13, 27:2, 35:23, 36:20, 39:15
**recorded** [1] - 1:24
**reflect** [1] - 8:10
**refrain** [1] - 29:6
**regarding** [1] - 23:20
**regulation** [2] - 18:2
**regulatory** [1] - 37:14
**relate** [1] - 36:2
**relatively** [1] - 26:5
**relevance** [1] - 14:10
**relevant** [3] - 12:17, 26:6, 27:13
**reluctant** [1] - 17:8
**remaining** [1] - 21:10
**remote** [1] - 3:1
**REMOTE** [1] - 1:5
**report** [2] - 23:20, 33:18
**Reporter** [1] - 1:22
**REPORTER** [1] - 12:24
**reporter** [2] - 20:25, 27:2
**Reporter/ Transcriber** [1] - 39:17
**reports** [3] - 23:16, 23:18, 23:19
**represented** [1] - 3:17
**request** [2] - 9:22, 28:25
**requested** [2] - 8:5,

34:22
**require** [3] - 3:20, 20:24, 37:23
**requires** [1] - 22:12
**requiring** [1] - 3:7
**reserve** [1] - 38:9
**reside** [1] - 19:17
**resigned** [1] - 18:17
**resolved** [3] - 26:3, 26:7, 35:17
**respect** [3] - 12:3, 26:2, 38:19
**respectfully** [1] - 36:19
**respond** [3] - 7:21, 8:17, 27:6
**responded** [1] - 13:19
**response** [1] - 14:6
**responses** [1] - 29:12
**rest** [2] - 6:22, 6:24
**result** [2] - 26:22, 37:19
**results** [1] - 17:19
**retain** [1] - 30:23
**reveal** [1] - 37:9
**review** [12] - 10:4, 10:6, 10:7, 10:12, 10:14, 17:21, 27:14, 27:19, 28:2, 28:11, 28:12, 38:14
**reviewed** [3] - 28:20, 28:22, 32:11
**reviewers** [1] - 10:7
**Richmark** [3] - 21:13, 27:12, 27:13
**RMR** [1] - 39:17
**road** [1] - 26:20
**Robert** [1] - 2:12
**Roseland** [1] - 1:14
**round** [1] - 22:19
**RPR** [1] - 39:17
**RUBEN** [1] - 1:16
**rule** [2] - 36:14, 37:21
**ruled** [3] - 35:19, 36:7, 37:6
**rules** [1] - 20:10
**ruling** [1] - 38:19

## S

**sanctions** [1] - 38:11
**satisfied** [1] - 13:16
**schedule** [2] - 13:11, 33:14
**scheduled** [3] - 31:10, 31:12, 33:12
**scheduling** [1] - 32:24
**Scheindlin** [1] - 16:15
**Schneider** [5] - 16:8, 35:16, 35:19, 36:7, 36:21, 37:5, 38:8

**second** [2] - 10:11, 10:14
**second-level** [2] - 10:11, 10:14
**secrecy** [6] - 10:13, 16:10, 16:17, 17:1, 20:7, 21:11
**secret** [21] - 7:15, 10:4, 12:6, 16:19, 21:25, 27:10, 29:19, 30:22, 32:12, 34:23, 34:25, 35:8, 35:14, 36:1, 37:10, 37:12, 37:20, 37:23, 38:1, 38:6, 38:20
**section** [1] - 5:5
**sections** [1] - 22:3
**see** [2] - 19:1, 24:14
**seem** [1] - 13:25
**send** [1] - 33:18
**sense** [3] - 25:20, 26:1, 26:2
**sent** [4] - 13:22, 18:9, 19:6, 19:12
**sentiment** [1] - 23:21
**separate** [1] - 11:16
**separately** [1] - 11:17
**serve** [1] - 35:20
**server** [1] - 18:21
**servers** [1] - 13:24
**serving** [1] - 35:18
**set** [4] - 3:4, 16:5, 17:21, 31:15
**SETH** [1] - 2:3
**seven** [4] - 22:3, 23:7, 24:22, 24:23
**several** [2] - 11:19, 17:9
**shared** [1] - 28:1
**sheets** [1] - 6:13
**short** [1] - 26:5
**shorten** [1] - 5:19
**show** [1] - 23:4
**showing** [1] - 6:13
**shows** [3] - 5:22, 37:13, 38:17
**sic** [1] - 24:15
**side** [1] - 4:14
**significance** [2] - 9:2, 9:5
**significant** [3] - 14:10, 14:11, 15:4
**similar** [1] - 20:14
**simple** [1] - 14:23
**simply** [1] - 6:2
**sit** [2] - 22:18, 24:1
**sites** [1] - 18:1
**sitting** [1] - 22:21
**Slater** [17] - 3:10, 4:6, 6:2, 8:18, 12:23,

