# EXHIBIT F



Victoria Davis Lockard
Tel 678.553.2103
Fax 678.553.2104
lockardv@gtlaw.com

March 19, 2021

**VIA ELECTRONIC MAIL**
George T. Williamson, Esq.
Farr Law Firm
99 Nesbit Street
Punta Gorda, FL 33950
gwilliamson@farr.com

> Re:  *In Re: Valsartan Products Liability Litigation*, MDL No. 2875, **Bellwether Trial Plan and Related Matters**

Dear George:

This letter is on behalf of Defendants in response to Plaintiffs' proposed bellwether trial plan, as well as to summarize the status of ongoing meet and confers regarding the additional items in your March 3, 2021 letter.

**Plaintiffs' Proposed Bellwether Trial Plan**

Defendants have jointly considered your proposal, and while we agree there will need to be a further process for winnowing and/or sequencing the bellwether pool of twenty-eight personal injury Plaintiffs prior to the start of trials, as a preliminary matter, we believe the discussion is premature at this point, given we have not yet begun deposing these Plaintiffs and are in no better position than we were when we made our first selections. With that said, we can provide the following reactions to your proposal:

The Schedule and Timing for Further "Winnowing"

Defendants cannot agree to winnowing the trial pool immediately following Plaintiffs' depositions, prior to the substantial completion of Plaintiff-specific discovery in these twenty-eight cases. These twenty-eight cases should proceed through treating and prescriber physician depositions on the schedule set forth in CMO 23, as was contemplated by the parties when the process for the bellwether trial pool selections were negotiated.

Plaintiffs' proposal would require another revamping of the current scheduling order (CMO 23) entered by Judge Kugler. CMO 23, like revised CMO 22 before it, reasonably provides for the completion of the depositions of the personal injury bellwether Plaintiffs, as well as third

George T. Williamson, Esq.
March 19, 2021
Page 2

_____

parties, including treating and prescribing physicians, by October 4, 2021, with the first ten Plaintiffs to be deposed by June 1st. There is significant utility in proceeding through Plaintiff-specific discovery on all twenty-eight cases, so that the parties can ensure the ultimate bellwether pool consists of a representative set of claims, alleged injuries, and Defendants in the ultimate trial cases.

Physician depositions are obviously an important aspect of both sides' assessment of the strengths and weakness of the individual Plaintiffs' cases. These depositions will also provide the parties with important insights into the strengths and weaknesses of these cases generally. Discovery may also reveal that certain Plaintiffs are "outliers" with unique issues related to causation or damages, such that the parties would agree to their removal from the pool. In short, both sides will glean significant insights from the workup of trial pool cases, beyond the obvious benefit of gaining information that would inform a potential later winnowing of the pool.

While we acknowledge there is work to be done over the next five months, we are prepared to marshal our resources and get it done, as Judge Kugler has instructed the parties to do. Accordingly, we cannot agree to winnowing the Plaintiff pool prior to completion of the treating physicians' depositions.

<u>The Process for Winnowing/Sequencing</u>

Aside from the timing, Defendants do not agree with the proposed process for further winnowing and sequencing for trial. Specifically, we disagree with Plaintiffs' proposal for automatic inclusion of the "joint picks," nor are we necessarily convinced that the next step should be random narrowing of the pool by the Court. First, to call *Ganim* and *Fields* "joint picks" is somewhat of a misstatement, since these cases were part of Plaintiffs' original DFS selections, and were included in the Bellwether pool as a result of a compromise between the parties to avoid waste of the resources expended by the workup of these Plaintiff-picked cases. These are not truly "joint picks" from the docket at large, and they are already weighted towards Plaintiffs as a result of being in the original DFS set.

Second, while we are willing to meet and confer over the process for further winnowing and sequencing, a random selection from twenty-eight down to eight, with no picks or strikes by the parties, does not allow the parties to apply the benefit of any of the information obtained from the Plaintiff and treater depositions. If the pool were going to be randomly culled without any input from the parties, there would be no point in deposing *any* Plaintiffs prior to that culling, and the parties would have wasted their time and resources on taking an additional twenty Plaintiff

George T. Williamson, Esq.
March 19, 2021
Page 3

_____

depositions. Accordingly, we think the parties should continue to meet and confer over a winnowing process that allows the parties to apply what is gleaned through discovery in order to ensure we are left with a solid set of representable, triable cases.

<u>The Number of Bellwether Trials and Sequencing</u>

Plaintiffs propose that the number of bellwether trials be limited to eight, with a complicated proposal for how these eight cases are sequenced for trial. As a practical matter, any winnowing and sequencing will be complicated by the fact that there are dozens of Defendants named in the litigation, with various distribution chain amalgamations among the finished dose manufacturers, API suppliers, and downstream Defendants. As such, a winnowing from twenty-eight down to a mere eight at this juncture is not advisable, as it would not leave the Court with a representative panel of cases involving a sufficient array of Defendants and distribution chains.

