# Exhibit G



701 Camp Street ■ New Orleans, Louisiana 70130 ■ (504) 524-5777 ■ Fax (504) 524-5763

March 12, 2021

*Via Email*

Jeffrey D. Geoppinger, Esq.
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

  Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-2875 (D.N.J.)

Dear Counsel:

  I write this letter to you in your capacity as liaison counsel for Wholesaler Defendants and pursuant to Special Master Vanaskie's guidance at the March 10, 2021 case management conference about Plaintiffs' draft document requests and deposition notice sent to Wholesaler Defendants on December 8, 2020.

  As an initial matter, we are pleased that Wholesaler Defendants no longer seek to stay Plaintiffs' written and deposition discovery and that, contrary to your prior correspondence,[1] they will engage in meaningful discussions about this discovery.

  We have never received any written response from Wholesaler Defendants to Plaintiffs' draft discovery of December 8. During the March 10 case management conference, you stated that Wholesaler Defendants adopt the positions in Retail Pharmacy Defendants' February 25 letter. We therefore respond to that letter below.

**I. Plaintiffs' Draft Second Set of Document Requests**

- *Request No. 1: All documents relating to any representation or warranty provided by any manufacturer or seller of VCDs to you or any other downstream purchaser*

---

[1] "[W]e do not believe it is appropriate or necessary to negotiate supplemental requests for production and deposition notices[.]" *See* 2/25/21 J. Geoppinger email; *see also* 3/9/21 L. Cohen Ltr. ("Wholesalers do not see the utility in or propriety of negotiation of additional discovery to Wholesalers[.]").

\* A Louisiana L.L.C. -- Allan Kanner, Attorney Responsible for New Jersey Practice

Plaintiffs are entitled to discovery of representations and warranties made to Wholesaler Defendants in connection with their purchase of VCDs. For one, certain warranty and other claims against Wholesaler Defendants were not dismissed (contrary to your representations to Special Master Vanaskie during the March 10 case management conference), and remain "live" at this very moment. Second, warranty and certain other claims were only dismissed without prejudice and will be re-pleaded in Plaintiffs' forthcoming amended complaints. Third, regardless of the technical claims, what suppliers (including other defendants) told or represented to Wholesaler Defendants goes to notice and knowledge, as well as the simple fact of what quality the VCDs were supposed to or intended to be.

Wholesaler Defendants do not appear to challenge the relevancy here. Instead, they argue the documents requested are "duplicative" of documents already requested of Wholesaler Defendants, as well as documents requested from Manufacturer Defendants.

First, that one party (e.g., a manufacturer defendant) might produce responsive documents it possesses does not relieve another defendant (e.g., a wholesaler defendant) from producing responsive documents in its own possession. In fact, Magistrate Judge Schneider rejected this same assertion by Downstream Defendants last year.

Second, if Wholesaler Defendants believe they have already produced all documents responsive to this request – and Plaintiffs disagree because the two purportedly "duplicative" requests cited by Wholesaler Defendants in Plaintiffs' First Set of Requests were (i) "sufficient to show" requests, and (ii) asked for information provided by suppliers when "you actually purchase VCDs," i.e., not all representations and warranties – the Court has already rejected this argument as well. In the context of Defendants' latest document requests to class plaintiffs, Defendants argued that, even if new requests are duplicative, they should be answered. As Defendants themselves put it: "if they are duplicative, you know, plaintiffs should have to certify that they searched for and collected these kinds of documents that are in their possession[.]" *See* 10/14/20 Tr. at 26. The same should apply here. If Wholesaler Defendants already produced all representations and warranties they received from suppliers, they should so state in their written response. Otherwise, they should produce whatever else remains, or indicate what they are withholding and why.

If Wholesaler Defendants believe they can comply with this request without resort to custodial discovery, Plaintiffs are happy to hear the proposal.

- *Request No. 2: All documents relating to any representation or warranty provided by or pass on by you to any downstream purchaser*

Wholesaler Defendants' concerns with this request are the same as those with respect to Request No. 1; therefore, Plaintiffs incorporate their response above.

