# Duane Morris®

*FIRM and AFFILIATE OFFICES*

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE OF DUANE MORRIS*

ALLIANCES IN MEXICO AND SRI LANKA

SETH A. GOLDBERG
DIRECT DIAL: +1 215 979 1175
PERSONAL FAX: +1 215 689 2198
*E-MAIL:* SAGoldberg@duanemorris.com

*www.duanemorris.com*

March 29, 2021

**VIA ECF & EMAIL**

Hon. Thomas I. Vanaskie, Special Master (TIV@stevenslee.com)
Stevens & Lee, PC
1500 Market St., East Tower, Suite 1800
Philadelphia, PA 19103-7360

    Re:   *MDL No. 2875*

Dear Special Master Vanaskie:

Please accept this letter on behalf of Zhejiang Huahai Pharmaceutical Co., Ltd. ("ZHP") in response to the letter Plaintiffs filed last night regarding the deposition of Peng Dong. As set forth below, Plaintiffs' counsel's conduct during the deposition of ZHP Party employees has been unprofessional and lacking the decorum the Court should expect of its officers.

DUANE MORRIS LLP
30 SOUTH 17TH STREET   PHILADELPHIA, PA 19103-4196          PHONE: +1 215 979 1000 FAX: +1 215 979 1020

DuaneMorris

March 29, 2021
Page 2

I. **INTRODUCTION**

Yelling at witnesses and counsel, repeatedly threating both with sanctions or "calling the judge," insisting a witness answer a certain way, moving to strike responsive answers, asking the same question over and over, and disregarding the scope of 30(b)(6) topics are all ways Plaintiffs' counsel has attempted to intimidate witnesses in order to force them to provide the testimony that he wants, even if it is not the testimony the witness has provided or intends to provide.[1] The Court should expect more from its officers.

II. **PROCEDURAL AND FACTUAL BACKGROUND**

To date, six ZHP Party witnesses have been deposed: John Iozzia, Lijie Wang, Remonda Gergis, Hai Wang, Minli Zhang and Peng Dong. With the exceptions of Mr. Iozzia and Ms. Gergis, all of the witnesses have been designated to provide testimony on certain 30(b)(6) topics. In addition to Mr. Slater, three other Plaintiffs' counsel have questioned these witnesses—Layne Hilton, George Williamson, and Charlie Whorton. Mr. Slater questioned Mr. Iozzia, Ms. Wang, Mr. Wang, and Mr.

---

[1] Given the time constraints, the ZHP Parties have not provided all cites to the record in support of this response, and to avoid burdening the Court the ZHP Parties have not attached the complete transcripts of the depositions of the ZHP Party employees referred to herein. The ZHP Parties would be happy to supplement this letter with additional citations to the depositions supporting the assertions herein, as well as the entirety of the deposition transcripts, if the Court so desires.

DuaneMorris

March 29, 2021
Page 3

Peng. During each of these depositions, but particularly with the Chinese witnesses, Mr. Slater used the following tactics, among others, in an attempt to intimidate the witnesses and force them into testifying the way he wants them to, even it is not how the witness would testify absent such intimidation.

    **A.**    **Mr. Slater Acts Unprofessionally and He Uses Tactics Intended to Intimidate Witnesses into Providing the Testimony Mr. Slater Wants.**

Mr. Slater threatens witnesses and counsel with sanctions and "calling the judge" in order to coerce the testimony he seeks. For example, at Mr. Wang's deposition, Mr. Slater threatened to file "a motion for very, very significant sanctions for conduct of counsel and the witness during this deposition." *See* excerpt at Exhibit A.[2]  As with his threats of sanctions, Mr. Slater also uses the phrase "motion to

---

[2] Mr. Slater's behavior is similarly unprofessional when he is defending depositions. For example, during the deposition of Paulette Silberman, a class representative, Mr. Slater stated "All right, I'll allow the question to go on a few more moments but, if this is going to be an area that is going to take a long time, and it's going to be like every medication she's ever taken or something like that, I'll call the judge." Pg. Ln. 72:10-15; *see also* Pg. Ln. 73:13-18 (MR. SLATER:  I want to know, are you asking her entire life, from the moment she's born, every prescription medication she's ever taken?  If that's the question, I'll call the judge, or I'll e-mail Judge Vanaskie, and ask that the deposition be terminated."

