# Duane Morris®

*FIRM and AFFILIATE OFFICES*

| | |
|---|---|
| NEW YORK | SHANGHAI |
| LONDON | ATLANTA |
| SINGAPORE | BALTIMORE |
| PHILADELPHIA | WILMINGTON |
| CHICAGO | MIAMI |
| WASHINGTON, DC | BOCA RATON |
| SAN FRANCISCO | PITTSBURGH |
| SILICON VALLEY | NEWARK |
| SAN DIEGO | LAS VEGAS |
| LOS ANGELES | CHERRY HILL |
| TAIWAN | LAKE TAHOE |
| BOSTON | MYANMAR |
| HOUSTON | OMAN |
| AUSTIN | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | *OF DUANE MORRIS* |
| HO CHI MINH CITY | |
| | ALLIANCES IN MEXICO |
| | AND SRI LANKA |

SETH A. GOLDBERG
DIRECT DIAL: +1 215 979 1175
PERSONAL FAX: +1 215 689 2198
*E-MAIL:* SAGoldberg@duanemorris.com

*www.duanemorris.com*

April 1, 2021

**VIA ECF & EMAIL**

Hon. Thomas I. Vanaskie, Special
Master (TIV@stevenslee.com)
Stevens & Lee, PC
1500 Market St., East Tower, Suite 1800
Philadelphia, PA 19103-7360

Re:   *MDL No. 2875*

Dear Special Master Vanaskie:

We write on behalf of the ZHP Parties (1) to request the Court order Mr. Slater precluded from taking ZHP Party witness depositions, or to stop his over-the-top, unprofessional antics and witness harassment during the depositions of ZHP Party witnesses, and (2) to request the Court order that (i) Plaintiffs must come prepared with Mandarin translations of English-language exhibits they intend to use during the deposition of any Mandarin-speaking witness that cannot read English, or (ii) the time and cost burdens of having those English-language exhibits "sight translated"



April 1, 2021
Page 2

during the deposition be shifted to Plaintiffs. As demonstrated below, without such an order, the ZHP Parties will be prejudiced as the depositions of their corporate representatives and other employees are being unfairly impeded, delayed, and frustrated.

**I.      Mr. Slater Should Precluded From Questioning ZHP Party Witnesses or be Ordered to Stop His Unprofessional Antics and Witness Intimidation During the Depositions of ZHP Party Witnesses**

In the ZHP Parties' letter to the Court filed March 29 (ECF 1081), the ZHP Parties highlighted instances during ZHP Party depositions in which Mr. Slater moved to strike, asked the same question more than a dozen times, and threatened witnesses and counsel with motions for sanctions, all with the aim of intimidating the witness into providing certain testimony the witness would not provide absent such bullying. Upon reviewing the portions of those depositions, Judge Vanaskie remarked:

> I do want to say at the outset that it was very distressing for me to read the exchanges that occurred during the excerpts of the depositions that were provided to me, both the excerpt from the deposition taken last night as well as other depositions. In my judgment, it is not the way attorneys should conduct themselves, not the way that I'd like to see it, and I'd like to see if we can come to some understanding moving forward where depositions are not impeded by needless objections, and also, that you get to a point where a witness doesn't give the answer you want, you've got to move on sometimes.

3-29-21 Hrg. Tr. at 2:11-22.

DuaneMorris

April 1, 2021
Page 3

Rather than take seriously the Court's concern about the conduct of counsel during depositions, in the three days of deposition testimony since the Court expressed its distress, Mr. Slater has ratcheted up his witness intimidation, and his unprofessional conduct has become even more exaggerated. Mr. Slater's deplorable conduct is not just for show, it is having an altering effect on the testimony that is prejudicing the ZHP Parties. Mr. Slater should precluded from taking ZHP Party witnesses depositions,[1] or be ordered to stop his offensive conduct, and to start acting like an officer of the Court involved in a judicial proceeding.

