# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°
David M. Estes

**Writer's Direct Dial**:
(973) 228-0454
**Writer's Email:**
aslater@mazieslater.com

Karen G. Kelsen°
Cheryll A. Calderon
Adam M. Epstein°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Alexander Q. Reynoso
Samuel G. Wildman
Julia S. Slater°

*Certified by the Supreme Court of New Jersey as a Civil Trial Attorney

°Member of N.J. & N.Y. Bars

April 1, 2021

**VIA EMAIL**
TIV@stevenslee.com
Hon. Thomas I. Vanaskie (Ret.)
Special Master
Stevens & Lee
1500 Market St., East Tower, Suite 1800
Philadelphia, Pennsylvania 19103-7360

Re:  ***In re Valsartan, Losartan, and Irbesartan Liability Litigation***,
     **Case No. 1:19-md-02875-RBK (D.N.J.)**

Dear Judge Vanaskie:

Please accept this letter on behalf of the Plaintiffs in response to the letter submitted to Your Honor this morning regarding the deposition of Peng Dong. Because the undersigned is preparing for the continuation of the deposition of Peng Dong, this letter is brief.

The ZHP letter is a preemptive strike to attempt to distract the Court's attention from the motion that they know is going to be filed to request relief based on the ongoing obstruction of Plaintiffs' ability to obtain responsive deposition testimony. The gross mischaracterization of the conduct of Plaintiffs' counsel is a clear effort to create chaos and a false equivalency between the obstruction of the deposition by ZHP's designated corporate witness, and the legitimate efforts by Plaintiffs' counsel to overcome the obstruction and obtain usable testimony. The true problem is

Hon. Thomas I. Vanaskie, Special Master
April 1, 2021
Page 2

that the witness's refusal to abide by his obligation to provide direct, responsive testimony has massively obstructed Plaintiffs and will be the subject of a motion that ZHP knows it will not be able to defend on the merits.

As ZHP is aware, although Peng Dong is the most recent, and most glaring illustration, this is a problem that has permeated other depositions as well, for example the deposition of Hai Wang. Notably, during the March 31, 2021 hearing, Plaintiffs' counsel updated the Court on this ongoing obstruction, while noting that the other conduct the Court had expressed concern about had ceased – and defense counsel did not disagree or register any complaint about the conduct of Plaintiffs' counsel.  **Plaintiffs would welcome the Court's review of the actual video of the deposition, with the transcript, which will make clear where the truth lies on this matter.**

The ZHP rendition of what occurred in the deposition on March 31, 2021 and the prior days mischaracterizes what occurred.  The first issue complained of was a series of questions asked of the witness regarding his use of two computers.  As the witness is alone in a room on the other side of the world, we simply confirmed that the computer he was using was provided by ZHP for the specific purpose of the deposition, and asked a short series of questions to confirm that he was not accessing communications during the questioning. One of the cited questions simply asked if the witness had access to real time translation of the deposition as well, as he seemed to repeatedly look to the second computer screen to the right.  There is nothing improper about such questions. In fact, during the deposition of Minli Zhang, Plaintiffs' counsel Layne Hilton asked a similar series of questions, and asked the witness to close all applications other than zoom, and to confirm that she was not communicating with anyone during the deposition.  And the defense made clear during the hearing on Monday that Ms. Hilton's conduct during the Minli Zhang deposition was exemplary.  Presumably the same standards should be applied to all counsel.

Hon. Thomas I. Vanaskie, Special Master
April 1, 2021
Page 3

  Second, the question asked of the witness as to whether he was told that it was acceptable to deliberately provided the longest possible answer to simple yes or no questions was not combative but rather important. This was not a personal attack; it was a question – and counsel did not direct the witness not to answer the question because it was appropriate. If the witness had testified that he was told to do so or even that it was acceptable, that would be significant. For context, the deposition started out with a question regarding a statement in the amended DMF filed in 2013 indicating that the solvent at issue was completely removed during the process and thus there was no need for further testing was based on the risk assessment the witness was designated to testify on. That is a simple yes or no question, or at most a question requiring brief explanation. The witness then triggered a back and forth that dragged out the issue for over twenty minutes before Plaintiffs' counsel was forced to move on in the interest of time. (Def. Ltr. Ex. B, March 31, 2021 Rough Tr., 4:17-10:24). This has been the pattern for the entire four-day deposition. The witness continues to refuse to provide direct answers, continues to advocate as if he is a lawyer, objecting to questions as hypothetical, vague, and beyond the scope of his designated topics, and even questioned the propriety of questioning him on a draft document. Plaintiffs are confident that when the full transcript and video are reviewed, the extent of the evasion and obstruction will be quite disturbing to the Court.

  Third, the questioning as to whether Peng Dong can read English was entirely appropriate and is routine in a deposition of a witness who is potentially bilingual. The specific questioning was triggered because the witness questioned the veracity of the question asked by Plaintiffs' counsel, and asked Plaintiffs' counsel to identify where in the English language document on the screen the question was referencing – so that the witness could confirm what the document said. The natural response to that question from the witness was why do you want to know after you

Hon. Thomas I. Vanaskie, Special Master
April 1, 2021
Page 4

told us you don't speak English. This raised the question of whether the witness has a better understanding of English than admitted. On the next question the witness actually read the English document and asked if the question referenced a particular portion – which the witness read from the English. On this questioning the witness admitted he does have some understanding of English and studied English in college. (Def. Ltr. Ex. B, 66:19-79:21). Thus, when Defendants represent that "Mr. Dong does not understand any English," that is not true.

The fourth example advanced by the defense is argument during the March 29, 2021 hearing, directed to Defendants' position that Plaintiffs should bear a heavy burden in order to depose designated corporate witnesses with regard to the contents of the Defendant's own English language documents – including those filed with the FDA. There is nothing improper in the argument that was presented.

There is no time to address again the request by ZHP to compel the use of pre-translated documents. That request was denied by Judge Schneider and nothing that has actually happened in the deposition (as opposed to the mischaracterization/exaggeration of what has been occurring) merits reconsideration of that Order.

As stated above, the full transcript and the video demonstrates the truth – nothing either counsel can say changes what is actually happening in this deposition. At the appropriate time Plaintiffs will file an application for relief. Unfortunately, this letter has now robbed Plaintiffs of hours of time that was intended to be devoted to preparation, as will the hearing this afternoon.

Hon. Thomas I. Vanaskie, Special Master
April 1, 2021
Page 5

Thank you for your consideration.

Respectfully,

Adam M. Slater

Cc: