1

                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY

2

3    �incorporated line▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

                                        CIVIL ACTION NUMBER:
4    IN RE:  VALSARTAN PRODUCTS
     LIABILITY LITIGATION              19-md-02875-RBK-KMW
5
                                        TELEPHONIC STATUS
6    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬        CONFERENCE

7         Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
8         Camden, New Jersey  08101
          March 31, 2021
9         Commencing at 10:00 a.m.

10   B E F O R E:            THE HONORABLE ROBERT B. KUGHER,
                             UNITED STATES DISTRICT JUDGE, AND
11                           SPECIAL MASTER THE HONORABLE THOMAS
                             I. VANASKIE
12
     A P P E A R A N C E S:
13
          MAZIE SLATER KATZ & FREEMAN, LLC
14        BY:  ADAM M. SLATER, ESQUIRE
          103 Eisenhower Parkway
15        Roseland, New Jersey  07068
          For the Plaintiffs
16
          GOLOMB & HONIK, P.C.
17        BY:  RUBEN HONIK, ESQUIRE
          1835 Market Street, Suite 2900
18        Philadelphia, Pennsylvania  19103
          For the Plaintiffs
19
          GOLDENBERG LAW, LLC
20        BY:  MARLENE J. GOLDENBERG, ESQUIRE
          800 Lasalle Avenue, Suite 2150
21        Minneapolis, Minnesota  55402
          For the Plaintiffs
22
                    Camille Pedano, Official Court Reporter
23                       camillepedano@gmail.com
                              609-774-1494
24

25      Proceedings recorded by mechanical stenography; transcript
               produced by computer-aided transcription.

```
 1   A P P E A R A N C E S (Continued):

 2       KIRTLAND & PACKARD LLP
         BY:  BEHRAM V. PAREKH, ESQUIRE
 3       1638 South Pacific Coast Highway
         Redondo Beach, California  90277
 4       For the Plaintiffs

 5
         BURSON & FISHER, P.A.
 6       BY:  ANDREW OBERGFELL, ESQUIRE
         888 Seventh Avenue
 7       New York, New York  10019
         For the Plaintiffs

 8
 9       LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
         BY:  DANIEL A. NIGH, ESQUIRE
10       316 S. Baylen, Suite 600
         Pensacola, Florida 32502
11       For the Plaintiffs

12
         DUANE MORRIS, LLP
13       BY:  SETH A. GOLDBERG
              JESSICA PRISELAC, ESQUIRE
14       30 South 17th Street
         Philadelphia, Pennsylvania  19103
15       For the Defendants, Prinston Pharmaceuticals,
         Solco Healthcare U.S. LLC, and
16       Zhejiang Huahai Pharmaceuticals Ltd.

17
         PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
18       BY:  FRANK H. STOY, ESQUIRE
         One Oxford Centre, 38th Floor
19       Pittsburgh, Pennsylvania  15219
         For the Defendant, Mylan Pharmaceuticals Inc.
20

21       GREENBERG TRAURIG, LLP
         BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
22            STEVEN M. HARKINS, ESQUIRE
         3333 Piedmont Road, NE, Suite 2500
23       Atlanta, Georgia  30305
         For the Defendants, Teva Pharmaceutical Industries Ltd.,
24       Teva Pharmaceuticals USA, Inc., Actavis LLC,
         and Actavis Pharma, Inc.
25
```

*United States District Court*
*Camden, New Jersey*

1   **A P P E A R A N C E S (Continued):**

2       CIPRIANI & WERNER, P.C.
        BY:  JESSICA M. HEINZ, ESQUIRE
3            JILL H. FERTEL, ESQUIRE
             ERNEST F. KOSCHINEG, ESQUIRE
4       450 Sentry Parkway
        Blue Bell, Pennsylvania  19422
5       For the Defendants, Aurolife Pharma LLC
        and Aurobindo Pharma USA, Inc.
6

7       HILL WALLACK, LLP
        BY:  ERIC I. ABRAHAM, ESQUIRE
8            NAKUL Y. SHAH, ESQUIRE
        21 Roszel Road
9       Princeton, New Jersey 08540
        Attorney for Defendants, Hetero Drugs and Hetero Labs
10

11  **ALSO PRESENT:**

12      Larry MacStravic, Courtroom Deputy

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   (PROCEEDINGS held via teleconference before The Honorable

 2   Robert B. Kugler, United States District Judge, and Special

 3   Master The Honorable Thomas I. Vanaskie at 10:00 a.m.)

 4          JUDGE VANASKIE:  All right.  We will begin our

 5   conference.  I'll ask counsel who are not speaking to please

 6   mute their phones and only counsel who is speaking should have

 7   their phone on audio.  And, please, for the sake of our court

 8   reporter, Camille, please identify yourself when you're

 9   speaking, certainly the first time.  Camille may know some

10   voices by now.  Identify yourself for me because I don't know

11   voices yet all that well.

12          Who will be speaking on behalf of the plaintiffs, at

13   least to start this off?

14          MR. SLATER:  Good morning, Your Honor.  Adam State on

15   behalf of the plaintiffs.

16          JUDGE VANASKIE:  All right, very well.  Who will be

17   speaking on behalf --

18          MR. SLATER:  I was going to say, there will be other

19   plaintiffs as well.

20          JUDGE VANASKIE:  I expect you'll introduce them when

21   it's their time, when it's their matter that is being covered.

22          MR. SLATER:  Oh, okay.  Thank you.

23          JUDGE VANASKIE:  Okay?  If that's all right.  Is that

24   all right?

25          And for the defense side?
```

```
 1          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.
 2  I'll certainly take the lead on an issue or two and my
 3  colleagues from the different defense firms will chime in as
 4  well and take the lead on certain arguments.
 5          JUDGE VANASKIE:  All right.  Thank you very much, Mr.
 6  Goldberg.
 7          So let's get started, then.  And I'll ask first, Mr.
 8  Slater, do you want to address the Hetero discovery status?
 9          MR. SLATER:  Your Honor, I can or if Behram Parekh is
10  on, if Mr. Parekh is on, I think he was going to address this
11  issue.
12          JUDGE VANASKIE:  Well, let's have him address the
13  issue, absolutely.
14          MR. PAREKH:  Good morning, Your Honor.  This is Behram
15  Parekh.
16          I think the letter lays out everything that, you know,
17  has been going on with Hetero.  I mean, we're getting
18  responses, they're piecemeal, we're getting productions,
19  they're piecemeal, and it still is just not complete.  I mean,
20  I don't know what else to say about it.
21          JUDGE VANASKIE:  I'm not sure what else to say about
22  it right now myself.
23          Who will be addressing this issue on behalf of Hetero?
24          MR. ABRAHAM:  Good morning, Your Honor.  This is Eric
25  Abraham from Hill Wallack.  I'm on and will be joined by Nakul
```

6

```
 1   Shah who will be addressing it.
 2          I mean, as sort of a general comment, I agree with
 3   Behram's comment effectively.  We have been pushing out as much
 4   additional response information as we can as soon as we get it.
 5   So although the word that was used was "piecemeal," that's sort
 6   of intentional on our part.  In other words, rather than
 7   waiting until every Monday or every Friday to make a
 8   production, we've been doing things as fast as we can.  And I
 9   think we've been very diligently checking our way through each
10   of the items that are subject to discussion.
11          I also agree that we're not yet complete.  We are
12   working our way through and, you know, Mr. Shah will give Your
13   Honor an example; but, you know, we satisfy the requests and
14   then plaintiffs, as is their right, give us a follow-up request
15   which we then work to complete; hence, the process that we're
16   in.
17          So with that, I'm going to turn this over to Mr. Shah.
18   He can give you some very specific information.
19          Thank you, Judge.
20          JUDGE VANASKIE:  Okay.
21          MR. SHAH:  Good morning, Your Honor.  This is Nakul
22   Shah from Hill Wallack on behalf of the Hetero defendants.
23          We received a letter from --
24          JUDGE VANASKIE:  Good morning.
25          MR. SHAH:  Good morning, Your Honor.
```

1          We received a letter from plaintiffs' counsel dated

2    March 29th that set forth the remaining areas of documents that

3    are yet to be produced.  We've been in constant communication

4    with our client in order to obtain these additional documents.

5          The plaintiffs have set forth, you know, very specific

6    lists of the documents that remain and we will endeavor to

7    collect all of the remaining documents as soon as possible and

8    produce them to plaintiffs in the same manner that we've been

9    doing thus far.  We've been making document productions or the

10   transmittal of letters, essentially, every day since our last

11   case management conference before Your Honor, and we will

12   continue to diligently work to address all remaining issues.

13         And we just want to note that this list has been

14   significantly narrowed since we began this conversation before

15   Your Honor with regard to discovery deficiencies, and it seems,

16   pursuant to plaintiffs' last letter, that there's a very narrow

17   set that remains and we will work to complete that set.

18         JUDGE VANASKIE:  All right.  Well, that's very

19   encouraging to hear.

20         Anything else from the plaintiffs on this issue?

21         MR. PAREKH:  Your Honor, the only thing that I would

22   add is -- I do agree with counsel for Hetero that they have

23   been making productions.  The concern that we have, I think, is

24   what we laid out toward the end of our supplemental letter,

25   which is, they're making productions of documents that we

1    specifically identified as missing but that's really not the

2    way this should work.  I mean, the way this should work is that

3    they should have the persons that looked for, found these

4    documents and produced these categories of documents and

5    responses to our Rule 34 requests and what we're concerned

6    about is that what about the documents that were not missing --

7    I mean that we don't know were missing because we don't know

8    about them.  We don't have any assurance at this point that

9    Hetero just found the type of, you know, interviews of their

10   clients, you know, digging out information and what we're

11   worried about is that we're going to end up here in sort of

12   what happened with Aurobindo, hopefully in a lesser way, where

13   once we get into taking depositions that we will find out that

14   there are categories or areas of documents that have not been

15   produced and, hence, we'll be back before Your Honor.

16           MR. SLATER:  Your Honor, it's Adam Slater.  If I could

17   just add to that.

18           JUDGE VANASKIE:  Go ahead, Mr. Slater.

19           MR. SLATER:  I think that from seeing Your Honor's

20   order the other day, I think that, you know, in the vein of

21   that, I think there has to be a point where this comes to an

22   end, because, as Mr. Parekh said, Hetero only produces what we

23   figure out is missing from either references in one document to

24   something that we don't have or an index that refers to

25   something that we don't have, and we don't even have all the

1  indexes.  We still don't have Hetero's list of the databases

2  and applications, construction of data sources and SharePoints,

3  et cetera, that they were supposed to establish when they began

4  their productions or began preparing for their productions;

5  and, as we said in the letter, a serious number of important

6  people didn't even get litigation hold letters, according to a

7  disclosure that was made the other day.

8         So, when you put all that together and the fact that

9  Hetero was obligated to complete its production by the end of

10  November and represented on the record that their productions

11  were substantially complete at that time, it creates a

12  situation where I think at some point, and I think we're very

13  close, if we're not there or past it already, something has to

14  be done to have some sort of a bite on this to put this to an

15  end.  Otherwise, as Mr. Parekh said, we're going to keep

16  getting documents unless and until we can't prove that

17  something else is missing and then it will end.  And there's no

18  way for anybody in this litigation to be confident in any way

19  that we're going to get all of the responsive documents that

20  should have been produced over four months ago.

21         MR. ABRAHAM:  Judge, this is Mr. Abraham.  May I

22  respond?

23         JUDGE VANASKIE:  You certainly may, Mr. Abraham.

24         MR. ABRAHAM:  Thank you.  For the record, Eric

25  Abraham.

1          I don't fault plaintiffs for having that concern that

2     Mr. Slater expressed.  Were I in his shoes, I would be

3     similarly concerned.

4          What I can say, though, is we have been as diligent as

5     we can be and we've elevated this to the level of our general

6     counsel who is working with us on a day-by-day and sometimes

7     hour-by-hour basis.  We've produced I think 13 rounds of

8     documents between, let's say, June of last year through the end

9     of discovery, and what started us on this most recent effort to

10    complete discovery was a meet and confer with plaintiffs'

11    counsel over the existence of SOPs.  And we got a very specific

12    list of SOPs that they were unable to identify or find in

13    the -- through the productions that we made previously; not

14    that they weren't there, but plaintiffs' counsel weren't able

15    to find them.  So we agreed that we would make a supplemental

16    and specific productions of those SOPs on the ones that they

17    identified.

18         After they identified those, we produced them.  They

19    then found other references to different SOPs and asked us for

20    those, which we're gathering and producing.

21         But to Mr. Slater's point about how this has to come

22    to an end, we agree; but that's a two-edge sword.  In other

23    words, we are producing and meeting every single request that

24    they make of us and we'll continue to do so; but as long as

25    they continue to follow up with SAMs that had previously been

1  not the subject of discussion and ask us for additional

2  information, we're going to have to keep replying to them.

3           So if there's going to be a cutoff at which Hetero has

4  to complete its production, then there has to be a companion

5  cutoff for plaintiffs' ability to keep asking us for additional

6  things that they identify as they're unable to find them.

7           Personally, I don't think we're there yet.  I think

8  we've been conferring and working well together.  Our meet and

9  confers are not contentious, we work cooperatively with each

10  other, we try and understand precisely what it is that they may

11  need, and we try and explain to them precisely what it is that

12  we can get them, and I think we're close.

13           JUDGE VANASKIE:  Yes.  Let me just say on this point,

14  I have a couple of observations that I'm hopeful will help.

15           Number one, you all realize that there is no such

16  thing as perfect production, and the test that I would apply is

17  reasonable efforts, reasonable diligence.

18           Now, having said that, because of the mass of

19  information that is involved, you know, what search

20  methodologies you're employing, what eDiscovery vendor you're

21  using would be factors that go into whether or not reasonable

22  diligence has been exercised here; but I do agree that at a

23  minimum, you should be identifying, this is directed to the

24  defense side, the applications, databases, SharePoints, et

25  cetera, that have been searched for, need yet to be searched,

1  to provide some level of assurance that reasonable diligence

2  has, indeed, been exercised so that it is likely that the

3  overwhelming majority of responsive documents have been

4  produced.

5          MR. ABRAHAM:  We agree.  This is Mr. Abraham, and we

6  agree.

7          JUDGE VANASKIE:  Okay.  Do we need any other

8  discussion on this point, Mr. Slater?

9          MR. SLATER:  I don't think we do today.  I fear that

10 we're going to need to later because as we previewed in the

11 letter, now that we know that a large number of people never

12 got litigation hold letters, it likely explains why there are

13 no emails or supporting documents about the redrafts of

14 important documents that we do have.  I expect we will,

15 unfortunately, be back with Your Honor with probably a more

16 serious issue once the depositions get going because it seems

17 apparent that important documents don't exist in the

18 production.

19         JUDGE VANASKIE:  All right.  Well, we'll have to

20 address that issue when we get there.  We're not at that point

21 yet.  And that's all I can say on this matter right now.

22         All right.  Anything else on Hetero?

23         MR. SLATER:  No, Your Honor.

24         MR. ABRAHAM:  This is Mr. Abraham.  Not from Hetero's

25 point of view.  Thank you, Your Honor.

```
 1            MR. SLATER:  Thank you.

 2            JUDGE VANASKIE:  All right.  The next item on

 3    plaintiffs' letter is the Aurobindo discovery.

 4            Who will be addressing this issue on behalf of

 5    plaintiffs?

 6            MS. GOLDENBERG:  Good morning, Your Honor.  This is

 7    Marlene Goldenberg.

 8            JUDGE VANASKIE:  All right.  Good morning.

 9            Are you ready to proceed, Ms. Goldenberg?

10            MS. GOLDENBERG:  I am, Your Honor.

11            So the guidance you just provided is helpful and I

12    think a lot of what we put in here bears on what you just

13    addressed.

14            We remain concerned that we still don't know what

15    non-custodial sources of data are out there, what's been

16    searched, and since the conference last week, we've received,

17    except for a small production this morning, up until yesterday,

18    there were 46 new documents that had been produced.  And so the

19    progress that we keep hearing about from Aurobindo just doesn't

20    seem to be happening.  And so we've asked Your Honor to impose

21    the April 9th -- or formalize the April 9th deadline as the

22    final date when at least we can get what you had called the

23    reasonable effort or reasonable diligence discovery produced by

24    Aurobindo.  And I take that to mean that we should be getting

25    full productions from all responsive documents that were
```

1  located from custodial files, from shared drives or any other

2  sources that have since been identified.  So that's our first

3  issue.

4          JUDGE VANASKIE:  All right.  And who will be

5  addressing this issue on behalf of Aurobindo?

6          MS. HEINZ:  Good morning, Your Honor.  This is Jessica

7  Heinz.

8          JUDGE VANASKIE:  Good morning, Ms. Heinz.

9          MS. HEINZ:  Good morning, Your Honor.

10          I think Mrs. Goldenberg was a little all over the

11  place there with her position on this first issue, but if I

12  think I'm hearing her correctly, she's talking about an April

13  9th deadline for these custodial files from Aurobindo Pharma

14  Limited.

15          We have received all the custodial files from our

16  client.  They are in the process of being ingested and we're

17  going to start reviewing them as soon as we can and get those

18  out to the plaintiffs as soon as we can.  I offered to meet and

19  confer with Marlene about a production deadline, possibly

20  rolling deadline; she refused and demanded that we produce

21  everything by April 9th.

22          We're looking at 11 custodial files that we just

23  received.  I don't have an official count yet but it's my

24  estimate that it's going to be millions of documents, millions

25  of pages of documents to review.  It's not going to be possible

1    to do that and review for confidentiality, attorney-client

2    privilege, work product and make redactions all by April 9th,

3    which is why I was hoping we could have a meet and confer with

4    them, but they refused.

5            I don't think that this is ripe for the Court to issue

6    an order right now.  I'm hoping that we can -- that the

7    plaintiffs will work with us on this because I can assure you

8    that we are making -- we are making diligent efforts to produce

9    these to the plaintiffs as soon as possible, as I've said

10   multiple times in previous conferences, before these

11   depositions take place.

12           MS. GOLDENBERG:  Your Honor, I'll just respond briefly

13   that --

14           JUDGE VANASKIE:  Please.

15           MS. GOLDENBERG:  I'm sorry.

16           JUDGE VANASKIE:  Go ahead.

17           MS. GOLDENBERG:  This actually is an accommodation for

18   Aurobindo.  If you'll recall, Your Honor has previously

19   required Aurobindo to produce all of their documents by

20   mid-March and we had given them a three-week extension.

21   Unfortunately, it wasn't used right and, you know, documents

22   weren't sent via FTP and it sounds like now they have been, but

23   we're two depositions down, we've got another one coming up and

24   many more closely thereafter and we can't let this go on

25   forever and we just need the documents.  I don't know what else

1    to say.

2           MS. HEINZ:  Your Honor, if I may, this is Jessica

3    Heinz.

4           JUDGE VANASKIE:  You may.

5           MS. HEINZ:  So far from the custodial files we have

6    produced over 200,000 pages of documents and we are preparing

7    to produce, I'm looking at it, it's going to be over 70,000

8    documents, which is going to equate to probably hundreds of

9    thousands of pages by tomorrow.  We are making these

10   productions, substantial productions, and we're continuing to

11   do so.  We've done this all in the past month and we're going

12   to continue to stay on top of this and work as quickly as

13   possible, as we have repeatedly assured the plaintiffs and the

14   Court.  And we hope that we can work this out with the

15   plaintiffs so that we can agree to a reasonable deadline within

16   the timeframe, even if it involves --

17           (Telephonic interruption.)

18           MS. HEINZ:  Can everybody still hear me?

19           JUDGE VANASKIE:  Now we can.  Somebody must have put

20   us on hold.  So you're going to have to repeat what you were

21   saying.

22           What did you get last --

23           MS. HEINZ:  I think I was just explaining, you know,

24   that we hope we can -- we're confident that we can get these

25   done and to the plaintiffs in time for the depositions.  We may

```
 1   have to move some depositions around but we are working
 2   diligently to get these documents out as quickly as we can,
 3   having just ingested them yesterday.
 4           JUDGE VANASKIE:  All right.  Yes, I know it's a
 5   Herculean task that you're facing and I also know we've got
 6   deadlines that are looming that will come up very fast.  All I
 7   can say at the present time is urge you to continue to work as
 8   hard as you can to get these documents produced.  I know you
 9   will.
10           I'm not going to impose a hard-and-fast deadline now
11   based upon the representations that have been made to me today.
12   And, hopefully, by the time of our next conference there will
13   have been substantial progress made, if not -- or even a
14   complete production made.
15           This does have to come to an end and I know that it's
16   been delayed by the absence of those hard drives.  They are now
17   available, I take it, through FTP transfer; is that correct?
18           MS. HEINZ:  That is correct, Your Honor.
19           JUDGE VANASKIE:  And so I expect things will start to
20   move now more quickly.  But that's all I can say on the issue
21   right now, Ms. Goldenberg.
22           Did you want to address the privilege log items, too?
23           MS. GOLDENBERG:  Yes, Your Honor.  I'm actually going
24   to call on Andrew Obergfell who is a little bit closer to this
25   issue than I am.
```

```
1              JUDGE VANASKIE:  All right.

2              MR. OBERGFELL:  Good morning, Your Honor.  This is

3   Andrew Obergfell for the plaintiffs.

4              So we've been meeting and conferring regarding the

5   privilege log issues and have made some progress.  You know, I

6   think there's some global issues that still exists with regard

7   to, one, the work product designations in the privilege log and

8   then some of the logs regarding attorney-client privilege.

9              On the question of work product, you know, I think --

10  and the position that we have taken is in one of the previous

11  conferences, you know, Judge Schneider pretty much pointed us

12  to his In re Riddell decision in, you know, kind of analyzing

13  some of the work product issues, and, you know, there is

14  essentially a two-part test, you know, that the material has to

15  be prepared, you know, in preparation for litigation and for no

16  other purpose, and there's many entries, you know, on the log

17  that just talk about general communications regarding, you

18  know, things -- warning letters from the FDA and things that

19  would have had to have been responded to anyway, you know, and

20  we think that those are not properly protected under work

21  product.

22             And in terms of the attorney-client privilege issues,

23  kind of the same issue, just generalized submissions on a log

24  talking about, you know, litigation-related communications, but

25  our position is that the law is a bit more nuanced than that.
```

1   You know, in the *3M* case, you know, for example, it's explained

2   that, you know, there can be attorney-client protection between

3   non-attorneys but there has to be a nexus between the legal

4   advice being sought or rendered.  Just because there's two

5   employees talking about things related to litigation, you know,

6   doesn't mean that it's automatically protected under attorney-

7   client privilege.

8        So some of the discussions have been about, you know,

9   kind of drilling down on the specificity of the logs so we can

10  understand, you know, whether these are really entitled to

11  probation or not.  So we've asked certain things to be de-

12  designated, some of which have and some of which are still a

13  cause for concern.

14       JUDGE VANASKIE:  Well, how do we get this matter in

15  the position that decisions can be made?  Are you still meeting

16  and conferring?  I'm trying to understand where it's at right

17  now.

18       MR. OBERGFELL:  Sure.  So in the last discussion that

19  I had with counsel for Aurobindo, you know, certain documents

20  had been de-designated, some of which had been de-designated as

21  to privilege but not as to work product.  So I would say that

22  probably the easiest way to -- to resolve it is, you know,

23  perhaps we can, you know, just have one more discussion with

24  them, you know, in terms of the things that are still at issue

25  and then we can put something in front of the Court as to the

1    submissions specifically that we think are at issue.

2            JUDGE VANASKIE:  All right.  I think that's fine.

3    Continue to work at it and hopefully it will be resolved by the

4    next conference; or if not, it will be in a position where you

5    can present to me an appropriately supported request or request

6    for an *in camera* review of the documents that have been

7    withheld.

8            What universe are we talking about here in terms of

9    the number of documents?  I had it down, according to my notes,

10   to a fairly small number.

11           MS. FERTEL:  Good morning, Your Honor.  This is Jill

12   Fertel for Aurobindo.

13           I believe that the remaining documents that remain

14   designated as attorney-client and work product privilege is at

15   16.  We de-designated 23 documents and 28 of those documents

16   have -- additional documents have been designated solely as

17   work product documents.

18           Additionally, as was indicated, we have discussed what

19   would be most helpful for trying to resolve the remainder of

20   these documents.  We anticipate having an edited privilege log

21   to plaintiff shortly, that's almost completed, in order to see

22   if that can resolve the disputes with regards to the remaining

23   16 documents that are attorney-client privilege and to be most

24   specific as possible regarding the 28 documents that remain

25   work product privilege.

```
 1          JUDGE VANASKIE:  All right.  Good.  It is not a huge
 2   number, obviously, and I hope that you can work through it so
 3   nothing is required in terms of court intervention.  And so,
 4   you know, continue to meet and confer but let's see if you
 5   can't, let's make sure that the matter gets presented in an
 6   appropriate fashion at our next conference.
 7          So, the next issue I have with respect to Aurobindo
 8   were purchases from ZHP.  Where does that stand right now?
 9          MS. GOLDENBERG:  Your Honor, this is Marlene
10   Goldenberg.
11          We had a meet and confer with Jessica Heinz on this
12   issue on Monday.  They, at least to my knowledge, have not yet
13   agreed to produce information on this but we gave Ms. Heinz
14   information about the types of documents we were looking for;
15   and at this point I'm asking the Court to order them to turn
16   them over to the extent they're not willing to do so on their
17   own.
18          JUDGE VANASKIE:  All right.
19          MS. HEINZ:  Your Honor -- sorry, I apologize.
20          JUDGE VANASKIE:  Ms. Heinz.
21          MS. HEINZ:  Your Honor, we are going to turn over many
22   responsive documents that we have.  We're not refusing to turn
23   over responsive documents.
24          I received several follow-up questions from Ms. Heinz
25   [sic] regarding this particular information.  She had asked me
```

1  three specific questions regarding whether Aurobindo had run

2  any tests on the product that they had purchased from ZHP and

3  what they had done with it, because what I told them was

4  Aurobindo, they purchased some API from ZHP but it was not sold

5  in the U.S., it was not used in any product sold in the U.S.

6  It was used for exhibit batches that were submitted to the FDA.

7  And Aurobindo has never sold any other manufacturer's products

8  in the U.S.

9          So she asked me to get responses to these few

10  questions that she asked, which I am currently working on

11  doing.  And I am hopeful that we can put this issue to bed

12  without having to bother the Court with it.

13          JUDGE VANASKIE:  All right.  Very well.

14          Anything else on this, Ms. Goldenberg?

15          MS. GOLDENBERG:  No, Your Honor.  I mean, again, our

16  preference would be that, you know, there be a court order for

17  Aurobindo to turn these over; but if Your Honor wants to hear

18  more, then we can certainly come back to you once Ms. Heinz

19  provides the information that we've been asking for for a week

20  now.

21          JUDGE VANASKIE:  I will refrain from issuing an order

22  to give you all an opportunity to get this worked out without

23  an order in place.

24          MS. GOLDENBERG:  Sure.

25          JUDGE VANASKIE:  I think one other issue I had here

```
 1   dealing with privileges is the -- I shouldn't say with

 2   privileges, with respect to failure of preservation --

 3           MS. GOLDENBERG:  Yes.

 4           JUDGE VANASKIE:  -- or the absence of litigation

 5   holds.  Did you want to address that, Ms. Goldenberg?

 6           MS. GOLDENBERG:  I do, Your Honor.

 7           I want to begin by directing Your Honor, if you need

 8   it as a reference, to the November 20, 2019, transcript where

 9   this issue was first addressed because it's cited in Ms.

10   Heinz's section of the defendants' letter brief.  Around Page

11   74 is where that discussion took place.  And the long story

12   short, what Judge Schneider said was, you know, these don't

13   need to be turned over at this point in time because there's no

14   evidence of spoliation or failure to preserve; but that request

15   was denied without prejudice in case the plaintiffs were able

16   to uncover some evidence that that existed.

17           And as you can see from the two transcripts that we

18   sent along with our letter, as well as the letter from Ms.

