UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

                                    CIVIL ACTION NUMBER:
IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION                19-md-02875-RBK-KMW

_____    STATUS CONFERENCE
                                    VIA REMOTE ZOOM
                                    VIDEOCONFERENCE

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        April 7, 2021
        Commencing at 2:00 p.m.

**B E F O R E:**            SPECIAL MASTER THE HONORABLE
                           THOMAS I. VANASKIE

**A P P E A R A N C E S:**

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey  07068
        For the Plaintiffs

        GOLOMB & HONIK, P.C.
        BY:  RUBEN HONIK, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania  19103
        For the Plaintiffs

        KANNER & WHITELEY, LLC
        BY:  LAYNE HILTON, ESQUIRE
        701 Camp Street
        New Orleans, Louisiana  70130
        For the Plaintiffs

                Camille Pedano, Official Court Reporter
                     camillepedano@gmail.com
                        609-774-1494

      Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

```
 1    A P P E A R A N C E S  (Continued):

 2        GOLDENBERG LAW, LLC
          BY:  MARLENE J. GOLDENBERG, ESQUIRE
 3        800 Lasalle Avenue, Suite 2150
          Minneapolis, Minnesota  55402
 4        For the Plaintiffs

 5        KIRTLAND & PACKARD LLP
          BY:  BEHRAM V. PAREKH, ESQUIRE
 6        1638 South Pacific Coast Highway
          Redondo Beach, California  90277
 7        For the Plaintiffs

 8        SLACK & DAVIS, LLP
          BY: JOHN RANDOLPH DAVIS, ESQUIRE
 9        2705 Bee Cove Road, Suite 220
          Austin, Texas  78746
10        For the Plaintiffs

11        DUANE MORRIS, LLP
          BY:  SETH A. GOLDBERG
12             JESSICA PRISELAC, ESQUIRE
          30 South 17th Street
13        Philadelphia, Pennsylvania  19103
          For the Defendants, Prinston Pharmaceuticals,
14        Solco Healthcare U.S. LLC, and
          Zhejiang Huahai Pharmaceuticals Ltd.
15
          PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
16        BY:  CLEM TRISCHLER, ESQUIRE
               FRANK H. STOY, ESQUIRE
17        One Oxford Centre, 38th Floor
          Pittsburgh, Pennsylvania  15219
18        For the Defendant, Mylan Pharmaceuticals Inc.

19        GREENBERG TRAURIG, LLP
          BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
20        3333 Piedmont Road, NE, Suite 2500
          Atlanta, Georgia  30305
21        For the Defendants, Teva Pharmaceutical Industries Ltd.,
          Teva Pharmaceuticals USA, Inc., Actavis LLC,
22        and Actavis Pharma, Inc.

23        CIPRIANI & WERNER, P.C.
          BY:  JESSICA M. HEINZ, ESQUIRE
24        450 Sentry Parkway
          Blue Bell, Pennsylvania  19422
25        For the Defendants, Aurolife Pharma LLC
          and Aurobindo Pharma USA, Inc.
```

1    **A P P E A R A N C E S (Continued):**

2

3        HILL WALLACK, LLP
         BY:  ERIC I. ABRAHAM, ESQUIRE
4            NAKUL Y. SHAH, ESQUIRE
         21 Roszel Road
         Princeton, New Jersey 08540
5        Attorney for Defendants, Hetero Drugs and Hetero Labs

6

7

8    **ALSO PRESENT:**

9        Loretta Smith, Esquire
         Judicial Law Clerk to The Honorable Robert B. Kugler
10
         Larry MacStravic, Courtroom Deputy
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (PROCEEDINGS held via remote Zoom videoconference before

2    Special Master The Honorable Thomas I. Vanaskie at 2:00 p.m.)

3         JUDGE VANASKIE:  All right.  Let's get started.  I

4    scheduled this conference for a couple of explicit purposes

5    that were mentioned in Special Master Order 14, one of which is

6    to understand the discovery issues that are ripe for

7    disposition for a decision at this point and to see if I can

8    get a prioritization of those issues; and the other explicitly

9    identified matter concerned the documents that have been

10   withheld as nonresponsive to get some guidance in terms of how

11   best to conduct my *in camera* review of the random sample of

12   documents and to make sure that you're satisfied with the size

13   of the sample.

14        And I know you've addressed a couple of other issues

15   for me, and I did want to talk about the translation issue as

16   well, the translation of English documents into Mandarin.

17        So those are the issues that we're going to address

18   today, as well as any other issues you'd like to bring up.  And

19   I think I'd like to start with the translation of the documents

20   from English to Mandarin when the witness being deposed does

21   not speak English or is not sufficiently fluent in English to

22   be able to understand the English document.

23        Now, I've received additional letter briefs on the

24   issue.  They're well presented.  I have a couple of questions

25   and I will start with the questions.  And the first question I

1   have is, at least to ZHP, we're only talking about English

2   documents to Mandarin at the present time, if ZHP is agreeable

3   to machine translation of the documents at least for the

4   purpose of presenting them in Mandarin to a witness, why

5   shouldn't we go that route?

6           And so, Mr. Slater, I'll ask you that question first.

7           MR. ABRAHAM:  Judge, may I ask a procedural question

8   before we start?

9           JUDGE VANASKIE:  Sure, Mr. Abraham.

10          MR. ABRAHAM:  I represent Hetero Labs, as Your Honor

11  recalls.  It wasn't entirely clear to me if Your Honor expected

12  Hetero Labs to participate in this call.  So if Your Honor

13  wants us, we'll stay; if Your Honor does not, we're happy to

14  get about our business, but I want to defer to Your Honor.

15          JUDGE VANASKIE:  Well, let me ask the plaintiffs.  I

16  don't personally think that it's necessary for Hetero to be on

17  this call, but let's hear -- would it be Ms. Goldenberg who

18  addresses it for the plaintiffs or who would address it?

19          MS. GOLDENBERG:  No, Your Honor, it's not myself.  I

20  think it's probably Mr. Parekh, if he's here, and I'm not sure

21  if he is on.

22          JUDGE VANASKIE:  Is he here?  Maybe that answers the

23  question.

24          MR. SLATER:  Your Honor, it's Adam Slater.

25          MR. PAREKH:  I'm sorry, Your Honor.

1          JUDGE VANASKIE:  Okay, there he is.

2          MR. SLATER:  We had thought that this was one of the

3   things you wanted to discuss.  If you don't, you know, we can

4   wait.  We've laid out our position to Your Honor which is that

5   we think we're in the red zone here at this point of real

6   concern because the issue is just not ending.  But I won't

7   argue it further than that.  It's up to you if you want to hear

8   it or not today.

9          JUDGE VANASKIE:  I'm sorry, I know you'd like to get

10  it resolved but what I was intending to cover today I think was

11  accurately captured by Mr. Goldberg, and that is that I was

12  looking to get a prioritization of the matters that are ripe.

13  I'm not sure that's ripe.  It's not presented by way of a

14  motion.  I know you want to get it resolved, we have a

15  conference call a week from today and I expect we'll address it

16  at that time.

17         MR. SLATER:  Perfect.  Thank you.

18         JUDGE VANASKIE:  I won't be going through the Hetero

19  matter today.

20         MR. ABRAHAM:  Okay.  Thank you, Your Honor.  I wish

21  everybody well and I'll carry on without you.  Thank you,

22  Judge.

23         JUDGE VANASKIE:  All right.  Thank you.

24         All right.  So, Mr. Slater, if the defense is

25  agreeable, if ZHP is agreeable, to machine translation, why

1    shouldn't that be the standard here?

2         MR. SLATER:  I think we stated in our letter that we

3    would agree to that.  I think we stated in our letter we would

4    agree to it.  And we did a lot of research on this and I think

5    we suggested Google Translate is probably, you know -- that or

6    Amazon, something of that nature.  Obviously, there's other

7    issues in terms of the scope, but in terms of if we're directed

8    to translate anything, we agree that's the way to do it.

9         JUDGE VANASKIE:  Okay.  Mr. Goldberg?

10        MR. GOLDBERG:  Your Honor, I think, as we suggested,

11   machine translation to be used for documents during the

12   depositions would be fine, subject to, you know, our reserving

13   our right to object to the accuracy of the translation.

14        Now, what we're -- what our view is, is that we would

15   be doing this in lieu of plaintiffs having taken the time to

16   translate the documents in advance of the depositions so that

17   we can facilitate the completion of the depositions as

18   scheduled by the Court.  But, we would -- we would definitely

19   need to reserve the right to object to the accuracy of the

20   document.  Of course, the Court will rule on that kind of

21   objection down the road and, you know, will make its

22   determination as to whether that was a good objection or not;

23   but we would be willing to go this route to facilitate the

24   completion of the depositions.

25        JUDGE VANASKIE:  All right.  Here's what I'd like to

 1    see happen.  We can reduce it to an order, if necessary.

 2              First, to the extent that there are documents that are

 3    both in English and in Mandarin, there should be some way to

 4    identify what those documents are; that is, there should be

 5    some cooperation or there should be some indication when the

 6    documents have been produced that they are in both languages so

 7    that when a Mandarin-speaking witness is being deposed, the

 8    plaintiff knows that that document exists in Mandarin and can

 9    use that Mandarin document when asking the witness a question

10    and displaying it to the witness.  So I'd ask that whatever

11    steps need to be taken to achieve that result be taken so that

12    there's -- you have that ability, that ability to know that you

13    have the document in both languages.

14              If a document is in English only and the document is

15    20 pages or less, then I expect that the document, in toto,

16    will be translated, it can be done by machine translation; but

17    this way the witness would have the opportunity to look at the

18    entire document.

19              If it's --

20              MR. GOLDBERG:  Your Honor.

21              JUDGE VANASKIE:  Yes, go ahead, Mr. Goldberg.

22              MR. GOLDBERG:  I'm sorry.  I'm sorry to interrupt.

23              It just -- you know, I just realized that what

24    plaintiff is suggesting is to use something called Google

25    translation, which is different than machine translation, which

1    is what we had proposed and which is what I thought we were

2    talking about, which is a vendor that has a system that can

3    translate the documents.  Google translation, my understanding,

4    is simply using Google, which we all can do to translate a

5    document, and I'd be very concerned about the accuracy --

6            MR. SLATER:  Somebody has their phone off mute.

7    Somebody is talking with their phone open.

8            JUDGE VANASKIE:  Right.

9            UNIDENTIFIED SPEAKER:  Jessica Heinz is not on mute.

10   She is now.

11           MS. HEINZ:  I was thinking.

12           JUDGE VANASKIE:  Okay.

13           MR. GOLDBERG:  So I want to correct what I said

14   because we would not be agreeable to a simple Google

15   translation because unless we can compare the accuracy of that

16   to the accuracy of a proprietary software that's used by a

17   vendor to do what's called machine translation, but we never

18   suggested that it would be good enough to simply use Google to

19   translate a document, especially a document of this highly

20   technical nature.

21           JUDGE VANASKIE:  All right.  Mr. Slater --

22           MR. GOLDBERG:  We provided -- Your Honor, we provided

23   for the Court the information about the machine translation

24   based on a proprietary software implemented by a vendor, and

25   Your Honor can see in our submission the cost is pennies for

1   even large documents.  And so that was -- that was the basis

2   for our suggestion about machine translation.

3           JUDGE VANASKIE:  All right.  Mr. Slater.

4           MR. SLATER:  Yes, Your Honor, I'll start and hand off

5   to Mr. Parekh.

6           We spoke to our vendor and -- in terms of the vendor

7   handling all of our ESI, and it turned out from that discussion

8   that using their system would actually have been worse because

9   the way it would have come out, it would have been formatted

10  completely differently and almost impossible to follow in any

11  kind of a reasonable fashion.

12          I'm not sure -- there's other issues that are being

13  raised but I'm not sure what proprietary software Mr.

14  Goldberg's talking about.  As Your Honor -- you understand, if

15  they've been translating these documents to Mandarin already,

16  they might as well just produce them.  But I'm going to hand

17  off to Mr. Parekh who wants to also provide more technical

18  information in response to specifically what Mr. Goldberg may

19  be talking about.

20          JUDGE VANASKIE:  Before I hear from Mr. Parekh, I'd

21  like to ask Mr. Goldberg a question, and that is:  Your letter

22  did not, as I recall, identify any particular vendors, it just

23  gave us a cost estimate.  Is that correct?

24          MR. GOLDBERG:  That's correct, Your Honor.

25          JUDGE VANASKIE:  All right.  Okay.  Mr. Parekh.

1          MR. PAREKH:  Good morning -- or good afternoon, Your

2    Honor.

3          So we have talked to multiple vendors and particularly

4    we've talked to our document review vendor where we're hosting

5    all of these documents, and what they have told us is that the

6    way they do machine translation is they take the extracted

7    text, which is just the textual nature of the document that was

8    produced, and then they translate that using their own

9    proprietary system, which is run by Amazon.  Most vendors use a

10   back-end system that's either Amazon, Google, or something

11   similar, and they then produce that translated text back in

12   Mandarin.

13         The problem with using something like that is that the

14   text is unformatted.  So you have, essentially, a series of

15   Chinese characters.  Sometimes there's page breaks, sometimes

16   there's not; it depends on how the underlying English text was

17   extracted.

18         So when you give that to a witness, the witness is

19   going to look at it and say, I don't know what this is, I don't

20   know where it corresponds to the English document, and, you

21   know, we're going to get an objection from Mr. Goldberg that

22   says we object to using this document.

23         So what we did was we tried to find other systems

24   where we could try and keep the formatting as intact as

25   possible.  And from our research, one of the best systems

 1    around is Google Translate.  They have a significant investment

 2    in AI and infrastructure in their translation systems and

 3    there's not -- you know, unless Mr. Goldberg has something

 4    specific that he would want us to use and that we can talk

 5    about, we think that Google Translate is a perfectly acceptable

 6    version of systems translation and currently appears to be

 7    close to state of the art in terms of translation of documents.

 8            JUDGE VANASKIE:  Mr. Parekh, how does the Google

 9    Translate work in terms of do you provide a scanned image of

10    the document?  I'm just trying to understand how it works.

11            MR. PAREKH:  Sure.  So most of our documents are in

12    .pdf -- in searchable .pdf format, particularly the English

13    language documents.  So you upload the searchable .pdf version

14    to Google Translate and it sends back a translated version

15    after about a minute or so that you can then download.  And

16    that's the way it works.  If it's a scanned image, those are

17    much more difficult because then you have to OCR them and the

18    whole entirety of the translation becomes unusable for the most

19    part.

20            JUDGE VANASKIE:  All right.  Mr. Goldberg.

21            MR. GOLDBERG:  Yes, Your Honor, a few things.

22            One, I think the -- the point about formatting is

23    really a function -- it's really an issue of cost.  So, yes,

24    you can have the documents translated in just text and that's

25    going to be a lower cost than if you also ask your vendor to

 1  format the documents.  I think what plaintiffs are suggesting

 2  is they don't want to incur the cost of not only having the

 3  language translated but the document -- the translated document

 4  formatted to appear like the original English document.  And,

 5  you know, that's an example of plaintiffs not wanting to have

 6  skin in the game.  These are their documents that they want to

 7  use in a deposition.  Out of fairness to the witness, they

 8  should be translated to Chinese, and they are saying, Judge,

 9  we're willing to do a machine translation but we're not willing

10  to pay for the translation.

11        So in our view, what plaintiffs should be doing is

12  translating the document, using their vendor, we're okay with

13  them using their vendor that has the data already to translate

14  the document, and to have the document formatted.

15        In terms of the Google Translate, I can't speak to the

16  accuracy of it.  We would certainly want to understand that,

17  but it also seems to raise some questions about security.  I

18  don't know that we can have restricted confidential documents

19  that have been produced in this case uploaded to Google

20  Translate for purposes of translation without understanding

21  what kind of security issues there are.

22        JUDGE VANASKIE:  Mr. Parekh, can you address the

23  security concerns?

24        MR. PAREKH:  Sure.  So the security concern is

25  definitely an issue, we understand that as well, which is why

```
 1   we've been trying to find another vendor that uses something
 2   similar to Google Translate.  But with our vendor, what we know
 3   is that they are only capable of doing the machine translation
 4   from the extracted text.  If you wanted to format the document
 5   in a way that mimics the original document, that has to be done
 6   manually.  That can't be done simply from the extracted text.
 7           So when Mr. Goldberg talks about incurring extra
 8   costs, we're not talking about machine translation anymore;
 9   we're talking about manual translation in order to get the
10   document formatted correctly.
11           If Your Honor wishes, I can show Your Honor what a
12   Google Translate of a document looks like through screen
13   sharing and Your Honor can understand what we're looking at
14   when Mr. Goldberg talks about machine translation.
15           JUDGE VANASKIE:  Well, I'd like to see it but, you
16   know, the security concern is overriding right now.  You're
17   certainly free to show me what it would -- I don't have any --
18   I wouldn't have any problem with plaintiffs using Google
19   Translate except for the security concern that was just raised
20   by Mr. Goldberg.  So --
21           MR. SLATER:  Your Honor, can I just --
22           JUDGE VANASKIE:  Yes, Mr. Slater.
23           MR. SLATER:  Thank you.
24           I would think, and, you know, part of what we laid out
25   in our briefs is to find out what they've already translated
```

 1   because the more this discussion goes on, the more it sounds

 2   like they've been translating for their witnesses already.  So

 3   there may be a whole trove of these documents that they already

 4   have and they're looking at us to duplicate the work, which

 5   would not be efficient.

 6          The English documents we're talking about, the

 7   security concern, I think comes down to two -- there's two

 8   considerations:  One, Your Honor has our motion which is

 9   pending to de-designate the over-designated documents, which I

10   think can alleviate a lot of the problem with that; and two, a

11   lot of the documents we're talking about, I would say the

12   lion's share, we're talking about long English language

13   regulatory documents as to which there could never be a

14   reasonable argument as to confidentiality.  So I think that

15   it's very hard for them to make that argument that there's --

16   that any of the documents that really would need to be

17   translated, which we believe should be a very narrow subset,

18   would create such a concern.

19          I suppose if there was a document that had that

20   concern we could talk to the defense about it, but the manpower

21   level that it would take to essentially reconstitute these

22   documents, after doing the extracted text, you're talking about

23   hours and hours and hours, pulling our entire Chinese language

24   review team that's reviewing documents to prep us for

25   depositions off of what we need them to do for us and putting

 1    them into this side project, which we don't think would make

 2    good use of their time.

 3              JUDGE VANASKIE:  Well, here's what I'm going to do

 4    because -- no, I think I've heard enough, Mr. Goldberg, on this

 5    particular issue.  Documents that have not been designated as

 6    confidential you can use Google Docs to translate those

 7    documents.  I don't -- you've preserved your objection, Mr.

 8    Goldberg, with respect to the accuracy of the translation,

 9    you've reserved that objection even if they used a specific

10    vendor, what you're calling machine translation.  To me, this

11    is the same as machine translation.  You don't have to go out

12    to another vendor.  I don't know what -- if there's any cost

13    with Google Translate, maybe it's free.  I've used Google

14    Translate for some of the documents that were produced in this

15    matter so I could get an understanding of what the documents

16    were saying, to some extent, when I only had a foreign language

17    involved in it.  And you've preserved your objection with

18    respect to the accuracy of the translation.

19              Now, those documents that have been designated as

20    confidential, I expect that there's going to have to be a

21    discussion or an effort at you all to get together to figure

22    out how best to accomplish that.  Perhaps now I will expedite a

23    ruling because I wanted to get a priority list of what I need

24    to decide, and I'll put at the top of the priority list the

25    confidentiality designations that have been made in this case

1    so you can get a decision from me in a timely manner on that.

2            But machine translation is acceptable.  It may be that

3    Google is state of the art, and I'm perfectly comfortable with

4    saying you can use Google Translate and you can preserve your

5    objections on the defense side.  And this way at least we get

6    beyond where we are right now, where the witness is being asked

7    questions about documents in English without being able to see

8    them.

9            Now, with respect to the translation, I was starting

10   to say that any document 20 pages or less I expect the entire

11   document to be translated so the witness can look at it for

12   context and see the entire document; and any document that is

13   more than 20 pages I expect there to be available to the

14   witness the ten pages before and the ten pages after.  I

15   understand that's arbitrary but it's better than nothing, and

16   it gives at least some context when the question is being

17   asked.

18           And so that's what I expect to happen with respect to

19   these depositions that will be going forward.

20           Anything else on this issue?

21           MR. SLATER:  Yes, Your Honor.  It's Adam Slater, for

22   the record.

23           We raised a couple concerns in our brief, which one of

24   them we appreciate you addressed right up front, which is that

25   if they already have a translation of the document in the

 1  production, they should tell us.  So I wanted to ask for

 2  clarification on that and raise a second issue, which is, does

 3  that include if they have a translation of a document they

 4  haven't produced to us, so they're not putting us through these

 5  hoops when they're sitting with it as well.  I would think that

 6  would be -- if the concern is the witness having the

 7  translation in front of him or her, then that would seem to be

 8  reasonable as well.

 9      JUDGE VANASKIE:  Yes, that sounds reasonable to me.

10  Let's hear from Mr. Goldberg, though.

11      MR. GOLDBERG:  Your Honor, my understanding is we have

12  produced all of the documents that are -- documents that have

13  been translated have been produced, and we've -- we represented

14  to that effect in our brief but we're representing it to Your

15  Honor again so that's not an issue.

16      JUDGE VANASKIE:  Okay.

17      MR. SLATER:  Okay.  The second issue, Your Honor, is,

18  we had identified certain categories of documents that we were

19  asking Your Honor to consider that we wouldn't have the

20  translation obligation, and there's really three categories:

21  One is English documents that were sent to or from or in the

22  custodial file of the witness him or herself.  The second

23  category was their operative corporate documents that they

24  would have needed to be able to work with in the ordinary

25  course, which we argued if they haven't translated those then

 1    it was never needed anyway and they'll have to explain how they
 2    worked with them or whatever they need to explain, but those
 3    are documents that if they only exist in English, that's how
 4    the company chose to do business.  And the third was the
 5    official FDA communications and related documents which, from
 6    our perspective, we cited a regulation or a statute to Your
 7    Honor, that's the language they're in so that's how they work
 8    legally.
 9            And I wanted to just make sure that I explained one
10    concern, which Your Honor can possibly take care of right now
11    on the record, which is, Your Honor well knows if we try this
12    case, the witness is going to be up on a screen and the
13    document's going to be up and we want to be able to make sure
14    that if the operative document's in English, for a jury sitting
15    in Camden, that they're going to be able to see the English
16    document on the screen with the witness even if we're using the
17    Chinese language document for the convenience of the witness.
18    Because what we're often doing is we're identifying both
19    versions, if there are two versions, and I'm saying I'm working
20    off the English but we'll work with the Chinese version, the
21    Mandarin version for the convenience of the witness.  So we
22    just want to make sure at the end we're not whipsawed and told,
23    well, sorry, you know, you were using a translation or you used
24    the Chinese version so you can't show the jury the English
25    version when you're questioning the witness on it.

1          So I threw a lot at you, I'm sorry, but I know you got

2    it, but those are three areas of concern I wanted to make sure

3    that we could hopefully address.

4          JUDGE VANASKIE:  All right.  Mr. Goldberg.

5          MR. GOLDBERG:  Your Honor, I'll take the last one

6    first, which is the trial issue.

7          It seems premature to be making a ruling pertaining to

8    trial at this juncture, and it's likely that Your Honor may not

9    be presiding over that trial so we don't see how a ruling could

10   be made today about what would happen at a trial somewhere down

11   the line, especially on an important issue like this.  It'll

12   have to be resolved by the trial judge.

13         MR. SLATER:  Well, I think --

14         JUDGE VANASKIE:  Let me interrupt you, I'm sorry, Mr.

15   Goldberg, but it seems to me that what Mr. Slater is asking is

16   that he not be prejudiced at the time of trial by saying that

17   only the Mandarin language document can be displayed to the

18   jury as opposed to the English -- the document in English.

19         Did I understand you correctly, Mr. Slater?

20         MR. SLATER:  You did.  And, obviously, the conduct at

21   these depositions is very important in terms of how it will

22   roll out at trial.  So, yes, that's exactly my concern.  We

23   don't want to be prejudiced by that.

24         JUDGE VANASKIE:  Well, I don't see -- you know, I

25   guess from my perspective, you could not be prejudiced.  In

1    other words, as long as they're faithful translations, the fact

2    that the witness is now looking at a document that's different

3    than -- different as in appearance because it's in a different

4    language from what the witness is seeing should not prejudice

5    you.

6            MR. SLATER:  Well, what I'm talking about is where we

7    have, for example, an English language document that is a ZHP

8    corporate document and we're questioning on that document, for

9    example, but we're having to use a machine translation of part

10   of it to show the witness, we're going to be working off the

11   English document.  The machine translation or the Mandarin

12   version of the document, if there's two separate versions,

13   which happens quite often, we're using that for the convenience

14   of the witness so that they can see something in their own

15   language at this point.  But the document we want that is the

16   evidential document that we're going to want to show on the

17   screen when the witness is being questioned is the English

18   version which the jury can actually read while they listen to

19   the testimony.  So as long as we have protection on that in the

20   record, I just wanted to raise it because I want to make sure

21   that we're not, as you understand, whipsawed when we get to

22   trial.

23           JUDGE VANASKIE:  Well, you've raised the issue and I

24   think -- so you've made a record on it.

25           Go ahead, Mr. Goldberg.

1        MR. GOLDBERG:  Well, I was going to say, Your Honor, I

2   think Mr. Slater has made -- has raised his issue.  I don't

3   think this is an issue that can be resolved today or decided

4   today.  As Mr. Slater just said, this is an evidentiary issue

5   and I think this is an issue that will have to be decided by

6   the trial judge.

7        I think what's clear is that Mr. Slater isn't

8   prejudiced from raising this issue with the trial judge at the

9   appropriate time.

10       MR. SLATER:  Well, that's small solace because the

11  defense is asking to require us to use Mandarin language

12  documents in questioning the witness.  And if we're making a

13  record right now on videos that are of witnesses who are not

14  going to come to the trial, then, you know, but for these

15  rulings, we would be using the English version on every single

16  one of these because that's what the jury's going to see on the

17  screen.  So that's why I've been placing in the record I'm

18  working off the English version but there's also a Mandarin

19  version so we have that flexibility.  But as long as we have on

20  the record the defense is not asking us to do this with the

21  intent of later foreclosing us from using the English versions

22  at trial, that would be a reasonable thing to put --

23       MR. GOLDBERG:  No.

24       MR. SLATER:  -- on the record so there's no more

25  concern.

```
 1            MR. GOLDBERG:  No.  I mean, this is an issue of
 2    fairness to the witness; this isn't an issue of convenience.
 3    The witness can't answer questions about a document the witness
 4    can't read.  That's what we're trying to decide today.  And the
 5    issue about what you would show a jury is an issue for a later
 6    date.  Presumably when the witness is on the stand at trial,
 7    they're going to need to be shown a document they can read,
 8    which will be a Mandarin or a Chinese document.
 9            MR. SLATER:  Your Honor --
10            MR. GOLDBERG:  How you address it with the jury is an
11    issue to be decided by the trial judge.
12            MR. SLATER:  I think you get the issue, Your Honor.  I
13    don't think Mr. Goldberg's grasping what I'm saying.  I'm not
14    saying that pejoratively.  I'm not talking about a live witness
15    in the courtroom.  I'm talking about when we use these videos
16    and designate portions and play them as substantive testimony
17    at trial.  So it's very concerning that this entire exercise is
18    going down and defense counsel won't just say, of course, we
19    agree at trial you can use the document in the language that is
20    spoken by the jury, if it exists, because that will be -- that
21    would be more convenient and make more sense.  But for them not
22    to agree to that makes me think this entire exercise could
23    potentially prejudice us in a very significant way at trial for
24    the convenience of the witnesses that they chose to designate.
25    That would be inequitable.
```

1          JUDGE VANASKIE:  Well, I think the best way to handle

2     this right now is you can have available that document that's

3     in the English language and have a translation that's available

4     for the convenience of the witness, but you can ask your

5     interpreter to work off the English document in asking the

6     question.  But when you ask a witness to review something, the

7     witness should be able to have the document in the witness's

8     language.

