# EXHIBIT D

# BARNES & THORNBURG LLP

2029 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 284-3880
Fax (310) 284-3894

www.btlaw.com

Sarah E. Johnston
Partner
(310) 284-3798
Sarah.Johnston@btlaw.com

March 24, 2021

Conlee Whiteley, Esq.
David Stanoch, Esq.
Kanner & Whiteley LLC
701 Camp Street
New Orleans, LA 70130

> **RE:    Plaintiffs' Draft Requests for Production and Draft 30(b)(6) Notice**
> (*In re Valsartan, Losartan, and Irbesartan Products Liability Litigation,*
> No. 1:19-md-2875 (D.N.J.))

Dear Conlee and Dave:

The Retail Pharmacy Defendants (the "Pharmacies") are in receipt of your March 12, 2021 letter regarding Plaintiffs' proposed draft Requests for Production of Documents ("RFPs") and proposed draft 30(b)(6) deposition notice. Please accept this letter as our response to your letter, and our invitation to meet and confer on the issues set forth below.

## I.     Plaintiffs' Draft Second Set of Requests for Production of Documents

As an initial matter, and contrary to the assertion in your March 12 letter, the Pharmacies still maintain that it is inappropriate and inefficient to negotiate Plaintiffs' draft discovery given the current state of the pleadings. This position was clearly expressed in our letter, and was reiterated several times at the most recent status conference on March 10, 2021.[1] Nonetheless, we are mindful of Special Master Vanaskie's request that the parties meet and confer to determine which of the draft RFPs can be negotiated at this time, and which it makes sense to table until the pleadings are settled. In a good faith effort to follow the Court's guidance and to engage in meaningful discovery discussions, we propose that the parties focus on the following requests for production, without prejudice to the Pharmacies' ability to raise additional issues regarding these requests as the pleadings continue to develop or as additional information is exchanged between Plaintiffs and the Pharmacies in these negotiations:

---

[1] *See* 2/16/2021 S. Johnston Ltr.; *see also* 3/10/2021 Tr. at 55:17-57:8; 61:3-10.

Conlee Whiteley, Esq.
David Stanoch, Esq.
March 24, 2021
Page 2

- **Draft Request No. 5: All documents reflecting your inventory management policies, practices, and procedures pertinent to VCDs.**

- **Draft Request Nos. 6 & 7: All documents relating to the stock life for VCDs maintained in your own inventories (both distribution center and store levels), including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.**

Though the Pharmacies maintain their position that documents regarding inventory management policies will not allow Plaintiffs to reverse engineer the supply chain from API through to the particular pills in a particular consumer's bottle, it seems from our meet and confer efforts to date that the parties may be able to reach a compromise as to these RFPs.

In responding to the Pharmacies' comments, your letter references prior issues you encountered with the "Downstream Defendants," such that you expected to obtain policies but were later told by one defendant that no such policies exist. While we are unaware of any such exchange between counsel for a Pharmacy Defendant and a member of the PEC, as we discussed with you on prior meet and confers, the Pharmacy Defendant group comprises several different entities, which are separately owned and operated, and which may have varying business practices. Not all Pharmacies have the same internal documents. Although we previously did our best to negotiate one uniform set of RFPs served on all Pharmacies, not all Pharmacies necessarily have every document sought by Plaintiffs. This is an inherent challenge in negotiating discovery across multiple parties, particularly where individual defendants have not been permitted to object to the requests as drafted. We foresee this being increasingly difficult now that Plaintiffs purport to seek custodial data, and we suggest meeting and conferring regarding the best and most efficient way to proceed given these concerns, going forward.

In terms of substance, many of the Pharmacies report that they have already produced these documents to Plaintiffs. It appears Plaintiffs are willing to compromise on these Requests, in return for (1) an assurance that the relevant policies have already been produced; or (2) an agreement to produce the final policies, to the extent they exist and have not already been produced. Accordingly, we propose the following revisions to these Requests:

> *Documents sufficient to show your final inventory management policies and procedures (e.g., FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers) pertinent to VCDs, if any, to the extent not already produced in response to Plaintiffs' Second Amended Requests for Production (Dkt. 509).*

**BARNES & THORNBURG** LLP

Conlee Whiteley, Esq.
David Stanoch, Esq.
March 24, 2021
Page 3

- **Draft Request No. 9: Organizational charts or other documents sufficient to show the names, titles, and responsibilities of employees or agents involved in the following functions: (i) the purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and shipping of VCDs; (iv) the recall of VCDs.**

Plaintiffs mischaracterize the concerns raised in our letter, and the scope of the request as drafted. To be precise, the Pharmacies are concerned that the information requested would be too unwieldy to be helpful, and too burdensome to produce—particularly given the scope of the relevant time period. Although Plaintiffs attempt to characterize the functions identified in the request as tailored to core issues in the case, we have previously discussed with you that categories such as "sale," "maintenance, receiving, and shipping" and "purchase" of a given drug could easily encompass huge sectors of the Pharmacies' respective employees.

Given Plaintiffs' recent commitment to working with the Pharmacies to narrow the scope of this language so that it is manageable, the Pharmacies believe there is room to compromise on this Request. In an effort to strike a balance between Plaintiffs' purported need for this information and the undue burden place on the Pharmacies to produce the corresponding documents and information, we propose narrowing Request No. 9 as follows:

> *Documents sufficient to show the names and titles of the employees primarily responsible for your central operations in the following areas: (i) purchase of generic valsartan; (ii) inventory management and distribution of generic valsartan; (iii) the recall of the VCDs at issue in this litigation. In responding to this Request, you may provide the information sought in the form of organization charts, or a chart or document prepared by you for the purposes of providing this information. You need not include employees at the store- or distribution-center level.*

\*\*\*

With regards to draft Requests 1, 2, 3, 4, and 8, we maintain that the current state of the pleadings makes it most efficient to table discussion of these Requests for the time being for the reasons discussed below (without waiving any other argument as to the inappropriateness of the substance or scope of the request).

