1

2

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

4 ─────────────────────────────

5  IN RE:  VALSARTAN PRODUCTS
   LIABILITY LITIGATION
6

CIVIL ACTION NUMBER:

19-md-02875-RBK-KMW

7 ─────────────────────────────

8

STATUS CONFERENCE
VIA REMOTE ZOOM
VIDEOCONFERENCE

9       Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
10      Camden, New Jersey  08101
        April 14, 2021
11      Commencing at 4:00 p.m.

12  **B E F O R E:**            SPECIAL MASTER THE HONORABLE
                                THOMAS I. VANASKIE

13  **A P P E A R A N C E S:**

14      MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
15      103 Eisenhower Parkway
        Roseland, New Jersey  07068
16      For the Plaintiffs

17      GOLOMB & HONIK, P.C.
        BY:  RUBEN HONIK, ESQUIRE
18      1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania  19103
19      For the Plaintiffs

20      LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
        BY:  DANIEL A. NIGH, ESQUIRE
21      316 S. Baylen, Suite 600
        Pensacola, Florida 32502
22      For the Plaintiffs

23          Camille Pedano, Official Court Reporter
                    camillepedano@gmail.com
24                     609-774-1494

25  Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription.

```
 1   A P P E A R A N C E S (Continued):

 2       KIRTLAND & PACKARD, LLP
         BY:  BEHRAM V. PAREKH, ESQUIRE
 3       1638 South Pacific Coast Highway
         Redondo Beach, California  90277
 4       For the Plaintiffs

 5       GOLDENBERG LAW, LLC
         BY:  MARLENE J. GOLDENBERG, ESQUIRE
 6       800 Lasalle Avenue, Suite 2150
         Minneapolis, Minnesota  55402
 7       For the Plaintiffs

 8       KANNER & WHITELEY, LLC
         BY:  CONLEE S. WHITELEY, ESQUIRE
 9       701 Camp Street
         New Orleans, Louisiana  70130
10       For the Plaintiffs

11       DUANE MORRIS, LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
12            JESSICA PRISELAC, ESQUIRE
         30 South 17th Street
13       Philadelphia, Pennsylvania  19103
         For the Defendants, Prinston Pharmaceuticals,
14       Solco Healthcare U.S. LLC, and
         Zhejiang Huahai Pharmaceuticals Ltd.
15
         GREENBERG TRAURIG, LLP
16       BY:  ALEXANDRA BACH LAGOS, ESQUIRE
         3333 Piedmont Road, NE, Suite 2500
17       Atlanta, Georgia  30305
         For the Defendants, Teva Pharmaceutical Industries Ltd.,
18       Teva Pharmaceuticals USA, Inc., Actavis LLC,
         and Actavis Pharma, Inc.
19
         CIPRIANI & WERNER, P.C.
20       BY:  ERNEST F. KOSCHINEG, ESQUIRE
              JESSICA M. HEINZ, ESQUIRE
21       450 Sentry Parkway
         Blue Bell, Pennsylvania  19422
22       For the Defendants, Aurolife Pharma LLC
         and Aurobindo Pharma USA, Inc.
23

24

25
```

1    **A P P E A R A N C E S (Continued):**

2        HILL WALLACK, LLP
         BY:  ERIC I. ABRAHAM, ESQUIRE
3            NAKUL Y. SHAH, ESQUIRE
         21 Roszel Road
4        Princeton, New Jersey 08540
         Attorney for Defendants, Hetero Drugs and Hetero Labs
5
         ULMER & BERNE, LLP
6        BY:  JEFFREY D. GEOPPINGER, ESQUIRE
         600 Vine Street, Suite 2800
7        Cincinnati, Ohio 45202
         For the Wholesaler Defendants and AmerisourceBergen
8
         BARNES & THORNBURG, LLP
9        BY:  SARAH E. JOHNSTON, ESQUIRE
             KRISTEN L. RICHER, ESQUIRE
10       2029 Century Park East, Suite 300
         Los Angeles, California  90067
11       For the Retailer Defendants and CVS Pharmacy, Inc., and
         Rite Aid Corporation

12

13   **ALSO PRESENT:**

14       LORETTA SMITH, ESQUIRE
15       Judicial Law Clerk to The Honorable Robert B. Kugler

16       Larry MacStravic, Courtroom Deputy

17

18

19

20

21

22

23

24

25

1   (PROCEEDINGS held remotely via Zoom videoconference before

2   Special Master The Honorable Thomas I. Vanaskie at 4:00 p.m.)

3          JUDGE VANASKIE:  I see it's 4:00.  I see Camille is

4   here, our court reporter is here.  Are we ready to proceed?

5          MR. GOLDBERG:  Yes, Your Honor.

6          MR. HONIK:  Yes.

7          JUDGE VANASKIE:  And, again, you know, the standard

8   protocol applies.  Please mute your mics.  The persons who will

9   be speaking then unmute and we'll hear from you and we'll

10   proceed in that manner.

11          We're going to go through the agenda letter in the

12   order that was in Mr. Trischler's letter.  So we'll start with

13   the first item, which is the bellwether plaintiff deposition

14   schedule.  I take it there's two components to this.  One is

15   scheduling the other 18 bellwether plaintiffs -- if I have the

16   numbers wrong, please correct me -- and also scheduling

17   depositions of treating and prescribing physicians.

18          So, who will be addressing this on behalf of the

19   defendants?

20          MS. LAGOS:  Good afternoon, Your Honor.  My name is

21   Alexandra Lagos and I'll be speaking on behalf of defendants

22   today.  Ms. Lockard's in deposition.

23          JUDGE VANASKIE:  All right.

24          MS. LAGOS:  I don't think we have much dispute on this

25   topic.  Mr. Nigh and I were able to have a productive meet and

1    cover this afternoon.

2            We wanted to advise the Court that we're well underway

3    with the first ten bellwether depositions and we are in the

4    process of getting the remaining 18 scheduled.  We're working

5    with plaintiffs' counsel to get that completed.  Mr. Nigh and

6    Mr. Williamson and I, along with other defense counsel, we met

7    and conferred this morning, and they've provided defendants

8    with a list of plaintiffs' counsel contacts to get those depos

9    scheduled.

10            You mentioned, as well, the treaters and prescribers,

11   and we're going to work towards getting those scheduled as

12   well.  We plan to send them a protocol to get that process

13   started.

14            I think we've also reached an agreement with respect

15   to the Defendant Fact Sheets.  Would Your Honor like me to

16   address that?

17            JUDGE VANASKIE:  Yes, please.

18            MS. LAGOS:  Sure.  So with respect to the Defendant

19   Fact Sheets, I believe we've reached an agreement that the

20   named defendants will complete the Defendant Fact Sheets at

21   least seven days prior to a bellwether deposition.  And I think

22   we're very close to reaching a resolution on the timeline for

23   plaintiffs' responses to the bellwether discovery in cases

24   where the plaintiffs' depos are currently scheduled, with

25   plaintiffs agreeing to respond to the discovery no later than

```
 1    seven days prior to the deposition.
 2            I think that addresses the pending bellwether issues
 3    for now.
 4            Mr. Nigh and I are going to try to work cooperatively
 5    and coordinate about the depositions, and we're going to have
 6    weekly meet and confers to address the depositions, outstanding
 7    discovery, and any DFS issues.
 8            JUDGE VANASKIE:  Mr. Nigh, did you want to be heard on
 9    this?
10            MR. NIGH:  No.  I think that's a good summary.  Thank
11    you, Your Honor.
12            JUDGE VANASKIE:  Great.
13            The next item is the non-responsive document
14    challenges.  And who will be addressing this on behalf of the
15    defense?
16            I think you're still muted, Mr. Goldberg.
17            MR. GOLDBERG:  Sorry about that.
18            Your Honor, this is Seth Goldberg.  Sorry if you can
19    hear a siren going off in the background.
20            JUDGE VANASKIE:  Understood.
21            MR. GOLDBERG:  Okay.  I'll just let that finish.
22            But we -- you may recall at the conference last week,
23    during the conference last week, Mr. Honik presented the Court
24    with a possible approach to the plaintiffs being able to
25    challenge documents that have been marked as non-responsive.
```

1   The Court encouraged us to provide -- defendants to provide a

2   counterproposal, which we have done.  I believe that was --

3   that email communication that I sent to plaintiffs on Friday

4   was attached to our letter.

5           JUDGE VANASKIE:  It was.

6           MR. GOLDBERG:  And what we have suggested to

7   plaintiffs is that rather than have, as Mr. Honik proposed, 50

8   documents be challenged per witness over the course of the next

9   two months of depositions, which we think might end up becoming

10  a significant burden on the parties and the Court, given the

11  number of depositions, if you multiplied that number, which

12  exceeds 30, by 50 documents per witness, you're talking about

13  1500 documents at a minimum that would be subject to a

14  challenge, the briefing issues that would go with that and

15  potential number of documents Your Honor might have to review

16  *in camera*, all during this very busy period of depositions, we

17  felt that that -- that proposal may not be the best

18  alternative.  So we have provided a counterproposal, which is

19  that plaintiffs have a total of 50 documents to be presented at

20  one time or that they have the ability to challenge up to ten

21  documents per witness, which would obviously reduce the number

22  of disputes that might potentially be brought to Your Honor's

23  attention.

24          So what we tried to do was tried to really limit the

25  kind of -- the possibility that the parties would be bogged

1  down over the next two months during the period of 30-plus

2  depositions on these issues.

3        And as plaintiffs indicated in their letter, they are

4  willing to meet and to try to work on this, but that's where we

5  are with respect to our counterproposal, and we haven't yet had

6  the chance to have that meet and confer with plaintiffs.

7        JUDGE VANASKIE:  All right.  Mr. Honik?

8        MR. HONIK:  Your Honor, very briefly.

9        What Mr. Goldberg laid out is essentially correct.  We

10  did receive their counterproposal on Monday around midday.

11  We've had some minimal ability to caucus internally.  As I

12  think Your Honor's aware, virtually all of us are in

13  depositions every day, sometimes multiples of us, and we

14  haven't reached a consensus.

15        Just to remind the Court, the reason this was proposed

16  at all was really as a way to devise a mechanism or process, a

17  streamlined process, to get these issues in front of the Court.

18  And we didn't do it willy-nilly.  We did it because there are

19  tens of thousands of documents that we're concerned about.  And

20  without prejudging our meet-and-confer efforts yet to occur,

21  what this seems to be evolving into is an effort on the part of

22  the defendants to cap what already exists as our right to

23  challenge those withheld documents.

24        I can tell you that it's a nonstarter to cap at 50

25  documents per each manufacturer.  And stop to consider, Your

1    Honor, that there are more than 10,000 Mylan withheld documents

2    alone that we're concerned about.  The idea of capping them at

3    50 is simply a nonstarter.

4            There are other elements to their proposal.  They do

5    have a proposal per deponent that may be a more favorable route

6    for us to take, and we'll certainly engage Mr. Goldberg and the

7    defense about it.

8            But I just want to remind the Court what this is

9    about, and that is to find a mechanism to get this issue in

10   front of the Court without undue burden to everybody but at the

11   same time preserving to us the right to appropriately challenge

12   what has turned out to be many tens of thousands of withheld

13   documents.

14           So I hope to be able to get back to the Court with

15   some favorable news, and per Mr. Goldberg's suggestion, we will

16   be promptly meeting and conferring on this issue.

17           JUDGE VANASKIE:  All right.  Mr. Goldberg, anything

18   else on this issue?

19           MR. GOLDBERG:  Nothing, Your Honor.  We'll raise any

20   issues that we need to based on our meetings with plaintiffs.

21           JUDGE VANASKIE:  And just so it's clear, I've

22   withheld -- I've suspended my review of withheld documents

23   pending your efforts to reach agreement.

24           MR. HONIK:  Understood, Your Honor.  Thank you.

25           MR. GOLDBERG:  Thank you.

```
 1          JUDGE VANASKIE:  The next issue in the defense letter
 2   was the timing of defendants' response to plaintiffs' motion
 3   for leave to amend.  And who will be addressing this for
 4   defendants and where does that stand?
 5          MR. GOLDBERG:  I believe Kristen or Sarah, will you be
 6   talking on this?  You're on mute, Sarah.
 7          MS. JOHNSTON:  My apologies.
 8          Good afternoon, Your Honor.  Sarah Johnston on behalf
 9   of the pharmacy defendants.  I think that we can be fairly
10   brief here.
11          Ms. Richer, who I believe is also on this call today,
12   and I had a productive discussion with plaintiffs' counsel,
13   Marlene Goldenberg, yesterday.  We discussed the recent motions
14   for leave to amend the master complaint and the timing and
15   briefing schedule for the defense response and what the next
16   steps for that were.  Obviously, the defendants were -- just
17   received those motions and the proposed amended pleadings, so I
18   think there's a little bit of work left to be done; but our
19   plan is to circle back with our respective groups, defendants
20   and plaintiffs, and then to touch base again at the end of this
21   week to see where we come out on that.
22          JUDGE VANASKIE:  All right.  Ms. Goldenberg, anything
23   else on this?
24          MS. GOLDENBERG:  Nope.  I think Ms. Johnston captured
25   everything.
```

1          JUDGE VANASKIE:  All right.  Very well.  Thanks.

2          MS. JOHNSTON:  Thank you.

3          JUDGE VANASKIE:  Thank you very much.

4          The next issue concerns the draft requests for

5    production to the pharmacy defendants.  And I think it might

6    also encompass the wholesaler defendants.

7          Who will be addressing this on behalf of the defense?

8          MS. JOHNSTON:  Your Honor, Sarah Johnston again for

9    the pharmacy defendants.  Also here is Kristen Richer for the

10   pharmacies and it looks like Mr. Geoppinger is here as well.

11         JUDGE VANASKIE:  All right.  What can you tell us

12   about this issue?

13         MS. JOHNSTON:  Well, Your Honor --

14         JUDGE VANASKIE:  Go ahead.

15         MS. JOHNSTON:  Sorry, I thought I may have been on

16   mute again.

17         You'll recall that at the last discovery conference we

18   discussed this issue and the ongoing negotiations regarding

19   next round requests for production and additional discovery to

20   the pharmacy defendants, and during that conference we

21   discussed the fact that there are certain discovery requests

22   that plaintiffs have proposed that we were comfortable with

23   negotiating at this point and felt could be negotiated at this

24   point and then additional requests that were more appropriately

25   tabled until the pleadings were no longer in flux, and we've

*United States District Court*
*Camden, New Jersey*

1  outlined those issues and where we come out on those in a

2  couple of different submissions to the Court, including the one

3  filed yesterday which also attached our meet and confer letters

4  on this issue.

5          And I believe that Your Honor's recommendation was the

6  parties go back and meet and confer and see where the line

7  could be drawn between those that could be negotiated at this

8  point and those that would either need to be tabled or where we

9  would need to seek the Court's guidance.  And that's what we

10  have done up to this point.  And we've had multiple discussions

11  with Mr. Stanoch on the requests and have attempted to carve

12  out where we think discovery -- the requests that discovery

13  could proceed on and those that we feel are frankly not ripe

14  until the pleadings are certain, as many of these requests, as

15  we outline in our letter, pertain to -- pertain to claims that

16  have been dismissed against the pharmacies.  And that's where

17  things stand now.

18          I think that we've made progress on the ones that we

19  can make progress.  We understand that plaintiffs would like to

20  get this all ironed out at this point but there are certain

21  issues, for example, with respect to requests that go to

22  contracts and agreements and statements of warranty that would

23  reasonably only go to a breach of warranty claim which at this

24  point has been dismissed against the pharmacies.

25          So that's the sort of distinction that we tried to

1   draw during our meet and confers and I think that's where we

2   are right now.

3           JUDGE VANASKIE:  All right.  And who's going to

4   address this on behalf of the plaintiffs?

5           MS. WHITELEY:  I am, Your Honor.  Conlee Whiteley on

6   behalf of plaintiffs.

7           I've been working with Mr. Stanoch on these

8   negotiations up until last week and we -- I believe that's a

9   pretty accurate summary of the history and we understand the

10  defendants' position and it's been expressed to us before

11  today, but we've maintained since the very beginning, and the

12  Court has agreed with us, that there should be no stay on

13  discovery pending the motions to dismiss.  The retailers and

14  wholesalers are still in the case and we don't believe that

15  that should be a reason not to answer the discover.  But we

16  have spoken, we have had some staggering of discovery and we

17  have had it in two phases; but at this point in the case, we

18  think that enough time has passed that we should, you know,

19  either go ahead with this discovery, continue to work on it

20  now, there should be no pause; and to the extent the defendants

21  can present a convincing reason to avoid answering some of that

22  discovery until later, I believe that the issues are close

23  enough for the Court to decide now.

