# EXHIBIT B

# BARNES & THORNBURG LLP

2029 Century Park East, Suite 300
Los Angeles, CA 90067-2904
(310) 284-3798
Fax (310) 284-3894

www.btlaw.com

Sarah E. Johnston
Partner

February 16, 2021

Conlee Whiteley, Esquire
David Stanoch, Esquire
Kanner & Whiteley LLC
701 Camp Street
New Orleans, LA 70130

   RE:   **Plaintiffs' draft Requests for Production and draft 30(b)(6) notice**

Dear Conlee and David:

   As previously discussed, and following our prior phone conferences in December 2020 and January 2021, the Retail Pharmacy Defendants (the "Pharmacies") have conferred with each other and with our respective clients regarding Plaintiffs' proposed additional draft Requests for Production of Documents from the Retail Pharmacy Defendants (the "New RFPs"), and Plaintiffs' proposed draft 30(b)(6) notice as to the Pharmacies.

   As an initial matter, we do not think it is appropriate to negotiate additional discovery from the Pharmacy Defendants while the parties and claims in this case are in flux. Plaintiffs proposed this additional draft discovery, and our negotiations over it began, before the Court had issued any rulings on Defendants' Rule 12 motions to dismiss Plaintiffs' Master Personal Injury, Economic Loss and Medical Monitoring complaints. Now the Court has issued five opinions on those motions which have had a substantial impact on the status of claims pending against the downstream defendants, generally, and the Pharmacies, in particular. For example, the Court has dismissed Plaintiffs' breach of express warranty, Magnuson-Moss Warranty Act, negligence, negligent misrepresentation and omission, and fraud-based claims against the Pharmacies in their entirety, and dismissed Plaintiffs' implied warranty and common law strict liability claims against the Pharmacies in most jurisdictions. The Court has also held that Plaintiffs lack standing to pursue causes of action under the laws of states for which there is no class representative, and that the class representatives lack standing as to multiple defendants, including Pharmacies, not identified as being part of the Plaintiff's supply chain. And the Court is not yet finished. There remain issues on which the Court has not yet ruled, and we understand that a sixth opinion is forthcoming. Plaintiffs have also advised that they intend to file a motion for leave to amend the pleadings, and we anticipate opposing that motion, at least in part. Just as Plaintiffs have argued that it does not make sense for them to have to file successive motions for leave in response to each motion to dismiss decision, but rather wait to file one motion for leave that responds to all of the Court's rulings, it also does not make sense to negotiate additional discovery while the pleadings are still

Atlanta  California  Chicago  Delaware  Indiana  Michigan  Minneapolis  New York  Ohio  Raleigh  Salt Lake City  Texas  Washington, D.C.

Conlee Whiteley, Esquire
David Stanoch, Esquire
February 16, 2021
Page 2

a moving target.  This concern is equally applicable to Plaintiffs' draft RFPs and draft 30(b)(6) notice.

Further, in light of the Court's recent order extending all discovery and case management deadlines by 60 days, there simply is no need to force negotiations on these draft discovery documents while the pleadings remain in flux.  Discovery on the downstream defendants is not scheduled to begin before June 1, 2021 and is not scheduled to conclude before October 2021.  We therefore propose that these discussions be tabled to afford time for the pending issues regarding the pleadings to be resolved.

We are not opposed, however, if Plaintiffs wish to attempt to refine their additional discovery requests while the work on the pleadings is ongoing.  In an effort not to lose the progress we have made to date through our phone calls, we have endeavored to outline specific comments, questions or concerns regarding Plaintiffs' draft language below.  Although we previously discussed the possibility of the Pharmacies proposing redline edits of each RFP, many of the issues outlined below are so foundational in nature that we did not think a redline would be productive. As a general matter applicable to all requests, it is the Pharmacies' position that their discovery burden should not be growing as the case against them is shrinking, especially when they have already produced extensive documents and data in response to Plaintiffs' first set of document requests that purported to cover the most important documents and information.  Further, any additional discovery that Plaintiffs seek to serve should contemplate the discovery the Pharmacies already produced, rather than seek to duplicate it in scope and/or in substance.  These comments are made without prejudice to the Pharmacies' ability to raise other issues or objections as discussions regarding these draft RFPs, and the Pharmacies' position in this case, evolve.

**New RFP 1:  All documents relating to any representation or warranty provided by any manufacturer, wholesaler, or other seller of VCDs to you directly or indirectly.**

As previously discussed, Section III of Plaintiffs' previous document requests was entitled "WARRANTIES/STATEMENTS (UPSTREAM)" and explicitly sought information regarding warranties from upstream entities.  This new RFP seems to be duplicative of and more burdensome than the ground the parties have already covered.  Moreover, to the extent Plaintiffs now claim that they need custodial data on this topic, this RFP seems to be duplicative of documents requested of the manufacturing defendants (*e.g.* RFPs 3, 80 and 87 to the manufacturing defendants). Without further explanation from Plaintiffs, we fail to see why the documents the Pharmacies previously produced on the same topic are not sufficient, particularly when considered alongside the already extensive and related information Plaintiffs sought from the manufacturing defendants.

