# EXHIBIT C



701 Camp Street ■ New Orleans, Louisiana 70130 ■ (504) 524-5777 ■ Fax (504) 524-5763

March 12, 2021

*Via Email*

Sarah E. Johnston, Esq.
Kristen L. Richer, Esq.
Barnes & Thornburg LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067

      Re:   *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-2875 (D.N.J.)

Dear Counsel:

I write this letter pursuant to Special Master Vanaskie's guidance at the March 10, 2021 case management conference about Plaintiffs' draft document requests and deposition notice sent to Retail Pharmacy Defendants on December 8, 2020, and in response to your February 16, 2021 letter concerning same.

As an initial matter, we are pleased that Retail Pharmacy Defendants no longer seek to "pause" Plaintiffs' written and deposition discovery and that, contrary to your prior correspondence,[1] they will engage in meaningful discussions about this discovery.

I.    **Plaintiffs' Draft Second Set of Document Requests**

- *Request No. 1: All documents relating to any representation or warranty provided by any manufacturer, wholesaler, or other sellers of VCDs to you directly or indirectly*

Plaintiffs are entitled to discovery of representations and warranties made to Retail Pharmacy Defendants in connection with their purchase of VCDs. For one, certain warranty and other claims against Retail Pharmacy Defendants were not dismissed, and remain "live" at this very moment. Second, warranty and certain other claims were only dismissed without prejudice and will be re-pleaded in Plaintiffs' forthcoming amended complaints. Third, regardless of the

---

[1] "[W]e do not think it is appropriate to negotiate additional discovery from the Pharmacy Defendants while the parties and claims in this case are in flux." *See* 2/16/21 S. Johnston Ltr; *see also* 3/9/21 L. Cohen Ltr. ("the Pharmacies submit that the most efficient and prudent course is to briefly push pause on the negotiation of additional discovery obligations[.]").

* A Louisiana L.L.C. -- Allan Kanner, Attorney Responsible for New Jersey Practice

technical claims, what suppliers (including other defendants) told or represented to Retail Pharmacy Defendants goes to notice and knowledge, as well as the simple fact of what quality the VCDs were supposed to or intended to be.

Retail Pharmacy Defendants do not appear to challenge the relevancy here. Instead, they argue the documents requested are "duplicative" of documents already requested of Retail Pharmacy Defendants, as well as documents requested from Manufacturer Defendants.

First, that one party (e.g., a manufacturer or wholesaler defendant) might produce responsive documents it possesses does not relieve another defendant (e.g., a retail pharmacy defendant) from producing responsive documents in its own possession. In fact, Magistrate Judge Schneider rejected this same assertion by Downstream Defendants last year.

Second, if Retail Pharmacy Defendants believe they have already produced all documents responsive to this request – and Plaintiffs disagree because the two purportedly "duplicative" requests cited by Retail Pharmacy Defendants in Plaintiffs' First Set of Requests were (i) "sufficient to show" requests, and (ii) asked for information provided by suppliers when "you actually purchase VCDs," i.e., not all representations and warranties – the Court has already rejected this argument as well. In the context of Defendants' latest document requests to class plaintiffs, Defendants argued that, even if new requests are duplicative, they should be answered. As Defendants themselves put it: "if they are duplicative, you know, plaintiffs should have to certify that they searched for and collected these kinds of documents that are in their possession[.]" *See* 10/14/20 Tr. at 26. The same should apply here. If Retail Pharmacy Defendants already produced all representations and warranties they received from suppliers, they should so state in their written response. Otherwise, they should produce whatever else remains, or indicate what they are withholding and why.

If Retail Pharmacy Defendants believe they can comply with this request without resort to custodial discovery, Plaintiffs are happy to hear the proposal.

