IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>*All Actions* | MDL No. 19-2875 (RBK/KW)<br><br>Honorable Robert Kugler<br>Magistrate Karen Williams<br>Special Master Thomas Vanaskie<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE AND SUPPRESS ALL OF AUROBINDO'S DEFENSES** |

*[The Defendant]'s repeated and unabated discovery abuses and lack of candor leave this Court no other choice in order to protect the integrity of the judicial process, remedy the prejudice suffered by Plaintiffs, punish the wrongdoers, and accord a measure of relief to the other parties and counsel in this case. When the abuses are as extreme as they are in this case, to refrain from sanctions is unfair to the parties who conduct themselves according to the rules.*

*Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006)

# Table of Contents

*TABLE OF AUTHORITIES* ........................................................................................................... *iv*

*INTRODUCTION* ........................................................................................................................... *1*

*Relevant Procedural History* ................................................................................................... *2*

   **I.**   **The Formation of the MDL** ................................................................................. *2*

   **II.**   **The Aurobindo Defendants** ............................................................................... *3*

      a.   Aurobindo Pharma Ltd. Has Flouted This Court's Authority Since the Outset of this MDL .......................... 3

   **III.**   **Plaintiffs' Discovery Requests** ......................................................................... *4*

   **IV.**   **Aurobindo's Productions Through November 2020 and its Misrepresentations to the Court** *8*

   **V.**   **Plaintiffs Discovered Swaths of Missing Documents** .............................................. *10*

      a.   Noncustodial Documents from APL ........................................................................................ 10

      b.   Documents From Shared Drives ............................................................................................. 11

      c.   Paper Files and Documents .................................................................................................. 12

      d.   Aurobindo Did Not Search its Custodians' Electronic Devices, including the Computers Themselves ........ 12

      e.   Plaintiffs Raised the Issue of Spoilation with Aurobindo and the Court ........................................ 13

   **VI.**   **Aurobindo Did Not Begin to Produce the Vast Majority of its Documents until after It Got Caught** *14*

   **VII.**   **Aurobindo Failed to Disclose its Discovery Deficiencies to Plaintiffs and to the Court** .... *17*

      a.   Aurobindo Has More than Quadrupled its Production Since the Document Production Cutoff ................. 18

   **VIII.**   **Despite Aurobindo's Supplemental Productions, Aurobindo Still has Not Produced Critical Documents** ........................................................................................................ *19*

      a.   Plaintiffs Have Found Email Chains Which Were Sent to Multiple Custodians, But These Emails Were Only Disclosed from One Custodial File ........................................................................................ 19

   **IX.**   **Aurobindo Destroyed Documents by Failing to Send Litigation Holds to Two Thirds the Custodians in this MDL** .................................................................................... *23*

*Argument* ................................................................................................................................ *26*

   **X.**   **Aurobindo Spoliated Documents by Failing to Send Litigation Holds to More than Half of the Custodians in this Case** .......................................................................... *28*

   **I.**   **Aurobindo's Answer and Defenses Should be Stricken and Suppressed** .............................. *29*

      a.   The Record Establishes that Aurobindo Bears Responsibility for the its Misrepresentations to the Court, Spoilation, and Willful Withholding of Documents ........................................................................ 30

      b.   Plaintiffs Have Been Substantially Prejudiced in their Ability to Build and Bring their Case ............... 31

      c.   Aurobindo's History of Dilatory Tactics and Lack of Candor with the Court is Long and Fulsome .......... 31

      d.   Aurobindo Acted Willfully and in Bad Faith ............................................................................ 32

      e.   Lesser Sanctions Have Been Ineffective ................................................................................ 33

      f.   Aurobindo's Defenses Lack Merit ........................................................................................ 33

      g.   Conclusion ...................................................................................................................... 34

   **II.**   **Plaintiffs are Entitled to Reasonable Costs and Fees** ............................................... *34*

   **III.**   **If the Court Does Not Strike and Suppress All of Aurobindo's Defenses, Plaintiffs Are Entitled to Other Lesser Forms of Relief** ........................................................... *36*

      a.   All documents produced after March 15, 2021 coming from either of the US Aurobindo entities or from noncustodial sources at APL shall be deemed authentic and admissible to Plaintiffs alone ...................... 36

      b.   Plaintiffs Should Be Entitled to Conduct Discovery into Aurobindo's Spoilation and Failure to Preserve Documents, in Order to Explain Any Document Deficiencies to a Jury ............................................... 37

     c.     To Curb Aurobindo's Behavior from Repeating Itself, Aurobindo Should Be Required to File a Copy of Any Order Imposing Sanctions Upon It in Other Similar, Pending Cases ...................................................38

     d.     Any Resulting Order Imposing Sanctions on Aurobindo Should Remain Public...............................................38

***Conclusion*** ........................................................................................................................... **38**

**Cases**

*Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 152 (D.N.J. 2009) .......................................... 28

*Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1453 (11th Cir.1985) ................................. 27

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) .......................... 27

*Crown Castle USA Inc. v. Fred A. Nudd Corp.,* No. 05-CV-6163T, 2010 WL 1286366, at *10
    (W.D.N.Y. Mar. 31, 2010) ...................................................................................... 28

*Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ............................. 26

Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir.1988) .................................................... 30, 33

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.,* 363 F. Supp. 3d 1378
    (U.S. Jud. Pan. Mult. Lit. 2019) .............................................................................. 2

*Inferrera v. Wal-Mart Stores, Inc.,* No. CIV. 11-5675 RMB/JS, 2011 WL 6372340, at *2 (D.N.J. Dec. 19,
    2011) ................................................................................................................ 26

*James Stewart Ent., LLC v. L&M Racing, LLC,* No. EDCV1249JGBSPX, 2013 WL 12248146, at *2
    (C.D. Cal. June 28, 2013) ....................................................................................... 37

*Katiroll Co. v. Kati Roll & Platters, Inc.,* No. CIV.A. 10-3620 GEB, 2011 WL 3583408, at *1 (D.N.J.
    Aug. 3, 2011) ..................................................................................................... 34

*Kounelis v. Sherrer,* 529 F.Supp.2d 503, 518 (D.N.J.2008) ............................................... 28

*Major Tours, Inc. v. Colorel,* No. 05-3091, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) ................. 28

*McCartt v. Kellogg USA, Inc.,* No. CV 5:14-318-DCR, 2015 WL 12978152, at *2 (E.D. Ky. July 20,
    2015) ............................................................................................................... 37

*Mindek v. Rigatti,* 964 F.2d 1369, 1373 (3d Cir. 1992) .................................................. 30

*Montana v. Cty. of Cape May Bd. of Freeholders,* No. CV 09-755 (NLH/JS), 2013 WL 11233748, at *9
    (D.N.J. Sept. 20, 2013) .......................................................................................... 26

*Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004) .................... 34

*Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747
    (1976) ...................................................................................................... 27, 30, 34

*Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984) ....................... 30, 31, 33

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.,* No. 07-CV-5855, 2010 WL 2652412, at *3
    (D.N.J. July 1, 2010) ............................................................................................. 28

*State Nat'l Ins. Co. v. Cty. of Camden,* No. CV 08-5128 (NLH/AMD), 2011 WL 13257149, at *3
    (D.N.J. June 30, 2011) .................................................................................. 28, 29, 34

*Tracinda Corporation v. DaimlerChrysler AG,* 502 F.3d 212, 243 (3d Cir.2007) ....................... 26

*Wachtel v. Health Net, Inc.,* 239 F.R.D. 81, 84 (D.N.J. 2006) ...................................... passim

*Ware v. Rodale Press, Inc.,* 322 F.3d 218, 221 (3d Cir. 2003) ....................................... 30, 33

*West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999) ................................ 28

*Younes v. 7-Eleven, Inc.,* 312 F.R.D. 692, 701 (D.N.J. 2015) ........................................... 26


**Rules**

Fed. R. Civ. P. 37 .................................................................................... passim

Fed. R. Civ. P. 26 .......................................................................... 1, 26, 36, 37

L.R. 54.2 ................................................................................................ 34

**<u>Figures</u>**

Figure 1: The Custodial Production for Blessy Johns As of 1 Day Prior to Her Deposition ........... 15

Figure 2: The Custodial Production for Blessy Johns As of the Night Before Her Deposition ....... 15

Figure 3: The Custodial Production for Jasleen Gupta As of 2 Days Prior to Her Deposition........ 16

Figure 4: The Custodial Production for Jasleen Gupta As of 1 Day Before Her Deposition............ 17

Figure 5: Search Result for Krishna Reddy Chada's Emails in His Custodial File............................ 20

Figure 6: Search Result for "kchada@aurobindousa.com" ........................................................... 20

Figure 7: Search Results for Prasad Gorijavolu's E-mails in His Custodial File .............................. 21

Figure 8: Search Results for "pgorijavolu@aurobindousa.com" .................................................... 22

Figure 9: Search Results for Arpit Patel's Custodial File ............................................................... 22

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 26 and 37 and the inherent power of this Court, Plaintiffs bring this motion in response to Aurobindo's repeated abuses of the discovery process in this MDL, its misrepresentations to the Court, and its destruction of relevant documents. Aurobindo's deliberate actions have substantially prejudiced Plaintiffs' ability to prosecute their case on behalf of hundreds of consumers who have brought cases as a result of purchasing, and developing cancer after taking valsartan-containing drugs which were contaminated with a highly potent carcinogen, NDEA.

