# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

—————————————————    CIVIL ACTION NUMBER:
IN RE:  VALSARTAN, LOSARTAN,
AND IRBESARTAN PRODUCTS       1:19-md-02875-RBK-JS
LIABILITY LITIGATION
                              STATUS CONFERENCE
—————————————————      (Via telephone)

        Wednesday, December 9, 2020
        Commencing at 4:00 p.m.

B E F O R E:                   THE HONORABLE JOEL SCHNEIDER,
                               UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey 07068
        For the Plaintiff

        GOLOMB & HONIK PC
        BY:  RUBEN HONIK, ESQUIRE
             DAVID JOHN STANOCH, ESQUIRE
        1835 Market Street, Suite 2900
        Philadelphia, Pennsylvania 19103
        For the Plaintiff

        KANNER & WHITELEY LLC
        BY:  CONLEE S. WHITELEY, ESQUIRE
             LAYNE HILTON, ESQUIRE
        701 Camp Street
        New Orleans, Louisiana 70130
        For the Plaintiff

        Karen Friedlander, Official Court Reporter
             friedlanderreporter@gmail.com
                  (856) 756-0160

        Proceedings recorded by mechanical stenography;
     transcript produced by computer-aided transcription.

**A P P E A R A N C E S: - CONTINUED**

LEVIN PAPANTONIO
BY:  DANIEL A. NIGH, ESQUIRE
316 S. Baylen, Suite 600
Pennsacola, Florida 32502
For the Plaintiff

GOLDENBERG LAW PLLC
BY:  MARLENE J. GOLDENBERG, ESQUIRE
800 Lasalle Avenue
Suite 2150
Minneapolis, Minnesota 55402
For the Plaintiff

DUANE MORRIS LLP
BY:  SETH A. GOLDBERG, ESQUIRE
30 S. 17th Street
Philadelphia, Pennsylvania 19103
For the Defendant ZHP and the Joint Defense Group

GREENBERG TRAURIG LLP
BY:  LORI G. COHEN, ESQUIRE
     STEVEN M. HARKINS, ESQUIRE
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
For the Defendants, Teva Pharmaceutical Industries Ltd.,
Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
Pharma, Inc.

BARNES & THORNBURG LLP
BY:  SARAH E. JOHNSTON, ESQUIRE
     KRISTEN LEE RICHER, ESQUIRE
2029 Century Park East, Suite 300
Los Angeles, CA 90067-2904
For the Defendant, CVS Health Co.

ULMER & BERNE LLP
BY:  JEFFREY DANIEL GEOPPINGER, ESQUIRE
600 Vine Street
Suite 2800
Cincinnati, OH 45202
For the Defendant, AmerisourceBergen

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
BY:  CLEM C. TRISCHLER, ESQUIRE
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
For the Defendant Mylan and the Joint Defense Group

1   **A P P E A R A N C E S: - CONTINUED**

2       KIRKLAND & ELLIS LLP
        BY:  ALEXIA R. BRANCATO, ESQUIRE
3            BRITTNEY NAGLE, ESQUIRE
        601 Lexington Avenue
4       New York, NY 10022

5       HILL WALLACK LLP
        BY:  NAKUL Y. SHAH, ESQUIRE
6       21 Roszel Road
        Princeton, NJ  08540
7       For the Defendant, Hetero Drugs, Hetero Labs

8   A L S O  P R E S E N T:

9       Judge Magistrate Williams

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          (ALL PARTIES VIA TELECONFERENCE, DECEMBER 9, 2020, 4:01

 2  P.M.)

 3          THE COURT:  We're on the record.  This is the

 4  Valsartan matter, Docket No. 19-2875.  When I called in, there

 5  were 49 people on the line.  If everyone wants to enter their

 6  appearance, that's fine, but I at least want to hear from the

 7  people who are likely to talk, and for the benefit of the

 8  court reporter, if you do talk, please introduce yourselves by

 9  name before you speak.

10          So let's get the entries of appearance for the

11  plaintiff.

12          MR. SLATER:  Good morning, Your Honor -- or good

13  afternoon, Your Honor, and Judge Williams, Adam Slater for

14  plaintiffs.

15          MR. HONIK:  Good afternoon, Your Honors, Ruben Honik,

16  for plaintiffs

17          MR. NIGH:  Good afternoon, Your Honors, this is

18  Daniel Nigh for plaintiffs.

19          MS. WHITELEY:  Good afternoon, Your Honors, this is

20  Conlee Whiteley on behalf of plaintiffs.

21          THE COURT:  Let's have the entries of appearance for

22  defendants.

23          MR. GOLDBERG:  Good afternoon, Your Honor, this is

24  Seth Goldberg on behalf of the ZHP parties and the defendants.

25          MS. COHEN:  Good afternoon, Your Honor, this is Lori
```

1    Cohen with Greenburg Traurig, and good afternoon, Judge

2    Williams, as well.  I'm here with Victoria Lockard and Steve

3    Harkins as well on behalf of the Teva defendants and the

4    defendants through liaison.

5           MR. TRISCHLER:  Good afternoon, Clem Trischler for

6    the Mylan defendants and the defendants' executive committee.

7           MS. BRANCATO:  Good afternoon, all, this is Alexia

8    Brancato from Kirkland and Ellis on behalf of the Torrent

9    entities, with me also is Brittney Nagle from Kirkland as

10   well.

11          MR. GEOPPINGER:  Good afternoon, Your Honors, Jeff

12   Geoppinger on behalf of the wholesaler defendants and

13   AmerisourceBergen.

14          MS. JOHNSTON:  Good afternoon, Your Honors, Sarah

15   Johnston on behalf of the retailer and pharmacy defendants,

16   CVS Pharmacy, Inc., and Rite Aid Corporation.

17          THE COURT:  All right.  Counsel, the Court received

18   the parties' letters which were served late last night.  I

19   suggest we go through the letters and then whatever issues we

20   don't address, we'll save them for the end.

21          As we usually do, I'd like to start with plaintiffs'

22   letter, and then we'll deal with those issues and then after

23   we're done, we'll go to defendants' letter and whatever issues

24   weren't covered, we'll address them.

25          So, Mr. Slater, I have your December 8 letter.  The

1  first issue is, you want certain indemnification agreements in

2  discovery; is that correct?

3         MR. SLATER:  That's correct, Your Honor.

4         THE COURT:  All right.  Is there anything else you

5  want to add to what's in the letter that you wrote?

6         MR. SLATER:  I don't think there's anything to add.

7  I just would emphasize that I think it's already encompassed

8  within the scope of the request for production and the

9  30(b)(6).  We're already going to get testimony on the

10 payments that are made by these parties, so there's really no

11 reason why we wouldn't also get the agreements.  And it's

12 obviously something we definitely will need for multiple

13 purposes.

14        THE COURT:  I think the issue with regard to the

15 Court's order is pretty clear.

16        With regard to the document request, can you explain

17 how you believe the indemnification agreements you request are

18 encompassed within that request?

19        MR. SLATER:  Sure, Your Honor.  Request for

20 Production No. 6 requests all contracts and agreements with

21 regard to a list of different items, which is pretty much

22 everything that would be encompassed in the process as

23 relevant to this case.  But most specific to this issue, any

24 contracts or agreements with regard to distribution, sale, or

25 marketing, or communications with private individuals

1    regarding safety or pricing.

2           Certainly with regard to distribution and sales, the

3    indemnification agreements would be part of that process and

4    would be entered as a corollary to the distribution and sale

5    of the finished dose and API.

6           THE COURT:  Do I take it, if I'm wrong, please let me

7    know.  Request for Production No. 6 was Court-ordered; is that

8    correct?

9           MR. SLATER:  That is.

10          THE COURT:  Let's hear from defendants.

11          MR. GOLDBERG:  Thank you, Your Honor.  This is Seth

12   Goldberg from Duane Morris, and let me speak to first, the

13   issue of the document request.  Your Honor, at no time during

14   any of the negotiations, hearings, case management

15   conferences, or other conferences with the Court in which we

16   discussed the document requests, did plaintiffs ever raise the

17   issue that they believed indemnification agreements between

18   the defendants would be subject to the document requests.

19          As Your Honor knows, these document requests were

20   used to search ESI custodian files for documents pertaining to

21   the manufacture of the API and the finished dose, and the

22   distribution of those products through the supply chain, not

23   to identify documents that may have been entered or agreed

24   upon in connection with insurance or in connection with the

25   litigation.

1          It's simply a complete stretch that plaintiffs are

2    moving now to try to get to indemnification agreements under

3    the document requests, and as I think Your Honor was

4    suggesting at the beginning about your position being clear,

5    certainly, in May, June, July and August, when the issue of

6    the Rule 26 insurance disclosures was on the agenda, at no

7    time then did plaintiffs request indemnification agreements.

8          Your Honor issued two different orders with respect

9    to insurance documents, one in May and one in June.  The first

10   one requiring insurance documents pursuant to Rule 26, and an

11   expansion of that to include excess policies, declinations and

12   reservation of rights, and in a number of different

13   transcripts in the spring and summer of 2019, more than a

14   year and a half ago, when this issue was addressed, plaintiffs

15   never requested indemnification agreements.

16         This issue was resolved a year and a half ago and the

17   Court really should be denying this request out of hand.

18         THE COURT:  This is the Court's ruling.  Let me give

19   you the Court's ruling on this issue, and then explain the

20   Court's reasoning.

21         Again, whoever is not speaking, could you please put

22   your phone on mute.  There's a tremendous amount of background

23   noise which is very distracting.

24         The Court's ruling to be confirmed in the Court order

25   is that plaintiffs' request that the defendants produce

1    indemnification agreements is denied.  First, I think the

2    issue under Rule 26(A)1(b) is pretty clear in the language of

3    the rule and the cases that interpret that rule.  The rule

4    only applies to insurance agreements.  It does not apply to

5    indemnification agreements.

6            We did some research on the issue and we came across

7    the cases that the defendants cite and we did not find any

8    cases supporting plaintiffs' view that indemnification

9    agreements come within the scope of the rule.

10           With regard to the argument regarding Document

11   Request 6, the Court also rejects that argument.  Mr. Goldberg

12   is correct that in all the time that we were discussing the

13   RFPs, the issue of indemnification agreements did not come up.

14   If it did, undoubtedly, the defendants would have objected.

15           The Court does not interpret that the production of

16   the manufacturing and distribution agreements would include

17   the indemnification agreements.  I think that's a bit of a

18   stretch as to what certainly the Court intended, and

19   undoubtedly the defendants intended.

20           So for those reasons, plaintiffs' request for the

21   indemnification agreements is denied.

22           The second issue relates to this Torrent issue.  Let

23   me tell you what I'm thinking, and then we'll hear argument.

24   I'm going to order Torrent within one week to serve the Court

25   with in-camera copies of the documents at issue, serve them by

1    e-mail or fax.  Don't put them on the docket.  I expect

2    Torrent to produce with that in-camera inspection, a

3    supporting affidavit, and then I will determine whether or not

4    the confidentiality designation is appropriate or not.

5            Mr. Slater, I read the case, of course, that you

6    cited in your letter brief, a *Benicar* case.  That case dealt

7    with a different issue.  That case dealt with sealing.  The

8    standard to seal documents is different than the standard to

9    designate a document as confidential under the discovery and

10   protective order entered in the case.

11           So if you read my case law, if you read my cases,

12   Torrent's counsel, and I've written a lot on this issue, an

13   affidavit from an attorney is insufficient.  An attorney

14   doesn't have firsthand knowledge of what's required under the

15   order, the discovery order that the Court entered.

16           So if you submit a supporting affidavit signed by an

17   attorney, I expect that your application will be denied

18   quickly, but I would expect you to submit an affidavit from an

19   appropriate knowledgeable person from your clients who has

20   personal knowledge of the issues to support the claim that

21   under the requirements in the discovery confidentiality order,

22   it meets those criteria.

23           With regard to the issue of -- the other documents at

24   issue, this is what the Court has to say about that.  I'm

25   going to rule on these five issues promptly, and I would

1 expect that Torrent would use the Court's rulings as an

2 indication of how it would rule on the other designations, and

3 I would expect Torrent to go back and to review its

4 designations in light of the new order, and to serve plaintiff

5 with an updated list of whether or not it's going to withdraw

6 or stand on its designations, and then after that list is

7 produced, we'll have to see if there's any left at all, how

8 many, et cetera, et cetera.

9        I believe it's appropriate for -- to deal with

10 documents, such as sealing and confidentiality in categories.

11 I can't remember the case right now, but I had another case

12 with Judge Kugler.  It was a business dispute where one side

13 or the other designated, I don't know, tens of thousands of

14 documents as confidential, and I asked the parties to

15 designate, I don't remember exactly the number, 30 or 50

16 representative documents.  I ruled on those documents and

17 ruled that the rulings apply to the entire pile of documents,

18 the tens of thousands of documents.

19        The losing party, I don't remember who it was,

20 appealed my decision to Judge Kugler.  Judge Kugler affirmed

21 my ruling and said it was appropriate to deal with

22 designations in a categorical fashion.

23        So I don't know what's going to happen down the road,

24 but my order is going to require Torrent to produce, within a

25 week, the in-camera documents by e-mail or fax with a

 1    supporting affidavit.  That affidavit should be produced to

 2    the plaintiffs.  If there's anything confidential in there, or

 3    top secret, so designate it or redact it, and then I'll rule

 4    and issue a scheduling order requiring Torrent to go back and

 5    prepare an updated list.

 6              So that's what the Court's inclined to do, counsel,

 7    that's what I'm going to do.

 8              Is there anything else you want to say about this

 9    Torrent confidentiality designation issue?

10              MR. SLATER:  Your Honor, it's Adam Slater.  Just to

11    let you know, and you probably saw it, that we did send you

12    the unredacted -- the version of the brief, but I understand

13    you want the affidavit with that.  So I just wanted to make

14    sure you saw that you did have those documents.

15              THE COURT:  Did you mail it, Mr. Slater?

16              MR. SLATER:  E-mail, last night.

17              THE COURT:  Let me double-check.  I definitely got

18    the letter.  Let me see if I got the documents.

19              MR. SLATER:  It's attached to the letter, Your Honor,

20    it's the version without -- with Exhibit A not withdrawn, it's

21    with all the exhibits there.

22              THE COURT:  Oh, is it Exhibit what, E?

23              MR. SLATER:  A.  It's Exhibit A, Your Honor.

24              THE COURT:  If that's the case, then I -- I printed

25    out, Mr. Slater -- wait a minute.  Let me double-check.  I

 1  think I printed out from PACER, let me just double-check, and

 2  if I don't have it, send it to me again.

 3          MR. SLATER:  The PACER version does not have the

 4  documents.  Only -- the only version that I sent you by e-mail

 5  has them.

 6          THE COURT:  Let me just double-check.

 7          Again, whoever is not talking, put your phone on mute

 8  because there's interference.

 9          One moment.  Okay, I have your letter.  Let me just

10  double-check.

11          Terrific, they are here, Mr. Slater, with the Bates

12  numbers.  So Torrent, all I need in a week is the affidavit

13  served by e-mail or fax with a copy to plaintiffs.

14          Anybody else want to be heard on that issue?  Okay,

15  great.

16          Let's go on to the next issue.  That is a meet and

17  confer on depositions -- I'm going from Mr. Slater's letter.

18  Counsel, I don't have anything to state to you on that.

19  You've had notice for the umpteenth time of the start date for

20  the depositions.

21          The last order the Court entered set the scheduling

22  deadline in the case.  I don't remember exactly what the

23  deadline for fact discovery is, but you're on notice that you

24  have X amount of time to take your fact depositions and the

25  longer you wait to start, the harder it's going to be to

1    finish them.

2          So I don't know what else I have to say about that.

3    Mr. Slater, anything to add?

4          MR. SLATER:  No, Your Honor, we'll -- if we have an

5    issue or any issues, I assume they'll be joined quite tightly

6    at the time that we speak to Your Honor in two weeks.

7          THE COURT:  Okay.  Defendants' document production

8    deficiency and document dump.  I read your letter, Mr. Slater.

9    Of course, I was disturbed by, if it's true, the percentage of

10   documents that were filed after November 6th.  This was

11   exactly what we talked about when we started the process.

12         I don't know what to say about it, except I believe I

13   confirmed in a Court order that if documents were produced

14   late, that you should have had earlier, you're not going to be

15   prejudiced.  That also would include if you get a document

16   dump and you don't have time to review them, I'm not saying

17   that's what happened, but I don't know what we can do about it

18   now.  It's disturbing, if it's true, but I don't know what to

19   say.

20         Mr. Slater, is there anything you want to add?

21         MR. SLATER:  You know, Judge, we're wading through

22   what we got, and I obviously understand that it's one of these

23   situations where, you know, okay, here we are.  We don't want

24   to shoot from the hip and ask for any sort of relief.  We're

25   obviously very frustrated.  I probably sounded like a paranoid

1    person because I kept bringing it up month after month.

2           Unfortunately, our concern was -- turned out to be

3    correct.  I think that we're going to have to see where we

4    stand as we go through these documents which we're still, you

5    know, reviewing, because it's obviously a lot.

6           One of our concerns is -- so certainly we'd like to

7    reserve our rights on that which I believe Your Honor said we

8    could, and we'll see what we have to do.

9           One of the things that we would like to know is, I

10   think the defendants need to say, are they done producing

11   documents or are there more substantial productions that are

12   going to suddenly happen.  I think we should all know that, at

13   least there should be a record made, and, you know, we're

14   going to do the best we can, but it certainly does prejudice

15   our ability to prepare.

16          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

17          THE COURT:  Let's hear from --

18          MR. GOLDBERG:  Yes, Your Honor, I don't want to -- I

19   didn't mean to interrupt you, but I do think it is worth

20   noting, you know, that I think this assertion of a document

21   dump was something that was always going to happen, and it

22   really wouldn't have mattered how many documents we produced

23   in November, they would have -- it would have been referred to

24   as a dump.

25          But I think to call it a dump is really, really

1   unfair to the defendant, given the extraordinary circumstances

2   in which we produced an incredible volume of information over

3   a seven-month period.  You're talking about ZHP, for example.

4   The collection of over seven terabytes of information which

5   corresponds to hundreds of millions of pages.  More than a

6   hundred document review attorneys reviewed that information.

7          The information was produced according to the

8   prioritization that plaintiffs set, such that most of the

9   prioritized information was produced before November.  There

10  is no question that each of the defendants satisfied the

11  Court's good faith standard for this rolling production.

12         The reality is, producing documents that are housed

13  worldwide during a global pandemic, contract attorneys

14  reviewing remotely takes a long time.  It takes a lot of time

15  and a lot of effort, and for ZHP's 100-plus contract

16  attorneys, you can multiply that for each of the manufacturing

17  defendants, who also had dozens, if not more than a hundred

18  attorneys each.

19         An extraordinary amount of work went into this

20  project.  No defendant did not exercise good faith.  They all

21  did.  They all made a complete effort to satisfy the Court's

22  expectations to produce all of the information they could

23  produce within the Court's very tight timeframe, given

24  120-some-odd document requests, 400 or more search terms, and

25  facilities around the world.  This really does go into the

1    category of no good deed goes unpunished.

2          So we think we had done exactly what the Court has

3    expected us to do, and we're looking forward to continuing to

4    work with plaintiffs on some of the issues they've raised as

5    to document productions.  And we'll get into depositions, but

6    there's no question that defendants satisfied their good faith

7    obligation.

8          THE COURT:  Mr. Slater has raised a question as to

9    whether the production is complete.

10          MR. GOLDBERG:  That, Your Honor, that's something I

11   think all of the defendants have to answer separately.  I

12   would have to discuss that with my colleagues, and I think all

13   of the defendants can discuss that and then if Your Honor

14   wants us to communicate with plaintiffs.  But I don't know

15   that we were --

16          THE COURT:  Well, let's hear from ZHP.  You can only

17   speak for ZHP.  Is ZHP's production done?

18          MR. GOLDBERG:  Your Honor, I don't know the answer to

19   that.  I'd have to coordinate or communicate with my

20   colleagues on that, you know, who are in the trenches in the

21   document production.  I can certainly let the Court know about

22   that.

23          THE COURT:  Well, you should let Mr. Slater know.

24          How about Teva, Ms. Cohen, is Teva done?

25          MS. LOCKARD:  Your Honor, Victoria Lockard, I can

1  address this.  We are in somewhat of a different situation

2  because of the Court's ruling on our TAR CAML motion and the

3  work that remains to be done on what -- the documents that are

4  predicted to be nonresponsive will be processed through a work

5  stream.  So there may be some that fall out --

6          (Cross talk.)

7          THE COURT:  This is Judge Schneider.  What I said

8  was, that Ms. Lockard was correct, that the, quote unquote,

9  nonresponsive documents are a different category, and I do not

10  think that's what Mr. Slater was referring to.

11          MS. LOCKARD:  Agreed, and we just needed to put that

12  out on the record as a reminder.  But aside from that, we're

13  substantially confused.  The only work that is still being

14  done is because we are obligated to produce our privilege log

15  within 30 days of this production.

16          We are doing our QC on the documents that were deemed

17  privileged by the first-line reviewers.  So to the extent

18  there are some documents that are deemed -- determined are not

19  privileged and should be produced, those may fall out as well.

20          But other than those two categories, we're

21  substantially complete.

22          MR. GOLDBERG:  Your Honor -- sorry, Your Honor, this

23  is Seth Goldberg.  Before you go on to the next defendant, I

24  do have information about ZHP and can confirm that other than

25  two custodians, plaintiffs are aware, we have no doubt with

1    them.  The perception beyond the deadline for those two

2    custodians, as well as spreadsheets that plaintiffs are aware

3    of, that we have an agreement on, and on the work on our

4    privilege log, the ZHP party productions are substantially

5    complete as well.

6          THE COURT:  Mr. Trischler, can you speak to Mylan?

7          MR. TRISCHLER:  Yes.  This is Clem Trischler.  Good

8    afternoon once again, Your Honor.  With respect to Mylan, the

9    Court may recall that there was an order entered approximately

10   in November that dealt with all our requests to cut off the

11   review using -- based on TAR, and we have been, you know, had

12   some ongoing meet and confers with the plaintiff in an attempt

13   to reach an agreement on that.

14         So as it relates to Mylan, we have a null set of

15   documents that we have not yet reviewed in the hope of

16   reaching an agreement with plaintiffs.  If we do not reach an

17   agreement with plaintiffs, then we would obviously need to

18   review that null set if so ordered.  So that issue is out

19   there and still pending with respect to my client.

20         Beyond that, we believe the review is substantially

21   complete, but our position is with respect to those documents

22   we have reviewed is similar to what Ms. Lockard outlined with

23   respect to Teva's, that is.  We are reviewing documents that

24   have been coded as privileged, and to the extent our secondary

25   review team determines that a document may have been

1 improperly coded as privileged, there may be additional

2 productions there.

3          The plaintiffs -- it's on the agenda but the

4 plaintiffs raised an issue with respect to withheld documents

5 that we are -- that we have committed to reviewing, to make

6 sure that we got it right.  We believe we did, but to the

7 extent we didn't, we're reviewing those documents in good

8 faith that they've raised concerned about, and so there will

9 be some QC review that we expect to take place over the next

10 30 days, but we're substantially complete except for the null

11 set.

12          THE COURT:  And if I remember right, again, counsel,

13 you can correct me if I'm wrong, I recall entering an order as

14 to Mylan as to what you call a null set similar to the order

15 that was entered with regard to Teva; is that right?

16          MR. TRISCHLER:  Yes, that's correct, Your Honor.

17          THE COURT:  Okay.

18          Aurobindo counsel, are you on the phone?

19          MS. HEINZ:  Yes, Your Honor, good afternoon.

20          THE COURT:  Could you speak to whether the document

21 production is complete?

22          MS. HEINZ:  Yes, I can, Your Honor.  We have

23 completed our review of the 15 custodians that we had for

24 Aurobindo, and it's my understanding that it is substantially

25 complete, and we haven't been made aware of any issues from

 1    the plaintiffs, that's not to say that none will be raised,

 2    but we're happy to work through anything that may come up.

 3            I don't anticipate anything, but at this time, we are

 4    -- we have finished our review and produced everything we

 5    have.

 6            THE COURT:  And how about Hetero, are they on the

 7    phone?

 8            MR. SHAH:  Yes, Your Honor, this is Nakul Shah on

 9    behalf of Hetero Drugs and Hetero Labs.  We have completed our

10    document -- yes, Your Honor, we have completed our document

11    production.  However, we did receive correspondence from

12    plaintiffs setting forth deficiencies in our production, so we

13    are investigating those issues that were raised by the

14    plaintiffs and we intend to continue to meet and confer with

15    the plaintiffs on these issues, but otherwise, we are complete

16    with our production.

17            THE COURT:  Mr. Slater, it sounds like you got the

18    answers you were looking for.  Was there anything else you

19    need with regard to this issue?

20            MR. SLATER:  I'm going to hand this off now to my

21    colleagues who can address the other issues that were raised

22    aside from the production schedule.

23            MS. HILTON:  Hi, Your Honor, good afternoon, Your

24    Honors, Layne Hilton on behalf of plaintiffs.  We raised the

25    issue of what we call improperly withheld documents.

1          And I think it's important to explain to the Court

2     what universe of documents we're talking about here.  These

3     are documents which are included as part of a document family

4     with other documents that were deemed responsive and relevant

5     and were produced either in full.  So, you know, in essence,

6     we're really talking about e-mails and their attachments, and,

7     you know, for these documents, we noted in our submission to

8     the Court that, you know, between Mylan, Teva, and ZHP, a

9     total of 145,000 documents which either consist of attachments

10    to e-mails or the e-mails themselves were withheld in their

11    entirety and not produced to us.

12         And I think appended, Exhibit B, you know, we

13    provided just a mere sampling of the documents which these

14    three defendants deemed were, you know, withheld on the basis

15    of nonresponsive or regarding, quote unquote, other products.

16    And we have, you know, very serious concerns that a

17    significant portion of these 145,000 documents are actually

18    documents that we were entitled to receive, because they are,

19    in fact, responsive and relevant to our document requests and,

20    you know, the defendants in their submission, you know, were

21    quick to point out that in the very, very small subsection of

22    examples we provided in our correspondence, you know, less

23    than a hundred of these documents, of which there are 145,000,

24    you know, that some number of them were actually produced in

25    other locations and with other custodial files, and it seemed

1    to be that they were implying that plaintiffs were under some

2    sort of affirmative obligation to go out and search for

3    additional duplicative versions of documents which were

4    withheld in the first instance.

5         And so, you know, essentially our issue here is one

6    of volume, you know, and timing.  Under normal circumstances,

7    we wouldn't have 145,000 inappropriately withheld attachments.

8    We would have something closer to 5,000, or 3,000 of which we

9    could go through and look at the metadata and look at the

10   surrounding e-mails and the other documents that were produced

11   as part of that document set, you know, to make a showing that

12   we were entitled to the documents that the defendants have

13   claimed are nonresponsive.

14        But because we are left with 145,000, I mean, it

15   becomes an almost impossible task.

16        In Exhibit B, we only included 400, and even

17   compiling that list, you know, took a tremendous amount of

18   time.  And moreover, you know, a lot of ZHP's improperly, as

19   we believe, withheld documents of the metadata is in Chinese.

20   And so we have to now pay document reviewers, Chinese language

21   document reviewers to review a document that we do not have to

22   make a determination if we need to ask for it and then go

23   through some sort of iterative process.

24        Now, you know, plaintiffs' solution to this problem,

25   you know, trying to keep the burden down on both parties, both

1    plaintiffs and defendants, was simply to ask that defendants

2    produce in full every withheld attachment to an e-mail.

3         You know, defendants are free to speak, you know,

4    their position on that, but, you know, what plaintiffs are

5    afraid, and what plaintiffs do not want to do is to have to go

6    through 145,000 entries and make some sort of affirmative

7    showing, and then, you know, have to negotiate with defendants

8    about why those documents should be produced, especially when

9    it's clear, you know, that many of the documents we identify

10   even in our small subsection of documents we raised with the

11   defendants were responsive and have been produced in other

12   locations.

13        THE COURT:  Can I ask counsel if you have met and

14   conferred with the defendants about this issue and if those

15   discussions have been exhausted?

16        MS. HILTON:  You know, I think we raised the issue

17   with defendants Mylan, ZHP more thoroughly.  We sort of

18   preliminarily raised the issue with defendant ZHP.  Our

19   concern is that we are going to run out of time prior to the

20   beginning of depositions.  Both Mylan and Teva responded to

21   our request to meet and confer on our list of documents, to

22   inform us that their review was, in fact, proper, and that,

23   you know, they provided us with duplicative Bates ranges for

24   documents, which were withheld, and then declared that they

25   were not going to do a wholesale production of all the

 1  withheld attachments.

 2        I think Mylan committed to reviewing the 44 documents

 3  we identified, but, of course, Mylan is the worst offender

 4  here, you know, they've withheld 76,000 documents which

 5  represent something like 33 percent of their total production.

 6        MR. TRISCHLER:  Your Honor, this is Clem Trischler.

 7  May I address this --

 8        THE COURT:  Sure.

 9        MR. TRISCHLER:  -- the Court's question and the last

10  question from Ms. Hilton?

11        THE COURT:  Sure.

12        MR. TRISCHLER:  Thank you.  Your Honor, to your last

13  question about whether the parties have exhausted the

14  meet-and-confer process with respect to this issue, I would

15  say no.  Plaintiffs raised the issue in a letter last week.

16  We investigated it on behalf of Mylan and responded indicating

17  that other than a few select examples, we believed the

18  documents were properly coded.

19        The part that was left out was that we also committed

20  to going back and reviewing the entire dataset that they

21  pointed out, and if there are additional responsive documents

22  that were improperly coded as withheld, because they involved

23  another product, then we'll produce them.

24        So the meet and confer has not been exhausted, but

25  it's important just to step back from that and understand what

1  this issue is really about, because I submit, Your Honor, that

2  it's the product of two things.

3        You know, Ms. Hilton complains about 145,000

4  documents that were cut by search terms that involved other

5  products.  Well, that's because the search terms were

6  incredibly broad, an issue that we've raised with the Court on

7  numerous occasions and tried through meet and confers to

8  reduce and we had some success but we still ended up with

9  search terms that were incredibly broad, particularly when

10  applied to a client like mine that makes 7,500 drug products

11  across the globe.

12        So you have the issue of overly broad search terms

13  coupled with what I would respectfully submit is an effort by

14  the plaintiff to overlook the macro discovery rulings that the

15  Court entered.

16        The parties agreed back in September of this year,

17  that a nonresponsive attachment to a relevant and responsive

18  family of documents did not need to be produced.  That was

19  agreed to by the parties in September, and that was because it

20  was entirely consistent with the macro discovery rulings from

21  the Court.

22        Your Honor entered a couple of key rulings in this

23  case, one of them being that discovery should be limited to

24  facilities that manufactured and sold Valsartan API, and that

25  discovery should be limited to Valsartan at this stage of the

1    litigation with the exception of pre-2018 testing reflecting

2    the presence of nitrosamine.

3          Those are some of the key discovery rulings that the

4    Court made and we've reviewed ESI consistent with those macro

5    discovery rulings.  And so what you have is a situation, by

6    way of example, Your Honor, where you might have an e-mail

7    that involves an analysis with specification testing for six

8    products, one of which is Valsartan.

9          So when that production is made, what we produced

10   behalf of Mylan and what I submit the other manufacturing

11   defendants likely did, was to produce that e-mail, produce the

12   specification review as it relates to Valsartan and withhold

13   the review of the other four or five products in that example,

14   because those other products are not relevant as determined by

15   the Court's core discovery rulings.

16         What the plaintiff wants to do now is to go back and

17   reargue that, I submit, and we're not willing to do that.  But

18   what we are willing to do, is to take a careful look at any

19   issue they raised with respect to the production and make sure

20   we got it right, and if we didn't get it right, then we'll

21   correct it, and we'll produce consistent with the discovery

22   rulings in this case.

23         But, you know, I've looked at this issue in the last

24   couple of days it's been raised, and the documents that have

25   been -- that have been marked nonresponsive and withheld on

1    behalf of Mylan relate to nitrosamine evaluations that were

2    ordered by regulatory authorities across the globe.

3         Your Honor, you know, when this -- when the

4    nitrosamine issue came to the forefront in 2018, regulatory

5    authorities across the globe began taking a harder look at

6    nitrosamines and began ordering risk assessments for all drug

7    products, not just sartans.

8         So when you have a product portfolio in the

9    thousands, there are going to be lots of documents that deal

10   with nitrosamine risk assessments post-2018 for other

11   products.  That's the nature of the documents that have been

12   withheld, that have been coded as involving other products and

13   have not been produced that the plaintiffs are now complaining

14   about been produced, and we're not going to agree to turn all

15   that over.  It would be incredibly burdensome to do so.

16        But what we will do, as I've said before, is we'll

17   take a careful look at the production, we'll make certain that

18   we got it right and where we haven't, we'll correct it.

19        MS. HILTON:  Your Honor, if I may.  Of course, we're

20   not asking Mylan to produce attachments related to, you know,

21   some sort of blood thinner, right?  If Your Honor reviews

22   Exhibit B attached to plaintiffs' letter, you will see the

23   first two pages, three pages, four pages, five pages, are all

24   attachments that were withheld on the basis of nonresponsive

25   other products that include and/or begin with the word,

1    "Valsartan."  So you know even by Mr. Trischler's own

2    description of the attachments, we have an issue, because we

3    have observed thousands, possibly tens of thousands of

4    attachments that relate specifically to Valsartan.

5            So that's the issue here, you know, and Mr. Trischler

6    said that, you know, we were under some sort of obligation to

7    raise these issues.

8            You know, plaintiffs' concern here is that with

9    145,000 entries, we are simply going to run out of time with

10   this process.  And so, you know, candidly, we're seeking the

11   Court's guidance on this because again, you know, as

12   defendants stated in their submission and as we stated in our

13   submission, the defendants have conceded that some of these

14   withheld attachments were produced elsewhere in the

15   production.  And so obviously, those documents that were

16   produced elsewhere were deemed responsive at one point in

17   time, so they should be produced with their proper family.

18   That's the first thing.

19           And the second thing is, that, you know, even looking

20   at the file means, you know, plaintiffs are not in the

21   position to decide whether duplicate copies have been attached

22   elsewhere or produced elsewhere.  So candidly, we're asking

23   for the Court to potentially provide some guidance on whether,

24   you know, defendants, Mylan, Teva, ZHP, should conduct a

25   holistic review of all of their withheld documents to ensure

1    that we are not in a situation where one document is withheld,

2    you know, as to one e-mail, but that same document has not

3    been withheld and has been produced in full in another e-mail.

4    So that's really the problem here.

5            We're, of course, not trying to relitigate the macro

6    discovery rulings.  We're simply trying to get the documents

7    which are clearly on the space of their file name, you know,

8    to the point that they say, Valsartan, responsive and relevant

9    for our document request.

10           THE COURT:  With regard to Mylan --

11           MR. GOLDBERG:  Your Honor.

12           THE COURT:  Hold on one moment, counsel.

13           With regard to Mylan, who we're talking about now,

14   Ms. Hilton, isn't the case that you're still in the midst of

15   your meet-and-confer obligations?  That counsel for Mylan said

16   they're going to go back, look at your letter and see if they

17   got it right.

18           If there are certain documents regarding Valsartan

19   that you specifically identify, you can assume Mylan's going

20   to look at those and get back to you.

21           So what else can the Court do with regard to Mylan,

22   who we're talking about right now, except wait for you to talk

23   about this issue in further detail, and in my words, sharpen

24   the pencil so there could be a specific issue before the Court

25   regarding what to do.

 1        And you know as well as I do, we've been through this

 2   a hundred times in this case.  We'll address any discovery

 3   issue, but first, the parties have to exhaust their

 4   meet-and-confer obligations, which it sounds like, at least

 5   with regard to Mylan, hasn't happened yet.

 6        What say you?

 7        MS. HILTON:  Your Honor, we're happy to meet and

 8   confer with Mylan.  Again, our concern and the impetus for our

 9   raising this with the Court is one of timing.  We are in the

10   process of getting ready to negotiate specifically with Mylan,

11   dates for depositions, and so, you know, part of, you know,

12   our hopes, which is sort of short circuit the process in which

13   we had to continually feed Mylan with tens of thousands of

14   their documents and ask them to conduct a review, you know,

15   when perhaps they could, rather than wait for us to

16   specifically identify Bates ranges, could proactively engage

17   in a wholesale re-review of their withheld documents on their

18   end, you know, short of the ones that we have sort of

19   identified.

20        Because, like I said, we've only identified in the

21   submission of Exhibit B, we've identified about 400 documents.

22   To compile that list alone took several hours.  So to go

23   through 150,000 of these entries, it's going to be a very

24   time-consuming process, and quite frankly, if Mylan would

25   commit to re-reviewing all of their withheld attachments, that

1   might short circuit the process and sort of allow us to focus

2   our efforts in preparing for our depositions, which are

3   imminent.

4         THE COURT:  You want Mylan to look through 145,000

5   documents?

6         MS. HILTON:  Well, Your Honor, if that's going to,

7   you know, be the sort of functional equivalent -- if at some

8   point we sort of arrived at a more manageable number of

9   withheld documents, we would be able to engage in this

10  iterative meet-and-confer process, but, you know, our concerns

11  are, because so many of Mylan documents appear to be about

12  Valsartan that were withheld, it may be time-consuming to do

13  so.

14        THE COURT:  Let's put this Mylan issue to bed,

15  because we've got a lot of other issues to discuss.

16        I don't think the Court is going to address any issue

17  with regard to Mylan until the parties exhaust their meet and

18  confer.  You've identified for Mylan the issues of

19  representative documents that are particularly important.

20  Let's see what happens when you discuss.

21        Counsel has asserted in good faith that they're going

22  to go back and see if they missed anything.  So let that

23  happen, meet and confer with Mylan, try and figure out a way

24  that you can tee up an issue that has to be decided by the

25  Court, instead of saying, here it is, Judge, you tell us what

1    to do.

2           I don't really have a good sense of the issue from

3    your letter, and especially when the parties haven't exhausted

4    their meet and confer.

5           One thing you can take to the bank is, the Court's

6    not going to require plaintiff to go through 145,000

7    documents.  The Court's not going to require Mylan to look

8    through 145,000 documents.

9           So if the issue has to be teed up, you have to figure

10   out a way to get representative examples and categories so the

11   Court can get their arms around this issue.

12          So that's -- if we're doing that with Mylan, I think

13   you should do that with everybody.  If the plaintiffs have

14   issues with the defendants -- I want to -- I'm going to wait

15   for the day that you could represent to the Court that those

16   discussions have been exhausted.  I haven't heard that yet.

17          Remember also, plaintiffs, and this goes for both

18   sides, plaintiffs and defendants, it's in an order, you won't

19   be prejudiced if a document is produced after a deposition

20   that you should have had before.  In a case of this complexity

21   and size, you cannot wait until every last piece of paper is

22   produced to start to take depositions.

23          You have to start somewhere, especially since you

24   have a pretty tight deadline to get everything done.  So the

25   longer you wait, not you, the parties wait, the harder it's

1    going to be to meet that deadline, and I don't think it's

2    going to be extended.

3              So go with what you got, you know, do your due

4    diligence on this document production issue.  The Court's

5    going to address it when it's ripe for decision, but it's not

6    ripe for any resolution at the present time.

7              Let's go to the next issue, that was improperly

8    withheld e-mails and attachments.

9              Now we're on Page 13, use of personal e-mail

10   addresses for business communications.

11             Who's going to speak to that?

12             MS. HILTON:  Your Honor, it's Layne Hilton again on

13   behalf of plaintiffs.  I think there wasn't any specific

14   issue.  We were just informing the Court that we had

15   identified such an issue with ZHP's productions in our -- in

16   conjunction with our review of Mr. John Du's custodial file

17   and the parties have set a meet and confer on the subject for

18   tomorrow.

19             THE COURT:  Okay.  That's good.  Well, it's pretty

20   clear that relevant documents -- relevant and responsive

21   documents have to be produced, no matter what e-mail they are

22   associated with, and I don't think there's much argument about

23   that, and it's good to see the meeting and conferring with ZHP

24   about that.

25             Next issue is the Losartan Master Complaint.  I don't

 1  know if there's anything to say about that.

 2          MS. GOLDENBERG:  Your Honor, this is Marlene

 3  Goldenberg for the plaintiffs.  I agree with you, there isn't

 4  too much to say on that, aside from the fact that I think we

 5  are going to meet our own self-imposed deadline and then file

 6  these complaints sooner than we said.  But otherwise, unless

 7  you have any questions, that's all I have to add.

 8          THE COURT:  No, I don't.  But I think in the usual

 9  course if you proposed a short-form complaint in the past,

10  haven't we run that by defendants to see if there could be a

11  consensus, and then if there are disputes, to submit it to the

12  Court?

13          MS. GOLDENBERG:  I believe that that was the

14  procedure last time, yeah.

15          THE COURT:  Is there any reason we shouldn't do that

16  here?  I mean, I think it would be counterproductive if

17  plaintiffs start to use a short-form complaint that has not

18  been blessed by the Court, and it turns out down the road,

19  that there's issues and problems with it.

20          So why don't you follow the same procedure that we

21  followed for Valsartan, and are you leaving Irbesartan -- I

22  don't know how to pronounce it -- Irbesartan out?  Is that

23  going to be an orphan?

24          MS. GOLDENBERG:  No, Irbesartan is going to be

25  included as well, and there are going to be a few defendants,

