# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CIVIL ACTION NUMBER:
IN RE:  VALSARTAN, LOSARTAN,
AND IRBESARTAN PRODUCTS          1:19-md-02875-RBK-KW
LIABILITY LITIGATION

STATUS CONFERENCE
(Via Zoom videoconference)

Wednesday, February 17, 2021
Commencing at 1:05 p.m.

B E F O R E:          SPECIAL MASTER,
THE HONORABLE THOMAS I. VANASKIE

A P P E A R A N C E S:

MAZIE SLATER KATZ & FREEMAN, LLC
BY:  ADAM M. SLATER, ESQUIRE
103 Eisenhower Parkway
Roseland, New Jersey 07068
For the Plaintiff

GOLOMB & HONIK PC
BY:  DAVID JOHN STANOCH, ESQUIRE
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
For the Plaintiff

KANNER & WHITELEY LLC
BY:  CONLEE S. WHITELEY, ESQUIRE
     LAYNE HILTON, ESQUIRE
701 Camp Street
New Orleans, Louisiana 70130
For the Plaintiff

Karen Friedlander, Official Court Reporter
friedlanderreporter@gmail.com
(856) 756-0160

Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

*United States District Court*
*Camden, New Jersey*

```
 1   A P P E A R A N C E S: - CONTINUED

 2

 3       GOLDENBERG LAW PLLC
         BY:  MARLENE J. GOLDENBERG, ESQUIRE
 4       800 Lasalle Avenue
         Suite 2150
         Minneapolis, Minnesota 55402
 5       For the Plaintiff

 6       DUANE MORRIS LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
 7       30 S. 17th Street
         Philadelphia, Pennsylvania 19103
 8       For the Defendant, ZHP and the Joint Defense Group

 9       GREENBERG TRAURIG LLP
         BY:  VICTORIA LOCKHARD, ESQUIRE
10       3333 Piedmont Road, NE, Suite 2500
         Atlanta, Georgia 30305
11       For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
12       Pharma, Inc.

13       BARNES & THORNBURG LLP
         BY:  SARAH E. JOHNSTON, ESQUIRE
14       2029 Century Park East, Suite 300
         Los Angeles, CA 90067-2904
15       For the Defendant, CVS Health Co.

16       PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
         BY:  CLEM C. TRISCHLER, ESQUIRE
17       One Oxford Centre, 38th Floor
         Pittsburgh, Pennsylvania 15219
18       For the Defendant, Mylan and the Joint Defense Group

19       CIPRIANI & WERNER, P.C.
         BY:  JESSICA M. HEINZ, ESQUIRE
20       450 Sentry Parkway, Suite 200
         Blue Bell, PA  19422
21       For the Defendant, Aurobindo Pharma USA, Inc., Aurolife
         Pharma, LLC and Aurrobindo Pharma, Ltd.
22
         HILL WALLACK LLP
23       BY:  ERIC ABRAHAM, ESQUIRE
              NAKUL SHAH, ESQUIRE
24       575 Lexington Avenue
         4th Floor, Suite 4057
25       New York, NY 10022
         For the Defendant, Hetero Labs
```

1          (ALL PARTIES VIA ZOOM VIDEOCONFERENCE,

2     February 17, 2021, 1:02 p.m.)

3          THE COURT:  We do have Karen Friedlander, our court

4     reporter present, and she'll be recording this proceeding, of

5     course.

6          It's good to see faces now with names, so I'm glad we

7     were able to organize this on Zoom, and Larry MacStravic,

8     thank you very much for making all the arrangements.  He does

9     do a fantastic, fantastic job.

10          Adam, I take it you'll be speaking on behalf of the

11     plaintiffs?

12          MR. SLATER:  On some of the issues, Your Honor.  We

13     typically will split them up, but certainly I can hand off to

14     people and they can jump in when their time comes.

15          THE COURT:  All right.  I'll ask those who aren't

16     speaking to mute their mics.  Those who will be speaking, of

17     course, unmute yourself when it's your turn to speak.

18          Who will be -- will there be one principal person on

19     behalf of the defense side, or are you tag-teaming as well?

20          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  We

21     will likely tag team it, depending on what the issues are.

22          THE COURT:  Okay.  Very well.  All right.  I have

23     your agenda letters.  We will follow the agenda letter as

24     submitted by counsel for plaintiffs and we'll go through the

25     items one by one as per usual.

```
 1          MR. TRISCHLER:  Judge, I'm sorry, this is Clem
 2   Trischler.  Good afternoon.
 3          THE COURT:  Good afternoon.
 4          MR. TRISCHLER:  I'm happy to see that you're back on
 5   your feet and wish you all the best.
 6          I just wanted to point out for the Court one
 7   scheduling issue that I have in the event there are any
 8   Mylan-specific issues that come up during the course of the
 9   call.  When our conference from Friday was rescheduled to
10   today, I have a 2 o'clock conference that I was not able to
11   move, so I may have to leave our conference at 2 o'clock, if
12   we're still going, and so I don't know that there are any
13   Mylan-specific issues, but I wanted to raise that now and, you
14   know, to let Adam and his team know that if there's something
15   with respect to my client that they would like to specifically
16   discuss, if we could do it before then, I would appreciate it.
17          THE COURT:  Certainly.
18          MR. ABRAHAM:  This is Eric Abraham for Hetero Labs.
19   I'm in the precise same boat.  I have got a United States
20   magistrate judge who is expecting me on a call at 2:00 p.m.
21   that I was not able to reschedule, so if there are issues that
22   relate to Hetero Labs, I would also like to alert Your Honor
23   and Mr. Slater to that fact.  Thank you.
24          THE COURT:  All right.  There certainly may well be
25   issues specific to Hetero, from my recollection of the
```

```
 1   letters, so we'll try to get that accelerated.

 2           Let's try to move through this then as quickly as

 3   possible, and as I said, I thought I would just go through the

 4   update, through the competing letters that I had for the

 5   agenda today, update on defendants' deposition schedules.  It

 6   looks like you're moving forward with getting your schedules

 7   in place.  I don't know that there's anything that needs to be

 8   discussed with respect to deposition schedules.

 9           Adam, do you agree?

10           MR. SLATER:  Your Honor, I think I do agree.  There's

11   a couple of witnesses that we're still trying to sort out with

12   a couple of the defendants, but I was going to suggest perhaps

13   that we will have to confirm one way or another by Friday.

14   I'm hopeful that there won't be any issues for Your Honor to

15   address, because I think some of them are just a question of

16   just finding dates that work for everybody.  I don't think

17   it's a question of, you know, refusal or anything like that.

18           So if that's acceptable to the defense and other

19   counsel on the call, I was going to suggest that we, you know,

20   get you a status Friday and, you know, confirming defendant by

21   defendant the depositions are scheduled or if there's any

22   issue, maybe it can be raised for the following conference.

23           THE COURT:  That sounds an acceptable approach.

24           Seth, do you agree?

25           MR. GOLDBERG:  Yes, that sounds fine, Your Honor.
```

```
 1          THE COURT:  All right.  So that takes care of that.

 2    The third party subpoena briefing is complete.  I don't intend

 3    to hear argument on this.  I'm going to issue a decision on it

 4    promptly, but not today, I'm a little bit behind my schedule.

 5          ZHP's motion to seal, there was a request that I

 6    confirm that the opposition brief is due March 1st, and that

 7    is my understanding, Mr. Slater, that it is due March 1st, and

 8    so I don't think there's anything to address on that now.  I

 9    know it's a contentious issue and will have to be resolved.

10          MR. SLATER:  Thank you, Your Honor.

11          THE COURT:  ZHP motion for protective order is ripe

12    and ready for resolution, and again, I won't hear argument on

13    it, but we'll proceed to resolve it expeditiously.  If I feel

14    there's a need for argument, we are getting together next

15    Wednesday, and so we can address it at that -- if I need to

16    hear any argument, we can address it at that time.  Hopefully,

17    I'll be able to resolve it without argument.

18          Item No. 5 is service of the Losartan and Irbesartan

19    complaints.  Has that been worked out in terms of language for

20    the waiver?  I know there was some proposed language from the

21    plaintiffs' side that if it was included in the -- or was it

22    from the defense side, if it was included in the -- a waiver

23    to be acceptable.  I guess it's on behalf of the defendants.

24          The language is in waiving service of process,

25    defendants preserve all of their defenses and objections to
```

1    the lawsuit, the Court's jurisdiction and the venue of the

2    action.  I also understand that the Court has stayed the

3    deadline to serve an answer or a motion under Rule 12 to this

4    Complaint.

5              Is that acceptable language acceptable?

6              MR. SLATER:  Your Honor, I'm going to defer to

7    Marlene Goldenberg who I think is handling this issue.

8              MS. GOLDENBERG:  Yes.  Hello, Your Honor.

9              THE COURT:  Hello.

10             MS. GOLDENBERG:  That is acceptable to us, and we

11   have, I believe, worked that out with, I thought all

12   defendants.  I was informed recently that there may be certain

13   defendants that were going to raise individual objections.  I

14   haven't gotten anything to date, and so I take that to mean

15   that we're good on all sides with all parties.

16             THE COURT:  Okay.  Good.  Very well.  I take it to

17   mean that as well.

18             MS. GOLDENBERG:  Great.

19             THE COURT:  The privilege logs.  This might take us a

20   little bit of time and there may be something that has to be

21   addressed separately with respect to some individual

22   defendants.

23             Adam, are you going -- who's going to be addressing

24   this issue on behalf of the plaintiffs?

25             MR. SLATER:  I will, Your Honor, unless something

1    comes up that's real specific to a particular negotiation.  It

2    may be that, for example, on Mylan, that there may be an

3    agreement that's been reached on some of these things, but

4    other than that, I think I'll be able to address it.

5              THE COURT:  All right.  Go ahead, Mr. Slater.

6              MR. SLATER:  Thank you, Your Honor.  First of all, I

7    think that, and certainly, I'll ask defense counsel to correct

8    me if I'm wrong, there's really two things that we're asking

9    for.  The area that we've pointed to as major deficiencies in

10   the privilege logs, because our goal is to get compliant

11   privilege logs that we can then dive into and start to talk to

12   the defense substantively about and hopefully, be able to

13   resolve a lot of these issues, as Your Honor is aware.

14             Oftentimes, when challenges start to be made and the

15   privilege designations are looked at with a deadline coming

16   up, oftentimes, they're dropped and documents get produced, or

17   it turns out that an e-mail chain was marked completely

18   privileged when it was just a couple sentences in one of the

19   e-mails, that sort of thing, that should have been held back.

20   So we're hoping to get to that point.

21             We have provided you, finally, the examples of the

22   privilege logs and cited to Your Honor law that I know that

23   you're very familiar with from the Third Circuit in the

24   District of New Jersey, and, you know, really our issues are

25   primarily -- first of all, identifying the people in the

1  privilege logs, so we can figure out who sent the documents,

2  who authored them, who received them.

3       I believe -- and again, defense counsel can correct

4  me.  I think as to at least four of the defendants, Hetero,

5  Mylan, Aurobindo, and Teva, that they've agreed to provide

6  what I've been referring to colloquially as a cast of

7  characters.  If other defendants are agreeable to that, then

8  we can jump to the next level of the argument, which is the

9  substantive descriptions, because I think that there are two,

10  you know, levels of the argument.

11       THE COURT:  Okay.  Well, let's hear -- I guess maybe

12  we'll hear first from Mylan in terms of a cast of characters,

13  Mr. -- is it Mr. Trischler?

14       MR. TRISCHLER:  Yes, it is, Your Honor, thank you.

15  We've had ongoing negotiations with respect to -- with the

16  plaintiffs with respect to the privilege log that Mylan has

17  produced, and based on the agreement that we had negotiated

18  with plaintiff, we provided and, you know, an amended and

19  updated privilege log on February 12, last Friday evening.

20       I -- admittedly, we provided it to the plaintiffs

21  quite late, like 11:59 p.m. on Friday evening, but folks were

22  working pretty hard because that was the --

23       THE COURT:  Sure.

24       MR. TRISCHLER:  -- deadline that we had given them

25  that we would commit to doing it.

1          So in fairness to Mr. Slater and his team, I don't

2    know if anyone from the plaintiffs' side has had a chance to

3    digest that amended log as of yet, but as part of the amended

4    log, we identified every lawyer that was -- that appeared in a

5    withheld document, what department they were with, what

6    position they held, and so we believe, you know, we've

7    provided a so-called cast of characters.

8          We also -- jumping to the second issue, as far as the

9    descriptions of the documents, we provided amended

10   descriptions where we thought it was appropriate.

11         So I think this is -- this started out I think as a

12   issue that was first raised with respect to Mylan's log.  I

13   think it's become an issue that the plaintiffs have now

14   suggested there are issues with the privilege log of every

15   defendant, so I think it's very much an issue that the Court

16   is probably going to have to tackle on a

17   defendant-by-defendant basis.

18         But I think at least with respect to Mylan, is that

19   we provided that amended log on -- last Friday, and I think

20   it's just a matter of ongoing negotiation, and as I said, as

21   we sit here today, I've not heard from the plaintiff that they

22   -- whether they think that's sufficient or whether they think

23   there's issues with it.

24         THE COURT:  Mr. Slater?

25         MR. SLATER:  Yes, Your Honor.  I think, if I can reel

1    back, what I think I'll do is just -- because I'm realizing

2    that we do have a time issue with a few of the lawyers.  I'll

3    complete my argument and then I guess defense counsel, if

4    that's okay with Your Honor.  Let me just hit the other issues

5    and then hand it over to --

6             THE COURT:  Sure.

7             MR. SLATER:  So the first issue is, and we cited the

8    law, I'm not going to repeat it, but we have to know who all

9    the people are and we have to be able to identify them, No. 1.

10            No. 2, we don't have the level of precision or

11   substantive description in the privilege logs to be able to,

12   with an informed way, understand what is privileged, what the

13   document is about, what's the subject matter and be able to

14   make an informed decision on whether to challenge and then to

15   have a conversation with the defendants, and we've given many

16   examples across the board.

17            For example, you know, talking about, quote unquote,

18   regulatory issues.  That's not enough.  Litigation issues,

19   corporate governance.  You know, if you go through all of the

20   privilege logs, they really have similar, similar problems,

21   meeting with the FDA.  They are so generic as to be

22   uninformative other than to understand that it has something

23   to do with a general topic.  And I don't think that's what the

24   law contemplates.

25            So that, plus -- without getting into too much

 1   detail, there are gaps in the privilege logs as well, where --

 2   for example, somebody who's the author of a document is not

 3   supplied and things like that.  That, I don't know that we

 4   really need to argue.  I would just ask that the defendants be

 5   required to bring their privilege logs into conformance with

 6   the ESI protocol, which lists the metadata fields that are

 7   supposed to be populated.  That's the easiest thing to do.

 8        So, you know, unless there's any questions, I really

 9   think that, you know, we've laid out that we need that

10   information and we'd like to be able to have that at a quick

11   turnaround, because with the 60-day extension, we are still

12   very, very tight on time and we need to be able to move

13   quickly, and there's no surprise to anybody that we've been

14   asking for this information.  So, you know, the quicker the

15   deadline, the better.  We don't think that a deadline beyond a

16   week from now is necessary, because this has been on the plate

17   of everybody for so long.

18        So unless there's any questions, I think that it's

19   very, you know, straightforward once you look at the logs.

