# Exhibit F

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

CIVIL ACTION NUMBER:

19-md-02875-RBK-JS

TELEPHONIC
STATUS CONFERENCE

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
February 24, 2021
Commencing at 10:00 a.m.

B E F O R E:                THE HONORABLE ROBERT B. KUGHER,
                           UNITED STATES DISTRICT JUDGE
                           SPECIAL MASTER THE HONORABLE THOMAS I.
                           VANASKIE (RET.)

A P P E A R A N C E S:

      MAZIE SLATER KATZ & FREEMAN, LLC
      BY:  ADAM M. SLATER, ESQUIRE
      103 Eisenhower Parkway
      Roseland, New Jersey  07068
      For the Plaintiffs

      GOLOMB & HONIK, P.C.
      BY:  RUBEN HONIK, ESQUIRE
      1835 Market Street, Suite 2900
      Philadelphia, Pennsylvania  19103
      For the Plaintiffs

      LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
      BY:  DANIEL A. NIGH, ESQUIRE
      316 S. Baylen, Suite 600
      Pensacola, Florida 32502
      For the Plaintiffs

              Camille Pedano, Official Court Reporter
                    camillepedano@gmail.com
                        609-774-1494

      Proceedings recorded by mechanical stenography; transcript
           produced by computer-aided transcription.

```
 1   A P P E A R A N C E S  (Continued):

 2

 3        GOLDENBERG LAW, LLC
         BY:  MARLENE J. GOLDENBERG, ESQUIRE
 4        800 Lasalle Avenue, Suite 2150
         Minneapolis, Minnesota  55402
 5        For the Plaintiffs

 6        FARR LAW FIRM
         BY:  GEORGE T. WILLIAMSON, ESQUIRE
 7        99 Nesbit Street
         Punta Gorda, Florida  33950
 8        For the Plaintiffs

 9        DUANE MORRIS, LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
10        30 South 17th Street
         Philadelphia, Pennsylvania  19103
11        For the Defendants, Prinston Pharmaceuticals,
         Solco Healthcare U.S. LLC, and
12        Zhejiang Huahai Pharmaceuticals Ltd.

13        GREENBERG TRAURIG, LLP
         BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
14            LORI G. COHEN, ESQUIRE
              STEVEN M. HARKINS, ESQUIRE
15        3333 Piedmont Road, NE, Suite 2500
         Atlanta, Georgia  30305
16        For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC,
17        and Actavis Pharma, Inc.

18        CIPRIANI & WERNER, P.C.
         BY:  JESSICA M. HEINZ, ESQUIRE
19        450 Sentry Parkway
         Blue Bell, Pennsylvania  19422
20        For the Defendants, Aurolife Pharma LLC
         and Aurobindo Pharma USA, Inc.
21
         HILL WALLACK, LLP
22        BY:  ERIC I. ABRAHAM, ESQUIRE
              NAKUL Y. SHAH, ESQUIRE
23        21 Roszel Road
         Princeton, New Jersey 08540
24        Attorney for Defendants, Hetero Drugs and Hetero Labs

25
```

1    **A P P E A R A N C E S (Continued):**

2

3          LEWIS BRISBOIS BEASGAARD & SMITH
          BY:  MEGAN E. GROSSMAN, ESQUIRE
          550 East Swedesboro Road, Suite 270
4          Wayne, Pennsylvania  19087
          Attorney for Defendants, AvKARE and Camber

5

6

7

8    **ALSO PRESENT:**

9          Larry MacStravic, Courtroom Deputy

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Camden, New Jersey*

```
 1   (PROCEEDINGS held in open court before The Honorable Robert B.

 2   Kugler, United States District Judge, and Special Master The

 3   Honorable Thomas I. Vanaskie, at 10:00 a.m.)

 4          JUDGE VANASKIE:  Now we're all on so we're ready to

 5   get started.  At the beginning, of course, I'll ask you to

 6   silence your mics on your phones, except if you are speaking,

 7   and to identify yourself, address yourself, while speaking.

 8          Camille, are you our court reporter today?

 9          THE COURT REPORTER:  Yes, I am, Your Honor.  Good

10   morning.

11          JUDGE VANASKIE:  All right, Great.  Good morning.  It

12   is a beautiful morning here, too.

13          I wanted to thank counsel for sending me the case

14   summaries I'm calling them.  They were extremely helpful.  I

15   want to commend counsel for including hyperlinks to the record

16   which proves to be very helpful for me.  So thank you very much

17   for that.

18          And without further elaboration, let's get into the

19   agenda for today.

20          Who will be speaking on behalf of the defendants?

21          MR. GOLDBERG:  Your Honor, this is Seth Goldberg of

22   Duane, Morris on behalf of the ZHP entities and the defendants.

23   A number of different counsel for the different defendants will

24   be speaking on different issues --

25          JUDGE VANASKIE:  Certainly.
```

```
 1          MR. GOLDBERG:  -- today and I'll let them introduce
 2    themselves.
 3          JUDGE VANASKIE:  All right.  And, Mr. Slater, will you
 4    be speaking mostly on behalf of the plaintiffs but as well as
 5    others?
 6          MR. SLATER:  Good morning, Your Honor.  It's Adam
 7    Slater, for the record.  I'll be speaking on some of the
 8    topics, but just the way that the mix is, there will be
 9    multiple people from the plaintiffs' leadership who will be
10    addressing certain topics, actually.
11          JUDGE VANASKIE:  Very well.  And, of course, identify
12    yourself when you're speaking.
13          We'll start with the agenda as it's been presented to
14    me and we'll start with the first matter that was in Mr.
15    Goldberg's letter, and that is the plaintiff deposition issues.
16    I know this may not be completely right but let's have a
17    discussion on it so I could -- because I think it's an issue
18    that should be easily resolved.
19          Mr. Goldberg?
20          MR. GOLDBERG:  Thank you, Your Honor.
21          MR. ABRAHAM:  Your Honor, this is -- this is Eric
22    Abraham from Hill, Wallack.  I represent Hetero Labs.  I'll be
23    handling this issue, with Your Honor's permission.
24          JUDGE VANASKIE:  All right.  Can I have your name
25    again, sir?
```

1          MR. ABRAHAM:  Eric Abraham, A-B-R-A-H-A-M, for Hetero

2    Labs, and my firm is Hill, Wallack --

3          JUDGE VANASKIE:  Thank you.

4          MR. ABRAHAM:  -- H-I-L-L W-A-L-L-A-C-K.  May I

5    proceed?

6          JUDGE VANASKIE:  You may proceed.

7          MR. ABRAHAM:  Thank you very much, Your Honor.

8          No need to belabor this point.  All that we want is

9    for plaintiffs' counsel to ensure that its witnesses are Zoom

10   ready at the start of the deposition rather than starting to

11   get Zoom ready at the start of the deposition.  We've had

12   several unfortunate examples where depositions have either been

13   cancelled or started after a lengthy delay and, thankfully, our

14   deposition vendor, Veritext, has been able to have a technology

15   consultant, that we pay for, participate in every deposition

16   and that person, at our expense, has been doing what we believe

17   to be plaintiffs' responsibility.  And, in fact, our dep vendor

18   has attempted, with mixed results, to contact the witness in

19   advance to ensure readiness.

20         I have conferred with plaintiffs' counsel on occasions

21   when this has -- this issue has arisen.  Mr. Slater may not

22   have been aware of those interactions and I don't believe that

23   he participated in them.

24         The response that I've gotten from plaintiffs' counsel

25   is, essentially, that I was asking too much to expect

```
 1   plaintiffs to be ready to start at the start.

 2           So what I'm hoping, Your Honor, is that by raising

 3   this subject today it suffices to send the message to

 4   plaintiffs that we don't expect perfection with the technology

 5   issues, because we all know that issues do arise, we just

 6   expect diligence; in other words, having Zoom loaded on an

 7   appropriate device before the deposition commences and the

 8   witness having a basic understanding of how to connect to both

 9   audio and visual, and we don't believe that that's too much to

10   ask.

11           Thank you, Your Honor.

12           JUDGE VANASKIE:  All right.  Thank you, Mr. Abraham.

13           Who will be addressing this issue on behalf of the

14   plaintiff?

15           MR. HONIK:  Your Honor, this is Ruben Honik.  Good

16   morning.

17           JUDGE VANASKIE:  Good morning.

18           MR. HONIK:  There are a number of us who have

19   conducted or defended some of these depositions.  And let me

20   just say at the outset that no one has met and conferred with

21   us beyond the problems that have occasionally arisen, each of

22   which have been dealt with in the moment.  I'm speaking now,

23   because Mr. Abraham conducted the deposition of my client, Mr.

24   Semmel, and I can represent to the Court that Mr. Semmel is a

25   senior citizen who lives in the Lehigh Valley who promptly
```

1   attempted to get on to the Zoom platform, which he had used

2   before, and on the morning of his appointed deposition was

3   unsuccessful in logging in.  With the rather patient and

4   courteous help of the Veritext tech who was available, 30 or 40

5   minutes later he was ready to go and there were no complaints

6   at the time.  The deposition was conducted, albeit after six

7   hours of questioning.

8           The fact remains, Judge, that lawyers who are

9   courteous with one another make allowances and understand that

10  problems occasionally arise.  Sometimes judges are late by

11  seven minutes because they have the wrong number.  I've been on

12  this call -- I've been --

13          JUDGE VANASKIE:  Well played.

14          MR. HONIK:  I've been on this call with Judge

15  Schneider in which we had terrible connection, through no fault

16  of anyone, and 60 lawyers had to get off the phone and resume

17  the conference call 20 or even 30 minutes later.

18          The fact is there's no bad intention.  Everybody gets

19  ready.  Mr. Semmel's deposition about which Mr. Abraham

20  complained was one of the earliest, and from then until now,

21  everybody on the plaintiffs' side who's been conducting or

22  defending depositions have been quite diligent in ensuring, to

23  the extent possible, that our clients are and have the Zoom

24  platform.  Not all of these folks are highly tech savvy and we

25  do our level best to get them ready.

1          One of the other examples in the Duane, Morris letter

2    is the deposition of Mr. Molinaro, another client of mine whose

3    deposition I defended, and I'm candidly astonished that they're

4    using that as an example.  Mr. -- we advised the other side

5    that Mr. Molinaro simply didn't have a computer.  That said, he

6    has used Zoom on his iPhone many times.  When we advised the

7    other side of that, arrangements were made for some exhibits to

8    be overnighted to Mr. Molinaro, who lives in Florida, and

9    through no fault of his own, FedEx didn't get there in time.

10   And what did I do as counsel?  I said to the associate from

11   Duane, Morris who was conducting the deposition, there's no

12   need to -- there's no need to cancel this.  Email the documents

13   to a nearby FedEx, I will instruct my client to get in his car

14   and get the documents.  He did that.  The deposition started an

15   hour late, as a courtesy to the other side and everybody else

16   who was participating, and the deposition was conducting.

17   Instead of thanks for having Mr. Molinaro do that, at my

18   instruction, as I think any courteous attorney would do, he's

19   now the subject of a letter to the Court complaining about our

20   lack of preparedness.  There's nothing that he did or I did to

21   engender the problem that was encountered on the morning of his

22   deposition.

23          So these issues are, I think, much ado about nothing.

24   I think -- I can attest, for the Court's benefit, that each and

25   every one of us in every instance has been prompt, courteous,

1    efficient, on time.

2        We had a very disabled senior citizen in Louisiana who

3    had absolutely no technology available to her, and we made

4    arrangements to physically send lawyers to accompany her, and

5    even that turned into a big problem.

6        So, Judge, I'm not really sure what the defendants are

7    complaining about.  I dare say the issue of depositions is

8    going to return to this Court, not about the technical problems

9    but about the fact that what should be an hour deposition, a

10   two-hour deposition -- remember, these are economic class

11   plaintiffs, the only issue is what they bought and the amount

12   and so forth -- they're being questioned for five, six and

13   seven hours about the cancers that their siblings had, the

14   cancers that their parents had, medical conditions wholly

15   unrelated to their blood pressure.

16       We'll get a meet and confer with the defendants about

17   the scope of these examinations and, frankly, the, you know,

18   taking a seven-hour deposition of an economic class rep; but

19   for purposes of today, we think this is not an issue that needs

20   the Court's attention beyond, you know, congratulating counsel

21   to continue to cooperate with each other on this technological

22   preparedness.

23       JUDGE VANASKIE:  All right.  Mr. Abraham, did you want

24   to respond?

25       MR. ABRAHAM:  Yes, sir, briefly.

1          In all of Mr. Honik's recitation of his point of view,

2     what I didn't hear was a commitment that plaintiffs would do

3     their level best going forward to have their clients Zoom ready

4     at the start.  The delay at the Semmel deposition was over an

5     hour.  We had a deposition that had to be cancelled completely.

6     We're not asking for anything special, we're not asking for

7     anything extraordinary.  We just want to be able to start,

8     generally speaking, at the start, and we'd like a commitment

9     that the witnesses will have Zoom loaded on an appropriate

10    device before the deposition commences with a basic

11    understanding of how to connect to both audio and visual.

12    That's it.

13          JUDGE VANASKIE:  All right.  Thank you.

14          I view this as much ado about nothing.  I was -- I'm

15    sure you were all frustrated waiting for me to get on the

16    phone.  I was on the phone on hold.  I was on the wrong number.

17    These things happen.  But I do expect that deponents will be

18    Zoom ready in advance of the deposition.  I think as a

19    professional courtesy that those arrangements will have been

20    made, that there would have been some test run or testing of

21    the individual plaintiff's circumstances to make sure that

22    they're able to participate in the deposition at the time that

23    it's scheduled to commence.  I don't think this requires, at

24    this point, any type of order from the Court.

25          I commend you for working through these problems.

 1    You're going to, unfortunately, have these technical glitches

 2    that come up, and somebody who dials into the wrong number, to

 3    get straightened out, it takes a little bit of time.  Just work

 4    with each other.  As you continue to work with each other, I'm

 5    confident these problems can go away.  I appreciate the

 6    frustration and I certainly understand the expense that's

 7    incurred when you have to have a deposition delayed or

 8    postponed.  So all I can say to you at this point is work

 9    cooperatively.  If this continues to be a problem, please write

10    to me.  If we need to get an order in that says you have to be

11    on the Zoom session 15 minutes or 30 minutes in advance of the

12    schedule, we'll do that, but I don't see a need for that at the

13    present time.

14          So let's move on to the next issue on the agenda.  And

15    I'm working, Mr. Goldberg, off your letter, and the second item

16    on yours is the Rule 34 request directed to bellwether trial

17    plaintiff pool.

18          Who will be addressing this issue?

19          MR. GOLDBERG:  Your Honor, I believe Ms. Lockard from

20    the Greenberg, Traurig firm is going to be addressing this

21    issue.

22          MS. LOCKARD:  Yes.  Hi, Your Honor.  It's Victoria

23    Lockard from Greenberg, Traurig on behalf of Teva.  And this is

24    merely a report, Your Honor.

25          JUDGE VANASKIE:  Yes.

1          MS. LOCKARD:  We are in the process of negotiating

2   Rule 34 document requests to plaintiffs.  We've provided those

3   to plaintiffs and they have agreed to provide us with any

4   global objections and red lines no later than next Wednesday so

5   that we will be in a position, we hope, by the mid-March

6   conference to be able to present any dispute over those

7   requests to you.

8          So at this point, Your Honor --

9          JUDGE VANASKIE:  All right.

10         MS. LOCKARD:  -- I think it's the least but we wanted

11  to flag that issue for you because it is coming over the

12  horizon.

13         JUDGE VANASKIE:  All right.  Thank you for that.

14         Anybody want to address this on the plaintiffs' side?

15         MR. NIGH:  Yes, Your Honor.  This is Daniel Nigh.

16         I just wanted to address that we've received the

17  discovery, we're taking a look at it to just try to understand

18  in terms of the scope of discovery, and we will respond by --

19  we did promise to respond by Wednesday of next week with both

20  our red lines and any macro issues that we have.

21         JUDGE VANASKIE:  Okay.

22         MR. NIGH:  I did want to raise to the Court that, you

23  know, one of the macro issues is that, you know, almost a year

24  ago we negotiated and had a fulsome negotiation on what the

25  Plaintiff Fact Sheet would be for bodily injury cases.  It's a

1  40-page Plaintiff Fact Sheet, we believe it's very

2  comprehensive, with multiple pages for requests for production.

3  So in light of what's already occurred in that fulsome

4  discussion in terms of discovery expected of bodily injury

5  cases, that's the viewpoint as to which we're going to be

6  looking at these Rule 34 disclosures.

7          In addition, we do believe that some of these

8  disclosures are actually more ripe for later down the line and

9  we'll be making that proposal as well next week, most likely.

10  But, again, we want to make sure we take a full look at it and

11  present those macros to them in addition to our red lines

12  pursuant to Rule 34 disclosures.

13          JUDGE VANASKIE:  All right.  Thank you very much.

14          Anything else on this, Ms. Lockard?

15          MS. LOCKARD:  Yes, Your Honor.  I just want to

16  respond, briefly.

17          You know, back when we negotiated the Defense Fact

18  Sheet -- or the Plaintiff Fact Sheets, rather, for the personal

19  injury plaintiffs, you know, we did specifically contemplate

20  and we did discuss with Judge Schneider that the fact sheets

21  were intended for all plaintiffs in the litigation and that

22  there would be, you know, additional, more detailed discovery

23  that would be served on the eventual bellwethers and that was a

24  big point of contention because, of course, back then we wanted

25  very broad fact sheets and Judge Schneider said, no, no, no,

1  you know, you don't get this for everyone.  Once we get to the

2  bellwether stage, you can then serve more discovery on those

3  bellwether plaintiffs.

4          So our position is, you know, here we are, and we'll

5  submit those transcripts to Your Honor when we argue this in

6  substance in two weeks, but, you know, we -- we certainly have

7  contemplated this all along and I don't think this is any

8  surprise.  There are -- there is relevant information that we

9  will need to take these witnesses' depositions.  The

10 plaintiffs' depositions for the bellwethers are being scheduled

11 imminently, and so we're eager to get this discovery that we

12 need.  We can't really wait until after their depositions later

13 down the line, you know, for example, when we get into expert

14 discovery, to start getting this information.  The time is now

15 because we have to depose these plaintiffs.

16         So that's -- that's my response to Mr. Nigh's

17 comments, but, of course, we'll be able to lay this out for

18 Your Honor --

19             (Interruption by music playing.)

20         THE COURT REPORTER:  Judge, we have some interference.

21         JUDGE VANASKIE:  We have some interference.  We are

22 getting some music.

23         MR. NIGH:  I promise, that's not me, Your Honor.  It's

24 not Daniel Nigh.

25         JUDGE VANASKIE:  Somebody got on hold.  I don't know

1    how to troubleshoot this one.

2              MR. NIGH:  I think that is Mr. Abraham's Zoom.

3              MR. ABRAHAM:  That is definitely not my Zoom.

4              JUDGE VANASKIE:  Somebody just put us on hold.

5              UNIDENTIFIED SPEAKER:  Yeah, exactly.

6              JUDGE VANASKIE:  I wish I could find out who put us on

7    this.

8              MS. GOLDENBERG:  This is Marlene Goldenberg.  If

9    whoever is administering the call has any kind of controls,

10   they might have the ability to remove the participant.

11             JUDGE VANASKIE:  Is Larry available?  Is our host

12   available?

13             THE COURTROOM DEPUTY:  Judge, I'm here but I have no

14   idea who it is.

15             JUDGE VANASKIE:  Okay.  So we're stymied right now,

16   talking about these unforeseen technical problems.

17             UNIDENTIFIED SPEAKER:  Should we dial back in?

18             JUDGE VANASKIE:  Do you recommend that, Larry, that we

19   just dial back in?

20             THE COURTROOM DEPUTY:  We can do that.  I could end

21   the call and we could all call back.

22             JUDGE VANASKIE:  All right, let's do that.  We have no

23   alternative other than that.  I'll dial back in.

24             (Conference call ended.)

25             (Conference call resumed.)

```
 1          MR. SLATER:  Your Honor, it's Adam Slater.  I would
 2  suggest if somebody has easy access to the list of people that
 3  are on this call, somebody needs to send an email to everybody
 4  telling them that somebody has put us on hold and is playing
 5  the music.  Maybe somebody put us on hold and is doing other
 6  work and is just listening.
 7          JUDGE VANASKIE:  Right.
 8          MR. SLATER:  I don't know any other way to handle
 9  this.  The music is still playing.  The hold is going to be
10  there every time we dial in.
11          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.
12  Would you like us to circulate a new number for everyone?
13          JUDGE VANASKIE:  Can we do that?  Yes.
14          MR. GOLDBERG:  Yes, we can do that.  I can email --
15  I'll email plaintiffs' counsel and they can distribute to the
16  plaintiffs' group.  We'll distribute to the defendants' group
17  and to the Court.
18          THE COURT REPORTER:  And the court reporter, please.
19          JUDGE VANASKIE:  And Camille.
20          MR. GOLDBERG:  Yes, we'll make sure that --
21          JUDGE VANASKIE:  All right?
22          MR. GOLDBERG:  Yes, we will.
23          JUDGE VANASKIE:  All right.  Thanks, Mr. Goldberg.
24          MR. GOLDBERG:  We will do that now.
25          JUDGE VANASKIE:  All right.  Thank you.  Bye-bye.
```

```
 1              (Conference call ended.)

 2              (Conference call resumed.)

 3         JUDGE VANASKIE:  Camille, are you there?

 4         THE COURT REPORTER:  Yes, I am, Judge.

 5         JUDGE VANASKIE:  All right.  I'll ask everyone to

 6    please place your phones on mute except when you're speaking.

 7    Please, nobody go on hold, nobody put this call on hold.  I'm

 8    surmising that's the problem that we encountered and I don't

 9    want to encounter it again.  If you want to tune out, just put

10    it on mute.  You can still -- you don't have to put it on hold.

11    All right.

12              Let's see if I can pick up where we were on this.  We

13    were talking about the Rule 34 request to the bellwether

14    plaintiffs.  I don't want that to delay matters.  I expect that

15    there will be a response by March 3rd and we'll be able to

16    resolve this matter no later than our mid-month call, if not

17    sooner.

18         ELECTRONIC VOICE:  Joining the meeting.

19         JUDGE VANASKIE:  Does anyone else want to be heard on

20    this point?  Ms. Lockard?

21         MS. LOCKARD:  Thank you, Judge.

22         JUDGE VANASKIE:  I don't know if you were concluded.

23         MS. LOCKARD:  I had concluded my comments.  So we

24    appreciate the opportunity to present this issue to you.

25         JUDGE VANASKIE:  All right.  Mr. Nigh, did you want
```

```
 1   to --

 2          MR. NIGH:  I don't have anything further either.

 3   Appreciate it.

 4          JUDGE VANASKIE:  All right.  Very well.

 5          Okay.  So the next item on the agenda is the dismissal

 6   of peripheral defendants, and you expected to be able to reach

 7   an agreement on an order with respect to this matter.

 8          Where does this matter stand and who is addressing it

 9   on behalf of the defendants?

10          MS. GROSSMAN:  Hello, Your Honor.  This is Megan

11   Grossman.  I am --

12          ELECTRONIC VOICE:  Joining the meeting.

13          MS. GROSSMAN:  I am speaking on behalf of the

14   peripheral defendants today and specifically I represent AvKARE

15   in relation to this issue.  And we have been working together

16   with Marlene Goldenberg on behalf of the plaintiffs to develop

17   some language to be included in the amendment to the peripheral

18   defendants dismissal procedure order, and I think we reached an

19   agreement and we've circulated what we hope is the final

20   version this morning.  So we should be able to submit that to

21   Your Honor very soon for execution and entry.

22          JUDGE VANASKIE:  All right.  Thank you very much.

23          Ms. Goldenberg, is there anything we need to discuss

24   on this matter from plaintiffs' perspective?

25          MS. GOLDENBERG:  No, Your Honor.  And, again, this is
```

```
 1   Marlene Goldenberg.
 2          Just for context, we had a very similar order that was
 3   entered in the Valsartan litigation.  The only difference
 4   between that order and this order that's coming your way --
 5          ELECTRONIC VOICE:  Joining the meeting.
 6          MS. GOLDENBERG:  -- that I can see, in the Valsartan
 7   case, by the time this order was entered, we had already gotten
 8   enough information to understand when the contamination began.
 9   Here, we just don't have that kind of discovery or public
10   information available to us and so there's a caveat that allows
11   plaintiffs to meet and confer with the peripheral defendants
12   should we discover that the contamination goes back further
13   than the relevant time period that's specified in this new
14   order.  Otherwise, as --
15          ELECTRONIC VOICE:  Joining the meeting.
16          MS. GOLDENBERG:  -- you know, we're on the same page
17   and we should be able to get you the stipulated order today.
18          JUDGE VANASKIE:  All right.  Very well.  Thank you.
19          All right.  The next item on the agenda is the
20   dismissal of bellwether trial pool plaintiffs.  And as I
21   understand it, there seems to be one issue with respect to the
22   draft order --
23          ELECTRONIC VOICE:  Joining the meeting.
24          JUDGE VANASKIE:  -- dealing with how to handle
25   dismissal of bellwether plaintiffs.  And who will be addressing
```

 1   this matter on behalf of the defense?

