UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY  LITIGATION<br><br>This Document Relates to All Actions | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Special Master, The Honorable Thomas I. Vanaskie |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' DEPOSITIONS OF CHINESE NATIONAL WITNESSES**

**I.       INTRODUCTION**

It is unfair to ask witnesses questions based on documents they cannot read. Witnesses have the right to avoid giving speculative testimony.  Each party assumes its own costs of litigation.  These are basic principles of American law and legal practice.  Consistent with these principles, this Court ordered Plaintiffs to treat ZHP Chinese national witnesses fairly, and to put them in the equivalent position of an English speaking witness when being asked about English language documents.  Because Plaintiffs have refused to comply with the Court's order, which was grounded in those basic principles, the ZHP Parties were forced to file for a protective order.

In their opposition, Plaintiffs do not mention *even once* the requirement of fairness to foreign national witnesses who do not speak or read English. Instead of addressing the Court's order or basic principles of American law and legal practice, Plaintiffs' opposition is filled with misleading rehash of the procedural history in this case. The opposition contains zero legal argument, apart from mischaracterizing the cases that the ZHP Parties cited in its opening brief and making a wholly implausible argument on judicial estoppel. Therefore, the Court should grant the protective order.

## II.   ARGUMENT

### A.   The ZHP Parties never agreed, and the Court did not endorse, the use of unintelligible translations.

The Court found that requiring witnesses to rely on sight translations, without the ability to review the documents about which they were being questioned, was unfair. The Court ruled that, as a "matter of fairness," the witnesses must be presented with accurate translations that they could review when asked questions about English-language documents. *See* 4-1-21 Hrg. Tr. at 24:20-22, 30:17-19.

In their opposition, Plaintiffs never rebut the plain fact that questioning witnesses about documents they cannot read is unfair. Notably, Plaintiffs never dispute that Reverso simply does not produce accurate machine translations, and never mention the Ruthenberg declaration establishing that Reverso is a

2

nonprofessional, inaccurate translation service. In fact, Plaintiffs repeatedly instructed the ZHP Parties' witnesses *to not rely on the Reverso translations in answering questions during their depositions*. *See* Ex. A at 133:12-20, 133:21-24, 134:1-6 (Qiangming Li Deposition 4-14-21). The translations are facially unintelligible, and there is no better demonstration of their unreliability than Plaintiffs' own repeated concessions on this point. Examples of facially unintelligible translations from Chinese to English, and from English to Chinese, introduced during Qiangming Li's deposition are attached as Exhibits B and C. However, Plaintiffs, either to save costs or to gain an unfair advantage, are nonetheless intent on questioning witnesses about inadequately translated documents.

The Court did not issue its order that Chinese national witnesses be placed in an "in the equivalent position [as if] they spoke the language in which the document they're being questioned on is written" so that Plaintiffs could simply introduce unintelligible documents and then instruct the witnesses not to rely on them. *See* 4-1-21 Hrg. Tr. 30:23-25. That is a plain attempt to defang the Court's order and would render it meaningless.

Moreover, Plaintiffs do not point to a single case demonstrating a court's endorsement of the use of an unintelligible translation when questioning a

3

witness.[1]  Therefore, the core of the ZHP Parties' motion for a protective order—that it is unfair and discriminatory for ZHP Chinese national witnesses to be forced to answer questions about machine-translated documents they cannot adequately review—stands uncontested.

Discovery is about "the search for truth."  *See In re Madden*, 151 F.3d 125, 127 (3d Cir. 1998).  Following this principle, witnesses must be treated fairly, and not bullied, manipulated, or handicapped in providing answers to questions. Plaintiffs want to ignore the Court's order in order to play "gotcha" with the ZHP Parties' witnesses with unintelligible documents.

