# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | : : : Hon. Robert B. Kugler |
| _____ | : |
| This Document Relates to: | : Civil No. 1:19-md-2875-RBK-JS : |
| *All Actions* | : : |
| _____ | : |

## AUROBINDO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND SUPPRESS ALL OF AUROBINDO'S DEFENSES

Dated: May 7, 2021

CIPRIANI & WERNER PC

Jessica M. Heinz
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
JHeinz@c-wlaw.com
Telephone: (610) 567-0700
Facsimile: (610) 567-0712

MORGAN, LEWIS & BOCKIUS LLP

John P. Lavelle, Jr.
502 Carnegie Center
Princeton, NJ 08540
jlavelle@morganlewis.com
Telephone: (609) 919-6600
Facsimile (609) 919-6701

*Attorneys for Aurobindo Pharma USA, Inc., Aurolife Pharma, LLC, & Aurobindo Pharma, Ltd.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.   BACKGROUND .........................................................................3

    A.   The Aurobindo Defendants ..................................................3

    B.   Discovery Timeline .............................................................3

        1.   Aurobindo Provided Significant, Timely "Core Discovery" ...................................................................5

        2.   Aurobindo Preserved Documents and Made Rolling Productions...................................................................5

        3.   Aurobindo Has Worked to Cure Deficiencies and Supplement its Production .......................................7

        4.   The Aurobindo Defendants Have Engaged in Numerous Meet and Confers With Plaintiffs' Counsel in Good Faith .......9

        5.   Depositions of Aurobindo Witnesses Remain Open ..............11

III.  LEGAL ARGUMENT....................................................................11

    A.   Plaintiffs Have Not Shown That Spoliation of Any Relevant Documents Has Occurred..................................................12

        1.   Imperfect Litigation Holds Do Not Establish Spoliation ........13

        2.   Plaintiffs Have Not Established that Defendants Are Intentionally Withholding Critical Documents .......................16

        3.   Spoliation Cannot Be Inferred from Subsequent Supplemental Productions .......................................17

        4.   Even if Plaintiffs Identify Missing Documents, Plaintiffs' Proposed Sanctions Are Inappropriate Because Aurobindo Has Not Acted in Bad Faith....................................19

    B.   Plaintiffs Seek an Extraordinary Remedy That Is Simply Not Supported by the Facts .........................................................20

        1.   Dispositive Sanctions are Unwarranted Because Aurobindo Has Acted in Good Faith ..................................21

            a.   Aurobindo Has Not Made Knowing Misrepresentations to the Court.....................................21

i

# TABLE OF CONTENTS
(continued)

Page

b.    Defendants Have Repeatedly Conferred with
Plaintiffs in Good Faith to Resolve Disputes and
Correct Deficiencies ......................................................25

C.    Plaintiffs Have Not Been Prejudiced By Any of Aurobindo's
Alleged Discovery Shortcomings.........................................................27

D.    Precedent Cited by Plaintiffs in Support of Their Requested
Draconian Sanction is Distinguishable as Aurobindo Has Not
Engaged in Extreme Discovery Violations .......................................30

E.    Alternative Sanctions Are Also Unwarranted....................................31

1.    Plaintiffs' Request for Sanctions for Violation of Fed ............32

2.    Plaintiffs' Request for Discovery on the Issue of
Spoliation is Inappropriate Because Plaintiffs Have
Failed to Establish that Any Discovery Was Spoliated ...........33

3.    Plaintiffs' Requests for Aurobindo to Publicize Any
Potential Sanctions in Similar Proceedings Are Entirely
Punitive and Unjustified .........................................................34

IV.    CONCLUSION..........................................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Prods. & Chems. Inc. v. Wisemann*,
  No. 14-1425-SLR, 2017 WL 758417 (D. Del. Feb. 27, 2017)...........................13

*Baliotis v. McNeil*,
  870 F. Supp. 1285 (M.D. Pa. 1994)...................................................................20

*Bartos v. Pennsylvania*,
  No. 1:08-cv-0366, 2010 WL 1816674 (M.D. Pa. May 5, 2010).......................32

*Bensel v. Allied Pilots Ass'n*,
  263 F.R.D. 150 (D.N.J. 2009).....................................................................15, 19

*Boeynaems v. LA Fitness Int'l, LLC*,
  285 F.R.D. 331 (E.D. Pa. 2012)........................................................................12

*Brewer v. BNSF Ry. Co.*,
  No. 14-65-GF-BMM-JTJ, 2015 WL 13883901 (D. Mt. Nov. 20,
  2015) ..................................................................................................................13

*Brewer v. Quaker State Oil Refining Corp.*,
  72 F.3d 326 (3d. Cir. 1995) ..............................................................................12

*CAT3, LLC v. Black Lineage, Inc.*,
  164 F. Supp. 3d 488 (S.D.N.Y. 2016) ...............................................................18

*Eisenband v. Pine Belt Auto., Inc.*,
  No. 17-8549 (FLW) (LHG), 2020 WL 1486045 (D.N.J. Mar. 27,
  2020) ..................................................................................................................12

*Haskins v. First Am. Title Ins. Co.*,
  No. 10–5044 (RMB/JS), 2012 WL 5183908 (D.N.J. Oct. 18, 2012)................13

*Kavanagh v. Refac Optical Grp.*,
  No. 15-4886, 2017 U.S. Dist. LEXIS 205402 (D.N.J. Dec. 14,
  2017) ..................................................................................................................15

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Klein v. Stahl, GMHB Co. Maschinefabrik,*
  185 F.3d 98 (3d Cir. 1999) ................................................................................32

*Lexipath Tech. Holdings, Inc. v. Welch,*
  No. 13-CV-5379-PGS-LHG, 2016 WL 4544344 (D.N.J. Aug. 30,
  2016), *aff'd*, 744 F. App'x 74 (3d Cir. 2018) .....................................................12

*Medeva Pharma Suisse A.G. v. Roxane Labs., Inc.,*
  No. 07–5165 (FLW), 2011 WL 310697 (D.N.J. Jan. 28, 2011)........................29

*Montana v. Cty. of Cape May Bd. of Freeholders,*
  No. 09-755 (NLH/JS), 2013 WL 11233748 (D.N.J. Sept. 20, 2013)................27

*Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.,*
  348 F. Supp. 2d 332 (D.N.J. 2004)...................................................................29

*Percella v. City of Bayonne,*
  No. 14-3695 (KM) (JBC), 2020 WL 6559203 (D.N.J. Nov. 9,
  2020) ..................................................................................................................34

*Poulis v. State Farm Fire & Cas. Co.,*
  747 F.2d 863 (3d Cir. 1984) ...........................................................1, 20, 21, 31

*Robinson v. Countrywide Home Loans, Inc.,*
  No. 08–1563, 2011 WL 806625 (W.D. Pa. Mar. 2, 2011) ..................................1

