# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°
David M. Estes
———————
*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

°Member of N.J. & N.Y. Bars

Karen G. Kelsen°
Cheryll A. Calderon
Adam M. Epstein°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Alexander Q. Reynoso
Samuel G. Wildman
Julia S. Slater°

May 11, 2021

**VIA CM/ECF**
Honorable Thomas I. Vanaskie, Special Master
Stevens & Lee, P.C.
1500 Market Street, East Tower, 18th Floor
Philadelphia, Pennsylvania 19103

      Re:    *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*,
               No. 1:19-md-02875-RBK-JS (D.N.J.)

Dear Judge Vanaskie:

Plaintiffs respectfully submit this letter summarizing the issues in advance of the upcoming May 12, 2021 status conference.

1. **Plaintiffs' Motion to Strike Aurobindo's Defenses**

The Motion to Strike All of Aurobindo's Defenses is fully briefed, and Plaintiffs are prepared to argue the issue at the hearing.

2. **ZHP Discovery Issues**

Plaintiffs have received the Court's Order in response to the Parties' status updates last week and will be prepared to discuss the issues listed in Paragraph 8 at the status conference.

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 2

### 3. Plaintiffs' Motion to Compel Documents Withheld by ZHP as Chinese State Secrets

Plaintiffs filed their motion to compel the production of documents withheld by ZHP as Chinese state secrets on Monday, May 10, 2021. They ask the Court to set the schedule for ZHP's opposition and their reply.

### 4. Finalizing Transcripts Relating to Depositions of ZHP Witnesses Who Do Not Speak English

ZHP has asked Plaintiffs to stay the forty-five-day deadline for its non-English speaking deponents to correct and sign their deposition transcripts, as established in Case Management Order 20. However, ZHP never asked for a longer deadline for these witnesses during the meet and confer or argument concerning that order. Moreover, Plaintiffs need the transcripts to be finalized promptly, and it was certainly understood that these deadlines existed when the depositions started moving forward. The Court should therefore deny ZHP's request to stay the forty-five-day deadline.

### 5. Hetero Discovery Issues

   A. *Discovery Issues Specifically Related to the Deposition of Bandaru ("B.V. Rama Rao") Vekata Ramarao*

Plaintiffs continue to press Hetero for important documents and information to be produced, in accordance with the steady stream of updates to the Court. In terms of concrete examples, during the deposition of the first Hetero 30(b)(6) witness, Bandaru ("B.V. Rama Rao") Vekata Ramarao, on April 29 and 30, 2021, Plaintiffs identified a number of important documents that were needed to question the witness, that have not been produced. These documents were requested as the deposition proceeded, and after. The list is as follows:

   1) Quality Agreements between Unit 1 and Unit 5.

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 3

2) Change notification(s) from Unit 1 to Unit 5 with regard to the Process Changes in the manufacturing process for valsartan (from 1 to 2, and 2 to 3), and the Unit 5 responses and ultimate sign off.

3) Any documentation of a Unit 5 risk assessment with regard to any of the process changes.

4) Any documentation of a Unit 1 risk assessment with regard to any of the process changes.

5) Confirmation that the TRIMS application/database has been produced, and identification of the information therein with regard to Mr. Ramarao, so that we can address.

6) Confirmation that the QAMS application/database has been produced, and the emails between Unit 1 and Unit 5 with regard to the change notification(s).

7) The Risk Assessment Protocol(s) for Unit 5 and Unit 1.

8) The Unit 5 Change Control Protocol(s), and evaluation(s) of the changes in manufacturing process.

9) Training documents on the TRIMS application/database.

10) Module 3, Section 3.2.S.2.6 regarding manufacturing process development per page 4 of the February 9, 2016 letter to the FDA.

11) Any Unit 5 protocol that addresses genotoxic impurities, as well as any such protocol at Unit 1, in addition to the one protocol we discussed with Mr. Ramarao.

12) Unit 1's response to the Unit 5 Audit Report identified during the deposition, and any further back and forth - this is in addition to the reports of all Unit 5 audits of Unit 1, and to be clear the responses back and forth as well.

