# Exhibit FF

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

———————————————————

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

———————————————————

CIVIL ACTION NUMBER:

19-md-02875-RBK-KMW

STATUS CONFERENCE
VIA REMOTE ZOOM
VIDEOCONFERENCE

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
May 3, 2021
Commencing at 10:00 a.m.

**B E F O R E:**                SPECIAL MASTER THE HONORABLE
                               THOMAS I. VANASKIE

**A P P E A R A N C E S:**

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey  07068
        For the Plaintiffs

        KIRTLAND & PACKARD, LLP
        BY:  BEHRAM V. PAREKH, ESQUIRE
        1638 South Pacific Coast Highway
        Redondo Beach, California  90277
        For the Plaintiffs

        GOLDENBERG LAW, LLC
        BY:  MARLENE J. GOLDENBERG, ESQUIRE
        800 Lasalle Avenue, Suite 2150
        Minneapolis, Minnesota  55402
        For the Plaintiffs

                Camille Pedano, Official Court Reporter
                     camillepedano@gmail.com
                        609-774-1494

        Proceedings recorded by mechanical stenography; transcript
                produced by computer-aided transcription.

**A P P E A R A N C E S (Continued):**

KANNER & WHITELEY, LLC
BY:  DAVID J. STANOCH, ESQUIRE
701 Camp Street
New Orleans, Louisiana  70130
For the Plaintiffs

DUANE MORRIS, LLP
BY:  SETH A. GOLDBERG, ESQUIRE
     JESSICA PRISELAC, ESQUIRE
     KELLY BONNER, ESQUIRE
30 South 17th Street
Philadelphia, Pennsylvania  19103
For the Defendants, Prinston Pharmaceuticals,
Solco Healthcare U.S. LLC, and
Zhejiang Huahai Pharmaceuticals Ltd.

GREENBERG TRAURIG, LLP
BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
     LORI G. COHEN, ESQUIRE
     STEVEN M. HARKINS, ESQUIRE
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia  30305
For the Defendants, Teva Pharmaceutical Industries Ltd.,
Teva Pharmaceuticals USA, Inc., Actavis LLC,
and Actavis Pharma, Inc.

CIPRIANI & WERNER, P.C.
BY:  JESSICA M. HEINZ, ESQUIRE
     JILL FERTEL, ESQUIRE
450 Sentry Parkway
Blue Bell, Pennsylvania  19422
          And
MORGAN, LEWIS & BOCKIUS, LLP
BY:  JOHN P. LAVELLE, JR.
1701 Market Street
Philadelphia, Pennsylvania 19103
For the Defendants, Aurolife Pharma LLC
and Aurobindo Pharma USA, Inc.

HILL WALLACK, LLP
BY:  ERIC I. ABRAHAM, ESQUIRE
     NAKUL Y. SHAH, ESQUIRE
21 Roszel Road
Princeton, New Jersey 08540
Attorney for Defendants, Hetero Drugs and Hetero Labs

**A P P E A R A N C E S (Continued):**

        ULMER & BERNE, LLP
        BY:  JEFFREY D. GEOPPINGER, ESQUIRE
        600 Vine Street, Suite 2800
        Cincinnati, Ohio 45202
        For the Wholesaler Defendants and AmerisourceBergen

        BARNES & THORNBURG, LLP
        BY:  SARAH E. JOHNSTON, ESQUIRE
        2029 Century Park East, Suite 300
        Los Angeles, California  90067
        For the Retailer Defendants and CVS Pharmacy, Inc., and
        Rite Aid Corporation


**ALSO PRESENT:**

        LORETTA SMITH, ESQUIRE
        Judicial Law Clerk to The Honorable Robert B. Kugler

        Larry MacStravic, Courtroom Deputy

```
 1    (PROCEEDINGS held remotely via Zoom videoconference before
 2    Special Master The Honorable Thomas I. Vanaskie at 10:00 a.m.)
 3              JUDGE VANASKIE:  Good morning, everyone.
 4              MR. GOLDBERG:  Good morning, Your Honor.
 5              JUDGE VANASKIE:  Good to see you all.
 6              MS. COHEN:  Good morning.
 7              JUDGE VANASKIE:  Good morning.  Thank you for
 8    accommodating the change in schedule from last Wednesday to
 9    today.  And we'll get started.
10              I have the agenda letters from last week and we will
11    follow along the agenda letters.  I have a couple of questions
12    I would like to ask with respect to the motion to seal.  I've
13    been through most -- I've been through it all.  I'm close to
14    making a decision.  I just have a couple of questions that it
15    would be helpful to have answered as I make my final decision
16    on the individual documents, the 29 or so documents that are at
17    issue on that particular motion.
18              We have the motion for a protective order that's been
19    filed by ZHP, and I intend to ask a couple of questions.  But
20    we'll start with the agenda letter.  And I'm following along
21    the plaintiffs' agenda letter in terms of the order of matters
22    to cover.
23              And the first issue is the plaintiffs' request for Mr.
24    Chen's custodial file.
25              I do want to say, of course, you know, follow the same
```

1  protocol.  Unless you're speaking, please mute your device; and

2  if you need to be heard, just let me know.  And we'll get

3  started.

4        Camille, our court reporter, is here.  With that said,

5  let's proceed.

6        So, Mr. Slater, you've made this request for the

7  custodial file of Mr. Chen.  That had been a matter that I

8  understand, and I'm sure I'll be corrected if I'm wrong, that

9  Judge Schneider deferred ruling on or at least did not require

10  the production of the custodial file previously.  You've

11  submitted to me quite a lot of information in support of that

12  request.  I didn't know if there's other matters that you

13  wanted to say with respect to your request for the custodial

14  file.

15        MR. SLATER:  Thank you.  Thank you, Your Honor.

16        I'll just really just focus in and reiterate that I

17  think that we've established significant direct involvement by

18  Mr. Chen in highly relevant matters, including a series of

19  meetings as to which our understanding is no notes exist from

20  the people who attended, based on Mr. Min Li's deposition.  And

21  we also, obviously, have the very important matter of this

22  email that we learned about just in the last week or so

23  indicating that ZHP knew that there was NDMA contamination of

24  its valsartan at least as of July 2017 and I think that we

25  should have the right to see all of his documents ultimately,

1    this is a steppingstone to his deposition, but let's start with

2    the custodial file.

3         Currently, his deposition is scheduled.  We know the

4    defense intends to move.  We will have a vigorous opposition to

5    that motion, as I'm sure you can imagine.  But I think that

6    you're right, Judge Schneider said he wasn't going to order it

7    at the time but wasn't prejudging what would be developed in

8    the record as we went forward, and we think we've established a

9    strong record to obtain that custodial file.

10        Thank you.

11        JUDGE VANASKIE:  All right.

12        Mr. Goldberg, will you be addressing this issue?

13        MR. GOLDBERG:  I will, Your Honor.  And I'm going to

14   address it in some detail because this is a very significant

15   request for the client, for our client, ZHP.  And so I'm going

16   to ask for the Court's indulgence for a few minutes to get into

17   that detail.  And I'm going to even put up a few documents on

18   the screen that we'd like to share with the Court and at the

19   same time, my colleague, Jessica Priselac, will email you the

20   documents so that you have them.

21        Let me first get --

22        JUDGE VANASKIE:  May I interrupt you for a second, Mr.

23   Goldberg, with a question.  And the question is whether I

24   should defer hearing this until you submit the documents and

25   ask of your availability say Wednesday or Thursday of this week

1  because it is a significant issue and I do have a very

2  comprehensive record submitted by Mr. Slater with multiple

3  exhibits and I know it just came up last Tuesday, I suppose, in

4  terms of written submission.  It may have come up in your

5  discussions, I understand that.  But I don't want to preclude

6  you from making a complete showing, if you think you can make

7  that now, emailing documents to me which I won't be able to

8  review.  I hope you understand that.

9          MR. GOLDBERG:  Your Honor, these are just a few

10  demonstrative exhibits --

11          JUDGE VANASKIE:  Okay.

12          MR. GOLDBERG:  -- in our view to help this argument.

13          In our view, at a minimum, briefing on this issue is

14  required.  That's what Judge Schneider ordered.  This Court has

15  not yet set a briefing schedule for this, for this request.

16  Mr. Slater's request was made by way of a letter.  What we'd

17  like to do is share with Your Honor some of the salient points

18  that demonstrate that Mr. Chen's custodial file is not

19  necessary in this case, to give you that backdrop and to

20  request at a minimum that the Court provide briefing on the

21  issue which we would be happy to submit.  But as I think you'll

22  see, Your Honor, this issue requires a full vetting.  If the

23  Court is not inclined to rule in defendant's favor, we want to

24  have that opportunity to submit that briefing.

25          But if Your Honor would indulge me for a few minutes,

1    I can show you those demonstrative exhibits.

2            JUDGE VANASKIE:  Certainly.  You proceed.

3            MR. GOLDBERG:  And let me just start by way of saying

4    that the backdrop for this request is that Mr. Chen is the

5    founder of ZHP.  ZHP is a global company with more than 7,000

6    employees worldwide.  It has dozens of affiliates and

7    subsidiaries.  It manufactures and distributes dozens of

8    products, not just API and finished dose, around the world.

9    Mr. Chen is the general manager.  He oversees the company, the

10   7,000-person company.  He's been in that role since its

11   inception, which is more than 20 years ago.  And while the

12   issue of the impurity in valsartan is important, it affected

13   only those involved in the manufacture of valsartan at ZHP, and

14   the record adduced to date is very clear that Mr. Chen is not

15   so involved.

16           And I'll share with Your Honor a few of the slides

17   that I wanted to show you.

18           And I guess I would ask Mr. MacStravic, if you could

19   allow me the ability to show a document, to share my screen?

20           JUDGE VANASKIE:  Okay, Larry?

21           THE COURTROOM DEPUTY:  I should go ahead and try it.

22           JUDGE VANASKIE:  All right.

23           MR. GOLDBERG:  It's still saying host disabled

24   participant's screen share.

25           MR. SLATER:  Can I ask a question while we do this --

```
 1              JUDGE VANASKIE:  Certainly.

 2              MR. SLATER:  -- as to whether or not the information

 3    that we're about to see is what was found in the brief that was

 4    submitted to the Court last week?

 5              I'm sure it's not a surprise, Judge, that from

 6    plaintiffs' perspective, this was fully briefed for the Court

 7    in our agenda letters.  We think that's more than sufficient.

 8    That's how the Court has been addressing these custodial

 9    productions throughout this litigation.  If they are now going

10    to make a presentation of things that aren't in the letters

11    submitted, you know, we obviously object to it.

12              We'll defer to whatever Your Honor says, but we have a

13    real problem with them dropping this on us today, especially

14    when they asked for the Zoom conference the other day and

15    didn't tell us the reason was because they were going to want

16    to do this.  So we have some concerns.

17              JUDGE VANASKIE:  I understand, Mr. Slater.  I will

18    allow this presentation to be made.

19              MR. GOLDBERG:  Thank you, Your Honor.

20              Your Honor, the plaintiffs -- and you should have

21    these documents, Your Honor, but the plaintiffs made a number

22    of assertions in their letter, seven in particular, to argue

23    that Mr. Chen is materially involved in the case, and what we

24    provided to Your Honor are excerpts of testimony to show you

25    that Mr. Chen is not materially involved in the case.
```

1      For example, number one, plaintiffs say that he was

2  the apparent architect of the effort by ZHP to use the zinc

3  chloride process.  Ms. Ge, the head of quality assurance, said

4  that he is in top management, he is in charge of the strategic

5  planning or management of the company.  As for the daily tasks

6  of change, control or deviation investigation, he never was

7  involved.

8      Plaintiffs argue that after June 2018 disclosure of

9  the contamination to the FDA, Mr. Chen took control of the

10  crisis.  Ms. Ge testified that for the NDA impurity

11  investigation, Mr. Chen never got involved in the root cause

12  analysis, the root cause investigation or creation of the

13  deviation report.  He never got involved.

14      They argue that Mr. Chen regularly visited the United

15  States to oversee the ZHP marketing operations.  The testimony

16  is that he came to ZHP once or twice -- or to the U.S. once or

17  twice a year.  Again, he is the global -- the head of a global

18  company of 7,000 employees.

19      They argue that Mr. Chen has involvement in FDA

20  inspections.  They cite to a few inspection reports where Mr.

21  Chen is identified as attending.  Mr. Chen, as the head of the

22  company and the highest-ranking official, is required to attend

23  and he attends the opening meeting and the closing meeting, but

24  he is not a subject matter specialist that walks through the

25  inspection with the FDA.  And that is clear.  And, in fact,

this week they will be deposing the head of our regulatory

affairs department and she will testify accordingly.  And if

Your Honor would like to have it today, we'd be happy to submit

an affidavit from Ms. Lin.

They say that Mr. Chen knew about the contamination

prior to July 2017.  Ms. Ge again testifies he's not involved

in the day-to-day activities of the API or finished dose

manufacturing.

They go on, and I'll jump to Number 7, that he was

involved in every point in the process, has direct knowledge

from all corners of the company, and Mr. Min Li, who's head of

one of the quality functions at ZHP says, such detail and

technical details were never discussed with Mr. Chen.

The reality, Your Honor, is Mr. Chen, like any other

CEO of a company of 7,000 employees, gets information reported

up and that's it.  He doesn't report down.  He doesn't provide

information down.  Of course he understood what was happening.

Of course he attended some meetings.  That's what CEOs do.  But

that does not mean that he has information that would be

materially additive to this case, which is why I want to show

Your Honor the next document to really bring home the point.

Your Honor, this is an analysis of Mr. Chen's -- of

the deposition exhibits shown to date.  This is a very

important document for Your Honor to focus on.

They've now had the deposition of 11 ZHP party

1   witnesses, nine of whom provided 30(b)(6) testimony.  That's

2   been 115 hours of testimony, not including the 75 percent

3   multiplier for translation.  They've shown the witnesses 338

4   exhibits.  Out of the 367,000 documents that have been produced

5   from 80 ZHP custodians, they found 338 to be the most critical

6   to show witnesses to get their testimony to put their case

7   together.  Of those 338, only 13 mention Mr. Chen.  Of those

8   13, six are email that mention Mr. Chen.  None of them are

9   email that he sent to any of the 80 custodians.  These are the

10  custodians they identified based on the core discovery.  These

11  are the custodians that have been designated as 30(b)(6)

12  witnesses.  He has not emailed any of them because if he did,

13  it would be in their custodial files.  Only two of the 13 email

14  exhibits were sent to him, just two.  Two of them were email

15  that he was copied on, one of them was an email that he was

16  blind copied on, and one an email that he received -- or that

17  had an exhibit that mentioned him but was not sent or received

18  by him.  And you can see the minuscule percentages of either

19  the exhibits or even the production that these documents amount

20  to.

21          The other seven deposition exhibits that mention Mr.

22  Chen are zero -- none are documents he authored, not

23  surprisingly, because he's the CEO of a 7,000-person company.

24  Three he's mentioned in organizational charts.  Of course he's

25  at the top.  One is a Power Point that notes him as a founder,

1  two are EU or FDA inspection reports that note his role as the

2  general manager, and one is a memorandum addressed to him.

3          Again, the documents demonstrate that Mr. Chen's

4  custodial file would not be additive to this case because if

5  there was a materially relevant document in this case with Mr.

6  Chen on it, it would have been identified within the custodial

7  files of the 80 ZHP party custodians.

8          The email -- Mr. Slater referred to a memo from 2017.

9  Mr. Chen was not sent that memo.  He's not a recipient of that

10  memo.

11          In our view, the production of Mr. Chen's custodial

12  file clearly would not be additive to this case and this Court

13  should not grant that kind of a production when it is so

14  patently, at a minimum, duplicative.

15          The last document that I wanted to show you, Your

16  Honor, presents a unique issue.  It makes Mr. Chen unique among

17  all of the other custodians at ZHP, and this is why a full

18  brief on this issue is required.

19          Unlike the other custodians at ZHP, Mr. Chen is an

20  official in the People's Republic of China Communist

21  Government.  And we've already covered with Your Honor a number

22  of the state secret issues, but Mr. Chen holds various roles in

23  different government-sponsored agencies and in the government

24  in China.  He's the deputy to the 13th National People's

25  Congress, he's a member of the Standing Committee of the 16th

People's Congress of Linhai City, he's the vice president of

the Zhejiang Chamber of Commerce and so on.

        What this means is that Mr. Chen's custodial file is

likely to be encumbered with a large amount of documents that

are subject to the state secret rule that we've discussed and

in ways that we haven't discussed them because we've only

discussed the state secret rule as it applies to the documents

that are at issue in this case.  Because so few documents at

issue in this case are likely to pertain to this case in Mr.

Chen's custodial file, the vast majority are likely to be

irrelevant, and then on top of that, subject to state secret

rules.  And this issue is -- this issue is of paramount

importance to ZHP and to Mr. Chen because it results in

potential exposure under the Chinese state secret rules which

have to be fully vetted before the production of any custodial

documents by Mr. Chen.

        So, Your Honor, we think the issue of the production

of his custodial file is premature.  We think these issues need

to be fully vetted.  As Your Honor can see, the assertions in

plaintiffs' letter about his involvement are contradicted by

the facts of record, they're contradicted by the normal

practice of general managers and CEOs in global companies with

thousands of employees, they're contradicted by the documents

that have been produced to date that plaintiffs have relied on,

and there's the added impediment of great significance under

```
 1   China law due to his role with the Chinese government.
 2           And so at a minimum we would ask Your Honor for
 3   additional briefing on this issue, but we think Your Honor
 4   could conclude it by ordering, as Judge Schneider did, that the
 5   production of the custodial file is not warranted.
 6           JUDGE VANASKIE:  All right.  Thank you.
 7           Mr. Slater.
 8           MR. SLATER:  Thank you, Judge.
 9           I'll try to take these arguments one at a time.
10           The first part was the chart pulling out things we
11   said in our brief which, as Your Honor recognized, we didn't
12   just make statements, we supported what we said with the
13   record.  And I'll start with the first example because it's
14   probably an easy one to use to swipe away the rest of that as
15   having any probative value here of any significance.
16           The first quote that they listed on their Power Point
17   said something about him being the architect of the zinc
18   chloride process, and we know from the documents that we had,
19   and we presented this to the Court, he was the one who
20   continually was pushing to lower the cost so much that they
21   could capture all of the market share.  That was the strategy
22   for valsartan.  That's why they went to the zinc chloride
23   process.  And there are emails that reflect that, for example,
24   he had a conversation with, I believe it was Hie Wang who runs
25   their U.S. distributor, where Mr. Chen, apparently, during one
```

1    of his United States visits, was talking about them -- about

2    ZHP's subsidiary Solco needing to drop the prices even more so

3    they didn't have a problem like they did with losartan.

4    Apparently, they didn't drop the prices enough and didn't

5    capture enough market share.  So he had direct supervisory

6    involvement and direction on the strategy.

7           Now, what do they -- what does ZHP put in their Power

8    Point to refute that, that he's the architect of the zinc

9    chloride process?  Testimony from a quality assurance person

10   who would have had absolutely no involvement with that strategy

11   and it says, the quote from her deposition, as I took notes,

12   said he wasn't involved in the deviation investigation.  That's

13   not even the subject of what we were talking about in what they

14   quoted.  I watched Ms. Ge's deposition.  She acknowledged she

15   had no idea what Mr. Chen actually knew.  She attended a few

16   meetings with him for which she took no notes, and there was no

17   testimony anybody else took notes, and she certainly doesn't

18   know who else he spoke to, what other meetings he attended,

19   what else he knew.  How could she know?  It would be

20   impossible.  So the idea that that testimony that they put up

21   in the right-hand column of their Power Point in any way

22   refutes what we've stated in our brief is just not accurate,

23   and I've just given you an example showing the actual examples

24   they gave are completely off-point and not probative.

25           Now, the next argument that counsel made that they

 1    looked at the statistical analysis of deposition exhibits used

 2    to date.

 3            Number one, we already have an order from this Court

 4    that we're deposing Mr. Chen in about a month.  So we didn't

 5    need to establish a record to get his deposition.  If ZHP wants

 6    to move to try to prevent that deposition, they have the burden

 7    and I don't see how they can make that burden on this record.

 8    But let's go further.

 9            We don't have Mr. Chen's custodial file.  I would

10    think that would explain a lot of why we don't have his

11    documents because when we go into the next point, we now know

12    that a very important document, an email sent to a bunch of

13    high-level people in the company which confirms that ZHP has

14    not been truthful with the world regulatory authorities since

15    this came out, and that they were hiding the contamination for

16    approximately a year, we believe even longer, we know that now,

17    we have a hard document that shows that, which we believe

18    accidentally was produced, and we can go through that, we've

19    gone through that in our letter, it was never intended to be

20    seen by us.  And Your Honor's very familiar with ESI and what

21    can be done and why it is that when they renamed the date of

22    the document with the copy date, that probably evaded the net

23    that was being cast to pull those documents out of the

24    production before we saw it.  This is disturbing but it's very

25    straightforward.

1           So what else do we know about that email?  Every
2   single other person that received it, there's no indication
3   they received it.  It wasn't in their custodial files and they
4   weren't listed as duplicate custodians.  We also know the
5   report that was written following that email and as a result of
6   that email does not exist as of today.  Nobody's been able to
7   produce it.

8           We spoke with ZHP in a meet and confer Friday at 4:00
9   and they told us as of now they haven't been able to locate
10  that report, which Mr. Li acknowledged the spreadsheet we found
11  out about it in said that he -- he said, don't do any more work
12  on it, don't issue it because of the sensitive impurity.  That
13  was in April of 2018, two months before Novartis forced ZHP to
14  disclose the contamination.

15          So when counsel continuously said there's no documents
16  in the production implicating Mr. Chen's involvement, that's
17  our point.  We already know, we have hard evidence on the core
18  issue in this whole case, that documents seem to have been
19  deleted from the production and we're now going to be asking
20  for more custodial productions which, based on our meet and
21  confer, ZHP's not likely to resist.

22          Finally, this government official argument is I'll use
23  the word disturbing again.  When ZHP chose to sell valsartan in
24  the United States, they didn't tell the FDA, by the way, if
25  there's a problem, our top officials won't be available because

1  of a Chinese state secret issue.  They came into the United

2  States and sold their product, took massive profits from that,

3  took the market share.  There's the reason ZHP is the heavy in

4  this because of Mr. Chen's strategy to drop the price so much

5  that they could capture the world market share.

6          To say that because he's a government official that

7  somehow we don't get the custodial production, they already

8  made all their arguments and Judge Schneider rejected them and

9  let us have the deposition and said I'll wait on the custodial

10 file.  Whatever his reasoning was, there's a record now that's

11 very strong that shows he had direct involvement, he's not a

12 figurehead, direct communications with people, yet none of

13 those people who were deposed, Min Li, Jucai Ge, and I can tell

14 you Linda Lin, who I'm deposing tonight is not going to know

15 either, what Mr. Chen knew, when he knew it, what decisions he

16 made, who he spoke to.  Because it's a big organization, he's

17 the one who knows.  He knows what he knew and when he knew it.

18 He's going to need to answer for this company, and the first

19 step to that is going to be his custodial file.

20         So we ask Your Honor, number one, to grant our request

21 for the custodial file; and two, to reject any request by ZHP

22 to further encumber this issue or delay this issue with this

23 amorphous request for briefing.  We briefed it.  Our agenda

24 letters are detailed, this is how we produce these -- bring

25 these issues to the Court.  There's absolutely no need to have

1    a briefing schedule on this when we're supposed to depose this

2    man in a month.

3            Thank you.

4            JUDGE VANASKIE:  All right.  Mr. Goldberg.

5            MR. GOLDBERG:  Thank you, Your Honor.  Just a few

6    points in response.

7            First, Judge Schneider never decided that Mr. Chen

8    should be deposed.  What he said was put a date on the

9    schedule, then you can file a motion for protective order based

10   on the testimony to demonstrate that the deposition should be

11   precluded, but he never ordered the deposition.

12           Second, he did deny the production of the custodial

13   file, based on the same arguments that I'm making today, he

14   decided back in October of 2019.

15           Third, this issue has not been briefed.  Plaintiffs

16   did not raise the issue of Mr. Chen's custodial file until a

17   week ago Friday.  Since October of 2019 until a week ago

18   Friday, this issue had not been renewed; and then they only

19   renewed it in an email without any support.  Then they filed

20   their letter last week with what they claim supports their --

21   their renewed request.  The testimony shows that the renewed

22   request is insupportable; but if Your Honor takes a careful

23   look at their documents, Your Honor's going to see that they do

24   not support the request.

25           An important point here is that the second

1   highest-ranking official at ZHP is going to be deposed and his

2   custodial file has been produced.  His name is Jun Du.  And

3   Judge Schneider really focused on Jun Du in place of Mr. Chen

4   in ways at plaintiffs' urging because Mr. Du is in the United

5   States.  And Mr. Du is someone who's the second highest-ranking

6   official at ZHP and he is also the highest-ranking official at

7   the various U.S.-related subsidiaries.

8           The point about the documents is really persuasive.

9   They had 80 custodians.  Any communication that Mr. Chen had

10  with any of those 80 custodians would be produced and that

11  includes Mr. Du, the second highest-ranking official.  The fact

12  that they've only identified 13 documents with mentioning him

13  to show in their key depositions on the issues of testing, on

14  the issues of manufacturing, on the issues of the quality

15  control, on the issues of the process change, and they haven't

16  -- they haven't shown that Mr. Chen has had any material

17  involvement demonstrates that the custodial file would not be

18  additive to this case.

19          There's nothing that's going to be in the custodial

20  file that isn't -- that's material to this case that would not

21  have already been produced among the 80 custodians, 80.  That's

22  more than any other defendant in this case by far.  That's all

23  of the people that were involved in the core discovery and it's

24  all of the 30(b)(6) witnesses.

25          The plaintiffs are mischaracterizing this, Your Honor,

1    and it's not surprising because this is what plaintiffs do,

2    this 2017 document.  First of all, it refers to a different

3    drug called irbesartan.  That's the subject of another

4    litigation in this matter.  And the custodians they've

5    identified are custodians relating to irbesartan, a different

6    drug, but it's important for Your Honor to know that ZHP fully

7    intends to cooperate with plaintiffs with respect to those 15

8    document requests that they've issued, including those

9    additional custodians, and we had a call with them on Friday to

10   walk through each of those.  ZHP has addressed each of those

11   and, as it has for the entire two and a half years we've been

12   litigating, intends to cooperate on all of those requests and

13   to work with plaintiffs on pulling together the information

14   they're seeking.  Now, some of it may already be produced, some

15   of it may be subject to further negotiation, but those

16   custodians we intend to produce.  And that's another reason for

17   Your Honor to withhold the Baohua Chen custodial file because

18   we're giving them the material information or the information

19   that they think is material.  But that document has no

20   connection to Mr. Chen, he didn't receive it, and it pertains

21   to a different drug.

22        So, Your Honor, our view is still that this issue is

23   premature but we think we've provided Your Honor with the

24   information necessary for Your Honor to rule, if you needed to,

25   that the custodial file should not be produced at this time.

```
 1          JUDGE VANASKIE:  All right.  So just to be clear on

 2   this, your reference to production of custodial files, et

 3   cetera, that are being sought by the plaintiffs are those

 4   requests that are made at Page 24 of Mr. Slater's letter of

 5   April 27th?

 6          MR. GOLDBERG:  That's correct, Your Honor.  In fact,

 7   what -- and I'm sorry, I'm just trying to find something for

 8   Your Honor.  What we intend to do is to re-interview those ten

 9   custodians.  There are four new custodians they requested; we

10   intend to be interviewing those.  We intend to be doing a

11   collection -- review and collection and production of documents

12   pertaining to those new custodians.  And there's one custodian

13   that we have to discuss with plaintiffs, her name is Maggie

14   Kong.  We think that that request isn't warranted but we'll

15   discuss that with plaintiffs.  We don't think that that issue

16   is ripe at this time.  But what we are confident in is that we

17   will be providing to plaintiffs the information that they think

18   is material.  We don't agree with it but they want the

19   additional discovery that they think is material and so we're

20   willing to cooperate.  That's different than Mr. Chen's

21   discovery which is not material.  But we think by -- you know,

22   we think the Court should certainly take into consideration the

23   fact that the information they think is material is going to be

24   the subject of further discovery.

25          JUDGE VANASKIE:  All right.
```

```
 1            Mr. Slater, with respect to these -- the requests that
 2    started on Page 24 of your April 27, 2021, letter, should I
 3    defer ruling on the custodial file of Mr. Chen until you see
 4    what's produced?
 5            MR. SLATER:  No, Your Honor.
 6            JUDGE VANASKIE:  I knew you'd say no.  But why
 7    shouldn't I?
 8            MR. SLATER:  I'll tell you why.  This is obviously --
 9    the case -- the litigation now has taken on a new -- or the
10    case against ZHP has taken on a new dimension.  And I want to
11    be very clear about something.  The people that we've asked for
12    additional custodial productions from, we've demonstrated, and
13    that's why we believe ZHP has agreed now to produce them, we've
14    demonstrated the materiality.  That's not a question.  We don't
15    agree Maggie Kong shouldn't have her custodial production
16    produced.  She's actually Baohua Chen's chief of staff who was
17    the main go-between with everybody.  Min Li testified
18    everything came through her and it looks like she also had
19    substantive involvement.  And, again, this is a way for us to
20    start to, as best we can, seal the documents.  But Baohua Chen
21    stands as an additional and necessary custodian, and we're a
22    month from his deposition.  So we can't be now waiting until we
23    see those custodial productions and then we wait and wait and
24    wait when we've made the showing.
25            And I want to be very clear about something.
```

1              Number one, Baohua Chen's deposition was granted.  We

2    made the showing and Judge Schneider said to the defense, if

3    you want to move for a protective order later, you can do that,

4    but the deposition was in the order as a deposition.  That's

5    why it has a date on the calendar, number one.

6              Number two, again, you're hearing these arguments

7    about what we have in the production.  The production by ZHP is

8    not trustworthy.  We've proven that on a very material issue.

