# Duane Morris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

SETH A. GOLDBERG
DIRECT DIAL: +1 215 979 1175
PERSONAL FAX: +1 215 689 2198
*E-MAIL:* SAGoldberg@duanemorris.com

*www.duanemorris.com*

May 11, 2021

**VIA ECF**

The Honorable Thomas Vanaskie
Special Master
Stevens & Lee

Re: <u>In re Valsartan, Losartan, and Irbesartan Products Liability Litigation</u>
<u>Case No. 1:19-md-02875-RBK-KMW</u>

Dear Judge Vanaskie:

This letter is to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on May 12, 2021.

### 1. Plaintiffs' Motion to Strike Aurobindo's Defenses

The Aurobindo Parties filed their Opposition to Plaintiffs' Motion on Friday, May 7, 2021. Plaintiffs' reply brief, if any, is due May 11, 2021. Counsel for the Aurobindo Parties will be prepared to argue the Motion during the discovery conference call on May 12, 2021 in accordance with Special Master Order No. 18.

DUANE MORRIS LLP
30 SOUTH 17TH STREET   PHILADELPHIA, PA 19103-4196            PHONE: +1 215 979 1000   FAX: +1 215 979 1020

DuaneMorris

May 11, 2021
Page 2

### 2. Aurobindo's Privilege Log

Plaintiffs last raised purported issues with the Aurobindo parties' April 29, 2021 Privilege Log during the May 3rd Case Management Conference. Prior to the conference, counsel for the Aurobindo parties voluntarily de-designated 2,913 previously withheld documents. Plaintiffs' counsel expressed a vague, general dissatisfaction and ultimately made a limited request for an updated "cast-of-characters." On May 7, 2021, the Aurobindo parties provided Plaintiffs with an updated "cast of characters."

Subsequent to the production of the April 29, 2021 privilege log, the Aurobindo parties made three substantial document productions on May 2, 3, and 6. These additional productions necessitated the creation of a revised privilege log. The Aurobindo parties' Amended Privilege Log was served on Plaintiffs on May 9, 2021. While creating an updated privilege log, the Aurobindo parties identified numerous documents that had been withheld in error; accordingly, an overlay production of these documents was made on May 10, 2021.

While Plaintiffs' counsel has advised counsel for the Aurobindo parties of their intent to raise issues pertaining to its Amended Privilege Log, they have been unable or unwilling to identify these issues. At the time of this writing, counsel for the Plaintiffs has refused to specify their objections to the Amended Privilege Log.

DuaneMorris

May 11, 2021
Page 3

After multiple efforts by counsel for the Aurobindo parties to discuss these purported issues in a good faith effort at resolution, Plaintiffs' counsel has agreed to meet and confer at 4:30 p.m. on May 11, 2021; however, they refuse to identify the basis of the meet and conferral. Counsel for the Aurobindo parties cannot speculate as to the motive behind the opacity in these purported challenges, however, this conduct all but ensures that whatever disagreements may exist will almost surely remain at the commencement of the Case Management Conference. Moreover, the Aurobindo parties cannot reasonably be prepared to rebut a challenge made entirely in secret. The Aurobindo parties therefore request that Plaintiffs' challenges to the Amended Privilege Log, whatever they may be, be deferred to allow the parties an informed meet and conferral.

3. **ZHP Discovery Issues**

    a. **Status Report of the ZHP Parties Regarding Plaintiffs' New Discovery Requests**

        i. **The ZHP Parties have agreed to the vast majority of Plaintiffs' new discovery requests and the new document collection is scheduled for the week of May 17, 2021.**

ZHP has agreed to almost all of Plaintiffs' new discovery requests, *see* Dkt. 1228, consistent with the cooperative and transparent approach it has taken to discovery throughout this litigation. As the ZHP Parties have previously relayed to the Court, due to the May Day holiday in China, ZHP's facilities were recently

DuaneMorris

May 11, 2021
Page 4

closed for several days, and coordination of the new document collection could not take place until earlier this week. After conferring with its document collection vendor, the ZHP Parties were able to schedule an on-site collection in China, which will take place the week of May 17, 2021.

