# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY  LITIGATION** | MDL No. 2875 |
| | Honorable Robert B. Kugler, District Court Judge |
| **This Document Relates to All Actions** | Honorable Karen M. Williams, Magistrate Judge |

**THE ZHP PARTIES' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF BAOHUA CHEN'S CUSTODIAL FILE AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .........................................................................................1

II.   Pertinent Factual Background ...................................................................3

   A.   Mr. Chen Oversees the Operations of a Global Company and
        Thus Has No Unique Material Custodial Documents..........................3

   B.   Mr. Chen Holds a Number of Public Positions with Chinese
        Governmental Bodies.........................................................................6

   C.   The ZHP Parties' Document Productions Corroborate the
        Testimony that Mr. Chen Had Only High-Level Involvement in
        the Facts at Issue in This Litigation .......................................................6

   D.   Mr. Chen Was Not Involved in the Irbesartan Development
        Process or Plaintiffs' Fabricated Cover Up...........................................8

III.  PERTINENT PROCEDURAL BACKGROUND .........................................9

IV.   ARGUMENT..............................................................................................10

   A.   Controlling Legal Standards................................................................10

   B.   Plaintiffs' Motion to Compel Should Be Denied Because
        Plaintiffs Have Not Demonstrated that Mr. Chen Possesses
        Unique Relevant Information...............................................................11

   C.   A Protective Order is Warranted Because Production of Mr.
        Chen's Custodial File Would Place Mr. Chen in Jeopardy of
        Violating PRC Law .............................................................................19

V.    CONCLUSION...........................................................................................21

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Civ. Liberties Union v. Gonzales*,
No. 98-5591, 2005 WL 817878698 (E.D. Pa. Dec. 29, 2005) ...........................11

*Assured Guar. Mun. Corp. v. UBS Real Est. Sec. Inc.*,
2013 WL 1195545 (S.D.N.Y. Mar. 25, 2013)....................................................12

*Eisai Inc. v. Sanofi–Aventis U.S., LLC,*
Civ. A. No. 08–4168, 2012 WL 1299379 (D.N.J. April 16, 2012)....................11

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
No. 08-4168 MLC, 2012 WL 628320 (D.N.J. Feb. 2012) ...........................10, 14

*Inventio AG v. Thyssenkrupp Elevator Americas Corp.*,
662 F. Supp. 2d 375 (D. Del. 2009)....................................................................10

*Lauris v. Novartis AG*,
2016 WL 7178602 (E.D. Cal. Dec. 8, 2016) ......................................................12

*MacDermid Printing Solutions, L.L. C., v. E.I. du Pont de Nemours and Co.*, No. 07-4325, 2008 WL 323764 (D.N.J. Feb. 5, 2008) .................10, 13

*Morrison v. Phila. Housing Auth.*,
203 F.R.D. 195 (E.D. Pa. 2001)..........................................................................11

*Tessera, Inc. v. Broadcom Corp.,*
No. 16-380, 2017 WL 4876215 (D. Del. Oct. 24, 2017).............................11, 13

**Rules**

Fed. R. Civ. P. § 26(b)(2)(C) ..................................................................................11

Fed. R. Civ. P. § 26(c)(1)..........................................................................................11

## I.    INTRODUCTION

Despite having possession of over ***350,000 ZHP Party***[1] ***documents*** from ***83 custodians*** and ***9 departments*** in response to ***129 document requests*** and sworn testimony from a ***dozen ZHP Party employees*** over a ***five-month period***, Plaintiffs have failed to develop a record based in fact sufficient to justify the compulsion of the custodial file of Baohua Chen, President of ZHP. On the contrary, Plaintiffs' motion to compel Mr. Chen's custodial file sounds in pure speculation and mischaracterization of documents and deposition testimony. As demonstrated below, not a single piece of evidence relied upon by Plaintiffs demonstrates that Mr. Chen's custodial file would contain any unique, non-cumulative, relevant information that is not already available to Plaintiffs.

