# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>*All Actions* | No. 1:19-md-2875-RBK-KMW<br><br>Hon. Robert B. Kugler<br>Hon. Karen M. Williams<br>Hon. Thomas I. Vanaskie |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD AS CHINESE STATE SECRETS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

LEGAL ARGUMENT...........................................................................................2

    I.      THE DOCUMENTS DO NOT CONTAIN STATE SECRETS ........................2

          A.     ZHP bears the burden of providing adequate and reliable expert testimony justifying its invocation of foreign law to withhold documents as Chinese state secrets, not Plaintiffs ..........................................2

          B.     The Translation of Article 2..........................................................................5

          C.     ZHP has not met its burden of establishing the documents contain Chinese state secrets .......................................................................................7

    II.    PLAINTIFFS' SIGNIFICANT INTEREST IN THE DOCUMENTS EXCEEDS THAT OF THE ATTENUATED STATE SECRET INTEREST...................................................................................................................8

          A.     The July 27, 2017 email demonstrates how a vague description of a document is not enough to assess how vital it could be to Plaintiffs' claims ..........................................................................................................9

          B.     Plaintiffs' discovery requests are specific and Court ordered ......................10

          C.     The information has not been limited to China; it has been distributed throughout the world...................................................................10

          D.     To the extent the information is actually a Chinese state secret, Plaintiffs do not have an alternative means of obtaining that information...................................................................................................11

          E.     The balance of national interests require disclosure .....................................11

          F.     ZHP has not demonstrated that it will face any hardship by producing these documents...........................................................................12

          G.     ZHP's "good faith" attempts at complying with the Court's discovery orders have resulted in it taking contradictory positions that undercut its refusal to produce documents in accordance with those orders .....................................................................................................12

CONCLUSION...........................................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*In re Activision Blizzard, Inc. Stockholder Litig.*,
    86 A.3d 531 (Del. Ch. 2014)..................................................................................10

*Autodesk, Inc. v. ZWCAD Software Co. Ltd.*,
    No. 5:14–cv–01409–EJD, 2015 WL 1928184 (N.D. Cal. Mar. 27, 2015) ...............12,13

*CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. Partnership*,
    No. 12-cv-08087, 2013 WL 2661037 (S.D.N.Y. June 12, 2013) .............................11

*Golden Trade v. Lee Apparel Co.*,
    143 F.R.D. 514 (S.D.N.Y. 1992) ..........................................................................3

*Jinro Amer. Inc. v. Secure Invs., Inc.*,
    266 F.3d 993 (9th Cir. 2001) ..............................................................................3

*Masimo Corp. v. Mindray DS USA, Inc.*,
    No.: SACV 12-02206, 2014 WL 12589321 (C.D. Cal. May 28, 2014) ...................13

*Meggit (Orange Cty.), Inc. v. Nie Yongzhon*,
    No. SACV 13–0239–DOC, 2015 WL 1809354 (C.D. Cal. Apr. 21, 2015) .............13

*Munoz v. China Expert Tech., Inc.*,
    No. No. 07 Civ. 10531, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2001) .....................13

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*,
    902 F.2d 1275, 1278 (7th Cir. 1990) .....................................................................10

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir.1992) ......................................................................*passim*

*Schindler Elevator Corp. v. Otis Elevator Co.*,
    657 F. Supp. 2d 525 (D.N.J. 2009). .......................................................................2

*Schultz v. Royal Caribbean Cruises, Ltd.*,
    465 F. Supp. 3d 1232 (S.D. Fla. 2020) ..................................................................3

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa*,
    482 U.S. 522 (1987).................................................................................*passim*

*Universe Sales Co. v. Silver Castle, Ltd.*,
    82 F.3d 1036 (9th Cir. 1999) ...........................................................................2,3

*In re Westinghouse Elec. Corp. Uranium Conts. Litig.*,
    563 F.2d 992 (10th Cir. 1977) ..............................................................................9

