# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875<br>Civil No. 19-02875 (RBK/JS)<br><br>Honorable Robert B. Kugler,<br>District Court Judge |
| **This Document Relates to All Actions** | Honorable Karen Williams,<br>Magistrate Judge |

## MANUFACTURER DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND MASTER COMPLAINTS

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................1

II.     BACKGROUND ................................................................................4

    A.      The Valsartan Litigation..............................................................4
    B.      The Manufacturer Defendants' Motions to Dismiss............................5
    C.      The Courts' Six MTD Opinions and MTD Orders Provide
        Guidance to Amend Plaintiffs' Complaints to Cure Pleading
        Deficiencies ............................................................................5

III.    ARGUMENT .....................................................................................7

    A.      Legal Standard.........................................................................7
    B.      The Court Should Deny Leave to Amend Because the PELMC
        and PMMMC Have Failed to Cure Their Standing Defects Under
        MTD Opinion 2 .......................................................................9

        1.      Plaintiffs Continue to Assert State-Specific Claims Under
            the Laws of Unrepresented States and Territories.....................9
        2.      Plaintiffs Cannot Trace Their Claims from at Least One
            Injured Plaintiff to All Defendants in Each State ....................11
        3.      The PELMC Continues to Assert an Insufficient Theory
            of Loss Based on Receipt of a "Less Valuable" Product..........13
        4.      The PELMC's TPP Plaintiffs Fail to Allege Out-of-State
            Standing and Traceability .......................................................15

    C.      Plaintiffs' Failure to Allege Privity with Regard to the States
        Identified in MTD Opinion 3 Is Fatal to Plaintiffs' Amended
        Implied Warranty Claims Arising Under the Applicable States'
        Laws ....................................................................................19

        1.      The PPIMC Fails to Cure Plaintiffs' Lack of Privity ..............19
        2.      The PELMC and PMMMC Fail to Cure Plaintiffs' Lack
            of Privity ............................................................................21

    D.      The Court Should Deny Leave to Amend Plaintiffs' Subsumed
        Claims Identified in MTD Opinion 5 Because the PELMC and
        PMMMC Fail to Plead Claims Under the Applicable States'
        Product Liability Acts ..............................................................24

1. The PELMC Has Failed to Cure the Subsumption of Claims Under Louisiana Law ...................................................25

2. The PMMMC Has Failed to Cure the Subsumption of Claims Under Nine States' Laws.............................................25

E. The Court Should Deny Leave to Amend to the Extent Plaintiffs Fail to Address the Absence of an Independent Cause of Action for Negligence *Per Se* as Required by MTD Opinion 5 .....................28

F. Plaintiffs' Failure to Allege the Absence of an Adequate Remedy at Law as Required by MTD Opinion 6 is Fatal to Plaintiffs' Amended Unjust Enrichment Claims in Those States Requiring Such Allegations.................................................................................28

G. The Court Should Deny Leave to Amend to Add Allegations and a Theory of Failure to Comply with "Official Compendium" Standards ..............................................................................31

1. Plaintiffs' "Official Compendium" Allegations Introduce a New and Unauthorized Theory of Liability into These Proceedings ................................................................................32

2. Plaintiffs' Allegations of Non-Conformance with "Official Compendium" Standards Fail to State a Claim.........34

3. Plaintiffs' Allegations and Theory of Liability Based on the Manufacturer Defendants' Supposed Non-Conformance with Orange Book Standards Are Preempted....................................................................................37

4. Plaintiffs' "Official Compendium" Amendments Are Prejudicial ................................................................................40

IV. CONCLUSION.............................................................................41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American West Enterprises, Inc. v. CNH, LLC*,
   316 P.3d 662 (Idaho 2013) ...................................................................24

*Americoach Tours, Inc. v. Detroit Diesel Corp.*,
   No. 04-cv-2016, 2005 WL 2335369 (W.D. Tenn. Sept. 23, 2005)....................23

*Arthur v. Maersk, Inc.*,
   434 F.3d 196 (3d Cir. 2006) ................................................................41

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................30

*Bowerman v. United Illuminating*,
   1998 WL 910271 (Conn. Super. Dec. 15, 1998)................................................26

*Bowman v. RAM Med., Inc.*,
   No. 10-4403, 2012 WL 1964452 (D.N.J. May 31, 2012) ...................................14

*In re Bristol-Myers Squibb Sec. Litig.*,
   228 F.R.D. 221 (D.N.J. 2005)...............................................................41

*Buck v. Hampton Twshp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) ................................................................36

*United States ex rel. Campie v. Gilead Sci., Inc.*,
   No. C-11-0941 EMC, 2015 U.S. Dist. LEXIS 1635 (N.D. Cal. Jan.
   7, 2015) ......................................................................................18

*Caraco Pharm. Labs, Ltd. v. Novo Nordisk*,
   566 U.S. 399 (2012)...........................................................................38

*Chaurasia v. Gen. Motors Corp.*,
   126 P.3d 165 (Ariz Ct. App. 2006)........................................................22

*Cloud Nine, LLC v. Whaley*,
   650 F. Supp. 2d 7889 (E.D. Tenn. 2009)...............................................23

iii

*Compex Int'l Co., Ltd. v. Taylor*,
  209 S.W.3d 462 (Ky. 2006)..................................................................20

*Cooper v. Medimetriks Pharms., Inc.*,
  No. 18-11987, 2019 WL 1370414 (D.N.J. Mar. 25, 2019) ...............10

*Cureton v. Nat'l Coll. Athl. Ass'n*,
  252 F.3d 267 (3d Cir. 2001) ..................................................................8

*Debernardis v. IQ Formulations*,
  942 F.3d 1076 (11th Cir. 2019) ...........................................................16

*Duncan v. Nw. Airlines, Inc.*,
  203 F.R.D. 601 (W.D. Wash. 2001) ....................................................27

*Evans v. Rich*,
  No. 5:13-CV-868-BO, 2014 WL 2535221 (E.D.N.C. June 5, 2014)....40

*Exela Pharma Scis., LLC v. Sandoz Inc.*,
  No. 1:19-CV-00318-MR, 2020 WL 5535026 (W.D.N.C. Sept. 15,
  2020) .....................................................................................................40

*In re Ford Motor Co. Ignition Switch Prods. Litig.*,
  39 F. Supp. 2d 458 (D.N.J. 1999)..........................................................7

*Foster v. JLG Indus.*,
  199 F. App'x 90 (3d Cir. 2006), *cert denied,* 551 U.S. 1104 (2007) ..................8

*In re Franklin Mut. Funds Fee Litig.*,
  388 F. Supp. 2d 451 (D.N.J. 2005).................................................11, 12

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on
  reconsideration*, No. 14-MC-2543, 2017 WL 3443623 (S.D.N.Y.
  Aug. 9, 2017) .......................................................................................31

*Grams v. Milk Prods, Inc.*,
  685 N.E.2d 172, 2004 WL 1418010 (Wisc. Ct. App. June 17,
  2004) .....................................................................................................20

*Guillot v. Aventis Pasteur, Inc.*,
  No. CIV.A. 02-3373, 2013 WL 4508003 (E.D. La. Aug. 22, 2013).....27

*Hanks v. Andrews*,
No. 05-cv-2275, 2006 WL 1371625 (D. Ariz. May 15, 2006)...........................30

*Hupp Corp. v. Metered Washer Serv.*,
472 P.2d 816 (Or. 1970) .................................................................22

*In re Insulin Pricing Litig.*,
2019 U.S. Dist. LEXIS 25185 (D.N.J. Feb. 15, 2019) .......................................13

*Irene v. Michael Whaley Interiors, Inc.*,
No. 19-cv-14998, 2020 WL 759573 (D.N.J. Feb. 13, 2020)............................31

*James v. Johnson & Johnson Consumer Co., Inc.*,
No. 2:10-cv-03049, 2011 WL 198026 (D.N.J. Jan. 20, 2011) ...........................14

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales
Practices & Liab. Litig.*,
903 F. 3d 278 (3d Cir. 2018) ...........................................................14

*Kelly v. Georgia-Pac. LLC*,
No. 7:08-cv-197, 2010 WL 11579013 (E.D.N.C. Aug. 31, 2010)....................22

*Koronthaly v. L'Oreal USA, Inc.*,
374 F. App'x 257 (3d Cir. 2010) ........................................................9

*Limestone Farms, Inc. v. Deere & Co.*,
29 P.3d 457 (Kan. Ct. App. 2001) ......................................................22

*Lorenz v. CSX Corp.*,
1 F.3d 1406 (3d Cir. 1993) ............................................................41

*Loreto v. Procter & Gamble Co.*,
515 F. App'x 576 (6th Cir. 2013) .......................................................40

*In re MacBook Keyboard Litig.*,
No. 5:18-cv-2813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)....................30

*In re Magnesium Oxide Antitrust Litig.*,
No. 10-cv-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011)............................10

*Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*,
823 F.3d 184 (3d Cir. 2016) ..............................................................7

v

*In re Metformin Mktg. and Sales Practices Litig.*,
   No. 2:20-cv-02324-MCA-MAH Order *slip op*. (Arleo, J.) .........................11, 17

*Midlothian Laboratories, L.L.C. v. Pamlab, L.L.C.*,
   509 F. Supp. 2d 1095 (M.D. Ala. 2007) *vacated in part on other
   grounds*, 509 F. Supp. 2d 1095 (M.D. Ala. 2007)...............................................39

*Miller v. Am. Art Clay Co. Inc.*,
   28 F. Supp. 3d 825 (W.D. Wisc. 2014) ............................................................20

*Milman v. FCA US LLC*,
   No. 18-cv-686, 2018 WL 5867481 (C.D. Cal. Aug. 30, 2018).........................30

*Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*,
   686 F.3d 1348 (Fed. Cir. 2012) ........................................................................36

*Mullin v. Balicki*,
   875 F.3d 140 (3d Cir. 2017) ................................................................................7

*Mylan Pharms., Inc. v. Thompson*,
   268 F.3d 1323 (Fed. Cir. 2001) ....................................................................37, 38

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ..............................................................................8

