IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | § § § § § § § § | No. 1:19-md-2875-RBK<br>Hon. Robert Kugler<br>Hon. Joel Schneider |

**DEFENDANTS' FIRST AMENDED NOTICE OF
VIDEOTAPED DEPOSITION TO MAINE AUTOMOBILE DEALERS
ASSOCIATION, INC. INSURANCE TRUST PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S. Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S. LLC, by and through their undersigned counsel in the above-captioned matter and on behalf of the manufacturer, distributer, and wholesaler defendants ("Defendants"), and pursuant to Federal Rules of Civil Procedure 26 and 30(b)(6), serve this notice that Defendants will take the videotaped deposition of one or more designated representatives of Maine Automobile Dealers Association, Inc. Insurance Trust ("Plaintiff") with regard to the topics set forth on Exhibit A, attached hereto, or as such topics may be (or have been) modified following this notice and/or by agreement of counsel pursuant to any good-faith negotiation undertaken in accordance with Fed. R. Civ. P. 30(b)(6). The deposition will commence at 10:00 a.m. on May 28, 2021, and will continue from day to day until completed. The deposition will be conducted by remote means, will be recorded by sound and video recording, and will be stenographically transcribed. The undersigned will be the lead questioning attorney. The designation of the undersigned as lead questioning attorney is not intended to, and does not, restrict the right of other defense counsel to attend and ask questions at the deposition noticed hereby.

Dated:  April 28, 2021

/s/ *Drew T. Dorner*
Drew T. Dorner
DUANE MORRIS LLP
505 9th Street N.W., Suite 1000
Washington, DC 20004
Tel.:  (202) 776-5291
Fax:  (202) 478-2967
DTDorner@duanemorris.com

*Attorney for Zhejiang Huahai Pharmaceutical Co., Ltd., Prinston Pharmaceutical Inc., Huahai U.S. Inc., and Solco Healthcare US, LLC*

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing First Amended Notice of Videotaped Deposition to Maine Automobile Dealers Association, Inc. Insurance Trust Pursuant to Fed. R. Civ. P. 30(b)(6) was served on the 28th day of April, 2021 by electronic mail upon the following persons:

Anthony Christina
Lowey Dannenberg, P.C.
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
achristina@lowey.com

Peter St. Phillip, Jr.
Uriel Rabinovitz
Lowey Dannenberg, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
pstphillip@lowey.com
urabinovitz@lowey.com

Gregory Hansel
Sigmund Schutz
Elizabeth Quinby
John Cronan, III
Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112
equinby@preti.com
sschutz@preti.com
ghansel@preti.com
jcronan@preti.com

David Stanoch
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
d.stanoch@kanner-law.com

/s/ *Drew T. Dorner*
Drew T. Dorner

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to each and every part of this Exhibit as if fully set forth therein:

1. "MADA" means Plaintiff Maine Automobile Dealers Association, Inc. Insurance Trust, and its past or present officers, directors, employees, partners, principals, members, agents, and representatives.

2. "Plaintiff," "Plaintiffs," "You," and "Your" mean MADA, as defined above.

3. "Defendant" or "Defendants" means each and every named Defendant in the above-styled action.

4. "VCD" means any drug or combination drug containing valsartan.

5. "Blood pressure medication" means any drug or pharmaceutical product related to the treatment of high blood pressure and/or hypertension.

6. The "Plan" or "Plans" means any and all health benefit, care or insurance plan or plans offered by, sponsored by, or in any way provided through MADA to or on behalf of the government; employers, employee organizations, or their employees; unions or their members; and/or other sponsors and their policyholders, subscribers, beneficiaries, participants, or other third parties, which provide for the payment, reimbursement, and/or coverage for prescription drugs, including but not limited to any single-employer plan, multiemployer plan, multiple employer welfare arrangement, or any other form of coverage on which You base any claim for damage in this case.

7. "Group Insurance Policies" means any and all health or drug insurance policies that are intended to be able to provide for multiple individuals' payment, reimbursement, and/or coverage for prescription drugs, offered by MADA to or on behalf of any employer, employee organizations, or their employees; unions or their members; or other policyholders, subscribers, beneficiaries, participants, or other third parties.

8. "Insureds" mean employees, employers, members, subscribers, policyholders, participants, beneficiaries, and/or insured persons (including family/dependents) under any Plan and/or the Group Insurance Policies through which MADA provided some form of prescription drug coverage, payment, or reimbursement on which MADA bases any claim for damage in this case.

9. "Formulary" and "Preferred Drug List" mean the formulary, preferred drug list, or other list of prescription drugs that are covered by any Plan or Group Insurance Policies, including any tiers or levels of preference in which drugs are categorized, and all amendments,

1

modifications, supplements, or revisions thereto.

