## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **In re: Valsartan Products Liability Litigation** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

## THE PHARMACY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND MASTER COMPLAINTS

Dated:  May 27, 2021

**BARNES & THORNBURG LLP**

By: /s/ *Sarah E. Johnston*
　　Sarah E. Johnston
　　Kara M. Kapke
　　Kristen L. Richer
　　BARNES & THORNBURG LLP
　　2029 Century Park East, Suite 300
　　Los Angeles, CA 90067
　　(310) 284-3798
　　(310) 284-3894

　　*Liaison Counsel for Pharmacy Defendants and Counsel for CVS Pharmacy, Inc. (incorrectly named as CVS Health Corporation) and Rite-Aid Corporation*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................4

I.   Plaintiffs did not remedy the deficiencies that led to the dismissal of
     all express warranty-, negligence-, and fraud- based claims against the
     Pharmacy Defendants ..................................................................................4

     A.   Plaintiffs did not cure their express warranty claims against the
          Pharmacies. *(PELMC Count 1; PMMMC Count 7; PPIMC
          Count 6)* ..............................................................................................5

     B.   The negligence claims against the Pharmacy Defendants are
          futile. *(PELMC Counts 13 and 15; PMMMC Counts 1 and 2;
          PPIMC Counts 4 and 5)* .......................................................................6

          1.   Plaintiffs do not allege any new facts in support of their
               negligence counts......................................................................7

          2.   To the extent Plaintiffs allege new facts elsewhere in
               their proposed complaints, those facts do not support the
               existence of any legally cognizable duties that the
               Pharmacy Defendants breached .................................................8

               a.   There is no legal precedent imposing a duty upon
                    the Pharmacy Defendants to comply with cGMPs
                    or Good Distribution Practices ........................................9

               b.   There is no legal precedent imposing a duty upon
                    the Pharmacy Defendants to test the chemical
                    composition of medication purchased ...........................14

                    i.    Generally, retailers do not have a duty to test
                          or investigate the safety of their products ...........14

                    ii.   Specifically, pharmacies do not have a
                          recognized duty to test the composition of
                          the medications they dispense ..............................16

c.    There is no legal precedent imposing a duty upon the Pharmacy Defendants to "vet" manufacturers supplying medication ...................................................20

d.    There is no factual support for Plaintiffs' allegation that the Pharmacy Defendants failed to comply with any duty to safely fill prescriptions ...........21

C.    The fraud-based claims against the Pharmacy Defendants are similarly futile. *(PELMC Counts 5, 7, and 9; PMMMC Counts 3 and 8; PPIMC Counts 8, 9, and 10* ...................................22

II.    Leave to amend should be denied because the PELMC asserts numerous claims that are futile ........................................................25

A.    The putative class representatives do not have standing to assert economic loss claims in most jurisdictions against several defendants ...........................................................25

B.    Certain state-law claims in the PELMC for breach of implied warranty should be dismissed based on the Court's prior rulings. *(Count 3)* .............................................27

C.    Certain state-law claims in the PELMC for unjust enrichment should be dismissed based on the Court's prior rulings. *(Count 11)* ...............................................31

III.    Leave to amend the PMMMC should be denied because all but one claim against the Pharmacy Defendants is futile ...........................................32

A.    The putative class representatives do not have standing to assert medical monitoring claims in most jurisdictions against several defendants ...........................................................32

B.    Claims in the PMMMC for breach of implied warranty against the Pharmacy Defendants should be dismissed based on the Court's prior rulings. *(Count 6)* ...........................................33

C.    Claims in the PMMMC for strict liability against the Pharmacy Defendants should be dismissed based on the Court's prior rulings. *(Counts 4b and 5)* ...................................34

D.      All but one separate medical monitoring cause of action against the Pharmacy Defendant should be dismissed as futile. *(Count 4a)* ................................................................................36

IV.    Leave to amend should be denied because the PPIMC asserts numerous claims that are futile................................................................38

A.      Most of Plaintiffs' new statutory claims are futile against the Pharmacy Defendants as a matter of law. *(Count 11)* .........................39

1.      Kansas excludes pharmacies from its Product Liability Act .................................................................................................40

2.      Washington excludes pharmacies from the scope of the PLA .................................................................................................41

3.      Plaintiffs cannot state claims against pharmacies under the Tennessee PLA .................................................................41

4.      This Court has already recognized that Plaintiffs do not have strict liability claims under Connecticut and Mississippi law against the Pharmacy Defendants .................42

5.      Ohio and New Jersey's PLA do not apply to service providers .................................................................................43

6.      Louisiana excludes service providers and non-manufacturers from the scope of the PLA .................................44

B.      Certain breach of implied warranty claims are futile under the Court's prior orders. *(Count 7* .................................................45

C.      Certain strict liability claims are futile under the Court's prior orders. *(Counts 1-3)* .................................................................46

D.      Plaintiffs may assert derivative claims against the Pharmacy Defendants only where they have viable personal injury claims against pharmacies. *(Counts 12-15)* .................................................49

CONCLUSION .................................................................................................50

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Altieri v. CVS Pharm., Inc.*,
   No. X06CV020171626S, 2002 WL 31898323 (Conn. Super. Ct.
   Dec. 13, 2002) ...............................................................................................28, 43

*Ashworth v. Albers Med., Inc.*,
   395 F. Supp. 2d 395 (S.D.W. Va. 2005)..................................................34, 35, 38

*Baisden v. Bayer Corp.*,
   275 F. Supp. 2d 759 (S.D.W.Va. 2003) ...............................................................18

*Batiste v. Am. Home Prods. Corp.*,
   231 S.E.2d 269 (N.C. Ct. App. 1977) ...........................................................30, 39

*Beuke v. Pharmacia & Upjohn Co.*,
   No. 4:99CV1606, 2000 WL 34430453 (E.D. Mo. Sept. 14, 2000)....................48

*Bornsen v. Pragotrade, LLC*,
   804 N.W.2d 55 (N.D. 2011).................................................................................47

*Bren-Tex Tractor Co. Inc. v. Massey-Ferguson, Inc.*,
   97 S.W.3d 155 (Tex. App. 2002) ........................................................................15

*Budding v. SSM Healthcare Sys.*,
   19 S.W.3d 678 (Mo. 2000) .................................................................................48

*Carrozza v. CVS Pharmacy, Inc.*,
   391 F. Supp. 3d 136 (D. Mass. 2019) .................................................................29

*Cooper v. CVS Caremark Corp.*,
   176 So. 3d 422 (La. Ct. App. 2015)....................................................................11

*Coppolino v. Total Call Int'l, Inc.*,
   588 F. Supp. 2d 594 (D.N.J. 2008) .....................................................................12

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*,
   Nos. MDL 1203, Civ. A. 99-20186, 2000 WL 1886594 (E.D. Pa. Dec. 7,
   2000)....................................................................................................................29

*Duckett v. SCP 2006-C23-202, LLC*,
  225 F. Supp. 2d 432 (D.S.C. 2015).......................................................................48

*Eagle-Picher Indus., Inc. v. Balbos*,
  604 A.2d 445 (Md. 1992).......................................................................................15

*Exxon Mobil Corp. v. Albright*,
  71 A.3d 30 (Md. 2013)...........................................................................................37

*Feldman v. Lederle Labs.*,
  479 A.2d 374 (N.J. 1984)..................................................................................29, 35

*Garcia v. Nissan Motor Co.*,
  No. Civ. A. M-05-59, 2006 WL 869944 (S.D. Tex. Mar. 30, 2006)...................30

*Garten v. Intamin Amusement Rides Int. Corp. Est.*,
  No. 3:19-cv-20040, 2021 WL 1976701 (D.N.J May 18, 2021) ............................6

*Garza v. Endo Pharms.*,
  No. CV 12-1585, 2012 WL 5267897 (C.D. Cal. Oct. 24, 2012).........................28

*Grdinich v. Bradlees*,
  187 F.R.D. 77 (S.D.N.Y. 1999) ...........................................................................18

*Guglielmo v. Klausner Supply Co.*,
  259 A.2d 601 (Conn. 1969) ..................................................................................15

*Haas v. Pittsburgh Nat'l Bank*,
  526 F.2d 1083 (3d Cir. 1975)................................................................................25

*Halliday v. Cruise Ship Excursions, Inc.*,
  No. ST-14-cv-146, 2016 WL 6635157 (V.I. Super. Ct. Nov. 4,
  2016)......................................................................................................................18

*Heaton v. Mathes*,
  No. E2019-00493-COA-R9-CV, 2020 WL 1652571 (Tenn. Ct.
  App. Apr. 3, 2020) ...............................................................................................42

*Hemy v. Perdue Farms, Inc.*,
  No. CIV.A. 11-888 FLW, 2011 WL 6002463 (D.N.J. Nov. 30,
  2011)......................................................................................................................12

*Horowitz v. Stryker Corp.*,
  613 F. Supp. 2d 271 (E.D.N.Y. 2009) ................................................................12

*In re Insulin Pricing Litig.*,
  2019 U.S. Dist. LEXIS 25185 (D.N.J. Feb. 15, 2019) ........................................27

*Jones v. Irvin*,
  602 F. Supp. 399 (S.D. Ill. 1985).........................................................................35

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ......................................................................24

*Lockheed Martin Corp. v. Super. Ct.*,
  29 Cal. 4th 1096 (Cal. 2003)................................................................................37

*Long v. Tokai Bank of Cal.*,
  682 N.E.2d 1052 (Ohio Ct. App. 1996)...............................................................30

*Madison v. Am. Home Prods. Corp.*,
  358 S.C. 449 (2004) .............................................................................................48

*Magrine v. Krasnica*,
  227 A.2d 539 (N.J. Hudson Cnty. Ct. 1967), *aff'd sub nom.*
  *Magrine v. Spector*, 241 A.2d 637 (N.J. Super. Ct. App. Div. 1968),
  *aff'd per curiam*, 250 A.2d 129 (N.J. 1969) .................................................29, 35

*McLeod v. W. S. Merrell Co.*,
  174 So. 2d 736 (Fla. 1965)..............................................................................28, 35

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
  592 F. Supp. 2d 1147 (D. Minn. 2009)................................................................12

*Merfeld v. Domestic Corp.*,
  306 F. Supp. 3d 1070 (N.D. Iowa 2018)..............................................................47

*Murphy v. E.R. Squibb & Sons, Inc.*,
  710 P.2d 247 (Cal. 1985) .....................................................................................35

*N.J. Citizen Action v. Schering-Plough Corp.*,
  842 A.2d 174 (N.J. Super. Ct. App. Div. 2003)...................................................24

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
  MDL No. 13-02419, 2016 WL 11045600 (D. Mass. Feb. 29, 2016).................42

*Petito v. A.H. Robins Co.*,
   750 So. 2d 103 (Fla. Dist. Ct. App. 1999) ...........................................................37

*Presto v. Sandoz Pharms. Corp.*,
   487 S.E.2d 70 (Ga. Ct. App. 1997) ......................................................................28

*Ramirez v. Richardson-Merrell, Inc.*,
   628 F. Supp. 85 (E.D. Pa. 1986) ..........................................................................30

*Rendon v. Walgreens*,
   144 F. Supp. 3d 894 (N.D. Tex. 2015) .....................................................30, 36, 48

*In re Rezulin Prods. Liab. Litig.*,
   133 F. Supp. 2d 272 (S.D.N.Y. 2001)................................................29, 36, 43, 48

*Rite Aid Corp. v. Levy-Gray*,
   894 A.2d 563 (Md. 2006)...............................................................................34, 35

