

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA  15219
412.263.2000     FAX: 412.263.2001
WWW.PIETRAGALLO.COM

DIRECT DIAL NO.:  412.263.1816
DIRECT FAX NO:  412.263.4246
FILE NO.:  MYLAN-112578
EMAIL:  cct@pietragallo.com

June 2, 2021

**Via ECF**

The Hon. Robert J. Kugler
United States District Judge
USDC, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

Special Master the Hon. Thomas Vanaskie
Stevens & Lee
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

The Hon. Karen M. Williams
United States Magistrate Judge
USDC, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

Re:    *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
       USDC, District of New Jersey, No. 1:19-md-2875-RBK-KMW

Dear Judge Kugler and Judge Vanaskie:

I write on behalf of the Defendants' Executive Committee to provide Defendants' positions

with respect to the topics on the agenda for the conference with the Court on Thursday, June 3,

2021.

1. **Status Update Regarding Phase I Discovery**

In Case Management Order No. 23, the Court set out June 1, 2021 as the deadline for (A)

the depositions of the Manufacturer Defendants; (B) the depositions of 10 bellwether plaintiffs;

and (C) the depositions of the consumers and TPPs named as putative class representatives in the

currently operative Economic Loss Master Complaint. CMO 23, Dkt. No. 863, at 1-2. The Parties

have substantially completed this discovery, as follows.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 2

### A. Depositions of Manufacturer Defendants

Plaintiffs began deposing the Manufacturer Defendants on January 20, 2021. The following summary reflects the current status as to each Defendant.

#### i. ZHP

Plaintiffs have taken **all 17** of the ZHP Party depositions ordered by Judge Vanaskie and Judge Schneider. Those depositions were comprised of 12 Rule 30(b)(6) witnesses, who also provided fact testimony, and five fact witnesses. Pending before the Court is the ZHP Parties' motion for a protective order to preclude the deposition of ZHP's President, Baohua Chen, under the apex deposition doctrine, *see* Dkt. No. 1247, which is tentatively scheduled for June 21-23. 05-03-21 Hrg. Tr. at 45:15-18. As set forth in that motion, given his lack of material involvement in any of the facts at issues, and the vast amount of testimony already provided by the 17 key 30(b)(6) and fact witnesses with material involvement in those facts, along with the more than 350,000 ZHP Party documents produced, Plaintiffs have not and cannot rebut the presumption against Mr. Chen's deposition under the apex witness doctrine.

#### ii. Hetero

Plaintiffs noticed a total of 10 depositions of Hetero Drugs Ltd. and Hetero Labs Ltd. ("HLL") witnesses.  Thus far, Plaintiffs have completed the depositions of 4 HLL witnesses, and 1 witness has been cancelled, with its topics allocated to a separate witness whose deposition has been completed.  Plaintiffs are scheduled to complete 1 HLL deposition next week, on June 8 and June 9, and HLL is continuing to confer with Plaintiffs regarding the scheduling of an additional HLL witness, which will likely be completed by next week, as well.  With regard to the remaining

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 3

3 HLL witnesses, Plaintiffs have indicated that they may cancel these depositions, all of which are currently scheduled for the second and third weeks of June.

### iii.  Mylan

Plaintiffs have completed the depositions of 7 Mylan witnesses, with 5 remaining. Four of the depositions that have been completed were noticed pursuant to Rule 30(b)(6), and were conducted over 9 separate days testimony. Of the 5 depositions that remain, 4 of them were postponed due to exigent circumstances, including the recent COVID-19 surge in India. Depositions for 3 of the other remaining witnesses are scheduled, and will be completed by June 17, 2021. With regard to the final witness, the parties are in the process of meeting and conferring over the scope and subject matter for that deposition.

Mylan anticipates completing all remaining depositions of its witnesses by the end of June.

### iv.  Aurobindo

Plaintiffs have deposed 9 Aurobindo Party witnesses. Last night, Plaintiffs withdrew their notice for the deposition of Venkata Kota. He would have been No. 10. He was scheduled for June 9. Plaintiffs have also indicated that they plan to postpone the second day of the Blessy Johns deposition.

### v.  Teva

The Parties identified 12 Teva witnesses to be deposed. These included six witnesses identified by Teva to cover the noticed 30(b)(6) topics and six fact witnesses to be chosen by Plaintiffs' counsel. As of today, the parties have completed the depositions of 10 of these 12 witnesses. The two remaining witnesses were both delayed due to specific COVID-19-related issues and are being rescheduled for dates in June.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 4

The two witnesses who were unable to be deposed are (1) 30(b)(6) witness Jens Nassall; and (2) fact witness Walton Wang. Mr. Nassall is located in Germany, and was unable to travel to a location where he could provide testimony due to Germany's COVID-19 restrictions. The parties were hopeful that these restrictions would change at some point during the Phase 1 discovery period, but unfortunately Germany has only just this week revised its travel restrictions. Accordingly, Mr. Nassall will be rescheduled for a date in June.

Mr. Wang is located in China, and was originally scheduled to be deposed the week of May 17th. However, due to a local COVID-19 outbreak he was unable to travel the week of his deposition and was required to quarantine for 14 days. Teva is working to reschedule Mr. Wang's travel and identify dates in June for his deposition.

### vi. Torrent

Plaintiffs have taken 7 Torrent depositions, with 5 left to complete. Four of the remaining depositions are scheduled to be completed by Friday, June 11, with half of day of Rule 30(b)(6) testimony to be completed on June 25.

### B. Depositions of Current Putative Class Representatives

Defendants began deposing the putative class representatives on January 19th, the day the Phase One depositions began, and by June 1st had conducted thirty (30) depositions of putative consumer, third party payor, and medical monitoring class representatives. This is ***all but one*** of the current putative class representatives. The final class representative deposition was unable to be scheduled before June 1st due to Plaintiffs' delay in providing a necessary authorization for records. That authorization has now been provided, Defendants have collected the records, and the parties are in the process of scheduling the deposition to occur in the latter half of June.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 5

Outstanding issues remain only as to three current putative class representatives, as follows:

1)   Defendants began the deposition of putative consumer economic loss class representative Lubertha Powell on April 27th, but had to suspend the deposition due to Ms. Powell's internet connectivity problems.  Defendants have been attempting to schedule the remainder of the deposition, but Plaintiffs' counsel have been largely unresponsive.  Defendants request that the Court order Plaintiffs to schedule the remainder of the deposition by June 30, 2021.

