# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

IN RE: VALSARTAN, LOSARTAN, AND
IRBESARTAN PRODUCTS LIABILITY
LITIGATION

This document relates to:
*All Actions*

No. 1:19-md-2875-RBK-KMW

Hon. Robert B. Kugler
Hon. Karen M. Williams
Hon. Thomas I. Vanaskie

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ZHP'S MOTION FOR
A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF BAOHUA CHEN**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BAOHUA CHEN IS THE LINCHPIN OF THE ZHP ORGANIZATION AND ITS CONTAMINATED VALSARTAN ......................................................................................2

LEGAL ARGUMENT..........................................................................................................23

I.     BAOHUA CHEN'S DEPOSITION SHOULD PROCEED AS ORDERED........................................................................................................23

    A.    The "Apex Doctrine" Is Overstated ................................................23

    B.    Any "Apex Doctrine" Does Not Apply to Baohua Chen .............................24

    C.    ZHP Has Not Met Its Burden Under Rule 26 ................................................25

    D.    The Court Should Not Hold ZHP's Motion in Abeyance Pending Further Discovery ............................................................................29

CONCLUSION......................................................................................................................29

## **TABLE OF AUTHORITIES**

**CASES**

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
    205 F.R.D. 535 (S.D. Ind. 2002)................................................................28

*Ciarrocchi v. Unum Grp.*,
    No. CV 08-1704 (JBS/AMD), 2009 WL 10676631 (D.N.J. Aug. 27, 2009) ...........27,28

*Cipollone v. Ligget Grp., Inc.*,
    785 F.2d 1108 (3d Cir. 1986)................................................................23

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
    —— U.S. ——, 139 S. Ct. 881 (2019)........................................................26

*Frank Brunckhorst Co. v. Ihm*,
    No. MISC. 12–0217, 2012 WL 5250399 (E.D. Pa. Oct. 23, 2012)..........................25

*George v. Pennsylvania Tpk. Comm'n*,
    No. 1:18-CV-766, 2020 WL 2745724 (M.D. Pa. May 27, 2020)..............................28

*Otsuka Pharm. Co. v. Apotex Corp.*,
    310 F.R.D. 256 (D.N.J. 2015)...........................................................*passim*

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir.1994)..............................................................*passim*

*Performance Sales & Mktg. LLC v. Lowe's Companies, Inc.*,
    No. 5:07–CV–00140–RLV, 2012 WL 4061680 (W.D.N.C. Sept. 14, 2012)............25

*Pollock v. Energy Corp. of Am.*,
    No. CIV.A. 10-1553, 2015 WL 757458 (W.D. Pa. Feb. 23, 2015),
    *aff'd,* 665 F. App'x 212 (3d Cir. 2016) .................................................28,29

*Serrano v. Cintas Corp.*,
    699 F.3d 884 (6th Cir. 2012) ...........................................................24,25

*In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig.*,
    No. 2:13–MD–02436, 2014 WL 3035791 (E.D. Pa. July 1, 2014) ..........................26

*United States ex rel. Galmines v. Novartis Pharm. Corp.*,
    No. CV 06-3213, 2015 WL 4973626 (E.D. Pa. Aug. 20, 2015)..............................25,26

*Younes v. 7-Eleven, Inc.*,
    No. CV 13-3500 (RMB/JS), 2015 WL 12844446 (D.N.J. Aug. 19, 2015) ..............*passim*

**RULES**

Federal Rule of Civil Procedure 26 ........................................................................*passim*

## INTRODUCTION

ZHP's motion for a protective order misconstrues the factual record and the law. This Court has already ordered Baohua Chen's deposition because Plaintiffs have established his direct and unique and personal role in the matters at issue in this litigation, including as the linchpin of the ZHP Organization and its development, manufacture, sale, and recall of its contaminated valsartan. (ECF 704). Subsequent discovery has only further buttressed Plaintiffs' need for Mr. Chen's deposition.

