**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

―――――――――――――――――

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

―――――――――――――――――

CIVIL ACTION NUMBER:

19-md-02875-RBK-KMW

TELEPHONIC
CASE MANAGEMENT CONFERENCE

      Mitchell H. Cohen Building & U.S. Courthouse
      4th & Cooper Streets
      Camden, New Jersey  08101
      June 3, 2021
      Commencing at 10:00 a.m.

**B E F O R E:**                    **SPECIAL MASTER THE HONORABLE**
                                    **THOMAS I. VANASKIE**

**A P P E A R A N C E S:**

      MAZIE SLATER KATZ & FREEMAN, LLC
      BY:  ADAM M. SLATER, ESQUIRE
      103 Eisenhower Parkway
      Roseland, New Jersey  07068
      For the Plaintiffs

      GOLOMB & HONIK, P.C.
      BY:  RUBEN HONIK, ESQUIRE
      1835 Market Street, Suite 2900
      Philadelphia, Pennsylvania  19103
      For the Plaintiffs

      KANNER & WHITELEY, LLC
      BY:  CONLEE S. WHITELEY, ESQUIRE
      BY:  LAYNE HILTON, ESQUIRE
      701 Camp Street
      New Orleans, Louisiana  70130
      For the Plaintiffs

            Camille Pedano, Official Court Reporter
                  camillepedano@gmail.com
                     609-774-1494

     Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3        KIRTLAND & PACKARD LLP
         BY:  BEHRAM V. PAREKH, ESQUIRE
4        1638 South Pacific Coast Highway
         Redondo Beach, California  90277
5        For the Plaintiffs

6        GOLDENBERG LAW, LLC
         BY:  MARLENE J. GOLDENBERG, ESQUIRE
7        800 Lasalle Avenue, Suite 2150
         Minneapolis, Minnesota  55402
8        For the Plaintiffs

9        DUANE MORRIS LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
10       BY:  JESSICA PRISELAC, ESQUIRE
         BY:  REBECCA BAZAN, ESQUIRE
11       BY:  KELLY ANN BONNER, ESQUIRE
         30 South 17th Street
12       Philadelphia, Pennsylvania  19103
         For the Defendants, Prinston Pharmaceuticals,
13       Solco Healthcare U.S. LLC, and
         Zhejiang Huahai Pharmaceuticals Ltd.

14       PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
         BY:  CLEM C. TRISCHLER, ESQUIRE
15       One Oxford Centre, 38th Floor
         Pittsburgh, Pennsylvania  15219
16       For the Defendant, Mylan Pharmaceuticals Inc.

17       GREENBERG TRAURIG LLP
         BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
18       BY:  STEVEN M. HARKINS, ESQUIRE
         3333 Piedmont Road, NE, Suite 2500
19       Atlanta, Georgia  30305
         For the Defendants, Teva Pharmaceutical Industries Ltd.,
20       Teva Pharmaceuticals USA, Inc., Actavis LLC,
         and Actavis Pharma, Inc.

21

22

23

24

25

1 **A P P E A R A N C E S (Continued):**

2

3      CIPRIANI & WERNER, P.C.
       BY:  JESSICA M. HEINZ, ESQUIRE
       BY:  ERNEST F. KOSCHINEG, ESQUIRE
4      BY:  ETHAN FELDMAN, ESQUIRE
       450 Sentry Parkway
5      Blue Bell, Pennsylvania  19422
                  And
6      MORGAN, LEWIS & BOCKIUS, LLP
       BY:  JOHN P. LAVELLE, JR.
7      502 Carnegie Center
       Princeton, New Jersey  08540
8      For the Defendants, Aurolife Pharma LLC
       and Aurobindo Pharma USA, Inc.
9
       HILL WALLACK, LLP
10     BY:  ERIC I. ABRAHAM, ESQUIRE
            NAKUL Y. SHAH, ESQUIRE
11     21 Roszel Road
       Princeton, New Jersey 08540
12     For the Defendants, Hetero Drugs and Hetero Labs

13     KIRKLAND & ELLIS LLP
       BY:  ALEXIA R. BRANCATO, ESQUIRE
14     601 Lexington Avenue
       New York, New York  10022
15     For the Defendants, Torrent Pharma Inc.
       and Torrent Pharmaceuticals Ltd.
16
       ULMER & BERNE LLLP
17     BY:  JEFFREY D. GEOPPINGER, ESQUIRE
       600 Vine Street, Suite 2800
18     Cincinnati, Ohio 445202
       For the Wholesaler Defendants and AmerisourceBergen
19
       BARNES & THORNBURG, LLP
20     BY:  KRISTEN L. RICHER, ESQUIRE
       2029 Century Park East, Suite 300
21     Los Angeles, California  90067
       For the Retailer Defendants and CVS Pharmacy, Inc., and
22     Rite Aid Corporation

23 **ALSO PRESENT:**

24     LORETTA SMITH, ESQUIRE
       Judicial Law Clerk to The Honorable Robert B. Kugler
25
       Larry MacStravic, Courtroom Deputy

*United States District Court*
*Camden, New Jersey*

1  (PROCEEDINGS held via teleconference before The Honorable

2  Special Master The Honorable Thomas I. Vanaskie at 10:00 a.m.)

3       JUDGE VANASKIE:  I think we can get started.  We'll

4  follow our normal protocol.  I'll ask that when you speak,

5  please identify yourself for me and for our court reporter.

6  I'll also ask that anybody who is not speaking, please silence

7  their phones.  And we'll proceed through the agenda letter.

8  I'm going to follow, generally, the agenda letter received from

9  defendants, that order, and we'll go through the letter on an

10  item-by-item basis.  All right?

11       And who will be speaking on behalf of the defendants?

12       MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

13  imagine you'll be hearing from a number of defense attorneys

14  today on different issues but I'm happy to take the lead at

15  least, and then we can hand it off for efficiency purposes.

16       JUDGE VANASKIE:  Very well.  That's great.  Thank you.

17       And who will be the lead spokesperson for the

18  plaintiffs?

19       MR. SLATER:  Good morning, Your Honor.  Adam Slater,

20  and there will be multiple people from plaintiffs' team who

21  will be addressing various issues.

22       JUDGE VANASKIE:  Very well.  Thank you.

23       First, I wanted to, as I read through the agenda

24  letters for today, I wanted to start off with a compliment

25  because you've accomplished a tremendous amount in a very short

 1    period of time and I think both sides need to be commended for

 2    the extraordinary effort that you put into this matter and so

 3    in that sense, a lot has been accomplished.  Of course, there

 4    are substantial issues we need to work through and we will try

 5    to work through those.

 6            The first thing I was going to talk about was the

 7    question of -- and I'm really not going to engage in much

 8    argument on it today -- the matters involving Mr. Chen, his

 9    custodial file and his deposition itself, which I believe is

10    still scheduled for the 21st through the 23rd of June.

11            Mr. Slater, is that correct?

12            MR. SLATER:  Yes, Your Honor, that's correct.

13            JUDGE VANASKIE:  All right.  And I know I have motions

14    that are ripe and ready for decision by me.  I'm hoping to have

15    decisions out by early next week on the custodial file and on

16    the question of whether his deposition should be precluded

17    under the apex doctrine.  I don't believe I need any additional

18    argument on this but if there's anything else you wanted to say

19    with respect to those two matters, I'll give you an opportunity

20    now.

21            Mr. Goldberg?

22            MR. GOLDBERG:  Yes, Your Honor, and I'm not sure if

23    this motion is actually fully briefed.

24            As Your Honor may recall, there were -- after we had

25    raised this issue, there were still three or four depositions

1  to be completed and Your Honor directed that we could

2  supplement the record with that testimony, which we had

3  intended to do today, in fact.  And I'm not sure if plaintiffs

4  have actually filed their opposition brief to the motion for a

5  protective order yet.  While the custodial file brief is fully

6  -- the custodial file motion is fully briefed, I'm not sure the

7  deposition motion is.

8          MR. SLATER:  Your Honor, it's Adam Slater.

9          I can agree that we have not yet, for the plaintiffs,

10  filed our opposition brief.  I believe our deadline is this

11  coming Monday.

12          JUDGE VANASKIE:  Okay.

13          MR. SLATER:  So we're going to try to get it to you

14  before that.  We're going to try to get it to you either today

15  or tomorrow.  I know our deadline is Monday but we're really

16  working hard to get it done this week.

17          As far as the defense supplementing their motion, you

18  know, that's not something that we think should be necessary.

19  I don't recall what Your Honor specifically said about that and

20  I don't recall leave being granted to supplement the motion,

21  but I'm not really sure what could be added.  Our hope would be

22  that we can oppose the motion and Your Honor would then have

23  the papers complete for resolution.

24          JUDGE VANASKIE:  We are getting a lot of interference.

25  All right, that seems better now.

1          MR. GOLDBERG:  Your Honor, if I may, this is Seth

2    Goldberg.

3          JUDGE VANASKIE:  You may.

4          MR. GOLDBERG:  During the May 3rd hearing, at Page 45,

5    Line 6 through 9, Your Honor did grant the ZH parties leave to

6    supplement the brief with the testimony of Mr. Du.  He was

7    deposed last week.  As we indicated to Your Honor in our

8    opening brief that we would be doing so, and we would also be

9    adding the testimony of those two or three witnesses that were

10   deposed, like Mr. Du, after the protective order motion was

11   filed.  And as I mentioned, we intended to file that supplement

12   today at the Court's direction.

13         JUDGE VANASKIE:  I certainly will not preclude you

14   from supplementing your motion with the testimony that has been

15   presented subsequent to that last conference, and so certainly

16   please proceed with your filing.  And, Mr. Slater, please

17   proceed with your opposition brief.  You say it is due on

18   Monday.  So obviously I misspoke in terms of motions being

19   ripe.  The custodial motion is ripe.

20         I do intend to issue a decision on that early next

21   week and I will issue a decision promptly on the protective

22   order motion on the apex witness doctrine promptly because of

23   the fact that the deposition is scheduled for the 21st to the

24   23rd of June, so I know a decision needs to come out on that

25   promptly.

```
 1          So no decision, obviously, has been made yet and we'll
 2   take your additional filings and hopefully have the decision to
 3   you promptly.  But the custodial files we'll move forward on.
 4          Anything else on that?
 5          MR. SLATER:  Nothing for plaintiffs, Your Honor.
 6   Thank you.
 7          MR. GOLDBERG:  Nothing for the ZHP parties.
 8          JUDGE VANASKIE:  Thank you both very much.
 9          The next issue I want to take up was the question with
10   respect to discovery involving Hetero, the Hetero -- what is
11   described in plaintiffs' letter as Hetero's ongoing discovery
12   deficiencies.  That's at Page 3 of plaintiffs' agenda letter.
13          Who will be addressing this issue on behalf of the
14   plaintiffs?
15          MR. PAREKH:  Good morning, Your Honor.  This is Behram
16   Parekh on behalf of plaintiffs.
17          JUDGE VANASKIE:  Good morning, Mr. Parekh.
18          MR. PAREKH:  So, Your Honor, the main issue that we
19   have, and we have been working with Hetero to resolve these
20   issues, is that it's just, you know, we're running out of time
21   and have run out of time at this point.  The three issues in
22   particular that we're most concerned about are the ones that
23   are relevant to the upcoming depo which is Tuesday and
24   Wednesday of next week, and this is an issue that we've been
25   bringing up, you know, for numerous months in numerous letters
```

1    that we still don't have the documents, you know, regarding the

2    process development that Hetero went through in order to come

3    up with what it called Process III.  And we're asking for a

4    firm deadline of June 7th for them to produce all of those

5    documents.  And to the extent that they don't, we don't believe

6    that Hetero should be able to rely on those documents going

7    forward because we won't have the ability to take Hetero's

8    deposition and then turn around and use those documents for our

9    general cause Daubert briefing.

10           JUDGE VANASKIE:  All right.  Who's addressing this

11   issue on behalf of Hetero?

12           MR. ABRAHAM:  Good morning, Your Honor.  This is Eric

13   Abraham from Hill Wallack.  I represent Hetero.  I'll take sort

14   of the first swing at this.  My colleague, Nakul Shah, is also

15   on the call.  He may chime in, in case I goof anything up, if

16   that's okay, Judge.

17           JUDGE VANASKIE:  That's fine.

18           MR. ABRAHAM:  First of all, we are fine with the June

19   7th deadline.  We conferred yesterday with Mr. Parekh on these

20   issues and then worked with our client overnight.  There is, we

21   think, a likelihood that the Process III development data was

22   contained in a prior production.  If so, we'll identify that by

23   Bates range.  If not, we'll make a fresh production of it; not

24   a problem.

25           If Your Honor recalls last time, there were a number

1    of documents that plaintiff had asked us to identify by Bates

2    range to demonstrate that we had done so previously, and we

3    worked with our ESI vendor to be able to do that.  We sent

4    plaintiffs a detailed spreadsheet laying out all of the Bates

5    ranges of the prior productions for the documents they claimed

6    to not have.  Somehow plaintiffs did not review that

7    spreadsheet before our meet and confer yesterday.  I don't mean

8    that as a criticism of plaintiffs, I just want to demonstrate

9    for Your Honor that we're following through on our

10   representations to Your Honor and this won't be any different.

11        There are -- so that sort of puts to bed the Process

12   III development documents.  In other words, if they've already

13   been produced, we will identify it by Bates range; no problem.

14   If they haven't, we'll produce it by June 7; no problem.

15        I don't think we're at a point where we should be

16   talking about a remedy if we don't make June 7th.  I have no

17   reason to think we won't make June 7th, but we still have

18   Hetero 30(b)(6) deponents that are scheduled that, for various

19   scheduling reasons, we couldn't get done by the 1st.  So it's

20   not accurate to say that plaintiffs would not have the

21   opportunity to talk to our witnesses because they will.  We'll

22   make that happen.

23        There are, within plaintiffs' letter, also a

24   discussion about missing chromatograms for some NDMA testing

25   that was done by Analys Labs.  On our meet and confer

1  yesterday, Mr. Shah was able to point to where those

2  chromatograms existed in our fifth production of documents,

3  which was back over the summer, I believe.  So we will be

4  conferring further with Mr. Parekh if he claims that he still

5  doesn't have what he needs and that's not a problem.

6         Kind of the last subject that's within plaintiffs'

7  list are data from Empower.  And just to kind of level set on

8  this, Judge, Empower is the software that our client and I

9  think many of the defendants use to kind of track, so to speak,

10 results of the chromatography that occurs.  And we learned from

11 some submissions earlier that Aurobindo had, in fact, produced

12 the underlying data from their Empower software and we

13 committed yesterday to plaintiffs that we would do so as well.

14        Plaintiffs acknowledged to us that they weren't quite

15 sure from their experts what the "raw data" meant.  So we're

16 making sure -- we're waiting to hear back from plaintiffs to

17 make sure that what we produce is, in fact, produced in a

18 format usable by plaintiffs' experts; not a problem.

19        In advance of that production, they have the output,

20 so to speak, of that data.  In other words, they've got the

21 documentation that shows what the result of that testing was.

22 So this isn't a circumstance where plaintiffs remain in the

23 dark on what the result of that testing is.

24        And just to kind of put a finer point on it relating

25 to NDMA, let's, just for discussion purposes, Judge, take as

1  our operating premise that this type of testing can yield

2  results between one and 100.  The testimony that has come out

3  is that if NDMA were present in the material being tested,

4  those results would be somewhere between zero and .99.  So, in

5  other words, we don't believe that this particular type of

6  testing would yield demonstration of NDMA; but nonetheless,

7  plaintiffs' experts apparently have a view that there may be

8  information to be gleaned from the underlying data, and we have

9  no problem producing it.  It's just we're waiting to confer

10  again with plaintiffs about the format of the production.

11       Thank you.

12       JUDGE VANASKIE:  Thank you.

13       Mr. Parekh, anything else?

14       MR. PAREKH:  Yeah, just one small point, Your Honor,

15  is that we were able to look at the spreadsheet during and

16  after the meet and confer and, again, the issue is what has

17  always been the issue, which is that it's incomplete -- it's an

18  incomplete response to the documents that we requested.  It,

19  you know, it covers some of the topics that we've requested but

20  it doesn't cover all the topics, it doesn't result in the

21  production of all of the documents.  So it's just this sort of

22  ongoing, you know, bit by bit by bit we're getting there but

23  we're just running out of time.

24       MR. ABRAHAM:  May I respond, Your Honor?

25       JUDGE VANASKIE:  Yes, certainly, Mr. Abraham.

1              MR. ABRAHAM:  Mr. Shah may know better than me, but I

2      believe that some of this -- in some circumstances there was

3      requests, for example, for an SOP and further iterations of the

4      SOP, and in those circumstances where -- I believe what we did

5      was we identified in every circumstance that there were no more

6      versions of it to be produced.  But I don't want to get too far

7      over my skis on this, so if I could hand off to Mr. Shah, he

8      may be able to put a finer point on it.  But I think the

9      biggest point is to the extent that Mr. Parekh has now reviewed

10     the spreadsheet and feels that there are still some missing

11     items, we're available to meet and confer with him and we'll

12     fill those holes.

13             JUDGE VANASKIE:  All right.

14             Mr. Shah.

15             MR. SHAH:  Your Honor, I'd just like to add that in

16     addition to providing the detailed spreadsheet setting forth

17     the dates ranges of particular documents that plaintiffs had

18     requested which were already contained in prior Hetero

19     productions, we additionally took the step of including in

20     every cover letter of our last two document productions a

21     detailed list of precisely what documents are included in that

22     production, a notation as to which, for example, SOPs which may

23     have been discontinued, which SOPs were discontinued, which

24     version is the final version, as well as a notation of the

25     documents that are not available and why they are not available

1    within the cover letter.

2         We directed Mr. Parekh to those documents yesterday

3    following our meet and confer as well and are open to an

4    additional meet and conferral regarding anything that may

5    remain outstanding after Mr. Parekh has had the opportunity to

6    review those documents.

7         JUDGE VANASKIE:  All right.  And you've committed to

8    make your production by June 7th which was the action requested

9    by plaintiffs.

10        So is there anything else for me to address with

11   respect to Hetero?

12        MR. PAREKH:  No, Your Honor.  Just if the production

13   doesn't happen by June 7th, and there are documents

14   outstanding, we will address those at the next CMC.

15        JUDGE VANASKIE:  I think that's about all we can do.

16   Thank you.

17        MR. ABRAHAM:  Thank you, Judge.

18        JUDGE VANASKIE:  All right.  The next issue I wanted

19   to address is Aurobindo.  And who will be addressing this issue

20   on behalf of the plaintiffs?

21        MS. GOLDENBERG:  Hello, Your Honor.  This is Marlene

22   Goldenberg for the plaintiffs.

23        JUDGE VANASKIE:  Good morning, Ms. Goldenberg.

24        MS. GOLDENBERG:  Good morning.

25        Your Honor, I'm happy to answer any questions that you

 1    have or I can just provide you with a brief overview of what's

 2    happened since we sent the letter, as I saw that you've read

 3    it.

 4          We -- during the deposition of Sanjay Singh, which was

 5    the most substantive 30(b)(6) deposition that we had, we

 6    received, in the middle of that deposition or two hours in, a

 7    good portion of the testing data that Mr. Singh was supposed to

 8    be presented as a witness on, as well as a number of other

 9    productions that we outline in detail in our letter.

10          We also, since then, have taken another 30(b)(6)

11    deposition of an individual named David Palew who was there to

12    testify on a number of class-specific issues but specifically

13    sales to downstream customers as well as other things.

14          Right before that deposition or the night before we

15    got a letter from Aurobindo letting us know that there were a

16    number of other documents they were going to be producing and

17    asking us if we would like to postpone the deposition.  As

18    we've told them previously, our expert reports are due in short

19    order and we need to at least have some testimony to give to

20    our experts so that we can meet our burden.  And so we weren't

21    able to push that deposition back.  And so we moved forward and

22    then the next morning we received another spreadsheet from

23    Aurobindo containing information that should have been produced

24    to us long ago with information about sales to downstream

25    customers.

 1          And so what we've seen is that there is or there

 2  really appears to be a concerted effort to dump targeted sets

 3  of documents on plaintiffs on the eve of or now in the middle

 4  of depositions and it's been very difficult for us to obtain

 5  testimony on topics when we don't get documents in time to

 6  review them before the deposition occurs.

 7          And I thought -- sorry.  Go ahead.

 8          JUDGE VANASKIE:  No.  Please continue.

 9          MS. GOLDENBERG:  So just a couple of points about the

10  letter that Aurobindo sent yesterday.  I think that letter

11  frankly just talks past the issues.  Aurobindo included a large

12  list of documents which they produced in core discovery but the

13  fact that they produced documents in core discovery has -- it's

14  not a saving grace for failing entirely to respond to other

15  sets of discovery that were served upon them.  So that doesn't

16  change the fact that they produced two noncustodial documents

17  during the regular discovery period, and those would be the

18  organizational charts that we have referred to in our briefs,

19  and now, as we've seen, in the middle of or right before these

20  other very important depositions we're getting noncustodial

21  documents that had been in Aurobindo's possession the entire

22  time.

23          And so -- and their last point about plaintiffs'

24  failure to meet and confer I guess is just a little puzzling

25  because the letter dealt with past conduct, not anything that

1  we -- you know, we're asking them to do in the future.  And if

2  they want to tell us today that they're happy to agree to

3  things, then I guess maybe that meet and confer would have been

4  a little more fruitful than I thought; but absent that, I don't

5  really see how that changes anything.

6      Beyond that, I think we've addressed everything in our

7  letter, and I'm happy to answer any questions Your Honor has.

8      JUDGE VANASKIE:  Who is addressing this issue for

9  Aurobindo?

10     MR. LAVELLE:  Your Honor, John Lavelle from Morgan

11 Lewis.

12     The way we would propose to divide up things is I'll

13 respond with respect to the issues that plaintiffs raised in

14 their May 26 letter, and my co-counsel, Jessica Heinz, will

15 address the issues that were raised for the first time

16 yesterday in plaintiffs' submission, which is actually the bulk

17 of what plaintiffs' counsel has argued this morning.

18     I'll start by saying that the meet and confer

19 requirement is an important one and there have been many

20 decisions by this Court recognizing it's important.  And the

21 reason we've raised it is because the letter that was sent to

22 Your Honor addressed some discovery issues that had only been

23 raised by plaintiffs' counsel with us four hours before they

24 were mailed to Your Honor.  We submit that was not a good-faith

25 effort to try to meet and confer.  It's not just a matter of

```
1   whether or not sanctions should be entered.  Obviously, we
2   oppose the sanctions but, more importantly, there is an
3   obligation on all parties, plaintiffs as well as defendants, to
4   try to work through issues.  And, unfortunately, what we've
5   seen with increasing frequency from plaintiffs is a tendency
6   with respect to Aurobindo to fire off motions without
7   conferring and we would like to remind plaintiffs and ask the
8   Court to remind plaintiffs of the importance of meeting and
9   conferring.
10          With respect to the issues that were raised by
11  plaintiffs in their May 26 letter, it was largely a repeat of
12  the arguments that Your Honor considered and addressed and
13  rejected in the decision that was issued last week.
14          We will say that, as Your Honor recognized, we've
15  committed to making deponents available to the extent necessary
16  for supplemental depositions on any document productions that
17  occurred late.  Obviously, we have been trying to prioritize
18  deposition -- document production for witnesses who are being
19  deposed.  So that is not a nefarious purpose, it is a purpose
20  of trying to get the documents to plaintiffs when they need
21  them.  And we've offered, in the two instances that plaintiffs'
22  counsel mentioned this morning and we've offered in previous
23  instances, to reschedule depositions when we produced documents
24  close in time to the depositions.  Plaintiffs have elected to
25  go forward with those depositions, that is their right, of
```

1   course, and if they contend that there are deponents for whom

2   they need to do additional questioning, we are willing to work

3   with them on that.  The only such deponent they've identified

4   so far is one particular deponent, Blessy Johns, and we are

5   still waiting to hear from plaintiffs when they would like to

6   reschedule that deposition.

7         The only other point I would make, and I didn't hear

8   plaintiffs argue it this morning so I don't know how seriously

9   they're pressing it, is with respect to their new request which

10   they made for the first time in the letter yesterday that there

11   be a requirement to certify that document production is

12   complete.  It's contrary to the federal rules.  They cited no

13   authority for it.  If the Court would entertain it at all, we

14   would like to have an opportunity to brief it.

15         I would just cite two cases for Your Honor that have

16   specifically considered and rejected such a certification

17   requirement:  *Moore vs. Publicis Group*, that's at 287 F.R.D.

18   182 (Southern District of New York 2012).  And the other one

19   would be *United States vs. Fresenius Medical Care Holdings*,

20   that's at 2014 Westlaw 11517841.  That's a decision from the

21   Northern District of Georgia from May 13th, 2014.

22         In both of those cases, courts specifically considered

23   and rejected the idea that there should be a requirement to

24   certify discovery's complete.  And notably in the *Moore* case,

25   the Court said what Your Honor has recognized in several of

 1   these case management conferences that in large data cases like

 2   these, no lawyer using a search method could honestly certify

 3   that production is complete.

 4          So, again, we didn't hear plaintiffs pressing that

 5   this morning so perhaps I'm taking up too much time on an issue

 6   that is not one that is ripe.

 7          I'll now defer to my co-counsel, Ms. Heinz, on the

 8   other issues.

 9          MS. HEINZ:  Good morning, Your Honor.

10          JUDGE VANASKIE:  Good morning.

11          MS. HEINZ:  This is Jessica Heinz on behalf of the

12   Aurobindo parties.

13          I just want to briefly address a few things Mrs.

14   Goldenberg raised regarding the ongoing document review and

15   production and the depositions of Palew and Sanjay Singh.  And

16   I think my colleague, Ernie Koschineg, is on as well.  He may

17   have something to add after I'm through.

18          But to start off, I just want to make clear that the

19   Aurobindo parties have been doing everything that they can to

20   get through -- to get to the plaintiffs everything that they

21   have asked us for.

22          Recently, we had our vendor conduct a sweep of the

23   relativity workspaces to confirm that all data has been

24   processed.  They located some additional data.  As soon as that

25   happened last week, we let the plaintiffs know and we

1    immediately began reviewing to get that to the plaintiffs as

2    soon as possible.

3            We have since completed -- there's two different

4    workspaces.  There's one for the U.S. entities and then there's

5    one for the India entity.  And we have completed the U.S. side.

6    Our final production is going to go out -- is going to be

7    prepared this weekend.  We anticipate having it to the

8    plaintiffs either over the weekend or early next week.

9            We have committed to -- I'm sorry, I shouldn't say

10   that.  We have told the plaintiffs that we have collected

11   everything that we are currently aware of which may be

12   responsive to their discovery requests.  We have told them we

13   anticipate completing review and production by June 8th.  We

14   informed them of this because, you know, we told them we knew

15   that these documents were -- hadn't been located, we were going

16   to get through them as soon as possible and we knew Mr. Palew's

17   deposition was coming up, so we wrote to them, and it was on

18   May 26, it was actually shortly after we received their letter

19   earlier that day, as well as an email from them, so we wanted

20   to let them know the status of everything and that we would

21   have everything to them as soon as possible.

22           The testing data that Mrs. Goldenberg referred to that

23   was produced I believe it was during Sanjay's deposition, that

24   is actually Empower data.  They had had the test results for

25   quite awhile now.  Those have been produced, they were

1    previously produced.  The Empower data is what counsel for

2    Hetero was talking about earlier, and that is what was produced

3    during Sanjay's deposition.  So they did have the results, that

4    was just the underlying data.

5          So that being said, I would like to turn it over to

6    Mr. Koschineg if he has anything to add.  I think he's going to

7    address the spreadsheet that was produced shortly before David

8    Palew's deposition.

9          MR. KOSCHINEG:  Good morning, Your Honor.  This is

10   Ernie Koschineg.  Thank you, Your Honor.  Good morning.

11         The spreadsheet that Ms. Goldenberg is referring to

12   addressed the downstream API supply to third-party customers.

13   Your Honor, that information, we stopped selling API to outside

14   vendors and customers in May of 2014.  That spreadsheet showed

15   only three customers that actually bought the API through 2014.

16   One of the companies sold the product only in Europe.  So this

17   -- and this issue of prejudice and potential relevancy I think

18   is really questioned here when Ms. Goldenberg represented they

19   were somehow severely prejudiced by this late production.

20         The chart itself, Your Honor, was very

21   straightforward.  It lists three different companies that

22   bought the API and when they bought it and there was really no

23   further discussion on that.  It was reviewed by counsel for a

24   few hours at the beginning of the deposition and there was

25   nothing regarding the API with regard to those three customers

 1    that was really at issue at the time of the deposition.  So to

 2    say that anyone was severely prejudiced by the late production

 3    I just think is a little misleading.

 4            JUDGE VANASKIE:  All right.  Ms. Goldenberg?

 5            MS. GOLDENBERG:  Sure, Your Honor.  I'll try and take

 6    some of that in reverse order just to deal with what's fresh in

 7    our minds first.

 8            JUDGE VANASKIE:  Thanks.

 9            MS. GOLDENBERG:  The attempts to take each of these

10    document dumps in isolation and minimize the prejudice on

11    plaintiffs misses the larger point.  When we are getting

12    multiple documents of sometimes thousands -- well, actually

13    almost all the time -- thousands of documents and in many cases

14    tens of thousands of documents on the eve of deposition, of

15    course we can review one or two of them but we can't get

16    through all of them.  And many of these productions, including

17    the data that was produced during Mr. Singh's deposition,

18    wasn't even capable of being loaded by our vendor while the

19    deposition was taking place.  And those validation batches that

20    were produced, as well as the Empower data, it does have

21    relevance to our questions.  And because I'm not going to

22    disclose our legal strategy over the phone, I'm not going to

23    tell, you know, specifically what that is, but that's

24    information that we asked for, it's information that should

25    have been produced to us and now Aurobindo is attempting to

1  change what we're arguing about.  This isn't, oh, they got it

2  in the end and so there's no problem.  This information was due

3  back in November and they're dumping it on us in the middle of

4  the deposition that is taking place on that very subject

5  matter.  So, you know, I don't think that the characterization

6  of this isn't a big deal is accurate.

7          Beyond that, the approach that Ms. Heinz outlined,

8  which is the Aurobindo parties have been doing everything

9  plaintiffs have asked for, is not how this process is supposed

10  to work.  We served Rule 34 discovery requests, they had a

11  deadline to respond to them in November, and now every time

12  we -- well, we're only getting what we've found is missing in

13  the production, which means I don't know what we haven't found.

14  But if Aurobindo's position is we're only going to go get

15  things when plaintiffs discover that they're missing, that is a

16  violation of the discovery process and the manner in which

17  discovery is supposed to take place in this case or any other.

18          And, finally, the requirement -- or our request that

19  they certify that their production is complete is the very

20  least burdensome remedy that plaintiffs could come up with

21  after we've been through months of Aurobindo making delayed

22  productions, quote, unquote, finding documents at the last

23  minute, and all we want to know is at some point when we need

24  to redepose these witnesses, we'd like to know that we have a

25  substantially complete production.  And the rules do require

```
 1  that and I don't think that that's too burdensome to ask given
 2  everything that we've had to go through.
 3          And that's all I have for now.  I'm happy to, again,
 4  answer questions but I believe Mr. Slater might have wanted to
 5  chime in as well.
 6          JUDGE VANASKIE:  All right.
 7          MR. SLATER:  If I could, Your Honor, it's Adam Slater.
 8  I'm only going to speak for a moment, Your Honor, if I could,
 9  and only because I don't want Ms. Goldenberg's professionalism
10  and politeness and the plaintiffs collectively don't want that
11  to be -- which I -- which is commendable in what she's been
12  facing, to mask the outrage and the frustration.
13          I've been watching these arguments for a long time and
14  Ms. Goldenberg's done an unbelievable job handling a very
15  difficult situation, but I want to just comment on one thing.
16  What I didn't hear from Aurobindo's counsel while they were
17  pushing back and what-abouting the plaintiffs, which was
18  incredible to me, I don't think we've ever heard them actually
19  say today, you're right, we shouldn't be dumping massive
20  amounts of documents on the plaintiffs that were due last
21  November on them during depositions, right before or right
22  after depositions, continuing this massive rollout.  I have not
23  heard one time these Aurobindo lawyers have actually accepted
24  responsibility for what they're doing as being violating the
25  Court orders, violating rules and violating everything they're
```

1   supposed to be doing in this litigation, and doing what they've

2   told the Court they were going to do and being straightforward

3   and transparent with the Court.  And that's our biggest concern

4   is at this point if there's not some significant stinging

5   sanction against them, they're going to continue to come on

6   these calls, push back and they're going to keep doing this and

7   it's going to be a signal not only to them but every other

8   defendant in this litigation that if they don't produce

9   important documents that they can get away with it.  And I know

10  that's not how you see it and I know that's not how we see it

11  but we feel a strong signal to Aurobindo is now warranted to

12  let them and the other defendants know that this is

13  unacceptable.

14          Thank you.

15          MR. LAVELLE:  Your Honor, may I respond briefly?  This

16  is John Lavelle from Morgan Lewis.

