1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

                                    CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION              19-md-02875-RBK-KMW

_____    STATUS CONFERENCE
                                    VIA REMOTE ZOOM
                                    VIDEOCONFERENCE


     Mitchell H. Cohen Building & U.S. Courthouse
     4th & Cooper Streets
     Camden, New Jersey  08101
     June 16, 2021
     Commencing at 4:00 P.M.


**B E F O R E:**               SPECIAL MASTER THE HONORABLE
                               THOMAS I. VANASKIE


**A P P E A R A N C E S:**

     MAZIE SLATER KATZ & FREEMAN, LLC
     BY:  ADAM M. SLATER, ESQUIRE
     103 Eisenhower Parkway
     Roseland, New Jersey  07068
     For the Plaintiffs


     KANNER & WHITELEY, LLC
     BY:  CONLEE S. WHITELEY, ESQUIRE
     BY:  DAVID J. STANOCH, ESQUIRE
     BY:  LAYNE HILTON, ESQUIRE
     701 Camp Street
     New Orleans, Louisiana  70130
     For the Plaintiffs

          Camille Pedano, Official Court Reporter
                camillepedano@gmail.com
                   609-774-1494

   Proceedings recorded by mechanical stenography; transcript
           produced by computer-aided transcription.

```
 1   A P P E A R A N C E S (Continued):

 2         KIRTLAND & PACKARD LLP
           BY:  BEHRAM V. PAREKH, ESQUIRE
 3         1638 South Pacific Coast Highway
           Redondo Beach, California  90277
 4         For the Plaintiffs

 5         DUANE MORRIS LLP
           BY:  SETH A. GOLDBERG, ESQUIRE
 6         BY:  JESSICA PRISELAC, ESQUIRE
           30 South 17th Street
 7         Philadelphia, Pennsylvania  19103
           For the Defendants, Prinston Pharmaceuticals,
 8         Solco Healthcare U.S. LLC, and
           Zhejiang Huahai Pharmaceuticals Ltd.
 9
           GREENBERG TRAURIG LLP
10         BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
           BY:  BRIAN H. RUBENSTEIN, ESQUIRE
11         3333 Piedmont Road, NE, Suite 2500
           Atlanta, Georgia  30305
12         For the Defendants, Teva Pharmaceutical Industries Ltd.,
           Teva Pharmaceuticals USA, Inc., Actavis LLC,
13         and Actavis Pharma, Inc.

14         HILL WALLACK, LLP
           BY:  ERIC I. ABRAHAM, ESQUIRE
15              NAKUL Y. SHAH, ESQUIRE
           21 Roszel Road
16         Princeton, New Jersey 08540
           For the Defendants, Hetero Drugs and Hetero Labs
17
           ULMER & BERNE LLLP
18         BY:  JEFFREY D. GEOPPINGER, ESQUIRE
           600 Vine Street, Suite 2800
19         Cincinnati, Ohio 445202
           For the Wholesaler Defendants and AmerisourceBergen
20
     ALSO PRESENT:
21
           LORETTA SMITH, ESQUIRE
22         Judicial Law Clerk to The Honorable Robert B. Kugler

23         Larry MacStravic, Courtroom Deputy

24

25
```

1    (PROCEEDINGS held remotely via Zoom videoconference before

2    Special Master The Honorable Thomas I. Vanaskie at 4:00 P.M.)

3            JUDGE VANASKIE:  I see Mr. Slater.  You are ready to

4    go?

5            MR. SLATER:  Always.

6            JUDGE VANASKIE:  Who will be speaking on behalf of the

7    defense today?

8            MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

9    I'll be happy to take the lead and then pass it off as

10   necessary.

11           JUDGE VANASKIE:  Well, why don't we get started then.

12   There are a few more ringing in but we can get started.

13           We'll start with, I was going to go through the

14   defense's order first, if that's okay, primarily because that

15   letter was so short and I thought, well, maybe this is a good

16   sign.  We'll see how this conference goes.

17           In the defense letter, the first item on the agenda is

18   really I think the last item on the plaintiffs' letter which is

19   Humana's proposed motion.

20           So who will be addressing this for the defense?

21           MR. RUBENSTEIN:  Good afternoon, Your Honor.  This is

22   Brian Rubenstein from Greenberg Traurig.

23           JUDGE VANASKIE:  So Humana wants to file a motion, is

24   that what I understand?  I mean, I haven't seen a motion.  It

25   wants to file a motion to stay discovery?

```
 1           MR. RUBENSTEIN:  Sorry, Judge, I don't know if you can
 2  hear me.  My Internet is just a little unstable it looks like.
 3           No, there is no motion pending.
 4           JUDGE VANASKIE:  Okay.  You are coming through fine on
 5  my end.
 6           MR. RUBENSTEIN:  Oh, good.
 7           JUDGE VANASKIE:  So what's this all about then?
 8           MR. RUBENSTEIN:  So, I guess Humana has reached out to
 9  the defendants to ask if we would agree to stay their case,
10  which the manufacturing defendants have not agreed to.  And we
11  actually were a little surprised to see this on the agenda for
12  today.  But if they would like to have their stay then the
13  proper --
14           JUDGE VANASKIE:  Is this premature?  I'm sorry.
15           MR. RUBENSTEIN:  Yes, I think the proper course would
16  be for them to file a motion and then let the motion process
17  play out.
18           JUDGE VANASKIE:  All right.  You will see if you can
19  reach some agreement.  I don't think there's a need to have any
20  discussion on this today.
21           Mr. Slater, are you speaking on behalf of plaintiffs
22  on this issue?  I'm not even sure, is somebody here for Humana?
23           MR. SLATER:  There is.  And I think Conlee Whiteley
24  was going to also address it, Your Honor.
25           JUDGE VANASKIE:  All right.  We'll hear from Ms.
```

1  Whiteley.

2          MS. WHITELEY:  Good afternoon, Your Honor.  This is

3  Conlee Whiteley.  And my colleague, Ben Waldman, is also on.

4  He represents Humana and he can answer any specific questions

5  as to Humana.  But the reason it's before you today is I

6  believe that Humana felt that motion practice might be

7  premature and thought it would be better to go through

8  leadership to have this come to the attention of the Court, and

9  not to ask for an advisory opinion but just, if nothing else,

10  to ask procedurally how you would like to have it handled.  And

11  they have prepared a motion and it could be filed momentarily

12  but they did not want to engage in motion practice if that was

13  not your preference.

14          JUDGE VANASKIE:  I see.  All right.

15          Mr. Rubenstein, you believe this should go through

16  motion practice?

17          MR. RUBENSTEIN:  I believe so.  I'm not sure what

18  other -- what other avenue there would be.  You know, we've had

19  some meet and confers and we've not been able to resolve the

20  issue, so I'm not sure what other avenue there is other than a

21  motion.

22          JUDGE VANASKIE:  What time urgency exists with respect

23  to this particular matter?

24          MR. RUBENSTEIN:  I don't think there is any particular

25  urgency.

```
 1            JUDGE VANASKIE:  All right.  From the plaintiffs'
 2   perspective?
 3            MS. WHITELEY:  We do not think there's any particular
 4   time urgency as well, Your Honor.  There's really been nothing
 5   going on and that's why we thought a stay would be unobjectable
 6   so...
 7            JUDGE VANASKIE:  Well, apparently, it is objectionable
 8   so we will go through motion practice on this.  All right?
 9            MR. RUBENSTEIN:  Thank you, Your Honor.
10            JUDGE VANASKIE:  If it needs to be resolved faster
11   than motion practice allows, you all will let me know.
12            MR. RUBENSTEIN:  Okay.
13            JUDGE VANASKIE:  All right.  Thank you.
14            MR. RUBENSTEIN:  Thank you, Your Honor.
15            JUDGE VANASKIE:  The next item on the agenda letter
16   from Greenberg Traurig is the Hetero discovery and privilege
17   log update.
18            So who wants to address this issue for the defense?
19            MR. ABRAHAM:  Good afternoon, Your Honor.  This is
20   Eric Abraham from Hill Wallack.  I represent Hetero Labs.  I
21   will be responding on behalf of Hetero Labs.  And I'm joined by
22   Nakul Shah who is here to steady my hand in case I goof
23   anything up.
24            JUDGE VANASKIE:  All right.  And I read your letter, I
25   read the defense letter, I read the plaintiffs' letter, and it
```

1  looks like maybe you all have a different perspective of what

2  is going on here.

3          So let me hear from you first, Mr. Abraham.

4          MR. ABRAHAM:  Thank you, Judge.

5          We -- some of these items are sort of tying up

6  loose-end-type issues; some are on the more important end of

7  the spectrum.  We had a meet and confer with Mr. Parekh at 2:30

8  this afternoon eastern time, whatever that is wherever Behram

9  is, and we reached agreement on a path forward on the

10  predominantly open issues.

11          I think some of the difficulties we've had, Judge, are

12  when we have meet and confers, frequently what we hear is,

13  well, we've seen these types of documents in discovery from

14  other defendants so you must have something similar.  And it's

15  helpful to us to kind of hear it framed that way because it

16  does help us talk to our client about it, but it's just not

17  always the case.  So what we've focused upon is, how can we

18  make sure that our clients have produced what it is that's

19  responsive.

20          The second issue that we've had, Judge, is that some

21  of the documentation that plaintiffs have sought has been in

22  the hands of a third-party testing laboratory called Analys

23  Labs, and we can do our best to work with Analys Labs to

24  produce what we think is responsive to plaintiffs, but what we

25  discovered in working with Analys Labs this past week is they

1  hadn't sent us everything that they should have, which we've

2  now obtained, and we have either produced or are producing the

3  balance of that from that third party to Mr. Parekh.  So at

4  this point --

5          JUDGE VANASKIE:  Okay, good.  Okay.

6          MR. ABRAHAM:  All right, I was just about to wrap up.

7          So at this point we do have a few remaining

8  depositions scheduled.  We have a path forward to get the

9  plaintiffs what they need in advance of those depositions.  In

10 fact, we designed a -- today, designed a 30(b)(6) additional

11 topic that I've consented to respond to that will put to bed

12 one of the issues that we have been kind of wrestling over how

13 to fix.

14         JUDGE VANASKIE:  All right.

15         MR. ABRAHAM:  I think we are appreciative, Judge, that

16 you've indulged us as we've tried to tie up these last loose

17 ends and get plaintiffs what they need and I think we are right

18 there at the end.

19         JUDGE VANASKIE:  Okay.  Let's hear from plaintiff on

20 this.

21         MR. PAREKH:  Good afternoon, Your Honor.

22         I don't think we're that far apart in terms of our

23 positions.  I mean, I think today was actually very helpful in

24 actually focusing down on the documents that are still missing.

25 Our concern is that we've done this before and focused down on

1   documents that are missing and then we've been told that

2   they've been produced and then when we look at what's been

3   produced, it's been a fraction of what we really needed.

4          The problem, of course, is that we have expert reports

5   due.  And we have been working on putting together the expert

6   reports related to Hetero, and we're still being prejudiced by

7   the fact that we don't have these documents.  And these

8   documents are not, you know, magic documents that we somehow

9   discovered the existence of late here.  I mean, they're really,

10  really basic documents.

11         For example, one of the things that they were going to

12  produce are the batch manufacturing record, chromatograms for

13  G.C. testing, chromatography testing.  These are documents that

14  were supposed to have been produced, you know, months and

15  months and months ago and were produced by all of the other

16  defendants and it wasn't until we finally said yesterday or the

17  day before yesterday, it's like, look, everyone else has

18  produced these.  Where are they?  We don't have them from you.

19  You know, we were now given an assurance today that, yes, they

20  found them, they are in paper form as we said they were and

21  that they're going to be produced.  But, I mean, we shouldn't

22  have had to do any of that, right?  You know, these are

23  documents that are responsive to the request and should have

24  been produced way before the November 2020 cutoff.

25         And so, you know, that's -- we've had to do a lot of

1   extra work in order to fix the problems that have been caused

2   by the fact that Hetero simply didn't make the production that

3   it was supposed to produce in response to our request for

4   production.  And although we're appreciative and we do have a

5   path forward, you know, today, we're not confident necessarily

6   that that will fix everything because we've had a path forward

7   before and it hasn't.  Hopefully it does.  I mean, you know,

8   I'm an optimist.  I like to always think that, you know, things

9   will fix things, but we do have a history where it hasn't.

10          So what we would like to do is what we requested,

11  which is, you know, have a firm cutoff date that says, okay,

12  after this date, we still want the documents, we still want you

13  to produce those documents, but you can't go back and, you

14  know, three months from now or five months from now produce

15  other documents and say, hey, now we have these other documents

16  and we're going to rely on them in order to dispute what your

17  expert said in their report or to, you know, dispute our

18  version of the story on summary judgment.  And that's the

19  concern that we have.

20          We believe we understand what happened based upon the

21  documents that have been produced and the documents that are

22  missing.  But if all of a sudden some new documents show up, we

23  don't believe Hetero should be able to rely on those documents.

24          JUDGE VANASKIE:  Well, I understand that.  I guess the

25  question is, when do we reach that point in time?  Are we there

1  now or is there a date in the future?  When is this path

2  forward to be completed?

3          MR. PAREKH:  I mean, we believed we were there now.

4  We do have an agreement for, you know, some specific documents

5  to be produced in the next week.  So perhaps, you know, a date

6  of next Friday for that cutoff to occur, rather than today, I

7  think would be a compromise.  And, you know, anything that is

8  produced after next Friday, you know, they can't use as part of

9  their defense.

10         THE COURT:  All right.  Mr. Abraham, do you want to

11  address that?

12         MR. ABRAHAM:  Yes, sir.  We're doing our best, which

13  is I think what the law requires of us.  There is a very robust

14  body of law in the District of New Jersey within the Third

15  Circuit that talks about the circumstances that would permit

16  the type of preclusive order that Mr. Parekh has just talked

17  about.  We've not had that type of history between us; he has

18  not made the type of showing those cases require; it's not been

19  presented by formal motion.  I don't think we're there yet,

20  Judge.

21         What we've done is we agree with Mr. Parekh that if

22  any of these additional documents are not produced by the time

23  he takes the deposition of the witness to which they're

24  relevant, he's asked us and we've agreed to keep that

25  deposition open.  But to start entering orders today or

1  deadlines today that would make it such that we would be

2  precluded from relying upon documents that may be discovered in

3  the future is simply not appropriate precisely because we don't

4  know what the circumstances would be that would lead to the

5  discovery of those documents in the future.

6          What I can tell you, Judge, is we don't practice law

7  by process of sandbagging.  We've been doing everything that we

8  can to work with plaintiffs to make sure that we produced the

9  documents to them.  We've had our own difficulties because of

10 having produced documents to Mr. Parekh and having identified

11 them by Bates number and plaintiffs haven't looked at the list.

12 I don't fault them for that.  This is a big case and

13 everybody's busy.  We're doing our level best with our client,

14 Judge, to produce responsive documents.  I appreciate

15 plaintiffs' patience so far.  I don't think we're at the point

16 where they've demonstrated they're being prejudiced, so I think

17 it's premature to set that type of a deadline.

18          Thank you.

19          JUDGE VANASKIE:  Yes, you know -- Mr. Parekh, did you

20 want to say anything else on this?

