# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Karen Williams, Magistrate Judge |

### TEVA DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF COURT'S GUIDANCE ON PRIVILEGE <u>DOCUMENTS</u>

On behalf of Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Activas LLC, and Actavis Pharma, Inc. (collectively "Teva"), undersigned counsel respectfully submits this response in opposition to Plaintiffs' Motion and Memorandum of Law in Support of Their Motion For Reconsideration of Court's Guidance on Privilege Documents ("Motion for Reconsideration") (ECF No. 1314). The Court should affirm the Special Master's ruling permitting Teva to claw back and redact certain emails in an email chain inadvertently produced at TEVA-MDL2875-00650876 to TEVA-MDL2875-00650880 and order Plaintiffs to destroy all unredacted copies of the document.[1]

---

[1] Plaintiffs do not challenge Teva's clawback and redaction of the September 18, 2018 email from Teva's inhouse counsel K. Bauer.

Specifically, Plaintiffs object to the Special Master's ruling allowing Teva to redact three emails in the chain—one from Teva's Director of Quality Risk Management Claire Lyons on September 17, 2018, and two from Teva's Senior Director in Global Procurement Jens Nassall on September 17 and 18, 2018, respectively. All three of those emails were sent to Teva's inhouse counsel Rachel Gallagher for the purpose of seeking legal advice related to the issues giving rise to the present litigation, as well as to other individuals at Teva. The emails involved commentary and questions related to a notice from Teva's API supplier ZHP concerning a new nitrosamine development that arose in 2018, when Teva reasonably anticipated litigation and inquiries from regulatory authorities. Teva employees sent the email to counsel Gallagher on September 17 and 18, 2018 for the purpose of seeking legal advice related to anticipated litigation and regulatory involvement and Teva's strategy for responding. For this reason, the Special Master appropriately ruled that the three communications Plaintiffs dispute are protected by attorney-client privilege. Plaintiffs have failed to establish any basis, under the applicable standard for reconsideration, warranting the extraordinary remedy they request. Teva therefore respectfully requests that the Court deny Plaintiffs' Motion for Reconsideration and order Plaintiffs to destroy all unredacted copies of the email chain produced as TEVA-MDL2875-00650876 to TEVA-MDL2875-00650880 and submitted to the Court in Exhibit A of Plaintiffs' Motion to Reconsideration.

## I.  BACKGROUND

On May 5, 2021, Teva wrote Plaintiffs to claw back TEVA-MDL2875-00650876 to TEVA-MDL2875-00650880 due to attorney-client privilege. Teva's vendor inadvertently produced the email chain to Plaintiffs and co-defendants in Teva's production volume 028. Teva learned of the inadvertent production on April 27, 2021 during the deposition of Ms. Lyons. Teva's May 5, 2021 letter complied with Rule 502 of the Federal Rules of Civil Procedure and paragraph 21 of the parties' Confidentiality and Protective Order (ECF No. 139), including the requirement that Teva notify all parties of the inadvertent production within 10 business days of the production. In response, on May 5, 2021, Plaintiffs objected to Teva's clawback request and asked to meet and confer.

On May 14, 2021, the parties conferred about TEVA-MDL2875-00650876 to TEVA-MDL2875-00650880 and other matters. On May 17, 2021, Plaintiffs agreed to redact the email with inhouse counsel Bauer but continued to object to redacting the remaining three emails involving inhouse counsel Gallagher. On May 25, 2021, Teva requested that the parties redact all four privileged emails in the email chain. Plaintiffs asked to address the issue at the next Case Management Conference.

At the June 3, 2021 Case Management Conference, the Special Master heard argument on Teva's request to claw back the four emails produced at TEVA-MDL2875-00650876 to TEVA-MDL2875-00650880. The Special Master asked to

3

view a copy of the email chain with Teva's proposed redactions. After reviewing the proposed redactions following the hearing, the Special Master adopted Teva's proposal, finding that Teva was entitled to claw back the four emails in the email chain. On June 14, 2021, Plaintiffs filed their Motion for Reconsideration.

