**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION          19-md-02875-RBK-KMW

_____          MOTION FOR RECONSIDERATION
VIA REMOTE ZOOM
VIDEOCONFERENCE

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        June 23, 2021
        Commencing at 1:00 P.M.

**B E F O R E:**               SPECIAL MASTER THE HONORABLE
                               THOMAS I. VANASKIE

**A P P E A R A N C E S:**

        KANNER & WHITELEY, LLC
        BY:  DAVID J. STANOCH, ESQUIRE
        701 Camp Street
        New Orleans, Louisiana  70130
        For the Plaintiffs

        GREENBERG TRAURIG LLP
        BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
        3333 Piedmont Road, NE, Suite 2500
        Atlanta, Georgia  30305
        For the Defendants, Teva Pharmaceutical Industries Ltd.,
        Teva Pharmaceuticals USA, Inc., Actavis LLC,
        and Actavis Pharma, Inc.

**ALSO PRESENT:**

        LORETTA SMITH, ESQUIRE
        Judicial Law Clerk to The Honorable Robert B. Kugler
        LARRY MACSTRAVIC, COURTROOM DEPUTY

            Camille Pedano, Official Court Reporter
                   camillepedano@gmail.com
                      609-774-1494

    Proceedings recorded by mechanical stenography; transcript
         produced by computer-aided transcription.

1    (PROCEEDINGS held remotely via Zoom videoconference before

2    Special Master The Honorable Thomas I. Vanaskie at 1:28 P.M.)

3            JUDGE VANASKIE:  All right.  I'll call this proceeding

4    to order.  Apologies for the delay in starting this afternoon

5    but our court reporter was in court and had to complete that

6    proceeding, obviously, before beginning this one.  But we're

7    now ready to proceed.

8            It is a motion, I take it, to reconsider; although

9    it's presented pursuant to provisions of the confidentiality

10   order in this matter, Document Number 139, Paragraph 21 of that

11   order.

12           Mr. Stanoch, will you be arguing on behalf of the

13   plaintiffs?

14           MR. STANOCH:  Yes, Your Honor.  Good afternoon.

15           JUDGE VANASKIE:  Good afternoon.

16           So the first question I have for you, Mr. Stanoch,

17   maybe the only question but certainly the first question I have

18   is, should I be looking at this under the standard of review

19   applicable to reconsideration motions?

20           MR. STANOCH:  Excellent question, Your Honor, and I

21   believe the answer emphatically is no.

22           As Your Honor intimated already, we did exactly what

23   the discovery confidentiality order, the order that these

24   defendants wanted and that Judge Kugler entered, requires.  We

25   first brought the intention informally to Your Honor and then

1   Paragraph 21 of the discovery confidentiality order clearly

2   provides that either party may petition by formal motion

3   thereafter, and that is what we did.

4           JUDGE VANASKIE:  All right.

5           MR. STANOCH:  Your Honor will recall, we never briefed

6   this issue in the CMC letter, we weren't asked to brief it in

7   the CMC letter, I believe we weren't even able to discuss the

8   actual contents of the emails at issue on the record at the

9   last CMC, so we disagree, obviously, that the reconsideration

10  standard applies.

11          JUDGE VANASKIE:  All right.  Ms. Lockard, are you

12  arguing for Teva on this matter?

13          MS. LOCKARD:  Yes, Your Honor, I'll be arguing for

14  Teva.

15          JUDGE VANASKIE:  Do you want to respond to that

16  question, and then we will go back to Mr. Stanoch.

17          MS. LOCKARD:  Yes, absolutely, Judge.

18          You know, first and foremost, the motion itself is

19  titled Plaintiffs' Motion and Memorandum of Law in support of

20  their Motion for Reconsideration of the Court's Guidance on

21  Privilege Log.  And so it is plainly entitled as a Motion for

22  Reconsideration.

23          The protective order itself was not -- did not state

24  under what standard these motions should be brought.  The

25  protective order itself is not just something the defendants

1  requested or drafted out of whole cloth.  That was a joint

2  proposal to the Court and, in fact, it was based off of, and

3  Judge Kugler -- or Judge Schneider, rather, required that it be

4  based off of the order that these plaintiffs' counsel used in

5  the *Benicar* litigation.  So I want to dispel any notion that

6  this was our language or our proposal.

7        That said, I think it's fair, in the protective order,

8  that motions may be filed to reconsider determinations made by

9  the Court.  You know, at the time when the protective order was

10  entered, we obviously didn't have a Special Master and we had

11  the Magistrate Judge Schneider who was making these rulings.

12  And so I do believe, you know, if this had been brought last

13  year before Judge Schneider, you know, it certainly would have

14  been treated as a Motion for Reconsideration of the

15  Magistrate's ruling.

16        So the fact that we have you now as a Special Master,

17  and we're grateful that you were inclined to step in and help,

18  you know, I don't think that changes anything.  I don't think

19  the protective order allows just a, you know, de novo review of

20  the Special Master or Magistrate's rulings on discovery issues.

21  That is not an efficient management of the case.  I don't think

22  that that was ever intended by Judge Kugler or anyone in this

23  case.  You were entrusted and brought in and no one, to my

24  knowledge, objected to have you review these discovery issues

25  and, in your wisdom and experience, make the right decisions.

1    If a party disagrees with it, then certainly I think the

2    protective order allows a party to bring a Motion for

3    Reconsideration, but I don't believe that it allows us to

4    re-litigate and rehash a decision that we disagree with.  I

5    don't think that would be in the interest of the litigation.

6          So not only is it labeled Reconsideration, it is, in

7    fact, a motion asking Your Honor to reconsider your prior

8    ruling.  So that's why we do believe the standard should apply.

9    If it doesn't, I see nothing else in plaintiffs' papers that

10   some other standard should apply here.

11         JUDGE VANASKIE:  All right.  Thank you, very much.

12         Mr. Stanoch, now, let's assume that I apply a de novo

13   standard of review here.  Why aren't these communications that

14   were sent to Rachel Gallagher protected?

15         MR. STANOCH:  Thank you, Your Honor.

16         Teva does not dispute in their papers that they have

17   the burden of establishing the privilege, and I think we can

18   all agree to that; it's their burden under the law here to

19   establish that.  And while they sprinkle phrases about

20   reasonably anticipated litigation throughout their filing, Your

21   Honor, they only specifically claim attorney-client privilege

22   as to these three particular email communications.  So that's

23   our focus, Your Honor.

24         And if we look at these three communications, Your

25   Honor, and I know you have looked at them, there's no legal

1  advice being rendered, there's no legal advice being requested,

2  and it's purely factual.

3       Stepping back, also, Your Honor, in terms of Teva's

4  burden, they make some broad statements about that this is

5  about legal and regulatory responses and issues.  There's no

6  reference to that in these three emails.  They don't even tell

7  Your Honor in their papers who all these people are in these

8  emails.

9       Yes, Ms. Gallagher, we know, is an inhouse attorney.

10  Mr. Nassall is in procurement.  None of these other people are

11  lawyers or dealing with, quote, legal or anticipated litigation

12  or regulatory response issues.  They haven't provided

13  declarations, they haven't provided affidavits or, frankly, any

14  other explanation besides cursory lawyer argument about how

15  this relates to the rendering or request for legal advice.

16       And if we just simply look chronologically, Your

17  Honor, everything in Mr. Nassall's emails and Ms. Lyons'

18  emails, only three emails at issue in this chain, right,

19  everything -- everything is factual.

