<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

————————————————————

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

————————————————————

**CIVIL ACTION NUMBER:**

**19-md-02875-RBK-KMW**

**CASE MANAGEMENT CONFERENCE**
**VIA TELECONFERENCE**

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
June 25, 2021
Commencing at 10:00

**B E F O R E:**                 **THE HONORABLE ROBERT B. KUGLER**
**UNITED STATES DISTRICT JUDGE AND**
**SPECIAL MASTER THE HONORABLE**
**THOMAS I. VANASKIE**

**A P P E A R A N C E S:**

MAZIE SLATER KATZ & FREEMAN, LLC
BY:  ADAM M. SLATER, ESQUIRE
103 Eisenhower Parkway
Roseland, New Jersey  07068
For the Plaintiffs

GOLOMB & HONIK, P.C.
BY:  RUBEN HONIK, ESQUIRE
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania  19103
For the Plaintiffs

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
BY:  DANIEL A. NIGH, ESQUIRE
316 S. Baylen, Suite 600
Pensacola, Florida 32502
For the Plaintiffs

Camille Pedano, Official Court Reporter
camillepedano@gmail.com
609-774-1494

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2         WATTS, GUERRA, LLP
          BY:  PAIGE BOLDT, ESQUIRE
3         4 Dominion Drive, Building 3, Suite 100
          San Antonio, Texas  78257
4         For the Plaintiffs

5         BRENT COON & ASSOCIATES
          BY:  ROBERT STEWART
6         1500 Walnut Street
          Philadelphia, Pennsylvania  19102
7         For the Plaintiffs

8         DUANE MORRIS LLP
          BY:  SETH A. GOLDBERG, ESQUIRE
9         BY:  JESSICA PRISELAC, ESQUIRE
          30 South 17th Street
10        Philadelphia, Pennsylvania  19103
          For the Defendants, Prinston Pharmaceuticals,
11        Solco Healthcare U.S. LLC, and
          Zhejiang Huahai Pharmaceuticals Ltd.

12
          GREENBERG TRAURIG LLP
13        BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
          BY:  STEVEN M. HARKINS, ESQUIRE
14        3333 Piedmont Road, NE, Suite 2500
          Atlanta, Georgia  30305
15        For the Defendants, Teva Pharmaceutical Industries Ltd.,
          Teva Pharmaceuticals USA, Inc., Actavis LLC,
16        and Actavis Pharma, Inc.

17        HILL WALLACK, LLP
          BY:  NAKUL Y. SHAH, ESQUIRE
18        21 Roszel Road
          Princeton, New Jersey 08540
19        For the Defendants, Hetero Drugs and Hetero Labs

20   **ALSO PRESENT:**

21        LORETTA SMITH, ESQUIRE
          Judicial Law Clerk to The Honorable Robert B. Kugler
22
          LARRY MacSTRAVIC, Courtroom Deputy
23
          ANNA EDNEY, Reporter with Bloomberg News
24

25

*United States District Court*
*Camden, New Jersey*

1   (PROCEEDINGS held via teleconference before The Honorable

2   Robert B. Kugler, United States District Judge, and Special

3   Master The Honorable Thomas I Vanaskie, at 10:00 a.m.)

4           JUDGE VANASKIE:  All right.  Who do we have as the

5   spokesperson for the plaintiffs?

6           Mr. Slater, are you there?

7           (No response).

8           JUDGE VANASKIE:  Not yet.

9           Mr. Goldberg, are you there?

10          MR. GOLDBERG:  I am, Your Honor.

11          JUDGE VANASKIE:  All right.  We're waiting for a

12   spokesperson for the plaintiffs.

13          All right.  Is there anyone on the line for the

14   plaintiffs?

15          MR. HONIK:  Your Honor, Ruben Honik here.  I was

16   expecting Mr. Slater to join because, as you know, most of the

17   issues are ZHP issues.  And for better or worse, I'm behind the

18   wheel of an automobile and unable to ping him; but perhaps if

19   one of the other plaintiff leadership is on, they can ping Mr.

20   Slater.

21          MR. GEDDIS:  Hi, this is Chris Geddis.

22          MR. SLATER:  Hello, Judge.  It's Adam Slater.  I'm

23   sorry, I just -- it wouldn't let me get into the password.  It

24   finally let me in.

25          JUDGE VANASKIE:  Okay, good.

1          MR. SLATER:  I can't explain why but it was not fun.

2     Sorry about that.

3          JUDGE VANASKIE:  That's okay.  I think we're ready to

4     go.

5          And I did want to let you all know that we have, I

6     believe, on the line, I'll ask, Ms. Edney, are you on the line?

7          MS. EDNEY:  Yes, I'm here, Judge.

8          JUDGE VANASKIE:  Now, we have on this call Anna Edney

9     from Bloomberg News.  She asked whether she could attend the

10    conference and permission has been granted, after conferring

11    with Judge Kugler.  So just so you know that Ms. Edney is

12    covering this conference.  And we will now proceed to conduct

13    the conference.

14         I have agenda letters from both sides of the matter

15    and the first item I wanted to address is the status of Mr.

16    Chen's custodial file productions and deposition schedule.

17         Mr. Slater, I'll give you the floor.

18         MR. SLATER:  Thank you, Your Honor.

19         In accordance with Your Honor's orders, the custodial

20    file is due to be served July 12.  With regard to that, I guess

21    ZHP had said that they seem to be on target.  I think that we

22    would appreciate some concrete assurance and we've asked some

23    questions during the meet and confer the other day, as we put

24    in our letter, to find out what is going to be the size of the

25    production and what is going to be the scope of any privileges

1  or state secrets that are asserted because I thought that was

2  --

3         JUDGE VANASKIE:  I'm going to interrupt for a second,

4  Mr. Slater.

5         We do have a standing protocol for these calls that

6  unless you're speaking, please mute your phone.  So I'll ask

7  anybody who's on the line, other than Mr. Slater, myself and

8  Mr. Goldberg, to please mute your line.

9         Thank you.

10        All right.  Go ahead, Mr. Slater.

11        MR. SLATER:  Okay.  I thought that -- and I think it

12  would be very helpful to the plaintiffs and to the Court to

13  have an understanding sooner rather than later as to the scope

14  of any privilege or state secret assertions that may be made

15  because I would assume that in order to most efficiently

16  address those, we would want to start to plan for how we're

17  going to meet and confer on them and, based on past history,

18  how we're going to submit any disputes to Your Honor so that it

19  can be done in an orderly fashion that's convenient for Your

20  Honor.  And then, obviously, that all ties to getting the

21  deposition scheduled, which is something we would like to get

22  on the calendar.  So we're just trying to get this in an

23  orderly fashion laid out so we know exactly what to expect and

24  we can then schedule it in a way that Your Honor is comfortable

25  with and that we can all work with.

1          JUDGE VANASKIE:  All right.  Mr. Goldberg.

2          MR. GOLDBERG:  Your Honor, I will defer to Ms.

3  Priselac on the production of Mr. Chen's custodial file.

4          In terms of the deposition, as we mention in the letter,

5  Your Honor, as we mentioned to plaintiffs' counsel, I believe

6  it was yesterday or Wednesday, I'm sorry, when Your Honor

7  issued the ruling on his deposition, it was already nighttime

8  China time.  We did get the ruling to ZHP on Wednesday.  We

9  obviously needed time to find a time to confer with ZHP about

10  the ruling.  As Your Honor knows, this is a very important

11  issue to ZHP and we and ZHP are evaluating the ruling.  And at

12  this time we do not have deposition dates.  We believe it's --

13  ZHP does need some time to evaluate how to proceed and, you

14  know, we intend to confer with Mr. Slater once a determination

15  in that regard has been made.

16          JUDGE VANASKIE:  All right.  Well, all that is

17  understandable.  I understand why you need to confer on this

18  very, very important issue and determine how you're going to

19  proceed.  But I do think we may need to put some time limit on

20  this evaluation process.

21          How much time do you think it will take?

22          MR. GOLDBERG:  Well, Your Honor, we -- I suspect -- we

23  have a holiday next week.  Of course, there is time if ZHP

24  decides to raise this issue with Judge Kugler, that would have

25  to be done I believe by July 13th.  So there is a natural time

1    limit to this and it actually coincides with the completion of

2    the document production.  And so we would respectfully request

3    that we have that time to consider how to proceed on this very

4    important issue.

5         I should mention, Your Honor, that there are some other

6    logistical issues just in terms of scheduling the deposition.

7    Mr. Slater, as you mention, has asked that the deposition be

8    scheduled at a time that would a lot -- allow for the

9    resolution of any motion practice related to the document

10   production.  So I think it would be helpful to have a more

11   clear picture of that as well before we put dates on the

12   schedule.

13        We also have the issue of summer vacations.  Mr. Slater

14   and I spoke about that last week and have agreed to try to

15   accommodate one another's vacations.

16        And then, of course, there's the issue of Mr. Chen's own

17   schedule and the issuance of the travel permit for Mr. Chen,

18   which has not yet occurred.

19        So I would suspect over the next couple of weeks, by

20   definition, with respect to whether we would raise this issue

21   with Judge Kugler, we'll have a very clear picture of how the

22   ZHP parties will proceed, where we are with the document

23   production, where we are with any potential motion practice

24   related to that document production.

25             JUDGE VANASKIE:  All right.  Mr. Slater?

1          MR. SLATER:  Thank you, Judge.

2          You know, in being practical, I certainly did not intend

3    to invite ZHP to turn this into a months-and-months-long

4    process.  I was simply flagging a couple of issues which I

5    figure that ZHP knows quite a bit more than what they're

6    sharing with us.  For example, they should be able to tell Your

7    Honor enough on the record now how many documents were

8    identified in his custodial file that were hit by the search

9    terms, what's the preliminary count of any document they might

10   claim privilege on or state secrets.  I don't think that that's

11   something that's going to merit long, extensive briefing

12   schedules, in light of the fact that we've already briefed

13   these issues for Your Honor and you've already either ruled on

14   or are imminently going to rule on many of the legal issues, so

15   it'll just be a question of slotting some documents potentially

16   into a framework Your Honor will have already established.

17   We're certainly not looking to delay this.  We think that we

18   should start to talk about dates.

19          I guess that counsel's considering an appeal, is what

20   we've heard for the first time today, to Judge Kugler.  They

21   have the right to do that but I don't think that that stays

22   their obligation to start to put dates on the calendar and to

23   start to schedule how we're going to handle this.  And that's

24   what I think needs to be imposed because what I'm hearing here

25   is summer is going to go by and by the time we're done with

```
 1  this, it's going to be November, and that's not where we want
 2  to be.  We want to take this deposition in a very reasonable
 3  period of time.  And we're talking August, that's two months
 4  out.  So it's not like we're asking to do the deposition next
 5  week.
 6          JUDGE VANASKIE:  Understood.  As you acknowledge, Mr.
 7  Slater, certainly ZHP has the right to seek review of the
 8  decision by Judge Kugler and I believe Mr. Goldberg is correct,
 9  I think it's a 21-day period for asserting or taking exception
10  to the rule and seeking Judge Kugler's decision; and I guess
11  that takes us to July 13.  And certainly you're within your
12  rights in using that time, Mr. Goldberg.
13          I do want to move this matter along but I think in terms
14  of scheduling the deposition itself, it has to await the
15  decision whether to seek Judge Kugler's review of the decision
16  that I made, and I don't see any way to expedite that now other
17  than having the parties act in good faith, making sure that
18  whatever decisions are made are made on the basis of the law
19  and the facts and we go from there.
20          I do agree with you, Mr. Slater, on the document
21  production.  That can proceed.
22          And so I did want to ask Mr. Goldberg where things stand
23  with respect to matters that were raised by Mr. Slater, such
24  as, an account of documents on which the search terms have hit,
25  for example.  Do we have any sense at this time of the size of
```

1  the universe of documents, potentially relevant documents, that

2  we're looking at?

3       MR. GOLDBERG:  Thank you, Your Honor.  For this I'm

4  going to defer to my colleague, Jessica Priselac.

5       JUDGE VANASKIE:  Thank you.  Yes.

6       MS. PRISELAC:  Good morning, Your Honor.  Jessica

7  Priselac for the ZHP parties.

8       I was -- during the meet and confer earlier this week,

9  we did, in fact, tell Mr. Slater that we had collected over

10 20,000 documents from Mr. Chen's custodial file.  And as an

11 update, it was actually closer to 30,000 documents that were

12 ultimately collected.  I was able to get a preliminary search

13 term hit count, and the preliminary search term hit count is

14 approximately 4,700 documents.  So our reviewers are in the

15 process of reviewing those documents and we haven't had any

16 additional technical glitches, I think Your Honor will be happy

17 to hear, and so the review is proceeding and we believe that we

18 will meet the Court's deadline.

19       JUDGE VANASKIE:  Okay.  Thank you.

20       Anything else on that point, Mr. Slater?

21       MR. SLATER:  I don't think so, Your Honor.  I think I

22 understand your ruling.  I understand exactly what you're

23 saying and I think we'll bide our time and wait for more

24 information and look forward to the production of the

25 documents.

```
 1          JUDGE VANASKIE:  I want you all to understand that my

 2    interest is to keep this matter moving as efficiently and as

 3    expeditiously as possible within the framework of the rules;

 4    and I will expect us to be addressing this matter of the

 5    scheduling of Mr. Chen's deposition at the next conference as

 6    well because, ultimately, my judgment, it will occur and it

 7    needs to occur but that, obviously, is a matter that can be

 8    raised with Judge Kugler by ZHP.

 9          Is there anything else, then, with respect to Mr. Chen's

10    custodial file and scheduling of his deposition?

11          MR. SLATER:  Your Honor, maybe I'll ask one other

12    question, and I apologize I didn't ask it before.

13          There had been some statements by ZHP along the way of

14    potentially objecting to Mr. Chen leaving China to be deposed.

15    I'm assuming from what Mr. Goldberg said that that's not an

16    argument that's going to be raised and that if the appeal to

17    Judge Kugler is denied, if that actually happens, that he will

18    be produced.  I thought maybe it'd just be a good idea just to

19    make sure that's not going to become an issue because that,

20    obviously, would raise some significant questions.

21          JUDGE VANASKIE:  Are you able -- sorry.

22          MR. SLATER:  I'm sorry, Judge.  I didn't add, just for

23    Your Honor's information, what had been suggested to us at one

24    point was that because he had some sort of an affiliation with

25    the government that he might not be willing to leave the
```

```
 1   country to be deposed as all the other witnesses did.  I

 2   suppose it probably makes sense just to make sure for the

 3   record today that that's not an argument we're going to hear.

 4        JUDGE VANASKIE:  Are you able to address that at this

 5   time, Mr. Goldberg?

 6        MR. GOLDBERG:  Your Honor, I can address it in the

 7   sense that at this point we do not have a -- a travel permit

 8   has not been issued for Mr. Chen.  Mr. Slater is correct that

 9   Mr. Chen, and as Your Honor knows, and as we've set forth in

10   our briefs, Mr. Chen is in a different category than all of the

11   other witnesses.  He does have roles with the Chinese

12   government and the review of his travel permit, as I understand

13   it, would be different than the other ZHP employees who have

14   been deposed; but at this point I do not have any further

15   insight into whether Mr. Chen's travel permit will be issued.

16   At this point it has not yet occurred.

17        JUDGE VANASKIE:  Okay.  All right.  Thank you very

18   much for that, Mr. Goldberg.  I think that's all we can do at

19   this point in time.  It is now raised, the matter, that has

20   been brought to my attention, at least, and we will continue to

21   follow it; but I don't think there 's anything else we can do

22   on that question at this time.

23        Now, where do things stand with respect to the -- what

24   are called the new discovery requests or the supplemental

25   production, depending upon whose title we're using?  Is it Ms.
```

1  Priselac that will be addressing this matter?

2          MS. PRISELAC:  Yes, Your Honor.

3          JUDGE VANASKIE:  All right.  Where do things stand,

4  Ms. Priselac?

5          MS. PRISELAC:  Your Honor, I think you may have

6  noticed that our perception of this week's meet and confer and

7  plaintiffs' perception of this week's meet and confer were a

8  little different, but I think it makes sense for me to kind of

9  address how the plaintiffs set forth their request for relief

10 in their letter.

11         Just in an overall sense, Your Honor, our position is

12 still that the production was substantially complete.  As a

13 result of the meet and confer, we agreed to do certain things

14 like identify certain types of documents, provide more

15 employment information for certain custodians, things that are

16 normal in either our quality check process or in the

17 meet-and-confer process in a production of this scope and

18 timing.

19         But in today's plaintiffs' letter, I just want to point

20 out to Your Honor that the section of plaintiffs' letter that

21 talks about the additional discovery requests reflects a trend

22 of the plaintiffs when it comes to the ZHP parties' production

23 in that it made really a series of baseless, unsupported

24 allegations about the document production itself or about what

25 certain documents in the production purport to say but they

 1    don't actually connect those allegations to any evidence or any

 2    requests for relief.

 3        One particular example in the letter, Your Honor, is

 4    that plaintiffs, once again, talk about this 2017 Jinsheng Lin

 5    email regarding an irbesartan improvement project and, once

 6    again, mischaracterizing what that email actually says.

 7        Now, as plaintiffs are well aware, that email is totally

 8    and completely unrelated to the only disputed request for

 9    relief in their letter, because the only disputed request for

10    relief in their letter relates to nitrosamine testing records.

11    And those nitrosamine testing records, the plaintiffs well

12    know, relate to tests that were conducted well after 2017 and

13    well after the detection of the NDMA impurity in valsartan API

14    which happened in 2018.

15        And, Your Honor, while I'm prepared to go line by line

16    to refute all the allegations that are in plaintiffs' letter,

17    my instinct is that you would probably like to focus on the

18    heart of this matter, which is the actual disputed requests for

19    the relief, which I'll do in a moment.  But, you know, if Your

20    Honor believes that breaking down all of the unrelated

21    allegations in the letter would be helpful as it relates to any

22    disputes going forward, then the ZHP parties would respectfully

23    request that they be given an opportunity to have a hearing by

24    Zoom in which we could present certain demonstrative exhibits

25    to Your Honor that would contradict the plaintiffs'

 1   mischaracterizations of the document productions and the

 2   evidence.  Because it's clear to us at this point, especially

 3   based on this latest letter here, that the plaintiffs' tactic

 4   is to just smear ZHP with a broad brush in the hope that it

 5   will somehow color the Court's view when it comes to very

 6   specific and, quite frankly, unrelated discovery disputes such

 7   as the one that's presented in the agenda letter today.

 8        JUDGE VANASKIE:  All right.  Let's hear from Mr.

 9   Slater, then.

10        MR. SLATER:  Thank you, Your Honor.

11        I guess I'll consider this to be my response to the

12   preliminaries.  But I wrote down what counsel said that we're

13   making, as plaintiffs, baseless allegations and

14   mischaracterizing Jinsheng Lin's email.  So let me try to make

15   it very clear, if I can.

16        There are some major deficiencies in this production,

17   the likes of which I have not seen in any litigation that I

18   have ever been in.  For example, this is a case, as Your Honor

19   knows, where ZHP has told the world since 2018 that they didn't

20   know there was NDMA in its valsartan until Novartis figured it

21   out for them in June 2018 and told them.  We have an email from

22   somebody who is a senior scientist at the facility that does

23   all of the testing that would have discovered the NDMA, and, lo

24   and behold, on July 27, 2017, Dr. Jinsheng Lin writes in an

25   email that an impurity that they were seeing, which was

```
 1  nitrosamine impurity, in irbesartan seems very similar --

 2          MS. PRISELAC:  Your Honor --

 3          MR. SLATER:  Can I finish please?

 4          -- that seems very similar --

 5          MS. PRISELAC:  I actually -- I actually --

 6          MR. GOLDBERG:  Your Honor --

 7          MS. PRISELAC:  Your Honor --

 8          JUDGE VANASKIE:  I will let Mr. Slater continue, Mr.

 9  Goldberg, and then we will hear from you.

10      Are we getting into information that is protected by a

11  confidentiality order?

12          MS. PRISELAC:  Yes.

13          MR. GOLDBERG:  Yes.  Yes, Your Honor, that's the only

14  concern we have, in light of the presence of the reporter --

15          JUDGE VANASKIE:  Yes, of Bloomberg.

16          MR. GOLDBERG:  -- of Bloomberg.  It is a confidential

17  issue and we don't -- you know, obviously, we need to have this

18  discussion in confidence with the Court.

19          MR. SLATER:  I get it.

20          JUDGE VANASKIE:  Well, is the document labeled

21  pursuant to the confidentiality order?

22          MR. GOLDBERG:  Yes, Your Honor.

23          MR. SLATER:  Your Honor, this is Adam Slater.

24      The document was labeled that way.  However, the

25  document, my understanding is, awhile ago, long -- the stay on
```

1    the obligations of ZHP to move to seal that document has

2    expired.  It was attached to papers a long time ago.  The

3    deposition testimony of Min Li was referenced in papers a long

4    time ago that were filed with the Court.  There was no motion

5    ever filed by ZHP to seal that.  That is expired.  There is no

6    confidentiality as to this information nor could there ever be

7    confidentiality as to this issue, which, frankly, is in our

8    agenda letter which was filed with the Court yesterday and is

9    sitting on the docket on ECF and the defense knows that and

10   they recognize that it's completely appropriate for us to place

11   that in a public record, the fact that ZHP knew there was NDMA

12   in valsartan in 2017.  I'm stunned that they're interrupting

13   this on that basis.

14        JUDGE VANASKIE:  All right.  Let me hear either from

15   Mr. Goldberg or Ms. Priselac.

16        MS. PRISELAC:  Your Honor, first to address what's

17   currently in the public domain, what's in the public domain is

18   a complete and total mischaracterization of what the email

19   actually says.

20        And to that point, Your Honor, you know, Mr. Slater's

21   just proving my point.  There's no request for relief related

22   to this email in his letter.  What he's simply trying to do is

23   smear ZHP, once again, with a mischaracterization of this

24   email, which is why I opened my remarks, Your Honor, with a

25   request that if we would like to get into what this email

1    actually says that we have a Zoom hearing so we can present

2    this email and break it down for Your Honor in a way that is,

3    quite frankly, protected under the confidentiality order

4    because the email itself contains highly technical information

5    and analysis related to a product that is, at the moment, not

6    the issue -- not the subject of discovery --

7            MR. GOLDBERG:  Your Honor --

8            MS. PRISELAC:  -- and that would be irbesartan.

9            JUDGE VANASKIE:  Right.  Go ahead, Mr. Goldberg.

10           MR. GOLDBERG:  This is -- thank you.

11       And with respect to the confidentiality, we have not had

12   the opportunity to meet and confer with plaintiffs on this.  My

13   understanding is that one of my colleagues who's been handling

14   the confidentiality issues has been in touch with one of Mr.

15   Slater's colleagues, Cheryll Calderon, on the confidentiality

16   issues, and we believe this issue is one of those that needs to

17   be addressed.  But, you know, the concern here is that, as Ms.

18   Priselac raised, mischaracterizing a document, using an

19   opportunity to grandstand in front of the national reporter

20   about it, is really not what we expected when we got on this

21   call; and a Zoom hearing, in the confidence of Your Honor,

22   where we can discuss this document, is really more appropriate

23   until the confidentiality issues have been resolved.

24           JUDGE VANASKIE:  All right.  I'll give you the final

25   word, Mr. Slater, and then I'll let you know how we're going to

 1   proceed here.

 2        MR. SLATER:  Okay.  Number one, there is nothing to

 3   meet and confer on as the deadline has passed for the defense

 4   to move to seal.  That's number one.

 5        Number two, I didn't know that a reporter was going to

 6   be on this call.  I'm not grandstanding.  And, in fact, part of

 7   our request is specifically for the data underlying the

 8   statement in the email, which has not been produced to us; and,

 9   frankly, Your Honor, neither was the email produced to us in

10   Mr. Lin's own custodial file nor is he even named as any

11   duplicate custodian.  Your Honor is well aware, as we laid out

12   in our letter, we believe, and I'm not going to pull any

13   punches because today's not a pulling punches kind of day, we

14   believe that ZHP deliberately scrubbed their documents before

15   they produced their documents and that that copy of the email,

16   we didn't even get an electronic version, we got a copy of it,

17   came through to us because the date created was changed when

18   they copied it to a date after the revelation of the

19   contamination.  That's why it only came through as a copy in

20   Min Li's custodial file with the other ten or 12 recipients and

21   the sender none of them listed as duplicate custodians on that

22   document.  We believe there's massive, massive impropriety in

23   the document production by ZHP.  And for ZHP to say that we're

24   not linking this to any requests, Your Honor, we've pointed out

25   the document counts are low, we've pointed out the date ranges,

1   we have Peng Dong who received that email where we got no

2   emails from him before December 12, 2017.  I mean, this is not

3   some thing that we're throwing out to try to draw attention to.

4   This is one of the most astounding revelations in a litigation

5   that I've ever seen where a document like this comes out.  This

6   literally is a smoking-gun document.  This literally is in

7   Wikipedia, next to smoking gun, you can give this example.

8          So I understand why ZHP is coming back at this so hard

9   because it's probably the only response that they can, because,

10  factually or legally, they have no grounds to stand on.

11         And finally, we absolutely object to this request to try

12  to turn this into some sort of sideshow on Zoom.  You know when

13  we've asked about this document?  Of multiple witnesses during

14  depositions.

15         And the last thing I'll say is, Jun Du, who I deposed

16  several weeks ago, when I was going through with him, kept

17  saying, well, where's the data and the underlying documents to

18  where he came up to that understanding that what he described

19  in that email occurred?  You know what my response was?  Yeah,

20  we'd like to see those, too, because they weren't produced to

21  us, and they clearly either exist or existed.  And that's why

22  we asked ZHP the other day to make sure that they preserved all

23  of the G.C. machines, all of the gas chromatography machines,

24  all the mass spectrometers that were used for years, and all

25  the data's been preserved because we are likely to ask for that

1    now so that we can then clean those, whatever you call them,

2    hard drives or whatever they are where all that data is, and

3    look at all the testing to go find where that test was done and

4    where that analysis was done before July 2017.

