UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION, | MDL NO. 2875<br><br>HON. ROBERT B. KUGLER |

**THIS DOCUMENT RELATES TO:**
*MSP Recovery Claims, Series, LLC. v. Huahai US, Inc., et al.*

Case No: 1:18-cv-25260-CMA

## NOTICE OF VIDEOTAPED DEPOSITION OF MARGARET FINN

PLEASE TAKE NOTICE that, in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Fact Witness Deposition Protocol in this case (Case Management Order No. 20, Dkt. 632), Defendants Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and Actavis Pharma, Inc. (collectively, "Teva") will take the deposition upon oral examination of Margaret Finn on **July 30, 2021 at 9:00 a.m.** EDT via remote deposition while the witness is at her home or office or other location agreed to by the parties. The deposition will be videotaped and recorded stenographically, and will continue from day to day until completed before a person duly authorized to administer oaths who is not counsel of record or interested in the events of this case. Remote access using audio-visual conference technology will be available to permit counsel for the parties to participate from various, separate locations.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff MSP Recovery Claims Series, LLC ("MSPRC") has identified Margaret Finn to testify on its behalf regarding the Federal Rule of Civil Procedure 30(b)(6) topic numbers 9, 10, 11, 12, 16, 17, 18,

1

19, 21, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 41, 42, 43, and 44 issued to MSPRC listed on the attached **Exhibit A**. Ms. Finn will testify to those topics as they pertain to Emblem Health and Connecticare, one of MSPRC's assignors, followed by deposition of the witness in her individual capacity. Also, no later than one week prior to the deposition, the witness shall produce any and all documents in her possession, custody, or control relating to each topic on Exhibit A to the extent such documents have not been previously produced.

The attorney contacts for the deposition are:

> Gregory E. Ostfeld
> Tiffany M. Andras
> Greenberg Traurig LLP
> 77 W. Wacker Dr., Suite 3100
> Chicago, Illinois 60601
> (312) 456-8400
> ostfeldg@gtlaw.com
> andrast@gtlaw.com

Additionally, in accordance with paragraph B(1) of C.M.O. 20 (Dkt. 632), notice is hereby given that Gregory E. Ostfeld will be the lead questioning attorney during the deposition.

Date: June 29, 2021

Respectfully submitted,

/s/ *Tiffany M. Andras*
Lori G. Cohen, *Lead Counsel*
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Rd., NE,
Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com

Gregory E. Ostfeld
Tiffany M. Andras
77 West Wacker Drive, #3100

2

Chicago, IL 60601  
Ph. (312) 456-8400  
Fax (312-) 456-8435  
<u>ostfeldg@gtlaw.com</u>  
<u>andrast@gtlaw.com</u>

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2021, I caused a true and correct copy of the foregoing Notice of Videotaped Deposition of Margaret Finn to be filed with the Court's ECF system and served upon counsel of record, with copies to counsel for Plaintiffs as indicated below:

RIVERO MESTRE LLP
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
ANDRÉS RIVERO
JORGE A. MESTRE
ALAN H. ROLNICK
CHARLES E. WHORTON
DAVID L. DAPONTE
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: cwhorton@riveromestre.com
E-mail: ddaponte@riveromestre.com
Secondary: npuentes@riveromestre.com

CHRISTOPHER LUKE COFFIN
PENDLEY BAUDIN & COFFIN LLP
E-mail: ccoffin@pbclawfirm.com

DAVID JOHN STANOCH
KANNER & WHITELEY, LLC
Email: d.stanoch@kanner-law.com

MSP Recovery Law Firm
5000 S.W. 75th Avenue, Suite 400
Miami, Florida 33155
Frank C. Quesada, Esq.,
E-mail: serve@msprecovery.com
E-mail: fquesada@msprecovery.com

 

    /s/ Tiffany M. Andras
*Attorney for Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and Actavis Pharma, Inc.*

# **EXHIBIT A**

# RULE 30(b)(6) TOPICS FOR MSP RECOVERY CLAIMS, SERIES LLC

## DEFINITIONS

a)  "Action" means the multi-district litigation pending in the U.S. District Court for the District of New Jersey, captioned *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Civ. No. 19-2875.

