```
                UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY


_____
                                 CIVIL ACTION NUMBER:
IN RE:  VALSARTAN, LOSARTAN,
AND IRBESARTAN PRODUCTS          1:19-md-02875-RBK-KW
LIABILITY LITIGATION
                                 STATUS CONFERENCE
                                    (Via telephone)
_____

      Tuesday, July 13, 2021
      Commencing at 4:00 p.m.

B E F O R E:        SPECIAL MASTER,
                    THE HONORABLE THOMAS I. VANASKIE


A P P E A R A N C E S:

      LEVIN PAPANTONIO
      BY:  DANIEL A. NIGH, ESQUIRE
      316 S. Baylen, Suite 600
      Pensacola, Florida 32502
      For the Plaintiffs

      DUANE MORRIS LLP
      BY:  SETH A. GOLDBERG, ESQUIRE
      30 S. 17th Street
      Philadelphia, Pennsylvania 19103
      For the Defendant, ZHP and the Joint Defense Group

      GREENBERG TRAURIG LLP
      BY:  VICTORIA LOCKHARD, ESQUIRE
      3333 Piedmont Road, NE, Suite 2500
      Atlanta, Georgia 30305
      For the Defendants, Teva Pharmaceutical Industries Ltd.,
      Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
      Pharma, Inc.



          Karen Friedlander, Official Court Reporter
                friedlanderreporter@gmail.com
                        (856) 756-0160

         Proceedings recorded by mechanical stenography;
      transcript produced by computer-aided transcription.
```

1          (ALL PARTIES VIA ZOOM VIDEOCONFERENCE; JULY 13,
2  2021; 4:00 p.m.)
3          THE COURT:  Hello, everyone.  Karen, you're there?
4          THE COURT REPORTER:  Yes, Judge.
5          THE COURT:  All right.  Thank you very much.  Are we
6  waiting on anyone?  Can someone speak on behalf of the
7  plaintiffs, as far as whether we're waiting on anyone?
8          MR. NIGH:  Yes, Your Honor, this is Daniel Nigh.  I
9  don't believe that we're waiting on anybody currently for the
10 issues today.
11         THE COURT:  All right.  Very well.  Mr. Goldberg, are
12 we waiting on anyone on the defense side?
13         MR. GOLDBERG:  No, Your Honor, I think we can
14 proceed.
15         THE COURT:  All right.  Very well.
16         It looks like we have just one item on the agenda for
17 today, and that deals with whether depositions of bellwether
18 plaintiffs should be in person.
19         There was one other item I wanted to raise and that
20 is a procedure or a protocol to follow in the event that there
21 are, as there were the last time, discussions with respect to
22 confidential matters, and so I think -- I wanted just to
23 briefly talk about that.
24         We have made arrangements to have a separate phone
25 number to use that would not be available to anyone but the

participants in the call when we start addressing matters that are -- that have been deemed confidential under the order in this matter, and so I could circulate that to liaison counsel, ask you to distribute it to counsel.

Are you in agreement that we should adopt a procedure like that? I guess I'll ask Mr. Goldberg, since I --

MR. GOLDBERG: Your Honor, absolutely. There has to be a procedure, to the extent that these are proceedings that should mimic courtroom proceedings, there has to be a way to have a discussion about confidential information that is not disclosed to third parties or to nonparties. So if that's the -- that seems to be one way to do it. I suppose another way to do it would be if any nonparties are on the call, to ask them to leave the call, and then come back on, but it is a little bit -- there is a logistical issue and maybe a separate number is the right way to do it.

THE COURT: Okay. Mr. Nigh?

MR. NIGH: I think that makes sense, Your Honor. I think that's fair to have it, and I agree with Mr. Goldberg that having a separate line or number or -- I think that's going to be necessary, otherwise if they provided it, they're going to get on. They might show up late, you know, and then see all the information.

THE COURT: Sure. One thing I would ask is in the agenda letters that you at least identify subjects that you

1  believe will fall under the provisions of the confidentiality
2  order, and what I might suggest when I see that, that our call
3  will start with the confidential matters and try to resolve
4  those first, and then have anything else that we need to
5  discuss come up afterwards, all right?
6          So I will ask, and we'll send this out by way of a
7  formal notice, that the agenda letters identify matters that
8  you anticipate covering that will implicate matters that have
9  been designated as confidential, either documents or
10 deposition transcript excerpts, and so that we can be aware of
11 that, that we will start our calls discussing the confidential
12 matters on this separate dial-in number, and then we would
13 move over to what I would say is the public number, the one
14 that the press may have access to.
15         Obviously, there can be situations where the
16 discussion gets into matters that are covered by confidential
17 that the discussion was not necessarily anticipated, but
18 covers -- strays into areas that are covered by the
19 confidentiality order, then I would ask counsel, as you did
20 last time, Mr. Goldberg, properly so, just interrupt, say
21 we're getting into matters that are covered by the
22 confidentiality order and we will retire to the confidential
23 line.  All right?
24         MR. GOLDBERG:  Thank you, Your Honor.
25         MR. NIGH:  Okay.

1  THE COURT:  All right.  So let's talk about the --
2 this question of depositions of bellwether plaintiffs.  We do
3 have in place protocol that had been negotiated and approved
4 by Judge Schneider that governs the protocol for depositions
5 that, as I read it, contemplated that fact depositions,
6 depositions of fact witnesses would be done remotely if
7 requested by any party.  But that was before we had the
8 developments that we've seen with the prevalence of
9 vaccinations and the safety of the vaccinations and the
10 results from the vaccinations that perhaps that's no longer
11 necessary, and so I -- on the other hand, we do have the order
12 in place, Case Management Order CMO 20 in place.
13       That, seems to me, needs -- would need to be revised,
14 but it is in place right now, and it seems to me that if we're
15 going to require the witness, the bellwether plaintiff to be
16 deposed in person and not remotely, we would have to change
17 CMO 20.  So I guess that's the first question.
18       Do you believe that's necessary, that we change
19 CMO 20?  Mr. Goldberg?
20       MR. GOLDBERG:  Your Honor, I'm going to pass this
21 issue on to Ms. Lockard who has been handling this for the
22 defense counsel.
23       THE COURT:  Okay.  Thank you.
24       MS. LOCKARD:  Hi, Judge.  You know, I don't know if
25 you got the notice, but we did confer with plaintiffs' counsel

