# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation**<br><br>This Document Relates to All Actions | MDL No: 2875<br><br>Honorable Robert B. Kugler<br>District Court Judge |

## THE PHARMACY DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND MASTER COMPLAINTS

Dated:  August 2, 2021

**BARNES & THORNBURG LLP**

By: /s/ *Sarah E. Johnston*
    Sarah E. Johnston
    Kara M. Kapke
    Kristen L. Richer
    BARNES & THORNBURG LLP
    2029 Century Park East, Suite 300
    Los Angeles, CA 90067
    (310) 284-3798
    (310) 284-3894

    *Liaison Counsel for Pharmacy Defendants and Counsel for CVS Pharmacy, Inc. (incorrectly named as CVS Health Corporation) and Rite Aid Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

ARGUMENT ........................................................................................1

I.      Plaintiffs' improper proposed amended complaints filed for the first time with their Reply should be stricken. ................................................1

II.     Plaintiffs' proposed amendments fail to correct the fundamental standing defects identified in this Court's standing opinion relating to the Pharmacy Defendants. ....................................................................2

III.    Plaintiffs' proposed amendments fail to cure the substantive defects in the claims previously dismissed by this Court. ..................................4

    A.      The negligence claims against the Pharmacy Defendants are futile.....4

    B.      The fraud-based claims against the Pharmacy Defendants are futile. ..7

    C.      The express warranty claims against the Pharmacy Defendants are futile...............................................................................9

    D.      Plaintiffs continue to assert many improper implied warranty claims against the Pharmacy Defendants. .........................................10

    E.      Plaintiffs continue to assert many improper strict liability claims against the Pharmacy Defendants. ......................................12

    F.      Plaintiffs continue to assert improper medical monitoring claims against the Pharmacy Defendants......................................14

IV.     Plaintiffs cannot state claims against the Pharmacy Defendants under certain statutory product liability acts. ........................................15

CONCLUSION ...................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Altieri v. CVS Pharmacy, Inc.*,
  No. X06CV020171626S, 2002 WL 31898323 (Conn. Super. Ct.
  Dec. 13, 2002) ................................................................................................18

*Arlandson v. Hartz Mountain Corp.*,
  792 F. Supp. 2d 691 (D.N.J. 2011) ..................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................7

*Bornsen v. Pragotrade, LLC*,
  804 N.W.2d 55 (N.D. 2011) .............................................................................14

*Brown ex rel. Estate of Brown v. Philip Morris Inc.*,
  228 F. Supp. 2d 506 (D.N.J. 2002) ..................................................................16

*Cherokee Nation v. McKesson Corp.*,
  No. CIV-18-056, 2021 WL 1200093 (E.D. Okla. Mar. 29, 2021) .....................5

*Clements v. Sanofi-Aventis, U.S., Inc.*,
  111 F. Supp. 3d 586 (D.N.J. 2015) ..................................................................15

*Fagan v. AmerisourceBergen Corp.*,
  356 F. Supp. 2d 198 (E.D.N.Y. 2004) ...............................................................5

*In re New England Compounding Pharmacy, Inc.*,
  MDL No. 13-02419, 2015 WL 178130 (D. Mass. Jan. 13, 2015) ......................6

*In re Rezulin Products Liability Litigation*,
  133 F. Supp. 2d 272 (S.D.N.Y. 2001) ..............................................................18

*In re Zantac Prods. Liab. Litig.*,
  No. 9:20-md-02924, 2021 WL 2685605 (S.D. Fla. June 30, 2021) ...................6

*Long v. Rite Aid Headquarters Corp.*,
  No. 77695-9-I, 2019 WL 1370442 (Wash. Ct. App. Mar. 25, 2019) ................17

*Luttrell v. Brannon*,
No. 17-2137-JWL, 2018 WL 3032993 (D. Kan. June 19, 2018) ................16, 17

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*,
683 F.3d 239 (6th Cir. 2012) ................................................................7

*Sang Geoul Lee v. Won II Park*,
720 F. App'x 663 (3d Cir. 2017) ...........................................................12

*Schaerrer v. Stewart's Plaza Pharmacy, Inc.*,
79 P.3d 922 (Utah 2003) .....................................................................12

*United States ex rel. Pilecki-Simco v. Chubb Inst.*,
443 F. App'x 754 (3d Cir. 2011) ...........................................................7

*White v. Mylan, Inc.*,
No. CIV-12-402, 2012 WL 6726593 (W.D. Okla. Dec. 27, 2012) ...................12

