# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Karen Williams Magistrate Judge |

## WHOLESALERS' SUR-REPLY TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND MASTER COMPLAINTS

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

    I.    Plaintiffs' Strawman Arguments and Amendments Fail To Cure
        Their Traceability and Standing Deficiencies. ......................................2

        A.    Standing is not dispensed in gross. ...............................................3

        B.    Plaintiffs have no standing to assert state-specific claims
                against Wholesalers as to which no Plaintiff in that state can
                trace his or her injury. ...............................................................4

        C.    Plaintiffs have no standing where they still fail to trace their
                purchases. .................................................................................5

    II.    Plaintiffs' Failure To Allege The Absence Of An Adequate
        Remedy At Law Is Fatal To Plaintiffs' Amended Unjust
        Enrichment Claims In 13 States. .........................................................7

    III.    Plaintiffs' Breach of Express Warranty Claims Still Fail and
        Should Be Dismissed with Prejudice. ..................................................7

    IV.    Plaintiffs' Breach of Implied Warranty Claims Still Fail and
        Should Be Dismissed with Prejudice. ................................................10

    V.    Plaintiffs Should Be Denied Leave To Amend Their Fraud
        Claims For Failure To Meet The Heightened Pleading Standard. ......11

    VI.    Plaintiffs' Negligence Claims Are Still Insufficiently Pled As
        To Wholesalers. ...............................................................................14

    VII.    Plaintiffs Did Not Amend The MMMC Failure To Warn Count
        To Comport With The Court's Order. ..................................................17

    VIII.  Plaintiffs Should Be Denied Leave To Amend To Add Futile
        PLA Claims. ....................................................................................17

    IX.    Plaintiffs Should Not Be Granted Leave To Amend Claims
        Derivative Of The Claims Identified In Sections III-VI. ....................18

CONCLUSION ..................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Atlas Commc'ns Tech., Inc. v. DXC Tech. Servs., LLC*,
No. 319CV19033BRMDEA, 2020 WL 5105197 (D.N.J. Aug. 31, 2020) ..........8

*Capers v. FedEx Ground Package Sys., Inc.*,
No. CIV. 2:02-05352 WJM, 2012 WL 5818137 (D.N.J. Nov. 15, 2012) ...........1

*Commonwealth Propane v. Petrosol Int'l*,
818 F.2d 522 (6th Cir. 1987) ...................................................................................8

*Cooper Power Systems, Inc. v. Union Carbide Co.*,
123 F.3d 675 (7th Cir. 1997) ...................................................................................8

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332, 352 (2006) .........................................................................................4

*DeFrank v. Samsung Elecs. Am., Inc.*,
No. CV1921401KMJBC, 2020 WL 6269277 (D.N.J. Oct. 26, 2020)) ........12, 13

*Haas v. Pittsburgh Nat. Bank*,
526 F.2d 1083 (1975) ...............................................................................................4

*Mickens v. Ford Motor Co.*,
900 F.Supp.2d 427 (D.N.J. 2012) ..........................................................................3

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ..................................................................13

*Pitt News v. Fisher*,
215 F.3d 354 (3d Cir. 2000) ....................................................................................5

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ....................................................................................3

*Slate Printing Co. v. Metro Envelope Co.*,
532 F.Supp. 431 (N.D. Ill. 1982) ...........................................................................8

*Spiegel v. Sharp Electronics Corp.*,
466 N.E.2d 1040 (1st Dist. Ill. 1984) .....................................................................8

*Villegas v. Corr. Med. Servs., Inc.*,
 No. CV 14-7337 (MCA), 2016 WL 3708218 (D.N.J. July 12, 2016)..................8

*In re Volkswagen Timing Chain Product Liability Litigation*,
 No. 16-2765, 2017 WL 1902160 (D.N.J May 8, 2017) ..............................11, 12

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
 No. 20-MD-2924, 2021 WL 2685605 (S.D. Fla. June 30, 2021).................15, 16

**Statutes**

Drug Supply Chain Security Act (DSCSA).......................................................5, 9, 15

Products Liability Act ("PLA") ............................................................................2, 17

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................12, 14

Fed. R. Civ. P. 9 .....................................................................................................13

Fed. R. Civ. P. 9(b) ......................................................................................11, 12, 13

Fed. R. Civ. P. 15(a)(2).............................................................................................1

La. Rev. State. § 2800.53(1) ....................................................................................18

## INTRODUCTION

Taking another bite at the apple not does even begin to describe the number of chances that Plaintiffs have had in this case to make a valid claim against Wholesaler Defendants. Despite two briefs totaling 71 pages, and *three* versions of each of their master complaints[1]–including one which Plaintiffs did not have leave of this Court, other permission under the Rules, or consent of any kind to file–Plaintiffs *still* have not cured the deficiencies the Court detailed in its various Orders. Enough is enough.

