# EXHIBIT N

```
 1                UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
 2

 3   _____

                                         CIVIL ACTION NUMBER:
 4   IN RE:  VALSARTAN PRODUCTS
     LIABILITY LITIGATION                19-md-02875-RBK-KMW
 5
                                         CASE MANAGEMENT CONFERENCE
 6   _____         VIA TELECONFERENCE

 7        Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
 8        Camden, New Jersey  08101
          June 25, 2021
 9        Commencing at 10:00

10   B E F O R E:              THE HONORABLE ROBERT B. KUGLER
                                UNITED STATES DISTRICT JUDGE AND
11                              SPECIAL MASTER THE HONORABLE
                                THOMAS I. VANASKIE
12

     A P P E A R A N C E S:
13
          MAZIE SLATER KATZ & FREEMAN, LLC
14        BY:  ADAM M. SLATER, ESQUIRE
          103 Eisenhower Parkway
15        Roseland, New Jersey  07068
          For the Plaintiffs
16
          GOLOMB & HONIK, P.C.
17        BY:  RUBEN HONIK, ESQUIRE
          1835 Market Street, Suite 2900
18        Philadelphia, Pennsylvania  19103
          For the Plaintiffs
19
          LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
20        BY:  DANIEL A. NIGH, ESQUIRE
          316 S. Baylen, Suite 600
21        Pensacola, Florida 32502
          For the Plaintiffs
22
                Camille Pedano, Official Court Reporter
23                   camillepedano@gmail.com
                          609-774-1494
24

25    Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.
```

1  reasons we raise these issues by letter is to keep the matter
2  moving along because motion practice certainly slows the
3  progress of a case such as this one.
4       I believe that plaintiffs certainly have raised
5  repeatedly specific deficiencies with respect to the
6  productions that have been made in this matter, but it appears
7  that we're heading to the unavoidable need for a motion from
8  plaintiffs to compel discovery, to compel production,
9  identifying the deficiencies in the production, to be followed
10 by a response from ZHP, with a hearing, evidentiary hearing, to
11 be held via Zoom or in some other way so we can get this matter
12 resolved.  But we are not going to follow the normal timeframe
13 specified in the rules for a motion of this importance.  I want
14 to get it resolved promptly.
15      Mr. Slater, how quickly can the plaintiffs present a
16 motion that identifies what plaintiffs believe to be the
17 deficiencies in the production that has occurred to date?
18           MR. SLATER:  That's a good question.  I would like to
19 think we can do so very quickly but because of the tenor of
20 this discussion and some of the representations that have been
21 made and how the issues have expanded somewhat into a formal
22 motion to compel, I would want to try to be more comprehensive
23 than we are in the letters, and I think that's what Your Honor
24 is expecting, so I would say that we would probably need two
25 weeks.  And I'm trying to take into account when the July 4th

1  And, as I said, we will conduct a hearing on this matter most
2  likely via Zoom.  I'm toying with the idea of an in-person
3  hearing but I'm not sure we're there yet, and I would have to
4  check with the Clerk of the Court and Judge Kugler about doing
5  an in-person hearing on this matter.  But I think that's all we
6  can accomplish on the question of ZHP's production at this
7  point.
8         Is there anything else, Mr. Slater, you wanted to raise
9  on that issue?
10         MR. SLATER:  Yes, Your Honor.  I think Ms. Priselac
11  agreed moments ago, the one thing that we would like to get
12  resolved, frankly, as we said in our letter, by today, because
13  of our impending deadline for our expert reports, is concrete
14  confirmation from ZHP as to the testing results as requested in
15  our letter.  And I think Ms. Priselac said they can get that to
16  us today.  So that, from our perspective, is the most intensely
17  pressing matter.  So if that can be produced today, that would
18  be very helpful.
19         JUDGE VANASKIE:  All right.
20         MS. PRISELAC:  Your Honor, that's not what I said.
21         JUDGE VANASKIE:  All right.  What --
22         MS. PRISELAC:  That's not what I said.
23         JUDGE VANASKIE:  What did you say?
24         MS. PRISELAC:  So thank you.
25       Your Honor, we have told the plaintiffs, starting back

