# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Karen M. Williams, Magistrate Judge<br><br>Honorable Thomas Vanaskie (Ret.), Special Discovery Master |

## MEMORANDUM OF LAW IN SUPPORT OF THE ZHP PARTIES' OBJECTION TO SPECIAL MASTER ORDER NO. 35 COMPELLING THE PRODUCTION OF DOCUMENTS PROHIBITED FROM PRODUCTION UNDER CHINESE LAW

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................1

II.  PERTINENT FACTUAL AND PROCEDURAL BACKGROUND .............3

III. STANDARD OF REVIEW ..............................................................6

IV.  ARGUMENT ...........................................................................7

    A.   The Special Master properly found that two of the *Aerospatiale* and *Richmark* factors weighed in favor of non-disclosure of the documents at issue. ................................................................8

        1.   The ZHP Parties have made, and continue to make, good faith attempts to comply with the Court's discovery orders. .............8

        2.   All of the documents at issue originated in China and were collected from individuals located in China. .............................9

    B.   The Special Master erred in his analysis of four of the *Aerospatiale* and *Richmark* factors. ..................................................10

        1.   The redacted and withheld portions of the twenty-three documents at issue are not vital to Plaintiffs' claims. .............10

        2.   Plaintiffs' broad and overreaching discovery requests lack specificity. ..................................................................14

        3.   Plaintiffs have alternative means of obtaining the relevant information at issue. ................................................16

        4.   ZHP will face extreme hardship if ordered to produce unredacted versions of the twenty-three documents at issue....18

    C.   The balance of national interests favors nondisclosure. ....................19

    D.   There is no basis for Plaintiffs' claim that the documents at issue do not contain state secrets........................................22

V.   CONCLUSION............................................................................26

# TABLE OF AUTHORITIES

**Federal Cases**

*In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2014 WL 5462496
(N.D. Cal. Oct. 23, 2014)........................................................6

*CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, 2013 WL
2661037 (S.D.N.Y. June 12, 2013) .......................................8, 16, 18

*Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514 (S.D.N.Y. 1992) ......... 22-23, 25

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th
Cir. 1992) ....................................................................*Passim*

*Schultz v. Royal Caribbean Cruises, Ltd.*, 465 F. Supp. 3d 1232 (S.D.
Fla. 2020), *motion to certify appeal denied,* 2020 WL 4905434
(S.D. Fla. July 22, 2020)................................................... 23-25

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct.,
S.D. Iowa*, 482 U.S. 522 (1987)..................................................*Passim*

*Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036 (9th Cir.
1999) .........................................................................22

*Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 2020 WL
7768405 (D.N.J. Dec. 30, 2020)...........................................6

*In re Westinghouse Elec. Corp. Uranium Conts. Litig.*, 563 F.2d 992
(10th Cir. 1977)...........................................................10

*White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369 (N.D. Ill. 2001) ...............19

**Other Authorities**

9A Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. §
2444 Proof of Foreign Law (3d ed.)................................................22

**Rules**

Fed. R. Civ. P. 44.1 .............................................................22

Fed. R. Civ. P. 53 ...................................................................................................6

Fed. R. Civ. P. 53(f)(3)-(5) ...................................................................................6

## I.    <u>PRELIMINARY STATEMENT</u>

In the midst of a global pandemic, and facing numerous cross-border discovery obstacles, the ZHP Parties[1] have worked tirelessly to comply with every discovery order issued by this Court, resulting in the production of more than 370,000 documents to Plaintiffs.[2]  Despite the ZHP Parties' production of more than 3.5 million pages of documents, Plaintiffs in the underlying motion sought to compel unredacted versions of twenty-three (23) documents that are barred from production under Chinese law because they involve communications with Chinese governmental entities.

On August 12, 2021, Special Master Vanaskie granted the ZHP Parties' cross-motion for protective order with respect to three (3) documents at issue, and granted Plaintiffs' motion to compel the remaining (20) documents.  SMO 35 at 18-19.  However, given that the production of the remaining twenty (20) documents would force ZHP to violate Chinese law and subject it and its employees to *civil and*

---

[1] Three U.S. companies affiliated with ZHP have been named as defendants in this lawsuit, Huahai US, Inc. ("Huahai US"), Prinston Pharmaceutical, Inc. ("Prinston"), and Solco Healthcare U.S., LLC ("Solco").  Together, these four ZHP-related entities are referred to herein as the "ZHP Parties."