12:24, 16:11, 18:8, 20:18, 25:5, 26:8, 27:3, 28:18, 30:14, 33:7, 34:22, 36:13
**SLATER** [30] - 1:12, 1:13, 3:11, 6:8, 8:19, 12:25, 19:5, 21:16, 26:10, 28:4, 28:14, 28:25, 29:3, 30:7, 30:16, 30:20, 31:4, 31:19, 32:7, 33:10, 34:2, 34:10, 34:15, 34:19, 35:1, 35:10, 36:12, 38:23, 39:1, 39:5
**Slater's** [4] - 7:21, 16:2, 32:14, 36:20
**slip** [1] - 6:13
**small** [1] - 38:5
**Smith** [1] - 2:11
**Solco** [1] - 2:6
**someone** [3] - 9:13, 9:19, 14:25
**something's** [1] - 35:24
**sometimes** [1] - 27:15
**somewhat** [1] - 24:1
**somewhere** [2] - 6:20, 19:2
**Sophie** [1] - 11:22
**sorry** [3] - 10:24, 11:1, 17:13
**sort** [3] - 6:21, 21:19, 36:15
**South** [1] - 2:5
**Southern** [1] - 14:19
**special** [1] - 6:22
**Special** [1] - 3:2
**SPECIAL** [1] - 1:10
**specific** [9] - 4:7, 13:21, 15:17, 20:21, 21:25, 22:1, 22:16, 22:17, 23:6
**specifically** [3] - 6:23, 11:24, 35:12
**specificity** [1] - 22:10
**specter** [1] - 38:10
**spend** [1] - 24:1
**stand** [2] - 12:3, 38:4
**standards** [1] - 16:4
**stands** [1] - 9:23
**start** [1] - 3:5
**started** [1] - 36:5
**starting** [2] - 6:8, 14:17
**starts** [1] - 31:11
**state** [30] - 7:15, 10:4, 10:13, 12:6, 16:9, 16:17, 16:19, 16:25, 20:7, 21:11, 21:25,

27:10, 29:19, 30:22, 32:12, 34:23, 34:25, 35:8, 35:14, 36:1, 37:9, 37:12, 37:15, 37:16, 37:20, 37:23, 38:1, 38:6, 38:20
**State** [1] - 8:2
**STATES** [1] - 1:1
**States** [6] - 13:23, 19:2, 20:8, 28:1, 28:7, 28:10
**states** [1] - 9:14
**status** [3] - 6:22, 13:3, 33:18
**statute** [1] - 28:9
**statutes** [1] - 10:8
**stenography** [1] - 1:24
**step** [1] - 10:2
**still** [4] - 10:23, 18:18, 20:22, 21:10
**straightforward** [1] - 10:19
**street** [1] - 30:4
**Street** [2] - 1:17, 2:5
**STREET** [1] - 1:20
**Streets** [1] - 1:7
**stress** [1] - 17:16
**subject** [3] - 21:11, 23:19, 37:24
**submission** [1] - 11:19
**submitted** [2] - 28:20, 28:21
**subsidiaries** [1] - 18:16
**substantive** [2] - 13:21, 29:12
**substantively** [1] - 22:14
**substitute** [4] - 21:20, 21:21, 21:23
**succinctly** [1] - 24:20
**sufficiency** [1] - 16:20
**sufficient** [5] - 16:23, 17:3, 17:11, 24:11, 30:2
**sufficiently** [1] - 17:8
**suggested** [1] - 25:1
**Suite** [1] - 1:17
**summary** [2] - 15:2, 23:16
**Sunday** [2] - 31:11, 31:12
**support** [1] - 34:15
**suppose** [1] - 28:24
**supposed** [4] - 14:24, 21:22, 22:14

## T

**Taizhou** [1] - 23:20
**talks** [2] - 15:18, 23:8
**team** [4] - 6:10, 13:5, 30:21, 32:1
**teams** [1] - 31:2
**tenth** [1] - 17:24
**terms** [5] - 6:1, 16:20, 22:10, 29:23, 33:20
**testifying** [1] - 38:10
**testimony** [1] - 37:18
**text** [2] - 5:10, 5:16
**THE** [3] - 1:1, 1:10, 12:24
**theory** [2] - 7:5, 10:17
**therefore** [1] - 7:15
**they've** [1] - 11:7
**thinking** [1] - 5:25
**third** [2] - 10:5, 17:20
**Third** [1] - 15:18
**Thomas** [1] - 3:2
**THOMAS** [1] - 1:10
**thoughts** [1] - 6:18
**three** [4] - 6:9, 10:2, 19:18, 25:17
**Thursday** [1] - 31:13
**Tian's** [1] - 11:22
**timeframe** [1] - 26:5
**timing** [1] - 19:10
**title** [1] - 20:21
**today** [2] - 18:8, 38:25
**tomorrow** [4] - 20:1, 26:24, 33:17
**took** [1] - 25:9
**total** [1] - 10:2
**totally** [1] - 5:20
**transcript** [5] - 1:24, 22:24, 36:3, 36:10, 39:14
**transcription** [1] - 1:25
**transcripts** [2] - 36:22, 37:5
**transparent** [2] - 10:9, 11:8
**tremendous** [2] - 5:18, 24:17
**trial** [1] - 25:16
**trial's** [1] - 26:3
**trigger** [1] - 22:17
**try** [5] - 10:16, 15:16, 24:5, 24:18, 33:13
**trying** [4] - 10:24, 11:11, 16:3, 25:13
**Tuesday** [1] - 32:3
**two** [6] - 6:18, 10:3, 18:16, 18:17, 19:3, 30:4
**two-way** [1] - 30:4