While some method of sequencing trials from the final trial pool will need to occur prior to trial, that process does not need to be decided now. Defendants suggest that the parties continue to meet and confer, with the expectation that, upon the completion of Plaintiff-specific fact discovery, the parties will have reached agreement on a process for winnowing and sequencing for trial. To limit the pool prematurely, before adequate discovery can be taken, presents a risk that the parties do not end up with a representative set of trial cases, across the applicable Defendants and distribution chains.

<u>Limitations on Physician Depositions</u>

Defendants also object to limiting third-party depositions to only one prescriber and one treater deposition (and even then, only for the proposed winnowed pool).[1] Your plan provides no explanation for this arbitrary limitation, which would preclude Defendants from obtaining key, relevant evidence. For example, some Plaintiffs have multiple prescribers, and it may be important to depose more than one. Further, most Plaintiffs have received cancer treatment from multiple physicians, who may each have important information regarding Plaintiffs' claims. Plaintiffs' primary care providers may also possess important details relevant to Plaintiffs' claims that are not apparent from the medical records. Defendants do not oppose a reasonable limitation on the

_____

[1] Defendants also object to extending the deadline for the completion of these depositions, which pursuant to CMO 23, has already been extended to October 4, 2021. Your plan now proposes extending it further to November 1, 2021, with no explanation as to why additional time is needed—and in particular, under your proposal, which would provide for a total of **just 16** treating physician depositions for the entire trial pool.

George T. Williamson, Esq.
March 19, 2021
Page 4
_____

number of treating physician depositions, but we do oppose a limit of just two depositions in these trial pool cases.

Bellwether Trial Pool Order

We sent the attached revised draft of the Bellwether Trial Pool Order to Plaintiffs' counsel on March 2, 2021. We believe this accurately reflects the Court's instruction and the parties' agreement regarding the replacement of dismissed cases ("If a Bellwether Trial Pool Case is dismissed, the Party who selected that case for the pool may pick a replacement from the entirety of the personal injury cases filed in or transferred to the MDL") and simply adds a reasonable deadline for the selection of the replaced cases ("[r]eplacement cases should be picked no less than four months prior to the operative deadline to complete the second phase of fact discovery or by other deadline by consent of the parties or court order. *See* CMO No. 23, dated 2/11/21"). We do not believe we need to reach agreement on the foregoing bellwether provisions prior to entry of this initial order. To the extent you have any objection to the proposed language, please let us know. Otherwise we would like to submit the draft to the Court for entry.

**Plaintiffs' and Defendants' Fact Sheets**

As you know, on March 16, 2021, we participated in a telephonic meet-and-confer about the issues raised in your letter regarding Plaintiff's Fact Sheets and Defendants' Fact Sheets. The parties agreed to the compromise proposal we set forth in our March 8, 2021 letter, pursuant to which Defendants are willing to deem all of the bellwether plaintiff PFSs complete for purposes of triggering DFS responses, so long as Plaintiffs agree that 1) the pharmacy information in those fact sheets will not change in any amended PFSs and 2) the start date for the Defendant Fact Sheet deadlines is not retroactive but rather runs from at least Monday, March 8, 2021, forward.

We also discussed Plaintiffs' request that the timeline for DFSs be accelerated so that DFSs are completed 7 days prior a Plaintiff's deposition. Defendants are discussing this and will advise you shortly whether they can agree to this proposal.

Finally, we discussed Plaintiffs' position that wholesalers not named as defendants in the PFS or Short Form Complaint should still have to search their files for information relating to bellwether Plaintiffs and complete DFSs in those cases. To date, no agreement has been reached regarding this issue, and you have noted that you intend to add this to the agenda for the next case management conference.

**Rule 34 Discovery Requests**

George T. Williamson, Esq.
March 19, 2021
Page 5
_____

Per the parties' agreement during the March 9, 2021 meet and confer, which was memorialized at the Case Management Conference on March 10th, Defendants agreed to withdraw their prior written discovery requests and will instead propound written discovery requests to the bellwether Plaintiffs on a case-by-case, as needed. We object to the proposal in your letter that written discovery requests for each bellwether Plaintiff be limited to just five interrogatories and five requests for production, with good cause shown. Your letter provides no basis for limiting Defendants to an arbitrary (and small) number of written discovery requests, particularly if they demonstrate good cause for each request.

Please see attached draft discovery in the *Yolanda Bonmon* case. Please let us know whether you will agree to answer this discovery on an accelerated timeline of one week so we have an opportunity to review the discovery and collect records prior to Ms. Bonmon's deposition.

Please let us know your availability for a meet-and-confer regarding your proposed bellwether trial plan, the Bellwether Trial Pool Order, and draft discovery.

Sincerely,

Victoria Davis Lockard, Esq.


Cc:

Paige Boldt, Esq. (via email)
pboldt@wattsguerra.com

Daniel Nigh, Esq. (via email)
dnigh@levinlaw.com