Plaintiffs will simply note, however, that based on productions to date, Wholesaler Defendants are in possession of documents responsive to this request that have not been produced. For example, in 2014, Cardinal Health evidently bestowed Zhejiang Huahai Pharmaceuticals company with a "Supply Chain Excellence" award. *See* SOLCO00152217. In 2018, the same year

2

as the unprecedented recall of this drug, McKesson evidently bestowed Solco with a "Small Generic Supplier of the Year" award.  *See* SOLCO00150490. There can be no question that Plaintiffs are entitled to know (among other things) what information and material McKesson and Cardinal relied upon when bestowing these industry wide awards.

- *Request No. 3:  All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with manufacturers, etc.)*

Wholesaler Defendants raise three issues with this request: duplicativeness, confidentiality, and relevance.  There is no duplication here because contractual verbiage in supply agreements is not "duplicative" of the electronic data Wholesaler Defendants already produced.  There is no confidentiality concern because long ago the Court entered a Discovery Confidentiality Order.

That leaves relevance.  Supply agreements contain a variety of relevant terms, including but not limited to representations and warranties about the quality of the product to be supplied, as well as inspection and auditing rights.  Wholesaler Defendants did not uniformly produce all of their supply agreements in response to Plaintiffs' First Set of Requests.  As your side took pains to point out, the specific request in that set of discovery called for indemnity agreements or provisions only.  At Wholesaler Defendants' insistence, that request specifically stated Wholesaler Defendants "may redact other competitive or sensitive information" from agreements.  And Wholesaler Defendants did just that.  When we asked Downstream Defendants in meet and confers about producing less redacted versions of the agreements, we were told to serve a new request.  Hence this Request No. 3.

If there are very specific terms or provisions that Wholesaler Defendants believe are so sensitive that they cannot be produced, even given the Discovery Confidentiality Order, we will hear you out.  But we cannot agree that the production of data, and a sliver of an agreement reflecting an indemnity provision, otherwise completely obviates the relevance and discoverability of supply agreements.

- *Request No. 4: All agreements relating to your sale of VCDs*

Plaintiffs incorporate their response above regarding Request No. 3.

- *Request No. 5:  All documents reflecting your inventory management policies, practices, and procedures.*

Wholesaler Defendants contend this request is irrelevant, burdensome, and duplicative.  We disagree.

As to relevance, Wholesaler Defendants have repeatedly stated that they do not trace the lot numbers for valsartan they sold downstream, such that they cannot definitively say which retailer or consumer received valsartan from which lot.  In lieu of such information, understanding the guidelines by which Wholesaler Defendants stock, replenish, and turnover inventory (either their own, or the inventory they manage for retailers) will provide useful datapoints on how likely a given lot of valsartan would remain on Wholesaler Defendants' or Retail Pharmacy Defendants'

3

shelves.  While defendants might believe this information will not "conclusively establish[]" the batch or lot from which a given consumer's valsartan came, it remains probative and undoubtedly discoverable.

Plaintiffs also disagree it would be a "burdensome" or an "immense" task for Wholesaler Defendants to produce a tiny, discrete set of written policies.  Similarly, whether some (but not all) Wholesaler Defendants might have produced some documents already that might touch on inventory management (*see* 2/16/21 S. Johnston Ltr. at 4) does not mean Plaintiffs should be precluded from explicitly asking a discrete request that ensures they receive actual policies from each defendant.

It appears Wholesaler Defendants might be willing to revise this request to call for only final policies and procedures governing inventory management.  Plaintiffs are amenable to this, provided that each defendant confirms they in fact have such policies and procedures for the distribution center and retail levels.  We are asking this in part because when we negotiated Plaintiffs' First Set of Document Requests over a period of many months, we were assured that Downstream Defendants had documents responsive to a narrowed request for certain "final written policies."  But then at least one Downstream Defendant turned around and responded that they did not have a "final written policy."  We want to avoid this situation again; thus, we want confirmation that each Wholesaler Defendant has final written policies or procedures, and if not we want to know what documentation short of a "final written policy" exists.

- *Request Nos. 6:  All documents relating to the stock life for VCDs maintained in your own inventories, including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.*

Depending on Wholesaler Defendants' response concerning Request No. 5, Plaintiffs may be willing to defer this request or further limit it only to a discrete number of custodians.