DuaneMorris

March 29, 2021
Page 4

strike" or explicitly instructs witnesses in attempt to force them to answer questions a certain way, and he asks the same question until he gets the answer he wants, even if it is not the answer the witness intended to provide. *See* excerpt at Exhibit B.

In addition, notwithstanding that certain ZHP Party witnesses speak only Mandarin, and no English, Mr. Slater insists that such Mandarin speaking witnesses should testify about documents written in English, as opposed to providing them with versions of those documents translated into Mandarin. *See* below. Mr. Slater also ignores the scope of 30(b)(6) topics and asks witnesses to testify about areas outside of a topic for which a witness has prepared, and asks about information that other witnesses have been designated to cover. *See* excerpt at Exhibit C.

Lastly, when all else fails, Mr. Slater resorts to raising his voice at witnesses and counsel. *See* excerpt at Exhibit D.

> **B.  Plaintiffs Have Mischaracterized Mr. Peng's Testimony in an Effort to Distract the Court from Mr. Slater's Lack of Civility and Professionalism During the Deposition.**

Plaintiffs' letter seriously misrepresents the events that occurred at Peng Dong's deposition. Perhaps most blatant, at the beginning of the deposition, Mr. Slater marked an English-language version of Peng Dong's deposition notice as an exhibit and refused to allow it to be translated by the official interpreter, even after Mr. Peng testified that he does not read or speak English. 4:10-18; 6:11-16; 8:2-17.

DuaneMorris

March 29, 2021
Page 5

Counsel for ZHP, Mr. Ball, offered to go off the record to discuss this issue, but Mr. Slater refused. 7:1-8. Mr. Peng was aware that there were several topics on which he needed to testify but could not recite them by memory. When the witness asked for a translation, Mr. Slater threatened sanctions. 9:22-24; 10:1-24.

In a similar manner, Mr. Slater misrepresents the questions and answers pertaining to Peng Dong's curriculum vitae. Mr. Slater asked several questions about Peng Dong's curriculum vitae, which were answered. 21:3-26:24. The witness testified he does not have a Mandarin version of his CV. The Exhibit was created for purposes of this deposition by Mr. Peng with the assistance of an English-speaking colleague.

Mr. Peng also answered several questions about a document purported to be related to genotoxic impurity assessments. 28:4-57:24. The witness asked to review the entire document, and Mr. Slater refused. 43:8-10. The Mandarin-language document was only approximately 8 pages, including approximately four pages of tables. Given the short length of the document, Mr. Slater could have taken up less time had he asked the witness to review the document in full. Mr. Slater represented the document itself did not contain an effective date, but the witness could not confirm that because Mr. Slater refused to let him review the entire document. 29:24 – 30:12. When the witness asked Mr. Slater to clarify or repeat questions, Mr. Slater

DuaneMorris

March 29, 2021
Page 6

sometimes refused. 29:6-16. The witness attempted to explain why he needed to know the effective date, but Mr. Slater moved to strike that response. 29:13-24.

As in previous depositions, Mr. Slater repeatedly moved to strike the witness's responses. 30:7; 30:24, 31:15; 32:7; 34:10; 35:7; 42:1-2; 50:14-17; 51:20; 55:8-9; 57:9-10; 64:10-11; 67:10; 72:23; 74:17; 75:22; 77:7; 77:22; 80:17; 81:2; 81:13; 93:5; 93:23; 95:17-19; 98:12-13; 101:23; 102:14.

### C. The Questioning of Other Plaintiffs' Counsel Underscores Mr. Slater's Unprofessional Conduct.

In stark contrast to Mr. Slater, his colleagues Layne Hilton, George Williamson, and Charlie Whorton have maintained civility and decorum during their questioning of the ZHP Parties' witnesses. Of course, given the adversarial nature of litigation, disputes have arisen among all counsel during the course of these depositions; however, Mr. Slater's colleagues have been able to address these disputes civilly and professionally. Specifically,

- Unlike Mr. Slater, other Plaintiffs' counsel have not threatened any witness or counsel with sanctions;

- Unlike Mr. Slater, other Plaintiffs' counsel have not raised their voice and yelled at witnesses and counsel;

- Unlike Mr. Slater, other Plaintiffs' counsel have not instructed the witness or their counsel that the that witness must answer questions in a specific manner;

Duane Morris

March 29, 2021
Page 7

- Unlike Mr. Slater, other Plaintiffs' counsel have generally been respectful of the fact that a Chinese witness needed the interpreter's assistance to understand an English document; and

- Unlike Mr. Slater, other Plaintiffs' counsel have been respectful and complimentary, of the ZHP Parties' interpreter, Dr. Yang Shao.