For example, Mr. Slater impugned Peng Dong's character and credibility on the record. First, without cause, Mr. Slater questioned whether Mr. Peng had been actively fed answers during his deposition.[2] *See* Ex. A 30:18-20 ("Do you have a WeChat or any sort of a chat feature open on either of these computers right now?"); 31:9-12 ("Have you been getting any messages from anybody on either of these computers to help you to answer questions during this deposition?"); 31:14-16 ("Do

---

[1] As set forth in ECF 1081, Mr. Slater's conduct during depositions stands in stark contrast to other Plaintiffs' counsel who have deposed ZHP Party witnesses. Mr. Slater should be precluded from deposing ZHP Party witnesses, and those Plaintiffs' counsel can substitute for him

[2] The attached Exhibit "A" is an uncertified, rough draft provided at the conclusion of Tuesday night's deposition.

Duane Morris

April 1, 2021
Page 4

you have any sort of a realtime in the Mandarin language that you have access to during this deposition?").

Then, suggesting Mr. Peng was purposefully and unnecessarily wasting time, Mr. Slater asked, "Were you told that it's acceptable to take as long as you possibly can and give the longest possible answer possible every single time in order to take up the time in our deposition? Were you told that's acceptable for this deposition?" *See* Ex. B 11:1-6.[3] Rightfully viewing this question as a direct challenge, Mr. Peng later replied, "I would protest against such statement from the plaintiffs' counsel. **I deem it as a personal attack on me.**" *See id.* at 12:12-14.

Continuing his line of personal attacks, Mr. Slater also repeatedly suggested Mr. Peng was hiding or understating his ability to read and understand English. *See id* at 68:1 (Why? Can you read English?); 68:21-23; 69:1-3 ("Do you speak English? Let me -- why are you asking to know where it is in the paragraph when you've already told us under oath that you can't read this language?"); 69:9-15 ("Okay. Then why don't you do this Mr. Dong. Do you see this paragraph in front of us? Why don't you read what you can of that paragraph. Since you're going to confirm it, confirm it out loud for us, please."); 79:9-10 ("Did you have to demonstrate

---

[3] The attached Exhibit "B" is an uncertified, rough draft provided at the conclusion of Wednesday night's deposition.

DuaneMorris

April 1, 2021
Page 5

English proficiency in order to graduate?"); 79:16-17 ("Did you read English language material when you were studying chemistry?").

Further, Mr. Slater's suggestion that ZHP should have designated English-speaking witnesses as its corporate representatives is discriminatory.  *See* 3-29-21 Hrg. Tr. at 22:20-23:11 ("What I said to Mr. Goldberg last week was, ***maybe you need to appoint two 30(b)(6) witnesses, one that can work with the English or one with the Chinese***. I don't think it's necessary because I don't think anything unfair is being done. . . . But ***they chose to designate people who are not bilingual***, which is fine, there's no rule that says that, but we can't be blocked from questioning witnesses on some of the most important documents." (emphasis added)).

Courts do not tolerate the type of outrageous behavior Mr. Slater is displaying. *See Nichols v. Denver Health & Hosp. Auth.*, No. 19-CV-02818-DDD-KLM, 2020 WL 5517355, at *2 (D. Colo. Sept. 14, 2020). (recognizing that counsel "repeatedly attacked [the deponent's] truthfulness and credibility" and made "excessive, harassing and belittling comments" intended to "to embarrass and oppress the deponent."). "Because depositions take place in law offices rather than courtrooms, adherence to professional standards is vital, for the judge has no direct means of control." *Redwood v. Dobson*, 476 F.3d 462, 469-70 (7th Cir. 2007) (imposing sanctions on lawyers for "shameful" conduct at deposition in acting hostile and

DuaneMorris

April 1, 2021
Page 6

abusive to the witness and opposing counsel); *Baltazar v. Warden,*, 302 F.R.D. 256, 261-67 (N.D. Ill. 2014) (noting the conduct at the deposition was "inappropriate and unprofessional" which included threatening opposing counsel with Rule 11 sanctions, and ordering that a new questioning attorney conduct the deposition).