19   Heinz that listed the individuals who received litigation holds

20   in this case, about half of the custodians got litigation hold

21   letters and the other ones didn't.  And we've heard testimony

22   now from two Aurobindo witnesses who each testified that they

23   had never heard of a litigation hold, they've never received

24   one and they've never been asked to save documents for this

25   case.
```

```
 1            We've also introduced exhibits at depositions already
 2   that show that documents were -- emails, for example, that were
 3   found in one custodian's file were produced but there wasn't a
 4   corresponding copy of that document in another custodian's file
 5   who was also on that email.  So we know we're missing
 6   documents.  And we now believe that we have a good-faith basis
 7   to ask for these limited things that are in our agenda letter
 8   and those are the five items at the bottom of this section.
 9            JUDGE VANASKIE:  All right.  Well, I am at the bottom
10   of that section right now.
11            MS. GOLDENBERG:  I'm happy to read them to you, too,
12   if that's helpful.
13            JUDGE VANASKIE:  There's no need to read them.  I have
14   them.
15            And let's hear from Aurobindo.
16            MS. HEINZ:  Hi, Your Honor.  It's Jessica Heinz again.
17   I'm actually joined on the call by my colleague, Ernie
18   Koschineg, who may have more to add on this topic after I
19   finish.
20            Judge, the point -- the plaintiffs need to have
21   specific evidence of spoliation in order for the litigation
22   hold document retention policies to be discoverable.  The fact
23   that discovery and document productions are ongoing belies
24   their position that we're not turning everything over.  The
25   Aurobindo parties have made many substantial productions
```

1    throughout this litigation, and this month alone they produced

2    approximately nine volumes of data, at least, including one

3    today.  They're also, as I mentioned earlier, in the process of

4    preparing another production to go out tomorrow that's going to

5    be, my anticipation is, hundreds of thousands of document --

6    hundreds of thousands of pages of documents.

7         Plaintiffs' position seems to be based on these

8    depositions that they took recently of two fact witnesses.  I

9    can't say for sure exactly because despite our requests for the

10   plaintiffs to send us an unredacted copy of their position

11   statement, they still have not done so.  But simply put,

12   they're misrepresenting that this is new information.

13        We served a letter telling them back in December of

14   2019 who received the litigation holds.  They knew back then,

15   this is not new, and they haven't presented any evidence that a

16   single document has been destroyed or deleted, and that's

17   necessary here.  They have no basis whatsoever for the relief

18   they're asking.

19        JUDGE VANASKIE:  All right.  Ms. Goldenberg?

20        MS. GOLDENBERG:  Yes, Your Honor.

21        I guess I would just say that the fact that litigation

22   holds weren't sent before and that they still haven't been sent

23   now doesn't make our request less valid, it just makes it all

24   the more stark and, I guess, disturbing that Aurobindo's been

25   aware for so long that these are relevant individuals that have

```
 1   been court-approved custodians, and that in spite of all of
 2   that information, no followup was ever done to make sure that
 3   evidence was preserved in these custodial files.  And we have
 4   made a showing that information is missing, and the fact that
 5   Aurobindo continues to make productions doesn't mean that
 6   information wasn't lost by failing to preserve that evidence.
 7   And, you know, we've cited case law from the Actos litigation
 8   in our letter brief but spoliation clearly encompasses the
 9   failure to preserve evidence and that's, I think, what we're
10   seeing here.
11          JUDGE VANASKIE:  Well, what evidence have you shown
12   that documents have been lost?
13          MS. GOLDENBERG:  Your Honor, I'm happy to supplement
14   with this information, but what we did at the last two
15   depositions was introduce two exhibits that were compilations
16   of all of the metadata that we had received for the custodial
17   files of the two individuals who've been deposed.  What we
18   found when we looked at the metadata was that every single
19   document -- and when I say every single document, there wasn't
20   one exception -- that was produced to us from these custodial
21   files came from that custodian's Outlook file.  That means we
22   got no shared drive data.
23          And in addition to the fact that only emails were
24   produced, again, we also found information where we had emails
25   that multiple custodians were on but only one custodian
```

1    actually had it produced in their file.  And the ESI protocol

2    does actually provide a way of dealing with this and to the

3    extent multiple emails exist that are exact duplicates of one

4    another, there should have been a note in the metadata that

5    multiple custodians were in possession of that email.  That's

6    not the case for those documents.  And so we already know that

7    we're missing something.

8         JUDGE VANASKIE:  I'm just hesitating for a moment in

9    terms of deciding how best to get this matter presented.

10        You've cited some cases in your March 30th letter, Ms.

11   Goldenberg, and I've been cited to other cases dealing with the

12   showing what needs to be made with respect to production of

13   preservation letters.

14        If you're of the view that there has been a failure to

15   preserve evidence, should you not be required to present that

16   by way of an appropriate motion as opposed to making it in

17   these conferences, these case management conferences?

18        MS. GOLDENBERG:  Your Honor, I have taken a look at

19   the relevant case law on this issue and I agree with you that

20   if we were asking for any type of sanction for spoliation that

21   the appropriate way to do that is by way of motion.  We're not

22   there yet and you'll notice that we haven't asked for that in

23   our letter.

24        What the case law, and specifically what happened in

25   the Actos litigation, shows is that we need to be able to build

 1   a record of spoliation and these are the documents that will

 2   allow us to do that, and these are the similar circumstances

 3   under which other courts have granted, for example, the

 4   depositions of 30(b)(6) witnesses on document preservation

 5   issues and that's why, you know, at this point we're only

 6   asking for the necessary discovery we need in order to better

 7   understand what might have been destroyed.  But I think at this

 8   point all we need to do is make a showing that there is a

 9   problem and I believe we've done that.

10              JUDGE VANASKIE:  All right.

11              MS. HEINZ:  Your Honor --

12              JUDGE VANASKIE:  Let me ask a questions.  Go ahead.  I

13   was going to ask you a question, Ms. Heinz, but go ahead.

14              MS. HEINZ:  Sure.  I just wanted to note for the Court

15   that we had a meet and confer with Mrs. Goldenberg on Monday

16   about a lot of these discovery issues and we were able to

17   work -- as you can see in the position statements, we were able

18   to work through a lot of stuff; and then at the end of the

19   call, they brought up for the first time that they want this

20   30(b)(6) deposition, and it's coming out of nowhere for the

21   first time on Monday, and here we are Wednesday morning at the

22   conference and they're seeking an order on it.  I mean, this is

23   just -- there's got to be -- there's rules of procedures that

24   they have to follow, and I think Your Honor is right to ask

25   that a motion be filed.  I think that's proper procedure here.

```
 1            JUDGE VANASKIE:  Well --

 2            MS. GOLDENBERG:  Your Honor, if I could just briefly

 3   respond to that.

 4            JUDGE VANASKIE:  Yes, let me respond to Ms. Heinz

 5   first.  Thank you.

 6            Is there an objection to providing document retention

 7   policies or document preservation policies and practices that

 8   were in place at Aurobindo during the relevant time period?

 9            MS. HEINZ:  Actually, Your Honor, we are in the

10   process of producing several standard operating procedures

11   regarding document control and good documentation practices and

12   we have already produced several standard operating procedures

13   on our Oracle database regarding backup and data recovery.

14   Those were produced I believe in 2020.

15            JUDGE VANASKIE:  All right.  Now go ahead, Ms.

16   Goldenberg.

17            MS. GOLDENBERG:  Your Honor, those, to my

18   understanding, are not actually document retention policies,

19   those are standard operating procedures.  Retention policies

20   are different and so we don't have them at this point.  I'm not

21   sure if we got a clear answer to your question.

22            MS. HEINZ:  Your Honor, we're not objecting to

23   producing --

24            JUDGE VANASKIE:  Ms. Heinz, go ahead.  I'm sorry.

25            MS. HEINZ:  I apologize, Your Honor.
```

```
 1          JUDGE VANASKIE:  No, you can proceed.
 2          MS. HEINZ:  We're not refusing to produce the document
 3  retention policies.
 4          JUDGE VANASKIE:  All right.  So I'm looking at this
 5  list of five items and I think the way I read one, two and
 6  three on your list, Ms. Goldenberg, is it's basically the same
 7  thing, whether it's a --
 8          MS. GOLDENBERG:  Your Honor --
 9          JUDGE VANASKIE:  -- document retention policy or a
10  document preservation or document -- or data deletion policies,
11  aren't they all the same thing?
12          MS. GOLDENBERG:  Your Honor, it might be a company-
13  specific inquiry and so I'm not sure how Aurobindo has this,
14  but the reason that I listed them in three different forms is
15  because sometimes companies will have, for example, an auto
16  delete policy on emails and that might be distinct from the
17  document retention policy that exists for, say, testing data in
18  one of their systems.
19          JUDGE VANASKIE:  I understand that.  But what we're
20  talking about overall here is what policies do you have in
21  place that result in either the preservation or the loss of
22  data, correct?
23          MS. GOLDENBERG:  Correct.
24          JUDGE VANASKIE:  All right.  Well, you know, I believe
25  they should be produced.  I think I've heard Ms. Heinz say that
```

1  they will be produced.  Is that accurate, Ms. Heinz?

2          MS. HEINZ:  That's correct, Your Honor.

3          JUDGE VANASKIE:  Okay.  All right.  The next item --

4  and so I've covered Items 1 through 3.  Item 4 deals with the

5  litigation holds that were sent.

6          And what's your position on the litigation holds that

7  were sent out, Ms. Heinz?

8          MS. HEINZ:  Early on in the litigation, I think Mrs.

9  Goldenberg referenced the November, 2019, conference with Judge

10  Schneider.  This issue came up and the -- Judge Schneider said

11  that they're not entitled to copies of the litigation holds,

12  and all we had to produce were the recipients -- a list of the

13  recipients, who sent them out and when they were sent out,

14  which we did back in December of 2019.

15          If you want to have good cause for a request for

16  litigation holds, you need to have evidence of spoliation and

17  they just have not presented anything here -- hello?

18          JUDGE VANASKIE:  Yes, I'm still here.  Yes.  Can you

19  hear me?

20          MS. HEINZ:  Yes, thank you.

21          I mean, simply put, there's just no evidence

22  whatsoever that's been presented here that shows there's been

23  any destruction of evidence and, therefore, they're not

24  entitled to the litigation holds under the law.

25          I mean, if the Court is willing to hear more on this,

1   we're happy to brief this issue.  We think that would be proper

2   since this is just being raised with us for the first time

3   since last Thursday.  But that is our position, that we should

4   not have to turn over the litigation holds based on the

5   previous decision by Judge Schneider and the fact that there

6   has been no evidence whatsoever presented to establish any good

7   cause.

8           JUDGE VANASKIE:  All right.  Ms. Goldenberg, anything

9   else on this issue?

10          MS. GOLDENBERG:  Nothing that I haven't already said,

11  Your Honor.  Obviously, we disagree, and I think I've already

12  set forth my reasons why.

13          JUDGE VANASKIE:  I will not order the production of

14  litigation hold letters yet, absent a more concrete showing of

15  the loss of evidence.  At least that's my determination as of

16  this time.

17          You've asked, Ms. Goldenberg, that the Court conduct a

18  hearing after April 9th to determine whether there's been

19  prejudice.  How would you anticipate that hearing proceeding?

20          MS. GOLDENBERG:  Your Honor, that's a good question

21  and one where I hate to do this but, you know, we saw your

22  order the other day and we wondered what you had in mind.  But

23  it struck me that this was one of the situations that fit

24  within the circumstances contemplated by the order you put out

25  the other day, and, you know, I hear you today that you want a

1  showing of documents being lost and you want a showing of

2  prejudice.  How that happens is really up to the Court and

3  we're happy to do whatever you want, but we wanted to make sure

4  that we met whatever burden the Court felt we needed to meet in

5  order to establish this.

6        JUDGE VANASKIE:  Understood.  I guess that goes in the

7  category of be careful what you ask for.

8        I will -- yes, we'll defer with respect to an

9  evidentiary hearing until after more production has occurred;

10 and to the extent you can show the loss of documents, the loss

11 of data, then if you make that showing, then we'll reconsider

12 the question of production of litigation hold letters.  All

13 right?  So we'll just have to --

14       MS. GOLDENBERG:  Understood.

15       JUDGE VANASKIE:  -- defer on this.

16       Anything else, Ms. Heinz?

17       MS. HEINZ:  No, thank you, Your Honor.

18       JUDGE VANASKIE:  All right.

19       MS. GOLDENBERG:  Your Honor, the last item on our wish

20 list, I guess you could call it, is the 30(b)(6) deposition of

21 a company witness who could testify about those three issues.

22       JUDGE VANASKIE:  Yes, and I'm not going to order the

23 30(b)(6) deposition at this time.  Again, I want to see what

24 you present in terms of actual loss of evidence before making

25 that determination.  I think it falls in line with I don't have

*United States District Court*
*Camden, New Jersey*

1    enough information in front of me right now to make a

2    determination that litigation hold letters should be produced.

3    So I will wait and see what you produce in that respect; and if

4    it's substantial, then I will order a 30(b)(6) deposition.

5             MS. GOLDENBERG:  Understood.  Thank you, Your Honor.

6             JUDGE VANASKIE:  Anything else on this issue?

7             MS. GOLDENBERG:  No.

8             MS. HEINZ:  Nothing further from the defendants.

9             JUDGE VANASKIE:  I think we're ready to proceed to

10    Mylan.  And I did receive, just before the conference call

11    today, a letter from plaintiffs sending me the warning letter

12    that was issued to Mylan in connection with the inspection of

13    Unit 7, this is the Unit 7 issue; and I also received an email

14    from Mr. Trischler explaining that he is in a deposition and

15    unavailable to argue this.  I wrote back and said that I will

16    not entertain argument today on what I'll call the Unit 7

17    issue.  In fact, I have an order partially drafted that I hope

18    to complete today, if not today, tomorrow, that will decide the

19    matter.  So I don't intend to listen to anything else with

20    respect to Unit 7; and it would be unfair to Mylan to hear

21    argument from the plaintiffs' side, given the unavailability of

22    Mr. Trischler.

23             So that leaves us with the Mylan discovery matter, the

24    withheld nonresponsive documents.

25             I did email counsel for Mylan this morning explaining

1    that I was not able to access the documents that were sent to

2    me.  I was able to access the link to their document repository

3    but when I download the documents, number one, they are all of

4    the same file size, which is a red flag in and of itself; and

5    when I try to open the documents I get an error message.  And I

6    believe Mylan is working on that.  I got a response email that

7    said they're talking to their discovery vendor now.

8            And so I guess that's a long introductory statement to

9    this particular issue, but is there anything else to discuss

10   today with respect to Mylan discovery from plaintiffs' side?

11           MR. HONIK:  Good morning, Your Honor.  This is Ruben

12   Honik.  Like Mr. Trischler, I, too, am in the same deposition

13   as he is.  They are 30(b)(6) witnesses.  Mr. Davis is

14   questioning as we speak but I stepped out to cover this with

15   the Court.

16           I'm grateful that we'll soon be receiving some

17   direction along with an order on the Unit 7 issue.

18           Your Honor, the letter that we submitted to the Court

19   on the -- what I'll refer to as the withholding nonresponsive

20   document issues, we tried to flesh out and give the Court some

21   insight into the landscape.  And what I mean by that is, while

22   it's true that Your Honor is now poised to look at roughly

23   4,000 -- well, not 4,000 documents but a cross-section or a

24   sample of that, this issue really pertains technically to a

25   much larger issue; and that is, if you stop to consider, as we

1    set out in our letter to the Court, that there are roughly

2    283,000 total documents produced to us by Mylan, 35 percent of

3    them have been withheld as not responsive.  And I'm just

4    foreshadowing the unfortunate likelihood that if Your Honor has

5    a method for reviewing 4,000 potential documents on this issue,

6    I'm afraid to say that it may grow larger.  I hope that's not

7    the case but I fear that it will be.

8        And as I've listened to the arguments this morning,

9    well, presentations, concerning Aurobindo and Hetero, I'm

10   struck by something that I want to put words to.

11       If these production issues were occurring now and the

12   plaintiffs were first starting depositions of the defendants

13   this summer, I would be concerned because, of course, the

14   sequence that should normally occur is that productions by one

15   side should be complete, there should be ample time for the

16   receiving party to analyze them, to give them to our experts,

17   to assist with reports and the preparation of outlines for

18   witnesses.

19       The problem that we have here, Your Honor, and I know

20   it's obvious to the Court, is that we're already deep into

21   these depositions.  We're now taking, for example, today, the

22   third witness from Mylan, we've taken, I think, at least two

23   Aurobindo witnesses, and we are doing so without the benefit,

24   frankly, of withheld documents or documents that have never

25   been produced or, as I know full well myself, documents that I

 1  know have been destroyed that were at Aurobindo, and we'll

 2  circle back and demonstrate that.  But the point is we're

 3  already in the middle of depositions.  We already have

 4  deadlines to submit expert reports.  And all of that really is

 5  contingent on our ability to conduct depositions based on a

 6  fulsome production of documents.

 7         So I apologize if I sound like Doctor Doom but the

 8  plaintiffs are really over a barrel here.  And what we've tried

 9  to lay out for you with each of these productions is not only

10  where the problems are but to, you know, make obvious that

11  we're handcuffed here in our ability to successfully complete

12  these depositions.

13         I hope we can address this in a manner that allows us

14  to do what we need to do on our side but the problem is that we

15  now have this deeply compressed schedule that is imposing a

16  substantial burden on the plaintiffs.

17         JUDGE VANASKIE:  Well, let me ask you a question, Mr.

18  Honik:  What would you ask to be done?

19         MR. HONIK:  Your Honor, with respect to Mylan

20  specifically, I would request that we do as to the hundred

21  thousand additional withheld documents what Your Honor is

22  already going to do as to the 4,000; that is to say, there

23  should be a cross-sampling of documents from that cache of

24  withheld documents and there should be some judicial review so

25  that we can get relief here.  And by relief, I mean an order,

```
 1  as appropriate, to turn over documents that have been withheld.
 2  And mind you, you've done that as to 12 documents, but it's
 3  staggering to think that in addition to the 4,000 or the sample
 4  from the 4,000 that you're going to look at that there is an
 5  additional 100,000 documents or 35 percent of the total
 6  production that has been withheld.  And so what I would invite
 7  the Court to do is, essentially, direct plaintiffs to, with the
 8  limited information that we have, the metadata and the family
 9  tree context, to also pick out some number of documents from
10  the hundred thousand and essentially do what you're already
11  doing with the 4,000 to determine whether what we think is a
12  systemic failure on the part of Mylan to turn over documents
13  that are clearly relevant, that are clearly responsive, that
14  those withheld documents be ordered produced so that we could
15  meaningfully examine their witnesses in the timeframe that the
16  Court has directed us to do.
17          JUDGE VANASKIE:  All right.  Is there anybody
18  available to address this issue from Mylan?
19          MR. STOY:  Good morning, Your Honor.  This is Frank
20  Stoy.  I'm deputizing for Mr. Trischler this morning, and I'm
21  happy to address these issues with the Court.
22          As a prelude to that, I would just follow up on my
23  email to Your Honor this morning.  I have been in contact with
24  my vendor.  They identified the issue with the files and I hope
25  that that -- I'll have a new link to provide to Your Honor
```

1    imminently.  And I apologize, again, for the inconvenience on

2    that.

3           With respect to Mr. Honik's statements with regard to

4    now sampling additional documents, there's a lot to unpack

5    there but I guess to cut to the chase, I would say I think

6    plaintiffs are trying to put the cart before the horse.  They

7    have selected 4,000 documents or 4200 documents from a recent

8    Mylan production that they believed were improperly withheld.

9    We dispute that.  Your Honor is looking at a sample set of

10   those documents, or will be looking at that sample set shortly,

11   and I think before expanding that exercise to a larger

12   population of documents that have been withheld by Mylan, you

13   know, we should give the Court the opportunity to look at the

14   first sample set and for that exercise to play out.  I don't

15   think it's appropriate or necessary to go back and look at a

16   larger sample set.  And I would just state that if -- if we do

17   undertake that exercise at some point, it should be a

18   cross-section of all of the documents that have been withheld,

19   not those that plaintiffs get to go through the list and cherry

20   pick the ones that they feel look to be the most interesting.

21          And then I guess finally I would just say, Your Honor

22   correctly pointed out earlier in this argument with respect to

23   I believe the Hetero discovery issues that the standard for

24   discovery, particularly in cases with sprawling, complex ESI

25   issues, is not perfection.  You know, we -- I think all parties

1   understand that there is some degree of human error involved in

2   the process and, you know, I don't believe that it's

3   appropriate for the defendant to be held to such a heightened

4   standard with respect to these issues.

5           JUDGE VANASKIE:  Let me ask, with respect to this

6   hundred thousand documents, did it come from a certain -- were

7   they withheld from a certain production?  Is there any reason

8   to believe that my review of a randomly selected sample of the

9   4200 documents would be indicative of the responsiveness of

10  this hundred thousand document set?

11          MR. STOY:  Well, Your Honor, the hundred thousand

12  documents are across all of Mylan's custodial productions.  I

13  can't tell you off the top of my head how many there have been

14  but beginning, you know, last summer there have been many.

15  These are documents that were withheld as nonresponsive family

16  members of otherwise responsive documents that have been

17  produced, and that was done per agreement of the parties.

18          So I'm not -- I guess that doesn't provide a direct

19  answer to your question but it does provide the background as

20  to, you know, what these documents are and where they came

21  from.  So they would be across the custodial production.

22          JUDGE VANASKIE:  Mr. Honik, the question I have to you

23  then is, to what extent could my review of this sample set of

24  4200 documents, the random sample of the 4200 documents, be

25  indicative of what to expect from a larger group of documents,

1   a hundred thousand documents?

2          MR. HONIK:  Your Honor, I totally understand the

3   question, I understand the intent behind it.  My answer, based

4   on my knowledge, is that it would be indicative.

5          With your permission, I would like to just cross-check

6   my belief with people a little bit more granularly involved

7   with the ESI part of this, but I believe that if you look at

8   the 4200, that it is representative of the hundred thousand

9   that's been withheld and that a ruling as to those I think

10  would be efficacious to then render a ruling as to the other

11  withheld documents.

12         But with your permission, I'll circle back with Ms.

13  Hilton and Mr. Davis, who's in deposition, and perhaps Mr.

14  Parekh as well, to confirm that my belief is accurate.

15         JUDGE VANASKIE:  That will be fine.  So we'll hold off

16  with respect to the hundred thousand documents.  We will

17  undertake an *in camera* review of this random sample from the

18  4200 documents and give you a ruling on that.

19         MR. HONIK:  Yes, Your Honor.

20         JUDGE VANASKIE:  Is there anything else with respect

21  to Mylan's discovery?

22         MR. HONIK:  From the plaintiffs' standpoint, Your

23  Honor, that's it for today.

24         JUDGE VANASKIE:  Okay.  Anything from the defendants'

25  standpoint?

1          MR. STOY:  No, Your Honor.  I think those are the two

2    issues that were raised.  Thank you.

3          JUDGE VANASKIE:  Okay.  Now, I have plaintiffs' March

4    30th letter dealing with the Chinese state secret issue, and

5    they have asked for some relief in that letter, four particular

6    matters, or they're asking for four particular items of relief,

7    that being --

8          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

9          JUDGE VANASKIE:  Go ahead, Seth.

10         MR. GOLDBERG:  Your Honor, Your Honor, we received the

11   letter yesterday.  I provided an email to Your Honor yesterday

12   afternoon.  We are working to obtain some additional

13   information to provide to plaintiffs and we're hopeful that

14   we'll be able to provide it today, if not, tomorrow.

15         Of course, one of the challenges here is we have to

16   deal with the Chinese lawyers who actually have possession of

17   the documents and they are 12 hours ahead, so when I received

18   Mr. Slater's letter yesterday, it was in the middle of the

19   night in China.  So we're working on that.

20         We did have a very productive meet and confer on

21   Friday of last week which was on the record as Your Honor

22   directed.  We started at 8:00 in the morning, we went till

23   12:30.  We discussed every document in the log.

24         And, Your Honor, I should let you know, if it wasn't

25   clear from Mr. Slater's letter, while this issue was initially

1    raised about 91 documents, it turns out that many of those

2    documents were duplicates so we were able to reduce the log to

3    approximately 35 documents.  We went through all of those on

4    the meet and confer.  Mr. Slater's identified some areas of

5    followup that he believes we should provide, we intend to

6    provide.  Some of that information I don't think -- I don't

7    know that we have agreement on all four categories, but I think

8    we'll be able to clear up the issues and isolate for Your Honor

9    any documents that would be potentially subject to a motion to

10   compel.

11           JUDGE VANASKIE:  All right.  Mr. Slater, anything else

12   on this issue?

13           MR. SLATER:  Yes, Your Honor.  Thank you.

14           This is -- this is the concern here.  And I think I'm

15   going to pull this issue into the larger context that Mr. Honik

16   talked about.

17           We had the meet and confer Friday when we were already

18   asking to set aside the log, and Your Honor gave the defense

19   what they asked for, which was another meet and confer and Your

20   Honor wisely directed it be on the record so we have a very,

21   very good transcript, if we ever need it, of exactly what the

22   issues are with every document.

23           What's distressing is this:  During the meet and

24   confer, we took at face value what we had been told a day or so

25   before.  We were told a lot of the documents on the list turned

1    out to be duplicates of one another and, therefore, there's not

2    really 91 documents, it's I think the number was 37 or

3    something.  But while we were talking with the lawyer in China

4    who's handling this, I think at one point, and I'm going to use

5    the word slipped and said -- Document 29 was a document that

6    was in play to discuss, Document 30 we had been told was a

7    duplicate, and the lawyer slipped and said, well, they're

8    not -- she just brought it out affirmatively, oh, but this

9    isn't -- I guess she didn't realize that they had told us 30

10   was a duplicate, she said, but 29 doesn't have the attachments,

11   30 has the attachments.  I think I have this right.  I'm doing

12   this by memory on the document numbers.  And we were

13   flabbergasted because as we went through further discussion and

14   now figured out this was an issue, when we were told documents

15   were duplicates, that was not accurate because many of these

16   documents didn't have the same attachments.  Some had

17   attachments, some didn't, and some of the so-called duplicate

18   documents were the ones that contained the attachments, while

19   the ones that we were told were the ones we should discuss

20   didn't have the attachments.

21        As we further talked about the attachments, it turned

22   out that in most cases those were the substantive documents and

23   the cover letter or the cover email was the document that had

24   been identified.

25        So if we hadn't had this meet and confer and we hadn't

1    had this discussion, we wouldn't have known that a tremendous

2    amount of important information wasn't being made known to us.

3              So one of the things that we asked for at the

4    hearing -- or at the meet and confer was for ZHP to provide us

5    an accurate updated state secret log and actually disclose this

6    information so we could understand are these true duplicates or

7    not.  And that was last Friday.  And Your Honor has our letter,

8    obviously, so you know what else we've asked for and you

9    understand what we're looking for.

10             And the problem is this:  I'm happy that they say that

11   they're going to respond, but Mr. Goldberg said, we're not

12   going to agree to do everything the plaintiffs ask for and

13   we're going to get back to them.  So when does it end?

14             They were -- they were under an obligation to submit a

15   status letter to Your Honor, did not do so.  We did.  I think

16   that every one of our requests is reasonable and at this point,

17   we need to have this information.

18             One of the things that's in our letter is that we

19   asked for what they gave us on a few of the documents, redacted

20   copies.  Because I asked the lawyer, there must be sections of

21   these letters that you're saying are state secrets where it's

22   just purely -- and, by the way, only a couple of the documents

23   were exchanged with the Chinese government.  Most of them are

24   internal documents or a good number of them are.  But in either

25   case, if there's factual information known to ZHP, there is no

reason why we can't have that and they can redact any of the,

quote, unquote, opinions or conclusions of the Chinese

government and we can then -- we probably don't need that.  We

care about the facts that are in these communications and what

was being said when and the positions that were being taken by

ZHP.  And we were told that may be a reasonable solution.

The fact that we don't have more information, we don't

have resolution of that issue, when I think it was clear when

Your Honor ordered the meet and confer to be done by last

Friday that this was supposed to move quickly, what we're

expecting is we're going to hear back and we're going to get

some of what we asked for, it's going to be a little, and we're

just going to keep coming back.

So I think that what we've asked for is very

reasonable and I think that ZHP should have to provide the

information we've asked for, which will narrow the issues

greatly down to maybe a couple of documents but that needs to

happen quickly because, as Your Honor knows, we're going

through discovery.

And the last point -- I'm sorry for this long

presentation but I think it's very important because what

Mr. Honik said was very important for the litigation as a

whole.  We are being, and we put this in our letter last week

so we didn't repeat it, but we are being tremendously

prejudiced and the defendants, whether intentionally or not

1    doesn't really matter, the status is they are -- they are very

2    much prejudicing the plaintiffs as a whole across the

3    litigation.  Why?  The discovery was supposed to be done in

4    November.  Okay, you don't get a perfect discovery but you get

5    responsive documents that are important, and we're still asking

6    for those.  So our preparation teams and our deposition teams

7    are spending a tremendous amount of time policing and baby-

8    sitting these productions and constantly having to come to Your

9    Honor to argue for things that were obligated to be produced

10   months ago.  So instead of being able to focus on the

11   depositions, our efforts are focused on cleanup, which it

12   shouldn't be.  And all of these applications and having to bug

13   Your Honor with these things and you can hear what the defense

14   is saying, we're never going to get everything because if we

15   can't prove something is not there, at some point we're not

16   going to get it.

17          So I think that everything that we're asking for and

18   everything that we ask Your Honor to look at going forward we

19   ask that you look through that prism that we are being

20   tremendously prejudiced every day from this distraction of our

21   resources to things that defendants were obligated to do.  And

22   this state secret log is yet another example where this could

23   have been handled in a much more streamlined way, the

24   productions could have been much more fulsome, redacted

25   documents could have been produced up front, and we wouldn't

1  have much of a dispute, it would probably be just a few

2  documents.

3          Again, I apologize for the lengthy presentation but I

4  think it's important for all of this to be on the record.

5          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  May

6  I respond, please?

7          JUDGE VANASKIE:  Certainly.  I expect you to respond.

8          MR. GOLDBERG:  Thank you.

9          You know, what we hear constantly are lots of color,

10 lots of things intended to obfuscate very simple and clear

11 issues, as if they're trying to distract the Court and hope

12 that the Court gets sucked into some drama that really doesn't

13 exist.

14         Each of these defendants has produced hundreds of

15 thousands of documents equating to tens of millions of pages.

16 On the issue of timing and prejudice, when we discussed with

17 plaintiffs the schedule for these depositions, and we asked to

18 agree to have additional time, they said they didn't need it

19 and now they're saying they're being prejudiced.  They can't

20 have it both ways.

21         Every single defendant is acting in good faith and

22 working as hard as they can to comply with the tight schedule,

23 the Court's demands, the resources that are being required.  It

24 is an extraordinary amount of information and it is the result

25 of a list of search terms that was overbroad to begin with,

1    close to 400 search terms, custodial lists for ZHP, 81

2    different ESI custodians.

3         On the issue of the state secret log, Mr. Slater is

4    misrepresenting to the Court even his own comments.

5         At the end of the meet and confer with plaintiffs, we

6    discussed that we would each -- and it's on the record so Your

7    Honor can read it, and I'd be happy to supply you with the

8    transcript this afternoon -- we would each look at the

9    transcript and we would confer with one another to determine

10   what was left and then provide an update to the Court.

11        I was actually surprised to see Mr. Slater's letter at

12   12:48 in the morning without having discussed with us any of

13   the issues that remained after the meet and confer.  So his

14   point that there was a requirement to provide a status letter

15   is not correct.

16        He's arguing the merits of a potential motion to

17   compel when he's arguing that there is factual information in

18   the documents or that only a handful of the documents went to

19   the -- went to the Chinese government.

20        The reality is, as Your Honor will see in the

21   transcript, when we reduced the number of documents to 35,

22   plaintiffs, on the record, determined, after asking the Chinese

23   counsel, on the record said they weren't going to challenge

24   maybe half of those 35 because it's so clear that these

25   documents have nothing to do with this case.  And when we get

1    through providing additional information to plaintiffs, I

2    suspect we're going to be less than 15 documents that they

3    would potentially challenge.  And Your Honor's going to see

4    when you look at the record that these documents are not

5    material to this case.  And, of course, the standard on the

6    motion to compel is going to be that these documents be

7    crucial.

8         Remember, the ZHP parties produced almost 400,000

9    documents and so we're talking about less than -- less than one

10   percent of one percent of documents when we're talking about 15

11   or so documents.

12        The issue with respect to the duplicates will be

13   clarified.  This is not your normal discovery issue.  We're

14   talking about Chinese lawyers who have possession of the

15   documents, they're helping us to create the state secret review

16   log.  We cannot see those documents in creating the state

17   secret review log.  There are some discrepancies in the log but

18   we do not believe that they are material or meaningful because

19   we have discussed all of the issues that pertain to the

20   documents themselves.  And as we said on the record, if there

21   is a particular document that we learned we did not cover

22   during a meet and confer, we will cover it with plaintiffs as

23   we did on the meet and confer.

24        But to continually assert that these defendants and

25   that the lawyers at these firms that are representing the

1  defendants are trying to hide the ball or trying to, you know,

2  make this a mystery, Your Honor's been doing this a long time

3  and I'm confident that you can see through that and understand

4  that the lawyers at these firms are trying to do their best to

5  satisfy the obligations of the Court and we have to get beyond

6  the rhetoric and get into the issues, resolve them so we can

7  move along.

8        I am confident that the state secret issue will be

9  resolved this week, that plaintiffs will be able to file a

10  motion to compel on a handful of documents if they think it's

11  necessary, which I'm hopeful they won't; but that issue should

12  be brought to a head by the end of this week so that we can

13  move forward on that issue.

14        JUDGE VANASKIE:  Well, I agree with that last

15  statement that this should be brought to a head by the end of

16  this week.  And you're confident it can be, Mr. Goldberg?

17        MR. GOLDBERG:  I am, Your Honor.

18        JUDGE VANASKIE:  All right.  I'm not going to order

19  anything today with respect to this matter.  The letter is

20  dated yesterday, the letter report, and I have a status report

21  so I didn't need two status reports on what happened.  I think

22  you've made great progress so far on the state secret issue.

23  There are a handful of issues or less than a handful of issues

24  that you need to work through.  Mr. Goldberg has committed to

25  getting back to you, Mr. Slater, with respect to those matters

```
 1  concerning the state secret issue and you can take appropriate

 2  action, if necessary, then as soon as you can.  And that's

 3  about all we can do on that issue today.  All right?