9          MR. SLATER:  That's a great solution.  That's why I

10    asked you for help, Judge.

11         JUDGE VANASKIE:  Okay.  All right.  Now, you've raised

12    three issues.  The FDA documents.

13         The FDA documents, when you're examining a witness

14    with respect to the FDA documents, should be translated.  I

15    know that there's the regulation that they're submitted in

16    English and, yes, the witnesses who have been designated should

17    have an understanding about what that required document says

18    but it's still in a foreign language, as far as the witness is

19    concerned.  And so as to the FDA documents, there should be a

20    translation available for the witness to see the document in

21    the witness's native language.

22         You raised an issue with respect to documents like

23    emails that the witness -- that are in the witness's custodial

24    file that are in English, presumably the witness should

25    understand that document, I understand that; but, again, it's

1   not in the witness's native language, it should be translated.

2           And the third issue I think you raised were contracts

3   or other documents that exist in English, again, I guess in

4   that witness's custodial file, maybe.  Correct me if I'm wrong

5   on that category of documents.

6           MR. SLATER:  It could be one or the other.

7           JUDGE VANASKIE:  Yes.

8           MR. SLATER:  For example, there could be an important

9   agreement that was provided to that witness in English only in

10  the ordinary course and the witness has it or it could be a

11  central document that comes within the topic the witness was

12  designated to talk about and the operative document is only in

13  English.

14          JUDGE VANASKIE:  Again, I think it should be provided

15  in the witness's native language.  You certainly have the right

16  to inquire whether the witness worked with the document in

17  English, you can ask a question, you've been designated to

18  speak on this document that was found in your file in English,

19  and try to get an understanding of the witness's familiarity

20  with English; but, ultimately, it should be available in the

21  witness's native language.

22          MR. SLATER:  Understood, Your Honor.  Thank you for

23  addressing those issues.

24          JUDGE VANASKIE:  All right.  Anything else on this

25  issue, on the translation issue?

```
 1              (No response.)

 2         JUDGE VANASKIE:  All right.  Thank you.

 3         MR. SLATER:  I don't think so.

 4         MR. GOLDBERG:  Nothing from ZHP.

 5         JUDGE VANASKIE:  Thank you, Mr. Goldberg.

 6         Now, the next item I wanted to talk about is this

 7    priority list of outstanding issues.  And, Mr. Slater, you teed

 8    up the confidentiality designations and that's ripe for

 9    decision.  I'm not asking for argument today on it.  I just

10    want to -- I just want you to tell me what I should address

11    first from each of your perspectives.

12         So I take it you think that should be addressed first.

13         MR. SLATER:  I think it's -- I mean, everybody's going

14    to want to fight to the top of the list to get their issue to

15    the top.  I certainly think that it's pressing because it could

16    solve a lot of the concerns and it will make it a lot easier

17    for us, for example, to submit things to Your Honor without

18    having to hold documents off the docket and send separate

19    versions, et cetera.

20         JUDGE VANASKIE:  Okay.  I guess I should turn to you,

21    Mr. Goldberg, at this time and say, what's on the top of your

22    priority list?

23         MR. GOLDBERG:  Your Honor, I don't -- I don't think

24    that -- well, from the ZHP parties' standpoint, I don't think

25    there are disputes that we view as any particular priority.  We
```

1    don't -- you know, plaintiffs have raised a few issues but the

2    only issue that we understand that's ripe for the Court at this

3    point is, with respect to ZHP, is the confidentiality issue.

4         JUDGE VANASKIE:  We also have the Chinese state

5    secrets law issue, I think, with respect to ZHP.

6         MR. GOLDBERG:  Right, Your Honor.  And that issue has

7    been -- in our view, we've narrowed that issue to the point of

8    now being ready to have it be briefed by way of a motion to

9    compel, if plaintiffs feel that a motion is warranted as to any

10   of the documents on our state secret log.  But as Your Honor

11   can see through the various correspondence that we provided,

12   this issue started with 300 or so documents on state secret

13   logs.  We've worked diligently with Chinese counsel to narrow

14   that to about 90 documents.  We then narrowed it even further

15   before our on-the-record meet and confer down to about 35

16   documents.  We had that meet and confer.  We discussed every

17   document.  We followed up that meet and confer and provided Mr.

18   Slater and plaintiffs with information about the duplicates

19   among the 90.  And when you control for those duplicates, you

20   control for documents that plaintiffs conceded during the meet

21   and confer they're not challenging, you get to a universe of I

22   think it's about 28 documents that are in dispute, and it's our

23   understanding that we're at the point where plaintiffs would

24   need to move to compel any of those documents.

25        JUDGE VANASKIE:  Mr. Slater.

1          MR. SLATER:  Thank you, Your Honor.

2          It's -- we're a little disappointed because of the way

3  that the meet and confer ended, and I'm going to, if I could,

4  indulge me for one second, the -- ZHP provided you the

5  transcript, so you have the transcript.

6          JUDGE VANASKIE:  Right.

7          MR. SLATER:  And at the very end, on Page 128, we had

8  gone through all the documents and, in going through the last

9  document, asked the attorney who was based in China and had

10 this discussion with us about the China state secret documents

11 from China to the U.S. by Zoom, and I asked her about a

12 document that had both factual information that ZHP had and

13 some Chinese government impressions, and I said, on Line 11 on

14 Page 128:

15          "The factual information could be provided and the

16 local government viewpoints could be redacted, right?"

17          And Ms. Yang said:  "Yes, I think that's one way to do

18 it."

19          And then I said, I'm hopeful you all can go back, I'm

20 paraphrasing, and consider doing that because that may

21 alleviate the issue.  If we can see what ZHP's factual

22 information was, we're not really concerned about what the

23 Chinese government thought so much about it, it's more about

24 their factual information.

25          And Mr. Goldberg finished on Page 129, Line 4, and

```
 1   said:  "We'll consider it."

 2          So when I said we're disappointed it was because their

 3   response to the Court was we considered it in January.  We gave

 4   you what you get, we're not considering that any further.  So

 5   that was a bit of a surprise to us because we would hope that

 6   before we have to get to the point of doing all this briefing

 7   that perhaps they could agree to do what they said they could

 8   do in the transcript and which they did with three documents

 9   that they already produced to us redacted.

10          So I was hoping we'd come out of this hearing with a

11   reasonable midpoint, which is that they would redact the

12   documents, take out all the Chinese government impressions,

13   opinions, statements, leave in the factual information that ZHP

14   put in, let us see that; we may, at that point, be done.

15          JUDGE VANASKIE:  All right.  Mr. Goldberg?

16          MR. GOLDBERG:  Your Honor, I think that what the

17   record reflects is a very cooperative and very diligent process

18   down to 28 documents and we did consider it, we have

19   communicated with our Chinese counsel, and we have a dispute as

20   to these 28 documents.

21          We dispute what Mr. Slater refers to as factual

22   information as being information that can be produced in this

23   case, and we have discussed that with our Chinese counsel.  And

24   at this point, if plaintiffs feel that there are any documents

25   they think warrant a motion, we're at the point for them to
```

```
 1    file that.
 2            JUDGE VANASKIE:  All right.  I guess that's where
 3    we're at then, Mr. Slater.
 4            MR. SLATER:  Okay.
 5            JUDGE VANASKIE:  File the motion.  If it turns out
 6    that these 28 documents were largely subject to production
 7    because they're factual in nature and could have been produced
 8    with redactions, well, then you can ask for appropriate
 9    sanctions.  But right now there's nothing I can do until I have
10    a motion in front of me and make a decision about the scope of
11    the Chinese state secret law and whether these documents, in
12    their entirety, fall within that law.
13            MR. SLATER:  Thank you.
14            MR. GOLDBERG:  Your Honor, Your Honor, I just want to
15    express a concern about the statement Your Honor just made
16    regarding sanctions because we have Chinese counsel who are
17    reviewing these documents and they are making their
18    determinations based on their understanding of Chinese law.
19    And Mr. Slater represented to Your Honor a few weeks ago that
20    he has not retained a Chinese lawyer, he has not conferred
21    about these issues with Chinese counsel, and he is making
22    assertions based on his view of what the Chinese law requires.
23    And I am -- it is concerning to me that what the Chinese
24    lawyers are saying is being given short shrift.  They are the
25    ones -- they're the only lawyers in this case who have the
```

1  ability to opine on what Chinese law says and we are being

2  guided by their understanding of Chinese law.

3         And so the assertion by Mr. Slater that documents can

4  simply be redacted, well, we -- we did redact certain documents

5  and we have reviewed the other documents and determined that

6  they shouldn't be redacted based on advice of Chinese counsel

7  pursuant to the -- the precedent set in the *Aerospatiale* case

8  and what the Supreme Court indicates should be done.  And to

9  have a suggestion that there would be sanctions is concerning

10  because we have done everything we can by the book to get this

11  to the most narrow set of documents.  And we're talking about

12  28 of almost 400,000.

13         JUDGE VANASKIE:  Well, no one's giving short shrift to

14  the opinion of Chinese counsel and certainly it will be taken

15  into consideration.  It may be that I make a recommendation to

16  Judge Kugler that I have the ability to consult an expert in

17  Chinese law for purposes of making an independent judgment with

18  respect to the Chinese state secret law.  Certainly, while no

19  one is giving short shrift to their opinion, it doesn't have to

20  necessarily be taken as gospel, and there's plenty of case law

21  that has recognized that on questions of foreign law, the Court

22  can consider the opinion of somebody who is neutral and an

23  expert in that particular jurisdiction's law.

24         All I'm saying is that I don't want there to have been

25  withholding of information without a good-faith basis.  I know

1   you haven't in this case, Mr. Goldberg, but you are relying

2   upon your Chinese experts, your experts in Chinese law, and we

3   all know that there can be differing opinions among experts,

4   especially on matters like this.

5          Nobody's suggesting sanctions will be ordered but we

6   are letting you know that this is a serious matter, just as the

7   entire case is.

8          MR. SLATER:  Your Honor, it's Adam Slater.

9          In the hope that, again, I can cut to the chase with

10  this, I just want to make it clear for the record, when I read

11  from the transcript on Page 128, Line 11 to 15, I was reading

12  my discussion with the Chinese counsel --

13         JUDGE VANASKIE:  I understand that.  I understand

14  that.

15         MR. SLATER:  -- who said -- who said that's one way to

16  do it.  So he's telling us you can't do it when she said,

17  during the meet and confer, yes, it can be done.  So that's --

18  you get where our consternation is is that we're going to go

19  through all this briefing for nothing.

20         JUDGE VANASKIE:  I didn't understand that.  And I'm

21  going to interrupt you because I did not understand Mr.

22  Goldberg as saying that it cannot be done.  I'm saying that

23  they've looked at it and they've made a determination that as

24  to these documents, these 28 documents --

25         MR. SLATER:  No, she said it as in the documents that

 1  we met and conferred on.  I was in the context of a particular

 2  document and asked, that can be done.  And then I said, can you

 3  go back, please, and see if you can do that now because that's

 4  the way to narrow and alleviate the dispute.

 5          JUDGE VANASKIE:  Sure.  Well, I'd love to see the

 6  dispute go away.  And unless and until it does, and Mr.

 7  Goldberg can go back to his experts and ask them again, is

 8  there any redactions that can be made, if they can't be made,

 9  then you're going to have to file your motion to compel.

10          MR. SLATER:  Thank you, Your Honor.

11          JUDGE VANASKIE:  Mr. Goldberg, I didn't mean to

12  interrupt you.

13          MR. GOLDBERG:  Your Honor didn't interrupt.  I'm

14  sorry.  You know, I would say that -- you know, and one of the

15  reasons we provided the transcript is Your Honor is more than

16  welcome to review it and what you'll see is that not only was

17  there a very meaningful dialogue about each of these documents

18  with Chinese counsel, but that even among the 28 that have been

19  disputed, the dispute is not a good one.  The documents have no

20  or very marginal connection to this case.  And to the extent

21  plaintiffs want to bring a motion that's frivolous about those

22  documents, we would expect there to be the same understanding

23  about costs.

24          JUDGE VANASKIE:  Certainly there's always that

25  understanding.  Nobody means to preclude that.

 1          All right.  I'd like to get to the Mylan documents,

 2    the documents that have been withheld as nonresponsive.  And

 3    what I was hoping to get is some guidance from you all with

 4    respect to what I should be looking for, for purposes of

 5    determining whether a document is potentially responsive or not

 6    responsive.  And what I was hoping I could do is give you all a

 7    brief description of some of the documents that are in that

 8    random sample of documents sent to me, describe the document

 9    for you and have you give me an explanation as to why, on the

10    plaintiffs' perspective, you'd view that document as

11    responsive, and why, on the defense perspective, you'd view

12    that document as nonresponsive, because what I have to do is go

13    through those documents and make a determination responsive or

14    not responsive for purposes of then saying, you know, 95

15    percent of the documents have been appropriately categorized as

16    not responsive, no need for further review, or give you my

17    conclusions and then let you argue about whether or not they

18    would warrant further review.

19          Before we get into that, first, is it all right if we

20    proceed in this manner?  We're not talking about privileged

21    documents right now.  We're talking about documents withheld as

22    not relevant.  So is there any problem?

23          Is it you, Mr. Trischler, who will be talking about

24    this?

25          MR. TRISCHLER:  Good afternoon, Your Honor.

1          JUDGE VANASKIE:  Good afternoon.

2          MR. TRISCHLER:  I will be talking about parts of it.

3    I think if Your Honor gets into specific questions about the

4    sampling documents, the random sampling of 300-plus documents,

5    my colleague, Frank Stoy, is on the line who's probably more

6    familiar with the particular documents than I.  So if the Court

7    has questions about particular documents, I may defer to Mr.

8    Stoy; but if there are overarching issues with respect to the

9    Court's observations, I can certainly address those.

10         JUDGE VANASKIE:  All right.  Mr. Honik, are you

11   comfortable with proceeding in this manner?

12         MR. HONIK:  I am, Your Honor.  Like Mr. Trischler, Mr.

13   Davis, who's on the Zoom, and Ms. Hilton have worked very

14   closely on the Mylan team and they may have some more thorough

15   responses than myself as we go through.

16         JUDGE VANASKIE:  Now, Mr. Stoy pointed out that the

17   documents I asked to be pulled, based upon using a random

18   number generator, were a few documents short of the sample size

19   I said I would use.  Is that a problem from the plaintiffs'

20   perspective?

21         MR. HONIK:  Your Honor, that's like how many needles

22   can you fit on the tip of a pin.  I'm not sure what the answer

23   is.  So --

24         JUDGE VANASKIE:  Mr. Stoy, how many documents was I

25   short?

```
 1          MR. STOY:  Good afternoon, Your Honor.

 2          JUDGE VANASKIE:  Good afternoon.

 3          MR. STOY:  I believe you had stated in your order or

 4  on the record that you wanted to sample 352 documents and it

 5  ended up as 347, which actually made it into the order, so

 6  you're five short.

 7          JUDGE VANASKIE:  Okay.  All right.  If the plaintiffs

 8  want, I'll designate another five documents for random

 9  sampling.

10          MR. HONIK:  Your Honor, I think we're okay for now.

11          JUDGE VANASKIE:  Okay.

12          MR. HONIK:  I'm also prepared to discuss kind of a

13  larger reframe of how to do this because, obviously, this is

14  not only about Mylan and not only about the 4,000 documents.

15  But for now I think the number sampled is adequate.

16          JUDGE VANASKIE:  All right.  Very well.  Thank you.

17          So I'm going to describe a document, I'll identify it

18  by its Bates number because they're not in any necessary --

19  they're not in any particular order, but the first document I'm

20  going to look at has the Bates Number, after MDL2875, has

21  00830263.

22          Now, this document has as a title, and the document is

23  six pages long, has as a title Mylan Initial Risk Assessment

24  for GxP Computerized System.  The document is a form.  There's

25  no information on the form.  I don't know what GxP stands for,
```

 1    I don't know that it has anything to do with this particular

 2    matter, and, as I said, it's a form with checkmarks.

 3          So, for example, the one question in the document on

 4    the first page is:  Does the system support manufacturing,

 5    analysis, distribution, pharmacovigilance, documentation

 6    management, train records or other GxP-related activities?  So

 7    as I said, it's a risk assessment for a computerized system.

 8          Mr. Stoy, do you have any familiarity with this

 9    document or can you tell us what it is for?

10          MR. STOY:  Your Honor, I pulled up the document so I'm

11    actually looking at it.

12          JUDGE VANASKIE:  Okay.

13          MR. STOY:  It looks to me that this is a document that

14    is related to a standard operating procedure and it's basically

15    a blank template form that would be populated with information

16    about a given system or a given product or something of that

17    nature.  So it would be used in the course of business with

18    respect to specific products or processes, but the document

19    itself that we're looking at doesn't actually contain any

20    information.

21          JUDGE VANASKIE:  Exactly.

22          MR. STOY:  So I think we would take the position that

23    because there's no information here that this document was

24    properly coded and it's not responsive.

25          JUDGE VANASKIE:  Now, I know, Mr. Honik and Mr. Davis,

 1   that you don't have the document in front of you, but based

 2   upon the brief description I provided, how would you argue that

 3   this is a responsive document?

 4        MR. HONIK:  Your Honor, let me take a stab at it and

 5   then I'll invite Mr. Davis to supplement anything I may say.

 6        To state the obvious, the manner in which Mylan

 7   performed risk assessment in manufacturing valsartan and API

 8   valsartan is central to this case.  And so if there exists a

 9   standard operating procedure in which they had a format by

10   which that assessment could occur, that is to say, you take the

11   form and you answer the risk assessment questions on it,

12   whether it was applicable or not applicable to valsartan, if it

13   existed at the company as a way in which one could assess risk

14   associated with the fabrication of this product, it's relevant

15   and it's responsive.  We should have the right to put that

16   document in front of, for example, their QA people and say,

17   this is a risk assessment protocol that was in your standard

18   operating procedure.  Did you employ it in evaluating the risks

19   associated with valsartan?  For that reason alone it strikes

20   us, and me, that it's completely relevant and germane and we

21   should have it so that we can question witnesses about its use.

22        JUDGE VANASKIE:  All right.  Anything else on this,

23   Mr. Stoy?

24        MR. STOY:  I mean, Your Honor, I would just add that

25   this isn't the standard operating procedure itself.  It's just,

1    as you can see because you're looking at the document, it's a

2    checklist.

3            JUDGE VANASKIE:  It's a checklist, yes.

4            MR. STOY:  Correct.  It's not populated with

5    information so it wouldn't tell the plaintiffs anything about

6    what Mylan did or did not do with respect to valsartan.

7            MR. HONIK:  But it would allow us to question a

8    witness and say, did you employ this risk criteria in the

9    course of fabricating valsartan?  That's the very -- that's the

10   very point I was trying to make, Your Honor.  Whether it's

11   populated or not, if that's an operating procedure that they

12   use to evaluate risk, should not we be able to put it in front

13   of a Mylan witness and say, how, if at all, did you use this

14   with valsartan?

15           MR. TRISCHLER:  Well, Your Honor, Your Honor --

16           JUDGE VANASKIE:  Well, you really can't, Mr. Honik,

17   because you don't have the document in front of you, but it

18   looks to me it was a document that would have been used to

19   evaluate computerized systems for purposes of conducting a risk

20   assessment.  So it's like you want to buy a system to do this,

21   does the system have these capabilities.  It didn't appear to

22   have anything to do with manufacturing.

23           But did I interrupt you, Mr. Stoy?

24           MR. STOY:  No, Your Honor.

25           MR. TRISCHLER:  I think that was me about to chime in,

 1   Clem Trischler.

 2          JUDGE VANASKIE:  Okay, Mr. Trischler.  Sorry, I'm

 3   looking at the document so I'm not seeing you right now.

 4          MR. TRISCHLER:  No, that's fine.  I'll hold back my

 5   comments for now.

 6          JUDGE VANASKIE:  Okay.

 7          MR. DAVIS:  Your Honor, this is John Davis.  Could I

 8   trouble you for that Bates number again?

 9          JUDGE VANASKIE:  Yes, it's 00830263.

10          MS. HILTON:  Your Honor, if I may, Layne Hilton on

11   behalf of the plaintiffs.

12          This document actually is very demonstrative of a much

13   larger issue, which is, some of the largest volume of these

14   withheld documents are standard operating procedures and Mylan

15   has, you know, I'm sure Mr. Stoy or Mr. Trischler will chime

16   in, thousands of standard operating procedures but, you know,

17   just yesterday or early this morning I observed some standard

18   operating procedures that relate to the auditing of API

19   suppliers that were withheld and looking at the file name, I

20   would have had no understanding that it was about API because

21   the standard operating procedures have sort of a unitized file

22   name that doesn't give any identifying information.  And so

23   when plaintiffs engaged in a process of trying to pare down the

24   20,000 withheld documents, we used some of these search -- you

25   know, search terms in order to identify the universe of

```
 1   standard operating procedures because we felt like those were
 2   somewhat benign documents that really shouldn't be withheld
 3   because if it's just a checklist, it's just a checklist.  But
 4   not having that document actually does hinder and impair our
 5   ability to fully understand the email attachments.
 6           So, you know, I'll just say that we -- a lot of the
 7   documents are actually going to be standard operating
 8   procedures and there was no way for plaintiffs to understand
 9   the context of that standard operating procedure because we
10   were searching to try to identify the standard operating
11   procedures as a group.
12           JUDGE VANASKIE:  All right.
13           MR. DAVIS:  Your Honor, to add to what Ms. Hilton is
14   saying, you know, I've looked at the document and this is
15   exactly one of those cases where an email was produced to us
16   and, in fact, produced as a relevant, responsive document in
17   this case, and the Bates number that you're referring to, Your
18   Honor, is one of the attachments to that email.  And so this
19   gets to one of the difficulties that we've experienced quite a
20   bit in this case is there's oftentimes documents that have
21   emails or whatnot that have 20 attachments and 15 of them have
22   been withheld, as an example, and it's very difficult to sort
23   of get a wholistic understanding of what the document is
24   talking about without having all of the documents.  And that's
25   -- that's standard, as part of my understanding, how this often
```

```
 1   works is when any document or email, for example, is relevant,
 2   all the attachments should be produced.  There shouldn't be
 3   this selective process of let's produce, you know, three of the
 4   attachments and withhold 17 of them.  By definition, if the
 5   email is relevant, the attachment should be as well, and
 6   responsive.
 7           JUDGE VANASKIE:  Well, it seems to me that that issue
 8   can be handled by your request or a motion to compel the
 9   production of attachments, when you have a relevant email and
10   you say, well, I didn't get the attachments.  But, you know, I
11   don't understand that these documents were withheld on the
12   basis that they were an attachment to an email but were
13   regarded as nonresponsive to your request.
14           So, Mr. Davis, I'm having a little trouble
15   understanding that point you just made.
16           MR. STOY:  Your Honor --
17           MR. DAVIS:  If I can clarify.
18           JUDGE VANASKIE:  Yes, Mr. Davis.
19           MR. DAVIS:  Sure.  If I can clarify, I looked up in
20   our system the Bates number, which is why I asked Your Honor to
21   repeat it, and it is an attachment to an email.  The email has
22   been produced by Mylan as a responsive document and, ergo, my
23   argument is that we should get all the attachments as well.
24   And, you know, that's typically how ESI protocols work in these
25   kinds of litigations is -- and how it's just customary practice
```

1   and, in my opinion, just flat out -- if an email is responsive,

2   all the attachments to that email should be responsive, too,

3   because they provide the context of the document.

4          JUDGE VANASKIE:  All right.  Mr. Stoy.

5          MR. STOY:  Yes, Your Honor.

6          MR. TRISCHLER:  Your Honor, can I -- I'm sorry, Frank.

7   I've been biting my tongue but if it came up --

8          MR. HONIK:  If you are, Clem, we can't see it.  You're

9   in the shadows.

10         MR. TRISCHLER:  I'm sorry.  I'm sorry.  I'll do the

11  best I can to lighten things up for you, Ruben.

12         MR. HONIK:  Thank you.

13         MR. TRISCHLER:  Judge, this is the frustrating part

14  and the difficult part about this issue because we start off

15  with a very narrow -- I don't know if the judge is present and

16  he can hear me.

17         JUDGE VANASKIE:  Hold on, I had to let my dog out.

18  Okay.

19         MR. TRISCHLER:  Okay.  I apologize for talking.  It

20  took me awhile to realize --

21         JUDGE VANASKIE:  It's okay, I can listen while I let

22  the dog out.  Go ahead.

23         MR. TRISCHLER:  I -- you know, we've gotten so far

24  afield from the initial question that the Court asked, which

25  is, what's the relevance of this blank form that has absolutely

1    no information on it into -- and that weaves into this broader

2    discussion where what the plaintiffs are trying to do is to

3    rewrite history and rewrite the protocols and agreements that

4    were agreed to in this case.

5         Mr. Davis talks about the fact that, well, if an

6    email's produced, then every single attachment ought to be

7    produced.  Well, you know what, Judge, there was an agreement

8    that was entered in September, seven months ago, that said

9    nonresponsive attachments to a responsive email do not have to

10   be produced.  That was the agreement so that the parties

11   wouldn't have to waste time.  It's a matter of proportionality.

12   We've laid eyes on three million documents and spent millions

13   and millions of dollars in ESI discovery and the documents that

14   are at issue now have been reviewed and re-reviewed and now

15   we're going to be asked to go back and review them a third

16   time.