- **Draft Request No. 1: All documents relating to any representation or warranty provided by any manufacturer, wholesaler, or other sellers of VCDs to you directly or indirectly**

This request seeks information regarding express representations and warranties made downstream to the Pharmacies. In your letter, you claim that this request should remain live because certain warranty claims against the Pharmacies were not dismissed. But documents related to warranties *provided to* the Pharmacies are not relevant to warranty claims consumers

**BARNES & THORNBURG** LLP

Conlee Whiteley, Esq.
David Stanoch, Esq.
March 24, 2021
Page 4

may have *against* the Pharmacies. Your letter also claims that documents responsive to this request "go[] to notice and knowledge," but the fault-based claims against the pharmacies (including negligence) have been dismissed. To the extent Plaintiffs intend to re-plead these claims, the Pharmacies will seek to oppose them. Therefore, negotiations about this request should be tabled until it is clear whether there is even a claim against the Pharmacies that this would be relevant to.

- **Draft Request No. 2: All documents relating to any representation or warranty provided by or passed on by you to any consumer or third-party payor who paid any amount for VCDs sold by you**

This request seeks information regarding express representations and warranties made by the Pharmacies to consumers or third-party payors. The Magnuson-Moss Warranty Act claim against the Pharmacies has been dismissed with prejudice, and the breach of express warranty claim against the Pharmacies has been dismissed without prejudice. And the third-party payors never pursued *any claims* against the Pharmacies. To the extent Plaintiffs intend to re-plead their express warranty claim (brought on behalf of consumers only), the Pharmacies will seek to oppose it. Therefore, this request should also be tabled until it is clear that there is a claim against the Pharmacies that this request would be relevant to.[2]

- **Draft Request No. 3: All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with wholesalers, etc.)**

With regard to this request, the Pharmacies have already explained that they provided the representations and warranties and indemnification sections of such agreements in response to the previous RFPs. Plaintiffs have failed to explain why they need additional information from such agreements from the Pharmacies. While the claims against the Pharmacies are shrinking as a result of the Court's motion to dismiss decisions, their discovery burden should not be growing. This is especially the case given that Plaintiffs already have purchase records documenting the purchases of valsartan that the Pharmacies made from their suppliers, and it is our understanding that Plaintiffs already would have received copies of supply agreements from the manufacturer defendants in this litigation.

- **Draft Request No. 4: All agreements relating to your sale of VCDs (e.g., contracts with third-party payors, pharmacy benefits managers, etc.)**

Please refer to Pharmacies' response to Request No. 2 above, which is incorporated herein by reference.

---

[2] To the extent Plaintiffs argue that the *implied* warranty claims under certain state laws have not been dismissed, such implied warranty claims do not seem to be based on any document.

**BARNES & THORNBURG** LLP

Conlee Whiteley, Esq.
David Stanoch, Esq.
March 24, 2021
Page 5

- **Draft Request No. 8: All communications between you and any Wholesaler or Manufacturer Defendant relating to your purchase of, or the recalls of, VCDs.**

As with other draft Requests, Plaintiffs' March 12 response seems to give short shrift to the Pharmacies' very legitimate concern that Plaintiffs seek burdensome custodial discovery that is duplicative of (1) discovery already produced by the Pharmacies in the form of purchase data, recall notifications and correspondence received from the Manufacturers and Wholesalers; and (2) the extensive custodial discovery already produced by the Manufacturers, which included all communications with downstream entities. This concern is especially great given that most of the claims against the Pharmacies have been dismissed. Under Federal Rule of Civil Procedure 26, discovery must be relevant to a claim or defense and be proportional to the needs of the case. Without knowing which claims against the Pharmacies will survive, it is impossible to know which claims this request could be responsive to, let alone whether its burdensomeness is proportional. Plaintiffs still have not explained what need there is for such duplicative discovery. What exactly is the purpose of requiring the Pharmacies to collect, review and produce the same emails that the Manufacturers have already produced? Again, seeking this discovery seems wholly at odds with the Court's directives that discovery be efficiently managed and narrowly tailored to avoid unnecessary burden and cost. Moreover, the Plaintiffs have on several occasions bemoaned the volume of data that they received from the Manufacturers. Seeking this discovery now seems like it is only intended to harass and unduly burden the Pharmacies, or to afford Plaintiffs an opportunity to fish for additional documents. Plaintiffs are not entitled to limitless fishing expeditions; Rule 26 requires that discovery seek relevant data, not already in Plaintiffs' possession, and that the burden of producing the discovery sought be proportional to the needs of the case.

II.   **Plaintiffs' Draft Rule 30(b)(6) Deposition Notice**

With regards to the draft 30(b)(6) notice, the Pharmacies reiterate their concerns regarding the timing of these negotiations given the discovery schedule and state of the pleadings. However, for purposes of providing substantive comments for Plaintiffs to consider, we are conferring with each other and our clients regarding the draft previously circulated by Plaintiffs so that we can provide a more fulsome set of comments and questions for your consideration.

Please let Kristen or I know if you would like to discuss the substance of this letter by phone.

Sincerely,

Sarah E. Johnston

**BARNES & THORNBURG** LLP