24          We're certainly willing to meet and confer again

25  within the next couple of weeks, but, you know, we'd like to

1    present it to the Court to give us guidance or rulings on the

2    differences between the parties.

3            JUDGE VANASKIE:  Ms. Whiteley, how do you propose that

4    this matter get presented where a decision can be made?  Are

5    you proposing letter briefs, are you proposing to stand on what

6    you've already submitted?  I'm just trying to understand that.

7            MS. WHITELEY:  The way we've handled it in the past is

8    we -- you know, I think we should work together, you know,

9    again, especially if you provide any further guidance today,

10   and have one more meet and confer; but then I think that we

11   could provide the Court with redlines of our position versus

12   their position with a short summary attached to that and then

13   we can present it to the Court and answer any questions the

14   Court may have.

15           JUDGE VANASKIE:  All right.  And what timeframe are

16   you looking to?

17           MS. WHITELEY:  We'd like to have it occur at the next

18   CMC.

19           JUDGE VANASKIE:  So two weeks from today?

20           MS. WHITELEY:  Yes, Your Honor.

21           JUDGE VANASKIE:  So when could I get the redlines?

22           MS. RICHER:  Your Honor, if I may, I'm a little bit

23   confused because this feels somewhat inconsistent with what was

24   discussed -- sorry.  For the record, this is Kristen Richer.

25           I'm a little confused because this seems somewhat

 1   inconsistent with what was previously discussed with Mr.

 2   Stanoch.  As I understood it, plaintiffs were coming --

 3   intended to come to the Court today to say they don't think

 4   that we should essentially triage which of these requests we

 5   negotiate now and which we would negotiate later.  They want to

 6   negotiate them all now and they wanted the Court's guidance on

 7   whether that should proceed that way.  And if it's a question

 8   of whether that should be briefed for the Court before the next

 9   case management conference, which would also give the other

10   pharmacies who are not able to attend this conference a chance

11   to attend and weigh in on that issue, then I think we're fine

12   with that approach.

13         I did not understand Mr. Stanoch, from our last meet

14   and confer, to be saying he'd be asking the Court to rule

15   substantively on these requests that have not been negotiated

16   between the parties in the sense that there is no redlines,

17   those RFPs that we've tabled, because we've been trying to

18   explain to plaintiffs all along we didn't think it made sense

19   to negotiate some of these requests at this time.  So I think

20   those are two different things and, one, it would be helpful

21   for us to get some clarity on what plaintiffs are proposing;

22   but, two, we do not feel that any sort of session would be ripe

23   for the Court's ruling on the substance of those --

24         THE COURT REPORTER:  Excuse me, Ms. Richer.

25         JUDGE VANASKIE:  Excuse me, Ms. Richer, you broke up.

 1    So we have to start.

 2              Where did you lose it, Camille?

 3              (The following is read back:

 4              "...we do not feel that any sort of session would be

 5    ripe for the Court's ruling on the substance of those --")

 6              MS. RICHER:  -- on the substance of those RFPs that

 7    we'd suggested tabling negotiation on at this point because of

 8    the state of the pleadings.  If plaintiffs are proposing that

 9    we present to the Court our explanation of why certain RFPs

10    should be negotiated now and why others should be tabled, that

11    is something that more closely aligned with what I thought Mr.

12    Stanoch or plaintiffs would be asking for today, and we're

13    prepared to do that in a few weeks for Your Honor.  And I do

14    think it's important that other pharmacies who are not on this

15    call be afforded an opportunity to be present for that

16    discussion and to weigh in on those issues.  But, obviously,

17    they're not here today because it's an Executive Committee only

18    conference.

19              MS. WHITELEY:  Your Honor, what we -- I don't believe

20    there's an actual disconnect here.  I think what we

21    contemplated is for the ruling to be on -- that we understand

22    they're going to take the position on certain requests that

23    they do not need to answer them at this time and we want a

24    ruling on that.  We don't expect that the defendants agree with

25    us at this time that there should be a redline of all the

1    discovery and a ruling on that.  We understand that some of it

2    they don't think they should have to answer at all, and then we

3    would, you know, have their position and our own position as to

4    why they should or should not be answered at this time.  And if

5    the Court were to rule they should be answered at this time,

6    then the parties can meet and confer further as to how those

7    should be limited in any further respect and then answer.

8           JUDGE VANASKIE:  Ms. Richer, does that help?  Does

9    that provide the clarification you were looking for?

10           MS. RICHER:  It does, Your Honor.  And thank you, Ms.

11   Whiteley.  I think we're fine with that proposal, at least as

12   to the pharmacies.  And we had discussed that with Mr. Stanoch

13   previously.  So if that's the Court's direction, then we'll be

14   prepared to discuss that at the next conference.

15           JUDGE VANASKIE:  So are you asking for a determination

16   by me as to whether certain discovery requests must be answered

17   in the near future?

18           MS. RICHER:  I think that's -- I think that's right,

19   Your Honor.  Although, I would say I think it's more we're

20   seeking guidance from the Court on whether certain draft

21   requests should be negotiated at this point because our

22   position up until now has been that certain of these should be

23   tabled because they relate to things that are very in flux in

24   the pleadings and so any discussion about relevance and

25   proportionality seems like it would be very inefficient at this

point.  Plaintiffs disagree with that position.  And I think
what both -- what Ms. Whiteley is seeking and what we're saying
makes sense is for us to brief that issue for the Court so the
Court can say for these four that the pharmacies have suggested
tabling do move forward, I think you should, or do not move
forward.  We're fine with that.

JUDGE VANASKIE:  So getting back to the point of
triaging the discovery requests.  By when can you have that, I
guess, submitted to me by way of letter briefs for me -- will
we be in a position to have exchanged briefs or present briefs
to me so that I can address that at our next conference two
weeks from now?

MS. WHITELEY:  Yes --

MS. RICHER:  Unless -- go ahead.

MS. WHITELEY:  We can -- we can be in a position to do
that if -- if the defendants can as well.

JUDGE VANASKIE:  All right.

MS. RICHER:  Yes.  And I don't think that needs to be
a complicated briefing schedule.  I think we can just both
submit our positions on that in advance of the next conference
with a letter brief.

JUDGE VANASKIE:  Yes, just get it to me a few days in
advance of the 28th of April and that will be fine.  We won't
put any hard-and-fast schedule.  I expect you will get it to me
at least a few days in advance so I can review it.  All right?

```
 1          MS. WHITELEY:  Yes, Your Honor.

 2          MS. RICHER:  Will do.  Thank you.

 3          JUDGE VANASKIE:  Is that specific enough?

 4          MS. WHITELEY:  We'll agree on a date -- we'll submit

 5   it on the same day by agreement.

 6          JUDGE VANASKIE:  Okay.  Thank you.  Thank you.

 7          MS. JOHNSTON:  Thank you, Your Honor.

 8          MR. GEOPPINGER:  Your Honor, if I may be heard.  For

 9   the record, Jeff Geoppinger.

10          JUDGE VANASKIE:  Yes, Mr. Geoppinger.

11          MR. GEOPPINGER:  I'm here on behalf of the

12   wholesalers.

13          The wholesalers have sort of -- we've also had

14   discussions about the draft requests with Mr. Stanoch.  We had

15   a meet and confer yesterday.  We've been proceeding a little

16   bit separate and apart from the pharmacies.  There are some

17   differences in terms of what claims that exist and some

18   differences with respect to duplication of discovery that the

19   pharmacies may have that we don't have.

20          So we had a productive meet and confer yesterday and

21   we are planning on talking again.  We both have some things to

22   follow up on.

23          So from the wholesalers' standpoint, I think that, you

24   know, we are still in the process of meeting and conferring on

25   that.  I presume that before the next conference we'll, you
```

 1   know, submit position statements about where we are in terms of

 2   those negotiations; but, you know, I can't really say anything

 3   more specifically about what those will look like at that time,

 4   whether we'll have a disagreement or not about certain requests

 5   and duplication issues and so on and so forth.  But we'll be

 6   happy, obviously, to submit our positions then.  Hopefully, you

 7   know, we'll be able to have it all work out.

 8        JUDGE VANASKIE:  All right.  So position statements to

 9   be submitted on the wholesaler defendants' discovery in advance

10   of the April 28th conference.

11        MR. GEOPPINGER:  Yes.  I would assume it would be

12   similar to what we would usually submit as an update as to

13   where we are.

14        JUDGE VANASKIE:  That would be fine.  Okay.  Thank

15   you.

16        Then there's a question with respect to the 30(b)(6)

17   notices for the pharmacy defendants.  Where does that stand

18   right now?  Ms. Whiteley?

19        MS. WHITELEY:  Your Honor -- Sarah, can you tell us

20   your position on that and I'll respond?

21        MS. JOHNSTON:  Sure.

22        Your Honor, during our last meet and confer with Mr.

23   Stanoch, we also discussed that 30(b)(6) notice and we posed a

24   couple of clarifying questions regarding certain topics that

25   are in the draft notice and Mr. Stanoch agreed to get back to

1   us in response to those questions.  But I think that our last

2   meet and confer was a good one and we're making headway on

3   that.

4          JUDGE VANASKIE:  All right.  So I'll look forward to

5   your update on where this stands for our April 28th conference.

6          MS. JOHNSTON:  Yes, Your Honor.

7          JUDGE VANASKIE:  Anything else with respect to

8   pharmacies and wholesaler discovery?

9          MS. JOHNSTON:  Not for the pharmacies.  Thank you.

10          JUDGE VANASKIE:  All right.

11          MR. GEOPPINGER:  Nothing for the wholesalers.  Thank

12   you, Your Honor.

13          JUDGE VANASKIE:  Okay.  I take it, Ms. Whiteley,

14   nothing else on your end?

15          MS. WHITELEY:  No, Your Honor.  Thank you.

16          JUDGE VANASKIE:  Good.

17          The next issue I have on the agenda is the Hetero

18   discovery.  And are we making any progress in this matter?  I

19   have a letter that told me that 7,000 pages of documents have

20   been produced and that there are to be two more document

21   productions made prior to or at least by today.  But where does

22   this stand?

23          Is this yours, Ms. Goldenberg?

24          MR. PAREKH:  It's mine, Your Honor.  This is Behram

25   Parekh.

 1          JUDGE VANASKIE:  All right.

 2          MR. PAREKH:  So to give you just a slight bit of more

 3    background on this, on December 9th we raised with Judge

 4    Schneider the issue whether or not defendants had completed

 5    document production and Judge Schneider went through a rollcall

 6    of the defendants and they all said that their document

 7    productions were complete and, specifically, Mr. Shah

 8    represented that Hetero Labs and Hetero -- well, basically the

 9    -- Hetero Drugs and Hetero Labs', the India entities, document

10    productions were complete.

11          Since that time we have raised multiple issues where

12    we've found that Hetero's document productions were not

13    complete and just in the last few weeks we've received

14    approximately a hundred thousand pages worth of documents that

15    they have produced in response to our deficiency notices.  We

16    have multiple concerns with what is still left outstanding.

17          First is we still have not received a letter in

18    response to what Your Honor ordered, that the Hetero entities

19    identify their applications, databases and equipment systems

20    that have responsive data.  All we've gotten is a general reply

21    that says, you know, these particular units have centralized

22    servers on which, you know, data is kept.  That's not the type

23    of information that we have received from the other entities as

24    we've noted in our -- in the document.

25          We had a multi-hour meeting with each of the

*United States District Court*
*Camden, New Jersey*

 1    defendants prior to Hetero being involved in the case due to

 2    the Hague Convention issues in terms of service and delay, and

 3    the type of information that was provided by, for example, ZHP

 4    or Mylan, simply has not been provided by Hetero so that we

 5    don't really have a comfort level that we're even asking for

 6    the right information or asking for all of the information that

 7    we think we need.

 8          This was -- we brought this up, you know, many weeks

 9    ago with Your Honor and Your Honor asked Hetero to do it and

10    they said they would but they still haven't.

11          We also have a serious concern because when we asked

12    Hetero to tell us which of the custodians and witnesses had

13    received discovery -- I mean, lit-hold notices, we realized

14    from their responses there were numerous witnesses, as we've

15    detailed in the letter, I won't repeat the names, who had not

16    received lit-hold notices but who were now being, you know,

17    produced for depositions and were custodians that we had agreed

18    upon to be produced.  You know, we're just not confident that

19    what we have is what we need and we're having to go forward now

20    with depositions simply because we're running out of time.  You

21    know, we have a May 30th deposition cutoff and we have numerous

22    depositions that we still need to schedule.  These are multiday

23    depositions, the witnesses are in India, we're having to

24    schedule them at odd hours due to the time differences, and we

25    have no choice but to go forward with these depositions at this

```
 1  point, but we don't feel confident that we have the documents
 2  we need in order to really go forward with those depositions.
 3          Just one example that we discovered recently when we
 4  were preparing for these depositions is the fact that we don't
 5  appear to have final versions of numerous documents when we
 6  have draft versions.  And, you know, it's sort of like Hetero
 7  is saying, well, you know, we've -- we responded to your
 8  deficiencies and we've, you know, cured them as you identified
 9  them, but it really isn't plaintiffs' job to be identifying
10  deficiencies in the production.  They're basically saying, you
11  know, here's the documents we've produced, go fish and find the
12  ones that we haven't.  And that's not the way discovery works.
13  And we're very concerned about, you know, going forward with
14  these depositions having no idea whether or not there are
15  significant documents that are still missing.
16          JUDGE VANASKIE:  All right.  Who's going to address
17  this on behalf of Hetero?
18          MR. ABRAHAM:  Good afternoon, Your Honor.  This is
19  Eric Abraham.
20          JUDGE VANASKIE:  Mr. Abraham, I'm glad you were able
21  to make it.
22          MR. ABRAHAM:  Thank you.  Thank you for your
23  accommodation, Your Honor, with my 4:00 hearing; I appreciate
24  that.
25          Your Honor, as long as we're going to go back in
```

1   history a little bit, I'd like to bring to the Court's

2   attention that Hetero Labs was slightly late to this party.

3   Due to Hague service and other issues, we didn't come in at the

4   beginning.  And prior to our appearance in the case on behalf

5   of Hetero Labs, as Mr. Parekh has indicated, there was a

6   process that Judge Schneider oversaw whereby the parties

7   conferred with each other and met with each other to review

8   their ESI, in other words, how they stored documents and where

9   they stored documents.  And that wound up being the subject of

10  some letter writing between them where the plaintiffs would

11  send to a defendant a specific set of questions about document

12  retention policies and storage.  We never got that letter.

13  When we came into the case, we were never approached by

14  plaintiffs to have that kind of a discussion.  We have gone and

15  gotten a copy of that letter that they sent to other defendants

16  and we are now working with our client to provide responsive

17  answers to every aspect of it.  And I -- I sympathize with Mr.

18  Parekh because I understand his concerns but, respectfully, the

19  time to have had this conversation, if he wanted to have it

20  with me, was when Hetero Labs first came in this case; not

21  after we went through months and months and months, from June

22  through November, of document production.

23         So we are where we are, which is, we think that we

24  made a diligent effort to produce documents, we gave our best

25  efforts.  We've been presented with several lists and

 1    iterations of documents that they've identified as missing.

 2    We've done our level best to collect each and every one of

 3    those documents.  There were document productions this week, in

 4    fact as recently as today, providing thousands of additional

 5    pages of documents and we think that we have checked the box on

 6    each and every document that he's requested of us.

 7         Now, with respect to the letter that Your Honor

 8    requested that would detail our storage and retention and

 9    records management practices, we're doing that.  We have -- we

10    sent to our client an exhaustive list of the questions that

11    we've gotten answered.  We got those answers this morning.

12         We, also, when we were able to lay our hands on the

13    document retention letter that plaintiffs sent to the other

14    parties back in November 2019, we also sent that letter to our

15    client to make sure that we are going to cover the waterfront

16    on every issue that plaintiff wants to understand about our

17    document retention policies.  That is in process.  We're

18    conferring with our client.  As recently, as I've said, we've

19    gotten a substantial set of questions answered today, and we

20    hope to get more questions answered about the letter that we

21    sent that plaintiffs had sent to other defendants.

22         With respect to the litigation hold issue, Your Honor,

23    those litigation hold notices obviously were sent out prior to

24    the parties meeting and conferring on who custodians would be

25    and who deposition witnesses would be.  So the fact that there

1    may not be a perfect overlap or a line in between them

2    shouldn't be a surprise.  What is important, I think, for our

3    purposes, Your Honor, is we have conferred with our client to

4    go through each and every person who had received that

5    litigation hold letter either in writing or orally.