**New RFP 2:  All documents relating to any representation or warranty provided by or passed on by you to any consumer or third-party payor who paid any amount for VCDs sold by you.**

Similar to the concerns noted above regarding new RFP 1, this RFP seems unnecessarily burdensome and duplicative of prior discovery served by Plaintiffs.  Section IV of Plaintiffs' previous document requests was entitled "WARRANTIES/STATEMENTS (DOWNSTREAM)". With respect to consumer-facing documents, the Pharmacies already produced exemplars of the

**BARNES & THORNBURG** LLP

Conlee Whiteley, Esquire
David Stanoch, Esquire
February 16, 2021
Page 3

packaging and labeling dispensed to patients in response to previous RFP 3, and Plaintiffs would have received similar documents from the manufacturer defendants in response to Plaintiffs' RFP 79 to the manufacturing defendants. The Pharmacies also already produced policies regarding what information is passed to consumers at the point of sale in response to previous RFP 8, to the extent such documents exist. Plaintiffs have proffered no reason why the documents the Pharmacies previously produced on the same topic are not sufficient.

With respect to third party payors ("TPPs"), the information sought is not relevant. As previously discussed, the TPPs have not asserted any claims against the Pharmacies. Moreover, the TPP representatives are already in possession of any such documents for their respective plans. Although you assert that the availability of documents from your own clients is not sufficient, we fail to understand why that would be the case.

**New RFP 3: All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with wholesalers, etc.).**

With respect to this RFP, the Pharmacies echo the same concerns raised regarding new draft RFP 1, above. The Pharmacies have already produced the relevant representations and warranties, and/or indemnities -- including those in supply agreements -- in response to Plaintiffs' previous RFPs 7 and 21.

To date Plaintiffs have failed to identify specific additional information from the supply agreements that Plaintiffs seek and would be entitled to obtain. The Court previously ruled that the Pharmacies need not produce pricing data, and the Pharmacies have already produced their complete purchase histories for the valsartan NDCs at issue in this litigation. Given the availability of this data, which was burdensome and costly to produce, we do not understand what additional information Plaintiffs seek and/or how it is relevant and proportional to the claims asserted against the Pharmacies. Moreover, as previously explained to you and as outlined in the macro discovery briefings, the contents of these supply agreements are highly confidential and proprietary, such that we cannot agree to the unnecessary production of these documents – particularly without a compelling and specific claim as to relevance.

**New RFP 4: All agreements relating to your sale of VCDs (e.g., contracts with third-party payors, pharmacy benefits managers, etc.).**

With respect to TPPs, see above for our comments regarding new RFP 2. Given that the TPPs have asserted no claims against the Pharmacies, contracts with TPPs are not relevant. Similarly, regarding pharmacy benefit managers ("PBMs"), Plaintiffs have not articulated the relevance of agreements between PBMs and Pharmacies to any of the claims asserted against the Pharmacies. In addition, such agreements are highly confidential, proprietary, and contain trade secret information that the Pharmacies cannot produce when such agreements are in no way relevant to this litigation.

**BARNES & THORNBURG** LLP

Conlee Whiteley, Esquire
David Stanoch, Esquire
February 16, 2021
Page 4

**New RFP 5: All documents reflecting your inventory management policies, practices and procedures pertinent to VCDs.**

**New RFP 6/7:** [1] **All documents relating to the stock life for VCDs maintained in your own inventories (both distribution center and store levels), including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.**

As to new RFPs 5 and 6/7, we question the relevance of the information sought, given that the Pharmacies have already produced extensive *actual* purchase history data in response to Plaintiffs' previous document requests. Further, as previously discussed, several Pharmacies also noted that their prior productions of documents contained policies responsive to these draft RFPs. It remains unclear to us that Plaintiffs have reviewed those documents and, if so, what additional information is sought.

If Plaintiffs are seeking this information solely to assist them in their attempt to reconstruct the supply chain – as had previously been hinted on our meet and confers – we object that the burden of this request is immense, as drafted, and that the relevance of such documents is questionable at best, because even to the extent such documents could be feasibly identified and produced, they still will not assist Plaintiffs in conclusively establishing batch and lot information at the point of sale to the consumer. In other words, Plaintiffs are seeking a tremendous amount of information that at the end of the day will not do the one thing Plaintiffs want it to do.

Moreover, new RFP 6/7 as drafted is incredibly broad and unwieldy once you consider the nature of the operations for the Pharmacies in this case. For example, "all documents reflecting" restocking or inventory management of any drug at both the distribution center and store levels potentially could be read to cover the documents of thousands of employees at distribution centers and stores across the country.