- *Request No. 2: All documents relating to any representation or warranty provided by or pass on by you to any consumer or third-party payor who paid any amount for VCDs sold by you*

Retail Pharmacy Defendants' concerns with this request are the same as those with respect to Request No. 1; therefore, Plaintiffs incorporate their response above. To the extent Retail Pharmacy Defendants assert that representations or warranties to third-party payors are not relevant because those entities have not sued Retail Pharmacy Defendants, we disagree. Third-party payors often are agents or stand in the shoes of their insureds, who are consumer class members. Statements to third-party payors induce reliance and coverage that allow consumer class members to purchase VCDs. This is relevant and discoverable.

- *Request No. 3: All agreements relating to your purchase of VCDs (e.g., purchase/supply agreements with wholesalers, etc.)*

2

Retail Pharmacy Defendants raise three issues with this request: duplicativeness, confidentiality, and relevance.  There is no duplication here because contractual verbiage in supply agreements is not "duplicative" of the electronic data Retail Pharmacy Defendants already produced.  There is no confidentiality concern because long ago the Court entered a Discovery Confidentiality Order.

That leaves relevance.  Supply agreements contain a variety of relevant terms, including but not limited to representations and warranties about the quality of the product to be supplied, as well as inspection and auditing rights.  Retail Pharmacy Defendants did not uniformly produce all of their supply agreements in response to Plaintiffs' First Set of Requests.  As your side took pains to point out, the specific request in that set of discovery, Request No. 21, called for indemnity agreements or provisions only.  At Downstream Defendants' insistence, that request specifically stated Retail Pharmacy Defendants "may redact other competitive or sensitive information" from agreements.  And many Downstream Defendants did just that.  When we asked Downstream Defendants in meet and confers about obtaining less redacted versions of the agreements in meet and confers, we were told to serve a new request.  Hence this Request No. 3.

If there are very specific terms or provisions that Retail Pharmacy Defendants believe are so sensitive that they cannot be produced, even given the Discovery Confidentiality Order, we will hear you out.  But we cannot agree that the production of data, and a sliver of an agreement reflecting an indemnity provision, otherwise completely obviates the relevance and discoverability of supply agreements.

- *Request No. 4: All agreements relating to your sale of VCDs (e.g., contracts with third-party payors, pharmacy benefits managers, etc.)*

Retail Pharmacy Defendants incorporate by reference their concerns regarding Request No. 2.  Plaintiffs incorporate their response above regarding Request No. 2.

- *Request No. 5:  All documents reflecting your inventory management policies, practices, and procedures pertinent to VCDs.*

Retail Pharmacy Defendants contend this request is irrelevant, burdensome, and duplicative.  We disagree.

As to relevance, Retail Pharmacy Defendants have repeatedly stated that they do not trace the lot numbers for valsartan they purchased and in turn resold to consumers, such that they cannot definitively say which consumer received valsartan from which lot.  In lieu of such information, understanding the guidelines by which Retail Pharmacy Defendants stock, replenish, and turnover inventory will provide useful datapoints on how likely a given lot of valsartan would remain on Retail Pharmacy Defendants' shelves.  While defendants might believe this information will not "conclusively establish[]" the batch or lot from which a given consumer's valsartan came, it remains probative and undoubtedly discoverable.

Plaintiffs also disagree it would be a "burdensome" or an "immense" task for Retail Pharmacy Defendants to produce a tiny, discrete set of written policies.  Similarly, whether some

(but not all) Retail Pharmacy Defendants might have produced some documents already that might touch on inventory management (*see* 2/16/21 S. Johnston Ltr. at 4) does not mean Plaintiffs should be precluded from explicitly asking a discrete request that ensures they receive actual policies from each defendant.

Your letter indicates that Retail Pharmacy Defendants might be willing to revise this request to call for only final policies and procedures governing inventory management. Plaintiffs are amenable to this, provided that each defendant confirms they in fact have such policies and procedures for the distribution center and retail levels. We are asking this in part because when we negotiated Plaintiffs' first request over a period of many months, we were assured that Downstream Defendants had documents responsive to a narrowed request for "final written policies." But then at least one Downstream Defendant turned around and responded that they did not have a "final written policy." We want to avoid this situation again; thus, we want confirmation that each Retail Pharmacy Defendant has final written policies or procedures, and if not we want to know what documentation short of a "final written policy" exists.