As detailed below, Aurobindo's willful misconduct in this MDL includes, but is not limited to:

- Repeatedly making misrepresentations to the Court:
  - Aurobindo misrepresented its capability to transmit documents via FTP, allowing it to delay the production of documents from APL custodians. Ex. G, 03/12/2021 Hrg. Tr. 4-13.
  - Aurobindo falsely represented that it had collected all custodial files for the US entities and had loaded that data into its system as of June 17, 2020. Ex. C, 06/17/2020 Hrg. Tr. 38:19-22. Ex. C, 06/17/2020 Hrg. Tr. 38:19-22.
  - On December 19, 2020, Aurobindo falsely represented to the Court that it had produced all documents it had relating to the US custodians. Ex. D, 12/09/2020 Hrg. Tr. p. 21:3-4.
  - On February 17, 2021, Aurobindo falsely represented it had produced all responsive standard operating procedures and after supplementing its production pursuant to an order from the Court, Aurobindo served a certification, certifying that its production was complete. Ex. E, 02/17/2021 Hrg. Tr. 38:25-29:13, 41:3-6; Ex. O.
  - On March 12, 2021, Aurobindo once again represented it had produced everything that was responsive from the US custodians' files. Ex. G, 03/12/2021 Hrg. Tr. 79:4-10 (emphasis added).
  - On March 24, 2021, Aurobindo once again represented it had produced "everything that we believe is responsive to the requests…" Ex. H, 03/24/2021 Hrg. Tr. 12:9-16:4
- Failing to issue litigation holds to approximately two thirds of the custodians in the case, in spite of being on notice through recalls, lawsuits, and court orders appointing custodians, resulting in the loss of evidence;
- Refusing to produce non-custodial documents from Aurobindo Pharma Ltd. (the Indian parent company) after Core Discovery;
- Refusing to produce non-custodial data from the US Aurobindo entities, even after company witnesses identified them in their depositions
- Disregarding court orders by producing more than 75% of its documents after the deadline to do so;

- Flouting Court orders and the Federal Rules of Civil Procedure, requiring Aurobindo to produce relevant documents, search relevant sources of data, and disclose discovery in a transparent and timely manner; and
- Distracting and preventing Plaintiffs from working to develop the merits of their case by preparing for and taking depositions and working with their experts on their reports, and instead requiring Plaintiffs to spend countless hours auditing, briefing, and following up on Aurobindo's discovery deficiencies (including drafting this Motion).

Each of these actions by Aurobindo has substantially prejudiced Plaintiffs. Plaintiffs are now, months after the close of the time for document production, digging through mountains of documents which were dumped on them long after Aurobindo previously told the Court they had produced everything. Moreover, Plaintiffs are still missing documents that will likely never be produced as a result of Aurobindo's failure to preserve critical evidence. Instead of focusing on taking depositions and building their case, Plaintiffs are focusing massive effort on compelling Aurobindo to do what was required of it under the law and by this Court. There must be consequences for this misconduct, or all litigants will know that orders do not mean what they say, the Rules are not to be enforced, and misrepresentations to the Court and other parties are permitted. The consequences here must be definitive.

## RELEVANT PROCEDURAL HISTORY

### I. THE FORMATION OF THE MDL

This MDL was formed on February 14, 2019 as the result of multiple recalls of valsartan-containing drugs beginning in the summer of 2018. *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378 (U.S. Jud. Pan. Mult. Lit. 2019). Aurobindo's counsel first entered an appearance in the MDL on March 11, 2019. ECF No. 18. Plaintiffs' Master Complaints were filed on June 17, 2019. ECF Nos. 121 (Economic Loss), 122 (Personal Injury), 123 (Medical Monitoring).

Today, there are hundreds of cases filed against the manufacturers of valsartan API, manufacturers of finished dose valsartan-containing drugs, wholesalers, repackagers, and retail pharmacies by plaintiffs who developed cancer, fear they may develop cancer, or paid for contaminated product.

## II.   THE AUROBINDO DEFENDANTS

Aurobindo Pharma Ltd. ("APL") is one of four defendants in the MDL that manufactured valsartan API that was recalled as a result of nitrosamine contamination. APL manufactures some of its own finished dose product, and AuroLife Pharma LLC also manufactures some finished dose product. Aurobindo USA, Inc. then distributes finished dose product manufactured by the other two Auro entities. Throughout this memorandum, these three entities are collectively referred to as "Aurobindo" or the "Aurobindo Defendants."

### a.   Aurobindo Pharma Ltd. Has Flouted This Court's Authority Since the Outset of this MDL

At the outset of the MDL, APL refused to participate in discovery and counsel for Aurobindo did not immediately enter a Notice of Appearance. After briefing from both sides, the Court determined that each entity that insisted upon being served pursuant to the Hague Service Convention need only be served once. ECF No. 99.

Plaintiffs therefore commenced service through the Hague Convention and transmitted the required documents to the Central Authority in India on May 13, 2019. Pursuant to the terms of the Hague Convention, and because APL had not appeared within six months after the transmittal of the documents, Plaintiffs then requested that the Court enter default judgment against APL. ECF No. 367, p. 3.

This was addressed at the February 13, 2020 Discovery Conference, and Magistrate Judge Schneider indicated he would enter a default judgment against APL if it did not appear before the

Case Management Conference, scheduled for February 26, 2020. 02/13/2020 Hrg. Tr., p. 6:9-16. Counsel for APL entered an appearance on February 25, 2020. ECF No. 381.

Plaintiffs and Aurobindo arrived at an agreement as to some of Aurobindo's custodians from APL in February, 2021. The rest were ordered by the Court on February 24, 2021. 02/24/2021 *See* Hrg. Tr., p. 43:19-44:2. While there have been a number of issues that arose from this custodial production (e.g., Aurobindo's choice to delay its collection and subsequent production of documents by attempting to ship empty hard drives with no express service to India and back to the US), Plaintiffs' motion is based primarily on Aurobindo's conduct relating to the custodial and noncustodial documents from the US Aurobindo entities, as well as the noncustodial documents from APL.

Aurobindo once again misrepresented facts to the Court when it stated that the custodial files in question were so large that they "could not be transferred via an FTP link." Ex. G, 03/12/2021 Hrg. Tr. 4-13. **This was not true.** Following the Court requiring Aurobindo to transfer the data either by Dropbox or FTP, Aurobindo suddenly was able to transfer the data, just as every other defendant had. Ex. H, 03/24/2021 Hrg. Tr. 18:19-22:7 (ordering transfer via FTP); Ex. I, 03/31/2021 Hrg. Tr. 17:15-18 (confirming files were successfully transferred via FTP).

### III. PLAINTIFFS' DISCOVERY REQUESTS

On April 29, 2019, the Court ordered all defendants who manufactured valsartan API or finished dose product to produce Core Discovery Documents, requiring that the documents be produced no later than June 17, 2019. ECF. No. 88, p. 2. While Aurobindo Pharma Ltd. had not yet appeared in the case, the Order specifically took this into account: "To the extent core discovery is not produced by the responding defendants, defendants who are U.S. agents for the purpose of FDA communications shall produce the discovery." *Id.*, p. 1.

This Core Discovery order, coupled with Plaintiffs' Master Complaints, the JPML's filings, and the recalls themselves, placed the Aurobindo Defendants on notice as to which individuals at the

company likely were in possession of information germane to this case. *See* ECF Nos. [121](#) (Plaintiffs'

Master Consumer Class Complaint, [122](#) (Plaintiffs' Master Personal Injury Complaint), [123](#) (Plaintiffs'

Master Medical Monitoring Complaint), [1148-1](#) (Plaintiffs' Amended Master Personal Injury

Complaint), [1148-3](#) (Plaintiffs' Economic Loss Amended Complaint), and [1148-5](#) (Plaintiffs' Medical

Monitoring Amended Complaint); *see also* Ex. O.

In response to the Core Discovery Order, Aurobindo made a single production on June 27,

2019 of what it called "non-custodial" regulatory files, as well as "custodial FDA communications."

This collection of 3,576 documents contained email communications from individuals who would

later be designated as custodians, including Steve Lucas, Blessy Johns, and Jasleen Gupta. That

Aurobindo called this production, at least in part, "custodial," suggests that the company knew these

three individuals (among others) were likely to possess important information and that these custodial

files had been collected as of this date. *See* Ex. P.

At the August 14, 2019 Discovery Conference, Aurobindo affirmatively represented to the

Court and to Plaintiffs that it had produced all documents required for Core Discovery:

> THE COURT: Do I take it Aurobindo has -- the U.S. company, whatever its name is, has
> produced core discovery?
> MS. HEINZ: We have produced everything that we have, yes, and I have produced from
> Aurolife as well.

Ex. A, 08/14/2019 Hrg. Tr. 25:05 – 26:09.

Plaintiffs then served their Rule 34 discovery requests on August 30, 2019. Around that same

time, the parties negotiated on search terms and custodians. In an effort to ensure Aurobindo

understood it was to be searching both custodial and noncustodial sources of information, Plaintiffs

send Aurobindo a letter on November 11, 2019, specifically asking Aurobindo to outline all relevant sources of noncustodial data.[1] Ex. Q.