```
 1   though not many, that are different.  But given, you know, as
 2   we stated in our letter, the fact that there's going to be a
 3   fair amount of overlap in many of the cases that are filed,
 4   and given the joinder rules, it doesn't really make sense to
 5   put them on separate short-form Complaints, so our hope is
 6   that they would, you know, it would be an amended short-form
 7   complaint, very similar to the one that we have now, just with
 8   some added defendants.
 9        THE COURT:  Okay.  Are these going to be new
10   defendants in the case?
11        MS. GOLDENBERG:  There are a few defendants that made
12   Losartan and Irbesartan who didn't make Valsartan.  Most of
13   them are common, but there will be a few that are new.
14        THE COURT:  Okay.  I'm sorry, I'm a little confused.
15   Are you proposing to do a combined long-form Complaint for the
16   two new sartans, or just Losartan?
17        MS. GOLDENBERG:  I apologize if that wasn't clear.
18   We can do it however Your Honor wants.  Our plan was to file
19   separate long-form Complaints for Losartan and for Irbesartan
20   separately, and in the categories that we've already
21   designated, so one for personal injury and I think we had
22   split it up, consumer class and medical monitoring.
23        So we would have three, three of those for Losartan
24   and three for Irbesartan, and then the short-form complaint
25   would be a combined one for Valsartan, Losartan and Irbesartan
```

1    for the personal injury plaintiffs.

2            THE COURT:  Have you run that by Mr. Goldberg?

3            Go ahead, Mr. Goldberg.

4            MR. GOLDBERG:  Your Honor, we haven't had any

5    discussion with plaintiffs about this, and would like to

6    discuss it with them and also wanted to raise with the Court

7    and remind the Court, there is a comprehensive Rule 12 motion

8    pending as to the Valsartan Master Complaint, and defendants

9    would suggest that any Master Complaint as to Losartan and

10   Irbesartan not be filed until the Court has ruled on that

11   Rule 12 motion, so that we are not going through an exercise

12   of backing out of those complaints, claims, or issues that

13   have been resolved.

14           MS. GOLDENBERG:  Your Honor, I think just in response

15   to that, if the Court's order came out at some later time and

16   we found out there was a pleading deficiency, we would be

17   happy to amend our Complaints at that time.  But in fairness

18   to the plaintiffs that are involved in this MDL and the fact

19   that the JPML says that we're supposed to be pursuing these

20   claims, I would prefer not to hold off on filing long-form

21   complaints at this point.

22           THE COURT:  Ms. Goldenberg, might it also affect the

23   statute of limitations?

24           MS. GOLDENBERG:  It would, yes, potentially.

25           THE COURT:  So, Mr. Goldberg, if the Court enters an

1    order barring new other sartan complaints, I would have a

2    concern that it could prejudice those parties because the

3    limitations might run in that time period if the plaintiffs --

4    I don't know where -- we should discuss when they plan on

5    doing that, because I'm not going to be surprised if you get a

6    ruling on your motions before the end of the month.

7          So that's only, what, two or three weeks.  I can't

8    guarantee it.  I have no personal knowledge, but I wouldn't be

9    surprised if that happened.

10         That being so, if plaintiff is going to wait until

11   January 31st to do this, and I think it makes sense to touch

12   base with the defendants about what they plan to do before, we

13   might not have an issue.

14         MS. GOLDENBERG:  Your Honor, in looking back at the

15   dates of the recall, there was a Torrent recall on

16   December 20th of 2018, and in light of that, and I apologize,

17   I looked at that after putting the 10th of January in our

18   agenda letter, you know, I think for the sake of preserving

19   our client's rights, our plan is to get these complaints on

20   file on or before the 20th.

21         THE COURT:  Well, I'm not going to bar you from doing

22   that, because I can't prejudice the plaintiffs' limitations

23   issue.  I'm confident that if the Court's rulings -- I don't

24   know how Judge Kugler is going to rule, obviously, but if the

25   Court's rulings impact the complaints filed for Losartan and

1   the other sartan, it's not going to be a big deal to amend

2   those complaints by stipulation or Court order.

3           So I would hope -- I mean, if we lived in a perfect

4   world, it would be good to run these by defendants, but we

5   don't live in a perfect world.  But at least with regard to

6   the short-form complaint, those shouldn't be filed with regard

7   to Losartan and the other sartan until the Court approves

8   them.  Right, Ms. Goldenberg?

9           MS. GOLDENBERG:  Yes, Your Honor, that makes sense

10  and we'll be happy to run that past the defendants.

11          THE COURT:  Yes, I don't think I can stop you from

12  filing a Complaint, because I don't want to prejudice the

13  limitations issue.  So do what you have to do, but at least

14  with regard to a short-form complaint, that shouldn't be filed

15  until you get Court approval.

16          MS. GOLDENBERG:  No problem.  And as I said earlier,

17  I don't anticipate there being any issues.  We're not planning

18  on making big changes to that.

19          THE COURT:  Mr. Goldberg, did we cut you off?  Did

20  you want to say something?

21          MR. GOLDBERG:  No, Your Honor, I did not.

22          THE COURT:  Okay.  All right.  Are we done with the

23  Losartan Master Complaint?

24          So No. 5 issue for Mr. Slater is wholesaler discovery

25  update.  Is there anything to discuss?

```
 1          MR. STANOCH:  Your Honor, David Stanoch for
 2   plaintiffs.  No, I think the parties are still in the
 3   meet-and-confer process.  We had a call after Thanksgiving
 4   with them, and it's our expectation that if we don't resolve
 5   any issues, we'll have them teed up for Your Honor at the
 6   conference in two weeks.
 7          THE COURT:  Okay.
 8          MR. GEOPPINGER:  Your Honor, Jeff Geoppinger for
 9   wholesalers and AmerisourceBergen.  We did meet and confer.
10   The plaintiffs raised some issues about documents that they
11   think should have been produced.  The wholesaler defendants
12   had a different view of things, but we will work those out.
13          I did want to mention for the Court or just bring to
14   the Court's attention that last night, the wholesalers as well
15   as the retailers received new sets of requests for production
16   and deposition -- Rule 36 deposition notices, draft sets of
17   requests for production, and draft Rule 30(b)(6) notices to
18   the downstream defendants, and Mr. Stanoch's correspondence
19   that the parties will meet and confer next week, and then tee
20   issues up on those matters for the next conference.
21          The downstream defendants, I can tell you have
22   serious concerns about the propriety of those requests at this
23   point in time, they're certainly willing to meet and confer
24   about that.
25          However, the -- getting these issues resolved with
```

1  respect to objections, a whole new set of requests for

2  production, as well as 30(b)(6) notices, and what I count is

3  being eight business days at the end of the year, I think is

4  rather unrealistic and unreasonable, and quite frankly, not --

5  doesn't comport with any kind of timeframe that the Federal

6  Rules will provide a defendant with responding to this

7  discovery.

8          So I just wanted to note that for the Court that

9  those things are out there.  We're willing to discuss the

10 propriety of them, and that may be on the agenda next

11 conference.  But the idea that these should be resolved in

12 eight days, eight business days, is something that the

13 defendants -- downstream defendants don't anticipate that's

14 something that can be done.

15         MR. STANOCH:  Your Honor, David Stanoch.  Can I just

16 reply very quickly?

17         THE COURT:  Sure.

18         MR. STANOCH:  Just to give you Your Honor color, it

19 was our implicit belief, Your Honor, up until very recently

20 with the scheduling order, that everyone's understanding was

21 discovery of the retailers and wholesalers was tracking

22 slightly behind that of the manufacturers.

23         However, we now have a scheduling order in this case

24 of all fact discovery by April 1, which for better or worse,

25 required us to follow up with additional necessary deposition

1    and a few follow-up document discovery of these parties.

2          Your Honor will recall the first round of document

3    requests for these parties, we propounded December of last

4    year, and they weren't resolved or entered by the Court until

5    July, so even with COVID issues, we were very concerned that

6    any delay in starting the process could be prejudicial to us.

7          So just so Your Honor knows, we're not trying to

8    surprise or sandbag anyone, it's just -- in the last couple

9    weeks, since the last order came down, we now have an April 1

10   deadline and we need to get done everything we need to for

11   that deadline.  That's all I wanted to add, Your Honor.

12         THE COURT:  Well, I thank defense counsel for at

13   least putting that issue on the radar screen, and we'll see

14   what the letters say for the next conference.

15         MR. SLATER:  Your Honor --

16         THE COURT:  Sure.

17         MR. SLATER:  Just on the same topic, I can say for

18   the wholesalers at least, we don't necessarily disagree with

19   how we envisioned the discovery and the deadlines and how

20   things would have played out with respect to the downstream

21   defendants and sort of trailing behind the other defendants.

22   But some of those global concerns I referenced have to do with

23   the Rule 12 motions that are pending and having to do with

24   significant other discovery while, you know, they have yet

25   been decided.

1          So the information that those rulings may be

2    forthcoming may help expedite getting these requests and

3    deposition notices resolved, if we have some direction from

4    the Court on the claims.

5          THE COURT:  You understand, counsel, and I've said

6    this many times, I would not be surprised if you get your

7    ruling before the end of the year, but obviously, I have

8    nothing to do with that.  I don't know what the rulings are

9    going to be.  I don't know what the status of those orders

10   are, what they will be.

11         So I just told you in good faith what my -- what I

12   believe and we'll see what happens.  We'll deal with it.

13         The next issue is the state court litigation.

14         Is there anything to address, Mr. Slater, about it?

15         MR. SLATER:  No, Your Honor, that's -- we got the

16   information sent to us finally, so there's nothing for Your

17   Honor to address.

18         THE COURT:  Terrific.  Mr. Goldberg, I have your

19   letter.  Why don't we address the issues in your letter, many

20   of which we've already addressed, but it looks like there

21   might be some new issues.

22         MR. GOLDBERG:  Your Honor, just walking through the

23   letter that defendants submitted, plaintiffs had withdrawn

24   their objections as to the Chinese defendants.  So we will

25   submit a agreed-upon version for the Court to order tomorrow.