20        THE COURT:  Well, let me go back to Mr. Trischler's

21   point that they served an amended privilege log on Friday at

22   11:59 p.m.

23        Have you gone through that and is that viewed as

24   still deficient?

25        MR. SLATER:  I have not been through it.  I'll

1  certainly allow my co-counsel if they're on and want to

2  address it, I -- but what I -- I think that if it's limited to

3  describing, as describing the lawyers, that's not enough.  We

4  need to know all the people that are on the document; to,

5  from, cc, et cetera.

6        So if I misheard Mr. Trischler, I'm asking that the

7  order be expanded to all of the people that are named on the

8  log with their e-mail addresses, their position -- well, I

9  should say their name, their title and their department, and

10  their e-mail address.

11        We need that to be able to make a full -- have a full

12  understanding of each document and what the claim is, and then

13  obviously, I'll hand off to -- the way that we're doing things

14  on our side, Your Honor, is there's groups of people dealing

15  with each defendant specifically.  So as far as the substance,

16  I have not seen what came in Friday night, I have to be honest

17  with you, and we can certainly get back to them or my

18  co-counsel can address it right now.

19        THE COURT:  Anybody else on the plaintiffs' side want

20  to address the Mylan amended privilege log?

21        MS. HILTON:  Good afternoon, Your Honor.  Hopefully

22  you can see and hear me.  Am I muted?

23        THE COURT:  No, we hear you.

24        MS. HILTON:  Good.  Sorry, technological issues.

25  Yes, we have reviewed Mylan's log, and my colleague, John

1    Davis who has been negotiating primarily with Mr. Trischler

2    about Mylan is actually located in Texas and doesn't have any

3    electricity right now, so I'm sort of stepping in for him.

4         We have reviewed -- I will say, you know, for the

5    information that Mylan provided about their attorneys of which

6    they appeared to have hundreds of in-house attorneys employed

7    by Mylan, they did produce -- they did provide us with the

8    date of the beginning of their employment, which I thought was

9    a very good key piece of information, their job title, and

10   then the department within they were -- which they were

11   within, these were key pieces of information.

12        I also will note that while I haven't had the

13   opportunity to go through the entirety of Mylan's actual

14   privilege log beyond the legend, my understanding is that at

15   some point in time between, you know, when we sort of

16   initiated this process with Mylan, Mylan has done a re-review

17   of their -- the documents they were withholding for privilege

18   and I believe de-designated quite a few, and we made -- you

19   know, I think what started off as a log that was in the

20   thousands may now be down to about 400 entries.

21        So we expect to see some of the documents that Mylan

22   has de-designated that were once being withheld for privilege,

23   shortly, I'm not -- I don't believe we've gotten that this

24   production yet.  But that's just another point I wanted to

25   make that, you know, throughout this process, Mylan has now

1  de-designated a large percentage of the documents that they

2  were previously withholding for privilege.

3          So we're still sort of going through the actual

4  contents of the remaining documents, but I think seeing the

5  documents that have now -- that will now be produced to us

6  will be informative for those remaining documents.

7          THE COURT:  All right.  Anything else on Mylan and

8  the adequacy of Mylan's privilege log?

9          MR. SLATER:  No, Your Honor.  I think because

10 Mr. Davis is -- he's really been leading this and he is

11 without power in icy Texas, the icy Texas plains, I think, you

12 know, he certainly intends to look at that log and I'm sure he

13 will get back to Mr. Trischler if there's any further issues

14 with the adequacy of the descriptions.

15         THE COURT:  All right.  Very well.

16         Now, maybe I need to go defendant by defendant.

17 Teva?  Teva.  The adequacy of Teva's privilege log.  And you

18 were discussing a production of a legend or cast of

19 characters.

20         Has there been progress made with respect to the Teva

21 defendants?

22         MR. SLATER:  My understanding is that they had agreed

23 to provide the, quote unquote, cast of characters, but they

24 certainly can confirm that to Your Honor now, and we see the

25 same issues with their descriptions as we do across the board

```
 1   with all the defendants, the same deficiencies.

 2           THE COURT:  Okay.

 3           MS. LOCKARD:  Your Honor, it's Victoria Lockard, and

 4   that's correct.  We did agree to provide a cast of characters

 5   or a legend outlining the legal department, inside and outside

 6   lawyers that appear on the privilege log.  That's really the

 7   only issue that's been brought to our attention with respect

 8   to our privilege log, and so we anticipate providing that

 9   within a week to plaintiffs, and certainly, if they have other

10   issues they haven't brought them to our attention yet, but we

11   would be glad to meet and confer or to hear about those, if

12   that's the case.

13           THE COURT:  Okay.

14           MS. WHITELEY:  Your Honor, Conlee Whiteley.  I have

15   been working with Ms. Lockard on this issue and she's correct,

16   she has agreed to provide the legend and we have gone through

17   the privilege log and we believe once we have the legend, we

18   can identify if there are any other issues, and we'll meet

19   with her about it directly.

20           THE COURT:  Okay.  And when do you expect to have

21   that legend produced, Ms. Lockard?

22           MS. LOCKARD:  Within the week.

23           THE COURT:  Okay.  All right.  Very well.

24           MR. SLATER:  Your Honor, just for clarification, I

25   may have misheard Ms. Lockard who referenced only lawyers.
```

1    Again, the list of the people that are named, we're requesting

2    that the defendants identify everybody, because we obviously

3    need to know who everybody is, what departments they work in,

4    what their title is, et cetera, in order to evaluate.

5          I just want to make sure, I know everyone shorthands

6    it to the lawyers, but we're requesting everybody named in the

7    privilege log.

8          MS. LOCKARD:  And, you know, and I did not misspeak,

9    I don't think I was misheard, and if that's an issue, that has

10   not been something that's been addressed with us, because in

11   our communications with plaintiffs' counsel, we have agreed to

12   provide names of lawyers and the legal department and the

13   outside counsel.  I don't believe any defendant has agreed to

14   provide a list of every name that appears on every e-mail and

15   every document listed on the privilege log.

16         We're talking about a significant number of

17   documents, names, and to provide that level of information for

18   that number of people would be incredibly burdensome.

19         MR. SLATER:  I could respond to that.  My

20   understanding is Hetero has agreed to do that.  We have --

21   we've been working back and forth with them.  I thought the

22   other defendants did.  I suppose now we're getting to the

23   clarification, I mean, I've certainly been asking for this.

24   This is the third hearing where we have raised the issue and

25   admittedly, we hadn't provided the log to Your Honor so there

 1   was no way to evaluate, but I don't think there's a legitimate

 2   burden argument here.

 3        It's the defendants' choice to designate documents as

 4   privileged, and the law is very clear, we have to know who all

 5   the people are and be able to easily identify them and to look

 6   at that in the context of a robust description of the

 7   documents so we can make an evaluation and have a

 8   knowledgeable and substantive conversation with the

 9   defendants.

10        MS. LOCKARD:  And my understanding, and we can have

11   our e-discovery team speak to this as well, but the way the

12   documents were logged through our vendor does not allow us to

13   easily generate a log with every name on the e-mails and the

14   documents.

15        So there is certain information that is captured by

16   the vendor that allows us to do a search and create such a

17   log, but it would require, you know, hand review of each of

18   these documents to go through and identify each and every name

19   that appears in those documents, you know, whereas it's

20   typically, you know, the lawyer's involvement that gives rise

21   to the privilege issue in most cases.

22        If there are specific names that, you know, are

23   not -- you know, that are questionable that plaintiffs have a

24   question about, you know, we'd be happy to provide that on a

25   name-by-name basis, but it's going to be incredibly

1    time-consuming to go back and generate a list, we're talking

2    about, you know, potentially thousands of names.

3            THE COURT:  Mr. Slater?

4            MR. SLATER:  Our position stands, Your Honor.  This

5    is customary, this is what's normally done in these

6    litigations, and the burden issue is, you know, without our

7    ability to know who all the people are, then we're not able to

8    reasonably evaluate the claims.  And it shouldn't be that

9    we're going to the defendants document by document.  That's

10   not really efficient.

11           I don't really think that that's a reasonable

12   argument.  Again, it's the defendants' choice to claim

13   privilege, it's the defendants' choice to log these documents.

14   They need to disclose who each of the people are.

15           THE COURT:  All right.  Anything else on this issue?

16           Well, I'm in agreement with the plaintiffs on this.

17   I think each person needs to be identified.  You have to

18   understand what their role is in the communication, and their

19   title, their position, that's important to understand.

20           It's important to know that in order to understand

21   the basis for the privilege assertion.  So I don't think it's

22   adequate simply to identify those who are lawyers on a

23   communication.  The other participants have to be identified

24   by the type of information that is being requested by the

25   plaintiffs, job position, title, what department they work in,

1    et cetera, for purposes of assessing whether to challenge the

2    privilege on a document or e-mail thread by e-mail thread

3    basis.

4         So I'd ask that that information be provided.  The

5    burden may be great because of the number of people, but that

6    also calls into question the privilege assertion, when it's

7    used to a great extent and covers people who may not be in the

8    right level of management, for purposes of being covered by

9    the privilege.

10        So I expect that information to be produced.

11        MS. LOCKARD:  Your Honor, we would request an

12   opportunity to submit a paper on this to you.  This was not an

13   issue that has been raised with Teva to date.  This is the

14   first time I'm hearing of this in our e-mail communications

15   about an agreement to provide the privilege log legend.  We

16   were very clear about what was being provided, and this is the

17   first time I've heard any objection about that.

18        I would appreciate the opportunity to submit a letter

19   on this so that we could demonstrate to you exactly what is

20   going to be required and how many names we're dealing with.

21   You know, if we are going to have to go through this exercise,

22   it's certainly going to take longer than a week to provide the

23   log that plaintiffs are seeking.

24        THE COURT:  How long will it -- I'm sorry.

25        MR. GOLDBERG:  Your Honor, this is Seth Goldberg on

```
 1    behalf of the ZHP parties, and I just wanted to let Your Honor
 2    know, we have not had any specific requests for this
 3    information with respect to ZHP.  We only received a letter
 4    regarding our privilege log and other documents for the first
 5    time last week.
 6           We have not even had a meet and confer with
 7    plaintiffs.  We don't know the extent to which this is an
 8    issue that will pertain to the ZHP parties, but we certainly,
 9    if this is going to be an issue, want the opportunity to brief
10    it, because we may have the same concerns that Ms. Lockard
11    just shared.
12           MR. SLATER:  Your Honor, it's Adam Slater.  I just --
13    I'm surprised to hear that the defense is surprised, because
14    again, this is the third conference in a row where this issue
15    has been discussed, and Your Honor again told us we need to
16    get you the --
17           (Screen freeze.)
18           MR. SLATER:  Your Honor directed us to get you
19    exemplars from the privilege logs, which we did.  So we have
20    been asking for this for weeks and weeks so it's hard to
21    imagine the defense is surprised, and we obviously briefed it
22    for Your Honor in this letter a week ago, so it's hard to
23    imagine that this is a surprise to anybody.
24           MS. LOCKARD:  This is a new issue with respect to
25    Teva, Your Honor.  We have e-mailed about this and been very
```

1    clear about what we had agreed to provide, and we did not

2    receive any sort of objection about this.  We're talking about

3    literally thousands of names across hundreds of companies,

4    many of whom aren't even Teva employees.  These are people

5    from, you know, outside of Teva perhaps, consultants and

6    things of that nature.

7              You know, I don't know, I'm not prepared to really

8    get deep into the argument here, because this isn't something

9    that has been presented before, hence the request that we be

10   allowed to submit a short briefing on this.  I think this is

11   going to affect all of the defendants as a whole.  This is

12   more of a global issue.

13             THE COURT:  Who has been dealing with Teva from the

14   plaintiffs' side with respect to the privilege log issue?

15             MS. WHITELEY:  I have, Your Honor, Conlee Whiteley

16   and David Stanoch.

17             THE COURT:  Right, okay.  And David is not available?

18             MR. STANOCH:  No, Your Honor, hello, this is David

19   Stanoch.  I was on mute, so I wasn't speaking, I apologize.

20             Your Honor, Mr. Slater is correct, that we've raised

21   this issue globally at the last two, maybe three CMCs.  We've

22   been trying to get Ms. Lockard and her team on the phone since

23   the end of last week and they ignored three different e-mails

24   from myself and Ms. Whiteley, and so we got an e-mail late

25   last night with some deposition dates and confirmation saying

1    that they'll give us the legal personnel log.  That was last

2    night, Your Honor, at 9:12 p.m.

3            We haven't had a chance to confer, so maybe that's

4    why Ms. Lockard doesn't have something specific about this.

5    But I would agree with Mr. Slater, this is a macro issue

6    that's been raised with all defendants at the CMCs.

7            THE COURT:  All right.  Ms. Lockard, how much time

8    would you need to submit a short letter brief on this issue?

9            MS. LOCKARD:  I'm sure we could get this submitted on

10   Friday, Your Honor.

11           THE COURT:  All right.  Why don't you -- I'll give

12   you until Friday to submit a letter brief on the question of

13   the need to identify the entire cast of characters, not only

14   those who are lawyers, but those who are also on the e-mail

15   threads that are claimed to be privileged.

16           You can let me know your position in terms of the

17   burden that would be required to produce that information, and

18   we can make a judgment on that and address it at our

19   conference call next Wednesday.

20           MS. LOCKARD:  Thank you, Judge.

21           THE COURT:  All right.

22           MS. WHITELEY:  Again, this is Conlee Whiteley.  I

23   would just request that to the extent any of the defendants

24   have agreed to produce certain things in the legend, that they

25   go ahead and send that so that we can begin our work and we

1    can supplement based on Your Honor's ruling, if the legend

2    needs to have additional names added.

3         THE COURT:  Yeah, I think that should happen.  This

4    looks like you were in the process, Ms. Lockard, on behalf of

5    Teva putting that together at least for the counsel, for the

6    lawyers, so that should be produced forthwith without a need

7    for anything more from me on that, and then the only question

8    is whether it has to be supplemented with the non-lawyers.

9         All right.  So anything else on the privilege logs?

10        MS. GOLDENBERG:  Your Honor, this is Marlene

11   Goldenberg.  I was wondering if I could address the Aurobindo

12   issues quickly.

13        THE COURT:  Sure.

14        MS. GOLDENBERG:  I've heard Teva's counsel address

15   the burden that they're saying that they have.  The issue that

16   we have with Aurobindo I think is substantially smaller.

17   Their privilege log that I have, and hopefully there isn't one

18   that I'm unaware of, but this one is dated December 28, 2020.

19   It only has a hundred entries on it, and so while Teva is

20   taking the position that this is burdensome for them, I just

21   can't imagine that filling out a cast of characters for many

22   people who overlap in a hundred lines is going to be that big

23   of a deal.

24        So I heard you rule initially that you thought all

25   this information should be provided absent the burden, and so

1    for Aurobindo, I would just ask that you order them to produce

2    that information now.

3           THE COURT:  All right.  Who will address this on

4    behalf of Aurobindo?

5           MS. HEINZ:  Hi, Your Honor.  This is Jessica Heinz.

6    I'm here with Ethan Feldman.  I hope it's okay that I'm

7    appearing instead of Ethan speaking, but -- I have been

8    speaking with Marlene about this.  We've had a couple of good

9    meet-and-confers.  We like Teva, offered to produce an amended

10   log focusing on the legal personnel.  I understand that our

11   privilege log is not as long as the other defendants.  That

12   doesn't mean that we don't have a burden.