 2          MS. COHEN:  Good morning, Your Honor.  This is Lori

 3   Cohen with Greenberg, Traurig on behalf of the defense on this

 4   issue.

 5          JUDGE VANASKIE:  All right.  Very well.

 6          MS. COHEN:  Thank you, Your Honor.

 7          So you are right that there is the one issue and we

 8   are pleased to see that in plaintiffs', Mr. Slater's,

 9   submission that they agree that, you know, on this core issue

10   there's only one dispute and that relates to what we attached

11   to our letter yesterday that was submitted, Paragraph 7 of

12   this, I'm sure you could see, and it is just one issue and one

13   paragraph but it's an important one, we believe, and it relates

14   to the dismissal.  And our request, and we think it's a

15   reasonable one, we think it's a necessary one, you know, I

16   don't know if this is an issue to go to Judge Kugler but,

17   obviously, we'll be happy to present it to him but also preview

18   it to you, as you're asking, but it's an important issue

19   because under Rule 41, you know, plaintiffs can't just simply

20   unilaterally dismiss.  So we do think this is necessary to --

21          ELECTRONIC VOICE:  Joining the meeting.

22          MS. COHEN:  -- ensure that there's an even playing

23   field and we're just asking that language that we've included

24   there, that is that bellwether trial pool cases may be

25   dismissed only by court order, you know, on the terms that the

1    Court considers proper, and we don't really understand why the

2    plaintiffs would resist this.

3           Now, they suggest, well, there's not a concern here

4    for the defense because, you know, you can replace a bellwether

5    case without a defense pick.  And I think we've all agreed on

6    that in this litigation that if someone -- you know, if

7    plaintiffs dismiss a defense pick, we would be entitled to

8    replace it with a defense pick, which is great and we agree

9    with that, of course.  But more importantly here, even with

10   that, let's say, you know, exeval, if you will, it's still

11   important that they not be able to just unilaterally dismiss

12   without getting a court order or our consent.  And the reason

13   is, we're all investing a lot of time, money, resources, energy

14   into different bellwether plaintiffs, we've already started

15   working them up on our end, and we think it's important that we

16   have this provision in here to ensure that plaintiffs are not

17   just, you know, again, unilaterally dismissing a case.

18          Also, not to get into this issue right now because

19   we're still meeting and conferring on it, but given Judge

20   Kugler's recent order, there are a certain number of the

21   bellwether plaintiffs who are subject to the recent order that

22   he issued, his February 3rd order in Opinion Number 5 on the

23   motion to dismiss on the subsumption claims and defenses.  And

24   so, again, we'll put that off for a later discussion because

25   we're still moving to that, but we think it's vitally important

1   that plaintiffs not be able to just dismiss cases.  And this

2   is, again, very consistent with discovery rules, Rule 41, we

3   have already invested time and, you know, and make sure that we

4   have an even playing field and nobody can kind of, you know,

5   game the system in any way and that's very important in the

6   bellwether selection process that we're involved in.

7           So I'll pause there to see if there's any reaction

8   but, again, this is an important provision, it's only one

9   provision, and we've worked really hard to come to agreement on

10  the rest of it, but we do insist that this being included as

11  well, subject to the Court's approval, of course.

12          JUDGE VANASKIE:  All right.  Who's going to address

13  this on behalf of the plaintiffs?

14          ELECTRONIC VOICE:  Joining the meeting.

15          MR. SLATER:  Your Honor, it's Adam Slater.  I'm going

16  to very briefly address the last --

17          ELECTRONIC VOICE:  Joining the meeting.

18          JUDGE VANASKIE:  Hold on.  Hold on a second, Mr.

19  Slater.  There are a lot of people still joining.

20          ELECTRONIC VOICE:  Joining the meeting.

21          MR. SLATER:  Your Honor, again, it's Adam Slater.  I'm

22  going to briefly address the last thing Ms. Cohen said and then

23  I'm going to hand off, I believe.

24          The last thing that Ms. Cohen threw in, and they threw

25  into their letter, is what I can only characterize as an absurd

1    interpretation of Judge Kugler's order, and I think it's

2    something that we're going to have to raise with him when he

3    gets on because the defense seems to be trying to slide into

4    this -- into this agenda letter and slide into this argument a

5    setup for a real serious dispute over something that we don't

6    understand from a logical standpoint what they're saying.

7         They're claiming that the plaintiffs from various

8    states have had all their claims dismissed, including New

9    Jersey and Louisiana and Ohio and Tennessee.

10        Just to briefly tell you, what they're saying is when

11   Judge Kugler dismissed, for example, the strict liability claim

12   in a plaintiff from New Jersey's case, their interpretation is

13   that all of the claims have been dismissed as opposed to what

14   Judge Kugler ruled, which is, in New Jersey you plead the New

15   Jersey Product Liability Act and you plead what comes within

16   the -- within that claim, but it's also subsumed by the PLA in

17   New Jersey, other than the express warranty claim, which we'll

18   note the decision clearly didn't dismiss that claim but

19   actually found that the representation that this product was

20   the generic equivalent of Valsartan was a breach of the express

21   warranty as a matter of law.  We read the decision that way.

22        So, certainly, the plaintiffs haven't had their cases

23   dismissed.  All we're going to do is replead.  For example, for

24   the New Jersey plaintiff, the claims would be repled as New

25   Jersey Product Liability Act claims which will include

 1   manufacturing defect, design defect, failure to warn, the loss

 2   of consortium claims are embedded within that, as well as the

 3   right to claim punitive damages and compensatory damages.

 4        So I wanted to get that out there first and I think

 5   it's something we probably should discuss with Judge Kugler

 6   later so that we don't have to have our discussions with the

 7   defense burdened by -- by what the defense -- by their

 8   interpretation.

 9        I'll hand off now to my colleagues.  I'm not sure if

10   it's Mr. Nigh or who's going to address the rest, which is the

11   mechanical dismissal process.

12        MS. COHEN:  And, Your Honor --

13        MR. NIGH:  This is Daniel Nigh.

14        JUDGE VANASKIE:  Hold on.  Hold on.

15        THE COURT REPORTER:  I'm sorry --

16        JUDGE VANASKIE:  Yes.  Is that Camille?

17        THE COURT REPORTER:  Yes, Judge, I wasn't sure who was

18   about to speak.  I heard two different voices.

19        MR. NIGH:  This is Daniel Nigh.

20        JUDGE VANASKIE:  All right.  Mr. Nigh.

21        MR. NIGH:  Yes.  I'm going to address the other part

22   of the argument, which is, you know, the dismissal and looking

23   to include some dismissal language into the order.

24        Frankly, we think this is just premature completely

25   because at this time we don't have a single case that has been

1  dismissed and we don't know if and when that case may be

2  dismissed.

3        In addition, we also have a second part that we're

4  going to have to address because of right now we have 28 picks.

5  That's not going to be the trial bellwether pool.  Typically,

6  trial bellwether pools are much smaller in scope.  They end up

7  being something in the nature of six or eight cases.  We have a

8  second part that we're going to propose in terms of how we get

9  from 28 cases to the six or eight cases, and we're going to

10 attempt to propose that by next week so that we can all be

11 looking at, you know, what is the second part of this plan.

12       In terms of the dismissals, you know, first, I don't

13 think it's a one size fits all.  We have to understand when --

14 you know, if and when there's a dismissal to understand how to

15 address it.  You know, dismissals can happen much later in the

16 process, they can happen early in the process, and, frankly, as

17 of right now, we don't know how to address it because we don't

18 know when that dismissal is going to occur.  I think we also

19 believe that the second part of the plan will address some of

20 these issues to the extent that strikes are included or we have

21 random selection, then replacing a dismissal with another pick

22 is going to be, you know, not important and not something we

23 need to do and, frankly, would be a waste of time, in our

24 opinion.  So that's the thing.  Until we get to that second

25 part of the plan, it's difficult to be able to address the

1    dismissal.

2         The other part of the argument that I would address

3    is, you know, this requirement to have a court order before

4    somebody can dismiss their case with prejudice.  That, frankly,

5    does not occur in the vast majority of mass torts.  I have

6    represented numerous bellwether plaintiffs.  I have seen, you

7    know, numerous plaintiffs in multiple different MDLs be able to

8    dismiss their case with prejudice.  Frankly, sometimes that

9    occurs if and when someone has a conversation with their client

10   and the client, for whatever reason, decides they don't want to

11   go forward with depositions or whatever, whatever the stage is

12   there, and they have a right to be able to dismiss their case

13   with prejudice if they so choose.  So to have some extra

14   hurdle, frankly, we don't think is -- is necessary and I think

15   that's a misreading of Rule 40 -- Rule 41.

16        So with that, that's our position.  Frankly, at this

17   point, though, I would just reiterate, we haven't had a single

18   person at this stage, you know, voice that they're going to

19   dismiss a case.  I haven't heard that from the defendants.

20   Frankly, I think it's premature to address this because I don't

21   think it's a one size fits all until we know if and when there

22   is a dismiss.

23        MS. COHEN:  And, Your Honor, if I may respond briefly.

24   This is Lori Cohen.

25        JUDGE VANASKIE:  Ms. Cohen.

1          MS. COHEN:  Thank you very much, Your Honor.  And I

2     hope that the court reporter can hear me as well.

3          THE COURT REPORTER:  Is this Ms. Cohen?

4          MS. COHEN:  Yes.

5          THE COURT REPORTER:  Thank you.

6          MS. COHEN:  Yes.  To respond to Mr. Nigh first, and

7     then I'll circle back to Mr. Slater, you know, I, too, have

8     been in a lot of MDLs like them and a lot of -- I've been in a

9     lot of bellwether pools and worked on a lot of orders like

10    this.  There should be no apprehension or objection to the

11    dismissal request that once the bellwether picks have been

12    made, as they are now, and we're underway in terms of discovery

13    and all the efforts I described, that any dismissal, even with

14    prejudice, be by court order pursuant to Rule 41.  I mean,

15    basically, we have -- we have responded to the complaints, now

16    we've done the 28 picks, and -- and to have this provision in

17    here should not cause them any apprehension unless they're

18    planning something, unless they're planning to, you know, to

19    try to dismiss cases if they don't like how things go in

20    discovery.  So, again, this is the same standard as under Rule

21    41.

22         Obviously, we, all of the attorneys in this

23    litigation, trust in the system, trust in Judge Kugler, trust

24    in you.  And so to have a provision that says any dismissal of

25    this small winnowed-down group of 28, which everyone is working

1    on, has to be approved by the Court should not cause anyone any

2    concern or consternation.  And the fact that it does, and

3    they're not willing to have a paragraph in here, raises a lot

4    of concern on the defense side.  We think that this is

5    necessary and we believe that it should be included.  And to

6    say, well, we haven't had any cases dismissed yet is all well

7    and good, but we are now, you know, again, getting more

8    immersed in the bellwether process and we think it's important

9    that we have this provision in here so that they cannot just

10   simply unilaterally dismiss just like they could not, once

11   responsive pleadings are made in a federal court case, under

12   Rule 41, without addressing it with the Court and maybe the

13   Court allows relief.  So we think that's vitally important.

14          As to Mr. Slater's point, again, I wasn't slipping

15   anything in in my argument or our letter brief to Your Honor.

16   Again, that was included as sort of a just -- just, you know,

17   flagging the issue, if you will, for future discussion because

18   we do have a divergent view of the order and the implications.

19   But if the plaintiffs are going to replead, you know, we'll

20   continue to meet and confer, but we have a divergent view

21   between the defense and plaintiffs on the meaning of the order,

22   but that doesn't have to be addressed today because we're

23   absolutely willing to continue discussing that.  We just wanted

24   to raise that.  It doesn't implicate this order issue that

25   we're discussing because, again, this is just one provision

1    consistent with the federal rules and consistent with,

2    basically, how Judge Kugler has addressed things in this

3    litigation to date.

4              JUDGE VANASKIE:  All right.  So it seems the matter on

5    the opinion on Motion to Dismiss 5 or that fifth opinion,

6    that's premature for any discussion that's certainly in front

7    of me today.  It's just a question of -- and I'm having trouble

8    understanding from the plaintiffs' standpoint what is

9    objectionable about requiring a court order as part of the

10   dismissal of a bellwether plaintiff.  I'm trying to see how

11   you're -- how you, on the plaintiffs' side, are harmed by

12   including that provision.  Can somebody educate me on that?

13             MR. NIGH:  Yes, Your Honor.  Frankly --

14             THE COURT REPORTER:  I'm sorry.  Is this Mr. Nigh?

15             JUDGE VANASKIE:  Who is this?

16             MR. NIGH:  I'm sorry.  Sorry, Your Honor.  This is

17   Daniel Nigh.

18             Frankly, we believe that it is just an extra hurdle

19   that's not a requirement that you must have a court order

20   before, you know, filing a dismissal with prejudice.  And,

21   frankly, as we looked at *Benicar* and what occurred in *Benicar*,

22   you know, dismissals with prejudice were filed without getting

23   a court order.  It's just one extra hurdle that we think is

24   unnecessary.  That's all.

25             JUDGE VANASKIE:  All right.  Anything else on this

*1* issue?

*2*          (No response.)

*3*          JUDGE VANASKIE:  I'm going to raise the issue with

*4* Judge Kugler.  I don't see -- if it's simply an extra hurdle,

*5* all right, it's an extra step, but I don't see prejudice from

*6* jumping over that hurdle.  And so I'd be inclined -- I'm just

*7* letting you know right now, I'd be inclined to say that'd be an

*8* appropriate provision of the -- how we deal with the bellwether

*9* plaintiffs and the bellwether plaintiffs that may drop out of

*10* the matter.

*11*          All right.  Let's move to the next issue then on the

*12* -- on the agenda.  And I did receive today a revised letter

*13* from defense counsel, from Mr. Goldberg, dealing with the

*14* Aurobindo discovery status, but I've jumped ahead.  We're

*15* really on the Hetero discovery status, Item Number 5 on the

*16* agenda.

*17*          My notes indicate that you're continuing to work

*18* through this issue.  The plaintiffs have indicated that this

*19* may have an adverse impact on schedule if it can't be resolved

*20* promptly.

*21*          Where do we stand today with respect to the Hetero

*22* discovery issue?  Who will be addressing this on behalf of

*23* Hetero?

*24*          MS. SHAH:  Good morning, Your Honor.  This is Nakul

*25* Shah, counsel for Hetero Drugs and Hetero Labs.

```
 1           JUDGE VANASKIE:  All right.

 2           MS. SHAH:  May I proceed?

 3           THE COUR REPORTER:  I'm sorry.  Who is this?

 4           MS. SHAH:  It's Nakul Shah, N-A-K-U-L S-H-A-H, counsel

 5   for Hetero Drugs and Hetero Labs.

 6           JUDGE VANASKIE:  All right.

 7           MS. SHAH:  Your Honor, during our mid-month

 8   conference, plaintiffs informed you of several deficiencies

 9   that they raised in Hetero's document production.  Since that

10   time, we've engaged in several meet and conferals and we've

11   communicated by email as well to attempt to address each

12   specific concern raised by the plaintiffs.  We've had very

13   productive conversations and, thus far, we produced certain

14   corrected documents that plaintiffs have requested.

15           Additionally, we intend to make a subsequent document

16   production either today or tomorrow morning as well as address

17   additional specific issues raised by the plaintiffs.

18           We're continuing to work in good faith with plaintiffs

19   and anticipate remedying all of the issues that they've raised.

20           JUDGE VANASKIE:  All right.  Who wants to be heard on

21   behalf of the plaintiffs?

22           MR. SLATER:  This is Adam Slater, Your Honor.

23           As we stated in our letter, we are willing to work

24   with Hetero's counsel for a very short period of time --

25           JUDGE VANASKIE:  Right.
```

1          MR. SLATER:  -- in the hopes that they can remedy

2    these issues.  As we expressed, we are skeptical because of the

3    extent of the issues and we believe that as they dig deeper

4    they're going to realize that there -- from what we've learned

5    in these discussions, that there is some significant steps that

6    it looks like did not occur.  For example, we have no

7    confidence that there was actually investigations done to

8    determine where all of the key data was housed to make sure all

9    of those applications and databases were produced, for example.

10   We believe that there's going to turn out to be many sources of

11   documents we don't have.

12          So we're certainly encouraged that the -- that the

13   problems with the metadata and productions, et cetera, have

14   been acknowledged, but we, again, are concerned, A, what else

15   is going to turn out to be a problem as we dig deeper; and,

16   two, how quickly can this be remedied, because some of these

17   issues are very deep seated.  We're talking about redoing the

18   metadata for thousands and tens of thousands of documents and

19   getting overlay files produced, et cetera, in a format that can

20   be useable without wiping away the data that we had previously,

21   these are technical challenges that can be overcome; but

22   because of the way things have gone so far, we're concerned.

23          So we really wanted to just make very clear and make a

24   clear record what while we're working with Hetero and telling

25   them what we're finding as we look, we do want to be able to

1  have the right to come back to the Court, which I understand we

2  do, if this can't be fixed quickly.  And we did want to,

3  obviously, advise the Court that, for example, there's a

4  deposition scheduled next week wherein we're supposed to be

5  questioning a witness about the application of good

6  manufacturing practices and the application of internal

7  standard operating procedures and quality manuals and we don't

8  even have all of those documents yet, and, you know, obviously,

9  we're -- we're a week away so it's unlikely that we can pull

10  that together in the course of just a few days and be ready to

11  take an important 30(b)(6) deposition.

12          So we thought it prudent to advise the Court and to

13  make sure that that was okay if we need to amend the schedule

14  due to these document production issues.

15          JUDGE VANASKIE:  Well, certainly, there has to be

16  flexibility if these document issues persist in terms of

17  precluding prejudice to the plaintiffs.  And if it's a matter

18  that you believe warrants some immediate attention and

19  intervention on the Court's end, please let me know and we will

20  do that.  Right now, as I understand it, you're raising the

21  issue because it's a major concern but you're not asking for

22  any relief; is that correct?

23          MR. SLATER:  That's correct, Your Honor.

24          JUDGE VANASKIE:  All right.

25          All right.  Well, let's move on then, if that's all

1    right.

2         Anything else on this issue from Hetero's perspective,

3    Ms. Shah?

4         MS. SHAH:  Your Honor, we are open to discussing with

5    plaintiffs if there's a need to reschedule the depositions that

6    are coming next week; but we do anticipate significant progress

7    with the issues that have been raised during the remainder of

8    this week.

9         JUDGE VANASKIE:  That's great to hear.  Thank you.

10        All right.  The next item I have on the agenda is the

11   Camber deposition status.  And I don't have any notes on this.

12   My notes say, it's being worked out.  So where do we stand on

13   this?  Who will be addressing this on behalf of the plaintiffs?

14        MR. SLATER:  Your Honor, it's Adam Slater again.

15        I think that there's really nothing to discuss.  The

16   30(b)(6) witness is agreed to and Camber has provided a witness

17   and some dates yesterday and we're going to just get back and

18   confirm the dates, so my expectation is that there should not

19   be anything to discuss with the Court.

20        JUDGE VANASKIE:  Great.  Who is addressing this on

21   behalf of Camber?

22        MS. GROSSMAN:  Hi.  This is Megan Grossman from Lewis,

23   Brisbois on behalf of Camber Pharmaceuticals.  And, yes, I

24   agree with Mr. Slater.  He has the date --

25        ELECTRONIC VOICE:  Joining the meeting.

1           MS. GROSSMAN:  -- or we will confer about a date that

2   works for both of us.

3           JUDGE VANASKIE:  All right.  Very well.  Thank you.

4           All right.  Now we're up to Aurobindo, Aurobindo

5   discovery status, and I have a revised letter from Mr. Goldberg

6   dealing with this question.

7           Now, who will be addressing this issue on behalf of

8   plaintiffs?

9           MS. GOLDENBERG:  Your Honor, this is Marlene

10  Goldenberg.

11          JUDGE VANASKIE:  Okay.

12          MS. GOLDENBERG:  Since we last spoke, Your Honor, we

13  have been able to reach an agreement with Aurobindo about some

14  document hit-counts and you may have noticed they chose not to

15  file a brief on that for that reason, and they've agreed to

16  provide hit-counts to us by the end of the week.  So we're

17  pleased about that.

18          We've also had a number of discussions about

19  custodians and we have agreements, I'm looking at our letter,

20  so that's Docket 967 at Page 7 and 8, you'll see that there are

21  certain custodians that are agreed upon and what we're asking

22  for today is for you to call balls and strikes on the rest of

23  them.

24          So the list that we're looking for your guidance on

25  appears on Page 8 of our letter, and you'll notice that what

1   we're looking for are all of the people who are in the risk

2   assessment report who were chosen by Aurobindo specifically to

3   look into the very issue that is the reason that we're all here

4   in this, you know, telephonic courtroom today.  So the -- and

5   the custodians that we're asking for do not, to my

6   understanding, overlap with the custodians that have already

7   been agreed to.

8          I did also want to point out, Your Honor, that

9   Aurobindo made a point in their letter undecidedly that

10  apparently this is a burdensome number of custodians but it

11  pales in comparison to what the other defendants have already

12  agreed to give us.

13         Mylan, which is a pretty comparable entity in this

14  case because they're vertically integrated, they make their own

15  API and their own finish dose product, give 52 custodians, and

16  you can see all of their names, if you're curious, at Document

17  Number 328, Exhibit B, in the very large .pdf that you might

18  open up as you're referring back to this transcript, is on Page

19  22 and 23 of that .pdf.

20         So what we're asking for here is really a fraction of

21  what we've gotten as to other defendants and so I don't think

22  this is a very heavy lift, but we just aren't going to be able

23  to get the full picture of the case if we're only looking at

24  seven or eight people's documents.  This -- this is an issue

25  that, of course, occurred in the course of the manufacturing

1    process and you'll notice that the job titles following the

2    people that we've asked for are all within that -- that part of

3    the company who do that.

4         The last thing that we've asked for are individuals

5    who are involved with Lantech and Aurobindo's letter made it

6    look like our ask was very broad but you'll see on Page 9 of

7    our letter that it's actually quite targeted.  We're looking

8    for people who fall into four categories of responsibility.  So

9    we want to know who was in charge of signing that contract and

10   we'd like to see their documents because we'd like to know what

11   the terms of that contract were, what specifications were given

12   to the company and whose responsibility it was to do each

13   thing; who was in charge of doing due diligence on Lantech in

14   making sure that they were complying with their quality and

15   cGMP obligations; who was in charge of giving Lantech

16   specifications for use, recovery and recycling of those

17   solvents; and then last, who is in charge of investigating the

18   problems when they happen.  And so I don't know if that's three

19   people or if it's five people.  By the sounds of our

20   discussions with Aurobindo, it doesn't sound like we're talking

21   about 50 so I don't think that this is a heavy lift.  But these

22   people, whoever they are, because their identities have not

23   been disclosed to us, despite asking many times, are really the

24   core people in this case and we just need to know who they are

25   and we need to get their custodial files produced so we can go

 1    and take these depositions.

 2            JUDGE VANASKIE:  All right.  Who's addressing this on

 3    behalf of Aurobindo?

 4            MS. HEINZ:  Hello.  This is Jessica Heinz for the

 5    Aurobindo parties.

 6            JUDGE VANASKIE:  All right.

 7            MS. HEINZ:  Marlene is correct, we have continued to

 8    meet and confer since the status conference --

 9            ELECTRONIC VOICE:  Joining the meeting.

10            MS. HEINZ:  -- on February 17th.  The parties were

11    able to reach an agreement on the hit-count information and we

12    do intend to provide that by the end of this week.

13            We have also had several productive meet and confers

14    regarding Aurobindo Pharma Limited list of custodians.