Plaintiffs' main argument, which it repeats throughout its opposition, is that there is not "a single instance where Plaintiffs have misrepresented the content of an English document to a witness or otherwise sought to take unfair advantage of the translation issue in any way."  ECF 1188 at 2. This is incorrect.  First, during Minli Zhang's deposition, the ZHP Parties objected and appropriately insisted that that the interpreter must translate an entire email chain for Ms. Zhang because

---

[1] It is telling that Plaintiffs never explain why Plaintiffs' counsel had to use Qiangming Li *to read into the record* a Chinese document so that the deposition interpreter could translate the document into English for Plaintiffs' counsel in order to allow Plaintiffs' counsel—who possessed only a Reverso translation of the Chinese document—to ask a question about the document.  *See* Ex. D at 364:3-7 (Qiangming Li Deposition 4-16-21).  If Plaintiffs' counsel cannot himself rely on Reverso translations *to ask* questions about documents, how possibly can the ZHP Parties' witnesses be asked *to answer* questions about those documents?

4

Plaintiffs' counsel was in a question to Ms. Zhang mischaracterizing the English portion of an email. *See* Ex. E at 321:2-24, 325:1-9 (Minli Zhang Deposition 3-24-21) ("[G]iven the fact that you just mischaracterized in your prior question what this e-mail actually says, do you have a Chinese version of this entire e-mail for Ms. Zhang?"). Second, inaccurate Reverso machine translations *inherently misrepresent the content of documents*, and forcing a ZHP Party witness to answer questions about inaccurately translated documents *inherently gives Plaintiffs an unfair advantage* because it is as if the witness is testifying on no translation at all. *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000) (holding an inaccurate translation is "the functional equivalent of no translation.").

    Plaintiffs cannot escape the inherent absurdity of showing a witness a translated document but then telling the witness not to rely on the translation. Plaintiffs did this repeatedly in their deposition of Qiangming Li. *See* Ex. A at 127:9-11; 133:12-20; 135:15-23; Ex. D 417:13-14. The Court did not endorse this process, and ZHP never agreed to it.

    While Plaintiffs assert that "ZHP has had months to prepare for these depositions," ECF 1188 at 8, what Plaintiffs fail to mention is that *every single document* introduced in the Qiangming Li and Peng Dong depositions was produced by the ZHP Parties on or before December 1, 2020, and only three of the documents used in the Minli Zhang deposition were produced in 2021. *See* Ex. F

5

(list of production dates for exhibits). Thus, the salient point is that Plaintiffs have had months, and in some cases years, with these documents, and nothing was precluding them from generating accurate, professional translations for use at depositions. The ZHP Parties and their Chinese national witnesses should not be prejudiced because of Plaintiffs' procrastination and lack of diligence.

### B. Plaintiffs' estoppel argument fails.

Plaintiffs argue that the ZHP Parties are effectively "estopped" from seeking a protective order because this Court ruled in the ZHP Parties' favor in requiring Plaintiffs to provide Chinese national witnesses with machine translations of documents. In reality, it is Plaintiffs who seek to avoid the Court's order. Plaintiffs argue that accurate translations are unnecessary because "ZHP's human translator who can translate anything upon request." ECF 1188 at 2. In other words, despite this Court's ruling to the contrary, Plaintiffs insist that sight translation is good enough.

The ZHP Parties have consistently maintained that requiring a witness to answer a question based on a document the witness cannot read is inherently unreliable, unfairly prejudicial, and produces inadmissible testimony. *See* ECF 1174-2; Hrg. Tr. 4-12-21 at 9:3-7 ("[A] Chinese witness should not have to be deposed and asked about a document that a Chinese witness can't read."); Hrg. Tr. 4-7-21 at 23:1-4 ("[T]his is an issue of fairness to the witness… The witness can't

6

answer questions about a document the witness can't read."); Hrg. Tr. 4-1-21 at 14:15-17 ("[The witnesses] have the right to look at a document that they are being asked about, to determine what the document is, what the context for the document is."); Hrg. Tr. 3-29-21 at 44:4-7 ("It is simply unfair to suggest that a witness who doesn't speak the language of a document be asked to answer questions about the document, even if, even if it's a document from the party itself.").