*Schmid v. Milwaukee Elec. Tool Corp.,*
  13 F.3d 76 (3d Cir. 1994) ..................................................................................34

*Societe Internationale Pour Participations Industrielles et*
  *Commerciales, S.A. v. Rogers,*
  357 U.S. 197 (1958)...........................................................................................19

*Tolerico v. Home Depot,*
  205 F.R.D. 169 (M.D. Pa 2002) ........................................................................20

*Wachtel v. Health Net Inc.,*
  239 F.R.D. 81 (D.N.J. 2006)........................................................................30, 31

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Younes v. 7-Eleven, Inc.*,
  312 F.R.D. 692 (D.N.J. 2015)..............................................................33

**Rules**

Fed. R. Civ. P. 26 ...........................................................................32, 33

Fed. R. Civ. P. 26(a)(1)(A) .....................................................................33

Fed. R. Civ. P. 26(e) ...............................................................................33

Fed. R. Civ. P.  26(g) ..............................................................................33

Fed. R. Civ. P. 34(b)(2)(E)(iii) ...............................................................17

Fed. R. Civ. P. 37 ............................................................................19, 30

Fed. R. Civ. P. 37(e)(1) ...........................................................................19

Fed. R. Civ. P. 37(e)(2) .....................................................................19, 20

## I.    INTRODUCTION

Plaintiffs' Motion to Strike and Suppress urges imposition of the most extreme sanctions for the Aurobindo defendants' apparent failure to achieve perfection. But as the Special Master has aptly observed, "there is no such thing as a perfect production" and the standard by which a producing party should be judged is "reasonable efforts, reasonable diligence." 3/31/2021 Hr'g Tr. 11:13–12:24, ECF No. 1182-12.

The Court of Appeals for the Third Circuit has recognized that dispositive sanctions, such as the type requested by Plaintiffs "must be a sanction of last, not first, resort." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984). In considering whether sanctions for discovery are appropriate, courts in the Third Circuit consider "whether the attorney's or party's conduct was willful or in bad faith, and the prejudice to the opposing party." *Robinson v. Countrywide Home Loans, Inc.*, No. 08–1563, 2011 WL 806625, at *1–2 (W.D. Pa. Mar. 2, 2011) (citation omitted) (declining to impose sanctions for delayed production because the defendants cured any prejudice to the plaintiff and because the "severity of the transgression in question was light").

The Aurobindo entities (hereinafter, "Aurobindo" or "Defendants") have not engaged in any conduct that deserves Plaintiffs' requested sanctions. Aurobindo has diligently and in good faith collected and produced responsive documents, overcome

challenges, and endeavored to remedy deficiencies as soon as they were known. Determined to manufacture a dispute to justify their demand for extraordinary sanctions, Plaintiffs have mischaracterized defense counsel's statements to this Court and asserted repeated unfounded claims of Aurobindo's supposed "*intentional* misconduct," including the purported "*deliberate* withholding of highly relevant documents" and the "destruction" of documents. Motion to Strike, ECF No. 1182-2 at 26 (emphasis added). Each of these allegations is patently untrue. In fact, Aurobindo has cooperated with Plaintiffs to the best of its ability throughout the discovery process and has reviewed and produced a large volume of responsive documents.

Notably, Plaintiffs have not suffered prejudice as a result of any delays by Aurobindo in producing discovery. Aurobindo has already produced or is currently working to produce all relevant documents. To the extent Plaintiffs have received productions of documents close to or after depositions of relevant witnesses, those depositions can be held open and deponents can be re-called to afford Plaintiffs the opportunity to question witnesses about newly produced documents. Indeed, Plaintiffs have consistently invoked this option at the end of each Aurobindo witness deposition.

Plaintiffs' requested sanctions are unwarranted because Plaintiffs have not provided evidence to support their unfounded allegations of Defendants' bad faith

or intent to withhold documents. Moreover, Defendants endeavored to remedy any alleged prejudice that Plaintiffs claim to have suffered. Thus, the extraordinary sanction of striking Aurobindo's defenses is completely unjustified and should be rejected.

## II.    BACKGROUND

### A.    The Aurobindo Defendants

There are three Aurobindo entities named as defendants in the current litigation: Aurobindo Pharma Ltd. ("APL"), which is located in India, and Aurobindo Pharma USA, Inc. and Aurolife Pharma, LLC (collectively referred to as the "U.S. entities"), which are both located in the United States. Counsel entered its appearance for the U.S. entities when the MDL was formed in early 2019. APL, along with other foreign defendants including Hetero Labs and Hetero Drugs, exercised its right to be served through the Hague Convention. Counsel entered its appearance for APL in February 2020.

### B.    Discovery Timeline

Document production in this multidistrict litigation has been a massive undertaking. The claims here involve complex issues relating to the safety, testing, distribution, regulation and recall of valsartan that implicate hundreds of thousands of communications, compliance and tracking information, and other documents. APL is based in India, and the distance and language challenges posed by cross-

3

border document collection have augmented an already serious discovery burden. Moreover, discovery for this litigation is occurring amid a global pandemic, forcing parties to grapple with unprecedented challenges. In light of these factors, it is unsurprising that Aurobindo's production of documents was not completed by the November 2020 substantial completion deadline.

Despite these hurdles, the Aurobindo entities have produced a tremendous amount of information in response to Plaintiffs' requests for production. APL has produced over 367,000 documents comprising over 2.2 million pages. The U.S. entities have produced over 75,000 documents comprising over 560,000 pages. These documents were collected from myriad sources including email repositories, shared file locations, and databases. They represent dozens of types of documents including sales and pricing spreadsheets, testing data, standard operating procedures, customer lists and agreements, certificates of analysis, documents relating to the FDA inspection process (including FDA Form 483 Observations, warning letters, Establishment Inspection Reports (EIRs)), complaint logs, logbooks, abbreviated new drug applications (ANDA), and drug master files (DMFs). Beyond the considerable resources expended to simply collect this volume of information, hundreds of attorneys have spent over 45,000 hours reviewing documents collected for production. Simply put, the Aurobindo Defendants have devoted extensive resources to meeting their production obligations.

### 1. Aurobindo Provided Significant, Timely "Core Discovery"

In June of 2019, the U.S. entities produced over 80,230 pages of documents in core discovery, defined as easily identifiable, unquestionably relevant and discrete documents. At a status conference on August 14, 2019, Aurobindo's counsel informed the Court that it had produced "everything we have." Plaintiffs' counsel did not identify any deficiencies, noted receipt of communications with FDA, and described Aurobindo's production of "full ANDAs" as "very helpful." 8/14/2019 Hr'g Tr. 26:6–19, ECF No. 1182-4. Thereafter, Plaintiffs raised some purported deficiencies, which were resolved in 2019 without the need for court intervention.

When APL entered the litigation in February 2020, the parties agreed that APL would produce core discovery by June 30, 2020. APL met that deadline and produced over 31,000 pages of core discovery on June 30, 2020.