Plaintiffs have continued to communicate with Hetero and to demand immediate production or identification of the bates numbers if Hetero contends any have been produced. This has occurred only with regard to a few of the documents, and in fact Hetero asserted that the GMP and regulatory audits by Unit 5 (the Hetero finished dose facility) of Unit 1 (the Hetero API facility where the valsartan contaminated with NDMA was manufactured) had been produced, but Plaintiffs confirmed they cannot be found (with the exception of the one known to Plaintiffs from prior to

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 4

the deposition), and Hetero never identified the bates numbers for the audits. The Court should order the production or identification of these documents' bates numbers by the end of the week.

    B. *Discovery Issues Specifically Related to the Deposition of Dr. Venkataramana Madireddy*

Plaintiffs have also requested the following documents related to Dr. Venkataramana Madireddy's deposition:

13) Documents regarding the NDIPA impurity reference preparation, including but not limited to:

    o The May 4, 2018, record that was issued for a NDIPA impurity preparation including experiment page no. 105; and
    o Documentation regarding batch number BST/NNDIPA/01/003/0002(L).

14) Documents regarding NDMA impurity reference preparation, including but not limited to:

    o The June 18, 2018 record that was issued for an NDMA impurity and experiment page No. 037;
    o Documentation regarding batch number NNDMA/01/001/002; and
    o Report No. HCA18070118, and any certificates of analyses generated.

15) Documents regarding NDEA impurity reference preparation, including but not limited to:

    o The July 7, 2018 record that was issued for the NDEA impurity and experiment page No. 035.

16) Documents regarding the NMBA impurity reference preparation, including but not limited to:

    o The July 6, 2018 record that was issued for the NMBA impurity and experiment page no. 115;
    o Documentation regarding NMBA/03/003/0004(r); and
    o Report No. HCA18100418 and any certificates of analyses generated.

17) Documents regarding the NDBA impurity reference preparation, including but not limited to:

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 5

- o The August 8, 2018, record that was issued for a NDBA impurity and experiment page no. 187;
- o Documentation regarding batch number NDBA/01/002/0002(L); and
- o Report No. HCA19010327 and certificates of analyses generated.

Additionally, to the extent the experiment pages referenced above come from a lab notebook, Plaintiffs have asked that HLL produce the cover page, first page or table of contents for any such lab notebook. Plaintiffs also have also requested that HLL produce any and all cover pages, first pages, or table of contents for the associated lab notebooks for all previously produced experiment pages from the R&D facility. The Court should order the production or identification of these documents' bates numbers by the end of the week.

Alarmingly, Dr. Venkata has testified that he is not the right person to testify as to 30(b)(6) topic 34, so Plaintiffs has asked Hetero to designate an alternate individual to testify as to topic 34. Further, it appears that that topics 32 and 33, which were intended to cover all communications with the FDA regarding the API, including the drug product containing the API, were not clear, and Dr. Venkata has given limited testimony concerning the issue. Thus, in the interest of clarity, as to topic 34, Plaintiffs have asked Hetero to designate an individual or more than one individual, if necessary, to testify on the topic of communications and regulatory filings with the FDA regarding Hetero's ANDA, which incorporates Hetero's Valsartan API Drug Master File.

At this point, Plaintiffs are not asking for additional individuals to be designated on topics 32 and 33 with regard to the drug product, which incorporates the API, but reserve their right to do so if they believe it becomes needed after the testimony of the remaining witnesses.

C. *General Production Deficiencies*

On April 28, 2021, Plaintiffs have identified the following deficiencies in Hetero's production:

- **Annual Product Reviews for U.S. Market**

    - Final versions of the annual product reviews of the API from 2010-2015 and 2019 for Unit-I
    - Final versions of the annual products reviews of 40mg, 80mg, 160mg, and 320mg from 2010-2013 and 2019 for Unit V
    - Final versions of the annual product reviews of the common blend for Valsartan from 2011 and 2013-2019 for Unit V
    - Final versions of the annual product reviews of the common blend for Valsartan and Hydrochlorothiazide from 2010-2019 for Unit V

- **Unit-I:**

    - Internal Audit Reports of Unit I from 2010-2014
    - CAPA-HLL1-18-0046
        - Final version of the summary and conclusion of the CAPA
        - Final version of the status summary of the CAPA
    - CAPA-HLL1-18-0052
        - Final version of the CAPA summary report
        - Final version of the CAPA implementation report
    - CAPA-HLL1-18-0061
        - Final version of the status on summary of corrective actions
        - Final version of the CAPA summary report
    - RP-PT-VT-001
        - Final version of the initial risk assessment for Valsartan
    - RP-PT-VT-006
        - Final version of the risk assessment
    - CAPA-HLL1-18-0052
        - Final version of the CAPA summary report