9    And when you look at that document, I want to be very clear,

10   Your Honor, because we gave you the actual deposition testimony

11   where Min Li testified to what the document said, it says very

12   clearly, without any caveat, without any question of maybe or

13   anything, they were looking at irbesartan, they were looking at

14   what they thought was a nitrosamine impurity that they were

15   finding in irbesartan based on what they were doing with the

16   production process.  And in the email it says, this is very

17   similar to the NDMA that is being formed in the valsartan when

18   we quench it with sodium nitrite, which as Mr. Li acknowledged,

19   that is the root cause for why there's NDMA in the valsartan.

20   That statement was a factually true, scientifically true

21   statement nearly a year before ZHP claimed they first heard

22   about this.  We know that for a fact.  The email very clearly

23   says it.  So when they -- the defense keeps saying we have

24   already produced what we've produced and you don't see this,

25   you don't see that, again, that's our point because the

1    recipients of that email didn't have it in their custodial file

2    and they were not listed as duplicate custodians.

3        So every time ZHP says, look at our production, my

4    response is exactly.  That's why we need more custodial

5    productions, that's why we need the others we've asked for, and

6    Baohua Chen clearly was involved.  He had direct substantive

7    involvement.  He was not a figurehead.  I don't think we really

8    would need to have to show more than that; but then Min Li says

9    he took control of this processing, was running all of these

10   meetings.  And there's only one person in the world that knows

11   everything that he was told and everything he told others, and

12   that's Baohua Chen.

13       JUDGE VANASKIE:  Anything else, Mr. Goldberg?

14       MR. GOLDBERG:  Your Honor, the production of Mr.

15   Chen's custodial file, if it were to ever be ordered, most

16   certainly should not be ordered before the production of this

17   additional information.  If plaintiffs think that Mr. Chen is

18   somehow connected to this additional discovery we're going to

19   provide, his deposition has to be rescheduled to allow for the

20   production of this information.  And we've asked for the

21   rescheduling of his deposition to account for the testimony

22   that needs to happen.  But one thing's for sure, should Mr.

23   Chen ever be deposed in this case or should his production of a

24   custodial file ever be required, it has to come after all of

25   the testimony that would be pertinent and all of the documents

1    that would be -- that would establish cause, because right now

2    there is no cause established.  But we would not want to have

3    to have Mr. Chen be brought back for a second deposition based

4    on after-produced documents.

5         This issue has only surfaced, the request for his

6    custodial file, after two and a half years.  Had we not asked

7    to reschedule the deposition, plaintiffs likely would not have

8    requested his custodial file.  But at a minimum, the production

9    of a custodial file should await some real evidence connecting

10   Mr. Chen to any material issue in this case.  Simply overseeing

11   the company and being reported to about important issues in the

12   case does not establish that he would have information unique

13   and additive for this case.

14        JUDGE VANASKIE:  All right.  I am inclined to order

15   the production of Mr. Chen's custodial file but I will give Mr.

16   Goldberg an opportunity to submit a letter brief on the issue

17   of why that still is premature.  Based upon what's been

18   presented to me thus far, it seems to me that he would have

19   unique material information and had an involvement beyond that

20   which has been described thus far.  Now, I can be persuaded

21   otherwise, that's clear; but I also am not wanting to delay

22   this matter interminably while other documents are produced.

23        This disclosure with respect -- I understand the July

24   2017 email concerns irbesartan, not valsartan, but it is

25   troubling, and the fact that -- of how the metadata plays out

is troubling.  So I think we need to get to the bottom of this.

So, as I said, I really would like to move this along but I will give Mr. Goldberg an opportunity -- I consider Mr. Slater's presentation of April 27th to be the equivalent of a motion to compel the production of the custodial file of Mr. Chen and you can now respond.  I'll give you to Monday of next week to respond, Mr. Goldberg.  You've already made an impressive presentation so far, so I don't think you need more time than that.  And we'll issue a prompt ruling on it.  We need to move this matter along.

I'm not going to order the postponement of Mr. Chen's deposition at this time.  I'm going to keep that matter under advisement.  But I know that we need to move this matter along. I'm repeating myself.

But the presentation -- I want you to understand that the presentation that has been made thus far is persuasive. It's not convincing yet but it is persuasive.  And I will certainly allow you the opportunity, Mr. Goldberg, to convince me otherwise.  So we'll -- as I said, we're not going to postpone the deposition of Mr. Chen at this time.  It is scheduled.  We'll get your submission next -- by no later than next Monday, May 10th.  I know that doesn't give a lot of time, Mr. Slater, for production, but if I order the production of Mr. Chen's custodial file, I'll expect it to be produced forthwith.

1          I understand the state secret argument and the role

2    that Mr. Chen plays.  You certainly have the opportunity to

3    object to production of documents that are covered by the state

4    secret law, the Chinese state secret law, and so that issue may

5    have to be resolved as well.  I understand that, too.  But I'm

6    not going to hold up making a decision on the basis of the

7    Chinese state secret law.  I'm going to try to move this matter

8    along as expeditiously as possible.

9          So anything else on this issue before we move on to

10   the next one?

11         MR. SLATER:  Your Honor --

12         MR. GOLDBERG:  Your Honor, I will just say that with

13   respect to the logistics of producing the documents,

14   irrespective of the state secret issue, the production of Mr.

15   Chen's custodial file and that of the other custodians whose

16   productions we are willing to consider is not going to be

17   something that can happen just in a matter of a week or two

18   because the production of this information requires so many

19   different -- need the involvement of a ESI consultant who needs

20   to go from Shanghai to Linhai.

21         Remember, Judge Schneider did not require us to

22   collect his information, so it hasn't been done yet.  We need

23   time to process the information.  We need time to review the

24   information for the state secrets to weed out any state secret

25   information.  We need time to review and -- and remove any

1  documents already produced.  And so, you know, while we would

2  endeavor to do that as quickly as possible, the logistics alone

3  are an issue.  And plaintiffs sat on their hands on this

4  request.  So we should not be penalized because they waited

5  until last week to make this request.  I mean, Your Honor has

6  to consider that when making this order.  They only renewed

7  this request for his custodial file nine days ago.  And so

8  we're going to need the time to produce this information.  It's

9  just logistically impossible to turn it over without having all

10  of the technical steps involved.

11      JUDGE VANASKIE:  Any response, Mr. Slater?

12      MR. SLATER:  I was only going to ask Your Honor, I

13  just wanted to clarify the dates for when the letters were due

14  to Your Honor.  I think you said that ZHP has a week or did you

15  say that they'll submit theirs and then we will get our reply

16  by Monday?  I just want to make sure that we just nail the

17  dates down.

18      JUDGE VANASKIE:  No, I said ZHP has until May 10, a

19  week from today.

20      MR. SLATER:  And when should we -- I mean, we'll

21  obviously, if we have a reply, we'll -- we want to move

22  expeditiously so we would try to get it to you very quickly.  I

23  would just ask for up to 48 hours.

24      JUDGE VANASKIE:  All right.  We'll give you 48 hours.

25      MR. SLATER:  Thank you.

```
 1            JUDGE VANASKIE:  May 12th.

 2            MR. SLATER:  And then on the last part, I was a little

 3   concerned when counsel walked back.  During the argument it

 4   was, we're giving all the custodial files; then counsel just

 5   said, well, we're willing to consider it.  I mean, I guess

 6   we'll nail that down later in the argument today with Your

 7   Honor, but I thought that was their argument was they were

 8   giving it to us, now I'm hearing willing to consider.  That's

 9   obviously concerning and, you know, we just look forward to

10   getting this decided.

11            As far as the production issues, I would think that

12   ZHP, from the moment that we started to discuss this again --

13   and we didn't sit on our hands.  We've been working diligently

14   and when we felt we had gotten substantial evidence from a

15   deposition, we brought it right to them, from somebody who's

16   very close to Mr. Chen, probably as close as anybody we've

17   deposed in the litigation so far, was Min Li.  And he's the one

18   through whose custodial production we got that email.  So we

19   couldn't have known about it because it had been sanitized from

20   every other production.  And it's in Chinese.

21            So we did what we did as we got to that deposition.

22   Luckily, we found it.  If we hadn't, ZHP wouldn't be before

23   you, I'll tell you right now, saying, we just want to let you

24   know we knew about this over almost a year before, at least,

25   and we just want to make sure no one misses it.  They were very
```

1    happy for us not to know that, but...

2           So when the time comes, if Your Honor does rule in our

3    favor, we're hopeful that ZHP now knows as of today they better

4    start getting working on this because they won't have a lot of

5    time.

6           JUDGE VANASKIE:  Well, I am going to direct that ZHP

7    start collecting, gathering the custodial file of Mr. Chen.  I

8    haven't decided it but I don't want that to be a reason for

9    more delay.  It may take some time, I'm not sure, but I want to

10   get into the details of that after a final decision is made.

11   But in the meantime, they certainly should start gathering that

12   custodial file.

13          MR. SLATER:  Thank you.

14          JUDGE VANASKIE:  Now, the next issue I have is the

15   additional discovery that you want to pursue, Mr. Slater,

16   matters involving this July 27, 2017, email, the Lenovo

17   ThinkPad issue with respect to Mr. Li, Min Li's cellphone,

18   missing emails from Peng Dong, those matters that are -- I see

19   covered at -- I think starting at Page 13 of your April 27,

20   2021, letter.

21          Where do things stand with respect to that, Mr.

22   Slater?

23          MR. SLATER:  We spoke with ZHP at 4:00 on Friday and

24   went through each of the issues.  I can give you point by point

25   as to where we stand because as to many of these issues I

 1    believe there was agreement and perhaps we can clear up the

 2    custodial production issue now as well as we just talked about.

 3              JUDGE VANASKIE:  Yes.

 4              MR. SLATER:  It was our understanding at the time that

 5    ZHP was inclined, with the exception of Maggie Kong, who they

 6    wanted to discuss further with us, Baohua Chen's chief of

 7    staff, that they were inclined to produce those custodial files

 8    and asked us if we had any additional ones we wanted produced

 9    so they could do it, based on what we know now at this time,

10    one time.  And we said that sounds reasonable.  And I would

11    think by the end of today we'll get back to them if there's any

12    others.  We tried to be thorough so I don't anticipate that but

13    I want to check with our team.  So by 5:00 today they'll know

14    who we're requesting at this time based on what we know.

15              So I think as to the ones we've requested, including

16    Maggie Kong, they should be ordered.  If there's something that

17    ZHP wants to discuss with us, you know, it's not the end of the

18    world to discuss for a few more days on her custodial file, but

19    that is something that we think we need.

20              The next issue was -- that we discussed with ZHP on

21    Thursday was the additional search terms that we request to be

22    run and they agreed.  They agreed they would run those terms on

23    the custodial files already produced, and that to the extent

24    they produce additional custodial files, they'll add those

25    search terms.  So I think that that issue has been addressed.

1          JUDGE VANASKIE:  Let me interrupt you for a second,

2     Mr. Slater, just -- I'll turn to Mr. Goldberg then with respect

3     to these matters.

4          Again, I'm going to work from Page 24 of the

5     plaintiffs' letter.  Where do things stand with respect to the

6     production of custodial files for the parties to the July 27,

7     2017, email, the individuals identified there on the top of

8     Page 24?

9          MR. GOLDBERG:  Your Honor, I'm going to invite my

10    colleague, Jessica Priselac, who was on the call with

11    plaintiffs to talk about that.

12         But before I do, Your Honor, you know, I just want to

13    make sure Your Honor's clear about one thing that seems to be

14    getting missed here, which is that the 2017 email that's being

15    referred to has been in the production all along.  This is not

16    a document that appeared last week during the deposition of Mr.

17    Li.  This is a document that plaintiffs, had they been diligent

18    and reviewed the documents months earlier, would have found.

19    And the fact that it was produced demonstrates that the search

20    terms work because there was a reference in an irbesartan

21    document to valsartan, to nitrosamine.  But to say that somehow

22    -- to say that somehow or to suggest that this document has

23    been withheld or hidden, this has been in the production and

24    somehow ZHP is being forced to act as if there's urgency when

25    this document has always been there.

```
 1          Now, I will ask Ms. Priselac to address the issues on
 2    the custodians.
 3          JUDGE VANASKIE:  Thank you, Mr. Goldberg.
 4          MS. PRISELAC:  Thank you.
 5          Your Honor, with respect to the new custodians,
 6    plaintiffs are correct that we still are objecting to the
 7    production of Maggie Kong; but to the other custodians, we have
 8    started the preliminary setup of a potential collection.  The
 9    one issue we're having this week, which started last week, is
10    that currently there is a Chinese national holiday.  So our
11    client is physically closed until May 6, but we'll be
12    restarting, you know, those conversations and that collection
13    when they reopen.
14          MR. GOLDBERG:  Your Honor?  Your Honor?
15          JUDGE VANASKIE:  Yes.
16          MR. GOLDBERG:  Ms. Priselac just reminded me of a key
17    point.  When Your Honor ruled that we would have a brief due on
18    Monday, I was -- I had not remembered this Chinese holiday.
19    And, of course, not only does our client have to be involved in
20    that briefing, but the Hui Zhong law firm in China will too and
21    they're going to be unavailable during this national holiday.
22    So we would ask Your Honor to provide an additional week so
23    that we can brief this issue because they will not be back in
24    the office or the company won't be back into the facilities
25    until a week from today.
```

1        JUDGE VANASKIE:  I thought I heard May 6th but now

2    you're saying it's May 10th that they won't be back in?

3        MR. GOLDBERG:  They'll be back next -- they'll be back

4    on Monday.  So the holiday would be until Friday and then

5    they'll be back in the office Monday.  So we'll need the time

6    to work with the Chinese to respond to the issue on Mr. Chen.

7        MR. SLATER:  Your Honor, obviously, we object to this.

8    This is ZHP's request to submit yet another brief on something

9    that they filed last week where they had full access to this

10   law firm.

11       And I'll say something else as to this Hui Zhong law

12   firm.  I haven't thought through the logistics of this but I

13   think that law firm needs to make an appearance in this

14   litigation, if they're the ones who are the -- are the

15   doorkeepers to these documents.  If we're going to start

16   relying on this other law firm, I think they need to be within

17   the jurisdiction of this Court and they need to have somebody

18   who actually can appear *pro hac vice*.  And, again, I haven't

19   looked at the logistics of it, but I think the point has been

20   reached with the gravity of what's going on that that law firm,

21   it can't just be out in the weeds hanging out waiting to see

22   what happens and doing what they want with impunity.  If

23   they're going -- if counsel of record is going to rely on that

24   law firm, that law firm should be within the scope of this

25   Court's authority.

1          And we don't agree that they should be able to say we

2     want a brief and now we want to push it out another week

3     because of another holiday.  The levels of requests for us to

4     continually accommodate the requests of ZHP, I think at this

5     point it would be unreasonable.

6          JUDGE VANASKIE:  Well, you know, I'm told that there

7     is a Chinese holiday and that impacts the ability to respond.

8     I'll extend the date for the brief from ZHP -- the brief on

9     behalf of ZHP to May 14th, until Friday, May 14th, and I will

10    give the plaintiffs then until Tuesday, May 17th, to respond to

11    that.

12         As far as entry of appearance of this Chinese law

13    firm, I don't know that I have the authority to compel that so

14    we have to work through counsel of record here.  All right.

15         And as far as these 16 items that appear starting at

16    Page 24 of your letter, maybe I'll turn back to Ms. Priselac,

17    is there agreement to run these additional search terms that is

18    in Paragraph 3 of that --

19         MS. PRISELAC:  Yes.

20         JUDGE VANASKIE:  All right.

21         MS. PRISELAC:  Yes, there is, Your Honor.  And we

22    actually, for Number 4, we suggested to add the TC-201729 as a

23    search term and they agreed to do that as well.

24         JUDGE VANASKIE:  Okay.  I don't know if I need to go

25    through this item by item, but what about the other items on

1    this list?

2         MS. PRISELAC:  Your Honor, I think that we came to

3    kind of modified agreements, and Mr. Slater can disagree with

4    me, but my -- based on our conversation on Friday, we did come

5    to somewhat modified agreements on the rest of these issues.

6    Like, for example, for Number 12, we are not going -- we did

7    not agree to give an accounting for all 81 custodians but they

8    did ask for an accounting with respect to Min Li's devices, as

9    well as Eric Gu's devices, and we agreed to give them that as a

10   starting point with them reserving their rights.

11        MR. SLATER:  That's our right.

12        MS. PRISELAC:  So it's that type of modified agreement

13   I'm talking about.

14        JUDGE VANASKIE:  Okay.  Is there any understanding

15   about when this additional production will be made?

16        MS. PRISELAC:  So, Your Honor, as you know, because

17   you're very familiar with ESI, it's very hard for me to

18   estimate today without a volume count.  Once we do finish the

19   collection -- you know, as soon as they get back into the

20   office, we'll start collecting.  Once we do have a actual

21   volume count, I'm happy to report back to the Court our

22   estimated timeframe for production.  But I would hate to tell

23   you something now with no volume information.

24        JUDGE VANASKIE:  All right.  And is that understood,

25   Mr. Slater?

```
 1        MR. SLATER:  I understand that ZHP is going to tell us

 2   what their projections are and I think at that point we would

 3   comment on it.  Our position's probably no surprise.  We want

 4   to get these things as fast as we can because we're obviously

 5   under a time pressure as well, so we're just trying to do the

 6   best we can.  You know, we're hopeful that the collection is

 7   going to happen promptly; but I guess when ZHP reports in in

 8   the next few days, then we can address it at that point.

 9        JUDGE VANASKIE:  But will ZHP be reporting in in the

10   next few days or is this going to be delayed because of the

11   Chinese holiday, May Day?

12        MS. PRISELAC:  Well, right, going to my point, I think

13   how we started this, Your Honor, is that we can't physically

14   collect until they're physically back open.  So I'm hoping at

15   our next conference I can give you an update on where that

16   stands.  And I would hope to have a volume count within the

17   next two weeks.

18        JUDGE VANASKIE:  Okay.  I guess that's the best we can

19   do right now, given the circumstances.

20        Mr. Slater, is there anything else on your end with

21   respect to discovery from ZHP?

22        MR. SLATER:  You know, I think that we're going to

23   need to confirm our agreements in writing and confirm them with

24   the Court.  I don't think -- whether we need to do it right now

25   -- a lot of it's been addressed but we do want to make sure
```

1  these things are memorialized and that these agreements for

2  what's going to be produced now and what we're deferring on,

3  for example, we agreed, as counsel said, to the accounting of

4  the Min Li and Eric Gu devices, but we did that without

5  prejudice to our right to ask for more once we see what's

6  there.  We figured that's a reasonable first step because it

7  could happen much more quickly.

8          As to the rest of the issues, I don't believe that we

9  have final answers because they were going to get back to us.

10  We're not -- it was not left Friday that it's going to take

11  over two weeks to get back to us with a few of these bits of

12  information.  So we're certainly going to want to confirm

13  exactly where we stand.  You know, I would say by the end of

14  the week we'd like to be able to be in a position to confirm

15  this with the Court as to what's been resolved and what remains

16  open so that we can then address those open items to the extent

17  they exist.  I think that's imperative that we don't let this

18  get lost.

19          JUDGE VANASKIE:  Ms. Priselac?

20          MS. PRISELAC:  I'm happy to do that, Your Honor, and

21  to confirm in writing so that we're all on the same page with

22  respect to anything that's still in dispute by Friday.

23          JUDGE VANASKIE:  All right.  Very well.  I agree with

24  Mr. Slater that it is important that this be confirmed in

25  writing so that there is no misunderstanding and you can set

1  forth your positions where there's disagreement so that I

2  understand where the disagreement exists.

3          So what I would ask is a status report on this

4  additional discovery by Friday of this week in writing from

5  each side.  Okay?

6          MR. SLATER:  Yes, Your Honor.

7          MS. PRISELAC:  Yes, Your Honor.

8          JUDGE VANASKIE:  All right.  Anything else, Mr.

9  Slater, with respect to the ZHP discovery to be addressed

10  today?

11          MR. SLATER:  I don't think so, Your Honor.  I think we

12  have everything.  We understand, we'll try to get that --

13  whatever disputes remain, you'll know by Friday and anything

14  that's agreed to you'll know by Friday.  I think that works.

15          JUDGE VANASKIE:  Okay.  Very well.

16          Anything else, Mr. Goldberg, on ZHP's side?

17          MR. GOLDBERG:  Not with respect to this discovery.

18  And, Your Honor, we do have the request for the rescheduling of

19  Mr. Chen's deposition.  Is that something Your Honor is going

20  to hold off until Your Honor sees the briefing on the custodial

21  file?

22          JUDGE VANASKIE:  Yes.  I mean, I would like to keep

23  that date on.  I am not inclined to defer that deposition.

24          Are you going to move for a protective order with

25  respect to Mr. Chen's deposition?

 1          MR. GOLDBERG:  Yes, Your Honor, we are.  Judge

 2   Schneider granted us the right to do that and we think under

 3   the apex deposition doctrine that we satisfy the standard for

 4   apex -- for a protective order under that doctrine.  When you

 5   consider all of the other deposition testimony that's going to

 6   be had by then, the likelihood of Mr. Chen providing unique

 7   information that couldn't be had from any other witness or any

 8   of the other 80 custodians warrants a protective order under

 9   that doctrine.

10          I know Your Honor's familiar with that doctrine

11   because Your Honor ruled on it in this case, but this is a much

12   different circumstance now that we've had the testimony of 17

13   witnesses, including, by the end of the month, the

14   second-highest official at ZHP who most certainly can answer

15   the questions that would be asked of Mr. Chen.

16          JUDGE VANASKIE:  So --

17          MR. SLATER:  We have a very serious issue with saying

18   that we're going to complete all the other depositions before

19   their motion is due.  The deposition's scheduled -- the only

20   scheduling issue from plaintiffs' standpoint is it's scheduled

21   to begin on Monday night of Memorial Day weekend.  So we just

22   suggested we -- I don't think anybody realized that when the

23   date was selected -- we should move it a couple days.  But the

24   idea that all the depositions should be done and then the

25   protective order briefing should start, it's going to

```
 1    eventually push us to the point when -- yeah, you understand.

 2    We have expert reports to focus on at some point.  They're due

 3    at the beginning of July.

 4            MR. GOLDBERG:  Your Honor, the schedule shouldn't --

 5    shouldn't preclude a party from having an opportunity to be

 6    heard fairly.  There's not a trial in this case this year or

 7    next year, possibly not until the year after.  We're asking for

 8    a two- or three-week rescheduling of a deposition so that we

 9    can include in the brief for the protective order the testimony

10    of Mr. Du, which is scheduled for May 27th and 28th.  There's

11    going to be no prejudice to plaintiffs at all by a two- or

12    three-week extension.

13            MR. SLATER:  I'm sorry.  Why do they need a deposition

14    of their own witness?  Can't they just submit an affidavit from

15    him?

16            MR. GOLDBERG:  Your Honor, the testimony --

17            JUDGE VANASKIE:  Go ahead, Mr. Goldberg.

18            MR. GOLDBERG:  I was going to say the testimony of Mr.

19    Du will be further -- will further demonstrate that the

20    questioning they could have asked of Mr. Chen they can ask of

21    Mr. Du, and that his deposition, Mr. Chen's that is, is not

22    going to be unique.  There's no -- and that's the standard

23    under the apex doctrine.  And Judge Schneider explicitly

24    ordered that we would be able to raise this argument.

25            JUDGE VANASKIE:  When is Mr. Du's deposition?
```

```
 1          MR. GOLDBERG:  Mr. Du is May 27th and 28th.  And we

 2   scheduled Mr. Chen for the following Monday simply to -- simply

 3   to accommodate the schedule that the Court has set, but no

 4   scheduling order should be so rigid as to prevent a party from

 5   raising a meritorious argument of real substance involving a

 6   CEO of a 7,000-employee company for a two- or three-week

 7   extension.  We can include the testimony that's necessary for

 8   the brief.

 9          MR. SLATER:  I'll say it again, they can get an

10   affidavit.  He's their client.  I don't understand why they

11   need to depose him in order to get testimony.  We know what

12   the --

13          MR. GOLDBERG:  We're not --

14          MR. SLATER:  -- the testimony's going to say.  It's

15   not -- I don't believe it's going to actually change what the

16   record is already, I don't see how it could, unless he's going

17   to say he reads Mr. Chen's mind and knows everything Mr. Chen

18   knows.  I doubt we'll see that, so just get an affidavit.

19          JUDGE VANASKIE:  I understand all of that.  An

20   affidavit may be procurable, but the point is that the

21   questions you ask of Mr. Du, if he answers them, would show

22   that Mr. Chen has nothing substantive to add.  I understand the

23   point Mr. Goldberg is making.  On the other hand, I don't want

24   to delay this until Mr. Du's deposition is taken.  I don't see

25   any problem with requiring that that motion for a protective
```

order get filed, we'll set up a briefing schedule that allows

for supplementation of the presentation made to preclude Mr.

Chen's deposition based upon the testimony of Mr. Du, but let's

not wait to get this matter moving until Mr. Du's deposition is

taken.

I understand, Mr. Goldberg, you're going to move

regardless of what Mr. Du has to say in his deposition.  So

let's get that motion filed, start the briefing on it, we'll

complete the briefing after Mr. Du's deposition.

Now, I know what that means and that means we're going

to have to postpone Mr. Chen's deposition, but I'm not going to

postpone it for more than a couple of weeks.  If I were to

grant -- if I were to allow you to defer filing that motion

until after Mr. Du's deposition's taken, we won't have briefing

on the motion completed until near the end of June.  So, we'll

-- I think you asked for Mr. Chen's deposition to be deferred

until the week of June 21st.  That's what we'll do.  We'll

defer that to the week of June 21st.  But in the meantime, I

expect -- and I'll set a schedule for the filing of this motion

for a protective order because if you wait until after Mr. Du's

deposition is taken, you're not going to have time to complete

the briefing or the briefing -- won't give you adequate time to

prepare the briefs.

So let's see, today is the 3rd of May.  I'll direct

that the filing -- the motion for a protective order be filed

1  by May 17th and we'll follow the ordinary briefing schedule on

2  it.  You can supplement it with Mr. Du's testimony, but it's

3  not going to await Mr. Du's deposition.

4        And the deposition of Mr. Chen will not be taken prior

5  to the week of June 21st to give adequate time to resolve this

6  important issue.

7        Anything else on this issue?

8        MR. GOLDBERG:  Nothing from ZHP, Your Honor.

9        MR. SLATER:  Nothing from plaintiff, Your Honor.

10  Thank you.

11        JUDGE VANASKIE:  Thank you very much.

12        All right.  I believe the next item on the plaintiffs'

13  letter, since we're following that, would be the Aurobindo

14  discovery status and the plaintiffs' request for sanctions.

15        Are you addressing this, Ms. Goldenberg?

16        MS. GOLDENBERG:  Yes, Your Honor.  Good morning.

17        JUDGE VANASKIE:  All right.

18        MS. GOLDENBERG:  So I think, Your Honor, the only item

19  to be decided today, unless you actually wanted oral argument

20  on the motion, and I don't think you do, is just when

21  Aurobindo's response is due.  And I'll just note that, you

22  know, this is really an issue that the plaintiffs would like to

23  get decided sooner rather than later because the prejudice is

24  just compounding by the day.

25        In the last week, since our motion has been filed,

```
 1  we've received 70,000 documents from -- from the various
 2  Aurobindo entities and just last night we got 700,000 pages
 3  from Aurobindo in India that haven't been ingested by our
 4  vendor yet.  Now, some of this, we understand, is, of course,
 5  from custodians that were agreed to later in the litigation,
 6  but, you know, there was, at one point in time, a court order
 7  requiring Aurobindo to produce all of this by mid-March.  We
 8  were flexible and offered a smaller extension to allow
 9  Aurobindo to produce some of this in early April, but here we
10  are in May getting slammed with documents and we've already
11  taken half the depositions that have been scheduled for these
12  witnesses, we have a 30(b)(6) that's on the calendar for this
13  week, and, you know, the documents that we got from the U.S.
14  Aurobindo entities last week are for custodians who have
15  already been deposed.  So this just continues to be a problem
16  that is very difficult for the plaintiffs to deal with.
17            JUDGE VANASKIE:  All right.  Ms. Heinz.
18            MS. HEINZ:  Good morning, Your Honor.
19            JUDGE VANASKIE:  Good morning.
20            MS. HEINZ:  Yes, Marlene is correct, we're here to set
21  the response deadline for Aurobindo's response to the
22  plaintiffs' motion for sanctions.
23            I just want to real quick introduce my co-counsel
24  who's joining me this morning, his name is John Lavelle of
25  Morgan Lewis.  I just wanted to introduce him to the Court.
```

48

```
 1          MR. LAVELLE:  Good morning, Your Honor.
 2          JUDGE VANASKIE:  Good morning.
 3          MS. HEINZ:  On the status of the document productions,
 4   I just wanted to give Your Honor a quick update.
 5          We have reviewed the data that we received from the
 6   U.S. entities and we've produced all responsive data to the
 7   plaintiffs.  That production is substantially complete.
 8          On the India side, we have reviewed data from the 19
 9   custodians that we were -- that the Court ruled on back in the
10   end of February.  That data has been reviewed.  We did make a
11   production last night, a substantial production.
12          We have received and collected shared drive data from
13   Aurobindo Pharma Limited that is still remaining to be reviewed
14   and produced.  I don't -- it's a large amount of data.  I don't
15   have -- it's in the process of being processed by our
16   eDiscovery vendor.  I don't have a number on how many it will
17   be to review but I can provide that information.  We're
18   anticipating it will be finished processing later this week and
19   I can provide the Court with an update on that.
20          But I can assure the Court that we are continuing to
21   work, as I've said in prior conferences, as quickly as
22   possible.  We have finished the U.S. side.  It's substantially
23   complete.  As for the APL custodians that we were ordered to
24   produce on -- within the last two months, we have reviewed that
25   data and produced all responsive data to the plaintiffs as of
```

 1  last night.