In stark contrast to the ZHP Parties' cooperative and transparent approach to discovery, Plaintiffs have continued to make unreasonable demands that have no basis in fact or law, as outlined below.

> **ii. There is no basis to compel the production of the ZHP Parties' litigation hold letters or information regarding the process by which they preserved, collected, and produced documents and information related to this litigation.**

The ZHP Parties have agreed to most of Plaintiffs' new discovery requests; unfortunately, Plaintiffs are now seeking to exploit the ZHP Parties' cooperative approach and mischaracterize it as an admission that their current document production is in some way deficient. However, as outlined below, the record evidence demonstrates exactly the opposite.

Plaintiffs' new round of requests rests on one document that relates to a project involving the product irbesartan, ***not valsartan***. (*see* **Exhibit A**, regarding "crude *irbesartan*"). The fact that a document regarding irbesartan that mentions valsartan ***as an aside*** was produced by ZHP demonstrates the fulsomeness of the ZHP Parties' collection and production. That Plaintiffs would try to twist the

DuaneMorris

May 11, 2021
Page 5

production of this document into "evidence" of the ZHP Parties' purported discovery deficiencies defies all logic, as the mere fact that this and other documents about products other than valsartan were produced as part of the valsartan discovery process demonstrates exactly the opposite.

Despite the fact that irbesartan is not the focus on the parties' current discovery process, the ZHP Parties have voluntarily agreed to the vast majority of Plaintiffs new requests, which include not only irbesartan-related documents, but also documents and information regarding the preservation and collection of the ZHP-owned devices of Dr. Min Li and Dr. Eric Gu. Dkt. 1228. However, the mere agreement to produce this information does not mean that the ZHP Parties' document production is deficient in any way, and certainly does not justify the production of privileged information and attorney work product such as such as litigation hold directives and documents "identifying the process by which the collection of devices and data was carried out pursuant to the litigation holds, including when performed and by whom." Dkt. 1229 at 4. Indeed, ZHP's latest document collection is being undertaken to address the purported "gaps" Plaintiffs claim to have identified in its production, and compelling ZHP to produce litigation hold and document collection information before Plaintiffs have made any showing of spoliation would be inconsistent with the approach other courts within this Circuit

DuaneMorris

May 11, 2021
Page 6

have taken. *See Mcdevitt v. Verizon Servs. Corp.*, No. CV 14-4125, 2016 WL 1072903, at *2 (E.D. Pa. Feb. 22, 2016), *report and recommendation adopted,* No. CV 14-4125, 2016 WL 1056702 (E.D. Pa. Mar. 17, 2016) (denying request for litigation hold information because moving party failed to present evidence of spoliation).

### iii. Plaintiffs have failed to establish that the collection of Maggie Kong's custodial file is proportionate to the needs of this case.

Ms. Kong is the Chief of Staff to the Chairman of ZHP, Baohua Chen, and did not join ZHP until late 2017, several years after the central events at issue in this case. As a member of the Chairman's staff, she has no direct role in the development, manufacturing, or sale of valsartan. Plaintiffs have indicated that their primary goal in collecting Ms. Kong's custodial file is to locate the dates and times of certain meetings; however, the ZHP Parties have confirmed that Ms. Kong does not keep a hardcopy calendar or use Outlook (or a similar calendaring program).

In addition, because the ZHP Parties do not have a general counsel, Ms. Kong serves as the primary contact with the ZHP Parties' attorneys; accordingly, responsive documents within her custodial file will primarily be privileged information, and a search of her custodial file would therefore be unduly burdensome. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any **nonprivileged matter** that is relevant to any party's claim or defense and

DuaneMorris

May 11, 2021
Page 7

*proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and ***whether the burden or expense of the proposed discovery outweighs its likely benefit***.").

As Plaintiffs have failed to make any showing that the dates of certain meetings, which are unlikely to exist in Ms. Kong's custodial file since she does not use an electronic calendar, outweigh the burden of collecting, reviewing, and producing the file of a custodian whose responsive documents are more than likely to be privileged, their request for her custodial file should be denied.