Instead, a factual reading of the record indicates that Mr. Chen's custodial file would only be cumulative of the information that is obtainable (and has been obtained) from the many custodial files already produced and the days of deposition testimony already submitted. Multiple ZHP Party witnesses have testified to the reality that Mr. Chen, as ZHP's President, functions in a managerial capacity, receiving reports and accepting decisions from the ZHP Party department heads who

---

[1] Defined below.

Plaintiffs have examined thoroughly—after review of the hundreds of thousands of ZHP Party documents produced.

Not only would Mr. Chen's custodial file be unreasonably cumulative, but its collection could expose Mr. Chen to severe criminal penalties under Chinese law given the nature of his public positions with the Chinese government and the highly confidential and sensitive state secret information that pervades his custodial file as a result. In fact, only ***surgical precision*** in the collection process–which in and of itself would impose an unwarranted burden given the cumulative information it might yield–could potentially alleviate this potential criminal exposure for Mr. Chen. As recognized by the motion to compel standard, as well as the standard for granting a protective order, this Court should limit discovery from Mr. Chen to prevent oppression, undue burden, and expense.

Accordingly, for the reasons set forth herein, this Court should deny Plaintiffs' motion to compel the custodial file of Mr. Chen and grant Defendants' cross motion for protective order precluding the production of Mr. Chen's custodial file. In the alternative, this Court should hold Plaintiffs' motion to compel in abeyance until the ZHP Parties have completed production of the additional custodial files recently requested by Plaintiffs, and those documents are shown to establish that Mr. Chen's custodial file contains non-duplicative, non-cumulative relevant information.

## II.    PERTINENT FACTUAL BACKGROUND

### A.    Mr. Chen Oversees the Operations of a Global Company and Thus Has No Unique Material Custodial Documents

ZHP is a publicly-traded company listed on the Shanghai Stock Exchange. ZHP is headquartered in China's Zhejiang Province, where it operates an API facility, known as Chuannan, and a finished dose facility, known as Xunqiao. ZHP's approximately *7,000* employees include custodians in nine different departments (Quality Assurance, Quality Control, Analytical, Regulatory Affairs, Technology, Production, Procurement, Sales and Marketing, and API Division). ZHP also owns approximately 40 subsidiaries around the world, including in the United States, Japan, Germany, Russia, Spain, and India. ZHP's business area includes both small molecule pharmaceuticals and biopharmaceuticals. ZHP's products serve over 100 clients globally and approximately 500 countries and regions. Three U.S. companies affiliated with ZHP have been named as defendants in this lawsuit, Huahai US, Inc. ("Huahai US"), Prinston Pharmaceutical, Inc. ("Prinston"), and Solco Healthcare U.S., LLC ("Solco").[2] Together, these four ZHP-related entities are referred to

---

[2] Huahai US is a wholly-owned subsidiary of ZHP, incorporated in Delaware, with an office in Somerset, NJ, and distributes APIs to U.S. customers. Prinston is a wholly-owned subsidiary of ZHP, incorporated in Delaware, with an office in Somerset, NJ, and holds the ANDAs for valsartan and valsartan hydrochlorothiazide. Solco is a wholly-owned subsidiary of Prinston, incorporated in Delaware, with an office in Somerset, NJ, and is the U.S. distributor for ZHP's finished dose products, including valsartan.

herein as the "ZHP Parties." Two other entities related to ZHP have been the subject of discovery in this litigation, but they are not parties. Those entities are Prinbury BioPharm Ltd. and Shanghai Syncores Technologies, Ltd.[3]

Mr. Chen founded ZHP in 1989 and has served as General Manager and/or Chairman of ZHP throughout the entire period that ZHP has produced valsartan.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████.

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[3] Syncores is a wholly-owned subsidiary of ZHP located in Shanghai, China. Syncores is responsible for research and development of APIs. Prinbury is a wholly-owned subsidiary of ZHP located in Shanghai, China. Prinbury is responsible for the research and development of ZHP's finished dose products.