*Wultz v. Bank of China Ltd.*,
   910 F. Supp. 2d 548 (S.D.N.Y. 2012)........................................................................8

**STATUTES**

Article 2 of the Law of the People's Republic of China on Guarding State Secrets ............*passim*

Article 9 of the Law of the People's Republic of China on Guarding State Secrets .............6,7

Article 10 of the Law of the People's Republic of China on Guarding State Secrets ...........6,7

**REGULATIONS**

Article 2 of the Regulations of
the Peoples Republic of China on Disclosure of Government Information .........................7

Article 16 of the Regulations of
the Peoples Republic of China on Disclosure of Government Information .........................7

**OTHER AUTHORITY**

9A Charles A. Wright & Arthur R. Miller,
Fed. Prac. & Proc. Civ. § 2444 Proof of Foreign Law (3d ed.)............................................2,5

## <u>INTRODUCTION</u>

In response to Plaintiffs' motion, ZHP produced 14 of the 23 disputed documents in redacted form, despite Plaintiffs' request to do so during the Parties' March 26, 2021 meet and confer, and ZHP's subsequent refusal to do so prior to the filing of Plaintiffs' motion. ZHP's "expert" has also decided that she does not like the translation of Chinese state secrecy laws that she previously provided to the Court and explicitly adopted in her declaration. This all undercuts the credibility of ZHP on an issue where it bears the burden of proof.

ZHP also inexplicably seeks to analyze the *Societe Nationale* and *Richmark* factors before establishing that Chinese state secrecy law bars the production of the 23 documents. This turns the analysis on its head, as the *Societe Nationale* factors only apply when a foreign law bars discovery in accordance with the law of the United States. Perhaps ZHP has structured its argument in this manner because even its own "expert" admits that **"based on the laws, regulations and cases mentioned above, I arrived at the conclusions that the 23 documents at issue *may implicate* state secrecy information."** (ZHP's Br., Ex. A ¶ 22 (emphasis added)). Even if the Court were to accept the accuracy of this statement, which it is not obligated to do, this statement does not satisfy ZHP's burden of proving that the 23 documents do in fact contain Chinese state secrets. The Court must therefore grant Plaintiffs' motion to compel the production of these documents.

Out of an abundance of caution, Plaintiffs have also analyzed the *Societe Nationale* and *Richmark* factors. As explained in that analysis, China has at most a vanishingly minimal interest in preventing the disclosure of these documents, and the United States has a great interest in enforcing the Plaintiffs' heavily litigated and Court-ordered requests for production in this consolidated multidistrict litigation arising from the Defendant's sale of contaminated medication into the United States – and recently confirmed failure to disclose the contamination for at least

ten to eleven months after it became well known within ZHP. Therefore, the Court should grant Plaintiffs' motion to compel under *Societe Nationale*, *Richmark*, and the numerous other cases cited in their original brief.

**LEGAL ARGUMENT**

**I.**

**<u>THE DOCUMENTS DO NOT CONTAIN CHINESE STATE SECRETS</u>**

**A.     ZHP bears the burden of providing adequate and reliable expert testimony justifying its invocation of foreign law to withhold documents as Chinese state secrets, not Plaintiffs.**

The "party relying on foreign law has the burden of showing that such law bars production." *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 532 (D.N.J. 2009). Thus, ZHP bears the burden of proving that Chinese state secrecy laws bar the production of the documents at issue in this motion. Given this burden, ZHP should provide "adequate expert testimony on foreign law and the failure to produce it may be quite damaging to a litigant's case." 9A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2444 Proof of Foreign Law (3d ed.) (collecting cases). However, "federal courts have not felt bound by the testimony of foreign law experts and upon occasion have placed little or no credence in their opinions *when not supported adequately or when the views were offered in too partisan a fashion*." *Id.* In fact, Federal Rule of Civil Procedure 44.1, which governs the Court's determination of foreign law, does not reference experts at all and explicitly allows the Court to "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."[1]