*Paz v. Brush Engineered Materials, Inc.*,
   949 So. 2d 1 (Miss. 2007)..................................................................................27

*In re Processed Egg Prods. Liab. Litig.*,
   851 F. Supp. 2d 867 (E.D. Pa. 2012)................................................................30

*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
   136 S. Ct. 1938 (2016).......................................................................................40

*Sagastume v. Psychemedics Corp.*,
   No. 20-cv-6624, 2020 WL 8175597 (C.D. Cal. Nov. 30, 2020)......................31

*Sefton v. Toyota Motor Sales U.S.A., Inc.*,
   No. 09-cv-3787, 2010 WL 1506709 (N.D. Ill. Apr. 14, 2010) .........................29

*Simpson v. Champion Petfoods USA, Inc.*,
   397 F. Supp. 3d 952 (E.D. Ky. 2019).............................................................20, 22

*Sinclair v. Merck & Co.*,
   948 A. 2d 587 (N.J. 2008) ...............................................................................27

*Solvay Pharms., Inc. v. Ethex Corp.*,
   No. Civ. 03-2836, 2004 WL 742033 (D. Minn. 2004)......................................39

*Soule v. Hilton Worldwide, Inc.*,
   1 F. Supp. 3d 1084 (D. Hi. 2014) ....................................................................29

*Stephens v. Reed*,
   121 F.2d 696 (3d Cir. 1941) .............................................................................8

*Takeda Pharm. Co. v. Zydus Pharms. USA Inc.*,
   No. CIV.A. 10-1723 JAP, 2011 WL 2115819 (D.N.J. May 25,
   2011) (Pisano, J.) ............................................................................................39

*Tigert v. Ranbaxy Pharms., Inc.*,
   Civ. No. 12-000154, 2012 WL 6595806 (D.N.J. Dec. 18, 2012)
   (Kugler, J.) .....................................................................................................40

*Traxler v. PPG Indus., Inc.*,
   158 F. Supp. 3d 607 (N.D. Ohio 2016) ............................................................23

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
   529 U.S. 765 (2000)........................................................................................11

*Weidman v. Ford Motor Co.*,
   No. 18-cv-12719, 2019 WL 3003693 (E.D. Mich. July 10, 2019) ...................23

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)........................................................................................17

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003).................................................................14

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ............................................................................36

*Wyeth v. Levine*,
   555 U.S. 555 (2009)........................................................................................40

**Statutes**

21 U.S.C. § 321(j) ................................................................................35

21 U.S.C. § 351(b) ..........................................................................34, 36

21 U.S.C. § 351(g) ...............................................................................34

21 U.S.C. § 352(g) ...............................................................................36

21 U.S.C. § 355(j)(5)(C)(ii) .............................................................38, 40

21 U.S.C. § 355(j)(7) ............................................................................37

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-392 ............35, 37, 38, 39

Ind. Code Ann. § 34-20-1-1 ..................................................................26

Kan. Stat. Ann. § 60-3302 ..............................................................10, 27

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 .......................6

Ohio Rev. Code Ann. § 2307.71(A)(7) ...................................................27

Tenn. Code Ann. § 29–28–102(6) (2008)...............................................27

Wash. Rev. Code. § 7.72.010 (2008).......................................................27

**Other Authorities**

21 CFR 314.3 ........................................................................................37

21 CFR 314.3(b) ...................................................................................35

21 CFR 314.53 ......................................................................................35

21 CFR 314.53 ......................................................................................37

21 CFR 314.161 ....................................................................................37

Fed. R. Civ. P. 12(b) ...............................................................................3

Fed. R. Civ. P. 15(a) ................................................................................7

Fed. R. Civ. P. 15(a)(2)............................................................................2

Fed. R. Evid. 201(b) ................................................................................... 36

https://www.usp.org/news/ .......................................................................... 36

Wright & Miller § 1486 ............................................................................... 7

## I.    INTRODUCTION

This Court should deny Plaintiffs' Motion for Leave to Amend Master Complaints [ECF No. 1148] (the "Motion to Amend"), or alternatively set conditions and limitations on Plaintiffs' proposed amendments and dismiss or strike non-conforming amendments with prejudice, because Plaintiffs have failed to follow the Court's clear guidance. The Court entered six Opinions [ECF Nos. 675, 728, 775, 818, 838, and 1019] ("MDT Opinions 1-6") and six Orders [ECF Nos. 676, 729, 776, 819, 839, and 1020] ("MTD Orders 1-6"), granting in part and denying in part Defendants' motions to dismiss. These MTD Opinions and MTD Orders repeatedly identified specific pleading defects and afforded Plaintiffs an opportunity to try to amend. Yet Plaintiffs have disregarded much of the Court's guidance, failing to cure the issues enumerated by the Court and inserting other amendments not contemplated by the Court that create new errors and prejudices.

Plaintiffs propose to file three amended Master Complaints to replace the three existing master pleadings: a Proposed Amended Master Valsartan Personal Injury Complaint [ECF No. 1148-1] ("PPIMC"); a Proposed Third Amended Consolidated Economic Loss Class Action Complaint [ECF No. 1148-3] ("PELMC"); and a Proposed Consolidated Second Amended Medical Monitoring Class Action Complaint [ECF No. 1148-5] ("PMMMC") (collectively, the "Proposed Master Complaints"). These pleadings perpetuate deficiencies of

1

standing, traceability, lack of privity, subsumption, and failure to state claims for negligence *per se* and unjust enrichment—all of which were detailed in the MTD Opinions and MTD Orders with a roadmap to fix Plaintiffs' pleadings. Having failed to cure the defects after clear notice and an opportunity to address them, Plaintiffs should be denied leave to include the same futile claims and allegations in their Proposed Master Complaints and the claims should be dismissed with prejudice.

The Proposed Master Complaints also seek to add a new theory of liability against the Manufacturer Defendants for allegedly failing to meet the standards of an "official compendium." These amendments were not contemplated by the MTD Opinions and MTD Orders and are futile and prejudicial, both because they fail to state a claim and, to the extent based on alleged non-conformance with the standards or requirements of the U.S. Food & Drug Administration's ("FDA") "Orange Book," because they are preempted by federal law.

For these reasons, the Motion to Amend does not satisfy the requirements of Federal Rule of Civil Procedure 15(a)(2) and applicable authority. In particular, the Proposed Master Complaints maintain or introduce six pleading defects:[1]

---

[1] As discussed below, each Proposed Master Complaint fails to cure serious pleading defects the Court identified in the MTD Opinions and MTD Orders, and interjects a new, unauthorized, and facially insufficient theory of liability the Court had no prior opportunity to consider. Thus, this opposition raises significant issues as to the legal sufficiency of Plaintiffs' proposed amendments, which issues the Court may in its discretion prefer to address in later motions to dismiss and to analyze Plaintiffs' specific allegations (which must be independently scrutinized as

<u>First</u>, the PELMC and PMMMC still assert claims that Plaintiffs lack standing to bring, including improper out-of-state claims, claims against Defendants to which the asserting Plaintiffs cannot trace their alleged injuries, and diminution-in-value claims that lack a factual basis for standing.

<u>Second</u>, the PPIMC, PELMC, and PMMMC all assert breach of warranty claims that fail to meet applicable States' privity requirements.

<u>Third</u>, the PELMC and PMMMC fail to cure their subsumed claims.

<u>Fourth</u>, the PELMC and PMMMC fail to exclude negligence *per se* claims asserted under the laws of States that do not recognize this theory.

<u>Fifth</u>, the PELMC fails to allege facts establishing no adequate remedy at law exists in those States requiring such an allegation for unjust enrichment.

<u>Sixth</u>, the PPIMC, PELMC, and PMMMC all add new allegations that the Manufacturer Defendants' valsartan failed to comply with "official compendium" standards set forth in the FDA's Orange Book or the United States Pharmacopeia—a theory that fails to state a claim and is preempted by federal law.

---

a matter of law) under Rule 12(b). Accordingly, depending on how the Court rules on Plaintiffs' Rule 15(a) motion and after Plaintiffs (if allowed to do so) have finalized their amendments into a new set of operative Proposed Master Complaints, the Manufacturer Defendants anticipate a Rule 12(b) motion directed to Plaintiffs' new facial pleading defects in their final form will be necessary.

3

The Manufacturer Defendants[2] therefore request that the Court either deny the Motion to Amend in its entirety, or, in the alternative, grant the Motion to Amend subject to the conditions and limitations that: (i) the foregoing claims and allegations Plaintiffs have failed to cure are dismissed with prejudice; (ii) Plaintiffs' new "official compendium" allegations and theory are disallowed; and (iii) Plaintiffs must conform the Proposed Master Complaints to the Court's ruling.

## II. BACKGROUND

### A. The Valsartan Litigation

This litigation centers around the alleged presence of nitrosamines in the Manufacturer Defendants' generic valsartan and valsartan combination prescription drugs. Plaintiffs to the PPIMC allege that they developed cancer as a result of ingesting Defendants' valsartan. Plaintiffs to the PELMC and PMMC assert claims on behalf of putative classes: (1) seeking reimbursement of amounts paid for

---

[2] The Manufacturer Defendants are Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., and Prinston Pharmaceutical, Inc., d/b/a Solco Healthcare LLC (collectively, the "ZHP Defendants"), Hetero Labs, Ltd., Hetero Drugs, Limited, Hetero USA Inc., and Camber Pharmaceuticals, Inc. (collectively, the "Hetero Defendants"), Mylan Laboratories, Ltd., Mylan N.V., and Mylan Pharmaceuticals, Inc. (collectively, the "Mylan Defendants"), Aurobindo Pharma, Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma, LLC (collectively, the "Aurobindo Defendants"), Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Arrow Pharm Malta Ltd., Actavis Pharma, Inc., Actavis, LLC, Torrent Pharmaceuticals, Ltd., and Torrent Pharma, Inc.

Defendants' valsartan; and (2) seeking the establishment of a fund to provide medical monitoring for those that have ingested valsartan.