10. "Relate to," "related to," or "relating to" means in any way referring to, associated with, concerning, comprising, constituting, embodying, identifying, supporting, summarizing, evidencing, containing, discussing, mentioning, describing, reflecting, comparing, analyzing, memorializing, or pertaining to the referenced subject matter.

11. "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and include, without limitation, all writings of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise, including, without limitation, paper documents of any kind, communications, correspondence, memoranda, notes, diaries, statistics, letters, electronic mail, text messages, electronic files of any type or nature, all other forms of electronic communication, telegrams, minutes, contracts, reports, studies, text, statements, receipts, returns, summaries, pamphlets, books, prospectuses, inter-office and intra-office communications, offers, notations or recordings of any sort regarding conversations, telephone calls, meetings or other communications, bulletins, printed matters, computer printouts, teletypes, telefax, invoices, worksheets, and each and every electronic or paper draft, alteration, modification, change or amendment of any kind of the foregoing; graphic or aural records and oral representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures; and electronic, magnetic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, computer generated or stored information and recordings. The term "Document" expressly includes electronic or magnetic data, which should be produced in its unaltered, native-file format in which such data is ordinarily kept. All documents should be produced without alteration and with any and all exhibits and attachments thereto. The term "Document" is inclusive of the term "electronically stored information" as referenced in Federal Rule of Civil Procedure 34.

12. "Relevant Time Period" shall mean January 1, 2012 through the present and all matters for examination specified in Exhibit A, unless otherwise specified, are limited to the Relevant Time Period. The definition and scope of the term Relevant Time Period does not constitute an admission by Defendants or evidence with respect to the appropriate definition of any class which may be certified in the above-captioned matter or in any other matter involving VCDs or other blood pressure medications.

13. "Action" shall mean *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, MDL No. 2875, and *Maine Automobile Dealers Association, Inc. Insurance Trust v. A-S Medication Solutions LLC et al.*, No. 19-cv-02431 (D.N.J.).

14. Each topic shall be construed as being inclusive rather than exclusive. The terms "any" and "all" shall be mutually interchangeable and shall not be construed to limit any topic. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the topic all issues that might otherwise be construed to be outside of its scope. The present tense shall include the past and future tenses. The singular shall include the plural, and the plural shall include the singular.

## TOPICS FOR EXAMINATION

MADA Background

1. Background information related to MADA's Insureds, sponsors, and contributors during the Relevant Time Period including, but not limited to, eligibility requirements to become an Insured of MADA; the number of persons who received prescription drug benefits via a Plan or Group Insurance Policy offered by MADA (including dependents of members); the number and identities of employers contributing to MADA's insurance trust; the average premium paid by MADA's Insureds; MADA's status as a self-funded or fully-insured provider of Plans and/or Group Insurance Policies; MADA's solvency and ability to pay claims during the Relevant Time Period; the percentage of Insureds who purchased each of the Plans and Group Insurance Policies offered by MADA; and the collection and applications/uses of monthly premiums by MADA obtained from Insureds

Knowledge and Investigation

2. MADA's knowledge of the factual allegations contained within pleadings or other filings filed on behalf of MADA in the Action and all investigations, inquiries, research, or factual development conducted by or on behalf of MADA in connection therewith, attorney-client communications excluded.

3. The basis for MADA's belief that it paid or provided reimbursements for VCDs containing NDMA or NDEA.

4. The identities of all persons working for or on behalf of MADA, counsel excluded, who: (1) have knowledge related to any allegation made by MADA in the Action; (2) have knowledge related to any costs MADA alleges to have incurred for which MADA seeks damages in the Action; (3) have knowledge related to the Plans or Group Insurance Policies offered by MADA; (4) provided any information to counsel for MADA used in any pleading or filing in the

3

Action, including but not limited to MADA's complaints and its Plaintiff Fact Sheet; (5) searched for any documents in connection with the Action; (6) prepared any summaries or spreadsheets produced in connection with the Action; (7) reviewed data related to claims by Insureds for VCDs or other Blood pressure medications; (8) reviewed medical or prescription drug records related to VCDs or Blood pressure medications during the Relevant Time Period.

5. MADA's knowledge of its insureds' actions taken in response to receiving notice of the recall of VCDs, including (but not limited to) obtaining refunds, obtaining replacement Blood pressure medication (and any costs incurred in connection with obtaining such replacement medications), disposing of recalled medications, and/or continuing their use of VCDs for any period of time following notice of the recall.

6. The applicability of any recall to VCDs allegedly paid for or reimbursed by MADA, including any testing for impurities conducted by (or on behalf of) MADA and MADA's basis for determining the recall status of any VCDs at issue in the Action.