*Rodio v. Smith*,
   587 A.2d 621 (N.J. 1991).....................................................................................24

*Rostvet v. Lock City Transp. Co.*,
   No. 2:11-cv-21, 2013 WL 11941563 (D.N.D. Nov. 7, 2013).............................47

*Ruiz v. S. Pac. Transp. Co.*,
   638 P.2d 406 (N.M. Ct. App. 1981).....................................................................30

*Sanguigni v. Pittsburgh Bd. of Pub. Educ.*,
   968 F.2d 393 (3d Cir. 1992)...................................................................................8

*Shaerrer v. Stewart's Plaza Pharmacy, Inc.*,
   79 P.3d 922 (Utah 2003) .....................................................................................45

*Thomas v. Wyeth*,
   No. Civ. A. 5:05-0094, 2005 WL 3754203 (S.D.W. Va. June 16, 2005)............38

*Torpey v. Red Owl Stores, Inc.*,
   228 F.2d 117 (8th Cir. 1955).................................................................................29

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   Civ. No. 08–939, 2009 WL 2940081 (D.N.J. Sept. 10, 2009) .............................5

*U.S. v. 789 Cases, More or Less, of Latex Surgeons' Gloves*,
  799 F. Supp. 1275 (D.P.R. 1992) .........................................................................12

*Ullman v. Grant*,
  450 N.Y.S.2d 955 (Sup. Ct. 1982) ......................................................................30

*Walton v. Bayer Corp.*,
  643 F.3d 994 (7th Cir. 2011) ...............................................................................17

*White v. Mylan, Inc.*,
  No. CIV-12-402, 2012 WL 6726593 (W.D. Okla. Dec. 27, 2012) .....................45

*Winters v. Alza Corp.*,
  690 F. Supp. 2d 350 (S.D.N.Y. 2010) .................................................................17

*Xavier v. Philip Morris USA Inc.*,
  No. C 10-02067, 2010 WL 3956860 (N.D. Cal. Oct. 8, 2010) ...........................37

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Prac. & Prods. Liab. Litig.*,
  No. 3:11-cv-20153, 2012 WL 1831789 (S.D. Ill. May 18, 2012) ......................28

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  692 F. Supp. 2d 1012 (S.D. Ill. 2010) .................................................................29

*Zehner v. Nordskog Indus., Inc.*,
  No. 92-2508, 1992 WL 233984 (E.D. La. Sept. 2, 1992) ..................................29

**Statutes**

21 U.S.C. § 351(a)(2)(B) .........................................................................................11

Ind. Code § 34-20-2-3 ..............................................................................................39

Kan. Stat. Ann. § 40-3041 ........................................................................................40

Kan. Stat. Ann. § 60-3302(a) ...................................................................................40

La. Rev. Stat. § 2800.52 ...........................................................................................44

La. Rev. Stat. § 2800.53(1) .......................................................................................44

N.C. Gen. Stat. § 99B-2 ...........................................................................................39

N.J. Stat. § 2A:58C-8 ...................................................................................44

Ohio Rev. Code § 2307.71(15)(b) ...............................................................44

Tenn. Code Ann. § 29-26-101 ......................................................................42

Tenn. Code Ann. § 29-28-101 ......................................................................41

W.Va. Code § 30-5-21 .................................................................................38

Wash. Rev. Code § 7.72................................................................................41

**Other Authorities**

21 C.F.R. § 210.1(a)...............................................................................10, 11

Alex Kewon, *Despite Record Number of Generic Drug Approvals,
    Many Are Not Available in the U.S.*, BIOSPACE, Nov. 20, 2019,
    www.biospace.com/article/ despite-record-number-of-generic-
    drug-approvals-many-are-not-yet-available-in-the-u-s-/ ....................................19

FDA, "Control of Nitrosamine Impurities in Human Drugs: Guidance
    for Industry," FDA-2020-D-1530 (Feb. 2021),
    https://www.fda.gov/media/141720/download .................................................12

GAO-17-143, DRUG SAFETY, https://www.gao.gov/assets/gao-17-
    143.pdf .......................................................................................................19

"WHO good distribution practices for pharmaceutical products,"
    https://www.who.int/medicines/areas/quality_safety/quality_assura
    nce/ GoodDistributionPracticesTRS957Annex5.pdf.........................................13

## INTRODUCTION

After analyzing hundreds of pages of motion to dismiss briefing, this Court issued a series of six opinions and orders that described in detail what claims Plaintiffs could legally assert, what claims they could not, and how they could attempt to cure the deficiencies that led to the dismissal of the remaining claims. Unfortunately, Plaintiffs have largely ignored those six opinions, and Plaintiffs' proposed amended complaints still contain dozens of futile claims. The Pharmacy Defendants[1] therefore must oppose Plaintiffs' motion for leave to amend their master complaints ("Motion to Amend").

*First*, the Court has already dismissed express warranty-, negligence- and fraud- based claims against the Pharmacy Defendants in all three master complaints. Plaintiffs have not fixed the deficiencies in the earlier complaints that led to the dismissal of those claims. Plaintiffs still fail to identify any statement made by a Pharmacy Defendant that any plaintiff heard, read, or relied on, and Plaintiffs ask this Court to impose duties and liability on pharmacies that no court has ever recognized. These claims are futile, and leave to amend to re-assert them should be denied.

---

[1] The Pharmacy Defendants are, in order listed in the proposed class complaints, Walgreen Co. ("Walgreens"), CVS Pharmacy, Inc. ("CVS"), Walmart Stores, Inc. ("Walmart"), Rite-Aid Corporation ("Rite Aid"), Express Scripts, Inc. ("Express Scripts"), The Kroger Co. ("Kroger"), OptumRx, Albertson's, LLC ("Albertson's"), and Humana Pharmacy, Inc. ("Humana").

***Second***, this Court previously ruled that the named plaintiffs lack standing to assert class claims under the laws of states where they do not reside.  Plaintiffs wholly ignore this ruling.  Instead, Plaintiffs assert class claims under the laws of 52 different jurisdictions, despite having class representatives from only a fraction of those jurisdictions.

***Third***, this Court previously made state-specific rulings relating to Plaintiffs' breach of implied warranty, strict liability, and unjust enrichment claims, as well as the subsumption of state-specific claims by state product liability acts.  Plaintiffs ignore many of these rulings and fail to plead sufficient facts to address the deficiencies previously identified by the Court.  Given the limited number of class representatives who have standing to bring class claims under state laws, for ease of reference, the Pharmacy Defendants have addressed these claims on a complaint-by-complaint basis.[2]

The Pharmacy Defendants request that the Court either deny the Motion to Amend in its entirety, or, in the alternative, grant it in part, while dismissing with prejudice the claims Plaintiffs have failed to cure.  Specifically:

---

[2] This opposition refers to the Proposed Economic Loss Master Class Complaint, Dkt. 1148-3, as the PELMC; the Proposed Medical Monitoring Master Class Complaint, Dkt. 1148-5, as the PMMMC; and the Proposed Personal Injury Master Complaint, Dkt. 1148-1, as the PPIMC. All paragraph references are to these clean versions of the proposed complaints.

(I)     All claims in all complaints based in express warranty, negligence, or fraud against the Pharmacy Defendants are dismissed with prejudice; and

(II)    All claims in the PELMC against the Pharmacy Defendants are dismissed with prejudice *except* for the following specific claims as to which the Court previously denied dismissal:

    (A)   breach of implied warranty under Indiana law against Walmart, Walgreens, and Kroger, and

    (B)   unjust enrichment under

        (i)     California law as to CVS, Express Scripts, Albertson's, and OptumRx;
        (ii)    Connecticut law as to CVS;
        (iii)   Georgia law as to CVS, Walgreens, and Rite Aid;
        (iv)    Indiana law as to Kroger, Walmart, and Walgreens;
        (v)     Minnesota law as to Walmart;
        (vi)    New Jersey law as to CVS and Walgreens;
        (vii)   New Mexico law as to Walgreens;
        (viii)  New York law as to Rite Aid, CVS, and Walgreens;
        (ix)    North Carolina law as to Walmart;
        (x)     Ohio law as to Rite Aid;
        (xi)    Pennsylvania law as to CVS;
        (xii)   Texas law as to CVS, Walgreens, and Walmart; and
        (xiii)  Virginia law as to Walgreens and Walmart; and

(III)   All claims in the PMMMC against the Pharmacy Defendants are dismissed with prejudice *except* for an independent claim for medical monitoring under Illinois law against Walmart and Walgreens; and

(IV)    All claims in the PPIMC against the Pharmacy Defendants are dismissed with prejudice *except* for specific claims arising under the laws of Alaska, Colorado, Delaware, Idaho, Indiana, Kentucky, Minnesota, Montana, Nebraska, Nevada, North Carolina, Oregon, Puerto Rico, Rhode Island, South Dakota, Vermont, Wisconsin, and Wyoming.

The Pharmacy Defendants incorporate by reference all arguments made by the

Manufacturer and Wholesaler Defendants, except arguments relating to lack of privity, and in particular adopt the Manufacturer arguments (and all related charts) regarding standard of review, standing, subsumed claims, negligence per se, and unjust enrichment.[3]

## ARGUMENT

**I.    Plaintiffs did not remedy the deficiencies that led to the dismissal of all express warranty-, negligence-, and fraud- based claims against the Pharmacy Defendants.**

Across all complaints, the Court previously dismissed all (1) express warranty claims, (2) negligence claims, (3) fraud claims, (4) negligent misrepresentation claims, and (5) state consumer protection act claims sounding in fraud against all the Pharmacy Defendants.  MTD Order 3 at 1 (express warranty); MTD Order 5 at 5 (negligence); MTD Order 4 at 1-2 (fraud, consumer protection sounding in fraud, and negligent misrepresentation).  In their proposed amended complaints, Plaintiffs have not cured the previously identified deficiencies. Plaintiffs thus should be precluded from re-asserting these claims against the Pharmacy Defendants, and they should be dismissed with prejudice.

---

[3] Like the Manufacturer Defendants, the Pharmacy Defendants do not object to the inclusion of the additional putative class Plaintiffs, so long as the case management schedule accommodates the necessity of additional discovery with respect to these Plaintiffs.  For purposes of addressing standing, this Opposition proceeds on the assumption the named economic loss and medical monitoring plaintiffs in the PELMC and PMMMC are in fact putative class representatives.

**A.    Plaintiffs did not cure their express warranty claims against the Pharmacies.** *(PELMC Count 1; PMMMC Count 7; PPIMC Count 6)*

In their previous master complaints, Plaintiffs failed to allege any statement by any Pharmacy Defendant creating an express warranty. Rather, Plaintiffs essentially alleged a strict liability warranty claim: that the Pharmacy Defendants breached express warranties merely by selling products containing impurities. In dismissing those claims against the Pharmacy Defendants, the Court rejected this theory, holding that "the mere act of selling a contaminated product by a downstream entity lacking an obligation to comply with the Orange Book formulation cannot create a bridging argument that translates the sale into an express warranty made by . . . Pharmacies." MTD Opinion 3 at 16. Despite the Court's holding, in their proposed amended master complaints, Plaintiffs continue to rely on this theory. *E.g.*, PELMC ¶ 625, PMMMC ¶ 657, PPIMC ¶¶ 647-652.