2)   Putative third-party payor economic loss class representative MSP Recovery Claims, Series LLC ("MSPRC") designated its own representative as well as representatives from its assignors as witnesses in response to Defendants' 30(b)(6) notice.  While Defendants conducted the deposition of MSPRC's witnesses on April 29, 2021, it has been unable to schedule the depositions of the assignor witnesses, Summacare, Connecticare, and Emblem Health, despite their diligent attempts to obtain dates for those witnesses for the past two months.  The parties first met-and-conferred about MSPRC's Rule 30(b)(6) depositions on March 12, 2021.  On April 6 and 7, MSPRC identified the individuals who would be testifying on behalf of its assignors and promised that dates for their depositions would be forthcoming.  Despite multiple follow-up emails from Defendants since early April asking MSPRC to provide dates for these depositions (with MSPRC most recently promising to provide dates by May 28), no dates have yet been provided.  Further, on May 12, 2021, Defendants sent a deficiency letter to MSPRC after MSPRC's representatives testified on April 29, 2021

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 6

that MSPRC has in its possession responsive information that it has not produced in this litigation (despite a representation from MSPRC's counsel on April 23, 2021 that MSPRC had completed its document production). In its May 12th letter, Defendants requested that MSPRC produce the responsive documents within 21 days of that letter, which is June 2. Defendants also reserved the right to re-depose MSPRC's representatives on the information contained in the documents that were not previously produced, and on certain topics where MSPRC's witnesses were not adequately prepared to testify. Defendants also raised in that letter (not for the first time) the issue of MSPRC's designation of certain information as "Restricted Confidential" as it reflects Protected Health Information relating to MSPRC's assignors' claims data—information which is critical to an assessment of MSPRC's damages. Defendants have asked for MSPRC's position on whether it objects to the disclosure of such information to Defendants' consulting expert witnesses on multiple occasions (as it is ambiguous under the current terms of the Confidentiality and Protective Order (Dkt. No. 139) whether *any* material designated as Restricted Confidential may be shared with anyone other than counsel, including experts), but MSPRC refuses to respond to that question. Defendants respectfully ask the Court to order MSPRC to (1) produce relevant and responsive documents in its possession by June 2 or a date certain; (2) provide dates for the depositions of its assignor representatives; and (3) provide Defendants with its position on whether the claims data spreadsheets may be shared with Defendants' consulting experts so that the parties can meet-and-confer if necessary.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 7

3)   On May 28, 2021 Defendants took a Rule 30(b)(6) deposition of a designee of putative third-party payor economic loss class representative Maine Automobile Dealers Association Insurance Trust ("MADA").  While the final transcript is not yet available and Defendants are evaluating next steps, during the deposition Defendants made multiple requests for documents and anticipate that an additional deposition (or depositions) will be necessary due to the MADA representative's inability to provide answers to several topics in the 30(b)(6) notice.  Additional depositions would likely seek testimony from non-party witnesses, such as MADA's pharmacy benefits administrator, from whom MADA's counsel obtained information to support its allegations and with whom MADA's designee could have conferred (but did not) in order to prepare for his deposition.   Moreover, MADA's pharmacy benefits administrator has not completed its production of documents to Defendants pursuant to a subpoena dated March 24, 2021.  The MADA designee testified during his deposition that MADA's pharmacy benefit administrator is the entity that retains information on MADA's claims data, including information on reimbursements and payments made to its members for valsartan.  These matters are not yet ripe for Court intervention, and parties will attempt to resolve these, and any other related matters, without involvement from the Court.

**C.  Depositions of Personal Injury Bellwether Plaintiffs**

There are twenty-eight Bellwether Plaintiffs. The parties worked cooperatively to try and complete the depositions of ten Bellwether Plaintiffs by June 1, 2021. To date the depositions of seven Plaintiffs have been completed: Yolanda Bonmon (April 20); Rita Crawford (May 21);

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 8

Crusita Murga (May 3); Eugene Pate (May 14); Richard Ramirez (April 23); Martha (Robert)

Weygandt (April 14); and Jan (Gaston) Roberts (May 25). Defense counsel attempted to depose

multiple other Bellwether Plaintiffs in May but were unsuccessful due to scheduling issues and

illnesses amongst Plaintiffs. The parties are continuing to work together and have scheduled most

of the remaining plaintiffs for deposition in June and July, far in advance of the October 4, 2021

deadline to complete "the second phase of discovery including […] depositions of the remainder

of personal injury and bellwether plaintiffs not previously deposed."

## 2. Defendant-Specific Discovery Issues

### A. ZHP

#### i. Plaintiffs' Motion to Compel Documents Withheld on the Basis of Chinese State Secrecy Laws

With respect to Plaintiffs' Motion to Compel documents withheld by the ZHP Parties on

the basis of Chinese state secrecy laws, the ZHP Parties have moved for an order striking certain

arguments in Plaintiffs' reply brief (*see* Dkt. No. 1273) in support of their motion because the reply

brief raises, *for the first time*, arguments with respect to *Societe Nationale Industrielle*

*Aerospatiale v. United States Dist. Ct.*, S.D. Iowa, 482 U.S. 522 (1987) and *Richmark Corp. v.*

*Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992). Dkt. 1284. As Plaintiffs failed to

make these arguments in their opening brief, those arguments must be stricken from the record

and disregarded by this Court because, given that sur-reply briefs are not provided for under the

local rules, the ZHP Parties have "no opportunity to respond to newly minted arguments contained

in reply briefs." *See Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001)

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 9

(stating, "[i]t is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted.").

Alternatively, the ZHP Parties request the Court grant the ZHP Parties leave to file a sur-reply to address Plaintiffs' new arguments, and request the Court deem the ZHP Parties' brief in support of its motion to partially strike Plaintiffs' reply (*see* Dkt. No. 1284) the ZHP Parties' sur-reply.