When it ordered his deposition, the Court granted ZHP leave to file a motion for a protective order to quash the deposition based on a "sufficient deposition record." *Id.* At the hearing immediately preceding that order, the Court explicitly stated, **"It's his [(ZHP's counsel's)] motion for protective order, so it's his burden, of course."** (12/22/2020 Tr. 48:1-2). Thereafter, ZHP only asked one deponent about Mr. Chen, and that was not Jun Du, the witness who ZHP curiously foreshadowed would be the key to the motion. Moreover, ZHP's witnesses were often unable or unwilling to answer questions about Mr. Chen during their depositions.

Instead of shouldering its burden, ZHP misconstrues the law to attempt to improperly shift the burden of proof and rely on an exaggerated "presumption" against deposing "apex witnesses," which clearly does not apply on the record here. Rather than establishing a record to support this motion, ZHP did virtually nothing to elicit testimony relevant to this issue, and instead now argues that Plaintiffs should have obtained testimony to support the need for the deposition. But ZHP's failing in this regard cannot be foisted on Plaintiffs, who were not required to exhaust every possible question that might be asked of Baohua Chen, in questioning other witnesses. That is not the standard, especially where Plaintiffs already proved the right to conduct the deposition. Accordingly, without even acknowledging its burden on this motion, ZHP clearly fails to satisfy the requisite standard.

1

The record is abundantly clear that the Court's initial finding, based on a robust record, that Mr. Chen has unique personal knowledge about ZHP's development, manufacture, sale, and recall of its contaminated valsartan, was correct.  Therefore, the Court should deny ZHP's motion.

**BAOHUA CHEN IS THE LINCHPIN OF**
**THE ZHP ORGANIZATION AND ITS CONTAMINATED VALSARTAN**

ZHP's motion fails to contend with the record establishing Baohua Chen's central role in the ZHP organization as well as the development, manufacture, sale, and recall of its contaminated valsartan.  According to an organization chart provided by ZHP to Delloitte Tax LLP in October 2019, Baohua Chen is the CEO of ZHP and Shanghai Syncores (ZHP's wholly-owned research entity that developed the ill-fated zinc chloride process for the manufacture of valsartan in 2011). (ZHP00076700, Ex. A hereto; ZHP00076708, Ex. B hereto).  The organization chart also states that "[a]ll the VP or directors are reported to Baohua Cheng [d]irectly," and shows that Mr. Chen is the linchpin between ZHP, Shanghai Syncores, Prinbury, Huahai US, Prinston, and Solco. (ZHP00076709, Ex. B hereto).

Mr. Chen is not just a figurehead, he has direct technical knowledge and training. According to ZHP's Drug Master File (DMF) for valsartan, ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ (ZHP01662344, Ex. C hereto; *see also* ZHP01633850, Ex. D hereto; ZHP01458548, Ex. E hereto).  **Mr. Chen has a Master of Science in Chemical Engineering.**  (ZHP00004937, Ex. F hereto).  ZHP's valsartan DMF also states, ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

██████████████████████████████████████

(ZHP01662359, Ex. C hereto).  As already mentioned, all vice presidents or directors report to Mr. Chen directly; thus, **as the "General Manager," he effectively leads all of ZHP's departments and is responsible for coordinating and synthesizing their disparate activities**.  He managed 3,800 employees as of May 2014.  (ZHP00004937, Ex. F hereto).

During FDA inspections, Mr. Chen directly told the FDA that he "has the ultimate authority at the firm and takes **full responsibility for the company's operations**."  (PRINSTON00083647, Ex. G hereto).  Not surprisingly, Mr. Chen participated in at least seven FDA inspections, in August 2013, May 2014, March 2015, November 2016, June 2017, January 2018, and June 2019.  At the August 2013 inspection, the Vice General Manager of Quality Assurance said that he reported directly to Mr. Chen.  (PRINSTONO0083002, Ex. H hereto).  After that inspection, Mr. Chen "promised to correct/evaluate all discussion items and to expand the corrections to any related issues."  (PRINSTON00083010, Ex. H hereto).  The March 2015 inspection reports identified Baohua Chen as the "most responsible person."  (PRINSTON00083028, 31, Ex. I hereto).  The May 2014, November 2016, and January 2018 inspection reports state that all FDA correspondence should be addressed to Mr. Chen.  (PRINSTON00074128, Ex. J hereto; PRINSTON00081551, Ex. K hereto; PRINSTON00081574, Ex. L hereto).  The record is clear that Mr. Chen played a central role at ZHP and that he communicated directly with the FDA.