17          JUDGE VANASKIE:  You may.

18          MR. LAVELLE:  Your Honor, I will point out that Your

19  Honor gave plaintiffs an opportunity to submit a complete

20  written motion for sanctions.  It was a very serious matter, as

21  Your Honor stated at the case management conference, and

22  merited serious consideration.  So plaintiffs had a full and

23  fair opportunity to raise many issues, they did so, we had an

24  opportunity to brief them, Your Honor considered them, and Your

25  Honor ruled on the motion for sanctions.

1          What I'm hearing today from plaintiffs' counsel is

2    piling on in an attempt to get Your Honor to reconsider Your

3    Honor's carefully considered decision.

4          The issues that were raised this morning I think are

5    relatively straightforward on how to deal with them and it's

6    the same process that Your Honor described in Your Honor's

7    ruling, which is, where there's been document production that

8    has been close in time to a deposition, Aurobindo should be and

9    has, in fact, offered to make deponents available again at a

10   later time for a supplemental deposition, and we remain open to

11   doing that and we will do that.  And we have done exhaustive

12   work here to try to address the issues that have been raised by

13   plaintiffs and to comply with our discovery obligations.

14          I think I'll leave it at that point.  Thank you.

15          JUDGE VANASKIE:  Let me just repeat that I continue to

16   be frustrated by Aurobindo's conduct in this matter.  I denied

17   the motion without prejudice.  One of the reasons I denied the

18   motion is because my authority is limited to issuing a sanction

19   that's no greater than necessary to cure the harm that has been

20   caused and re-deposition of witnesses is helpful in that

21   respect.  I haven't received a request for monetary sanctions

22   but I'd certainly be willing to consider that to the extent

23   that Aurobindo's conduct has caused unnecessary expense on the

24   part of the plaintiffs.  When I heard argument on this matter,

25   Ms. Goldenberg indicated to me that they're not interested in

1   monetary sanctions that enable a party to simply pay money for

2   discovery failings.  This is -- it's been frustrating, you

3   know, and I can just imagine what it's like to get a document

4   dump on the eve of or in the middle of a deposition.

5         You've cited to me some cases, Mr. Lavelle, one which

6   I think is probably from Judge Peck, but I'm not sure,

7   certainly a respected discovery expert, the *Moore* case, dealing

8   with substantial -- certification of completion of discovery.

9         Now, what Ms. Goldenberg has asked for is a

10  certification that it's substantially complete.  It seems to me

11  that by this stage you should be able to make that

12  certification that your production is substantially complete,

13  yet you're reluctant to do that.  That is a cause of concern.

14        I haven't closed the door on sanctions against

15  Aurobindo.  I was careful to make it clear that I was leaving

16  that door open.  I'm looking for a more concrete showing of

17  prejudice by the plaintiffs or a request for a sanction that

18  would match the prejudice.  I'm not sure striking defenses is

19  that sanction yet but, you know, we're not seeing this problem

20  with other manufacturer defendants, unless I'm missing

21  something, and I've still got a couple more to go through.  But

22  by now I don't think there should be any more document dumps,

23  last-minute document dumps.  If there are going to be, you have

24  to make a production, I'm going to want to know why and I've

25  indicated this as well in the decision.

1          I'm considering ordering a hearing on sanctions

2    against Aurobindo under my authority to do so.  I just want to

3    understand -- underscore how serious this matter is.  Maybe you

4    don't think I feel that way but I do.  And I'll have to be a

5    little more articulate in the opinions I issue if the message

6    is not getting through.

7          I was very disappointed to receive -- to see the

8    letter after I had sent it to docketing, the order I issued;

9    not to say the order would have been any different but I just

10   expect more than I am getting so far.

11         So I hope you understand this is a serious warning and

12   I'm considering taking action that would underscore the

13   seriousness of the situation.

14         MR. LAVELLE:  Your Honor, we hear you and we

15   understand this is a very serious matter and my comments were

16   not intended to suggest in any way that we did not take this

17   seriously and we are endeavoring to complete the document

18   production of the last few items that Ms. Heinz described.

19   Hopefully that will at least take care of that issue.  And we

20   do indeed recognize the seriousness of this and hopefully we

21   are at the end of this chapter of the issues and we can move

22   forward.

23         Thank you.

24         JUDGE VANASKIE:  All right.  That will conclude our

25   discussion for now on Aurobindo.

 1            I'm going to get back to the defendants' agenda

 2    letter.  I went out of order a little bit.

 3            My understanding -- I'm going to Mylan now.  My

 4    understanding is that there are no outstanding issues at the

 5    present time with respect to Mylan, and that depositions of

 6    Mylan witnesses are expected to be completed by the end of

 7    June.

 8            Who's speaking on behalf of Mylan?  Anyone?

 9            MR. HONIK:  Your Honor, this is Ruben Honik.  I'll

10    speak up because I've been working on Mylan.

11            You're correct, we have four remaining depositions in

12    June.  Two of them I think are still under a little bit of a

13    cloud because they are India national witnesses, there are some

14    potential issues there; but as we speak today, they're

15    scheduled and we're hopeful that they'll be completed by the

16    end of the month.

17            JUDGE VANASKIE:  Thank you.

18            MR. TRISCHLER:  Your Honor?  I'm sorry, Your Honor,

19    this is Clem Trischler.  And Ruben, thank you for speaking up.

20    Even though it's been a year and a half into this pandemic,

21    sometimes I still can't figure out how to find the mute button

22    to unmute myself.

23            To answer the Court's question, I concur.  I think

24    we're working cooperatively and we'll get the remaining

25    depositions completed soon.

```
 1              JUDGE VANASKIE:  That's great.  Thanks.

 2              Now I am at the bottom of Page 3 of the defendants'

 3    agenda letter dealing with Teva.

 4              As I understand it, there's concerns with respect to

 5    Teva's privilege log but there's no issues with respect to Teva

 6    depositions or depositions of Teva witnesses.  Is that correct?

 7    Who's speaking on behalf of Teva?

 8              MS. LOCKARD:  Yes, Your Honor, it's Victoria Lockard

 9    on behalf of Teva.

10              That's my understanding on the privilege log issues.

11    We did submit a letter to counsel yesterday evening after the

12    submission letters were exchanged.  We did downgrade some of

13    our privilege documents at that point.  So we have invited to

14    meet and confer on this process.  So I believe both letters

15    indicated there was really nothing for the Court to decide on

16    the privilege log.  We will continue to work together on that

17    issue.

18              On the depositions, I don't believe there are any

19    issues there to be decided by the Court.  We have two

20    outstanding witnesses who need to be deposed and for COVID

21    international reasons we have not been able to accomplish their

22    depositions but we are trying daily to try to work around the

23    COVID restrictions and quarantine rules and get the

24    international paperwork to try to get both of these witnesses

25    scheduled, and I believe we're in agreement with plaintiffs'
```

```
 1   counsel in terms of getting those underway but I don't think

 2   there are any disputes there.

 3           JUDGE VANASKIE:  Okay.  Thank you.  Thank you, Ms.

 4   Lockard.

 5           The next issue I have then deals with Torrent and I

 6   don't think there are any issues with respect to Torrent.  Is

 7   that correct?  Who's speaking on behalf of Torrent?

 8           MR. BRANCATO:  Good morning, Your Honor.  This is

 9   Alexia Brancato for Torrent.  And you are correct, there are no

10   issues that I am aware of for us.

11           JUDGE VANASKIE:  Any disagreement on the plaintiffs'

12   side?

13           (No response.)

14           JUDGE VANASKIE:  Hearing none, we will move on to the

15   depositions of current putative class representatives.

16           MR. GOLDBERG:  Your Honor?

17           JUDGE VANASKIE:  Yes.

18           MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  May

19   I just interrupt to ask that whoever is typing, if everyone

20   could just put their phone on mute, it is a little bit hard to

21   hear, Your Honor.

22           JUDGE VANASKIE:  You certainly may.

23           If anybody is taking notes with your keyboard, please

24   mute your phone.

25           All right.  We're going to talk about the current
```

1  putative class representative depositions.  And who's

2  addressing this issue on behalf of the defendants?

3          MS. BAZAN:  Good morning, Your Honor.  This is Rebecca

4  Bazan on behalf of the defendants.

5          JUDGE VANASKIE:  All right.  Where does this stand

6  right now?

7          MS. BAZAN:  I will try to make this very short.

8          As you can tell from our submissions, generally the

9  parties have worked very well together to complete almost all

10 of the class -- current putative class representative

11 depositions.  We noted a few sort of ongoing cleanup issues in

12 our letter.  After we filed our letter, I was informed that

13 counsel for MSPRC did reach out to counsel for defendants to

14 start engaging on those issues.  So while our letter requested

15 relief from the Court, we think that now those discussions will

16 be underway and so hopefully those issues will be resolved

17 without Court intervention.

18         So the only thing that we are asking the Court for

19 help with today is scheduling the second half of the deposition

20 of Ms. Powell, whose deposition started but had to be suspended

21 due to Internet connectivity issues.  So we would just like to

22 move that along and request that the Court order that

23 plaintiffs provide possible dates between now and June 30th so

24 that this deposition can hopefully be completed within the

25 month.

1          JUDGE VANASKIE:  Is there any problem from the

2     plaintiffs with respect to that occurring?  Who will be

3     speaking --

4          MS. WHITELEY:  Your Honor, this is -- Your Honor, this

5     is Conlee Whiteley on behalf of the plaintiffs.

6          The plaintiffs will provide a date before June 30th.

7          JUDGE VANASKIE:  All right.  If you're not able to

8     agree on a date, send me letters, each side, and we'll order a

9     date, but we'll get this completed by June 30th.

10          Is that all we need to discuss with respect to these

11     current putative class representative depositions?

12          MS. WHITELEY:  Your Honor, this is Conlee Whiteley

13     again.  This might be the time to discuss the other putative

14     class representative depositions.  It's in our agenda letter

15     but not in the defendants' in this section.  Do you prefer that

16     or do you want to wait until the end?

17          JUDGE VANASKIE:  No.  Let's take it up now.  Let's

18     take it up now.

19          MS. WHITELEY:  Okay.

20          JUDGE VANASKIE:  Can you point me to where it is in

21     your agenda letter?

22          MS. WHITELEY:  In our agenda letter, it is on Page 12.

23          JUDGE VANASKIE:  All right.  Okay, this is the

24     third-party payors.

25          MS. WHITELEY:  Yes, sir.  So we have -- I'm not sure

1    if you've been made aware of this, it hasn't been discussed

2    much during the conferences, but there was a complaint that was

3    filed on behalf of Employers and Laborers Local 100 and 397 and

4    Steamfitters Local 439.  They are third-party payor putative

5    class representatives and have alleged class allegations

6    against many of the defendants, including retailers.  Their

7    claims are very similar to those in the complaints that were

8    filed on behalf of the class -- the economic class

9    representatives, including the third-party payors, but there

10   are some differences.

11          They began -- they were a little behind because they

12   filed later in the litigation, they were transferred into the

13   MDL.  They began filling out their fact sheets and producing

14   documents and recently I believe that we are in agreement with

15   the defendants who were assigned to this particular -- these

16   plaintiffs that we are substantially complete in our production

17   and any deficiencies have been corrected in the fact sheets.

18          Reviewing the status of this as it was coming to my

19   attention, I reached out to those defense counsel along with

20   Mr. Goldberg and asked if the defendants intended to take their

21   deposition.  We met and conferred about it.  We told them that,

22   you know, if they wanted to do it the second phase, that made

23   perfect sense, given the timing.  Mr. Goldberg wanted to speak

24   to the other defense counsel.  He got back to me this week and

25   he said that their position is these defendants [sic] are not

1  putative class representatives in the -- in the current

2  complaint or the proposed amended complaint and until or unless

3  they are added to that complaint, there is no need to take

4  their deposition.

5          We wanted to bring this to the Court's attention just

6  because -- you know, before time gets away with us.  There had

7  not been a decision made as to whether they should be added to

8  the amended complaint that is currently before the Court and

9  how that -- if they were, how that might impact the briefing.

10 And we just wanted to raise this with Your Honor to get

11 feedback from the Court as to what the Court envisions in this

12 regard and whether the Court would prefer they be added; and if

13 so, what affect that might have on any of the other related

14 issues, including the briefing of the motion to dismiss.

15         JUDGE VANASKIE:  Well, what is the plaintiffs' view in

16 terms of whether they should be added to the proposed amended

17 complaint?

18         MS. WHITELEY:  Well, part of the issue here and the

19 reason that they were not included is because some of the

20 claims are different and we believe that the amended complaint

21 that's currently pending before the Court with our request for

22 leave to amend are the issues that those class representatives

23 are putting forward.  Because these are somewhat different,

24 there hasn't been a decision made as to whether it would be

25 best to include them in the amended complaint.

1          If Your Honor requests that we inform the Court

2     promptly on our decision, we can do so; but before we did so,

3     we wanted to determine whether the Court had a preference or

4     any specific guidance in that regard.

5          JUDGE VANASKIE:  Well, I can only give you my reaction

6     and that is, it is not a matter for the Court or for the

7     Special Master to decide whether they should be added to the

8     class representatives or not.  That seems to me to be a call

9     for the plaintiffs to make; and once they make it, we react

10    accordingly in terms of whether they're proper class

11    representatives or not.  I don't think we can make that

12    determination.

13         MS. WHITELEY:  I absolutely agree with you, Your

14    Honor, certainly as to whether they're proper class

15    representatives; but as to timing and whether -- you know, if

16    the Court had any preference on the timing, whether it should

17    be -- if the plaintiffs were to so move, whether the Court

18    would prefer that now or after there are decisions on the

19    motions to amend or whether the Court would prefer it remain

20    the same until further notice.

21         JUDGE VANASKIE:  I'm hesitating only because I am not

22    sure this is within the scope of my authority --

23         MS. WHITELEY:  Okay.

24         JUDGE VANASKIE:  -- as a Special Master.

25         MS. WHITELEY:  I understand.  And we somewhat

```
 1   anticipated that as well and I -- I'm sorry for putting you on

 2   the spot.  And so I think that what we should do is make a

 3   proposal to the Court in short order and then at that point you

 4   can decide whether you are free to make the decision on this or

 5   whether it should be Judge Kugler; but I imagine that mainly

 6   it's a matter of timing and the procedural management of

 7   issues, which are -- I believe they're certainly within the

 8   scope of your authority but you cannot make those decisions

 9   until we present a clearer path for you, which we will do

10   promptly.

11        JUDGE VANASKIE:  Okay.  Good.  That will help.  And

12   then we can address the question of the timing of depositions.

13        I'm sorry, somebody else wanted to be heard.

14        MR. FELDMAN:  Yes, Your Honor.  This is Ethan Feldman.

15   I'd like to briefly respond to that, if I may.

16        JUDGE VANASKIE:  Certainly.

17        MR. FELDMAN:  It seems like the issue is sort of

18   working itself out now that we are on the phone talking about

19   it here with Your Honor.

20        I would just like to point out that these entities

21   that Ms. Whiteley referenced have been around for a long time

22   here, they've been known about, and the plaintiffs recently

23   filed their motion for leave to amend their master complaints

24   and these entities aren't named in the proposed amended master

25   complaint.
```

 1          It just seems a little bit premature here to require

 2   any depositions of these entities prior to them being named as

 3   putative class representatives.

 4          I just -- also, as Your Honor pointed out, you know,

 5   it's not something that the defendants have been sitting on

 6   here.  Your opening remarks today pointed out that we've

 7   undertaken a lot of action here to get things moving and to do

 8   our best to comply with the scheduling orders that were

 9   proposed by the Court.  Specifically, Case Management Order 23

10   doesn't really contemplate the discovery of non-named putative

11   class representatives here.

12          After -- after hearing Ms. Whiteley speak, it seems

13   like this issue is getting resolved in short order but until --

14   you know, until these two entities are named as class

15   representatives in the -- in a complaint, it just seems like

16   discovery is premature and forcing defendants to undertake any

17   additional discovery on these entities is -- it's just not

18   authorized by any scheduling order here.

19          MS. WHITELEY:  Your Honor, this is Conlee Whiteley

20   again, if I may.

21          We have not had a chance to have a second meet and

22   confer on this issue because of the Jun Du depositions.  Mr.

23   Goldberg was able to get back to me with his response but we

24   haven't had a chance to have a discussion.  But I agree with

25   Mr. Feldman that this is something that can be worked out.  And

1   what we did discuss on the very first meet and confer was that

2   there is plenty of time for this deposition to be taken if and

3   when it is needed.  And so that we've already agreed that

4   that's not an issue at all.  And so we'll just work it out and

5   then report back to Your Honor.

6          I did not want to let another CMC go by without

7   bringing it to the Court's attention and because they are in

8   sort of a situation where they're completing fact sheets and

9   the other depositions were going on, I felt it behoved me to

10  raise this with defense counsel to get their position and then

11  ultimately bring it before the Court.

12         JUDGE VANASKIE:  Okay.  I think it was appropriate for

13  you to raise it now, Ms. Whiteley, and it has received our

14  attention.  We'll await whatever action you take in terms of

15  making these two entities putative class representatives and

16  await information from you and Mr. Goldberg with respect to

17  scheduling of depositions if that's necessary.  But right now

18  there's no action to be taken on this matter.

19         We'll move to the next item on the agenda, which is

20  the depositions of personal injury bellwether plaintiffs

21  addressed at Pages 7 and 8 of defendants' agenda letter.  It

22  seems to me there is no action needed on this point as well.

23  Is that correct?

24         MS. LOCKARD:  Your Honor, this is Victoria Lockard for

25  Teva.  And you're exactly right.  I don't believe there is any

1   action.  We just want to let the Court know because the

2   scheduling order itself states that the parties are to take ten

3   of the bellwether plaintiff depositions by June 1st, and

4   despite best efforts I think of all parties, that's not going

5   to happen.  So we have a few that will linger into June but we

6   do and are making progress on scheduling those and we don't see

7   any difficulty in completing all 28 bellwether plaintiff

8   depositions by the later deadline ordered by the Court.  So I

9   don't think there's a dispute.

10          JUDGE VANASKIE:  Okay.  Very well.

11          Do plaintiffs agree?

12          MS. LOCKARD:  Your Honor, I know Daniel Nigh for the

13   plaintiffs has really been leading this group for their side.

14   He was engaged in depositions today, so I don't mean to speak

15   for anybody but that may be why you're getting silence on their

16   end.

17          JUDGE VANASKIE:  And I understand that, too.  The

18   point is there is nothing to be resolved right now.

19          I'll move to the next issue in the defendants' agenda

20   letter, and these are defendant-specific discovery issues

21   interspersed with the plaintiffs' motion to compel documents

22   withheld on the basis of the Chinese state secrecy laws and the

23   ZHP party have now moved to strike certain arguments from the

24   reply brief or, in the alternative, to treat the brief in

25   support of the motion to strike as their sur-reply brief to

1    respond to those arguments dealing with the *Aerospatiale* and

2    *Richmark Corporation* cases, and I have decided that the motion

3    to strike will be denied but the alternative request to treat

4    their brief as a sur-reply brief will be granted so that the

5    arguments of defendants in response to the plaintiffs' reply

6    brief will be considered, and I'll issue an order to that

7    effect.

8         The next issue that I have appears at Page 9 of the

9    defense agenda letter, and this deals with the status report of

10   the ZHP parties regarding plaintiffs' new discovery requests.

11   And it seems to me substantial progress has been made on this

12   point.

13        Who will be addressing this matter on behalf of ZHP?

14        MS. PRISELAC:  Your Honor, this is Jessica Priselac of

15   Duane Morris for the ZHP parties.

16        JUDGE VANASKIE:  All right.

17        MS. PRISELAC:  Thank you, Your Honor.

18        Just briefly, as we've laid out in our submission, we

19   have made substantial progress in meeting these new discovery

20   requests.  We've produced over 4,000 documents so far.  We will

21   be making an additional hard-copy document production later

22   today.  We anticipate an additional electronic document

23   production on Monday.  And we believe that we will be able to

24   substantially complete the production by June 11th, which we

25   understand is past the Court's initial deadline of June 4th but

 1  we have really made substantial progress and have been working

 2  tirelessly to meet the deadline but because of the logistics

 3  involved, we don't believe we'll be able to complete every --

 4  or we won't be able to substantially complete the production

 5  until June 11.

 6          JUDGE VANASKIE:  All right.  And who will be

 7  addressing this matter on behalf of plaintiffs?

 8          MR. SLATER:  Adam Slater, Your Honor.

 9          JUDGE VANASKIE:  All right, Mr. Slater.

10          MR. SLATER:  Thank you, Your Honor.

11          I certainly anticipate and understand Your Honor will

12  be inclined to grant the extension of June 11 so I'm not going

13  to argue against that extension, but I would like to make very

14  clear for when we get to June 11 and there continue to be gaps,

15  it is our position that there has not been substantial progress

16  in the productions, and I'll give a couple of examples to Your

17  Honor.

18          A production was apparently made this morning, and

19  we're trying to look at it right now, of 168 documents from

20  some of the custodial files.  We have none of the custodial

21  files yet produced, as far as we know, in completion.  And Your

22  Honor, on May 12th, said you expected that there would be a

23  substantial progress in this production, I think that the

24  letter from ZHP exaggerates, to a large extent, what they've

25  done.

 1            I'll give you a couple of other examples.

 2            They say that a state secret review was done before

 3    the documents were sent for privilege, relevancy and

 4    responsiveness review, I guess were the three, I think I have

 5    it right, but are they holding back documents?  Are we now

 6    triggering another round of state secret issues?  I think that

 7    if they're going to make a substantial production, they need to

 8    be transparent with those things and not wait 30 more days to

 9    produce logs.  I think they should try to move more quickly.

10            I'll give you some other examples.

11            There's a report that we specifically pointed out was

12    very important, we explained why, and from all indications, the

13    report is gone.  There's no reason why ZHP couldn't confirm

14    that by today, that the -- that that report either has been

15    found and here it is or we can't find it, it's gone.  And the

16    same with the canvassed laptops and phones.  These are easy

17    disclosures to make and easy information to get us and we would

18    have hoped, based on the discussion about prioritization at the

19    last conference, that that would have been something that would

20    have been provided to us right up front.  It should be easy to

21    get to us.

22            Again, I'm not arguing against the extension but the

23    last point is this:  Counsel didn't say they're going to make

24    complete production.  It's substantial completion.  This is

25    discovery that should have been produced, for the most part,

1    last November.

2           And I'll say another thing.  Jinsheng Lin, who is the

3    person who authored the email wherein ZHP acknowledged -- or

4    where he acknowledged and stated to ten people or so in the

5    company, including the heads of some major departments,

6    including regulatory affairs, that there was NDMA in valsartan

7    in July of 2017.  Why was that individual not identified by ZHP

8    as a custodian two years ago or whenever we were identifying

9    the custodians?

10          So I'm making a record, Your Honor, that we are not

11   satisfied with the substantial progress because we think that

12   the letter, it reads that way but if you look at the

13   nitty-gritty, it's not substantially complete or there hasn't

14   been substantial progress.  And I just want to, again,

15   foreshadow that when June 11 comes, there's going to be big

16   gaps and we're going to be back in this place.  But, you know,

17   we'll have to wait and see.  But we think the production should

18   be completed June 11, not we did the best we could but we're

19   still working on it.

20          Thank you.

21          JUDGE VANASKIE:  Thank you.  Yes, I am hopeful that --

22          MS. PRISELAC:  Your Honor --

23          JUDGE VANASKIE:  Go ahead, Ms. Priselac.

24          MS. PRISELAC:  Just to correct the record, these are

25   new document requests.  These are -- primarily involve a drug

1  that is not the subject of discovery, irbesartan.  So the idea

2  that these things should have been produced in November is just

3  not true.

4          Secondly, we have made substantial progress and to the

5  extent that Mr. Slater wants to prioritize certain things, the

6  plaintiffs have not even once reached out to us to say what

7  they would want first.  So if that was such an important thing

8  to them, they could have told us; they chose not to.

9          The third thing is that I -- we did offer to make

10 certain representations to plaintiffs about these laptops and

11 other issues.  They told us they didn't want them, that they

12 wanted a full collection of documents and to go to the IT head

13 of ZHP and try to find if there were any realtime emails about

14 these laptops, not just some kind of description of what

15 happened to them.  So that's what we're doing.

16         So for Mr. Slater to get on the phone now and say that

17 we should have done something that we offered and he

18 specifically rejected is just improper.

19         JUDGE VANASKIE:  Mr. Slater?

20         MR. SLATER:  Yes, Your Honor.  I -- not to get into a

21 back and forth but I didn't change anything.  What I was saying

22 a few moments ago is we would have thought that those parts of

23 the productions would have been completed because they were

24 discrete matters that came up as a result of the depositions.

25 That was my only point.

         1          As far as whether things should have been produced in

         2    November, we're not arguing that right now, but we take the

         3    position that, as I said, most of these items should have been

         4    produced at that time.  I don't think Your Honor wants to hear

         5    more on that.

         6          JUDGE VANASKIE:  No, we're not going to go back and

         7    make a determination of what should have been produced earlier.

         8    The point is we're moving forward now.

         9          ZHP will have until June 11 to have substantial

        10    completion of the production.  I'm hoping it is complete but

        11    you continue to move forward, at least to have production on

        12    the matters that you've covered in your remarks just now, Mr.

        13    Slater, that that should be done by then.  And we'll address

        14    any shortcomings, if there are any, after June 11.  All right?

        15          MS. PRISELAC:  Thank you, Your Honor.

        16          JUDGE VANASKIE:  We've already talked about the Chen

        17    custodial file and, as I said, I'll issue a decision on that

        18    early next week.

        19          The next item I have on the agenda at Page 11 of the

        20    defense agenda letter, and this is ZHP parties' motion to

        21    strike plaintiffs' motion for sanctions dealing with the

        22    depositions.

        23          Who will be addressing this issue on behalf of ZHP?

        24          MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

        25          JUDGE VANASKIE:  All right, Mr. Goldberg.

```
 1            MR. GOLDBERG:  Your Honor, plaintiffs filed -- I'm
 2    sorry.
 3            JUDGE VANASKIE:  Is there anything beyond what
 4    you've --
 5            MR. GOLDBERG:  I'm sorry, Judge, you're cutting in and
 6    out.
 7            JUDGE VANASKIE:  Yes, I'm sorry about that.
 8            Is there anything that you wanted to address beyond
 9    what you've said in the letter brief -- in the agenda letter?
10            MR. GOLDBERG:  I'm sorry, Your Honor, you are cutting
11    in and out.
12            JUDGE VANASKIE:  Okay.  Let me try it this way.  Can
13    you hear me better now?
14            MR. GOLDBERG:  Yes.
15            JUDGE VANASKIE:  No?  Okay.
16            MR. GOLDBERG:  Yes.
17            JUDGE VANASKIE:  I am taking it off speaker.
18            MR. GOLDBERG:  No, Your Honor, I think we can hear
19    you.  We can hear you better now, Your Honor.
20            JUDGE VANASKIE:  All right.  Is there anything you
21    wanted to address beyond what you've written in Pages 11 to 13
22    of the agenda letter on this question of striking the motion
23    for sanctions?
24            MR. GOLDBERG:  Your Honor, the one thing that I think
25    is really important is what plaintiffs are attempting to do
```

1   with the motion for sanctions because I think it is why the

2   motion should be stricken, and that is that the motion is based

3   on specific answers to questions posed to five different

4   witnesses.  Plaintiffs had not met and conferred about any of

5   the answers to any of those questions.  And even as Your Honor

6   noted in the portion of the transcript that plaintiffs cited in

7   their letter yesterday, well, there may be answers to questions

8   that could warrant a sanction and plaintiffs could eventually

9   file a motion as to that, it has to be addressed on a

10   question-by-question -- or, sorry, answer-by-answer basis and

11   we think plaintiffs have to meet and confer on each of those

12   answers because each one needs to be evaluated by the Court

13   separately and independently to determine whether any

14   particular answer should be deemed admitted.  And plaintiffs

15   have not done that with respect to the testimony which is the

16   basis of their motion.  But I think more importantly is the

17   point in plaintiffs' motion that they intend to extrapolate

18   from whatever rulings Your Honor makes about those particular

19   questions to answers provided by any of the other 12 ZHP party

20   witnesses that testify without meeting and conferring as to any

21   particular answer that any of those witnesses have provided.

22        This Court has consistently enforced the

23   meet-and-confer rule; and with meaningful effect, the parties

24   have been able to reach agreement on virtually all of the

25   disputes or narrow issues for the Court throughout this

 1  litigation.  And with respect to this very significant request

 2  by plaintiffs that answers be deemed admitted, they should be

 3  required to meet and confer on those particular answers to

 4  determine whether there can be any resolution that doesn't

 5  require the Court's intervention.  That's what the rules

 6  require and this Court has consistently enforced that rule.

 7          JUDGE VANASKIE:  All right.  Is Mr. Slater addressing

 8  this issue?

 9          MR. SLATER:  Yes, Your Honor.

10          JUDGE VANASKIE:  Go ahead.

11          MR. SLATER:  Thank you, Your Honor.

12          One thing I'll make very clear, and I'm sure Your

13  Honor got it, is we filed this motion and stated in at least

14  two places that our intention was once we obtained an order

15  from Your Honor to then go to the defendants and say, look,

16  these are the rules that were made and then present the other

17  parts of the deposition that we think would fall within Your

18  Honor's order and ask the defendants to agree to the relief

19  that we would otherwise have sought by a motion so that we can

20  avoid having to file serial motions on 17 depositions.  So I

21  think that what Mr. Goldberg is saying he wants us to do is

22  what we explicitly said in the motion we were going to do.

23          What I didn't hear from Mr. Goldberg was what are we

24  supposed to meet and confer about?  We obviously know the

25  record that's been made in this case and what was stated during

1  those hearings with Your Honor.  What I'm hearing is that they

2  want to go into what I'm going to characterize as trench

3  warfare over every deposition question.  They think that they

4  should be able to, and this is, again, from our perspective,

5  obstruct questioning, have witnesses blatantly fail to respond

6  in a responsive way, and then they want us to have to go to

7  them and say, well, can you -- can you retract what you said

8  and can we change the answers now so we don't have to file a

9  motion.

10        I think Your Honor recognized very clearly in the

11  hearings, and we've supplied the transcript, once the

12  deposition's over, with the guidance that you've given us at

13  this point, the next move is come to Your Honor with a motion

14  for sanctions, which we tried to do in a very surgical way to

15  pick examples from, I think we picked five depositions and gave

16  what we thought were good representative examples that could

17  then be used to cross the rest of the testimony.  So I think

18  we've done everything that we possibly could do to make this as

19  streamlined and efficient as possible on a situation that we

20  shouldn't have been put into in the first place.

21        And, again, counsel says they want to meet and confer.

22  Your Honor has now the email that they didn't disclose to you

23  when they filed their agenda on this point yesterday where we

24  wrote to them on Tuesday and said, you know, we read your

25  motion.  What is it that you're saying you're going to meet and

 1    confer on?  Please tell us right now, are you agreeable to

 2    these sanctions?  Are you agreeable to striking your own

 3    objections and striking the answers and deeming these answers

 4    admitted?  And of course there's no response to that.  And Your

 5    Honor can imagine what that meet and confer would go like, you

 6    know, the meet and confer where ZHP's going to agree to be

 7    sanctioned.  That's farfetched.

 8         So, as we stated in our letter, if Your Honor wants us

 9    to file a certification to the effect that this is the record

10    in the case and we've written to them, we can do that; but our

11    understanding was we had gone beyond that on the multiple

12    37(a)(1) where we already had a hearing with Your Honor and you

13    had given us leave to file these motions.

14         Thank you.

15         JUDGE VANASKIE:  All right.  Mr. Goldberg?  Anything

16    else on this issue, Mr. Goldberg?

17         MR. GOLDBERG:  I'm sorry, Your Honor, I was on mute.

18         Yes, I do, Your Honor.

19         Plaintiffs have not done everything they needed to do.

20    They are required to meet and confer with us on the specific

21    answers because the Court has to evaluate each answer and there

22    are -- there are a number of variables at issue with respect to

23    each answer.

24         As the Court knows, these were Chinese witnesses who

25    were being deposed with an interpreter.  Many of the questions,

1    as the Court has already acknowledged, were objectionable for

2    many different reasons.  There were lots of discrepancies and

3    variables that were affecting testimony and each answer needs

4    to be evaluated in that context.  And the parties do have to

5    meet and confer, not just about the specific snippets that

6    plaintiffs included in their brief but the entire line of

7    questioning that both came before and after those specific

8    snippets.  These kinds of issues do need to be discussed.

9            Yes, ZHP is not going to agree to be sanctioned but as

10   to a number of the things that plaintiff has raised, it is the

11   parties' obligation to meet and confer and determine whether

12   any of those warrant resolution by the Court.  Plaintiffs have

13   a duty not to file a frivolous motion.  And some of the

14   snippets in their brief may turn out to have been frivolous,

15   but we can only determine that after we meet and confer about

16   them.