21          MR. PAREKH:  No, Judge.

22          JUDGE VANASKIE:  I'm not inclined to set a full-stop

23 deadline.  You know, I'm going to encourage you all to continue

24 to work the way you have worked.  I know it's frustrating on

25 plaintiffs' part.

```
 1            MR. ABRAHAM:  As do we, Judge.  I agree.  As do we.
 2            JUDGE VANASKIE:  So no hard stop.  There may come a
 3   point in time when something that gets produced, there will
 4   have to be an explanation, as you said, Mr. Abraham, for how it
 5   came about that it was just discovered and just produced and it
 6   may be sufficient, it may not be sufficient, it might be
 7   appropriate to say a sanction is warranted then, but it's all
 8   contextual and I am not going to impose an arbitrary deadline
 9   at this point in time.
10            I encourage you to continue to work forward.  I'm
11   pleased to hear, Mr. Parekh, that you have a path forward and I
12   know you've said there have been paths forward before but
13   please pursue it and, hopefully -- I'm an optimist as well.
14   I'm hoping this all gets worked out and it doesn't require any
15   intervention.  All right.  Thanks.
16            Anything else on Hetero?
17            MR. PAREKH:  No, Your Honor.  Thank you.
18            MR. ABRAHAM:  No, sir.
19            JUDGE VANASKIE:  Thanks.
20            The next item was the protective order motion to
21   compel production of Mr. Chen's custodial file and the
22   cross-motion for a protective order to preclude that.
23            I did issue a decision yesterday on that issue.  Did
24   you want to pursue that any more today, Mr. Goldberg?
25            MR. GOLDBERG:  I'm sorry, Your Honor.  We do not have
```

1    anything to pursue today.

2         JUDGE VANASKIE:  Okay.

3         MR. GOLDBERG:  We have Your Honor's order and we're

4    evaluating it.  Thank you.

5         JUDGE VANASKIE:  Okay.  I know it just came out.  It

6    took much longer than it should have.

7         And there's a request on the plaintiffs' side for some

8    estimate of the number of documents that would be produced.

9    This might be on the -- make sure I'm getting this -- yes, they

10   want an estimate of the number of pages, et cetera, a timeline

11   for production.  Are you there yet in terms of what might be

12   reasonable?

13        MR. GOLDBERG:  Your Honor, I'm going to turn that

14   specific question over to my colleague, Jessica Priselac.

15        JUDGE VANASKIE:  Okay.  Thank you.

16        Ms. Priselac.

17        MS. PRISELAC:  Good afternoon, Your Honor.

18        JUDGE VANASKIE:  Good afternoon.

19        MS. PRISELAC:  Just by way of brief explanation, I

20   think you read in our motion papers, Your Honor, that because

21   of the security and confidentiality concerns related to Mr.

22   Chen's files and also relatedly his chief of staff, Maggie

23   Kong's files, we -- our client and vendor needed to procure

24   certain hardware, specifically what's called an air-gapped

25   laptop, in order to ensure that what was collected would keep

1  secure.

2         Unfortunately, due to the chip shortage in Southeast

3  Asia, which is where most chips coming into China come from,

4  they were told that they would not be able to get this

5  equipment until July.  Understanding that Your Honor had given

6  us this order, what the vendor and the client did is go back,

7  find some older laptops and air-gapped laptops they had and

8  actually refurbished them to suit this purpose which took a few

9  weeks.

10         So the good news is, Your Honor, we now have the

11  equipment we need and they can start collecting June 21st.  But

12  the bad news, Your Honor, obviously, is that the collection has

13  not started.  The isolation and identification of the documents

14  has taken place but not the actual collection processing.

15         JUDGE VANASKIE:  Okay.

16         MS. PRISELAC:  So we do think, though, Your Honor, if

17  we work hard, we believe we'll be able to get the production to

18  the plaintiffs three weeks from Monday.  And, obviously, we can

19  keep the Court updated on that process as it continues.

20         JUDGE VANASKIE:  Okay.  So that will be like July 12,

21  something like that?

22         MS. PRISELAC:  I'm looking at a calendar right now,

23  Your Honor.

24         Yes, that's correct.  I'm sorry.

25         JUDGE VANASKIE:  Go ahead.

```
1              MS. PRISELAC:  Your Honor, actually -- yes, that's
2    correct.  I just wanted to make sure our date was right.
3              JUDGE VANASKIE:  I was wondering what the hardware
4    problems were.  I saw that in the letter.
5              MS. PRISELAC:  Yes, Your Honor.
6              JUDGE VANASKIE:  That's very interesting and --
7              MS. PRISELAC:  Yes, I've learned much more about chip
8    manufacturing than I ever thought I would, Your Honor.
9              JUDGE VANASKIE:  Or cared to know.
10             Is Mr. Slater going to address this question?
11             MR. SLATER:  Yes, Your Honor.
12             I'm a little disappointed --
13             JUDGE VANASKIE:  Sure.
14             MR. SLATER:  -- to be hearing this for the first time
15   now when Your Honor ordered ZHP to commence this process, I
16   don't have the date in front of me but it was, I'm guessing --
17   I don't have the date, it was at least a month ago, I think,
18   probably longer, when Your Honor said, while the motion's
19   pending that ZHP should collect and process that custodial
20   file.  So I'm really at a loss as to why we're being told this
21   today after the motion was decided.  I think that's very
22   disappointing and it's frustrating because we, obviously, want
23   to get these documents as soon as we can.
24             I don't know anything about chips.  The only chips I
25   know are chips at a casino and I'm usually losing them, not
```

1   getting them, so...  But, you know, I don't know what any of

2   that means.  I don't -- I don't even know -- from what counsel

3   said, I can't tell if the documents have been collected or not,

4   how large the custodial file is, I just don't know.  So I'm

5   really -- I'm at a loss a little bit.  It's hard to respond to

6   something like that because there's, obviously, two ways to go.

7   One way is to ask for a very strict sort of resolution of this;

8   and the other is to try to be practical about it because,

9   ultimately, what really matters to us is, obviously, your

10  decision on the next motion and the timing we'll have, if we do

11  prevail on that and we can depose him, obviously, then these

12  documents become very important and that enters into the

13  timeline for that.  So I'm certainly practical and

14  understanding of where the endgame is here, if that makes

15  sense.

16          JUDGE VANASKIE:  All right.  I'm glad Mr. Goldberg is

17  here as well.

18          With respect to Mr. Chen's deposition, it occurred to

19  me that the documents that are produced from his custodial file

20  could be, could be very important, may only be duplicates of

21  what already has been produced, and may not be all that

22  important or no surprises in terms of the documentary evidence.

23  And so I was wondering -- I'm wondering out loud here, that's a

24  dangerous thing to do -- whether it made sense to defer

25  decision on Mr. Chen's deposition until after you have his

1  documents.

2          MR. SLATER:  Your Honor, if it helps, I don't -- I

3  would not want to because we don't think that one thing really

4  determines the other.  I mean, the standard's very clear.

5  You've touched on it already in your initial decision on the

6  custodial file.  I don't think that that would be

7  determinative.

8          So from the plaintiffs' perspective, you know, we're

9  eager for your resolution of that motion so that if we do

10  prevail, we can start getting ready for that and start thinking

11  it through because we, obviously, want to get ourselves as

12  prepared as we can.

13          JUDGE VANASKIE:  All right.  Mr. Goldberg or Ms.

14  Priselac?  I don't want to preempt Ms. Priselac.

15          MR. GOLDBERG:  Well, Your Honor, on the question you

16  just asked, it's interesting, you know, we do expect that his

17  custodial file will not provide information that would warrant

18  his deposition, and we think we have presented a compelling

19  basis for Your Honor to deny the motion.  It's -- we think that

20  if Your Honor waited, that the production of his custodial file

21  would further support our position on that motion and would

22  further demonstrate that he does not have unique information

23  that would be materially additive to the case.

24          So we would be in favor of Your Honor deferring that

25  decision but we also feel that we have made a significantly

```
 1   compelling argument to warrant the granting of our apex
 2   deposition motion.
 3           JUDGE VANASKIE:  Well, I do expect to issue a decision
 4   very -- within the next few days, so I do expect that.
 5           MR. SLATER:  And, Your Honor, I'm sorry, just one
 6   thing to add while you're getting ready to start --
 7           JUDGE VANASKIE:  Yes, my thoughts are moving.  Go
 8   ahead.
 9           MR. SLATER:  Just to put a little more nuance on this.
10   What is produced as his, quote, unquote, custodial file, just
11   to make it very clear why we don't think that would be
12   determinative of anything is, the question is what does the
13   person know, what was the person's involvement.  I mean, those
14   are the issues that have been briefed for Your Honor.  At no
15   point has either side briefed, well, you know, you're not going
16   to find documents in the custodial file that are going to add
17   something new because, frankly, it wouldn't be surprising if
18   there's not as many documents as one might think for reasons
19   that I probably don't have to get into in detail right now;
20   whereas we know he attended, for example, I will give one
21   example, many meetings that were very, very pivotal, very
22   substantive, where the witness who testified about it painted a
23   picture of a room where nobody took notes at all.  So, that's
24   why I think, you know, he's obviously such an important witness
25   because he was leading this process and nobody was taking
```

1  notes.  So, I would say that the lack of documents, if that is

2  what occurs, that certainly wouldn't militate against the

3  deposition.  It would actually make it more necessary to depose

4  him.

5          JUDGE VANASKIE:  Let me ask --

6          MR. GOLDBERG:  Your Honor --

7          JUDGE VANASKIE:  Go ahead.  Go ahead, Mr. Goldberg.

8          MR. GOLDBERG:  -- it's -- it really seems like an

9  inconsistent position.  I mean, they want the production of the

10  custodial file in order to take his deposition and they've

11  asked for an extension in the schedule, now that the custodial

12  file will be produced, so that they can depose Mr. Chen on

13  those documents.  We are confident that those documents will

14  not support or will not refute the notion that Mr. Chen is

15  truly an apex witness and that he does not have information

16  that would be unique and that would be unavailable from

17  lower-level employees and would not -- would further support

18  our motion.  And so it seems a little bit inconsistent.

19          We do think Your Honor should defer that motion, but,

20  again, we feel like the record we've made on the original

21  papers that are before you are significantly compelling and

22  warrant precluding his deposition under the apex doctrine.

23          JUDGE VANASKIE:  Thank you, Mr. Goldberg.

24          Mr. Slater, you mentioned in your letter needing to

25  reschedule the deposition because the decision on the documents

```
 1   came late and you don't have them, it's going to take some time
 2   to get them.  I take it you'll be working -- if I allow the
 3   deposition to go forward, you will be working on new dates?
 4           MR. SLATER:  Yes, Your Honor.  I mean, it's not just
 5   Mr. Chen's documents, to be clear.  You, obviously, ordered a
 6   lot of other documents --
 7           JUDGE VANASKIE:  Supplemental production.
 8           MR. SLATER:  -- we're going to talk about in a little
 9   while, and, you know, we're looking at those as well.  And, you
10   know, one of the interesting things in this case against ZHP
11   that's really developed is that it's not only what is there but
12   what becomes significant is what isn't there.
13           As Your Honor knows, there's an email that was sent to
14   some people that demonstrates that ZHP knew internally that
15   there was NDMA in the valsartan in July of 2017 at the latest.
16           JUDGE VANASKIE:  In irbesartan or valsartan?
17           MR. SLATER:  In valsartan.
18           JUDGE VANASKIE:  Okay.
19           MR. SLATER:  It says it right there in the email.  And
20   from our review of the documents that we've been given from the
21   person who wrote the email, that email is not in his custodial
22   production nor has he ever been listed as a duplicate
23   custodian.  So, you know, I don't know the best saying to throw
24   on this one, but the fact is that what's there may not be more
25   significant than what isn't there in many cases with ZHP.
```

1    You know, defense counsel says, well, you're not going

2 to get anything that's going to matter in that custodial file.

3 Well, I've been criticized during depositions more recently for

4 focusing on that email that shows they knew about the

5 contamination almost a year before they disclosed it to the

6 world.  So ZHP doesn't think that document means much.  We, on

7 our side, think it's pretty significant.

8    JUDGE VANASKIE:  Right.

9    MR. SLATER.  So I think that beauty is in the eye of

10 the beholder.

11    But roundabout, getting back to the answer, obviously,

12 we need all of the documents and a little time, and it just

13 seems like a practical thing to say is, we're still, obviously,

14 waiting for your decision on the deposition which is scheduled

15 to start in five days.  We would think it would make a lot of

16 sense -- and I am not criticizing it because there's a lot

17 going on.  What I'm saying is I think it would make sense for

18 us to seal the documents, get the custodial file, have some

19 time for our Chinese language reviewers to go through the

20 documents so that at least we know what's there before we take

21 the deposition.  I'm just being practical.

22    JUDGE VANASKIE:  Sure, sure.

23    All right.  Let me ask another question while I have

24 both of you here and it's been in the back of my mind because

25 this is a very important matter.  You're talking about the head

1    of a large corporation.

2           How relevant would his testimony be to what I expect

3    to be a summary judgment motion at the end of this initial

4    discovery phase?  Let me ask from the plaintiffs' perspective.

5           MR. SLATER:  Potentially very significant.  I mean,

6    what the top -- the top person in the company knew -- and we

7    know from the testimony he was involved.  You know, we know

8    that the Rule 26 cases that have protected -- and we have a

9    little problem with the concept of a, quote, unquote, apex

10   doctrine because, obviously, the Courts around the country,

11   some even say it doesn't even exist; they say it's just a Rule

12   26 standard and, you know, it's normal --

13          JUDGE VANASKIE:  Right.

14          MR. SLATER:  -- a normal analysis, but we already know

15   he was involved, we already know he had material involvement,

16   we already know from the testimony he did.  So that's clear.

17   So what he knew and what he said and what he did and what he

18   knows what other people said and did, factual issues could be

19   raised through his testimony.  And, honestly, at this point, in

20   terms of our claims, I think ZHP probably wants his testimony,

21   too, because when we get to the summary judgment phase, I can

22   promise you the plaintiffs will be filing affirmative motions

23   for summary judgment on liability on all claims as well,

24   including our right, potentially, to punitive damages.  So his

25   testimony as the top executive in ZHP is, obviously, very

1  significant when it comes to the punitive damage claims as well

2  because, obviously, if we can -- we're going to want to show

3  top-down involvement, et cetera, and he becomes very important,

4  potentially, on all the claims.  So, yeah, obviously, he's,

5  from our perspective, potentially very important.

6          JUDGE VANASKIE:  All right.  Mr. Goldberg.

7          MR. GOLDBERG:  Your Honor, Mr. Chen's testimony, if he

8  is asked questions about the material facts at issue, will not

9  matter for summary judgment purposes.

10          Mr. Chen was not involved in the process change that's

11  at issue in this case back in 2011 that introduced the chemical

12  that causes the chemical reaction that is at issue.

13          He was the chairman of the company then.  That was the

14  decision made at the very lowest level.  I mean, you're talking

15  about a company that's 7,000 employees.  Mr. Chen -- they have

16  not shown a single document, there has not been testimony among

17  the 17 employees, ten of whom are 30(b)(6) witnesses, that tie

18  Mr. Chen to the chemical process issues that started in 2011

19  with the process change.