## II. ARGUMENT

### A. The Legal Standard for Reconsideration is Exacting

"The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration. Such motions are generally treated as motions to alter or amend the judgment of the court pursuant to Rule 59(e), or as motions for relief from the court's judgment or order under Rule 60(b). *Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 542–43 (D.N.J. 2013). In the United States District Court for the District of New Jersey, Local Rule 7.1(i) "allow[s] a party to seek a motion for reconsideration if the party believes the judge has overlooked certain matters or controlling decisions in rendering the original decision." *Ivan v. Cty. of Middlesex*, 612 F. Supp. 2d 546, 550 (D.N.J. 2009) (citing L. Civ. R. 7.1(i)). "The standard for a motion for reconsideration is an exacting one." *Id.* "'[T]he purpose of a motion for reconsideration' . . . 'is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Cafe, ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985)).

4

"A reconsideration motion . . . 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised' before a judgment has been entered." *Ivan*, 612 F. Supp. 2d at 550 (quoting 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1)). Under Local Rule 7.1(i), "[a] motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion." *High 5 Games, LLC v. Marks*, No. 2:13-CV-07161-JMV-MF, 2019 WL 6828391, at *3 (D.N.J. May 30, 2019) (citing *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, *2-3 (D.N.J. July 30, 2015)). Additionally, "[t]he comments to that Rule make clear that 'reconsideration is an extraordinary remedy that is granted "very sparingly."'" *Id.* (quoting L. Civ. R. 7.1(i) cmt. 6(d)). Motions for reconsideration "'may be used only to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011)).

Here, Plaintiffs' motion wholly ignores this exacting standard and is bereft of any attempt to meet it. Plaintiffs' motion fails to point out any matters or controlling authority the Special Master supposedly overlooked in the analysis, and likewise fails to reveal any manifest error of law or newly discovered evidence that would justify a reversal of the ruling.

**B. The Communications Easily Fall Within the Scope of Privilege**

A federal court sitting in diversity applies state law to decide questions of attorney-client privilege. *In re Riddell Concussion Reduction Litig.*, Civil No. 13-7585 (JBS/JS), 2016 U.S. Dist. LEXIS 168457, *6 (D.N.J. Dec. 5, 2016) (citing Fed. R. Evid. 501; *In re Human Tissue Products Liab. Litig.*, 255 F.R.D. 151, 156 (D.N.J. 2008)). New Jersey law applies to the question of attorney-client privilege in this case. "In New Jersey, the privilege is codified and protects: 'communications' made 'in confidence,' between a 'lawyer and client' in the course of a 'professional relationship.'" *Margulis v. Hertz Corp.*, 2017 U.S. Dist. LEXIS 28311, *12 (D.N.J. Feb. 28, 2017) (quoting N.J.S.A. 2A:84A-20; N.J.R.E. 5040). However, absent the parties identifying a controlling conflict between state law and the general principles governing attorney-client privilege, the United States Court of Appeals for the Third Circuit has relied on the traditional elements and general principles of attorney-client privilege. *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861-62 (3d Cir. 1994).

"The traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer;

6

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *Id.* at 862 (citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979)). The party asserting the privilege bears the burden of showing that it applies. *Margulis*, 2017 U.S. Dist. LEXIS 28311, at *13.

When applying the standard for attorney-client privilege, "it 'is enough that the overall tenor of the document indicates that it is a request for legal advice or services.'" *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, Civil Action No. 12-cv-00787(FLW)(LHG), 2017 WL 10259770, at *2 (D.N.J. Sep. 12, 2017) (quoting *In Re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000)). This Court has upheld a Special Master's ruling that attorney-client privilege protects emails sent or received by outside counsel who counseled the defendants in connection with pending litigation related to the emails. *Id.* "Given [outside counsel's] role as a lawyer, the nature of the services she was performing, and the context in which the emails were forwarded to [her]," the communications were privileged. *Id.*