20       Mr. Nassall initially writes, in his first message of

21  September 17th at 6:07, it says, see below.  Let me know if you

22  have any questions -- I'm paraphrasing, of course.  Your Honor

23  can read it fully, it's short.  It says, let me know if you

24  have any questions, factual questions, for ZHP.  That's all he

25  says.  He doesn't mention anticipated litigation, he doesn't

1  mention a request for legal advice, he doesn't mention pending

2  regulatory responses, none of which they show Mr. Nassall was

3  involved in.  That's all he says.

4      Then Ms. Lyons writes back, again, factual questions,

5  basic questions that should be asked of the third party, facts.

6  She says, how many batches have the NDEA, which is a critical

7  issue in this case, Your Honor.  How many of those batches have

8  NDEA, at what levels?  What are they going to do about it?  Are

9  they going to test other sartans?  And then -- and there's --

10  again, there's nothing about rendering of legal advice or

11  asking legal advice or how this impacts any regulatory response

12  to any regulatory agency whatsoever.

13      And then Mr. Nassall replies again, he simply says,

14  here's what ZHP said and pastes the ZHP email.

15      At that point, Your Honor, I think it's interesting to

16  note, the email seam breaks, right?  It looks as if Rachel

17  Gallagher forwarded the chain to Kristen Bauer, and all of the

18  people who were on the chain below, Mr. Nassall, Claire Lyons,

19  Corey Sawyer, Edith Koller-Dette, D-E-T-T-E, and the others,

20  they are all removed on Ms. Bauer's email message, if you

21  notice.

22      So the idea that Ms. Gallagher was potentially

23  rendering legal advice to Mr. Nassall or Ms. Lyons, it's belied

24  by the facts of the email itself.  She never responded, she

25  never asked Ms. Bauer to respond to those people.  In fact, Ms.

1  Bauer then copied a whole new slew of people talking about a

2  completely different issue regarding Russia.

3       So we think, Your Honor, that on its face, these

4  emails are not privileged, it's about factual contents, there's

5  no requests or provision of legal advice, and they're simply

6  facts and that there's nothing there for these particular

7  emails which warrant redaction.

8       JUDGE VANASKIE:  Mr. Stanoch, could you not infer from

9  the Jens, maybe it's Jens, Nassall September 17, 2018, email at

10  7:06 when he says any specific questions we should ask, as a

11  request towards -- a request directed to Rachel Gallagher for

12  her input, her advice, from a legal standpoint, in terms of

13  what questions to ask?

14       MR. STANOCH:  I don't think so, Your Honor, for -- I

15  say that for a couple reasons.  Number one is, Ms. Gallagher

16  never responded.  So to the extent we can infer this, the fact

17  that she never responded herself in this chain suggests she

18  had -- she was not being -- she did not think she was being

19  asked to provide it nor did she volunteer any legal advice.

20       Also, Mr. Nassall, as a procurement person, is asking

21  his colleagues specific questions to ask ZHP.  He's not saying,

22  how will this affect our regulatory responses or our grand

23  litigation strategy globally throughout the world, which is

24  what Teva says in their brief these emails are privileged for.

25  None of that's there.  It's simply the simple matter of fact

1  nonprivileged procurement to the other procurement and quality

2  people at Teva where he's saying, just found out about this,

3  what should we ask ZHP.

4          JUDGE VANASKIE:  All right.  Thank you.

5          Ms. Lockard?

6          MS. LOCKARD:  Yes, Your Honor.

7          So, you know, as the law makes clear, the fact that

8  factual information is being conveyed does not take the

9  communication outside of the realm of the privilege.  It also

10  does not require that there be an express request in the

11  communication for, quote, legal advice or discussing

12  specifically litigation matters.  And, you know, as you have

13  referenced, the tone and the tenor and the context of these

14  communications is all equally as important as what it actually

15  said in the body of the email.

16          So from our perspective, looking at this as a whole,

17  it is very obvious the reason that Ms. Gallagher was copied on

18  these emails -- or, rather, not copied but she was a direct

19  recipient.  At this point in time there was an ongoing

20  regulatory recall and investigation, there was litigation that

21  was brewing, plaintiff lawyer advertising had already started

22  by this point, and, you know, very candidly, there were --

23  there were -- there were committees and activities going on at

24  Teva during this time in response to this issue.  It was

25  obvious that litigation was to follow and that legal counsel

1   was involved.  And Ms. Gallagher was and is, to this day, still

2   very much involved in this litigation as the lead lawyer and

3   who's assisting Teva from the inhouse side of this.  She was

4   involved in many of the strategic decisions with respect to,

5   you know, marshalling the evidence, the information that was

6   coming in, you know, responding to regulatory inquiries and

7   things of that nature.

8        So, you know, plaintiffs' counsel also says, you know,

9   well, Ms. Gallagher never responded to this request.  We don't

10   know that.  There were meetings, there were phone calls

11   happening daily on this issue during this time period.  There

12   were other emails that are privileged that came from Ms.

13   Gallagher.  Ms. Gallagher, obviously, as counsel, she's not a

14   custodian, we don't know all of the emails she sent on this.

15   So I don't think you could conclude from this email chain that

16   she never responded or answered Mr. Nassall's question about

17   how to respond.  So I think we need to look at what we have

18   here on the face of it.

19        You know, the other issue was, Mr. Stanoch takes issue

20   that, you know, there's a missing email somewhere in the chain

21   apparently from Ms. Gallagher.  It is obvious Ms. Gallagher

22   forwarded this information on to Kristen Bauer, the other

23   inhouse counsel.  Plaintiffs don't take issue with us redacting

24   or clawing back Ms. Bauer's email.  And we haven't attempted to

25   clawback or redact anything following Ms. Bauer's email in the

1    chronological time period.

2          So the fact that Ms. Bauer took the email and sent it

3    to a new group of people, I don't know what relevance that has

4    at this point other than, you know, those emails themselves

5    we're not attempting to clawback.

6          But if you look at the information, the factual

7    information itself, I mean, plaintiffs' counsel says they need

8    the information for purposes of a defense, but the actual

9    factual information has been produced in nonprivileged

10   documents, the actual email that Mr. Nassall cut and paste

11   verbatim into this email stream was produced separately in

12   unredacted form.  So plaintiffs' counsel has had that since

13   late last year, you know, they're able to use that, ask Mr.

14   Nassall about it, so I don't see what that adds to their

15   defense or why it is they would need the privileged documents.

16         So I think Your Honor made the right decision.  You've

17   obviously reviewed these carefully, taking into account the law

18   that we've cited which requires to look past the words and the

19   express language in the email but to focus really on the

20   context and the tone and the tenor, and what was happening

21   during this time period I think is important and, for us, makes

22   these easily privileged documents that should remain so.

23         JUDGE VANASKIE:  All right.  Let me ask you a question

24   now, Ms. Lockard.

25         What is there in the September 17, 2018, email at

1    10:33 from Claire Lyons to Mr. Nassall and others, including

2    Rachel Gallagher, that would suggest that Rachel Gallagher was

3    being approached or the email was -- she was copied on the

4    email for the purposes of providing legal advice?  If you'll

5    look at that email.  I'm having trouble on that one.

6           MS. LOCKARD:  Sure.  And so this email itself, it does

7    include questions that Ms. Lyons is seeking to answer.  Ms.