5         JUDGE VANASKIE:  Thank you, Mr. Slater.

6         This is obviously a very serious issue and one that's

7    hotly contested, and understandably so.  The accusations that

8    are being leveled against ZHP are, indeed, most serious and I

9    think under these circumstances it would be appropriate to

10   conduct a hearing, we can do the hearing via Zoom, and we can

11   conduct it *in camera*, in light of the assertions being made

12   that this is information that has been designated as

13   confidential.  And it may be, Mr. Slater, that they have missed

14   the deadline in terms of seeking to seal a particular document

15   or documents and the consequences for that would be that it is

16   no longer protected, I understand that; but this has to be

17   presented to me in an appropriate fashion and over the --

18   having it presented to me via telephone conference doesn't

19   enable me to make a decision with a great deal of confidence.

20        So I will schedule a Zoom hearing on the adequacy of the

21   ZHP production of a document related to the new discovery

22   requests, this supplemental production, so it won't be limited

23   to the July 27, 2017, email, it certainly will encompass the

24   July 27, 2017, email, and the parties should be expected to

25   address the question of whether the email itself is entitled to

1   protection under the confidentiality order that was issued by

2   the Court in this matter, or whether any protection under that

3   order has been lost or waived.  I will -- it won't be next week

4   that we have the hearing but I will look to conduct it very

5   soon.  And I think that's all we can say on this particular

6   issue right now.

7        I know there are a couple of matters I wanted to

8   address.  Ms. Priselac, you talked about going line by line.

9   I'm not sure we need to go line by line at this time, but I do

10  want to find out where things stand with respect to issues

11  raised by plaintiffs concerning missing devices or inoperable

12  devices, the discovery that was being sought on that particular

13  matter.

14       So, Ms. Priselac, can you bring us up to date on that?

15         MS. PRISELAC:  Sure, Your Honor.

16       During our meet and confer, we let the plaintiffs know

17  that we had identified some documents in the production and

18  also documents that will be produced no later than Monday that

19  show the realtime happenings, as they were, rather than a

20  declaration of, you know, Dr. Li's computer breaking, what he

21  did with respect to IT, and other documents that relate to his

22  possession of the laptop that was replaced.  So those documents

23  will be produced no later than Monday.

24         JUDGE VANASKIE:  Did you want to be heard on that

25  issue, Mr. Slater?

1          MR. SLATER:  I would.  Thank you, Your Honor.

2          We were told during the meet and confer that, and I

3    believe it may be -- I can't -- there's so many devices that

4    either broke or had to be replaced, but I believe it might have

5    been the phone, the iPhone or a similar device, from Dr. Li,

6    that it wasn't provided by the company and he did it

7    personally, and the order certainly encompassed that the

8    records from any source.  So if he went to the local, I'm going

9    to analogize it, I don't know -- I don't know which store he

10   went to, but whichever local store he went to, he bought the

11   phone there himself, which is what we're being told, I'm a bit

12   incredulous about it but, you know, we'll see what we get, the

13   order encompassed that as well to get whatever documentation it

14   was.  We were told during the meet and confer that they're not

15   going to produced anything he personally did.  If it was a

16   personal purchase and wasn't done by the company, they're not

17   going to give that to us even though that's been ordered.  So

18   there's a disconnect here, perhaps I'm not understanding or

19   perhaps ZHP has changed its position, but that's what we were

20   told on the phone the other day.

21          JUDGE VANASKIE:  All right.  Ms. Priselac.

22          MS. PRISELAC:  Your Honor, we don't believe that the

23   order encompassed any non-ZHP device and we've made it clear to

24   the plaintiffs over the period of several months, beginning at

25   least since I was involved in this since December of last year,

 1  that based on Chinese law, there's no way that an employer can

 2  force an individual to give over personal data or information.

 3  And if they wanted to get personal data or personal information

 4  about any ZHP employee, they were going to have to serve a

 5  subpoena and get Hague service on that individual.

 6      This hasn't come up before yesterday -- or, I'm sorry,

 7  Wednesday, this hasn't come up since December.  Since December

 8  they've made no attempt to subpoena or get personal records

 9  through any lawful means of any individual that works for ZHP.

10  And so to suddenly decide -- and there's a whole litany, quite

11  frankly, Your Honor, in the letter that has been, you know, put

12  to bed several months ago that suddenly now Mr. Slater is

13  bringing up again for the first time in months.

14      And so our position is that the plaintiffs have never

15  served any ZHP employee with any subpoena or any lawful request

16  for their personal data, and ZHP is not in a position to force

17  its employees to turn that information over.

18      MR. SLATER:  Your Honor, if I could briefly respond

19  please?

20      JUDGE VANASKIE:  You may.

21      MR. SLATER:  Thank you.

22      Well, I guess the dam is bursting now because what we

23  just heard is that ZHP's position they didn't have to comply

24  with the ESI protocol.  Any device that was used for work

25  purposes was supposed to be collected, the data was supposed to

```
 1   be collected by their vendor, and the responsive --

 2              (Telephone transmission interrupted.)

 3              THE COURT REPORTER:  I'm sorry, Mr. Slater, you're

 4   breaking up.

 5              MR. SLATER:  Am I clear now?

 6              THE COURT REPORTER:  Now you are, yes.  We lost you.

 7              JUDGE VANASKIE:  Yes.  We lost what you last said.

 8              MR. SLATER:  I'm sorry, I made the mistake of standing

 9   up.  I'm sorry.

10         I will go back because I don't know where you lost me.

11   But the ESI protocol required all devices that were used at all

12   for work purposes to be collected and all responsive data to be

13   produced.  We have now been told on the record that ZHP takes

14   the position they didn't have to do it, which I guess explains

15   why it is that multiple witnesses have told us that their

16   device -- their handheld devices, I'll describe them

17   generically as iPhones, were not collected and the data wasn't

18   pulled down, and that's been testified to by several witnesses,

19   which is another issue that we're pursuing on our end and we'll

20   likely come before the Court now.  With what counsel just told

21   us on the record, it really helps to crystalize the issue since

22   there was an obligation under the ESI protocol and the court

23   orders to do so.  So I guess we have a versioning industry of

24   issues of documents and information that were not collected

25   that should have been.
```

1    MS. PRISELAC:  Your Honor, may I respond?

2    JUDGE VANASKIE:  Certainly.

3    MS. PRISELAC:  Thank you, Your Honor.

4    Let me be clear that this discussion about people's

5    personal devices has -- was first, to my knowledge, discussed

6    with the plaintiffs in December, and they were well aware then,

7    and, quite frankly, they've been well aware since our

8    substantial completion of the production through metadata that

9    there is no personal device metadata and there is no personal

10   device data produced, and that's because they've had this

11   information for now close to seven months.  It's very easy to

12   tell in our production where all of these documents came from.

13   And if they had an issue that none of it came from a cell phone

14   of a particular employee, that's something they could have

15   highlighted, you know, I'll give them three months to have

16   looked through the production or the metadata.  Even with that,

17   they could have brought this up months and months ago.

18   The reality, Your Honor, as much as Mr. Slater would

19   like to say that this document is a smoking gun, it's not a

20   smoking gun whatsoever.  It's the last gasp of plaintiff.  The

21   reality is they haven't found what they wanted, they found one

22   document they could mischaracterize, and this is what they've

23   bet their whole case on.  That's their choice.  But that

24   doesn't mean there's spoliation.  And, quite frankly, to make

25   allegations of spoliation or destruction of documents without

1  any evidence whatsoever is completely improper.

2      And, Your Honor, with respect to this idea that, you

3  know, that somehow our client has, I think the word Mr. Slater

4  used was "scrubbed", you know, certain devices or not produced

5  certain emails, this brings me back to my original point, which

6  is, the plaintiffs are crying out all of these allegations but

7  if you read their letter closely, they haven't asked for any

8  relief.  The only relief they've asked for is about these

9  nitrosamine testing records which I can get to.  But the point

10  here is, Your Honor, how can we, as ZHP, properly respond to

11  anything that the plaintiffs are throwing out there when

12  they're not making the appropriate motions, they're not making

13  the appropriate requests for relief, and, quite frankly, Your

14  Honor, the reason they're doing so is because if they were

15  forced to write a motion about these things, if they were

16  forced to ask Your Honor for appropriate relief, they couldn't

17  do it because there's no evidence to support these allegations.

18      So I would request, Your Honor, that before we have this

19  Zoom hearing that the plaintiffs make clear what they think the

20  deficiencies actually are rather than just taking a broad swipe

21  and actually ask for a certain request for relief, because

22  we're entitled to be on notice about what they think is

23  missing, why they think it's missing, and what they want in

24  response.

25      MR. SLATER:  Your Honor, can I have 30 seconds?

```
 1          JUDGE VANASKIE:  Go ahead.  You can have more than 30
 2   seconds.
 3          MR. SLATER:  Thanks.  I won't take long.
 4       I think that it's clear that we've asked for relief and
 5   we have been doing our darndest to try to lay these things out
 6   for Your Honor as clear as we could, but there was one thing
 7   counsel said, and I was surprised she went back to it, but I
 8   have to make sure that this is clear for the Court and so Your
 9   Honor knows this.  I think we laid it out in the letter but if
10   I wasn't clear, I want to make sure I am.
11          After that email was sent, a report was prepared with
12   regard to the subject of that email.  And we've gone through
13   this with ZHP ad nauseam saying where is that report, because
14   the last reference to the report in April of 2018 was that Dr.
15   Min Li, the vice president of analytical operations for ZHP,
16   directed the people who wrote the report not to issue it, not
17   to do any more work on it, because of the, quote, unquote,
18   sensitive impurity discussed in the report.  That was in April
19   of 2018, and that report, which we've been asking for through
20   the Court and through meet and confers, ZHP has now conceded is
21   gone and cannot be --
22          MS. PRISELAC:  That's absolutely not true.
23          MR. SLATER:  It hasn't been produced and we've been
24   told that they can't find it and they're substantially complete
25   with their production; so unless someone's going to pull it out
```

```
 1   of their back pocket today.  We've made it clear in back and

 2   forth with ZHP we wanted it; they've made it clear they can't

 3   find it.

 4           MS. PRISELAC:  Your Honor --

 5           JUDGE VANASKIE:  All right.  Ms. Priselac.

 6           MS. PRISELAC:  -- I must respond to this because it's

 7   absolutely not true.  We've never written that, I've never said

 8   it, and, in fact, I directed Mr. Slater and his team to ZHP038,

 9   which is the group of documents that were collected in response

10   to that specific request; and when I asked them once if they

11   had actually read them, they would not say yes.

12       Now, I understand they're highly technical and all in

13   Chinese.  So if Mr. Slater wants to go on the record to say

14   today he and his team have read every single one of those

15   documents and it's not in there, I'd like him to do so because

16   I've never said that that report doesn't exist.

17           MR. SLATER:  Well, it's my understanding that our team

18   read all the documents.  On the call the other day, Cheryll

19   Calderon responded to your question and said, yes, we have been

20   through all the documents and --

21           MS. PRISELAC:  I asked read.

22           MR. SLATER:  -- it's everything that we've been told

23   -- my understanding is the document was not produced and if you

24   want to tell us where it is, we'll be happy to see it now.

25           JUDGE VANASKIE:  All right.  You know, one of the
```

 1   reasons we raise these issues by letter is to keep the matter

 2   moving along because motion practice certainly slows the

 3   progress of a case such as this one.

 4         I believe that plaintiffs certainly have raised

 5   repeatedly specific deficiencies with respect to the

 6   productions that have been made in this matter, but it appears

 7   that we're heading to the unavoidable need for a motion from

 8   plaintiffs to compel discovery, to compel production,

 9   identifying the deficiencies in the production, to be followed

10   by a response from ZHP, with a hearing, evidentiary hearing, to

11   be held via Zoom or in some other way so we can get this matter

12   resolved.  But we are not going to follow the normal timeframe

13   specified in the rules for a motion of this importance.  I want

14   to get it resolved promptly.

15         Mr. Slater, how quickly can the plaintiffs present a

16   motion that identifies what plaintiffs believe to be the

17   deficiencies in the production that has occurred to date?

18         MR. SLATER:  That's a good question.  I would like to

19   think we can do so very quickly but because of the tenor of

20   this discussion and some of the representations that have been

21   made and how the issues have expanded somewhat into a formal

22   motion to compel, I would want to try to be more comprehensive

23   than we are in the letters, and I think that's what Your Honor

24   is expecting, so I would say that we would probably need two

25   weeks.  And I'm trying to take into account when the July 4th

1    holiday is, but I would like to think that we could do it by

2    July 9th, at the latest.  And if we can do it faster, we'll

3    certainly let counsel know and let Your Honor know and, you

4    know, we can perhaps adjust when we're going to serve it.  But

5    I would like to, if you can indulge us, to July 9th.  Again,

6    we'll try do it quicker.  There's probably several people on

7    this call on my team right now saying we can get it out by the

8    end of today.  But if we can get it done quicker, perhaps if

9    Your Honor can set what the response time will be triggered by

10   when we serve it, then if we serve it July 6th, it would be

11   whatever amount of days you give the defense from there.  If we

12   serve it July 9th, it would be from there.  Is that acceptable?

13        JUDGE VANASKIE:  Let me ask Ms. Priselac.

14        MS. PRISELAC:  Sure.  Your Honor, I'd just point out,

15   too, that I don't believe it will be a massive amount of

16   documents, but we did note in our letter that we are doing an

17   ongoing QC process and we expect that to be done by July 2nd.

18   So given that the plaintiffs have already written several

19   deficiency letters about fully reviewing the production, we

20   think it makes sense that they should fully review the

21   production before they write some type of motion to compel or

22   deficiency letter.

23        JUDGE VANASKIE:  I want to get this matter moving so

24   we are not going to wait until your production is complete to

25   start the clock running for the production -- preparation of

1    that motion.  But I will give the plaintiffs until July 9th to

2    present a comprehensive motion.  If it needs to be supplemented

3    based upon what occurs after the motion has been submitted,

4    certainly it can be.  And I will give ZHP, to be fair, two

5    weeks to respond.

6            MS. PRISELAC:  Thank you, Your Honor.

7            JUDGE VANASKIE:  That takes us all the way to the 23rd

8    of July, which bothers me.  But you will get two weeks, not

9    until the 23rd.  And so, Mr. Slater, if you prepare your motion

10   and have it filed sooner, the two-week clock for a response

11   will start running.  And after I see the motion, even before I

12   receive the response, I will look at the calendar and schedule

13   a hearing via Zoom so we can get this matter resolved.

14           Substantial production has been made and so I'm

15   encouraged by that.  I know that plaintiffs continue to raise

16   concerns with respect to the completeness of that production,

17   and certainly it's detailed in their agenda letter, and I would

18   expect that would be part of any motion that is presented.  If

19   the motion is presented and then a production occurs that moots

20   some of the motion, that would be great.  But in the meantime,

21   let's get this matter moving.

22           So, plaintiffs, you have a hard deadline of July 9th for

23   the presentation of that motion.  ZHP defendants, you have a

24   hard deadline of two weeks from the filing of that motion.  If

25   it's filed sooner than that, your two-week clock is running.

 1  And, as I said, we will conduct a hearing on this matter most
 2  likely via Zoom.  I'm toying with the idea of an in-person
 3  hearing but I'm not sure we're there yet, and I would have to
 4  check with the Clerk of the Court and Judge Kugler about doing
 5  an in-person hearing on this matter.  But I think that's all we
 6  can accomplish on the question of ZHP's production at this
 7  point.
 8       Is there anything else, Mr. Slater, you wanted to raise
 9  on that issue?
10       MR. SLATER:  Yes, Your Honor.  I think Ms. Priselac
11  agreed moments ago, the one thing that we would like to get
12  resolved, frankly, as we said in our letter, by today, because
13  of our impending deadline for our expert reports, is concrete
14  confirmation from ZHP as to the testing results as requested in
15  our letter.  And I think Ms. Priselac said they can get that to
16  us today.  So that, from our perspective, is the most intensely
17  pressing matter.  So if that can be produced today, that would
18  be very helpful.
19       JUDGE VANASKIE:  All right.
20       MS. PRISELAC:  Your Honor, that's not what I said.
21       JUDGE VANASKIE:  All right.  What --
22       MS. PRISELAC:  That's not what I said.
23       JUDGE VANASKIE:  What did you say?
24       MS. PRISELAC:  So thank you.
25       Your Honor, we have told the plaintiffs, starting back

1   in August of 2020, that the nitrosamine testing results were

2   all produced in a prioritized manner, because the plaintiffs

3   told us they needed them as soon as possible, in a production

4   that's labeled ZHP17.  Every single nitrosamine testing record

5   related to valsartan API that is USDMF grade, which means it

6   can be sold in a United States product, has been produced to

7   the plaintiffs and has been in their possession since August.

8          As part of the meet-and-confer process, what they asked

9   us is that -- after they saw a summary of nitrosamine testing

10  results that included testing results for valsartan product

11  that is not USDMF grade, they asked us if we could produce

12  additional documents that would summarize those testing

13  results.  We said we would ask the client if such a document

14  exists, and if it does, we would produce it.

15         We went back to the client, the client looked.  The most

16  detailed summary of all nitrosamine testing results, including

17  products that weren't sold in the United States, the most

18  detailed summary they have is the one that the plaintiffs

19  already have and have referenced numerous times.

20         The issue, in terms of the underlying nitrosamine

21  testing records, was an issue that we were in constant

22  communication with plaintiffs last year when they asked us to

23  prioritize these documents.  We made it clear that these

24  testing documents and batch records would relate solely to

25  USDMF-grade API, all of those documents were produced between

August and November of last year.  They're clearly marked as such on our production log so there's no argument that they should be difficult to find.  Literally, the documents Mr. Slater is talking about are titled in the production log "Nitrosamine Testing Results", so I don't understand what the current request now is.

JUDGE VANASKIE:  All right.  Mr. Slater?

MR. SLATER:  Thank you, Your Honor.

First of all, there's a statement in ZHP's documents that they tested 7,000 batches of valsartan, and we have asked repeatedly where are those test results for the 7,000 batches, and ZHP has given us Bates ranges that are not just specific test results, they're much broader, and we said just tell us the specific Bates numbers of the specific documents that contain those 7,000 test results for the batches.  That's number one.  And I thought they were going to agree to do it, and I thought they agreed the other day to do it, so this is backtracking.

Secondly, Ms. Priselac keeps referring to USDMF-grade valsartan.  That argument that ZHP would only have to produce the results for the valsartan that was, quote, unquote, USDMF grade was rejected by Judge Schneider.  He said, no, you're producing the test results for all of the valsartan manufactured in the facilities that manufactured valsartan to go to the United States because, obviously, it was all

1  manufactured with the same process and we have the right to get

2  that relevant information.

3      What we said on the phone the other day was, look, the

4  last thing that either side wants, because there's, obviously,

5  not clarity from the testimony and what we've been told in the

6  meet and confers, from our perspective, has changed.  We don't

7  need to, at this point, have Your Honor resolve who said what,

8  when, what we want to do is get final closure on this issue.

9  So what we said was, identify for us please Bates numbers of

10  the actual documents that you state are all of the test

11  results, number one; and number two, please identify, within

12  those documents, which of those test results relate to batches

13  that were utilized to manufacture the valsartan that was sold

14  by ZHP through its independent -- through its wholly owned

15  distributor, Solco, in the United States, and also those

16  batches that were used to supply Teva and Torrent, the finished

17  dose manufacturers who purchased the API from ZHP to

18  manufacture finished dose that they also sold in the U.S.  That

19  way there's going to be no ambiguity, we're not going to have

20  any questions later on about whether or not the specific

21  batches that should have -- that should have been focused on

22  were, we have clarity and we have agreement, because ZHP tells

23  us these are those specific Bates numbers of those specific

24  dates.  They clearly have that information, it's something that

25  we can't get clarity on, and we think we should put this to bed

 1    with that relief, please.

 2             MS. PRISELAC:  Your Honor, may I respond?

 3             JUDGE VANASKIE:  Yes.  Then I'll have a question or

 4    two of you, Ms. Priselac, but go ahead.

 5             MS. PRISELAC:  Sure.  So the first thing, when we're

 6    talking about this Macro Discovery Order, and it's cited in

 7    plaintiffs' submission, when viewing documents, certainly the

 8    ZHP parties did tag responses and produce to the other side

 9    discussions about nitrosamine impurities wherever the impurity

10    was, whether it was a USDMF-grade valsartan or if it was

11    related to, you know, another country's valsartan API.  We

12    understand Judge Schneider's ruling on that front.  But if you

13    look at that order, there's a whole section about testing and

14    it talks about meet and confers with the parties, about what

15    specific sets of testing would be produced.  And that's because

16    in these companies there's a huge amount of testing data that

17    exists, and it's extremely -- in ZHP's case, it's all kept in

18    hard copy.  And much of last summer, from our side, was spent

19    negotiating with the plaintiffs what hard copy testing

20    documents would and would not be produced, because it was a

21    huge undertaking by our client.

22             In the end, what we have agreed was that it would be

23    USDMF-grade valsartan API batch records and the related

24    nitrosamine testing results.

25             That has all been produced, it is all clearly marked for

 1    the plaintiffs.  This idea that it isn't, I don't know what

 2    else we could possibly tell them, Your Honor.  I couldn't --

 3    these actual testing records are more clearly identified than

 4    any other set of documents in our production log, which I'm

 5    happy to share with Your Honor if you would like.

 6         So in terms of -- they've had all of the nitrosamine

 7    testing records, I'm looking at the log right now, since the

 8    last thing that we made a replacement with production in

 9    September.  I have correspondence from plaintiffs' counsel

10    where they ask is this production complete; we confirm, yes, it

11    is, in September of 2020; and we've heard nothing about this

12    ever since.

13         So this idea now that somehow we should go back and

14    manually scan thousands of more documents that relate to a

15    product that was never sold in the United States is just

16    flabbergasting.  They've made no showing about why it would be

17    relevant or proportional in terms of this case.

18         Related to matching up these testing results to, you

19    know, certain products that were sold in the United States,

20    Your Honor, this is probably the tenth attempt of the

21    plaintiffs to try to get the defendants to map out the entire

22    supply chain for them.  Judge Schneider repeatedly rejected

23    that, in part because it's almost impossible for the API

24    manufacturers to do.  And part of the -- my understanding is

25    part of the reason we're doing the defendant fact sheets is so

 1    that the supply chain is counted for through that process, not

 2    through some process where ZHP is going to stipulate what API

 3    ended up in what finished dose product.  That was never

 4    contemplated by Judge Schneider.

 5            JUDGE VANASKIE:  All right.  There's a lot here that

 6    needs to be unpacked somewhat.

 7        First, Mr. Slater, was there an agreement to limit

 8    testing results to the USDMF-grade valsartan?

 9            MR. SLATER:  Not that I'm aware of.  I argued the

10    issue with Judge Schneider and he ruled against ZHP and said

11    they are not going to be able to limit their production of test

12    results to DMF.  So I'm not sure what agreement counsel's

13    talking about or what issue is being raised.  It's confusing to

14    me.

15        Again, there's a reference in ZHP's documents that were

16    shared with the regulatory authorities after the revelation of

17    the nitrosamines that 7,000 batches were tested.  When we first

18    raised this, Your Honor, ZHP said, we're working on trying to

19    identify what that testing was.  They seemed to be acting in

20    good faith to try to find the test results, so it's not as if

21    this is a new request.  We referenced this previously in

22    hearings with Your Honor.

23            JUDGE VANASKIE:  Yes, if I can recall --

24            MR. SLATER:  I appreciate it.  And if counsel can so

25    easily tell Your Honor the Bates ranges, then they can easily

1  confirm it for us and then that would be binding.  That's all

2  we're asking for.

3       JUDGE VANASKIE:  So I'm having -- I'm getting confused

4  here, Ms. Priselac, because I thought I heard you say that, oh,

5  about a year ago there was an agreement that would limit

6  testing results to USDMF-grade valsartan.  Did I hear that

7  incorrectly?

8       MS. PRISELAC:  You did not.

9       JUDGE VANASKIE:  And where is that agreement

10 memorialized?

11      MS. PRISELAC:  That agreement was made between my

12 former colleague, Joe Ferretti, and Mr. Parekh.  Mr. Slater and

13 his office had no involvement whatsoever in those negotiations

14 or the production.  And I do still have Mr. Ferretti's email,

15 and I can forward to Your Honor the email where he makes clear

16 that our production was done as of September on all of these

17 issues, and we've heard nothing from the plaintiffs ever since.