b)  "Stipulation" means the Stipulation Regarding Discovery filed by MSPRC and Defendants in the Action on December 2, 2020 (ECF No. 648).

c)  Except where otherwise defined herein, all capitalized terms used in these topics shall have the meaning set forth in the Stipulation.

d)  "Complaint" means the Consolidated Second Amended Economic Loss Class Action Complaint filed in the Action on March 13, 2020 (ECF No. 398).

e)  "MSPRC," "Plaintiff," "You," and "Your" means Plaintiff MSP Recovery Claims, Series LLC and all Series LLCs of MSPRC, and their respective officers, directors, employees, partners, principals, members, agents, representatives, attorneys, parents, subsidiaries, affiliates, related entities, assigns, predecessors-in-interest, successors-in-interest, and every person acting or who has ever acted on their behalf.

f)  "ConnectiCare" means ConnectiCare, Inc., and its officers, directors, employees, partners, principals, members, agents, representatives, attorneys, parents, subsidiaries, affiliates, and related entities.

g)  "EmblemHealth" means Group Health, Inc. and Health Insurance Plan of Greater New York, and their respective officers, directors, employees, partners, principals, members, agents, representatives, attorneys, parents, subsidiaries, affiliates, and related entities.

h)  "SummaCare" means SummaCare, Inc., and its officers, directors, employees, partners, principals, members, agents, representatives, attorneys, parents, subsidiaries, affiliates, and related entities.

i)  "Claims" means all causes of action asserted by MSPRC (whether on its own behalf or as assignee) in the Action or any related litigation, or which MSPRC anticipates asserting in any amended pleading in the Action or any related litigation.

j)  "Valsartan" means any drug containing any form of valsartan, whether brand name or generic, whether alone or in combination with another drug, and whether or not alleged to be adulterated, misbranded, or unapproved as a result of any alleged contamination or impurity.

k)  "At-Issue Valsartan" means any version of Valsartan alleged by the TPP Plaintiffs, including MSPRC, to be the subject of the TPP Plaintiffs' claims and allegations, including but not limited to any version of Valsartan the TPP Plaintiffs allege to have been adulterated, misbranded, unapproved, non-merchantable, worthless, contaminated, impure, not therapeutically equivalent to their reference listed drugs, or otherwise unfit for sale or use.

1

l) "Replacement Drug" means any drug for which ConnectiCare, EmblemHealth, or SummaCare paid money to replace or substitute a prescription for At-Issue Valsartan following the recall of any At-Issue Valsartan.

m) "Plan" means any and all health benefit, care or insurance plan or plans offered by, sponsored by, or in any way provided through ConnectiCare, EmblemHealth, or SummaCare to or on behalf of the government; employers, employee organizations, or their employees; unions or their members; and/or other sponsors and their policyholders, subscribers, beneficiaries, enrollees, participants, or other third parties, which provide for the payment, reimbursement, and/or coverage for prescription drugs, including but not limited to any Medicare Advantage plans, single-employer plan, multiemployer plan, multiple employer welfare arrangement, group insurance policies, or any other form of coverage on which You base any claim for damage in this case.

n) "At-Issue Plan" means any and all Medicare Advantage Plans offering Medicare Parts C or D coverage, or both, provided through ConnectiCare, EmblemHealth, or SummaCare to or on behalf of the government; employers, employee organizations, or their employees; unions or their members; and/or other sponsors and their policyholders, subscribers, beneficiaries, enrollees, participants, or other third parties, which provide for the payment, reimbursement, and/or coverage for prescription drugs, including but not limited to any Medicare Advantage plans, single-employer plan, multiemployer plan, multiple employer welfare arrangement, group insurance policies, or any other form of coverage on which You base any claim for damage in this case.

o) "Insured" or "Insureds" mean employees, employers, members, subscribers, policyholders, participants, beneficiaries, enrollees and/or other insureds under any At-Issue Plan.