*1* today and I think we worked out the last two of the
*2* outstanding issues on plaintiff bellwether depositions.  But,
*3* you know, it is a broader question, because although, you
*4* know, defense depositions are coming to a conclusion,
*5* plaintiff bellwether depositions, I believe we have around 17
*6* or so left, and the parties have worked together for the most
*7* part.
*8*          Some of those have agreed to proceed in person, some
*9* of those we've agreed could proceed remotely, as long as all
*10* counsel were remote.  You know, I think there were some
*11* concerns on some prior depositions where, you know, there were
*12* plaintiffs' lawyers in the room with the witness and there was
*13* some disruption.  I can't speak directly to that, I wasn't
*14* there.
*15*          But, I think for the most part, we've worked through
*16* our concerns, but, you know, we are getting to, you know,
*17* treater depositions, expert witness depositions, you know,
*18* there are still going to be depositions ongoing, and when we
*19* entered -- you know, no one at the time thought that the
*20* pandemic would last as long as it has.  I mean, that was never
*21* contemplated.
*22*          You know, I do think that at some point we expected
*23* or anticipated that the parties would work together to modify
*24* the CMO either in, you know, a formal fashion or just by
*25* working together, but, you know, at some point, we're going to

1  want and we think we're entitled certainly for some of the
2  important depositions to take them in person.
3          So, you know, that's sort of where we are and I think
4  it could be done as a modification to the CMO, you know, or as
5  a supplemental order, but, you know, I think we do need some
6  direction.  I know there's no hard-cut rule.  People are still
7  suffering from the pandemic, you know, people have been
8  affected.  We're not, by any means, suggesting that everybody
9  should go out on the streets and there is a free-for-all, but,
10 you know, there needs to be some loosening, as I think we said
11 previously.  So that's what I think the parties are sort of
12 struggling with at this point, how to make that happen so
13 that, you know, all parties' interests are protected.
14         THE COURT:  Now, Ms. Lockard, you mentioned that
15 there were a couple of notices.  I didn't see anything today.
16         MS. LOCKARD:  There was an e-mail from Frank Stoy at
17 Pietragallo, and Mr. Stoy just -- he was -- we're taking turns
18 on the defense side submitting the submissions, and so
19 Pietragallo was -- it was their turn to submit the
20 submissions, so Frank submitted the submissions -- Mr. Stoy
21 submitted the submission yesterday, so he's the one who
22 responded to say, look, it looks like we've worked out the two
23 immediate issues and we may not need a conference, so that's
24 an e-mail that would have -- you'd be looking for, if you're
25 looking for it.

1      THE COURT: Okay. All right.

2      MR. NIGH: Your Honor, it's Daniel Nigh. Can I speak
3  for the plaintiffs on this issue?

4      THE COURT: Certainly.

5      MR. NIGH: You know, so I think what we have seen, I
6  know that there's this optimism that we want to return back to
7  some sort of normalcy and I think we have started to see some
8  of that trend, some of our plaintiffs have agreed to do these
9  depositions in person, but I would still say that we are far
10 from complete normalization.

11     I think what we see in society is that hasn't
12 occurred with the court systems. I've been on multiple MDLs
13 and most of them are still being done via Zoom, and I think
14 that's for a reason. I think what we are seeing is there are
15 many different states that are still not fully opened up. I
16 think what we're also seeing is that even right now, week over
17 week, if you go to Worldometers or many others that report on
18 the stats, right now the U.S. has gone 34 percent increase
19 week over week in the number of cases.

20     This isn't a scenario where we are tapering off and
21 we're going to see complete tapering. It's not. Actually,
22 what we're seeing right now is an increase in the U.S. and
23 that's due to the delta variant. We've seen - I appreciate
24 some of the cherry-picking on, you know, looking like we're
25 returning to normalcy, but we're not. There's many different

*1* discussions that have come out. I don't want to cite all of
*2* them. You know, Fauci's made different comments, the CDC
*3* looks like they're going to be updating who should be wearing
*4* masks inside of buildings.
*5*         And, frankly, depositions, we don't take those
*6* outside, and, you know, we haven't addressed, you know,
*7* thinking about taking depositions outside, but this is an
*8* indoor activity, and then we run into issues like if you are
*9* going to take a deposition via Zoom but have the defense
*10* attorney there, it makes these other awkward issues where
*11* you've got a witness who is talking to the defense attorney
*12* but a camera that has a difficulty picking this up.
*13*         I mean, all sorts of issues that we're working
*14* through, but frankly, I think it's premature to make any
*15* change to the CMO, because, frankly, we're not on the other
*16* end of this at this point.
*17*         What I understand is most courts are starting to open
*18* up around the months of September and October. That's what
*19* I've seen and that's where I start to see, okay, things may be
*20* returning more to normalcy in those months, but we're not
*21* there, and I don't know what's going to happen in
*22* September/October if we don't see a downturn in the numbers of
*23* cases, in terms of the US as it's peaking.
*24*         I live in the State of Florida and I can tell you, we
*25* were one of the -- you know, in terms of opening up, we were

1  one of the first to open up, but I could also tell you that
2  right now, Florida has the highest -- one of the highest
3  states, in terms of increases week over week.  And that might
4  be because we were one of the first to open up.
5  　　　　So at this point, you know, for -- is what we have
6  agreed to is if plaintiff counsel are be going to be in the
7  room, then we understand the defense counsel would want to be
8  in that room and I think that's a different story and we've
9  been able to reach that agreement and we have some cases going
10 in person for plaintiff depositions.
11 　　　　But at the same point, I think it's premature to try
12 and force any witness who feels uncomfortable with these
13 proceedings happening indoors with multiple different lawyers,
14 especially with the questioning lawyer that's not going to be
15 wearing mask.
16 　　　　It's -- you know, I think that they're going to have
17 many reasons, both for their health, but other reasons as to
18 which they would prefer not to be put in that position early
19 and I think it's early for us to adjudge those and say that
20 they're going to be put in that position, frankly.
21 　　　　So what we have done, I think has worked thus far and
22 we're going to start to see some gradual reopening, where
23 certain witnesses are going to agree to appear in person.
24 Probably more of those are from states like Florida where
25 we're a little more laxed, but there's going to be others who