**Statutes**

Kan. Stat. Ann § 40-3401(f) ................................................................16

**Other Authorities**

L. Civ. Rule 15.1 .............................................................................2

**INTRODUCTION**

Faced with dismissal of many of their claims against the Pharmacy Defendants, and cogent argument explaining why their proposed amendments do not fix the deficiencies that led to the dismissal of those claims, Plaintiffs offer little in response. Plaintiffs' Reply Memorandum of Law in Further Support of Their Motion for Leave to Amend Master Complaints [ECF No. 1382] ("Reply") instead repeats old arguments, sets up strawmen, and improperly asserts *new* claims in yet more proposed amended complaints. For the reasons in their initial Opposition [ECF No. 1280] ("Pharm. Opp."), those below, and those offered by the Manufacturer and Wholesaler Defendants initially and in surreply (which the Pharmacy Defendants incorporate, except as to privity), the Pharmacy Defendants request that the Court deny Plaintiffs' Motion to Amend or limit it appropriately.

**ARGUMENT**

**I.    Plaintiffs' improper proposed amended complaints filed for the first time with their Reply should be stricken.**

Plaintiffs attach *new* proposed versions of the ELMC, MMMC, and PIMC to their Reply. *See* Reply Exs. A-1, A-2, B-1, B-2, C-1, C-2 [ECF Nos. 1382-1, 2, 4, 5, 6, 7]. Plaintiffs claim that the differences between their new proposed complaints and those that they filed with their opening motion are "ministerial and administrative," Reply at 3, n.3, but they actually involve the addition of new proposed putative class representatives and a never-before-at-issue state to both the

1

ELMC and MMMC, new substantive claims to the ELMC and MMMC, and pursuit of some claims under the laws of states they previously claimed they were not pursuing.  *See* Appendix A (detailing the substantive additions Plaintiffs seek to make via the Reply complaints).  Plaintiffs violated this Court's rules and orders by not filing a motion for leave to submit revised amended complaints with their Reply, and by not providing redlines showing how their new proposed complaints compared with the proposed complaints filed with their opening motion.  L. Civ. Rule 15.1; Revised CMO No. 22 [ECF No. 726] ("No amended complaints shall be filed without leave of court to be requested in a Motion to Amend.").

This MDL has been pending for more than two years, and Plaintiffs have had the benefit of the Court's motion to dismiss decisions for months.  There is no excuse for the untimely attempted insertion of new parties and new claims (including claims under new states' laws), and Plaintiffs do not even attempt to offer one.  The improper additions are prejudicial to Defendants, and Plaintiffs' proposed amended complaints filed with their Reply should therefore be stricken.

II.    **Plaintiffs' proposed amendments fail to correct the fundamental standing defects identified in this Court's standing opinion relating to the Pharmacy Defendants.**

As discussed in the Manufacturers' surreply, Plaintiffs inappropriately attempt reconsideration of this Court's ruling that class representatives do not have standing to assert claims in states where they do not reside and were not injured,

and that a named plaintiff's standing to bring claims against a particular defendant exists only where he can trace an injury to that defendant and thereby "assert a direct claim against [that] named Defendant." MTD Op. 2 at 16–19.

Plaintiffs' deficiencies are acute as to the Pharmacy Defendants. Plaintiffs do not dispute the fact that they failed to name a medical monitoring class representative or trace an injury to any Pharmacy Defendant in 44 jurisdictions, failed to name an economic loss class representative or trace an injury to any Pharmacy Defendant in 32 jurisdictions, and failed to trace their injuries to multiple individual Pharmacy Defendants in those states where a named plaintiff may have identified purchases from some other defendant. *See* Pharm. Opp. at 26–27, 32–33, App. A–B.[1]  Plaintiffs also do not dispute the fact that they did not identify a single PMMMC class representative for Pharmacy Defendants Albertsons, Humana, Kroger, and OptumRx, nor a single PELMC class representative alleging a purchase from Pharmacy Defendant Humana. *See* Manuf. Opp. [ECF 1277], Ex. A at pp. 3–4.  This Court should hold Plaintiffs to its prior ruling and dismiss those deficient claims with prejudice for want of standing.

---

[1] These numbers are the same regardless of whether the Court considers the amended complaints improperly attached to the Reply. Although Plaintiffs improperly attempt to add new class representatives from Arkansas to the ELMC and MMMC, neither of those individuals claims to have purchased valsartan from any Pharmacy Defendant.  *See* Reply PELMC ¶ 49; Reply PMMMC ¶ 403.