In their briefing on the Motion to Amend, as well as their *two* new sets of amended complaints (the second of which is wholly improper under this Court's Orders and the Federal Rules), Plaintiffs throw a lot of mud on the wall–none of which sticks. Plaintiffs also now attempt to insert new claims into these proceedings

---

[1] This Opposition refers to the originally-filed Proposed Economic Loss Master Class Complaint, Dkt. 1148-3, as the PELMC; the Proposed Medical Monitoring Master Class Complaint, Dkt. 1148-5, as the PMMMC; and the Proposed Personal Injury Master Complaint, Dkt. 1148-1, as the PPIMC. Despite filing those three proposed Master Complaints on April 12, 2021, Plaintiffs filed a second round of three newly-amended proposed Master Complaints on July 12, 2021, without leave of Court and without Defendants' consent. See Reply Exs. A-1, A-2, B-1, B-2, C-1, C-2 (Dkt. 1382-1, 2, 4, 5, 6, 7). These filings are improper and in direct violation of Fed. R. Civ. P. 15(a)(2) and should, therefore, be omitted. *See Capers v. FedEx Ground Package Sys., Inc.,* No. CIV. 2:02-05352 WJM, 2012 WL 5818137, at *1 (D.N.J. Nov. 15, 2012) (holding that plaintiffs' filing of a fourth amended complaint without consent from their adversary or the Court was in violation of Rule 15(a)(2) and said complaint should be struck). Citations in this Sur-Reply correspond to the versions of the Master Complaints filed as exhibits to the Reply.

by proposing to add state Products Liability Act ("PLA") claims to the PELMC and PMMMC. But the new claims are in many instances not cognizable and Plaintiffs still fail to exclude subsumed common law claims.

Plaintiffs apparently seek to do nothing more than confuse the issues by steadfastly continuing to make conclusory allegations, by disregarding the Court's clear instructions on how to remedy their original pleading deficiencies, and by outright ignoring some of this Court's rulings (e.g., including claims in the amended complaints that the Court already dismissed with prejudice). Plaintiffs seem to hope that this Court will not take the time to carefully review these issues and will simply throw up its hands and say the issues are too confusing to dismiss any claims. Wholesalers have confidence that the Court will see through this smokescreen, realize that Plaintiffs have not corrected their pleadings, and deny Plaintiffs' Motion for Leave to Amend.

## **ARGUMENT**

I. **PLAINTIFFS' STRAWMAN ARGUMENTS AND AMENDMENTS FAIL TO CURE THEIR TRACEABILITY AND STANDING DEFICIENCIES.**

In this Court's MTD. Op. and Order No 2, the Court dismissed the ELMC and MMMC in their entirety against Wholesalers for lack of standing. The Court was clear in its Order that, to proceed, Plaintiffs need to:

- Trace their injuries to the Defendants in this case beyond simple conclusory allegations; and
- Demonstrate standing for each state-law claim Plaintiffs seek to press.

Plaintiffs have done neither. Plaintiffs' proposed amendments make only a sham attempt to address the standing and traceability deficiencies identified by the Court. For the reasons articulated herein, and for those stated in Mfrs.' Sur-Reply Sections II.A and II.B, which Wholesalers incorporate by reference as if set forth fully herein, leave to amend is futile and should be denied.