1  in August of 2020, that the nitrosamine testing results were
2  all produced in a prioritized manner, because the plaintiffs
3  told us they needed them as soon as possible, in a production
4  that's labeled ZHP17.  Every single nitrosamine testing record
5  related to valsartan API that is USDMF grade, which means it
6  can be sold in a United States product, has been produced to
7  the plaintiffs and has been in their possession since August.
8      As part of the meet-and-confer process, what they asked
9  us is that -- after they saw a summary of nitrosamine testing
10 results that included testing results for valsartan product
11 that is not USDMF grade, they asked us if we could produce
12 additional documents that would summarize those testing
13 results.  We said we would ask the client if such a document
14 exists, and if it does, we would produce it.
15     We went back to the client, the client looked.  The most
16 detailed summary of all nitrosamine testing results, including
17 products that weren't sold in the United States, the most
18 detailed summary they have is the one that the plaintiffs
19 already have and have referenced numerous times.
20     The issue, in terms of the underlying nitrosamine
21 testing records, was an issue that we were in constant
22 communication with plaintiffs last year when they asked us to
23 prioritize these documents.  We made it clear that these
24 testing documents and batch records would relate solely to
25 USDMF-grade API, all of those documents were produced between

1  August and November of last year.  They're clearly marked as
2  such on our production log so there's no argument that they
3  should be difficult to find.  Literally, the documents Mr.
4  Slater is talking about are titled in the production log
5  "Nitrosamine Testing Results", so I don't understand what the
6  current request now is.
7           JUDGE VANASKIE:  All right.  Mr. Slater?
8           MR. SLATER:  Thank you, Your Honor.
9        First of all, there's a statement in ZHP's documents
10 that they tested 7,000 batches of valsartan, and we have asked
11 repeatedly where are those test results for the 7,000 batches,
12 and ZHP has given us Bates ranges that are not just specific
13 test results, they're much broader, and we said just tell us
14 the specific Bates numbers of the specific documents that
15 contain those 7,000 test results for the batches.  That's
16 number one.  And I thought they were going to agree to do it,
17 and I thought they agreed the other day to do it, so this is
18 backtracking.
19      Secondly, Ms. Priselac keeps referring to USDMF-grade
20 valsartan.  That argument that ZHP would only have to produce
21 the results for the valsartan that was, quote, unquote, USDMF
22 grade was rejected by Judge Schneider.  He said, no, you're
23 producing the test results for all of the valsartan
24 manufactured in the facilities that manufactured valsartan to
25 go to the United States because, obviously, it was all

1        JUDGE VANASKIE:  Mr. Slater?
2        MR. SLATER:  I think at this point we're going to have
3 to look at that Bates range.  I -- obviously it's about 3,000
4 pages long.  I'm concerned that it may be -- or 25, about 2,700
5 pages, it looks like.  I'm concerned that that may be broader
6 than -- it may just be an entire collection.  But if that's
7 just the test results, we'll take a look at that and we'll
8 compare it to what we had before and see if it's the documents
9 that we've been told previously were the right documents that
10 we utilized in depositions.
11       As far as the underlying testing for the non-USDMF
12 grade, we'll make a decision on whether to move on that --
13       JUDGE VANASKIE:  All right.
14       MR. SLATER:  -- so Your Honor doesn't have to resolve
15 that today.
16       As far as identifying which was sold through Solco
17 versus Teva and Torrent, that may also have to become a subject
18 of the motion.  I don't know that that has to be something we
19 have to fight for today.  So I'm trying to do this in an
20 orderly way for Your Honor.
21       JUDGE VANASKIE:  Thank you for that.
22       You will have to raise those issues, if you are going to
23 raise them, in this motion.
24       MR. SLATER:  Will due.
25       JUDGE VANASKIE:  The deadline for which is July 9.