[2] The ZHP Parties have demonstrated their commitment to the discovery process not only through their fulsome and transparent approach to document discovery, but also by asking employees of ZHP and its non-party subsidiary, Shanghai SynCores Technologies, Inc. ("SynCores"), to travel outside of mainland China to Macau for lengthy depositions notwithstanding the threat of COVID-19.

*criminal penalties*, the ZHP Parties respectfully request that this Court vacate Special Master Order No. 35.

Plaintiffs' motion to compel should be denied and the ZHP Parties' cross-motion for protective order should be granted because:

- Each of the seven factors set forth in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa*, 482 U.S. 522 (1987) and *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) weighs in favor of non-disclosure of the documents at issue; and

- Plaintiffs have failed to present or even cite to any expert opinion or analysis in support of their analysis of Chinese law, and have utterly failed to rebut the expert analysis proffered by ZHP's China-based counsel, Ms. Xueyu Yang, on behalf of the ZHP Parties.[3]

Throughout the underlying motion practice, Plaintiffs failed to cite *a single case* in which a court granted a motion to compel under the facts presented here. Indeed, granting Plaintiffs' motion in the circumstances of this case—*i.e.*, where each and every *Aerospatiale* and *Richmark* factor weighs heavily in favor of non-disclosure; the Plaintiffs have failed to present expert testimony; the documents at

---

[3] *See* Exhibit A (Yang Declaration).  Ms. Yang is an attorney qualified to practice law in China and the State of New York.

issue represent **.00621%** of the total document production; and the information at issue is not vital to Plaintiffs' claims—would be ***unprecedented***.

Further, permitting the ZHP Parties to withhold the documents at issue will have no bearing on Plaintiffs' ability to pursue their claims in this litigation, as demonstrated by the fact that Plaintiffs have been able to proceed with their case, including expert discovery, without the documents at issue. In stark contrast, ordering ZHP to produce these documents would present an ***extreme hardship*** for ZHP, as it would have to decide whether to comply with U.S. laws and face potential criminal and civil penalties in China, or comply with Chinese laws and face sanctions from this Court for non-compliance with a discovery order.

## II.    PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

At issue are fourteen (14) documents that the ZHP Parties have provided to Plaintiffs in redacted form and nine (9) documents that have been withheld in their entirety because they are barred from production under the laws of the People's Republic of China ("PRC"). A detailed description and extensive metadata relating to each document has been provided to Plaintiffs. *See* Exhibit B.[4] The relatively small universe of documents at issue—just **.00621%** of the ZHP Parties' production

---

[4] Plaintiffs were provided with complete metadata on the state secret logs; however, in order to provide the Court with the logs in an easily viewable form, certain fields have been omitted from Exhibit B.

of more than 370,000 documents—is a direct result of the ZHP Parties' significant efforts and expenditures undertaken to ensure that the ZHP Parties' production was as fulsome as possible, while at the same time complying with Chinese law.

In total, the ZHP Parties engaged three different China-based law firms to review the data collected in response to Plaintiffs' document requests to determine if the documents were subject to China's state secrecy laws.[5]  *See* Exhibit A at ¶¶ 19-20 (Yang Declaration).  Initially, on December 30, 2020, the ZHP Parties' State Secret Review Log ("SSR Log") included 335 documents.  However, after the completion of a second level review, only ninety-one (91) documents were withheld or redacted on the basis of China's state secrecy laws. *See* Exhibit A at ¶¶ 19-20 (Yang Declaration).

On March 9, 2021, Plaintiffs requested that the Court strike the ZHP Parties' entire SSR Log.  *See* Dkt. 1011.  Special Master Vanaskie then ordered oral argument on the issue of the adequacy of the ZHP Parties' log.  *See* Dkt. 1021.  On March 15, 2021, the ZHP Parties submitted a letter opposing Plaintiffs' request that the SSR Log be stricken.  *See* Dkt. 1027.  Following oral argument, Special Master Vanaskie ordered that the ZHP Parties and Plaintiffs meet and confer "on the record"

---

[5] The ZHP Parties' China-based law firms are the only law firms that have seen these documents in their entirety, as it would be a violation of Chinese law for the ZHP Parties' U.S.-based counsel to view these documents.

with respect to the possible production of the documents and file a status report on the efforts taken to resolve the dispute. *See* Dkt. 1034.