## U

**U.S** [9] - 1:7, 2:6, 18:16, 18:25, 19:6, 19:9, 19:13, 31:11, 32:15
**ultimately** [4] - 8:19, 10:12, 21:22, 28:7
**unavoidable** [1] - 11:5
**under** [7] - 7:5, 12:6, 16:22, 21:12, 29:20, 31:9, 38:10
**unfair** [1] - 24:1
**unfortunately** [1] - 11:23
**unique** [1] - 13:14
**UNITED** [1] - 1:1
**United** [6] - 13:23, 19:2, 20:8, 28:1, 28:7, 28:10
**unless** [1] - 8:25
**unlikely** [3] - 37:10, 37:13, 38:7
**unloads** [1] - 22:8
**unnecessary** [1] - 34:7
**unquote** [3] - 6:16, 27:11, 35:18
**up** [10] - 15:16, 15:21, 16:11, 18:3, 22:23, 24:4, 25:15, 36:5, 38:7, 38:22
**updated** [1] - 15:8
**upheld** [1] - 17:3
**urgency** [6] - 25:5, 25:6, 25:20, 26:1, 26:2, 26:9
**US** [3] - 18:16, 18:19, 18:21
**utilizing** [1] - 33:25

## V

**vacuum** [1] - 36:15
**valsartan** [2] - 23:14, 23:24
**VALSARTAN** [1] - 1:4
**Vanaskie** [1] - 3:2
**VANASKIE** [57] - 1:10, 3:4, 4:2, 4:8, 4:21, 5:8, 5:24, 7:9, 8:17, 9:8, 9:11, 9:17, 9:21, 11:3, 11:5, 11:18, 12:22, 15:24, 17:5, 17:15, 18:7, 19:19, 19:24, 20:3, 24:9,

25:25, 26:17, 28:3, 28:12, 28:23, 29:2, 29:16, 30:9, 30:14, 30:19, 30:25, 31:6, 31:8, 32:6, 32:25, 33:5, 33:15, 34:4, 34:14, 34:16, 34:21, 35:3, 35:5, 36:9, 36:13, 36:17, 37:3, 37:25, 38:12, 38:25, 39:3, 39:7
**various** [1] - 22:4
**vendor** [1] - 18:25
**via** [1] - 3:1
**VIA** [1] - 1:5
**viable** [1] - 35:22
**VIDEOCONFERENCE** [1] - 1:6
**videoconference** [1] - 3:1
**view** [1] - 32:21
**vital** [1] - 29:24

## W

**waived** [1] - 27:10
**waiver** [3] - 9:22, 9:24, 17:9
**wants** [2] - 30:17, 32:7
**ways** [4] - 6:25, 7:7, 7:16, 9:4
**Wednesday** [1] - 32:4
**week** [12] - 15:4, 31:10, 31:13, 31:16, 31:17, 31:18, 31:21, 31:22, 31:23, 32:18, 33:19
**weeks** [1] - 32:7
**whereas** [1] - 24:5
**WHITELEY** [2] - 1:19, 1:19
**window** [1] - 6:20
**withheld** [7] - 4:22, 6:13, 12:6, 15:20, 22:11, 34:25, 37:12
**withhold** [1] - 16:16
**withholding** [7] - 12:9, 12:13, 14:17, 15:14, 15:23, 17:18, 22:14
**witness** [3] - 37:9, 37:23, 37:24
**witnesses** [2] - 13:23, 38:10
**wondering** [1] - 20:6
**works** [1] - 37:17
**writer** [1] - 34:17
**wrote** [1] - 4:12
**Wultz** [5] - 14:19, 16:11, 16:12, 16:17, 28:17

## Y

**Yang** [1] - 8:12
**Yang's** [4] - 7:25, 9:14, 16:25, 17:22
**year** [1] - 25:15
**years** [1] - 25:17
**yielding** [2] - 3:25, 26:22
**York** [3] - 7:25, 8:2, 14:20

## Z

**Zhejiang** [2] - 2:7, 10:21
**Zhong** [5] - 10:5, 10:11, 32:10, 32:17, 32:22
**ZHP** [17] - 6:2, 6:21, 7:13, 8:25, 9:25, 10:2, 10:9, 12:3, 13:6, 14:1, 14:16, 15:12, 23:1, 35:13, 35:17, 35:20, 39:2
**ZHP's** [5] - 9:18, 14:5, 18:16, 29:5, 33:11
**zone** [1] - 32:12
**Zoom** [1] - 3:1
**ZOOM** [1] - 1:6

**type** [8] - 13:13, 15:2, 15:17, 21:24, 22:5, 22:16, 29:14
**typically** [1] - 25:10