- *Request Nos. 7:  All documents relating to the stock life for VCDs maintained in your customers' inventories, including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.*

Depending on Wholesaler Defendants' response concerning Request No. 5, Plaintiffs may be willing to defer this request or further limit it only to a discrete number of custodians.

- *Request No. 8:  All communications between you and any Manufacturer Defendant relating to your purchase or the recalls of VCDs.*

Inter-defendant communications about the purchase and recall of the very drugs at issue in this case should hardly be controversial.  That Wholesaler Defendants produced electronic data showing its purchases or sales does not mean relevant communications should not be discoverable.  Similarly, that Manufacturer Defendants were ordered to produce inter-defendant communications does not mean Wholesaler Defendants should not have to; if anything, this underscores the discoverability of inter-defendant communications from all defendants.

4

Additionally, it is incumbent on Wholesaler Defendants to articulate precisely how this straightforward request would be unduly burdensome. The communications requested here are narrowly focused on two things, purchases and recalls of valsartan. Wholesaler Defendants proffer no reason suggesting this narrowly-tailored request implicates the custodial files of many of their employees or agents. To the contrary, it is likely that each Wholesaler Defendant had a single point of contact at the corporate level for responsive communications. By way of example, when Wholesaler Defendants answered Plaintiffs' first requests, most or all identified a single employee as being responsible for recall issues. Also, given that Wholesaler Defendants appear unwilling to provide any organizational information (*see* Request No. 10 below), Plaintiffs are unequipped to meaningfully discuss ways to limit or narrow this request to particular custodians.

- *Request No. 9: All communications between you and any Retail Pharmacy Defendant relating to your sale or the recalls of VCDs.*

Plaintiffs incorporate their response above regarding Request No. 8.

- *Request No. 10: Organizational charts or other documents sufficient to show the names, titles, and responsibilities of employees or agents involved in the following functions: (i) the purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and shipping of VCDs; (iv) the recall of VCDs.*

This request seeks straightforward, routine organizational discovery. Plaintiffs tailored the request to minimize burden to Wholesaler Defendants by explicitly phrasing it as a "sufficient to show" request; focusing it on only four discrete functions (versus all functions corporate-wide); and ensuring it mirrors nearly identical requests approved by the Court in Plaintiffs' document requests to Manufacturer Defendants. As mentioned above, this information is necessary for Plaintiffs to engage in meaningful discussions on how to limit other requests (e.g., Request Nos. 8 and 9) to the appropriate custodians only. We have told you multiple times we can revise this request to focus on corporate or managerial level custodians. But we need information from Wholesaler Defendants on how they operate before we can narrow this further on our end. We therefore put it back to Wholesaler Defendants, again, to propose a reasonable revision of this request based on their own knowledge of how they run their own businesses.

- *Request No. 11 [to AmeriSource only]: All documents relating to any policies, practices, or procedures for documents that accompany shipments of VCDs that you purchase, or that you sell*

AmeriSource did not produce a "final written policy" on this topic in response to Plaintiffs' first requests because – after months of good-faith negotiations over the precise wording of those requests – AmeriSource responded it did not possess any responsive "final written policy." We would have hoped that AmeriSource would have mentioned this when Plaintiffs were diligently working with Wholesaler Defendants to narrow the earlier requests; Plaintiffs would never had agreed to narrow them to "final written policies" if AmeriSource ever admitted during the lengthy meet and confer process that it had no such policy. Therefore, Plaintiffs now must seek additional documents short of "final written policies" to understand AmeriSource's practices governing shipments of valsartan.

5

**II.     Plaintiffs' Draft Rule 30(b)(6) Deposition Notice**

Wholesaler Defendants never provided any specific comments concerning Plaintiffs' draft deposition notice. Rather, they simply reiterated they do not believe "it makes sense to negotiate" it now. As apparently Wholesaler Defendants' position has changed, we invite them to provide substantive redlines or comments to the notice. We note that the notice generally tracks the categories of documents that Wholesaler Defendants produced last year, and would produce in response to the second set of document requests.

\* \* \*

We look forward to hearing back from you on these matters.

Sincerely,

KANNER & WHITELEY, L.L.C.

By: _____
David J. Stanoch