The following exchange between Plaintiffs' counsel Layne Hilton and ZHP's counsel Jessica Priselac regarding an English language email shown to a witness who cannot speak English is illustrative of the fact that other Plaintiffs' counsel have been able to depose ZHP's witnesses in a civil and efficient manner, even in instances where there was a dispute.

> Q. And I'll let you answer this question in your individual capacity. This [ENGLISH LANGUAGE] e-mail says -- this is from Minfa Wang. It says, "QA please read it carefully and let me know the response reflect Huahai current SOP, most information I collected was from Jining and Minli, such as 'Huahai corporate QA team performs audit on each manufacturing sites on a regular basis.'" Do you recall telling Minfa Wang that Huahai corporate team performs audits on each manufacturing site on a regular basis in 2014?
>
> MS. PRISELAC: Objection to form.
>
> A. I do have such recollection.
>
> BY MS. HILTON:
>
> Q. Even though in 2014 you were not a member of the quality assurance department, yet you were part of quality control, correct?

DuaneMorris

March 29, 2021
Page 8

A. I do have such a recollection. However, I do not recall clearly what specifically I said to him. That's why he wanted QA to provide a confirmation.

**Q. Thank you. I'm going to -- and don't worry, we're not going to get too much into the English document here, but I wanted to just sort of set up, you know, when we look at this SOP**, the edits that were provided by Dr. Gu to this draft response to the deficiency letter indicated that "Huahai has established SOP" G-1005-1, "titled '?????,' requiring that every lot of the drug substance manufactured by Huahai API (or DS) division has to be fully tested according to established specification, using validated and/or verified methods for release at API (or DS) division (API manufacturing site)." Do you have any recollection of a standard operating procedure regarding the release of API for the manufacture of valsartan?

MS. PRISELAC: Objection to form. Just to clarify, Layne, you're not actually asking about this document, right? Because if you are, she needs a Chinese translation. You're just asking about if there's an SOP, is that right?

MS. HILTON: Yes. I have a Chinese version of the SOP, so I just want to ask her if she recalls that there was an SOP that was at one point drafted in this deficiency letter. So --

MS. PRISELAC: Okay. Then she can answer that. **Dr. Shao, you don't have to translate all of that. You can just translate Ms. Hilton's question.**

(ZHANG, MINLI 03/24/2021, 297:18-300:9, 3/24/2021)(emphasis added)

The exchange above is illustrative of the fact that other Plaintiffs' counsel have found ZHP's witnesses to be cooperative, **going so far as to thank them for**

DuaneMorris

March 29, 2021
Page 9

***their answers***. The exchange also illustrates that even where a translation issue arose and clarification between attorneys was necessary, Plaintiffs' counsel approached the issue in a respectful manner, and ZHP's counsel instructed the translator not to translate the exchange between counsel so as to expedite the deposition and avoid possibly confusing the witness.

### III. ARGUMENT

When there is a breakdown of decorum at a deposition, a court should use "its authority to maintain standards of civility and professionalism. . . . Because depositions take place in law offices rather courtrooms, adherence to professional standards is vital, for the judge has no direct means of control." *Redwood v. Dobson,* 476 F.3d 462, 469 (7th Cir. 2007). In the depositions in this litigation, Mr. Slater has repeatedly engaged in various types of behavior that defy the standards of civility and professionalism and cannot be allowed to continue.

Repeated and harassing questioning of a deponent is inappropriate, sanctionable behavior in a deposition. *Baltazar v. Warden,*, 302 F.R.D. 256, 261-67 (N.D. Ill. 2014); *Redwood v. Dobson*, 476 F.3d 462, 469-70 (7th Cir. 2007) (imposing sanctions on lawyers for "shameful" conduct at deposition in acting hostile and abusive to the witness and opposing counsel). As detailed *supra*, Mr. Slater has engaged has engaged in repeated intimidating and harassing behavior

DuaneMorris

March 29, 2021
Page 10

through repetitive questioning, moving to strike, instructing witnesses how to answer questions, and yelling at witnesses.