Moreover, it goes against all rules of ethics and professional conduct to discriminate against Mandarin-speaking people in favor of those who speak English in court proceedings by demonstrating bias or prejudice. *See* Model Rule of Professional Conduct 8.4(g) (noting it is professional misconduct for a lawyer to "engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, . . . national origin, [or] ethnicity . . . in conduct related to the practice of law."); *id.* at Comment 3 ("Discrimination and harassment by lawyers in violation of paragraph (g) undermine confidence in the legal profession and the legal system. Such discrimination includes harmful verbal or physical conduct that manifests bias or prejudice towards others." (emphasis added)).

Mr. Slater's unprofessional conduct and witness intimidation, should be controlled through protective order issued by this Court in accordance with "its authority to maintain standards of civility and professionalism." *Redwood*, 476 F.3d at 469.

DuaneMorris

April 1, 2021
Page 7

**II.   The Court Should Order Plaintiffs to Present Documents Translated Into Mandarin to Mandarin Speaking Witnesses, or the Time and Cost Burden of Sight Translation During the Deposition Should be Borne by Plaintiffs**

The ZHP Parties request the Court order that (i) Plaintiffs must come prepared with Mandarin translations of English-language exhibits they intend to use during the deposition of any Mandarin-speaking witness that cannot read English, or (ii) the time and cost burdens of having those English-language exhibits "sight translated" during the deposition should be shifted to Plaintiffs.[4]

**A.   Judge Schneider Explicitly Anticipated the Time Burden of Translating Documents During a Deposition Could Become a "Problem" the Court Would Have to Resolve**

As stated during the March 29 hearing before Your Honor, Defendants previously requested Judge Schneider include a provision in the Deposition Protocol that translated documents be provided in advance of the deposition or, if not provided in advance, that "any time spent having to translate the document during

---

[4] *See* 3-29-21 Hrg. Tr. at 50:19-25 (JUDGE VANASKIE: "I understand what you're saying, Mr. Goldberg. It would be nice if the documents were translated, but we're too far down. We're in the middle of a deposition right now. If we have to revisit this issue, we will, but protocol did not require translated documents and I won't revisit that at the present time. If we have to revisit it later, we will."). Defendants note that they previewed with Your Honor that "this [issue] is something that we will bring to Your Honor's attention if the time is running short because of this issue." *Id.* at 51:3-4. Defendants also note, as described below, Plaintiffs' representations about the rulings surrounding this issue in the Deposition Protocol were plain misrepresentations to the Court.

April 1, 2021
Page 8

the deposition would be counted as deposition time." 11-24-20 Hrg. Tr. at 126:4-8; *see also* 3-29-21 Hrg. Tr. at 43:6-19. During the March 29 hearing, Plaintiffs misrepresented Defendants' position and Judge Schneider's prior ruling on Defendants' request to Your Honor. *See* 3-29-21 Hrg. Tr. at 22:10-15, 45:2-11.

In direct contravention to Plaintiffs' statements during the hearing, "both sides" did not reach agreement to not "translate all documents [Plaintiffs] intended to use and give it to [Defendants] in advance[.]" Further, while Judge Schneider did rule that he would not "order plaintiffs to reveal [their] work product **before the deposition**[,]" he specifically "left for the future" the issue of translations of exhibits during the depositions and "how to count time":

> I'm not going to order plaintiffs to reveal its work product before the deposition. **We're going to leave for another day and not include in the order a provision about how to count time. If it's a problem, you'll deal with it. The Court will deal with it at the appropriate time, but I think it's an issue better left for the future.** It wasn't a problem in *Benicar*, it seemed to go smoothly. We certainly didn't go through this type of argument when we did the protocol in that case. I don't know why we're doing it in this case, but be that as it may, I think we're just buying trouble if we put the provision in there now. So the Court's ruling is, don't include it.