 4          MR. SLATER:  Thank you.

 5          JUDGE VANASKIE:  Thank you.

 6          Now, I had asked it would help me if you could list

 7  for me the outstanding discovery disputes and provide some

 8  prioritization of those discovery disputes.

 9          I know I have a motion for a protective order dealing

10  with the records of a particular individual, I want to say it's

11  Mr. Rao but I may be wrong on that.

12          MS. GOLDENBERG:  That's correct --

13          JUDGE VANASKIE:  So I'll ask -- is that Ms. Heinz?

14          MS. GOLDENBERG:  That was Marlene Goldenberg.  And,

15  yes, Dr. Rao is the disputed custodian.

16          JUDGE VANASKIE:  I expect to have a decision out to

17  you by the end of the week on that.

18          And as I indicated, I hope either later today or

19  tomorrow, certainly, a decision on the Unit 7 documents.

20          So help me out and tell me what other issues I've got

21  to decide.

22          Who will be speaking on behalf of plaintiff?

23          MR. SLATER:  Your Honor, I'll start, it's Adam Slater,

24  only in the sense that I think that we thought we were going to

25  be submitting a status report to Your Honor on these items so I
```

```
 1   don't know that we walked into this hearing ready to give Your
 2   Honor more of a list of what's open than what's already in the
 3   updated status in this letter.
 4            JUDGE VANASKIE:  All right.
 5            MR. SLATER:  I think that -- I think you have most of
 6   it and there's probably a few other issues I certainly could
 7   bring up now if you would like me to.
 8            JUDGE VANASKIE:  I didn't give you much notice on that
 9   so...
10            Let me ask Mr. Goldberg, since you speak as
11   spokesperson for the defense side, can I ask that you submit to
12   me a status report, I'll give you as much time as you'd like,
13   that would identify, from your perspective, the outstanding
14   discovery disputes and that identify for me the document number
15   of the record from the Court's docket where the issues are
16   presented.
17            MR. GOLDBERG:  Your Honor --
18            JUDGE VANASKIE:  Is that acceptable?
19            MR. GOLDBERG:  Absolutely, Your Honor.  I just wanted
20   to be clear, we're talking about discovery disputes that are --
21   when you say outstanding, these are discovery disputes that
22   have already been brought to the Court's attention and not yet
23   resolved?
24            JUDGE VANASKIE:  Correct.
25            MR. GOLDBERG:  Okay.  Yes, we'll be happy to do that,
```

```
 1   Your Honor.
 2           JUDGE VANASKIE:  And --
 3           MR. GOLDBERG:  And if we can have until Friday to
 4   coordinate and get you that status report by Friday, I'm sure
 5   we can do that.
 6           JUDGE VANASKIE:  That would be perfect.
 7           Is that all right on your end, Mr. Slater?
 8           MR. SLATER:  I would actually ask for Monday, if
 9   possible, only because I know that a lot of people that are
10   involved on our side are in the middle of lengthy depositions
11   right now.  So I think it would be helpful if we could have
12   until Monday.
13           JUDGE VANASKIE:  Yes, we will give you until Monday to
14   get to me a report of the outstanding discovery disputes and
15   the status of those disputes, including whether they have been
16   fully briefed.  All right?
17           MR. SLATER:  Yes.
18           MR. GOLDBERG:  Thank you, Your Honor.
19           JUDGE VANASKIE:  And I think you can expect before
20   Monday a decision on the Dr. Rao matter and on the Unit 7
21   matter.  All right?
22           Is there anything else we need to discuss in terms of
23   discovery matters from plaintiffs' perspective?
24           MR. HONIK:  Your Honor --
25           MR. SLATER:  Your Honor -- go ahead, Rubin.
```

1          MR. HONIK:  Your Honor, this is Rubin Honik.

2          I was, just in the interest of time, going to convey

3    to you that I've already been in communication with members of

4    our team and I can tell you that the 4,000 or 4200 documents

5    that have already been corralled at Mylan are, unfortunately,

6    not representative of the universe.  That's the bad news.  The

7    good news is that the exercise that allowed us to identify the

8    4200 or so documents we did as to the larger cache of documents

9    in December and we can do that again.

10          What I would ask of the Court, given what I've now

11   learned, and also because this same problem of withholding of

12   documents is apparently prevalent with other defendants,

13   including Teva and others, may we present to you a sensible and

14   practical plan or process by which Your Honor can evaluate all

15   of the withheld documents in a concise way?  Can we present

16   that to you on plaintiffs' side?

17          JUDGE VANASKIE:  Certainly, I'd like a sensible and

18   practical plan for moving forward.

19          MR. HONIK:  Great.

20          MR. STOY:  I'm sorry, Your Honor.  I didn't mean to

21   interrupt you, Mr. Honik.  This is Frank Stoy.

22          I just want to respond to that, briefly, and just make

23   sure that Mylan and I suppose the other defendants have an

24   opportunity to respond to whatever plan that is proposed

25   because I would submit to Your Honor that any sampling of the

1  larger population of documents that has been withheld should be

2  across that entire population, not based on some subset that

3  plaintiffs have the opportunity to select, because at that

4  point what we're doing is we're doing a random sample of what

5  is, essentially, already a handpicked set of documents.  So it

6  tips the scale in terms of the outcome of the sample, and I

7  would submit that it doesn't give the Court a full picture of

8  all of the documents that are withheld.

9        But that being said, you know, we would reserve any

10  other arguments until we have the opportunity to review the

11  plan that plaintiffs intend to propose.

12        Thank you.

13        MR. HONIK:  Your Honor --

14        JUDGE VANASKIE:  We're getting a phone call ringing.

15  All right?  Okay.

16        Is that Mr. Honik?

17        MR. HONIK:  Yes, Your Honor.  I was only going to

18  point out that I'm certain that when we selected the 4,000 or

19  so from the 35,000 withheld, I think Your Honor, if you haven't

20  already seen it, will see how helpful it is to do that because

21  what it does is it puts the bucket or pool of documents which

22  we already have evidence are relevant, are responsive, they go

23  right to the heart of the issues in the case, by selecting them

24  in advance, it allows you to look at it.  If you take simply a

25  random selection from the larger pool, the hundred thousand,

1   the likelihood that you're going to hit documents that, you

2   know, fairly reflect what we believe are improperly withheld

3   documents is greatly diluted.  And so, respectfully, I think it

4   stands to reason that you would prefer to have us indicate to

5   you which of the much larger set of a hundred thousand are

6   likely improperly withheld so that you can evaluate some number

7   of that.

8          So, for example, if, and I think these numbers are

9   fairly correct, if from the hundred thousand we've already been

10  able to determine that roughly ten percent of them or 10,000 of

11  them are more likely than not responsive, just based on

12  metadata and family tree context, it will allow you to

13  determine from that subset whether our proposition is true or

14  not.

15         So, yes, we will absolutely share with Mr. Stoy and

16  the other defendants a commonsense proposal for how to get at

17  this; but I think the larger question is, how do we address, in

18  a way that removes prejudice to plaintiffs, this enormous

19  number of withheld documents which, by definition, are hits,

20  meaning, you know, the search terms produced documents that

21  facially are responsive.  We need to get at why are they still

22  being withheld and why in the case, for example, of Mylan, is

23  it 35 percent of their entire production.  We need to get at

24  that and, respectfully, the best way to do that is to put it on

25  plaintiffs to demonstrate, based on what is known and

```
 1   available, the documents that we think are improperly withheld

 2   for sampling.

 3          So we'll share that with the defendants, we'll share

 4   it with the Court, and hopefully we can devise a method to

 5   practically get at the solutions.

 6          MS. PRISELAC:  Your Honor?

 7          JUDGE VANASKIE:  Yes.

 8          MS. PRISELAC:  Your Honor, this is Jessica Priselac

 9   for the ZHP parties and for the larger defense group.

10          You know, this issue has not been brought up in a meet

11   and confer with every defendant in the way it has been with

12   Mylan.  At least for the ZHP parties, this was brought up I

13   think probably earlier this year, we had a meet and confer,

14   we've heard nothing since from the plaintiffs on this.  And,

15   you know, as you know, Your Honor, these types of issues are

16   very defendant-specific based on the review employed.

17          And so rather than come up with some approach that

18   deals with all of the defendants, I think that the plaintiffs

19   have a burden to meet and confer with all of the defendants

20   prior to issuing some type of order that applies to all of us

21   because the productions are very different and the review

22   processes are most likely very different.

23          And I would just correct one thing Mr. Honik said,

24   Your Honor.  These are not all documents which are search term

25   hit on.  As Your Honor knows, a search term could hit on a
```

1    family, right, and the family might have several documents in

2    which no search terms hit on a document.  And, you know, and if

3    that document was not responsive, then under the protocol we

4    were permitted to withhold it.  So this description of what

5    went on and what the protocol said is just incorrect.

6          JUDGE VANASKIE:  Well, I think you're right, Ms.

7    Priselac, that right now it would not be appropriate to come up

8    with some sensible and practical plan that cuts across all

9    defendants.  What I'm looking for right now is to deal with the

10   Mylan issue and I think there should be an opportunity --

11   nothing will be ordered without an opportunity to be heard, at

12   least in writing, with respect to what is submitted to me.

13         So what I expect to happen here is that plaintiffs

14   will submit to me what they consider to be a way to move

15   forward on this issue.  If they have conferred and reached

16   agreement with Mylan, that's great.  If they haven't conferred

17   or if they've conferred and not reached agreement, then I

18   expect to get a counterproposal from Mylan and then I'll make a

19   decision.  And I expect that process to repeat itself with

20   respect to withheld nonresponsive documents across defendants.

21   I think that's all we can accomplish at this time.

22         But let me ask you a question, Mr. Honik:  When can I

23   get your plan?

24         MR. HONIK:  Your Honor, I don't -- I don't see why I

25   can't get that to you before the close of business Friday of

1    this week.

2            JUDGE VANASKIE:  Okay.

3            MR. HONIK:  And I'll be guided by your instructions to

4    have it be defendant specific.  I didn't for a moment mean to

5    suggest that plaintiffs haven't really engaged the defendants

6    in these matters; we have.  I can speak directly to Mylan and

7    Aurobindo.  We have engaged the defendants on this.  Based on

8    my communications with some of my team members, I know it's

9    been done with Teva.  I was merely trying to address it in a

10   way that the Court could wrap its arms around it for everyone,

11   but I'm perfectly happy to do this defendant by defendant and

12   in no way suggested that the defendants shouldn't have an

13   opportunity first to evaluate our proposed plan and be

14   responsive to it.  It could be that through some additional

15   meet and confer maybe some progress could be made.

16           I regret that I hear that we're going to need your

17   guidance on this but you will have, by close of business

18   Friday, at the least, a plan with respect to the Mylan issue,

19   and to the extent that we believe it may be a roadmap for

20   dealing with other withheld documents as to other defendants,

21   we'll suggest that as well, but we can cross that bridge when

22   we get there.

23           JUDGE VANASKIE:  All right.  Very well.  I'm going to

24   ask this of both plaintiffs and the defense side as well:  Does

25   it make sense that we have a conference call next week to

1    address some of these issues so that they can be decided more

2    promptly?

3          MR. HONIK:  For plaintiffs, Your Honor, Rubin Honik.

4    We would very much welcome that because as I've already

5    mentioned, and Mr. Slater has mentioned, this is guiding our

6    preparations for the depositions we're in the middle of.  So,

7    yes, we would welcome your intervention and our engagement with

8    you next week.

9          JUDGE VANASKIE:  Would that be a problem, Mr.

10   Goldberg, from the defense side?  I know you're all busy.

11         MR. GOLDBERG:  Your Honor, of course we'll be happy to

12   have a conference with the Court, if that's what the Court

13   prefers.  We haven't seen Mr. Honik's proposal and there

14   haven't been the independent meet and confers with each of the

15   defendants so we don't really now how advanced this issue will

16   be by next week.  And we do think that really it's more

17   incumbent upon plaintiffs to have meet and confers as opposed

18   to setting forth in a letter to Your Honor a path forward that

19   may not be workable for some of the defendants, may not

20   correspond to how the defendants, each individual defendant,

21   has handled the review, and, you know, we certainly are

22   concerned that decisions as to one defendant might somehow bind

23   other defendants in some way.

24         If Your Honor, you know -- if Your Honor sets a

25   hearing or a conference call for next -- middle of next week,

1    hopefully we will have had time to digest Mr. Honik's letter

2    and be prepared to discuss it with Your Honor.

3         JUDGE VANASKIE:  All right.  It wouldn't be before

4    Wednesday, probably even after Wednesday.  Let me look at my

5    calendar.  But I think as a way of moving this matter along

6    most expeditiously, the conference call approach may help in

7    that respect.  And so I'm not saying definitely that I will

8    hold one next week, we have one scheduled for the 14th of

9    April, but I just wanted to get your position.  And thank you

10   for being receptive to it.

11        Is there anything else to discuss today on the

12   discovery issue before we get Judge Kugler on the phone?

13        MR. SLATER:  Your Honor, it's Adam Slater.  I'm not

14   looking to argue an issue now but I do want to just put

15   something, not surprisingly, on your radar.

16        You were very kind and we very much appreciate the

17   focus you put on the issues we had during the deposition of

18   Peng Dong, which continues.

19        If I could for just about a minute or two, just wanted

20   to update you and just to tell you that we're probably going to

21   have a series of applications to Your Honor when the deposition

22   is completed.  I'm hopeful that we can work out, informally,

23   without having to involve Your Honor, our requests which we're

24   going to make to get some extensive time on Friday to finish

25   the deposition but I'm not going to argue that now, there's no

```
 1    reason to.  If it can't be resolved, I suppose we can reach out
 2    to Your Honor.  I just wanted you to know that your input has
 3    helped the deposition in terms of the tenor and the temperature
 4    in the deposition has certainly come down quite a bit.
 5    Unfortunately, the responsiveness of the testimony has not
 6    improved and we are still facing a very serious problem
 7    obtaining responsive testimony; but Your Honor gave us guidance
 8    as to what the consequences would be and there's a few other
 9    things we'll probably ask for after the deposition.
10            I just wanted you to know what's happening and to,
11    again, thank you because I think that guidance in terms of just
12    getting through a deposition has helped quite a bit.  I think
13    the mischief that we were concerned about is there and there's
14    probably no way to prevent that if the defense decides to do
15    whatever they're going to do, and Your Honor will probably have
16    some rulings to make shortly on that.
17            JUDGE VANASKIE:  All right.  Well, I will reiterate
18    that I will make myself available.  I know these depositions
19    occur at night.  If you, as you did before, text me or call me,
20    I will respond as promptly as I can.  I try to keep my phone
21    with me, unfortunately.  But I do want to keep these matters
22    moving along.  That's, I think, my charge from Judge Kugler.
23    And so I don't want to encourage it but I don't want to
24    dissuade it either in terms of reaching out if it will help to
25    move the matter along.  All right?
```

```
 1          MR. SLATER:  Thank you.

 2          JUDGE VANASKIE:  All right.  I am going to drop off

 3  the call now, get Judge Kugler on and then rejoin you all.  We

 4  will be back with you shortly.

 5          (Brief recess taken at 11:32 a.m.)

 6          JUDGE VANASKIE:  Hello.  This is Tom Vanaskie.  I

 7  wanted to let you know that I phoned Judge Kugler's chambers.

 8  He will be joining us in ten to 15 minutes, if not sooner.  So

 9  I just wanted you to be aware that it might be a few minutes

10  before he joins us.

11          I'm going to put my phone on mute for now and await

12  Judge Kugler joining us.  All right?

13          MR. GOLDBERG:  Thank you, Your Honor.

14          JUDGE VANASKIE:  And, Camille, did you get that?

15          THE COURT REPORTER:  Yes, Your Honor.  Thank you.

16          JUDGE VANASKIE:  All right.  Thank you.

17          (Brief recess taken at 11:38 a.m.)

18          JUDGE KUGLER:  Good morning.  This is Judge Kugler.

19  Sorry for the delay.

20          (All respond good morning, Your Honor.)

21          JUDGE KUGLER:  How's every doing?

22          Baseball season starts tomorrow, so I'm happy.

23          Do we have a court reporter?

24          MR. SLATER:  Your reason for optimism, Judge?

25          JUDGE KUGLER:  It depends who you talk to.  I just
```

```
 1   hope -- my thought is the Phillies are competitive.  They sort

 2   of collapsed last year and I hope it doesn't happen again.

 3   We'll see.  The Mets certainly have a better team.  Washington

 4   has a better team.  It's a tough division for the Phillies.

 5   We'll see how it goes.

 6            Do we have a court reporter on today?

 7            THE COURT REPORTER:  Yes, good morning, Your Honor.

 8   It's Camille Pedano.

 9            JUDGE KUGLER:  Oh, hi, Camille.  How are you?

10            THE COURT REPORTER:  I'm very well, thank you.

11            JUDGE KUGLER:  All right.  Should we get started,

12   everybody?  We have an agenda of items to go through.  Thank

13   you for your letters.

14            There was a joint stipulation about dismissal of

15   Torrent Private.  That's been filed today.  Sorry about the

16   delay in doing that.

17            There's also, you told me, Mr. Trischler, in this

18   March 23rd letter and then again in the March 30th letter, that

19   you had submitted, on March 4, a protocol for dismissal of

20   certain defendants.  I am unable to find that on the docket.

21   It's not -- it wasn't filed on March 4th, but it was emailed

22   right to me directly, and if there's no objection to it, I'll

23   certainly sign it and enter it; but I can't explain what

24   happened to it.

25            MR. GOLDBERG:  Your Honor, this is Seth Goldberg on
```

1    behalf of the defendants.  And we will do that just so there's

2    no confusion for Your Honor.

3            JUDGE KUGLER:  Okay.  Thank you.  All right.

4            Let's go through the orders to show cause.

5            And this is at Page 22 of the March 30th letter.

6    Apparently two cases have been resolved and you're asking me to

7    dismiss the order to show cause for the Linda Patterson and

8    James Gibson cases, correct?

9            MR. HARKINS:  Your Honor, this is Steve Harkins with

10   Greenberg Traurig for the Teva defendants and the joint defense

11   group.

12           That is correct.  We are withdrawing the request with

13   respect to Linda Patterson and the James Gibson case.

14           JUDGE KUGLER:  All right.  Now, that leaves us with

15   four.  Any changes in those four?

16           MR. HARKINS:  Steve Harkins, again, Your Honor.

17           No, there are no changes from the defense so we

18   request that orders to show cause be entered as to these four

19   cases.

20           JUDGE KUGLER:  Well, you asked me to dismiss these

21   four.

22           MR. HARKINS:  Yes, Your Honor, dismissal be entered as

23   to these four cases.

24           JUDGE KUGLER:  We have Rene Medrano, M-E-D-R-A-N-O,

25   Robert Greenleaf, G-R-E-E-N-L-E-A-F, Rickey, with an E-Y,

1  Jackson, and Sonja, S-O-N-J-A, Newcombe, N-E-W-C-O-M-B-E.  Does

2  any plaintiffs' counsel want to be heard on any four of these?

3          (No response.)

4          JUDGE KUGLER:  All right.  Hearing nothing, then the

5  Rene Medrano case will be dismissed, the Robert Greenleaf case

6  will be dismissed, the Rickey Jackson case will be dismissed

7  and the Sonja Newcombe case will be dismissed.

8          Plaintiffs also request one case be listed for an

9  order to show cause, that's Naomi Williams.  Any change in

10 that?

11         MR. HARKINS:  No changes from defense, Your Honor.

12 Request an order to show cause as to just this one case.

13         JUDGE KUGLER:  Any objection from any plaintiffs'

14 counsel?

15         MR. NIGH:  Your Honor, this is Daniel Nigh.

16         No objections here.

17         JUDGE KUGLER:  All right.  Then we will list the Naomi

18 Williams case for an order to show cause returnable at the next

19 conference.

20         Now, that leaves some other deficiencies.  There are

21 ten cases that you seek an additional listing on.  Any changes

22 in those ten?

23         MS. GOLDENBERG:  Your Honor, this is --

24         MR. HARKINS:  Your Honor, Steve Harkins.  Apologies,

25 Marlene.  Go ahead.

1          MS. GOLDENBERG:  I'm sorry.  This is Marlene

2     Goldenberg for the plaintiffs.

3          I've been informed by counsel for Kristine Cunningham,

4     who's Number 1 on the list, that the authorization has been

5     uploaded as of this morning.

6          JUDGE KUGLER:  Okay.  Well, then, let's just re-list

7     it and then the next conference we can not then list it as an

8     order to show cause.  All right?

9          MS. GOLDENBERG:  Sure.

10         MR. HARKINS:  And, Your Honor, for the defense, we did

11    receive updated material from plaintiff Pamela Stewart, Number

12    6, beginning on Page 27, so we will remove her.  She will not

13    be rolled over as a second listing.

14         JUDGE KUGLER:  Anyone else of these ten?

15         MR. HARKINS:  No other objection from the defense,

16    Your Honor.

17         JUDGE KUGLER:  All right.  These ten, Kristine, with a

18    K, Cunningham, Taffnie, T-A-F-F-N-I-E, Williams, Peter Townsend

19    Day, D-A-Y, Gwendolyn Mundy, M-U-N-D-Y, Ronald Cassaras,

20    C-A-S-S-A-R-A-S, Arnold Ragland, R-A-G-L-A-N-D, Winfield

21    Wetzel, W-E-T-Z-E-L, John Futch, F-U-T-C-H, and Michael

22    Canfara, C-A-N-F-A-R-A, on behalf of the Estate of Mashrique,

23    M-A-S-H-R-I-Q-U-E, they will be listed for another listing at

24    the next conference.

25         All right.  Now, I'm a little confused from your

1   positions about where you are about the bellwether trial pool.

2   I know the defendants have submitted a proposed order which

3   defense counsel says there is an argument about Paragraph 7

4   but, apparently, the plaintiffs have taken a new tactic.

5           So are we at a position where we can talk about this

6   and resolve this today?

7           MR. NIGH:  Your Honor, this is Daniel Nigh.

8           I wanted to make it clear that I think the defendants

9   misrepresent as if we have some agreement.  That's not the case

10  and we made that clear at the last conference a month ago.  We

11  spoke about it with Judge Vanaskie, we spoke about it with Your

12  Honor.  We made it clear that we believe that including any

13  sort of dismissal clause at this time in this order is

14  premature.  I think what they took out of the agenda happened

15  even before that hearing and so I think it would have been

16  clear but it's taken out of context.  So, again, we think it's

17  premature to include a dismissal clause in this order.

18          To give Your Honor some pretext, we haven't had any

19  plaintiffs at this point declare any intention to dismiss their

20  case.  And, you know, in addition to that, we've spoken to

21  plaintiffs' counsel for the first ten cases that are going to

22  be deposed and our understanding is all ten are going forward.

23  And so at this point I don't think it makes any sense to

24  include a dismissal within this order.

25          I do want to also say that, you know, we have proposed

1    a -- we both -- both sides agree, we've made agreement that

2    there were 28 cases that were going to be selected in the

3    initial pool and we would take the plaintiffs' depositions of

4    those 28 cases, and then at some point there would have to be a

5    winnowing of those cases.  Both sides agree to that.

6         I think the disagreement is when will that winnowing

7    occur.  We believe it should happen before we take the doctor

8    depositions.  That's precisely what happened in *Benicar*.  We

9    winnowed the cases down to ten cases in *Benicar* before we took

10   those doctor depositions.  And there's never been any agreement

11   on the plaintiffs' side to take 28 sets of doctor depositions.

12   Again, I think that's a mischaracterization on that issue.  We

13   believe that it should go to eight and then we take the

14   depositions of the doctors on those eight cases.

15        I think that the defendants have some disagreements as

16   to how we get down to those cases, but they also, I saw in

17   their proposal, they think at some point they propose well over

18   14 cases for that.  We believe it should be eight.  And we

19   believe the timing of winnowing should occur before we take the

20   doctor depositions.

21        I've been in numerous MDL's, been involved in numerous

22   bellwether plaintiffs, and I'm not aware of any of the projects

23   that I've been involved in where we had a pool of 28 cases that

24   we started taking all sorts of doctor depositions on.  Frankly,

25   I think that's not helpful in this case to get to that sort of

1    number.  And the other thing is I think it just creates an

2    allocation of resources not necessary that could be better

3    focused; but, in addition, I think it disturbs sets of doctors

4    that really -- we're not adding anything to it.

5            From my look at the defendants' proposal, it appears

6    they want this discovery in order to be able to help, you know,

7    in terms of exercising strikes to get to a lower pool of 12 to

8    14, but I don't see that that's necessary.  Frankly, I think,

9    you know, first off, our proposal is that we winnow by going by

10   random selections; but second -- and in doing so, we would get

11   to our set of eight; but second, frankly, if they wanted to

12   have some sort of exercise on strikes and have some knowledge

13   from these doctor depositions, you know, the plaintiff

14   depositions would be enough.  We'd have plaintiff depositions,

15   we'd have the limited sets of doctors' records, I think both

16   sides.  If there were some, you know, order that we needed to

17   get from 28 to eight or 28 to 12 based on -- you know, that

18   included some strikes from each side, we would have the

19   information we need on plaintiff depositions alone and the full

20   set of medical records.

21           So I think each side understands at some point there

22   needs to be a winnowing.  Our position is that should occur

23   before the doctor depositions.

24           In terms of the replacement pick, our proposal is that

25   once we get down to that winnowed number that's going to be,

1    you know, either eight cases or 12 cases, if we take the

2    defense position, then if somehow one of those cases gets

3    dismissed or settled, then we can replace it with the pool of

4    28 that we already had.  So to have this idea that we have to

5    keep getting back to 28 is just unimportant.  What really

6    matters is making sure we have that eight or that 12, that

7    number of what the winnowed-down cases are going to be.

8         So, again, we think it's premature to include any sort

9    of dismissal clause in this order because it's just not

10   necessary and I think it's premature.

11        Thank you, Your Honor.

12        JUDGE KUGLER:  Mr. Nigh, when you say dismissal

13   clause, what clause exactly are you referring to?

14        MR. NIGH:  It's Paragraph 7 --

15        JUDGE KUGLER:  All right.

16        MR. NIGH:  -- where the defendants want to include

17   that bellwether trial cases may be dismissed -- or, sorry, they

18   want to include that if a case is dismissed that there be a

19   replacement pick by the side that initially replaced -- or by

20   the side that initially picked that case.  And then they give

21   the timing as to how it's going to occur.  The problem with the

22   timing is, frankly, it just doesn't make sense, especially to

23   the extent that all of plaintiffs' counsel that have these

24   depositions that have to occur before June 1st, those are the

25   ten cases that are to go forward first, the rest are going to

 1  go forward in the second prong, and all plaintiffs' counsel, to

 2  my understanding, has voiced to us that they believe that the

 3  intent is to go forward and they don't have any understanding

 4  that they are not going to be able to go forward.

 5          So it's just that that wouldn't make any sense in

 6  terms of the timing of how they included that in there either

 7  because, you know, four months before, frankly, there aren't

 8  going to be any dismissals before June 1st, is my

 9  understanding.  So, again, I think it's premature to include

10  it.

11          Everything else we had agreed upon in this order but

12  the defendants want to keep sticking this extra clause that we

13  never agreed upon.

14          JUDGE KUGLER:  So you don't think it's necessary to

15  keep the pool of 28, if we lose people.

16          MR. NIGH:  That's right.  That's right, because we're

17  going to go down from 28 to eight or 12 either way, and I think

18  that should occur after the plaintiffs' depositions and before

19  the doctor depositions.

20          JUDGE KUGLER:  How many plaintiffs are scheduled to be

21  deposed as of now?

22          MR. NIGH:  Ten will be deposed before June 1st.

23          Now, there is still this other caveat that we still

24  have to work out, which is, we've always stated that we needed

25  to have the defense fact sheets before their deposition; and to

1    this point, we haven't gotten a complete set of defense fact

2    sheets on any of those cases.  So that's still something we're

3    working on and hopefully that can be done.  Some of them are

4    upcoming and, you know, in two weeks we have some so -- or we

5    have at least one, the first one's scheduled.  So I'm hopeful

6    but I'm not sure that the defense side is going to get the

7    defense fact sheet produced in time for that first deposition.

8    But ten are to be taken before June 1st.

9          JUDGE KUGLER:  Okay.  My experience, and I'm sure it's

10   your experience, when you start the discovery on these

11   plaintiffs who are picked for these potential bellwether

12   trials, they sort of winnow themselves down.  What if we lose

13   half of them before we get there?

14         MR. NIGH:  Well, that's the thing.  You know, *Benicar*

15   was a different story.  So that may be one of the experiences

16   that you have here.  But these first ten cases, what my

17   understanding is that all ten are ready to proceed forward.  I

18   haven't heard a single one of them that's not going to proceed

19   forward at this point.

20         JUDGE KUGLER:  Okay.  Who wants to speak for the

21   defense?

22         MS. LOCKARD:  Good morning, Your Honor.  It's Victoria

23   Lockard from Greenberg Traurig on behalf of the defense and I

24   will be addressing the bellwether issues.

25         Let me just be clear on a couple of points.