17        MR. DAVIS:  Well, let me give -- I'm sorry.

18        JUDGE VANASKIE:  Don't interrupt.  Don't interrupt,

19   Mr. Davis.

20        MR. TRISCHLER:  The problem is that we had an

21   agreement that you don't have to do it and that's what all

22   these discovery disputes are about.  That's why we can't get

23   this litigation advanced.  That's why we keep arguing the same

24   things over and over again because we had an agreement in

25   September that says the defendants are not going to be required

```
 1   to produce nonresponsive attachments to emails and here Mr.

 2   Davis is saying, I want them all.  If there's a responsive

 3   email, I want all the attachments.  That's a problem, Judge.

 4           I think what we ought to be looking at now is if we're

 5   going to advance the ball at all, the Court, the specific

 6   question, has already come up with a protocol and an order

 7   saying we're going to look at 352 documents, and we're going to

 8   make calls on responsiveness of those 352 documents; and then

 9   based on that, the Court, following argument or suggestions

10   from counsel, will decide what else needs to be done.  But to

11   throw all that out now and to go back and say, forget the

12   order, forget the ESI protocols -- if we were following the ESI

13   protocols, we wouldn't even be here today.  Because the ESI

14   protocols say that when Mr. Honik sends his letter on Good

15   Friday saying you've designated 10,000 documents that I think

16   are responsive, under the court order, we have 30 days to

17   review that and get back to him.  Here we are three business

18   days later raising these issues.  We ought to stick to the

19   orders of the Court so that the case can proceed and move

20   forward or we'll be here six months from now arguing the exact

21   same things, Your Honor.

22           MR. HONIK:  Your Honor, may I --

23           MR. DAVIS:  Your Honor, may I respond?

24           MR. HONIK:  No, don't, please, Mr. Davis.

25           Your Honor, may I be heard first?
```

1         JUDGE VANASKIE:  Certainly.

2         MR. HONIK:  Your Honor, I know that Mr. Trischler

3    earlier today said he didn't want to be found in error again

4    today but, unfortunately, he is.

5         I was very disturbed when I got his letter to see that

6    he spoke about a September agreement because, frankly, I was

7    unfamiliar with it.  And he specifically called out Mr. Parekh

8    as having entered into that agreement with Mr. Ferretti.  And I

9    went back directly to Mr. Parekh and I went and checked the

10   dockets and the so-called agreement that Mr. Trischler is

11   referring to has nothing whatever to do with the subject that's

12   now before you.

13        The agreement that was reached between Mr. Parekh and

14   Mr. Ferretti, on behalf of ZHP, was narrow and singular and it

15   was this:  The question arose if there was a document that

16   needed redaction, and the effect of the redaction was that the

17   entire document had to be redacted so there was literally

18   nothing to read, can we reach an agreement that we would enter

19   a slip sheet in place of the fully redacted document simply

20   stating that the whole document has been redacted.  That was

21   the agreement, that was the only agreement, and that was the

22   only agreement that Mr. Parekh agreed to, which makes sense.

23   It's just practical.  There's been no agreement whatever.

24        What I did do, as well, Your Honor, thanks to Mr.

25   Trischler's letter, I went back to the December 9th transcript,

1  which he selectively quoted from, and not surprisingly, Judge

2  Schneider was on top of this issue when it first came up and

3  was really pressant about where we are today.  And if I can

4  take a moment just to frame the issue, maybe I can take some of

5  the heat off of this and make things easier going forward.

6  Okay?

7       If I may, December 9th was literally the first week

8  after all the defendants were to have completed their discovery

9  on November 30th.

10      Now we know that didn't really happen because they've

11  continued to supply or supplement tens of thousands of

12  documents from November until now.  We'll live with that, we'll

13  work with that.  But the fact remains that even as early as

14  December 9th, with respect to Mylan, Ms. Hilton noted that they

15  had already withheld 145,000 documents on the same basis that

16  they are now, and she brought that issue up to Judge Schneider,

17  who, in essence, said it's premature, it's not ripe yet.  You

18  need to meet and confer.  This is a serious issue.  And I'd

19  like to read, with your indulgence, just a couple of sentences

20  because it frames the issue beautifully.

21      He said, and I quote, this is at Page 33 of December

22  9th, that transcript:  "One thing you can take to the bank is

23  the Court's not going to require plaintiff to go through

24  145,000 documents.  The Court's not going to require Mylan to

25  look through 145,000 documents.  So if the -- if the issue has

1  to be teed up, you have to figure out a way to get

2  representative examples and categories so the Court can get

3  their arms around this issue.  So that's -- if we're doing that

4  with Mylan, I think you should do that with everybody."

5         Now, full stop.  What I propose to the Court and to

6  counsel in my letter of last Friday is a framework to try to

7  deal with this issue.  And I want to say at the outset that I'm

8  not at all insensitive -- we're not at all insensitive to the

9  fact that we can't simply identify 10,000 documents and say to

10  Clem, Clem, go look at these again.  That's not what we're

11  proposing.  And to the extent my letter conveys that, I

12  apologize.

13         What I think we should have is a system that tracks

14  what I've proposed but limit it to a very limited number of

15  documents so that we do what Judge Schneider anticipated we

16  would have to do, and that is sharpen our pencils.  I'm not

17  going to have Layne spend hours and hours and hours coming up

18  with thousands of potential documents only to impose upon the

19  Court to create a sample and go through it.

20         What we're proposing, and this would apply to all

21  defendants, is that to a number not to exceed 50 documents,

22  tops, 50 documents, and prioritizing it to the custodians who

23  are about to be deposed.

24         So, for example, take the 10,000 documents which are

25  in dispute presently with Mylan.  I'm proposing that we be

1   relegated to going back, figuring out which of the 10,000

2   relate to upcoming witnesses who we're about to depose.

3   Because, remember, the reason we're concerned about this is

4   that we want to be able to have a full cache of documents to

5   examine witnesses with.  We want to have the burden of

6   selecting from among the 10,000, if that's the disputed number,

7   a limited number to a specific custodian, and even at that,

8   limiting it to 50 documents, and then going through this

9   procedure.  So we make a challenge to a document that's

10  withheld on the basis of not responsiveness, we provide that

11  list of documents to the opposing side, whether it's Mylan or

12  any defendant, so as not to exceed 50 documents.  On Day 3 they

13  either provide a justification as to why, in essence, a meet

14  and confer, or agree to produce it.  And two days later if we

15  still have a problem, either the production occurs or the

16  disputed documents, again not to exceed 50 documents, are

17  presented to the Court for *in camera*.

18        That's precisely, I would suggest, what Judge

19  Schneider anticipated, that we devise a system by which we can

20  systematically address these disputes.  We don't want to impose

21  too great a burden on the defendants, that's why I propose

22  limiting it to not exceeding 50 documents; but at the same

23  time, it shouldn't prejudice plaintiffs in their preparation of

24  these witnesses.

25        I know we don't live in a perfect world and I didn't

1  suggest the last time we were together that we should have the

2  luxury of time to sit and dwell on documents and have time to

3  review with experts, sure, that's in the perfect world.  But in

4  the highly imperfect world in which we're trying to meet the

5  Court deadlines, I think this proposed structure makes sense.

6  I don't want to impose a 10,000 document review on Mr.

7  Trischler or anybody, and if we can limit it or cap it at 50

8  documents per dispute, I think that's a very workable system,

9  Your Honor.

10        JUDGE VANASKIE:  Well, we've gotten a little further

11  than I intended to get to today, but maybe we need to get

12  there.

13        Mr. Trischler?

14        MR. TRISCHLER:  Your Honor, Mr. Honik said a lot and

15  I'm trying to digest it as quickly as I can.

16        Just going back through, the record will obviously

17  speak for itself, but among other things, just to be clear,

18  Mylan was not under any court order to complete document

19  production by November of last year.  There was an order

20  extending the deadline because we were negotiating with the

21  plaintiff on discontinuing the search.  So that's fact number

22  one.

23        Fact number two, when Mr. Honik referred to the

24  conference with Judge Schneider, we did precisely what we told

25  the Court we would do in that instance.  The plaintiff raised

1    this same issue with the Court in December, there's no doubt

2    about it, and we said, you know, per the ESI protocol, we'll go

3    back and re-review these documents.  And I can't remember the

4    exact number.  I'm sure if I misstate it, the plaintiffs will

5    tell me I'm wrong, but I think at that time they were raising

6    issues with respect to 70,000 documents.  And we went back and

7    we've spent time and money and had lawyers look at these 70,000

8    documents a second time, Your Honor, at tremendous expense to

9    our client, and found that I think about six percent of them,

10    by the first team reviewers, may have been coded in error and

11    we produced that six percent.

12          Now, this 10,000 set that Mr. Honik provided to the

13    Court on Friday, the vast majority of them are from the same

14    list that have already been reviewed by lawyers for Mylan

15    twice.  To go back and look at that global set a third time I

16    think is not proportionate, it is not warranted.

17          What I hear Mr. Honik saying now is that he agrees,

18    and so what the plaintiffs will do is instead of asking for

19    10,000 documents, they'll ask for 50 per witness.  I mean, I

20    can only speak for Mylan, I can't speak for any of the other

21    defendants, but speaking for Mylan, if the plaintiffs sent me a

22    list and said, hey, Clem, what about these 50 documents, we

23    think they're relevant, I'll get back to them in a short period

24    of time.  That's what our ESI protocol says we're going to do.

25          So, you know, I appreciate reducing the scope of this

```
 1    thing from 10,000 to 50, that sounds reasonable and, in theory,
 2    workable; but I guess as in everything, Judge, the devil's in
 3    the detail.  But, conceptionally, that sounds fine, it sounds
 4    like what we've been doing.  It sounds like what the
 5    meet-and-confer process is all about.
 6         MR. HONIK:  Your Honor, there has to be a mechanism
 7    for challenging this.  And I mean no disrespect to Mr.
 8    Trischler.  The fact is that there are documents being withheld
 9    to which we're entitled and, therefore, there has to be a
10    mechanism by which we can challenge it.
11         JUDGE VANASKIE:  Well, what's the mechanism you're
12    proposing?  That's what I'm a little confused with now.  Are
13    you asking just for 50 documents or are you asking for 50
14    documents as a random sample to test the --
15         MR. HONIK:  No, Your Honor.  We want -- we want to be
16    tasked, on the plaintiffs' side, to identify from among a
17    larger pool of suspect withheld documents a number not to
18    exceed 50 that we challenge.  In this way, Your Honor doesn't
19    have to sample anything, it puts the work on us to identify
20    those documents that we think are most crucial, not to exceed
21    50, and all I'm proposing is that we do it by prioritization of
22    upcoming custodians.  So this is very -- this is very practical
23    stuff.
24         JUDGE VANASKIE:  Well, it sounded to me like Mr.
25    Trischler was agreeable to that.
```

```
1              MR. HONIK:  That's great.  That's great.

2              MR. TRISCHLER:  Your Honor, I can't say --

3              JUDGE VANASKIE:  Did I hear you wrong?

4              MR. TRISCHLER:  No, you did not hear me incorrectly,

5    Your Honor.  If I cut you or Ruben off, I apologize.  But I

6    just wanted to be clear that this started off as a Mylan issue

7    and the plaintiffs have indicated that they have issues with

8    other defendants.  I can't speak for whether other defendants

9    will find this to be a reasonable compromise, but, you know,

10   I'm looking to move past document production issues.  We've

11   been burdened with them for far too long.  Everyone has been

12   burdened with them --

13             JUDGE VANASKIE:  Sure.

14             MR. TRISCHLER:  -- for far too long.  And so if -- if,

15   for instance, we have the -- in the case of Mylan, we have the

16   deposition of Derrick Glover resuming on April 16, I believe.

17   What I hear Mr. Honik to be saying is that before -- sometime

18   between now and the end of the week that if he gives me a list

19   of 50 documents that they want us to review for responsiveness,

20   we'll provide an answer within three days whether we agree to

21   produce them.  And then I don't know, what's the proposal,

22   Ruben, for if we don't --

23             MR. HONIK:  Well, it's the proposal set out in my

24   letter.  It's basically -- what we're trying to do, Judge, is

25   reduce the turnaround time to address these disputes.
```

 1          The problem we're having, just to take a half a step

 2    back, I think we've stated this, is, we want to be prepared as

 3    these depositions are now taking place and have at our disposal

 4    all the documents that are germane to the custodian or witness

 5    and we don't want to have to revisit going back to them.  If

 6    one looked at Judge Schneider's comments from December 9th of

 7    last year, he made it very clear that the idea here is to

 8    prevent our finding a document after a witness has been

 9    produced for examination under oath and then having to re-call

10    that witness.  He was very clear about that.  That's the

11    balance I think Your Honor, as Special Master, has to address.

12          And so what we proposed is the five-day process or

13    turnaround to address withheld documents.  On Day 1, it falls

14    to us, plaintiffs, to challenge a number of documents not to

15    exceed 50.  By Day 3, two days later, the defendants have to

16    provide a justification.  If Clem can say, well, Document

17    Number 8 and 9 and 10 are not responsive and here's why, we may

18    be satisfied with that.  And so, you know, and then by Day 5 we

19    either have production or any remaining disputed documents,

20    again not to exceed 50, are simply sent to you as the Special

21    Master for review for responsiveness.  And if they are

22    responsive, they should be turned over immediately to us; and

23    if not, it's the end of the day.

24          So we're trying to shorten the turnaround time because

25    the example, for example, with Teva, just to cite one example,

1    it took us from December until I think a week or two ago to get

2    through the process, and that's too long, Judge.  We've got --

3    you know, we're actively taking Teva depositions and we're

4    discovering, as Mr. Davis pointed out, that we have emails but

5    not attachments.

6         And let me just say, it took me awhile to understand

7    this, virtually all of the documents that are disputed are

8    attachments.  So they're already connected in some way to a

9    document that's already been identified as relevant and

10   discoverable and responsive, and in order for us to have

11   appropriate context of what the document is and what the

12   attachments are, in many instances we're going to have to see

13   those attachments.  To the vast, vast majority, for example, of

14   the 10,000 documents I sent you, according to Ms. Hilton, those

15   are virtually all attachments to documents already produced.

16        So, longwinded way of saying we want the burden to

17   fall to us to initiate the process; we just want the Court to

18   bless the idea that we can have a turnaround of this dispute

19   within five days and have it be manageable so it's not too

20   burdensome for the defendants by capping it at 50 documents.

21        MR. TRISCHLER:  Judge, I guess I'll just conclude from

22   my perspective by saying, conceptually, what Mr. Honik has

23   outlined seems reasonable to me, but it would -- it will --

24   this proposal will undoubtedly impact other defendants as well.

25   So, in fairness, I would like to be able to confer with the

1  defense group and make certain -- you know, and see if it's a

2  proposal that makes sense globally before I give it, you know,

3  my personal blessing, if that makes sense.

4       JUDGE VANASKIE:  Yes, I think that opportunity should

5  be provided, that the defense group should confer and report

6  back to me in writing about whether they're acceptable or which

7  of the defense group is agreeable to this approach and which

8  are not and move on in that manner.

9       I'm not going to order it today, Mr. Honik, as

10  something that all the defendants have to do.  I think it is a

11  reasonable approach and I certainly would encourage defense

12  counsel to give it serious consideration; but I'm not going to

13  order it today.

14       What I'll look for is -- I don't want to push it off

15  to next Wednesday but if we could get a written reply from

16  defense counsel by Monday as to whether Mr. Honik's proposal is

17  acceptable, and if it's not, then we'll address it again on

18  Wednesday.  It may be that it's something that would be ordered

19  but I'd rather see it be a matter that's negotiated and agreed

20  to as opposed to something that's compelled.  All right?

21       MR. HONIK:  Thank you, Your Honor.  That's very

22  useful.  Thank you.

23       MR. TRISCHLER:  That's fine.  That's fine, Your Honor.

24       JUDGE VANASKIE:  Thank you, Mr. Trischler.

25       Now, getting back to the Mylan documents, and I heard

1    Mr. Trischler say, well, the ESI protocol said nonresponsive

2    attachments do not need to be produced.  Is that correct?

3          MR. PAREKH:  Your Honor, this is Behram Parekh.  If I

4    may, since --

5          JUDGE VANASKIE:  Yes.

6          MR. PAREKH:  -- I negotiated the original ESI protocol

7    and I had all the dealings with Mr. Ferretti afterwards

8    regarding that.

9          JUDGE VANASKIE:  Okay.

10          MR. PAREKH:  So, the issue is not nonresponsive

11    documents.  And that's really where the fundamental issue

12    becomes.  The issue that defendants had was with documents that

13    related to other products.  And that was the issue that was at

14    the bottom of this agreement, that defendants were concerned

15    that plaintiffs would go on a fishing expedition and find out

16    information about other products and then potentially use that

17    information to initiate lawsuits about unrelated entities.

18          This was argued before Judge Schneider back in 2019

19    when we were negotiating the ESI protocol, and the agreement

20    that we reached was if there were email attachments or other

21    documents that related solely to other products, not to

22    valsartan and other products but solely to other products, that

23    were not responsive to a discovery request, those could be

24    redacted or withheld.

25          As time went on, we realized that redacting 49 pages

out of a 50-page Excel spreadsheet because one page of that
Excel spreadsheet happened to have the word "valsartan" on it
didn't make sense.  And so Mr. Ferretti and I engaged in some
meet and confer and we agreed that, yes, if a withheld
attachment related to primarily other products, mentioned
valsartan but that mention of valsartan was not otherwise
responsive to a discovery request, that that document could be
slip sheeted instead of being redacted with only the word
"valsartan" left.  That was as a matter of convenience to
defendants to avoid them having to do a lot of work, it was an
accommodation that we made to allow them to do that.  But the
issue was never that simply because there are attachments to an
email that are otherwise relevant -- to a relevant email that
was being produced and that would otherwise be an attachment
that was included, that that could be withheld simply because
defendants thought that that particular attachment was not
directly responsive to a discovery request, unless that
attachment specifically related to a different drug product.
And that's where the fundamental issue here comes from.  It's
not just any document that's marginally relevant or not
relevant.  The only ones that were allowed to be withheld are
ones that related to other drug products.

         JUDGE VANASKIE:  Well, here's what -- because this
issue has evolved, I would say, or it's being -- it's changing.
I started describing documents and I'm told, well, they were

1 attachments to an email and as attachments, they should have

2 been produced for context; but my looking at the document, I

3 can't tell whether it was an attachment to an email and I can

4 say on the face of the document it looks nonresponsive, it

5 doesn't have anything to do with this particular matter, you

6 know, or it's a blank checklist that, as I said, the way I

7 looked at that document, maybe I'm sensitized to a matter I

8 recently handled, it looked like a document to evaluate

9 somebody's computer programs, which would have nothing to do

10 with this case.

11        I'm wondering, I'm wondering out loud now, whether the

12 burden shouldn't be on the plaintiff to, when they've received

13 an email and they didn't get the attachments, they have to have

14 engaged in a meet and confer with the defense counsel and say,

15 hey, where are the attachments and why aren't they being

16 produced?  And if the argument is they're nonresponsive, well,

17 then either the plaintiff has to accept it or has to move and

18 say, no, we get all the attachments; because the email's

19 relevant, we get all the attachments.

20        Right now I'm going through documents sort of --

21 that's why I wanted to have this conversation -- sort of blind

22 in a sense.  I can look for documents that say valsartan, I can

23 look for documents that talk about API, I can look for

24 documents that have some relevance, but when I see a checklist

25 like this, I have to say, I don't see that as responsive.  And

```
 1   why?  Because I didn't realize it's an attachment to an email
 2   that maybe is necessary to understand that email better.  I'm
 3   musing out loud here.
 4         I can go through these 350 documents and look at them
 5   on their face and say responsive, not responsive, and give you
 6   some sense of that, and that's all I can -- I think that's all
 7   I can do.  Correct me if I'm wrong.  What else can I do right
 8   now?
 9         MR. TRISCHLER:  Well, Your Honor, I don't -- I don't
10   -- I think -- I sense the Court's concern and limitations with
11   the exercise and, you know, I certainly don't want to prolong
12   this.
13         JUDGE VANASKIE:  Right.
14         MR. TRISCHLER:  I'm open to considering Mr. Honik's
15   compromise.  The issue that we've always had from the defense
16   side is one of proportionality, as I said.  When we were
17   presented with this issue in the fall, it was, we want you to
18   re-review 70,000 documents, then it was 4200 of the 10,000.  If
19   we can reduce it to something manageable, which is what I've
20   heard the current proposal is, I think that's fair and -- and,
21   you know, I'm willing to go back to the defense group and see
22   if we can make a collective agreement on that to try to move
23   this forward and save everybody time and exercise.  But --
24         JUDGE VANASKIE:  Okay.
25         MR. TRISCHLER:  I think we can certainly do that and
```

```
 1   report back to the Court by Monday and report to the plaintiffs
 2   before then as well.
 3         MR. HONIK:  And, Your Honor, I greatly appreciate that
 4   you are blind in the sense of not having the context for these
 5   350 documents.  You're looking at them completely out of
 6   context.
 7         And I, like Mr. Trischler, I'd like an opportunity to
 8   go back to particularly my Mylan team and provide a solution
 9   for that.  If it makes better sense to evaluate the documents
10   in question by our identifying, for example, the emails that
11   they are related to, I think it should fall to us to do that.
12   I think we can do that, I believe we have that capacity,
13   because they come down as, you know, family matters.  Ms.
14   Hilton is here, she can feel free to weigh in and say if that's
15   achievable.  But I would like until Monday to be able to submit
16   a kind of proposal as well so that Your Honor has an
17   appropriate context to understand the 350 sample documents.
18         JUDGE VANASKIE:  Yes.  You have the Bates numbers of
19   the documents, so I take it by knowing the Bates numbers, just
20   as Mr. Davis did now, you could tell whether it was associated
21   with another document or with an attachment to an email.  So I
22   would appreciate that rather than me just going through it and
23   looking at the face of the document and saying, oh, I don't see
24   how this has anything to do with the case.  It may have
25   something to do, but I can't tell that.
```

```
 1          MR. TRISCHLER:  Understood.
 2          JUDGE VANASKIE:  All right.  So you'll have until
 3  Monday.
 4          Go ahead, who's going to speak now?
 5          MS. HILTON:  Your Honor, if I may, Layne Hilton on
 6  behalf of the plaintiffs.
 7          One thing I did want to make sure to mention is Your
 8  Honor discussed that you believed the burden should be on us to
 9  make requests when we review documents and see withheld
10  attachments.  I just wanted to point out that plaintiffs across
11  the defendants have been engaging in this process.  The
12  difficulty that we are finding, however, is that it is a -- it
13  is a timely -- it is a time-consuming process and it is taking
14  a matter of weeks to receive the documents after a challenge,
15  which is why, in part, we proceeded to try to come up with a
16  solution to expedite this, because it is coming up in the
17  context of deposition review of depositions that are happening
18  in the next week.  And so, you know, to the extent that we see
19  documents and we've gone through the emails and we're going to
20  use the emails potentially as deposition exhibits, we'd like to
21  be able to receive the attachments in a very expedited manner.
22  So we have been engaging in that process.
23          JUDGE VANASKIE:  All right.  Very well.  Thank you.
24          MR. DAVIS:  Your Honor, John Davis for the plaintiffs.
25  One more thing.
```

```
 1              Of course, we'll go back and confer on our team about
 2    this as well, but the volume of documents, again, we're dealing
 3    with here is substantial.  Even when we're talking just about
 4    -- just about emails and attachments, those families of
 5    documents, we're still talking in the tens of thousands of
 6    documents that are withheld as family groups, at least.  I
 7    haven't looked at the number personally but I think the volume
 8    that we're dealing with in totality, it would not surprise me
 9    if we're dealing with, you know, many tens of thousands of
10    documents here.  But we'll talk on our end and see what works.
11    But I wanted to preview that issue for the Court that that's
12    not an insubstantial challenge to identify all the email
13    groups.
14              JUDGE VANASKIE:  All right.  Thank you.  Thank you,
15    Mr. Davis.
16              All right.  Well, I'm glad we had this discussion and
17    it is a -- a path forward has been offered.  Let's see if that
18    path can be taken.  I will hold off on my review of these 350
19    documents and wait to hear from you all in terms of whether I
20    need to continue with that process or there is some other
21    solution that you all can agree to.  Perhaps it's Mr. Honik's
22    solution that would be the one that both sides can agree to.
23    So we'll complete that for today.
24              With respect to the other issues, I know I have the
25    Meridan and ToxRox issue to resolve and I think that basically
```

1    covers everything that needs to be covered today.

2          Is there anything else from either side of the case?

3          MS. HILTON:  Your Honor, if I may.

4          JUDGE VANASKIE:  Yes, Ms. Hilton.

5          MS. HILTON:  Layne Hilton on behalf of plaintiffs.

6          Going back to the issue of the translations of English

7    language documents into Mandarin, there was one exception that

8    I wanted to raise with the Court because it actually has to do

9    with the deposition I am taking in a matter of hours of a

10   witness who is located in China who is using a translator but

11   who is a reader of English, and I had come to an agreement with

12   counsel for ZHP prior to this sort of bubbling of this issue

13   that I should be afforded the opportunity to use the witness's

14   documents, a significant volume of which were drafted and

15   authored by the witness in English, with him without having to

16   translate those documents into Mandarin, in part because I'm

17   looking at his resumé right here, this is a witness who has

18   authored seven pages of --

19         MR. GOLDBERG:  Your Honor --

20         JUDGE VANASKIE:  Go ahead, Mr. Goldberg.

21         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

22   This is Seth Goldberg.

23         You know, I don't -- if Ms. Hilton is concerned that

24   what Your Honor has said today would somehow impact this

25   witness, I can assure Ms. Hilton that our agreement as to this

1    witness stands.  I mean, this witness reads English.  What Your

2    Honor was really ruling on were those Chinese witnesses who

3    can't read English.

4           So I hope that allays any concern you have, Ms.

5    Hilton.

6           MS. HILTON:  It does, Mr. Goldberg.  I just wanted to

7    put that on the record so, you know, in the event that -- I

8    didn't want to be in violation of any court order.  So, thank

9    you, Your Honor.

10          JUDGE VANASKIE:  You would not have been, and I

11   understand it will take some time.  I'm glad to hear that you

12   worked cooperatively to let this deposition go forward.

13          All right.  Anything else?

14          MS. GOLDENBERG:  Yes, Your Honor.  This is Marlene

15   Goldenberg for plaintiffs.

16          I'm not sure if you saw the letters that both Ms.

17   Heinz and I filed earlier today.  It sounds like it's not an

18   issue that you're interested in hearing today, which we

19   understand; but I will say that this issue impacts depositions

20   that are scheduled for fairly soon.  So we are -- I am hoping

21   that we could either have an expedited hearing with you later

22   this week, on Friday perhaps, or that we could get this

23   resolved on the papers so that we can get moving.

24          I have spoken to someone over at my process server's

25   office and she's told me that if we do have to go through the

 1   Hague on these subpoenas, I am looking at a four-to-six-month

 2   turnaround.

 3            JUDGE VANASKIE:  No, I know it's going to be a lengthy

 4   process.  You're also correct, Ms. Goldenberg, in saying I

 5   wasn't expecting to address it today, but I would be available

 6   Friday if you -- and I saw your letter but I don't know that I

 7   saw Ms. Heinz's letter on this particular issue.

 8            MS. GOLDENBERG:  I think it was filed shortly before

 9   the hearing started; but in fairness to her, I didn't want to

10   flag that because we did both send one.