6            Now, Mr. Parekh is correct that the list of recipients

7    of the litigation hold notice in writing does not include every

8    single custodian that he has identified and every single

9    witness, but it is our understanding that every person on that

10   list was given the instruction, the litigation hold

11   instruction, from the head of their department.  In other

12   words, the head of their department was a recipient of the

13   litigation hold notice and transmitted that information to all

14   the people that report to them.

15           So I can't go back in history, I can't make that

16   litigation hold notice go to people that plaintiffs had not yet

17   identified as custodians, but I am comfortable, from what I

18   hear from my client, that, in fact, the proper parties were

19   advised of the litigation hold.

20           I believe that that brings me to the end of the three

21   subjects that Mr. Parekh raised.

22           I would ask if Your Honor would permit it, Mr. Shah

23   may have additional detail in case I missed anything.  That's

24   why I have him on these calls in part, so that way he can

25   backstop me.

 1          Thank you, Judge.

 2          JUDGE VANASKIE:  All right.  Anything else, Mr. Shah?

 3          MR. SHAH:  Just briefly, Your Honor.

 4          I've been working with our client diligently to make

 5    document productions nearly every day, I think, in order to

 6    address every single issue that Mr. Parekh has raised.  Within

 7    the last three days we have made a document production every

 8    day with a substantial number of documents that address all of

 9    the issues that Mr. Parekh has raised, as well as prior

10    iterations and every iteration of those particular documents.

11    So we are confident that we have been able to address all of

12    the issues that Mr. Parekh has raised by way of our document

13    productions.

14          JUDGE VANASKIE:  Mr. Parekh?

15          MR. PAREKH:  There's two things:  One is, is Hetero

16    now willing to say that their document is complete, as they

17    said in December it was complete?  And number two, we don't

18    believe, at least looking -- I mean, we haven't been able to

19    look at the documents from today or even yesterday, it takes

20    time to load these documents; but in looking at the production

21    index, it doesn't look like, you know, at least a few of the

22    issues have been covered.

23          One of the issues that it looks like wasn't covered is

24    draft versions of the SOPs where changes were made to the

25    documents.  We received -- as we noted in our letter, we

1    received an explanation saying that these were put on a shared

2    drive, these were edited, and then the final version was

3    circulated for edit.  As far as we can tell, we've received no

4    communications that evidence any of those edits.  We've

5    received no versions of the documents that evidence those

6    edits.  And, you know, it's sort of -- it's hard for us to

7    understand how these documents were being edited and changed,

8    and sometimes substantially changed, when there's no evidence

9    of how those changes happened and who talked to whom, who said,

10   hey, we should make this change.  I mean, none of those

11   communications exist, as far as we can tell, and none of the

12   redline versions or whatever sort of intermediate steps exist

13   that we can tell.

14         So that issue at least, unless they were produced this

15   morning, which I haven't had a chance to even look at, you

16   know, hasn't been addressed.

17         The other issue, which is one that we just realized

18   yesterday, and we're still trying to work through, is this

19   issue of not having final versions of some of the draft

20   documents.  It's sort of the reverse of this issue, where we

21   have a bunch of draft documents and emails containing draft

22   documents but now we can't locate the final sort of official

23   copy of the document.  And we're trying to identify those

24   documents where we thought we had a final version but realized

25   that no, it just looks like it's still a draft, to confirm

1  whether or not that version actually is a final version or

2  whether there's supposed to be an official, sort of, file

3  stamped copy that's called the final version that we're

4  missing.  But we're still trying to work through that because,

5  I mean, you know, there's a lot of documents and we want to get

6  through them and they keep getting produced.  So, you know,

7  we're -- we still continue not to be comfortable that the

8  document production is complete.

9          JUDGE VANASKIE:  Well, here's the problem that I have,

10  and that is that I'm not sure what you expect to be done about

11  it in the -- in the current state of things.  It seems like

12  every two weeks I have an agenda letter where Hetero discovery

13  is on the agenda and we have a nice discussion of the issue,

14  discovery continues to be made, not in dribs and drabs, in

15  substantial ways, but I'm hearing the same argument, it seems

16  to me, every couple of weeks.  And I'm wondering, you know,

17  where do we go with this?  Where do we go in terms of getting

18  it to a decision-making point?  Is that what you're asking?

19  You know, I've asked and I've gotten the representation from

20  Mr. Abraham that the information that was sought of other

21  defendants, prior to Hetero being in the case, is being

22  gathered by Mr. Abraham and Mr. Shah.  I would expect that the

23  information, to the extent it's discoverable, will be produced.

24          I was wondering whether I should be ordering there to

25  be an ESI interview such as I understood occurred with the

1   other defendants or are we too far down the road to have that

2   happen here, to do what Judge Schneider had ordered.

3        So I'll ask you to respond first, Mr. Parekh.

4        MR. PAREKH:  Three things that I think can be done

5   concretely.

6        One thing is, I think an ESI interview being ordered

7   would be helpful.  Obviously, you know, we appreciate Mr.

8   Abraham's note that he's responding to that letter.  Prior to

9   those interviews, we did have responses in writing from

10  defendants, so that would also be helpful to have prior to

11  having an interview; but we will almost inevitably need to have

12  a follow-up interview clarifying questions that we have to any

13  writing that's been done.  So I do think that that should be

14  ordered.

15       Number two, we're raising this issue in part because,

16  you know, what we may have to do, depending on the document

17  production, is to extend the time for us to be able to take

18  depositions of Hetero's witnesses past May 30th.  We understand

19  that that is certainly not an optimal thing for us to be able

20  to do and it's not something we want to do, but we may have no

21  choice to do it, given the way the document productions are

22  going.

23       And number three, you know, if we find, after today,

24  when Mr. Abraham and Mr. Shah have said that their document

25  production is complete, we believe that any documents produced

1    after today defendants should not be able to rely on in support

2    of any defenses.  You know, we should be able to use them, if

3    necessary, and we should be able to use them with their

4    witnesses, if necessary, but they should not be able to rely on

5    them in support of their defenses.

6           JUDGE VANASKIE:  All right.  Mr. Abraham?

7           MR. ABRAHAM:  Thank you, Judge.

8           First of all, we have no objection to an extension of

9    the deadlines to conclude these depositions.  We understand

10   that schedules are tight, in any event.

11          Second of all, I don't need to be ordered,

12   respectfully, Mr. Parekh, to have my client respond to the

13   letter that you never sent me.  I'm going to have my client

14   respond to that anyway.  This is a letter that I have, it's

15   dated November 11, 2019, to Mr. Goldberg.  If there is some

16   other form of that letter that you want me to respond to, you

17   tell me.  I'll email it to you so you know exactly what we're

18   talking about.  But I'm going to have my client answer each and

19   every aspect of that letter.

20          Once that's done, Your Honor, an interview may be

21   appropriate.  I think that that's a little bit premature at

22   this point to decide.  It may be that after we respond to this

23   letter Mr. Parekh says, I now feel comfortable, I understand

24   everything that needs to be understood.

25          On the last point, Your Honor, with respect to

1  documents and whether or not we're complete and whether or not

2  there should be a sanction of preclusion for allowing us to

3  rely upon them, I think we're way early and way premature for

4  that type of a remedy.  There's been no showing whatsoever that

5  there was any type of intentional misconduct or anything like

6  that on the part of Hetero Labs.  If anything, we're trying to

7  be as cooperative and as diligent as possible.

8       So what I would suggest, respectfully, to Mr. Parekh

9  and to Your Honor, I understand that we produced a significant

10  number of documents in the past 24 hours.  Let Mr. Parekh tell

11  me how long he needs to review them.  To the extent that he

12  wants to meet and confer, I am available any day that he

13  selects, any day.  I will clear my calendar and we can review

14  whatever open items and deficiencies that he may find and we'll

15  cure them.

16       JUDGE VANASKIE:  All right.  By when do you think, Mr.

17  Abraham, you'll be able to provide a written response to the

18  questions that were raised in the November 11, '19, letter to

19  Mr. Goldberg?

20       MR. ABRAHAM:  This is a wild guess because my client

21  hasn't told me how long he needs to respond.  I can tell you

22  that he typically responds to me -- if I send him an email in

23  the afternoon, he typically responds to me by the time I wake

24  up in the morning.

25       JUDGE VANASKIE:  Okay.

```
 1          MR. ABRAHAM:  This letter is five pages long.  It may
 2  need information from other sources.  It may be that some of
 3  the information that he sent to me this morning is responsive
 4  to this email, in which case I'm kind of ahead of the game.
 5          JUDGE VANASKIE:  Okay.
 6          MR. ABRAHAM:  It's hard for me to say specifically,
 7  Your Honor.
 8          JUDGE VANASKIE:  Would you feel comfortable providing
 9  at least a partial response by next Wednesday?
10          MR. ABRAHAM:  Yes, sir.
11          JUDGE VANASKIE:  All right.  So I'll direct that there
12  be a response to that letter, which may be in the file, I
13  haven't -- I don't have any familiarity with the letter itself
14  but I'll ask that it be provided by next Wednesday.  That seems
15  reasonable to me.
16          MR. ABRAHAM:  Would Your Honor like me to send you a
17  copy of the letter that I'm referring to?
18          JUDGE VANASKIE:  Yes, I would like to see that.
19          MR. ABRAHAM:  Okay.  Mr. Parekh, I'll send it to you
20  first to make sure we're talking about the right letter.
21          MR. PAREKH:  That's the right date of the letter.  I'm
22  sure it's the correct letter.
23          MR. ABRAHAM:  Okay.  Then I'll send it to Your Honor
24  as soon as this call ends.
25          JUDGE VANASKIE:  All right.  Very well.
```

1          Now, I will say one thing:  I teach a course on

2    electronic evidence.  I tell my students never say you've

3    produced everything because you don't know that you've produced

4    everything.  It simply is -- you know, I've seen too many cases

5    where that representation has been made only to be undercut by

6    something that shows up unexpectedly.

7          What I expect is that you represent that you've made a

8    diligent, good-faith effort to produce all responsive documents

9    and that's what you've done.

10          And so I guess what I'm trying to suggest, Mr. Parekh,

11    I wouldn't be very amenable to a sanctions motion because

12    something came up later, as long as it was shown that due

13    diligence has been exercised to find everything.  Now, if they

14    haven't, they didn't search the right spots or they put their

15    head in the sand in terms of learning what the right sources

16    are, you've asked questions about sources, you haven't received

17    answers yet, those are the types of things I'd be concerned

18    about.  I don't expect anybody to say, we've given you

19    everything we have that is responsive because, frankly, with

20    ESI, it's not likely that you have everything; 99 percent, 99.9

21    percent, but I'm just -- I'm just letting you know that.  But

22    where production has been sluggish, that can result in problems

23    for the producing party if it prejudices you.  So I'm sensitive

24    to that as well.

25          So I think you're making progress here.  I think it is

1   helpful that we'll have a written response to that ESI letter

2   that was sent back in November of 2019.  Productions to be

3   made, you still have to review that production, I understand

4   that.  And I'm hoping that in two weeks from now that the

5   report we get is that we've made substantial progress and we're

6   moving forward.

7           Now, if not, then we're going to have to get to a

8   point where this gets presented to me by way of an appropriate

9   motion.  I'm not sure what that motion is at the present time.

10  I'm not sure if it's a motion to compel or a motion for other

11  relief, but we're going to have to get to that point.

12          And I'm going to pause for a second while I get my

13  barking dog out of here.  Hold on.

14          (Brief recess taken at 4:47 p.m.)

15          JUDGE VANASKIE:  Sorry for the interruption.

16          Anything else on this, Mr. Abraham?

17          MR. ABRAHAM:  No, sir.  I thank Your Honor for the

18  time.

19          JUDGE VANASKIE:  All right.  Mr. Parekh, anything else

20  on this?

21          MR. PAREKH:  Not really, Your Honor.  We understand.

22  I've been working with ESI for almost 30 years now and I

23  completely understand where you're coming from.

24          JUDGE VANASKIE:  You would know better than I.

25          MR. PAREKH:  And we don't expect perfection and that's

1  not what we're looking for.  We're just very concerned about

2  the types and how crucial these documents are to the core

3  issues in the case, which is -- which is why we have a concern.

4  But we do understand what Your Honor is saying and we take that

5  to heart.

6          JUDGE VANASKIE:  Right.

7          MR. PAREKH:  I believe Ms. Goldenberg has a related

8  issue with Aurobindo on the same thing.  I think that's next on

9  the agenda.

10          JUDGE VANASKIE:  Yes, Aurobindo was the next issue on

11  the agenda.

12          Ms. Goldenberg?

13          MS. GOLDENBERG:  Hello, Your Honor.  Candidly, this is

14  not an issue that I thought we were going to be dealing with

15  today.  This is resulting from an email that I got an hour ago.

16          The email that I got an hour ago was that Aurobindo is

17  intending to make a last-minute document production tonight for

18  a deposition that's supposed to begin tomorrow morning at 8:00

19  a.m. relating to one witness that I just mentioned, Blessy

20  Johns, and then another witness whose deposition is starting on

21  Friday named Jasleen Gupta.

22          This document production apparently is going to be

23  20,000 documents.  And these 20,000 documents are larger than

24  the entire production that we had received from Aurobindo as of

25  November 2020 when Aurobindo told the Court that their

1    production was substantially complete.

2            Now, I've heard what you had to say about not

3    expecting perfection and I don't think that's what we're asking

4    for, but when we hear that we're getting more documents in one

5    day than a defendant produced in an entire year, understandably

6    we become concerned.

7            And what we're asking for, Your Honor, is we are here

8    to ask for sanctions because I feel like I sound like a broken

9    record at this point coming before the Court every single week

10   telling you about the production problems that we've had with

11   Aurobindo, but, unfortunately, these problems haven't corrected

12   themselves.

13           And, you know, what I wanted to emphasize also is that

14   these two witnesses are U.S. witnesses.  They were confirmed as

15   custodians by the Court in ECF 328 at Page 27 on December 23rd,

16   2019, which is more than a year ago.  So Aurobindo's known for

17   about a year and a half now that these individuals are two

18   people that have relevant documents and that their custodial

19   files should have been searched.

20           In spite of this, Aurobindo never sent a litigation

21   hold to one of these custodians even after the custodian was

22   designated by the Court; but this is not an issue that's

23   arising because of any of the Indian custodians who are later

24   confirmed on the record by the Court that we've been discussing

25   this year.

1          In the months leading up to the end of 2020, as you
2     know, the Court had set a deadline for the completion of
3     discovery and in December, a month afterwards, we had a
4     conversation with Aurobindo and asked them why their document
5     production was so small.  They, at that point, had produced
6     about 13,000 documents, which was substantially smaller than
7     what any other defendant in this case had produced.  And in the
8     December case management conference, Ms. Heinz stated on the
9     record, "We have completed our review of the 15 custodians that
10    we had for Aurobindo and it's my understanding that it is
11    substantially complete and we haven't been made aware of any
12    issues from the plaintiffs.  That's not to say that none will
13    be raised, but we're happy to work through anything that may
14    come up.  I don't anticipate anything but at this time we have
15    finished our review and produced everything we have."
16         That is far from true, as we found out this afternoon,
17    because we had previously about 1200 or 1900 documents for
18    Blessy Johns.  So to get 20,000 is exactly the type of scenario
19    that you had just talked about and it's not one that should
20    have been a surprise to Aurobindo for a custodian who's been
21    approved by the Court since the end of 2019.
22         We, again, have repeatedly questioned Aurobindo why is
23    the production so small, what's happening, and we were told,
24    you have to go and find the issue and if you find an issue,
25    then we'll work through something.  And as Mr. Parekh pointed

1  out earlier, we're trying to find the issues but I don't think

2  that's our job.  But here's what we have found.

3       We've taken two depositions so far and we found out

4  that Aurobindo did not look in the right places.  They only

5  searched email and the metadata for every single document that

6  had been produced for both Bhadresh Doshi and Prasad Gorijavolu

7  had file pads that show that every single document was either

8  an Outlook email or a document that was attached to an Outlook

9  email.  They didn't search the computer, they didn't search a

10 computer shared drive, and none of those documents had been

11 disclosed to us until we specifically raised this in a

12 deposition and only now are we starting to get some.

13      We also know that before both of those depositions we

14 got late-night productions from Aurobindo.  In both instances,

15 it was a rush to get our document vendor to load those

16 documents.  And in that case it was a few hundred.  It was

17 about 500 in one, a little more than 100 documents in another,

18 and that was, you know, inappropriate but not anything on the

19 scale of what we're dealing with here.