Nevertheless, if Plaintiffs are amenable to limiting these draft requests to final policies and procedures, governing inventory management (including FIFO, LIFO, JIT, turnover ratio and replenishment/reorder triggers), if any and to the extent not already produced, we believe there could be room to compromise here.

**New RFP 8: All communications between you and any Wholesaler or Manufacturer Defendant relating to your purchase of, or the recalls of, VCDs.**

We have considered and discussed this request at length, but still fail to see the need for additional production, including custodial collection, particularly of the scope and breadth sought by this Request, as drafted. This draft RFP seeks information related to two topics: (1) the purchase of VCDs and (2) recalls of VCDs. As to both of these topics, the Pharmacies have already produced the most relevant/important information. With respect to (1) purchases, the Pharmacies already produced documents sufficient to identify the VCDs they purchased and exemplar transactional documents accompanying the VCDs they purchased in response to Plaintiffs'

---

[1] As noted during our calls, draft RFP 7 was identical to and duplicative of draft RFP 6.

**BARNES & THORNBURG** LLP

Conlee Whiteley, Esquire
David Stanoch, Esquire
February 16, 2021
Page 5

previous RFPs 1 and 2. With respect to (2) recalls, the Pharmacies already produced the recall communications they received from Wholesaler and Manufacturer Defendants in response to Plaintiffs' previous RFP 14, as well as documents showing how they implemented the recalls, in response to Plaintiffs' previous RFPs 16 and 18.

Further, with respect to the manufacturing defendants, RFPs 10 and 76 to the manufacturing defendants called for data that is duplicative of this Request – specifically seeking "all communications" with any defendant (RFP 10), and "all communications to or from any defendant regarding recall" (RFP 76). Given the scope and burden of your request, and the productions already made by the Pharmacies and the Manufacturer Defendants, we fail to see what other specific communications would be non-duplicative, relevant and proportional to the needs of the case against the Pharmacies.

**New RFP 9: Organizational charts or other documents sufficient to show the names, titles, and responsibilities of employees or agents involved in the following functions: (i) the purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and shipping of VCDs; (iv) the recall of VCDS.**

As drafted, this RFP is very broad and could be read to cover a tremendous number of employees, factoring in distribution centers and retail stores. It also raises questions regarding what Plaintiffs intend to accomplish in seeking such an extensive amount of information, and how it will be used. For example, identification of these employees has no bearing on the designation of potential 30(b)(6) witnesses in response to Plaintiffs' proposed notice. To the extent there are any 30(b)(6) depositions of the Pharmacies, the Pharmacies, not Plaintiffs, select which individuals will testify; Plaintiffs do not need a complete identification of all individuals who are at all involved in pharmacy operations relating to those issues. On previous calls, you also have mentioned that, in proposing this RFP, Plaintiffs hope to obtain information regarding potential custodians and/or fact witnesses. As demonstrated in the comments above, we do not think that any of Plaintiffs' proposed new RFPs properly calls for any custodial discovery, and we question the need for fact witness depositions. This RFP seems to put the cart before the horse. We do not think it makes sense to negotiate this RFP unless/until Plaintiffs have refined their requests and articulated a need and a basis for custodial discovery as to any topic. Given the breadth of Plaintiffs' proposed categories, as applied to the Pharmacies' businesses, negotiating this topic in the abstract seems unproductive.

Additionally, before the Pharmacies could negotiate this request, we would need clarification about what type of information you are seeking with respect to "sales." As previously discussed, given the nature of the Pharmacies' businesses, sales could capture a huge number of employees and various operational areas without greater specificity. For example, as written, identification of all employees involved in the "sale" of VCDs could include every pharmacist, technician, or customer service employee in every pharmacy or store who ever has dispensed a prescription. It would be helpful to understand what, specifically, you are looking for.

**BARNES & THORNBURG** LLP

Conlee Whiteley, Esquire
David Stanoch, Esquire
February 16, 2021
Page 6

**Plaintiffs' draft 30(b)(6) notice**

Finally, as discussed via email last week, based on our discussions on previous calls, we have not yet discussed the draft 30(b)(6) notice in substance with you.  We understood there to be mutual agreement that it made most sense to table those discussions until we made some progress on the new RFPs.  In your February 4 email, you advised that Plaintiffs now wish to "dual track" the discussions regarding the 30(b)(6) notice and the RFPs.  As noted above, we do not think it makes sense to negotiate the draft 30(b)(6) notice until the pleadings are resolved, but are amenable to negotiating the notice and the RFPs on parallel tracks once we have more clarity on the actual contents of and surviving claims in the master complaints.

Thank you for your consideration of these issues.  Please let me know if you would like to discuss the substance of this letter by phone.

Sincerely,

Sarah E. Johnston

**BARNES & THORNBURG** LLP