- *Request Nos. 6 & 7:[2]  All documents relating to the stock life for VCDs maintained in your own inventories (both distribution center and store levels), including but not limited to FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers, and any proprietary inventory management systems.*

Depending on Retail Pharmacy Defendants' response concerning Request No. 5, Plaintiffs may be willing to defer these requests or further limit them only to a discrete number of custodians.

- *Request No. 8:  All communications between you and any Wholesaler or Manufacturer Defendant relating to your purchase or, or the recalls of, VCDs.*

Inter-defendant communications about the purchase and recall of the very drugs at issue in this case should hardly be controversial. That Retail Pharmacy Defendants produced electronic data showing its purchases does not mean relevant communications should not be discoverable. Similarly, that Manufacturer Defendants were ordered to produce inter-defendant communications does not mean Retail Pharmacy Defendants should not have to; if anything, this underscores the discoverability of inter-defendant communications from all defendants.

Additionally, it is incumbent on Retail Pharmacy Defendants to articulate precisely how this straightforward request would be unduly burdensome. The communications requested here are narrowly focused on two things, purchases and recalls of valsartan. Retail Pharmacy Defendants proffer no reason suggesting this narrowly-tailored request implicates the custodial files of many of defendants' employees or agents. To the contrary, it is likely that each Retail Pharmacy Defendant had a single point of contact at the corporate level for responsive communications. By way of example, when other Downstream Defendants answered Plaintiffs' first requests, they identified a single employee as being responsible for recall issues. Also, given that Retail Pharmacy Defendants appear unwilling to provide any organizational information (*see*

---

[2] Per our prior conversations, we agree these requests can be consolidated into a single request.

4

Request No. 9 below), Plaintiffs are unequipped to meaningfully discuss ways to limit or narrow this request to particular custodians.

- *Request No. 9: Organizational charts or other documents sufficient to show the names, titles, and responsibilities of employees or agents involved in the following functions: (i) the purchase of VCDs; (ii) the sale of VCDs; (iii) the inventory maintenance, receiving, and shipping of VCDs; (iv) the recall of VCDs.*

This request seeks straightforward, routine organizational discovery. Plaintiffs tailored the request to minimize burden to Retail Pharmacy Defendants by explicitly phrasing it as a "sufficient to show" request; limiting it only to four discrete functions (versus all functions corporate-wide), and mirroring nearly identical requests approved by the Court in Plaintiffs' document requests to Manufacturer Defendants. As alluded to above, this information is necessary for Plaintiffs to engage in meaningful discussions on how to limit other requests (e.g., Request No. 8) to the appropriate custodians only. To your purported concern that this request seeks identification of thousands of retail-level employees, we have told you multiple times we can revise this request to focus on individuals with corporate or managerial level responsibilities, not store level responsibilities. But we need information from Retail Pharmacy Defendants on how they operate before we can narrow this further on our end. We therefore put it back to Retail Pharmacy Defendants, again, to propose a reasonable revision of this request based on their own knowledge of how they run their own businesses.

**II.      Plaintiffs' Draft Rule 30(b)(6) Deposition Notice**

Retail Pharmacy Defendants never provided any specific comments concerning Plaintiffs' draft deposition notice. Rather, they simply reiterated they do not believe "it makes sense to negotiate" it now. As apparently Retail Pharmacy Defendants' position has changed, we invite them to provide substantive redlines or comments to the notice. We note that the notice generally tracks the categories of documents that Retail Pharmacy Defendants produced last year, and would produce in response to the second set of document requests.

\* \* \*

We look forward to hearing back from you on these matters.

Sincerely,

KANNER & WHITELEY, L.L.C.

By: _____
David J. Stanoch

5