The Court also ruled on objections to discovery responses on November 20, 2019. The parties subsequently agreed in an order entered on December 23, 2019 that the following individuals from the US Auro entities would be document custodians:

1. Srinivasulu Ale
2. Sudhir Bheeminemi
3. Daniel Burns
4. Krishna Reddy Chada
5. Bhadresh Doshi
6. Prasad Gorijavolu
7. Jasleen Gupta
8. Jeffrey Jakowski
9. Blessy Johns
10. Venkata Kota
11. Steve Lucas
12. Sandra Martinez
13. David Palew
14. Arpit Patel
15. Milind Shirshikar

ECF 328, p. 27. Sanjay Singh was subsequently added as a custodian after Aurobindo designated him as a 30(b)(6) witness. In that same Order, the Court ordered Defendants to produce documents responsive to Plaintiffs' requests on a rolling basis. *Id.*, p. 2. This order was subsequently modified in light of COVID-19 in ECF 416,[2] issued on April 20, 2020, wherein the Court ordered all API and Finished Dose Manufacturer Defendants (Aurobindo entities perform both of these roles) to make rolling productions of documents responsive to Plaintiffs' Rule 34 requests between May and November 2020. *Id.* The Order further specified that "To the extent responsive documents are

---

[1] Although Aurobindo Pharma, Ltd. had not yet appeared in the case, all Aurobindo entities are represented by the same counsel.
[2] Because this was a text order, it cannot be hyperlinked to the docket.

currently in the possession of defendants attorneys or ESI consultants, defendants shall use reasonable good faith efforts to produce the documents by July 15, 2020."

On May 7, 2020, Plaintiffs circulated a letter to all Defendants, including Aurobindo, which informed them of which noncustodial documents Plaintiffs wanted Aurobindo to prioritize in its production. Ex. R. Beyond what was already provided to Aurobindo in Plaintiffs' Requests for Production, Aurobindo received additional notice of the types of noncustodial documents Plaintiffs were seeking from all Aurobindo entities. This letter also provided a list of custodial files Plaintiffs asked Aurobindo to expedite. Among the names listed were Prasad Gorijavolu and Bhadresh Doshi. Remarkably, Plaintiffs received additional documents for them just two days ago on April 21, 2021. Ex. P.

Aurobindo's search terms continued to be negotiated throughout the first half of 2020 and were finalized around the end of June 2020. ECF 497. Notably, while custodial sources of data are meant to be narrowed by search terms, noncustodial sources of data are not subject to search terms. The production of these sources of data, therefore, should not have been subject to any delay caused by search terms or custodians.

> At the June 17, 2020 Discovery Hearing, Aurobindo told the Court:
> "We have run – we have collected all of our custodial files. They have been uploaded into our vendor[']s system.

Ex. C, 06/17/2020 Hrg. Tr. 38:19-22. **This was not true.**

Aurobindo then made its next production of custodial files on July 15, 2020. *See* Ex. D (Aurobindo's Production Index). This custodial production included documents for many of the individuals who have been or are set to be deposed in short order, including Bhadresh Doshi, Venkata Kota, Steve Lucas, Jasleen Gupta, and Prasad Gorijavolu. Documents from Blessy Johns' custodial file were produced on November 25, 2020, demonstrating that at that time, Aurobindo had or should have collected these custodial files. *See id.*

## IV. AUROBINDO'S PRODUCTIONS THROUGH NOVEMBER 2020 AND ITS MISREPRESENTATIONS TO THE COURT

In the months leading up to the end of 2020, the Court set strict deadlines for all defendants to complete their discovery, which was the end of November 2020. *See* ECF Nos. 843 and 726.

At the June 17, 2020 Discovery Hearing, Aurobindo told the Court:

"We have run – we have collected all of our custodial files. They have been uploaded into our vendor['] system.

Ex. C, 06/17/2020 Hrg. Tr. 38:19-20. **This was not true.**

In the December 19, 2020 Discovery Hearing, Aurobindo represented to the Court:

"**we have finished our review and produced everything we have**."

Ex. D, 12/09/2020 Hrg. Tr. p. 21:3-4. **This was not true.**

As of November 2020 (the deadline to complete discovery), Plaintiffs determined that all Aurobindo entities collectively had only produced 13,061 documents, inclusive of its Core Discovery Productions. While the parties had not agreed upon custodians from APL at that time, nothing prevented Aurobindo from producing noncustodial documents from APL or from completing its production as to both custodial and noncustodial documents from the US entity. Nonetheless, the document count remained obviously low.

Plaintiffs repeatedly questioned why the document count was so low, and each time this was done, Plaintiffs were assured by counsel for Aurobindo, multiple times on the record, that the production was actually complete. Ex. E, 02/17/2021 Hrg. Tr. 31:24-35:3, 38:25-39:13; Ex. G, 03/12/2021 Hrg. Tr. 77:8-79:6. On March 12, 2021, Aurobindo responded to Plaintiffs once again wondering why the production had been so small:

> "Respectfully, I'm not quite sure what the plaintiffs think is missing from the productions. It's kind of hard for me to respond to what [Plaintiffs' counsel] is saying because **I have produced everything that is responsive from these custodial files** and I can't remedy what she's calling a deficiency if I don't know exactly why she believes -- what she thinks is missing."

*Id.,* 79:4-10 (emphasis added). **This was not true.**

Aurobindo balked once again when Plaintiffs' counsel informed the Court that Aurobindo was waiting to get caught before producing documents:

> "**We're producing everything that we believe are responsive to the requests, so I just wanted to clarify that I think that statement is unfair and a little improper and unprofessional.**"

Ex. H, 03/24/2021 Hrg. Tr. 12:9-16:4. **This was not true.**

When Plaintiffs similarly brought up that they were missing standard operating procedures,

Aurobindo responded,

> "Your Honor, our productions do have standard operating procedures in them… We've been talking last week and this week. I asked her if she could let me know which SOPs she believes are missing from the production. She hasn't been able to identify anything by a specific -- she hasn't been able to identify specifically anything. She sent me a list of descriptions of categories of SOPs that she believes may be missing from the production, but it doesn't sound like they've been all the way through the documents to know one way or the other, and it's my understanding that the SOPs are in there."

Ex. E, 02/17/2021 Hrg. Tr. 38:25-29:13. When the Court questioned Aurobindo about its production

of standard operating procedures, Aurobindo doubled down:

> It's my understanding that all of the relevant ones are in there and I am continuing to evaluate this and, certainly, if there are ones that we need to supplement our production with, I can assure you that that will happen before the depositions.

Ex. E, 02/17/2021 Hrg. Tr. 41:3-6. **This was not true**, as Plaintiffs learned during the deposition of

Bhadresh Doshi (discussed in greater detail below). Since that hearing, Aurobindo's production index

notes that SOPs have been included in supplemental productions made on March 4, 2021, March 31,

2021, April 3, 2021, April 16, 2021, and April 21, 2021.

These productions evidence of Aurobindo's violation of Special Master Order 3 (ECF No.

915), which required Aurobindo to produce all relevant standard operating procedures. The order

further required Aurobindo to serve a certification on Plaintiffs, certifying that this production was

complete. Aurobindo served its certification upon Plaintiffs on March 4, 2021, stating in relevant part:

> After exercising due diligence and making reasonable inquiries and a good faith effort to ascertain the existence of material and information subject to discovery, the Aurobindo parties

have made a supplemental production that substantially complies with Special Master Order No. 3 and the Aurobindo parties reserve the right to amend, supplement and revise their discovery productions as investigation continues in this litigation.

Ex. O. As evidenced by the five subsequent supplemental productions of standard operating procedures discussed above, **this was not true.**

In addition to sending countless meet and confer emails and having additional follow-up phone calls with Aurobindo wherein no reasonable explanations were provided, Plaintiffs sought forms of relief aimed at allowing them to understand what was missing from the production, including but not limited to, requiring Aurobindo to produce hit counts for its US custodians (Ex. S), requesting that Aurobindo be required to produce a list of all data sources it searched (Ex. G, 03/12/2021 Hrg. Tr. 77:8-82:19), compelling Aurobindo to produce certain documents it had withheld (ECF No. 915), and asking that Aurobindo produce discovery focused on the spoilation of documents (Ex. I, 03/31/2021 Hrg. Tr. 23:6-24:8). Unfortunately, none of these requests, nor the remedies ordered by the Court to date deterred Aurobindo, which continued to withhold large volumes of documents.

### V. PLAINTIFFS DISCOVERED SWATHS OF MISSING DOCUMENTS

#### a. Noncustodial Documents from APL

Plaintiffs repeatedly questioned Aurobindo as to why it had not produced and apparently was not planning to produce any noncustodial documents from APL beyond the Core Discovery production. *See, e.g.,* Ex. G, 03/12/2021 Hrg. Tr. 77:8-82:19; Ex. I, 03/31/2021 Hrg. Tr. 13:11-14:3. After not receiving a satisfactory answer, Plaintiffs requested in their March 9, 2021 Agenda Letter an order compelling Aurobindo to disclose to Plaintiffs what noncustodial sources it searched. ECF No. 1011. Rather than agreeing to produce this list, Aurobindo fired back, boldly asserting that it was Plaintiffs' job to identify what sources it should have searched and what is missing:

> Plaintiffs are seeking discovery on discovery that is unnecessary and overly burdensome to Aurobindo given Plaintiffs' inability to identify any non-custodial documents that are missing from the Aurobindo productions which Plaintiffs have had for months. Given Plaintiffs'

position that Aurobindo's productions have been small, they must have reviewed the documents by now and should certainly be able to tell defense counsel if they think anything is missing. After exercising due diligence and a good faith effort to ascertain the existence of non-custodial documents responsive to Plaintiffs' requests, Aurobindo made several rolling productions and continues to supplement as necessary. Accordingly, Aurobindo respectfully requests an Order precluding Plaintiffs' request for a list of sources of information searched for non-custodial documents. Alternatively, Aurobindo intends to include this matter in its motion for a protective order and requests the Court set briefing deadlines.