```
 1              THE COURT:  Terrific.

 2              MR. SLATER:  Then just with one caveat, there is one

 3     phrase that's being added.  I just want to make sure that's

 4     clear.

 5              MR. GOLDBERG:  Yep.  We'll add that phrase.  I don't

 6     know, I suspect that that would -- that would carry over for

 7     the Indian agenda.

 8              MR. SLATER:  I can address that.  Your Honor, the

 9     Indian addendum was send to us yesterday about 3:30, to be

10     honest with you, we haven't had a chance to get through it in

11     that time period.  We started looking.  It's not identical, so

12     we need a few more days to be able to get back.

13              We should be able to get back to them by tomorrow,

14     whenever your -- if you can give us a few more days so that

15     the defense can then decide if they want to accept or submit

16     any issues, but we just haven't had a chance between, you

17     know, yesterday afternoon and today to get that completed.

18              THE COURT:  You got it.  You have the time.

19              MR. SLATER:  Thank you.

20              MR. GOLDBERG:  I think that would be the same for the

21     Israeli addendum as well, Your Honor, just so we have clarity

22     on the record.

23              THE COURT:  Okay.

24              MR. GOLDBERG:  You'll see on Page 2 of our letter,

25     we've identified a few issues Your Honor may recall at the
```

1    last case management conference.  The Court suggested that we

2    tee up a few of the legal issues that are -- that need to be

3    resolved with respect to the depositions.

4         We've identified a few of those issues for briefing

5    for the next case management conference.

6         Under length of 30(b)(6) deposition, the

7    applicability of the Chinese State Secret and privacy laws and

8    the applicability of The Hague Evidence Convention are the

9    issues that we've identified to date that we'll agree to.

10        THE COURT:  Yeah.  I have a question about that,

11   Mr. Goldberg.  I thought the order provided that there was

12   going to be a motion filed by December 31st as to the legal

13   issues.  Issues No. 1 and No. 2, I don't think are legal

14   issues, and I think we can address those issues on letter

15   briefs, simultaneous letter briefs from either side, but with

16   regard to the applicability of the State Secret and privacy

17   laws and The Hague Convention, you tell me, won't it involve

18   some sophisticated analysis of applicable case law?  It's not

19   the type of discretionary discovery issues that we handle on

20   these phone calls.  Tell me if I'm wrong.

21        MR. GOLDBERG:  No, Your Honor, you are not wrong, and

22   it is a very complex issue, and, you know, in a way, as is the

23   deposition testimony, the issue is not -- it's not ripe in a

24   way, and it is ripe in a way.  One of the important issues is

25   that we, the ZHP parties, be able to have a lawyer -- could I

1    remind everybody to put their phones on mute, if you're not

2    speaking, because it is -- we're getting some more feedback.

3          This issue is coming up because plaintiffs have

4    objected to the ZHP parties having a Chinese lawyer attend the

5    depositions for the purpose of being able to advise a witness

6    not to answer a question that may reveal trade secret

7    testimony.

8          In the normal course, this issue would arise, you

9    know, at or after a deposition where a -- where a -- where a

10   witness has asserted that privilege, and then the Court needs

11   to determine whether or not the privilege was properly

12   asserted.

13         So in a way, we're advancing the issue by having it

14   resolved before the testimony simply so that plaintiffs -- I'm

15   sorry, the ZHP parties can have a lawyer present at the

16   depositions who can assert that objection on behalf of a

17   witness if necessary.

18         We -- if Your Honor believes briefing on the issue is

19   necessary before the depositions, so that we can have that

20   lawyer available, obviously, we'll have to do that.  We think

21   it's a complex issue.  We agree that if it's a motion for a

22   protective order or something like that, by the end of the

23   year, I do think it's important to note that we, the ZHP

24   parties have proposed a complete deposition schedule for the

25   depositions of the U.S. and Chinese witnesses, and under the

1  schedule we've proposed, the Chinese witnesses won't be

2  deposed until -- at the earliest, sometime in March, obviously

3  subject to COVID, and that's at Exhibit B of our letter.  Your

4  Honor can see the entire schedule that we proposed.

5         So the issue, at least with respect to the deposition

6  testimony may not be as urgent, so long as, you know, so long

7  as -- and really don't think that plaintiffs would have such a

8  strenuous objection to a lawyer being present who can assert

9  the objection and then the Court can resolve it at that time.

10        THE COURT:  Well, I'm looking for the Court order

11  where we -- I hope I'm not wrong, but I thought there was

12  something in the order about obviously -- okay, November 24th,

13  let me take a look at that.

14        Let's see.  Case Management Order No. 22.  Let me see

15  what it says.  Hold on.

16        Okay.  "By December 23rd, defendants are granted

17  leave to file a motion to compel protective order regarding

18  all deposition issues not resolved by that date."

19        I think these Issues No. 3 and 4, Mr. Goldberg, I

20  think are appropriate for complete briefing, and I would --

21  there might be other issues that come up before December 23rd,

22  but I would think the Court really wants a complete record on

23  this state secrecy issue.  It's not something the Court sees

24  every day and it has important implications for the case.

25        But with regard to the first two issues, I would ask

1    the parties to submit whatever they want to say about the

2    issue in the letters for the December 23rd conference, and

3    we'll decide it on December 23rd.  They're not complicated

4    legal issues that we need complete briefing on.  I don't think

5    they're legal issues at all.

6         MR. GOLDBERG:  Agreed, Your Honor, and I think we

7    included those, Your Honor, just because of the language in

8    the order, about all deposition issues not resolved, because

9    we think those do need to be resolved.

10        On the issue of the state secrecy issue, the attorney

11   state secret laws, is Your Honor suggesting that we can file a

12   brief at some point in time, but not -- not necessarily

13   December 23rd?

14        THE COURT:  Is it impractical for you to do it by

15   December 23rd?

16        MR. GOLDBERG:  It is, Your Honor, because I do think

17   this is the kind of briefing that could, depending on how you

18   approach it, require an affidavit, or would be supported by an

19   affidavit on the state secret issues, and given that there

20   won't be testimony on these by Chinese witnesses until March,

21   we can take time -- we could use -- we would use additional

22   time and brief this, say, mid-January.  But really, the issue

23   is really whether, whether an objection could be made at a

24   deposition on -- on the grounds that there's a state secret,

25   much like a privilege issue.

```
 1          THE COURT:  But, you know, Mr. Goldberg, let me just

 2   jump in.  I think if the objection is asserted by an American

 3   attorney who's barred in New Jersey and is admitted to

 4   practice in the Federal District Court, I don't think there's

 5   a problem.  They're entitled to assert those objections.  I

 6   think the issue is whether a non-U.S. attorney who is not

 7   admitted to the bar here, could sit in on a deposition and

 8   make objections, right?

 9          Mr. Slater, isn't that the objection?

10          MR. SLATER:  It's one of many, Your Honor.  I mean,

11   I've sat here quietly during this, and I won't start to talk

12   until Your Honor opens the corral door, but I have a lot of

13   issues with what I just heard.

14          THE COURT:  Yes.  So let me ask you this, Mr. Slater.

15   In terms of scheduling, include in your letter briefs for the

16   December 23rd conference, the number of fact depositions and

17   the length of 30(b)(6) depositions.  That's not a heavy lift.

18          MR. SLATER:  Well, it is and it isn't, and I'll tell

19   you -- I can explain to you what those issues actually mean,

20   and frankly, I think that they're -- I'm just going to lay it

21   out.  I think lead counsel for the defense is raising an issue

22   that they may want to push, and I don't even think it's a

23   problem with the other defendants, and it's basically going to

24   create a massive distraction from what we're supposed to be

25   doing here.
```

1          I mean, this comes back to the document dump from

2   earlier in this conference.  There's a pattern here where the

3   defendants, I'm just going to lay it out, feel like they can

4   pretty much do whatever they feel like doing and there are no

5   consequences.  And what that entire plan is designed to do is

6   to jam the plaintiffs up so badly that we can't actually do

7   our jobs in a reasonable fashion.

8          First of all, we get 70 to 85 percent of the

9   documents, depending on which defendant we're talking about in

10  the last month, which they represented to Your Honor month

11  after month would not happen.  Those were representations on

12  the record to a federal judge and those representations turned

13  out not to be accurate, No. 1.

14         No. 2, Mr. Goldberg is sitting here with indignation

15  over things that we're asking for after they gave us 80

16  percent of their documents or something in the last month, and

17  now calmly tells Your Honor, the plaintiffs won't be deposing

18  any of the witnesses from China until March, perhaps the

19  middle or end of March or whenever it is the dates they gave

20  us?  That's shortly before our expert reports are due, at the

21  end of the time to take depositions.  So they're basically

22  saying all of the most important witnesses against ZHP because

23  every one of their 30(b)(6) deposition designees are coming

24  from China and going to Hong Kong.

25         We asked, for example, yesterday, when we got their

1    list yesterday, by the way, for the first time, and they --

2    they're asking Your Honor in a letter to enter an order that

3    that list is confirmed with those dates, the day after they

4    sent it to us.

5         I mean, that's what we're dealing with here, Judge.

6    So I'm asking you to take a step back and see what's

7    happening.  We don't agree to those dates, we haven't agreed

8    to anything, we don't know that that's reasonable.  I mean, we

9    asked, what about John Du, who you are producing in the United

10   States in New Jersey.  Can he be designated on any topic?  No,

11   he can't be, even though he attended the key FDA inspections

12   in China.  No, he can't be designated on anything.

13        So what's happening here, and I'm laying it out like

14   I did in the past, when the defendants kept saying that I'm

15   full of it and I'm paranoid, and it turns out I was a hundred

16   percent right.  The same thing is happening here, and frankly,

17   you said to me earlier in this conference, well, what am I

18   supposed to do about this?

19        Because frankly, Your Honor, for these defendants to

20   have brazenly tell you for months that they weren't going to

21   dump the documents and then do it and then put you in that

22   situation, is unfair and it's inappropriate.

23        I think here's what you do.  You can't take anything

24   they say to you, when they make these types of pronouncements

25   to you at face value any longer.  That's, I think, No. 1 what

1    should happen as a result of what's happened here.

2         The idea that, and I'll get into the specifics now.

3    The number of fact depositions.  Nobody has had a dispute over

4    it yet.  Literally, we gave our prioritized list of deponents

5    to defendants, despite your Court order that fulsome

6    discussions would be completed by December 8.  Some of them --

7    most of them won't even tell us any names.  Only ZHP yesterday

8    gave us names of 30(b)(6) deponents.  Nobody else has given us

9    one name.

10        So we don't know who the 30(b)(6) deponents are or

11   what topics they're covering, where they're going to be

12   deposed and the logistics, which we hope we can work through.

13        Then we talked about the length of the depositions.

14   On the call yesterday, I said, well, have you given thought,

15   Mr. Goldberg, to -- if you're going to, for example, have a

16   witness designated on several topics and they're massive

17   topics, like testing, where hundreds of chromatograms were

18   performed and the documents were all in Chinese, have you

19   given thought to how many different units of deposition time

20   will be needed for those topics.  And what we basically got

21   was, well, I guess we rarely thought about that.  You have

22   seven hours and do the best you can.

23        That's what we're dealing with.  So we're trying to

24   resume meet and confers.  And some of the defendants, we spoke

25   to Torrent yesterday said, you know, good point, we'll talk to

 1    you about it.  But we don't have any names yet.

 2         So we don't need to start litigating the number of

 3    depositions because now what we're going to have to do is do

 4    all sorts of research.  Do we get -- because now -- if we have

 5    to get a number, we are going to have to ask for the most --

 6    the bigger number than we think we need, because they're going

 7    to ask -- they're going to offer us ten people and we're going

 8    to have a fight over something that may never be a dispute,

 9    because we're trying to work through a very limited number of

10    people right now.

11         In terms of the length, we have to negotiate this.

12    We have to start to talk about it.  It may not be an issue.

13    My guess is, if the defendants would stop sitting in the same

14    room and making these decisions together, that some of them

15    would be very reasonable and some would probably have to come

16    before Your Honor and we'd have to litigate the issue.

17         But because they -- this keeps happening where we

18    think we're working things out, and then all of a sudden, we

19    start getting positions that are coming out of central

20    command, we can't make agreements with separate defendants.

21         Now, I guess they can do what they want.  But this

22    gotcha process of pushing the documents to the end, pushing

23    the witnesses to the end, asking Your Honor to order that

24    schedule the day after we saw it for the first time, when most

25    of the defendants haven't given us the name of one 30(b)(6)

1   deponent, et cetera.

2         I'm just asking Your Honor to take a step back and

3   say, you need to all negotiate in good faith, defendant by

4   defendant, and we need to work this out.  And again, if

5   there's an issue with a particular defendant on a particular

6   request for depositions, then I think, Your Honor, it should

7   be presented to you.

8         I'm sorry to go on this long, but I have been

9   listening quietly to a lot and it's been somewhat frustrating

10  and I think we need to reorient where we stand at this point.

11        THE COURT:  I take it your position then is that it's

12  premature to tee up for decision the number and amount of

13  depositions.

14        MR. SLATER:  Yes, Your Honor, and I did not answer

15  your other question.  I apologize.  The question about The

16  Hague and the Chinese laws and a lawyer from China standing in

17  the deposition.

18        To be very clear, we object to a lawyer who's not

19  subject to the discipline of this Court and this bar

20  participating in these depositions.  And frankly, we think

21  that the state secret issue in China should be dealt with very

22  soon, because they had a burden.  We've given Your Honor the

23  law in our last brief before the last major conference.

24        It's virtually certain there aren't going to be any

25  state secret issues that will be legitimate.  And when we

1  asked defense counsel, well, what issues do you see as

2  potentially coming up in the context of this case, so we can

3  at least understand how you think it applies.

4        The answer was, we don't really think it's going to

5  come up, but we're preserving our right.  We said, well, have

6  you held back even one document in this entire litigation,

7  based on state secret?  The answer was, we haven't served our

8  privilege log yet, we can't point to any documents, but we'll

9  see.

10        So I don't think that there's any legitimate state

11  secret issue here, and if they think there is one, we

12  certainly do need to know that.  And if counsel said we can't

13  get an affidavit from a witness, this is their issue.  We

14  don't want to be in a situation where the depositions are

15  disrupted by a China state secret defense that we don't

16  believe will apply.

17        MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

18        On the state secret issue, so that we can just stay

19  focused on that, we don't think it's going to be a significant

20  issue.  We did inform the Court at the last hearing when this

21  came up, that we think there are four very narrow categories

22  of potential state secret that could possibly be applicable in

23  this case, that we have withheld certain documents on that

24  basis, and we'll be producing a lot for those as required as

25  the Court indicated should happen way back in November of

1    2019.

2         And that's why we propose that if not the -- this

3    issue is premature, and, you know, if the issue is having a

4    lawyer who is -- who can be admitted to be practicing in this

5    Court -- and remember, this is an MDL, so any lawyer admitted

6    in the District Court is admitted to the MDL who can assert

7    that objection, if we can satisfy that obligation.  And so

8    really, the issue may be so premature that we don't need to

9    brief it unless and until the objection is asserted during one

10   of the depositions, and if the parties can't work it out at

11   that time.

12        THE COURT:  Mr. Goldberg, you may be right, but if

13   you're going to request the presence of a non-New Jersey

14   attorney or nonadmitted attorney to assert objections at a

15   deposition, that becomes an issue the Court has to decide.

16        If you're at the deposition and you assert the

17   objection, it's no different than any other privilege

18   objection, right?  So --

19        MR. GOLDBERG:  This is Seth Goldberg.  I was just

20   saying to Your Honor that that may solve the problem, because

21   this may -- this may ultimately have been an issue that

22   resulted from poor wording in drafting the Chinese addendum.

23   We're less concerned about having a Chinese lawyer present.

24   We have lawyers who can assert the objection and properly do

25   so, that are properly before the Court.  So we can do that and

1    if it becomes an issue during the depositions, we can raise it

2    with the Court then.

3         THE COURT:  I would assume -- I haven't looked at it

4    for this specific issue, but I would assume that your protocol

5    says something about, there's only going to be one person

6    who's defending the witness and only that person can assert

7    objections, but you're not going to have a chorus line of

8    attorneys there asserting objections.  Am I wrong about that,

9    Mr. Goldberg?

10        MR. GOLDBERG:  Well, we had -- I think we had wording

11   and the reason this issue has become an issue is because we

12   had worded it as having a Chinese lawyer present.  And I think

13   we can work this out, because as Your Honor said, there would

14   be nothing prohibiting me from asserting that objection, and

15   so long as -- and there's nothing prohibiting other lawyers

16   from attending the deposition.

17        So I think maybe this has become an issue that has

18   resolved itself at least for the time being, and we can take

19   that language out of the addendum.  What we needed, though, is

20   we need -- what is most important, that we have preserved the

21   issue that we can assert the objections just like a privilege

22   objection, and if rises to the level of an issue for the

23   Court, you can raise it then.

24        MR. SLATER:  Your Honor, it's Adam Slater.  Go ahead,

25   I'm sorry, Your Honor.

1        I was just going to say -- I just believe -- we

2   believe strongly that this issue needs to be raised in advance

3   so that the ground rules are set before.  If ZHP thinks that

4   there are areas that fall within this doctrine, they should

5   declare them, they should potentially litigate any documents

6   that they decide to hold back, although we're not aware of

7   anything held back, and set the ground rules.

8        Otherwise, what's going to happen is, we're going to

9   have witnesses being deposed in Hong Kong, they're going to

10  raise the issue, and it's going to result in heavy briefing

11  and it's going to take time to resolve and then we're going to

12  hear from ZHP, we don't want to bring this witness back, even

13  though we're stopping this witness from answering questions.

14  So I'm trying to head that off.

15        MR. GOLDBERG:  Your Honor --

16        THE COURT:  Let me step in here.  Mr. Goldberg, let

17  me step in.

18        But here is the problem I see, Mr. Slater, and maybe

19  there's a way to deal with it or maybe not.  If there's a

20  general issue, for example, whether or not there is a state

21  secret privilege to apply, that's a legal issue, we can decide

22  that.

23        But let's say we have a normal deposition and, you

24  know, in my job, I deal with this issue all the time, people

25  will say, well, Judge, we believe this is work product or this

1    is attorney/client, can you rule on the issue before the

2    deposition?  And I'll say, I don't know what the question is.

3    I have to see the context of the questions and I have to see

4    the record to see what the question is and then I can decide

5    the issue.  I can't decide it in a vacuum.

6         So what ordinarily happens is, the, you know, you've

7    done this more than me.  The questioner asks the question,

8    objection on privilege.  The transcript is then sent to the

9    Judge and the Judge decides.

10        I don't know how you can give a generic answer to a

11   privilege question without knowing what the question is.

12        MR. SLATER:  I think your point is well-taken, Judge,

13   but the difference is, hopefully by the time we're taking

14   depositions at this level, we understand work product and

15   attorney/client privilege and, you know, the calls can be made

16   by the Court but the ground rules, everybody knows that it's

17   ten yards to a first down.

18        This Chinese state secret issue is Greek to most of

19   us, and what we need, I think, is, we need in the first

20   instance, the burden of proof is heavily on ZHP is let them

21   make a proffer now and say, look, this is where -- in the

22   discovery request to date, the requests for documents, the

23   30(b)(6) topics, et cetera, this is where we see a state

24   secret issue, and this is how it's going to come up, and let's

25   get some ground rules down into those narrow parameters so at

 1    least we know which parts of the field may implicate this,

 2    because I think that will help the questioners to know, you

 3    know, this may implicate this issue, and we'll get some

 4    guidance from the Court to the extent an issue can be

 5    litigated in advance, we can at least get some parameters.

 6            All I'm trying to do is not go in with a blank slate.

 7    Look, if Your Honor says, look, it will have to happen in real

 8    time, we'll obviously abide by that.  I just think this can

 9    avoid a very serious disruption of potentially some important

10    depositions at some point where it's going to end up costing

11    everybody a lot of time and effort where maybe we can head it

12    off.  That's my suggestion.  That's where I'm coming from on

13    this.

14            THE COURT:  Yeah.

15            MR. GOLDBERG:  Your Honor, this is --

16            THE COURT:  I don't know how to do that.

17            MR. GOLDBERG:  Your Honor, this is Seth Goldberg, and

18    if I can, I do think Your Honor has correctly stated the

19    process that's followed.  And I would encourage the plaintiffs

20    to look at Document 637, which is the letter that we filed in

21    connection with the last CMC on Page 9 of our letter.

22            We identified the four categories of state secret

23    information that we think might be implicated in that letter.

24            So to the extent that plaintiffs want a little

25    guidance as to what those issues might be, we have made that

1    proffer, we think it's very unlikely that these issues will

2    prevent testimony, but, of course, we won't know that until

3    real time.  And we think Your Honor should rule on any of

4    those issues, should they arise, in the right context, that

5    plaintiffs can be comforted in knowing that there are four

6    narrow areas which we have already identified for plaintiffs.

7          MR. SLATER:  Plaintiffs are not comforted, Judge.  We

8    don't believe those areas necessarily are legitimate, and I

9    can tell you one example of where they can move and Your Honor

10   can give them a deadline.

11         Of all the documents that have been requested, on

12   every single request for production, the -- ZHP should be

13   required by a date certain before the end of this month,

14   frankly, to file a motion to legitimately withhold that

15   document or some part of that document under the Chinese State

16   Secret doctrine, and that will tee the issue up, and if it

17   turns out there's not one document that's been requested and

18   collected for the custodial production, the request for

19   productions, in every one of our requests, then that's a

20   pretty good indicator that all of the areas of discovery in

21   this case fall outside the doctrine.

22         So at least, if they're holding back any information

23   from us that was requested in discovery, they should need to

24   move on that affirmatively, so that at least we can get that

25   issue teed up.  Maybe that's a way to attack it.

```
 1              THE COURT:  When is ZHP's privilege log due?

 2              MR. GOLDBERG:  Within 30 days of the completion of

 3    our production, Your Honor.

 4              THE COURT:  So has that been triggered yet?

 5              MR. GOLDBERG:  Yes, it should be 30 days from

 6    November 30th.  So by the end of this month, we'll have a log.

 7              THE COURT:  Okay.  So let me give you a hypothetical,

 8    purely hypothetical.  Suppose ZHP produces a privilege log but

 9    does not identify one state secret privilege objection.

10    Doesn't that mean, or does that mean, that if there's

11    questioning regarding the document in that subject area,

12    subject area, there's no privilege assertion?

13              MR. GOLDBERG:  No, Your Honor.

14              MR. SLATER:  I would think so.

15              MR. GOLDBERG:  Your Honor, this is Seth Goldberg, and

16    I -- and this is why, you know, I think it's safe to say, it's

17    safer to say, it's unlikely that there would be a privilege --

18    there would be any state secret.  But we do not know what

19    questions plaintiffs will ask, nor do we know how witnesses

20    answer things.