13          I would like the opportunity to brief this issue by

14   Friday as well, so that I can take a closer look at, you know,

15   it's going to be the same type thing, we're going to have to

16   go through these documents and look at who each of these

17   people are.  I mean, a hundred might seem smaller compared to

18   the other defendants, but it is still a high number, and we

19   would appreciate an opportunity to brief that as well.

20          THE COURT:  We'll give you that opportunity to brief

21   that issue.

22          MS. HEINZ:  Thank you, Your Honor.

23          THE COURT:  Now, I've given the plaintiffs until -- I

24   mean, the defense until Friday.  You all on the plaintiffs'

25   side have briefed this.

1          Mr. Slater, is there a need for a reply brief?

2          MR. SLATER:  Your Honor, I can't imagine unless

3   something unanticipated happened in the briefs.  I mean, we'll

4   certainly get it to you Monday, that we're not going to hold

5   this up.  We don't want --

6          THE COURT:  Right.

7          MR. SLATER:  As you know, we want to get this

8   resolved as fast as possible.  We want to get the fulsome

9   descriptions because we are hopeful that once we start to meet

10  and confer, that these privilege designations will drop away

11  and we can start to get down to the, you know, if there's any

12  documents that really need -- have a real dispute.

13         THE COURT:  Yeah.  If you want to file something by

14  Monday, that's fine, I won't hold up my review waiting for

15  your papers to come in.  We'll get this teed up so we can

16  resolve it by next Wednesday one way or another, okay?

17         Anything else on privilege logs?

18         I want to circle back to Item No. 5 on the agenda.  I

19  note that there was a joint stipulation regarding the

20  dismissal of Torrent private and the acceptance of service of

21  Torrent Pharmaceuticals for the Valsartan, Losartan and

22  Irbesartan cases, and we'll see that that joint stipulation

23  gets approved by the Court.  I just wanted to let you know

24  that we did flag that.

25         MR. SLATER:  Thank you.

```
 1              THE COURT:  Okay.  The next item I had were discovery

 2   or purported discovery deficiencies, and my notes indicate

 3   that the ZHP matter is not ripe for discussion today.  Is that

 4   accurate?

 5              MR. SLATER:  That is, Your Honor.

 6              THE COURT:  Okay.  What about Hetero?

 7              MR. SLATER:  Hetero, there's obviously a lot going on

 8   there.

 9              THE COURT:  Yeah.

10              MR. SLATER:  I'll try to get to the bottom line of

11   what we're looking for.  We're glad that Hetero has agreed to

12   meet and confer with us tomorrow, and we expect this is going

13   to be probably one of many discussions we'll have because of

14   the extent of the metadata deficiencies and the production

15   index deficiencies and the production itself.

16              I think what we really need is an order that directs

17   Hetero to work as expeditiously as possible to correct all of

18   these issues so that we can get it done quickly.  And one of

19   the things we've asked for is, for their vendor, and I don't

20   know if they have a separate consultant who is consulting with

21   them on the ESI, but we've asked to have their vendor on the

22   call because we want to start to ask some questions.  We have

23   some serious doubts about whether certain applications and

24   databases were searched.

25              We have -- there's been some -- I think, a learning
```

1  curve now for counsel in dealing with their client, that their

2  vendor may be able to clarify what was actually searched.

3         For example, there were two witnesses we were

4  initially told had no e-mails and they never had an e-mail

5  address, which we had a hard time believing, and it turned out

6  they actually -- we were told the other day, oh, their e-mails

7  were discontinued in -- I think March or May of 2020, so now

8  we're going to search for them.

9         And so, you know, that's one of many examples and

10  we've laid out and we know Your Honor is very familiar with

11  ESI, so you understand the significance of the metadata

12  deficiencies.  And there's a lot of very important documents,

13  for example, their quality manual, their quality control

14  manual which says, here's how you're supposed to apply good

15  manufacturing practices across the company, which is a central

16  breakdown in the litigation, or a central basis of liability.

17         We got Version 6 which was put into place a few

18  months after the revelation of the contamination and said,

19  well, where is Versions 1 to 5, which were in effect during

20  the contamination period, they're looking for that.  So those

21  are just a few of highlighting examples.

22         We just need something that gets Hetero to sit down,

23  and I think they're starting to take this very seriously, and

24  I think we've had some good e-mails from them, but we're going

25  to need a very compressed time period because we don't

1  obviously have a lot of time to take depositions and we've

2  moved a few into March, but we really can't move anything much

3  further out.  So that's what we look for, you know, is

4  something that pushes Hetero to work real, real -- in a real

5  focused way to get this all fixed.

6       THE COURT:  All right.  Who will be addressing this

7  on behalf of Hetero?

8       MR. ABRAHAM:  Good afternoon, Your Honor, this is

9  Eric Abraham and I'll be handling this on behalf of Hetero

10  Labs.  I'm also joined by my colleague, Nakul Shah.  There may

11  be times that I hand off to him just because he may have

12  better knowledge on specifics.

13       I don't need an order to tell me that I need to work

14  these issues out with plaintiffs' counsel, and we're obviously

15  being as diligent as possible.  I think that there are issues

16  that have been identified by plaintiffs' counsel that we see

17  no reason why they won't be resolved and they won't be

18  resolved expeditiously.

19       The issue of the e-mail is just one small example

20  of -- I don't want to call it a communication issue, but I

21  think that plaintiffs' counsel has made some assumptions about

22  what creates a duplicate custodian versus what creates a

23  primary custodian that we just need to talk through with

24  plaintiffs' counsel so that he understands what it is that

25  he's looking for.

 1          If it requires us to get our ESI consultant on the

 2    phone, Nobos (phonetic), I don't think we have an objection to

 3    that, I think it may streamline the process.  I don't know

 4    that we're necessarily at that juncture yet, but we'll find

 5    that out.  We're going to confer tomorrow at 3 o'clock and I

 6    anticipate that we'll work through the balance of the issues

 7    between us.

 8          The one thing that Mr. Slater said that concerns me

 9    is the issue of whether or not certain databases have been

10    searched within our particular client, and that's an issue

11    that isn't really one that would be a subject of discussion

12    with our ESI consultant, because that's not within the scope

13    of his service.  That would be an issue for me to discuss with

14    my client who knows what databases were searched and provided

15    to our ESI consultant.

16          So I'll confer with Mr. Slater about that tomorrow to

17    make sure we're on the same page.

18          To me, this is -- obviously, there are important

19    issues that have to get resolved in terms of our ESI

20    production.  Mr. Slater is entitled to be able to understand

21    how it is that he reviews the documents that we have produced

22    and the metadata has to be correct, and those are all fair

23    comments.  This isn't a situation though where we need

24    anything in particular to light a fire under us.  I think that

25    we're working diligently towards solving these issues.

 1          THE COURT:  All right.  Mr. Slater.

 2          MR. SLATER:  I would suggest, Your Honor, we are

 3     going to speak to you in a week, so --

 4          THE COURT:  Right.

 5          MR. SLATER:  So maybe that's the perfect timeframe to

 6     be able to give you an update and see where we are, and

 7     hopefully, Mr. Abraham is right about all that, that would be

 8     wonderful.  We want nothing more than to fix everything and be

 9     able to move along and get ready for the depositions.

10          So if we could put this on our agenda for next week

11     and let you know where we are and if relief is requested at

12     that point, we'll pinpoint it for you.

13          THE COURT:  We will put it on our agenda for next

14     week.  I expect that the written communications you sent to me

15     in connection with that agenda by next Tuesday will give me an

16     update on where we stand with respect to it.

17          I don't think we need to issue any order at the

18     present time, other than encourage you to continue to meet and

19     confer, and I think you can move forward and get this matter

20     behind you.

21          MR. ABRAHAM:  Thank you, sir.

22          THE COURT:  All right.  Thanks.

23          How about Aurobindo?

24          MS. GOLDENBERG:  Your Honor, this is Marlene

25     Goldenberg again.  We have had many productive discussions

1    with Aurobindo's counsel, Jessica and Ethan, this weekend.  We

2    appreciate the good working relationship we have with them.

3         With that said, we do have a couple of issues

4    concerning the size of Aurobindo's production, and if Judge

5    Schneider was here, he would probably say that we sound like a

6    broken record at this point, but, you know, we're having

7    difficulty understanding why Aurobindo can only produce

8    roughly 13,000 documents when other defendants have produced

9    many more.

10        Part of the issue is that we're dealing with the

11   production from the U.S. side at this point, and we understand

12   that, but the custodial files are just really, really small.

13        And to give Your Honor an understanding of what I

14   mean when I say that, some custodians have files that include

15   as few as 258 documents and the larger ones.  Just by way of

16   example, Bless E. Johns (phonetic) has 1,259, and that's at

17   the high end for these custodians.

18        And so what we've asked for Aurobindo to provide us

19   with are hit count reports to tell us, what did you search

20   for, what did you get, and what did you actually produce.  And

21   what we've received from them to date is just some hit counts,

22   but my concern is that those don't -- first of all, they're

23   not de-duplicated, and so it's hard to understand how many

24   documents actually came up.

25        And so what we're seeking today is an order that they

1    provide us with, No. 1, how many documents were produced as a

2    result of the search term searches for each custodian, and

3    then No. 2, out of that subset, how many documents were

4    produced to us.  And once we have that information, I think we

5    can do a better assessment on our side of, 1, whether or not

6    we truly have the right custodians, and, 2, whether or not we

7    feel that the production made to us has been adequate.

8         But without that information, the only thing we're

9    able to do is just ask, why is this production so small, and

10   having done that many times now, we, I think on both sides,

11   would agree that we haven't gotten anywhere.

12        THE COURT:  So you're looking for an order that would

13   require simple indication of the number of hits that were

14   obtained?

15        MS. GOLDENBERG:  Yes, just to make it --

16        THE COURT:  -- and the number that were produced.

17   I'm sorry.

18        MS. GOLDENBERG:  I'm sorry, yes.  Just to make it

19   perfectly clear, Question No. 1 is for each custodian, how

20   many documents were responsive from running the search terms

21   over their custodial file, with and without families, and

22   Question 2 is, of that set of documents, how many were

23   produced to plaintiffs.

24        THE COURT:  All right.  Who's addressing this on

25   behalf of Aurobindo?

1          MS. HEINZ:  Hi, Your Honor, it's Jessica Heinz again.

2   Marlene and I have been having very good conversations, and I

3   appreciate that.  With this particular issue, we do not agree,

4   we fail to see what this information is going to do for the

5   plaintiffs in terms of being able to evaluate our document

6   production.

7          We agreed to a list of 15 custodians for the

8   Aurobindo parties.  That's where we are at currently.  Marlene

9   and I -- I mean, compared to the other defendants, we have

10  significantly less custodians on our list at this time.

11  Plaintiffs have approached us about agreeing to a list of

12  custodians over in our foreign entity in India, Aurobindo

13  Pharma Limited, and we are engaged in talks with plaintiffs

14  about that, and we anticipate that we will be agreeing to a

15  list of custodians.

16         But that is why our production is significantly less,

17  or significantly smaller than the other codefendants.

18         I think right now, it's premature for plaintiffs to

19  seek an order from Your Honor requiring us to produce hit

20  counts.  We would like the opportunity to brief this issue

21  before Your Honor makes a decision.  It shouldn't take us

22  long.  We could probably get a brief within the week or even

23  by Friday, if that's what Your Honor would prefer, but we have

24  told plaintiffs that we would like to continue speaking with

25  them about this.

```
 1           I did ask that they hold off on raising it with the
 2   Court today so that we could continue our discussions, but I
 3   told them I understood if they still wanted to bring it up.
 4           MS. GOLDENBERG:  Your Honor, if I could briefly
 5   respond to that.
 6           THE COURT:  Sure.
 7           MS. GOLDENBERG:  I just don't know what a brief is
 8   going to do on this issue.  We're asking for answers to two
 9   questions, and so I don't know what legal objections there
10   are, and none have been raised on the meet-and-confer calls.
11   And I understand Jessica's position that she wants more time,
12   but we've addressed this on three separate meet-and-confer
13   calls now and the answer has been the same, and I just don't
14   think that delaying this any further is going to do anything
15   for anyone.
16           THE COURT:  Ms. Goldenberg, let me ask you a
17   question.  Don't you know the number of documents that have
18   been produced per custodian so far?
19           MS. GOLDENBERG:  Yes.
20           THE COURT:  That's the second part of what you've
21   asked for, I take it.
22           MS. GOLDENBERG:  I'm sorry, Your Honor.
23           THE COURT:  Did I understand that correctly?
24           MS. GOLDENBERG:  Yes, and that's reasonable.  So what
25   we're trying to understand is, you know, what did that number
```

```
 1  look like before it got to us, so I guess it's actually just
 2  one question.
 3          THE COURT:  You're looking for the number of hits.
 4          MS. GOLDENBERG:  Per custodian with and without
 5  document families.
 6          THE COURT:  Per custodian.  Doesn't seem to be that
 7  difficult to produce.
 8          MS. GOLDENBERG:  I don't think so.
 9          THE COURT:  Yeah.  Why would you want to brief the
10  issue?
11          MS. GOLDENBERG:  I don't.
12          THE COURT:  I know.  Ms. Heinz.
13          MS. HEINZ:  Your Honor, I'm sorry, I was trying to
14  take myself off of mute there.  We would like to brief the
15  issue of relevance.  We don't see why it's relevant for us to
16  have to provide that information in order for the plaintiffs
17  to be able to evaluate our document productions.
18          THE COURT:  I sort of understand that, too.  I mean,
19  you've made your production.  I guess it's a question of not
20  being confident that it's a full production.
21          I guess I come back to the practical point, though,
22  of why would it be that difficult to produce just the number
23  of hits per custodian that resulted from the search.  It
24  doesn't seem to be burdensome.  Maybe you can educate me.
25          MS. HEINZ:  It was 15 custodians, and, you know, it's
```

 1   something that is going to take some time to communicate with

 2   the vendor about.  We're not asking for a lot of time to just

 3   submit maybe five pages or even less to the Court on the

 4   issue.

 5        I think there is some relevant case law out there on

 6   this point, and we would just appreciate the opportunity to

 7   bring that to the Court's attention.

 8        THE COURT:  Well, I suppose I can't preclude you from

 9   doing that or shouldn't preclude you from having the

10   opportunity to submit a letter brief on it.  I really don't

11   see the -- I'm having trouble following this dispute.  It

12   doesn't seem to be one that should exist, but to the extent it

13   does, well, we'll let you submit by Monday a letter brief on

14   the -- as I understand it, it's just one issue per custodian,

15   and that is the number of hits that were made with respect to

16   the searches by the custodians, searches for the custodians'

17   records.  That's all that needs to be -- that's all that I

18   think needs to be produced, but I'll wait until I get your

19   letter brief on Monday to make a judgment on it.

20        Ms. Goldenberg, if you want to reply to it, that's

21   fine as well, but we're going to resolve this by next

22   Wednesday.  All right?

23        MS. GOLDENBERG:  I'm happy to respond to that

24   promptly, Your Honor, and, you know, this is data that has

25   routinely been provided by every other defendant, so I can't

1    anticipate that our response will take too much time.

2         THE COURT:  All right.  Very well.  Anything else on

3    this issue then?