15            Just to give Your Honor some background, Aurobindo

16    Pharma Limited is located in India.  They have taken the

17    position throughout this litigation that personal jurisdiction

18    is lacking.  We have been discussing that with plaintiffs

19    recently.  We've sent them a proposed stipulation to --

20    regarding preservation of jurisdictional -- jurisdictional

21    defenses and including our proposed list of the custodians in

22    there.  They told me yesterday that they have no problem with

23    that stipulation and they planned to send it back to me

24    yesterday.  I don't know if they realized on the phone that it

25    included this list of custodians which may be why I did not

1    receive the signed version yesterday, but that is something

2    that the parties have been discussing and we appreciate that

3    the plaintiffs are willing to execute a stipulation regarding

4    preservation of jurisdictional defenses because I think we can

5    all agree that parties walk a fine line if they're engaging in

6    discovery when they're taking the position that personal

7    jurisdiction is lacking.

8         So we are trying to make a good-faith effort to keep

9    the litigation moving.  We have offered seven custodians from

10   our India entity.  That is in addition to 15 that we have

11   already agreed to and produced to plaintiffs' counsel.  And

12   then we have also agreed to another U.S. custodian who we will

13   be producing.  I'm hoping that we can get that done by the end

14   of this month.  And the timeline is another issue.

15        I don't want to jump ahead but what's unduly

16   burdensome for my client is, you know, we have produced a lot

17   of information already.  This is a lot of additional

18   information that they're asking for.  We have told them that we

19   will identify the appropriate Lantech Pharmaceutical -- the

20   person or persons responsible for interfacing with them.  I

21   just don't have that information yet.  I'm still working on

22   getting it.

23        We actually provided a list to plaintiffs back in

24   August 20 -- it was August 25 of 2020 I emailed the plaintiffs

25   Listserv, as well as Lane Hilton, with a list of five proposed

```
 1   custodians, all of whom are on the list that we are currently

 2   proposing, and I never received a response.  The next time

 3   plaintiffs raised this wasn't until February 2nd, 2021.

 4           So from my perspective, I could have been addressing

 5   this with them back in August of 2020.  Now they want me to

 6   agree to all of these custodians and produce everything by

 7   March 12 and that just seems unduly burdensome, unfairly

 8   prejudicial and unreasonable.  We can certainly work out --

 9   we're happy to continue to meet and confer with them about a

10   timeline for production of the ones that we've agreed to

11   produce; I'm confident that we can get those done by mid-May;

12   but we think their ask right now for the Court to enter an

13   order on all of this is a little premature and unreasonable.

14           JUDGE VANASKIE:  I put myself on mute.  All right.

15   And the hiccups continue.

16           Do you want to respond, please.

17           ELECTRONIC VOICE:  Joining the meeting.

18           MS. GOLDENBERG:  This is Marlene Goldenberg again.

19           JUDGE VANASKIE:  Yes, Ms. Goldenberg.

20           MS. GOLDENBERG:  So I just wanted to note that, you

21   know, there was, I think, a misunderstanding about Aurobindo's

22   willingness to produce in light of that personal jurisdiction

23   objection.  I'm glad that we're now at the point where we're

24   talking about when rather than if.  And, you know, to the

25   extent we can move some depositions back, we might be willing
```

1  to do that a little bit to accommodate the production schedule;

2  but my fear is that if we push these too far, you know, we're

3  going to end up exactly where we started when defendants came

4  and asked for that 60-day reprieve, which was, we have all

5  these depositions squished up at the end of the schedule and no

6  time in between.  And so there might be a little bit of

7  flexibility on the timeline that I provided in our agenda

8  letter.  And, again, as I also indicated in our agenda letter,

9  we are willing to prioritize certain custodians so that

10 depositions, particularly fact depositions, of witnesses who,

11 you know, know things that are related to the -- or might be

12 able to testify related to things in the custodial files of

13 certain custodians we requested, we could move those forward

14 and potentially save the 30(b)(6)s to the end so that we have

15 time to meaningfully review everything.  But what I didn't hear

16 Jessica say was that these custodians are not appropriate from

17 a substantive perspective, and I think that's important because

18 these are important people.  They are the very individuals

19 designated by the company who deal with the issues that are the

20 reason that we're here today.

21       And, again, this is an issue that occurred over at

22 Aurobindo India.  The fact that they're an Indian company

23 doesn't make them any different from the other API

24 manufacturers who are also overseas, and so I don't think

25 that's a reason to not produce documents.

1          So, again, what we're asking for are the production of

2   the custodial files, in our letter, as well as the names and

3   custodial files of the people that touch on the four points in

4   our agenda letter, and we'd like a phased production schedule

5   that will allow us to move forward with depositions and not

6   have to be in a position where we either leave depositions open

7   or come back to the Court and ask for another extension.

8          JUDGE VANASKIE:  All right.  Thank you.

9          Anything else, Ms. Heinz?

10          MS. HEINZ:  I just want to add that the people that we

11   have proposed -- I apologize.  The people that we have proposed

12   are the heads of operations and the heads of quality control

13   and quality assurance.  The operations heads are -- they cover

14   the manufacturing and testing departments as well.  So we have

15   offered the pertinent people, the pertinent custodians, and we

16   do not think that it's necessary to add these other custodians,

17   particularly given the burden and delay in our offer to produce

18   custodians that we made back in August of 2020.

19          JUDGE VANASKIE:  All right.  Thank you.

20          On this particular issue, I've been asked to call

21   balls and strikes and I think it is appropriate to try to get

22   something resolved.  I think plaintiffs have made a sufficient

23   showing that the files of the custodians, the persons who are

24   identified on Page 8 of plaintiffs' letter, be produced as well

25   as the information that's requested on Page 9 of the letter

1    dealing with four specific matters.  And so we'll require that

2    those files be produced or the document ESI be produced.

3         One of the questions I have is the timing for this.

4    Plaintiffs have asked for custodial files of a particular

5    individual and for Lantech-related custodians be completed by

6    March 5th.  Is that feasible from the perspective of Aurobindo?

7         MS. HEINZ:  Hi, Your Honor.  This is Jessica Heinz

8    again.

9         No, that's not feasible.  We have -- we're in the

10   process of collecting the seven that we have agreed to.  We

11   will have to collect all of the other ones if understanding --

12   if I'm understanding the Court's ruling on those.  We have

13   collected two so far, run the search terms on those, and I'm

14   already looking at 400,000 documents to go through.  It's

15   simply not possible to do that in just a few weeks, which is

16   why I proposed that we could produce all seven of the ones that

17   we have already agreed to by mid-May.  I think that is doable.

18   It's just going to be -- just knowing how broad the search

19   terms are, as a result of that, hitting on a lot of documents

20   that we have to go through, and so, in light of that, we would

21   just ask that the Court take that into consideration and let us

22   have until mid-May to at least produce these and then we can --

23   the seven that we've agreed to; and then if we could have

24   additional time after that to produce the others, I think that

25   that would be fair, you know, considering that we could have

1   addressed this back in August and been -- you know, agreed to

2   something back then and been reviewing and producing throughout

3   this whole time.

4          JUDGE VANASKIE:  All right.  Ms. Goldenberg?

5          MS. GOLDENBERG:  Yes.  Your Honor, we have a deadline

6   of May to complete our depositions.  And so while, you know, we

7   -- we want to work with Aurobindo and have done our best to do

8   that in the past, our backs are now a little bit up against the

9   wall and we want to make sure that we honor the deadlines that

10   were just put in place by the Court.

11          And so, again, you know, we're willing to face this

12   but the numbers that are being thrown out right now of

13   documents are -- again, they're low compared to what we've seen

14   from other defendants.  And, you know, all of us on the

15   plaintiffs' side, and I think on the defendants' side, have

16   been in positions at times where we've had to bring on a few

17   extra people to make sure we get things done.  And, you know,

18   if they put adequate resources towards this project, I have

19   every confidence that they'll be able to get it done.

20          JUDGE VANASKIE:  All right.  Well, what I'll do is I'm

21   going to issue an order that requires the production of that

22   which is sought in this -- on Pages 8 and 9 of the plaintiffs'

23   letter.  It'll be more formal than what I'm indicating now.

24   And I'll require that the production of the custodial files of

25   the individual identified on Page 10 and the Lantech-related

1    custodians be completed by March 12th, and that the remaining

2    productions be completed by March 19th; but we'll keep -- we'll

3    continue to be flexible with respect to the burden that this

4    may impose but this needs to be done and we have a schedule and

5    I simply could not agree that document production would be

6    delayed to mid-May given the current deadlines.  So I will

7    issue an order to that effect later today or tomorrow.

8            All right.  Let's move on to --

9            MS. GOLDENBERG:  Thank you, Your Honor.

10           JUDGE VANASKIE:  Let's move on to the next issue on

11   the agenda, which is the privilege log issue, and this is a

12   matter that you've teed up for me and I need to resolve.

13   You've given me great briefs on the matter and I will resolve

14   that promptly.

15           Is there any -- I know defense briefed this issue

16   again in the agenda letter.  Did anyone want to be heard on

17   this particular issue before we move on?  Let's ask from the

18   plaintiffs' perspective since this was briefed by the defense.

19           MR. SLATER:  Hello, Your Honor.  I would think that

20   I'm comfortable -- this is Adam Slater.  We're comfortable not

21   arguing any further.

22           JUDGE VANASKIE:  Okay.

23           MR. SLATER:  It's been briefed.  My concern would be

24   if anybody on either side starts to argue, the other side will

25   need to respond.  So assuming both sides can agree not to say

1    anything, you know, we're fully -- you know, we're fully fine

2    with just letting Your Honor decide it based on the briefs and

3    the prior arguments that you've heard.

4         JUDGE VANASKIE:  All right.  Very well.

5         Anything on the defense side?

6         MS. LOCKARD:  Well, I don't -- this is Victoria

7    Lockard, Your Honor, for Teva, at Greenberg.

8         I don't want to open a can of worms on this.  I would

9    just say, you know, we did feel the need to respond in our

10   submission because plaintiffs had provided an additional brief.

11   So now they've provided you with two briefs, we've provided you

12   with one and then we addressed it in our CMC submission.  If

13   there are any questions as Your Honor is going through the

14   briefing, you know, particularly about any of the metrics or

15   numbers that were provided, you know, we're available to answer

16   those questions.  I know in some instances, you know, Judge

17   Schneider would just have a call to follow up on questions he

18   might have had.  So I, you know, welcome that if there's

19   anything we can answer for you as you go through those; but,

20   otherwise, I don't think it's a good use of time to get into

21   the details of the arguments.  I think both sides did a good

22   job laying out their position on paper.

23        JUDGE VANASKIE:  Agreed.  And I like that suggestion,

24   Ms. Lockard, that if I, as I get into this, I believe it would

25   be helpful to have a discussion, we'll have a discussion just

 1    on this particular issue, we'll schedule something.  But for

 2    now, we're planning on resolving it on the papers.

 3            The next issue I have is the ZHP protective order

 4    motion, which is right in front of me, and you all did a great

 5    job letting me know what I need to look at to resolve this

 6    matter.  I didn't intend to have any discussion on this.

 7            Did anybody from the defense side want to add anything

 8    with respect to this particular matter?

 9            MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

10    will just say I took from Your Honor's comment last week that

11    you would ask us if you had any questions about the briefs,

12    that the issue was then fully briefed, and I was surprised to

13    see that plaintiffs put into their brief, letter brief,

14    yesterday a discussion about two of the documents that were

15    already --

16            JUDGE VANASKIE:  Yes.

17            MR. GOLDBERG:  -- submitted to the Court.  I -- I

18    don't need to address those documents, unless Your Honor would

19    like me to, except to say that they really don't alter the

20    conclusion.  The ZHP parties did not misrepresent anything

21    about those documents.  The two documents that plaintiffs

22    raised, plaintiffs are misconstruing our point about those

23    documents.  While Ms. Hu may have the approval authority

24    internally, she does not have the authority to approve

25    externally without being delegated that authority by her

1   superiors.  And, you know, the two documents that plaintiffs

2   have referred to don't alter that.  And we would just point

3   Your Honor to the declaration of Wang Ma at ECF 765-3 where she

4   discusses the authority of Ms. Hu, Mr. Tang and Ms. Xu, and I

5   will leave it at that, Your Honor.

6          JUDGE VANASKIE:  All right.  Anything from the

7   plaintiffs on this?

8          MR. SLATER:  Hello, Your Honor.  Adam Slater.

9          I mean, I guess we have a difference -- we have a

10  difference on those documents.  Why did we reference it in a

11  short paragraph or two in our letter?  Because something was

12  stated in the reply that we thought required clarification.

13  The fact that there's something put into this letter I don't

14  think should be such a large surprise to defense counsel, as

15  they basically did exactly the same thing in this section and

16  provided several pages of additional argument on the privilege

17  log issue where the briefing was closed on that as well.  So

18  I'll just, you know, point to that as I think we should try to

19  be consistent in our arguments.

20         These witnesses, we think we've clearly established

21  that they've reached the level of managing agent which is not a

22  very high standard and we showed that these witnesses had that

23  authority and, you know, we rely on our briefs and we await

24  your decision.

25         JUDGE VANASKIE:  All right.  Very well.  Thank you.

1    I know I need to resolve these matters.  I feel fully
2  recovered from my bout with COVID and I worked full time the
3  last two days, but that's the first two days of full time, but
4  we will get to this really quickly.
5    The last item has to deal with the service of the
6  losartan/irbesartan complaints on the foreign defendants and I
7  have a spreadsheet that I have printed out that I don't have in
8  front of me right now dealing with the status of this.  It
9  seems to me this should be a matter that's fairly resolvable.
10    What needs to be done to get an order in place on this
11  matter from the plaintiffs' perspective?
12    MS. GOLDENBERG:  Your Honor, this is Marlene
13  Goldenberg, and I will start by saying that I agree with you.
14  I don't think this is a tough issue.
15    We, as you can see on the spreadsheet, have initiated
16  or completed service on all of the defendants at this point.
17  We asked, I think it was about a month ago, for the foreign
18  defendants to -- who are already in this case because of
19  valsartan to agree to just accept service through their
20  attorneys and many of them have not responded, and so this
21  issue is really just getting teed up so that we can bring this
22  issue to a close.  And then there's also an issue of foreign
23  defendants who are not in the case.
24    And so it's a two-part ask.  Part one is we're asking
25  the Court to order any defendant who's been in this case as a

1    defendant in Valsartan to just agree to accept service on

2    behalf of all of their clients, but, most importantly, the

3    foreign clients so that we can, you know, start this case.  And

4    part two of the ask is for foreign defendants who are not yet

5    in the case, meaning that they are not defendants in the

6    Valsartan portion of this MDL, the ruling that Judge Kugler had

7    given early on in this litigation is that we only need to serve

8    those defendants formally through the Hague Convention once,

9    and once that formal process has happened once, that's deemed

10   to be proper service; and from then on those defendants need to

11   be accepting service through the protocols that have been acted

12   -- that have been enacted, meaning that the defendants will

13   accept service electronically and through MDL centrality.

14        JUDGE VANASKIE:  All that seems very straightforward

15   to me.  What's the problem from the defense perspective?  Who

16   will be addressing this issue?

17        MR. GOLDBERG:  Your Honor, this is Seth Goldberg on

18   behalf of the defendants.

19        I -- this issue, I think, it's somewhat defendant

20   specific.  I know a number of defendants have provided the

21   waiver.  I'd ask for the opportunity for defendants to confer

22   again with Ms. Goldenberg so we can resolve this.  I don't -- I

23   don't disagree that it's straightforward.  I think this may be

24   more a matter of defendants just being scattered about on this

25   issue, with so many of us and so many different points of view;

1    but I think if we have the opportunity to discuss it as a

2    group, we can get organized on it and resolve it fairly

3    quickly.

4            JUDGE VANASKIE:  Okay.  That's very encouraging.

5            ELECTRONIC VOICE:  Joining the meeting.

6            JUDGE VANASKIE:  Do you think you're in a position to

7    have it resolved by our mid-month conference?

8            MR. GOLDBERG:  Yes, Your Honor.

9            JUDGE VANASKIE:  Okay.  All right.  Let me just urge

10   you to work towards that resolution.  It is a straightforward

11   matter.  Hopefully, it won't require any actual decision by the

12   Court with respect to this matter, and we'll get that matter

13   moving along.

14           Is there anything else you wanted to cover before we

15   get Judge Kugler on this call?

16           MR. GOLDBERG:  Nothing from the defendants, Your

17   Honor.

18           MR. SLATER:  Nothing from plaintiffs, Your Honor.

19           JUDGE VANASKIE:  Okay.  Very well.  All right.  I'm

20   going to drop off the call, call Judge Kugler and join you all

21   back in here.  All right.  Thank you.

22           (Brief recess taken at 11:29 a.m.)

23           JUDGE VANASKIE:  All right.  We're waiting on Judge

24   Kugler right now who's -- I gave him the new dial-in

25   information.

1              (Judge Kugler joins the teleconference.)

2              JUDGE KUGLER:  Good morning, everybody.

3              MS. LOCKARD:  Good morning, Your Honor.

4              MR. GOLDBERG:  Good morning.

5              JUDGE KUGLER:  How's everybody doing?  Beautiful sunny

6    day here in downtown Camden, New Jersey.  I'm sure you all miss

7    being in Camden, right?

8              UNIDENTIFIED SPEAKER:  We do.

9              JUDGE KUGLER:  All right.  Well, let's get to work.

10   We have some -- how about we go through the easy stuff, the

11   dismissals first that are listed.

12             The first one I have a question about is the Theodore

13   Keller case.  Now, we got this motion by Mr. Sachs, Mr. Welsh,

14   to vacate the prior dismissal and then in the memorandum I got

15   yesterday, defendants say that Mr. Keller still hasn't

16   completed the information that he needs to complete.

17             What is the current status of that?

18             MS. GOLDENBERG:  Your Honor, this is Marlene

19   Goldenberg for the plaintiffs.

20             I've been in touch with counsel for this client and

21   they forwarded me an email last night from defense counsel

22   indicating that I believe everything has now been cured and

23   they do not oppose plaintiff's motion to reinstate the case.

24             JUDGE KUGLER:  Who wants to speak for the defendants?

25             MR. HARKINS:  Good morning, Your Honor.  This is

1    Steven Harkins with Greenberg, Traurig, for the Teva defendants

2    and the joint defense group.

3         I can confirm that we were able to resolve the

4    outstanding deficiencies last night.  This PFS is now

5    substantially complete and the defense no longer opposes the

6    motion to reconsider filed by Mr. Keller's counsel.

7         JUDGE KUGLER:  Okay.  We will then vacate the prior

8    order dismissing this and reinstate this case.

9         All right.  There's four dismissals being sought

10   today.  Delgado Riffenburg, Babin, Hill and Trowbridge.  Any

11   news on those?  Any objection to those?

12        MR. WILLIAMSON:  Your Honor, this is George

13   Williamson, for the record.

14        I just want to point out on Mr. Hill's case that we

15   did reach out to the defendants on February 2nd to ask for a

16   dismissal.  We asked if the defendants would agree to it.  And

17   I just wanted to point out that, you know, we did that in order

18   to try and get this off Your Honor's plate but we got no

19   response.  And, you know, I can only speak for myself, but in

20   hearing from other counsel, it sounds like that might be an

21   issue that's not unique to my case.  But I'm not opposing the

22   dismissal today.  I just wanted to bring that to Your Honor's

23   attention.

24        JUDGE KUGLER:  Well, what's the problem?  I'm not sure

25   I understand what the problem is.

1    MR. WILLIAMSON:  So the only -- the issue that I bring

2  up is just to say to Your Honor that we are trying to move

3  these off of Your Honor's plate and asked the defendants to

4  agree to a dismissal but we got no response.  So I'm just

5  trying to unclutter the cases for Your Honor, at least that my

6  firm have filed, but I haven't gotten a response from the

7  defendants to help do that.

8    JUDGE KUGLER:  Mr. Harkins, do you want to say

9  anything about this?

10    MR. HARKINS:  Your Honor, this is Steve Harkins on

11  behalf of the defense group.

12    In a number of other cases where plaintiffs have

13  affirmatively taken the steps to voluntarily dismiss their

14  cases, we certainly reported that in prior conferences that

15  cases no longer needed to be addressed; but where the voluntary

16  dismissal has not been filed, we're maintaining these cases on

17  the list and are moving forward with the dismissal process that

18  we've been using previously.

19    So I don't know there was anything for us to do with

20  respect to the case referenced here.  If plaintiffs had got it

21  dismissed prior to today, we certainly would not have included

22  it and wouldn't be requesting a dismissal with respect to it

23  now.

24    MR. WILLIAMSON:  Well, Your Honor, again, this is

25  George Williamson.  Just for the record, you know, we had taken

```
 1   a position that it was necessary to reach out to the defendants

 2   and get their approval or consent before we filed the

 3   dismissal; and if that's not the case, then -- then we'll --

 4   we'll just go ahead and file the dismissals without reaching

 5   out to defense counsel, but that was my understanding of what

 6   we needed to do.

 7           JUDGE KUGLER:  Well, I understand from Mr. Harkins

 8   that you don't need his approval; just go ahead and file the

 9   dismissal.

10           MR. WILLIAMSON:  We will do that moving forward, Your

11   Honor.  Thank you.

12           JUDGE KUGLER:  All right.  Did anybody else have any

13   other objections on these four cases?

14           MR. HARKINS:  Your Honor, this is Mr. Harkins again.

15           Just to update the Court, we have reached a

16   preliminary resolution on the Babin, Amanda, case.  We are no

17   longer requesting dismissal of that case at this time.

18           JUDGE KUGLER:  Okay.  Thank you.

19           All right.  The Riffenburg, Hill and Trowbridge cases,

20   they will be dismissed.

21           MS. GOLDENBERG:  Your Honor, this is Marlene

22   Goldenberg.

23           JUDGE KUGLER:  Next item --

24           MS. GOLDENBERG:  I am -- I'm sorry, Your Honor.  This

25   is Marlene Goldenberg on behalf of the plaintiffs.
```

```
 1            I wasn't sure if anyone from Watts, Guerra was on the
 2    phone.  In their absence, I did want to point out that the
 3    remaining deficiencies are not what I think this Court has
 4    previously deemed to be for.  There are a number of
 5    representations in the defendants' letter that certain things
 6    that are more important are going to be supplemented; but the
 7    fact that a plaintiff hasn't answered a question about whether
 8    or not life insurance is something that they have doesn't seem
 9    to be an issue that the case is going to rise and fall on.  And
10    so I just wanted to oppose their motion to dismiss the Delgado
11    Riffenburg case on that basis.
12            JUDGE KUGLER:  Well, I think you've all seen that you
13    can work with the defense counsel after these motions and after
14    the orders have been entered to reinstate them if you correct
15    the deficiencies.  So I wouldn't be too worried about it.  But
16    we'll dismiss it for now, see what happens.
17            MS. GOLDENBERG:  Okay.  Thank you.
18            JUDGE KUGLER:  All right.  We have a list of the eight
19    cases that defendants seek to move to an order to show cause
20    status.
21            Mr. Harkins, any changes there?
22            MR. HARKINS:  Your Honor, we have two updates from
23    that list.  We have resolved the Betz, B-E-T-Z, Raymond, case
24    and the Crowe, C-R-O-W-E, Robert, case and are no longer
25    requesting orders to show cause with respect to those two.  We
```

1   do request orders to show cause with respect to the remaining

2   six cases on the list.

3           JUDGE KUGLER:  Any plaintiffs object to move these six

4   to order to show cause status?

5           (No response.)

6           JUDGE KUGLER:  Okay.  Hearing none, then the

7   Patterson, Gibson, Medrano, M-E-D-R-A-N-O, Greenleaf, Jackson,

8   and Newcomb cases will appear as orders to show cause

9   returnable at the next conference.

10          We have now next, we have a number that appears that

11  they now seek to move to a second listing.

12          Mr. Harkins, any changes in those lists?

13          MR. HARKINS:  No changes to that list from the

14  defense, Your Honor.

15          JUDGE KUGLER:  All right.  There are 11 plaintiffs

16  listed.  Any plaintiffs want to be heard on these 11?  We're

17  just going to move these to another listing.

18          (No response.)

19          JUDGE KUGLER:  All right.  Hearing none, it would be

20  the Dufrene, D-U-F-R-E-N-E, Walsh, McReynolds, Thompson,

21  Little, Selma, James Thompson, Hoppus, H-O-P-P-U-S, Stone,

22  Flores, F-L-O-R-E-S, and Biggs, B-I-G-G-S, will be relisted for

23  the next conference.