Accordingly, the ZHP Parties seek a protective order to *enforce* this Court's order that Chinese national witnesses be put "in the equivalent position [as if] they spoke the language in which the document they're being questioned on is written." *See* 4-1-21 Hrg. Tr. 30:23-25. The ZHP Parties' motion for a protective order is a request that the Court enforce its order in light of the clear fact that Plaintiffs' Reverso translations are "the functional equivalent of no translation." *Perez-Lastor*, 208 F.3d at 778. Indeed, this Court recognized that the ZHP Parties have preserved their objection as to the accuracy of basic machine translation systems like Reverso. *See* 4-7-21 Hr. Tr. at 17:2-8.

Against all of this, Plaintiffs argue only that "ZHP is asking for the Court to reconsider a ruling that ZHP obtained. ZHP should be judicially estopped from now seeking reconsideration of a ruling that it obtained." ECF 1188 at 2. Plaintiffs cite *Segal v. Strausser Enterprises, Inc.* without mentioning the standard

7

for judicial estoppel. *See* 486 F. App'x 240, 242-43 (3d Cir. 2012). Notably, "reconsideration of a ruling" is not the standard for judicial estoppel.

"[J]udicial estoppel may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 781 (3d Cir. 2001). Judicial estoppel is found only if "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the courts authority or integrity." *Id.* at 777-78.

Here, there is no prior proceeding where the ZHP Parties have encouraged witnesses who do not speak Chinese to answer questions based on documents written in English and not accompanied with an accurate and complete translation in Chinese. The ZHP Parties have remained consistent throughout this entire proceeding. *See* Hrg. Tr. 4-12-21 at 9:3-7; Hrg. Tr. 4-7-21 at 23:1-4; Hrg. Tr. 4-1-21 at 14:15-17; Hrg. Tr. 3-29-21 at 44:4-7. Thus, the ZHP Parties have not changed positions at all, let alone in bad faith. The ZHP Parties have consistently sought to uphold the integrity of this proceeding by ensuring the Chinese national witnesses are treated fairly and without prejudice. ECF 1174-2 at 1 ("[Q]uestioning a witness about a document the witness cannot read because it is

written in a language the witness does not speak would be unfair and prejudicial");

ECF 1102 at 7.

Finally, the use of judicial estoppel is inappropriate because the Court's authority or integrity has not been threatened. The ZHP Parties have filed the instant motion because Plaintiffs' Reverso translated documents prejudice and discriminate against the witnesses and have resulted in, and will continue to result in, inadmissible evidence. ECF 1174-2 at 3.

Neither as a matter of law – or simple logic – can the the ZHP Parties be stopped from insisting that Plaintiffs conform to the Court's earlier directives.

**C.  Plaintiffs mischaracterize the record and the law.**

Plaintiffs are now forced to argue that the ZHP Parties' own prior requests that ZHP Party witnesses be questioned only on accurately translated documents were in fact requests by ZHP for machine translations *like* Reverso. The ZHP Parties, however, repeatedly made it clear that when it mentioned the *possibility* of using "machine translations," ZHP did not have in mind nonprofessional, low-grade and inaccurate machine translation services like Google Translate or Reverso. This Court recognized that ZHP preserved its objection to nonprofessional translation services like Reverso. Hrg. Tr. 4-7-21 at 16:17-18.

Plaintiffs pretend that the ZHP Parties' motion for a protective order came unexpectedly, and was the result of a fickle change of mind "[s]even days" after a

9

hearing.  Aside from resting on the misapprehension that the ZHP Parties consented to Plaintiffs' use of a nonprofessional machine translation service like Reverso, Plaintiffs conveniently leave out the fact that in those intervening seven days they took a five-day deposition of Qiangming Li, who was hampered by the use of inaccurate Reverso machine translations.  The transcript of that deposition establishes that Reverso translations are not a workable, or fair, solution.  ECF 1174-2 at 9-18.