### 2. Aurobindo Preserved Documents and Made Rolling Productions

On December 23, 2019, Judge Schneider entered an Order approving the final set of requests for production of documents and established a rolling deadline for the production of electronically stored information ("ESI"). The first deadline was set for March 2, 2020, with subsequent productions on the first day of each month. *See* Exhibit C, 12/23/2019 Order, ECF No. 328. The Court then extended the rolling deadlines to November 2020 due to the issues and delays caused by the COVID-19 pandemic. 4/20/2020 Text Order, ECF No. 416.

5

Also included in Judge Schneider's December 23, 2019, Order were lists of Court-approved custodians for the Aurobindo U.S. entities (but not APL). The Aurobindo U.S. entities agreed upon list included 15 custodians. Aurobindo initiated the process of forensically collecting custodial email data for all custodians, but due to an oversight initially only issued a litigation hold notice to some of these custodians.

The parties also negotiated appropriate APL custodians. APL proposed five custodians in August 2020, but that proposal was essentially ignored by Plaintiffs until February 2021. *See* 2/19/2021 Email Correspondence from M. Goldenberg. Ex. 1. APL subsequently agreed to a majority of the custodians proposed by Plaintiffs (8 out of 13) and further proposed two additional individuals. At the Case Management Conference on February 24, 2021, the Court instructed APL to produce the custodial files for the five individuals to whom APL had previously objected, as well as the files of any employees responsible for interfacing with Lantech Pharmaceuticals. 2/24/2021 Hr'g Tr. 36:18–39:1, ECF No. 1182-9. In addition, APL subsequently identified and agreed to produce data from three more individuals. Following the Court's denial of Defendants' motion for a protective order, APL also produced custodial data from Dr. Rao.

6

### 3.    Aurobindo Has Worked to Cure Deficiencies and Supplement its Production

Plaintiffs raised purported production deficiencies for the first time in early 2021, and Aurobindo has made several additional productions and supplemented previous productions to address the purported deficiencies.

On February 2, 2021, Plaintiffs emailed defense counsel, raising purported deficiencies in the document productions by the U.S. entities but did not identify any documents that were missing from the productions. 2/2/2021 Email Correspondence from M. Goldenberg.  Ex. 2.  At the February 17, 2021 status conference, for the first time, Plaintiffs' counsel asserted that Aurobindo's production was smaller than that of other defendants.   2/17/2021 Hr'g Tr. 32:3–35:3, ECF No. 1182-8. Aurobindo's custodial production derives from 15 agreed-upon custodians, whereas other defendants had significantly more agreed-upon custodians, which may well account for the size discrepancy.

After counsel for Aurobindo learned in February that an internal miscommunication within the IT team at Aurobindo had led to a production deficiency relating to certain data for U.S. custodians, the Aurobindo defendants worked diligently to process, review and produce the supplemental data in March and April. These supplemental productions included documents collected from the APL custodians, which were not determined until February of 2021.

At the March 24, 2021 status conference, the parties engaged in a discussion regarding Plaintiffs' complaints about Aurobindo's productions. Aurobindo counsel advised the Court that "We're engaged in this meet-and-confer process. *We're producing* everything that we believe are responsive to the requests." 3/24/2021 Hr'g Tr. 16:1–16:3 (emphasis added), ECF No. 1182-11. Although Plaintiffs mischaracterize this exchange in their Motion as a "false" representation that production had been completed, (Plaintiffs' Memorandum at 32), in fact Aurobindo counsel clearly and correctly stated that discussions concerning discovery and production were **ongoing**, not complete as of that time.

To address Plaintiffs' concerns, Aurobindo significantly supplemented its existing production of documents in March and April of 2021:

- In March 2021, Defendants made 13 productions including documents relating to Meridan Consulting and ToxRox Consulting, LLC, agreements with Lantech Pharmaceuticals, standard operating procedures, contract with Vigilare, custodial files (Sarath Kamavarapu, Srinivas Rama, Mahesh Shinde, Pravatkumar Tripathy), and custodial data (Bhadresh Doshi and Prasad Gorijavolu). *See* Ex. ECF No. 1182-19.

- In April 2021, Defendants made 28 productions to Plaintiffs, including custodial data (Jasleen Gupta, Blessy Johns, MV Rama Krishna, Mallikarjuna Reddy Kurre, Ram Mohan A. Rao, AnnaBathuni Srikanth, Sanjay Singh, Mahesh Shinde, and others), Trackwise data, standard operating procedures, Shared Drive Data, and Testing Data. *See* Ex. ECF No. 1182-19.

- Plaintiffs requested an Index of all standard operating procedures. The Aurobindo parties produced three SOP Indices and produced over 9,800 pages of Standard Operating Procedures.

8

- Defendants are currently investigating and curing issues raised identified by Plaintiffs relating to production of documents from shared drives, hand-written log books, and custodial email production.

In the course of investigating non-email custodial files from APL custodians per Plaintiffs' request, Defendants learned that the laptops of two custodians—MV Subba Raju and A Srinivasa Reddy—were erased and repurposed when their employment ended in March and July of 2019 respectively. APL was nevertheless able to recover and produce to Plaintiffs custodial data for both of these individuals by restoring back up tapes.

During the March 31, 2021 status conference, Judge Vanaskie acknowledged the "Herculean task" Defendants have faced in obtaining and reviewing millions of documents, marking confidentiality designations, making redactions, and finally producing them to Plaintiffs. 3/31/2021 Hr'g Tr. 17:4–9, ECF No. 1182-12. During that same conference, Judge Vanaskie declined to impose any "hard and fast deadlines" and instead urged Defendants to continue working "as hard as you can" to get the productions finished. *Id.* at 17:6–11. Aurobindo has done so and will continue to do so in good faith.

### 4. The Aurobindo Defendants Have Engaged in Numerous Meet and Confers With Plaintiffs' Counsel in Good Faith

Aurobindo has worked cooperatively with Plaintiffs throughout the discovery process. To the extent that Plaintiffs have raised any discovery-related issues, Aurobindo has endeavored to address them through numerous meet-and-confers

with Plaintiffs and extensive efforts to investigate issues and provide supplemental productions where necessary.

Aurobindo has continuously proposed and provided solutions whenever Plaintiffs raised any issues. During the status conference on February 17, 2021, Plaintiffs noted that they believed certain SOPs were missing from the production but did not identify specific documents. Aurobindo proposed "going through the document productions to make sure that all of the SOPs that she's described are in there . . . I told her I'm happy to continue to meet and confer with her on that and work this out." 2/17/2021 Hr'g Tr. 39: 4–8, 14–18, ECF No. 1182-8.

When Aurobindo anticipated potential delays in productions before depositions, Aurobindo offered to "move some depositions around but we are working diligently to get these documents out as quickly as we can, having just ingested them yesterday." 3/31/2021 Hr'g Tr. 16:23–17:3, ECF No. 1182-12.