- **Unit -V**

    - Report titled "Assessment Report for Valsartan Drug Product Proposed to manufactured with New API"

- **Unit-IX Reports relating to Valsartan**

    - LIR-16-353 (B. No. VLS3A001)
    - CR-VL-SRS-16-001
    - CAPA-VL-16-002
    - OOS-HLL9-16-093
    - CR-VN-PD-16-001
    - CR-EDQC-18-0021
    - CR-EDQC-17-0083
    - LIR-17-031

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 7

- **Research and Development**

  o All Master SOP Indexes and document indexes, except for SOP/004

- **Quality Assurance - Master SOP Indexes**

  o Version 00 and Version 01

- **Quality Assurance - Document Index (Unit I)**

  o QA-SOP/000 through QA-SOP/008 and QA-SOP/010

- **Quality Assurance (Unit-I)**

  o All final versions of SOP No. 20-001 - SOP No. 20-030

- **Quality Assurance Standard Operating Procedures (Unit-V)**

  o All final versions of QA001, except for QA001-13
  o All final versions of QA002, except for QA002-01
  o All final versions of QA003, except for QA003-00
  o All final versions of QA003 after QA003-04
  o All final versions of QA004, except for QA004-04
  o All final versions of QA005, except for QA005-03
  o All final versions of QA006, except for QA006-02
  o All final versions of QA007, except for QA007-06
  o All final versions of QA008, except for QA008-06
  o All final versions of QA009, except for QA009-02
  o All final versions of QA010, except for QA010-06
  o All final versions of QA011, except for QA011-04
  o All final versions of QA012, except for QA012-06
  o All final versions of QA013, except for QA013-06
  o All final versions of QA015, except for QA015-05
  o All final versions of QA016, except for QA016-02
  o All final versions of QA017, except for QA017-04
  o All final versions of QA018, except for QA018-02
  o All final versions of QA019, except for QA019-02
  o All final versions of QA020, except for QA020-01
  o All final versions of QA021, except for QA021-06
  o All final versions of QA022, except for QA022-11
  o All final versions of QA023, except for QA023-12
  o All final versions of QA024, except for QA024-08
  o All final versions of QA025
  o All final versions of QA026, except for QA026-05

- All final versions of QA027, except for QA027-01
- All final versions of QA028, except for QA028-05
- All final versions of QA029, except for QA029-04
- All final versions of QA030
- All final versions of QA031 after QA031-06
- All final versions of QA032, except for QA032-14
- All final versions of QA035
- All final versions of QA036, except for QA036-06
- All final versions of QA037, except for QA037-03
- All final versions of QA038, except for QA038-12
- All final versions of QA039, except for QA039-14
- All final versions of QA040, except for QA040-09
- All final versions of QA041, except for QA041-07
- All final versions of QA043, except for QA043-05
- All final versions of QA044 after QA044-06
- All final versions of QA045, except for QA045-03
- All final versions of QA046, except for QA046-03
- All final versions of QA047, except for QA047-03
- All final versions of QA048, except for QA048-09
- All final versions of QA049, except for QA049-04
- All final versions of QA050, except for QA050-03
- All final versions of QA051, except for QA051-01
- All final versions of QA052, except for QA052-04
- All final versions of QA053, except for QA053-00
- All final versions of QA054, except for QA054-02
- All final versions of QA055, except for QA055-00
- All final versions of QA056, except for QA056-03
- All final versions of QA057, except for QA057-03
- All final versions of QA058, except for QA058-11
- All final versions of QA059, except for QA059-04
- All final versions of QA060, except for QA060-09
- All final versions of QA061, except for QA061-01
- All final versions of QA062, except for QA062-01
- All final versions of QA063, except for QA063-03
- All final versions of QA064, except for QA064-00
- All final versions of QA065, except for QA065-02
- All final versions of QA066, except for QA066-00
- All final versions of QA067, except for QA067-07
- All final versions of QA068, except for QA068-00
- All final versions of QA069, except for QA069-00
- All final versions of QA071, except for QA071-04
- All final versions of QA072, except for QA072-03
- All final versions of QA085, except for QA085-01
- All final versions of QA091
- All final versions of QA092, except for QA092-02