 2          JUDGE VANASKIE:  Let me ask Ms. Heinz first, you had

 3  proposed a response date on this motion to strike Aurobindo's

 4  defenses of May 7, that's this Friday.  Can you still meet that

 5  deadline?

 6          MS. HEINZ:  Yes, we can, Your Honor.

 7          JUDGE VANASKIE:  All right.  So I will -- I will

 8  extend the date for the response to the motion to strike until

 9  May 7th.

10          How much time, Ms. Goldenberg, do you want for a

11  reply?

12          MS. GOLDENBERG:  Your Honor, I think if we could have

13  until the -- I'm just looking at the status conference

14  schedule.  When would you like to hear the motion?  I think we

15  can work backwards from then.

16          JUDGE VANASKIE:  Well, if we could hear it on May

17  12th, that would be great.

18          MS. GOLDENBERG:  Okay.  That gives us -- well, their

19  response is a Friday.

20          JUDGE VANASKIE:  Right.

21          MS. GOLDENBERG:  That's a Wednesday.  If we could have

22  until I guess the 11th, then we can get the -- we can get the

23  reply brief on file.

24          JUDGE VANASKIE:  Is that all right?  I mean, you've

25  given me a lot of paper here.

50

1          I wanted to ask you, Ms. Heinz, is there any need to

2    extend the page limit for your response or can you get it

3    within the page limit?

4          MS. HEINZ:  I think we'll be able to do it within the

5    page limit, Your Honor.  I'm not anticipating any issues with

6    that right now.

7          JUDGE VANASKIE:  All right.  We'll give you to May

8    11th, then, Ms. Goldenberg, to respond to it, and we'll address

9    it on May 12.

10         MS. GOLDENBERG:  I appreciate that, Your Honor.

11         As far as the reply brief is concerned, I haven't

12    looked at the local rules but I assume there's a page limit in

13    there somewhere and I think we can meet it.

14         JUDGE VANASKIE:  Yes.  If you can't meet it, just make

15    an appropriate request.  All right?

16         Where do things stand with respect to the privilege

17    log of Aurobindo?

18         MS. GOLDENBERG:  Your Honor, before we move on from

19    that --

20         JUDGE VANASKIE:  Sure.

21         MS. GOLDENBERG:  -- I did want to point out a couple

22    of issues with things that Ms. Heinz just raised.

23         The first is that her statement that Aurobindo, the

24    U.S. entities, are substantially complete in their production

25    is still a problem for us because the noncustodial sources of

1   data have not been produced.  We have data from the S: drive,

2   according to their production log.  What we don't have is data

3   from every other shared source that their own witnesses

4   identified in their depositions.  And these shared sources of

5   data have been identified in our agenda letter numerous times,

6   but there are, to my understanding, numerous other drives that

7   hold everything from scanned documents to -- you know, I think

8   that there is an M: drive, an X: drive, a W: drive, I saw

9   something referencing an N: drive in the database last night

10  when I was looking through documents.  And so if their position

11  is we're substantially complete with only the S: drive being

12  produced, we would ask that Aurobindo be ordered to go back and

13  search other noncustodial sources of data for the U.S. entity;

14  and for the foreign entity, we're asking that they be ordered

15  to disclose to us which shared sources of data they are

16  searching in India so that we can, you know, address any issues

17  that we might have with that right away.  So that's issue

18  number one.

19          JUDGE VANASKIE:  All right.  Ms. Heinz.

20          MS. HEINZ:  Your Honor, it's my understanding that

21  Aurobindo has collected from all of the shared drives that its

22  custodians use and has provided that data to us.  We produced

23  from the S: drive, we produced from Oracle, we produced from

24  TrackWise, I believe we produced from -- I think the -- there

25  was a Scan drive, and I can't remember if that was the X:

1    drive, it may have been, but all of that data has already been

2    produced to the plaintiffs in our productions.

3            I can -- I'm happy to talk to Marlene after this phone

4    call about anything else she believes may be outstanding.  I'm

5    not sure if I have specific information from her right now on

6    this Zoom to respond fully to the best of my ability, but I am

7    happy to work with her on what the shared drives from India

8    that are being provided and provide an update to the Court at

9    the next conference.  And this is also something that is going

10   to be addressed in our motion response as well, Your Honor.

11           JUDGE VANASKIE:  All right.  Ms. Goldenberg.

12           MS. GOLDENBERG:  I'll have to see what we get and I

13   guess we can talk about that again in two weeks.  But it's hard

14   to know what we're looking at if the production log isn't

15   specifying any other sources.  So we'll meet and confer after

16   this and we can talk about it.

17           The other issue that I wanted to raise before we got

18   to the privilege log is that a few weeks ago, I can't remember

19   if it was two weeks ago or two weeks before that, Aurobindo was

20   ordered by the Court to provide its document preservation

21   policies.  Ms. Heinz has identified for me certain standard

22   operating procedures, but I have run those past our ESI team

23   and they've told me that those are not the procedures that

24   would indicate whether or not there is an auto delete policy

25   for emails.  I emailed Aurobindo last week and requested that

1  information and haven't heard back.

2       And so I guess, I don't know, we need a second court

3  order because we still don't have them.

4       JUDGE VANASKIE:  Ms. Heinz.

5       MS. HEINZ:  Your Honor, the doc production policies

6  are governed by the SOPs.  Last week I sent Marlene a list of

7  the Bates stamps for the standard operating procedures that we

8  have produced.  We've produced thousands of standard operating

9  procedures, including these on the destruction policies -- I

10  mean procedures -- I'm sorry, on the destruction of documents

11  and retention of documents.  They also have a corporate email

12  policy, which I received from my client this morning, and I did

13  send that to Marlene prior to the conference this morning

14  letting her know that I will produce that formally under the

15  ESI protocol later this week.  I just wanted to get it to her

16  as quickly as possible once I received it from my client.

17       JUDGE VANASKIE:  Is there an auto delete policy?

18       MS. HEINZ:  The only policies that I'm aware of are

19  what's in that corporate email policy and -- and in the

20  standard operating procedures that we've produced.

21       JUDGE VANASKIE:  Ms. Goldenberg, it doesn't look like

22  there's anything else I can do on this issue.

23       MS. GOLDENBERG:  Yeah.  I guess this is just another

24  one where if they're telling us we truly have everything, then

25  I'm not really sure where to go beyond that other than to say,

1  you know, our team -- and I don't know if Mr. Parekh is on

2  because I know he's dealing with a power issue in California,

3  but, you know, he and I spoke about this offline and he has

4  told me that he's looked at a number of policies like this from

5  different companies and these aren't it.  But, you know, I

6  guess if we need to put something more formally in writing in

7  our next agenda letter, we can do that; but I'll just say that

8  we remain concerned that we're not getting what was ordered

9  previously.

10          JUDGE VANASKIE:  All right.  Very well.

11          Can we move to the privilege issue now?

12          MS. GOLDENBERG:  Yes.  So on -- sorry, Your Honor, go

13  ahead.

14          JUDGE VANASKIE:  No.  I was going to ask, what are you

15  asking me to do with respect to the privilege issue right now?

16          MS. GOLDENBERG:  Well, Your Honor, I was hopeful today

17  that we were going to be able to ask you for some rulings.  You

18  know, we got this privilege log from Aurobindo about a week and

19  a half ago and as you saw in our agenda letter, it swelled from

20  about 200 entries to about 3,500.  We -- you know, I sent an

21  email to Aurobindo promptly thereafter saying that there are a

22  number of entries in here, including things that are named

23  Valsartan Risk Assessment Report, that appear to be

24  problematic.  After that, they went through and de-designated

25  probably about 90 percent of that log, which, again, is just

1    another piece of evidence that Aurobindo is holding things

2    back, they're waiting to get caught, and they're only doing

3    things when, you know, they get called on it.  But, you know, I

4    asked for an updated privilege log and what I got was, late

5    last night, an email saying here is a sort of amended log,

6    we're going to provide you with the formal one later; but

7    because I don't have a formal amended log from them with the

8    cast of characters, while I was hopeful that we would be in a

9    position to ask Your Honor for some rulings today, I can't do

10   that because I still don't have the information that I needed.

11        So, unfortunately, I think we're going to have to punt

12   on this one also for a couple more weeks; but in the meantime,

13   you know, we have more depositions on the calendar and this is

14   tough.

15        JUDGE VANASKIE:  Is there a problem, Ms. Heinz, with

16   providing the cast of characters for the privilege logs?

17        MS. HEINZ:  Your Honor, Marlene has been meeting and

18   conferring with my colleague, Jill Fertel, who is on this Zoom

19   and prepared to address this for Your Honor.  I'm going to turn

20   this over to her, if that's all right.

21        JUDGE VANASKIE:  Very well.

22        MS. FERTEL:  Good morning, Your Honor.

23        I don't have a problem providing an updated cast of

24   characters.  I have been working on it as recently as this

25   morning.

```
 1              I would take issue with Ms. Goldenberg's
 2   characterization of waiting to get caught by de-designating
 3   without any formal request by the plaintiffs.  It was 2,913
 4   documents.  This is without any request that any
 5   de-designations be made.  I think that's inappropriate,
 6   inaccurate and verging on unprofessional, and I would just note
 7   that before addressing any other concerns.
 8              I would also want to --
 9              JUDGE VANASKIE:  I will let you know that statements
10   like that are like water off the back of a duck.
11              MS. FERTEL:  Yes.  But that being said, I'm working on
12   producing an updated cast of characters.  As counsel did
13   indicate earlier this morning, there was a substantial document
14   production last night, so that's going to automatically create
15   the production of a new, updated privilege log and additional
16   cast of characters.  That's really the only thing that's stood
17   in the way.
18              I'm happy to provide that information or as up to date
19   if the Court would like.  I have no problem producing it in
20   piecemeal.  I just thought it would be easier for all parties
21   involved if it was done to incorporate the information that was
22   produced in our document production last week on April 29th as
23   well as our document production that was just made last night.
24   That was my only concern, trying to make sure it was done in
25   total instead of in piecemeal.  But, again, I'm happy to
```

1    provide that information.

2         JUDGE VANASKIE:  Well, Ms. Goldenberg, is it all right

3    to get it piecemeal?

4         MS. GOLDENBERG:  It is, Your Honor.  We're happy to

5    work through it as quickly as possible.  And, you know, I'll

6    note that what I've seen, I did go through their log last night

7    and what they had sent me was a bunch of cells that had been

8    turned black and then there were the remaining ones I think

9    that are going to stay on the log, and most of the entries that

10   are still in white appear to be things that are held back on

11   the grounds of them being communications between regulatory

12   consultants and the company.  And so, you know, a lot of this I

13   think may be solved by whatever ruling you have on the ToxRox

14   and Meridan issue as well.

15        JUDGE VANASKIE:  So get that ruling out, is that what

16   you're suggesting?

17        MS. GOLDENBERG:  I would never say that.

18        JUDGE VANASKIE:  No.  I want to get it out, believe

19   me.  All right.

20        Well, I'll ask that the cast of characters information

21   be produced piecemeal so that work can be begun on an

22   anticipated motion challenging the assertion of the privilege

23   with respect -- or work product doctrine with respect to some

24   of these documents, and I think that's all we can accomplish

25   today, unless you think there's something else.  I don't --

 1  see, I guess I'm frustrated, Ms. Goldenberg, because I know

 2  you're looking for rulings and, obviously, ToxRox and Meridan

 3  is ready but nothing else is ready for a ruling from me as far

 4  as I can tell.

 5          MS. GOLDENBERG:  I think that's true, Your Honor.

 6          JUDGE VANASKIE:  All right.  Anything else with

 7  respect to Aurobindo discovery?

 8          MS. GOLDENBERG:  Nothing at this time from plaintiff.

 9          JUDGE VANASKIE:  All right.  The next item I have on

10  the plaintiffs' agenda letter is the Hetero discovery dispute

11  status.  And I am not sure there's anything that needs to be

12  decided or addressed today with respect to that.  According to

13  the letter that I received on the defense side, there's a few

14  narrow and resolvable issues remaining.

15          Who will be addressing this issue?

16          MR. PAREKH:  Good afternoon, Your Honor.  This is --

17  or good morning, I guess.  This is Behram Parekh.  I apologize

18  for not being on video.  Apparently, some car hit an electric

19  pole outside my house and we have no electricity, so I

20  apologize.

21          The only real issue -- this is just to sort of update

22  the Court on the ongoing saga -- is that we had our first

23  Hetero deposition last week and as part of the deposition we,

24  again, identified additional documents where, you know, the

25  witness said, oh, these documents should exist, this is where

they should be or, you know, these documents should be there

and we don't have them, you know.  And we've requested Hetero

to give them to us and they've agreed to give them to us.  It's

just the ongoing sort of, you know, dribs and drabs of

documents that we keep having to address is prejudicing our

ability to appropriately complete the depositions on a timely

basis.

JUDGE VANASKIE:  All right.  Who's addressing this

issue on behalf of Hetero?

MR. ABRAHAM:  Good morning, Your Honor.  This is Eric

Abraham.  I'll be addressing this on behalf of Hetero.

JUDGE VANASKIE:  Good morning, Mr. Abraham.

MR. ABRAHAM:  We did conduct the first deposition of a

Hetero 30(b)(6) witness on -- last week.  There were some

discrete documents that Mr. Slater requested during the

deposition.  We worked overnight and were able to provide most

of those documents to Mr. Slater so that he could then examine

the witness on the next day of testimony.  So there was no

prejudice.  And it may be that many of those documents were

included in Hetero Labs' original productions, but we decided

in the interest of cooperating with plaintiffs to go to our

client overnight and work through the overnight hours to

procure additional copies of them for their review.

As I noted, it was the first of Hetero Labs' 30(b)(6)

witnesses.  We've made supplemental productions of additional

1    documents that Mr. Slater requested.  He'll have the

2    opportunity -- or I should say plaintiffs' counsel will have

3    the opportunity to question our other 30(b)(6) witnesses about

4    that deposition -- about those documents at subsequent

5    depositions.  So I highly doubt there will be any actual

6    prejudice from this.

7         We did receive another email from Mr. Slater this

8    morning identifying some additional documents or additional

9    information he's looking for.  We'll continue to diligently

10   review it.

11        If Your Honor recalls when we left off last time,

12   there was the issue of a disclosure that plaintiffs had

13   identified in a letter back in January -- back in 2019 to the

14   other defendants.  We did provide the response setting forth

15   all of that information, Your Honor.  So we continue to

16   diligently respond to plaintiffs' requests.

17        I'm not convinced that all of the documents that

18   plaintiffs have requested, even in Mr. Slater's email this

19   morning, were actually within their original document demands,

20   but, nonetheless, we continue to cooperate because we

21   understand that during depositions it may be that documents get

22   identified or information gets identified that becomes

23   relevant.  We have no problem with that and we'll continue to

24   work with plaintiffs to make those productions.

25        JUDGE VANASKIE:  All right.  Very well.

1          Where do things stand with respect to nonresponsive

2    documents or documents that have been regarded as

3    nonresponsive?  Was an agreement reached on that issue?

4          MR. ABRAHAM:  I'll ask Mr. Shah to address that mostly

5    because that issue related to, in technical terms, what would

6    be called metadata overlays, so I'm going to pass the baton to

7    Mr. Shah to address that if that's acceptable.

8          JUDGE VANASKIE:  That's fine.

9          MR. SHAH:  Good morning, Your Honor.  This is Nakul

10   Shah on behalf of Hetero defendants.

11         I spoke with Mr. Parekh late last week regarding

12   documents that were previously deemed nonresponsive which

13   plaintiffs are requesting we produce as responsive.  We are

14   preparing that production presently with our ESI vendor and we

15   anticipate those documents will be produced by the end of

16   today.

17         JUDGE VANASKIE:  Okay, great.

18         MR. SHAH:  At the very latest it would be early

19   tomorrow morning, but we are hoping to avoid that and provide

20   those documents today.

21         JUDGE VANASKIE:  Okay.  Anything else on this issue

22   from plaintiffs' perspective?

23         MR. PAREKH:  Your Honor, just one sort of comment is,

24   I understand Mr. Abraham worked overnight to produce, you know,

25   documents.  The one document they -- they produced two

```
 1    documents, one of which was responsive, one of which was not.

 2    But, you know, for example, we had asked for all of the Unit V

 3    audit reports of Unit I and we received one audit report from

 4    the latter part of 2018 after the contamination had occurred.

 5    The witness had testified that Unit V did audits of Unit I at

 6    least every two years, and the SOPs also state that these

 7    audits happened approximately every two or three years and yet

 8    we still don't have the remaining audits of Unit I by Unit V.

 9    I mean, this is just one example.  And the -- the problem

10    becomes, you know, as we take these depositions, these are

11    documents that we would be asking these witnesses about, I mean

12    particularly audits of the API facility by the finished dose

13    facility, which is what Unit I and Unit V are.  Those audits

14    are crucial.  And these are fundamental core documents that we

15    still don't have.  And we didn't just identify these documents

16    through the witness; we identified these documents weeks ago in

17    letters when we looked at the SOPs and we still don't have

18    them.

19              JUDGE VANASKIE:  All right.  Mr. Abraham?

20              MR. ABRAHAM:  To the extent there are additional

21    documents, we're continuing to search and continuing to provide

22    them.  As I noted, we've had one deposition so far of a

23    30(b)(6) witness.  There will be numerous other defendants'

24    representatives that are deposed from both Unit I and Unit V

25    and I'd be shocked if those depositions proceeded before we
```

1  were able to make additional productions that were relevant to

2  them.

3          JUDGE VANASKIE:  All right.

4          MR. ABRAHAM:  I also indicated -- I also indicated to

5  Mr. Slater last week during the deposition that if it turns out

6  that there is some document that we produce that they would

7  have used for an earlier witness but didn't get the opportunity

8  to and won't have the opportunity because there are no

9  additional relevant witnesses, we'll reproduce a witness.  Not

10  a problem.

11          JUDGE VANASKIE:  All right.  Anything else on this

12  issue either Mr. Parekh or Mr. Slater?

13          MR. PAREKH:  No, Your Honor.  Thank you.

14          JUDGE VANASKIE:  All right.  Thank you very much.

15          The next issue I have is retailer discovery status.

16  And this is just about, as I understand it, whether to

17  negotiate with respect to three production requests.  There's

18  an agreement to negotiate with respect to the scope of seven or

19  eight other production requests, but this one deals with

20  Requests 1, 2 and 8.

21          And who will be addressing this issue on behalf of the

22  plaintiffs?

23          MR. STANOCH:  Good morning, Your Honor.  David Stanoch

24  on behalf of plaintiffs.

25          And Your Honor is exactly right.  The narrow scope of

1    this issue, and, frankly, given how much effort the Court and

2    the parties have put into this CMC so far, I don't think we

3    need to reiterate what the two sides have put in their papers.

4         The only thing I'd mention, Judge, is just simply

5    timing, which I'm sure you're aware.  We've served all these

6    draft requests December 8, 2020.  Here we are May 5th and

7    retailers are saying they don't even need to negotiate them.

8    And to remind Your Honor the Phase II discovery is supposed to

9    begin June 1, 2021, and complete October 4th, 2021.  And under

10   retailer defendants' own proposal for the briefing on the

11   motion for leave to amend the master complaints, that briefing

12   won't even be complete until sometime in August of 2021.  So

13   the idea that -- and then Judge Kugler, of course, has to issue

14   a ruling.  So we just think there's no reason to delay this

15   further.  We should go forward with at least negotiating it and

16   then tee it up with Your Honor at the next CMC if there's a

17   dispute about whether they have to be answered or in what form

18   they need to be answered.

19        And I'm happy to answer questions, Judge.

20        JUDGE VANASKIE:  I don't have any questions right now

21   of you, Mr. Stanoch.

22        Who will be addressing this issue on behalf of

23   retailer defendants?

24        MS. JOHNSTON:  Good morning, Your Honor.  Sarah

25   Johnston on behalf of the pharmacies.

1          Your Honor, I think that Mr. Stanoch is correct in

2    that the papers that we put in front of the Court are fairly

3    sufficient for decision on this issue.  I do think, however,

4    that, you know, putting this dispute into context in terms of

5    the overall case management schedule and the negotiations with

6    plaintiffs and the pharmacies thus far is important because

7    the -- while -- while it's true that we are talking about only

8    a handful of the requests for production, we're talking about

9    requests for production that seek to significantly expand the

10   scope of discovery, including into presumably custodial

11   discovery against the pharmacies for the first time, and those

12   requests for production go almost exclusively to claims that

13   are not live in the litigation against the pharmacies.  They're

14   claims that have been dismissed.

15          And so we understand what Mr. Stanoch is saying about

16   timing and the concerns there; but in terms of even the ability

17   to negotiate, we are put in a particularly challenging position

18   because getting to an understanding on issues like

19   proportionality, identification of custodians, et cetera, on

20   these requests requires understanding what claims are actually

21   going to be pursued against the pharmacies.

22          So I think that that -- not to belabor the positions

23   that we've taken in our letter, the -- I would say the most

24   crucial thing to -- for the Court to take away in considering

25   this issue is the statement in our letter that, you know, the

1  claims against the pharmacies are shrinking and discovery

2  should not be expanding, and that's what plaintiffs are seeking

3  to do here.  And because the -- the majority of the claims have

4  been dismissed, because plaintiffs have sought leave but have

5  not been granted leave to amend their complaints against the

6  pharmacies, we are -- we find ourselves in a pretty challenging

7  predicament to be able to actually negotiate what these

8  requests ultimately look like.  And that's -- that's the --

9  that's the position that we've taken.  And I think that setting

10  aside the issue of the case management schedule, there is -- it

11  is a position from a place of merit because we can't get to

12  what the scope of a request like I think it's Number 8 that's,

13  you know, all communications between every manufacturer or

14  upstream supplier regarding valsartan, I mean, that's just a

15  huge, huge discovery request to have to negotiate without

16  understanding what specific claims those requests go to.  And

17  so that's where we find ourselves.

18        JUDGE VANASKIE:  All right.  Anything else on this

19  issue, Mr. Stanoch?

20        MR. STANOCH:  I could respond if Your Honor wants but

21  I think we're sufficient here.

22        JUDGE VANASKIE:  All right.  Well, here's what I'm

23  going to direct.  I'm going to direct that you negotiate with

24  respect to Requests For Production Number 1 and RFP Number 2,

25  that is, the documents relating to manufacturers'

1    representations and warranties that were provided to the

2    pharmacies or to the retailers, and the warranties provided by

3    the pharmacies.  That I think can go forward in terms of a

4    negotiation, in terms of the scope of the request.

5        I am persuaded that it wouldn't be appropriate to

6    require at this time the retailer defendants to negotiate with

7    respect to a request for communications with the wholesalers

8    and manufacturers concerning the purchase or recall of VCDs.

9    And I think that has to await completion of the pleadings or at

10   least an understanding of what the pleadings will allow.  I am

11   convinced that there -- the core production has been produced

12   in this area and I am concerned with respect to the burden that

13   it would produce.  Not to say that it's out of the question

14   down the road after the pleadings have been set, but at this

15   point, I wouldn't require negotiation on that particular

16   matter, especially because it would be opening up, as I

17   understand it, additional custodian searches.  All right?  So

18   that's what I'll ask you to negotiate.  You've already agreed

19   to negotiate all the other requests.

20       Timing.

21       MS. JOHNSTON:  Yes, Your Honor.

22       JUDGE VANASKIE:  How much time to negotiate so that

23   you can get to a point where you have -- or where you have

24   clear disagreement or you have agreement?

25       MR. STANOCH:  Your Honor, again, David Stanoch.

```
 1            I think that's a question maybe for Ms. Johnston
 2    because I think her side -- and she references this in their
 3    letter that they're getting back to us about certain policies
 4    about inventory management and things like that.  It would be
 5    our preference, you know, give them a week or two to align on
 6    their side and then we have this teed up at the next CMC if
 7    there's any disputes, but I'll defer to Ms. Johnston.
 8            MS. JOHNSTON:  I think that that should be fine, Your
 9    Honor.  I'm scrambling to find my calendar for the next CMC
10    date so I can make sure that that's something that we can
11    commit to.  But I think that Mr. Stanoch's proposal makes sense
12    and we can take the next two weeks to see if we can reach an
13    agreement with the other pharmacies and then go back to
14    plaintiffs.
15            JUDGE VANASKIE:  So, Mr. Stanoch, so we are clear on
16    this, you're talking about I think it's May 26th, we may have
17    moved that date to May 27th, which is a Thursday, due to a
18    conflict in schedule.
19            MR. STANOCH:  That's fine, Your Honor.
20            JUDGE VANASKIE:  All right.  All right.  I'll look for
21    a report in advance of the May 27th -- I believe it's May 27th
22    -- call on this -- on the CMC on this point.  All right?
23            MR. STANOCH:  Yes, Your Honor.  Thank you.
24            MS. JOHNSTON:  Yes, Your Honor.  Thank you.
25            JUDGE VANASKIE:  Thank you.
```

1          The next issue is the wholesaler discovery status.  It

2   looks like you're moving along but need deadlines on that.

3          Is this you again, Mr. Stanoch?

4          MR. STANOCH:  It is, Your Honor.  And you're correct.

5   And given that we just said lingering disputes, if any, with

6   the retailers submitted before the May 27th CMC, I propose we

7   do the same thing with the wholesalers.

8          JUDGE VANASKIE:  And who's speaking on behalf of the

9   wholesalers?

10         MR. GEOPPINGER:  Good morning, Your Honor.  Jeff

11  Geoppinger on behalf of the wholesalers.

12         That's fine by us.  We will continue to negotiate.  I

13  think we're not too terribly far apart, and if there is

14  anything outstanding, we'll submit it by the 27th.

15         JUDGE VANASKIE:  Very well.  Thank you.

16         MR. STANOCH:  Thank you, Judge.

17         JUDGE VANASKIE:  All right.  The next item on the

18  agenda letter deals with the briefing schedule on the motion to

19  amend.  And I am prepared to address this, if you are all

20  prepared to address it with me.

21         MS. GOLDENBERG:  Yes, Your Honor.  This is Marlene

22  Goldenberg and I think Sarah Johnston is going to handle this

23  on behalf of the defendants, if she's still around.  Or you can

24  just tell us --

25         MS. JOHNSTON:  I am.  I am here.

1          JUDGE VANASKIE:  All right.  You've laid out your

2    positions in the -- in the agenda letter.  Is there anything

3    else you wanted to add with respect to that?

4          MS. GOLDENBERG:  I think our position's pretty clear.

5    You know, we'll live with whatever ruling Your Honor gives us,

6    but we respectfully would just appreciate the time to deal with

7    our expert reports and then move on to this.

8          JUDGE VANASKIE:  All right.  Well, Ms. Johnston?

9          MS. JOHNSTON:  Yes, Your Honor, just briefly.  I think

10   that, yes, our position is laid out in our papers.  Given the

11   issues that we've just discussed, we, on the defense side,

12   proposed a shorter period so that we can get to a decision

13   point on where the pleadings stand sooner than later.

14          Additionally, the -- the fact that there are as many

15   issues as there are to address in the six different motion to

16   dismiss orders that are specific and unique to the pharmacy

17   defendants, we have asked for a -- I think an additional ten

18   pages from the page allocation permitted by the local rules as

19   well as the opportunity to come back and address any lingering

20   issues raised by plaintiffs via surreply.

21          JUDGE VANASKIE:  Yes, I've looked at the letter briefs

22   and I'm going to adopt the schedule that's been proposed on the

23   defense side with respect to the motions to amend.  The

24   defendants' response will be due May 27th.  The pharmacy

25   defendants will be granted the additional ten pages to take it

```
 1  to 50 pages.  Plaintiffs' reply brief would be due July 12th of
 2  2021.  While I am no fan of surreply briefs, I will grant the
 3  defendants the right to file a surreply brief no later than
 4  August 2, 2021.  So we'll issue an order to that effect.
 5          MS. GOLDENBERG:  Your Honor, I just wanted to clarify
 6  if the retailer defendants are going to get the extra ten
 7  pages, I don't know if we'll need it but could we give
 8  plaintiffs the same page limits that defendants have for their
 9  brief?
10          JUDGE VANASKIE:  Certainly.
11          MS. GOLDENBERG:  Thank you.
12          JUDGE VANASKIE:  Okay.
13          MS. JOHNSTON:  Thank you, Your Honor.
14          JUDGE VANASKIE:  All right.  I had wanted to ask a
15  question with respect to the motion to seal, at least one
16  question, and that deals with the fact that some of the
17  documents that are covered by the motion to seal are the
18  unredacted -- unredacted parts of FDA reports, as I understand
19  it, and I'm having trouble understanding why they should be
20  sealed.  If it's --
21          MR. GOLDBERG:  Your Honor, this is Seth Goldberg and I
22  am going to pass this to my colleague, Kelly Bonner, who I
23  think is on the screen to address this.
24          JUDGE VANASKIE:  All right.  Very well.  Ms. Bonner.
25          MS. BONNER:  Good morning, Your Honor.
```

1          We've described the FDA inspection reports as Category

2    documents, the FDA establishment and collection reports which

3    evaluate the FDA -- the ZHP parties' facilities readiness to

4    commercially manufacture numerous APIs and drug products.  Many

5    of those drug products were not sold in the United States nor

6    are at issue in this litigation.  Given how comprehensive the

7    FDA inspection reports are, allowing them to be disclosed would

8    be tantamount to turning over a guidebook of the ZHP parties'

9    operations of their manufacturing facilities to the ZHP

10   parties' competitors, many of whom are defendants in this

11   litigation.

12        JUDGE VANASKIE:  I guess what I'm having a little

13   trouble understanding, Ms. Bonner, is if we're only talking

14   about the unredacted parts of the FDA reports which could be

15   obtained by way of a FOIA request, why should they get sealed

16   in this case?

17        MS. BONNER:  Again, Your Honor, you know, we are happy

18   to discuss with plaintiffs what parts of those documents would

19   be subject to a FOIA request.  Obviously, that would be up to

20   plaintiffs to go and make that FOIA request, which is something

21   that -- and then it would be on the FDA to review the documents

22   before disclosing them.  We can't substitute our judgment for

23   the FDA.  For now our position is that they contain our

24   information.