> iv. **There is no good faith basis for Plaintiffs' demand that the documents and information at issue be produced within two weeks.**

Although Plaintiffs have had the document they are now arguing provides a basis for their new requests ***for more than five months***, they have requested that the documents and information requested for the first time in their April 24, 2021 letter be produced within 5 days to two weeks. Dkt. 1229. As Plaintiffs well know from the parties' initial meet and confer process in 2019, the deadline demanded by Plaintiffs is unreasonable on its face in light of the fact that the custodians and information at issue are all located in China, and therefore must be reviewed

DuaneMorris

May 11, 2021
Page 8

pursuant to China's state secrecy and privacy laws in addition to the requisite responsiveness and privilege reviews. Further, it would be highly prejudicial to the ZHP Parties to order that these new documents be produced in any specific time period at this point since the ZHP Parties do not yet even have an estimate of the volume of data to be collected and reviewed. Indeed, at the last conference, your Honor recognized the complexity of the ZHP Parties' new collection and production when ordering the ZHP Parties provide an update, not documents, during the May 12, 2021, conference, and a second status update on or before May 17, 2021. *See* 5-3-21 Hrg. Tr. at 39:9-19.

### b. Errata Sheets for Chinese-Speaking Deponents

Plaintiffs' scorched earth tactics now go so far as to refusing to agree to an extension of the deadline on *errata sheets* for deposition transcripts of Chinese-speaking witnesses. Despite the complete lack of prejudice Plaintiffs face by an extension of this deadline, Plaintiffs have placed yet another issue before the Court for resolution.

Specifically, the ZHP Parties requested the opportunity to work out an agreement with Plaintiffs to address corrections and signature of transcripts relating to depositions of ZHP witnesses who do not speak English, as those witnesses are being asked to review the transcripts written in a language in which they did not

DuaneMorris

May 11, 2021
Page 9

answer during their depositions. To work out these issues, the ZHP Parties requested a 45-day stay of the deadlines for errata sheets for those witnesses. Plaintiffs outright refused, claiming a purported need for the transcripts to be final. See **Exhibit B.**

Finality of the transcripts of these few witnesses (six total) requires no urgency, and a brief 45-day delay would inflict absolutely no prejudice on Plaintiffs. Not only have more than a dozen manufacturer defendant depositions not yet been conducted, but CMO 23 provides for depositions of 18 bellwether plaintiffs, the treating physicians of all 28 bellwether plaintiffs, and other third-parties to occur throughout the summer until October 4, 2021, well beyond the 45-day extension the ZHP Parties request. Moreover, the depositions of any of the more than 30 new class representatives Plaintiffs have proposed adding to this litigation have not yet been scheduled, and will likely not be conducted for months. Thus, the vast majority of deposition transcripts in this litigation will not be "final" until the fall. To reiterate, as Judge Kugler previously stated, a trial is not scheduled to occur in this matter until well-beyond 2021. See Hrg. Tr. 11-24-20 at 33:9-12 ("I have over 800 pending civil cases, and frankly, I'm informing civil litigants that I will not be reaching their trials ***this year, next year, or probably not the year after***.") (emphasis added).

Put simply, there is no reason that the Court should not grant the extension requested, and require Plaintiffs to work with the ZHP Parties on this issue.



May 11, 2021
Page 10

### c. Motion to Compel Briefing Schedule

Plaintiffs' motion to compel was filed yesterday evening, and the ZHP Parties presume that Plaintiffs will ask for a shortened briefing schedule in an effort to jam the ZHP Parties with yet another brief to draft. Accordingly, the ZHP Parties request that the Court follow the typical briefing schedule in the District of New Jersey and order their brief in opposition to the motion to compel be due on May 24, 2021 (14 days before the noticed hearing date on June 7, 2021, and 14 days from the filing of Plaintiffs' motion).