**B.    Mr. Chen Holds a Number of Public Positions with Chinese Governmental Bodies**

In addition to his role at ZHP, Mr. Chen holds a number of social titles with

Chinese governmental organs, including:

- Deputy to the 13th NPC
- Standing Member of the 5th Taizhou Municipal Committee of CPPCC
- Chairman of Taizhou Federation of Industry and Commerce (General Chamber of Commerce)
- Vice President of Zhejiang Chamber of Commerce
- Standing director of Zhejiang Pharmaceutical Association
- Member of the Fourth Council of Linhai Charity Federation
- Member of the Standing Committee of the 16th People's Congress of Linhai City

*See* Exhibit G. Mr. Chen conducts business relating to these social roles using his

ZHP-issued email account.

**C.    The ZHP Parties' Document Productions Corroborate the Testimony that Mr. Chen Had Only High-Level Involvement in the Facts at Issue in This Litigation**

The ZHP Parties have already produced over 350,000 documents, totaling

over three million pages, in this litigation, drawn from *83 custodians*, as well as from

significant non-custodial sources, based on more than *400* search terms selected by

Plaintiffs. *See* Exhibit H (Production Index). These documents have been produced

from ZHP Party custodians and departments responsible for a broad array of

functions including Quality Assurance, Quality Control, Analytical, Regulatory

Affairs, Technology, Production, Procurement, Sales and Marketing, and API

Division.[4] These custodians include a wide range of individuals, from the highest-level executives, to vice presidents, a large number of director-level employees, and even the individuals tasked with day-to-day execution, such as testing analysts and sales representatives. *See* Exhibit I (Custodian List). As it was intended to do, this wide-ranging production has resulted in a set of documents that thoroughly covers the facts at issue in the valsartan matters.

This substantial document production also corroborates the testimony demonstrating Mr. Chen's minimal involvement in the facts underlying this litigation. *See* Exhibit J. Of over 350,000 documents produced by the ZHP Parties, only about 375 constitute correspondence with Mr. Chen. And, although he appears in the "To" line of about 174 emails, he is the sole recipient of only 73. *See* Exhibit O. However, just 2 of those 73 email to Mr. Chen, as the recipient, have been used as deposition exhibits. In fact, of the 386 deposition exhibits Plaintiffs have introduced during the depositions of 13 ZHP Party witnesses, including nine 30(b)(6) depositions, only 14 documents (3.6% of the depositions exhibits and 0.0038% of the overall production) mention Mr. Chen. *Id.* Six of those exhibits were emails mentioning Mr. Chen, and eight were corporate documents, such as organizational charts, merely identifying Mr. Chen as the highest-ranking ZHP

---

[4] In addition to ZHP Party custodians, ZHP has also produced custodial files related to the research and development functions of certain subsidiaries.

official. *Id.* None of these 14 documents does anything to connect Mr. Chen to a material fact at issue in this litigation.

### D.    Mr. Chen Was Not Involved in the Irbesartan Development Process or Plaintiffs' Fabricated Cover Up

On ***September 20, 2020***,[5] the ZHP Parties produced an e-mail dated July 27, 2017, authored by ZHP employee Jinsheng Lin, discussing irbersartan lab scale processes. *See* Exhibit K ("Jinsheng Lin Irbesartan Email"). The e-mail was not directed to Mr. Chen, but rather to others at ZHP. The email makes no mention of Mr. Chen, and there is no indication that Mr. Chen was aware of this e-mail or otherwise involved in this conversation. In fact, not one document in the more than 350,000 documents produced connects Mr. Chen to this email.

Any connection between this email and Mr. Chen is pure conjecture, and is unsupported by the voluminous record in this case. Plaintiffs have no basis for their claim that Mr. Chen was the "apparent architect" and "intervened" to make sure that the process impurity was not disclosed. Dkt. 1189 at 4-6. Nevertheless, to satisfy Plaintiff's curiosity and to debunk their fabricated claim of a cover-up, the ZHP

---

[5] Plaintiffs have attempted to steer the Court into believing the ZHP Parties withheld this document, but it was produced to Plaintiffs almost eight months ago. More than two months before the completion of the ZHP Parties' document production, and approximately seven months before Plaintiffs introduced it as a deposition exhibit during a ZHP Party deposition.