---

[1]     ZHP relies on *Universe Sales Co. v. Silver Castle, Ltd.* in support of its argument that Plaintiffs have somehow conceded to its interpretation and application of Chinese law by not hiring

2

their own expert on the issue. 82 F.3d 1036, 1038 (9th Cir. 1999). In that case, the plaintiff had the burden to overcome a motion for summary judgment and failed to provide the necessary expert for that purpose. *Id.* Moreover, the Ninth Circuit subsequently limited the holding of that case to situations where a court errs "in not considering the declaration of an expert on [foreign] law." *Jinro Amer. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1000 (9th Cir. 2001). In both *Universe Sales* and *Jinro*, the Ninth Circuit noted that Federal Rule of Civil Procedure 44.1 allows a court to "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." 82 F.3d at 1038; 266 F.3d at 1000. Thus, in addition to considering the declarations of ZHP's "expert," Plaintiffs and the Court are free to rely on "any material or source" in demonstrating how ZHP has failed to meet its burden of showing Chinese state secrecy laws bar the production of the documents at issue. (ECF 1231-1, pp. 2-15).

Despite the clear wording of Rule 44.1, ZHP relies on two other cases for the idea that Plaintiffs cannot challenge their withholding without hiring an expert. In *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 523-24 (S.D.N.Y. 1992), the plaintiff withheld documents as privileged under Norwegian law and provided a supporting expert affidavit. The court never reached the issue of Norwegian law because the plaintiff established "that the communications were covered by the attorney-client privilege in American terms and that we need not even resort to Norwegian law." *Id.* at 523. Additionally, the court noted:

> [D]efendants were free to proffer their own version of Norwegian law if they disagreed with his interpretation or if they had a basis for arguing that Norwegian law, when analyzed in greater detail, would not justify invocation of a privilege on the facts presented. Since defendants have refrained from doing do, I decline to question what is, on its face, uncontradicted testimony as to both the state of Norwegian law and the facts relevant to the application of that law.

*Id.* at 524. Here, Plaintiffs have done as the *Golden Trade* court directed and analyzed ZHP's claims of Chinese state secrecy in great detail and demonstrated their failure to carry their burden of proof. (ECF 1231-1, pp. 2-15).

In *Schultz v. Royal Caribbean Cruises, Ltd.*, the defendant had the burden to prove the foreign law exception to the Americans with Disabilities Act. 465 F. Supp. 3d 1232, 1261 (S.D. Fla. 2020). The court explained that the defendant "has not met this burden because it merely raises unsupported inferences on whether the ADA complies with Maltese law." *Id.* In fact, the defendant "only speculates on the possibility of a conflict as it never takes a firm position one way or another." *Id.* As already explained, ZHP has the burden of proving its documents contain Chinese state secrets, and Plaintiffs have taken the clear position that they have failed to meet that burden. *Schultz* is consequently completely inapposite. (ECF 1231-1, pp. 2-15).

Here, ZHP initially maintained that it could not produce 334 documents due to Chinese state secrecy laws. (ZHP's Br. 3).[2] This was based on the review and advice of "two separate China-based law firms." *Id.* Plaintiffs successfully challenged the adequacy of ZHP's proffer in support of withholding these 334 documents, so ZHP engaged a third Chinese law firm as a "quality check." *Id.* As a result, ZHP produced 244 of the previously withheld documents, as they did not actually contain Chinese state secrets. *Id.* It is important to stop here and acknowledge the vast overreaching in ZHP's initial position, and there is no reason to believe ZHP does not continue to overreach. On March 15, 2021, ZHP filed Xueyu Yang's first declaration in support of ZHP withholding the remaining 88 documents and redacting portions of 3 others. (ECF 1027-1). Plaintiffs relied on the laws attached to Ms. Yang's first declaration to assess its invocation of Chinese state secrecy law going forward, including during the Court-ordered meet and confer on March 26, 2021. During that meet and confer, Plaintiffs reviewed the Chinese state secrecy laws with Ms. Yang and confirmed that "Article 2 and Article 9 define the scope of state secret on Chinese law generally." (3/26/2021 Tr. 13:23-25, ECF 1231-2, Ex. E). Plaintiffs even confirmed the translation of Article 2 and Article 9.4 (which she specifically pointed to) with Ms. Yang. *Id.* at 24:1-10, 26:8-21.