**B.    The Manufacturer Defendants' Motions to Dismiss**

The Manufacturer Defendants filed a Motion to Dismiss on July 17, 2020 [ECF No. 520], seeking to dismiss Plaintiffs' then-operative Master Complaints for myriad pleading defects, including: (1) lack of standing; (2) lack of traceability; (3) lack of privity for breach of warranty claims; (4) subsumption; (5) preemption and primary jurisdiction; (6) inadequacy to plead fraud; (7) failure to allege design defect and failure-to-warn product liability claims; (8) failure to properly plead claims regarding negligence *per se*; (9) failure to properly plead express and implied warranty claims; (10) failure to adequately plead unjust enrichment; and (11) failure to adequately plead wrongful death, survival actions, loss of consortium, and claims for punitive damages. The Wholesaler Defendants and Pharmacy Defendants filed their own Motions to Dismiss [ECF Nos. 522 and 523, respectively] presenting additional grounds to dismiss the claims against them.

**C.    The Courts' Six MTD Opinions and MTD Orders Provide Guidance to Amend Plaintiffs' Complaints to Cure Pleading Deficiencies**

The Court issued its MTD Opinions and MTD Orders granting in part and denying in part Defendants' Motions to Dismiss between December 2020 and March 2021. The MTD Opinions and MTD Orders identify numerous defects in Plaintiffs' pleadings and offer guidance for Plaintiffs to fix the deficiencies, as follows:

5

- MTD Opinion 2 [ECF No. 728] and MTD Order 2 [ECF No. 729] dismissed Plaintiffs' out-of-state claims and one of Plaintiffs' economic loss theories for lack of standing, and dismissed Plaintiffs' claims against various Defendants for lack of traceability;

- MTD Opinion 3 [ECF No. 775] and MTD Order 3 [ECF No. 776] dismissed Plaintiffs' claims in the PIMC for breach of implied warranty under the laws of Kentucky and Wisconsin, as well as Plaintiffs' breach of implied warranty claims in the ELMC and MMMC under the laws of Alabama, Arizona, Idaho, Iowa, Kansas, Kentucky, Michigan, North Carolina, Ohio, Oregon, Tennessee, Utah, and Wisconsin, due to a lack of privity;

- MTD Opinion 3 and MTD Order 3 dismissed Plaintiffs' claims under the Magnuson-Moss Warranty Act in all three Master Complaints with prejudice;

- MTD Opinion 5 [ECF No. 838] and MTD Order 5 [ECF No. 839] dismissed Plaintiffs' Louisiana law claims in the ELMC as subsumed, and further dismissed as subsumed Plaintiffs' claims in the MMMC under the laws of Connecticut, Indiana, Kansas, Louisiana, Mississippi, New Jersey, Ohio, Tennessee, and Washington;

- MTD Opinion 5 and MTD Order 5 dismissed Plaintiffs' negligence *per se* claims with prejudice under the laws of Arkansas, Arizona, California, Massachusetts, Maine, Nebraska, Rhode Island, and Texas; and

- MTD Opinion 6 [ECF No. 1019] and MTD Order 6 [ECF No. 1020] dismissed Plaintiffs' unjust enrichment claims arising under the laws of Alabama, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Massachusetts, Mississippi, Oklahoma, South Carolina, and West Virginia.

In most instances, other than those claims dismissed with prejudice, the MTD Opinions and MTD Orders afforded Plaintiffs an opportunity to seek leave to amend to address the identified deficiencies. Plaintiffs' Motion for Leave and the accompanying Proposed Amended Complaints purport to address the issues

identified by the Court in the MTD Opinions and MTD Orders, but, as detailed below, fail to do so. Leave to amend should therefore be denied and Plaintiffs' uncured defective claims and allegations should be dismissed with prejudice.

### III.   ARGUMENT

#### A.   Legal Standard

Leave to amend under Rule 15(a) "is not automatic." *In re Ford Motor Co. Ignition Switch Prods. Litig.*, 39 F. Supp. 2d 458, 467 (D.N.J. 1999) (citations omitted). The Court may deny leave "upon a showing of 'undue delay, bad faith …, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1982)). Leave to amend also is not "all-or-nothing"; the Court may "impose reasonable conditions on the right to amend in lieu of a pure grant or denial," including "narrow[ing] the scope of the amendment if it considers the request too broad." *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017) (quoting Wright & Miller § 1486).

Of the six "*Foman* factors" considered on a motion for leave to amend, those most relevant here are failure to cure deficiencies, futility, and undue prejudice. To evaluate futility, the Court applies "the 'same standard of legal sufficiency' as would be applied to a motion to dismiss under Rule 12(b)(6)." *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Shane v. Fauver*,

7

213 F.3d 113, 115 (3d Cir. 2000)). If allowing amendment would "avail the petitioner nothing, or if an amended complaint is subject to summary dismissal, it being a mere matter of form whether an amended complaint was accepted and then dismissed or refused at the outset," denial of leave to amend is appropriate. *Stephens v. Reed*, 121 F.2d 696, 699 (3d Cir. 1941). Futility means the complaint, as amended, would fail to state a claim upon which relief can be granted. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

With respect to prejudice, the Court should deny leave to amend where permitting the amendments would impose "hardship to the defendants," including "additional discovery, cost, and preparation to defend against new facts or new theories[.]" *Cureton v. Nat'l Coll. Athl. Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).[3] It is prejudicial to require a defendant to incur the delay and expense of addressing uncured pleading deficiencies where the plaintiff has been given notice of the defects and has failed to cure through amendment after an opportunity to do so. *See Foster v. JLG Indus.*, 199 F. App'x 90 (3d Cir. 2006), *cert denied*, 551 U.S. 1104 (2007).

---

[3] The PELMC and PMMMC add numerous additional putative class representative Plaintiffs. Though this entails additional discovery, cost, and preparation, the Manufacturer Defendants do not object to the inclusion of additional putative Plaintiffs (subject to the Manufacturer Defendants' other arguments herein), so long as the case management schedule accommodates the necessity of additional discovery with respect to these Plaintiffs.

**B.      The Court Should Deny Leave to Amend Because the PELMC and PMMMC Have Failed to Cure Their Standing Defects Under MTD Opinion 2**

The PELMC and PMMMC fail to address the facial pleading defects this Court identified in MTD Opinion 2 and MTD Order 2 with respect to Plaintiffs' lack of Article III standing, and introduce new standing errors into their amended allegations. Plaintiffs still seek to assert claims under the laws of states in which Plaintiffs do not reside and were not injured, continue to assert claims Plaintiffs cannot trace to the Defendants they are suing, and assert third-party payor ("TPP") claims Plaintiffs have affirmatively stipulated they are not pursuing and which are untraceable to the conduct of the Defendants the TPPs are suing. To satisfy Article III standing, a plaintiff must allege: "(1) an injury-in-fact that is actual or imminent and concrete and particularized, not conjectural or hypothetical, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision." *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010). The PELMC and PMMMC do not meet this obligation.

**1.      Plaintiffs Continue to Assert State-Specific Claims Under the Laws of Unrepresented States and Territories**

Ignoring this Court's prior ruling, both the PELMC and PMMMC continue to assert state-specific claims under the laws of all fifty states, Washington, D.C., and Puerto Rico for breach of express warranty, breach of implied warranty, and violation of state consumer protection laws. (*See* PELMC ¶¶ 628, 639, 645, 663,

9

736, 754; PMMMC ¶¶ 639, 660). This Court unequivocally closed the door to such claims in MTD Opinion 2, dismissing "for want of standing" all claims asserted under the laws of States in which Plaintiffs "neither reside … nor have alleged they suffered an injury[.]" (MTD Opinion 2 at 19). That ruling is well-founded, as class representatives only have standing to sue under the laws of those states in which they reside or were injured. *See Cooper v. Medimetriks Pharms., Inc.*, No. 18-11987, 2019 WL 1370414, at *4, (D.N.J. Mar. 25, 2019); *In re Magnesium Oxide Antitrust Litig.*, No. 10-cv-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011).

There are 29 states and territories unrepresented by any putative PELMC class representative, and 42 states and territories unrepresented by any putative PMMMC class representatives. *See* Charts (attached hereto as **Exhibit A**) at 1-2. Leave to amend should be denied as to these unrepresented states and territories, and all claims asserted by Plaintiffs under their laws should be dismissed with prejudice.

Additionally, as set forth in § III.D.2, *infra*, Plaintiff Richard O'Neill's claims as a resident of Kansas and putative class representative in the PMMMC on behalf of a putative Kansas sub-class (*see* PMMMC ¶¶ 558, 561), are subsumed by the Kansas Products Liability Act. Plaintiffs have not amended to assert any claims under the Kansas Products Liability Act, and medical monitoring is not a cognizable injury under the statute. *See* Kan. Stat. Ann. § 60-3302. As such, Plaintiff O'Neill fails to allege a cognizable "injury-in-fact" traceable to any Defendant and

redressable by any asserted common law claim under Kansas state law, and therefore lacks standing to assert the PMMMC claims. Accordingly, Kansas should be added to the other 42 states to be dismissed from the PMMC with prejudice.

### 2. Plaintiffs Cannot Trace Their Claims from at Least One Injured Plaintiff to All Defendants in Each State

Plaintiffs' attempts to cure the element of "traceability" also fall short. To satisfy Article III standing, Plaintiffs must establish, at a minimum, "a fairly traceable connection between the alleged injury in fact and the alleged conduct of the Defendant." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). That applies with equal force to class actions. *See In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005), as amended (Sept. 22, 2005). Indeed, just days ago, this Court re-confirmed the necessity of tracing a putative class representative's injury to each named Defendant in a similar MDL asserting nearly identical economic loss claims based on plaintiffs' alleged purchase of NDMA-contaminated metformin. *See In re Metformin Mktg. and Sales Practices Litig.*, No. 2:20-cv-02324-MCA-MAH Order *slip op.* at 4 (Arleo, J.) (attached hereto as **Exhibit B**) (holding that, to establish Article III standing, plaintiffs must "connect each Defendants' [sic] actions to at least one injured Plaintiff[.]"). Likewise, in MTD Opinion 2, this Court found that Plaintiffs "have failed to trace their injuries to many of the Defendants in this case beyond conclusory allegations that lump Defendants together… [and] do not show that one of the named Plaintiffs has alleged an injury

11

that is traceable to each of the named Defendants." (MTD Opinion 2 at 17). As a result, Plaintiffs' allegations "do not show that the named Plaintiffs can assert their own direct claim against a named Defendant." (*Id.*).