7. The date MADA learned of the recall of VCDs, the manner(s) in which it learned of the recall, and MADA's actions taken in response to receiving notice of the recall of VCDs.

8. The source(s) of data and information underlying Attachments A, B, and C to MADA's Plaintiff Fact Sheet, the development of such attachments, and MADA's knowledge related to the particular Insured(s) who received benefits described in Attachments A, B, and C (i.e., premium-paying beneficiary versus dependent).

Plans and Coverage

9. All Plans and Group Insurance Policies offered by MADA during the Relevant Time Period, including the name of each Plan/Group Insurance Policy; the type of Plan/Group Insurance Policy (e.g., HMO, PPO, etc.); the geographic scope of the Plan/Group Insurance Policy; eligibility requirements for all such Plans/Group Insurance Policies; the extent to which the

4

Plan/Group Insurance Policy covered VCDs and other Blood pressure medications; and any terms or conditions applicable to the coverage of VCDs and/or other Blood pressure medications (including, but not limited to, co-pays, co-insurance, deductibles, out-of-pocket maximums, immediate coverage versus reimbursement to Insureds, costs based on quantity of drugs dispensed, etc.).

10. The identity of all pharmacy benefits managers ("PBMs"), claims administrators, and/or benefits managers with whom MADA contracted during the Relevant Time Period, and the dates and terms and conditions of all such contracts.

11. The process by which MADA, or any entity acting on behalf of MADA, manages, administers, bills, tracks, and pays for VCD- and Blood pressure medication-related costs and claims.

12. The Formulary (or Formularies) applicable to any Plan or Group Insurance Policy, including: whether the formulary included any form of VCD; whether the formulary included other Blood pressure medications; the evaluation and selection process for VCDs and other Blood pressure medications that appeared on the Formulary; the tier(s) of any VCDs or Blood pressure medications, and the corresponding terms and conditions of coverage associated with such tier(s); the manager of the Formulary; the composition of the Pharmacy and Therapeutics Committee; the Formulary design/review process(es); and benefit design with respect to Formulary tiers.

13. Coverage of branded drugs versus generic drugs under the Plans/Group Insurance Policies offered by MADA.

14. The preferred pharmacy network, if any, for each Plan offered by MADA, including preferred provider terms with any manufacturers, wholesalers, distributors, or pharmacies setting forth agreed prices or negotiated rates charged to any Plan, Group Insurance Policy, or Insured for

5

VCDs or any other Blood pressure medication.

Alleged Payments, Costs, and Damages

15. The number of Insureds for whom MADA paid benefits (or issued reimbursements) for *any* VCDs and/or Blood pressure Medications during the Relevant Time Period, and the number of Insureds for whom MADA alleges to have paid benefits (or issued reimbursements) for any *recalled* VCD and/or *substitute* Blood pressure medication.

16. All payments for *any* VCDs (including non-recalled and recalled VCDs) and/or Blood pressure medications (including substitute and non-substitute Blood pressure medications) made by or on behalf of MADA during the Relevant Time Period, and all payments for *recalled* VCDs and/or *substitute* Blood pressure medications during the Relevant Time Period.

17. The scope and total of VCD-related costs at issue in MADA's claims in the Action, in terms of date of purchase, manufacturer of VCD, and recall status of VCD.

18. The scope and total of substitute Blood pressure medication costs for which MADA is seeking damages in the Action, if any.

19. The scope and total of costs attributable to medical appointments, office visits, and/or alternative therapies (collectively, "Other Costs") for which MADA is seeking damages in the Action, if any.

20. The dates of the alleged payments for VCDs or substitute Blood pressure medications in Attachments A, B, and C to MADA's Plaintiff Fact Sheet.

21. The identities of all payees who received any payments or reimbursements from MADA, or on MADA's behalf, for VCDs, substitute Blood pressure medications, and/or Other Costs.

22. The price(s) charged by any payee(s) to MADA for *any* VCDs during the Relevant Time Period, including gross price, net price, any price changes, and the reasons known to MADA

6

for any price changes.

23. The prices charged by any payee(s) to MADA for *non-VCD* Blood pressure medications, including but not limited to *non-substitute* and *substitute* Blood pressure medications, during the Relevant Time Period, including gross price, net price, any price changes, and the reasons known to MADA for any price changes.

24. The loss in value, if any, allegedly incurred by MADA for VCDs purchased during the Relevant Time Period, and MADA's basis for claiming any loss in value.

25. The extent to which any VCDs, substitute Blood pressure medications, or Other Costs at issue in the Action were paid for or reimbursed, in whole or in part, by a party other than MADA or an Insured (e.g., Medicare, Medicaid, other drug coverage, etc.).