Although Plaintiffs have attempted to add to the bodies of the proposed complaints various general statements some—but not all—pharmacies have made on their websites (*e.g.*, PELMC ¶¶ 556-596, PMMMC ¶¶ 508-549, PPIMC ¶¶ 395-453), such additions are insufficient and futile for at least three reasons. ***First***, Plaintiffs do not allege any statements that are made by all pharmacies, despite their group allegations of wrongdoing on behalf of all "Pharmacy Defendants." ***Second***, general statements of purpose or integrity are not warranties. *E.g.*, *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civ. No. 08–939, 2009 WL

5

2940081, at *16 (D.N.J. Sept. 10, 2009) (dismissing a breach of warranty claim based on general statement that product was for "Today, Tomorrow, and Beyond," since the statement was just "puffery"). *Third*, Plaintiffs never connect these general statements to any plaintiff or allege that any plaintiff read, heard, or relied on any such statement. *See Garten v. Intamin Amusement Rides Int. Corp. Est.*, No. 3:19-cv-20040, 2021 WL 1976701, at *2 (D.N.J May 18, 2021) (dismissing express warranty claims where plaintiff's argument was that she relied on statements in a brochure, both as mere puffery and because the brochure would not have induced her action). Because Plaintiffs' added allegations do not correct the deficiencies previously identified by the Court, the Court should deny Plaintiffs' motion to amend to include express warranty claims against the Pharmacy Defendants in all complaints as futile and dismiss those claims with prejudice.

**B.    The negligence claims against the Pharmacy Defendants are futile.**
*(PELMC Counts 13 and 15; PMMMC Counts 1 and 2; PPIMC Counts 4 and 5)*

All three of the proposed amended master complaints purport to assert claims against the Pharmacy Defendants for negligence and the related claim of negligence per se. The Court previously dismissed the negligence claims against the Pharmacy Defendants because the pleadings "lump[ed] Defendants together with conclusory allegations" and "fail[ed] to precisely articulate the duty that the Pharmacy Defendants . . . owed to Plaintiffs and the specific breach that occurred."

6

MTD Opinion 5 at 32.  The Court noted that Plaintiffs made ***conclusory statements*** about certain duties the Pharmacy Defendants allegedly owed to Plaintiffs but found that the Master Complaints were "devoid of ***factual allegations*** to support such statements."  *Id.* (emphasis added).

Plaintiffs' proposed amendments to the negligence and negligence per se claims against the Pharmacy Defendants are futile because they do not address these deficiencies.  Regardless of factual development, Plaintiffs' negligence based claims are additionally futile because they fail to plead a legally cognizable duty of care.  Instead, they ask the Court to create new law and new duties that have never been previously recognized.  The Court should decline Plaintiffs' invitation to judicially expand the duties owed by pharmacies to their patients.

### 1.    Plaintiffs do not allege any new facts in support of their negligence counts.

In evaluating Plaintiffs' previously dismissed negligence claims, the starting point must be the counts themselves.  It is immediately clear that nothing has changed.  As the redlines to the Proposed Master Complaints make clear, Plaintiffs allege ***no new facts*** in the proposed negligence counts.  *See* redlined PPIMC (Dkt. 1148-2) at pgs. 135-37; redlined PELMC (Dkt. 1148-4) at pgs. 218-20; redlined PMMMC (Dkt. 1148-6) at pgs. 192-96.

The Proposed Master Complaints still impermissibly reference the "Defendants" jointly, lumping not only all of the Pharmacy Defendants together

7

but also failing to distinguish between the alleged duties owed and breaches committed by the Manufacturer, Wholesaler, and Pharmacy Defendants. *Id.* The counts consist of little more than conclusory statements—such as "Retail Pharmacy Defendants owed Plaintiffs a duty to exercise reasonable care in the vetting [of] their generic manufacture[r] suppliers" (PPIMC ¶ 623)—which the Court already held was insufficient to state a claim in the absence of supporting facts. MTD Opinion 5 at 32; *see also Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 401 (3d Cir. 1992) (affirming dismissal of claim because plaintiff's "conclusory allegation without more is plainly insufficient").

Plaintiffs' proposed revisions to their negligence counts do not satisfy the pleading standard the Court held was necessary, and Plaintiffs' futile request for leave to amend to add these counts should be denied as a result.

> **2.    To the extent Plaintiffs allege new facts elsewhere in their proposed complaints, those facts do not support the existence of any legally cognizable duties that the Pharmacy Defendants breached.**

Although no new factual allegations are pled in Plaintiffs' proposed negligence counts, Plaintiffs may contend that the factual allegations supporting their negligence claims are scattered elsewhere throughout the Proposed Master Complaints. Neither the Pharmacy Defendants nor the Court should be required to scour hundreds of paragraphs of allegations to attempt to identify and reconstruct the facts that support Plaintiffs' conclusory negligence allegations. Nonetheless,

8

even when undertaking that exercise, it is clear Plaintiffs have failed to plead new factual allegations ***anywhere*** in the proposed complaints that support the existence of a legally recognized duty of care owed by the Pharmacy Defendants to Plaintiffs or a breach of that duty. *See* MTD Opinion 5 at 31 (noting that "the prerequisites to a negligence claim a[r]e the existence of a legal duty and its breach").

Notably, Plaintiffs do not allege that the Pharmacy Defendants did anything to cause the impurities in the valsartan, that the Pharmacy Defendants had actual knowledge of the impurities, or that there was anything about the valsartan medications that was irregular on their face that the Pharmacy Defendants should have identified. Rather, Plaintiffs appear to allege that the Pharmacy Defendants had the same three duties the Court previously rejected in dismissing the negligence counts: (1) a duty to independently test the valsartan medications to ensure their purity and bioequivalence (*e.g.*, PPIMC ¶¶ 54, 624); (2) a duty to probe and vet manufacturers and suppliers before buying their products (*e.g.*, *id.* ¶¶ 501-05, 623); and (3) a general duty to "exercise due and proper care in filling prescriptions and selling products to the public" (*id.* ¶ 623). Plaintiffs' request for leave to amend should be denied as futile because Plaintiffs lack the factual and legal support for the imposition of these duties upon the Pharmacy Defendants.

> **a.    There is no legal precedent imposing a duty upon the Pharmacy Defendants to comply with cGMPs or Good Distribution Practices.**

In attempting to assert negligence claims against the Pharmacy Defendants, Plaintiffs ask the Court to recognize legal duties that no state or federal judicial authority has previously imposed upon pharmacies. Pharmacy Defendants have located no case, statute, or other source imposing a duty upon a pharmacy to independently test medication for purity or to vet manufacturers or suppliers.

The best example of Plaintiffs' request to create previously unrecognized duties is their unsupported statement that the FDA's Current Good ***Manufacturing*** Practices (cGMPs) and the World Health Organization's Good ***Distribution*** Practices (GDPs) create duties for pharmacies to test products for quality and purity.[4] Plaintiffs cite to 21 C.F.R. § 210.1(a) for the idea that "entities at all phases of the design, manufacture and distribution chain are bound," (*e.g.*, PMMMC ¶ 194) but that provision merely reads as follows:

> The regulations set forth in this part . . . contain the minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing,

---

[4] PPIMC ¶¶ 515-18. Several other counts are premised in part upon Plaintiffs' contention that the Pharmacy Defendants were required to comply with cGMPs and GDPs. *See* PPIMC ¶¶ 685-86, 688 (negligent misrepresentation), 754-55 (violation of state consumer protection statutes), 637 (negligence per se); PELMC ¶¶ 625-26 (express warranty), 675-79 (fraud), 707-10 (negligent misrepresentation), 740-41 (violation of state consumer protection statutes), 809-11 (negligence per se); PMMMC ¶¶ 657-58 (express warranty), 669-73 (fraud), 596-99 (negligent misrepresentation), 586-88 (negligence per se). Because the Pharmacy Defendants are not subject to cGMPs or GDPs, Plaintiffs' motion for leave to amend these other counts should be denied to the extent they are based—wrongly—upon the Pharmacy Defendants' alleged obligation to comply with them.

10

packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess.

21 C.F.R. § 210.1(a).  There is no statement in this regulation—or any other statute or regulation—that extends the obligations imposed by the cGMPs to retail pharmacies.

Most critically, there is *no reported legal opinion*, *no FDA guidance*, and *no policy statement issued by any regulatory agency* that has ever even implied that retail pharmacies are required to comply with cGMPs.  Only one reported case exists in which a plaintiff even attempted to do what Plaintiffs are doing here, and that court held that retail pharmacies were not required to comply with cGMPs.  In *Cooper v. CVS Caremark Corp.*, 176 So. 3d 422 (La. Ct. App. 2015), the plaintiff alleged that the pharmacy sold expired drugs—something not alleged here—in violation of cGMPs.  *Id.* at 424.  In rejecting the plaintiff's argument, the court began by noting that there is no provision that supports the idea that "statutes governing the 'manufacture of drugs' should be construed to regulate the retail sale" of medication.  *Id.* at 426-27.  The court looked at the language in the cGMP statute (21 U.S.C. § 351(a)(2)(B)) and found that it could only be read to be limited to the manufacture of drugs and, since the pharmacy was not a manufacturer, it was not required to conform to cGMPs.  *Id.* at 427.

Other courts have likewise stated that cGMPs impose duties upon

11

***manufacturers*** only.  *See U.S. v. 789 Cases, More or Less, of Latex Surgeons' Gloves*, 799 F. Supp. 1275, 1285 (D.P.R. 1992) ("[T]he GMP regulations are intended to be preventive, by requiring ***manufacturers*** to build quality into their devices . . . ."); *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1157 (D. Minn. 2009) ("The CGMPS . . . require ***manufacturers*** to develop their own quality-system controls . . . ."); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 278 (E.D.N.Y. 2009) (stating that cGMPS are "intended to serve only as an umbrella quality system, providing general objectives medical-device ***manufacturers*** must seek to achieve") (emphasis added to all).

Earlier this year, the FDA issued guidance on the specific issue in this case: the "Control of Nitrosamine Impurities in Human Drugs."  Within the guidance, the FDA stated what "drug product manufacturers" must do in order to meet the cGMP regulations to test for nitrosamines.[5]  No reference is made to pharmacies in any section of this guidance, nor is there any implication that pharmacies should be testing for nitrosamines as part of cGMP compliance.

_____

[5] FDA, "Control of Nitrosamine Impurities in Human Drugs: Guidance for Industry," FDA-2020-D-1530 (Feb. 2021), *available at*: https://www.fda.gov/media/141720/download.  The Court can judicially notice public materials.  *See Coppolino v. Total Call Int'l, Inc.*, 588 F. Supp. 2d 594, 599 (D.N.J. 2008) (court can judicially notice matters of public record without a summary judgment conversion); *Hemy v. Perdue Farms, Inc.*, No. CIV.A. 11-888 FLW, 2011 WL 6002463, at *20 (D.N.J. Nov. 30, 2011) (judicially noticing a website printout).

12

Plaintiffs likewise have no legal support for contending that the World Health Organization's Good Distribution Practices create legally cognizable duties. The WHO describes these practices as "guidelines" that "should be considered" by various participants in the chain of distribution.[6]  The guidelines are not laws but rather best practices and suggested recommendations.  No state or federal court has ever used the GDPs as the basis for a duty imposed upon *any* defendant at *any* level of the manufacturing or distribution chain.

Plaintiffs' attempt to require retail pharmacies to comply with obligations imposed by cGMPs and GDPs is unprecedented.  They lack any authority from any court or agency to support their theory.  Adopting Plaintiffs' theory would completely upend the retail pharmacy industry, requiring the entire industry to adopt practices and procedures never previously imposed upon it.  The Court should decline to create new law and should find that Plaintiffs' attempt to base their negligence (and other claims) upon the Pharmacy Defendants' duty to comply with cGMPs and GDPs to be futile.