### ii. Status Report of the ZHP Parties Regarding Plaintiffs' New Discovery Requests

The ZHP Parties have made great strides in the document collection, review and production related to Plaintiffs' new discovery requests. The ZHP Parties have completed custodian interviews in China, as well as the collection of electronic data and hard copy documents from ZHP's facilities in China. The newly collected data has been processed by the ZHP Parties' vendor in China, FTI Consulting, and the new search terms requested by Plaintiffs, as well as the existing search terms mandated by the ESI protocol have been applied to the data. The documents collected have undergone review for state secrets and have been exported to the United States. Currently, the newly collected data is undergoing review for responsiveness, privilege, and confidentiality.

The ZHP Parties are committed to rolling productions of responsive, non-privileged documents. As part of this rolling production, on May 27, 2021, the ZHP Parties completed their production of documents related to Item #8 in the Plaintiffs' April 24, 2021 Letter related to unredacted copies of certain documents and the production of certain embedded objects that did not render during initial processing. Thereafter, on June 1, 2021, the ZHP Parties produced an additional 4,881 electronic documents to Plaintiffs. In addition, the ZHP Parties anticipate

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 10

producing an additional set of 60 hard copy documents on June 3, 2021, including additional lab notebooks and testing data specifically requested by Plaintiffs.

In order to meet the Court's June 4, 2021 deadline, the ZHP Parties have worked tirelessly across two continents, and during national holidays in China (May Day) and the United States (Memorial Day), to collect, process, transfer, and review tens of thousands of Chinese and English language documents. However, despite these efforts, the ZHP Parties estimate that they will not be able to substantially complete the production related to Plaintiffs' new discovery requests until June 11, 2021. In the interim, the ZHP Parties are committed to continuing their rolling production of documents, and anticipate making their next productions of documents on Thursday, June 3, 2021 and Monday, June 7, 2021.

        **iii.**    **Plaintiffs' Motion to Compel the Production of Baohua Chen's Custodial File**

On December 18, 2019, after hearing argument about ZHP General Manager Baohua Chen's role at ZHP, Judge Schneider declined to order the production of Mr. Chen's custodial file. *See* 12-18-19 Hrg. Tr. at 7:8-9:10, 23:16-19 (stating, "[t]he Court just does not believe at this time, based on the present record, that a search of Mr. Chen's custodial files will add any material evidence or documents that are not otherwise going to be proven in the case."); *see also* 12-18-19 Hrg. Tr. at 24:16-19 (stating, "[b]ut in terms of a custodian search for documents, the Court sustains Mr. Goldberg's objections and will remove Mr. Chen from the list, and will approve the list absent his name.").

Plaintiffs did not renew this request to the Court for Mr. Chen's custodial file until their April 27, 2021 case management conference letter agenda. Dkt. 1189. On May 3, 2021, the Court

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 11

ruled that it would consider Plaintiffs' presentation of April 27 to be the equivalent of a motion to compel the production of Mr. Chen's custodial file, and directed the ZHP Parties to file an opposition brief. 5-3-21 Hrg. Tr. at 28:3-6. The ZHP Parties filed their opposition and cross-motion for protective order on May 14, 2021. Dkt. No. 1244 and Dkt. No. 1246. Plaintiffs filed a reply on May 17, 2021. Dkt. No. 1250. This issue has been fully briefed and the Parties await the Court's ruling.

> ### iv.    The ZHP Parties' Motion to Strike Plaintiffs' Motion for Sanctions for Failure to Comply with Fed. R. Civ. P. 37(a)(1) and 37(d)(1)(B)

The ZHP Parties have moved for an order striking Plaintiffs' Motion for Sanctions (*see* Dkt. No. 1276), because Plaintiffs failed to meet and confer with the ZHP Parties prior to filing their motion (and therefore cannot file the requisite meet and confer certification), as required by the Federal and Local Rules of Civil Procedure. Dkt. No. 1283.

According to Federal Rule of Civil Procedure 37, a party moving for an order compelling discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, Local Rule 37.1(a)(1) of the United States District Court for the District of New Jersey states "***Counsel shall confer to resolve any discovery dispute***. Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge. ***This presentation shall precede any formal motion***." D.N.J. L.R. 37.1(a)(1)(emphasis added). Local Rule 37.1(b)(1) further requires discovery motions "be accompanied by an affidavit, or other document complying with 28 U.S.C. § 1746, certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 12

agreement the issues raised by the motion without the intervention of the Court and that the parties

have been unable to reach agreement." D.N.J. L.R. 37.1(b)(1).

In addition, Federal Rule of Civil Procedure 37(d)(1)(B) requires that "*a motion for*

*sanctions* for failing to answer or respond must include a certification that the movant has in good

faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer

or response without court action."  Fed. R. Civ. P. 37(d)(1)(B)(emphasis added).

This Court heard argument on March 29 and April 1 about the conduct of counsel at

depositions generally, which resulted in blanket rulings such as no "snide" comments by counsel,

no "motions to strike" answers by counsel, and specifying the basis for objections, 04-01-21 Hrg.

Tr. at 11:19-12:2; 03-29-21 Hrg. Tr. at 27:9-13; 28:9-15; 29:13-20.  The Court also invited the

parties to seek the Court's intervention during any deposition where the Court's assistance was

required to facilitate the taking of testimony due to the conduct of a witness or counsel.  Those

rulings about general deposition conduct did not address any specific portion of any witness's

testimony. Following those rulings, Plaintiffs took 10 ZHP Party depositions without ever having

to request the Court's intervention, and Plaintiffs never requested a meet and confer to raise with

Defendants any concerns about any witness's testimony.

Nevertheless, on May 27, 2021, Plaintiffs' filed a Motion for Sanctions that requests the

Court deem admitted answers to certain deposition questions asked of five witnesses, and Plaintiffs

further propose to extrapolate those rulings to the testimony of the 12 other ZHP Party witnesses

who have been deposed. The Court's rulings regarding general deposition conduct did not excuse

Plaintiffs from their meet and confer obligations as to the specific relief they are seeking through

their Motion for Sanctions. Those requirements should apply to any specific portion of testimony

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 13

for which Plaintiffs claim sanctions are warranted in order to determine if those issues can be resolved between the parties.