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████    Consistent with this strategy spearheaded by Mr. Chen, ZHP has told the FDA that it changed to the contaminating manufacturing process in order lower the cost of its valsartan and dominate the world market as a result.  (PRINSTON00162373, Ex. U hereto).  **Plaintiffs believe that Mr. Chen likely knew about the NDMA contamination that was discovered prior to July 2017, and made or authorized the decision to keep this hidden so that ZHP's revenue stream would not be disrupted, and if he did not, he needs to testify to how that happened and the ramifications.  In any event, he is the person to explain the failure to disclose the NDMA contamination.**

Mr. Chen was also intimately involved with ZHP's recall of Valsartan.  ZHP's "Protocol of Valsartan API Recall (Foreign grade)" lists Mr. Chen as the first member of the "Recall Group," and that group does not include Jun Du, who is the CEO of all three of ZHP's U.S. subsidiaries, which are all based in New Jersey.  (ZHP00494048, Ex. V hereto).  ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████

█████████████████████████████████████









Despite its representations to the contrary, ZHP's witnesses have confirmed the above narrative without being able to fill in the gaps that only Baohua Chen could.  For example, ZHP has repeatedly claimed that Jun Du could provide the same information as Baohua Chen.  (*See, i.e.*, 5/03/2021 Tr. 43:18-22).  ZHP even asked for an extension to file its motion in order to include his testimony and ultimately filed a supplemental brief on this basis.  (*Id.* at 43:7-12).  **Yet, Jun Du's deposition only supports Plaintiffs' need for the deposition of Mr. Chen.**

As stated, the deposition of Jun Du only strengthened the need for the deposition of Mr. Chen.





This testimony eviscerates the prior suggestions that Jun Du is some all-knowing witness.

ZHP also claims that the deposition of Min Li, its Vice President of Analytical Operations, obviates the need for Baohua Chen's deposition.  (ZHP's Br. 8).  This argument is unsupported by the testimony, which strongly points to the need for the deposition of Mr. Chen.









The compelling information learned during the deposition of Min Li is an overlay definitively refuting ZHP's consistent and deliberate understatement of Mr. Chen's involvement in relevant corporate activities.

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████ As already shown, Mr. Chen has a

Master of Science in Chemical Engineering.  (ZHP00004937, Ex. F hereto).  ████████████

████████████████████████████████████████

ZHP also relies on the testimony of Jucai Ge, its Director of API Quality Assurance at the

Chuannan Site.  ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████





ZHP also continues to mischaracterize the import of Hong (Eric) Gu's deposition.



This is just another example of a document showing that Mr. Chen is and has been an important part of the valsartan story.

According to ZHP, "although Plaintiffs claim that Mr. Chen is needed to testify to the relationship between the ZHP Parties, communications with the FDA, the product recall, and the pricing of ZHP's valsartan finished dose, Plaintiffs have already questioned a witness more knowledgeable on these topics." (ZHP's Br. 5-6).  This argument is obvious evasion.  Mr. Chen's unique position within the ZHP Organization, where everyone reports to him and no one else, requires Plaintiffs to take his deposition. ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████ The Facebook page of PrinJohnson, an intermediate holding company between Huahai US and Prinston, which in turn owns Solco, further actually focuses on Mr. Chen's involvement in these operations:



Baohua Chen Chairman of PrinJohnson



([PrinJohnson's Facebook Page](#)).



([PrinJohnson's Facebook Page](#)).  