17           This is a rule that if Your Honor doesn't enforce,

18   especially in this kind of context where there's not just five

19   depositions but 17 depositions, and plaintiffs could

20   potentially try to extrapolate those rulings to the testimony

21   of witnesses for other parties, that a meet and confer and a

22   serious meet and confer is especially important or the Court

23   will be swamped with making rulings about facts in this case,

24   and that is not really the position of the Court to deem what

25   facts should be admitted or not.

```
 1            So, you know, plaintiffs consistently, as Mr. Slater

 2    put it before, foreshadow that there's going to be a deficiency

 3    in a production, that a meet and confer is doomed, and

 4    plaintiffs need to be held to task.  Plaintiffs need to be

 5    directed to take their meet and confer obligation seriously, to

 6    get reasonable and to act in good faith.  They can't just

 7    preordain that something is going to be doom, that something is

 8    insufficient and sway the Court to somehow perceive that there

 9    are some problems on the part of defendants.

10            The defendants, especially ZHP, has demonstrated by

11    the completion of 17 depositions with witnesses who traveled,

12    and the only party with witnesses who traveled out of the

13    country for those depositions, have consistently met their

14    obligations in good faith to produce discovery and to be

15    forthcoming.  There is nothing in these depositions that

16    suggest otherwise when you consider the context in which each

17    answer happened, questions that were objectionable, witnesses

18    who could not understand them, and those issues need to be

19    resolved, not by the Court but by the parties; and only if

20    there are issues that cannot be agreed to should the Court step

21    in and then there should be the right context for what the

22    Court is evaluating and what the appropriate relief should be.

23            JUDGE VANASKIE:  All right.  Mr. Slater, anything

24    else?

25            MR. SLATER:  I will just say, Mr. Goldberg just spoke
```

1  for a while.  All I got from that was two things:  One, they

2  want to initiate a meet-and-confer process that would take

3  months, would trigger massive correspondence and would -- I'm

4  not saying it's doomed because I don't agree that meet and

5  confers can sometimes work, but in his own words, ZHP is not

6  going to agree to be sanctioned.  That's the relief we think is

7  appropriate.  It's now a teed-up issue on a substantive basis.

8  That's what's here now and ready for the Court.

9        And the other thing I'll say is Mr. Goldberg's making

10 it sound as if we sat on our hands and then sprung this motion

11 on them.  Your Honor, after the first night of Peng Dong's

12 deposition on a Sunday night, I think I submitted a brief to

13 Your Honor at almost 2:00 in the morning that we wrote

14 literally while the deposition was being taken, and then after

15 it was submitted to Your Honor, had a hearing the next day

16 during the daytime and then I emailed Your Honor while I was

17 deposing Peng Dong the night of March 29th I believe it was,

18 the Monday night, another letter with -- and texted Your Honor

19 and provided you the first hour of testimony and we had another

20 hearing that night.  So this issue has been heavily argued.

21 And then, of course, we argued it that Wednesday at the main

22 conference, so...

23        What you've heard from ZHP is they want to turn this

24 into, and I say it again, trench warfare.  The depositions have

25 been taken, the objections have been placed, Your Honor told us

1    to file a sanction motion, it's teed up on a substantive basis

2    and we ask that the motion to strike be denied and that this

3    roll out to Your Honor for a decision.

4         Thank you.

5         MR. GOLDBERG:  Your Honor, may I?

6         JUDGE VANASKIE:  Yes, you may, Mr. Goldberg.

7         MR. GOLDBERG:  Your Honor, this is not trench warfare.

8    This is simply the application of the federal rules to meet and

9    confer about any answer in which plaintiffs are going to

10   request that there be a sanction, and if that takes a day or a

11   week or two weeks, it takes whatever the rules require, but ZHP

12   parties cannot be subject to a blanket sanction.  In other

13   words, the Court cannot sanction plaintiffs -- cannot sanction

14   ZHP in a blanket way based on one witness' answer.  The Court

15   can't apply that kind of a sanction to other witnesses'

16   answers.  The Court did not address any specific testimony in

17   the March 29th and April 1st hearing.  The Court did not rule

18   that any particular answer was sanctionable.  The Court did not

19   authorize plaintiffs to file a motion for sanctions then nor

20   did the Court excuse plaintiffs from meeting and conferring

21   about any specific testimony.

22        This is the requirement.  Plaintiffs have to, have to

23   be reasonable, they have to meet in good faith, they have to

24   identify the specific portions of testimony that they think

25   warrant the extraordinary relief of a sanction, and there has

1    to be a meet and confer to determine whether that specific

2    answer should be raised with the Court.

3            MR. SLATER:  Your Honor, I just have one brief thing

4    to say.  It's Adam Slater for the record.

5            Mr. Goldberg has said this in their papers and again

6    just now that Your Honor did not address any particular

7    testimony at the hearings and that's just not true.  And it's

8    in our brief, Your Honor obviously has seen it, where we

9    literally quoted where you went through specific questions and

10   answers and gave direction that these answers need to be

11   answered directly and talked about how that needs to be done.

12   So I just want to make the record very clear, as Your Honor

13   knows, you did address multiple questions and gave us concrete

14   examples and guidance.

15           Thank you.

16           JUDGE VANASKIE:  Well, my recollection is that I did

17   say that in order to move the matter forward, go forward,

18   proceed with the depositions, and that if there was a belief on

19   your part that the witness was being deliberately evasive that

20   you could move for sanctions, and that's what you have done.

21           Yes, meet and confer is important but I think the

22   issue is appropriately presented at this time.

23           I think, Mr. Goldberg, you can certainly address the

24   substance of the motion that's pending before me, which a

25   resolution of which would provide guidance with respect to any

1    future disputes.  I'm not saying forego meet and confer with

2    respect to any other witnesses or requests for sanctions, but I

3    am saying at this point in time, the issue had been presented

4    to me by way of several conference calls and arguments, and I

5    am not going to strike the motion for sanctions.  I expect that

6    you'll be able to respond to the motion for sanctions in an

7    appropriate way and then we'll resolve the issue and that

8    issue -- that resolution hopefully will provide guidance with

9    respect to future matters.

10        So the motion to strike the motion for sanctions will

11   be denied.

12        I want to make it clear that if there are future

13   motions for sanctions, I do expect there to be a meet and

14   confer.  I am doing this only because I had authorized a motion

15   for sanctions to be filed during the conference calls we had

16   during the depositions.

17        The next issue I have on the agenda letter I think

18   we've addressed already, and that was the Hetero matter.

19        Is there anything else on Hetero?

20        MR. PAREKH:  No, Your Honor.  This is Behram Parekh.

21        JUDGE VANASKIE:  Okay.  Thank you.

22        I think we're up to Page 16 of the agenda letter and

23   this is Teva's clawback request.  And I received for *in camera*

24   review three email chains or three documents that are the

25   subject of the clawback request.

1          Who will be addressing this issue on behalf of Teva?

2          MS. LOCKARD:  Your Honor, it's Victoria Lockard on

3    behalf of Teva.

4          JUDGE VANASKIE:  All right, Ms. Lockard.

5          MS. LOCKARD:  Sure, Your Honor.  Thank you.

6          So, I just wanted to clarify a couple points.  So, you

7    know, first of all, in plaintiffs' submission, there were

8    comments made about the number and frequency of clawback

9    documents by Teva.  Just to set the record straight on that,

10   out of hundreds of thousands of documents that have been

11   produced, Teva had clawed back or attempted to claw back

12   approximately 35 documents.  Twenty-six of those were

13   originally marked privileged but due to a vendor glitch, our

14   vendor produced them and we didn't claw them back.  There was

15   no issue with the screening process for those.

16         There were nine documents that, you know, got through

17   the privilege screening process and we sought to claw them

18   back.  Out of those, plaintiffs have all but these three.

19         So, you know, I do take issue that, you know, any

20   reference to the number of frequent -- or frequency of

21   clawbacks suggest or imply some, you know, inadequacy on the

22   part of Teva.

23         However, if you look at the three documents

24   themselves, we've had several meet and confers over these with

25   plaintiffs' counsel, and I'll take them one at a time.  There

1    really are -- there are three documents but two of them are

2    essentially the same theme that were produced.  And for the

3    record, it's Bates 587085 and it is the same email as at Bates

4    189928.

5         And so, you know, essentially what this is is this is

6    correspondence with Teva's outside legal counsel, Cathy

7    Burgess, who is a partner at the law firm of Alston and Bird,

8    who is Teva's regulatory counsel.

9         Ms. Burgess was hired to help the company remediate

10   and rectify some issues that arose from an FDA inspection of

11   Teva's facility in Davie, Florida.  This facility, by the way,

12   doesn't have anything to do with valsartan.  It doesn't

13   manufacture or repackage valsartan.  It's totally unrelated to

14   valsartan.  Nonetheless, Ms. Burgess was hired to help the

15   company with this issue of remediation, rectifying it, and in

16   the process, Teva and Ms. Burgess also hired a vendor, Parexel,

17   who's also noticed on the email string.

18        As you can see from the email, the email itself

19   forwards certain documents that enclose responses to FDA.

20   We're not taking the position those are privileged.  We've

21   agreed they are not.  They have been produced, no excuse.  But

22   the email forwarding, from Teva to their outside counsel, these

23   documents with references within that email to a discussion

24   that was had with counsel and their vendor about how to rectify

25   and remediate these issues, we firmly take the position that

1    this is privileged.  We can't fathom how it could not be

2    privileged.  It clearly references -- it's a communication with

3    outside counsel, it references a discussion that they've had.

4         Now, whereas the fact that Teva has had a -- has had

5    contact with their lawyers is not privileged, this we

6    believe -- this email reveals exactly what was discussed during

7    those attorney-client conferences.  It's the discussion that's

8    referenced in the email related to the response to the

9    regulatory activity.  And so we think this, you know, crosses

10   the line and we should be entitled to claw back this document.

11   There's going to be no benefit to this in the litigation in any

12   event because it doesn't even relate to valsartan.  So that's

13   the first issue.

14        Would you like me to move on to the second?

15        JUDGE VANASKIE:  Let's hear from plaintiffs on this

16   first issue.

17        MS. HILTON:  Good morning, Your Honor.  This is Layne

18   Hilton on behalf of plaintiffs.

19        With respect to these two emails, you know, I'll

20   simply note that, first of all, the communication itself is an

21   email from a Teva employee to a Parexel employee.  The attorney

22   from Alston and Bird is simply copied on the email.  To the

23   extent that Ms. Lockard makes the statement that this -- that

24   the body of the email references a discussion, you know,

25   obviously, the fact that a discussion occurred would, in and of

1    itself, not be privileged, and I would, you know, offer to Your

2    Honor that all of the information that's contained in this

3    email, i.e., either it be in the subject line, the attachment,

4    this would all be information that we would receive on a

5    privilege log if -- if this email were to be deemed privileged.

6         So there's nothing within the body of the email that

7    we believe, you know, evidences a substantive communication

8    between an attorney and the client.  In fact, you know, simply

9    copying an attorney on an email, as the, you know, the Court

10   has held in the *Human Tissue Products Liability Litigation*,

11   does not itself render the communication privileged.

12        And just one further point, you know, to Ms. Lockard's

13   comment that the Davie, Florida, facility had absolutely

14   nothing to do with valsartan, on meet and confers, Teva has

15   represented that the Davie, Florida, facility actually received

16   valsartan for distribution in the United States.  And if I'm

17   not mistaken, one of the attachments to this email that was

18   produced to us actually makes reference to valsartan products

19   within the FDA inspection.

20        JUDGE VANASKIE:  All right.  Anything else on this,

21   Ms. Lockard?

22        MS. LOCKARD:  The only thing I would say to that is

23   that, you know, reference to valsartan in the documents

24   themselves doesn't indicate that any of the -- any of the

25   warning letter itself or the issues that were addressed in the

1  warning letter relate to valsartan made at this Davie facility;

2  it just simply was not and it's not a facility that's at issue

3  in this litigation.  They do -- to the extent that the FDA

4  documents themselves reference valsartan, they have those

5  documents and, you know, those are not privileged, they're not

6  at issue.  But the letter itself or the correspondence itself,

7  I mean, it is -- it's clearly within the framework of

8  attorney-client privileged information.  The fact that Cathy

9  Burgess, who is their lead outside regulatory counsel, is on

10  the cc line, you know, doesn't take away from that.  You know,

11  she was actively involved in counseling on these issues along

12  with Parexel and we believe there's enough content in the email

13  itself that, you know, if we start to produce items and

14  documents like this, we're going to get into, you know, a

15  slippery slope of exactly what falls within the privilege, and

16  we don't think that this does nor, you know, should the fact

17  that she's on the cc line make a difference here.

18        JUDGE VANASKIE:  I agree with Ms. Lockard's position

19  on this.  This is communication that involved outside counsel.

20  The nature of the document indicates what was being discussed

21  and it included those FDA inspection responses, et cetera.  I

22  think this is covered by the attorney-client privilege, these

23  two emails, and that they should be clawed back, Teva's

24  entitled to have them clawed back.  Clawed back?  I'm not sure

25  how you say that.  But that's the Teva 587085 and Teva 189928

1    documents.

2         So let's proceed then to the last document, which is

3    Teva 1899 -- no, no, I'm sorry, Teva 650876.  This is an email

4    chain involving Rachel Gallagher as the Teva lawyer, as I take

5    it.

6         MS. LOCKARD:  Yes, you're correct, Your Honor.  Thank

7    you.

8         So, this email chain, and it's, as you said, 650876,

9    so there are two lawyers actually on this chain, one is Kristen

10   Bauer, and plaintiffs' counsel have agreed that the email from

11   Kristen Bauer from September 18, 2018, may be clawed back and

12   redacted.

13        There are emails at the beginning and end of this

14   chain which are not at issue.  But there are three emails in

15   the beginning -- or, excuse me, in the middle of this email

16   chain from -- two emails from Jens Nassall and one from Claire

17   Lyons.  All three are employees at Teva and these emails were

18   sent in the process of Teva's formulating its response to the

19   NDEA issue both in anticipation of litigation and with respect

20   to formulating their response to the regulators.  And as you

21   noted, Rachel Gallagher is copied -- is a recipient, not

22   copied, but is a recipient of the three emails.  Ms. Gallagher

23   is inhouse counsel for Teva.  She was and is today actively

24   engaged in the defense strategy for Teva.  She was included on

25   this email at the time when litigation was anticipated.  She

1  was, you know, included for purposes of seeking legal advice,

2  and there are, you know, specific questions within the emails

3  that implicate counsel and legal advice, without getting into

4  the substance of this, since we're on the record at this point.

5          And so, you know, we do -- while we agree, you know,

6  simply copying counsel, inhouse counsel, you know, doesn't

7  convey privilege in every instance, but in this case where it's

8  obvious that the client and the attorney were actively involved

9  in synthesizing the information in order to formulate a

10  response in anticipation of the litigation and a response to

11  regulators, we do believe that these emails, these three,

12  should also be considered privileged and that we should be

13  entitled to claw back and redact those.

14          JUDGE VANASKIE:  All right.  Let's hear from Ms.

15  Hilton.

16          MS. HILTON:  Your Honor, for some context regarding

17  these emails regarding NDEA that Teva is now seeking to claw

18  back, in the months, you know, from July of 2018 until November

19  of 2018 when Mylan recalled this product due to NDEA concerns,

20  Teva was sourcing valsartan API from both ZHP and Mylan.  And

21  so to the extent that these emails, which we do not believe

22  consist of any sort of attorney-client communication or

23  privilege, discuss NDEA, it is highly relevant to the question

24  of whether Teva had notice that perhaps the valsartan API

25  manufactured by Mylan contained NDEA, and if so, why it took

1    until November, you know, for Teva to recall those specific

2    products.  So that's just sort of the overarching factual

3    underpinning that is necessary in order to adequately review

4    these documents.

5           One of the emails, without, again, getting into the

6    content of the email because we are on the record and Teva is

7    claiming they are privileged, is actually a direct verbatim

8    copy of an email that Teva received from ZHP, from an employee

9    at ZHP by the name of Karen Zu.  So to the extent that Teva's

10   claiming that that email, and I'm referring to the email that

11   appears on page ending 878, the September 18th, 2018, email

12   sent at 1:44 a.m., this is obviously, on its face, not

13   privileged because it consists of a communication from a third

14   party, in this case ZHP.

15          Beyond that, we believe that all of these

16   communications had -- you know, up until the communication from

17   Ms. Bauer that plaintiffs do agree is privileged and should be

18   redacted, are communications of a business nature between Jens

19   Nassall and Claire Lyons regarding this potential NDEA issue

20   and go to Teva's knowledge of NDEA as a potential impurity in

21   valsartan API and what steps Teva then undertook upon

22   understanding that there was a potential for NDEA to form under

23   certain circumstances, you know, between the months of, let's

24   say, July and November of 2018.

25          And I'll also note that, you know, Ms. Lyons was a

deponent, she was a fact witness but she was a deponent, she

had been deposed, and I believe my colleague, Mr. Stanoch,

presented her with one of these emails and some of these

communications and only a week later were these emails and

communications clawed back.  And now, in doing so, it would

effectively preclude plaintiffs from deposing Teva's 30(b)(6)

corporate designee, Jens Nassall, who has not sat for a

deposition yet because of COVID-related travel issues, we would

be precluded from presenting him with these non-privileged

emails and probing the company's knowledge of NDEA in the

months prior to when its products containing Mylan API that

contained an NDEA contamination were recalled.

JUDGE VANASKIE:  Anything else on this issue?

MS. LOCKARD:  Well, Your Honor, a couple points there.

To the extent that there is a quote from an email from

ZHP that is basically replicated in this email chain that we

believe is privileged, they have the underlying email from ZHP

to Mr. Nassall so what's precluding plaintiffs from using that

or asking any of the witnesses about that email or the

information within it.

In terms of when we notified or attempted to claw

back, we have, for each of these documents, always been in

compliance with a protective order, you know, regarding the

timeline.  It's I believe a ten-day timeline for notification

and we were compliant with that.  So as we are expected to do,

1   you know, we looked into these, we investigated, looked in and

2   formulated the conclusion as to whether we thought they were

3   privileged or not and should be clawed back and that's why, you

4   know, it took a few days for us to make the request.  So I

5   don't think anything should be taken away from that from the

6   time period itself.

7            MS. HILTON:  Your Honor, if I just may respond --

8            JUDGE VANASKIE:  You may.

9            MS. HILTON:  -- to Ms. Lockard's point that

10  duplicative emails should somehow be a factor.  You know, our

11  position is that privilege is obviously -- Teva has the burden

12  of demonstrating that the document is privileged and that

13  burden is a document-by-document assessment.  To the extent

14  that there may be some different version or iterative version

15  that contained some of the language within, you know, this

16  email from Karen Zu to Jens Nassall, that actually is not

17  really relevant to the question of whether the communication

18  itself is one that is privileged.

19            And so I would simply ask that, you know, even if

20  there are other emails that we could use that that not

21  necessarily be an assessment as to whether the contents of the

22  actual communication are entitled to the protection of

23  attorney-client privilege.

24            MS. LOCKARD:  I agree it does need to be evaluated

25  individually, Your Honor, but my point was responding to

```
 1   counsel's suggestion that somehow their hands are tied about

 2   deposing Mr. Nassall on the content of at least one of these

 3   emails.

 4        JUDGE VANASKIE:  Here's what would be helpful for me

 5   to resolve this because I think in an email chain, certain

 6   emails may be protected and others may not be protected.  I'd

 7   like to see what you propose to redact from this email chain so

 8   I can see what will be produced and what would be withheld for

 9   purposes of making my determination of whether you're entitled

10   to a clawback of that which you redact.  So I will ask you to

11   provide to me expeditiously a redacted version of this email

12   chain so I can have a clearer understanding of what you agree

13   is not protected and what you claim is protected.  Can you do

14   that for me?

15        MS. LOCKARD:  I can do that in about three minutes,

16   Your Honor.

17        JUDGE VANASKIE:  Okay, very well.

18        MS. LOCKARD:  I'll take care of that, if you need to

19   move on to the next issue, and you should have it momentarily.

20        JUDGE VANASKIE:  All right, we'll move on to the next

21   issue.  Thank you.

22        MS. HILTON:  Thank you, Your Honor.

23        JUDGE VANASKIE:  Thank you.

24        The next issue I have is the plaintiffs' second set of

25   requests for production to the wholesaler defendants.  I think
```

 1  this has been agreed upon.  This is with respect to the

 2  wholesaler defendants.  And this appears at Page 18 of the

 3  defendants' agenda letter.

 4         MS. WHITELEY:  Yes, Your Honor, this is Conlee

 5  Whiteley on behalf of the plaintiffs.

 6         That issue has been resolved.

 7         JUDGE VANASKIE:  All right.  Is there anything that I

 8  need to be doing with this?

 9         MS. WHITELEY:  No, Your Honor.  There are a few issues

10  that we're going to continue to meet and confer about but

11  there's nothing ripe.  And I believe we're in agreement on this

12  and we need -- just we'd need for you to bless our agreement

13  and in the past these have been entered as an order and that's

14  what the parties have agreed to for you to do here.

15         JUDGE VANASKIE:  All right.  Can you submit to me a

16  proposed order for me to accomplish that?

17         MS. WHITELEY:  Yes, Your Honor.

18         JUDGE VANASKIE:  All right.  Please do.

19         MR. GEOPPINGER:  Your Honor, Jeff Geoppinger for the

20  wholesaler defendants.

21         We'll work with Ms. Whiteley and Mr. Stanoch on that

22  proposed order with those and address the timing which I expect

23  will probably be similar to how we've handled it before on the

24  previous requests.

25         One just point to make.  I know there is -- we are

1    going to continue negotiations on a couple requests.  However,

2    I'll note just for the record that those requests are similar

3    to the ones that the pharmacy defendants -- that have been made

4    to the pharmacy defendants and they will be discussed here

5    shortly I assume.  So whatever comes out of today's conference

6    will guide us in our further negotiations, I anticipate.

7            JUDGE VANASKIE:  Oh, okay.  All right.  Yes, that's

8    what we are going to get to next, the second requests for

9    production from the pharmacy defendants.  And there is an issue

10   here that needs to be addressed dealing with what is described

11   as a new draft request.

12           And who will be addressing this issue on behalf of the

13   plaintiffs?

14           MS. WHITELEY:  I am, Your Honor.  This is Conlee

15   Whiteley.

16           JUDGE VANASKIE:  Okay.  Ms. Whiteley.

17           MS. WHITELEY:  Okay.  Thank you, Your Honor.

18           First of all, we believe that the remaining requests

19   for production that have been agreed to should be entered just

20   as we have agreed with the wholesalers and that there is no

21   reason to have this held up based on any additional -- unless,

22   you know, it's resolved today, that's fine, but we believe that

23   the meet-and-confer process was ended prematurely and that in

24   the event that it's not resolved today, the -- all the

25   interrogatories -- I'm sorry, requests for production that have

1  been agreed to should be entered and so that we can receive

2  responses.

3        And as to the fact the argument that it's a new

4  request, we have been asked repeatedly by Judge Schneider and

5  then also have been given guidance by you to pare down our

6  requests, and since the very beginning of this litigation we

7  have been working to determine some of the tracking data and

8  we've gone at it at several different ways.  I think all

9  defendants have agreed that this is relevant to determine how

10  to trace the lots and batches.

11        The retailer defendants have admitted that they do not

12  keep certain information.  We've come to understand that that's

13  the case but we are still trying to fill some gaps and this is

14  one of the interrogatory -- the requests for production of

15  documents we feel that will fill that gap.

16        So we maintain that it's not a new request, it's just

17  a way to be more specific and pare down the original request

18  that we've been dealing with over the past months and years.

19        Also, I would say that to the extent any prematurity

20  issues have been raised here, we're now in the second phase of

21  discovery and all discovery against the retailer and wholesaler

22  defendants must be completed by October 4th.  And so we would

23  suggest that now is the time to wrap up any additional

24  discovery, including this, so that we can have it completed in

25  time.

```
 1          JUDGE VANASKIE:  All right.

 2          MS. WHITELEY:  As to the substance of the actual

 3   request and the meet-and-confer process, the retailers have not

 4   articulated to our satisfaction any actual undue burden.  They

 5   have suggested that this information can be found more

 6   specifically elsewhere.  We have looked at it from our

 7   perspective and we do not believe that it's duplicative.  We

 8   would need more information from them perhaps through way of an

 9   exemplar or additional detail for us to determine that that's a

10   valid objection.  And for the same reason we can't assess the

11   proportionality because we don't have enough information.

12          As for the actual substance of the request, the

13   manufacturers maintain the batch and lot information for all of

14   the API and finished dose products.  And as I mentioned before,

15   the retailers have stated they don't keep records of the lot

16   numbers for finished dose dispensed to the particular plaintiff

17   because they're not required to.  But they do provide inventory

18   forecasts and estimates for finished dose valsartan and we

19   wanted to review these records in tandem with the

20   manufacturers' sales records which do have the lots sold and

21   the date of sale to allow us to extrapolate which lots of the

22   finished dose were provided to which retailers and when.

23   And --

24          JUDGE VANASKIE:  I don't understand how that -- I'm

25   sorry to interrupt you, but --
```

1          MS. WHITELEY:  That's okay.

2          JUDGE VANASKIE:  -- I'm really struggling with how

3    getting forecasts how to identify which lot was sold to a

4    pharmacy that then sold the drug to a particular purchaser, I'm

5    having trouble putting that together.

6          MS. WHITELEY:  Okay.  What -- it's our understanding

7    that these forecasts do contain some of the information about

8    batch and lot numbers, and if they don't, that's part of the

9    meet-and-confer process that we would, you know, anticipate

10   being shown that and why, if we were to see an exemplar or be

11   demonstrated in some way that it could not do so; but what we

12   have seen based on testimony and other documents that we're

13   putting together, you know, it's our belief that there's enough

14   information in there to at least narrow the window of time

15   which certain batches and lots were being dispensed and when

16   they end and when the new one began.

17         JUDGE VANASKIE:  But you already have from the

18   manufacturer defendants, do you not, the information concerning

19   batches and lots that were sold to a particular pharmacy or

20   not?  To a particular retailer, I probably should phrase it

21   that way.

22         MS. WHITELEY:  Right, we do.  And then what we're

23   trying to determine from there is once it goes all the way to

24   the actual -- the purchaser, the consumer, we're trying to

25   figure out which lot and batch -- we have the NDC code and now

1   we're trying to bridge that gap where the retailers are not

2   required to keep certain information.  And so at least we can

3   narrow it down to certain time periods where they had these

4   lots and batches within their possession and the forecasts can

5   show when they're about to run out and when they're going to

6   need more; and to the extent they contain any of the dates and

7   this information, it can show that the window in which the

8   actual plaintiff purchased would be in the window of a certain

9   batch by looking at those records.  It may not be precise but

10  we can certainly narrow it down further.  And, you know, to the

11  extent we were given an exemplar of this information, we could

12  work with the defendants to determine whether it is actually

13  going to provide, you know, assistance to us in that regard or

14  not, and that's a process I think that we need to undertake.

15  Right now we've suggested a few different ways to handle it,

16  but we, you know, at some point, while we all met and conferred

17  in good faith, the retailers' position is that it's unnecessary

18  to provide it or discuss it further, which is another reason

19  why I believe the rest of the discovery should go ahead and be

20  entered and move forward with that while we sort through this

21  issue.

22          JUDGE VANASKIE:  All right.

23          MS. RICHER:  Your Honor, this is Kristen Richer on

24  behalf of the pharmacy defendants.  Could I respond to that?

25  And I'm not sure if Ms. Whiteley is finished.

```
 1           JUDGE VANASKIE:  I hope so.  I want to hear from you

 2    right now.  Yes.

 3           MS. RICHER:  Okay.  Great.

 4           So I think the first thing I just want to quickly

 5    address is this notion that we ended sort of the meet and

 6    confer prematurely.  You know, the way that -- the way that

 7    this was posed to us on Wednesday of last week when we heard

 8    that from plaintiffs on that was that it was essentially a

 9    binary offer.  We could agree to take this disputed request out

10    of the set and continue negotiating it but the plaintiffs were

11    only interested in doing that if we were willing to commit to

12    producing something; and if we were not willing to commit to

13    producing something, then we should go ahead and tee it up for

14    the Court.  You know, obviously, given the substance of

15    concerns we have about why this is even necessary and the real

16    question that I think surrounds what production of this data

17    would even accomplish, we could not agree to produce something

18    at that point in time.  And so I responded on Friday to Mr.

19    Stanoch and asked for a call.  And then when he was unavailable

20    because he was traveling, understandably, in advance of

21    Memorial Day weekend, I sent him a couple of emails over the

22    course of the weekend explaining our position on this.  That is

23    a position that has been explained on prior meet and confers,

24    so I -- you know, I don't think this is any sort of sudden

25    dramatic shift in things but it was largely a reaction to the
```

1  way that the offer was posed to us, which was to continue

2  negotiating with a commitment to produce something or to tee it

3  up for the Court for Your Honor now.

4          You know, I'll add that given our concerns that were

5  -- we phrased in the letter for Your Honor are pretty baseline,

6  fundamental objections regarding the need for this information

7  and the value of producing it relative to a burden of producing

8  it, we thought it made more sense to bring it up with the Court

9  now with the understanding that there are discovery deadlines

10  coming up in the case and we didn't want to be seen as trying

11  to just delay discussion of this issue.

12          So that's sort of the timing of how we got to where we

13  are, and I think that's an important context for Your Honor's

14  consideration.

15          And regarding the substance of the request itself, you

16  know, we agree with what Your Honor has asked plaintiffs here.

17  We also don't understand how this actually accomplishes what

18  they're trying to do at the end of the day, which is to

19  establish some sort of traceability.  Given the already very

20  concrete purchasing and sales data plaintiffs have, which was

21  produced on a transaction-by-transaction basis, that seems to

22  us to be the best evidence of the rate at which this product

23  was moving through the supply chain.  Most, if not all, of the

24  pharmacies produced sale-by-sale dispensing reports of their

25  dispensing of this drug to consumers over an eight-year time

1    period.  That seems to us to be very, very concrete data.  And

2    I'll add that it was quite burdensome and involved some

3    enernalist to produce that data, let alone the cost to

4    anonymize that data which we produced, the sales data, to avoid

5    any sort of privacy concerns.

6         You know, in contrast, the data that seems to be

7    requested here regarding inventory forecasts doesn't seem to

8    accomplish anything on the traceability front.  Plaintiffs seem

9    to be seeking data regarding how quickly a retailer believed

10   that the time that it would have spent the forecast that it

11   would go through the remainder of the inventory of a specific

12   NDC that it had on hand so that they can triangulate, in their

13   own words, specific purchases of product.  But I think adding

14   that complex layer of data here doesn't really solve the

15   traceability problem for them.  And to just -- to explain why,

16   I think it's helpful to just talk through some examples of why

17   that's the case.

18        Estimates and beliefs, from a very fundamental level,

19   regarding the days that the inventory on hand are just that,

20   they are estimates.  They do not establish whether the pharmacy

21   actually went through product that quickly, whether a certain

22   lot of a particular product fully or only partially made it

23   into the bottle picked up by the plaintiff at the pharmacy,

24   whether all of the inventory on hand is actually from the same

25   or from different lot numbers, it doesn't control for our

1    differences in dispensing rates across the thousands of stores

2    that most of these defendants have, and it can't control for

3    patients picking up their prescriptions early or not picking

4    them up at all such that the estimates really, at the end of

5    the day, like I said, are just estimates.  And the only real

6    measure here of what was sold and when is the sales data that

7    the pharmacies have produced; and similarly, the only real

8    marker here of what was purchased is the purchasing data that

9    we've already produced.  Anything above and beyond that seems

10   at this point like discovery for discovery sake and seems

11   contrary to the Court's prior directive about narrowly

12   tailoring discovery against the pharmacies.

13          I'll add, too, that when we're talking about inventory

14   management, Your Honor, I think it's important to remember that

15   the pharmacies, as part of this set of negotiated document

16   requests, have already agreed to provide inventory management

17   policies, including information on how they stock and

18   distribute product, and that's something that we will be

19   producing in this round of discovery.  We also anticipate that

20   plaintiffs will be seeking 30(b)(6) deposition testimony on

21   those same issues.

22          So if it's merely a question, at the end of the day,

23   of plaintiffs needing to get a feel for how the pharmacies

24   purchased and stocked supply and how much they tended to keep

25   on hand, it seems to me that there are other less burdensome

1  ways of getting that information and that we're already

2  contemplating that from plaintiffs and/or have already agreed

3  to produce those documents.

4          JUDGE VANASKIE:  All right.  Thank you.

5          Anything else on this issue?

6          MS. WHITELEY:  Your Honor, this is Conlee Whiteley

7  again.  Thank you.

8          I do think that an exemplar would resolve exactly the

9  issue that was raised right at the end about other less

10  burdensome ways to determine and get a feel for the purchase

11  and stock and supply information, and I think it would allow us

12  to get a more specific feel because if the data is not there,

13  then it ends the discussion because we obviously don't want

14  additional documents or work to do that does not get us to our

15  goal.

16          JUDGE VANASKIE:  All right.  I'm going to deny --

17          MS. RICHER:  And on that, Your Honor -- go ahead, Your

18  Honor.

19          JUDGE VANASKIE:  Go ahead.  Go ahead.

20          MS. RICHER:  I was going to just -- this is Kristen

21  Richer again.

22          I was just going to add that, you know, certainly we

23  understand that an exemplar on its face is less burdensome than

24  producing all forecasting data for an eight-year time period,

25  to the extent it even exists; but I think there's a real

1    question about that on our end based on initial conversations

2    we've had with our clients, given that this is a generic drug

3    and medication, this is not the sort of drug where forecasts

4    would have been sent to manufacturers in the way that

5    plaintiffs seem to be insinuating here.