20          The question of liability, the question of the claims

21  in this case will not turn on the testimony of Mr. Chen and

22  whether he had some knowledge about these things that may have

23  happened.

24          Plaintiffs are confusing, and it's -- they are -- they

25  are trying to conflate having general knowledge about things

1   that may happen in the company with having unique information

2   that is materially additive to the case that cannot be obtained

3   from any of the lower-level employees, not just the 17

4   employees that have been deposed.  There are other employees

5   they can depose if they find unique information or other

6   information that they think they need.  But they have not

7   identified a single fact in their papers that would be -- that

8   would create a question of fact for the jury on any of the

9   liability issues.

10          What was the purpose of the 17 depositions if they

11   haven't already created questions of fact?  Mr. Chen, at the

12   very high level, would not create a question of fact for

13   summary judgment.  That -- they've deposed the vice chairman of

14   the company, who's also the CEO of the U.S. entities.  I mean,

15   we've covered this exhaustively.

16          JUDGE VANASKIE:  No, you've covered it exhaustively.

17          MR. GOLDBERG:  So I don't want to repeat -- I don't

18   want to repeat --

19          JUDGE VANASKIE:  I wasn't --

20          MR. GOLDBERG:  Yeah.

21          JUDGE VANASKIE:  -- intending to have a reargument on

22   the matter.  I just had some questions that would be helpful

23   for me to ask.  And I know you're passionate about the issue

24   and I understand that.

25          MR. GOLDBERG:  And I am passionate because I do think

this is truly a situation where the apex deposition applies.

This is a company of 7,000 people and we're talking about a very highly technical issue. This is like -- and I hate to do this, and we've thought about what are the analogies, but, you know, this is like Bill Gates having some information about the Microsoft Teams app that is being used today. You know, this is the highest level and the micro -- you've got a guy who does the macro issues, and the issues in this case involve the most micro issues in pharmaceutical manufacturing. This is simply the introduction of a residual solvent in a multistep manufacturing process of one of the 40 or 50 drugs that ZHP manufactures. And to expect that this kind of information would flow up to the highest level of the company is really not how big corporations work.

JUDGE VANASKIE: All right. Thank you.

Mr. Slater, anything else?

MR. SLATER: I feel like I have to just respond very -- I hate when people say very briefly, but I will try to do that. Caught myself there.

Two things: Mr. Chen is the head of the arm -- the research and development arm at ZHP, which is Shanghai Syncores, that developed the zinc chloride process. He is not Bill Gates with no involvement in something. We've already established that. It's very surprising that counsel would continue these mantras that he had no involvement. We have

1    deposition testimony of documents that show he had involvement.

2    In fact, it was his plan to try to lower the costs as much as

3    possible to capture as much market share as possible.  That's

4    what drove them to the zinc chloride process and, from our

5    perspective, is what drove them to not disclose it when they

6    realized there was NDMA in the valsartan because they didn't

7    want to have to scrap the zinc chloride process because they

8    were making so much money.

9            So I'm not going to go any further than that other

10    than I think our papers will refute what you just heard.

11            I will tell you something else, to go back to what

12    happened earlier, because I got some text messages from some

13    much smarter people on the plaintiffs' team than myself.  An

14    air-gapped laptop is nothing technically significant or

15    complex.  It's just a laptop that hasn't been attached to the

16    Internet yet.  That's what I'm told.  So that doesn't sound

17    like a big deal.

18            And, again, I'm going to come back to what I said

19    earlier with the timing.  It is -- it is very, very

20    disappointing and frustrating that this is something that would

21    be dropped on yourself and us today, when Your Honor ordered

22    ZHP, however long ago it was, to take care of this.  This

23    should have been brought to the Court's attention and to our

24    attention, frankly, a month, two months ago.

25            (Interruption.)

```
 1              JUDGE VANASKIE:  Someone spoke.

 2              MR. SLATER:  Camille, it was an accidental un-mute by

 3    one of the lawyers.

 4              MR. GEOPPINGER:  That was an accident.  My apologies,

 5    Your Honor.

 6              JUDGE VANASKIE:  Is that Mr. Geoppinger?

 7              MR. GEOPPINGER:  Yes, it was, Your Honor.

 8              JUDGE VANASKIE:  Okay.  It seemed like it had nothing

 9    to do with what we were talking about, but okay.  These things

10    happen.

11              All right.  I know the arguments -- were you finished,

12    Mr. Slater?

13              MR. SLATER:  I was, Your Honor.  I was.

14              JUDGE VANASKIE:  All right.  Okay.

15              With respect to the production of the custodial file,

16    I'm at a loss, frankly.  I'm told it's going to take to July

17    12th.  I don't know what else to say about that.  I'm not

18    exactly sure why it takes to July 12th.  Maybe you want to go

19    over that again, Ms. Priselac.

20              MS. PRISELAC:  Sure, Your Honor.

21              Just to correct a few things.  I'm happy to talk or

22    argue with whoever is giving Mr. Slater this information from a

23    technical side because it's not true, what he just said.  But

24    I'll move on from there.

25              You know, part of the issue is that, obviously, you --
```

1    I'm sure you understand, Your Honor, the companies that were

2    trying to sell this equipment to our vendor and to the client,

3    because they both tried to procure it, kept saying, oh, you'll

4    have it tomorrow, you'll have it tomorrow, you know, as any

5    sales company would.  So that was putting us in a predicament

6    which left us only, you know -- we were kind of in flux, Your

7    Honor, which it would be hard to come to the Court and say, oh,

8    it's coming tomorrow when, you know, we were put in a really

9    difficult position as well.  I understand the plaintiffs'

10   frustration.  We were very equally frustrated.  But we have

11   gone to an extraordinary length, essentially making our own

12   computers to get this done correctly.

13           So the second thing in terms of why it takes so long,

14   Your Honor, is that once this data is -- it needs to be

15   collected and -- it's isolated but it's not processed at the

16   site, ZHP.  So what they're going to do next week, starting

17   Monday, is process all the data and make sure it gets onto a

18   software drive -- I'm sorry, a hardware drive that is not

19   connected to the Internet for security reasons, and then that

20   has to be taken to the reviewers in China, reviewed for state

21   secrets, and then export it to the United States so that our

22   Chinese language reviewers can -- our Chinese language

23   reviewers can review it for privilege, responsiveness and then

24   process it and give it to the plaintiffs.

25           Certainly, Your Honor, we're hoping that it would be

 1   less than three weeks, but, you know, in our experience, you

 2   know, the process of physically collecting this data, you know,

 3   taking it, you know, to Shanghai from Linhai, having it

 4   processed in a way that's not connected to the Internet, then

 5   having the documents that can be exported to the United States,

 6   exported to the United States, it just takes time.

 7         JUDGE VANASKIE:  Yes.  And I guess, you know, it has

 8   to be done in a manner that you're not connected to the

 9   Internet at any time.

10         MS. PRISELAC:  Exactly, and that's part of the

11   slowdown, Your Honor.

12         JUDGE VANASKIE:  Sure is.

13         All right.  Did you want to say anything else, Mr.

14   Slater?

15         MR. SLATER:  No, Your Honor.  I'm a realist.

16         JUDGE VANASKIE:  Yeah, I think we have to give them

17   until July 12th.  I think Ms. Priselac has presented a

18   compelling case of why it takes that long.  I'm frustrated that

19   it won't be until July 12th, but I will say that it has to be

20   completed by July 12th.  I don't want to come -- I'm an

21   optimist, too, so I'm hoping that by saying it has to be done

22   by then, it will be done by then as opposed to finding out that

23   something got stuck at Customs somewhere along the route.

24         MS. PRISELAC:  Understood, Your Honor.  And if for --

25   if that does happen, we will alert the plaintiffs and the Court

1    immediately.

2         JUDGE VANASKIE:  Immediately, please.  I want to be

3    kept abreast of this.  All right.

4         We're still on ZHP, the supplemental production of

5    documents.  What is the status of that?

6         MS. PRISELAC:  Yes, Your Honor.

7         We substantially completed the production last week

8    per your order.  We're just doing quality checks at this point.

9    Frankly, we were surprised to see the plaintiffs' letter

10   because they have not raised any issues whatsoever with us by

11   phone, by email, in any way to say that they felt that there

12   was some deficiency.  And if you read between the lines here of

13   the letter, Your Honor, they really haven't pointed out a

14   deficiency.

15        The one thing they did ask in the letter, Your Honor,

16   was that ZHP basically identify every single document that

17   relates to every single request in their letter.

18        The plaintiffs have asked for similar relief from

19   Judge Schneider multiple times.  Judge Schneider has rejected

20   and ruled against the plaintiffs on that issue several times,

21   mostly because of the nature of digital discovery, Your Honor,

22   makes that very difficult in the way these files are collected.

23   However, if the plaintiffs had brought this to our attention,

24   what I do think is a good middle compromise is that there are

25   certain hard-copy documents that were collected specifically

 1   related to certain requests, and we would be happy to identify

 2   those for the plaintiffs, Your Honor.  However, to identify

 3   every single digital document collected and line it up with one

 4   of these requests we believe is overly burdensome and, quite

 5   frankly, not in -- not in line with the ESI protocol

 6   whatsoever.

 7            JUDGE VANASKIE:  All right.  Mr. Slater.

 8            MR. SLATER:  Yes, Your Honor.

 9            I'm not sure what counsel's talking about because this

10   is a -- this was a supplemental production that we -- that was

11   triggered by some significant issues that we found in the

12   productions through depositions and the review of the documents

13   and there were some agreed areas that were ordered to be

14   produced.  I'm not understanding where the burden is to say,

15   for example, the documents regarding Min Li's phone are found

16   at Bates Number, you know, 1001 to 1002 or the custodial file

17   for Mr. Lin is Bates range this to this.  I don't see where the

18   burden is and I think it would be very helpful because these

19   documents may turn out to be very important, we may be asking

20   for additional depositions, I don't know yet because we are

21   still reviewing; but I would think it would be beneficial to

22   both sides to be very clear on which documents match up to

23   which discovery request.

24            I don't really understand the burden argument because

25   there -- if you look at the requests again, and look at what's

1  been produced, I don't think that there could be a compelling

2  argument that there's any unfair burden.  We just want to be

3  able to know what was produced in response to which request.

4  It makes sense.

5          JUDGE VANASKIE:  Is it accurate that Judge Schneider

6  did not require that?  That was early on in the process.

7          MR. SLATER:  We've never had this type of an issue, so

8  this issue never came up.  I think what counsel -- I'm trying

9  to -- I'm guessing, I suppose, or maybe counsel can tell you

10  what she's talking about because I know that there was an issue

11  with the production index for the overall entire production, so

12  maybe this is what counsel's referring to, where ZHP produced X

13  number of total documents.  We asked to have a column on the

14  production index that said this Bates range is responsive to

15  this request for production, and Judge Schneider said, I'm not

16  going to make you do that; but that's not this situation where

17  you have a few discrete requests that are triggered by specific

18  issues coming up in the depositions.

19          JUDGE VANASKIE:  All right.  Ms. Priselac?

20          MS. PRISELAC:  Sure, Your Honor.  A couple things.

21          This is not a supplemental production.  There were new

22  custodians added, there were new search terms added.  So this

23  idea that we're somehow -- we're violating a prior order for

24  this production or that it's supplemental is just not true.

25          In terms of what Judge Schneider previously ordered,

1    what Mr. Slater just said was one of the times that Judge

2    Schneider denied that request, but also his general -- a couple

3    of additional times the plaintiffs had requested this type of

4    categorization.  And the problem with that, Your Honor, is that

5    even in this new production, we've produced thousands of

6    documents that are collected by a custodian and then marked for

7    responsiveness in about 120 categories at this point, and that

8    would be -- our position is that to go through each and, you

9    know, match them up even with the plaintiffs' new letter, which

10   is not a short amount of requests, which is I believe

11   something, you know, more than ten requests, and if you add up

12   the sub-requests more than 20, you know, is overly burdensome

13   for us to have to go through every document and match them up

14   with the requests in their letter.

15          Now, I think the problem here, Your Honor, is, again,

16   if we would have had a meet and confer, the types of examples

17   Mr. Slater just said are actually quite easy to identify.  For

18   example, the Bates range of a certain person's custodial file,

19   well, we could have easily given that to them through the

20   metadata and we would be happy to do so.

21          So, Your Honor, I think what Mr. Slater's examples

22   show is that we should actually have a meet and confer on this

23   before any order's entered.

24          JUDGE VANASKIE:  Okay.  Mr. Slater?

25          MR. SLATER:  Yes, Judge.

1          I mean, I guess this is a chicken and the egg kind of

2    thing.  We found it unfortunate that when we came into this

3    conference, we never even received confirmation from ZHP that

4    they believe their production to be substantially complete

5    until we saw their letter to Your Honor.  We had to submit what

6    our issues were.  Both sides knew when we exchanged issues on

7    Friday that we were going to submit positions on this.  ZHP

8    didn't reach out to us, we didn't reach out to them.  It didn't

9    seem -- because it was clear, we had no accounting, we didn't

10   know if they were done.  They obviously didn't want to tell us.

11   So, I mean, it seems silly but at this point we would like to

12   know that there's an accounting of what's been produced.

13          JUDGE VANASKIE:  Well, it seems to me that a meet and

14   confer could be productive, I'm not saying would but could be

15   productive.  I think it's worth undertaking that effort rather

16   than me ordering it at the present time.

17          So what I will do is I will direct you to meet and

18   confer on the matters that were raised in your letter.  All

19   right?

20          MR. SLATER:  That's great, Judge.

21          MS. PRISELAC:  Thank you, Your Honor.

22          MR. SLATER:  I think we now know counsel has -- maybe

23   we could just get this confirmed for the record.  Counsel has

24   said that the production is substantially complete pending

25   quality control, I think counsel said, issues.  So I think it

1  would be good for the Court and for us to know, is that the

2  production or are there any more documents coming in response

3  to those requests because the deadline is passed.

4          JUDGE VANASKIE:  All right.  Ms. Priselac, is it

5  substantially complete?

6          MS. PRISELAC:  Yes, Your Honor.  You know, it's not my

7  practice to say I've met a deadline.  So, yes, Your Honor it is

8  substantially complete.

9          JUDGE VANASKIE:  All right.  Very well.

10         The last thing -- I think maybe we're at the end of

11  the agenda but I may have missed something so I want to make

12  sure.

13         Obviously, I was pleased to get the letter in this

14  week that the motion on the Meridan and ToxRox documents was

15  withdrawn and the documents have been produced.

16         Is there anything else we need to discuss today?

17         MR. SLATER:  I don't believe so from the plaintiffs,

18  Your Honor, unless anyone wants to overrule me.

19         JUDGE VANASKIE:  Mr. Goldberg?

20         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.

21         One thing that we did want to mention to Your Honor is

22  that Mr. Slater and I spoke earlier today about the plaintiffs'

23  motion for sanctions as to ZHP's deposition testimony.

24         JUDGE VANASKIE:  All right.

25         MR. GOLDBERG:  We had an earlier briefing schedule.

1  We have agreed to move out some of the dates in that schedule.

2  Both Mr. Slater and I have some summer vacation plans and we've

3  tried to work around those things.