7

This approach is consistent with New Jersey law, which recognizes that the attorney-client privilege attaches to communications between individuals in a corporate party's "litigation control group and [who] were involved in communications necessary to support the provision of legal advice to" a corporate party. *Jorjani v. N.J. Inst. Of Tech.*, Civil Action No. 18-11693 (WJM), 2021 U.S. Dist. LEXIS 4583, at *18 (D.N.J. Jan. 11, 2021), *affirmed in part and reversed in part on other grounds by Jorjani v. N.J. Inst. Of Tech.*, Civ. Nos. 2:18-cv-11693; 2:20-cv-1422, 2021 U.S. Dist. LEXIS 102714 (D.N.J. May 26, 2021). "Nothing more is needed to sustain the privilege. The privilege protects communications within an entity . . . when the recipient 'needs to know' or has information necessary to assist the lawyer." *Id.* (citing *Margulis*, 2017 U.S. Dist. LEXIS 28311, at *8). "There is no requirement that the communication involve only 'legal issues,' and factual communications made for the purpose of facilitating legal representation are also protected." *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007).

The presence of non-lawyers on an email does not destroy the email's privilege. *Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *3 (noting that even communications between only non-lawyers can be privileged if the communications reflect legal advice or matters about which the client intends to seek legal advice). Attorney-client privilege attaches to communications between privileged persons. *Id.* at *2 (citing *Teleglobe Communications Corp.*, 493 F.3d 345,

8

359 (3d Cir. 2007)). "'"Privileged persons" include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation.'" *Id.* (quoting *Teleglobe*, 493 F.3d at 359). "[T]he general view is that 'sharing documents amongst corporate employees does not necessarily vitiate a privilege; [rather,] communications remain privileged if they assist the attorney to formulate and render legal advice.'" *Margulis*, 2017 U.S. Dist. LEXIS 28311, at *21 (quoting *In re Riddell Concussion Reduction Litig.*, 2016 U.S. Dist. LEXIS 168457, at *12).

Nor does sending a copy of an otherwise unprivileged email to an attorney eliminate attorney-client privilege. This Court has recognized that "'non-privileged information . . . communicated to an attorney may be privileged, even if the underlying information remains unprotected.'" *Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *2 (quoting *Muro*, 250 F.R.D. at 363). While merely copying an attorney on an email does not trigger attorney-client privilege, *In re Riddell Concussion Reduction Litig.*, 2016 U.S. Dist. LEXIS 168457, at *7, an email forwarded to [counsel] may also be privileged even if it does not expressly request legal advice," *Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *2. Likewise, the attorney-client privilege protects "prior conversations or documents that are quoted verbatim in a letter to a party's attorney." *Muro*, 250 F.R.D. at 363.

"A party can therefore legitimately withhold an entire e-mail forwarding prior materials to counsel, while also disclosing those prior materials themselves." *Id.*

These principles reflect the long-standing purpose of the attorney-client privilege. That "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *2 (recognizing the attorney-client "privilege encourages the client to reveal to the lawyer confidences necessary for the lawyer to provide advice and representation").

**C. The Special Master Correctly Ruled the Communications Are Privileged**

The email chain at TEVA-MDL2875-00650876 to TEVA-MDL2875-00650880 includes an email on September 18, 2018 from inhouse counsel Kristen Bauer.[2] She forwarded three emails regarding ZHP's notice with the express purpose of developing a strategy for communicating with regulators about the issue in the

---

[2] While Plaintiffs, for the first time, raise the issue regarding inhouse counsel Gallagher's signature block falling below inhouse counsel Bauer's forwarding email, one can easily deduce that counsel Bauer deleted the content of Ms. Gallagher's forwarding email (from one inhouse counsel to another) but failed to omit Ms. Gallagher's signature block. Regardless, it is irrelevant to the issue at hand and should not be injected to unfairly imply wrongdoing.

10

report. (ECF No. 1314, Ex. A). In addition, the forwarded emails themselves were sent to counsel Rachel Gallagher for the obvious purpose of formulating an action plan in the face of anticipated litigation and regulatory activity. The overall tenor and context, in the midst of an evolving investigation, makes clear the emails easily fall within the scope of the privilege. As the caselaw shows, that factual information was being conveyed and forwarded is of no consequence if the conveyance was for the purpose of facilitating legal advice and strategy. Which facts or documents a client determines to be pertinent enough to share with counsel goes to the heart of the attorney-client relationship, and requiring a client to divulge such information would erode the privilege and ignore the policy behind it.