8    Lyons was heavily involved in communicating with FDA and our

9    regulatory department at Teva to determine the extent of the

10   investigation, what needed to be investigated, what needed to

11   be recorded, and she was including Ms. Gallagher on this

12   because this is information that Ms. Gallagher needs -- factual

13   information that Ms. Gallagher needed to gather as well in

14   order to be able to properly advise the company with respect to

15   its regulatory obligations, its retention issues, you know, its

16   investigation.  And so, you know, just even the information

17   that a client determines is important to be conveyed to the

18   lawyer, that in and of itself is protected.  You know, what a

19   client is thinking is important enough to be conveyed to the

20   lawyer so that the lawyer can render decisions, render advice,

21   you know, that in and of itself should be protected, Your

22   Honor.

23          So if I have a client who sends me factual

24   information, you know, what they send to me, when they send it

25   to me, how they send it to me, that should all be protected.

1  You know, otherwise, my -- you know, my file that included

2  information that the client sent me forwarding information,

3  forwarding documents, that would all fall outside of the

4  privilege and we know that's not the case.

5       So we think it's very important to see that this

6  potentially, you know, could erode the attorney-client

7  privilege if we are saying that, you know, information that is

8  just factual or that's informational gathering in nature is

9  somehow not protected.  What is sent to the lawyer, what the

10 lawyer has -- I mean, this reflects what the lawyer has said is

11 important for her to understand and to know.  So, I mean, I

12 think that there is no question that when you send information

13 of this nature to the lawyer, you know, it should be protected.

14      There are similar emails throughout the hundreds of

15 thousands of documents that lawyers were not involved, not --

16 not included on the email discussions, those have all been

17 produced.  We don't have an issue with that.  But when you

18 bring in a lawyer, she is part of the information gathering,

19 she's helping to instruct what needs to be gathered or what

20 needs to be rendered important, what's important, what needs to

21 be reported, you know, all of this falls into that entire

22 process and the process itself is also privileged as well as

23 the words on the paper.

24      THE COURT:  All right.  Mr. Stanoch?

25      MR. STANOCH:  Thank you.

1          JUDGE VANASKIE:  I have a question for Mr. Stanoch.

2          One of the points made in Teva's responsive brief is

3   that, for example, the communication from ZHP, I think it's

4   from ZHP, of the fact of the contamination has been produced,

5   the one that Mr. Nassall forwarded on to others, so you have

6   that information, correct?

7          MR. STANOCH:  Yes, Your Honor, we do have a separate

8   email from ZHP to Mr. Nassall, that's correct.

9          JUDGE VANASKIE:  Okay.

10         MR. STANOCH:  I would say on that, in that context,

11  Your Honor, if I may, that does not -- whether a different

12  document might be privileged is not a good assessment of

13  whether the particular emails we're looking at here are

14  privileged.  Who within Teva knew what, factually, knew what,

15  when, from whom, by whom, those are facts, not privileged

16  information, that we're entitled to know.

17         If Mr. Nassall forwarded the fact of the contents

18  verbatim of a ZHP, third-party, message to particular

19  nonlawyers, such as Ms. Lyons and a number of other procurement

20  and other folks at Teva, we're entitled to know that they knew

21  that because this is -- there's a lot of claims in this case,

22  Your Honor, about who within Teva knew what, when, and about

23  the NDEA.  And it's more than just Jens Nassall who got an

24  email from ZHP on a certain day.  We're entitled to know that

25  that same information was pasted in the emails to Ms. Lyons, to

```
 1   Mr. Fluke in procurement, and to a number of others.

 2           JUDGE VANASKIE:  Okay.  Anything else, Ms. Lockard?

 3           MS. LOCKARD:  Well, Your Honor, you know, Claire Lyons

 4   has been deposed, Corey -- or Jens Nassall is being deposed,

 5   we're not trying to prevent any information about when these

 6   individuals knew certain factual events.  You know, I think a

 7   review of the documents we've produced carefully lays that out

 8   without getting into the privileged materials.  The depositions

 9   themselves, counsel's entitled to ask Mr. Nassall when he knew

10   of the facts, you know, present; when he -- you know, who did

11   he report this to, who else at Teva knew this.  I mean, I think

12   that's all fair game in a deposition.  There will be no

13   prevention of getting into that type of information, but they

14   can't bring up a privileged document and put that in his face

15   in a deposition in order to establish it.

16           You know, if we need -- there was reference to an

17   affidavit.  We're officers of the court.  You know, this is an

18   expedited ruling.  We didn't provide affidavits but we're happy

19   to do so if that would assist the Court.  I don't think it's

20   necessary but if there's any unresolved question about the

21   intent behind these or Ms. Gallagher's communications, we're

22   happy to provide an affidavit to fill in any gaps.

23           JUDGE VANASKIE:  All right.  Mr. Stanoch, anything

24   else?

25           MR. STANOCH:  Yes, Your Honor, just very briefly in
```

1    response to Ms. Lockard's opening position, because I just

2    jumped to the ZHP email that was pasted by Mr. Nassall.

3          A lot of what Ms. Lockard said in her initial

4    statement to the Court, none of this is in the four corners of

5    the documents, Your Honor.  Nothing here is about marshalling

6    information for regulatory global responses and pending

7    litigation.  She mentions daily phone calls and references to

8    various regulatory responses, none of that's here; or

9    instructions or seeking instructions from Ms. Gallagher,

10   there's no instructions sought here.  No one said, Ms.

11   Gallagher, what do you think we should ask ZHP.  In fact,

12   Claire Lyons didn't even say, what do all of you think we

13   should ask ZHP.  She says, here's the questions we should ask

14   ZHP.  That's it.  So whether there is some atmospherics about

15   what's going on potentially in the world, we have to focus on

16   the context of these emails and this document and the assertion

17   of privilege as to these documents; and these documents, these

18   emails, don't satisfy the privilege standard.

19          JUDGE VANASKIE:  All right.  Thank you, very much.

20          I'm going to give you a ruling now on the Motion for

21   Reconsideration.

22          First, I think it is appropriate to apply a de novo

23   standard of review here and not the deferential standard that

24   applies in reconsideration motions.

25          The initial decision I made was based upon what had

 1   been presented to me at the time, which wasn't necessarily

 2   complete and wasn't fully briefed, but applying a de novo

 3   standard, I believe that the email, initial email from Mr.

 4   Nassall that copied Ms. Gallagher, implicit in the fact that he

 5   copied her on that email is getting her input from a legal

 6   standpoint, her legal advice in terms of what should be done

 7   with respect to this matter.  This isn't, in my judgment, a

 8   situation where business communications are funneled to an

 9   attorney -- I know that's a term that Professor Paul Rice has

10   used in this context -- funneled to counsel in order to

11   fabricate this protection.  This is a reaction to information

12   that is significant and it would be appropriate to copy counsel

13   on that for the purpose of seeking counsel's legal advice with

14   respect to this revelation of the contamination of the product.

15   So that initial email I believe is protected by the

16   attorney-client privilege.

17          The next email in the chain is the one from Claire

18   Lyons to Mr. Nassall and others, including Rachel Gallagher,

19   where Claire Lyons asks several questions.  Again, I think that

20   Ms. Gallagher was included for purposes of getting her reaction

21   to this list of questions from a legal perspective.  Is it

22   complete?  Are there other questions that needed to be asked?

23   Is this the -- what should we do with this information?  I

24   think Ms. Gallagher has been included in this particular email

25   for purposes of securing advice or input of a legal nature.