18      With respect to what we agreed to do, as part of the

19 meet-and-confer process, I certainly agreed to go back to see

20 if there was a summary of these 7,000 test results, rather than

21 producing the tens of thousands of paper documents, that would

22 be extremely burdensome, so that perhaps we could give that to

23 the plaintiffs.  And after a search, the only summary that the

24 client has in its possession that it keeps in the ordinary

25 course is the summary that the plaintiffs already have.  So I

```
 1   was willing to go back to find a way to try to get this
 2   information in a way, Your Honor, to resolve this issue that
 3   would not be unduly burdensome for my client, but there isn't.
 4   These are all test results that exist in paper form; and
 5   there's no summary spreadsheet other than the summary
 6   spreadsheet the plaintiffs already have.
 7           JUDGE VANASKIE:  And has that been identified by Bates
 8   number, that summary --
 9           MS. PRISELAC:  Yes.
10           JUDGE VANASKIE:  -- spreadsheet?
11       Mr. Slater, what was your request?
12           MR. SLATER:  I'm asking that ZHP -- the imminent
13   relief is to identify, so that there's no question, there's no
14   confusion and there's no disconnect, which Bates numbers, what
15   the Bates numbers for the documents that have the test results
16   for the valsartan testing that was produced, that's number one;
17   and to the extent that they can, which I assume they can, we're
18   not asking for the whole supply chain, we're not asking what
19   went to the downstream distributors and we're not asking what
20   went to the retailers, we're asking which Bates numbers also
21   show or documents show which of the API was sold through Solco,
22   was sold to Torrent, was sold to Teva, for sale in the United
23   States, that's all.
24           The other issue --
25           JUDGE VANASKIE:  Well, one at a time.
```

```
 1          MR. SLATER:  -- we can address in our motion to
 2  compel, as necessary.
 3          JUDGE VANASKIE:  All right.
 4          MS. PRISELAC:  So --
 5          JUDGE VANASKIE:  Let me go back to your first point,
 6  and then I'll hear from you, Ms. Priselac.
 7          You're asking for an identification by Bates number for
 8  the testing of the 7,000 batches?
 9          MR. SLATER:  For the test results, Your Honor, yes.
10          JUDGE VANASKIE:  Okay.  Ms. Priselac, what would be --
11  can that be produced?
12          MS. PRISELAC:  So, sure, Your Honor.  Just to clarify,
13  and I sent this information to Mr. Slater previously, the
14  testing results -- when we are talking about the 7,000 batch
15  testing results, not all of those batches are USDMF grade.  And
16  so what they have and what we have produced are all of the
17  testing results for USDMF-grade valsartan API, and those are at
18  ZHP17 is the volume number of the production.  I'm happy to
19  re-send those specific Bates ranges to Mr. Slater or state them
20  on the record.  I can read them now, if you would like.
21          JUDGE VANASKIE:  Yes, why don't you read them now.
22          MS. PRISELAC:  Sure, it's ZHP00117716 to ZH00120312.
23          JUDGE VANASKIE:  Okay.  And now, as I understand what
24  you're saying, the 7,000 batches that were tested, some were
25  non-USDMF-grade valsartan; is that correct?
```

1          MS. PRISELAC:  That's correct, Your Honor.

2          JUDGE VANASKIE:  And the test results for the

3    non-USDMF-grade batches have not been produced?

4          MS. PRISELAC:  That's correct, Your Honor.

5          JUDGE VANASKIE:  And they have not been produced

6    because you reached an agreement with Mr. Parekh?

7          MS. PRISELAC:  Well, I think there are two things,

8    Your Honor.

9          I would say that first, the provision that the

10   plaintiffs have cited about non-USDMF-grade-related documents,

11   we do believe we fulfilled that in the sense that if there are

12   responsive documents talking about nitrosamine and

13   non-USDMF-grade valsartan, it was still produced to the

14   plaintiff; and we have several examples of that.

15         The Macro Discovery Order has a different section about

16   testing results.  Our position was that those testing results

17   all should relate to USDMF-grade valsartan.  And in our

18   discussions last summer with Mr. Parekh, we made it clear that

19   that is what we were willing to produce, there was no

20   objection, and that's how the parties proceeded for almost a

21   year now.  There has been no -- there has been no ambiguity

22   about what was being produced and what was not being produced.

23   And if we do have -- if this is going to be part of the hearing

24   that we ultimately have, Your Honor, I'm happy to bring that

25   correspondence between Mr. Ferretti and Mr. Parekh.

 1          JUDGE VANASKIE:  Mr. Slater?

 2          MR. SLATER:  I think at this point we're going to have

 3  to look at that Bates range.  I -- obviously it's about 3,000

 4  pages long.  I'm concerned that it may be -- or 25, about 2,700

 5  pages, it looks like.  I'm concerned that that may be broader

 6  than -- it may just be an entire collection.  But if that's

 7  just the test results, we'll take a look at that and we'll

 8  compare it to what we had before and see if it's the documents

 9  that we've been told previously were the right documents that

10  we utilized in depositions.

11          As far as the underlying testing for the non-USDMF

12  grade, we'll make a decision on whether to move on that --

13          JUDGE VANASKIE:  All right.

14          MR. SLATER:  -- so Your Honor doesn't have to resolve

15  that today.

16          As far as identifying which was sold through Solco

17  versus Teva and Torrent, that may also have to become a subject

18  of the motion.  I don't know that that has to be something we

19  have to fight for today.  So I'm trying to do this in an

20  orderly way for Your Honor.

21          JUDGE VANASKIE:  Thank you for that.

22          You will have to raise those issues, if you are going to

23  raise them, in this motion.

24          MR. SLATER:  Will due.

25          JUDGE VANASKIE:  The deadline for which is July 9.

1    All right?

2        Is there anything else dealing with the ZHP production,

3    from the plaintiffs' perspective?

4            MR. SLATER:  Nothing on the ZHP issues, Your Honor.

5            JUDGE VANASKIE:  Anything else from ZHP, Ms. Priselac?

6            MS. PRISELAC:  Nothing.  Thank you, Your Honor.

7            JUDGE VANASKIE:  All right.  Thank you.

8        Camille, how are you holding up?

9            THE COURT REPORTER:  I'm fine, Your Honor.  Thank you.

10           JUDGE VANASKIE:  All right.  Let's proceed then to the

11   next item which deals with Hetero production and its privilege

12   log.

13       Is there anything ripe to be addressed with respect to

14   this matter covered at Page 8 of the plaintiffs' agenda letter

15   and Pages 3 -- Page 3 of the defendants' agenda letter?  Let me

16   ask of plaintiffs, who will be addressing this?

17           MR. SLATER:  Your Honor, I thought that Mr. Parekh

18   would.  I'm hoping he's on mute.

19           JUDGE VANASKIE:  Yes, I'm expecting that's the issue.

20       Mr. Parekh, are you there?

21       (No response).

22           JUDGE VANASKIE:  Apparently not.

23           MR. SLATER:  I guess, unless somebody else wants to

24   jump in, I can pinch hit to say that I don't think that there's

25   anything for Your Honor to resolve today.  I think that from

1  the exchange and from my discussions with our team, there's

2  going to be sort of a final determination in the meet and

3  confer as to what disputes remain and then I suppose at that

4  point we'd be ready to submit them.  I don't disagree with

5  that.

6          JUDGE VANASKIE:  Okay.  Mr. Nakul, are you there?

7          MR. SHAH:  Yes, Your Honor, this is Nakul Shah for

8  Hetero Drugs.

9          JUDGE VANASKIE:  Yes, Mr. Shah, I'm sorry, yes.

10         Mr. Shah, I know Mr. Abraham was not available today,

11 unless something changed.  So will you be addressing --

12         MR. SHAH:  That's correct, Your Honor.

13         JUDGE VANASKIE:  Okay.

14         MR. SHAH:  Yes, Your Honor, Mr. Abraham is on trial

15 currently.

16         JUDGE VANASKIE:  Right.  Is there anything to address

17 from Hetero's perspective?

18         MR. SHAH:  No, Your Honor, I don't believe that this

19 issue is currently ripe for a judicial intervention.  We have

20 previously made de-designations of privileged documents to

21 plaintiff.  We additionally met and conferred with plaintiffs a

22 couple of days ago, on June 22nd, and discussed that we would

23 be making a subsequent production of de-designated privileged

24 documents.  And we essentially reached an understanding that we

25 would meet and confer again at that point to determine what the

 1  universe of contested documents are and determine what, if any,

 2  issues should be addressed by Your Honor.  But at this time

 3  nothing is ripe to be addressed, Your Honor.

 4       JUDGE VANASKIE:  All right.  Very well.  Thank you.

 5       The next issue I wanted to address, then, would be the

 6  question of the defendants' in-person appearance at plaintiffs'

 7  depositions.  This was raised at Pages 8 and 9 of the

 8  plaintiffs' agenda letter.  I don't think it was addressed in

 9  the defendants' agenda letter.

10       So who will be addressing this issue for the plaintiffs?

11       MS. BOLDT:  Your Honor, this is Paige Boldt for the

12  plaintiffs.  I believe this isn't ripe for discussion for

13  today.  I think it was discussed including it in the agendas

14  but we have not had a chance to meet and confer as a leadership

15  to discuss the issues there.  So we're hopeful we can resolve

16  these very case-specific evaluations for safety without court

17  intervention.

18       JUDGE VANASKIE:  All right.  Very well.

19       MS. LOCKARD:  Your Honor, excuse me, if I may.

20       JUDGE VANASKIE:  Go ahead.

21       MS. LOCKARD:  It's Victoria Lockard on behalf of the

22  defendants from Greenberg Traurig.

23       Just by way of background on this, it was not included

24  in the defendants' submission.  The reason is that defendants'

25  included it in the initial exchange of agenda points with

1    plaintiffs' counsel.  Early yesterday morning, Ms. Boldt

2    emailed me to say that she felt it wasn't ripe because we

3    needed more meet and confer time on it.  At that point I was

4    honest and said, okay, I'd like to propose a meet and confer

5    for this afternoon; we'll take it off our submission.  I didn't

6    get a response.  I responded again and said, please let me know

7    when you can speak; I didn't get a response.  So we took it out

8    of our submission and were surprised to see that plaintiffs

9    then did include a write-up of this.

10          I am happy to continue to meet and confer but I will say

11   this:  We have plaintiffs' depositions that are going forward

12   the first week of July.  We need to get some resolution on

13   these issues.  We're happy to work with plaintiffs' counsel

14   where there are particular plaintiffs who cannot or will not be

15   able to sit in person for depositions.  But the growing issue

16   is that, you know, as the COVID concern starts to wane, people

17   get vaccinated, you know, the COVID protocols in the protective

18   order need to start being loosened.  And what we are finding in

19   some cases is that plaintiffs -- sometimes two or more

20   plaintiffs' attorneys are showing up in person at the

21   plaintiffs' deposition, but defendants are being told it's not

22   safe for them to attend, not even one single lawyer who's

23   vaccinated.

24          So I do think this is going to be an issue that we will

25   not be able to work out in total.  I'm willing to continue to

 1  resolve it, but if we are not able, then I would just flag for

 2  the Court we may be coming back to you next week, if you were

 3  inclined to speak with us in between, because I don't think

 4  this issue can wait until July 14th, which is when we have the

 5  next CMC.

 6          JUDGE VANASKIE:  All right.  Yes.  I certainly will

 7  make myself available next week if it needs to be resolved, if

 8  you are all unable to resolve it among yourselves.

 9          I will give you a heads up that we might have to conduct

10  that conference call or Zoom session after 5 p.m. as I have a

11  hearing next week; but we will address it so the matter can

12  continue to move on.

13          So what I will do is wait to hear from you all in terms

14  of the need to have intervention, the Court's intervention, on

15  this matter.  Hopefully, you will be able to work it out.

16          And you are right, Ms. Lockard, to raise the question of

17  whether the COVID protocols need to be re-examined at this

18  point.  Perhaps we're getting to that stage of recovery here in

19  the country.  But for now, I'll wait to hear from you.

20          MS. LOCKARD:  Thank you, Judge.

21          MS. BOLDT:  Thank you, Your Honor.

22          JUDGE VANASKIE:  Thank you.

23          The next issue I have is the treater physician protocol.

24  Is this ripe for discussion today?

25          MR. NIGH:  Yes, Your Honor.  This is Daniel Nigh on

1  behalf of plaintiffs.  I do believe this is an issue that's

2  ripe to discuss today.  Although I do believe that this is an

3  issue that we've been addressing with Judge Kugler and should

4  continue to address with Judge Kugler.

5       JUDGE VANASKIE:  All right.  That's fine.  And I

6  noticed in the defense agenda letter, this came after the

7  plaintiffs' fact sheet presentation.  So we will let you raise

8  this issue with Judge Kugler.  And the other issue is the

9  bellwether pool.  That, of course, is for Judge Kugler as well.

10      Is there anything else that we need to discuss today

11  with respect to discovery issues?

12      MR. SLATER:  Nothing from plaintiffs, Your Honor.

13      MR. GOLDBERG:  Nothing from defendants, Your Honor.

14      JUDGE VANASKIE:  All right.  Thank you, Mr. Goldberg.

15      All right.  So what we will do then is I will drop off

16  this call, I'll call Judge Kugler, and we'll all rejoin this

17  call after I am able to contact Judge Kugler and we will

18  continue the conference with Judge Kugler.  All right.  Thank

19  you all very much.

20      MR. SLATER:  Your Honor, should we hold on and wait?

21      JUDGE VANASKIE:  Yes, I think that's how we have done

22  this in the past.

23      MR. SLATER:  Yes, that's how we've done it.  When you

24  said rejoin, I just was wondering if you were suggesting we

25  call back but we will wait on the line.

```
 1          JUDGE VANASKIE:  Yes, I will be rejoining.

 2          MR. SLATER:  Okay.  Thank you.

 3          JUDGE VANASKIE:  Okay.  Bye-bye.

 4          (Brief recess taken at 11:24 a.m.)

 5          MS. SMITH:  Judge Vanaskie, this is Loretta.  Judge

 6  Kugler said it will take him a few minutes, three or four

 7  minutes, to get into the call.

 8          JUDGE VANASKIE:  Thank you, Loretta, for letting us

 9  know.  Thank you.

10          JUDGE KUGLER:  Good morning.  It's Judge Kugler.  How

11  is everybody?

12          MR. SLATER:  Hello, Judge.  Doing well.  How are you?

13          JUDGE KUGLER:  We have a court reporter on today, I

14  assume?

15          THE COURT REPORTER:  Good morning, Judge.  It's

16  Camille.

17          JUDGE KUGLER:  Hello, Camille.  How are you?

18          THE COURT REPORTER:  I'm well, thank you.  How are

19  you?

20          JUDGE KUGLER:  I am fine, thank you.

21      Well, it doesn't look like there's a lot on the agenda

22  for me, so we'll get to the orders to show cause in just a

23  second but I wanted to bring you up to date as to where we are

24  in court.

25          I tried a jury trial last week.  I'm scheduled to pick
```

 1    another jury on Thursday and then I'm starting another jury

 2    trial on July 12th.  So we are starting jury trials in Camden

 3    and New Jersey District courthouses.  We are actually doing

 4    civil motions also in the courtrooms now, not civil trials if

 5    there is a criminal trial going on because we are only doing

 6    one jury trial per courthouse because of the logistics of

 7    moving all the jurors around and keeping everybody spaced.  I

 8    anticipate after Labor Day we will be open fully as if there

 9    was no pandemic, but that depends on the numbers.

10         As to our judicial vacancies in the District of New

11    Jersey, we have six, the president has nominated four, two have

12    been confirmed, the third one had her judiciary committee

13    hearing this week, the fourth one will have her judiciary

14    committee hearing right after the 4th of July.  So we're making

15    progress towards restoring some normalcy in the District of New

16    Jersey.

17         So, anyway, orders to show cause, there were three

18    returnable, but I understand that Wilcox could be dismissed

19    because that's been resolved, correct?

20          MR. HARKINS:  Yes, Your Honor.  This is Steve Harkins

21    with Greenberg Traurig for the Teva defendants and joint

22    defense group.

23         The Wilcox matter has been resolved and the order to

24    show cause can be withdrawn.  Defendants do request and move

25    for dismissal of the remaining cases, Knox and Sundermeir.

1          JUDGE VANASKIE:  Any objection to Knox and Sundermeir?

2          MR. NIGH:  Your Honor, this is Daniel Nigh

3    representing Sundermeir.  No objection on that one.

4          JUDGE KUGLER:  All right.  Sundermeir will be

5    dismissed.

6          How about Knox, anybody want to speak on Knox?

7          MS. BOLDT:  Your Honor, this is Paige Boldt for Knox,

8    plaintiff, and no objection, Your Honor.

9          JUDGE KUGLER:  Okay.  That will be dismissed.

10         Now, there's three you've requested an order to show

11   cause, DeClerk, Stone and Stewart.  Any issues with those?

12         MR. HARKINS:  Your Honor, for the defense group, we

13   have no updates so we do request orders to show cause in the

14   DeClerk, Stone and Stewart returnable at the July case

15   management conference.

16         JUDGE KUGLER:  Okay.

17         MR. SCHWARTZ:  Your Honor, this is Robert Schwartz.

18   May I be heard on DeClerk?

19         JUDGE KUGLER:  Sure.

20         MR. SCHWARTZ:  I checked this morning on the status of

21   that and it was being finished and it should have been filed or

22   served already.  I sent an email this morning to Mr. Cotes

23   advising that as per the notice that we received about this

24   call, so I don't think that's going to be an issue.  I know

25   it's not going to be an issue and certainly not subject to an

1   order to show cause.

2        JUDGE KUGLER:  Well, you have a month to get it

3   resolved until the July hearing anyway.  So if by the time of

4   the July hearing it's resolved, then it will not be dismissed.

5   It will be withdrawn.

6        MR. SCHWARTZ:  I just wanted to bring you up to date

7   on that, Judge.  Thank you.

8        JUDGE KUGLER:  Thank you.  I appreciate it.

9        Anybody else on these?

10       (No response).

11       JUDGE KUGLER:  All right.  We'll shift those to orders

12   to show cause returnable at the July meeting.

13       And there is one, two, three, four, five, Debbie Aloian,

14   A-L-O-I-A-N, Cassandra Henton, Gloria Knight, Worikeena

15   Righteous and Bryant Brooks, have been listed and you're

16   seeking to shift it to another listing.  Any updates on any of

17   those?

18       MR. HARKINS:  Your Honor, for the defense, the one

19   update is the Brooks case has been resolved and that can be

20   moved off.  We do -- we will continue to list the other four

21   cases.

22       JUDGE KUGLER:  Okay.  We will list the other four for

23   another listing next month.

24       Okay.  Anything else that you need my assistance with

25   today?

 1          (No response).

 2          JUDGE KUGLER:  Okay.

 3          MS. LOCKARD:  Your Honor, it's Victoria Lockard from

 4    Greenberg Traurig for the defendants.

 5          There is one additional item that the parties believed

 6    that was appropriate for Your Honor to address, which is the --

 7          JUDGE KUGLER:  I'm sorry, you're breaking up something

 8    terrible.  I can't hear anything you're saying.

 9          MS. LOCKARD:  Okay.  Let me try again.  I wasn't

10    moving around.

11          Victoria Lockard, Greenberg Traurig, for the defendants

12    and the joint defense group.

13          Your Honor, the last issue relates to the treater

14    deposition protocol and both parties have met and conferred on

15    this and there are some remaining disputes.  Plaintiffs and

16    defendants both included a submission in their materials on

17    this issue, and so we addressed it briefly with Judge Vanaskie

18    and I think the parties were in agreement that this is

19    something that is appropriate for you to address.

20          MR. NIGH:  Your Honor, this is Daniel Nigh for the

21    plaintiffs.  We agree that this is ripe to be addressed by Your

22    Honor.

23          This is Daniel Nigh for the plaintiffs.  I'm still here.

24    I am not sure if Judge Kugler is still here.

25          JUDGE VANASKIE:  This is Tom Vanaskie.  I am not sure

```
 1   if Judge Kugler is still here.

 2        Loretta, are you there?

 3        MS. SMITH:  Yes, Judge.  I am going to text Judge

 4   Kugler right now.

 5        JUDGE VANASKIE:  Okay.  Thank you.

 6        JUDGE KUGLER:  Hi, it's Judge Kugler.  I'm sorry, I

 7   lost the signal.

 8        So anyway.  Someone was speaking.  Ms. Lockard?

 9        MS. LOCKARD:  Oh, yes, Judge.  I don't know if you

10   heard any part of what I said, but, essentially, the remaining

11   issue is the parties are negotiating a treating physician

12   deposition protocol and there are some issues that we've been

13   unable to agree on with respect to the treaters.

14        JUDGE KUGLER:  Okay.

15        MS. LOCKARD:  So --

16        MR. NIGH:  Your Honor, this is Daniel Nigh for the

17   plaintiffs.  We agree that this issue is ripe for Your Honor to

18   address today.

19        JUDGE KUGLER:  Okay.  I'm listening.  I mean, I read

20   the letters, but go ahead.

21        MS. LOCKARD:  Sure.  I can start us off, Your Honor.

22        So there are a few disputes remaining.  The key dispute

23   where I believe we could use Your Honor's guidance relates to

24   the number of treating physician depositions that are to be

25   taken.  And in the process of negotiating the protocol for how
```

1    these depositions will be scheduled and conducted, plaintiffs'

2    counsel have suggested in their request that the depositions be

3    limited to two depositions, one of a prescriber and one of a

4    treater for each of the 28 bellwether plaintiffs.

5         So, you know, obviously, as you read our papers, you see

6    we disagree with that restriction, we don't find it to be

7    necessary and, in fact, believe it will pose significant

8    prejudice and burden to the defendants as they try to work up

9    these cases for trial.  In some cases these plaintiffs have

10   complex medical histories, multiple prescribers, multiple

11   treaters.

12        You know, for example, we have one plaintiff bellwether,

13   Mr. Garcia, he has at least four prescribers of the valsartan

14   at issue, he has three other treaters for hypertension who

15   prescribed other sartan drugs, and he has at least two

16   oncologists.  So he, alone, just this one plaintiff, you know,

17   has potentially nine treaters who could have relevant

18   information.  That's not to suggest we would necessarily need

19   to depose all nine, but a restriction, an arbitrary restriction

20   of two, will work an injustice, we think, on our ability to

21   work up these cases.

22        Another example, Ms. Kennedy has four prescribers.  She

23   has a breast surgeon, she has three key oncologists.

24        So, you know, in many of these cases, it's going to be

25   very difficult for the parties to agree on two.

1          Also, yesterday, in order to get the ball rolling while

2     we worked out some of these disputes, the parties actually

3     began to exchange some names of initial treaters for the nine

4     plaintiffs who have been deposed.  And the exercise just

5     illustrates why the limitation on two is really unworkable and

6     unfair because in many of these cases the parties identified

7     different treaters and we couldn't agree even on the first two

8     most significant treaters to be taken.  In some instances we

9     ended up with two totally different names for a total of four

10    treaters that the litigants feel need to be taken in order to

11    work the case up for trial.

12         So defendants, you know, have no interest in wasting

13    time, resources, taking unnecessary depositions, we're all

14    experienced counsel here, but we are talking about cases that

15    are being worked up for potential trial; and, you know, even

16    under Rule 30(a)(2)(A)(i), the parties are allowed to take up

17    to ten depositions per side without leave of court.  So the

18    fact that we are in an MDL situation should not provide, you

19    know, some excuse for severely restricting the number of

20    depositions that we are able to take of the treaters.

21         If defendants are acting unreasonably or noticing, you

22    know, peripheral third parties or treaters, then plaintiffs

23    certainly have a remedy in the order of a protective order for

24    seeking guidance from the Court, and we would certainly work

25    with both sides -- you know, both sides would work together to

 1    make sure that we don't end up with eight or ten treater

 2    depositions.  But to have an across-the-board arbitrary number

 3    applicable to every plaintiff we just think is unworkable.  We

 4    think we could initiate the process, work together, try to

 5    identify really the key treaters, get those depositions

 6    scheduled, and then if there is a dispute down the road, you

 7    know, we can come back to the Court on that and address those

 8    on a plaintiff-by-plaintiff basis.

 9         The last thing I'll say on this point is, you know,

10    plaintiffs made reference in their paper in *Benicar* there was a

11    limitation that was imposed, and, you know, we -- these

12    defendants were not in *Benicar*.  I don't know the intent behind

13    that, but I will say we've been in a number of -- both

14    plaintiffs and defendants have been in a number of other MDLs

15    where there were no restrictions, where the parties worked

16    together as experienced counsel to take the depositions that

17    were needed, and I think that we can certainly do that here.  I

18    mean, I could cite to you a number of MDLs where there were no

19    limitations.  It really is the exception to have a limitation

20    on treaters rather than the rule.  But without going through

21    each of those MDLs, I'll just say, you know, if we do need to

22    have some sort of limit imposed, I think that the federal

23    rules, you know, provide that ten -- ten-deposition limit per

24    side and I think that's what should be imposed, if anything.

25         So I'll stop there and let counsel, Mr. Nigh, respond on

1   that point.  There are some other issues that I think are maybe

2   less significant to the parties but which also need to be

3   worked out, but I think this is really the key dispute we need

4   to hear from Your Honor on.

5            JUDGE KUGLER:  Well, before we turn to Mr. Nigh,

6   presumably there is some method by which you are identifying

7   those physicians you want to depose, correct?

8            MS. LOCKARD:  Correct.

9            JUDGE KUGLER:  And that's probably based on the

10  records that you have and plaintiffs' fact statements, correct?

11           MS. LOCKARD:  That's correct, they are coming from the

12  physicians who were identified in the fact sheets and then we

13  are collecting those records.

14           JUDGE KUGLER:  So you have a pretty good idea as to

15  who the more important or most important physicians are for

16  each of these plaintiffs; isn't that right?

17           MS. LOCKARD:  I think that's fair, yes.

18           JUDGE KUGLER:  So, why can't we start with two

19  depositions, a prescriber and a treater, and then if you

20  believe, and you might, it's perfectly possible, I'm not

21  suggesting we should have an arbitrary limit of two, but if you

22  believe more are needed, why can't you ask plaintiffs and make

23  your case to the plaintiffs and if they don't agree, then I'll

24  do it.  How about that?

25           MS. LOCKARD:  You know, I don't think that's

1  unreasonable to start with two each.  And, you know, I think

2  the parties came to that conclusion on our own, in that, you

3  know, the process we went through yesterday in exchanging

4  names, you know, I think suggested that's a good approach, we

5  can start with two; but we don't want to be foreclosed or

6  limited and told, you know, or ordered in this treater protocol

7  that there shall only be two.  But we're willing to start with

8  two and, you know, take it from there and work through it.  I

9  agree that's a reasonable process.  But we're trying to get

10  this protocol finalized and that's one hurdle to that because

11  plaintiffs want the protocol to specifically include this

12  arbitrary limitation.