p) "PBM" means a pharmacy benefit management company and refers to any organization that manages pharmacy benefits for managed care organizations, other medical providers, or employers.

q) "Formulary" means the Formulary, preferred drug list, or other list of prescription drugs that are covered by any At-Issue Plan, including any tiers or levels of preference in which drugs are categorized, and all amendments, modifications, supplements, or revisions thereto.

r) "Relevant Time Period" means January 1, 2012 to the present and all matters for examination specified in the Topics below, unless otherwise specified, are limited to the Relevant Time Period. The definition and scope of the term Relevant Time Period does not constitute an admission by Defendants or evidence with respect to the appropriate definition of any class which may be certified in the above-captioned matter or in any other matter involving Valsartan or other blood pressure medications.

# TOPICS

## *Assignments*

1. The assignments of Claims by each of ConnectiCare, EmblemHealth, and SummaCare to MSPRC.

2. The identity of the specific Series LLC, if any, to which each of ConnectiCare, EmblemHealth, and SummaCare assigned its Claims.

3. The relationship between MSPRC and each of the Series LLCs to which each of ConnectiCare, EmblemHealth, and SummaCare assigned its Claims.

4. The terms of MSPRC's limited liability company agreement providing for the establishment of one or more specific series, as referenced in paragraph 35 of the Complaint.

5. The terms of MSPRC's limited liability company agreement granting MSPRC all rights arising from an assignment to its series, along with the right to bring any lawsuit in connection with that assignment, as referenced in paragraph 36 of the Complaint.

6. The terms of MSPRC's operating agreement authorizing MSPRC to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits, as referenced in paragraph 37 of the Complaint.

7. The terms of the irrevocable assignments referenced in paragraphs 37 through 42 of the Complaint.

8. The identities of all persons working for or on behalf of MSPRC, counsel excluded, who: (1) have knowledge related to any allegation made by MSPRC in the Action; (2) have knowledge related to any costs MSPRC alleges to have incurred for which MSPRC seeks damages in the Action; (3) have knowledge related to the At-Issue Plans; (4) provided any information to counsel for MSPRC used in any pleading or filing in the Action, including but not limited to MSPRC's complaints and the Plaintiff Fact Sheets of MSPRC, ConnectiCare, EmblemHealth, or SummaCare; (5) searched for any documents in connection with the Action; (6) prepared any summaries or spreadsheets produced in connection with the Action; (7) reviewed data related to claims by Insureds for Valsartan or other blood pressure medications; or (8) reviewed medical or prescription drug records related to Valsartan or blood pressure medications during the Relevant Time Period.

## *Plans and Coverage*

9. All At-Issue Plans offered by each of ConnectiCare, EmblemHealth, and SummaCare during the Relevant Time Period, including the name of each At-Issue Plan, the type of At-Issue Plan, the At-Issue Plan sponsor(s) (if any), the geographic scope of the At-Issue Plan, eligibility requirements for Insureds under each At-Issue Plan, whether each At-Issue Plan included coverage for any form of Valsartan, and the terms and

      conditions (e.g. deductibles, out-of-pocket maximums, copays or coinsurance, reimbursements, and maximum allowable costs) applicable to such coverage.

10. Whether each of ConnectiCare, EmblemHealth, and SummaCare contracted with or enrolled in a PBM for any At-Issue Plan, including the identity of the PBM, the date(s) of contracting or enrollment in the PBM, and the terms and conditions of the relationship with the PBM, including with respect to Valsartan coverage.

11. The Formulary for each At-Issue Plan offered by each of ConnectiCare, EmblemHealth, and SummaCare (or their respective PBMs) during the Relevant Time Period, including: whether the Formulary included any form of Valsartan; whether the Formulary included other hypertension drugs; and the applicable tier(s) and corresponding terms and conditions of coverage associated with such tier(s).

12. The preferred pharmacy network, if any, for each At-Issue Plan offered by ConnectiCare, EmblemHealth, and SummaCare, including preferred provider terms with any manufacturers, wholesalers, distributors, or pharmacies setting forth agreed prices or negotiated rates charged to any Plan or Insured for Valsartan or any other hypertension drugs.