*1* hold different positions and I think it just is too early to
*2* try and step away from that CMO or to try to renegotiate at
*3* this point.
*4*          THE COURT:  All right.  Do you want to respond,
*5* Ms. Lockard?
*6*          MS. LOCKARD:  I would, just briefly.  And, you know,
*7* as I acknowledge -- I know that we're not, you know, back to
*8* normal, but I will say this, you know, we are, many of us on
*9* both plaintiffs' and defense side, I mean, we're back in
*10* courtrooms.  You know, my partner Lori Cohen started a jury
*11* trial in Federal Court in New Orleans yesterday, and they are
*12* back to normal, and it's happening around, maybe not in
*13* Florida, I can't speak to that.
*14*          So, you know, there is a loosening.  Federal and
*15* state courts are opening up.  And, you know, I do think if
*16* there is a concern with a particular patient who is
*17* immunocompromised, you know, we've been reasonable throughout
*18* that, but some of these plaintiffs are estate representatives,
*19* they're not, you know, they're not sick themselves, they've
*20* been vaccinated, the lawyers in the room have been vaccinated,
*21* and so, you know, we just want a fair opportunity.
*22*          If there's a legitimate health risk and concern, you
*23* know, we'll respect that, but we do not want to hide behind
*24* the pandemic, you know, and not be able to get back to our
*25* jobs, taking depositions, and it's never the same when it's

1  done remotely, it just isn't.
2          So, you know, I don't know that we need to rush out
3  to update the CMO this week, but I do think we need to keep an
4  eye on this and both parties need to really stretch to make
5  sure that we're not taking advantage of the situation but also
6  being reasonable where health concern is warranted.
7          THE COURT:  So have you reached an agreement or an
8  understanding or a compromise on the two depositions that were
9  the subject of the e-mails that were attached to your letter
10 -- to the defense letter?
11         MS. LOCKARD:  We have.  We had one deposition that is
12 going forward in person and we have one that is going forward
13 remotely with all counsel attending remote, so I don't think
14 there's an outstanding issue with respect to any plaintiff
15 right now.  There are some plaintiffs who have had to be
16 rescheduled.
17         I mean, I'll tell you, for example, we were supposed
18 to have a plaintiff deposed bellwether this week and the
19 plaintiff reported that -- I can't remember if it's a he or a
20 she, but was exposed to COVID and needed to reschedule.  So,
21 you know, we did that agreeably, so -- we just were
22 rescheduling.
23         So there are a number of them that had to be
24 rescheduled and, you know, hopefully we'll work together so
25 that there could be additional issues that arise if we can't

```
 1  reach agreement.  But I can speak for the defendants, we'll at
 2  least try our best to do that so we don't have to bother the
 3  Court with these.
 4           THE COURT:  Do you agree, Ms. Lockard, that it's at
 5  least premature this week to revise CMO 20.
 6           MS. LOCKARD:  You know, I don't know that I would
 7  definitely use the term "premature," because I think it's
 8  reasonable either way.
 9           THE COURT:  Okay.
10           MS. LOCKARD:  So.
11           THE COURT:  All right.  So what I would -- what I
12  would encourage is that you all meet and confer on the
13  question of revising the deposition -- fact witness deposition
14  protocol, so that an appropriate -- unless there are
15  particular concerns that have some rational basis, you know,
16  that's saying a lot and maybe I'm going too far to phrase it
17  that way, and maybe we need to wait.  Maybe I'm thinking out
18  loud now.
19           I certainly can see that we're getting closer to
20  where -- unless you have someone whose immune system is
21  compromised or you're in a situation where everyone in the
22  room has been vaccinated, that the deposition could go forward
23  in person.  There still is a lot of concern.
24           I know even in our area, while the mask mandate has
25  been lifted, people are still wearing masks out in public.
```

```
 1  That's their choice, and I'm not in a position right now to do
 2  anything other than urge you to continue to try to address
 3  this in a reasonable manner on a case-by-case basis as you
 4  have.  But if we get to the point where no -- and I'm only
 5  talking right now about the bellwether plaintiffs -- no
 6  bellwether plaintiff will agree to be deposed in person,
 7  regardless of the circumstances, we may have to revisit that
 8  fact witness deposition protocol, because as I read the
 9  protocol right now, that's the status quo, that the
10  depositions will be conducted remotely, unless the parties
11  agree otherwise.  And if you read the protocol different,
12  please tell me.
13          MR. NIGH:  I think that's accurate, Your Honor.  This
14  is Daniel Nigh.  I think that's accurate, Your Honor.  I will
15  say that we do have plaintiffs who have agreed to attend in
16  person, so I don't think that standard has been met.  In fact,
17  I have one of my clients that we agreed to attend in person
18  and others, several other plaintiff lawyers who agreed for
19  their plaintiffs to attend in person, where the plaintiff
20  doesn't have a problem with it.
21           I did want to also insert one other issue, which we
22  really haven't discussed, but it's a whole nother implication
23  to the extent there's any sort of trying to force people
24  against their preference to attend a deposition in person, and
25  that is, we have state laws where there is -- there are
```

*1* limitations on asking about who's vaccinated, and so that's
*2* going to be a whole nother issue.  We have that here in the
*3* State of Florida.
*4* 　　　　And so I think we would have to, before we even get
*5* further down that road, obviously, we'll have to understand
*6* the implications of that, you know, as it speak to, you know,
*7* forcing people to give up any kind of information as to
*8* whether or not they've been vaccinated, that would be a --
*9* potentially an issue here in the State of Florida and maybe
*10* for many other states as well.
*11* 　　　　THE COURT:  Yeah, I think in other states as well.
*12* But I'm not sure there's much more that can be accomplished
*13* today on this particular issue.  It may, you know, if we get
*14* to the point where no bellwether plaintiff will agree to be
*15* deposed in person, we may need to invite motions and briefs
*16* and address the issue.
*17* 　　　　Right now, I'll encourage you to continue to work
*18* cooperatively as you have in resolving these issues and I
*19* think that's about all we can do today.
*20* 　　　　MR. NIGH:  Okay.
*21* 　　　　MR. GOLDBERG:  Nothing from defendants, Your Honor.
*22* 　　　　THE COURT:  All right.
*23* 　　　　MR. NIGH:  Nothing from plaintiffs.
*24* 　　　　THE COURT:  All right.  Well, I thank you all very
*25* much.  We'll see you all in a couple of weeks, and stay safe.