III.    **Plaintiffs' proposed amendments fail to cure the substantive defects in the claims previously dismissed by this Court.**

Plaintiffs' reply to the Pharmacy Defendants' arguments regarding (A) negligence, (B) fraud, and (C) express warranty, as well as (D) implied warranty, (E) strict liability, and (F) medical monitoring in certain states, demonstrates why these claims, as identified in the Pharmacy Defendants' Opposition, should remain dismissed and leave to amend to re-assert those claims should be denied.

**A. The negligence claims against the Pharmacy Defendants are futile.**

In previously dismissing Plaintiffs' negligence claims against the Pharmacy Defendants, the Court told Plaintiffs what they needed to do to plead negligence sufficiently—articulate a legally recognized duty and the specific breach that occurred, and not "lump" the defendants together with conclusory allegations. MTD Op. 5 at 32. Plaintiffs failed as to both. Their allegations remain nothing but mass, conclusory claims relating to unprecedented duties of care never before recognized by any court.

Plaintiffs argue, essentially, that they have pled a negligence claim because they have pled the existence of a duty of care. Reply at 39-40. Plaintiffs completely fail, however, to plead a ***legally recognized*** duty. For example, Plaintiffs point to their allegation that Pharmacy Defendants were obligated to comply with the FDA's current good manufacturing practices and the World Health Organization's Good Distribution Practices. *Id.* at 40. As the Pharmacy

4

Defendants argued in their opposition, this allegation is incorrect as a matter of law (*see* Pharm. Opp. at 9-14) and in reply, Plaintiffs do not dispute this or identify any precedent that pharmacies are legally obligated to comply with *manufacturing* practices.  Similarly, Plaintiffs point to their allegation that the Pharmacy Defendants had a duty to ensure that the products they sold were not adulterated or misbranded (Reply at 40), but they offer no response to the Pharmacy Defendants' arguments that no court has ever imposed upon pharmacies a duty to test the composition of medications they dispense. Nor did Plaintiffs attempt to distinguish the caselaw cited by the Pharmacy Defendants that expressly rejects the imposition of such a duty.  Pharm. Opp. at 14-20.  That one pharmacy tests its products does not create an industry standard or legal obligation.  *Id*. at 18 (citing cases).

Plaintiffs' cited caselaw (Reply at 36) is distinguishable and provides no support for their request to create new duties of care.  Plaintiffs rely on an opioids case that did not involve allegations (as here) that the products themselves were defective,[2] a counterfeit drugs case where the packaging was "facially defective" (unlike the present case which involves only alleged latent impurities),[3] and a

---

[2] *Cherokee Nation v. McKesson Corp.*, No. CIV-18-056, 2021 WL 1200093, at *8 (E.D. Okla. Mar. 29, 2021) (rejecting defense that "applies only to products liability actions premised on defective products" where the plaintiffs did not allege that the products themselves were defective).

[3] *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 211 (E.D.N.Y. 2004) (addressing whether a *distributor* should reasonably foresee that the patently defective products it was distributing were counterfeit).

negligence claim against physicians.[4]  Plaintiffs also point to allegations relating to "warranties" and "representations" (Reply at 40), but whatever relevance those allegations have to other claims, they have no bearing on whether Plaintiffs have pled a legally recognized duty of care and breach of that duty.

Plaintiffs cannot merely *plead* that a duty exists without *any* factual support. In a similar MDL involving allegedly defective pharmaceuticals, the court recently dismissed the negligence claims against the pharmacy defendants because (among other reasons) the plaintiffs' argument would require accepting that the standard, routine practices of every pharmacy were faulty and that "each day thousands of companies commit ordinary negligence." *In re Zantac Prods. Liab. Litig.*, No. 9:20-md-02924, 2021 WL 2685605, at *10 (S.D. Fla. June 30, 2021).  Noting that the plaintiffs had provided "no citation" to the law of any jurisdiction supporting their theory, and that the plaintiffs' response was "silent" to the defendants' arguments regarding the impact of their liability theory, the court declined to create a new standard of care that would have required sweeping industry change.  *Id.*

Because Plaintiffs have repeatedly failed to identify a legally recognized duty, standard of care, and breach committed by any Pharmacy Defendant, their

---

[4] *In re New England Compounding Pharmacy, Inc.*, MDL No. 13-02419, 2015 WL 178130, at *3 (D. Mass. Jan. 13, 2015) (finding physician negligence claim adequately pleaded where physicians dispensed non-FDA-approved medication while informing patients that it was a different FDA-approved product).

negligence and negligence per se claims against the Pharmacy Defendants are futile, leave to amend should be denied, and those claims dismissed with prejudice.