### A.    Standing is not dispensed in gross.

In the Reply, Plaintiffs try to relitigate the Court's MTD Op. and Order No. 2 to attempt a nationwide class of Plaintiffs with state-law-based claims in states where no named Plaintiff with standing resides. For example, the Reply avers that a combination of multiple Plaintiffs "identif[ies] all three Wholesalers, and they by themselves satisfy class-wide Article III standing." Reply at 13. This statement is, of course, a legal absurdity – as demonstrated by Plaintiffs' failure to support that bold, incorrect assertion with any legal support or case citation. In truth, *each Plaintiff still lacks standing (1) in states in which he did not reside or was not injured and (2) as to Wholesalers to which he cannot trace the claims*. As this Court soundly noted, "standing is not dispensed in gross." MTD Op. 2 at 19 (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012)). But Plaintiffs ignore this Court's Order and instead pick and

3

choose claims and parties to try to cobble together standing. *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083, 1096 n.18 (1975) ("a nominal plaintiff may not maintain an action on behalf of a class *against a specific defendant* if the plaintiff is unable to assert an individual cause of action *against that defendant*") (emphases added).

**B.    Plaintiffs have no standing to assert state-specific claims against Wholesalers as to which no Plaintiff in that state can trace his or her injury.**

Wholesalers incorporate by reference as if set forth fully herein the arguments in Mfrs.' Sur-Reply Sections II.A and II.B, and request that the Court either deny Plaintiffs' Motion to Amend or limit it as set forth in Section I.A on page 5 of Wholesalers' Opp. (Dkt. 1281), which outlines the states where Plaintiffs still lack standing to assert claims as they are unrepresented by any named Plaintiff. Indeed, many of the named Plaintiffs in the proposed amendments lack standing to bring specific state-law-based claims against individual Wholesalers. *See* MTD Op. 2 at 19 (noting "plaintiff must demonstrate standing for each claim he seeks to press") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). The individual causes of action are state-law claims, but the named Plaintiffs for each state collectively do not identify and trace injury to *each* named Wholesaler. "[C]lass representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members." 1 Newberg on

4

Class Actions § 2:5 (5th ed.). As such, the Court should deny Plaintiffs' Motion to Amend or limit it as set forth in Exhibits 1 and 2 to the Wholesalers' Opp.

### C. Plaintiffs have no standing where they still fail to trace their purchases.

As Manufacturers state in their Sur-Reply Section II.B, which Wholesalers incorporate by reference as if set forth fully herein, the question is not whether Plaintiffs *can* trace their purchases to specific Wholesalers, but whether they *have* done so – and despite multiple attempts at amendments, Plaintiffs have not.[2] *See also* Wholesalers' Opp. Section I.

Plaintiffs offer up one last fiction to try for traceability in vain: the idea that an NDC can identify every party in the supply chain down to the customer level. Reply at 7-8. Plaintiffs either fundamentally misunderstand[3] the function (and

---

[2] And though Plaintiffs aver that an "indirect causal relationship will suffice" to establish traceability, Plaintiffs' cited 'support' actually favors Defendants' position. In support of their theory, Plaintiffs cite a fictional quote, purportedly from *Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000), that not only does not appear in the *Pitt News* opinion, but also is contrary to it. In fact, *Pitt News* underscores the futility of Plaintiffs' proposed amendments: Plaintiffs still do not establish traceability as outlined in *Pitt News* and still fail to allege that, *but for Wholesalers' conduct*, the alleged contamination would not have occurred, that Plaintiffs would not have purchased and/or consumed allegedly contaminated VCDs, or that Wholesalers' actions were a substantial factor in the alleged contamination or consumption, as required. Thus, per *Pitt News*, Plaintiffs lack standing as to Wholesalers.

[3] Despite countless explanations from Defendants, Plaintiffs also continue to misunderstand–and misstate–the DSCSA's requirements, particularly regarding the provision of lot numbers. Reply at 8. But the DSCSA cannot solve Plaintiffs' product tracing and traceability problems as ***pursuant to the DSCSA, Wholesalers are not***

limitations) of an NDC, or understand it but purposely disregard it in the vain hope of establishing traceability. Either way, neither an NDC nor Plaintiffs can establish traceability to Wholesalers.[4] And the simple truth is that **Plaintiffs have not even identified a single NDC or a single transaction for any Plaintiff.** Plaintiffs have done *nothing* to correct the standing and traceability issues identified by this Court when it dismissed Plaintiffs' claims against Wholesalers without prejudice in MTD Order and Op. No. 2.[5]

---

**required to and do not transmit Lot Number data to Retail Pharmacy Defendants with the sale of a direct-purchased VCD.**

[4] An NDC shows the product manufacturer, drug name, and product size. An NDC number does not show batch/lot number, when or where the drug was made, the expiration date, or–critically–who was involved in the supply chain from the manufacturer down to the plaintiff. Indeed, many Retailers purchase directly from a Manufacturer, meaning no Wholesaler was even involved.