Prior to the meet and confer, the ZHP Parties informed Plaintiffs that of the ninety-one (91) documents on the log, there were only thirty-six (36) non-duplicative documents. *See* Exhibit C (3-23-21 Email to Plaintiffs' Counsel). On March 26, 2021, Plaintiffs and the ZHP Parties met and conferred for over four hours to discuss each non-duplicative document. *See* Exhibit D (3-26-21 Meet and Confer Tr.). The ZHP Parties' China-based counsel participated and answered all questions asked by Plaintiffs that could be answered without violating Chinese law. *Id.* Plaintiffs did not have an expert in Chinese law or Chinese counsel attend the meet and confer. *Id.*

On May 10, 2021, Plaintiffs filed a motion to compel the production of twenty-three (23) documents on the log—only nine (9) were withheld from Plaintiffs in their entirety, while the other fourteen (14) were provided in redacted form. *See* Dkt. 1231. Plaintiffs' motion rested on pure speculation from Plaintiffs' counsel about Chinese law and mischaracterized the documents at issues. *See* Dkt. 1231 at 2-17. Unlike Plaintiffs' Motion to Compel, the ZHP Parties' brief in opposition and cross-motion for a protective order cited well-established legal principles and relied on an expert in Chinese law demonstrating why the factors set forth in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct.*, S.D. Iowa, 482 U.S.

522 (1987) and *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992), favor nondisclosure of all twenty-three (23) documents at issue.  Dkt. 1267 at 6-29.

On August 12, 2021, Special Master Vanaskie granted Plaintiffs' motion to compel with the exception of three (3) documents.  SMO 35 at 18-19.  As for those three (3) documents, Special Master Vanaskie granted the ZHP Parties' Motion for Protective Order.  *Id.*

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 53, a Special Master's findings of fact and conclusions of law are reviewed *de novo*, whereas rulings on procedural matters are subject to an abuse of discretion standard.  Fed. R. Civ. P. 53(f)(3)-(5).  Where a Special Master's order interprets cases and applies them to rule whether certain discovery must be produced, a special master makes "legal determinations that are subject to *de novo* review."  *Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 2020 WL 7768405, at *4 (D.N.J. Dec. 30, 2020).  Where, as here, the Special Master interpreted the relevant case law to determine whether to compel the production of certain documents, the decision is subject to *de novo* review.  *See id.; see also In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2014 WL 5462496, at *4 (N.D. Cal. Oct. 23, 2014) (reviewing *de novo* the Special Master's order to compel the production of documents purportedly protected by a French blocking statute).

## IV.    __ARGUMENT__

United States Supreme Court precedent requires this Court to carefully analyze the factors set forth in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., S.D. Iowa* in deciding whether Chinese law excuses noncompliance with discovery rules.  482 U.S. at 544, n.28.  Specifically, the court must consider:

1. "[T]he importance to the . . . litigation of the documents or other information requested;"

2. "[T]he degree of specificity of the request;"

3. "[W]hether the information originated in the United States;"

4. "[T]he availability of alternative means of securing the information;" and

5. "[T]he extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."

As the Supreme Court explained in *Aerospatiale*, this list is not exhaustive and courts often consider two other factors:

6. The extent and nature of the hardship on the party from whom discovery is sought; and

7. The good faith of the party resisting discovery.

*Id.*; *see also Richmark Corp.*, 959 F.2d at 1477-80 (analyzing both the hardship and good faith factors).

Here, each and every *Aerospatiale* and *Richmark* factor weighs in favor of denying Plaintiffs' motion to compel and granting the ZHP Parties' cross-motion for protective order.

**A. The Special Master properly found that two of the *Aerospatiale* and *Richmark* factors weighed in favor of non-disclosure of the documents at issue.**

**1. The ZHP Parties have made, and continue to make, good faith attempts to comply with the Court's discovery orders.**

In deciding whether to compel production of the documents that are subject to foreign blocking statutes, courts consider whether the party that opposes foreign discovery has made a good faith effort to comply with discovery orders. *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, 2013 WL 2661037, at *16 (S.D.N.Y. June 12, 2013). Here, there can be no doubt that the ZHP Parties have made a good faith effort to comply with their discovery obligations. As Special Master Vanaskie previously acknowledged, "I am favorably impressed by the level of review that the documents went through . . . ***it shows that you're really operating in good faith here*** and I did want to note that." *See* Exhibit E (3-16-21 Hrg. Tr.) at 38:17-18 (emphasis added). Indeed, ZHP has met its discovery obligations throughout this litigation, despite the tremendous burden being a foreign defendant attempting to meet incredibly wide-ranging discovery demands ***in the midst of a global pandemic***.