Threatening opposing counsel and the witness with sanctions on the record during a deposition is "intimidating and harassing conduct" that should not be tolerated. *See Baltazar*, 302 F.R.D. at 264-67 (N.D. Ill. 2014) (noting the conduct at the deposition was "inappropriate and unprofessional" which included threatening opposing counsel with Rule 11 sanctions, and ordering that a new questioning attorney conduct the deposition). Mr. Slater's threats to seek sanctions are identified at Exhibit A.

Mr. Slater's numerous motions to strike, identified *supra*, also defy the rules of civil procedure. Federal Rule of Civil Producure 30 expressly provides that motions to strike testimony are not properly raised during deposition. Federal Rule of Civil Procedure 30(c)(1) provides that Federal Rule of Evidence 103, which requires a motion to strike during a trial, does not apply at a deposition. Fed. R. Civ. P. 30(c)(1) ("The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, **except Rules 103** and 615.") (emphasis added).

Mr Slater's improper conduct also extends to questioning of Rule 30(b)(6) designees on areas falling plainly outside the topics on which they have been

DuaneMorris

March 29, 2021
Page 11

designated to testify. Rule 30(b)(6) witnesses are only required to testify to matters on which they have been designated. *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008) ("[I]f a Rule 30(b)(6) witness is asked a question concerning a subject that was not noticed for deposition or that seeks information not reasonably available to the corporation, the witness need not answer the question.").

In contrast to the above, the deposition conduct described in the cases which Plaintiffs' rely at page 5 of their letter are readily distinguishable from ZHP counsel's conduct during the ZHP Party witness depositions. In *In re Neurontin Antitrust Litigation*, the defending attorney improperly added information to the witness's testimony. No. CIV.A. 02-1390 FSH, 2011 WL 253434, at *12, n.17 (D.N.J. Jan. 25, 2011), aff'd, No. 02-1390, 2011 WL 2357793 (D.N.J. June 9, 2011) ("[T]he court stressed that "more than 20% of the transcript is taken up by [defendant's] counsel speaking during this deposition.").

Similarly, in *Deville v. Givaudan Fragrances Corporation*, the defending attorney provided answers on the witness' behalf throughout the deposition. 419 F. App'x 201, 203-04 (3d Cir. 2011). The Magistrate Judge explained the defending attorney's "interjections went 'beyond just suggesting an answer' and amounted to 'testifying for the expert witness ... throughout the deposition testimony.'" *Id*. at

March 29, 2021
Page 12

DuaneMorris

204; *see also Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, No. 3:10-CV-1559, 2014 WL 3055358, *8 (M.D. Pa. July 3, 2014) (highlighting how the attorney defending the deposition not only instructed the deponent not to answer certain questions without any legitimate basis but also raised numerous speaking objections that appear to have been intended suggest to the deponent how to answer a pending question). Finally, in *GMAC Bank v. HTFC Corporation*, the court sanctioned the defending attorney for failing to control the witness's "outrageous" conduct which involved "maintaining a persistently hostile demeanor, employing uncivil insults, and using profuse vulgarity." *Id*. at 186-87 (noting the witness "used the word 'fuck' and variants thereof no less than 73 times."). As the transcripts show, neither ZHP's counsel nor any ZHP witness ever engaged in this type of outrageous conduct. ZHP's witnesses have cooperatively provided testimony, and ZHP's counsel have not added information to witness testimony or suggested answers to witnesses.

## IV. CONCLUSION

Based on the foregoing, the ZHP Parties respectfully request the Court order Mr. Slater to refrain from the above conduct during the depositions in this litigation.

March 29, 2021
Page 13

DuaneMorris

Respectfully submitted,

*/s/ Seth A. Goldberg*

Seth A. Goldberg

cc:   Adam Slater, Esq. (*via email, for distribution to Plaintiffs' Counsel*)
　　　Jessica Priselac, Esq. (*via email, for distribution to Defendants' Counsel*)
　　　Sarah Johnston, Esq. (*via email*)
　　　Jeffrey Geoppinger, Esq. (*via email*)
　　　Lori G. Cohen, Esq. (*via email*)
　　　Clem C. Trischler, Esq. (*via email*)