11-24-20 Hrg. Tr. at 127:3-14 (emphasis added). Thus, Plaintiffs' statements to Your Honor that "the issue was fully negotiated" and "to now have a new protocol entered when we've already decided to go forward and we've all relied on this order . . . would be unfair" were disingenuous at best. Plaintiffs have been on notice since

DuaneMorris

April 1, 2021
Page 9

November 2020 that there is an open issue as how to translate documents that Plaintiffs choose to not translate in advance of a deposition, and how to count time doing so during the deposition. 3-29-21 Hrg. Tr. at 45:2-11.

Accordingly, in the words of Judge Schneider, this has become "a problem" and "[t]he Court should deal with it at the appropriate time[,]" which ZHP believes is now. 11-24-20 Hrg. Tr. at 127:5-6.

> **B.** **The ZHP Parties Will Be Prejudiced If Plaintiffs Are Permitted to Question Mandarin-Speaking Witnesses Who Do Not Read English About English Documents "Sight Translated" to Mandarin During a Deposition**

Despite Plaintiffs' cries of unfairness given the alleged reliance on the Deposition Protocol,[5] it is actually the ZHP Parties that will be severely prejudiced by having their employees and corporate representatives deposed using exhibits that

---

[5] Mr. Slater's assertion during the March 29 hearing that Plaintiffs would have to translate "thousands of pages" of English-only documents has no basis in fact. *See* 3-29-21 Hrg. Tr. at 23:8-11 ("Asking us to translate thousands of pages of documents just in case would be – that was not something that we put in the protocol, it's not required, so that's that issue."). There are relatively few documents relevant to this case that exist only in English, which is to be expected given that the majority of ZHP's employees working in China speak Mandarin and ZHP is an international company doing business with English-speaking companies. The number of bilingual Standard Operating Procedures, Standard Management Procedures, and key deviation investigation reports that were shown to Minli Zhang during her five-day deposition demonstrate this practical reality. Mr. Slater's statement regarding the burden on Plaintiffs to translate is heavily exaggerated and should be disregarded.

Duane Morris

April 1, 2021
Page 10

must be "sight translated" by the translator of record during the deposition. According to Federal Rule of Civil Procedure ("FRCP") Rule 30(d)(2), any person who "***impedes, delays, or frustrates*** the fair examination of the deponent" may be subject to sanctions. Fed. R. Civ. P. 30(d)(2) (emphasis added). Additionally, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in ***bad faith*** or in a manner that ***unreasonably annoys, embarrasses, or oppresses the deponent or party***." Fed. R. Civ. P. 30(d)(3)(A) (emphasis added); *see also Redwood*, 476 F.3d at 467-68 ("Fed. R. Civ. P. 30(d) specifies how harassment is to be handled. Counsel for the witness may halt the deposition and apply for a protective order[.]").

FRCP Rule 30(d) expressly references FRCP Rule 26(c) in providing that the Court "may order that the deposition be terminated or may limit its scope and manner[.]" Fed. R. Civ. P. 30(d)(3)(A). Under FRCP 26(c), the Court may issue a protective order for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). As demonstrated best in the deposition of Peng Dong, Plaintiffs' refusal to provide translated exhibits and force the deponent to testify regarding isolated statements in an exhibit violates FRCP Rules 30 and 26 in multiple ways and is good cause for issuance of a protective order.

DuaneMorris

April 1, 2021
Page 11

Despite knowing for months in advance that Peng Dong would require a translator, and that Defendants predicted issues would arise with respect to the translation of exhibits in depositions of Mandarin-speaking individuals such as Peng Dong, Plaintiffs have admitted English language exhibits and required Dr. Shao, the interpreter of record, to "sight translate" portions of the exhibit during the deposition. Ex. A at 84:20 – 86:14 (asking Dr. Shao to "translate that for Mr. Dong"); Ex. A at 88:22 – 89:10 (asking Dr. Shao to "please read that and translate that"). Given the technical nature of the terms at issue in this case, this can be a complex process, and, consequently, sight interpretation is not always accurate.