```
 1              First of all, we don't disagree that at some point
 2    there will need to be a winnowing or a sequencing for trial, we
 3    all know that, but as a preliminary matter, we think that's
 4    premature at this point.  It was just 45 days ago that both
 5    sides came together and selected our 15 picks from each side.
 6    That was 45 days ago and nothing, in the way of discovery or
 7    learning about these 28 cases, because there were two double
 8    picks, nothing has happened.  So whereas we had worked together
 9    for several months to come up with what seemed like a logical
10    phase ten, we suddenly, early this month, learned that
11    plaintiffs have now changed the pace on this.  They want to go
12    back on the 28 picks that we settled on January 15th, before
13    the order had even been entered, and they want to restructure
14    not only that plan but the Court's CMO 23, which was entered
15    and specifically provides that these plaintiffs will be
16    deposed, the first ten by June 1st, the remaining 18 by October
17    4th.  The CMO 23 also specifically states that these
18    bellwethers' physicians, prescribers and treaters would be
19    deposed by October 4th.  And this Court, Your Honor, even going
20    back to November 24th of last year, you said, I agree with
21    defendants that they should suggest 20 potential plaintiffs
22    and, you know, plaintiffs pick 20, defendants pick 20, and you
23    said, "So you have a total of 40 plaintiffs which you're taking
24    discovery on the personal injury cases."
25              And so Your Honor, back in November, contemplated we
```

1    would be proceeding with plaintiff-specific discovery on as

2    many as 40 plaintiffs.  We're down to 28, which both sides

3    agreed was a reasonable number.  When we came up with these

4    numbers in our picks, the understanding at that point, from

5    defense perspective, and consistent with the Court's

6    instruction in November, was that we would proceed with

7    plaintiff-specific discovery.

8         Now, I agree there's some room for negotiation.  We're

9    not intending to go take, you know, 15 depositions for each

10   plaintiff, but we certainly should be entitled to take their

11   prescribers and their treaters and that has always been

12   contemplated in the -- in the discussions with the Court.

13        So to now come back and say, oh, 45 days later,

14   nothing's happened but we want to reduce this down to eight

15   makes absolutely no sense.  And the only logic behind it is

16   that plaintiffs' team got together and realized how many

17   depositions would be required that they'd have to roll up their

18   sleeves and do some work on the plaintiff personal injury cases

19   and now they just don't want to do it.

20        And so if you follow along with their proposal, we are

21   going to have to rewrite CMO 23 yet again, we're going to have

22   to go back to the drawing board on these picks, and it just

23   doesn't make sense.

24        Additionally, I've heard *Benicar*, I've heard, you

25   know, the number eight because, you know, 28 seems like a lot,

1    but let me remind you, this MDL is unique in the sense that we

2    have multiple API manufacturers, we have multiple finished dose

3    manufacturers, we have distributors, retailers and so just the

4    sheer amalgamation of how all of these defendants would fit

5    together in a trial would lead to more than eight scenarios

6    that would encompass all of the defendants.

7            So there's a reason here to proceed with the number

8    28, which is reasonable, it's manageable, it could be done and

9    it will allow the adequate representation of cases from all of

10   the defendants, not just one or two or three, but it will allow

11   all of the defendants to participate.  And then at some point

12   down the road, when we have learned more about these cases, and

13   as the Court says, there will be a natural winnowing, there

14   always is, some of the defendants may drop out, some of the

15   plaintiffs may drop out, but when we get closer in time to

16   trial, there will need to be a process, whether that's random

17   selection of the Court, whether there's additional picks and

18   strikes, that's not something we need to decide today.  So

19   that's our position.

20           And with respect to the order that was presented to

21   the Court in the last CMC on February 24th, you say the

22   plaintiffs had agreed to that order with the exception of

23   Paragraph 7.  At that point, Your Honor will remember, the

24   dispute was whether or not plaintiffs had voluntarily dismissed

25   those cases without seeking court approval.  And Your Honor

1  said, well, under Rule 41, defendants haven't filed an answer

2  so plaintiffs can dismiss voluntarily if they want to.  That

3  was the only dispute, that's what we discussed, and defendants

4  lost on that issue.  We then went back to the order, we revised

5  that paragraph to take that provision out.

6        The part that we left in, however, was the statement

7  that if they believe that a plaintiff was dismissed

8  voluntarily, the party who selected that specific bellwether

9  pick would be able to replace that pick.  That is something

10 that plaintiffs agreed with.  In their court submission for

11 that February 24 conference, they said, "Plaintiffs propose

12 that if a bellwether case is dismissed, the party who selected

13 that case for the pool may pick a replacement."  They were in

14 agreement with that.  There's never been a dispute of that

15 point until now.

16       And so, you know, our position is we lost on the

17 voluntary dismissal point, we revised it in accordance with the

18 Court, it should be entered in the way that it's drafted.

19       The point about the initial timeframes for making

20 picks, we are willing to take that out.  That was a point for

21 discussion.  That's not critical to defendants.  We can take

22 out a timeframe for the re-picks.  But there needs to be some

23 security for defendants; you know, otherwise, we're left in a

24 position where plaintiff can take -- go through some discovery,

25 voluntarily dismiss all of the case -- they could theoretically

1  dismiss all of the cases that were defense picks.  I mean, they

2  could do that right now.  And if there's no opportunity for the

3  Court to weigh in or defendants to object or defendants to

4  re-pick, what's to stop them from just dismissing all of the

5  defendants' picks right now.  That would take them down to 14

6  cases, which would be, you know, the plaintiffs' picks.  It

7  just is a protection that needs to be there.  And this is a new

8  position on their behalf to say that the party who picked the

9  case should not be entitled to re-pick.  That's just a matter

10  of basic fairness and there's no prejudice to plaintiffs if

11  that is left in in that order.

12          MR. NIGH:  Your Honor, this is Daniel Nigh.  May I

13  respond?

14          JUDGE KUGLER:  Please do, Mr. Nigh.

15          MR. NIGH:  All right.  So I want to make one thing

16  clear.  We have two issues that we disagreed with at the last

17  conference.  We voiced them to the Court, it was voiced in the

18  early session with Judge Vanaskie and it was voiced with Your

19  Honor.  And those two issues were, one, Your Honor has resolved

20  on the Rule 41 issue; and the second issue was this very clause

21  that the defendants have still kept in.  And the transcript

22  even shows Your Honor's statement that, yes, it does appear to

23  be premature to the defendants' clause.  We raised it.  We made

24  it very clear that we disagree with having Paragraph 7 in this

25  order.

```
 1            What the defendants have taken out of context that
 2   goes along with our proposal for the new order that we believe,
 3   as of this point, defendants and plaintiffs have only agreed to
 4   28 plaintiff depositions.  I will have --
 5            JUDGE KUGLER:  Counsel, counsel, excuse me.  I need to
 6   interrupt you for a moment.  I'm going to put you on hold.
 7   Don't lose your thought.  I will be back within two minutes.
 8   Okay?
 9            MR. NIGH:  Thank you, Your Honor.
10            (Brief recess taken at 12:15 p.m.)
11            JUDGE KUGLER:  Okay, I'm back.
12            MR. NIGH:  Thank you, Your Honor.
13            JUDGE KUGLER:  Mr. Nigh, go ahead.
14            MR. NIGH:  We have agreed to 28 plaintiffs'
15   depositions.  At no time have the plaintiffs ever agreed to 28
16   sets of doctor depositions.  And we have agreed as to the
17   timing as to when the doctor depositions will occur.  That does
18   not mean that at any point we agreed to 28 doctor depositions.
19   I want to make that clear because every single document that we
20   have, anything that's been submitted to the Court, nothing says
21   that we agreed to 28 sets of doctor depositions.  It was always
22   understood that there would have to be a winnowing of the cases
23   from 28 to a lower number.  Both sides understand that
24   winnowing has to occur.  The defendants just think it should
25   occur after the doctor depositions; we believe it should occur
```

1    before the doctor deposition.  I'm not sure of an MDL that has

2    28 sets of doctor depositions in a bellwether pool.

3          For contumacy, in looking at the complications

4    arguments that the defendants raise in terms of the numbers of

5    defendants, frankly, as we look at even the 28 cases, the vast

6    majority of those 28 cases are centered around, you know, a

7    small collection of defendants.  It's not a wide number of

8    defendants, as the defendants have asserted; it's a small

9    number of defendants.  And that's for a reason, because we

10   start to see that there are, you know, certain API

11   manufacturers that have a higher level of contaminations and

12   that those manufacturers provided a certain finished dose

13   manufacturers.  We see the same pharmacies over and over again

14   because they all just happen to own a vast majority of the

15   market share in terms of pharmaceutical retail.  So that's what

16   we see.

17         And so when I look at it and I compare the

18   complications in *Benicar*, *Benicar* was actually a more

19   complicated case, frankly, in terms of the types of injuries.

20   We had GI injuries there, as Your Honor may recall, that had 80

21   different types of GI injuries that we had to go through, and

22   that's part of the reason that we saw more cases fall out, as

23   opposed to here, we don't have as much of -- that sort of

24   complication.  And we do believe that eight is a representative

25   number.

```
 1              We think that it should be -- we should take the 28
 2   plaintiff depositions and then we think it should be narrowed
 3   down, winnowed down to eight cases, and we actually provided a
 4   timeframe as to which that would occur.  That does not rewrite
 5   CMO 23.  We agree that the doctor depositions should occur in
 6   that timeframe that they occur before October.  The second set
 7   of plaintiffs' depositions -- we'd have the first ten that go
 8   before June 1st, the second set of 18 would happen in the
 9   months of July and August, the cases would be winnowed down,
10   under our proposal, down to eight cases, and then we would take
11   the doctor depositions in the months of September and October.
12   We have -- all of that is included in what we propose.  It
13   could even be the later half of August that we take those
14   doctor depositions and we winnow down the second half of
15   August.  We're open to that suggestion.  But it does not
16   rewrite CMO 23.
17              We are not going back on some agreement we had,
18   absolutely not.  We agreed to 28 plaintiff depositions, we
19   still agree with that, but we do believe that there needs to be
20   a winnowing so that we are taking eight sets of doctor
21   depositions.
22              JUDGE KUGLER:  Well, I don't think anybody disagrees
23   that there needs to be a winnowing, and there will be a
24   winnowing.  We're not going to try 28 cases.  But what if we
25   lose a bunch of cases of the 28 before they're even deposed?
```

1          MR. NIGH:  Well, under my proposal, there will

2     probably be at least eight cases that will have doctor

3     depositions because you go from 28, you'd winnow down to eight.

4     If for some reason you lost one of the eight, then you replace

5     them, you go back to eight.

6          The idea of what defense rose that somehow we could

7     dismiss all 14 or 15 of the defense picks, well, frankly, five

8     of those defense picks are -- would have depositions before

9     June 1st.  And so when I speak to say that we had our

10    conversations with the other plaintiffs' counsel already and we

11    believe that we're going forward with all ten of those cases,

12    that's already five that don't look like they're going to be

13    dismissed, so I don't think there's going to be this 15

14    dismissals as the defendants are creating this possibility.

15    But if somehow ten cases were dismissed of the defense picks,

16    which I think is very unlikely, having looked at the picks

17    myself and knowing that I even have one in that pool and that

18    is not our intention, our intention is to move forward, but

19    having looked at those cases, you know, if somehow that

20    happens, that's when we address how do we handle the

21    dismissals.  If somehow there are numerous cases that get

22    dismissed and we're left with a lack to be able to get to that

23    eight that we're proposing, that's when we can address, well,

24    how do we handle replacements because now we see that there's

25    eight or nine or ten.  But if there's one that's dismissed,

1    there's no reason to replace that and reset the clock as to how

2    we do discovery.  You know, it's just not necessary.

3          So for us, under our proposal, there will always be

4    eight cases to have eight sets of doctor depositions in that

5    trial pool because if you select eight, you know, you get from

6    28, you winnow down to eight, and one of those gets dismissed

7    or settled, then we replace it from the 28 to refill the

8    population of eight cases.

9          JUDGE KUGLER:  Yes, but the problem with that, of

10   course, is it extends discovery out because the defendants

11   haven't done all the depositions and discovery they need on the

12   20 that weren't included in the original eight, and I know

13   we're going to lose some of the eight.

14         All right.  Just a point of order, counsel, this is

15   generally for all counsel, please don't speculate when you're

16   arguing these motions before me as to what your adversary's

17   motives may or may not be.  Let's just stick to the facts and

18   the law.

19         Now, I think winnowing at this point is premature.

20   We're not going to do it at this point.  What I'd like to see,

21   actually, is these ten depositions take place, see what

22   happens, and then talk to you right after that happens, which

23   would be in June, and we'll go from there.  They will be

24   winnowed down, obviously.  We're not going to have 28 cases go

25   to any kind of trial.  Whether eight's the number, I don't

1    know.  I don't think that's enough but there is some number,

2    less than 28, that we can arrive at if you can't agree on it.

3         I think my contemplation was, you'll remember because

4    it was just, again, pointed out, that my contemplation months

5    ago was that there would probably be about 40 cases in this and

6    you've agreed to 28, that's fine, I don't take issue with that.

7    I think my words at that time was you're going to need armies

8    of lawyers to continue on this parallel track that you want to

9    do.  I still expect you're going to need armies of lawyers to

10   do this.

11        So my contemplation was full discovery on these

12   plaintiffs at the time and I still think my contemplation is

13   full discovery of all the plaintiffs.

14        Why don't we start out with the ten that you've got

15   scheduled and then we'll revisit this matter in June once we

16   have some groundwork done and we know where we're going with

17   this because I find it hard to believe that we're not going to

18   lose a lot of these plaintiffs when their depositions are

19   scheduled or after they've been deposed.  And I don't see

20   really what the burden is of taking depositions of the

21   providers and the prescribers of these ten plaintiffs, you

22   know, in the meantime.  So why don't we go ahead and do that.

23   We will then re-examine this issue.  We'll then make some

24   decisions, if you don't, I will, as to how many we're going to

25   winnow it down to and how we're going to proceed thereafter.

1    All right?

2            MR. NIGH:   Thank you, Your Honor.

3            JUDGE KUGLER:   That leaves I think this issue that the

4    defendants raise about they want some guidance regarding the

5    dismissal of the Louisiana and New Jersey claims which I had

6    ruled were subsumed by the respective State's Products

7    Liability Act.   I'm not sure what it is the defendants want me

8    to do.   I mean, I think that was always the danger of the way

9    the motions were framed by not being plaintiff-specific.   I'm

10   not complaining about that and I'm not criticizing anybody

11   about that.   That's always the problem when we have motions in

12   these kinds of cases that aren't plaintiff-specific.

13           So who wants to speak for the defense about that?

14           MR. GOLDBERG:   Your Honor, this is Seth Goldberg, and

15   I'll cover this issue.

16           I think the guidance that we want, Your Honor, is, in

17   particular, with respect to the Louisiana plaintiffs.   By

18   dismissing those claims, the common law claims, with prejudice,

19   there are no claims left in those cases and we believe that

20   those cases are -- you know, have been ruled on, a judgment has

21   been issued, and we're just looking for guidance from Your

22   Honor as to whether a specific order naming those cases is

23   necessary or if Your Honor's Motion to Dismiss Decision Number

24   5 is sufficient, we'd be happy to submit an order identifying

25   each case by caption, name and number.

```
1              JUDGE KUGLER:  Well, the plaintiffs point out that

2    they have a right to amend these.  The plaintiffs also point to

3    some Louisiana law about what you really have to plead in order

4    to raise a products case in Louisiana.  And I think really, Mr.

5    Goldberg, what you're asking me to do is permanently bar a

6    person from bringing a claim of alleged injury simply because

7    his or her lawyer failed to check a specific box on a form --

8              MR. GOLDBERG:  Your Honor, I think --

9              JUDGE KUGLER:  -- aren't you?

10             MR. GOLDBERG:  Well, actually, we're really just

11   trying to obtain Your Honor's guidance.  I think one of the

12   challenges here is, at least from a technical standpoint,

13   because Your Honor dismissed the claim with prejudice, a Rule

14   15 amendment would not be possible.  And we understand that

15   with respect to all of the claims that Your Honor dismissed

16   without prejudice, there is the right to file a motion for

17   leave to amend.  And so, in our view, we're just trying to get

18   Your Honor's guidance because, as a technical matter, the

19   plaintiffs couldn't use a Rule 15 amendment to correct this --

20   the dismissal of these claims with prejudice.

21             We would point out, Your Honor, that these plaintiffs

22   had the opportunity to assert the claim under the Louisiana

23   Products Liability Act and did not do that.  But, you know,

24   what we're really trying to get from Your Honor is guidance as

25   to how this should move forward for these claims, claims that
```

1  have been dismissed with prejudice, where Rule 15 would not be

2  available to these plaintiffs in light of that dismissal.

3         JUDGE KUGLER:  Well, you're correct, the common law

4  claims have been dismissed and cannot be re-raised.  I'm not

5  sure, though, that the pleadings aren't sufficient to have

6  raised the Products Liability Act claims.

7         You're asking my guidance and here's what I'm going to

8  tell you:  I think this is better done at a motion for summary

9  judgment stage, and what I've done in the past is use an order

10 to show cause process, in other words, we direct -- you give me

11 a letter as to this plaintiff and then I will enter an order to

12 show cause why summary judgment shouldn't be entered against

13 that plaintiff based on the Court's prior ruling in the case,

14 and that way you don't have to write a lot of briefs and all

15 that kind of stuff.  I think that's the best way to tee that up

16 at the summary judgment stage for those cases that have not and

17 will not raise the Products Liability Act claims.  Okay?

18        MR. GOLDBERG:  I think I understand what Your Honor is

19 saying.  I think our concern is that for some of these

20 plaintiffs that are in the bellwether pool, for example, we'll

21 work these cases up and our concern is that they would be

22 dismissed at summary judgment on this issue that's present

23 before the Court now.  But I hear Your Honor's guidance and we

24 can certainly -- we can do that.  I think that's just -- that's

25 the concern that we have is that we will work up cases that

1   will ultimately be dismissed, but I guess that's part of this.

2        JUDGE KUGLER:  Well, there's no question that would be

3   a legitimate concern, but I'm hard pressed to believe that

4   these plaintiffs in Louisiana aren't stating a claim that they

5   were harmed because of a product.  However they term it and

6   they phrase it, that's what the case is about:  They're harmed

7   because of a certain product they think was defective and

8   harmed them.  So I think it's going to be a tough road, I'm not

9   saying it's impossible, I just think it's a tough road to

10  dismiss any chance that they might have of going forward with a

11  claim that they were harmed by the defendants' product.

12  Anyway, that's where we are.

13        MR. GOLDBERG:  Understood, Your Honor.

14        JUDGE KUGLER:  We'll go there at the appropriate time.

15        All right.  Anything else that you want to raise with

16  me?

17        MR. GOLDBERG:  Nothing --

18        MR. SLATER:  I don't think there's anything from the

19  plaintiffs, Your Honor.

20        JUDGE KUGLER:  Anything from defense counsel, Mr.

21  Goldberg?

22        MR. GOLDBERG:  Nothing from the defense, Your Honor.

23        JUDGE KUGLER:  All right.  Well, I hope everyone is

24  staying healthy and well.  I hope everyone is getting their

25  vaccinations, I hope.