11            THE COURT:  Okay.  Ms. Heinz, are you available on

12   Friday?

13            MS. HEINZ:  Hi.  Yes, Your Honor.  Just real quick.

14            That's fine, if Your Honor wants to have a conference

15   on Friday, I can certainly make myself available.  That's not a

16   problem.  But I just want to be clear about what is going to be

17   discussed during the conference because the position here is

18   that this issue is based on a protocol that the parties went

19   back and forth back in the fall of 2020 exchanging drafts on

20   and they -- it was approved by the Court in October of 2020.

21   To the extent that plaintiffs are now arguing that they don't

22   have to comply with that protocol, I think the proper course of

23   action is to file a motion to revise the protocol or amend the

24   protocol.  And I would ask that if that's the way that they --

25   the position that the plaintiffs are taking that they shouldn't

1   have to comply with the protocol, I think the proper course of

2   action is for them to file a motion rather than us just jumping

3   to a hearing on this issue.  And I think that we should have a

4   briefing schedule as well.  And we're fine if the Court wants

5   to expedite that, we can certainly work within expedited

6   deadlines; but I do think that's the proper course of action

7   here.

8           JUDGE VANASKIE:  Ms. Goldenberg.

9           MS. GOLDENBERG:  Yes, Your Honor, I'll just note that,

10  you know, we're not saying that protocol doesn't apply.  We

11  think that what we're doing is within the confines of the

12  protocol and we just, apparently, have different

13  interpretations of it.

14          JUDGE VANASKIE:  And so the issue here is service

15  through the Hague Convention procedures or not?

16          MS. GOLDENBERG:  It's whether or not these witnesses

17  would qualify for Rule 30 service; and if they don't, then,

18  yes, we would have to go through the Hague.  And so it's more

19  of a threshold question.

20          JUDGE VANASKIE:  All right.  And you're saying, Ms.

21  Heinz, that this is covered by the protocol and you'd have to

22  modify the protocol.  Is that your position?

23          MS. HEINZ:  Yes, Judge.  That's correct, Your Honor.

24  I don't agree with the plaintiffs' position as to Rule 30.

25  Compliance with the protocol isn't optional here nor is it

```
 1   qualified by Rule 30 or Rule 45 or any -- this is language that
 2   the parties agreed to and that the Court approved and the
 3   protocol itself explicitly contemplates modification of the
 4   rule to comply with the Hague Convention.
 5          I mean, I can keep going on but I do understand if the
 6   Court doesn't want to get into everything today and would
 7   rather put this off until Friday, that's fine with me.  But I
 8   just wanted to put on the record that the proper course of
 9   action, given the fact that this is a court-approved protocol,
10   plaintiffs must file a motion to amend that protocol if they're
11   not going to -- if they don't want to comply with what --
12          JUDGE VANASKIE:  All right.  I don't want to get -- I
13   don't want to get hung up on process unnecessarily here.  Let's
14   have a -- I'll send out an order, we'll have a Zoom session on
15   Friday on this, if that's all right.  But I will try to get it
16   resolved then.  Okay?
17          So if you want to submit anything to me, submit it to
18   me in advance of Friday.
19          MS. GOLDENBERG:  I think we'll rest on our submissions
20   that we've already given you, Your Honor.  If you have
21   questions, we're happy to answer them, but I think we've
22   covered it.
23          JUDGE VANASKIE:  Ms. Heinz, am I prejudicing you by
24   asking for it by Friday?  Do you want more time?
25          MS. HEINZ:  No, Your Honor.  And we may have a
```

1  supplemental filing prior to Friday but we do think that our

2  issues are sufficiently stated in our letter today.  However, I

3  will file a supplemental filing, if necessary.  Thank you.

4      JUDGE VANASKIE:  Thank you.  I will send out an order

5  that schedules a call for Friday.  We won't need everybody

6  involved but everybody will get notice of it, that's for sure.

7      Is there anything else we should address today?

8      MS. GOLDENBERG:  I'll just note that I suppose if Ms.

9  Heinz is filing something, I don't know if I need to respond

10 yet, but I'll just put it on the record that I'll reserve my

11 right to do that if we feel the need to.  But, otherwise, we

12 look forward to speaking with you on Friday and we appreciate

13 you scheduling the expedited hearing.

14     JUDGE VANASKIE:  That will be fine.

15     All right.  Anything else?

16     MR. TISCHLER:  Judge --

17     MS. LOCKARD:  Your Honor, it's Victoria Lockard.

18     JUDGE VANASKIE:  Hold on, hold on.  Go ahead.

19     MS. LOCKARD:  It's Victoria Lockard.  I do have one

20 issue to address.  I don't know if Mr. Tischler was planning to

21 address this as well, but I think it's a question that we both

22 wanted clarification on.

23     MR. TRISCHLER:  Well, I was going to raise an issue.

24 I hope it's the same one that Victoria was thinking about,

25 Judge, but if you can indulge me for a few minutes.

1          JUDGE VANASKIE:  Sure.

2          MR. TRISCHLER:  There's an issue that's come to light

3    that I think you might be able to help the parties on moving

4    forward with these depositions.

5          About a week or so ago, and I believe it was in the

6    context of the Court's hearing on the translation issues

7    between the PFC and ZHP, there was some discussion about the

8    need to translate documents for the benefit of the witness and

9    I think the Court indicated that while a document was being

10   translated to the witness the parties could go off record and

11   that the time of translation would not count toward the seven

12   hours of deposition time to which the plaintiffs are entitled.

13         Since that time, it's come to my attention that what

14   plaintiffs have been doing is in all depositions of defendants'

15   representatives, English-speaking witnesses shown English-

16   speaking documents that as soon as they're handed the document,

17   plaintiffs have asked to go off the record and any review time

18   takes place off the record.

19         It may sound like a small issue, Judge, but it becomes

20   important in this respect:  What the -- what Judge Schneider

21   did in coming up with the deposition schedule was to decide

22   that the plaintiffs are entitled to seven hours with every

23   witness in the case.  That's the minimum that I'm aware of.

24   For several corporate representatives, depositions are more

25   than seven hours.  In some cases, for my client, as many as

three days; in some cases, for ZHP, as many as five days.  And as we all know, when you have seven hours of testimony on the record, you're talking about a deposition that's going to be at least ten hours.  And when there are stoppages every time a witness is handed a document and has to review it to answer questions about it, that ten-hour deposition becomes, in reality, a 12-hour deposition.  And since our deposition protocol says that depositions should start at 9:00 and end at 6:00 for stateside witnesses, in particular, the reality of it is is that a seven-hour deposition can't even get done in one day.  So I don't think there's any basis to go on and off the record and slow the proceeding every time a witness is handed a document and asked to read it or is entitled to review it for context before answering a question.

        If Your Honor could provide some guidance as to whether that was the intent of the comments that came up in the ZHP hearing, I think it would certainly be helpful because I think all that would do is prolong depositions unnecessarily and turn what should be one-day depositions into two-day exercises, which, given the volume of discovery in this case, I certainly don't want to go through and don't want to put the witnesses through.

        MR. SLATER:  Your Honor, this is Adam Slater, if I could.

        JUDGE VANASKIE:  Go ahead, Mr. Slater.

1              MR. SLATER:  I do think Your Honor's already addressed

2    this issue in detail.  You ruled that if the witness wants to

3    take the time to read a document, that the clock stops, they

4    can read it and then the clock goes back on when they say

5    they're ready to answer.  I, frankly, don't appreciate, without

6    any notice, different lawyers now on the defense team

7    essentially trying to raise this issue and say, well, you know,

8    it's an issue over here, I don't know if it's the same issue.

9    I think it's very clear, Your Honor has ruled on this, we have

10   a clear pathway, we'll all abide by it, and I don't intend to

11   say anything else other than you've ruled on this already.  I

12   don't think it's appropriate for it to be raised again at this

13   point.

14             MS. LOCKARD:  Your Honor, if I may just jump in.

15             The reason that I'm inviting you to clarify this is

16   because I have a deposition of a witness to begin tomorrow in

17   Israel.  The deposition starts at 1:00.  If we're required to

18   go off the record every time the witness wants to read an

19   exhibit, which he is absolutely entitled to do, we're going to

20   be going at it until 3:00 a.m.  And I certainly think, you

21   know, if any party is abusing this, it can be brought to the

22   Court's attention, but it's entirely disruptive, it prolongs

23   the deposition and I have never seen this in a deposition where

24   you go off the record each and every time an exhibit is

25   discussed or shown.  You know, if it is a 500-page monograph

1   and the witness does need significant time, I completely

2   understand and I'm willing to work with counsel; but, you know,

3   every time a witness stops to look at a document, we should not

4   have to stop the deposition.  I've never seen that, it's highly

5   unusual and it's disruptive and I would like to just have

6   clarification on that before we begin at 6:00 in the morning

7   Eastern time, 1:00 p.m. Tel Aviv time.

8        JUDGE VANASKIE:  Okay.  Well, it seems to me that if

9   you need clarification, a rule of reason should be employed.

10  In other words, you don't stop the clock every time a document

11  is shown to a witness but maybe the clock stops after so many

12  minutes of the witness looking at the document.  If the witness

13  is going to take, I don't want to be arbitrary about this, but

14  let's choose an arbitrary number, more than five minutes

15  looking at a document, well, that clock should stop.  But if a

16  witness is going to spend 30 seconds looking at a document, no

17  need for the clock to stop.  I hate to umpire something like

18  this but it seems to me -- that's why I said a rule of reason

19  type of approach here.  What's reasonable?  And if you can't

20  agree on what's reasonable, then I'll choose an arbitrary

21  number.  This way the witness -- if the witness -- if it's a

22  600-page monograph and the witness wants to flip page by page

23  through the monograph, well, then the clock will stop.  If it's

24  a five-page document, the witness wants to take two minutes to

25  review it, the clock will keep running.  I'm hoping you can

 1    agree to something like this but I could also impose it as a

 2    requirement.

 3              Mr. Slater?

 4              MR. SLATER:  Yeah, Your Honor, after you ruled in a

 5    very contentious deposition, with respect to my colleagues on

 6    the defense side of the table, I doubt their depositions are

 7    getting to the level of what was going on during the deposition

 8    when we kept coming to Your Honor.  And I can tell you that

 9    what you did is you solved the problem.  You said, if the

10    witness says, I want to review the document, we stop the clock,

11    we didn't go off the record, we kept the video going --

12              JUDGE VANASKIE:  Right.

13              MR. SLATER:  -- the stenographer was there, and then

14    the witness said, okay, I'm ready, and then we said the clock

15    went on.  There was not another dispute in the deposition that

16    way.  And if the witness takes 30 seconds or a minute, then --

17    and the timer went off after 30 seconds or a minute, I don't

18    think that defense counsel's concerns are real because who

19    cares if it's 30 seconds or a minute.  The bright-line rule is

20    the only way this is going to work because we are never going

21    to agree.  We don't want to have to retrospectively go back and

22    fight over 15 minutes of time in a two-day deposition.  It will

23    be unworkable, unfortunately.

24              I can tell you in the depositions, the end of the Peng

25    Dong deposition, and then the Eric Gu deposition I took Sunday

1  and Monday night with the same two defense lawyers from ZHP,

2  there was not one argument about it again after that.  It was

3  understood, we went off the clock, we went back on the clock,

4  and it probably served to help the witness to review for less

5  time because it wasn't going to be something where it was going

6  to be a delay that we were going to be tabbed with.

7        So I would say your ruling worked and if someone wants

8  to come back to you at some point and say the ruling's not

9  working, I guess they can try to do that.  But I think that if

10  you want to put this to bed and you don't want to have

11  arguments coming over three minutes here and 17 minutes there,

12  you need to just adhere to the ruling you made because it

13  worked in the ZHP depositions.

14        JUDGE VANASKIE:  All right.  Mr. Trischler or Ms.

15  Lockard.

16        MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

17        THE COURT:  Mr. Goldberg, go ahead.

18        MR. GOLDBERG:  I just want to clarify one thing about

19  the ruling that happened with respect to ZHP.  My recollection

20  is that the ruling and why we'd gone off the record -- we've

21  stopped the clock but stayed on the record was because this had

22  to do with the translation of the documents, and what we were

23  doing was stopping the clock if a document -- what your ruling

24  was is if a document had to be site translated, then you'd go

25  off the record so that could happen.

1          JUDGE VANASKIE:  Go off the clock.

2          MR. GOLDBERG:  I'm sorry, you'd stop the clock --

3          MR. SLATER:  Judge --

4          MR. GOLDBERG:  -- but you'd stay on the record.

5          MR. SLATER:  But, Judge, that's not actually accurate.

6          MR. GOLDBERG:  And that made sense, and that made

7   sense in that context, but it's not the same issue that we deal

8   with with English-speaking witnesses and witnesses -- and any

9   other witnesses.  I mean, this has -- that had to do with the

10  translation issue.

11         MR. SLATER:  Your Honor, it's Adam Slater.  I was in

12  the deposition.  Mr. Goldberg didn't participate in the

13  deposition.  It's not accurate.  It was whether the witness was

14  reading in their own language or not.

15         Eric Gu, who I deposed Sunday and Monday night, was

16  educated in the United States, was fluent in English, didn't

17  need a translator.  There were a few times during the

18  deposition where he said, can I have a moment to read the

19  document.  I said, we'll go off the timer.  He read it.  He

20  said, okay, I'm ready, and we went back on the timer and I

21  continued.  So it's not what Mr. Goldberg said.

22         This is -- you're going to create such a problem over

23  something that doesn't have to be a problem if we revisit this

24  issue.  It needs to just be the bright line and it will not be

25  a problem going forward.

1          I will say one thing on behalf of all plaintiffs.  Any

2   plaintiff who would hand a document to the witness and say, go

3   off the timer right now because I just handed a document to the

4   witness before the witness says, I need time to review it, that

5   would not be appropriate.  If anyone's done that, they

6   shouldn't have done it.  But if the document is put up and the

7   witness is going to then say, I need to read this for a moment,

8   you go off the timer, they do it.  Otherwise, as you said, you

9   can't come up with a bright line -- I mean with a moving

10  target.  It either has to be the way that you ruled the other

11  day or it's going to be a bunch of arguments over this which is

12  not going to be good for anybody.

13          MR. TRISCHLER:  The problem is, with all due respect

14  to Mr. Slater, is that it has happened exactly as he indicated

15  that the plaintiffs would not do.  There have been instances

16  where a witness has been handed a document, said here's Exhibit

17  67, let's go off the record.

18          MR. SLATER:  I agree that shouldn't happen.  So we

19  just solved the problem.

20          MR. TRISCHLER:  And that's why -- and that's why I

21  raised the issue, Adam, with the Court today to seek guidance.

22  I think the rule of reason the Judge cited, it's what we've

23  used in every case that I've ever been a part of, is what

24  works.  And I just wanted to make sure going forward.  And my

25  understanding was the same as what Mr. Goldberg indicated, the

1  ruling --

2          MR. SLATER:  Well, I would ask this.

3          MR. TRISCHLER:  -- was about the translation and that

4  --

5          MR. SLATER:  I would ask this.

6          JUDGE VANASKIE:  Hold on.  Hold on, Mr. Slater.  Let

7  Mr. Trischler finish.

8          Go ahead, Mr. Trischler.

9          MR. TRISCHLER:  I simply don't want to see a situation

10 where we're going on and off the record every time a witness is

11 handed a document because it's only going to prolong

12 depositions.  That's all I'm asking for.

13         MR. SLATER:  Listen, I agree with you.  And next time

14 --

15         MR. TRISCHLER:  That's not what's going to happen.

16         MR. SLATER:  -- I ask you to send me a letter as

17 liaison for the plaintiffs and say, hey, there's a problem, can

18 you talk to your team about it.  And you know what, it would

19 have been taken care of as opposed to it being dropped on us at

20 the end of a nine-hour hearing, or however long we've been

21 going now, because nobody who handles this stuff is going to

22 say that's reasonable.  There was probably a misunderstanding

23 by plaintiffs' counsel as to what they were supposed to do.

24 I'm sure that won't happen again.  If it does, you have -- call

25 me up.  I will be happy to jump on the phone with someone and

1    say, you can't stop the clock every time you hand a document.

2         MR. DAVIS:  Your Honor, I feel like I am being

3    referred to here by Mr. Trischler.  This is John Davis, for the

4    record.  I will say that after two days of Mr. Glover, we had

5    no issue with this.

6         At the deposition of Dr. Snider, which took place last

7    week -- and, by the way, Dr. Snider testified that he's been

8    deposed dozens of times to not remember how many times he's

9    been deposed.  He's a very professional, seasoned witness.  I

10   did not start doing that with Dr. Snider and for short

11   documents I did not do that with Dr. Snider.  I only started

12   doing that with Dr. Snider when he took 15 minutes on the

13   record reviewing -- reviewing a document.  And then I started,

14   for longer documents, I started stopping the clock when I

15   handed one to him because it was his practice to read every

16   single line of the document that I handed to him.  And then we

17   would go back on the record.  It worked, you know.

18        I understood there not to be a single issue with it at

19   the deposition.  Mr. Trischler raised no issue with it at the

20   deposition as it was occurring.  I did not do it for all

21   documents.  I only did it for longer documents where, in fact,

22   when we did go off the record, Dr. Snider still spent ten

23   minutes reviewing the document.  So I'm not sure -- you know,

24   and, again, this is something that I just learned about as

25   being an issue just now as well.

 1          Thank you.

 2          JUDGE VANASKIE:  All right.  Thank you, Mr. Davis.

 3          What I'm going to suggest is, going forward, the

 4  witness is handed a document, the clock keeps running.  When

 5  the witness asks to review the entire document, and it's a

 6  document that is several pages long, then you can ask that the

 7  clock be stopped.  I say several, more than ten pages.

 8          I don't want to have arbitrary rules.  I think you all

 9  sitting in the deposition are in the best position to say,

10  well, we should go off the clock here.  I think both sides

11  should be able to do that.  Mr. Slater said a good rule was if

12  the witness asks to review the document, stop the clock.

13  That's a good rule.  I'd like to see you agree to follow that.

14  And that's what we'll impose here.  Only when the witness asks

15  to review the entire document or review parts of the document,

16  the clock should stop.  Otherwise, that clock keeps running.

17  And under no circumstances should a plaintiffs' counsel hand a

18  document to a witness and say stop the clock.  All right?

19          MR. SLATER:  Thank you, Your Honor.

20          JUDGE VANASKIE:  That's the guidance I'm giving you

21  going forward.

22          MR. SLATER:  Great.

23          JUDGE VANASKIE:  Anything else?

24          MR. SLATER:  Stop asking that.

25          JUDGE VANASKIE:  Yes, Adam.  All right.  Thank you all

 1    very much.  Have a good evening.

 2            MR. SLATER:  Have a nice day, Judge.  Thank you very

 3    much.

 4            JUDGE VANASKIE:  Bye-bye.

 5            MR. GOLDBERG:  Thank you.  Thank you, Your Honor.

 6            (The proceedings concluded at 3:59 p.m.)

 7            - - - - - - - - - - - - - - - - -

 8

 9            I certify that the foregoing is a correct transcript

10    from the record of proceedings in the above-entitled matter.

11

12    */S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR*
      *Court Reporter/Transcriber*

13

14    *04/09/2021*
      *Date*

15

16

17

18

19

20

21

22

23

24

25

**/**

/S [1] - 81:12

**0**

00830263 [2] - 36:21, 40:9
04/09/2021 [1] - 81:14
07068 [1] - 1:14
08101 [1] - 1:8
08540 [1] - 3:4

**1**

1 [1] - 54:13
10 [1] - 54:17
10,000 [11] - 45:15, 48:9, 48:24, 49:1, 49:6, 50:6, 51:12, 51:19, 52:1, 55:14, 60:18
103 [1] - 1:14
11 [2] - 28:13, 32:11
12-hour [1] - 71:7
128 [3] - 28:7, 28:14, 32:11
129 [1] - 28:25
14 [1] - 4:5
145,000 [3] - 47:15, 47:24, 47:25
15 [4] - 32:11, 41:21, 74:22, 79:12
15219 [1] - 2:17
16 [1] - 53:16
1638 [1] - 2:6
17 [2] - 42:4, 75:11
17th [1] - 2:12
1835 [1] - 1:17
19-md-02875-RBK-KMW [1] - 1:4
19103 [2] - 1:17, 2:13
19422 [1] - 2:24
1:00 [2] - 72:17, 73:7

**2**

20 [4] - 8:15, 17:10, 17:13, 41:21
20,000 [1] - 40:24
2019 [1] - 57:18
2020 [2] - 66:19, 66:20
2021 [1] - 1:9
21 [1] - 3:4
2150 [1] - 2:3
220 [1] - 2:9
2500 [1] - 2:20
2705 [1] - 2:9
28 [7] - 27:22, 29:18, 29:20, 30:6, 31:12, 32:24, 33:18
2900 [1] - 1:17

**2:00** [2] - 1:9, 4:2

**3**

3 [2] - 49:12, 54:15
30 [9] - 2:12, 45:16, 67:17, 67:24, 68:1, 73:16, 74:16, 74:17, 74:19
300 [1] - 27:12
300-plus [1] - 35:4
30305 [1] - 2:20
30th [1] - 47:9
33 [1] - 47:21
3333 [1] - 2:20
347 [1] - 36:5
35 [1] - 27:15
350 [4] - 60:4, 61:5, 61:17, 63:18
352 [3] - 36:4, 45:7, 45:8
38th [1] - 2:17
3:00 [1] - 72:20
3:59 [1] - 81:6

**4**

4 [1] - 28:25
4,000 [1] - 36:14
400,000 [1] - 31:12
4200 [1] - 60:18
45 [1] - 68:1
450 [1] - 2:24
49 [1] - 57:25
4th [1] - 1:8

**5**

5 [1] - 54:18
50 [18] - 48:21, 48:22, 48:9, 49:12, 49:16, 49:22, 50:7, 51:19, 51:22, 52:1, 52:13, 52:18, 52:21, 53:19, 54:15, 54:20, 55:20
50-page [1] - 58:1
500-page [1] - 72:25
55402 [1] - 2:3

**6**

600-page [1] - 73:22
609-774-1494 [1] - 1:23
67 [1] - 77:17
6:00 [2] - 71:9, 73:6

**7**

7 [1] - 1:9
70,000 [3] - 51:6, 51:7, 60:18
701 [1] - 1:20

**70130** [1] - 1:20
**78746** [1] - 2:9

**8**

8 [1] - 54:17
800 [1] - 2:3

**9**

9 [1] - 54:17
90 [2] - 27:14, 27:19
90277 [1] - 2:6
95 [1] - 34:14
9:00 [1] - 71:8
9th [5] - 46:25, 47:7, 47:14, 47:22, 54:6

**A**

a.m [1] - 72:20
abide [1] - 72:10
ability [5] - 8:12, 31:1, 31:16, 41:5
able [13] - 4:22, 17:7, 18:24, 19:13, 19:15, 24:7, 39:12, 49:4, 55:25, 61:15, 62:21, 70:3, 80:11
above-entitled [1] - 81:10
ABRAHAM [4] - 3:3, 5:7, 5:10, 6:20
Abraham [1] - 5:9
absolutely [2] - 43:25, 72:19
abusing [1] - 72:21
accept [1] - 59:17
acceptable [4] - 12:5, 17:2, 56:6, 56:17
accommodation [1] - 58:11
accomplish [1] - 16:22
according [1] - 55:14
accuracy [8] - 7:13, 7:19, 9:5, 9:15, 9:16, 13:16, 16:8, 16:18
accurate [2] - 76:5, 76:13
accurately [1] - 6:11
achievable [1] - 61:15
achieve [1] - 8:11
Actavis [2] - 2:21, 2:22
ACTION [1] - 1:3
action [4] - 66:23, 67:2, 67:6, 68:9
actively [1] - 55:3
activities [1] - 37:6
Adam [7] - 5:24, 17:21, 32:8, 71:23,

76:11, 77:21, 80:25
ADAM [1] - 1:13
add [2] - 38:24, 41:13
additional [1] - 4:23
address [17] - 4:17, 5:18, 6:15, 13:22, 20:3, 23:10, 26:10, 35:9, 49:20, 53:25, 54:11, 54:13, 56:17, 66:5, 69:7, 69:20, 69:21
addressed [4] - 4:14, 17:24, 26:12, 72:1
addresses [1] - 5:18
addressing [1] - 25:23
adequate [1] - 36:15
adhere [1] - 75:12
advance [3] - 7:16, 45:5, 68:18
advanced [1] - 44:23
advice [1] - 31:6
Aerospatiale [1] - 31:7
afforded [1] - 64:13
afield [1] - 43:24
afternoon [5] - 11:1, 34:25, 35:1, 36:1, 36:2
afterwards [1] - 57:7
ago [4] - 30:19, 44:8, 55:1, 70:5
agree [17] - 7:3, 7:4, 7:8, 23:19, 23:22, 29:7, 49:14, 53:20, 63:21, 63:22, 67:24, 73:20, 74:1, 74:21, 77:18, 78:13, 80:13
agreeable [6] - 5:2, 6:25, 9:14, 52:25, 56:7
agreed [5] - 44:4, 46:22, 56:19, 58:4, 68:2
agreement [19] - 25:9, 44:7, 44:10, 44:21, 44:24, 46:6, 46:8, 46:10, 46:13, 46:18, 46:21, 46:22, 46:23, 57:14, 57:19, 60:22, 64:11, 64:25
agreements [1] - 44:3
agrees [1] - 51:17
ahead [9] - 8:21, 21:25, 43:22, 62:4, 64:20, 69:18, 71:25, 75:17, 78:8
AI [1] - 12:2
aided [1] - 1:25
ALFANO [1] - 2:15
allays [1] - 65:4

alleviate [3] - 15:10, 28:21, 33:4
allow [2] - 39:7, 58:11
allowed [1] - 58:21
almost [2] - 10:10, 31:12
alone [1] - 38:19
ALSO [1] - 3:8
Amazon [3] - 7:6, 11:9, 11:10
amend [2] - 66:23, 68:10
analysis [1] - 37:5
answer [7] - 23:3, 35:22, 38:11, 53:20, 68:21, 71:5, 72:5
answering [1] - 71:14
answers [1] - 5:22
anticipated [2] - 48:15, 49:19
anyway [1] - 19:1
API [4] - 38:7, 40:18, 40:20, 59:23
apologize [3] - 43:19, 48:12, 53:5
appear [2] - 13:4, 39:21
appearance [1] - 21:3
applicable [2] - 38:12
apply [2] - 48:20, 67:10
appreciate [6] - 17:24, 51:25, 61:3, 61:22, 69:12, 72:5
approach [3] - 56:7, 56:11, 73:19
appropriate [6] - 22:9, 30:8, 55:11, 61:17, 72:12, 77:5
appropriately [1] - 34:15
approved [3] - 66:20, 68:2, 68:9
April [2] - 1:9, 53:16
arbitrary [5] - 17:15, 73:13, 73:14, 73:20, 80:8
areas [1] - 20:2
argue [3] - 6:7, 34:17, 38:2
argued [2] - 18:25, 57:18
arguing [3] - 44:23, 45:20, 66:21
argument [7] - 15:14, 15:15, 26:9, 42:23, 45:9, 59:16, 75:2
arguments [2] - 75:11, 77:11
arms [1] - 48:3