20      And, by the way, the way that this came up today was

21 we got an email saying, hey, plaintiffs, by the way, we are

22 sending you some additional documents tonight at 10:00 p.m. for

23 these two custodians.  No document count was disclosed in that

24 email, and I had to write back and ask them for it.  And it was

25 only then that they told us exactly what we were dealing with.

1          This is not something that they could not have

2   anticipated.  They knew these depositions were set, they knew

3   that we needed these documents, and even if they were in the

4   process of producing them, it would have been a nice

5   professional courtesy to get a call from one of them to say,

6   hey, we're working on this, we'll get these to you, do you want

7   to reschedule the deposition or can we work with you on this to

8   make sure that this gets done properly.  Instead,

9   unfortunately, we got them an hour before the case management

10  conference.

11          And, Your Honor, respectfully, we've been through this

12  with Aurobindo.  This is now a pattern, it's happened four out

13  of four times with depositions and there needs to be more of a

14  deterrent for them than just let's continue to work together.

15  And because of that, we're asking you to strike their defenses

16  in this case.  We can't let this behavior continue.  And we

17  need there to be some end to this process or this case is just

18  never going to get done, and at this point it's highly

19  prejudicial to our ability to prosecute our claims.

20          JUDGE VANASKIE:  Thank you.

21          Is Ms. Heinz on?  I think you're muted.

22          I think you are still muted.

23          MR. KOSCHINEG:  There we are.  Thanks.

24          Good afternoon, Your Honor.  This is Ernie Koschineg

25  on behalf of Aurobindo.

 1           I was actually speaking with Ms. Goldenberg via email

 2    last night about these upcoming depositions, specifically

 3    Blessy Johns.

 4           First and foremost, I think this idea of striking

 5    defenses and sanctions is way too premature.  We just learned,

 6    after the plaintiffs had made additional requests, we went

 7    back, exercised additional due diligence in this entire

 8    document process, which has been absolutely fluid every time

 9    we've met and conferred with them.  We've done additional

10    searches and we are now producing more documents.  We found out

11    late on the weekend that there were going to be additional

12    documents being produced with regard to -- or potentially to

13    Blessy Johns and Ms. Gupta who is to be deposed on Friday.  We

14    did our best to get through those records.  We had them

15    digested by our eDiscovery vendor.  That was not completed

16    until Monday, the entire digest process.  Then once we learned

17    who they were going to pertain to, and we learned of that this

18    afternoon, we, obviously, emailed Ms. Goldenberg, as she

19    pointed out.

20           At this point, we're doing our best to get through

21    this.  Every time there is an issue with discovery, we try to

22    address it.  We are doing our best to go ahead and meet

23    whatever requests that they have.  And at this point, to

24    sanction us without a motion is completely premature.  We are

25    totally willing to produce Ms. Johns whenever the plaintiffs

```
 1    want.  We're willing to make it in accordance to their
 2    calendars, we will make ourselves available, but, you know, to
 3    say that we are somehow being malicious or we are -- it's our
 4    intent to withhold documents, it's just simply not true.  I
 5    mean, we're trying to comply with their requests and that's
 6    exactly what we've done.
 7              MS. GOLDENBERG:  Your Honor, if I could just briefly
 8    respond to that.  And you're on mute this time.
 9              JUDGE VANASKIE:  Yes, I am on mute.  There we go.
10              Ms. Goldenberg?
11              MS. GOLDENBERG:  Yes.  Your Honor, I'll also just
12    point out that the defendants have worked out a process that
13    allow plaintiffs' cases to be dismissed entirely with prejudice
14    for failure to complete a Plaintiff Fact Sheet in a
15    satisfactory manner.  And so, you know, we're at the point
16    where this really has to go both ways.
17              Plaintiffs are held to a strict standard where they
18    have cases that have been subject to orders to show cause for
19    everything from failure to file a Plaintiff Fact Sheet to
20    failure to provide signed authorizations and executed
21    declarations, failure to properly respond to specific questions
22    in the Plaintiff Fact Sheet, failure to attach records, and
23    these are only things that were cited in the September 29,
24    2020, letter from the defendants.  There were even things that
25    asked for orders to show cause for failure to provide proper
```

```
 1    NDC codes.  So these are much smaller things than what the

 2    plaintiffs are dealing with on the other side, and there are

 3    severe consequences for them.  Those plaintiffs lose their

 4    cases.

 5            We've been dealing with this issue with Aurobindo for

 6    months now.  These documents were due in November.  There was a

 7    statement to the Court and to the plaintiffs on the record that

 8    this production was complete, and now we are where we are

 9    today, and, again, this really just needs to be a two-way

10    street.

11            JUDGE VANASKIE:  Well, this is a very serious matter.

12    And getting documents produced on the eve of the deposition,

13    especially the volume that you're talking about, is, quite

14    frankly, not understandable.  And it may be -- it may be a

15    pattern that has developed in this matter.

16            I cannot grant your motion for sanctions on a motion

17    presented to me today.  But it is a serious matter and would

18    warrant serious attention.  I certainly don't preclude you from

19    filing such a motion based upon the record that you can

20    present.  And it may be that there needs to be a hearing on

21    such a motion.  All I'm saying at the present time is that I

22    think you should take appropriate action that you consider.  I

23    know this just happened so you couldn't have presented the

24    motion to me sooner; but for me to strike defenses, I'd have to

25    give the other side an opportunity to be heard more so than
```

     responding orally here during the course of our regularly

     scheduled CMC.

          So I will give you that opportunity to move for

     sanctions.  If you think that's the appropriate sanction, that

     is preclusion of defenses, then you can present that to me by

     way of an appropriate motion adequately supported with an

     opportunity to respond.  You can seek other relief as well

     because I know you may be prejudiced in terms of taking the

     depositions tomorrow and Friday.  I'm sensitive to that as

     well.  But I can't grant the relief you request.  And you have,

     you've developed the record, presented a record, over a period

     of time where you all were repeatedly meeting and conferring,

     and the letters do exist, and that's why I say this is, indeed,

     a very serious matter and I am concerned about it.  But I

     simply don't think it would be appropriate for me to grant the

     relief you request based upon an oral motion made during the

     course of this case management conference.

          Is there anything else?

          MS. GOLDENBERG:  Not from me, Your Honor.  I

     appreciate that guidance and we'll bring the motion in the

     forum that you suggested.

          JUDGE VANASKIE:  All right.  Anything else on behalf

     of Aurobindo?

          MR. KOSCHINEG:  Nothing, Your Honor.

          JUDGE VANASKIE:  All right.  Is there anything else

```
 1   that you'd like to present to me today?

 2           (No response).

 3           JUDGE VANASKIE:  Mr. Slater --

 4           MR. GOLDBERG:  Nothing from defendants, Your Honor.

 5           JUDGE VANASKIE:  -- you told me not to ask that

 6   question and I am surprised, I didn't receive any answer so I

 7   guess it's okay.

 8           MR. SLATER:  I told you not to ask because you never

 9   know what you get.  I'm happily not going to say anything

10   today.  My colleagues have done a wonderful job for the

11   plaintiffs.  I think that you've done a lot of hard work

12   lately.  We're hoping that we can bring this to a close for the

13   day.

14           JUDGE VANASKIE:  Good.  Well, we will bring it to a

15   close for the day.  I won't ask any other questions.

16           We are adjourned.  Thank you very much.

17           MR. GOLDBERG:  Thank you, Your Honor.

18           MR. SLATER:  Thank you, Your Honor.

19           (The proceedings concluded at 5:02 p.m.)

20           - - - - - - - - - - - - - - - -

21

22

23

24

25
```

1          I certify that the foregoing is a correct transcript

2    from the record of proceedings in the above-entitled matter.

3

4    */S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR*
     *Court Reporter/Transcriber*

5

6    *04/16/2021*
     *Date*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'19** [1] - 33:18

**/**

**/S** [1] - 47:4

**0**

**04/16/2021** [1] - 47:6
**07068** [1] - 1:15
**08101** [1] - 1:9
**08540** [1] - 3:4

**1**

**10,000** [1] - 9:1
**100** [1] - 40:17
**103** [1] - 1:15
**10:00** [1] - 40:22
**11** [2] - 32:15, 33:18
**1200** [1] - 39:17
**13,000** [1] - 39:6
**14** [1] - 1:10
**15** [1] - 39:9
**1500** [1] - 7:13
**1638** [1] - 2:3
**17th** [1] - 2:12
**18** [2] - 4:15, 5:4
**1835** [1] - 1:18
**19-md-02875-RBK-KMW** [1] - 1:5
**1900** [1] - 39:17
**19103** [2] - 1:18, 2:13
**19422** [1] - 2:21

**2**

**20,000** [3] - 37:23, 39:18
**2019** [5] - 26:14, 32:15, 36:2, 38:16, 39:21
**2020** [3] - 37:25, 39:1, 43:24
**2021** [1] - 1:10
**2029** [1] - 3:10
**21** [1] - 3:3
**2150** [1] - 2:6
**23rd** [1] - 38:15
**24** [1] - 33:10
**2500** [1] - 2:16
**27** [1] - 38:15
**2800** [1] - 3:6
**28th** [3] - 18:23, 20:10, 21:5
**29** [1] - 43:23
**2900** [1] - 1:18

**3**

**30** [3] - 2:12, 7:12,

36:22
**30(b)(6** [2] - 20:16, 20:23
**30-plus** [1] - 8:1
**300** [1] - 3:10
**3030S** [1] - 2:17
**30th** [2] - 23:21, 31:18
**316** [1] - 1:21
**32502** [1] - 1:21
**328** [1] - 38:15
**3333** [1] - 2:16

**4**

**450** [1] - 2:21
**45202** [1] - 3:7
**4:00** [4] - 1:10, 4:2, 4:3, 24:23
**4:47** [1] - 36:14
**4th** [1] - 1:9

**5**

**50** [5] - 7:7, 7:12, 7:19, 8:24, 9:3
**500** [1] - 40:17
**55402** [1] - 2:6
**5:02** [1] - 46:19

**6**

**600** [2] - 1:21, 3:6
**609-774-1494** [1] - 1:24

**7**

**7,000** [1] - 21:19
**701** [1] - 2:9
**70130** [1] - 2:9

**8**

**800** [1] - 2:6
**8:00** [1] - 37:18

**9**

**90067** [1] - 3:10
**90277** [1] - 2:3
**99** [1] - 35:20
**99.9** [1] - 35:20
**9th** [1] - 22:3

**A**

**a.m** [1] - 37:19
**ability** [3] - 7:20, 8:11, 41:19
**able** [16] - 4:25, 6:24, 9:14, 15:10, 20:7, 24:20, 26:12, 28:11, 28:18, 31:17, 31:19, 32:1, 32:2, 32:3,

32:4, 33:17
**above-entitled** [1] - 47:2
**Abraham** [8] - 24:19, 24:20, 30:20, 30:22, 31:24, 32:6, 33:17, 36:16
**ABRAHAM** [12] - 3:2, 24:18, 24:22, 32:7, 33:20, 34:1, 34:6, 34:10, 34:16, 34:19, 34:23, 36:17
**Abraham's** [1] - 31:8
**absolutely** [1] - 42:8
**accommodation** [1] - 24:23
**accordance** [1] - 43:1
**accurate** [1] - 13:9
**Actavis** [2] - 2:18, 2:18
**ACTION** [1] - 1:4
**action** [1] - 44:22
**actual** [1] - 16:20
**ADAM** [1] - 1:14
**additional** [9] - 11:19, 11:24, 26:4, 27:23, 40:22, 42:6, 42:7, 42:9, 42:11
**address** [9] - 5:16, 6:6, 13:4, 18:11, 24:16, 28:6, 28:8, 28:11, 42:22
**addressed** [1] - 29:16
**addresses** [1] - 6:2
**addressing** [4] - 4:18, 6:14, 10:3, 11:7
**adequately** [1] - 45:6
**adjourned** [1] - 46:16
**advance** [4] - 18:20, 18:23, 18:25, 20:9
**advise** [1] - 5:2
**advised** [1] - 27:19
**afforded** [1] - 16:15
**afternoon** [8] - 4:20, 5:1, 10:8, 24:18, 33:23, 39:16, 41:24, 42:18
**afterwards** [1] - 39:3
**agenda** [6] - 4:11, 21:17, 30:12, 30:13, 37:9, 37:11
**ago** [4] - 23:9, 37:15, 37:16, 38:16
**agree** [2] - 16:24, 19:4
**agreed** [3] - 13:12, 20:25, 23:17
**agreeing** [1] - 5:25
**agreement** [4] - 5:14, 5:19, 9:23, 19:5
**agreements** [1] -

12:22
**ahead** [5] - 11:14, 13:19, 18:14, 34:4, 42:22
**Aid** [1] - 3:11
**aided** [1] - 1:25
**ALEXANDRA** [1] - 2:16
**Alexandra** [1] - 4:21
**aligned** [1] - 16:11
**allow** [1] - 43:13
**allowing** [1] - 33:2
**almost** [2] - 31:11, 36:22
**alone** [1] - 9:2
**ALSO** [1] - 3:13
**alternative** [1] - 7:18
**amenable** [1] - 35:11
**amend** [2] - 10:3, 10:14
**amended** [1] - 10:17
**AmerisourceBergen** [1] - 3:7
**Angeles** [1] - 3:10
**answer** [7] - 13:15, 14:13, 16:23, 17:2, 17:7, 32:18, 46:6
**answered** [6] - 17:4, 17:5, 17:16, 26:11, 26:19, 26:20
**answering** [1] - 13:21
**answers** [3] - 25:17, 26:11, 35:17
**anticipate** [1] - 39:14
**anticipated** [1] - 41:2
**anyway** [1] - 32:14
**apart** [1] - 19:16
**apologies** [1] - 10:7
**appear** [1] - 24:5
**appearance** [1] - 25:4
**applications** [1] - 22:19
**applies** [1] - 4:8
**appreciate** [3] - 24:23, 31:7, 45:20
**approach** [2] - 6:24, 15:12
**approached** [1] - 25:13
**appropriate** [6] - 32:21, 36:8, 44:22, 45:4, 45:6, 45:15
**appropriately** [2] - 9:11, 11:24
**approved** [1] - 39:21
**April** [4] - 1:10, 18:23, 20:10, 21:5
**argument** [1] - 30:15
**arising** [1] - 38:23
**aspect** [2] - 25:17,

32:19
**assume** [1] - 20:11
**Atlanta** [1] - 2:17
**attach** [1] - 43:22
**attached** [4] - 7:4, 12:3, 14:12, 40:8
**attempted** [1] - 12:11
**attend** [2] - 15:10, 15:11
**attention** [3] - 7:23, 25:2, 44:18
**Attorney** [1] - 3:4
**Aurobindo** [18] - 2:22, 37:8, 37:10, 37:16, 37:24, 37:25, 38:11, 38:20, 39:4, 39:10, 39:20, 39:22, 40:4, 40:14, 41:12, 41:25, 44:5, 45:23
**Aurobindo's** [1] - 38:16
**Aurolife** [1] - 2:22
**authorizations** [1] - 43:20
**available** [2] - 33:12, 43:2
**Avenue** [1] - 2:6
**avoid** [1] - 13:21
**aware** [2] - 8:12, 39:11

**B**

**BACH** [1] - 2:16
**background** [2] - 6:19, 22:3
**backstop** [1] - 27:25
**barking** [1] - 36:13
**BARNES** [1] - 3:8
**base** [1] - 10:20
**based** [3] - 9:20, 44:19, 45:16
**Baylen** [1] - 1:21
**Beach** [1] - 2:3
**become** [1] - 38:6
**becoming** [1] - 7:9
**begin** [1] - 37:18
**beginning** [2] - 13:11, 25:4
**behalf** [12] - 4:18, 4:21, 6:14, 10:8, 11:7, 13:4, 13:6, 19:11, 24:17, 25:4, 41:25, 45:22
**behavior** [1] - 41:16
**Behram** [1] - 21:24
**BEHRAM** [1] - 2:2
**Bell** [1] - 2:21
**bellwether** [6] - 4:13, 4:15, 5:3, 5:21, 5:23, 6:2
**BERNE** [1] - 3:5