ECF No. 1010, p. 6. **This was not true.**

Outside of its Core Discovery production, APL still has not made *any* additional noncustodial productions in response to plaintiffs' Rule 34 requests. *See* Ex. P.

**b. Documents From Shared Drives**

Plaintiffs have deposed four of Aurobindo's witnesses at the time of the filing of this Motion, and there are an additional six depositions left to take, all of which are scheduled in the upcoming weeks.[3] During these depositions Plaintiffs learned that all employees at all Aurobindo entities utilize shared drives, such as the S, M, X, and W drives. *See* Ex. K, Doshi Tr. 46:19-48:17; 80:2-82:2; 176:15-178:3; 234:7-11; 241:12-17; Ex. L, Gorijavolu Tr. 63:4-20; 158:13-159:3; 176:8-20; 276:6-277:21; 306:13-308:16; Ex. M, Johns Tr. 33:11-34:10; 214:16-219:13; 222:1-10; Ex. N, Gupta Tr., p., 371:16-373:05. **These drives were never searched, collected, or produced.**

As of the date this Motion was filed, only data from the S drive has been produced. After Plaintiffs raised this issue during a Discovery Conference, Aurobindo dodged questions and slow-played the issue. Rather than agreeing to produce data from other noncustodial sources and shared drives, Aurobindo represented to the Court that it was not refusing to provide documents from other

---

[3] The remaining deponents are set to be deposed on within the next month, and most will be done much sooner than that. In all likelihood, these depositions will have taken place before the briefing on this matter is completed. The Parties are all bound by a schedule that simply cannot be moved because of one party's delinquencies.

shared drives, but that Aurobindo was still considering Plaintiffs' request. Ex. H, 03/24/2021 Hrg. Tr. p. 14:6-10. However, Aurobindo has not made any productions from these other drives.

At this time, no depositions of Indian witnesses have taken place, but Jasleen Gupta testified that she believed that the pharmacovigilance department at APL also utilizes shared drives (Ex. N, Gupta Tr., p., 392:16-20), and Blessy Johns testified that she is aware that there are shared drives at APL for regulatory purposes. Ex. M, Johns Tr. 217:4-13; 221:22-222:15. Outside of what APL has produced during core discovery, no noncustodial documents have been produced in response to Plaintiffs' Rule 34 requests, despite multiple follow-up emails from Plaintiffs.

### c. Paper Files and Documents

During these same depositions, Plaintiffs learned that many documents, such as batch records, as well as many other documents maintained by the quality department at AuroLife were maintained in paper. This also includes a department-wide notebook maintained within the Quality Assurance Department. Ex. K, Doshi Tr. 37:2-23; 42:13-43:7; 62:3-15; 68:4-69:7; 75:4-18; 84:6-87:2; 195:9-23; 272:6-273:7; Ex. L, Gorijavolu Tr. 60:8-61:3; 80:19-81:23; 82:11-92:8; 93:14-96:23. *See also e.g.,* ECF No. 328, p. 4 (Plaintiffs' Requests for Production Nos. 19-23, 27, 44, 54, 117 (requesting these types of documents)). **These documents still have not been produced to plaintiffs.**

Plaintiffs also discovered certain employees maintained notebooks. Ex. G, Doshi Tr. 133:20-138:12; Ex. H, Gorijavolu Tr. 93:14-96:23. **These paper documents has not been produced.**

### d. Aurobindo Did Not Search its Custodians' Electronic Devices, including the Computers Themselves

Perhaps most egregiously, the custodial files of each custodian (at least at the time their depositions were taken) were comprised entirely (100%) of documents collected from emails.[4] *See,*

---

[4] Plaintiffs note that audits each of Aurobindo's productions document-by-document is a time-intensive endeavor, one that was entirely avoidable, had Aurobindo complied with its obligations to

*e.g.,* Ex. T, U (metadata from all files in Bhadresh Doshi and Prasad Gorijavolu's files as of the time of their depositions). This means that either (1) the computers of each custodian were not searched, or (2) whatever was found was not produced. Neither is acceptable. Even the most diligent employee will not save every document to a shared drive or on a network. For example, every PC or laptop has a downloads folder where documents are automatically saved when downloaded from any internet source or even from emails. Every computer also has the ability to save a document to a desktop folder or to a My Documents folder or other folders created by the user. It is unfathomable that a custodial collection could be deemed complete by searching *only* a custodian's email.

Moreover, every employee who has been deposed so far has had access to the standard suite of Microsoft Office programs (i.e., Word, Excel, Power Point, etc.). Ex. W. Aurobindo did not produce a single document from Word, Excel, or Power Point for any of the custodians deposed thus far that which was not attached to an email. **In other words, if it wasn't attached to an email, Aurobindo never produced it.** This is in spite of testimony from Aurobindo's witnesses that these individuals authored standard operating procedures, as well as many other documents that had to have existed outside of an email at some point. And these are just the documents that plaintiffs know about.

### e. Plaintiffs Raised the Issue of Spoliation with Aurobindo and the Court

Because Aurobindo had insisted on multiple occasions that its production was complete, Plaintiffs considered the swath of missing documents and at the April 14, 2021 Discovery Conference, Plaintiffs described some of the testimony given by Aurobindo's first two witnesses, Bhadresh Doshi

---

interview its employees and custodians to ascertain the nature and scope of these sources when this MDL began more than two years ago. Indeed Judge Schneider warned Defendants multiple times that the failure of a foreign entity to appear before it was served would not serve as an excuse for the company to pretend it was not up to speed on the important issues in this case at the time it ultimately entered an appearance. Ex. V, 11/20/2019 Hrg. Tr. 45:7-18, 46:17-23 .

and Prasad Gorijavolu. Ex. J, 04/14/2021 Hrg. Tr., p. 40-41. If Aurobindo had truly produced everything in its possession, custody, or control, then the only rational alternative is that the documents were not preserved and/or were destroyed.

## VI. AUROBINDO DID NOT BEGIN TO PRODUCE THE VAST MAJORITY OF ITS DOCUMENTS UNTIL AFTER IT GOT CAUGHT

Defendants have been on notice for months that the Court and Plaintiffs would be prejudiced by belated document dumps. It was for this very reason that the Court imposed rolling production deadlines for the Defendants' documents in this MDL. During the December 9, 2020 status conference, Plaintiffs informed the Court that certain defendants had produced a substantial portion of their production after the November production deadline. Ex. D, 12/09/2020 Hrg. Tr. 14:7-19. The Court noted that it found these belated document dumps "disturbing." *Id.* In spite of this warning, Aurobindo did not remedy its production deficiencies.

The day before Plaintiffs were scheduled to depose Aurobindo's 30(b)(6) designee on regulatory issues, Blessy Johns, and its Director of Pharmacovigilance, Jasleen Gupta, Plaintiffs received an email from Aurobindo, telling them that Aurobindo was planning to make a supplemental production of documents relating to the two custodians being deposed within the next 24 and 48 hours, respectively. When Plaintiffs inquired as to the size of the production, they were informed that it would be roughly 20,000 documents. **This production on its own was larger than the entire production made by all Aurobindo defendants collectively as of the discovery cutoff in November 2020.**

By way of example, Figure 1 below shows the scope and timeframe for the documents produced for Blessy Johns up until this last-minute production, which came after 10:45 EST on the eve of the deposition:

**Figure 1: The Custodial Production for Blessy Johns As of 1 Day Prior to Her Deposition**



This initial production contained 1,925 documents. Notably, there are large gaps in time, where there are no emails at all, such as in the second half of 2017, a time during which Aurobindo was most assuredly communicating with the FDA through Ms. Johns about its VCDs. *See* Ex. M, Johns Tr. p., 261:15-265:20.

As Figure 2 shows below, Aurobindo produced an additional 7,257 documents for Ms. Johns on the eve of her deposition, bringing the new document total to 9,182 documents. As is also shown below, the gaps in time where emails were missing suddenly contain documents for that time period.