21              That is how it plays out in real time with respect to

22    any kind of privilege, any kind of work product.  This is why

23    lawyers have the right to assert these objections in real time

24    to be resolved by the Court.

25              And remember, the witnesses are subject to criminal
```

```
 1    sanctions if they violate the Chinese State Secret rule.
 2           So this is a very significant issue for the
 3    witnesses.
 4           Even if documents turn out to be not state secret,
 5    which we think is very likely that there will be very few, if
 6    any, that ultimately are withheld on the basis, you can't
 7    prevent an -- you can't predict what would be asked or how a
 8    witness might answer at a deposition.
 9           THE COURT:  But presumably, hypothetical, I'm just
10    making this up, a document is produced, there's been no
11    privilege assertion asserted to it, a plaintiff's attorney
12    asks the witness a question about the document, why they use
13    this word or that word, what does this word mean, wouldn't it
14    -- doesn't it make sense that there could be no privilege
15    assertion to those questions because --
16           MR. GOLDBERG:  Correct.
17           THE COURT:  Okay.
18           MR. SLATER:  So that's why --
19           MR. GOLDBERG:  I'm sorry, Adam.
20           THE COURT:  Okay.  So I think we have maybe a
21    consensus, Mr. Slater, consistent with what you said.  We
22    really won't have our arms around this issue until we see
23    ZHP's privilege log at the end of the month, and if they don't
24    assert any state secret privilege to any of the documents, I
25    think a fair assumption is that questioning regarding that
```

 1    document is going to be okay.

 2            But on the other hand, Mr. Goldberg's right because

 3    we don't know exactly precisely the wording or the question

 4    that's going to be asked, just like every other deposition,

 5    right?

 6            So this has been a long discussion, but I think with

 7    the benefit of both of your insights, we have a resolution of

 8    it.  Let's wait to see what ZHP's privilege log says at the

 9    end of the month, and if they're not asserting any objections,

10    Mr. Slater, what's the beef?

11            MR. SLATER:  Well, first of all, I appreciate you

12    talking about food when we're all very hungry, Your Honor.

13            (Laughter.)

14            MR. SLATER:  But once again, no, I think, look, I

15    appreciate your patience.  I think we were able to talk

16    through this to reach an interim point where I think that

17    their privilege log is going to be a watershed moment when it

18    comes to this Chinese State Secret issue, and then we can move

19    forward from there.  I think that that's very reasonable.

20            THE COURT:  Okay.  I do, too.  If there is an issue

21    to address, we'll address it, but first things first, let's

22    see what ZHP has to say.  Let's see what the other defendants

23    have to say when they produce their privilege log.  Same

24    thing, if there's going to be any Hague issues -- legal issues

25    that can be addressed ahead of time.

1      So to bring this full circle, we'll put Issues 3 and

2  4 on Page 2 of Mr. Goldberg's letter, we'll wait to see what

3  happens with that with regard to the privilege logs that are

4  going to be produced.

5      And based upon what Mr. Slater has said --

6  Mr. Goldberg, maybe we also ought to wait until plaintiff has

7  a better idea of who they want to depose and who the designees

8  are, because until that time, it seems to me that plaintiffs

9  will not be able to intelligently talk about how many deps

10  they want to take and how long they're going to take.  Do you

11  disagree?

12      MR. GOLDBERG:  Your Honor, I do disagree in some

13  respect.  Plaintiffs have been asked -- Your Honor asked

14  plaintiffs to send defendants a list -- a priority list of

15  potential deponents and, you know, I understand that each of

16  the defendants is in a different state of communicating about

17  their list.

18      But as Your Honor has said before, if you don't have

19  a date on the schedule, you know, you don't get decisions

20  made.

21      Defendants are also preparing for these depositions,

22  you know, and we would like to be able to have some certainty.

23  As I mentioned, if you look at Exhibit B to our letter, ZHP

24  has proposed a list of deponents with dates identifying which

25  of those witnesses will also cover 30(b)(6) testimony.

1          We've covered about 90 percent of plaintiffs'

2    priority list.  There's really no reason a Court couldn't

3    order that list to be -- for the Court to approve that list

4    now, given, given it's coverage of the priority list and the

5    entirety of plaintiffs' 30(b)(6) notice.  But, you know, we

6    are all working with plaintiffs and we'll continue to work

7    with plaintiffs, but we think October (sic) 23rd is a date to

8    have these issues resolved.

9          THE COURT:  Okay.  Let's do this then, included in

10   the briefing for the December 23rd conference, the Issues

11   No. 1 and 2 on your list, Mr. Goldberg, the number of

12   depositions and length of the depositions.  It may be that the

13   answer at that time is, we can't decide it.  Let's see what

14   you have to say, all right?

15         So No. 1 and No. 2 are going to be addressed in the

16   letter for the December 23rd conference, and Issues 3 and 4

17   are going to be deferred at least until after the privilege

18   logs are prepared.

19         Moving on with the letter, Mr. Goldberg --

20         MR. GOLDBERG:  Yeah, I'm going through --

21         THE COURT:  -- what other issues that haven't already

22   been addressed?

23         MR. GOLDBERG:  Yeah, I'm going through it.  I think

24   we have covered everything, Your Honor.

25         THE COURT:  I think wasn't there an issue about the

1    dates for the defendants' wholesalers' fact sheets.

2         MR. GEOPPINGER:  Yes, Your Honor, there is.  This is

3    Jeff Geoppinger for the wholesaler defendants.  Your Honor,

4    the issue there simply is the fact sheets were amended by the

5    pharmacy defendants as of November 25th.  At that time, the

6    wholesalers first found out whether or not they were in the

7    chain of distribution for any particular plaintiff based on

8    the information provided, and our fact sheet says we have 60

9    days from the date of finding that information out, the

10   completeness of our fact sheets.

11        That date is, I believe, January 24th.

12        We believe that is our date, we approached plaintiffs

13   about an agreement on a -- on the deadlines for those fact

14   sheets that it would have been delivered to them a little

15   sooner than that date.  The plaintiffs were not agreeable to

16   amending what they believe the schedule is, which would

17   require us to produce fact sheets by December 15th for the

18   economic loss plaintiffs, and the -- December 29th, the

19   personal injury plaintiffs.

20        Those dates were based off of the initial fact sheets

21   served by the defendant pharmacies.  Those fact sheets, as I

22   mentioned, did not identify the chain of distribution, only

23   the amended fact sheets did.

24        So we wanted to confirm with the Court that our date

25   is 60 days from when we were first identified, which is

```
 1   January 24th.
 2            THE COURT:  Mr. -- I'm looking at Mr. Goldberg's
 3   letter.  Page 9, the very last few sentences.
 4            Is that what you're arguing?
 5            MR. GEOPPINGER:  Yes.
 6            THE COURT:  So you want the Court to confirm that the
 7   wholesaler defendants' deadline is 60 days from November 25th,
 8   or January 24th, '21?
 9            MR. GEOPPINGER:  Correct.
10            THE COURT:  And plaintiffs, Mr. Slater, you object?
11            MR. STANOCH:  Judge, this is David Stanoch for
12   plaintiffs.  Yes, and the only reason we do -- normally, we
13   would not, but after the retailers submitted their fact
14   sheets, Judge Kugler entered the scheduling order, the April 1
15   fact discovery deadline, meaning that if the wholesalers' fact
16   sheets come to us January 24th, the finished dose ones don't
17   come to us until 60 days thereafter, which is March 24th, and
18   the API manufacturer ones would come in May, a month and a
19   half after the discovery deadline.
20            So unfortunately, our issue was, we felt we could not
21   agree to an extension that could potentially prejudice us of
22   being one tier of defendants' fact sheets a week before the
23   discovery deadline ends, and the other tier of the API
24   manufacturers, a month and a half after the current fact
25   discovery deadline.
```

```
 1              THE COURT:  Can I ask you this, counsel?  How long of

 2    an extension are the wholesalers asking for?  They're asking

 3    for January 24th.  What's the due date now?

 4              MR. STANOCH:  I think Mr. Goeppinger said they're

 5    either asking for about a 30-day extension, I think it comes

 6    to.

 7              THE COURT:  Is that the same extension that the

 8    plaintiffs gave, I guess, to the retailer pharmacy defendants?

 9              MR. STANOCH:  I can't recall if we gave -- I think we

10    did give a 30-day, because originally, they were due around

11    October 16th, I believe, and we gave a 30-day extension or so,

12    whatever it was, 35 days at that time.

13              And again, the issue is not the courtesy of an

14    extension.  We'd be happy to give it.  Just now, between the

15    time we gave the extension to the retailers and now, for the

16    wholesalers and everyone else, we now have this April 1st

17    discovery deadline.

18              Perhaps, Your Honor wants to say that, you know, we

19    would not be prejudiced and barred from discovery, that's

20    after the April 1 deadline based on information disclosed in

21    fact sheets produced at or after that deadline.  I'm just

22    trying to think of a way to resolve this.