4         MS. GOLDENBERG:  Not on this issue.  I did also want

5    to note that, you know, we seem to be missing a bunch of

6    standard operating procedures from Aurobindo.

7         We, for example, have not received any standard

8    operating procedure that touches on what -- it appears to be

9    the core issue with this defendant, which is sourcing of

10   recovered or recycled solvents from an entity called Lantech,

11   and we've asked Aurobindo for a master list of all standard

12   operating procedures and have been told that they're looking

13   for it, but they haven't agreed at this point to produce it,

14   and we've also asked that all of those standard operating

15   procedures be produced, and we've been told that they're

16   looking for it.

17        And while I can appreciate that, we're at the point

18   where we're supposed to be taking depositions and these

19   standard operating procedures go to the core of what we need

20   to be talking about.

21        And so I would ask that the Court order Aurobindo to

22   produce those within 14 days so that we can do a meaningful

23   assessment of the documents and get these depositions moving.

24        THE COURT:  All right.  Aurobindo?

25        MS. HEINZ:  Your Honor, our productions do have

 1  standard operating procedures in them.  I have been talking

 2  with Marlene about this this week.

 3        (Screen freeze.)

 4        MS. HEINZ:  We've been talking last week and this

 5  week.  I asked her if she could let me know which SOPs she

 6  believes are missing from the production.  She hasn't been

 7  able to identify anything by a specific -- she hasn't been

 8  able to identify specifically anything.

 9        She sent me a list of descriptions of categories of

10  SOPs that she believes may be missing from the production, but

11  it doesn't sound like they've been all the way through the

12  documents to know one way or the other, and it's my

13  understanding that the SOPs are in there.

14        Nonetheless, I'm taking her list and I'm going

15  through the document productions to make sure that all of the

16  SOPs that she's described are in there, and I do intend to get

17  back to her on that, and I told her I'm happy to continue to

18  meet and confer with her on that and work this out.

19        So I would ask that an order not be entered today.  I

20  would say that this issue is not ripe and that we hopefully

21  should be able to work this out by the next conference.

22        THE COURT:  Okay.  Ms. Goldenberg.

23        MS. GOLDENBERG:  Your Honor, I appreciate that there

24  are times to work things out, but that time has sort of been

25  exhausted.  These topics have been in our document request for

1    months now, and it's not a question of whether or not they

2    should be produced, it's that they should have been produced

3    back in December when they were due, and they weren't, and,

4    you know, we, as Jessica just indicated, gave them a category

5    or many categories of SOPs we believe to have been missing.

6         We have been all the way through and have made a list

7    of every SOP that we have and it's incomplete and again, none

8    of them get to the core issue of this case.

9         So the burden is on the defendants.  This is -- you

10   know, they have to produce documents that are responsive, and

11   we -- all we've heard from every defense attorney today is, we

12   need more time, we need to brief this issue, we need to push

13   this back.  But, you know, we need to get depositions done.

14        THE COURT:  Right.

15        MS. GOLDENBERG:  And we can't until we have these

16   documents.  So I think at this point, you know, we've met and

17   conferred as much as we can, but we just need the order and we

18   need the documents.

19        THE COURT:  And what order are you asking for?

20        MS. GOLDENBERG:  We need the documents within 14

21   days, all the SOPs that should have been produced in response

22   to our document requests in the first place, and specifically,

23   any of those having to do with Lantech.

24        MS. HEINZ:  Your Honor, I would just reiterate that

25   we have produced standard operating procedures, and I'm not

 1  aware of any that are -- I'm not aware of any specific ones

 2  that are missing.  It's my understanding that all of the

 3  relevant ones are in there, and I am continuing to evaluate

 4  this and, certainly, if there are ones that we need to

 5  supplement our production with, I can assure you that that

 6  will happen before the depositions.

 7          THE COURT:  Ms. Goldenberg.

 8          MS. GOLDENBERG:  Before the depositions is a pretty

 9  squishy deadline, so again, I'll just reiterate my request for

10  14 days.

11          THE COURT:  All right.  Here's what I'm going to

12  suggest, Ms. Goldenberg.  Submit to me a proposed order that

13  would have the language that you want in it and the deadline

14  by which you want these documents.  Sometimes just having that

15  order moves things along, and it could be important.

16          So you submit to me a proposed order.  I'll take a

17  look at it.  If it's acceptable, we'll issue the order and so

18  we'll put this on a deadline.  All right?

19          MS. GOLDENBERG:  We appreciate that and will get that

20  to you no later than tomorrow.

21          THE COURT:  Thank you.

22          MR. ABRAHAM:  Your Honor, this is Eric Abraham.  With

23  the Court's permission, may I be excused from the call for my

24  2 p.m.?  I'll be passing the baton to Nakul Shah from my firm

25  for the balance of the call.  Thank you, Your Honor.

```
 1              THE COURT:  Thank you very much.  And, Mr. Trischler,
 2    I think if you're still here, I don't think we need you for
 3    anything else, if you need to get off the call.
 4              MR. TRISCHLER:  Thank you, Judge.
 5              THE COURT:  I'm pleased to see that the T3, the data
 6    issue has been resolved, so that there won't get any further
 7    briefing on that, and the Item No. 11 on the agenda is the
 8    request that the implementing order for the updated Short Form
 9    Complaint be entered, and I'll communicate with Judge Kugler
10    about having that order entered.
11              Anything else for today?
12              MR. SLATER:  Your Honor, there's one issue that I
13    think we're in agreement on, but I've been e-mailing with
14    Sarah Johnston on behalf of the defendants.
15              As Your Honor knows, we've been moving the deadline
16    for us to file one coherent, all-together motion to amend the
17    Complaints based on each of the decisions, and I was able to
18    confirm with Loretta yesterday that the next -- there's one
19    more decision, it's expected in several weeks, potentially, so
20    I was hopeful that we could agree that our motion to amend
21    would be due 30 days after that decision comes out, that way
22    we can do everything in one shot, which I think is probably
23    beneficial to everybody, so it could be handled in one
24    coherent motion.
25              THE COURT:  Yeah.  Any objection on the defense side?
```

 1          MS. JOHNSTON:  Your Honor, Sarah Johnston on behalf

 2  of the retailer and pharmacy defendants.  No objection from

 3  our group.  I'll defer to the other defendants, but I agree

 4  with Mr. Slater on this.

 5          THE COURT:  Okay.

 6          MR. GOLDBERG:  Your Honor, I don't believe there's

 7  any objection from any other defendants.

 8          THE COURT:  That makes sense.  Again, Mr. Slater,

 9  what I'll ask is that you submit to me a proposed order so we

10  get it on the record, and it would be due 30 days after the

11  issuance of the last MDT decision, okay?

12          MR. SLATER:  Will do, Your Honor.  Thank you.

13          THE COURT:  All right.  Anything else, then?

14          MR. GOLDBERG:  Nothing from defendants, Your Honor.

15          THE COURT:  All right.  Very well.  I think we can be

16  adjourned, then.  We'll have a call next Wednesday, normal CMC

17  call.

18          Anything else?

19          MR. SLATER:  I think we just broke the world record,

20  58 minutes on one of our conferences.

21          THE COURT:  Let's hope we accomplished something,

22  though.  That's the more important thing, and I note there's

23  things that are teed up for me now that are ripe for me now,

24  and that's what I want to concentrate on getting done.

25          All right.  Thank you all very much.

1             RESPONSE:  Thank you, Your Honor.

2             (1:58 p.m.)

3             - - - - - - - - - - - - - - - -

4

5             I certify that the foregoing is a correct transcript

6      from the record of proceedings in the above-entitled matter.

7

8      /S/ Karen Friedlander, CRR, RMR
       Court Reporter/Transcriber_____

9

10     February 17, 2021
       Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

**/S** [1] - 44:8

**0**

**07068** [1] - 1:13

**1**

**1** [5] - 11:9, 28:19, 33:1, 33:5, 33:19
**1,259** [1] - 32:16
**10022** [1] - 2:25
**103** [1] - 1:12
**11** [1] - 42:7
**11:59** [2] - 9:21, 12:22
**12** [2] - 7:3, 9:19
**13,000** [1] - 32:8
**14** [3] - 38:22, 40:20, 41:10
**15** [2] - 34:7, 36:25
**15219** [1] - 2:17
**17** [3] - 1:7, 3:2, 44:10
**17th** [1] - 2:7
**1835** [1] - 1:15
**19103** [2] - 1:16, 2:7
**19422** [1] - 2:20
**1:02** [1] - 3:2
**1:05** [1] - 1:8
**1:19-md-02875-RBK-KW** [1] - 1:5
**1:58** [1] - 44:2
**1st** [2] - 6:6, 6:7

**2**

**2** [7] - 4:10, 4:11, 11:10, 33:3, 33:6, 33:22, 41:24
**200** [1] - 2:20
**2020** [2] - 24:18, 28:7
**2021** [3] - 1:7, 3:2, 44:10
**2029** [1] - 2:14
**2150** [1] - 2:4
**2500** [1] - 2:10
**258** [1] - 32:15
**28** [1] - 24:18
**2900** [1] - 1:15
**2:00** [1] - 4:20

**3**

**3** [1] - 30:5
**30** [3] - 2:7, 42:21, 43:10
**300** [1] - 2:14
**30305** [1] - 2:10
**3333** [1] - 2:10

**38th** [1] - 2:17

**4**

**400** [1] - 14:20
**4057** [1] - 2:24
**450** [1] - 2:20
**4th** [1] - 2:24

**5**

**5** [3] - 6:18, 26:18, 28:19
**55402** [1] - 2:4
**575** [1] - 2:24
**58** [1] - 43:20

**6**

**6** [1] - 28:17
**60-day** [1] - 12:11

**7**

**701** [1] - 1:19
**70130** [1] - 1:19
**756-0160** [1] - 1:23

**8**

**800** [1] - 2:3
**856** [1] - 1:23

**9**

**90067-2904** [1] - 2:14
**9:12** [1] - 23:2

**A**

**ability** [1] - 19:7
**able** [25] - 3:7, 4:10, 4:21, 6:17, 8:4, 8:12, 11:9, 11:11, 11:13, 12:10, 12:12, 13:11, 18:5, 19:7, 28:2, 30:20, 31:6, 31:9, 33:9, 34:5, 36:17, 39:7, 39:8, 39:21, 42:17
**above-entitled** [1] - 44:6
**Abraham** [4] - 4:18, 29:9, 31:7, 41:22
**ABRAHAM** [5] - 2:23, 4:18, 29:8, 31:21, 41:22
**absent** [1] - 24:25
**accelerated** [1] - 5:1
**acceptable** [7] - 5:18, 5:23, 6:23, 7:5, 7:10,

41:17
**acceptance** [1] - 26:20
**accomplished** [1] - 43:21
**accurate** [1] - 27:4
**Actavis** [2] - 2:11
**ACTION** [1] - 1:4
**action** [1] - 7:2
**actual** [2] - 14:13, 15:3
**Adam** [5] - 3:10, 4:14, 5:9, 7:23, 21:12
**ADAM** [1] - 1:12
**added** [1] - 24:2
**additional** [1] - 24:2
**address** [14] - 5:15, 6:8, 6:15, 6:16, 8:4, 13:2, 13:10, 13:18, 13:20, 23:18, 24:11, 24:14, 25:3, 28:5
**addressed** [3] - 7:21, 17:10, 35:12
**addresses** [1] - 13:8
**addressing** [3] - 7:23, 29:6, 33:24
**adequacy** [1] - 15:8, 15:14, 15:17
**adequate** [2] - 19:22, 33:7
**adjourned** [1] - 43:16
**admittedly** [2] - 9:20, 17:25
**affect** [1] - 22:11
**afternoon** [4] - 4:2, 4:3, 13:21, 29:8
**agenda** [8] - 3:23, 5:5, 26:18, 31:10, 31:13, 31:15, 42:7
**ago** [1] - 21:22
**agree** [9] - 5:9, 5:10, 5:24, 16:4, 23:5, 33:11, 34:3, 42:20, 43:3
**agreeable** [1] - 9:7
**agreed** [11] - 9:5, 15:22, 16:16, 17:11, 17:13, 17:20, 22:1, 23:24, 27:11, 34:7, 38:13
**agreeing** [2] - 34:11, 34:14
**agreement** [5] - 8:3, 9:17, 19:16, 20:15, 42:13
**ahead** [2] - 8:5, 23:25
**aided** [1] - 1:25
**alert** [1] - 4:22
**ALFANO** [1] - 2:16
**ALL** [1] - 3:1
**all-together** [1] - 42:16

**allow** [2] - 13:1, 18:12
**allowed** [1] - 22:10
**allows** [1] - 18:16
**amend** [2] - 42:16, 42:20
**amended** [8] - 9:18, 10:3, 10:9, 10:19, 12:21, 13:20, 25:9
**AND** [1] - 1:5
**Angeles** [1] - 2:14
**answer** [2] - 7:3, 35:13
**answers** [1] - 35:8
**anticipate** [4] - 16:8, 30:6, 34:14, 38:1
**apologize** [1] - 22:19
**appear** [1] - 16:6
**appeared** [2] - 10:4, 14:6
**appearing** [1] - 25:7
**applications** [1] - 27:23
**apply** [1] - 28:14
**appreciate** [9] - 4:16, 20:18, 25:19, 32:2, 34:3, 37:6, 38:17, 39:23, 41:19
**approach** [1] - 5:23
**approached** [1] - 34:11
**appropriate** [1] - 10:10
**approved** [1] - 26:23
**area** [1] - 8:9
**argue** [1] - 12:4
**argument** [11] - 6:3, 6:12, 6:14, 6:16, 6:17, 9:8, 9:10, 11:3, 18:2, 19:12, 22:8
**arrangements** [1] - 3:8
**assertion** [2] - 19:21, 20:6
**assessing** [1] - 20:1
**assessment** [2] - 33:5, 38:23
**assumptions** [1] - 29:21
**assure** [1] - 41:5
**Atlanta** [1] - 2:10
**attention** [3] - 16:7, 16:10, 37:7
**attorney** [1] - 40:11
**attorneys** [2] - 14:5, 14:6
**Aurobindo** [16] - 2:21, 9:5, 24:11, 24:16, 25:1, 25:4, 31:23, 32:7, 32:18, 33:25, 34:8, 34:12, 38:6, 38:11, 38:21, 38:24

**Aurobindo's** [2] - 32:1, 32:4
**Aurolife** [1] - 2:21
**Aurrobindo** [1] - 2:21
**author** [1] - 12:2
**authored** [1] - 9:2
**available** [1] - 22:17
**Avenue** [2] - 2:3, 2:24
**aware** [3] - 8:13, 41:1