24          And then that leaves at the end there are seven more

25  failures to file PFS.

```
 1              Mr. Harkins, any changes in those?

 2              MR. HARKINS:  No changes from the defense, Your Honor.

 3              JUDGE KUGLER:  Any plaintiff want to be heard on

 4      these?

 5              (No response.)

 6              JUDGE KUGLER:  All right.  Having heard nothing, Kopp,

 7      K-O-P-P, Becton, B-E-C-T-O-N, Osolin, O-S-O-L-I-N, McGuire,

 8      Righteous, Wilcox, and Williams will all be listed again in

 9      this matter.

10              All right.  Now, in your memos there was talk about

11      you were working on an order for dismissal of peripheral

12      defendants for the losartan/irbesartan matters.  What's the

13      status of that?

14              MS. GOLDENBERG:  Your Honor, this is Marlene

15      Goldenberg.

16              I believe that we have that just about wrapped up and

17      we should be able to get it to you today.

18              JUDGE KUGLER:  Good.  Thank you.

19              There's an issue that's raised about service of

20      process in the losartan and irbesartan cases.  Has there been

21      any progress in working that out?

22              MS. GOLDENBERG:  Your Honor, we had talked about this

23      with Judge Vanaskie and he instructed the defendants to see if

24      they could work that out among themselves and if we have any

25      remaining issues to tee that up in two weeks.
```

```
 1            JUDGE KUGLER:  Great.  All right.  Bellwether, I see
 2   that we lost some bellwether cases because of the Court's --
 3   one of the Court's motions to dismiss decisions.  There was
 4   some discussion going back and forth about selection.  What's
 5   the status of that?
 6            MS. COHEN:  Good morning, Your Honor.
 7            MR. SLATER:  Good morning, Your Honor.  This is Adam
 8   Slater.  How are you?
 9            JUDGE KUGLER:  All right.
10            MR. SLATER:  I think that the premise of what you just
11   said is not something that we're in agreement on.  The
12   defendants have suggested that their interpretation of your
13   order on motion to dismiss -- or Motion to Dismiss Order Number
14   5 is a complete dismissal of the claims from states, for
15   example, like New Jersey where Your Honor directed plaintiffs
16   to replead, for example, to replead, using New Jersey as the
17   example, under the New Jersey Product Liability Act which
18   subsumes all claims other than breach of express warranty and
19   potentially other claims based on the recent case law out of
20   the Supreme Court of New Jersey having to do with consumer
21   fraud and other claims.  The defendants were taking the
22   position that those claims were dismissed with prejudice and
23   plaintiffs could not pursue, for example, the subsumed causes
24   of action of manufacturing defect, design defect, failure to
25   warn, all of which are obviously within the scope of the PLA in
```

1   New Jersey and the remedies permitted, such as loss of

2   consortium damages, compensatory and punitive damages is also

3   contemplated through the PLA.  So our intention is to simply

4   amend and plead through the state Product Liability Act in New

5   Jersey and the other states Your Honor mentioned in your

6   decision or focused on in your decision.

7          So from our perspective, there's not a complete

8   dismissal of the claims; otherwise, if defendants were correct,

9   for example, a plaintiff from New Jersey would have a breach of

10  express warranty claim and could not pursue the claims under

11  the New Jersey PLA based on the other theories.  So I wanted to

12  bring that out.

13         The other part is the procedure for dismissal which,

14  you know, I'll leave to other counsel to discuss, but that was

15  the part I wanted to raise with Your Honor and address with

16  Your Honor.

17         MS. COHEN:  Your Honor, this is Lori Cohen with

18  Greenberg, Traurig.  I'm happy to respond to Mr. Slater's first

19  point that he raises.

20         This is something that we talked about with Judge

21  Vanaskie.  I would say that we are still, on defense side and

22  working hand in hand with plaintiffs' counsel, you know,

23  analyzing this issue that is the impact of your order on the

24  bellwether plaintiffs and what will be left.  And, again, as I

25  mentioned earlier this morning to Judge Vanaskie, we want to

 1   wait and see sort of what plaintiffs do, if they replead, how

 2   that looks without, of course, waiving any rights or

 3   objections.  So we think we can put that issue off until we see

 4   what they do with that.  And we're still, you know, analyzing

 5   on the defense side, I don't think we have complete agreement

 6   about the impact, not surprisingly, of your order; but we're

 7   willing to keep talking about that and put that off until

 8   probably the next hearing, again, see what they replead, if

 9   they get that to us in the coming weeks and we'll see what's

10   left after that.

11          Just for your information, of the 28 bellwether

12   plaintiffs, I believe nine kind of are covered by your ruling,

13   six of which are the defense.  I may be off on the numbers but

14   I think that's what it comes down to.  So there are a

15   substantial number and we want to see how it shakes out.

16          The other more -- I think more vital issue, and the

17   one that's more timely for today, and we've, again, discussed

18   this with Judge Vanaskie, I believe he agrees with, at least

19   initially, with the defense position on this, is the proposed

20   order that we submitted, and this was attached to the defense

21   submission, this is the order establishing trial pool cases

22   which we have agreed to amongst the defendants as well as with

23   the plaintiffs, other than one provision, which is Provision

24   Number 7, which you'll see.  And the only purpose of this, even

25   though it's only one provision, it's a very important one to

 1   the defense side, and, again, I think Judge Vanaskie may have

 2   introduced this to you or discussed this with you as well,

 3   because we discussed this with him, but this is just a

 4   requirement that before cases are unilaterally dismissed by

 5   plaintiffs of this bellwether group, where we're moving along,

 6   you know, spending time and resources and energy, that it has

 7   to conform with Rule 41, that is, we either have to consent to

 8   it on the defense side or the Court has to agree and order it.

 9   So this is to prevent plaintiffs from continuing to dismiss,

10   whether with prejudice or without, cases unilaterally without

11   comporting with Rule 41 and the requirements.  We think it's an

12   important provision.

13         We also question why plaintiffs are resisting this.

14   We think it should not prejudice them in any way, and we think

15   that it's just a -- I think it was argued that it was one extra

16   hurdle.  Well, there should be that extra hurdle when we're all

17   working on this group of 28 bellwethers.

18         So I'm happy to respond to further questions, but we

19   think that this is an important provision that must be in this;

20   otherwise, plaintiffs will be allowed to, you know, dismiss

21   plaintiffs as they want without running through the appropriate

22   channels of the court.

23         JUDGE KUGLER:  Well, historically, I think you

24   recognize that this is a problem in all MDLs that utilize

25   bellwether plaintiffs.  You go through dozens and dozens of

1   cases before you end up with a pool because plaintiffs are just

2   dropping out as their cases get picked for various reasons that

3   aren't important to go into.  So it's not like we have no

4   experience with that problem.

5          The issue is because there are no answers being filed,

6   what part of Rule 41 are you looking at?  I mean, the

7   plaintiffs take the position because no answer's being filed

8   and no motions for summary judgment as to that specific

9   plaintiff have been filed that they can unilaterally dismiss

10  their case at any time, and that's, indeed, what the rule says.

11         Defendants' position is, well, you know, Judge, you

12  entered the order which, in essence, says that we don't have to

13  file an answer because we deny everything and it's just wasting

14  time to have to file a pleading in every one of these cases.

15  So that's the equivalent of filing an answer in these cases.

16         I have to tell you that I agree with the plaintiffs,

17  that they have the ability under the rule to unilaterally

18  dismiss the case at any time they want without a court order.

19  I'm not even sure what kind of order you would seek from the

20  Court anyway.  I don't know that I would be in -- that I would

21  desire to impose some kind of conditions on a plaintiff who's

22  decided they don't want to continue with the case anymore at

23  this stage of the case.  So I think the plaintiffs are correct

24  that they can dismiss.

25         I think the more important question is what happens,

1    how do you replace the now missing plaintiff?  Who gets to do

2    that?  My practice has been the plaintiff can then replace

3    them.  And I understand that, you know, this may continue and

4    we may keep losing plaintiffs.  As the plaintiff counsel picks

5    new people, they're going to be dismissing a large number of

6    them, but I think the plaintiff should have the ability to

7    replace those that they dismiss.  And we'll keep going until we

8    get enough cases.

9              MS. COHEN:  And, Your Honor, if I may respond to that

10    briefly.

11             I think you are exactly right that we rely on the fact

12    that the Court ordered that no answer be required in terms of

13    why it fits within Rule 41.

14             In terms of the replacement --

15             ELECTRONIC VOICE:  Joining the meeting.

16             MS. COHEN:  -- we actually have an agreement already

17    with plaintiffs' counsel that if a bellwether case is

18    dismissed, the party who selected that case gets to pick the

19    replacement.  So we've worked that piece out already, so we

20    have a provision for what happens.  But even so, we still,

21    again, I understand your ruling, Your Honor, we still believe

22    that we'd like to have a provision in here.  Again, I say that

23    respectfully, understanding your ruling, but -- but on the

24    other piece, we do already have an agreement that the party who

25    selected it, as I think Mr. Slater says in his letter, may pick

1    the replacement.  So if they dismiss one of these cases --

2    subject to your order, if one of the defense picks gets

3    dismissed, then we get to replace that one under our agreement.

4    I think that's already been decided.

5            MR. NIGH:  Your Honor, this is Daniel Nigh.  If I

6    could address this issue.

7            We discussed earlier this morning with Judge Vanaskie

8    and made our position very clear that at this point we believe

9    it's too early to put anything into this order.  Whether or not

10   there are replacement picks really kind of depends on when the

11   dismissal occurs.  We have 28 bellwether cases here.  Right now

12   we haven't been informed of a single person that's going to

13   dismiss a case.  We think it's premature to have any type of

14   dismissal language in this initial order.  That's our position.

15   And whether or not there may be dismissals and whether or not

16   we can reach an agreement on how that occurs, you know,

17   that's -- that's something we can discuss, you know, in the

18   future; but I think it's premature for this order because we

19   don't have a single dismissal.  We have voiced that position

20   multiple times.

21           What I do believe will occur is we're going to have to

22   get from 28 cases down to a more manageable trial pool of

23   something like six to eight cases, similar to what we did in

24   *Benicar* where we got it down to ten cases.  You know, we've got

25   to have some type of mechanism.  We haven't addressed that yet.

1   The plaintiffs are going to send their proposal next week and

2   it might be through that mechanism that early dismissals, you

3   know, are addressed.  But, frankly, this-one-size-fits-all

4   clause that they've included in this order we don't think's

5   appropriate.

6          MS. COHEN:  Your Honor, this is Lori Cohen again.  I

7   just want to respond briefly to that, which is, again, I, too,

8   have been in other MDLs and they typically, you know, have had

9   the provision that if the plaintiffs dismiss a defense pick,

10  the defense gets to replace it.  And I think in Mr. Slater's

11  letter to Your Honor and to Judge Vanaskie, it says, plaintiffs

12  propose that if a bellwether case is dismissed, the party who

13  selected that case in the pool may pick a replacement.  This

14  procedure would allow defendants to re-select a case in the

15  pool if a case in their original selection is dismissed.

16         So I think they've already announced that, agreed to

17  that and would want to include that language in the order.

18         MR. NIGH:  But to -- this is Daniel Nigh again.

19         To go along those lines, we have not agreed that

20  should be included in this order.  We do believe that there's

21  going to be a mechanism discussed in the next order where we

22  get it down from 28 to six, eight or ten cases, and that's

23  going to be the appropriate place where we have this

24  conversation in terms of replacement picks.

25         As of right now, there hasn't been a single case

1    dismissed, there hasn't been any discussion of a case being

2    dismissed, so as of right now, it's premature and we think that

3    this type of ruling or the way the wording is in that order, it

4    is premature at this point since we don't have a single case

5    that's been dismissed.

6         MS. COHEN:  And, again, Your Honor, this is Lori Cohen

7    again.  This is what we relied on, their agreement to this,

8    what they stated in the court to you, and we just want to

9    memorialize it in an order and I think it's important.  Again,

10   it doesn't sound like a big deal but we are spending a lot of

11   time and money and expense on this current group of bellwether

12   plaintiffs.  So if plaintiffs withdraw one, necessarily we lose

13   that effort and expense and resources; but, secondarily, it

14   creates an imbalance.  And the important thing is the fairness

15   aspect and that this is a representative group of bellwether

16   plaintiffs.  That's what everyone wants on both sides,

17   including the Court, as I understand it.  And so, again, to

18   have plaintiffs be able to withdraw plaintiffs and not have the

19   defense replace ones that we picked originally would create an

20   imbalance and also prejudice to the defense.

21        JUDGE KUGLER:  This is Judge Kugler again.  I think

22   you know my feelings on the subject, but let me point out what

23   was illustrated a few minutes ago, and that is if you have

24   unilateral dismissals, it's broader than the bellwether issue

25   because we're seeing dismissals as cases hit the order to show

1    cause list.  And in those instances, as we just heard, it seems

2    to be the defendants' position that plaintiffs can unilaterally

3    dismiss a case before I dismiss it as a result of the order to

4    show cause without condition; and I think that's the way to go

5    consistently throughout the case, even for bellwether cases.

6    But you know my feelings on this and it sounds to me like you

7    need to talk to each other a little bit longer; and if you

8    can't resolve it, then we'll resolve it at the next conference.

9         MS. COHEN:  Okay.  Thank you, Your Honor.  And, again,

10   you know -- this is Lori Cohen again, for the record.  We just

11   think this is a different scenario than the larger group of

12   plaintiffs where you get down to the 28 cases for the reasons I

13   already stated, so I wouldn't belabor this point; but we will

14   continue to discuss this.

15        JUDGE KUGLER:  Okay.  Do the defendants have anything

16   else they need to discuss at this time?

17        MR. HARKINS:  Nothing from defendants, Your Honor.

18        JUDGE KUGLER:  How about the plaintiffs?

19        MR. SLATER:  Nothing from plaintiffs, Your Honor.

20        JUDGE KUGLER:  All right.  Well, then, I guess that

21   concludes the proceedings today.  Thank you, everybody.  Stay

22   safe, stay well, and hopefully at the next conference I will

23   have more news as to when we can anticipate we're going to

24   start to reopen the courthouse and perhaps even one of these

25   days we'll have in-person proceedings.  But thank you,

1    everybody.  Take care.

2              MR. SLATER:  Thank you, Your Honor.

3              MS. LOCKARD:  Thank you, Your Honor.

4              (The proceedings concluded at 12:03 p.m.)

5

6

7              - - - - - - - - - - - - - - - -

8

9              I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   */S/ Camille Pedano, RMR, CCR, CRR, CRC, RPR*
     *Court Reporter/Transcriber*

13

14   *02/26/2021*
          *Date*

15

16

17

18

19

20

21

22

23

24

25

## /

*/S* [1] - 70:12

## 0

*02/26/2021* [1] - 70:14
*07068* [1] - 1:15
*08101* [1] - 1:8
*08540* [1] - 2:23

## 1

*10* [2] - 45:25
*103* [1] - 1:14
*10:00* [2] - 1:9, 4:3
*11* [2] - 58:15, 58:16
*11:29* [1] - 52:22
*12* [1] - 41:7
*12:03* [1] - 70:4
*12th* [1] - 46:1
*15* [2] - 12:11, 40:10
*17th* [2] - 2:9, 39:10
*1835* [1] - 1:17
*19-md-02875-RBK-JS* [1] - 1:4
*19087* [1] - 3:4
*19103* [2] - 1:18, 2:10
*19422* [1] - 2:19
*19th* [1] - 46:2

## 2

*20* [2] - 8:17, 40:24
*2020* [3] - 40:24, 41:5, 43:18
*2021* [2] - 1:8, 41:3
*21* [1] - 2:22
*2150* [1] - 2:3
*22* [1] - 37:19
*23* [1] - 37:19
*24* [1] - 1:8
*25* [1] - 40:24
*2500* [1] - 2:14
*270* [1] - 3:3
*28* [10] - 26:4, 26:9, 28:16, 28:25, 62:11, 63:17, 66:11, 66:22, 67:22, 69:12
*2900* [1] - 1:17
*2nd* [2] - 41:3, 54:15

## 3

*30* [4] - 2:9, 8:4, 8:17, 12:11
*30(b)(6)* [2] - 34:11, 35:16
*30(b)(6)s* [1] - 42:14
*30305* [1] - 2:15
*316* [1] - 1:20
*32502* [1] - 1:21

*328* [1] - 37:17
*3333* [1] - 2:14
*33950* [1] - 2:7
*34* [5] - 12:16, 13:2, 14:6, 14:12, 18:13
*3rd* [2] - 18:15, 22:22

## 4

*40* [2] - 8:4, 27:15
*40-page* [1] - 14:1
*400,000* [1] - 44:14
*41* [10] - 21:19, 23:2, 27:15, 28:14, 28:21, 29:12, 63:7, 63:11, 64:6, 65:13
*450* [1] - 2:18
*4th* [1] - 1:7

## 5

*5* [4] - 22:22, 30:5, 31:15, 60:14
*50* [1] - 38:21
*52* [1] - 37:15
*550* [1] - 3:3
*55402* [1] - 2:4
*5th* [1] - 44:6

## 6

*60* [1] - 8:16
*60-day* [1] - 42:4
*600* [1] - 1:20
*609-774-1494* [1] - 1:23

## 7

*7* [3] - 21:11, 36:20, 62:24
*765-3* [1] - 49:3

## 8

*8* [4] - 36:20, 36:25, 43:24, 45:22
*800* [1] - 2:3

## 9

*9* [3] - 38:6, 43:25, 45:22
*967* [1] - 36:20
*99* [1] - 2:6

## A

*a.m* [3] - 1:9, 4:3, 52:22
*ability* [3] - 16:10, 64:17, 65:6
*able* [23] - 6:14, 11:7, 11:22, 13:6, 15:17,

18:15, 19:6, 19:20, 20:17, 22:11, 23:1, 26:25, 27:7, 27:12, 33:25, 36:13, 37:22, 39:11, 42:12, 45:19, 54:3, 59:17, 68:18
*above-entitled* [1] - 70:10
*Abraham* [6] - 5:22, 6:1, 7:12, 7:23, 8:19, 10:23
*ABRAHAM* [8] - 2:21, 5:21, 6:1, 6:4, 6:7, 10:25, 16:3
*Abraham's* [1] - 16:2
*absence* [1] - 57:2
*absolutely* [2] - 10:3, 29:23
*absurd* [1] - 23:25
*accept* [3] - 50:19, 51:1, 51:13
*accepting* [1] - 51:11
*access* [1] - 17:2
*accommodate* [1] - 42:1
*accompany* [1] - 10:4
*acknowledged* [1] - 33:14
*Act* [4] - 24:15, 24:25, 60:17, 61:4
*Actavis* [2] - 2:16, 2:16
*acted* [1] - 51:11
*ACTION* [1] - 1:3
*action* [1] - 60:24
*actual* [1] - 52:11
*Adam* [9] - 5:6, 17:1, 23:15, 23:21, 32:22, 35:14, 46:20, 49:8, 60:7
*ADAM* [1] - 1:14
*add* [3] - 43:10, 43:16, 48:7
*addition* [4] - 14:7, 14:11, 26:3, 40:10
*additional* [6] - 14:22, 32:17, 40:17, 44:24, 47:10, 49:16
*additionally* [1] - 32:15
*address* [20] - 4:7, 13:14, 13:16, 23:12, 23:16, 23:22, 25:10, 25:21, 26:4, 26:15, 26:17, 26:19, 26:25, 27:2, 27:20, 32:11, 32:16, 48:18, 61:15, 66:6
*addressed* [7] - 29:22, 30:2, 45:1, 47:12,

55:15, 66:25, 67:3
*addressing* [14] - 5:10, 7:13, 12:18, 12:20, 19:8, 20:25, 29:12, 31:22, 35:13, 35:20, 36:7, 39:2, 41:4, 51:16
*adequate* [1] - 45:18
*administering* [1] - 16:9
*ado* [2] - 9:23, 11:14
*advance* [3] - 6:19, 11:18, 12:11
*adverse* [1] - 31:19
*advise* [2] - 34:3, 34:12
*advised* [2] - 9:4, 9:6
*affirmatively* [1] - 55:13
*agenda* [14] - 4:19, 5:13, 12:14, 19:5, 20:19, 24:4, 31:12, 31:16, 35:10, 42:7, 42:8, 43:4, 46:11, 46:16
*agent* [1] - 49:21
*ago* [3] - 13:24, 50:17, 68:23
*agree* [14] - 21:9, 22:8, 35:24, 40:5, 41:6, 46:5, 46:25, 50:13, 50:19, 51:1, 54:16, 55:4, 63:8, 64:16
*agreed* [18] - 13:3, 22:5, 35:16, 36:15, 36:21, 37:7, 37:12, 40:11, 40:12, 41:10, 44:10, 44:17, 44:23, 45:1, 47:23, 62:22, 67:16, 67:19
*agreement* [12] - 19:7, 19:19, 23:9, 36:13, 39:11, 60:11, 62:5, 65:16, 65:24, 66:3, 66:16, 68:7
*agreements* [1] - 36:19
*agrees* [1] - 62:18
*ahead* [4] - 31:14, 40:15, 56:4, 56:8
*aided* [1] - 1:25
*albeit* [1] - 8:6
*allow* [2] - 43:5, 67:14
*allowances* [1] - 8:9
*allowed* [1] - 32:22
*allows* [2] - 20:10, 29:13
*almost* [1] - 13:23
*ALSO* [1] - 3:8
*alter* [2] - 48:19, 49:2

*alternative* [1] - 16:23
*Amanda* [1] - 56:16
*amend* [2] - 34:13, 61:4
*amendment* [1] - 19:17
*amount* [1] - 10:11
*analyzing* [2] - 61:23, 62:4
*announced* [1] - 67:16
*answer* [5] - 47:15, 47:19, 64:13, 64:15, 65:12
*answer's* [1] - 64:7
*answered* [1] - 57:7
*answers* [1] - 64:5
*anticipate* [3] - 32:19, 35:6, 69:23
*anyway* [1] - 64:20
*API* [2] - 37:15, 42:23
*apologize* [1] - 43:11
*appear* [1] - 58:8
*application* [2] - 34:5, 34:6
*applications* [1] - 33:9
*appointed* [1] - 8:2
*appreciate* [4] - 12:5, 18:24, 19:3, 40:2
*apprehension* [2] - 28:10, 28:17
*appropriate* [9] - 7:7, 11:9, 31:8, 40:19, 42:16, 43:21, 63:21, 67:5, 67:23
*approval* [4] - 23:11, 48:23, 56:2, 56:8
*approve* [1] - 48:24
*approved* [1] - 29:1
*argue* [2] - 15:5, 46:24
*argued* [1] - 63:15
*arguing* [1] - 46:21
*argument* [5] - 24:4, 25:22, 27:2, 29:15, 49:16
*arguments* [2] - 47:3, 47:21, 49:19
*arise* [2] - 7:5, 8:10
*arisen* [2] - 6:21, 7:21
*arrangements* [3] - 9:7, 10:4, 11:19
*aspect* [1] - 68:15
*assessment* [1] - 37:2
*associate* [1] - 9:10
*assuming* [1] - 46:25
*assurance* [1] - 43:13
*astonished* [1] - 9:3
*Atlanta* [1] - 2:15
*attached* [2] - 21:10, 62:20
*attempt* [2] - 26:10,

32:11
**attempted** [2] - 6:18, 8:1
**attention** [3] - 10:20, 34:18, 54:23
**attest** [1] - 9:24
**Attorney** [1] - 2:23
**attorney** [2] - 3:4, 9:18
**attorneys** [2] - 28:22, 50:20
**audio** [2] - 7:9, 11:11
**August** [5] - 40:24, 41:5, 43:18, 45:1
**Aurobindo** [15] - 2:20, 31:14, 36:4, 36:13, 37:2, 37:9, 38:20, 39:3, 39:5, 39:14, 39:15, 42:22, 44:6, 45:7
**Aurobindo's** [2] - 38:5, 41:21
**Aurolife** [1] - 2:19
**authority** [5] - 48:23, 48:24, 48:25, 49:4, 49:23
**available** [6] - 8:4, 10:3, 16:11, 16:12, 20:10, 47:15
**Avenue** [1] - 2:3
**AvKARE** [2] - 3:4, 19:14
**await** [1] - 49:23
**aware** [1] - 6:22