Plaintiffs also assert that "ZHP previously represented that it translated every Mandarin document into English before it was produced to Plaintiffs."  ECF 1188 at 2.  This is false.  Plaintiffs cite to transcripts that involve a completely unrelated discovery issue, which does not apply to this deposition exhibit translation issue.  Additionally, Plaintiffs misrepresent the context of what the ZHP Parties said during these hearings.

In the first transcript Plaintiffs cite, the ZHP Parties simply acknowledged how long it would take to review all the documents Plaintiffs requested considering *some* would have to be translated.  *See* Hrg. Tr. 12-1-19 at 89:12-13 (stating "the cost of a dollar per page for some of these documents to be translated" would be time consuming).  As for the second transcript cited by Plaintiffs, the ZHP Parties clarified that certain documents would need to be translated to ensure documents protected by Chinese state secrecy laws were not turned over to

Plaintiffs. *See* Hrg. Tr. 15:8-24. Thus, Plaintiffs mischaracterized what occurred during these hearings.

Plaintiffs assert that "[i]t is also not credible for ZHP's counsel to claim there is no way to link its translations to the Mandarin documents" and "defendant counsel is not wasting its client's resources by having its attorneys spend significant amounts of time sifting through documents to find the translations they need to conduct substantive legal work." ECF 1188 at 3. First, as the ZHP Parties told Plaintiffs and represented to the Court numerous times, if a document had been translated in the ordinary course of business, that translation has already been produced to Plaintiffs. *See* ECF. 1140 ("Responsive documents translated by the ZHP Parties during the ordinary course of business were produced just like any other responsive document, but, as we have informed Plaintiffs, we are in no better position of identifying those documents in the ZHP Parties' production than Plaintiffs."); Hrg. Tr. 4-12-21 at 19:8-10; Hrg. Tr. 4-7-21 at 18:11-15.

Second, as the ZHP Parties previously explained when asked by the Court about what would be involved in identifying Chinese translations of English documents, this process "would require attorneys to manually review the production [of approximately 360,000 English documents] and that would take months of attorney time at a cost of millions of dollars . . . [and] would require doing searches of documents using Chinese characters to try to determine and then

11

match up whether a document written in Chinese, if it even exists, is truly a translated version of an English document." Hrg. Tr. 4-12-21 at 3:8-17. This was never required when the parties negotiated the ESI protocol, and this Court has ruled that it is not required now. Hrg. Tr. 4-12-21 at 3:18-25. The Court ruled: "I'm not going to require ZHP to identify every English-speaking document that has been translated to Mandarin." Hrg. Tr. 4-14-21 at 6:13-15.

Plaintiffs have represented that they have retained bilingual document reviewers to assist them in this case. The added cost of translating the English documents they want to show the handful of witnesses who do not read English does not outweigh the due process, equal protection, and admissibility concerns resulting from presenting those witnesses with documents they cannot read. Again, the party who notices the deposition bears the obligation to translate those documents about which it wishes to question a foreign witness about, and ZHP is under no obligation to assist Plaintiffs with those translations. *See In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 508 (1st Cir. 1982) ("[T]he requesting party should do the translating."); *Dude v. Cong. Plaza, LLC*, No. 17-80522-CIV, 2019 WL 3937974, at *3 (S.D. Fla. Aug. 20, 2019) (noting that for a deposition of a German-speaking witness, the noticing party "will need to have documents translated and obtain a translator and court reporter"); *Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, No. CV 02-09326-MMM (SHSX), 2003 WL

12

27384422, at *7 (C.D. Cal. Aug. 15, 2003) ("The party seeking discovery generally bears the costs of translation services."); *E. Bos. Ecumenical Cmty. Council, Inc. v. Mastrorillo*, 124 F.R.D. 14, 15 (D. Mass. 1989) (placing the costs of translation on the party noticing the deposition).[2]