On April 14, 2021, counsel for Aurobindo explained that "after the plaintiffs had made additional requests, we went back, exercised additional due diligence in this entire document process, which has been absolutely fluid every time we've met and conferred with them. We've done additional searches and we are now producing more documents . . . Every time there is an issue with discovery, we try to address it. We are doing our best to go ahead and meet whatever requests that they have." 4/14/2021 Hr'g Tr. 42:5–10, 21–23, ECF No. 1182-13.

Most recently, the parties have been able to resolve various issues related to Defendants' assertion of privilege. The parties met and conferred regarding a list of documents the Plaintiffs believed were improperly withheld. The Aurobindo parties agreed to produce some of those documents and the parties agreed that Court intervention was not necessary.

### 5.    Depositions of Aurobindo Witnesses Remain Open

Thus far, Plaintiffs have deposed five Aurobindo witnesses, including four fact witnesses—Bhadresh Doshi, Prasad Gorijavolu, Jasleen Gupta, and Dr. Rao— and one 30(b)(6) witness—Blessy Johns. In each of the five depositions, Plaintiffs have reserved their rights to recall the witnesses pending their review of additional documents received in discovery, and defense counsel has not objected. Plaintiffs have ample time to use recently produced documents in continued depositions as Aurobindo is willing to re-produce these deponents for additional examination about documents produced close in time or after their initial deposition.

## III.    LEGAL ARGUMENT

Plaintiffs' allegations of spoliation, bad faith, and dilatory conduct are not supported by the record and lack merit. Where Aurobindo's productions have been less than perfect and plaintiffs have raised concerns, Aurobindo has endeavored to address those concerns and rectify them to prevent or minimize any prejudice to Plaintiffs. Ironically, Plaintiffs mischaracterize Aurobindo's recent efforts to

11

supplement its document production to address Plaintiffs' concerns as purported evidence of Aurobindo's intent to withhold information from Plaintiffs.

In a litigation of this size and complexity, delays and unforeseen additions to the scope of responsive documents are to be expected. "Discovery need not be perfect, but discovery must be fair . . . [the scope] can bulge or contract as case-specific circumstances require." *Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 333 (E.D. Pa. 2012). Sanctions should not be imposed on a party for failure to achieve perfection in discovery when the party has worked in good faith to provide requested discovery and to remedy issues identified with production.

## A. Plaintiffs Have Not Shown That Spoliation of Any Relevant Documents Has Occurred

Plaintiffs' rhetoric that Aurobindo has "spoliated" documents is unsupported by the evidence. A party seeking sanctions for spoliation must show that "the evidence was in the [offending] party's control, the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve evidence was reasonably foreseeable to the party." *Eisenband v. Pine Belt Auto., Inc.*, No. 17-8549 (FLW) (LHG), 2020 WL 1486045, at *7 (D.N.J. Mar. 27, 2020) (quoting *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d. Cir. 1995)). The burden is on the moving party to prove each of the four elements of spoliation. *See Lexipath Tech. Holdings, Inc. v. Welch*, No. 13-CV-5379-PGS-LHG, 2016 WL 4544344, at *2 (D.N.J. Aug. 30, 2016), *aff'd*, 744

12

F. App'x 74 (3d Cir. 2018). Here, Plaintiffs have not come close to meeting their burden.

Plaintiffs' Motion asserts claims of "missing" documents and urges this Court to simply assume that documents were intentionally destroyed by Defendants. But a party's "bald claim that spoliation is at issue does not make it at issue." *Brewer v. BNSF Ry. Co.*, No. 14-65-GF-BMM-JTJ, 2015 WL 13883901, at *6 (D. Mt. Nov. 20, 2015); *see also Air Prods. & Chems. Inc. v. Wisemann*, No. 14-1425-SLR, 2017 WL 758417, at *2 (D. Del. Feb. 27, 2017) ("Pure speculation is not enough to find that relevant ESI was destroyed.") (citation omitted). Nowhere in Plaintiffs' forty-two (42) page brief is there actual evidence that relevant documents were in Aurobindo's control and were destroyed.

### 1. Imperfect Litigation Holds Do Not Establish Spoliation

Plaintiffs note that Aurobindo did not initially send written litigation holds to 23 of 35 custodians they have identified, erroneously inferring that spoliation has occurred as a result. There is no blanket rule regarding litigation holds, and "[t]he duty to preserve does not extend to every document. Rather, a party is only obligated to preserve information that is reasonably related to foreseeable litigation." *Haskins v. First Am. Title Ins. Co.*, No. 10–5044 (RMB/JS), 2012 WL 5183908, at *4 (D.N.J. Oct. 18, 2012) (citation omitted).

13

The Aurobindo Defendants have substantially complied with their preservation obligations. Litigation holds were issued to dozens of individuals who were on the product recall team or who were believed to have involvement in production or product recall. Defendants supplemented the list of recipients and issued additional hold notices at various points over the course of this litigation. 3/29/2021 Letter from Jessica Heinz to Plaintiffs, ECF No. 1182-28. Although not every document custodian immediately received a written litigation hold notice, Defendants took prompt action to collect email data from all custodians. Aurobindo determined its initial APL litigation hold list from senior quality leadership (whom Plaintiffs have deposed) and determined its hold lists for the U.S. Entities through internal discussions that identified individuals who were involved in production and recall. Further, Defendants have interviewed document custodians about the location of potentially relevant documents, and produced relevant documents identified in the course of such interviews. In a testament to Aurobindo's effort to preserve relevant information, the Aurobindo entities issued litigation holds to 13 additional individuals who are not on Plaintiffs' list of custodians, including the most senior leadership of its business and quality operations in both the United States and India. *See id.*[1] Moreover, going back to 2016, email data from the U.S. entities is

---

[1] There are 13 individuals identified in the 3/19/2021 Letter to Plaintiffs that Plaintiffs failed to acknowledge in their memorandum: Nilay Bhatt, Chandrapal Reddy Dendi, Devanshu Garg, Narayanan Govindarajan, Swami S. Iyer, Vashishta

automatically preserved or backed up. *See* 11/13/2019 Letter from J. Heinz to B. Parekh, Ex. 3 ("MS Exchange data is backed up to 2016.").

Importantly, Plaintiffs offer no support for their conclusory assertion that Aurobindo's issuance of litigation holds to some but not all custodians "resulted in a loss of documents." ECF No. 1182-2 at 29. None of the deponents to date offered testimony about deleting or otherwise destroying documents. Where a party is imperfect in preserving evidence, imperfection does not show that evidence was destroyed. *See Kavanagh v. Refac Optical Grp.*, No. 15-4886 (JHR/JS), 2017 U.S. Dist. LEXIS 205402, *8 (D.N.J. Dec. 14, 2017); *see also Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 153 (D.N.J. 2009)(acknowledging that the defendant should have moved more quickly to place litigation holds on the routine destruction of certain documents and electronic data but finding no bad faith and declining to impose sanctions). Even in the two limited circumstances where documents could not be obtained from custodians' computers, Aurobindo has endeavored to obtain and produce documents from backup tapes. The fact that Defendants did not issue written litigation holds to every custodian does not mean that any evidence was spoliated.