- All final versions of QA093
- All final versions of QA094, except for QA094-00
- All final versions of QA095
- All final versions of QA096, except for QA096-02
- All final versions of QA097
- All final versions of QA100
- All final version of QA101
- All final versions of QA102, except for QA102-01

- **Analytical Development- Master SOP Indexes**

  - All final versions of Master SOP Indexes for Analytical Development

- **Corporate Quality Assurance-Document Indexes**

  - Document Indexes: CQA-SOP/061 - CQA-SOP/090

- **Corporate Quality Assurance-Standard Operating Procedures**

  - All final versions of CQA001, except for CQA001-03
  - All final versions of CQA002
  - All final versions of CQA003, except for CQA003-01
  - All final versions of CQA004, except for CQA004-02
  - All final versions of CQA005, except for CQA005-02
  - All final versions of CQA006, except for CQA006-02
  - All final versions of CQA007, except for CQA007-02
  - All final versions of CQA008, except for CQA008-01
  - All final versions of CQA009, except for CQA009-02
  - All final versions of CQA010, except for CQA010-02
  - All final versions of CQA011, except for CQA011-03
  - All final versions of CQA012, except for CQA012-04
  - All final versions of CQA013, except for CQA013-02
  - All final versions of CQA014, except for CQA014-01
  - All final versions of CQA016, except for CQA016-02
  - All final versions of CQA017, except for CQA017-02
  - All final versions of CQA018, except for CQA018-01
  - All final versions of CQA019, except for CQA019-01 and CQA019-02
  - All final versions of CQA020
  - All final versions of CQA023, except for CQA023-01
  - All final versions of CQA024, except for CQA024-00
  - All final versions of CQA025, except for CQA025-00
  - All final versions of CQA028, except for CQA028-02
  - All final versions of CQA029, except for CQA029-00
  - All final versions of CQA030, except for CQA030-00

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 10

- **Quality Control-Standard Operating Procedures**

    - All final versions of QC002
    - All final versions of QC003, except for QC003-012
    - All final versions of QC005, except for QC005-11
    - All final versions of QC007, except for QC007-03
    - All final versions of QC009, except for QC009-11
    - All final versions of QC010, except for QC010-04
    - All final versions of QC011, except for QC011-09
    - All final versions of QC012, except for QC012-12
    - All final versions of QC013
    - All final versions of QC016
    - All final versions of QC017
    - All final versions of QC019
    - All final versions of QC020, except for QC020-03
    - All final versions of QC021
    - All final versions of QC022, except for QC022-04
    - All final versions of QC023, except for QC023-02 and QC023-04
    - All final versions of QC024, except for QC024-05
    - All final versions of QC030
    - All final versions of QC031
    - All final versions of QC032
    - All final versions of QC034
    - All final versions of QC037
    - All final versions of QC043
    - All final versions of QC044, except for QC044-12
    - All final versions of QC045
    - All final versions of QC046
    - All final versions of QC055, except for QC055-05
    - All final versions of QC086, except for QC086-09
    - All final versions of QC117, except for QC117-02
    - All final versions of QC122, except for QC122-10
    - All final versions of QC123
    - All final versions of QC129, except for QC129-07
    - All final versions of QC132
    - All final versions of QC156, except for QC156-03
    - All final versions of QC182
    - All final versions of QC190
    - All final versions of QC251, except for QC251-01
    - All final versions of QC266
    - All final versions of QC272, except for QC272-03
    - All final versions of QC309

- **Document Indexes for Other Departments**
    - Warehouse
        - All final versions except for WH-SOP/008 and WH-SOP/009
    - Engineering
        - All final versions except for EN-SOP/075 and EN-SOP/077
    - Microbiology
        - All final versions except for MB-SOP/068 and MB-SOP/069
    - Production
        - All final versions except for PD-SOP/85

On April 27, 2021, Plaintiffs also requested all documents related to CAPA-VS-069. Hetero has not committed to curing these deficiencies within a specific timeframe. The Court should order it to do so by the end of the week.

Plaintiffs also note that although Hetero produced overlays to correct earlier deficiencies involving metadata and the omission of native PowerPoints, among other issues, with some of its productions last Friday, Plaintiffs are continuing to evaluate whether the overlays were sufficient to correct those deficiencies. Plaintiffs will be prepared to update the Court on these overlays as well as the above document requests at the status conference.