25        JUDGE VANASKIE:  Well, who will be addressing this

1    issue on behalf of plaintiffs?

2            MR. SLATER:  I will, Your Honor.  Adam Slater.

3            JUDGE VANASKIE:  All right, Mr. Slater, as I

4    understand it, we're talking about documents that have been

5    attached primarily as exhibits to agenda letters that have

6    already been redacted by the FDA.  Am I wrong in my

7    understanding there?

8            MR. SLATER:  No.  You're correct, Your Honor.  And we

9    can't fathom a reason why those documents would be maintained

10   as confidential under the law.  Counsel's argument is, well,

11   it's our internal information but as the courts have repeatedly

12   recognized and has been recognized in this litigation, that's

13   not a basis under which something can be held from public view

14   as confidential.  To us, it's a very straightforward argument.

15   We're not really understanding where ZHP is coming from in

16   terms of satisfying the standard.  It doesn't come close.

17           JUDGE VANASKIE:  Ms. Bonner.

18           MS. BONNER:  Again, Your Honor, even when these

19   documents are ultimately produced by the FDA, they are often

20   redacted.  That is the FDA's position to redact them.  Our

21   position is that these documents, in their whole, they are the

22   inspection reports of the ZHP parties' manufacturing

23   facilities.  They provide a comprehensive overview of those

24   facilities.  Now, if the FDA chooses to redact them, plaintiffs

25   can -- plaintiffs can request the -- they can submit a FOIA

1    request and they can request the documents and see what's been

2    redacted, what hasn't been.  But it's not our place to

3    substitute our judgment for the FDA's.

4        JUDGE VANASKIE:  Right.  I think maybe I'm missing

5    something here because we're only talking about the

6    unredacted -- or only talking about, yes, the unredacted parts

7    of the FDA reports that have been provided as attachments

8    either to a motion or to an agenda letter, and I'm -- Ms.

9    Bonner, we're not talking about -- and correct me if I'm wrong,

10   Mr. Slater, are you seeking to unseal the entire report or just

11   that part of the report that has been presented to the Court

12   either in the agenda letter or as part of a motion?

13       MR. SLATER:  Just the document as it appears as it was

14   submitted to Your Honor.  We're not trying to peel back the

15   redactions at this point.  And, again, this is -- I get that

16   ZHP says, well, this is going to disclose internal information,

17   but of course it's going to.  That's the nature of these

18   requests.  And this information is clearly material.  It goes

19   to how this contamination occurred in detail and that's

20   something that falls in the most presumptively public category.

21   So we just don't really understand their argument.  Certainly,

22   it's not up to the FDA.  These are documents that ZHP has,

23   they've produced to us, and there's no reason why we should

24   have to go through the burdens of the sealing or the

25   confidentiality any further.

```
 1            JUDGE VANASKIE:  Ms. Bonner?

 2            MS. BONNER:  If I may, Your Honor?

 3            JUDGE VANASKIE:  Certainly.

 4            MS. BONNER:  These documents were produced pursuant to

 5   the confidentiality order which was negotiated between the

 6   parties.  The protective order represents the parties' joint

 7   efforts to address the volume of confidential information that

 8   had to be necessarily exchanged as part of this litigation.

 9            Now, as for what portion of the document is being --

10   is being contested, our understanding is that plaintiffs

11   have -- would like to unseal all of -- the entire portion of

12   the documents.  So that document is fair game, available on a

13   public docket.  If the -- you know, if plaintiffs are willing

14   to meet and confer about whether some portion of that document

15   can be made publicly available, you know, we're happy to

16   discuss that and propose redactions that protect ZHP.  You

17   know, we're happy to reach a compromise on this issue.

18   However, our understanding is they wanted the entire document

19   out in available public and said that there was no basis for us

20   to keep it sealed.  Obviously, we disagree with that point.  We

21   think that there was a very, very valid basis for requesting

22   that this document not be disclosed to the public, specifically

23   that this document deals -- that these documents deal largely

24   with drugs that were not sold in the United States, that are

25   not at issue in this litigation and that are not relevant to
```

1    plaintiffs' case.

2         JUDGE VANASKIE:  Well, if it's a document that the FDA

3    has produced pursuant to a FOIA request and redacted what it

4    considered to be information that is not subject to disclosure

5    under FOIA, then I think the documents should not be sealed as

6    part of the court record in this matter.  I can't imagine that

7    if I am a member of the public and I could obtain what's been

8    presented to the Court, that the Court should then seal that

9    document.  And so I think you can anticipate that's going to be

10   my ruling.

11        MS. BONNER:  Okay.

12        JUDGE VANASKIE:  I've looked at that.  And also

13   because they've been presented to the Court, there is a

14   presumption of access to the records.  So I am not going to

15   seal something that the FDA has produced pursuant to a FOIA

16   request.  It's just simply not going to happen.

17        There are rules that deal with protecting proprietary

18   information under FOIA and I'm presuming those rules have been

19   applied and if you've obtained this document as a public record

20   from FOIA -- from a FOIA request from the FDA, then I think it

21   should not be sealed as part of the court record, especially

22   when it has been presented to the Court as part of the court

23   record.  All right.  So that's the ruling that will be coming

24   out on that issue, and we will move forward on that.

25        MS. BONNER:  Thank you, Your Honor.

```
 1        JUDGE VANASKIE:  I know we've been going quite some

 2  time but I did want to address -- I'm doing this with great

 3  trepidation -- the motion for a protective order on the

 4  translation issue.

 5        Not to make light of it at all, I know it's a very

 6  serious issue, but it's one that we've addressed now several

 7  times and it seems to me it goes back to the initial

 8  determination made by Judge Schneider not to require

 9  translations of documents with respect to the depositions.  I

10  tried to resolve this issue in a compromised fashion by saying

11  use machine translations to facilitate the conduct of

12  depositions.  It turns out that reversal may not be all that

13  accurate and it's understandable because of the technical

14  nature of the documents.  But -- and I know -- I just want to

15  pull up the request that's been made here and that's that I

16  should enter a protective order allowing ZHP party witnesses

17  who do not speak English to refrain from answering questions

18  based on documents written in English and not accompanied with

19  an accurate and complete translation in Chinese.  That's what

20  the request is as I understand it.

21        Is there anything else you wanted to add with respect

22  to this matter, Mr. Goldberg?

23        MR. GOLDBERG:  Your Honor, the issue -- a few points.

24  The issue was not resolved by Judge Schneider in the way that

25  it's being addressed now, and we've covered this with Your
```

1    Honor.

2              JUDGE VANASKIE:  Right.

3              MR. GOLDBERG:  What Your Honor -- and it's on Page 1

4    -- sorry, Your Honor.  It's on Page -- too many things open

5    here.  It's on Page 127 of the Court's -- of the transcript

6    from November 24th.

7              JUDGE VANASKIE:  Right.

8              MR. GOLDBERG:  The issue that Your Honor dealt with

9    was whether to order plaintiffs to present to the defendants

10   before the depositions translated copies of the documents they

11   intended to use.  What we had proposed that they would do that

12   within 30 days of a deposition to allow the parties time to

13   exchange translations so that when we got to a deposition, the

14   witness was testifying on documents that were accurate

15   translations that could be certified for use in trial.

16   Plaintiffs' argument was they did not want to reveal their work

17   product before a deposition.  And Judge Schneider found that to

18   be compelling.  What he said was, "I'm not going to order

19   plaintiffs to reveal work product before the deposition.  We're

20   going to leave for another day and not include in the order a

21   provision about how to count time.  If it's a problem, you'll

22   deal with it -- the Court will deal with it at the appropriate

23   time but I think it's an issue better left for the future."  So

24   that's where we are now.

25              A salient point about where plaintiffs were with this

1    issue and are with this issue and where Judge Schneider was is

2    that plaintiffs are putting the element of surprise ahead of

3    the fairness to the witness.  What that means is plaintiffs did

4    not want to disclose their work product because they didn't

5    want defense counsel to be able to be prepared ahead of a

6    deposition, so that they couldn't prep their witnesses ahead of

7    the deposition.  And so they said it's work product, we

8    shouldn't have to have a pre-deposition exchange.  But

9    discovery isn't about the element of surprise.  And so what

10   they've now been able to do or what they chose to do is not

11   have a system by way -- by which these documents could be

12   addressed before a deposition.

13           Judge Schneider could have done this differently.  He

14   could have found a third party that would accept the

15   translations of each side and determine which one should be

16   used at the deposition.  Judge Schneider's ruling really didn't

17   address the fairness to the witness of being able to read a

18   document.  Your Honor has addressed that.  Your Honor has

19   already determined that it's a matter of due process and equal

20   protection that a witness who does not speak English should be

21   treated as if -- as a witness who does speak English.  And by

22   allowing plaintiffs to take testimony on documents witnesses

23   cannot read is a violation of due process and equal protection.

24           We have provided numerous examples of unintelligible

25   translations, of instances where the witnesses were confused

1  and instances where plaintiffs' counsel are telling the

2  witnesses do not rely on the translations.  It could not have

3  been the intent of Your Honor to have plaintiffs present

4  translation -- translated documents that are then pulled out of

5  consideration by the witness because they are unintelligible.

6  The Court simply could not have ordered, provide translations

7  but they can be translations that are meaningless.  Incomplete

8  and inaccurate translations are the effect of no translation at

9  all.  And what our request is is that if they are going to show

10 a witness a document the witness can't read that the witness be

11 able to say, I can't read the document, I can't answer your

12 question.  That's fair.  But a witness should not be compelled

13 to answer a question about what a document says if the witness

14 cannot read it.

15        Plaintiffs can provide manual translations for these

16 documents.

17        And let's be clear about burden for a second.  We

18 already showed you a chart today.  Of the 11 depositions,

19 plaintiffs have only showed 338 exhibits and probably less than

20 a third of those have been documents that required translation.

21 We're not talking about a burden on plaintiffs to translate the

22 documents they want to use.  But Your Honor did not order

23 machine translations that are unintelligible.

24        And so we would respectfully request that if a witness

25 is presented with a document the witness cannot read that the

1  witness be permitted to say, I can't read the document, and

2  that's -- and that's the admissible evidence.  That's the

3  answer.  But to have a witness speculate is not what -- that's

4  exactly what the Rules of Evidence do not permit.  And there

5  are admissibility problems with all of the testimony that's

6  been drawn on these documents that are inaccurate and

7  unintelligible.

8         So if Your Honor wants to have a record of admissible

9  evidence, it has to be of witnesses who answer about the

10  documents they can read or answer truthfully about when they

11  can't read a document.

12         JUDGE VANASKIE:  All right.  Mr. Slater.

13         MR. SLATER:  Thank you, Your Honor.

14         I'm having a strong sense of déjà vu because we've

15  argued this issue multiple times with Your Honor.  You've heard

16  these arguments and there's nothing new here.

17         Your Honor ruled on this.  You made what I think Mr.

18  Goldberg termed in one of the transcripts, he said, "It's a

19  compromise.  Maybe it's imperfect but it's the best we can do."

20  He made that comment in the context of my argument in

21  opposition to what Your Honor ruled.  So I'm in the strange

22  situation of watching my adversary argue against a ruling that

23  my adversary obtained over my objection where I said very

24  clearly, look, the machine translations are imperfect,

25  especially with formatting issues, and ZHP said, that's fine,

1    we want you to get us the machine translation to help us; so we

2    complied with Your Honor's order.  They're now asking for a new

3    order when we're almost at the end of the depositions and, you

4    know, our bottom line is we think that there should be no

5    change.  The motion for the protective order, which would be a

6    drastic ruling with -- imagine us arguing about what an

7    accurate and complete translation means.  As we laid out, you

8    don't have any instances cited to by the defense where the

9    actual meaning of a document's been misrepresented or unfairly

10   presented, and in every case there is a translator of record

11   retained by ZHP who's available to clarify anything counsel

12   wants clarified.  Counsel sees the documents.  There's nobody

13   being stopped from preparing.  They're their documents.  They

14   can prepare their witnesses as they deem fit.

15         So there's been no sign of any unfairness, we've

16   abided by Your Honor's ruling to the T, and we just ask this

17   motion be completely denied.

18         Thank you.

19         JUDGE VANASKIE:  All right.  Mr. Goldberg.

20         MR. GOLDBERG:  Your Honor, Your Honor, it is a matter

21   of inherent unfairness, and Your Honor has already made that

22   determination.  Your Honor said that Your Honor is extremely

23   sensitive to a witness who doesn't speak English being asked

24   questions about documents that are only in English that the

25   witness doesn't have an opportunity to review.  Your Honor

1    noted it is standard practice when you're dealing with a single

2    language to give the witness an opportunity to review the

3    document.  That opportunity is not being afforded under these

4    circumstances.  Your Honor said there needs to be a way to make

5    sure that these witnesses are being essentially in the

6    equivalent position as if they spoke the language in which the

7    document they're being questioned on is written.  And that's

8    not happening.

9         Plaintiffs cannot seriously be asking Your Honor to

10   enforce an order that presents documents to a witness that the

11   witness cannot read and that are unintelligible.  Your Honor

12   could not have envisioned that that was what the order would

13   be.  We certainly did not accept that that's what would happen.

14   We did not propose to have unintelligible documents be shown to

15   a witness.  We have been consistent on this point since the

16   moment it arose in the first deposition that it is inherently

17   unfair to show a witness a document the witness can't read.

18   That unfairness is not cured by showing the witness a

19   translation that is unintelligible, incomplete and inaccurate.

20        JUDGE VANASKIE:  All right.  We're far along the road

21   here with respect to depositions.  I am going to deny the

22   motion for a protective order.  I'm going to deny it because I

23   never ruled that as a matter of due process or equal protection

24   the party taking a deposition is required to provide certified

25   translations of that document before questioning the witness.

1    I've scoured the case law and did not find any case that

2    supports this.  I looked at every case that ZHP cited in

3    support of this request for a protective order and none dealt

4    with the requirement that a certified translation of a document

5    be provided to a witness.  They dealt with contexts,

6    particularly the immigration contexts where a hearing hasn't

7    been held and a decision made on the basis of unreliable

8    evidence, but the key distinction here is that decisions aren't

9    being made on the basis of unreliable information, unreliable

10   translations.

11          ZHP, the party in this case, will have the right and

12   the ability to question plaintiffs' use of testimony that may

13   have been based upon an unreliable translation by making the

14   appropriate record.  Plaintiffs proceed at their peril in

15   asking questions of witnesses with respect to documents shown

16   to have an unreliable translation.

17          One of the cases that Mr. Goldberg cited dealt with

18   the Court reversing its decision on summary judgment when it

19   was shown that the translation was not necessarily reliable.

20          So I don't see any due process problem here with

21   respect to the party, that is ZHP, having the ability to

22   contest evidence that's garnered during deposition that then

23   may be presented to the Court for a decision either by way of

24   summary judgment or on some other matter.  But I am not going

25   to require that there first be presented a certified

1    translation of a document before it is used at a deposition and

2    I am not going to say that a deponent may refuse to answer a

3    question because they have not been provided with a certified

4    translation.

5        I expect that I will supplement this determination

6    with a written ruling, but I wanted you to be clear going

7    forward, because there are some depositions that need to be

8    taken, that I am not going to grant -- that I am denying the

9    motion for a protective order.  All right?

10       Is there anything else that we need to address at this

11   time?

12       MR. SLATER:  I don't believe so for plaintiffs, unless

13   any other plaintiff attorney thinks there's an issue we've

14   missed.  I don't believe there are any others.

15       JUDGE VANASKIE:  All right.  On the defense side?

16       MR. GOLDBERG:  Nothing from defendants, Your Honor.

17       JUDGE VANASKIE:  All right.  Very well.

18       Larry, are you there?  I guess we're going to call --

19   are we going to call into Judge MacStravic -- or Judge Kugler

20   now?

21       THE COURTROOM DEPUTY:  Judge, I will start the

22   telephone conference and you can call in there.

23       Do you need to confer with Judge Kugler?

24       JUDGE VANASKIE:  I don't need to confer with Judge

25   Kugler.  But if you could give me the dial-in information, that

1    will be helpful.

2         THE COURTROOM DEPUTY:  877-336-1828.  And the Access

3    Number is 7684579.

4         JUDGE VANASKIE:  All right.  Very well.  So we will

5    all be leaving this Zoom session and dialing into that number

6    and picking up with Judge Kugler.  All right.

7         MR. GOLDBERG:  Thank you, Your Honor.

8         MR. SLATER:  Thank you, Your Honor.

9         JUDGE VANASKIE:  All right.  Thank you.

10        (Proceedings adjourned at 12:13 p.m.)

11        -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

12

13

14

15        I certify that the foregoing is a correct transcript

16   from the record of proceedings in the above-entitled matter.

17

18   */S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR*
     *Court Reporter/Transcriber*

19

20   *05/04/2021*
     *Date*

21

22

23

24

25

**/**

/S [1] - 86:18

**0**

**05/04/2021** [1] - 86:20
**07068** [1] - 1:14
**08101** [1] - 1:8
**08540** [1] - 2:23

**1**

**1** [4] - 63:20, 64:9, 66:24, 78:3
**10** [1] - 30:18
**103** [1] - 1:14
**10:00** [2] - 1:9, 4:2
**10th** [2] - 28:22, 36:2
**11** [2] - 11:25, 80:18
**115** [1] - 12:2
**11th** [1] - 49:22, 50:8
**12** [2] - 38:6, 50:9
**127** [1] - 78:5
**12:13** [1] - 86:10
**12th** [3] - 31:1, 49:17, 71:1
**13** [5] - 12:7, 12:8, 12:13, 21:12, 32:19
**13th** [1] - 13:24
**14th** [2] - 37:9
**15** [1] - 22:7
**16** [1] - 37:15
**1638** [1] - 1:17
**16th** [1] - 13:25
**17** [1] - 42:12
**1701** [1] - 2:19
**17th** [3] - 2:7, 37:10, 46:1
**19** [1] - 48:8
**19-md-02875-RBK-KMW** [1] - 1:4
**19103** [2] - 2:7, 2:19
**19422** [1] - 2:17

**2**

**2** [4] - 63:20, 66:24, 71:4, 72:2
**2,913** [1] - 56:3
**20** [1] - 8:11
**200** [1] - 54:20
**2017** [8] - 5:24, 11:6, 13:8, 22:2, 27:24, 32:16, 34:7, 34:14
**2018** [3] - 10:8, 18:13, 62:4
**2019** [3] - 20:14, 20:17, 60:13
**2020** [1] - 64:6
**2021** [8] - 1:9, 24:2, 32:20, 64:9, 64:12,

**71:2, 71:4**
**2029** [1] - 3:6
**21** [1] - 2:23
**2150** [1] - 1:20
**21st** [3] - 45:17, 45:18, 46:5
**24** [5] - 23:4, 24:2, 34:4, 34:8, 37:16
**24th** [1] - 78:6
**2500** [1] - 2:12
**26th** [1] - 68:16
**27** [4] - 24:2, 32:16, 32:19, 34:6
**27th** [10] - 23:5, 28:4, 43:10, 44:1, 68:17, 68:21, 69:6, 69:14, 70:24
**2800** [1] - 3:3
**28th** [2] - 43:10, 44:1
**29** [1] - 4:16
**29th** [1] - 56:22

**3**

**3** [2] - 1:9, 37:18
**3,500** [1] - 54:20
**30** [2] - 2:7, 78:12
**30(b)(6** [8] - 12:1, 12:11, 21:24, 47:12, 59:14, 59:24, 60:3, 62:23
**300** [1] - 3:6
**30305** [1] - 2:12
**3333** [1] - 2:12
**338** [4] - 12:3, 12:5, 12:7, 80:19
**367,000** [1] - 12:4
**3rd** [1] - 45:24

**4**

**4** [1] - 37:22
**450** [1] - 2:16
**45202** [1] - 3:4
**48** [2] - 30:23, 30:24
**4:00** [2] - 18:8, 32:23
**4th** [2] - 1:8, 64:9

**5**

**50** [1] - 71:1
**55402** [1] - 1:20
**5:00** [1] - 33:13
**5th** [1] - 64:6

**6**

**6** [1] - 35:11
**600** [1] - 3:3
**609-774-1494** [1] - 1:23
**6th** [1] - 36:1

**7**

**7** [2] - 11:9, 49:4
**7,000** [3] - 8:5, 10:18, 11:15
**7,000-employee** [1] - 44:6
**7,000-person** [2] - 8:10, 12:23
**70,000** [1] - 47:1
**700,000** [1] - 47:2
**701** [1] - 2:3
**70130** [1] - 2:3
**75** [1] - 12:2
**7684579** [1] - 86:3
**7th** [1] - 49:9

**8**

**8** [3] - 63:20, 64:6, 66:12
**80** [8] - 12:5, 12:9, 13:7, 21:9, 21:10, 21:21, 42:8
**800** [1] - 1:20
**81** [1] - 38:7
**877-336-1828** [1] - 86:2

**9**

**90** [1] - 54:25
**90067** [1] - 3:7
**90277** [1] - 1:17

**A**

**a.m** [2] - 1:9, 4:2
**abided** [1] - 82:16
**ability** [7] - 8:19, 37:7, 52:6, 59:6, 65:16, 84:12, 84:21
**able** [15] - 7:7, 18:6, 18:9, 37:1, 40:14, 43:24, 50:4, 54:17, 59:16, 63:1, 66:7, 79:5, 79:10, 79:17, 80:11
**above-entitled** [1] - 86:16
**Abraham** [4] - 59:11, 59:12, 61:24, 62:19
**ABRAHAM** [6] - 2:22, 59:10, 59:13, 61:4, 62:20, 63:4
**absolutely** [2] - 16:10, 19:25
**accept** [2] - 79:14, 83:13
**acceptable** [1] - 61:7
**access** [2] - 36:9, 76:14

**Access** [1] - 86:2
**accidentally** [1] - 17:18
**accommodate** [2] - 37:4, 44:3
**accommodating** [1] - 4:8
**accompanied** [1] - 77:18
**accomplish** [1] - 57:24
**according** [2] - 51:2, 58:12
**accordingly** [1] - 11:2
**account** [1] - 26:21
**accounting** [3] - 38:7, 38:8, 40:3
**accurate** [5] - 16:22, 77:13, 77:19, 78:14, 82:7
**acknowledged** [3] - 16:14, 18:10, 25:18
**act** [1] - 34:24
**Actavis** [2] - 2:13, 2:14
**ACTION** [1] - 1:3
**activities** [1] - 11:7
**actual** [5] - 16:23, 25:10, 38:20, 60:5, 82:9
**ADAM** [1] - 1:13
**Adam** [1] - 73:2
**add** [5] - 33:24, 37:22, 44:22, 70:3, 77:21
**added** [1] - 14:25
**additional** [27] - 15:3, 22:9, 23:19, 24:12, 24:21, 26:17, 26:18, 32:15, 33:8, 33:21, 33:24, 35:22, 37:17, 38:15, 41:4, 56:15, 58:24, 59:23, 59:25, 60:8, 62:20, 63:1, 63:9, 67:17, 70:17, 70:25
**additionally** [1] - 70:14
**additive** [5] - 11:20, 13:4, 13:12, 21:18, 27:13
**address** [19] - 6:14, 35:1, 39:8, 40:16, 50:8, 51:16, 55:19, 59:5, 61:4, 61:7, 69:19, 69:20, 70:15, 70:19, 71:23, 75:7, 77:2, 79:17, 85:10
**addressed** [11] - 13:2, 22:10, 33:25, 39:25, 41:9, 52:10, 58:12,

**77:6, 77:25, 79:12, 79:18**
**addressing** [10] - 6:12, 9:8, 46:15, 56:7, 58:15, 59:8, 59:11, 63:21, 64:22, 72:25
**adduced** [1] - 8:14
**adequate** [2] - 45:22, 46:5
**adjourned** [1] - 86:10
**admissibility** [1] - 81:5
**admissible** [2] - 81:2, 81:8
**adopt** [1] - 70:22
**advance** [1] - 68:21
**adversary** [2] - 81:22, 81:23
**advisement** [1] - 28:13
**affairs** [1] - 11:2
**affected** [1] - 8:12
**affidavit** [5] - 11:4, 43:14, 44:10, 44:18, 44:20
**affiliates** [1] - 8:6
**afforded** [1] - 83:3
**after-produced** [1] - 27:4
**afternoon** [1] - 58:16
**agencies** [1] - 13:23
**agenda** [15] - 4:10, 4:11, 4:20, 4:21, 9:7, 19:23, 51:5, 54:7, 54:19, 58:10, 69:18, 70:2, 73:5, 74:8, 74:12
**ago** [8] - 8:11, 20:17, 30:7, 52:18, 52:19, 54:19, 62:16
**agree** [5] - 23:18, 24:15, 37:1, 38:7, 40:23
**agreed** [10] - 24:13, 33:22, 37:23, 38:9, 40:3, 41:14, 47:5, 59:3, 67:18
**agreement** [7] - 33:1, 37:17, 38:12, 61:3, 63:18, 67:24, 68:13
**agreements** [4] - 38:3, 38:5, 39:23, 40:1
**ahead** [6] - 8:21, 43:17, 54:13, 79:2, 79:5, 79:6
**Aid** [1] - 3:8
**aided** [1] - 1:25
**align** [1] - 68:5
**allocation** [1] - 70:18

*allow* [8] - 8:19, 9:18, 26:19, 28:18, 45:13, 47:8, 67:10, 78:12
*allowing* [3] - 72:7, 77:16, 79:22
*allows* [1] - 45:1
*almost* [3] - 31:24, 65:12, 82:3
*alone* [1] - 30:2
*ALSO* [1] - 3:10
*amend* [4] - 64:11, 66:5, 69:19, 70:23
*amended* [2] - 55:5, 55:7
*AmerisourceBergen* [1] - 3:4
*amorphous* [1] - 19:23
*amount* [3] - 12:19, 14:4, 48:14
*analysis* [3] - 10:12, 11:22, 17:1
*Angeles* [1] - 3:7
*answer* [9] - 19:18, 42:14, 64:19, 80:11, 80:13, 81:3, 81:9, 81:10, 85:2
*answered* [3] - 4:15, 64:17, 64:18
*answering* [1] - 77:17
*answers* [2] - 40:9, 44:21
*anticipate* [3] - 33:12, 61:15, 76:9
*anticipated* [1] - 57:22
*anticipating* [2] - 48:18, 50:5
*apart* [1] - 69:13
*apex* [3] - 42:3, 42:4, 43:23
*API* [3] - 8:8, 11:7, 62:12
*APIs* [1] - 72:4
*APL* [1] - 48:23
*apologize* [2] - 58:17, 58:20
*apparent* [1] - 10:2
*appear* [4] - 36:18, 37:15, 54:23, 57:10
*appearance* [2] - 36:13, 37:12
*appeared* [1] - 34:16
*applied* [1] - 76:19
*applies* [1] - 14:7
*appreciate* [2] - 50:10, 70:6
*appropriate* [4] - 50:15, 67:5, 78:22, 84:14
*appropriately* [1] -

59:6
*April* [7] - 18:13, 23:5, 24:2, 28:4, 32:19, 47:9, 56:22
*architect* [3] - 10:2, 15:17, 16:8
*area* [1] - 67:12
*argue* [5] - 9:22, 10:8, 10:14, 10:19, 81:22
*argued* [1] - 81:15
*arguing* [1] - 82:6
*argument* [15] - 7:12, 16:25, 18:22, 29:1, 31:3, 31:6, 31:7, 43:24, 44:5, 46:19, 73:10, 73:14, 74:21, 78:16, 81:20
*arguments* [5] - 15:9, 19:8, 20:13, 25:6, 81:16
*arose* [1] - 83:16
*aside* [1] - 66:10
*assertion* [1] - 57:22
*assertions* [2] - 9:22, 14:19
*Assessment* [1] - 54:23
*assume* [1] - 50:12
*assurance* [2] - 10:3, 16:9
*assure* [1] - 48:20
*Atlanta* [1] - 2:12
*attached* [1] - 73:5
*attachments* [1] - 74:7
*attend* [1] - 10:22
*attended* [4] - 5:20, 11:18, 16:15, 16:18
*attending* [1] - 10:21
*attends* [1] - 10:23
*attorney* [1] - 85:13
*Attorney* [1] - 2:24
*audit* [2] - 62:3
*audits* [5] - 62:5, 62:7, 62:8, 62:12, 62:13
*August* [2] - 64:12, 71:4
*Aurobindo* [18] - 2:20, 46:13, 47:2, 47:3, 47:7, 47:9, 47:14, 48:13, 50:17, 50:23, 51:12, 51:21, 52:19, 52:25, 54:18, 54:21, 55:1, 58:7
*Aurobindo's* [3] - 46:21, 47:21, 49:3
*Aurolife* [1] - 2:20
*authored* [1] - 12:22
*authorities* [1] - 17:14
*authority* [2] - 36:25, 37:13

*auto* [2] - 52:24, 53:17
*automatically* [1] - 56:14
*availability* [1] - 6:25
*available* [5] - 18:25, 75:12, 75:15, 75:19, 82:11
*Avenue* [1] - 1:20
*avoid* [1] - 61:19
*await* [3] - 27:9, 46:3, 67:9
*aware* [2] - 53:18, 64:5

## B

*backdrop* [2] - 7:19, 8:4
*backwards* [1] - 49:15
*Baohua* [7] - 22:17, 24:16, 24:20, 25:1, 26:6, 26:12, 33:6
*BARNES* [1] - 3:5
*based* [14] - 5:20, 12:10, 18:20, 20:9, 20:13, 25:15, 27:3, 27:17, 33:9, 33:14, 38:4, 45:3, 77:18, 84:13
*basis* [7] - 29:6, 59:7, 73:13, 75:19, 75:21, 84:7, 84:9
*Bates* [1] - 53:7
*baton* [1] - 61:6
*Beach* [1] - 1:17
*becomes* [2] - 60:22, 62:10
*begin* [2] - 42:21, 64:9
*beginning* [1] - 43:3
*begun* [1] - 57:21
*behalf* [12] - 37:9, 59:9, 59:11, 61:10, 63:21, 63:24, 64:22, 64:25, 69:8, 69:11, 69:23, 73:1
*BEHRAM* [1] - 1:16
*Behram* [1] - 58:17
*belabor* [1] - 65:22
*believes* [1] - 52:4
*Bell* [1] - 2:17
*BERNE* [1] - 3:2
*best* [5] - 24:20, 39:6, 39:18, 52:6, 81:19
*better* [2] - 32:3, 78:23
*between* [4] - 24:17, 57:11, 66:13, 75:5
*beyond* [2] - 27:19, 53:25
*big* [1] - 19:16
*bits* [1] - 40:11
*black* [1] - 57:8
*blind* [1] - 12:16