There is no reason to require expedited briefing on Plaintiffs' motion to compel, and doing so would impose an unfair burden on the ZHP Parties. There is nothing special about these documents that necessitates any urgency in the Court resolving this motion. Not only does the motion to compel make no claim that any of the challenged documents needs to be produced because of an upcoming deposition of a ZHP Party witness or any other pressing issue, but Plaintiffs waited until May 10—*six weeks* after the parties' last meet and confer on March 26 on this issue—to file their motion. In the intervening time, seven ZHP Party witnesses were deposed. If there were any true urgency to this issue, Plaintiffs surely would have moved faster in filing their motion. Indeed, Plaintiffs' delay on this issue during the period of corporate depositions betrays the obvious, which is that none of the

Duane Morris

May 11, 2021
Page 11

contested state secret documents bears on any of the material facts at issue. Moreover, as Plaintiffs well know, the ZHP Parties are currently fully engaged in briefing and depositions, including a deadline to file an opposition to Plaintiffs' request for Mr. Chen's custodial file on Friday, May 14, a deadline to file a motion for a protective order precluding Mr. Chen's deposition on Monday, May 17, the deposition of one ZHP Party witness this week, May 10-14, and the depositions of three more ZHP Party witnesses next week, May 17-21.

### 4. Hetero Discovery Issues

Defendants Hetero Drugs Ltd. and Hetero Labs Ltd. (collectively, "HLL") is continuing to address Plaintiffs' concerns regarding its discovery productions and is preparing to produce additional documents requested by Plaintiffs following the deposition of HLL's 30(b)(6) witness.

Since our last Case Management Conference on May 3, 2021, HLL has made document productions to de-designate documents that were previously deemed privileged, de-designate documents that were previously deemed non-responsive, and provided overlay files to correct metadata concerns in HLL's document productions. HLL is further scheduled to meet and confer with Plaintiffs today, May 11, regarding any remaining concerns as to these document productions, and regarding the documents that HLL is continuing to withhold on the basis of privilege.

DuaneMorris

May 11, 2021
Page 12

Additionally, on April 29, following day 1 of the deposition of HLL's 30(b)(6) witness Bandaru Venkata Ramarao, Plaintiffs requested documents referenced during the deposition which Plaintiffs stated they were unable to locate in HLL's document productions. HLL worked diligently overnight to provide Plaintiffs with several categories of documents prior to the start of day 2 of Mr. Ramarao's deposition. Subsequently, on May 3, 2021 following the conclusion of Mr. Ramarao's deposition, Plaintiffs made additional document demands to HLL based on topics discussed with Mr. Ramarao. HLL is in the process of collecting responsive documents to Plaintiffs' latest request and will produce to Plaintiffs promptly upon receipt.

Accordingly, HLL is continuing to address all issues raised by Plaintiffs, including new requests raised as a result of Mr. Ramarao's deposition. HLL is continuing to proceed with depositions of its 30(b)(6) witnesses and is confident that it will resolve Plaintiffs' remaining concerns.

5. **Scope and Production of Teva's Litigation Holds**

Following the April 15th deposition of one of Teva's Rule 30(b)(6) witnesses, Dan Barreto, Plaintiffs' counsel requested that Teva produce its litigation hold, a request that Judge Schneider has previously and unequivocally denied. Teva and Plaintiffs have briefly discussed Plaintiffs' renewed request, but have not yet had an

DuaneMorris

May 11, 2021
Page 13

opportunity to fully meet and confer in good faith over Plaintiffs' request or the grounds for it. As it stands, Plaintiffs have not presented legal justification for production of Teva's litigation hold and Teva has therefore not agreed to produce it. There appears to be either a misunderstanding of the facts, or of the law, related to when the obligation to produce the litigation hold request is triggered.

Magistrate Judge Schneider previously denied Plaintiffs' request for production of litigation holds, but did order Defendants to produce certain information pertaining to the hold. Dkt. 303 ("Plaintiff's requests for copies of defendants' litigation hold letters or emails is DENIED. However, by December 31, 2019, defendants shall identify all recipients of the hold letters and emails, the sender and when the letters or emails were sent. Further, plaintiffs may address ESI preservation issues with defendants' deponents."). On December 31, 2019, Teva produced a document listing all personnel who received the litigation hold, the dates on which the hold was received, and the sender of the hold. (*See* TEVA-MDL2875-00015213 - TEVA-MDL2875-00015260). The questions posed to Mr. Barreto by Plaintiffs' counsel during his deposition included the following:

> Q.   And when did Teva put a hold on the destruction of recalled valsartan finished-dose product?