Parties' have agreed to provide virtually all of the additional discovery Plaintiffs have requested relating to the Jinsheng Lin Email, including:

- Producing the custodial files of *seven* **additional custodians** based on the original 400+ search terms;

- Reviewing the collection of *thirteen* custodians and, if necessary, supplementing their production with any additional responsive, non-privileged documents; and

- Applying the following *six new search terms* across all existing and new custodians and producing any additional responsive, non-privileged documents: Zhejiang Second Pharma, CN103613558A, Impurity K, NALCO, Hypochlorite and TC-201729.

*See* Dkt. 1228.

## III. PERTINENT PROCEDURAL BACKGROUND

As Plaintiffs concede, "Judge Schneider denied Plaintiffs' request for Mr. Chen's inclusion as a custodian for purposes of a custodial production." Dkt. 1189. Specifically, on December 18, 2019, after hearing argument about Mr. Chen's role at ZHP, Judge Schneider stated: "The Court just does not believe at this time, based on the present record, that a search of Mr. Chen's custodial files will add any material evidence or documents that are not otherwise going to be proven in the case." *See* Hrg. Tr. 12-18-19 at 7:8-9:10, 23:16-19; *see also* Hrg. Tr. 12-18-19 at 24:16-19 ("But in terms of a custodian search for documents, the Court sustains Mr. Goldberg's objections and will remove Mr. Chen from the list, and will approve the list absent his name.").

It was not until April 23, 2021, following a meet and confer at ZHP's request to postpone Mr. Chen's deposition to allow the Court to rule on a motion for protective order, that Plaintiffs requested the ZHP Parties agree to produce Mr. Chen's custodial file. *See* Exhibit L ("Please advise as to whether you will agree to production of Baohua Chen's custodial file within 10 days."). Following that email, Plaintiffs again renewed their request for Mr. Chen's custodial file in their case management conference letter agenda. Dkt. 1189. On May 3, 2021, the Court ruled that it would consider Plaintiffs' presentation of April 27 to be the equivalent of a motion to compel the production of Mr. Chen's custodial file, and directed the ZHP Parties to file this Opposition brief. 5-3-21 Hrg. Tr. at 28:3-6.

## IV.    ARGUMENT

### A.    Controlling Legal Standards

Although the scope of discovery is broad, it is not unlimited. *Inventio AG v. Thyssenkrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009); *see also Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 628320, at *3 (D.N.J. Feb. 2012) ("Discovery is not without bounds . . . and courts will not permit parties to engage in fishing expeditions . . .") (*quoting MacDermid Printing Solutions, L.L. C., v. E.I. du Pont de Nemours and Co.*, No. 07-4325, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)).

A party moving to compel bears the burden of demonstrating "beyond . . . mere suspicion or speculation" that the information sought is relevant to a particular claim. *Tessera, Inc. v. Broadcom Corp.,* No. 16-380, 2017 WL 4876215, at *2 (D. Del. Oct. 24, 2017); *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Where a moving party satisfies that burden, the Court should nonetheless deny the motion if the opposing party demonstrates *inter alia* "the discovery sought is unreasonably cumulative or duplicative" or "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." *Am. Civ. Liberties Union v. Gonzales*, No. 98-5591, 2005 WL 817878698, at *1 (E.D. Pa. Dec. 29, 2005); Fed. R. Civ. P. 26(b)(2)(C).

Under Federal Rule of Civil Procedure 26(c)(1), a court may, "for good cause," issue a protective order to "[a] party or any person from whom discovery is sought," to prevent "annoyance, embarrassment, oppression, or undue burden or expense."

### B.    Plaintiffs' Motion to Compel Should Be Denied Because Plaintiffs Have Not Demonstrated that Mr. Chen Possesses Unique Relevant Information

Courts routinely deny requests for production of custodial files where those files are not expected to lead to the production of non-duplicative, non-cumulative documents. *Eisai Inc. v. Sanofi–Aventis U.S., LLC,* Civ. A. No. 08–4168, 2012 WL 1299379, at *9 (D.N.J. April 16, 2012) (denying motion to compel discovery from