After this meet and confer, and in accordance with the Court's order, Plaintiffs filed a status update on this issue. (ECF 1083). Plaintiff specifically wrote that "many of the documents contain factual information provided by ZHP, in many cases concerning ZHP's investigation into the nitrosamine contamination of valsartan." *Id.* at 2. The documents also contained "reports of non-Chinese regulatory investigations and actions" as well as "allegedly false information contained on the internet." *Id.* at 3. Plaintiffs then asked the Court to order ZHP to "review those documents

---

[2]    Plaintiffs do not link to this brief or related documents on ECF because ZHP redacted portions of that filing.

to determine whether they could be produced in redacted form." *Id.* at 2-3. In response, ZHP refused to consider Plaintiffs' requests, explaining that "ZHP has already re-reviewed the withheld documents in order to generate the Amended State Secret Logs served on January 29." (ZHP's Br., Ex. D, p. 5).

Plaintiffs thus filed this motion to compel the production of 23 documents that ZHP had withheld in their entirety on the basis of Chinese state secrecy laws. (ECF 1231). In response, ZHP re-reviewed the documents, as Plaintiffs had previously requested, and produced 14 of the documents in redacted form simultaneously with their opposition to Plaintiffs' motion. (ZHP's Br. 2).

Thus, ZHP's "experts" originally withheld 325 documents and redacted 9 on the basis of Chinese state secrecy laws. A month later that split changed to 88 documents withheld and 3 redacted, which is more than a threefold decrease. Just since Plaintiffs filed their motion, ZHP's "experts" decided that ZHP could produce over half of the challenged documents in redacted form, as Plaintiffs had previously requested and ZHP had refused to do. It is abundantly clear that even by ZHP's own current understanding of the law, Plaintiffs have had a much clearer and accurate understanding of Chinese state secrecy law than ZHP or its experts. The record does not allow for any other conclusion. Put differently, **the record shows that the opinions of ZHP's experts are "not supported adequately or … the views were offered in too partisan a fashion."** 9A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2444 Proof of Foreign Law (3d ed.) (emphasis added) (collecting cases). As a result, this Court should decline to adopt those opinions uncritically as ZHP has requested. *Id.*

      **B.**      **The Translation of Article 2.**

Perhaps most troubling, ZHP's own expert has changed her interpretation of Article 2 of the Law of the People's Republic of China on Guarding State Secrets. (ZHP's Br. 7). ZHP acts

as though Plaintiffs came up with the translation provided in their motion themselves.  However, Plaintiffs attached the same translation of the law as ZHP did on March 15, 2021, in support of the adequacy of their Chinese state secret log.  (ECF 1027-1, Ex 3).  That Westlaw China translation clearly states that Chinese state secrets are limited to "matters that have *a vital bearing on State security and national interests*."  *Id.*  Ms. Yang's March 15, 2021 declaration to the Court states the same thing.  *Id.* at ¶ 9.  During the March 26, 2021 meet and confer, Plaintiffs even asked, "When I look at Article 2, it says 'State secrets should be those that have a vital bearing on state security and national interests.'  Why would that document fall within that provision[?]" (3/26/2021 Tr. 24:1-6, ECF 1231-2, Ex. E).  Ms. Yang responded but did not dispute her need to establish "a vital bearing on state security and national interests."  *Id.* at 24:7-10.  In fact, the word "vital" was used nine times during the meet and confer, and it was always conceded as the standard for establishing a Chinese state secret.  *Id.* at 14:22, 24:3, 24:14, 24:23, 25:16, 42:13, 44:10, 47:20, 119:21.  Ms. Yang's last gasp effort to impugn her own declaration, the Westlaw China translation, and her statements during the Court ordered substantive meet and confer with Plaintiffs on this exact issue, completely destroys her credibility.