Each Plaintiff now attempts to trace his or her alleged injury to specific Defendants. (*See* PELMC ¶¶ 14-58; PMMMC ¶¶ 396[sic]-412[sic]). Yet many Defendants remain to whom no Plaintiff has traced an injury. There are five such untraced Defendants named in the PELMC, and eleven named in the PMMMC. *See* Charts at 3-4. Leave to amend should be denied as to these untraced Defendants and all claims against them should be dismissed with prejudice.[4]

Moreover, Plaintiffs' amendments create a new traceability problem in the form of individual Plaintiffs purporting to represent putative statewide sub-classes naming Defendants to whom no putative class representative in that State can trace an injury. As discussed in § III.B.1, *supra*, individual putative class representatives only have standing to assert claims under the laws of a state in which they reside or were injured. Likewise, they only have standing to assert claims against those defendants to whom they can trace their injuries. *See In re Franklin*, 388 F. Supp. 2d at 461; MTD Opinion 2 at 17. Yet the PELMC and PMMMC purport to create

---

[4] No Plaintiff in the PMMMC traces an injury to the following Manufacturer Defendants: Arrow Pharma Malta, Ltd., Torrent Pharma, Inc., and Torrent Pharmaceuticals Ltd. *See* Chart at 4.

statewide sub-classes against **all** Defendants for each state in which **any** named Plaintiff resides—without regard to whether the named Plaintiffs in that state can trace their injuries to each Defendant. (*See* PELMC ¶¶ 607-08; PMMMC ¶¶ 560-61). The PMMMC further attempts to create statewide subclasses in 40 **unrepresented** states and territories with **no** named Plaintiffs. *Compare* PMMMC ¶ 560 *with* Charts at 2, 21-26.

These new allegations in the PELMC and the PMMMC impermissibly assert state-law claims which the named Plaintiffs (if any) for the given state seek to lead in representative capacity on behalf of a putative statewide sub-class, against multiple individual Defendants to whom they cannot trace their injuries. *In re Insulin Pricing Litig.*, 2019 U.S. Dist. LEXIS 25185, at *55 (D.N.J. Feb. 15, 2019). The result is putative state-specific claims against as many as 16 named Defendants to whom **no** injury is traceable in that state. *See* Charts at 5-20 (PELMC), 21-26 (PMMMC). Leave to amend should be denied as to each untraced Defendant in each state and the respective state-law claims against the individual Defendants should be dismissed with prejudice.

### 3. The PELMC Continues to Assert an Insufficient Theory of Loss Based on Receipt of a "Less Valuable" Product

The PELMC further persists in asserting a theory the Court found insufficient when it held that Plaintiffs' second theory of economic loss for "the receipt of a less valuable product" was "insufficient to confer standing" because Plaintiffs failed to

"provide[] a theory for the factfinder to value" their purported injury. (MTD Opinion 2 at 13). To establish an economic injury-in-fact, a plaintiff must "allege facts that would permit the factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F. 3d 278, 280-1 (3d Cir. 2018). Yet the PELMC alleges no such facts. It simply persists in asserting, in language nearly identical to its predecessor version, that "[a]t a minimum, contaminated, adulterated, misbranded and/or unapproved VCDs were worth less than their non-contaminated equivalents." (PELMC ¶ 425). Only the word "contaminated" is new. The PELMC also continues to assert, unchanged from its predecessor, that Defendants' drugs "were so inherently flawed, unfit, or unmerchantable as to have significantly diminished or no intrinsic market value." (PELMC ¶¶ 642, 660, 672). The PELMC contains no factual allegations that would permit the factfinder to value the diminution in value, as MTD Opinion 2 requires.

Once a product has been purchased and consumed, and has functioned as intended without causing any adverse health consequences, the user can hypothesize no factual basis to value an actual injury. *See James v. Johnson & Johnson Consumer Co., Inc.*, No. 2:10-cv-03049, 2011 WL 198026, at *2 (D.N.J. Jan. 20, 2011); *Bowman v. RAM Med., Inc.*, No. 10-4403, 2012 WL 1964452, at *1, *3 (D.N.J. May 31, 2012); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 172, 176 (D.D.C.

14

2003). Accordingly, leave to amend should be denied and Plaintiffs' second theory of economic loss should be dismissed with prejudice.

### 4. The PELMC's TPP Plaintiffs Fail to Allege Out-of-State Standing and Traceability

The PELMC includes two putative TPP class representatives: MSP Recovery Claims, Series LLC ("MSPRC") and Maine Automobile Dealers Association, Inc. ("MADA"). (*See* PELMC ¶¶ 59-72). These TPP Plaintiffs purport to assert claims arising out of reimbursements paid on behalf of their plan members for Defendants' valsartan drugs, but their claims suffer from similar standing defects as the individual named Plaintiffs. Specifically, they assert improper out-of-state standing and name Defendants to whom they have not traced any cognizable injuries.

MSPRC and MADA seek to represent a nationwide TPP subclass and unspecified state sub-classes, asserting claims under the laws of all 50 States, Washington, D.C., and Puerto Rico. (PELMC ¶¶ 606-08, 628, 639, 645, 663, 736, 754). Yet neither TPP Plaintiff purports to reside in or to have paid for valsartan in every state or territory. MSPRC purports to sue as the assignee of three specific Medicare Advantage Organization ("MAO") plans, operating in Connecticut, Ohio, and New York. (*See* PELMC ¶¶ 62-65 (identifying EmblemHealth, Summacare, and Connecticare as assignors)). To avoid broader discovery obligations, MSPRC has affirmatively stipulated that the ***only*** claims it asserts in this case are the claims of these three at-issue assignor MAOs, and has excluded and dismissed any other TPP

15

claims it may possess by assignment. (*See* ECF No. 650 ¶¶ 1-2, 4-6). Yet contrary to this stipulation, the PELMC attempts to assert economic losses for reimbursements in 28 *additional* states and territories outside of the Connecticut, Ohio, and New York areas in which the at-issue assignor MAOs paid their reimbursements. (PELMC ¶ 67). MSPRC has alleged no factual basis to assert out-of-state claims under the laws of any state other than Connecticut, Ohio, and New York, and leave to amend to add other states should be denied.

As for MADA, it alleges that it was organized under Maine law and operates out of Maine. (PELMC ¶ 69). Though MADA purports to have reimbursed payments on behalf of members located in Maine, Florida, and New Jersey, it does not allege that it issued payments from or suffered alleged economic losses anywhere other than its home state of Maine. (*Id*. ¶ 71). Accordingly, MADA has alleged no factual basis to assert out-of-state claims under the laws of any state other than Maine, and leave to amend to add other states should be denied.

With respect to traceability, though the PELMC has added "exemplar" reimbursement details (*see* PELMC ¶¶ 68, 72), it has failed to trace these exemplars to all Defendants, or to trace the Manufacturer Defendants' conduct to any cognizable loss incurred *by* the TPP Plaintiffs. The Court held in MTD Opinion 2 that the Eleventh Circuit ruling on which Plaintiffs rely, *Debernardis v. IQ Formulations*, 942 F.3d 1076, 1088 (11th Cir. 2019), "stands for the proposition that

16

named plaintiffs must allege facts that show *their* injuries are fairly traceable to *each defendants'* conduct." (MTD Opinion 2 at 18 (emphases added)).

Here, at best, the TPP Plaintiffs trace the Manufacturer Defendants' conduct to putative injuries incurred by the TPPs' *members*, not the TPPs themselves. This Court found the sale of allegedly impure valsartan drugs could constitute an economic injury to consumers who allegedly "did not receive" the "benefits" of ingesting "unadulterated, properly branded, cGMP compliant and therapeutically equivalent" drugs. (*Id*. at 14). But the TPP Plaintiffs are not consumers of the valsartan drugs they reimburse, and do not allege facts tracing the Manufacturer Defendants' conduct to a "distinct and palpable" loss to the TPPs. *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (internal quotations omitted). MSPRC and MADA allege only that they reimbursed their members' valsartan purchases. (*See* PELMC ¶¶ 59-72). They do not allege they had to reimburse new or additional purchases or pay anything more as a result of alleged impurities. The source of the TPPs' economic loss, separate from the consumers' putative loss, is absent, and they cannot rely on the consumers' putative injuries for standing. *See In re Metformin*, *slip op*. at 3 ("[A] class representative must show that they themselves suffered an injury and cannot merely rely upon the standing of individuals in the proposed class[.]" (*citing Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016)).

Moreover, allegations of adulteration, misbranding, or noncompliance with cGMPs cannot as a matter of law provide a basis for economic recovery of reimbursed Medicare payments, because "all that is required [for Medicare payment] is that a drug be approved by the FDA." *United States ex rel. Campie v. Gilead Sci., Inc.*, No. C-11-0941 EMC, 2015 U.S. Dist. LEXIS 1635, at *39-41 (N.D. Cal. Jan. 7, 2015) (rejecting False Claims Act claim for recovery of Medicare payments for allegedly adulterated drugs). What a TPP bargains for, in short, is reimbursement of an FDA-approved drug, ***not*** reimbursement of an "unadulterated, properly branded, cGMP compliant and therapeutically equivalent" drug. The TPP Plaintiffs do not dispute that the valsartan purchases they reimbursed were FDA-approved drugs, and thus have not alleged that the Manufacturer Defendants' alleged conduct is traceable to any distinct and palpable economic loss incurred by MSPRC or MADA.

Because Plaintiffs lack standing with respect to their out-of-state claims and their claims against all Defendants to whom they have not traced a distinct injury, and they have failed to cure their standing deficiencies after notice and an opportunity to amend, the out-of-state and untraced claims asserted in the PELMC and PMMMC are futile. It would be prejudicial to require Defendants and the Court to incur the time, expense, and effort of addressing claims this Court has already held Plaintiffs lack standing to assert. Accordingly, the Court should deny leave to amend, dismiss all of Plaintiffs' out-of-state claims with prejudice, dismiss all claims

against Defendants to whom no Plaintiff has traced an injury with prejudice, and dismiss all state-specific claims (including statewide sub-class claims) against all Defendants to whom no Plaintiff in the state has traced an injury with prejudice.