26. Whether, and the extent to which, payments (or reimbursements) for VCDs by or on behalf of MADA were affected by an Insured's out-of-pocket maximum, deductible, or other term of the Insured's Plan or Group Insurance Policy.

27. Maximum Allowable Cost ("MAC") provisions applicable to the amount charged to MADA for any VCD or Blood pressure medication in any agreement with, or list from, a pharmacy benefits manager ("PBM").

28. Negotiations, arrangements, or agreements negotiated by or on behalf of MADA by MADA or any PBM, claims administrator, or benefits administrator related to the costs that MADA, its PBM(s), or its Insureds paid for VCDs or Blood pressure medications.

29. Any refunds, rebates, credits, or incentives accepted by, or available to, MADA or its PBM(s) related to the costs of VCDs or Blood pressure medications.

30. MADA's investigation, knowledge, and/or lack of knowledge relating to the efficacy and therapeutic benefit(s) of any VCDs or Blood Pressure Medications on any Insureds.

31. All efforts by MADA, its PBM, or any other person or entity on behalf of MADA,

if any, to obtain refunds, credits, reimbursements, or substitute Blood pressure medications in connection with the recall of VCDs following the recall, and any such refunds, credits, reimbursements, or substitute Blood pressure medications obtained.

32. All costs MADA alleges it incurred as a result of the recall of VCDs.

33. Any damages or other relief sought by MADA in the Action other than damages for the recalled VCDs, substitute Blood pressure medications, and Other Costs, including, but not limited to, preventative or future medical care costs, administrative costs, or indirect/overhead costs for which MADA is seeking damages in the Action, if any.

Communications

34. All communications between MADA and any Defendant(s) regarding VCDs, the recall of VCDs, or Blood pressure medications.

35. All communications between MADA and any Insured regarding VCDs, the recall of VCDs, or Blood pressure medications.

36. All communications between MADA and any Insured regarding actions MADA took as a result of the recall, and/or actions any Insured(s) took (or should have taken) as a result of the recall, such as continued consumption, disposal, replacement, etc.

37. All communications between MADA and any other proposed class member regarding VCDs, the recall of VCDs, or the Action.

38. All statements by MADA or any person acting on behalf of MADA regarding VCDs.

39. All representations or omissions allegedly made to MADA by any Defendant which forms the basis of any claim in the Action, including the time, place, and substance of any alleged fraudulent misrepresentation or omission; the identity of the person or persons who made such misrepresentations/omissions; and the person or persons within MADA to whom the

8

misrepresentations/omissions were made.

40. All warranties MADA claims were made to it by any Defendant, and any notices MADA claims it gave to any Defendant regarding the alleged breach of any warranty.

Documents

41. The type and location of Documents within MADA's possession or control or available to MADA relating to payments or reimbursements for VCDs, Blood pressure medications, and Other Costs during the Relevant Time Period.

42. The type and location of Documents within MADA's possession or control or available to MADA relating to refunds, credits, or reimbursements obtained for or on behalf of MADA in connection with the recall of VCDs.

43. The type and location of Documents within MADA's possession or control or available to MADA reflecting claims by Insureds for VCDs, substitute Blood pressure medications, or Other Costs.

44. MADA's searches for, and productions of, records in response to document requests made by Defendants.

45. Any requests by MADA for documents from any PBM, claims administrator, or benefits administrator to support any allegation in the Action.

46. Documents or other information in MADA's possession, or otherwise accessible to MADA, that MADA used or could have used (including, but not limited to, documents reflecting recall dates, lot numbers, NDCs, etc.) to ascertain whether VCDs paid for (or reimbursed) by MADA were within the scope of any recall.

47. MADA's access to medical records of Insureds for whom MADA allegedly paid

(or reimbursed) costs related to VCDs, substitute Blood pressure medication, or Other Costs.

<u>Class Certification</u>

48. MADA's role as a class representative, including:

    a. MADA's knowledge regarding the composition and membership of the putative third-party payor class in the Action;

    b. MADA's knowledge or awareness of all documents, records, or other data reflecting the composition, membership, or claims of members of the putative third-party payor class in the Action;

    c. MADA's understanding of its responsibilities as a class representative for the putative third-party payor class in the Action;

    d. MADA's qualifications to serve as a class representative on behalf of the putative third-party payor class in the Action;

    e. MADA's actions in furtherance of its role as a class representative for the putative third-party payor class in the Action;

    f. The scope of injunctive relief demanded by MADA and the basis upon which MADA seeks injunctive relief; and

    g. MADA's history as a litigant in any prior or current lawsuits.