Likewise, Plaintiffs' negligence per se claims appear to be entirely based upon alleged violation of the cGMPs.  *See* PPIMC ¶ 637; PELMC ¶¶ 809-11; PMMMC ¶¶ 586-88.  No statute or regulation imposes those obligations upon

---

[6] "WHO good distribution practices for pharmaceutical products," at p. 236, available at https://www.who.int/medicines/areas/quality_safety/quality_assurance/GoodDistributionPracticesTRS957Annex5.pdf.

pharmacies, and the negligence per se claims asserted against the Pharmacy Defendants are futile. Leave to amend should be denied.

> **b.** **There is no legal precedent imposing a duty upon the Pharmacy Defendants to test the chemical composition of medication purchased.**

Similarly, Plaintiffs' theory that the Pharmacy Defendants had a duty to test the medication they received from suppliers to verify the chemical composition of the ingredients contained within is unsupported by any statute, regulation, or reported caselaw. Imposing such a duty would be nothing less than a seismic expansion of pharmacy duties.

> **i.** <u>Generally, retailers do not have a duty to test or investigate the safety of their products.</u>

The Pharmacy Defendants dispensed products received from suppliers to members of the general public pursuant to valid prescriptions. It is well settled that even a general retailer of goods does not have a duty to investigate the safety of its products. According to the Restatement (Second) of Torts (1965), a "seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence . . . because of his failure to discover the danger by an inspection or test of the chattel before selling it." *Id.* § 402. The "burden on the seller of requiring him to inspect chattels which he reasonably believes to be free from hidden danger outweighs the magnitude of the risk that a particular chattel may be dangerously defective." *Id.*

14

§ 402 cmt. d.

Importantly, the "words 'reason to know' ***do not impose any duty to ascertain unknown facts***." *Id.* § 401 cmt. a (emphasis added). Rather, a seller is liable only if he actually "has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that" a product was dangerous. *Id.* The "reason to know" standard is different from the "should have known" standard that Plaintiffs reference throughout their Proposed Master Complaints. *See id.*; *see, e.g.*, PPIMC ¶¶ 404, 414, 420, 453, 582, 625.

"The fact that the defect ***could*** have been discovered by the seller, or that a reasonable man ***would*** have discovered it, is not enough to impose liability . . . ." Restatement (Second) of Torts § 401 cmt. i (emphasis added). Rather, the "important question is what he ***did know***." *Id.* (emphasis added). Numerous states have adopted this standard. *See, e.g., Guglielmo v. Klausner Supply Co.*, 259 A.2d 601, 614 (Conn. 1969) (adopting and quoting section); *Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 456 (Md. 1992); *Bren-Tex Tractor Co. Inc. v. Massey-Ferguson, Inc.*, 97 S.W.3d 155, 159 (Tex. App. 2002).

Plaintiffs at no point in any of the hundreds of paragraphs in any of the Proposed Master Complaints allege any facts supporting a claim that any Pharmacy Defendant ***did know*** of the impurities in the valsartan. Rather, Plaintiffs' theory is that the Pharmacy Defendants had a duty to ***ascertain***

***unknown facts*** by either testing the products independently or investigating the manufacturers and wholesalers. As summarized in the Restatement, courts do not impose upon retailers a duty to so ascertain. To allege a cognizable negligence claim, Plaintiffs must allege facts indicating that each Pharmacy Defendant had actual knowledge of the impurities. Since they failed to do so, no cognizable duty has been alleged, and leave to amend the negligence counts should be denied.

ii.     <u>Specifically, pharmacies do not have a recognized duty to test the composition of the medications they dispense.</u>

Because pharmacies dispense FDA-regulated medications, there is simply no duty for a pharmacy to independently test the medication they dispense. Plaintiffs make the conclusory legal statement that pharmacies are subject to this duty, but they do not offer any facts in support. This is insufficient to cure the pleading deficiencies this Court identified when dismissing the negligence counts against the Pharmacy Defendants.

Plaintiffs are asking the Court to create new law and impose expansive duties upon the pharmacy industry that have never before been recognized. The Seventh Circuit has stated its view on pharmacies' duties plainly, stating that pharmacies "can't be expected to warn their customers of the possible defects and dangers of the prescription drugs they sell. It would be senseless, especially given drug regulation by the Food and Drug Administration and the extensive tort liability of drug manufacturers, to make pharmacies liable in tort for the

16

consequences of failing to investigate the safety of thousands of drugs." *Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011).

Other courts have rejected the concept, as well. For example, in *Winters v. Alza Corp.*, 690 F. Supp. 2d 350 (S.D.N.Y. 2010), the plaintiff sued a pharmacist (along with a manufacturer) for dispensing a defective generic drug product. *Id.* at 352-54. The court noted that "the plaintiff has failed to locate a single case in any jurisdiction where a court has actually used his proposed theory to hold a pharmacy liable for negligence." *Id.* at 355. "By asking that pharmacies ensure the complete safety of any product that they dispense—even when the defect at issue is the result of an intrinsic design flaw—the plaintiff would have us place pharmacies on par with drug manufacturers for the purposes of tort liability." *Id.* at 356. "This is not only wrong as a matter of law, but it would also impose a duty on pharmacists that is grossly disproportional to their limited degree of expertise—which entails competently dispensing drugs as directed, with appropriate instructions for customers, while monitoring for potential contraindications." *Id.*

The court continued: "The plaintiff's theory of liability also requires every pharmacist to act as a sort of shadow FDA, making decisions about what types of drugs are and are not safe for the public as a general matter. There is simply no reason to believe that pharmacists are—or should be—equipped to make those sorts of decisions, and asking them to do so **would entail a dramatic expansion of**

17

*their duties under tort law*.” *Id.* (emphasis added).

Plaintiffs lack any support for imposing a duty upon the Pharmacy Defendants to discover intrinsic product defects. And this is especially true here, where Plaintiffs allege that the Manufacturing Defendants intentionally concealed the alleged defects. *See*, *e.g.*, PPIMC ¶¶ 186, 275. Under such circumstances, courts have universally held that negligence claims against healthcare providers, like the Pharmacy Defendants here, fail. *E.g. Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D.W.Va. 2003) (finding that negligence claim against healthcare provider was “undercut, defeated, and made impossible by the claims of fraud and misrepresentation against the manufacturers, who allegedly prevented anyone from knowing the dangers”).

Plaintiffs seem to base their claim of a pharmacy industry testing standard upon the practices of a single purported pharmacy, Valisure. PPIMC ¶ 526. However, the law is clear that the actions of a *single company* do not define an *industry* standard. *See Grdinich v. Bradlees*, 187 F.R.D. 77, 81-82 (S.D.N.Y. 1999) (declining to adopt an industry standard based solely upon the guidelines set by a single retailer); *Halliday v. Cruise Ship Excursions, Inc.*, No. ST-14-cv-146, 2016 WL 6635157, at *11-12 (V.I. Super. Ct. Nov. 4, 2016) (“[S]ome industry players at the forefront . . . may implement their own heightened guidelines. But, such guidelines do not reflect the industry standard.”).

18

Finally, Plaintiffs seem to contend that the Pharmacy Defendants should have been aware of a need for them to independently test the composition of the generic medication at issue in this case, either because of the "price differential" between the generics and the brand (*e.g.*, PPIMC ¶¶ 404, 420, 448, 453), because the medication was manufactured overseas (*id.* ¶¶ 522-25), or because the Pharmacy Defendants should have simply recognized that "FDA oversight alone is inadequate to ensure the safety of prescription drug products" (*id.* ¶ 521).  Over 1,000 generic drugs have been launched since 2016 alone,[7] and more than 40% of finished drugs and 80% of active pharmaceutical ingredients are manufactured overseas.[8]  To adopt Plaintiffs' theory, the Court would need to conclude that the Pharmacy Defendants had a duty to test every generic drug (which are almost always less expensive than the brand) and every drug containing an API manufactured overseas.  It is a gross expansion of pharmacies' duties, and the cost of compliance would dramatically increase the price of medically necessary medications and impose an obligation that many small pharmacies would not be able to bear.

This is not the first lawsuit in which a group of plaintiffs sued to recover for

---

[7] *See* Alex Kewon, *Despite Record Number of Generic Drug Approvals, Many Are Not Available in the U.S.*, BIOSPACE, Nov. 20, 2019, www.biospace.com/article/despite-record-number-of-generic-drug-approvals-many-are-not-yet-available-in-the-u-s-/

[8] GAO-17-143, DRUG SAFETY, https://www.gao.gov/assets/gao-17-143.pdf.

defects in prescription medications.  The allocation of responsibility for such defects has been resolved in the many cases that have come before.  In ***none*** of those cases has a court held that retail pharmacies are responsible for independently testing medications to ensure that their chemical composition matches that represented by the manufacturer.  This Court should decline to create new law and decline to create a new duty of care never previously recognized.

> **c.    There is no legal precedent imposing a duty upon the Pharmacy Defendants to "vet" manufacturers supplying medication.**

Similarly, no court has previously imposed a duty upon pharmacies to investigate or "vet" the standards employed by the manufacturers from whom they purchase.  As a result, the Court should again decline to create novel duties of care never previously recognized.

Plaintiffs also fail to allege facts that describe exactly what this alleged duty entails or how the Pharmacy Defendants breached it.  At most, Plaintiffs allege that manufacturers "often make presentations" to the Pharmacy Defendants before entering into purchase contracts, and that employees of manufacturers meet with employees of the Pharmacy Defendants at industry conferences, so the Pharmacy Defendants allegedly have opportunities during these meetings and conferences to ask the manufacturers questions about their safety standards.  *See* PPIMC ¶¶ 501-04.  These allegations are meaningless for at least three reasons.  First (and most

fundamentally), Plaintiffs do not and cannot explain why Pharmacy Defendants have any duty to second-guess the FDA's approval of manufacturers and medications at any time, much less during these vaguely alleged presentations. Second, even putting that basic deficiency aside, these "contacts" are so speculatively alleged that they could not have plausibly afforded Pharmacy Defendants with an opportunity to fully understand a manufacturer's compliance with safety standards.  And third, nothing in Plaintiffs' allegations suggest that any Pharmacy Defendant failed to ask the "right" questions or otherwise appropriately "vet" a supplier in a way that could have identified any defect in the products, even in an imaginary world where a duty to do so existed.

Plaintiffs' claim that the Pharmacy Defendants "could have asked questions" is not sufficient to state a claim for negligence absent a legally recognized duty to ask such questions and facts supporting each Pharmacy Defendant's failure to adequately perform.  Plaintiffs should be denied leave to base their negligence claims on a pharmacy's non-existent duty to review the practices of the manufacturers.

> **d.    There is no factual support for Plaintiffs' allegation that the Pharmacy Defendants failed to comply with any duty to safely fill prescriptions.**

Finally, Plaintiffs allege that the Pharmacy Defendants have a duty to safely fill prescriptions they dispense.  Plaintiffs fail to allege facts supporting a breach of

that duty by any Pharmacy Defendant.  There is no allegation that any Pharmacy Defendant mis-filled a prescription or negligently provided advice regarding valsartan.  Rather, Plaintiffs' claim is that the Pharmacy Defendants should have independently investigated every medication they received from every manufacturer and uncovered a risk not identified by all of the various entities who were actually responsible for and were actually testing the same products.