Accordingly, this Court should strike Plaintiffs' Motion for Sanctions from the docket, and direct the parties to meet and confer about any specific portions of deposition testimony Plaintiffs claim warrant a sanction.

### B. Hetero

Defendants Hetero Drugs Ltd. and Hetero Labs Ltd. (collectively, "HLL") has made significant progress in addressing the specific discovery demands set forth by Plaintiffs. Presently, HLL is conferring with Plaintiffs regarding documents requested following the May 26, 2021 30(b)(6) deposition of HLL's witness Dr. Manoranjan Kumar, and HLL has satisfied all prior requests by Plaintiffs.

Since our last Case Management Conference on May 12, 2021, HLL produced documents responsive to Plaintiffs' requests made following the 30(b)(6) deposition of HLL's witness Bandaru Venkata Ramarao. The following day, on May 13, 2021, HLL remedied an error in its ESI vendor's software that curtailed our ability to identify previously produced documents to Plaintiffs by bates number. Accordingly, the following day, on May 14, 2021, HLL provided bates ranges to Plaintiffs of previously produced documents requested following the 30(b)(6) deposition of HLL's witness Venkataramana Madireddy. That same day, HLL further provided bates ranges to Plaintiffs of previously produced documents responsive to Plaintiffs' April 28, 2021 discovery deficiency letter. Thereafter, on May 17, 2021, HLL de-designated 26 documents that were previously deemed privileged. The next day, on May 18, 2021, HLL produced documents

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 14

requested by Plaintiffs following the 30(b)(6) deposition of HLL's witness Venkataramana Madireddy.

Thereafter, on May 20, 2021, HLL produced its production volume HLL19, consisting of documents requested during the deposition of HLL 30(b)(6) witness Venkataramana Madireddy, as well as documents requested in Plaintiffs' April 28, 2021 discovery deficiency letter. Subsequently, on May 26, 2021, HLL produced its production volume HLL20, consisting of a Root Cause Analysis Binder, Cover Pages and Tables of Contents for pertinent lab notebooks, and all remaining documents requested in Plaintiffs' April 28, 2021 letter.

HLL is currently scheduled to meet and confer with Plaintiffs today, June 2, 2021, regarding documents that have been requested following the 30(b)(6) deposition of HLL's witness Dr. Manoranjan Kumar on May 26, 2021.  Specifically, Plaintiffs request underlying chromatograms and data regarding testing for nitrosamines, as well as genotoxic impurity evaluations conducted using the software "DEREK."

By way of background, HLL utilized the software Empower to conduct non-nitrosamine related chromatography testing of its manufactured batches of Valsartan. Empower provides an output in the form of Certificates of Analysis, which HLL produced to Plaintiffs on March 30, 2021 in the HLL13 production volume.  At issue presently is the data that is input into Empower. Upon information and belief, and as explained to Plaintiffs, the input data contained in Empower requires credentials to access.  Accordingly, HLL is conferring with Plaintiffs regarding a process to produce this data in a format that is readable and usable to Plaintiffs.

Pursuant to the deposition testimony of HLL's 30(b)(6) witnesses, however, HLL's in-house chromatography testing using Empower was not sensitive enough to detect nitrosamines.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 15

Accordingly, HLL utilized the laboratory Analys Lab to conduct nitrosamine related chromatography testing. Analys Lab provided reports to HLL that contained chromatographs, which were produced to Plaintiffs on October 16, 2020 in the HLL05 production volume. As such, HLL has produced the output data related to non-nitrosamine testing, and chromatography testing related to the detection of nitrosamines.

With regard to the DEREK software, it is a commercially available program utilized in the manufacturing process to determine potential toxicity risks of the combination of chemicals used therein. HLL is presently conferring with Plaintiffs regarding the information they request that is contained in the DEREK software, and the most efficient means of producing it to Plaintiffs.

Accordingly, HLL has worked in good faith to resolve all issues previously raised by Plaintiffs, and is presently addressing the new requests raised as a result of Dr. Kumar's May 26, 2021 deposition.

### C. Aurobindo

On May 26, 2021, Plaintiffs filed a letter directed to Your Honor reiterating their request for extraordinary sanctions. Dkt. No. 1272. On May 27, 2021, the Court entered Special Master Order No. 21 ("SMO-21"), denying Plaintiffs' Motion to Strike and Suppress All of Aurobindo's Defenses without prejudice. Dkt. No. 1275. Your Honor did not see Plaintiffs' letter until after sending SMO-21 for docketing. Aurobindo filed a letter to Your Honor today, in response to Plaintiffs' May 26 letter. Dkt. No. 1285. Per Your Honor's instructions, Aurobindo will be prepared to address Plaintiffs' latest allegations of discovery abuse by Aurobindo at the Conference on June 3, 2021.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 16

### D.  Teva

#### i.  Teva's Clawback Request

This dispute stems from Teva's request to clawback certain privileged documents found to have been inadvertently produced to Plaintiffs in this litigation. The parties have engaged in extensive meet and confers on this issue over the past month. During that time, Teva's counsel has provided additional information which is more than sufficient to allow Plaintiffs' counsel to evaluate Teva's claim of privilege. As of May 27, 2021, the parties have resolved their disputes with respect to all but three documents, which will be submitted in camera ahead of tomorrow's Case Management Conference:

- TEVA-MDL2875-00587085
- TEVA-MDL2875-00189928
- TEVA-MDL2875-00650876

The document identified at TEVA-MDL2875-00650876 is an internal email chain which includes a single email from Teva's in house counsel Kirsten Bauer. The parties agree that this email is appropriately redacted. Plaintiffs disagree that the prior three emails on the chain – one from Claire Lyons on September 17, 2018, and two from Jens Nassall on September 17 and 18, 2018, respectively – should be redacted for privilege. All three of these emails copy various individuals within Teva, including Teva's in house counsel Rachel Gallagher. All three emails were sent shortly after the nitrosamine issue arose in 2018, when litigation was reasonably anticipated, and copy Ms. Gallagher for the purpose of seeking legal advice. Teva requests that the Court affirm its claim of privilege over these three emails and order Plaintiffs to destroy all unredacted copies of this email chain. Teva will then reproduce a redacted version of this document.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 17