Once again, all major decisions point to Mr. Chen, whether they are communications with the FDA, the product recall, or the pricing of ZHP's valsartan.

Peng Dong's evasive testimony regarding Mr. Chen also shows that Mr. Chen was substantively involved:



19



Thus, Peng Dong's deposition further supports Plaintiffs' need for Mr. Chen's deposition.

Inexplicably, ZHP relies on the following testimony from Qiangming Li in support of its motion:

ZHP also relies on a conclusory and self-serving declaration from ZHP Director of Regulatory Affairs Lihong (Linda) Lin in support of its motion. (ZHP's Br. 10-11).

20

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████ However, ZHP overlooks Mr. Chen's active role as Ms. Lin's supervisor and the primary point of contact for many FDA inspections and FDA communications, as discussed above.

████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████

██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ As already explained, this misconstrues Plaintiffs' argument that Baohua Chen is the linchpin of the ZHP Organization leading all of its departments and playing an active role in its subsidiaries, especially Shanghai Syncores, where he is CEO. Plaintiffs do not need to depose Baohua Chen to understand how these departments and subsidiaries are linked. They need to depose Baohua Chen on how and why he coordinated and led all these departments and entities to develop, manufacture, sell, and recall

nitrosamine contaminated valsartan throughout the world, including the United States. The deposition of an American employee of one of ZHP's U.S. subsidiaries is not a substitute for Mr. Chen's deposition.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████ This testimony does not help ZHP on this motion, and the reliance on this testimony is puzzling.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

In its brief, ZHP summarily describes Minli Zhang's deposition but does not explain how Mr. Chen's testimony would be duplicative. (ZHP's Br. 5). ████████████████████

██████████████████████████████████████████████████

Inclusion of this reference in the motion, as well as the references to obscure testimony from other witnesses, is mere filler on ZHP's motion, and proves nothing that would help ZHP to meet its burden.

On this record, ZHP cannot present any reasonable argument to preclude the deposition of Baohua Chen. He was involved at every point in the process, and has direct knowledge from all

corners of the company that Plaintiffs cannot possibly learn or confirm from other sources.  And Mr. Chen has to account for key matters he was at the heart of, and confirm what he knew and when, including but not limited to the inadequate risk assessments of the TEA and zinc chloride processes, the decision to develop the contaminating zinc chloride process, the decision to hide the contamination in order to maximize corporate profits, and the grudging disclosure only when Novartis forced ZHP to do so.

## LEGAL ARGUMENT

## I.

## BAOHUA CHEN'S DEPOSITION SHOULD PROCEED AS ORDERED

Federal Rule of Civil Procedure 26(c)(1) states that the Court "may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … forbidding the … discovery."  "Good cause, in turn, requires the movant to demonstrate 'that [the discovery] will work ***a clearly defined and serious injury*** to the party seeking closure.'"  *Otsuka Pharm. Co. v. Apotex Corp.*, 310 F.R.D. 256, 259 (D.N.J. 2015) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir.1994)), emphasis added. **"[T]he burden rests with the party seeking a protective order."** *Id.* at 260 (citing *Cipollone v. Ligget Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)) (denying a motion for a protective order to preclude a deposition).  **When it granted ZHP leave to file this motion for a protective order, the Court clearly stated, "It's his [(ZHP's counsel's)] motion for protective order, so it's his burden, of course."**  (12/22/2020 Tr. 48:1-2).

## A.  The "Apex Doctrine" Is Overstated by ZHP

ZHP cites a number of unpublished trial court decisions in an effort to create the impression that the deposition of Boahua Chen is somehow presumptively precluded by an "apex doctrine." (ZHP's Br. 14-16).  However, **the only published federal appellate decision addressing the**

23

"apex doctrine" has rejected the broad sweep argued for by ZHP.  In *Serrano v. Cintas Corp.*, the Sixth Circuit "conclude[ed] that the magistrate judge erred as a matter of law in relying on 'apex doctrine' to grant the protective order."  699 F.3d 884, 902 (6th Cir. 2012).  The court explained:

> [W]hile we sometimes have considered the need for the deposition—i.e., its potential to result in relevant testimony—in reviewing the grant or denial of a protective order, **we have not abandoned the requirement that one of the harms listed in Rule 26(c)(1)(A) must be specified in order to warrant a protective order.**  Even in cases where we have considered extensively a corporate officer's knowledge and, thus, capacity to provide information relevant to the case, **we have declined "to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden," and still required the corporate officer to meet Rule 26(c)(1)'s requirements.**

*Id.* at 901.  This all follows from Federal Rule of Civil Procedure 26.  *Id.*  There is no presumption proven by a witness's title, and Boahua Chen is not too important to be deposed.  ZHP has not proven "***a clearly defined and serious injury***" that will result from this deposition, and that is the beginning and end of the inquiry.  *Otsuka Pharm.*, 310 F.R.D. at 259 (quoting *Pansy*, 23 F.3d at 786), emphasis added.

**B.  The Purported "Apex Doctrine" Does Not Apply to Baohua Chen**

As the Sixth Circuit noted, "the 'apex doctrine' is built on the false foundation that 'harassment and abuse' are 'inherent' in depositions of high-level corporate officers and therefore allow such depositions to be barred absent 'a showing that the individual possesses relevant evidence which is not readily obtainable from other sources.'"  *Serrano*, 699 F.3d at 901.  This Court has already established that it is, "not that sympathetic to the apex argument," explaining:

> [W]e've all been through this in many different cases.  If they're deposing a CEO because he may have signed a form contract and he doesn't have any personal knowledge of what happened, **but here, we have a situation where plaintiffs are seeking to depose the gentleman in large part because of the information he gains when he was, in my words, in a front-line position.**

(12/22/2020 Tr. 40:4-5, 44:2-8).  In other words, the purpose of the apex doctrine and the doctrine itself do not apply when the witness had personal involvement in the matters at issue in the case. As already found by this Court, Boahua Chen was personally involved, has unique knowledge, and is not shielded from this deposition by any formulation of the apex doctrine.

### C.  ZHP Has Not Met Its Burden Under Rule 26

ZHP has not submitted a declaration from Mr. Chen establishing, with the necessary level of specificity, how his deposition would cause "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. of Civ. Proc. 26(c)(1); *see also Serrano*, 699 F.3d at 901; *Otsuka Pharm.*, 310 F.R.D. at 259 (citing *Pansy*, 23 F.3d at 786).  This is likely because the record demonstrating Mr. Chen's involvement is overwhelming—leaving ZHP to hope for the Court to reverse its prior ruling that established Mr. Chen's direct involvement.

ZHP cites a total of five cases—all unpublished—in support of its motion under the "apex doctrine."  In the first case, *United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. CV 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015), the court acknowledged that the "apex doctrine does not represent an exception to the rule that a party seeking to quash a subpoena bears the 'heavy burden' of demonstrating that the subpoena represents an undue burden."  *Id.* at 2 (citing *Frank Brunckhorst Co. v. Ihm*, No. MISC. 12–0217, 2012 WL 5250399, at *4 (E.D. Pa. Oct. 23, 2012)).  Relying on an unpublished trial court case from North Carolina, the Court nevertheless held that the "apex doctrine does … apply a rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and that this burden is undue absent the two factors set forth in the apex doctrine, which go to the lack of a more convenient, less burdensome, and less expensive alternative."  *Id.* (citing *Performance Sales & Mktg. LLC v. Lowe's Companies, Inc.*, No. 5:07–CV–00140–RLV, 2012 WL 4061680, at *3–4 (W.D.N.C. Sept. 14, 2012), *overruled on other grounds*, *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,

—— U.S. ——, 139 S. Ct. 881 (2019)).   However, here, the Court has already rejected the applicability of this analysis due to the witness's direct involvement, meaning the presumption (if any applied) was already overcome, and the only defense left to ZHP is this motion for a protective order—with ZHP having the burden.