6         And, you know, we've looked at the deposition

7    transcripts that we could find where this was raised.

8    Candidly, I only could find one and it doesn't really seem to

9    say that this was being done for valsartan at all.  So I think

10   there's some confusion on our end about where this is even

11   coming from because it's contrary to our understanding from

12   initial discussions with our clients.

13        But certainly an exemplar is less burdensome than all

14   documents.  I think the concern here is twofold:  Even an

15   exemplar still raises questions about what the purpose of

16   producing it is, given the data that plaintiffs already have;

17   and, you know, of course, the concern with exemplars is always

18   whether it's just an entree into requesting all of the data,

19   which gets us back to where we are at this exact moment.  So I

20   think that's the hang-up on exemplars and why we have some of

21   the concerns about proceeding with this request at all.

22        JUDGE VANASKIE:  All right.  As I was starting to say,

23   I'm going to deny the request to include this specific request

24   for production to the retailer pharmacy defendants.  I'll deny

25   it without prejudice in terms of if you want to continue to try

1    and discuss the matter, you may, but I want to get this request

2    for production out to the retail pharmacy defendants, so I

3    expect you'll submit to me a proposed order that has the

4    approved requests for production on it.

5            I have to say, I just struggle with seeing how you use

6    the word triangulate to get to particular batch and lot numbers

7    to particular purchasers and I'm just not seeing it.  So I

8    think this is a bit far afield.  I could certainly understand,

9    without even getting specifics, how burdensome it would be to

10   produce it, and we can revisit, I guess, in the future perhaps,

11   if we need to, exemplars, but I just don't see it and that's my

12   problem.  And it hasn't been sufficiently explained to me how

13   you can tie this to particular purchases for traceability

14   reasons.  And so this request is denied.  The other requests

15   are approved and please submit to me a proposed order on this

16   issue.

17           MS. WHITELEY:  Will do.  Thank you, Your Honor.

18           MS. RICHER:  Thank you, Your Honor.

19           JUDGE VANASKIE:  The next issue I have is on Pages 17

20   and 18 of the -- I think that's what it is.  We have been going

21   some time now.  It's the de-designation of confidential

22   documents.  And this is on plaintiffs' agenda letter Pages 17

23   and 18.  And it's addressed at Page 23 of the defendants'

24   agenda letter, and addressed in Exhibits D, E and F to the

25   defendants' agenda letter.

1          As I understand the issue -- I'm going to try to

2     summarize the issue here.  As I understand it, plaintiffs want

3     the defendants to go back and look at all of their designations

4     and de-designate those documents that I had determined on the

5     ZHP motion to seal should not be sealed.

6          Does that at least come close to summarizing what the

7     issue is?

8          MR. SLATER:  Hello, Your Honor.  It's Adam Slater.

9          JUDGE VANASKIE:  Yes.

10         MR. SLATER:  It does.  It does.  I'll refine it just

11    to this extent.

12         JUDGE VANASKIE:  Good.

13         MR. SLATER:  What we asked the defendants to do, and,

14    obviously, Torrent was addressed specifically in Judge

15    Schneider's order and they were directed to go back, using his

16    order as guidance, and de-designate across their entire

17    production in accordance with his order, which we don't think

18    they've done.  ZHP, Your Honor addressed in a fulsome opinion

19    based on a number of documents, so ZHP has direct guidance on

20    their documents.

21         So what we did is we went to all the other defendants

22    who, from our perspective, have massively over-designated and I

23    think that our motions directed to Torrent and ZHP, at least as

24    to those defendants, have demonstrated extensive

25    over-designation as confidential, and what we said is, look,

1  you have massively over-designated as confidential documents.

2  In accordance with what Judge Schneider said and the guidance

3  that Your Honor's decision gave, we asked the defendants to

4  de-designate in accordance with those decisions, and then when

5  they're done with that we can go back and if there's documents

6  that remain designated, we would then have to approach them

7  and, you know, I unfortunately say this, come back to the

8  Court.  We thought this was the most efficient way to proceed

9  and that's what Judge Schneider had indicated to Torrent.  That

10 was the exemplar approach.

11      It's them who seem to be saying, no, what we want the

12 plaintiffs to do is identify each document one by one,

13 challenge every document, and I don't want to overuse the

14 analogy, but, now it will be trench warfare over confidential

15 designation.  I can feel very confident Your Honor doesn't want

16 us to flood you with motions identifying hundreds or thousands

17 or tens of thousands of documents that have been improperly

18 designated as confidential.  This is the exemplar approach that

19 was initiated with the Torrent motion.

20      So all we're asking them to do is do what they're

21 obligated to do under the protective order, which is to not

22 over-designate.  There are parameters to what can be designated

23 confidential, that protective order remains in effect, and

24 we've said, okay, the Court has worked very hard to give very

25 specific guidance, please go back to your productions and fix

```
 1   them.  Our hope would be that in good faith the defendants

 2   would go back and say, okay, we've rolled out these documents

 3   during discovery, maybe we were over-designating because we

 4   were trying to be efficient but we recognize that we can't

 5   maintain improper designations and we'll fix that now.  That's

 6   what we think the protective order and the court rules and the

 7   law requires.  We're, frankly, astounded that we're being

 8   pushed back on and that the defense is saying, no, challenge

 9   every document, come to the Court with motions.  So that's what

10   our position is, Your Honor.

11        JUDGE VANASKIE:  All right.  Thank you.

12        Who will be addressing this issue on behalf of the

13   defendants?

14        MS. BONNER:  Judge Vanaskie, I'm sorry to interrupt.

15   My name is Kelly Bonner.  And briefly before the other -- the

16   other defendants speak, may I please speak on behalf of the ZH

17   parties to clarify what I believe was a mischaracterization of

18   your order regarding the order on the ZHP parties' sealing

19   motion.

20        We, you know, again, we respect the order, we've been

21   through it fulsomely.  We disagree that the order on the ZHP

22   sealing motion instructed ZHP to go back and de-designate --

23   re-review almost 400,000 pages of produced documents and

24   de-designate, preemptively de-designate.  We don't -- we do not

25   read it that way.  The only purpose -- we do not read it that
```

 1  way.  In fact, we -- you know, given your very clear guidance

 2  in Footnotes 5 and 6 and 10 and your document-by-document

 3  analysis, we read your order as requiring the de-designation of

 4  the documents at issue in the sealing motion as well as

 5  specifically pled as being -- as being subject to FDA approval,

 6  but we do not read your order as requiring us to go back and

 7  re-review 400,000, 400,000 documents and correct 400,000

 8  documents, 3.5 million pages.

 9       JUDGE VANASKIE:  All right.  Thank you for that

10  because I agree with your reading of my order.  So maybe I can

11  cut to the heart of this.

12       I don't expect the defendants to go back and review

13  their designations.  I do expect that the plaintiffs, if they

14  want documents de-designated, they will identify those

15  documents that they believe should being de-designated, then I

16  expect the defense to go back and look at those documents and

17  make a determination as to what should be de-designated in

18  accordance with the guidance I have provided.  If they decline

19  to de-designate and then the plaintiffs must file a motion on

20  that issue, I will consider at that time imposing monetary

21  sanctions against the defendants who have not followed the

22  directions that were set forth in that decision.  But no, I'm

23  sorry, Mr. Slater, I did not expect that the defendants would

24  go back and now review hundreds of thousands of documents.

25       I understand that a purpose of the protective order

1  was to facilitate discovery and that does indeed lead to

2  over-designation of documents.  I understand that.  I always

3  was reluctant when I was a trial judge to agree to

4  self-executing confidentiality orders but they are necessary in

5  cases of this magnitude.  But the appropriate approach here is

6  if the plaintiffs believe that particular documents should not

7  be designated, the reason why they should not be designated,

8  because you have access to the documents, you have the use of

9  the documents, this is for purposes of putting them out in the

10  public, I take it, I expect that you'll identify those

11  documents, and then the defense has the obligation to follow

12  the protocol in the protective order for making these final

13  determinations.  And only then, after you've had a meet and

14  confer on the issue, then I would expect something to be

15  presented to the Court for resolution, with this warning:  That

16  if the guidance provided in the decisions from Judge Schneider

17  and in my recent decision are ignored, then sanctions would be

18  imposed, monetary sanctions would be imposed.

19          MR. SLATER:  Thank you, Your Honor.  And I understand

20  that, just I was not saying that you had directed ZHP to do it;

21  I was saying that based on that direction and that guidance, we

22  thought that they should.  But I understand your ruling and we

23  appreciate what you stated because we were looking to avoid the

24  need to do this wholesale review which we're now going to have

25  to do.

```
 1              As to Torrent, I would just caution and I would like
 2    to just set that apart, Judge Schneider directed Torrent to
 3    clean up its production, use his order based on the five or six
 4    documents that were exemplars, and did direct Torrent to do a
 5    wholesale de-designation across their production.  So I would
 6    just like to clarify for the record that they were directed to
 7    do so and Torrent should be required to do so; and if they
 8    don't, we're probably going to have to come in to enforce that
 9    order.
10              JUDGE VANASKIE:  Let's hear from Torrent.
11              I want to make it clear, I wasn't addressing the
12    impact of Judge Schneider's order with respect to Torrent.  So
13    let's hear from Torrent.
14              MS. BRANCATO:  Thank you, Your Honor.  This is Alexia
15    Brancato for Torrent.
16              So, Judge Schneider's order did require Torrent to use
17    the five or six exemplars and go back and de-designate similar
18    documents, which Torrent did do several months ago now at this
19    point.  And between when we did that, which I believe was
20    February this year, and now, we have not heard from plaintiffs
21    at all.  This is the first time I'm hearing of any issue
22    related to the documents that we de-designated or any
23    complaints that we should have done more or less or whatever it
24    may be.  And so I don't think this issue is ripe for Your
25    Honor's consideration right now and would disagree with all the
```

1 different connotations that plaintiffs have made at this time.

2          MR. SLATER:  Yes, and we're not asking for an order

3 from Your Honor on Torrent right now.  We have a differing

4 position.  We'll meet and confer with them and if it can't be

5 resolved, I would think at that point it would be an issue for

6 the Court.

7          JUDGE VANASKIE:  All right.  Very well.  Thank you.

8          All right.  I think the final issue --

9          MR. HARKINS:  Your Honor, one more point on that.  I

10 apologize.  This is --

11          JUDGE VANASKIE:  That's all right.  Who is this?

12          MR. HARKINS:  Steve Harkins with Greenberg Traurig for

13 the Teva defendants.

14          JUDGE VANASKIE:  Okay.

15          MR. HARKINS:  The other issue that we identified in

16 there, and I believe Your Honor's statements likely covered it

17 but I just want to clarify, the same issue was raised with

18 respect to defendants' confidentiality designations of

19 deposition transcripts, and we similarly believe that to the

20 extent plaintiffs disagree with those, those should be raised

21 on an individual basis.  And I was just hoping to get clarity

22 on that to the extent there's any difference in the Court's

23 view on how that should be handled.

24          JUDGE VANASKIE:  There is no difference in my view in

25 terms of how that should be handled.  To the extent that

1    plaintiffs believe that excerpts of depositions have been

2    properly designated as confidential, I expect that they will

3    identify that for the individual defendant at issue and a

4    determination would be made by that defendant whether to

5    de-designate or not, and then the issue can be, after a meet

6    and confer, properly presented for resolution.

7            MR. HARKINS:  Thank you, Your Honor.  We appreciate

8    it.

9            JUDGE VANASKIE:  Thank you.

10           All right.  Now, I think I'm up to Page 27 of the

11   defendants' agenda letter, which is the defendants' most recent

12   interrogatories and requests for production to plaintiffs.

13           Who will be addressing this issue on behalf of the

14   defendants?

15           MS. LOCKARD:  Your Honor, it's Victoria Lockard for

16   Teva and the defendants.

17           JUDGE VANASKIE:  All right.

18           MS. LOCKARD:  So, Your Honor, we served these very

19   limited set of discovery requests on plaintiffs on May 24th.

20   We heard nothing back.  In all candidness, you know, we

21   expected that plaintiffs would reach out and there would be a

22   meet-and-confer process.  We heard nothing from them until they

23   added these to today's agenda.

24           The requests themselves are, like I said, limited;

25   there are six interrogatories and nine requests for production.

1    The -- you know, the intent behind these was not to have

2    plaintiffs go back to each of their individual plaintiff to

3    gather more information over and above what has been gathered

4    through the fact sheet process, but if you review them, it's

5    really directed largely at information that should be in

6    plaintiffs' counsel's possession that would not have been

7    implicated through the fact sheet process, things like any

8    testing that plaintiffs' counsel have undertaken, those sort of

9    items.

10          So, you know, we certainly -- we -- you know, we

11   acknowledge Judge Schneider was concerned about having the

12   plaintiffs have to go back to their individual clients over and

13   over again, and we have really drafted these in ways to try to

14   seek to avoid that.

15          Judge Schneider has never said that additional

16   interrogatories would not be allowed.  What he said is that he

17   would issue the plaintiffs' fact sheets without prejudice to

18   defendants' right to seek additional information for good cause

19   shown.  So we do think that we can establish good cause for

20   these tailored limited requests seeking information in

21   plaintiffs' counsel position -- possession.

22          The scheduling order, you know, plaintiffs have

23   referred to the scheduling order suggesting that somehow bars

24   additional discovery, and, frankly, it doesn't.  On its face

25   the scheduling order issued by Judge Kugler doesn't address

 1   written discovery at all.  It specifically addresses

 2   depositions and expert reports for general causation experts

 3   and class action experts.  It really doesn't address written

 4   discovery.  And, you know, discovery -- fact discovery is not

 5   closed in this case.  There's no bar, there's no, you know,

 6   preclusion on serving this if we're able to establish good

 7   cause for it.  You know, the process arguments that plaintiffs

 8   have raised, you know, there has never been an instituted or

 9   institutionalized process that requires us to seek plaintiffs'

10   permission to serve discovery.  You know, we agree we should be

11   meeting and conferring over these.  We sent these over to

12   plaintiffs.  We believe the onus is then on plaintiffs to come

13   back and have a meaningful meet and confer over that, and we're

14   still willing to do that, you know; but I don't think the

15   response of just having these requests absolutely stricken

16   without a meet and confer or without us being able to establish

17   good cause for them really is the right approach at this point.

18           So we would ask the Court to allow the parties to meet

19   and confer to determine if there is any middle ground that we

20   can agree on and bring any disputes back to the Court at the

21   next status conference.

22           JUDGE VANASKIE:  All right.  Thank you.

23           Who will address this for plaintiffs?

24           MR. SLATER:  Hello, Your Honor.  It's Adam Slater

25   again.

1          JUDGE VANASKIE:  All right.

2          MR. SLATER:  Our position is that we're now in the

3  final steps of the deposition phase of the case, we're about to

4  enter the expert discovery phase of the case, which is then

5  going to spill over into the class certification briefing, and

6  the defendants are now trying to initiate paper discovery when

7  that phase of the case was along-ago, and Judge Schneider was

8  very clear on the record of how that was going to proceed.  So

9  from our perspective, the idea that we'll now be served with

10  these -- and let's be very clear, they're contention

11  interrogatories and requests for documents and they're -- which

12  are, basically, give us the documents that you're referring to

13  with your answer that are relevant to the interrogatory, and

14  questions about what our experts are relying on.  That's for

15  the expert phase of the case.  They're going to see what our

16  expert reports say.

17          And I left one thing out.  There's the Daubert phase

18  that's coming after the expert discovery, which is what the

19  defendants have been focusing on in this litigation quite,

20  quite clearly for months and months and months.

21          So we're way beyond now being served interrogatories

22  that should have been asked a long time ago; and, frankly, if

23  there was a meet and confer, I think it would have been very

24  clear they were not appropriate.

25          We would like to avoid having our attention pulled

 1  from the very important work we're doing, which is set forth in

 2  the case management order, back to now meet and confer and

 3  argue about these interrogatories and corresponding requests

 4  for documents.  We'd rather be able to focus on what's in the

 5  case management order, what the defendants said they needed to

 6  do when the case management order was revised earlier this

 7  year, and focus on getting into the expert discovery, the

 8  Daubert, and the most important things that are happening now

 9  in the case.

10          JUDGE VANASKIE:  All right.  Thank you.

11          Yes, I think Judge Schneider was very clear, no

12  interrogatories was to be handled through fact sheets, and we

13  are at a stage of the case where this is being raised near the

14  close of this phase of discovery.

15          I'm going to disallow these discovery requests as

16  inconsistent with the approach that has been laid out and

17  carefully followed in this case thus far.  The information that

18  is being sought will undoubtedly come in expert witness

19  discovery, and to the extent that certain information like

20  testing of individual plaintiff's drugs doesn't come out, well,

21  that should have been handled sooner.  So these discovery

22  requests will be disallowed.

23          Anything else to address before we get Judge Kugler on

24  the phone?

25          MR. SLATER:  Nothing for plaintiffs, Your Honor.

```
 1              JUDGE VANASKIE:  All right.

 2              MR. GOLDBERG:  Nothing from defendants, Your Honor.

 3              JUDGE VANASKIE:  All right.  Thank you.

 4         And I'm going to hang up, call Judge Kugler, stay on

 5    the line, and we'll have Judge Kugler join us.  Thank you.

 6              MS. SMITH:  Judge Vanaskie, before you leave, I just

 7    want to let you know -- this is Loretta -- that Judge Kugler is

 8    on the bench in a hearing right now.

 9              JUDGE VANASKIE:  Okay.

10              MS. SMITH:  I'm not sure how long it will last.  I

11    would certainly call him but I don't think you'll have an

12    immediate follow through with Judge Kugler right now.

13              JUDGE VANASKIE:  Okay.  So perhaps we should agree to

14    reconvene with Judge Kugler?

15              MS. SMITH:  Sure.  I don't know how long the hearing

16    will last.

17              JUDGE VANASKIE:  How long, that's the problem.

18              MS. SMITH:  I will say it's a pro se defendant in a

19    criminal matter so it may be more -- it may be better to

20    reconvene in an hour.

21              JUDGE VANASKIE:  Yes, that's what I'm thinking.

22    Counsel, can we reconvene at 1:30?

23              MR. SLATER:  Yes, of course, Your Honor.

24              JUDGE VANASKIE:  All right.  I'll leave a message for

25    Judge Kugler or, Loretta, ask you to.  I'll leave a message but
```

```
 1   ask you also to provide the message that we will be dialing in

 2   again at 1:30 for him to address the balance of this CMC.  All

 3   right?  Okay.  Thanks.

 4            Camille, you're still there?

 5            THE COURT REPORTER:  Yes, Your Honor.

 6            JUDGE VANASKIE:  Okay.  We're going to sign out for

 7   now.  We'll see you at 1:30.

 8            THE COURT REPORTER:  Okay.

 9            JUDGE VANASKIE:  Bye-bye.

10            (The proceedings adjourned at 12:28 p.m.)

11            - - - - - - - - - - - - - - - - -

12

13            I certify that the foregoing is a correct transcript

14   from the record of proceedings in the above-entitled matter.

15

16   /S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR
     Court Reporter/Transcriber

17

18   June 5, 2021
          Date

19

20

21

22

23

24

25
```

*United States District Court*
*Camden, New Jersey*

## /

/S [1] - 96:16

## 0

07068 [1] - 1:14
08101 [1] - 1:8
08540 [2] - 3:7, 3:11

## 1

10 [1] - 86:2
100 [2] - 12:2, 35:3
10022 [1] - 3:14
103 [1] - 1:14
10:00 [2] - 1:9, 4:2
11 [9] - 43:5, 43:12,
    43:14, 45:15, 45:18,
    47:9, 47:14, 47:19,
    48:21
11517841 [1] - 19:20
11th [1] - 42:24
12 [2] - 34:22, 49:19
12:28 [1] - 96:10
12th [1] - 43:22
13 [1] - 48:21
13th [1] - 19:21
15219 [1] - 2:15
16 [1] - 58:22
1638 [1] - 2:3
168 [1] - 43:19
17 [5] - 50:20, 53:19,
    54:11, 82:19, 82:22
17th [1] - 2:10
18 [4] - 64:11, 70:2,
    82:20, 82:23
182 [1] - 19:18
1835 [1] - 1:17
1899 [1] - 64:3
189928 [2] - 60:4,
    63:25
18th [1] - 66:11
19-md-02875-RBK-
    KMW [1] - 1:4
19103 [2] - 1:17, 2:11
19422 [1] - 3:5
1:30 [3] - 95:22, 96:2,
    96:7
1:44 [1] - 66:12
1st [3] - 10:19, 41:3,
    56:17

## 2

2012) [1] - 19:18
2014 [4] - 19:20,
    19:21, 22:14, 22:15
2017 [1] - 45:7
2018 [5] - 64:11,
    65:18, 65:19, 66:11,
    66:24

2021 [2] - 1:8, 96:18
2029 [1] - 3:20
21 [1] - 3:11
2150 [1] - 2:6
21st [2] - 5:10, 7:23
23 [2] - 39:9, 82:23
23rd [2] - 5:10, 7:24
24th [1] - 90:19
2500 [1] - 2:18
26 [3] - 17:14, 18:11,
    21:18
27 [1] - 90:10
28 [1] - 41:7
2800 [1] - 3:17
287 [1] - 19:17
2900 [1] - 1:17
29th [2] - 55:17, 56:17
2:00 [1] - 55:13

## 3

3 [3] - 1:8, 8:12, 31:2
3.5 [1] - 86:8
30 [2] - 2:10, 44:8
30(b)(6 [5] - 10:18,
    15:5, 15:10, 67:6,
    79:20
300 [1] - 3:20
30305 [1] - 2:18
30th [3] - 33:23, 34:6,
    34:9
3333 [1] - 2:18
34 [1] - 24:10
35 [1] - 59:12
37(a)(1 [1] - 52:12
38th [1] - 2:14
397 [1] - 35:3
3rd [1] - 7:4

## 4

4,000 [1] - 42:22
400,000 [4] - 85:23,
    86:7
439 [1] - 35:4
445202 [1] - 3:18
45 [1] - 7:4
450 [1] - 3:4
4th [3] - 1:7, 42:25,
    72:22

## 5

5 [2] - 86:2, 96:18
502 [1] - 3:7
55402 [1] - 2:6
587085 [2] - 60:3,
    63:25

## 6

6 [2] - 7:5, 86:2

600 [1] - 3:17
601 [1] - 3:14
609-774-1494 [1] -
    1:23
650876 [2] - 64:3, 64:8

## 7

7 [2] - 10:14, 40:21
701 [1] - 1:20
70130 [1] - 1:21
7th [6] - 9:4, 9:19,
    10:16, 10:17, 14:8,
    14:13

## 8

8 [1] - 40:21
800 [1] - 2:6
878 [1] - 66:11
8th [1] - 21:13

## 9

9 [2] - 7:5, 42:8
90067 [1] - 3:21
90277 [1] - 2:3
99 [1] - 12:4

## A

a.m [2] - 4:2, 66:12
ability [1] - 9:7
able [19] - 9:6, 10:3,
    11:1, 12:15, 13:8,
    15:21, 28:11, 31:21,
    34:7, 39:23, 42:23,
    43:3, 43:4, 49:24,
    51:4, 58:6, 92:6,
    92:16, 94:4
abouting [1] - 25:17
above-entitled [1] -
    96:14
ABRAHAM [6] - 3:10,
    9:12, 9:18, 12:24,
    13:1, 14:17
Abraham [2] - 9:13,
    12:25
absent [1] - 17:4
absolutely [3] - 37:13,
    62:13, 92:15
accepted [1] - 25:23
access [1] - 87:8
accomplish [4] -
    31:21, 70:16, 76:17,
    78:8
accomplished [2] -
    4:25, 5:3
accomplishes [1] -
    77:17
accordance [4] -
    83:17, 84:2, 84:4,

86:18
accordingly [1] -
    37:10
accurate [2] - 10:20,
    24:6
acknowledge [1] -
    91:11
acknowledged [4] -
    11:14, 45:3, 45:4,
    53:1
act [1] - 54:6
Actavis [2] - 2:19,
    2:20
action [8] - 14:8,
    29:12, 39:7, 40:14,
    40:18, 40:22, 41:1,
    92:3
ACTION [1] - 1:3
actively [3] - 63:11,
    64:23, 65:8
activity [1] - 61:9
actual [6] - 68:22,
    73:2, 73:4, 73:12,
    74:24, 75:8
Adam [7] - 4:19, 6:8,
    25:7, 43:8, 57:4,
    83:8, 92:24
ADAM [1] - 1:13
add [7] - 13:15, 20:17,
    22:6, 77:4, 78:2,
    79:13, 80:22
added [7] - 6:21, 36:3,
    36:7, 36:12, 36:16,
    37:7, 90:23
adding [2] - 7:9, 78:13
addition [1] - 13:16
additional [15] - 5:17,
    8:2, 14:4, 19:2,
    20:24, 39:17, 42:21,
    42:22, 71:21, 72:23,
    73:9, 80:14, 91:15,
    91:18, 91:24
additionally [1] -
    13:19
address [22] - 14:10,
    14:14, 14:19, 17:15,
    20:13, 22:7, 27:12,
    38:12, 47:13, 48:8,
    48:21, 56:16, 57:6,
    57:13, 57:23, 70:22,
    76:5, 91:25, 92:3,
    92:23, 94:23, 96:2
addressed [13] - 17:6,
    17:22, 18:12, 22:12,
    40:21, 49:9, 58:18,
    62:25, 71:10, 82:23,
    82:24, 83:14, 83:18
addresses [1] - 92:1
addressing [15] -
    4:21, 8:13, 9:10,

14:19, 17:8, 33:2,
    42:13, 43:7, 47:23,
    50:7, 59:1, 71:12,
    85:12, 88:11, 90:13
adequately [1] - 66:3
adjourned [1] - 96:10
admitted [5] - 49:14,
    50:2, 52:4, 53:25,
    72:11
advance [2] - 11:19,
    76:20
advice [2] - 65:1, 65:3
Aerospatiale [1] -
    42:1
affairs [1] - 45:6
affect [1] - 36:13
affecting [1] - 53:3
afield [1] - 82:8
agenda [26] - 4:7, 4:8,
    4:23, 8:12, 30:1,
    31:3, 34:14, 34:21,
    34:22, 40:19, 40:21,
    41:19, 42:9, 47:19,
    47:20, 48:9, 48:22,
    51:23, 58:17, 58:22,
    70:3, 82:22, 82:24,
    82:25, 90:11, 90:23
ago [6] - 15:24, 45:8,
    46:22, 88:18, 93:7,
    93:22
agree [24] - 6:9, 17:2,
    34:8, 37:13, 39:24,
    41:11, 50:18, 52:6,
    53:9, 55:4, 55:6,
    63:18, 65:5, 66:17,
    68:24, 69:12, 76:9,
    76:17, 77:16, 86:10,
    87:3, 92:10, 92:20,
    95:13
agreeable [2] - 52:1,
    52:2
agreed [12] - 40:3,
    54:20, 60:21, 64:10,
    70:1, 70:14, 71:19,
    71:20, 72:1, 72:9,
    79:16, 80:2
agreement [5] - 31:25,
    35:14, 49:24, 70:11,
    70:12
ahead [8] - 16:7,
    45:23, 50:10, 75:19,
    76:13, 80:17, 80:19
Aid [1] - 3:22
aided [1] - 1:25
ALEXIA [1] - 3:13
Alexia [2] - 32:9,
    88:14
ALFANO [1] - 2:13
allegations [1] - 35:5
alleged [1] - 35:5

**allow** [3] - 73:21,
80:11, 92:18
**allowed** [1] - 91:16
**almost** [4] - 23:13,
33:9, 55:13, 85:23
**alone** [1] - 78:3
**along-ago** [1] - 93:7
**ALSO** [1] - 3:23
**Alston** [2] - 60:7,
61:22
**alternative** [2] - 41:24,
42:3
**amend** [3] - 36:22,
37:19, 38:23
**amended** [6] - 36:2,
36:8, 36:16, 36:20,
36:25, 38:24
**AmerisourceBergen**
[1] - 3:18
**amount** [1] - 4:25
**amounts** [1] - 25:20
**analogy** [1] - 84:14
**Analys** [1] - 10:25
**analysis** [1] - 86:3
**Angeles** [1] - 3:21
**ANN** [1] - 2:10
**anonymize** [1] - 78:4
**answer** [17] - 14:25,
17:7, 25:4, 30:23,
49:10, 49:14, 49:21,
52:21, 52:23, 53:3,
54:17, 56:9, 56:14,
56:18, 57:2, 93:13
**answer-by-answer**
[1] - 49:10
**answered** [1] - 57:11
**answers** [14] - 49:3,
49:5, 49:7, 49:12,
49:19, 50:2, 50:3,
51:8, 52:3, 52:21,
56:16, 57:10
**anticipate** [7] - 21:7,
21:13, 42:22, 43:11,
71:6, 74:9, 79:19
**anticipated** [2] - 38:1,
64:25
**anticipation** [2] -
64:19, 65:10
**apart** [1] - 88:2
**apex** [2] - 5:17, 7:22
**API** [10] - 22:12, 22:13,
22:15, 22:22, 22:25,
65:20, 65:24, 66:21,
67:11, 73:14
**apologize** [1] - 89:10
**application** [1] - 56:8
**apply** [1] - 56:15
**appreciate** [2] - 87:23,
90:7
**approach** [7] - 24:7,

84:6, 84:10, 84:18,
87:5, 92:17, 94:16
**appropriate** [6] -
40:12, 54:22, 55:7,
58:7, 87:5, 93:24
**appropriately** [1] -
57:22
**approval** [1] - 86:5
**approved** [2] - 82:4,
82:15
**April** [1] - 56:17
**argue** [3] - 19:8,
43:13, 94:3
**argued** [3] - 17:17,
55:20, 55:21
**arguing** [3] - 24:1,
44:22, 47:2
**argument** [4] - 5:8,
5:18, 27:24, 72:3
**arguments** [7] - 18:12,
25:13, 41:23, 42:1,
42:5, 58:4, 92:7
**arose** [1] - 60:10
**articulate** [1] - 29:5
**articulated** [1] - 73:4
**assess** [1] - 73:10
**assessment** [2] -
68:13, 68:21
**assigned** [1] - 35:15
**assistance** [1] - 75:13
**assume** [1] - 71:5
**astounded** [1] - 85:7
**Atlanta** [1] - 2:18
**attachment** [1] - 62:3
**attachments** [1] -
62:17
**attempt** [1] - 27:2
**attempted** [2] - 59:11,
67:21
**attempting** [2] - 23:25,
48:25
**attempts** [1] - 23:9
**attention** [5] - 35:19,
36:5, 40:7, 40:14,
93:25
**Attorney** [1] - 3:12
**attorney** [9] - 61:7,
61:21, 62:8, 62:9,
63:8, 63:22, 65:8,
65:22, 68:23
**attorney-client** [5] -
61:7, 63:8, 63:22,
65:22, 68:23
**attorneys** [1] - 4:13
**Aurobindo** [20] - 3:8,
11:11, 14:19, 15:15,
15:23, 16:10, 16:11,
17:19, 18:6, 20:12,
20:19, 23:25, 24:8,
24:21, 25:23, 26:11,

27:8, 28:15, 29:2,
29:25
**Aurobindo's** [5] -
16:21, 24:14, 25:16,
27:16, 27:23
**Aurolife** [1] - 3:8
**authored** [1] - 45:3
**authority** [5] - 19:13,
27:18, 29:2, 37:22,
38:8
**authorize** [1] - 56:19
**authorized** [2] - 39:18,
58:14
**available** [5] - 13:11,
13:25, 18:15, 27:9
**Avenue** [2] - 2:6, 3:14
**avoid** [5] - 50:20, 78:4,
87:23, 91:14, 93:25
**await** [2] - 40:14,
40:16
**aware** [3] - 21:11,
32:10, 35:1
**awhile** [1] - 21:25

### B

**balance** [1] - 96:2
**bar** [1] - 92:5
**BARNES** [1] - 3:19
**bars** [1] - 91:23
**based** [9] - 44:18,
49:2, 56:14, 71:21,
74:12, 81:1, 83:19,
87:21, 88:3
**baseline** [1] - 77:5
**basis** [8] - 4:10, 41:22,
49:10, 49:16, 55:7,
56:1, 77:21, 89:21
**batch** [5] - 73:13,
74:8, 74:25, 75:9,
82:6
**batches** [5] - 23:19,
72:10, 74:15, 74:19,
75:4
**Bates** [6] - 9:23, 10:1,
10:4, 10:13, 60:3
**Bauer** [3] - 64:10,
64:11, 66:17
**BAZAN** [3] - 2:9, 33:3,
33:7
**Bazan** [1] - 33:4
**Beach** [1] - 2:3
**bed** [1] - 10:11
**began** [4] - 21:1,
35:11, 35:13, 74:16
**beginning** [4] - 22:24,
64:13, 64:15, 72:6
**behalf** [27] - 4:11,
8:13, 8:16, 9:11,
14:20, 20:11, 30:8,
31:7, 31:9, 32:7,