4  　　　　What we have come up with, and we just wanted to alert

5  Your Honor, see if Your Honor's agreeable to it, is that the

6  ZHP parties would file their opposition brief on July 2nd and

7  perhaps if it -- if it's warranted, a motion -- a cross-motion

8  for sanctions; that given Mr. Slater's schedule in July, he's

9  planning to be away for a few weeks, we are going to have their

10  reply brief and, if necessary, an opposition on July 30th.  We

11  have -- if necessary, ZHP would file a reply brief on a

12  cross-motion -- I'm sorry, on a cross-motion.  I think, Adam --

13  Mr. Slater, I think that's one date we forgot to nail down.

14  　　　　But, Your Honor, what we -- what we had discussed was

15  if Your Honor was going to hear our argument on these papers

16  that it would be in the week of August 23rd.  So the ZHP

17  parties, if we're going to file a reply brief could do so, say,

18  August 13th or August 20th, which would give the Court

19  sufficient time to have all of the papers in.

20  　　　　I think you're on mute, Your Honor.

21  　　　　JUDGE VANASKIE:  I was.  Now it was me on mute.  There

22  was some outside noise.  I wanted to try to prevent it from

23  coming in.

24  　　　　The schedule that you've outlined is fine with me.  I

25  would ask you to put it in a letter so that it's documented or

 1  even in the form of a proposed order so it's on the record.

 2  But that is fine.

 3       MR. GOLDBERG:  Thank you.

 4       JUDGE VANASKIE:  And we'll look to arguments during

 5  the week of August 23rd.

 6       Now, of course, the motions continue to get filed.

 7  And, obviously, the next one that I told you will be decided

 8  will be the motion on Mr. Chen's deposition.

 9       Is there a priority list of motions from the

10  plaintiffs' perspective for me to decide?  Did you prioritize

11  them or no?

12       MR. SLATER:  I have to be honest with you, Judge, from

13  my perspective, I know about the motion on Mr. Chen.

14       JUDGE VANASKIE:  The Chinese state secret motion as

15  well.

16       MR. SLATER:  That one as well.  I'm trying to

17  remember.  Trying to keep track of all our motions.

18       MR. GOLDBERG:  I -- from the ZHP parties' standpoint,

19  I think those are the only two that are currently pending, Your

20  Honor.

21       JUDGE VANASKIE:  All right.  And I got a motion in on

22  Teva, I want to make sure I have that right, on the clawback

23  issue.  I may have that -- yes, the clawback issue.  Is

24  somebody here to address that?  I'm wondering if that can be

25  expedited?  We're talking about one document, three emails

 1  being redacted.  Do we have to go through the whole timeline to

 2  get that resolved?

 3          MS. LOCKARD:  Your Honor, it's Victoria Lockard.  Can

 4  you hear me?

 5          JUDGE VANASKIE:  Yes, I can.

 6          MS. LOCKARD:  Hi.  And I don't know if David Stanoch

 7  is on for the plaintiffs.  It looks like he is.  But we would

 8  not have a problem with expediting a briefing schedule on that.

 9  We would like to get this ruled on.  You know, obviously, our

10  concern is having the documents in the hands of plaintiffs, you

11  know.  We just think we need to get it ruled on.  So we're

12  happy to expedite our response to their motion.  I don't know

13  if a reply is required or not, but we would need to build in

14  time for that if plaintiff insisted on filing a reply.

15          I will say it looked like, based on the clerk's entry,

16  that this was referred to our Magistrate judge --

17          JUDGE VANASKIE:  Yes.

18          MS. LOCKARD:  -- The Honorable Judge Williams.  I

19  don't know if that was just a clerk's entry or if Judge

20  Williams will actually be hearing that so, you know, I would be

21  interested to know what your thought was on that.

22          JUDGE VANASKIE:  My understanding is that I will be

23  hearing it.  I will confirm with Magistrate Judge Williams on

24  that.  I think that was just a clerk's entry.

25          MS. LOCKARD:  Okay.  No problems.  And I know there is

1    an issue.  This document, you know, it is just one document but

2    I believe that Mr. Stanoch was intending to use it with a

3    witness, one of our remaining deponents.  So I don't mean to

4    speak for him but I think the other reason we need to get it

5    resolved is to know whether or not it will be used with this

6    particular witness, Jens Nassall, who is being deposed soon.

7         JUDGE VANASKIE:  Ms. Lockard, when can you file your

8    brief?

9         MS. LOCKARD:  Well, considering I'm not the one

10   drafting it, but to put the others on the spot, you know, I

11   would think sometime next week, fairly early, would be

12   reasonable.  And then would Your Honor want to have a phone

13   conference on that?  Are you planning to rule on --

14        JUDGE VANASKIE:  I'd like to have a phone conference

15   because that will expedite a decision.  I may simply do it on

16   the record.  So if I could have the opposition brief by Monday.

17        MS. LOCKARD:  Okay.

18        JUDGE VANASKIE:  Do you want -- if you want, I will

19   give you until Tuesday.

20        MS. LOCKARD:  My drafting party would be pleased with

21   that, so we'll take Tuesday.

22        JUDGE VANASKIE:  All right.  So we will ask to have

23   that by Tuesday.  I'm blanking on the date now.  June 21st?

24        MR. SLATER:  Tuesday would be the 22nd.

25        JUDGE VANASKIE:  22nd.  Okay.  All right.  June 22nd.

1  And would you all be available on -- we have a conference call

2  on the 25th?  No?

3          MS. SMITH:  Yes, Judge, yes.

4          JUDGE VANASKIE:  That's what I thought.  Thanks,

5  Loretta.  Can we address it on June 25th?

6          MS. HILTON:  Your Honor, Layne Hilton on behalf of the

7  plaintiffs.  I don't know if my colleague, David Stanoch, was

8  planning on joining in.

9          I think the issue is that the deposition for which Ms.

10 Lockard referred of Mr. Nassall is actually on the 24th, which

11 would be Thursday.  So we would ask if there would be a phone

12 conference regarding this particular document, we would like to

13 have it on Wednesday, if that would be possible.

14         JUDGE VANASKIE:  That would be possible.

15         MS. LOCKARD:  Your Honor, yes, I mean, I can say we're

16 happy to do that on Wednesday, but we've been discussing this

17 with Mr. Stanoch.  This is a witness who's based in Germany and

18 has to leave the country to be deposed, but because of COVID

19 restrictions, he's had a difficult time trying to get out of

20 the country to get deposed.  So I don't know that that

21 deposition is actually on for next week.  It may have to be the

22 following week, but that --

23         JUDGE VANASKIE:  We will still do it the 23rd.

24         MS. LOCKARD:  Fine.

25         JUDGE VANASKIE:  I will get you a time on the 23rd and

 1  we'll -- I don't think it will take a long time, I don't think

 2  it will take a lot and I think you'll have a decision on the

 3  23rd as well.

 4          MS. LOCKARD:  Okay.  Thank you, Judge.

 5          JUDGE VANASKIE:  All right.

 6          MS. HILTON:  Thank you, Your Honor.

 7          JUDGE VANASKIE:  So opposition brief on the 22nd and

 8  argument on the 23rd.  Okay?

 9          Anything else for today?  I know I am not supposed to

10  ask that question, Mr. Slater, but I always will.

11          MR. SLATER:  I keep saying nothing else.

12          JUDGE VANASKIE:  Okay.  Anything else on your end, Mr.

13  Goldberg, or on the defense side?

14          MR. GOLDBERG:  I don't believe so, Your Honor.

15          JUDGE VANASKIE:  All right.  And thank you, Ms.

16  Hilton, for letting us know about the schedule.

17          All right.  We will be adjourned for today.  Thank you

18  very much.

19          MR. SLATER:  Thank you, Your Honor.  Have a nice day.

20          JUDGE VANASKIE:  Thanks.

21          MR. SLATER:  Bye-bye.

22          (The proceedings concluded at 5:00 p.m.)

23          - - - - - - - - - - - - - - - -

24

25

1          I certify that the foregoing is a correct transcript

2    from the record of proceedings in the above-entitled matter.

3

4    /S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR
     Court Reporter/Transcriber

5

6    June 17, 2021
         Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Camden, New Jersey*

## /

*/S* [1] - 43:4

## 0

*07068* [1] - 1:16
*08101* [1] - 1:9
*08540* [1] - 2:16

## 1

*1001* [1] - 32:16
*1002* [1] - 32:16
*103* [1] - 1:15
*12* [1] - 15:20
*120* [1] - 34:7
*12th* [5] - 28:17, 28:18, 30:17, 30:19, 30:20
*13th* [1] - 37:18
*16* [1] - 1:9
*1638* [1] - 2:3
*17* [4] - 24:17, 25:3, 25:10, 43:6
*17th* [1] - 2:6
*19-md-02875-RBK-KMW* [1] - 1:4
*19103* [1] - 2:7

## 2

*20* [1] - 34:12
*2011* [2] - 24:11, 24:18
*2017* [1] - 21:15
*2020* [1] - 9:24
*2021* [2] - 1:9, 43:6
*20th* [1] - 37:18
*21* [1] - 2:15
*21st* [2] - 15:11, 40:23
*22nd* [4] - 40:24, 40:25, 42:7
*23rd* [6] - 37:16, 38:5, 41:23, 41:25, 42:3, 42:8
*24th* [1] - 41:10
*2500* [1] - 2:11
*25th* [2] - 41:2, 41:5
*26* [2] - 23:8, 23:12
*2800* [1] - 2:18
*2:30* [1] - 7:7
*2nd* [1] - 37:6

## 3

*30* [1] - 2:6
*30(b)(6* [2] - 8:10, 24:17
*30305* [1] - 2:11
*30th* [1] - 37:10
*3333* [1] - 2:11

## 4

*40* [1] - 26:11
*445202* [1] - 2:19
*4:00* [2] - 1:10, 3:2
*4th* [1] - 1:8

## 5

*50* [1] - 26:12
*5:00* [1] - 42:22

## 6

*600* [1] - 2:18
*609-774-1494* [1] - 1:23

## 7

*7,000* [2] - 24:15, 26:2
*701* [1] - 1:20
*70130* [1] - 1:20

## 9

*90277* [1] - 2:3

## A

*able* [5] - 5:19, 10:23, 15:4, 15:17, 33:3
*above-entitled* [1] - 43:2
*Abraham* [4] - 6:20, 7:3, 11:10, 13:4
*ABRAHAM* [8] - 2:14, 6:19, 7:4, 8:6, 8:15, 11:12, 13:1, 13:18
*abreast* [1] - 31:3
*accident* [1] - 28:4
*accidental* [1] - 28:2
*accounting* [2] - 35:9, 35:12
*accurate* [1] - 33:5
*Actavis* [2] - 2:12, 2:13
*ACTION* [1] - 1:3
*actual* [1] - 15:14
*ADAM* [1] - 1:15
*Adam* [1] - 37:12
*add* [3] - 19:6, 19:16, 34:11
*added* [1] - 33:22
*additional* [4] - 8:10, 11:22, 32:20, 34:3
*additive* [1] - 18:23, 25:2
*address* [6] - 4:24, 6:18, 11:11, 16:10, 38:24, 41:5
*addressing* [1] - 3:20
*adjourned* [1] - 42:17

*advance* [1] - 8:9
*advisory* [1] - 5:9
*afternoon* [7] - 3:21, 5:2, 6:19, 7:8, 8:21, 14:17, 14:18
*agenda* [4] - 3:17, 4:11, 6:15, 36:11
*ago* [4] - 9:15, 16:17, 27:22, 27:24
*agree* [3] - 4:9, 11:21, 13:1
*agreeable* [1] - 37:5
*agreed* [4] - 4:10, 11:24, 32:13, 37:1
*agreement* [3] - 4:19, 7:9, 11:4
*ahead* [4] - 15:25, 19:8, 20:7
*aided* [1] - 1:24
*air* [3] - 14:24, 15:7, 27:14
*air-gapped* [3] - 14:24, 15:7, 27:14
*alert* [2] - 30:25, 37:4
*allow* [1] - 21:2
*allows* [1] - 6:11
*almost* [1] - 22:5
*ALSO* [1] - 2:20
*AmerisourceBergen* [1] - 2:19
*amount* [1] - 34:10
*analogies* [1] - 26:5
*Analys* [3] - 7:22, 7:23, 7:25
*analysis* [1] - 23:14
*answer* [2] - 5:4, 22:11
*apart* [1] - 8:22
*apex* [5] - 19:1, 20:15, 20:22, 23:9, 26:1
*apologies* [1] - 28:4
*app* [1] - 26:6
*applies* [1] - 26:1
*appreciate* [1] - 12:14
*appreciative* [2] - 8:15, 10:4
*appropriate* [2] - 12:3, 13:7
*arbitrary* [1] - 13:8
*areas* [1] - 32:13
*argue* [1] - 28:22
*argument* [5] - 19:1, 32:24, 33:2, 37:15, 42:8
*arguments* [2] - 28:11, 38:4
*arm* [2] - 26:20, 26:21
*Asia* [1] - 15:3
*assurance* [1] - 9:19
*Atlanta* [1] - 2:11
*attached* [1] - 27:15

*attended* [1] - 19:20
*attention* [4] - 5:8, 27:23, 27:24, 31:23
*August* [4] - 37:16, 37:18, 38:5
*available* [1] - 41:1
*avenue* [2] - 5:18, 5:20

## B

*bad* [1] - 15:12
*balance* [1] - 8:3
*based* [3] - 10:20, 39:15, 41:17
*basic* [1] - 9:10
*basis* [1] - 18:19
*batch* [1] - 9:12
*Bates* [5] - 12:11, 32:16, 32:17, 33:14, 34:18
*Beach* [1] - 2:3
*beauty* [1] - 22:9
*become* [1] - 17:12
*becomes* [2] - 21:12, 24:3
*bed* [1] - 8:11
*behalf* [4] - 3:6, 4:21, 6:21, 41:6
*beholder* [1] - 22:10
*Behram* [1] - 7:8
*BEHRAM* [1] - 2:2
*Ben* [1] - 5:3
*beneficial* [1] - 32:21
*BERNE* [1] - 2:17
*best* [4] - 7:23, 11:12, 12:13, 21:23
*better* [1] - 5:7
*between* [2] - 11:17, 31:12
*big* [3] - 12:12, 26:14, 27:17
*Bill* [2] - 26:5, 26:23
*bit* [2] - 17:5, 20:18
*blanking* [1] - 40:23
*body* [1] - 11:14
*BRIAN* [1] - 2:10
*Brian* [1] - 3:22
*brief* [8] - 14:19, 37:6, 37:10, 37:11, 37:17, 40:8, 40:16, 42:7
*briefed* [2] - 19:14, 19:15
*briefing* [2] - 36:25, 39:8
*briefly* [1] - 26:18
*brought* [2] - 27:23, 31:23
*build* [1] - 39:13
*Building* [1] - 1:8
*burden* [4] - 32:14, 32:18, 32:24, 33:2

*burdensome* [2] - 32:4, 34:12
*busy* [1] - 12:13
*BY* [10] - 1:15, 1:18, 1:19, 1:19, 2:2, 2:5, 2:6, 2:10, 2:10, 2:18
*bye* [2] - 42:21
*bye-bye* [1] - 42:21