The three emails at issue, directed to counsel Gallagher, among other Teva employees, include: (1) a September 17, 2018 Email from Mr. Nassall, (2) a September 17, 2018 email from Ms. Lyons, and (3) a September 18, 2018 email from Mr. Nassall. As set forth below, attorney-client privilege attaches to each of these three emails.

1. **September 17, 2018 Email from Mr. Nassall**

In this email, Mr. Nassall forwarded the notice he received from ZHP, the API supply source outside Teva described above. The notice concerned a newly discovered nitrosamine issue. Mr. Nassall forwarded the report to inhouse counsel Gallagher and other Teva employees who had been assessing the nitrosamine issue

and formulating Teva's response. The email to counsel and others sought advice and solicited questions in order to assist in the formulation of Teva's legal and regulatory strategy in the midst of an ongoing recall and impending litigation. Given Ms. Gallagher's role as a lawyer, her representation of Teva in anticipation of related litigation and regulatory recalls and investigations, and the context of the email, Mr. Nassall's email falls within the scope of attorney-client privilege. *Id.* at *2.

Contrary to Plaintiffs' contention, the email concerned matters about which Teva intended to seek legal advice. *See Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *3. To the extent Mr. Nassall sought additional facts or information, he did so as part of a team developing information necessary for inhouse counsel to identify a legal strategy in response to anticipated inquiries from regulatory authorities. Moreover, the communication need not include "only 'legal issues'" to receive protection under the attorney-client privilege. *Muro*, 250 F.R.D. at 363. The privilege also attaches, whereas here, the communications involve the development of facts "for the purpose of facilitating legal representation." *Id.*

Plaintiffs also fail to acknowledge that the inclusion of non-attorneys on the email does not eliminate the attorney-client privilege. *Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *3. The test is not whether all of the recipients are lawyers, but whether "the recipient[s] 'need[] to know' or ha[ve] information necessary to assist the lawyer." *Jorjani*, 2021 U.S. Dist. LEXIS 4583,

at *18. Here, the recipients included those individuals who needed to know about the report to identify information necessary to assist inhouse counsel with formulating a response to anticipated litigation or regulatory inquiries.

Accordingly, Mr. Nassall's September 17, 2018 email satisfies the requirements to be protected by the attorney-client privilege.

### 2. September 17, 2018 Email from Ms. Lyons

Ms. Lyons responded to Mr. Nassall's September 17, 2018 email by identifying additional information that inhouse counsel and the recipient Teva employees needed to know about the nitrosamine issue to develop a strategy to respond to regulators and defend against anticipated litigation. As with Mr. Nassall's September 17, 2018 email, the context of Ms. Lyons' email shows that it concerned matters about which Teva intended to seek legal advice. *Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *3.

Plaintiffs rely on Ms. Lyons' deposition testimony to argue that attorney-client privilege does not attach to her September 17, 2018 email. But Plaintiffs mischaracterize Ms. Lyons' deposition testimony, excerpted in Exhibit B to Plaintiffs' Motion for Reconsideration. The testimony in Exhibit B concerned a September *19*, 2018 email sent to Ms. Lyons and a September *19*, 2018 email sent by Ms. Lyons. Exhibit B does not reflect a discussion of Ms. Lyons' September *17*, 2018 email—the email at issue in Plaintiffs' Motion for Reconsideration. (ECF No.

1314, Ex. B (showing page 170 and 173 of deposition transcript where opposing counsel asked Ms. Lyons about the two September 19, 2018 emails)). The two September 19, 2018 emails and the September 17, 2018 email were also sent to different Teva employees. Ms. Lyons' September 19, 2018 emails did not include inhouse counsel. (ECF No. 1314, Ex. A (comparing TEVA-MDL2875-00650876 with TEVA-MDL2875-00650879)). At her deposition, Ms. Lyons discussed sharing information she received with Teva employees at alignment meetings but did not discuss her input on information that inhouse counsel needed to obtain, which was the subject of her September 17, 2018 email. (ECF No. 1314, Ex. B). Thus, contrary to Plaintiffs' claim, Ms. Lyons did not share her September 17, 2018 email with employees who did not need access to the communication.