1          And the final email, the one from Mr. Nassall on

2   September 18th, I think falls within the same category.  Ms.

3   Gallagher has been included in that email chain.  I think the

4   context of all of this is her role as part of this team and I

5   think you can infer as part of this control group, for purposes

6   of the attorney-client privilege, was to provide legal advice.

7          And so I believe that all three emails were

8   appropriately claimed to be covered by the attorney-client

9   privilege.  Teva is entitled to clawback these three emails and

10  you should follow the provisions of the protective order with

11  respect to the mechanics of the clawback; for example, the need

12  to destroy copies of the emails.

13         So I am denying the motion.  It's labeled as a Motion

14  for Reconsideration.  I've applied a de novo standard of review

15  but I believe the motion should be denied.  All right.

16         Anything else?

17         MR. STANOCH:  No, Your Honor.

18         MS. LOCKARD:  No, Your Honor.

19         JUDGE VANASKIE:  All right.  Thank you all very

20  much.

21         MR. STANOCH:  Thank you.

22         MS. LOCKARD:  Thank you, Judge.

23         JUDGE VANASKIE:  See you tomorrow.

24         MS. LOCKARD:  Friday.

25         JUDGE VANASKIE:  Friday.

1            MS. LOCKARD:  See you Friday.

2            (The proceedings concluded at 1:55 p.m.)

3            -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

4            I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    */S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR*
     *Court Reporter/Transcriber*

8

9    *June 24, 2021*
           *Date*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

/S [1] - 19:7

## 0

08101 [1] - 1:8

## 1

10:33 [1] - 12:1
139 [1] - 2:10
17 [2] - 8:9, 11:25
17th [1] - 6:21
18th [1] - 18:2
19-md-02875-RBK-
KMW [1] - 1:4
1:00 [1] - 1:9
1:28 [1] - 2:2
1:55 [1] - 19:2

## 2

2018 [2] - 8:9, 11:25
2021 [2] - 1:9, 19:9
21 [2] - 2:10, 3:1
23 [1] - 1:9
24 [1] - 19:9
2500 [1] - 1:17

## 3

30305 [1] - 1:17
3333 [1] - 1:17

## 4

4th [1] - 1:8

## 6

609-774-1494 [1] -
1:24
6:07 [1] - 6:21

## 7

701 [1] - 1:14
70130 [1] - 1:14
7:06 [1] - 8:10

## A

able [3] - 3:7, 11:13,
12:14
above-entitled [1] -
19:5
absolutely [1] - 3:17
account [1] - 11:17
Actavis [2] - 1:18,
1:19
ACTION [1] - 1:3
activities [1] - 9:23
actual [3] - 3:8, 11:8,

11:10
adds [1] - 11:14
advertising [1] - 9:21
advice [17] - 6:1, 6:15,
7:1, 7:10, 7:11, 7:23,
8:5, 8:12, 8:19, 9:11,
12:4, 12:20, 17:6,
17:13, 17:25, 18:6
advise [1] - 12:14
affect [1] - 8:22
affidavit [1] - 15:17,
15:22
affidavits [2] - 6:13,
15:18
afternoon [3] - 2:4,
2:14, 2:15
agency [1] - 7:12
agree [1] - 5:18
aided [1] - 1:25
allows [3] - 4:19, 5:2,
5:3
ALSO [1] - 1:20
answer [2] - 2:21, 12:7
answered [1] - 10:16
anticipated [3] - 5:20,
6:11, 6:25
apologies [1] - 2:4
applicable [1] - 2:19
applied [1] - 18:14
applies [2] - 3:10,
16:24
apply [4] - 5:8, 5:10,
5:12, 16:22
applying [1] - 17:2
approached [1] - 12:3
appropriate [2] -
16:22, 17:12
appropriately [1] -
18:8
arguing [3] - 2:12,
3:12, 3:13
argument [1] - 6:14
assertion [1] - 16:16
assessment [1] -
14:12
assist [1] - 15:19
assisting [1] - 10:3
assume [1] - 5:12
Atlanta [1] - 1:17
atmospherics [1] -
16:14
attempted [1] - 10:24
attempting [1] - 11:5
attorney [7] - 5:21,
6:9, 13:6, 17:9,
17:16, 18:6, 18:8
attorney-client [5] -
5:21, 13:6, 17:16,
18:6, 8:8

## B

based [3] - 4:2, 4:4,
16:25
basic [1] - 7:5
batches [2] - 7:6, 7:7
Bauer [5] - 7:17, 7:25,
8:1, 10:22, 11:2
Bauer's [3] - 7:20,
10:24, 10:25
beginning [1] - 2:6
behalf [1] - 2:12
behind [1] - 15:21
belied [2] - 6:21, 7:18
below [2] - 6:21, 7:18
Benicar [1] - 4:5
body [1] - 9:15
breaks [1] - 7:16
brewing [1] - 9:21
brief [3] - 3:6, 8:24,
14:2
briefed [2] - 3:5, 17:2
briefly [1] - 15:25
bring [3] - 5:2, 13:18,
15:14
broad [1] - 6:4
brought [4] - 2:25,
3:24, 4:12, 4:23
Building [1] - 1:7
burden [3] - 5:17,
5:18, 6:4
business [1] - 17:8
BY [2] - 1:13, 1:16

## C

Camden [1] - 1:8
Camille [2] - 1:23,
19:7
camillepedano@
gmail.com [1] - 1:23
Camp [1] - 1:14
candidly [1] - 9:22
carefully [2] - 11:17,
15:7
case [5] - 4:21, 4:23,
7:7, 13:4, 14:21
category [1] - 18:2
CCR [1] - 19:7
certain [2] - 14:24,
15:6
certainly [3] - 2:17,
4:13, 5:1
certify [1] - 19:4
chain [8] - 6:18, 7:17,
7:18, 8:17, 10:15,
10:20, 17:17, 18:3
changes [1] - 4:18
chronological [1] -
11:1
chronologically [1] -

6:16
cited [1] - 11:18
CIVIL [1] - 1:3
claim [1] - 5:21
claimed [1] - 18:8
claims [1] - 14:21
Claire [6] - 7:18, 12:1,
15:3, 16:12, 17:17,
17:19
clawback [4] - 10:25,
11:5, 18:9, 18:11
clawing [1] - 10:24
clear [1] - 9:7
clearly [1] - 3:1
Clerk [1] - 1:21
client [9] - 5:21, 12:17,
12:19, 12:23, 13:2,
13:6, 17:16, 18:6,
18:8
cloth [1] - 4:1
CMC [3] - 3:6, 3:7, 3:9
Cohen [1] - 1:7
colleagues [1] - 8:21
coming [1] - 10:6
Commencing [1] - 1:9
committees [1] - 9:23
communicating [1] -
12:8
communication [3] -
9:9, 9:11, 14:3
communications [6] -
5:13, 5:22, 5:24,
9:14, 15:21, 17:8
company [1] - 12:14
complete [3] - 2:5,
17:2, 17:22
completely [1] - 8:2
computer [1] - 1:25
computer-aided [1] -
1:25
conclude [1] - 10:15
concluded [1] - 19:2
confidentiality [3] -
2:9, 2:23, 3:1
contamination [2] -
14:4, 17:14
contents [3] - 3:8, 8:4,
14:17
context [6] - 9:13,
11:20, 14:10, 16:16,
17:10, 18:4
control [1] - 18:5
conveyed [3] - 9:8,
12:17, 12:19
Cooper [1] - 1:7
copied [6] - 8:1, 9:17,
9:18, 12:3, 17:4,
17:5
copies [1] - 18:12
copy [1] - 17:12