13       JUDGE KUGLER:  So let's start with the two, and if you

14  make a showing that you need additional, and you can't work it

15  out promptly with the plaintiffs' counsel, then I will decide

16  it.  Okay?

17       MS. LOCKARD:  Okay.  And that's perfectly reasonable.

18  We will -- we will start with two.  I understand where Your

19  Honor's coming from.  I just want to make clear for the Court

20  that we've already identified plaintiffs who are going to need

21  and we will have a good reason for seeking more than two.  So I

22  think --

23       JUDGE KUGLER:  Okay.

24       MS. LOCKARD:  -- it will be an unusual case that we

25  take two and stop.

1          JUDGE KUGLER:  I don't doubt you have identified.  See

2    if you can work it out with plaintiffs for additional ones; and

3    if not, then show good cause, the Court will permit you to take

4    more than two.  Okay?

5          MS. LOCKARD:  I think that's fair.  I think we can

6    proceed with that understanding.

7          JUDGE KUGLER:  All right.  What other issues do you

8    want to address today?

9          MS. LOCKARD:  On the treating protocol, there is one

10   additional -- or a couple additional issues.  One of them

11   relates to language that plaintiffs want included that would

12   require the defendant companies to identify, you know, any

13   contacts that one of their sales reps or businesspersons made

14   with any of the thousands of treating physicians in this case.

15   So we've got over 600 plaintiffs.  If you assume each of them

16   has four or five treating physicians, at least, at issue, we're

17   talking about thousands of treaters out there, you know, some

18   of who, you know, we may not even know who they are yet.

19         Plaintiffs want the treating protocol to require that

20   defendants identify, provide notice, anytime one of defendants'

21   sales reps or business operation people makes any contact with

22   any of these thousands of physicians for any reason.  And we're

23   not talking about ex parte conversations between defendants'

24   representatives and plaintiffs' treaters involving the issues

25   in this case or the valsartan or the sartans.

1          We are talking about a scenario where, take Teva,

2     Teva's, you know, primarily a generic manufacturer but they are

3     the innovator of certain branded drugs, so they do have some

4     sales reps.  Say a sales rep visits a treating physician in

5     Omaha, Nebraska, to discuss a sleep aid medication, nothing to

6     do with this case, nothing to do with valsartan.  Under

7     plaintiffs' proposal, Teva would have to -- my team would have

8     to determine when that meeting took place, what was discussed,

9     who was involved, and we would have to report that to plaintiff

10    when it has nothing at all in the world to do with this case

11    and it interrupts the company's normal business operations.

12         You know, another scenario where this would play out is,

13    you know, in instances where, say, a plaintiff -- excuse me, a

14    patient, a non-plaintiff, a patient is taking, say, a sleep aid

15    medication made by Teva.  Say the patient calls Teva to say,

16    hey, you know, I've gotten hives, hives or some side effect.

17    Teva then, from its pharmacovigilance department, may need to

18    follow up with that patient, maybe the physician, to talk about

19    a report of hives from a drug that's not at issue in this

20    litigation in Omaha.  I mean, it's so tenuous that it would

21    require us to do all of this work for a listing that has no

22    bearing whatsoever, whatsoever, in this litigation.  So we

23    oppose that.

24         The remedy is when the physician is deposed, plaintiffs

25    can certainly ask that physician, have you had any contact with

1    anybody from Teva for any reason, they can ask about it in the

2    deposition.  But to require us to do that legwork to try to put

3    together reports of all of this we think is highly

4    unreasonable, never seen it done in litigation before, and it

5    has just no relevance to this litigation at all.  It's just a

6    wild-goose chase.  So that's issue number two.

7                 JUDGE KUGLER:  Who wants to speak for the plaintiffs?

8                 MR. NIGH:  Your Honor, this is Daniel Nigh for the

9    plaintiffs.

10              In our meet and confers, and really the purpose of this

11   language -- it's language that was in the *Benicar* Treater

12   Deposition Protocol.  The purpose of this language is simply to

13   identify -- unfortunately, there have been past litigations

14   where sales reps have reached out to treater doctors and spoken

15   to them about plaintiffs specifically, and in large part when

16   we were able to uncover it in some of those cases, it was done

17   as an attempt to gain an advantage in that case because of

18   their relationship directly with that doctor.  That's what we

19   are seeking to have disclosed.

20              And so what we're asking here is if any sales rep has a

21   conversation with a doctor that they detail specifically about

22   one of our plaintiffs that they would have to disclose that

23   information.  I don't think that that's burdensome.  I think

24   there could be simply a letter to any of the sales reps that

25   they could send out, simply a mass production -- or a mass

1  communication that says if you have a contact with any of the

2  doctors about any specific plaintiffs in the litigation, then

3  you need to let us know.  Frankly, that's what we're capturing

4  here.  We're not capturing some scenario where you have to log

5  every single communication about every single type of issue

6  with any treating doctor.  Very specifically, what we are

7  asking here is if it has to do with a plaintiff, then we want

8  to know the details of that communication because that can be

9  extremely relevant in the case.

10          JUDGE KUGLER:  So you want all contact with all

11  employees of all defendants with all treating physicians?

12          MR. NIGH:  No, only if it has --

13          JUDGE KUGLER:  That would have to do with any

14  plaintiff in the case.

15          MR. NIGH:  That's right, only if it has to do with the

16  plaintiff.

17          JUDGE KUGLER:  How many plaintiffs are there

18  currently?

19          MR. NIGH:  There's a little over 600.

20          JUDGE KUGLER:  How many treating physicians have we

21  identified so far?

22          MR. NIGH:  From -- I mean, I would -- I would venture

23  to say that there's an average of ten that are identified per

24  case, so that could be 6,000, but there's going to be some

25  overlap between those so I wouldn't be able to tell you the

1    number of physicians.

2         JUDGE KUGLER:  So you want each defendant to find out

3    from its employees if that employee has had any contact with

4    any of these 6,000 doctors about any of the 600 plaintiffs?

5         MR. NIGH:  That's right.  I mean, that's something

6    that should -- that we would be entitled to anyways in terms of

7    discovery that's in a DFS.

8         JUDGE KUGLER:  Well, I mean, you can ask the doctors

9    when you depose them, right?

10        MR. NIGH:  We could.

11        JUDGE KUGLER:  Isn't that a much easier way to do it?

12        MR. NIGH:  I mean, you know, in terms of if -- if

13   there's not going to be any advance -- I hear some other noise

14   on the line here.

15        Can counsel mute?  Okay.

16        If there's -- if there's not going to be -- you know,

17   the other -- the other reason this comes up is because of the

18   tit for tat where the defendants are looking to also have us

19   log our communications with treating physicians, and so in

20   response I think that this is one of the pieces of language

21   that was put in there that if you're going to be asking us to

22   log our communications and send letters beforehand, then we

23   should be able to have the same response from your employees

24   who have direct contact with those doctors.

25        So if the -- if the response is, you know, you can just

1    depose the doctor, well, I think that that's a fair compromise

2    the other direction, that if we had a conversation with the

3    doctor, that they can just depose the doctor for that

4    information as well.

5         JUDGE KUGLER:  Sounds like a good idea.  I don't even

6    know how these letters -- how they'd even send these letters

7    out to all the employees because they would have to list

8    somewhere the 6,000 doctors and the 600 plaintiffs and you

9    would have to send a book to every one of their employees.  So

10   that isn't going to work.

11       Ask the doctors if they've had any contact with any

12   salespeople of any of the defendants about the patient and we

13   will go from there.  Okay?

14        MR. NIGH:  Yes, Your Honor.

15        JUDGE KUGLER:  All right.  What's next?

16        MS. LOCKARD:  So, Your Honor, Victoria Lockard again.

17   The tit for tat issue that I think Mr. Nigh's referencing I

18   don't see on parallel at all.  And I know we've moved past the

19   issue regarding defendants' contact, but our issue on

20   plaintiffs' contact is a little bit different and what we're

21   worried about is that, you know, we're not allowed, on the

22   defense side, to meet with these physicians in an ex parte

23   capacity to talk about the issues in the case or to talk about

24   plaintiffs or to show them documents.  But plaintiffs' counsel

25   representing plaintiffs can do that and they do do that in

1  these MDLs in the litigation, and they meet with the doctors

2  before the deposition and they talk about the drug and the

3  defendants and the plaintiffs and the care, and they, in some

4  instances, they show them documents, documents that aren't even

5  in the medical records, company documents, public documents,

6  FDA documents.

7          And so what we think is fair is that plaintiffs' counsel

8  should have to disclose if they meet with one of these treaters

9  to talk about the case for the purpose of prepping for a

10  deposition and they provide documents or show documents to

11  prepare the treater for the deposition, we think that we should

12  be entitled to know what those documents are.  And so it's not

13  a log of communication.  It's really, you know, who are you

14  meeting with, plaintiffs' counsel, the treater, and what are

15  you providing them?  And we can ask the doctors about it at the

16  deposition, you know, and they're willing to do that, but we

17  need to know what the documents are that plaintiffs are

18  providing and we should -- we ought to be able to get a copy of

19  those in time to be able to ask about those documents at the

20  deposition.  That's what this issue number three is about.

21          JUDGE KUGLER:  Well, I think I'm going to tell you,

22  Ms. Lockard, that you need to ask the doctors in the deposition

23  what contact they have had with plaintiffs' counsel, when it

24  took place, what was said, what they were shown.  I think

25  that's the only way this is going to work.

1          I think it's entirely too burdensome to make plaintiffs'

2     counsel send you, which might even be work product, to be

3     honest with you, I don't know, to send you in advance a summary

4     of what they showed and what they spoke to these doctors about.

5     So I'm not going to permit that.

6          Ask them at the deposition.  If they indicate that they

7     saw a document, you certainly can make a demand for that

8     document if you don't already have it.  I imagine you are going

9     to have them.

10         Anyway, what's next?

11          MS. LOCKARD:  You know, there are some minor issues I

12    think that relate to questioning of scheduling and things like

13    that.  You know, I think with the larger issues being resolved,

14    we'll probably be able to work these out.

15         Mr. Nigh, do you want to try to see if we can get things

16    squared away from here or do you feel like there are issues we

17    need to address with the Judge?

18          MR. NIGH:  I agree.  The only one that I do think that

19    we should discuss is the winnowing of the bellwether pool.  And

20    I just wanted to address that, with your Court's direction on

21    the two depositions, and then additional with good cause, I

22    believe that going back through your prior ruling in March, and

23    we quoted that language where you wanted to see some of the

24    doctor depositions, the plaintiff depositions, I wanted to

25    address with the Court that we've gone through now, of the

1    first ten plaintiff depositions that were to be taken before

2    June 1st, we now have nine of those depositions, they were

3    taken.  There was only one that hasn't been taken yet because

4    the plaintiff contracted COVID; and like many cancer patients,

5    when they contract COVID, they usually have more complications

6    as did this client.

7            So, basically, at this point, I mean, we're seeing

8    progress that plaintiffs are going to take these depositions,

9    we've got many more of those 28 that have been scheduled, and

10   we think that they're going to be taken.  We don't think

11   there's going to be a natural winnowing because of plaintiffs'

12   depositions or because of doctor depositions.  There was one

13   statement that the defense pointed to where one of the 28

14   passed away and they don't have something affirmative from the

15   family yet as to whether they are going to pursue the case.

16   But I represent many clients in this case where they've passed

17   away and we give the family time to grieve and usually some

18   time thereafter they make the decision that they want to pursue

19   forward.  I mean, the vast majority of them do.  So I don't

20   think even that is a scenario where we see any sort of natural

21   winnowing other than it just kind of points out the need for us

22   to try to progress these cases quickly because plaintiffs do

23   pass away, unfortunately, they have cancer here.

24           But the big picture is that plaintiffs are motivated to,

25   you know, have their case heard, I mean, they're motivated to

1    pursue, and, you know, that's -- in large part we see that

2    that's because they have cancer, it's a serious injury, and so

3    they're motivated in these cases.

4         So I think that in March we had a discussion.  We had

5    put forward a proposal to winnow the pool down from 28 to eight

6    or ten, and Your Honor said let's revisit that issue in June so

7    we put it back on the schedule; but I think at the same point,

8    Your Honor was talking about let's see what happens with the

9    plaintiff depos.  I want to address Your Honor that we haven't

10   seen any winnowing, that they're going to continue to have

11   those taken.  And then you wanted to see, you know, some of the

12   doctors' depositions before we discussed winnowing.

13        Our position has been that, you know, we believe that 28

14   cases of pursuing the doctor depositions is just unnecessary.

15   We will have a lot of cases where, you know, especially if the

16   thought is to winnow cases after doctor depositions, that we're

17   going to have a lot of cases that we take doctor depositions

18   for really, you know, no major purpose, it could be

19   accomplished by winnowing it before we take all those doctor

20   depositions.

21        So I think in terms of -- first off, we don't want to

22   waste those physicians' -- their resources, you know, and their

23   time, especially at a time where we're finally getting through

24   this COVID stage; but, in addition, we just feel like, you

25   know, that doing 28 cases of doctor depositions just, at this

1  stage, you know, may not be the best use of resources either.

2      But we understood Your Honor's point, which was, get

3  through some of these doctor depositions, get through the

4  plaintiff depositions, and then come back to Your Honor to talk

5  about winnowing.

6      So I think it may be a little early to talk about

7  winnowing because we haven't had any of the doctor deposition

8  yet, and with your Court's guidance on the two depositions per

9  case, with defendants' ability to get additional depositions

10 with good cause, but I did want to continue to put that out

11 there, you know, we spoke about it in March, the defendants

12 highlighted it in their agenda that you had already declined to

13 winnow the agreed-upon bellwether pool.  That's not what

14 occurred.  We put the quote in our agenda, which was, Your

15 Honor wanted to come back in June and see what was the progress

16 that we had and whether or not there was this natural

17 winnowing, and to raise it back with Your Honor after we've had

18 these plaintiff depositions and some of the doctor depositions.

19      But to the point that Victoria was speaking, the other

20 issues in the treater deposition protocol, I do think that we

21 can work out.

22      JUDGE KUGLER:  Great.  Just so you know, and I know

23 you're not asking for a decision today on the winnowing, I'm

24 not -- I'm not favorably inclined at this time to do any

25 winnowing.  I know there's a lot of work to be done, I know

1  it's a lot of burden, but I don't think it's an undue burden

2  given the scope of this case and what it's becoming.  It grows

3  every week, it grows almost every day, but, you know, keep at

4  it and don't be afraid to raise the issue again.  But at this

5  point let's just full speed ahead.  Okay?

6          MR. NIGH:  Thank you, Your Honor.

7          JUDGE KUGLER:  All right.  Anything else?

8          MS. LOCKARD:  Not from the defendants, Your Honor.

9          JUDGE KUGLER:  All right.  Thank you everybody.  Stay

10  safe.  I'm optimistic we will see you in the courthouse in the

11  not-too-distant future.  Thank you.

12          MR. SLATER:  Thank you, Your Honor.

13          MS. LOCKARD:  Thank you.

14          JUDGE VANASKIE:  Thank you very much.

15          (The proceedings concluded at 12:11 p.m.)

16          - - - - - - - - - - - - - - - -

17

18          I certify that the foregoing is a correct transcript

19  from the record of proceedings in the above-entitled matter.

20

21  /S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR
    Court Reporter/Transcriber

22

23  June 28, 2021
        Date

24

25

## /

/S [1] - 73:21

## 0

07068 [1] - 1:15
08101 [1] - 1:8
08540 [2] - 2:18

## 1

100 [1] - 2:3
103 [1] - 1:14
10:00 [2] - 1:9, 3:3
11:24 [1] - 51:4
12 [3] - 4:20, 19:20, 20:2
12:11 [1] - 73:15
12th [1] - 52:2
13 [1] - 9:11
13th [1] - 6:25
14th [1] - 49:4
1500 [1] - 2:6
17th [1] - 2:9
1835 [1] - 1:17
19-md-02875-RBK-KMW [1] - 1:4
19102 [1] - 2:6
19103 [2] - 1:18, 2:10
1st [1] - 70:2

## 2

2,700 [1] - 44:4
20,000 [1] - 10:10
2017 [8] - 14:4, 14:12, 15:24, 17:12, 20:2, 21:4, 21:23, 21:24
2018 [5] - 14:14, 15:19, 15:21, 28:14, 28:19
2020 [2] - 34:1, 38:11
2021 [2] - 1:8, 73:23
21 [1] - 2:18
21-day [1] - 9:9
22nd [1] - 46:22
23rd [2] - 32:7, 32:9
25 [2] - 1:8, 44:4
2500 [1] - 2:14
27 [3] - 15:24, 21:23, 21:24
28 [7] - 57:4, 70:9, 70:13, 71:5, 71:13, 71:25, 73:23
2900 [1] - 1:17
2nd [1] - 31:17

## 3

3 [3] - 2:3, 45:15
3,000 [1] - 44:3

## 30

30 [3] - 2:9, 27:25, 28:1
30(a)(2)(A)(i [1] - 58:16
30,000 [1] - 10:11
30305 [1] - 2:13
316 [1] - 1:20
32502 [1] - 1:21
3333 [1] - 2:14

## 4

4 [1] - 2:3
4,700 [1] - 10:14
4th [3] - 1:7, 30:25, 52:14

## 5

5 [1] - 49:10

## 6

6,000 [3] - 65:24, 66:4, 67:8
600 [5] - 1:20, 62:15, 65:19, 66:4, 67:8
609-774-1494 [1] - 1:23
6th [1] - 31:10

## 7

7,000 [8] - 35:10, 35:11, 35:15, 39:17, 40:20, 42:8, 42:14, 42:24
78257 [1] - 2:3

## 8

8 [2] - 45:14, 47:7

## 9

9 [2] - 44:25, 47:7
9th [5] - 31:2, 31:5, 31:12, 32:1, 32:22

## A

a.m [2] - 3:3, 51:4
ability [2] - 57:20, 72:9
able [17] - 8:6, 10:12, 11:21, 12:4, 39:11, 48:15, 48:25, 49:1, 49:15, 50:17, 58:20, 64:16, 65:25, 66:23, 68:18, 68:19, 69:14
above-entitled [1] - 73:19
Abraham [2] - 46:10, 46:14
absolutely [3] - 20:11, 28:22, 29:7
acceptable [1] - 31:12
accommodate [1] - 7:15
accomplish [1] - 33:6
accomplished [1] - 71:19
accordance [1] - 4:19
account [2] - 9:24, 30:25
accusations [1] - 21:7
acknowledge [1] - 9:6
across-the-board [1] - 59:2
act [1] - 9:17
Actavis [2] - 2:15, 2:16
acting [2] - 39:19, 58:21
ACTION [1] - 1:3
actual [3] - 14:18, 36:10, 38:3
ad [1] - 28:13
Adam [2] - 3:22, 16:23
ADAM [1] - 1:14
add [1] - 11:22
addition [1] - 71:24
additional [10] - 10:16, 13:21, 34:12, 55:5, 61:14, 62:2, 62:10, 69:21, 72:9
additionally [1] - 46:21
address [22] - 4:15, 5:16, 12:4, 12:6, 13:9, 17:16, 21:25, 22:8, 42:1, 46:16, 47:5, 49:11, 50:4, 55:6, 55:19, 56:18, 59:7, 62:8, 69:17, 69:20, 69:25, 71:9
addressed [7] - 18:17, 45:13, 47:2, 47:3, 47:8, 55:17, 55:21
addressing [6] - 11:4, 13:1, 45:16, 46:11, 47:10, 50:3
adequacy [1] - 21:20
adjust [1] - 31:4
advance [2] - 66:13, 69:3
advantage [1] - 64:17
advising [1] - 53:23
affiliation [1] - 11:24
afraid [1] - 73:4
afternoon [1] - 48:5
agenda [13] - 4:14, 15:7, 17:8, 32:17, 45:14, 45:15, 47:8, 47:9, 47:25, 50:6,

28:22, 29:7
agendas [1] - 47:13
ago [9] - 16:25, 17:2, 17:4, 20:16, 24:12, 26:17, 33:11, 40:5, 46:22
agree [10] - 9:20, 35:16, 55:21, 56:13, 56:17, 57:25, 58:7, 60:23, 61:9, 69:18
agreed [8] - 7:14, 13:13, 33:11, 35:17, 37:22, 40:18, 40:19, 72:13
agreed-upon [1] - 72:13
agreement [8] - 36:22, 39:7, 39:12, 40:5, 40:9, 40:11, 43:6, 55:18
ahead [7] - 5:10, 18:9, 28:1, 37:4, 47:20, 56:20, 73:5
aid [2] - 63:5, 63:14
aided [1] - 1:25
allegations [8] - 13:24, 14:1, 14:16, 14:21, 15:13, 26:25, 27:6, 27:17
allow [1] - 7:8
allowed [2] - 58:16, 67:21
almost [3] - 38:23, 43:20, 73:3
Aloian [1] - 54:13
ALOIAN [1] - 54:14
alone [1] - 57:16
ALSO [1] - 2:20
ambiguity [2] - 36:19, 43:21
amount [3] - 31:11, 31:15, 37:16
analogize [1] - 23:9
analysis [2] - 18:5, 21:4
analytical [1] - 28:15
AND [1] - 1:10
ANNA [1] - 2:23
Anna [1] - 4:8
another's [1] - 7:15
anticipate [1] - 52:8
Antonio [1] - 2:3
anytime [1] - 62:20
anyway [4] - 52:17, 54:3, 56:8, 69:10
anyways [1] - 66:6
API [10] - 14:13, 34:5, 34:25, 36:17, 37:11, 37:23, 38:23, 39:2, 41:21, 42:17

51:21, 72:12, 72:14
apologize [1] - 11:12
appeal [2] - 8:19, 11:16
appearance [1] - 47:6
applicable [1] - 59:3
appreciate [3] - 4:22, 39:24, 54:8
approach [1] - 61:4
appropriate [9] - 17:10, 18:22, 21:9, 21:17, 27:12, 27:13, 27:16, 55:6, 55:19
April [2] - 28:14, 28:18
arbitrary [4] - 57:19, 59:2, 60:21, 61:12
argued [1] - 39:9
argument [4] - 11:16, 12:3, 35:2, 35:20
asserted [1] - 5:1
asserting [1] - 9:9
assertions [2] - 5:14, 21:11
assistance [1] - 54:24
ASSOCIATES [1] - 2:5
assume [4] - 5:15, 41:17, 51:14, 62:15
assuming [1] - 11:15
assurance [1] - 4:22
astounding [1] - 20:4
Atlanta [1] - 2:14
attached [1] - 17:2
attempt [3] - 24:8, 38:20, 64:17
attend [2] - 4:9, 48:22
attention [2] - 12:20, 20:3
attorneys [1] - 48:20
August [4] - 9:3, 34:1, 34:7, 35:1
authorities [1] - 39:16
automobile [1] - 3:18
available [2] - 46:10, 49:7
average [1] - 65:23
await [1] - 9:14
aware [5] - 14:7, 19:11, 26:6, 26:7, 39:9
awhile [1] - 16:25

## B

background [1] - 47:23
backtracking [1] - 35:18
ball [1] - 58:1
based [5] - 5:17, 15:3, 24:1, 32:3, 60:9
baseless [2] - 13:23, 15:13

**basis** [3] - 9:18, 17:13, 59:8
**batch** [3] - 34:24, 37:23, 42:14
**batches** [11] - 35:10, 35:11, 35:15, 36:12, 36:16, 36:21, 39:17, 42:8, 42:15, 42:24, 43:3
**Bates** [12] - 35:12, 35:14, 36:9, 36:23, 39:25, 41:7, 41:14, 41:15, 41:20, 42:7, 42:19, 44:3
**Baylen** [1] - 1:20
**bearing** [1] - 63:22
**become** [2] - 11:19, 44:17
**becoming** [1] - 73:2
**bed** [2] - 24:12, 36:25
**beforehand** [1] - 66:22
**began** [1] - 58:3
**beginning** [1] - 23:24
**behalf** [2] - 47:21, 50:1
**behind** [2] - 3:17, 59:12
**behold** [1] - 15:24
**believes** [1] - 14:20
**bellwether** [5] - 50:9, 57:4, 57:12, 69:19, 72:13
**Benicar** [3] - 59:10, 59:12, 64:11
**best** [1] - 72:1
**bet** [1] - 26:23
**better** [1] - 3:17
**between** [6] - 34:25, 40:11, 43:25, 49:3, 62:23, 65:25
**bide** [1] - 10:23
**big** [1] - 70:24
**binding** [1] - 40:1
**bit** [3] - 8:5, 23:11, 67:20
**Bloomberg** [4] - 2:23, 4:9, 16:15, 16:16
**board** [1] - 59:2
**Boldt** [3] - 47:11, 48:1, 53:7
**BOLDT** [4] - 2:2, 47:11, 49:21, 53:7
**book** [1] - 67:9
**bothers** [1] - 32:8
**bought** [1] - 23:10
**branded** [1] - 63:3
**break** [1] - 18:2
**breaking** [4] - 14:20, 22:20, 25:4, 55:7

**breast** [1] - 57:23
**BRENT** [1] - 2:5
**Brief** [1] - 51:4
**briefed** [1] - 8:12
**briefing** [1] - 8:11
**briefly** [2] - 24:18, 55:17
**briefs** [1] - 12:10
**bring** [4] - 22:14, 43:24, 51:23, 54:6
**bringing** [1] - 24:13
**brings** [1] - 27:5
**broad** [2] - 15:4, 27:20
**broader** [2] - 35:13, 44:5
**broke** [1] - 23:4
**Brooks** [2] - 54:15, 54:19
**brought** [2] - 12:20, 26:17
**brush** [1] - 15:4
**Bryant** [1] - 54:15
**Building** [2] - 1:7, 2:3
**burden** [2] - 57:8, 73:1
**burdensome** [4] - 40:22, 41:3, 64:23, 69:1
**bursting** [1] - 24:22
**business** [2] - 62:21, 63:11
**businesspersons** [1] - 62:13
**BY** [9] - 1:14, 1:17, 1:20, 2:2, 2:5, 2:8, 2:9, 2:13, 2:13
**bye** [2] - 51:3
**bye-bye** [1] - 51:3