13. The total number of Insureds in each At-Issue Plan for which ConnectiCare, EmblemHealth, and SummaCare provided coverage for Valsartan during the Relevant Time Period.

14. The number of Insureds on whose behalf each of ConnectiCare, EmblemHealth, and SummaCare made payments for Valsartan during the Relevant Time Period, and the number or percentage of such Insureds receiving At-Issue Valsartan.

15. The number of prescriptions for which each of ConnectiCare, EmblemHealth, and SummaCare made payments for Valsartan during the Relevant Time Period, and the number or percentage of such prescriptions filled with At-Issue Valsartan.

### *Recall*

16. When and how each of ConnectiCare, EmblemHealth, and SummaCare learned about the recall of At-Issue Valsartan, including how ConnectiCare, EmblemHealth, and SummaCare identified recalled Valsartan and the documents, records, or data used by ConnectiCare, EmblemHealth, and SummaCare to identify recalled Valsartan.

17. What action(s) each of ConnectiCare, EmblemHealth, and SummaCare took in response to the recall of At-Issue Valsartan, including any guidance ConnectiCare, EmblemHealth, and SummaCare issued to its Insureds (*i.e.* dispose of the contaminated drug, seek a replacement or a refund, etc.).

18. All communications each of ConnectiCare, EmblemHealth, and SummaCare had with any manufacturers, wholesalers, distributors, or pharmacies regarding the recall of At-Issue Valsartan.

19. All communications each of ConnectiCare, EmblemHealth, and SummaCare had with Insureds regarding the recall of At-Issue Valsartan and all communications or actions by Insureds in response to receiving notice of the recall, including but not limited to obtaining refunds, obtaining replacement medication (and any costs incurred in connection with obtaining such replacement medications), disposing of recalled medications, and/or continuing their use of Valsartan for any period of time following notice of the recall.

### *Payments, Losses, and Damages*

20. All amounts of money paid by each of ConnectiCare, EmblemHealth, and SummaCare for Valsartan on behalf of Insureds during the Relevant Time Period, including whether those payments were under Medicare Part C, or D.

21. Whether, and the extent to which, payments (or reimbursements) for Valsartan by or on behalf of ConnectiCare, EmblemHealth, or SummaCare were affected by an Insured's out-of-pocket maximum, deductible, or other term of the Insured's At-Issue Plan.

22. All amounts of money paid by each of ConnectiCare, EmblemHealth, and SummaCare for At-Issue Valsartan on behalf of Insureds during the Relevant Time Period, including whether those payments were under Medicare Part C, or D.

23. The basis for Your belief that ConnectiCare, EmblemHealth, and SummaCare paid money for At-Issue Valsartan or any recalled Valsartan during the Relevant Time Period.

24. The identities of all payees to whom each of ConnectiCare, EmblemHealth, and SummaCare made payments for Valsartan, including At-Issue Valsartan, during the Relevant Time Period.

25. The price(s) for Valsartan, including At-Issue Valsartan, charged by each payee to each of ConnectiCare, EmblemHealth, and SummaCare during the Relevant Time Period.

26. How the price(s) of Valsartan, including At-Issue Valsartan, compared to the price(s) of other hypertension drugs for which ConnectiCare, EmblemHealth, and SummaCare paid during the Relevant Time Period.

27. The loss in value, if any, incurred by ConnectiCare, EmblemHealth, and SummaCare for At-Issue Valsartan purchased during the Relevant Time Period, and the basis for the loss in value.

28. All amounts of money paid by each of ConnectiCare, EmblemHealth, and SummaCare on behalf of Insureds for Replacement Drugs during the Relevant Time Period, including whether those payments were under Medicare Part A, B, or D.

29. The identities of all payees to whom each of ConnectiCare, EmblemHealth, and SummaCare made payments for Replacement Drugs during the Relevant Time Period.