1  All right.  Take care.

2          (4:23 p.m.)

3          - - - - - - - - - - - - - - - -

4          I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7  */S/ Karen Friedlander, CRR, RMR*
   *Court Reporter/Transcriber_____*
8

9  *July 13, 2021*
   *Date*
10

**/**

**/S** [1] - 16:7

**1**

**13** [3] - 1:6, 2:1, 16:9
**17** [1] - 6:5
**17th** [1] - 1:14
**19103** [1] - 1:15
**1:19-md-02875-RBK-KW** [1] - 1:4

**2**

**20** [4] - 5:12, 5:17, 5:19, 13:5
**2021** [3] - 1:6, 2:2, 16:9
**2500** [1] - 1:17

**3**

**30** [1] - 1:14
**30305** [1] - 1:18
**316** [1] - 1:11
**32502** [1] - 1:12
**3333** [1] - 1:17
**34** [1] - 8:18

**4**

**4:00** [2] - 1:7, 2:2
**4:23** [1] - 16:2

**6**

**600** [1] - 1:11

**7**

**756-0160** [1] - 1:22

**8**

**856** [1] - 1:22

**A**

**able** [2] - 10:9, 11:24
**above-entitled** [1] - 16:5
**absolutely** [1] - 3:7
**access** [1] - 4:14
**accomplished** [1] - 15:12
**accurate** [2] - 14:13, 14:14
**acknowledge** [1] - 11:7
**Actavis** [2] - 1:19
**ACTION** [1] - 1:3
**activity** [1] - 9:8
**additional** [1] - 12:25
**address** [2] - 14:2, 15:16
**addressed** [1] - 9:6
**addressing** [1] - 3:1
**adjudge** [1] - 10:19
**adopt** [1] - 3:5
**advantage** [1] - 12:5
**affected** [1] - 7:8
**afterwards** [1] - 4:5
**agenda** [3] - 2:16, 3:25, 4:7
**agree** [6] - 3:19, 10:23, 13:4, 14:6, 14:11, 15:14
**agreeably** [1] - 12:21
**agreed** [7] - 6:8, 6:9, 8:8, 10:6, 14:15, 14:17, 14:18
**agreement** [4] - 3:5, 10:9, 12:7, 13:1
**aided** [1] - 1:24
**ALL** [1] - 2:1
**AND** [1] - 1:4
**anticipate** [1] - 4:8
**anticipated** [2] - 4:17, 6:23
**appear** [1] - 10:23
**appreciate** [1] - 8:23
**appropriate** [1] - 13:14
**approved** [1] - 5:3
**area** [1] - 13:24
**areas** [1] - 4:18
**arise** [1] - 12:25
**arrangements** [1] - 2:24
**Atlanta** [1] - 1:18
**attached** [1] - 12:9
**attend** [4] - 14:15, 14:17, 14:19, 14:24
**attending** [1] - 12:13
**attorney** [2] - 9:10, 9:11
**available** [1] - 2:25
**aware** [1] - 4:10
**awkward** [1] - 9:10

**B**

**basis** [2] - 13:15, 14:3
**Baylen** [1] - 1:11
**behalf** [1] - 2:6
**behind** [1] - 11:23
**bellwether** [9] - 2:17, 5:2, 5:15, 6:2, 6:5, 12:18, 14:5, 14:6, 15:14
**best** [1] - 13:2
**bit** [1] - 3:15
**bother** [1] - 13:2
**briefly** [2] - 2:23, 11:6
**briefs** [1] - 15:15
**broader** [1] - 6:3
**buildings** [1] - 9:4
**BY** [3] - 1:11, 1:14, 1:17

**C**

**camera** [1] - 9:12
**care** [1] - 16:1
**case** [2] - 14:3
**Case** [1] - 5:12
**case-by-case** [1] - 14:3
**cases** [3] - 8:19, 9:23, 10:9
**CDC** [1] - 9:2
**certain** [1] - 10:23
**certainly** [3] - 7:1, 8:4, 13:19
**certify** [1] - 16:4
**change** [3] - 5:16, 5:18, 9:15
**cherry** [1] - 8:24
**cherry-picking** [1] - 8:24
**choice** [1] - 14:1
**circulate** [1] - 3:3
**circumstances** [1] - 14:7
**cite** [1] - 9:1
**CIVIL** [1] - 1:3
**clients** [1] - 14:17
**closer** [1] - 13:19
**CMO** [9] - 5:12, 5:17, 5:19, 6:24, 7:4, 9:15, 11:2, 12:3, 13:5
**Cohen** [1] - 11:10
**coming** [1] - 6:4
**Commencing** [1] - 1:7
**comments** [1] - 9:2
**complete** [2] - 8:10, 8:21
**compromise** [1] - 12:8
**compromised** [1] - 13:21
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**concern** [4] - 11:16, 11:22, 12:6, 13:23
**concerns** [3] - 6:11, 6:16, 13:15
**conclusion** [1] - 6:4
**conducted** [1] - 14:10
**confer** [2] - 5:25, 13:12
**CONFERENCE** [1] - 1:5
**conference** [1] - 7:23
**confidential** [8] - 2:22, 3:2, 3:10, 4:3, 4:9, 4:11, 4:16, 4:22
**confidentiality** [3] - 4:1, 4:19, 4:22
**contemplated** [2] - 5:5, 6:21
**continue** [2] - 14:2, 15:17
**cooperatively** [1] - 15:18
**correct** [1] - 16:4
**counsel** [9] - 3:3, 3:4, 4:19, 5:22, 5:25, 6:10, 10:6, 10:7, 12:13
**couple** [2] - 7:15, 15:25
**COURT** [1] - 1:1
**Court** [3] - 1:21, 11:11, 16:7
**courtroom** [1] - 3:9
**courtrooms** [1] - 11:10
**courts** [2] - 9:17, 11:15
**covered** [3] - 4:16, 4:18, 4:21
**covering** [1] - 4:8
**covers** [1] - 4:18
**COVID** [1] - 12:20
**CRR** [1] - 16:7
**cut** [1] - 7:6