## B. The fraud-based claims against the Pharmacy Defendants are futile.

Plaintiffs have similarly failed to cure the defects this Court identified in their fraud-based claims. *First*, Plaintiffs have again failed to allege any facts supporting a plausible inference that the Pharmacy Defendants acted with any fraudulent intent. Plaintiffs do not even try to point to *any* such facts; instead, they argue that under Rule 9(b), state of mind may be pleaded generally. Reply at 45. But "Rule 9 merely excuses a party from pleading . . . intent under an elevated pleading standard." *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). "It does not give him license to evade the less rigid—though still operative—strictures of Rule 8," which imposes the plausibility requirement. *Id.*; *accord* MTD Op. 4 at 20.

Here, Plaintiffs allege *no facts* regarding fraudulent intent, let alone facts sufficient to make fraudulent intent plausible. Their argument essentially asks this Court to change its mind without providing any reason to do so. But this Court had it right: Conclusory allegations of fraudulent intent are not sufficient. *See United States ex rel. Pilecki-Simco v. Chubb Inst.*, 443 F. App'x 754, 760 (3d Cir. 2011) (applying Rule 8 and holding that "the facts alleged therein, . . . do not state a plausible claim to relief that TCI knew that its claims were false or fraudulent"); *see also Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247

7

(6th Cir. 2012) (holding state-of-mind allegations must be plausible).  For this reason alone, the fraud-based claims should be dismissed.

*Second*, Plaintiffs fail to identify any actionable false statements.  Notably, Plaintiffs do not claim to rely on the puffery on the Pharmacy Defendants' websites.  *Compare* Pharm. Opp. 23-24 (explaining why such allegations are insufficient) *with* Reply at 41-45 (no mention of these allegations).  Instead, Plaintiffs rely exclusively on "the patient package inserts, medication guides, [and] instructions for use," which allegedly represented that the product "was not contaminated."  Reply at 44; *accord id.* (alleging that pharmacies "engaged in material omissions by failing to disclose the true nature of the VCDs to Plaintiffs and consumers at the point of sale").  These allegations add nothing to the prior allegation, already rejected by the Court, that "defendants 'expressly or impliedly warranted the VCDs they sold were not adulterated, misbranded, or contaminated.'"  MTD Op. 4 at 19 (holding such allegations insufficient).  Neither allegation points to any specific language.  Once again, Plaintiffs fail to "identify the specific content of the misstatement with any particularity."  *Id.* at 20.

*Third*, Plaintiffs say almost nothing about reliance.  *See* MTD Op. 4 at 20 ("plaintiffs do not allege when these statements were made, or at what point—if ever—each plaintiff was exposed to these statements").  They appear to believe they have sufficiently alleged reliance merely because they allege

8

misrepresentations at the point of sale.  Reply at 44.  Not so.  This case involves prescription drugs.  Plaintiffs received prescriptions from their doctors, who advised them to take valsartan.  By the time Plaintiffs arrived at the point of sale, they already had their prescription in hand.  Plaintiffs have alleged no facts to suggest that Plaintiffs relied on any information at the point of sale.

In an effort to minimize these defects, Plaintiffs argue in a footnote that "various state consumer protection statutes . . . require a lesser showing than common law 'fraud' and of 'reliance.'"  Reply at 42-43 n.26.  But Plaintiffs' perfunctory argument does not explain what purported "lesser showing" is required, nor how their allegations make such a required "showing."

In sum, Plaintiffs' amendments do nothing to cure the defects that compelled dismissal from the prior complaints.  The amendments are thus futile.  Accordingly, all claims against the Pharmacy Defendants for fraud, negligent misrepresentation, and the violation of state consumer protection acts should be dismissed with prejudice.