[5] It should be noted that Plaintiffs represent to this Court that each named Plaintiff now "expressly allege[s]" his or her allegations against specific Wholesalers. Reply at 9. Thus, Plaintiffs concede that, if a named Plaintiff in the PELMC and PMMMC does *not* expressly allege a specific Wholesaler who distributed that Plaintiff's VCDs, that Plaintiff has no allegations against the other Wholesalers he omits. This concession is critical, particularly in light of the newly-amended, grossly improper, second-bite-at-the-apple PELMC and PMMMC. Yet only a fraction of Plaintiffs "expressly allege" the specific Wholesaler that allegedly distributed each Plaintiff's VCDs; *to wit*, of the (now) 43 named Plaintiffs in the latest PELMC, only 16 mention a named Defendant, and of the now 17 named Plaintiffs in the latest PMMMC, only eight mention a named Defendant. And though Plaintiffs only "expressly allege" claims with general and conclusory allegations that lump Defendants and products together and lack factual support, particularity, and specificity, **Plaintiffs concede that the majority of named ELMC Plaintiffs and named MMMC Plaintiffs have**

## II.    PLAINTIFFS' FAILURE TO ALLEGE THE ABSENCE OF AN ADEQUATE REMEDY AT LAW IS FATAL TO PLAINTIFFS' AMENDED UNJUST ENRICHMENT CLAIMS IN 13 STATES.

Wholesalers incorporate by reference as if set forth fully herein the arguments in Mfrs.' Sur-Reply Section II.D. This Court should dismiss the unjust enrichment claims against Wholesalers with prejudice in Alabama, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Massachusetts, Mississippi, Oklahoma, South Carolina, and West Virginia.

## III.    PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIMS STILL FAIL AND SHOULD BE DISMISSED WITH PREJUDICE.

In MTD Order 3, the Court dismissed Plaintiffs' breach of express warranty claims against Wholesalers. In order to proceed with those claims, Plaintiffs were required to:

- Sufficiently allege privity in those states where it is required; and
- Plead specific statements, conduct, or communications made by Wholesalers which could imply Wholesalers made an express warranty to Plaintiffs that formed the basis of a bargain.

Plaintiffs have done neither.

Plaintiffs' Reply first claims that they sufficiently allege requisite privity because they allege they are "intended third-party beneficiary recipients" of agreements to which Wholesalers are parties containing alleged warranties

---

***no allegations against or standing as to any named Wholesaler***. The Court should hold Plaintiffs to this representation.

pertaining to VCDs. But Plaintiffs' conclusory allegations that they are third party beneficiaries, which are insufficient to state a claim,[6] are not a substitute for the types of specific statements, conduct, or communications by Wholesalers that the Court already found Plaintiffs failed to allege such that the Court could "reasonably imply" Wholesalers made an express warranty.[7]

---

[6] *See Atlas Commc'ns Tech., Inc. v. DXC Tech. Servs., LLC*, No. 319CV19033BRMDEA, 2020 WL 5105197, at *3 (D.N.J. Aug. 31, 2020) (dismissing "conclusory statement" that plaintiff was a third-party beneficiary); *Villegas v. Corr. Med. Servs., Inc.*, No. CV 14-7337 (MCA), 2016 WL 3708218, at *2 (D.N.J. July 12, 2016) (same).