As set forth in the declaration of Ms. Yang, since initially serving their state secret logs on December 30, 2020, the ZHP Parties have worked with three Chinese

law firms to streamline the population of state secret documents.  *See* Exhibit A at ¶¶ 19-20 (Yang Declaration).  Following these careful attempts to winnow the withheld document population, counsel for the ZHP Parties, including ZHP's China-based counsel, met and conferred for four and a half hours with Plaintiffs, answering any questions they had about the documents at issue, provided that they did not violate state secret law.  *See* Exhibit D (3-26-21 Meet and Confer Tr.).  Through this meet and confer process, ZHP's China-based counsel provided information on each of the documents, and the population of contested documents was winnowed down to twenty-three (23) documents.

The ZHP Parties have made every effort to comply with their discovery obligations while also abiding by Chinese law, even going so far as to ask Chinese authorities to permit them to produce the documents at issue.  *See* Exhibit A at ¶ 26 (Yang Declaration).  Accordingly, the Special Master correctly found that this factor weighs in favor of the ZHP Parties.  *See* SMO 35 at 17-18.

### 2. All of the documents at issue originated in China and were collected from individuals located in China.

*Aerospatiale* directs the Court to consider whether the information at issue originated in the United States or abroad.  This factor weighs heavily in favor of nondisclosure where all of the requested information sought and the people involved in assembling it are located in a foreign country.  *See Richmark Corp.*, 959 F.2d at 1475 ("The fact that all the information to be disclosed (and the people who will be

deposed or who will produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business."); *Reinsurance Co. of Am.*, 902 F.2d at 1281 (finding the court below correctly denied the motion to compel discovery where all the information which plaintiff sought was located within Romania and the office of the defendant was located within Romania).

As the Special Master properly found, none of the twenty-three (23) documents at issue originated in the United States, and each document was collected in China. SMO 35 at 14. It is undisputed that all of the custodians responsible for maintaining the information are located in China or were located there during the time the information was collected. As such, this factor weighs in favor of nondisclosure.

**B. The Special Master erred in his analysis of four of the *Aerospatiale* and *Richmark* factors.**

**1. The redacted and withheld portions of the twenty-three documents at issue are not vital to Plaintiffs' claims.**

The first factor the Court must consider is the importance of the foreign discovery requested. When the case "***does not stand or fall on the present discovery order***" and the information at issue is "in a sense ***cumulative***" courts are generally unwilling to override foreign secrecy laws. *In re Westinghouse Elec. Corp. Uranium Conts. Litig.*, 563 F.2d 992, 999 (10th Cir. 1977) (finding the trial court erred in

10

holding corporation in contempt and imposing sanctions for its failure to comply with discovery order). Thus, in stark contrast to the discovery standards set forth in the Federal Rules of Civil Procedure, the requested documents must be more than relevant.

The Special Master initially cited the relevant federal case law that dictates that the information at issue must be more than relevant in order for this fact to weigh in favor of disclosure, but ultimately relied on a standard of "direct relevancy" set forth by the Delaware Court of Chancery. *See* SMO 35 at 12-13 (citing *In re Activision Blizzard, Inc.*, 86 A.3d 531, 544 (Del. Ch. 2014)). However, the information at issue here does not even meet the "directly relevant" standard; rather, the Special Master applied a standard that merely demonstrates that the information at issue is responsive to Plaintiffs' document requests:

> It does appear . . . that the documents are "directly relevant" to Plaintiffs' claims. In this regard, it is noteworthy that 14 of the 23 documents in dispute have been produced in part, thus suggesting a recognition that the documents are indeed relevant . . .

SMO 35 at 12. However, production of these redacted documents demonstrates only that they are responsive to one of Plaintiffs' multitude of discovery requests, not that the documents are "directly relevant" to Plaintiffs' claims. Thus, the Special Master's analysis does not apply the "directly relevant" standard; instead, the analysis merely demonstrates that the documents at issue are ***responsive*** to Plaintiffs' discovery requests.

11

As outlined in Ms. Yang's declaration and the log attached thereto, seventeen (17) of the documents concern communications with, reports to, or reports from ***Chinese regulatory bodies*** (*see* Exhibit A ¶¶ 28-31) (describing PRINBURY00148044; ZHP02605629; ZHP02608269; ZHP02608270; ZHP02608279; ZHP02613610; ZHP02615167; ZHP02621763; ZHP02622051; ZHP02622054; ZHP02622057; ZHP02622059; ZHP02636529; ZHP02636533; ZHP02636534; ZHP02649530), while four (4) documents contain meeting minutes with ***Chinese governmental bodies*** such as the Chinese Center for Drug Evaluation ("CDE"), the Taizhou Medical Product Administration, the Zhejiang Medical Products Administration, and the National Medical Products Administration. *See* Exhibit A ¶ 31 (describing PRINBURY00142827; ZHP02459190; ZHP02604526; ZHP02605097). These documents focus exclusively on the ***Chinese*** market and ***Chinese*** consumers, and therefore are not critical or even "directly relevant" to the claims in this litigation, which revolves entirely around generic drugs that were sold in the ***U.S.*** market to ***U.S.*** consumers, and whether the defendants acted in accordance with the regulations enforced by the ***U.S.*** Food and Drug Administration ("FDA").