Because Mr. Peng does not understand any English, he has had no way of knowing whether Dr. Shao's sight translation was correct by looking at the face of the exhibit. Further complicating the situation is the fact that Mr. Peng needed context to answer questions regarding specific sentences in a document—*i.e.*, he needed to be able to understand the context in which the sentence was written in order to fully comprehend it. Again, because Mr. Peng does not understand any English, he had no way of identifying what other portions of the document he needed translated in addition to the single sentence plucked out of the document by Plaintiffs' counsel. Therefore, Mr. Peng was forced to guess and direct Dr. Shao to those context-providing portions or rely on Dr. Shao's judgment as to which other

DuaneMorris

April 1, 2021
Page 12

portions of the document needed to be translated—in addition to trusting entirely the sight translation of those documents—while he was providing his sworn testimony under oath as a corporate representative about a document he could not read.

As an example, during Tuesday night's deposition, Plaintiffs' counsel asked for a translation of sections of a technical document provided by ZHP to the FDA. Ex. A at 91:17 – 93:18.[6] Mr. Peng and Dr. Shao had to go back and forth to identify the particular section of the document about which counsel was asking. Mr. Peng then had to ask Dr. Shao to translate random sections around the document to provide context so he could answer the question accurately. *Id.* Additionally, during last night's deposition, the witness asked for a paragraph to be translated to provide context. Mr. Slater then suggested it was a long paragraph and that continued translation would result in the parties being on the record until 3:00 a.m. and could also result in Mr. Peng's deposition being extended well beyond the time set for the deposition, including that Mr. Peng would not be able leave Macau during the time period required by his visa. *See* Ex. B 39:12-18.

> Q. This document was known to ZHP in 2011, and ZHP knew all the contents, including that sentence I read, correct?

---

[6] A copy of the deposition exhibit is attached as Exhibit "C" so the Court can understand the technical nature of the documents.

DuaneMorris

April 1, 2021
Page 13

A. I'm sorry. I need you to point out where the sentence you just referred to is in this paragraph, and then I would like to ask the interpreter to translate for me.

MR. SLATER: Go off the timer. Dr. Shao, it's at the top, the carryover paragraph. There's a sentence that starts, "However, there are some compounds." Do you see that.

THE INTERPRETER: Yes.

MR. SLATER: It's that sentence that I'm reading.

(Interpreter translating document to witness.)

THE INTERPRETER: The interpreter is asked to translate the whole paragraph.

MR. SLATER: Hey, I'm not the guy trying to get out of Macao on Thursday night until Friday morning, so if he wants you to translate – you're talking about starting on the prior page? Go ahead. Have at it. You can go back. As longest he wants to spend -- I don't know what else to tell him. I mean, it's a really long paragraph.

(Interpreter translating document to witness.)

A. I believe I need to understand the background or the context of this sentence in order to give you a response that's accurate.

BY MR. SLATER:

Q. You don't have to explain yourself to me if you want Dr. Shao to read it to you. But we're not on the clock, and we're not going to go until 3:00 o'clock in the morning tonight. So all I'm saying is we're probably going to be continuing Friday night. That's all I'm saying.

MR. BALL: Adam, you don't get to make that decision.

MR. SLATER: So we're just going to go until 3:00 in the morning tonight?