```
 1              I will give you some news about the Court.  I've
 2    actually scheduled two criminal trials in June because we are
 3    going to start to do criminal trials in June.  I've scheduled a
 4    bunch of in-court pleas and sentences in criminal matters in
 5    April and May, so we're starting to reopen the courthouse
 6    slowly.  We're not contemplating -- sorry, we're not
 7    contemplating any in-court civil matters yet, but I think if
 8    the pace of vaccinations continues, I think sometime in the
 9    summer we can start bringing people in in civil matters.  So
10    clearly by the fall, late fall, when we contemplate doing
11    Daubert motions and hearings, we'll be able to do those in the
12    courtroom as scheduled without too much trouble.  So that's
13    where we are in the court.
14              The next April conference will be by phone, as of now
15    the May conferences will be by phone.  But stay tuned, I'll
16    have more information for you as we get towards the summer.
17              Anyway, have a good day, everybody.  And those of you
18    who are celebrating Easter, happy Easter.  Those of you who
19    have Passover celebrations in the future, happy Passover.  Take
20    care everybody.  Thank you.
21              MR. SLATER:  Thank you, Your Honor.
22              MR. GOLDBERG:  Thank you.
23              (The proceedings concluded at 12:32 p.m.)
24
25
```

1          I certify that the foregoing is a correct transcript

2   from the record of proceedings in the above-entitled matter.

3

4   */S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR*
    *Court Reporter/Transcriber*

5

6   *04/4/2021*
    *Date*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

/S [1] - 91:4

**0**

*04/4/2021* [1] - 91:6
*07068* [1] - 1:15
*08101* [1] - 1:8
*08540* [1] - 3:9

**1**

*1* [2] - 31:4, 68:4
*10,000* [1] - 57:10
*100,000* [1] - 38:5
*10019* [1] - 2:7
*103* [1] - 1:14
*10:00* [2] - 1:9, 4:3
*11* [1] - 14:22
*11:32* [1] - 64:5
*11:38* [1] - 64:17
*12* [7] - 38:2, 42:17, 71:7, 71:17, 72:1, 72:6, 73:17
*12:15* [1] - 80:10
*12:30* [1] - 42:23
*12:32* [1] - 90:23
*12:48* [1] - 49:12
*13* [1] - 10:7
*14* [4] - 70:18, 71:8, 79:5, 83:7
*14th* [1] - 62:8
*15* [10] - 50:2, 50:10, 64:8, 75:5, 76:9, 83:7, 83:13, 87:14, 87:19, 88:1
*15219* [1] - 2:19
*15th* [1] - 75:12
*16* [2] - 20:15, 20:23
*1638* [1] - 2:3
*17th* [1] - 2:14
*18* [2] - 75:16, 82:8
*1835* [1] - 1:17
*19-md-02875-RBK-KMW* [1] - 1:4
*19103* [2] - 1:18, 2:14
*19422* [1] - 3:4
*1st* [7] - 72:24, 73:8, 73:22, 74:8, 75:16, 82:8, 83:9

**2**

*20* [5] - 23:8, 75:21, 75:22, 84:12
*200,000* [1] - 16:6
*2019* [4] - 23:8, 25:14, 31:9, 31:14
*2020* [1] - 29:14
*2021* [1] - 1:8
*21* [1] - 3:8

*2150* [1] - 1:20
*22* [1] - 66:5
*23* [6] - 20:15, 75:14, 75:17, 76:21, 82:5, 82:16
*23rd* [1] - 65:18
*24* [1] - 78:11
*24th* [2] - 75:20, 77:21
*2500* [1] - 2:22
*27* [1] - 68:12
*28* [36] - 20:15, 20:24, 70:2, 70:4, 70:11, 70:23, 71:17, 72:4, 72:5, 73:15, 73:17, 75:7, 75:12, 76:2, 76:25, 77:8, 80:4, 80:14, 80:15, 80:18, 80:21, 80:23, 81:2, 81:5, 81:6, 82:1, 82:18, 82:24, 82:25, 83:3, 84:6, 84:7, 84:24, 85:2, 85:6
*283,000* [1] - 36:2
*29* [2] - 44:5, 44:10
*2900* [1] - 1:17
*29th* [1] - 7:2

**3**

*3* [1] - 31:4
*30* [4] - 2:14, 44:6, 44:9, 44:11
*30(b)(6* [6] - 28:4, 28:20, 33:20, 33:23, 34:4, 35:13
*30305* [1] - 2:23
*30th* [4] - 27:10, 42:4, 65:18, 66:5
*31* [1] - 1:8
*316* [1] - 2:10
*32502* [1] - 2:10
*3333* [1] - 2:22
*34* [1] - 8:5
*35* [6] - 36:2, 38:5, 43:3, 49:21, 49:24, 57:23
*35,000* [1] - 56:19
*37* [1] - 44:2
*38th* [1] - 2:18
*3M* [1] - 19:1

**4**

*4* [2] - 31:4, 65:19
*4,000* [10] - 35:23, 36:5, 37:22, 38:3, 38:4, 38:11, 39:7, 55:4, 56:18
*40* [3] - 75:23, 76:2, 85:5
*400* [1] - 49:1

*400,000* [1] - 50:8
*41* [2] - 78:1, 79:20
*4200* [8] - 39:7, 40:9, 40:24, 41:8, 41:18, 55:4, 55:8
*45* [3] - 75:4, 75:6, 76:13
*450* [1] - 3:4
*46* [1] - 13:18
*4th* [4] - 1:7, 65:21, 75:17, 75:19

**5**

*5* [1] - 86:24
*55402* [1] - 1:21

**6**

*6* [1] - 68:12
*600* [1] - 2:10
*609-774-1494* [1] - 1:23

**7**

*7* [11] - 34:13, 34:16, 34:20, 35:17, 52:19, 54:20, 69:3, 72:14, 77:23, 79:24
*70,000* [1] - 16:7
*74* [1] - 23:11

**8**

*80* [1] - 81:20
*800* [1] - 1:20
*81* [1] - 49:1
*888* [1] - 2:6
*8:00* [1] - 42:22

**9**

*90277* [1] - 2:3
*91* [2] - 43:1, 44:2
*9th* [6] - 13:21, 14:13, 14:21, 15:2, 32:18

**A**

*a.m.* [4] - 1:9, 4:3, 64:5, 64:17
*ability* [1] - 11:5, 37:5, 37:11
*able* [18] - 10:14, 23:15, 27:25, 28:16, 28:17, 35:1, 35:2, 42:14, 43:2, 43:8, 47:10, 51:9, 57:10, 71:6, 73:4, 78:9, 83:22, 90:11
*above-entitled* [1] - 91:2

*Abraham* [6] - 5:25, 9:21, 9:23, 9:25, 12:5, 12:24
*ABRAHAM* [6] - 3:7, 5:24, 9:21, 9:24, 12:5, 12:24
*absence* [2] - 17:16, 23:4
*absent* [1] - 32:14
*absolutely* [5] - 5:13, 53:19, 57:15, 76:15, 82:18
*acceptable* [1] - 53:18
*access* [2] - 35:1, 35:2
*accommodation* [1] - 15:17
*accomplish* [1] - 59:21
*accordance* [1] - 78:17
*according* [2] - 9:6, 20:9
*accurate* [4] - 31:1, 41:14, 44:15, 45:5
*Act* [4] - 86:7, 87:23, 88:6, 88:17
*Actavis* [2] - 2:24, 2:24
*acting* [1] - 48:21
*ACTION* [1] - 1:3
*action* [1] - 52:2
*Actos* [2] - 26:7, 27:25
*actual* [1] - 33:24
*Adam* [4] - 4:14, 8:16, 52:23, 62:13
*ADAM* [1] - 1:14
*add* [3] - 7:22, 8:17, 24:18
*adding* [1] - 71:4
*addition* [4] - 26:23, 38:3, 69:20, 71:3
*additional* [14] - 6:4, 7:4, 11:1, 11:5, 20:16, 37:21, 38:5, 39:4, 42:12, 48:18, 50:1, 60:14, 67:21, 77:17
*additionally* [2] - 20:18, 76:24
*address* [15] - 5:8, 5:10, 5:12, 7:12, 12:20, 17:22, 23:5, 37:13, 38:18, 38:21, 57:17, 60:9, 61:1, 83:20, 83:23
*addressed* [2] - 13:13, 23:9
*addressing* [5] - 5:23, 6:1, 13:4, 14:5, 74:24

*adequate* [1] - 77:9
*advance* [1] - 56:24
*advanced* [1] - 61:15
*adversary's* [1] - 84:16
*advice* [1] - 19:4
*affirmatively* [1] - 44:8
*afraid* [1] - 36:6
*afternoon* [2] - 42:12, 49:8
*agenda* [3] - 24:7, 65:12, 69:14
*ago* [6] - 9:20, 47:10, 69:10, 75:4, 75:6, 85:5
*agree* [19] - 6:2, 6:11, 7:22, 10:22, 11:22, 12:5, 12:6, 16:15, 27:19, 45:12, 48:18, 51:14, 70:1, 70:5, 75:20, 76:8, 82:5, 82:19, 85:2
*agreed* [15] - 10:15, 21:13, 73:11, 73:13, 76:3, 77:22, 78:10, 80:3, 80:14, 80:15, 80:16, 80:18, 80:21, 82:18, 85:6
*agreement* [9] - 40:17, 43:7, 59:16, 59:17, 69:9, 70:1, 70:10, 78:14, 82:17
*ahead* [2] - 8:18, 15:16, 28:12, 28:13, 29:15, 29:24, 42:9, 42:17, 54:25, 67:25, 80:13, 85:22
*aided* [1] - 1:25
*ALFANO* [1] - 2:17
*alleged* [1] - 87:6
*allocation* [1] - 71:2
*allow* [4] - 28:2, 57:12, 77:9, 77:10
*allowed* [1] - 55:7
*allows* [2] - 37:13, 56:24
*almost* [2] - 20:21, 50:8
*alone* [2] - 25:1, 71:19
*ALSO* [1] - 3:11
*amalgamation* [1] - 77:4
*amend* [2] - 87:2, 87:17
*amendment* [2] - 87:14, 87:19
*amount* [2] - 45:2, 47:7, 48:24
*ample* [1] - 36:15
*analyze* [1] - 36:16

*analyzing* [1] - 18:12
*AND* [1] - 1:10
*Andrew* [2] - 17:24, 18:3
*ANDREW* [1] - 2:6
*answer* [4] - 29:21, 40:19, 41:3, 78:1
*anticipate* [2] - 20:20, 32:19
*anticipation* [1] - 25:5
*anyway* [3] - 18:19, 89:12, 90:17
*API* [3] - 22:4, 77:2, 81:10
*apologies* [1] - 67:24
*apologize* [5] - 21:19, 29:25, 37:7, 39:1, 48:3
*apparent* [1] - 12:17
*appear* [1] - 79:22
*applications* [4] - 9:2, 11:24, 47:12, 62:21
*applies* [1] - 58:20
*apply* [1] - 11:16
*appreciate* [1] - 62:16
*approach* [2] - 58:17, 62:6
*appropriate* [9] - 21:6, 27:16, 27:21, 38:1, 39:15, 40:3, 52:1, 59:7, 89:14
*appropriately* [1] - 20:5
*approval* [1] - 77:25
*approved* [1] - 26:1
*April* [9] - 13:21, 14:12, 14:21, 15:2, 32:18, 62:9, 90:5, 90:14
*areas* [3] - 7:2, 8:14, 43:4
*argue* [4] - 34:15, 47:9, 62:14, 62:25
*arguing* [3] - 49:16, 49:17, 84:16
*argument* [4] - 34:16, 34:21, 39:22, 69:3
*arguments* [4] - 5:4, 36:8, 56:10, 81:4
*armies* [2] - 85:7, 85:9
*arms* [1] - 60:10
*Arnold* [1] - 68:20
*arrive* [1] - 85:2
*aside* [1] - 43:18
*assert* [2] - 50:24, 87:22
*asserted* [1] - 81:8
*assist* [1] - 36:17
*assurance* [2] - 8:8, 12:1

*assure* [1] - 15:7
*assured* [1] - 16:13
*Atlanta* [1] - 2:23
*attachments* [7] - 44:10, 44:11, 44:16, 44:17, 44:18, 44:20, 44:21
*attention* [1] - 53:22
*Attorney* [1] - 3:9
*attorney* [7] - 15:1, 18:8, 18:22, 19:2, 19:6, 20:14, 20:23
*attorney-client* [6] - 15:1, 18:8, 18:22, 19:2, 20:14, 20:23
*attorneys* [1] - 19:3
*audio* [1] - 4:7
*August* [2] - 82:9, 82:13, 82:15
*Aurobindo* [26] - 3:5, 8:12, 13:3, 13:19, 13:24, 14:5, 14:13, 15:18, 15:19, 19:19, 20:12, 21:7, 22:1, 22:4, 22:7, 22:17, 23:22, 24:15, 24:25, 26:5, 29:8, 30:13, 36:9, 36:23, 37:1, 60:7
*Aurobindo's* [1] - 25:24
*Aurolife* [1] - 3:5
*authorization* [1] - 68:4
*auto* [1] - 30:15
*automatically* [1] - 19:6
*available* [5] - 17:17, 38:18, 58:1, 63:18, 88:2
*Avenue* [2] - 1:20, 2:6
*await* [1] - 64:11
*aware* [3] - 25:25, 64:9, 70:22

## B

*baby* [1] - 47:7
*background* [1] - 40:19
*backup* [1] - 29:13
*bad* [1] - 55:6
*ball* [1] - 51:1
*bar* [1] - 87:5
*barrel* [1] - 37:8
*baseball* [1] - 64:22
*based* [12] - 17:11, 25:7, 32:4, 37:5, 41:3, 56:2, 57:11, 57:25, 58:16, 60:7, 71:17, 88:13

*basic* [1] - 79:10
*basis* [3] - 10:7, 24:6, 25:17
*batches* [1] - 22:6
*Baylen* [1] - 2:10
*Beach* [1] - 2:3
*bears* [1] - 13:12
*bed* [1] - 22:11
*began* [3] - 7:14, 9:3, 9:4
*begin* [3] - 4:4, 23:7, 48:25
*beginning* [2] - 40:14, 68:12
*behalf* [12] - 4:12, 4:15, 4:17, 5:23, 6:22, 13:4, 14:5, 52:22, 66:1, 68:22, 74:23, 79:8
*behind* [2] - 41:3, 76:15
*BEHRAM* [1] - 2:2
*Behram* [2] - 5:9, 5:14
*Behram's* [1] - 6:3
*belief* [2] - 41:6, 41:14
*belies* [1] - 24:23
*believes* [1] - 43:5
*Bell* [1] - 3:4
*bellwether* [9] - 69:1, 70:22, 72:17, 74:11, 74:24, 78:8, 78:12, 81:2, 88:20
*bellwethers'* [1] - 75:18
*benefit* [1] - 36:23
*Benicar* [6] - 70:8, 70:9, 74:14, 76:24, 81:18
*best* [4] - 27:9, 51:4, 57:24, 88:15
*better* [5] - 28:6, 65:3, 65:4, 71:2, 88:8
*between* [3] - 10:8, 19:2, 19:3
*beyond* [1] - 51:5
*bind* [1] - 61:22
*bit* [5] - 17:24, 18:25, 41:6, 63:4, 63:12
*bite* [1] - 9:14
*Blue* [1] - 3:4
*board* [1] - 76:22
*BOSICK* [1] - 2:17
*bother* [1] - 22:12
*bottom* [2] - 24:8, 24:9
*box* [1] - 87:7
*bridge* [1] - 60:21
*brief* [2] - 23:10, 26:8, 32:1
*Brief* [1] - 64:5, 64:17, 80:10

*briefed* [1] - 54:16
*briefly* [3] - 15:12, 29:2, 55:22
*briefs* [1] - 88:14
*bring* [1] - 53:7
*bringing* [2] - 87:6, 90:9
*brought* [7] - 28:19, 44:8, 51:12, 51:15, 53:22, 58:10, 58:12
*bucket* [1] - 56:21
*bug* [1] - 47:12
*build* [1] - 27:25
*Building* [1] - 1:7
*bunch* [2] - 82:25, 90:4
*burden* [4] - 33:4, 37:16, 58:19, 85:20
*BURSON* [1] - 2:5
*business* [2] - 59:25, 60:17
*busy* [1] - 61:10
*BY* [10] - 1:14, 1:17, 1:20, 2:2, 2:6, 2:9, 2:13, 2:18, 2:21, 3:2

## C

*cache* [2] - 37:23, 55:8
*calendar* [1] - 62:5
*California* [1] - 2:3
*Camden* [1] - 1:8
*camera* [2] - 20:6, 41:17
*Camille* [7] - 1:22, 4:8, 4:9, 64:14, 65:8, 65:9, 91:4
*camillepedano@
gmail.com* [1] - 1:23
*Canfara* [1] - 88:22
*CANFARA* [1] - 68:22
*cannot* [2] - 50:16, 88:4
*caption* [1] - 86:25
*care* [2] - 46:4, 90:20
*careful* [1] - 33:7
*cart* [1] - 39:6
*case* [38] - 7:11, 19:1, 23:15, 23:20, 23:25, 26:7, 27:6, 27:17, 27:19, 27:24, 36:7, 45:25, 49:25, 50:5, 56:23, 57:22, 66:13, 67:5, 67:6, 67:7, 67:8, 67:12, 67:18, 69:9, 69:20, 70:25, 72:18, 72:20, 78:12, 78:13, 78:25, 79:9, 81:19, 86:25, 87:4, 88:13, 89:6
*cases* [60] - 27:10,

*27:11, 39:24, 44:22, 66:6, 66:8, 66:19, 66:23, 67:21, 69:21, 70:2, 70:4, 70:5, 70:9, 70:14, 70:16, 70:18, 70:23, 72:1, 72:2, 72:7, 72:17, 72:25, 74:2, 74:16, 75:7, 75:24, 76:18, 77:9, 77:12, 77:25, 79:1, 79:6, 80:22, 81:5, 81:6, 81:22, 82:3, 82:9, 82:10, 82:24, 82:25, 83:2, 83:11, 83:15, 83:19, 83:21, 84:4, 84:8, 84:24, 85:5, 86:12, 86:19, 86:20, 86:22, 88:16, 88:21, 88:25
*Cassaras* [1] - 68:19
*CASSARAS* [1] - 68:20
*categories* [3] - 8:4, 8:14, 43:7
*category* [1] - 33:7
*caveat* [1] - 73:23
*CCR* [1] - 91:4
*celebrating* [1] - 90:18
*celebrations* [1] - 90:19
*centered* [1] - 81:6
*Centre* [1] - 2:18
*certain* [10] - 5:4, 19:11, 19:19, 40:6, 40:7, 56:18, 65:20, 81:10, 81:12, 89:7
*certainly* [14] - 4:9, 5:2, 9:23, 22:18, 48:7, 52:19, 53:6, 55:17, 61:21, 63:4, 65:3, 65:23, 76:10, 88:24
*certify* [1] - 91:1
*cetera* [2] - 9:3, 11:25
*challenge* [2] - 49:23, 50:3
*challenges* [2] - 42:15, 87:12
*chambers* [1] - 64:7
*chance* [1] - 89:10
*change* [1] - 67:9
*changed* [1] - 75:11
*changes* [4] - 66:15, 66:17, 67:11, 67:21
*charge* [1] - 63:22
*chase* [1] - 39:5
*check* [2] - 41:5, 87:7
*checking* [1] - 6:9
*cherry* [1] - 39:19
*chime* [1] - 5:3

**China** [2] - 42:19, 44:3
**Chinese** [7] - 42:4, 42:16, 45:23, 46:2, 49:19, 49:22, 50:14
**CIPRIANI** [1] - 3:2
**circle** [2] - 37:2, 41:12
**circumstances** [2] - 28:2, 32:24
**cited** [4] - 23:9, 26:7, 27:10, 27:11
**CIVIL** [1] - 1:3
**civil** [2] - 90:7, 90:9
**claim** [5] - 87:6, 87:13, 87:22, 89:4, 89:11
**claims** [11] - 86:5, 86:18, 86:19, 87:15, 87:20, 87:25, 88:4, 88:6, 88:17
**clarified** [1] - 50:13
**clause** [8] - 69:13, 69:17, 72:9, 72:13, 73:12, 79:20, 79:23
**cleanup** [1] - 47:11
**clear** [15] - 29:21, 42:25, 43:8, 46:8, 48:10, 49:24, 53:20, 69:8, 69:10, 69:12, 69:16, 74:25, 79:16, 79:24, 80:19
**clearly** [4] - 26:8, 38:13, 90:10
**client** [9] - 7:4, 14:16, 15:1, 18:8, 18:22, 19:2, 19:7, 20:14, 20:23
**clients** [1] - 8:10
**clock** [1] - 84:1
**close** [5] - 9:13, 11:12, 49:1, 59:25, 60:17
**closely** [1] - 15:24
**closer** [2] - 17:24, 77:15
**CMC** [1] - 77:21
**CMO** [5] - 75:14, 75:17, 76:21, 82:5, 82:16
**Coast** [1] - 2:3
**Cohen** [1] - 1:7
**collapsed** [1] - 65:2
**colleague** [1] - 24:17
**colleagues** [1] - 5:3
**collect** [1] - 7:7
**collection** [1] - 81:7
**color** [1] - 48:9
**coming** [3] - 15:23, 28:20, 46:13
**Commencing** [1] - 1:9
**comment** [2] - 6:2, 6:3
**comments** [1] - 49:4
**committed** [1] - 51:24

**common** [2] - 86:18, 88:3
**commonsense** [1] - 57:16
**communication** [2] - 7:3, 55:3
**communications** [4] - 18:17, 18:24, 46:4, 60:8
**companies** [1] - 30:15
**companion** [1] - 11:4
**company** [2] - 30:12, 33:21
**compare** [1] - 81:17
**compel** [4] - 43:10, 49:17, 50:6, 51:10
**competitive** [1] - 65:1
**compilations** [1] - 26:15
**complaining** [1] - 86:10
**complete** [13] - 5:19, 6:11, 6:15, 7:17, 9:9, 9:11, 10:10, 11:4, 17:14, 34:18, 36:15, 37:11, 74:1
**completed** [2] - 20:21, 62:22
**complex** [1] - 39:24
**complicated** [1] - 81:19
**complication** [1] - 81:24
**complications** [2] - 81:3, 81:18
**comply** [1] - 48:22
**compressed** [1] - 37:15
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concern** [8] - 7:23, 10:1, 19:13, 43:14, 88:19, 88:21, 88:25, 89:3
**concerned** [6] - 8:5, 10:3, 13:14, 36:13, 61:22, 63:13
**concerning** [2] - 36:9, 52:1
**concise** [1] - 55:15
**concluded** [1] - 90:23
**conclusions** [1] - 46:2
**concrete** [1] - 32:14
**conduct** [2] - 32:17, 37:5
**confer** [23] - 10:10, 14:19, 15:3, 21:4, 21:11, 28:15, 42:20, 43:4, 43:17, 43:19,

43:24, 44:25, 45:4, 46:9, 49:5, 49:9, 49:13, 50:22, 50:23, 58:11, 58:13, 58:19, 60:15
**conference** [20] - 4:5, 7:11, 13:16, 17:12, 20:4, 21:6, 28:22, 31:9, 34:10, 60:25, 61:12, 61:25, 62:6, 67:19, 68:7, 68:24, 69:10, 78:11, 79:17, 90:14
**CONFERENCE** [1] - 1:6
**conferences** [5] - 15:10, 18:11, 27:17, 90:15
**conferred** [3] - 59:15, 59:16, 59:17
**conferring** [3] - 11:8, 18:4, 19:16
**confers** [3] - 11:9, 61:14, 61:17
**confident** [5] - 9:18, 16:24, 51:3, 51:8, 51:16
**confidentiality** [1] - 15:1
**confirm** [1] - 41:14
**confused** [1] - 68:25
**confusion** [1] - 66:2
**connection** [1] - 34:12
**consequences** [1] - 63:8
**consider** [2] - 35:25, 59:14
**consistent** [1] - 76:5
**constant** [1] - 7:3
**constantly** [2] - 47:8, 48:9
**construction** [1] - 9:2
**contact** [1] - 38:23
**contained** [1] - 44:18
**contaminations** [1] - 81:11
**contemplate** [1] - 90:10
**contemplated** [3] - 32:24, 75:25, 76:12
**contemplating** [2] - 90:6, 90:7
**contemplation** [4] - 85:3, 85:4, 85:11, 85:12
**contentious** [1] - 11:9
**context** [5] - 38:9, 43:15, 57:12, 69:16, 80:1
**contingent** [1] - 37:5

**continually** [1] - 50:24
**continue** [8] - 7:12, 10:24, 10:25, 16:12, 17:7, 20:3, 21:4, 85:8
**Continued** [2] - 2:1, 3:1
**continues** [3] - 26:5, 62:18, 90:8
**continuing** [1] - 16:10
**control** [1] - 29:11
**contumacy** [1] - 81:3
**conversation** [1] - 7:14
**conversations** [1] - 83:10
**convey** [1] - 55:2
**Cooper** [1] - 1:7
**cooperatively** [1] - 11:9
**coordinate** [1] - 54:4
**copies** [2] - 31:11, 45:20
**copy** [2] - 24:4, 25:10
**corralled** [1] - 55:5
**correct** [15] - 17:17, 17:18, 30:22, 30:23, 31:2, 49:15, 52:12, 53:24, 57:9, 58:23, 66:8, 66:12, 87:19, 88:3, 91:1
**correctly** [2] - 14:12, 39:22
**correspond** [1] - 61:20
**corresponding** [1] - 24:4
**Court** [43] - 1:22, 15:5, 16:14, 19:25, 21:15, 22:12, 28:14, 31:25, 32:17, 33:2, 33:4, 35:15, 35:18, 35:20, 36:1, 36:20, 38:7, 38:16, 38:21, 39:13,

48:11, 48:12, 49:4, 49:10, 51:5, 55:10, 56:7, 58:4, 60:10, 61:12, 75:19, 76:12, 77:13, 77:17, 77:21, 78:18, 79:3, 79:17, 80:20, 88:23, 90:1, 91:4
**COURT** [4] - 1:1, 64:15, 65:7, 65:10
**court** [11] - 4:7, 21:3, 22:16, 26:1, 64:23, 65:6, 77:25, 78:10, 90:4, 90:7, 90:13
**Court's** [6] - 48:23, 53:15, 53:22, 75:14, 76:5, 88:13
**court-approved** [1] - 26:1
**courthouse** [1] - 90:5
**Courthouse** [1] - 1:7
**courtroom** [1] - 90:12
**Courtroom** [1] - 3:12
**courts** [1] - 28:3
**cover** [6] - 35:14, 44:23, 50:21, 50:22, 86:15
**covered** [2] - 4:21, 31:4
**CRC** [1] - 91:4
**create** [1] - 50:15
**creates** [2] - 9:11, 71:1
**creating** [2] - 50:16, 83:14
**criminal** [3] - 90:2, 90:3, 90:4
**critical** [1] - 78:21
**criticizing** [1] - 86:10
**cross** [5] - 35:23, 37:23, 39:18, 41:5, 60:21
**cross-check** [1] - 41:5
**cross-sampling** [1] - 37:23
**cross-section** [2] - 35:23, 39:18
**CRR** [1] - 91:4
**crucial** [1] - 50:7
**Cunningham** [2] - 68:3, 68:18
**custodial** [12] - 13:15, 14:1, 14:13, 14:15, 14:22, 16:5, 26:3, 26:16, 26:20, 40:12, 40:21, 49:1
**custodian** [2] - 26:25, 52:15
**custodian's** [3] - 24:3, 24:4, 26:21
**custodians** [5] -

23:20, 26:1, 26:25, 27:5, 49:2
cut [1] - 39:5
cutoff [2] - 11:3, 11:5
cuts [1] - 59:8

**D**

danger [1] - 86:8
Daniel [3] - 67:15, 69:7, 79:12
DANIEL [1] - 2:9
data [9] - 9:2, 13:15, 25:2, 26:22, 29:13, 30:10, 30:17, 30:22, 33:11
database [1] - 29:13
databases [2] - 9:1, 11:24
date [1] - 13:22
Date [1] - 91:6
dated [2] - 7:1, 51:20
Daubert [1] - 90:11
Davis [2] - 35:13, 41:13
DAVIS [1] - 2:21
DAY [1] - 68:19
day-by-day [1] - 10:6
days [3] - 75:4, 75:6, 76:13
de [4] - 19:11, 19:20, 20:15
de-designated [3] - 19:20, 20:15
deadline [6] - 13:21, 14:13, 14:19, 14:20, 16:15, 17:10
deadlines [2] - 17:6, 37:4
deal [2] - 42:16, 59:9
dealing [6] - 23:1, 27:2, 27:11, 42:4, 52:9, 60:20
deals [2] - 31:4, 58:18
December [2] - 25:13, 31:14, 55:9
decide [3] - 34:18, 52:21, 77:18
decided [1] - 61:1
decides [1] - 63:14
deciding [1] - 27:9
Decision [1] - 86:23
decision [6] - 18:12, 32:5, 52:16, 52:19, 54:20, 59:19
decisions [3] - 19:15, 61:22, 85:24
declare [1] - 69:19
deep [1] - 36:20
deeply [1] - 37:15
defective [1] - 89:7

defendant [9] - 40:3, 48:21, 58:11, 58:16, 60:4, 60:11, 61:20, 61:22
Defendant [1] - 2:19
defendant-specific [1] - 58:16
defendants [59] - 6:22, 34:8, 36:12, 46:25, 47:21, 48:14, 50:24, 51:1, 55:12, 55:23, 57:16, 58:3, 58:18, 58:19, 59:9, 59:20, 60:5, 60:7, 60:12, 60:20, 61:15, 61:19, 61:20, 61:23, 65:20, 66:1, 66:10, 69:2, 69:8, 70:15, 72:16, 73:12, 75:21, 75:22, 77:4, 77:6, 77:10, 77:11, 77:14, 78:1, 78:3, 78:21, 78:23, 79:3, 79:21, 80:1, 80:3, 80:24, 81:4, 81:5, 81:7, 81:8, 81:9, 83:14, 84:10, 86:4, 86:7
Defendants [4] - 2:15, 2:23, 3:5, 3:9
defendants' [6] - 23:10, 41:24, 71:5, 79:5, 79:23, 89:11
defense [32] - 4:25, 5:3, 11:24, 43:18, 47:13, 53:11, 58:9, 60:24, 61:10, 63:14, 66:10, 66:17, 67:11, 68:10, 68:15, 69:3, 72:2, 73:25, 74:1, 74:6, 74:7, 74:21, 74:23, 76:5, 79:1, 83:6, 83:7, 83:8, 83:15, 86:13, 89:20, 89:22
defer [2] - 33:8, 33:15
deficiencies [2] - 7:15, 67:20
definitely [1] - 62:7
definition [1] - 57:19
degree [1] - 40:1
delay [2] - 64:19, 65:16
delayed [1] - 17:16
delete [1] - 30:16
deleted [1] - 25:16
deletion [1] - 30:10
demanded [1] - 14:20
demands [1] - 48:23
demonstrate [2] - 37:2, 57:25

denied [1] - 23:15
deposed [8] - 26:17, 69:22, 73:21, 73:22, 75:16, 75:19, 82:25, 85:19
deposition [18] - 28:20, 33:20, 33:23, 34:4, 34:14, 35:12, 41:13, 47:6, 62:17, 62:21, 62:25, 63:3, 63:4, 63:9, 63:12, 73:25, 74:7, 81:1
depositions [59] - 8:13, 12:16, 15:11, 15:23, 16:25, 17:1, 24:1, 25:8, 26:15, 28:4, 36:12, 36:21, 37:3, 37:5, 37:12, 47:11, 48:17, 54:10, 61:6, 63:18, 70:3, 70:8, 70:10, 70:11, 70:14, 70:20, 70:24, 71:13, 71:14, 71:19, 71:23, 72:24, 73:18, 73:19, 76:9, 76:17, 80:4, 80:15, 80:16, 80:17, 80:18, 80:21, 80:25, 81:2, 82:2, 82:5, 82:7, 82:11, 82:14, 82:18, 82:21, 83:3, 83:8, 84:4, 84:11, 84:21, 85:18, 85:20
deputizing [1] - 38:20
Deputy [1] - 3:12
description [1] - 59:4
designated [6] - 19:12, 19:20, 20:14, 20:15, 20:16
designations [1] - 18:7
despite [1] - 25:9
destroyed [3] - 25:16, 28:7, 37:1
destruction [1] - 31:23
determination [3] - 32:15, 33:25, 34:2
determine [5] - 32:18, 38:11, 49:9, 57:10, 57:13
determined [1] - 49:22
devise [1] - 58:4
different [9] - 5:3, 10:19, 29:20, 30:14, 49:2, 58:21, 58:22, 74:15, 81:21
digest [1] - 62:1
digging [1] - 8:10
diligence [4] - 11:17,