**arose** [1] - 46:15
**art** [2] - 12:7, 17:3
**assertion** [1] - 31:3
**assertions** [1] - 30:22
**assess** [1] - 38:13
**Assessment** [1] - 36:23
**assessment** [6] - 37:7, 38:7, 38:10, 38:11, 38:17, 39:20
**associated** [3] - 38:14, 38:19, 61:20
**assure** [1] - 64:25
**Atlanta** [1] - 2:20
**attachment** [11] - 42:5, 42:12, 42:21, 44:6, 58:5, 58:14, 58:16, 58:18, 59:3, 60:1, 61:21
**attachments** [29] - 41:5, 41:18, 41:21, 42:2, 42:4, 42:9, 42:10, 42:23, 43:2, 44:9, 45:1, 45:3, 55:5, 55:8, 55:12, 55:13, 55:15, 57:2, 57:20, 58:12, 59:1, 59:13, 59:15, 59:18, 59:19, 62:10, 62:21, 63:4
**attention** [2] - 70:13, 72:22
**Attorney** [1] - 3:5
**attorney** [1] - 28:9
**auditing** [1] - 40:18
**Aurobindo** [1] - 2:25
**Aurolife** [1] - 2:25
**Austin** [1] - 2:9
**authored** [2] - 64:15, 64:18
**available** [8] - 17:13, 24:2, 24:3, 24:20, 25:20, 66:5, 66:11, 66:15
**Avenue** [1] - 2:3
**Aviv** [1] - 73:7
**avoid** [1] - 58:10
**aware** [1] - 70:23
**awhile** [2] - 43:20, 55:6

---

**B**

**back-end** [1] - 11:10
**balance** [1] - 54:11
**ball** [1] - 45:5
**bank** [1] - 47:22
**based** [9] - 9:24, 28:9, 30:18, 30:22, 31:6, 35:17, 38:1, 45:9, 66:18

---

**basis** [6] - 10:1, 31:25, 42:12, 47:15, 49:10, 71:11
**Bates** [7] - 36:18, 36:20, 40:8, 41:17, 42:20, 61:18, 61:19
**Beach** [1] - 2:6
**beautifully** [1] - 47:20
**becomes** [4] - 12:18, 57:12, 70:19, 71:6
**bed** [1] - 75:10
**Bee** [1] - 2:9
**begin** [2] - 72:16, 73:6
**behalf** [5] - 40:11, 46:14, 62:6, 64:5, 77:1
**Behram** [1] - 57:3
**BEHRAM** [1] - 1:22
**Bell** [1] - 2:24
**benefit** [1] - 70:8
**benign** [1] - 41:2
**best** [6] - 4:11, 11:25, 16:22, 24:1, 43:11, 80:9
**better** [3] - 17:15, 60:2, 61:9
**between** [3] - 46:13, 53:18, 70:7
**beyond** [1] - 17:6
**bit** [2] - 29:5, 41:20
**biting** [1] - 43:7
**blank** [3] - 37:15, 43:25, 59:6
**bless** [1] - 55:18
**blessing** [1] - 56:3
**blind** [2] - 59:21, 61:4
**Blue** [1] - 2:24
**book** [1] - 31:10
**BOSICK** [1] - 2:15
**bottom** [1] - 57:14
**breaks** [1] - 11:15
**brief** [4] - 17:23, 18:14, 34:7, 38:2
**briefed** [1] - 27:8
**briefing** [3] - 29:6, 32:19, 67:4
**briefs** [2] - 4:23, 14:25
**bright** [3] - 74:19, 76:24, 77:9
**bright-line** [1] - 74:19
**bring** [2] - 4:18, 33:21
**broader** [1] - 44:1
**brought** [2] - 47:16, 72:21
**bubbling** [1] - 64:12
**Building** [1] - 1:7
**bunch** [1] - 77:11
**burden** [5] - 49:5, 49:21, 55:16, 59:12, 62:8

---

**burdened** [2] - 53:11, 53:12
**burdensome** [1] - 55:20
**business** [4] - 5:14, 19:4, 37:17, 45:17
**buy** [1] - 39:20
**BY** [10] - 1:13, 1:16, 1:19, 2:2, 2:5, 2:8, 2:11, 2:16, 2:19, 2:23
**bye** [2] - 81:4
**bye-bye** [1] - 81:4

---

**C**

**cache** [1] - 49:4
**California** [1] - 2:6
**Camden** [2] - 1:8, 19:15
**camera** [2] - 4:11, 49:17
**Camille** [2] - 1:22, 81:12
**camillepedano@ gmail.com** [1] - 1:23
**Camp** [1] - 1:20
**cannot** [1] - 32:22
**cap** [1] - 50:7
**capabilities** [1] - 39:21
**capable** [1] - 14:3
**capacity** [1] - 61:12
**capping** [1] - 55:20
**captured** [1] - 6:11
**care** [2] - 19:10, 78:19
**cares** [1] - 74:19
**carry** [1] - 6:21
**case** [22] - 13:19, 16:25, 19:12, 29:23, 30:25, 31:7, 31:20, 32:1, 32:7, 33:20, 38:8, 41:17, 41:20, 44:4, 45:19, 53:15, 59:10, 61:24, 64:2, 70:23, 71:20, 77:23
**cases** [3] - 41:15, 70:25, 71:1
**categories** [3] - 18:18, 18:20, 48:2
**categorized** [1] - 34:15
**category** [2] - 18:23, 25:5
**CCR** [1] - 81:12
**central** [2] - 25:11, 38:8
**Centre** [1] - 2:17
**certain** [3] - 18:18, 31:4, 56:1
**certainly** [17] - 13:16,

---

14:17, 25:15, 26:15, 31:14, 31:18, 33:24, 35:9, 46:1, 56:11, 60:11, 60:25, 66:15, 67:5, 71:17, 71:21, 72:20
**certify** [1] - 81:9
**cetera** [1] - 26:19
**challenge** [6] - 49:9, 52:10, 52:18, 54:14, 62:14, 63:12
**challenging** [2] - 27:21, 52:7
**changing** [1] - 58:24
**characters** [1] - 11:15
**chase** [1] - 32:9
**checked** [1] - 46:9
**checklist** [6] - 39:2, 39:3, 41:3, 59:6, 59:24
**checkmarks** [1] - 37:2
**chime** [2] - 39:25, 40:15
**China** [4] - 28:9, 28:10, 28:11, 64:10
**Chinese** [32] - 11:15, 13:8, 15:23, 19:17, 19:20, 19:24, 23:8, 27:4, 27:13, 28:13, 28:23, 29:12, 29:19, 29:23, 30:11, 30:16, 30:18, 30:20, 30:21, 30:22, 30:23, 31:1, 31:2, 31:6, 31:14, 31:17, 31:18, 32:2, 32:12, 33:18, 65:2
**choose** [2] - 73:14, 73:20
**chose** [2] - 19:4, 23:24
**CIPRIANI** [1] - 2:23
**circumstances** [1] - 80:17
**cite** [1] - 54:25
**cited** [2] - 19:6, 77:22
**CIVIL** [1] - 1:3
**clarification** [4] - 18:2, 69:22, 73:6, 73:9
**clarify** [4] - 42:17, 42:19, 72:15, 75:18
**clear** [10] - 5:11, 22:7, 32:10, 50:17, 53:6, 54:7, 54:10, 66:16, 72:9, 72:10
**CLEM** [1] - 2:16
**Clem** [6] - 40:1, 43:8, 48:10, 51:22, 54:16
**Clerk** [1] - 3:9
**client** [2] - 51:9, 70:25
**clock** [25] - 72:3, 72:4, 73:10, 73:11, 73:15,

---

73:17, 73:23, 73:25, 74:10, 74:14, 75:3, 75:21, 75:23, 76:1, 76:2, 79:1, 79:14, 80:4, 80:7, 80:10, 80:12, 80:16, 80:18
**close** [1] - 12:7
**closely** [1] - 35:14
**Coast** [1] - 2:6
**coded** [2] - 37:24, 51:10
**Cohen** [1] - 1:7
**colleague** [1] - 35:5
**colleagues** [1] - 74:5
**collective** [1] - 60:22
**comfortable** [2] - 17:3, 35:11
**coming** [5] - 48:17, 62:16, 70:21, 74:8, 75:11
**Commencing** [1] - 1:9
**comments** [3] - 40:5, 54:6, 71:16
**communicated** [1] - 29:19
**communications** [1] - 19:5
**company** [2] - 19:4, 38:13
**compare** [1] - 9:15
**compel** [4] - 27:9, 27:24, 33:9, 42:8
**compelled** [1] - 56:20
**complete** [2] - 50:18, 63:23
**completed** [1] - 47:8
**completely** [4] - 10:10, 38:20, 61:5, 73:1
**completion** [2] - 7:17, 7:24
**compliance** [1] - 67:25
**comply** [4] - 66:22, 67:1, 68:4, 68:11
**compromise** [2] - 53:9, 60:15
**computer** [2] - 1:25, 59:9
**computer-aided** [1] - 1:25
**Computerized** [1] - 36:24
**computerized** [2] - 37:7, 39:19
**conceded** [1] - 27:20
**conceptionally** [1] - 52:3
**conceptually** [1] - 55:22

**concern** [15] - 6:6, 13:24, 14:16, 14:19, 15:7, 15:18, 15:20, 18:6, 19:10, 20:2, 20:22, 22:25, 30:15, 60:10, 65:4
**concerned** [7] - 4:9, 9:5, 24:19, 28:22, 49:3, 57:14, 64:23
**concerning** [3] - 23:17, 30:23, 31:9
**concerns** [4] - 13:23, 17:23, 26:16, 74:18
**conclude** [1] - 55:21
**concluded** [1] - 81:6
**conclusions** [1] - 34:17
**conduct** [2] - 4:11, 20:20
**conducting** [1] - 39:19
**confer** [14] - 27:15, 27:16, 27:17, 27:21, 28:3, 32:17, 47:18, 49:14, 52:5, 55:25, 56:5, 58:4, 59:14, 63:1
**conference** [5] - 4:4, 6:15, 50:24, 66:14, 66:17
**CONFERENCE** [1] - 1:5
**conferred** [2] - 30:20, 33:1
**confidential** [3] - 13:18, 16:6, 16:20
**confidentiality** [4] - 15:14, 16:25, 26:8, 27:3
**confines** [1] - 67:11
**confused** [1] - 52:12
**connected** [1] - 55:8
**connection** [1] - 33:20
**consider** [5] - 18:19, 28:20, 29:1, 29:18, 31:22
**consideration** [2] - 31:15, 56:12
**considerations** [1] - 15:8
**considered** [1] - 29:3
**considering** [2] - 29:4, 60:14
**consternation** [1] - 32:18
**consult** [1] - 31:16
**consuming** [1] - 62:13
**contain** [1] - 37:19
**contemplates** [1] - 68:3
**contentious** [1] - 74:5

**context** [14] - 17:12, 17:16, 33:1, 41:9, 43:3, 55:11, 59:2, 61:4, 61:6, 61:17, 62:17, 70:6, 71:14, 76:7
**continue** [1] - 63:20
**Continued** [2] - 2:1, 3:1
**continued** [2] - 47:11, 76:21
**contracts** [1] - 25:2
**control** [2] - 27:19, 27:20
**convenience** [7] - 19:17, 19:21, 21:13, 23:2, 23:24, 24:4, 58:9
**convenient** [1] - 23:21
**Convention** [2] - 67:15, 68:4
**conversation** [1] - 59:21
**conveys** [1] - 48:11
**Cooper** [1] - 1:8
**cooperation** [1] - 8:5
**cooperative** [1] - 29:17
**cooperatively** [1] - 65:12
**corporate** [3] - 18:23, 21:8, 70:24
**correct** [10] - 9:13, 10:23, 10:24, 25:4, 39:4, 57:2, 60:7, 66:4, 67:23, 81:9
**correctly** [2] - 14:10, 20:19
**correspondence** [1] - 27:11
**corresponds** [1] - 11:20
**cost** [6] - 9:25, 10:23, 12:23, 12:25, 13:2, 16:12
**costs** [2] - 14:8, 33:23
**counsel** [19] - 23:18, 27:13, 29:19, 29:23, 30:16, 30:21, 31:6, 31:14, 32:12, 33:18, 45:10, 48:6, 56:12, 56:16, 59:14, 64:12, 73:2, 78:23, 80:17
**counsel's** [1] - 74:18
**count** [1] - 70:11
**couple** [5] - 4:4, 4:14, 4:24, 17:23, 47:19
**course** [7] - 7:20, 18:25, 23:18, 25:10, 37:17, 39:9, 63:1,

66:22, 67:1, 67:6, 68:8
**COURT** [3] - 1:1, 66:11, 75:17
**court** [4] - 45:16, 50:18, 65:8, 68:9
**Court** [32] - 1:22, 7:18, 7:20, 9:23, 27:2, 29:3, 31:8, 31:21, 35:6, 43:24, 45:5, 45:9, 45:19, 48:2, 48:5, 48:19, 49:17, 50:5, 50:25, 51:1, 51:13, 55:17, 61:1, 63:11, 64:8, 66:20, 67:4, 68:2, 68:6, 70:9, 77:21, 81:12
**Court's** [6] - 35:9, 47:23, 47:24, 60:10, 70:6, 72:22
**court-approved** [1] - 68:9
**Courthouse** [1] - 1:7
**Courtroom** [1] - 3:10
**courtroom** [1] - 23:15
**Cove** [1] - 2:9
**cover** [1] - 6:10
**covered** [3] - 64:1, 67:21, 68:22
**covers** [1] - 64:1
**CRC** [1] - 81:12
**create** [3] - 15:18, 48:19, 76:22
**criteria** [1] - 39:8
**CRR** [1] - 81:12
**crucial** [1] - 52:20
**current** [1] - 60:20
**custodial** [3] - 18:22, 24:23, 25:4
**custodian** [2] - 49:7, 54:4
**custodians** [2] - 48:22, 52:22
**customary** [1] - 42:25
**cut** [2] - 32:9, 53:5

# D

**data** [1] - 13:13
**Date** [1] - 81:14
**date** [1] - 23:6
**Davis** [16] - 35:13, 37:25, 38:5, 40:7, 42:14, 42:18, 44:5, 44:19, 45:2, 45:24, 55:4, 61:20, 62:24, 63:15, 79:3, 80:2
**DAVIS** [11] - 2:8, 2:8, 2:19, 40:7, 41:13, 42:17, 42:19, 44:17, 45:23, 62:24, 79:2

**days** [9] - 45:16, 45:18, 49:14, 53:20, 54:15, 55:19, 71:1, 79:4
**de** [1] - 15:9
**de-designate** [1] - 15:9
**deadline** [1] - 50:20
**deadlines** [2] - 50:5, 67:6
**deal** [2] - 48:7, 76:7
**dealing** [3] - 63:2, 63:8, 63:9
**dealings** [1] - 57:7
**December** [7] - 46:25, 47:7, 47:14, 47:21, 51:1, 54:6, 55:1
**decide** [4] - 16:24, 23:4, 45:10, 70:21
**decided** [3] - 22:3, 22:5, 23:11
**decision** [4] - 4:7, 17:1, 26:9, 30:10
**Defendant** [1] - 2:18
**defendant** [1] - 49:12
**defendants** [16] - 44:25, 47:8, 48:21, 49:21, 51:21, 53:8, 54:15, 55:20, 55:24, 56:10, 57:12, 57:14, 58:10, 58:16, 62:11
**Defendants** [4] - 2:13, 2:21, 2:25, 3:5
**defendants'** [1] - 70:14
**defense** [19] - 6:24, 15:20, 17:5, 22:11, 22:20, 23:18, 34:11, 56:1, 56:5, 56:7, 56:11, 56:16, 59:14, 60:15, 60:21, 72:6, 74:6, 74:18, 75:1
**defer** [2] - 5:14, 35:7
**definitely** [2] - 7:18, 13:25
**definition** [1] - 42:4
**delay** [1] - 75:6
**demonstrative** [1] - 40:12
**depose** [1] - 49:2
**deposed** [6] - 4:20, 8:7, 48:23, 76:15, 79:8, 79:9
**deposition** [31] - 13:7, 53:16, 62:17, 62:20, 64:9, 65:12, 70:12, 70:21, 71:3, 71:6, 71:7, 71:10, 72:16, 72:17, 72:23, 73:4, 74:5, 74:7, 74:15,

74:22, 74:25, 76:12, 76:13, 76:18, 79:6, 79:19, 79:20, 80:9
**depositions** [21] - 7:12, 7:16, 7:17, 7:24, 15:25, 17:19, 20:21, 54:3, 55:3, 62:17, 65:19, 70:4, 70:14, 70:24, 71:8, 71:18, 71:19, 74:6, 74:24, 75:13, 78:12
**Deputy** [1] - 3:10
**Derrick** [1] - 53:16
**describe** [2] - 34:8, 36:17
**describing** [1] - 58:25
**description** [2] - 34:7, 38:2
**designate** [4] - 15:9, 23:16, 23:24, 36:8
**designated** [7] - 15:9, 16:5, 16:19, 24:16, 25:12, 25:17, 45:15
**designations** [2] - 16:25, 26:8
**detail** [2] - 52:3, 72:2
**determination** [3] - 7:22, 32:23, 34:13
**determinations** [1] - 30:18
**determined** [1] - 31:5
**determining** [1] - 34:5
**devil's** [1] - 52:2
**devise** [1] - 49:19
**dialogue** [1] - 33:17
**different** [7] - 8:25, 21:2, 21:3, 58:18, 67:12, 72:6
**differently** [1] - 10:10
**differing** [1] - 32:3
**difficult** [3] - 12:17, 41:22, 43:14
**difficulties** [1] - 41:19
**difficulty** [1] - 62:12
**digest** [1] - 50:15
**diligent** [1] - 29:17
**diligently** [1] - 27:13
**directed** [1] - 7:7
**directly** [2] - 46:9, 58:17
**disappointed** [2] - 28:2, 29:2
**discontinuing** [1] - 50:21
**discoverable** [1] - 55:10
**discovering** [1] - 55:4
**discovery** [8] - 4:6, 44:13, 44:22, 47:8, 57:23, 58:7, 58:17,

71:20

**discuss** [2] - 6:3, 36:12

**discussed** [5] - 27:16, 29:23, 62:8, 66:17, 72:25

**discussion** [8] - 10:7, 15:1, 16:21, 28:10, 32:12, 44:2, 63:16, 70:7

**displayed** [1] - 20:17

**displaying** [1] - 8:10

**disposal** [1] - 54:3

**disposition** [1] - 4:7

**dispute** [10] - 27:22, 29:19, 29:21, 33:4, 33:6, 33:19, 48:25, 50:8, 55:18, 74:15

**disputed** [5] - 33:19, 49:6, 49:16, 54:19, 55:7

**disputes** [4] - 26:25, 44:22, 49:20, 53:25

**disrespect** [1] - 52:7

**disruptive** [2] - 72:22, 73:5

**distribution** [1] - 37:5

**DISTRICT** [2] - 1:1, 1:1

**disturbed** [1] - 46:5

**docket** [1] - 26:18

**dockets** [1] - 46:10

**Docs** [1] - 16:6

**Document** [1] - 54:16

**document** [144] - 4:22, 7:20, 8:8, 8:9, 8:13, 8:14, 8:15, 8:18, 9:5, 9:19, 11:4, 11:7, 11:20, 11:22, 12:10, 13:3, 13:4, 13:12, 13:14, 14:4, 14:5, 14:10, 14:12, 15:19, 17:10, 17:11, 17:12, 17:25, 18:3, 19:16, 19:17, 20:17, 20:18, 21:2, 21:7, 21:8, 21:11, 21:12, 21:15, 21:16, 23:3, 23:7, 23:8, 23:19, 24:2, 24:5, 24:7, 24:17, 24:20, 24:25, 25:11, 25:12, 25:16, 25:18, 27:17, 28:9, 28:12, 33:2, 34:5, 34:8, 34:10, 34:12, 36:17, 36:19, 36:22, 36:24, 37:3, 37:9, 37:10, 37:13, 37:18, 37:23, 38:1, 38:3, 38:16, 39:1, 39:17, 39:18,

40:3, 40:12, 41:4, 41:14, 41:16, 41:23, 42:1, 42:22, 43:3, 46:15, 46:17, 46:19, 46:20, 49:9, 50:6, 50:18, 53:10, 54:8, 55:9, 55:11, 58:7, 58:20, 59:2, 59:4, 59:7, 59:8, 61:21, 61:23, 70:9, 70:16, 71:5, 71:13, 72:3, 73:3, 73:10, 73:12, 73:15, 73:16, 73:24, 74:10, 75:23, 75:24, 76:19, 77:2, 77:3, 77:6, 77:16, 78:11, 79:1, 79:13, 79:16, 79:23, 80:4, 80:5, 80:6, 80:12, 80:15, 80:18

**document's** [2] - 19:13, 19:14

**documentation** [1] - 37:5

**documents** [180] - 4:9, 4:12, 4:16, 4:19, 5:2, 5:3, 7:11, 7:16, 8:2, 8:4, 8:6, 9:3, 10:1, 10:15, 11:5, 12:7, 12:11, 12:13, 12:24, 13:1, 13:6, 13:18, 15:3, 15:6, 15:9, 15:11, 15:13, 15:16, 15:22, 15:24, 16:5, 16:7, 16:14, 16:15, 16:19, 17:7, 18:12, 18:18, 18:21, 18:23, 19:3, 19:5, 22:12, 24:12, 24:13, 24:14, 24:19, 24:22, 25:3, 25:5, 26:18, 27:10, 27:12, 27:14, 27:16, 27:20, 27:22, 27:24, 28:8, 28:10, 29:8, 29:12, 29:18, 29:20, 29:24, 30:6, 30:11, 30:17, 31:3, 31:4, 31:5, 31:11, 32:24, 32:25, 33:17, 33:19, 34:1, 34:2, 34:7, 34:8, 34:13, 34:15, 34:21, 35:4, 35:6, 35:7, 35:17, 35:18, 35:24, 36:4, 36:8, 36:14, 40:14, 40:24, 41:2, 41:7, 41:20, 41:24, 42:11, 44:12, 44:13, 45:7, 45:8, 45:15, 47:12, 47:15, 47:24, 47:25, 48:9, 48:15, 48:18,

48:21, 48:22, 48:24, 49:4, 49:8, 49:11, 49:12, 49:16, 49:22, 50:2, 50:8, 51:3, 51:6, 51:8, 51:19, 51:22, 52:8, 52:13, 52:14, 52:17, 52:20, 53:19, 54:4, 54:13, 54:14, 54:19, 55:7, 55:14, 55:15, 55:20, 56:25, 57:11, 57:12, 57:21, 58:25, 59:20, 59:22, 59:23, 59:24, 60:4, 60:18, 61:5, 61:9, 61:17, 61:19, 62:9, 62:14, 62:19, 63:2, 63:5, 63:6, 63:10, 63:19, 64:7, 64:14, 64:16, 70:8, 70:16, 75:22, 79:11, 79:14, 79:21

**dog** [2] - 43:17, 43:22

**dollars** [1] - 44:13

**done** [13] - 8:16, 14:5, 14:6, 29:14, 31:8, 31:10, 32:17, 32:22, 33:2, 45:10, 71:10, 77:5, 77:6

**Dong** [1] - 74:25

**doubt** [2] - 51:1, 74:6

**down** [8] - 7:21, 15:7, 20:10, 23:18, 27:15, 29:18, 40:23, 61:13

**download** [1] - 12:15

**dozens** [1] - 79:8

**Dr** [6] - 79:6, 79:7, 79:10, 79:11, 79:12, 79:22

**drafted** [1] - 64:14

**drafts** [1] - 66:19

**dropped** [1] - 78:19

**drug** [2] - 58:18, 58:22

**Drugs** [1] - 3:5

**DUANE** [1] - 2:11

**due** [1] - 77:13

**duplicate** [1] - 15:4

**duplicates** [2] - 27:18, 27:19

**during** [6] - 7:11, 27:20, 32:17, 66:17, 74:7, 76:17

**dwell** [1] - 50:2

---

## E

**early** [2] - 40:17, 47:13

**easier** [2] - 26:16, 47:5

**Eastern** [1] - 73:7

**educated** [1] - 76:16

**effect** [2] - 18:14, 46:16

**efficient** [1] - 15:5

**effort** [1] - 16:21

**Eisenhower** [1] - 1:14

**either** [8] - 11:10, 49:13, 49:15, 54:19, 59:17, 64:2, 65:21, 77:10

**email** [23] - 41:5, 41:15, 41:18, 42:1, 42:5, 42:9, 42:12, 42:21, 43:1, 43:2, 44:9, 45:3, 57:20, 58:13, 59:1, 59:3, 59:13, 60:1, 60:2, 61:21, 63:12

**email's** [2] - 44:6, 59:18

**emails** [8] - 24:23, 41:21, 45:1, 55:4, 61:10, 62:19, 62:20, 63:4

**employ** [2] - 38:18, 39:8

**employed** [1] - 73:9

**encourage** [1] - 56:11

**end** [9] - 11:10, 19:22, 28:7, 53:18, 54:23, 63:10, 71:8, 74:24, 78:20

**ended** [2] - 28:3, 36:5

**ending** [1] - 6:6

**engaged** [3] - 40:23, 58:3, 59:14

**engaging** [2] - 62:11, 62:22

**English** [48] - 4:16, 4:20, 4:21, 4:22, 5:1, 8:3, 8:14, 11:16, 11:20, 12:12, 13:4, 15:6, 15:12, 17:7, 18:21, 19:3, 19:14, 19:15, 19:20, 19:24, 20:18, 21:7, 21:11, 21:17, 22:15, 22:18, 22:21, 24:3, 24:5, 24:16, 24:24, 25:3, 25:9, 25:13, 25:17, 25:18, 25:20, 64:6, 64:11, 64:15, 65:1, 65:3, 70:15, 76:8, 76:16