**best** [6] - 7:17, 25:24, 26:2, 42:14, 42:20, 42:22
**better** [1] - 36:24
**between** [5] - 12:7, 14:2, 15:16, 25:10, 27:1
**Bhadresh** [1] - 40:6
**bit** [6] - 10:18, 14:22, 19:16, 22:2, 25:1, 32:21
**Blessy** [4] - 37:19, 39:18, 42:3, 42:13
**Blue** [1] - 2:21
**bogged** [1] - 7:25
**box** [1] - 26:5
**breach** [1] - 12:23
**brief** [3] - 10:10, 18:3, 18:21
**Brief** [1] - 36:14
**briefed** [1] - 15:8
**briefing** [3] - 7:14, 10:15, 18:19
**briefly** [3] - 8:8, 28:3, 43:7
**briefs** [4] - 14:5, 18:9, 18:10
**bring** [4] - 25:1, 45:20, 46:12, 46:14
**brings** [1] - 27:20
**broke** [1] - 15:25
**broken** [1] - 38:8
**brought** [2] - 7:22, 23:8
**Building** [1] - 1:8
**bunch** [1] - 29:21
**burden** [2] - 7:10, 9:10
**busy** [1] - 7:16
**BY** [11] - 1:14, 1:17, 1:20, 2:2, 2:5, 2:8, 2:11, 2:16, 2:20, 3:6, 3:9

## C

**calendar** [1] - 33:13
**calendars** [1] - 43:2
**California** [2] - 2:3, 3:10
**Camden** [1] - 1:9
**camera** [1] - 7:16
**Camille** [4] - 1:23, 4:3, 16:2, 47:4
**camillepedano@ gmail.com** [1] - 1:23
**Camp** [1] - 2:9
**candidly** [1] - 37:13
**cannot** [1] - 44:16
**cap** [2] - 8:22, 8:24
**capping** [1] - 9:2
**captured** [1] - 10:24

**carve** [1] - 12:11
**case** [18] - 13:14, 13:17, 15:9, 23:1, 25:4, 25:13, 25:20, 27:23, 30:21, 34:4, 37:3, 39:7, 39:8, 40:16, 41:9, 41:16, 41:17, 45:17
**cases** [5] - 5:23, 35:4, 43:13, 43:18, 44:4
**caucus** [1] - 8:11
**CCR** [1] - 47:4
**centralized** [1] - 22:21
**Century** [1] - 3:10
**certain** [10] - 11:21, 12:14, 12:20, 16:9, 16:22, 17:16, 17:20, 17:22, 20:4, 20:24
**certainly** [4] - 9:6, 13:24, 31:19, 44:18
**certify** [1] - 47:1
**challenge** [5] - 6:25, 7:14, 7:20, 8:23, 9:11
**challenged** [1] - 7:8
**challenges** [1] - 6:14
**chance** [3] - 8:6, 15:10, 29:15
**change** [1] - 29:10
**changed** [2] - 29:7, 29:8
**changes** [2] - 28:24, 29:9
**checked** [1] - 26:5
**choice** [2] - 23:25, 31:21
**Cincinnati** [1] - 3:7
**CIPRIANI** [1] - 2:19
**circle** [1] - 10:19
**circulated** [1] - 29:3
**cited** [1] - 43:23
**CIVIL** [1] - 1:4
**claim** [1] - 12:23
**claims** [3] - 12:15, 19:17, 41:19
**clarification** [1] - 17:9
**clarifying** [2] - 20:24, 31:12
**clarity** [1] - 15:21
**clear** [2] - 9:21, 33:13
**Clerk** [2] - 3:15
**client** [1] - 25:16, 26:10, 26:15, 26:18, 27:3, 27:18, 28:4, 32:12, 32:13, 32:18, 33:20
**close** [4] - 5:22, 13:22, 46:12, 46:15
**closely** [1] - 16:11
**CMC** [2] - 14:18, 45:2

**Coast** [1] - 2:3
**codes** [1] - 44:1
**Cohen** [1] - 3:7
**colleagues** [1] - 46:10
**collect** [1] - 26:2
**comfort** [1] - 23:5
**comfortable** [5] - 11:22, 27:17, 30:7, 32:23, 34:8
**coming** [3] - 15:2, 36:23, 38:9
**Commencing** [1] - 1:10
**Committee** [1] - 16:17
**communication** [1] - 7:3
**communications** [2] - 29:4, 29:11
**compel** [1] - 36:10
**complaint** [1] - 10:14
**complete** [13] - 5:20, 22:7, 22:10, 22:13, 28:16, 28:17, 30:8, 31:25, 33:1, 38:1, 39:11, 43:14, 44:8
**completed** [4] - 5:5, 22:4, 39:9, 42:15
**completely** [2] - 36:23, 42:24
**completion** [1] - 39:2
**complicated** [1] - 18:19
**comply** [1] - 43:5
**components** [1] - 4:14
**computer** [1] - 1:25, 40:9, 40:10
**computer-aided** [1] - 1:25
**concern** [2] - 23:11, 37:3
**concerned** [7] - 8:19, 9:2, 24:13, 35:17, 37:1, 38:6, 45:14
**concerns** [1] - 11:4, 22:16, 25:18
**conclude** [1] - 32:9
**concluded** [1] - 46:19
**concretely** [1] - 31:5
**confer** [13] - 8:6, 8:20, 12:3, 12:6, 13:24, 14:10, 15:14, 17:6, 19:15, 19:20, 20:22, 21:2, 33:12
**conference** [16] - 6:22, 6:23, 11:17, 11:20, 15:9, 15:10, 16:18, 17:14, 18:11, 18:20, 19:25, 20:10, 21:5, 39:8, 41:10, 45:17

**CONFERENCE** [1] - 1:6
**conferred** [4] - 5:7, 25:7, 27:3, 42:9
**conferring** [5] - 9:16, 19:24, 26:18, 26:24, 45:12
**confers** [2] - 6:6, 13:1
**confident** [2] - 23:18, 24:1, 28:11
**confirm** [1] - 29:25
**confirmed** [2] - 38:14, 38:24
**confused** [2] - 14:23, 14:25
**CONLEE** [1] - 2:8
**Conlee** [1] - 13:5
**consensus** [1] - 8:14
**consequences** [1] - 44:3
**consider** [2] - 8:25, 44:22
**contacts** [1] - 5:8
**containing** [1] - 29:21
**contemplated** [1] - 16:21
**continue** [4] - 13:19, 30:7, 41:14, 41:16
**Continued** [2] - 2:1, 3:1
**continues** [1] - 30:14
**contracts** [1] - 12:22
**Convention** [1] - 23:2
**conversation** [2] - 25:19, 39:4
**convincing** [1] - 13:21
**Cooper** [1] - 1:9
**cooperative** [1] - 33:7
**cooperatively** [1] - 6:4
**coordinate** [1] - 6:5
**copy** [4] - 25:15, 29:23, 30:3, 34:17
**core** [1] - 37:2
**Corporation** [1] - 3:11
**correct** [5] - 4:16, 8:9, 27:6, 34:22, 47:1
**corrected** [1] - 38:11
**counsel** [4] - 5:5, 5:6, 5:8, 10:12
**count** [1] - 40:23
**counterproposal** [4] - 7:2, 7:18, 8:5, 8:10
**couple** [4] - 12:2, 13:25, 20:24, 30:16
**course** [4] - 7:8, 35:1, 45:1, 45:17
**Court** [34] - 1:23, 5:2, 6:23, 7:1, 7:10, 8:15, 8:17, 9:8, 9:10, 9:14, 12:2, 13:12, 13:23,

14:1, 14:11, 14:13, 14:14, 15:3, 15:8, 15:14, 16:9, 17:5, 17:20, 18:3, 18:4, 37:25, 38:9, 38:15, 38:22, 38:24, 39:2, 39:21, 44:7, 47:4
**court** [1] - 4:4
**COURT** [2] - 1:2, 15:24
**Court's** [6] - 12:9, 15:6, 15:23, 16:5, 17:13, 25:1
**courtesy** [1] - 41:5
**Courthouse** [1] - 1:8
**Courtroom** [1] - 3:16
**cover** [2] - 5:1, 26:15
**covered** [2] - 28:22, 28:23
**CRC** [1] - 47:4
**CRR** [1] - 47:4
**crucial** [1] - 37:2
**cure** [1] - 33:15
**cured** [1] - 24:8
**current** [1] - 30:11
**custodial** [1] - 38:18
**custodian** [3] - 27:8, 38:21, 39:20
**custodians** [9] - 23:12, 23:17, 26:24, 27:17, 38:15, 38:21, 38:23, 39:9, 40:23
**cutoff** [1] - 23:21
**CVS** [1] - 3:11

## D

**DANIEL** [1] - 1:20
**data** [2] - 22:20, 22:22
**databases** [1] - 22:19
**Date** [1] - 47:6
**date** [2] - 19:4, 34:21
**dated** [1] - 32:15
**days** [5] - 5:21, 6:1, 18:22, 18:25, 28:7
**deadline** [1] - 39:2
**deadlines** [1] - 32:9
**dealing** [5] - 37:14, 40:19, 40:25, 44:2, 44:5
**December** [5] - 22:3, 28:17, 38:15, 39:3, 39:8
**decide** [2] - 13:23, 32:22
**decision** [2] - 14:4, 30:18
**decision-making** [1] - 30:18
**declarations** [1] - 43:21

**Defendant** [3] - 5:15, 5:18, 5:20
**defendant** [3] - 25:11, 38:5, 39:7
**defendants** [30] - 4:19, 4:21, 5:7, 5:20, 7:1, 8:22, 10:4, 10:9, 10:16, 10:19, 11:5, 11:6, 11:9, 11:20, 13:20, 16:24, 18:16, 20:17, 22:4, 22:6, 23:1, 25:15, 26:21, 30:21, 31:1, 31:10, 32:1, 43:12, 43:24, 46:4
**Defendants** [6] - 2:13, 2:17, 2:22, 3:4, 3:7, 3:11
**defendants'** [3] - 10:2, 13:10, 20:9
**defense** [6] - 5:6, 6:15, 9:7, 10:1, 10:15, 11:7
**defenses** [6] - 32:2, 32:5, 41:15, 42:5, 44:24, 45:5
**deficiencies** [3] - 24:8, 24:10, 33:14
**deficiency** [1] - 22:15
**delay** [1] - 23:2
**department** [2] - 27:11, 27:12
**deponent** [1] - 9:5
**depos** [2] - 5:8, 5:24
**deposed** [1] - 42:13
**deposition** [11] - 4:13, 4:22, 5:21, 6:1, 23:21, 26:25, 37:18, 37:20, 40:12, 41:7, 44:12
**depositions** [25] - 4:17, 5:3, 6:5, 6:6, 7:9, 7:11, 7:16, 8:2, 8:13, 23:17, 23:20, 23:22, 23:23, 23:25, 24:2, 24:4, 24:14, 31:18, 32:9, 40:3, 40:13, 41:2, 41:13, 42:2, 45:9
**Deputy** [1] - 3:16
**designated** [1] - 38:22
**detail** [2] - 26:8, 27:23
**detailed** [1] - 23:15
**determination** [1] - 17:15
**deterrent** [1] - 41:14
**developed** [2] - 44:15, 45:11
**devise** [1] - 8:16
**DFS** [1] - 6:7

**differences** [4] - 14:2, 19:17, 19:18, 23:24
**different** [2] - 12:2, 15:20
**digest** [1] - 42:16
**digested** [1] - 42:13
**diligence** [2] - 35:13, 42:7
**diligent** [3] - 25:24, 33:7, 35:8
**diligently** [1] - 28:4
**direct** [1] - 34:11
**direction** [1] - 17:13
**disagree** [1] - 18:1
**disagreement** [1] - 20:4
**disclosed** [2] - 40:11, 40:23
**disconnect** [1] - 16:20
**discover** [1] - 13:15
**discoverable** [1] - 30:23
**discovered** [1] - 24:3
**discovery** [25] - 5:23, 5:25, 6:7, 11:17, 11:19, 11:21, 12:12, 13:13, 13:16, 13:19, 13:22, 17:1, 17:16, 18:8, 19:18, 20:9, 21:8, 21:18, 23:13, 24:12, 30:12, 30:14, 39:3, 42:21
**discuss** [1] - 17:14
**discussed** [7] - 10:13, 11:18, 11:21, 14:24, 15:1, 17:12, 20:23
**discussing** [1] - 38:24
**discussion** [5] - 10:12, 16:16, 17:24, 25:14, 30:13
**discussions** [2] - 12:10, 19:14
**dismiss** [1] - 17:14
**dismissed** [3] - 12:16, 12:24, 43:13
**dispute** [1] - 4:24
**disputes** [1] - 7:22
**distinction** [1] - 12:25
**DISTRICT** [2] - 1:2, 1:2
**document** [31] - 6:13, 21:20, 22:5, 22:6, 22:9, 22:12, 22:24, 25:11, 25:22, 26:3, 26:6, 26:13, 26:17, 28:5, 28:7, 28:12, 28:16, 29:23, 30:8, 31:16, 31:21, 31:24, 37:17, 37:22, 39:4, 40:5, 40:7, 40:8,

40:15, 40:23, 42:8
**documents** [58] - 6:25, 7:8, 7:12, 7:13, 7:15, 7:19, 7:21, 8:19, 8:23, 8:25, 9:1, 9:13, 9:22, 21:19, 22:14, 24:1, 24:5, 24:11, 24:15, 25:8, 25:9, 25:24, 26:1, 26:3, 26:5, 26:8, 28:10, 28:19, 28:20, 28:25, 29:5, 29:7, 29:20, 29:21, 29:22, 29:24, 30:5, 31:25, 33:1, 33:10, 35:8, 37:2, 37:23, 38:4, 38:18, 39:6, 39:17, 40:10, 40:16, 40:17, 40:22, 41:3, 42:10, 42:12, 43:4, 44:6, 44:12
**dog** [1] - 36:13
**done** [15] - 7:2, 10:18, 12:10, 26:2, 30:10, 31:4, 31:13, 32:20, 35:9, 41:8, 41:18, 42:9, 43:6, 46:10, 46:11
**Doshi** [1] - 40:6
**down** [2] - 8:1, 31:1
**drabs** [1] - 30:14
**draft** [10] - 11:4, 17:20, 19:14, 20:25, 24:6, 28:24, 29:19, 29:21, 29:25
**draw** [1] - 13:1
**drawn** [1] - 12:7
**dribs** [1] - 30:14
**drive** [2] - 29:2, 40:10
**Drugs** [2] - 3:4, 22:9
**DUANE** [1] - 2:11
**due** [6] - 23:1, 23:24, 25:3, 35:12, 42:7, 44:6
**duplication** [2] - 19:18, 20:5
**during** [8] - 6:23, 7:16, 8:1, 11:20, 13:1, 10:22, 45:1, 45:16

**E**

**early** [1] - 33:3
**East** [1] - 3:10
**ECF** [1] - 38:15
**eDiscovery** [1] - 42:15
**edit** [1] - 29:3
**edited** [2] - 29:2, 29:7
**edits** [2] - 29:4, 29:6
**effort** [3] - 8:21, 25:24, 35:8

**efforts** [3] - 8:20, 9:23, 25:25
**Eisenhower** [1] - 1:15
**either** [4] - 12:8, 13:19, 27:5, 40:7
**electronic** [1] - 35:2
**elements** [1] - 9:4
**email** [12] - 7:3, 32:17, 33:22, 34:4, 37:15, 37:16, 40:5, 40:8, 40:9, 40:21, 40:24, 42:1
**emailed** [1] - 42:18
**emails** [1] - 29:21
**emphasize** [1] - 38:13
**encompass** [1] - 11:6
**encouraged** [1] - 7:1
**end** [7] - 7:9, 10:20, 21:14, 27:20, 39:1, 39:21, 41:17
**ends** [1] - 34:24
**engage** [1] - 9:6
**entire** [4] - 37:24, 38:5, 42:7, 42:16
**entirely** [1] - 43:13
**entities** [3] - 22:9, 22:18, 22:23
**entitled** [1] - 47:2
**equipment** [1] - 22:19
**Eric** [1] - 24:19
**ERIC** [1] - 3:2
**ERNEST** [1] - 2:20
**Ernie** [1] - 41:24
**ESI** [6] - 25:8, 30:25, 31:6, 35:20, 36:1, 36:22
**especially** [2] - 14:9, 44:13
**ESQUIRE** [17] - 1:14, 1:17, 1:20, 2:2, 2:5, 2:8, 2:11, 2:12, 2:16, 2:20, 2:20, 3:2, 3:3, 3:6, 3:9, 3:9, 3:14
**essentially** [2] - 8:9, 15:4
**eve** [1] - 44:12
**event** [1] - 32:10
**evidence** [4] - 29:4, 29:5, 29:8, 35:2
**evolving** [1] - 8:21
**exactly** [4] - 32:17, 39:18, 40:25, 43:6
**example** [3] - 12:21, 23:3, 24:3
**exceeds** [1] - 7:12
**exchanged** [1] - 18:10
**Excuse** [1] - 15:24
**excuse** [1] - 15:25
**executed** [1] - 43:20
**Executive** [1] - 16:17