**Figure 2: The Custodial Production for Blessy Johns As of the Night Before Her Deposition**



The same was true for Jasleen Gupta's custodial file.  As shown below in Figure 3, prior to Aurobindo's last-minute production of additional documents, Ms. Gupta's file contained only 1,134 documents. Ms. Gupta testified that she worked at Aurobindo from August 2018 until January 2020. *See* Ex. N, Gupta Tr. p., 73:01-24. . Notably though, there are gaping holes in this production as well. As can be seen below, Aurobindo produced no documents after 2018.  **In other words, Aurobindo's production failed to account for approximately 2/3 of Ms. Gupta's employment with the company.**

**Figure 3: The Custodial Production for Jasleen Gupta As of 2 Days Prior to Her Deposition**



Less than 48 hours prior to Ms. Gupta's deposition, Aurobindo produced an additional 9,787 documents. As shown in Figure 4 below, the gaps in the production now have documents shown in what was previously a missing date range. **The last-minute production of documents raised the total number of documents in Ms. Gupta's custodial file to 10,921 and increasing the size of Ms. Gupta's custodial file by 90%.**[5] Once again, date ranges that were previously devoid of

---

[5] There were approximately 66 documents produced with dates that predated Ms. Gupta's employment with the company.  To make the Figure more helpful, this graph shows the documents from December 2017 onward and omits those 65 documents from the timeline. The figure also therefore shows a document total of 10,855 documents, rather than the true total of 10,921.

documents were at least somewhat filled in, demonstrating that Aurobindo did in fact have documents for the date ranges in question.

**Figure 4: The Custodial Production for Jasleen Gupta As of 1 Day Before Her Deposition**



Because the email from Aurobindo was sent to Plaintiffs within hours of the regularly scheduled April Discovery Conference, Plaintiffs raised this issue with the Court and was invited to file the instant Motion.

## VII.  AUROBINDO FAILED TO DISCLOSE ITS DISCOVERY DEFICIENCIES TO PLAINTIFFS AND TO THE COURT

At no time during the discovery period (through November 2020) did Aurobindo disclose to Plaintiffs that tens of thousands of documents were being withheld.  Nor did Aurobindo disclose that it had failed to search the most basic of custodial sources of data, which included each custodian's computer or company drives where each custodian has now testified that they kept most of their documents.

Between November 25, 2021 and March 18, 2021, Aurobindo did not supplement its production even once for any US custodian. Furthermore, after making its Core Discovery Production, APL produced *6 pages* of documents before the discovery cutoff. To date, APL still has

produced *no documents* from noncustodial sources beyond what was produced during Core Discovery. Ex. P.

Instead, on the eve of the first four depositions that took place, Aurobindo's counsel strategically dumped documents on Plaintiffs, preventing them from meaningfully (or even superficially) reviewing the documents in advance of the deposition taking place. As these depositions had already been pushed back once to allow Aurobindo to complete its document production, it was simply too late to push these depositions once again. The same is true of the depositions scheduled to take place in short order.

These document dumps grew in size as the depositions progressed until it became readily apparent that this was a concerted effort by Aurobindo to withhold important documents in an effort to prevent Plaintiffs from obtaining meaningful discovery.

### a. Aurobindo Has More than Quadrupled its Production Since the Document Production Cutoff

Since the November 2020 discovery deadline, both the US and foreign entities have produced massive amounts of documents. This is particularly concerning as to the US entities, as its production has more than tripled in size since the production deadline in November, and most of that document dump has been heaped upon Plaintiffs in the last five weeks. APL's document count has also quadrupled from its original production:

|  | Documents Produced by November 30, 2020 | Documents Produced between November 30, 2020 and March 18, 2021 | Additional Documents Produced after March 18, 2021 |
|---|---|---|---|
| APL | 633 | 34,446 | 148,331 |
| US Entities | 14,072 | 501 | 53,118 |

## VIII. DESPITE AUROBINDO'S SUPPLEMENTAL PRODUCTIONS, AUROBINDO STILL HAS NOT PRODUCED CRITICAL DOCUMENTS

Even with these supplemental productions, Plaintiffs are nonetheless aware that certain, critical documents have not been produced. This is evidenced in a number of different ways:

### a. Plaintiffs Have Found Email Chains Which Were Sent to Multiple Custodians, But These Emails Were Only Disclosed from One Custodial File

Nearly all (if not all) emails produced by Aurobindo have only one custodian listed in the metadata. The ESI Protocol notes that a producing party is permitted to deduplicate and thread email chains. ECF No. 127, p. 9. However, the Protocol further specifies that if an email is found in multiple custodial files, then this needs to be specified in the metadata. *Id.* This is an important part of the ESI protocol allowing Plaintiffs to confirm who sent and received documents and to trust the production.

Plaintiffs therefore contacted Aurobindo to alert them to what appeared to be a deficiency in their production and told Aurobindo directly that there were only two possibilities: (1) there was an issue with Aurobindo's document vendor, and the ESI protocol was simply not being followed, or (2) documents were missing. After allowing Aurobindo an opportunity to remedy this glaring and massive deficiency in its production, the second scenario is the only option that remains.

On April 18, 2021, twice on April 19, 2021, and again on April 21, 2021 Aurobindo made overlay productions to fix issues where custodians were not properly designated. Ex. P.

Even though the issue from the vendor side has now been cured, substantial issues remain, providing additional evidence that documents were spoliated by Aurobindo

This issue is also highlighted in analyzing the productions for certain custodians. By way of example, Krishna Reddy Chada, who served as the Vice President of Operations at Aurobindo Pharma USA from June 2015 through July 2020, and who currently serves as AuroLife Pharma LLC, Senior Vice President of Operations, only has 991 emails, as shown below in Figure 5. *See* Ex. X. This simply

does not pass the smell test, when one compares this number of documents to Aurobindo's disclosure that when search terms were run over Mr. Chada's custodial file, that search yielded 12,937 documents.

**Figure 5: Search Result for Krishna Reddy Chada's Emails in His Custodial File**



As can be seen above, Mr. Chada's custodial file contains low email counts around the date of Aurobindo's first recall in January 2019. A search in Plaintiffs' document repository for just Mr. Chada's email address, however, yields 1,183 results, as shown in Figure 6 below. This 192 document difference highlights an important issue: there are emails missing from Mr. Chada's file.

**Figure 6: Search Result for "kchada@aurobindousa.com"**



While Plaintiffs were able to get these 192 emails that happened to be sent to other individuals who were designated as custodians, this begs the question of what Plaintiffs are missing from emails

that would have been sent to individuals who are not custodians. Mr. Reddy Chada also never received a litigation hold *(see* Ex. Y*)*, so it is further unclear whether additional data was lost as a result of the company's failure to preserve evidence.

Prasad Gorijavolu's custodial file presents another good example. Mr. Gorijavolu worked in Quality Control at Aurolife. A search for his all emails in his custodial file yields 432 results. This production remains small, even though Aurobindo disclosed that after running search terms over Mr. Gorijavolu's file, that search resulted in 41,130 hits. *See* Ex. S.

As can also be seen, there significant gaps throughout the timeline for which there are no emails.

**Figure 7: Search Results for Prasad Gorijavolu's E-mails in His Custodial File**



A search for Mr. Gorijavolu's email address, however, yields 480 emails, more than what shows up in Mr. Gorijavolu's file.

**Figure 8: Search Results for "pgorijavolu@aurobindousa.com"**



Once again, this begs the question of what emails were not collected from Mr. Gorijavolu's file that were sent to non-custodians. Mr. Gorijavolu also did not receive a litigation hold. Ex. Y.

These same issues are further apparent in the custodial file of other deponents who were selected by Plaintiffs to be deposed. However, custodians who were not selected for deposition have deficiencies even more glaring.

For example, Arpit Patel's custodial file *has only 42 documents in total:*

**Figure 9: Search Results for Arpit Patel's Custodial File**



While the document count alone should be enough, it should go without saying that a custodian who worked on Aurobindo's valsartan products should have at least one email after the

time during which Aurobindo began selling its VCDs in the United States. According to Mr. Patel's LinkedIn page, he worked as AuroLife's Associate Director of Quality Assurance and Compliance from March 2013 through December 2017. Ex. Z. And yet, for the period between 2015 and 2017, Aurobindo produced approximately 4 documents for him. This low document count does not square with Aurobindo's disclosure that after running search terms over Mr. Patel's file, Aurobindo got 7,224 hits. *See* Ex. S.

## IX. AUROBINDO DESTROYED DOCUMENTS BY FAILING TO SEND LITIGATION HOLDS TO TWO THIRDS THE CUSTODIANS IN THIS MDL

In addition to the waves of documents held back by Aurobindo, it is also clear that Aurobindo failed to take appropriate steps to preserve evidence in this case. For instance, Aurobindo sent legal holds to only approximately 1/3 of the custodians in this case, as shown in the table below. The information regarding which custodians received litigation hold letters comes directly from letters sent to Plaintiffs' counsel by Aurobindo on December 31, 2019 and March 29, 2021.

| # | Custodian Name | Entity | Job Title | Date Custodian Was Agreed to/Approved by the Court | Date Custodian Received a Litigation Hold (if at all)[6] |
|---|---|---|---|---|---|
| 1 | Ale, Srinivasulu | Aurobindo USA | Director, Quality Control | 12/23/2019 | No litigation hold sent |
| 2 | Bheeminemi, Sudhir | Aurolife | Manager (Finished Product) Quality Control Department | 12/23/2019 | No litigation hold sent |
| 3 | Burns, Daniel | Aurobindo USA | Director of Quality and Compliance | 12/23/2019 | No litigation hold sent |
| 4 | Chada, Krishna Reddy | Aurolife | VP, Operations | 12/23/2019 | No litigation hold sent |
| 5 | Jackowski, Jeffrey | Aurobindo USA | VP, Quality Assurance and Compliance | 12/23/2019 | 01/11/2019 |
| 6 | Kota, Venkata | Aurobindo USA | COO | 12/23/2019 | No litigation hold sent |

[6] Ex. Y.