23              THE COURT:  I don't think the Court's going to say

24    that, counsel.  The deadline to complete fact discovery is in

25    the order.
```

1      MR. STANOCH:  Okay.  Then, Your Honor, I think our

2  position must be that we need all of the defendants' fact

3  sheets sufficiently in advance of the current April 1

4  deadline, to ensure that we have them and can conduct

5  appropriate follow-up discovery within that discovery period.

6      THE COURT:  Well, we have a conundrum here, because

7  the wholesalers were promised 60 days and the plaintiffs

8  granted an extension to the pharmacy defendants.

9      It wasn't Court-ordered.

10      MS. RICHER:  Your Honor, this is Kristin Richer on

11  behalf of the pharmacy defendants.  I thought I might just

12  clarify.  When we're talking about the timing of the pharmacy

13  defendants' responses, the initial defendant fact sheets from

14  the pharmacy defendants were served on the Court-ordered

15  deadlines which were, I think, October 15th and October 30th.

16      It was after plaintiffs received those and reviewed,

17  that they had significant concerns regarding the response to

18  Question 2C which is the supply chain question, that basically

19  asks the pharmacies to identify who they may sourced the drug

20  from.  And as part of the negotiations with the plaintiffs, we

21  had agreed that the pharmacy defendants for various reasons

22  could cite to their production of purchasing data responsive

23  to the Rule 34 request, for Production No. 1.

24      Now, when plaintiffs got the documents and looked at

25  the defendant fact sheets, they had some concerns that it was

1    unwieldy to look at the data and to identify the information

2    that they needed, and that it may cause some confusion with

3    other defendants up the supply chain if they were responding

4    to defendants' fact sheets, and that's the point at which the

5    retail pharmacy defendants and plaintiffs conferred and agreed

6    to what was at that point a two-week extension for the

7    pharmacies to go back through their materials and to

8    supplement their responses to provide additional information.

9         And I just want to make it clear what the context of

10   that timeline is.

11        THE COURT:  Here's what I think you should do,

12   counsel.  The fact discovery deadline in the last order is not

13   going to change.  So you have to talk amongst yourselves and

14   agree on deadlines.  It probably means that we're going to

15   have to cut short some of the 60-day deadlines, but you're

16   going to have to work it out because we're just in this

17   conundrum that we have to deal with.

18        So work it out, and we'll set deadlines on

19   December 23rd.  I wish we had all the time in the world to

20   give you time to do whatever you want, plaintiffs, but Judge

21   Kugler set those deadlines and we have to work around them, so

22   we're going to defer this issue until the December 23rd call,

23   and hopefully, you'll agree on dates.

24        Everyone's going to have to compromise, and if you

25   don't agree on dates, I'll set them.

1          Mr. Goldberg, any other issues?

2          MR. GOLDBERG:  I don't believe so, Your Honor.

3          THE COURT:  I have one issue I want to address with

4    the parties, but before that, for the good of the order, does

5    anyone have any issues?

6          Okay.  The issue I wanted to discuss is the

7    third-party motions that were filed.  I read those papers and

8    I'm trying to roll up my sleeves and figure out the best way

9    to tackle the issue so that we can get a prompt ruling and

10   move on with the case, and the conclusion that I came to, is

11   that it's going to take a fair amount of time to address the

12   issue.

13         So I'm going to schedule a conference call

14   separately, on either January 5th or January 6th, and we're

15   just going to deal with the third-party subpoena issue.  It

16   probably means that we'll eliminate the reply brief that the

17   defendants have to serve to the response you get from the

18   plaintiffs, but a reply brief is discretionary anyway under

19   the local rules.

20         If the defendants can squeeze in the time to get it

21   in before the date I schedule for the call, so be it, but I

22   read the defendants' brief.  It was pretty comprehensive and

23   I'm not sure there's a whole lot more that they can add.

24         So expect to get that order scheduling that call the

25   first week of January just to deal with the third-party

1    subpoena issue.

2            All right.  Anything else, counsel?

3            MR. GOLDBERG:  Nothing from defendants, Your Honor.

4            MR. SLATER:  Nothing for plaintiffs.

5            THE COURT:  Okay.  Thank you very much, everybody.

6            Karen, thank you very much for forging through this

7    under difficult circumstances.

8            We're adjourned.

9            (6:00 p.m.)

10           - - - - - - - - - - - - - - - -

11

12           I certify that the foregoing is a correct transcript

13   from the record of proceedings in the above-entitled matter.

14

15   */S/ Karen Friedlander, CRR, RMR*
     *Court Reporter/Transcriber*_____
16

17   *12-9-20*
     *Date*
18

19

20

21

22

23

24

25

**'**

**'21** [1] - 68:8

**/**

**/S** [1] - 73:15

**0**

**07068** [1] - 1:13
**08540** [1] - 3:6

**1**

**1** [11] - 41:24, 42:9, 45:13, 50:13, 51:25, 66:11, 66:15, 68:14, 69:20, 70:3, 70:23
**100-plus** [1] - 16:15
**10022** [1] - 3:4
**103** [1] - 1:12
**10th** [1] - 38:17
**12** [3] - 37:7, 37:11, 42:23
**12-9-20** [1] - 73:17
**120-some-odd** [1] - 16:24
**13** [1] - 34:9
**145,000** [11] - 22:9, 22:17, 22:23, 23:7, 23:14, 24:6, 26:3, 29:9, 32:4, 33:6, 33:8
**15** [1] - 20:23
**150,000** [1] - 31:23
**15219** [1] - 2:25
**15th** [1] - 67:17, 70:15
**16th** [1] - 69:11
**17th** [1] - 2:10
**1835** [1] - 1:16
**19-2875** [1] - 4:4
**19103** [2] - 1:16, 2:10
**1:19-md-02875-RBK-JS** [1] - 1:5
**1st** [1] - 69:16

**2**

**2** [6] - 44:24, 45:13, 50:14, 65:2, 66:11, 66:15
**2018** [2] - 28:4, 38:16
**2019** [2] - 8:13, 56:1
**2020** [2] - 1:7, 4:1
**2029** [1] - 2:18
**20th** [2] - 38:16, 38:20
**21** [1] - 3:6
**2150** [1] - 2:7
**22** [1] - 47:14

**23rd** [12] - 47:16, 47:21, 48:2, 48:3, 48:13, 48:15, 49:16, 66:7, 66:10, 66:16, 71:19, 71:22
**24th** [7] - 47:12, 67:11, 68:1, 68:8, 68:16, 68:17, 69:3
**2500** [1] - 2:13
**25th** [2] - 67:5, 68:7
**26** [2] - 8:6, 8:10
**26(A)1(b** [1] - 9:2
**2800** [1] - 2:21
**2900** [1] - 1:16
**29th** [1] - 67:18
**2C** [1] - 70:18

**3**

**3** [3] - 47:19, 65:1, 66:16
**3,000** [1] - 23:8
**30** [6] - 2:10, 11:15, 18:15, 20:10, 62:2, 62:5
**30(b)(6** [11] - 40:17, 41:2, 45:6, 49:17, 50:23, 52:8, 52:10, 53:25, 59:23, 65:25, 66:5
**30(b)(6)** [1] - 6:9
**30-day** [3] - 69:5, 69:10, 69:11
**300** [1] - 2:18
**30305** [1] - 2:14
**30th** [2] - 62:6, 70:15
**316** [1] - 2:3
**31st** [2] - 38:11, 45:12
**32502** [1] - 2:4
**33** [1] - 25:5
**3333** [1] - 2:13
**34** [1] - 70:23
**35** [1] - 69:12
**36** [1] - 40:16
**38th** [1] - 2:24
**3:30** [1] - 44:9

**4**

**4** [3] - 47:19, 65:2, 66:16
**400** [3] - 16:24, 23:16, 31:21
**44** [1] - 25:2
**45202** [1] - 2:22
**49** [1] - 4:5
**4:00** [1] - 1:8
**4:01** [1] - 4:1

**5**

**5** [1] - 39:24
**5,000** [1] - 23:8
**50** [1] - 11:15
**55402** [1] - 2:7
**5th** [1] - 72:14

**6**

**6** [3] - 6:20, 7:7, 9:11
**60** [5] - 67:8, 67:25, 68:7, 68:17, 70:7
**60-day** [1] - 71:15
**600** [2] - 2:3, 2:21
**601** [1] - 3:3
**637** [1] - 60:20
**6:00** [1] - 73:9
**6th** [2] - 14:10, 72:14

**7**

**7,500** [1] - 26:10
**70** [1] - 50:8
**701** [1] - 1:19
**70130** [1] - 1:20
**756-0160** [1] - 1:24
**76,000** [1] - 25:4

**8**

**8** [2] - 5:25, 52:6
**80** [1] - 50:15
**800** [1] - 2:6
**85** [1] - 50:8
**856** [1] - 1:24

**9**

**9** [4] - 1:7, 4:1, 60:21, 68:3
**90** [1] - 66:1
**90067-2904** [1] - 2:18

**A**

**abide** [1] - 60:8
**ability** [1] - 15:15
**able** [8] - 32:9, 44:12, 44:13, 45:8, 46:5, 64:15, 65:9, 65:22
**above-entitled** [1] - 73:13
**accept** [1] - 44:15
**according** [1] - 16:7
**accurate** [1] - 50:13
**Actavis** [2] - 2:15
**ACTION** [1] - 1:4
**Adam** [4] - 4:13, 12:10, 57:24, 63:19
**ADAM** [1] - 1:12

**add** [8] - 6:5, 6:6, 14:3, 14:20, 35:7, 42:11, 44:5, 72:23
**added** [2] - 36:8, 44:3
**addendum** [4] - 44:9, 44:21, 56:22, 57:19
**additional** [6] - 20:1, 23:3, 25:21, 41:25, 48:21, 71:8
**address** [17] - 5:20, 5:24, 18:1, 21:21, 25:7, 31:2, 32:16, 34:5, 43:14, 43:17, 43:19, 44:8, 45:14, 64:21, 72:3, 72:11
**addressed** [5] - 8:14, 43:20, 64:25, 66:15, 66:22
**addresses** [1] - 34:10
**adjourned** [1] - 73:8
**admitted** [5] - 49:3, 49:7, 56:4, 56:5, 56:6
**advance** [2] - 58:2, 60:5, 70:3
**advancing** [1] - 46:13
**advise** [1] - 46:5
**affect** [1] - 37:22
**affidavit** [11] - 10:3, 10:13, 10:16, 10:18, 12:1, 12:13, 13:12, 48:18, 48:19, 55:13
**affirmatively** [1] - 61:24
**affirmed** [1] - 11:20
**afraid** [1] - 24:5
**afternoon** [15] - 4:13, 4:15, 4:17, 4:19, 4:23, 4:25, 5:1, 5:5, 5:7, 5:11, 5:14, 19:8, 20:19, 21:23, 44:17
**agenda** [5] - 8:6, 20:3, 38:18, 41:10, 44:7
**ago** [2] - 8:14, 8:16
**agree** [9] - 28:14, 35:3, 45:9, 46:21, 51:7, 68:21, 71:14, 71:23, 71:25
**agreeable** [1] - 67:15
**agreed** [9] - 7:23, 18:11, 26:16, 26:19, 43:25, 48:6, 51:7, 70:21, 71:5
**agreed-upon** [1] - 43:25
**agreement** [5] - 19:3, 19:13, 19:16, 19:17, 67:13
**agreements** [19] - 6:1, 6:11, 6:17, 6:20,

**6:24, 7:3, 7:17, 8:2, 8:7, 8:15, 9:1, 9:4, 9:5, 9:9, 9:13, 9:16, 9:17, 9:21, 53:20
**ahead** [3] - 37:3, 57:24, 64:25
**Aid** [1] - 5:16
**aided** [1] - 1:25
**ALEXIA** [1] - 3:2
**Alexia** [1] - 5:7
**ALFANO** [1] - 2:23
**ALL** [1] - 4:1
**allow** [1] - 32:1
**almost** [1] - 23:15
**alone** [1] - 31:22
**amend** [2] - 37:17, 39:1
**amended** [3] - 36:6, 67:4, 67:23
**amending** [1] - 67:16
**American** [1] - 49:2
**AmerisourceBergen** [3] - 2:22, 5:13, 40:9
**amount** [8] - 8:22, 13:24, 16:19, 23:17, 36:3, 54:12, 72:11
**analysis** [2] - 27:7, 45:18
**AND** [1] - 1:5
**Angeles** [1] - 2:18
**answer** [10] - 17:11, 17:18, 46:6, 54:14, 55:4, 55:7, 59:10, 62:20, 63:8, 66:13
**answering** [1] - 58:13
**answers** [1] - 21:18
**anticipate** [3] - 21:3, 39:17, 41:13
**anyway** [1] - 72:18
**API** [5] - 7:5, 7:21, 26:24, 68:18, 68:23
**apologize** [3] - 36:17, 38:16, 54:15
**appealed** [1] - 11:20
**appear** [1] - 32:11
**appearance** [3] - 4:6, 4:10, 4:21
**appended** [1] - 22:12
**applicability** [3] - 45:7, 45:8, 45:16
**applicable** [2] - 45:18, 55:22
**application** [1] - 10:17
**applied** [1] - 26:10
**applies** [2] - 9:4, 55:3
**apply** [4] - 9:4, 11:17, 55:16, 58:21
**appreciate** [2] - 64:11, 64:15
**approach** [1] - 48:18

approached [1] - 67:12
appropriate [6] - 10:4, 10:19, 11:9, 11:21, 47:20, 70:5
approval [1] - 39:15
approve [1] - 66:3
approves [1] - 39:7
April [6] - 41:24, 42:9, 68:14, 69:16, 69:20, 70:3
area [2] - 62:11, 62:12
areas [4] - 58:4, 61:6, 61:8, 61:20
arguing [1] - 68:4
argument [4] - 9:10, 9:11, 9:23, 34:22
arise [2] - 46:8, 61:4
arms [2] - 33:11, 63:22
arrived [1] - 32:8
aside [3] - 18:12, 21:22, 35:4
assert [11] - 46:16, 47:8, 49:5, 56:6, 56:14, 56:16, 56:24, 57:6, 57:21, 62:23, 63:24
asserted [6] - 32:21, 46:10, 46:12, 49:2, 56:9, 63:11
asserting [3] - 57:8, 57:14, 64:9
assertion [4] - 15:20, 62:12, 63:11, 63:15
assessments [2] - 28:6, 28:10
associated [1] - 34:22
assume [4] - 14:5, 30:19, 57:3, 57:4
assumption [1] - 63:25
Atlanta [1] - 2:14
attached [3] - 12:19, 28:22, 29:21
attachment [2] - 24:2, 26:17
attachments [11] - 22:6, 22:9, 23:7, 25:1, 28:20, 28:24, 29:2, 29:4, 29:14, 31:25, 34:8
attack [1] - 61:25
attempt [1] - 19:12
attend [1] - 46:4
attended [1] - 51:11
attending [1] - 57:16
attention [1] - 40:14
attorney [9] - 10:13, 10:17, 48:10, 49:3, 49:6, 56:14, 63:11

attorney/client [2] - 59:1, 59:15
attorneys [5] - 16:6, 16:13, 16:16, 16:18, 57:8
August [1] - 8:5
Aurobindo [2] - 20:18, 20:24
authorities [2] - 28:2, 28:5
available [1] - 46:20
Avenue [2] - 2:6, 3:3
avoid [1] - 60:9
aware [4] - 18:25, 19:2, 20:25, 58:6

## B

background [1] - 8:22
backing [1] - 37:12
badly [1] - 50:6
bank [1] - 33:5
bar [3] - 38:21, 49:7, 54:19
BARNES [1] - 2:16
barred [2] - 49:3, 69:19
barring [1] - 38:1
base [1] - 38:12
based [6] - 19:11, 55:7, 65:5, 67:7, 67:20, 69:20
basis [4] - 22:14, 28:24, 55:24, 63:6
Bates [3] - 13:11, 14:23, 31:16
Baylen [1] - 2:3
become [2] - 57:11, 57:17
becomes [3] - 23:15, 56:15, 57:1
bed [1] - 32:14
beef [1] - 64:10
began [2] - 28:5, 28:6
begin [1] - 28:25
beginning [2] - 8:4, 24:20
behalf [14] - 4:20, 4:24, 5:3, 5:8, 5:12, 5:15, 21:9, 21:24, 25:16, 27:10, 28:1, 34:13, 46:16, 70:11
behind [2] - 41:22, 42:21
belief [1] - 41:19
believes [1] - 46:18
benefit [2] - 4:7, 64:7
Benicar [1] - 10:6
BERNE [1] - 2:20
best [3] - 15:14, 52:22,

72:8
better [2] - 41:24, 65:7
between [4] - 7:17, 22:8, 44:16, 69:14
beyond [2] - 19:1, 19:20
big [2] - 39:1, 39:18
bigger [1] - 53:6
bit [1] - 9:17
blank [1] - 60:6
blessed [1] - 35:18
blood [1] - 28:21
BOSICK [1] - 2:23
Brancato [1] - 5:8
BRANCATO [2] - 3:2, 5:7
brazenly [1] - 51:20
brief [9] - 10:6, 12:12, 48:12, 48:22, 54:23, 56:9, 72:16, 72:18, 72:22
briefing [7] - 45:4, 46:18, 47:20, 48:4, 48:17, 58:10, 66:10
briefs [1] - 45:15, 49:15
bring [3] - 40:13, 58:12, 65:1
bringing [1] - 15:1
BRITTNEY [1] - 3:3
Brittney [1] - 5:9
broad [3] - 26:6, 26:9, 26:12
burden [3] - 23:25, 54:22, 59:20
burdensome [1] - 28:15
business [4] - 11:12, 34:10, 41:3, 41:12
BY [12] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:9, 2:12, 2:17, 2:20, 2:24, 3:2, 3:5

## C

CA [1] - 2:18
calmly [1] - 50:17
camera [3] - 9:25, 10:2, 11:25
CAML [1] - 18:2
Camp [1] - 1:19
candidly [2] - 29:10, 29:22
cannot [1] - 33:21
careful [2] - 27:18, 28:17
carry [1] - 44:6
Case [1] - 47:14
case [27] - 6:23, 7:14,

10:5, 10:6, 10:7, 10:10, 10:11, 11:11, 12:24, 13:22, 26:23, 27:22, 30:14, 31:2, 33:20, 36:10, 41:23, 45:1, 45:5, 45:18, 47:24, 55:2, 55:23, 61:21, 72:10
cases [5] - 9:3, 9:7, 9:8, 10:11, 36:3
categorical [1] - 11:22
categories [6] - 11:10, 18:20, 33:10, 36:20, 55:21, 60:22
category [2] - 17:1, 18:9
caveat [1] - 44:2
central [1] - 53:19
Centre [1] - 2:24
Century [1] - 2:18
certain [6] - 6:1, 28:17, 30:18, 54:24, 55:23, 61:13
certainly [8] - 7:2, 8:5, 9:18, 15:6, 15:14, 17:21, 40:23, 55:12
certainty [1] - 65:22
certify [1] - 73:12
cetera [4] - 11:8, 54:1, 59:23
chain [5] - 7:22, 67:7, 67:22, 70:18, 71:3
chance [2] - 44:10, 44:16
change [1] - 71:13
changes [1] - 39:18
check [5] - 12:17, 12:25, 13:1, 13:6, 13:10
China [6] - 50:18, 50:24, 51:12, 54:16, 54:21, 55:15
Chinese [17] - 23:19, 23:20, 43:24, 45:7, 46:4, 46:25, 47:1, 48:20, 52:18, 54:16, 56:22, 56:23, 57:12, 59:18, 61:15, 63:1, 64:18
chorus [1] - 57:7
chromatograms [1] - 52:17
cincinnati [1] - 2:22
circle [1] - 65:1
circuit [2] - 31:12, 32:1
circumstances [3] - 16:1, 23:6, 73:7
cite [2] - 9:7, 70:22
cited [1] - 10:6

CIVIL [1] - 1:4
claim [1] - 10:20
claimed [1] - 23:13
claims [3] - 37:12, 37:20, 43:4
clarify [1] - 70:12
clarity [1] - 44:21
class [1] - 36:22
clear [9] - 6:15, 8:4, 9:2, 24:9, 34:20, 36:17, 44:4, 54:18, 71:9
clearly [1] - 30:7
CLEM [1] - 2:24
Clem [3] - 5:5, 19:7, 25:6
client [2] - 19:19, 26:10
client's [1] - 38:19
clients [1] - 10:19
closer [1] - 23:8
CMC [1] - 60:21
Co [1] - 2:19
coded [5] - 19:24, 20:1, 25:18, 25:22, 28:12
Cohen [2] - 5:1, 17:24
COHEN [2] - 2:12, 4:25
colleagues [3] - 17:12, 17:20, 21:21
collected [1] - 61:18
collection [1] - 16:4
color [1] - 41:18
combined [2] - 36:15, 36:25
comforted [2] - 61:5, 61:7
coming [5] - 46:3, 50:23, 53:19, 55:2, 60:12
command [1] - 53:20
Commencing [1] - 1:8
commit [1] - 31:25
committed [2] - 20:5, 25:2, 25:19
committee [1] - 5:6
common [1] - 36:13
communicate [2] - 17:14, 17:19
communicating [1] - 65:16
communications [2] - 6:25, 34:10
compel [1] - 47:17
compile [1] - 31:22
compiling [1] - 23:17
complaining [1] - 28:13
complains [1] - 26:3

**Complaint** [6] - 34:25, 36:15, 37:8, 37:9, 39:12, 39:23
**complaint** [6] - 35:9, 35:17, 36:7, 36:24, 39:6, 39:14
**Complaints** [3] - 36:5, 36:19, 37:17
**complaints** [7] - 35:6, 37:12, 37:21, 38:1, 38:19, 38:25, 39:2
**complete** [15] - 8:1, 16:21, 17:9, 18:21, 19:5, 19:21, 20:10, 20:21, 20:25, 21:15, 46:24, 47:20, 47:22, 48:4, 69:24
**completed** [5] - 20:23, 21:9, 21:10, 44:17, 52:6
**completeness** [1] - 67:10
**completion** [1] - 62:2
**complex** [2] - 45:22, 46:21
**complexity** [1] - 33:20
**complicated** [1] - 48:3
**comport** [1] - 41:5
**comprehensive** [2] - 37:7, 72:22
**compromise** [1] - 71:24
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**conceded** [1] - 29:13
**concern** [5] - 15:2, 24:19, 29:8, 31:8, 38:2
**concerned** [3] - 20:8, 42:5, 56:23
**concerns** [7] - 15:6, 22:16, 32:10, 40:22, 42:22, 70:17, 70:25
**conclusion** [1] - 72:10
**conduct** [3] - 29:24, 31:14, 70:4
**confer** [17] - 13:17, 21:14, 24:21, 25:14, 25:24, 30:15, 31:4, 31:8, 32:10, 32:18, 32:23, 33:4, 34:17, 40:3, 40:9, 40:19, 40:23
**CONFERENCE** [1] - 1:6
**conference** [14] - 40:6, 40:20, 41:11, 42:14, 45:1, 45:5, 48:2, 49:16, 50:2,

51:17, 54:23, 66:10, 66:16, 72:13