**B**

**balance** [2] - 30:6, 41:25
**BARNES** [1] - 2:13
**based** [3] - 9:17, 24:1, 42:17
**basis** [5] - 10:17, 18:25, 19:21, 20:3, 28:16
**baton** [1] - 41:24
**become** [1] - 10:13
**begin** [1] - 23:25
**beginning** [1] - 14:8
**behalf** [12] - 3:10, 3:19, 6:23, 7:24, 21:1, 24:4, 25:4, 29:7, 29:9, 33:25, 42:14, 43:1
**behind** [2] - 6:4, 31:20
**believes** [2] - 39:6, 39:10
**Bell** [1] - 2:20
**beneficial** [1] - 42:23
**best** [1] - 4:5
**better** [3] - 12:15, 29:12, 33:5
**between** [2] - 14:15, 30:7
**beyond** [2] - 12:15, 14:14
**big** [1] - 24:22
**bit** [2] - 6:4, 7:20
**Bless** [1] - 32:16
**Blue** [1] - 2:20
**board** [2] - 11:16, 15:25
**boat** [1] - 4:19
**BOSICK** [1] - 2:16
**bottom** [1] - 27:10
**breakdown** [1] - 28:16
**brief** [17] - 6:6, 21:9, 23:8, 23:12, 25:13, 25:19, 25:20, 26:1, 34:20, 34:22, 35:7, 36:9, 36:14, 37:10, 37:13, 37:19, 40:12
**briefed** [2] - 21:21, 25:25
**briefing** [3] - 6:2,

22:10, 42:7
**briefly** [1] - 35:4
**briefs** [1] - 26:3
**bring** [3] - 12:5, 35:3, 37:7
**broke** [1] - 43:19
**broken** [1] - 32:6
**brought** [2] - 16:7, 16:10
**bunch** [1] - 38:5
**burden** [8] - 18:2, 19:6, 20:5, 23:17, 24:15, 24:25, 25:12, 40:9
**burdensome** [3] - 17:18, 24:20, 36:24
**BY** [10] - 1:12, 1:15, 1:18, 2:3, 2:6, 2:9, 2:13, 2:16, 2:19, 2:23

## C

**CA** [1] - 2:14
**Camp** [1] - 1:19
**captured** [1] - 18:15
**care** [1] - 6:1
**case** [3] - 16:12, 37:5, 40:8
**cases** [2] - 18:21, 26:22
**cast** [8] - 9:6, 9:12, 10:7, 15:18, 15:23, 16:4, 23:13, 24:21
**categories** [2] - 39:9, 40:5
**category** [1] - 40:4
**cc** [1] - 13:5
**central** [2] - 28:15, 28:16
**Centre** [1] - 2:17
**Century** [1] - 2:14
**certain** [5] - 7:12, 18:15, 23:24, 27:23, 30:9
**certainly** [14] - 3:13, 4:17, 4:24, 8:7, 13:1, 13:17, 15:12, 15:24, 16:9, 17:23, 20:22, 21:8, 26:4, 41:4
**certify** [1] - 44:5
**cetera** [3] - 13:5, 17:4, 20:1
**chain** [1] - 8:17
**challenge** [2] - 11:14, 20:1
**challenges** [1] - 4:9
**chance** [2] - 10:2, 23:3
**characters** [8] - 9:7, 9:12, 10:7, 15:19,

15:23, 16:4, 23:13, 24:21
**choice** [3] - 18:3, 19:12, 19:13
**CIPRIANI** [1] - 2:19
**circle** [1] - 26:18
**Circuit** [1] - 8:23
**cited** [2] - 8:22, 11:7
**CIVIL** [1] - 1:4
**claim** [2] - 13:12, 19:12
**claimed** [1] - 23:15
**claims** [1] - 19:8
**clarification** [1] - 16:24, 17:23
**clarify** [1] - 28:2
**clear** [4] - 18:4, 20:16, 22:1, 33:19
**Clem** [1] - 4:1
**CLEM** [1] - 2:16
**client** [4] - 4:15, 28:1, 30:10, 30:14
**closer** [1] - 25:14
**CMC** [1] - 43:16
**CMCs** [2] - 22:21, 23:6
**co** [2] - 13:1, 13:18
**Co** [1] - 2:15
**co-counsel** [2] - 13:1, 13:18
**codefendants** [1] - 34:17
**coherent** [2] - 42:16, 42:24
**colleague** [2] - 13:25, 29:10
**colloquially** [1] - 9:6
**coming** [1] - 8:15
**Commencing** [1] - 1:8
**comments** [1] - 30:23
**commit** [1] - 9:25
**communicate** [2] - 37:1, 42:9
**communication** [3] - 19:18, 19:23, 29:20
**communications** [3] - 17:11, 20:14, 31:14
**companies** [1] - 22:3
**company** [1] - 28:15
**compared** [2] - 25:17, 34:9
**competing** [1] - 5:4
**Complaint** [2] - 7:4, 42:9
**Complaints** [1] - 42:17
**complaints** [1] - 6:19
**complete** [2] - 6:2, 11:3
**completely** [1] - 8:17
**compliant** [1] - 8:10

**compressed** [1] - 28:25
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concentrate** [1] - 43:24
**concern** [1] - 32:22
**concerning** [1] - 32:4
**concerns** [2] - 21:10, 30:8
**confer** [11] - 16:11, 21:6, 23:3, 26:10, 27:12, 30:5, 30:16, 31:19, 35:10, 35:12, 39:18
**conference** [7] - 4:9, 4:10, 4:11, 5:22, 21:14, 23:19, 39:21
**CONFERENCE** [1] - 1:6
**conferences** [1] - 43:20
**conferred** [1] - 40:17
**confers** [1] - 25:9
**confident** [1] - 36:20
**confirm** [4] - 5:13, 6:6, 15:24, 42:18
**confirmation** [1] - 22:25
**confirming** [1] - 5:20
**conformance** [1] - 12:5
**Conlee** [3] - 16:14, 22:15, 23:22
**CONLEE** [1] - 1:18
**connection** [1] - 31:15
**consultant** [4] - 27:20, 30:1, 30:12, 30:15
**consultants** [1] - 22:5
**consulting** [1] - 27:20
**consuming** [1] - 19:1
**contamination** [2] - 28:18, 28:20
**contemplates** [1] - 11:24
**contentious** [1] - 6:9
**contents** [1] - 15:4
**context** [1] - 18:6
**continue** [4] - 31:18, 34:24, 35:2, 39:17
**CONTINUED** [1] - 2:1
**continuing** [1] - 41:3
**control** [1] - 28:13
**conversation** [2] - 11:15, 18:8
**conversations** [1] - 34:2
**core** [3] - 38:9, 38:19, 40:8

**corporate** [1] - 11:19
**correct** [8] - 8:7, 9:3, 16:4, 16:15, 22:20, 27:17, 30:22, 44:5
**correctly** [1] - 35:23
**counsel** [17] - 3:24, 5:19, 8:7, 9:3, 11:3, 13:1, 13:18, 17:11, 17:13, 24:5, 24:14, 28:1, 29:14, 29:16, 29:21, 29:24, 32:1
**count** [1] - 32:19
**counts** [2] - 32:21, 34:20
**couple** [5] - 5:11, 5:12, 8:18, 25:8, 32:3
**course** [3] - 3:5, 3:17, 4:8
**Court** [2] - 1:22, 44:8
**court** [1] - 3:3
**COURT** [1] - 1:2
**Court's** [3] - 7:1, 37:7, 41:23
**covered** [1] - 20:8
**covers** [1] - 20:7
**create** [1] - 18:16
**creates** [1] - 29:22
**CRR** [1] - 44:8
**curve** [1] - 28:1
**custodial** [2] - 32:12, 33:21
**custodian** [9] - 29:22, 29:23, 33:2, 33:19, 35:18, 36:4, 36:6, 36:23, 37:14
**custodians** [9] - 32:14, 32:17, 33:6, 34:7, 34:10, 34:12, 34:15, 36:25, 37:16
**custodians'** [1] - 37:16
**customary** [1] - 19:5
**CVS** [1] - 2:15

## D

**data** [2] - 37:24, 42:5
**databases** [3] - 27:24, 30:9, 30:14
**Date** [1] - 44:10
**date** [4] - 7:14, 14:8, 20:13, 32:21
**dated** [1] - 24:18
**dates** [2] - 5:16, 22:25
**David** [3] - 22:16, 22:17, 22:18
**DAVID** [1] - 1:15
**Davis** [2] - 14:1, 15:10
**days** [5] - 38:22,

40:21, 41:10, 42:21, 43:10
**de** [4] - 14:18, 14:22, 15:1, 32:23
**de-designated** [3] - 14:18, 14:22, 15:1
**de-duplicated** [1] - 32:23
**deadline** [9] - 7:3, 8:15, 9:24, 12:15, 41:9, 41:13, 41:18, 42:15
**deal** [1] - 24:23
**dealing** [5] - 13:14, 20:20, 22:13, 28:1, 32:10
**December** [2] - 24:18, 40:3
**decision** [6] - 6:3, 11:14, 34:21, 42:19, 42:21, 43:11
**decisions** [1] - 42:17
**deep** [1] - 22:8
**Defendant** [5] - 2:8, 2:15, 2:18, 2:21, 2:25
**defendant** [11] - 5:20, 5:21, 10:15, 10:17, 13:15, 15:16, 17:13, 37:25, 38:9
**defendant-by-defendant** [1] - 10:17
**Defendants** [1] - 2:11
**defendants** [29] - 5:12, 6:23, 6:25, 7:12, 7:13, 7:22, 9:4, 9:7, 11:15, 12:4, 15:21, 16:1, 17:2, 17:22, 18:9, 19:9, 22:11, 23:6, 23:23, 25:11, 25:18, 32:8, 34:9, 40:9, 42:14, 43:2, 43:3, 43:7, 43:14
**defendants'** [4] - 5:5, 18:3, 19:12, 19:13
**Defense** [2] - 2:8, 2:18
**defense** [12] - 3:19, 5:18, 6:22, 8:7, 8:12, 9:3, 11:3, 21:13, 21:21, 25:24, 40:11, 42:25
**defenses** [1] - 6:25
**defer** [2] - 7:6, 43:3
**deficiencies** [6] - 8:9, 16:1, 27:2, 27:14, 27:15, 28:12
**deficient** [1] - 12:24
**delaying** [1] - 35:14
**demonstrate** [1] -

20:19
**department** [6] - 10:5, 13:9, 14:10, 16:5, 17:12, 19:25
**departments** [1] - 17:3
**deposition** [3] - 5:5, 5:8, 22:25
**depositions** [8] - 5:21, 29:1, 31:9, 38:18, 38:23, 40:13, 41:6, 41:8
**described** [1] - 39:16
**describing** [2] - 13:3
**description** [2] - 11:11, 18:6
**descriptions** [7] - 9:9, 10:9, 10:10, 15:14, 15:25, 26:9, 39:9
**designate** [1] - 18:3
**designated** [3] - 14:18, 14:22, 15:1
**designations** [2] - 8:15, 26:10
**detail** [1] - 12:1
**different** [1] - 22:23
**difficult** [2] - 36:7, 36:22
**difficulty** [1] - 32:7
**digest** [1] - 10:3
**diligent** [1] - 29:15
**diligently** [1] - 30:25
**directed** [1] - 21:18
**directly** [1] - 16:19
**directs** [1] - 27:16
**disclose** [1] - 19:14
**discontinued** [1] - 28:7
**discovery** [3] - 18:11, 27:1, 27:2
**discuss** [2] - 4:16, 30:13
**discussed** [2] - 5:8, 21:15
**discussing** [1] - 15:18
**discussion** [2] - 27:3, 30:11
**discussions** [3] - 27:13, 31:25, 35:2
**dismissal** [1] - 26:20
**dispute** [2] - 26:12, 37:11
**DISTRICT** [2] - 1:2, 1:2
**District** [1] - 8:24
**dive** [1] - 8:11
**document** [15] - 10:5, 11:13, 12:2, 13:4, 13:12, 17:15, 19:9, 20:2, 34:5, 36:5, 36:17, 39:15, 39:25,

40:22
**documents** [37] - 8:16, 9:1, 10:9, 14:17, 14:21, 15:1, 15:4, 15:5, 15:6, 17:17, 18:3, 18:7, 18:12, 18:14, 18:18, 18:19, 19:13, 21:4, 25:16, 26:12, 28:12, 30:21, 32:8, 32:15, 32:24, 33:1, 33:3, 33:20, 33:22, 35:17, 38:23, 39:12, 40:10, 40:16, 40:18, 40:20, 41:14
**done** [6] - 14:16, 19:5, 27:18, 33:10, 40:13, 43:24
**doubts** [1] - 27:23
**down** [3] - 14:20, 26:11, 28:22
**drop** [1] - 26:10
**dropped** [1] - 8:16
**DUANE** [1] - 2:6
**due** [5] - 6:6, 6:7, 40:3, 42:21, 43:10
**duplicate** [1] - 29:22
**duplicated** [1] - 32:23
**during** [2] - 4:8, 28:19

---

## E

**e-discovery** [1] - 18:11
**e-mail** [11] - 8:17, 13:8, 13:10, 17:14, 20:2, 20:14, 22:24, 23:14, 28:4, 29:19
**e-mailed** [1] - 21:25
**e-mailing** [1] - 42:13
**e-mails** [6] - 8:19, 18:13, 22:23, 28:4, 28:6, 28:24
**easiest** [1] - 12:7
**easily** [2] - 18:5, 18:13
**East** [1] - 2:14
**educate** [1] - 36:24
**effect** [1] - 28:19
**efficient** [1] - 19:10
**Eisenhower** [1] - 1:12
**electricity** [1] - 14:3
**employed** [1] - 14:6
**employees** [1] - 22:4
**employment** [1] - 14:8
**encourage** [1] - 31:18
**end** [2] - 22:23, 32:17
**engaged** [1] - 34:13
**entered** [1] - 39:19, 42:9, 42:10
**entire** [1] - 23:13

**entirety** [1] - 14:13
**entitled** [2] - 30:20, 44:6
**entity** [2] - 34:12, 38:10
**entries** [2] - 14:20, 24:19
**Eric** [3] - 4:18, 29:9, 41:22
**ERIC** [1] - 2:23
**ESI** [7] - 12:6, 27:21, 28:11, 30:1, 30:12, 30:15, 30:19
**ESQUIRE** [12] - 1:12, 1:15, 1:18, 1:18, 2:3, 2:6, 2:9, 2:13, 2:16, 2:19, 2:23, 2:23
**et** [3] - 13:5, 17:4, 20:1
**Ethan** [3] - 25:6, 25:7, 32:1
**evaluate** [6] - 17:4, 18:1, 19:8, 34:5, 36:17, 41:3
**evaluation** [1] - 18:7
**evening** [2] - 9:19, 9:21
**event** [1] - 4:7
**exactly** [1] - 20:19
**example** [8] - 8:2, 11:17, 12:2, 28:3, 28:13, 29:19, 32:16, 38:7
**examples** [4] - 8:21, 11:16, 28:9, 28:21
**excused** [1] - 41:23
**exemplars** [1] - 21:19
**exercise** [1] - 20:21
**exhausted** [1] - 39:25
**exist** [1] - 37:12
**expanded** [1] - 13:7
**expect** [5] - 14:21, 16:20, 20:10, 27:12, 31:14
**expected** [1] - 42:19
**expecting** [1] - 4:20
**expeditiously** [3] - 6:13, 27:17, 29:18
**extension** [1] - 12:11
**extent** [5] - 20:7, 21:7, 23:23, 27:14, 37:12

---

## F

**faces** [1] - 3:6
**fact** [1] - 4:23
**fail** [1] - 34:4
**fair** [1] - 30:22
**fairness** [1] - 10:1
**familiar** [2] - 8:23, 28:10