## B

**Babin** [2] - 54:10, 56:16
**background** [1] - 39:15
**backs** [1] - 45:8
**bad** [1] - 8:18
**balls** [2] - 36:22, 43:21
**based** [3] - 47:2, 60:19, 61:11
**basic** [2] - 7:8, 11:10
**basis** [1] - 57:11
**Baylen** [1] - 1:20
**BEASGAARD** [1] - 3:2
**beautiful** [2] - 4:12, 53:5
**Becton** [1] - 59:7
**BECTON** [1] - 59:7
**began** [1] - 20:8
**beginning** [1] - 4:5
**behalf** [22] - 4:20, 4:22, 5:4, 7:13, 12:23, 19:9, 19:13, 19:16, 21:1, 21:3, 23:13, 31:22, 32:21, 35:13, 35:21, 35:23,

36:7, 39:3, 51:2, 51:18, 55:11, 56:25
**belabor** [2] - 6:8, 69:13
**Bell** [1] - 2:19
**bellwether** [33] - 12:16, 15:2, 15:3, 18:13, 20:20, 20:25, 21:24, 22:4, 22:14, 22:21, 23:6, 26:5, 26:6, 27:6, 28:9, 28:11, 29:8, 30:10, 31:8, 31:9, 60:1, 60:2, 61:24, 62:11, 63:5, 63:25, 65:17, 66:11, 67:12, 68:11, 68:15, 68:24, 69:5
**bellwethers** [3] - 14:23, 15:10, 63:17
**benefit** [1] - 9:24
**Benicar** [3] - 30:21, 66:24
**best** [3] - 8:25, 11:3, 45:7
**between** [3] - 20:4, 29:21, 42:6
**Betz** [1] - 57:23
**BETZ** [1] - 57:23
**beyond** [2] - 7:21, 10:20
**big** [3] - 10:5, 14:24, 68:10
**Biggs** [1] - 58:22
**BIGGS** [1] - 58:22
**bit** [5] - 12:3, 42:1, 42:6, 45:8, 69:7
**blood** [1] - 10:15
**Blue** [1] - 2:19
**bodily** [2] - 13:25, 14:4
**bought** [1] - 10:11
**bout** [1] - 50:2
**breach** [3] - 24:20, 60:18, 61:9
**brief** [5] - 29:15, 36:15, 47:10, 48:13
**Brief** [1] - 52:22
**briefed** [4] - 46:15, 46:18, 46:23, 48:12
**briefing** [2] - 47:14, 49:17
**briefly** [8] - 10:25, 14:16, 23:16, 23:22, 24:10, 27:23, 65:10, 67:7
**briefs** [3] - 46:13, 47:2, 47:11, 48:11, 49:23
**bring** [3] - 45:16, 50:21, 54:22, 55:1,

61:12
**Brisbois** [1] - 35:23
**BRISBOIS** [1] - 3:2
**broad** [3] - 14:25, 38:6, 44:18
**broader** [1] - 68:24
**Building** [1] - 1:7
**burden** [2] - 43:17, 46:3
**burdened** [1] - 25:7
**burdensome** [2] - 37:10, 40:16, 41:7
**BY** [9] - 1:14, 1:17, 1:20, 2:3, 2:6, 2:9, 2:13, 2:18, 3:3
**bye** [2] - 17:25
**bye-bye** [1] - 17:25

## C

**Camber** [5] - 3:4, 35:11, 35:16, 35:21, 35:23
**Camden** [3] - 1:8, 53:6, 53:7
**Camille** [6] - 1:22, 4:8, 17:19, 18:3, 25:16, 70:12
**camillepedano@gmail.com** [1] - 1:23
**cancel** [1] - 9:12
**cancelled** [2] - 6:13, 11:5
**cancers** [2] - 10:13, 10:14
**candidly** [1] - 9:3
**cannot** [1] - 29:9
**car** [1] - 9:13
**care** [1] - 70:1
**case** [50] - 4:13, 20:7, 22:5, 22:17, 24:12, 25:25, 26:1, 27:4, 27:8, 27:12, 27:19, 29:11, 37:14, 37:23, 38:24, 50:18, 50:23, 50:25, 51:3, 51:5, 53:13, 53:23, 54:8, 54:14, 54:21, 55:20, 56:3, 56:16, 56:17, 57:9, 57:11, 57:23, 57:24, 60:19, 64:10, 64:18, 64:22, 64:23, 65:17, 65:18, 66:13, 67:12, 67:13, 67:14, 67:15, 67:25, 68:1, 68:4, 69:3, 69:5
**cases** [39] - 13:25, 14:5, 21:24, 23:1, 24:22, 26:7, 26:9, 28:19, 29:6, 55:5, 55:12, 55:14, 55:15,

55:16, 56:13, 56:19, 57:19, 58:2, 58:8, 59:20, 60:2, 62:21, 63:4, 63:10, 64:1, 64:2, 64:14, 64:15, 65:8, 66:1, 66:11, 66:22, 66:23, 66:24, 67:22, 68:25, 69:5, 69:12
**categories** [1] - 38:8
**causes** [1] - 60:23
**caveat** [1] - 20:10
**CCR** [1] - 70:12
**centrality** [1] - 51:13
**certain** [7] - 5:10, 22:20, 32:13, 36:21, 42:9, 42:13, 57:5
**certainly** [10] - 4:25, 12:6, 15:6, 44:22, 30:6, 33:12, 34:15, 41:8, 55:14, 55:21
**certify** [1] - 70:9
**cetera** [2] - 33:13, 33:19
**cGMP** [1] - 38:15
**challenges** [1] - 33:21
**changes** [5] - 57:21, 58:12, 58:13, 59:1, 59:2
**channels** [1] - 63:22
**characterize** [1] - 23:25
**charge** [4] - 38:9, 38:13, 38:15, 38:17
**choose** [1] - 27:13
**chose** [1] - 36:14
**chosen** [1] - 37:2
**CIPRIANI** [1] - 2:17
**circle** [1] - 28:7
**circulate** [1] - 17:12
**circulated** [1] - 19:19
**circumstances** [1] - 11:21
**citizen** [2] - 7:25, 10:2
**CIVIL** [1] - 1:3
**claim** [6] - 24:11, 24:16, 24:17, 24:18, 25:3, 61:10
**claiming** [1] - 24:7
**claims** [13] - 22:23, 24:8, 24:13, 24:24, 24:25, 25:2, 60:14, 60:18, 60:19, 60:21, 60:22, 61:8, 61:10
**clarification** [1] - 49:12
**class** [2] - 10:10, 10:18
**clause** [1] - 67:4
**clear** [3] - 33:23,

33:24, 66:8
**clearly** [2] - 24:18, 49:20
**client** [7] - 7:23, 9:2, 9:13, 27:9, 27:10, 40:16, 53:20
**clients** [4] - 8:23, 11:3, 51:2, 51:3
**close** [1] - 50:22
**closed** [1] - 49:17
**CMC** [1] - 47:12
**COHEN** [16] - 2:13, 21:2, 21:6, 21:22, 25:12, 27:23, 28:1, 28:4, 28:6, 60:6, 61:17, 65:9, 65:16, 67:6, 68:6, 69:9
**cohen** [1] - 27:25
**Cohen** [10] - 1:7, 21:3, 23:22, 23:24, 27:24, 28:3, 61:17, 67:6, 68:6, 69:10
**colleagues** [1] - 25:9
**collect** [1] - 44:11
**collected** [1] - 44:13
**collecting** [1] - 44:10
**comfortable** [2] - 46:20
**coming** [4] - 13:11, 20:4, 35:6, 62:9
**commence** [1] - 11:23
**commences** [2] - 7:7, 11:10
**Commencing** [1] - 1:9
**commend** [2] - 4:15, 11:25
**comment** [1] - 48:10
**comments** [2] - 15:17, 18:23
**commitment** [2] - 11:2, 11:8
**communicated** [1] - 32:11
**company** [4] - 38:3, 38:12, 42:19, 42:22
**comparable** [1] - 37:13
**compared** [1] - 45:13
**comparison** [1] - 37:11
**compensatory** [2] - 25:3, 61:2
**complained** [1] - 8:20
**complaining** [2] - 9:19, 10:7
**complaints** [3] - 8:5, 28:15, 50:6
**complete** [6] - 45:6, 53:16, 54:5, 60:14, 61:7, 62:5

**completed** [5] - 44:5, 46:1, 46:2, 50:16, 53:16
**completely** [3] - 5:16, 11:5, 25:24
**complying** [1] - 38:14
**comporting** [1] - 63:11
**comprehensive** [1] - 14:2
**computer** [2] - 1:25, 9:5
**computer-aided** [1] - 1:25
**concern** [6] - 22:3, 29:2, 29:4, 32:12, 34:21, 46:23
**concerned** [2] - 33:14, 33:22
**concluded** [3] - 18:22, 18:23, 70:4
**concludes** [1] - 69:21
**conclusion** [1] - 48:20
**condition** [1] - 69:4
**conditions** [2] - 10:14, 64:21
**conducted** [3] - 7:19, 7:23, 8:6
**conducting** [3] - 8:21, 9:11, 9:16
**confer** [7] - 10:16, 20:11, 29:20, 36:1, 39:8, 41:9, 51:21
**conferals** [1] - 32:10
**Conference** [2] - 18:1, 18:2
**CONFERENCE** [1] - 1:6
**conference** [11] - 8:17, 13:6, 16:24, 16:25, 32:8, 39:8, 52:7, 58:9, 58:23, 69:8, 69:22
**conferences** [1] - 55:14
**conferred** [2] - 6:20, 7:20
**conferring** [1] - 22:19
**confers** [1] - 39:13
**confidence** [2] - 33:7, 45:19
**confident** [2] - 12:5, 41:11
**confirm** [1] - 35:18, 54:3
**conform** [1] - 63:7
**congratulating** [1] - 10:20
**connect** [2] - 7:8, 11:11

**connection** [1] - 8:15
**consent** [3] - 22:12, 56:2, 63:7
**consideration** [1] - 44:21
**considering** [1] - 44:25
**considers** [1] - 22:1
**consistent** [4] - 23:2, 30:1, 49:19
**consistently** [1] - 69:5
**consortium** [2] - 25:2, 61:2
**consternation** [1] - 29:2
**consultant** [1] - 6:15
**consumer** [1] - 60:20
**contact** [1] - 6:18
**contamination** [2] - 20:8, 20:12
**contemplate** [1] - 14:19
**contemplated** [2] - 15:7, 61:3
**contention** [1] - 14:24
**context** [1] - 20:2
**continue** [10] - 10:21, 12:4, 29:20, 29:23, 41:9, 41:15, 46:3, 64:22, 65:3, 69:14
**Continued** [2] - 2:1, 3:1
**continued** [1] - 39:7
**continues** [1] - 12:9
**continuing** [3] - 31:17, 32:18, 63:9
**contract** [2] - 38:9, 38:11
**control** [1] - 43:12
**controls** [1] - 16:9
**Convention** [1] - 51:8
**conversation** [2] - 27:9, 67:24
**conversations** [1] - 32:13
**Cooper** [1] - 1:7
**cooperate** [1] - 10:21
**cooperatively** [1] - 12:9
**core** [2] - 21:9, 38:24
**correct** [7] - 34:22, 34:23, 39:7, 57:14, 61:8, 64:23, 70:9
**corrected** [1] - 32:14
**counsel** [25] - 4:13, 4:15, 4:23, 6:9, 6:20, 6:24, 9:10, 10:20, 17:15, 31:13, 31:25, 32:4, 32:24, 40:11, 49:14, 53:20, 53:21,

54:6, 54:20, 56:5, 57:13, 61:14, 61:22, 65:4, 65:17
**count** [1] - 39:11
**counts** [2] - 36:14, 36:16
**COUR** [1] - 32:3
**course** [10] - 4:5, 5:11, 14:24, 15:17, 22:9, 23:11, 34:10, 37:25, 62:2
**Court** [30] - 1:22, 7:24, 9:19, 10:8, 11:24, 13:22, 17:17, 22:1, 29:1, 29:12, 29:13, 34:1, 34:3, 34:12, 35:19, 41:12, 43:7, 44:21, 45:10, 48:17, 50:25, 52:12, 56:15, 57:3, 60:20, 63:8, 64:20, 65:12, 68:17, 70:12
**COURT** [10] - 1:1, 4:9, 15:20, 17:18, 18:4, 25:15, 25:17, 28:3, 28:5, 30:14
**court** [15] - 4:1, 4:8, 17:18, 21:25, 22:12, 27:3, 28:2, 28:14, 29:11, 30:9, 30:19, 30:23, 63:22, 64:18, 68:8
**Court's** [7] - 9:24, 10:20, 23:11, 34:19, 44:12, 60:2, 60:3
**courteous** [4] - 8:4, 8:9, 9:18, 9:25
**courtesy** [2] - 9:15, 11:19
**Courthouse** [1] - 1:7
**courthouse** [1] - 69:24
**COURTROOM** [2] - 16:13, 16:20
**courtroom** [1] - 37:4
**Courtroom** [1] - 3:9
**cover** [2] - 43:13, 52:14
**covered** [1] - 62:12
**COVID** [1] - 50:2
**CRC** [1] - 70:12
**create** [1] - 68:19
**creates** [1] - 68:14
**Crowe** [1] - 57:24
**CROWE** [1] - 57:24
**CRR** [1] - 70:12
**cured** [1] - 53:22
**curious** [1] - 37:16
**current** [3] - 46:6, 53:17, 68:11

**custodial** [6] - 38:25, 42:12, 43:2, 43:3, 44:4, 45:24
**custodian** [1] - 40:12
**custodians** [21] - 36:19, 36:21, 37:5, 37:6, 37:10, 37:15, 39:14, 39:21, 39:25, 40:9, 41:1, 41:6, 42:9, 42:13, 42:16, 43:15, 43:16, 43:18, 43:23, 44:5, 46:1

## D

**damages** [4] - 25:3, 61:2
**Daniel** [7] - 13:15, 15:24, 25:13, 25:19, 30:17, 66:5, 67:18
**DANIEL** [1] - 1:20
**dare** [1] - 10:7
**data** [2] - 33:8, 33:20
**databases** [1] - 33:9
**Date** [1] - 70:14
**date** [3] - 30:3, 35:24, 36:1
**dates** [2] - 35:17, 35:18
**DAVIS** [1] - 2:13
**days** [4] - 34:10, 50:3, 69:25
**deadline** [1] - 45:5
**deadlines** [1] - 45:9, 46:6
**deal** [4] - 31:8, 42:19, 50:5, 68:10
**dealing** [5] - 20:24, 31:13, 36:6, 44:1, 50:8
**dealt** [1] - 7:22
**decide** [1] - 47:2
**decided** [2] - 64:22, 66:4
**decides** [1] - 27:10
**decision** [6] - 24:18, 24:21, 49:24, 52:11, 61:6
**decisions** [1] - 60:3
**declaration** [1] - 49:3
**deemed** [2] - 51:9, 57:4
**deep** [1] - 33:17
**deeper** [2] - 33:3, 33:15
**defect** [4] - 25:1, 60:24
**defendant** [3] - 50:25, 51:1, 51:19
**Defendants** [5] - 2:10, 2:15, 2:19, 2:23, 3:4

**defendants** [47] - 4:20, 4:22, 4:23, 10:6, 10:16, 19:6, 19:9, 19:14, 19:18, 20:11, 27:19, 37:11, 37:21, 42:3, 45:14, 50:6, 50:16, 50:18, 50:23, 51:4, 51:5, 51:8, 51:10, 51:12, 51:18, 51:20, 51:21, 51:24, 52:16, 53:15, 53:24, 54:1, 54:15, 54:16, 55:3, 55:7, 56:1, 57:19, 59:12, 59:23, 60:12, 60:21, 61:8, 62:22, 67:14, 69:15, 69:17
**defendants'** [5] - 17:16, 45:15, 57:5, 64:11, 69:2
**defended** [2] - 7:19, 9:3
**defending** [1] - 8:22
**defense** [38] - 21:1, 21:3, 22:4, 22:5, 22:7, 22:8, 24:3, 25:7, 29:4, 29:21, 31:13, 46:15, 46:18, 47:5, 48:7, 49:14, 51:15, 53:21, 54:2, 54:5, 55:11, 56:5, 57:13, 58:14, 59:2, 61:21, 62:5, 62:13, 62:19, 62:20, 63:1, 63:8, 66:2, 67:9, 67:10, 68:19, 68:20
**Defense** [1] - 14:17
**defenses** [3] - 22:23, 39:21, 40:4
**deficiencies** [4] - 32:8, 54:4, 57:3, 57:15
**definitely** [1] - 16:3
**delay** [4] - 6:13, 11:4, 18:14, 43:17
**delayed** [1] - 12:7, 46:6
**delegated** [1] - 48:25
**Delgado** [2] - 54:10, 57:10
**deny** [1] - 64:13
**dep** [1] - 6:17
**departments** [1] - 43:14
**deponents** [1] - 11:17
**depose** [1] - 15:15
**deposition** [28] - 5:15, 6:10, 6:11, 6:14, 6:15, 7:7, 7:23, 8:2, 8:6, 8:19, 9:2, 9:3,

9:11, 9:14, 9:16,
9:22, 10:9, 10:10,
10:18, 11:4, 11:5,
11:10, 11:18, 11:22,
12:7, 34:4, 34:11,
35:11
**depositions** [17] -
6:12, 7:19, 8:22,
10:7, 15:9, 15:10,
15:12, 27:11, 35:5,
39:1, 41:25, 42:5,
42:10, 43:5, 43:6,
45:6
**Deputy** [1] - 3:9
**DEPUTY** [2] - 16:13,
16:20
**described** [1] - 28:13
**design** [2] - 25:1,
60:24
**designated** [1] - 42:19
**desire** [1] - 64:21
**despite** [1] - 38:23
**detailed** [1] - 14:22
**details** [1] - 47:21
**determine** [1] - 33:8
**develop** [1] - 19:16
**device** [2] - 7:7, 11:10
**dial** [5] - 16:17, 16:19,
16:23, 17:10, 52:24
**dial-in** [1] - 52:24
**dials** [1] - 12:2
**difference** [3] - 20:3,
49:9, 49:10
**different** [9] - 4:23,
4:24, 22:14, 25:18,
27:7, 42:23, 51:25,
69:11
**difficult** [1] - 26:25
**dig** [2] - 33:3, 33:15
**diligence** [2] - 7:6,
38:13
**diligent** [1] - 8:22
**directed** [2] - 12:16,
60:15
**disabled** [1] - 10:2
**disagree** [1] - 51:23
**disclosed** [1] - 38:23
**disclosures** [3] - 14:6,
14:8, 14:12
**discover** [1] - 20:12
**discovery** [16] - 13:17,
13:18, 14:4, 14:22,
15:2, 15:11, 15:14,
20:9, 23:2, 28:12,
28:20, 31:14, 31:15,
31:22, 36:5, 40:6
**discuss** [10] - 14:20,
19:23, 25:5, 35:15,
35:19, 52:1, 61:14,
66:17, 69:14, 69:16

**discussed** [5] - 62:17,
63:2, 63:3, 66:7,
67:21
**discusses** [1] - 49:4
**discussing** [5] -
29:23, 29:25, 35:4,
39:18, 40:2
**discussion** [11] - 5:17,
14:4, 22:24, 29:17,
30:6, 47:25, 48:6,
48:14, 60:4, 68:1
**discussions** [4] -
25:6, 33:5, 36:18,
38:20
**Dismiss** [2] - 30:5,
60:13
**dismiss** [29] - 21:20,
22:7, 22:11, 22:23,
23:1, 24:18, 27:4,
27:8, 27:12, 27:19,
27:22, 28:19, 29:10,
55:13, 57:10, 57:16,
60:3, 60:13, 63:9,
63:20, 64:9, 64:18,
64:24, 65:7, 66:1,
66:13, 67:9, 69:3
**dismissal** [34] - 19:5,
19:18, 20:20, 20:25,
21:14, 25:11, 25:22,
25:23, 26:14, 26:18,
26:21, 27:1, 28:11,
28:13, 28:24, 30:10,
30:20, 53:14, 54:16,
54:22, 55:4, 55:16,
55:17, 55:22, 56:3,
56:9, 56:17, 59:11,
60:14, 61:8, 61:13,
66:11, 66:14, 66:19
**dismissals** [10] -
26:12, 26:15, 30:22,
53:11, 54:9, 56:4,
66:15, 67:2, 68:24,
68:25
**dismissed** [19] -
21:25, 24:8, 24:11,
24:13, 24:23, 26:1,
26:2, 29:6, 55:21,
56:20, 60:22, 63:4,
65:18, 66:3, 67:12,
67:15, 68:1, 68:2,
68:5
**dismissing** [3] -
22:17, 54:8, 65:5
**dispute** [3] - 13:6,
21:10, 24:5
**distribute** [2] - 17:15,
17:16
**District** [1] - 4:2
**DISTRICT** [3] - 1:1,
1:1, 1:10

**divergent** [2] - 29:18,
29:20
**doable** [1] - 44:17
**Docket** [1] - 36:20
**document** [8] - 13:2,
32:9, 32:15, 34:14,
34:16, 36:14, 44:2,
46:5
**Document** [1] - 37:16
**documents** [19] -
9:12, 9:14, 32:14,
33:11, 33:18, 34:8,
37:24, 38:10, 42:25,
44:14, 44:19, 45:13,
48:14, 48:18, 48:21,
48:23, 49:1, 49:10
**done** [9] - 28:16, 33:7,
40:13, 41:11, 45:7,
45:17, 45:19, 46:4,
50:10
**dose** [1] - 37:15
**down** [8] - 14:8, 15:13,
28:25, 62:14, 66:22,
66:24, 67:22, 69:12
**downtown** [1] - 53:6
**dozens** [2] - 63:25
**draft** [1] - 20:22
**drop** [2] - 31:9, 52:20
**dropping** [1] - 64:2
**Drugs** [3] - 2:23,
31:25, 32:5
**DUANE** [1] - 2:8
**Duane** [3] - 4:22, 9:1,
9:11
**due** [2] - 34:14, 38:13
**Dufrene** [1] - 58:20
**DUFRENE** [1] - 58:20
**during** [2] - 32:7, 35:7

---

# E

**eager** [1] - 15:11
**earliest** [1] - 8:20
**early** [4] - 26:16, 51:7,
66:9, 67:2
**easily** [1] - 5:18
**East** [1] - 3:3
**easy** [2] - 17:2, 53:10
**ECF** [1] - 49:3
**economic** [2] - 10:10,
10:18
**educate** [1] - 30:12
**effect** [1] - 46:7
**efficient** [1] - 10:1
**effort** [2] - 40:8, 68:13
**efforts** [1] - 28:13
**eight** [6] - 26:7, 26:9,
37:24, 57:18, 66:23,
67:22
**Eisenhower** [1] - 1:14
**either** [6] - 6:12, 19:2,

32:16, 43:6, 46:24,
63:7
**elaboration** [1] - 4:18
**ELECTRONIC** [14] -
18:18, 19:12, 20:5,
20:15, 20:23, 21:21,
23:14, 23:17, 23:20,
35:25, 39:9, 41:17,
52:5, 65:15
**electronically** [1] -
51:13
**email** [6] - 9:12, 17:3,
17:14, 17:15, 32:11,
53:21
**emailed** [1] - 40:24
**embedded** [1] - 25:2
**enacted** [1] - 51:12
**encounter** [1] - 18:9
**encountered** [2] -
9:21, 18:8
**encouraged** [1] -
33:12
**encouraging** [1] -
52:4
**end** [12] - 16:20,
22:15, 26:6, 34:19,
36:16, 39:12, 40:13,
42:3, 42:5, 42:14,
58:24, 64:1
**ended** [2] - 16:24,
18:1
**energy** [2] - 22:13,
63:6
**engaged** [1] - 32:10
**engaging** [1] - 40:5
**engender** [1] - 9:21
**ensure** [4] - 6:9, 6:19,
21:22, 22:16
**ensuring** [1] - 8:22
**enter** [1] - 41:12
**entered** [4] - 20:3,
20:7, 57:14, 64:12
**entities** [1] - 4:22
**entitled** [2] - 22:7,
70:10
**entity** [2] - 37:13,
40:10
**entry** [1] - 19:21
**equivalent** [2] - 24:20,
64:15
**ERIC** [1] - 2:21
**Eric** [2] - 5:21, 6:1
**ESI** [1] - 44:2
**ESQUIRE** [13] - 1:14,
1:17, 1:20, 2:3, 2:6,
2:9, 2:13, 2:13, 2:14,
2:18, 2:21, 2:22, 3:3
**essence** [1] - 64:12
**essentially** [1] - 6:25
**established** [1] -