Plaintiffs make a weak attempt to distinguish the cases cited by ZHP in its initial brief without ever rebutting the fundamental principles of those cases: that Google Translate and Reverso are the equivalent of *no translation*; that nonprofessional translations and testimony thereon cannot be admitted *as evidence*; and that questioning witnesses about documents that are only Google or Reverso translated *is unfair and discriminatory*.[3]

---

[2] Oddly, Plaintiffs fault ZHP for sometimes citing to unpublished cases, yet the single case that Plaintiffs cite in their entire opposition brief, *Segal v. Strausser Enterprises, Inc.*, 496 F. App'x 240 (3d Cir. 2012), *is an unpublished case*.

[3] First, they characterize *Sec. & Exch. Comm'n v. Shaohua Yin*, No. 17-CV-972 (JPO), 2020 WL 6801915 (S.D.N.Y. Nov. 19, 2020) as requiring the defense counsel to "'engage professional translators, interpreters, and third-party vendors' to respond to the SEC's discovery requests." ECF 1188 at 6 (citing *id.* at *6). Of course, what Plaintiffs leave out is that the court in *Shaohua Yin* ordered defense counsel to engage a translator as a remedy for spoliation. *Id.* at *6. In issuing that order, the court held that machine translations like "Google Translate or other analogous automated services do not constitute professional translation or interpretation services." *Id.*

Plaintiffs also mischaracterize the relevance of *Consejo de Desarrollo Economico de Mexicali, AC v. United States*, 438 F. Supp. 2d 1207, 1226 (D. Nev. 2006), *rev'd on other grounds by* 482 F.3d 1157 (9th Cir. 2007). Plaintiffs admit that the court overruled the authentication objection in that case *because* the improperly translated documents *were not being offered as evidence*. ECF 1188 at 8, n.2. Yet

13

Plaintiffs' failure to arrange for accurate translations of documents despite the months, and in some cases the years, they had to do so is their own fault. The ZHP Parties and their witnesses should not be prejudiced and discriminated against because Plaintiffs did not do so and now simply want to proceed contrary to this Court's Order.

---

Plaintiffs have previously attempted to characterize these depositions as "trial depositions." *See* 3-29-21 Hrg. Tr. at 26:11-12. Although, contrary to Plaintiffs' belief, these are *not* "trial depositions," Plaintiffs' intention in this regard underscores the inequitable approach Plaintiffs are taking. *See Jiajie Zhu v. Jing Li*, No. 19-cv-02534-JSW, 2019 WL 6050961, at *5 (N.D. Cal. Nov. 15, 2019) ("A translated document must be properly authenticated, and any translation must be shown to be accurate and done by a competent translator."); *NV Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138 (NGG) (PK), 2017 WL 1905820, at *2 (E.D.N.Y. May 8, 2017) ("Plaintiffs are … must provide certified translations of any foreign language documents that they seek to introduce at trial."); *United States v. Gasperini*, No. 16-CR-441 (NGG), 2017 WL 3140366, at *4 (E.D.N.Y. July 21, 2017) ("[F]oreign language documents for which certified translations are not provided … will be held inadmissible at trial.").

Dated: April 27, 2021

        Respectfully submitted,

        By: /s/ Seth A. Goldberg

        DUANE MORRIS LLP
        30 South 17th Street Philadelphia,
        Pennsylvania 19103
        Tel.: (215) 979-1000
        Fax: (215) 979-1020
        SAGoldberg@duanemorris.com

        *Attorney for Zhejiang Huahai Pharmaceutical Co, Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare US, LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 27, 2021, I caused to be electronically filed the foregoing Reply Brief in Support of Motion for Protective Order Regarding Plaintiffs' Depositions of Chinese National Witnesses with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

                                            /s/ *Seth A. Goldberg*
                                            Seth A. Goldberg