---

Kanchanpally, Daniel T. Martins, James P. Mathai, Khantesh Pandya, Raghavendra Prasad, Hemant Kumar Sharma, Ravi Kumar Thanniru, Ganesh Venkatasubramaniam. ECF No. 1182-28. In addition, on April 13, 2021, the litigation hold was sent to all custodians.

### 2.    Plaintiffs Have Not Established that Defendants Are Intentionally Withholding Critical Documents

Plaintiffs' claims that they are missing "critical" documents recycles old disputes that have already been resolved or are in the process of being resolved. Plaintiffs' allegations of Aurobindo's willful withholding of documents is particularly egregious given that Defendants have consistently expressed a willingness to investigate and remedy Plaintiffs' claims of deficiency.

Several of the categories of documents Plaintiffs claim to be "missing" have actually been produced. For example, in late April, immediately after filing their motion, Plaintiffs' counsel contacted defense counsel advising that she did not see the standard operating procedures regarding document destruction and retention policies in the documents she had reviewed. However, these documents were in fact produced. Defense counsel was able to promptly provide a list of the documents identified with bates numbers. Plaintiffs followed-up to request company document retention policies, and Defense counsel provided Aurobindo's Corporate Email Policy. 5/3/2021 Email Correspondence from J. Heinz, Ex. 4.

Other documents that Plaintiffs have identified as missing—including documents collected from shared drives from the U.S. entities, and maintained by the Aurolife quality department—are being collected and will be produced, if relevant and responsive, to the extent that they have not already been produced.

16

Still others may be duplicative of documents that have already been produced and are thus unnecessary. Plaintiffs assert that it is "unfathomable that a custodial collection could be deemed complete by searching only a custodian's email." ECF No. 1182-2 at 18. But it is entirely conceivable for a custodian to rely on email to send and receive documents in the normal course, and as a means of saving relevant documents such that use of a saved location other than email would be minimal or infrequent. Defendants have no obligation to collect the same files that would be found in a custodian's email from more than one location. *See* Fed. R. Civ. P. 34(b)(2)(E)(iii) ("A party need not produce the same electronically stored information in more than one form."). Here, Defendants are in the best position to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information. *See* THE SEDONA CONFERENCE PRINCIPLES, Principle 6.

In all instances, Plaintiffs have not shown that the supposedly missing documents are critical, and they cannot show any intentional suppression or destruction of evidence, because none has occurred.

### 3.    Spoliation Cannot Be Inferred from Subsequent Supplemental Productions

As purported support for their claims of spoliation, Plaintiffs rely on charts showing that Aurobindo has recently increased the number of documents produced. In utilizing these charts, Plaintiffs ask this Court to infer that Aurobindo intended to

hide documents and slow the discovery process. But a recent increase in document production does not show evidence of spoliation or an attempt to evade discovery obligations. To the contrary, the supplemental productions show Aurobindo's continued good faith efforts to produce all responsive materials.   It would be both ironic and counterproductive to punish a party with sanctions for its efforts to address requests for supplemental document searches and production.

Moreover, Plaintiffs already possess at least some of the documents that Plaintiffs claim to be "missing."   Specifically, Plaintiffs allege that certain emails are missing; these e-mails have not been lost—they have merely been produced from a single source rather than multiple sources, which does not warrant sanctions. *See e.g.*, *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) ("Thus, relief would not be available under the amended rule where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian.").   Aurobindo is continuing to investigate and remedy any actual deficiencies as promptly as possible.  *See* ECF No. 1182-19. Aurobindo continuing to produce documents directly contradicts Plaintiffs' claim that Aurobindo has intended to deprive Plaintiffs of relevant information.

18

4.      **Even if Plaintiffs Identify Missing Documents, Plaintiffs'
        Proposed Sanctions Are Inappropriate Because Aurobindo
        Has Not Acted in Bad Faith**

Even if Plaintiffs were able to provide evidence of spoliation beyond mere speculation, the circumstances do not justify Plaintiffs' proposed sanctions because Aurobindo has not engaged in willfulness or bad faith, nor has it shown an intent to withhold evidence.  Aurobindo's efforts to make additional productions demonstrate an absence of bad faith and, thus, directly contradicts Plaintiffs' spoliation argument. *See Bensel,* 263 F.R.D. at 152 ("[T]here must be a finding that the spoliation was intentional and that there was fraud and a desire to suppress the truth before the Court will make a finding of spoliation.") (citation omitted).

Under Federal Rule of Civil Procedure 37, even if the moving party can establish that spoliation indeed occurred, and the Court finds prejudice, it may order sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Plaintiffs' proposed sanctions are grossly disproportionate to their alleged harms. The most severe sanctions are reserved for the highly unusual circumstance of a finding of clear intent to deprive the other party of the use of the spoliated discovery in the litigation. *See* Fed. R. Civ. P. 37(e)(2).  Rule 37 "should not be construed to authorize dismissal . . . when it has been established that failure to comply [with a production order] has been due to inability, and not to willfulness, bad faith, or any fault of petitioner."  *Societe Internationale Pour Participations Industrielles et*

19

*Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958); *see also Baliotis v. McNeil*, 870 F. Supp. 1285, 1292 (M.D. Pa. 1994) ("Our Court of Appeals has indicated that where there is no bad faith on the part of the spoliating party and the prejudice is not severe, a sanction of witness preclusion or entry of judgment is unwarranted.") (citation omitted) (Vanaskie, J). The type of intentional deprivation contemplated by Rule 37(e)(2) is not present here.  To the extent there has been any prejudice to Plaintiffs because of delayed document production, the Aurobindo Defendants have offered solutions to remedy the prejudice, such as keeping open depositions to allow for questioning regarding recently produced materials.  Thus, the extreme sanctions proposed by Plaintiffs are inappropriate here.

### B.    Plaintiffs Seek an Extraordinary Remedy That Is Simply Not Supported by the Facts

Plaintiffs' motion requests that the Court strike Defendants' answers and defenses, an extraordinary sanction reserved for particularly egregious discovery violations.  Plaintiffs do not come close to establishing a basis for imposing this extreme remedy.

Dispositive sanctions are a tool of last resort.  *Poulis*, 747 F.2d at 869; *cf. Tolerico v. Home Depot*, 205 F.R.D. 169, 171 (M.D. Pa 2002) (Vanaskie, J.) (finding the "extreme sanction of exclusion of evidence is not warranted" where a party failed to produce a document that should have been part of the initial disclosures).  In assessing whether it is appropriate to strike a party's defenses, courts in the Third

Circuit must consider, *inter alia*, whether "the conduct of the party or the attorney was willful or in bad faith[,]" and "the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery." *Poulis*, 747 F.2d at 868 (emphasis omitted). Both of these central considerations mitigate strongly against striking Aurobindo's defenses.