D. *Hetero's Privilege Log*

On May 5, 2021, Hetero withdrew its privilege claims on 143 communications identified in its privilege log, redacted 43 communications identified in its privilege log, but maintained its privilege claims on 49 communications identified in its privilege log. On May 7, 2021, Plaintiffs requested that Hetero de-designate all similar documents pursuant to Judge Schneider's January 8, 2021 Order or to advise if Hetero does not agree that all similar documents should be de-designated. The Parties are scheduled to meet and confer today regarding Hetero's continued privilege assertions and other outstanding requests. Plaintiffs will email Hetero's privilege log to the Court with a courtesy copy of this letter for its review.

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 12

### 6. The Scope and Production of Teva's Litigation Holds

Plaintiffs ask the Court to direct Teva to produce its litigation hold notice(s). It is now apparent that Teva destroyed finished dose valsartan product and valsartan API after the commencement of this litigation.

By way of background, Plaintiffs sought Manufacturer Defendants' litigation holds years ago. In late 2019, upon reviewing Manufacturer Defendants' initial productions, Plaintiffs saw evidence suggesting that Manufacturer Defendants were destroying valsartan finished dose product. Accordingly, on October 25, 2019, Plaintiffs wrote Manufacturer Defendants to remind them of their preservation obligations (which included valsartan API and finished dose), and asked for details concerning any destroyed product to date. *See* Ex. A (10/25/2019 A. Slater Ltr. to S. Goldberg). At the same time, the parties were briefing and arguing "macro discovery" issues relating to Plaintiffs' draft document requests to Manufacturer Defendants. Among those was Plaintiffs' request for copies of Defendants' litigation holds. On November 25, 2019, Magistrate Judge Schneider ruled that Manufacturer Defendants need not produce their litigation holds, but did have to identify (by December 31, 2019) "all recipients of the hold letters and emails, the sender, and when the letters or emails were sent. Further, plaintiffs may address ESI preservation issues with defendants' deponents." *See* [11/25/2019 Order (ECF 303)](#) at ¶ 5.

On December 20, 2019, Manufacturer Defendants wrote back to Plaintiffs to "reject" Plaintiffs' preservation requests and reminders. *See* Ex. B (12/20/2019).

Plaintiffs' January 14, 2020 CMC letter to the Court summarized the preservation/destruction issue as it stood at that time. *See* [Pls.' 01/04/2020 CMC letter (ECF 339)](#) at pp.2-7. Magistrate Judge Schneider addressed the issue at the next CMC on January 15, 2020.

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 13

At the CMC, Manufacturer Defendants claimed they were "following the directive of the FDA [and] are not spoliating evidence." Tr. at 34. Magistrate Judge Schneider specifically addressed whether, going forward, Manufacturer Defendants will not destroy any potential evidence. *Id.* He specifically reserved the issue (to be addressed in part at depositions pe the November 25, 2019 order) of whether any Manufacturer Defendant spoliated evidence in the past:

> THE COURT: Well isn't the -- doesn't the issue of whether spoilation occurred in the past put the cart before the horse? I mean, we'll deal with that issue down the road. But I think what plaintiff is concerned about is destruction of product in the future. And if the Court ultimately has to decide that issue, I don't see how it can decide that issue unless we know the universe of what we're talking about.
>
> MR. GOLDBERG: Yeah, I think that's a -- I think that's a fair point. I mean, I think, you know, that there is that question about what we do with drugs that are -- that, you know, with the drugs that are still in the possession of the manufacturers that have been, you know -- drugs that have been returned upstream, so to speak, by the -- by the retailers and wholesalers, or from consumers, what you do with that at this point.
>
> But -- but the notion, what has happened and has happened pursuant to FDA directive is we're just concerned that that that shouldn't be viewed as spoliation since we're doing what the FDA has approved us to do. And I don't know that, you know, each defendant's going to be in a different place on this. But I agree with you that, you know, what we do going forward is something that we can work with the plaintiffs on and -- and, you know, possibly a good starting point are these requests for information that they've put in the agenda submission.

\* \* \*

> THE COURT: I don't think this has to be formal interrogatories or document requests. It seems to me that you can get this information by informal discussions with, you know, defense counsel over the phone. And then at the appropriate time, I'll say file your motion if you can't agree on what has to be preserved. We'll deal with the spoliation if there is one down the road.