*Blue* [1] - 2:17
*BOCKIUS* [1] - 2:18
*BONNER* [8] - 2:6, 71:25, 72:17, 73:18, 75:2, 75:4, 76:11, 76:25
*Bonner* [6] - 71:22, 71:24, 72:13, 73:17, 74:9, 75:1
*bottom* [2] - 28:1, 82:4
*brief* [18] - 9:3, 13:18, 15:11, 16:22, 27:16, 35:17, 35:23, 36:8, 37:2, 37:8, 43:9, 44:8, 49:23, 50:11, 71:1, 71:3, 71:9
*briefed* [3] - 9:6, 19:23, 20:15
*briefing* [20] - 7:13, 7:15, 7:20, 7:24, 15:3, 19:23, 20:1, 35:20, 41:20, 42:25, 45:1, 45:8, 45:9, 45:14, 45:22, 46:1, 64:10, 64:11, 69:18
*briefly* [1] - 70:9
*briefs* [3] - 45:23, 70:21, 71:2
*bring* [2] - 11:21, 19:24
*brought* [2] - 27:3, 31:15
*Building* [1] - 1:7
*bunch* [2] - 17:12, 57:7
*burden* [5] - 17:6, 17:7, 67:12, 80:17, 80:21
*burdens* [1] - 74:24
*but..* [1] - 32:1
*BY* [10] - 1:13, 1:16, 1:19, 2:2, 2:5, 2:10, 2:15, 2:18, 3:3, 3:6

## C

*calendar* [4] - 25:5, 47:12, 55:13, 68:9
*California* [3] - 1:17, 3:7, 54:2
*Camden* [1] - 1:8
*Camille* [3] - 1:22, 5:4, 86:18
*camillepedano@ gmail.com* [1] - 1:23
*Camp* [1] - 2:3
*cannot* [5] - 79:23, 80:14, 80:25, 83:9, 83:11
*capture* [3] - 15:21, 16:5, 19:5

*car* [1] - 58:18
*careful* [1] - 20:22
*case* [32] - 7:19, 9:23, 9:25, 11:20, 12:6, 13:4, 13:5, 13:12, 14:8, 14:9, 18:18, 21:18, 21:20, 21:22, 24:9, 24:10, 26:23, 27:10, 27:12, 27:13, 42:11, 43:6, 65:5, 66:10, 72:16, 76:1, 82:10, 84:1, 84:2, 84:11
*cases* [1] - 84:17
*cast* [7] - 17:23, 55:8, 55:16, 55:23, 56:12, 56:16, 57:20
*Category* [1] - 72:1
*category* [1] - 74:20
*caught* [2] - 55:2, 56:2
*caveat* [1] - 25:12
*CCR* [1] - 86:18
*cellphone* [1] - 32:17
*cells* [1] - 57:7
*Century* [1] - 3:6
*CEO* [3] - 11:15, 12:23, 44:6
*CEOs* [2] - 11:18, 14:22
*certain* [2] - 52:21, 68:3
*certainly* [13] - 8:2, 16:17, 23:22, 26:16, 28:18, 29:2, 32:11, 40:12, 42:14, 71:10, 74:21, 75:3, 83:13
*Certainly* [1] - 9:1
*certified* [5] - 78:15, 83:24, 84:4, 84:25, 85:3
*certify* [1] - 86:15
*cetera* [2] - 23:3, 65:19
*challenging* [3] - 57:22, 65:17, 66:6
*Chamber* [1] - 14:2
*change* [5] - 4:8, 10:6, 21:15, 44:15, 82:5
*characterization* [1] - 56:2
*characters* [6] - 55:8, 55:16, 55:24, 56:12, 56:16, 57:20
*charge* [1] - 10:4
*chart* [2] - 15:10, 80:18
*charts* [1] - 12:24
*check* [1] - 33:13
*Chen* [57] - 5:7, 5:18, 8:4, 8:9, 8:14, 9:23, 9:25, 10:9, 10:11,

10:14, 10:19, 10:21, 11:5, 11:13, 11:14, 12:7, 12:8, 12:22, 13:6, 13:9, 13:16, 13:19, 13:22, 14:13, 14:16, 15:25, 16:15, 17:4, 19:15, 20:7, 21:3, 21:9, 21:16, 22:17, 22:20, 24:3, 24:20, 26:6, 26:12, 26:17, 26:23, 27:3, 27:10, 28:6, 28:20, 29:2, 31:16, 32:7, 36:6, 42:6, 42:15, 43:20, 44:2, 44:17, 44:22, 46:4

**chen's** [1] - 26:15
**Chen's** [26] - 4:24, 7:18, 11:22, 13:3, 13:11, 14:3, 14:10, 17:9, 18:16, 19:4, 20:16, 23:20, 24:16, 25:1, 27:15, 28:11, 28:24, 29:15, 33:6, 41:19, 41:25, 43:21, 44:17, 45:3, 45:11, 45:16
**chief** [2] - 24:16, 33:6
**China** [4] - 13:20, 13:24, 15:1, 35:20
**Chinese** [13] - 14:14, 15:1, 19:1, 29:4, 29:7, 31:20, 35:10, 35:18, 36:6, 37:7, 37:12, 39:11, 77:19
**chloride** [4] - 10:3, 15:18, 15:22, 16:9
**chooses** [1] - 73:24
**chose** [2] - 18:23, 79:10
**Cincinnati** [1] - 3:4
**CIPRIANI** [1] - 2:15
**circumstance** [1] - 42:12
**circumstances** [2] - 39:19, 83:4
**cite** [1] - 10:20
**cited** [3] - 82:8, 84:2, 84:17
**City** [1] - 14:1
**CIVIL** [1] - 1:3
**claim** [1] - 20:20
**claimed** [1] - 25:21
**claims** [6] - 65:12, 65:14, 65:20, 66:1, 66:3, 66:16
**clarified** [1] - 82:12
**clarify** [3] - 30:13, 71:5, 82:11
**clear** [14] - 8:14,

10:25, 23:1, 24:11, 24:25, 25:9, 27:21, 33:1, 34:13, 67:24, 68:15, 70:4, 80:17, 85:6
**clearly** [6] - 13:12, 25:12, 25:22, 26:6, 74:18, 81:24
**Clerk** [1] - 3:11
**client** [8] - 6:15, 35:11, 35:19, 44:10, 53:12, 53:16, 59:22
**close** [4] - 4:13, 31:16, 73:16
**closed** [1] - 35:11
**closing** [1] - 10:23
**CMC** [6] - 64:2, 64:16, 68:6, 68:9, 68:22, 69:6
**co** [1] - 47:23
**co-counsel** [1] - 47:23
**Coast** [1] - 1:17
**COHEN** [2] - 2:11, 4:6
**Cohen** [1] - 1:7
**colleague** [4] - 6:19, 34:10, 55:18, 71:22
**collect** [2] - 29:22, 39:14
**collected** [2] - 48:12, 51:21
**collecting** [2] - 32:7, 38:20
**collection** [7] - 23:11, 35:8, 35:12, 38:19, 39:6, 72:2
**column** [1] - 16:21
**coming** [2] - 73:15, 76:23
**Commencing** [1] - 1:9
**comment** [3] - 39:3, 61:23, 81:20
**Commerce** [1] - 14:2
**commercially** [1] - 72:4
**commit** [1] - 68:11
**Committee** [1] - 13:25
**communication** [1] - 21:9
**communications** [4] - 19:12, 57:11, 66:13, 67:7
**Communist** [1] - 13:20
**companies** [2] - 14:22, 54:5
**company** [15] - 8:5, 8:9, 8:10, 10:5, 10:18, 10:22, 11:11, 11:15, 12:23, 17:13, 19:18, 27:11, 35:24,

44:6, 57:12
**compel** [2] - 28:5, 37:13
**compelled** [1] - 80:12
**compelling** [1] - 78:18
**competitors** [1] - 72:10
**complaints** [2] - 64:11, 66:5
**complete** [13] - 7:6, 42:18, 45:9, 45:21, 48:7, 48:23, 50:24, 51:11, 59:6, 64:9, 64:12, 77:19, 82:7
**completed** [1] - 45:15
**completely** [2] - 16:24, 82:17
**completion** [1] - 67:9
**complied** [1] - 82:2
**compounding** [1] - 46:24
**comprehensive** [3] - 7:2, 72:6, 73:23
**compromise** [2] - 75:17, 81:19
**compromised** [1] - 77:10
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concern** [1] - 56:24
**concerned** [4] - 31:3, 50:11, 54:8, 67:12
**concerning** [2] - 31:9, 67:8
**concerns** [4] - 9:16, 27:24, 56:7, 65:16
**conclude** [1] - 15:4
**conduct** [2] - 59:13, 77:11
**confer** [6] - 18:8, 18:21, 52:15, 75:14, 85:23, 85:24
**conference** [6] - 9:14, 39:15, 49:13, 52:9, 53:13, 85:22
**CONFERENCE** [1] - 1:5
**conferences** [1] - 48:21
**conferring** [1] - 55:18
**confident** [1] - 23:16
**confidential** [3] - 73:10, 73:14, 75:7
**confidentiality** [2] - 74:25, 75:5
**confirm** [5] - 39:23, 40:12, 40:14, 40:21
**confirmed** [1] - 40:24
**confirms** [1] - 17:13

**conflict** [1] - 68:18
**confused** [1] - 79:25
**Congress** [2] - 13:25, 14:1
**connected** [1] - 26:18
**connecting** [1] - 27:9
**connection** [1] - 22:20
**consider** [6] - 28:3, 29:16, 30:6, 31:5, 31:8, 42:5
**consideration** [2] - 23:22, 80:5
**considered** [1] - 76:4
**considering** [1] - 65:24
**consistent** [1] - 83:15
**consultant** [1] - 29:19
**consultants** [1] - 57:12
**contain** [1] - 72:23
**contamination** [7] - 5:23, 10:9, 11:5, 17:15, 18:14, 62:4, 74:19
**contest** [1] - 84:22
**contested** [1] - 75:10
**context** [2] - 65:4, 81:20
**contexts** [1] - 84:5, 84:6
**continually** [2] - 15:20, 37:4
**continue** [5] - 60:9, 60:15, 60:20, 60:23, 69:12
**Continued** [2] - 2:1, 3:1
**continues** [1] - 47:15
**continuing** [3] - 48:20, 62:21
**continuously** [1] - 18:15
**contradicted** [3] - 14:20, 14:21, 14:23
**control** [4] - 10:6, 10:9, 21:15, 26:9
**conversation** [2] - 15:24, 38:4
**conversations** [1] - 35:12
**convince** [1] - 28:18
**convinced** [2] - 60:17, 67:11
**convincing** [1] - 28:17
**Cooper** [1] - 1:8
**cooperate** [4] - 22:7, 22:12, 23:20, 60:20
**cooperating** [1] - 59:21
**copied** [2] - 12:15,

12:16
**copies** [2] - 59:23, 78:10
**copy** [1] - 17:22
**core** [5] - 12:10, 18:17, 21:23, 62:14, 67:11
**corners** [1] - 11:11
**corporate** [2] - 53:11, 53:19
**Corporation** [1] - 3:8
**correct** [8] - 23:6, 35:6, 47:20, 65:1, 69:4, 73:8, 74:9, 86:15
**corrected** [1] - 5:8
**cost** [1] - 15:20
**counsel** [14] - 16:25, 18:15, 31:3, 31:4, 36:23, 37:14, 40:3, 47:23, 56:12, 60:2, 79:5, 80:1, 82:11, 82:12
**counsel's** [1] - 73:10
**count** [4] - 38:18, 38:21, 39:16, 78:21
**couple** [7] - 4:11, 4:14, 4:19, 42:23, 45:12, 50:21, 55:12
**course** [8] - 4:25, 11:17, 11:18, 12:24, 35:19, 47:4, 64:13, 74:17
**Court** [39] - 1:22, 6:18, 7:14, 7:20, 7:23, 9:4, 9:6, 9:8, 13:12, 15:19, 17:3, 19:25, 23:22, 36:17, 38:21, 39:24, 40:15, 44:3, 47:25, 48:9, 48:19, 48:20, 52:8, 52:20, 56:19, 58:22, 64:1, 65:2, 65:24, 74:11, 76:8, 76:13, 76:22, 78:22, 80:6, 84:18, 84:23, 86:18
**court** [6] - 5:4, 47:6, 53:2, 76:6, 76:21, 76:22
**COURT** [1] - 1:1
**Court's** [3] - 6:16, 36:25, 78:5
**Courthouse** [1] - 1:7
**COURTROOM** [3] - 8:21, 85:21, 86:2
**Courtroom** [1] - 3:12
**courts** [1] - 73:11
**cover** [1] - 4:22
**covered** [5] - 13:21, 29:3, 32:19, 71:17,

77:25
**CRC** [1] - 86:18
**create** [1] - 56:14
**creation** [1] - 10:12
**crisis** [1] - 10:10
**critical** [1] - 12:5
**CRR** [1] - 86:18
**crucial** [2] - 62:14, 65:24
**cured** [1] - 83:18
**custodial** [60] - 4:24, 5:7, 5:10, 5:13, 6:2, 6:9, 7:18, 9:8, 12:13, 13:4, 13:6, 13:11, 14:3, 14:10, 14:15, 14:18, 15:5, 17:9, 18:3, 18:20, 19:7, 19:9, 19:19, 19:21, 20:12, 20:16, 21:2, 21:17, 21:19, 22:17, 22:25, 23:2, 24:3, 24:12, 24:15, 24:23, 26:1, 26:4, 26:15, 26:24, 27:6, 27:8, 27:9, 27:15, 28:5, 28:24, 29:15, 30:7, 31:4, 31:18, 32:7, 32:12, 33:2, 33:7, 33:18, 33:23, 33:24, 34:6, 41:20, 65:10
**custodian** [3] - 23:12, 24:21, 67:17
**custodians** [31] - 12:5, 12:9, 12:10, 12:11, 13:7, 13:17, 13:19, 18:4, 21:9, 21:10, 21:21, 22:4, 22:5, 22:9, 22:16, 23:9, 23:12, 26:2, 29:15, 35:2, 35:5, 35:7, 38:7, 42:8, 47:5, 47:14, 48:9, 48:23, 51:22, 65:19
**CVS** [1] - 3:7

**D**

**daily** [1] - 10:5
**data** [16] - 48:5, 48:6, 48:8, 48:10, 48:12, 48:14, 48:25, 51:1, 51:2, 51:5, 51:13, 51:15, 51:22, 52:1
**database** [1] - 51:9
**Date** [1] - 86:20
**date** [16] - 8:14, 11:23, 14:24, 17:2, 17:21, 17:22, 20:8, 25:5, 37:8, 41:23, 42:23, 49:3, 49:8, 56:18, 68:10, 68:17

**dates** [2] - 30:13, 30:17
**DAVID** [1] - 2:2
**David** [2] - 63:23, 67:25
**DAVIS** [1] - 2:10
**day-to-day** [1] - 11:7
**days** [6] - 30:7, 33:18, 39:8, 39:10, 42:23, 78:12
**de** [3] - 54:24, 56:2, 56:5
**de-designated** [1] - 54:24
**de-designating** [1] - 56:2
**de-designations** [1] - 56:5
**deadline** [2] - 47:21, 49:5
**deadlines** [1] - 69:2
**deal** [6] - 47:16, 70:6, 75:23, 76:17, 78:22
**dealing** [2] - 54:2, 83:1
**deals** [4] - 63:19, 69:18, 71:16, 75:23
**dealt** [4] - 78:8, 84:3, 84:5, 84:17
**December** [1] - 64:6
**decided** [8] - 20:7, 20:14, 31:10, 32:8, 46:19, 46:23, 58:12, 59:20
**decision** [9] - 4:14, 4:15, 29:6, 32:10, 65:3, 70:12, 84:7, 84:18, 84:23
**decisions** [2] - 19:15, 84:8
**deem** [1] - 82:14
**deemed** [1] - 61:12
**defendant** [1] - 21:22
**defendant's** [1] - 7:23
**Defendants** [6] - 2:8, 2:13, 2:20, 2:24, 3:4, 3:7
**defendants** [13] - 60:14, 61:10, 64:23, 67:6, 69:23, 70:17, 70:25, 71:3, 71:6, 71:8, 72:10, 78:9, 85:16
**defendants'** [3] - 62:23, 64:10, 70:24
**defense** [9] - 6:4, 25:2, 25:23, 58:13, 70:11, 70:23, 79:5, 82:8, 85:15
**defenses** [1] - 49:4

**defer** [7] - 6:24, 9:12, 24:3, 41:23, 45:13, 45:18, 68:7
**deferred** [2] - 5:9, 45:16
**deferring** [1] - 40:2
**delay** [5] - 19:22, 27:21, 32:9, 44:24, 64:14
**delayed** [1] - 39:10
**delete** [2] - 52:24, 53:17
**deleted** [1] - 18:19
**demands** [1] - 60:19
**demonstrate** [4] - 7:18, 13:3, 20:10, 43:19
**demonstrated** [2] - 24:12, 24:14
**demonstrates** [2] - 21:17, 34:19
**demonstrative** [2] - 7:10, 8:1
**denied** [1] - 82:17
**deny** [3] - 20:12, 83:21, 83:22
**denying** [1] - 85:8
**department** [1] - 11:2
**deponent** [1] - 85:2
**depose** [2] - 20:1, 44:11
**deposed** [7] - 19:13, 20:8, 21:1, 26:23, 31:17, 47:15, 62:24
**deposing** [3] - 11:1, 17:4, 19:14
**deposition** [67] - 5:20, 6:1, 6:3, 11:23, 11:25, 12:21, 16:11, 16:14, 17:1, 17:5, 17:6, 19:9, 20:10, 20:11, 24:22, 25:1, 25:4, 25:10, 26:19, 26:21, 27:3, 27:7, 28:12, 28:20, 31:15, 31:21, 34:16, 41:19, 41:23, 41:25, 42:3, 42:5, 43:8, 43:13, 43:21, 43:25, 44:24, 45:3, 45:4, 45:7, 45:9, 45:11, 45:16, 45:21, 46:3, 46:4, 58:23, 59:13, 59:16, 60:4, 62:22, 63:5, 78:12, 78:13, 78:17, 78:19, 79:6, 79:7, 79:8, 79:12, 79:16, 83:16, 83:24, 84:22, 85:1
**deposition's** [2] -

42:19, 45:14
**depositions** [18] - 21:13, 42:18, 42:24, 47:11, 51:4, 55:13, 59:6, 60:5, 60:21, 62:10, 62:25, 77:9, 77:12, 78:10, 80:18, 82:3, 83:21, 85:7
**DEPUTY** [3] - 8:21, 85:21, 86:2
**deputy** [1] - 13:24
**Deputy** [1] - 3:12
**described** [2] - 27:20, 72:1
**designated** [2] - 12:11, 54:24
**designating** [1] - 56:2
**designations** [1] - 56:5
**destruction** [2] - 53:9, 53:10
**detail** [4] - 6:14, 6:17, 11:12, 74:19
**detailed** [1] - 19:24
**details** [2] - 11:13, 32:10
**determination** [3] - 77:8, 82:22, 85:5
**determine** [2] - 79:15
**determined** [1] - 79:19
**developed** [1] - 6:7
**deviation** [3] - 10:6, 10:13, 16:12
**device** [1] - 5:1
**devices** [3] - 38:8, 38:9, 40:4
**dial** [1] - 85:25
**dial-in** [1] - 85:25
**dialing** [1] - 86:5
**different** [9] - 13:23, 22:2, 22:5, 22:21, 23:20, 29:19, 42:12, 54:5, 70:15
**differently** [1] - 79:13
**difficult** [1] - 47:16
**diligent** [1] - 34:17
**diligently** [3] - 31:13, 60:9, 60:16
**dimension** [1] - 24:10
**direct** [10] - 5:17, 11:10, 16:5, 19:11, 19:12, 26:6, 32:6, 45:24, 66:23
**direction** [1] - 16:6
**disabled** [1] - 8:23
**disagree** [2] - 38:3, 75:20
**disagreement** [3] - 41:1, 41:2, 67:24
**disclose** [4] - 18:14,

51:15, 74:16, 79:4
**disclosed** [2] - 72:7, 75:22
**disclosing** [1] - 72:22
**disclosure** [4] - 10:8, 27:23, 60:12, 76:4
**discovery** [22] - 12:10, 21:23, 23:19, 23:21, 23:24, 26:18, 32:15, 39:21, 41:4, 41:9, 41:17, 46:14, 58:7, 58:10, 63:15, 64:8, 65:10, 65:11, 66:1, 66:15, 69:1, 79:9
**discrete** [1] - 59:15
**discuss** [8] - 23:13, 23:15, 31:12, 33:6, 33:17, 33:18, 72:18, 75:16
**discussed** [6] - 11:13, 14:5, 14:6, 14:7, 33:20, 70:11
**discussions** [1] - 7:5
**dismiss** [1] - 70:16
**dismissed** [2] - 65:14, 66:4
**dispute** [4] - 40:22, 58:10, 64:17, 65:4
**disputes** [5] - 41:13, 68:7, 69:5
**distinction** [1] - 84:8
**distributes** [1] - 8:7
**distributor** [1] - 15:25
**DISTRICT** [2] - 1:1, 1:1
**disturbing** [2] - 17:24, 18:23
**doc** [1] - 53:5
**docket** [1] - 75:13
**doctrine** [6] - 42:3, 42:4, 42:9, 42:10, 43:23, 57:23
**document** [49] - 8:19, 11:21, 11:24, 13:5, 13:15, 17:12, 17:17, 17:22, 22:2, 22:8, 22:19, 25:9, 25:11, 34:16, 34:17, 34:21, 34:22, 34:25, 48:3, 52:20, 56:13, 56:22, 56:23, 60:19, 61:25, 63:6, 74:13, 75:9, 75:12, 75:14, 75:18, 75:22, 75:23, 76:2, 76:9, 76:19, 79:18, 80:10, 80:11, 80:13, 80:25, 81:1, 81:11, 83:3, 83:7, 83:17, 83:25, 84:4, 85:1
**document's** [1] - 82:9

**documents** *[102]* - 4:16, 5:25, 6:17, 6:20, 6:24, 7:7, 9:21, 12:4, 12:19, 12:22, 13:3, 14:4, 14:7, 14:8, 14:16, 14:23, 15:18, 17:11, 17:23, 18:15, 18:18, 20:23, 21:8, 21:12, 23:11, 24:20, 26:25, 27:4, 27:22, 29:3, 29:13, 30:1, 34:18, 36:15, 47:1, 47:10, 47:13, 51:7, 51:10, 53:10, 53:11, 56:4, 57:24, 58:24, 58:25, 59:1, 59:5, 59:15, 59:17, 59:19, 60:1, 60:4, 60:8, 60:17, 60:21, 61:2, 61:12, 61:15, 61:20, 61:25, 62:1, 62:11, 62:14, 62:15, 62:16, 62:21, 66:25, 71:17, 72:2, 72:18, 72:21, 73:4, 73:9, 73:19, 73:21, 74:1, 74:22, 75:4, 75:12, 75:23, 76:5, 77:9, 77:14, 77:18, 78:10, 78:14, 79:11, 79:22, 80:4, 80:16, 80:20, 80:22, 81:6, 81:10, 82:12, 82:13, 82:24, 83:10, 83:14, 84:15
**done** *[6]* - 17:21, 29:22, 42:24, 56:21, 56:24, 79:13
**Dong** *[1]* - 32:18
**doorkeepers** *[1]* - 36:15
**dose** *[3]* - 8:8, 11:7, 62:12
**doubt** *[2]* - 44:18, 60:5
**down** *[5]* - 11:16, 11:17, 30:17, 31:6, 67:14
**dozens** *[2]* - 8:6, 8:7
**drabs** *[1]* - 59:4
**draft** *[1]* - 64:6
**drastic** *[1]* - 82:6
**drawn** *[1]* - 81:6
**dribs** *[1]* - 59:4
**drive** *[10]* - 48:12, 51:1, 51:8, 51:9, 51:11, 51:23, 51:25, 52:1
**drives** *[1]* - 51:6, 51:21, 52:7
**drop** *[3]* - 16:2, 16:4, 19:4

**dropping** *[1]* - 9:13
**drug** *[5]* - 22:3, 22:6, 22:21, 72:4, 72:5
**Drugs** *[1]* - 2:24
**drugs** *[1]* - 75:24
**Du** *[12]* - 21:2, 21:3, 21:4, 21:5, 21:11, 43:10, 43:19, 43:21, 44:1, 44:21, 45:3, 45:7
**Du's** *[8]* - 43:25, 44:24, 45:4, 45:9, 45:14, 45:20, 46:2, 46:3
**DUANE** *[1]* - 2:5
**duck** *[1]* - 56:10
**due** *[13]* - 15:1, 30:13, 35:17, 42:19, 43:2, 46:21, 68:17, 70:24, 71:1, 79:19, 79:23, 83:23, 84:20
**duplicate** *[2]* - 18:4, 26:2
**duplicative** *[1]* - 13:14
**during** *[8]* - 15:25, 31:3, 34:16, 35:21, 59:15, 60:21, 63:5, 84:22
**déjà** *[1]* - 81:14

### E

**early** *[2]* - 47:9, 61:18
**easier** *[1]* - 56:20
**East** *[1]* - 3:6
**easy** *[1]* - 15:14
**eDiscovery** *[1]* - 48:16
**effect** *[2]* - 71:4, 80:8
**effort** *[2]* - 10:2, 64:1
**efforts** *[1]* - 75:7
**eight** *[1]* - 63:19
**Eisenhower** *[1]* - 1:14
**either** *[6]* - 12:18, 19:15, 63:12, 74:8, 74:12, 84:23
**electric** *[1]* - 58:18
**electricity** *[1]* - 58:19
**element** *[2]* - 79:2, 79:9
**email** *[28]* - 5:22, 6:19, 12:8, 12:9, 12:13, 12:14, 12:15, 12:16, 13:8, 17:12, 18:1, 18:5, 18:6, 20:19, 25:16, 25:22, 26:1, 27:24, 31:18, 32:16, 34:7, 34:14, 53:11, 53:19, 54:21, 55:5, 60:7, 60:18
**emailed** *[2]* - 12:12, 52:25

**emailing** *[1]* - 7:7
**emails** *[3]* - 15:23, 32:18, 52:25
**employees** *[4]* - 8:6, 10:18, 11:15, 14:23
**encumber** *[1]* - 19:22
**encumbered** *[1]* - 14:4
**end** *[9]* - 33:11, 33:17, 39:20, 40:13, 42:13, 45:15, 48:10, 61:15, 82:3
**endeavor** *[1]* - 30:2
**enforce** *[1]* - 83:10
**English** *[6]* - 77:17, 77:18, 79:20, 79:21, 82:23, 82:24
**enter** *[1]* - 77:16
**entire** *[4]* - 22:11, 74:10, 75:11, 75:18
**entities** *[4]* - 47:2, 47:14, 48:6, 50:24
**entitled** *[1]* - 86:16
**entity** *[2]* - 51:13, 51:14
**entries** *[3]* - 54:20, 54:22, 57:9
**entry** *[1]* - 37:12
**envisioned** *[1]* - 83:12
**equal** *[3]* - 79:19, 79:23, 83:23
**equivalent** *[2]* - 28:4, 83:6
**Eric** *[3]* - 38:9, 40:4, 59:10
**ERIC** *[1]* - 2:22
**ESI** *[6]* - 17:20, 29:19, 38:17, 52:22, 53:15, 61:14
**especially** *[4]* - 9:13, 67:16, 76:21, 81:25
**ESQUIRE** *[17]* - 1:13, 1:16, 1:19, 2:2, 2:5, 2:6, 2:6, 2:10, 2:11, 2:11, 2:15, 2:16, 2:22, 2:22, 3:3, 3:6, 3:11
**essentially** *[1]* - 83:5
**establish** *[3]* - 17:5, 27:1, 27:12
**established** *[3]* - 5:17, 6:8, 27:2
**establishment** *[1]* - 72:2
**estimate** *[1]* - 38:18
**estimated** *[1]* - 38:22
**et** *[2]* - 23:2, 65:19
**EU** *[1]* - 13:1
**evaded** *[1]* - 17:22
**evaluate** *[1]* - 72:3
**eventually** *[1]* - 43:1

**Evidence** *[1]* - 81:4
**evidence** *[8]* - 18:17, 27:9, 31:14, 55:1, 81:2, 81:9, 84:8, 84:22
**exactly** *[4]* - 26:4, 40:13, 63:25, 81:4
**examine** *[1]* - 59:17
**example** *[8]* - 10:1, 15:13, 15:23, 16:23, 38:6, 40:3, 62:2, 62:9
**examples** *[2]* - 16:23, 79:24
**exception** *[1]* - 33:5
**excerpts** *[1]* - 9:24
**exchange** *[2]* - 78:13, 79:8
**exchanged** *[1]* - 75:8
**exclusively** *[1]* - 65:12
**exhibit** *[1]* - 12:17
**exhibits** *[11]* - 7:3, 7:10, 8:1, 11:23, 12:4, 12:14, 12:19, 12:21, 17:1, 73:5, 80:19
**exist** *[4]* - 5:19, 18:6, 40:17, 58:25
**exists** *[1]* - 41:2
**expand** *[1]* - 65:9
**expanding** *[1]* - 66:2
**expect** *[3]* - 28:24, 45:19, 85:5
**expeditiously** *[2]* - 29:8, 30:22
**expert** *[2]* - 43:2, 70:7
**explain** *[1]* - 17:10
**explicitly** *[1]* - 43:23
**exposure** *[1]* - 14:14
**extend** *[2]* - 37:8, 49:8, 50:2
**extension** *[3]* - 43:12, 44:7, 47:8
**extent** *[3]* - 33:23, 40:16, 62:20
**extra** *[1]* - 71:6
**extremely** *[1]* - 82:22