DuaneMorris

May 11, 2021
Page 14

> A. That was – I want to say that was just right around the – maybe two weeks, maybe, a couple of weeks before, you know we started the process of initiating the recall.
>
> ***
>
> Q. […] So if you can tell me more detail in terms of timing, maybe by reference to other events we've discussed. What's your best guess as to when that legal hold went into effect?
>
> A. I would have to get that information for you. I don't --- don't have it with me right now […]
>
> ***
>
> Q. But sitting here today, you can't tell me the date of that legal hold; is that right? Do you know who the legal hold went to?
>
> A. I would have to have to – I want to say – I can't – I will not speculate.

*See* 4/15/2021 Dep. of D. Barreto at 609:20-22; 610:11-18; 613:20-22; 614:2-3; and 615:15-21 (relevant excerpts attached hereto as **Exhibit C**).

The basis for Plaintiffs' counsel's request for the legal hold appears to be the following:

> Q. Which is the basis of the retention or sequestering of the product. And he testified he doesn't know the date of it. So I'm trying to understand who it went to – the facts of who it went to and when.

*See* **Exhibit C** at 615:15-21. These inquiries were all answered by the litigation hold information previously produced by Teva on December 31, 2019.

The content of the hold itself is attorney privileged work-product and clearly subject to such privilege, as previously ruled by Judge Schneider. During the April

DuaneMorris

May 11, 2021
Page 15

15th deposition, Plaintiffs' counsel questioned Mr. Barreto about certain documents produced by Teva related to destruction of certain categories of product. Plaintiffs now apparently assert that *any* evidence of *any* destruction of *any* Valsartan product entitles them to the litigation hold. Teva disagrees.

Plaintiffs' request for production of the hold must be accompanied by more than the non-specific assertion that *some* Teva finished-dose product, whether part of the subject recall or not, and/or Mylan API, whether part of the subject recall or not, or even used in finished product or not, was not retained. Teva maintains it has met its obligations to preserve retained bottles from all lots of finished-dose Valsartan products, which can be made available for testing pursuant to an appropriate request (which has *never* been made) without any prejudice whatsoever.

Plaintiffs have not articulated any factual need or basis to warrant setting aside the applicable work-product privilege as it relates to the litigation hold. Plaintiffs must make an appropriate showing to trigger such a production, and to date they have not done so. Teva therefore asks that the parties be instructed to further meet and confer on this issue, and to the extent a resolution cannot be reached, that a briefing schedule be entered, requiring Plaintiff to make a preliminary showing and allowing the parties a fair opportunity to brief this issue with factual detail and appropriate legal authorities.

DuaneMorris

May 11, 2021
Page 16

### 6. Torrent Deposition Dates

In the past few weeks, India has experienced a deadly surge in COVID cases. Since mid-April, India has been reporting hundreds of thousands of new cases per day. In Gujarat, where Torrent's facilities are located, there have been over 180,000 cases reported between April 27- May 10. Due to this ongoing crisis, a number of Torrent's depositions scheduled for late April and early May have had to be rescheduled to early June. The parties have worked together to reschedule the depositions as quickly as possible, and have reached agreement on new dates.

Respectfully submitted,

*/s/ Seth A. Goldberg*

Seth A. Goldberg

cc: Adam Slater, Esq. (*via email, for distribution to Plaintiffs' Counsel*)
Jessica Priselac, Esq. (*via email, for distribution to Defendants' Counsel*)
Sarah Johnston, Esq. (*via email*)
Jeffrey Geoppinger, Esq. (*via email*)
Lori G. Cohen, Esq. (*via email*)
Clem C. Trischler, Esq. (*via email*)