11

additional custodians and accepting defendants' rationale for selection of its custodians—to respond fully to plaintiff's document requests and produce responsive, non-duplicative documents); *Assured Guar. Mun. Corp. v. UBS Real Est. Sec. Inc.*, No. 12 CIV. 1579 HB JCF, 2013 WL 1195545, at *3-*4 (S.D.N.Y. Mar. 25, 2013) (denying defendant's motion to designate two high-level executives as custodians whose files must be searched because defendant failed to demonstrate whether executives possessed non-cumulative relevant documents); *Lauris v. Novartis AG*, No. 116CV00393LJOSAB, 2016 WL 7178602, at *3-*4 (E.D. Cal. Dec. 8, 2016) (denying plaintiffs' request to expand list of custodians because plaintiffs failed to show that custodial documents of apex witnesses would produce significant quantity of unique relevant documents and request was not proportional to needs of case).

Since Judge Schneider denied Plaintiffs' request for Mr. Chen's custodial file no new facts have been developed showing Mr. Chen possesses non-duplicative, non-cumulative documents relevant to the valsartan matters at issue. To date, the ZHP Parties have produced over three million pages of discovery from the 83 individuals who manage the pertinent operations of the company and the individuals responsible for executing day-to-day functions in these areas, *see* Exhibit H and I, as well as the testimony of 13 ZHP Party witnesses. ████████████████

████████████████████████████████████████████████



Moreover, the facts of record refute each of the claimed bases for Plaintiffs' motion to compel, and betray them as nothing more than mischaracterizations and conjecture.

*First*, Plaintiffs' theory that Mr. Chen orchestrated a cover up is pure fabrication and conjecture that is ***wholly-unsupported by any documents or testimony in this litigation***. *See* Section II.D *supra.* This new theory rests on nothing more than the "mere suspicion" courts hold insufficient to sustain a request for production of a custodian's file. *See Tessera, Inc. v. Broadcom Corp.,* No. 16-380, 2017 WL 4876215, at *2 (D. Del. Oct. 24, 2017) (denying request for documents predicated in speculative theory of requesting party). The District of New Jersey has repeatedly recognized that "courts will not permit parties to engage in fishing expeditions," *see MacDermid Printing Solutions, L.L. C., v. E.I. du Pont de Nemours*

13

*and Co.*, No. 07-4325, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 628320, at *3 (D.N.J. Feb. 2012), and Judge Kugler has echoed this sentiment.  *See* Tr. of Apr. 10, 2019 Conference at 31:14-17 (Noting that that one of the purposes of Defendants' production of "core discovery" was to "guide [Plaintiffs'] discovery in this case so [Plaintiffs] don't go down a rabbit hole.").

*Second*, Plaintiffs' references to meetings between Mr. Chen and top management, Dkt. 1189 at 5-9, do not demonstrate that Mr. Chen would possess any material, non-cumulative, non-duplicative information. Following the valsartan recall, the Quality Assurance department at ZHP's Chuannan facility organized several meetings to coordinate the ZHP Parties' response to the FDA's recall. President Chen did not organize these meetings, but attended the meetings to receive reports. ██████████████████████████████████████████████ ████████████████████████████ It is clear that any related information found in Mr. Chen's custodial file would be cumulative of the many documents that have already been produced.

*Third*, the fact that Mr. Chen visits ZHP's U.S. subsidiaries does nothing to further the theory that he possesses any non-cumulative documents, particularly the ZHP Parties have produced the custodial files of 12 individuals employed by the US entities. *See* Exhibit I.

14

*Fourth*, Mr. Chen's experience prior to founding ZHP ***in 1989***, *see* Dkt. 1189 at 11, has no bearing on the valsartan matters. And the record in this case is clear— Mr. Chen has served as either the General Manager/President or Chairman of ZHP for the entire time that ZHP has manufactured valsartan, and he has no involvement in process development or quality control at ZHP. ████████████