Nevertheless, Plaintiffs' prior analysis remains valid, even under Ms. Yang's newfound translation, which lacks the adjective "vital."  In its brief, ZHP does not dispute her prior translation of Article 9.4, which limits Chinese state secrets to "matters … *likely to prejudice State security and national interests*."  (ECF 1231-2, Ex. F).  And Article 10 classifies state secrets into three categories:

> The most confidential information refers to vital State secrets, the divulgence of which *will cause extremely serious harm to State security and national interests*; classified information refers to important State secrets, the divulgence of which *will cause serious harm to State security and national interests*; and confidential information refers to ordinary State secrets, the divulgence of which *will cause harm to State security and national interests*.

*Id.* (emphasis added).  Thus, the "prejudice" discussed in Article 9.4 must amount to some type of actual "harm."

      **C.**      **ZHP has not met its burden of establishing the documents contain Chinese state secrets.**

ZHP's brief does not even describe how each of the 23 documents meet the substantive definitions of Chinese state secrets under Article 2, 9.4, and 10.  (ZHP's Br. 24-29).  Ms. Yang also declines to commit to the 23 documents meeting those definitions.  Instead, in her amended declaration, **Ms. Yang writes that "based on the laws, regulations and cases mentioned above, I arrived at the conclusions that the 23 documents at issue *may implicate* state secrecy information."**[3]  (ZHP's Br., Ex. A ¶ 22 (emphasis added)).  Ms. Yang is similarly equivocal about the potential consequences for producing the documents: "Therefore, if ZHP and its employees produce the 23 documents at issue without the prior consent of the PRC government, they *may be subject* to the severe penalties set out above."  (*Id.* at ¶29 (emphasis added)).  **This is not enough to meet ZHP's burden of establishing the documents contain Chinese state secrets, especially when ZHP received Plaintiffs' Court-ordered requests for production in December of 2019.** (ECF 328).  The Court should therefore grant Plaintiffs' motion to compel.

---

[3]      Ms. Yang also relies on Article 2 of the Regulations of the Peoples Republic of China on Disclosure of Government Information, which defines "government information" as "information prepared or obtained by administrative organs in the process of performance of administrative duties and functions and recorded in a certain form."  (ECF 1231-2, Ex. H).  ZHP never mentioned this article during the March 26, 2021 meet and confer, but she did mention Article 16 of the same regulation once at the request of Plaintiffs.  When Plaintiffs asked if Article 16 "protects internal administrative information," ZHP replied, "[Y]ou're right – it's about the internal administration, the administration of information."  (3/26/2021 Tr. 13:13-22, 14:2-4, ECF 1231, Ex. E).  Ms. Yang did not rely on Article 16 during the remainder of the meet and confer, and she could not, as none of the documents concerned the internal administration of the Chinese government.

## II.

### PLAINTIFFS' SIGNIFICANT INTEREST IN THE DOCUMENTS EXCEEDS THAT OF THE ATTENUATED STATE SECRET INTEREST

Preliminarily, Plaintiffs note that ZHP's opposition turns the proper legal analysis of this motion on its head. ZHP inexplicably analyzes the *Societe Nationale* and *Richmark* factors before even establishing the documents contain Chinese states secrets. However, those factors only apply when a foreign law precludes discovery. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1472, 1474, 1476 (9th Cir.1992) (noting that China's State Secrecy Bureau directed the defendant not to produce the discovery, but stating, "That does not end the inquiry," then analyzing the *Societe Nationale* factors as well as others, and ultimately ordering the production of the discovery).[4] Thus, ZHP must first establish the documents contain Chinese state secrets and only then "[t]he PRC's admitted interest in secrecy must be balanced against the interests of the United States and the plaintiffs in obtaining the information." *Id.* at 1474. The *Societe Nationale* and *Richmark* factors are "not exhaustive." *Id.* at 1474. Given the attenuated nature of ZHP's claims of Chinese state secrecy, Plaintiffs did not engage in a factor-by-factor analysis in their original brief. However, Plaintiffs were clear that "the extremely limited extent to which any of the documents may bear on China's security or national interests, entirely from a non-substantive administrative perspective, is greatly outweighed by Plaintiffs' right to obtain the discovery