**C.    Plaintiffs' Failure to Allege Privity with Regard to the States Identified in MTD Opinion 3 Is Fatal to Plaintiffs' Amended Implied Warranty Claims Arising Under the Applicable States' Laws**

In MTD Opinion 3 and MTD Order 3, the Court dismissed for lack of privity Plaintiffs' implied warranty claims from the PIMC arising under Kentucky and Wisconsin law, as well as the implied warranty claims from the ELMC and MMMC arising under the laws of Alabama, Arizona, Idaho, Iowa, Kansas, Kentucky, Michigan, North Carolina, Ohio, Oregon, Tennessee, Utah, and Wisconsin. (MTD Opinion 3 at 20, 22). The Court permitted Plaintiffs to amend their implied warranty claims in order to "plead[] this required element." (*Id*. at 22). The Proposed Amended Complaints, however, fail to cure the absence of privity.

**1.    The PPIMC Fails to Cure Plaintiffs' Lack of Privity**

The PPIMC asserts breach of implied warranty claims under the laws of "[a]ll States and Territories, except Connecticut, Kansas, Louisiana, Mississippi, New Jersey, Ohio, Tennessee, and Washington." (PPIMC Count VII). In an attempt to salvage their claims under the laws of Kentucky and Wisconsin, Plaintiffs conclusorily allege that "[t]he defendants stand in direct contractual privity with consumers, insofar as defendants are the entities that dispensed and received

19

payment for adulterated and/or misbranded VCDs for which consumers paid and TPPs reimbursed." (*Id*. ¶ 662). That is not privity. Plaintiffs do not and cannot allege that they purchased their valsartan drugs from the Manufacturer Defendants—they admit as much in the PELMC by showing a diagram depicting the prescription drug supply chain. (*See* PELMC ¶ 155).

Where, as here, Plaintiffs did not purchase their drugs from the Manufacturer Defendants, there can be no implied warranty claims under Kentucky or Wisconsin law. *See Compex Int'l Co., Ltd. v. Taylor*, 209 S.W.3d 462, 463, 465 (Ky. 2006) (dismissing implied warranty claim against manufacturer of allegedly defective chair because there was no privity between the manufacturer defendant and the plaintiff buyer, who purchased the chair from K-Mart); *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 970 (E.D. Ky. 2019) (dismissing implied warranty claim where "there [was] no dispute that [the plaintiff] purchased [the manufacturer defendant's] products at various retail stores" and not directly from the manufacturer defendant); *Grams v. Milk Prods, Inc.*, 685 N.E.2d 172 (Table), 2004 WL 1418010, at *4 (Wisc. Ct. App. June 17, 2004) (affirming dismissal of the plaintiff's implied warranty claim where the manufacturer defendant contracted with a third-party who sold the allegedly defective product to plaintiff, the ultimate consumer, finding no privity of contract); *Miller v. Am. Art Clay Co. Inc.*, 28 F. Supp. 3d 825, 829 (W.D. Wisc. 2014) (dismissing implied warranty claim against

manufacturer of talc used in another defendant's clay on the grounds that there was no privity between the plaintiff and the talc manufacturer defendant). In failing to allege that Plaintiffs purchased their drugs directly from Manufacturer Defendants, Plaintiffs' implied warranty claims premised on Kentucky and Wisconsin are futile. Leave to amend should be denied and the PILMC's implied warranty claims under Kentucky and Wisconsin law should be dismissed with prejudice.

### 2. The PELMC and PMMMC Fail to Cure Plaintiffs' Lack of Privity

The PELMC and PMMMC still purport to bring implied warranty claims under the laws of every state. (*See* PELMC ¶¶ 645, 663; PMMMC ¶ 639). Lack of standing aside, *see* § III.B.1, *supra*, Plaintiffs' allegations still lack the "required element" of privity in the twelve states identified in MTD Opinion 3. (MTD Opinion 3 at 22). Plaintiffs attempt to circumvent this element by arguing that they are third-party beneficiaries of all contracts between the Manufacturer Defendants and the Wholesaler and Retailer Defendants. (PELMC ¶¶ 651-53, 666-68; PMMMC ¶¶ 645-47). That effort to evade the privity requirement fails.

First, even after considering third-party beneficiary theories, the Court has already concluded that privity is a required element of implied warranty claims seeking damages for economic loss in Alabama, Arizona, Idaho, Iowa, Kansas, Kentucky, Michigan, North Carolina, Ohio, Oregon, Tennessee, Utah, and

Wisconsin. (MTD Opinion 3 at 22). Plaintiffs' failure to plead facts in support of this *prima facie* element of their claim is fatal.

Second, the states for which Plaintiffs must plead privity have either not found a third-party beneficiary exception to the privity requirement, rejected such arguments, or found allegations similar to those in the PELMC and the PMMMC insufficient to confer third-party beneficiary status. In Arizona, the ***only*** exception to the privity requirement for implied warranty claims is "for certain personally injured plaintiffs." *Chaurasia v. Gen. Motors Corp*., 126 P.3d 165, 171 (Ariz Ct. App. 2006). Oregon courts have similarly held. *See Hupp Corp. v. Metered Washer Serv.*, 472 P.2d 816, 817 (Or. 1970) (holding that ultimate purchaser cannot recover from the manufacturer defendant for economic loss on an implied warranty claim). Likewise, in Kansas, implied warranties extend only to persons "who suffer personal, as opposed to economic, injury," and therefore do not cover third-party beneficiary economic injury claims. *Limestone Farms, Inc. v. Deere & Co.*, 29 P.3d 457, 461 (Kan. Ct. App. 2001) (rejecting plaintiffs' intended third-party beneficiary implied warranty claims). Kentucky and North Carolina also only extend third-party beneficiary status to plaintiffs in personal injury actions. *See Simpson*, 397 F. Supp. 3d at 964-65, 969 (rejecting the extension of third-party beneficiary status to plaintiffs in economic loss cases under Kentucky law); *Kelly v. Georgia-Pac. LLC*, No. 7:08-cv-197, 2010 WL 11579013, at *6–7 (E.D.N.C. Aug. 31, 2010) (declining

22

to extend third-party beneficiary theory to the privity requirement of implied warranty claims where only economic loss is sought).

Ohio has "rejected the argument regarding third-party beneficiaries" with respect to the privity requirement altogether. *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 625-26 (N.D. Ohio 2016) (citing *Savett v. Whirlpool Corp.*, No. 12-cv-310, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012)) (stating that *Savett* Court "found no reason to carve out this new exception"). Tennessee and Alabama also do not recognize any exception to the privity requirement. *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-cv-2016, 2005 WL 2335369, at *8 (W.D. Tenn. Sept. 23, 2005) (dismissing implied warranty claim and stating that "[t]he Court has found no opinion in which a Tennessee court has held that in the absence of privity a plaintiff could bring a claim for breach of an implied warranty to recover only economic damages, nor has the Plaintiff cited to any such authority"); *see also Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 7889, 795 (E.D. Tenn. 2009) (finding the plaintiff's third-party beneficiary argument unavailing); *Weidman v. Ford Motor Co.*, No. 18-cv-12719, 2019 WL 3003693, at *4 (E.D. Mich. July 10, 2019) (applying Alabama law) (quoting *Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1087 (Ala. 2003)) (noting the "absence of authority" to contradict longstanding Alabama law that there can be no implied warranty claim "against a

23

manufacturer who was not involved in the transaction pursuant to which the complaining party purchased the product").

Other States, like Idaho, allow a third-party beneficiary exception where it is properly pled. But to plead such a claim, the plaintiff must "demonstrate that a contract was made expressly for its benefit," that is, "the contract itself must express an intent to benefit the third party." *American West Enterprises, Inc. v. CNH, LLC*, 316 P.3d 662, 668-69 (Idaho 2013). The PELMC and PMMMC lack any factual allegations pointing to language in any agreement between the Manufacturer Defendants and other downstream Defendants indicating that the contract was made primarily and expressly for Plaintiffs' benefit.

Because the PELMC and PMMMC have not alleged direct privity between Plaintiffs and the Manufacturer Defendants, and have not alleged any cognizable third-party beneficiary exception under the applicable states' laws, their implied warranty claims are futile in those states requiring privity. Leave to amend should be denied and the PELMC's and PMMMC's implied warranty claims under the laws of Alabama, Arizona, Idaho, Iowa, Kansas, Kentucky, Michigan, North Carolina, Ohio, Oregon, Tennessee, Utah, and Wisconsin should be dismissed with prejudice.

**D.     The Court Should Deny Leave to Amend Plaintiffs' Subsumed Claims Identified in MTD Opinion 5 Because the PELMC and PMMMC Fail to Plead Claims Under the Applicable States' Product Liability Acts**

In MTD Opinion 5 and MTD Order 5, the Court dismissed as subsumed all

claims in the ELMC arising under Louisiana law, and numerous claims in the MMMC arising under the laws of Connecticut, Indiana, Kansas, Louisiana, Mississippi, New Jersey, Ohio, Tennessee, Washington. (MTD Order 5 at 2-4). Unlike the PPIMC, which proposes amendments to address MTD Opinion 5 and adds claims under states' Product Liability Acts (*see* PPIMC ¶¶ 765-805), the PELMC and PMMMC have made no attempt to cure their subsumed claims.

### 1.   The PELMC Has Failed to Cure the Subsumption of Claims Under Louisiana Law

The PELMC asserts no claims under the Louisiana Products Liability Act and does not exclude Louisiana from the common law claims asserted by Plaintiffs. *See* PELMC ¶¶ 558-684. This Court has already held the PELMC's common law claims for breach of express warranty, breach of implied warranty, fraud, negligent misrepresentation, unjust enrichment, negligence, and negligence *per se* are subsumed. (MTD Opinion 5 at 22). Having failed to cure the deficiency, leave to amend should be denied and Plaintiffs' claims under Louisiana law should be dismissed with prejudice from the PELMC.