The facts pled in the Proposed Master Complaints support only one conclusion: that the Pharmacy Defendants complied with every legally recognizable duty of care.  As a result, the Court should find that Plaintiffs' proposed amendments of their negligence counts as it relates to the Pharmacy Defendants should be denied and those counts dismissed with prejudice.

**C.    The fraud-based claims against the Pharmacy Defendants are similarly futile.** *(PELMC Counts 5, 7, and 9; PMMMC Counts 3 and 8; PPIMC Counts 8, 9, and 10)*

As with their express warranty and negligence claims, Plaintiffs do not add sufficient detail to their fraud claims to cure the deficiencies identified by the Court when it previously dismissed all fraud-based claims against the Pharmacy Defendants.  *See* MTD Opinion 4 at 18-21.  As this Court previously noted, to assert a fraud claim, Plaintiffs must plead ***defendant-specific*** allegations that identify the time, place and content of statements with particularity—the "who, what, when, where, and how."  *Id.* at 19-20.  There must be a "measure of

22

substantiation" to the allegations, and Plaintiffs cannot rely on conclusory allegations of knowledge.  *Id*.  Plaintiffs' proposed amendments do not address any of the Court's concerns, still group all defendants together, and fail to provide the level of detail necessary to state a fraud-based claim.

Plaintiffs make no pharmacy-specific allegations in their updated fraud sections, beyond restating what they previously alleged—that the Pharmacy Defendants should have known that valsartan contained impurities (even though those impurities were allegedly concealed by the other defendants).  PELMC ¶¶ 676, 708; PMMMC ¶ 597, 670, 672; *see also* redlined PELMC at pgs. 189-91. Other additions improperly collectivize allegations against all "Defendants" generally.  PELMC ¶¶ 740-51.

The closest the Plaintiffs get to a specific allegation is a general reference that collectivized "Defendants" "misrepresented material facts by lauding their safety and risk mitigation approaches on their websites."  PPIMC ¶¶ 690, 755; PELMC ¶¶ 710, 741; PMMMC ¶ 599.  The PMMMC refers to "Sections N.1-11" for more detail (PMMMC ¶ 599), but no such sections exist.  To the extent Plaintiffs meant to refer to Section Q or Section R, those sections list supposed "warranties" offered by the pharmacies that are nothing more than—as Plaintiffs themselves admit—"loft[y]" goals.  *See* PMMMC ¶¶ 417, 508, 509, 518, 519, 529, 530 (describing purpose and mission statements or non-customer-facing supplier

guidelines).  Such general mission statements cannot form the basis of a fraud

claim.  *See, e.g.*, *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177

(N.J. Super. Ct. App. Div. 2003) ("mere puffing about a product or company . . .

will not support relief"); *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) (slogan is

not a statement of fact and is "nothing more than puffery").

     Moreover, Plaintiffs never connect the dots between these website

statements and Plaintiffs' reliance.  The Court previously dismissed the fraud-

based claims in part because "plaintiffs do not allege when these statements were

made, or at what point—if ever—each plaintiff was exposed to these statements."

MTD Opinion 4 at 20 (citing *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 528

(D.N.J. 2008)); *see also Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F.

Supp. 2d 529, 539 (D.N.J. 2011) (dismissing fraud claims where plaintiff provided

no details about statements' origins).  Plaintiffs still fail to cure the deficiencies the

Court noted.  There are still no allegations that any plaintiff was ever exposed to

(let alone actually relied on) any of the general website statements the Plaintiffs

now include in the amended complaints.

     As with the express warranty and negligence claims, Plaintiffs have not

cured the deficiencies that led to the dismissal of the fraud-based claims in the first

place.  Accordingly, all claims based on fraud, express warranty, or negligence

would be futile and should be dismissed with prejudice against the Pharmacy

Defendants.

The remaining counts are discussed on a complaint-by-complaint basis.

## II. Leave to amend should be denied because the PELMC asserts numerous claims that are futile.

Plaintiffs purport to assert class economic loss claims against the Pharmacy Defendants under the laws of all 50 states, the District of Columbia, and Puerto Rico. *See, e.g.*, PELMC ¶¶ 605, 612, 628, 645, 736. Plaintiffs lack standing to pursue these claims as to some of the Pharmacy Defendants and under the laws of the majority of these jurisdictions. Of the claims that they have standing to bring, most are futile. Based on the Court's prior rulings on standing, traceability, and their substantive claims, Plaintiffs should be prohibited from pursuing any class economic loss claims against the Pharmacy Defendants ***except*** a breach of implied warranty claim against Kroger, Walmart, and Walgreens under Indiana law, and certain limited unjust enrichment claims, as described below.

### A. The putative class representatives do not have standing to assert economic loss claims in most jurisdictions against several defendants.

As discussed more thoroughly in the Manufacturers' brief, this Court has correctly ruled that Plaintiffs lack standing to assert claims under the laws of states in which Plaintiffs "neither reside … nor have alleged they suffer[ed] an injury," MTD Opinion 2 at 19, and that they are required to trace their injuries to specific defendants. *Id.* at 17. *See Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1096

n.18 (3d Cir. 1975) ("[A] nominal plaintiff may not maintain an action on behalf of a class *against a specific defendant* if the plaintiff is unable to assert an individual cause of action *against that defendant*.") (emphases added); Newberg on Class Actions § 2:5 (5th ed.) ("[C]lass representatives do not have standing to sue defendants who have not injured them[,] even if those defendants have allegedly injured other class members.").

Despite having years to find named plaintiffs, Plaintiffs have only identified an economic loss class representative for 22 states (Alabama, California, Connecticut, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, New Jersey, New Mexico, New York, North Carolina, Ohio, Pennsylvania, Texas, and Virginia). PELMC ¶¶ 14-58. Of those 22, no Plaintiff from Kentucky or Maine traces his or her purchases to any Pharmacy Defendant. PELMC ¶¶ 42, 57. Even the Plaintiffs in the remaining 20 states fail to trace purchases to most individual Pharmacy Defendants. And *no* putative class representative alleges that he or she purchased valsartan from Pharmacy Defendant Humana.

Accordingly, all claims against all the Pharmacy Defendants under the laws of the 32 jurisdictions for which there are no class representatives who allege they purchased valsartan from a Pharmacy Defendant must be dismissed with prejudice. Further, the state-specific claims in the ELMC must be dismissed with prejudice as

to the multiple Pharmacy Defendants to whom plaintiffs cannot trace their injuries, as outlined in Appendix A.  *In re Insulin Pricing Litig.*, 2019 U.S. Dist. LEXIS 25185, at *55 (D.N.J. Feb. 15, 2019); MTD Opinion 2 at 19 (a "plaintiff must demonstrate standing for each claim he seeks to press") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006)).

B.    **Certain state-law claims in the PELMC for breach of implied warranty should be dismissed based on the Court's prior rulings.** *(Count 3)*

In MTD Order 3, the Court held that the vast majority of states bar breach of implied warranty claims against pharmacies.  *Id.* at 2-3.  The Court agreed with the Pharmacy Defendants that in most states, pharmacies are not subject to strict liability for latent defects in the drugs they dispense because they provide a service rather than sell a product, and therefore that they are not subject to breach of implied warranty claims, either.  MTD Opinion 3 at 23-24.  Whether a particular state's law recognizes breach of implied warranty claims against pharmacies is a matter of law, and not something that pleading amendments could cure.  Plaintiffs have not disputed the Court's legal determinations.

Despite this, in the PELMC, Plaintiffs purport to bring a breach of implied warranty claim against the Pharmacy Defendants as to all 50 states, the District of Columbia, and Puerto Rico.  PELMC ¶ 645.  As noted above, Plaintiffs only have standing to assert claims against any Pharmacy Defendant under the laws of 20

27

states.  Of those states, consistent with its prior rulings (*see* MTD Opinion 3 at 23-24), the Court should deny Plaintiffs' request to amend the ELMC to include any implied warranty cause of action against the Pharmacy Defendants, with a single exception: Plaintiffs may pursue an implied warranty claim under Indiana law against Walmart, Walgreens, and Kroger.  As set forth below, Plaintiffs' claims are barred in the remaining jurisdictions:

1.  **Alabama** (*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Prac. & Prods. Liab. Litig.*, No. 3:11-cv-20153, 2012 WL 1831789, at *4 (S.D. Ill. May 18, 2012) ("Alabama law indicates that where a pharmacist correctly fills a valid prescription signed by a licensed physician, no cause of action will lie."))

2.  **California** (*Garza v. Endo Pharms.*, No. CV 12-1585, 2012 WL 5267897, at *2 (C.D. Cal. Oct. 24, 2012) ("Because under California law pharmacies primarily provide a service, not a product, a breach of warranty claim does not lie."))

3.  **Connecticut** (*Altieri v. CVS Pharmacy, Inc.*, No. X06CV020171626S, 2002 WL 31898323, at *4 (Conn. Super. Ct. Dec. 13, 2002) (because a pharmacy primarily furnishes a service rather than sells a product, pharmacies may not be held strictly liable for dispensing a prescription drug))[9]

4.  **Florida** (*McLeod v. W. S. Merrell Co.*, 174 So. 2d 736, 739 (Fla. 1965) (rejecting strict liability and warranty claims and the conversion of "prescription druggists into insurers of the safety of the manufactured drug"))

5.  **Georgia** (*Presto v. Sandoz Pharms. Corp.*, 487 S.E.2d 70, 75 (Ga. Ct. App. 1997) ("[I]mplied warranties do not apply to the dispensing of medication by

---

[9] Although the Court's previous Motion to Dismiss order on implied warranty claims neither granted nor denied the Pharmacy Defendants' motion to dismiss as to Connecticut (*see* MTD Order 3 at 3), given that the Connecticut case law is similar to the case law of those states where the Court granted the motion to dismiss, Plaintiffs should be precluded from asserting Connecticut law implied warranty claims against the Pharmacy Defendants in any complaint.

a pharmacist.”))