Documents TEVA-MDL2875-00587085 and TEVA-MDL2875-00189928 are emails copying Cathy Burgess, outside regulatory counsel for Teva with the law firm Alston & Bird. Ms. Burgess is included on Teva's "cast of characters" which was provided to aid Plaintiffs' in assessing Teva's claims of privilege. These documents clearly fall within the scope of attorney-client privileged communications. The fact that the body of the email does not contain legal advice or an explicit request for legal advice does not change the reality that the documents a client sends to their outside legal counsel may demonstrate both (1) the documents or types of documents the client has been instructed to send to their counsel; and (2) the documents or types of documents the client believes would be necessary or helpful to counsel in rendering legal advice. Teva does not claim privilege over the underlying facts or public documents being attached. Teva does not argue that the fact a communication with counsel occurred is privileged. However, allowing Plaintiffs to discover the specific documents provided to outside counsel is akin to asking a deponent not whether a communication with counsel occurred, but rather "What did you talk about?" Accordingly, Teva requests that the Court affirm its claim of privilege over these two emails and order Plaintiffs to destroy all copies of these emails. Teva will then produce slip-sheets for these emails indicating that the parent email has been withheld on the basis of privilege.

### ii. Teva's Privilege Log

The Teva Defendants first raised the possibility of setting regular calls to address privilege challenges with Plaintiffs' counsel during a meet and confer on March 11, 2021. Despite several follow ups on this topic, Teva first received a letter challenging Teva's privilege log on May 4, 2021. In this letter, Plaintiffs effectively requested that Teva perform a wholesale re-review of each and every document identified on Teva's December 30, 2020 and March 15, 2021 privilege

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 18

logs. Teva responded on May 12, 2021, offering to meet and confer regarding any concerns with respect to specific documents but noting that Teva did not intend and was not required to perform a wholesale re-review in the closing weeks of the discovery period after getting no response to requests to meet and confer on privilege challenges for months. Teva further requested more specificity from Plaintiffs as to which entries they took issue with on Teva's logs and specifically asked for Plaintiffs to explain how certain information they were requesting would aid them in assessing Teva's claim of privilege.

Plaintiffs responded to Teva on May 24, 2021, reiterating the same categorical challenges from their initial letter and failing to explain how certain information they are seeking is necessary to assess Teva's claim of privilege. Teva intends to meet and confer in good faith and assess any document specific challenges identified by Plaintiffs. Accordingly, Teva does not believe this issue is ripe for the Court's intervention at this time, but will be prepared to provide an update on the meet and confer process at the mid-month discovery conference after the parties have an opportunity to meaningfully meet and confer.

### E.  Plaintiffs' Second Set of Requests for Production to Wholesaler Defendants

Counsel for Plaintiffs and Wholesaler Defendants have reached an agreement on a Second Set of Requests for Production of Documents to Wholesaler Defendants. A copy of the agreed upon set of requests is attached as Exhibit A.

### F.  Plaintiffs' Second Set of Requests for Production to the Pharmacy Defendants

The Parties have resolved all but one issue regarding Plaintiffs' second set of document requests to the Pharmacy Defendants.  More precisely, the Parties have resolved all issues related to the second set of document requests the Parties have been negotiating for months.  The only

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 19

outstanding issue is as to an entirely new request Plaintiffs presented to the Pharmacy Defendants on May 17, 2021. The Court should disallow this new and improper request, order that the Parties submit a finalized set of document requests for Court approval, and then set a schedule for the Pharmacy Defendants' responses and document productions.

### i.    Plaintiffs' New Draft Request Should be Disallowed

After the parties had been discussing a set of 9 document requests ("RFPs") for months, and the Court had ruled from among those 9 RFPs which the parties must negotiate, on May 17, 2021, Plaintiffs introduced an entirely new request for the first time. That draft request seeks:

> "For VCDs, documents reflecting your inventory forecasts, demand forecast, days on hand ("DOH") forecasts, or similar documents ordinarily transmitted to a supplier to show approximately how much inventory of VCDs you had on hand, or the quantity of VCDs expected to be ordered based on demand."

Ex. B at 7. Plaintiffs' May 17, 2021 RFP should be stricken, and the Pharmacy Defendants should not have to respond to it.

***First***, Plaintiffs should not be allowed to circumvent this Court's prior rulings by shoe-horning in a brand new request. The parties have already briefed and argued, and the Court has already decided, which requests the parties have to negotiate. *See* ECF 1217 (May 4, 2021 Order). ***This request was not among them.*** Further, as part of that ruling, this Court determined that it would not require the parties to even negotiate having the Pharmacy Defendants produce communications with suppliers (the manufacturer and wholesaler defendants) about the purchase of valsartan, and that custodial discovery from the Pharmacy Defendants was not appropriate at this time:

> Judge Vanaskie: "I am persuaded that it wouldn't be appropriate to require at this time the retailer defendants to negotiate with respect to a request for

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 20

> communications with the wholesalers and manufacturers concerning the purchase
> … of VCDs. … I am convinced that there – the core production has been produced
> in this area and I am concerned with respect to the burden that it would produce. …
> [A]t this point, I wouldn't require negotiation on that particular matter, especially
> because it would be opening up, as I understand it, additional custodian searches."

05-03-21 Hrg. Tr. at 67:5-19.

It was two weeks *after* this ruling that Plaintiffs introduced their new RFP, seeking precisely the type of information the Court had already ruled the Pharmacy Defendants did not need to produce—communications (including potential custodial discovery) with wholesaler and manufacturer defendants about their purchases of valsartan. Plaintiffs should not be allowed to bypass these rulings by inserting an entirely new and improper request.