Of note, **ZHP does not cite a District of New Jersey case adopting this presumption, and as recognized by the Sixth Circuit, Rule 26 is the touchstone.**   Moreover, the facts and posture presented in *Galmines* are night and day from this case.   There, the plaintiff offered only two documents in support of her need for the deposition of a CEO:

> In support of his position, Mr. Galmines has filed with the Court a PowerPoint slide that Mr. Gorsky allegedly reviewed. The slide displays the percentage of Elidel sales for off-label uses. Mr. Galmines has also submitted an email from Mr. Gorsky to a business associate in which Mr. Gorsky recommends editing that PowerPoint slide by changing the phrase "off-label sales" to "other sales."

**This allowed the court to easily distinguish the case from *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig.*,** No. 2:13–MD–02436, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014), **"where Judge Stengel denied a motion to quash because 'documents, which have been produced by the defendants during discovery, show very clearly that [the high-ranking executive] was actively involved in decision making regarding the marketing and product development of Tylenol products.'"**   *Galmines*, 2015 WL 4973626, at *2.   This case is clearly more akin to *In re Tylenol* in that Plaintiffs have cited and described dozens of documents and compelling deposition testimony, in particular from Min Li, establishing Mr. Chen's integral role in the matters at issue here.

ZHP's second case is a decision authored by Judge Schneider, *Younes v. 7-Eleven, Inc.*, No. CV 13-3500 (RMB/JS), 2015 WL 12844446, at *2 (D.N.J. Aug. 19, 2015).  Judge Schneider has previously concluded that any "apex doctrine" is inapplicable to Mr. Chen, as he is intimately involved in this case.   (12/22/2020 Tr. 40:4-5, 44:2-8).  *Younes* is easily distinguished here, as that

26

decision concerned the plaintiffs' second motion for the depositions of 7-Eleven's CEO and former executive vice president. *Id.* at *1-2. In deciding the first motion, Judge Schneider said, "If the record is going to [stay] as it is in the motion, you're not going to get these depositions. You haven't shown the Court that these witnesses have personal and unique information." *Id.* *2. On their second motion, "plaintiffs[] …essentially rehashe[d] the same arguments in plaintiffs' first motion." *Id.* Here, the shoe is on the other foot. Judge Schneider ordered the deposition of Mr. Chen, having found him to have direct involvement and information, and ZHP has simply repeated the "apex doctrine" arguments that the Court previously denied. Thus, *Younes* supports denial of ZHP's motion, not granting it.[1]

*Ciarrocchi v. Unum Grp.*—ZHP's third case—is even more inapposite, and supports Plaintiffs' position to the extent relevant here. No. CV 08-1704 (JBS/AMD), 2009 WL 10676631, at *3 (D.N.J. Aug. 27, 2009). It is worth noting that this case involved a pro se plaintiff's suit "seek[ing] to vacate the [parties' prior] settlement, reinstate the disability insurance policy, and re-establish disability payments." *Id.* at *1. Like *Younes*, the plaintiff previously lost a motion to compel the depositions of the defendant's CEO and COO. *Id.* at *2. Instead, the court ordered the deposition of another employee "that was involved in handling [the p]laintiff's claim." *Id.* However, the plaintiff never took that deposition and instead filed another motion to depose the defendant's CEO. *Id.* During a status conference regarding this second motion, the court thought that the parties had agreeably resolved this dispute and allowed for the deposition of an employee besides the CEO, but the plaintiff ultimately filed a third motion to compel the deposition of the CEO and COO. *Id.* The pro se plaintiff simply argued "that he requires these depositions because

---

[1]    In *Younes*, Judge Schneider noted that "[t]he parties do not dispute the applicable standard to apply to decide if high-ranking corporate executives may be deposed," suggesting that the Court would otherwise have considered counter arguments. 2015 WL 12844446, at *2.