33:2, 33:4, 34:5,
35:3, 35:8, 42:13,
43:7, 47:23, 59:1,
59:3, 61:18, 70:5,
71:12, 75:24, 85:12,
85:16, 90:13
**behind** [2] - 35:11,
91:1
**behoved** [1] - 40:9
**Behram** [2] - 8:15,
58:20
**BEHRAM** [1] - 2:2
**belief** [2] - 57:18,
74:13
**beliefs** [1] - 78:18
**Bell** [1] - 3:5
**bellwether** [4] - 40:20,
41:3, 41:7
**bench** [1] - 95:8
**benefit** [1] - 61:11
**BERNE** [1] - 3:16
**best** [5] - 36:25, 39:8,
41:4, 45:18, 77:22
**better** [6] - 6:25, 13:1,
48:13, 48:19, 95:19
**between** [7] - 12:2,
12:4, 33:23, 62:8,
66:18, 66:23, 88:19
**beyond** [9] - 17:6,
24:7, 48:3, 48:8,
48:21, 52:11, 66:15,
79:9, 93:21
**big** [2] - 24:6, 45:15
**biggest** [2] - 13:9,
26:3
**binary** [1] - 76:9
**Bird** [2] - 60:7, 61:22
**bit** [8] - 12:22, 30:2,
30:12, 32:20, 39:1,
82:8
**blanket** [2] - 56:12,
56:14
**blatantly** [1] - 51:5
**bless** [1] - 70:12
**Blessy** [1] - 19:4
**Blue** [1] - 3:5
**BOCKIUS** [1] - 3:6
**body** [2] - 61:24, 62:10
**Bonner** [1] - 85:15
**BONNER** [2] - 2:10,
85:14
**BOSICK** [1] - 2:13
**bottle** [1] - 78:23
**bottom** [1] - 31:2
**bought** [3] - 22:15,
22:22
**BRANCATO** [3] -
3:13, 32:8, 88:14
**Brancato** [2] - 32:9,
88:15

**bridge** [1] - 75:1
**brief** [21] - 6:4, 6:5,
6:10, 7:6, 7:8, 7:17,
15:1, 19:14, 26:24,
41:24, 41:25, 42:4,
42:6, 48:9, 53:6,
53:14, 55:12, 57:3,
57:8
**briefed** [2] - 5:23, 6:6
**briefing** [4] - 9:9, 36:9,
36:14, 93:5
**briefly** [5] - 20:13,
26:15, 38:15, 42:18,
85:15
**briefs** [1] - 16:18
**bring** [4] - 36:5, 40:11,
77:8, 92:20
**bringing** [2] - 8:25,
40:7
**Building** [1] - 1:7
**bulk** [1] - 17:16
**burden** [5] - 15:20,
68:11, 68:13, 73:4,
77:7
**burdensome** [8] -
24:20, 25:1, 78:2,
79:25, 80:10, 80:23,
81:13, 82:19
**Burgess** [5] - 60:7,
60:9, 60:14, 60:16,
63:9
**business** [1] - 66:18
**button** [1] - 30:21
**BY** [20] - 1:13, 1:16,
1:19, 1:20, 2:2, 2:5,
2:8, 2:9, 2:9, 2:10,
2:14, 2:17, 2:17, 3:3,
3:3, 3:4, 3:6, 3:13,
3:17, 3:20
**bye** [2] - 96:9
**bye-bye** [1] - 96:9

### C

**California** [2] - 2:3,
3:21
**Camden** [1] - 1:8
**camera** [1] - 58:23
**Camille** [3] - 1:22,
96:4, 96:16
**camillepedano@
gmail.com** [1] - 1:23
**Camp** [1] - 1:20
**candidly** [1] - 81:8
**candidness** [1] -
90:20
**cannot** [5] - 38:8,
54:20, 56:12, 56:13
**canvassed** [1] - 44:16
**capable** [1] - 23:18
**Care** [1] - 19:19

**care** [2] - 29:19, 69:18
**careful** [1] - 28:15
**carefully** [2] - 27:3, 94:17
**Carnegie** [1] - 3:7
**case** [25] - 9:15, 19:24, 20:1, 24:17, 26:21, 28:7, 50:25, 52:10, 53:23, 65:7, 66:14, 72:13, 77:10, 78:17, 92:5, 93:3, 93:4, 93:7, 93:15, 94:2, 94:5, 94:6, 94:9, 94:13, 94:17
**Case** [1] - 39:9
**CASE** [1] - 1:5
**cases** [7] - 19:15, 19:22, 20:1, 23:13, 28:5, 42:2, 87:5
**Cathy** [2] - 60:6, 63:8
**causation** [1] - 92:2
**caused** [2] - 27:20, 27:23
**caution** [1] - 88:1
**cc** [2] - 63:10, 63:17
**CCR** [1] - 96:16
**Center** [1] - 3:7
**Centre** [1] - 2:14
**Century** [1] - 3:20
**certain** [13] - 41:23, 46:5, 46:10, 60:19, 66:23, 69:5, 72:12, 74:15, 75:2, 75:3, 75:8, 78:21, 94:19
**certainly** [17] - 7:13, 7:15, 12:25, 27:22, 28:7, 32:22, 37:14, 38:7, 38:16, 43:11, 57:23, 75:10, 80:22, 81:13, 82:8, 91:10, 95:11
**certification** [6] - 19:16, 28:8, 28:10, 28:12, 52:9, 93:5
**certify** [5] - 19:11, 19:24, 20:2, 24:19, 96:13
**cetera** [1] - 63:21
**chain** [10] - 64:4, 64:8, 64:9, 64:14, 64:16, 67:16, 69:5, 69:7, 69:12, 77:23
**chains** [1] - 58:24
**challenge** [2] - 84:13, 85:8
**chance** [2] - 39:21, 39:24
**change** [4] - 16:16, 24:1, 46:21, 51:8
**changes** [1] - 17:5

**chapter** [1] - 29:21
**characterization** [1] - 24:5
**characterize** [1] - 51:2
**chart** [1] - 22:20
**charts** [1] - 16:18
**Chen** [2] - 5:8, 47:16
**chime** [2] - 9:15, 25:5
**Chinese** [2] - 41:22, 52:24
**chose** [1] - 46:8
**chromatograms** [2] - 10:24, 11:2
**chromatography** [1] - 11:10
**Cincinnati** [1] - 3:18
**CIPRIANI** [1] - 3:2
**circumstance** [2] - 11:22, 13:5
**circumstances** [3] - 13:2, 13:4, 66:23
**cite** [1] - 19:15
**cited** [3] - 19:12, 28:5, 49:6
**CIVIL** [1] - 1:3
**claim** [1] - 69:13
**claimed** [1] - 10:5
**claiming** [2] - 66:7, 66:10
**claims** [3] - 11:4, 35:7, 36:20
**Claire** [2] - 64:16, 66:19
**clarify** [4] - 59:6, 85:17, 88:6, 89:17
**clarity** [1] - 89:21
**class** [22] - 15:12, 32:15, 33:1, 33:10, 34:11, 34:14, 35:5, 35:8, 36:1, 36:22, 37:8, 37:10, 37:14, 39:3, 39:11, 39:14, 40:15, 92:3, 93:5
**class-specific** [1] - 15:12
**claw** [7] - 59:11, 59:14, 59:17, 61:10, 65:13, 65:17, 67:21
**clawback** [4] - 58:23, 58:25, 59:8, 69:10
**clawbacks** [1] - 59:21
**clawed** [7] - 59:11, 63:23, 63:24, 64:11, 67:5, 68:3
**clean** [1] - 88:3
**cleanup** [1] - 33:11
**clear** [12] - 20:18, 28:15, 43:14, 50:12, 57:12, 58:12, 86:1, 88:11, 93:8, 93:10,

93:24, 94:11
**clearer** [2] - 38:9, 69:12
**clearly** [4] - 51:10, 61:2, 63:7, 93:20
**Clem** [1] - 30:19
**CLEM** [1] - 2:14
**Clerk** [1] - 3:24
**client** [9] - 9:20, 11:8, 61:7, 62:8, 63:8, 63:22, 65:8, 65:22, 68:23
**clients** [3] - 81:2, 81:12, 91:12
**close** [4] - 18:24, 27:8, 83:6, 94:14
**closed** [2] - 28:14, 92:5
**cloud** [1] - 30:13
**CMC** [3] - 14:14, 40:6, 96:2
**co** [2] - 17:14, 20:7
**co-counsel** [2] - 17:14, 20:7
**Coast** [1] - 2:3
**code** [1] - 74:25
**Cohen** [1] - 1:7
**colleague** [3] - 9:14, 20:16, 67:2
**collected** [1] - 21:10
**collection** [1] - 46:12
**collectively** [1] - 25:10
**coming** [6] - 6:11, 21:17, 35:18, 77:10, 81:11, 93:18
**Commencing** [1] - 1:9
**commendable** [1] - 25:11
**commended** [1] - 5:1
**comment** [2] - 25:15, 62:13
**comments** [2] - 29:15, 59:8
**commit** [2] - 76:11, 76:12
**commitment** [1] - 77:2
**committed** [4] - 11:13, 14:7, 18:15, 21:9
**communication** [10] - 61:2, 61:20, 62:7, 62:11, 63:19, 65:22, 66:13, 66:16, 68:17, 68:22
**communications** [4] - 66:16, 66:18, 67:4, 67:5
**companies** [2] - 22:16, 22:21
**company** [3] - 45:5, 60:9, 60:15

**company's** [1] - 67:10
**compel** [1] - 41:21
**complaint** [10] - 35:2, 36:2, 36:3, 36:8, 36:17, 36:20, 36:25, 38:25, 39:15
**complaints** [3] - 35:7, 38:23, 88:23
**complete** [18] - 6:23, 19:12, 19:24, 20:3, 24:19, 24:25, 26:19, 28:10, 28:12, 29:17, 33:9, 35:16, 42:24, 43:3, 43:4, 44:24, 45:13, 47:10
**completed** [12] - 6:1, 21:3, 21:5, 30:6, 30:15, 30:25, 33:24, 34:9, 45:18, 46:23, 72:22, 72:24
**completing** [3] - 21:13, 40:8, 41:7
**completion** [5] - 28:8, 43:21, 44:24, 47:10, 54:11
**complex** [1] - 78:14
**compliance** [1] - 67:23
**compliant** [1] - 67:25
**compliment** [1] - 4:24
**comply** [2] - 27:13, 39:8
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concern** [4] - 26:3, 28:13, 81:14, 81:17
**concerned** [2] - 8:22, 91:11
**concerning** [1] - 74:18
**concerns** [6] - 31:4, 65:19, 76:15, 77:4, 78:5, 81:21
**concerted** [1] - 16:2
**conclude** [1] - 29:24
**conclusion** [1] - 68:2
**concrete** [4] - 28:16, 57:13, 77:20, 78:1
**concur** [1] - 30:23
**conduct** [4] - 16:25, 20:22, 27:16, 27:23
**confer** [49] - 10:7, 10:25, 12:9, 12:16, 13:11, 14:3, 16:24, 17:3, 17:18, 17:25, 31:14, 39:22, 40:1, 49:11, 49:23, 50:3, 50:24, 51:21, 52:1, 52:5, 52:6, 52:20, 53:5, 53:11, 53:15,

53:21, 53:22, 54:3, 54:5, 55:2, 56:9, 57:1, 57:21, 58:1, 58:14, 70:10, 71:23, 73:3, 74:9, 76:6, 87:14, 89:4, 90:6, 90:22, 92:13, 92:16, 92:19, 93:23, 94:2
**conference** [8] - 7:15, 26:21, 44:19, 55:22, 58:4, 58:15, 71:5, 92:21
**CONFERENCE** [1] - 1:5
**conferences** [3] - 20:1, 35:2, 61:7
**conferral** [1] - 14:4
**conferred** [4] - 9:19, 35:21, 49:4, 75:16
**conferring** [6] - 11:4, 18:7, 18:9, 49:20, 56:20, 92:11
**confers** [4] - 55:5, 59:24, 62:14, 76:23
**confident** [1] - 84:15
**confidential** [7] - 82:21, 83:25, 84:1, 84:14, 84:18, 84:23, 90:2
**confidentiality** [2] - 87:4, 89:18
**confirm** [2] - 20:23, 44:13
**confusion** [1] - 81:10
**Conlee** [6] - 34:5, 34:12, 39:19, 70:4, 71:14, 80:6
**CONLEE** [1] - 1:19
**connectivity** [1] - 33:21
**connotations** [1] - 89:1
**consider** [3] - 27:22, 54:16, 86:20
**consideration** [3] - 26:22, 77:14, 88:25
**considered** [7] - 18:12, 19:16, 19:22, 26:24, 27:3, 42:6, 65:12
**considering** [2] - 29:1, 29:12
**consist** [1] - 65:22
**consistently** [4] - 49:22, 50:6, 54:1, 54:13
**consists** [1] - 66:13
**consumer** [1] - 74:24
**consumers** [1] - 77:25
**contact** [1] - 61:5

**contain** [2] - 74:7, 75:6
**contained** [6] - 9:22, 13:18, 62:2, 65:25, 67:12, 68:15
**containing** [2] - 15:23, 67:11
**contamination** [1] - 67:12
**contemplate** [1] - 39:10
**contemplating** [1] - 80:2
**contend** [1] - 19:1
**content** [3] - 63:12, 66:6, 69:2
**contention** [1] - 93:10
**contents** [1] - 68:21
**context** [6] - 53:4, 53:18, 54:16, 54:21, 65:16, 77:13
**continue** [11] - 16:8, 26:5, 27:15, 31:16, 43:14, 47:11, 70:10, 71:1, 76:10, 77:1, 81:25
**Continued** [2] - 1:25, 3:1
**continuing** [1] - 25:22
**contrary** [3] - 19:12, 79:11, 81:11
**contrast** [1] - 78:6
**control** [2] - 78:25, 79:2
**conversations** [1] - 81:1
**convey** [1] - 65:7
**Cooper** [1] - 1:7
**cooperatively** [1] - 30:24
**copied** [3] - 61:22, 64:21, 64:22
**copy** [2] - 42:21, 66:8
**copying** [2] - 62:9, 65:6
**core** [2] - 16:12, 16:13
**corporate** [1] - 67:7
**Corporation** [2] - 3:22, 42:2
**correct** [11] - 5:11, 5:12, 30:11, 31:6, 32:7, 32:9, 40:23, 45:24, 64:6, 86:7, 96:13
**corrected** [1] - 35:17
**correspondence** [3] - 55:3, 60:6, 63:6
**corresponding** [1] - 94:3
**cost** [1] - 78:3

**counsel** [34] - 17:14, 17:17, 17:23, 18:22, 20:7, 22:1, 22:23, 25:16, 27:1, 31:11, 32:1, 33:13, 35:19, 35:24, 40:10, 44:23, 51:21, 59:25, 60:6, 60:8, 60:22, 60:24, 61:3, 63:9, 63:19, 64:10, 64:23, 65:3, 65:6, 91:8, 91:21, 95:22
**counsel's** [2] - 69:1, 91:6
**counseling** [1] - 63:11
**country** [1] - 54:13
**couple** [8] - 16:9, 28:21, 43:16, 44:1, 59:6, 67:14, 71:1, 76:21
**course** [8] - 5:3, 19:1, 23:15, 52:4, 55:21, 76:22, 81:17, 95:23
**court** [2] - 4:5, 85:6
**Court** [64] - 1:22, 17:20, 18:8, 19:13, 19:25, 25:25, 26:2, 26:3, 31:15, 31:19, 33:15, 33:17, 33:18, 33:22, 36:8, 36:11, 36:12, 36:21, 37:1, 37:3, 37:6, 37:16, 37:17, 37:19, 38:3, 39:9, 40:11, 41:1, 41:8, 49:12, 49:22, 49:25, 50:6, 52:21, 52:24, 53:1, 53:12, 53:22, 53:24, 54:8, 54:19, 54:20, 54:22, 55:8, 56:13, 56:14, 56:16, 56:17, 56:18, 56:20, 57:2, 62:9, 76:14, 77:3, 77:8, 84:8, 84:24, 85:9, 87:15, 89:6, 92:18, 92:20, 96:16
**COURT** [3] - 1:1, 96:5, 96:8
**Court's** [8] - 7:12, 30:23, 36:5, 40:7, 42:25, 50:5, 79:11, 89:22
**Courthouse** [1] - 1:7
**Courtroom** [1] - 3:25
**courts** [1] - 19:22
**cover** [3] - 12:20, 13:20, 14:1
**covered** [2] - 47:12, 63:22, 89:16
**covers** [1] - 12:19

**COVID** [3] - 31:20, 31:23, 67:8
**COVID-related** [1] - 67:8
**CRC** [1] - 96:16
**criminal** [1] - 95:19
**criticism** [1] - 10:8
**cross** [1] - 51:17
**crosses** [1] - 61:9
**CRR** [1] - 96:16
**cure** [1] - 27:19
**current** [5] - 32:15, 32:25, 33:10, 34:11, 36:1
**custodial** [9] - 5:9, 5:15, 6:5, 6:6, 7:19, 8:3, 43:20, 47:17
**custodian** [1] - 45:8
**custodians** [1] - 45:9
**customers** [6] - 15:13, 15:25, 22:12, 22:14, 22:15, 22:25
**cut** [1] - 86:11
**cutting** [2] - 48:5, 48:10
**CVS** [1] - 3:21

## D

**daily** [1] - 31:22
**Daniel** [1] - 41:12
**dark** [1] - 11:23
**data** [32] - 9:21, 11:7, 11:12, 11:15, 11:20, 12:8, 15:7, 20:1, 20:23, 20:24, 21:22, 21:24, 22:1, 22:4, 23:17, 23:20, 72:7, 76:16, 77:20, 78:1, 78:3, 78:4, 78:6, 78:9, 78:14, 79:6, 79:8, 80:12, 80:24, 81:16, 81:18
**date** [4] - 34:6, 34:8, 34:9, 73:21
**Date** [1] - 96:18
**dates** [3] - 13:17, 33:23, 75:6
**Daubert** [3] - 9:9, 93:17, 94:8
**David** [2] - 15:11, 22:7
**Davie** [4] - 60:11, 62:13, 62:15, 63:1
**DAVIS** [1] - 2:17
**days** [3] - 44:8, 68:4, 78:19
**daytime** [1] - 55:16
**de** [16] - 82:21, 83:4, 83:16, 84:4, 85:22, 85:24, 86:3, 86:14, 86:15, 86:17, 86:19,

88:5, 88:17, 88:22, 90:5
**de-designate** [9] - 83:4, 83:16, 84:4, 85:22, 85:24, 86:19, 88:17, 90:5
**de-designated** [4] - 86:14, 86:15, 86:17, 88:22
**de-designation** [3] - 82:21, 86:3, 88:5
**deadline** [8] - 6:10, 6:15, 9:4, 9:19, 24:11, 41:8, 42:25, 43:2
**deadlines** [1] - 77:9
**deal** [3] - 23:6, 24:6, 27:5
**dealing** [6] - 28:7, 31:3, 42:1, 47:21, 71:10, 72:18
**deals** [2] - 32:5, 42:9
**dealt** [1] - 16:25
**decide** [3] - 31:15, 37:7, 38:4
**decided** [2] - 31:19, 42:2
**decision** [19] - 5:14, 7:20, 7:21, 7:24, 8:1, 8:2, 18:13, 19:20, 27:3, 28:25, 36:7, 36:24, 37:2, 38:4, 47:17, 56:3, 84:3, 86:22, 87:17
**decisions** [6] - 5:15, 17:20, 37:18, 38:8, 84:4, 87:16
**decline** [1] - 86:18
**deem** [1] - 53:24
**deemed** [3] - 49:14, 50:2, 62:5
**deeming** [1] - 52:3
**defendant** [5] - 26:8, 41:20, 90:3, 90:4, 95:18
**Defendant** [1] - 2:15
**defendant-specific** [1] - 41:20
**defendants** [53] - 4:9, 4:11, 11:9, 18:3, 26:12, 28:20, 33:2, 33:4, 33:13, 35:6, 35:15, 35:20, 35:25, 39:5, 39:16, 42:5, 50:15, 50:18, 54:9, 54:10, 69:25, 70:2, 70:20, 71:3, 71:4, 71:9, 72:9, 72:11, 72:22, 74:18, 75:12, 75:24, 79:2, 81:24,

82:2, 83:3, 83:13, 83:21, 83:24, 84:3, 85:1, 85:13, 85:16, 86:12, 86:21, 86:23, 89:13, 90:14, 90:16, 93:6, 93:19, 94:5, 95:2
**Defendants** [7] - 2:11, 2:19, 3:8, 3:12, 3:15, 3:18, 3:21
**defendants'** [12] - 30:1, 31:2, 34:15, 40:21, 41:19, 70:3, 82:23, 82:25, 89:18, 90:11, 91:18
**defense** [7] - 4:13, 6:17, 35:19, 35:24, 40:10, 42:9, 47:20, 64:24, 85:8, 86:16, 87:11
**defenses** [1] - 28:18
**defer** [1] - 20:7
**deficiencies** [2] - 8:12, 35:17
**deficiency** [1] - 54:2
**delay** [1] - 77:11
**delayed** [1] - 24:21
**deliberately** [1] - 57:19
**demonstrate** [2] - 10:2, 10:8
**demonstrated** [3] - 54:10, 74:11, 83:24
**demonstrating** [1] - 68:12
**demonstration** [1] - 12:6
**denied** [6] - 27:16, 27:17, 42:3, 56:2, 58:11, 82:14
**deny** [3] - 80:16, 81:23, 81:24
**departments** [1] - 45:5
**depo** [1] - 8:23
**deponent** [4] - 19:3, 19:4, 67:1
**deponents** [4] - 10:18, 18:15, 19:1, 27:9
**deposed** [6] - 7:7, 7:10, 18:19, 31:20, 52:25, 67:2
**deposing** [3] - 55:17, 67:6, 69:2
**deposition** [44] - 5:9, 5:16, 6:7, 7:23, 9:8, 15:4, 15:5, 15:6, 15:11, 15:14, 15:17, 15:21, 16:6, 18:18, 19:6, 21:17, 21:23, 22:3, 22:8, 22:24,

23:1, 23:14, 23:17, 23:19, 24:4, 27:8, 27:10, 27:20, 28:4, 33:19, 33:20, 33:24, 35:21, 36:4, 40:2, 50:17, 51:3, 55:12, 55:14, 67:8, 79:20, 81:6, 89:19, 93:3

**deposition's** [1] - 51:12

**depositions** [45] - 5:25, 16:4, 16:20, 18:16, 18:23, 18:24, 18:25, 20:15, 25:21, 25:22, 30:5, 30:11, 30:25, 31:6, 31:18, 31:22, 32:15, 33:1, 33:11, 34:11, 34:14, 38:12, 39:2, 39:22, 40:9, 40:17, 40:20, 41:3, 41:8, 41:14, 46:24, 47:22, 50:20, 51:15, 53:19, 54:11, 54:13, 54:15, 55:24, 57:18, 58:16, 90:1, 92:2

**Deputy** [1] - 3:25

**described** [4] - 8:11, 27:6, 29:18, 71:10

**description** [1] - 46:14

**designate** [10] - 83:4, 83:16, 84:4, 84:22, 85:22, 85:24, 86:19, 88:17, 90:5

**designated** [12] - 83:22, 84:1, 84:6, 84:18, 84:22, 86:14, 86:15, 86:17, 87:7, 88:22, 90:2

**designating** [1] - 85:3

**designation** [6] - 82:21, 83:25, 84:15, 86:3, 87:2, 88:5

**designations** [4] - 83:3, 85:5, 86:13, 89:18

**designee** [1] - 67:7

**despite** [1] - 41:4

**detail** [2] - 15:9, 73:9

**detailed** [3] - 10:4, 13:16, 13:21

**determination** [5] - 37:12, 47:7, 69:9, 86:17, 90:4

**determinations** [1] - 87:13

**determine** [13] - 37:3, 49:13, 50:4, 53:11, 53:15, 57:1, 72:7, 72:9, 73:9, 74:23,

75:12, 80:10, 92:19

**determined** [1] - 83:4

**development** [3] - 9:2, 9:21, 10:12

**dialing** [1] - 96:1

**difference** [3] - 63:17, 89:22, 89:24

**differences** [2] - 35:10, 79:1

**different** [14] - 4:14, 10:10, 21:3, 22:21, 29:9, 36:20, 36:23, 49:3, 53:2, 68:14, 72:8, 75:15, 78:25, 89:1

**differing** [1] - 89:3

**difficult** [2] - 16:4, 25:15

**difficulty** [1] - 41:7

**direct** [3] - 66:7, 83:19, 88:4

**directed** [9] - 6:1, 14:2, 54:5, 83:15, 83:23, 87:20, 88:2, 88:6, 91:5

**direction** [3] - 7:12, 57:10, 87:21

**directions** [1] - 86:22

**directive** [1] - 79:11

**directly** [1] - 57:11

**disagree** [3] - 85:21, 88:25, 89:20

**disagreement** [1] - 32:11

**disallow** [1] - 94:15

**disallowed** [1] - 94:22

**disappointed** [1] - 29:7

**disclose** [2] - 23:22, 51:22

**disclosures** [1] - 44:17

**discontinued** [2] - 13:23

**discover** [1] - 24:15

**discovery** [50] - 8:10, 8:11, 16:12, 16:13, 16:15, 16:17, 17:22, 21:12, 24:10, 24:16, 24:17, 27:13, 28:2, 28:7, 28:8, 39:10, 39:16, 39:17, 41:20, 42:10, 42:19, 44:25, 46:1, 54:14, 72:21, 72:24, 75:19, 77:9, 79:10, 79:12, 79:19, 85:3, 87:1, 90:19, 91:24, 92:1, 92:4, 92:10, 93:4, 93:6, 93:18, 94:7, 94:14,

94:15, 94:19, 94:21

**discovery's** [1] - 19:24

**discrepancies** [1] - 53:2

**discrete** [1] - 46:24

**discuss** [6] - 34:10, 34:13, 40:1, 65:23, 75:18, 82:1

**discussed** [5] - 35:1, 53:8, 61:6, 63:20, 71:4

**discussion** [13] - 10:24, 11:25, 22:23, 29:25, 39:24, 44:18, 60:23, 61:3, 61:7, 61:24, 61:25, 77:11, 80:13

**discussions** [2] - 33:15, 81:12

**dismiss** [1] - 36:14

**dispensed** [2] - 73:16, 74:15

**dispensing** [3] - 77:24, 77:25, 79:1

**dispute** [1] - 41:9

**disputed** [1] - 76:9

**disputes** [4] - 32:2, 49:25, 58:1, 92:20

**distribute** [1] - 79:18

**distribution** [1] - 62:16

**District** [2] - 19:18, 19:21

**DISTRICT** [2] - 1:1, 1:1

**divide** [1] - 17:12

**docketing** [1] - 29:8

**doctrine** [2] - 5:17, 7:22

**document** [26] - 13:20, 18:16, 18:18, 19:11, 20:14, 23:10, 27:7, 28:3, 28:22, 28:23, 29:17, 42:21, 42:22, 45:25, 61:10, 63:20, 64:2, 68:12, 68:13, 79:15, 84:12, 84:13, 85:9, 86:2

**document-by-document** [2] - 68:13, 86:2

**documentation** [1] - 11:21

**documents** [88] - 9:1, 9:5, 9:6, 9:8, 10:1, 10:5, 10:12, 11:2, 12:18, 12:21, 13:17, 13:21, 13:25, 14:2, 14:6, 14:13, 15:16, 16:3, 16:5, 16:12,

16:13, 16:16, 16:21, 18:20, 18:23, 21:15, 23:12, 23:13, 23:14, 24:22, 25:20, 26:9, 31:13, 35:14, 41:21, 42:20, 43:19, 44:3, 44:5, 46:12, 58:24, 59:9, 59:10, 59:12, 59:16, 59:23, 60:1, 60:19, 60:23, 62:23, 63:4, 63:5, 63:14, 64:1, 66:4, 67:22, 72:15, 74:12, 80:3, 80:14, 81:14, 82:22, 83:4, 83:19, 83:20, 84:1, 84:5, 84:17, 85:2, 85:23, 86:4, 86:7, 86:8, 86:14, 86:15, 86:16, 86:24, 87:2, 87:6, 87:8, 87:9, 87:11, 88:4, 88:18, 88:22, 93:11, 93:12, 94:4

**done** [19] - 6:16, 10:2, 10:19, 10:25, 25:14, 27:11, 43:25, 44:2, 46:17, 47:13, 49:15, 51:18, 52:19, 57:11, 57:20, 81:9, 83:18, 84:5, 88:23

**Dong** [1] - 55:17

**Dong's** [1] - 55:11

**doom** [1] - 54:7

**doomed** [2] - 54:3, 55:4

**door** [2] - 28:14, 28:16

**dose** [4] - 73:14, 73:16, 73:18, 73:22

**down** [4] - 72:5, 72:17, 75:3, 75:10

**downgrade** [1] - 31:12

**downstream** [3] - 15:13, 15:24, 22:12

**draft** [1] - 71:11

**drafted** [1] - 91:13

**dramatic** [1] - 76:25

**drug** [5] - 45:25, 74:4, 77:25, 81:2, 81:3

**drugs** [1] - 94:20

**Drugs** [1] - 3:12

**Du** [3] - 7:6, 7:10, 39:22

**Duane** [1] - 42:15

**DUANE** [1] - 2:8

**due** [7] - 7:17, 15:18, 24:2, 25:20, 33:21, 59:13, 65:19

**dump** [2] - 16:2, 28:4

**dumping** [2] - 24:3, 25:19

**dumps** [3] - 23:10, 28:22, 28:23

**duplicative** [2] - 68:10, 73:7

**during** [15] - 7:4, 12:15, 15:4, 16:17, 21:23, 22:3, 23:17, 25:21, 35:2, 50:25, 55:16, 58:15, 58:16, 61:6, 85:3

**duty** [1] - 53:13

## E

**early** [5] - 5:15, 7:20, 21:8, 47:18, 79:3

**East** [1] - 3:20

**easy** [3] - 44:16, 44:17, 44:20

**economic** [1] - 35:8

**effect** [4] - 42:7, 49:23, 52:9, 84:23

**effectively** [1] - 67:6

**efficiency** [1] - 4:15

**efficient** [3] - 51:19, 84:8, 85:4

**effort** [3] - 5:2, 16:2, 17:25

**efforts** [1] - 41:4

**eight** [2] - 77:25, 80:24

**eight-year** [2] - 77:25, 80:24

**Eisenhower** [1] - 1:14

**either** [4] - 6:14, 21:8, 44:14, 62:3

**elected** [1] - 18:24

**electronic** [1] - 42:22

**ELLIS** [1] - 3:13

**elsewhere** [1] - 73:6

**email** [39] - 21:19, 45:3, 51:22, 58:24, 60:3, 60:17, 60:18, 60:22, 60:23, 61:6, 61:8, 61:21, 61:22, 61:24, 62:3, 62:5, 62:6, 62:9, 62:17, 63:12, 64:3, 64:8, 64:10, 64:15, 64:25, 66:6, 66:8, 66:10, 66:11, 67:15, 67:16, 67:17, 67:19, 68:16, 69:5, 69:7, 69:11

**emailed** [1] - 55:16

**emails** [21] - 46:13, 61:19, 63:23, 64:13, 64:14, 64:16, 64:17, 64:22, 65:2, 65:11, 65:17, 65:21, 66:5, 67:3, 67:4, 67:10, 68:10, 68:20, 69:3,

69:6, 76:21
**employee** [3] - 61:21, 66:8
**employees** [1] - 64:17
**Employers** [1] - 35:3
**Empower** [6] - 11:7, 11:8, 11:12, 21:24, 22:1, 23:20
**enable** [1] - 28:1
**enclose** [1] - 60:19
**end** [14] - 24:2, 29:21, 30:6, 30:16, 34:16, 41:16, 64:13, 74:16, 77:18, 79:4, 79:22, 80:9, 81:1, 81:10
**endeavoring** [1] - 29:17
**ended** [2] - 71:23, 76:5
**ending** [1] - 66:11
**ends** [1] - 80:13
**enernalist** [1] - 78:3
**enforce** [2] - 53:17, 88:8
**enforced** [2] - 49:22, 50:6
**engage** [1] - 5:7
**engaged** [2] - 41:14, 64:24
**engaging** [1] - 33:14
**enter** [1] - 93:4
**entered** [5] - 18:1, 70:13, 71:19, 72:1, 75:20
**entertain** [1] - 19:13
**entire** [3] - 16:21, 53:6, 83:16
**entirely** [1] - 16:14
**entities** [7] - 21:4, 38:20, 38:24, 39:2, 39:14, 39:17, 40:15
**entitled** [6] - 61:10, 63:24, 65:13, 68:22, 69:9, 96:14
**entity** [1] - 21:5
**entree** [1] - 81:18
**envisions** [1] - 36:11
**ERIC** [1] - 3:10
**Eric** [1] - 9:12
**ERNEST** [1] - 3:3
**Ernie** [2] - 20:16, 22:10
**ESI** [1] - 10:3
**especially** [3] - 53:18, 53:22, 54:10
**ESQUIRE** [22] - 1:13, 1:16, 1:19, 1:20, 2:2, 2:5, 2:8, 2:9, 2:9, 2:10, 2:14, 2:17, 2:17, 3:3, 3:3, 3:4,