## C

*calendar* [1] - 15:22
*California* [1] - 2:3
*Camden* [1] - 1:9
*Camille* [3] - 1:22, 28:2, 43:4
*camillepedano@gmail.com* [1] - 1:22
*Camp* [1] - 1:20
*cannot* [1] - 25:2
*capture* [1] - 27:3
*care* [1] - 27:22
*cared* [1] - 16:9
*case* [11] - 4:9, 6:22, 7:17, 12:12, 18:23, 21:10, 24:11, 24:21, 25:2, 26:9, 30:18
*cases* [3] - 11:18, 21:25, 23:8
*casino* [1] - 16:25
*categories* [1] - 34:7
*categorization* [1] - 34:4
*caught* [1] - 26:19
*caused* [1] - 10:1
*causes* [1] - 24:12
*CCR* [1] - 43:4
*CEO* [1] - 25:14
*certain* [4] - 14:24, 31:25, 32:1, 34:18
*certainly* [3] - 17:13, 20:2, 29:25
*certify* [1] - 43:1
*cetera* [2] - 14:10, 24:3
*chairman* [2] - 24:13, 25:13
*change* [2] - 24:10, 24:19
*checks* [1] - 31:8
*chemical* [3] - 24:11, 24:12, 24:18
*Chen* [9] - 20:12, 20:14, 24:10, 24:15, 24:18, 24:21, 25:11, 26:20, 38:13
*Chen's* [7] - 13:21, 14:22, 17:18, 17:25, 21:5, 24:7, 38:8
*chicken* [1] - 35:1
*chief* [1] - 14:22
*China* [2] - 15:3, 29:20

**Chinese** [4] - 22:19, 29:22, 38:14
**chip** [2] - 15:2, 16:7
**chips** [4] - 15:3, 16:24, 16:25
**chloride** [3] - 26:22, 27:4, 27:7
**chromatograms** [1] - 9:12
**chromatography** [1] - 9:13
**Cincinnati** [1] - 2:19
**Circuit** [1] - 11:15
**circumstances** [2] - 11:15, 12:4
**CIVIL** [1] - 1:3
**claims** [5] - 23:20, 23:23, 24:1, 24:4, 24:20
**clawback** [2] - 38:22, 38:23
**clear** [6] - 18:4, 19:11, 21:5, 23:16, 32:22, 35:9
**Clerk** [1] - 2:22
**clerk's** [3] - 39:15, 39:19, 39:24
**client** [5] - 7:16, 12:13, 14:23, 15:6, 29:2
**clients** [1] - 7:18
**Coast** [1] - 2:3
**Cohen** [1] - 1:8
**colleague** [3] - 5:3, 14:14, 41:7
**collect** [1] - 16:19
**collected** [7] - 14:25, 17:3, 29:15, 31:22, 31:25, 32:3, 34:6
**collecting** [2] - 15:11, 30:2
**collection** [2] - 15:12, 15:14
**column** [1] - 33:13
**coming** [6] - 4:4, 15:3, 29:8, 33:10, 36:2, 37:23
**commence** [1] - 16:15
**Commencing** [1] - 1:10
**companies** [1] - 29:1
**company** [8] - 23:6, 24:13, 24:15, 25:1, 25:14, 26:2, 26:14, 29:5
**compel** [1] - 13:21
**compelling** [5] - 18:18, 19:1, 20:21, 30:18, 33:1
**complete** [4] - 35:4, 35:24, 36:5, 36:8

**completed** [3] - 11:2, 30:20, 31:7
**complex** [1] - 27:15
**compromise** [2] - 11:7, 31:24
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**computers** [1] - 29:12
**concept** [1] - 23:9
**concern** [3] - 8:25, 10:19, 39:10
**concerns** [1] - 14:21
**concluded** [1] - 42:22
**confer** [5] - 7:7, 34:16, 34:22, 35:14, 35:18
**CONFERENCE** [1] - 1:5
**conference** [6] - 3:16, 35:3, 40:13, 40:14, 41:1, 41:12
**confers** [1] - 5:19, 7:12
**confident** [2] - 10:5, 20:13
**confidentiality** [1] - 14:21
**confirm** [1] - 39:23
**confirmation** [1] - 35:3
**confirmed** [1] - 35:23
**conflate** [1] - 24:25
**confusing** [1] - 24:24
**CONLEE** [1] - 1:18
**Conlee** [2] - 4:23, 5:3
**connected** [3] - 29:19, 30:4, 30:8
**consented** [1] - 8:11
**considering** [1] - 40:9
**contamination** [1] - 22:5
**contextual** [1] - 13:8
**continue** [4] - 12:23, 13:10, 26:25, 38:6
**Continued** [1] - 2:1
**continues** [1] - 15:19
**control** [1] - 35:25
**Cooper** [1] - 1:8
**copy** [1] - 31:25
**corporation** [1] - 23:1
**corporations** [1] - 26:14
**correct** [4] - 15:24, 16:2, 28:21, 43:1
**correctly** [1] - 29:12
**costs** [1] - 27:2
**counsel** [8] - 17:2, 22:1, 26:24, 33:8, 33:9, 35:22, 35:23, 35:25

**counsel's** [2] - 32:9, 33:12
**country** [3] - 23:10, 41:18, 41:20
**couple** [2] - 33:20, 34:2
**course** [3] - 4:15, 9:4, 38:6
**Court** [8] - 1:22, 5:8, 15:19, 29:7, 30:25, 36:1, 37:18, 43:4
**COURT** [2] - 1:1, 1:10
**Court's** [1] - 27:23
**Courthouse** [1] - 1:8
**Courtroom** [1] - 2:23
**Courts** [1] - 23:10
**covered** [2] - 25:15, 25:16
**COVID** [1] - 41:18
**CRC** [1] - 43:4
**create** [2] - 25:8, 25:12
**created** [1] - 25:11
**criticized** [1] - 22:3
**criticizing** [1] - 22:16
**cross** [4] - 13:22, 37:7, 37:12
**cross-motion** [4] - 13:22, 37:7, 37:12
**CRR** [1] - 43:4
**custodial** [17] - 13:21, 16:19, 17:4, 17:19, 18:6, 18:17, 18:20, 19:10, 19:16, 20:10, 20:11, 21:21, 22:2, 22:18, 28:15, 32:16, 34:18
**custodian** [2] - 21:23, 34:6
**custodians** [1] - 33:22
**Customs** [1] - 30:23
**cutoff** [3] - 9:24, 10:11, 11:6

## D

**damage** [1] - 24:1
**damages** [1] - 23:24
**dangerous** [1] - 17:24
**data** [3] - 29:14, 29:17, 30:2
**date** [9] - 10:11, 10:12, 11:1, 11:5, 16:2, 16:16, 16:17, 37:13, 40:23
**Date** [1] - 43:6
**dates** [2] - 21:3, 37:1
**David** [2] - 39:6, 41:7
**DAVID** [1] - 1:19
**DAVIS** [1] - 2:10
**days** [2] - 19:4, 22:15

**deadline** [5] - 12:17, 12:23, 13:8, 36:3, 36:7
**deadlines** [1] - 12:1
**deal** [1] - 27:17
**decide** [1] - 38:10
**decided** [2] - 16:21, 38:7
**decision** [11] - 13:23, 17:10, 17:25, 18:5, 18:25, 19:3, 20:25, 22:14, 24:14, 40:15, 42:2
**Defendants** [4] - 2:7, 2:12, 2:16, 2:19
**defendants** [4] - 4:9, 4:10, 7:14, 9:16
**defense** [8] - 3:7, 3:17, 3:20, 6:18, 6:25, 11:9, 22:1, 42:13
**defense's** [1] - 3:14
**defer** [2] - 17:24, 20:19
**deferring** [1] - 18:24
**deficiency** [2] - 31:12, 31:14
**demonstrate** [1] - 18:22
**demonstrated** [1] - 12:16
**demonstrates** [1] - 21:14
**denied** [1] - 34:2
**deny** [1] - 18:19
**deponents** [1] - 40:3
**depose** [4] - 17:11, 20:3, 20:12, 25:5
**deposed** [5] - 25:4, 25:13, 40:6, 41:18, 41:20
**deposition** [19] - 11:23, 11:25, 17:18, 17:25, 18:18, 19:2, 20:3, 20:10, 20:22, 20:25, 21:3, 22:14, 22:21, 26:1, 27:1, 36:23, 38:8, 41:9, 41:21
**depositions** [7] - 8:8, 8:9, 22:3, 25:10, 32:12, 32:20, 33:18
**Deputy** [1] - 2:23
**designed** [2] - 8:10
**detail** [1] - 19:19
**determinative** [2] - 18:7, 19:12
**determines** [1] - 18:4
**developed** [2] - 21:11, 26:22

**development** [1] - 26:21
**different** [1] - 7:1
**difficult** [3] - 29:9, 31:22, 41:19
**difficulties** [2] - 7:11, 12:9
**digital** [2] - 31:21, 32:3
**direct** [1] - 35:17
**disappointed** [1] - 16:12
**disappointing** [2] - 16:22, 27:20
**disclose** [1] - 27:5
**disclosed** [1] - 22:5
**discovered** [4] - 7:25, 9:9, 12:2, 13:5
**discovery** [3] - 3:25, 6:16, 7:13, 12:5, 23:4, 31:21, 32:23
**discrete** [1] - 33:17
**discuss** [1] - 36:16
**discussed** [1] - 37:14
**discussing** [1] - 41:16
**discussion** [1] - 4:20
**dispute** [2] - 10:16, 10:17
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 11:14
**doctrine** [2] - 20:22, 23:10
**document** [9] - 22:6, 24:16, 31:16, 32:3, 34:13, 38:25, 40:1, 41:12
**documentary** [1] - 17:22
**documentation** [1] - 7:21
**documented** [1] - 37:25
**documents** [57] - 7:13, 8:24, 9:1, 9:7, 9:8, 9:10, 9:13, 9:23, 10:12, 10:13, 10:15, 10:21, 10:22, 10:23, 11:4, 11:22, 12:2, 12:5, 12:9, 12:10, 12:14, 14:8, 15:13, 16:23, 17:3, 17:12, 17:19, 18:1, 19:16, 19:18, 20:1, 20:13, 20:25, 21:5, 21:6, 21:20, 22:12, 22:18, 22:20, 27:1, 30:5, 31:5, 31:25, 32:12, 32:15, 32:19, 32:22, 33:13, 34:6, 36:2,

36:14, 36:15, 39:10
**done** [7] - 8:25, 11:21, 29:12, 30:8, 30:21, 30:22, 35:10
**down** [4] - 8:24, 8:25, 24:3, 37:13
**drafting** [2] - 40:10, 40:20
**drive** - 29:18
**dropped** [1] - 27:21
**drove** [2] - 27:4, 27:5
**Drugs** [1] - 2:16
**drugs** [1] - 26:12
**DUANE** [1] - 2:5
**due** [2] - 9:5, 15:2
**duplicate** [1] - 21:22
**duplicates** [1] - 17:20
**during** [2] - 22:3, 38:4

**E**

**eager** [1] - 18:9
**early** [2] - 33:6, 40:11
**easily** [1] - 34:19
**eastern** [1] - 7:8
**easy** [1] - 34:17
**effort** [1] - 35:15
**egg** [1] - 35:1
**Eisenhower** [1] - 1:15
**either** [2] - 8:2, 19:15
**email** [6] - 21:13, 21:19, 21:21, 22:4, 31:11
**emails** [1] - 38:25
**employees** [6] - 20:17, 24:15, 24:17, 25:3, 25:4
**encourage** [2] - 12:23, 13:10
**end** [7] - 4:5, 7:6, 8:18, 23:3, 36:10, 42:12
**endgame** [1] - 17:14
**ends** [1] - 8:17
**engage** [1] - 5:12
**ensure** [1] - 14:25
**entered** [1] - 34:23
**entering** [1] - 11:25
**enters** [1] - 17:12
**entire** [1] - 33:11
**entities** [1] - 25:14
**entitled** [1] - 43:2
**entry** [3] - 39:15, 39:19, 39:24
**equally** [1] - 29:10
**equipment** [2] - 15:5, 15:11, 29:2
**ERIC** [1] - 2:14
**Eric** [1] - 6:20
**ESI** [1] - 32:5
**ESQUIRE** [13] - 1:15,

1:18, 1:19, 1:19, 2:2, 2:5, 2:6, 2:10, 2:10, 2:14, 2:15, 2:18, 2:21
**essentially** [1] - 29:11
**established** [1] - 26:24
**estimate** [2] - 14:8, 14:10
**et** [2] - 14:10, 24:3
**evaluating** [1] - 14:4
**evidence** [1] - 17:22
**exactly** [2] - 28:18, 30:10
**example** [5] - 9:11, 19:20, 19:21, 32:15, 34:18
**examples** [2] - 34:16, 34:21
**exchanged** [1] - 35:6
**executive** [1] - 23:25
**exhaustively** [2] - 25:15, 25:16
**exist** [1] - 23:11
**existence** [1] - 9:9
**exists** [1] - 5:22
**expect** [5] - 18:16, 19:3, 19:4, 23:2, 26:12
**expedite** [2] - 39:12, 40:15
**expedited** [1] - 38:25
**expediting** [1] - 39:8
**experience** [1] - 30:1
**expert** [3] - 9:4, 9:5, 10:17
**explanation** [2] - 13:4, 14:19
**export** [1] - 29:21
**exported** [2] - 30:5, 30:6
**extension** [1] - 20:11
**extra** [1] - 10:1
**extraordinary** [1] - 29:11
**eye** [1] - 22:9

**F**

**fact** [9] - 8:10, 9:7, 10:2, 21:24, 25:7, 25:8, 25:11, 25:12, 27:2
**facts** [1] - 24:8
**factual** [1] - 23:18
**fairly** [1] - 40:11
**far** [2] - 8:22, 12:15
**faster** [1] - 6:10
**fault** [1] - 12:12
**favor** [1] - 18:24
**felt** [2] - 5:6, 31:11

**few** [7] - 3:12, 8:7, 15:8, 19:4, 28:21, 33:17, 37:9
**file** [23] - 3:23, 3:25, 4:16, 13:21, 16:20, 17:4, 17:19, 18:6, 18:17, 18:20, 19:10, 19:16, 20:10, 20:12, 22:2, 22:18, 28:15, 32:16, 34:18, 37:6, 37:11, 37:17, 40:7
**filed** [2] - 5:11, 38:6
**files** [3] - 14:22, 14:23, 31:22
**filing** [2] - 23:22, 39:14
**finally** [1] - 9:16
**fine** [4] - 4:4, 37:24, 38:2, 41:24
**finished** [1] - 28:11
**firm** [1] - 10:11
**first** [4] - 3:14, 3:17, 7:3, 16:14
**five** [2] - 10:14, 22:15
**fix** [4] - 8:13, 10:1, 10:6, 10:9
**flow** [1] - 26:13
**flux** [1] - 29:6
**focused** [2] - 7:17, 8:25
**focusing** [1] - 8:24, 22:4
**following** [1] - 41:22
**FOR** [1] - 1:1
**foregoing** [1] - 43:1
**forgot** [1] - 37:13
**form** [2] - 9:20, 38:1
**formal** [1] - 11:19
**forward** [9] - 7:9, 8:8, 10:5, 10:6, 11:2, 13:10, 13:11, 13:12, 21:3
**fraction** [1] - 9:3
**framed** [1] - 7:15
**frankly** [5] - 19:17, 27:24, 28:16, 31:9, 32:5
**FREEMAN** [1] - 1:14
**frequently** [1] - 7:12
**Friday** [3] - 11:6, 11:8, 35:7
**front** [1] - 16:16
**frustrated** [2] - 29:10, 30:18
**frustrating** [3] - 12:24, 16:22, 27:20
**frustration** [1] - 29:10
**full** [1] - 12:22
**full-stop** [1] - 12:22
**future** [3] - 11:1, 12:3,