Teva is not asking to claw back Ms. Lyons' September 19, 2018 emails. Ms. Lyons' deposition testimony about those two emails has no bearing on the privileged contents of her September 17, 2018 email, which formed part of a separate conversation with inhouse counsel and individuals at Teva critical for shaping Teva's legal strategy with regulators and for anticipated litigation. Thus, Plaintiffs have failed to demonstrate any basis for reversing the Special Master's ruling permitting Teva to claw back Ms. Lyons' September 17, 2018 email.[3]

---

[3] To the extent that Plaintiffs, now for the first time, intend to argue about the timeliness of Teva's clawback of the document, Teva's clawback notice was provided within ten days after discovery of the inadvertent production at Ms. Lyons' deposition, as required by the Protective Order.

14

### 3. September 18, 2018 Email from Mr. Nassall

Mr. Nassall's September 18, 2018 email also warrants protection under the attorney-client privilege. As with the other two emails, the context of the email chain shows that Mr. Nassall shared information from ZHP with inhouse counsel and other Teva employees to develop a legal strategy for regulators and related anticipated litigation. That Mr. Nassall copied verbatim an email from ZHP makes no difference in the analysis of attorney-client privilege. Sending a copy of an otherwise unprivileged email to an attorney does not eliminate the privilege. *See Muro*, 250 F.R.D. at 363. This Court has recognized that "'non-privileged information . . . communicated to an attorney may be privileged, even if the underlying information remains unprotected." *Engage Healthcare Commc'ns, LLC*, 2017 WL 10259770, at *3 (quoting *Muro*, 250 F.R.D. at 363). Here, because Mr. Nassall provided information from ZHP to inhouse counsel to assist with Teva's need for legal advice in response to the issue raised by ZHP, the email is privileged.

Moreover, Plaintiffs were provided a non-privileged version of the underlying ZHP email notice more than six months ago and yet have failed to ask any single Teva witness about it to date. Teva produced a copy of the underlying ZHP email at TEVA-MDL2875-00120433 on November 2, 2020. Teva also produced another email from Mr. Nassall that copied the text of the underlying email at TEVA-MDL2875-00682375. Plaintiffs have no need for the privileged communication with

15

inhouse counsel, and they are free to use the nonprivileged underlying email during Mr. Nassall's deposition. But Teva's efforts to obtain legal advice related to that underlying communication would be qualitatively different and would pierce the longstanding protection for attorney-client communications.

Thus, Mr. Nassall's September 18, 2018 email also qualifies for protection under the attorney-client privilege.

## III.   CONCLUSION

Plaintiffs have failed to establish, under the applicable reconsideration standard, any basis for this Court's reversal of the Special Master's well-reasoned decision. Accordingly, the Court should affirm the Special Master's prior ruling permitting Teva to claw back and redact the four emails in the email chain inadvertently produced at TEVA-MDL2875-00650876 to TEVA-MDL2875-00650880 and order Plaintiffs to immediately destroy all unredacted copies of the document.

Dated: June 22, 2021                                    Respectfully submitted,


By: */s/ Victoria D. Lockard*
Victoria D. Lockard, Esq.
*Counsel for Defendants*

GREENBERG TRAURIG, LLP
Lori G. Cohen, *Lead Counsel for Defendants*

Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE,
Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

Gregory E. Ostfeld
77 West Wacker Drive,
Suite 3100
Chicago, Illinois 60601
Tel: (312) 476-5056
ostfeldg@gtlaw.com

Brian H. Rubenstein
1717 Arch Street
Suite 400
Philadelphia, Pennsylvania
Tel: (215) 988-7864
Fax: (214) 689-4419
rubensteinb@gtlaw.com

Liza M. Walsh
Christine I. Gannon
William T. Walsh, Jr.
WALSH PIZZI O'REILLY
FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor

*Attorneys for Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and Actavis Pharma, Inc.*