Corey [2] - 7:19, 15:4
corners [1] - 16:4
correct [3] - 14:6,
14:8, 19:4
counsel [9] - 4:4,
9:25, 10:8, 10:13,
10:23, 11:7, 11:12,
17:10, 17:12
counsel's [2] - 15:9,
17:13
couple [1] - 8:15
course [1] - 6:22
court [3] - 2:5, 15:17
Court [6] - 1:23, 4:2,
4:9, 15:19, 16:4,
19:7
COURT [2] - 1:1,
13:24
Court's [1] - 3:20
Courthouse [1] - 1:7
COURTROOM [1] -
1:22
covered [1] - 18:8
CRC [1] - 19:7
critical [1] - 7:6
CRR [1] - 19:7
cursory [1] - 6:14
custodian [1] - 10:14
cut [1] - 11:10

## D

daily [2] - 10:11, 16:7
Date [1] - 19:9
DAVID [1] - 1:13
DAVIS [1] - 1:16
de [5] - 4:19, 5:12,
16:22, 17:2, 18:14
dealing [1] - 6:11
decision [3] - 5:4,
11:16, 16:25
decisions [3] - 4:25,
10:4, 12:20
declarations [1] - 6:13
Defendants [1] - 1:18
defendants [2] - 2:24,
3:25
defense [2] - 11:8,
11:15
deferential [1] - 16:23
delay [1] - 2:4
denied [1] - 18:15
denying [1] - 18:13
department [1] - 12:9
deposed [2] - 15:4
deposition [2] - 15:12,
15:15
depositions [1] - 15:8
DEPUTY [1] - 1:22
destroy [1] - 18:12
determinations [1] -

4:8
**determine** [1] - 12:9
**determines** [1] - 12:17
**Dette** [1] - 7:19
**DETTE** [1] - 7:19
**different** [2] - 8:2, 14:11
**direct** [1] - 9:18
**directed** [1] - 8:11
**disagree** [2] - 3:9, 5:4
**disagrees** [1] - 5:1
**discovery** [4] - 2:23, 3:1, 4:20, 4:24
**discuss** [1] - 3:7
**discussing** [1] - 9:11
**discussions** [1] - 13:16
**dispel** [1] - 4:5
**dispute** [1] - 5:16
**DISTRICT** [2] - 1:1, 1:1
**document** [3] - 14:12, 15:14, 16:16
**Document** [1] - 2:10
**documents** [9] - 11:10, 11:15, 11:22, 13:3, 13:15, 15:7, 16:5, 16:17
**done** [1] - 17:6
**drafted** [1] - 4:1
**during** [3] - 9:24, 10:11, 11:21

## E

**easily** [1] - 11:22
**Edith** [1] - 7:19
**efficient** [1] - 4:21
**either** [1] - 3:2
**email** [32] - 5:22, 7:14, 7:16, 7:20, 7:24, 8:9, 9:15, 10:15, 10:20, 10:24, 10:25, 11:2, 11:10, 11:11, 11:19, 11:25, 12:3, 12:4, 12:5, 12:6, 13:16, 14:8, 14:24, 16:2, 17:3, 17:5, 17:15, 17:17, 17:24, 18:1, 18:3
**emails** [21] - 3:8, 6:6, 6:8, 6:17, 6:18, 8:4, 8:7, 8:24, 9:18, 10:12, 10:14, 11:4, 13:14, 14:13, 14:25, 16:16, 16:18, 18:7, 18:9, 18:12
**emphatically** [1] - 2:21
**entered** [2] - 2:24, 4:10

**entire** [1] - 13:21
**entitled** [7] - 3:21, 14:16, 14:20, 14:24, 15:9, 18:9, 19:5
**entrusted** [1] - 4:23
**equally** [1] - 9:14
**erode** [1] - 13:6
**ESQUIRE** [3] - 1:13, 1:16, 1:21
**establish** [2] - 5:19, 15:15
**establishing** [1] - 5:17
**events** [1] - 15:6
**evidence** [1] - 10:5
**exactly** [1] - 2:22
**example** [2] - 14:3, 18:11
**excellent** [1] - 2:20
**expedited** [1] - 15:18
**experience** [1] - 4:25
**explanation** [1] - 6:14
**express** [2] - 9:10, 11:19
**extent** [2] - 8:16, 12:9

## F

**fabricate** [1] - 17:11
**face** [3] - 8:3, 10:18, 15:14
**fact** [12] - 4:2, 4:16, 5:7, 7:25, 8:16, 8:25, 9:7, 11:2, 14:4, 14:17, 16:11, 17:4
**facts** [5] - 7:5, 7:24, 8:6, 14:15, 15:10
**factual** [12] - 6:2, 6:19, 6:24, 7:4, 8:4, 9:8, 11:6, 11:9, 12:12, 12:23, 13:8, 15:6
**factually** [1] - 14:14
**fair** [2] - 4:7, 15:12
**fall** [1] - 13:3
**falls** [2] - 13:21, 18:2
**FDA** [1] - 12:8
**file** [1] - 13:1
**filed** [1] - 4:8
**filing** [1] - 5:20
**fill** [1] - 15:22
**final** [1] - 18:1
**first** [6] - 2:16, 2:17, 2:25, 3:18, 6:20, 16:22
**fluke** [1] - 15:1
**focus** [3] - 5:23, 11:19, 16:15
**folks** [1] - 14:20
**follow** [2] - 9:25, 18:10
**following** [1] - 10:25
**FOR** [2] - 1:1, 1:5
**foregoing** [1] - 19:4

**foremost** [1] - 3:18
**form** [1] - 11:12
**formal** [1] - 3:2
**forwarded** [4] - 7:17, 10:22, 14:5, 14:17
**forwarding** [2] - 13:2, 13:3
**four** [1] - 16:4
**frankly** [1] - 6:13
**Friday** [3] - 18:24, 18:25, 19:1
**fully** [2] - 6:23, 17:2
**funneled** [2] - 17:8, 17:10

## G

**Gallagher** [25] - 5:14, 6:9, 7:17, 7:22, 8:11, 8:15, 9:17, 10:1, 10:9, 10:13, 10:21, 12:2, 12:11, 12:12, 12:13, 16:9, 16:11, 17:4, 17:18, 17:20, 17:24, 18:3
**Gallagher's** [1] - 15:21
**game** [1] - 15:12
**gaps** [1] - 15:22
**gather** [1] - 12:13
**gathered** [1] - 13:19
**gathering** [2] - 13:8, 13:18
**Georgia** [1] - 1:17
**global** [1] - 16:6
**globally** [1] - 8:23
**grand** [1] - 8:22
**grateful** [1] - 4:17
**GREENBERG** [1] - 1:16
**group** [2] - 11:3, 18:5
**Guidance** [1] - 3:20

## H

**happy** [2] - 15:18, 15:22
**heavily** [1] - 12:8
**held** [1] - 2:1
**help** [1] - 4:17
**helping** [1] - 13:19
**herself** [1] - 8:17
**Honor** [30] - 2:14, 2:20, 2:22, 2:25, 3:5, 3:13, 5:7, 5:15, 5:21, 5:23, 5:25, 6:3, 6:7, 6:17, 6:22, 7:7, 7:15, 8:3, 8:14, 9:6, 11:16, 12:22, 14:7, 14:11, 14:22, 15:3, 15:25, 16:5, 18:17, 18:18
**Honorable** [1] - 1:21,