## C

**Calderon** [2] - 18:15, 29:19
**calendar** [3] - 5:22, 8:22, 32:12
**Camden** [2] - 1:8, 52:2
**camera** [1] - 21:11
**Camille** [5] - 1:22, 45:8, 51:16, 51:17, 73:21
**camillepedano@gmail.com** [1] - 1:23
**cancer** [3] - 70:4, 70:23, 71:2
**cannot** [2] - 28:21, 48:14
**capacity** [1] - 67:23
**capturing** [2] - 65:3, 65:4
**care** [1] - 68:3
**CASE** [1] - 1:5
**case** [26] - 15:18,

26:3, 30:3, 37:17, 38:17, 47:16, 53:14, 54:19, 58:14, 60:23, 61:24, 62:14, 62:25, 63:6, 63:10, 64:17, 65:9, 65:14, 65:24, 67:23, 68:9, 70:15, 70:16, 70:25, 72:9, 73:2
**case-specific** [1] - 47:16
**cases** [17] - 48:19, 52:25, 54:21, 57:9, 57:21, 57:24, 58:6, 58:14, 64:16, 70:22, 71:3, 71:14, 71:15, 71:16, 71:17, 71:25
**Cassandra** [1] - 54:14
**category** [1] - 12:10
**CCR** [1] - 73:21
**cell** [1] - 26:13
**certain** [10] - 13:13, 13:14, 13:15, 13:25, 14:24, 27:4, 27:5, 27:21, 38:19, 63:3
**certainly** [21] - 8:2, 8:17, 9:7, 9:11, 21:23, 23:7, 26:2, 30:2, 30:4, 31:3, 32:4, 32:17, 37:7, 40:19, 49:6, 53:25, 58:23, 58:24, 59:17, 63:25, 69:7
**certify** [1] - 73:18
**chain** [3] - 38:22, 39:1, 41:18
**chance** [1] - 47:14
**changed** [4] - 19:17, 23:19, 36:6, 46:11
**chase** [1] - 64:6
**check** [2] - 13:16, 33:4
**checked** [1] - 53:20
**Chen** [5] - 7:17, 11:14, 12:8, 12:9, 12:10
**Chen's** [7] - 4:16, 6:3, 7:16, 10:10, 11:5, 11:9, 12:15
**Cheryll** [2] - 18:15, 29:18
**China** [2] - 6:8, 11:14
**Chinese** [3] - 12:11, 24:1, 29:13
**choice** [1] - 26:23
**Chris** [1] - 3:21
**chromatography** [1] - 20:23
**circumstances** [1] - 21:9
**cite** [1] - 59:18
**cited** [2] - 37:6, 43:10

**CIVIL** [1] - 1:3
**civil** [2] - 52:4
**claim** [1] - 8:10
**clarify** [1] - 42:12
**clarity** [3] - 36:5, 36:22, 36:25
**clean** [1] - 21:1
**clear** [18] - 7:11, 7:21, 15:2, 15:15, 23:23, 25:5, 26:4, 27:19, 28:4, 28:6, 28:8, 28:10, 29:1, 29:2, 34:23, 40:15, 43:18, 61:19
**clearly** [5] - 20:21, 35:1, 36:24, 37:25, 38:3
**Clerk** [2] - 2:21, 33:4
**client** [8] - 27:3, 34:13, 34:15, 37:21, 40:24, 41:3, 70:6
**clients** [1] - 70:16
**clock** [1] - 31:25, 32:10, 32:25
**close** [1] - 26:11
**closely** [1] - 27:7
**closer** [1] - 10:11
**closure** [1] - 36:8
**CMC** [1] - 49:5
**Cohen** [1] - 1:7
**coincides** [1] - 7:1
**colleague** [2] - 10:4, 40:12
**colleagues** [2] - 18:13, 18:15
**collected** [8] - 10:9, 10:12, 24:25, 25:1, 25:12, 25:17, 25:24, 29:9
**collecting** [1] - 60:13
**collection** [1] - 44:6
**color** [1] - 15:5
**comfortable** [1] - 5:24
**coming** [4] - 20:8, 49:2, 60:11, 61:19
**Commencing** [1] - 1:9
**committee** [2] - 52:12, 52:14
**communication** [5] - 34:22, 65:1, 65:5, 65:8, 68:13
**communications** [2] - 66:19, 66:22
**companies** [2] - 37:16, 62:12
**company** [3] - 23:6, 23:16, 68:5
**company's** [1] - 63:11
**compare** [1] - 44:8
**compel** [5] - 30:8,

30:22, 31:21, 42:2
**complete** [5] - 13:12, 17:18, 28:24, 31:24, 38:10
**completely** [3] - 14:8, 17:10, 27:1
**completeness** [1] - 32:16
**completion** [2] - 7:1, 26:8
**complex** [1] - 57:10
**complications** [1] - 70:5
**comply** [1] - 24:23
**comprehensive** [2] - 30:22, 32:2
**compromise** [1] - 67:1
**computer** [2] - 1:25, 22:20
**computer-aided** [1] - 1:25
**conceded** [1] - 28:20
**concern** [3] - 16:14, 18:17, 48:16
**concerned** [2] - 44:4, 44:5
**concerning** [1] - 22:11
**concerns** [1] - 32:16
**concluded** [1] - 73:15
**conclusion** [1] - 61:2
**concrete** [3] - 4:22, 33:13
**conduct** [6] - 4:12, 21:10, 21:11, 22:4, 33:1, 49:9
**conducted** [2] - 14:12, 57:1
**confer** [23] - 4:23, 5:17, 6:9, 6:14, 6:17, 10:8, 13:6, 13:7, 13:13, 13:17, 18:12, 19:3, 22:16, 23:2, 23:14, 34:8, 40:19, 46:3, 46:25, 47:14, 48:3, 48:4, 48:10
**conference** [8] - 4:10, 4:12, 4:13, 11:5, 21:18, 49:10, 50:18, 53:15
**CONFERENCE** [1] - 1:5
**conferred** [2] - 46:21, 55:14
**conferring** [1] - 4:10
**confers** [4] - 28:20, 36:6, 37:14, 64:10
**confidence** [3] - 16:18, 18:21, 21:19
**confidential** [2] - 16:16, 21:13

**confidentiality** [10] - 16:11, 16:21, 17:6, 17:7, 18:3, 18:11, 18:14, 18:15, 18:23, 22:1
**confirm** [2] - 38:10, 40:1
**confirmation** [1] - 33:14
**confirmed** [1] - 52:12
**confused** [1] - 40:3
**confusing** [1] - 39:13
**confusion** [1] - 41:14
**connect** [1] - 14:1
**consequences** [1] - 21:15
**consider** [2] - 7:3, 15:11
**considering** [1] - 8:19
**constant** [1] - 34:21
**contact** [11] - 50:17, 62:21, 63:25, 65:1, 65:10, 66:3, 66:24, 67:11, 67:19, 67:20, 68:23
**contacts** [1] - 62:13
**contain** [1] - 35:15
**contains** [1] - 18:4
**contamination** [1] - 19:19
**contemplated** [1] - 39:4
**contested** [2] - 21:7, 47:1
**continue** [11] - 12:20, 16:8, 32:15, 48:10, 48:25, 49:12, 50:4, 50:18, 54:20, 71:10, 72:10
**Continued** [1] - 2:1
**contract** [1] - 70:5
**contracted** [1] - 70:4
**contradict** [1] - 14:25
**convenient** [1] - 5:19
**conversation** [2] - 64:21, 67:2
**conversations** [1] - 62:23
**COON** [1] - 2:5
**Cooper** [1] - 1:7
**copied** [1] - 19:18
**copy** [6] - 19:15, 19:16, 19:19, 37:18, 37:19, 68:18
**correct** [12] - 9:8, 12:8, 42:25, 43:1, 43:4, 46:12, 52:19, 60:7, 60:8, 60:10, 60:11, 73:18
**correspondence** [2] -

38:9, 43:25
**Cotes** [1] - 53:22
**counsel** [20] - 6:5, 15:12, 25:20, 28:7, 31:3, 38:9, 39:24, 48:1, 48:13, 57:2, 58:14, 59:16, 59:25, 61:15, 66:15, 67:24, 68:7, 68:14, 68:23, 69:2
**counsel's** [2] - 8:19, 39:12
**count** [3] - 8:9, 10:13
**counted** [1] - 39:1
**country** [2] - 12:1, 49:19
**country's** [1] - 37:11
**counts** [1] - 19:25
**couple** [5] - 7:19, 8:4, 22:7, 46:22, 62:10
**course** [4] - 6:23, 7:16, 40:25, 50:9
**court** [5] - 25:22, 47:16, 51:13, 51:24, 58:17
**COURT** [6] - 1:1, 25:3, 25:6, 45:9, 51:15, 51:18
**Court** [17] - 1:22, 5:12, 16:18, 17:4, 17:8, 22:2, 25:20, 28:8, 28:20, 33:4, 49:2, 58:24, 59:7, 61:19, 62:3, 69:25, 73:21
**Court's** [5] - 10:18, 15:5, 49:14, 69:20, 72:8
**courthouse** [2] - 52:6, 73:10
**Courthouse** [1] - 1:7
**courthouses** [1] - 52:3
**Courtroom** [1] - 2:22
**courtrooms** [1] - 52:4
**covered** [1] - 45:14
**covering** [1] - 4:12
**COVID** [6] - 48:16, 48:17, 49:17, 70:4, 70:5, 71:24
**CRC** [1] - 73:21
**created** [1] - 19:17
**criminal** [1] - 52:5
**CRR** [1] - 73:21
**crying** [1] - 27:6
**crystalize** [1] - 25:21
**current** [1] - 35:6
**custodial** [8] - 4:16, 4:19, 6:3, 8:8, 10:10, 11:10, 19:10, 19:20
**custodian** [1] - 19:11

**custodians** [2] - 13:15, 19:21

**D**

**dam** [1] - 24:22
**Daniel** [6] - 49:25, 53:2, 55:20, 55:23, 56:16, 64:8
**DANIEL** [1] - 1:20
**darndest** [1] - 28:5
**data** [11] - 19:7, 20:17, 21:2, 24:2, 24:3, 24:16, 24:25, 25:12, 25:17, 26:10, 37:16
**data's** [1] - 20:25
**Date** [1] - 73:23
**date** [7] - 19:17, 19:18, 19:25, 22:14, 30:17, 51:23, 54:6
**dates** [5] - 6:12, 7:11, 8:18, 8:22, 36:24
**DAVIS** [1] - 2:13
**days** [2] - 31:11, 46:22
**de** [2] - 46:20, 46:23
**de-designated** [1] - 46:23
**de-designations** [1] - 46:20
**deadline** [7] - 10:18, 19:3, 21:14, 32:22, 32:24, 33:13, 44:25
**deal** [1] - 21:19
**dealing** [1] - 45:2
**deals** [1] - 45:11
**Debbie** [1] - 54:13
**December** [5] - 20:2, 23:25, 24:7, 26:6
**decide** [2] - 24:10, 61:15
**decides** [1] - 6:24
**decision** [8] - 9:8, 9:10, 9:15, 21:19, 44:12, 70:18, 72:23
**decisions** [1] - 9:18
**declaration** [1] - 22:20
**DeClerk** [3] - 53:11, 53:14, 53:18
**declined** [1] - 72:12
**defendant** [3] - 38:25, 62:12, 66:2
**Defendants** [3] - 2:10, 2:15, 2:19
**defendants** [22] - 32:23, 38:21, 47:22, 48:21, 50:13, 52:21, 52:24, 55:4, 55:11, 55:16, 57:8, 58:12, 58:21, 59:12, 59:14, 62:20, 65:11, 66:18, 67:12, 68:3, 72:11,

73:8
**defendants'** [9] - 45:15, 47:6, 47:9, 47:24, 62:20, 62:23, 67:19, 72:9
**defense** [10] - 17:9, 19:3, 31:11, 50:6, 52:22, 53:12, 54:18, 55:12, 67:22, 70:13
**defer** [2] - 6:2, 10:4
**deficiencies** [5] - 15:16, 27:20, 30:5, 30:9, 30:17
**deficiency** [2] - 31:19, 31:22
**definition** [1] - 7:20
**delay** [1] - 8:17
**deliberately** [1] - 19:14
**demand** [1] - 69:7
**demonstrative** [1] - 14:24
**denied** [1] - 11:17
**department** [1] - 63:17
**depos** [1] - 71:9
**depose** [5] - 57:19, 60:7, 66:9, 67:1, 67:3
**deposed** [6] - 11:14, 12:1, 12:14, 20:15, 58:4, 63:24
**deposition** [27] - 4:16, 5:21, 6:4, 6:7, 6:12, 7:6, 7:7, 9:2, 9:4, 9:14, 11:5, 11:10, 17:3, 48:21, 55:14, 56:12, 59:23, 64:2, 68:2, 68:10, 68:11, 68:16, 68:20, 68:22, 69:6, 72:7, 72:20
**Deposition** [1] - 64:12
**depositions** [36] - 20:14, 44:10, 47:7, 48:11, 48:15, 56:24, 57:1, 57:2, 57:3, 58:13, 58:17, 58:20, 59:2, 59:5, 59:16, 60:19, 69:21, 69:24, 70:1, 70:2, 70:8, 70:12, 71:12, 71:14, 71:16, 71:17, 71:20, 71:25, 72:3, 72:4, 72:8, 72:9, 72:18
**Deputy** [1] - 2:22
**describe** [1] - 25:16
**described** [1] - 20:18
**designated** [2] - 21:12, 46:23
**designations** [1] - 46:20

**destruction** [1] - 26:25
**detail** [1] - 64:21
**detailed** [3] - 32:17, 34:16, 34:18
**details** [1] - 65:8
**detection** [1] - 14:13
**determination** [2] - 6:14, 46:2
**determine** [4] - 6:18, 46:25, 47:1, 63:8
**device** [6] - 23:5, 23:23, 24:24, 25:16, 26:9, 26:10
**devices** [7] - 22:11, 22:12, 23:3, 25:11, 25:16, 26:5, 27:4
**DFS** [1] - 66:7
**different** [7] - 12:10, 12:13, 13:8, 43:15, 58:7, 58:9, 67:20
**difficult** [2] - 35:3, 57:25
**direct** [1] - 66:24
**directed** [2] - 28:16, 29:8
**direction** [2] - 67:2, 69:20
**directly** [1] - 64:18
**disagree** [2] - 46:4, 57:6
**disclose** [2] - 64:22, 68:8
**disclosed** [1] - 64:19
**disconnect** [2] - 23:18, 41:14
**discovered** [1] - 15:23
**discovery** [9] - 12:24, 13:21, 15:6, 18:6, 21:21, 22:12, 30:8, 50:11, 66:7
**Discovery** [2] - 37:6, 43:15
**discuss** [6] - 18:22, 47:15, 50:2, 50:10, 63:5, 69:19
**discussed** [6] - 26:5, 28:18, 46:22, 47:13, 63:8, 71:12
**discussion** [6] - 16:18, 26:4, 30:20, 47:12, 49:24, 71:4
**discussions** [3] - 37:9, 43:18, 46:1
**dismissal** [1] - 52:25
**dismissed** [4] - 52:18, 53:5, 53:9, 54:4
**dispute** [3] - 56:22, 59:6, 60:3
**disputed** [3] - 14:8,

14:9, 14:18
**disputes** *[7]* - 5:18, 14:22, 15:6, 46:3, 55:15, 56:22, 58:2
**distant** *[1]* - 73:11
**distributor** *[1]* - 36:15
**distributors** *[1]* - 41:19
**District** *[4]* - 3:2, 52:3, 52:10, 52:15
**DISTRICT** *[3]* - 1:1, 1:1, 1:10
**DMF** *[1]* - 39:12
**docket** *[1]* - 17:9
**doctor** *[16]* - 64:18, 64:21, 65:6, 67:1, 67:3, 69:24, 70:12, 71:14, 71:16, 71:17, 71:19, 71:25, 72:3, 72:7, 72:18
**doctors** *[11]* - 64:14, 65:2, 66:4, 66:8, 66:24, 67:8, 67:11, 68:1, 68:15, 68:22, 69:4
**doctors'** *[1]* - 71:12
**document** *[28]* - 7:2, 7:9, 7:22, 7:24, 8:9, 9:20, 13:24, 15:1, 16:20, 16:24, 16:25, 17:1, 18:18, 18:22, 19:22, 19:23, 19:25, 20:5, 20:6, 20:13, 21:14, 21:21, 26:19, 26:22, 29:23, 34:13, 69:7, 69:8
**documentation** *[1]* - 23:13
**documents** *[63]* - 8:7, 8:15, 9:24, 10:1, 10:10, 10:11, 10:14, 10:15, 10:25, 13:14, 13:25, 19:14, 19:15, 20:17, 21:15, 22:17, 22:18, 22:21, 22:22, 25:24, 26:12, 26:25, 29:9, 29:15, 29:18, 29:20, 31:16, 34:12, 34:23, 34:24, 34:25, 35:3, 35:9, 35:14, 36:10, 36:12, 37:7, 37:20, 38:4, 38:14, 39:15, 40:21, 41:15, 41:21, 43:10, 43:12, 44:8, 44:9, 46:20, 46:24, 47:1, 67:24, 68:4, 68:5, 68:6, 68:10, 68:12, 68:17, 68:19
**domain** *[2]* - 17:17

**Dominion** *[1]* - 2:3
**done** *[14]* - 5:19, 6:25, 8:25, 21:3, 21:4, 23:16, 31:8, 31:17, 40:16, 50:21, 50:23, 64:4, 64:16, 72:25
**Dong** *[1]* - 20:1
**dose** *[3]* - 36:17, 36:18, 39:3
**doubt** *[1]* - 62:1
**down** *[6]* - 14:20, 15:12, 18:2, 25:18, 59:6, 71:5
**downstream** *[1]* - 41:19
**Dr** *[4]* - 15:24, 22:20, 23:5, 28:14
**draw** *[1]* - 20:3
**Drive** *[1]* - 2:3
**drives** *[1]* - 21:2
**drop** *[1]* - 50:15
**drug** *[2]* - 63:19, 68:2
**Drugs** *[2]* - 2:9, 46:8
**drugs** *[2]* - 57:15, 63:3
**Du** *[1]* - 20:15
**DUANE** *[1]* - 2:8
**due** *[4]* - 4:20, 44:24
**duplicate** *[2]* - 19:11, 19:21
**during** *[6]* - 4:23, 10:8, 20:13, 22:16, 23:2, 23:14

### E

**early** *[2]* - 48:1, 72:6
**easier** *[1]* - 66:11
**easily** *[2]* - 39:25
**easy** *[1]* - 26:11
**ECF** *[1]* - 17:9
**EDNEY** *[2]* - 2:23, 4:7
**Edney** *[3]* - 4:6, 4:8, 4:11
**effect** *[1]* - 63:16
**efficiently** *[1]* - 30:10
**eight** *[2]* - 59:1, 71:5
**Eisenhower** *[1]* - 1:14
**either** *[7]* - 8:13, 13:16, 17:14, 20:21, 23:4, 36:4, 72:1
**electronic** *[1]* - 19:16
**email** *[25]* - 14:5, 14:6, 14:7, 15:14, 15:21, 15:25, 17:18, 17:22, 17:24, 17:25, 18:2, 18:4, 19:8, 19:9, 19:15, 20:1, 20:19, 21:23, 21:24, 21:25, 28:11, 28:12, 40:14, 40:15, 53:22

**emailed** *[1]* - 48:2
**emails** *[2]* - 20:2, 27:5
**employee** *[4]* - 24:4, 24:15, 26:14, 66:3
**employees** *[7]* - 12:13, 24:17, 65:11, 66:3, 66:23, 67:7, 67:9
**employer** *[1]* - 24:1
**employment** *[1]* - 13:15
**enable** *[1]* - 21:19
**encompass** *[1]* - 21:23
**encompassed** *[3]* - 23:7, 23:13, 23:23
**encouraged** *[1]* - 32:15
**end** *[4]* - 25:19, 31:8, 37:22, 59:1
**ended** *[2]* - 39:3, 58:9
**entire** *[2]* - 38:21, 44:6
**entirely** *[1]* - 49:5
**entitled** *[5]* - 21:25, 27:22, 66:6, 68:12, 73:19
**ESI** *[3]* - 24:24, 25:11, 25:22
**especially** *[3]* - 15:2, 71:15, 71:23
**ESQUIRE** *[10]* - 1:14, 1:17, 1:20, 2:2, 2:8, 2:9, 2:13, 2:13, 2:17, 2:21
**essentially** *[2]* - 46:24, 56:10
**established** *[1]* - 8:16
**evaluate** *[1]* - 6:13
**evaluating** *[1]* - 6:11
**evaluation** *[1]* - 6:20
**evaluations** *[1]* - 47:16
**evidence** *[4]* - 14:1, 15:2, 27:1, 27:17
**evidentiary** *[1]* - 30:10
**ex** *[2]* - 62:23, 67:22
**exactly** *[2]* - 5:23, 10:22
**examined** *[1]* - 49:17
**example** *[7]* - 8:6, 9:25, 14:3, 15:18, 20:7, 57:12, 57:22
**examples** *[1]* - 43:14
**exception** *[2]* - 9:9, 59:19
**exchange** *[3]* - 46:1, 47:25, 58:3
**exchanging** *[1]* - 61:3
**excuse** *[3]* - 47:19, 58:19, 63:13

**exercise** *[1]* - 58:4
**exhibits** *[1]* - 14:24
**exist** *[3]* - 20:21, 29:16, 41:4
**existed** *[1]* - 20:21
**exists** *[2]* - 34:14, 37:17
**expanded** *[1]* - 30:21
**expect** *[4]* - 5:23, 11:4, 31:17, 32:18
**expected** *[2]* - 18:20, 21:24
**expecting** *[3]* - 3:16, 30:24, 45:19
**expedite** *[1]* - 9:16
**expeditiously** *[1]* - 11:3
**experienced** *[2]* - 58:14, 59:16
**expert** *[1]* - 33:13
**expired** *[2]* - 17:2, 17:5
**explain** *[1]* - 4:1
**explains** *[1]* - 25:14
**extensive** *[1]* - 8:11
**extent** *[1]* - 41:17
**extremely** *[3]* - 37:17, 40:22, 65:9

### F

**facilities** *[1]* - 35:24
**facility** *[1]* - 15:22
**fact** *[11]* - 8:12, 10:9, 17:11, 19:6, 29:8, 38:25, 50:7, 57:7, 58:18, 60:10, 60:12
**facts** *[1]* - 9:19
**factually** *[1]* - 20:10
**fair** *[5]* - 32:4, 60:17, 62:5, 67:1, 68:7
**faith** *[2]* - 9:17, 39:20
**family** *[2]* - 70:15, 70:17
**far** *[3]* - 44:11, 44:16, 65:21
**fashion** *[3]* - 5:19, 5:23, 21:17
**faster** *[1]* - 31:2
**favorably** *[1]* - 72:24
**FDA** *[1]* - 68:6
**federal** *[1]* - 59:22
**felt** *[1]* - 48:2
**Ferretti** *[2]* - 40:12, 43:25
**Ferretti's** *[1]* - 40:14
**few** *[2]* - 51:6, 56:22
**fight** *[1]* - 44:19
**figure** *[1]* - 8:5
**figured** *[1]* - 15:20
**file** *[8]* - 4:16, 4:20,

6:3, 8:8, 10:10, 11:10, 19:10, 19:20
**filed** *[6]* - 17:4, 17:5, 17:8, 32:10, 32:25, 53:21
**filing** *[1]* - 32:24
**final** *[3]* - 18:24, 36:8, 46:2
**finalized** *[1]* - 61:10
**finally** *[3]* - 3:24, 20:11, 71:23
**fine** *[3]* - 45:9, 50:5, 51:20
**finish** *[1]* - 16:3
**finished** *[4]* - 36:16, 36:18, 39:3, 53:21
**first** *[15]* - 4:15, 8:20, 17:16, 24:13, 26:5, 35:9, 37:5, 39:7, 39:17, 42:5, 43:9, 48:12, 58:7, 70:1, 71:21
**five** *[2]* - 54:13, 62:16
**flabbergasting** *[1]* - 38:16
**flag** *[1]* - 49:1
**flagging** *[1]* - 8:4
**floor** *[1]* - 4:17
**Florida** *[1]* - 1:21
**focus** *[1]* - 14:17
**focused** *[1]* - 36:21
**follow** *[3]* - 12:21, 30:12, 63:18
**followed** *[1]* - 30:9
**FOR** *[1]* - 1:1
**force** *[2]* - 24:2, 24:16
**forced** *[2]* - 27:15, 27:16
**foreclosed** *[1]* - 61:5
**foregoing** *[1]* - 73:18
**form** *[1]* - 41:4
**formal** *[1]* - 30:21
**former** *[1]* - 40:12
**forth** *[3]* - 12:9, 13:9, 29:2
**forward** *[6]* - 10:24, 14:22, 40:15, 48:11, 70:19, 71:5
**four** *[9]* - 51:6, 52:11, 54:13, 54:20, 54:22, 57:13, 57:22, 58:9, 62:16
**fourth** *[1]* - 52:13
**framework** *[2]* - 8:16, 11:3
**frankly** *[10]* - 15:6, 17:7, 18:3, 19:9, 24:11, 26:7, 26:24, 27:13, 33:12, 65:3
**FREEMAN** *[1]* - 1:13

**front** [2] - 18:19, 37:12
**fulfilled** [1] - 43:11
**full** [1] - 73:5
**fully** [3] - 31:19, 31:20, 52:8
**fun** [1] - 4:1
**future** [1] - 73:11