30. The price(s) for Replacement Drugs charged by each payee to each of ConnectiCare, EmblemHealth, and SummaCare during the Relevant Time Period, or whether any Insureds received a Replacement Drug that resulted in no additional cost to the aforementioned entities.

31. All costs incurred by each of ConnectiCare, EmblemHealth, and SummaCare as a result of the recall of At-Issue Valsartan.

32. All changes in price(s) paid by each of ConnectiCare, EmblemHealth, and SummaCare for Valsartan and other hypertension drugs following the recall of At-Issue Valsartan

33. All rebate(s) negotiated or received by each of ConnectiCare, EmblemHealth, and SummaCare, or by their respective PBMs, during the Relevant Time Period for any purchases of Valsartan, At-Issue Valsartan, Replacement Drugs, or other hypertension drugs.

34. All refunds, reimbursements, credits, or other compensation received by each of ConnectiCare, EmblemHealth, and SummaCare, by their respective PBMs, or by their Insureds, from any source in connection with the recall of any At-Issue Valsartan, including the source(s) and amount(s) of such refunds, reimbursements, credits, or other compensation.

35. All other damages claimed by ConnectiCare, EmblemHealth, SummaCare, or MSPRC, including the type(s) of damage(s), the amount(s), and the method(s) of calculating such damage(s).

### *Records and Data*

36. The location and format of any documents, records, or other data in the possession, custody, or control of MSPRC, or otherwise available to MSPRC, reflecting the At-Issue Plans offered by ConnectiCare, EmblemHealth, and SummaCare during the Relevant Time Period, including but not limited to At-Issue Plan documents, certificate(s) of coverage, PBM contracts or agreements, formularies, enrollee/plan participant records, and prescription records.

37. The location and format of any documents, records, or other data in the possession, custody, or control of MSPRC, or otherwise available to MSPRC, reflecting any amounts of money paid by each of ConnectiCare, EmblemHealth, and SummaCare for Valsartan, At-Issue Valsartan, or Replacement Drugs during the Relevant Time Period.

38. The location and format of any documents, records, or other data in the possession, custody, or control of MSPRC, or otherwise available to MSPRC, identifying the manufacturer(s) of any Valsartan for which ConnectiCare, EmblemHealth, or SummaCare paid.

39. The capability of MSPRC to conduct searches for the details of claims received and paid by each of ConnectiCare, EmblemHealth, and SummaCare for Valsartan, At-Issue Valsartan, or Replacement Drugs during the Relevant Time Period.

40. The capability of MSPRC to conduct searches for the details of claims received and paid by any of the 36 Assignors for Valsartan, At-Issue Valsartan, or Replacement Drugs during the Relevant Time Period.

### *Representations and Warranties*

41. All representations or omissions made to each of MSPRC, ConnectiCare, EmblemHealth, or SummaCare by each Defendant forming the basis for any Claim.

42. All contacts, communications, and interactions between each of MSPRC ConnectiCare, EmblemHealth, or SummaCare and each Defendant regarding Valsartan or At-Issue Valsartan.

43. All warranties made to each of MSPRC, ConnectiCare, EmblemHealth, or SummaCare by each Defendant forming the basis for any Claim.

44. All notice(s) given by each of MSPRC, ConnectiCare, EmblemHealth, or SummaCare to any Defendant of any breach of warranty forming the basis for any Claim.

### *Class Issues*

45. MSPRC's knowledge regarding the composition and membership of the Putative TPP Class.

46. MSPRC's knowledge or awareness of any documents, records, or other data reflecting the composition, membership, or claims of members of the Putative TPP Class.

47. MSPRC's understanding of its responsibilities as a class representative for the Putative TPP Class.

48. MSPRC's qualifications to serve as a class representative on behalf of the Putative TPP Class.

49. MSPRC's actions in furtherance of its role as a class representative for the Putative TPP Class.

50. The scope of injunctive relief demanded by MSPRC or its assignors and the basis upon which MSPRC or its assignors seek injunctive relief.

51. MSPRC's and its assignors' history as litigants in any prior or current lawsuits.