**D**

**Daniel** [3] - 2:8, 8:2, 14:14
**DANIEL** [1] - 1:11
**Date** [1] - 16:9
**deals** [1] - 2:17
**deemed** [1] - 3:2
**Defendant** [1] - 1:15
**defendants** [2] - 13:1, 15:21
**Defendants** [1] - 1:18
**defense** [9] - 2:12, 5:22, 6:4, 7:18, 9:9, 9:11, 10:7, 11:9, 12:10
**Defense** [1] - 1:15
**definitely** [1] - 13:7
**delta** [1] - 8:23
**deposed** [4] - 5:16, 12:18, 14:6, 15:15
**deposition** [8] - 4:10, 9:9, 12:11, 13:13, 13:22, 14:8, 14:24
**depositions** [20] - 2:17, 5:2, 5:4, 5:5, 5:6, 6:2, 6:4, 6:5, 6:11, 6:17, 6:18, 7:2, 8:9, 9:5, 9:7, 10:10, 11:25, 12:8, 14:10
**designated** [1] - 4:9
**developments** [1] - 5:8
**dial** [1] - 4:12
**dial-in** [1] - 4:12
**different** [7] - 8:15, 8:25, 9:2, 10:8, 10:13, 11:1, 14:11
**difficulty** [1] - 9:12
**direction** [1] - 7:6
**directly** [1] - 6:13
**disclosed** [1] - 3:11
**discuss** [1] - 4:5
**discussed** [1] - 14:22
**discussing** [1] - 4:11
**discussion** [3] - 3:10, 4:16, 4:17
**discussions** [2] - 2:21, 9:1
**disruption** [1] - 6:13
**distribute** [1] - 3:4
**DISTRICT** [2] - 1:1, 1:1
**documents** [1] - 4:9
**done** [5] - 5:6, 7:4, 8:13, 10:21, 12:1
**down** [1] - 15:5
**downturn** [1] - 9:22
**DUANE** [1] - 1:13
**due** [1] - 8:23

**E**

**e-mail** [2] - 7:16, 7:24
**e-mails** [1] - 12:9
**early** [3] - 10:18, 10:19, 11:1
**either** [3] - 4:9, 6:24, 13:8
**encourage** [2] - 13:12, 15:17
**end** [1] - 9:16
**entered** [1] - 6:19
**entitled** [2] - 7:1, 16:5
**especially** [1] - 10:14
**ESQUIRE** [3] - 1:11, 1:14, 1:17
**estate** [1] - 11:18
**event** [1] - 2:20
**example** [1] - 12:17
**excerpts** [1] - 4:10
**expected** [1] - 6:22