## C. The express warranty claims against the Pharmacy Defendants are futile.

The Pharmacy Defendants argued that Plaintiffs should be denied leave to amend their express warranty claims because (1) the Court held that merely selling a product containing impurities does not create an express warranty made by the Pharmacy Defendants (Pharm. Opp. at 5, citing MTD Op. 3 at 16); and

(2) Plaintiffs' proposed amendments are futile because (a) they do not allege any statements made by all Pharmacy Defendants; (b) general statements and puffery like those Plaintiffs cite are not warranties; and (c) Plaintiffs fail to allege that any of them read, heard, or relied on any such statement in any event.  Pharm. Opp. at 5-6.  Plaintiffs have no response in their Reply.  Instead, they focus on strawmen (*i.e.*, arguing that Plaintiffs have privity with the Pharmacy Defendants, something the Pharmacy Defendants never challenged) and re-iterate that some Pharmacy Defendants have made general puffery statements on their websites (without alleging that any plaintiff was ever exposed to any such statement), Reply at 25-26, but this does not create a valid express warranty claim.  *See, e.g.*, *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011) (to state a breach of express warranty claim, plaintiffs must properly allege, *inter alia*, that the defendant's affirmation, promise, or description became part of the basis of the bargain, and "statements that are nothing more than mere puffery are not considered specific enough to create an express warranty.").  All express warranty claims against the Pharmacy Defendants should be dismissed with prejudice.

## D. Plaintiffs continue to assert many improper implied warranty claims against the Pharmacy Defendants.

The Court, after "closely review[ing]" the state-specific case law on breach of implied warranty (Reply at 35), held that Plaintiffs could not pursue a breach of implied warranty claim against the Pharmacy Defendants in the vast majority of

jurisdictions.  MTD Order 3 at 3.  Plaintiffs ignore this holding and argue obliquely that some states have innocent seller statutes that require fact-specific inquiries. Reply at 33-34.  But as Plaintiffs recognize elsewhere, the Court's motion to dismiss rulings were not based on innocent seller statutes, Reply at 63 (citing MTD Op. 4 at 27-28), so this argument cannot save their breach of implied warranty claims.  Plaintiffs have not directly challenged the Court's prior dismissal rulings, nor do they have a basis to do so.[5]

Based on those rulings and applicable case law, the Pharmacy Defendants argued that a breach of implied warranty claim against the Pharmacy Defendants was futile as to all but 13 jurisdictions.  Pharm. Opp. at 45-46.  In their Reply, Plaintiffs argue that Oklahoma and Utah (two states that were not included in the Court's prior rulings) should be added to that list, Reply at 34-35, thus impliedly conceding that their claims are futile as to at least 37 of the 52 jurisdictions under which Plaintiffs purport to bring claims.[6]  As to Oklahoma and Utah, Plaintiffs do not even argue, let alone cite authority to support a claim, that those states are

---

[5] Notably, as to the implied warranty and strict liability claims against the Pharmacy Defendants, Plaintiffs' Reply does not cite to any amendments made to overcome dismissal.  This confirms that whether these claims are futile is a matter of law (whether the state law recognizes the claims against the Pharmacy Defendants) and not something that can be cured by factual pleading amendment.
[6] Plaintiffs have not identified a putative class representative from Oklahoma or Utah, so Plaintiffs' argument is inapplicable to the proposed economic loss and medical monitoring master complaints.  *See* MTD Op. 2 at 19.

outliers, like Nevada, that allow breach of implied warranty claims under a strict liability-failure to warn theory rather than consistent with the majority of states that do not. In fact, the cases hold that that pharmacies *cannot* be subject to failure to warn claims. *White v. Mylan, Inc.*, No. CIV-12-402, 2012 WL 6726593, at *3 (W.D. Okla. Dec. 27, 2012); *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 929 (Utah 2003). Thus, the Court should deny leave to amend and dismiss with prejudice the implied warranty claims against the Pharmacy Defendants other than as to the 13 jurisdictions previously noted.

### E. Plaintiffs continue to assert many improper strict liability claims against the Pharmacy Defendants.

Plaintiffs also continue to assert many improper strict liability claims against the Pharmacy Defendants in contravention of this Court's prior rulings. As to the Medical Monitoring Master Complaint, the Pharmacy Defendants argued that any strict liability claims against them under the laws of the at-issue states would be futile as a matter of law. Pharm. Opp. at 34-36. Plaintiffs have not responded to those arguments, and therefore have conceded them. *See Sang Geoul Lee v. Won II Park*, 720 F. App'x 663, 666 (3d Cir. 2017) (Plaintiff's "failure to respond to the pertinent opposition-brief argument acts as a concession of that argument."). Indeed, in their Reply, Plaintiffs argue that they seek to amend strict liability claims in the *Personal Injury* (not Medical Monitoring) Master Complaint. Reply at 62-64. Accordingly, the Court should deny Plaintiffs leave to amend and

12

dismiss with prejudice the two strict liability causes of action against the Pharmacy Defendants from the Medical Monitoring Master Complaint.