[7] Wholesalers also dispute that Plaintiffs are third-party beneficiaries of any contract to which Wholesalers are a party. Courts have generally held that a third party is not a beneficiary of a sales agreement merely because both contracting parties know that the product would be resold to the third party, or to a class of which the third party was a member. *See Spiegel v. Sharp Electronics Corp.*, 466 N.E.2d 1040, 1045 (1st Dist. Ill. 1984) ("mere knowledge of resale to third parties is [not] sufficient to create third-party beneficiary status"); *Commonwealth Propane v. Petrosol Int'l*, 818 F.2d 522, 531 (6th Cir. 1987) (holding that fact that propane supplier knew the propane it sold to distributor would be immediately resold to plaintiff did not make plaintiff an intended third party beneficiary of the contract); *Slate Printing Co. v. Metro Envelope Co.*, 532 F.Supp. 431, 433 (N.D. Ill. 1982) (the fact that paper supplier knew that intermediate buyer would process and sell to an end user in the distributive chain did not make the end user an intended beneficiary of the contract); *Cooper Power Systems, Inc. v. Union Carbide Co.*, 123 F.3d 675, 680 (7th Cir. 1997) ("[Plaintiff's] arguments . . . all boil down to an assertion that [manufacturer] knew that [distributor] was selling paint . . . to [plaintiff] or companies like [plaintiff]. Yet the fact that a seller knows that an intermediate buyer of its products will immediately resell the product is not sufficient to make the ultimate buyer an intended beneficiary of the original sales contract.").

Undeterred, Plaintiffs' Reply next cites to generic allegations that certain DSCSA-required data accompanying shipments of VCDs from Wholesalers to Retailers constitute an express warranty. Plaintiffs claim that this shipping data qualifies as an express warranty that "the tote contains a certain product." The proposed amended master complaints, however, are devoid of any allegations about *specific* statements or communications supposedly included in that data that were actually *made to Plaintiffs* and formed the basis of a bargain. Plaintiffs' arguments are nothing more than an attempt to re-frame their prior argument that selling an allegedly-contaminated product downstream (accompanied by statutorily-mandated data) somehow translates the sale into an express warranty. The Court previously rejected that argument and should do so again.

Finally, Plaintiffs attempt to justify a breach of express warranty claim by pointing the Court to Defendant-specific "Factual Allegations" about each Wholesaler gleaned from the internet. As stated in Wholesalers' Opp., allegations citing general, non-Valsartan related statements allegedly published on websites do not constitute express warranties. Plaintiffs do not allege that a single Plaintiff read, heard, received, or relied on any of those statements, much less that such statements became the basis of any bargain. Plaintiffs' proposed amendments are futile; the breach of express warranty claims should be dismissed with prejudice.

9

IV.    **PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS STILL FAIL AND SHOULD BE DISMISSED WITH PREJUDICE.**

In MTD Ord. 3, the Court required Plaintiffs to plead the required privity for their breach of implied warranty claims in all three master complaints. But Plaintiffs do not do so; instead, they use the "third-party beneficiary" argument in an attempt to convince this Court that its original Order was wrong. These attempts to circumvent the required element of privity by asserting third-party beneficiary status are futile and must fail.

At the outset, Wholesalers adopt and incorporate herein all arguments made by Manufacturers with respect to Plaintiffs' failure to plead the required privity for their breach of implied warranty claims in all three master complaints.

Wholesalers' Opp. cited controlling authorities in Connecticut, Georgia, Illinois, Kansas, and New York that clearly demonstrate Plaintiffs' third-party beneficiary theory does not overcome the requirement of privity. Opp. at 21-25. In their Reply, Plaintiffs cite to cases from those jurisdictions which they claim provide exceptions to the privity requirement. They do not. In fact, the authorities cited by Plaintiffs with respect to Kansas, Illinois, and New York do nothing to counter the Court's determination that Plaintiffs must plead privity for their breach of implied warranty claims in the PELMC and PMMMC, *neither of which are personal injury actions* to which an exception to privity may apply. Plaintiffs' citation to a Georgia case ignores the fact that this Court determined that Wholesalers *have not* made an

10

express warranty to Plaintiffs. Finally, Plaintiffs' cited Connecticut cases do not contradict the authorities cited in Wholesalers' Opp. demonstrating that the Connecticut third-party beneficiary exception *does not apply* to the class representatives in the PELMC and PMMMC. Put simply, Plaintiffs' amended breach of implied warranty claims are futile in those states requiring privity because Plaintiffs cannot establish they fall within any exception to the privity requirement in those states.

## V. PLAINTIFFS SHOULD BE DENIED LEAVE TO AMEND THEIR FRAUD CLAIMS FOR FAILURE TO MEET THE HEIGHTENED PLEADING STANDARD.