The three (3) remaining documents that do not involve reports or meeting minutes with Chinese regulatory bodies involve communications with the Chinese government that have nothing to do with the claims at issue in this litigation. ▮



Even if the information the ZHP Parties exchanged with the Chinese government about the Chinese market were somehow relevant, Plaintiffs have conceded that their case does not "stand or fall" on this information because it would be *cumulative* of the information the ZHP Parties exchanged with the FDA. *See* Exhibit D (3-26-21 Meet and Confer Tr.) at 86:18-87:7 (highlighting that the portions of the documents at issue that are *relevant* to Plaintiffs' claims are cumulative of the information contained within the thousands of FDA regulatory

documents already within Plaintiffs' possession).  Additionally, the ZHP Parties have produced more than *3.5 **million pages of documents***, including communications with the FDA and other nations' regulatory agencies concerning the allegations at issue in this litigation.  Therefore, any information in these twenty-three (23) documents would be relevant to any of Plaintiffs' claims would also be cumulative of the information contained within the hundreds of thousands of regulatory and other documents *already within Plaintiffs' possession*.

Accordingly, this factor weighs heavily in favor of the ZHP Parties because along with being unnecessarily cumulative, these documents contain communications with Chinese regulatory authorities, and Plaintiffs' claims regarding the *U.S. market and consumers* do not "stand or fall" on what ZHP communicated to the Chinese government about the *Chinese market and consumers*.

### 2. Plaintiffs' broad and overreaching discovery requests lack specificity.

*Aerospatiale* requires the Court to consider the degree of specificity of the requests for foreign discovery.  "Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged." *Richmark Corp.*, 959 F.2d at 1475.  The court must look to the degree to which the foreign discovery requests are "narrowly tailored" to the claims and defenses of the litigation. *Strauss*, 249 F.R.D. at 440-41.

The discovery requests at issue here are anything but narrowly-tailored.  *See* Dkt. 328 (Plaintiffs' Requests for Production).  Plaintiffs' Requests for Production of Documents to API and Finished Dose Manufacturing Defendants requested ***more than ninety-five (95) categories of documents*** from the ZHP Parties, covering any operations potentially relating to valsartan, including requests for organizational information policies, agreements with defendants, communications with defendants, ANDA and DMF files, documents pertaining to the manufacturing, testing records, regulatory correspondence, recall-related communications, and sales data, among other requests.  *See* Exhibit F (Plaintiffs' Requests for Production).  Documents responsive to these requests were collected in a comprehensive manner including collections of non-custodial documents, collections from third-party subsidiaries that are not named defendants in this litigation, and the application of over 400 search terms across more than 80 custodians.  *See id*.; Exhibit G (Custodian List).

These expansive requests have led to the production of over 370,000 documents totaling over 3.5 million pages.  Despite this substantial volume of discovery, Plaintiffs have only introduced 457[6] documents at depositions, excluding translations.  But even these expansive requests for production have not satisfied Plaintiffs.  On April 24, 2021, Plaintiffs sent a letter to the ZHP Parties requesting

---

[6] Although 457 documents have been marked at ZHP party depositions, many are duplicates or translations of earlier-marked documents.

15

*fifteen* (15) additional categories of documents.  *See* Dkt. 1228.  In response to these requests, the ZHP Parties agreed to, among other things:

- Produce the custodial files of **seven additional custodians** based on the original 400+ search terms;

- Review the collection of **thirteen** (13) custodians and, if necessary, supplement their production with any additional responsive, non-privileged documents; and

- Apply the following **six (6) new search terms** across all existing and new custodians and to produce any additional responsive, non-privileged documents: Zhejiang Second Pharma, CN103613558A, Impurity K, NALCO, Hypochlorite and TC-201729.

*See* Dkt. 1228.

In sum, Plaintiffs' never-ending and incredibly far-reaching requests have resulted in an enormous document production, including many documents of little relevance or materiality to this litigation.  The overreach of Plaintiffs' document requests weighs strongly in favor of non-disclosure.