DuaneMorris

April 1, 2021
Page 14

> MR. BALL:  No.  We're going to go the five hours of translation time that you are allowed.
>
> MR. SLATER:  Okay.  Well, thank you for telling me what I'm going to do, but, you know, this –
>
> MR. BALL:  No, I'm not telling you what you're going to do.
>
> MR. SLATER:  We're going to do this for 15, 20 minutes now, this paragraph, on a simple question. Maybe there's an easier way through this if you suggest -- well, you do whatever you want.  I'm not going to –

**C.    If Plaintiffs Do Not Come Prepared With Exhibits Translated Into Mandarin, the Time and Expense Burden of Sight Translation During the Deposition Should be Borne by Plaintiffs**

As Your Honor stated during the March 29 hearing, a witness has a right to review the document about which the witness is being questioned in order to ensure that the witness understands the question.  3-29-21 Hrg. Tr. at 13:16-18 (JUDGE VANASKIE: "I agree with you, a witness should have an opportunity to look at a document, go through the document."); *see also id.* at 49:16-19 ("MR. GOLDBERG: "I think Your Honor would agree, a witness should not have to answer a question the witness does not understand." JUDGE VANASKIE: "Right."). If Plaintiffs provided even a cursory machine-translated version of the exhibit for the witness, Mr. Peng could reference the attorney's question, review necessary portions around those highlighted sentences, and not entirely rely on the accuracy of Dr. Shao's translation to obtain the context and information necessary in order to

DuaneMorris

April 1, 2021
Page 15

understand the attorney's question. The failure of Plaintiffs' counsel to provide translated documents from which all the parties can work wastes time, exhausts the translator, and at the end of the day, may result in inaccurate testimony by the witness, which certainly "impedes, delays, [and] frustrates the fair examination of the deponent."[7] Fed. R. Civ. P. 30(d)(2).

It is worth mentioning that Plaintiffs have retained an interpreter to attend the depositions as a "check interpreter." Rather than use that interpreter to translate the documents they intend to use at the depositions, Plaintiffs are shifting the cost to the ZHP Parties by asking the interpreter of record, who has been retained by the ZHP Parties, to take the time to translate the documents during the deposition. At a minimum, the cost of translating documents to be used at a deposition by a party should be borne by that party.

In short, ZHP faces significant prejudice by Plaintiffs' refusal to provide translated versions of the exhibits at the deposition Mandarin-speaking witnesses. Plaintiffs have not put either the resources or time into preparing their documents.

---

[7] Indeed, providing a Mandarin version of English exhibits would significantly speed up the deposition. Notably, the Deposition Protocol is written in a way that assumes this would happen and further speeds up the deposition by providing "[o]bjections as to the accuracy of translations shall be preserved unless a stipulation is reached by the parties in advance of the deposition." ECF 632 at J.5.

DuaneMorris

April 1, 2021
Page 16

They should not be permitted to force the official translator of record to do that work for them at significant risk to the witness for all of the reasons articulated above. Thus, ZHP hereby requests that Plaintiffs be required to come prepared with translated versions of the English-language exhibits they use during the depositions of Mandarin-speaking witnesses who do not read English, or that Plaintiffs bear the time and expense burden of having those documents sight translated during the deposition.

*****

For the above reasons, the ZHP Parties (1) request the Court order Mr. Slater precluded from taking ZHP Party witness depositions, or to stop his over-the-top, unprofessional antics and witness harassment during the depositions of ZHP Party witnesses, and (2) request the Court order that (i) Plaintiffs must come prepared to use Mandarin translations of English-language exhibits they intend to use during the deposition of any Mandarin-speaking witness that cannot read English, or (ii) the time and cost burdens of having those English-language exhibits "sight translated" during the deposition should be shifted to Plaintiffs.

Respectfully submitted,

/s/ Seth A. Goldberg

Seth A. Goldberg

DuaneMorris

April 1, 2021
Page 17

cc:  Adam Slater, Esq. (*via email*, *for distribution to Plaintiffs' Counsel*)
     Jessica Priselac, Esq. (*via email*, *for distribution to Defendants' Counsel*)
     Sarah Johnston, Esq. (*via email*)
     Jeffrey Geoppinger, Esq. (*via email*)
     Lori G. Cohen, Esq. (*via email*)
     Clem C. Trischler, Esq. (*via email*)

DM1\11920875.5