11:22, 12:1, 13:23
diligent [2] - 10:4, 15:8
diligently [3] - 6:9, 7:12, 17:2
diluted [1] - 57:3
direct [3] - 38:7, 40:18, 88:10
directed [4] - 11:23, 38:16, 42:22, 43:20
directing [1] - 23:7
direction [1] - 35:17
directly [2] - 60:6, 65:22
disagree [3] - 32:11, 75:1, 79:24
disagreed [1] - 79:16
disagreement [1] - 70:6
disagreements [1] - 70:15
disagrees [1] - 82:22
disclose [1] - 45:5
disclosure [1] - 9:7
discoverable [1] - 24:22
discovery [39] - 5:8, 7:15, 10:9, 10:10, 13:3, 13:23, 24:23, 28:6, 28:16, 34:23, 35:7, 35:10, 39:23, 39:24, 41:21, 46:19, 47:3, 47:4, 50:13, 52:7, 52:8, 53:14, 53:20, 53:21, 54:14, 54:23, 62:12, 71:6, 74:10, 75:6, 75:24, 76:1, 76:7, 78:24, 84:2, 84:10, 84:11, 85:11, 85:13
discrepancies [1] - 50:17
discuss [6] - 35:9, 44:6, 44:19, 54:22, 62:2, 62:11
discussed [7] - 20:18, 42:23, 48:16, 49:6, 49:12, 50:19, 78:3
discussion [9] - 6:10, 11:1, 12:8, 19:18, 19:23, 23:11, 44:13, 45:1, 78:21
discussions [2] - 19:8, 76:12
Dismiss [1] - 86:23
dismiss [8] - 66:7, 66:20, 69:19, 78:2, 78:25, 79:1, 83:7, 89:10
dismissal [12] - 65:14,

65:19, 66:22, 69:13, 69:17, 69:24, 72:9, 72:12, 78:17, 86:5, 87:20, 88:2
dismissals [3] - 73:8, 83:14, 83:21
dismissed [21] - 67:5, 67:6, 67:7, 72:3, 72:17, 72:18, 77:24, 78:7, 78:12, 83:13, 83:15, 83:22, 83:25, 84:6, 87:13, 87:15, 88:1, 88:4, 88:22, 89:1
dismissing [2] - 79:4, 86:18
dispute [5] - 39:9, 48:1, 77:24, 78:3, 78:14
disputed [1] - 52:15
disputes [8] - 20:22, 52:7, 52:8, 53:14, 53:20, 53:21, 54:14, 54:15
dissuade [1] - 63:24
distinct [1] - 30:16
distract [1] - 48:11
distraction [1] - 47:20
distressing [1] - 43:23
distributors [1] - 77:3
DISTRICT [3] - 1:1, 1:1, 1:10
District [1] - 4:2
disturbing [1] - 25:24
disturbs [1] - 71:3
division [1] - 65:4
docket [2] - 53:15, 65:20
doctor [21] - 70:7, 70:10, 70:11, 70:20, 70:24, 71:13, 71:23, 73:19, 80:16, 80:17, 80:18, 80:21, 80:25, 81:1, 81:2, 82:5, 82:11, 82:14, 82:20, 83:2, 84:4
Doctor [1] - 37:7
doctors [2] - 70:14, 71:3
doctors' [1] - 71:15
document [32] - 7:9, 8:23, 24:4, 24:22, 24:23, 25:5, 25:16, 26:19, 28:4, 29:6, 29:7, 29:11, 29:18, 30:2, 30:9, 30:10, 30:17, 35:2, 35:20, 40:10, 42:23, 43:22, 44:5, 44:12, 44:23, 50:21, 53:14, 59:2,

59:3, 80:19
**Document** [2] - 44:5,
44:6
**documentation** [1] -
29:11
**documents** [141] - 7:2,
7:4, 7:6, 7:7, 7:25,
8:4, 8:6, 8:14, 9:16,
9:19, 10:8, 12:3,
12:13, 12:14, 12:17,
13:18, 13:25, 14:24,
14:25, 15:19, 15:21,
15:25, 16:6, 16:8,
17:2, 17:8, 19:19,
20:6, 20:9, 20:13,
20:15, 20:16, 20:17,
20:20, 20:23, 20:24,
21:14, 21:22, 21:23,
23:24, 24:2, 24:6,
25:6, 26:12, 27:6,
28:1, 33:1, 33:10,
34:24, 35:1, 35:3,
35:5, 35:23, 36:2,
36:5, 36:24, 36:25,
37:6, 37:21, 37:23,
37:24, 38:1, 38:2,
38:5, 38:9, 38:12,
38:14, 39:4, 39:7,
39:10, 39:12, 39:18,
40:6, 40:9, 40:12,
40:15, 40:16, 40:20,
40:24, 40:25, 41:1,
41:11, 41:16, 41:18,
42:17, 43:1, 43:2,
43:3, 43:9, 43:25,
44:2, 44:14, 44:16,
44:18, 44:22, 45:19,
45:22, 45:24, 46:17,
47:5, 47:25, 48:2,
48:15, 49:18, 49:21,
49:25, 50:2, 50:4,
50:6, 50:9, 50:10,
50:11, 50:15, 50:16,
50:20, 51:10, 52:19,
55:4, 55:8, 55:12,
55:15, 56:1, 56:5,
56:8, 56:21, 57:1,
57:3, 57:19, 57:20,
58:1, 58:24, 59:1,
59:20, 60:20
**done** [19] - 9:14,
16:11, 16:25, 22:3,
25:11, 26:2, 28:9,
37:18, 38:2, 40:17,
46:9, 47:3, 60:9,
74:3, 77:8, 84:11,
85:16, 88:8, 88:9
**Dong** [1] - 62:18
**Doom** [1] - 37:7
**dose** [2] - 77:2, 81:12
**double** [1] - 75:7

**down** [24] - 15:23,
19:9, 20:9, 46:17,
63:4, 70:9, 70:16,
71:25, 72:7, 73:17,
74:12, 76:2, 76:14,
77:12, 79:5, 82:3,
82:9, 82:10, 82:14,
83:3, 84:6, 84:24,
85:25
**download** [1] - 35:3
**Dr** [2] - 52:15, 54:20
**drafted** [2] - 34:17,
78:18
**drama** [1] - 48:12
**drawing** [1] - 76:22
**drilling** [1] - 19:9
**drive** [1] - 26:22
**drives** [2] - 14:1,
17:16
**drop** [3] - 64:2, 77:14,
77:15
**Drugs** [1] - 3:9
**DUANE** [1] - 2:12
**duplicate** [3] - 44:7,
44:10, 44:17
**duplicates** [6] - 27:3,
43:2, 44:1, 44:15,
45:6, 50:12
**during** [4] - 29:8,
43:23, 50:22, 62:17

**E**

**early** [3] - 31:8, 75:10,
79:18
**easiest** [1] - 19:22
**Easter** [2] - 90:18
**edge** [1] - 10:22
**eDiscovery** [1] - 11:20
**edited** [1] - 20:20
**effectively** [1] - 6:3
**efficacious** [1] - 41:10
**effort** [2] - 10:9, 13:23
**efforts** [3] - 11:17,
15:8, 47:11
**eight** [28] - 70:13,
70:14, 70:18, 71:11,
71:17, 72:1, 72:6,
73:17, 76:14, 76:25,
77:5, 81:24, 82:3,
82:10, 82:20, 83:2,
83:3, 83:4, 83:5,
83:23, 83:25, 84:4,
84:5, 84:6, 84:8,
84:12, 84:13
**eight's** [1] - 84:25
**Eisenhower** [1] - 1:14
**either** [8] - 8:23,
30:21, 45:24, 52:18,
63:24, 72:1, 73:6,
73:17

**elevated** [1] - 10:5
**email** [8] - 24:5, 27:5,
34:13, 34:25, 35:6,
38:23, 42:11, 44:23
**emailed** [1] - 65:21
**emails** [6] - 12:13,
24:2, 26:23, 26:24,
27:3, 30:16
**employed** [1] - 58:16
**employees** [1] - 19:5
**employing** [1] - 11:20
**encompass** [1] - 77:6
**encompasses** [1] -
26:8
**encourage** [1] - 63:23
**encouraging** [1] -
7:19
**end** [16] - 7:24, 8:11,
8:22, 9:9, 9:15, 9:17,
10:8, 10:22, 17:15,
28:18, 45:13, 49:5,
51:12, 51:15, 52:17,
54:7
**endeavor** [1] - 7:6
**engaged** [2] - 60:5,
60:7
**engagement** [1] - 61:7
**enormous** [1] - 57:18
**enter** [2] - 65:23,
88:11
**entered** [6] - 66:18,
66:22, 75:13, 75:14,
78:18, 88:12
**entertain** [1] - 34:16
**entire** [2] - 56:2, 57:23
**entitled** [6] - 19:10,
31:11, 31:24, 76:10,
79:9, 91:2
**entries** [1] - 18:16
**equate** [1] - 16:8
**equating** [1] - 48:15
**ERIC** [1] - 3:7
**Eric** [2] - 5:24, 9:24
**ERNEST** [1] - 3:3
**Ernie** [1] - 24:17
**error** [2] - 35:5, 40:1
**ESI** [4] - 27:1, 39:24,
41:7, 49:2
**especially** [1] - 72:22
**ESQUIRE** [15] - 1:14,
1:17, 1:20, 2:2, 2:6,
2:9, 2:13, 2:18, 2:21,
2:22, 3:2, 3:3, 3:3,
3:7, 3:8
**essentially** [5] - 7:10,
18:14, 38:7, 38:10,
56:5
**establish** [3] - 9:3,
32:6, 33:5
**Estate** [1] - 68:22

**estimate** [1] - 14:24
**et** [2] - 9:3, 11:24
**evaluate** [3] - 55:14,
57:6, 60:13
**evidence** [16] - 23:14,
23:16, 24:21, 25:15,
26:3, 26:6, 26:9,
26:11, 27:15, 31:16,
31:21, 31:23, 32:6,
32:15, 33:24, 56:22
**evidentiary** [1] - 33:9
**exact** [1] - 27:3
**exactly** [3] - 25:9,
43:21, 72:13
**examine** [2] - 38:15,
85:23
**example** [10] - 6:13,
19:1, 24:2, 28:3,
30:15, 36:21, 47:22,
57:8, 57:22, 88:20
**except** [1] - 13:17
**exception** [2] - 26:20,
77:22
**exchanged** [1] - 45:23
**excuse** [1] - 80:5
**exercise** [5] - 39:11,
39:14, 39:17, 55:7,
71:12
**exercised** [2] - 11:22,
12:2
**exercising** [1] - 71:7
**exhibit** [1] - 22:6
**exhibits** [2] - 24:1,
26:15
**exist** [3] - 12:17, 27:3,
48:13
**existed** [1] - 23:16
**existence** [1] - 10:11
**exists** [2] - 18:6, 30:17
**expanding** [1] - 39:11
**expect** [11] - 4:20,
12:14, 17:19, 40:25,
48:7, 52:16, 54:19,
59:13, 59:18, 59:19,
85:9
**expecting** [1] - 46:11
**expeditiously** [1] -
62:6
**experience** [2] - 74:9,
74:10
**experiences** [1] -
74:15
**expert** [1] - 37:4
**experts** [1] - 36:16
**explain** [2] - 11:11,
65:23
**explained** [1] - 19:1
**explaining** [1] - 16:23,
34:14, 34:25
**explains** [1] - 12:12

**expressed** [1] - 10:2
**extends** [1] - 84:10
**extension** [1] - 15:20
**extensive** [1] - 62:24
**extent** [6] - 21:16,
27:3, 33:10, 40:23,
60:19, 72:23
**extra** [1] - 73:12
**extraordinary** [1] -
48:24
**EY** [1] - 66:25

**F**

**face** [1] - 43:24
**facially** [1] - 57:21
**facing** [2] - 17:5, 63:6
**fact** [12] - 9:8, 24:22,
25:8, 25:21, 26:4,
26:23, 32:5, 34:17,
46:7, 73:25, 74:1,
74:7
**factors** [1] - 11:21
**facts** [2] - 46:4, 84:17
**factual** [2] - 45:25,
49:17
**failed** [1] - 87:7
**failing** [1] - 26:6
**failure** [5] - 23:2,
23:14, 26:9, 27:14,
38:12
**fairly** [3] - 20:10, 57:2,
57:9
**fairness** [1] - 79:10
**faith** [2] - 24:6, 48:21
**fall** [3] - 81:22, 90:10
**falls** [1] - 33:25
**family** [5] - 38:8,
40:15, 57:12, 59:1
**far** [3] - 7:9, 16:5,
51:22
**fashion** [1] - 21:6
**fast** [3] - 6:8, 17:6,
17:10
**fault** [1] - 10:1
**FDA** [2] - 18:18, 22:6
**fear** [2] - 12:9, 36:7
**February** [2] - 77:21,
78:11
**felt** [1] - 33:4
**FERTEL** [2] - 3:3,
20:11
**Fertel** [1] - 20:12
**few** [6] - 22:9, 45:19,
48:1, 53:6, 63:8,
64:9
**figure** [1] - 8:23
**figured** [1] - 44:14
**file** [7] - 24:3, 24:4,
26:21, 27:1, 35:4,
51:9, 87:16

**filed** [4] - 28:25, 65:15, 65:21, 78:1
**files** [9] - 14:1, 14:13, 14:15, 14:22, 16:5, 26:3, 26:17, 26:21, 38:24
**final** [1] - 13:22
**finally** [1] - 39:21
**fine** [3] - 20:2, 41:15, 85:6
**finish** [2] - 24:19, 62:24
**finished** [2] - 77:2, 81:12
**firms** [3] - 5:3, 50:25, 51:4
**first** [21] - 4:9, 5:7, 14:2, 14:11, 23:9, 28:19, 28:21, 29:5, 32:2, 36:12, 39:14, 60:13, 69:21, 71:9, 72:25, 74:5, 74:7, 74:16, 75:1, 75:16, 82:7
**FISHER** [1] - 2:5
**fit** [2] - 32:23, 77:4
**five** [4] - 24:8, 30:5, 83:7, 83:12
**flabbergasted** [1] - 44:13
**flag** [1] - 35:4
**flesh** [1] - 35:20
**Floor** [1] - 2:18
**Florida** [1] - 2:10
**focus** [2] - 47:10, 62:17
**focused** [2] - 47:11, 71:3
**follow** [6] - 6:14, 10:25, 21:24, 28:24, 38:22, 76:20
**follow-up** [2] - 6:14, 21:24
**followup** [2] - 26:2, 43:5
**FOR** [1] - 1:1
**foregoing** [1] - 91:1
**foreshadowing** [1] - 36:4
**forever** [1] - 15:25
**form** [1] - 87:7
**formalize** [1] - 13:21
**forms** [1] - 30:14
**forth** [4] - 7:2, 7:5, 32:12, 61:18
**forward** [16] - 47:18, 51:13, 55:18, 59:15, 61:18, 69:22, 72:25, 73:1, 73:3, 73:4, 74:17, 74:19, 83:11,
83:18, 87:25, 89:10
**four** [11] - 9:20, 42:5, 42:6, 43:7, 66:15, 66:18, 66:21, 66:23, 67:2, 73:7
**framed** [1] - 86:9
**FRANK** [1] - 2:18
**Frank** [2] - 38:19, 55:21
**frankly** [9] - 36:24, 70:24, 71:8, 71:11, 72:22, 73:7, 81:5, 81:19, 83:7
**FREEMAN** [1] - 1:13
**Friday** [10] - 6:7, 42:21, 43:17, 45:7, 46:10, 54:3, 54:4, 59:25, 60:18, 62:24
**front** [3] - 19:25, 34:1, 47:25
**FTP** [2] - 15:22, 17:17
**full** [6] - 13:25, 36:25, 56:7, 71:19, 85:11, 85:13
**fully** [1] - 54:16
**fulsome** [2] - 37:6, 47:24
**Futch** [1] - 68:21
**FUTCH** [1] - 68:21
**future** [1] - 90:19

## G

**gathering** [1] - 10:20
**general** [3] - 6:2, 10:5, 18:17
**generalized** [1] - 18:23
**generally** [1] - 84:15
**Georgia** [1] - 2:23
**GI** [2] - 81:20, 81:21
**Gibson** [2] - 66:8, 66:13
**given** [3] - 15:20, 34:21, 55:10
**global** [1] - 18:6
**Goldberg** [13] - 5:1, 5:6, 42:8, 45:11, 48:5, 51:16, 51:24, 53:10, 61:10, 65:25, 86:14, 87:5, 89:21
**GOLDBERG** [23] - 2:13, 5:1, 42:8, 42:10, 48:5, 48:8, 51:17, 53:17, 53:19, 53:25, 54:3, 54:18, 61:11, 64:13, 65:25, 86:14, 87:8, 87:10, 88:18, 89:13, 89:17, 89:22, 90:22
**GOLDENBERG** [33] -
1:19, 1:20, 13:6, 13:10, 15:12, 15:15, 15:17, 17:23, 21:19, 22:15, 22:24, 23:3, 23:6, 24:11, 25:20, 26:13, 27:18, 29:2, 29:17, 30:8, 30:12, 30:23, 32:10, 32:20, 33:14, 33:19, 34:5, 34:7, 52:12, 52:14, 67:23, 68:1, 68:9
**Goldenberg** [17] - 13:7, 13:9, 14:10, 17:21, 21:10, 22:14, 23:5, 25:19, 27:11, 28:15, 29:16, 30:6, 31:9, 32:8, 32:17, 52:14, 68:2
**GOLOMB** [1] - 1:16
**good-faith** [1] - 24:6
**GORDON** [1] - 2:17
**government** [3] - 45:23, 46:3, 49:19
**granted** [1] - 28:3
**granularly** [1] - 41:6
**grateful** [1] - 35:16
**great** [3] - 51:22, 55:19, 59:16
**greatly** [2] - 46:17, 57:3
**Greenberg** [2] - 66:10, 74:23
**GREENBERG** [1] - 2:21
**Greenleaf** [2] - 66:25, 67:5
**GREENLEAF** [1] - 66:25
**groundwork** [1] - 85:16
**group** [3] - 40:25, 58:9, 66:11
**grow** [1] - 36:6
**guess** [10] - 25:21, 25:24, 33:6, 33:20, 35:8, 39:5, 39:21, 40:18, 44:9, 89:1
**guidance** [12] - 13:11, 60:17, 63:7, 63:11, 86:4, 86:16, 86:21, 87:11, 87:18, 87:24, 88:7, 88:23
**guided** [1] - 60:3
**guiding** [1] - 61:5
**Gwendolyn** [1] - 68:19

## H

**half** [5] - 23:20, 49:24, 74:13, 82:13, 82:14
**handcuffed** [1] - 37:11
**handful** [4] - 49:18, 51:10, 51:23
**handle** [2] - 83:20, 83:24
**handled** [2] - 47:23, 61:21
**handling** [1] - 44:4
**handpicked** [1] - 56:5
**happy** [14] - 24:11, 26:13, 32:1, 33:3, 38:21, 45:10, 49:7, 53:25, 60:11, 61:11, 64:22, 86:24, 90:18, 90:19
**hard** [6] - 17:8, 17:10, 17:16, 48:22, 85:17, 89:3
**hard-and-fast** [1] - 17:10
**HARKINS** [8] - 2:22, 66:9, 66:16, 66:22, 67:11, 67:24, 68:10, 68:15
**Harkins** [3] - 66:9, 66:16, 67:24
**harmed** [4] - 89:5, 89:6, 89:8, 89:11
**hate** [1] - 32:21
**head** [3] - 40:13, 51:12, 51:15
**Healthcare** [1] - 2:15
**healthy** [1] - 89:24
**hear** [13] - 7:19, 16:18, 22:17, 24:15, 31:19, 31:25, 32:25, 34:20, 46:11, 47:13, 48:9, 60:16, 88:23
**heard** [9] - 23:21, 23:23, 30:25, 58:14, 59:11, 67:2, 74:18, 76:24
**hearing** [10] - 13:19, 14:12, 32:18, 32:19, 33:9, 45:4, 53:1, 61:25, 67:4, 69:15
**hearings** [1] - 90:11
**heart** [1] - 56:23
**heightened** [1] - 40:3
**HEINZ** [22] - 3:2, 14:6, 14:9, 16:2, 16:5, 16:18, 16:23, 17:18, 21:19, 21:21, 24:16, 28:11, 28:14, 29:9, 29:22, 29:25, 30:2, 31:2, 31:8, 31:20, 33:17, 34:8
**Heinz** [18] - 14:7, 14:8, 16:3, 21:11, 21:13, 21:20, 21:24, 22:18, 23:19, 24:16, 28:13,
29:4, 29:24, 30:25, 31:1, 31:7, 33:16, 52:13
**Heinz's** [1] - 23:10
**held** [2] - 4:1, 40:3
**hello** [2] - 31:17, 64:6
**help** [6] - 11:14, 52:6, 52:20, 62:6, 63:24, 71:6
**helped** [2] - 63:3, 63:12
**helpful** [6] - 13:11, 20:19, 24:12, 54:11, 56:20, 70:25
**helping** [1] - 50:15
**hence** [2] - 6:15, 8:15
**Herculean** [1] - 17:5
**hesitating** [1] - 7:8
**Hetero** [14] - 3:9, 5:8, 5:17, 5:23, 6:22, 7:22, 8:9, 8:22, 9:9, 11:3, 12:22, 36:9, 39:23
**Hetero's** [2] - 9:1, 12:24
**hi** [2] - 24:16, 65:9
**hide** [1] - 51:1
**higher** [1] - 81:11
**Highway** [1] - 2:3
**HILL** [1] - 3:7
**Hill** [2] - 5:25, 6:22
**Hilton** [1] - 41:13
**hit** [4] - 57:1, 58:25, 59:2
**hits** [1] - 57:19
**hold** [12] - 9:6, 12:12, 16:20, 23:20, 23:23, 24:22, 32:14, 33:12, 34:2, 41:15, 62:8, 80:6
**holds** [10] - 23:5, 23:19, 25:14, 25:22, 31:5, 31:6, 31:11, 31:16, 31:24, 32:4
**Honik** [11] - 35:12, 37:18, 40:22, 43:15, 46:22, 55:1, 55:21, 56:16, 58:23, 59:22, 61:3
**HONIK** [16] - 1:16, 1:17, 35:11, 37:19, 41:2, 41:19, 41:22, 54:24, 55:1, 55:19, 56:13, 56:17, 59:24, 60:3, 61:3
**Honik's** [3] - 39:3, 61:13, 62:1
**Honor** [170] - 4:14, 5:1, 5:9, 5:14, 5:24, 6:13, 6:21, 6:25,

7:11, 7:15, 7:21,
8:15, 8:16, 12:15,
12:23, 12:25, 13:6,
13:10, 13:20, 14:6,
14:9, 15:12, 15:18,
16:2, 17:18, 17:23,
18:2, 20:11, 21:9,
21:19, 21:21, 22:15,
22:17, 23:6, 23:7,
24:16, 25:20, 26:13,
27:18, 28:11, 28:24,
29:2, 29:9, 29:17,
29:22, 29:25, 30:8,
30:12, 31:2, 32:11,
32:20, 33:17, 33:19,
34:5, 35:11, 35:18,
35:22, 36:4, 36:19,
37:19, 37:21, 38:19,
38:23, 38:25, 39:9,
39:21, 40:11, 41:2,
41:19, 41:23, 42:1,
42:8, 42:10, 42:11,
42:21, 42:24, 43:8,
43:13, 43:18, 43:20,
45:7, 45:15, 46:9,
46:18, 47:9, 47:13,
47:18, 48:5, 49:7,
49:20, 51:17, 52:23,
52:25, 53:2, 53:17,
53:19, 54:1, 54:18,
54:24, 54:25, 55:1,
55:14, 55:20, 55:25,
56:13, 56:17, 56:19,
58:6, 58:8, 58:15,
58:24, 58:25, 59:24,
61:3, 61:11, 61:18,
61:24, 62:2, 62:13,
62:21, 62:23, 63:2,
63:7, 63:15, 64:13,
64:15, 64:20, 65:7,
65:25, 66:2, 66:9,
66:16, 66:22, 67:11,
67:15, 67:23, 67:24,
68:10, 68:16, 69:7,
69:12, 69:18, 72:11,
74:22, 75:19, 75:25,
77:23, 77:25, 79:12,
79:19, 80:9, 80:12,
81:20, 86:2, 86:14,
86:16, 86:22, 87:8,
87:13, 87:15, 87:21,
87:24, 88:18, 89:13,
89:19, 89:22, 90:21
**Honor's** [8] - 8:19,
50:3, 51:2, 79:22,
86:23, 87:11, 87:18,
88:23
**HONORABLE** [2] -
1:10, 1:11
**Honorable** [2] - 4:1,
4:3

**hope** [14] - 16:14,
16:24, 21:2, 34:17,
36:6, 37:13, 38:24,
48:11, 52:18, 65:1,
65:2, 89:23, 89:24,
89:25
**hopeful** [6] - 11:14,
22:11, 42:13, 51:11,
62:22, 74:5
**hopefully** [6] - 8:12,
17:12, 20:3, 58:4,
62:1, 74:3
**hoping** [2] - 15:3, 15:6
**horse** [1] - 39:6
**hour** [2] - 10:7
**hour-by-hour** [1] -
10:7
**hours** [1] - 42:17
**Huahai** [1] - 2:16
**huge** [1] - 21:1
**human** [1] - 40:1
**hundred** [11] - 37:20,
38:10, 40:6, 40:10,
40:11, 41:1, 41:8,
41:16, 56:25, 57:5,
57:9
**hundreds** [4] - 16:8,
25:5, 25:6, 48:14

**I**

**idea** [2] - 72:4, 83:6
**identified** [7] - 8:1,
10:17, 10:18, 14:2,
38:24, 43:4, 44:24
**identify** [7] - 4:8, 4:10,
10:12, 11:6, 53:13,
53:14, 55:7
**identifying** [2] - 11:23,
86:24
**imminently** [1] - 39:1
**important** [8] - 9:5,
12:14, 12:17, 45:2,
46:21, 46:22, 47:5,
48:4
**impose** [2] - 13:20,
17:10
**imposing** [1] - 37:15
**impossible** [1] - 89:9
**improperly** [4] - 39:8,
57:2, 57:6, 58:1
**improved** [1] - 63:6
**IN** [1] - 1:4
**in-court** [2] - 90:4,
90:7
**Inc** [4] - 2:19, 2:24,
2:24, 3:5
**include** [6] - 69:17,
69:24, 72:8, 72:16,
72:18, 73:9
**included** [4] - 71:18,

73:6, 82:12, 84:12
**including** [4] - 25:2,
54:15, 55:13, 69:12
**inconvenience** [1] -
39:1
**incorrect** [1] - 59:5
**incumbent** [1] - 61:17
**indeed** [1] - 12:2
**independent** [1] -
61:14
**index** [1] - 8:24
**indexes** [1] - 9:1
**indicate** [1] - 57:4
**indicated** [2] - 20:18,
52:18
**indicative** [3] - 40:9,
40:25, 41:4
**individual** [2] - 52:10,
61:20
**individuals** [3] -
23:19, 25:25, 26:17
**Industries** [1] - 2:23
**informally** [1] - 62:22
**information** [30] - 6:4,
6:18, 8:10, 11:2,
11:19, 21:13, 21:14,
21:25, 22:19, 25:12,
26:2, 26:4, 26:6,
26:14, 26:24, 34:1,
38:8, 42:13, 43:6,
45:2, 45:6, 45:17,
45:25, 46:7, 46:16,
48:24, 49:17, 50:1,
71:19, 90:16
**informed** [1] - 68:3
**ingested** [2] - 14:16,
17:3
**initial** [2] - 70:3, 78:19
**injuries** [3] - 81:19,
81:20, 81:21
**injury** [2] - 75:24,
76:18, 87:6
**input** [1] - 63:2
**inquiry** [1] - 30:13
**insight** [1] - 35:21
**inspection** [1] - 34:12
**instead** [1] - 47:10
**instruction** [1] - 76:6
**instructions** [1] - 60:3
**intend** [3] - 34:19,
43:5, 56:11
**intended** [1] - 48:10
**intending** [1] - 76:9
**intent** [2] - 41:3, 73:3
**intention** [3] - 69:19,
83:18
**intentional** [1] - 6:6
**intentionally** [1] -
46:25
**interest** [1] - 55:2

**interesting** [1] - 39:20
**internal** [1] - 45:24
**interrupt** [2] - 55:21,
80:6
**interruption** [1] -
16:17
**intervention** [2] -
21:3, 61:7
**interviews** [1] - 8:9
**introduce** [2] - 4:20,
26:15
**introduced** [1] - 24:1
**introductory** [1] - 35:8
**invite** [1] - 38:6
**involve** [1] - 62:23
**involved** [6] - 11:19,
40:1, 41:6, 54:10,
70:21, 70:23
**involves** [1] - 16:16
**isolate** [1] - 43:8
**issue** [68] - 5:2, 5:11,
5:13, 5:23, 7:20,
12:16, 12:20, 13:4,
14:3, 14:5, 14:11,
15:5, 17:20, 17:25,
18:23, 19:24, 20:1,
21:7, 21:12, 22:11,
22:25, 23:9, 27:19,
31:10, 32:1, 32:9,
34:6, 34:13, 34:17,
35:9, 35:17, 35:24,
35:25, 36:5, 38:18,
38:24, 42:4, 42:25,
43:12, 43:15, 44:14,
46:8, 48:16, 49:3,
50:12, 50:13, 51:8,
51:11, 51:13, 51:22,
52:1, 52:3, 58:10,
59:10, 59:15, 60:18,
61:15, 62:12, 62:14,
70:12, 78:4, 79:20,
85:6, 85:23, 86:3,
86:15, 88:22
**issued** [2] - 34:12,
86:21
**issues** [34] - 7:12,
18:5, 18:6, 18:13,
18:22, 28:5, 28:16,
33:21, 35:20, 36:11,
38:21, 39:23, 39:25,
40:4, 42:2, 43:8,
43:22, 46:16, 48:11,
49:13, 50:19, 51:6,
51:23, 52:20, 53:6,
53:15, 56:23, 58:15,
61:1, 62:17, 74:24,
79:16, 79:19
**issuing** [2] - 22:21,
58:20
**item** [4] - 13:2, 31:3,

31:4, 33:19
**Items** [1] - 31:4
**items** [7] - 6:10, 17:22,
24:8, 30:5, 42:6,
52:25, 65:12
**itself** [2] - 35:4, 59:19

**J**

**Jackson** [2] - 67:1,
67:6
**James** [2] - 66:8,
66:13
**January** [1] - 75:12
**JERSEY** [1] - 1:1
**Jersey** [4] - 1:8, 1:15,
3:9, 86:5
**JESSICA** [1] - 2:13,
3:2
**Jessica** [5] - 14:6,
16:2, 21:11, 24:16,
58:8
**JILL** [1] - 3:3
**Jill** [1] - 20:11
**John** [1] - 68:21
**joined** [2] - 5:25,
24:17
**joining** [2] - 64:8,
64:12
**joins** [1] - 64:10
**joint** [2] - 65:14, 66:10
**JUDGE** [134] - 1:10,
4:4, 4:16, 4:20, 4:23,
5:5, 5:12, 5:21, 6:20,
6:24, 7:18, 8:18,
9:23, 11:13, 12:7,
12:19, 13:2, 13:8,
14:4, 14:8, 15:14,
15:16, 16:4, 16:19,
17:4, 17:19, 18:1,
19:14, 20:2, 21:1,
21:18, 21:20, 22:13,
22:21, 22:25, 23:4,
24:9, 24:13, 25:19,
26:11, 27:8, 28:10,
28:12, 29:1, 29:4,
29:15, 29:24, 30:1,
30:4, 30:9, 30:19,
30:24, 31:3, 31:18,
32:8, 32:13, 33:6,
33:15, 33:18, 33:22,
34:6, 34:9, 37:17,
38:17, 40:5, 40:22,
41:15, 41:20, 41:24,
42:3, 42:9, 43:11,
48:7, 51:14, 51:18,
52:5, 52:13, 52:16,
53:4, 53:8, 53:18,
53:24, 54:2, 54:6,
54:13, 54:19, 55:17,
56:14, 58:7, 59:6,

*60:2, 60:23, 61:9,
62:3, 63:17, 64:2,
64:6, 64:14, 64:16,
64:18, 64:21, 64:25,
65:9, 65:11, 66:3,
66:14, 66:20, 66:24,
67:4, 67:13, 67:17,
68:6, 68:14, 68:17,
72:12, 72:15, 73:14,
73:20, 74:9, 74:20,
79:14, 80:5, 80:11,
80:13, 82:22, 84:9,
86:3, 87:7, 87:9,
88:3, 89:2, 89:14,
89:20, 89:23*
**judge** [1] - 9:21
**Judge** [17] - 4:2, 6:19,
18:11, 23:12, 24:20,
31:9, 31:10, 32:5,
62:12, 63:22, 64:3,
64:7, 64:12, 64:18,
64:24, 69:11, 79:18
**judgment** [5] - 86:20,
88:9, 88:12, 88:16,
88:22
**judicial** [1] - 37:24
**July** [1] - 82:9
**June** [12] - 10:8,
72:24, 73:8, 73:22,
74:8, 75:16, 82:8,
83:9, 84:23, 85:15,
90:2, 90:3

## K

**KATZ** [1] - 1:13
**keep** [10] - 9:15, 11:2,
11:5, 13:19, 46:13,
63:20, 63:21, 72:5,
73:12, 73:15
**kept** [1] - 79:21
**kind** [6] - 18:12, 18:23,
19:9, 62:16, 84:25,
88:15
**kinds** [1] - 86:12
**KIRTLAND** [1] - 2:2
**knowing** [1] - 83:17
**knowledge** [3] -
21:12, 41:4, 71:12
**known** [4] - 45:1, 45:2,
45:25, 57:25
**knows** [2] - 46:18,
58:25
**Koschineg** [1] - 24:18
**KOSCHINEG** [1] - 3:3
**Kristine** [2] - 68:3,
68:17
**KUGHER** [1] - 1:10
**Kugler** [6] - 4:2, 62:12,
63:22, 64:3, 64:12,
64:18

**KUGLER** [35] - 64:18,
64:21, 64:25, 65:9,
65:11, 66:3, 66:14,
66:20, 66:24, 67:4,
67:13, 67:17, 68:6,
68:14, 68:17, 72:12,
72:15, 73:14, 73:20,