**English-speaking** [2] - 70:15, 76:8

**enter** [1] - 46:18

**entered** [2] - 44:8, 46:8

**entire** [10] - 8:18, 15:23, 17:10, 17:12, 23:17, 23:22, 32:7, 46:17, 80:5, 80:15

**entirely** [2] - 5:11, 72:22

**entirety** [2] - 12:18, 30:12

**entities** [1] - 57:17

**entitled** [6] - 52:9, 70:12, 70:22, 71:13, 72:19, 81:10

**ergo** [1] - 42:22

**Eric** [2] - 74:25, 76:15

**ERIC** [1] - 3:3

**error** [2] - 46:3, 51:10

**ESI** [11] - 10:7, 42:24, 44:13, 45:12, 45:13, 51:2, 51:24, 57:1, 57:6, 57:19

**especially** [3] - 9:19, 20:11, 32:4

**ESQUIRE** [13] - 1:13, 1:16, 1:19, 2:2, 2:5, 2:8, 2:12, 2:16, 2:16, 2:19, 2:23, 3:3, 3:3

**Esquire** [1] - 3:9

**essence** [2] - 47:17, 49:13

**essentially** [3] - 11:14, 15:21, 72:7

**estimate** [1] - 10:23

**et** [1] - 26:19

**evaluate** [4] - 39:12, 39:19, 59:8, 61:9

**evaluating** [1] - 38:18

**evening** [1] - 81:1

**event** [1] - 65:7

**evidential** [1] - 21:16

**evidentiary** [1] - 22:4

**evolved** [1] - 58:24

**exact** [2] - 45:20, 51:4

**exactly** [4] - 20:22, 37:21, 41:15, 77:14

**examination** [1] - 54:9

**examine** [1] - 49:5

**examining** [1] - 24:13

**example** [15] - 13:5, 21:7, 21:9, 25:8, 26:17, 37:3, 38:16, 41:22, 42:1, 48:24, 54:25, 55:13, 61:10

**examples** [1] - 48:2

**exceed** [7] - 48:21, 49:12, 49:16, 52:18, 52:20, 54:15, 54:20

**exceeding** [1] - 49:22

**Excel** [2] - 58:1, 58:2

**except** [1] - 14:19

**exception** [1] - 64:7

**exchanging** [1] - 66:19

**exercise** [4] - 23:17, 23:22, 60:11, 60:23

*exercises* [1] - 71:20
*Exhibit* [1] - 77:16
*exhibit* [2] - 72:19, 72:24
*exhibits* [1] - 62:20
*exist* [2] - 19:3, 25:3
*existed* [1] - 38:13
*exists* [3] - 8:8, 23:20, 38:8
*expect* [7] - 6:15, 8:15, 16:20, 17:10, 17:13, 17:18, 33:22
*expected* [1] - 5:11
*expecting* [1] - 66:5
*expedite* [3] - 16:22, 62:16, 67:5
*expedited* [4] - 62:21, 65:21, 67:5, 69:13
*expedition* [1] - 57:15
*expense* [1] - 51:8
*experienced* [1] - 41:19
*expert* [2] - 31:16, 31:23
*experts* [5] - 32:2, 32:3, 33:7, 50:3
*explain* [2] - 19:1, 19:2
*explained* [1] - 19:9
*explanation* [1] - 34:9
*explicit* [1] - 4:4
*explicitly* [2] - 4:8, 68:3
*express* [1] - 30:15
*extending* [1] - 50:20
*extent* [6] - 8:2, 16:16, 33:20, 48:11, 62:18, 66:21
*extra* [1] - 14:7
*extracted* [5] - 11:6, 11:17, 14:4, 14:6, 15:22
*eyes* [1] - 44:12

**F**

*fabricating* [1] - 39:9
*fabrication* [1] - 38:14
*face* [3] - 59:4, 60:5, 61:23
*facilitate* [2] - 7:17, 7:23
*fact* [10] - 21:1, 41:16, 44:5, 47:13, 48:9, 50:21, 50:23, 52:8, 68:9, 79:21
*factual* [7] - 28:12, 28:15, 28:21, 28:24, 29:13, 29:21, 30:7
*fair* [1] - 60:20
*fairly* [1] - 65:20
*fairness* [4] - 13:7,

23:2, 55:25, 66:9
*faith* [1] - 31:25
*faithful* [1] - 21:1
*fall* [5] - 30:12, 55:17, 60:17, 61:11, 66:19
*falls* [1] - 54:13
*familiar* [1] - 35:6
*familiarity* [2] - 25:19, 37:8
*families* [1] - 63:4
*family* [2] - 61:13, 63:6
*far* [4] - 24:18, 43:23, 53:11, 53:14
*fashion* [1] - 10:11
*FDA* [5] - 19:5, 24:12, 24:13, 24:14, 24:19
*felt* [1] - 41:1
*Ferretti* [4] - 46:8, 46:14, 57:7, 58:3
*few* [6] - 12:21, 27:1, 30:19, 35:18, 69:25, 76:17
*fight* [2] - 26:14, 74:22
*figure* [2] - 16:21, 48:1
*figuring* [1] - 49:1
*file* [13] - 18:22, 24:24, 25:4, 25:18, 30:1, 30:5, 33:9, 40:19, 40:21, 66:23, 67:2, 68:10, 69:3
*filed* [2] - 65:17, 66:8
*filing* [3] - 69:1, 69:3, 69:9
*fine* [9] - 7:12, 40:4, 52:3, 56:23, 66:14, 67:4, 68:7, 69:14
*finish* [1] - 78:7
*finished* [1] - 28:25
*first* [13] - 4:25, 5:6, 8:2, 20:6, 26:11, 26:12, 34:19, 36:19, 37:4, 45:25, 47:2, 47:7, 51:10
*fishing* [1] - 57:15
*fit* [1] - 35:22
*five* [7] - 36:6, 36:8, 54:12, 55:19, 71:1, 73:14, 73:24
*five-day* [1] - 54:12
*five-page* [1] - 73:24
*flag* [1] - 66:10
*flat* [1] - 43:1
*flexibility* [1] - 22:19
*flip* [1] - 73:22
*Floor* [1] - 2:17
*fluent* [2] - 4:21, 76:16
*follow* [2] - 10:10, 80:13
*followed* [1] - 27:17
*following* [2] - 45:9,

45:12
*FOR* [1] - 1:1
*foreclosing* [1] - 22:21
*foregoing* [1] - 81:9
*foreign* [3] - 16:16, 24:18, 31:21
*forget* [2] - 45:11, 45:12
*form* [6] - 36:24, 36:25, 37:2, 37:15, 38:11, 43:25
*format* [2] - 12:12, 13:1, 14:4, 38:9
*formatted* [4] - 10:9, 13:4, 13:14, 14:10
*formatting* [2] - 11:24, 12:22
*forth* [1] - 66:1
*forward* [12] - 17:19, 45:20, 47:5, 60:23, 63:17, 65:12, 69:12, 70:4, 76:25, 77:24, 80:3, 80:21
*four* [1] - 66:1
*four-to-six-month* [1] - 66:1
*frame* [1] - 47:4
*frames* [1] - 47:20
*framework* [1] - 48:6
*FRANK* [1] - 2:16
*Frank* [2] - 35:5, 43:6
*frankly* [2] - 46:6, 72:5
*free* [3] - 14:17, 16:13, 61:14
*FREEMAN* [1] - 1:13
*Friday* [14] - 45:15, 48:6, 51:13, 65:22, 66:6, 66:12, 66:15, 68:7, 68:15, 68:18, 68:24, 69:1, 69:5, 69:12
*frivolous* [1] - 33:21
*front* [7] - 17:24, 18:7, 30:10, 38:1, 38:16, 39:12, 39:17
*frustrating* [1] - 43:13
*full* [2] - 48:5, 49:4
*fully* [2] - 41:5, 46:19
*function* [1] - 12:23
*fundamental* [2] - 57:11, 58:19

**G**

*game* [1] - 13:6
*generator* [1] - 35:18
*Georgia* [1] - 1:18
*germane* [2] - 38:20, 54:4
*given* [6] - 30:24, 37:16, 68:9, 68:20,

71:20
*glad* [2] - 63:16, 65:11
*global* [1] - 51:15
*globally* [1] - 56:2
*Glover* [2] - 53:16, 79:4
*Goldberg* [34] - 6:11, 7:9, 8:21, 10:18, 10:21, 11:21, 12:3, 12:20, 14:7, 14:14, 14:20, 16:4, 16:8, 18:10, 20:4, 20:15, 21:25, 26:5, 26:21, 28:25, 29:15, 32:1, 32:22, 33:7, 33:11, 64:20, 64:21, 64:22, 65:6, 75:16, 75:17, 76:12, 76:21, 77:25
*GOLDBERG* [28] - 2:11, 7:10, 8:20, 8:22, 9:13, 9:22, 10:24, 12:21, 18:11, 20:5, 22:1, 22:23, 23:1, 23:10, 26:4, 26:23, 27:6, 29:16, 30:14, 33:13, 64:19, 64:21, 75:16, 75:18, 76:2, 76:4, 76:6, 81:5
*Goldberg's* [2] - 10:14, 23:13
*GOLDENBERG* [9] - 2:2, 2:2, 5:19, 65:14, 66:8, 67:9, 67:16, 68:19, 69:8
*Goldenberg* [4] - 5:17, 65:15, 66:4, 67:8
*GOLOMB* [1] - 1:16
*good-faith* [1] - 31:25
*Google* [21] - 7:5, 8:24, 9:3, 9:4, 9:14, 9:18, 11:10, 12:1, 12:5, 12:8, 12:14, 13:15, 13:19, 14:2, 14:12, 14:18, 16:6, 16:13, 17:3, 17:4
*GORDON* [1] - 2:15
*gospel* [1] - 31:20
*government* [4] - 28:13, 28:16, 28:23, 29:12
*grasping* [1] - 23:13
*great* [5] - 24:9, 49:21, 53:1, 80:22
*greatly* [1] - 61:3
*GREENBERG* [1] - 2:19
*group* [5] - 41:11, 56:1, 56:5, 56:7, 60:21

*groups* [2] - 63:6, 63:13
*Gu* [2] - 74:25, 76:15
*guess* [7] - 20:25, 25:3, 26:20, 30:2, 52:2, 55:21, 75:9
*guidance* [5] - 4:10, 34:3, 71:15, 77:21, 80:20
*guided* [1] - 31:2
*GxP* [3] - 36:24, 36:25, 37:6
*GxP-related* [1] - 37:6

**H**

*Hague* [4] - 66:1, 67:15, 67:18, 68:4
*half* [1] - 54:1
*hand* [5] - 10:4, 10:16, 77:2, 79:1, 80:17
*handed* [9] - 70:16, 71:5, 71:12, 77:3, 77:16, 78:11, 79:15, 79:16, 80:4
*handle* [1] - 24:1
*handled* [2] - 42:8, 59:8
*handles* [1] - 78:21
*handling* [1] - 10:7
*happy* [3] - 5:13, 68:21, 78:25
*hard* [1] - 15:15
*hate* [1] - 73:17
*Healthcare* [1] - 2:14
*hear* [11] - 5:17, 6:7, 10:20, 18:10, 43:16, 51:17, 53:3, 53:4, 53:17, 63:19, 65:11
*heard* [4] - 16:4, 45:25, 56:25, 60:20
*hearing* [9] - 29:10, 65:18, 65:21, 66:9, 67:3, 69:13, 70:6, 71:17, 78:20
*heat* [1] - 47:5
*HEINZ* [5] - 2:23, 9:11, 66:13, 67:23, 68:25
*Heinz* [6] - 9:9, 65:17, 66:11, 67:21, 68:23, 69:9
*Heinz's* [1] - 66:7
*held* [1] - 4:1
*help* [3] - 24:10, 70:3, 75:4
*helpful* [1] - 71:17
*herself* [1] - 18:22
*Hetero* [6] - 3:5, 5:10, 5:12, 5:16, 6:18
*hi* [1] - 66:13
*highly* [3] - 9:19, 50:4,

73:4
**Highway** [1] - 2:6
**HILL** [1] - 3:2
**Hilton** [12] - 35:13, 40:10, 41:13, 47:14, 55:14, 61:14, 62:5, 64:4, 64:5, 64:23, 64:25, 65:5
**HILTON** [6] - 1:19, 40:10, 62:5, 64:3, 64:5, 65:6
**hinder** [1] - 41:4
**history** [1] - 44:3
**hold** [8] - 26:18, 40:4, 43:17, 63:18, 69:18, 78:6
**HONIK** [19] - 1:16, 1:16, 35:12, 35:21, 36:10, 36:12, 38:4, 39:7, 43:8, 43:12, 45:22, 45:24, 46:2, 52:6, 52:15, 53:1, 53:23, 56:21, 61:3
**Honik** [11] - 35:10, 37:25, 39:16, 45:14, 50:14, 50:23, 51:12, 51:17, 53:17, 55:22, 56:9
**Honik's** [3] - 56:16, 60:14, 63:21
**Honor** [122] - 5:10, 5:11, 5:12, 5:13, 5:14, 5:19, 5:24, 5:25, 6:4, 6:20, 7:10, 8:20, 9:22, 9:25, 10:4, 10:14, 10:24, 11:2, 12:21, 14:11, 14:13, 14:21, 15:8, 17:21, 18:11, 18:15, 18:17, 18:19, 19:7, 19:10, 19:11, 20:5, 20:8, 22:1, 23:9, 23:12, 25:22, 26:17, 26:23, 27:6, 27:10, 28:1, 29:16, 30:14, 30:15, 30:19, 32:8, 33:10, 33:13, 33:15, 34:25, 35:3, 35:12, 35:21, 36:1, 36:10, 37:10, 38:4, 38:24, 39:10, 39:15, 39:24, 40:7, 40:10, 41:13, 41:18, 42:16, 42:20, 43:5, 43:6, 45:21, 45:22, 45:23, 45:25, 46:2, 46:24, 50:9, 50:14, 51:8, 52:6, 52:15, 52:18, 53:2, 53:5, 54:11, 56:21, 56:23, 57:3, 60:9,

61:3, 61:16, 62:5, 62:8, 62:24, 64:3, 64:19, 64:21, 64:24, 65:2, 65:9, 65:14, 66:13, 66:14, 67:9, 67:23, 68:20, 68:25, 69:17, 71:15, 71:23, 72:9, 72:14, 74:4, 74:8, 75:16, 76:11, 79:2, 80:19, 81:5
**Honor's** [1] - 72:1
**Honorable** [2] - 3:9, 4:2
**HONORABLE** [1] - 1:10
**hoops** [1] - 18:5
**hope** [4] - 29:5, 32:9, 65:4, 69:24
**hopeful** [1] - 28:19
**hopefully** [1] - 20:3
**hoping** [5] - 29:10, 34:3, 34:6, 65:20, 73:25
**hosting** [1] - 11:4
**hour** [3] - 71:6, 71:10, 78:20
**hours** [12] - 15:23, 48:17, 64:9, 70:12, 70:22, 70:25, 71:2, 71:4
**Huahai** [1] - 2:14
**hung** [1] - 68:13

## I

**idea** [2] - 54:7, 55:18
**identified** [3] - 4:9, 18:18, 55:9
**identify** [9] - 8:4, 10:22, 36:17, 40:25, 41:10, 48:9, 52:16, 52:19, 63:12
**identifying** [3] - 19:18, 40:22, 61:10
**image** [2] - 12:9, 12:16
**immediately** [1] - 54:22
**impact** [2] - 55:24, 64:24
**impacts** [1] - 65:19
**impair** [1] - 41:4
**imperfect** [1] - 50:4
**implemented** [1] - 9:24
**important** [4] - 20:11, 20:21, 25:8, 70:20
**impose** [5] - 48:18, 49:20, 50:6, 74:1, 80:14
**impossible** [1] - 10:10
**impressions** [2] -

28:13, 29:12
**IN** [1] - 1:4
**Inc** [4] - 2:18, 2:21, 2:22, 2:25
**include** [1] - 18:3
**included** [1] - 58:15
**incorrectly** [1] - 53:4
**incur** [1] - 13:2
**incurring** [1] - 14:7
**independent** [1] - 31:17
**indicated** [4] - 53:7, 70:9, 77:14, 77:25
**indicates** [1] - 31:8
**indication** [1] - 8:5
**indulge** [1] - 28:4, 69:25
**indulgence** [1] - 47:19
**Industries** [1] - 2:21
**inequitable** [1] - 23:25
**information** [20] - 9:23, 10:18, 27:18, 28:12, 28:15, 28:22, 28:24, 29:13, 29:22, 31:25, 36:25, 37:15, 37:20, 37:23, 39:5, 40:22, 44:1, 57:16, 57:17
**infrastructure** [1] - 12:2
**Initial** [1] - 36:23
**initial** [1] - 43:24
**initiate** [2] - 55:17, 57:17
**inquire** [1] - 25:16
**insensitive** [2] - 48:8
**instance** [2] - 50:25, 53:15
**instances** [2] - 55:12, 77:15
**instead** [2] - 51:18, 58:8
**insubstantial** [1] - 63:12
**intact** [1] - 11:24
**intend** [1] - 72:10
**intended** [1] - 50:11
**intending** [1] - 6:10
**intent** [2] - 22:21, 71:16
**interested** [1] - 65:18
**interpretations** [1] - 67:13
**interpreter** [1] - 24:5
**interrupt** [8] - 8:22, 20:14, 32:21, 33:12, 33:13, 39:23, 44:18
**investment** [1] - 12:1
**invite** [1] - 38:5
**inviting** [1] - 72:15

**involved** [2] - 16:17, 69:6
**Israel** [1] - 72:17
**issue** [85] - 4:15, 4:24, 6:6, 12:23, 13:25, 16:5, 17:20, 18:2, 18:15, 18:17, 20:6, 20:11, 21:23, 22:2, 22:3, 22:4, 22:5, 22:8, 23:1, 23:2, 23:5, 23:11, 23:12, 24:22, 25:2, 25:25, 26:14, 27:2, 27:3, 27:5, 27:6, 27:7, 27:12, 28:21, 40:13, 42:7, 43:14, 44:14, 47:2, 47:4, 47:16, 47:18, 47:20, 47:25, 48:3, 48:7, 51:1, 53:6, 57:10, 57:11, 57:12, 57:13, 58:12, 58:19, 58:24, 60:15, 60:17, 63:11, 63:25, 64:6, 64:12, 65:18, 65:19, 66:7, 66:18, 67:3, 67:14, 69:20, 69:23, 70:2, 70:19, 72:2, 72:7, 72:8, 76:7, 76:10, 76:24, 77:21, 79:5, 79:18, 79:19, 79:25
**issues** [21] - 4:6, 4:8, 4:14, 4:17, 4:18, 7:7, 10:12, 13:21, 24:12, 25:23, 26:7, 27:1, 30:21, 35:8, 45:18, 51:6, 53:7, 53:10, 63:24, 69:2, 70:6
**it'll** [1] - 20:11
**item** [1] - 26:6
**itself** [4] - 37:19, 38:25, 50:17, 68:3

## J

**January** [1] - 29:3
**JERSEY** [1] - 1:1
**Jersey** [3] - 1:8, 1:14, 3:4
**Jessica** [1] - 9:9
**JESSICA** [2] - 2:12, 2:23
**John** [3] - 40:7, 62:24, 79:3
**JOHN** [1] - 2:8
**JUDGE** [114] - 4:3, 5:9, 5:15, 5:22, 6:1, 6:9, 6:18, 6:23, 7:9, 7:25, 8:21, 9:8, 9:12, 9:21, 10:3, 10:20, 10:25, 12:8, 12:20, 13:22,

14:15, 14:22, 16:3, 18:9, 18:16, 20:4, 20:14, 20:24, 21:23, 24:1, 24:11, 25:7, 25:14, 25:24, 26:2, 26:5, 26:20, 27:4, 27:25, 28:6, 29:15, 30:2, 30:5, 31:13, 32:13, 32:20, 33:5, 33:11, 33:24, 35:1, 35:10, 35:16, 35:24, 36:2, 36:7, 36:11, 36:16, 37:12, 37:21, 37:25, 38:22, 39:3, 39:16, 40:2, 40:6, 40:9, 41:12, 42:7, 42:18, 43:4, 43:17, 43:21, 44:18, 46:1, 50:10, 52:11, 52:24, 53:3, 53:13, 56:4, 56:24, 57:5, 57:9, 58:23, 60:13, 60:24, 61:18, 62:2, 62:23, 63:14, 64:4, 64:20, 65:10, 66:3, 67:8, 67:14, 67:20, 68:12, 68:23, 69:4, 69:14, 69:18, 70:1, 71:25, 73:8, 74:12, 75:14, 76:1, 78:6, 80:2, 80:20, 80:23, 80:25, 81:4
**Judge** [25] - 6:22, 13:8, 24:10, 31:16, 43:13, 44:7, 45:3, 47:1, 47:16, 48:15, 49:18, 50:24, 52:2, 53:24, 54:6, 55:2, 57:18, 67:23, 69:16, 69:25, 70:19, 70:20, 76:5, 77:22, 81:2
**judge** [8] - 5:7, 20:12, 22:6, 22:8, 23:11, 43:15, 55:21, 76:3
**judgment** [1] - 31:17
**Judicial** [1] - 3:9
**jump** [2] - 72:14, 78:25
**jumping** [1] - 67:2
**juncture** [1] - 20:8
**jurisdiction's** [1] - 31:23
**jury** [7] - 19:14, 19:24, 20:18, 21:18, 23:5, 23:10, 23:20
**jury's** [1] - 22:16
**justification** [2] - 49:13, 54:16

## K

**KANNER** [1] - 1:19
**KATZ** [1] - 1:13
**keep** [4] - 11:24, 44:23, 68:5, 73:25
**keeps** [2] - 80:4, 80:16
**kept** [2] - 74:8, 74:11
**kind** [5] - 7:20, 10:11, 13:21, 36:12, 61:16
**kinds** [1] - 42:25
**KIRTLAND** [1] - 2:5
**knowing** [1] - 61:19
**knows** [2] - 8:8, 19:11
**Kugler** [2] - 3:9, 31:16

## L

**Labs** [3] - 3:5, 5:10, 5:12
**laid** [3] - 6:4, 14:24, 44:12
**language** [23] - 12:13, 13:3, 15:12, 15:23, 16:16, 19:7, 19:17, 20:17, 21:4, 21:7, 21:15, 22:11, 23:19, 24:3, 24:8, 24:18, 24:21, 25:1, 25:15, 25:21, 64:7, 68:1, 76:14
**languages** [2] - 8:6, 8:13
**large** [1] - 10:1
**largely** [1] - 30:6
**larger** [3] - 36:13, 40:13, 52:17
**largest** [1] - 40:13
**larry** [1] - 3:10
**Lasalle** [1] - 2:3
**last** [7] - 20:5, 28:8, 48:6, 50:1, 50:19, 54:7, 79:6
**Law** [1] - 3:9
**law** [13] - 27:5, 30:11, 30:12, 30:18, 30:22, 31:1, 31:2, 31:17, 31:18, 31:20, 31:21, 31:23, 32:2
**LAW** [1] - 2:2
**lawsuits** [1] - 57:17
**lawyer** [1] - 30:20
**lawyers** [6] - 30:24, 30:25, 51:7, 51:14, 72:6, 75:1
**Layne** [4] - 40:10, 48:17, 62:5, 64:5
**LAYNE** [1] - 1:19
**learned** [1] - 79:24
**least** [6] - 5:1, 5:3, 17:5, 17:16, 63:6,

71:4
**leave** [1] - 29:13
**left** [1] - 58:9
**legally** [1] - 19:8
**lengthy** [1] - 66:3
**less** [3] - 8:15, 17:10, 75:4
**letter** [14] - 4:23, 7:2, 7:3, 10:21, 45:14, 46:5, 46:25, 48:6, 48:11, 53:24, 66:6, 66:7, 69:2, 78:16
**letters** [1] - 65:16
**letting** [1] - 32:6
**level** [2] - 15:21, 74:7
**LIABILITY** [1] - 1:4
**liaison** [1] - 78:17
**lieu** [1] - 7:15
**light** [1] - 70:2
**lighten** [1] - 43:11
**likely** [1] - 20:8
**limit** [2] - 48:14, 50:7
**limitations** [1] - 60:10
**limited** [2] - 48:14, 49:7
**limiting** [2] - 49:8, 49:22
**Line** [3] - 28:13, 28:25, 32:11
**line** [6] - 20:11, 35:5, 74:19, 76:24, 77:9, 79:16
**lion's** [1] - 15:12
**list** [9] - 16:23, 16:24, 26:7, 26:14, 26:22, 49:11, 51:14, 51:22, 53:18
**listen** [3] - 21:18, 43:21, 78:13
**literally** [2] - 46:17, 47:7
**LITIGATION** [1] - 1:4
**litigation** [1] - 44:23
**litigations** [1] - 42:25
**live** [3] - 23:14, 47:12, 49:25
**LLC** [6] - 1:13, 1:19, 2:2, 2:14, 2:21, 2:25
**LLP** [6] - 2:5, 2:8, 2:11, 2:15, 2:19, 3:2
**local** [1] - 28:16
**located** [1] - 64:10
**LOCKARD** [4] - 2:19, 69:17, 69:19, 72:14
**Lockard** [3] - 69:17, 69:19, 75:15
**log** [1] - 27:10
**logs** [1] - 27:13
**longwinded** [1] - 55:16

**look** [16] - 8:17, 11:19, 17:11, 36:20, 45:7, 47:25, 48:10, 51:7, 51:15, 56:14, 59:22, 59:23, 60:4, 69:12, 73:3
**looked** [7] - 32:23, 41:14, 42:19, 54:6, 59:7, 59:8, 63:7
**looking** [20] - 6:12, 14:13, 15:4, 21:2, 34:4, 37:11, 37:19, 39:1, 40:3, 40:19, 45:4, 53:10, 59:2, 61:5, 61:23, 64:17, 66:1, 73:12, 73:15, 73:16
**looks** [4] - 14:12, 37:13, 39:18, 59:4
**Loretta** [1] - 3:9
**loud** [2] - 59:11, 60:3
**Louisiana** [1] - 1:20
**love** [1] - 33:5
**lower** [1] - 12:25
**Ltd** [2] - 2:14, 2:21
**luxury** [1] - 50:2

## M

**machine** [18] - 5:3, 6:25, 7:11, 8:16, 8:25, 9:17, 9:23, 10:2, 11:6, 13:9, 14:3, 14:8, 14:14, 16:10, 16:11, 17:2, 21:9, 21:11
**MacStravic** [1] - 3:10
**majority** [2] - 51:13, 55:13
**manageable** [2] - 55:19, 60:19
**management** [1] - 37:6
**Mandarin** [18] - 4:16, 4:20, 5:2, 5:4, 8:3, 8:7, 8:8, 8:9, 10:15, 11:12, 19:21, 20:17, 21:11, 22:11, 22:18, 23:8, 64:7, 64:16
**Mandarin-speaking** [1] - 8:7
**manner** [6] - 17:1, 34:20, 35:11, 38:6, 56:8, 62:21
**manpower** [1] - 15:20
**manual** [1] - 14:9
**manually** [1] - 14:6
**manufacturing** [3] - 37:4, 38:7, 39:22
**marginal** [1] - 33:20
**marginally** [1] - 58:20