**exercised** [2] - 35:13, 42:7
**exhaustive** [1] - 26:10
**exist** [4] - 19:17, 29:11, 29:12, 45:13
**exists** [1] - 8:22
**expect** [7] - 16:24, 18:24, 30:10, 30:22, 35:7, 35:18, 36:25
**expecting** [1] - 38:3
**explain** [1] - 15:18
**explanation** [2] - 16:9, 29:1
**expressed** [1] - 13:10
**extend** [1] - 31:17
**extension** [1] - 32:8
**extent** [3] - 13:20, 30:23, 33:11

**F**

**Fact** [6] - 5:15, 5:19, 5:20, 43:14, 43:19, 43:22
**fact** [5] - 11:21, 24:4, 26:4, 26:25, 27:18
**failure** [6] - 43:14, 43:19, 43:20, 43:21, 43:22, 43:25
**fairly** [1] - 10:9
**faith** [1] - 35:8
**familiarity** [1] - 34:13
**far** [5] - 29:3, 29:11, 31:1, 39:16, 40:3
**fast** [1] - 18:24
**favorable** [2] - 9:5, 9:15
**felt** [2] - 7:17, 11:23
**few** [6] - 16:13, 18:22, 18:25, 22:13, 28:21, 40:16
**file** [4] - 30:2, 34:12, 40:7, 43:19
**filed** [1] - 12:3
**files** [1] - 38:19
**filing** [1] - 44:19
**final** [7] - 24:5, 29:2, 29:19, 29:22, 29:24, 30:1, 30:3
**fine** [5] - 15:11, 17:11, 18:6, 18:23, 20:14
**finish** [1] - 6:21
**finished** [1] - 39:15
**first** [8] - 4:13, 5:3, 22:17, 25:20, 31:3, 32:8, 34:20, 42:4
**fish** [1] - 24:11
**five** [1] - 34:1
**Florida** [1] - 1:21
**fluid** [1] - 42:8
**flux** [2] - 11:25, 17:23

*follow* [2] - 19:22, 31:12
*follow-up* [1] - 31:12
*following* [1] - 16:3
*FOR* [1] - 1:2
*foregoing* [1] - 47:1
*foremost* [1] - 42:4
*form* [1] - 32:16
*forth* [1] - 20:5
*forum* [1] - 45:21
*forward* [8] - 18:5, 18:6, 21:4, 23:19, 23:25, 24:2, 24:13, 36:6
*four* [3] - 18:4, 41:12, 41:13
*frankly* [3] - 12:13, 35:19, 44:14
*FREEMAN* [1] - 1:14
*Friday* [4] - 7:3, 37:21, 42:13, 45:9
*front* [2] - 8:17, 9:10
*future* [1] - 17:17

**G**

*game* [1] - 34:4
*gathered* [1] - 30:22
*general* [1] - 22:20
*GEOPPINGER* [5] - 3:6, 19:8, 19:11, 20:11, 21:11
*Geoppinger* [3] - 11:10, 19:9, 19:10
*Georgia* [1] - 2:17
*given* [4] - 7:10, 27:10, 31:21, 35:18
*glad* [1] - 24:20
*GOLDBERG* [10] - 2:11, 4:5, 6:17, 6:21, 7:6, 9:19, 9:25, 10:5, 46:4, 46:17
*Goldberg* [7] - 6:16, 6:18, 8:9, 9:6, 9:17, 32:15, 33:19
*Goldberg's* [1] - 9:15
*goldenberg* [2] - 37:12, 42:1
*GOLDENBERG* [7] - 2:5, 2:5, 10:24, 37:13, 43:7, 43:11, 45:19
*Goldenberg* [6] - 10:13, 10:22, 21:23, 37:7, 42:18, 43:10
*GOLOMB* [1] - 1:17
*good-faith* [1] - 35:8
*Gorjavolu* [1] - 40:6
*grant* [3] - 44:16, 45:10, 45:15
*great* [1] - 6:12

*GREENBERG* [1] - 2:15
*groups* [1] - 10:19
*guess* [1] - 18:9, 33:20, 35:10, 46:7
*guidance* [6] - 12:9, 14:1, 14:9, 15:6, 17:20, 45:20
*Gupta* [2] - 37:21, 42:13

**H**

*Hague* [2] - 23:2, 25:3
*half* [1] - 38:17
*handled* [1] - 14:7
*hands* [1] - 26:12
*happily* [1] - 46:9
*happy* [2] - 20:6, 39:13
*hard* [4] - 18:24, 29:6, 34:6, 46:11
*hard-and-fast* [1] - 18:24
*head* [3] - 27:11, 27:12, 35:15
*headway* [1] - 21:2
*Healthcare* [1] - 2:14
*hear* [4] - 4:9, 6:19, 27:18, 38:4
*heard* [4] - 6:8, 19:8, 38:2, 44:25
*hearing* [3] - 24:23, 30:15, 44:20
*heart* [1] - 37:5
*HEINZ* [1] - 2:20
*Heinz* [2] - 39:8, 41:21
*held* [2] - 4:1, 43:17
*hello* [1] - 37:13
*help* [1] - 17:8
*helpful* [4] - 15:20, 31:7, 31:10, 36:1
*Hetero* [21] - 3:4, 21:17, 22:8, 22:9, 22:18, 23:1, 23:4, 23:9, 23:12, 24:6, 24:17, 25:2, 25:5, 25:20, 28:15, 30:12, 30:21, 33:6
*Hetero's* [2] - 22:12, 31:18
*highly* [1] - 41:18
*Highway* [1] - 2:3
*HILL* [1] - 3:2
*history* [3] - 13:9, 25:1, 27:15
*hold* [12] - 23:13, 23:16, 26:22, 26:23, 27:5, 27:7, 27:10, 27:13, 27:16, 27:19, 36:13, 38:21

*HONIK* [5] - 1:17, 1:17, 4:6, 8:8, 9:24
*Honik* [3] - 6:23, 7:7, 8:7
*Honor* [60] - 4:5, 4:20, 5:15, 6:11, 6:18, 7:15, 8:8, 9:1, 9:19, 9:24, 10:8, 11:8, 11:13, 13:5, 14:20, 14:22, 16:13, 16:19, 17:10, 17:19, 19:1, 19:7, 19:8, 20:19, 20:22, 21:6, 21:12, 21:15, 21:24, 22:18, 23:9, 24:18, 24:23, 24:25, 26:7, 26:22, 27:3, 27:22, 28:3, 32:20, 32:25, 33:9, 34:7, 34:16, 34:23, 36:17, 36:21, 37:4, 37:13, 38:7, 41:11, 41:24, 43:7, 43:11, 45:19, 45:24, 46:4, 46:17, 46:18
*Honor's* [3] - 7:22, 8:12, 12:5
*Honorable* [2] - 3:15, 4:2
*HONORABLE* [1] - 1:11
*hope* [2] - 9:14, 26:20
*hopefully* [1] - 20:6
*hoping* [2] - 36:4, 46:12
*hour* [4] - 22:25, 37:15, 37:16, 41:9
*hours* [2] - 23:24, 33:10
*Huahai* [1] - 2:14
*hundred* [2] - 22:14, 40:16

**I**

*idea* [3] - 9:2, 24:14, 42:4
*identified* [4] - 24:8, 26:1, 27:8, 27:17
*identify* [2] - 22:19, 29:23
*identifying* [1] - 24:9
*important* [2] - 16:14, 27:2
*IN* [1] - 1:5
*inappropriate* [1] - 40:18
*Inc* [4] - 2:18, 2:18, 2:22, 3:11
*include* [1] - 27:7
*including* [1] - 12:2
*inconsistent* [2] -

14:23, 15:1
*indeed* [1] - 45:13
*index* [1] - 28:21
*India* [2] - 22:9, 23:23
*Indian* [1] - 38:23
*indicated* [2] - 8:3, 25:5
*individuals* [1] - 38:17
*Industries* [1] - 2:17
*inefficient* [1] - 17:25
*inevitably* [1] - 31:11
*information* [9] - 22:23, 23:3, 23:6, 27:13, 30:20, 30:23, 34:2, 34:3
*instances* [1] - 40:14
*instead* [1] - 41:8
*instruction* [2] - 27:10, 27:11
*intended* [1] - 15:3
*intending* [1] - 37:17
*intent* [1] - 43:4
*intentional* [1] - 33:5
*intermediate* [1] - 29:12
*internally* [1] - 8:11
*interruption* [1] - 36:15
*interview* [5] - 30:25, 31:6, 31:11, 31:12, 32:20
*interviews* [1] - 31:9
*involved* [1] - 23:1
*ironed* [1] - 12:20
*issue* [29] - 9:9, 9:16, 9:18, 10:1, 11:4, 11:12, 11:18, 12:4, 15:11, 18:3, 21:17, 22:4, 26:16, 26:22, 28:6, 29:14, 29:17, 29:19, 29:20, 30:13, 31:15, 37:8, 37:10, 37:14, 38:22, 39:24, 42:21, 44:5
*issues* [21] - 6:2, 6:7, 7:14, 8:2, 8:17, 9:20, 12:1, 12:21, 13:22, 16:16, 20:5, 22:11, 23:2, 25:3, 28:9, 28:12, 28:22, 28:23, 37:3, 39:12, 40:1
*item* [2] - 4:13, 6:13
*items* [1] - 33:14
*iteration* [1] - 28:10
*iterations* [2] - 26:1, 28:10
*itself* [1] - 34:13

**J**

*Jasleen* [1] - 37:21

*Jeff* [1] - 19:9
*JEFFREY* [1] - 3:6
*JERSEY* [1] - 1:2
*Jersey* [3] - 1:9, 1:15, 3:4
*JESSICA* [2] - 2:12, 2:20
*job* [3] - 24:9, 40:2, 46:10
*Johns* [5] - 37:20, 39:18, 42:3, 42:13, 42:25
*Johnston* [3] - 10:8, 10:24, 11:8
*JOHNSTON* [10] - 3:9, 10:7, 11:2, 11:8, 11:13, 11:15, 19:7, 20:21, 21:6, 21:9
*Judge* [6] - 22:3, 22:5, 25:6, 28:1, 31:2, 32:7
*JUDGE* [65] - 4:3, 4:7, 4:23, 5:17, 6:8, 6:12, 6:20, 7:5, 8:7, 9:17, 9:21, 10:1, 10:22, 11:1, 11:3, 11:11, 11:14, 13:3, 14:3, 14:15, 14:19, 14:21, 15:25, 17:8, 17:15, 18:7, 18:17, 18:22, 19:3, 19:6, 19:10, 20:8, 20:14, 21:4, 21:7, 21:10, 21:13, 21:16, 22:1, 24:16, 24:20, 28:2, 28:14, 30:9, 32:6, 33:16, 33:25, 34:5, 34:8, 34:11, 34:18, 34:25, 36:15, 36:19, 36:24, 37:6, 37:10, 41:20, 43:9, 44:11, 45:22, 45:25, 46:3, 46:5, 46:14
*Judicial* [1] - 3:15
*June* [1] - 25:21

**K**

*KANNER* [1] - 2:8
*KATZ* [1] - 1:14
*keep* [1] - 30:6
*kept* [1] - 22:22
*kind* [3] - 7:25, 25:14, 34:4
*KIRTLAND* [1] - 2:2
*known* [1] - 38:16
*Koschineg* [1] - 41:24
*KOSCHINEG* [3] - 2:20, 41:23, 45:24
*KRISTEN* [1] - 3:9
*Kristen* [3] - 10:5,

11:9, 14:24
**Kugler** [1] - 3:15

## L

**Labs** [6] - 3:4, 22:8, 25:2, 25:5, 25:20, 33:6
**Labs'** [1] - 22:9
**LAGOS** [4] - 2:16, 4:20, 4:24, 5:18
**Lagos** [1] - 4:21
**laid** [1] - 8:9
**larger** [1] - 37:23
**larry** [1] - 3:16
**Lasalle** [1] - 2:6
**last** [12] - 6:22, 6:23, 11:17, 13:8, 15:13, 20:22, 21:1, 22:13, 28:7, 32:25, 37:17, 42:2
**last-minute** [1] - 37:17
**late** [3] - 25:2, 40:14, 42:11
**late-night** [1] - 40:14
**lately** [1] - 46:12
**Law** [1] - 3:15
**LAW** [1] - 2:5
**lay** [1] - 26:12
**leading** [1] - 39:1
**learned** [3] - 42:5, 42:16, 42:17
**learning** [1] - 35:15
**least** [8] - 5:21, 17:11, 18:25, 21:21, 28:18, 28:21, 29:14, 34:9
**leave** [2] - 10:3, 10:14
**left** [2] - 10:18, 22:16
**letter** [38] - 4:11, 4:12, 7:4, 8:3, 10:1, 12:15, 14:5, 18:9, 18:21, 21:19, 22:17, 23:15, 25:10, 25:12, 25:15, 26:7, 26:13, 26:14, 26:20, 27:5, 28:25, 30:12, 31:8, 32:13, 32:14, 32:16, 32:19, 32:23, 33:18, 34:1, 34:12, 34:13, 34:17, 34:20, 34:21, 34:22, 36:1, 43:24
**letters** [2] - 12:3, 45:13
**letting** [1] - 35:21
**level** [2] - 23:5, 26:2
**LEVIN** [1] - 1:20
**LIABILITY** [1] - 1:5
**likely** [1] - 35:20
**limit** [1] - 7:24
**limited** [1] - 17:7
**line** [2] - 12:6, 27:1

**list** [4] - 5:8, 26:10, 27:6, 27:10
**lists** [1] - 25:25
**lit** [2] - 23:13, 23:16
**lit-hold** [2] - 23:13, 23:16
**LITIGATION** [1] - 1:5
**litigation** [9] - 26:22, 26:23, 27:5, 27:7, 27:10, 27:13, 27:16, 27:19, 38:20
**LLC** [6] - 1:14, 2:5, 2:8, 2:14, 2:18, 2:22
**LLP** [6] - 2:2, 2:11, 2:15, 3:2, 3:5, 3:8
**load** [2] - 28:20, 40:15
**locate** [1] - 29:22
**Lockard's** [1] - 4:22
**look** [6] - 20:3, 21:4, 28:19, 28:21, 29:15, 40:4
**looking** [5] - 14:16, 17:9, 28:18, 28:20, 37:1
**looks** [3] - 11:10, 28:23, 29:25
**LORETTA** [1] - 3:14
**Los** [1] - 3:10
**lose** [2] - 16:2, 44:3
**Louisiana** [1] - 2:9
**Ltd** [2] - 2:14, 2:17

## M

**MacStravic** [1] - 3:16
**maintained** [1] - 13:11
**malicious** [1] - 43:3
**management** [5] - 15:9, 26:9, 39:8, 41:9, 45:17
**manner** [2] - 4:10, 43:15
**manufacturer** [1] - 8:25
**marked** [1] - 6:25
**Market** [1] - 1:18
**Marlene** [1] - 10:13
**MARLENE** [1] - 2:5
**Master** [1] - 4:2
**master** [1] - 10:14
**MASTER** [1] - 1:11
**matter** [7] - 14:4, 21:18, 44:11, 44:15, 44:17, 45:14, 47:2
**MAZIE** [1] - 1:14
**mean** [5] - 23:13, 28:18, 29:10, 30:5, 43:5
**mechanical** [1] - 1:25
**mechanism** [2] - 8:16, 9:9

**meet** [18] - 4:25, 6:6, 8:4, 8:6, 8:20, 12:3, 12:6, 13:1, 13:24, 14:10, 15:13, 17:6, 19:15, 19:20, 20:22, 21:2, 33:12, 42:22
**meet-and-confer** [1] - 8:20
**meeting** [5] - 9:16, 19:24, 22:25, 26:24, 45:12
**meetings** [1] - 9:20
**mentioned** [2] - 5:10, 37:19
**met** [3] - 5:6, 25:7, 42:9
**metadata** [1] - 40:5
**mics** [1] - 4:8
**midday** [1] - 8:10
**might** [4] - 7:9, 7:15, 7:22, 11:5
**mine** [1] - 21:24
**minimal** [1] - 8:11
**minimum** [1] - 7:13
**Minneapolis** [1] - 2:6
**Minnesota** [1] - 2:6
**minute** [1] - 37:17
**misconduct** [1] - 33:5
**missed** [1] - 27:23
**missing** [3] - 24:15, 26:1, 30:4
**Mitchell** [1] - 1:8
**MITCHELL** [1] - 1:20
**Monday** [2] - 8:10, 42:16
**month** [1] - 39:3
**months** [7] - 7:9, 8:1, 25:21, 39:1, 44:6
**morning** [6] - 5:7, 26:11, 29:15, 33:24, 34:3, 37:18
**MORRIS** [1] - 2:11
**motion** [15] - 10:2, 35:11, 36:9, 36:10, 42:24, 44:16, 44:19, 44:21, 44:24, 45:6, 45:16, 45:20
**motions** [3] - 10:13, 10:17, 13:13
**move** [3] - 18:5, 45:3
**moving** [1] - 36:6
**MR** [41] - 4:5, 4:6, 6:10, 6:17, 6:21, 7:6, 8:8, 9:19, 9:24, 9:25, 10:5, 19:8, 19:11, 20:11, 21:11, 21:24, 22:2, 24:18, 24:22, 28:3, 28:15, 31:4, 32:7, 33:20, 34:1, 34:6, 34:10, 34:16,