| 7 | Palew, David | Aurobindo USA | Director, Supply Chain | 12/23/2019 | No litigation hold sent |
|---|---|---|---|---|---|
| 8 | Patel, Arpit | Aurolife | Associate Director, Quality Assurance and Compliance | 12/23/2019 | No litigation hold sent |
| 9 | Shirshikar, Milind | Aurolife | Production Director | 12/23/2019 | No litigation hold sent |
| 10 | Doshi, Bhadresh | Aurobindo USA | Quality Assurance | 12/23/2019 | No litigation hold sent |
| 11 | Gorijavolu, Prasad | Aurolife | Quality Control | 12/23/2019 | No litigation hold sent |
| 12 | Gupta, Jasleen | Aurobindo USA | Manager, Pharmacovigilance | 12/23/2019 | 01/11/2019 |
| 13 | Johns, Blessy | Aurobindo USA | Regulatory Affairs | 12/23/2019 | No litigation hold sent |
| 14 | Lucas, Steve | Aurobindo USA | Director, Quality Assurance and Compliance | 12/23/2019 | 01/11/2019 |
| 15 | Martinez, Sandra | Aurolife | Manager, Quality Assurance | 12/23/2019 | No litigation hold sent |
| 16 | Singh, Sanjay | Aurobindo USA | VP, Operations (North America) | 12/23/2019 | No litigation hold sent |
| 17 | Mr. Mallikarjun | APL | Unit VII Operations Head | 02/24/2021[7] | 04/03/2020 |
| 18 | Tripathy, Pravatkumar | APL | Unit VII Quality | 02/24/2021 | 04/03/2020 |
| 19 | Kamavarapu, Sarath Kumar | APL | Unit XI API Quality | 02/24/2021 | 04/03/2020 |
| 20 | Krishna, M V Rama | APL | Unit XI API Operations Head | 02/24/2021 | 04/03/2020 |
| 21 | Penchalaiah, Hanumanthu | APL | Global Pharmacovigilance Head | 02/24/2021 | 04/03/2020 |
| 22 | Shinde, Mahesh | APL | Unit VII Quality Head | 02/24/2021 | 04/03/2020 |
| 23 | Rama, Srinivas | APL | Unit XI Quality Head | 02/24/2021 | 04/03/2020 |
| 24 | Raju, MV Subba | APL | Manufacturing | 02/24/2021 | No litigation hold sent |
| 25 | Reddy, T Rajasekhar | APL | Manufacturing | 02/24/2021 | No litigation hold sent |
| 26 | Kumar, P. Sateesh | APL | Manufacturing, Science, and Technology | 02/24/2021 | No litigation hold sent |

---

[7] All custodians approved by this date were approved during the Discovery Conference on 02/24/2021 on pages 41-44 of the transcript. *See* Ex. F.

| 27 | Varma, GV Srinivasa Sudhakar | APL | Engineering and Utility | 02/24/2021 | No litigation hold sent |
|---|---|---|---|---|---|
| 28 | Somasundaram, N | APL | Quality Control | 02/24/2021 | No litigation hold sent |
| 29 | Reddy, A Srinivasa | APL | Warehouse | 02/24/2021 | No litigation hold sent |
| 30 | Rao, R Srinivasa | APL | Quality Assurance | 02/24/2021 | No litigation hold sent |
| 31 | Srikanth, A | APL | Quality Assurance | 02/24/2021 | 04/03/2020 |
| 32 | Reddy, Kasava | APL | VP, Outsourcing | 02/24/2021 | No litigation hold sent |
| 33 | Reddy, Ashok | APL | Assistant General Manager, Corporate Quality Assurance | 02/24/2021 | No litigation hold sent |
| 34 | Mr. Nagaraju | APL | Deputy Manager Quality Assurance | 02/24/2021 | No litigation hold sent |
| 35 | Dr. A. Ram Mohan Rao | APL | Chief Quality Officer | 04/01/2021 | 01/11/2019 |

Bhadresh Doshi and Prasad Gorijavolu testified at their depositions that they (1) never received litigation holds; (2) did not know what litigation holds were; (3) were never told to preserve or save documents for this case; and (4) that they in fact did not save or preserve documents from this case. Ex. K, Doshi Tr., p., 110:1-22; 118:7-128:19; 287:4-288:23; Ex. L Gorijavolu Tr., p., 268:11-274:15. Indeed, both testified that they only found out about this case in 2021. Ex. M, Doshi Tr., p., 103:14-23; Ex. N, Gorijavolu Tr., p., 267:13-268:10.

It also became apparent during these depositions that the sources of data not produced to Plaintiffs are readily accessible and contain highly relevant information. By way of example, Plaintiffs received an outdated version of a standard operating procedure relating to a critical quality and safety issue, was produced to Plaintiffs during the deposition only after the witness admitted that it existed and applied to valsartan. The witness, who was deposed at AuroLife's headquarters, left the room and retrieved the policy after the parties went off the record to allow him to do so. Ex. L, 156:4-158:23. *Id.*

Aurobindo's practices were deliberate, and had they not been, they could have and should have been easily cured. Unfortunately, they were not.

## ARGUMENT

Discovery is not a "gotcha game." *Inferrera v. Wal-Mart Stores, Inc.*, No. CIV. 11-5675 RMB/JS, 2011 WL 6372340, at *2 (D.N.J. Dec. 20, 2011). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

This Court has previously made it clear to litigants that plaintiffs should not be required to "spoon-feed [the Defendant] regarding the relevant and responsive [documents] to produce." *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 701 (D.N.J. 2015). This is consistent with Third Circuit law. *See e.g., Tracinda Corporation v. DaimlerChrysler AG,* 502 F.3d 212, 243 (3d Cir.2007) (The "obligation on parties and counsel to come forward with relevant documents not produced during discovery is 'absolute'."); *see also Montana v. Cty. of Cape May Bd. of Freeholders*, No. CV 09-755 (NLH/JS), 2013 WL 11233748, at *9 (D.N.J. Sept. 20, 2013) ("The federal rules do not require that plaintiff identify the exact "magic words" to obtain clearly relevant discovery...Defendant may not delegate to plaintiff the duty to identify its relevant requested documents.")

Nonetheless, Aurobindo's intentional misconduct has resulted in both the deliberate withholding of highly relevant documents, as well as the apparent destruction of others. This lethal combination has been highly prejudicial to Plaintiffs' ability to take meaningful depositions, compile expert reports, and prepare for trial.

This Court is vested with the authority pursuant to Rules 26 and 37 to impose sanctions that match the severity of the offenses, cure prior issues, and deter similar conduct in the future. *See Wachtel v. Health Net, Inc.,* 239 F.R.D. 81, 84 (D.N.J. 2006) ("Rule 37 sanctions are available to the district court

"not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

Courts are vested with the authority to impose sanctions for abuses of the discovery process. Fed R. Civ. P. 37. "The rule's purposes are to: (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99–100 (D.N.J. 2006) *See, also Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) and *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1453 (11th Cir.1985). "The Rule authorizes this Court to impose other appropriate sanctions in response to such discovery abuse, including payment of reasonable expenses caused by the abuse and any of the actions authorized under Rule 37(b)(2)(A), (B) and (C) outlined above." *Id.*

Beyond the codified authority in the Federal Rules, courts are also vested with the inherent authority and "power to police litigant misconduct and impose sanctions on those who abuse the judicial process." *Wachtel v. Health Net, Inc.,* 239 F.R.D. 81, 84 (D.N.J. 2006) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

"The Third Circuit has advised that a pattern of wrongdoing may require a stiffer sanction than an isolated incident and that a grave wrongdoing may compel a more severe sanction than might a minor infraction." *Wachtel v. Health Net, Inc.,* 239 F.R.D. 81, 100–01 (D.N.J. 2006) (internal citations omitted). Further, "wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongdoing that ... fails to achieve its untoward object." *Id.*

For the reasons specified below, Plaintiffs ask the Court to strike Aurobindo's Answer and suppress all of its defenses.

## X. AUROBINDO SPOLIATED DOCUMENTS BY FAILING TO SEND LITIGATION HOLDS TO MORE THAN HALF OF THE CUSTODIANS IN THIS CASE

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonable foreseeable litigation.'" *Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 152 (D.N.J. 2009) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). At minimum, Aurobindo reasonably should have anticipated litigation at the time it realized it needed to recall its product. *See* Ex. AA (showing Aurobindo was on notice its product was contaminated as of at least January 2, 2019).

Sanctions for spoliation include: "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Kounelis v. Sherrer,* 529 F.Supp.2d 503, 518 (D.N.J.2008).

Before sanctions can be imposed, a Court must also determine that a party's duty to preserve evidence had been triggered. *Id.*, p. 518. "The duty to preserve evidence attaches when the party in possession of the evidence knows or reasonably should know that litigation is pending or probable." *State Nat'l Ins. Co. v. Cty. of Camden*, No. CV 08-5128 (NLH/AMD), 2011 WL 13257149, at *3 (D.N.J. June 30, 2011).