**conferences** [2] - 7:15
**conferred** [2] - 24:14, 71:5
**conferring** [1] - 34:23
**confers** [3] - 19:12, 26:7, 52:24
**confident** [1] - 38:23
**confidential** [3] - 10:9, 11:14, 12:2
**confidentiality** [4] - 10:4, 10:21, 11:10, 12:9
**confirm** [3] - 18:24, 67:24, 68:6
**confirmed** [3] - 8:24, 14:13, 51:3
**confused** [2] - 18:13, 36:14
**confusion** [1] - 71:2
**conjunction** [1] - 34:16
**Conlee** [1] - 4:20
**CONLEE** [1] - 1:18
**connection** [3] - 7:24, 60:21
**consensus** [2] - 35:11, 63:21
**consequences** [1] - 50:5
**consist** [1] - 22:9
**consistent** [4] - 26:20, 27:4, 27:21, 63:21
**consumer** [1] - 36:22
**consuming** [2] - 31:24, 32:12
**context** [4] - 55:2, 59:3, 61:4, 71:9
**continually** [1] - 31:13
**continue** [2] - 21:14, 66:6
**CONTINUED** [2] - 2:1, 3:1
**continuing** [1] - 17:3
**contract** [2] - 16:13, 16:15
**contracts** [2] - 6:20, 6:24
**conundrum** [2] - 70:6, 71:17
**Convention** [2] - 45:8, 45:17
**coordinate** [1] - 17:19
**copies** [2] - 9:25, 29:21
**copy** [1] - 13:13
**core** [1] - 27:15
**corollary** [1] - 7:4
**Corporation** [1] - 5:16

**corral** [1] - 49:12
**correct** [13] - 6:2, 6:3, 7:8, 9:12, 15:3, 18:8, 20:13, 20:16, 27:21, 28:18, 63:16, 68:9, 73:12
**correctly** [1] - 60:18
**correspondence** [3] - 21:11, 22:22, 40:18
**corresponds** [1] - 16:5
**costing** [1] - 60:10
**counsel** [19] - 5:17, 10:12, 12:6, 13:18, 20:12, 20:18, 24:13, 30:12, 30:15, 32:21, 42:12, 43:5, 49:21, 55:1, 55:12, 69:1, 69:24, 71:12, 73:2
**count** [1] - 41:2
**counterproductive** [1] - 35:16
**couple** [3] - 26:22, 27:24, 42:8
**coupled** [1] - 26:13
**course** [8] - 10:5, 14:9, 25:3, 28:19, 30:5, 35:9, 46:8, 61:2
**Court** [14] - 1:23, 7:7, 14:13, 39:2, 39:15, 49:4, 52:5, 54:19, 56:5, 56:6, 66:2, 70:9, 70:14, 73:15
**court** [1] - 43:13
**COURT** [1] - 1:2
**Court's** [22] - 6:15, 8:18, 8:19, 8:20, 8:24, 11:1, 12:6, 16:11, 16:21, 16:23, 18:2, 25:9, 27:15, 29:11, 33:5, 33:7, 34:4, 37:15, 38:23, 38:25, 40:14, 69:23
**Court-ordered** [3] - 7:7, 70:9, 70:14
**courtesy** [1] - 69:13
**cover** [1] - 65:25
**coverage** [1] - 66:4
**covered** [3] - 5:24, 66:1, 66:24
**covering** [1] - 52:11
**COVID** [2] - 42:5, 47:3
**create** [1] - 49:24
**criminal** [1] - 62:25
**criteria** [1] - 10:22
**cross** [1] - 18:6
**CRR** [1] - 73:15
**current** [2] - 68:24, 70:3

**custodial** [3] - 22:25, 34:16, 61:18
**custodian** [1] - 7:20
**custodians** [3] - 18:25, 19:2, 20:23
**cut** [4] - 19:10, 26:4, 39:19, 71:15
**CVS** [2] - 2:19, 5:16

## D

**DANIEL** [2] - 2:3, 2:20
**Daniel** [1] - 4:18
**data** [2] - 70:22, 71:1
**dataset** [1] - 25:20
**Date** [1] - 73:17
**date** [14] - 13:19, 45:9, 47:18, 59:22, 61:13, 65:19, 66:7, 67:9, 67:11, 67:12, 67:15, 67:24, 69:3, 72:21
**dates** [10] - 31:11, 38:15, 50:19, 51:3, 51:7, 65:24, 67:1, 67:20, 71:23, 71:25
**David** [3] - 40:1, 41:15, 68:11
**DAVID** [1] - 1:15
**days** [16] - 18:15, 20:10, 27:24, 41:3, 41:12, 44:12, 44:14, 62:2, 62:5, 67:9, 67:25, 68:7, 68:17, 69:12, 70:7
**deadline** [20] - 13:22, 13:23, 19:1, 33:24, 34:1, 35:5, 42:10, 42:11, 61:10, 68:7, 68:15, 68:19, 68:23, 68:25, 69:17, 69:20, 69:21, 69:24, 70:4, 71:12
**deadlines** [7] - 42:19, 67:13, 70:15, 71:14, 71:15, 71:18, 71:21
**deal** [11] - 5:22, 11:9, 11:21, 28:9, 39:1, 43:12, 58:19, 58:24, 71:17, 72:15, 72:25
**dealing** [2] - 51:5, 52:23
**dealt** [4] - 10:6, 10:7, 19:10, 54:21
**December** [19] - 1:7, 5:25, 38:16, 42:3, 45:12, 47:16, 47:21, 48:2, 48:3, 48:13, 48:15, 49:16, 52:6, 66:10, 66:16, 67:17, 67:18, 71:19, 71:22

**DECEMBER** [1] - 4:1
**decide** [9] - 29:21, 44:15, 48:3, 56:15, 58:6, 58:21, 59:4, 59:5, 66:13
**decided** [2] - 32:24, 42:25
**decides** [1] - 59:9
**decision** [3] - 11:20, 34:5, 54:12
**decisions** [2] - 53:14, 65:19
**declare** [1] - 58:5
**declared** [1] - 24:24
**declinations** [1] - 8:11
**deed** [1] - 17:1
**deemed** [5] - 18:16, 18:18, 22:4, 22:14, 29:16
**defendant** [12] - 16:1, 16:20, 18:23, 24:18, 41:6, 50:9, 54:3, 54:4, 54:5, 67:21, 70:13, 70:25
**Defendant** [5] - 2:11, 2:19, 2:22, 2:25, 3:7
**Defendants** [1] - 2:14
**defendants** [79] - 4:22, 4:24, 5:3, 5:4, 5:6, 5:12, 5:15, 7:10, 7:18, 8:25, 9:7, 9:14, 9:19, 15:10, 16:10, 16:17, 17:6, 17:11, 17:13, 22:14, 22:20, 23:12, 24:1, 24:3, 24:7, 24:11, 24:14, 24:17, 27:11, 29:12, 29:13, 29:24, 33:14, 33:18, 35:10, 35:25, 36:8, 36:10, 36:11, 37:8, 38:12, 39:4, 39:10, 40:11, 40:18, 40:21, 41:13, 42:21, 43:23, 43:24, 47:16, 49:23, 50:3, 51:14, 51:19, 52:5, 52:24, 53:13, 53:20, 53:25, 64:22, 65:14, 65:16, 65:21, 67:3, 67:5, 69:8, 70:8, 70:11, 70:14, 70:21, 71:3, 71:5, 72:17, 72:20, 73:3
**defendants'** [10] - 5:6, 5:23, 14:7, 67:1, 68:7, 68:22, 70:2, 70:13, 71:4, 72:22
**defending** [1] - 57:6
**defense** [5] - 42:12, 44:15, 49:21, 55:1,

*55*:15
**Defense** [2] - 2:11, 2:25
**defer** [1] - 71:22
**deferred** [1] - 66:17
**deficiencies** [1] - 21:12
**deficiency** [2] - 14:8, 37:16
**definitely** [2] - 6:12, 12:17
**delay** [1] - 42:6
**delivered** [1] - 67:14
**denied** [3] - 9:1, 9:21, 10:17
**denying** [1] - 8:17
**deponent** [1] - 54:1
**deponents** [5] - 52:4, 52:8, 52:10, 65:15, 65:24
**depose** [1] - 65:7
**deposed** [3] - 47:2, 52:12, 58:9
**deposing** [1] - 50:17
**deposition** [24] - 33:19, 40:16, 41:25, 43:3, 45:6, 45:23, 46:9, 46:24, 47:5, 47:18, 48:8, 48:24, 49:7, 50:23, 52:19, 54:17, 56:15, 56:16, 57:16, 58:23, 59:2, 63:8, 64:4
**depositions** [30] - 13:17, 13:20, 13:24, 17:5, 24:20, 31:11, 32:2, 33:22, 45:3, 46:5, 46:16, 46:19, 46:25, 49:16, 49:17, 50:21, 52:3, 52:13, 53:3, 54:6, 54:13, 54:20, 55:14, 56:10, 57:1, 59:14, 60:10, 65:21, 66:12
**deps** [1] - 65:9
**description** [1] - 29:2
**designate** [3] - 10:9, 11:15, 12:3
**designated** [5] - 11:13, 36:21, 51:10, 51:12, 52:16
**designation** [2] - 10:4, 12:9
**designations** [4] - 11:2, 11:4, 11:6, 11:22
**designed** [1] - 50:5
**designees** [2] - 50:23, 65:7
**despite** [1] - 52:5

**detail** [1] - 30:23
**determination** [1] - 23:22
**determine** [2] - 10:3, 46:11
**determined** [2] - 18:18, 27:14
**determines** [1] - 19:25
**difference** [1] - 59:13
**different** [12] - 6:21, 8:8, 8:12, 10:7, 10:8, 18:1, 18:9, 36:1, 40:12, 52:19, 56:17, 65:16
**difficult** [1] - 73:7
**diligence** [1] - 34:4
**direction** [1] - 43:3
**disagree** [3] - 42:18, 65:11, 65:12
**discipline** [1] - 54:19
**disclosed** [1] - 69:20
**disclosures** [1] - 8:6
**discovery** [36] - 6:2, 10:9, 10:15, 10:21, 13:23, 26:14, 26:20, 26:23, 26:25, 27:3, 27:5, 27:15, 27:21, 30:6, 31:2, 39:24, 41:7, 41:21, 41:24, 42:1, 42:19, 42:24, 45:19, 59:22, 61:20, 61:23, 68:15, 68:19, 68:23, 68:25, 69:17, 69:19, 69:24, 70:5, 71:12
**discretionary** [2] - 45:19, 72:18
**discuss** [9] - 17:12, 17:13, 32:15, 32:20, 37:6, 38:4, 39:25, 41:9, 72:6
**discussed** [1] - 7:16
**discussing** [1] - 9:12
**discussion** [2] - 37:5, 64:6
**discussions** [3] - 24:15, 33:16, 52:6
**dispute** [3] - 11:12, 52:3, 53:8
**disputes** [1] - 35:11
**disrupted** [1] - 55:15
**disruption** [1] - 60:9
**distracting** [1] - 8:23
**distraction** [1] - 49:24
**distribution** [6] - 6:24, 7:2, 7:4, 7:22, 9:16, 67:7, 67:22
**District** [2] - 49:4, 56:6
**DISTRICT** [2] - 1:2, 1:2

**disturbed** [1] - 14:9
**disturbing** [1] - 14:18
**Docket** [1] - 4:4
**docket** [1] - 10:1
**doctrine** [3] - 58:4, 61:16, 61:21
**document** [41] - 6:16, 7:13, 7:16, 7:18, 7:19, 8:3, 10:9, 14:7, 14:8, 14:15, 15:20, 16:6, 16:24, 17:5, 17:21, 19:25, 20:20, 21:10, 22:3, 22:19, 23:11, 23:20, 23:21, 30:1, 30:2, 30:9, 33:19, 34:4, 42:1, 42:2, 50:1, 55:6, 61:15, 61:17, 62:11, 63:10, 63:12, 64:1
**Document** [2] - 9:10, 60:20
**documents** [89] - 7:20, 7:23, 8:9, 8:10, 9:25, 10:8, 10:23, 11:10, 11:14, 11:16, 11:17, 11:18, 11:25, 12:14, 12:18, 13:4, 14:10, 14:13, 15:4, 15:11, 15:22, 16:12, 18:3, 18:9, 18:16, 18:18, 19:15, 19:21, 19:23, 20:4, 20:7, 21:25, 22:2, 22:3, 22:4, 22:7, 22:9, 22:13, 22:17, 22:18, 22:23, 23:3, 23:10, 23:12, 23:19, 24:8, 24:9, 24:10, 24:21, 24:24, 25:2, 25:4, 25:18, 25:21, 26:4, 26:18, 27:24, 28:9, 28:11, 29:15, 29:25, 30:6, 30:18, 31:14, 31:17, 31:21, 32:5, 32:9, 32:11, 32:19, 33:7, 33:8, 34:20, 34:21, 40:10, 50:9, 50:16, 51:21, 52:18, 53:22, 55:8, 55:23, 58:5, 59:22, 61:11, 63:4, 63:24, 70:24
**done** [12] - 5:23, 15:10, 17:2, 17:17, 17:24, 18:3, 18:14, 33:24, 39:22, 41:14, 42:10, 59:7
**door** [1] - 49:12
**dose** [3] - 7:5, 7:21, 68:16
**double** [5] - 12:17,

12:25, 13:1, 13:6, 13:10
**double-check** [5] - 12:17, 12:25, 13:1, 13:6, 13:10
**doubt** [1] - 18:25
**down** [6] - 11:23, 23:25, 35:18, 42:9, 59:17, 59:25
**downstream** [4] - 40:18, 40:21, 41:13, 42:20
**dozens** [1] - 16:17
**draft** [2] - 40:16, 40:17
**drafting** [1] - 56:22
**drug** [3] - 26:10, 28:6, 70:19
**Drugs** [2] - 3:7, 21:9
**Du** [1] - 51:9
**Du's** [1] - 34:16
**Duane** [1] - 7:12
**DUANE** [1] - 2:9
**due** [5] - 34:3, 50:20, 62:1, 69:3, 69:10
**dump** [7] - 14:8, 14:16, 15:21, 15:24, 15:25, 50:1, 51:21
**duplicate** [1] - 29:21
**duplicative** [2] - 23:3, 24:23
**during** [5] - 7:13, 16:13, 49:11, 56:9, 57:1

**E**

**e-mail** [12] - 10:1, 11:25, 12:16, 13:4, 13:13, 24:2, 27:6, 27:11, 30:2, 30:3, 34:9, 34:21
**e-mails** [5] - 22:6, 22:10, 23:10, 34:8
**earliest** [1] - 47:2
**East** [1] - 2:18
**economic** [1] - 67:18
**effort** [4] - 16:15, 16:21, 26:13, 60:11
**efforts** [1] - 32:2
**eight** [3] - 41:3, 41:12
**Eisenhower** [1] - 1:12
**either** [5] - 22:5, 22:9, 45:15, 69:5, 72:14
**eliminate** [1] - 72:16
**Ellis** [1] - 5:8
**ELLIS** [1] - 3:2
**elsewhere** [4] - 29:14, 29:16, 29:22
**emphasize** [1] - 6:7
**encompassed** [3] -

6:7, 6:18, 6:22
**encourage** [1] - 60:19
**end** [15] - 5:20, 31:18, 38:6, 41:3, 43:7, 46:22, 50:19, 50:21, 53:22, 53:23, 60:10, 61:13, 62:6, 63:23, 64:9
**ended** [1] - 26:8
**ends** [1] - 68:23
**engage** [2] - 31:16, 32:9
**ensure** [2] - 29:25, 70:4
**enter** [2] - 4:5, 51:2
**entered** [11] - 7:4, 7:23, 10:10, 10:15, 13:21, 19:9, 20:15, 26:15, 26:22, 42:4, 68:14
**entering** [1] - 20:13
**enters** [1] - 37:25
**entire** [5] - 11:17, 25:20, 47:4, 50:5, 55:6
**entirely** [1] - 26:20
**entirety** [2] - 22:11, 66:5
**entities** [1] - 5:9
**entitled** [4] - 22:18, 23:12, 49:5, 73:13
**entries** [5] - 4:10, 4:21, 24:6, 29:9, 31:23
**envisioned** [1] - 42:19
**equivalent** [1] - 32:7
**ESI** [2] - 7:20, 27:4
**especially** [3] - 24:8, 33:3, 33:23
**ESQUIRE** [17] - 1:12, 1:15, 1:15, 1:18, 1:19, 2:3, 2:6, 2:9, 2:12, 2:13, 2:17, 2:17, 2:20, 2:24, 3:2, 3:3, 3:5
**essence** [1] - 22:5
**essentially** [1] - 23:5
**et** [4] - 11:8, 54:1, 59:23
**evaluations** [1] - 28:1
**Evidence** [1] - 45:8
**exactly** [5] - 11:15, 13:22, 14:11, 17:2, 64:3
**example** [7] - 16:3, 27:6, 27:13, 50:25, 52:15, 58:20, 61:9
**examples** [3] - 22:22, 25:17, 33:10
**except** [3] - 14:12,

20:10, 30:22
**exception** [1] - 27:1
**excess** [1] - 8:11
**executive** [1] - 5:6
**exercise** [2] - 16:20, 37:11
**exhaust** [2] - 31:3, 32:17
**exhausted** [5] - 24:15, 25:13, 25:24, 33:3, 33:16
**Exhibit** [9] - 12:20, 12:22, 12:23, 22:12, 23:16, 28:22, 31:21, 47:3, 65:23
**exhibits** [1] - 12:21
**expansion** [1] - 8:11
**expect** [7] - 10:1, 10:17, 10:18, 11:1, 11:3, 20:9, 72:24
**expectation** [1] - 40:4
**expectations** [1] - 16:22
**expected** [1] - 17:3
**expedite** [1] - 43:2
**expert** [1] - 50:20
**explain** [4] - 6:16, 8:19, 22:1, 49:19
**extended** [1] - 34:2
**extension** [9] - 68:21, 69:2, 69:5, 69:7, 69:11, 69:14, 69:15, 70:8, 71:6
**extent** [5] - 18:17, 19:24, 20:7, 60:4, 60:24
**extraordinary** [2] - 16:1, 16:19

## F

**face** [1] - 51:25
**facilities** [2] - 16:25, 26:24
**fact** [31] - 13:23, 13:24, 22:19, 24:22, 35:4, 36:2, 37:18, 41:24, 49:16, 52:3, 67:1, 67:4, 67:8, 67:10, 67:13, 67:17, 67:20, 67:21, 67:23, 68:13, 68:15, 68:22, 68:24, 69:21, 69:24, 70:2, 70:13, 70:25, 71:4, 71:12
**fair** [3] - 36:3, 63:25, 72:11
**fairness** [1] - 37:17
**faith** [7] - 16:11, 16:20, 17:6, 20:8,

32:21, 43:11, 54:3
**fall** [4] - 18:5, 18:19, 58:4, 61:21
**family** [3] - 22:3, 26:18, 29:17
**fashion** [2] - 11:22, 50:7
**fax** [3] - 10:1, 11:25, 13:13
**FDA** [1] - 51:11
**Federal** [2] - 41:5, 49:4
**federal** [1] - 50:12
**feed** [1] - 31:13
**feedback** [1] - 46:2
**felt** [1] - 68:20
**few** [12] - 25:17, 35:25, 36:11, 36:13, 42:1, 44:12, 44:14, 44:25, 45:2, 45:4, 63:5, 68:3
**field** [1] - 60:1
**fight** [1] - 53:8
**figure** [3] - 32:23, 33:9, 72:8
**file** [9] - 29:20, 30:7, 34:16, 35:5, 36:18, 38:20, 47:17, 48:11, 61:14
**filed** [9] - 14:10, 36:3, 37:10, 38:25, 39:6, 39:14, 45:12, 60:20, 72:7
**files** [2] - 7:20, 22:25
**filing** [2] - 37:20, 39:12
**finally** [1] - 43:16
**fine** [1] - 4:6
**finish** [1] - 14:1
**finished** [4] - 7:5, 7:21, 21:4, 68:16
**first** [22] - 6:1, 7:12, 8:9, 9:1, 18:17, 23:4, 28:23, 29:18, 31:3, 42:2, 47:25, 50:8, 51:1, 53:24, 59:17, 59:19, 64:11, 64:21, 67:6, 67:25, 72:25
**first-line** [1] - 18:17
**firsthand** [1] - 10:14
**five** [3] - 10:25, 27:13, 28:23
**Floor** [1] - 2:24
**Florida** [1] - 2:4
**focus** [1] - 32:1
**focused** [1] - 55:19
**follow** [4] - 35:20, 41:25, 42:1, 70:5
**follow-up** [2] - 42:1, 70:5

**followed** [2] - 35:21, 60:19
**food** [1] - 64:12
**FOR** [1] - 1:2
**forefront** [1] - 28:4
**foregoing** [1] - 73:12
**forging** [1] - 73:6
**form** [10] - 35:9, 35:17, 36:5, 36:6, 36:15, 36:19, 36:24, 37:20, 39:6, 39:14
**forth** [1] - 21:12
**forthcoming** [1] - 43:2
**forward** [2] - 17:3, 64:19
**four** [5] - 27:13, 28:23, 55:21, 60:22, 61:5
**frankly** [7] - 31:24, 41:4, 49:20, 51:16, 51:19, 54:20, 61:14
**free** [1] - 24:3
**FREEMAN** [1] - 1:11
**Friedlander** [2] - 1:23, 73:15
**friedlanderreporter @gmail.com** [1] - 1:23
**frustrated** [1] - 14:25
**frustrating** [1] - 54:9
**full** [5] - 22:5, 24:2, 30:3, 51:15, 65:1
**fulsome** [1] - 52:5
**functional** [1] - 32:7

## G

**general** [1] - 58:20
**generic** [1] - 59:10
**Geoppinger** [3] - 5:12, 40:8, 67:3
**GEOPPINGER** [6] - 2:20, 5:11, 40:8, 67:2, 68:5, 68:9
**Georgia** [1] - 2:14
**given** [12] - 16:1, 16:23, 36:1, 36:4, 48:19, 52:8, 52:14, 52:19, 53:25, 54:22, 66:4
**global** [2] - 16:13, 42:22
**globe** [2] - 26:11, 28:2, 28:5
**Goeppinger** [1] - 69:4
**GOLDBERG** [29] - 2:9, 4:23, 7:11, 15:16, 15:18, 17:10, 17:18, 18:22, 30:11, 37:4, 39:21, 43:22, 44:5, 44:20, 44:24, 45:21,

48:6, 48:16, 55:17, 56:19, 57:10, 58:15, 60:15, 60:17, 62:2, 62:5, 62:13, 62:15, 63:16, 63:19, 65:12, 66:20, 66:23, 72:2, 73:3
**Goldberg** [26] - 4:24, 7:12, 9:11, 15:16, 18:23, 37:2, 37:3, 37:25, 39:19, 43:18, 45:11, 47:19, 49:1, 50:14, 52:15, 55:17, 56:12, 56:19, 57:9, 58:16, 60:17, 62:15, 65:6, 66:11, 66:19, 72:1
**Goldberg's** [3] - 64:2, 65:2, 68:2
**Goldenberg** [3] - 35:3, 37:22, 39:8
**GOLDENBERG** [12] - 2:5, 2:6, 35:2, 35:13, 35:24, 36:11, 36:17, 37:14, 37:24, 38:14, 39:9, 39:16
**GOLOMB** [1] - 1:14
**GORDON** [1] - 2:23
**gotcha** [1] - 53:22
**granted** [2] - 47:16, 70:8
**great** [1] - 13:15
**Greek** [1] - 59:18
**GREENBERG** [1] - 2:12
**Greenburg** [1] - 5:1
**ground** [4] - 58:3, 58:7, 59:16, 59:25
**grounds** [1] - 48:24
**Group** [2] - 2:11, 2:25
**guarantee** [1] - 38:8
**guess** [4] - 52:21, 53:13, 53:21, 69:8
**guidance** [4] - 29:11, 29:23, 60:4, 60:25

## H

**Hague** [4] - 45:8, 45:17, 54:16, 64:24
**half** [4] - 8:14, 8:16, 68:19, 68:24
**hand** [3] - 8:17, 21:20, 64:2
**handle** [1] - 45:19
**happy** [5] - 21:2, 31:7, 37:17, 39:10, 69:14
**harder** [3] - 13:25, 28:5, 33:25
**Harkins** [1] - 5:3

**HARKINS** [1] - 2:13
**head** [2] - 58:14, 60:11
**Health** [1] - 2:19
**hear** [6] - 4:6, 7:10, 9:23, 15:17, 17:16, 58:12
**heard** [3] - 13:14, 33:16, 49:13
**hearing** [1] - 55:20
**hearings** [1] - 7:14
**heavily** [1] - 59:20
**heavy** [2] - 49:17, 58:10
**HEINZ** [2] - 20:19, 20:22
**held** [2] - 55:6, 58:7
**help** [2] - 43:2, 60:2
**Hetero** [5] - 3:7, 21:6, 21:9
**Hi** [1] - 21:23
**HILL** [1] - 3:5
**HILTON** [7] - 1:19, 21:23, 24:16, 28:19, 31:7, 32:6, 34:12
**Hilton** [5] - 21:24, 25:10, 26:3, 30:14, 34:12
**hip** [1] - 14:24
**hold** [4] - 30:12, 37:20, 47:15, 58:6
**holding** [1] - 61:22
**holistic** [1] - 29:25
**honest** [1] - 44:10
**Hong** [2] - 50:24, 58:9
**Honik** [1] - 4:15
**HONIK** [3] - 1:14, 1:15, 4:15
**Honor** [113] - 4:12, 4:13, 4:23, 4:25, 6:3, 6:19, 7:11, 7:13, 7:19, 8:3, 8:8, 12:10, 12:19, 12:23, 14:4, 14:6, 15:7, 15:16, 15:18, 17:10, 17:13, 17:18, 17:25, 18:22, 19:8, 20:16, 20:19, 20:22, 21:8, 21:10, 21:23, 25:6, 25:12, 26:1, 26:22, 27:6, 28:3, 28:19, 28:21, 30:11, 31:7, 32:6, 34:12, 35:2, 36:18, 37:4, 37:14, 38:14, 39:9, 39:21, 40:1, 40:5, 40:8, 41:15, 41:18, 41:19, 42:2, 42:7, 42:11, 42:15, 43:15, 43:17, 43:22, 44:8, 44:21, 44:25, 45:21, 46:18, 47:4,

*48:6, 48:7, 48:11, 48:16, 49:10, 49:12, 50:10, 50:17, 51:2, 51:19, 53:16, 53:23, 54:2, 54:6, 54:14, 54:22, 55:17, 56:20, 57:13, 57:24, 57:25, 58:15, 60:7, 60:15, 60:17, 60:18, 61:3, 61:9, 62:3, 62:13, 62:15, 64:12, 65:12, 65:13, 65:18, 66:24, 67:2, 67:3, 69:18, 70:1, 70:10, 72:2, 73:3*

**HONORABLE** [1] - 1:9
**Honors** [6] - 4:15, 4:17, 4:19, 5:11, 5:14, 21:24
**hope** [5] - 19:15, 36:5, 39:3, 47:11, 52:12
**hopefully** [2] - 59:13, 71:23
**hopes** [1] - 31:12
**hours** [2] - 31:22, 52:22
**housed** [1] - 16:12
**hundred** [5] - 16:6, 16:17, 22:23, 31:2, 51:15
**hundreds** [2] - 16:5, 52:17
**hungry** [1] - 64:12
**hypothetical** [3] - 62:7, 62:8, 63:9

**I**

**idea** [3] - 41:11, 52:2, 65:7
**identical** [1] - 44:11
**identified** [12] - 25:3, 31:19, 31:20, 31:21, 32:18, 34:15, 44:25, 45:4, 45:9, 60:22, 61:6, 67:25
**identify** [8] - 7:23, 24:9, 30:19, 31:16, 62:9, 67:22, 70:19, 71:1
**identifying** [1] - 65:24
**imminent** [1] - 32:3
**impact** [1] - 38:25
**impetus** [1] - 31:8
**implicate** [2] - 60:1, 60:3
**implicated** [1] - 60:23
**implications** [1] - 47:24
**implicit** [1] - 41:19

**implying** [1] - 23:1
**important** [9] - 22:1, 25:25, 32:19, 45:24, 46:23, 47:24, 50:22, 57:20, 60:9
**imposed** [1] - 35:5
**impossible** [1] - 23:15
**impractical** [1] - 48:14
**improperly** [5] - 20:1, 21:25, 23:18, 25:22, 34:7
**IN** [1] - 1:4
**in-camera** [3] - 9:25, 10:2, 11:25
**inappropriate** [1] - 51:22
**inappropriately** [1] - 23:7
**Inc** [3] - 2:15, 2:15, 5:16
**inclined** [1] - 12:6
**include** [5] - 8:11, 9:16, 14:15, 28:25, 49:15
**included** [5] - 22:3, 23:16, 35:25, 48:7, 66:9
**incredible** [1] - 16:2
**incredibly** [3] - 26:6, 26:9, 28:15
**indemnification** [13] - 6:1, 6:17, 7:3, 7:17, 8:2, 8:7, 8:15, 9:1, 9:5, 9:8, 9:13, 9:17, 9:21
**Indian** [2] - 44:7, 44:9
**indicated** [1] - 55:25
**indicating** [1] - 25:16
**indication** [1] - 11:2
**indicator** [1] - 61:20
**indignation** [1] - 50:14
**individuals** [1] - 6:25
**Industries** [1] - 2:14
**inform** [2] - 24:22, 55:20
**information** [16] - 16:2, 16:4, 16:6, 16:7, 16:9, 16:22, 18:24, 43:1, 43:16, 60:23, 61:22, 67:8, 67:9, 69:20, 71:1, 71:8
**informing** [1] - 34:14
**initial** [2] - 67:20, 70:13
**injury** [3] - 36:21, 37:1, 67:19
**insights** [1] - 64:7
**inspection** [1] - 10:2
**inspections** [1] -

51:11
**instance** [2] - 23:4, 59:20
**instead** [1] - 32:25
**insufficient** [1] - 10:13
**insurance** [5] - 7:24, 8:6, 8:9, 8:10, 9:4
**intelligently** [1] - 65:9
**intend** [1] - 21:14
**intended** [2] - 9:18, 9:19
**interference** [1] - 13:8
**interim** [1] - 64:16
**interpret** [2] - 9:3, 9:15
**interrupt** [1] - 15:19
**introduce** [1] - 4:8
**investigated** [1] - 25:16
**investigating** [1] - 21:13
**involve** [1] - 45:17
**involved** [5] - 25:22, 26:4, 37:18
**involves** [1] - 27:7
**involving** [1] - 28:12
**Irbesartan** [8] - 35:21, 35:22, 35:24, 36:12, 36:19, 36:24, 36:25, 37:10
**IRBESARTAN** [1] - 1:5
**Israeli** [1] - 44:21
**issue** [126] - 6:1, 6:14, 6:23, 7:13, 7:17, 8:5, 8:14, 8:16, 8:19, 9:2, 9:6, 9:13, 9:22, 9:25, 10:7, 10:12, 10:23, 10:24, 12:4, 12:9, 13:14, 13:16, 14:5, 19:18, 20:4, 21:19, 21:25, 23:5, 24:14, 24:16, 24:18, 25:14, 25:15, 26:1, 26:6, 26:12, 27:19, 27:23, 28:4, 29:2, 29:5, 30:23, 30:24, 31:3, 32:14, 32:16, 32:24, 33:2, 33:9, 33:11, 34:4, 34:7, 34:14, 34:15, 34:25, 38:13, 38:23, 39:13, 39:24, 42:13, 43:13, 45:22, 45:23, 46:3, 46:8, 46:13, 46:18, 46:21, 47:5, 47:23, 48:2, 48:10, 48:22, 48:25, 49:6, 49:21, 53:12, 53:16, 54:5, 54:21, 55:11, 55:13, 55:18,

55:20, 56:3, 56:8, 56:15, 56:21, 57:1, 57:4, 57:11, 57:17, 57:21, 57:22, 58:2, 58:10, 58:20, 58:21, 58:24, 59:1, 59:5, 59:18, 59:24, 60:3, 60:4, 61:16, 61:25, 63:2, 63:22, 64:18, 64:20, 66:25, 67:4, 68:20, 69:13, 71:22, 72:3, 72:6, 72:9, 72:12, 72:15, 73:1