**families** [2] - 33:21, 36:5
**fantastic** [1] - 3:9
**far** [3] - 10:8, 13:15, 35:18
**fast** [1] - 26:8
**FDA** [1] - 11:21
**February** [4] - 1:7, 3:2, 9:19, 44:10
**feet** [1] - 4:5
**Feldman** [1] - 25:6
**few** [6] - 11:2, 14:18, 28:17, 28:21, 29:2, 32:15
**fields** [1] - 12:6
**figure** [1] - 9:1
**file** [3] - 26:13, 33:21, 42:16
**files** [2] - 32:12, 32:14
**filling** [1] - 24:21
**finally** [1] - 8:21
**fine** [5] - 5:25, 26:14, 37:21
**fire** [1] - 30:24
**firm** [1] - 41:24
**first** [10] - 8:6, 8:25, 9:12, 10:12, 11:7, 20:14, 20:17, 21:4, 32:22, 40:22
**five** [1] - 37:3
**fix** [1] - 31:8
**fixed** [1] - 29:5
**flag** [1] - 26:24
**Floor** [2] - 2:17, 2:24
**focused** [1] - 29:5
**focusing** [1] - 25:10
**folks** [1] - 9:21
**follow** [1] - 3:23
**following** [2] - 5:22, 37:11
**FOR** [1] - 1:2
**foregoing** [1] - 44:5
**foreign** [1] - 34:12
**Form** [1] - 42:8
**forth** [1] - 17:21
**forthwith** [1] - 24:6
**forward** [2] - 5:6, 31:19
**four** [1] - 9:4
**FREEMAN** [1] - 1:11
**freeze** [2] - 21:17, 39:3
**Friday** [13] - 4:9, 5:13, 5:20, 9:19, 9:21, 10:19, 12:21, 13:16, 23:10, 23:12, 25:14, 25:24, 34:23
**Friedlander** [3] - 1:22, 3:3, 44:8
**friedlanderreporter @gmail.com** [1] -

1:23
**full** [3] - 13:11, 36:20
**fulsome** [1] - 26:8

---

## G

**gaps** [1] - 12:1
**general** [1] - 11:23
**generate** [2] - 18:13, 19:1
**generic** [1] - 11:21
**Georgia** [1] - 2:10
**given** [3] - 9:24, 11:15, 25:23
**glad** [3] - 3:6, 16:11, 27:11
**global** [1] - 22:12
**globally** [1] - 22:21
**goal** [1] - 8:10
**Goldberg** [2] - 3:20, 20:25
**GOLDBERG** [6] - 2:6, 3:20, 5:25, 20:25, 43:6, 43:14
**Goldenberg** [8] - 7:7, 24:11, 31:25, 35:16, 37:20, 39:22, 41:7, 41:12
**GOLDENBERG** [25] - 2:2, 2:3, 7:8, 7:10, 7:18, 24:10, 24:14, 31:24, 33:15, 33:18, 35:4, 35:7, 35:19, 35:22, 35:24, 36:4, 36:8, 36:11, 37:23, 38:4, 39:23, 40:15, 40:20, 41:8, 41:19
**GOLOMB** [1] - 1:14
**GORDON** [1] - 2:16
**governance** [1] - 11:19
**great** [3] - 7:18, 20:5, 20:7
**GREENBERG** [1] - 2:9
**group** [1] - 43:3
**Group** [2] - 2:8, 2:18
**groups** [1] - 13:14
**guess** [6] - 6:23, 9:11, 11:3, 36:1, 36:19, 36:21

---

## H

**hand** [5] - 3:13, 11:5, 13:13, 18:17, 29:11
**handled** [1] - 42:23
**handling** [2] - 7:7, 29:9
**happy** [4] - 4:4, 18:24, 37:23, 39:17

**hard** [5] - 9:22, 21:20,
21:22, 28:5, 32:23
**Health** [1] - 2:15
**hear** [9] - 6:3, 6:12,
6:16, 9:11, 9:12,
13:22, 13:23, 16:11,
21:13
**heard** [5] - 10:21,
20:17, 24:14, 24:24,
40:11
**hearing** [2] - 17:24,
20:14
**Heinz** [3] - 25:5, 34:1,
36:12
**HEINZ** [9] - 2:19, 25:5,
25:22, 34:1, 36:13,
36:25, 38:25, 39:4,
40:24
**held** [2] - 8:19, 10:6
**hello** [1] - 22:18
**Hello** [2] - 7:8, 7:9
**hence** [1] - 22:9
**Hetero** [14] - 2:25,
4:18, 4:22, 4:25, 9:4,
17:20, 27:6, 27:7,
27:11, 27:17, 28:22,
29:4, 29:7, 29:9
**Hi** [2] - 25:5, 34:1
**high** [2] - 25:18, 32:17
**highlighting** [1] -
28:21
**HILL** [1] - 2:22
**HILTON** [3] - 1:18,
13:21, 13:24
**hit** [4] - 11:4, 32:19,
32:21, 34:19
**hits** [4] - 33:13, 36:3,
36:23, 37:15
**hold** [3] - 26:4, 26:14,
35:1
**honest** [1] - 13:16
**HONIK** [1] - 1:14
**Honor** [68] - 3:12,
3:20, 4:22, 5:10,
5:14, 5:25, 6:10, 7:6,
7:8, 7:25, 8:6, 8:13,
8:22, 9:14, 10:25,
11:4, 13:14, 13:21,
15:9, 15:24, 16:3,
16:14, 16:24, 17:25,
19:4, 20:11, 20:25,
21:1, 21:12, 21:15,
21:18, 21:22, 21:25,
22:15, 22:18, 22:20,
23:2, 23:10, 24:10,
25:5, 25:22, 26:2,
27:5, 28:10, 29:8,
31:2, 31:24, 32:13,
34:1, 34:19, 34:21,
34:23, 35:4, 35:22,

36:13, 37:24, 38:25,
39:23, 40:24, 41:22,
41:25, 42:12, 42:15,
43:1, 43:6, 43:12,
43:14, 44:1
**Honor's** [1] - 24:1
**HONORABLE** [1] - 1:9
**hope** [2] - 25:6, 43:21
**hopeful** [3] - 5:14,
26:9, 42:20
**hopefully** [6] - 6:16,
8:12, 13:21, 24:17,
31:7, 39:20
**hoping** [1] - 8:20
**house** [1] - 14:6
**hundred** [3] - 24:19,
24:22, 25:17
**hundreds** [2] - 14:6,
22:3

**I**

**icy** [2] - 15:11
**identified** [4] - 10:4,
19:17, 19:23, 29:16
**identify** [9] - 11:9,
16:18, 17:2, 18:5,
18:18, 19:22, 23:13,
39:7, 39:8
**identifying** [1] - 8:25
**ignored** [1] - 22:23
**imagine** [4] - 21:21,
21:23, 24:21, 26:2
**implementing** [1] -
42:8
**important** [6] - 19:19,
19:20, 28:12, 30:18,
41:15, 43:22
**IN** [1] - 1:4
**in-house** [1] - 14:6
**Inc** [3] - 2:11, 2:12,
2:21
**include** [1] - 32:14
**included** [2] - 6:21,
6:22
**incomplete** [1] - 40:7
**incredibly** [2] - 17:18,
18:25
**index** [1] - 27:15
**India** [1] - 34:12
**indicate** [1] - 27:2
**indicated** [1] - 40:4
**indication** [1] - 33:13
**individual** [2] - 7:13,
7:21
**Industries** [1] - 2:11
**information** [18] -
12:10, 12:14, 14:5,
14:9, 14:11, 17:17,
18:15, 19:24, 20:4,

20:10, 21:3, 23:17,
24:25, 25:2, 33:4,
33:8, 34:4, 36:16
**informative** [1] - 15:6
**informed** [3] - 7:12,
11:12, 11:14
**initiated** [1] - 14:16
**inside** [1] - 16:5
**instead** [1] - 25:7
**intend** [2] - 6:2, 39:16
**intends** [1] - 15:12
**involvement** [1] -
18:20
**IRBESARTAN** [1] -
1:5
**Irbesartan** [2] - 6:18,
26:22
**issuance** [1] - 43:11
**issue** [55] - 4:7, 5:22,
6:3, 6:9, 7:7, 7:24,
10:8, 10:12, 10:13,
10:15, 11:2, 11:7,
16:7, 16:15, 17:9,
17:24, 18:21, 19:6,
19:15, 20:13, 21:8,
21:9, 21:14, 21:24,
22:12, 22:14, 22:21,
23:5, 23:8, 24:15,
25:13, 25:21, 29:19,
29:20, 30:9, 30:10,
30:13, 31:17, 32:10,
34:3, 34:20, 35:8,
36:10, 36:15, 37:4,
37:14, 38:3, 38:4,
38:9, 39:20, 40:8,
40:12, 41:17, 42:6,
42:12
**issues** [27] - 3:12,
3:21, 4:8, 4:13, 4:21,
4:25, 5:14, 8:13,
8:24, 10:14, 10:23,
11:4, 11:18, 13:24,
13:13, 15:25, 16:10,
16:18, 24:12, 27:18,
29:14, 29:15, 30:6,
30:19, 30:25, 32:3
**item** [2] - 6:18, 27:1
**Item** [2] - 26:18, 42:7
**items** [1] - 3:25
**itself** [1] - 27:15

**J**

**JERSEY** [1] - 1:2
**Jersey** [2] - 1:13, 8:24
**JESSICA** [1] - 2:19
**Jessica** [4] - 25:5,
32:1, 34:1, 40:4
**Jessica's** [1] - 35:11
**job** [3] - 3:9, 14:9,

19:25
**John** [1] - 13:25
**JOHN** [1] - 1:15
**Johns** [1] - 32:16
**JOHNSTON** [2] - 2:13,
43:1
**Johnston** [2] - 42:14,
43:1
**joined** [1] - 29:10
**Joint** [2] - 2:8, 2:18
**joint** [2] - 26:19, 26:22
**Judge** [5] - 4:1, 23:20,
32:4, 42:4, 42:9
**judge** [1] - 4:20
**judgment** [2] - 23:18,
37:19
**jump** [2] - 3:14, 9:8
**jumping** [1] - 10:8
**juncture** [1] - 30:4
**jurisdiction** [1] - 7:1

**K**

**KANNER** [1] - 1:17
**Karen** [3] - 1:22, 3:3,
44:8
**KATZ** [1] - 1:11
**key** [2] - 14:9, 14:11
**knowledge** [1] - 29:12
**knowledgeable** [1] -
18:8
**knows** [2] - 30:14,
42:15
**Kugler** [1] - 42:9

**L**

**Labs** [4] - 2:25, 4:18,
4:22, 29:10
**laid** [2] - 12:9, 28:10
**language** [5] - 6:19,
6:20, 6:24, 7:5,
41:13
**Lantech** [2] - 38:10,
40:23
**large** [1] - 15:1
**larger** [1] - 32:15
**Larry** [1] - 3:7
**Lasalle** [1] - 2:3
**last** [9] - 9:19, 10:19,
21:5, 22:21, 22:23,
22:25, 23:1, 39:4,
43:11
**late** [2] - 9:21, 22:24
**law** [5] - 8:22, 11:8,
11:24, 18:4, 37:5
**LAW** [1] - 2:2
**lawsuit** [1] - 7:1
**lawyer** [1] - 10:4
**lawyer's** [1] - 18:20

**lawyers** [10] - 11:2,
13:3, 16:6, 16:25,
17:6, 17:12, 19:22,
23:14, 24:6, 24:8
**LAYNE** [1] - 1:18
**leading** [1] - 15:10
**learning** [1] - 27:25
**least** [3] - 9:4, 10:18,
24:5
**leave** [1] - 4:11
**legal** [5] - 16:5, 17:12,
23:1, 25:10, 35:9
**legend** [9] - 14:14,
15:18, 16:5, 16:16,
16:17, 16:21, 20:15,
23:24, 24:1
**legitimate** [1] - 18:1
**less** [3] - 34:10, 34:16,
37:3
**letter** [9] - 3:23, 20:18,
21:3, 21:22, 23:8,
23:12, 37:10, 37:13,
37:19
**letters** [3] - 3:23, 5:1,
5:4
**level** [4] - 9:8, 11:10,
17:17, 20:8
**levels** [1] - 9:10
**Lexington** [1] - 2:24
**liability** [1] - 28:16
**LIABILITY** [1] - 1:5
**light** [1] - 30:24
**likely** [1] - 34:13
**Limited** [1] - 34:13
**limited** [1] - 13:2
**line** [1] - 27:10
**lines** [1] - 24:22
**list** [11] - 17:1, 17:14,
19:1, 34:7, 34:10,
34:11, 34:15, 38:11,
39:9, 39:14, 40:6
**listed** [1] - 17:15
**lists** [1] - 12:6
**literally** [1] - 22:3
**LITIGATION** [1] - 1:5
**litigation** [2] - 11:18,
28:16
**litigations** [1] - 19:6
**LLC** [4] - 1:11, 1:17,
2:11, 2:21
**LLP** [5] - 2:6, 2:9,
2:13, 2:16, 2:22
**located** [1] - 14:2
**LOCKARD** [8] - 16:3,
16:22, 17:8, 18:10,
20:11, 21:24, 23:9,
23:20
**Lockard** [9] - 16:3,
16:15, 16:21, 16:25,
21:10, 22:22, 23:4,

23:7, 24:4
**LOCKHARD** [1] - 2:9
**log** [33] - 9:16, 9:19, 10:3, 10:4, 10:12, 10:14, 10:19, 12:21, 13:8, 13:20, 13:25, 14:14, 14:19, 15:8, 15:12, 15:17, 16:6, 16:8, 16:17, 17:7, 17:15, 17:25, 18:13, 18:17, 19:13, 20:15, 20:23, 21:4, 22:14, 23:1, 24:17, 25:10, 25:11
**logged** [1] - 18:12
**logs** [13] - 7:19, 8:10, 8:11, 8:22, 9:1, 11:11, 11:20, 12:1, 12:5, 12:19, 21:19, 24:9, 26:17
**look** [8] - 12:19, 15:12, 18:5, 25:14, 25:16, 29:3, 36:1, 41:17
**looked** [1] - 8:15
**looking** [7] - 27:11, 28:20, 29:25, 33:12, 36:3, 38:12, 38:16
**looks** [2] - 5:6, 24:4
**Loretta** [1] - 42:18
**Los** [1] - 2:14
**Losartan** [2] - 6:18, 26:21
**LOSARTAN** [1] - 1:4
**Louisiana** [1] - 1:19
**Ltd** [2] - 2:11, 2:21

## M

**macro** [1] - 23:5
**MacStravic** [1] - 3:7
**magistrate** [1] - 4:20
**mail** [11] - 8:17, 13:8, 13:10, 17:14, 20:2, 20:14, 22:24, 23:14, 28:4, 29:19
**mailed** [1] - 21:25
**mailing** [1] - 42:13
**mails** [6] - 8:19, 18:13, 22:23, 28:4, 28:6, 28:24
**major** [1] - 8:9
**management** [1] - 20:8
**manual** [2] - 28:13, 28:14
**manufacturing** [1] - 28:15
**March** [4] - 6:6, 6:7, 28:7, 29:2
**marked** [1] - 8:17