49:20
**establishing** [1] -
62:21
**et** [2] - 33:13, 33:19
**eventual** [1] - 14:23
**exactly** [4] - 16:5,
42:3, 49:15, 65:11
**examinations** [1] -
10:17
**example** [12] - 9:4,
15:13, 24:11, 24:23,
33:6, 33:9, 34:3,
60:15, 60:16, 60:17,
60:23, 61:9
**examples** [2] - 6:12,
9:1
**except** [3] - 4:6, 18:6,
48:19
**execute** [1] - 40:3
**execution** [1] - 19:21
**eeval** [1] - 22:10
**Exhibit** [1] - 37:17
**exhibits** [1] - 9:7
**expect** [5] - 6:25, 7:4,
7:6, 11:17, 18:14
**expectation** [1] -
35:18
**expected** [2] - 14:4,
19:6
**expense** [4] - 6:16,
12:6, 68:11, 68:13
**experience** [1] - 64:4
**expert** [1] - 15:13
**express** [4] - 24:17,
24:20, 60:18, 61:10
**expressed** [1] - 33:2
**extension** [1] - 43:7
**extent** [4] - 8:23,
26:20, 33:3, 41:25
**externally** [1] - 48:25
**extra** [8] - 27:13,
30:18, 30:23, 31:4,
31:5, 45:17, 63:15,
63:16
**extraordinary** [1] -
11:7
**extremely** [1] - 4:14

---

# F

**face** [1] - 45:11
**fact** [12] - 6:17, 8:8,
8:18, 10:9, 14:20,
14:25, 29:2, 42:10,
42:22, 49:13, 57:7,
65:11
**Fact** [4] - 13:25, 14:1,
14:17, 14:18
**failure** [2] - 25:1,
60:24
**failures** [1] - 58:25

**fair** [1] - 44:25
**fairly** [2] - 50:9, 52:2
**fairness** [1] - 68:14
**faith** [2] - 32:18, 40:8
**fall** [2] - 38:8, 57:9
**far** [4] - 32:13, 33:22, 42:2, 44:13
**FARR** [1] - 2:5
**fault** [2] - 8:15, 9:9
**fear** [1] - 42:2
**feasible** [2] - 44:6, 44:9
**February** [5] - 1:8, 22:22, 39:10, 41:3, 54:15
**federal** [2] - 29:11, 30:1
**FedEx** [2] - 9:9, 9:13
**feelings** [2] - 68:22, 69:6
**few** [4] - 34:10, 44:15, 45:16, 68:23
**field** [2] - 21:23, 23:4
**fifth** [1] - 30:5
**file** [6] - 36:15, 56:4, 56:8, 58:25, 64:13, 64:14
**filed** [8] - 30:22, 54:6, 55:6, 55:16, 56:2, 64:5, 64:7, 64:9
**files** [9] - 33:19, 38:25, 42:12, 43:2, 43:3, 43:23, 44:2, 44:4, 45:24
**filing** [2] - 30:20, 64:15
**final** [1] - 19:19
**fine** [2] - 40:5, 47:1
**finish** [1] - 37:15
**firm** [3] - 6:2, 12:20, 55:6
**FIRM** [1] - 2:5
**first** [8] - 5:14, 25:4, 26:12, 28:6, 50:3, 53:11, 53:12, 61:18
**fits** [4] - 26:13, 27:21, 65:13, 67:3
**five** [3] - 10:12, 38:19, 40:25
**fixed** [1] - 34:2
**flag** [1] - 13:11
**flagging** [1] - 29:17
**flexibility** [2] - 34:16, 42:7
**flexible** [1] - 46:3
**Flores** [1] - 58:22
**FLORES** [1] - 58:22
**Florida** [3] - 1:21, 2:7, 9:8
**focused** [1] - 61:6

**folks** [1] - 8:24
**follow** [1] - 47:17
**following** [1] - 38:1
**FOR** [1] - 1:1
**foregoing** [1] - 70:9
**foreign** [5] - 50:6, 50:17, 50:22, 51:3, 51:4
**formal** [2] - 45:23, 51:9
**formally** [1] - 51:8
**format** [1] - 33:19
**forth** [2] - 10:12, 60:4
**forward** [6] - 11:3, 27:11, 42:13, 43:5, 55:17, 56:10
**forwarded** [1] - 53:21
**four** [5] - 38:8, 43:3, 44:1, 54:9, 56:13
**fraction** [1] - 37:20
**Frankly** [1] - 30:13
**frankly** [12] - 10:17, 25:24, 26:16, 26:23, 27:4, 27:8, 27:14, 27:16, 27:20, 30:18, 30:21, 67:3
**fraud** [1] - 60:21
**FREEMAN** [1] - 1:13
**front** [3] - 30:6, 48:4, 50:8
**frustrated** [1] - 11:15
**frustration** [1] - 12:6
**full** [4] - 14:10, 37:23, 50:2, 50:3
**fully** [4] - 47:1, 48:12, 50:1
**fulsome** [2] - 13:24, 14:3
**future** [2] - 29:17, 66:18

## G

**game** [1] - 23:5
**generally** [1] - 11:8
**generic** [1] - 24:20
**George** [2] - 54:12, 55:25
**GEORGE** [1] - 2:6
**Georgia** [1] - 2:15
**Gibson** [1] - 58:7
**given** [6] - 22:19, 38:11, 43:17, 46:6, 46:13, 51:7
**glad** [1] - 41:23
**glitches** [1] - 12:1
**global** [1] - 57:1
**Goldberg** [9] - 4:21, 5:19, 12:15, 17:11, 17:23, 31:13, 36:5, 48:9, 51:17

**GOLDBERG** [16] - 2:9, 4:21, 5:1, 5:20, 12:19, 17:11, 17:14, 17:20, 17:22, 17:24, 48:9, 48:17, 51:17, 52:8, 52:16, 53:4
**Goldberg's** [1] - 5:15
**GOLDENBERG** [19] - 2:2, 2:3, 16:8, 19:25, 20:6, 20:16, 36:9, 36:12, 41:18, 41:20, 45:5, 46:9, 50:12, 53:18, 56:21, 56:24, 57:17, 59:14, 59:22
**goldenberg** [1] - 41:19
**Goldenberg** [13] - 16:8, 19:16, 19:23, 20:1, 36:10, 41:18, 45:4, 50:13, 51:22, 53:19, 56:22, 56:25, 59:15
**GOLOMB** [1] - 1:16
**good-faith** [1] - 40:8
**Gorda** [1] - 2:7
**Great** [1] - 4:11
**great** [6] - 22:8, 35:9, 35:20, 46:13, 48:4, 60:1
**Greenberg** [6] - 12:20, 12:23, 21:3, 47:7, 54:1, 61:18
**GREENBERG** [1] - 2:12
**Greenleaf** [1] - 58:7
**GROSSMAN** [5] - 3:3, 19:10, 19:13, 35:22, 36:1
**Grossman** [2] - 19:11, 35:22
**group** [11] - 17:16, 28:25, 52:2, 54:2, 55:11, 63:5, 63:17, 68:11, 68:15, 69:11
**Guerra** [1] - 57:1
**guess** [2] - 49:9, 69:20
**guidance** [1] - 36:24

## H

**Hague** [1] - 51:8
**hand** [4] - 23:23, 25:9, 61:22
**handle** [2] - 17:8, 20:24
**handling** [1] - 5:23
**happy** [4] - 21:17, 41:9, 61:18, 63:18
**hard** [1] - 23:9
**HARKINS** [8] - 2:14, 53:25, 55:10, 56:14,

57:22, 58:13, 59:2, 69:17
**Harkins** [8] - 54:1, 55:8, 55:10, 56:7, 56:14, 57:21, 58:12, 59:1
**harmed** [1] - 30:11
**heads** [3] - 43:12, 43:13
**Healthcare** [1] - 2:11
**hear** [4] - 11:2, 28:2, 35:9, 42:15
**heard** [10] - 18:19, 25:18, 27:19, 32:20, 46:16, 47:3, 58:16, 59:3, 59:6, 69:1
**hearing** [4] - 54:20, 58:6, 58:19, 62:8
**heavy** [2] - 37:22, 38:21
**HEINZ** [6] - 2:18, 39:4, 39:7, 39:10, 43:10, 44:7
**Heinz** [3] - 39:4, 43:9, 44:7
**held** [1] - 4:1
**hello** [4] - 19:10, 39:4, 46:19, 49:8
**help** [2] - 8:4, 55:7
**helpful** [3] - 4:14, 4:16, 47:25
**Hetero** [12] - 2:23, 5:22, 6:1, 31:15, 31:21, 31:23, 31:25, 32:5, 33:24
**Hetero's** [3] - 32:9, 32:24, 35:2
**hi** [3] - 12:22, 35:22, 44:7
**hiccups** [1] - 41:15
**high** [1] - 49:22
**highly** [1] - 8:24
**Hill** [4] - 5:22, 6:2, 54:10, 56:19
**HILL** [2] - 2:21, 6:4
**hill's** [1] - 54:14
**Hilton** [1] - 40:25
**historically** [1] - 63:23
**hit** [4] - 36:14, 36:16, 39:11, 68:25
**hit-count** [1] - 39:11
**hit-counts** [2] - 36:14, 36:16
**hitting** [1] - 44:19
**hold** [13] - 11:16, 15:25, 16:4, 17:4, 17:5, 17:9, 18:7, 18:10, 23:18, 25:14
**Honik** [1] - 7:15
**HONIK** [5] - 1:16,

1:17, 7:15, 7:18, 8:14
**Honik's** [1] - 11:1
**Honor** [95] - 4:9, 4:21, 5:6, 5:20, 5:21, 6:7, 7:2, 7:11, 7:15, 12:19, 12:22, 12:24, 13:8, 13:15, 14:15, 15:5, 15:18, 15:23, 17:1, 17:11, 19:10, 19:21, 19:25, 21:2, 21:6, 23:15, 23:21, 25:12, 27:23, 28:1, 29:15, 30:13, 30:16, 31:24, 32:7, 32:22, 34:23, 35:4, 35:14, 36:9, 36:12, 37:8, 39:15, 44:7, 45:5, 46:9, 46:19, 47:2, 47:7, 47:13, 48:9, 48:18, 49:3, 49:5, 49:8, 50:12, 51:17, 52:8, 52:17, 52:18, 53:3, 53:18, 53:25, 54:12, 55:2, 55:5, 55:10, 55:24, 56:11, 56:14, 56:21, 56:24, 57:22, 58:14, 59:2, 59:14, 59:22, 60:6, 60:7, 60:15, 61:5, 61:15, 61:16, 61:17, 65:9, 65:21, 66:5, 67:6, 67:11, 68:6, 69:9, 69:17, 69:19, 70:2, 70:3
**honor** [1] - 45:9
**Honor's** [5] - 5:23, 48:10, 54:18, 54:22, 55:3
**HONORABLE** [2] - 1:10, 1:11
**Honorable** [2] - 4:1, 4:3
**hope** [3] - 13:5, 19:19, 28:2
**hopefully** [2] - 52:11, 69:22
**hopes** [1] - 33:1
**hoping** [2] - 7:2, 40:13
**Hoppus** [1] - 58:21
**HOPPUS** [1] - 58:21
**horizon** [1] - 13:12
**host** [1] - 16:11
**hour** [5] - 9:15, 10:9, 10:10, 10:18, 11:5
**hours** [2] - 8:7, 10:13
**housed** [1] - 33:8
**Hu** [2] - 48:23, 49:4
**Huahai** [1] - 2:11
**hurdle** [7] - 27:14,

30:18, 30:23, 31:4, 31:6, 63:16
**hyperlinks** [1] - 4:15

## I

**idea** [1] - 16:14
**identified** [2] - 43:24, 45:25
**identify** [3] - 4:7, 5:11, 40:19
**identities** [1] - 38:22
**illustrated** [1] - 68:23
**imbalance** [2] - 68:14, 68:20
**immediate** [1] - 34:18
**immersed** [1] - 29:8
**imminently** [1] - 15:11
**impact** [3] - 31:19, 61:23, 62:6
**implicate** [1] - 29:24
**implications** [1] - 29:18
**important** [21] - 21:13, 21:18, 22:11, 22:15, 22:25, 23:5, 23:8, 26:22, 29:8, 29:13, 34:11, 42:17, 42:18, 57:6, 62:25, 63:12, 63:19, 64:3, 64:25, 68:9, 68:14
**importantly** [2] - 22:9, 51:2
**impose** [2] - 46:4, 64:21
**IN** [1] - 1:4
**in-person** [1] - 69:25
**Inc** [3] - 2:16, 2:16, 2:20
**inclined** [2] - 31:6, 31:7
**include** [3] - 24:25, 25:23, 67:17
**included** [10] - 19:17, 21:23, 23:10, 26:20, 29:5, 29:16, 39:25, 55:21, 67:4, 67:20
**including** [5] - 4:15, 24:8, 30:12, 39:21, 68:17
**incurred** [1] - 12:7
**indeed** [1] - 64:10
**India** [3] - 39:16, 40:10, 42:22
**Indian** [1] - 42:22
**indicate** [1] - 31:17
**indicated** [2] - 31:18, 42:8
**indicating** [2] - 45:23, 53:22
**individual** [3] - 11:21,

44:5, 45:25
**individuals** [2] - 38:4, 42:18
**Industries** [1] - 2:15
**information** [12] - 15:8, 15:14, 20:8, 20:10, 39:11, 40:17, 40:18, 40:21, 43:25, 52:25, 53:16, 62:11
**informed** [2] - 32:8, 66:12
**initial** [1] - 66:14
**initiated** [1] - 50:15
**injury** [3] - 13:25, 14:4, 14:19
**insist** [1] - 23:10
**instance** [1] - 9:25
**instances** [2] - 47:16, 69:1
**instead** [1] - 9:17
**instruct** [1] - 9:13
**instructed** [1] - 59:23
**instruction** [1] - 9:18
**insurance** [1] - 57:8
**integrated** [1] - 37:14
**intend** [3] - 32:15, 39:12, 48:6
**intended** [1] - 14:21
**intention** [2] - 8:18, 61:3
**interactions** [1] - 6:22
**interfacing** [1] - 40:20
**interference** [2] - 15:20, 15:21
**internal** [1] - 34:6
**internally** [1] - 48:24
**interpretation** [4] - 24:1, 24:12, 25:8, 60:12
**Interruption** [1] - 15:19
**intervention** [1] - 34:19
**introduce** [1] - 5:1
**introduced** [1] - 63:2
**invested** [1] - 23:3
**investigating** [1] - 38:17
**investigations** [1] - 33:7
**investing** [1] - 22:13
**involved** [2] - 23:6, 38:5
**iPhone** [1] - 9:6
**irbesartan** [1] - 59:20
**issue** [63] - 5:17, 5:23, 6:21, 7:13, 10:7, 10:11, 10:19, 12:14, 12:18, 12:21, 13:11, 18:24, 19:15, 20:21,

21:4, 21:7, 21:9, 21:12, 21:16, 21:18, 22:18, 29:17, 29:24, 31:1, 31:3, 31:11, 31:18, 31:22, 34:21, 35:2, 36:7, 37:3, 37:24, 40:14, 42:21, 43:20, 45:21, 46:7, 46:10, 46:11, 46:15, 46:17, 48:1, 48:3, 48:12, 49:17, 50:14, 50:21, 50:22, 51:16, 51:19, 51:25, 54:21, 55:1, 57:9, 59:19, 61:23, 62:3, 62:16, 64:5, 66:6, 68:24
**issued** [1] - 22:22
**issues** [18] - 4:24, 5:15, 7:5, 9:23, 13:20, 13:23, 26:20, 32:17, 32:19, 33:2, 33:3, 33:17, 34:14, 34:16, 35:7, 42:19, 59:25
**it'll** [1] - 45:23
**Item** [1] - 31:15
**item** [6] - 12:15, 19:5, 20:19, 35:10, 50:5, 56:23

## J

**Jackson** [1] - 58:7
**James** [1] - 58:21
**JERSEY** [1] - 1:1
**Jersey** [18] - 1:8, 1:15, 2:23, 24:9, 24:14, 24:15, 24:17, 24:24, 24:25, 53:6, 60:15, 60:16, 60:17, 60:20, 61:1, 61:5, 61:9, 61:11
**Jersey's** [1] - 24:12
**Jessica** [2] - 39:4, 42:16, 44:7
**JESSICA** [1] - 2:18
**job** [3] - 38:1, 47:22, 48:5
**join** [1] - 52:20
**Joining** [2] - 35:25, 65:15
**joining** [13] - 18:18, 19:12, 20:5, 20:15, 20:23, 21:21, 23:14, 23:17, 23:19, 23:20, 39:9, 41:17, 52:5
**joins** [1] - 53:1
**joint** [1] - 54:2
**Judge** [33] - 4:2, 8:8, 8:14, 10:6, 14:20, 14:25, 18:4, 18:21,

21:16, 22:19, 24:1, 24:11, 24:14, 25:5, 25:17, 28:23, 30:2, 31:4, 47:16, 51:6, 52:15, 52:20, 52:23, 53:1, 59:23, 61:20, 61:25, 62:18, 63:1, 64:11, 66:7, 67:11, 68:21
**judge** [2] - 15:20, 16:13
**JUDGE** [111] - 1:10, 4:4, 4:11, 4:25, 5:3, 5:11, 5:24, 6:3, 6:6, 7:12, 7:17, 8:13, 10:23, 11:13, 12:25, 13:9, 13:13, 13:21, 14:13, 15:21, 15:25, 16:4, 16:6, 16:11, 16:15, 16:18, 16:22, 17:7, 17:13, 17:19, 17:21, 17:23, 17:25, 18:3, 18:5, 18:19, 18:22, 18:25, 19:4, 19:22, 20:18, 20:24, 21:5, 23:12, 23:18, 25:14, 25:16, 25:20, 27:25, 30:4, 30:15, 30:25, 31:3, 32:1, 32:6, 32:20, 32:25, 34:15, 34:24, 35:9, 35:20, 36:3, 36:11, 39:2, 39:6, 41:14, 41:19, 43:8, 43:19, 45:4, 45:20, 46:10, 46:22, 47:4, 47:23, 48:16, 49:6, 49:25, 51:14, 52:4, 52:6, 52:9, 52:19, 52:23, 53:2, 53:5, 53:9, 53:24, 54:7, 54:24, 55:8, 56:7, 56:12, 56:18, 56:23, 57:12, 57:18, 58:3, 58:6, 58:15, 58:19, 59:3, 59:6, 59:18, 60:1, 60:9, 63:23, 68:21, 69:15, 69:18, 69:20
**Kugler** [14] - 4:2, 21:16, 24:11, 24:14, 25:5, 28:23, 30:2, 31:4, 51:6, 52:15, 52:20, 52:24, 53:1, 68:21
**Kugler's** [2] - 22:20, 24:1

## K

**KATZ** [1] - 1:13

**keep** [5] - 40:8, 46:2, 62:7, 65:4, 65:7
**Keller** [2] - 53:13, 53:15
**Keller's** [1] - 54:6
**key** [1] - 33:8
**kind** [7] - 16:9, 20:9, 23:4, 62:12, 64:19, 64:21, 66:10
**knowing** [1] - 44:18
**Kopp** [1] - 59:6
**KOPP** [1] - 59:7
**KUGHER** [1] - 1:10
**KUGLER** [27] - 53:2, 53:5, 53:9, 53:24, 54:7, 54:24, 55:8, 56:7, 56:12, 56:18, 56:23, 57:12, 57:18, 58:3, 58:6, 58:15, 58:19, 59:3, 59:6, 59:18, 60:1, 60:9, 63:23, 68:21, 69:15, 69:18, 69:20

## L

**Labs** [5] - 2:23, 5:22, 6:2, 31:25, 32:5
**lack** [1] - 9:20
**lacking** [2] - 39:18, 40:7
**Lane** [1] - 40:25
**language** [5] - 19:17, 21:23, 25:23, 66:14, 67:17
**Lantech** [6] - 38:5, 38:13, 38:15, 40:19, 44:5, 45:25
**Lantech-related** [2] - 44:5, 45:25
**large** [3] - 37:17, 49:14, 65:5
**larger** [1] - 69:11
**Larry** [2] - 16:11, 16:18
**larry** [1] - 3:9
**Lasalle** [1] - 2:3
**last** [11] - 23:16, 23:22, 23:24, 36:12, 38:4, 38:17, 48:10, 50:3, 50:5, 53:21, 54:4
**late** [2] - 8:10, 9:15

law [2] - 24:21, 60:19
LAW [2] - 2:2, 2:5
lawyers [3] - 8:8, 8:16, 10:4
lay [1] - 15:17
laying [1] - 47:22
leadership [1] - 5:9
learned [1] - 33:4
least [4] - 13:10, 44:22, 55:5, 62:18
leave [3] - 43:6, 49:5, 61:14
leaves [1] - 58:24
left [2] - 61:24, 62:10
Lehigh [1] - 7:25
lengthy [1] - 6:13
letter [30] - 5:15, 9:1, 9:19, 12:15, 21:11, 23:25, 24:4, 29:15, 31:12, 32:23, 36:5, 36:19, 36:25, 37:9, 38:5, 38:7, 42:8, 43:2, 43:4, 43:24, 43:25, 45:23, 46:16, 48:13, 49:11, 49:13, 57:5, 65:25, 67:11
letting [3] - 31:7, 47:2, 48:5
level [3] - 8:25, 11:3, 49:21
LEVIN [1] - 1:19
Lewis [1] - 35:22
LEWIS [1] - 3:2
LIABILITY [1] - 1:4
liability [1] - 24:11
Liability [4] - 24:15, 24:25, 60:17, 61:4
life [1] - 57:8
lift [2] - 37:22, 38:21
light [3] - 14:3, 41:22, 44:20
likely [1] - 14:9
Limited [2] - 39:14, 39:16
line [14] - 14:8, 15:13, 40:5
lines [4] - 13:4, 13:20, 14:11, 67:19
list [14] - 17:2, 36:24, 39:14, 39:21, 39:25, 40:23, 40:25, 41:1, 55:17, 57:18, 57:23, 58:2, 58:13, 69:1
listed [3] - 53:11, 58:16, 59:8
listening [1] - 17:6
listing [2] - 58:11, 58:17
lists [1] - 58:12
Listserv [1] - 40:25

litigation [8] - 14:21, 20:3, 22:6, 28:23, 30:3, 39:17, 40:9, 51:7
LITIGATION [1] - 1:4
lives [2] - 7:25, 9:8
LLC [5] - 1:13, 2:2, 2:11, 2:16, 2:19
LLP [3] - 2:8, 2:12, 2:21
loaded [2] - 7:6, 11:9
located [1] - 39:16
LOCKARD [10] - 2:13, 12:22, 13:1, 13:10, 14:15, 18:21, 18:23, 47:6, 53:3, 70:3
Lockard [6] - 12:19, 12:23, 14:14, 18:20, 47:7, 47:24
log [2] - 46:11, 49:17
logging [1] - 8:3
logical [1] - 24:6
look [6] - 13:17, 14:10, 33:25, 37:3, 38:6, 48:5
looked [1] - 30:21
looking [10] - 14:6, 25:22, 26:11, 36:19, 36:24, 37:1, 37:23, 38:7, 44:14, 64:6
looks [2] - 33:6, 62:2
Lori [6] - 21:2, 27:24, 61:17, 67:6, 68:6, 69:10
LORI [1] - 2:13
losartan [1] - 59:20
losartan/irbesartan [2] - 50:6, 59:12
lose [1] - 68:12
losing [1] - 65:4
loss [2] - 25:1, 61:1
lost [1] - 60:2
Louisiana [2] - 10:2, 24:9
low [1] - 45:13
Ltd [2] - 2:11, 2:15