### 1.    Dispositive Sanctions are Unwarranted Because Aurobindo Has Acted in Good Faith

While Aurobindo's document production has not been perfect, it did not act willfully or in bad faith. To the extent that there were oversights or delays during discovery, Plaintiffs have not suffered any prejudice. If Plaintiffs did suffer any prejudice, Aurobindo offered solutions. Dispositive sanctions are unwarranted when a party conducts itself in good faith and does not prejudice the party moving for sanctions.

### a.    Aurobindo Has Not Made Knowing Misrepresentations to the Court

Plaintiffs accuse Defendants of "acting willfully and in bad faith" by making "misrepresentations" to the Court. ECF No. 1182-2 at 32. But Plaintiffs have invented these "misrepresentations" by taking Defendants' statements out of context.

Plaintiffs accuse Defendants of misrepresenting its capability to transmit documents via File Transfer Protocol (FTP) and cite to the hearing transcript from

21

March 10, 2021 in support of the alleged misrepresentation.  ECF No. 1182-2 at 32.

In fact, Defendants' counsel stated: "I'm certainly willing to go back to my client

and—it's my understanding that they have tried to do [use FTP].  If they have not,

I'll certainly let [Plaintiffs' counsel] know and we can certainly try that."  3/10/2021

Hr'g Tr. 76:13–16, ECF No. 1182-10.  Aurobindo's counsel did not, in fact, make

any representation (or misrepresentation) regarding Aurobindo's ability or inability

to transmit documents via FTP, but instead committed to explore that further as an

option.  This issue was at most a minor misunderstanding that has long since been

resolved – hardly a basis for striking the Aurobindo Defendants' Answers and

defenses.

Equally meritless is Plaintiffs' accusation that Aurobindo falsely represented

to the Court at the June 17, 2020 Discovery Hearing that Aurobindo had collected

and loaded *all* custodial files for the U.S. entities.  ECF No. 1182-2 at 32 (emphasis

added).    Aurobindo counsel's statement that Plaintiffs now misconstrue was

responding to the Court's inquiry about "where . . . things stand with regard to search

terms."  Aurobindo counsel's response was intended to convey that Defendants

loaded custodial data to the vendor's database, ran the original search terms, and

Defendants were "now considering whether there is any problematic terms."

6/17/2020 Hr'g Tr. 38:17–25, ECF No. 1182-6.  It is evident from this context that

22

counsel sought to convey that Aurobindo could evaluate search terms, not promise that no new custodial data would ever be identified or collected in the future.

Plaintiffs further allege that Defendants "falsely represented to the Court that it had produced all documents it had relating to the US custodians." ECF No. 1182-2 at 32. In context, counsel actually stated that Aurobindo "completed our review of the 15 custodians that we had for Aurobindo, and it's my understanding that it is substantially complete . . . at this time, we are – we have finished our review and produced everything we have." 12/9/2020 Hr'g Tr. 21:3–5, ECF No. 1182-7. This statement was merely a contemporaneous update on the status of review and production and is again misconstrued by Plaintiffs as a representation of finality.

Plaintiffs also plainly mischaracterize Aurobindo's statements and Certificate of Compliance, stating that Defendants "falsely represented it had produced all responsive standard operating procedures and after supplementing its production pursuant to an order from the Court, Aurobindo served a certification, certifying that its production was complete." ECF No. 1182-2 at 32. In fact, defense counsel stated: "we have produced standard operating procedures . . . It's my understanding that all of the relevant ones are in there, and I am continuing to evaluate this and, certainly, if there are ones that we need to supplement our production with, I can assure you that that will happen before the depositions." 2/17/2021 Hr'g Tr. 40:24–41:6, ECF No. 1182-8. Aurobindo represented only that the production contains SOPs.

23

Aurobindo explicitly stated it was continuing to evaluate whether it would be supplementing the production with additional SOPs.  Further, Aurobindo "reserve[d] the right to amend, supplement and revise their discovery productions as investigation continues in this litigation." 3/4/2021 Certificate of Compliance.  ECF No. 1182-18.  And consistent with that commitment to supplement as warranted, that is what Aurobindo has done.

Plaintiffs again misrepresent as a "false" representation that document production had been completed a statement by Aurobindo's counsel at the March 24, 2021 status conference that it "*had produced* 'everything that we believe is responsive to the requests. . .'." ECF No. 1182-2 at 32.  Plaintiffs misrepresent and misquote the statement at issue.  In fact, Aurobindo's counsel stated: "There's no sort of evidence that we have engaged in any -- that we haven't produced what we should have. We're engaged in this meet-and-confer process. *We're producing* everything that we believe are responsive to the requests. . .". 3/24/2021 Hr'g Tr. 15:24–16:3 (emphasis added), ECF No. 1182-11. Plaintiffs' Motion characterizes this statement as a false representation that production was complete at *that* time, when it was actually an expression of Aurobindo's continued good faith efforts to work toward completion of its production.

While the statements of Aurobindo's counsel may on occasion have been premature and overly optimistic, that is not equivalent to willfully misleading the

court or acting in bad faith. As the Special Master counselled the parties in a conference last month on discovery issues, "never say you've produced everything because you don't know that you've produced everything." 4/14/2021 Hr'g Tr. 35:2–4, ECF No. 1182-13. Most importantly, Aurobindo has continued to work diligently and to devote extensive effort and resources to addressing issues that Plaintiffs have identified with document production.

> **b.    Defendants Have Repeatedly Conferred with Plaintiffs in Good Faith to Resolve Disputes and Correct Deficiencies**

Plaintiffs' Motion is replete with unsupported rhetoric about Aurobindo's supposedly dilatory tactics. There is perhaps no better evidence of Aurobindo's good faith efforts to meet its discovery obligations than its continuous, productive dialogue with Plaintiffs.

The parties have engaged in numerous productive meet and confers and have been able to resolve most disagreements without this Court's intervention. For example, in June of 2020, the parties encountered a potential issue with search terms, and they worked together to resolve the issue: "We are now considering whether there is any problematic terms and are hoping to continue our discussions with the plaintiffs that I think have been pretty helpful over the past couple weeks." 6/17/2020 Hr'g Tr. 38:22–25, ECF No. 1182-6.

Notably, prior to filing their current Motion, Plaintiffs have characterized the meet and confer process with Aurobindo's counsel as productive.  For instance, at the February 17, 2021 status conference, Plaintiffs' counsel explained: "we have had many productive discussions with Aurobindo's counsel, Jessica and Ethan, this weekend.  We appreciate the good working relationship we have with them." 2/17/2021 Hr'g Tr. 31:24–32:2, ECF No. 1182-8.