> That's not the immediate thing. I think the more pressing issue is going forward what has to be preserved. So why don't plaintiff continue their discussions with defendant so that you have enough information, if there is a dispute and you have to file a motion asking the Court to order the defendants to preserve pills, you can talk intelligently about what precisely is you're asking be preserved, because the Court wants to know how much, where it is, what's this going to cost, et cetera, et cetera.

1/15/2020 CMC Tr. at 35-37.

Following the January 15 CMC, Plaintiffs asked each Manufacturer Defendant to confirm whether any product had been destroyed. *See, e.g.,* Ex. C (1/23/2020 L. Hilton email to Teva Counsel). Teva responded as follows: "We can confirm on behalf of the Teva Defendants that no recalled product has been destroyed as of today, January 27, 2020." *Id.*

On April 14-15, 2021, Plaintiffs deposed one of Teva's corporate designees, Mr. Daniel Barreto, former Senior Vice President, Global Quality Compliance at Teva. Mr. Barreto testified to a number of troubling things vis-à-vis product destruction:



Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 15



16 metric tons of destroyed valsartan API were retained by Teva.  *Id.* at 676.

[redacted]

### 7. Aurobindo's Privilege Log

Plaintiffs and Aurobindo have a meet and confer scheduled for Tuesday afternoon but that it will not be completed before this letter was filed. For the Court's convenience, Plaintiffs will

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 17

email a copy of Aurobindo's current privilege log with a courtesy copy of this letter. At this time, the following reflects Plaintiffs' position:

1. **Aurobindo's Privilege Log Regarding Documents from ToxRox and Meridan:** These issues have been fully briefed.

2. **Aurobindo's First Privilege Log:** On March 5, 2021, Aurobindo provided Plaintiffs with a privilege log, containing the cast of characters as required by the Court. This log contained 159 entries. The parties have met and conferred on this log numerous times already and have the following remaining disputes:

   - Improper Work Product Designations: The March 5, 2021 privilege log contains only three individuals who are lawyers – Tini Thomas, Hunter Murdock, and Faith A. Phillips. The vast majority of the entries (which will be provided) do not contain any lawyer on the communication or as an author of the document. There is also no explanation as to why the purportedly protected documents are entitled to work-product protection when they are authored by and do not involve any attorney. There is no information in the log to determine whether the particular entries were prepared in anticipation of litigation and for no other purpose. *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at * 6 (D.N.J. Dec. 5, 2016) (Schneider, J.). Some entries, such as Auro-MDL 2875-0088941, claim work product protection related to 2006 litigation, with no explanation as to what that litigation was or whether it was in any way related to this one. *See Leonen v. Johns-Manville,* 135 F.R.D. 94, 97 (D.N.J. 1990) (requiring "a close connection in parties or subject matter between . . . two [separate] matters").

   - Improper Privilege Designations: For the same reasons, Aurobindo's privilege designations are improper because they do not provide detail sufficient to determine whether the non-lawyer communications are entitled to attorney-client privilege protection, which is an even higher bar. *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) (explaining that "if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected"). Several entries also claim privilege/work-product protection over correspondence that appears to have been sent to whole group email lists and otherwise broadly disseminated, which also requires de-designation. *Id.* at 478.

   - There are also a substantial number of entries involving third-parties with no explanation as to why such communication with a third-party should be entitled to privilege or work-product protection.

3. **Aurobindo's Latest Privilege Log:** On Wednesday, April 21, 2021, Defendants served an updated privilege log. While the previous log contained only 159 entries, this new log contains 3,479. There are many questionable entries in the log, including documents titled

Hon. Thomas I. Vanaskie, Special Master
May 11, 2021
Page 18

"valsartan risk assessment report," "valsartan risk investigation report," "risk assessment report," "out of trend results.pdf," and "MF 023084 Nitrosamine General Advice Letter." At this time, Plaintiffs also cannot meaningfully evaluate most of it, because Aurobindo failed to provide a cast of characters (as was previously ordered by the Court). Following Plaintiffs' email to the Court on Saturday, April 24, 2021, Aurobindo agreed to provide a supplemental log on Tuesday, though at the time Plaintiffs finalized their agenda letter, they had not received it. Unless, Aurobindo substantially amends its log and provides the case of characters, Plaintiffs anticipate requiring the Court's guidance during the conference.

Thank you for your courtesies and consideration.

Respectfully,

ADAM M. SLATER

cc:   All Counsel (via CM/ECF)