### F

**facilitate** *[1]* - 77:11
**facilities** *[5]* - 35:24, 72:3, 72:9, 73:23, 73:24
**facility** *[2]* - 62:12, 62:13
**fact** *[9]* - 10:25, 21:11, 23:6, 23:23, 25:22, 27:25, 34:19, 70:14, 71:16
**facts** *[1]* - 14:21

**factually** *[1]* - 25:20
**fair** *[2]* - 75:12, 80:12
**fairly** *[2]* - 43:6, 65:2
**fairness** *[2]* - 79:3, 79:17
**falls** *[1]* - 74:20
**familiar** *[3]* - 17:20, 38:17, 42:10
**fan** *[1]* - 71:2
**far** *[16]* - 21:22, 27:18, 27:20, 28:8, 28:16, 31:11, 31:17, 37:12, 37:15, 50:11, 58:3, 62:22, 64:2, 65:6, 69:13, 83:20
**fashion** *[1]* - 77:10
**fast** *[1]* - 39:4
**fathom** *[1]* - 73:9
**favor** *[2]* - 7:23, 32:3
**FDA** *[21]* - 10:9, 10:19, 10:25, 13:1, 18:24, 71:18, 72:1, 72:2, 72:3, 72:7, 72:14, 72:21, 72:23, 73:6, 73:19, 73:24, 74:7, 74:22, 76:2, 76:15, 76:20
**FDA's** *[2]* - 73:20, 74:3
**February** *[1]* - 48:10
**felt** *[1]* - 31:14
**FERTEL** *[3]* - 2:16, 55:22, 56:11
**Fertel** *[1]* - 55:18
**few** *[16]* - 6:16, 6:17, 7:9, 7:25, 8:16, 10:20, 14:8, 16:15, 20:5, 33:18, 39:8, 39:10, 40:11, 52:18, 58:13, 77:23
**figured** *[1]* - 40:6
**figurehead** *[2]* - 19:12, 26:7
**file** *[43]* - 4:24, 5:7, 5:10, 5:14, 6:2, 6:9, 7:18, 13:4, 13:12, 14:3, 14:10, 14:18, 15:5, 17:9, 19:10, 19:19, 19:21, 20:9, 20:13, 20:16, 21:2, 21:17, 21:20, 22:17, 22:25, 24:3, 26:1, 26:15, 26:24, 27:6, 27:8, 27:9, 27:15, 28:5, 28:24, 29:15, 30:7, 32:7, 32:12, 33:18, 41:21, 49:23, 71:3
**filed** *[7]* - 4:19, 20:19, 36:9, 45:1, 45:8, 45:25, 46:25

**files** [9] - 12:13, 13:7, 18:3, 23:2, 31:4, 33:7, 33:23, 33:24, 34:6
**filing** [3] - 45:13, 45:19, 45:25
**final** [3] - 4:15, 32:10, 40:9
**finally** [1] - 18:22
**fine** [5] - 61:8, 68:8, 68:19, 69:12, 81:23
**finish** [1] - 38:18
**finished** [5] - 8:8, 11:7, 48:18, 48:22, 62:12
**firm** [9] - 35:20, 36:10, 36:12, 36:13, 36:16, 36:20, 36:24, 37:13
**first** [18] - 4:23, 6:21, 15:10, 15:13, 15:16, 19:18, 20:7, 22:2, 25:21, 40:6, 49:2, 50:23, 58:22, 59:13, 59:24, 65:11, 83:16, 84:25
**fit** [1] - 82:14
**flexible** [1] - 47:8
**focus** [5] - 5:16, 11:24, 43:2
**focused** [1] - 21:3
**FOIA** [10] - 72:15, 72:19, 72:20, 73:25, 76:3, 76:5, 76:15, 76:18, 76:20
**follow** [4] - 4:11, 4:25, 46:1
**following** [4] - 4:20, 18:5, 44:2, 46:13
**FOR** [1] - 1:1
**forced** [2] - 18:13, 34:24
**foregoing** [1] - 86:15
**foreign** [1] - 51:14
**form** [1] - 64:17
**formal** [3] - 55:6, 55:7, 56:3
**formally** [2] - 53:14, 54:6
**formatting** [1] - 81:25
**formed** [1] - 25:17
**forth** [2] - 41:1, 60:14
**forthwith** [1] - 28:25
**forward** [6] - 6:8, 31:9, 64:15, 67:3, 76:24, 85:7
**founder** [2] - 8:5, 12:25
**four** [1] - 23:9
**frankly** [1] - 64:1
**FREEMAN** [1] - 1:13

**Friday** [15] - 18:8, 20:17, 20:18, 22:9, 32:23, 36:4, 37:9, 38:4, 40:10, 40:22, 41:4, 41:13, 41:14, 49:4, 49:19
**front** [1] - 65:2
**frustrated** [1] - 58:1
**full** [3] - 7:22, 13:17, 36:9
**fully** [5] - 9:6, 14:15, 14:19, 22:6, 52:6
**functions** [1] - 11:12
**fundamental** [1] - 62:14
**future** [1] - 78:23

## G

**game** [1] - 75:12
**garnered** [1] - 84:22
**gathering** [2] - 32:7, 32:11
**Ge** [4] - 10:3, 10:10, 11:6, 19:13
**Ge's** [1] - 16:14
**general** [3] - 8:9, 13:2, 14:22
**GEOPPINGER** [2] - 3:3, 69:10
**Geoppinger** [1] - 69:11
**Georgia** [1] - 2:12
**given** [7] - 16:23, 39:19, 49:25, 64:1, 69:5, 70:10, 72:6
**global** [4] - 8:5, 10:17, 14:22
**go-between** [1] - 24:17
**GOLDBERG** [31] - 2:5, 4:4, 6:13, 7:9, 7:12, 8:3, 8:23, 9:19, 20:5, 23:6, 26:14, 29:12, 34:9, 35:14, 35:16, 36:3, 41:17, 42:1, 43:4, 43:16, 43:18, 44:1, 44:13, 46:8, 71:21, 77:23, 78:3, 78:8, 82:20, 85:16, 86:7
**Goldberg** [19] - 6:12, 6:23, 20:4, 26:13, 27:16, 28:3, 28:7, 28:18, 34:2, 35:3, 41:16, 43:17, 44:23, 45:6, 71:21, 77:22, 81:18, 82:19, 84:17
**Goldenberg** [8] - 46:15, 49:10, 50:8, 52:11, 53:21, 57:2,
58:1, 69:22
**GOLDENBERG** [22] - 1:19, 1:19, 46:16, 46:18, 49:12, 49:18, 49:21, 50:10, 50:18, 50:21, 52:12, 53:23, 54:12, 54:16, 57:4, 57:17, 58:5, 58:8, 69:21, 70:4, 71:5, 71:11
**Goldenberg's** [1] - 56:1
**governed** [1] - 53:6
**Government** [1] - 13:21
**government** [5] - 13:23, 15:1, 18:22, 19:6
**government-sponsored** [1] - 13:23
**grant** [5] - 13:13, 19:20, 45:13, 71:2, 85:8
**granted** [4] - 25:1, 42:2, 66:5, 70:25
**gravity** [1] - 36:20
**great** [4] - 14:25, 49:17, 61:17, 77:2
**GREENBERG** [1] - 2:10
**grounds** [1] - 57:11
**Gu** [1] - 40:4
**Gu's** [1] - 38:9
**guess** [13] - 8:18, 31:5, 39:7, 39:18, 49:22, 52:13, 53:2, 53:23, 54:6, 58:1, 58:17, 72:12, 85:18
**guidebook** [1] - 72:8

## H

**hac** [1] - 36:18
**half** [4] - 22:11, 27:6, 47:11, 54:19
**hand** [2] - 16:21, 44:23
**handful** [1] - 65:8
**handle** [1] - 69:22
**hands** [2] - 30:3, 31:13
**hanging** [1] - 36:21
**happy** [14] - 7:21, 11:3, 32:1, 38:21, 40:20, 52:3, 52:7, 56:18, 56:25, 57:4, 64:19, 72:17, 75:15, 75:17
**hard** [4] - 17:17, 18:17, 38:17, 52:13

**HARKINS** [1] - 2:11
**hate** [1] - 38:22
**head** [5] - 10:3, 10:17, 10:21, 11:1, 11:11
**Healthcare** [1] - 2:8
**hear** [2] - 49:14, 49:16
**heard** [6] - 5:2, 25:21, 36:1, 43:6, 53:1, 81:15
**hearing** [4] - 6:24, 25:6, 31:8, 84:6
**heavy** [1] - 19:3
**HEINZ** [10] - 2:15, 47:18, 47:20, 48:3, 49:6, 50:4, 51:20, 53:5, 53:18, 55:17
**Heinz** [8] - 47:17, 49:2, 50:1, 50:22, 51:19, 52:21, 53:4, 55:15
**held** [4] - 4:1, 57:10, 73:13, 84:7
**help** [2] - 7:12, 82:1
**helpful** [2] - 4:15, 86:1
**Hetero** [11] - 2:24, 58:10, 58:23, 59:2, 59:9, 59:11, 59:14, 59:20, 59:24, 61:10
**hidden** [1] - 34:23
**hiding** [1] - 17:15
**Hie** [1] - 15:24
**high** [1] - 17:13
**high-level** [1] - 17:13
**highest** [6] - 10:22, 21:1, 21:5, 21:6, 21:11, 42:14
**highest-ranking** [5] - 10:22, 21:1, 21:5, 21:6, 21:11
**highly** [2] - 5:18, 60:5
**Highway** [1] - 1:17
**HILL** [1] - 2:21
**hit** [1] - 58:18
**hold** [3] - 29:6, 41:20, 51:7
**holding** [1] - 55:1
**holds** [1] - 13:22
**holiday** [7] - 35:10, 35:18, 35:21, 36:4, 37:3, 37:7, 39:11
**home** [1] - 11:21
**Honor** [154] - 4:4, 5:15, 6:13, 7:9, 7:17, 7:22, 7:25, 8:16, 9:12, 9:19, 9:20, 9:21, 9:24, 11:3, 11:14, 11:21, 11:22, 11:24, 13:16, 13:21, 14:17, 14:19, 15:2, 15:3, 15:11, 19:20,

20:5, 20:22, 21:25, 22:6, 22:17, 22:22, 22:23, 22:24, 23:6, 23:8, 24:5, 25:10, 26:14, 29:11, 29:12, 30:5, 30:12, 30:14, 31:7, 32:2, 34:9, 34:12, 35:5, 35:14, 35:17, 35:22, 36:7, 37:21, 38:2, 38:16, 39:13, 40:20, 41:6, 41:7, 41:11, 41:18, 41:19, 41:20, 42:1, 42:11, 43:4, 43:16, 46:8, 46:9, 46:16, 46:18, 47:18, 48:1, 48:4, 49:6, 49:12, 50:5, 50:10, 50:18, 51:20, 52:10, 53:5, 54:12, 54:16, 55:9, 55:17, 55:19, 55:22, 57:4, 58:5, 58:16, 59:10, 60:11, 60:15, 61:9, 61:23, 63:13, 63:23, 63:25, 64:8, 64:16, 64:24, 65:1, 66:20, 67:21, 67:25, 68:9, 68:19, 68:23, 68:24, 69:4, 69:10, 69:21, 70:5, 70:9, 71:5, 71:13, 71:21, 71:25, 72:17, 73:2, 73:8, 73:18, 74:14, 75:2, 76:25, 77:23, 78:1, 78:3, 78:4, 78:8, 79:18, 80:3, 80:22, 81:8, 81:13, 81:15, 81:17, 81:21, 82:20, 82:21, 82:22, 82:25, 83:4, 83:9, 83:11, 85:16, 86:7, 86:8
**Honor's** [6] - 17:20, 20:23, 34:13, 42:10, 82:2, 82:16
**Honorable** [2] - 3:11, 4:2
**HONORABLE** [1] - 1:10
**hope** [2] - 7:8, 39:16
**hopeful** [4] - 32:3, 39:6, 54:16, 55:8
**hoping** [2] - 39:14, 61:19
**host** [1] - 8:23
**hours** [4] - 12:2, 30:23, 30:24, 59:22
**house** [1] - 58:19
**Huahai** [1] - 2:9
**huge** [2] - 66:15

*Hui* [2] - 35:20, 36:11

## I

*idea* [4] - 16:15, 16:20, 42:24, 64:13
*identification* [1] - 65:19
*identified* [14] - 10:21, 12:10, 13:6, 21:12, 22:5, 34:7, 51:4, 51:5, 52:21, 58:24, 60:13, 60:22, 62:16
*identify* [1] - 62:15
*identifying* [1] - 60:8
*II* [1] - 64:8
*imagine* [3] - 6:5, 76:6, 82:6
*immigration* [1] - 84:6
*impacts* [1] - 37:7
*impediment* [1] - 14:25
*imperative* [1] - 40:17
*imperfect* [2] - 81:19, 81:24
*implicating* [1] - 18:16
*importance* [1] - 14:13
*important* [10] - 5:21, 8:12, 11:24, 17:12, 20:25, 22:6, 27:11, 40:24, 46:6, 65:6
*impossible* [2] - 16:20, 30:9
*impressive* [1] - 28:8
*impunity* [1] - 36:22
*impurity* [4] - 8:12, 10:10, 18:12, 25:14
*IN* [1] - 1:4
*inaccurate* [4] - 56:6, 80:8, 81:6, 83:19
*inappropriate* [1] - 56:5
*Inc* [4] - 2:13, 2:14, 2:20, 3:7
*inception* [1] - 8:11
*inclined* [5] - 7:23, 27:14, 33:5, 33:7, 41:23
*include* [3] - 43:9, 44:7, 78:20
*included* [1] - 59:20
*includes* [1] - 21:11
*including* [8] - 5:18, 12:2, 22:8, 33:15, 42:13, 53:9, 54:22, 65:10
*incomplete* [2] - 80:7, 83:19
*incorporate* [1] - 56:21
*India* [4] - 47:3, 48:8,

51:16, 52:7
*indicate* [2] - 52:24, 56:13
*indicated* [2] - 63:4
*indicating* [1] - 5:23
*indication* [1] - 18:2
*individual* [1] - 4:16
*individuals* [1] - 34:7
*indulge* [1] - 7:25
*indulgence* [1] - 6:16
*Industries* [1] - 2:13
*information* [44] - 5:11, 9:2, 11:15, 11:17, 11:19, 22:13, 22:18, 22:24, 23:17, 23:23, 26:17, 26:20, 27:12, 27:19, 29:18, 29:22, 29:23, 29:24, 29:25, 30:8, 38:23, 40:12, 42:7, 48:17, 52:5, 53:1, 55:10, 56:18, 56:21, 57:1, 57:20, 60:9, 60:15, 60:22, 72:24, 73:11, 74:16, 74:18, 75:7, 76:4, 76:18, 84:9, 85:25
*ingested* [1] - 47:3
*inherent* [1] - 82:21
*inherently* [1] - 83:16
*initial* [1] - 77:7
*inspection* [6] - 10:20, 10:25, 13:1, 72:1, 72:7, 73:22
*inspections* [1] - 10:20
*instances* [3] - 79:25, 80:1, 82:8
*instead* [1] - 56:25
*insupportable* [1] - 20:22
*intend* [5] - 4:19, 22:16, 23:8, 23:10
*intended* [2] - 17:19, 78:11
*intends* [3] - 6:4, 22:7, 22:12
*intent* [1] - 80:3
*interest* [1] - 59:21
*interminably* [1] - 27:22
*internal* [2] - 73:11, 74:16
*interrupt* [2] - 6:22, 34:1
*interview* [1] - 23:8
*interviewing* [1] - 23:10
*introduce* [2] - 47:23, 47:25

*inventory* [1] - 68:4
*investigation* [4] - 10:6, 10:11, 10:12, 16:12
*invite* [1] - 34:9
*involved* [15] - 8:13, 8:15, 9:23, 9:25, 10:7, 10:11, 10:13, 11:6, 11:10, 16:12, 21:23, 26:6, 30:10, 35:19, 56:21
*involvement* [12] - 5:17, 10:19, 14:20, 16:6, 16:10, 18:16, 19:11, 21:17, 24:19, 26:7, 27:19, 29:19
*involving* [2] - 32:16, 44:5
*irbesartan* [6] - 22:3, 22:5, 25:13, 25:15, 26:1, 34:9, 34:20
*irrelevant* [1] - 14:11
*irrespective* [1] - 29:14
*issue* [91] - 4:17, 4:23, 6:12, 7:1, 7:13, 7:21, 7:22, 8:12, 13:16, 13:18, 14:8, 14:9, 14:12, 14:17, 15:3, 18:12, 18:18, 19:1, 19:22, 20:15, 20:16, 20:18, 22:22, 23:15, 25:8, 27:5, 27:10, 27:16, 28:9, 29:4, 29:9, 29:14, 30:3, 32:14, 32:17, 33:2, 33:20, 33:25, 35:9, 35:23, 36:6, 42:17, 42:20, 46:6, 46:7, 46:22, 51:17, 52:17, 53:22, 54:2, 54:11, 54:15, 56:1, 57:14, 58:15, 58:21, 59:9, 60:12, 61:3, 61:5, 61:21, 63:12, 63:15, 63:21, 64:1, 64:13, 64:22, 65:3, 65:25, 66:10, 66:19, 69:1, 71:4, 72:6, 73:1, 75:17, 75:25, 76:24, 77:4, 77:6, 77:10, 77:23, 77:24, 78:8, 78:23, 79:1, 81:15, 85:13
*issued* [1] - 22:8
*issues* [23] - 13:22, 14:18, 19:25, 21:13, 21:14, 21:15, 27:11, 31:11, 32:24, 32:25, 35:1, 38:5, 40:8,

50:5, 50:22, 51:16, 58:14, 65:18, 70:11, 70:15, 70:20, 81:25
*item* [6] - 37:25, 46:12, 46:18, 58:9, 69:17
*items* [3] - 37:15, 37:25, 40:16

## J

*January* [1] - 60:13
*Jeff* [1] - 69:10
*JEFFREY* [1] - 3:3
*JERSEY* [1] - 1:1
*Jersey* [3] - 1:8, 1:14, 2:23
*JESSICA* [2] - 2:6, 2:15
*Jessica* [2] - 6:19, 34:10
*Jill* [1] - 55:18
*JILL* [1] - 2:16
*John* [1] - 47:24
*JOHN* [1] - 2:18
*Johnston* [5] - 64:25, 68:1, 68:7, 69:22, 70:8
*JOHNSTON* [8] - 3:6, 64:24, 67:21, 68:8, 68:24, 69:25, 70:9, 71:13
*joining* [1] - 47:24
*joint* [1] - 75:6
*JR* [1] - 2:18
*Jucai* [1] - 19:13
*judge* [1] - 85:21
*Judge* [28] - 5:9, 6:6, 7:14, 9:5, 15:4, 15:8, 19:8, 20:7, 21:3, 25:2, 29:21, 42:1, 43:23, 64:4, 64:13, 64:19, 69:16, 77:8, 77:24, 78:17, 79:1, 79:13, 79:16, 85:19, 85:23, 85:24, 86:6
*JUDGE* [120] - 4:3, 4:5, 4:7, 6:11, 6:22, 7:11, 8:2, 8:20, 8:22, 9:1, 9:17, 15:6, 20:4, 23:1, 23:25, 24:6, 26:13, 27:14, 30:11, 30:18, 30:24, 31:1, 32:6, 32:14, 33:3, 34:1, 35:3, 35:15, 36:1, 37:6, 37:20, 37:24, 38:14, 38:24, 39:9, 39:18, 40:19, 40:23, 41:8, 41:15, 41:22, 42:16, 43:17, 43:25, 44:19, 46:11, 46:17, 47:17, 47:19,

48:2, 49:2, 49:7, 49:16, 49:20, 49:24, 50:7, 50:14, 50:20, 51:19, 52:11, 53:4, 53:17, 53:21, 54:10, 54:14, 55:15, 55:21, 56:9, 57:2, 57:15, 57:18, 58:6, 58:9, 59:8, 59:12, 60:25, 61:8, 61:17, 61:21, 62:19, 63:3, 63:11, 63:14, 64:20, 66:18, 66:22, 67:22, 68:15, 68:20, 68:25, 69:8, 69:15, 69:17, 70:1, 70:8, 70:21, 71:10, 71:12, 71:14, 71:24, 72:12, 72:25, 73:3, 73:17, 74:4, 75:1, 75:3, 76:2, 76:12, 77:1, 78:2, 78:7, 81:12, 82:19, 83:20, 85:15, 85:17, 85:24, 86:4, 86:9
*judgment* [4] - 72:22, 74:3, 84:18, 84:24
*Judicial* [1] - 3:11
*July* [7] - 5:24, 11:6, 27:23, 32:16, 34:6, 43:3, 71:1
*jump* [1] - 11:9
*Jun* [2] - 21:2, 21:3
*June* [6] - 10:8, 45:15, 45:17, 45:18, 46:5, 64:9
*jurisdiction* [1] - 36:17

## K

*KANNER* [1] - 2:2
*KATZ* [1] - 1:13
*keep* [4] - 28:12, 41:22, 59:5, 75:20
*keeps* [1] - 25:23
*Kelly* [1] - 71:22
*KELLY* [1] - 2:6
*key* [3] - 21:13, 35:16, 84:8
*kind* [2] - 13:13, 38:3
*KIRTLAND* [1] - 1:16
*knowledge* [1] - 11:10
*known* [1] - 31:19
*knows* [6] - 19:17, 26:10, 32:3, 44:17, 44:18
*Kong* [5] - 23:14, 24:15, 33:5, 33:16, 35:7
*Kugler* [3] - 3:11, 64:13, 85:19, 85:23, 85:25, 86:6

# L

**Labs** [1] - 2:24
**Labs'** [2] - 59:20, 59:24
**laid** [3] - 70:1, 70:10, 82:7
**language** [2] - 83:2, 83:6
**large** [2] - 14:4, 48:14
**largely** [1] - 75:23
**larry** [2] - 3:12, 85:18
**Larry** [1] - 8:20
**Lasalle** [1] - 1:20
**last** [31] - 4:8, 4:10, 5:22, 7:3, 9:4, 13:15, 20:20, 30:5, 31:2, 34:16, 35:9, 36:9, 46:25, 47:2, 47:14, 48:11, 48:24, 49:1, 51:9, 52:25, 53:6, 55:5, 56:14, 56:22, 56:23, 57:6, 58:23, 59:14, 60:11, 61:11, 63:5
**late** [2] - 55:4, 61:11
**latest** [1] - 61:18
**latter** [1] - 62:4
**LAVELLE** [2] - 2:18, 48:1
**Lavelle** [1] - 47:24
**law** [15] - 15:1, 29:4, 29:7, 35:20, 36:10, 36:11, 36:13, 36:16, 36:20, 36:24, 37:12, 73:10, 84:1
**LAW** [1] - 1:19
**Law** [1] - 3:11
**learned** [1] - 5:22
**least** [7] - 5:9, 5:24, 31:24, 62:6, 64:15, 67:10, 71:15
**leave** [4] - 64:11, 66:4, 66:5, 78:20
**leaving** [1] - 86:5
**left** [3] - 40:10, 60:11, 78:23
**Lenovo** [1] - 32:16
**less** [1] - 80:19
**letter** [28] - 4:20, 4:21, 7:16, 9:22, 14:20, 17:19, 20:20, 23:4, 24:2, 27:16, 32:20, 34:5, 37:16, 46:13, 51:5, 54:7, 54:19, 58:10, 58:13, 60:13, 65:23, 65:25, 68:3, 69:18, 70:2, 70:21, 74:8, 74:12
**letters** [8] - 4:10, 4:11, 9:7, 9:10, 19:24,

30:13, 62:17, 73:5
**letting** [1] - 53:14
**level** [1] - 17:13
**levels** [1] - 37:3
**Lewis** [1] - 47:25
**LEWIS** [1] - 2:18
**Li** [11] - 11:11, 18:10, 19:13, 24:17, 25:11, 25:18, 26:8, 31:17, 32:17, 34:17, 40:4
**Li's** [3] - 5:20, 32:17, 38:8
**LIABILITY** [1] - 1:4
**light** [1] - 77:5
**likelihood** [1] - 42:6
**likely** [5] - 14:4, 14:9, 14:10, 18:21, 27:7
**limit** [4] - 50:2, 50:3, 50:5, 50:12
**Limited** [1] - 48:13
**limits** [1] - 71:8
**Lin** [2] - 11:4, 19:14
**Linda** [1] - 19:14
**line** [1] - 82:4
**lingering** [2] - 69:5, 70:19
**Linhai** [2] - 14:1, 29:20
**list** [2] - 38:1, 53:6
**listed** [3] - 15:16, 18:4, 26:2
**litigating** [1] - 22:12
**LITIGATION** [1] - 1:4
**litigation** [12] - 9:9, 22:4, 24:9, 31:17, 36:14, 47:5, 65:13, 72:6, 72:11, 73:12, 75:8, 75:25
**live** [2] - 65:13, 70:5
**LLC** [6] - 1:13, 1:19, 2:2, 2:8, 2:13, 2:20
**local** [2] - 50:12, 70:18
**locate** [1] - 18:9
**LOCKARD** [1] - 2:10
**log** [12] - 50:17, 51:2, 52:14, 52:18, 54:18, 54:25, 55:4, 55:5, 55:7, 56:15, 57:6, 57:9
**logistically** [1] - 30:9
**logistics** [4] - 29:13, 30:2, 36:12, 36:19
**logs** [1] - 55:16
**look** [8] - 20:23, 25:9, 26:3, 31:9, 53:21, 66:8, 68:20, 81:24
**looked** [8] - 17:1,

36:19, 50:12, 54:4, 62:17, 70:21, 76:12, 84:2
**looking** [7] - 25:13, 49:13, 51:10, 52:14, 53:22, 60:9
**looks** [2] - 24:18, 69:2
**LORETTA** [1] - 3:11
**LORI** [1] - 2:11
**Los** [1] - 3:7
**losartan** [1] - 16:3
**lost** [1] - 40:18
**Louisiana** [1] - 2:3
**lower** [1] - 15:20
**Ltd** [2] - 2:9, 2:13
**luckily** [1] - 31:22

# M

**machine** [4] - 77:11, 80:23, 81:24, 82:1
**macStravic** [1] - 8:18
**MacStravic** [2] - 3:12, 85:19
**Maggie** [5] - 23:13, 24:15, 33:5, 33:16, 35:7
**main** [1] - 24:17
**maintained** [1] - 73:9
**majority** [2] - 14:10, 66:3
**man** [1] - 20:2
**management** [5] - 10:4, 10:5, 65:5, 66:10, 68:4
**manager** [2] - 8:9, 13:2
**managers** [1] - 14:22
**manual** [1] - 80:15
**manufacture** [2] - 8:13, 72:4
**manufacturer** [1] - 66:13
**manufacturers** [1] - 67:8
**manufacturers'** [1] - 66:25
**manufactures** [1] - 8:7
**manufacturing** [4] - 11:8, 21:14, 72:9, 73:22
**March** [1] - 47:7
**market** [4] - 15:21, 16:5, 19:3, 19:5
**Market** [1] - 2:19
**marketing** [1] - 10:15
**Marlene** [6] - 47:20, 52:3, 53:6, 53:13, 55:17, 69:21
**MARLENE** [1] - 1:19
**massive** [1] - 19:2

**MASTER** [1] - 1:10
**Master** [1] - 4:2
**master** [1] - 64:11
**material** [12] - 21:16, 21:20, 22:18, 22:19, 23:18, 23:19, 23:21, 23:23, 25:8, 27:10, 27:19, 74:18
**materiality** [1] - 24:14
**materially** [4] - 9:23, 9:25, 11:20, 13:15
**matter** [19] - 5:7, 5:21, 10:24, 22:4, 27:22, 28:10, 28:12, 28:13, 29:7, 29:17, 45:4, 67:16, 76:6, 77:22, 79:19, 82:20, 83:23, 84:24, 86:16
**matters** [6] - 4:21, 5:12, 5:18, 32:16, 32:18, 34:3
**MAZIE** [1] - 1:13
**mean** [16] - 11:19, 30:5, 30:20, 31:5, 41:22, 49:24, 53:10, 62:9, 62:11, 66:14
**meaning** [1] - 82:9
**meaningless** [1] - 80:7
**means** [5] - 14:3, 45:10, 79:3, 82:7
**meantime** [3] - 32:11, 45:18, 55:12
**mechanical** [1] - 1:24
**meet** [7] - 18:8, 18:20, 49:4, 50:13, 50:14, 52:15, 75:14
**meeting** [3] - 10:23, 55:17
**meetings** [5] - 5:19, 11:18, 16:16, 16:18, 26:10
**member** [2] - 13:25, 76:7
**memo** [3] - 13:8, 13:9, 13:10
**memorandum** [1] - 13:2
**Memorial** [1] - 42:21
**memorialized** [1] - 40:1
**mention** [4] - 12:7, 12:8, 12:21, 64:4
**mentioned** [2] - 12:17, 12:24
**mentioning** [1] - 21:12
**Meridan** [2] - 57:14, 58:2
**merit** [1] - 66:11
**meritorious** [1] - 44:5