████████████████████

████████████████████

████████

*Fifth*, Mr. Chen's attendance at FDA inspections, *see* Dkt. 1189 at 11, does not indicate that he possesses any material, non-duplicative, and non-cumulative documents. While Mr. Chen may attend the welcome and final meetings of an FDA inspection, he is not present during other stages of the FDA inspections. Exhibit M, Declaration of Linda Lin, at ¶ 9. Instead, Linda Lin, whose custodial file has been produced, liaises with the FDA, and employees like many of those deposed in this case are identified as subject matter experts to discuss the specifics of API and finished dose manufacturing with the FDA. *See generally id.* Jun Du also attended many of these inspections and possesses information regarding the inspections. *See, e.g.*, Exhibit M, PRINSTON00082994; PRINSTON00083026; PRINSTON00083640 (FDA inspection-related communications addressed to Jun Du). Nor is Mr. Chen involved in drafting correspondence to the FDA; this

15

correspondence is instead drafted by the Regulatory Affairs Department, along with the Quality Affairs Department and relevant subject matter experts. Exhibit M at ¶¶ 6, 10.

Additionally, Plaintiffs fail to mention the numerous existing ESI custodians who participated in these inspections. The ZHP Parties have produced the custodial files of many of the inspection attendees. For example, "The Opening Meeting Attendants" list in the June 5, 2017 FDA inspection report lists *nine custodians*[6] whose files have already been produced. Exhibit I; ZHP00005780.

*Sixth*, although Mr. Chen was listed as Shanghai Syncores'[7] legal representative,[8] *see* Dkt. 1189 at 12, ZHP has already produced over 40,000 pages of documents on behalf of Shanghai Syncores, and Plaintiffs have made no showing that Mr. Chen has any unique, non-cumulative documents not included in that production. Nor did the deposition of Eric Gu, President of Syncores, suggest that Mr. Chen possessed any uniquely material documents.

---

[6] Cunxiao Ye, Jie Wang, Linda Lin, Minli Zhang, Xiaoming Liu, Xiaodi Guo, Baozhen Chen, Youqing Zheng, Wayne Cheng.

[7] Shanghai Synocres is located in Shanghai, a four to five hour car trip from ZHP's headquarters, where Mr. Chen is based.

[8] Whether Mr. Chen is authorized to sign binding legal documents as a legal representative of Syncores has nothing to do with the research and development functions Syncores was involved in relevant to this litigation.

*Seventh*, Mr. Chen's participation in a November 1, 2013 meeting regarding API manufacturing processes, *id.,* similarly does not change the analysis. ██████ ████████████████████████████████████████████████ ████████████████████████████████████████. The very fact that the minutes of this meeting were produced in this litigation exemplifies the duplicative nature of the documents within Mr. Chen's custodial file. This document also indicates that ***five custodians***[9] attended this meeting, highlighting that this and related documents would be available through not just one, but *several* existing custodians.

*Lastly*, Mr. Chen's participation in the "Recall Group," *see* [Dkt 1189](#) at 13, similarly does not establish that Mr. Chen has any non-cumulative or non-duplicative documentation. In fact, this document serves as yet another example of the duplicative nature of Mr. Chen's custodial file–ZHP has already produced documents from ***nine*** members of the recall group.[10] Exhibit I. And, the testimony in this case shows that Mr. Chen's role in the recall was limited instructing the recall

---

[9] Attendees included Chen Wei, Lin Lihong (Linda), Wang Peng, Meng Yanhua, whose custodial files have already been produced, as well as Jinsheng Lin, whose custodial file will be produced.

[10] Ye Cunxiao, Meng Yanhua, Tong Zengyuan, Ge Jucai, Chen Baozhen, Cheng Wei, and Yuelin Hu, Wang Peng, and Li Qiangming,

team that they should "follow all the guidelines . . . . to protect the patients and . . . recall the materials. Exhibit D, Eric Gu Tr. at 117:1-8.