---

[4]      ZHP cites *Wultz v. Bank of China Ltd.* as an example of where a court allowed a party to withhold documents as Chinese state secrets. 910 F. Supp. 2d 548, 556 (S.D.N.Y. 2012). However, that decision concerned another discovery issue and only describes the court's earlier state secret decision in a cursory manner that provides little guidance to this Court. *Id.* Importantly, the court did explain that "to the extent that plaintiffs' narrowed discovery requests call for the production of confidential regulatory documents *created by the Chinese government* whose production is clearly prohibited under Chinese law, I decline to order production of such regulatory documents," and "[t]o be perfectly clear, this exception does not apply to materials created by BOC and provided to the Chinese government in the course of regulatory reviews." *Id.* at 556 n.24. Thus, **ZHP has continued to withhold many documents that even the *Wultz* court would order it to produce.**

ordered in this litigation." (ECF 1231-1).  For sake of completeness, the factor-by-factor analysis is provided below.

> ### A.    The July 27, 2017 email demonstrates how a vague description of a document is not enough to assess how vital it could be to Plaintiffs' claims.

As this Court knows, ZHP has repeatedly mischaracterized the July 27, 2017 email as about "irbesartan" and not as critical to this case as Plaintiffs have claimed.  The contents of the email and its troubling metadata are clear, and Plaintiffs will not reiterate them more specifically here or attach the email because doing so will require unnecessary redactions to briefing that should be entirely public.  ZHP's mischaracterization of the July 27, 2017 email and the absence of the email from all but one of its recipient's custodial files shows that Plaintiffs need the 23 documents at issue in order to ensure a full and complete record of ZHP's liability in this case.  They may only be a few documents, but even a phrase in a document can be a game changer.

ZHP relies on *In re Westinghouse Elec. Corp. Uranium Conts. Litig.* for the proposition that "[w]hen the information sought 'does not stand or fall on the present discovery order' and is 'in a sense cumulative' courts are generally unwilling to override foreign secrecy laws."  (ZHP's Br. 10 (citing 563 F.2d 992, 999 (10th Cir. 1977)).  ZHP completely overlooks that this case concerned whether it was proper to sanction a defendant for failing to comply with the court's discovery order, not the propriety of that underlying discovery order.  *Westinghouse*, 563 F.2d at 994 (holding that "though a local court has the power to order a party to produce foreign documents despite the fact that such production may subject the party to criminal sanctions in the foreign country, still the fact of foreign illegality may prevent the imposition of sanctions for subsequent disobedience to the discovery order").  The circuit court was clear that it overturned the district court because "[t]here is nothing to indicate that the district court conducted any balancing of interests."  *Id.* at 999.  *Westinghouse* is entirely inapplicable here for three reasons.  First, the case predates *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa*, 482 U.S.

522, 544 n. 28, 29 (1987), and *Richmark*, 959 F.2d at 1477.  Second, the case concerns sanctions, not the issuance of a discovery order.  Third, the district court failed to conduct the proper analysis, which obviously required the reversal.

ZHP also relies on *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, a case involving a request for post-judgment interrogatories, not court-ordered merits discovery.  902 F.2d 1275, 1278 (7th Cir. 1990).  Plaintiffs' motion concerns Court-ordered merits discovery.  *Reinsurance* is thus completely irrelevant to this motion.