### 2.   The PMMMC Has Failed to Cure the Subsumption of Claims Under Nine States' Laws

The PMMMC does not add any claims under any states' Product Liability Acts to address the Court's ruling dismissing as subsumed, in whole or in part, Plaintiffs' claims arising under the laws of Connecticut, Indiana, Kansas, Louisiana,

25

Mississippi, New Jersey, Ohio, Tennessee, and Washington. (MTD Order 5 at 2-4). Instead, the PMMMC persists in asserting the same common law claims the Court held subsumed, and unlike the PPIMC, does not exclude the subsumed states' claims from the PMMMC's common law claims.[5] (*See* PMMMC ¶¶ 558-684).

Because the PMMMC fails to cure the subsumption deficiencies identified by the Court, leave to amend should be denied and the subsumed claims should be dismissed with prejudice. Subsumption requires dismissal of Plaintiffs' common law claims with prejudice, as the applicable states' Product Liability Acts are the only path to recovery available to Plaintiffs. Plaintiffs' failure to allege claims under the subject states' acts in the PMMMC indicates their inability to do so because they cannot allege injuries cognizable under these states' product liability laws:

- **Connecticut**. Medical monitoring is not a cognizable injury under the Connecticut Product Liability Act. *Bowerman v. United Illuminating*, 1998 WL 910271, at *10 (Conn. Super. Dec. 15, 1998).

- **Indiana**. The Indiana Product Liability Act requires "physical harm caused by a product." Ind. Code Ann. § 34-20-1-1.

---

[5] MTD Order 5 dismissed from the MMMC as subsumed: (1) all claims arising under the laws of Connecticut, Kansas, Louisiana and Tennessee; (2) all claims except fraud arising under Washington, Mississippi and Ohio law; (3) all claims except breach of express and implied warranty arising under Indiana law; and (4) all claims except breach express and implied warranty arising under New Jersey law. The PMMMC retains all common law claims against each of these States (*see* PMMMC ¶¶ 558, 560), other than the standalone claim for medical monitoring, which the PMMMC dismisses as to, *inter alia*, Louisiana, Mississippi, and New Jersey. (*See* PMMMC, Fourth Claim for Relief, at 200 n. 209).

- **Kansas**. "Harm" under the Kansas Product Liability Act requires "property damage," "personal physical injuries, illness and death" or "mental anguish or emotional harm attendant to such personal physical injuries, illness or death." Kan. Stat. Ann. § 60-3302.

- **Louisiana**. Damage under the Louisiana Product Liability Act "exclude[s] future medical monitoring for asymptomatic plaintiffs." *Guillot v. Aventis Pasteur, Inc*., No. CIV.A. 02-3373, 2013 WL 4508003, at \*7 (E.D. La. Aug. 22, 2013).

- **Mississippi**. "Mississippi law does not recognize a claim for medical monitoring based on increased risk of future disease." *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 5 (Miss. 2007).

- **New Jersey**. Medical monitoring is not a cognizable injury under the New Jersey Product Liability Act. *See Sinclair v. Merck & Co.*, 948 A. 2d 587, 595 (N.J. 2008).

- **Ohio**. Cognizable "[h]arm" under the Ohio statute "means death, physical injury to person, serious emotional distress, or physical damage to property." Ohio Rev. Code Ann. § 2307.71(A)(7).

- **Tennessee**. A "[p]roduct liability action" under the Tennessee statute includes actions "on account of personal injury, death or property damage." Tenn. Code Ann. § 29–28–102(6) (2008).

- **Washington**. "Harm" under the Washington statute "includes any damages recognized by the courts of this state[.]" Wash. Rev. Code. § 7.72.010 (2008). Washington courts require "present, existing injury" for a medical monitoring claim. *Duncan v. Nw. Airlines, Inc*., 203 F.R.D. 601, 609 (W.D. Wash. 2001).

As Plaintiffs allege no cognizable injury under the subject States' Product Liability Acts, amendment of the PMMMC as to these claims would be futile, and defense of the already-subsumed common law claims would be prejudicial. The Court should deny leave to amend and dismiss the subsumed claims with prejudice.

27

E.     **The Court Should Deny Leave to Amend to the Extent Plaintiffs Fail to Address the Absence of an Independent Cause of Action for Negligence *Per Se* as Required by MTD Opinion 5**

MTD Opinion 5 and MTD Order 5 dismissed with prejudice Plaintiffs' separate negligence *per se* claims under the laws of Arkansas, Arizona, California, Massachusetts, Maine, Nebraska, Rhode Island, and Texas. (*See* MTD Opinion 5 at 30). Yet, in the PELMC and PMMMC, Plaintiffs fail to exclude these States from their negligence *per se* claims. (*See* PELMC ¶¶ 584-91; PMMMC ¶¶ 806-13). Amendment of these claims would be futile, as the eight identified states do not recognize a standalone cause of action for negligence *per se*. Accordingly, leave to amend should be denied and Plaintiffs' negligence *per se* claims should remain dismissed with prejudice with respect to those eight states.

F.     **Plaintiffs' Failure to Allege the Absence of an Adequate Remedy at Law as Required by MTD Opinion 6 is Fatal to Plaintiffs' Amended Unjust Enrichment Claims in Those States Requiring Such Allegations**

In MTD Opinion 6, the Court dismissed Plaintiffs' "unjust enrichment claims arising under the laws of Florida, Iowa, Kansas, and Louisiana because these states require pleading no adequate remedy at law exists." (MTD Opinion 6 at 30). The Court further dismissed Plaintiffs' unjust enrichment claims "arising under the laws of Alabama, Florida, Hawaii, Idaho, Illinois, Louisiana, Massachusetts, Mississippi, Oklahoma, South Carolina, and West Virginia because these states prohibit the pleading of an unjust enrichment claim when an adequate remedy at law exists." (*Id*.

28

at 33). In each instance, the Court granted Plaintiffs leave to amend to the extent they could plead no adequate remedy at law exists. (*Id*. at 30, 33). The PELMC fails to plead any factual allegations demonstrating the absence of an adequate remedy at law, and therefore fails to cure the insufficient pleading.

Substantively, the unjust enrichment claims in the PELMC (*see* PELMC ¶¶ 770-785) are the same as those in the predecessor ELMC, except for the addition of a conclusory allegation that Plaintiffs have no adequate remedy at law and that the claim is pled in the alternative. (*Id*. ¶¶ 776-77, 784-85). These additional, non-factual allegations still fail to state a claim upon which relief can be granted. Plaintiffs must allege ***facts*** demonstrating that they have no adequate remedy at law, either to satisfy a necessary element of the cause of action or as a prerequisite to bringing the claim. *See, e.g. Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1103 (D. Hi. 2014) (dismissing unjust enrichment claim where the plaintiff failed to indicate that potential damages for other claims would be inadequate and further finding that the claim for unjust enrichment could not even be pled in the alternative, because "Hawaii law makes clear that the absence of an adequate remedy at law is a necessary prerequisite to maintaining an unjust enrichment claim"); *Sefton v. Toyota Motor Sales U.S.A., Inc.*, No. 09-cv-3787, 2010 WL 1506709, at *6 (N.D. Ill. Apr.

29

14, 2010) (dismissing unjust enrichment claim where the plaintiff alleged in a conclusory manner that she had no adequate remedy at law with no explanation).[6]

Although Plaintiffs offer the conclusory allegation that they "do not have [sic] adequate remedy at law" (PELMC ¶¶ 777, 785), the absence of facts to support their bald, threadbare conclusion means it should be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[L]egal conclusions can provide the complaint's framework, but they must be supported by factual allegations."). Notably, Plaintiffs fail to allege how monetary damages potentially afforded by their myriad other claims are not adequate. *See In re MacBook Keyboard Litig.*, No. 5:18-cv-2813, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ("Courts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect, and reject the argument that injunctive relief . . . is appropriate."). Plaintiffs' "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S at 678 (citation omitted). Even claims pled in the alternative must be sufficiently

---

[6] *See also In re Processed Egg Prods. Liab. Litig.*, 851 F. Supp. 2d 867, 917-18 (E.D. Pa. 2012) ("Plaintiffs must allege facts which, taken as true, plausibly suggest this element of the [unjust enrichment] claim"); *Milman v. FCA US LLC*, No. 18-cv-686, 2018 WL 5867481, at *15 (C.D. Cal. Aug. 30, 2018) (dismissing claim for unjust enrichment that was pled in the alternative where the plaintiff merely "allege[d] in a conclusory fashion" that the plaintiff had no adequate remedy at law and failed to allege how monetary damages were unavailable to the plaintiff); *Hanks v. Andrews*, No. 05-cv-2275, 2006 WL 1371625, at * 5 (D. Ariz. May 15, 2006) (dismissing unjust enrichment claim where the plaintiff failed to allege "how there is no adequate remedy at law").

pled. *See Irene v. Michael Whaley Interiors, Inc.*, No. 19-cv-14998, 2020 WL 759573, at *2 (D.N.J. Feb. 13, 2020) (stating that alternative claims must satisfy federal pleading standards); *Sagastume v. Psychemedics Corp.*, No. 20-cv-6624, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) (same).[7]

Because Plaintiffs have failed to allege facts demonstrating that they have no adequate remedy at law, their unjust enrichment claims arising under the laws of Alabama, Florida, Hawaii, Idaho, Iowa, Illinois, Kansas, Louisiana, Massachusetts, Mississippi, Oklahoma, South Carolina, and West Virginia are futile and the defense of claims the Court already found insufficient is prejudicial. Leave to amend should be denied and the Court should dismiss with prejudice Plaintiffs' unjust enrichment claims under these 13 states' laws.