6.  **Illinois** (*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 692 F. Supp. 2d 1012, 1023 (S.D. Ill. 2010) (no breach of warranty claim against pharmacist because predominant purpose of transaction is provision of services, not sale of product))

7.  **Kansas** (*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, Nos. MDL 1203, Civ. A. 99-20186, 2000 WL 1886594, at *4 (E.D. Pa. Dec. 7, 2000) (applying Kansas law; no ground supporting strict liability claim against pharmacy for sale of medication with latent defect))

8.  **Louisiana** (*Zehner v. Nordskog Indus., Inc.*, No. 92-2508, 1992 WL 233984, at *3 (E.D. La. Sept. 2, 1992) (all claims subsumed within Louisiana Products Liability Act, and no strict liability under Act for non-manufacturers unless they knew or should have known of alleged defect); *see also* MTD Order 5 at 3 (dismissing with prejudice all claims under Louisiana law as subsumed))[10]

9.  **Massachusetts** (*Carrozza v. CVS Pharmacy, Inc.*, 391 F. Supp. 3d 136, 148 (D. Mass. 2019) (because “[a] pharmacist’s dispensing of prescription drugs is more akin to a mixed contract of goods and services rather than a simple sale of goods,” and because the UCC does not apply to services, warranty claims against pharmacies fail under Massachusetts law))

10.  **Minnesota** (*Torpey v. Red Owl Stores, Inc.*, 228 F.2d 117, 120 (8th Cir. 1955) (no implied warranty where a retailer sells goods in their original, sealed packaging))

11.  **Mississippi** (*In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 288-90 (S.D.N.Y. 2001) (applying Mississippi law; no strict liability or warranty claims against pharmacies))

12.  **New Jersey** (*Feldman v. Lederle Labs.*, 479 A.2d 374, 380-81 (N.J. 1984) (strict liability inapplicable when essential nature of transaction involves a service); *Magrine v. Krasnica*, 227 A.2d 539, 543 (N.J. Hudson Cnty. Ct. 1967), *aff’d sub nom. Magrine v. Spector*, 241 A.2d 637 (N.J. Super. Ct. App. Div. 1968), *aff’d per curiam*, 250 A.2d 129 (N.J. 1969) (dentist provided service and was not subject to strict liability for latent defect in

---

[10] Plaintiffs do not assert a cause of action in the PELMC under the Louisiana PLA.

needle))

13.　**New Mexico** (*Ruiz v. S. Pac. Transp. Co.*, 638 P.2d 406, 412 (N.M. Ct. App. 1981) (service providers cannot be subject to strict liability))

14.　**New York** (*Ullman v. Grant*, 450 N.Y.S.2d 955, 957 (Sup. Ct. 1982) ("The prescription drug supplied to the plaintiff is not within the scope of strict products liability and therefore the dispenser of same is insulated from liability"))

15.　**North Carolina** (*Batiste v. Am. Home Prods. Corp.*, 231 S.E.2d 269, 275-76 (N.C. Ct. App. 1977) (dismissing warranty claims; "strict liability without fault should not be applied to the prescription druggists" (citation omitted)))

16.　**Ohio** (*Long v. Tokai Bank of Cal.*, 682 N.E.2d 1052, 1058-59 (Ohio Ct. App. 1996) (rejecting expansion of strict liability))

17.　**Pennsylvania** (*Ramirez v. Richardson-Merrell, Inc.*, 628 F. Supp. 85, 87 (E.D. Pa. 1986) ("[R]etail pharmacists should not be held strictly liable for injuries sustained as the result of the ingestion of certain drugs."))

18.　**Texas** (*Garcia v. Nissan Motor Co.*, No. Civ. A. M-05-59, 2006 WL 869944, at *3 (S.D. Tex. Mar. 30, 2006) (no non-manufacturer strict liability unless actual knowledge); *see also Rendon v. Walgreens*, 144 F. Supp. 3d 894, 897-98 (N.D. Tex. 2015) (claims against pharmacies arising under Texas law from dispensing prescription medication are limited to claims for professional and gross negligence))

19.　**Virginia** (*Gressman v. Peoples Serv. Drug Stores, Inc.*, 9 UCC. Rep. Serv. 2d (West) 842, 842-47 (Va. Cir. 1988) (pharmacies provide health care services and are not subject to warranty claims))

Accordingly, as to the PELMC, Plaintiffs may only pursue a breach of implied warranty claim under Indiana law, and only as to the Pharmacy Defendants that dispensed medication to the putative Indiana class representatives—Kroger, Walmart, and Walgreens.  *See* Appendix A.  Economic loss Plaintiffs' breach of implied warranty claims under the laws of all other states and against all other

30

Pharmacy Defendants should be dismissed with prejudice.

### C. Certain state-law claims in the PELMC for unjust enrichment should be dismissed based on the Court's prior rulings. *(Count 11)*

For the 20 states for which the proposed economic loss class representatives have standing against a Pharmacy Defendant, the Court granted Defendants' motion to dismiss the unjust enrichment claim as to seven of them (Alabama, Florida, Illinois, Kansas, Louisiana, Massachusetts, and Mississippi) because Plaintiffs did not adequately plead that no adequate remedy at law exists in those states. MTD Order 6 at 2-3. Despite this, Plaintiffs' PELMC pursues this cause of action against all Defendants in all jurisdictions. PELMC Count 11.

For the reasons stated in the Manufacturers' Opposition, Plaintiffs' proposed amendments include only conclusory allegations with no supporting facts and fail to cure the deficiencies that led to their dismissal. Accordingly, in the amended ELMC, the unjust enrichment claim must be limited to the following jurisdictions and Pharmacy Defendants, consistent with the Court's prior orders: California law as to CVS, Express Scripts, Albertson's, and OptumRx; Connecticut law as to CVS; Georgia law as to CVS, Walgreens, and Rite Aid; Indiana law as to Kroger, Walmart, and Walgreens; Minnesota law as to Walmart; New Jersey law as to CVS and Walgreens; New Mexico law as to Walgreens; New York law as to Rite Aid, CVS, and Walgreens; North Carolina law as to Walmart; Ohio law as to Rite Aid; Pennsylvania law as to CVS; Texas law as to CVS, Walgreens, and Walmart;

31

and Virginia law as to Walgreens and Walmart.  *See* PELMC ¶¶ 14-58; Appendix A.  All other unjust enrichment claims against any Pharmacy Defendant should be dismissed with prejudice.

### III.    Leave to amend the PMMMC should be denied because all but one claim against the Pharmacy Defendants is futile.

Like the economic loss class action, the named Plaintiffs in the medical monitoring proposed amended complaint purport to assert class claims against all of the Pharmacy Defendants as to all 50 states, plus the District of Columbia, and Puerto Rico.  PMMMC ¶¶ 558 560, 639, 660.  As against the Pharmacy Defendants, every medical monitoring claim—except one—is futile and leave to amend should be denied for all other claims.  Based on the Court's prior rulings on standing, traceability, and their substantive claims, Plaintiffs should be prohibited from pursuing any class claims against the Pharmacy Defendants *except* an independent medical monitoring cause of action under the laws of Illinois against Walmart and Walgreens.

#### A.    The putative class representatives do not have standing to assert medical monitoring claims in most jurisdictions against several defendants.

Plaintiffs have only identified a medical monitoring class representative for 10 states (California, Colorado, Florida, Illinois, Kansas, Maryland, New Jersey, Pennsylvania, Texas, and West Virginia).  PMMMC ¶¶ 397-412.  Of those 10, no class representative from Colorado or Pennsylvania traces a purchase to any

32

Pharmacy Defendant.  PMMMC ¶¶ 403, 407.  Plaintiffs only have standing to pursue claims under the laws of eight states, as they have failed to allege standing to sue the Pharmacy Defendants under the laws of remaining 44 jurisdictions, and all claims against the Pharmacy Defendants must be dismissed with prejudice as to those jurisdictions.  In the eight remaining states, Plaintiffs cannot trace purchases to several Pharmacy Defendants, and the claims must be dismissed with prejudice against individual Pharmacy Defendants as outlined in the chart at Appendix B.

**B.     Claims in the PMMMC for breach of implied warranty against the Pharmacy Defendants should be dismissed based on the Court's prior rulings.** *(Count 6)*

The medical monitoring Plaintiffs should be denied leave to amend to assert a breach of implied warranty claim against any Pharmacy Defendant because any such claim under the laws of the at-issue states would be futile.  More specifically, a named plaintiff has attempted to plead a medical monitoring class claim against a Pharmacy Defendant in eight states (California, Florida, Illinois, Kansas, Maryland, New Jersey, Texas, and West Virginia), but ***zero*** of those states recognize claims against pharmacies for breach of implied warranty.

As noted above in the economic loss section, the Court has already ruled that Plaintiffs cannot pursue a cause of action for breach of implied warranty against the Pharmacy Defendants under the laws of California, Florida, Illinois, Kansas, New Jersey, and Texas.  MTD Order 3 at 3; *see* PELMC Breach of Implied

33

Warranty Section, Part II.B, above. The Court previously did the same for Maryland and West Virginia as well. *See* MTD Order at 3; *see also Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 578 (Md. 2006) (no liability unless pharmacy prepares and provides a patient package insert, and that warranty causes harm to the plaintiff); *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 405-06 (S.D.W. Va. 2005) (pharmacies immunized "from all claims based upon the quality of the drug" once "repackaged for retail"). Plaintiffs' motion for leave to amend the MMMC to assert breach of implied warranty claims against the Pharmacy Defendants must therefore be denied and that claim dismissed with prejudice.

C.     **Claims in the PMMMC for strict liability against the Pharmacy Defendants should be dismissed based on the Court's prior rulings.** *(Counts 4b[11] and 5)*

The medical monitoring Plaintiffs also should be denied leave to amend to assert strict liability claims against the Pharmacy Defendants because any such claim under the laws of the at-issue states would be futile.

In their proposed MMMC, Plaintiffs purport to assert strict liability causes of action against the Pharmacy Defendants for Products Liability–Manufacturing Defect and Failure to Warn, presumably under the laws of all states and territories (though the pleading does not specify). PMMMC Counts 4(b) and 5. For the eight

---

[11] The PMMMC contains two "Fourth Counts," which this brief identifies as Count 4a (*see* PMMMC ¶¶ 608-623) and Count 4b (*see* PMMMC ¶¶ 624-630).

states for which the proposed medical monitoring class representatives have

alleged standing to assert claims against any Pharmacy Defendant (California,

Florida, Illinois, Kansas, Maryland, New Jersey, Texas, and West Virginia), the

Court has already held that the laws of six of them do not permit strict liability

claims against the Pharmacies.  MTD Opinion 5 at 34-35 (dismissing strict liability

claims under the laws of California, Florida, Illinois, Maryland, New Jersey, and

West Virginia).[12]  Additionally, the Court dismissed with prejudice all variants of

strict liability claims in the prior medical monitoring complaint arising under the

laws of New Jersey and Kansas, holding that they are subsumed by the New Jersey

and Kansas Product Liability Acts.  MTD Opinion 5 at 13, 20-21.[13]  Leave to

amend to assert these dismissed claims should be denied, as Plaintiffs have done

---

[12] *See Murphy v. E.R. Squibb & Sons, Inc.*, 710 P.2d 247, 251-52 (Cal. 1985) (strict
liability for defective pharmaceutical products does not extend to the pharmacies
that dispense drugs to patients); *McLeod*, 174 So. 2d at 739 (rejecting strict liability
and warranty claims and the conversion of "prescription druggists into insurers of
the safety of the manufactured drug"); *Jones v. Irvin*, 602 F. Supp. 399, 400 (S.D.
Ill. 1985) ("Recent cases have uniformly held that a pharmacist is not strictly liable
under a products liability theory since he is not a retailer."); *Rite Aid Corp.*, 894
A.2d at 578 (no liability unless pharmacy prepares and provides a patient packet
insert, and that express warranty causes harm to the plaintiff); *Feldman*, 479 A.2d
at 380-81 (strict liability inapplicable when essential nature of transaction involves
a service); *Magrine*, 227 A.2d at 543 (dentist provided service and not subject to
strict liability for latent defect in needle); *Ashworth*, 395 F. Supp. 2d at 405-06
(pharmacies immunized "from all claims based upon the quality of the drug" once
"repackaged for retail").
[13] Plaintiffs have not asserted a Kansas or New Jersey Product Liability Act claim in
the PMMMC.

nothing to cure a pure issue of law that no amendment *can* cure.

This leaves Texas as the only remaining state at issue. However, a strict liability claim under Texas law would also be futile, as claims against pharmacies arising from their dispensation of prescription medication are limited to claims for professional and gross negligence. *Rendon*, 144 F. Supp. 3d at 897-98 (granting pharmacy motion to dismiss strict liability claims); *see also In re Rezulin Prod. Liab. Litig.*, 133 F. Supp. 2d at 294 ("Texas law does not hold pharmacists liable for failure to warn of the risks of medications" and "it would be unreasonable to suppose a different result with respect to strict products liability claims.").

Thus, Plaintiffs' motion for leave to amend the MMMC to include products liability-manufacturing defect and failure to warn claims against the Pharmacy Defendants should be denied and those claims dismissed with prejudice.