*Second*, as best as the Pharmacy Defendants can tell, Plaintiffs' new request seeks secondary and circumstantial evidence about when and how much valsartan the Pharmacy Defendants purchased from wholesalers and manufacturers. The purpose and relevance of that information, however, is entirely unclear. That is because the best evidence of the Pharmacy Defendants' purchases of valsartan is their actual purchase history, which they have already produced on a transaction-by-transaction basis in response to Plaintiffs' first set of RFPs to the Pharmacy defendants.

Plaintiffs' first set of RFPs required production of "Documents sufficient to identify the VCDs purchased by you during the relevant time period, including *quantity/units*, *dates of purchase*, NDC, *supplier*, expiration date, and batch and/or lot number." Ex. C (original RFPs) at Request No. 1 (emphasis added). In other words, Plaintiffs already requested and the Pharmacy Defendants have already produced data reflecting, on a purchase-by-purchase basis: (1) from whom the Pharmacy Defendants purchased valsartan, (2) how much they purchased, and (3) when

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 21

they purchased it. The May 17, 2021 RFP at best seeks less probative circumstantial evidence of the real data Plaintiffs already have. For example, the May 17, 2021 RFP requests communications about "the quantity of VCDs *expected to be ordered*," but the Pharmacy Defendants have already produced how much they *actually ordered*, when, and from whom. As this Court has noted, "the core production has been produced in this area." 5/3/21 Tr. at 67:11-12.

Further, to the extent Plaintiffs argue that they seek data from the Pharmacies regarding the rate at which the valsartan they purchased was dispensed to consumers, or to try to reconstruct batch/lot numbers through the supply chain, *Plaintiffs also already have the best available data*. *See* Ex. C (original RFPs) at Request No. 4. In response to Request No. 4 from Plaintiffs' first set of RFPs to the Pharmacy Defendants, each Pharmacy Defendant produced highly detailed, voluminous data reflecting exactly which NDCs it sold, when, and where. Many of the Pharmacies produced this data on a fill-by-fill basis. As Plaintiffs are aware, lot, batch, and expiration data for each fill of Valsartan generally could not be produced, because the Pharmacies are not required to, and do not, track and retain lot, batch and expiration date information at the point of sale (but in the few examples where this data was available, it was already produced). Producing this data, in this format—*i.e.* the highly granular format requested by Plaintiffs during the first round of discovery negotiations—was both costly and burdensome for the Pharmacies. It now represents the best available data regarding the valsartan sales for the NDCs at issue in this litigation,[1] and the Pharmacies should not be required to also produce the less probative, more circumstantial forecasting data now sought by Plaintiffs' new May 17, 2021 RFP.

---

[1] To the extent Plaintiffs cannot definitively trace lot and batch information to specific consumers based on the actual data the Pharmacies already produced, their new request for indirect evidence like "forecasts" will not allow them to do so, and therefore is futile for product tracing purposes.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 22

Given the Court's prior rulings, and because Plaintiffs already have in their possession the best available evidence of the Pharmacy Defendants' purchases of, sales of, and demand for valsartan from wholesalers and manufacturers, the burden and expense of requiring the Pharmacy Defendants to produce less probative and more expensive discovery tangentially related to the actual data already produced far outweighs any potential benefit of the proposed discovery, and it should be disallowed.  Fed. R. Civ. P. 26(b)(1) (the scope of discovery is limited to "matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering … the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") (emphasis added).  Therefore, the Pharmacy Defendants respectfully request that the Court order that they are not required to respond to Plaintiffs' May 17, 2021 RFP and that it be stricken.

**ii.    Next Steps for Plaintiffs' Remaining Requests**

With respect to Plaintiffs' remaining Requests, the Parties agree as to the substance of the draft Requests, and are working to finalize that set of discovery for submission to the Court.  The current draft of Plaintiffs' Second Set of Requests to the Pharmacy Defendants is attached hereto as Exhibit B.  As with Plaintiffs' First Set of Requests to the Pharmacy Defendants, the Pharmacies propose that the Court enter the discovery as negotiated between the parties, and that the Pharmacies thereafter have 90 days to substantially complete production of documents in response to Plaintiffs' Second Set of Requests, with productions to be made on a rolling basis beginning 30 days from the entry of the Court's order.  *See* Dkt. No. 518 (July 16, 2020 Order) (directing the Pharmacies to make monthly rolling productions over 90 days).

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 23

3.  **Plaintiffs' Request for Wholesale De-Designation of Confidential Documents**

During the week of May 24th, certain of the Manufacturer Defendants received nearly identical requests from Plaintiffs' counsel seeking "wholesale de-designation of all documents marked as confidential falling within the scope" of Judge Vanaskie's order on ZHP's motion to seal. *See, e.g.*, email from D. Stanoch on 05-25-2021, attached as Ex. D. Given the apparent breadth of this request, Defendants responded and attempted to clarify their understanding of the scope of the order and Plaintiffs' request on Friday, May 28, 2021. *See* email from S. Harkins on 05-28-2021, attached as Ex. E.  As noted in Defendants' response, the order on ZHP's motion to seal specifically stated: "It is hoped that this detailed approach will provide the parties guidance on *future* designations of confidentiality and challenges under the Protective Order." (emphasis added). Following this guidance, Defendants will of course refer to these decisions in making further confidentiality designations and in resolving challenges brought by Plaintiffs under the terms of the Protective Order. Dkt. No. 139.

However, as evidenced by Plaintiffs' response that same day, it appears that it is Plaintiffs' position that the Manufacturer Defendants should undertake a wholesale re-review of each and every designated document produced in this litigation in the absence of a single particularized challenge to those confidentiality designations. *See* email from A. Slater on 05-28-2021, attached as Ex. F. Moreover, Plaintiffs state that to the extent documents are not affirmatively de-designated by Defendants and are later subject to a challenge, they intend to seek costs and sanctions for the inconvenience of following the process set out by the Protective Order. *Id.* Because Plaintiffs also state that they will pursue these sanctions *even if Defendants' "position that Plaintiffs must take time to challenge every individual document is adopted by the Court,"* (*id.* (emphasis added)),

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 24

the Manufacturer Defendants seek the Court's guidance on the intended scope of the order on ZHP's motion to seal and request that the Court reaffirm the need to follow the process laid out in the heavily negotiated and agreed-upon Protective Order.