27

he seeks to obtain information regarding Defendant's general practices and policies for settling claims." *Id.*  The court held that **"[f]ederal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case."** *Id.* at *3 (quoting *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).  However, "[t]he Court finds that Plaintiff fails to demonstrate at this time that either [the CEO] or [COO] have unique knowledge of relevant facts in this case." *Id.*  Here, the record shows Mr. Chen has unique knowledge of facts relevant to Plaintiffs' cases.  (*See supra*).

Fourth, ZHP cites a clearly inapplicable case, *George v. Pennsylvania Tpk. Comm'n*, No. 1:18-CV-766, 2020 WL 2745724, at *3 (M.D. Pa. May 27, 2020).  That case concerned an ethnic discrimination lawsuit where the plaintiff asked to depose the Pennsylvania Turnpike Commission's CEO only after the fact discovery deadline had expired. *Id.* at *1.  The court denied this request primarily because "we deem the request to be untimely." *Id.* at *3.  Importantly, the court never mentioned, let alone relied on, a "presumption" against "apex witnesses."

ZHP's final case is *Pollock v. Energy Corp. of Am.*, No. CIV.A. 10-1553, 2015 WL 757458, at *6 (W.D. Pa. Feb. 23, 2015), *aff'd,* 665 F. App'x 212 (3d Cir. 2016), which is also easily distinguished.  Plaintiffs first note that ZHP's citation to the Third Circuit's affirmance of that decision is misleading.  The trial court did deny the plaintiffs' request to call two of the defendant's executives **at trial** below. *Pollock*, 2015 WL 757458, at *6.  However, the plaintiffs prevailed at trial, and the Third Circuit affirmed that judgment in favor of the plaintiffs. *Pollock*, 665 F. App'x at 213-14.  The Third Circuit's decision did not address whether the trial court properly precluded the plaintiffs from calling the defendant's executives as witnesses.

More substantively, the decision focuses on trial testimony of high-level executives who the plaintiffs never even bothered to depose. The trial court did not reference the "presumption"

ZHP asks this Court to apply, and the court commented on the fact that the plaintiffs there did not attempt to depose the executives at issue.  2015 WL 757458, at *6.  Here, Plaintiffs have sought and obtained Mr. Chen's deposition, and the posture here is the defendant attempting to secure a protective order to block that already ordered deposition.

### D.  The Court Should Not Hold ZHP's Motion in Abeyance Pending Further Discovery

The Court has already ruled that Plaintiffs have established their need for Mr. Chen's deposition, and as discussed above at length, the record continues to support that conclusion.  (ECF 704; *see supra*).  In the same order, the Court wrote that "after a sufficient deposition record is developed, ZHP is granted leave to file a Motion for Protective Order to quash Mr. Chen's deposition." (ECF 704).  ZHP waited as long as possible to file the motion, and cannot reasonably argue the record is insufficient.

<u>**CONCLUSION**</u>

For the foregoing reasons, ZHP has not met its burden of showing that Baohua Chen's deposition would work a clearly defined and serious injury.  The Court should therefore deny the motion for a protective order.

Dated: June 7, 2021                                    Respectfully Submitted,

*/s/ Ruben Honik*                                      */s/ Daniel Nigh*
Ruben Honik                                           Daniel Nigh
GOLOMB & HONIK, P.C.                                  LEVIN, PAPANTONIO, THOMAS, MITCHELL
1835 Market Street, Ste. 2900                          RAFFERTY & PROCTOR, P.A.
Philadelphia, PA 19103                                316 South Baylen Street
Phone (215) 985-9177                                  Pensacola, FL 32502
rhonik@golombhonik.com                                Phone: (850) 435-7013
                                                      dnigh@levinlaw.com

/s/ Adam Slater
Adam Slater
MAZIE, SLATER, KATZ & FREEMAN, LLC
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone (973) 228-9898
aslater@mazieslater.com

/s/ Conlee S. Whiteley
Conlee S. Whiteley
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2021, a true and correct copy of the foregoing was filed and served upon all counsel via operation of the CM/ECF system for the United States District Court for the District of New Jersey.

*/s/ Adam M. Slater*
Adam M. Slater