3:10, 3:10, 3:13, 3:17, 3:20, 3:24
**essentially** [3] - 60:2, 60:5, 76:8
**establish** [5] - 77:19, 78:20, 91:19, 92:6, 92:16
**estimates** [5] - 73:18, 78:18, 78:20, 79:4, 79:5
**et** [1] - 63:21
**Ethan** [1] - 38:14
**ETHAN** [1] - 3:4
**Europe** [1] - 22:16
**evaluate** [1] - 52:21
**evaluated** [3] - 49:12, 53:4, 68:24
**evaluating** [1] - 54:22
**evasive** [1] - 57:19
**eve** [3] - 16:3, 23:14, 28:4
**evening** [1] - 31:11
**event** [2] - 61:12, 71:24
**eventually** [1] - 49:8
**evidence** [1] - 77:22
**evidences** [1] - 62:7
**exact** [1] - 81:19
**exactly** [4] - 40:25, 61:6, 63:15, 80:8
**exaggerates** [1] - 43:24
**example** [2] - 13:3, 13:22
**examples** [7] - 43:16, 44:1, 44:10, 51:15, 51:16, 57:14, 78:16
**excerpts** [1] - 90:1
**exchanged** [1] - 31:12
**excuse** [3] - 56:20, 60:21, 64:15
**executing** [1] - 87:4
**exemplar** [9] - 73:9, 74:10, 75:11, 80:8, 80:23, 81:13, 81:15, 84:10, 84:18
**exemplars** [5] - 81:17, 81:20, 82:11, 88:4, 88:17
**exhaustive** [1] - 27:11
**Exhibits** [1] - 82:24
**existed** [1] - 11:2
**exists** [1] - 80:25
**expect** [12] - 29:10, 58:5, 58:13, 70:22, 82:3, 86:12, 86:13, 86:16, 86:23, 87:10, 87:14, 90:2
**expected** [4] - 30:6, 43:22, 67:25, 90:21

**expeditiously** [1] - 69:11
**expense** [1] - 27:23
**expert** [9] - 15:18, 28:7, 92:2, 93:4, 93:15, 93:16, 93:18, 94:7, 94:18
**experts** [7] - 11:15, 11:18, 12:7, 15:20, 92:2, 92:3, 93:14
**explain** [1] - 78:15
**explained** [3] - 44:12, 76:23, 82:12
**explaining** [1] - 76:22
**explicitly** [1] - 50:22
**extension** [3] - 43:12, 43:13, 44:22
**extensive** [1] - 83:24
**extent** [21] - 9:5, 13:9, 18:15, 27:22, 43:24, 46:5, 61:23, 63:3, 65:21, 66:9, 67:15, 68:13, 72:19, 75:6, 75:11, 80:25, 83:11, 89:20, 89:22, 89:25, 94:19
**extraordinary** [1] - 5:2, 56:25
**extrapolate** [3] - 49:17, 53:20, 73:21

# F

**F.R.D** [1] - 19:17
**face** [3] - 66:12, 80:23, 91:24
**facilitate** [1] - 87:1
**facility** [6] - 60:11, 62:13, 62:15, 63:1, 63:2
**facing** [1] - 25:12
**fact** [23] - 6:3, 7:23, 11:11, 11:17, 16:13, 16:16, 27:9, 35:13, 35:17, 40:8, 61:4, 61:25, 62:8, 63:8, 63:16, 67:1, 72:3, 86:1, 91:4, 91:7, 91:17, 92:4, 94:12
**factor** [1] - 68:10
**facts** [2] - 53:23, 53:25
**factual** [1] - 66:2
**fail** [1] - 51:5
**failing** [1] - 16:14
**failings** [1] - 28:2
**failure** [1] - 16:24
**fair** [1] - 26:23
**faith** [6] - 17:24, 54:6, 54:14, 56:23, 75:17, 85:1
**fall** [1] - 50:17

**falls** [1] - 63:15
**far** [9] - 6:17, 13:6, 19:4, 29:10, 42:20, 43:21, 47:1, 82:8, 94:17
**farfetched** [1] - 52:7
**fathom** [1] - 61:1
**FDA** [6] - 60:10, 60:19, 62:19, 63:3, 63:21, 86:5
**February** [1] - 88:20
**federal** [2] - 19:12, 56:8
**feedback** [1] - 36:11
**FELDMAN** [3] - 3:4, 38:14, 38:17
**Feldman** [2] - 38:14, 39:25
**felt** [1] - 40:9
**few** [9] - 20:13, 22:24, 29:18, 33:11, 41:5, 46:22, 68:4, 70:9, 75:15
**fifth** [1] - 11:2
**figure** [2] - 30:21, 74:25
**file** [15] - 5:9, 5:15, 6:5, 6:6, 7:11, 47:17, 49:9, 50:20, 51:8, 52:9, 52:13, 53:13, 56:1, 56:19, 86:19
**filed** [12] - 6:4, 6:10, 7:11, 33:12, 35:3, 35:8, 35:12, 38:23, 48:1, 50:13, 51:23, 58:15
**files** [3] - 8:3, 43:20, 43:21
**filing** [1] - 7:16
**filings** [1] - 8:2
**fill** [3] - 13:12, 72:13, 72:15
**filling** [1] - 35:13
**final** [5] - 13:24, 21:6, 87:12, 89:8, 93:3
**finally** [1] - 24:18
**fine** [3] - 9:17, 9:18, 71:22
**finer** [2] - 11:24, 13:8
**finished** [5] - 73:14, 73:16, 73:18, 73:22, 75:25
**fire** [1] - 18:6
**firm** [2] - 9:4, 60:7
**firmly** [1] - 60:25
**first** [19] - 4:23, 5:6, 9:14, 9:18, 17:15, 19:10, 23:7, 40:1, 46:7, 51:20, 55:11, 55:19, 59:7, 61:13,

61:16, 61:20, 71:18, 76:4, 88:21
**five** [4] - 49:3, 51:15, 53:18, 88:3, 88:17
**fix** [2] - 84:25, 85:5
**flood** [1] - 84:16
**Floor** [1] - 2:14
**Florida** [3] - 60:11, 62:13, 62:15
**focus** [2] - 94:4, 94:7
**focusing** [1] - 93:19
**follow** [4] - 4:4, 4:8, 87:11, 95:12
**followed** [2] - 86:21, 94:17
**following** [2] - 10:9, 14:3
**Footnotes** [1] - 86:2
**FOR** [1] - 1:1
**forcing** [1] - 39:16
**forecast** [1] - 78:10
**forecasting** [1] - 80:24
**forecasts** [6] - 73:18, 74:3, 74:7, 75:4, 78:7, 81:3
**forego** [1] - 58:1
**foregoing** [1] - 96:13
**foreshadow** [2] - 45:15, 54:2
**form** [1] - 66:22
**format** [2] - 11:18, 12:10
**formulate** [1] - 65:9
**formulated** [1] - 68:2
**formulating** [2] - 64:18, 64:20
**forth** [4] - 13:16, 46:21, 86:22, 94:1
**forthcoming** [1] - 54:15
**forward** [11] - 8:3, 9:7, 15:21, 18:25, 29:22, 36:23, 47:8, 47:11, 57:17, 75:20
**forwarding** [1] - 60:22
**forwards** [1] - 60:19
**four** [3] - 5:25, 17:23, 30:11
**framework** [1] - 63:7
**frankly** [4] - 16:11, 85:7, 91:24, 93:22
**free** [1] - 38:4
**FREEMAN** [1] - 1:13
**frequency** [3] - 18:5, 59:8, 59:20
**frequent** [1] - 59:20
**Fresenius** [1] - 19:19
**fresh** [2] - 9:23, 23:6
**Friday** [1] - 76:18
**frivolous** [2] - 53:13,

53:14
**front** [2] - 44:20, 78:8
**fruitful** [1] - 17:4
**frustrated** [1] - 27:16
**frustrating** [1] - 28:2
**frustration** [1] - 25:12
**full** [2] - 26:22, 46:12
**fully** [4] - 5:23, 6:5, 6:6, 78:22
**fulsome** [1] - 83:18
**fulsomely** [1] - 85:21
**fundamental** [2] - 77:6, 78:18
**future** [5] - 17:1, 58:1, 58:9, 58:12, 82:10

### G

**Gallagher** [3] - 64:4, 64:21, 64:22
**gap** [2] - 72:15, 75:1
**gaps** [3] - 43:14, 45:16, 72:13
**gather** [1] - 91:3
**gathered** [1] - 91:3
**general** [2] - 9:9, 92:2
**generally** [2] - 4:8, 33:8
**generic** [1] - 81:2
**GEOPPINGER** [2] - 3:17, 70:19
**Geoppinger** [1] - 70:19
**Georgia** [2] - 2:18, 19:21
**given** [12] - 25:1, 35:23, 51:12, 52:13, 72:5, 75:11, 76:14, 77:4, 77:19, 81:2, 81:16, 86:1
**gleaned** [1] - 12:8
**glitch** [1] - 59:13
**goal** [1] - 80:15
**Goldberg** [18] - 4:12, 5:21, 7:2, 32:18, 35:20, 35:23, 39:23, 40:16, 47:24, 47:25, 50:21, 50:23, 52:15, 52:16, 54:25, 56:6, 57:5, 57:23
**GOLDBERG** [20] - 2:8, 4:12, 5:22, 7:1, 7:4, 8:7, 32:16, 32:18, 47:24, 48:1, 48:5, 48:10, 48:14, 48:16, 48:18, 48:24, 52:17, 56:5, 56:7, 95:2
**Goldberg's** [1] - 55:9
**Goldenberg** [9] - 14:22, 14:23, 20:14, 21:22, 22:11, 22:18,

23:4, 27:25, 28:9
**GOLDENBERG** [7] - 2:5, 2:5, 14:21, 14:24, 16:9, 23:5, 23:9
**Goldenberg's** [2] - 25:9, 25:14
**GOLOMB** [1] - 1:16
**good-faith** [1] - 17:24
**goof** [1] - 9:15
**GORDON** [2] - 2:13
**grace** [1] - 16:14
**grant** [2] - 7:5, 43:12
**granted** [2] - 6:20, 42:4
**great** [3] - 4:16, 31:1, 76:3
**greater** [1] - 27:19
**Greenberg** [1] - 89:12
**GREENBERG** [1] - 2:16
**gritty** [1] - 45:13
**ground** [1] - 92:19
**Group** [1] - 19:17
**group** [1] - 41:13
**guess** [4] - 16:24, 17:3, 44:4, 82:10
**guidance** [14] - 37:4, 51:12, 57:14, 57:25, 58:8, 72:5, 83:16, 83:19, 84:2, 84:25, 86:1, 86:18, 87:16, 87:21
**guide** [1] - 71:6

### H

**half** [2] - 30:20, 33:19
**hand** [6] - 4:15, 13:7, 78:12, 78:19, 78:24, 79:25
**handle** [1] - 75:15
**handled** [5] - 70:23, 89:23, 89:25, 94:12, 94:21
**handling** [1] - 25:14
**hands** [2] - 55:10, 69:1
**hang** [2] - 81:20, 95:4
**hang-up** [1] - 81:20
**happy** [5] - 4:14, 14:25, 17:2, 17:7, 25:3
**hard** [4] - 6:16, 32:20, 42:21, 84:24
**hard-copy** [1] - 42:21
**HARKINS** [5] - 2:17, 89:9, 89:12, 89:15, 90:7
**Harkins** [1] - 89:12
**harm** [1] - 27:19

**head** [1] - 46:12
**heads** [1] - 45:5
**Healthcare** [1] - 2:12
**hear** [17] - 11:16, 19:5, 19:7, 20:4, 25:16, 29:14, 32:21, 47:4, 48:13, 48:18, 48:19, 50:23, 61:15, 65:14, 76:1, 88:10, 88:13
**heard** [9] - 25:18, 25:23, 27:24, 38:13, 55:23, 76:7, 88:20, 90:20, 90:22
**hearing** [14] - 4:13, 7:4, 27:1, 29:1, 32:14, 39:12, 51:1, 52:12, 55:15, 55:20, 56:17, 88:21, 95:8, 95:15
**hearings** [3] - 51:1, 51:11, 57:7
**heart** [1] - 86:11
**heavily** [1] - 55:20
**Heinz** [5] - 17:14, 20:7, 20:11, 24:7, 29:18
**HEINZ** [3] - 3:3, 20:9, 20:11
**held** [4] - 4:1, 54:4, 62:10, 71:21
**hello** [4] - 14:21, 83:8, 92:24
**help** [4] - 33:19, 38:11, 60:9, 60:14
**helpful** [3] - 27:20, 69:4, 78:16
**hesitating** [1] - 37:21
**Hetero** [15] - 3:12, 8:10, 8:19, 9:2, 9:6, 9:11, 9:13, 10:18, 13:18, 14:11, 22:2, 58:18, 58:19
**Hetero's** [2] - 8:11, 9:7
**highly** [1] - 65:23
**Highway** [1] - 2:3
**Hill** [1] - 9:13
**HILL** [1] - 3:9
**Hilton** [2] - 61:18, 65:15
**HILTON** [6] - 1:20, 61:17, 65:16, 68:7, 68:9, 69:22
**hired** [3] - 60:9, 60:14, 60:16
**holding** [1] - 44:5
**Holdings** [1] - 19:19
**holes** [1] - 13:12
**honestly** [1] - 20:2
**Honik** [1] - 30:9
**HONIK** [3] - 1:16,

1:16, 30:9
**Honor** [163] - 4:12, 4:19, 5:12, 5:22, 5:24, 6:1, 6:8, 6:19, 6:22, 7:1, 7:5, 7:7, 8:5, 8:15, 8:18, 9:12, 9:25, 10:9, 10:10, 12:14, 12:24, 13:15, 14:12, 14:21, 14:25, 17:7, 17:10, 17:22, 17:24, 18:12, 18:14, 19:15, 19:25, 20:9, 22:9, 22:10, 22:13, 22:20, 23:5, 25:7, 25:8, 26:15, 26:18, 26:19, 26:21, 26:24, 26:25, 27:2, 27:6, 29:14, 30:9, 30:18, 31:8, 32:8, 32:16, 32:18, 32:21, 33:3, 34:4, 34:12, 36:10, 37:1, 37:14, 38:14, 38:19, 39:4, 39:19, 40:5, 40:24, 41:12, 42:14, 42:17, 43:8, 43:10, 43:11, 43:17, 43:22, 45:10, 45:22, 46:20, 47:4, 47:15, 47:24, 48:1, 48:10, 48:18, 48:19, 48:24, 49:5, 49:18, 50:9, 50:11, 50:13, 50:15, 51:1, 51:10, 51:13, 51:22, 52:5, 52:8, 52:12, 52:17, 52:18, 53:17, 55:11, 55:13, 55:15, 55:16, 55:18, 55:25, 56:3, 56:5, 56:7, 57:3, 57:6, 57:8, 57:12, 58:20, 59:2, 59:5, 61:17, 62:2, 64:6, 65:16, 67:14, 68:7, 68:25, 69:16, 69:22, 70:4, 70:9, 70:17, 70:19, 71:14, 71:17, 75:23, 77:3, 77:5, 77:16, 79:14, 80:6, 80:17, 80:18, 82:17, 82:18, 83:8, 83:18, 84:15, 85:10, 87:19, 88:14, 89:3, 89:9, 90:7, 90:15, 90:18, 92:24, 94:25, 95:2, 95:23, 96:5
**Honor's** [7] - 27:3, 27:6, 50:18, 77:13, 84:3, 88:25, 89:16
**Honorable** [3] - 3:24, 4:1, 4:2
**HONORABLE** [1] -

1:10
**hope** [4] - 6:21, 29:11, 76:1, 85:1
**hoped** [1] - 44:18
**hopeful** [2] - 30:15, 45:21
**hopefully** [6] - 8:2, 29:19, 29:20, 33:16, 33:24, 58:8
**hoping** [3] - 5:14, 47:10, 89:21
**hour** [2] - 55:19, 95:20
**hours** [3] - 15:6, 17:23, 22:24
**Huahai** [1] - 2:12
**Human** [1] - 62:10
**hundreds** [3] - 59:10, 84:16, 86:24

### I

**i.e** [1] - 62:3
**idea** [3] - 19:23, 46:1, 93:9
**identified** [4] - 13:5, 19:3, 45:7, 89:15
**identify** [4] - 4:5, 9:22, 10:1, 10:13, 56:24, 74:3, 84:12, 86:14, 87:10, 90:3
**identifying** [2] - 45:8, 84:16
**ignored** [1] - 87:17
**III** [3] - 9:3, 9:21, 10:12
**imagine** [4] - 4:13, 28:3, 38:5, 52:5
**immediate** [1] - 95:12
**immediately** [1] - 21:1
**impact** [2] - 36:9, 88:12
**implicate** [1] - 65:3
**implicated** [1] - 91:7
**imply** [1] - 59:21
**importance** [1] - 18:8
**important** [13] - 16:20, 17:19, 17:20, 26:9, 44:12, 46:7, 48:25, 53:22, 57:21, 77:13, 79:14, 94:1, 94:8
**importantly** [2] - 18:2, 49:16
**imposed** [2] - 87:18
**imposing** [1] - 86:20
**improper** [2] - 46:18, 85:5
**improperly** [1] - 84:17
**impurity** [1] - 66:20
**IN** [1] - 1:4
**inadequacy** [1] - 59:21
**Inc** [6] - 2:15, 2:19,

*2:20, 3:8, 3:15, 3:21*
**inclined** [1] - 43:12
**include** [2] - 36:25,
    81:23
**included** [7] - 13:21,
    16:11, 36:19, 53:6,
    63:21, 64:24, 65:1
**including** [5] - 13:19,
    23:16, 35:6, 35:9,
    36:14, 45:5, 45:6,
    72:24, 79:17
**incomplete** [2] -
    12:17, 12:18
**inconsistent** [1] -
    94:16
**increasing** [1] - 18:5
**incredible** [1] - 25:18
**indeed** [2] - 29:20,
    87:1
**independently** [1] -
    49:13
**India** [2] - 21:5, 30:13
**indicate** [1] - 62:24
**indicated** [5] - 7:7,
    27:25, 28:25, 31:15,
    84:9
**indicates** [1] - 63:20
**indications** [1] - 44:12
**individual** [7] - 15:11,
    45:7, 89:21, 90:3,
    91:2, 91:12, 94:20
**individually** [1] -
    68:25
**Industries** [1] - 2:19
**inform** [1] - 37:1
**information** [35] -
    12:8, 15:23, 15:24,
    22:13, 23:24, 24:2,
    40:16, 44:17, 62:2,
    62:4, 63:8, 65:9,
    67:20, 72:12, 73:5,
    73:8, 73:11, 73:13,
    74:7, 74:14, 74:18,
    75:2, 75:7, 75:11,
    77:6, 79:17, 80:1,
    80:11, 91:3, 91:5,
    91:18, 91:20, 94:17,
    94:19
**informed** [2] - 21:14,
    33:12
**inhouse** [2] - 64:23,
    65:6
**initial** [3] - 42:25, 81:1,
    81:12
**initiate** [2] - 55:2, 93:6
**initiated** [1] - 84:19
**injury** [1] - 40:20
**insinuating** [1] - 81:5
**inspection** [3] - 60:10,
    62:19, 63:21

**instance** [1] - 65:7
**instances** [2] - 18:21,
    18:23
**instituted** [1] - 92:8
**institutionalized** [1] -
    92:9
**instructed** [1] - 85:22
**insufficient** [1] - 54:8
**intend** [2] - 7:20,
    49:17
**intended** [4] - 6:3,
    7:11, 29:16, 35:20
**intent** [1] - 91:1
**intention** [1] - 50:14
**interested** [2] - 27:25,
    76:11
**interference** [1] - 6:24
**international** [2] -
    31:21, 31:24
**Internet** [1] - 33:21
**interpreter** [1] - 52:25
**interrogatories** [8] -
    71:25, 90:12, 90:25,
    91:16, 93:11, 93:21,
    94:3, 94:12
**interrogatory** [2] -
    72:14, 93:13
**interrupt** [3] - 32:19,
    73:25, 85:14
**interspersed** [1] -
    41:21
**intervention** [2] -
    33:17, 50:5
**inventory** [7] - 73:17,
    78:7, 78:11, 78:19,
    78:24, 79:13, 79:16
**investigated** [1] - 68:1
**invited** [1] - 31:13
**involve** [1] - 45:25
**involved** [5] - 43:3,
    63:11, 63:19, 65:8,
    78:2
**involving** [3] - 5:8,
    8:10, 64:4
**irbesartan** [1] - 46:1
**isolation** [1] - 23:10
**issue** [82] - 5:25, 7:20,
    7:21, 8:9, 8:13, 8:18,
    8:24, 9:11, 12:16,
    12:17, 14:18, 14:19,
    17:8, 20:5, 22:17,
    23:1, 29:5, 29:19,
    31:17, 32:5, 33:2,
    36:18, 38:17, 39:13,
    39:22, 40:4, 41:19,
    42:6, 42:8, 47:17,
    47:23, 50:8, 52:16,
    52:22, 55:7, 55:20,
    57:22, 58:3, 58:7,
    58:8, 58:17, 59:1,

59:15, 59:19, 60:15,
    61:13, 61:16, 63:2,
    63:6, 64:14, 64:19,
    66:19, 67:13, 69:19,
    69:21, 69:24, 70:6,
    71:9, 71:12, 75:21,
    77:11, 80:5, 80:9,
    82:16, 82:19, 83:1,
    83:2, 83:7, 85:12,
    86:4, 86:20, 87:14,
    88:21, 88:24, 89:5,
    89:8, 89:15, 89:17,
    90:3, 90:5, 90:13,
    91:17
**issued** [3] - 18:13,
    29:8, 91:25
**issues** [47] - 4:14,
    4:21, 5:4, 8:20, 8:21,
    9:20, 15:12, 16:11,
    17:13, 17:15, 17:22,
    18:4, 18:10, 20:8,
    26:23, 27:4, 27:12,
    29:21, 30:4, 30:14,
    31:5, 31:10, 31:19,
    32:6, 32:10, 33:11,
    33:14, 33:16, 33:21,
    36:14, 36:22, 38:7,
    41:20, 44:6, 46:11,
    49:25, 53:8, 54:18,
    54:20, 60:10, 60:25,
    62:25, 63:11, 67:8,
    70:9, 72:20, 79:21
**issuing** [1] - 27:18
**IT** [1] - 46:12
**item** [4] - 4:10, 40:19,
    47:19
**item-by-item** [1] - 4:10
**items** [5] - 13:11,
    29:18, 47:3, 63:13,
    91:9
**iterations** [1] - 13:3
**iterative** [1] - 68:14
**itself** [15] - 5:9, 22:20,
    38:18, 41:2, 60:18,
    61:20, 62:1, 62:11,
    62:25, 63:6, 63:13,
    68:6, 68:18, 77:15

### J

**Jeff** [1] - 70:19
**JEFFREY** [1] - 3:17
**Jens** [4] - 64:16,
    66:18, 67:7, 68:16
**JERSEY** [1] - 1:1
**Jersey** [4] - 1:8, 1:14,
    3:7, 3:11
**Jessica** [3] - 17:14,
    20:11, 42:14
**JESSICA** [2] - 2:9, 3:3
**Jinsheng** [1] - 45:2

**job** [1] - 25:14
**JOHN** [1] - 3:6
**John** [2] - 17:10,
    26:16
**Johns** [1] - 19:4
**join** [1] - 95:5
**JR** [1] - 3:6
**Judge** [9] - 9:16,
    11:8, 11:25, 14:17,
    28:6, 38:5, 48:5,
    72:4, 83:14, 84:2,
    84:9, 85:14, 87:16,
    88:2, 88:12, 88:16,
    91:11, 91:15, 91:25,
    93:7, 94:11, 94:23,
    95:4, 95:5, 95:6,
    95:7, 95:12, 95:14,
    95:25
**JUDGE** [122] - 4:3,
    4:16, 4:22, 5:13,
    6:12, 6:24, 7:3, 7:13,
    8:8, 8:17, 9:10, 9:17,
    12:12, 12:25, 13:13,
    14:7, 14:15, 14:18,
    14:23, 16:8, 17:8,
    20:10, 23:4, 23:8,
    25:6, 26:17, 27:15,
    29:24, 30:17, 31:1,
    32:3, 32:11, 32:14,
    32:17, 32:22, 33:5,
    34:1, 34:7, 34:17,
    34:20, 34:23, 36:15,
    37:5, 37:21, 37:24,
    38:11, 38:16, 40:12,
    41:10, 41:17, 42:16,
    43:6, 43:9, 45:21,
    45:23, 46:19, 47:6,
    47:16, 47:25, 48:3,
    48:7, 48:12, 48:15,
    48:17, 48:20, 50:7,
    50:10, 52:15, 54:23,
    56:6, 57:16, 58:21,
    59:4, 61:15, 62:20,
    63:18, 65:14, 67:13,
    68:8, 69:4, 69:17,
    69:20, 69:23, 70:7,
    70:15, 70:18, 71:7,
    71:16, 73:1, 73:24,
    74:2, 74:17, 75:22,
    76:1, 80:4, 80:16,
    80:19, 81:22, 82:19,
    83:9, 83:12, 85:11,
    86:9, 88:10, 89:7,
    89:11, 89:14, 89:24,
    90:9, 90:17, 92:22,
    93:1, 94:10, 95:1,
    95:3, 95:9, 95:13,
    95:17, 95:21, 95:24,
    96:6, 96:9
**judge** [1] - 87:3

**Judicial** [1] - 3:24
**July** [3] - 45:7, 65:18,
    66:24
**Jun** [1] - 39:22
**June** [28] - 1:8, 5:10,
    7:24, 9:4, 9:18,
    10:14, 10:16, 10:17,
    14:8, 14:13, 21:13,
    30:7, 30:12, 33:23,
    34:6, 34:9, 41:3,
    41:5, 42:24, 42:25,
    43:5, 43:12, 43:14,
    45:15, 45:18, 47:9,
    47:14, 96:18

### K

**KANNER** [1] - 1:19
**Karen** [2] - 66:9, 68:16
**KATZ** [1] - 1:13
**keep** [5] - 26:6, 72:12,
    73:15, 75:2, 79:24
**Kelly** [1] - 85:15
**KELLY** [1] - 2:10
**keyboard** [1] - 32:23
**kind** [7] - 11:6, 11:7,
    11:9, 11:24, 46:14,
    53:18, 56:15
**kinds** [1] - 53:8
**KIRKLAND** [1] - 3:13
**KIRTLAND** [1] - 2:2
**knowledge** [2] -
    66:20, 67:10
**known** [1] - 38:22
**knows** [2] - 52:24,
    57:13
**KOSCHINEG** [2] - 3:3,
    22:9
**Koschineg** [3] - 20:16,
    22:6, 22:10
**KRISTEN** [1] - 3:20
**Kristen** [4] - 64:9,
    64:11, 75:23, 80:20
**Kugler** [10] - 3:24,
    38:5, 91:25, 94:23,
    95:4, 95:5, 95:7,
    95:12, 95:14, 95:25

### L

**Laborers** [1] - 35:3
**Labs** [2] - 3:12, 10:25
**laid** [2] - 42:18, 94:16
**language** [1] - 68:15
**laptops** [3] - 44:16,
    46:10, 46:14
**large** [3] - 16:11, 20:1,
    43:24
**largely** [3] - 18:11,
    76:25, 91:5
**larger** [1] - 23:11

**larry** [1] - 3:25
**Lasalle** [1] - 2:6
**last** [19] - 7:7, 7:15, 9:25, 11:6, 13:20, 16:23, 18:13, 20:25, 24:22, 25:20, 28:23, 29:18, 44:19, 44:23, 45:1, 64:2, 76:7, 95:10, 95:16
**last-minute** [1] - 28:23
**late** [3] - 18:17, 22:19, 23:2
**LAVELLE** [5] - 3:6, 17:10, 26:15, 26:18, 29:14
**Lavelle** [3] - 17:10, 26:16, 28:5
**Law** [1] - 3:24
**LAW** [1] - 2:5
**law** [2] - 60:7, 85:7
**laws** [1] - 41:22
**lawyer** [2] - 20:2, 64:4
**lawyers** [3] - 25:23, 61:5, 64:9
**layer** [1] - 78:14
**laying** [1] - 10:4
**LAYNE** [1] - 1:20
**Layne** [1] - 61:17
**lead** [4] - 4:14, 4:17, 63:9, 87:1
**leading** [1] - 41:13
**learned** [1] - 11:10
**least** [11] - 4:15, 15:19, 24:20, 29:19, 47:11, 50:13, 69:2, 74:14, 75:2, 83:6, 83:23
**leave** [9] - 6:20, 7:5, 27:14, 36:22, 38:23, 52:13, 95:6, 95:24, 95:25
**leaving** [1] - 28:15
**left** [1] - 93:17
**legal** [4] - 23:22, 60:6, 65:1, 65:3
**less** [5] - 79:25, 80:9, 80:23, 81:13, 88:23
**letter** [53] - 4:7, 4:8, 4:9, 8:11, 8:12, 10:23, 13:20, 14:1, 15:2, 15:9, 15:15, 16:10, 16:25, 17:7, 17:14, 17:21, 18:11, 19:10, 21:18, 29:8, 30:2, 31:3, 31:11, 33:12, 33:14, 34:14, 34:21, 34:22, 40:21, 41:20, 42:9, 43:24, 45:12, 47:20, 48:9, 48:22, 49:7, 52:8,

55:18, 58:17, 58:22, 62:25, 63:1, 63:6, 70:3, 77:5, 82:22, 82:24, 82:25, 90:11
**letters** [5] - 4:24, 8:25, 31:12, 31:14, 34:8
**letting** [1] - 15:15
**level** [2] - 11:7, 78:18
**Lewis** [2] - 17:11, 26:16
**LEWIS** [1] - 3:6
**Lexington** [1] - 3:14
**Liability** [1] - 62:10
**LIABILITY** [1] - 1:4
**likelihood** [1] - 9:21
**likely** [1] - 89:16
**limited** [4] - 27:18, 90:19, 90:24, 91:20
**Lin** [1] - 45:2
**Line** [1] - 7:5
**linger** [1] - 41:5
**list** [3] - 11:7, 13:21, 16:12
**lists** [1] - 22:21
**literally** [2] - 55:14, 57:9
**litigation** [11] - 26:1, 26:8, 35:12, 50:1, 61:11, 63:3, 64:19, 64:25, 65:10, 72:6, 93:19
**LITIGATION** [1] - 1:4
**Litigation** [1] - 62:10
**LLC** [6] - 1:13, 1:19, 2:5, 2:12, 2:19, 3:8
**LLLP** [1] - 3:16
**LLP** [8] - 2:2, 2:8, 2:13, 2:16, 3:6, 3:9, 3:13, 3:19
**loaded** [1] - 23:18
**Local** [2] - 35:3, 35:4
**located** [2] - 20:24, 21:15
**Lockard** [8] - 31:8, 32:4, 40:24, 59:2, 59:4, 61:23, 62:21, 90:15
**LOCKARD** [14] - 2:17, 31:8, 40:24, 41:12, 59:2, 59:5, 62:22, 64:6, 67:14, 68:24, 69:15, 69:18, 90:15, 90:18
**Lockard's** [3] - 62:12, 63:18, 68:9
**log** [4] - 31:5, 31:10, 31:16, 62:5

**logistics** [1] - 43:2
**logs** [1] - 44:9
**look** [8] - 12:15, 43:19, 45:12, 50:15, 59:23, 83:3, 83:25, 86:16
**looked** [4] - 68:1, 73:6, 81:6
**looking** [3] - 28:16, 75:9, 87:23
**Loretta** [2] - 95:7, 95:25
**LORETTA** [1] - 3:24
**Los** [1] - 3:21
**Louisiana** [1] - 1:21
**Ltd** [3] - 2:12, 2:19, 3:15
**Lyons** [3] - 64:17, 66:19, 66:25

# M

**MacStravic** [1] - 3:25
**magnitude** [1] - 87:5
**mailed** [1] - 17:24
**main** [2] - 8:18, 55:21
**maintain** [3] - 72:16, 73:13, 85:5
**major** [1] - 45:5
**Management** [1] - 39:9
**MANAGEMENT** [1] - 1:5
**management** [8] - 20:1, 26:21, 38:6, 79:14, 79:16, 94:2, 94:5, 94:6
**manner** [1] - 24:16
**manufacture** [1] - 60:13
**manufactured** [1] - 65:25
**manufacturer** [2] - 28:20, 74:18
**manufacturers** [2] - 73:13, 81:4
**manufacturers'** [1] - 73:20
**March** [2] - 55:17, 56:17
**marked** [1] - 59:13
**marker** [1] - 79:8
**Market** [1] - 1:17
**Marlene** [1] - 14:21
**MARLENE** [1] - 2:5
**mask** [1] - 25:12
**massive** [3] - 25:19, 25:22, 55:3
**massively** [2] - 83:22, 84:1
**master** [2] - 38:23, 38:24