12:5

**G**

**G.C** [1] - 9:13
**gapped** [3] - 14:24, 15:7, 27:14
**Gates** [2] - 26:5, 26:23
**general** [2] - 24:25, 34:2
**Geoppinger** [1] - 28:6
**GEOPPINGER** [3] - 2:18, 28:4, 28:7
**Georgia** [1] - 2:11
**Germany** [1] - 41:17
**given** [5] - 9:19, 15:5, 21:20, 34:19, 37:8
**glad** [1] - 17:16
**GOLDBERG** [17] - 2:5, 3:8, 13:25, 14:3, 14:13, 18:15, 20:6, 20:8, 24:7, 25:17, 25:20, 25:25, 36:20, 36:25, 38:3, 38:18, 42:14
**Goldberg** [10] - 3:8, 13:24, 17:16, 18:13, 20:7, 20:23, 24:6, 36:19, 36:20, 42:13
**goof** [1] - 6:22
**granting** [1] - 19:1
**great** [1] - 35:20
**Greenberg** [3] - 3:22, 6:16
**GREENBERG** [2] - 3:9
**guess** [4] - 4:8, 10:24, 30:7, 35:1
**guessing** [2] - 16:16, 33:9
**guy** [1] - 26:8

**H**

**hand** [1] - 6:22
**handled** [1] - 5:10
**hands** [2] - 7:22, 39:10
**happy** [6] - 3:9, 28:21, 32:1, 34:20, 39:12, 41:16
**hard** [5] - 13:2, 15:17, 17:5, 29:7, 31:25
**hard-copy** [1] - 31:25
**hardware** [3] - 14:24, 16:3, 29:18
**hate** [2] - 26:4, 26:18
**head** [2] - 22:25, 26:20
**Healthcare** [1] - 2:8
**hear** [9] - 4:2, 4:25, 7:3, 7:12, 7:15, 8:19, 13:11, 37:15, 39:4

**heard** [1] - 27:10
**hearing** [3] - 16:14, 39:20, 39:23
**held** [1] - 3:1
**help** [1] - 7:16
**helpful** [4] - 7:15, 8:23, 25:22, 32:18
**helps** [1] - 18:2
**Hetero** [9] - 2:16, 6:16, 6:20, 6:21, 9:6, 10:2, 10:23, 13:16
**hi** [1] - 39:6
**high** [1] - 25:12
**highest** [2] - 26:7, 26:13
**highly** [1] - 26:3
**Highway** [1] - 2:3
**Hill** [1] - 6:20
**HILL** [1] - 2:14
**Hilton** [2] - 41:6, 42:16
**HILTON** [3] - 1:19, 41:6, 42:6
**history** [2] - 10:9, 11:17
**honest** [1] - 38:12
**honestly** [1] - 23:19
**Honor** [78] - 3:8, 3:21, 4:24, 5:2, 6:4, 6:9, 6:14, 6:19, 8:21, 13:17, 13:25, 14:13, 14:17, 14:20, 15:5, 15:10, 15:12, 15:16, 15:23, 16:1, 16:5, 16:8, 16:11, 16:15, 16:18, 18:2, 18:15, 18:19, 18:20, 18:24, 19:5, 19:14, 20:6, 20:19, 21:4, 21:13, 24:7, 27:21, 28:5, 28:7, 28:13, 28:20, 29:1, 29:7, 29:14, 29:25, 30:11, 30:15, 30:24, 31:6, 31:13, 31:15, 31:21, 32:2, 32:8, 33:20, 34:4, 34:15, 34:21, 35:5, 35:21, 36:6, 36:7, 36:18, 36:20, 36:21, 37:5, 37:14, 37:15, 37:20, 38:20, 39:3, 40:12, 41:6, 41:15, 42:6, 42:14, 42:19
**Honor's** [2] - 14:3, 37:5
**HONORABLE** [1] - 1:11
**Honorable** [3] - 2:22, 3:2, 39:18
**hopefully** [2] - 10:7, 13:13

**hoping** [3] - 13:14, 29:25, 30:21
**Huahai** [1] - 2:8
**Humana** [6] - 3:23, 4:8, 4:22, 5:4, 5:5, 5:6
**Humana's** [1] - 3:19

## I

**idea** [1] - 33:23
**identification** [1] - 15:13
**identified** [2] - 12:10, 25:7
**identify** [4] - 31:16, 32:1, 32:2, 34:17
**immediately** [2] - 31:1, 31:2
**important** [9] - 7:6, 17:12, 17:20, 17:22, 19:24, 22:25, 24:3, 24:5, 32:19
**impose** [1] - 13:8
**IN** [1] - 1:4
**Inc** [2] - 2:12, 2:13
**inclined** [1] - 12:22
**including** [1] - 23:24
**inconsistent** [2] - 20:9, 20:18
**index** [2] - 33:11, 33:14
**indulged** [1] - 8:16
**Industries** [1] - 2:12
**information** [9] - 18:17, 18:22, 20:15, 25:1, 25:5, 25:6, 26:6, 26:13, 28:22
**initial** [2] - 18:5, 23:3
**insisted** [1] - 39:14
**intending** [2] - 25:21, 40:2
**interested** [1] - 39:21
**interesting** [3] - 16:6, 18:16, 21:10
**internally** [1] - 21:14
**Internet** [5] - 4:2, 27:16, 29:19, 30:4, 30:9
**Interruption** [1] - 27:25
**intervention** [1] - 13:15
**introduced** [1] - 24:11
**introduction** [1] - 26:10
**involve** [1] - 26:9
**involved** [3] - 23:7, 23:15, 24:10
**involvement** [6] - 19:13, 23:15, 24:3,

26:23, 26:25, 27:1
**irbesartan** [1] - 21:16
**isolated** [1] - 29:15
**isolation** [1] - 15:13
**issue** [21] - 4:22, 5:20, 6:18, 7:20, 13:23, 19:3, 24:8, 24:11, 24:12, 25:23, 26:3, 28:25, 31:20, 33:7, 33:8, 33:10, 38:23, 40:1, 41:9
**issues** [16] - 7:6, 7:10, 8:12, 19:14, 23:18, 24:18, 25:9, 26:8, 26:9, 31:10, 32:11, 33:18, 35:6, 35:25
**item** [4] - 3:17, 3:18, 6:15, 13:20
**items** [1] - 7:5

## J

**JEFFREY** [1] - 2:18
**Jens** [1] - 40:6
**JERSEY** [1] - 1:1
**Jersey** [4] - 1:9, 1:16, 2:16, 11:14
**JESSICA** [1] - 2:6
**Jessica** [1] - 14:14
**joined** [1] - 6:21
**joining** [1] - 41:8
**JUDGE** [92] - 3:3, 3:6, 3:11, 3:23, 4:4, 4:7, 4:14, 4:18, 4:25, 5:14, 5:22, 6:1, 6:7, 6:10, 6:13, 6:15, 6:24, 8:5, 8:14, 8:19, 10:24, 12:19, 12:22, 13:2, 13:19, 14:2, 14:5, 14:15, 14:18, 15:15, 15:20, 15:25, 16:3, 16:6, 16:9, 16:13, 17:16, 18:13, 19:3, 19:7, 20:5, 20:7, 20:23, 21:7, 21:16, 21:18, 22:8, 22:22, 23:13, 24:6, 25:16, 25:19, 25:21, 26:15, 28:1, 28:6, 28:8, 28:14, 30:7, 30:12, 30:16, 31:2, 32:7, 33:5, 33:19, 34:24, 35:13, 36:4, 36:9, 36:19, 36:24, 37:21, 38:4, 38:14, 38:21, 39:5, 39:17, 39:22, 40:7, 40:14, 40:18, 40:22, 40:25, 41:4, 41:14, 41:23, 41:25, 42:5, 42:7, 42:12, 42:15, 42:20

**judge** [1] - 39:16
**Judge** [24] - 4:1, 7:4, 7:11, 7:20, 8:15, 11:20, 12:6, 12:14, 12:21, 13:1, 31:19, 33:5, 33:15, 33:25, 34:1, 34:25, 35:20, 38:12, 39:18, 39:19, 39:23, 41:3, 42:4
**judgment** [6] - 10:18, 23:3, 23:21, 23:23, 24:9, 25:13
**Judicial** [1] - 2:22
**July** [11] - 15:5, 15:20, 21:15, 28:16, 28:18, 30:17, 30:19, 30:20, 37:6, 37:8, 37:10
**June** [6] - 1:9, 15:11, 40:23, 40:25, 41:5, 43:6
**jury** [1] - 25:8

## K

**KANNER** [1] - 1:18
**KATZ** [1] - 1:14
**keep** [5] - 11:24, 14:25, 15:19, 38:17, 42:11
**kept** [2] - 29:3, 31:3
**kind** [5] - 7:15, 8:12, 26:13, 29:6, 35:1
**KIRTLAND** [1] - 2:2
**knowledge** [2] - 24:22, 24:25
**knows** [2] - 21:13, 23:18
**Kong's** [1] - 14:23
**Kugler** [1] - 2:22

## L

**laboratory** [1] - 7:22
**Labs** [6] - 2:16, 6:20, 6:21, 7:23, 7:25
**lack** [1] - 20:1
**language** [3] - 22:19, 29:22
**laptop** [3] - 14:25, 27:14, 27:15
**laptops** [2] - 15:7
**large** [2] - 17:4, 23:1
**larry** [1] - 2:23
**last** [4] - 3:18, 8:16, 31:7, 36:10
**late** [2] - 9:9, 21:1
**latest** [1] - 21:15
**Law** [1] - 2:22
**law** [3] - 11:13, 11:14, 12:6
**lawyers** [1] - 28:3

**Layne** [1] - 41:6
**LAYNE** [1] - 1:19
**lead** [2] - 3:9, 12:4
**leadership** [1] - 5:8
**leading** [1] - 19:25
**learned** [1] - 16:7
**least** [2] - 16:17, 22:20
**leave** [1] - 41:18
**left** [1] - 29:6
**length** [1] - 29:11
**less** [1] - 30:1
**letter** [19] - 3:15, 3:17, 3:18, 6:15, 6:24, 6:25, 16:4, 20:24, 31:9, 31:13, 31:15, 31:17, 34:9, 34:14, 35:5, 35:18, 36:13, 37:25
**letting** [1] - 42:16
**level** [7] - 12:13, 20:17, 24:14, 25:3, 25:12, 26:7, 26:13
**Li's** [1] - 32:15
**LIABILITY** [1] - 1:4
**liability** [3] - 23:23, 24:20, 25:9
**Lin** [1] - 32:17
**line** [2] - 32:3, 32:5
**lines** [1] - 31:12
**Linhai** [1] - 30:3
**list** [2] - 12:11, 38:9
**listed** [1] - 21:22
**LITIGATION** [1] - 1:4
**LLC** [4] - 1:14, 1:18, 2:8, 2:12
**LLLP** [1] - 2:17
**LLP** [4] - 2:2, 2:5, 2:9, 2:14
**LOCKARD** [11] - 2:10, 39:3, 39:6, 39:18, 39:25, 40:9, 40:17, 40:20, 41:15, 41:24, 42:4
**Lockard** [3] - 39:3, 40:7, 41:10
**log** [1] - 6:17
**look** [5] - 9:2, 9:17, 32:25, 38:4
**looked** [2] - 12:11, 39:15
**looking** [2] - 15:22, 21:9
**looks** [3] - 4:2, 7:1, 39:7
**loose** [2] - 7:6, 8:16
**loose-end-type** [1] - 7:6
**LORETTA** [1] - 2:21
**Loretta** [1] - 41:5
**losing** [1] - 16:25

**loss** [3] - 16:20, 17:5, 28:16
**loud** [1] - 17:23
**Louisiana** [1] - 1:20
**lower** [3] - 20:17, 25:3, 27:2
**lower-level** [2] - 20:17, 25:3
**lowest** [1] - 24:14
**Ltd** [2] - 2:8, 2:12

## M

**macro** [1] - 26:8
**MacStravic** [1] - 2:23
**Maggie** [1] - 14:22
**magic** [1] - 9:8
**Magistrate** [2] - 39:16, 39:23
**manner** [1] - 30:8
**mantras** [1] - 26:25
**manufactures** [1] - 26:12
**manufacturing** [5] - 4:10, 9:12, 16:8, 26:10, 26:11
**marked** [1] - 34:6
**market** [1] - 27:3
**Master** [1] - 3:2
**MASTER** [1] - 1:11
**match** [3] - 32:22, 34:9, 34:13
**material** [2] - 23:15, 24:8
**materially** [2] - 18:23, 25:2
**matter** [6] - 5:23, 22:2, 22:25, 24:9, 25:22, 43:2
**matters** [2] - 17:9, 35:18
**MAZIE** [1] - 1:14
**mean** [17] - 3:24, 8:23, 9:9, 9:21, 10:7, 11:3, 18:4, 19:13, 20:9, 21:4, 23:5, 24:14, 25:14, 35:1, 35:11, 40:3, 41:15
**means** [2] - 17:2, 22:6
**mechanical** [1] - 1:24
**meet** [7] - 5:19, 7:7, 7:12, 34:16, 34:22, 35:13, 35:17
**meetings** [1] - 19:21
**mention** [1] - 36:21
**mentioned** [1] - 20:24
**Meridan** [1] - 36:14
**messages** [1] - 27:12
**met** [1] - 36:7
**metadata** [1] - 34:20
**micro** [2] - 26:7, 26:9