2:2
**HONORABLE** [1] - 1:10
**hundreds** [1] - 13:14

## I

**idea** [1] - 7:22
**impacts** [1] - 7:11
**implicit** [1] - 17:4
**important** [8] - 9:14, 11:21, 12:17, 12:19, 13:5, 13:11, 13:20
**IN** [1] - 1:4
**Inc** [2] - 1:18, 1:19
**inclined** [1] - 4:17
**include** [1] - 12:7
**included** [5] - 13:1, 13:16, 17:20, 17:24, 18:3
**including** [3] - 12:1, 12:11, 17:18
**individuals** [1] - 15:6
**Industries** [1] - 1:18
**infer** [3] - 8:8, 8:16, 18:5
**informally** [1] - 2:25
**information** [24] - 9:8, 10:5, 10:22, 11:6, 11:7, 11:8, 11:9, 12:12, 12:13, 12:16, 12:24, 13:2, 13:7, 13:12, 13:18, 14:6, 14:16, 14:25, 15:5, 15:13, 16:6, 17:11, 17:23
**informational** [1] - 13:8
**inhouse** [3] - 6:9, 10:3, 10:23
**initial** [4] - 16:3, 16:25, 17:3, 17:15
**input** [3] - 8:12, 17:5, 17:25
**inquiries** [1] - 10:6
**instruct** [1] - 13:19
**instructions** [3] - 16:9, 16:10
**intended** [1] - 4:17
**intent** [1] - 15:21
**intention** [1] - 2:25
**interest** [1] - 5:5
**interesting** [1] - 7:15
**intimated** [1] - 2:22
**investigated** [1] - 12:10
**investigation** [3] - 9:20, 12:10, 12:16
**involved** [6] - 7:3, 10:1, 10:2, 10:4, 12:8, 13:15

**issue** [11] - 3:6, 3:8, 6:18, 7:7, 8:2, 9:24, 10:11, 10:19, 10:23, 13:17
**issues** [5] - 4:20, 4:24, 6:5, 6:12, 12:15
**itself** [9] - 3:18, 3:23, 3:25, 7:24, 11:7, 12:6, 12:18, 12:21, 13:22

## J

**Jens** [4] - 8:9, 14:23, 15:4
**JERSEY** [1] - 1:1
**Jersey** [1] - 1:8
**joint** [1] - 4:1
**JUDGE** [17] - 2:3, 2:15, 3:4, 3:11, 3:15, 5:11, 8:8, 9:4, 11:23, 14:1, 14:9, 15:2, 15:23, 16:19, 18:19, 18:23, 18:25
**Judge** [8] - 2:24, 3:17, 4:3, 4:11, 4:13, 4:22, 18:22
**judgment** [1] - 17:7
**Judicial** [1] - 1:21
**jumped** [1] - 16:2
**June** [2] - 1:9, 19:9

## K

**KANNER** [1] - 1:13
**knowledge** [1] - 4:24
**Koller** [1] - 7:19
**Koller-Dette** [1] - 7:19
**Kristen** [2] - 7:17, 10:22
**Kugler** [4] - 1:21, 2:24, 4:3, 4:22

## L

**labeled** [2] - 5:6, 18:13
**language** [2] - 4:6, 11:19
**LARRY** [1] - 1:22
**last** [3] - 3:9, 4:12, 11:13
**late** [1] - 11:13
**Law** [2] - 1:21, 3:19
**law** [3] - 5:18, 9:7, 11:17
**lawyer** [11] - 6:14, 9:21, 10:2, 12:18, 12:20, 13:9, 13:10, 13:13, 13:18
**lawyers** [2] - 6:11, 13:15
**lays** [1] - 15:7

**lead** [1] - 10:2
**legal** [21] - 5:25, 6:1, 6:5, 6:11, 6:15, 7:1, 7:10, 7:11, 7:23, 8:5, 8:12, 8:19, 9:11, 9:25, 12:4, 17:5, 17:6, 17:13, 17:21, 17:25, 18:6
**letter** [2] - 3:6, 3:7
**levels** [1] - 7:8
**LIABILITY** [1] - 1:4
**list** [1] - 17:21
**litigate** [1] - 5:4
**litigation** [11] - 4:5, 5:5, 5:20, 6:11, 6:25, 8:23, 9:12, 9:20, 9:25, 10:2, 16:7
**LITIGATION** [1] - 1:4
**LLC** [2] - 1:13, 1:18
**LLP** [1] - 1:16
**Lockard** [5] - 3:11, 9:5, 11:24, 15:2, 16:3
**LOCKARD** [10] - 1:16, 3:13, 3:17, 9:6, 12:6, 15:3, 18:18, 18:22, 18:24, 19:1
**Lockard's** [1] - 16:1
**Log** [1] - 3:21
**look** [6] - 5:24, 6:16, 10:17, 11:6, 11:18, 12:5
**looked** [1] - 5:25
**looking** [3] - 2:18, 9:16, 14:13
**looks** [1] - 7:16
**LORETTA** [1] - 1:21
**Louisiana** [1] - 1:14
**Ltd** [1] - 1:18
**Lyons** [12] - 7:4, 7:18, 7:23, 12:1, 12:7, 12:8, 14:19, 14:25, 15:3, 16:12, 17:18, 17:19
**Lyons'** [1] - 6:17

**M**

**MACSTRAVIC** [1] - 1:22
**Magistrate** [1] - 4:11
**Magistrate's** [2] - 4:15, 4:20
**management** [1] - 4:21
**marshalling** [1] - 10:5, 16:5
**Master** [4] - 2:2, 4:10, 4:16, 4:20
**MASTER** [1] - 1:10
**materials** [1] - 15:8

**matter** [5] - 2:10, 3:12, 8:25, 17:7, 19:5
**matters** [1] - 9:12
**mean** [4] - 11:7, 13:10, 13:11, 15:11
**mechanical** [1] - 1:25
**mechanics** [1] - 18:11
**meetings** [1] - 10:10
**Memorandum** [1] - 3:19
**mention** [3] - 6:25, 7:1
**mentions** [1] - 16:7
**message** [3] - 6:20, 7:20, 14:18
**might** [1] - 14:12
**missing** [1] - 10:20
**Mitchell** [1] - 1:7
**motion** [6] - 2:8, 3:2, 3:18, 5:7, 18:13, 18:15
**MOTION** [1] - 1:5
**Motion** [7] - 3:19, 3:20, 3:21, 4:14, 5:2, 16:20, 18:13
**motions** [4] - 2:19, 3:24, 4:8, 16:24
**MR** [11] - 2:14, 2:20, 3:5, 5:15, 8:14, 13:25, 14:7, 14:10, 15:25, 18:17, 18:21
**MS** [9] - 3:13, 3:17, 9:6, 12:6, 15:3, 18:18, 18:22, 18:24, 19:1