## G

**G.C** [1] - 20:23
**gain** [1] - 64:17
**Garcia** [1] - 57:13
**gas** [1] - 20:23
**gasp** [1] - 26:20
**GEDDIS** [1] - 3:21
**Geddis** [1] - 3:21
**generic** [1] - 63:2
**generically** [1] - 25:17
**Georgia** [1] - 2:14
**given** [4] - 14:23, 31:18, 35:12, 73:2
**glitches** [1] - 10:16
**Gloria** [1] - 54:14
**Goldberg** [13] - 3:9, 5:8, 6:1, 9:8, 9:12, 9:22, 11:15, 12:5, 12:18, 16:9, 17:15, 18:9, 50:14
**GOLDBERG** [13] - 2:8, 3:10, 6:2, 6:22, 10:3, 12:6, 16:6, 16:13, 16:16, 16:22, 18:7, 18:10, 50:13
**GOLOMB** [1] - 1:16
**goose** [1] - 64:6
**government** [2] - 11:25, 12:12
**grade** [17] - 34:5, 34:11, 34:25, 35:19, 35:22, 37:10, 37:23, 39:8, 40:6, 42:15, 42:17, 42:25, 43:3, 43:10, 43:13, 43:17, 44:12
**grandstand** [1] - 18:19
**grandstanding** [1] - 19:6
**granted** [1] - 4:10
**great** [3] - 21:19, 32:20, 72:22
**Greenberg** [4] - 47:22, 52:21, 55:4, 55:11
**GREENBERG** [1] - 2:12
**grieve** [1] - 70:17
**grounds** [1] - 20:10
**group** [4] - 29:9, 52:22, 53:12, 55:12
**growing** [1] - 48:15

**grows** [2] - 73:2, 73:3
**GUERRA** [1] - 2:2
**guess** [8] - 4:20, 8:19, 9:10, 15:11, 24:22, 25:14, 25:23, 45:23
**guidance** [3] - 56:23, 58:24, 72:8
**gun** [4] - 20:6, 20:7, 26:19, 26:20

## H

**Hague** [1] - 24:5
**handheld** [1] - 25:16
**handle** [1] - 8:23
**handling** [1] - 18:13
**happenings** [1] - 22:19
**happy** [7] - 10:16, 29:24, 38:5, 42:18, 43:24, 48:10, 48:13
**hard** [6] - 20:8, 21:2, 32:22, 32:24, 37:18, 37:19
**Harkins** [1] - 52:20
**HARKINS** [4] - 2:13, 52:20, 53:12, 54:18
**heading** [1] - 30:7
**heads** [1] - 49:9
**Healthcare** [1] - 2:11
**hear** [12] - 10:17, 12:3, 15:8, 16:9, 17:14, 40:6, 42:6, 49:13, 49:19, 55:8, 60:4, 66:13
**heard** [9] - 8:20, 22:24, 24:23, 38:11, 40:4, 40:17, 53:18, 56:10, 70:25
**hearing** [21] - 8:24, 14:23, 18:1, 18:21, 21:10, 21:20, 22:4, 27:19, 30:10, 32:13, 33:1, 33:3, 33:5, 43:23, 49:11, 52:13, 52:14, 54:3, 54:4
**hearings** [1] - 39:22
**heart** [1] - 14:18
**held** [2] - 3:1, 30:11
**hello** [3] - 3:22, 51:12, 51:17
**helpful** [4] - 5:12, 7:10, 14:21, 33:18
**helps** [1] - 25:21
**Henton** [1] - 54:14
**Hetero** [4] - 2:19, 45:11, 46:8
**Hetero's** [1] - 46:17
**Hi** [1] - 3:21
**hi** [1] - 56:6
**highlighted** [2] -

26:15, 72:12
**highly** [3] - 18:4, 29:12, 64:3
**HILL** [1] - 2:17
**himself** [1] - 23:11
**histories** [1] - 57:10
**history** [1] - 5:17
**hit** [5] - 8:8, 9:24, 10:13, 45:24
**hives** [3] - 63:16, 63:19
**hold** [1] - 50:20
**holding** [1] - 45:8
**holiday** [2] - 6:23, 31:1
**honest** [2] - 48:4, 69:3
**HONIK** [3] - 1:16, 1:17, 3:15
**Honik** [1] - 3:15
**Honor** [137] - 3:10, 3:15, 4:18, 5:18, 5:20, 5:24, 6:2, 6:5, 6:6, 6:10, 6:22, 7:5, 8:7, 8:13, 8:16, 10:3, 10:6, 10:16, 10:21, 11:11, 12:6, 12:9, 13:2, 13:5, 13:11, 13:20, 14:3, 14:15, 14:20, 14:25, 15:10, 15:18, 16:2, 16:6, 16:7, 16:13, 16:22, 16:23, 17:16, 17:20, 17:24, 18:2, 18:7, 18:21, 19:9, 19:11, 19:24, 22:15, 23:1, 23:22, 24:11, 24:18, 26:1, 26:3, 26:18, 27:2, 27:10, 27:14, 27:16, 27:18, 27:25, 28:6, 28:9, 29:4, 30:23, 31:3, 31:9, 31:14, 32:6, 33:10, 33:20, 33:25, 35:8, 36:7, 37:2, 38:2, 38:5, 38:20, 39:18, 39:22, 39:25, 40:15, 41:2, 42:9, 42:12, 43:1, 43:4, 43:8, 43:24, 44:14, 44:20, 45:4, 45:6, 45:9, 45:17, 45:25, 46:7, 46:12, 46:14, 46:18, 47:2, 47:3, 47:11, 47:19, 49:21, 49:25, 50:12, 50:13, 50:20, 52:20, 53:2, 53:7, 53:8, 53:12, 53:17, 54:18, 55:3, 55:6, 55:13, 55:20, 55:22, 56:16, 56:17, 56:21,

60:4, 64:8, 67:14, 67:16, 71:6, 71:8, 71:9, 72:4, 72:15, 72:17, 73:6, 73:8, 73:12
**Honor's** [5] - 4:19, 11:23, 56:23, 61:19, 72:2
**Honorable** [3] - 2:21, 3:1, 3:3
**HONORABLE** [2] - 1:10, 1:11
**hope** [1] - 15:4
**hopeful** [1] - 47:15
**hopefully** [1] - 49:15
**hoping** [1] - 45:18
**hotly** [1] - 21:7
**Huahai** [1] - 2:11
**huge** [2] - 37:16, 37:21
**hurdle** [1] - 61:10
**hypertension** [1] - 57:14

## I

**idea** [7] - 11:18, 27:2, 33:2, 38:1, 38:13, 60:14, 67:5
**identification** [1] - 42:7
**identified** [10] - 8:8, 22:17, 38:3, 41:7, 58:6, 60:12, 61:20, 62:1, 65:21, 65:23
**identifies** [1] - 30:16
**identify** [9] - 13:14, 36:9, 36:11, 39:19, 41:13, 59:5, 62:12, 62:20, 64:13
**identifying** [3] - 30:9, 44:16, 60:6
**illustrates** [1] - 58:5
**imagine** [1] - 69:8
**imminent** [1] - 41:12
**imminently** [1] - 8:14
**impending** [1] - 33:13
**importance** [1] - 30:13
**important** [5] - 6:10, 6:18, 7:4, 60:15
**imposed** [4] - 8:24, 59:11, 59:22, 59:24
**impossible** [1] - 38:23
**improper** [1] - 27:1
**impropriety** [1] - 19:22
**improvement** [1] - 14:5
**impurities** [1] - 37:9
**impurity** [5] - 14:13, 15:25, 16:1, 28:18,

37:9
**IN** [1] - 1:4
**in-person** [3] - 33:2, 33:5, 47:6
**Inc** [2] - 2:15, 2:16
**inclined** [1] - 49:3, 72:24
**include** [2] - 48:9, 61:11
**included** [5] - 34:10, 47:23, 47:25, 55:16, 62:11
**including** [2] - 34:16, 47:13
**incorrectly** [1] - 40:7
**incredulous** [1] - 23:12
**indeed** [1] - 21:8
**independent** [1] - 36:14
**indicate** [1] - 69:6
**individual** [3] - 24:2, 24:5, 24:9
**indulge** [1] - 31:5
**Industries** [1] - 2:15
**industry** [1] - 25:23
**information** [19] - 10:24, 11:23, 13:15, 16:10, 17:6, 18:4, 21:12, 24:2, 24:3, 24:17, 25:24, 26:11, 36:2, 36:24, 41:2, 42:13, 57:18, 64:23, 67:4
**initial** [2] - 47:25, 58:3
**initiate** [1] - 59:4
**injury** [1] - 71:2
**injustice** [1] - 57:20
**innovator** [1] - 63:3
**inoperable** [1] - 22:11
**insight** [1] - 12:15
**instances** [3] - 58:8, 63:13, 68:4
**instinct** [1] - 14:17
**intend** [2] - 6:14, 8:2
**intensely** [1] - 33:16
**intent** [1] - 59:12
**interest** [2] - 11:2, 58:12
**interrupt** [1] - 5:3
**interrupted** [1] - 25:2
**interrupting** [1] - 17:12
**interrupts** [1] - 63:11
**intervention** [4] - 46:19, 47:17, 49:14
**invite** [1] - 8:3
**involved** [2] - 23:25, 63:9
**involvement** [1] -

40:13
*involving* [1] - 62:24
*iPhone* [1] - 23:5
*iPhones* [1] - 25:17
*irbesartan* [3] - 14:5, 16:1, 18:8
*issuance* [1] - 7:17
*issue* [56] - 6:11, 6:18, 6:24, 7:4, 7:13, 7:16, 7:20, 11:19, 16:17, 17:7, 18:6, 18:16, 21:6, 22:6, 22:25, 25:19, 25:21, 26:13, 28:16, 33:9, 34:20, 34:21, 36:8, 39:10, 39:13, 41:2, 41:24, 45:19, 46:19, 47:5, 47:10, 48:15, 48:24, 49:4, 49:23, 50:1, 50:3, 50:8, 53:24, 53:25, 55:13, 55:17, 56:11, 56:17, 57:14, 62:16, 63:19, 64:6, 65:5, 67:17, 67:19, 68:20, 71:6, 73:4
*issued* [4] - 6:7, 12:8, 12:15, 22:1
*issues* [31] - 3:17, 7:6, 8:4, 8:13, 8:14, 18:14, 18:16, 18:23, 22:10, 25:24, 30:1, 30:21, 40:17, 44:22, 45:4, 47:2, 47:15, 48:13, 50:11, 53:11, 56:12, 60:1, 62:7, 62:10, 62:24, 67:23, 69:11, 69:13, 69:16, 72:20
*IT* [1] - 22:21
*it'd* [1] - 11:18
*it'll* [1] - 8:15
*item* [3] - 4:15, 45:11, 55:5
*itself* [4] - 9:14, 13:24, 18:4, 21:25

## J

*JERSEY* [1] - 1:1
*Jersey* [6] - 1:8, 1:15, 2:18, 52:3, 52:11, 52:16
*JESSICA* [1] - 2:9
*Jessica* [2] - 10:4, 10:6
*Jinsheng* [3] - 14:4, 15:14, 15:24
*Joe* [1] - 40:12
*join* [1] - 3:16
*joint* [2] - 52:21, 55:12
*JUDGE* [124] - 1:10,

3:4, 3:8, 3:11, 3:25, 4:3, 4:8, 5:3, 6:1, 6:16, 7:25, 9:6, 10:5, 10:19, 11:1, 11:21, 12:4, 12:17, 13:3, 15:8, 16:8, 16:15, 16:20, 17:14, 18:9, 18:24, 21:5, 22:24, 23:21, 24:20, 25:7, 26:2, 28:1, 29:5, 29:25, 31:13, 31:23, 32:7, 33:19, 33:21, 33:23, 35:7, 37:3, 39:5, 39:23, 40:3, 40:9, 41:7, 41:10, 41:25, 42:3, 42:5, 42:10, 42:21, 42:23, 43:2, 43:5, 44:1, 44:13, 44:21, 44:25, 45:5, 45:7, 45:10, 45:19, 45:22, 46:6, 46:9, 46:13, 46:16, 47:4, 47:18, 47:20, 49:6, 49:22, 50:5, 50:14, 50:21, 51:1, 51:3, 51:8, 51:10, 51:13, 51:17, 51:20, 53:1, 53:4, 53:9, 53:16, 53:19, 54:2, 54:8, 54:11, 54:22, 55:2, 55:7, 55:25, 56:5, 56:6, 56:14, 56:19, 60:5, 60:9, 60:14, 60:18, 61:13, 61:23, 62:1, 62:7, 64:7, 65:10, 65:13, 65:17, 65:20, 66:2, 66:8, 66:11, 67:5, 67:15, 68:21, 72:22, 73:7, 73:9, 73:14
*Judge* [42] - 3:2, 3:22, 4:7, 4:11, 6:24, 7:21, 8:1, 8:20, 9:8, 9:10, 9:15, 11:8, 11:17, 11:22, 33:4, 35:22, 37:12, 38:22, 39:4, 39:10, 49:20, 50:3, 50:4, 50:8, 50:9, 50:16, 50:17, 50:18, 51:5, 51:10, 51:12, 51:15, 54:7, 55:17, 55:24, 56:1, 56:3, 56:6, 56:9, 69:17
*judgment* [1] - 11:6
*Judicial* [1] - 2:21
*judicial* [2] - 46:19, 52:10
*judiciary* [2] - 52:12, 52:13
*July* [25] - 4:20, 6:25, 9:11, 15:24, 21:4,

21:23, 21:24, 30:25, 31:2, 31:5, 31:10, 31:12, 31:17, 32:1, 32:8, 32:22, 44:25, 48:12, 49:4, 52:2, 52:14, 53:14, 54:3, 54:4, 54:12
*jump* [1] - 45:24
*Jun* [1] - 20:15
*June* [7] - 1:8, 15:21, 46:22, 70:2, 71:6, 72:15, 73:23
*jurors* [1] - 52:7
*jury* [5] - 51:25, 52:1, 52:2, 52:6

## K

*KATZ* [1] - 1:13
*keep* [3] - 11:2, 30:1, 73:3
*keeping* [1] - 52:7
*keeps* [2] - 35:19, 40:24
*Kennedy* [1] - 57:22
*kept* [2] - 20:16, 37:17
*key* [4] - 56:22, 57:23, 59:5, 60:3
*kind* [3] - 13:8, 19:13, 70:21
*Knight* [1] - 54:14
*knowledge* [1] - 26:5
*knows* [6] - 6:10, 8:5, 12:9, 15:19, 17:9, 28:9
*Knox* [5] - 52:25, 53:1, 53:6, 53:7
*Kugler* [23] - 2:21, 3:2, 4:11, 6:24, 7:21, 8:20, 9:8, 11:8, 11:17, 33:4, 50:3, 50:4, 50:8, 50:9, 50:16, 50:17, 50:18, 51:6, 51:10, 55:24, 56:1, 56:4, 56:6
*KUGLER* [40] - 1:10, 51:10, 51:13, 51:17, 51:20, 53:4, 53:9, 53:16, 53:19, 54:2, 54:8, 54:11, 54:22, 55:2, 55:7, 56:6, 56:14, 56:19, 60:5, 60:9, 60:14, 60:18, 61:13, 61:23, 62:1, 62:7, 64:7, 65:10, 65:13, 65:17, 65:20, 66:2, 66:8, 66:11, 67:5, 67:15, 68:21, 72:22, 73:7, 73:9
*Kugler's* [2] - 9:10, 9:15

## L

*labeled* [3] - 16:20, 16:24, 34:4
*Labor* [1] - 52:8
*Labs* [1] - 2:19
*laid* [3] - 5:23, 19:11, 28:9
*language* [6] - 62:11, 64:11, 64:12, 66:20, 69:23
*laptop* [1] - 22:22
*large* [2] - 64:15, 71:1
*larger* [1] - 69:13
*LARRY* [1] - 2:22
*last* [15] - 7:14, 20:15, 23:25, 25:7, 26:20, 28:14, 34:22, 35:1, 36:4, 37:18, 38:8, 43:18, 51:25, 55:13, 59:9
*latest* [2] - 15:3, 31:2
*law* [2] - 9:18, 24:1
*Law* [1] - 2:21
*lawful* [2] - 24:9, 24:15
*lawyer* [1] - 48:22
*lay* [1] - 28:5
*leadership* [2] - 3:19, 47:14
*least* [5] - 12:20, 23:25, 57:13, 57:15, 62:16
*leave* [2] - 11:25, 58:17
*leaving* [1] - 11:14
*legal* [1] - 8:14
*legally* [1] - 20:10
*legwork* [1] - 64:2
*less* [1] - 60:2
*letter* [30] - 4:24, 6:4, 13:10, 13:19, 13:20, 14:3, 14:9, 14:10, 14:16, 14:21, 15:3, 15:7, 17:8, 17:22, 19:12, 24:11, 27:7, 28:9, 30:1, 31:16, 31:22, 32:17, 33:12, 33:15, 45:14, 45:15, 47:8, 47:9, 50:6, 64:24
*letters* [7] - 4:14, 30:23, 31:19, 56:20, 66:22, 67:6
*letting* [1] - 51:8
*leveled* [1] - 21:8
*LEVIN* [1] - 1:19
*Li* [3] - 17:3, 23:5, 28:15
*Li's* [2] - 19:20, 22:20
*LIABILITY* [1] - 1:4

*light* [3] - 8:12, 16:14, 21:11
*likely* [3] - 20:25, 55:20, 33:2
*limit* [8] - 6:19, 7:1, 39:7, 39:11, 40:5, 59:22, 59:23, 60:21
*limitation* [4] - 58:5, 59:11, 59:19, 61:12
*limitations* [1] - 59:19
*limited* [3] - 21:22, 57:3, 61:6
*Lin* [2] - 14:4, 15:24
*Lin's* [2] - 15:14, 19:10
*line* [13] - 3:13, 4:6, 5:7, 5:8, 14:15, 22:8, 22:9, 50:25, 66:14
*linking* [1] - 19:24
*list* [3] - 54:20, 54:22, 67:7
*listed* [2] - 19:21, 54:15
*listening* [1] - 56:19
*listing* [3] - 54:16, 54:23, 63:21
*litany* [1] - 24:10
*literally* [3] - 20:6, 35:3
*litigants* [1] - 58:10
*litigation* [8] - 15:17, 20:4, 63:20, 63:22, 64:4, 64:5, 65:2, 68:1
*LITIGATION* [1] - 1:4
*litigations* [1] - 64:13
*LLC* [3] - 1:13, 2:11, 2:15
*LLP* [4] - 2:2, 2:8, 2:12, 2:17
*lo* [1] - 15:23
*local* [2] - 23:8, 23:10
*Lockard* [7] - 47:21, 49:16, 55:3, 55:11, 56:8, 67:16, 68:22
*LOCKARD* [21] - 2:13, 47:19, 47:21, 49:20, 55:3, 55:9, 56:9, 56:15, 56:21, 60:8, 60:11, 60:17, 60:25, 61:17, 61:24, 62:5, 62:9, 67:16, 69:11, 73:8, 73:13
*log* [9] - 35:2, 35:4, 38:4, 38:7, 45:12, 65:4, 66:19, 66:22, 68:13
*logistical* [1] - 7:6
*logistics* [1] - 52:6
*look* [9] - 10:24, 21:3, 22:4, 32:12, 36:3,

37:13, 44:3, 44:7, 51:21
**looked** [1] - 26:16, 34:15
**looking** [4] - 8:17, 10:2, 38:7, 66:18
**looks** [1] - 44:5
**loosened** [1] - 48:18
**LORETTA** [1] - 2:21
**Loretta** [3] - 51:5, 51:8, 56:2
**lost** [5] - 22:3, 25:6, 25:7, 25:10, 56:7
**low** [1] - 19:25
**Ltd** [2] - 2:11, 2:15

## M

**machines** [2] - 20:23
**Macro** [2] - 37:6, 43:15
**MacSTRAVIC** [1] - 2:22
**major** [2] - 15:16, 71:18
**majority** [1] - 70:19
**management** [1] - 53:15
**MANAGEMENT** [1] - 1:5
**manner** [1] - 34:2
**manually** [1] - 38:14
**manufacture** [2] - 36:13, 36:18
**manufactured** [3] - 35:24, 36:1
**manufacturer** [1] - 63:2
**manufacturers** [2] - 36:17, 38:24
**map** [1] - 38:21
**March** [3] - 69:22, 71:4, 72:11
**marked** [2] - 35:1, 37:25
**Market** [1] - 1:17
**mass** [3] - 20:24, 64:25
**massive** [3] - 19:22, 31:15
**Master** [1] - 3:3
**MASTER** [1] - 1:11
**matching** [1] - 38:18
**materials** [1] - 55:16
**matter** [24] - 4:14, 9:13, 11:2, 11:4, 11:7, 12:19, 13:1, 14:18, 22:2, 22:13, 30:1, 30:6, 30:11, 31:23, 32:13, 32:21, 33:1, 33:5, 33:17, 45:14, 49:11, 49:15,

52:23, 73:19
**matters** [2] - 9:23, 22:7
**MAZIE** [1] - 1:13
**MDL** [1] - 58:18
**MDLs** [4] - 59:14, 59:18, 59:21, 68:1
**mean** [12] - 20:2, 26:24, 56:19, 59:18, 63:20, 65:22, 66:5, 66:8, 66:12, 70:7, 70:19, 70:25
**means** [2] - 24:9, 34:5
**meantime** [1] - 32:20
**mechanical** [1] - 1:24
**medical** [2] - 57:10, 68:5
**medication** [2] - 63:5, 63:15
**meet** [28] - 4:23, 5:17, 10:8, 10:18, 13:6, 13:7, 13:13, 13:17, 18:12, 19:3, 22:16, 23:2, 23:14, 28:20, 34:8, 36:6, 37:14, 40:19, 46:2, 46:25, 47:14, 48:3, 48:4, 48:10, 64:10, 67:22, 68:1, 68:8
**meet-and-confer** [3] - 13:17, 34:8, 40:19
**meeting** [3] - 54:12, 63:8, 68:14
**memorialized** [1] - 40:10
**mention** [3] - 6:4, 7:5, 7:7
**mentioned** [1] - 6:5
**merit** [1] - 8:11
**met** [2] - 46:21, 55:14
**metadata** [3] - 26:8, 26:9, 26:16
**method** [1] - 60:6
**might** [6] - 8:9, 11:25, 23:4, 49:9, 60:20, 69:2
**Min** [3] - 17:3, 19:20, 28:15
**minor** [1] - 69:11
**minutes** [2] - 51:6, 51:7
**mischaracterization** [2] - 17:18, 17:23
**mischaracterizations** [1] - 15:1
**mischaracterize** [1] - 26:22
**mischaracterizing** [3] - 14:6, 15:14, 18:18
**missed** [1] - 21:13

**missing** [3] - 22:11, 27:23
**mistake** [1] - 25:8
**Mitchell** [1] - 1:7
**MITCHELL** [1] - 1:19
**moment** [2] - 14:19, 18:5
**moments** [1] - 33:11
**Monday** [2] - 22:18, 22:23
**month** [2] - 54:2, 54:23
**months** [10] - 8:3, 9:3, 23:24, 24:12, 24:13, 26:11, 26:15, 26:17
**months-and-months -long** [1] - 8:3
**moots** [1] - 32:19
**morning** [6] - 10:6, 48:1, 51:10, 51:15, 53:20, 53:22
**MORRIS** [1] - 2:8
**most** [10] - 3:16, 5:15, 20:4, 21:8, 33:1, 33:16, 34:15, 34:17, 58:8, 60:15
**motion** [23] - 7:9, 7:23, 17:4, 27:15, 30:2, 30:7, 30:13, 30:16, 30:22, 31:21, 32:1, 32:2, 32:3, 32:9, 32:11, 32:18, 32:19, 32:20, 32:23, 32:24, 42:1, 44:18, 44:23
**motions** [2] - 27:12, 52:4
**motivated** [3] - 70:24, 70:25, 71:3
**move** [6] - 9:13, 17:1, 19:4, 44:12, 49:12, 52:24
**moved** [2] - 54:20, 67:18
**moving** [6] - 11:2, 30:2, 31:23, 32:21, 52:7, 55:10
**MR** [82] - 3:10, 3:15, 3:21, 3:22, 4:1, 4:18, 5:11, 6:2, 6:22, 8:1, 10:3, 10:21, 11:11, 11:22, 12:6, 15:10, 16:3, 16:6, 16:13, 16:16, 16:19, 16:22, 16:23, 18:7, 18:10, 19:2, 23:1, 24:18, 24:21, 25:5, 25:8, 27:25, 28:3, 28:23, 29:17, 29:22, 30:18, 33:10, 35:8, 39:9,

39:24, 41:12, 42:1, 42:9, 44:2, 44:14, 44:24, 45:4, 45:17, 45:23, 46:7, 46:12, 46:14, 46:18, 49:25, 50:12, 50:13, 50:20, 50:23, 51:2, 51:12, 52:20, 53:2, 53:12, 53:17, 53:20, 54:6, 54:18, 55:20, 56:16, 64:8, 65:12, 65:15, 65:19, 65:22, 66:5, 66:10, 66:12, 67:14, 69:18, 73:6, 73:12
**MS** [60] - 4:7, 10:6, 13:2, 13:5, 16:2, 16:5, 16:7, 16:12, 17:16, 18:8, 22:15, 23:22, 26:1, 26:3, 28:22, 29:4, 29:6, 29:21, 31:14, 32:6, 33:20, 33:22, 33:24, 37:2, 37:5, 40:8, 40:11, 41:9, 42:4, 42:12, 42:22, 43:1, 43:4, 43:7, 45:6, 47:11, 47:19, 47:21, 49:20, 49:21, 51:5, 53:7, 55:3, 55:9, 56:3, 56:9, 56:15, 56:21, 60:8, 60:11, 60:17, 60:25, 61:17, 61:24, 62:5, 62:9, 67:16, 69:11, 73:8, 73:13
**multiple** [4] - 20:13, 25:15, 57:10
**must** [1] - 29:6
**mute** [4] - 5:6, 5:8, 45:18, 66:15