United States District Court
Camden, New Jersey

1

| | | | | |
|---|---|---|---|---|
| **expert** [1] - 6:17<br>**exposed** [1] - 12:20<br>**extent** [2] - 3:8, 14:23<br>**eye** [1] - 12:4<br><br>**F**<br><br>**fact** [5] - 5:5, 5:6, 13:13, 14:8, 14:16<br>**fair** [2] - 3:19, 11:21<br>**fall** [1] - 4:1<br>**far** [4] - 2:7, 8:9, 10:21, 13:16<br>**fashion** [1] - 6:24<br>**Fauci's** [1] - 9:2<br>**Federal** [1] - 11:11<br>**federal** [1] - 11:14<br>**first** [4] - 4:4, 5:17, 10:1, 10:4<br>**Florida** [7] - 1:12, 9:24, 10:2, 10:24, 11:13, 15:3, 15:9<br>**follow** [1] - 2:20<br>**FOR** [1] - 1:1<br>**force** [2] - 10:12, 14:23<br>**forcing** [1] - 15:7<br>**foregoing** [1] - 16:4<br>**formal** [2] - 4:7, 6:24<br>**forward** [3] - 12:12, 13:22<br>**Frank** [2] - 7:16, 7:20<br>**frankly** [4] - 9:5, 9:14, 9:15, 10:20<br>**free** [1] - 7:9<br>**free-for-all** [1] - 7:9<br>**Friedlander** [2] - 1:21, 16:7<br>**friedlanderreporter @gmail.com** [1] - 1:22<br>**fully** [1] - 8:15<br><br>**G**<br><br>**Georgia** [1] - 1:18<br>**GOLDBERG** [6] - 1:14, 2:13, 3:7, 4:24, 5:20, 15:21<br>**Goldberg** [5] - 2:11, 3:6, 3:19, 4:20, 5:19<br>**governs** [1] - 5:4<br>**gradual** [1] - 10:22<br>**GREENBERG** [1] - 1:16<br>**Group** [1] - 1:15<br>**guess** [2] - 3:6, 5:17 | **H**<br><br>**hand** [1] - 5:11<br>**handling** [1] - 5:21<br>**hard** [1] - 7:6<br>**hard-cut** [1] - 7:6<br>**health** [3] - 10:17, 11:22, 12:6<br>**hello** [1] - 2:3<br>**hi** [1] - 5:24<br>**hide** [1] - 11:23<br>**highest** [2] - 10:2<br>**hold** [1] - 11:1<br>**Honor** [10] - 2:8, 2:13, 3:7, 3:18, 4:24, 5:20, 8:2, 14:13, 14:14, 15:21<br>**HONORABLE** [1] - 1:8<br>**hopefully** [1] - 12:24<br><br>**I**<br><br>**identify** [2] - 3:25, 4:7<br>**immediate** [1] - 7:23<br>**immune** [1] - 13:20<br>**immunocompromised** [1] - 11:17<br>**implicate** [1] - 4:8<br>**implication** [1] - 14:22<br>**implications** [1] - 15:6<br>**important** [1] - 7:2<br>**IN** [1] - 1:3<br>**Inc** [2] - 1:19, 1:19<br>**increase** [2] - 8:18, 8:22<br>**increases** [1] - 10:3<br>**indoor** [1] - 9:8<br>**indoors** [1] - 10:13<br>**Industries** [1] - 1:18<br>**information** [3] - 3:10, 3:23, 15:7<br>**insert** [1] - 14:21<br>**inside** [1] - 9:4<br>**interests** [1] - 7:13<br>**interrupt** [1] - 4:20<br>**invite** [1] - 15:15<br>**IRBESARTAN** [1] - 1:4<br>**issue** [9] - 3:15, 5:21, 8:3, 12:14, 14:21, 15:2, 15:9, 15:13, 15:16<br>**issues** [8] - 2:10, 6:2, 7:23, 9:8, 9:10, 9:13, 12:25, 15:18<br>**item** [2] - 2:16, 2:19<br><br>**J**<br><br>**JERSEY** [1] - 1:1 | **jobs** [1] - 11:25<br>**Joint** [1] - 1:15<br>**Judge** [3] - 2:4, 5:4, 5:24<br>**July** [2] - 1:6, 16:9<br>**JULY** [1] - 2:1<br>**jury** [1] - 11:10<br><br>**K**<br><br>**Karen** [3] - 1:21, 2:3, 16:7<br>**keep** [1] - 12:3<br>**kind** [1] - 15:7<br><br>**L**<br><br>**last** [4] - 2:21, 4:20, 6:1, 6:20<br>**late** [1] - 3:22<br>**laws** [1] - 14:25<br>**lawyer** [1] - 10:14<br>**lawyers** [4] - 6:12, 10:13, 11:20, 14:18<br>**laxed** [1] - 10:25<br>**least** [3] - 3:25, 13:2, 13:5<br>**leave** [1] - 3:14<br>**left** [1] - 6:6<br>**legitimate** [1] - 11:22<br>**letter** [2] - 12:9, 12:10<br>**letters** [2] - 3:25, 4:7<br>**LEVIN** [1] - 1:10<br>**LIABILITY** [1] - 1:4<br>**liaison** [1] - 3:3<br>**lifted** [1] - 13:25<br>**limitations** [1] - 15:1<br>**line** [2] - 3:20, 4:23<br>**LITIGATION** [1] - 1:4<br>**live** [1] - 9:24<br>**LLC** [1] - 1:19<br>**LLP** [2] - 1:13, 1:16<br>**Lockard** [4] - 5:21, 7:14, 11:5, 13:4<br>**LOCKARD** [6] - 5:24, 7:16, 11:6, 12:11, 13:6, 13:10<br>**LOCKHARD** [1] - 1:17<br>**logistical** [1] - 3:15<br>**look** [1] - 7:22<br>**looking** [3] - 7:24, 7:25, 8:24<br>**looks** [3] - 2:16, 7:22, 9:3<br>**loosening** [2] - 7:10, 11:14<br>**Lori** [1] - 11:10<br>**LOSARTAN** [1] - 1:3<br>**loud** [1] - 13:18<br>**Ltd** [1] - 1:18 | **M**<br><br>**mail** [2] - 7:16, 7:24<br>**mails** [1] - 12:9<br>**Management** [1] - 5:12<br>**mandate** [1] - 13:24<br>**manner** [1] - 14:3<br>**mask** [2] - 10:15, 13:24<br>**masks** [2] - 9:4, 13:25<br>**MASTER** [1] - 1:8<br>**matter** [2] - 3:3, 16:5<br>**matters** [8] - 2:22, 3:1, 4:3, 4:7, 4:8, 4:12, 4:16, 4:21<br>**MDLs** [1] - 8:12<br>**mean** [4] - 6:20, 9:13, 11:9, 12:17<br>**means** [1] - 7:8<br>**mechanical** [1] - 1:23<br>**meet** [1] - 13:12<br>**mentioned** [1] - 7:14<br>**met** [1] - 14:16<br>**might** [3] - 3:22, 4:2, 10:3<br>**mimic** [1] - 3:9<br>**modification** [1] - 7:4<br>**modify** [1] - 6:23<br>**months** [2] - 9:18, 9:20<br>**MORRIS** [1] - 1:13<br>**most** [4] - 6:6, 6:15, 8:13, 9:17<br>**motions** [1] - 15:15<br>**move** [1] - 4:13<br>**MR** [13] - 2:8, 2:13, 3:7, 3:18, 4:24, 4:25, 5:20, 8:2, 8:5, 14:13, 15:20, 15:21, 15:23<br>**MS** [6] - 5:24, 7:16, 11:6, 12:11, 13:6, 13:10<br>**multiple** [2] - 8:12, 10:13<br><br>**N**<br><br>**NE** [1] - 1:17<br>**necessarily** [1] - 4:17<br>**necessary** [3] - 3:21, 5:11, 5:18<br>**need** [9] - 4:4, 5:13, 7:5, 7:23, 12:2, 12:3, 12:4, 13:17, 15:15<br>**needed** [1] - 12:20<br>**needs** [2] - 5:13, 7:10<br>**negotiated** [1] - 5:3<br>**never** [2] - 6:20, 11:25<br>**New** [1] - 11:11 | **NEW** [1] - 1:1<br>**Nigh** [4] - 2:8, 3:17, 8:2, 14:14<br>**NIGH** [9] - 1:11, 2:8, 3:18, 4:25, 8:2, 8:5, 14:13, 15:20, 15:23<br>**nonparties** [2] - 3:11, 3:13<br>**normal** [2] - 11:8, 11:12<br>**normalcy** [3] - 8:7, 8:25, 9:20<br>**normalization** [1] - 8:10<br>**nother** [2] - 14:22, 15:2<br>**nothing** [2] - 15:21, 15:23<br>**notice** [2] - 4:7, 5:25<br>**notices** [1] - 7:15<br>**NUMBER** [1] - 1:3<br>**number** [7] - 2:25, 3:16, 3:20, 4:12, 4:13, 8:19, 12:23<br>**numbers** [1] - 9:22<br><br>**O**<br><br>**obviously** [2] - 4:15, 15:5<br>**occurred** [1] - 8:12<br>**October** [1] - 9:18<br>**OF** [1] - 1:1<br>**Official** [1] - 1:21<br>**one** [15] - 2:16, 2:19, 3:12, 3:24, 4:13, 6:19, 7:21, 9:25, 10:1, 10:2, 10:4, 12:11, 12:12, 14:17, 14:21<br>**ongoing** [1] - 6:18<br>**open** [3] - 9:17, 10:1, 10:4<br>**opened** [1] - 8:15<br>**opening** [2] - 9:25, 11:15<br>**opportunity** [1] - 11:21<br>**optimism** [1] - 8:6<br>**order** [6] - 3:2, 4:2, 4:19, 4:22, 5:11, 7:5<br>**Order** [1] - 5:12<br>**Orleans** [1] - 11:11<br>**otherwise** [2] - 3:21, 14:11<br>**outside** [2] - 9:6, 9:7<br>**outstanding** [2] - 6:2, 12:14 |