As to the three strict liability counts in the Personal Injury Master Complaint, the Pharmacy Defendants argued—based on the Court's prior rulings and relevant case law—that all such claims against them were precluded under the laws of all but 15 jurisdictions. Pharm. Opp. at 46-49. Plaintiffs' reply brief in response is unclear. However, as best as the Pharmacy Defendants can discern, Plaintiffs have abandoned their strict liability-manufacturing defect claim, Reply at 62 (seeking leave to amend only strict liability-failure to warn and -design defect claims), and with three exceptions (Connecticut, Iowa, and North Dakota), Plaintiffs do not dispute that, as a matter of law, they may only pursue strict liability claims in the 15 named jurisdictions. *See* Pharm. Opp. at 49.

As to the three exceptions, Plaintiffs' purported strict liability claims under Connecticut law were improperly added in their Reply PPIMC, and therefore should not be considered. *See* Part I and Appendix A. Further, all strict liability claims under Connecticut law have been dismissed *with prejudice*. MTD Order 5 at 2. As to Iowa and North Dakota, it is undisputed that the Pharmacy Defendants neither manufactured nor designed valsartan, which precludes strict liability as a matter of law. *See* MTD Op. 5 at 34-35 (granting motion to dismiss Iowa strict

liability claims, citing *Merfeld v. Dometic Corp.*, 306 F. Supp. 3d 1070, 1076-78 (N.D. Iowa 2018)); *Bornsen v. Pragotrade, LLC*, 804 N.W.2d 55, 61 (N.D. 2011).

Because Plaintiffs are not pursuing their strict liability-manufacturing defect claim, that claim should be dismissed with prejudice. As to strict liability-failure to warn and -design defect claims, Plaintiffs should be precluded from pursuing such claims against the Pharmacy Defendants in all but the 15 jurisdictions noted in the Pharmacy Defendants' Opposition, and the claims under the laws of all other jurisdictions should be dismissed with prejudice.

## F. Plaintiffs continue to assert improper medical monitoring claims against the Pharmacy Defendants.

In the briefing, the parties seem to be in near agreement regarding the independent medical monitoring claims against the Pharmacy Defendants. The Pharmacy Defendants argued that no claim for medical monitoring other than under Illinois law could survive. Pharm. Opp. at 36-38. In their Reply, Plaintiffs argue that they are pursuing an independent cause of action for medical monitoring "in Florida, Illinois, and Kansas." Reply at 62. Plaintiffs have therefore conceded that they cannot pursue a cause of action for medical monitoring against the Pharmacy Defendants under any other state's law.[7] As to Florida, the parties agree

---

[7] Plaintiffs have only identified putative medical monitoring class representatives from eleven states: (1) Arkansas; (2) California; (3) Colorado; (4) Florida; (5) Illinois; (6) Kansas; (7) Maryland; (8) New Jersey; (9) Pennsylvania; (10) Texas; and (11) West Virginia. The Court previously dismissed the medical

that a medical monitoring cause of action against the Pharmacy Defendants rises or falls based on the Court's negligence determination.  Pharm. Opp. at 37; Reply at 60-61.  As to Kansas, the Court dismissed the medical monitoring claim *with prejudice*.  MTD Op. 5 at 20-21.  Plaintiffs should be denied leave to amend to pursue a medical monitoring cause of action other than under the law of Illinois.

### IV.    Plaintiffs cannot state claims against the Pharmacy Defendants under certain statutory product liability acts.

At the outset, Plaintiffs cannot allege claims for the first time in proposed amended complaints attached to their reply brief.  *See* Part I and Appendix A.  Regardless of the improper and untimely addition, Plaintiffs' reply wrongly argues that their failure to state a claim against the Pharmacy Defendants under certain state statutory laws necessarily means that those claims are not subsumed.  *See* Reply at 46-47, 56.  Subsumption is not dependent on whether a valid statutory claim exists.  *See, e.g.*, *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586,

---

monitoring claim under (1) Arkansas law (MTD Op. 5 at 33), and the improperly added Arkansas plaintiffs do not allege they received valsartan from any Pharmacy Defendant.  Similarly, no class representative alleges they received valsartan from any Pharmacy Defendant for (3) Colorado or (9) Pennsylvania.  As to (2) California and (7) Maryland, the parties agree that medical monitoring is not a cause of action.  Pharm. Opp. at 37-38; Reply at 61-62.  As to (8) New Jersey and (10) Texas, the Court dismissed the claim (MTD Op. 5 at 33) and Plaintiffs do not pursue it.  ECF No. 1382-6 at 201 & n.206.  As to (11) West Virginia, the Pharmacy Defendants argued that pharmacies have statutory immunity, and Plaintiffs provide no response, thus conceding that such a claim is futile.  Pharm. Opp. at 38; Reply at 60-62 (making no argument as to West Virginia).