In order to proceed with their fraud claims, this Court, in MTD Op. 4, instructed Plaintiffs to fix critical deficiencies for which the Court dismissed their fraud claims:

- To stop lumping Retail Pharmacy Defendants and Wholesalers together with upstream defendants;
- To identify the time, place, and content of the allegedly fraudulent statements with the requisite level of particularity under Rule 9(b); and
- To properly plead knowledge under Rule 8.

They have not done so.

In their Reply, Plaintiffs ignore the Court's clear Order and argue that the lumping of Defendants "in certain instances is *not* fatal to [their] claims . . . ." Reply at 45 (emphasis added). Moreover, Plaintiffs' citation to *In re Volkswagen Timing Chain Product Liability Litigation* is inapposite. No. 16-2765, 2017 WL 1902160

(D.N.J. May 8, 2017)(denying defendant's motion to dismiss based on "lumping" grounds where plaintiffs "ma[de] particularized allegations regarding" the defendant's conduct "sufficient to satisfy Rules 8 and 9(b) of the Federal Rules of Civil Procedure."). Unlike the defendant entities in *Volkswagen*, which were "intertwined through a complex corporate structure," Wholesalers here are three distinct unrelated entities, but Plaintiffs still fail to allege clear, particularized fraud allegations against any one of the Wholesalers.

In the rare instances where Plaintiffs do not lump Defendants together, the amended pleadings *still* do not identify "the time, place, [or] content of [any] statement with any level of particularity nor do they inject precision or a measure of substantiation into their allegations other than merely saying so." MTD Op. 4 at 19. Tellingly, Plaintiffs do not, and cannot, point to the actual *content* of even one allegedly fraudulent statement. At best, Plaintiffs' amendments include a sprinkling of so-called "statements" and "representations," none of which contain the requisite particularity. *See, e.g.*, redlined PMMMC ¶¶ 422-434 (pp. 213-219). [8]

---

[8] Plaintiffs also argue, in direct contradiction to the Court's MTD Op. 4, that Defendants "impliedly overstate the pleading requirements" of various consumer protection statutes "by improperly lumping these claims in together with the traditional common law fraud claims." Reply at 42 n.26. In fact, this Court properly analyzed Plaintiffs' "consumer fraud statute" claims together with the "fraud-based claims." MTD Op. 4 at 18 n.9 ("[b]y 'fraud-based claims' we mean . . . consumer fraud statutes."). As the Court noted, "Rule 9(b)'s particularity requirement applies to each of these claims . . . ." *Id*. (citing *DeFrank v. Samsung Elecs. Am., Inc*., No.

Plaintiffs' Reply also fails to offer support for the proposition that they have properly pled knowledge following the Court's order that "even though Rule 9 allows knowledge to be alleged generally, this does not give plaintiffs a license to evade the less rigid . . . strictures of Rule 8." MTD Op. 4 at 20. Instead, Plaintiffs merely add non-specific, conclusory allegations—some entirely unrelated to the instant litigation—regarding Wholesalers' alleged knowledge, without factual support. Opp. at 31-32.

---

CV1921401KMJBC, 2020 WL 6269277, at *6 (D.N.J. Oct. 26, 2020)); *see also Mickens v. Ford Motor Co*., 900 F.Supp.2d 427, 435 (D.N.J. 2012). Moreover, assuming the consumer protection statutes of certain states do not require Plaintiffs to plead reliance (a point which the bulk of Plaintiffs' citations in footnote 26 address), **the remaining requirements must be pled with specificity**. *DeFrank*, No. CV1921401KMJBC, 2020 WL 6269277, at *6 (collecting cases); *see also Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) ("Regardless of whether fraud is an essential element of a consumer protection claim, where the claim rel[ies] entirely on [a fraudulent course of conduct] as the bases of that claims . . . the claim is said to be grounded in fraud or to sound in fraud, and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).") (internal quotations omitted). As with their other fraud-based claims, Plaintiffs fail to plead with the specificity required by Rule 9(b) in order to state an actionable claim for a violation of any consumer protection statute against Wholesalers, as they do not identify the 'who, what, where, or when' of these allegedly fraudulent, unfair, and/or deceptive acts and practices committed by Wholesalers. *See, e.g.*, redlined PELMC ¶¶ 749-55, 757-60; redlined PPIMC ¶¶ 697-764 (unchanged from the original PIMC). Without these necessary details, Plaintiffs' consumer fraud claims fail.