### 3.    Plaintiffs have alternative means of obtaining the relevant information at issue.

The Court is also required to consider whether there are alternative means to obtaining the requested, relevant information.  "If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law."  *Richmark Corp.*, 959 F.2d at 1475; *see also CE Int'l Res. Holdings, LLC*, 2013 WL 2661037, at *10 (denying an order to compel where the requestor could reasonably obtain the sought after information elsewhere).

As stated above (*see supra*, Section IV(B)(1)), not only can Plaintiffs obtain the relevant information contained in ZHP's State Secret Review Log elsewhere, ***Plaintiffs have already obtained the relevant information, if any, contained in these documents***. ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

Not only can Plaintiffs obtain the ***relevant*** information contained in the documents at issue elsewhere, Plaintiffs have already asked ZHP's China-based counsel questions of those twenty-three (23) documents and received response from ZHP's China-based counsel throughout meet and confer process.  *See* Exhibit D (3-26-21 Meet and Confer Tr.).  Additionally, the ZHP Parties have produced more than 3.5 million pages of documents, including communications with the FDA ***and*** other nations' regulatory agencies concerning the allegations at issue in this litigation.  Indeed, the information already provided to Plaintiffs goes ***well beyond*** the information provided to regulatory authorities, as it includes ***internal and external*** communications regarding ZHP's root cause analyses, deviation reports, ANDA and DMF filings, the ZHP Parties' communications with their customers regarding the impurity, and much more.

17

Given that any potentially relevant information contained in these twenty-three (23) documents is cumulative of the information the ZHP Parties exchanged with the FDA and other regulatory agencies, and because Plaintiffs' already have ZHP's FDA communications *in their possession*, the ZHP Parties should not be forced to violate Chinese law and subject themselves to criminal and civil penalties. Accordingly, this factor weighs heavily in favor of nondisclosure.

### 4. ZHP will face extreme hardship if ordered to produce unredacted versions of the twenty-three documents at issue.

The extent and nature of the hardship that the discovery request is likely to have on the foreign entity is another factor for this Court to consider. "If compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure." *CE Int'l Res. Holdings, LLC*, 2013 WL 2661037, at *15.

As described in detail in the declaration of Ms. Yang (*see* Exhibit A at ¶¶ 13, 18, 34-35 (Yang Declaration)), China imposes severe criminal and civil penalties on individuals who violate its state secrecy laws. While the ZHP Parties are actively seeking permission from the Chinese government to produce the documents at issue (*see* Exhibit A at ¶ 26 (Yang Declaration)), the ZHP Parties have been extremely transparent with this Court and Plaintiffs in that there is no guarantee that the Chinese government will allow ZHP to produce these documents. *See* Exhibit E (3-16-21 Hrg. Tr.) at 11:7-12. If the ZHP Parties disclose these documents without the

18

Chinese government's permission, both ZHP and its employees will be at risk of facing severe civil and criminal penalties. *See* Exhibit A at ¶¶ 13, 18, 34-35 (Yang Declaration). Accordingly, this factor weighs heavily in favor of permitting ZHP to withhold the documents at issue.

### C.    The balance of national interests favors nondisclosure.

The Court must also balance the interests of each nation in requiring or prohibiting the disclosure of the requested information, which is a factor often given great weight by courts. *See Richmark Corp.*, 959 F.2d at 1476 (referring to this factor as "the most important factor"). In balancing the interests of American and foreign courts, American courts have given deference to a foreign nation's interest in the considerable value they assign to their confidentiality and privacy. *See, e.g.*, *Reinsurance Co*, 902 F.2d at 1279-81 (finding Romania's interest in its "service secrets" outweighed the interests of the United States given the scope of Romania's laws and the severe penalties for violations); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369, 375 (N.D. Ill. 2001) (finding England's "interests in confidentiality" outweighed the American court's interest in the production of documents that were deemed confidential under English law). The extent of a foreign nation's interest is evidenced primarily by the scope of the laws at issue, the strict enforcement of those laws, and the possibilities of severe sanctions and penalties. *See Reinsurance Co.*, 902 F.2d at 1280.