74:9, 74:20, 79:14,
80:5, 80:11, 80:13,
82:22, 84:9, 86:3,
87:1, 87:9, 88:3,
89:2, 89:14, 89:20,
89:23
**Kugler's** [1] - 64:7

## L

**Labs** [1] - 3:9
**lack** [1] - 83:22
**laid** [1] - 7:24
**landscape** [1] - 35:21
**large** [1] - 12:11
**larger** [12] - 35:25,
36:6, 39:11, 39:16,
40:25, 43:15, 55:8,
56:1, 56:25, 57:5,
57:17, 58:9
**larry** [1] - 3:12
**Lasalle** [1] - 1:20
**last** [21] - 7:10, 7:16,
10:8, 13:16, 16:22,
19:18, 26:14, 32:3,
33:19, 40:14, 42:21,
45:7, 46:9, 46:20,
46:23, 51:14, 65:2,
69:10, 75:20, 77:21,
79:16
**late** [1] - 90:10
**law** [9] - 18:25, 26:7,
27:19, 27:24, 31:24,
84:18, 86:18, 87:3,
88:3
**LAW** [1] - 1:19
**lawyer** [4] - 44:3, 44:7,
45:20, 87:7
**lawyers** [6] - 42:16,
50:14, 50:25, 51:4,
85:8, 85:9
**lay** [1] - 37:9
**lays** [1] - 5:16
**lead** [3] - 5:2, 5:4, 77:5
**learned** [4] - 50:21,
55:11, 75:10, 77:12
**learning** [1] - 75:7
**least** [12] - 4:13,
13:22, 21:12, 25:2,
32:15, 36:22, 58:12,
59:12, 60:18, 74:5,
83:2, 87:12
**leave** [1] - 87:17
**leaves** [4] - 34:23,

*66:14, 67:20, 86:3*
**left** [6] - 49:10, 78:6,
78:23, 79:11, 83:22,
86:19
**legal** [1] - 19:3
**legitimate** [1] - 89:3
**lengthy** [2] - 48:3,
54:10
**less** [6] - 25:23, 50:2,
50:9, 51:23, 85:2
**lesser** [1] - 8:12
**letter** [41] - 5:16, 6:23,
7:1, 7:16, 7:24, 9:5,
12:11, 13:3, 23:10,
23:18, 24:7, 25:13,
26:8, 27:10, 27:23,
34:11, 35:18, 36:1,
42:4, 42:5, 42:11,
42:18, 42:25, 44:23,
45:7, 45:15, 45:18,
46:23, 49:11, 49:14,
51:19, 51:20, 53:3,
61:18, 62:1, 65:18,
66:5, 88:11
**letters** [11] - 7:10, 9:6,
12:12, 18:18, 23:21,
27:13, 32:14, 33:12,
34:2, 45:21, 65:13
**level** [3] - 10:5, 12:1,
81:11
**LEVIN** [1] - 2:9
**LIABILITY** [1] - 1:4
**Liability** [4] - 86:7,
87:23, 88:6, 88:17
**light** [1] - 88:2
**likelihood** [2] - 36:4,
57:1
**likely** [5] - 12:2, 12:12,
57:6, 57:11, 58:22
**Limited** [1] - 14:14
**limited** [3] - 24:7,
38:8, 71:15
**Linda** [2] - 66:7, 66:13
**line** [1] - 33:25
**link** [2] - 35:2, 38:25
**list** [16] - 7:13, 9:1,
10:12, 30:5, 30:6,
31:12, 33:20, 39:19,
43:25, 48:25, 52:6,
53:2, 67:17, 68:4,
68:6, 68:7
**listed** [4] - 23:19,
30:14, 67:8, 68:23
**listen** [1] - 34:19
**listened** [1] - 36:8
**listing** [3] - 67:21,
68:13, 68:23
**lists** [2] - 7:6, 49:1
**litigation** [28] - 9:6,
9:18, 12:12, 18:15,

*18:24, 19:5, 23:4,
23:19, 23:20, 23:23,
24:21, 25:1, 25:14,
25:21, 26:7, 27:25,
31:5, 31:6, 31:8,
31:11, 31:16, 31:24,
32:4, 32:14, 33:12,
34:2, 46:22, 47:3*
**LITIGATION** [1] - 1:4
**litigation-related** [1] -
18:24
**LLC** [5] - 1:13, 1:19,
2:15, 2:24, 3:5
**LLP** [5] - 2:2, 2:12,
2:17, 2:21, 3:7
**located** [1] - 14:1
**LOCKARD** [2] - 2:21,
74:22
**Lockard** [1] - 74:23
**log** [15] - 17:22, 18:5,
18:7, 18:16, 18:23,
20:20, 42:23, 43:2,
43:18, 45:5, 47:22,
49:3, 50:16, 50:17
**logic** [1] - 76:15
**logical** [1] - 75:9
**logs** [2] - 18:8, 19:9
**look** [27] - 27:18,
35:22, 38:4, 39:13,
39:15, 39:20, 41:7,
47:18, 47:19, 49:8,
50:4, 56:24, 62:4,
71:5, 81:5, 81:17,
83:12
**looked** [4] - 8:3,
26:18, 83:16, 83:19
**looking** [14] - 14:22,
16:7, 21:14, 30:4,
39:9, 39:10, 45:9,
59:9, 62:14, 81:3,
86:21
**looming** [1] - 17:6
**lose** [6] - 73:15, 74:12,
80:7, 82:25, 84:13,
85:18
**loss** [5] - 30:21, 32:15,
33:10, 33:24
**lost** [6] - 26:6, 26:12,
33:1, 78:4, 78:16,
83:4
**Louisiana** [6] - 86:5,
86:17, 87:3, 87:4,
87:22, 89:4
**lower** [2] - 71:7, 80:23
**Ltd** [2] - 2:16, 2:23

## M

**MacStravic** [1] - 3:12
**majority** [3] - 12:3,
81:6, 81:14

**manageable** [1] - 77:8
**management** [2] -
7:11, 27:17
**manner** [2] - 7:8,
37:13
**manufacturer's** [1] -
22:7
**manufacturers** [5] -
77:2, 77:3, 81:11,
81:12, 81:13
**March** [10] - 1:8, 7:2,
15:20, 27:10, 42:3,
65:18, 65:19, 65:21,
66:5
**market** [1] - 81:15
**Market** [1] - 1:17
**Marlene** [6] - 13:7,
14:19, 21:9, 52:14,
67:25, 68:1
**MARLENE** [1] - 1:20
**Mashrique** [1] - 68:22
**MASHRIQUE** [1] -
68:23
**mass** [1] - 11:18
**Master** [1] - 4:3
**MASTER** [1] - 1:11
**material** [4] - 18:14,
50:5, 50:18, 68:11
**matter** [18] - 4:21,
12:21, 19:14, 21:5,
27:9, 34:19, 34:23,
47:1, 51:19, 54:20,
54:21, 62:5, 63:25,
75:3, 79:9, 85:15,
87:18, 91:2
**matters** [9] - 42:6,
51:25, 54:23, 60:6,
63:21, 72:6, 90:4,
90:7, 90:9
**MAZIE** [1] - 1:13
**MDL** [2] - 77:1, 81:1
**MDL's** [1] - 70:21
**mean** [19] - 5:17, 5:19,
6:2, 8:2, 8:7, 13:24,
19:6, 22:15, 26:5,
28:22, 31:21, 31:25,
35:21, 37:25, 55:20,
60:4, 79:1, 80:18,
86:8
**meaning** [1] - 57:20
**meaningful** [1] - 50:18
**meaningfully** [1] -
38:15
**means** [1] - 26:21
**meantime** [1] - 85:22
**mechanical** [1] - 1:24
**medical** [1] - 71:20
**Medrano** [2] - 66:24,
67:5
**MEDRANO** [1] - 66:24

**meet** [26] - 10:10, 11:8, 14:18, 15:3, 21:4, 21:11, 28:15, 33:4, 42:20, 43:4, 43:17, 43:19, 43:23, 44:25, 45:4, 46:9, 49:5, 49:13, 50:22, 50:23, 58:10, 58:13, 58:19, 60:15, 61:14, 61:17
**meeting** [3] - 10:23, 18:4, 19:15
**members** [3] - 40:16, 55:3, 60:8
**memory** [1] - 44:12
**mentioned** [3] - 25:3, 61:5
**merely** [1] - 60:9
**merits** [1] - 49:16
**message** [1] - 35:5
**met** [1] - 33:4
**metadata** [5] - 26:16, 26:18, 27:4, 38:8, 57:12
**method** [2] - 36:5, 58:4
**methodologies** [1] - 11:20
**Mets** [1] - 65:3
**Michael** [1] - 68:21
**mid** [1] - 15:20
**mid-March** [1] - 15:20
**middle** [5] - 37:3, 42:18, 54:10, 61:6, 61:25
**might** [7] - 28:7, 30:12, 30:16, 59:1, 61:22, 64:9, 89:10
**millions** [3] - 14:24, 48:15
**mind** [2] - 32:22, 38:2
**minimum** [1] - 11:23
**Minneapolis** [1] - 1:21
**Minnesota** [1] - 1:21
**minute** [1] - 62:19
**minutes** [2] - 64:8, 64:9, 80:7
**mischaracterization** [1] - 70:12
**mischief** [1] - 63:13
**misrepresent** [1] - 69:9
**misrepresenting** [2] - 25:12, 49:4
**missing** [8] - 8:1, 8:6, 8:7, 8:23, 9:17, 24:5, 26:4, 27:7
**Mitchell** [1] - 1:7
**MITCHELL** [1] - 2:9
**moment** [3] - 27:8,

60:4, 80:6
**Monday** [8] - 6:7, 21:12, 28:15, 28:21, 54:8, 54:12, 54:13, 54:20
**month** [4] - 16:11, 25:1, 69:10, 75:10
**months** [7] - 9:20, 47:10, 73:7, 75:9, 82:9, 82:11, 85:4
**morning** [28] - 4:14, 5:14, 5:24, 6:21, 6:24, 6:25, 13:6, 13:8, 13:17, 14:6, 14:8, 14:9, 18:2, 20:11, 28:21, 34:25, 35:11, 36:8, 38:19, 38:20, 38:23, 42:22, 49:12, 64:18, 64:20, 65:7, 68:5, 74:22
**MORRIS** [1] - 2:12
**most** [9] - 10:9, 20:19, 20:23, 39:20, 44:22, 45:23, 53:5, 58:22, 62:6
**Motion** [1] - 86:23
**motion** [10] - 27:16, 27:21, 28:25, 43:9, 49:16, 50:6, 51:10, 52:9, 87:16, 88:8
**motions** [4] - 84:16, 86:9, 86:11, 90:11
**motives** [1] - 84:17
**move** [9] - 17:1, 17:20, 46:10, 51:7, 51:13, 59:14, 63:25, 83:18, 87:25
**moving** [3] - 55:18, 62:5, 63:22
**MR** [92] - 4:14, 4:18, 4:22, 5:1, 5:9, 5:14, 5:24, 6:21, 6:25, 7:21, 8:16, 8:19, 9:21, 9:24, 12:5, 12:9, 12:23, 12:24, 13:1, 18:2, 19:18, 35:11, 37:19, 38:19, 40:11, 41:2, 41:19, 41:22, 42:1, 42:8, 42:10, 43:13, 48:5, 48:8, 51:17, 52:4, 52:23, 53:5, 53:17, 53:19, 53:25, 54:3, 54:8, 54:17, 54:18, 54:24, 54:25, 55:1, 55:19, 55:20, 56:13, 56:17, 59:24, 60:3, 61:3, 61:11, 62:13, 64:1, 64:13, 64:24, 65:25, 66:9, 66:16,

66:22, 67:11, 67:15, 67:24, 68:10, 68:15, 69:7, 72:14, 72:16, 73:16, 73:22, 74:14, 79:12, 79:15, 80:9, 80:12, 80:14, 83:1, 86:2, 86:14, 87:8, 87:10, 88:18, 89:13, 89:17, 89:18, 89:22, 90:21, 90:22
**MS** [56] - 13:6, 13:10, 14:6, 14:9, 15:12, 15:15, 15:17, 16:2, 16:5, 16:18, 16:23, 17:18, 17:23, 20:11, 21:9, 21:19, 21:21, 22:15, 22:24, 23:3, 23:6, 24:11, 24:16, 25:20, 26:13, 27:18, 28:11, 28:14, 29:2, 29:9, 29:17, 29:22, 29:25, 30:2, 30:8, 30:12, 30:23, 31:2, 31:8, 31:20, 32:10, 32:20, 33:14, 33:17, 33:19, 34:5, 34:7, 34:8, 52:12, 52:14, 58:6, 58:8, 67:23, 68:1, 68:9, 74:22
**multiple** [6] - 15:10, 26:25, 27:3, 27:5, 77:2
**Mundy** [1] - 68:19
**MUNDY** [1] - 68:19
**must** [2] - 16:19, 45:20
**mute** [2] - 4:6, 64:11
**Mylan** [24] - 2:19, 34:10, 34:12, 34:20, 34:23, 34:25, 35:6, 35:10, 36:2, 36:22, 37:19, 38:12, 38:18, 39:8, 39:12, 55:5, 55:23, 57:22, 58:12, 59:10, 59:16, 59:18, 60:6, 60:18
**Mylan's** [2] - 40:12, 41:21
**mystery** [1] - 51:2

# N

**N-E-W-C-O-M-B-E** [1] - 67:1
**Nakul** [2] - 5:25, 6:21
**NAKUL** [1] - 3:8
**name** [1] - 86:25
**naming** [1] - 86:22
**Naomi** [2] - 67:9, 67:17
**narrow** [2] - 7:16,

46:16
**narrowed** [2] - 7:14, 82:2
**natural** [1] - 77:13
**NE** [1] - 2:22
**necessary** [11] - 25:17, 28:6, 39:15, 51:11, 52:2, 71:2, 71:8, 72:10, 73:14, 84:2, 86:23
**need** [32] - 11:11, 11:25, 12:7, 12:10, 15:25, 23:7, 23:13, 24:13, 24:20, 27:25, 28:6, 28:8, 31:16, 37:14, 43:21, 45:17, 46:3, 48:18, 51:21, 51:24, 54:22, 57:21, 57:23, 60:16, 71:19, 75:2, 77:16, 77:18, 80:5, 84:11, 85:7, 85:9
**needed** [3] - 33:4, 71:16, 73:24
**needs** [7] - 27:12, 46:17, 71:22, 78:22, 79:7, 82:19, 82:23
**negotiation** [1] - 76:8
**never** [10] - 12:11, 22:7, 23:23, 23:24, 36:24, 47:14, 70:10, 73:13, 78:14
**NEW** [1] - 1:1
**new** [7] - 13:18, 25:12, 25:15, 38:25, 69:4, 79:7, 80:2
**New** [6] - 1:8, 1:15, 2:7, 3:9, 86:5
**Newcombe** [2] - 67:1, 67:7
**news** [3] - 55:6, 55:7, 90:1
**next** [16] - 13:2, 17:12, 20:4, 21:6, 21:7, 31:3, 60:25, 61:8, 61:16, 61:25, 62:8, 67:18, 68:7, 68:24, 90:14
**nexus** [1] - 19:3
**NIGH** [5] - 2:9, 67:15, 69:7, 72:14, 72:16, 73:16, 73:22, 74:14, 79:12, 79:15, 80:9, 80:12, 80:14, 83:1, 86:2
**Nigh** [6] - 67:15, 69:7, 72:12, 79:12, 79:14, 80:13
**night** [2] - 42:19, 63:19

**nine** [2] - 25:2, 83:25
**non** [2] - 13:15, 19:3
**non-attorneys** [1] - 19:3
**non-custodial** [1] - 13:15
**nonresponsive** [4] - 34:24, 35:19, 40:15, 59:20
**normal** [1] - 50:13
**normally** [1] - 36:14
**note** [3] - 7:13, 27:4, 28:14
**notes** [1] - 20:9
**Nothing** [1] - 89:17
**nothing** [11] - 21:3, 32:10, 34:8, 49:25, 58:14, 59:11, 67:4, 75:6, 75:8, 80:20, 89:22
**nothing's** [1] - 76:14
**notice** [2] - 27:22, 53:8
**November** [7] - 9:10, 23:8, 31:9, 47:4, 75:20, 75:25, 76:6
**nowhere** [1] - 28:20
**nuanced** [1] - 18:25
**number** [27] - 9:5, 11:15, 12:11, 20:9, 20:10, 21:2, 35:3, 38:9, 44:2, 45:24, 49:21, 53:14, 57:6, 57:19, 71:1, 71:25, 72:7, 76:3, 76:25, 77:7, 80:23, 81:7, 81:9, 81:25, 84:25, 85:1, 86:25
**Number** [3] - 68:4, 68:11, 86:23
**NUMBER** [1] - 1:3
**numbers** [4] - 44:12, 57:8, 76:4, 81:4
**numerous** [3] - 70:21, 83:21

# O

**OBERGFELL** [3] - 2:6, 18:2, 19:18
**Obergfell** [2] - 17:24, 18:3
**obfuscate** [1] - 48:10
**object** [1] - 79:3
**objecting** [1] - 29:22
**objection** [4] - 29:6, 65:22, 67:13, 68:15
**objections** [1] - 67:16
**obligated** [2] - 9:9, 47:9, 47:21
**obligation** [1] - 45:14

**obligations** [1] - 51:5
**observations** [1] - 11:14
**obtain** [3] - 7:4, 42:12, 87:11
**obtaining** [1] - 63:7
**obvious** [2] - 36:20, 37:10
**obviously** [4] - 21:2, 32:11, 45:8, 84:24
**occur** [15] - 36:14, 63:19, 70:7, 70:19, 71:22, 72:21, 72:24, 73:18, 80:17, 80:24, 80:25, 82:4, 82:5, 82:6
**occurred** [1] - 33:9
**occurring** [1] - 36:11
**October** [4] - 75:16, 75:19, 82:6, 82:11
**OF** [1] - 1:1
**offered** [1] - 14:18
**Official** [1] - 1:22
**official** [1] - 14:23
**once** [5] - 8:13, 12:16, 22:18, 71:25, 85:15
**One** [1] - 2:18
**one** [46] - 8:23, 11:15, 15:23, 18:7, 18:10, 19:23, 22:25, 23:24, 24:3, 25:2, 26:20, 26:25, 27:3, 30:5, 30:18, 32:21, 32:23, 35:3, 36:14, 42:15, 44:1, 44:4, 45:3, 45:16, 45:18, 49:9, 50:9, 50:10, 58:23, 61:22, 62:8, 67:8, 67:12, 72:2, 74:5, 74:15, 74:18, 77:10, 79:15, 79:19, 83:4, 83:17, 83:25, 84:6, 87:11
**one's** [1] - 74:5
**ones** [6] - 10:16, 23:21, 39:20, 44:18, 44:19
**ongoing** [1] - 24:23
**open** [3] - 35:5, 53:2, 82:15
**operating** [3] - 29:10, 29:12, 29:19
**opinions** [1] - 46:2
**opportunity** [10] - 22:22, 39:13, 55:24, 56:3, 56:10, 59:10, 59:11, 60:13, 79:2, 87:22
**opposed** [3] - 27:16, 61:17, 81:23

**optimism** [1] - 64:24
**Oracle** [1] - 29:13
**order** [49] - 7:4, 8:20, 15:6, 20:21, 21:15, 22:16, 22:21, 22:23, 24:21, 28:6, 28:22, 32:13, 32:22, 32:24, 33:5, 33:22, 34:4, 34:17, 35:17, 37:25, 51:18, 52:9, 58:20, 66:7, 67:9, 67:12, 67:18, 68:8, 69:2, 69:13, 69:17, 69:24, 71:6, 71:16, 72:9, 73:11, 75:13, 77:20, 77:22, 78:4, 79:11, 79:25, 80:2, 84:14, 86:22, 86:24, 87:3, 88:9, 88:11
**ordered** [3] - 38:14, 46:9, 59:11
**orders** [2] - 66:4, 66:18
**original** [1] - 84:12
**otherwise** [3] - 9:15, 40:16, 78:23
**outcome** [1] - 56:6
**outlines** [1] - 16:17
**Outlook** [1] - 26:21
**outstanding** [4] - 52:7, 53:13, 53:21, 54:14
**overall** [1] - 30:20
**overbroad** [1] - 48:25
**overwhelming** [1] - 12:3
**own** [3] - 21:17, 49:4, 81:14
**Oxford** [1] - 2:18

## P

**P.A** [2] - 2:5, 2:9
**P.C** [2] - 1:16, 3:2
**p.m** [2] - 80:10, 90:23
**pace** [2] - 75:11, 90:8
**Pacific** [1] - 2:3
**PACKARD** [1] - 2:2
**Page** [3] - 23:10, 66:5, 68:12
**pages** [5] - 14:25, 16:6, 16:9, 25:6, 48:15
**Pamela** [1] - 68:11
**PAPANTONIO** [1] - 2:9
**paragraph** [1] - 78:5
**Paragraph** [4] - 69:3, 72:14, 77:23, 79:24
**parallel** [1] - 85:8
**Parekh** [6] - 5:9, 5:10,

5:15, 8:22, 9:15, 41:14
**PAREKH** [3] - 2:2, 5:14, 7:21
**Parkway** [1] - 1:14, 3:4
**part** [7] - 6:6, 18:14, 38:12, 41:7, 78:6, 81:22, 89:1
**partially** [1] - 34:17
**participate** [1] - 77:11
**particular** [7] - 21:25, 35:9, 42:5, 42:6, 50:21, 52:10, 86:17
**particularly** [1] - 39:24
**parties** [6] - 24:25, 39:25, 40:17, 50:8, 58:9, 58:12
**party** [4] - 36:16, 78:8, 78:12, 79:8
**Passover** [2] - 90:19
**past** [3] - 9:13, 16:11, 88:9
**path** [1] - 61:18
**Patterson** [2] - 66:7, 66:10
**Pedano** [3] - 1:22, 65:8, 91:4
**Peng** [1] - 62:18
**Pennsylvania** [4] - 1:18, 2:14, 2:19, 3:4
**Pensacola** [1] - 2:10
**people** [6] - 9:6, 12:11, 41:6, 54:9, 73:15, 90:9
**per** [1] - 40:17
**percent** [6] - 36:2, 38:5, 50:10, 57:10, 57:23
**perfect** [3] - 11:16, 47:4, 54:6
**perfection** [1] - 39:25
**perfectly** [1] - 60:11
**perhaps** [2] - 19:23, 41:13
**period** [1] - 29:8
**permanently** [1] - 87:5
**permission** [2] - 41:5, 41:12
**permitted** [1] - 59:4
**person** [1] - 87:6
**personal** [2] - 75:24, 76:18
**personally** [1] - 11:7
**persons** [1] - 8:3
**perspective** [3] - 53:13, 54:23, 76:5
**pertain** [1] - 50:19
**pertains** [1] - 35:24
**Peter** [1] - 68:18

**Pharma** [4] - 2:24, 3:5, 3:5, 14:13
**pharmaceutical** [1] - 81:15
**Pharmaceutical** [1] - 2:23
**Pharmaceuticals** [4] - 2:15, 2:16, 2:19, 2:24
**pharmacies** [1] - 81:13
**phase** [1] - 75:10
**Philadelphia** [2] - 1:18, 2:14
**Phillies** [2] - 65:1, 65:4
**phone** [7] - 4:7, 56:14, 62:12, 63:20, 64:11, 90:14, 90:15
**phoned** [1] - 64:7
**phones** [1] - 4:6
**phrase** [1] - 89:6
**physicians** [1] - 75:18
**pick** [11] - 38:9, 39:20, 71:24, 72:19, 75:22, 78:9, 78:13, 79:4, 79:9
**picked** [2] - 72:20, 74:11, 79:8
**picks** [15] - 75:5, 75:8, 75:12, 76:4, 76:22, 77:17, 78:20, 78:22, 79:1, 79:5, 79:6, 83:7, 83:8, 83:15, 83:16
**picture** [1] - 56:7
**piecemeal** [3] - 5:18, 5:19, 6:5
**Piedmont** [1] - 2:22
**PIETRAGALLO** [1] - 2:17
**Pittsburgh** [1] - 2:19
**place** [7] - 14:11, 15:11, 22:23, 23:11, 29:8, 30:21, 84:21
**plaintiff** [19] - 20:21, 52:22, 68:11, 71:13, 71:14, 71:19, 76:1, 76:7, 76:10, 76:18, 78:7, 78:24, 80:4, 82:2, 82:18, 86:9, 86:12, 88:11, 88:13
**plaintiff-specific** [4] - 76:1, 76:7, 86:9, 86:12
**Plaintiffs** [7] - 1:15, 1:18, 1:21, 2:4, 2:7, 2:11, 78:11
**plaintiffs** [80] - 4:12, 4:15, 4:19, 6:14, 7:5,

7:8, 7:20, 10:1, 13:5, 14:18, 15:7, 15:9, 16:13, 16:15, 16:25, 18:3, 23:15, 24:20, 25:10, 34:11, 36:12, 37:8, 37:16, 38:7, 39:6, 39:19, 42:13, 45:12, 47:2, 48:17, 49:5, 49:22, 50:1, 50:22, 51:9, 56:3, 56:11, 57:18, 57:25, 58:14, 58:18, 59:13, 60:5, 60:24, 61:3, 61:17, 67:8, 68:2, 69:4, 69:19, 70:22, 73:20, 74:11, 75:11, 75:15, 75:21, 75:22, 75:23, 76:2, 77:15, 77:22, 77:24, 78:2, 78:10, 79:10, 80:3, 80:15, 85:12, 85:13, 85:18, 85:21, 86:17, 87:1, 87:2, 87:19, 87:21, 88:2, 88:20, 89:4, 89:19
**plaintiffs'** [26] - 7:1, 7:16, 10:10, 10:14, 11:5, 13:3, 25:7, 34:21, 35:10, 41:22, 42:3, 54:23, 55:16, 67:2, 67:13, 69:21, 70:3, 70:11, 72:23, 73:1, 73:18, 76:16, 79:6, 80:14, 82:7, 83:10
**plan** [9] - 55:14, 55:18, 55:24, 56:11, 59:8, 59:23, 60:13, 60:18, 75:14
**play** [2] - 39:14, 44:6
**plead** [1] - 87:3
**pleadings** [1] - 88:5
**pleas** [1] - 90:4
**point** [47] - 8:8, 8:21, 9:12, 10:21, 11:13, 12:8, 12:20, 12:25, 21:15, 23:13, 24:20, 28:5, 28:8, 29:20, 37:2, 39:17, 44:4, 45:16, 46:20, 47:15, 49:14, 56:4, 56:18, 69:19, 69:23, 70:4, 70:17, 71:21, 74:1, 74:19, 75:1, 75:4, 76:4, 77:11, 77:23, 78:15, 78:17, 78:19, 78:20, 80:3, 80:18, 84:14, 84:19, 84:20, 87:1, 87:2, 87:21
**pointed** [3] - 18:11, 39:22, 85:4

**points** [1] - 74:25
**poised** [1] - 35:22
**policies** [8] - 24:22, 29:7, 29:18, 29:19, 30:3, 30:10, 30:20
**policing** [1] - 47:7
**policy** [3] - 30:9, 30:16, 30:17
**pool** [13] - 56:21, 56:25, 69:1, 70:3, 70:23, 71:7, 72:3, 73:15, 78:13, 81:2, 83:17, 84:5, 88:20
**population** [4] - 39:12, 56:1, 56:2, 84:8
**position** [19] - 14:11, 18:10, 18:25, 19:15, 20:4, 24:24, 25:7, 25:10, 28:17, 31:6, 32:3, 62:9, 69:5, 71:22, 72:2, 77:19, 78:16, 78:24, 79:8
**positions** [2] - 46:5, 69:1
**possession** [3] - 27:5, 42:16, 50:14
**possibility** [1] - 83:14
**possible** [7] - 7:7, 14:25, 15:9, 16:13, 20:24, 54:9, 87:14
**possibly** [1] - 14:19
**potential** [4] - 36:5, 49:16, 74:11, 75:21
**potentially** [2] - 43:9, 50:3
**practical** [3] - 55:14, 55:18, 59:8
**practically** [1] - 58:5
**practices** [2] - 29:7, 29:11
**precisely** [3] - 11:10, 11:11, 70:8
**prefer** [1] - 57:4
**preference** [1] - 22:16
**prefers** [1] - 61:13
**prejudice** [11] - 23:15, 32:19, 33:2, 48:16, 57:18, 79:10, 86:18, 87:13, 87:16, 87:20, 88:1
**prejudiced** [3] - 46:25, 47:20, 48:19
**prejudicing** [1] - 47:2
**preliminary** [1] - 75:3
**prelude** [1] - 38:22
**premature** [8] - 69:14, 69:17, 72:8, 72:10, 73:9, 75:4, 79:23, 84:19
**preparation** [3] -

18:15, 36:17, 47:6
**preparations** [1] - 61:6
**prepared** [2] - 18:15, 62:2
**preparing** [3] - 9:4, 16:6, 25:4
**prescribers** [3] - 75:18, 76:11, 85:21
**PRESENT** [1] - 3:11
**present** [7] - 17:7, 20:5, 27:15, 33:24, 55:13, 55:15, 88:22
**presentation** [2] - 46:21, 48:3
**presentations** [1] - 36:9
**presented** [8] - 21:5, 25:15, 27:9, 31:17, 31:22, 32:6, 53:16, 77:20
**preservation** [6] - 23:2, 27:13, 28:4, 29:7, 30:10, 30:21
**preserve** [4] - 23:14, 26:6, 26:9, 27:15
**preserved** [1] - 26:3
**pressed** [1] - 89:3
**pretext** [1] - 69:18
**pretty** [1] - 18:11
**prevalent** [1] - 55:12
**prevent** [1] - 63:14
**previewed** [1] - 12:10
**previous** [3] - 15:10, 18:10, 32:5
**previously** [3] - 10:13, 10:25, 15:18
**Princeton** [1] - 3:9
**Prinston** [1] - 2:15
**prioritization** [1] - 52:8
**Priselac** [2] - 58:8, 59:7
**PRISELAC** [3] - 2:13, 58:6, 58:8
**prism** [1] - 47:19
**Private** [1] - 65:15
**privilege** [12] - 15:2, 17:22, 18:5, 18:7, 18:8, 18:22, 19:7, 19:21, 20:14, 20:20, 20:23, 20:25
**privileges** [2] - 23:1, 23:2
**probation** [1] - 19:11
**problem** [10] - 28:9, 36:19, 37:14, 45:10, 55:11, 61:9, 63:6, 72:21, 84:9, 86:11
**problems** [1] - 37:10

**procedure** [1] - 28:25
**procedures** [4] - 28:23, 29:10, 29:12, 29:19
**proceed** [8] - 13:9, 30:1, 34:9, 74:17, 74:18, 76:6, 77:7, 85:25
**proceeding** [2] - 32:19, 76:1
**Proceedings** [1] - 1:24
**proceedings** [2] - 90:23, 91:2
**PROCEEDINGS** [1] - 4:1
**process** [9] - 6:15, 14:16, 25:3, 29:10, 40:2, 55:14, 59:19, 77:16, 88:10
**processes** [1] - 58:22
**PROCTOR** [1] - 2:9
**produce** [9] - 7:8, 14:20, 15:8, 15:19, 16:7, 21:13, 30:2, 31:12, 34:3
**produced** [32] - 1:25, 7:3, 8:4, 8:15, 9:20, 10:7, 10:18, 12:4, 13:18, 13:23, 16:6, 17:8, 24:3, 25:1, 26:20, 26:24, 27:1, 29:12, 29:14, 30:25, 31:1, 34:2, 36:2, 36:25, 38:14, 40:17, 47:9, 47:25, 48:14, 50:8, 57:20, 74:7
**produces** [1] - 8:22
**producing** [4] - 10:20, 10:23, 29:10, 29:23
**product** [14] - 15:2, 18:7, 18:9, 18:13, 18:21, 19:21, 20:14, 20:17, 20:25, 22:2, 22:5, 89:5, 89:7, 89:11
**production** [20] - 6:8, 9:9, 11:4, 11:16, 12:18, 13:17, 14:19, 17:14, 25:4, 27:12, 32:13, 33:9, 33:12, 36:11, 37:6, 38:6, 39:8, 40:7, 40:21, 57:23
**productions** [21] - 5:18, 7:9, 7:23, 7:25, 9:4, 9:10, 10:13, 10:16, 13:25, 16:10, 24:23, 24:25, 26:5, 36:14, 37:9, 40:12,

47:8, 47:24, 58:21
**productive** [1] - 42:20
**products** [2] - 22:7, 87:4
**Products** [4] - 86:6, 87:23, 88:6, 88:17
**PRODUCTS** [1] - 1:4
**progress** [5] - 13:19, 17:13, 18:5, 51:22, 60:15
**projects** [1] - 70:22
**promptly** [2] - 61:2, 63:20
**prong** [1] - 73:1
**proper** [2] - 28:25, 32:1
**properly** [1] - 18:20
**proposal** [11] - 57:16, 61:13, 70:17, 71:5, 71:9, 71:24, 76:20, 80:2, 82:10, 83:1, 84:3
**propose** [4] - 56:11, 70:17, 78:11, 82:12
**proposed** [4] - 55:24, 60:13, 69:2, 69:25
**proposing** [1] - 83:23
**proposition** [1] - 57:13
**protected** [2] - 18:20, 19:6
**protection** [2] - 19:2, 79:7
**protective** [1] - 52:9
**protocol** [4] - 27:1, 59:3, 59:5, 65:19
**prove** [2] - 9:16, 47:15
**provide** [14] - 12:1, 27:2, 38:25, 40:18, 40:19, 42:13, 42:14, 43:5, 43:6, 45:4, 46:15, 49:10, 49:14, 52:7
**provided** [4] - 13:11, 42:11, 81:12, 82:3
**providers** [1] - 85:21
**provides** [2] - 22:19, 75:15
**providing** [2] - 29:6, 50:1
**provision** [1] - 78:5
**pull** [1] - 43:15
**purchased** [2] - 22:2, 22:4
**purchases** [1] - 21:8
**purely** [1] - 45:22
**purpose** [1] - 18:16
**pursuant** [1] - 7:16
**pushing** [1] - 6:3
**put** [17] - 9:8, 9:14,

13:12, 16:19, 19:25, 22:11, 25:11, 31:21, 32:24, 36:10, 39:6, 46:23, 57:24, 62:14, 62:17, 64:11, 80:6