**Market** [1] - 1:17
**Marlene** [1] - 65:14
**MARLENE** [1] - 2:2
**MASTER** [1] - 1:10
**Master** [4] - 4:2, 4:5, 54:11, 54:21
**matter** [13] - 4:9, 6:19, 16:15, 32:6, 37:2, 44:11, 56:19, 58:9, 59:5, 59:7, 62:14, 64:9, 81:10
**matters** [3] - 6:12, 32:4, 61:13
**MAZIE** [1] - 1:13
**MDL2875** [1] - 36:20
**mean** [10] - 23:1, 26:13, 33:11, 38:24, 51:19, 52:7, 65:1, 68:5, 76:9, 77:9
**meaningful** [1] - 33:17
**means** [1] - 33:25
**mechanical** [1] - 1:24
**mechanism** [3] - 52:6, 52:10, 52:11
**meet** [12] - 27:15, 27:16, 27:17, 27:20, 28:3, 32:17, 47:18, 49:13, 50:4, 52:5, 58:4, 59:14
**meet-and-confer** [1] - 52:5
**mention** [2] - 58:6, 62:7
**mentioned** [2] - 4:5, 58:5
**Meridan** [1] - 63:25
**met** [1] - 33:1
**midpoint** [1] - 29:11
**might** [2] - 10:16, 70:3
**million** [1] - 44:12
**millions** [2] - 44:12, 44:13
**mimics** [1] - 14:5
**minimum** [1] - 70:23
**Minneapolis** [1] - 2:3
**Minnesota** [1] - 2:3
**minute** [4] - 12:15, 74:16, 74:17, 74:19
**minutes** [9] - 69:25, 73:12, 73:14, 73:24, 74:22, 75:11, 79:12, 79:23
**misstate** [1] - 51:4
**misunderstanding** [1] - 78:22
**Mitchell** [1] - 1:7
**modification** [1] - 68:3
**modify** [1] - 67:22
**moment** [3] - 47:4, 76:18, 77:7

**Monday** [6] - 56:16, 61:1, 61:15, 62:3, 75:1, 76:15
**money** [1] - 51:7
**monograph** [3] - 72:25, 73:22, 73:23
**month** [1] - 66:1
**months** [2] - 44:8, 45:20
**morning** [3] - 11:1, 40:17, 73:6
**MORRIS** [1] - 2:11
**most** [5] - 11:9, 12:11, 12:18, 31:11, 52:20
**motion** [13] - 6:14, 15:8, 27:8, 27:9, 29:25, 30:5, 30:10, 33:9, 33:21, 42:8, 66:23, 67:2, 68:10
**move** [6] - 27:24, 45:19, 53:10, 56:8, 59:17, 60:22
**moving** [3] - 65:23, 70:3, 77:9
**MR** [148] - 5:7, 5:10, 5:24, 5:25, 6:2, 6:17, 6:20, 7:2, 7:10, 8:20, 8:22, 9:6, 9:13, 9:22, 10:4, 10:24, 11:1, 12:11, 12:21, 13:24, 14:21, 14:23, 17:21, 18:11, 18:17, 20:5, 20:13, 20:20, 21:6, 22:1, 22:10, 22:23, 22:24, 23:1, 23:9, 23:10, 23:12, 24:9, 25:6, 25:8, 25:22, 26:3, 26:4, 26:13, 26:23, 27:6, 28:1, 28:7, 29:16, 30:4, 30:13, 30:14, 32:8, 32:15, 32:25, 33:10, 33:13, 34:25, 35:2, 35:12, 35:21, 36:1, 36:3, 36:10, 36:12, 37:10, 37:13, 37:22, 38:4, 38:24, 39:4, 39:7, 39:15, 39:24, 39:25, 40:4, 40:7, 41:13, 42:16, 42:17, 42:19, 43:5, 43:6, 43:8, 43:10, 43:12, 43:13, 43:19, 43:23, 44:17, 44:20, 45:22, 45:23, 45:24, 46:2, 50:14, 52:6, 52:15, 53:1, 53:2, 53:4, 53:14, 53:23, 55:21, 56:21, 56:23, 57:3, 57:6, 57:10, 60:9,

60:14, 60:25, 61:3, 62:1, 62:24, 64:19, 64:21, 69:16, 69:23, 70:2, 71:23, 72:1, 74:4, 74:13, 75:16, 75:18, 76:2, 76:3, 76:4, 76:5, 76:6, 76:11, 77:13, 77:18, 77:20, 78:2, 78:3, 78:5, 78:9, 78:13, 78:15, 78:16, 79:2, 80:19, 80:22, 80:24, 81:2, 81:5

**MS** [19] - 5:19, 9:11, 40:10, 62:5, 64:3, 64:5, 65:6, 65:14, 66:8, 66:13, 67:9, 67:16, 67:23, 68:19, 68:25, 69:8, 69:17, 69:19, 72:14
**multiple** [1] - 11:3
**musing** [1] - 60:3
**must** [1] - 68:10
**mute** [2] - 9:6, 9:9
**Mylan** [23] - 2:18, 34:1, 35:14, 36:14, 36:23, 38:6, 39:6, 39:13, 40:14, 42:22, 47:14, 47:24, 48:4, 48:25, 49:11, 50:18, 51:14, 51:20, 51:21, 53:6, 53:15, 56:25, 61:8

## N

**NAKUL** [1] - 3:3
**name** [2] - 40:19, 40:22
**narrow** [6] - 15:17, 27:13, 31:11, 33:4, 43:15, 46:14
**narrowed** [2] - 27:7, 27:14
**native** [4] - 24:21, 25:1, 25:15, 25:21
**nature** [5] - 7:6, 9:20, 11:7, 30:7, 37:17
**NE** [1] - 2:20
**necessarily** [1] - 31:20
**necessary** [5] - 5:16, 8:1, 36:18, 60:2, 69:3
**need** [24] - 7:19, 8:11, 15:16, 15:25, 16:23, 19:2, 23:7, 27:24, 34:16, 47:18, 50:11, 57:2, 63:20, 69:5, 69:9, 69:11, 70:8, 73:1, 73:9, 73:17, 75:12, 76:17, 77:4,

77:7
**needed** [3] - 18:24, 19:1, 46:16
**needles** [1] - 35:21
**needs** [3] - 45:10, 64:1, 76:24
**negotiated** [2] - 56:19, 57:6
**negotiating** [2] - 50:20, 57:19
**neutral** [1] - 31:22
**never** [7] - 9:17, 15:13, 19:1, 58:12, 72:23, 73:4, 74:20
**NEW** [1] - 1:1
**New** [4] - 1:8, 1:14, 1:20, 3:4
**next** [4] - 26:6, 56:15, 62:18, 78:13
**nice** [1] - 81:2
**night** [2] - 75:1, 76:15
**nine** [1] - 78:20
**nine-hour** [1] - 78:20
**nobody** [2] - 33:25, 78:21
**nobody's** [1] - 32:5
**nonresponsive** [10] - 4:10, 34:2, 34:12, 42:13, 44:9, 45:1, 57:1, 57:10, 59:4, 59:16
**note** [2] - 67:9, 69:8
**noted** [1] - 47:14
**nothing** [7] - 17:15, 26:4, 30:9, 32:19, 46:11, 46:18, 59:9
**notice** [2] - 69:6, 72:6
**November** [1] - 47:9, 47:12, 50:19
**NUMBER** [1] - 1:3
**number** [18] - 35:18, 36:15, 36:18, 40:8, 41:17, 42:20, 48:14, 48:21, 49:6, 49:7, 50:21, 50:23, 51:4, 52:17, 54:14, 63:7, 73:14, 73:21
**Number** [2] - 36:20, 54:17
**numbers** [2] - 61:18, 61:19

## O

**oath** [1] - 54:9
**object** [3] - 7:13, 7:19, 11:22
**objection** [6] - 7:21, 7:22, 11:21, 16:7, 16:9, 16:17
**objections** [1] - 17:5

**obligation** [1] - 18:20
**observations** [1] - 35:9
**observed** [1] - 40:17
**obvious** [1] - 38:6
**obviously** [4] - 7:6, 20:20, 36:13, 50:16
**occur** [1] - 38:10
**occurring** [1] - 79:20
**occurs** [1] - 49:15
**OCR** [1] - 12:17
**October** [1] - 66:20
**OF** [1] - 1:1
**offered** [1] - 63:17
**office** [1] - 65:25
**Official** [1] - 1:22
**official** [1] - 19:5
**often** [3] - 19:18, 21:13, 41:25
**oftentimes** [1] - 41:20
**on-the-record** [1] - 27:15
**One** [2] - 2:17, 47:22
**one** [40] - 4:5, 6:2, 11:25, 12:22, 15:8, 17:23, 18:21, 19:9, 20:5, 22:16, 25:6, 28:4, 28:17, 31:19, 32:15, 33:14, 33:19, 37:3, 38:13, 41:15, 41:18, 41:19, 50:22, 54:6, 54:25, 58:1, 60:16, 62:7, 62:25, 63:22, 64:7, 66:10, 69:19, 69:24, 71:10, 71:19, 75:2, 75:18, 77:1, 79:15
**one's** [1] - 31:13
**one-day** [1] - 71:19
**ones** [3] - 30:25, 58:21, 58:22
**open** [2] - 9:7, 60:14
**operating** [13] - 37:14, 38:9, 38:18, 38:25, 39:11, 40:14, 40:16, 40:18, 40:21, 41:1, 41:7, 41:9, 41:10
**operative** [3] - 18:23, 19:14, 25:12
**opine** [1] - 31:1
**opinion** [4] - 31:14, 31:19, 31:22, 43:1
**opinions** [2] - 29:13, 32:3
**opportunity** [4] - 8:17, 56:4, 61:7, 64:13
**opposed** [3] - 20:18, 56:20, 78:19
**opposing** [1] - 49:11
**optional** [1] - 67:25

**order** [17] - 8:1, 14:9, 36:3, 36:5, 36:19, 40:25, 45:6, 45:12, 45:16, 50:18, 50:19, 55:10, 56:9, 56:13, 65:8, 68:14, 69:4
**Order** [1] - 4:5
**ordered** [2] - 32:5, 56:18
**orders** [1] - 45:19
**ordinary** [2] - 18:24, 25:10
**original** [3] - 13:4, 14:5, 57:6
**Orleans** [1] - 1:20
**otherwise** [6] - 58:6, 58:13, 58:14, 69:11, 77:8, 80:16
**ought** [3] - 44:6, 45:4, 45:18
**outlined** [1] - 55:23
**outset** [1] - 48:7
**outstanding** [1] - 26:7
**over-designated** [1] - 15:9
**overarching** [1] - 35:8
**overriding** [1] - 14:16
**own** [3] - 11:8, 21:14, 76:14
**Oxford** [1] - 2:17

## P

**P.C** [2] - 1:16, 2:23
**p.m** [4] - 1:9, 4:2, 73:7, 81:6
**Pacific** [1] - 2:6
**PACKARD** [1] - 2:5
**Page** [5] - 28:7, 28:14, 28:25, 32:11, 47:21
**page** [6] - 11:15, 37:4, 58:1, 73:22, 73:24
**pages** [10] - 8:15, 17:10, 17:13, 17:14, 36:23, 57:25, 64:18, 80:6, 80:7
**papers** [1] - 65:23
**paraphrasing** [1] - 28:20
**pare** [1] - 40:23
**PAREKH** [8] - 2:5, 5:25, 11:1, 12:11, 13:24, 57:3, 57:6, 57:10
**Parekh** [12] - 5:20, 10:5, 10:17, 10:20, 10:25, 12:8, 13:22, 46:7, 46:9, 46:13, 46:22, 57:3
**Parkway** [2] - 1:14, 2:24

**part** [9] - 12:19, 14:24, 21:9, 41:25, 43:13, 43:14, 62:15, 64:16, 77:23
**participate** [2] - 5:12, 76:12
**particular** [13] - 10:22, 16:5, 26:25, 31:23, 33:1, 35:6, 35:7, 36:19, 37:1, 58:16, 59:5, 66:7, 71:9
**particularly** [3] - 11:3, 12:12, 61:8
**parties** [5] - 44:10, 66:18, 68:2, 70:3, 70:10
**parties'** [1] - 26:24
**parts** [2] - 35:2, 80:15
**party** [1] - 72:21
**past** [1] - 53:10
**path** [2] - 63:17, 63:18
**pathway** [1] - 72:10
**pay** [1] - 13:10
**pdf** [3] - 12:12, 12:13
**Pedano** [2] - 1:22, 81:12
**pejoratively** [1] - 23:14
**pencils** [1] - 48:16
**pending** [1] - 15:9
**Peng** [1] - 74:24
**pennies** [1] - 9:25
**Pennsylvania** [4] - 1:17, 2:13, 2:17, 2:24
**people** [1] - 38:16
**per** [3] - 50:8, 51:2, 51:19
**percent** [1] - 34:15, 51:9, 51:11
**perfect** [3] - 6:17, 49:25, 50:3
**perfectly** [2] - 12:5, 17:3
**performed** [1] - 38:7
**perhaps** [4] - 16:22, 29:7, 63:21, 65:22
**period** [1] - 51:23
**personal** [1] - 56:3
**personally** [2] - 5:16, 63:7
**perspective** [6] - 19:6, 20:25, 34:10, 34:11, 35:20, 55:22
**perspectives** [1] - 26:11
**pertaining** [1] - 20:7
**PFC** [1] - 70:7
**Pharma** [3] - 2:22, 2:25, 2:25

**Pharmaceutical** [1] - 2:21
**Pharmaceuticals** [4] - 2:13, 2:14, 2:18, 2:21
**pharmacovigilance** [1] - 37:5
**Philadelphia** [2] - 1:17, 2:13
**phone** [3] - 9:6, 9:7, 78:25
**Piedmont** [1] - 2:20
**PIETRAGALLO** [1] - 2:15
**pin** [1] - 35:22
**Pittsburgh** [1] - 2:17
**place** [4] - 46:19, 54:3, 70:18, 79:6
**placing** [1] - 22:17
**plaintiff** [8] - 8:8, 8:24, 47:23, 50:21, 50:25, 59:12, 59:17, 77:2
**plaintiffs** [43] - 5:15, 5:18, 7:15, 13:1, 13:5, 13:11, 14:18, 27:1, 27:9, 27:18, 27:20, 27:23, 29:24, 33:21, 36:7, 39:5, 40:11, 40:23, 41:8, 44:2, 49:23, 51:4, 51:18, 51:21, 53:7, 54:14, 57:15, 61:1, 62:6, 62:10, 62:24, 64:5, 65:15, 66:21, 66:25, 68:10, 70:12, 70:14, 70:17, 70:22, 77:1, 77:15, 78:17
**Plaintiffs** [6] - 1:15, 1:18, 1:21, 2:4, 2:7, 2:10
**plaintiffs'** [6] - 34:10, 35:19, 52:16, 67:24, 78:23, 80:17
**planning** [1] - 69:20
**play** [1] - 23:16
**plenty** [1] - 31:20
**point** [16] - 4:7, 6:5, 12:22, 21:15, 27:3, 27:7, 27:23, 29:6, 29:14, 29:24, 29:25, 39:10, 42:15, 62:10, 72:13, 75:8
**pointed** [2] - 35:16, 55:4
**pool** [1] - 52:17
**populated** [3] - 37:15, 39:4, 39:11
**portions** [1] - 23:16
**position** [7] - 6:4, 37:22, 66:17, 66:25,

67:22, 67:24, 80:9
**possible** [1] - 11:25
**possibly** [1] - 19:10
**potential** [1] - 48:18
**potentially** [4] - 23:23, 34:5, 57:16, 62:20
**practical** [2] - 46:23, 52:22
**practice** [2] - 42:25, 79:15
**precedent** [1] - 31:7
**precisely** [2] - 49:18, 50:24
**preclude** [1] - 33:25
**prejudice** [3] - 21:4, 23:23, 49:23
**prejudiced** [4] - 20:16, 20:23, 20:25, 22:8
**prejudicing** [1] - 68:23
**premature** [2] - 20:7, 47:17
**prep** [1] - 15:24
**preparation** [1] - 49:23
**prepared** [2] - 36:12, 54:2
**PRESENT** [1] - 3:8
**present** [2] - 5:2, 43:15
**presented** [4] - 4:24, 6:13, 49:17, 60:17
**presenting** [1] - 5:4
**presently** [1] - 48:25
**preserve** [1] - 17:4
**preserved** [2] - 16:7, 16:17
**presiding** [1] - 20:9
**pressant** [1] - 47:3
**pressing** [1] - 26:15
**presumably** [2] - 23:6, 24:24
**prevent** [1] - 54:8
**preview** [1] - 63:11
**primarily** [1] - 58:5
**Princeton** [1] - 3:4
**Prinston** [1] - 2:13
**prioritization** [3] - 4:8, 6:12, 52:21
**prioritizing** [1] - 48:22
**priority** [5] - 16:23, 16:24, 26:7, 26:22, 26:25
**PRISELAC** [1] - 2:12
**privileged** [1] - 34:20
**problem** [7] - 11:13, 14:18, 15:10, 34:22, 35:19, 44:20, 45:3, 49:15, 54:1, 66:16, 74:9, 76:22, 76:23, 76:25, 77:13, 77:19,

78:17
**procedural** [1] - 5:7
**procedure** [7] - 37:14, 38:9, 38:18, 38:25, 39:11, 41:9, 49:9
**procedures** [8] - 40:14, 40:16, 40:18, 40:21, 41:1, 41:8, 41:11, 67:15
**proceed** [2] - 34:20, 45:19
**proceeded** [1] - 62:15
**proceeding** [2] - 35:11, 71:12
**proceedings** [2] - 81:6, 81:10
**PROCEEDINGS** [1] - 4:1
**Proceedings** [1] - 1:24
**process** [14] - 29:17, 40:23, 42:3, 52:5, 54:12, 55:2, 55:17, 62:11, 62:13, 62:22, 63:20, 65:24, 66:4, 68:13
**processes** [1] - 37:18
**produce** [6] - 10:16, 11:11, 42:3, 45:1, 49:14, 53:21
**produced** [25] - 1:25, 8:6, 11:8, 13:19, 16:14, 18:4, 18:12, 18:13, 29:9, 29:22, 30:7, 41:15, 41:16, 42:2, 42:22, 44:6, 44:7, 44:10, 51:11, 54:9, 55:15, 57:2, 58:14, 59:2, 59:16
**product** [3] - 37:16, 38:14, 58:18
**production** [7] - 18:1, 30:6, 42:9, 49:15, 50:19, 53:10, 54:19
**PRODUCTS** [1] - 1:4
**products** [8] - 37:18, 57:13, 57:16, 57:21, 57:22, 58:5, 58:9, 59:9
**professional** [1] - 79:9
**programs** [1] - 59:9
**project** [1] - 16:1
**prolong** [3] - 60:11, 71:18, 78:11
**prolongs** [1] - 72:22
**proper** [4] - 66:22, 67:1, 67:6, 68:8
**properly** [1] - 37:24
**proportionality** [2] - 44:11, 60:16
**proportionate** [1] -

51:16
**proposal** [7] - 53:21, 53:23, 55:24, 56:2, 56:16, 60:20, 61:16
**propose** [2] - 48:5, 49:21
**proposed** [4] - 9:1, 48:14, 50:5, 54:12
**proposing** [5] - 48:11, 48:20, 48:25, 52:12, 52:21
**proprietary** [4] - 9:16, 9:24, 10:13, 11:9
**protection** [1] - 21:19
**protocol** [21] - 38:17, 45:6, 51:2, 51:24, 57:1, 57:6, 57:19, 66:18, 66:22, 66:23, 66:24, 67:1, 67:10, 67:12, 67:21, 67:22, 67:25, 68:3, 68:9, 68:10, 71:8
**protocols** [5] - 42:24, 44:3, 45:12, 45:13, 45:14
**provide** [9] - 10:17, 12:9, 43:3, 49:10, 49:13, 53:20, 54:16, 61:8, 71:15
**provided** [12] - 9:22, 25:9, 25:14, 27:11, 27:17, 28:4, 28:15, 33:15, 38:2, 51:12, 56:5
**pulled** [2] - 35:17, 37:10
**pulling** [1] - 15:23
**purpose** [1] - 5:4
**purposes** [6] - 4:4, 13:20, 31:17, 34:4, 34:14, 39:19
**pursuant** [1] - 31:7
**push** [1] - 56:14
**put** [12] - 16:24, 22:22, 29:14, 38:15, 39:12, 65:7, 68:7, 68:8, 69:10, 71:21, 75:10, 77:6
**puts** [1] - 52:19
**putting** [2] - 15:25, 18:4

---

**Q**

**QA** [1] - 38:16
**qualified** [1] - 68:1
**qualify** [1] - 67:17
**questioned** [1] - 21:17
**questioning** [3] - 19:25, 21:8, 22:12
**questions** [11] - 4:24,

4:25, 13:17, 17:7, 23:3, 31:21, 35:3, 35:7, 38:11, 68:21, 71:6
**quick** [1] - 66:13
**quickly** [1] - 50:15
**quite** [2] - 21:13, 41:19
**quote** [1] - 47:21
**quoted** [1] - 47:1

---

**R**

**raise** [6] - 13:17, 18:2, 21:20, 64:8, 69:23, 72:7
**raised** [13] - 10:13, 14:19, 17:23, 21:23, 22:2, 24:11, 24:22, 25:2, 27:1, 50:25, 72:12, 77:21, 79:19
**raising** [3] - 22:8, 45:18, 51:5
**RANDOLPH** [1] - 2:8
**random** [6] - 4:11, 34:8, 35:4, 35:17, 36:8, 52:14
**RASPANTI** [1] - 2:15
**rather** [4] - 56:19, 61:22, 67:2, 68:7
**RE** [1] - 1:4
**re** [4] - 44:14, 51:3, 54:9, 60:18
**re-call** [1] - 54:9
**re-review** [2] - 51:3, 60:18
**re-reviewed** [1] - 44:14
**reach** [1] - 46:18
**reached** [2] - 46:13, 57:20
**read** [15] - 21:18, 23:4, 23:7, 32:10, 46:18, 47:19, 65:3, 71:13, 72:3, 72:4, 72:18, 76:18, 76:19, 77:7, 79:15
**reader** [1] - 64:11
**reading** [2] - 32:11, 76:14
**reads** [1] - 65:1
**ready** [4] - 27:8, 72:5, 74:14, 76:20
**real** [5] - 6:5, 66:13, 74:18
**reality** [2] - 71:7, 71:9
**realize** [2] - 43:20, 60:1
**realized** [2] - 8:23, 57:25
**really** [11] - 12:23,

15:16, 18:20, 28:22, 39:16, 41:2, 47:3, 47:10, 57:11, 65:2
**reason** [6] - 38:19, 49:3, 72:15, 73:9, 73:18, 77:22
**reasonable** [13] - 10:11, 15:14, 18:8, 18:9, 22:22, 29:11, 52:1, 53:9, 55:23, 56:11, 73:19, 73:20, 78:22
**reasons** [1] - 33:15
**receive** [2] - 62:14, 62:21
**received** [2] - 4:23, 59:12
**recently** [1] - 59:8
**recognized** [1] - 31:21
**recollection** [1] - 75:19
**recommendation** [1] - 31:15
**reconstitute** [1] - 15:21
**record** [35] - 17:22, 19:11, 21:20, 21:24, 22:13, 22:17, 22:20, 22:24, 27:15, 29:17, 32:10, 36:4, 50:16, 65:7, 68:8, 69:10, 70:10, 70:17, 70:18, 71:3, 71:12, 72:18, 72:24, 74:11, 75:20, 75:21, 75:25, 76:4, 77:17, 78:10, 79:4, 79:13, 79:17, 79:22, 81:10
**recorded** [1] - 1:24
**records** [1] - 37:6
**red** [1] - 6:5
**redact** [2] - 29:11, 31:4
**redacted** [9] - 28:16, 29:9, 31:4, 31:6, 46:17, 46:19, 46:20, 57:24, 58:8
**redacting** [1] - 57:25
**redaction** [2] - 46:16
**redactions** [2] - 30:8, 33:8
**Redondo** [1] - 2:6
**reduce** [3] - 8:1, 53:25, 60:19
**reducing** [1] - 51:25
**referred** [2] - 50:23, 79:3
**referring** [2] - 41:17, 46:11
**refers** [1] - 29:21

**reflects** [1] - 29:17
**reframe** [1] - 36:13
**regarded** [1] - 42:13
**regarding** [2] - 30:16, 57:8
**regulation** [1] - 19:6, 24:15
**regulatory** [1] - 15:13
**relate** [2] - 40:18, 49:2
**related** [9] - 19:5, 37:6, 37:14, 57:13, 57:21, 58:5, 58:18, 58:22, 61:11
**relegated** [1] - 49:1
**relevance** [2] - 43:25, 59:24
**relevant** [14] - 34:22, 38:14, 38:20, 41:16, 42:1, 42:5, 42:9, 51:23, 55:9, 58:13, 58:20, 58:21, 59:19
**relying** [1] - 32:1
**remaining** [1] - 54:19
**remains** [1] - 47:13
**remember** [3] - 49:3, 51:3, 79:8
**REMOTE** [1] - 1:6
**remote** [1] - 4:1
**repeat** [1] - 42:21
**reply** [1] - 56:15
**report** [3] - 56:5, 61:1
**Reporter** [1] - 1:22
**Reporter/ Transcriber** [1] - 81:12
**represent** [1] - 5:10
**representative** [1] - 48:2
**representatives** [2] - 70:15, 70:24
**represented** [2] - 18:13, 30:19
**representing** [1] - 18:14
**request** [5] - 42:8, 42:13, 57:23, 58:7, 58:17
**requests** [1] - 62:9
**require** [3] - 22:11, 47:23, 47:24
**required** [3] - 24:17, 44:25, 72:17
**requirement** [1] - 74:2
**requires** [1] - 30:22
**research** [2] - 7:4, 11:25
**reserve** [2] - 7:19, 69:10
**reserved** [1] - 16:9
**reserving** [1] - 7:12

**resolve** [1] - 63:25
**resolved** [6] - 6:10, 6:14, 20:12, 22:3, 65:23, 68:16
**respect** [20] - 16:8, 16:18, 17:9, 17:18, 24:14, 24:22, 27:3, 27:5, 31:18, 34:4, 35:8, 37:18, 39:6, 47:14, 51:6, 63:24, 70:20, 74:5, 75:19, 77:13
**respond** [2] - 45:23, 69:9
**response** [3] - 10:18, 26:1, 29:3
**responses** [1] - 35:15
**responsive** [26] - 34:5, 34:6, 34:11, 34:13, 34:14, 34:16, 37:24, 38:3, 38:15, 41:16, 42:6, 42:22, 43:1, 43:2, 44:9, 45:2, 45:16, 54:17, 54:22, 55:10, 57:23, 58:7, 58:17, 59:25, 60:5
**responsiveness** [4] - 45:8, 49:10, 53:19, 54:21
**rest** [1] - 68:19
**restricted** [1] - 13:18
**result** [1] - 8:11
**resuming** [1] - 53:16
**resumé** [1] - 64:17
**retained** [1] - 30:20
**retrospectively** [1] - 74:21
**review** [29] - 4:11, 11:4, 15:24, 24:6, 33:16, 34:16, 34:18, 44:15, 45:17, 50:3, 50:6, 51:3, 53:19, 54:21, 60:18, 62:9, 62:17, 63:18, 70:17, 71:5, 71:13, 73:25, 74:10, 75:4, 77:4, 80:5, 80:12, 80:15
**reviewed** [4] - 31:5, 44:14, 51:14
**reviewers** [1] - 51:10
**reviewing** [5] - 15:24, 30:17, 79:13, 79:23
**revise** [1] - 66:23
**revisit** [2] - 54:5, 76:23
**rewrite** [2] - 44:3
**ripe** [6] - 4:6, 6:12, 6:13, 26:8, 27:2, 47:17
**Risk** [1] - 36:23