34:19, 34:21, 34:23, 36:17, 36:21, 36:25, 37:7, 41:23, 45:24, 46:4, 46:8, 46:17, 46:18
**MS** [35] - 4:20, 4:24, 5:18, 10:7, 10:24, 11:2, 11:8, 11:13, 11:15, 13:5, 14:7, 14:17, 14:20, 14:22, 16:6, 16:19, 17:10, 17:18, 18:13, 18:14, 18:15, 18:18, 19:1, 19:2, 19:4, 19:7, 20:19, 20:21, 21:6, 21:9, 21:15, 37:13, 43:7, 43:11, 45:19
**multi** [1] - 22:25
**multi-hour** [1] - 22:25
**multiday** [1] - 23:22
**multiple** [2] - 12:10, 22:11, 22:16
**multiples** [1] - 8:13
**multiplied** [1] - 7:11
**must** [1] - 17:16
**mute** [3] - 4:8, 10:6, 11:16, 43:8, 43:9
**muted** [3] - 6:16, 41:21, 41:22
**Mylan** [2] - 9:1, 23:4

## N

**NAKUL** [1] - 3:3
**name** [1] - 4:20
**named** [2] - 5:20, 37:21
**names** [1] - 23:15
**NDC** [1] - 44:1
**NE** [1] - 2:16
**near** [1] - 17:17
**nearly** [1] - 28:5
**necessary** [2] - 32:3, 32:4
**need** [12] - 9:20, 12:8, 12:9, 16:23, 23:7, 23:19, 23:22, 24:2, 31:11, 32:11, 34:2, 41:17
**needed** [1] - 41:3
**needs** [7] - 18:18, 32:24, 33:11, 33:21, 41:13, 44:9, 44:20
**negotiate** [4] - 15:5, 15:6, 15:19
**negotiated** [5] - 11:23, 12:7, 15:15, 16:10, 17:21
**negotiating** [1] - 11:23
**negotiation** [1] - 16:7
**negotiations** [3] -

11:18, 13:8, 20:2
**never** [7] - 25:12, 25:13, 32:13, 35:2, 38:20, 41:18, 46:8
**NEW** [1] - 1:2
**New** [4] - 1:9, 1:15, 2:9, 3:4
**news** [1] - 9:15
**next** [19] - 6:13, 7:8, 8:1, 10:1, 10:15, 11:4, 11:19, 13:25, 14:17, 15:8, 17:14, 18:11, 18:20, 19:25, 21:17, 34:9, 34:14, 37:8, 37:10
**nice** [2] - 30:13, 41:4
**NIGH** [2] - 1:20, 6:10
**Nigh** [4] - 4:25, 5:5, 6:4, 6:8
**night** [2] - 40:14, 42:1
**nilly** [1] - 8:18
**non** [2] - 6:13, 6:25
**non-responsive** [2] - 6:13, 6:25
**none** [4] - 29:10, 29:11, 39:12, 40:10
**nonstarter** [2] - 8:24, 9:3
**note** [1] - 31:8
**noted** [2] - 22:24, 28:25
**nothing** [5] - 9:19, 21:11, 21:14, 45:24, 46:4
**notice** [5] - 20:23, 20:25, 27:7, 27:13, 27:16
**notices** [5] - 20:17, 22:15, 23:13, 23:16, 26:23
**November** [7] - 25:22, 26:14, 32:15, 33:18, 36:2, 37:25, 44:6
**number** [9] - 7:11, 7:15, 7:21, 28:8, 28:17, 31:15, 31:23, 33:10
**NUMBER** [1] - 1:4
**numbers** [1] - 4:16
**numerous** [3] - 23:14, 23:21, 24:5

## O

**objection** [1] - 32:8
**obviously** [7] - 7:21, 10:16, 16:16, 20:6, 26:23, 31:7, 42:18
**occur** [2] - 8:20, 14:17
**occurred** [1] - 30:25
**odd** [1] - 23:24

**OF** [1] - 1:2
**Official** [1] - 1:23
**official** [2] - 29:22, 30:2
**Ohio** [1] - 3:7
**once** [2] - 32:20, 42:16
**one** [19] - 4:14, 7:20, 12:2, 14:10, 15:20, 21:2, 24:3, 26:2, 28:15, 28:23, 29:17, 31:6, 35:1, 37:19, 38:4, 38:21, 39:19, 40:17, 41:5
**ones** [2] - 12:18, 24:12
**ongoing** [1] - 11:18
**open** [1] - 33:14
**opportunity** [4] - 16:15, 44:25, 45:3, 45:7
**optimal** [1] - 31:19
**oral** [1] - 45:16
**orally** [2] - 27:5, 45:1
**order** [3] - 4:12, 24:2, 28:5
**ordered** [5] - 22:18, 31:2, 31:6, 31:14, 32:11
**ordering** [1] - 30:24
**orders** [2] - 43:18, 43:25
**Orleans** [1] - 2:9
**ourselves** [1] - 43:2
**outline** [1] - 12:15
**outlined** [1] - 12:1
**Outlook** [2] - 40:8
**outstanding** [2] - 6:6, 22:16
**overlap** [1] - 27:1
**oversaw** [1] - 25:6
**own** [1] - 17:3

## P

**P.A** [1] - 1:20
**P.C** [2] - 1:17, 2:19
**p.m** [5] - 1:10, 4:2, 36:14, 40:22, 46:19
**Pacific** [1] - 2:3
**PACKARD** [1] - 2:2
**pads** [1] - 40:7
**Page** [1] - 38:15
**pages** [4] - 21:19, 22:14, 26:5, 34:1
**PAPANTONIO** [1] - 1:20
**Parekh** [18] - 21:25, 25:5, 25:18, 27:6, 27:21, 28:6, 28:9, 28:12, 28:14, 31:3, 32:12, 32:23, 33:8, 33:10, 34:19, 35:10,

36:19, 39:25
**PAREKH** [9] - 2:2, 21:24, 22:2, 28:15, 31:4, 34:21, 36:21, 36:25, 37:7
**Park** [1] - 3:10
**Parkway** [2] - 1:15, 2:21
**part** [4] - 8:21, 27:24, 31:15, 33:6
**partial** [1] - 34:9
**particular** [2] - 22:21, 28:10
**parties** [10] - 7:10, 7:25, 12:6, 14:2, 15:16, 17:6, 25:6, 26:14, 26:24, 27:18
**party** [2] - 25:2, 35:23
**passed** [1] - 13:18
**past** [3] - 14:7, 31:18, 33:10
**pattern** [2] - 41:12, 44:15
**pause** [1] - 13:20, 36:12
**Pedano** [2] - 1:23, 47:4
**pending** [3] - 6:2, 9:23, 13:13
**Pennsylvania** [3] - 1:18, 2:13, 2:21
**Pensacola** [1] - 1:21
**people** [3] - 27:14, 27:16, 38:18
**per** [6] - 7:8, 7:12, 7:21, 8:25, 9:5, 9:15
**percent** [2] - 35:20, 35:21
**perfect** [1] - 27:1
**perfection** [2] - 36:25, 38:3
**period** [3] - 7:16, 8:1, 45:11
**permit** [1] - 27:22
**person** [2] - 27:4, 27:9
**persons** [1] - 4:8
**pertain** [3] - 12:15, 42:17
**Pharma** [3] - 2:18, 2:22, 2:22
**Pharmaceutical** [1] - 2:17
**Pharmaceuticals** [3] - 2:13, 2:14, 2:18
**pharmacies** [11] - 11:10, 12:16, 12:24, 15:10, 16:14, 17:12, 18:4, 19:16, 19:19, 21:8, 21:9
**Pharmacy** [1] - 3:11

**pharmacy** [5] - 10:9, 11:5, 11:9, 11:20, 20:17
**phases** [1] - 13:17
**Philadelphia** [2] - 1:18, 2:13
**physicians** [1] - 4:17
**Piedmont** [1] - 2:16
**places** [1] - 40:4
**plaintiff** [2] - 4:13, 26:16
**Plaintiff** [3] - 43:14, 43:19, 43:22
**Plaintiffs** [6] - 1:16, 1:19, 1:22, 2:4, 2:7, 2:10
**plaintiffs** [34] - 4:15, 5:25, 6:24, 7:3, 7:7, 7:19, 8:3, 8:6, 9:20, 10:20, 11:22, 12:19, 13:4, 13:6, 15:2, 15:18, 15:21, 16:8, 16:12, 18:1, 25:10, 25:14, 26:13, 26:21, 27:16, 39:12, 40:21, 42:6, 42:25, 43:17, 44:2, 44:3, 44:7, 46:11
**plaintiffs'** [8] - 5:5, 5:8, 5:23, 5:24, 10:2, 10:12, 24:9, 43:13
**plan** [2] - 5:12, 10:19
**planning** [1] - 19:21
**pleadings** [5] - 10:17, 11:25, 12:14, 16:8, 17:24
**point** [24] - 11:23, 11:24, 12:8, 12:10, 12:20, 12:24, 13:17, 16:7, 17:21, 18:1, 18:7, 24:1, 30:18, 32:22, 32:25, 36:8, 36:11, 38:9, 39:5, 41:18, 42:20, 42:23, 43:12, 43:15
**pointed** [2] - 39:25, 42:19
**policies** [2] - 25:12, 26:17
**posed** [1] - 20:23
**position** [13] - 13:10, 14:11, 14:12, 16:22, 17:3, 17:22, 18:1, 18:10, 18:15, 20:1, 20:8, 20:20
**positions** [2] - 18:20, 20:6
**possibility** [1] - 7:25
**possible** [2] - 6:24, 33:7

**potential** [1] - 7:15
**potentially** [2] - 7:22, 42:12
**practices** [1] - 26:9
**Prasad** [1] - 40:6
**preclude** [1] - 44:18
**preclusion** [2] - 33:2, 45:5
**prejudging** [1] - 8:20
**prejudice** [1] - 43:13
**prejudiced** [1] - 45:8
**prejudices** [1] - 35:23
**prejudicial** [1] - 41:19
**premature** [4] - 32:21, 33:3, 42:5, 42:24
**prepared** [2] - 16:13, 17:14
**preparing** [1] - 24:4
**prescribers** [1] - 5:10
**prescribing** [1] - 4:17
**present** [11] - 13:21, 14:1, 14:13, 16:9, 16:15, 18:10, 36:9, 44:20, 44:21, 45:5, 46:1
**PRESENT** [1] - 3:13
**presented** [8] - 6:23, 7:19, 14:4, 25:25, 36:8, 44:17, 44:23, 45:11
**preserving** [1] - 9:11
**presume** [1] - 19:25
**pretty** [1] - 13:9
**previously** [3] - 15:1, 17:13, 39:17
**Princeton** [1] - 3:4
**Prinston** [1] - 2:13
**PRISELAC** [1] - 2:12
**problem** [1] - 30:9
**problems** [3] - 35:22, 38:10, 38:11
**proceed** [4] - 4:4, 4:10, 12:13, 15:7
**proceeding** [1] - 19:15
**proceedings** [2] - 46:19, 47:2
**PROCEEDINGS** [1] - 4:1
**Proceedings** [1] - 1:25
**process** [12] - 5:4, 5:12, 8:16, 8:17, 19:24, 25:6, 26:17, 41:4, 41:17, 42:8, 42:16, 43:12
**PROCTOR** [1] - 1:20
**produce** [3] - 25:24, 35:8, 42:25
**produced** [20] - 1:25, 21:20, 22:15, 23:17,

23:18, 24:11, 29:14, 30:6, 30:23, 31:25, 33:9, 35:3, 38:5, 39:5, 39:7, 39:15, 40:6, 42:12, 44:12
**producing** [3] - 35:23, 41:4, 42:10
**production** [20] - 11:5, 11:19, 22:5, 24:10, 25:22, 28:7, 28:20, 30:8, 31:17, 31:25, 35:22, 36:3, 37:17, 37:22, 37:24, 38:1, 38:10, 39:5, 39:23, 44:8
**productions** [10] - 21:21, 22:7, 22:10, 22:12, 26:3, 28:5, 28:13, 31:21, 36:2, 40:14
**productive** [3] - 4:25, 10:12, 19:20
**PRODUCTS** [1] - 1:5
**professional** [1] - 41:5
**progress** [5] - 12:18, 12:19, 21:18, 35:25, 36:5
**promptly** [1] - 9:16
**proper** [2] - 27:18, 43:25
**properly** [2] - 41:8, 43:21
**proportionality** [1] - 17:25
**proposal** [4] - 7:17, 9:4, 9:5, 17:11
**propose** [1] - 14:3
**proposed** [4] - 7:7, 8:15, 10:17, 11:22
**proposing** [4] - 14:5, 15:21, 16:8
**prosecute** [1] - 41:19
**protocol** [2] - 4:8, 5:12
**provide** [9] - 7:1, 14:9, 14:11, 17:9, 25:16, 33:17, 43:20, 43:25
**provided** [5] - 5:7, 7:18, 23:3, 23:4, 34:14
**providing** [2] - 26:4, 34:8
**purposes** [1] - 27:3
**put** [3] - 18:24, 29:1, 35:14

## Q

**questioned** [1] - 39:22
**questions** [12] - 14:13, 20:24, 21:1, 25:11, 26:10, 26:19, 26:20,

31:12, 33:18, 35:16, 43:21, 46:15
quite [1] - 44:13

**R**

RAFFERTY [1] - 1:20
raise [1] - 9:19
raised [9] - 22:3, 22:11, 27:21, 28:6, 28:9, 28:12, 33:18, 39:13, 40:11
raising [1] - 31:15
rather [1] - 7:7
RE [1] - 1:5
reach [1] - 9:23
reached [3] - 5:14, 5:19, 8:14
reaching [1] - 5:22
read [1] - 16:3
ready [1] - 4:4
realized [3] - 23:13, 29:17, 29:24
really [9] - 7:24, 8:16, 20:2, 23:5, 24:2, 24:9, 36:21, 43:16, 44:9
reason [3] - 8:15, 13:15, 13:21
reasonable [1] - 34:15
reasonably [1] - 12:23
receive [2] - 8:10, 46:6
received [13] - 10:17, 22:13, 22:17, 22:23, 23:13, 23:16, 27:4, 28:25, 29:1, 29:3, 29:5, 35:16, 37:24
recent [1] - 10:13
recently [3] - 24:3, 26:4, 26:18
recess [1] - 36:14
recipient [1] - 27:12
recipients [1] - 27:6
recommendation [1] - 12:5
record [10] - 14:24, 19:9, 38:9, 38:24, 39:9, 44:7, 44:19, 45:11, 47:2
recorded [1] - 1:25
records [3] - 26:9, 42:14, 43:22
redline [2] - 16:25, 29:12
redlines [3] - 14:11, 14:21, 15:16
Redondo [1] - 2:3
reduce [1] - 7:21
referring [1] - 34:17
regard [1] - 42:12
regarding [2] - 11:18,