Once the duty to preserve evidence arises, it is fundamental that a party must issue litigation holds to relevant individuals to ensure evidence gets produced. *Id.* ("Once a party reasonably anticipates or knows of pending litigation and the duty to preserve has attached, a party 'must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.'"); *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.,* No. 07-CV-5855, 2010 WL 2652412, at *3 (D.N.J. July 1, 2010) (same); *Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) (same); *see also Crown Castle USA Inc. v. Fred A. Nudd Corp.,* No. 05-CV-6163T, 2010 WL 1286366, at *10 (W.D.N.Y. Mar. 31, 2010) ("Once the duty to preserve has attached, a party should institute a litigation hold and 'suspend its routine document

and retention/destruction policy.'") (internal citations omitted). A finding that a party failed to implement litigations holds after the duty to preserve evidence attached is sufficient evidence to find that a party spoliated documents. *State Nat'l Ins. Co. v. Cty. of Camden*, No. CV 08-5128 (NLH/AMD), 2011 WL 13257149, at *5 (D.N.J. June 30, 2011) (In light of the Court's finding that the County had a duty to preserve evidence and failed to implement a litigation hold in order to meet its duty, the Court now turns to whether sanctions should be imposed for spoliation.").

Similarly here, Aurobindo had a clear duty to preserve evidence, and it failed to do that after receiving notice multiple times and in multiple ways that litigation was immanent and that certain custodians were germane to this case. Aurobindo also admits that it failed to send litigation holds to custodians that were deemed relevant by the Court. *See* Ex. Y. This deliberate choice by Aurobindo resulted in a loss of documents and has prejudiced Plaintiffs' ability to work up their case, both in depositions and with their experts. It has also resulted in Plaintiffs needing to devote countless hours to this issue.

## I. AUROBINDO'S ANSWER AND DEFENSES SHOULD BE STRICKEN AND SUPPRESSED

Rule 37 provides in relevant part:

> "If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Fed R. Civ. P. 37.

"[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence

of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976).

In assessing whether it is appropriate to strike a party's defenses, the Third Circuit set forth six factors to be considered: "(1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original). These factors are not definitive but mere guidance, and the ultimate decision to dismiss or to enter a default is still within the discretion of the court. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). "Each factor need not be satisfied for the trial court to dismiss a claim." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) (citing *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir.1988)). Courts are given broad discretion in determining whether a set of facts merits this remedy. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221–22 (3d Cir. 2003) ("And though the sanction may be extreme, the appellate court's standard of review is deferential.)

### a. The Record Establishes that Aurobindo Bears Responsibility for the its Misrepresentations to the Court, Spoilation, and Willful Withholding of Documents

Aurobindo is responsible for the tactics utilized to defend itself in this action. Further, when Plaintiffs recently raised the notion of Aurobindo's dilatory document dump, Aurobindo's counsel stated on the record that they had just received the documents. Ex. J, 04/14/2021 Hrg. Tr. 41:23-43:6. For these reasons, it appears that the fault lies primarily with the party, rather than its counsel. *C.f. Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) ("However, the Poulis' lack of responsibility for their counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel.").

### b. Plaintiffs Have Been Substantially Prejudiced in their Ability to Build and Bring their Case

Aurobindo withheld the vast majority of its documents from US entities until many of its important witnesses had already been deposed. Beyond this, certain documents from highly relevant individuals will never be produced to Plaintiffs because Aurobindo deliberately failed to send litigation holds to approximately two thirds of the custodians in this case.

Plaintiffs' expert reports are due very soon, and the discovery period in this case was carefully agreed created by the Court to ensure that discovery took place in an orderly any fair manner, consistent with Fed. R. Civ. P 1. However, Aurobindo ignored its production deadlines and misrepresented the status of these productions to the Court and Plaintiffs. Plaintiffs relied on Aurobindo's assertions and moved forward with discovery on these representations.

However, it is now clear to Plaintiffs that discovery will always be incomplete in light of the missing documents and Aurobindo's failure to preserve evidence. Plaintiffs therefore will not have the benefit of these documents for depositions, their experts, or trial.

### c. Aurobindo's History of Dilatory Tactics and Lack of Candor with the Court is Long and Fulsome

Plaintiffs need not rehash the long history of Aurobindo's behavior detailed above in the fact section of their Memorandum but incorporate it here and further note that the conduct which forms the basis for this motion is not an isolated incident. Instead, it is a pattern of behavior that evidences a disregard for the integrity of the judicial process and this Court. *See Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) ("Time limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation. If compliance is not feasible, a timely request for an extension should be made to the court. A history by counsel of ignoring these time limits is intolerable.").

### d. Aurobindo Acted Willfully and in Bad Faith

A review of Aurobindo's conduct demonstrates that it acted willfully and in bad faith. Indeed, Aurobindo made numerous misrepresentations to the Court:

- Aurobindo misrepresented its capability to transmit documents via FTP, allowing it to delay the production of documents from APL custodians. Ex. G, 03/12/2021 Hrg. Tr. 4-13**.**
- Aurobindo falsely represented that it had collected all custodial files for the US entities and had loaded that data into its system as of June 17, 2020. Ex. C, 06/17/2020 Hrg. Tr. 38:19-22.
- On December 19, 2020, Aurobindo falsely represented to the Court that it had produced all documents it had relating to the US custodians. Ex. D, 12/09/2020 Hrg. Tr. p. 21:3-4.
- On February 17, 2021, Aurobindo falsely represented it had produced all responsive standard operating procedures and after supplementing its production pursuant to an order from the Court, Aurobindo served a certification, certifying that its production was complete. Ex. E, 02/17/2021 Hrg. Tr. 38:25-29:13, 41:3-6; Ex. O.
- On March 12, 2021, Aurobindo once again represented it had produced everything that was responsive from the US custodians' files. Ex. G, 03/12/2021 Hrg. Tr. 79:4-10 (emphasis added).
- On March 24, 2021, Aurobindo once again represented it had produced "everything that we believe is responsive to the requests…" Ex. H, 03/24/2021 Hrg. Tr. 12:9-16:4

Aurobindo, when asked about its production, informed the Court and Plaintiffs that Plaintiffs were in the wrong for questioning Aurobindo's deficiencies (Ex. E, 02/17/2021 Hrg. Tr. 34:1-35:3; Ex. H, 03/24/2021 Hrg. Tr. 14:615:4; 15:21-16:4). Aurobindo further resisted  additional discovery into Aurobindo's discovery practices were warranted because the company had allegedly complied with its obligations. Ex. I, 03/31/2021 Hrg. Tr 24:16-25:18. **These representations were all false.** Rather than admitting that it had withheld the vast majority of responsive documents, Aurobindo lied.

Aurobindo did not volunteer to even attempt to rectify its grossly inadequate document production until Plaintiffs exposed the problems with the production during depositions. Ex. P. In spite of these large dumps of documents that are being produced while depositions are taking place, Aurobindo continues to withhold nearly all noncustodial data from APL and the majority of relevant noncustodial data disclosed by its own witnesses during their depositions. This is precisely the type of

bath faith that the court system seeks to deter under the *Poulis* factors. *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006).

### e. Lesser Sanctions Have Been Ineffective

No Court deadline, order, or threat of sanctions prior to this motion being brought has been enough to prevent Aurobindo from falsely stating on the record that its production was complete. Moreover, the damage surrounding Aurobindo's failure to send litigations holds cannot be undone. Aurobindo's history of waiting to get caught must come to an end.

### f. Aurobindo's Defenses Lack Merit

In analyzing this sixth factor, Courts need not make decisions on a summary judgment standard. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984). Indeed, not all of the *Poulis* factors need to be met for a defendant's defenses to be stricken. *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir.1988).

While Aurobindo has yet to file an answer, many of Aurobindo's defenses were ruled upon by the Court during the motion to dismiss phase. *See* MTD Orders and Opinions 1-6 (ECF Nos. 676, 729, 776, 819, 839, and 1020.) Plaintiffs subsequently filed amended master pleadings, which remedy pleading deficiencies and removed any claims disallowed by the Court.  ECF Nos. 1148-1, 1148-3, 1148-5.

Plaintiffs anticipate Aurobindo will assert additional defenses in an answer but cannot comment upon defenses that have not yet been brought.  Nonetheless, this factor is not dispositive, and other courts have imposed sanctions without determining that a party's defenses lack merit.  *See e.g.*, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (upholding exclusion of damages evidence and dismissal of contract claim while also finding the defendant had meritorious defenses).

### g. Conclusion

A denial of Plaintiffs' request would send a message to other litigants that this type of behavior is acceptable. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976) ("If the decision of the Court of Appeals remained undisturbed in this case, it might well be that These respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.").

For all of these reasons, Aurobindo's defenses should be stricken and suppressed.