**issued** [1] - 8:8
**issues** [56] - 5:19, 5:22, 5:23, 10:20, 10:25, 14:5, 17:4, 20:25, 21:13, 21:15, 21:21, 29:7, 32:15, 32:18, 33:14, 35:19, 37:12, 39:17, 40:5, 40:10, 40:20, 40:25, 42:5, 43:19, 43:21, 44:16, 44:25, 45:2, 45:4, 45:9, 45:13, 45:14, 45:19, 45:24, 47:18, 47:21, 47:25, 48:4, 48:5, 48:8, 48:19, 49:13, 49:19, 54:25, 55:1, 60:25, 61:1, 61:4, 64:24, 66:8, 66:21, 72:1, 72:5
**Issues** [4] - 47:19, 65:1, 66:10, 66:16
**items** [1] - 6:21
**iterative** [2] - 23:23, 32:10
**itself** [1] - 57:18

**J**

**jam** [1] - 50:6
**January** [11] - 38:11, 38:17, 48:22, 67:11, 68:1, 68:8, 68:16, 69:3, 72:14, 72:25
**Jeff** [3] - 5:11, 40:8, 67:3
**JEFFREY** [1] - 2:20
**JERSEY** [1] - 1:2
**Jersey** [4] - 1:13, 49:3, 51:10, 56:13
**job** [1] - 58:24
**jobs** [1] - 50:7
**JOEL** [1] - 1:9
**John** [2] - 34:16, 51:9
**JOHN** [1] - 1:15
**Johnston** [1] - 5:15
**JOHNSTON** [2] - 2:17,

5:14
**joinder** [1] - 36:4
**joined** [1] - 14:5
**Joint** [2] - 2:11, 2:25
**JPML** [1] - 37:19
**JUDGE** [1] - 1:9
**Judge** [19] - 3:9, 4:13, 5:1, 11:12, 11:20, 14:21, 18:7, 32:25, 38:24, 51:5, 58:25, 59:9, 59:12, 61:7, 68:11, 68:14, 71:20
**judge** [1] - 50:12
**July** [2] - 8:5, 42:5
**jump** [1] - 49:2
**June** [2] - 8:5, 8:9

**K**

**KANNER** [1] - 1:18
**Karen** [3] - 1:23, 73:6, 73:15
**KATZ** [1] - 1:11
**keep** [1] - 23:25
**keeps** [1] - 53:17
**kept** [2] - 15:1, 51:14
**key** [3] - 26:22, 27:3, 51:11
**kind** [4] - 41:5, 48:17, 62:22
**Kirkland** [2] - 5:8, 5:9
**KIRKLAND** [1] - 3:2
**knowing** [2] - 59:11, 61:5
**knowledge** [3] - 10:14, 10:20, 38:8
**knowledgeable** [1] - 10:19
**knows** [3] - 7:19, 42:7, 59:16
**Kong** [2] - 50:24, 58:9
**KRISTEN** [1] - 2:17
**Kristin** [1] - 70:10
**Kugler** [6] - 11:12, 11:20, 38:24, 68:14, 71:21

**L**

**Labs** [2] - 3:7, 21:9
**language** [4] - 9:2, 23:20, 48:7, 57:19
**Lasalle** [1] - 2:6
**last** [22] - 5:18, 12:16, 13:21, 25:9, 25:12, 25:15, 27:23, 33:21, 35:14, 40:14, 42:3, 42:8, 42:9, 45:1, 50:10, 50:16, 54:23, 55:20, 60:21, 68:3,

71:12
**late** [2] - 5:18, 14:14
**Laughter** [1] - 64:13
**law** [3] - 10:11, 45:18, 54:23
**LAW** [1] - 2:5
**laws** [4] - 45:7, 45:17, 48:11, 54:16
**lawyer** [11] - 45:25, 46:4, 46:15, 46:20, 47:8, 54:16, 54:18, 56:4, 56:5, 56:23, 57:12
**lawyers** [3] - 56:24, 57:15, 62:23
**lay** [2] - 49:20, 50:3
**laying** [1] - 51:13
**Layne** [2] - 21:24, 34:12
**LAYNE** [1] - 1:19
**lead** [1] - 49:21
**least** [15] - 4:6, 15:13, 31:4, 39:5, 39:13, 42:13, 42:18, 47:5, 55:3, 57:18, 60:1, 60:5, 61:22, 61:24, 66:17
**leave** [1] - 47:17
**leaving** [1] - 35:21
**LEE** [1] - 2:17
**left** [3] - 11:7, 23:14, 25:19
**legal** [7] - 45:2, 45:12, 45:13, 48:4, 48:5, 58:21, 64:24
**legitimate** [3] - 54:25, 55:10, 61:8
**legitimately** [1] - 61:14
**length** [5] - 45:6, 49:17, 52:13, 53:11, 66:12
**less** [2] - 22:22, 56:23
**letter** [33] - 5:22, 5:23, 5:25, 6:5, 10:6, 12:18, 12:19, 13:9, 13:17, 14:8, 25:15, 28:22, 30:16, 33:3, 36:2, 38:18, 43:19, 43:23, 44:24, 45:14, 45:15, 47:3, 49:15, 51:2, 60:20, 60:21, 60:23, 65:2, 65:23, 66:16, 66:19, 68:3
**letters** [4] - 5:18, 5:19, 42:14, 48:2
**level** [2] - 57:22, 59:14
**LEVIN** [1] - 2:2
**Lexington** [1] - 3:3
**LIABILITY** [1] - 1:5

**liaison** [1] - 5:4
**lift** [1] - 49:17
**light** [2] - 11:4, 38:16
**likely** [3] - 4:7, 27:11, 63:5
**limitations** [4] - 37:23, 38:3, 38:22, 39:13
**limited** [3] - 26:23, 26:25, 53:9
**line** [3] - 4:5, 18:17, 57:7
**list** [19] - 6:21, 11:5, 11:6, 12:5, 23:17, 24:21, 31:22, 51:1, 51:3, 52:4, 65:14, 65:17, 65:24, 66:2, 66:3, 66:4, 66:11
**listening** [1] - 54:9
**literally** [1] - 52:4
**litigate** [2] - 53:16, 58:5
**litigated** [1] - 60:5
**litigating** [1] - 53:2
**litigation** [4] - 7:25, 27:1, 43:13, 55:6
**LITIGATION** [1] - 1:5
**live** [1] - 39:5
**lived** [1] - 39:3
**LLC** [3] - 1:11, 1:18, 2:15
**LLP** [7] - 2:9, 2:12, 2:16, 2:20, 2:23, 3:2, 3:5
**local** [1] - 72:19
**locations** [2] - 22:25, 24:12
**Lockard** [4] - 5:2, 17:25, 18:8, 19:22
**LOCKARD** [2] - 17:25, 18:11
**log** [10] - 18:14, 19:4, 55:8, 62:1, 62:6, 62:8, 63:23, 64:8, 64:17, 64:23
**logistics** [1] - 52:12
**logs** [2] - 65:3, 66:18
**long-form** [3] - 36:15, 36:19, 37:20
**look** [17] - 23:9, 27:18, 28:5, 28:17, 30:16, 30:20, 32:4, 33:7, 47:13, 59:21, 60:7, 60:20, 64:14, 65:23, 71:1
**looked** [4] - 27:23, 38:17, 57:3, 70:24
**looking** [7] - 17:3, 21:18, 29:19, 38:14, 44:11, 47:10, 68:2
**looks** [1] - 43:20

**Lori** [1] - 4:25
**LORI** [1] - 2:12
**Los** [1] - 2:18
**LOSARTAN** [1] - 1:4
**Losartan** [10] - 34:25, 36:12, 36:16, 36:19, 36:23, 36:25, 37:9, 38:25, 39:7, 39:23
**losing** [1] - 11:19
**loss** [1] - 67:18
**Louisiana** [1] - 1:20
**Ltd** [1] - 2:14

## M

**macro** [4] - 26:14, 26:20, 27:4, 30:5
**Magistrate** [1] - 3:9
**MAGISTRATE** [1] - 1:9
**mail** [13] - 10:1, 11:25, 12:15, 12:16, 13:4, 13:13, 24:2, 27:6, 27:11, 30:2, 30:3, 34:9, 34:21
**mails** [5] - 22:6, 22:10, 23:10, 34:8
**major** [1] - 54:23
**manageable** [1] - 32:8
**Management** [1] - 47:14
**management** [3] - 7:14, 45:1, 45:5
**manufacture** [1] - 7:21
**manufactured** [1] - 26:24
**manufacturer** [1] - 68:18
**manufacturers** [2] - 41:22, 68:24
**manufacturing** [3] - 9:16, 16:16, 27:10
**March** [5] - 47:2, 48:20, 50:18, 50:19, 68:17
**marked** [1] - 27:25
**Market** [1] - 1:16
**marketing** [1] - 6:25
**MARLENE** [1] - 2:6
**Marlene** [1] - 35:2
**massive** [2] - 49:24, 52:16
**Master** [4] - 34:25, 37:8, 37:9, 39:23
**materials** [1] - 71:7
**matter** [3] - 4:4, 34:21, 73:13
**mattered** [1] - 15:22
**matters** [1] - 40:20
**MAZIE** [1] - 1:11

**MDL** [3] - 37:18, 56:5, 56:6
**mean** [12] - 15:19, 23:14, 35:16, 39:3, 49:10, 49:19, 50:1, 51:5, 51:8, 62:10, 63:13
**meaning** [1] - 68:15
**means** [3] - 29:20, 71:14, 72:16
**mechanical** [1] - 1:25
**medical** [1] - 36:22
**meet** [22] - 13:16, 19:12, 21:14, 24:21, 25:14, 25:24, 26:7, 30:15, 31:4, 31:7, 32:10, 32:17, 32:23, 33:4, 34:1, 34:17, 35:5, 40:3, 40:9, 40:19, 40:23, 52:24
**meet-and-confer** [5] - 25:14, 30:15, 31:4, 32:10, 40:3
**meeting** [1] - 34:23
**meets** [1] - 10:22
**mention** [1] - 40:13
**mentioned** [2] - 65:23, 67:22
**mere** [1] - 22:13
**met** [1] - 24:13
**metadata** [2] - 23:9, 23:19
**mid** [1] - 48:22
**mid-January** [1] - 48:22
**middle** [1] - 50:19
**midst** [1] - 30:14
**might** [11] - 27:6, 32:1, 37:22, 38:3, 38:13, 43:21, 47:21, 60:23, 60:25, 63:8, 70:11
**millions** [1] - 16:5
**mine** [1] - 26:10
**Minneapolis** [1] - 2:7
**Minnesota** [1] - 2:7
**minute** [1] - 12:25
**missed** [1] - 32:22
**moment** [3] - 13:9, 30:12, 64:17
**monitoring** [1] - 36:22
**month** [14] - 15:1, 16:3, 38:6, 50:10, 50:11, 50:16, 61:13, 62:6, 63:23, 64:9, 68:18, 68:24
**months** [1] - 51:20
**moreover** [1] - 23:18
**morning** [1] - 4:12
**Morris** [1] - 7:12
**MORRIS** [1] - 2:9

**most** [9] - 6:23, 16:8, 36:12, 50:22, 52:7, 53:5, 53:24, 57:20, 59:18
**motion** [7] - 18:2, 37:7, 37:11, 45:12, 46:21, 47:17, 61:14
**motions** [3] - 38:6, 42:23, 72:7
**move** [4] - 61:9, 61:24, 64:18, 72:10
**moving** [2] - 8:2, 66:19
**MR** [85] - 4:12, 4:15, 4:17, 4:23, 5:5, 5:11, 6:3, 6:6, 6:19, 7:9, 7:11, 12:10, 12:16, 12:19, 12:23, 13:3, 14:4, 14:21, 15:16, 15:18, 17:10, 17:18, 18:22, 19:7, 20:16, 21:8, 21:20, 25:6, 25:9, 25:12, 30:11, 37:4, 39:21, 40:1, 40:8, 41:15, 41:18, 42:15, 42:17, 43:15, 43:22, 44:2, 44:5, 44:8, 44:19, 44:20, 44:24, 45:21, 48:6, 48:16, 49:10, 49:18, 54:14, 55:17, 56:19, 57:10, 57:24, 58:15, 59:12, 60:15, 60:17, 61:7, 62:2, 62:5, 62:13, 62:14, 62:15, 63:16, 63:18, 63:19, 64:11, 64:14, 65:12, 66:20, 66:23, 67:2, 68:5, 68:9, 68:11, 69:4, 69:9, 70:1, 72:2, 73:3, 73:4
**MS** [25] - 4:19, 4:25, 5:7, 5:14, 17:25, 18:11, 20:19, 20:22, 21:23, 24:16, 28:19, 31:7, 32:6, 34:12, 35:2, 35:13, 35:24, 36:11, 36:17, 37:14, 37:24, 38:14, 39:9, 39:16, 70:10
**multiple** [1] - 6:12
**multiply** [1] - 16:16
**must** [1] - 70:2
**mute** [3] - 8:22, 13:7, 46:1
**Mylan** [33] - 2:25, 5:6, 19:6, 19:8, 19:14, 20:14, 22:8, 24:17, 24:20, 25:2, 25:3, 25:16, 27:10, 28:1,

28:20, 29:24, 30:10, 30:13, 30:15, 30:21, 31:5, 31:8, 31:10, 31:13, 31:24, 32:4, 32:11, 32:14, 32:17, 32:18, 32:23, 33:7, 33:12
**Mylan's** [1] - 30:19

## N

**Nagle** [1] - 5:9
**NAGLE** [1] - 3:3
**Nakul** [1] - 21:8
**NAKUL** [1] - 3:5
**name** [4] - 4:9, 30:7, 52:9, 53:25
**names** [3] - 52:7, 52:8, 53:1
**narrow** [3] - 55:21, 59:25, 61:6
**nature** [1] - 28:11
**NE** [1] - 2:13
**necessarily** [3] - 42:18, 48:12, 61:8
**necessary** [3] - 41:25, 46:17, 46:19
**need** [25] - 6:12, 13:12, 15:10, 19:17, 21:19, 23:22, 26:18, 42:10, 44:12, 45:2, 48:4, 48:9, 53:2, 53:6, 54:3, 54:4, 54:10, 55:12, 56:8, 57:20, 59:19, 61:23, 70:2
**needed** [4] - 18:11, 52:20, 57:19, 71:2
**needs** [2] - 46:10, 58:2
**negotiate** [4] - 24:7, 31:10, 53:11, 54:3
**negotiations** [2] - 7:14, 70:20
**never** [2] - 8:15, 53:8
**new** [8] - 11:4, 36:9, 36:13, 36:16, 38:1, 40:15, 41:1, 43:21
**NEW** [1] - 1:2
**New** [6] - 1:13, 1:20, 3:4, 49:3, 51:10, 56:13
**next** [11] - 13:16, 18:23, 20:9, 34:7, 34:25, 40:19, 40:20, 41:10, 42:14, 43:13, 45:5
**NIGH** [2] - 2:3, 4:17
**Nigh** [1] - 4:18
**night** [3] - 5:18, 12:16, 40:14

**nitrosamine** [4] - 27:2, 28:1, 28:4, 28:10
**nitrosamines** [1] - 28:6
**NJ** [1] - 3:6
**nobody** [2] - 52:3, 52:8
**noise** [1] - 8:23
**non** [2] - 49:6, 56:13
**non-New** [1] - 56:13
**non-U.S** [1] - 49:6
**nonadmitted** [1] - 56:14
**none** [1] - 21:1
**nonresponsive** [7] - 18:4, 18:9, 22:15, 23:13, 26:17, 27:25, 28:24
**normal** [3] - 23:6, 46:8, 58:23
**normally** [1] - 68:12
**note** [2] - 41:8, 46:23
**noted** [1] - 22:7
**nothing** [6] - 43:8, 43:16, 57:14, 57:15, 73:3, 73:4
**notice** [3] - 13:19, 13:23, 66:5
**notices** [4] - 40:16, 40:17, 41:2, 43:3
**noting** [1] - 15:20
**November** [9] - 14:10, 15:23, 16:9, 19:10, 47:12, 55:25, 62:6, 67:5, 68:7
**null** [4] - 19:14, 19:18, 20:10, 20:14
**NUMBER** [1] - 1:4
**number** [12] - 8:12, 11:15, 22:24, 32:8, 49:16, 52:3, 53:2, 53:5, 53:6, 53:9, 54:12, 66:11
**numbers** [1] - 13:12
**numerous** [1] - 26:7
**NY** [1] - 3:4

## O

**object** [2] - 54:18, 68:10
**objected** [2] - 9:14, 46:4
**objection** [15] - 46:16, 47:8, 47:9, 48:23, 49:2, 49:9, 56:7, 56:9, 56:17, 56:18, 56:24, 57:14, 57:22, 59:8, 62:9
**objections** [10] - 41:1,

43:24, 49:5, 49:8, 56:14, 57:7, 57:8, 57:21, 62:23, 64:9
**obligated** [1] - 18:14
**obligation** [4] - 17:7, 23:2, 29:6, 56:7
**obligations** [2] - 30:15, 31:4
**observed** [1] - 29:3
**obviously** [12] - 6:12, 14:22, 14:25, 15:5, 15:17, 29:15, 38:24, 43:7, 46:20, 47:2, 47:12, 60:8
**occasions** [1] - 26:7
**October** [4] - 66:7, 69:11, 70:15
**OF** [1] - 1:2
**offender** [1] - 25:3
**offer** [1] - 53:7
**Official** [1] - 1:23
**OH** [1] - 2:22
**once** [2] - 19:8, 64:14
**One** [1] - 2:24
**one** [38] - 8:9, 8:10, 9:24, 11:12, 13:9, 14:22, 15:6, 15:9, 23:5, 26:23, 27:8, 29:16, 30:1, 30:2, 30:12, 31:9, 33:5, 36:7, 36:21, 36:25, 44:2, 45:24, 49:10, 50:23, 52:9, 53:25, 55:6, 55:11, 56:9, 57:5, 61:9, 61:17, 61:19, 62:9, 68:22, 72:3
**ones** [3] - 31:18, 68:16, 68:18
**ongoing** [1] - 19:12
**opens** [1] - 49:12
**order** [38] - 6:15, 8:24, 9:24, 10:10, 10:15, 10:21, 11:4, 11:24, 12:4, 13:21, 14:13, 19:9, 20:13, 20:14, 33:18, 37:15, 38:1, 39:2, 41:20, 41:23, 42:9, 43:25, 45:11, 46:22, 47:10, 47:12, 47:17, 48:8, 51:2, 52:5, 53:23, 66:3, 68:14, 69:25, 71:12, 72:4, 72:24
**Order** [1] - 47:14
**ordered** [5] - 7:7, 19:18, 28:2, 70:9, 70:14
**ordering** [1] - 28:6
**orders** [2] - 8:8, 43:9

**ordinarily** [1] - 59:6
**originally** [1] - 69:10
**Orleans** [1] - 1:20
**orphan** [1] - 35:23
**otherwise** [3] - 21:15, 35:6, 58:8
**ought** [1] - 65:6
**outlined** [1] - 19:22
**outside** [1] - 61:21
**overlap** [1] - 36:3
**overlook** [1] - 24:25
**overly** [1] - 26:12
**own** [2] - 29:1, 35:5
**Oxford** [1] - 2:24

## P

**p.m** [2] - 1:8, 73:9
**P.M** [1] - 4:2
**PACER** [2] - 13:1, 13:3
**Page** [4] - 34:9, 44:24, 60:21, 65:2
**page** [1] - 68:3
**pages** [5] - 16:5, 28:23
**pandemic** [1] - 16:13
**PAPANTONIO** [1] - 2:2
**paper** [1] - 33:21
**papers** [1] - 72:7
**parameters** [2] - 59:25, 60:5
**paranoid** [2] - 14:25, 51:15
**Park** [1] - 2:18
**Parkway** [1] - 1:12
**part** [7] - 7:3, 22:3, 23:11, 25:19, 31:11, 61:15, 70:20
**participating** [1] - 54:20
**particular** [3] - 54:5, 67:7
**particularly** [2] - 26:9, 32:19
**PARTIES** [1] - 4:1
**parties** [24] - 4:24, 6:10, 11:14, 23:25, 25:13, 26:16, 26:19, 31:3, 32:17, 33:3, 33:25, 34:17, 38:2, 40:2, 40:19, 42:1, 42:3, 45:25, 46:4, 46:15, 46:24, 48:1, 56:10, 72:4
**parties'** [1] - 5:18
**parts** [1] - 60:1
**party** [5] - 11:19, 19:4, 72:7, 72:15, 72:25
**past** [3] - 35:9, 39:10,

51:14
**patience** [1] - 64:15
**pattern** [1] - 50:2
**pay** [1] - 23:20
**payments** [1] - 6:10
**PC** [1] - 1:14
**pencil** [1] - 30:24
**pending** [3] - 19:19, 37:8, 42:23
**Pennsacola** [1] - 2:4
**Pennsylvania** [3] - 1:16, 2:10, 2:25
**people** [5] - 4:5, 4:7, 53:7, 53:10, 58:24
**percent** [5] - 25:5, 50:8, 50:16, 51:16, 66:1
**percentage** [1] - 14:9
**perception** [1] - 19:1
**perfect** [2] - 39:3, 39:5
**performed** [1] - 52:18
**perhaps** [3] - 31:15, 50:18, 69:18
**period** [4] - 16:3, 38:3, 44:11, 70:5
**person** [4] - 10:19, 15:1, 57:5, 57:6
**personal** [6] - 10:20, 34:9, 36:21, 37:1, 38:8, 67:19
**pertaining** [1] - 7:20
**Pharma** [1] - 2:15
**Pharmaceutical** [1] - 2:14
**Pharmaceuticals** [1] - 2:15
**pharmacies** [3] - 67:21, 70:19, 71:7
**pharmacy** [9] - 5:15, 67:5, 69:8, 70:8, 70:11, 70:12, 70:14, 70:21, 71:5
**Pharmacy** [1] - 5:16
**Philadelphia** [2] - 1:16, 2:10
**phone** [5] - 8:22, 13:7, 20:18, 21:7, 45:20
**phones** [1] - 46:1
**phrase** [2] - 44:3, 44:5
**piece** [1] - 33:21
**Piedmont** [1] - 2:13
**PIETRAGALLO** [1] - 2:23
**pile** [1] - 11:17
**Pittsburgh** [1] - 2:25
**place** [1] - 20:9
**Plaintiff** [5] - 1:13, 1:17, 1:20, 2:4, 2:8
**plaintiff** [9] - 4:11, 11:4, 19:12, 26:14,

27:16, 33:6, 38:10, 65:6, 67:7
**plaintiff's** [1] - 63:11
**plaintiffs** [75] - 4:14, 4:16, 4:18, 4:20, 7:16, 8:1, 8:7, 8:14, 12:2, 13:13, 16:8, 17:4, 17:14, 18:25, 19:2, 19:16, 19:17, 20:3, 20:4, 21:1, 21:12, 21:14, 21:15, 21:24, 23:1, 24:1, 24:4, 24:5, 25:15, 28:13, 29:20, 33:13, 33:17, 33:18, 34:13, 35:3, 35:17, 37:1, 37:5, 37:18, 38:3, 40:2, 40:10, 43:23, 46:3, 46:14, 47:7, 50:6, 50:17, 60:19, 60:24, 61:5, 61:6, 61:7, 62:19, 65:8, 65:13, 65:14, 66:6, 66:7, 67:12, 67:15, 67:18, 67:19, 68:10, 68:12, 69:8, 70:7, 70:16, 70:20, 70:24, 71:5, 71:20, 72:18, 73:4
**plaintiffs'** [10] - 5:21, 8:25, 9:8, 9:20, 23:24, 28:22, 29:8, 38:22, 66:1, 66:5
**plan** [5] - 36:18, 38:4, 38:12, 38:19, 50:5
**planning** [1] - 39:17
**played** [1] - 42:20
**plays** [1] - 62:21
**pleading** [1] - 37:16
**PLLC** [1] - 2:5
**point** [15] - 22:21, 29:16, 30:8, 32:8, 37:21, 40:23, 48:12, 52:25, 54:10, 55:8, 59:12, 60:10, 64:16, 71:4, 71:6
**pointed** [1] - 25:21
**policies** [1] - 8:11
**poor** [1] - 56:22
**portfolio** [1] - 28:8
**portion** [1] - 22:17
**position** [6] - 8:4, 19:21, 24:4, 29:21, 54:11, 70:2
**positions** [1] - 53:19
**possibly** [2] - 29:3, 55:22
**post-2018** [1] - 28:10
**potential** [2] - 55:22, 65:15

**potentially** [6] - 29:23, 37:24, 55:2, 58:5, 60:9, 68:21
**practice** [1] - 49:4
**practicing** [1] - 56:4
**pre-2018** [1] - 27:1
**precisely** [1] - 64:3
**predict** [1] - 63:7
**predicted** [1] - 18:4
**prefer** [1] - 37:20
**prejudice** [5] - 15:14, 38:2, 38:22, 39:12, 68:21
**prejudiced** [3] - 14:15, 33:19, 69:19
**prejudicial** [1] - 42:6
**preliminarily** [1] - 24:18
**premature** [3] - 54:12, 56:3, 56:8
**prepare** [2] - 12:5, 15:15
**prepared** [1] - 66:18
**preparing** [2] - 32:2, 65:21
**presence** [2] - 27:2, 56:13
**present** [5] - 34:6, 46:15, 47:8, 56:23, 57:12
**presented** [1] - 54:7
**preserved** [1] - 57:20
**preserving** [2] - 38:18, 55:5
**presumably** [1] - 63:9
**pretty** [8] - 6:15, 6:21, 9:2, 33:24, 34:19, 50:4, 61:20, 72:22
**prevent** [2] - 61:2, 63:7
**pricing** [1] - 7:1
**Princeton** [1] - 3:6
**printed** [2] - 12:24, 13:1
**prioritization** [1] - 16:8
**prioritized** [2] - 16:9, 52:4
**priority** [3] - 65:14, 66:2, 66:4
**privacy** [2] - 45:7, 45:16
**private** [1] - 6:25
**privilege** [27] - 18:14, 19:4, 46:10, 46:11, 48:25, 55:8, 56:17, 57:21, 58:21, 59:8, 59:11, 59:15, 62:1, 62:8, 62:9, 62:12, 62:17, 62:22, 63:11,

63:14, 63:23, 63:24, 64:8, 64:17, 64:23, 65:3, 66:17
**privileged** [4] - 18:17, 18:19, 19:24, 20:1
**proactively** [1] - 31:16
**problem** [7] - 23:24, 30:4, 39:16, 49:5, 49:23, 56:20, 58:18
**problems** [1] - 35:19
**procedure** [2] - 35:14, 35:20
**proceedings** [1] - 73:13
**Proceedings** [1] - 1:25
**process** [15] - 6:22, 7:3, 14:11, 23:23, 25:14, 29:10, 31:10, 31:12, 31:24, 32:1, 32:10, 40:3, 42:6, 53:22, 60:19
**processed** [1] - 18:4
**produce** [14] - 8:25, 10:2, 11:24, 16:22, 16:23, 18:14, 24:2, 25:23, 27:11, 27:21, 28:20, 64:23, 67:17
**produced** [32] - 1:25, 11:7, 12:1, 14:13, 15:22, 16:2, 16:7, 16:9, 18:19, 21:4, 22:5, 22:11, 22:24, 23:10, 24:8, 24:11, 26:18, 27:9, 28:13, 28:14, 29:14, 29:16, 29:17, 29:22, 30:3, 33:19, 33:22, 34:21, 40:11, 63:10, 65:4, 69:21
**produces** [1] - 62:8
**producing** [4] - 15:10, 16:12, 51:9, 55:24
**product** [6] - 25:23, 26:2, 28:8, 58:25, 59:14, 62:22
**production** [27] - 6:8, 9:15, 14:7, 16:11, 17:9, 17:17, 17:21, 18:15, 20:21, 21:11, 21:12, 21:16, 21:22, 24:25, 25:5, 27:9, 27:19, 28:17, 29:15, 34:4, 40:15, 40:17, 41:2, 61:12, 61:18, 62:3, 70:22
**Production** [3] - 6:20, 7:7, 70:23
**productions** [6] - 15:11, 17:5, 19:4,

20:2, 34:15, 61:19
**products** [11] - 7:22, 22:15, 26:5, 26:10, 27:8, 27:13, 27:14, 28:7, 28:11, 28:12, 28:25
**PRODUCTS** [1] - 1:5
**proffer** [2] - 59:21, 61:1
**prohibiting** [2] - 57:14, 57:15
**project** [1] - 16:20
**promised** [1] - 70:7
**prompt** [1] - 72:9
**promptly** [1] - 10:25
**pronounce** [1] - 35:22
**pronouncements** [1] - 51:24
**proof** [1] - 59:20
**proper** [2] - 24:22, 29:17
**properly** [4] - 25:18, 46:11, 56:24, 56:25
**propose** [1] - 56:2
**proposed** [5] - 35:9, 46:24, 47:1, 47:4, 65:24
**proposing** [1] - 36:15
**propounded** [1] - 42:3
**propriety** [2] - 40:22, 41:10
**protective** [3] - 10:10, 46:22, 47:17
**protocol** [1] - 57:4
**provide** [3] - 29:23, 41:6, 71:8
**provided** [5] - 22:13, 22:22, 24:23, 45:11, 67:8
**purchasing** [1] - 70:22
**purely** [1] - 62:8
**purpose** [1] - 46:5
**purposes** [1] - 6:13
**pursuant** [1] - 8:10
**pursuing** [1] - 37:19
**push** [1] - 49:22
**pushing** [2] - 53:22
**put** [9] - 8:21, 10:1, 13:7, 18:11, 32:14, 36:5, 46:1, 51:21, 65:1
**putting** [2] - 38:17, 42:13

**Q**

**QC** [2] - 18:16, 20:9
**questioner** [1] - 59:7
**questioners** [1] - 60:2
**questioning** [2] -

62:11, 63:25