**Market** [1] - 1:15
**Marlene** [7] - 7:7, 24:10, 25:8, 31:24, 34:2, 34:8, 39:2
**MARLENE** [1] - 2:3
**MASTER** [1] - 1:9
**master** [1] - 38:11
**matter** [5] - 10:20, 11:13, 27:3, 31:19, 44:6
**MAZIE** [1] - 1:11
**MDT** [1] - 43:11
**mean** [10] - 7:14, 7:17, 17:23, 25:12, 25:17, 25:24, 26:3, 32:14, 34:9, 36:18
**meaningful** [1] - 38:22
**mechanical** [1] - 1:24
**meet** [10] - 16:11, 16:18, 21:6, 25:9, 26:9, 27:12, 31:18, 35:10, 35:12, 39:18
**meet-and-confer** [2] - 35:10, 35:12
**meet-and-confers** [1] - 25:9
**meeting** [1] - 11:21
**met** [1] - 40:16
**metadata** [4] - 12:6, 27:14, 28:11, 30:22
**mics** [1] - 3:16
**might** [2] - 7:19, 25:17
**Minneapolis** [1] - 2:4
**Minnesota** [1] - 2:4
**minutes** [1] - 43:20
**misheard** [3] - 13:6, 16:25, 17:9
**missing** [5] - 38:5, 39:6, 39:10, 40:5, 41:2
**misspeak** [1] - 17:8
**Monday** [4] - 26:4, 26:14, 37:13, 37:19
**months** [2] - 28:18, 40:1
**MORRIS** [1] - 2:6
**most** [1] - 18:21
**motion** [6] - 6:5, 6:11, 7:3, 42:16, 42:20, 42:24
**move** [6] - 4:11, 5:2, 12:12, 29:2, 31:9, 31:19
**moved** [1] - 29:2
**moves** [1] - 41:15
**moving** [3] - 5:6, 38:23, 42:15
**MR** [42] - 3:12, 3:20, 4:1, 4:4, 4:18, 5:10, 5:25, 6:10, 7:6, 7:25,

8:6, 9:14, 9:24, 10:25, 11:7, 12:25, 15:9, 15:22, 16:24, 17:19, 19:4, 20:25, 21:12, 21:18, 22:18, 26:2, 26:7, 26:25, 27:5, 27:7, 27:10, 29:8, 31:2, 31:5, 31:21, 41:22, 42:4, 42:12, 43:6, 43:12, 43:14, 43:19
**MS** [45] - 7:8, 7:10, 7:18, 13:21, 13:24, 16:3, 16:14, 16:22, 17:8, 18:10, 20:11, 21:24, 22:15, 23:9, 23:20, 23:22, 24:10, 24:14, 25:5, 25:22, 31:24, 33:15, 33:18, 34:1, 35:4, 35:7, 35:19, 35:22, 35:24, 36:4, 36:8, 36:11, 36:13, 36:25, 37:23, 38:4, 38:25, 39:4, 39:23, 40:15, 40:20, 40:24, 41:8, 41:19, 43:1
**mute** [3] - 3:16, 22:19, 36:14
**muted** [1] - 13:22
**Mylan** [17] - 2:18, 4:8, 4:13, 8:2, 9:5, 9:12, 9:16, 10:18, 13:20, 14:2, 14:5, 14:7, 14:16, 14:21, 14:25, 15:7
**Mylan's** [4] - 10:12, 13:25, 14:13, 15:8
**Mylan-specific** [2] - 4:8, 4:13

## N

**NAKUL** [1] - 2:23
**Nakul** [2] - 29:10, 41:24
**name** [6] - 13:9, 17:14, 18:13, 18:18, 18:25
**name-by-name** [1] - 18:25
**named** [3] - 13:7, 17:1, 17:6
**names** [3] - 3:6, 17:12, 17:17, 18:22, 19:2, 20:20, 22:3, 24:2
**nature** [1] - 22:6
**NE** [1] - 2:10
**necessarily** [1] - 30:4
**necessary** [1] - 12:16
**need** [35] - 6:14, 6:15,

12:4, 12:9, 12:12, 13:4, 13:11, 15:16, 17:3, 19:14, 21:15, 23:8, 23:13, 24:6, 26:1, 26:12, 27:16, 28:22, 28:25, 29:13, 29:23, 30:23, 31:17, 38:19, 40:12, 40:13, 40:17, 40:18, 40:20, 41:4, 42:2, 42:3
**needs** [5] - 5:7, 19:17, 24:2, 37:17, 37:18
**negotiated** [1] - 9:17
**negotiating** [1] - 14:1
**negotiation** [2] - 8:1, 10:20
**negotiations** [1] - 9:15
**never** [1] - 28:4
**NEW** [1] - 1:2
**new** [1] - 21:24
**New** [4] - 1:13, 1:19, 2:25, 8:24
**next** [12] - 6:14, 9:8, 23:19, 26:16, 27:1, 31:10, 31:13, 31:15, 37:21, 39:21, 42:18, 43:16
**night** [3] - 13:16, 22:25, 23:2
**Nobos** [1] - 30:2
**non** [1] - 24:8
**non-lawyers** [1] - 24:8
**none** [2] - 35:10, 40:7
**nonetheless** [1] - 39:14
**normal** [1] - 43:16
**normally** [1] - 19:5
**note** [4] - 14:12, 26:19, 38:5, 43:22
**notes** [1] - 27:2
**nothing** [2] - 31:8, 43:14
**NUMBER** [1] - 1:4
**number** [11] - 17:16, 17:18, 20:5, 25:18, 33:13, 33:16, 35:17, 35:25, 36:3, 36:22, 37:15
**NY** [1] - 2:25

## O

**o'clock** [3] - 4:10, 4:11, 30:5
**objection** [6] - 20:17, 22:2, 30:2, 42:25, 43:2, 43:7
**objections** [3] - 6:25, 7:13, 35:9
**obtained** [1] - 33:14

**obviously** [7] - 13:13, 17:2, 21:21, 27:7, 29:1, 29:14, 30:18
**OF** [1] - 1:2
**offered** [1] - 25:9
**Official** [1] - 1:22
**oftentimes** [2] - 8:14, 8:16
**once** [5] - 12:19, 14:22, 16:17, 26:9, 33:4
**One** [1] - 2:17
**one** [25] - 3:18, 3:25, 4:6, 5:13, 8:18, 24:17, 24:18, 26:16, 27:13, 27:18, 28:9, 29:19, 30:8, 30:11, 36:2, 37:12, 37:14, 39:12, 42:12, 42:16, 42:18, 42:22, 42:23, 43:20
**ones** [4] - 32:15, 41:1, 41:3, 41:4
**ongoing** [2] - 9:15, 10:20
**operating** [7] - 38:6, 38:8, 38:12, 38:14, 38:19, 39:1, 40:25
**opportunity** [10] - 14:13, 20:12, 20:18, 21:9, 25:13, 25:19, 25:20, 34:20, 37:6, 37:10
**opposition** [1] - 6:6
**order** [23] - 6:11, 13:7, 17:4, 19:20, 25:1, 27:16, 29:13, 31:17, 32:25, 33:12, 34:19, 36:16, 38:21, 39:19, 40:17, 40:19, 41:12, 41:15, 41:16, 41:17, 42:8, 42:10, 43:9
**organize** [1] - 3:7
**Orleans** [1] - 1:19
**outlining** [1] - 16:5
**outside** [3] - 16:5, 17:13, 22:5
**overlap** [1] - 24:22
**Oxford** [1] - 2:17

## P

**P.C** [1] - 2:19
**p.m** [8] - 1:8, 3:2, 4:20, 9:21, 12:22, 23:2, 41:24, 44:2
**PA** [1] - 2:20
**page** [1] - 30:17
**pages** [1] - 37:3
**paper** [1] - 20:12

**papers** [1] - 26:15
**Park** [1] - 2:14
**Parkway** [2] - 1:12, 2:20
**part** [3] - 10:3, 32:10, 35:20
**participants** [1] - 19:23
**particular** [4] - 8:1, 30:10, 30:24, 34:3
**PARTIES** [1] - 3:1
**parties** [4] - 7:15, 21:1, 21:8, 34:8
**party** [1] - 6:2
**passing** [1] - 41:24
**PC** [1] - 1:14
**Pennsylvania** [3] - 1:16, 2:7, 2:17
**people** [16] - 3:14, 8:25, 11:9, 13:4, 13:7, 13:14, 17:1, 17:18, 18:5, 19:7, 19:14, 20:5, 20:7, 22:4, 24:22, 25:17
**per** [6] - 3:25, 35:18, 36:4, 36:6, 36:23, 37:14
**percentage** [1] - 15:1
**perfect** [1] - 31:5
**perfectly** [1] - 33:19
**perhaps** [2] - 5:12, 22:5
**period** [2] - 28:20, 28:25
**permission** [1] - 41:23
**person** [2] - 3:18, 19:17
**personnel** [2] - 23:1, 25:10
**pertain** [1] - 21:8
**Pharma** [5] - 2:12, 2:21, 2:21, 34:13
**Pharmaceutical** [1] - 2:11
**Pharmaceuticals** [2] - 2:11, 26:21
**pharmacy** [1] - 43:2
**Philadelphia** [2] - 1:16, 2:7
**phone** [2] - 22:22, 30:2
**phonetic** [2] - 30:2, 32:16
**piece** [1] - 14:9
**pieces** [1] - 14:11
**Piedmont** [1] - 2:10
**PIETRAGALLO** [1] - 2:16
**pinpoint** [1] - 31:12
**Pittsburgh** [1] - 2:17

**place** [3] - 5:7, 28:17, 40:22
**plains** [1] - 15:11
**plaintiff** [2] - 9:18, 10:21
**Plaintiff** [4] - 1:13, 1:16, 1:20, 2:5
**plaintiffs** [20] - 3:11, 3:24, 7:24, 9:16, 9:20, 10:13, 16:9, 18:23, 19:16, 19:25, 20:23, 21:7, 25:23, 33:23, 34:5, 34:11, 34:13, 34:18, 34:24, 36:16
**plaintiffs'** [10] - 6:21, 10:2, 13:19, 17:11, 22:14, 25:24, 29:14, 29:16, 29:21, 29:24
**plate** [1] - 12:16
**pleased** [1] - 42:5
**PLLC** [1] - 2:2
**plus** [1] - 11:25
**point** [13] - 4:6, 8:20, 12:21, 14:15, 14:24, 31:12, 32:6, 32:11, 36:21, 37:6, 38:13, 38:17, 40:16
**pointed** [1] - 8:9
**populated** [1] - 12:7
**position** [8] - 10:6, 13:8, 19:4, 19:19, 19:25, 23:16, 24:20, 35:11
**possible** [4] - 5:3, 26:8, 27:17, 29:15
**potentially** [2] - 19:2, 42:19
**power** [1] - 15:11
**practical** [1] - 36:21
**practices** [1] - 28:15
**precise** [1] - 4:19
**precision** [1] - 11:10
**preclude** [2] - 37:8, 37:9
**prefer** [1] - 34:23
**premature** [1] - 34:18
**prepared** [1] - 22:7
**present** [2] - 3:4, 31:18
**presented** [1] - 22:9
**preserve** [1] - 6:25
**pretty** [2] - 9:22, 41:8
**previously** [1] - 15:2
**primarily** [2] - 8:25, 14:1
**primary** [1] - 29:23
**principal** [1] - 3:18
**private** [1] - 26:20
**privilege** [41] - 7:19,

8:10, 8:11, 8:15, 8:22, 9:1, 9:16, 9:19, 10:14, 11:11, 11:20, 12:1, 12:5, 12:21, 13:20, 14:14, 14:17, 14:22, 15:2, 15:8, 15:17, 16:6, 16:8, 16:17, 17:7, 17:15, 18:21, 19:13, 19:21, 20:2, 20:6, 20:9, 20:15, 21:4, 21:19, 22:14, 24:9, 24:17, 25:11, 26:10, 26:17
**privileged** [4] - 8:18, 11:12, 18:4, 23:15
**problems** [1] - 11:20
**procedure** [1] - 38:8
**procedures** [6] - 38:6, 38:12, 38:15, 38:19, 39:1, 40:25
**proceed** [1] - 6:13
**proceeding** [1] - 3:4
**Proceedings** [1] - 1:24
**proceedings** [1] - 44:6
**process** [5] - 6:24, 14:16, 14:25, 24:4, 30:3
**produce** [13] - 14:7, 23:17, 23:24, 25:1, 25:9, 32:7, 32:20, 34:19, 36:7, 36:22, 38:13, 38:22, 40:10
**produced** [20] - 1:25, 8:16, 9:17, 15:5, 16:21, 20:10, 24:6, 30:21, 32:8, 33:1, 33:4, 33:16, 33:23, 35:18, 37:18, 38:15, 40:2, 40:21, 40:25
**production** [16] - 14:24, 15:18, 27:14, 27:15, 30:20, 32:4, 32:11, 33:7, 33:9, 34:6, 34:16, 36:19, 36:20, 39:6, 39:10, 41:5
**productions** [3] - 36:17, 38:25, 39:15
**productive** [1] - 31:25
**PRODUCTS** [1] - 1:5
**progress** [1] - 15:20
**promptly** [2] - 6:4, 37:24
**proposed** [4] - 6:20, 41:12, 41:16, 43:9
**protective** [1] - 6:11
**protocol** [1] - 12:6
**provide** [15] - 9:5, 14:7, 15:23, 16:4,

16:16, 17:12, 17:14, 17:17, 18:24, 20:15, 20:22, 22:1, 32:18, 33:1, 36:16
**provided** [13] - 8:21, 9:18, 9:20, 10:7, 10:9, 10:19, 14:5, 17:25, 20:4, 20:16, 24:25, 30:14, 37:25
**providing** [1] - 16:8
**purported** [1] - 27:2
**purposes** [2] - 20:1, 20:8
**push** [1] - 40:12
**pushes** [1] - 29:4
**put** [4] - 28:17, 31:10, 31:13, 41:18
**putting** [1] - 24:5

**Q**

**quality** [2] - 28:13
**questionable** [1] - 18:23
**questions** [4] - 12:8, 12:18, 27:22, 35:9
**quick** [1] - 12:10
**quicker** [1] - 12:14
**quickly** [4] - 5:2, 12:13, 24:12, 27:18
**quite** [2] - 9:21, 14:18
**quote** [2] - 11:17, 15:23

**R**

**raise** [2] - 4:13, 7:13
**raised** [7] - 5:22, 10:12, 17:24, 20:13, 22:20, 23:6, 35:10
**raising** [1] - 35:1
**RASPANTI** [1] - 2:16
**RE** [1] - 1:4
**re** [1] - 14:16
**re-review** [1] - 14:16
**reached** [1] - 8:3
**ready** [2] - 6:12, 31:9
**real** [5] - 8:1, 26:12, 29:4
**realizing** [1] - 11:1
**really** [17] - 8:8, 8:24, 11:20, 12:4, 12:8, 15:10, 16:6, 19:10, 19:11, 22:7, 26:12, 27:16, 29:2, 30:11, 32:12, 37:10
**reason** [1] - 29:17
**reasonable** [2] - 19:11, 35:24
**reasonably** [1] - 19:8