# M

macro [2] - 13:20, 13:23
macros [1] - 14:11
MacStravic [1] - 3:9
maintaining [1] - 55:16
major [1] - 34:21
majority [1] - 27:5
manageable [1] - 66:22
managing [1] - 49:21
manuals [1] - 34:7

manufacturers [1] - 42:24
manufacturing [5] - 25:1, 34:6, 37:25, 43:14, 60:24
March [6] - 13:5, 18:15, 41:7, 44:6, 46:1, 46:2
Market [1] - 1:17
Marlene [11] - 16:8, 19:16, 20:1, 36:9, 39:7, 41:18, 50:12, 53:18, 56:21, 56:25, 59:14
MARLENE [1] - 2:3
mass [1] - 27:5
Master [1] - 4:2
MASTER [1] - 1:11
matter [22] - 5:14, 18:16, 19:7, 19:8, 19:24, 21:1, 24:21, 30:4, 31:10, 34:17, 46:12, 46:13, 48:6, 48:8, 50:9, 50:11, 51:24, 52:11, 52:12, 59:9, 70:10
matters [4] - 18:14, 44:1, 50:1, 59:12
MAZIE [1] - 1:13
McGuire [1] - 59:7
McReynolds [1] - 58:20
MDL [2] - 51:6, 51:13
MDLs [4] - 27:7, 28:8, 63:24, 67:8
mean [3] - 28:14, 49:9, 64:6
meaning [3] - 29:21, 51:5, 51:12
meaningfully [1] - 42:15
mechanical [2] - 1:24, 25:11
mechanism [3] - 66:25, 67:2, 67:21
medical [1] - 10:14
MEDRANO [1] - 58:7
Medrano [1] - 58:7
meet [7] - 10:16, 20:11, 29:20, 32:10, 39:8, 39:13, 41:9
meeting [15] - 18:18, 19:12, 20:5, 20:15, 20:23, 21:21, 22:19, 23:14, 23:17, 23:20, 35:25, 39:9, 41:17, 52:5, 65:15
MEGAN [1] - 3:3
Megan [2] - 19:10, 35:22

memorandum [1] - 53:14
memorialize [1] - 68:9
memos [1] - 59:10
mentioned [2] - 61:5, 61:25
merely [1] - 12:24
message [1] - 7:3
met [1] - 7:20
metadata [2] - 33:13, 33:18
metrics [1] - 47:14
mics [1] - 4:6
mid [8] - 13:5, 18:16, 32:7, 41:11, 44:17, 44:22, 46:6, 52:7
mid-March [1] - 13:5
mid-May [4] - 41:11, 44:17, 44:22, 46:6
mid-month [3] - 18:16, 32:7, 52:7
might [8] - 16:10, 37:17, 41:25, 42:6, 42:11, 47:18, 54:20, 67:2
mine [1] - 9:2
Minneapolis [1] - 2:4
Minnesota [1] - 2:4
minutes [6] - 8:5, 8:11, 8:17, 12:11, 68:23
misconstruing [1] - 48:22
misreading [1] - 27:15
misrepresent [1] - 48:20
miss [1] - 53:6
missing [1] - 65:1
misunderstanding [1] - 41:21
Mitchell [1] - 1:7
MITCHELL [1] - 1:19
mix [1] - 5:8
mixed [1] - 6:18
Molinaro [4] - 9:2, 9:5, 9:8, 9:17
moment [1] - 7:22
money [2] - 22:13, 68:11
month [5] - 18:16, 32:7, 40:14, 50:17, 52:7
morning [20] - 4:10, 4:11, 4:12, 5:6, 7:16, 7:17, 8:2, 9:21, 19:20, 21:2, 31:24, 32:16, 53:2, 53:3, 53:4, 53:25, 60:6, 60:7, 61:25, 66:7
Morris [3] - 4:22, 9:1,

9:11
MORRIS [1] - 2:8
most [2] - 14:9, 51:2
mostly [1] - 5:4
motion [7] - 22:23, 48:4, 53:13, 53:23, 54:6, 57:10, 60:13
Motion [2] - 30:5, 60:13
motions [3] - 57:13, 60:3, 64:8
move [14] - 12:14, 31:11, 34:25, 41:25, 42:13, 43:5, 46:8, 46:10, 46:17, 55:2, 57:19, 58:3, 58:11, 58:17
moving [20] - 22:25, 40:9, 52:13, 55:17, 56:10, 63:5
MR [64] - 4:21, 5:1, 5:6, 5:20, 5:21, 6:1, 6:4, 6:7, 7:15, 7:18, 8:14, 10:25, 12:19, 13:15, 13:22, 15:23, 16:2, 16:3, 17:1, 17:8, 17:11, 17:14, 17:20, 17:22, 17:24, 19:2, 23:15, 23:21, 25:13, 25:19, 25:21, 30:13, 30:16, 32:22, 33:1, 34:23, 35:14, 46:19, 46:23, 48:9, 48:17, 49:8, 51:17, 52:8, 52:16, 52:18, 53:4, 53:25, 54:12, 55:1, 55:10, 55:24, 56:10, 56:14, 57:22, 58:13, 59:2, 60:7, 60:10, 66:5, 67:18, 69:17, 69:19, 70:2
MS [55] - 12:22, 13:1, 13:10, 14:15, 16:8, 18:21, 18:23, 19:10, 19:13, 19:25, 20:6, 20:16, 21:2, 21:6, 21:22, 25:12, 27:23, 28:1, 28:4, 28:6, 31:24, 32:2, 32:4, 32:7, 35:4, 35:22, 36:1, 36:9, 36:12, 39:4, 39:7, 39:10, 41:18, 41:20, 43:10, 44:7, 45:5, 46:9, 47:6, 50:12, 53:3, 53:18, 56:21, 56:24, 57:17, 59:14, 59:22, 60:6, 61:17, 65:9, 65:16, 67:6, 68:6, 69:9, 70:3

**multiple** [4] - 5:9,
14:2, 27:7, 66:20
**music** [4] - 15:19,
15:22, 17:5, 17:9
**must** [2] - 30:19,
63:19
**mute** [3] - 18:6, 18:10,
41:14
**Mylan** [1] - 37:13

## N

**NAKUL** [2] - 2:22,
32:4
**Nakul** [2] - 31:24, 32:4
**name** [1] - 5:24
**names** [2] - 37:16,
43:2
**nature** [1] - 26:7
**NE** [1] - 2:14
**nearby** [1] - 9:13
**necessarily** [1] - 68:12
**necessary** [6] - 21:15,
21:20, 27:14, 29:5,
43:16, 56:1
**need** [24] - 6:8, 9:12,
12:10, 12:12, 15:9,
15:12, 19:23, 26:23,
34:13, 35:5, 38:24,
38:25, 46:12, 46:25,
47:9, 48:5, 48:18,
50:1, 51:7, 51:10,
56:8, 69:7, 69:16
**needed** [2] - 55:15,
56:6
**needs** [5] - 10:19,
17:3, 46:4, 50:10,
53:16
**negotiated** [2] - 13:24,
14:17
**negotiating** [1] - 13:1
**negotiation** [1] - 13:24
**Nesbit** [1] - 2:6
**never** [1] - 41:2
**NEW** [1] - 1:1
**new** [4] - 17:12, 20:13,
52:24, 65:5
**New** [19] - 1:8, 1:15,
2:23, 24:8, 24:12,
24:14, 24:17, 24:24,
53:6, 60:15, 60:16,
60:17, 60:20, 61:1,
61:4, 61:9, 61:11
**Newcomb** [1] - 58:8
**news** [2] - 54:11,
69:23
**next** [23] - 12:14, 13:4,
13:19, 14:9, 19:5,
20:19, 26:10, 31:11,
34:4, 35:6, 35:10,
41:2, 46:10, 48:3,

56:23, 58:9, 58:10,
58:23, 62:8, 67:1,
67:21, 69:8, 69:22
**NIGH** [13] - 1:20,
13:15, 13:22, 15:23,
16:2, 19:2, 25:13,
25:19, 25:21, 30:13,
30:16, 66:5, 67:18
**Nigh** [12] - 13:15,
15:24, 18:25, 25:10,
25:13, 25:19, 25:20,
28:6, 30:14, 30:17,
66:5, 67:18
**Nigh's** [1] - 15:16
**night** [2] - 53:21, 54:4
**nine** [1] - 62:12
**nobody** [1] - 18:7,
23:4
**none** [2] - 58:6, 58:19
**note** [2] - 24:18, 41:20
**notes** [3] - 31:17,
35:11, 35:12
**nothing** [9] - 9:20,
9:23, 11:14, 35:15,
52:16, 52:18, 59:6,
69:17, 69:19
**notice** [2] - 36:25,
38:1
**noticed** [1] - 36:14
**Number** [5] - 22:22,
31:15, 37:17, 60:13,
62:24
**NUMBER** [1] - 1:3
**number** [15] - 4:23,
7:18, 8:11, 11:16,
12:2, 17:12, 22:20,
36:18, 37:10, 51:20,
55:12, 57:4, 58:10,
62:15, 65:5
**numbers** [3] - 45:12,
47:15, 62:13
**numerous** [2] - 27:6,
27:7

## O

**object** [1] - 58:3
**objection** [3] - 28:10,
41:23, 54:11
**objectionable** [1] -
30:9
**objections** [3] - 13:4,
56:13, 62:3
**obligations** [1] - 38:15
**obviously** [5] - 21:17,
28:22, 34:3, 34:8,
60:25
**occasionally** [2] -
7:21, 8:10
**occasions** [1] - 6:20
**occur** [4] - 26:18,

27:5, 33:6, 66:21
**occurred** [4] - 14:3,
30:21, 37:25, 42:21
**occurs** [3] - 27:9,
66:11, 66:16
**OF** [1] - 1:1
**offer** [1] - 43:17
**offered** [2] - 40:9,
43:15
**Official** [1] - 1:22
**Ohio** [1] - 24:9
**once** [6] - 15:1, 28:11,
29:10, 51:8, 51:9
**one** [37] - 7:20, 8:9,
8:20, 9:1, 9:25,
13:23, 16:1, 20:21,
21:7, 21:10, 21:12,
21:13, 21:15, 23:8,
26:13, 27:21, 29:25,
30:23, 44:3, 47:12,
50:24, 53:12, 60:3,
62:17, 62:23, 62:25,
63:15, 64:14, 66:1,
66:2, 66:3, 67:3,
68:12, 69:24
**ones** [4] - 41:10,
44:11, 44:16, 68:19
**open** [5] - 4:1, 35:4,
37:18, 43:6, 47:8
**operating** [1] - 34:7
**operations** [2] - 43:12,
43:13
**opinion** [3] - 26:24,
30:5
**Opinion** [1] - 22:22
**opportunity** [3] -
18:24, 51:21, 52:1
**oppose** [2] - 53:23,
57:10
**opposed** [1] - 24:13
**opposes** [1] - 54:5
**opposing** [1] - 54:21
**order** [58] - 11:24,
12:10, 19:7, 19:18,
20:2, 20:4, 20:7,
20:14, 20:17, 20:22,
21:25, 22:12, 22:20,
22:21, 22:22, 24:1,
25:23, 27:3, 28:14,
29:18, 29:21, 29:24,
30:9, 30:19, 30:23,
41:13, 45:21, 46:7,
48:3, 50:10, 50:25,
54:8, 54:17, 57:19,
58:4, 59:11, 60:13,
61:23, 62:6, 62:20,
62:21, 63:8, 64:12,
64:18, 64:19, 66:2,
66:9, 66:14, 66:18,
67:4, 67:17, 67:20,

67:21, 68:3, 68:9,
68:25, 69:3
**Order** [1] - 60:13
**ordered** [1] - 65:12
**orders** [5] - 28:9,
57:14, 57:25, 58:1,
58:8
**organized** [1] - 52:2
**original** [1] - 67:15
**originally** [1] - 68:19
**Osolin** [1] - 59:7
**OSOLIN** [1] - 59:7
**otherwise** [4] - 20:14,
47:20, 61:8, 63:20
**outset** [1] - 7:20
**outstanding** [1] - 54:4
**overcome** [1] - 33:21
**overlap** [1] - 37:6
**overlay** [1] - 33:19
**overnighted** [1] - 9:8
**overseas** [1] - 42:24
**own** [3] - 9:9, 37:14,
37:15

## P

**P.A** [1] - 1:19
**P.C** [2] - 1:16, 2:17
**p.m** [1] - 70:4
**Page** [7] - 36:20,
36:25, 37:18, 38:6,
43:24, 43:25, 45:25
**page** [1] - 20:16
**Pages** [1] - 45:22
**pages** [2] - 14:2, 49:16
**pales** [1] - 37:11
**PAPANTONIO** [1] -
1:19
**paper** [1] - 47:22
**papers** [1] - 48:2
**Paragraph** [1] - 21:11
**paragraph** [3] - 21:13,
29:3, 49:11
**parents** [1] - 10:14
**Parkway** [2] - 1:14,
2:18
**part** [15] - 25:21, 26:3,
26:8, 26:11, 26:19,
26:25, 27:2, 30:9,
38:2, 50:24, 51:4,
61:13, 61:15, 64:6
**participant** [1] - 16:10
**participate** [2] - 6:15,
11:22
**participated** [1] - 6:23
**participating** [1] -
9:16
**particular** [5] - 43:20,
44:4, 46:17, 48:1,
48:8
**particularly** [3] -

42:10, 43:17, 47:14
**parties** [5] - 39:5,
39:10, 40:2, 40:5,
48:20
**party** [3] - 65:18,
65:24, 67:12
**past** [1] - 45:8
**patient** [1] - 8:3
**Patterson** [1] - 58:7
**pause** [1] - 23:7
**pay** [1] - 6:15
**pdf** [2] - 37:17, 37:19
**Pedano** [2] - 1:22,
70:12
**Pennsylvania** [4] -
1:18, 2:10, 2:19, 3:4
**Pensacola** [1] - 1:21
**people** [17] - 5:9, 17:2,
23:19, 37:1, 38:2,
38:8, 38:19, 38:22,
38:24, 42:18, 43:3,
43:10, 43:11, 43:15,
45:17, 65:5
**people's** [1] - 37:24
**perfection** [1] - 7:4
**perhaps** [1] - 69:24
**period** [2] - 20:13,
32:24
**peripheral** [5] - 19:6,
19:14, 19:17, 20:11,
59:11
**permission** [1] - 5:23
**permitted** [1] - 61:1
**persist** [1] - 34:16
**person** [5] - 6:16,
27:18, 40:20, 66:12,
69:25
**personal** [4] - 14:18,
39:17, 40:6, 41:22
**persons** [2] - 40:20,
43:23
**perspective** [9] -
19:24, 35:2, 41:4,
42:17, 44:6, 46:18,
50:11, 51:15, 61:7
**pertinent** [2] - 43:15
**PFS** [2] - 54:4, 58:25
**Pharma** [5] - 2:16,
2:19, 2:20, 39:14,
39:16
**Pharmaceutical** [2] -
2:15, 40:19
**Pharmaceuticals** [4] -
2:10, 2:11, 2:16,
35:23
**phased** [1] - 43:4
**Philadelphia** [2] -
1:18, 2:10
**phone** [5] - 8:16,
11:16, 39:24, 57:2

**phones** [2] - 4:6, 18:6
**physically** [1] - 10:4
**pick** [9] - 18:12, 22:5, 22:7, 22:8, 26:21, 65:18, 65:25, 67:9, 67:13
**picked** [2] - 64:2, 68:19
**picks** [7] - 26:4, 28:11, 28:16, 65:4, 66:2, 66:10, 67:24
**picture** [1] - 37:23
**piece** [2] - 65:19, 65:24
**Piedmont** [1] - 2:14
**PLA** [4] - 24:16, 60:25, 61:3, 61:11
**place** [4] - 18:6, 45:10, 50:10, 67:23
**Plaintiff** [3] - 13:25, 14:1, 14:18
**plaintiff** [15] - 5:15, 7:14, 12:17, 24:12, 24:24, 30:10, 57:7, 59:3, 61:9, 64:9, 64:21, 65:1, 65:2, 65:4, 65:6
**plaintiff's** [2] - 11:21, 53:23
**Plaintiffs** [5] - 1:15, 1:18, 1:21, 2:4, 2:7
**plaintiffs** [93] - 5:4, 7:1, 7:4, 10:11, 11:2, 13:2, 13:3, 14:19, 14:21, 15:3, 15:15, 18:14, 19:16, 20:11, 20:20, 20:25, 21:19, 22:2, 22:7, 22:14, 22:16, 22:21, 23:1, 23:13, 24:7, 24:22, 27:6, 27:7, 29:19, 29:21, 31:9, 31:18, 32:8, 32:12, 32:14, 32:17, 32:18, 32:21, 34:17, 35:5, 35:13, 36:8, 39:18, 40:3, 40:23, 40:24, 41:3, 43:22, 44:4, 47:10, 48:13, 48:21, 48:22, 49:1, 49:7, 52:18, 53:19, 55:12, 55:20, 56:25, 58:3, 58:15, 58:16, 60:15, 60:23, 61:24, 62:1, 62:12, 62:23, 63:5, 63:9, 63:13, 63:20, 63:21, 63:25, 64:1, 64:7, 64:16, 64:23, 65:4, 67:1, 67:9, 67:11, 68:12, 68:16, 68:18,

69:2, 69:12, 69:18, 69:19
**plaintiffs'** [22] - 5:9, 6:9, 6:17, 6:20, 6:24, 8:21, 13:14, 15:10, 17:15, 17:16, 19:24, 21:8, 30:8, 30:11, 40:11, 43:24, 45:15, 45:22, 46:18, 50:11, 61:22, 65:17
**plan** [3] - 26:11, 26:19, 26:25
**planned** [1] - 39:23
**planning** [3] - 28:18, 48:2
**plate** [2] - 54:18, 55:3
**platform** [2] - 8:1, 8:24
**played** [1] - 8:13
**playing** [5] - 15:19, 17:4, 17:9, 21:22, 23:4
**plead** [3] - 24:14, 24:15, 61:4
**pleading** [1] - 64:14
**pleadings** [1] - 29:11
**pleased** [2] - 21:8, 36:17
**point** [24] - 6:8, 11:1, 11:24, 12:8, 13:8, 14:24, 18:20, 27:17, 29:14, 37:8, 37:9, 41:23, 48:22, 49:2, 49:18, 50:16, 54:14, 54:17, 57:2, 61:19, 66:8, 68:4, 68:22, 69:13
**points** [2] - 43:3, 51:25
**pool** [9] - 12:17, 20:20, 21:24, 26:5, 62:21, 64:1, 66:22, 67:13, 67:15
**pools** [2] - 26:6, 28:9
**portion** [1] - 51:6
**position** [17] - 13:5, 15:4, 27:16, 39:17, 40:6, 43:6, 47:22, 52:6, 56:1, 60:22, 62:19, 64:7, 64:11, 66:8, 66:14, 66:19, 69:2
**positions** [1] - 45:16
**possible** [2] - 8:23, 44:15
**postponed** [1] - 12:8
**potentially** [2] - 42:14, 60:19
**practice** [1] - 65:2
**practices** [1] - 34:6
**precluding** [1] - 34:17

**prejudice** [12] - 27:4, 27:8, 27:13, 28:14, 30:20, 30:22, 31:5, 34:17, 60:22, 63:10, 63:14, 68:20
**prejudicial** [1] - 41:8
**preliminary** [1] - 56:16
**premature** [8] - 25:24, 27:20, 30:6, 41:13, 66:13, 66:18, 68:2, 68:4
**premise** [1] - 60:10
**preparedness** [2] - 9:20, 10:22
**PRESENT** [1] - 3:8
**present** [5] - 12:13, 13:6, 14:11, 18:24, 21:17
**presented** [1] - 5:13
**preservation** [2] - 39:20, 40:4
**pressure** [1] - 10:15
**pretty** [1] - 37:13
**prevent** [1] - 63:9
**preview** [1] - 21:17
**previously** [3] - 33:20, 55:18, 57:4
**Princeton** [1] - 2:23
**Prinston** [1] - 2:10
**printed** [1] - 50:7
**prioritize** [1] - 42:9
**privilege** [2] - 46:11, 49:16
**problem** [11] - 9:21, 10:5, 12:9, 18:8, 33:15, 39:22, 51:15, 54:24, 54:25, 63:24, 64:4
**problems** [8] - 7:21, 8:10, 10:8, 11:25, 12:5, 16:16, 33:13, 38:18
**procedure** [3] - 19:18, 61:13, 67:14
**procedures** [1] - 34:7
**proceed** [3] - 6:5, 6:6, 32:2
**proceedings** [4] - 69:21, 69:25, 70:4, 70:10
**PROCEEDINGS** [1] - 4:1
**Proceedings** [1] - 1:24
**process** [11] - 13:1, 23:6, 25:11, 26:16, 29:8, 38:1, 44:10, 51:9, 55:17, 59:20
**PROCTOR** [1] - 1:19
**produce** [8] - 41:6,

41:11, 41:22, 42:25, 43:17, 44:16, 44:22, 44:24
**produced** [10] - 1:25, 32:13, 33:9, 33:19, 38:25, 40:11, 40:16, 43:24, 44:2
**producing** [2] - 40:13, 45:2
**Product** [4] - 24:15, 24:25, 60:17, 61:4
**product** [2] - 24:19, 37:15
**production** [11] - 14:2, 32:9, 32:16, 34:14, 41:10, 42:1, 43:1, 43:4, 45:21, 45:24, 46:5
**productions** [2] - 33:13, 46:2
**productive** [2] - 32:13, 39:13
**PRODUCTS** [1] - 1:4
**professional** [1] - 11:19
**progress** [2] - 35:6, 59:21
**project** [1] - 45:18
**promise** [2] - 13:19, 15:23
**prompt** [1] - 9:25
**promptly** [3] - 7:25, 31:20, 46:14
**proper** [2] - 22:1, 51:10
**proposal** [2] - 14:9, 67:1
**propose** [3] - 26:8, 26:10, 67:12
**proposed** [7] - 39:19, 39:21, 40:25, 43:11, 44:16, 62:19
**proposing** [1] - 41:2
**protective** [1] - 48:3
**protocols** [1] - 51:11
**proves** [1] - 4:16
**provide** [3] - 13:3, 36:16, 39:12
**provided** [10] - 13:2, 35:16, 40:23, 42:7, 47:10, 47:11, 47:15, 49:16, 51:20
**Provision** [1] - 62:23
**provision** [16] - 22:16, 23:8, 23:9, 28:16, 28:24, 29:9, 29:25, 30:12, 31:8, 62:23, 62:25, 63:12, 63:19, 65:20, 65:22, 67:9
**prudent** [1] - 34:12

**public** [1] - 20:9
**pull** [1] - 34:9
**punitive** [2] - 25:3, 61:2
**Punta** [1] - 2:7
**purpose** [1] - 62:24
**purposes** [1] - 10:19
**pursuant** [2] - 14:12, 28:14
**pursue** [2] - 60:23, 61:10
**push** [1] - 42:2
**put** [16] - 16:4, 16:6, 17:4, 17:5, 18:7, 18:9, 18:10, 22:24, 41:14, 45:10, 45:18, 48:13, 49:13, 62:3, 62:7, 66:9

## Q

**quality** [4] - 34:7, 38:14, 43:12, 43:13
**questioned** [1] - 10:12
**questioning** [2] - 8:7, 34:5
**questions** [6] - 44:3, 47:13, 47:16, 47:17, 48:11, 63:18
**quickly** [4] - 33:16, 34:2, 50:4, 52:3
**quite** [2] - 8:22, 38:7

## R

**RAFFERTY** [1] - 1:19
**raise** [5] - 13:22, 24:2, 29:24, 31:3, 61:15
**raised** [8] - 32:9, 32:12, 32:17, 32:19, 35:7, 41:3, 48:22, 59:19
**raises** [2] - 29:3, 61:19
**raising** [2] - 7:2, 34:20
**random** [1] - 26:21
**rather** [4] - 6:10, 8:3, 14:18, 41:24
**Raymond** [1] - 57:23
**re** [1] - 67:14
**RE** [1] - 1:4
**re-select** [1] - 67:14
**reach** [6] - 19:6, 36:13, 39:11, 54:15, 56:1, 66:16
**reached** [3] - 19:18, 49:21, 56:15
**reaching** [1] - 56:4
**reaction** [1] - 23:7
**read** [1] - 24:21
**readiness** [1] - 6:19
**ready** [10] - 4:4, 6:10,

*6:11, 7:1, 8:5, 8:19, 8:25, 11:3, 11:18, 34:10*
**real** [1] - 24:5
**realize** [1] - 33:4
**realized** [1] - 39:24
**really** [13] - 10:6, 15:12, 22:1, 23:9, 31:15, 33:23, 35:15, 37:20, 38:23, 48:19, 50:4, 50:21, 66:10
**reason** [6] - 22:12, 27:10, 36:15, 37:3, 42:20, 42:25
**reasonable** [1] - 21:15
**reasons** [2] - 64:2, 69:12
**receive** [2] - 31:12, 40:1
**received** [2] - 13:16, 41:2
**recent** [3] - 22:20, 22:21, 60:19
**recently** [1] - 39:19
**recess** [1] - 52:22
**recitation** [1] - 11:1
**recognize** [1] - 63:24
**recommend** [1] - 16:18
**reconsider** [1] - 54:6
**record** [7] - 4:15, 5:7, 33:24, 54:13, 55:25, 69:10, 70:10
**recorded** [1] - 1:24
**recovered** [1] - 50:2
**recovery** [1] - 38:16
**recycling** [1] - 38:16
**red** [3] - 13:4, 13:20, 14:11
**redoing** [1] - 33:17
**reference** [1] - 49:10
**referenced** [1] - 55:20
**referred** [1] - 49:2
**referring** [1] - 37:18
**regarding** [3] - 39:14, 39:20, 40:3
**reinstate** [3] - 53:23, 54:8, 57:14
**reiterate** [1] - 27:17
**related** [4] - 42:11, 42:12, 44:5, 45:25
**relates** [2] - 21:10, 21:13
**relation** [1] - 19:15
**relevant** [2] - 15:8, 20:13
**relied** [1] - 68:7
**relief** [2] - 29:13, 34:22
**relisted** [1] - 58:22