Aurobindo has also been responsive to Plaintiffs' reasonable requests.  In negotiations regarding appropriate custodians from APL, Defendants agreed to most of Plaintiffs suggested custodians.  In February of 2021, when Plaintiffs asked the U.S. entities to produce data from Sanjay Singh, Aurobindo agreed to do so. When Plaintiffs requested an index of standard operating procedures, Aurobindo produced an index for each Aurobindo entity identifying the standard operating procedures included in their production.

On February 24, 2021, counsel for Aurobindo expressed to the Court that "we have continued to meet and confer since the status conference . . . We have also had several productive meet and confers regarding Aurobindo Pharma Limited list of custodians." 2/24/2021 Hr'g Tr. 39: 7–8, 13–14, ECF No. 1182-9.

Regarding Aurobindo's recent, substantial production of documents, Aurobindo has offered solutions and diligently worked with Plaintiffs to ensure every issue was addressed: "We are making these productions, substantial

productions, and we're continuing to do so.  We've done this all in the past month and we're going to continue to stay on top of this and work as quickly as possible, as we have repeatedly assured the plaintiffs and the Court.  And we hope that we can work this out with the plaintiffs so that we can agree to a reasonable deadline within the timeframe." 3/31/2021 Hr'g Tr. 16:9–16:16, ECF No. 1182-12.

### C.    Plaintiffs Have Not Been Prejudiced By Any of Aurobindo's Alleged Discovery Shortcomings

Plaintiffs have failed to establish prejudice warranting the extreme sanctions they seek.  This Court has declined to strike defendant's answer, suppress its defenses, and render a default when a defendant was late in producing relevant documents because the defendant cured any prejudice to the plaintiffs.  *Montana v. Cty. of Cape May Bd. of Freeholders*, No. 09-755 (NLH/JS), 2013 WL 11233748, at *8 (D.N.J. Sept. 20, 2013) ("[R]ecognizing the Third Circuit's reluctance to grant the drastic sanction of default" and noting that "since the defendant did not act willfully or vexatiously, and any prejudice from defendant's late document production has been cured").

Plaintiffs' contentions of substantial prejudice boil down to two complaints: first, that documents were produced close to or after the date when certain witnesses were deposed, and second, that because Aurobindo did not send a written litigation hold notice to all custodians, some documents must have been lost.  Neither complaint is sufficient to warrant the extreme sanctions that Plaintiffs now seek.

27

Regarding the timing of Defendants' document production, Defendants have provided rolling document productions to Plaintiffs throughout the discovery process. That documents were produced close to or after some depositions is practically unavoidable in a litigation as large and complex as this one. As Judge Vanaskie noted during a status conference on December 9, 2020, neither party will be "prejudiced if a document is produced after a deposition that [the party] should have had before. *In a case of this complexity and size, you cannot wait until every last piece of paper is produced to start to take depositions*." 12/09/2020 Hr'g Tr. 33:17–22 (emphasis added), ECF No. 1182-7.

Defendants acknowledge that there have been delays in document production, but Defendants have attempted to remedy the delays in each instance, offering to reschedule the depositions so as not to prejudice Plaintiffs. 3/31/2021 Hr'g Tr. 16:23–17:3, ECF No. 1182-12 ("We may have to move some depositions around."); 4/26/2021 Email Correspondence from E. Koschineg. Ex. 5 ("APL is producing more documents this Wednesday. Let me know if you would like to move Dr. Rao's deposition to May in light of the production."). Moreover, Plaintiffs have "left open" each deposition, or reserved their rights to recall every Aurobindo witness they have deposed thus far. *See* 4/14/2021 Email Correspondence from M. Goldenberg. Ex. 6 ("We will of course leave this deposition open, given the new production that we will not be able to load tonight, but we can deal with that later."). Defendants have

not objected, nor have Defendants prevented Plaintiffs from taking substantive testimony of the Aurobindo witnesses.  Given these facts, there is no evidence of prejudice to Plaintiffs, and Defendants have worked with Plaintiffs and will continue to work with Plaintiffs to prevent any prejudice.

Plaintiffs further complain that there must be "missing documents" because Aurobindo did not send a litigation hold notice to every custodian, and Plaintiffs will therefore "not have the benefit of these [missing] documents." ECF No. 1182-2 at 31.  But Plaintiffs provide absolutely no basis to believe that any supposedly missing documents are unique, not duplicative of other documents previously produced, central to the merits of the litigation, or otherwise helpful to Plaintiffs.   For the spoliation inference to apply, the party seeking the adverse inference must establish that (1) the evidence in question is within the party's control; (2) actual suppression or withholding of the evidence; (3) the evidence destroyed or withheld was relevant to claims or defenses; and (4) it was reasonably foreseeable that the evidence would later be discoverable.  *Medeva Pharma Suisse A.G. v. Roxane Labs., Inc.*, No. 07–5165 (FLW), 2011 WL 310697, at \*14 (D.N.J. Jan. 28, 2011) (citing *Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004)).   To establish the relevance factor, "[t]he party seeking the spoliation inference must make a sufficient showing from which a fact finder could reasonably determine that the destroyed or withheld evidence would have been favorable to the movant." *Id.*

29

Here, Plaintiffs cannot infer any allegedly destroyed or withheld evidence would have been favorable to them, nor can Plaintiffs show that any alleged failure to produce impeded them from obtaining the same information elsewhere.

### D. Precedent Cited by Plaintiffs in Support of Their Requested Draconian Sanction is Distinguishable as Aurobindo Has Not Engaged in Extreme Discovery Violations

To support their position that Defendants' defenses should be stricken, Plaintiffs rely exclusively on cases that are readily distinguishable from the facts presented here. In the cases cited by Plaintiffs, the courts imposed severe sanctions on parties that actively defied court orders. Plaintiffs rely heavily on *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81 (D.N.J. 2006). In *Wachtel*, defendants repeatedly ignored court orders compelling discovery. *Id.* at 92. Not only did the court find that the defendants in that case obfuscated the entire discovery process, the defendants also were found to have submitted false and misleading statements to the court. *Id.* at 102. Furthermore, at Rule 37 evidentiary hearings, many responsive documents appeared for the first time, despite being related to "individuals who had been deposed *years* earlier." *Id.* at 91–92 (emphasis added). The Court imposed severe sanctions on the defendants, including striking 20,000 pages of documents, which had not been produced during discovery, but were nevertheless submitted in support of defendants' motion for summary judgment. *Id.* at 113. The Court commented that it would not "tolerate such abuses of discovery, lack of candor about

30

e-mail retention practices, and deliberate indifference to the rulings of [the] Magistrate Judge . . . . " *Id.* at 97. This was not "inadvertent or negligent failure to disclose the existence of additional discovery." *Id.* at 106.

Contrary to Plaintiffs' assertions, the Third Circuit's decision in *Poulis* does not support imposition of sanctions here. In *Poulis*, the district court dismissed the case with prejudice because the plaintiffs failed to meet multiple court-ordered deadlines, answer interrogatories, or file a pre-trial statement. *Poulis*, 747 F.2d at 865. In holding that the dismissal was not an abuse of discretion, the court observed that the "extreme sanction of dismissal or default is reserved for the instances in which it is justly merited." *Id.* at 870.