**metadata** [2] - 27:25, 61:6
**mid** [1] - 47:7
**mid-March** [1] - 47:7
**might** [1] - 51:17
**Min** [10] - 5:20, 11:11, 19:13, 24:17, 25:11, 26:8, 31:17, 32:17, 38:8, 40:4
**mind** [1] - 44:17
**minimum** [5] - 7:13, 7:20, 13:14, 15:2, 27:8
**Minneapolis** [1] - 1:20
**Minnesota** [1] - 1:20
**minuscule** [1] - 12:18
**minutes** [2] - 6:16, 7:25
**mischaracterizing** [1] - 21:25
**misrepresented** [1] - 82:9
**missed** [2] - 34:14, 85:14
**misses** [1] - 31:25
**missing** [2] - 32:18, 74:4
**misunderstanding** [1] - 40:25
**Mitchell** [1] - 1:7
**modified** [3] - 38:3, 38:5, 38:12
**moment** [2] - 31:12, 83:16
**Monday** [8] - 28:6, 28:22, 30:16, 35:18, 36:4, 36:5, 42:21, 44:2
**month** [4] - 17:4, 20:2, 24:22, 42:13
**months** [3] - 18:13, 34:18, 48:24
**MORGAN** [1] - 2:18
**Morgan** [1] - 47:25
**morning** [26] - 4:3, 4:4, 4:6, 4:7, 46:16, 47:18, 47:19, 47:24, 48:1, 48:2, 53:12, 53:13, 55:22, 55:25, 56:13, 58:17, 59:10, 59:12, 60:8, 60:19, 61:9, 61:19, 63:23, 64:24, 69:10, 71:25
**MORRIS** [1] - 2:5
**most** [8] - 4:13, 12:5, 26:15, 42:14, 57:9, 59:16, 65:23, 74:20
**mostly** [1] - 61:4
**motion** [33] - 4:12, 4:17, 4:18, 6:5, 20:9,

*28:5, 42:19, 44:25, 45:8, 45:13, 45:15, 45:19, 45:25, 46:20, 46:25, 47:22, 49:3, 49:8, 49:14, 52:10, 57:22, 64:11, 69:18, 70:15, 71:15, 71:17, 74:8, 74:12, 77:3, 82:5, 82:17, 83:22, 85:9*

**motions** *[1] - 70:23*

**move** *[16] - 6:4, 17:6, 25:3, 28:2, 28:10, 28:13, 29:7, 29:9, 30:21, 41:24, 42:23, 45:6, 50:18, 54:11, 70:7, 76:24*

**moved** *[1] - 68:17*

**moving** *[2] - 45:4, 69:2*

**MR** *[80] - 4:4, 5:15, 6:13, 7:9, 7:12, 8:3, 8:23, 8:25, 9:2, 9:19, 15:8, 20:5, 23:6, 24:5, 24:8, 26:14, 29:11, 29:12, 30:12, 30:20, 30:25, 31:2, 32:13, 32:23, 33:4, 34:9, 35:14, 35:16, 36:3, 36:7, 38:11, 39:1, 39:22, 41:6, 41:11, 41:17, 42:1, 42:17, 43:4, 43:13, 43:16, 43:18, 44:1, 44:9, 44:13, 44:14, 46:8, 46:9, 48:1, 58:16, 59:10, 59:13, 61:4, 61:9, 61:18, 61:23, 62:20, 63:4, 63:13, 63:23, 66:20, 67:25, 68:19, 68:23, 69:4, 69:10, 69:16, 71:21, 73:2, 73:8, 74:13, 77:23, 78:3, 78:8, 81:13, 82:20, 85:12, 85:16, 86:7, 86:8*

**MS** *[55] - 4:6, 35:4, 37:19, 37:21, 38:2, 38:12, 38:16, 39:12, 40:20, 41:7, 46:16, 46:18, 47:18, 47:20, 48:3, 49:6, 49:12, 49:18, 49:21, 50:4, 50:10, 50:18, 50:21, 51:20, 52:12, 53:5, 53:18, 53:23, 54:12, 54:16, 55:17, 55:22, 56:11, 57:4, 57:17, 58:5, 58:8, 64:24, 67:21, 68:8, 68:24,*

---

*69:21, 69:25, 70:4, 70:9, 71:5, 71:11, 71:13, 71:25, 72:17, 73:18, 75:2, 75:4, 76:11, 76:25*

**multiple** *[2] - 7:2, 81:15*

**multiplier** *[1] - 12:3*

**mute** *[1] - 5:1*

### N

**nail** *[2] - 30:16, 31:6*

**Nakul** *[1] - 61:9*

**NAKUL** *[1] - 2:22*

**name** *[3] - 21:2, 23:13, 47:24*

**named** *[1] - 54:22*

**narrow** *[2] - 58:14, 63:25*

**National** *[1] - 13:24*

**national** *[2] - 35:10, 35:21*

**nature** *[2] - 74:17, 77:14*

**NDA** *[1] - 10:10*

**NDMA** *[3] - 5:23, 25:17, 25:19*

**NE** *[1] - 2:12*

**near** *[1] - 45:15*

**nearly** *[1] - 25:21*

**necessarily** *[2] - 75:8, 84:19*

**necessary** *[4] - 7:19, 22:24, 24:21, 44:7*

**need** *[38] - 5:2, 14:18, 17:5, 19:18, 19:25, 26:4, 26:5, 26:8, 28:1, 28:8, 28:10, 28:13, 29:19, 29:22, 29:23, 29:25, 30:8, 33:19, 36:5, 36:16, 36:17, 37:24, 39:23, 39:24, 43:13, 44:11, 50:1, 53:2, 54:6, 64:3, 64:7, 64:18, 69:2, 71:7, 85:7, 85:10, 85:23, 85:24*

**needed** *[2] - 22:24, 55:10*

**needing** *[1] - 16:2*

**needs** *[5] - 26:22, 29:19, 36:13, 58:11, 83:4*

**negotiate** *[12] - 63:17, 63:18, 64:7, 65:17, 66:7, 66:15, 66:23, 67:6, 67:18, 67:19, 67:22, 69:12*

**negotiated** *[1] - 75:5*

**negotiating** *[1] - 64:15*

---

**negotiation** *[3] - 22:15, 67:4, 67:15*

**negotiations** *[1] - 65:5*

**net** *[1] - 17:22*

**never** *[9] - 10:6, 10:11, 10:13, 11:13, 17:19, 20:7, 20:11, 57:17, 83:23*

**new** *[8] - 23:9, 23:12, 24:9, 24:10, 35:5, 56:15, 81:16, 82:2*

**NEW** *[1] - 1:1*

**New** *[4] - 1:8, 1:14, 2:3, 2:23*

**next** *[27] - 11:21, 16:25, 17:11, 28:6, 28:21, 28:22, 29:10, 32:14, 33:20, 36:3, 39:8, 39:10, 39:15, 39:17, 43:7, 46:12, 52:9, 54:7, 58:9, 59:18, 63:15, 64:16, 68:6, 68:9, 68:12, 69:1, 69:17*

**night** *[9] - 42:21, 47:2, 48:11, 49:1, 51:9, 55:5, 56:14, 56:23, 57:6*

**nine** *[2] - 12:1, 30:7*

**nitrite** *[1] - 25:18*

**nitrosamine** *[2] - 25:14, 34:21*

**nobody** *[1] - 82:12*

**nobody's** *[1] - 18:6*

**noncustodial** *[2] - 50:25, 51:13*

**none** *[4] - 12:8, 12:22, 19:12, 84:3*

**nonetheless** *[1] - 60:20*

**nonresponsive** *[3] - 61:1, 61:3, 61:12*

**normal** *[1] - 14:21*

**note** *[4] - 13:1, 46:21, 56:6, 57:6*

**noted** *[3] - 59:24, 62:22, 83:1*

**notes** *[5] - 5:19, 12:25, 16:11, 16:16, 16:17*

**nothing** *[8] - 21:19, 44:22, 46:8, 46:9, 58:3, 58:8, 81:16, 85:16*

**Novartis** *[1] - 18:13*

**November** *[1] - 78:6*

**number** *[12] - 9:21, 10:1, 13:21, 17:3, 19:20, 25:5, 25:6, 48:16, 51:18, 54:4,*

---

*54:22, 86:5*

**Number** *[8] - 11:9, 25:1, 37:22, 38:6, 66:12, 66:24, 86:3*

**NUMBER** *[1] - 1:3*

**numerous** *[5] - 51:5, 51:6, 62:23, 72:4, 79:24*

### O

**object** *[3] - 9:11, 29:3, 36:7*

**objecting** *[1] - 35:6*

**objection** *[1] - 81:23*

**obtain** *[2] - 6:9, 76:7*

**obtained** *[3] - 72:15, 76:19, 81:23*

**obviously** *[10] - 5:21, 9:11, 24:8, 30:21, 31:9, 36:7, 39:4, 58:2, 72:19, 75:20*

**occurred** *[2] - 62:4, 74:19*

**October** *[3] - 20:14, 20:17, 64:9*

**OF** *[1] - 1:1*

**off-point** *[1] - 16:24*

**offered** *[1] - 47:8*

**office** *[3] - 35:24, 36:5, 38:20*

**Official** *[1] - 1:22*

**official** *[9] - 10:22, 13:20, 18:22, 19:6, 21:1, 21:6, 21:11, 42:14*

**officials** *[1] - 18:25*

**offline** *[1] - 54:3*

**often** *[1] - 73:19*

**Ohio** *[1] - 3:4*

**once** *[6] - 10:16, 38:18, 38:20, 40:5, 53:16*

**one** *[42] - 10:1, 11:12, 12:15, 12:16, 12:25, 13:2, 15:9, 15:14, 15:19, 15:25, 17:3, 19:17, 19:20, 23:12, 25:1, 25:5, 26:10, 26:22, 29:10, 31:17, 31:25, 33:10, 34:13, 35:9, 47:6, 51:18, 53:24, 55:6, 55:12, 61:23, 61:25, 62:1, 62:3, 62:9, 62:22, 63:19, 71:15, 77:6, 79:15, 81:18, 84:17*

**ones** *[4] - 33:8, 33:15, 36:14, 57:8*

**ongoing** *[2] - 58:22, 59:4*

---

**open** *[4] - 39:14, 40:16, 78:4*

**opening** *[2] - 10:23, 67:16*

**operating** *[4] - 52:22, 53:7, 53:8, 53:20*

**operations** *[2] - 10:15, 72:9*

**opportunity** *[14] - 7:24, 27:16, 28:3, 28:18, 29:2, 43:5, 60:2, 60:3, 63:7, 63:8, 70:19, 82:25, 83:2, 83:3*

**opposition** *[2] - 6:4, 81:21*

**Oracle** *[1] - 51:23*

**oral** *[1] - 46:19*

**order** *[40] - 4:18, 4:21, 6:6, 17:3, 20:9, 25:3, 25:4, 27:14, 28:11, 28:23, 30:6, 41:24, 42:4, 42:8, 42:25, 43:9, 44:4, 44:11, 45:1, 45:20, 45:25, 47:6, 53:3, 71:4, 75:5, 75:6, 77:3, 77:16, 78:9, 78:18, 78:20, 80:22, 82:2, 82:3, 82:5, 83:10, 83:12, 83:22, 84:3, 85:9*

**ordered** *[12] - 7:14, 20:11, 26:15, 26:16, 33:16, 43:24, 48:23, 51:12, 51:14, 52:20, 54:8, 80:6*

**ordering** *[1] - 15:4*

**orders** *[1] - 70:16*

**ordinary** *[1] - 46:1*

**organization** *[1] - 19:16*

**organizational** *[1] - 12:24*

**original** *[2] - 59:20, 60:19*

**Orleans** *[1] - 2:3*

**otherwise** *[2] - 27:21, 28:19*

**ourselves** *[2] - 66:6, 66:17*

**outside** *[1] - 58:19*

**outstanding** *[2] - 52:4, 69:14*

**overall** *[1] - 65:5*

**overlays** *[1] - 61:6*

**overnight** *[4] - 59:16, 59:22, 61:24*

**oversee** *[1] - 10:15*

**overseeing** *[1] - 27:10*

**oversees** [1] - 8:9
**overview** [1] - 73:23
**own** [3] - 43:14, 51:3, 64:10

# P

**P.C** [1] - 2:15
**p.m** [1] - 86:10
**Pacific** [1] - 1:17
**PACKARD** [1] - 1:16
**page** [7] - 40:21, 50:2, 50:3, 50:5, 50:12, 70:18, 71:8
**Page** [9] - 23:4, 24:2, 32:19, 34:4, 34:8, 37:16, 78:3, 78:4, 78:5
**pages** [5] - 47:2, 70:18, 70:25, 71:1, 71:7
**paper** [1] - 49:25
**papers** [3] - 64:3, 65:2, 70:10
**Paragraph** [1] - 37:18
**paramount** [1] - 14:12
**PAREKH** [4] - 1:16, 58:16, 61:23, 63:13
**Parekh** [4] - 54:1, 58:17, 61:11, 63:12
**Park** [1] - 3:6
**Parkway** [2] - 1:14, 2:16
**part** [10] - 15:10, 31:2, 58:23, 62:4, 74:11, 74:12, 75:8, 76:6, 76:21, 76:22
**participant's** [1] - 8:24
**particular** [3] - 4:17, 9:22, 67:15
**particularly** [3] - 62:12, 65:17, 84:6
**parties** [5] - 34:6, 56:20, 64:2, 75:6, 78:12
**parties'** [5] - 72:3, 72:8, 72:10, 73:22, 75:6
**parts** [4] - 71:18, 72:14, 72:18, 74:6
**party** [9] - 11:25, 13:7, 43:5, 44:4, 77:16, 79:14, 83:24, 84:11, 84:21
**pass** [2] - 61:6, 71:22
**past** [1] - 52:22
**patently** [1] - 13:14
**Pedano** [2] - 1:22, 86:18
**peel** [1] - 74:14
**penalized** [1] - 30:4

**Peng** [1] - 32:18
**Pennsylvania** [3] - 2:7, 2:17, 2:19
**people** [6] - 5:20, 17:13, 19:12, 19:13, 21:23, 24:11
**People's** [3] - 13:20, 13:24, 14:1
**percent** [2] - 12:2, 54:25
**percentages** [1] - 12:18
**perhaps** [1] - 33:1
**peril** [1] - 84:14
**period** [1] - 70:12
**permit** [1] - 81:4
**permitted** [2] - 70:18, 81:1
**person** [3] - 16:9, 18:2, 26:10
**perspective** [2] - 9:6, 61:22
**persuaded** [2] - 27:20, 67:5
**persuasive** [3] - 21:8, 28:16, 28:17
**pertain** [1] - 14:9
**pertaining** [1] - 23:12
**pertains** [1] - 22:20
**pertinent** [1] - 26:25
**Pharma** [4] - 2:14, 2:20, 2:20, 48:13
**Pharmaceutical** [1] - 2:13
**Pharmaceuticals** [3] - 2:8, 2:9, 2:13
**pharmacies** [10] - 64:25, 65:6, 65:11, 65:13, 65:21, 66:1, 66:6, 67:2, 67:3, 68:13
**Pharmacy** [1] - 3:7
**pharmacy** [2] - 70:16, 70:24
**Phase** [1] - 64:8
**philadelphia** [1] - 2:19
**Philadelphia** [1] - 2:7
**phone** [1] - 52:3
**physically** [3] - 35:11, 39:13, 39:14
**picking** [1] - 86:6
**piece** [1] - 55:1
**piecemeal** [4] - 56:20, 56:25, 57:3, 57:21
**Piedmont** [1] - 2:12
**place** [3] - 21:3, 66:11, 74:2
**plaintiff** [3] - 46:9, 58:8, 85:13
**plaintiffs** [61] - 9:20,

9:21, 10:1, 10:8, 14:24, 20:15, 21:25, 22:1, 22:7, 22:13, 23:3, 23:13, 23:15, 23:17, 26:17, 27:7, 30:3, 34:11, 34:17, 35:6, 37:10, 43:11, 46:22, 47:16, 48:7, 48:25, 52:2, 56:3, 59:21, 60:12, 60:18, 60:24, 61:13, 63:22, 63:24, 65:6, 66:2, 66:4, 68:14, 70:20, 71:8, 72:18, 72:20, 73:1, 73:24, 73:25, 75:10, 75:13, 78:9, 78:19, 78:25, 79:2, 79:3, 79:22, 80:3, 80:15, 80:19, 80:21, 83:9, 84:14, 85:12
**Plaintiffs** [4] - 1:15, 1:18, 1:21, 2:4
**plaintiffs'** [19] - 4:21, 4:23, 9:6, 14:20, 21:4, 34:5, 42:20, 46:12, 46:14, 47:22, 58:10, 60:2, 60:16, 61:22, 71:1, 76:1, 78:16, 80:1, 84:12
**planning** [1] - 10:5
**plays** [2] - 27:25, 29:2
**pleadings** [4] - 67:9, 67:10, 67:14, 70:13
**point** [31] - 11:10, 11:21, 16:24, 17:11, 18:17, 20:25, 21:8, 25:25, 32:24, 35:17, 36:19, 37:5, 38:10, 39:2, 39:8, 39:12, 43:1, 43:2, 44:20, 44:23, 47:6, 50:21, 67:15, 67:23, 68:22, 70:13, 74:15, 75:20, 78:25, 83:15
**Point** [4] - 12:25, 15:16, 16:8, 16:21
**points** [3] - 7:17, 20:6, 77:23
**pole** [1] - 58:19
**policies** [6] - 52:21, 53:5, 53:9, 53:18, 54:4, 68:3
**policy** [4] - 52:24, 53:12, 53:17, 53:19
**portion** [2] - 75:9, 75:11, 75:14
**position** [11] - 40:14, 51:10, 55:9, 65:17, 66:9, 66:11, 70:10, 72:23, 73:20, 73:21,

83:6
**position's** [2] - 39:3, 70:4
**positions** [3] - 41:1, 65:22, 70:2
**possible** [5] - 29:8, 30:2, 48:22, 53:16, 57:5
**possibly** [1] - 43:7
**postpone** [3] - 28:20, 45:11, 45:12
**postponement** [1] - 28:11
**potential** [2] - 14:14, 35:8
**power** [1] - 54:2
**Power** [4] - 12:25, 15:16, 16:7, 16:21
**practice** [2] - 14:22, 83:1
**pre** [1] - 79:8
**pre-deposition** [1] - 79:8
**preclude** [3] - 7:5, 43:5, 45:2
**precluded** [1] - 20:11
**predicament** [1] - 66:7
**preference** [1] - 68:5
**prejudging** [1] - 6:7
**prejudice** [5] - 40:5, 43:11, 46:23, 59:19, 60:6
**prejudicing** [1] - 59:5
**preliminary** [1] - 35:8
**premature** [3] - 14:18, 22:23, 27:17
**prep** [1] - 79:6
**prepare** [2] - 45:23, 82:14
**prepared** [4] - 55:19, 69:19, 69:20, 79:5
**preparing** [2] - 61:14, 82:13
**present** [2] - 78:9, 80:3
**PRESENT** [1] - 3:10
**presentation** [7] - 9:10, 9:18, 28:4, 28:8, 28:15, 28:16, 45:2
**presented** [10] - 15:19, 27:18, 74:11, 76:8, 76:13, 76:22, 80:25, 82:10, 84:23, 84:25
**presently** [1] - 61:14
**presents** [2] - 13:16, 83:10
**preservation** [1] - 52:20

**president** [1] - 14:1
**pressure** [1] - 39:5
**presumably** [1] - 65:10
**presuming** [1] - 76:18
**presumption** [1] - 76:14
**presumptively** [1] - 74:20
**pretty** [2] - 66:6, 70:4
**prevent** [2] - 17:6, 44:4
**previously** [3] - 5:10, 54:9, 61:12
**price** [1] - 19:4
**prices** [2] - 16:2, 16:4
**primarily** [1] - 73:5
**Princeton** [1] - 2:23
**Prinston** [1] - 2:8
**PRISELAC** [10] - 2:6, 35:4, 37:19, 37:21, 38:2, 38:12, 38:16, 39:12, 40:20, 41:7
**Priselac** [6] - 6:19, 34:10, 35:1, 35:16, 36:16, 40:19
**privilege** [9] - 50:16, 52:18, 54:11, 54:15, 54:18, 55:4, 55:16, 56:15, 57:22
**pro** [1] - 36:18
**probative** [2] - 15:15, 16:24
**problem** [14] - 9:13, 16:3, 18:25, 44:25, 47:15, 50:25, 55:15, 55:23, 56:19, 60:23, 62:9, 63:10, 78:21, 84:20
**problematic** [1] - 54:24
**problems** [1] - 81:5
**procedures** [6] - 52:22, 52:23, 53:7, 53:9, 53:10, 53:20
**proceed** [3] - 5:5, 8:2, 84:14
**proceeded** [1] - 62:25
**proceedings** [2] - 86:10, 86:16
**PROCEEDINGS** [1] - 4:1
**Proceedings** [1] - 1:24
**process** [13] - 10:3, 11:10, 15:18, 15:23, 16:9, 21:15, 25:16, 29:23, 48:15, 79:19, 79:23, 83:23, 84:20
**processed** [1] - 48:15

**processing** [2] - 26:9, 48:18
**procurable** [1] - 44:20
**procure** [1] - 59:23
**produce** [15] - 18:7, 19:24, 22:16, 24:13, 30:8, 33:7, 33:24, 47:7, 47:9, 48:24, 53:14, 61:13, 61:24, 63:6, 67:13
**produced** [44] - 1:25, 12:4, 14:24, 17:18, 21:2, 21:10, 21:21, 22:14, 22:25, 24:4, 24:16, 25:24, 27:4, 27:22, 28:24, 30:1, 33:8, 33:23, 34:19, 40:2, 48:6, 48:14, 48:25, 51:1, 51:12, 51:22, 51:23, 51:24, 52:2, 53:8, 53:20, 56:22, 57:21, 61:15, 61:25, 67:11, 73:19, 74:23, 75:4, 76:3, 76:15
**producing** [3] - 29:13, 56:12, 56:19
**product** [6] - 19:2, 57:23, 78:17, 78:19, 79:4, 79:7
**Production** [1] - 66:24
**production** [59] - 5:10, 12:19, 13:11, 13:13, 14:15, 14:17, 15:5, 17:24, 18:16, 18:19, 19:7, 20:12, 23:2, 23:11, 24:15, 25:7, 25:16, 26:3, 26:14, 26:16, 26:20, 26:23, 27:8, 27:15, 28:5, 28:23, 29:3, 29:14, 29:18, 31:11, 31:18, 31:20, 33:2, 34:6, 34:15, 34:23, 35:7, 38:15, 38:22, 48:7, 48:11, 50:24, 51:2, 52:14, 53:5, 56:14, 56:15, 56:22, 56:23, 61:14, 63:17, 63:19, 65:8, 65:9, 65:12, 67:11
**productions** [12] - 9:9, 18:20, 24:12, 24:23, 26:5, 29:16, 48:3, 52:2, 59:20, 59:25, 60:24, 63:1
**PRODUCTS** [1] - 1:4
**products** [3] - 8:8, 72:4, 72:5
**profits** [1] - 19:2

**projections** [1] - 39:2
**prompt** [1] - 28:9
**promptly** [2] - 39:7, 54:21
**proportionality** [1] - 65:19
**proposal** [2] - 64:10, 68:11
**propose** [3] - 69:6, 75:16, 83:14
**proposed** [4] - 49:3, 70:12, 70:22, 78:11
**proprietary** [1] - 76:17
**protect** [1] - 75:16
**protecting** [1] - 76:17
**protection** [3] - 79:20, 79:23, 83:23
**protective** [18] - 4:18, 20:9, 25:3, 41:24, 42:4, 42:8, 42:25, 43:9, 44:25, 45:20, 45:25, 75:6, 77:3, 77:16, 82:5, 83:22, 84:3, 85:9
**protocol** [2] - 5:1, 53:15
**proven** [1] - 25:8
**provide** [17] - 7:20, 11:16, 26:19, 35:22, 48:17, 48:19, 52:8, 52:20, 55:6, 56:18, 57:1, 59:16, 60:14, 61:19, 62:21, 73:23, 80:6, 80:15, 83:24
**provided** [11] - 9:24, 12:1, 22:23, 51:22, 52:8, 67:1, 67:2, 74:7, 79:24, 84:5, 85:3
**providing** [4] - 23:17, 42:6, 55:16, 55:23
**provision** [1] - 78:21
**public** [5] - 73:13, 74:20, 75:13, 75:19, 75:22, 76:7, 76:19
**publicly** [1] - 75:15
**pull** [2] - 17:23, 77:15
**pulled** [1] - 80:4
**pulling** [2] - 15:10, 22:13
**punt** [1] - 55:11
**purchase** [1] - 67:8
**pursuant** [3] - 75:4, 76:3, 76:15
**pursue** [1] - 32:15
**pursued** [1] - 65:21
**push** [2] - 37:2, 43:1
**pushing** [1] - 15:20
**put** [10] - 6:17, 12:6, 16:7, 16:20, 20:8,

54:6, 64:2, 64:3, 65:2, 65:17
**putting** [2] - 65:4, 79:2

## Q

**quality** [4] - 10:3, 11:12, 16:9, 21:14
**quench** [1] - 25:18
**questioned** [1] - 83:7
**questioning** [2] - 43:20, 83:25
**questions** [10] - 4:11, 4:14, 4:19, 42:15, 44:21, 64:19, 64:20, 77:17, 82:24, 84:15
**quick** [2] - 47:23, 48:4
**quickly** [6] - 30:2, 30:22, 40:7, 48:21, 53:16, 57:5
**quite** [2] - 5:11, 77:1
**quote** [2] - 15:16, 16:11
**quoted** [1] - 16:14

## R

**raise** [3] - 20:16, 43:24, 52:17
**raised** [2] - 50:22, 70:20
**raising** [1] - 44:5
**ranking** [5] - 10:22, 21:1, 21:5, 21:6, 21:11
**rather** [1] - 46:23
**re** [1] - 23:8
**RE** [1] - 1:4
**re-interview** [1] - 23:8
**reach** [2] - 68:12, 75:17
**reached** [2] - 36:20, 61:3
**read** [11] - 79:17, 79:23, 80:10, 80:11, 80:14, 80:25, 81:1, 81:10, 81:11, 83:11, 83:17
**readiness** [1] - 72:3
**reads** [1] - 44:17
**ready** [2] - 58:3
**real** [5] - 9:13, 27:9, 44:5, 47:23, 58:21
**reality** [1] - 11:14
**realized** [1] - 42:22
**really** [12] - 5:16, 11:21, 21:3, 21:8, 26:7, 28:2, 46:22, 53:25, 56:16, 73:15, 74:21, 79:16
**reason** [7] - 9:15,

19:3, 22:16, 32:8, 64:14, 73:9, 74:23
**reasonable** [2] - 33:10, 40:6
**reasoning** [1] - 19:10
**receive** [2] - 22:20, 60:7
**received** [11] - 12:16, 12:17, 18:2, 18:3, 47:1, 48:5, 48:12, 53:12, 53:16, 58:13, 62:3
**recently** [1] - 55:24
**recipient** [1] - 13:9
**recipients** [1] - 26:1
**recognized** [2] - 15:11, 73:12
**record** [20] - 6:8, 6:9, 7:2, 8:14, 14:21, 15:13, 17:5, 17:7, 19:10, 36:23, 37:14, 44:16, 76:6, 76:19, 76:21, 76:23, 81:8, 82:10, 84:14, 86:16
**recorded** [1] - 1:24
**records** [1] - 76:14
**redact** [2] - 73:20, 73:24
**redacted** [4] - 73:6, 73:20, 74:2, 76:3
**redactions** [2] - 74:15, 75:16
**Redondo** [1] - 1:17
**reference** [2] - 23:2, 34:20
**references** [1] - 68:2
**referencing** [1] - 51:9
**referred** [2] - 13:8, 34:15
**refers** [1] - 22:2
**reflect** [1] - 15:23
**refrain** [1] - 77:17
**refuse** [1] - 85:2
**refute** [1] - 16:8
**refutes** [1] - 16:22
**regarded** [1] - 61:2
**regarding** [2] - 61:11, 66:14
**regardless** [1] - 45:7
**regularly** [1] - 10:14
**regulatory** [3] - 11:1, 17:14, 57:11
**reiterate** [2] - 5:16, 64:3
**reject** [1] - 19:21
**rejected** [1] - 19:8
**related** [1] - 61:5
**relating** [2] - 22:5, 66:25
**relevant** [6] - 5:18,

13:5, 60:23, 63:1, 63:9, 75:25
**reliable** [1] - 84:19
**relied** [1] - 14:24
**rely** [2] - 36:23, 80:2
**relying** [1] - 36:16
**remain** [2] - 41:13, 54:8
**remaining** [4] - 48:13, 57:8, 58:14, 62:8
**remains** [1] - 41:10
**remember** [3] - 29:21, 51:25, 52:18
**remembered** [1] - 35:18
**remind** [1] - 64:8
**reminded** [1] - 35:16
**REMOTE** [1] - 1:6
**remotely** [1] - 4:1
**remove** [1] - 29:25
**renamed** [1] - 17:21
**renewed** [5] - 20:18, 20:19, 20:21, 30:6
**reopen** [1] - 35:13
**repeatedly** [1] - 73:11
**repeating** [1] - 28:14
**reply** [6] - 30:15, 30:21, 49:11, 49:23, 50:11, 71:1
**report** [10] - 10:13, 11:16, 18:5, 18:10, 38:21, 41:3, 62:3, 68:21, 74:10, 74:11
**Report** [1] - 54:23
**reported** [2] - 11:15, 27:11
**Reporter** [1] - 1:22
**reporter** [1] - 5:4
**Reporter/ Transcriber** [1] - 86:18
**reporting** [1] - 39:9
**reports** [13] - 10:20, 13:1, 39:7, 43:2, 62:3, 70:7, 71:18, 72:1, 72:2, 72:7, 72:14, 73:22, 74:7
**representations** [1] - 67:1
**representative** [1] - 62:24
**represents** [1] - 75:6
**reproduce** [1] - 63:9
**Republic** [1] - 13:20
**request** [44] - 4:23, 5:6, 5:12, 5:13, 6:15, 7:15, 7:16, 7:20, 8:4, 19:20, 19:21, 19:23, 20:21, 20:22, 20:24, 23:14, 27:5, 30:4,