Consistent with Judge Schneider's original ruling, there is still no reason to believe that Mr. Chen's custodial file contains unique material documents relevant to this litigation. Plaintiffs' examples fall far short of demonstrating that Mr. Chen possesses *any* documents that are non-duplicative and non-cumulative of the expansive production of documents and testimony already submitted in this case, and in certain instances, *see, e.g.* ZHP00005780 (showing the attendance of nine ESI custodians at a meeting attended by Mr. Chen), they actually demonstrate that any potentially-relevant materials related to Mr. Chen are likely to exist in the files of the extensive list of 83 existing custodians. For these reasons, Plaintiffs' motion to compel production of Mr. Chen's custodial file should be denied.[11]

---

[11] To be sure, ZHP's voluntary production of the additional discovery referred to above, see Section II.D *supra*, will further demonstrate that Mr. Chen was not involved in the lab-scale irbesartan process development and that the "cover up" that Plaintiffs fabricated did not occur. Thus, if the Court is not willing to deny Plaintiffs' request for Mr. Chen's custodial file outright, which is unquestionably warranted on this record, the Court should defer ruling on Plaintiffs' motion until this additional discovery has been produced, rather than basing a ruling on Plaintiffs' speculation as to what the additional discovery will show.

## C.    A Protective Order is Warranted Because Production of Mr. Chen's Custodial File Would Place Mr. Chen in Jeopardy of Violating PRC Law

As set forth in the Declaration of Yang Xueyu, an attorney of the Chinese law firm Hui Zhong, who is also licensed to practice in the State of New York, because Mr. Chen uses his ZHP email account in the course of carrying out his public duties, the production of Mr. Chen's custodial file places Mr. Chen in jeopardy of violating the Criminal Law and the State Secrets Law of the PRC. See Exhibit N, Decl. of Yang Xueyu at ¶¶ 1-6, 8-10, 26. The consequences of violating these laws warrants a protective order precluding the production of Mr. Chen's custodial file.

Mr. Chen serves as a deputy to the 13th National People's Congress, a member of the 16th standing Committee of the People's Congress of Linhai City, a standing member of the Taizhou Chinese People's Political Consultative Conference, and a standing member of the Taizhou Federation of Industry and Commerce. *Id.* at ¶ 7; *see also* 11-18 (describing the nature of these social roles).

In these positions, Mr. Chen has been exposed to important issues of national and local affairs, including the major policies of the Party and the State, important issues in the political, economic and social life of the province, and important topics such as technology, talent recruitment, economic and trade cooperation in the economic development and construction of the province work agendas of the NPC and Standing Committee of the People's Congress of Linhai City, proposals and

19

opinions from other NPC deputies in various areas of national security and livelihood, drafts of government work reports, drafts of government financial plans, decisions on the appointment and dismissal of government personnel, and other types of important matters concerning China's national security and interests. *Id*. at ¶¶ 19, 20. All such information is secret information the disclosure of which in this litigation would violate the Criminal Law of the People's Republic of China and State Secrets Law, and would expose Mr. Chen to penalties of more than ten years of fixed-term imprisonment or life imprisonment. *Id.* at ¶¶ 21-35.

Even if the ZHP Parties attempt to collect Mr. Chen's file, doing so while abiding by Chinese law would require surgical precision to eliminate any and all risk of disclosing a document protected as secret by Chinese law. Here, where Plaintiffs' discovery requests are sweeping, including 129 document requests and over 400 search terms, this requisite precision would require significant resources to isolate and filter from the collection the secret material protected under Chinese law that cannot be disclosed to unauthorized parties. Particularly in light of the fact that, to the extent Mr. Chen's custodial file holds responsive documents, they are duplicative and cumulative of documents already produced in this litigation, *see* Section IV.B *supra*, the extraordinarily high burden associated with a document collection designed to avoid any risk of a state secret leak is not warranted.

## V.    CONCLUSION

WHEREFORE, for the foregoing reasons, the ZHP Parties respectfully request that the Court deny Plaintiffs' motion to compel Mr. Chen's custodial file and grant the ZHP Parties' cross-motion for a protective order barring production of Mr. Chen's custodial file, or, alternatively, the Court should hold Plaintiffs' motion in abeyance until the additional discovery the ZHP Parties have agreed to produce demonstrates that Mr. Chen's custodial contains material non-duplicative, non-cumulative information.

Date: May 14, 2021

Respectfully submitted,

By: /s/ Seth A. Goldberg

DUANE MORRIS LLP
Seth A. Goldberg
30 South 17th Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
SAGoldberg@duanemorris.com

*Attorney for Zhejiang Huahai Pharmaceutical Co, Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare US, LLC*