*In re Activision Blizzard, Inc. Stockholder Litig.*, also relied on by ZHP, actually supports Plaintiffs' motion.  86 A.3d 531, 549 (Del. Ch. 2014) (applying *Societe Nationale* and stating, "[t]he current Blocking Statute does not meet this test").  There, the court ordered the discovery despite the invocation of a blocking statute, explaining, in part, that the discovery was important because "[t]he Vivendi Defendants are not third parties or secondary players.  They are primary defendants whose actions, decisions, and related communications lie at the heart of this proceeding. Vivendi was the controlling stockholder of Activision."  *Id.* at 544.  The same is true here.  The Court should therefore grant Plaintiffs' motion to compel.

B.    **Plaintiffs' discovery requests are specific and Court ordered.**

Plaintiffs' requests for production are Court ordered.  (ECF 328).  They are also the product of an extensive meet and confer process as well as significant briefing and oral argument.  Plaintiffs are therefore entitled to the documents responsive to the Court's ordered requests.

C.    **The information has not been limited to China; it has been distributed throughout the world.**

As explained in Plaintiffs' first brief, according to ZHP, the information contained in the 23 documents has been circulated through the world to the regulatory agencies of every country that received ZHP's contaminated valsartan.  (ECF 1231-1, pp. 2-15).  The vast majority of all of ZHP's discovery originated in China, as it is a Chinese company.  Nevertheless, it is before this

10

Court and must comply with its discovery orders.  (ECF 328).  This factor does not favor allowing ZHP to do otherwise.

ZHP cites *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. Partnership* as an example of where this factor disfavored granting the discovery.  No. 12-cv-08087, 2013 WL 2661037, at *10 (S.D.N.Y. June 12, 2013).  However, that case concerned whether the plaintiff could obtain discovery from a third party via a subpoena or only the Hague Convention.  *Id.* at *16.  The court ultimately concluded that the plaintiff should follow the Hague Convention.  *Id.*  Plaintiffs' motion and ZHP's opposition do not raise this issue.  The unpublished case is completely inapplicable.

### D.    To the extent the information is actually a Chinese state secret, Plaintiffs do not have an alternative means of obtaining that information.

Plaintiffs have a right to determine whether ZHP reported the same information to the Chinese authorities as it did to foreign regulators, and to see how the information was described. Moreover, discovery has already shown that ZHP sought to influence foreign regulators through its contacts with the Chinese government.  (TEVA-MDL2875-00611842, Ex. 1 hereto).  Plaintiffs do not have an alternative means of obtaining this information.  ZHP should produce it.

### E.    The balance of national interests require disclosure.

Plaintiffs have already analyzed this factor, which forms the foundation for this entire analysis.  (ECF 1231-1, pp. 15-17).  **In light of its second declaration in support of its withholding the 23 documents, ZHP now concedes that it does not know if these documents contain Chinese state secrets, and it does not know if the disclosure of the documents would subject it to criminal penalties.**  (ZHP's Br., Ex. A ¶¶ 22, 29).  This not only means that ZHP has failed it meet its burden of showing Chinese state secrecy laws bar the production of the documents, it also establishes that China's interest in baring the production of these documents is either non-existent or so minimal that ZHP's own expert cannot concretely identify the interest herself.  On the other hand, the Parties have met and conferred, briefed, and argued about Plaintiffs'

requests for production, and the Court has codified those requests for production in an order. ([ECF 328](#)). The United States' interest in enforcing this order greatly exceeds China's nonexistent or minimal interest in preventing the production of the documents.