**G.    The Court Should Deny Leave to Amend to Add Allegations and a Theory of Failure to Comply with "Official Compendium" Standards**

The Proposed Master Complaints further seek to introduce new allegations for the first time that the Manufacturer Defendants' valsartan drugs do not conform

---

[7] Moreover, whether Plaintiffs are ultimately unsuccessful in obtaining those other remedies is immaterial. For example, under Massachusetts law, plaintiffs cannot bring "a claim for unjust enrichment where an adequate remedy at law exists—regardless of the viability of that theory or whether it sounds in contract, fraud, or tort." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 419 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-MC-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). The standard is availability of an adequate remedy, not the likelihood of success.

to the "official compendium" standards or requirements for valsartan drugs of the same name. (*See* PPIMC ¶¶ 175, 218, 350, 390, 392, 647-50; PELMC ¶¶ 4, 232, 390, 415, 418, 625, 743, 761; PMMMC ¶¶ 389, 185, 348, 369, 372, 657). Plaintiffs allege the Manufacturer Defendants violated two putative compendia—the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations*, known as the "Orange Book," and the United States Pharmacopeia ("USP"). (*See id*.). These allegations assert what amount to *per se* claims of breach of warranty and fraud based on the mere nomenclature of the Manufacturer Defendants' valsartan drugs. The Court should reject Plaintiffs' new amendments as futile and prejudicial.

## 1.   Plaintiffs' "Official Compendium" Allegations Introduce a New and Unauthorized Theory of Liability into These Proceedings

Plaintiffs' new allegations diverge from their earlier (and ongoing) allegations that each Manufacturer Defendant purportedly failed to comply with Current Good Manufacturing Practices ("cGMPs") and thereby failed to supply bioequivalent or therapeutically equivalent generic drugs. The "official compendium" theory shifts focus from the Manufacturer Defendants' ***conduct*** to the mere presence of impurities in any valsartan drug sharing the same ***name*** as a valsartan drug listed in an official compendium, asserting this constitutes a *per se* sale of "adulterated" or "misbranded" drugs. (*See, e.g.,* PPIMC ¶¶ 175, 198-99, 218; PELMC ¶¶ 4, 214-15, 390; PMMMC ¶¶ 389, 141-42, 348). Plaintiffs insist that any valsartan drug containing a nitrosamine impurity "did not meet" the alleged "requirements" or

32

"standards" of the Orange Book and USP, and therefore using the same name or "designation" as a compendium-listed valsartan drug is a "false statement" and breach of "representations and warranties" that the drug is "in compliance with the compendial standards." (*See* PPIMC ¶¶ 175, 218, 350, 390, 392, 647-50; PELMC ¶¶ 4, 173, 232, 415, 418, 625, 743, 761; PMMMC ¶¶ 389, 185, 369, 372, 657).

Plaintiffs' earlier Master Complaints do not allege any such non-compliance with "compendial standards," deviations from Orange Book or USP "standards" or "requirements," or adulteration or misbranding based on alleged non-compliance with an "official compendium." (*See* ECF No. 1148-2 ¶¶ 175, 218, 350, 390, 392, 647-50g; ECF No. 1148-4 ¶¶ 4, 173, 232, 390, 415, 418, 625, 743, 761; ECF No. 1148-6 ¶¶ 389, 185, 348, 369, 372, 657). Indeed, Plaintiffs' only prior references to the Orange Book were in the context of asserting general warranties of bioequivalence and therapeutic equivalence. (*See* ECF No. 1148-2 ¶¶ 347-48, 367, 688; ECF No. 1148-4 ¶¶ 413-14, 439; ECF No. 1148-6 ¶¶ 367-68, 393). And Plaintiffs' only prior references to the "official compendium" definitions of adulteration and misbranding were abstract statutory citations. (*See* ECF No. 1148-2 ¶¶ 198-99; ECF No. 1148-4 ¶¶ 214-15; ECF No. 1148-6 ¶¶ 141-42).

Nor do the MTD Opinions or MTD Orders contemplate Plaintiffs' amendments to add such allegations. The MTD Opinions, like Plaintiffs' earlier pleadings, discuss the Orange Book only in the context of general warranties of

33

equivalence. (*See, e.g.,* MTD Opinion 1 at 4; MTD Opinion 2 at 5; MTD Opinion 3 at 6-7, 9, 13-14, 16; MTD Opinion 4 at 5, 14-15; MTD Opinion 5 at 3-4, 6). And only one MTD Opinion mentions the "official compendium" standard, again in the form of an abstract statutory citation. (MTD Opinion 2 at 4). The MTD Opinions and MTD Orders certainly do not sanction the addition of "official compendium" allegations without explanation or justification, as Plaintiffs seek to do here.

## 2. Plaintiffs' Allegations of Non-Conformance with "Official Compendium" Standards Fail to State a Claim

There is no plausible legal theory underlying Plaintiffs' allegations that Defendants are liable for alleged non-conformance with the standards or requirements of an "official compendium." Plaintiffs rely on the FDCA's definitions of "adulterated" and "misbranded" drugs. (*See* PPIMC ¶¶ 198-99; PELMC ¶¶ 4, 214-15, 390; PMMMC ¶¶ 389, 141-42, 348). The adulteration provision states a drug shall be deemed adulterated if it "purports to be or is represented as a drug the name of which is recognized in an official compendium, and its strength differs from, or its quality or purity falls below, the standard set forth in such compendium." 21 U.S.C. § 351(b). The misbranding provision states a drug shall be deemed misbranded if it "purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein." 21 U.S.C. § 351(g). Plaintiffs assert from these definitions that any generic valsartan drug sharing the name of an Orange Book-listed or USP-listed counterpart is adulterated

and misbranded if it contains any impurities, and consequently the name itself constitutes a breach of warranty or false representation. (*See* PPIMC ¶¶ 175, 218, 350, 390, 392, 647-50; PELMC ¶¶ 4, 173, 232, 415, 418, 625, 743, 761; PMMMC ¶¶ 389, 185, 369, 372, 657). That claim fails for two reasons.

First, the Orange Book is not an "official compendium." The Federal Food, Drug, and Cosmetic Act ("FFDCA") defines an "official compendium" as "the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, official National Formulary, or any supplement to any of them." 21 U.S.C. § 321(j). The Orange Book, by contrast, is a publication of "listed drug" products approved by the FDA with related patent and exclusivity information. *See* 21 CFR 314.3(b), 314.53. Plaintiffs' new allegations that the Manufacturer Defendants did not comply with "Orange Book standards," "Orange Book requirements," or "compendial standards" based on Orange Book listings thus fail to state a valid legal claim for non-conformance with an "official compendium." (*See* PPIMC ¶¶ 175, 390 392; PELMC ¶¶ 4, 390, 625; PMMMC ¶¶ 389, 348, 657).

Second, though the USP is an "official compendium," it contained no "compendial standards" relating to nitrosamines during the relevant time period preceding the valsartan recalls in 2018. The determination of whether a drug is "adulterated" based on differing "strength, quality, or purity" from the "official compendium" standard is "made in accordance with the tests or methods of assay

35

*set forth* in such compendium[.]" 21 U.S.C. § 351(b) (emphasis added). For a drug to be "misbranded," it must be "packaged and labeled" other than "*as prescribed*" by the compendium. 21 U.S.C. § 352(g) (emphasis added).

Prior to the 2018 recalls, the USP neither "set forth" nor "prescribed" any standards governing the previously undetected issue of nitrosamine impurities; these standards issued for the first time in 2020. *See* https://www.usp.org/news/nitrosamines-impurities (last accessed May 14, 2021) (announcing release of USP's six initial nitrosamine Reference Standards in July 2020 and its proposal for a general chapter standard for nitrosamines in September 2020, based on the finding of nitrosamine impurities in some hypertension drugs "[s]tarting in 2018").[8] Plaintiffs cannot allege that the Manufacturer Defendants' valsartan drugs were adulterated or misbranded based on standards *not* "set forth" or requirements *not* "prescribed" by the USP at the time. *See Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, 686 F.3d 1348, 1360 (Fed. Cir. 2012) (noting that testing for adulteration "must be carried out pursuant to the methods articulated in the compendium, in this case the USP"). Plaintiffs' new allegations that the Manufacturer Defendants did not meet "USP standards," "USP requirements," or

---

[8] The Court may consider USP's applicable standards at the time, as Plaintiffs incorporate those standards into their proposed pleadings. *See* Fed. R. Evid. 201(b); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Buck v. Hampton Twshp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

"compendial standards" based on the "USP designation" thus do not state a valid legal claim. (*See* PPIMC ¶¶ 175, 218, 349-50; PELMC ¶¶ 4, 232, 390, 415, 418, 625, 743; PMMMC ¶¶ 389, 185, 348, 369, 372, 657).

### 3.   Plaintiffs' Allegations and Theory of Liability Based on the Manufacturer Defendants' Supposed Non-Conformance with Orange Book Standards Are Preempted

Plaintiffs' new allegations of non-conformance with "Orange Book standards" and "Orange Book requirements" are also preempted by federal law because they challenge the validity of the valsartan drugs' Orange Book listings and thus impinge upon the FDA's exclusive authority. The Orange Book is a creation of the FFDCA, and the decision to list or delist a drug is committed to the FDA alone. *See* 21 U.S.C. § 355(j)(7) (creating Orange Book listing requirement); 21 CFR 314.3 (defining "Listed drug"), 314.53 (FDA determines Orange Book listings), 314.161 (FDA decides when to delist a voluntarily withdrawn drug). Accordingly, any claim seeking to "delist a patent from the Orange Book" is "an impermissible attempt by a private party to enforce the FFDCA" and is barred by federal law. *Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1329-32 (Fed. Cir. 2001) (citing 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Cte.*, 531 U.S. 341 (2001); *In re: Orthopedic Bone Screws Prods. Liab. Litig.*, 193 F.3d 781, 788 (3d Cir. 1999)).

The same holds for claims that do not explicitly seek to delist a drug from the Orange Book, but "in essence" are directed to the same end—as where a party rests

the "entire cause of action" on proving that the defendant "improperly listed the [drug] because it does not comply with the requirements of" the FFDCA. *Mylan*, 268 F.3d at 1332. Such claims are "analogous to those barred in the long line of cases precluding private rights of action under the FFDCA." *Id.*[9]

Here, Plaintiffs' new allegations expressly rely on assertions that the Manufacturer Defendants' valsartan drugs do not comply with "Orange Book standards" or "Orange Book requirements"—a direct challenge to the drugs' Orange Book listings. (*See* PPIMC ¶¶ 175, 390 392; PELMC ¶¶ 4, 390, 625; PMMMC ¶¶ 389, 348, 657). That is a significant departure from Plaintiffs' earlier allegations, which referenced the Orange Book only in the context of asserting general warranties of bioequivalence, therapeutic equivalence, and compliance with cGMPs. (*See* PPIMC ¶¶ 347-48; PELMC ¶¶ 413-14; PMMMC ¶¶ 367-68). Plaintiffs' new allegations necessarily intrude into the FDA's exclusive authority to decide whether a given valsartan drug meets the criteria to be a "listed drug" in the Orange Book.