### D.    All but one separate medical monitoring cause of action against the Pharmacy Defendant should be dismissed as futile. *(Count 4a)*

Again, the Plaintiffs have alleged standing to assert claims against the Pharmacy Defendants for medical monitoring only under the laws of the following eight states: California, Florida, Illinois, Kansas, Maryland, New Jersey, Texas, and West Virginia. The Court has held that the laws of two of them (New Jersey and Texas) do not recognize independent claims for medical monitoring (MTD Opinion 5 at 33), and Plaintiffs do not pursue an independent medical monitoring cause of action on behalf of plaintiffs or class members from those states.

36

PMMMC at pg. 200 n.209.  Additionally, the Court previously held that all claims in the prior medical monitoring complaint arising under Kansas law were subsumed by the Kansas PLA, and Plaintiffs do not assert a cause of action under the KPLA.  MTD Opinion 5 at 20-21.

As to the Pharmacy Defendants, an independent "medical monitoring" claim under the laws of California, Florida, Maryland, and West Virginia would also be futile.  Although Florida law recognizes medical monitoring as a cause of action in "certain prescribed circumstances," those circumstances require the "defendant's negligence."  *Petito v. A.H. Robins Co.*, 750 So. 2d 103, 105, 107 (Fla. Dist. Ct. App. 1999).  Here, as discussed above, Plaintiffs do not have a viable negligence claim (or any other claim in the MMMC) as to the Pharmacy Defendants, and thus could not have a medical monitoring claim as a standalone cause of action under Florida law.  Further, under California and Maryland law, medical monitoring is not recognized as an independent cause of action.  *Lockheed Martin Corp. v. Super. Ct.*, 29 Cal. 4th 1096, 1105 (Cal. 2003) (medical monitoring is "not a separate tort but simply an item of damages that cannot be awarded until liability is established under a traditional tort theory."); *Xavier v. Philip Morris USA Inc.*, No. C 10-02067, 2010 WL 3956860, at *4 (N.D. Cal. Oct. 8, 2010) ("In California, medical monitoring is a remedy which must rely upon underlying claims.  It does not stand alone."); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 76 (Md. 2013)

37

(agreeing with "sister jurisdictions that allow recovery for medical monitoring …

as a remedy, rather than as an independent cause of action"). Finally, Plaintiffs do

not even attempt to plead around the statutory immunity pharmacies are given in

West Virginia. *See* W.Va. Code § 30-5-21; *Ashworth*, 395 F. Supp. 2d at 405

(statute immunizes pharmacies "from all claims based upon the quality of drug"

once "repackaged for retail," even in light of allegations repackaged drugs were

counterfeit); *see also Thomas v. Wyeth*, No. Civ. A. 5:05-0094, 2005 WL 3754203,

*3 (S.D.W. Va. June 16, 2005).

This leaves only Illinois. Accordingly, in any amended MMMC, the

independent medical monitoring cause of action must be limited solely to Illinois

law as to Walmart and Walgreens (the pharmacies that allegedly dispensed VCDs

to the plaintiffs from Illinois who have alleged standing, *see* Appendix B). All

other claims in the Medical Monitoring Master Complaint against any other

Pharmacy Defendant should be dismissed with prejudice.

## IV. Leave to amend should be denied because the PPIMC asserts numerous claims that are futile.

As an administrative master complaint that serves as a vehicle for the filing

of individual personal injury actions via short form complaint, the Proposed PIMC

does not suffer from the same standing problems as do the purported class

complaints. Nonetheless, many of the state-law claims in the PPIMC are futile as a

matter of law according to the Court's prior rulings. As discussed in Part I above,

38

Plaintiffs have not cured the deficiencies that led to the dismissal of the express warranty-, negligence-, and fraud- based claims in Counts 4-6 and 8-10. Additionally, certain of the newly asserted statutory based claims in Count 11 are futile as a matter of law against the Pharmacy Defendants.  *See* Part IV.A.  Further, the Court has previously ruled that Plaintiffs did not state claims for breach of implied warranty (Count 7) or strict liability (Counts 1-3) against the Pharmacy Defendants arising under the laws of certain states, and Plaintiffs have not cured those deficiencies.  *See* Parts IV.B and IV.C.  Finally, the derivative claims (Counts 12-15) should be dismissed where there are no independently viable claims against a Pharmacy Defendant.  *See* Part IV.D.

A.    **Most of Plaintiffs' new statutory claims are futile against the Pharmacy Defendants as a matter of law.** (*Count 11*)

In Count 11, Plaintiffs assert claims under the Product Liability Acts of 10 states.  With the exception of Indiana and North Carolina,[14] these statutory claims are futile and leave to amend to assert claims against the Pharmacy Defendants as specified below should be denied.

---

[14] The Indiana and North Carolina claims are futile because of those states' innocent seller protections, *see* Ind. Code § 34-20-2-3 and N.C. Gen. Stat. § 99B-2, but pursuant to the Court's orders, the Pharmacy Defendants will save those defenses for summary judgment.  Additionally, North Carolina common law rejected the imposition of any type of pharmacy duty prior to the enactment of the North Carolina PLA.  *See Batiste v. Am. Home Prods. Corp.*, 231 S.E.2d 269, 275-76 (N.C. Ct. App. 1977); MTD Opinion 5 at 35 n. 60.

39

## 1.  Kansas excludes pharmacies from its Product Liability Act.

The only claims brought by Kansas personal injury plaintiffs are brought

under the Kansas Product Liability Act, Kansas Stat. Ann. 60-3301 et seq.  *See*

PPIMC ¶¶ 774-777; *see also* MTD Opinion 5 at 20-21 (dismissing with prejudice

all claims in the PIMC and MMMC which arise under Kansas law as subsumed by

the Kansas PLA).  These claims are futile against the Pharmacy Defendants

because the Kansas PLA defines "product seller" to exclude pharmacies:

> "Product seller" means any person or entity that is engaged in the
> business of selling products, whether the sale is for resale, or for use
> or consumption.  The term includes a manufacturer, wholesaler,
> distributor or retailer of the relevant product**, but does not include a
> health care provider,** as defined in subsection (f) of K.S.A. 40-
> 3401 and amendments thereto, **who utilizes a product in the course
> of rendering professional services.**

Kan. Stat. Ann. 60-3302(a) (emphasis added).  The definition of a "health care

provider" specifically includes "a pharmacist licensed by the state board of

pharmacy" as well as the umbrella corporate entities that employ pharmacists.

Kan. Stat. Ann. 40-3041.  The *only* claim Plaintiffs have against the Pharmacy

Defendants is that pharmacists, while engaged in the service of dispensing

valsartan, delivered a defective drug to their patients.  As such, Kansas law

statutorily bars the claims Plaintiffs seek to bring against the Pharmacy

Defendants, and thus, leave to amend to assert Kansas PLA claims against the

Pharmacy Defendants should be denied as futile.

40

### 2.    Washington excludes pharmacies from the scope of the PLA.

The only claims brought by Washington personal injury plaintiffs are those

for fraud (which should be dismissed against the Pharmacy Defendants for the

reasons stated in Part I) and under the Washington Product Liability Act, Wash.

Rev. Code § 7.72.  Notably, however, the Washington PLA excludes pharmacists

from its scope unless the claimant pleads an independent cause of negligence

against the pharmacist.  Specifically, the term "product seller" does not include a

"licensed pharmacist who dispenses a prescription product manufactured by a

commercial manufacturer pursuant to a prescription issued by a licensed

prescribing practitioner if the claim against the pharmacist is based upon strict

liability in tort or the implied warranty provisions of the uniform commercial

code."  Wash. Rev. Code. § 7.72.010(1)(e).  As noted in Part I, Plaintiffs cannot

state an express warranty-, negligence-, or fraud- based claim against the Pharmacy

Defendants, and any strict liability or implied warranty claim is precluded under

the plain language of the Washington PLA.  Personal injury claims against the

Pharmacy Defendants under Washington law should be dismissed with prejudice.

### 3.    Plaintiffs cannot state claims against pharmacies under the Tennessee PLA.

The only claims brought by Tennessee personal injury plaintiffs are those for

consumer protection (which should be dismissed for the reasons stated in Part I)

and the Tennessee Product Liability Act, Tenn. Code Ann. § 29-28-101.  But

41

claims against pharmacies may not be brought under the Tennessee PLA, because claims against pharmacies are governed by the Tennessee Health Care Provider Act. *See* Tenn. Code Ann. § 29-26-101 (including pharmacies within list of health care providers); *Heaton v. Mathes*, No. E2019-00493-COA-R9-CV, 2020 WL 1652571, at *7-8 (Tenn. Ct. App. Apr. 3, 2020) (health care liability act controls over product liability act for claims against pharmacies); *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, MDL No. 13-02419, 2016 WL 11045600, at *2 (D. Mass. Feb. 29, 2016) (same).

Plaintiffs do not bring claims under the Tennessee Health Care Liability Act. This Court already dismissed Plaintiffs' common law strict liability claims arising under the laws of Tennessee against the Pharmacy Defendants, and it should similarly deny leave to amend to assert statutory product liability claims against the Pharmacy Defendants under Tennessee law.

### 4. This Court has already recognized that Plaintiffs do not have strict liability claims under Connecticut and Mississippi law against the Pharmacy Defendants.

As to claims in the PPIMC arising under Connecticut and Mississippi law, Plaintiffs correctly only assert Connecticut PLA claims and Mississippi PLA claims (except for fraud and consumer protection claims under Mississippi law, which cannot be stated against the Pharmacy Defendants, *see* Part I above). However, as recognized by the Court in its prior strict liability rulings, neither

42

Connecticut nor Mississippi recognizes strict liability claims against pharmacies. *See* MTD Opinion 5 at 34-35 & n. 43, n.55, *citing Altieri*, 2002 WL 31898323, at *4–5 and *In re Rezulin*, 133 F.Supp.2d at 288-90.  *Altieri* dismissed a strict liability claim brought under the Connecticut PLA because pharmacies provide a service. Thus, the Connecticut PLA claims against the Pharmacy Defendants should be dismissed as futile.[15]  Likewise, the *Rezulin* court cited the Mississippi PLA and found "no reasonable possibility that Mississippi would recognize a cause of action against pharmacists" in circumstances similar to those alleged here.  133 F. Supp. 2d at 289.  Any claims against the Pharmacy Defendants arising under Connecticut and Mississippi law are futile and leave to amend to assert claims under the PLA should be denied.

### 5.    Ohio and New Jersey's PLA do not apply to service providers.

As noted in *Altieri*, pharmacies are not product sellers, but rather service providers.  They do not "sell" a product, but instead provide the service of dispensing a prescription pursuant to an order from another health care provider.

---

[15] Additionally, within their statutory claim, Plaintiffs allege a theory of consumer protection, which the Court previously dismissed with prejudice.  *See* PPIMC ¶ 767 (alleging causes of action under Conn. PLA under the theories of "… consumer protection claims"); MTD Opinion 5 at 17 (noting that CNPLA subsumes claims for violation of state consumer protection statutes where the claim seeks recovery for personal injury).  Because Plaintiffs in the PPIMC only seek to recover for personal injuries, the theory of consumer protection they have pleaded is not cognizable.

43

Accordingly, Plaintiffs cannot state claims against the Pharmacy Defendants under the Ohio and New Jersey PLAs because both those states exclude service providers from their scope. *See* Ohio Rev. Code 2307.71(15)(b) (excluding from the definition of supplier a "provider of professional services who, incidental to a professional transaction the essence of which is furnishing judgment, skills, or services, sells or uses a product"); N.J. Stat. § 2A:58C-8 (same with respect to the definition of "product seller"). Leave to amend to assert PLA claims under the New Jersey and Ohio acts against the Pharmacies should be denied as futile.