Plaintiffs' request that Defendants perform a wholesale re-review of hundreds of thousands of documents independent of specific challenges to confidentiality designations from Plaintiffs' counsel is massively burdensome and would thwart the purpose of the Protective Order. First, for the overwhelming majority of documents, Defendants would necessarily be re-reviewing and evaluating designations which will never be subject to a challenge, or even used in any fashion in this litigation. This is an enormous waste of time and effort, and is grossly disproportionate to the relatively minor inconvenience of requiring Plaintiffs to challenge specific documents. The procedure for a party to challenge confidentiality designations applies equally to all litigants and is laid out in the Protective Order negotiated, which was entered over two years ago. Defendants do not interpret anything in the order on ZHP's motion to seal as being intended to alter the process set forth in the Protective Order or obviate the fundamental requirement that confidentiality designations be evaluated on a document-by-document basis. *See* Dkt. No. 1268, at 9 n.5 (noting that "categorization does not obviate a document-by-document review of the documents at issue . . .").

Second, even were Defendants to undertake a wholesale re-review of some or all of their designated documents, they would be doing so with no assurance that the re-review would prevent a future challenge by Plaintiffs. One function of requiring document-specific challenges is that it allows the parties to meet and confer on the particular issues leading to disagreement at the time the designating party is asked to re-evaluate the designation. Asking Defendants to perform this

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 25

exercise in a vacuum prevents the parties from exchanging information and discussing the specifics of documents which the challenging party actually intends to use for some purpose. It also requires Defendants to perform their review without the benefit of subsequent rulings—such as the order on ZHP's motion to seal—which provide helpful guidance in evaluating future challenges. And if Plaintiffs' stated position is adopted, to the extent any document is not fully de-designated, Defendants could still be subject to a challenge on said document, forced to undertake yet another review, and face a motion for sanctions over even a good faith disagreement.

Finally, the parties have spent the past two years exchanging millions of pages of documents. The Protective Order specifically anticipated that "the volume of documents to be exchanged by the parties during pre-trial discovery may be substantial." Dkt. No. 139, ¶ 9(B). "Accordingly, nothing herein shall be construed to prevent a Producing Party from designating documents as "CONFIDENTIAL INFORMATION" in order to expedite the flow of discovery and to facilitate discovery in these consolidated actions." *Id*. Plaintiffs' request goes against the specific language and undermines the intent and purpose of the Protective Order.

In light of the above, Defendants similarly disagree that they should or are in any way obligated to revisit their specific designations to deposition transcripts in the absence of particularized challenges to those designations. The Manufacturer Defendants will continue to evaluate challenges to confidentiality designations in light of the Court's rulings on similar documents and issues, but disagree that "wholesale" de-designations are required or appropriate. Thus, Defendants ask the Court to reaffirm the need to follow the document-by-document challenge procedure laid out in the Protective Order, and reject Plaintiffs' request for wholesale de-designation of confidential documents.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 26

**4. Defendants Should Not Be Forced to Depose Non-Representative Third-Party Payors**

Recently, Plaintiffs proposed that Defendants agree to take the depositions of two TPPs Employers and Laborers Locals 100 and 397 Health and Welfare Fund and Steamfitters Local 439 (collectively, the "new TPP entities" or "new TPPs") before the second phase of discovery ends on October 1, 2021. While these TPPs are named as putative class representatives in an action transferred to and consolidated with the MDL back in early 2020, they were not named as putative class representatives, nor proposed to be named as putative class representatives, in the current operative Master Economic Loss Class Action Complaint or the recently proposed Third Amended Operative Economic Loss Master Complaint, nor may they ever be. The discovery orders in the MDL apply to and require the depositions of TPPs named as putative class representatives in the Master Complaint only, (CMO-23, Dkt. No. 863), and Defendants intend to take the depositions of those individuals and entities proposed to be named as putative class representatives pursuant to the Motion for Leave to File a Third Amended Complaint. Dkt. No. 1148, Dkt. No. 1148-3. Plaintiffs have not provided any explanation as to why these new TPP entities have not been so named or so proposed, nor any basis for insisting that Defendants should invest the time and expense in taking their depositions even though they are not, nor may ever be, named as putative class representatives. Defendants, however, have informed Plaintiffs that upon their moving to add these TPPs as putative class representatives to the then-operative Master Complaint, Defendants will take Rule 34 discovery from them, as they have with the other named TPP putative class representatives, and then schedule a deposition of these TPPs. Until then, however, there is no requirement, basis, or need for Defendants to take their depositions.

**5. Status of Treater Deposition Protocol**

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 27

Defendants sent Plaintiffs a proposed Case Management Order establishing a protocol for treating physician communications and depositions on May 4, 2021. *See* Ex. G (Defendants' initial proposed Case Management Order). Therein, Defendants requested a meet and confer with Plaintiffs if Plaintiffs had any objections to the draft order. On May 19th, Plaintiffs sent proposed redlines to Defendants' draft Case Management Order and the parties met and conferred. *See* Ex. H. Defendants reviewed Plaintiff's proposed edits to the protocol and, making efforts to compromise, accepted many edits. Defendants sent Plaintiffs a revised proposed Case Management Order on May 27, 2021. *See* Ex. I. The parties are continuing to confer on edits to the draft order and will raise any issues they are unable to resolve before the Court at the next conference. To avoid delay, the parties have agreed to proceed with scheduling treating physician depositions for 10 Bellwether plaintiffs.

**6.  <u>Defendants' Most Recent Interrogatories and Requests for Production to Plaintiffs</u>**

The Manufacturer Defendants served their First Set of Global Interrogatories and Requests for Production to Plaintiffs on May 24, 2021. *See* Ex J. The information sought is not duplicative of prior discovery and was not previously requested in Plaintiffs' fact sheets. The discovery consists solely of 6 interrogatories and 9 requests for production seeking information in Plaintiff counsel's possession. For example, Interrogatory Number 1 asks Plaintiff to provide information about testing performed at Plaintiff counsel's request on Plaintiffs' valsartan medications. This discovery cannot be obtained otherwise, is in Plaintiff counsel's possession, and is not unduly burdensome for Plaintiff to produce. The requests are narrowly tailored and relevant to the issues in the case. Defendants are unaware of any efforts by Plaintiffs to meet and confer on these

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 28

discovery requests. Accordingly, Defendants do not believe any issue relating to the requests is

ripe for discussion with the Court.