**Master** [3] - 4:2, 37:7, 37:24
**MASTER** [1] - 1:10
**match** [1] - 28:18
**material** [1] - 12:3
**matter** [18] - 5:2, 17:25, 24:5, 26:20, 27:16, 27:24, 29:3, 29:15, 37:6, 38:6, 40:18, 42:13, 43:7, 57:17, 58:18, 82:1, 95:19, 96:14
**matters** [5] - 5:8, 5:19, 46:24, 47:12, 58:9
**MAZIE** [1] - 1:13
**MDL** [1] - 35:13
**mean** [3] - 10:7, 41:14, 63:7
**meaningful** [2] - 49:23, 92:13
**means** [1] - 24:13
**meant** [1] - 11:15
**measure** [1] - 79:6
**mechanical** [1] - 1:24
**Medical** [1] - 19:19
**medication** [1] - 81:3
**meet** [56] - 10:7, 10:25, 12:16, 13:11, 14:3, 14:4, 15:20, 16:24, 17:3, 17:18, 17:25, 31:14, 39:21, 40:1, 43:2, 49:11, 49:23, 50:3, 50:24, 51:21, 51:25, 52:5, 52:6, 52:20, 53:5, 53:11, 53:15, 53:21, 53:22, 54:3, 54:5, 55:2, 55:4, 56:8, 56:23, 57:1, 57:21, 58:1, 58:13, 59:24, 62:14, 70:10, 71:23, 73:3, 74:9, 76:5, 76:23, 87:13, 89:4, 90:5, 90:22, 92:13, 92:16, 92:18, 93:23, 94:2
**meet-and-confer** [6] - 49:23, 55:2, 71:23, 73:3, 74:9, 90:22
**meeting** [5] - 18:8, 42:19, 49:20, 56:20, 92:11
**Memorial** [1] - 76:21
**mentioned** [3] - 7:11, 18:22, 73:14
**merely** [1] - 79:22
**merited** [1] - 26:22
**message** [4] - 29:5, 95:24, 95:25, 96:1
**met** [4] - 35:21, 49:4,

54:13, 75:16
**method** [1] - 20:2
**middle** [7] - 15:6, 16:3, 16:19, 24:3, 28:4, 64:15, 92:19
**might** [4] - 25:4, 34:13, 36:9, 36:13
**million** [1] - 86:8
**minds** [1] - 23:7
**minimize** [1] - 23:10
**Minneapolis** [1] - 2:6
**Minnesota** [1] - 2:6
**minute** [2] - 24:23, 28:23
**minutes** [1] - 69:15
**mischaracterization** [1] - 85:17
**misleading** [1] - 23:3
**misses** [1] - 23:11
**missing** [5] - 10:24, 13:10, 24:12, 24:15, 28:20
**misspoke** [1] - 7:18
**mistaken** [1] - 62:17
**Mitchell** [1] - 1:7
**moment** [2] - 25:8, 81:19
**momentarily** [1] - 69:19
**moments** [1] - 46:22
**Monday** [5] - 6:11, 6:15, 7:18, 42:23, 55:18
**monetary** [4] - 27:21, 28:1, 86:20, 87:18
**money** [1] - 28:1
**month** [2] - 30:16, 33:25
**months** [11] - 8:25, 24:21, 55:3, 65:18, 66:23, 67:11, 72:18, 88:18, 93:20
**Moore** [3] - 19:17, 19:24, 28:7
**Morgan** [2] - 17:10, 26:16
**MORGAN** [1] - 3:6
**morning** [21] - 4:19, 8:15, 8:17, 9:12, 14:23, 14:24, 15:22, 17:17, 18:22, 19:8, 20:5, 20:9, 20:10, 22:9, 22:10, 27:4, 32:8, 33:3, 43:18, 55:13, 61:17
**Morris** [1] - 42:15
**MORRIS** [1] - 2:8
**most** [9] - 8:22, 15:5, 44:25, 47:3, 77:23, 79:2, 84:8, 90:11,

94:8
**motion** [52] - 5:23, 6:4, 6:6, 6:7, 6:17, 6:20, 6:22, 7:10, 7:14, 7:19, 7:22, 26:20, 26:25, 27:17, 27:18, 36:14, 38:23, 41:21, 41:25, 42:2, 47:20, 47:21, 48:22, 49:1, 49:2, 49:9, 49:16, 49:17, 50:13, 50:19, 50:22, 51:9, 51:13, 51:25, 53:13, 55:10, 56:1, 56:2, 56:19, 57:24, 58:5, 58:6, 58:10, 58:14, 83:5, 84:19, 85:19, 85:22, 86:4, 86:19
**motions** [10] - 5:13, 7:18, 18:6, 37:19, 50:20, 52:13, 58:13, 83:23, 84:16, 85:9
**move** [16] - 8:3, 29:21, 32:14, 33:22, 37:17, 40:19, 41:19, 44:9, 47:11, 51:13, 57:17, 57:20, 61:14, 69:19, 69:20, 75:20
**moved** [2] - 15:21, 41:23
**moving** [3] - 39:7, 47:8, 77:23
**MR** [67] - 4:12, 4:19, 5:12, 5:22, 6:8, 6:13, 7:1, 7:4, 8:5, 8:7, 8:15, 8:18, 9:12, 9:18, 12:14, 12:24, 13:1, 13:15, 14:12, 14:17, 17:10, 22:9, 25:7, 26:15, 26:18, 29:14, 30:9, 30:18, 32:8, 32:16, 32:18, 38:14, 38:17, 43:8, 43:10, 46:20, 47:24, 48:1, 48:5, 48:10, 48:14, 48:16, 48:18, 48:24, 50:9, 50:11, 52:17, 54:25, 56:5, 56:7, 57:3, 58:20, 70:19, 83:8, 83:10, 83:13, 87:19, 89:2, 89:9, 89:12, 89:15, 90:7, 92:24, 93:2, 94:25, 95:2, 95:23
**MS** [64] - 14:21, 14:24, 16:9, 20:9, 20:11, 23:5, 23:9, 31:8, 33:3, 33:7, 34:4, 34:12, 34:19, 34:22, 34:25, 36:18, 37:13, 37:23, 37:25, 39:19,

40:24, 41:12, 42:14, 42:17, 45:22, 45:24, 47:15, 59:2, 59:5, 61:17, 62:22, 64:6, 65:16, 67:14, 68:7, 68:9, 68:24, 69:15, 69:18, 69:22, 70:4, 70:9, 70:17, 71:14, 71:17, 73:2, 74:1, 74:6, 74:22, 75:23, 76:3, 80:6, 80:17, 80:20, 82:17, 82:18, 85:14, 88:14, 90:15, 90:18, 95:6, 95:10, 95:15, 95:18
**MSPRC** [1] - 33:13
**multiple** [4] - 4:20, 23:12, 52:11, 57:13
**must** [2] - 72:22, 86:19
**mute** [4] - 30:21, 32:20, 32:24, 52:17
**Mylan** [10] - 2:15, 30:3, 30:5, 30:6, 30:8, 30:10, 65:19, 65:20, 65:25, 67:11

## N

**Nakul** [1] - 9:14
**NAKUL** [1] - 3:10
**name** [2] - 66:9, 85:15
**named** [5] - 15:11, 38:24, 39:2, 39:10, 39:14
**narrow** [4] - 49:25, 74:14, 75:3, 75:10
**narrowly** [1] - 79:11
**Nassall** [6] - 64:16, 66:19, 67:7, 67:18, 68:16, 69:2
**national** [1] - 30:13
**nature** [2] - 63:20, 66:18
**NDC** [2] - 74:25, 78:12
**NDEA** [10] - 64:19, 65:17, 65:19, 65:23, 65:25, 66:19, 66:20, 66:22, 67:10, 67:12
**NDMA** [5] - 10:24, 11:25, 12:3, 12:6, 45:6
**NE** [1] - 2:18
**near** [1] - 94:13
**necessarily** [1] - 68:21
**necessary** [7] - 6:18, 18:15, 27:19, 40:17, 66:3, 76:15, 87:4
**need** [27] - 5:1, 5:4, 5:17, 15:19, 18:20, 19:2, 24:23, 31:20,

34:10, 36:3, 44:7, 53:8, 54:4, 54:18, 57:10, 68:24, 69:18, 70:8, 70:12, 73:8, 75:6, 75:14, 77:6, 82:11, 87:24
**needed** [4] - 40:3, 40:22, 52:19, 94:5
**needing** [1] - 79:23
**needs** [6] - 7:24, 11:5, 49:12, 53:3, 57:11, 71:10
**nefarious** [1] - 18:19
**negotiated** [1] - 79:15
**negotiating** [2] - 76:10, 77:2
**negotiations** [2] - 71:1, 71:6
**never** [2] - 91:15, 92:8
**NEW** [1] - 1:1
**new** [8] - 19:9, 42:10, 42:19, 45:25, 71:11, 72:3, 72:16, 74:16
**New** [8] - 1:8, 1:14, 1:21, 3:7, 3:11, 3:14, 19:18
**next** [23] - 5:15, 7:20, 8:9, 8:24, 14:14, 14:18, 15:22, 21:8, 32:5, 40:19, 41:19, 42:8, 47:18, 47:19, 51:13, 55:15, 58:17, 69:19, 69:20, 69:24, 71:8, 82:19, 92:21
**Nigh** [1] - 41:12
**night** [6] - 15:14, 55:11, 55:12, 55:17, 55:18, 55:20
**nine** [2] - 59:16, 90:25
**nitty** [1] - 45:13
**nitty-gritty** [1] - 45:13
**non** [2] - 39:10, 67:9
**non-named** [1] - 39:10
**non-privileged** [1] - 67:9
**noncustodial** [2] - 16:16, 16:20
**none** [2] - 32:14, 43:20
**nonetheless** [2] - 12:6, 60:14
**normal** [1] - 4:4
**Northern** [1] - 19:21
**notably** [1] - 19:24
**notation** [2] - 13:22, 13:24
**note** [3] - 61:20, 66:25, 71:2
**noted** [3] - 33:11, 49:6, 64:21

**notes** [1] - 32:23
**nothing** [13] - 8:5, 8:7, 22:25, 31:15, 41:18, 54:15, 62:6, 62:14, 70:11, 90:20, 90:22, 94:25, 95:2
**notice** [2] - 37:20, 65:24
**noticed** [1] - 60:17
**notification** [1] - 67:24
**notified** [1] - 67:21
**notion** [1] - 76:5
**November** [9] - 24:3, 24:11, 25:21, 45:1, 46:2, 47:2, 65:18, 66:1, 66:24
**number** [10] - 4:13, 9:25, 15:8, 15:12, 15:16, 52:22, 53:10, 59:8, 59:20, 83:19
**NUMBER** [1] - 1:3
**numbers** [4] - 73:16, 74:8, 78:25, 82:6
**numerous** [2] - 8:25

## O

**objection** [1] - 73:10
**objectionable** [2] - 53:1, 54:17
**objections** [3] - 52:3, 55:25, 77:6
**obligated** [1] - 84:21
**obligation** [4] - 18:3, 53:11, 54:5, 87:11
**obligations** [2] - 27:13, 54:14
**obstruct** [1] - 51:5
**obtain** [1] - 16:4
**obtained** [1] - 50:14
**obvious** [1] - 65:8
**obviously** [2] - 7:18, 8:1, 18:1, 18:17, 50:24, 57:8, 61:25, 66:12, 68:11, 76:14, 80:13, 83:14
**occurred** [2] - 18:17, 61:25
**occurring** [1] - 34:2
**occurs** [2] - 11:10, 16:6
**October** [1] - 72:22
**OF** [1] - 1:1
**offer** [4] - 46:9, 62:1, 76:9, 77:1
**offered** [4] - 18:21, 18:22, 27:9, 46:17
**Official** [1] - 1:22
**Ohio** [1] - 3:18
**once** [5] - 37:9, 46:6, 50:14, 51:11, 74:23

**One** [1] - 2:14
**one** [37] - 12:2, 12:14, 17:19, 19:4, 19:18, 20:6, 21:4, 21:5, 22:16, 23:15, 25:15, 25:23, 27:17, 28:5, 48:24, 49:12, 50:12, 55:1, 56:14, 57:3, 59:25, 62:12, 62:17, 64:9, 64:16, 66:5, 67:3, 68:18, 69:2, 70:25, 72:14, 74:16, 81:8, 84:12, 89:9, 93:17
**ones** [2] - 8:22, 71:3
**ongoing** [4] - 8:11, 12:22, 20:14, 33:11
**onus** [1] - 92:12
**open** [3] - 14:3, 27:10, 28:16
**opening** [2] - 7:8, 39:6
**operating** [1] - 12:1
**opinion** [1] - 83:18
**opinions** [1] - 29:5
**opportunity** [7] - 5:19, 10:21, 14:5, 19:14, 26:19, 26:23, 26:24
**oppose** [2] - 6:22, 18:2
**opposition** [3] - 6:4, 6:10, 7:17
**Order** [1] - 39:9
**order** [54] - 4:9, 6:5, 7:10, 7:22, 9:2, 15:19, 23:6, 29:8, 29:9, 30:2, 33:22, 34:8, 38:3, 39:13, 39:18, 41:2, 42:6, 50:14, 50:18, 57:17, 65:9, 66:3, 67:23, 70:13, 70:16, 70:22, 82:3, 82:15, 83:15, 83:16, 83:17, 84:21, 84:23, 85:6, 85:18, 85:20, 85:21, 86:3, 86:6, 86:10, 86:25, 87:12, 88:3, 88:9, 88:12, 88:16, 89:2, 91:22, 91:23, 91:25, 94:2, 94:5, 94:6
**ordered** [1] - 41:8
**ordering** [1] - 29:1
**orders** [3] - 25:25, 39:8, 87:4
**organizational** [1] - 16:18
**original** [1] - 72:17
**originally** [1] - 59:13
**Orleans** [1] - 1:21
**otherwise** [2] - 50:19,

54:16
**outline** [1] - 15:9
**outlined** [1] - 24:7
**output** [1] - 11:19
**outrage** [1] - 25:12
**outside** [6] - 22:13, 60:6, 60:22, 61:3, 63:9, 63:19
**outstanding** [4] - 14:5, 14:14, 30:4, 31:20
**over-designate** [1] - 84:22
**over-designated** [2] - 83:22, 84:1
**over-designating** [1] - 85:3
**over-designation** [2] - 83:25, 87:2
**overarching** [1] - 66:2
**overnight** [1] - 9:20
**overuse** [1] - 84:13
**overview** [1] - 15:1
**own** [3] - 52:2, 55:5, 78:13
**Oxford** [1] - 2:14

## P

**P.C** [2] - 1:16, 3:2
**p.m** [1] - 96:10
**Pacific** [1] - 2:3
**PACKARD** [1] - 2:2
**page** [1] - 66:11
**Page** [10] - 7:4, 8:12, 31:2, 34:22, 42:8, 47:19, 58:22, 70:2, 82:23, 90:10
**Pages** [4] - 40:21, 48:21, 82:19, 82:22
**pages** [2] - 85:23, 86:8
**Palew** [2] - 15:11, 20:15
**Palew's** [2] - 21:16, 22:8
**pandemic** [1] - 30:20
**paper** [1] - 93:6
**papers** [2] - 6:23, 57:5
**paperwork** [1] - 31:24
**parameters** [1] - 84:22
**pare** [2] - 72:5, 72:17
**Parekh** [9] - 8:16, 8:17, 9:19, 11:4, 12:13, 13:9, 14:2, 14:5, 58:20
**PAREKH** [6] - 2:2, 8:15, 8:18, 12:14, 14:12, 58:20
**Parexel** [3] - 60:16, 61:21, 63:12
**Park** [1] - 3:20

**Parkway** [2] - 1:14, 3:4
**part** [8] - 27:24, 36:18, 44:25, 54:9, 57:19, 59:22, 74:8, 79:15
**partially** [1] - 78:22
**particular** [20] - 8:22, 12:5, 13:17, 19:4, 35:15, 49:14, 49:18, 49:21, 50:3, 56:18, 57:6, 73:16, 74:4, 74:19, 74:20, 78:22, 82:6, 82:7, 82:13, 87:6
**parties** [19] - 7:5, 8:7, 18:3, 20:12, 20:19, 24:8, 33:9, 41:2, 41:4, 42:10, 42:15, 49:23, 53:4, 53:21, 54:19, 56:12, 70:14, 85:17, 92:18
**parties'** [3] - 47:20, 53:11, 85:18
**partner** [1] - 60:7
**parts** [2] - 46:22, 50:17
**party** [9] - 22:12, 28:1, 34:24, 35:4, 35:9, 41:23, 49:19, 54:12, 66:14
**past** [5] - 16:11, 16:25, 42:25, 70:13, 72:18
**path** [1] - 38:9
**patients** [1] - 79:3
**pay** [1] - 28:1
**payor** [1] - 35:4
**payors** [2] - 34:24, 35:9
**Peck** [1] - 28:6
**Pedano** [2] - 1:22, 96:16
**pending** [2] - 36:21, 57:24
**Peng** [2] - 55:11, 55:17
**Pennsylvania** [4] - 1:17, 2:11, 2:15, 3:5
**people** [2] - 4:20, 45:4
**perceive** [1] - 54:8
**perfect** [1] - 35:23
**perhaps** [5] - 20:5, 65:24, 73:8, 82:10, 95:13
**period** [5] - 5:1, 16:17, 68:6, 78:1, 80:24
**periods** [1] - 75:3
**permission** [1] - 92:10
**person** [1] - 45:3
**personal** [1] - 40:20
**perspective** [4] - 51:4,

73:7, 83:22, 93:9
**Pharma** [4] - 2:20, 3:8, 3:8, 3:15
**Pharmaceutical** [1] - 2:19
**Pharmaceuticals** [5] - 2:11, 2:12, 2:15, 2:19, 3:15
**pharmacies** [5] - 77:24, 79:7, 79:12, 79:15, 79:23
**pharmacy** [10] - 71:3, 71:4, 71:9, 74:4, 74:19, 75:24, 78:20, 78:23, 81:24, 82:2
**Pharmacy** [1] - 3:21
**phase** [8] - 35:22, 72:20, 93:3, 93:4, 93:7, 93:15, 93:17, 94:14
**Philadelphia** [2] - 1:17, 2:11
**phone** [6] - 23:22, 32:20, 32:24, 38:18, 46:16, 94:24
**phones** [2] - 4:7, 44:16
**phrase** [1] - 74:20
**phrased** [1] - 77:5
**pick** [1] - 51:15
**picked** [2] - 51:15, 78:23
**picking** [1] - 79:3
**Piedmont** [1] - 2:18
**PIETRAGALLO** [1] - 2:13
**piling** [1] - 27:2
**Pittsburgh** [1] - 2:15
**place** [5] - 23:19, 24:4, 24:17, 45:16, 51:20
**placed** [1] - 55:25
**places** [1] - 50:14
**plaintiff** [8] - 10:1, 41:3, 41:7, 53:10, 73:16, 75:8, 78:23, 91:2
**plaintiff's** [1] - 94:20
**plaintiffs** [120] - 4:18, 6:3, 6:9, 8:5, 8:14, 8:16, 10:4, 10:6, 10:8, 10:20, 11:13, 11:14, 11:16, 11:22, 12:10, 13:17, 14:9, 14:20, 14:22, 16:3, 17:13, 18:3, 18:5, 18:7, 18:8, 18:11, 18:20, 18:24, 19:5, 19:8, 20:4, 20:20, 20:25, 21:1, 21:8, 21:10, 23:11, 24:9,

24:15, 24:20, 25:10, 25:17, 25:20, 26:19, 26:22, 27:13, 27:24, 28:17, 33:23, 34:2, 34:5, 34:6, 35:16, 37:9, 37:17, 38:22, 40:20, 41:11, 41:13, 43:7, 46:6, 46:10, 48:1, 48:25, 49:4, 49:6, 49:8, 49:11, 49:14, 50:2, 52:19, 53:6, 53:12, 53:19, 54:1, 54:4, 56:9, 56:13, 56:19, 56:20, 56:22, 59:18, 61:15, 61:18, 66:17, 67:6, 67:18, 70:5, 71:13, 76:8, 76:10, 77:16, 77:20, 78:8, 79:20, 79:23, 80:2, 81:5, 81:16, 83:2, 84:12, 86:13, 86:19, 87:6, 88:20, 89:1, 89:20, 90:1, 90:12, 90:19, 90:21, 91:2, 91:12, 91:22, 92:7, 92:12, 92:23, 94:25
**Plaintiffs** [5] - 1:15, 1:18, 1:21, 2:4, 2:7
**plaintiffs'** [31] - 4:20, 8:11, 8:12, 10:23, 11:6, 11:18, 12:7, 16:23, 17:16, 17:17, 17:23, 18:21, 27:1, 31:25, 32:11, 36:15, 41:21, 42:5, 42:10, 47:21, 49:17, 59:7, 59:25, 64:10, 69:24, 82:22, 91:6, 91:8, 91:17, 91:21, 92:9
**pled** [1] - 86:5
**plenty** [1] - 40:2
**point** [40] - 8:21, 10:15, 11:1, 11:24, 12:14, 13:8, 13:9, 16:23, 19:7, 23:11, 24:23, 26:4, 26:18, 27:14, 31:13, 34:20, 38:3, 38:20, 40:22, 41:18, 42:12, 44:23, 46:25, 47:8, 49:17, 51:13, 51:23, 58:3, 62:12, 65:4, 68:9, 68:25, 70:25, 75:16, 76:18, 79:10, 88:19, 89:5, 89:9, 92:17
**pointed** [3] - 39:4, 39:6, 44:11
**points** [3] - 16:9, 59:6, 67:14
**policies** [1] - 79:17

**politeness** [1] - 25:10
**portion** [2] - 15:7, 49:6
**portions** [1] - 56:24
**posed** [3] - 49:3, 76:7, 77:1
**position** [17] - 24:14, 35:25, 40:10, 43:15, 47:3, 53:24, 60:20, 60:25, 63:18, 68:11, 75:17, 76:22, 76:23, 85:10, 89:4, 91:21, 93:2
**possession** [4] - 16:21, 75:4, 91:6, 91:21
**possible** [5] - 21:2, 21:16, 21:21, 33:23, 51:19
**possibly** [1] - 51:18
**postpone** [1] - 15:17
**potential** [5] - 22:17, 30:14, 66:19, 66:20, 66:22
**potentially** [1] - 53:20
**Powell** [1] - 33:20
**precise** [1] - 75:9
**precisely** [1] - 13:21
**preclude** [2] - 7:13, 67:6
**precluded** [2] - 5:16, 67:9
**precluding** [1] - 67:18
**preclusion** [1] - 92:6
**preemptively** [1] - 85:24
**prefer** [4] - 34:15, 36:12, 37:18, 37:19
**preference** [2] - 37:3, 37:16
**prejudice** [7] - 22:17, 23:10, 27:17, 28:17, 28:18, 81:25, 91:17
**prejudiced** [2] - 22:19, 23:2
**premature** [2] - 39:1, 39:16
**prematurely** [2] - 71:23, 76:6
**prematurity** [1] - 72:19
**premise** [1] - 12:1
**preordain** [1] - 54:7
**prepared** [1] - 21:7
**prescriptions** [1] - 79:3
**PRESENT** [1] - 3:23
**present** [4] - 12:3, 30:5, 38:9, 50:16
**presented** [7] - 7:15, 15:8, 57:22, 58:3,

67:3, 87:15, 90:6
**presenting** [1] - 67:9
**pressing** [2] - 19:9,
20:4
**pretty** [1] - 77:5
**previous** [2] - 18:22,
70:24
**previously** [3] - 10:2,
15:18, 22:1
**primarily** [1] - 45:25
**Princeton** [2] - 3:7,
3:11
**Prinston** [1] - 2:11
**prioritization** [1] -
44:18
**prioritize** [2] - 18:17,
46:5
**Priselac** [2] - 42:14,
45:23
**PRISELAC** [6] - 2:9,
42:14, 42:17, 45:22,
45:24, 47:15
**privacy** [1] - 78:5
**privilege** [13] - 31:5,
31:10, 31:13, 31:16,
44:3, 59:17, 62:5,
63:15, 63:22, 65:7,
65:23, 68:11, 68:23
**privileged** [19] - 59:13,
60:20, 61:1, 61:2,
61:5, 62:1, 62:5,
62:11, 63:5, 63:8,
65:12, 66:7, 66:13,
66:17, 67:9, 67:17,
68:3, 68:12, 68:18
**pro** [1] - 95:18
**probing** [1] - 67:10
**problem** [12] - 9:24,
10:13, 10:14, 11:5,
11:18, 12:9, 24:2,
28:19, 34:1, 78:15,
82:12, 95:17
**problems** [1] - 54:9
**procedural** [1] - 38:6
**proceed** [7] - 4:7,
7:16, 7:17, 57:18,
64:2, 84:8, 93:8
**proceeding** [1] - 81:21
**Proceedings** [1] -
1:24
**PROCEEDINGS** [1] -
4:1
**proceedings** [2] -
96:10, 96:14
**process** [19] - 9:2,
24:9, 24:16, 27:6,
31:14, 55:2, 59:15,
59:17, 60:16, 64:18,
71:23, 73:3, 74:9,
75:14, 90:22, 91:4,

91:7, 92:7, 92:9
**Process** [3] - 9:3,
9:21, 10:11
**processed** [1] - 20:24
**produce** [12] - 9:4,
10:14, 11:17, 26:8,
44:9, 54:14, 63:13,
76:17, 77:2, 78:3,
80:3, 82:10
**produced** [37] - 1:25,
10:13, 11:11, 11:17,
13:6, 15:23, 16:12,
16:13, 16:16, 18:23,
21:23, 21:25, 22:1,
22:2, 22:7, 23:17,
23:20, 23:25, 42:20,
43:21, 44:25, 46:2,
47:1, 47:4, 47:7,
59:11, 59:14, 60:2,
60:21, 62:18, 69:8,
77:21, 77:24, 78:4,
79:7, 79:9, 85:23
**producing** [10] - 12:9,
15:16, 35:13, 76:12,
76:13, 77:7, 79:19,
80:24, 81:16
**product** [7] - 22:16,
65:19, 77:22, 78:13,
78:21, 78:22, 79:18
**production** [51] - 9:22,
9:23, 11:2, 11:19,
12:10, 12:21, 13:22,
14:8, 14:12, 18:18,
19:11, 20:3, 20:15,
21:6, 21:13, 22:19,
23:2, 24:13, 24:19,
24:25, 27:7, 28:12,
28:24, 29:18, 35:16,
42:21, 42:23, 42:24,
43:4, 43:18, 43:23,
44:7, 44:24, 45:17,
47:10, 47:11, 54:3,
69:25, 71:9, 71:19,
71:25, 72:14, 76:16,
81:24, 82:2, 82:4,
83:17, 88:3, 88:5,
90:12, 90:25
**productions** [10] -
10:5, 13:19, 13:20,
15:9, 18:16, 23:16,
24:22, 43:16, 46:23,
84:25
**Products** [1] - 62:10
**PRODUCTS** [1] - 1:4
**products** [4] - 62:18,
66:2, 67:11, 73:14
**professionalism** [1] -
25:9
**progress** [9] - 41:6,
42:11, 42:19, 43:1,

43:15, 43:23, 45:11,
45:14, 46:4
**promptly** [6] - 7:21,
7:22, 7:25, 8:3, 37:2,
38:10
**proper** [2] - 37:10,
37:14
**properly** [2] - 90:2,
90:6
**proportionality** [1] -
73:11
**proposal** [1] - 38:3
**propose** [2] - 17:12,
69:7
**proposed** [8] - 36:2,
36:16, 38:24, 39:9,
70:16, 70:22, 82:3,
82:15
**protected** [4] - 69:6,
69:13
**protection** [1] - 68:22
**protective** [9] - 6:5,
7:10, 7:21, 67:23,
84:21, 84:23, 85:6,
86:25, 87:12
**protocol** [2] - 4:4,
87:12
**provide** [11] - 15:1,
33:23, 34:6, 57:25,
58:8, 69:11, 73:17,
75:13, 75:18, 79:16,
96:1
**provided** [7] - 44:20,
49:19, 49:21, 55:19,
73:22, 86:18, 87:16
**providing** [1] - 13:16
**public** [1] - 87:10
**publicis** [1] - 19:17
**pulled** [1] - 93:25
**purchase** [1] - 80:10
**purchased** [3] - 75:8,
79:8, 79:24
**purchaser** [2] - 74:4,
74:24
**purchasers** [1] - 82:7
**purchases** [2] - 78:13,
82:13
**purchasing** [2] -
77:20, 79:8
**purpose** [5] - 18:19,
81:15, 85:25, 86:25
**purposes** [5] - 4:15,
11:25, 65:1, 69:9,
87:9
**push** [2] - 15:21, 26:6
**pushed** [1] - 85:8
**pushing** [1] - 25:17
**put** [6] - 5:2, 11:24,
13:8, 32:20, 51:20,
54:2

**putative** [10] - 32:15,
33:1, 33:10, 34:11,
34:13, 35:4, 36:1,
39:3, 39:10, 40:15
**puts** [1] - 10:11
**putting** [5] - 36:23,
38:1, 74:5, 74:13,
87:9
**puzzling** [1] - 16:24

**Q**

**quarantine** [1] - 31:23
**question-by-
question** [1] - 49:10
**questioned** [1] - 22:18
**questioning** [3] - 19:2,
51:5, 53:7
**questions** [15] - 14:25,
17:7, 23:21, 25:4,
49:3, 49:5, 49:7,
49:19, 52:25, 54:17,
57:9, 57:13, 65:2,
81:15, 93:14
**quickly** [4] - 44:9,
76:4, 78:9, 78:21
**quite** [5] - 11:14,
21:25, 78:2, 93:19,
93:20
**quote** [2] - 24:22,
67:15
**quoted** [1] - 57:9

**R**

**Rachel** [2] - 64:4,
64:21
**raise** [4] - 26:23,
36:10, 40:10, 40:13
**raised** [18] - 5:25,
17:13, 17:15, 17:21,
17:23, 18:10, 20:14,
27:4, 27:12, 53:10,
57:2, 72:20, 80:9,
81:7, 89:17, 89:20,
92:8, 94:13
**raises** [1] - 81:15
**range** [3] - 9:23, 10:2,
10:13
**ranges** [2] - 10:5,
13:17
**RASPANTI** [1] - 2:13
**rate** [1] - 77:22
**rates** [1] - 79:1
**rather** [1] - 94:4
**raw** [1] - 11:15
**RE** [1] - 1:4
**re** [3] - 27:20, 85:23,
86:7
**re-deposition** [1] -
27:20

**re-review** [2] - 85:23,
86:7
**reach** [4] - 33:13,
49:24, 90:21
**reached** [2] - 35:19,
46:6
**react** [1] - 37:9
**reaction** [2] - 37:5,
76:25
**read** [7] - 4:23, 15:2,
51:24, 85:25, 86:3,
86:6
**reading** [1] - 86:10
**reads** [1] - 45:12
**ready** [2] - 5:14, 55:8
**real** [4] - 76:15, 79:5,
79:7, 80:25
**really** [24] - 5:7, 6:15,
6:21, 16:2, 17:5,
22:18, 22:22, 23:1,
31:15, 39:10, 41:13,
43:1, 48:25, 53:24,
60:1, 68:17, 74:2,
78:14, 79:4, 81:8,
91:5, 91:13, 92:3,
92:17
**realtime** [1] - 46:13
**reason** [8] - 10:17,
17:21, 36:19, 44:13,
71:21, 73:10, 75:18,
87:7
**reasonable** [2] - 54:6,
56:23
**reasons** [5] - 10:19,
27:17, 31:21, 53:2,
82:14
**Rebecca** [1] - 33:3
**REBECCA** [1] - 2:9
**recalled** [2] - 65:19,
67:12
**receive** [3] - 29:7,
62:4, 72:1
**received** [9] - 4:8,
15:6, 15:22, 21:18,
27:21, 40:13, 58:23,
62:15, 66:8
**recent** [2] - 87:17,
90:11
**recently** [3] - 20:22,
35:14, 38:22
**recipient** [2] - 64:21,
64:22
**recognize** [2] - 29:20,
85:4
**recognized** [3] -
18:14, 19:25, 51:10
**recognizing** [1] -
17:20
**recollection** [1] -
57:16

**reconsider** [1] - 27:2
**reconvene** [3] - 95:14,
95:20, 95:22
**record** [15] - 6:2,
45:10, 45:24, 50:25,
52:9, 57:4, 57:12,
59:9, 60:3, 65:4,
66:6, 71:2, 88:6,
93:8, 96:14
**recorded** [1] - 1:24
**records** [4] - 73:15,
73:19, 73:20, 75:9
**rectify** [2] - 60:10,
60:24
**rectifying** [1] - 60:15
**redact** [3] - 65:13,
69:7, 69:10
**redacted** [2] - 64:12,
66:18, 69:11
**redepose** [1] - 24:24
**Redondo** [1] - 2:3
**reference** [4] - 59:20,
62:18, 62:23, 63:4
**referenced** [2] - 38:21,
61:8
**references** [4] - 60:23,
61:2, 61:3, 61:24
**referred** [3] - 16:18,
21:22, 91:23
**referring** [3] - 22:11,
66:10, 93:12
**refine** [1] - 83:10
**regard** [4] - 22:25,
36:12, 37:4, 75:13
**regarding** [15] - 9:1,
14:4, 20:14, 22:25,
42:10, 65:16, 65:17,
66:19, 67:23, 77:6,
77:15, 78:7, 78:9,
78:19, 85:18
**regular** [1] - 16:17
**regulators** [2] - 64:20,
65:11
**regulatory** [4] - 45:6,
60:8, 61:9, 63:9
**rejected** [4] - 18:13,
19:16, 19:23, 46:18
**relate** [2] - 61:12, 63:1
**related** [4] - 36:13,
61:8, 67:8, 88:22
**relating** [1] - 11:24
**relative** [1] - 77:7
**relatively** [1] - 27:5
**relativity** [1] - 20:23
**relevance** [1] - 23:21
**relevancy** [2] - 22:17,
44:3
**relevant** [5] - 8:23,
65:23, 68:17, 72:9,
93:13