**Microsoft** [1] - 26:6
**middle** [1] - 31:24
**might** [5] - 5:6, 13:6, 14:9, 14:11, 19:18
**militate** [1] - 20:2
**Min** [1] - 32:15
**mind** [1] - 22:24
**missed** [1] - 36:11
**missing** [3] - 8:24, 9:1, 10:22
**Mitchell** [1] - 1:8
**momentarily** [1] - 5:11
**Monday** [3] - 15:18, 29:17, 40:16
**money** [1] - 27:8
**month** [2] - 16:17, 27:24
**months** [6] - 9:14, 9:15, 10:14, 27:24
**MORRIS** [1] - 2:5
**most** [2] - 15:3, 26:9
**mostly** [1] - 31:21
**motion** [38] - 3:19, 3:23, 3:24, 3:25, 4:3, 4:16, 5:6, 5:11, 5:12, 5:16, 5:21, 6:8, 6:11, 11:19, 13:20, 13:22, 14:20, 16:21, 17:10, 18:9, 18:19, 18:21, 19:2, 20:18, 20:19, 23:3, 36:14, 36:23, 37:7, 37:12, 38:8, 38:13, 38:14, 38:21, 39:12
**motion's** [1] - 16:18
**motions** [4] - 23:22, 38:6, 38:9, 38:17
**move** [2] - 28:24, 37:1
**moving** [1] - 19:7
**MR** [69] - 3:5, 3:8, 3:21, 4:1, 4:6, 4:8, 4:15, 4:23, 5:17, 5:24, 6:9, 6:12, 6:14, 6:19, 7:4, 8:6, 8:15, 8:21, 11:3, 11:12, 12:21, 13:1, 13:17, 13:18, 13:25, 14:3, 14:13, 16:11, 16:14, 18:2, 18:15, 19:5, 19:9, 20:6, 20:8, 21:4, 21:8, 21:17, 21:19, 22:9, 23:5, 23:14, 24:7, 25:17, 25:20, 25:25, 26:17, 28:2, 28:4, 28:7, 28:13, 30:15, 32:8, 33:7, 34:25, 35:20, 35:22, 36:17, 36:20, 36:25, 38:3, 38:12, 38:16, 38:18, 40:24,

42:11, 42:14, 42:19, 42:21
**MS** [29] - 5:2, 6:3, 14:17, 14:19, 15:16, 15:22, 16:1, 16:5, 16:7, 28:20, 30:10, 30:24, 31:6, 33:20, 35:21, 36:6, 39:3, 39:6, 39:18, 39:25, 40:9, 40:17, 40:20, 41:3, 41:6, 41:15, 41:24, 42:4, 42:6
**multiple** [1] - 31:19
**multistep** [1] - 26:11
**must** [1] - 7:14
**mute** [3] - 28:2, 37:20, 37:21

### N

**nail** [1] - 37:13
**NAKUL** [1] - 2:15
**Nakul** [1] - 6:22
**Nassall** [2] - 40:6, 41:10
**nature** [1] - 31:21
**NDMA** [2] - 21:15, 27:6
**NE** [1] - 2:11
**necessarily** [1] - 10:5
**necessary** [4] - 3:10, 20:3, 37:10, 37:11
**need** [10] - 4:19, 8:9, 8:17, 15:11, 22:12, 25:6, 36:16, 39:11, 39:13, 40:4
**needed** [2] - 9:3, 14:23
**needing** [1] - 20:24
**needs** [2] - 6:10, 29:14
**never** [3] - 33:7, 33:8, 35:3
**NEW** [1] - 1:1
**new** [7] - 10:22, 19:17, 21:3, 33:21, 33:22, 34:5, 34:9
**New** [5] - 1:9, 1:16, 1:20, 2:16, 11:14
**news** [2] - 15:10, 15:12
**next** [11] - 6:15, 11:5, 11:6, 11:8, 13:20, 17:10, 19:4, 29:16, 38:7, 40:11, 41:21
**nice** [1] - 42:19
**nobody** [2] - 19:23, 19:25
**noise** [1] - 37:22
**normal** [2] - 23:12, 23:14
**notes** [2] - 19:23, 20:1

**nothing** [5] - 5:9, 6:4, 27:14, 28:8, 42:11
**notion** [1] - 20:14
**November** [1] - 9:24
**nuance** [1] - 19:9
**number** [4] - 12:11, 14:8, 14:10, 33:13
**NUMBER** [1] - 1:3
**Number** [1] - 32:16

### O

**objectionable** [1] - 6:7
**obtained** [2] - 8:2, 25:2
**obviously** [20] - 15:12, 15:18, 16:22, 17:6, 17:9, 17:11, 18:11, 19:24, 21:5, 22:11, 22:13, 23:10, 23:25, 24:2, 24:4, 28:25, 35:10, 36:13, 38:7, 39:9
**occur** [1] - 11:6
**occurred** [1] - 17:18
**occurs** [1] - 20:2
**OF** [1] - 1:1
**Official** [1] - 1:22
**Ohio** [1] - 2:19
**older** [1] - 15:7
**once** [1] - 29:14
**one** [22] - 8:12, 9:11, 17:7, 18:3, 19:5, 19:18, 19:20, 21:10, 21:24, 26:11, 28:3, 31:15, 32:3, 34:1, 36:21, 37:13, 38:7, 38:16, 38:25, 40:1, 40:3, 40:9
**open** [2] - 7:10, 11:25
**opinion** [1] - 5:9
**opposed** [1] - 30:22
**opposition** [4] - 37:6, 37:10, 40:16, 42:7
**optimist** [3] - 10:8, 13:13, 30:21
**order** [13] - 3:14, 10:1, 10:16, 11:16, 13:20, 13:22, 14:3, 14:25, 15:6, 20:10, 31:8, 33:23, 38:1
**order's** [1] - 34:23
**ordered** [5] - 16:15, 21:5, 27:21, 32:13, 33:25
**ordering** [1] - 35:16
**orders** [1] - 11:25
**original** [1] - 20:20
**Orleans** [1] - 1:20
**ourselves** [1] - 18:11
**outlined** [1] - 37:24

**outside** [1] - 37:22
**overall** [1] - 33:11
**overly** [2] - 32:4, 34:12
**overrule** [1] - 36:18
**own** [2] - 12:9, 29:11

### P

**P.M** [2] - 1:10, 3:2
**p.m** [1] - 42:22
**Pacific** [1] - 2:3
**PACKARD** [1] - 2:2
**pages** [1] - 14:10
**painted** [1] - 19:22
**paper** [1] - 9:20
**papers** [6] - 14:20, 20:21, 25:7, 27:10, 37:15, 37:19
**PAREKH** [2] - 2:2, 8:21, 11:3, 12:21, 13:17
**Parekh** [7] - 7:7, 8:3, 11:16, 11:21, 12:10, 12:19, 13:11
**Parkway** [1] - 1:15
**part** [4] - 11:8, 12:25, 28:25, 30:10
**particular** [5] - 5:23, 5:24, 6:3, 40:6, 41:12
**parties** [2] - 37:6, 37:17
**parties'** [1] - 38:18
**party** [3] - 7:22, 8:3, 40:20
**pass** [1] - 3:9
**passed** [1] - 36:3
**passionate** [2] - 25:23, 25:25
**past** [1] - 7:25
**path** [6] - 7:9, 8:8, 10:5, 10:6, 11:1, 13:11
**paths** [1] - 13:12
**patience** [1] - 12:15
**Pedano** [2] - 1:22, 43:4
**pending** [4] - 4:3, 16:19, 35:24, 38:19
**Pennsylvania** [1] - 2:7
**people** [5] - 21:14, 23:18, 26:2, 26:18, 27:13
**per** [1] - 31:8
**perhaps** [2] - 11:5, 37:7
**permit** [1] - 11:15
**person** [3] - 19:13, 21:21, 23:6
**person's** [2] - 19:13,

34:18
**perspective** [8] - 6:2, 7:1, 18:8, 23:4, 24:5, 27:5, 38:10, 38:13
**Pharma** [1] - 2:13
**pharmaceutical** [1] - 26:9
**Pharmaceutical** [1] - 2:12
**Pharmaceuticals** [3] - 2:7, 2:8, 2:12
**phase** [2] - 23:4, 23:21
**Philadelphia** [1] - 2:7
**phone** [5] - 31:11, 32:15, 40:12, 40:14, 41:11
**physically** [1] - 30:2
**picture** [1] - 19:23
**Piedmont** [1] - 2:11
**pivotal** [1] - 19:21
**place** [1] - 15:14
**plaintiff** [2] - 8:19, 39:14
**plaintiffs** [21] - 4:21, 7:21, 7:24, 8:9, 8:17, 12:8, 12:11, 15:18, 23:22, 24:24, 29:24, 30:25, 31:18, 31:20, 31:23, 32:2, 34:3, 36:17, 39:7, 39:10, 41:7
**Plaintiffs** [3] - 1:16, 1:21, 2:4
**plaintiffs'** [14] - 3:18, 6:1, 6:25, 12:15, 12:25, 14:7, 18:8, 23:4, 27:13, 29:9, 31:9, 34:9, 36:22, 38:10
**plan** [1] - 27:2
**planning** [3] - 37:9, 40:13, 41:8
**plans** [1] - 37:2
**play** [1] - 4:17
**pleased** [3] - 13:11, 36:13, 40:20
**point** [11] - 8:4, 8:7, 10:25, 12:15, 13:3, 13:9, 19:15, 23:19, 31:8, 34:7, 35:11
**pointed** [1] - 31:13
**position** [4] - 18:21, 20:9, 29:9, 34:8
**positions** [2] - 8:23, 35:7
**possible** [4] - 27:3, 41:13, 41:14
**potentially** [4] - 23:5, 23:24, 24:4, 24:5
**practical** [4] - 17:8,

17:13, 22:13, 22:21
**practice** [7] - 5:6,
5:12, 5:16, 6:8, 6:11,
12:6, 36:7
**precisely** [1] - 12:3
**preclude** [1] - 13:22
**precluded** [1] - 12:2
**precluding** [1] - 20:22
**preclusive** [1] - 11:16
**predicament** [1] - 29:5
**predominantly** [1] -
7:10
**preempt** [1] - 18:14
**preference** [1] - 5:13
**prejudiced** [2] - 9:6,
12:16
**premature** [3] - 4:14,
5:7, 12:17
**prepared** [2] - 5:11,
18:12
**PRESENT** [1] - 2:20
**present** [1] - 35:16
**presented** [3] - 11:19,
18:18, 30:17
**pretty** [1] - 22:7
**prevail** [2] - 17:11,
18:10
**prevent** [1] - 37:22
**previously** [1] - 33:25
**primarily** [1] - 3:14
**Princeton** [1] - 2:16
**Prinston** [1] - 2:7
**prioritize** [1] - 38:10
**priority** [1] - 38:9
**Priselac** [8] - 14:14,
14:16, 18:14, 28:19,
30:17, 33:19, 36:4
**PRISELAC** [15] - 2:6,
14:17, 14:19, 15:16,
15:22, 16:1, 16:5,
16:7, 28:20, 30:10,
30:24, 31:6, 33:20,
35:21, 36:6
**privilege** [2] - 6:16,
29:23
**problem** [5] - 9:4,
23:9, 34:4, 34:15,
39:8
**problems** [3] - 10:1,
16:4, 39:25
**procedurally** [1] -
5:10
**proceedings** [2] -
42:22, 43:2
**PROCEEDINGS** [1] -
3:1
**Proceedings** [1] -
1:24
**process** [17] - 4:16,
12:7, 15:19, 16:15,

16:19, 19:25, 24:10,
24:18, 24:19, 26:11,
26:22, 27:4, 27:7,
29:17, 29:24, 30:2,
33:6
**processed** [2] - 29:15,
30:4
**processing** [1] - 15:14
**procure** [2] - 14:23,
29:3
**produce** [6] - 7:24,
9:12, 10:3, 10:13,
10:14, 12:14
**produced** [30] - 1:24,
7:18, 8:2, 9:2, 9:3,
9:14, 9:15, 9:18,
9:21, 9:24, 10:21,
11:5, 11:8, 11:22,
12:8, 12:10, 13:3,
13:5, 14:8, 17:19,
17:21, 19:10, 20:12,
32:14, 33:1, 33:3,
33:12, 34:5, 35:12,
36:15
**producing** [1] - 8:2
**production** [3] - 10:2,
10:4, 13:21, 14:11,
15:17, 18:20, 20:9,
21:7, 21:22, 28:15,
31:4, 31:7, 32:10,
33:11, 33:14, 33:15,
33:21, 33:24, 34:5,
35:4, 35:24, 36:2
**productions** [1] -
32:12
**productive** [1] - 35:14,
35:15
**PRODUCTS** [1] - 1:4
**promise** [1] - 23:22
**proper** [2] - 4:13, 4:15
**proposed** [2] - 3:19,
38:1
**protected** [1] - 23:8
**protective** [2] - 13:20,
13:22
**protocol** [1] - 32:5
**provide** [1] - 18:17
**punitive** [2] - 23:24,
24:1
**purpose** [2] - 15:8,
25:10
**purposes** [1] - 24:9
**pursue** [3] - 13:13,
13:24, 14:1
**put** [5] - 8:11, 19:9,
29:8, 37:25, 40:10
**putting** [2] - 9:5, 29:5

### Q

**quality** [2] - 31:8,

35:25
**questions** [4] - 5:4,
24:8, 25:11, 25:22
**quite** [2] - 32:4, 34:17
**quote** [2] - 19:10, 23:9

### R

**raised** [3] - 23:19,
31:10, 35:18
**range** [3] - 32:17,
33:14, 34:18
**rather** [2] - 11:6, 35:15
**RE** [1] - 1:4
**reach** [4] - 4:19,
10:25, 35:8
**reached** [2] - 4:8, 7:9
**reaction** [1] - 24:12
**read** [5] - 6:24, 6:25,
14:20, 31:12
**ready** [3] - 3:3, 18:10,
19:6
**realist** [1] - 30:15
**realized** [1] - 27:6
**really** [15] - 3:18, 6:4,
9:3, 9:9, 9:10, 16:20,
17:5, 17:9, 18:3,
20:8, 21:11, 26:14,
29:8, 31:13, 32:24
**reargument** [1] -
25:21
**reason** [2] - 5:5, 40:4
**reasonable** [2] -
14:12, 40:12
**reasons** [2] - 19:18,
29:19
**received** [1] - 35:3
**recently** [1] - 22:3
**record** [6] - 9:12,
20:20, 35:23, 38:1,
40:16, 43:2
**recorded** [1] - 1:24
**redacted** [1] - 39:1
**Redondo** [1] - 2:3
**referred** [2] - 39:16,
41:10
**referring** [1] - 33:12
**refurbished** [1] - 15:8
**refute** [2] - 20:14,
27:10
**regarding** [2] - 32:15,
41:12
**rejected** [1] - 31:19
**related** [3] - 9:6,
14:21, 32:1
**relatedly** [1] - 14:22
**relates** [1] - 31:17
**relevant** [2] - 11:24,
23:2
**relief** [1] - 31:18
**rely** [2] - 10:16, 10:23

**relying** [1] - 12:2
**remaining** [2] - 8:7,
40:3
**remember** [1] - 38:17
**REMOTE** [1] - 1:6
**remotely** [1] - 3:1
**repeat** [2] - 25:17,
25:18
**reply** [5] - 37:10,
37:11, 37:17, 39:13,
39:14
**report** [1] - 10:17
**Reporter** [1] - 1:22
**Reporter/
Transcriber** [1] -
43:4
**reports** [2] - 9:4, 9:6
**represent** [1] - 6:20
**represents** [1] - 5:4
**request** [8] - 9:23,
10:3, 14:7, 31:17,
32:23, 33:3, 33:15,
34:2
**requested** [2] - 10:10,
34:3
**requests** [9] - 32:1,
32:4, 32:25, 33:17,
34:10, 34:11, 34:12,
34:14, 36:3
**require** [3] - 11:18,
13:14, 33:6
**required** [1] - 39:13
**requires** [1] - 11:13
**reschedule** [1] - 20:25
**research** [1] - 26:21
**residual** [1] - 26:10
**resolution** [2] - 17:7,
18:9
**resolve** [1] - 5:19
**resolved** [3] - 6:10,
39:2, 40:5
**respect** [3] - 5:22,
17:18, 28:15
**respond** [3] - 8:11,
17:5, 26:17
**responding** [1] - 6:21
**response** [4] - 10:3,
33:3, 36:2, 39:12
**responsive** [5] - 7:19,
7:24, 9:23, 12:14,
33:14
**responsiveness** [2] -
29:23, 34:7
**restrictions** [1] - 41:19
**review** [3] - 21:20,
29:23, 32:12
**reviewed** [1] - 29:20
**reviewers** [4] - 22:19,
29:20, 29:22, 29:23
**reviewing** [1] - 32:21