**N**

**Nassall** [21] - 6:10, 6:20, 7:2, 7:13, 7:18, 7:23, 8:9, 8:20, 11:10, 11:14, 12:1, 14:5, 14:8, 14:17, 14:23, 15:4, 15:9, 16:2, 17:4, 17:18, 18:1
**Nassall's** [2] - 6:17, 10:16
**nature** [4] - 10:7, 13:8, 13:13, 17:25
**NDEA** [3] - 7:6, 7:8, 14:23
**NE** [1] - 1:17
**necessarily** [1] - 17:1
**necessary** [1] - 15:20
**need** [5] - 10:17, 11:7, 11:15, 15:16, 18:11
**needed** [4] - 12:10, 12:13, 17:22
**needs** [4] - 12:12, 13:19, 13:20
**never** [7] - 3:5, 7:24,

7:25, 8:16, 8:17, 10:9, 10:16
**new** [2] - 8:1, 11:3
**NEW** [1] - 1:1
**New** [2] - 1:8, 1:14
**next** [1] - 17:17
**none** [5] - 6:10, 7:2, 8:25, 16:4, 16:8
**nonlawyers** [1] - 14:19
**nonprivileged** [2] - 9:1, 11:9
**note** [1] - 7:16
**nothing** [4] - 5:9, 7:10, 8:6, 16:5
**notice** [1] - 7:21
**notion** [1] - 4:5
**novo** [5] - 4:19, 5:12, 16:22, 17:2, 18:14
**Number** [1] - 2:10
**NUMBER** [1] - 1:3
**number** [3] - 8:15, 14:19, 15:1

**O**

**objected** [1] - 4:24
**obligations** [1] - 12:15
**obvious** [3] - 9:17, 9:25, 10:21
**obviously** [5] - 2:6, 3:9, 4:10, 10:13, 11:17
**OF** [1] - 1:1
**officers** [1] - 15:17
**Official** [1] - 1:23
**one** [9] - 2:6, 4:23, 8:15, 12:5, 14:2, 14:5, 16:10, 17:17, 18:1
**ongoing** [1] - 9:19
**opening** [1] - 16:1
**order** [17] - 2:4, 2:10, 2:11, 2:23, 3:1, 3:23, 3:25, 4:4, 4:7, 4:9, 4:19, 5:2, 12:14, 15:15, 17:10, 18:10
**Orleans** [1] - 1:14
**otherwise** [1] - 13:1
**outside** [2] - 9:9, 13:3

**P**

**p.m** [1] - 19:2
**P.M** [2] - 1:9, 2:2
**paper** [1] - 13:23
**papers** [3] - 5:9, 5:16, 6:7
**Paragraph** [2] - 2:10, 3:1
**paraphrasing** [1] -

6:22
**part** [3] - 13:18, 18:4, 18:5
**particular** [5] - 5:22, 8:6, 14:13, 14:18, 17:24
**party** [5] - 3:2, 5:1, 5:2, 7:5, 14:18
**past** [1] - 11:18
**paste** [1] - 11:10
**pasted** [2] - 14:25, 16:2
**pastes** [1] - 7:14
**Paul** [1] - 17:9
**Pedano** [2] - 1:23, 19:7
**pending** [2] - 7:1, 16:6
**people** [7] - 6:7, 6:10, 7:18, 7:25, 8:1, 9:2, 11:3
**period** [3] - 10:11, 11:1, 11:21
**person** [1] - 8:20
**perspective** [2] - 9:16, 17:21
**petition** [1] - 3:2
**Pharma** [1] - 1:19
**Pharmaceutical** [1] - 1:18
**Pharmaceuticals** [1] - 1:18
**phone** [2] - 10:10, 16:7
**phrases** [1] - 5:19
**Piedmont** [1] - 1:17
**plainly** [1] - 3:21
**plaintiff** [1] - 9:21
**plaintiffs** [2] - 2:13, 10:23
**Plaintiffs** [1] - 1:15
**Plaintiffs'** [1] - 3:19
**plaintiffs'** [5] - 4:4, 5:9, 10:8, 11:7, 11:12
**point** [4] - 7:15, 9:19, 9:22, 11:4
**points** [1] - 14:2
**position** [1] - 16:1
**potentially** [3] - 7:22, 13:6, 16:15
**present** [1] - 15:10
**PRESENT** [1] - 1:20
**presented** [2] - 2:9, 17:1
**prevent** [1] - 15:5
**prevention** [1] - 15:13
**privilege** [10] - 5:17, 5:21, 9:9, 13:4, 13:7, 16:17, 16:18, 17:16, 18:6, 18:9

**Privilege** [1] - 3:21
**privileged** [11] - 8:4, 8:24, 10:12, 11:15, 11:22, 13:22, 14:12, 14:14, 14:15, 15:8, 15:14
**proceed** [1] - 2:7
**proceeding** [2] - 2:3, 2:6
**Proceedings** [1] - 1:25
**proceedings** [2] - 19:2, 19:5
**PROCEEDINGS** [1] - 2:1
**process** [2] - 13:22
**procurement** [6] - 6:10, 8:20, 9:1, 14:19, 15:1
**produced** [6] - 1:25, 11:9, 11:11, 13:17, 14:4, 15:7
**product** [1] - 17:14
**PRODUCTS** [1] - 1:4
**Professor** [1] - 17:9
**properly** [1] - 12:14
**proposal** [2] - 4:2, 4:6
**protected** [7] - 5:14, 12:18, 12:21, 12:25, 13:9, 13:13, 17:15
**protection** [1] - 17:11
**protective** [7] - 3:23, 3:25, 4:7, 4:9, 4:19, 5:2, 18:10
**provide** [4] - 8:19, 15:18, 15:22, 18:6
**provided** [2] - 6:12, 6:13
**provides** [1] - 3:2
**providing** [1] - 12:4
**provision** [1] - 8:5
**provisions** [2] - 2:9, 18:10
**purely** [1] - 6:2
**purpose** [1] - 17:13
**purposes** [5] - 11:8, 12:4, 17:20, 17:25, 18:5
**pursuant** [1] - 2:9
**put** [1] - 15:14

**Q**

**quality** [1] - 9:1
**questions** [13] - 6:22, 6:24, 7:4, 7:5, 8:10, 8:13, 8:21, 12:7, 16:13, 17:19, 17:21, 17:22
**quote** [2] - 6:11, 9:11

## R

**Rachel** [6] - 5:14, 7:16, 8:11, 12:2, 17:18
**rather** [2] - 4:3, 9:18
**RE** [1] - 1:4
**re** [1] - 5:4
**re-litigate** [1] - 5:4
**reaction** [2] - 17:11, 17:20
**read** [1] - 6:23
**ready** [1] - 2:7
**really** [1] - 11:19
**realm** [1] - 9:9
**reason** [1] - 9:17
**reasonably** [1] - 5:20
**reasons** [2] - 8:15
**recipient** [1] - 9:19
**reconsider** [3] - 2:8, 4:8, 5:7
**Reconsideration** [7] - 3:20, 3:22, 4:14, 5:3, 5:6, 16:21, 18:14
**reconsideration** [3] - 2:19, 3:9, 16:24
**RECONSIDERATION** [1] - 1:5
**record** [2] - 3:8, 19:5
**recorded** [2] - 1:25, 12:11
**redact** [1] - 10:25
**redacting** [1] - 10:23
**redaction** [1] - 8:7
**reference** [2] - 6:6, 15:16
**referenced** [1] - 9:13
**references** [1] - 16:7
**reflects** [1] - 13:10
**regarding** [1] - 8:2
**regulatory** [12] - 6:5, 6:12, 7:2, 7:11, 7:12, 8:22, 9:20, 10:6, 12:9, 12:15, 16:6, 16:8
**rehash** [1] - 5:4
**relates** [1] - 6:15
**relevance** [1] - 11:3
**remain** [1] - 11:22
**REMOTE** [1] - 1:6
**remotely** [1] - 2:1
**removed** [1] - 7:20
**render** [2] - 12:20
**rendered** [2] - 6:1, 13:20
**rendering** [3] - 6:15, 7:10, 7:23
**replies** [1] - 7:13
**report** [1] - 15:11
**reported** [1] - 13:21