## N

**Nakul** [2] - 46:6, 46:7
**NAKUL** [2] - 2:17
**named** [1] - 19:10
**names** [3] - 58:3, 58:9, 61:4
**national** [1] - 18:19
**natural** [4] - 6:25, 70:11, 70:20, 72:16
**nauseam** [2] - 43:1
**NDMA** [4] - 14:13, 15:20, 15:23, 17:11
**NE** [2] - 2:14
**Nebraska** [1] - 63:5
**necessarily** [1] - 57:18
**necessary** [2] - 42:2, 57:7
**need** [27] - 6:13, 6:17, 6:19, 16:17, 22:9,

30:7, 30:24, 36:7, 48:12, 48:18, 49:14, 49:17, 50:10, 54:24, 57:18, 58:10, 59:21, 60:2, 60:3, 61:14, 61:20, 63:17, 65:3, 68:17, 68:22, 69:17, 70:21
**needed** [5] - 6:9, 34:3, 48:3, 59:17, 60:22
**needs** [6] - 8:24, 11:7, 18:16, 32:2, 39:6, 49:7
**negotiating** [3] - 37:19, 56:11, 56:25
**negotiations** [1] - 40:13
**never** [7] - 24:14, 29:7, 29:16, 38:15, 39:3, 64:4
**new** [3] - 12:24, 21:21, 39:21
**NEW** [1] - 1:1
**New** [6] - 1:8, 1:15, 2:18, 52:3, 52:10, 52:15
**News** [2] - 2:23, 4:9
**next** [16] - 6:23, 7:19, 9:4, 11:5, 20:7, 22:3, 45:11, 47:5, 49:2, 49:5, 49:7, 49:11, 49:23, 54:23, 67:15, 69:10
**Nigh** [9] - 49:25, 53:2, 55:20, 55:23, 56:16, 59:25, 60:5, 64:8, 69:15
**NIGH** [16] - 1:20, 49:25, 53:2, 55:20, 56:16, 64:8, 65:12, 65:15, 65:19, 65:22, 66:5, 66:10, 66:12, 67:14, 69:18, 73:6
**Nigh's** [1] - 67:17
**nighttime** [1] - 6:7
**nine** [4] - 57:17, 57:19, 58:3, 70:2
**nitrosamine** [13] - 14:10, 14:11, 16:1, 27:9, 34:1, 34:4, 34:9, 34:16, 34:20, 37:9, 37:24, 38:6, 43:12
**Nitrosamine** [1] - 35:5
**nitrosamines** [1] - 39:17
**noise** [1] - 66:13
**nominated** [1] - 52:11
**non** [7] - 23:23, 42:25, 43:3, 43:10, 43:13,

44:11, 63:14
**non-plaintiff** [1] - 63:14
**non-USDMF** [1] - 44:11
**non-USDMF-grade** [3] - 42:25, 43:3, 43:13
**non-USDMF-grade-related** [1] - 43:10
**non-ZHP** [1] - 23:23
**none** [2] - 19:21, 26:13
**normal** [3] - 13:16, 30:12, 63:11
**normalcy** [1] - 52:15
**not-too-distant** [1] - 73:11
**note** [1] - 31:16
**nothing** [11] - 19:2, 38:11, 40:17, 45:4, 45:6, 47:3, 50:12, 50:13, 63:5, 63:6, 63:10
**notice** [3] - 27:22, 53:23, 62:20
**noticed** [2] - 13:6, 50:6
**noticing** [1] - 58:21
**Novartis** [1] - 15:20
**November** [2] - 9:1, 35:1
**NUMBER** [1] - 1:3
**number** [19] - 19:2, 19:4, 19:5, 35:16, 36:11, 41:8, 41:16, 42:7, 42:18, 56:24, 58:19, 59:2, 59:13, 59:14, 59:18, 64:6, 66:1, 68:20
**numbers** [7] - 35:14, 36:9, 36:23, 41:14, 41:15, 41:20, 52:9
**numerous** [1] - 34:19

## O

**object** [2] - 20:11
**objecting** [1] - 11:14
**objection** [4] - 43:20, 53:1, 53:3, 53:8
**obligation** [2] - 8:22, 25:22
**obligations** [1] - 17:1
**obviously** [10] - 5:20, 6:9, 11:7, 11:20, 16:17, 21:6, 35:25, 36:4, 44:3, 57:5
**occur** [2] - 11:6, 11:7
**occurred** [5] - 7:18, 12:16, 20:19, 30:17, 72:14

**occurs** [2] - 32:3, 32:19
**OF** [1] - 1:1
**office** [1] - 40:13
**Official** [1] - 1:22
**Omaha** [2] - 63:5, 63:20
**once** [5] - 6:14, 14:4, 14:5, 17:23, 29:10
**oncologists** [2] - 57:16, 57:23
**one** [49] - 3:19, 7:15, 11:11, 11:23, 14:3, 15:7, 18:13, 18:14, 18:16, 19:2, 19:4, 20:4, 21:6, 26:21, 28:6, 29:14, 29:25, 30:3, 33:11, 34:18, 35:16, 36:11, 41:16, 41:25, 48:22, 52:6, 52:12, 52:13, 53:3, 54:13, 54:18, 55:5, 57:3, 57:12, 57:16, 61:10, 62:9, 62:10, 62:13, 62:20, 64:22, 66:20, 67:9, 68:8, 69:18, 70:3, 70:12, 70:13
**ones** [1] - 62:2
**ongoing** [1] - 31:17
**open** [1] - 52:8
**opened** [1] - 17:24
**operation** [1] - 62:21
**operations** [2] - 28:15, 63:11
**opportunity** [3] - 14:23, 18:12, 18:19
**oppose** [1] - 63:23
**optimistic** [1] - 73:10
**Order** [2] - 37:6, 43:15
**order** [18] - 5:15, 16:11, 16:21, 18:3, 22:1, 22:3, 23:7, 23:13, 23:23, 37:13, 48:18, 52:23, 53:10, 54:1, 58:1, 58:10, 58:23
**ordered** [2] - 23:17, 61:6
**orderly** [3] - 5:19, 5:23, 44:20
**orders** [6] - 4:19, 25:23, 51:22, 52:17, 53:13, 54:11
**ordinary** [1] - 40:24
**original** [1] - 27:5
**ought** [1] - 68:18
**overall** [1] - 13:11
**overlap** [1] - 65:25
**own** [3] - 7:16, 19:10,

61:2
**owned** [1] - 36:14

## P

**P.A** [1] - 1:19
**P.C** [1] - 1:16
**p.m** [2] - 49:10, 73:15
**Page** [2] - 45:14, 45:15
**pages** [2] - 44:4, 45:5
**Pages** [2] - 45:15, 47:7
**PAIGE** [1] - 2:2
**Paige** [2] - 47:11, 53:7
**pandemic** [1] - 52:9
**PAPANTONIO** [1] - 1:19
**paper** [3] - 40:21, 41:4, 59:10
**papers** [3] - 17:2, 17:3, 57:5
**parallel** [1] - 67:18
**Parekh** [6] - 40:12, 43:6, 43:18, 43:25, 45:17, 45:20
**Parkway** [1] - 1:14
**part** [11] - 19:6, 32:18, 34:8, 38:23, 38:24, 38:25, 40:18, 43:23, 56:10, 64:15, 71:1
**parte** [2] - 62:23, 67:22
**particular** [6] - 14:3, 21:14, 22:5, 22:12, 26:14, 48:14
**parties** [20] - 7:22, 9:17, 10:7, 14:22, 21:24, 37:8, 37:14, 43:20, 55:5, 55:14, 55:18, 56:11, 57:25, 58:2, 58:6, 58:16, 58:22, 59:15, 60:2, 61:2
**parties'** [1] - 13:22
**pass** [1] - 70:23
**passed** [3] - 19:3, 70:14, 70:16
**password** [1] - 3:23
**past** [4] - 5:17, 50:22, 64:13, 67:18
**patient** [5] - 63:14, 63:15, 63:18, 67:12
**patients** [1] - 70:4
**Pedano** [2] - 1:22, 73:21
**Peng** [1] - 20:1
**Pennsylvania** [3] - 1:18, 2:6, 2:10
**Pensacola** [1] - 1:21
**people** [4] - 28:16,

31:6, 48:16, 62:21
**people's** [1] - 26:4
**per** [6] - 52:6, 53:23, 58:17, 59:23, 65:23, 72:8
**perception** [2] - 13:6, 13:7
**perfectly** [2] - 60:20, 61:17
**perhaps** [7] - 3:18, 23:18, 23:19, 31:4, 31:8, 40:22, 49:18
**period** [3] - 9:3, 9:9, 23:24
**peripheral** [1] - 58:22
**permission** [1] - 4:10
**permit** [6] - 7:17, 12:7, 12:12, 12:15, 62:3, 69:5
**person** [5] - 33:2, 33:5, 47:6, 48:15, 48:20
**personal** [9] - 23:16, 24:2, 24:3, 24:8, 24:16, 26:5, 26:9
**personally** [2] - 23:7, 23:15
**perspective** [4] - 33:16, 36:6, 45:3, 46:17
**Pharma** [1] - 2:16
**Pharmaceutical** [1] - 2:15
**Pharmaceuticals** [3] - 2:10, 2:11, 2:15
**pharmacovigilance** [1] - 63:17
**Philadelphia** [3] - 1:18, 2:6, 2:10
**phone** [5] - 5:6, 23:5, 23:11, 23:20, 26:13, 36:3
**physician** [7] - 49:23, 56:11, 56:24, 63:4, 63:18, 63:24, 63:25
**physicians** [11] - 60:7, 60:12, 60:15, 62:14, 62:16, 62:22, 65:11, 65:20, 66:1, 66:19, 67:22
**physicians'** [1] - 71:22
**pick** [1] - 51:25
**picture** [3] - 7:11, 7:21, 70:24
**pieces** [1] - 66:20
**Piedmont** [1] - 2:14
**pinch** [1] - 45:24
**ping** [2] - 3:18, 3:19
**place** [3] - 17:10, 63:8, 68:24

**plaintiff** [22] - 3:19, 26:20, 43:14, 46:21, 53:8, 57:12, 57:16, 59:3, 59:8, 63:9, 63:13, 63:14, 65:7, 65:14, 65:16, 69:24, 70:1, 70:4, 71:9, 72:4, 72:18
**plaintiff-by-plaintiff** [1] - 59:8
**Plaintiffs** [5] - 1:15, 1:18, 1:21, 2:4, 2:7
**plaintiffs** [84] - 3:5, 3:12, 3:14, 5:12, 13:9, 13:22, 14:4, 14:7, 14:11, 15:13, 18:12, 22:11, 22:16, 23:24, 24:14, 26:6, 27:6, 27:11, 27:19, 30:4, 30:8, 30:15, 30:16, 31:18, 32:1, 32:15, 32:22, 33:25, 34:2, 34:7, 34:18, 34:22, 37:19, 38:1, 38:21, 40:17, 40:23, 40:25, 41:6, 43:10, 45:16, 46:21, 47:10, 47:12, 48:8, 48:14, 48:19, 50:1, 50:12, 55:15, 55:21, 55:23, 56:17, 57:4, 57:9, 58:4, 58:22, 59:10, 59:14, 60:16, 60:22, 60:23, 61:11, 61:20, 62:2, 62:11, 62:15, 62:19, 63:24, 64:7, 64:9, 64:15, 64:22, 65:2, 65:17, 66:4, 67:8, 67:24, 67:25, 68:3, 68:17, 70:8, 70:22, 70:24
**plaintiffs'** [31] - 6:5, 13:7, 13:19, 13:20, 14:16, 14:25, 15:3, 37:7, 38:9, 45:3, 45:14, 47:6, 47:8, 48:1, 48:11, 48:13, 48:20, 48:21, 50:7, 57:1, 60:10, 61:15, 62:24, 63:7, 67:20, 67:24, 68:7, 68:14, 68:23, 69:1, 70:11
**plan** [1] - 5:16
**play** [1] - 63:12
**pocket** [1] - 29:1
**point** [28] - 10:20, 11:24, 12:7, 12:14, 12:16, 12:19, 13:19, 15:2, 17:20, 17:21, 27:5, 27:9, 31:14, 33:7, 36:7, 42:5,

44:2, 46:4, 46:25, 48:3, 49:18, 59:9, 60:1, 70:7, 71:7, 72:2, 72:19, 73:5
**pointed** [3] - 19:24, 19:25, 70:13
**points** [2] - 47:25, 70:21
**pool** [4] - 50:9, 69:19, 71:5, 72:13
**pose** [1] - 57:7
**position** [8] - 13:11, 23:19, 24:14, 24:16, 24:23, 25:14, 43:16, 71:13
**possession** [3] - 22:22, 34:7, 40:24
**possible** [3] - 11:3, 34:3, 60:20
**possibly** [1] - 38:2
**potential** [2] - 7:23, 58:15
**potentially** [4] - 8:15, 10:1, 11:14, 57:17
**practical** [1] - 8:2
**practice** [3] - 7:9, 7:23, 30:2
**prejudice** [1] - 57:8
**preliminaries** [1] - 15:12
**preliminary** [3] - 8:9, 10:12, 10:13
**preparation** [1] - 31:25
**prepare** [2] - 32:9, 68:11
**prepared** [2] - 14:15, 28:11
**prepping** [1] - 68:9
**prescribed** [1] - 57:15
**prescriber** [2] - 57:3, 60:19
**prescribers** [3] - 57:10, 57:13, 57:22
**presence** [1] - 16:14
**PRESENT** [1] - 2:20
**present** [4] - 14:24, 18:1, 30:15, 32:2
**presentation** [2] - 32:23, 50:7
**presented** [5] - 15:7, 21:17, 21:18, 32:18, 32:19
**preserved** [2] - 20:22, 20:25
**president** [2] - 28:15, 52:11
**pressing** [1] - 33:17
**presumably** [1] - 60:6
**pretty** [1] - 60:14

**previously** [4] - 39:21, 42:13, 44:9, 46:20
**primarily** [1] - 63:2
**Princeton** [1] - 2:18
**Prinston** [1] - 2:10
**prioritize** [1] - 34:23
**prioritized** [1] - 34:2
**Priselac** [20] - 6:3, 10:4, 10:7, 13:1, 13:4, 17:15, 18:18, 22:8, 22:14, 23:21, 29:5, 31:13, 33:10, 33:15, 35:19, 37:4, 40:4, 42:6, 42:10, 45:5
**PRISELAC** [35] - 2:9, 10:6, 13:2, 13:5, 16:2, 16:5, 16:7, 16:12, 17:16, 18:8, 22:15, 23:22, 26:1, 26:3, 28:22, 29:4, 29:6, 29:21, 31:14, 32:6, 33:20, 33:22, 33:24, 37:2, 37:5, 40:8, 40:11, 41:9, 42:4, 42:12, 42:22, 43:1, 43:4, 43:7, 45:6
**privilege** [3] - 5:14, 8:10, 45:11
**privileged** [2] - 46:20, 46:23
**privileges** [1] - 4:25
**proceed** [9] - 4:12, 6:13, 6:19, 7:3, 7:22, 9:21, 19:1, 45:10, 62:6
**proceeded** [1] - 43:20
**proceeding** [1] - 10:17
**proceedings** [2] - 73:15, 73:19
**Proceedings** [1] - 1:24
**PROCEEDINGS** [1] - 3:1
**process** [15] - 6:20, 8:4, 10:15, 13:16, 13:17, 31:17, 34:8, 36:1, 39:1, 39:2, 40:19, 56:25, 59:4, 61:3, 61:9
**PROCTOR** [1] - 1:19
**produce** [5] - 34:11, 34:14, 35:20, 37:8, 43:19
**produced** [29] - 1:25, 11:18, 19:8, 19:9, 19:15, 20:20, 22:18, 22:23, 23:15, 25:13, 26:10, 27:4, 28:23,

29:23, 33:17, 34:2, 34:6, 34:25, 37:15, 37:20, 37:25, 41:16, 42:11, 42:16, 43:3, 43:5, 43:13, 43:22
**producing** [2] - 35:23, 40:21
**product** [6] - 18:5, 34:6, 34:10, 38:15, 39:3, 69:2
**production** [48] - 4:25, 6:3, 7:2, 7:10, 7:23, 7:24, 9:21, 10:24, 12:25, 13:12, 13:17, 13:22, 13:24, 13:25, 15:16, 19:23, 21:21, 21:22, 22:17, 26:8, 26:12, 26:16, 28:25, 30:8, 30:9, 30:17, 31:19, 31:21, 31:24, 31:25, 32:14, 32:16, 32:19, 33:6, 34:3, 35:2, 35:4, 38:4, 38:8, 38:10, 39:11, 40:14, 40:16, 42:18, 45:2, 45:11, 46:23, 64:25
**productions** [3] - 4:16, 15:1, 30:6
**products** [2] - 34:17, 38:19
**PRODUCTS** [1] - 1:4
**progress** [5] - 30:3, 52:15, 70:8, 70:22, 72:15
**project** [1] - 14:5
**promptly** [2] - 30:14, 61:15
**properly** [1] - 27:10
**proportional** [1] - 38:17
**proposal** [2] - 63:7, 71:5
**propose** [1] - 48:4
**protected** [3] - 16:10, 18:3, 21:16
**protection** [2] - 22:1, 22:2
**protective** [2] - 48:17, 58:23
**protocol** [14] - 5:5, 24:24, 25:11, 25:22, 49:23, 55:14, 56:12, 56:25, 61:6, 61:10, 61:11, 62:9, 62:19, 72:20
**Protocol** [1] - 64:12
**protocols** [2] - 48:17, 49:17
**provide** [5] - 13:14,

58:18, 59:23, 62:20, 68:10
**provided** [1] - 23:6
**providing** [2] - 68:15, 68:18
**proving** [1] - 17:21
**provision** [1] - 43:9
**public** [4] - 17:11, 17:17, 68:5
**pull** [2] - 19:12, 28:25
**pulled** [1] - 25:18
**pulling** [1] - 19:13
**punches** [1] - 19:13
**purchase** [1] - 23:16
**purchased** [1] - 36:17
**purport** [1] - 13:25
**purpose** [4] - 64:10, 64:12, 68:9, 71:18
**purposes** [2] - 24:25, 25:12
**pursuant** [1] - 16:21
**pursue** [3] - 70:15, 70:18, 71:1
**pursuing** [2] - 25:19, 71:14
**put** [12] - 4:23, 6:19, 7:11, 8:22, 24:11, 36:25, 64:2, 66:21, 71:5, 71:7, 72:10, 72:14

## Q

**QC** [1] - 31:17
**quality** [1] - 13:16
**questioning** [1] - 69:12
**questions** [3] - 4:23, 11:20, 36:20
**quicker** [2] - 31:6, 31:8
**quickly** [3] - 30:15, 30:19, 70:22
**quite** [7] - 8:5, 15:6, 18:3, 24:10, 26:7, 26:24, 27:13
**quote** [3] - 28:17, 35:21, 72:14
**quoted** [1] - 69:23

## R

**RAFFERTY** [1] - 1:19
**raise** [12] - 6:24, 7:20, 11:20, 30:1, 32:15, 33:8, 44:22, 44:23, 49:16, 50:7, 72:17, 73:4
**raised** [10] - 9:23, 11:8, 11:16, 12:19, 18:18, 22:11, 30:4,

39:13, 39:18, 47:7
**range** [1] - 44:3
**ranges** [4] - 19:25, 35:12, 39:25, 42:19
**rather** [5] - 5:13, 22:19, 27:20, 40:20, 59:20
**re** [2] - 42:19, 49:17
**RE** [1] - 1:4
**re-examined** [1] - 49:17
**re-send** [1] - 42:19
**reached** [3] - 43:6, 46:24, 64:14
**read** [9] - 27:7, 29:11, 29:14, 29:18, 29:21, 42:20, 42:21, 56:19, 57:5
**ready** [4] - 4:3, 46:4
**reality** [2] - 26:18, 26:21
**really** [11] - 13:23, 18:20, 18:22, 25:21, 58:5, 59:5, 59:19, 60:3, 64:10, 68:13, 71:18
**realtime** [1] - 22:19
**reason** [7] - 27:14, 38:25, 47:24, 61:21, 62:22, 64:1, 66:17
**reasonable** [3] - 9:2, 61:9, 61:17
**reasons** [1] - 30:1
**receive** [1] - 32:12
**received** [2] - 20:1, 53:23
**recess** [1] - 51:4
**recipients** [1] - 19:20
**recognize** [1] - 17:10
**record** [9] - 8:7, 12:3, 17:11, 25:13, 25:21, 29:13, 34:4, 42:20, 73:19
**recorded** [1] - 1:24
**records** [13] - 14:10, 14:11, 23:8, 24:8, 27:9, 34:21, 34:24, 37:23, 38:3, 38:7, 60:10, 60:13, 68:5
**recovery** [1] - 49:18
**reference** [3] - 28:14, 39:15, 59:10
**referenced** [3] - 17:3, 34:19, 39:21
**referencing** [1] - 67:17
**referring** [1] - 35:19
**reflects** [1] - 13:21
**refute** [1] - 14:16
**regard** [3] - 4:20, 6:15, 28:12

**regarding** [2] - 14:5, 67:19
**regulatory** [1] - 39:16
**rejected** [2] - 35:22, 38:22
**rejoin** [2] - 50:16, 50:24
**rejoining** [1] - 51:1
**relate** [7] - 14:12, 22:21, 34:24, 36:12, 38:14, 43:17, 69:12
**related** [10] - 7:9, 7:24, 17:21, 18:5, 21:21, 34:5, 37:11, 37:23, 38:18, 43:10
**relates** [5] - 14:10, 14:21, 55:13, 56:23, 62:11
**relationship** [1] - 64:18
**relevance** [1] - 64:5
**relevant** [5] - 10:1, 36:2, 38:17, 57:17, 65:9
**relief** [14] - 13:9, 14:2, 14:9, 14:10, 14:19, 17:21, 27:8, 27:13, 27:16, 27:21, 28:4, 37:1, 41:13
**remain** [1] - 46:3
**remaining** [4] - 52:25, 55:15, 56:10, 56:22
**remarks** [1] - 17:24
**remedy** [2] - 58:23, 63:24
**rep** [2] - 63:4, 64:20
**repeatedly** [3] - 30:5, 35:11, 38:22
**replaced** [2] - 22:22, 23:4
**replacement** [1] - 38:8
**report** [9] - 28:11, 28:13, 28:14, 28:16, 28:18, 28:19, 29:16, 63:9, 63:19
**reporter** [4] - 16:14, 18:19, 19:5, 51:13
**Reporter** [1] - 1:22, 2:23
**REPORTER** [5] - 25:3, 25:6, 45:9, 51:15, 51:18
**Reporter/ Transcriber** [1] - 73:21
**reports** [2] - 33:13, 64:3
**represent** [1] - 70:16
**representations** [1] - 30:20

**representatives** [1] - 62:24
**representing** [2] - 53:3, 67:25
**reps** [5] - 62:13, 62:21, 63:4, 64:14, 64:24
**request** [19] - 7:2, 13:9, 14:8, 14:9, 14:23, 17:21, 17:25, 19:7, 20:11, 24:15, 27:18, 27:21, 29:10, 35:6, 39:21, 41:11, 52:24, 53:13, 57:2
**requested** [2] - 33:14, 53:10
**requests** [7] - 12:24, 13:21, 14:2, 14:18, 19:24, 21:22, 27:13
**require** [4] - 62:12, 62:19, 63:21, 64:2
**required** [1] - 25:11
**resolution** [2] - 7:9, 48:12
**resolve** [7] - 36:7, 41:2, 44:14, 45:25, 47:15, 49:1, 49:8
**resolved** [12] - 18:23, 30:12, 30:14, 32:13, 33:12, 49:7, 52:19, 52:23, 54:3, 54:4, 54:19, 69:13
**resources** [3] - 58:13, 71:22, 72:1
**respect** [4] - 7:20, 9:23, 11:9, 12:23, 18:11, 22:10, 22:21, 27:2, 30:5, 32:16, 40:18, 45:13, 50:11, 56:13
**respectfully** [2] - 7:2, 14:22
**respond** [7] - 24:18, 26:1, 27:10, 29:6, 32:5, 37:2, 59:25
**responded** [2] - 29:19, 48:6
**response** [14] - 15:11, 20:9, 20:19, 27:24, 29:9, 30:10, 31:9, 32:10, 32:12, 48:6, 48:7, 66:20, 66:23, 66:25
**response)** [4] - 3:7, 45:21, 54:10, 55:1
**responses** [1] - 37:8
**responsive** [3] - 25:1, 25:12, 43:12
**restoring** [1] - 52:15
**restricting** [1] - 58:19

**restriction** [3] - 57:6, 57:19
**restrictions** [1] - 59:15
**result** [1] - 13:13
**results** [30] - 33:14, 34:1, 34:10, 34:13, 34:16, 35:11, 35:13, 35:15, 35:21, 35:23, 36:11, 36:12, 37:24, 38:18, 39:8, 39:12, 39:20, 40:6, 40:20, 41:4, 41:15, 42:9, 42:14, 42:15, 42:17, 43:2, 43:16, 44:7
**Results** [1] - 35:5
**retailers** [1] - 41:20
**returnable** [3] - 52:18, 53:14, 54:12
**revelation** [2] - 19:18, 39:16
**revelations** [1] - 20:4
**review** [5] - 9:7, 9:15, 10:17, 12:12, 31:20
**reviewers** [1] - 10:14
**reviewing** [2] - 10:15, 31:19
**revisit** [1] - 71:6
**Righteous** [1] - 54:15
**rights** [1] - 9:12
**ripe** [9] - 45:13, 46:19, 47:3, 47:12, 48:2, 49:24, 50:2, 55:21, 56:17
**RMR** [1] - 73:21
**road** [1] - 59:6
**Road** [2] - 2:14, 2:18
**ROBERT** [2] - 1:10, 2:5
**Robert** [3] - 2:21, 3:2, 53:17
**roles** [1] - 12:11
**rolling** [1] - 58:1
**Roseland** [1] - 1:15
**Roszel** [1] - 2:18
**RPR** [1] - 73:21
**RUBEN** [1] - 1:17
**Ruben** [1] - 3:15
**Rule** [1] - 58:16
**rule** [3] - 8:14, 9:10, 59:20
**ruled** [2] - 8:13, 39:10
**rules** [3] - 11:3, 30:13, 59:23
**ruling** [7] - 6:7, 6:8, 6:10, 6:11, 10:22, 37:12, 69:22
**running** [3] - 31:25, 32:11, 32:25