Case 1:19-md-02875-RMB-SAK   Document 1387   Filed 07/14/21   Page 19 of 20 PageID: 32560

3

## P

**p.m** [3] - 1:7, 2:2, 16:2
**pandemic** [3] - 6:20, 7:7, 11:24
**PAPANTONIO** [1] - 1:10
**part** [2] - 6:7, 6:15
**participants** [1] - 3:1
**particular** [3] - 11:16, 13:15, 15:13
**parties** [6] - 3:11, 6:6, 6:23, 7:11, 12:4, 14:10
**PARTIES** [1] - 2:1
**parties'** [1] - 7:13
**partner** [1] - 11:10
**party** [1] - 5:7
**pass** [1] - 5:20
**patient** [1] - 11:16
**peaking** [1] - 9:23
**Pennsylvania** [1] - 1:15
**Pensacola** [1] - 1:12
**people** [5] - 7:6, 7:7, 13:25, 14:23, 15:7
**percent** [1] - 8:18
**perhaps** [1] - 5:10
**person** [15] - 2:18, 5:16, 6:8, 7:2, 8:9, 10:10, 10:23, 12:12, 13:23, 14:6, 14:16, 14:17, 14:19, 14:24, 15:15
**Pharma** [1] - 1:19
**Pharmaceutical** [1] - 1:18
**Pharmaceuticals** [1] - 1:19
**Philadelphia** [1] - 1:15
**phone** [1] - 2:24
**phrase** [1] - 13:16
**picking** [2] - 8:24, 9:12
**Piedmont** [1] - 1:17
**Pietragallo** [2] - 7:17, 7:19
**place** [4] - 5:3, 5:12, 5:14
**plaintiff** [12] - 5:15, 6:2, 6:5, 10:6, 10:10, 12:14, 12:18, 12:19, 14:6, 14:18, 14:19, 15:14
**plaintiffs** [11] - 2:7, 2:18, 5:2, 8:3, 8:8, 11:18, 12:15, 14:5, 14:15, 14:19, 15:23
**Plaintiffs** [1] - 1:12
**plaintiffs'** [3] - 5:25, 6:12, 11:9
**point** [9] - 6:22, 6:25, 7:12, 9:16, 10:5, 10:11, 11:3, 14:4, 15:14
**position** [3] - 10:18, 10:20, 14:1
**positions** [1] - 11:1
**potentially** [1] - 15:9
**prefer** [1] - 10:18
**preference** [1] - 14:24
**premature** [4] - 9:14, 10:11, 13:5, 13:7
**press** [1] - 4:14
**prevalence** [1] - 5:8
**previously** [1] - 7:11
**problem** [1] - 14:20
**procedure** [3] - 2:20, 3:5, 3:8
**proceed** [3] - 2:14, 6:8, 6:9
**Proceedings** [1] - 1:23
**proceedings** [4] - 3:8, 3:9, 10:13, 16:5
**produced** [1] - 1:24
**PRODUCTS** [1] - 1:4
**properly** [1] - 4:20
**protected** [1] - 7:13
**protocol** [7] - 2:20, 5:3, 5:4, 13:14, 14:8, 14:9, 14:11
**provided** [1] - 3:21
**provisions** [1] - 4:1
**public** [2] - 4:13, 13:25
**put** [2] - 10:18, 10:20

## Q

**questioning** [1] - 10:14
**quo** [1] - 14:9

## R

**raise** [1] - 2:19
**rational** [1] - 13:15
**RE** [1] - 1:3
**reach** [2] - 10:9, 13:1
**reached** [1] - 12:7
**read** [3] - 5:5, 14:8, 14:11
**really** [2] - 12:4, 14:22
**reason** [1] - 8:14
**reasonable** [4] - 11:17, 12:6, 13:8, 14:3
**reasons** [2] - 10:17
**record** [1] - 16:5
**recorded** [1] - 1:23
**regardless** [1] - 14:7
**remember** [1] - 12:19
**remote** [2] - 6:10, 12:13
**remotely** [6] - 5:6, 5:16, 6:9, 12:1, 12:13, 14:10
**renegotiate** [1] - 11:2
**reopening** [1] - 10:22
**report** [1] - 8:17
**reported** [1] - 12:19
**Reporter** [1] - 1:21
**REPORTER** [1] - 2:4
**Reporter/Transcriber** [1] - 16:7
**representatives** [1] - 11:18
**requested** [1] - 5:7
**require** [1] - 5:15
**reschedule** [1] - 12:20
**rescheduled** [2] - 12:16, 12:24
**rescheduling** [1] - 12:22
**resolve** [1] - 4:3
**resolving** [1] - 15:18
**respect** [3] - 2:21, 11:23, 12:14
**respond** [1] - 11:4
**responded** [1] - 7:22
**results** [1] - 5:10
**retire** [1] - 4:22
**return** [1] - 8:6
**returning** [2] - 8:25, 9:20
**revise** [1] - 13:5
**revised** [1] - 5:13
**revising** [1] - 13:13
**revisit** [1] - 14:7
**risk** [1] - 11:22
**RMR** [1] - 16:7
**Road** [1] - 1:17
**road** [1] - 15:5
**room** [5] - 6:12, 10:7, 10:8, 11:20, 13:22
**rule** [1] - 7:6
**run** [1] - 9:8
**rush** [1] - 12:2