596 (D.N.J. 2015) (noting that "the PLA is both expansive and inclusive, encompassing virtually all *possible* causes of action relating to harms caused by consumer and other products" (emphasis added, citation omitted)); *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 520-24 (D.N.J. 2002) (finding PLA subsumes common law claims then granting summary judgment on PLA claim).

Regarding the specific statutory PLA claims, Plaintiffs do not dispute that they have not stated a claim under the Louisiana PLA, and their Reply PPIMC does not include a claim against the Pharmacy Defendants under that statute. *See* ECF No. 1382-1 at 159, ¶¶ 778-781. Plaintiffs also make erroneous arguments regarding the remaining following states:

- **<u>Kansas</u>.** Plaintiffs agree that the Kansas PLA exempts pharmacists but argue that the exemption does not apply to the pharmacies that employ those pharmacists. But Plaintiffs ignore the fact that the Kansas PLA includes corporate entities within the definition health care providers exempt from the PLA. *See* Pharm. Opp. at 40. The statutory definition of "healthcare provider" includes a "professional corporation" and "limited liability company" that employs pharmacists. Kan. Stat. Ann § 40-3401(f); *see also Luttrell v. Brannon*, No. 17-2137-JWL, 2018 WL 3032993, at *11 (D. Kan. June 19, 2018) (rejecting argument that holding company is not a healthcare provider and noting that term is defined to

16

include corporate entities).  Whether a pharmacy is *also* a "product seller" under the PLA is irrelevant to whether it is statutorily exempt from the PLA because a pharmacy is unquestionably also a healthcare provider—an argument Plaintiffs do not address.  *See Luttrell*, 2018 WL 3032993 at *15 (dismissing product liability claims against healthcare provider).

- **Washington.**  Plaintiffs argue that the Washington PLA's exemption only covers individual pharmacists, *see* Reply at 49-50, but Washington courts have rejected this artificial distinction.  *See Long v. Rite Aid Headquarters Corp.*, No. 77695-9-I, 2019 WL 1370442, at *4 (Wash. Ct. App. Mar. 25, 2019) (analyzing claims against a pharmacy without distinguishing between the individual pharmacists and the corporate entity employing them).

- **Tennessee.**  Plaintiffs argue that they wish to plead a Tennessee PLA claim *without* invoking professional negligence (Reply at 55-56 & n.33)—a position contrary to their arguments elsewhere in the brief (*see id.* at 39-41, arguing the Pharmacy Defendants acted negligently).  But regardless of whether Plaintiffs assert professional negligence, their claims against the Pharmacy Defendants necessarily revolve around the pharmacies' provision of healthcare services, putting Plaintiffs' claims squarely within the purview of the Tennessee Health Care Liability Act, the more specific statute that controls over the more general PLA.  *See* Pharm. Opp. at 41-42.

17

- **<u>Mississippi and Connecticut.</u>**  Plaintiffs' amendments do not cure the deficiencies that led to dismissal of the strict liability claims under Mississippi and Connecticut law.  *See* MTD Op. 5 at 34-35 & nn. 43 and 55.  As noted both by *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 288-290 (S.D.N.Y. 2001) and *Altieri v. CVS Pharmacy, Inc.*, No. X06CV020171626S, 2002 WL 31898323, at *4 (Conn. Super. Ct. Dec. 13, 2002), pharmacies provide services, so product liability claims are inapplicable.  As explained in *Altieri*, Plaintiffs must instead cabin their claims into professional negligence—which they expressly disclaim.  *See* Reply at 55-56 & n.33.  Plaintiffs later withdraw claims under the Connecticut PLA.  *See id.* at 66.

- **<u>New Jersey and Ohio.</u>**  Plaintiffs argue that pharmacists do not exercise "professional judgment" when dispensing prescriptions and the essence of the transactions was Plaintiffs' purchase of a product from the Pharmacy Defendants.  *See* Reply at 52, 54.  But Plaintiffs did not purchase valsartan over the counter; it was dispensed pursuant to a prescription by a healthcare provider.

Thus, Plaintiffs cannot assert PLA claims against the Pharmacy Defendants.

## CONCLUSION

The motion for leave to amend should be denied, or, in the alternative, be granted subject to the conditions set forth in the Pharmacy Defendants' Opposition.