Lastly, Plaintiffs' Reply does not address their failure to sufficiently plead fraudulent concealment or omission as to Wholesalers under the Rule 8 standard[9], nor have they responded to Wholesalers' argument that they fail to allege that Wholesalers owed the requisite duty to disclose by virtue of a fiduciary or trust-based relationship between the parties. Opp. at 24-25. For these reasons, as well as those set forth in Wholesalers' Opp., Plaintiffs' fraud claims[10] against Wholesalers are futile and must be dismissed with prejudice.

## VI.  PLAINTIFFS' NEGLIGENCE CLAIMS ARE STILL INSUFFICIENTLY PLED AS TO WHOLESALERS.

In MTD Op. 5, this Court instructed Plaintiffs to:

- Precisely articulate the duty that Wholesalers owed to Plaintiffs; and to
- Properly allege the specific breach that occurred.

Despite this clear directive, Plaintiffs fail to articulate any duty owed to them by Wholesalers in the PELMC and PMMMC. Relatedly, while Plaintiffs now allege some vague supplier vetting-related duties in the PPIMC (Redlined PPIMC ¶ 623), Plaintiffs only recite conclusory allegations regarding Wholesalers' purported

---

[9] Plaintiffs claim that they "provide additional detail as to the specific . . . omissions," yet do not identify *any* omission made by Wholesalers. Reply at 44.

[10] With regard to Plaintiffs' negligent misrepresentation/omission claims as to Wholesalers, Plaintiffs do not respond to any of Wholesalers' Opp. arguments, and in fact do not even mention negligent misrepresentation/omission at any point in their Reply. Therefore, those claims as to Wholesalers should be dismissed with prejudice.

breach of those duties. *Id.* ¶ 624. Plaintiffs' proposed amendments do not satisfy this Court's clear instructions and are futile.

In their Reply, Plaintiffs do not address the pleading deficiencies in their negligence claims, and instead point to staccato factual allegations scattered throughout their Complaints to establish a purported duty and breach by Wholesalers. However, those factual allegations plainly fail to articulate any duty Wholesalers *owed to Plaintiffs*, and furthermore, Plaintiffs' allegations of breach are conclusory and cannot satisfy the plausibility pleading standard. For example, Plaintiffs argue that their Amended Complaints allege duties on the part of Wholesalers "relating to the Drug Supply Chain Security Act (DSCSA)." Reply at 37-38. But they do not include or describe such duties in their negligence claims, nor do they allege that Wholesalers owed these duties to Plaintiffs. Regarding breach, Plaintiffs simply state that "[a] good faith risk assessment would have undoubtedly identified the dangers of product contamination in this case," and that "ordinary diligence" would have revealed that VCDs were "improperly made, adulterated, or misbranded." *Id.* at 38-39.

But just because Plaintiffs say it is so, does not make it so. In dismissing negligence claims with prejudice against Distributor Defendants in the *Zantac* MDL, the court found the allegation that Distributors "did not ensure ranitidine-containing products were stored at low humidity or within the temperature range on the label,"

15

to be conclusory and insufficient to satisfy the element of breach for the plaintiffs' negligence claims. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 2685605, at *7 (S.D. Fla. June 30, 2021). The court reasoned that "paragraph 2220 contains no specifics—it does not explain how any Defendant failed to ensure ranitidine was properly stored or how ranitidine was exposed to heat." *Id*. Similarly, here, Plaintiffs do not explain how any *Wholesaler* failed to conduct "[a] good faith risk assessment" or failed to exercise "ordinary diligence" in their acquisition of VCDs. Reply at 38-39. Instead, Plaintiffs simply conclude that Wholesalers "knew or should have known" of the contamination based on sources such as "regulatory submissions on file with the FDA." *Id.* Plaintiffs do not articulate what information in these regulatory submissions or other sources would have informed Wholesalers of the alleged contamination of VCDs. Allegations of breach that lack specificity were insufficient to support a negligence claim in *Zantac*, and likewise should be fatal to Plaintiffs' claims here.