As outlined in the Declaration of Ms. Yang, China greatly values confidentiality afforded to the information of, and communications with, its governmental entities, and its government has gone to great lengths to enact a system of law that protects such information from disclosure (*see* Exhibit A at ¶¶ 7-13) (Yang Declaration).  China's interest in protecting this information is evidenced by the Chinese laws that impose severe criminal and civil penalties on any individual who transmits what it deems to be "state secrets" outside of the country.  *See* Exhibit A at ¶¶ 13, 18, 34-35 (Yang Declaration).  The penalties for transmitting Chinese state secrets outside of China "rang[e] from administrative fines to a criminal sentence" including imprisonment up to seven years.  *See* Exhibit A at ¶¶ 13, 34 (Yang Declaration).  As such, ZHP's unlawful disclosure of these documents may subject ZHP and its employees to administrative and criminal penalties.  *See* Exhibit A at ¶¶ 13, 18, 34-35 (Yang Declaration).

In addition to the state secrecy laws that were the subject of the underlying motion, China recently enacted the Data Security Law, which came into force on September 1, 2021.  *See* Exhibit A at ¶¶ 14-18 (Yang Declaration).[7]  Article 2 of the

---

[7] The implementation of China's new data security and data privacy laws, and the severe penalties for their violation, have also been extensively covered by U.S. news outlets, *see, e.g.*, Eva Xiao, *China Set to Pass One of the World's Strictest Data-Privacy Laws*, THE WALL STREET JOURNAL (August 17, 2021, 8:05 AM), https://www.wsj.com/articles/china-set-to-pass-one-of-the-worlds-strictest-data-privacy-laws-11629201927.

new law provides that "*[t]his Law is formulated with a view to regulating data processing activities, ensuring data security, promoting data development and utilization, protecting the legitimate rights and interests of individuals and organizations, and **safeguarding national sovereignty, security and development interests***" (emphasis added). *Id*. at ¶ 15. Article 36 of the Data Security Law provides:

> The competent authority of the People's Republic of China shall handle the requests for data provision by foreign judicial or law enforcement organizations in accordance with relevant laws and international treaties and conventions concluded or acceded to by the People's Republic of China, or under the principle of equality and reciprocity. ***Without the approval of the competent authority of the People's Republic of China, domestic organizations and individuals shall not provide the data stored within the territory of the People's Republic of China to foreign judicial or law enforcement organizations***.

(emphasis added). Exhibit A at ¶ 16 (Yang Declaration). Thus, the new law requires that ZHP obtain the government's permission to produce the documents at issue prior to their production. *Id*. at ¶ 17.

While this Court undeniably has an interest in upholding its discovery rules and orders, ZHP should not suffer because of China's interest in protecting the confidentiality of its government communications and information. China's confidentiality, state secrecy, and data security interests are also more immediate and compelling than any other interest in this litigation given the nature of Plaintiffs' claims, **which are wholly unrelated to any action of the Chinese government or**

*any Chinese regulatory authority*.   Moreover, as described herein (*see supra*, Section IV(A)(1)), the ZHP Parties have made good faith efforts, and will continue to make good faith efforts, to comply with this Court's discovery orders. Accordingly, this factor weighs in favor of non-disclosure.

### D.   There is no basis for Plaintiffs' claim that the documents at issue do not contain state secrets.

In a transparent attempt to avoid the applicable legal standard on this issue— *i.e.*, the *Aerospatiale* and *Richmark* factors—Plaintiffs' primary legal argument throughout the underlying motion practice has been that the twenty-three (23) documents at issue "do not contain Chinese state secrets," an analysis which is based on their own, wholly-unsupported, interpretation of Chinese law.  *See* Dkt. 1231 at 2-17.   As a matter of general principle, Plaintiffs are not equipped to opine on China's state secrecy laws.   "[J]udges expect adequate expert testimony on foreign law and the failure to produce it may be quite damaging to a litigant's case."   9A Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 2444 Proof of Foreign Law (3d ed.).   Although "courts may do their own research in order to ascertain foreign law" under Federal Rule of Civil Procedure 44.1, "expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law."  *Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999).

22

The principle that experts on foreign law provide the primary evidence of foreign law applies to issues arising in a motion to compel.  For example, in *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514 (S.D.N.Y. 1992), the district court declined the defendants' motion to compel on the basis of plaintiffs' unrebutted expert affidavit on foreign law.  The court reasoned that "defendants were free to proffer their own version of Norwegian law if they disagreed with [the plaintiffs' expert's] interpretation or if they had a basis for arguing that Norwegian law . . . would not justify invocation of a privilege on the facts presented." *Id.* at 524.  The court concluded that "[s]ince defendants have refrained from doing so, I decline to question what is, on its face, uncontradicted testimony as to both the state of Norwegian law and the facts relevant to the application of that law." *Id.*