**puts** [1] - 56:21

## Q

**questioning** [1] - 35:14
**questions** [4] - 21:24, 22:1, 22:10, 28:12
**quickly** [5] - 16:12, 17:2, 17:20, 46:10, 46:18
**quite** [2] - 63:4, 63:12
**quote** [1] - 46:2

## R

**radar** [1] - 62:15
**RAFFERTY** [1] - 2:9
**Ragland** [1] - 68:20
**RAGLAND** [1] - 68:20
**raise** [5] - 81:4, 86:4, 87:4, 88:17, 89:15
**raised** [6] - 32:2, 42:2, 43:1, 79:23, 88:4, 88:6
**random** [6] - 40:24, 41:17, 56:4, 56:25, 71:10, 77:16
**randomly** [1] - 40:8
**Rao** [3] - 52:11, 52:15, 54:20
**RASPANTI** [1] - 2:17
**rather** [2] - 6:6, 58:17
**RE** [1] - 1:4
**re** [7] - 18:12, 68:6, 78:22, 79:4, 79:9, 85:23, 88:4
**re-examine** [1] - 85:23
**re-list** [1] - 68:6
**re-pick** [2] - 79:4, 79:9
**re-picks** [1] - 78:22
**re-raised** [1] - 88:4
**reach** [1] - 63:1
**reached** [2] - 59:15, 59:17
**reaching** [1] - 63:24
**read** [4] - 24:11, 24:13, 30:5, 49:7
**ready** [4] - 13:9, 34:9, 53:1, 74:17
**reality** [1] - 49:20
**realize** [2] - 11:15, 44:9
**realized** [1] - 76:16
**really** [19] - 8:1, 19:10, 33:2, 35:24, 37:4,

*37:8, 44:2, 47:1, 48:12, 60:5, 61:15, 61:16, 71:4, 72:5, 85:20, 87:3, 87:4, 87:10, 87:24*
**reason** [11] - 30:14, 40:7, 46:1, 57:4, 63:1, 64:24, 77:7, 81:9, 81:22, 83:4, 84:1
**reasonable** [12] - 11:17, 11:21, 12:1, 13:23, 16:15, 45:16, 46:6, 46:15, 76:3, 77:8
**reasons** [1] - 32:12
**receive** [2] - 34:10, 68:11
**received** [13] - 6:23, 7:1, 13:16, 14:15, 14:23, 21:24, 23:19, 23:23, 25:14, 26:16, 34:13, 42:10, 42:17
**receiving** [2] - 35:16, 36:16
**recent** [2] - 10:9, 39:7
**recently** [1] - 25:8
**receptive** [1] - 62:10
**recess** [3] - 64:5, 64:17, 80:10
**recipients** [2] - 31:12, 31:13
**reconsider** [1] - 33:11
**record** [13] - 9:10, 9:24, 28:1, 42:21, 43:20, 48:4, 49:6, 49:22, 49:23, 50:4, 50:20, 53:15, 91:2
**recorded** [1] - 1:24
**records** [3] - 52:10, 71:15, 71:20
**recovery** [1] - 29:13
**red** [1] - 35:4
**redact** [1] - 46:1
**redacted** [2] - 45:19, 47:24
**redactions** [1] - 15:2
**Redondo** [1] - 2:3
**redrafts** [1] - 12:13
**reduce** [2] - 43:2, 76:14
**reduced** [1] - 49:21
**refer** [1] - 35:19
**reference** [1] - 23:8
**referenced** [1] - 31:9
**references** [2] - 8:23, 10:19
**referring** [1] - 72:13
**refers** [1] - 8:24
**refill** [1] - 84:7

**reflect** [1] - 57:2
**refrain** [1] - 22:21
**refused** [2] - 14:20, 15:4
**refusing** [2] - 21:22, 30:2
**regard** [3] - 7:15, 18:6, 39:3
**regarding** [9] - 18:4, 18:8, 18:17, 20:24, 21:25, 22:1, 29:11, 29:13, 86:4
**regards** [1] - 20:22
**regret** [1] - 60:16
**reiterate** [1] - 63:17
**rejoin** [1] - 64:3
**related** [2] - 18:24, 19:5
**relevant** [5] - 25:25, 27:19, 29:8, 38:13, 56:22
**relief** [5] - 25:17, 37:25, 42:5, 42:6
**remain** [4] - 7:6, 13:14, 20:13, 20:24
**remainder** [1] - 20:19
**remained** [1] - 49:13
**remaining** [6] - 7:2, 7:7, 7:12, 20:13, 20:22, 75:16
**remains** [1] - 7:17
**remember** [3] - 50:8, 77:23, 85:3
**remind** [1] - 77:1
**remove** [1] - 68:12
**removes** [1] - 57:18
**render** [1] - 41:10
**rendered** [1] - 19:4
**Rene** [2] - 66:24, 67:5
**reopen** [1] - 90:5
**repeat** [3] - 16:20, 46:24, 59:19
**repeatedly** [1] - 16:13
**replace** [5] - 72:3, 78:9, 83:4, 84:1, 84:7
**replaced** [1] - 72:19
**replacement** [3] - 71:24, 72:19, 78:13
**replacements** [1] - 83:24
**replying** [1] - 11:2
**report** [6] - 51:20, 52:25, 53:12, 54:4, 54:14
**Reporter** [1] - 1:22
**REPORTER** [3] - 64:15, 65:7, 65:10
**reporter** [2] - 4:8, 64:23, 65:6

***Reporter/ Transcriber*** [1] - 91:4
**reports** [3] - 36:17, 37:4, 51:21
**repository** [1] - 35:2
**representation** [1] - 77:9
**representations** [1] - 17:11
**representative** [3] - 41:8, 55:6, 81:24
**represented** [1] - 9:10
**representing** [1] - 50:25
**request** [12] - 6:14, 10:23, 20:5, 23:14, 25:23, 31:15, 37:20, 66:12, 66:18, 67:8, 67:12
**requests** [5] - 6:13, 8:5, 25:9, 45:16, 62:23
**required** [5] - 15:19, 21:3, 27:15, 48:23, 76:17
**requirement** [1] - 49:14
**reserve** [1] - 56:9
**reset** [1] - 84:1
**resolution** [1] - 46:8
**resolve** [5] - 19:22, 20:19, 20:22, 51:6, 69:6
**resolved** [6] - 20:3, 51:9, 53:23, 63:1, 66:6, 79:19
**resources** [3] - 47:21, 48:23, 71:2
**respect** [25] - 21:7, 23:2, 27:12, 33:8, 34:3, 34:20, 35:10, 37:19, 39:3, 39:22, 40:4, 40:5, 41:16, 41:20, 50:12, 51:19, 51:25, 59:12, 59:20, 60:18, 62:7, 66:13, 77:20, 86:17, 87:15
**respectfully** [2] - 57:3, 57:24
**respective** [1] - 86:6
**respond** [12] - 9:22, 15:12, 29:3, 29:4, 45:11, 48:6, 48:7, 55:22, 55:24, 63:20, 64:20, 79:13
**responded** [1] - 18:19
**response** [3] - 6:4, 35:6, 67:3
**responses** [1] - 5:18,

*8:5, 22:9*
**responsive** [15] - 9:19, 12:3, 13:25, 21:22, 21:23, 36:3, 38:13, 40:16, 47:5, 56:22, 57:11, 57:21, 59:3, 60:14, 63:7
**responsiveness** [2] - 40:9, 63:5
**rest** [1] - 72:25
**restructure** [1] - 75:13
**result** [2] - 30:21, 48:24
**retail** [1] - 81:15
**retailers** [1] - 77:3
**retention** [7] - 24:22, 29:6, 29:18, 29:19, 30:3, 30:9, 30:17
**returnable** [1] - 67:18
**review** [13] - 14:25, 15:1, 20:6, 37:24, 40:8, 40:23, 41:17, 50:15, 50:17, 56:10, 58:16, 58:21, 61:21
**reviewing** [2] - 14:17, 36:5
**revised** [2] - 78:4, 78:17
**revisit** [1] - 85:15
**rewrite** [3] - 76:21, 82:4, 82:16
**rhetoric** [1] - 51:6
**Rickey** [2] - 66:25, 67:6
**Riddell** [1] - 18:12
**ringing** [1] - 56:14
**ripe** [1] - 15:5
**RMR** [1] - 91:4
**road** [2] - 77:12, 89:8, 89:9
**Road** [2] - 2:22, 3:8
**roadmap** [1] - 60:19
**Robert** [3] - 4:2, 66:25, 67:5
**ROBERT** [1] - 1:10
**roll** [1] - 76:17
**rolled** [1] - 68:13
**rolling** [1] - 14:20
**Ronald** [1] - 68:19
**room** [1] - 76:8
**rose** [1] - 83:6
**Roseland** [1] - 1:15
**Roszel** [1] - 3:8
**roughly** [3] - 35:22, 36:1, 57:10
**rounds** [1] - 10:7
**RPR** [1] - 91:4
**Ruben** [1] - 35:11
**RUBEN** [1] - 1:17
**Rubin** [3] - 54:25,

*55:1, 61:3*
**Rule** [6] - 8:5, 78:1, 79:20, 87:13, 87:19, 88:1
**ruled** [2] - 86:6, 86:20
**rules** [1] - 28:23
**ruling** [4] - 41:9, 41:10, 41:18, 88:13
**rulings** [1] - 63:16
**run** [1] - 22:1

## S

**sake** [1] - 4:7
**sample** [12] - 35:24, 38:3, 39:9, 39:10, 39:14, 39:16, 40:8, 40:23, 40:24, 41:17, 56:4, 56:6
**sampling** [4] - 37:23, 39:4, 55:25, 58:2
**SAMs** [1] - 10:25
**sanction** [1] - 27:20
**satisfy** [2] - 6:13, 51:5
**save** [1] - 23:24
**saw** [3] - 32:21, 70:16, 81:22
**scale** [1] - 56:6
**scenarios** [1] - 77:5
**schedule** [3] - 37:15, 48:17, 48:22
**scheduled** [8] - 62:8, 73:20, 74:5, 85:15, 85:19, 90:2, 90:3, 90:12
**Schneider** [5] - 18:11, 23:12, 31:10, 32:5
**search** [7] - 11:19, 48:25, 49:1, 57:20, 58:24, 58:25, 59:2
**searched** [3] - 11:25, 13:16
**season** [1] - 64:22
**second** [8] - 68:13, 71:10, 71:11, 73:1, 79:20, 82:6, 82:8, 82:14
**secret** [9] - 42:4, 45:5, 47:22, 49:3, 50:15, 50:17, 51:8, 51:22, 52:1
**secrets** [1] - 45:21
**section** [5] - 23:10, 24:8, 24:10, 35:23, 39:18
**sections** [1] - 45:20
**security** [1] - 78:23
**see** [23] - 20:21, 21:4, 23:17, 28:17, 33:23, 34:3, 49:11, 49:20, 50:3, 50:16, 51:3,

56:20, 59:24, 65:3,
65:5, 71:8, 81:10,
81:13, 81:16, 83:24,
84:20, 84:21, 85:19
**seeing** [2] - 8:19,
26:10
**seek** [1] - 67:21
**seeking** [1] - 28:22,
77:25
**seem** [1] - 13:20
**select** [2] - 56:3, 84:5
**selected** [7] - 39:7,
40:8, 56:18, 70:2,
75:5, 78:8, 78:12
**selecting** [1] - 56:23
**selection** [2] - 56:25,
77:17
**selections** [1] - 71:10
**send** [1] - 25:10
**sending** [1] - 34:11
**sense** [8] - 52:24,
60:25, 69:23, 72:22,
73:5, 76:15, 76:23,
77:1
**sensible** [3] - 55:13,
55:17, 59:8
**sent** [9] - 15:22, 23:18,
25:22, 31:5, 31:7,
31:13, 35:1
**sentences** [1] - 90:4
**Sentry** [1] - 3:4
**September** [1] - 82:11
**sequence** [1] - 36:14
**sequencing** [1] - 75:2
**series** [1] - 62:21
**serious** [3] - 9:5,
12:16, 63:6
**served** [1] - 25:13
**session** [1] - 79:18
**set** [20] - 7:2, 7:5,
7:17, 32:12, 36:1,
39:9, 39:10, 39:14,
39:16, 40:10, 40:23,
43:18, 56:5, 57:5,
71:11, 71:20, 74:1,
82:6, 82:8
**SETH** [1] - 2:13
**Seth** [6] - 5:1, 42:8,
42:9, 48:5, 65:25,
86:14
**sets** [9] - 61:24, 70:11,
71:3, 71:15, 80:16,
80:21, 81:2, 82:20,
84:4
**setting** [1] - 61:18
**settled** [3] - 72:3,
75:12, 84:7
**Seventh** [1] - 2:6
**several** [5] - 21:24,
29:10, 29:12, 59:1,

75:9
**Shah** [4] - 6:1, 6:12,
6:17, 6:22
**SHAH** [3] - 3:8, 6:21,
6:25
**share** [4] - 57:15,
58:3, 81:15
**shared** [2] - 14:1,
26:22
**SharePoints** [2] - 9:2,
11:24
**sheer** [1] - 77:4
**sheet** [1] - 74:7
**sheets** [2] - 73:25,
74:2
**shoes** [1] - 10:2
**short** [1] - 23:12
**shortly** [4] - 20:21,
39:10, 63:16, 64:4
**show** [11] - 24:2,
33:10, 66:4, 66:7,
66:18, 67:9, 67:12,
67:18, 68:8, 88:10,
88:12
**showing** [7] - 26:4,
27:12, 28:8, 32:14,
33:1, 33:11
**shown** [1] - 26:11
**shows** [3] - 27:25,
31:22, 79:22
**sic** [1] - 21:25
**side** [18] - 4:25, 11:24,
34:21, 35:10, 36:15,
37:14, 53:11, 54:10,
55:16, 60:24, 61:10,
70:11, 71:18, 71:21,
72:19, 72:20, 74:6,
75:5
**sides** [6] - 70:1, 70:5,
71:16, 75:5, 76:2,
80:23
**sign** [1] - 65:23
**significantly** [1] - 7:14
**similar** [1] - 28:2
**similarly** [1] - 10:3
**simple** [1] - 48:10
**simply** [4] - 25:11,
31:21, 56:24, 87:6
**single** [7] - 10:23,
25:16, 26:18, 26:19,
48:21, 74:18, 80:19
**sitting** [1] - 47:8
**situation** [1] - 9:12
**situations** [1] - 32:23
**size** [1] - 35:4
**SLATER** [23] - 1:13,
1:14, 4:14, 4:18,
4:22, 5:9, 8:16, 8:19,
12:9, 12:23, 13:1,
43:13, 52:4, 52:23,

53:5, 54:8, 54:17,
54:25, 62:13, 64:1,
64:24, 89:18, 90:21
**Slater** [12] - 5:8, 8:16,
8:18, 10:2, 12:8,
43:11, 49:3, 51:25,
52:23, 54:7, 61:5,
62:13
**Slater's** [5] - 10:21,
42:18, 42:25, 43:4,
49:11
**sleeves** [1] - 76:18
**slipped** [2] - 44:5,
44:7
**slowly** [1] - 90:6
**small** [4] - 13:17,
20:10, 81:7, 81:8
**so-called** [1] - 44:17
**so..** [1] - 53:9
**Solco** [1] - 2:15
**sold** [3] - 22:4, 22:5,
22:7
**solely** [1] - 20:16
**solution** [1] - 46:6
**solutions** [1] - 58:5
**sometime** [1] - 90:8
**sometimes** [2] - 10:6,
30:15
**Sonja** [2] - 67:1, 67:7
**SONJA** [1] - 67:1
**soon** [7] - 6:4, 7:7,
14:17, 14:18, 15:9,
35:16, 52:2
**sooner** [1] - 64:8
**SOPs** [4] - 10:11,
10:12, 10:16, 10:19
**sorry** [10] - 15:15,
21:19, 29:24, 46:20,
55:20, 64:19, 65:15,
68:1, 72:17, 90:6
**sort** [11] - 6:2, 6:5,
8:11, 9:14, 65:1,
69:13, 70:25, 71:12,
72:8, 74:12, 81:23
**sorts** [1] - 70:24
**sought** [1] - 19:4
**sound** [1] - 37:7
**sounds** [1] - 15:22
**sources** [3] - 9:2,
13:15, 14:2
**South** [2] - 2:3, 2:14
**speaking** [6] - 4:5,
4:6, 4:9, 4:12, 4:17,
52:22
**SPECIAL** [1] - 1:11
**Special** [1] - 4:2
**specific** [17] - 6:18,
7:5, 10:11, 10:16,
10:24, 22:1, 24:21,
30:13, 58:16, 60:4,

76:1, 76:7, 78:8,
86:9, 86:12, 86:22,
87:7
**specifically** [6] - 8:1,
20:1, 27:24, 37:20,
75:15, 75:17
**specificity** [1] - 19:9
**speculate** [1] - 84:15
**spending** [1] - 47:7
**spite** [1] - 26:1
**spoken** [1] - 69:20
**spokesperson** [1] -
53:11
**spoliation** [6] - 23:14,
24:21, 26:8, 27:20,
28:1, 31:16
**sprawling** [1] - 39:24
**stage** [2] - 88:9, 88:16
**staggering** [1] - 38:3
**stand** [1] - 21:8
**standard** [6] - 29:10,
29:12, 29:19, 39:23,
40:4, 50:5
**standpoint** [3] - 41:22,
41:25, 87:12
**stands** [1] - 57:4
**stark** [1] - 25:24
**start** [9] - 4:13, 14:17,
17:19, 52:23, 74:10,
81:10, 85:14, 90:3,
90:9
**started** [5] - 5:7, 10:9,
42:22, 65:11, 70:24
**starting** [2] - 36:12,
90:5
**starts** [1] - 64:22
**state** [11] - 39:16,
42:4, 45:5, 45:21,
47:22, 49:3, 50:15,
50:16, 51:8, 51:22,
52:1
**State** [1] - 4:14
**State's** [1] - 86:6
**statement** [5] - 25:11,
35:8, 51:15, 78:6,
79:22
**statements** [2] -
28:17, 39:3
**States** [1] - 4:2
**states** [1] - 75:17
**STATES** [2] - 1:1, 1:10
**stating** [1] - 89:4
**STATUS** [1] - 1:5
**status** [11] - 5:8,
45:15, 47:1, 49:14,
51:20, 51:21, 52:25,
53:3, 53:12, 54:4,
54:15
**stay** [2] - 16:12, 90:15
**staying** [1] - 89:24

**stenography** [1] -
1:24
**stepped** [1] - 35:14
**Steve** [3] - 66:9,
66:16, 67:24
**STEVEN** [1] - 2:22
**Stewart** [1] - 68:11
**stick** [1] - 84:17
**sticking** [1] - 73:12
**still** [21] - 5:19, 9:1,
13:14, 16:18, 18:6,
19:12, 19:15, 19:24,
25:11, 25:22, 31:18,
47:5, 57:21, 63:6,
73:23, 74:2, 79:21,
82:19, 85:9, 85:12
**stipulation** [1] - 65:14
**stop** [2] - 35:25, 79:4
**story** [2] - 23:11,
74:15
**STOY** [5] - 2:18,
38:19, 40:11, 42:1,
55:20
**Stoy** [3] - 38:20,
55:21, 57:15
**streamlined** [1] -
47:23
**Street** [2] - 1:17, 2:14
**Streets** [1] - 1:7
**strikes** [4] - 71:7,
71:12, 71:18, 77:18
**struck** [2] - 32:23,
36:10
**stuff** [2] - 28:18, 88:15
**subject** [3] - 6:10,
11:1, 43:9
**submission** [1] -
78:10
**submissions** [2] -
18:23, 20:1
**submit** [7] - 37:4,
45:14, 53:11, 55:25,
56:7, 59:14, 86:24
**submitted** [6] - 22:6,
35:18, 59:12, 65:19,
69:2, 80:20
**submitting** [1] - 52:25
**subset** [2] - 56:2,
57:13
**substantial** [5] -
16:10, 17:13, 24:25,
34:4, 37:16
**substantially** [1] -
9:11
**substantive** [1] -
44:22
**subsumed** [1] - 86:6
**successfully** [1] -
37:11
**sucked** [1] - 48:12

**suddenly** [1] - 75:10
**sufficient** [2] - 86:24, 88:5
**suggest** [3] - 60:5, 60:21, 75:21
**suggested** [1] - 60:12
**suggestion** [1] - 82:15
**Suite** [4] - 1:17, 1:20, 2:10, 2:22
**summary** [4] - 88:8, 88:12, 88:16, 88:22
**summer** [4] - 36:13, 40:14, 90:9, 90:16
**supplement** [1] - 26:13
**supplemental** [2] - 7:24, 10:15
**supply** [1] - 49:7
**supported** [1] - 20:5
**supporting** [1] - 12:13
**suppose** [2] - 55:23, 63:1
**supposed** [3] - 9:3, 46:10, 47:3
**surprised** [1] - 49:11
**surprisingly** [1] - 62:15
**suspect** [1] - 50:2
**sword** [1] - 10:22
**systemic** [1] - 38:12
**systems** [1] - 30:18

## T

**tactic** [1] - 69:4
**Taffnie** [1] - 68:18
**TAFFNIE** [1] - 68:18
**task** [1] - 17:5
**team** [5] - 55:4, 60:8, 65:3, 65:4, 76:16
**teams** [2] - 47:6
**technical** [2] - 87:12, 87:18
**technically** [1] - 35:24
**tee** [1] - 88:15
**teleconference** [1] - 4:1
**TELEPHONIC** [1] - 1:5
**telephonic** [1] - 16:17
**temperature** [1] - 63:3
**ten** [23] - 57:10, 64:8, 67:21, 67:22, 68:14, 68:17, 69:21, 69:22, 70:9, 72:25, 73:22, 74:8, 74:16, 74:17, 75:10, 75:16, 82:7, 83:11, 83:15, 83:25, 84:21, 85:14, 85:21
**tenor** [1] - 63:3
**tens** [1] - 48:15
**term** [3] - 58:24,

58:25, 89:5
**terms** [21] - 18:22, 19:24, 20:8, 21:3, 27:9, 33:24, 48:25, 49:1, 54:22, 56:6, 57:20, 59:2, 63:3, 63:11, 63:24, 71:7, 71:24, 73:6, 81:4, 81:15, 81:19
**test** [2] - 11:16, 18:14
**testified** [1] - 23:22
**testify** [1] - 33:21
**testimony** [3] - 23:21, 63:5, 63:7
**testing** [1] - 30:17
**tests** [1] - 22:2
**Teva** [5] - 2:23, 2:24, 55:13, 60:9, 66:10
**text** [1] - 63:19
**THE** [6] - 1:1, 1:10, 1:11, 64:15, 65:7, 65:10
**themselves** [2] - 50:20, 74:12
**theoretically** [1] - 78:25
**thereafter** [1] - 15:24, 85:25
**therefore** [2] - 31:23, 44:1
**they've** [4] - 23:23, 23:24, 59:17, 85:19
**third** [1] - 36:22
**Thomas** [1] - 4:3
**THOMAS** [2] - 1:11, 2:9
**thousand** [11] - 37:21, 38:10, 40:6, 40:10, 40:11, 41:1, 41:8, 41:16, 56:25, 57:5, 57:9
**thousands** [4] - 16:9, 25:5, 25:6, 48:15
**three** [6] - 15:20, 22:1, 30:6, 30:14, 33:21, 77:10
**three-week** [1] - 15:20
**throughout** [1] - 25:1
**Thursday** [1] - 32:3
**tight** [1] - 48:22
**timeframe** [5] - 16:16, 38:15, 78:22, 82:4, 82:6
**timeframes** [1] - 78:19
**timing** [6] - 48:16, 70:19, 72:21, 72:22, 73:6, 80:17
**tips** [1] - 56:6
**today** [20] - 12:9, 17:11, 25:3, 32:25,

34:11, 34:16, 34:18, 35:10, 36:21, 41:23, 42:14, 51:19, 52:3, 52:18, 62:11, 65:6, 65:15, 69:6, 77:18
**together** [6] - 9:8, 11:8, 75:5, 75:8, 76:16, 77:5
**Tom** [1] - 64:6
**tomorrow** [6] - 16:9, 25:4, 34:18, 42:14, 52:19, 64:22
**took** [5] - 23:11, 25:8, 43:24, 69:14, 70:9
**top** [2] - 16:12, 40:13
**topic** [1] - 24:18
**Torrent** [1] - 65:15
**total** [3] - 36:2, 38:5, 75:23
**totally** [1] - 41:2
**tough** [3] - 65:4, 89:8, 89:9
**toward** [1] - 7:24
**towards** [1] - 90:16
**Townsend** [1] - 68:18
**track** [1] - 85:8
**transcript** [8] - 1:24, 23:8, 43:21, 49:8, 49:9, 49:21, 79:21, 91:1
**transcription** [1] - 1:25
**transcripts** [1] - 23:17
**transfer** [1] - 17:17
**transmittal** [1] - 7:10
**Traurig** [2] - 66:10, 74:23
**TRAURIG** [1] - 2:21
**treaters** [2] - 75:18, 76:11
**tree** [2] - 38:9, 57:12
**tremendous** [2] - 45:1, 47:7
**tremendously** [2] - 46:24, 47:20
**trial** [7] - 69:1, 72:17, 75:2, 77:5, 77:16, 84:5, 84:25
**trials** [3] - 74:12, 90:2, 90:3
**tried** [2] - 35:20, 37:8
**Trischler** [5] - 34:14, 34:22, 35:12, 38:20, 65:17
**trouble** [1] - 90:12
**true** [3] - 35:22, 45:6, 57:13
**try** [5] - 11:10, 11:11, 35:5, 63:20, 82:24
**trying** [11] - 19:16,

20:19, 39:6, 48:11, 51:1, 51:4, 60:9, 87:11, 87:17, 87:24
**tuned** [1] - 90:15
**turn** [8] - 6:17, 21:15, 21:21, 21:22, 22:17, 32:4, 38:1, 38:12
**turned** [2] - 23:13, 43:25, 44:21
**turning** [1] - 24:24
**turns** [1] - 43:1
**two** [24] - 5:2, 10:22, 15:23, 18:14, 19:4, 23:17, 23:22, 25:8, 26:14, 26:15, 26:17, 30:5, 36:22, 42:1, 51:21, 62:19, 66:6, 74:4, 75:7, 77:10, 79:16, 79:19, 80:7, 90:2
**two-edge** [1] - 10:22
**two-part** [1] - 18:14
**type** [3] - 8:9, 27:20, 58:20
**types** [4] - 21:14, 58:15, 81:19, 81:21

## U

**U.S** [5] - 1:7, 2:15, 22:5, 22:8
**ultimately** [1] - 89:1
**unable** [3] - 10:12, 11:6, 65:20
**unavailability** [1] - 34:21
**unavailable** [1] - 34:15
**uncover** [1] - 23:16
**under** [11] - 18:20, 19:6, 28:3, 31:24, 45:14, 59:3, 78:1, 82:10, 83:1, 84:3, 87:22
**understood** [5] - 33:6, 33:14, 34:5, 80:22, 89:13
**undertake** [2] - 39:17, 41:17
**unfair** [1] - 34:20
**unfortunate** [1] - 36:4
**unfortunately** [5] - 12:15, 15:21, 55:5, 63:5, 63:21
**unimportant** [1] - 72:5
**unique** [1] - 77:1
**Unit** [7] - 34:12, 34:16, 34:20, 35:17, 52:19, 54:20
**UNITED** [2] - 1:1, 1:10
**United** [1] - 4:2

**universe** [2] - 20:8, 55:6
**unless** [1] - 9:16
**unlikely** [1] - 83:16
**unpack** [1] - 39:4
**unquote** [1] - 46:2
**unredacted** [1] - 25:10
**up** [24] - 6:14, 8:11, 10:25, 13:17, 15:23, 17:6, 21:24, 28:19, 31:10, 33:2, 38:22, 43:8, 47:25, 53:7, 58:10, 58:12, 58:17, 59:7, 75:9, 76:3, 76:17, 88:15, 88:21, 88:25
**upcoming** [1] - 74:4
**update** [2] - 49:10, 62:20
**updated** [3] - 45:5, 53:3, 68:11
**uploaded** [1] - 68:5
**urge** [1] - 17:7
**USA** [2] - 2:24, 3:5

## V

**vaccinations** [2] - 89:25, 90:8
**valid** [1] - 25:23
**VALSARTAN** [1] - 1:4
**value** [1] - 43:24
**Vanaskie** [4] - 4:3, 64:6, 69:11, 79:18
**VANASKIE** [99] - 1:11, 4:4, 4:16, 4:20, 4:23, 5:5, 5:12, 5:21, 6:20, 6:24, 7:18, 8:18, 9:23, 11:13, 12:7, 12:19, 13:2, 13:8, 14:4, 14:8, 15:14, 15:16, 16:4, 16:19, 17:4, 17:19, 18:1, 19:14, 20:2, 21:1, 21:18, 21:20, 22:13, 22:21, 22:25, 23:4, 24:9, 24:13, 25:19, 26:11, 27:8, 28:10, 28:12, 29:1, 29:4, 29:15, 29:24, 30:1, 30:4, 30:9, 30:19, 30:24, 31:3, 31:18, 32:8, 32:13, 33:6, 33:15, 33:18, 33:22, 34:6, 34:9, 37:17, 38:17, 40:5, 40:22, 41:15, 41:20, 41:24, 42:3, 42:9, 43:11, 48:7, 51:14, 51:18, 52:5, 52:13, 52:16, 53:4, 53:8, 53:18,

53:24, 54:2, 54:6,
54:13, 54:19, 55:17,
56:14, 58:7, 59:6,
60:2, 60:23, 61:9,
62:3, 63:17, 64:2,
64:6, 64:14, 64:16
*vast* [2] - 81:5, 81:14
*vein* [1] - 8:20
*vendor* [3] - 11:20,
35:7, 38:24
*via* [2] - 4:1, 15:22
*Victoria* [1] - 74:22
*VICTORIA* [1] - 2:21
*view* [3] - 12:25,
27:14, 87:17
*voiced* [4] - 73:2,
79:17, 79:18
*voices* [2] - 4:10, 4:11
*volumes* [1] - 25:2
*voluntarily* [4] - 77:24,
78:2, 78:8, 78:25
*voluntary* [1] - 78:17

## W

*wait* [1] - 34:3
*waiting* [1] - 6:7
*walked* [1] - 53:1
*WALLACK* [1] - 3:7
*Wallack* [2] - 5:25,
6:22
*wants* [3] - 22:17,
74:20, 86:13
*warning* [2] - 18:18,
34:11
*Washington* [1] - 65:3
*ways* [1] - 48:20
*Wednesday* [3] -
28:21, 62:4
*week* [15] - 13:16,
15:20, 22:19, 42:21,
46:23, 51:9, 51:12,
51:16, 52:17, 60:1,
60:25, 61:8, 61:16,
61:25, 62:8
*weeks* [1] - 74:4
*weigh* [1] - 79:3
*welcome* [2] - 61:4,
61:7
*WERNER* [1] - 3:2
*Wetzel* [1] - 68:21
*WETZEL* [1] - 68:21
*whatsoever* [3] -
25:17, 31:22, 32:6
*whereas* [1] - 75:8
*who've* [1] - 26:17
*whole* [2] - 46:23, 47:2
*wide* [1] - 81:7
*Williams* [3] - 67:9,
67:18, 68:18
*willing* [3] - 21:16,

31:25, 78:20
*Winfield* [1] - 68:20
*winnow* [6] - 71:9,
74:12, 82:14, 83:3,
84:6, 85:25
*winnowed* [6] - 70:9,
71:25, 72:7, 82:3,
82:9, 84:24
*winnowed-down* [1] -
72:7
*winnowing* [12] - 70:5,
70:6, 70:19, 71:22,
75:2, 77:13, 80:22,
80:24, 82:20, 82:23,
82:24, 84:19
*wisely* [1] - 43:20
*wish* [1] - 33:19
*withdrawing* [1] -
66:12
*withheld* [27] - 20:7,
34:24, 36:3, 36:24,
37:21, 37:24, 38:1,
38:6, 38:14, 39:8,
39:12, 39:18, 40:7,
40:15, 41:9, 41:11,
55:15, 56:1, 56:8,
56:19, 57:2, 57:6,
57:19, 57:22, 58:1,
59:20, 60:20
*withhold* [1] - 59:4
*withholding* [2] -
35:19, 55:11
*witness* [2] - 33:21,
36:22
*witnesses* [7] - 23:22,
25:8, 28:4, 35:13,
36:18, 36:23, 38:15
*wondered* [1] - 32:22
*word* [2] - 6:5, 44:5
*words* [5] - 6:6, 10:23,
36:10, 85:7, 88:10
*workable* [1] - 61:19
*worried* [1] - 8:11
*wrap* [1] - 60:10
*write* [1] - 88:14
*writing* [1] - 59:12
*wrote* [1] - 34:15

## Y

*year* [4] - 10:8, 58:13,
65:2, 75:20
*yesterday* [6] - 13:17,
17:3, 42:11, 42:18,
51:20
*York* [2] - 2:7
*yourself* [2] - 4:8, 4:10

## Z

*Zhejiang* [1] - 2:16

*ZHP* [11] - 21:8, 22:2,
22:4, 45:4, 45:25,
46:6, 46:15, 49:1,
50:8, 58:9, 58:12