**risk** [8] - 37:7, 38:7, 38:11, 38:13, 38:17, 39:8, 39:12, 39:19
**risks** [1] - 38:18
**RMR** [1] - 81:12
**road** [1] - 7:21
**Road** [2] - 2:9, 2:20, 3:4
**Robert** [1] - 3:9
**roll** [1] - 20:22
**Roseland** [1] - 1:14
**Roszel** [1] - 3:4
**route** [2] - 5:5, 7:23
**RPR** [1] - 81:12
**Ruben** [3] - 43:11, 53:5, 53:22
**RUBEN** [1] - 1:16
**Rule** [4] - 67:17, 67:24, 68:1
**rule** [8] - 7:20, 68:4, 73:9, 73:18, 74:19, 77:22, 80:11, 80:13
**ruled** [5] - 72:2, 72:9, 72:11, 74:4, 77:10
**rules** [1] - 80:8
**ruling** [10] - 16:23, 20:7, 20:9, 65:2, 75:7, 75:12, 75:19, 75:20, 75:23, 78:1
**ruling's** [1] - 75:8
**rulings** [1] - 22:15
**run** [1] - 11:9
**running** [3] - 73:25, 80:4, 80:16

### S

**sample** [9] - 4:11, 4:13, 34:8, 35:18, 36:4, 48:19, 52:14, 52:19, 61:17
**sampled** [1] - 36:15
**sampling** [3] - 35:4, 36:9
**sanctions** [4] - 30:9, 30:16, 31:9, 32:5
**satisfied** [2] - 4:12, 54:18
**save** [1] - 60:23
**saw** [3] - 65:16, 66:6, 66:7
**scanned** [2] - 12:9, 12:16
**schedule** [2] - 67:4, 70:21
**scheduled** [3] - 4:4, 7:18, 65:20
**schedules** [1] - 69:5
**scheduling** [1] - 69:13
**Schneider** [7] - 47:2, 47:16, 48:15, 49:19,

50:24, 57:18, 70:20
**Schneider's** [1] - 54:6
**scope** [3] - 7:7, 30:10, 51:25
**screen** [5] - 14:12, 19:12, 19:16, 21:17, 22:17
**search** [3] - 40:24, 40:25, 50:21
**searchable** [2] - 12:12, 12:13
**searching** [1] - 41:10
**seasoned** [1] - 79:9
**second** [5] - 18:2, 18:17, 18:22, 28:4, 51:8
**seconds** [4] - 73:16, 74:16, 74:17, 74:19
**secret** [5] - 27:10, 27:12, 28:10, 30:11, 31:18
**secrets** [1] - 27:5
**security** [7] - 13:17, 13:21, 13:23, 13:24, 14:16, 14:19, 15:7
**see** [34] - 4:7, 8:1, 9:25, 14:15, 17:7, 17:12, 19:15, 20:9, 20:24, 21:14, 22:16, 24:20, 27:11, 28:21, 29:14, 33:3, 33:5, 33:16, 39:1, 43:8, 46:5, 55:12, 56:1, 56:19, 59:24, 59:25, 60:21, 61:23, 62:9, 62:18, 63:10, 63:17, 78:9, 80:13
**seeing** [2] - 21:4, 40:3
**seek** [1] - 77:21
**seem** [1] - 18:7
**selecting** [1] - 49:6
**selective** [1] - 42:3
**selectively** [1] - 47:1
**send** [5] - 26:18, 66:10, 68:14, 69:4, 78:16
**sends** [2] - 12:14, 45:14
**sense** [13] - 23:21, 46:22, 50:5, 56:2, 56:3, 58:3, 59:22, 60:6, 60:10, 61:4, 61:9, 76:6, 76:7
**sensitized** [1] - 59:7
**sent** [5] - 18:21, 34:8, 51:21, 54:20, 55:14
**sentences** [1] - 47:19
**Sentry** [1] - 2:24
**separate** [2] - 21:12, 26:18

**September** [3] - 44:8, 44:25, 46:6
**series** [1] - 11:14
**serious** [3] - 32:6, 47:18, 56:12
**served** [1] - 75:4
**server's** [1] - 65:24
**service** [2] - 67:14, 67:17
**session** [1] - 68:14
**set** [5] - 31:7, 31:11, 51:12, 51:15, 53:23
**SETH** [1] - 2:11
**Seth** [3] - 64:21, 64:22, 75:16
**seven** [7] - 44:8, 64:18, 70:11, 70:22, 70:25, 71:2, 71:10
**seven-hour** [1] - 71:10
**several** [3] - 70:24, 80:6, 80:7
**shadows** [1] - 43:9
**SHAH** [1] - 3:3
**share** [1] - 15:12
**sharing** [1] - 14:13
**sharpen** [1] - 48:16
**sheet** [1] - 46:19
**sheeted** [1] - 58:8
**short** [8] - 30:24, 31:13, 31:19, 35:18, 35:25, 36:6, 51:23, 79:10
**shorten** [1] - 54:24
**shortly** [1] - 66:8
**show** [6] - 14:11, 14:17, 19:24, 21:10, 21:16, 23:5
**shown** [4] - 23:7, 70:15, 72:25, 73:11
**shrift** [3] - 30:24, 31:13, 31:19
**side** [7] - 16:1, 17:5, 49:11, 52:16, 60:16, 64:2, 74:6
**sides** [2] - 63:22, 80:10
**significant** [4] - 12:1, 23:23, 64:14, 73:1
**similar** [2] - 11:11, 14:2
**simple** [1] - 9:14
**simply** [10] - 9:4, 9:18, 14:6, 31:4, 46:19, 48:9, 54:20, 58:12, 58:15, 78:9
**single** [4] - 22:15, 44:6, 79:16, 79:18
**singular** [1] - 46:14
**sit** [1] - 50:2
**site** [1] - 75:24

**sitting** [3] - 18:5, 19:14, 80:9
**situation** [1] - 78:9
**six** [5] - 36:23, 45:20, 51:9, 51:11, 66:1
**size** [2] - 4:12, 35:18
**skin** [1] - 13:6
**SLACK** [1] - 2:8
**SLATER** [49] - 1:13, 1:13, 5:24, 6:2, 6:17, 7:2, 9:6, 10:4, 14:21, 14:23, 17:21, 18:17, 20:13, 20:20, 21:6, 22:10, 22:24, 23:9, 23:12, 24:9, 25:6, 25:8, 25:22, 26:3, 26:13, 28:1, 28:7, 30:4, 30:13, 32:8, 32:15, 32:25, 33:10, 71:23, 72:1, 74:4, 74:13, 76:3, 76:5, 76:11, 77:18, 78:2, 78:5, 78:13, 78:16, 80:19, 80:22, 80:24, 81:2
**Slater** [27] - 5:6, 5:24, 6:24, 9:21, 10:3, 14:22, 17:21, 20:15, 20:19, 22:2, 22:4, 22:7, 26:7, 27:18, 27:25, 29:21, 30:3, 30:19, 31:3, 32:8, 71:23, 71:25, 74:3, 76:11, 77:14, 78:6, 80:11
**slip** [2] - 46:19, 58:8
**slow** [1] - 71:12
**small** [2] - 22:10, 70:19
**Smith** [1] - 3:9
**Snider** [6] - 79:6, 79:7, 79:10, 79:11, 79:12, 79:22
**so-called** [1] - 46:10
**software** [3] - 9:16, 9:24, 10:13
**solace** [1] - 22:10
**Solco** [1] - 2:14
**solely** [2] - 57:21, 57:22
**solution** [5] - 24:9, 61:8, 62:16, 63:21, 63:22
**solve** [1] - 26:16
**solved** [2] - 74:9, 77:19
**someone** [3] - 65:24, 75:7, 78:25
**sometime** [1] - 53:17
**sometimes** [2] - 11:15

**somewhat** [1] - 41:2
**somewhere** [1] - 20:10
**soon** [2] - 65:20, 70:16
**sorry** [14] - 5:25, 6:9, 8:22, 19:23, 20:1, 20:14, 33:14, 40:2, 43:6, 43:10, 44:17, 76:2
**sort** [5] - 40:21, 41:22, 59:20, 59:21, 64:12
**sound** [1] - 70:19
**sounded** [1] - 52:24
**sounds** [7] - 15:1, 18:9, 52:1, 52:3, 52:4, 65:17
**South** [2] - 2:6, 2:12
**SPEAKER** [1] - 9:9
**speaking** [6] - 8:7, 51:21, 69:12, 70:15, 70:16, 76:8
**SPECIAL** [1] - 1:10
**Special** [4] - 4:2, 4:5, 54:11, 54:20
**specific** [6] - 12:4, 16:9, 35:3, 37:18, 45:5, 49:7
**specifically** [3] - 10:18, 46:7, 58:18
**spend** [2] - 48:17, 73:16
**spent** [3] - 44:12, 51:7, 79:22
**spoken** [2] - 23:20, 65:24
**spreadsheet** [2] - 58:1, 58:2
**stab** [1] - 38:4
**stand** [1] - 23:6
**standard** [14] - 7:1, 37:14, 38:9, 38:17, 38:25, 40:14, 40:16, 40:17, 40:21, 41:1, 41:7, 41:9, 41:10, 41:25
**standpoint** [1] - 26:24
**stands** [2] - 36:25, 65:1
**start** [7] - 4:19, 4:25, 5:8, 10:4, 43:14, 71:8, 79:10
**started** [8] - 4:3, 27:12, 53:6, 58:25, 66:9, 79:11, 79:13, 79:14
**starting** [1] - 17:9
**starts** [1] - 72:17
**state** [9] - 12:7, 17:3, 27:4, 27:10, 27:12,

28:10, 30:11, 31:18, 38:6
**statement** [1] - 30:15
**statements** [1] - 29:13
**States** [1] - 76:16
**STATES** [1] - 1:1
**stateside** [1] - 71:9
**stating** [1] - 46:20
**STATUS** [1] - 1:5
**statute** [1] - 19:6
**stay** [2] - 5:13, 76:4
**stayed** [1] - 75:21
**stenographer** [1] - 74:13
**stenography** [1] - 1:24
**step** [1] - 54:1
**steps** [1] - 8:11
**stick** [1] - 45:18
**still** [4] - 24:18, 49:15, 63:5, 79:22
**stop** [13] - 48:5, 73:4, 73:10, 73:15, 73:17, 73:23, 74:10, 76:2, 79:1, 80:12, 80:16, 80:18, 80:24
**stoppages** [1] - 71:4
**stopped** [2] - 75:21, 80:7
**stopping** [2] - 75:23, 79:14
**stops** [3] - 72:3, 73:3, 73:11
**STOY** [11] - 2:16, 36:1, 36:3, 37:10, 37:13, 37:22, 38:24, 39:4, 39:24, 42:16, 43:5
**Stoy** [9] - 35:5, 35:8, 35:16, 35:24, 37:8, 38:23, 39:23, 40:15, 43:4
**Street** [3] - 1:17, 1:20, 2:12
**Streets** [1] - 1:8
**strikes** [1] - 38:19
**structure** [1] - 50:5
**stuff** [2] - 52:23, 78:21
**subject** [3] - 7:12, 30:6, 46:11
**submission** [1] - 9:25
**submissions** [1] - 68:19
**submit** [4] - 26:17, 61:15, 68:17
**submitted** [1] - 24:15
**subpoenas** [1] - 66:1
**subset** [1] - 15:17
**substantial** [1] - 63:3
**substantive** [1] - 23:16

**sufficiently** [2] - 4:21, 69:2
**suggest** [3] - 49:18, 50:1, 80:3
**suggested** [3] - 7:5, 7:10, 9:18
**suggesting** [3] - 8:24, 13:1, 32:5
**suggestion** [2] - 10:2, 31:9
**suggestions** [1] - 45:9
**Suite** [4] - 1:17, 2:3, 2:9, 2:20
**Sunday** [2] - 74:25, 76:15
**supplement** [2] - 38:5, 47:11
**supplemental** [2] - 69:1, 69:3
**suppliers** [1] - 40:19
**supply** [1] - 47:11
**support** [1] - 37:4
**suppose** [2] - 15:19, 69:8
**supposed** [1] - 78:23
**Supreme** [1] - 31:8
**surprise** [2] - 29:5, 63:8
**surprisingly** [1] - 47:1
**suspect** [1] - 52:17
**system** [13] - 9:2, 10:8, 11:9, 11:10, 37:4, 37:7, 37:16, 39:20, 39:21, 42:20, 48:13, 49:19, 50:8
**System** [1] - 36:24
**systematically** [1] - 49:20
**systems** [5] - 11:23, 11:25, 12:2, 12:6, 39:19

---

**T**

**tabbed** [1] - 75:6
**table** [1] - 74:6
**talks** [3] - 14:7, 14:14, 44:5
**target** [1] - 77:10
**tasked** [1] - 52:16
**team** [7] - 15:24, 35:14, 51:10, 61:8, 63:1, 72:6, 78:18
**technical** [2] - 9:20, 10:17
**teed** [2] - 26:7, 48:1
**Tel** [1] - 73:7
**template** [1] - 37:15
**ten** [6] - 17:14, 71:4, 71:6, 79:22, 80:7
**ten-hour** [1] - 71:6

**tens** [3] - 47:11, 63:5, 63:9
**terms** [10] - 4:10, 7:7, 10:6, 12:7, 12:9, 13:15, 20:21, 40:25, 63:19
**test** [1] - 52:14
**testified** [1] - 79:7
**testimony** [3] - 21:19, 23:16, 71:2
**Teva** [4] - 2:21, 2:21, 54:25, 55:3
**Texas** [1] - 2:9
**text** [8] - 11:7, 11:11, 11:14, 11:16, 12:24, 14:4, 14:6, 15:22
**textual** [1] - 11:7
**THE** [4] - 1:1, 1:10, 66:11, 75:17
**theory** [1] - 52:1
**therefore** [1] - 52:9
**they've** [7] - 10:15, 14:25, 15:2, 32:23, 47:10, 59:12
**thinking** [2] - 9:11, 69:24
**third** [4] - 19:4, 25:2, 44:15, 51:15
**Thomas** [1] - 4:2
**THOMAS** [1] - 1:11
**thorough** [1] - 35:14
**thousands** [5] - 40:16, 47:11, 48:18, 63:5, 63:9
**three** [10] - 18:20, 20:2, 24:12, 29:8, 42:3, 44:12, 45:17, 53:20, 71:1, 75:11
**threshold** [1] - 67:19
**threw** [1] - 20:1
**throw** [1] - 45:11
**time-consuming** [1] - 62:13
**timely** [2] - 17:1, 62:13
**timer** [5] - 74:17, 76:19, 76:20, 77:3, 77:8
**tip** [1] - 35:22
**TISCHLER** [1] - 69:16
**Tischler** [1] - 69:20
**title** [2] - 36:22, 36:23
**today** [27] - 4:18, 6:8, 6:10, 6:15, 6:19, 20:10, 22:3, 22:4, 23:4, 26:9, 45:13, 46:3, 46:4, 47:3, 50:11, 56:9, 56:13, 63:23, 64:1, 64:24, 65:17, 65:18, 66:5, 68:6, 69:2, 69:7,

77:21
**together** [2] - 16:21, 50:1
**tomorrow** [1] - 72:16
**tongue** [1] - 43:7
**took** [6] - 43:20, 55:1, 55:6, 74:25, 79:6, 79:12
**top** [5] - 16:24, 26:14, 26:15, 26:21, 47:2
**topic** [1] - 25:11
**tops** [1] - 48:22
**totality** [1] - 63:8
**toto** [1] - 8:15
**toward** [1] - 70:11
**ToxRox** [1] - 63:25
**tracks** [1] - 48:13
**train** [1] - 37:6
**transcript** [9] - 1:24, 28:5, 29:8, 32:11, 33:15, 46:25, 47:22, 81:9
**transcription** [1] - 1:25
**Translate** [13] - 7:5, 12:1, 12:5, 12:9, 12:14, 13:15, 13:20, 14:2, 14:12, 14:19, 16:13, 16:14, 17:4
**translate** [10] - 7:8, 7:16, 9:3, 9:4, 9:19, 11:8, 13:13, 16:6, 64:16, 70:8
**translated** [16] - 8:16, 11:11, 12:14, 12:24, 13:3, 13:8, 14:25, 15:17, 17:11, 18:13, 18:25, 24:14, 25:1, 70:10, 75:24
**translating** [3] - 10:15, 13:12, 15:2
**translation** [48] - 4:15, 4:16, 4:19, 5:3, 6:25, 7:11, 7:13, 8:16, 8:25, 9:3, 9:15, 9:17, 9:23, 10:2, 11:6, 12:2, 12:6, 12:7, 12:18, 13:9, 13:10, 13:20, 14:3, 14:8, 14:9, 14:14, 16:8, 16:10, 16:11, 16:18, 17:2, 17:9, 17:25, 18:3, 18:7, 18:20, 19:23, 21:9, 21:11, 24:3, 24:20, 25:25, 70:6, 70:11, 75:22, 76:10, 78:3
**translations** [2] - 21:1, 64:6
**translator** [2] - 64:10,

76:17
**TRAURIG** [1] - 2:19
**tremendous** [1] - 51:8
**trial** [17] - 20:6, 20:8, 20:9, 20:10, 20:12, 20:16, 20:22, 21:22, 22:6, 22:8, 22:14, 22:22, 23:6, 23:11, 23:17, 23:19, 23:23
**tried** [1] - 11:23
**TRISCHLER** [29] - 2:16, 34:25, 35:2, 39:15, 39:25, 40:4, 43:6, 43:10, 43:13, 43:19, 43:23, 44:20, 50:14, 53:2, 53:4, 53:14, 55:21, 56:23, 60:9, 60:14, 60:25, 62:1, 69:23, 70:2, 77:13, 77:20, 78:3, 78:9, 78:15
**Trischler** [19] - 34:23, 35:12, 40:1, 40:2, 40:15, 46:2, 46:10, 50:7, 50:13, 52:8, 52:25, 56:24, 57:1, 61:7, 75:14, 78:7, 78:8, 79:3, 79:19
**Trischler's** [1] - 46:25
**trouble** [2] - 40:8, 42:14
**trove** [1] - 15:3
**try** [9] - 11:24, 19:11, 25:19, 41:10, 48:6, 60:22, 62:15, 68:15, 75:9
**trying** [11] - 12:10, 14:1, 23:4, 39:10, 40:23, 44:2, 50:4, 50:15, 53:24, 54:24, 72:7
**turn** [2] - 26:20, 71:19
**turnaround** [1] - 53:25, 54:13, 54:24, 55:18, 66:2
**turned** [2] - 10:7, 54:22
**turns** [1] - 30:5
**twice** [1] - 51:15
**two** [14] - 15:7, 15:10, 19:19, 21:12, 49:14, 50:23, 54:15, 55:1, 71:19, 73:24, 74:22, 75:1, 79:4
**two-day** [2] - 71:19, 74:22
**type** [1] - 73:19
**typically** [1] - 42:24

## U

**U.S** [3] - 1:7, 2:14, 28:11
**ultimately** [1] - 25:20
**umpire** [1] - 73:17
**under** [4] - 45:16, 50:18, 54:9, 80:17
**underlying** [1] - 11:16
**understood** [4] - 25:22, 62:1, 75:3, 79:18
**undoubtedly** [1] - 55:24
**unfamiliar** [1] - 46:7
**unformatted** [1] - 11:14
**unfortunately** [2] - 46:4, 74:23
**UNIDENTIFIED** [1] - 9:9
**UNITED** [1] - 1:1
**United** [1] - 76:16
**unitized** [1] - 40:21
**universe** [2] - 27:21, 40:25
**unless** [4] - 9:15, 12:3, 33:6, 58:17
**unnecessarily** [2] - 68:13, 71:18
**unrelated** [1] - 57:17
**unusable** [1] - 12:18
**unusual** [1] - 73:5
**unworkable** [1] - 74:23
**up** [25] - 4:18, 6:7, 17:24, 19:12, 19:13, 26:8, 27:17, 36:5, 37:10, 42:19, 43:7, 43:11, 45:6, 47:2, 47:16, 48:1, 48:17, 62:15, 62:16, 68:13, 70:21, 71:16, 77:6, 77:9, 78:25
**upcoming** [2] - 49:2, 52:22
**upload** [1] - 12:13
**uploaded** [1] - 13:19
**USA** [2] - 2:21, 2:25
**useful** [1] - 56:22
**uses** [1] - 14:1

## V

**valsartan** [13] - 38:7, 38:8, 38:12, 38:19, 39:6, 39:9, 39:14, 57:22, 58:2, 58:6, 58:9, 59:22
**VALSARTAN** [1] - 1:4
**Vanaskie** [1] - 4:2

**VANASKIE** [115] - 1:11, 4:3, 5:9, 5:15, 5:22, 6:1, 6:9, 6:18, 6:23, 7:9, 7:25, 8:21, 9:8, 9:12, 9:21, 10:3, 10:20, 10:25, 12:8, 12:20, 13:22, 14:15, 14:22, 16:3, 18:9, 18:16, 20:4, 20:14, 20:24, 21:23, 24:1, 24:11, 25:7, 25:14, 25:24, 26:2, 26:5, 26:20, 27:4, 27:25, 28:6, 29:15, 30:2, 30:5, 31:13, 32:13, 32:20, 33:5, 33:11, 33:24, 35:1, 35:10, 35:16, 35:24, 36:2, 36:7, 36:11, 36:16, 37:12, 37:21, 37:25, 38:22, 39:3, 39:16, 40:2, 40:6, 40:9, 41:12, 42:7, 42:18, 43:4, 43:17, 43:21, 44:18, 46:1, 50:10, 52:11, 52:24, 53:3, 53:13, 56:4, 56:24, 57:5, 57:9, 58:23, 60:13, 60:24, 61:18, 62:2, 62:23, 63:14, 64:4, 64:20, 65:10, 66:3, 67:8, 67:14, 67:20, 68:12, 68:23, 69:4, 69:14, 69:18, 70:1, 71:25, 73:8, 74:12, 75:14, 76:1, 78:6, 80:2, 80:20, 80:23, 80:25, 81:4
**various** [1] - 27:11
**vast** [3] - 51:13, 55:13
**vendor** [13] - 9:2, 9:17, 9:24, 10:6, 11:4, 12:25, 13:12, 13:13, 14:1, 14:2, 16:10, 16:12
**vendors** [3] - 10:22, 11:3, 11:9
**version** [12] - 12:6, 12:13, 12:14, 19:20, 19:21, 19:24, 19:25, 21:12, 21:18, 22:15, 22:18, 22:19
**versions** [5] - 19:19, 21:12, 22:21, 26:19
**VIA** [1] - 1:6
**via** [1] - 4:1
**VICTORIA** [1] - 2:19
**Victoria** [3] - 69:17, 69:19, 69:24
**video** [1] - 74:11

**videoconference** [1] - 4:1
**VIDEOCONFERENCE** [1] - 1:6
**videos** [2] - 22:13, 23:15
**view** [7] - 7:14, 13:11, 26:25, 27:7, 30:22, 34:10, 34:11
**viewpoints** [1] - 28:16
**violation** [1] - 65:8
**virtually** [2] - 55:7, 55:15
**volume** [5] - 40:13, 63:2, 63:7, 64:14, 71:20

## W

**wait** [2] - 6:4, 63:19
**WALLACK** [1] - 3:2
**wants** [9] - 5:13, 10:17, 66:14, 67:4, 72:2, 72:18, 73:22, 73:24, 75:7
**warrant** [2] - 29:25, 34:18
**warranted** [2] - 27:9, 51:16
**waste** [1] - 44:11
**weaves** [1] - 44:1
**Wednesday** [2] - 56:15, 56:18
**week** [8] - 6:15, 47:7, 53:18, 55:1, 62:18, 65:22, 70:5, 79:7
**weeks** [2] - 30:19, 62:14
**weigh** [1] - 61:14
**welcome** [1] - 33:16
**WERNER** [1] - 2:23
**whatnot** [1] - 41:21
**whipsawed** [2] - 19:22, 21:21
**WHITELEY** [1] - 1:19
**whole** [3] - 12:18, 15:3, 46:20
**wholistic** [1] - 41:23
**willing** [5] - 7:23, 13:9, 60:21, 73:2
**wish** [1] - 6:20
**wishes** [1] - 14:11
**withheld** [20] - 4:10, 34:2, 34:21, 40:14, 40:19, 40:24, 41:2, 41:22, 42:11, 47:15, 49:10, 52:8, 52:17, 54:13, 57:24, 58:4, 58:15, 58:21, 62:9, 63:6
**withhold** [1] - 42:4

**withholding** [1] - 31:25
**witness** [89] - 4:20, 5:4, 8:7, 8:9, 8:10, 8:17, 11:18, 13:7, 17:6, 17:11, 17:14, 18:6, 18:22, 19:12, 19:16, 19:17, 19:21, 19:25, 21:2, 21:4, 21:10, 21:14, 21:17, 22:12, 23:2, 23:3, 23:6, 23:14, 24:4, 24:6, 24:7, 24:13, 24:18, 24:20, 24:23, 24:24, 25:9, 25:10, 25:11, 25:16, 39:8, 39:13, 51:19, 54:4, 54:8, 54:10, 64:10, 64:15, 64:17, 64:25, 65:1, 70:8, 70:10, 70:23, 71:5, 71:12, 72:2, 72:16, 72:18, 73:1, 73:3, 73:11, 73:12, 73:16, 73:21, 73:22, 73:24, 74:10, 74:14, 74:16, 75:4, 76:13, 77:2, 77:4, 77:7, 77:16, 78:10, 79:9, 80:4, 80:5, 80:12, 80:14, 80:18
**witness's** [9] - 24:7, 24:21, 24:23, 25:1, 25:4, 25:15, 25:19, 25:21, 64:13
**witnesses** [16] - 15:2, 22:13, 23:24, 24:16, 38:21, 49:2, 49:5, 49:24, 65:2, 67:16, 70:15, 71:9, 71:22, 76:8, 76:9
**wondering** [2] - 59:11
**word** [2] - 58:2, 58:8
**words** [2] - 21:1, 73:10
**workable** [2] - 50:8, 52:2
**works** [5] - 12:10, 12:16, 42:1, 63:10, 77:24
**world** [3] - 49:25, 50:3, 50:4
**worse** [1] - 10:8
**writing** [1] - 56:6
**written** [1] - 56:15

## Y

**Yang** [1] - 28:17
**year** [2] - 50:19, 54:7
**yesterday** [1] - 40:17

## Z

**Zhejiang** [1] - 2:14
**ZHP** [19] - 5:1, 5:2, 6:25, 21:7, 26:4, 26:24, 27:3, 27:5, 28:4, 28:12, 29:13, 46:14, 64:12, 70:7, 71:1, 71:17, 75:1, 75:13, 75:19
**ZHP's** [1] - 28:21
**zone** [1] - 6:5
**ZOOM** [1] - 1:6
**Zoom** [4] - 4:1, 28:11, 35:13, 68:14