20:24
regularly [1] - 45:1
relate [1] - 17:23
related [1] - 37:7
relating [1] - 37:19
relevance [1] - 17:24
relevant [1] - 38:18
relief [4] - 36:11, 45:7, 45:10, 45:16
rely [3] - 32:1, 32:4, 33:3
remaining [1] - 5:4
remedy [1] - 33:4
remind [2] - 8:15, 9:8
REMOTE [1] - 1:7
remotely [1] - 4:1
repeat [1] - 23:15
repeatedly [2] - 39:22, 45:12
reply [1] - 22:20
report [2] - 27:14, 36:5
reporter [1] - 4:4
REPORTER [1] - 15:24
Reporter [1] - 1:23
Reporter/ Transcriber [1] - 47:4
represent [1] - 35:7
representation [2] - 30:19, 35:5
represented [1] - 22:8
request [2] - 45:10, 45:16
requested [2] - 26:6, 26:8
requests [20] - 11:4, 11:19, 11:21, 11:24, 12:11, 12:12, 12:14, 12:21, 15:4, 15:15, 15:19, 16:22, 17:16, 17:21, 18:8, 19:14, 20:4, 42:6, 42:23, 43:5
reschedule [1] - 41:7
resolution [1] - 5:22
respect [11] - 5:14, 5:18, 8:5, 12:21, 17:7, 19:18, 20:16, 21:7, 26:7, 26:22, 32:25
respectfully [4] - 25:18, 32:12, 33:8, 41:11
respective [1] - 10:19
respond [11] - 5:25, 20:20, 31:3, 32:12, 32:14, 32:16, 32:22, 33:21, 43:8, 43:21, 45:7

responded [1] - 24:7
responding [2] - 31:8, 45:1
responds [2] - 33:22, 33:23
response [9] - 10:2, 10:15, 21:1, 22:15, 22:18, 33:17, 34:9, 34:12, 36:1
response) [1] - 46:2
responses [3] - 5:23, 23:14, 31:9
responsive [7] - 6:13, 6:25, 22:20, 25:16, 34:3, 35:8, 35:19
result [1] - 35:22
resulting [1] - 37:15
Retailer [1] - 3:11
retailers [1] - 13:13
retention [4] - 25:12, 26:8, 26:13, 26:17
reverse [1] - 29:20
review [9] - 7:15, 9:22, 18:25, 25:7, 33:11, 33:13, 36:3, 39:9, 39:15
RFPs [3] - 15:17, 16:6, 16:9
richer [2] - 10:11, 17:8
Richer [4] - 11:9, 14:24, 15:24, 15:25
RICHER [8] - 3:9, 14:22, 16:6, 17:10, 17:18, 18:14, 18:18, 19:2
ripe [3] - 12:13, 15:22, 16:5
Rite [1] - 3:11
RMR [1] - 47:4
road [1] - 31:1
Road [2] - 2:16, 3:3
Robert [1] - 3:15
rollcall [1] - 22:5
Roseland [1] - 1:15
Roszel [1] - 3:3
round [1] - 11:19
route [1] - 9:5
RPR [1] - 47:4
RUBEN [1] - 1:17
rule [2] - 15:14, 17:5
ruling [5] - 15:23, 16:5, 16:21, 16:24, 17:1
rulings [1] - 14:1
running [1] - 23:20
rush [1] - 40:15

**S**

sanction [3] - 33:2, 42:24, 45:4

sanctions [5] - 35:11, 38:8, 42:5, 44:16, 45:4
sand [1] - 35:15
Sarah [5] - 10:5, 10:6, 10:8, 11:8, 20:19
SARAH [1] - 3:9
satisfactory [1] - 43:15
scale [1] - 40:19
scenario [1] - 39:18
schedule [6] - 4:14, 10:15, 18:19, 18:24, 23:22, 23:24
scheduled [5] - 5:4, 5:9, 5:11, 5:24, 45:2
schedules [1] - 32:10
scheduling [2] - 4:15, 4:16
Schneider [4] - 22:4, 22:5, 25:6, 31:2
search [3] - 35:14, 40:9
searched [2] - 38:19, 40:5
searches [1] - 42:10
second [2] - 32:11, 36:12
see [5] - 4:3, 10:21, 12:6, 34:18
seek [2] - 12:9, 45:7
seeking [2] - 17:20, 18:2
selects [1] - 33:13
send [6] - 5:12, 25:11, 33:22, 34:16, 34:19, 34:23
sending [1] - 40:22
sense [3] - 15:16, 15:18, 18:3
sensitive [2] - 35:23, 45:9
sent [12] - 7:3, 25:15, 26:10, 26:13, 26:14, 26:21, 26:23, 32:13, 34:3, 36:2, 38:20
Sentry [1] - 2:21
separate [1] - 19:16
September [1] - 43:23
serious [5] - 23:11, 44:11, 44:17, 44:18, 45:14
servers [1] - 22:22
service [2] - 23:2, 25:3
session [2] - 15:22, 16:4
set [4] - 25:11, 26:19, 39:2, 41:2
Seth [1] - 6:18
SETH [1] - 2:11

seven [2] - 5:21, 6:1
several [1] - 25:25
severe [1] - 44:3
Shah [5] - 22:7, 27:22, 28:2, 30:22, 31:24
SHAH [2] - 3:3, 28:3
shared [2] - 29:1, 40:10
Sheet [3] - 43:14, 43:19, 43:22
Sheets [3] - 5:15, 5:19, 5:20
short [1] - 14:12
show [3] - 40:7, 43:18, 43:25
showing [1] - 33:4
shown [1] - 35:12
shows [1] - 35:6
side [2] - 44:2, 44:25
signed [1] - 43:20
significant [3] - 7:10, 24:15, 33:9
similar [1] - 20:12
simply [6] - 9:3, 23:4, 23:20, 35:4, 43:4, 45:15
single [6] - 27:8, 28:6, 38:9, 40:5, 40:7
siren [1] - 6:19
Slater [1] - 46:3
SLATER [4] - 1:14, 1:14, 46:8, 46:18
slight [1] - 22:2
slightly [1] - 25:2
sluggish [1] - 35:22
small [2] - 39:5, 39:23
smaller [2] - 39:6, 44:1
SMITH [1] - 3:14
Solco [1] - 2:14
sometimes [2] - 8:13, 29:8
somewhat [2] - 14:23, 14:25
soon [1] - 34:24
sooner [1] - 44:24
SOPs [1] - 28:24
sorry [5] - 6:17, 6:18, 11:15, 14:24, 36:15
sort [10] - 12:25, 15:22, 16:4, 19:13, 24:6, 29:6, 29:12, 29:20, 29:22, 30:2
sought [1] - 30:20
sound [1] - 38:8
sources [3] - 34:2, 35:15, 35:16
South [2] - 2:3, 2:12
speaking [3] - 4:9, 4:21, 42:1

**SPECIAL** [1] - 1:11
**Special** [1] - 4:2
**specific** [3] - 19:3, 25:11, 43:21
**specifically** [5] - 20:3, 22:7, 34:6, 40:11, 42:2
**spite** [1] - 38:20
**spoken** [1] - 13:16
**spots** [1] - 35:14
**staggering** [1] - 13:16
**stamped** [1] - 30:3
**stand** [5] - 10:4, 12:17, 14:5, 20:17, 21:22
**standard** [2] - 4:7, 43:17
**standpoint** [1] - 19:23
**stands** [1] - 21:5
**stanoch** [1] - 12:11
**Stanoch** [8] - 13:7, 15:2, 15:13, 16:12, 17:12, 19:14, 20:23, 20:25
**start** [2] - 4:12, 16:1
**started** [1] - 5:13
**starting** [2] - 37:20, 40:12
**state** [2] - 16:8, 30:11
**statement** [1] - 44:7
**statements** [3] - 12:22, 20:1, 20:8
**STATES** [1] - 1:2
**STATUS** [1] - 1:6
**stay** [1] - 13:12
**stenography** [1] - 1:25
**steps** [2] - 10:16, 29:12
**still** [14] - 6:16, 13:14, 19:24, 22:16, 22:17, 23:10, 23:22, 24:15, 29:18, 29:25, 30:4, 30:7, 36:3, 41:22
**stop** [1] - 8:25
**storage** [2] - 25:12, 26:8
**stored** [2] - 25:8, 25:9
**streamlined** [1] - 8:17
**street** [1] - 44:10
**Street** [4] - 1:18, 2:9, 2:12, 3:6
**Streets** [1] - 1:9
**strict** [1] - 43:17
**strike** [2] - 41:15, 44:24
**striking** [1] - 42:4
**students** [1] - 35:2
**subject** [3] - 7:13, 25:9, 43:18

**subjects** [1] - 27:21
**submissions** [1] - 12:2
**submit** [5] - 18:20, 19:4, 20:1, 20:6, 20:12
**submitted** [3] - 14:6, 18:9, 20:9
**substance** [3] - 15:23, 16:5, 16:6
**substantial** [4] - 26:19, 28:8, 30:15, 36:5
**substantially** [4] - 29:8, 38:1, 39:6, 39:11
**substantively** [1] - 15:15
**suggest** [2] - 33:8, 35:10
**suggested** [4] - 7:6, 16:7, 18:4, 45:21
**suggestion** [1] - 9:15
**Suite** [6] - 1:18, 1:21, 2:6, 2:16, 3:6, 3:10
**summary** [3] - 6:10, 13:9, 14:12
**support** [2] - 32:1, 32:5
**supported** [1] - 45:6
**supposed** [2] - 30:2, 37:18
**surprise** [2] - 27:2, 39:20
**surprised** [1] - 46:6
**suspended** [1] - 9:22
**sympathize** [1] - 25:17
**systems** [1] - 22:19

### T

**tabled** [5] - 11:25, 12:8, 15:17, 16:10, 17:23
**tabling** [2] - 16:7, 18:5
**teach** [1] - 35:1
**ten** [2] - 5:3, 7:20
**tens** [2] - 8:19, 9:12
**terms** [6] - 19:17, 20:1, 23:2, 30:17, 35:15, 45:8
**Teva** [2] - 2:17, 2:18
**THE** [3] - 1:2, 1:11, 15:24
**themselves** [1] - 38:12
**they've** [2] - 5:7, 26:1
**Thomas** [1] - 4:2
**THOMAS** [2] - 1:12, 1:20
**THORNBURG** [1] - 3:8

**thousand** [1] - 22:14
**thousands** [3] - 8:19, 9:12, 26:4
**three** [4] - 27:20, 28:7, 31:4, 31:23
**tight** [1] - 32:10
**timeframe** [1] - 14:15
**timeline** [1] - 5:22
**timing** [2] - 10:2, 10:14
**today** [20] - 4:22, 10:11, 13:11, 14:9, 14:19, 15:3, 16:12, 16:17, 21:21, 26:4, 26:19, 28:19, 31:23, 32:1, 37:15, 40:20, 44:9, 44:17, 46:1, 46:10
**together** [2] - 14:8, 41:14
**tomorrow** [2] - 37:18, 45:9
**tonight** [2] - 37:17, 40:22
**topic** [1] - 4:25
**topics** [1] - 20:24
**total** [1] - 7:19
**totally** [1] - 42:25
**touch** [1] - 10:20
**towards** [1] - 5:11
**transcript** [2] - 1:25, 47:1
**transcription** [1] - 1:25
**transmitted** [1] - 27:13
**TRAURIG** [1] - 2:15
**treaters** [1] - 5:10
**treating** [1] - 4:17
**triage** [1] - 15:4
**triaging** [1] - 18:6
**tried** [3] - 7:24, 12:25
**Trischler's** [1] - 4:12
**true** [2] - 39:16, 43:4
**try** [5] - 6:4, 8:4, 42:21
**trying** [9] - 14:6, 15:17, 29:18, 29:23, 30:4, 33:6, 35:10, 40:1, 43:5
**turned** [1] - 9:12
**two** [19] - 4:14, 7:9, 8:1, 13:17, 14:19, 15:20, 15:22, 18:11, 21:20, 28:15, 28:17, 30:12, 31:15, 36:4, 38:14, 38:17, 40:3, 40:23, 44:9
**two-way** [1] - 44:9
**type** [5] - 22:22, 23:3, 33:4, 33:5, 39:18
**types** [2] - 35:17, 37:2

**typically** [2] - 33:22, 33:23

### U

**U.S** [3] - 1:8, 2:14, 38:14
**ULMER** [1] - 3:5
**undercut** [1] - 35:5
**understandable** [1] - 44:14
**understandably** [1] - 38:5
**understood** [5] - 6:20, 9:24, 15:2, 30:25, 32:24
**underway** [1] - 5:2
**undue** [1] - 9:10
**unexpectedly** [1] - 35:6
**unfortunately** [2] - 38:11, 41:9
**UNITED** [1] - 1:2
**units** [1] - 22:21
**unless** [1] - 29:14
**Unless** [1] - 18:14
**unmute** [1] - 4:9
**up** [16] - 7:9, 7:20, 12:10, 13:8, 15:25, 17:22, 19:22, 23:8, 25:9, 31:12, 33:24, 35:6, 35:12, 39:1, 39:14, 40:20
**upcoming** [1] - 42:2
**update** [2] - 20:12, 21:5
**USA** [2] - 2:18, 2:22

### V

**VALSARTAN** [1] - 1:5
**Vanaskie** [1] - 4:2
**VANASKIE** [66] - 1:12, 4:3, 4:7, 4:23, 5:17, 6:8, 6:12, 6:20, 7:5, 8:7, 9:17, 9:21, 10:1, 10:22, 11:1, 11:3, 11:11, 11:14, 13:3, 14:3, 14:15, 14:19, 14:21, 15:25, 17:8, 17:15, 18:7, 18:17, 18:22, 19:3, 19:6, 19:10, 20:8, 20:14, 21:4, 21:7, 21:10, 21:13, 21:16, 22:1, 24:16, 24:20, 28:2, 28:14, 30:9, 32:6, 33:16, 33:25, 34:5, 34:8, 34:11, 34:18, 34:25, 36:15, 36:19, 36:24, 37:6, 37:10,

41:20, 43:9, 44:11, 45:22, 45:25, 46:3, 46:5, 46:14
**vendor** [2] - 40:15, 42:15
**version** [5] - 29:2, 29:24, 30:1, 30:3
**versions** [6] - 24:5, 24:6, 28:24, 29:5, 29:12, 29:19
**versus** [1] - 14:11
**VIA** [1] - 1:7
**via** [2] - 4:1, 42:1
**VIDEOCONFERENCE** [1] - 1:7
**videoconference** [1] - 4:1
**Vine** [1] - 3:6
**virtually** [1] - 8:12
**volume** [1] - 44:13

### W

**wake** [1] - 33:23
**WALLACK** [1] - 3:2
**wants** [2] - 26:16, 33:12
**warrant** [1] - 44:18
**warranty** [2] - 12:22, 12:23
**waterfront** [1] - 26:15
**ways** [2] - 30:15, 43:16
**Wednesday** [2] - 34:9, 34:14
**week** [6] - 6:22, 6:23, 10:21, 13:8, 26:3, 38:9
**weekend** [1] - 42:11
**weekly** [1] - 6:6
**weeks** [9] - 13:25, 14:19, 16:13, 18:12, 22:13, 23:8, 30:12, 30:16, 36:4
**weigh** [2] - 15:11, 16:16
**WERNER** [1] - 2:19
**whatsoever** [1] - 33:4
**whereby** [1] - 25:6
**WHITELEY** [13] - 2:8, 2:8, 13:5, 14:7, 14:17, 14:20, 16:19, 18:13, 18:15, 19:1, 19:4, 20:19, 21:15
**Whiteley** [6] - 13:5, 14:3, 17:11, 18:2, 20:18, 21:13
**Wholesaler** [1] - 3:7
**wholesaler** [3] - 11:6, 20:9, 21:8
**wholesalers** [4] -

*13:14, 19:12, 19:13, 21:11*
**wholesalers'** *[1] - 19:23*
**wild** *[1] - 33:20*
**Williamson** *[1] - 5:6*
**willing** *[5] - 8:4, 13:24, 28:16, 42:25, 43:1*
**willy** *[1] - 8:18*
**willy-nilly** *[1] - 8:18*
**withheld** *[5] - 8:23, 9:1, 9:12, 9:22*
**withhold** *[1] - 43:4*
**witness** *[6] - 7:8, 7:12, 7:21, 27:9, 37:19, 37:20*
**witnesses** *[8] - 23:12, 23:14, 23:23, 26:25, 31:18, 32:4, 38:14*
**wonderful** *[1] - 46:10*
**wondering** *[2] - 30:16, 30:24*
**words** *[2] - 25:8, 27:12*
**works** *[1] - 24:12*
**worth** *[1] - 22:14*
**wound** *[1] - 25:9*
**write** *[1] - 40:24*
**writing** *[5] - 25:10, 27:5, 27:7, 31:9, 31:13*
**written** *[2] - 33:17, 36:1*

## Y

**year** *[4] - 38:5, 38:16, 38:17, 38:25*
**years** *[1] - 36:22*
**yesterday** *[6] - 10:13, 12:3, 19:15, 19:20, 28:19, 29:18*

## Z

**Zhejiang** *[1] - 2:14*
**ZHP** *[1] - 23:3*
**Zoom** *[1] - 4:1*
**ZOOM** *[1] - 1:7*