## II. PLAINTIFFS ARE ENTITLED TO REASONABLE COSTS AND FEES

Beyond the other available remedies for failing to comply with discovery obligations, Rule 37 dictates that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Costs and fees are also. permissible remedy for the spoliation of evidence. *See State Nat'l Ins. Co. v. Cty. of Camden*, No. CV 08-5128 (NLH/AMD), 2011 WL 13257149, at *7 (D.N.J. June 30, 2011) (awarding fees and costs to plaintiff where defendant failed to institute litigations holds to compensate plaintiff for "the time incurred by State National in assessing the scope of the County's email production."); *Katiroll Co. v. Kati Roll & Platters, Inc.,* No. CIV.A. 10-3620 GEB, 2011 WL 3583408, at *1 (D.N.J. Aug. 3, 2011); *Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Pursuant to these authorities and L.R. 54.2,' Plaintiffs request leave to file a statement of attorneys fees and costs necessitated by Aurobindo's misconduct, which includes the time and expense spent in reviewing the productions and the many applications and arguments to the Court, as well as the attorneys' fees and costs of all depositions to be taken. If discovery proceeds, a significant

sanction is still warranted incurred as a result of Aurobindo's misconduct and to be reimbursed for those fees and costs.[8]

Aurobindo's deliberate withholding of documents was unjustified. There were clear document requests, rulings on objections, and other court orders in place which told Aurobindo what documents it needed to produce, when the documents needed to be produced, and when. Aurobindo flouted these orders and continues to withhold large numbers of relevant documents. Moreover, Aurobindo showed little willingness to remedy its discovery deficiencies until Plaintiffs were able to identify each individually and until Plaintiffs raised each at a hearing. This created unnecessary work for both Plaintiffs and the Court and ate up time that should have been spent on reviewing documents, preparing for depositions, and preparing expert reports. Plaintiffs have had to work late into many evenings and weekends to uncover each of these discovery issues, schedule meet and confers, draft agenda letters, argue these issues, and continue to follow up with Aurobindo after each ruling to ensure it complied.

Plaintiffs therefore respectfully request that the Court grant Plaintiffs' request for related costs and fees, including attorneys' fees and costs necessitated by Aurobindo's misconduct, which includes the time and expense spent in reviewing the productions and the many applications and arguments to the Court, as well as the attorneys' fees and costs of all depositions to be taken. If discovery proceeds, a significant sanction is still warranted.

---

[8] To the extent the Court does not grant Plaintiffs' motion to strike and suppress Aurobindo's defenses, some fees and costs sought by Plaintiffs (i.e., future deposition fees and costs) have not yet been incurred. Plaintiffs therefore have not filed a statement of fees and costs with this Motion but will do so at the direction of the Court if permitted at an appropriate time.

## III. IF THE COURT DOES NOT STRIKE AND SUPPRESS ALL OF AUROBINDO'S DEFENSES, PLAINTIFFS ARE ENTITLED TO OTHER LESSER FORMS OF RELIEF

### a. All documents produced after March 15, 2021 coming from either of the US Aurobindo entities or from noncustodial sources at APL shall be deemed authentic and admissible to Plaintiffs alone

Rule 26 requires that a party "must, without awaiting a discovery request, provide to the other parties ... a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses...." Fed. R. Civ. P. 26(a)(1)(A). Further, "[a] party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case...." Fed. R. Civ. P. 26(a)(1)(E). "A party who has made a disclosure under Rule 26(a)...must supplement or correct its disclosure or response...in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect...." Fed. R. Civ. P. 26(e). When a party's duty to supplement or correct is enforced, a court may impose sanctions, "including exclusion of evidence, continuance, or other action, as the court may deem appropriate." Fed. R. Civ. P. 26(e), Adv. Comm. Notes to 1970 Amendment. When a party and/or its counsel fails to make "a reasonable inquiry" as to the completeness or correctness of a disclosure and improperly certifies the disclosure "without substantial justification," the court "must ... impose an appropriate sanction on the signer" of the disclosure, which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(1), (3).

Rule 37 also allows a court to impose sanctions "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e) ...." Fed. R. Civ. P. 37(c). The party will not be "allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* A court may also "order payment of the reasonable expenses, including attorney's fees, caused by the failure...." Fed. R. Civ. P.

37(c)(1). Rule 37(c) "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a) ... prevent[ing] a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1)." Fed. R. Civ. P. 37(c), Adv. Comm. Notes to 1993 Amendment. *See also Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 104–05 (D.N.J. 2006) (awarding sanctions after the defendant belatedly disclosed thousands of documents at summary judgment).

As discussed at length in the sections above, Aurobindo's conduct was neither justified nor harmless. Pursuant to the Court's authority under Rules 26 and 37, Plaintiffs ask that all documents produced after March 15, 2021 coming from either of the US Aurobindo entities or from noncustodial sources at APL shall be deemed authentic and admissible to the extent Plaintiffs (not Aurobindo) seek to introduce them at trial. Further, to enable Plaintiffs to utilize these documents (and to cure the issue that Plaintiffs will not be able to cross-examine witnesses being presented through deposition videos), Plaintiffs also request that they be permitted to introduce these documents to the jury and explain them. *See James Stewart Ent., LLC v. L&M Racing, LLC,* No. EDCV1249JGBSPX, 2013 WL 12248146, at *2 (C.D. Cal. June 28, 2013); *McCartt v. Kellogg USA, Inc.*, No. CV 5:14-318-DCR, 2015 WL 12978152, at *2 (E.D. Ky. July 20, 2015).

### b. Plaintiffs Should Be Entitled to Conduct Discovery into Aurobindo's Spoliation and Failure to Preserve Documents, in Order to Explain Any Document Deficiencies to a Jury

Should the Court decide not to strike all of Aurobindo's defenses, Plaintiffs ask the Court to exercise its inherent authority to permit Plaintiffs to conduct both written discovery and take depositions concerning Aurobindo's document production, retention, and destruction. This would include a 30(b)(6) deposition to cover this subject matter. This discovery and testimony would be played to the jury to explain the lack of documents.

### c. To Curb Aurobindo's Behavior from Repeating Itself, Aurobindo Should Be Required to File a Copy of Any Order Imposing Sanctions Upon It in Other Similar, Pending Cases

One of the purposes of Rule 37 is to deter future bad behavior. *See Wachtel v. Health Net, Inc.,* 239 F.R.D. 81, 84 (D.N.J. 2006). For this reason, Plaintiffs also request that the Court exercise its inherent authority to require each Aurobindo entity to file a copy of any resulting order which does impose sanctions on the company in all other cases currently pending against it where patients, customers, consumers, or third-party payors allege personal injuries, or have brought class actions on behalf of consumers, third party payors, and/or medical monitoring plaintiffs have brought a case against any of the Aurobindo entities.

### d. Any Resulting Order Imposing Sanctions on Aurobindo Should Remain Public

Pursuant to Rule 37's aim of curbing future bad behavior, Plaintiffs ask that any order resulting in the impositions of sanctions against Aurobindo remain publicly available.

## CONCLUSION

Discovery should not be a game of whack-a-mole. Aurobindo's discovery abuses have severely prejudiced Plaintiffs' ability to obtain and review documents, take meaningful depositions, and get documents to their experts in time. There is very little time left until Plaintiffs' expert reports are due, and Aurobindo cannot be permitted to continue to "find" documents at the last minute each time Plaintiffs discover yet another major deficiency with Aurobindo's production. Moreover, even if Aurobindo does continue to "discover" new documents, it has either not shown a willingness to produce them or has destroyed them, because large gaps in Aurobindo's production remain with only weeks to go in the discovery period.

While Plaintiffs have done their best to find and tackle each issue as it arose, there are undoubtedly other issued will arise, but there simply is not time to chase down each and every

deficiency in Aurobindo's productions. At some point, the gamesmanship needs to be put to an end. The Court has already imposed lesser consequences on Aurobindo, but to no avail. Plaintiffs therefore ask the Court to grant their motion to strike Aurobindo's defenses and to set a date for a trial on damages only.

Plaintiffs further request that the Court grant them leave to file a statement of attorneys' fees and costs, which includes the time and expense spent in reviewing the productions and the many applications and arguments to the Court, as well as the attorneys' fees and costs of all depositions to be taken.

Should the Court deny Plaintiffs' request to strike Aurobindo's defenses, Plaintiffs respectfully request that the Court exercise its authority to impose any of the other measures specified below:

1. An order directing that all documents produced after March 15, 2021 coming from either of the US Aurobindo entities or from noncustodial sources at APL shall be deemed authentic and admissible to the extent Plaintiffs (not Aurobindo) seek to introduce them at trial;

   a. To the enable Plaintiffs to utilize these documents (and to cure the issue that Plaintiffs will not be able to cross-examine witnesses being presented through deposition videos), Plaintiffs shall be allowed to introduce these documents to the jury and explain them.

2. An order granting Plaintiffs additional first and/or second depositions with witnesses of their choice, at a time convenient to Plaintiffs;

3. A 30(b)(6) deposition on document retention, destruction, and preservation to allow Plaintiffs to explain to the jury why certain categories of documents were never produced or were not produced in time for depositions;

4. An order directing each Aurobindo entity to file a copy of any resulting order which does impose sanctions on the company in all other cases currently pending against it where patients,

customers, consumers, or third-party payors allege personal injuries, or have brought class actions on behalf of consumers, third party payors, and/or medical monitoring plaintiffs have brought a case against any of the Aurobindo entities;

5. An order directing that any sanctions imposed upon Aurobindo in connection with this Motion remain in the public record; and

6. Any other remedies that the Court deems just and proper.


Dated: 4/23/2021

Respectfully Submitted,

<u>/s/ Marlene J. Goldenberg</u>
Marlene J. Goldenberg                          Ashleigh E. Raso
**GoldenbergLaw, PLLC**                    **Meshbesher & Spence**
800 LaSalle Avenue, Suite 2150              1616 Park Avenue
Minneapolis, MN 55402                        Minneapolis, MN 55404
(612) 333-4662                                     (612) 930-0216
mjgoldenberg@goldenberglaw.com        araso@meshbesher.com


***Counsel for Plaintiffs***