**questions** [5] - 35:7, 58:13, 59:3, 62:19, 63:15
**quick** [1] - 22:21
**quickly** [2] - 10:18, 41:16
**quietly** [1] - 49:11, 54:9
**quite** [3] - 14:5, 31:24, 41:4
**quote** [2] - 18:8, 22:15

**R**

**radar** [1] - 42:13
**raise** [6] - 7:16, 29:7, 37:6, 57:1, 57:23, 58:10
**raised** [17] - 17:4, 17:8, 20:4, 20:8, 21:1, 21:13, 21:21, 21:24, 24:10, 24:16, 24:18, 25:15, 26:6, 27:19, 27:24, 40:10, 58:2
**raising** [2] - 31:9, 49:21
**ranges** [2] - 24:23, 31:16
**rarely** [1] - 52:21
**RASPANTI** [1] - 2:23
**rather** [2] - 31:15, 41:4
**RE** [1] - 1:4
**re** [2] - 31:17, 31:25
**re-review** [1] - 31:17
**re-reviewing** [1] - 31:25
**reach** [3] - 19:13, 19:16, 64:16
**reaching** [1] - 19:16
**read** [6] - 10:5, 10:11, 14:8, 72:7, 72:22
**ready** [1] - 31:10
**real** [4] - 60:7, 61:3, 62:21, 62:23
**reality** [1] - 16:12
**really** [19] - 6:10, 8:17, 15:22, 15:25, 16:25, 22:6, 26:1, 30:4, 33:2, 36:4, 47:7, 47:22, 48:22, 48:23, 55:4, 56:8, 63:22, 66:2
**reargue** [1] - 27:17
**reason** [5] - 6:11, 35:15, 57:11, 66:2, 68:12
**reasonable** [4] - 50:7, 51:8, 53:15, 64:19

**reasoning** [1] - 8:20
**reasons** [2] - 9:20, 70:21
**receive** [2] - 21:11, 22:18
**received** [3] - 5:17, 40:15, 70:16
**recently** [1] - 41:19
**record** [8] - 4:3, 15:13, 18:12, 44:22, 47:22, 50:12, 59:4, 73:13
**recorded** [1] - 1:25
**redact** [1] - 12:3
**reduce** [1] - 26:8
**referenced** [1] - 42:22
**referred** [1] - 15:23
**referring** [1] - 18:10
**reflecting** [1] - 27:1
**regard** [20] - 6:14, 6:16, 6:21, 6:24, 7:2, 9:10, 10:23, 20:15, 21:19, 30:10, 30:13, 30:21, 31:5, 32:17, 39:5, 39:6, 39:14, 45:16, 47:25, 65:3
**regarding** [9] - 7:1, 9:10, 22:15, 30:18, 30:25, 47:17, 62:11, 63:25, 70:17
**regulatory** [2] - 28:2, 28:4
**rejects** [1] - 9:11
**relate** [2] - 28:1, 29:4
**related** [1] - 28:20
**relates** [3] - 9:22, 19:14, 27:12
**relevant** [8] - 6:23, 22:4, 22:19, 26:17, 27:14, 30:8, 34:20
**relief** [1] - 14:24
**relitigate** [1] - 30:5
**remains** [1] - 18:3
**remember** [8] - 11:11, 11:15, 11:19, 13:22, 20:12, 33:17, 56:5, 62:25
**remind** [2] - 37:7, 46:1
**reminder** [1] - 18:12
**remotely** [1] - 16:14
**reorient** [1] - 54:10
**reply** [3] - 41:16, 72:16, 72:18
**reporter** [1] - 4:8
**Reporter** [1] - 1:23
**Reporter/ Transcriber** [1] - 73:15
**reports** [1] - 50:20
**represent** [2] - 25:5, 33:15

**representations** [2] - 50:11, 50:12
**representative** [3] - 11:16, 32:19, 33:10
**represented** [1] - 50:10
**request** [19] - 6:8, 6:16, 6:17, 6:18, 6:19, 7:7, 7:13, 8:7, 8:17, 8:25, 9:20, 24:21, 30:9, 54:6, 56:13, 59:22, 61:12, 61:18, 70:23
**Request** [1] - 9:11
**requested** [4] - 8:15, 61:11, 61:17, 61:23
**requests** [16] - 6:20, 7:16, 7:18, 7:19, 8:3, 16:24, 19:10, 22:19, 40:15, 40:17, 40:22, 41:1, 42:3, 43:2, 59:22, 61:19
**require** [5] - 11:24, 33:6, 33:7, 48:18, 67:17
**required** [4] - 10:14, 41:25, 55:24, 61:13
**requirements** [1] - 10:21
**requiring** [2] - 8:10, 12:4
**research** [2] - 9:6, 53:4
**reservation** [1] - 8:12
**reserve** [1] - 15:7
**resolution** [2] - 34:6, 64:7
**resolve** [4] - 40:4, 47:9, 58:11, 69:22
**resolved** [14] - 8:16, 37:13, 40:25, 41:11, 42:4, 43:3, 45:3, 46:14, 47:18, 48:8, 48:9, 57:18, 62:24, 66:8
**respect** [14] - 8:8, 19:8, 19:19, 19:21, 19:23, 20:4, 25:14, 27:19, 41:1, 42:20, 45:3, 47:5, 62:21, 65:13
**respectfully** [1] - 26:13
**responded** [2] - 24:20, 25:16
**responding** [2] - 41:6, 71:3
**response** [3] - 37:14, 70:17, 72:17
**responses** [2] - 70:13,

71:8
**responsive** [9] - 22:4, 22:19, 24:11, 25:21, 26:17, 29:16, 30:8, 34:20, 70:22
**result** [2] - 52:1, 58:10
**resulted** [1] - 56:22
**resume** [1] - 52:24
**retail** [1] - 71:5
**retailer** [2] - 5:15, 69:8
**retailers** [4] - 40:15, 41:21, 68:13, 69:15
**reveal** [1] - 46:6
**review** [18] - 11:3, 14:16, 16:6, 19:11, 19:18, 19:20, 19:25, 20:9, 20:23, 21:4, 23:21, 24:22, 27:12, 27:13, 29:25, 31:14, 31:17, 34:16
**reviewed** [5] - 16:6, 19:15, 19:22, 27:4, 70:16
**reviewers** [3] - 18:17, 23:20, 23:21
**reviewing** [8] - 15:5, 16:14, 19:23, 20:5, 20:7, 25:2, 25:20, 31:25
**reviews** [1] - 28:21
**RFPs** [1] - 9:13
**Richer** [1] - 70:10
**RICHER** [2] - 2:17, 70:10
**rights** [3] - 8:12, 15:7, 38:19
**ripe** [4] - 34:5, 34:6, 45:23, 45:24
**rises** [1] - 57:22
**risk** [2] - 28:6, 28:10
**Rite** [1] - 5:16
**RMR** [1] - 73:15
**road** [2] - 11:23, 35:18
**Road** [2] - 2:13, 3:6
**roll** [1] - 72:8
**rolling** [1] - 16:11
**room** [1] - 53:14
**Roseland** [1] - 1:13
**Roszel** [1] - 3:6
**round** [1] - 42:2
**Ruben** [1] - 4:15
**RUBEN** [1] - 1:15
**Rule** [9] - 8:6, 8:10, 9:2, 37:7, 37:11, 40:16, 40:17, 42:23, 70:23
**rule** [11] - 9:3, 9:9, 10:25, 11:2, 12:3, 38:24, 59:1, 61:3, 63:1

**ruled** [3] - 11:16, 11:17, 37:10
**rules** [6] - 36:4, 58:3, 58:7, 59:16, 59:25, 72:19
**Rules** [1] - 41:6
**ruling** [8] - 8:18, 8:19, 8:24, 11:21, 18:2, 38:6, 43:7, 72:9
**rulings** [14] - 11:1, 11:17, 26:14, 26:20, 26:22, 27:3, 27:5, 27:15, 27:22, 30:6, 38:23, 38:25, 43:1, 43:8
**run** [7] - 24:19, 29:9, 35:10, 37:2, 38:3, 39:4, 39:10

## S

**safe** [1] - 62:16
**safer** [1] - 62:17
**safety** [1] - 7:1
**sake** [1] - 38:18
**sale** [2] - 6:24, 7:4
**sales** [1] - 7:2
**sampling** [1] - 22:13
**sanctions** [1] - 63:1
**sandbag** [1] - 42:8
**SARAH** [1] - 2:17
**Sarah** [1] - 5:14
**sartan** [3] - 38:1, 39:1, 39:7
**sartans** [2] - 28:7, 36:16
**sat** [1] - 49:11
**satisfied** [2] - 16:10, 17:6
**satisfy** [2] - 16:21, 56:7
**save** [1] - 5:20
**saw** [3] - 12:11, 12:14, 53:24
**schedule** [9] - 21:22, 46:24, 47:1, 47:4, 53:24, 65:19, 67:16, 72:13, 72:21
**scheduling** [7] - 12:4, 13:21, 41:20, 41:23, 49:15, 68:14, 72:24
**Schneider** [1] - 18:7
**SCHNEIDER** [1] - 1:9
**scope** [2] - 6:8, 9:9
**screen** [1] - 42:13
**seal** [1] - 10:8
**sealing** [2] - 10:7, 11:10
**search** [7] - 7:20, 16:24, 23:2, 26:4,

26:5, 26:9, 26:12
**second** [2] - 9:22, 29:19
**secondary** [1] - 19:24
**secrecy** [2] - 47:23, 48:10
**Secret** [5] - 45:7, 45:16, 61:16, 63:1, 64:18
**secret** [20] - 12:3, 46:6, 48:11, 48:19, 48:24, 54:21, 54:25, 55:7, 55:11, 55:15, 55:18, 55:22, 58:21, 59:18, 59:24, 60:22, 62:9, 62:18, 63:4, 63:24
**see** [30] - 11:7, 12:18, 15:3, 15:8, 28:22, 30:16, 32:20, 32:22, 34:23, 35:10, 42:13, 43:12, 44:24, 47:4, 47:14, 51:6, 55:1, 55:9, 58:18, 59:3, 59:4, 59:23, 63:22, 64:8, 64:22, 65:2, 66:13
**seeking** [1] - 29:10
**sees** [1] - 47:23
**select** [1] - 25:17
**self** [1] - 35:5
**self-imposed** [1] - 35:5
**send** [4] - 12:11, 13:2, 44:9, 65:14
**sense** [5] - 33:2, 36:4, 38:11, 39:9, 63:14
**sent** [4] - 13:4, 43:16, 51:4, 59:8
**sentences** [1] - 68:3
**separate** [3] - 36:5, 36:19, 53:20
**separately** [3] - 17:11, 36:20, 72:14
**September** [2] - 26:16, 26:19
**serious** [3] - 22:16, 40:22, 60:9
**serve** [4] - 9:24, 9:25, 11:4, 72:17
**served** [5] - 5:18, 13:13, 55:7, 67:21, 70:14
**set** [14] - 13:21, 16:8, 19:14, 19:18, 20:11, 20:14, 23:11, 34:17, 41:1, 58:3, 58:7, 71:18, 71:21, 71:25
**Seth** [8] - 4:24, 7:11, 15:16, 18:23, 55:17,

56:19, 60:17, 62:15
**SETH** [1] - 2:9
**sets** [2] - 40:15, 40:16
**setting** [1] - 21:12
**seven** [3] - 16:3, 16:4, 52:22
**seven-month** [1] - 16:3
**several** [2] - 31:22, 52:16
**Shah** [1] - 21:8
**SHAH** [2] - 3:5, 21:8
**sharpen** [1] - 30:23
**sheet** [1] - 67:8
**sheets** [16] - 67:1, 67:4, 67:10, 67:14, 67:17, 67:20, 67:21, 67:23, 68:14, 68:16, 68:22, 69:21, 70:3, 70:13, 70:25, 71:4
**shoot** [1] - 14:24
**short** [11] - 31:12, 31:18, 32:1, 35:9, 35:17, 36:5, 36:6, 36:24, 39:6, 39:14, 71:15
**short-form** [7] - 35:9, 35:17, 36:5, 36:6, 36:24, 39:6, 39:14
**shortly** [1] - 50:20
**showing** [2] - 23:11, 24:7
**sic** [1] - 66:7
**side** [2] - 11:12, 45:15
**sides** [1] - 33:18
**signed** [1] - 10:16
**significant** [5] - 22:17, 42:24, 55:19, 63:2, 70:17
**similar** [3] - 19:22, 20:14, 36:7
**simply** [6] - 8:1, 24:1, 29:9, 30:6, 46:14, 67:4
**simultaneous** [1] - 45:15
**single** [1] - 61:12
**sit** [1] - 49:7
**sitting** [2] - 50:14, 53:13
**situation** [5] - 18:1, 27:5, 30:1, 51:22, 55:14
**situations** [1] - 14:23
**six** [1] - 27:7
**size** [1] - 33:21
**slate** [1] - 60:6
**SLATER** [32] - 1:11, 1:12, 4:12, 6:3, 6:6, 6:19, 7:9, 12:10,

12:16, 12:19, 12:23, 13:3, 14:4, 14:21, 21:20, 42:15, 42:17, 43:15, 44:2, 44:8, 44:19, 49:10, 49:18, 54:14, 57:24, 59:12, 61:7, 62:14, 63:18, 64:11, 64:14, 73:4
**Slater** [24] - 4:13, 5:25, 10:5, 12:10, 12:15, 12:25, 13:11, 14:3, 14:8, 14:20, 17:8, 17:23, 18:10, 21:17, 39:24, 43:14, 49:9, 49:14, 57:24, 58:18, 63:21, 64:10, 65:5, 68:10
**Slater's** [1] - 13:17
**sleeves** [1] - 72:8
**slightly** [1] - 41:22
**small** [2] - 22:21, 24:10
**sold** [1] - 26:24
**solution** [1] - 23:24
**solve** [1] - 56:20
**sometime** [1] - 47:2
**somewhat** [2] - 18:1, 54:9
**somewhere** [1] - 33:23
**soon** [1] - 54:22
**sooner** [2] - 35:6, 67:15
**sophisticated** [1] - 45:18
**sorry** [6] - 18:22, 36:14, 46:15, 54:8, 57:25, 63:19
**sort** [13] - 14:24, 23:2, 23:23, 24:6, 24:17, 28:21, 29:6, 31:12, 31:18, 32:1, 32:7, 32:8, 42:21
**sorts** [1] - 53:4
**sounded** [1] - 14:25
**sounds** [2] - 21:17, 31:4
**sourced** [1] - 70:19
**space** [1] - 30:7
**speaking** [2] - 8:21, 46:2
**specific** [4] - 6:23, 30:24, 34:13, 57:4
**specifically** [4] - 29:4, 30:19, 31:10, 31:16
**specification** [2] - 27:7, 27:12
**specifics** [1] - 52:2
**split** [1] - 36:22
**spreadsheets** [1] -

19:2
**spring** [1] - 8:13
**squeeze** [1] - 72:20
**stage** [1] - 26:25
**stand** [3] - 11:6, 15:4, 54:10
**standard** [3] - 10:8, 16:11
**standing** [1] - 54:16
**STANOCH** [8] - 1:15, 40:1, 41:15, 41:18, 68:11, 69:4, 69:9, 70:1
**Stanoch** [3] - 40:1, 41:15, 68:11
**Stanoch's** [1] - 40:18
**start** [10] - 5:21, 13:19, 13:25, 33:22, 33:23, 35:17, 49:11, 53:2, 53:12, 53:19
**started** [2] - 14:11, 44:11
**starting** [1] - 42:6
**state** [23] - 13:18, 43:13, 47:23, 48:10, 48:11, 48:19, 48:24, 54:21, 54:25, 55:7, 55:10, 55:15, 55:18, 55:22, 58:20, 59:18, 59:23, 60:22, 62:9, 62:18, 63:4, 63:24, 65:16
**State** [5] - 45:7, 45:16, 61:15, 63:1, 64:18
**States** [1] - 51:10
**STATES** [2] - 1:2, 1:9
**status** [1] - 43:9
**STATUS** [1] - 1:8
**statute** [1] - 37:23
**stay** [1] - 55:18
**stenography** [1] - 1:25
**step** [5] - 25:25, 51:6, 54:2, 58:16, 58:17
**Steve** [1] - 5:2
**STEVEN** [1] - 2:13
**still** [6] - 15:4, 18:13, 19:19, 26:8, 30:14, 40:2
**stipulation** [1] - 39:2
**stop** [2] - 39:11, 53:13
**stopping** [1] - 58:13
**stream** [1] - 18:5
**Street** [4] - 1:16, 1:19, 2:10, 2:21
**strenuous** [1] - 47:8
**stretch** [2] - 8:1, 9:18
**strongly** [1] - 58:2
**subject** [7] - 7:18, 34:17, 47:3, 54:19,

62:11, 62:12, 62:25
**submission** [5] - 22:7, 22:20, 29:12, 29:13, 31:21
**submit** [10] - 10:16, 10:18, 26:1, 26:13, 27:10, 27:17, 35:11, 43:25, 44:15, 48:1
**submitted** [2] - 43:23, 68:13
**subpoena** [2] - 72:15, 73:1
**subsection** [2] - 22:21, 24:10
**substantial** [1] - 15:11
**substantially** [6] - 18:13, 18:21, 19:4, 19:20, 20:10, 20:24
**success** [1] - 26:8
**sudden** [1] - 53:18
**suddenly** [1] - 15:12
**sufficiently** [1] - 70:3
**suggest** [2] - 5:19, 37:9
**suggested** [1] - 45:1
**suggesting** [2] - 8:4, 48:11
**suggestion** [1] - 60:12
**suite** [1] - 2:21
**Suite** [5] - 1:16, 2:3, 2:7, 2:13, 2:18
**summer** [1] - 8:13
**supplement** [1] - 71:8
**supply** [3] - 7:22, 70:18, 71:3
**support** [1] - 10:20
**supported** [1] - 48:18
**supporting** [4] - 9:8, 10:3, 10:16, 12:1
**suppose** [1] - 62:8
**supposed** [3] - 37:19, 49:24, 51:18
**surprise** [1] - 42:8
**surprised** [3] - 38:5, 38:9, 43:6
**surrounding** [1] - 23:10
**suspect** [1] - 44:6

**T**

**tackle** [1] - 72:9
**TAR** [2] - 18:2, 19:11
**task** [1] - 23:15
**team** [1] - 19:25
**tee** [5] - 32:24, 40:19, 45:2, 54:12, 61:16
**teed** [3] - 33:9, 40:5, 61:25
**TELECONFERENCE**

[1] - 4:1
**telephone** [1] - 1:6
**ten** [2] - 53:7, 59:17
**tens** [4] - 11:13, 11:18, 29:3, 31:13
**terabytes** [1] - 16:4
**terms** [7] - 16:24, 26:4, 26:5, 26:9, 26:12, 49:15, 53:11
**terrific** [3] - 13:11, 43:18, 44:1
**testimony** [8] - 6:9, 45:23, 46:7, 46:14, 47:6, 48:20, 61:2, 65:25
**testing** [3] - 27:1, 27:7, 52:17
**Teva** [9] - 2:14, 2:15, 5:3, 17:24, 20:15, 22:8, 24:20, 29:24
**Teva's** [1] - 19:23
**Thanksgiving** [1] - 40:3
**THE** [2] - 1:2, 1:9
**The court** [144] - 4:3, 4:7, 4:21, 5:17, 6:4, 6:14, 7:6, 7:10, 7:15, 8:16, 8:18, 8:24, 9:11, 9:15, 9:18, 9:24, 10:15, 10:24, 12:15, 12:17, 12:22, 12:24, 13:6, 13:21, 14:7, 15:17, 17:2, 17:8, 17:16, 17:21, 17:23, 18:7, 19:6, 19:8, 20:12, 20:17, 20:20, 21:6, 21:17, 22:1, 22:8, 24:13, 25:8, 25:11, 26:6, 26:14, 26:21, 27:3, 29:23, 30:10, 30:12, 30:21, 30:24, 31:9, 32:4, 32:14, 32:16, 32:24, 33:10, 33:15, 34:14, 34:19, 35:8, 35:11, 35:15, 35:18, 36:9, 36:14, 37:2, 37:6, 37:7, 37:10, 37:22, 37:25, 38:21, 39:7, 39:11, 39:19, 39:22, 40:7, 40:13, 41:8, 41:17, 42:4, 42:12, 42:16, 43:4, 43:5, 43:18, 43:25, 44:1, 44:18, 44:23, 45:1, 45:10, 46:10, 47:9, 47:10, 47:22, 47:23, 48:14, 49:1, 49:14, 54:11, 55:20, 55:25, 56:12, 56:15,

*56:25, 57:2, 57:3, 57:22, 58:16, 59:16, 60:4, 60:14, 60:16, 62:1, 62:4, 62:7, 62:24, 63:9, 63:17, 63:20, 64:20, 66:3, 66:9, 66:21, 66:25, 67:24, 68:2, 68:6, 68:10, 69:1, 69:7, 69:23, 70:6, 71:11, 72:3, 73:5*

**themselves** [1] - 22:10

**thereafter** [1] - 68:17

**they've** [3] - 17:4, 20:8, 25:4

**thinking** [1] - 9:23

**thinks** [1] - 58:3

**thinner** [1] - 28:21

**third** [3] - 72:7, 72:15, 72:25

**third-party** [3] - 72:7, 72:15, 72:25

**THORNBURG** [1] - 2:16

**thoroughly** [1] - 24:17

**thousands** [6] - 11:13, 11:18, 28:9, 29:3, 31:13

**three** [6] - 22:14, 28:23, 36:23, 36:24, 38:7

**tier** [2] - 68:22, 68:23

**tight** [2] - 16:23, 33:24

**tightly** [1] - 14:5

**time-consuming** [1] - 31:24, 32:12

**timeframe** [2] - 16:23, 41:5

**timeline** [1] - 71:10

**timing** [3] - 23:6, 31:9, 70:12

**today** [1] - 44:17

**together** [1] - 53:14

**tomorrow** [3] - 34:18, 43:25, 44:13

**took** [2] - 23:17, 31:22

**top** [1] - 12:3

**topic** [2] - 42:17, 51:10

**topics** [5] - 52:11, 52:16, 52:17, 52:20, 59:23

**Torrent** [12] - 5:8, 9:22, 9:24, 10:2, 11:1, 11:3, 11:24, 12:4, 12:9, 13:12, 38:15, 52:25

**Torrent's** [1] - 10:12

**total** [2] - 22:9, 25:5

**touch** [1] - 38:11

**tracking** [1] - 41:21

**trade** [1] - 46:6

**trailing** [1] - 42:21

**transcript** [3] - 1:25, 59:8, 73:12

**transcription** [1] - 1:25

**transcripts** [1] - 8:13

**TRAURIG** [1] - 2:12

**Traurig** [1] - 5:1

**tremendous** [2] - 8:22, 23:17

**trenches** [1] - 17:20

**tried** [1] - 26:7

**triggered** [1] - 62:4

**TRISCHLER** [7] - 2:24, 5:5, 19:7, 20:16, 25:6, 25:9, 25:12

**Trischler** [5] - 5:5, 19:6, 19:7, 25:6, 29:5

**Trischler's** [1] - 29:1

**true** [2] - 14:9, 14:18

**try** [2] - 8:2, 32:23

**trying** [10] - 23:25, 30:5, 30:6, 42:7, 52:23, 53:9, 58:14, 60:6, 69:22, 72:8

**turn** [2] - 28:14, 63:4

**turned** [2] - 15:2, 50:12

**turns** [3] - 35:18, 51:15, 61:17

**two** [12] - 8:8, 14:6, 18:20, 18:25, 19:1, 26:2, 28:23, 36:16, 38:7, 40:6, 47:25, 71:6

**two-week** [1] - 71:6

**type** [1] - 45:19

**types** [1] - 51:24

### U

**U.S** [2] - 46:25, 49:6

**ULMER** [1] - 2:20

**ultimately** [2] - 56:21, 63:6

**umpteenth** [1] - 13:19

**under** [13] - 8:2, 9:2, 10:9, 10:14, 10:21, 23:1, 23:6, 29:6, 45:6, 46:25, 61:15, 72:18, 73:7

**undoubtedly** [2] - 9:14, 9:19

**unfair** [2] - 16:1, 51:22

**unfortunately** [2] - 15:2, 68:20

**UNITED** [2] - 1:2, 1:9

**United** [1] - 51:9

**units** [1] - 52:19

**universe** [1] - 22:2

**unless** [2] - 35:6, 56:9

**unlikely** [2] - 61:1, 62:17

**unpunished** [1] - 17:1

**unquote** [2] - 18:8, 22:15

**unrealistic** [1] - 41:4

**unreasonable** [1] - 41:4

**unredacted** [1] - 12:12

**unwieldy** [1] - 71:1

**up** [28] - 9:13, 15:1, 21:2, 26:8, 32:24, 33:9, 36:22, 40:5, 40:20, 41:19, 41:25, 42:1, 45:2, 46:3, 47:21, 50:6, 54:12, 55:2, 55:5, 55:21, 59:24, 60:10, 61:16, 61:25, 63:10, 70:5, 71:3, 72:8

**update** [1] - 39:25

**updated** [2] - 11:5, 12:5

**urgent** [1] - 47:6

**USA** [1] - 2:15

**usual** [1] - 35:8

### V

**vacuum** [1] - 59:5

**VALSARTAN** [1] - 1:4

**Valsartan** [14] - 4:4, 26:24, 26:25, 27:8, 27:12, 29:1, 29:4, 30:8, 30:18, 32:12, 35:21, 36:12, 36:25, 37:8

**value** [1] - 51:25

**various** [1] - 70:21

**version** [5] - 12:12, 12:20, 13:3, 13:4, 43:25

**versions** [1] - 23:3

**VIA** [1] - 4:1

**Via** [1] - 1:6

**Victoria** [2] - 5:2, 17:25

**view** [2] - 9:8, 40:12

**Vine** [1] - 2:21

**violate** [1] - 63:1

**virtually** [1] - 54:24

**volume** [2] - 16:2, 23:6

### W

**wading** [1] - 14:21

**wait** [12] - 12:25, 13:25, 30:22, 31:15, 33:14, 33:21, 33:25, 38:10, 64:8, 65:2, 65:6

**walking** [1] - 43:22

**WALLACK** [1] - 3:5

**wants** [6] - 4:5, 17:14, 27:16, 36:18, 47:22, 69:18

**watershed** [1] - 64:17

**Wednesday** [1] - 1:7

**week** [8] - 9:24, 11:25, 13:12, 25:15, 40:19, 68:22, 71:6, 72:25

**weeks** [4] - 14:6, 38:7, 40:6, 42:9

**well-taken** [1] - 59:12

**Whiteley** [1] - 4:20

**WHITELEY** [3] - 1:18, 1:18, 4:19

**whole** [2] - 41:1, 72:23

**wholesale** [2] - 24:25, 31:17

**wholesaler** [5] - 5:12, 39:24, 40:11, 67:3, 68:7

**wholesalers** [8] - 40:9, 40:14, 41:21, 42:18, 67:6, 69:2, 69:16, 70:7

**wholesalers'** [2] - 67:1, 68:15

**Williams** [3] - 3:9, 4:13, 5:2

**willing** [4] - 27:17, 27:18, 40:23, 41:9

**wish** [1] - 71:19

**withdraw** [1] - 11:5

**withdrawn** [2] - 12:20, 43:23

**withheld** [26] - 20:4, 21:25, 22:10, 22:14, 23:4, 23:7, 23:19, 24:2, 24:24, 25:1, 25:4, 25:22, 27:25, 28:12, 28:24, 29:14, 29:25, 30:1, 30:3, 31:17, 31:25, 32:9, 32:12, 34:8, 55:23, 63:6

**withhold** [2] - 27:12, 61:14

**witness** [10] - 46:5, 46:10, 46:17, 52:16, 55:13, 57:6, 58:12, 58:13, 63:8, 63:12

**witnesses** [11] - 46:25, 47:1, 48:20, 50:18, 50:22, 53:23, 58:9, 62:19, 62:25, 63:3, 65:25

**word** [4] - 28:25, 63:13

**worded** [1] - 57:12

**wording** [3] - 56:22, 57:10, 64:3

**words** [1] - 30:23

**world** [4] - 16:25, 39:4, 39:5, 71:19

**worldwide** [1] - 16:13

**worse** [1] - 41:24

**worst** [1] - 25:3

**worth** [1] - 15:19

**written** [1] - 10:12

**wrote** [1] - 6:5

### Y

**yards** [1] - 59:17

**year** [7] - 8:14, 8:16, 26:16, 41:3, 42:4, 43:7, 46:23

**yesterday** [7] - 44:9, 44:17, 50:25, 51:1, 52:7, 52:14, 52:25

**York** [1] - 3:4

**yourselves** [2] - 4:8, 71:13

### Z

**ZHP** [25] - 2:11, 4:24, 16:3, 17:16, 17:17, 18:24, 19:4, 22:8, 24:17, 24:18, 29:24, 34:23, 45:25, 46:4, 46:15, 46:23, 50:22, 52:7, 58:3, 58:12, 59:20, 61:12, 62:8, 64:22, 65:23

**ZHP's** [7] - 16:15, 17:17, 23:18, 34:15, 62:1, 63:23, 64:8