**receive** [1] - 22:2
**received** [4] - 9:2, 21:3, 32:21, 38:7
**recently** [1] - 7:12
**recollection** [1] - 4:25
**record** [4] - 32:6, 43:10, 43:19, 44:6
**recorded** [1] - 1:24
**recording** [1] - 3:4
**records** [1] - 37:17
**recovered** [1] - 38:10
**recycled** [1] - 38:10
**reel** [1] - 10:25
**referenced** [1] - 16:25
**referring** [1] - 9:6
**refusal** [1] - 5:17
**regarding** [2] - 21:4, 26:19
**regulatory** [1] - 11:18
**reiterate** [2] - 40:24, 41:9
**relate** [1] - 4:22
**relationship** [1] - 32:2
**relevance** [1] - 36:15
**relevant** [3] - 36:15, 37:5, 41:3
**relief** [1] - 31:11
**remaining** [2] - 15:4, 15:6
**repeat** [1] - 11:8
**reply** [2] - 26:1, 37:20
**reporter** [1] - 3:4
**Reporter** [1] - 1:22
**Reporter/
Transcriber** [1] - 44:8
**reports** [1] - 32:19
**request** [7] - 6:5, 20:11, 22:9, 23:23, 39:25, 41:9, 42:8
**requested** [2] - 19:24, 31:11
**requesting** [2] - 17:1, 17:6
**requests** [2] - 21:2, 40:22
**require** [2] - 18:17, 33:13
**required** [3] - 12:5, 20:20, 23:17
**requires** [1] - 30:1
**requiring** [1] - 34:19
**reschedule** [1] - 4:21
**rescheduled** [1] - 4:9
**resolution** [1] - 6:12
**resolve** [5] - 6:13, 6:17, 8:13, 26:16, 37:21
**resolved** [6] - 6:9, 26:8, 29:17, 29:18,

30:19, 42:6
**respect** [14] - 4:15,
5:8, 7:21, 9:15, 9:16,
10:12, 10:18, 15:20,
16:7, 21:3, 21:24,
22:14, 31:16, 37:15
**respond** [3] - 17:19,
35:5, 37:23
**RESPONSE** [1] - 44:1
**response** [2] - 38:1,
40:21
**responsive** [2] -
33:20, 40:10
**result** [1] - 33:2
**resulted** [1] - 36:23
**retailer** [1] - 43:2
**revelation** [1] - 28:18
**review** [3] - 14:16,
18:17, 26:14
**reviewed** [2] - 13:25,
14:4
**reviews** [1] - 30:21
**ripe** [4] - 6:11, 27:3,
39:20, 43:23
**rise** [1] - 18:20
**RMR** [1] - 44:8
**Road** [1] - 2:10
**robust** [1] - 18:6
**role** [1] - 19:18
**Roseland** [1] - 1:13
**roughly** [1] - 32:8
**routinely** [1] - 37:25
**row** [1] - 21:14
**rule** [1] - 24:24
**Rule** [1] - 7:3
**ruling** [1] - 24:1
**running** [1] - 33:20

## S

**SARAH** [1] - 2:13
**Sarah** [2] - 42:14, 43:1
**schedule** [1] - 6:4
**scheduled** [1] - 5:21
**schedules** [3] - 5:5,
5:6, 5:8
**scheduling** [1] - 4:7
**Schneider** [1] - 32:5
**scope** [1] - 30:12
**screen** [2] - 21:17,
39:3
**seal** [1] - 6:5
**search** [6] - 18:16,
28:8, 32:19, 33:2,
33:20, 36:23
**searched** [4] - 27:24,
28:2, 30:10, 30:14
**searches** [3] - 33:2,
37:16
**second** [2] - 10:8,

35:20
**see** [12] - 3:6, 4:4,
13:22, 14:21, 15:24,
26:22, 29:16, 31:6,
34:4, 36:15, 37:11,
42:5
**seeing** [1] - 15:4
**seek** [1] - 34:19
**seeking** [2] - 20:23,
32:25
**seem** [5] - 25:17, 36:6,
36:24, 37:12, 38:5
**send** [1] - 23:25
**sense** [1] - 43:8
**sent** [3] - 9:1, 31:14,
39:9
**sentences** [1] - 8:18
**Sentry** [1] - 2:20
**separate** [2] - 27:20,
35:12
**separately** [1] - 7:21
**serious** [1] - 27:23
**seriously** [1] - 28:23
**serve** [1] - 7:3
**served** [1] - 12:21
**service** [4] - 6:18,
6:24, 26:20, 30:13
**set** [1] - 33:22
**Seth** [3] - 3:20, 5:24,
20:25
**SETH** [1] - 2:6
**several** [1] - 42:19
**Shah** [2] - 29:10,
41:24
**SHAH** [1] - 2:23
**shared** [1] - 21:11
**Short** [1] - 42:8
**short** [2] - 22:10, 23:8
**shorthands** [1] - 17:5
**shortly** [1] - 14:23
**shot** [1] - 42:22
**side** [11] - 3:19, 6:21,
6:22, 10:2, 13:14,
13:19, 22:14, 25:25,
32:11, 33:5, 42:25
**sides** [2] - 7:15, 33:10
**significance** [1] -
28:11
**significant** [1] - 17:16
**significantly** [3] -
34:10, 34:16, 34:17
**similar** [2] - 11:20
**simple** [1] - 33:13
**simply** [1] - 19:22
**sit** [2] - 10:21, 28:22
**situation** [1] - 30:23
**size** [1] - 32:4
**Slater** [16] - 4:23, 6:7,
8:5, 10:1, 10:24,
19:3, 21:12, 22:20,

23:5, 26:1, 30:8,
30:16, 30:20, 31:1,
43:4, 43:8
**SLATER** [29] - 1:11,
1:12, 3:12, 5:10,
6:10, 7:6, 7:25, 8:6,
10:25, 11:7, 12:25,
15:9, 15:22, 16:24,
17:19, 19:4, 21:12,
21:18, 26:2, 26:7,
26:25, 27:5, 27:7,
27:10, 31:2, 31:5,
42:12, 43:12, 43:19
**small** [3] - 29:19,
32:12, 33:9
**smaller** [3] - 24:16,
25:17, 34:17
**so-called** [1] - 10:7
**solvents** [1] - 38:10
**solving** [1] - 30:25
**sometimes** [1] - 41:14
**SOP** [1] - 40:7
**SOPs** [6] - 39:5,
39:10, 39:13, 39:16,
40:5, 40:21
**sorry** [7] - 4:1, 13:24,
20:24, 33:17, 33:18,
37:13, 41:12, 41:16,
43:9
**sort** [8] - 5:11, 8:19,
14:3, 14:15, 15:3,
22:2, 36:18, 39:24
**sound** [2] - 32:5,
39:11
**sounds** [2] - 5:23,
5:25
**sourcing** [1] - 38:9
**speaking** [7] - 3:10,
3:16, 22:19, 25:7,
25:8, 34:24
**SPECIAL** [1] - 1:9
**specific** [9] - 4:8, 4:13,
4:25, 8:1, 18:22,
21:2, 23:4, 39:7,
41:1
**specifically** [4] - 4:15,
13:15, 39:8, 40:22
**specifics** [1] - 29:12
**split** [1] - 3:13
**squishy** [1] - 41:9
**stand** [1] - 31:16
**standard** [7] - 38:6,
38:7, 38:11, 38:14,
38:19, 39:1, 40:25
**stands** [1] - 19:4
**STANOCH** [2] - 1:15,
22:18
**Stanoch** [2] - 22:16,
22:19
**start** [5] - 8:11, 8:14,
26:9, 26:11, 27:22

**started** [2] - 10:11,
14:19
**starting** [1] - 28:23
**States** [1] - 4:19
**STATES** [1] - 1:2
**status** [1] - 5:20
**STATUS** [1] - 1:6
**stayed** [1] - 7:2
**stenography** [1] -
1:24
**stepping** [1] - 14:3
**still** [8] - 4:12, 5:11,
12:11, 12:24, 15:3,
25:18, 35:3, 42:2
**stipulation** [2] - 26:19,
26:22
**straightforward** [1] -
12:19
**streamline** [1] - 30:3
**Street** [3] - 1:15, 1:19,
2:7
**subject** [2] - 11:13,
30:11
**submit** [11] - 20:12,
20:18, 22:10, 23:8,
23:12, 37:3, 37:10,
37:13, 41:12, 41:16,
43:9
**submitted** [2] - 3:24,
23:9
**subpoena** [1] - 6:2
**subset** [1] - 33:3
**substance** [1] - 13:15
**substantially** [1] -
24:16
**substantive** [3] - 9:9,
11:11, 18:8
**substantively** [1] -
8:12
**sufficient** [1] - 10:22
**suggest** [4] - 5:12,
5:19, 31:2, 41:12
**suggested** [1] - 10:14
**Suite** [6] - 1:15, 2:4,
2:10, 2:14, 2:20,
2:24
**supplement** [2] - 24:1,
41:5
**supplemented** [1] -
24:8
**supplied** [1] - 12:3
**suppose** [2] - 17:22,
37:8
**supposed** [3] - 12:7,
28:14, 38:18
**surprise** [2] - 12:13,
21:23
**surprised** [1] - 21:13,
21:21

## T

**T3** [1] - 42:5
**tackle** [1] - 10:16
**tag** [2] - 3:19, 3:21
**tag-teaming** [1] - 3:19
**talks** [1] - 34:13
**team** [5] - 3:21, 4:14,
10:1, 18:11, 22:22
**teaming** [1] - 3:19
**technological** [1] -
13:24
**teed** [2] - 26:15, 43:23
**term** [1] - 33:2
**terms** [6] - 6:19, 9:12,
23:16, 30:19, 33:20,
34:5
**Teva** [14] - 2:11, 2:11,
9:5, 15:17, 15:20,
20:13, 21:25, 22:4,
22:5, 22:13, 24:5,
24:19, 25:9
**Teva's** [2] - 15:17,
24:14
**Texas** [3] - 14:2, 15:11
**THE** [2] - 1:2, 1:9
**The Court** [85] - 3:3,
3:15, 3:22, 4:3, 4:6,
4:17, 4:24, 5:23, 6:1,
6:11, 7:2, 7:9, 7:16,
7:19, 8:5, 9:11, 9:23,
10:15, 10:24, 11:6,
12:20, 13:19, 13:23,
15:7, 15:15, 16:2,
16:13, 16:20, 16:23,
19:3, 19:15, 20:24,
22:13, 22:17, 23:7,
23:11, 23:21, 24:3,
24:13, 25:3, 25:20,
25:23, 26:6, 26:13,
26:23, 27:1, 27:6,
27:9, 29:6, 31:1,
31:4, 31:13, 31:22,
33:12, 33:16, 33:24,
35:1, 35:6, 35:16,
35:20, 35:23, 36:3,
36:6, 36:9, 36:12,
36:18, 37:3, 37:8,
38:2, 38:21, 38:24,
39:22, 40:14, 40:19,
41:7, 41:11, 41:21,
42:1, 42:5, 42:25,
43:5, 43:8, 43:13,
43:15, 43:21
**they've** [2] - 9:5, 39:11
**third** [3] - 6:2, 17:24,
21:14
**Third** [1] - 8:23
**THOMAS** [1] - 1:9
**THORNBURG** [1] -

2:13

**thousands** [3] - 14:20, 19:2, 22:3
**thread** [2] - 20:2
**threads** [1] - 23:15
**three** [3] - 22:21, 22:23, 35:12
**throughout** [1] - 14:25
**tight** [1] - 12:12
**time-consuming** [1] - 19:1
**timeframe** [1] - 31:5
**title** [5] - 13:9, 14:9, 17:4, 19:19, 19:25
**today** [10] - 4:10, 5:5, 6:4, 10:21, 27:3, 32:25, 35:2, 39:19, 40:11, 42:11
**together** [3] - 6:14, 24:5, 42:16
**tomorrow** [4] - 27:12, 30:5, 30:16, 41:20
**topic** [1] - 11:23
**topics** [1] - 39:25
**Torrent** [2] - 26:20, 26:21
**touches** [1] - 38:8
**towards** [1] - 30:25
**transcript** [2] - 1:25, 44:5
**transcription** [1] - 1:25
**TRAURIG** [1] - 2:9
**TRISCHLER** [6] - 2:16, 4:1, 4:4, 9:14, 9:24, 42:4
**Trischler** [6] - 4:2, 9:13, 13:6, 14:1, 15:13, 42:1
**Trischler's** [1] - 12:20
**trouble** [1] - 37:11
**truly** [1] - 33:6
**try** [3] - 5:1, 5:2, 27:10
**trying** [4] - 5:11, 22:22, 35:25, 36:13
**Tuesday** [1] - 31:15
**turn** [1] - 3:17
**turnaround** [1] - 12:11
**turned** [1] - 28:5
**turns** [1] - 8:17
**two** [5] - 8:8, 9:9, 22:21, 28:3, 35:8
**type** [2] - 19:24, 25:15
**typically** [2] - 3:13, 18:20

## U

**U.S** [1] - 32:11
**unanticipated** [1] -

26:3

**unaware** [1] - 24:18
**under** [2] - 7:3, 30:24
**understood** [1] - 35:3
**uninformative** [1] - 11:22
**UNITED** [1] - 1:2
**United** [1] - 4:19
**unless** [4] - 7:25, 12:8, 12:18, 26:2
**unmute** [1] - 3:17
**unquote** [2] - 11:17, 15:23
**up** [10] - 3:13, 4:8, 8:1, 8:16, 26:5, 26:14, 26:15, 32:24, 35:3, 43:23
**update** [4] - 5:4, 5:5, 31:6, 31:16
**updated** [2] - 9:19, 42:8
**USA** [2] - 2:11, 2:21
**usual** [1] - 3:25

## V

**Valsartan** [1] - 26:21
**VALSARTAN** [1] - 1:4
**VANASKIE** [1] - 1:9
**vendor** [6] - 18:12, 18:16, 27:19, 27:21, 28:2, 37:2
**venue** [1] - 7:1
**Version** [1] - 28:17
**Versions** [1] - 28:19
**versus** [1] - 29:22
**Via** [1] - 1:6
**VIA** [1] - 3:1
**VICTORIA** [1] - 2:9
**Victoria** [1] - 16:3
**videoconference** [1] - 1:6
**VIDEOCONFERENCE** [1] - 3:1
**viewed** [1] - 12:23

## W

**wait** [1] - 37:18
**waiting** [1] - 26:14
**waiver** [2] - 6:20, 6:22
**waiving** [1] - 6:24
**WALLACK** [1] - 2:22
**wants** [1] - 35:11
**Wednesday** [6] - 1:7, 6:15, 23:19, 26:16, 37:22, 43:16
**week** [14] - 12:16, 16:9, 16:22, 20:22, 21:5, 21:22, 22:23,

31:3, 31:10, 31:14, 34:22, 39:2, 39:4, 39:5
**weekend** [1] - 32:1
**weeks** [3] - 21:20, 42:19
**WERNER** [1] - 2:19
**whereas** [1] - 18:19
**WHITELEY** [5] - 1:17, 1:18, 16:14, 22:15, 23:22
**Whiteley** [4] - 16:14, 22:15, 22:24, 23:22
**whole** [1] - 22:11
**wish** [1] - 4:5
**withheld** [2] - 10:5, 14:22
**withholding** [2] - 14:17, 15:2
**witnesses** [2] - 5:11, 28:3
**wonderful** [1] - 31:8
**wondering** [1] - 24:11
**world** [1] - 43:19
**written** [1] - 31:14

## Y

**yesterday** [1] - 42:18
**York** [1] - 2:25
**yourself** [1] - 3:17

## Z

**ZHP** [6] - 2:8, 6:11, 21:1, 21:3, 21:8, 27:3
**ZHP's** [1] - 6:5
**Zoom** [2] - 1:6, 3:7
**ZOOM** [1] - 3:1