**rely** [2] - 49:23, 65:11
**remainder** [1] - 35:7
**remaining** [4] - 46:1, 57:3, 58:1, 59:25
**remains** [1] - 8:8
**remedied** [1] - 33:16
**remedies** [1] - 61:1
**remedy** [1] - 33:1
**remedying** [1] - 32:19
**remember** [1] - 10:10
**remove** [1] - 16:10
**reopen** [1] - 69:24
**rep** [1] - 10:18
**replace** [8] - 22:4, 22:8, 65:1, 65:2, 65:7, 66:3, 67:10, 68:19
**replacement** [6] - 65:14, 65:19, 66:1, 66:10, 67:13, 67:24
**replacing** [1] - 26:21
**replead** [6] - 24:23, 29:19, 60:16, 62:1, 62:8
**repled** [1] - 24:24
**reply** [1] - 49:12
**report** [2] - 12:24, 37:2
**reported** [1] - 55:14
**Reporter** [1] - 1:22
**reporter** [3] - 4:8, 17:18, 28:2
**REPORTER** [10] - 4:9, 15:20, 17:18, 18:4, 25:15, 25:17, 28:3, 28:5, 30:14, 32:3
**Reporter/**
**Transcriber** [1] - 70:12
**represent** [3] - 5:22, 7:24, 19:14
**representation** [1] - 24:19
**representations** [1] - 57:5
**representative** [1] - 68:15
**represented** [1] - 27:6
**reprieve** [1] - 42:4
**request** [5] - 12:16, 18:13, 21:14, 28:11, 58:1
**requested** [3] - 32:14, 42:13, 43:25
**requesting** [3] - 55:22, 56:17, 57:25
**requests** [3] - 13:2, 13:7, 14:2
**require** [3] - 44:1, 45:24, 52:11
**required** [2] - 49:12,

*65:12*
**requirement** [3] - 27:3, 30:19, 63:4
**requirements** [1] - 63:11
**requires** [2] - 11:23, 45:21
**requiring** [1] - 30:9
**reschedule** [1] - 35:5
**resist** [1] - 22:2
**resisting** [1] - 63:13
**resolution** [2] - 52:10, 56:16
**resolvable** [1] - 50:9
**resolve** [10] - 18:16, 46:12, 46:13, 48:5, 50:1, 51:22, 52:2, 54:3, 69:8
**resolved** [5] - 5:18, 31:19, 43:22, 52:7, 57:23
**resolving** [1] - 48:2
**resources** [4] - 22:13, 45:18, 63:6, 68:13
**respect** [10] - 19:7, 20:21, 31:21, 46:3, 48:8, 52:12, 55:20, 55:22, 57:25, 58:1
**respectfully** [1] - 65:23
**respond** [13] - 10:24, 13:18, 13:19, 14:16, 27:23, 28:6, 41:16, 46:25, 47:9, 61:18, 63:18, 65:9, 67:7
**responded** [2] - 28:15, 50:20
**response** [11] - 6:24, 15:16, 18:15, 31:2, 41:2, 54:19, 55:4, 55:6, 58:5, 58:18, 59:5
**responsibility** [3] - 6:17, 38:8, 38:12
**responsible** [1] - 40:20
**responsive** [1] - 29:11
**rest** [3] - 23:10, 25:10, 36:22
**result** [2] - 44:19, 69:3
**results** [1] - 6:18
**resume** [1] - 8:16
**resumed** [2] - 16:25, 18:2
**RET** [1] - 1:11
**return** [1] - 10:8
**returnable** [1] - 58:9
**review** [1] - 42:15
**reviewing** [1] - 45:2
**revised** [2] - 31:12,

*36:5*
**Riffenburg** [3] - 54:10, 56:19, 57:11
**Righteous** [1] - 59:8
**rights** [1] - 62:2
**ripe** [1] - 14:8
**rise** [1] - 57:9
**risk** [1] - 37:1
**RMR** [1] - 70:12
**Road** [3] - 2:14, 2:22, 3:3
**Robert** [2] - 4:1, 57:24
**ROBERT** [1] - 1:10
**Roseland** [1] - 1:15
**Roszel** [1] - 2:22
**RPR** [1] - 70:12
**RUBEN** [1] - 1:17
**Ruben** [1] - 7:15
**rule** [2] - 64:10, 64:17
**Rule** [16] - 12:16, 13:2, 14:6, 14:12, 18:13, 21:19, 23:2, 27:15, 28:14, 28:20, 29:12, 63:7, 63:11, 64:6, 65:13
**ruled** [1] - 24:14
**rules** [2] - 23:2, 30:1
**ruling** [6] - 44:12, 51:6, 62:12, 65:21, 65:23, 68:3
**run** [2] - 11:20, 44:13
**running** [1] - 63:21

**S**

**Sachs** [1] - 53:13
**safe** [1] - 69:22
**save** [1] - 42:14
**savvy** [1] - 8:24
**scattered** [1] - 51:24
**scenario** [1] - 69:11
**schedule** [8] - 12:12, 31:19, 34:13, 42:1, 42:5, 43:4, 46:4, 48:1
**scheduled** [3] - 11:23, 15:10, 34:4
**Schneider** [4] - 8:15, 14:20, 14:25, 47:17
**scope** [4] - 10:17, 13:18, 26:6, 60:25
**search** [2] - 44:13, 44:18
**seated** [1] - 33:17
**second** [8] - 12:15, 23:18, 26:3, 26:8, 26:11, 26:19, 26:24, 58:11
**secondarily** [1] - 68:13
**section** [1] - 49:15

**see** [24] - 12:12, 18:12, 20:6, 21:8, 21:12, 23:7, 30:10, 31:4, 31:5, 36:20, 37:16, 38:6, 38:10, 48:13, 50:15, 57:16, 59:23, 60:1, 62:1, 62:3, 62:8, 62:9, 62:15, 62:24
**seeing** [1] - 68:25
**seek** [3] - 57:19, 58:11, 64:19
**seem** [1] - 57:8
**select** [1] - 67:14
**selected** [3] - 65:18, 65:25, 67:13
**selection** [4] - 23:6, 26:21, 60:4, 67:15
**Selma** [1] - 58:21
**Semmel** [3] - 7:24, 11:4
**Semmel's** [1] - 8:19
**send** [5] - 7:3, 10:4, 17:3, 39:23, 67:1
**sending** [1] - 4:13
**senior** [2] - 7:25, 10:2
**sent** [1] - 39:19
**Sentry** [1] - 2:18
**serious** [1] - 24:5
**serve** [2] - 15:2, 51:7
**served** [1] - 14:23
**service** [8] - 50:5, 50:16, 50:19, 51:1, 51:10, 51:11, 51:13, 59:19
**session** [1] - 12:11
**Seth** [4] - 4:21, 17:11, 48:9, 51:17
**SETH** [1] - 2:9
**setup** [1] - 24:5
**seven** [9] - 8:11, 10:13, 10:18, 37:24, 40:9, 44:10, 44:16, 44:23, 58:24
**seven-hour** [1] - 10:18
**several** [5] - 6:12, 32:8, 32:10, 39:13, 49:16
**shah** [1] - 35:3
**Shah** [2] - 31:25, 32:4
**SHAH** [7] - 2:22, 31:24, 32:2, 32:4, 32:7, 35:4
**shakes** [1] - 62:15
**Sheet** [3] - 13:25, 14:1, 14:18
**Sheets** [1] - 14:18
**sheets** [2] - 14:20, 14:25
**short** [2] - 32:24,

49:11
**show** [7] - 57:19,
57:25, 58:1, 58:4,
58:8, 68:25, 69:4
**showed** [1] - 49:22
**showing** [1] - 43:23
**siblings** [1] - 10:13
**side** [17] - 8:21, 9:4,
9:7, 9:15, 13:14,
29:4, 30:11, 45:15,
46:24, 47:5, 48:7,
61:21, 62:5, 63:1,
63:8
**sides** [3] - 46:25,
47:21, 68:16
**signed** [1] - 40:17
**significant** [2] - 33:5,
35:6
**signing** [1] - 38:9
**silence** [1] - 4:6
**similar** [2] - 20:2,
66:23
**simply** [7] - 9:5, 21:19,
29:10, 31:4, 44:15,
46:5, 61:3
**single** [6] - 25:25,
27:17, 66:12, 66:19,
67:25, 68:4
**six** [9] - 8:6, 10:12,
26:7, 26:9, 58:2,
58:3, 62:13, 66:23,
67:22
**size** [3] - 26:13, 27:21,
67:3
**skeptical** [1] - 33:2
**Slater** [15] - 5:3, 5:7,
6:21, 17:1, 23:15,
23:19, 23:21, 28:7,
32:22, 35:14, 35:24,
46:20, 49:8, 60:8,
65:25
**SLATER** [19] - 1:13,
1:14, 5:6, 17:1, 17:8,
23:15, 23:21, 32:22,
33:1, 34:23, 35:14,
46:19, 46:23, 49:8,
52:18, 60:7, 60:10,
69:19, 70:2
**Slater's** [4] - 21:8,
29:14, 61:18, 67:10
**slide** [2] - 24:3, 24:4
**slipping** [1] - 29:14
**small** [1] - 28:25
**smaller** [1] - 26:6
**SMITH** [1] - 3:2
**Solco** [1] - 2:11
**solvents** [1] - 38:17
**someone** [2] - 22:6,
27:9
**sometimes** [2] - 8:10,

27:8
**somewhat** [1] - 51:19
**soon** [1] - 19:21
**sooner** [1] - 18:17
**sorry** [6] - 25:15,
30:14, 30:16, 32:3,
56:24
**sort** [2] - 29:16, 62:1
**sought** [2] - 45:22,
54:9
**sound** [2] - 38:20,
68:10
**sounds** [3] - 38:19,
54:20, 69:6
**sources** [1] - 33:10
**South** [1] - 2:9
**SPEAKER** [3] - 16:5,
16:17, 53:8
**speaking** [4] - 4:6,
4:7, 4:20, 4:24, 5:4,
5:7, 5:12, 7:22, 11:8,
18:6, 19:13
**SPECIAL** [1] - 1:11
**Special** [1] - 4:2
**special** [1] - 11:6
**specific** [5] - 32:12,
32:17, 44:1, 51:20,
64:8
**specifically** [3] -
14:19, 19:14, 37:2
**specifications** [2] -
38:11, 38:16
**specified** [1] - 20:13
**spending** [2] - 63:6,
68:10
**spreadsheet** [2] -
50:7, 50:15
**squished** [1] - 42:5
**stage** [4] - 15:2, 27:11,
27:18, 64:23
**stand** [2] - 19:8,
31:21, 35:12
**standard** [3] - 28:20,
34:7, 49:22
**standpoint** [2] - 24:6,
30:8
**start** [13] - 5:13, 5:14,
6:10, 6:11, 7:1, 11:4,
11:7, 11:8, 15:14,
50:13, 51:3, 69:24
**started** [5] - 4:5, 6:13,
9:14, 22:14, 42:3
**starting** [1] - 6:10
**starts** [1] - 46:24
**state** [1] - 61:4
**states** [3] - 24:8,
60:14, 61:5
**STATES** [2] - 1:1, 1:10
**States** [1] - 4:2
**status** [1] - 31:14,

31:15, 35:11, 36:5,
39:8, 50:8, 53:17,
57:20, 58:4, 59:13,
60:5
**STATUS** [1] - 1:6
**stay** [2] - 69:21, 69:22
**stenography** [1] -
1:24
**step** [1] - 31:5
**steps** [2] - 33:5, 55:13
**Steve** [1] - 55:10
**STEVEN** [1] - 2:14
**Steven** [1] - 54:1
**still** [12] - 17:9, 18:10,
22:10, 22:19, 22:25,
23:19, 40:21, 53:15,
61:21, 62:4, 65:20,
65:21
**stipulated** [1] - 20:17
**stipulation** [3] - 39:19,
39:23, 40:3
**Stone** [1] - 58:21
**straightened** [1] -
12:3
**straightforward** [3] -
51:14, 51:23, 52:10
**Street** [3] - 1:17, 2:6,
2:9
**Streets** [1] - 1:7
**strict** [1] - 24:11
**strikes** [3] - 26:20,
36:22, 43:21
**stuff** [1] - 53:10
**stymied** [1] - 16:15
**subject** [6] - 7:3, 9:19,
22:21, 23:11, 66:2,
68:22
**submission** [4] - 21:9,
47:10, 47:12, 62:21
**submit** [2] - 15:5,
19:20
**submitted** [3] - 21:11,
48:17, 62:20
**subsequent** [1] -
32:15
**substance** [1] - 15:6
**substantial** [1] - 62:15
**substantially** [1] -
54:5
**substantive** [1] -
42:17
**subsumed** [2] - 24:16,
60:23
**subsumes** [1] - 60:18
**subsumption** [1] -
22:23
**suffices** [1] - 7:3
**sufficient** [1] - 43:22
**suggest** [2] - 17:2,
22:3

**suggested** [1] - 60:12
**suggestion** [1] - 47:23
**Suite** [5] - 1:17, 1:20,
2:3, 2:14, 3:3
**summaries** [1] - 4:14
**summary** [1] - 64:8
**sunny** [1] - 53:5
**superiors** [1] - 49:1
**supplemented** [1] -
57:6
**supposed** [1] - 34:4
**Supreme** [1] - 60:20
**surmising** [1] - 18:8
**surprise** [2] - 15:8,
49:14
**surprised** [1] - 48:12
**surprisingly** [1] - 62:6
**Swedesboro** [1] - 3:3
**system** [2] - 23:5,
28:23

---

## T

**Tang** [1] - 49:4
**targeted** [1] - 38:7
**tech** [2] - 8:4, 8:24
**technical** [4] - 10:8,
12:1, 16:16, 33:21
**technological** [1] -
10:21
**technology** [3] - 6:14,
7:4, 10:3
**tee** [1] - 59:25
**teed** [2] - 46:12, 50:21
**teleconference** [1] -
53:1
**TELEPHONIC** [1] - 1:5
**telephonic** [1] - 37:4
**ten** [2] - 66:24, 67:22
**Tennessee** [1] - 24:9
**tens** [1] - 33:18
**terms** [13] - 13:18,
14:4, 21:25, 26:8,
26:12, 28:12, 34:16,
38:11, 44:13, 44:19,
65:12, 65:14, 67:24
**terrible** [1] - 8:15
**test** [1] - 11:20
**testify** [1] - 42:12
**testing** [2] - 11:20,
43:14
**Teva** [5] - 2:15, 2:16,
12:23, 47:7, 54:1
**thankfully** [1] - 6:13
**that'd** [1] - 31:7
**THE** [15] - 1:1, 1:10,
1:11, 4:9, 15:20,
16:13, 16:20, 17:18,
18:4, 25:15, 25:17,
28:3, 28:5, 30:14,
32:3

**themselves** [2] - 5:2,
59:24
**Theodore** [1] - 53:12
**theories** [1] - 61:11
**they've** [6] - 32:19,
36:15, 47:11, 49:21,
67:4, 67:16
**think's** [1] - 67:4
**this-one-size-fits-all**
[1] - 67:3
**Thomas** [1] - 4:3
**THOMAS** [2] - 1:11,
1:19
**Thompson** [2] - 58:20,
58:21
**thousands** [1] - 33:18
**three** [1] - 38:18
**threw** [2] - 23:24
**throughout** [3] -
39:17, 45:2, 69:5
**thrown** [1] - 45:12
**timeline** [3] - 40:14,
41:10, 42:7
**timely** [1] - 62:17
**timing** [1] - 44:3
**titles** [1] - 38:1
**today** [22] - 4:8, 4:19,
5:1, 7:3, 10:19,
19:14, 20:17, 29:22,
30:7, 31:12, 31:21,
32:16, 36:22, 37:4,
42:20, 46:7, 54:10,
54:22, 55:21, 59:17,
62:17, 69:21
**together** [2] - 19:15,
34:10
**tomorrow** [2] - 32:16,
46:7
**took** [1] - 48:10
**topics** [2] - 5:8, 5:10
**torts** [1] - 27:5
**touch** [2] - 43:3, 53:20
**tough** [1] - 50:14
**towards** [2] - 45:18,
52:10
**transcript** [3] - 1:24,
37:18, 70:9
**transcription** [1] -
1:25
**transcripts** [1] - 15:5
**Traurig** [5] - 12:20,
12:23, 21:3, 54:1,
61:18
**TRAURIG** [1] - 2:12
**trial** [7] - 12:16, 20:20,
21:24, 26:5, 26:6,
62:21, 66:22
**trouble** [1] - 30:7
**troubleshoot** [1] -
16:1

**Trowbridge** [2] - 54:10, 56:19
**trust** [3] - 28:23
**try** [5] - 13:17, 28:19, 43:21, 49:18, 54:18
**trying** [5] - 24:3, 30:10, 40:8, 55:2, 55:5
**tune** [1] - 18:9
**turn** [2] - 33:10, 33:15
**turned** [1] - 10:5
**two** [17] - 10:10, 15:6, 25:18, 33:16, 44:13, 47:11, 48:14, 48:21, 49:1, 49:11, 50:3, 50:24, 51:4, 57:22, 57:25, 59:25
**two-hour** [1] - 10:10
**two-part** [1] - 50:24
**type** [4] - 11:24, 66:13, 66:25, 68:3
**typically** [2] - 26:5, 67:8

**U**

**U.S** [3] - 1:7, 2:11, 40:12
**unclutter** [1] - 55:5
**undecidedly** [1] - 37:9
**under** [7] - 21:19, 28:20, 29:11, 60:17, 61:10, 64:17, 66:3
**underway** [1] - 28:12
**unduly** [2] - 40:15, 41:7
**unfairly** [1] - 41:7
**unforeseen** [1] - 16:16
**unfortunate** [1] - 6:12
**unfortunately** [1] - 12:1
**UNIDENTIFIED** [3] - 16:5, 16:17, 53:8
**unilateral** [1] - 68:24
**unilaterally** [9] - 21:20, 22:11, 22:17, 29:10, 63:4, 63:10, 64:9, 64:17, 69:2
**unique** [1] - 54:21
**UNITED** [2] - 1:1, 1:10
**United** [1] - 4:2
**unless** [3] - 28:17, 28:18, 48:18
**unlikely** [1] - 34:9
**unnecessary** [1] - 30:24
**unreasonable** [2] - 41:8, 41:13
**unrelated** [1] - 10:15
**unsuccessful** [1] - 8:3
**up** [16] - 12:2, 18:12,

22:15, 26:6, 36:4, 37:18, 42:3, 42:5, 45:8, 46:12, 47:17, 50:21, 55:2, 59:16, 59:25, 64:1
**update** [1] - 56:15
**updates** [1] - 57:22
**urge** [1] - 52:9
**USA** [2] - 2:16, 2:20
**useable** [1] - 33:20
**utilize** [1] - 63:24

**V**

**vacate** [2] - 53:14, 54:7
**Valley** [1] - 7:25
**Valsartan** [5] - 20:3, 20:6, 24:20, 51:1, 51:6
**VALSARTAN** [1] - 1:4
**valsartan** [1] - 50:19
**Vanaskie** [8] - 4:3, 59:23, 61:21, 61:25, 62:18, 63:1, 66:7, 67:11
**VANASKIE** [84] - 1:11, 4:4, 4:11, 4:25, 5:3, 5:11, 5:24, 6:3, 6:6, 7:12, 7:17, 8:13, 10:23, 11:13, 12:25, 13:9, 13:13, 13:21, 14:13, 15:21, 15:25, 16:4, 16:6, 16:11, 16:15, 16:18, 16:22, 17:7, 17:13, 17:19, 17:21, 17:23, 17:25, 18:3, 18:5, 18:19, 18:22, 18:25, 19:4, 19:22, 20:18, 20:24, 21:5, 23:12, 23:18, 25:14, 25:16, 25:20, 27:25, 30:4, 30:15, 30:25, 31:3, 32:1, 32:6, 32:20, 32:25, 34:15, 34:24, 35:9, 35:20, 36:3, 36:11, 39:2, 39:6, 41:14, 41:19, 43:8, 43:19, 45:4, 45:20, 46:10, 46:22, 47:4, 47:23, 48:16, 49:6, 49:25, 51:14, 52:4, 52:6, 52:9, 52:19, 52:23
**various** [2] - 24:7, 64:2
**vast** [1] - 27:5
**vendor** [2] - 6:14, 6:17
**Veritext** [2] - 6:14, 8:4
**version** [2] - 19:20, 40:1

**vertically** [1] - 37:14
**Victoria** [2] - 12:22, 47:6
**VICTORIA** [1] - 2:13
**view** [5] - 11:1, 11:14, 29:18, 29:20, 51:25
**viewpoint** [1] - 14:5
**visual** [2] - 7:9, 11:11
**vital** [1] - 62:16
**vitally** [2] - 22:25, 29:13
**voice** [1] - 27:18
**VOICE** [14] - 18:18, 19:12, 20:5, 20:15, 20:23, 21:21, 23:14, 23:17, 23:20, 35:25, 39:9, 41:17, 52:5, 65:15
**voiced** [1] - 66:19
**voices** [1] - 25:18
**voluntarily** [1] - 55:13
**voluntary** [1] - 55:15

**W**

**W-A-L-L-A-C-K** [1] - 6:4
**wait** [2] - 15:12, 62:1
**waiting** [2] - 11:15, 52:23
**waiver** [1] - 51:21
**waiving** [1] - 62:2
**walk** [1] - 40:5
**wall** [1] - 45:9
**Wallace** [2] - 5:22, 6:2
**WALLACK** [1] - 2:21
**Walsh** [1] - 58:20
**Wang** [1] - 49:3
**wants** [3] - 32:20, 53:24, 68:16
**warn** [2] - 25:1, 60:25
**warrants** [1] - 34:18
**warranty** [4] - 24:17, 24:21, 60:18, 61:10
**waste** [1] - 26:23
**wasting** [1] - 64:13
**Watts** [1] - 57:1
**Wayne** [1] - 3:4
**Wednesday** [2] - 13:4, 13:19
**week** [11] - 13:19, 14:9, 26:10, 34:4, 34:9, 35:6, 35:8, 36:16, 39:12, 48:10, 67:1
**weeks** [4] - 15:6, 44:15, 59:25, 62:9
**welcome** [1] - 47:18
**Welsh** [1] - 53:13
**WERNER** [1] - 2:17
**wherein** [1] - 34:4

**whole** [1] - 45:3
**wholly** [1] - 10:14
**Wilcox** [1] - 59:8
**Williams** [1] - 59:8
**WILLIAMSON** [5] - 2:6, 54:12, 55:1, 55:24, 56:10
**Williamson** [2] - 54:13, 55:25
**willing** [8] - 29:3, 29:23, 32:23, 40:3, 41:25, 42:9, 45:11, 62:7
**willingness** [1] - 41:22
**winnowed** [1] - 28:25
**winnowed-down** [1] - 28:25
**wiping** [1] - 33:20
**wish** [1] - 16:6
**withdraw** [2] - 68:12, 68:18
**witness** [5] - 6:18, 7:8, 34:5, 35:16
**witnesses** [5] - 6:9, 11:9, 42:10, 49:20, 49:22
**witnesses'** [1] - 15:9
**wording** [1] - 68:3
**words** [1] - 7:6
**works** [1] - 36:2
**worms** [1] - 47:8
**worried** [1] - 57:15
**wrapped** [1] - 59:16
**write** [1] - 12:9

**X**

**Xu** [1] - 49:4

**Y**

**year** [1] - 13:23
**yesterday** [7] - 21:11, 35:17, 39:22, 39:24, 40:1, 48:14, 53:15
**yourself** [3] - 4:7, 5:12

**Z**

**Zhejiang** [1] - 2:11
**ZHP** [3] - 4:22, 48:3, 48:20
**Zoom** [12] - 6:9, 6:11, 7:6, 8:1, 8:23, 9:6, 11:3, 11:9, 11:18, 12:11, 16:2, 16:3