Here, Defendants have not engaged in conduct that remotely resembles the conduct warranting the extreme sanctions discussed in *Wachtel* or *Poulis*. Defendants have not repeatedly defied court orders nor have they attempted to rely on documents that were never produced. Delays in document production which have been remedied and have caused no prejudice do not warrant striking a party's pleading.

### E.    Alternative Sanctions Are Also Unwarranted

Plaintiffs' demands for alternative sanctions are equally inappropriate and disproportionate to the alleged discovery issues. In Section X(III) of their motion, Plaintiffs request the following sanctions as an alternative to striking Defendants

31

defenses: (1) documents produced after March 15, 2021, from the U.S. entities or from noncustodial sources at APL shall be deemed authentic and admissible to Plaintiffs alone, (2) Plaintiffs should be allowed to conduct discovery into spoliation and failure to preserve documents, (3) Defendants should be required to file a copy of any Order imposing sanctions upon them in other pending cases, and (4) any resulting Order imposing sanctions should remain public.

Courts in the Third Circuit have long accepted the basic tenet "that sanctions should always be narrowly tailored to meet the misconduct and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court." *Bartos v. Pennsylvania*, No. 1:08-cv-0366, 2010 WL 1816674, at *6 (M.D. Pa. May 5, 2010) (citing *Klein v. Stahl, GMHB Co. Maschinefabrik*, 185 F.3d 98 (3d Cir. 1999)). The alternative sanctions that Plaintiffs propose are not narrowly tailored and have no connection to addressing the alleged wrongdoing.

### 1. Plaintiffs' Request for Sanctions for Violation of Fed. R. Civ. P. 26 is Unwarranted Because Aurobindo has Supplemented its Disclosures

Aurobindo has not violated Rule 26, which requires parties to provide each other, without waiting for discovery requests, with copies or descriptions of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control, and may use to support its claims or

defense." Fed. R. Civ. P. 26(a)(1)(A).  Parties must make initial disclosures based on the information reasonably available to them at the time and must supplement or correct their disclosure in a timely manner if they learn the disclosure is incomplete or incorrect. *See* Fed. R. Civ. P. 26(e); *see also Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 706 (D.N.J. 2015) ("Rule 26(g) does not require perfection and does not impose an unreasonably high burden on litigants. It simply requires that a reasonable inquiry be made into the factual basis of a discovery response and that responses to discovery be complete and correct when made.").

Adhering to Rule 26, Aurobindo made its initial disclosures timely and based on the information known at the time of production.  As Aurobindo learned of additional documents, it supplemented productions to include those documents. Defendants have been diligently producing documents on a continuous basis, giving Plaintiffs sufficient time to analyze them for potential use at trial.   Because Aurobindo has not violated Rule 26, Plaintiffs' request—that all documents produced after March 15, 2021 be deemed authentic and admissible to Plaintiffs alone—should be denied.

## 2.    Plaintiffs' Request for Discovery on the Issue of Spoliation is Inappropriate Because Plaintiffs Have Failed to Establish that Any Discovery Was Spoliated

Likewise, Plaintiffs' request for discovery into alleged spoliation, including adding a 30(b)(6) deposition, is unwarranted. Plaintiffs have failed to provide

33

anything beyond mere speculation that any discovery has been destroyed or withheld. Further, Plaintiffs have not offered "plausible, concrete suggestions as to what [the lost] evidence might have been." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 80 (3d Cir. 1994). Other than referring to the existence of notebooks and the possible existence of missing emails, Plaintiffs have not identified a single actually missing document, nor explained what relevant information such a document would substantively reveal. Thus, Aurobindo should not bear the burden of engaging in discovery into discovery. *See Percella v. City of Bayonne,* No. 14-3695 (KM) (JBC), 2020 WL 6559203, at *11 (D.N.J. Nov. 9, 2020) (finding sanctions unwarranted where the defendant did not explain how alleged lost text messages would disprove the plaintiff's claims or suggest what the lost evidence would have revealed).

### 3. Plaintiffs' Requests for Aurobindo to Publicize Any Potential Sanctions in Similar Proceedings Are Entirely Punitive and Unjustified

Plaintiffs additionally request Aurobindo to publicize any potential sanctions in similar pending cases, though presented as a way to discourage bad behavior, would serve only to punish and embarrass Aurobindo. These sanctions bear no relation to Plaintiffs' claims of misconduct.

Throughout this litigation, Aurobindo has made a good faith effort to comply with its discovery obligations. Aurobindo has continuously made its disclosures

based on information it reasonably had available at the time. Although Aurobindo has experienced production delays, Aurobindo has also offered to remedy the delays in each instance, such as offering to reschedule depositions or keeping the depositions open. Aurobindo has also tried in good faith to avoid any prejudice to Plaintiffs.

There is no connection between curing the alleged conduct at issue here— sporadic or late production of documents—and Plaintiffs' requested punitive sanctions. Providing Plaintiffs with the documents they claim they need and allowing them the opportunity to use those documents in the development of their case is enough to cure any potential prejudice. Even if Plaintiffs have suffered prejudice from late productions (despite Aurobindo's efforts to minimize any such prejudice), requiring a public order imposing sanctions would not address that issue.

## IV.    CONCLUSION

Plaintiffs seek the extreme remedy of striking Aurobindo's answers and defenses. This type of remedy is a remedy of last resort, reserved for the most egregious discovery violations. Although Aurobindo's document production has admittedly not been perfect, Aurobindo has not engaged in any conduct that warrants Plaintiffs' proposed extreme sanctions. Aurobindo has acted in good faith throughout the discovery process, providing discovery updates to the Court based upon the information available at the time, and working in good faith with the

Plaintiffs throughout the ongoing discovery process.  Plaintiffs have not suffered any prejudice as a result of Aurobindo's conduct.  Furthermore, Plaintiffs have not demonstrated any willful or intentional bad faith conduct by Aurobindo.  Sanctions are not warranted when a party cooperates with the discovery process and remedies any issues that may arise. For all of the foregoing reasons, Aurobindo respectfully requests that Plaintiffs' motion be denied.

Respectfully submitted,

Date: May 7, 2021

CIPRIANI & WERNER PC

*/s/ Jessica M. Heinz.*
Jessica M. Heinz
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
JHeinz@c-wlaw.com
Telephone: (610) 567-0700
Facsimile: (610) 567-0712


MORGAN, LEWIS & BOCKIUS LLP

*/s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr.
NJ Attorney I.D. No. 4891989
502 Carnegie Center
Princeton, NJ  08540
john.lavelle@morganlewis.com
Telephone: (609) 919-6688
Facsimile (609) 919-6701

*Attorneys for Aurobindo Pharma USA, Inc.,*
*Aurolife Pharma, LLC, & Aurobindo*
*Pharma, Ltd.*

36