30:5, 30:7, 33:21, 36:8, 41:18, 46:14, 50:15, 56:3, 56:4, 66:12, 66:15, 67:4, 67:7, 72:15, 72:19, 72:20, 73:25, 74:1, 76:3, 76:16, 76:20, 77:15, 77:20, 80:9, 80:24, 84:3

**requested** [8] - 23:9, 27:8, 33:15, 52:25, 59:2, 59:15, 60:1, 60:18

**requesting** [3] - 33:14, 61:13, 75:21

**Requests** [2] - 63:20, 66:24

**requests** [18] - 22:8, 22:12, 23:4, 24:1, 37:3, 37:4, 60:16, 63:17, 63:19, 64:6, 65:8, 65:9, 65:12, 65:20, 66:8, 66:16, 67:19, 74:18

**require** [6] - 5:9, 29:21, 67:6, 67:15, 77:8, 84:25

**required** [6] - 7:14, 10:22, 13:18, 26:24, 80:20, 83:24

**requirement** [1] - 84:4

**requires** [3] - 7:22, 29:18, 65:20

**requiring** [2] - 44:25, 47:7

**reschedule** [1] - 27:7

**rescheduled** [1] - 26:19

**rescheduling** [3] - 26:21, 41:18, 43:8

**reserving** [1] - 38:10

**resist** [1] - 18:21

**resolvable** [1] - 58:14

**resolve** [2] - 46:5, 77:10

**resolved** [3] - 29:5, 40:15, 77:24

**respect** [37] - 4:12, 5:13, 22:7, 24:1, 27:23, 29:13, 32:17, 32:21, 34:2, 34:5, 35:5, 38:8, 39:21, 40:22, 41:9, 41:17, 41:25, 50:16, 54:15, 57:23, 58:7, 58:12, 61:1, 63:17, 63:18, 66:24, 67:7, 67:12, 70:3, 70:23, 71:15, 77:9, 77:21, 83:21, 84:15, 84:21

**respectfully** [2] - 70:6, 80:24

**respond** [9] - 28:6, 28:7, 36:6, 37:7, 37:10, 50:8, 52:6, 60:16, 66:20

**response** [13] - 20:6, 26:4, 30:11, 46:21, 47:21, 49:3, 49:8, 49:19, 50:2, 52:10, 60:14, 70:24

**responsive** [4] - 48:6, 48:25, 61:13, 62:1

**rest** [3] - 15:14, 38:5, 40:8

**restarting** [1] - 35:12

**result** [1] - 18:5

**results** [1] - 14:13

**Retailer** [1] - 3:7

**retailer** [5] - 63:15, 64:10, 64:23, 67:6, 71:6

**retailers** [3] - 64:7, 67:2, 69:6

**retained** [1] - 82:11

**retention** [1] - 53:11

**reveal** [2] - 78:16, 78:19

**reversal** [1] - 77:12

**reversing** [1] - 84:18

**review** [10] - 7:8, 23:11, 29:23, 29:25, 48:17, 59:23, 60:10, 72:21, 82:25, 83:2

**reviewed** [4] - 34:18, 48:5, 48:8, 48:10, 48:13, 48:24

**RFP** [1] - 66:24

**right-hand** [1] - 16:21

**rights** [1] - 38:10

**rigid** [1] - 44:4

**ripe** [1] - 23:16

**Risk** [1] - 54:23

**Rite** [1] - 3:8

**RMR** [1] - 86:18

**road** [2] - 67:14, 83:20

**Road** [2] - 2:12, 2:23

**Robert** [1] - 3:11

**role** [4] - 8:10, 13:1, 15:1, 29:1

**roles** [1] - 13:22

**root** [3] - 10:11, 10:12, 25:19

**Roseland** [1] - 1:14

**Roszel** [1] - 2:23

**RPR** [1] - 86:18

**rule** [5] - 7:23, 14:5, 14:7, 22:24, 32:2

**ruled** [2] - 35:17, 42:11, 48:9, 81:17,

81:21, 83:23

**rules** [6] - 14:12, 14:14, 50:12, 70:18, 76:17, 76:18

**Rules** [1] - 81:4

**ruling** [15] - 5:9, 24:3, 28:9, 57:13, 57:15, 58:3, 64:14, 70:5, 76:10, 76:23, 79:16, 81:22, 82:6, 82:16, 85:6

**rulings** [3] - 54:17, 55:9, 58:2

**run** [4] - 33:22, 37:17, 52:22

**running** [1] - 26:9

**runs** [1] - 15:24

## S

**saga** [1] - 58:22

**salient** [2] - 7:17, 78:25

**sanctions** [2] - 46:14, 47:22

**sanitized** [1] - 31:19

**Sarah** [2] - 64:24, 69:22

**SARAH** [1] - 3:6

**sat** [1] - 30:3

**satisfy** [1] - 42:3

**satisfying** [1] - 73:16

**saw** [3] - 17:24, 51:8, 54:19

**Scan** [1] - 51:25

**scanned** [1] - 51:7

**schedule** [15] - 4:8, 7:15, 20:1, 20:9, 43:4, 44:3, 45:1, 45:19, 46:1, 49:14, 65:5, 66:10, 68:18, 69:18, 70:22

**scheduled** [7] - 6:3, 28:21, 42:19, 42:20, 43:10, 44:2, 47:11

**scheduling** [2] - 42:20, 44:4

**Schneider** [16] - 5:9, 6:6, 7:14, 15:4, 19:8, 20:7, 21:3, 25:2, 29:21, 42:2, 43:23, 77:8, 77:24, 78:17, 79:1, 79:13

**Schneider's** [1] - 79:16

**scientifically** [1] - 25:20

**scope** [6] - 36:24, 63:18, 63:25, 65:10, 66:12, 67:4

**scoured** [1] - 84:1

**scrambling** [1] - 68:9

**screen** [4] - 6:18, 8:19, 8:24, 71:23

**seal** [6] - 4:12, 24:20, 71:15, 71:17, 76:8, 76:15

**sealed** [5] - 71:20, 72:15, 75:20, 76:5, 76:21

**sealing** [1] - 74:24

**search** [7] - 33:21, 33:25, 34:19, 37:17, 37:23, 51:13, 62:21

**searches** [1] - 67:17

**searching** [1] - 51:16

**second** [10] - 6:22, 20:12, 20:25, 21:5, 21:11, 27:3, 34:1, 42:14, 53:2, 80:17

**second-highest** [1] - 42:14

**secret** [12] - 13:22, 14:5, 14:7, 14:11, 14:14, 19:1, 29:1, 29:4, 29:7, 29:14, 29:24

**secrets** [1] - 29:24

**see** [24] - 4:5, 5:25, 7:22, 9:3, 12:18, 14:19, 17:7, 20:23, 24:3, 24:23, 25:24, 25:25, 32:18, 36:21, 40:5, 44:16, 44:18, 44:24, 45:24, 52:12, 58:1, 68:12, 74:1, 84:20

**seek** [1] - 65:9

**seeking** [3] - 22:14, 66:2, 74:10

**seem** [1] - 18:18

**sees** [2] - 41:20, 82:12

**selected** [1] - 42:23

**sell** [1] - 18:23

**send** [1] - 53:13

**sense** [2] - 68:11, 81:14

**sensitive** [2] - 18:12, 82:23

**sent** [8] - 12:9, 12:14, 12:17, 13:9, 17:12, 53:6, 54:20, 57:7

**Sentry** [1] - 2:16

**series** [1] - 5:18

**serious** [2] - 42:17, 77:6

**seriously** [1] - 83:9

**served** [1] - 64:5

**session** [1] - 86:5

**set** [7] - 7:15, 40:25, 44:3, 45:1, 45:19,

47:20, 67:14

**Seth** [1] - 71:21

**SETH** [1] - 2:5

**setting** [2] - 60:14, 66:9

**setup** [1] - 35:8

**seven** [3] - 9:22, 12:21, 63:18

**several** [1] - 77:6

**SHAH** [3] - 2:22, 61:9, 61:18

**Shah** [2] - 61:4, 61:10

**shah** [1] - 61:7

**Shanghai** [1] - 29:20

**share** [9] - 6:18, 7:17, 8:16, 8:19, 8:24, 15:21, 16:5, 19:3, 19:5

**shared** [6] - 48:12, 51:3, 51:4, 51:15, 51:21, 52:7

**shocked** [1] - 62:25

**shorter** [1] - 70:12

**show** [12] - 8:1, 8:17, 8:19, 9:24, 11:20, 12:6, 13:15, 21:13, 26:8, 44:21, 80:9, 83:17

**showed** [2] - 80:18, 80:19

**showing** [5] - 7:6, 16:23, 24:24, 25:2, 83:18

**shown** [6] - 11:23, 12:3, 21:16, 83:14, 84:15, 84:19

**shows** [3] - 17:17, 19:11, 20:21

**shrinking** [1] - 66:1

**side** [11] - 41:5, 41:16, 48:8, 48:22, 58:13, 68:2, 68:6, 70:11, 70:23, 79:15, 85:15

**sides** [1] - 64:3

**sign** [1] - 82:15

**significance** [2] - 14:25, 15:15

**significant** [3] - 5:17, 6:14, 7:1

**significantly** [1] - 65:9

**similar** [1] - 25:17

**simply** [6] - 27:10, 44:2, 64:4, 76:16, 80:6

**single** [2] - 18:2, 83:1

**sit** [1] - 31:13

**situation** [1] - 81:22

**six** [2] - 12:8, 70:15

**slammed** [1] - 47:10

**Slater** [26] - 5:6, 7:2,

9:17, 13:8, 15:7, 24:1, 28:23, 30:11, 32:15, 32:22, 34:2, 38:3, 38:25, 39:20, 40:24, 41:9, 59:15, 59:17, 60:1, 60:7, 63:5, 63:12, 73:2, 73:3, 74:10, 81:12
**SLATER** [33] - 1:13, 1:13, 5:15, 8:25, 9:2, 15:8, 24:5, 24:8, 29:11, 30:12, 30:20, 30:25, 31:2, 32:13, 32:23, 33:4, 36:7, 38:11, 39:1, 39:22, 41:6, 41:11, 42:17, 43:13, 44:9, 44:14, 46:9, 73:2, 73:8, 74:13, 81:13, 85:12, 86:8
**Slater's** [4] - 7:16, 23:4, 28:4, 60:18
**slides** [1] - 8:16
**smaller** [1] - 47:8
**SMITH** [1] - 3:11
**sodium** [1] - 25:18
**Solco** [2] - 2:8, 16:2
**sold** [3] - 19:2, 72:5, 75:24
**solved** [1] - 57:13
**someone** [1] - 21:5
**sometime** [1] - 64:12
**somewhat** [1] - 38:5
**somewhere** [1] - 50:13
**soon** [1] - 38:19
**sooner** [2] - 46:23, 70:13
**SOPs** [3] - 53:6, 62:6, 62:17
**sorry** [5] - 23:7, 43:13, 53:10, 54:12, 78:4
**sort** [4] - 55:5, 58:21, 59:4, 61:23
**sought** [2] - 23:3, 66:4
**sounds** [1] - 33:10
**source** [1] - 51:3
**sources** [5] - 50:25, 51:4, 51:13, 51:15, 52:15
**South** [2] - 1:17, 2:7
**speaking** [2] - 5:1, 69:8
**SPECIAL** [1] - 1:10
**Special** [1] - 4:2
**specialist** [1] - 10:24
**specific** [3] - 52:5, 66:16, 70:16
**specifically** [1] - 75:22
**specifying** [1] - 52:15

**speculate** [1] - 81:3
**sponsored** [1] - 13:23
**spreadsheet** [1] - 18:10
**staff** [2] - 24:16, 33:7
**stamps** [1] - 53:7
**stand** [7] - 32:21, 32:25, 34:5, 40:13, 50:16, 61:1, 70:13
**standard** [8] - 42:3, 43:22, 52:21, 53:7, 53:8, 53:20, 73:16, 83:1
**Standing** [1] - 13:25
**standpoint** [1] - 42:20
**stands** [2] - 24:21, 39:16
**Stanoch** [8] - 63:23, 64:21, 65:1, 65:15, 66:19, 67:25, 68:15, 69:3
**STANOCH** [8] - 2:2, 63:23, 66:20, 67:25, 68:19, 68:23, 69:4, 69:16
**Stanoch's** [1] - 68:11
**start** [13] - 4:20, 6:1, 8:3, 15:13, 24:20, 32:4, 32:7, 32:11, 36:15, 38:20, 42:25, 45:8, 85:21
**started** [7] - 4:9, 5:3, 24:2, 31:12, 35:8, 35:9, 39:13
**starting** [3] - 32:19, 37:15, 38:10
**state** [14] - 13:22, 14:5, 14:7, 14:11, 14:14, 19:1, 29:1, 29:3, 29:4, 29:7, 29:14, 29:24, 62:6
**statement** [4] - 25:20, 25:21, 50:23, 65:25
**statements** [2] - 15:12, 56:9
**States** [7] - 10:15, 16:1, 18:24, 19:2, 21:5, 72:5, 75:24
**STATES** [1] - 1:1
**statistical** [1] - 17:1
**status** [7] - 41:3, 46:14, 48:3, 49:13, 58:11, 63:15, 69:1
**STATUS** [1] - 1:5
**stay** [1] - 57:9
**stenography** [1] - 1:24
**step** [2] - 19:19, 40:6
**steppingstone** [1] - 6:1

**steps** [1] - 30:10
**STEVEN** [1] - 2:11
**still** [15] - 8:23, 22:22, 27:17, 35:6, 40:22, 48:13, 49:4, 50:25, 53:3, 55:10, 57:10, 62:8, 62:15, 62:17, 69:23
**stood** [1] - 56:16
**stopped** [1] - 82:13
**straightforward** [2] - 17:25, 73:14
**strange** [1] - 81:21
**strategic** [1] - 10:4
**strategy** [4] - 15:21, 16:6, 16:10, 19:4
**Street** [4] - 2:3, 2:7, 2:19, 3:3
**Streets** [1] - 1:8
**strike** [2] - 49:3, 49:8
**strong** [3] - 6:9, 19:11, 81:14
**subject** [9] - 10:24, 14:5, 14:11, 16:13, 22:3, 22:15, 23:24, 72:19, 76:4
**submission** [2] - 7:4, 28:21
**submit** [10] - 6:24, 7:21, 7:24, 11:3, 27:16, 30:15, 36:8, 43:14, 69:14, 73:25
**submitted** [6] - 5:11, 7:2, 9:4, 9:11, 69:6, 74:14
**subsequent** [1] - 60:4
**subsidiaries** [2] - 8:7, 21:7
**subsidiary** [1] - 16:2
**substance** [1] - 44:5
**substantial** [3] - 31:14, 48:11, 56:13
**substantially** [4] - 48:7, 48:22, 50:24, 51:11
**substantive** [3] - 24:19, 26:6, 44:22
**substitute** [2] - 72:22, 74:3
**sufficient** [3] - 9:7, 65:3, 66:21
**suggest** [1] - 34:22
**suggested** [2] - 37:22, 42:22
**suggesting** [1] - 57:16
**Suite** [4] - 1:20, 2:12, 3:3, 3:6
**summary** [2] - 84:18, 84:24
**supervisory** [1] - 16:5

**supplement** [2] - 46:2, 85:5
**supplemental** [1] - 59:25
**supplementation** [1] - 45:2
**supplier** [1] - 66:14
**support** [4] - 5:11, 20:19, 20:24, 84:3
**supported** [1] - 15:12
**supports** [2] - 20:20, 84:2
**suppose** [1] - 7:3
**supposed** [2] - 20:1, 64:8
**surfaced** [1] - 27:5
**surprise** [4] - 9:5, 39:3, 79:2, 79:9
**surprising** [1] - 22:1
**surprisingly** [1] - 12:23
**surreply** [3] - 70:20, 71:2, 71:3
**swelled** [1] - 54:19
**swipe** [1] - 15:14
**system** [1] - 79:11

**T**

**tantamount** [1] - 72:8
**tasks** [1] - 10:5
**TC-201729** [1] - 37:22
**team** [3] - 33:13, 52:22, 54:1
**technical** [4] - 11:13, 30:10, 61:5, 77:13
**tee** [1] - 64:16
**teed** [1] - 68:6
**telephone** [1] - 85:22
**ten** [4] - 23:8, 70:17, 70:25, 71:6
**term** [1] - 37:23
**termed** [1] - 81:18
**terms** [13] - 4:21, 7:4, 33:21, 33:22, 33:25, 34:20, 37:17, 61:5, 65:4, 65:16, 67:3, 67:4, 73:16
**terribly** [1] - 69:13
**testified** [4] - 10:10, 24:17, 25:11, 62:5
**testifies** [1] - 11:6
**testify** [1] - 11:2
**testifying** [1] - 78:14
**testimony** [26] - 9:24, 10:15, 12:1, 12:2, 12:6, 16:9, 16:17, 16:20, 20:10, 20:21, 25:10, 26:21, 26:25, 42:5, 42:12, 43:9, 43:16, 43:18, 44:7,

44:11, 45:3, 46:2, 59:18, 79:22, 81:5, 84:12
**testimony's** [1] - 44:14
**testing** [1] - 21:13
**Teva** [2] - 2:13, 2:13
**THE** [5] - 1:1, 1:10, 8:21, 85:21, 86:2
**theirs** [1] - 30:15
**thereafter** [1] - 54:21
**they've** [10] - 11:25, 12:3, 21:12, 22:4, 22:8, 52:23, 59:3, 74:23, 76:13, 79:10
**thing's** [1] - 26:22
**ThinkPad** [1] - 32:17
**thinks** [1] - 85:13
**third** [3] - 20:15, 79:14, 80:20
**THOMAS** [1] - 1:11
**Thomas** [1] - 4:2
**THORNBURG** [1] - 3:5
**thorough** [1] - 33:12
**thousands** [2] - 14:23, 53:8
**three** [6] - 12:24, 43:8, 43:12, 44:6, 62:7, 63:17
**three-week** [3] - 43:8, 43:12, 44:6
**throughout** [1] - 9:9
**Thursday** [3] - 6:25, 33:21, 68:17
**timeframe** [1] - 38:22
**timely** [1] - 59:6
**timing** [3] - 64:5, 65:16, 67:20
**today** [22] - 4:9, 9:13, 11:3, 18:6, 20:13, 30:19, 31:6, 32:3, 33:11, 33:13, 35:25, 38:18, 41:10, 45:24, 46:19, 54:16, 55:9, 57:25, 58:12, 61:16, 61:20, 80:18
**together** [2] - 12:7, 22:13
**tomorrow** [1] - 61:19
**tonight** [1] - 19:14
**took** [7] - 10:9, 16:11, 16:16, 16:17, 19:2, 19:3, 26:9
**top** [5] - 10:4, 12:25, 14:11, 18:25, 34:7
**total** [1] - 56:25
**tough** [1] - 55:14
**ToxRox** [2] - 57:13, 58:2
**TrackWise** [1] - 51:24

**transcript** [3] - 1:24, 78:5, 86:15
**transcription** [1] - 1:25
**transcripts** [1] - 81:18
**translate** [1] - 80:21
**translated** [2] - 78:10, 80:4
**translation** [15] - 12:3, 77:4, 77:19, 80:4, 80:8, 80:20, 82:1, 82:7, 83:19, 84:4, 84:13, 84:16, 84:19, 85:1, 85:4
**translations** [15] - 77:9, 77:11, 78:13, 78:15, 79:15, 79:25, 80:2, 80:6, 80:7, 80:8, 80:15, 80:23, 81:24, 83:25, 84:10
**translator** [1] - 82:10
**TRAURIG** [1] - 2:10
**treated** [1] - 79:21
**trepidation** [1] - 77:3
**trial** [2] - 43:6, 78:15
**tried** [2] - 33:12, 77:10
**trouble** [2] - 71:19, 72:13
**troubling** [2] - 27:25, 28:1
**true** [4] - 25:20, 58:5, 65:7
**truly** [1] - 53:24
**trustworthy** [1] - 25:8
**truthful** [1] - 17:14
**truthfully** [1] - 81:10
**try** [6] - 8:21, 15:9, 17:6, 29:7, 30:22, 41:12
**trying** [4] - 23:7, 39:5, 56:24, 74:14
**Tuesday** [2] - 7:3, 37:10
**turn** [4] - 30:9, 34:2, 37:16, 55:19
**turned** [1] - 57:8
**turning** [1] - 72:8
**turns** [2] - 63:5, 77:12
**twice** [2] - 10:16, 10:17
**two** [25] - 12:13, 12:14, 13:1, 18:13, 19:21, 22:11, 25:6, 27:6, 29:17, 39:17, 40:11, 43:8, 43:11, 44:6, 48:24, 52:13, 52:19, 61:25, 62:6, 62:7, 64:3, 68:5, 68:12
**type** [1] - 38:12

**U**

**U.S** [9] - 1:7, 2:8, 10:16, 15:25, 47:13, 48:6, 48:22, 50:24, 51:13
**U.S.-related** [1] - 21:7
**ULMER** [1] - 3:2
**ultimately** [3] - 5:25, 66:8, 73:19
**unavailable** [1] - 35:21
**under** [15] - 14:14, 14:25, 28:12, 39:5, 42:2, 42:4, 42:8, 43:23, 53:14, 64:9, 73:10, 73:13, 76:5, 76:18, 83:3
**understandable** [1] - 77:13
**understood** [2] - 11:17, 38:24
**unfair** [1] - 83:17
**unfairly** [1] - 82:9
**unfairness** [3] - 82:15, 82:21, 83:18
**unfortunately** [1] - 55:11
**unintelligible** [7] - 79:24, 80:5, 80:23, 81:7, 83:11, 83:14, 83:19
**unique** [7] - 13:16, 27:12, 27:19, 42:6, 43:22, 70:16
**Unit** [10] - 62:2, 62:3, 62:5, 62:8, 62:13, 62:24
**United** [7] - 10:14, 16:1, 18:24, 19:1, 21:4, 72:5, 75:24
**UNITED** [1] - 1:1
**unless** [5] - 5:1, 44:16, 46:19, 57:25, 85:12
**unlike** [1] - 13:19
**unprofessional** [1] - 56:6
**unreasonable** [1] - 37:5
**unredacted** [5] - 71:18, 72:14, 74:6
**unreliable** [5] - 84:7, 84:9, 84:13, 84:16
**unseal** [2] - 74:10, 75:11
**up** [17] - 6:17, 7:3, 7:4, 11:16, 16:20, 29:6, 30:23, 33:1, 45:1, 56:18, 64:16, 67:16, 68:6, 72:19, 74:22, 77:15, 86:6

**update** [5] - 39:15, 48:4, 48:19, 52:8, 58:21
**updated** [4] - 55:4, 55:23, 56:12, 56:15
**upstream** [1] - 66:14
**urgency** [1] - 34:24
**urging** [1] - 21:4
**USA** [2] - 2:13, 2:20

**V**

**valid** [1] - 75:21
**Valsartan** [1] - 54:23
**VALSARTAN** [1] - 1:4
**valsartan** [10] - 5:24, 8:12, 8:13, 15:22, 18:23, 25:17, 25:19, 27:24, 34:21, 66:14
**value** [1] - 15:15
**Vanaskie** [1] - 4:2
**VANASKIE** [121] - 1:11, 4:3, 4:5, 4:7, 6:11, 6:22, 7:11, 8:2, 8:20, 8:22, 9:1, 9:17, 15:6, 20:4, 23:1, 23:25, 24:6, 26:13, 27:14, 30:11, 30:18, 30:24, 31:1, 32:6, 32:14, 33:3, 34:1, 35:3, 35:15, 36:1, 37:6, 37:20, 37:24, 38:14, 38:24, 39:9, 39:18, 40:19, 40:23, 41:8, 41:15, 41:22, 42:16, 43:17, 43:25, 44:19, 46:11, 46:17, 47:17, 47:19, 48:2, 49:2, 49:7, 49:16, 49:20, 49:24, 50:7, 50:14, 50:20, 51:19, 52:11, 53:4, 53:17, 53:21, 54:10, 54:14, 55:15, 55:21, 56:9, 57:2, 57:15, 57:18, 58:6, 58:9, 59:8, 59:12, 60:25, 61:8, 61:17, 61:21, 62:19, 63:3, 63:11, 63:14, 64:20, 66:18, 66:22, 67:22, 68:15, 68:20, 68:25, 69:8, 69:15, 69:17, 70:1, 70:8, 70:21, 71:10, 71:12, 71:14, 71:24, 72:12, 72:25, 73:3, 73:17, 74:4, 75:1, 75:3, 76:2, 76:12, 77:1, 78:2, 78:7, 81:12, 82:19, 83:20, 85:15, 85:17, 85:24, 86:4,

86:9
**various** [3] - 13:22, 21:7, 47:1
**vast** [1] - 14:10
**VCDs** [1] - 67:8
**vendor** [3] - 47:4, 48:16, 61:14
**verging** [1] - 56:6
**vetted** [2] - 14:15, 14:19
**vetting** [1] - 7:22
**VIA** [1] - 1:6
**via** [2] - 4:1, 70:20
**vice** [2] - 14:1, 36:18
**VICTORIA** [1] - 2:10
**video** [1] - 58:18
**videoconference** [1] - 4:1
**VIDEOCONFERENC E** [1] - 1:6
**view** [5] - 7:12, 7:13, 13:11, 22:22, 73:13
**vigorous** [1] - 6:4
**Vine** [1] - 3:3
**violation** [1] - 79:23
**visited** [1] - 10:14
**visits** [1] - 16:1
**volume** [5] - 38:18, 38:21, 38:23, 39:16, 75:7
**vu** [1] - 81:14

**W**

**wait** [6] - 19:9, 24:23, 24:24, 45:4, 45:20
**waited** [1] - 30:4
**waiting** [4] - 24:22, 36:21, 55:2, 56:2
**walk** [1] - 22:10
**walked** [1] - 31:3
**walks** [1] - 10:24
**WALLACK** [1] - 2:21
**Wang** [1] - 15:24
**wants** [5] - 17:5, 33:17, 66:20, 81:8, 82:12
**warranted** [2] - 15:5, 23:14
**warranties** [2] - 67:1, 67:2
**warrants** [1] - 42:8
**watched** [1] - 16:14
**watching** [1] - 81:22
**water** [1] - 56:10
**ways** [2] - 14:6, 21:4
**Wednesday** [3] - 4:8, 6:25, 49:21
**weed** [1] - 29:24
**weeds** [1] - 36:21
**week** [42] - 4:10, 5:22,

6:25, 9:4, 11:1, 20:17, 20:20, 28:7, 29:17, 30:5, 30:14, 30:19, 34:16, 35:9, 35:22, 35:25, 36:9, 37:2, 40:14, 41:4, 43:8, 43:12, 44:6, 45:17, 45:18, 46:5, 46:25, 47:13, 47:14, 48:18, 52:25, 53:6, 53:15, 54:18, 56:22, 58:23, 59:14, 61:11, 63:5, 68:5
**weekend** [1] - 42:21
**weeks** [10] - 39:17, 40:11, 45:12, 52:13, 52:18, 52:19, 55:12, 62:16, 68:12
**WERNER** [1] - 2:15
**white** [1] - 57:10
**WHITELEY** [1] - 2:2
**whole** [2] - 18:18, 73:21
**Wholesaler** [1] - 3:4
**wholesaler** [1] - 69:1
**wholesalers** [4] - 67:7, 69:7, 69:9, 69:11
**willing** [5] - 23:20, 29:16, 31:5, 31:8, 75:13
**withheld** [1] - 34:23
**withhold** [1] - 22:17
**witness** [36] - 42:7, 43:14, 58:25, 59:14, 59:18, 62:5, 62:16, 62:23, 63:7, 63:9, 78:14, 79:3, 79:17, 79:20, 79:21, 80:5, 80:10, 80:12, 80:13, 80:24, 80:25, 81:1, 81:3, 82:23, 82:25, 83:2, 83:10, 83:11, 83:15, 83:17, 83:18, 83:25, 84:5
**witnesses** [21] - 12:1, 12:3, 12:6, 12:12, 21:24, 42:13, 47:12, 51:3, 59:25, 60:3, 62:11, 63:9, 77:16, 79:6, 79:22, 79:25, 80:2, 81:9, 82:14, 83:5, 84:15
**word** [1] - 18:23
**works** [1] - 41:14
**world** [5] - 8:8, 17:14, 19:5, 26:10, 33:18
**worldwide** [1] - 8:6
**writing** [5] - 39:23, 40:21, 40:25, 41:4,

*54:6*
**written** [5] - 7:4, 18:5,
77:18, 83:7, 85:6

## Y

**year** [7] - 10:17, 17:16,
25:21, 31:24, 43:6,
43:7
**years** [5] - 8:11, 22:11,
27:6, 62:6, 62:7

## Z

**zero** [1] - 12:22
**Zhejiang** [2] - 2:9,
14:2
**Zhong** [2] - 35:20,
36:11
**zHP** [1] - 22:10
**ZHP** [67] - 4:19, 5:23,
6:15, 8:5, 8:13, 10:2,
10:15, 10:16, 11:12,
11:25, 12:5, 13:7,
13:17, 13:19, 14:13,
16:7, 17:5, 17:13,
18:8, 18:13, 18:23,
19:3, 19:21, 21:1,
21:6, 22:6, 24:10,
24:13, 25:7, 25:21,
26:3, 30:14, 30:18,
31:12, 31:22, 32:3,
32:6, 32:23, 33:5,
33:17, 33:20, 34:24,
37:4, 37:8, 37:9,
39:1, 39:7, 39:9,
39:21, 41:9, 42:14,
46:8, 72:3, 72:8,
72:9, 73:15, 73:22,
74:16, 74:22, 75:16,
77:16, 81:25, 82:11,
84:2, 84:11, 84:21
**ZHP's** [4] - 16:2,
18:21, 36:8, 41:16
**zinc** [4] - 10:2, 15:17,
15:22, 16:8
**ZOOM** [1] - 1:6
**Zoom** [5] - 4:1, 9:14,
52:6, 55:18, 86:5