**F.    ZHP has not demonstrated that it will face any hardship by producing these documents.**

As previously noted, ZHP's "expert" states, "Therefore, if ZHP and its employees produce the 23 documents at issue without the prior consent of the PRC government, they *may be subject* to the severe penalties set out above." (ZHP's Br., Ex. A ¶ 29). This is not enough to tilt this factor in favor of ZHP withholding documents subject to production in accordance with the Court's heavily litigation discovery order. ([ECF 328](#)). *See also Autodesk, Inc. v. ZWCAD Software Co. Ltd.*, No. 5:14–cv–01409–EJD, 2015 WL 1928184, at *8 (N.D. Cal. Mar. 27, 2015) (holding that ""unsubstantiated claims about Chinese law do not establish that there is a 'present danger that application of the PRC blocking statutes' could subject [ZHP] to liability if it produces").

**G.    ZHP's "good faith" attempts at complying with the Court's discovery orders have resulted in it taking contradictory positions that undercut its refusal to produce documents in accordance with those orders.**

Plaintiffs have already described how ZHP's "experts" lack credibility and should be disregarded accordingly. (*Supra* Part I). Unfortunately, even its current "expert" has now contradicted her translation of Chinese state secrecy law and admitted that she cannot determine whether the 23 documents actually contain Chinese state secrets. (ZHP's Br. 7 & Ex. A ¶ 22).

Moreover, ZHP has had Plaintiffs' Court-order requests for production since December 2019. ([ECF 328](#)). ZHP should have developed an expeditious process for concretely identifying Chinese state secrets and then nevertheless requesting permission to comply with the Court's order to the extent possible. Instead, ZHP waited to produce its now admittedly overly expansive Chinese state secret log until December 2020 and only sought permission to produce those documents in 2021. This is entirely unacceptable and lacks good faith. This factor therefore

weighs in favor of granting Plaintiffs' motion to compel.  *See also see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477 (9th Cir.1992) (rejecting the withholding party's invocation of Chinese state secret law); *Meggit (Orange Cty.), Inc. v. Nie Yongzhon*, No. SACV 13–0239–DOC, 2015 WL 1809354, *11 (C.D. Cal. Apr. 21, 2015) (same) (ECF 1231-2, Ex. B); *Autodesk, Inc. v. ZWCAD Software Co. Ltd.*, No. 5:14–cv–01409–EJD, 2015 WL 1928184, at *4 (N.D. Cal. Mar. 27, 2015) (same) (ECF 1231-2, Ex. C); *Masimo Corp. v. Mindray DS USA, Inc.*, No.: SACV 12-02206, 2014 WL 12589321, at *3 (C.D. Cal. May 28, 2014) (same) (ECF 1231-2, Ex. D); *Munoz v. China Expert Tech., Inc.*, No. No. 07 Civ. 10531, 2011 WL 5346323, at *1 (S.D.N.Y. Nov. 7, 2001) (same) (ECF 1231-2, Ex. A).

## CONCLUSION

For the foregoing reasons, ZHP has not met its burden of showing that Chinese state secret law bars the production of its documents.  The Court should therefore grant Plaintiffs' motion to compel.

Dated: May 26, 2021                                          Respectfully Submitted,

/s/ Ruben Honik                                              /s/ Daniel Nigh
Ruben Honik                                                  Daniel Nigh
GOLOMB & HONIK, P.C.                                         LEVIN, PAPANTONIO, THOMAS, MITCHELL
1835 Market Street, Ste. 2900                                 RAFFERTY & PROCTOR, P.A.
Philadelphia, PA 19103                                       316 South Baylen Street
Phone (215) 985-9177                                         Pensacola, FL 32502
rhonik@golombhonik.com                                       Phone: (850) 435-7013
                                                             dnigh@levinlaw.com


/s/ Adam Slater                                              /s/ Conlee S. Whiteley
Adam Slater                                                  Conlee S. Whiteley
MAZIE, SLATER, KATZ & FREEMAN, LLC                           KANNER & WHITELEY, LLC
103 Eisenhower Pkwy, 2nd Flr.                                701 Camp Street
Roseland, NJ 07068                                           New Orleans, LA 70130
Phone (973) 228-9898                                         Phone: (504)-524-5777
aslater@mazieslater.com                                      c.whiteley@kanner-law.com