That is an important difference, as this Court had occasion to discuss in

---

[9] Congress later amended the FFDCA to add a narrow exception allowing a private defendant to challenge an Orange Book listing as a counterclaim to a patent infringement action. *See* 21 U.S.C. § 355(j)(5)(C)(ii); *Caraco Pharm. Labs, Ltd. v. Novo Nordisk*, 566 U.S. 399, 408-09 (2012)). That narrow exception, not applicable here, reinforces the point that Plaintiffs' new theory impermissibly seeks to challenge the Manufacturer Defendants' Orange Book listings through a private right of action that Congress has **not** authorized even after amending the statute.

*Takeda Pharm. Co. v. Zydus Pharms. USA Inc.*, No. CIV.A. 10-1723 JAP, 2011 WL 2115819 (D.N.J. May 25, 2011) (Pisano, J.). There, the Court recognized that the question "boils down to" whether a claim "is substantively analogous to a private action for violation of the FFDCA[.]" *Id*. at *5. Where the claim is "based solely on a party's violation of a requirement imposed by the FFDCA" and "[a]t its core" alleges "no more than" a violation of the FFDCA, "such a claim is prohibited." *Id*. at *5-6. *See also Midlothian Laboratories, L.L.C. v. Pamlab, L.L.C.*, 509 F. Supp. 2d 1065, 1085-86 (M.D. Ala. 2007) (quoting *Solvay Pharms., Inc. v. Ethex Corp.*, No. Civ. 03-2836, 2004 WL 742033 at *3 (D. Minn. 2004)), *vacated in part on other grounds*, 509 F. Supp. 2d 1095 (M.D. Ala. 2007) (stating that a claim "based on a [false] representation of product equivalency—marketing a product as a 'generic' version of a branded product—may be maintained when 'the truth or falsity of the statements in question can be resolved through reference to standards ***other than those of the FDA***,' but not 'where a claim requires interpretation of a matter that is exclusively within the jurisdiction and expertise of the FDA and FDCA'") (emphasis added). In this case, because Plaintiffs' new allegations are based solely on Defendants' alleged violations of "Orange Book standards" and "Orange Book requirements," they constitute an impermissible private attempt to exercise the FDA's exclusive authority under the FFDCA, and are preempted.[10]

---

[10] The Court found in MTD Opinion 1 that Plaintiffs' earlier claims were not

### 4. Plaintiffs' "Official Compendium" Amendments Are Prejudicial

Plaintiffs' proposed amendments are also prejudicial. They belatedly introduce new sources of putative representations and warranties—the USP and Orange Book—on which Plaintiffs now claim to have relied in asserting fraud-based and warranty-based claims. (*See* PPIMC ¶¶ 218, 349-50, 390, 392, 552, 647-50, 655, 688, 691, 761; PELMC ¶¶ 232, 415, 418, 625, 743-44, 748, 761, 766; PMMMC ¶¶ 185, 369, 372, 657, 676, 679, 680). Plaintiffs' depositions have been ongoing since January, with more than two dozen already completed. Defendants had no prior

---

preempted because preemption must be "the clear and manifest purpose of Congress" and Plaintiffs' prior claims "depend on traditional tort and contract law sources." (MTD Opinion 1 at 10-12 (citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *Tigert v. Ranbaxy Pharms., Inc.*, Civ. No. 12-000154, 2012 WL 6595806 (D.N.J. Dec. 18, 2012) (Kugler, J.)). Plaintiffs' new allegations invoke no such "traditional tort and contract law sources," and instead directly assert non-conformance with the Orange Book. (*See* PPIMC ¶¶ 175, 390 392; PELMC ¶¶ 4, 390, 625; PMMMC ¶¶ 389, 348, 657). Congress has been clear and manifest that Orange Book listings are an area of exclusive FDA authority with only one narrow exception not applicable here. *See* 21 U.S.C. § 355(j)(5)(C)(ii). Thus, the "traditional presumption against preemption of state law [does] not apply" here. *Tigert*, 2012 WL 6595806, at *5. No presumption against preemption attaches in the face of the "plain wording" of federal law. *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016). Rather, Plaintiffs' proposed amendments fall squarely into the category of a claim that "in substance seeks to enforce the [FFDCA]" regardless of being labeled "as arising under a state law[.]" *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013); *see also Exela Pharma Scis., LLC v. Sandoz Inc.*, No. 1:19-CV-00318-MR, 2020 WL 5535026, at *5 (W.D.N.C. Sept. 15, 2020) (same); *Evans v. Rich*, No. 5:13-CV-868-BO, 2014 WL 2535221, at *2 (E.D.N.C. June 5, 2014) ("Thus, where private litigants are effectively suing for a violation of the FDCA under the guise of state law, their claims are impliedly preempted.").

notice Plaintiffs were asserting the existence of, or their reliance upon, any "official compendium" representations or warranties, and have thus had no opportunity to depose Plaintiffs on these topics. Plaintiffs' belated introduction of a new theory of liability and new sources of putative representations and warranties deprives the Defendants of "fair notice, possibly discovery, and the opportunity for motion practice," and thus would "surely prejudice" them. *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 229 (D.N.J. 2005) (quoting *Wilson v. Muckala*, 303 F.3d 1207, 1215-16 (10th Cir. 2002)).

Plaintiffs' amendments also prejudicial because they impose an "unfair burden" on Defendants. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). If allowed, Plaintiffs' amendments would oblige Defendants (and the Court) to incur time, expense, and delay addressing through motion practice and discovery the legal and factual merits of a new theory that, for the reasons already described, has no viable legal basis. Because "prejudice to the non-moving party is the touchstone for the denial of an amendment," the Court should deny Plaintiffs' Motion to Amend. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citations omitted).

## IV.   CONCLUSION

Plaintiffs' Motion to Amend seeks leave to file three Proposed Master Complaints, which by and large fail to address the pleading deficiencies identified

41

by this Court in its MTD Opinions and MTD Orders, are futile, and are prejudicial. Allowing the proposed amendments would tie up the parties' and the Court's time with additional motion practice on claims the Court has already found insufficient, as well as new allegations that are patently insufficient. The Court's prior rulings were a roadmap for Plaintiffs to follow in amending their pleadings, not an inconvenience to be disregarded. Accordingly, the Court should deny the Motion to Amend, or, in the alternative, grant the Motion to Amend subject to the conditions and limitations that: (1) the claims and allegations Plaintiffs failed to cure, as detailed in this opposition, should be dismissed with prejudice; (2) leave to amend to add Plaintiffs' new "official compendium" allegations and theory should be denied and the new allegations disallowed; and (3) Plaintiffs should conform the Proposed Master Complaints to the Court's ruling, without any further unauthorized additions or amendments.

Dated: May 27, 2021                              Respectfully submitted,

                                                 By: */s/ Lori G. Cohen*
                                                     Lori G. Cohen, Esq.
                                                     *Lead Counsel for Defendants*

                                                 GREENBERG TRAURIG, LLP
                                                 Lori G. Cohen, *Lead Counsel for Defendants*
                                                 Victoria D. Lockard
                                                 Steven M. Harkins
                                                 Terminus 200
                                                 3333 Piedmont Rd., NE,
                                                 Suite 2500

Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

Gregory E. Ostfeld
77 West Wacker Drive,
Suite 3100
Chicago, Illinois 60601
Tel: (312) 476-5056
ostfeldg@gtlaw.com

Brian H. Rubenstein
1717 Arch Street
Suite 400
Philadelphia, Pennsylvania
Tel: (215) 988-7864
Fax: (214) 689-4419
rubensteinb@gtlaw.com

Liza M. Walsh
Christine I. Gannon
William T. Walsh, Jr.
WALSH PIZZI O'REILLY
FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor

*Attorneys for Teva
Pharmaceuticals USA, Inc.,
Teva Pharmaceutical Industries
Ltd., Actavis LLC, and Actavis
Pharma, Inc.*

DUANE MORRIS LLP
Seth A. Goldberg, *Lead Counsel and*

43

*Liaison Counsel for Defendants*
Jessica Priselac
Barbara A. Schwartz
30 South 17th Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
SAGoldberg@duanemorris.com
JPriselac@duanemorris.com
BASchwartz@duanemorris.com

*Attorneys for Zhejiang Huahai
Pharmaceutical Co, Ltd., Huahai
U.S., Inc., Prinston Pharmaceutical
Inc., and Solco Healthcare US, LLC*

PIETRAGALLO GORDON
ALFANO BOSICK &
RASPANTI, LLP
Clem C. Trischler
Jason M. Reefer
38th Floor, One Oxford Centre
Pittsburgh, Pennsylvania 15219
Tel: (412) 263-2000
Fax: (412) 263-2001
CCT@PIETRAGALLO.com

*Attorneys for Mylan
Laboratories,
Ltd. and Mylan
Pharmaceuticals, Inc.*

KIRKLAND & ELLIS LLP
Devora W. Allon
Alexia R. Brancato
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-5967
Fax: (212) 446-6460

44

devora.allon@kirkland.com

*Attorneys for Torrent*
*Pharmaceuticals Ltd.*

LEWIS BRISBOIS BISGAARD &
SMITH LLP
Walter H. Swayze, III
Megan E. Grossman
550 E. Swedesford Road, Suite 270,
Wayne, Pennsylvania 19087
Tel: (215) 977-4100
Fax: (215) 977-4101
Pete.Swayze@lewisbrisbois.com
Megan.Grossman@lewisbrisbois.com

*Attorneys for Camber*
*Pharmaceuticals, Inc.*

45