### 6. Louisiana excludes service providers and non-manufacturers from the scope of the PLA.

Louisiana's PLA expressly notes that it does not apply to the rights of a claimant against a provider of a professional service, even if the service results in a product, unless the service provider assumes the status of a manufacturer. La. Rev. Stat. § 2800.52. Plaintiffs do not assert that the Pharmacy Defendants are manufacturers under Louisiana law, and they would not qualify as manufacturers under the statute. La. Rev. Stat. § 2800.53(1). Accordingly, leave to amend to assert claims under the Louisiana PLA against the Pharmacy Defendants should be denied, as those claims are futile as a matter of law.

In sum, leave to amend to assert statutory PLA claims in Count 11 against the Pharmacy Defendants should be denied, except for claims arising under Indiana and North Carolina law.

44

### B.    Certain breach of implied warranty claims are futile under the Court's prior orders. *(Count 7)*

As discussed above in Section II.B, the Court determined that the laws of most states do not allow breach of implied warranty claims against pharmacies. The Court's previous decision largely granted the Pharmacy Defendants' motion to dismiss the breach of implied warranty claims, denying it only as to the laws of: (1) Alaska; (2) Colorado; (3) Delaware; (4) Idaho; (5) Montana; (6) Nevada; (7) Oregon; (8) Rhode Island; (9) South Dakota; and (10) Vermont.  MTD Order 3 at 3.  The Court did not issue a ruling as to the laws of Connecticut, Indiana, Nebraska, Oklahoma, Utah, or Wyoming.  *See id.*  Using the Court's other state-specific rulings as a guide, Plaintiffs cannot maintain a breach of implied warranty cause of action against the Pharmacy Defendants under the laws of Connecticut,[16] Oklahoma,[17] or Utah,[18] and at most could state a claim as to (11) Indiana; (12) Nebraska; and (13) Wyoming.

Yet in their Proposed PIMC, Plaintiffs purport to pursue a breach of implied warranty claim against the Pharmacy Defendants under the laws of "[a]ll States

---

[16] The Court has dismissed with prejudice all PIMC claims under Connecticut law as subsumed by the Connecticut Products Liability Act, MTD Order 5 at 2, and Plaintiffs do not pursue a breach of implied warranty claim against the Pharmacy Defendants in the PIMC.  PIMC at 142.

[17] *White v. Mylan, Inc.*, No. CIV-12-402, 2012 WL 6726593, at *3 (W.D. Okla. Dec. 27, 2012) ("no legal basis" for strict liability claim against pharmacy).

[18] *Shaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 928-32 (Utah 2003) (only claims against pharmacies are professional malpractice or negligence).

45

and Territories" except the eight states where the PLA subsumes implied warranty claims against all defendants. PPIMC at pg. 142. As discussed above, the Court made its determination based on a review of each state's laws and whether they arguably allow for a claim of breach of implied warranty against the Pharmacy Defendants. Although the Court's dismissal was without prejudice, Plaintiffs' amendments do not (and cannot) fix their inability to assert a claim not recognized by a state's laws. As such, Plaintiffs should be precluded from asserting any personal injury breach of implied warranty claim against the Pharmacy Defendants under the laws of the states the Court previously dismissed, leaving just the above-enumerated 13 states (Alaska, Colorado, Delaware, Idaho, Indiana, Montana, Nebraska, Nevada, Oregon, Rhode Island, South Dakota, Vermont, Wyoming). The breach of implied warranty claims under the laws of any other jurisdiction should be dismissed with prejudice.

### C.    Certain strict liability claims are futile under the Court's prior orders. *(Counts 1-3)*

Similarly, the Court previously held that the majority of states' laws preclude strict liability claims against pharmacies. MTD Opinion 5 at 34-35. Yet in their Proposed PIMC, Plaintiffs purport to pursue a strict liability manufacturing defect, failure to warn, and design defect claims against the Pharmacy Defendants under the laws of "[a]ll States and Territories" except 14: Connecticut, Delaware,

46

Indiana[19], Kansas, Louisiana, Massachusetts, Mississippi, New Jersey, North

Carolina, Ohio, Pennsylvania, Tennessee, Virginia, and Washington. PPIMC at

pgs. 130, 132, 134. Excluding those states from consideration, the Court's

previous decision denied the Pharmacy Defendants' motion to dismiss the strict

liability claims only as to the laws of: (1) Alaska; (2) Colorado; (3) Idaho;

(4) Kentucky; (5) Minnesota; (6) Missouri; (7) Montana; (8) Nebraska;

(9) Nevada; (10) Oregon; (11) Puerto Rico; (12) Rhode Island; (13) South

Carolina; (14) South Dakota; (15) Texas; (16) Vermont; (17) Wisconsin; and

(18) Wyoming. MTD Opinion 5 at 35.[20]

---

[19] Plaintiffs included Indiana among the states for which they are not pursuing a strict liability – manufacturing defect claim against the Pharmacy Defendants (PPIMC at pg. 130), but did not include Indiana as a state they intend to exclude for their strict liability – failure to warn or strict liability – design defect claims. *Id.* at pgs. 132, 134. Given that the Court has found that all Indiana claims (other than a few inapplicable exceptions) are subsumed by the Indiana Products Liability Act and dismissed them with prejudice (MTD Order 5 at 2), the Pharmacy Defendants assume the inconsistency was in error and that Plaintiffs do not intend to pursue any Indiana strict liability claims against the Pharmacy Defendants.

[20] The Court's previous Motion to Dismiss opinion on strict liability claims both granted and denied the Pharmacy Defendants' motion to dismiss strict liability claims under Iowa law. *See* MTD Opinion 5 at 35. The Pharmacy Defendants maintain that a strict liability cause of action under Iowa law is futile. *See, e.g., Merfeld v. Domestic Corp.*, 306 F. Supp. 3d 1070, 1076-78 (N.D. Iowa 2018) (granting summary judgment for retailer; under Iowa law, retailers are immune from suit based on breach of implied warranty arising solely from alleged defect in original design or manufacture of product). Likewise, the Court's opinion did not rule as to the law of North Dakota. MTD Opinion 5 at 34-35. A strict liability cause of action under North Dakota would be similarly futile. *See, e.g., Bornsen v. Pragotrade, LLC*, 804 N.W.2d 55, 61 (N.D. 2011) (legislature intended "to sharply curtail liability of a 'non-manufacturing seller'"); *Rostvet v. Lock City Transp. Co.*,

Respectfully, pursuit of strict liability claims under the laws of Missouri, South Carolina, and Texas also would be futile.  The Missouri Supreme Court has held that strict products liability claims against healthcare providers are not viable, *Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678, 680 (Mo. 2000), and pharmacies are health care providers under Missouri law.  *Beuke v. Pharmacia & Upjohn Co.*, No. 4:99CV1606, 2000 WL 34430453, at *1-2 (E.D. Mo. Sept. 14, 2000) (citing Mo. Rev. Stat. § 538.205(4) for definition of "health care provider").  "Because, under Missouri law, defendant [pharmacy] is a health care provider, it cannot be sued under a theory of strict liability."  *Id.* at *2.  Similarly, the South Carolina Supreme Court has held that a pharmacy cannot be strictly liable for filling a prescription in accordance with a physician's orders because dispensing prescription medication is the provision of a service rather than selling of a good.  *Madison v. Am. Home Prods. Corp.*, 358 S.C. 449, 452-56 (2004) (affirming grant of pharmacy's motion to dismiss strict liability claims); *see also Duckett v. SCP 2006-C23-202, LLC*, 225 F. Supp. 2d 432, 435 (D.S.C. 2015) ("Plaintiff cannot maintain a cause of action against the Pharmacy Defendants for strict liability.").  As to Texas, *see Rendon*, 144 F. Supp. 3d at 897-98 and *In re Rezulin Prod. Liab.*

---

No. 2:11-cv-21, 2013 WL 11941563, at *6 (D.N.D. Nov. 7, 2013) (dismissing strict liability claims against non-manufacturing seller when manufacturer named in complaint).

48

*Litig.*, 133 F. Supp. 2d at 294, discussed in Section III.C.[21]

Because these are all issues of law, no proposed factual amendment would change the outcome, and Plaintiffs should be precluded from asserting any personal injury strict liability claim against the Pharmacy Defendants other than under the laws of: (1) Alaska, (2) Colorado, (3) Idaho, (4) Kentucky, (5) Minnesota, (6) Montana, (7) Nebraska, (8) Nevada, (9) Oregon, (10) Puerto Rico, (11) Rhode Island, (12) South Dakota, (13) Vermont, (14) Wisconsin, and (15) Wyoming, and the strict liability claims as to all other jurisdictions should be dismissed with prejudice.

> **D.    Plaintiffs may assert derivative claims against the Pharmacy Defendants only where they have viable personal injury claims against pharmacies.** *(Counts 12-15)*

As explained above and consistent with this Court's prior rulings, all pleaded personal injury claims against the Pharmacy Defendants are futile as a matter of law *except* for the following claims:

- Statutory claims under the (1) Indiana and (2) North Carolina Product Liability Acts;

- Breach of implied warranty claims in the jurisdictions of (3) Alaska, (4) Colorado, (5) Delaware, (6) Idaho, (7) Montana, (8) Nevada, (9) Oregon, (10) Rhode Island, (11) South Dakota, (12) Vermont, Indiana, (13) Nebraska, and (14) Wyoming; and

---

[21] The Pharmacy Defendants located some of these cases upon further research after they filed their Motion to Dismiss, and acknowledge that they therefore were not provided to the Court in previous briefing.

- Strict liability claims under the common law of the jurisdictions of: Alaska, Colorado, Idaho, (15) Kentucky, (16) Minnesota, Montana, Nebraska, Nevada, Oregon, (17) Puerto Rico, Rhode Island, South Dakota, Vermont, (18) Wisconsin, and Wyoming.

Thus, leave to amend to assert derivative claims under the laws of the 34 jurisdictions not listed above should be denied as futile. The derivative claims in Counts 12-15 arising under the laws of these 34 remaining jurisdictions against the Pharmacy Defendants should be dismissed with prejudice. Those jurisdictions are: Alabama, Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia.

## CONCLUSION

Plaintiffs' motion for leave to amend should be denied as futile, consistent with this Court's prior rulings and Plaintiffs' inability to cure the deficiencies in their proposed master complaints. Further, the futile claims asserted in the prior complaints should be dismissed with prejudice against the Pharmacy Defendants.

Dated: May 27, 2021                          Respectfully submitted,

                                             /s/ Sarah E. Johnston
                                             Sarah E. Johnston
                                             Kara M. Kapke
                                             Kristen L. Richer
                                             BARNES & THORNBURG LLP
                                             2029 Century Park East, Suite 300
                                             Los Angeles, CA 90067
                                             (310) 284-3798
                                             (310) 284-3894

                                             *Liaison Counsel for Pharmacy
                                             Defendants and Counsel for CVS
                                             Pharmacy, Inc. (incorrectly named as
                                             CVS Health Corporation) and Rite-
                                             Aid Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of May, 2021, a true and accurate copy of the foregoing The Pharmacy Defendants' Opposition to Plaintiffs' Motion for Leave to Amend Master Complaints was electronically filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record who has consented to electronic notification.

*/s/ Sarah E. Johnston*
Sarah E. Johnston