### 7.  <u>Plaintiff Fact Sheet Show-Cause Submission</u>

<u>*Cases Addressed at the May 3, 2021 Case Management Conference:*</u>

Defendants note that the Court issued three show cause orders returnable at the June 3, 2021 Case Management Conference:

- *Mundy, Gwendolyn v. Doe* - 20-cv-08285
- *Gibson, James v. ZHP, et al.,* - 20-cv-04363
- *Canfara, Michael v. Rite Aid Corp.,* - 20-cv-10857

The issues in all three cases are resolved and as such there are show cause orders pending at the June 3, 2021 Case Management Conference.

<u>*Second Listing Cases – Order to Show Cause Requested:*</u>

Pursuant to CMO-16, the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. Each of these three cases were previously listed on the agenda for a prior CMC. Defendants provided a list including these cases and identified deficiencies to Plaintiffs' leadership counsel for distribution on May 18, 2021, met and conferred with Plaintiffs' counsel on May 28, 2021, and have been available for further meet and confers as needed. Accordingly, Defendants request that an Order to Show Cause be entered in each of these cases, returnable at the next case management conference, as to why the case should not be dismissed.

Defense counsel will be prepared to address the individual issues with respect to each of these cases, to the extent necessary, during the June 3, 2021 Case Management Conference:

|   | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|-----------|------------------|----------|--------------|-----------------|
| 1. | Wilcox, John v. Mylan Laboratories Ltd., et al | 20-cv-17939 | Babin Law | No authorizations, medical records, proof of purchase. Extensive incomplete PFS sections see deficiency letter. | 3/23/21 |

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 29

| 2. | Darris Knox, Individually and as a Representative of Andrae Knox v. CVS Health | 20-cv-16419 | Watts Guerra, LLP | No response to deficiency notice | 1/29/21 |
|---|---|---|---|---|---|
| 3. | Sundermeier, Julie v. Aurobindo Pharma, Ltd., et al. | 21-cv-01075 | Levin Papantonio | No PFS Filed. | PFS Due - 3/24/2021 |

**_First Listing Cases – Remaining Core Deficiencies:_**

The following Plaintiff Fact Sheets contains core deficiencies which remain unresolved. Defendants provided a list including these cases and identified deficiencies to Plaintiffs on May 18, 2021, met and conferred with Plaintiffs' counsel on May 28, 2021, and have been available for further meet and confers as needed. This is the first time these cases have been listed on this agenda. Accordingly, Defendants are not requesting orders to show cause with respect to any of the below cases at this time and will continue to meet and confer to resolve these deficiencies.

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Notice Sent |
|---|---|---|---|---|---|
| 1. | Northington, Michael v. Zhejiang Huahai Pharmaceuticals Co., Ltd. | 20-cv-16098 | Levin Papantonio | Need Medical Expenses | 4/19/21 |
| 2. | E.O. of Donna Keglovich, Deceased v. Hetero Drugs, Ltd., et al. | 21-cv-01903 | Oliver Law Office | III.G.c – Plaintiff failed to state the specific monetary amounts for the following identified medical expenses from: Central Ohio Primary Care; OhioHealth Grant | 4/19/21 |

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 30

| | | | | Medical Center; and OhioHealth Riverside Methodist Hospital.<br><br>XI.A.1 – No health care authorizations were produced for the following identified health care providers and treatment facilities: Dr. Paul J. Grandinetti; Dr. Michael M. Schreiber; Ohio State Wexner Medical Center; Anne M. Nooman; Mary E. Dillhoff. MD; Eric D. Elliot, D.O.; John P. Walker, M.D.; Jeffrey R. Groce, M.D., Ph.D.; Mark A. Lindsey, M.D.; The Zangermeister Cancer Center; Central Ohio Primary Care. Please produce properly executed and undated health care authorizations for each of the foregoing health care providers and treatment facilities.<br><br>XI.A.6 – Plaintiff produced one insurance records authorization with the Amended PFS. However, the produced insurance records authorization is for an unspecified entity. Please produce properly executed and undated insurance records authorizations for each identified insurance carrier.<br><br>XI.B.18 – Plaintiff did not produce any corresponding billing records for the | |
|---|---|---|---|---|---|

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 31

| | | | | | |
|---|---|---|---|---|---|
| | | | | following identified medical expenses: OhioHealth Riverside Methodist Hospital. | |
| 3. | Osolin, Lillian | 20-cv-15180 | Brown, LLC | III.A.1.b & III.B.1 – Plaintiff states that she is still taking Valsartan in this section. However, Plaintiff indicates her usage end date was 11/18/2020 in section 1 of the Amended PFS. Please clarify and supplement these responses, including identifying any additional Valsartan products used by Plaintiff subsequent to 11/18/2020.<br><br>III.G.a – III.G.c – Plaintiff failed to provide any response to the requests regarding her claimed medical expenses regarding: the provider for each claimed expense; the date of each expense; and the monetary amount of each expense.<br><br>XI.A.1 – No health care authorizations were produced for: Frank Karpowicz, MD; Huntington Surgery Center; Express Scripts; or CVS. Please produce properly executed and undated health care authorizations for each of the foregoing health care providers, treatment facilities, and pharmacies.<br><br>XI.A.5 – One disability records authorization was | 4/8/2021 |

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
The Honorable Karen Williams
June 2, 2021
Page 32

| | | | | produced for an unspecified entity. Please produce a properly executed and undated disability records authorization for each respective entity.<br><br>XI.A.6 – No insurance records authorization was produced for the following identified insurance carrier: Medicare. Please produce a properly executed and undated insurance records authorization for the foregoing insurance carrier.<br><br>XI.B.2 – No pharmacy records were produced for CVS Pharmacy. | |

Respectfully submitted,

Clem C. Trischler

c:    All counsel of record (via ECF)