**relief** [5] - 33:15,
50:18, 54:22, 55:6,
56:25
**reluctant** [2] - 28:13,
87:3
**rely** [1] - 9:6
**relying** [1] - 93:14
**remain** [5] - 11:22,
14:5, 27:10, 37:19,
84:6
**remainder** [1] - 78:11
**remaining** [3] - 30:11,
30:24, 71:18
**remains** [1] - 84:23
**remarks** [2] - 39:6,
47:12
**remediate** [2] - 60:9,
60:25
**remediation** [1] -
60:15
**remedy** [2] - 10:16,
24:20
**remember** [1] - 79:14
**remind** [2] - 18:7, 18:8
**render** [1] - 62:11
**repackage** [1] - 60:13
**repeat** [2] - 18:11,
27:15
**repeatedly** [1] - 72:4
**replicated** [1] - 67:16
**reply** [4] - 41:24,
41:25, 42:4, 42:5
**report** [5] - 40:5, 42:9,
44:11, 44:13, 44:14
**reporter** [1] - 4:5
**REPORTER** [2] - 96:5,
96:8
**Reporter** [1] - 1:22
**Reporter/**
**Transcriber** [1] -
96:16
**reports** [4] - 15:18,
77:24, 92:2, 93:16
**represent** [1] - 9:13
**representations** [2] -
10:10, 46:10
**representative** [5] -
33:1, 33:10, 34:11,
34:14, 51:16
**representatives** [12] -
32:15, 35:5, 35:9,
36:1, 36:22, 37:8,
37:11, 37:15, 39:3,
39:11, 39:15, 40:15
**represented** [2] -
22:18, 62:15
**request** [25] - 19:9,
24:18, 27:21, 28:17,
33:22, 36:21, 42:3,
50:1, 56:10, 58:23,

58:25, 68:4, 71:11,
72:4, 72:16, 72:17,
73:3, 73:12, 76:9,
77:15, 81:21, 81:23,
82:1, 82:14
**requested** [6] - 12:18,
12:19, 13:18, 14:8,
33:14, 78:7
**requesting** [1] - 81:18
**requests** [30] - 13:3,
21:12, 24:10, 37:1,
42:10, 42:20, 45:25,
58:2, 69:25, 70:24,
71:1, 71:2, 71:8,
71:18, 71:25, 72:6,
72:14, 79:16, 82:4,
82:14, 90:12, 90:19,
90:24, 90:25, 91:20,
92:15, 93:11, 94:3,
94:15, 94:22
**require** [6] - 24:25,
39:1, 50:5, 50:6,
56:11, 88:16
**required** [5] - 50:3,
52:20, 73:17, 75:2,
88:7
**requirement** [6] -
17:19, 19:11, 19:17,
19:23, 24:18, 56:22
**requires** [2] - 85:7,
92:9
**requiring** [2] - 86:3,
86:6
**reschedule** [2] -
18:23, 19:6
**resolution** [7] - 6:23,
50:4, 53:12, 57:25,
58:8, 87:15, 90:6
**resolve** [4] - 8:19,
58:7, 69:5, 80:8
**resolved** [8] - 33:16,
39:13, 41:18, 54:19,
70:6, 71:22, 71:24,
89:5
**respect** [7] - 5:19,
8:10, 14:11, 17:13,
18:6, 18:10, 19:9,
27:21, 30:5, 31:4,
31:5, 32:6, 34:2,
34:10, 40:16, 49:15,
50:1, 52:22, 57:25,
58:2, 58:9, 61:19,
64:19, 70:1, 85:20,
88:12, 89:18
**respected** [1] - 28:7
**respond** [11] - 12:24,
16:14, 17:13, 24:11,
26:15, 38:15, 42:1,
51:5, 58:6, 68:7,
75:24

**responded** [1] - 76:18
**responding** [1] -
68:25
**response** [11] - 12:18,
32:13, 39:23, 42:5,
52:4, 61:8, 64:18,
64:20, 65:10, 92:15
**responses** [3] - 60:19,
63:21, 72:2
**responsibility** [1] -
25:24
**responsive** [2] -
21:12, 51:6
**responsiveness** [1] -
44:4
**rest** [2] - 51:17, 75:19
**restrictions** [1] - 31:23
**result** [4] - 11:21,
11:23, 12:20, 46:24
**results** [5] - 11:10,
12:2, 12:4, 21:24,
22:3
**retail** [1] - 82:2
**Retailer** [1] - 3:21
**retailer** [5] - 72:11,
72:21, 74:20, 78:9,
81:24
**retailers** [5] - 35:6,
73:3, 73:15, 73:22,
75:1
**retailers'** [1] - 75:17
**retract** [1] - 51:7
**reveals** [1] - 63:6
**reverse** [1] - 23:6
**review** [17] - 10:6,
14:6, 16:6, 20:14,
21:13, 23:15, 44:2,
44:4, 58:24, 66:3,
73:19, 85:23, 86:7,
86:12, 86:24, 87:24,
91:4
**reviewed** [2] - 13:9,
22:23
**reviewing** [2] - 21:1,
35:18
**revised** [1] - 94:6
**revisit** [1] - 82:10
**Richer** [2] - 75:23,
80:21
**RICHER** [6] - 3:20,
75:23, 76:3, 80:17,
80:20, 82:18
**Richmark** [1] - 42:2
**ripe** [6] - 5:14, 7:19,
20:6, 70:11, 88:24
**Rite** [1] - 3:22
**RMR** [1] - 96:16
**Road** [2] - 2:18, 3:11
**Robert** [1] - 3:24
**roll** [1] - 56:3

**rolled** [1] - 85:2
**rollout** [1] - 25:22
**Roseland** [1] - 1:14
**Roszel** [2] - 3:11
**round** [2] - 44:6, 79:19
**RPR** [1] - 96:16
**RUBEN** [1] - 1:16
**Ruben** [2] - 30:9,
30:19
**Rule** [1] - 24:10
**rule** [4] - 49:23, 50:6,
53:17, 56:17
**ruled** [1] - 26:25
**rules** [9] - 19:12,
24:25, 25:25, 31:23,
50:5, 50:16, 56:8,
56:11, 85:6
**ruling** [2] - 27:7, 87:22
**rulings** [3] - 49:18,
53:20, 53:23
**run** [2] - 8:21, 75:5
**running** [2] - 8:20,
12:23

### S

**sake** [1] - 79:10
**sale** [3] - 73:21, 77:24
**sale-by-sale** [1] -
77:24
**sales** [6] - 15:13,
15:24, 73:20, 77:20,
78:4, 79:6
**sanction** [12] - 26:5,
27:18, 28:17, 28:19,
49:8, 56:1, 56:10,
56:12, 56:13, 56:15,
56:25
**sanctionable** [1] -
56:18
**sanctioned** [3] - 52:7,
53:9, 55:6
**sanctions** [24] - 18:1,
18:2, 26:20, 26:25,
27:21, 28:1, 28:14,
29:1, 47:21, 48:23,
49:1, 51:14, 52:2,
56:19, 57:20, 58:2,
58:5, 58:6, 58:10,
58:13, 58:15, 86:21,
87:17, 87:18
**Sanjay** [2] - 15:4,
20:15
**Sanjay's** [2] - 21:23,
22:3
**sat** [2] - 55:10, 67:7
**satisfaction** [1] - 73:4
**satisfied** [1] - 45:11
**saving** [1] - 16:14
**saw** [1] - 15:2
**scheduled** [5] - 5:10,

*7:23, 10:18, 30:15, 31:25*

**scheduling** [10] - 10:19, 33:19, 39:8, 39:18, 40:17, 41:2, 41:6, 91:22, 91:23, 91:25

**Schneider** [9] - 72:4, 84:2, 84:9, 87:16, 88:2, 91:11, 91:15, 93:7, 94:11

**Schneider's** [3] - 83:15, 88:12, 88:16

**scope** [2] - 37:22, 38:8

**screening** [2] - 59:15, 59:17

*se* [1] - 95:18

**seal** [1] - 83:5

**sealed** [1] - 83:5

**sealing** [3] - 85:18, 85:22, 86:4

**search** [1] - 20:2

**second** [7] - 33:19, 35:22, 39:21, 61:14, 69:24, 71:8, 72:20

**secondly** [1] - 46:4

**secrecy** [1] - 41:22

**secret** [2] - 44:2, 44:6

**section** [1] - 34:15

*see* [13] - 17:5, 26:10, 29:7, 41:6, 45:17, 60:18, 69:7, 69:8, 74:10, 82:11, 93:15, 96:7

**seeing** [3] - 28:19, 82:5, 82:7

*seek* [3] - 91:14, 91:18, 92:9

**seeking** [5] - 65:1, 65:17, 78:9, 79:20, 91:20

*seem* [5] - 78:7, 78:8, 81:5, 81:8, 84:11

**self** [1] - 87:4

**self-executing** [1] - 87:4

**selling** [1] - 22:13

**send** [1] - 34:8

**sense** [3] - 5:3, 35:23, 77:8

**sent** [11] - 10:3, 15:2, 16:10, 17:21, 29:8, 44:3, 64:18, 66:12, 76:21, 81:4, 92:11

**Sentry** [1] - 3:4

**separately** [1] - 49:13

**September** [2] - 64:11, 66:11

**serial** [1] - 50:20

**serious** [6] - 26:20,

26:22, 29:3, 29:11, 29:15, 53:22

**seriously** [3] - 19:8, 29:17, 54:5

**seriousness** [2] - 29:13, 29:20

**serve** [1] - 92:10

**served** [5] - 16:15, 24:10, 90:18, 93:9, 93:21

**serving** [1] - 92:6

**set** [9] - 11:7, 59:9, 69:24, 76:10, 79:15, 86:22, 88:2, 90:19, 94:1

**Seth** [4] - 4:12, 7:1, 32:18, 47:24

**SETH** [1] - 2:8

**sets** [2] - 16:2, 16:15

**setting** [1] - 13:16

**several** [5] - 19:25, 58:4, 59:24, 72:8, 88:18

**severely** [2] - 22:19, 23:2

**shah** [1] - 11:1

**Shah** [4] - 9:14, 13:1, 13:7, 13:14

**SHAH** [2] - 3:10, 13:15

**sheet** [2] - 91:4, 91:7

**sheets** [5] - 35:13, 35:17, 40:8, 91:17, 94:12

**shift** [1] - 76:25

**short** [5] - 4:25, 15:18, 33:7, 38:3, 39:13

**shortcomings** [1] - 47:14

**shortly** [3] - 21:18, 22:7, 71:5

**show** [2] - 75:5, 75:7

**showed** [1] - 22:14

**showing** [1] - 28:16

**shown** [2] - 74:10, 91:19

**shows** [1] - 11:21

**sic** [1] - 35:25

**side** [4] - 21:5, 32:12, 34:8, 41:13

**sides** [1] - 5:1

**sign** [1] - 96:6

**signal** [2] - 26:7, 26:11

**significant** [2] - 26:4, 50:1

**silence** [2] - 4:6, 41:15

**similar** [4] - 35:7, 70:23, 71:2, 88:17

**similarly** [2] - 79:7, 89:19

**simply** [8] - 28:1, 56:8,

61:20, 61:22, 62:8, 63:2, 65:6, 68:19

**Singh** [3] - 15:4, 15:7, 20:15

**Singh's** [1] - 23:17

**sitting** [1] - 39:5

**situation** [4] - 25:15, 29:13, 40:8, 51:19

*six* [4] - 59:12, 88:3, 88:17, 90:25

**skis** [1] - 13:7

**SLATER** [24] - 1:13, 1:13, 4:19, 5:12, 6:8, 6:13, 8:5, 25:7, 43:8, 43:10, 46:20, 50:9, 50:11, 54:25, 57:3, 83:8, 83:10, 83:13, 87:19, 89:2, 92:24, 93:2, 94:25, 95:23

**Slater** [19] - 4:19, 5:11, 6:8, 7:16, 25:4, 25:7, 43:8, 43:9, 46:5, 46:16, 46:19, 47:13, 50:7, 54:1, 54:23, 57:4, 83:8, 86:23, 92:24

**slippery** [1] - 63:15

**slope** [1] - 63:15

**small** [1] - 12:14

**SMITH** [5] - 3:24, 95:6, 95:10, 95:15, 95:18

**snippets** [3] - 53:5, 53:8, 53:14

*so..* [1] - 55:22

**software** [2] - 11:8, 11:12

**Solco** [1] - 2:12

**sold** [6] - 22:16, 73:20, 74:3, 74:4, 74:19, 79:6

**solve** [1] - 78:14

**sometimes** [3] - 23:12, 30:21, 55:5

**somewhat** [2] - 36:23, 37:25

**somewhere** [1] - 12:4

**soon** [5] - 20:24, 21:2, 21:16, 21:21, 30:25

**sooner** [1] - 94:21

**SOP** [2] - 13:3, 13:4

**SOPs** [2] - 13:22, 13:23

**sorry** [16] - 16:7, 21:9, 30:18, 38:1, 38:13, 48:2, 48:5, 48:7, 48:10, 49:10, 52:17, 64:3, 71:25, 73:25, 85:14, 86:23

**sort** [16] - 9:13, 10:11, 12:21, 33:11, 38:17,

40:8, 65:22, 66:2, 75:20, 76:5, 76:24, 77:12, 77:19, 78:5, 81:3, 91:8

**sought** [3] - 50:19, 59:17, 94:18

**sound** [1] - 55:10

**sourcing** [1] - 65:20

**South** [2] - 2:3, 2:10

**Southern** [1] - 19:18

**speaker** [1] - 48:17

**speaking** [7] - 4:6, 4:11, 30:8, 30:19, 31:7, 32:7, 34:3

**SPECIAL** [1] - 1:10

**Special** [3] - 4:2, 37:7, 37:24

**specific** [20] - 15:12, 37:4, 41:20, 49:3, 52:20, 53:5, 53:7, 56:16, 56:21, 56:24, 57:1, 57:9, 65:2, 66:1, 72:17, 78:11, 78:13, 80:12, 81:23, 84:25

**specifically** [12] - 6:19, 15:12, 19:16, 19:22, 23:23, 39:9, 44:11, 46:18, 73:6, 83:14, 86:5, 92:1

**specifics** [2] - 82:9

**spent** [1] - 78:10

**spill** [1] - 93:5

**spokesperson** [1] - 4:17

**spot** [1] - 38:2

**spreadsheet** [9] - 10:4, 10:7, 12:15, 13:10, 13:16, 15:22, 22:7, 22:11, 22:14

**sprung** [1] - 55:10

**stage** [2] - 28:11, 94:13

**stand** [1] - 33:5

**Stanoch** [3] - 67:2, 70:21, 76:19

**start** [5] - 4:24, 17:18, 20:18, 33:14, 63:13

**started** [2] - 4:3, 33:20

**starting** [1] - 81:22

**state** [3] - 41:22, 44:2, 44:6

**statement** [1] - 61:23

**statements** [1] - 89:16

**States** [2] - 19:19, 62:16

**states** [1] - 41:2

**STATES** [1] - 1:1

**status** [4] - 21:20, 35:18, 42:9, 92:21

40:8, 65:22, 66:2, 75:20, 76:5, 76:24, 77:12, 77:19, 78:5, 81:3, 91:8

**stay** [1] - 95:4

**Steamfitters** [1] - 35:4

**stenography** [1] - 1:24

**step** [2] - 13:19, 54:20

**steps** [2] - 66:21, 93:3

**Steve** [1] - 89:12

**STEVEN** [1] - 2:8

*still* [15] - 5:10, 5:25, 9:1, 10:17, 11:4, 13:10, 19:5, 28:21, 30:12, 30:21, 45:19, 72:13, 81:15, 92:14, 96:4

**stinging** [1] - 26:4

**stock** [2] - 79:17, 80:11

**stocked** [1] - 79:24

**stopped** [1] - 22:13

**stores** [1] - 79:1

**straight** [1] - 59:9

**straightforward** [3] - 22:21, 26:2, 27:5

**strategy** [2] - 23:22, 64:24

**streamlined** [1] - 51:19

**Street** [4] - 1:17, 1:20, 2:10, 3:17

**Streets** [1] - 1:7

**stricken** [2] - 49:2, 92:15

**strike** [7] - 41:23, 41:25, 42:3, 47:21, 56:2, 58:5, 58:10

**striking** [4] - 28:18, 48:22, 52:2, 52:3

**string** [1] - 60:17

**strong** [1] - 26:11

**struggle** [1] - 82:5

**struggling** [1] - 74:2

**subject** [7] - 11:6, 24:4, 46:1, 56:12, 58:25, 62:3, 86:5

**submission** [4] - 17:16, 31:12, 42:18, 59:7

**submissions** [2] - 11:11, 33:8

**submit** [6] - 17:24, 26:19, 31:11, 70:15, 82:3, 82:15

**submitted** [2] - 55:12, 55:15

**subsequent** [1] - 7:15

**substance** [6] - 57:24, 65:4, 73:2, 73:12, 76:14, 77:15

**substantial** [13] - 5:4, 28:8, 42:11, 42:19,

43:1, 43:15, 43:23, 44:7, 44:24, 45:11, 45:14, 46:4, 47:9
**substantially** [7] - 24:25, 28:10, 28:12, 35:16, 42:24, 43:4, 45:13
**substantive** [4] - 15:5, 55:7, 56:1, 62:7
**sudden** [1] - 76:24
**sufficiently** [1] - 82:12
**suggest** [4] - 29:16, 54:16, 59:21, 72:23
**suggested** [2] - 73:5, 75:15
**suggesting** [1] - 91:23
**suggestion** [1] - 69:1
**Suite** [5] - 1:17, 2:6, 2:18, 3:17, 3:20
**summarize** [1] - 83:2
**summarizing** [1] - 83:6
**summer** [1] - 11:3
**Sunday** [1] - 55:12
**supplement** [4] - 6:2, 6:20, 7:6, 7:11
**supplemental** [2] - 18:16, 27:10
**supplementing** [2] - 6:17, 7:14
**supplied** [1] - 51:11
**supply** [4] - 22:12, 77:23, 79:24, 80:11
**support** [1] - 41:25
**supposed** [5] - 15:7, 24:9, 24:17, 26:1, 50:24
**sur** [2] - 41:25, 42:4
**sur-reply** [2] - 41:25, 42:4
**surgical** [1] - 51:14
**surrounds** [1] - 76:16
**suspended** [1] - 33:20
**swamped** [1] - 53:23
**sway** [1] - 54:8
**sweep** [1] - 20:22
**swing** [1] - 9:14
**synthesizing** [1] - 65:9

## T

**tailored** [1] - 91:20
**tailoring** [1] - 79:12
**talks** [1] - 16:11
**tandem** [1] - 73:19
**targeted** [1] - 16:2
**task** [1] - 54:4
**team** [1] - 4:20
**tee** [2] - 76:13, 77:2
**teed** [2] - 55:7, 56:1

**teed-up** [1] - 55:7
**TELECONFERENCE** [1] - 1:6
**teleconference** [1] - 4:1
**ten** [3] - 41:2, 45:4, 67:24
**ten-day** [1] - 67:24
**tended** [1] - 79:24
**tendency** [1] - 18:5
**tens** [2] - 23:14, 84:17
**terms** [8] - 7:18, 32:1, 36:16, 37:10, 40:14, 67:21, 81:25, 89:25
**test** [1] - 21:24
**tested** [1] - 12:3
**testify** [2] - 15:12, 49:20
**testimony** [18] - 6:2, 7:6, 7:9, 7:14, 12:2, 15:19, 16:5, 49:15, 51:17, 53:3, 53:20, 55:19, 56:16, 56:21, 56:24, 57:7, 74:12, 79:20
**testing** [9] - 10:24, 11:21, 11:23, 12:1, 12:6, 15:7, 21:22, 91:8, 94:20
**Teva** [36] - 2:19, 2:19, 31:3, 31:5, 31:6, 31:7, 31:9, 40:25, 59:1, 59:3, 59:9, 59:11, 59:22, 60:16, 60:22, 61:4, 61:21, 62:14, 63:25, 64:3, 64:4, 64:17, 64:23, 64:24, 65:17, 65:20, 65:24, 66:1, 66:6, 66:8, 66:21, 68:11, 89:13, 90:16
**Teva's** [10] - 31:5, 58:23, 60:6, 60:8, 60:11, 63:23, 64:18, 66:9, 66:20, 67:6
**texted** [1] - 55:18
**THE** [4] - 1:1, 1:10, 96:5, 96:8
**theme** [1] - 60:2
**themselves** [4] - 59:24, 62:24, 63:4, 90:24
**they've** [8] - 10:12, 11:20, 19:3, 26:1, 38:22, 43:24, 61:3, 83:18
**thinking** [1] - 95:21
**third** [6] - 22:12, 34:24, 35:4, 35:9, 46:9, 66:13

**third-party** [4] - 22:12, 34:24, 35:4, 35:9
**Thomas** [1] - 4:2
**THOMAS** [1] - 1:11
**THORNBURG** [1] - 3:19
**thousands** [8] - 23:12, 23:13, 23:14, 59:10, 79:1, 84:16, 84:17, 86:24
**three** [7] - 5:25, 7:9, 8:21, 22:15, 22:21, 22:25, 44:4, 58:24, 59:18, 59:23, 60:1, 64:14, 64:17, 64:22, 65:11, 69:15
**throughout** [1] - 49:25
**tie** [1] - 82:13
**tied** [1] - 69:1
**timeline** [2] - 67:24
**timing** [7] - 35:23, 37:15, 37:16, 38:6, 38:12, 70:22, 77:12
**tirelessly** [1] - 43:2
**Tissue** [1] - 62:10
**today** [18] - 4:14, 4:24, 5:8, 6:3, 6:14, 7:12, 17:2, 25:19, 27:1, 30:14, 33:19, 39:6, 41:14, 42:22, 44:14, 64:23, 71:22, 71:24
**today's** [2] - 71:5, 90:23
**together** [4] - 31:16, 33:9, 74:5, 74:13
**tomorrow** [1] - 6:15
**took** [3] - 13:19, 65:25, 68:4
**topics** [3] - 12:19, 12:20, 16:5
**Torrent** [21] - 3:15, 3:15, 32:5, 32:6, 32:7, 32:9, 83:14, 83:23, 84:9, 84:19, 88:1, 88:2, 88:4, 88:7, 88:10, 88:12, 88:13, 88:15, 88:16, 88:18, 89:3
**totally** [1] - 60:13
**trace** [1] - 72:10
**traceability** [4] - 77:19, 78:8, 78:15, 82:13
**track** [1] - 11:9
**tracking** [1] - 72:7
**transaction** [2] - 77:21
**transaction-by-transaction** [1] - 77:21
**transcript** [4] - 1:24,

49:6, 51:11, 96:13
**transcription** [1] - 1:25
**transcripts** [2] - 81:7, 89:19
**transferred** [1] - 35:12
**transparent** [2] - 26:3, 44:8
**TRAURIG** [1] - 2:16
**Traurig** [1] - 89:12
**travel** [1] - 67:8
**traveled** [2] - 54:11, 54:12
**traveling** [1] - 76:20
**treat** [2] - 41:24, 42:3
**tremendous** [1] - 4:25
**trench** [4] - 51:2, 55:24, 56:7, 84:14
**trial** [1] - 87:3
**triangulate** [2] - 78:12, 82:6
**tried** [1] - 51:14
**trigger** [1] - 55:3
**triggering** [1] - 44:6
**TRISCHLER** [2] - 2:14, 30:18
**Trischler** [1] - 30:19
**trouble** [1] - 74:5
**true** [2] - 46:3, 57:7
**try** [17] - 5:4, 6:13, 6:14, 17:25, 18:4, 23:5, 27:12, 31:22, 31:24, 33:7, 44:9, 46:13, 48:12, 53:20, 81:25, 83:1, 91:13
**trying** [12] - 18:17, 18:20, 31:22, 43:19, 72:13, 74:23, 74:24, 75:1, 77:10, 77:18, 85:4, 93:6
**Tuesday** [2] - 8:23, 51:24
**turn** [4] - 9:8, 22:5, 53:14, 55:23
**twenty** [1] - 59:12
**twenty-six** [1] - 59:12
**two** [22] - 5:19, 7:9, 13:20, 15:6, 16:16, 18:21, 19:15, 21:3, 23:15, 30:12, 31:19, 39:14, 40:15, 45:8, 50:14, 55:1, 56:11, 60:1, 61:19, 63:23, 64:9, 64:16
**twofold** [1] - 81:14
**type** [2] - 12:1, 12:5
**typing** [1] - 32:19

## U

**U.S** [4] - 1:7, 2:12,

21:4, 21:5
**ULMER** [1] - 3:16
**ultimately** [1] - 40:11
**unacceptable** [1] - 26:13
**unavailable** [1] - 76:19
**unbelievable** [1] - 25:14
**under** [5] - 5:17, 29:2, 30:12, 66:22, 84:21
**underlying** [4] - 11:12, 12:8, 22:4, 67:17
**underpinning** [1] - 66:3
**underscore** [2] - 29:3, 29:12
**understandably** [1] - 76:20
**undertake** [2] - 39:16, 75:14
**undertaken** [1] - 39:7, 91:8
**undertook** [1] - 66:21
**underway** [2] - 32:1, 33:16
**undoubtedly** [1] - 94:18
**undue** [1] - 73:4
**unfortunately** [2] - 18:4, 84:7
**UNITED** [1] - 1:1
**United** [2] - 19:19, 62:16
**unless** [3] - 28:20, 36:2, 71:21
**unmute** [1] - 30:22
**unnecessary** [2] - 27:23, 75:17
**unquote** [1] - 24:22
**unrelated** [1] - 60:13
**up** [31] - 8:9, 8:25, 9:3, 9:15, 17:12, 20:5, 21:17, 24:20, 30:10, 30:19, 34:17, 34:18, 44:20, 46:24, 55:7, 56:1, 58:22, 66:16, 71:21, 72:23, 76:13, 77:3, 77:8, 77:10, 78:23, 79:3, 79:4, 81:20, 88:3, 90:10, 95:4
**upcoming** [1] - 8:23
**USA** [2] - 2:19, 3:8
**usable** [1] - 11:18

## V

**valid** [1] - 73:10
**validation** [1] - 23:19
**VALSARTAN** [1] - 1:4

**valsartan** [16] - 45:6, 60:12, 60:13, 60:14, 61:12, 62:14, 62:16, 62:18, 62:23, 63:1, 63:4, 65:20, 65:24, 66:21, 73:18, 81:9
**value** [1] - 77:7
**Vanaskie** [3] - 4:2, 85:14, 95:6
**VANASKIE** [123] - 1:11, 4:3, 4:16, 4:22, 5:13, 6:12, 6:24, 7:3, 7:13, 8:8, 8:17, 9:10, 9:17, 12:12, 12:25, 13:13, 14:7, 14:15, 14:18, 14:23, 16:8, 17:8, 20:10, 23:4, 23:8, 25:6, 26:17, 27:15, 29:24, 30:17, 31:1, 32:3, 32:11, 32:14, 32:17, 32:22, 33:5, 34:1, 34:7, 34:17, 34:20, 34:23, 36:15, 37:5, 37:21, 37:24, 38:11, 38:16, 40:12, 41:10, 41:17, 42:16, 43:6, 43:9, 45:21, 45:23, 46:19, 47:6, 47:16, 47:25, 48:3, 48:7, 48:12, 48:15, 48:17, 48:20, 50:7, 50:10, 52:15, 54:23, 56:6, 57:16, 58:21, 59:4, 61:15, 62:20, 63:18, 65:14, 67:13, 68:8, 69:4, 69:17, 69:20, 69:23, 70:7, 70:15, 70:18, 71:7, 71:16, 73:1, 73:24, 74:2, 74:17, 75:22, 76:1, 80:4, 80:16, 80:19, 81:22, 82:19, 83:9, 83:12, 85:11, 86:9, 88:10, 89:7, 89:11, 89:14, 89:24, 90:9, 90:17, 92:22, 93:1, 94:10, 95:1, 95:3, 95:9, 95:13, 95:17, 95:21, 95:24, 96:6, 96:9
**variables** [2] - 52:22, 53:3
**various** [2] - 4:21, 10:18
**vendor** [7] - 10:3, 20:22, 23:18, 59:13, 59:14, 60:16, 60:24
**vendors** [1] - 22:14
**verbatim** [1] - 66:7
**version** [5] - 13:24,

68:14, 69:11
**versions** [1] - 13:6
**VIA** [1] - 1:6
**via** [1] - 4:1
**VICTORIA** [1] - 2:17
**Victoria** [4] - 31:8, 40:24, 59:2, 90:15
**view** [4] - 12:7, 36:15, 89:23, 89:24
**Vine** [1] - 3:17
**violating** [3] - 25:24, 25:25
**violation** [1] - 24:16
**virtually** [1] - 49:24
**vs** [2] - 19:17, 19:19

## W

**wait** [3] - 34:16, 44:8, 45:17
**waiting** [3] - 11:16, 12:9, 19:5
**Wallack** [1] - 9:13
**WALLACK** [1] - 3:9
**wants** [4] - 46:5, 47:4, 50:21, 52:8
**warfare** [4] - 51:3, 55:24, 56:7, 84:14
**warning** [4] - 29:11, 62:25, 63:1, 87:15
**warrant** [3] - 49:8, 53:12, 56:25
**warranted** [1] - 26:11
**watching** [1] - 25:13
**ways** [5] - 72:8, 75:15, 80:1, 80:10, 91:13
**Wednesday** [3] - 8:24, 55:21, 76:7
**week** [13] - 5:15, 6:16, 7:7, 7:21, 8:24, 18:13, 20:25, 21:8, 35:24, 47:18, 56:11, 67:4, 76:7
**weekend** [4] - 21:7, 21:8, 76:21, 76:22
**weeks** [1] - 56:11
**WERNER** [1] - 3:2
**Westlaw** [1] - 19:20
**what-abouting** [1] - 25:17
**whereas** [1] - 61:4
**wherein** [1] - 45:3
**WHITELEY** [23] - 1:19, 1:19, 34:4, 34:12, 34:19, 34:22, 34:25, 36:18, 37:13, 37:23, 37:25, 39:19, 70:4, 70:9, 70:17, 71:14, 71:17, 73:2, 74:1, 74:6, 74:22, 80:6, 82:17

**Whiteley** [11] - 34:5, 34:12, 38:21, 39:12, 39:19, 40:13, 70:5, 70:21, 71:15, 71:16, 80:6
**whiteley** [1] - 75:25
**wholesale** [2] - 87:24, 88:5
**Wholesaler** [1] - 3:18
**wholesaler** [4] - 69:25, 70:2, 70:20, 72:21
**wholesalers** [1] - 71:20
**willing** [5] - 19:2, 27:22, 76:11, 76:12, 92:14
**window** [3] - 74:14, 75:7, 75:8
**withheld** [2] - 41:22, 69:8
**witness** [5] - 7:22, 15:8, 57:19, 67:1, 94:18
**witness'** [1] - 56:14
**witnesses** [21] - 7:9, 10:21, 18:18, 24:24, 27:20, 30:6, 30:13, 31:6, 31:20, 31:24, 49:4, 49:20, 49:21, 51:5, 52:24, 53:21, 54:11, 54:12, 54:17, 58:2, 67:19
**witnesses'** [1] - 56:15
**word** [1] - 82:6
**words** [6] - 10:12, 11:20, 12:5, 55:5, 56:13, 78:13
**workspaces** [2] - 20:23, 21:4
**wrap** [1] - 72:23
**written** [5] - 26:20, 48:21, 52:10, 92:1, 92:3
**wrote** [3] - 21:17, 51:24, 55:13

## Y

**year** [5] - 30:20, 77:25, 80:24, 88:20, 94:7
**years** [2] - 45:8, 72:18
**yesterday** [11] - 9:19, 10:7, 11:1, 11:13, 14:2, 16:10, 17:16, 19:10, 31:11, 49:7, 51:23
**yield** [2] - 12:1, 12:6
**York** [3] - 3:14, 19:18
**yourself** [1] - 4:5

## Z

**zero** [1] - 12:4
**ZH** [2] - 7:5, 85:16
**Zhejiang** [1] - 2:12
**ZHP** [34] - 8:7, 41:23, 42:10, 42:13, 42:15, 43:24, 44:13, 45:3, 45:7, 46:13, 47:9, 47:20, 47:23, 49:19, 53:9, 54:10, 55:5, 55:23, 56:11, 56:14, 65:20, 66:8, 66:9, 66:14, 67:16, 67:17, 83:5, 83:18, 83:19, 83:23, 85:18, 85:21, 85:22, 87:20
**ZHP's** [1] - 52:6
**Zu** [2] - 66:9, 68:16