**ringing** [1] - 3:12
**RMR** [1] - 43:4
**Road** [2] - 2:11, 2:15
**Robert** [1] - 2:22
**robust** [1] - 11:13
**room** [1] - 19:23
**Roseland** [1] - 1:16
**Roszel** [1] - 2:15
**roundabout** [1] -
22:11
**route** [1] - 30:23
**RPR** [1] - 43:4
**RUBENSTEIN** [11] -
2:10, 3:21, 4:1, 4:6,
4:8, 4:15, 5:17, 5:24,
6:9, 6:12, 6:14
**Rubenstein** [2] - 3:22,
5:15
**Rule** [2] - 23:8, 23:11
**rule** [1] - 40:13
**ruled** [3] - 31:20, 39:9,
39:11

### S

**sales** [1] - 29:5
**sanction** [1] - 13:7
**sanctions** [2] - 36:23,
37:8
**sandbagging** [1] -
12:7
**saw** [2] - 16:4, 35:5
**schedule** [7] - 20:11,
36:25, 37:1, 37:8,
37:24, 39:8, 42:16
**scheduled** [2] - 8:8,
22:14
**Schneider** [6] - 31:19,
33:5, 33:15, 33:25,
34:2
**scrap** [1] - 27:7
**seal** [1] - 22:18
**search** [1] - 33:22
**second** [2] - 7:20,
29:13
**secret** [1] - 38:14
**secrets** [1] - 29:21
**secure** [1] - 15:1
**security** [1] - 14:21,
29:19
**see** [8] - 3:3, 3:16,
4:11, 4:18, 5:14,
31:9, 32:17, 37:5
**seem** [1] - 35:9
**sell** [1] - 29:2
**sense** [5] - 17:15,
17:24, 22:16, 22:17,
33:4
**sent** [2] - 8:1, 21:13
**set** [2] - 12:17, 12:22
**Seth** [2] - 3:8, 36:20

**SETH** [1] - 2:5
**several** [1] - 31:20
**SHAH** [1] - 2:15
**Shah** [1] - 6:22
**Shanghai** [2] - 26:21, 30:3
**share** [1] - 27:3
**short** [2] - 3:15, 34:10
**shortage** [1] - 15:2
**show** [4] - 10:22, 24:2, 27:1, 34:22
**showing** [1] - 11:18
**shown** [1] - 24:16
**shows** [1] - 22:4
**side** [5] - 14:7, 19:15, 22:7, 28:23, 42:13
**sides** [2] - 32:22, 35:6
**sign** [1] - 3:16
**significant** [7] - 21:12, 21:25, 22:7, 23:5, 24:1, 27:14, 32:11
**significantly** [2] - 18:25, 20:21
**silly** [1] - 35:11
**similar** [2] - 7:14, 31:18
**simply** [4] - 10:2, 12:3, 26:10, 40:15
**single** [5] - 24:16, 25:7, 31:16, 31:17, 32:3
**site** [1] - 29:16
**situation** [2] - 26:1, 33:16
**Slater** [16] - 3:3, 4:21, 16:10, 20:24, 26:16, 28:12, 28:22, 30:14, 32:7, 34:1, 34:17, 34:24, 36:22, 37:2, 37:13, 42:10
**SLATER** [32] - 1:14, 1:15, 3:5, 4:23, 16:11, 16:14, 18:2, 19:5, 19:9, 21:4, 21:8, 21:17, 21:19, 22:9, 23:5, 23:14, 26:17, 28:2, 28:13, 30:15, 32:8, 33:7, 34:25, 35:20, 35:22, 36:17, 38:12, 38:16, 40:24, 42:11, 42:19, 42:21
**Slater's** [2] - 34:21, 37:8
**slowdown** [1] - 30:11
**smarter** [1] - 27:13
**SMITH** [2] - 2:21, 41:3
**so...** [2] - 6:6, 17:1
**software** [1] - 29:18
**Solco** [1] - 2:8

**solvent** [1] - 26:11
**someone** [1] - 28:1
**sometime** [1] - 40:11
**somewhere** [1] - 30:23
**soon** [2] - 16:23, 40:6
**sorry** [7] - 4:1, 4:14, 13:25, 15:24, 19:5, 29:18, 37:12
**sort** [2] - 7:5, 17:7
**sought** [1] - 7:21
**sound** [1] - 27:16
**South** [2] - 2:3, 2:6
**Southeast** [1] - 15:2
**speaking** [2] - 3:6, 4:21
**SPECIAL** [1] - 1:11
**Special** [1] - 3:2
**specific** [4] - 5:4, 11:4, 14:14, 33:17
**specifically** [2] - 14:24, 31:25
**spectrum** [1] - 7:7
**spot** [1] - 40:10
**staff** [1] - 14:22
**standard** [1] - 23:12
**standard's** [1] - 18:4
**standpoint** [1] - 38:18
**STANOCH** [1] - 1:19
**Stanoch** [4] - 39:6, 40:2, 41:7, 41:17
**start** [7] - 3:13, 11:25, 15:11, 18:10, 19:6, 22:15
**started** [4] - 3:11, 3:12, 15:13, 24:18
**starting** [1] - 29:16
**state** [2] - 29:20, 38:14
**STATES** [1] - 1:1
**States** [3] - 29:21, 30:5, 30:6
**STATUS** [1] - 1:5
**status** [1] - 31:5
**stay** [4] - 3:25, 4:9, 4:12, 6:5
**steady** [1] - 6:22
**stenography** [1] - 1:24
**still** [8] - 8:24, 9:6, 10:12, 22:13, 31:4, 32:21, 41:23
**stop** [2] - 12:22, 13:2
**story** [1] - 10:18
**Street** [3] - 1:20, 2:6, 2:18
**Streets** [1] - 1:8
**strict** [1] - 17:7
**stuck** [1] - 30:23
**sub** [1] - 34:12
**sub-requests** [1] -

34:12
**submit** [2] - 35:5, 35:7
**substantially** [5] - 31:7, 35:4, 35:24, 36:5, 36:8
**substantive** [1] - 19:22
**sudden** [1] - 10:22
**sufficient** [3] - 13:6, 37:19
**suit** [1] - 15:8
**Suite** [2] - 2:11, 2:18
**summary** [6] - 10:18, 23:3, 23:21, 23:23, 24:9, 25:13
**summer** [1] - 37:2
**supplemental** [5] - 21:7, 31:4, 32:10, 33:21, 33:24
**support** [3] - 18:21, 20:14, 20:17
**suppose** [1] - 33:9
**supposed** [3] - 9:14, 10:3, 42:9
**surprised** [2] - 4:11, 31:9
**surprises** [1] - 17:22
**surprising** [2] - 19:17, 26:24
**Syncores** [1] - 26:22

**T**

**talks** [1] - 11:15
**team** [1] - 27:13
**Teams** [1] - 26:6
**technical** [2] - 26:3, 28:23
**technically** [1] - 27:14
**ten** [2] - 24:17, 34:11
**terms** [7] - 8:22, 14:11, 17:22, 23:20, 29:13, 33:22, 33:25
**testified** [1] - 19:22
**testimony** [11] - 23:2, 23:7, 23:16, 23:19, 23:20, 23:25, 24:7, 24:16, 24:21, 27:1, 36:23
**testing** [3] - 7:22, 9:13
**Teva** [3] - 2:12, 2:12, 38:22
**text** [1] - 27:12
**THE** [3] - 1:1, 1:11, 11:10
**they've** [4] - 9:2, 12:16, 20:10, 25:13
**thinking** [1] - 18:10
**Third** [1] - 11:14
**third** [2] - 7:22, 8:3
**third-party** [1] - 7:22

**Thomas** [1] - 3:2
**THOMAS** [1] - 1:12
**thoughts** [1] - 19:7
**thousands** [1] - 34:5
**three** [4] - 10:14, 15:18, 30:1, 38:25
**throw** [1] - 21:23
**Thursday** [1] - 41:11
**tie** [2] - 8:16, 24:17
**timeline** [3] - 14:10, 17:13, 39:1
**timing** [1] - 17:10, 27:19
**today** [20] - 3:7, 4:12, 4:20, 5:5, 8:10, 8:23, 9:19, 10:5, 11:16, 11:25, 12:1, 13:24, 14:1, 16:21, 26:7, 27:21, 36:16, 36:22, 42:9, 42:17
**together** [1] - 9:5
**tomorrow** [3] - 29:4, 29:8
**took** [3] - 14:6, 15:8, 19:23
**top** [4] - 23:6, 23:25, 24:3
**top-down** [1] - 24:3
**topic** [1] - 8:11
**total** [1] - 33:13
**touched** [1] - 18:5
**ToxRox** [1] - 36:14
**track** [1] - 38:17
**transcript** [2] - 1:24, 43:1
**transcription** [1] - 1:24
**Traurig** [3] - 3:22, 6:16
**TRAURIG** [1] - 2:9
**tried** [3] - 8:16, 29:3, 37:3
**triggered** [2] - 32:11, 33:17
**true** [2] - 28:23, 33:24
**truly** [2] - 20:15, 26:1
**try** [4] - 17:8, 26:18, 27:2, 37:22
**trying** [6] - 24:25, 29:2, 33:8, 38:16, 38:17, 41:19
**Tuesday** [4] - 40:19, 40:21, 40:23, 40:24
**turn** [3] - 14:13, 24:21, 32:19
**two** [4] - 17:6, 26:20, 27:24, 38:19
**tying** [1] - 7:5
**type** [7] - 7:6, 11:16, 11:17, 11:18, 12:17, 33:7, 34:3

**types** [2] - 7:13, 34:16

**U**

**U.S** [3] - 1:8, 2:8, 25:14
**ULMER** [1] - 2:17
**ultimately** [1] - 17:9
**un-mute** [1] - 28:2
**unavailable** [1] - 20:16
**under** [1] - 20:22
**understood** [1] - 30:24
**undertaking** [1] - 35:15
**unfair** [1] - 33:2
**unfortunate** [1] - 35:2
**unfortunately** [1] - 15:2
**unique** [4] - 18:22, 20:16, 25:1, 25:5
**UNITED** [1] - 1:1
**United** [3] - 29:21, 30:5, 30:6
**unless** [1] - 36:18
**unobjectable** [1] - 6:5
**unquote** [2] - 19:10, 23:9
**unstable** [1] - 4:2
**up** [14] - 6:23, 7:5, 8:6, 8:16, 10:22, 26:13, 32:3, 32:22, 33:8, 33:18, 34:9, 34:11, 34:13, 37:4
**update** [1] - 6:17
**updated** [1] - 15:19
**urgency** [3] - 5:22, 5:25, 6:4
**USA** [1] - 2:12

**V**

**vacation** [1] - 37:2
**valsartan** [4] - 21:15, 21:16, 21:17, 27:6
**VALSARTAN** [1] - 1:4
**Vanaskie** [1] - 3:2
**VANASKIE** [93] - 1:12, 3:3, 3:6, 3:11, 3:23, 4:4, 4:7, 4:14, 4:18, 4:25, 5:14, 5:22, 6:1, 6:7, 6:10, 6:13, 6:15, 6:24, 8:5, 8:14, 8:19, 10:24, 12:19, 12:22, 13:2, 13:19, 14:2, 14:5, 14:15, 14:18, 15:15, 15:20, 15:25, 16:3, 16:6, 16:9, 16:13, 17:16, 18:13, 19:3, 19:7, 20:5,

20:7, 20:23, 21:7,
21:16, 21:18, 22:8,
22:22, 23:13, 24:6,
25:16, 25:19, 25:21,
26:15, 28:1, 28:6,
28:8, 28:14, 30:7,
30:12, 30:16, 31:2,
32:7, 33:5, 33:19,
34:24, 35:13, 36:4,
36:9, 36:19, 36:24,
37:21, 38:4, 38:14,
38:21, 39:5, 39:17,
39:22, 40:7, 40:14,
40:18, 40:22, 40:25,
41:4, 41:14, 41:23,
41:25, 42:5, 42:7,
42:12, 42:15, 42:20
**vendor** [3] - 14:23,
15:6, 29:2
**version** [1] - 10:18
**VIA** [1] - 1:6
**via** [1] - 3:1
**vice** [1] - 25:13
**VICTORIA** [1] - 2:10
**Victoria** [1] - 39:3
**VIDEOCONFERENC
E** [1] - 1:6
**videoconference** [1] -
3:1
**Vine** [1] - 2:18
**violating** [1] - 33:23

## W

**waited** [1] - 18:20
**waiting** [1] - 22:14
**Waldman** [1] - 5:3
**WALLACK** [1] - 2:14
**Wallack** [1] - 6:20
**wants** [5] - 3:23, 3:25,
6:18, 23:20, 36:18
**warrant** [3] - 18:17,
19:1, 20:22
**warranted** [2] - 13:7,
37:7
**ways** [1] - 17:6
**Wednesday** [2] -
41:13, 41:16
**week** [10] - 7:25, 11:5,
29:16, 31:7, 36:14,
37:16, 38:5, 40:11,
41:21, 41:22
**weeks** [4] - 15:9,
15:18, 30:1, 37:9
**whatsoever** [2] -
31:10, 32:6
**whereas** [1] - 19:20
**Whiteley** [3] - 4:23,
5:1, 5:3
**WHITELEY** [4] - 1:18,
1:18, 5:2, 6:3

**whole** [1] - 39:1
**Wholesaler** [1] - 2:19
**Williams** [3] - 39:18,
39:20, 39:23
**withdrawn** [1] - 36:15
**witness** [7] - 11:23,
19:22, 19:24, 20:15,
40:3, 40:6, 41:17
**witnesses** [1] - 24:17
**wondering** [4] - 16:3,
17:23, 38:24
**world** [1] - 22:6
**worth** [1] - 35:15
**wrap** [1] - 8:6
**wrestling** [1] - 8:12
**wrote** [1] - 21:21

## Y

**year** [1] - 22:5
**yesterday** [3] - 9:16,
9:17, 13:23
**yourself** [1] - 27:21

## Z

**Zhejiang** [1] - 2:8
**ZHP** [21] - 16:15,
16:19, 21:10, 21:14,
21:25, 22:6, 23:20,
23:25, 26:12, 26:21,
27:22, 29:16, 31:4,
31:16, 33:12, 35:3,
35:7, 37:6, 37:11,
37:16, 38:18
**ZHP's** [1] - 36:23
**zinc** [3] - 26:22, 27:4,
27:7
**ZOOM** [1] - 1:6
**Zoom** [1] - 3:1