**Reporter** [1] - 1:23
**reporter** [1] - 2:5
**Reporter/ Transcriber** [1] - 19:7
**request** [6] - 6:15, 7:1, 8:11, 9:10, 10:9
**requested** [2] - 4:1, 6:1
**requests** [1] - 8:5
**require** [1] - 9:10
**required** [1] - 4:3
**requires** [2] - 2:24, 11:18
**respect** [5] - 10:4, 12:14, 17:7, 17:14, 18:11
**respond** [2] - 3:15, 7:25, 10:17
**responded** [5] - 7:24, 8:16, 8:17, 10:9, 10:16
**responding** [1] - 10:6
**response** [4] - 6:12, 7:11, 9:24, 16:1
**responses** [5] - 6:5, 7:2, 8:22, 16:6, 16:8
**responsive** [1] - 14:2
**retention** [1] - 12:15
**revelation** [1] - 17:14
**review** [7] - 2:18, 4:19, 4:24, 5:13, 15:7, 16:23, 18:14
**reviewed** [1] - 11:17
**Rice** [1] - 17:9
**RMR** [1] - 19:7
**Road** [1] - 1:17
**Robert** [1] - 1:21
**role** [1] - 18:4
**RPR** [1] - 19:7
**ruling** [4] - 4:15, 5:8, 15:18, 16:20
**rulings** [2] - 4:11, 4:20
**Russia** [1] - 8:2

## S

**sartans** [1] - 7:9
**satisfy** [1] - 16:18
**Sawyer** [1] - 7:19
**Schneider** [3] - 4:3, 4:11, 4:13
**seam** [1] - 7:16
**securing** [1] - 17:25
**see** [6] - 5:9, 6:21, 11:14, 13:5, 18:23, 19:1
**seeking** [3] - 12:7, 16:9, 17:13
**send** [4] - 12:24, 12:25, 13:12

**sends** [1] - 12:23
**sent** [5] - 5:14, 10:14, 11:2, 13:2, 13:9
**separate** [1] - 14:7
**separately** [1] - 11:11
**September** [4] - 6:21, 8:9, 11:25, 18:2
**several** [1] - 17:19
**short** [1] - 6:23
**show** [1] - 7:2
**side** [1] - 10:3
**significant** [1] - 17:12
**similar** [1] - 13:14
**simple** [1] - 8:25
**simply** [4] - 6:16, 7:13, 8:5, 8:25
**situation** [1] - 17:8
**slew** [1] - 8:1
**SMITH** [1] - 1:21
**somewhere** [1] - 10:20
**sought** [1] - 16:10
**Special** [4] - 2:2, 4:10, 4:16, 4:20
**SPECIAL** [1] - 1:10
**specific** [2] - 8:10, 8:21
**specifically** [2] - 5:21, 9:12
**sprinkle** [1] - 5:19
**standard** [11] - 2:18, 3:10, 3:24, 5:8, 5:10, 5:13, 16:18, 16:23, 17:3, 18:14
**standpoint** [2] - 8:12, 17:6
**STANOCH** [12] - 1:13, 2:14, 2:20, 3:5, 5:15, 8:14, 13:25, 14:7, 14:10, 15:25, 18:17, 18:21
**Stanoch** [9] - 2:12, 2:16, 3:16, 5:12, 8:8, 10:19, 13:24, 14:1, 15:23
**started** [1] - 9:21
**starting** [1] - 2:4
**state** [1] - 3:23
**statement** [1] - 16:4
**statements** [1] - 6:4
**STATES** [1] - 1:1
**stenography** [1] - 1:25
**step** [1] - 4:17
**stepping** [1] - 6:3
**still** [1] - 10:1
**strategic** [1] - 10:4
**strategy** [1] - 8:23
**stream** [1] - 11:11
**Street** [1] - 1:14

**Streets** [1] - 1:8
**suggest** [1] - 12:2
**suggests** [1] - 8:17
**Suite** [1] - 1:17
**support** [1] - 3:19

## T

**team** [1] - 18:4
**tenor** [2] - 9:13, 11:20
**term** [1] - 17:9
**terms** [3] - 6:3, 8:12, 17:6
**test** [1] - 7:9
**Teva** [15] - 1:18, 1:18, 3:12, 3:14, 5:16, 8:24, 9:2, 9:24, 10:3, 12:9, 14:14, 14:20, 14:22, 15:11, 18:9
**Teva's** [2] - 6:3, 14:2
**THE** [3] - 1:1, 1:10, 13:24
**themselves** [2] - 11:4, 15:9
**thereafter** [1] - 3:3
**thinking** [1] - 12:19
**third** [2] - 7:5, 14:18
**third-party** [1] - 14:18
**THOMAS** [1] - 1:11
**Thomas** [1] - 2:2
**thousands** [1] - 13:15
**three** [6] - 5:22, 5:24, 6:6, 6:18, 18:7, 18:9
**throughout** [3] - 5:20, 8:23, 13:14
**titled** [1] - 3:19
**tomorrow** [1] - 18:23
**tone** [2] - 9:13, 11:20
**took** [1] - 11:2
**towards** [1] - 8:11
**transcript** [2] - 1:25, 19:4
**transcription** [1] - 1:25
**TRAURIG** [1] - 1:16
**treated** [1] - 4:14
**trouble** [1] - 12:5
**trying** [1] - 15:5
**type** [1] - 15:13

## U

**U.S** [1] - 1:7
**under** [3] - 2:18, 3:24, 5:18
**UNITED** [1] - 1:1
**unredacted** [1] - 11:12
**unresolved** [1] - 15:20
**up** [1] - 15:14
**USA** [1] - 1:18

## V

**VALSARTAN** [1] - 1:4
**Vanaskie** [1] - 2:2
**VANASKIE** [18] - 1:11, 2:3, 2:15, 3:4, 3:11, 3:15, 5:11, 8:8, 9:4, 11:23, 14:1, 14:9, 15:2, 15:23, 16:19, 18:19, 18:23, 18:25
**various** [1] - 16:8
**verbatim** [2] - 11:11, 14:18
**VIA** [1] - 1:6
**via** [1] - 2:1
**VICTORIA** [1] - 1:16
**VIDEOCONFERENC E** [1] - 1:6
**videoconference** [1] - 2:1
**volunteer** [1] - 8:19

## W

**warrant** [1] - 8:7
**whatsoever** [1] - 7:12
**WHITELEY** [1] - 1:13
**whole** [3] - 4:1, 8:1, 9:16
**wisdom** [1] - 4:25
**words** [2] - 11:18, 13:23
**world** [2] - 8:23, 16:15
**writes** [2] - 6:20, 7:4

## Y

**year** [2] - 4:13, 11:13

## Z

**ZHP** [14] - 6:24, 7:14, 8:21, 9:3, 14:3, 14:4, 14:8, 14:18, 14:24, 16:2, 16:11, 16:13, 16:14
**Zoom** [1] - 2:1
**ZOOM** [1] - 1:6