**S**

**safe** [2] - 48:22, 73:10
**safety** [1] - 47:16
**sale** [1] - 41:22
**sales** [7] - 62:13, 62:21, 63:4, 64:14, 64:20, 64:24
**salespeople** [1] - 67:12
**San** [1] - 2:3
**sartan** [1] - 57:15
**sartans** [1] - 62:25
**saw** [2] - 34:9, 69:7
**scan** [1] - 38:14
**scenario** [4] - 63:1, 63:12, 65:4, 70:20
**schedule** [8] - 4:16, 5:24, 7:12, 7:17, 8:23, 21:20, 32:12, 71:7
**scheduled** [6] - 5:21, 7:8, 51:25, 57:1, 59:6, 70:9
**schedules** [1] - 8:12
**scheduling** [5] - 7:6, 9:14, 11:5, 11:10, 69:12
**Schneider** [4] - 35:22, 38:22, 39:4, 39:10
**Schneider's** [1] - 37:12
**SCHWARTZ** [3] - 53:17, 53:20, 54:6
**Schwartz** [1] - 53:17
**scientist** [1] - 15:22
**scope** [4] - 4:25, 5:13, 13:17, 73:2
**scrubbed** [2] - 19:14, 27:4
**seal** [4] - 17:1, 17:5, 19:4, 21:14
**search** [5] - 8:8, 9:24, 10:12, 10:13, 40:23
**second** [2] - 5:3, 51:23
**secondly** [1] - 35:19
**seconds** [2] - 27:25, 28:2
**secret** [1] - 5:14
**secrets** [2] - 5:1, 8:10
**section** [3] - 13:20, 37:13, 43:15
**see** [19] - 9:16, 20:20, 23:12, 29:24, 32:11, 40:19, 44:8, 48:8, 57:5, 62:1, 67:18, 69:15, 69:23, 70:20, 71:1, 71:8, 71:11, 72:15, 73:10

**seeing** [2] - 15:25, 70:7
**seek** [2] - 9:7, 9:15
**seeking** [6] - 9:10, 21:14, 54:16, 58:24, 61:21, 64:19
**seem** [1] - 4:21
**send** [2] - 42:19, 64:25, 66:22, 67:6, 67:9, 69:2, 69:3
**sender** [1] - 19:21
**senior** [1] - 15:22
**sense** [9] - 9:25, 12:2, 12:7, 13:8, 13:11, 31:20, 43:11
**sensitive** [1] - 28:18
**sent** [3] - 28:11, 42:13, 53:22
**September** [3] - 38:9, 38:11, 40:16
**series** [1] - 13:23
**serious** [3] - 21:6, 21:8, 71:2
**serve** [5] - 24:4, 31:4, 31:10, 31:12
**served** [3] - 4:20, 24:15, 53:22
**service** [1] - 24:5
**session** [1] - 49:10
**set** [4] - 12:9, 13:9, 31:9, 38:4
**SETH** [1] - 2:8
**sets** [1] - 37:15
**seven** [1] - 26:11
**several** [7] - 20:16, 23:24, 24:12, 25:18, 31:6, 31:18, 43:14
**severely** [1] - 58:19
**SHAH** [5] - 2:17, 46:7, 46:12, 46:14, 46:18
**Shah** [2] - 46:7, 46:9
**shah** [1] - 46:10
**shall** [1] - 61:7
**share** [1] - 38:5
**shared** [1] - 39:16
**sharing** [1] - 8:6
**sheet** [1] - 50:7
**sheets** [2] - 38:25, 60:12
**shift** [2] - 54:11, 54:16
**show** [14] - 22:19, 41:21, 51:22, 52:17, 52:24, 53:10, 53:13, 54:1, 54:12, 62:3, 67:24, 68:4, 68:10
**showed** [1] - 69:4
**showing** [3] - 38:16, 48:20, 61:14
**shown** [1] - 68:24
**side** [7] - 36:4, 37:8,

*37:18, 58:17, 59:24, 63:16, 67:22*
**sides** *[3] - 4:14, 58:25*
**sideshow** *[1] - 20:12*
**signal** *[1] - 56:7*
**significant** *[4] - 11:20, 57:7, 58:8, 60:2*
**similar** *[3] - 16:1, 16:4, 23:5*
**simply** *[5] - 8:4, 17:22, 64:12, 64:24, 64:25*
**single** *[5] - 29:14, 34:4, 48:22, 65:5*
**sit** *[1] - 48:15*
**sitting** *[1] - 17:9*
**situation** *[1] - 58:18*
**six** *[1] - 52:11*
**size** *[2] - 4:24, 9:25*
**Slater** *[42] - 3:6, 3:16, 3:20, 3:22, 4:17, 5:4, 5:7, 5:10, 6:14, 7:7, 7:13, 7:25, 9:7, 9:20, 9:23, 10:9, 10:20, 12:8, 15:9, 16:8, 16:23, 18:25, 21:5, 21:13, 22:25, 24:12, 25:3, 26:18, 27:3, 29:8, 29:13, 30:15, 32:9, 33:8, 35:4, 35:7, 39:7, 40:12, 41:11, 42:13, 42:19, 44:1*
**SLATER** *[45] - 1:13, 1:14, 3:22, 4:1, 4:18, 5:11, 8:1, 10:21, 11:11, 11:22, 15:10, 16:3, 16:19, 16:23, 19:2, 23:1, 24:18, 24:21, 25:5, 25:8, 27:25, 28:3, 28:23, 29:17, 29:22, 30:18, 33:10, 35:8, 39:9, 39:24, 41:12, 42:1, 42:9, 44:2, 44:14, 44:24, 45:4, 45:17, 45:23, 50:12, 50:20, 50:23, 51:2, 51:12, 73:12*
**Slater's** *[2] - 17:20, 18:15*
**sleep** *[2] - 63:5, 63:14*
**slotting** *[1] - 8:15*
**slows** *[1] - 30:2*
**smear** *[2] - 15:4, 17:23*
**SMITH** *[3] - 2:21, 51:5, 56:3*
**smoking** *[4] - 20:6, 20:7, 26:19, 26:20*
**smoking-gun** *[1] - 20:6*

**Solco** *[4] - 2:11, 36:15, 41:21, 44:16*
**sold** *[10] - 34:6, 34:17, 36:13, 36:18, 38:15, 38:19, 41:21, 41:22, 44:16*
**solely** *[1] - 34:24*
**someone** *[1] - 56:8*
**sometimes** *[1] - 48:19*
**somewhat** *[2] - 30:21, 39:6*
**somewhere** *[1] - 67:8*
**soon** *[2] - 22:5, 34:3*
**sooner** *[3] - 5:13, 32:10, 32:25*
**sorry** *[12] - 3:23, 4:2, 6:6, 11:21, 11:22, 24:6, 25:3, 25:8, 25:9, 46:9, 55:7, 56:6*
**sort** *[5] - 11:24, 20:12, 46:2, 59:22, 70:20*
**sought** *[1] - 22:12*
**sounds** *[1] - 67:5*
**source** *[1] - 23:8*
**South** *[1] - 2:9*
**spaced** *[1] - 52:7*
**speaking** *[3] - 5:6, 56:8, 72:19*
**Special** *[1] - 3:2*
**SPECIAL** *[1] - 1:11*
**specific** *[13] - 15:6, 29:10, 30:5, 35:12, 35:14, 36:20, 36:23, 37:15, 42:19, 47:16, 65:2*
**specifically** *[5] - 19:7, 61:11, 64:15, 64:21, 65:6*
**specified** *[1] - 30:13*
**spectrometers** *[1] - 20:24*
**speed** *[1] - 73:5*
**spent** *[1] - 37:18*
**spoken** *[1] - 64:14*
**spokesperson** *[2] - 3:5, 3:12*
**spoliation** *[2] - 26:24, 26:25*
**spreadsheet** *[3] - 41:5, 41:6, 41:10*
**squared** *[1] - 69:16*
**stage** *[3] - 49:18, 71:24, 72:1*
**stand** *[5] - 9:22, 12:23, 13:3, 20:10, 22:10*
**standing** *[2] - 5:5, 25:8*
**start** *[14] - 5:16, 8:18,*

*8:22, 8:23, 31:25, 32:11, 48:18, 56:21, 60:18, 61:1, 61:5, 61:7, 61:13, 61:18*
**starting** *[3] - 33:25, 52:1, 52:2*
**starts** *[1] - 48:16*
**state** *[5] - 5:1, 5:14, 8:10, 36:10, 42:19*
**statement** *[3] - 19:8, 35:9, 70:13*
**statements** *[2] - 11:13, 60:10*
**States** *[8] - 3:2, 34:6, 34:17, 35:25, 36:15, 38:15, 38:19, 41:23*
**STATES** *[2] - 1:1, 1:10*
**status** *[2] - 4:15, 53:20*
**stay** *[2] - 16:25, 73:9*
**stays** *[1] - 8:21*
**stenography** *[1] - 1:24*
**Steve** *[1] - 52:20*
**STEVEN** *[1] - 2:13*
**STEWART** *[1] - 2:5*
**Stewart** *[2] - 53:11, 53:14*
**still** *[6] - 13:12, 40:14, 43:13, 55:23, 55:24, 56:1*
**stipulate** *[1] - 39:2*
**Stone** *[2] - 53:11, 53:14*
**stop** *[2] - 59:25, 61:25*
**store** *[2] - 23:9, 23:10*
**Street** *[3] - 1:17, 2:6, 2:9*
**Streets** *[1] - 1:7*
**stunned** *[1] - 17:12*
**subject** *[4] - 18:6, 28:12, 44:17, 53:25*
**submission** *[5] - 37:7, 47:24, 48:5, 48:8, 55:16*
**submit** *[2] - 5:18, 46:4*
**submitted** *[1] - 32:3*
**subpoena** *[3] - 24:5, 24:8, 24:15*
**subsequent** *[1] - 46:23*
**substantial** *[2] - 26:8, 32:14*
**substantially** *[2] - 13:12, 28:24*
**suddenly** *[1] - 24:10, 24:12*
**suggest** *[1] - 57:18*
**suggested** *[3] - 11:23, 57:2, 61:4*

**suggesting** *[2] - 50:24, 60:21*
**Suite** *[4] - 1:17, 1:20, 2:3, 2:14*
**summarize** *[1] - 34:12*
**summary** *[10] - 34:9, 34:16, 34:18, 40:20, 40:23, 40:25, 41:5, 41:8, 69:3*
**summer** *[4] - 7:13, 8:25, 37:18, 43:18*
**Sundermeir** *[4] - 52:25, 53:1, 53:3, 53:4*
**supplemental** *[2] - 12:24, 21:22*
**supplemented** *[1] - 32:2*
**supply** *[4] - 36:16, 38:22, 39:1, 41:18*
**support** *[1] - 27:17*
**suppose** *[2] - 12:2, 46:3*
**supposed** *[2] - 24:25*
**surgeon** *[1] - 57:23*
**surprised** *[2] - 28:7, 48:8*
**suspect** *[2] - 6:22, 7:19*
**swipe** *[1] - 27:20*

---

## T

**tactic** *[1] - 15:3*
**tag** *[1] - 37:8*
**talks** *[2] - 13:21, 37:14*
**target** *[1] - 4:21*
**tat** *[2] - 66:18, 67:17*
**team** *[6] - 29:8, 29:14, 29:17, 31:7, 46:1, 63:7*
**technical** *[3] - 10:16, 18:4, 29:12*
**TELECONFERENCE** *[1] - 1:6*
**teleconference** *[1] - 3:1*
**telephone** *[1] - 21:18*
**Telephone** *[1] - 25:2*
**ten** *[8] - 19:20, 58:17, 59:1, 59:23, 65:23, 70:1, 71:6*
**ten-deposition** *[1] - 59:23*
**tenor** *[1] - 30:19*
**tens** *[1] - 40:21*
**tenth** *[1] - 37:20*
**tenuous** *[1] - 63:20*
**term** *[2] - 10:13*
**terms** *[13] - 6:4, 7:6, 8:9, 9:13, 9:24,*

*21:14, 34:20, 38:6, 38:17, 49:13, 66:6, 66:12, 71:21*
**terrible** *[1] - 55:8*
**test** *[15] - 21:3, 35:11, 35:13, 35:15, 35:23, 36:10, 36:12, 39:11, 39:20, 40:20, 41:4, 41:15, 42:9, 43:2, 44:7*
**tested** *[3] - 35:10, 39:17, 42:24*
**testified** *[1] - 25:18*
**testimony** *[2] - 17:3, 36:5*
**testing** *[33] - 14:10, 14:11, 15:23, 21:3, 27:9, 33:14, 34:1, 34:4, 34:9, 34:10, 34:12, 34:16, 34:21, 34:24, 37:13, 37:15, 37:16, 37:19, 37:24, 38:3, 38:7, 38:18, 39:8, 39:19, 40:6, 41:16, 42:8, 42:14, 42:15, 42:17, 43:16, 44:11*
**Testing** *[1] - 35:5*
**tests** *[1] - 14:12*
**Teva** *[12] - 2:15, 2:15, 36:16, 41:22, 44:17, 52:21, 63:1, 63:7, 63:15, 63:17, 64:1*
**Teva's** *[1] - 63:2*
**Texas** *[1] - 2:3*
**text** *[1] - 56:3*
**THE** *[8] - 1:1, 1:10, 1:11, 25:3, 25:6, 45:9, 51:15, 51:18*
**thereafter** *[1] - 70:18*
**they've** *[10] - 24:8, 26:7, 26:10, 26:22, 27:8, 29:2, 38:6, 38:16, 67:11, 70:16*
**third** *[2] - 52:12, 58:22*
**THOMAS** *[2] - 1:11, 1:19*
**Thomas** *[1] - 3:3*
**thousands** *[5] - 38:14, 40:21, 62:14, 62:17, 62:22*
**three** *[8] - 26:15, 51:6, 52:17, 53:10, 54:13, 57:14, 57:23, 68:20*
**throwing** *[2] - 20:3, 27:11*
**Thursday** *[1] - 52:1*
**ties** *[1] - 5:20*
**timeframe** *[1] - 30:12*
**timing** *[1] - 13:18*

**tit** [2] - 66:18, 67:17
**title** [1] - 12:25
**titled** [1] - 35:4
**today** [22] - 8:20, 12:3, 15:7, 29:1, 29:14, 31:8, 33:12, 33:16, 33:17, 44:15, 44:19, 45:25, 46:10, 47:13, 49:24, 50:2, 50:10, 51:13, 54:25, 56:18, 62:8, 72:23
**today's** [2] - 13:19, 19:13
**together** [4] - 58:25, 59:4, 59:16, 64:3
**Tom** [1] - 55:25
**took** [3] - 48:7, 63:8, 68:24
**Torrent** [3] - 36:16, 41:22, 44:17
**total** [3] - 17:18, 48:25, 58:9
**totally** [2] - 14:7, 58:9
**touch** [1] - 18:14
**towards** [1] - 52:15
**toying** [1] - 33:2
**transcript** [2] - 1:24, 73:18
**transcription** [1] - 1:25
**transmission** [1] - 25:2
**TRAURIG** [1] - 2:12
**Traurig** [4] - 47:22, 52:21, 55:4, 55:11
**travel** [4] - 7:17, 12:7, 12:12, 12:15
**treater** [10] - 49:23, 55:13, 57:4, 59:1, 60:19, 61:6, 64:14, 68:11, 68:14, 72:20
**Treater** [1] - 64:11
**treaters** [15] - 56:13, 57:11, 57:14, 57:17, 58:3, 58:7, 58:8, 58:10, 58:20, 58:22, 59:5, 59:20, 62:17, 62:24, 68:8
**treating** [11] - 56:11, 56:24, 62:9, 62:14, 62:16, 62:19, 63:4, 65:6, 65:11, 65:20, 66:19
**trend** [1] - 13:21
**trial** [8] - 46:14, 51:25, 52:2, 52:5, 52:6, 57:9, 58:11, 58:15
**trials** [2] - 52:2, 52:4
**tried** [1] - 51:25
**triggered** [1] - 31:9

**true** [2] - 28:22, 29:7
**try** [16] - 7:14, 15:14, 20:3, 20:11, 28:5, 30:22, 31:6, 38:21, 39:20, 41:1, 55:9, 57:8, 59:4, 64:2, 69:15, 70:22
**trying** [6] - 5:22, 17:22, 30:25, 39:18, 44:19, 61:9
**turn** [4] - 8:3, 20:12, 24:17, 60:5
**two** [35] - 9:3, 19:5, 30:24, 32:4, 32:8, 32:10, 32:24, 32:25, 36:11, 37:4, 43:7, 48:19, 52:11, 54:13, 57:3, 57:15, 57:20, 57:25, 58:5, 58:7, 58:9, 60:18, 60:21, 61:1, 61:5, 61:7, 61:8, 61:13, 61:18, 61:21, 61:25, 62:4, 64:6, 69:21, 72:8
**two-week** [2] - 32:10, 32:25
**type** [2] - 31:21, 65:5
**types** [1] - 13:14

## U

**U.S** [3] - 1:7, 2:11, 36:18
**ultimately** [3] - 10:12, 11:6, 43:24
**unable** [3] - 3:18, 49:8, 56:13
**unavoidable** [1] - 30:7
**uncover** [1] - 64:16
**under** [7] - 18:3, 21:9, 22:1, 22:2, 25:22, 58:16, 63:6
**underlying** [4] - 19:7, 20:17, 34:20, 44:11
**understandable** [1] - 6:17
**understandably** [1] - 21:7
**understood** [2] - 9:6, 72:2
**undertaking** [1] - 37:21
**undue** [1] - 73:1
**unduly** [1] - 41:3
**unfair** [1] - 58:6
**unfortunately** [2] - 64:13, 70:23
**UNITED** [2] - 1:1, 1:10
**United** [5] - 3:2, 34:6, 34:17, 35:25, 36:15, 38:15, 38:19, 41:22

**universe** [2] - 10:1, 47:1
**unless** [4] - 5:6, 28:25, 45:23, 46:11
**unnecessary** [2] - 58:13, 71:14
**unpacked** [1] - 39:6
**unquote** [2] - 28:17, 35:21
**unreasonable** [2] - 61:1, 64:4
**unreasonably** [1] - 58:21
**unrelated** [3] - 14:8, 14:20, 15:6
**unsupported** [1] - 13:23
**unusual** [1] - 61:24
**unworkable** [2] - 58:5, 59:3
**up** [26] - 20:18, 22:14, 24:6, 24:7, 24:13, 25:4, 25:9, 26:17, 38:18, 39:3, 45:8, 48:9, 48:20, 49:9, 51:23, 54:6, 55:7, 57:8, 57:21, 58:9, 58:11, 58:15, 58:16, 59:1, 63:18, 66:17
**update** [2] - 10:11, 54:19
**updates** [2] - 53:13, 54:16
**USA** [1] - 2:15
**USDMF** [17] - 34:5, 34:11, 34:25, 35:19, 35:21, 37:10, 37:23, 39:8, 40:6, 42:15, 42:17, 42:25, 43:3, 43:10, 43:13, 43:17, 44:11
**USDMF-grade** [8] - 34:25, 35:19, 37:10, 37:23, 39:8, 40:6, 42:17, 43:17
**utilized** [2] - 36:13, 44:10

## V

**vacancies** [1] - 52:10
**vacations** [2] - 7:13, 7:15
**vaccinated** [2] - 48:17, 48:23
**valsartan** [24] - 14:13, 15:20, 17:12, 34:5, 34:10, 35:10, 35:20, 35:21, 35:23, 35:24, 36:13, 37:10, 37:11, 37:23, 39:8, 40:6,

41:16, 42:17, 42:25, 43:13, 43:17, 57:13, 62:25, 63:6
**VALSARTAN** [1] - 1:4
**Vanaskie** [4] - 3:3, 51:5, 55:17, 55:25
**VANASKIE** [85] - 1:11, 3:4, 3:8, 3:11, 3:25, 4:3, 4:8, 5:3, 6:1, 6:16, 7:25, 9:6, 10:5, 10:19, 11:1, 11:21, 12:4, 12:17, 13:3, 15:8, 16:8, 16:15, 16:20, 17:14, 18:9, 18:24, 21:5, 22:24, 23:21, 24:20, 25:7, 26:2, 28:1, 29:5, 29:25, 31:13, 31:23, 32:7, 33:19, 33:21, 33:23, 35:7, 37:3, 39:5, 39:23, 40:3, 40:9, 41:7, 41:10, 41:25, 42:3, 42:5, 42:10, 42:21, 42:23, 43:2, 43:5, 44:1, 44:13, 44:21, 44:25, 45:5, 45:7, 45:10, 45:19, 45:22, 46:6, 46:9, 46:13, 46:16, 47:4, 47:18, 47:20, 49:6, 49:22, 50:5, 50:14, 50:21, 51:1, 51:3, 51:8, 53:1, 55:25, 56:5, 73:14
**vast** [1] - 70:19
**vendor** [1] - 25:1
**venture** [1] - 65:22
**version** [1] - 19:16
**versioning** [1] - 25:23
**versus** [1] - 44:17
**via** [6] - 3:1, 21:10, 21:18, 30:11, 32:13, 33:2
**VIA** [1] - 1:6
**vice** [1] - 28:15
**Victoria** [5] - 47:21, 55:3, 55:11, 67:16, 72:19
**VICTORIA** [1] - 2:13
**view** [1] - 15:5
**viewing** [1] - 37:7
**visits** [1] - 63:4
**volume** [1] - 42:18

## W

**wait** [7] - 10:23, 31:24, 49:4, 49:13, 49:19, 50:20, 50:25
**waiting** [1] - 3:11
**waived** [1] - 22:3

**WALLACK** [1] - 2:17
**Walnut** [1] - 2:6
**wane** [1] - 48:16
**wants** [4] - 29:13, 36:4, 45:23, 64:7
**waste** [1] - 71:22
**wasting** [1] - 58:12
**WATTS** [1] - 2:2
**Wednesday** [3] - 6:6, 6:8, 24:7
**week** [14] - 6:23, 7:14, 9:5, 10:8, 22:3, 32:10, 32:25, 48:12, 49:2, 49:7, 49:11, 51:25, 52:13, 73:3
**week's** [2] - 13:6, 13:7
**weeks** [6] - 7:19, 20:16, 30:25, 32:5, 32:8, 32:24
**whatsoever** [5] - 26:20, 27:1, 40:13, 63:22
**wheel** [1] - 3:18
**whichever** [1] - 23:10
**whole** [4] - 24:10, 26:23, 37:13, 41:18
**wholly** [1] - 36:14
**Wikipedia** [1] - 20:7
**Wilcox** [2] - 52:18, 52:23
**wild** [1] - 64:6
**wild-goose** [1] - 64:6
**willing** [6] - 11:25, 41:1, 43:19, 48:25, 61:7, 68:16
**winnow** [3] - 71:5, 71:16, 72:13
**winnowing** [11] - 69:19, 70:11, 70:21, 71:10, 71:12, 71:19, 72:5, 72:7, 72:17, 72:23, 72:25
**withdrawn** [2] - 52:24, 54:5
**witnesses** [5] - 12:1, 12:11, 20:13, 25:15, 25:18
**wondering** [1] - 50:24
**word** [2] - 18:25, 27:3
**Worikeena** [1] - 54:14
**works** [1] - 24:9
**world** [2] - 15:19, 63:10
**worried** [1] - 67:21
**worse** [1] - 3:17
**write** [3] - 27:15, 31:21, 48:9
**write-up** [1] - 48:9
**writes** [1] - 15:24
**written** [2] - 29:7,

31:18
*wrote* [2] - 15:12, 28:16

## Y

*year* [5] - 23:25, 34:22, 35:1, 40:5, 43:21
*years* [1] - 20:24
*yesterday* [6] - 6:6, 17:8, 24:6, 48:1, 58:1, 61:3
*yourselves* [1] - 49:8

## Z

*ZH00120312* [1] - 42:22
*Zhejiang* [1] - 2:11
*ZHP* [60] - 3:17, 4:21, 6:8, 6:9, 6:11, 6:13, 6:23, 7:22, 8:3, 8:5, 9:7, 10:7, 11:8, 11:13, 12:13, 13:22, 14:22, 15:4, 15:19, 17:1, 17:5, 17:11, 17:23, 19:14, 19:23, 20:8, 20:22, 21:8, 21:21, 23:19, 23:23, 24:4, 24:9, 24:15, 24:16, 25:13, 27:10, 28:13, 28:15, 28:20, 29:2, 30:10, 32:4, 32:23, 33:14, 35:12, 35:20, 36:14, 36:17, 36:22, 37:8, 39:2, 39:10, 39:18, 41:12, 45:2, 45:4, 45:5
*ZHP's* [5] - 24:23, 33:6, 35:9, 37:17, 39:15
*ZHP00117716* [1] - 42:22
*ZHP038* [1] - 29:8
*ZHP17* [2] - 34:4, 42:18
*Zoom* [11] - 14:24, 18:1, 18:21, 20:12, 21:10, 21:20, 27:19, 30:11, 32:13, 33:2, 49:10