## S

**safe** [1] - 15:25
**safety** [1] - 5:9
**scenario** [1] - 8:20
**Schneider** [1] - 5:4
**see** [11] - 3:23, 4:2, 7:15, 8:7, 8:11, 8:21, 9:19, 9:22, 10:22, 13:19, 15:25
**seeing** [3] - 8:14, 8:16, 8:22
**send** [1] - 4:6
**sense** [1] - 3:18
**separate** [4] - 2:24, 3:15, 3:20, 4:12
**September** [1] - 9:18
**September/October** [1] - 9:22
**SETH** [1] - 1:14
**several** [1] - 14:18
**show** [1] - 3:22
**sick** [1] - 11:19
**side** [3] - 2:12, 7:18, 11:9
**situation** [2] - 12:5, 13:21
**situations** [1] - 4:15
**society** [1] - 8:11
**someone** [2] - 2:6, 13:20
**sort** [4] - 7:3, 7:11, 8:7, 14:23
**sorts** [1] - 9:13
**SPECIAL** [1] - 1:8
**standard** [1] - 14:16
**start** [5] - 3:1, 4:3, 4:11, 9:19, 10:22
**started** [2] - 8:7, 11:10
**starting** [1] - 9:17
**state** [2] - 11:15, 14:25
**State** [3] - 9:24, 15:3, 15:9
**STATES** [1] - 1:1
**states** [5] - 8:15, 10:3, 10:24, 15:10, 15:11
**stats** [1] - 8:18
**status** [1] - 14:9
**STATUS** [1] - 1:5
**stay** [1] - 15:25
**stenography** [1] - 1:23
**step** [1] - 11:2
**still** [7] - 6:18, 7:6, 8:9, 8:13, 8:15, 13:23, 13:25
**story** [1] - 10:8
**Stoy** [3] - 7:16, 7:17, 7:20
**strays** [1] - 4:18
**Street** [1] - 1:14
**streets** [1] - 7:9
**stretch** [1] - 12:4
**struggling** [1] - 7:12
**subject** [1] - 12:9
**subjects** [1] - 3:25
**submission** [1] - 7:21
**submissions** [3] - 7:18, 7:20
**submit** [1] - 7:19
**submitted** [2] - 7:20, 7:21
**submitting** [1] - 7:18
**suffering** [1] - 7:7
**suggest** [1] - 4:2
**suggesting** [1] - 7:8
**Suite** [2] - 1:11, 1:17
**supplemental** [1] - 7:5
**suppose** [1] - 3:12
**supposed** [1] - 12:17
**system** [1] - 13:20
**systems** [1] - 8:12

## T

**tapering** [2] - 8:20, 8:21
**telephone** [1] - 1:5
**term** [1] - 13:7
**terms** [3] - 9:23, 9:25, 10:3
**Teva** [2] - 1:18, 1:19
**THE** [2] - 1:1, 1:8
**The court** [22] - 2:3, 2:4, 2:5, 2:11, 2:15, 3:17, 3:24, 5:1, 5:23, 7:14, 8:1, 8:4, 8:12, 11:4, 12:7, 13:2, 13:4, 13:9, 13:11, 15:11, 15:22, 15:24
**themselves** [1] - 11:19
**they've** [2] - 11:19, 15:8
**thinking** [2] - 9:7, 13:17
**third** [1] - 3:11
**THOMAS** [1] - 1:8
**throughout** [1] - 11:17
**today** [6] - 2:10, 2:17, 6:1, 7:15, 15:13, 15:19
**together** [4] - 6:6, 6:23, 6:25, 12:24
**transcript** [3] - 1:24, 4:10, 16:4
**transcription** [1] - 1:24
**TRAURIG** [1] - 1:16
**treater** [1] - 6:17
**trend** [1] - 8:8
**trial** [1] - 11:11
**try** [6] - 4:3, 10:11, 11:2, 13:2, 14:2
**trying** [1] - 14:23
**Tuesday** [1] - 1:6
**turn** [1] - 7:19
**turns** [1] - 7:17
**two** [3] - 6:1, 7:22, 12:8

United States District Court
Camden, New Jersey

| U | |
|---|---|
| **U.S** [2] - 8:18, 8:22 | |
| **uncomfortable** [1] - 10:12 | |
| **under** [2] - 3:2, 4:1 | |
| **UNITED** [1] - 1:1 | |
| **unless** [3] - 13:14, 13:20, 14:10 | |
| **up** [10] - 3:22, 4:5, 8:15, 9:12, 9:18, 9:25, 10:1, 10:4, 11:15, 15:7 | |
| **update** [1] - 12:3 | |
| **updating** [1] - 9:3 | |
| **urge** [1] - 14:2 | |
| **US** [1] - 9:23 | |
| **USA** [1] - 1:19 | |

| V |
|---|
| **vaccinated** [5] - 11:20, 13:22, 15:1, 15:8 |
| **vaccinations** [3] - 5:9, 5:10 |
| **VALSARTAN** [1] - 1:3 |
| **VANASKIE** [1] - 1:8 |
| **variant** [1] - 8:23 |
| **via** [2] - 8:13, 9:9 |
| **VIA** [1] - 2:1 |
| **Via** [1] - 1:5 |
| **VICTORIA** [1] - 1:17 |
| **VIDEOCONFERENCE** [1] - 2:1 |

| W |
|---|
| **wait** [1] - 13:17 |
| **waiting** [4] - 2:6, 2:7, 2:9, 2:12 |
| **warranted** [1] - 12:6 |
| **wearing** [3] - 9:3, 10:15, 13:25 |
| **week** [9] - 8:16, 8:17, 8:19, 10:3, 12:3, 12:18, 13:5 |
| **weeks** [1] - 15:25 |
| **whole** [2] - 14:22, 15:2 |
| **witness** [7] - 5:15, 6:12, 6:17, 9:11, 10:12, 13:13, 14:8 |
| **witnesses** [2] - 5:6, 10:23 |
| **Worldometers** [1] - 8:17 |

| Y |
|---|
| **yesterday** [2] - 7:21, 11:11 |

| Z |
|---|
| **ZHP** [1] - 1:15 |
| **Zoom** [2] - 8:13, 9:9 |
| **ZOOM** [1] - 2:1 |