18

Dated: August 2, 2021

Respectfully submitted,

/s/ *Sarah E. Johnston*
Sarah E. Johnston
Kara M. Kapke
Kristen L. Richer
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 284-3798
(310) 284-3894

*Liaison Counsel for Pharmacy Defendants and Counsel for CVS Pharmacy, Inc. (incorrectly named as CVS Health Corporation) and Rite Aid Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of August, 2021, a true and accurate copy of the foregoing The Pharmacy Defendants' Surreply in Opposition to Plaintiffs' Motion for Leave to Amend Master Complaints was electronically filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record who has consented to electronic notification.

*/s/ Sarah E. Johnston*
Sarah E. Johnston

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.    Plaintiffs' improper proposed amended complaints filed for the first time with their Reply should be stricken. ..................................................................1

II.    Plaintiffs' proposed amendments fail to correct the fundamental standing defects identified in this Court's standing opinion relating to the Pharmacy Defendants. ......................................................................................2

III.    Plaintiffs' proposed amendments fail to cure the substantive defects in the claims previously dismissed by this Court. ...............................................4

    A.    The negligence claims against the Pharmacy Defendants are futile.....4

    B.    The fraud-based claims against the Pharmacy Defendants are futile. ..7

    C.    The express warranty claims against the Pharmacy Defendants are futile..................................................................................................9

    D.    Plaintiffs continue to assert many improper implied warranty claims against the Pharmacy Defendants. .........................................10

    E.    Plaintiffs continue to assert many improper strict liability claims against the Pharmacy Defendants. ......................................................12

    F.    Plaintiffs continue to assert improper medical monitoring claims against the Pharmacy Defendants.......................................................14

IV.    Plaintiffs cannot state claims against the Pharmacy Defendants under certain statutory product liability acts. .........................................................15

CONCLUSION ...................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Altieri v. CVS Pharmacy, Inc.*,
   No. X06CV020171626S, 2002 WL 31898323 (Conn. Super. Ct.
   Dec. 13, 2002) ............................................................................................... 18

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) .................................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 7

*Bornsen v. Pragotrade, LLC*,
   804 N.W.2d 55 (N.D. 2011) ............................................................................ 14

*Brown ex rel. Estate of Brown v. Philip Morris Inc.*,
   228 F. Supp. 2d 506 (D.N.J. 2002) .................................................................. 16

*Cherokee Nation v. McKesson Corp.*,
   No. CIV-18-056, 2021 WL 1200093 (E.D. Okla. Mar. 29, 2021) ...................... 5

*Clements v. Sanofi-Aventis, U.S., Inc.*,
   111 F. Supp. 3d 586 (D.N.J. 2015) .................................................................. 15

*Fagan v. AmerisourceBergen Corp.*,
   356 F. Supp. 2d 198 (E.D.N.Y. 2004) .............................................................. 5

*In re New England Compounding Pharmacy, Inc.*,
   MDL No. 13-02419, 2015 WL 178130 (D. Mass. Jan. 13, 2015) ...................... 6

*In re Rezulin Products Liability Litigation*,
   133 F. Supp. 2d 272 (S.D.N.Y. 2001) .............................................................. 18

*In re Zantac Prods. Liab. Litig.*,
   No. 9:20-md-02924, 2021 WL 2685605 (S.D. Fla. June 30, 2021) ................... 6

*Long v. Rite Aid Headquarters Corp.*,
   No. 77695-9-I, 2019 WL 1370442 (Wash. Ct. App. Mar. 25, 2019) ................ 17

*Luttrell v. Brannon*,
    No. 17-2137-JWL, 2018 WL 3032993 (D. Kan. June 19, 2018) ................16, 17

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*,
    683 F.3d 239 (6th Cir. 2012) ..................................................................7

*Sang Geoul Lee v. Won II Park*,
    720 F. App'x 663 (3d Cir. 2017) ...........................................................12

*Schaerrer v. Stewart's Plaza Pharmacy, Inc.*,
    79 P.3d 922 (Utah 2003) ......................................................................12

*United States ex rel. Pilecki-Simco v. Chubb Inst.*,
    443 F. App'x 754 (3d Cir. 2011) ............................................................7

*White v. Mylan, Inc.*,
    No. CIV-12-402, 2012 WL 6726593 (W.D. Okla. Dec. 27, 2012) ....................12

## Statutes

Kan. Stat. Ann § 40-3401(f) ....................................................................16

## Other Authorities

L. Civ. Rule 15.1 ..................................................................................2