In sum, the scattered allegations Plaintiffs point to in their Reply fail to articulate a duty owed to Plaintiffs by Wholesalers, or any breach of that duty, and their negligence claims remain deficient. The Court should deny the Motion to Amend with respect to Plaintiffs' negligence claims as futile, and should dismiss

Plaintiffs' negligence claims as to Wholesalers with prejudice.[11]

## VII.   PLAINTIFFS DID NOT AMEND THE MMMC FAILURE TO WARN COUNT TO COMPORT WITH THE COURT'S ORDER

As yet another example of Plaintiffs' apparent belief that they need not heed this Court's very clear rulings, the Court dismissed *with prejudice* Plaintiffs' strict liability failure to warn claims in the MMMC that arise under the laws of states that prohibit strict liability failure to warn claims. MTD Ord. 4 at 3; MTD Op. 4 at 26. But despite this clear ruling, Plaintiffs admit that "strict liability failure to warn claims . . . were not excised from the PMMMC." Reply at 66. Plaintiffs' failure to warn causes of action in the PMMMC should be dismissed with prejudice as to claims arising under the laws of Virginia, Pennsylvania, North Carolina, Massachusetts, and Delaware.

## VIII.   PLAINTIFFS SHOULD BE DENIED LEAVE TO AMEND TO ADD FUTILE PLA CLAIMS.

As set forth in Manufacturers' Sur-Reply at Section II.E, incorporated herein, in addition to being untimely, Plaintiffs' edits to the PELMC and PMMMC do not cure the PLA claims the Court determined were subsumed; they simply add new

---

[11] With regard to Plaintiffs' negligence *per se* claims, Plaintiffs "agree with Defendants that the Court previously dismissed negligence *per se* claims, as stand-alone claims, under the laws of Arkansas, Arizona, California, Massachusetts, Maine, Nebraska, Rhode Island, and Texas." Reply at 66. Therefore, the Court should dismiss with prejudice Plaintiffs' negligence *per se* claims in the PELMC and PMMMC arising under the laws of those states.

claims on top of futile, subsumed claims. Relatedly, Plaintiffs' proposed amendments to the PMMMC do not allege cognizable injuries under the subject states' PLAs. Amendment would therefore be futile. Additionally, as set forth in the Pharmacy Defendants' Opp. Section IV.A.6, which is incorporated herein, Plaintiffs' claims under the Louisiana PLA against Wholesalers are futile as a matter of law because Plaintiffs do not assert that Wholesalers are manufacturers under Louisiana law, and they would not qualify as manufacturers under the statute. PPIMC at 778-781; *see also* La. Rev. State. § 2800.53(1).

## IX.    PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND CLAIMS DERIVATIVE OF THE CLAIMS IDENTIFIED IN SECTIONS III-VI.

For the same reasons Plaintiffs should not be granted leave to amend as to the claims identified in Sections III-VI, Plaintiffs should also be denied leave to amend all derivative claims (e.g., wrongful death, survival, loss of consortium, and punitive damages), as such causes of action "cannot be actionable." MTD Op. 6 at 15.

## CONCLUSION

WHEREFORE, for the foregoing reasons, as well as those reasons applicable to Wholesalers as outlined in the co-Defendants' briefs and adopted herein, Wholesalers respectfully request that Plaintiffs' Motion for Leave to Amend be denied as futile, and that the previously dismissed claims asserted in three original Master Complaints be dismissed with prejudice against Wholesalers.

Dated: August 2, 2021

Respectfully submitted,

/s/    Jeffrey D. Geoppinger
Jeffrey D. Geoppinger, Esq.
Liaison Counsel for Wholesalers

Jeffrey D. Geoppinger, *Liaison Counsel for Wholesalers*
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com
Counsel for Amerisource Bergen

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
CROWELL & MORING
1001 Pennsylvania Avenue NW
Washington., D.C. 20004
Tel.: (202)624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com
*Counsel for Cardinal Health, Inc.*

D'Lesli M. Davis
Ellie K. Norris
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
Email: dlesli.davis@nortonrosefulbright.com
Email: ellie.norris@nortonrosefulbright.com
*Counsel for McKesson Corporation*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of August, 2021, I filed the foregoing **WHOLESALERS' SUR-REPLY TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND MASTER COMPLAINTS** electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.

/s/ Marie S. Dennis
Marie S. Dennis