Similarly, in *Schultz v. Royal Caribbean Cruises, Ltd.*, 465 F. Supp. 3d 1232 (S.D. Fla. 2020), *motion to certify appeal denied,* 2020 WL 4905434 (S.D. Fla. July 22, 2020), the district court addressed a dispute over the application of foreign law in considering cross-motions for summary judgment.  The plaintiff submitted expert testimony on Maltese law. *Id.* at 1260.  The defendant, however, only "t[ook] issue with Plaintiff's experts." *Id.*  The district court chastised the defendant for this omission: "Making matters worse, Defendant never relies on a single piece of expert testimony on how to interpret and apply Maltese law." *Id.* at 1261.  Instead, the defendant simply adopted "the legal principles in Plaintiff's expert report but then

disavow[ed] how those experts applied them." *Id*. The district court explained that "[t]his sort of legal gymnastics is entirely unhelpful because it leaves the Court with little to determine . . . how to then apply the legal principles of a foreign state." *Id*.

The court reasoned that, "in the absence of any competing expert testimony," the defendant's opposition to the application of foreign law by the plaintiff's foreign experts amounted to mere "speculation" and "guesswork." *Id.* at 1262. Thus, the court ruled that it "fail[ed] to see, given the unique question presented, how we can . . . determine whether Plaintiff's experts misapplied that analysis [of Maltese law] without any competing expert evidence." *Id*. The court accordingly granted the plaintiff's motion for summary judgment as to applicability of the foreign law exception to the ADA and denied the defendant's cross-motion. *Id.*

Here, Plaintiffs admitted well in advance of the motion that they do not oppose the analysis of Ms. Yang with their own expert in Chinese law: "***We're not being advised by any outside lawyers***." Exhibit E (3-16-21 Hrg. Tr.) at 30:20-21 (emphasis added). Instead, Plaintiffs merely "read the state secret laws." *Id.* at 30:21-22. Because Plaintiffs failed to retain an expert, Plaintiffs' counsel had to ask Ms. Yang during the March 26, 2021 meet and confer about Chinese law in an effort "to make sure I was reading all the laws correctly." Exhibit D (3-26-21 Meet and Confer Tr.) at 14:6-7.

In other words, just as in *Schultz*, Plaintiffs' motion to compel "never relies on a single piece of expert testimony on how to interpret and apply [Chinese] law," and simply adopts "the legal principles [of the ZHP Parties' expert] but then disavows how [Yang Xueyu] applied" those principles. *Schultz*, 465 F. Supp. 3d at 1261. Therefore, as in *Schultz*, "in the absence of any competing expert testimony," Plaintiffs' motion to compel relies on their own "speculation" and "guesswork" as to China's state secrecy laws, and leaves this Court with no basis to "determine whether [the ZHP Parties'] expert[] misapplied" Chinese law. *Id.* at 1262.

Finally, Plaintiffs' motion to compel suffers from the same fatal flaw that doomed the motion to compel in *Golden Trade*. Here, as in *Golden Trade*, Plaintiffs have had months to find their own expert and "were free to proffer their own version of [Chinese] law if they disagree[] with [Yang Xueyu's expert] interpretation or if they ha[ve] a basis for arguing that [Chinese] law . . . would not justify invocation of a privilege on the facts presented." *Golden Trade*, 143 F.R.D. at 524. As with the losing party in *Golden Trade*, Plaintiffs "have refrained" from proffering their own expert, and so the Court should "decline to question what is, on its fact, uncontradicted testimony" by Yang Xueyu "as to both the state of [Chinese] law and the facts relevant to the application of that law." *Id.*

Plaintiffs are not experts in Chinese law. They have failed to proffer an expert or any other evidence of Chinese law to oppose the declaration of Ms. Yang.

Case 1:19-md-02875-RMB-SAK     Document 1550-1     Filed 09/08/21     Page 30 of 30
PageID: 34382

Therefore, to the extent Plaintiffs' interpretation of Chinese law conflicts with Ms. Yang's, Plaintiffs' interpretation should be rejected by the Court.

## V.     **CONCLUSION**

For all of the foregoing reasons, the ZHP Parties respectfully request that the Court vacate and reverse Special Master Order No. 35, deny Plaintiffs' Motion to Compel, and grant the ZHP Parties' Motion for a Protective Order.


September 8, 2021

Respectfully submitted,

By: /s/ *Seth A. Goldberg*

DUANE MORRIS LLP
Seth A. Goldberg
Jessica Priselac
Lauren Pugh
30 South 17th Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
SAGoldberg@duanemorris.com
JPriselac@duanemorris.com
LPugh@duanemorris.com

*Attorneys for Zhejiang Huahai Pharmaceutical Co, Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare US, LLC*