**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

1
2
3                                          CIVIL ACTION NUMBER:

4    IN RE:  VALSARTAN PRODUCTS          19-md-02875-RBK-KMW
     LIABILITY LITIGATION

5                                          MOTION FOR SANCTIONS AND
                                           STATUS CONFERENCE VIA
6                                          REMOTE ZOOM VIDEOCONFERENCE

7         Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
8         Camden, New Jersey  08101
          September 8, 2021
9         Commencing at 3:00 p.m.

10   B E F O R E:          THE HONORABLE THOMAS I. VANASKIE (RET.)
                           SPECIAL MASTER

11

12   A P P E A R A N C E S:

13        MAZIE SLATER KATZ & FREEMAN, LLC
          BY:  ADAM M. SLATER, ESQUIRE
14        103 Eisenhower Parkway
          Roseland, New Jersey  07068
15        For the Plaintiffs

16        KANNER & WHITELEY, LLC
          BY:  CONLEE S. WHITELEY, ESQUIRE
17        701 Camp Street
          New Orleans, Louisiana  70130
18        For the Plaintiffs

19        DUANE MORRIS LLP
          BY:  SETH A. GOLDBERG, ESQUIRE
20        BY:  KELLY ANN BONNER, ESQUIRE
          30 South 17th Street
21        Philadelphia, Pennsylvania  19103
          For the Defendants, Prinston Pharmaceuticals,
22        Solco Healthcare U.S. LLC, and
          Zhejiang Huahai Pharmaceuticals Ltd.

23             Camille Pedano, Official Court Reporter
                      camillepedano@gmail.com
24                         609-774-1494

25    Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3    GREENBERG TRAURIG LLP
     BY:  STEVEN M. HARKINS, ESQUIRE
4    3333 Piedmont Road, NE, Suite 2500
     Atlanta, Georgia  30305
5    For the Defendants, Teva Pharmaceutical Industries Ltd.,
     Teva Pharmaceuticals USA, Inc., Actavis LLC,
6    and Actavis Pharma, Inc.

7    **ALSO PRESENT:**

8    LORETTA SMITH, ESQUIRE
     Judicial Law Clerk to The Honorable Robert B. Kugler
9
     Larry MacStravic, Courtroom Deputy
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (PROCEEDINGS held via remote Zoom videoconference before The

2  Honorable Thomas I. Vanaskie, (Ret.), Special Master, at 3:15

3  p.m.)

4        JUDGE VANASKIE.  Ready to proceed?

5        MR. SLATER:  Yes, Your Honor.

6        MR. GOLDBERG:  Yes, Your Honor.

7        JUDGE VANASKIE:  Let's follow our normal protocol.  If

8  you are not speaking, please mute your microphone.

9        We are going to hear argument first on the motion of

10  plaintiffs for sanctions against the ZHP parties in connection

11  with the depositions and then we will have our monthly

12  conference call, which should be brief, following the oral

13  argument.

14        And we'll hear first from plaintiffs as the movant on

15  this motion for sanctions.  And we'll start, however, with a

16  question from me, and I'll direct it first to Mr. Slater and

17  then to Mr. Goldberg, and the question I have is one of

18  authority.  That is, do I have the authority to decide and

19  grant the relief requested by plaintiffs on this motion for

20  sanctions?  Is this a discovery dispute or is this a dispute

21  that deals with admissibility of evidence that's reserved for

22  the trial judge?

23        MR. SLATER:  Thank you, Your Honor.  Adam Slater, for

24  the record.

25        I think the simple answer to Your Honor's question is

1  yes, of course you have the authority.  Your Honor has already

2  recognized that during the course of the hearings that took

3  place during the Peng Dong deposition.  And we've cited

4  multiple sources of authority that make it very clear that Your

5  Honor, as the equivalent to the magistrate judge, does have the

6  authority to address these discovery issues which have to do

7  with the mode and the conduct of depositions.  And quoting from

8  the *Hall vs. Precision* case, Your Honor can, "enter any orders

9  necessary to prevent the abuse of the discovery and deposition

10 process."  So that's -- I think that's what we're doing here.

11 And the *Wachtel* case we cited talked about, "the inherent power

12 to police litigant misconduct in post-sanctions on those who

13 abuse judicial process."  That's, again, another District of

14 New Jersey case.  And we've also cited to Your Honor, among

15 other things, the *Black Horse* case, which I think makes it very

16 clear that Your Honor has the authority to do so.  And that

17 was, I think, a decision by Judge Schwartz.  So I think that

18 there's plenty of authority.  We can keep going through it.

19      The *Exxon Mobil* case, which we provided Your Honor,

20 which I found to be very timely, in light of what was happening

21 here, it has a lot of the same themes and the same issues.

22      So certainly this is not an issue of admissibility.

23 We're asking Your Honor to assess certain sanctions based upon

24 obstruction of the depositions.  What will be admissible or not

25 be admissible later, that's going to be a decision for the

1   judge, but Your Honor certainly has the ability to determine

2   how to address what we believe was improper deposition conduct

3   in an ongoing matter.  So I don't think there's really any

4   solid argument to say Your Honor cannot grant the relief that's

5   been --

6            (Videoconference call interrupted.)

7            JUDGE VANASKIE:  Do you want to try to pick up.

8            MR. SLATER:  I will try.

9         -- the relief that's been requested.  And since I don't

10   remember if I listed the cases before or after, I'll just

11   reiterate that I cited to is --

12            (Videoconference call interrupted.)

13            JUDGE VANASKIE:  Mr. Slater, are you ready to

14   continue?

15            MR. SLATER:  I am, Judge.

16            JUDGE VANASKIE:  Okay.  Great.

17            MR. SLATER:  I think that probably just in order to be

18   cautious, I'm going to start over a little bit just to make

19   sure we get this.

20            JUDGE VANASKIE:  That's fine.

21            MR. SLATER:  My argument is not that lengthy.

22         Your Honor asked first whether Your Honor has the

23   authority to grant the requested relief and, as stated earlier,

24   we believe there is no question about that.  Your Honor's

25   authority is commensurate with what a magistrate judge would be

1  allowed to do and clearly that's something that a magistrate

2  judge can do all the time is enter sanctions based on

3  deposition conduct.

4       As we cited in our brief, the *Neurontin* case, which was

5  Judge Schwartz as a magistrate, is a very favorable case to our

6  position.  In that case, Judge Schwartz entered extensive

7  sanctions based on deposition conduct and even made rulings

8  about what would happen at the time of trial.  So this

9  distinction that ZHP's been trying to draw between discovery

10 versus trial, I think in this context is a false distinction.

11 We're not asking Your Honor to make any admissibility

12 determinations.  We're asking Your Honor to sanction

13 obstructive deposition conduct by the witnesses who were

14 speaking for the company and counsel who both objected

15 improperly and further encouraged the witnesses.

16      So we cited the *Hall* case, we cited the *Neurontin* case,

17 which relies heavily on the *Black Horse Lane Associates*, and

18 talks specifically I think to this situation under Rule 37D

19 where a witness doesn't provide any helpful or complete

20 testimony, and the Court actually said that going to the

21 deposition and not having the ability to answer as a 30(B)(6)

22 witness is the same as not showing up or sleeping through the

23 deposition.  So these are cases where these types of sanctions

24 have been entered.

25      The Court rules that are applicable, 30(B)(2), 37(B) and

1  37(D), are all available to Your Honor and all can be the

2  source of your rulings, you know, depending on how Your Honor

3  wants to go with this.  So the idea that there is not authority

4  by Your Honor to do this or to enter these sanctions, it's very

5  hard to understand where the defense gets that argument.

6  That's my take on it for Your Honor.

7          JUDGE VANASKIE:  All right.  Very well.

8      Let me ask you one question, Mr. Slater.  Do any of the

9  authorities you have cited impose as a sanction deeming certain

10  matters admitted?

11          MR. SLATER:  I don't believe that that relief was

12  requested in those cases that we're citing to, but there is no

13  reason why Your Honor wouldn't have the right to do that or the

14  authority to do that because it's certainly one of the

15  sanctions that would be available.  And it's certainly -- it

16  was the one Your Honor came to when we were having the hearings

17  and it's the one that makes the most sense because the time and

18  expense and distraction of having to go back and redepose these

19  witnesses, that's a very, very difficult thing for us to have

20  to do.

21      Look, if Your Honor rejects all of the relief, we would

22  have no choice but to take that fallback position, which we've

23  expressed in our reply brief, but certainly Your Honor has the

24  ability to do that.

25          JUDGE VANASKIE:  Thank you very much.

1        Mr. Goldberg?

2         MR. GOLDBERG:  Your Honor, just on the specific

3    question of authority, there's no question Your Honor, in this

4    role as a Special Discovery Master, has the authority to make

5    rulings with respect to deposition conduct.  I think the

6    question is really, what is the specific relief that Mr. Slater

7    is seeking with respect to the deposition testimony?  He is

8    seeking an evidentiary ruling.  In fact, Your Honor, he's

9    seeking to have Your Honor rule on the ultimate question in the

10   case, and to deem the ultimate question admitted, as an

11   admitted fact, that for all purposes would be admissible at a

12   trial.  That clearly is an evidentiary ruling that's left for

13   the trial judge, and especially in the context of this MDL

14   where a trial is many years away, we don't think that that

15   specific kind of evidentiary ruling, the deeming the ultimate

16   question admitted, is something within the Special Discovery

17   Master's authority.

18        Certainly --

19         JUDGE VANASKIE:  You keep referring to having evidence

20   admitted at trial, but certainly deposition testimony can be

21   presented in connection with, say, for example, a summary

22   judgment motion or an *in limine* motion.  All right.  You're

23   saying that's a matter that also should be left to the trial

24   judge or if the judge refers those matters out, the judge could

25   refer that matter to Magistrate Judge Williams and she would

1    have the authority to do that, or the judge could refer it to a

2    Special Master to make a report and recommendation.  Would then

3    the Special Master have the authority?

4             MR. GOLDBERG:  Well, certainly, if the federal court

5    judge cloaked Your Honor, the Special Discovery Master, with

6    that specific authority, I suppose we would address it then.

7             I think the issue that Your Honor raises with respect to

8    summary judgment is a good one, which is that Your Honor is in

9    the position here of ruling on these critical facts of the

10   case.  And, you know, I could point you to some of the specific

11   excerpts that plaintiffs have cited, but they are asking Your

12   Honor to rule for -- as admitted for all purposes, summary

13   judgment, motion in limine, and, of course, trial, that could

14   not be disputed, for instance, that ZHP knew that nitrosamines

15   were in its valsartan and that could cause an increased risk of

16   cancer.  That's the ultimate question in this case and

17   plaintiffs are asking Your Honor, the Special Discovery Master,

18   to deem it admitted for all purposes.

19            I think it's helpful that Mr. Slater referred to some of

20   the cases he did because when Your Honor asked the question,

21   did any of the cases provide that kind of relief, deeming

22   admitted the ultimate question, Mr. Slater said, no, because

23   none of them do.

24            And, in fact, Your Honor, if you look at *Black Horse*

25   *Lane* and you look at Pages 295 and 96 of that decision and you

1    look at Pages 300 and 301 of that decision, what you will see

2    is that the district court judge and the federal court judge --

3    the magistrate judge and the federal court judge issued

4    sanctions in that case because the conduct was extreme, it was

5    egregious, it was repeated, it was over-the-top offensive

6    conduct, and it's very clear from that decision.

7        In the *Exxon Mobil* case that Mr. Slater referred to, the

8    same issue, the conduct is repeated, it's pervasive, it's

9    over-the-top egregious conduct.  So there's sort of two prongs

10   there.

11       We don't think Your Honor has the authority on the

12   specific question of deeming facts admitted, the ultimate fact

13   admitted, but we also don't think under the case law that that

14   kind of a decision would be warranted, even if Your Honor had

15   some debate as to whether you have the authority to do so.  And

16   we think the case law that both parties cited is very clear

17   that the standard in this Circuit for issuing any form of

18   discovery sanction, let alone the kind of discovery sanction

19   that plaintiffs are asking for, deeming admitted the ultimate

20   question, that standard is intentional interference and bad

21   faith of the worst kind and, as I'll discuss shortly, there is

22   none of that here, Your Honor.

23       JUDGE VANASKIE:  Thank you.  Thank you, Mr. Goldberg.

24       Mr. Slater, do you want to go through the aspects of

25   your motion then?

1     MR. SLATER:  If I could, Your Honor, and I'll start

2  off just by briefly responding.

3     I'm not sure what counsel was just arguing that any

4  discovery sanction would have to prove intentional interference

5  or intentional willful misconduct.  We've already cited some

6  law that says that's not necessary and certainly I think that

7  standard's met.

8     Coming back to what counsel said, I think the vocabulary

9  and the semantics we use will be helpful going forward.

10     What we're talking about now is discovery sanctions

11  setting the testimony, if Your Honor rules in our favor, as

12  questions either being admitted or in some of the cases the

13  answer would be no, obviously; but counsel says, well, that's

14  an admissibility determination but it's not.  Later, whatever

15  the testimony is, the Court will rule on what's admissible or

16  what's not, based on if any motions are made objecting to

17  certain testimony.  So there's no predisposition now as to

18  what's going to be admissible or not at trial or what will be

19  relied on in summary judgment.

20     This is a request for specific discovery sanctions that

21  Your Honor had referenced.  And I'll tell you right now, in

22  looking, for example, at Rule 30(B)(2), I believe, or 30(C)(2),

23  the sanction that is potentially available for the obstruction

24  of depositions is, "The Court may impose an appropriate

25  sanction, including reasonable expenses and attorney's fees

1    incurred by a party, on a person who impedes, delays or

2    frustrates the fair examination of the deponent."  It's not

3    limited.  It's the Court's discretion to decide what an

4    appropriate sanction is.

5        And in Rule 37(B) -- actually it's 37(B), Subsection

6    (A)(1), one of the potential sanctions is directing that, "the

7    matters embraced in the order or other designated facts be

8    taken as established for purposes of the action as the

9    prevailing party claims."  So that specifically addresses your

10   question; you clearly have the authority to do so.

11       And I cited the *Wachtel* case that said that Your Honor

12   has "the inherent power to police litigant misconduct as

13   necessary."  And, again, I'll ask Your Honor, you can look

14   again at Judge Schwartz's decision, which was affirmed,

15   obviously, in the other case.

16       Now, beyond the authority question, which we don't think

17   there's any real reasonable argument against, the conduct that

18   we're looking at here was not isolated, it was systemic, and I

19   think that's a very important fact.  We've given you examples

20   across multiple depositions, and I can tell Your Honor, we

21   could have done it for, I would say, pretty much every witness,

22   if not every witness, deposed that was defended by ZHP's

23   counsel who was either a current or former employee; but we've

24   given you so many examples across so many witnesses and so many

25   different types of questions that it's clear this was a

1  systemic obstructive pattern that we had to deal with.  We've

2  shown you examples of very basic questions.

3       And one of the things I'm going to try to avoid, unless

4  Your Honor has a specific question, I'm assuming you'll thank

5  me for this, is to go through the specifics.  If there's any

6  that you think are illustrative or you have a question about,

7  I'll certainly address it but it's obviously too big a bite.

8  So if we start with one then we're in for the whole, and I'm

9  going to avoid that unless you ask me to.

10       JUDGE VANASKIE:  No, I am not asking you to.

11       I will ask you this:  The deponents, the examples that

12  you gave me, who were -- were there persons conducting the

13  deposition, taking the deposition, interrogating the witnesses,

14  other than you involved?

15       MR. SLATER:  I would have to look.  It's possible that

16  one of -- I think that a few of the entries were by other

17  questioners.  I think Lane Hilton was questioning at one point

18  and it may be a few of the entries.  And I wasn't sure why

19  counsel focused on that but since you asked the question, you

20  know, we have different tasks and we have different things that

21  we have to do as part of this team.  So I don't think it should

22  be any surprise that I would have, as the person assigned to do

23  this motion, would focus on testimony that I was most familiar

24  with.  I can promise Your Honor these tactics occurred

25  throughout the depositions, not just when I was questioning.

 1  But, again, these are not limited only to examples from

 2  testimony I obtained.

 3        JUDGE VANASKIE:  Okay.

 4        MR. SLATER:  So really, really what I think I'm trying

 5  to address in a brief way, which is a lot of testimony, is the

 6  fact that these witnesses were asked very basic questions, and

 7  I'll go through the different levels of relief that we're

 8  looking at.

 9        Number one, there were many objections where I think

10  anybody can objectively look at that and say, you can't object

11  to that question as a form objection, it's a straightforward

12  question, or you can't object on foundation.  And then the

13  worst culprit of all is the, you don't have to listen to

14  plaintiff counsel and give a yes or no, you say whatever you

15  think you need to say, which, from my perspective, and our

16  perspective, is telling the witness, you're doing great, keep

17  it up.  Don't give him a yes or no because he's wrong, you

18  don't have to do it, stick to the plan.

19        I don't think that there's any reach or stretch to what

20  I've just said because the testimony is so clear.  I mean, at

21  one point I asked one of the witnesses, Peng Dong, about

22  specific language in a specific document, laying a foundation

23  and move to the next question, and the answer was, "I see a

24  paragraph in Chinese."  And that's, I think, a good example of

25  what went on during the deposition.

 1          I think that one of the -- so we've talked a little bit

 2   about your authority to deem testimony admitted.  You certainly

 3   have the authority to strike objections and strike

 4   nonresponsive testimony.  And the tie-in to that is, well, now,

 5   let's get an answer to the question imposed by the Court which

 6   makes sense.  So I think that there's no logical way to do this

 7   otherwise.  And it's clear that the answers were, in many

 8   cases, not responsive, and we think in all the cases where we

 9   pointed out they were not responsive.  And we tried to pick,

10   obviously, direct examples that would be easy for the Court to

11   rule on.  We didn't want to get into the gray area because we

12   are not going to push for things that are not, from our

13   perspective, clear.

14          There's another major area to this, and counsel spent a

15   few pages on it, we obviously briefed it extensively, which is

16   the Min Li testimony.

17          Min Li, who is a Johns Hopkins Ph.D. organic chemist,

18   who consulted directly with a toxicologist retained by ZHP to

19   come up with all the responses to the regulators and their

20   customers and the world about what is the risk of these

21   nitrosamines, wouldn't answer the most basic questions and

22   ultimately deferred to, well, I'm not a toxicologist, you need

23   somebody better able to answer these questions.  And from our

24   perspective, that's the most egregious and the most clear

25   example because this is the person who's designated by the

1    company to testify on a topic that is court ordered.  Anybody

2    who reads that topic understands exactly what it encompasses.

3    And with counsel's blessing, the witness just refused to answer

4    a whole host of questions.

5            And what we've given Your Honor, and we've cited to a

6    couple cases that we think are very, very helpful, I think the

7    *SmithKline vs. Apotex* case is very, very instructive.  It's a

8    very similar situation with a pharmaceutical company.  And in

9    that case the Court said, look, if this is a technical issue

10   that's highly technical, that doesn't take it out of play in

11   terms of being able to ask a lay opinion or a lay witness the

12   questions, because if this is something that's addressed in the

13   day-to-day business, some companies handle technical matters,

14   and something may sound like expert to you or I but it's what

15   these people do every day.

16           These are pharmaceutical manufacturers who are

17   responsible to be experts about their products and to know all

18   the risks, and, in fact, took positions in documents we gave

19   you and told the world what the risk level was, told the FDA

20   what the risk level was, and provided the details of their

21   analysis.  So the idea that their 30(B)(6) witness can't talk

22   to what the company did on its own, that's belied by the case

23   law that we cited to Your Honor.  And I think the *Aslan* case is

24   also very important, which we cited both in our reply brief.

25           So the suggestion that ZHP can ultimately evade its

1    obligation to provide responsive testimony on court-ordered

2    topics by just claiming, well, there's probably somebody better

3    to answer these questions, that's just -- that's sanctionable

4    on its face because they had an obligation to designate

5    witnesses who were knowledgeable.

6        I'm obviously trying to take sort of an overview.

7        JUDGE VANASKIE:  Broad brush, yes.

8        MR. SLATER:  And I'm more than ready to go into the

9    details about every single issue here, but maybe I'll hand off

10   to Your Honor or to defense counsel and respond when I know

11   what's really being placed in issue.

12       JUDGE VANASKIE:  All right.  Let's hear from Mr.

13   Goldberg.

14       MR. GOLDBERG:  Thank you, Your Honor.

15       I think there are a few overarching points that Your

16   Honor needs to keep in mind as you evaluate this motion.  And I

17   think the first one is the massive record of deposition

18   testimony the ZHP party witnesses provided in this case and the

19   arduous circumstances in which they were provided.

20       The second point is that all of the answers and all of

21   the objections were within the bounds of normal and proper

22   discovery.

23       And the third point, which we've already covered in some

24   respect, Your Honor, is that the kind of sanctions that

25   plaintiffs are seeking, deeming facts admitted, especially

1    ultimate facts, is really reserved for the most egregious

2    conduct.

3         But the first point is really something Your Honor needs

4    to keep in mind.  The ZHP parties provided 6,194 pages, 6,194

5    pages of deposition testimony.  All of the excerpts that

6    plaintiffs cited in their brief, if you add them up, it totals

7    51 pages of the deposition testimony provided by the 17

8    witnesses.  If you do the math, plaintiffs are arguing, and

9    they're calling systemic, less than one percent of the

10   deposition testimony.

11        The ZHP party witnesses provided 202 hours and 47

12   minutes of testimony over 44 deposition sessions.  Just over 64

13   of those hours were provided by witnesses who did not require

14   translation.  More than 138 of those hours were provided by

15   witnesses who did require translation from Chinese to English

16   and English to Chinese.  The 51 pages plaintiffs have cited is

17   0.82 percent, 0.82 percent of the deposition testimony, less

18   than one percent.

19        Beyond that, Your Honor, it's good to keep in mind the

20   circumstances for these depositions because these depositions

21   were really unique.  Eleven of the Chinese witnesses traveled

22   to another country up to eight to ten hours during a global

23   pandemic, risking their health and safety, and quarantining

24   both where they arrived to take the deposition and when they

25   returned.  They sat alone in a hotel room to provide the

1    testimony.  The testimony was highly technical in nature,

2    pharmaceutical manufacturing concepts, chemistry concepts,

3    scientific terminology.  All of the lawyers, witnesses, court

4    reporter, videographer were in different countries, in

5    different cities and on different time zones.  The witnesses

6    were up, starting their depositions in China at 7 a.m.  The

7    lawyers were starting the depositions on the East Coast at 7

8    p.m., and they went well into the night, to 1, 2 a.m. at times.

9    There were technical glitches, there were translation mishaps,

10   there was a lot of confusion.  And that happens in regular

11   depositions when we're all sitting in the same conference room,

12   and it was magnified by Zoom.

13       Your Honor, I'm not referring to these kinds of

14   circumstances as an excuse for any alleged obstructionist

15   conduct because there was none.  What I am referring to it for,

16   Your Honor, is because it demonstrates that the ZHP witnesses

17   cooperated to the fullest extent possible.  They went above and

18   beyond.  None of the lawyers traveled for these depositions

19   during a global pandemic, but the witnesses did.  They went

20   above and beyond to provide -- to provide the testimony that

21   they provided.

22       The fact that plaintiffs haven't challenged 99 percent

23   of the testimony demonstrates the good-faith efforts of these

24   ZHP party witnesses and Your Honor has to take that into

25   account.  You don't conclude from less than one percent that

1    all 99 percent must be bad.  You conclude from the 99 percent

2    that there's nothing wrong with the 0.82 percent that

3    plaintiffs seem to be challenging.

4         And Your Honor drew the right -- you know, asked the

5    right question of Mr. Slater.  He is the only lawyer who

6    challenged any of the deposition testimony.  None of his

7    colleagues joined in the motion, none of his colleagues joined

8    in the reply.  His brief has been pending for months and you

9    haven't heard a single plaintiffs' lawyer say, you know, Your

10   Honor, I also had witnesses who were obstructed.  And the best

11   demonstration of that is two of the lawyers shared questioning

12   with Mr. Slater for two of the witnesses at issue.  Ms. Hilton

13   shared the questioning of Ms. Linda Lin and Mr. Horton shared

14   the questioning of Hai Wang.  Neither of those lawyers have

15   challenged any of the conduct.  Only one excerpt in plaintiffs'

16   motion, it's Linda Lin, I looked at it while he was answering

17   your question, Excerpt 6, there's a question asked by Ms.

18   Hilton.  So only one question in the 6,194 pages of testimony

19   is being challenged by -- or was asked by a lawyer other than

20   Mr. Slater and that lawyer has not even raised the issues.

21   This is Mr. Slater's motion because Mr. Slater is really trying

22   to get Your Honor to grant some relief on the notion that if he

23   asks for the most drastic form of relief, maybe he'll get

24   something.

25        JUDGE VANASKIE:  What do I make, Mr. Goldberg, of the

1    excerpts to which Mr. Slater made reference from Peng Dong?

2    I'm looking at Mr. Slater's brief now and he's quoting from the

3    transcript.  The question was:

4         "Looking now at the Explanation section, this provides

5    the explanation for why this was being done, correct?

6         "Object to form."

7         And that's a good objection, by the way, looking at that

8    question.

9         The answer is:  "On the screen in the Explanation

10    section, there's a paragraph written in Chinese."

11         What was Mr. Dong providing there?  I mean, he certainly

12    didn't seem to be responding to anything.

13         MR. GOLDBERG:  Your Honor, I can show you the video.

14    I have the video if you want to see it.  And I would like to

15    show you a video just so you get a sense of what's happening

16    here.  But really what's happening here is Mr. Dong is sitting

17    in a hotel room all alone.  He's got two computer screens up.

18    Mr. Slater has put up a document that Mr. Dong did not write,

19    Mr. Dong may not have seen before, and the question is being

20    asked, and I'm happy to play this clip for Your Honor, the

21    question is being asked, Mr. Dong, look at the screen, and he's

22    trying -- this is a -- this is a person who speaks no English,

23    he's never been deposed before, and he's trying to -- he is

24    trying to follow along in earnest.  What's happening is, when

25    Mr. Slater -- what you're missing here, Your Honor, if I can

1   show you the video clip --

2           JUDGE VANASKIE:  You know, I'd be happy to see it if

3   you have a way to share the screen and pull it up.

4           MR. GOLDBERG:  Yes, I can show you that one or I can

5   just show you an example that I have queued up.  Would you like

6   to see --

7           JUDGE VANASKIE:  If you have it queued up, you don't

8   have to show me that exact one.

9           MR. GOLDBERG:  Okay.  So this is an example.  In fact,

10  this witness is looking at a document right now.  I'm going to

11  see if I can share my screen.

12          MR. SLATER:  Can I ask if this is one of the excerpts

13  that is at issue --

14          MR. GOLDBERG:  Yes, This is Linda Lin.

15          MR. SLATER:  -- and which one it is?

16          MR. GOLDBERG:  This is Linda Lin, Excerpt 2.  I just

17  picked it because it was just a pretty straightforward clip

18  here.  And I think I go here.

19          So this is Ms. Lin, Your Honor.  She traveled from China

20  to Macao, she is sitting alone in a hotel room.  She had to set

21  the room up so that she could cooperate and do this deposition.

22  And this is how it went.

23          (Videotape is played.)

24          MR. GOLDBERG:  Your Honor, I'd be happy to share with

25  you the video of the excerpt that you were asking about of Peng

1    Dong, but I can say, and because I think it gives you -- it

2    will give you additional flavor, if Your Honor would like to

3    see it, of what is happening.

4         What you can see is that the witness is sitting there

5    earnestly trying to answer the question, and it's a question

6    that although Mr. Slater believes should be answered yes or no,

7    the witness is answering on her own and explaining -- actually

8    providing a real substantive answer, which is, look, in 2013,

9    this is -- the document is from 2013 and it says what it says

10   because that's what we knew at the time.  There's no -- you

11   know, that testimony is really unremarkable.

12        And that is what these depositions were like, for 44

13   sessions these witnesses providing or attempting to provide

14   their firsthand knowledge in an earnest way and to answer Mr.

15   Slater's questions.

16        And I'd be happy to share with you the Peng Dong excerpt

17   so Your Honor could see what that was like, if it would be

18   helpful.

19             JUDGE VANASKIE:  I think that would be helpful.

20        Is there any objection to that, Mr. Slater?

21        MR. SLATER:  Sorry, I didn't realize I was muted.

22   The request is to play the Peng Dong testimony?

23             JUDGE VANASKIE:  Yes.

24        MR. SLATER:  No.  I was actually thankful they played

25   the Linda Lin.  I thought it made our argument very well, so

1  I'm happy for them to play the next one, too.

2          JUDGE VANASKIE:  Okay.  Please do.

3          MR. GOLDBERG:  Okay.  I'm going to ask my colleague,

4  Kelly Bonner, if she could play that now.

5          MS. BONNER:  The host has disabled participant's

6  screen sharing.

7          JUDGE VANASKIE:  Mr. MacStravic, are you able to

8  provide screen sharing for Ms. Bonner?

9          MS. BONNER:  I am the co-host now.

10          MR. GOLDBERG:  I might be able to pull it up, Judge.

11          JUDGE VANASKIE:  Are you able to pull it up now that

12  you are the co-host?

13          MS. BONNER:  All right.

14          JUDGE VANASKIE:  Thank you, Larry.

15      We are not picking up the volume.

16          MR. GOLDBERG:  Kelly, you may need to turn your volume

17  up.

18          JUDGE VANASKIE:  Yes, we're not getting any volume.

19          MR. GOLDBERG:  Kelly, why don't you unshare your

20  screen.  I think I can play this.

21          MS. BONNER:  Okay.  I apologize.  I've got the volume

22  turned up as loud as it will go.

23          JUDGE VANASKIE:  Okay, Mr. Goldberg, why don't you try

24  on your end.  We will give it one more shot.

25          MR. GOLDBERG:  Yes.

1     Your Honor, I think this excerpt actually picks up on my

2     video a little bit before where the questioning that you're

3     referring to starts.

4           JUDGE VANASKIE:  Okay.

5           MR. GOLDBERG:  It's a little bit above that

6     questioning.

7           (Videotape is played.)

8           MR. GOLDBERG:  That's the end of that.

9     I think, Your Honor, the one thing that is -- leaving

10    aside counsel sparring with one another, when you just think

11    about what Mr. Dong is doing, one, he's clearly confused about

12    what he is doing, what these documents -- what he is looking

13    at, how he is supposed to answer.  And what he wants to do is

14    tell the truth.  And, remember, he's in a -- he's coming from a

15    place where people get interrogated and I think some of what's

16    going on here is he doesn't really appreciate, you know, that

17    this is -- what a deposition in U.S. civil litigation is like.

18    And to him, what he's really trying to do is tell the truth.

19    He's clearly confused by why Mr. Slater is asking about a

20    specific sentence in a document that he didn't write.  And Mr.

21    Slater did not, if you look at the deposition testimony for

22    this specific excerpt, and I would encourage Your Honor to

23    start at the beginning, he did not establish a foundation for

24    Mr. Dong having any knowledge about this document.  And that's

25    what he has to do.

1    And there are other objections relating to this whole

2   line of testimony where Mr. Ball, my colleague, is objecting

3   because there's not a proper foundation being laid.  And that's

4   something that happens throughout the testimony, is asking

5   witnesses questions about documents they didn't write, asking

6   them to read documents that say what they say and then expect

7   an answer that's -- and Your Honor has already admonished Mr.

8   Slater not to do that.

9    But I think these two clips, one, they show witnesses

10   earnestly trying to answer questions based on their firsthand

11   knowledge or the knowledge of a 30(b)(6) witness; two, trying

12   to do it in a way that provides the information that they have

13   cooperatively; and, three, the unique circumstances, here Mr.

14   Dong is alone in a hotel room, eight hours from home, answering

15   questions in a U.S. litigation, and he's going there because he

16   can't do this under Chinese law.  So he's taking himself out of

17   the Chinese legal system so he can answer these questions.

18    6,194 pages of testimony and plaintiffs are challenging

19   less than one percent.

20    JUDGE VANASKIE:  All right.  Mr. Slater?

21   Do you want to stop sharing your screen?

22   Mr. Slater?

23    MR. SLATER:  Sorry, I keep doing that with the mute

24   button.  I didn't want my rustling papers to keep pulling the

25   screen.

1          Thank you, Judge.

2          A lot was just stated.  I'll try to unpack it and I'll

3    try to start at the end because it was a theme that was

4    repeated multiple times by defense counsel that the witness

5    hadn't seen certain documents.

6          This witness is a 30(b)(6) witness.  The argument that

7    we shouldn't be allowed to question the witness about a

8    document he didn't write or we have to lay some foundation

9    about how it was created when it's within the scope of his

10   designated topics, and that we can't use the document

11   otherwise, that's just -- that's a frivolous argument, and I

12   don't use that word lightly here, but that's what the 30(b)(6)

13   witness is for.  That's why we chose to have these 30(b)(6)

14   depositions done this way to avoid the need to depose as many

15   individual witnesses.  So I don't really understand that

16   argument.

17         The testimony you just saw from Peng Dong and from Linda

18   Lin, if counsel's not trying to make an excuse, which counsel

19   said I'm not making an excuse, because they think all the

20   testimony was appropriate, that's really where I think Your

21   Honor needs to start and stop with evaluating the testimony.

22         The litany of problems about witnesses flying to places

23   and they don't all speak English, these were the witnesses --

24   and Your Honor sat through many arguments about this where we

25   had issues, and we raised these arguments and we were told by

1    the defense we put up the people that we thought were best able

2    to talk about these things and don't complain, this is the

3    process we have, and we worked through it.

4         I think what you can also see is the questions were not

5    asked in an adversarial way.  The questions were asked in a

6    straightforward, conversational way.  The discussion with

7    counsel became a little bit more animated; but, frankly, Your

8    Honor, this was before we got to the point of the hearing with

9    Your Honor when we were still moving to strike testimony.  And

10   I'll stand behind everything I said to counsel because, as we

11   know, and I'm quoting from the *Exxon* case, which cited to other

12   cases, including *GMAC*, "An attorney defending a deposition has

13   a duty to try to curb his client's misconduct in the

14   deposition."  If you have a duty to do that, you have a duty to

15   explain the proceeding to your client before the deposition, to

16   explain what's going on.

17        So when counsel sits here and sits here just speculating

18   about what might have been in his client's mind, I think it's

19   obvious what's going on here.  They have the right and the

20   ability to talk to their clients, they could have gotten

21   certifications, they could have done anything they wanted.  So

22   when counsel's giving you his speculation about what might have

23   been in the witness's mind, again, that's neither here nor

24   there.

25        And, frankly, the focus on myself I think is something I

1    don't really want to add anything to, unless Your Honor thinks

2    there's a reason to, because if counsel thought we should have

3    filed a motion going to every single instance of the

4    obstruction, I don't think Your Honor would have appreciated

5    that because there is a heck of a lot more.  And we have told

6    Your Honor how we'd like to, in an orderly way, proceed once we

7    have a ruling from Your Honor.  So we've never said this is all

8    the examples.  In fact, we said there's a ton more examples and

9    after we get through this first phase, then we intend to

10   address the rest, trying not to burden Your Honor as much as we

11   possibly can.

12          But when you hear counsel talk about flying to a place,

13   not speaking the language, alone in the room, we have a

14   deposition protocol that was built for these depositions,

15   knowing what was happening, and the deposition protocol said

16   all the rules had to apply.  These depositions were covered not

17   just by the protocol but by the Federal Rules of Civil

18   Procedure, and there is no exception for a witness, especially

19   a witness chosen by the company to testify under 30(b)(6), to

20   be given a pass on question after question after question.

21          So I think all of those arguments are really window

22   dressing and really just an attempt to distract Your Honor away

23   from what's right in front of you, which is, witnesses who

24   either couldn't or wouldn't, whatever the case is, as Judge

25   Schwartz's decision in *Neurontin* really went through well and

1  the Third Circuit addressed, it's the same thing.  If you can't

2  answer a question, it's the same as not showing up for your

3  deposition.

4        And Your Honor knows, again, we went through this,

5  because counsel was talking about the issues with the

6  translators and we had a back-and-forth about communication

7  issues and we were told by the defense in very strong terms,

8  this is the witnesses you get, don't complain about it, don't

9  make an issue of it, and, obviously, we had to live with that.

10  But here we are now with the consequences of what the defense

11  chose to do.

12        I think that the Linda Lin testimony might be a place

13  for me to try to wrap up.  I couldn't have -- you know, I was

14  watching the testimony and I'm thinking to myself where's the

15  -- where's the problem here with the question.  I mean, the

16  questions were fine and simple, they were not confrontational,

17  there was no issue with the translation.  And remember who this

18  person is, Your Honor.  This is the worldwide global head of

19  regulatory for all of ZHP whose job it is to make sure that all

20  interactions with all regulatory agencies around the world are

21  done appropriately.  And, again, this is the witness who would

22  not answer a question of what is the definition of adulterated,

23  which came within her designations, just like the questions

24  asked of Peng Dong within his designation.  And you haven't

25  heard one argument that there was questioning of any of these

1    witnesses that was outside the designated topics.

2         So what did we get with Linda Lin?  We got no answer.

3    What we got was -- and I remembering, Your Honor, from those

4    late-night hearings with Peng Dong, and then the hearings the

5    next few days, what we got is the talking point Your Honor

6    remarked on back in those hearings:  Nobody knew back then.

7    Nobody knew anything.  That wasn't the question.  The question

8    was, you didn't list this one component to the product, never

9    got an answer but we got the talking point over and over.  So I

10   feel like that really made our point for us very well.

11        JUDGE VANASKIE:  Let me interrupt you just for a

12   minute.

13        MR. SLATER:  Go ahead.

14        JUDGE VANASKIE:  On Friday, I believe it was, one of

15   your colleagues texted me to get involved in a problem with a

16   deposition that was ongoing but I didn't receive the text for

17   some reason; sometimes that happens.  I didn't receive it until

18   the next day, so obviously I didn't -- I was sitting at my

19   office at my house.  I was available, in other words.

20        I just want to suggest when that happens, also resort to

21   email and I would say even a phone call.  Just this technology

22   sometimes doesn't work.  It arrived the next day.  Why?  I

23   don't know.  But I just want to let you know that I do try to

24   make myself as available as possible.  It won't always be the

25   case, but that day I was available, just didn't get the text.

1      MR. SLATER:  Maybe even more available than you would

2 want to be.  You've always been -- you've been very available

3 for us, Your Honor.  I mean, we were sending you messages

4 during a deposition in the middle of the night, Your Honor

5 jumped on, and we couldn't have been more appreciative to get

6 that response.

7      JUDGE VANASKIE:  I wanted to mention that.  I meant to

8 mention that earlier but I thought, well, I'll forget.  So I

9 just wanted to mention that going forward so we can avoid

10 disputes and get them resolved when we can.

11      But what do you think is the right approach now for me

12 to resolve this motion?  Do we go through each excerpt one by

13 one and look and see, was the witness responsive, not

14 responsive; or should I take a more wholistic view and try to

15 make the determination?

16      Mr. Goldberg cites some impressive numbers there that

17 say, wait a second, we're talking about a very, very small part

18 of this whole proceeding.  Don't try to draw a conclusion of a

19 systemic problem from that sample size.

20      So I'm going to ask you, and then I will ask Mr.

21 Goldberg, how should I approach this motion?

22      MR. SLATER:  I'll give you two responses.  First I'll

23 respond to the second point.

24      Again, we submitted a pretty extensive list of examples

25 from multiple depositions and made it very clear this is not

1   the only examples, this was a major problem throughout all the

2   depositions, but we had to illustrate them and seek guidance by

3   picking and selecting.

4        So he has some impressive statistics, I'll be honest

5   with Your Honor, in a vacuum may be impressive, but I'd push

6   back on that to say, so what.  These questions were important.

7   We have a right to have responsive answers to every question.

8   And, you know, what counsel's essentially doing is he's

9   building up, after saying, I'm not seeking to make an excuse,

10  he's building up a litany of excuses to get Your Honor to

11  somehow make some sort of equitable decision, well, these were

12  tough depositions, and, yeah, some of them didn't speak

13  English, so I guess I'm going to give you a break.  And then

14  what happens.

15       Your Honor gave us clear guidance.  We took these

16  depositions in reliance on that, we took all the testimony in

17  reliance on that, we stopped moving to strike because we knew

18  that we could come back to Your Honor and this would be the

19  first day of reckoning.  So that's how I handle those

20  statistics.

21       I mean, this testimony's not just throw-away testimony.

22  And much of it, a couple of lines of questioning before they

23  could get started because these witnesses wouldn't admit very

24  basic foundational information needed to jump off into the rest

25  of the questions.  So it was a wonderful job of obstructing.

1    What should you do?  I don't know, Your Honor, that

2  there's -- when you say a wholistic way to handle it, I guess I

3  need to know what that means because my sense is that

4  ultimately, what has to be done is I think rulings need to be

5  made on each of the excerpts as to whether the responses were

6  responsive, whether the objections were appropriate, whether

7  the answer is stricken and whether it's deemed admitted.

8    Assuming Your Honor agrees with us that you have the

9  authority per the rules and case law and cases that have done

10  these things before, and have awarded sanctions based on

11  deposition conduct, understanding this is not an issue of

12  admissibility, that argument is a straw man, it has nothing to

13  do with admissibility, I don't know another way to do it

14  because what we don't want to do is -- our concern would be a

15  generalized ruling that sort of jives with what defense

16  counsel's saying, well, these are tough depositions.

17    Your Honor did everything you could, after Judge

18  Schneider entered an order, to carefully manage these

19  depositions.  Your Honor jumped onto a deposition of Peng Dong

20  at ten or 11 at night and we held a hearing and then we went

21  back with the deposition.  So I challenge defense counsel

22  saying there were some technological problems.  Not with our

23  court reporters.  These went very smoothly.  Your Honor jumped

24  into a few depositions like that.

25    So all of those excuses, none of them are recognized in

1    the law.  There is no case they can point to that points to

2    this.  In fact, their cases, including the *Neurontin* case, say

3    that what needs to happen is what we've asked for.

4         Let's talk about what happens if you don't grant these

5    sanctions.  We would have gone forward with the rest of these

6    depositions in reliance on what Your Honor told us and then, to

7    some extent, the board could have changed.

8         We're left with a very, very difficult situation because

9    we're now in expert depositions.  We're getting ready to brief

10   *Daubert* and class cert.

11        So what does counsel want to do?  I suppose the fallback

12   is going to be, well, Judge, I guess if you want to compel the

13   witnesses to go answer a handful of questions each, we can do

14   that.  How's that helpful to us at this point to have to go

15   back?  They've heard the questions.  We're going to hear about

16   all sorts of logistical issues and it's going to go on forever.

17        So I think Your Honor recognized during those hearings

18   that the right way to handle this is to deem the questions

19   admitted because the witnesses had every opportunity, they have

20   counsel to speak to during every break, they could have come

21   back at the end and say, you were asked this question, we want

22   to just be clear exactly what your answer is.  They could have

23   cleaned all this up.  And, again, counsel wasn't over here and

24   the witness over there and they didn't communicate.  They

25   represented them.  So whatever the witness did, if there was

```
 1    any kind of a misunderstanding, that's on counsel.  And the
 2    rules don't have exceptions built in because the witness is
 3    around the world or we are doing it on Zoom.  Again, the
 4    protocol can't address everything and said all the law will
 5    apply to these depositions as if it was in person.
 6             JUDGE VANASKIE:  Thank you.
 7         All right, Mr. Goldberg.
 8             MR. GOLDBERG:  Thank you, Your Honor.
 9         I think on the question about what Your Honor should do,
10    Your Honor, we provided in Exhibit A of our brief a
11    point-by-point response on each excerpt, and if Your Honor felt
12    inclined to go through those, if that's what Your Honor thought
13    Your Honor needed to do, I think Your Honor will be -- will
14    find each of those responses demonstrates that Mr. Slater's
15    questions were often vague, compound, they asked for expert
16    testimony, they were taken out of context, they asked -- they
17    asked about documents that clearly spoke for themselves.  So I
18    think if Your Honor wanted to go through that, that information
19    is there.
20         However, I think Your Honor, in terms of what is
21    required under -- under Third Circuit law and on this record, I
22    think Your Honor can and should dismiss -- deny this motion in
23    its entirety because the standard is egregious conduct,
24    intentional bad-faith conduct.  That's the standard for
25    providing the kind of sanction that Mr. Slater is asking for,
```

1    which is to deem facts or questions admitted.  And it's

2    interesting in all -- and I would encourage Your Honor to

3    review the *Black Horse* case, to review the *John Doe* case that

4    Mr. Slater cited.

5         This is what the Court said in the *Black Horse* case

6    which plaintiffs rely on that, "The witness was so unprepared

7    that it was clear that it was not just a lack of preparation,

8    that wasn't a mere oversight, but a clear demonstration of bad

9    faith, made obvious by the witness's repeated denial as a

10   30(b)(6) witness, his apparent incompetence, his lack of

11   cooperation, his refusal to answer questions intelligently,

12   boarding on," as the Court put it, "almost conscious disregard

13   of the Court and the rules."

14        Your Honor, none -- all of the excerpts cited by

15   plaintiffs show the ZHP party witnesses earnestly answering the

16   questions based on their firsthand knowledge and that of a

17   30(b)(6) representative.  We're seeking clarification to do so.

18   There is no genuine assertion that any 30(b)(6) witness was not

19   adequately prepared or the most knowledgeable on the topic.

20   That has not been asserted.

21        To be sure, Your Honor, a 30(b)(6) witness is not

22   required to have knowledge about every single document or fact

23   that plaintiffs' counsel may believe falls within a broadly

24   worded 30(b)(6) topic.  30(b)(6) topics are not contention

25   interrogatories, they're not to be wielded as a sword.

 1   30(b)(6) witnesses need to be knowledgeable on the topic and

 2   there is no assertion that any of these witnesses weren't.

 3          Counsel's objections were not speaking objections, they

 4   were not speeches, they were not coaching.  Rather they adhered

 5   to Your Honor's ruling that the lawyers provide a succinct

 6   basis for the objection, and they were necessary and

 7   appropriate to preserve the objection for trial.

 8          Probably the most important aspect of these excerpts is

 9   that nowhere was a witness instructed not to answer a question,

10   nowhere did a witness outright refuse to answer a question.

11   And when you look at the case law, Your Honor, those things

12   have to happen but they have to happen repeatedly and

13   pervasively.

14          It's interesting how plaintiffs set this motion up

15   because they've cherry-picked a few excerpts from a few

16   different witnesses and they're saying that's pervasive.  But

17   Ms. Lin, they only have five excerpts from her, it's not even

18   pervasive within her deposition.  You would have to look at

19   each of the witness's depositions and say, did that witness

20   repeatedly and pervasively obstruct the Court's rules for the

21   entire deposition rendering the deposition meaningless.  That's

22   the standard.  Plaintiffs have not come close to satisfying

23   that standard as to any of the witnesses, let alone all of the

24   witnesses.

25          So under the case law, Your Honor could and should deny

1    this motion in its entirety.

2         JUDGE VANASKIE:  Thank you, Mr. Goldberg.

3    Mr. Slater, rebuttal and then we will move on to the

4    next part of our call.

5         MR. SLATER:  Thank you, Your Honor.  And I'm going to

6    try to rattle these off.

7         Number one, the document speaks for itself is not a

8    proper objection.  Defense counsel took something Your Honor

9    said out of context.  There is no case that's going to say

10   that's a proper objection; otherwise, you could never ask about

11   a document in order to lay a foundation.  So that's frivolous.

12        The need to show bad faith or willful misconduct:  Even

13   though we think it's been demonstrated, in our brief, our reply

14   brief, on Page 5, we cited *Estate of Spear*, Third Circuit, you

15   don't need to show that in all cases, so that's not required.

16        There was testimony that there were no speaking

17   objections.  Your Honor, we've given you examples of objections

18   that were repeated verbatim practically by the witnesses

19   multiple times.  So that's -- that makes no sense and we've

20   given you solid examples of speaking objections.

21        The other cases, as I've already said before, they

22   didn't seek to deem the testimony admitted, even though the

23   court rule specifically says that's an appropriate sanction,

24   and it's always a sanction that's available to this Court.

25        The witness is not required to be able to answer all

1    questions:  There is not one question that defense counsel has

2    pointed to and said, this one really doesn't seem to fit in the

3    topic; therefore, who would expect the witness to know the

4    answer.  Your Honor has just saw the examples of Linda Lin and

5    Peng Dong and nothing could be more basic.  These are their

6    basic corporate documents and they wouldn't answer the

7    questions.  And I take serious issue with the idea that the

8    witness didn't refuse to answer questions.  The Linda Lin

9    testimony was the perfect example.  It was a perfect example

10   where she was asked, you didn't list this impurity in the Drug

11   Master File when you revised it for the FDA, and she kept

12   saying the talking point, nobody knew back then.  The question

13   was, was it listed or not.  That's a refusal to answer.

14        Hai Wang, I gave you, on Page 33 and 34 of our initial

15   brief, testimony where he was asked over and over again, did

16   ZHP ever, before June of 2018, disclose to any of your --

17   anybody the presence of NDMA or a nitrosamine in the product,

18   which Your Honor knows is an important question since we have

19   documents that show they knew way before that, he never answers

20   the question.  He just kept giving the point:  If we didn't

21   know, how could we say anything.  Nobody knew.  FDA didn't

22   know.

23        So there's multiple examples where the witnesses

24   willfully refused to answer over and over again, and what you

25   got is -- I commend to Your Honor Page 33 and 34 of our initial

brief Hai Wang, Excerpt 2, where Mr. Goldberg took the very, very strident position that the witness was acting appropriately.

     And this is where I want to end. I think you have to look at the credibility of our positions on this, too. And for defense counsel to say to you on the record that every single objection and every single answer fully complied with the rules destroys any semblance of credibility that you should give to any of the other arguments because the answers are so obviously not responsive that nobody could say that in any objectively reasonable way.

     And I'm going to end, and final closing, yeah, we only gave, what did he say, 51 examples. Only? I've never had to submit this many examples of obstructive refusal to answer in any case I've ever worked on. And I can assure Your Honor, more will come. But, again, I don't think defense counsel really means what they are saying because what were we supposed to do, put hundreds and hundreds of examples for Your Honor at this stage? It didn't seem to be efficient to do it that way.

     So we ask Your Honor to grant the relief that we've asked for, assess all the sanctions we've requested; otherwise, you'll be telling the defendants, obstruct, dance, bob, weave, don't worry, at the end of the day, nobody's going to want to take the step to make a severe sanction so this doesn't happen anymore. And I think what we've seen is an example of

1  testimony and obstruction that needs a strong response by the

2  Court.

3      Thank you.

4      JUDGE VANASKIE:  Thank you, Mr. Slater.

5      Mr. Goldberg, brief rebuttal?

6      MR. GOLDBERG:  Your Honor, I think credibility is a

7  really good place to start because it seems awfully incredible

8  to say that based on 0.82 percent of the testimony, Your Honor

9  should conclude that 99 plus percent of the testimony is bad

10 testimony, is bad faith, is egregious.  That is an incredible

11 position that Mr. Slater is asking you to take.  It's

12 incredible that he's doing it based on the excerpts only of his

13 testimony.  None of his colleagues have joined him in that.  He

14 is asking you to ignore that fact and, nonetheless, use less

15 than one percent to extrapolate as to the rest of the

16 testimony, the rest of the 6,194 pages.  That is an incredible

17 position.  That goes to credibility.  That goes to the

18 credibility of this motion.  It is empty rhetoric, the entire

19 thing, and should be denied in its entirety.

20     Your Honor, Mr. Slater had every, every available

21 opportunity during every single deposition, he used it.  Your

22 Honor just said it today.  If there were really pervasive

23 conduct, do you think he would have taken all 17 depositions?

24 After we had those hearings in March, that was only after six

25 depositions.  Eleven more depositions happened and Mr. Slater

1    did not call Your Honor, did not say, Your Honor, I can't get

2    through this deposition because counsel's obstructing, I can't

3    get through this deposition because the witness won't answer

4    the question.  Guess what?  That's why we called Your Honor on

5    Friday, because the witness refused -- the plaintiff in the

6    case refused to testify about her mental capacity.  And so we

7    called Your Honor because Your Honor gave us the availability,

8    Your Honor made yourself available for us to do it.  And Mr.

9    Slater could have done that.  If these depositions, the worst

10   of the worst, these are his examples, the worst of the worst,

11   if he couldn't get through these depositions, he would have

12   called you.

13        One other thing, Your Honor.  I think it's really

14   important for Your Honor, as you're going through their

15   excerpts, they created these 51 excerpts, but, Your Honor, you

16   can look at how they did it and they've pieced these together

17   in the same portions of testimony so that it appears like there

18   are a lot of excerpts but these are just, you know, longer --

19   these are just passages of testimony that are cut up in little

20   pieces.  But even still, you're talking about less than 0.82

21   percent.  So there's a little bit of smoke and mirrors here in

22   addition to the lack of credibility of the argument Mr. Slater

23   is making.

24        We think the standard for the kind of admissions that

25   he's asking for, the ultimate question, it's not in any case he

1  cited, it would require the most extreme form of conduct, and

2  there's not any legal support for it in any of the case law

3  that either party cited.  It hasn't happened and it would

4  require pervasive, repeated obstruction by each of the

5  witnesses.

6       So we ask Your Honor to deny the motion in its entirety

7  and if Your Honor feels like the need is to go through each of

8  the excerpts, we would be happy to do that with Your Honor and

9  provide argument, and we've also set it forth in Exhibit A of

10  our brief.

11          JUDGE VANASKIE:  Thank you.

12       Would it be appropriate -- am I muted?  No, I'm not

13  muted.

14       Would it be appropriate for me to authorize plaintiffs

15  to serve requests for admissions on the points that Mr. Slater

16  wants to have deemed admitted and give you the opportunity to

17  respond to them?

18          MR. GOLDBERG:  Absolutely not, Your Honor.  And I can

19  say that because this Court, throughout this case, made a

20  decision that there would not be requests for admissions.  And

21  now to have Mr. Slater turn the discovery process upside-down

22  simply because he did not like the answers to some of the

23  questions, and, again, try to obtain admissions on the ultimate

24  question, when the Court was clear that there wouldn't be

25  requests for admissions, would disrupt the entire discovery

1    process not just for ZHP but for all of the other defendants

2    and for this entire MDL.

3              JUDGE VANASKIE:  Thank you.

4              MR. SLATER:  Your Honor, I could also speak to that.

5    I, frankly, would not welcome that, and I'll tell you why.

6              JUDGE VANASKIE:  Okay.

7              MR. SLATER:  This was our chance to take deposition

8    testimony of the company.  This was our one time.  And I'll

9    give you an example.  Min Li who said you need a toxicologist,

10   they didn't designate a toxicologist but he refused to answer a

11   series of questions that weren't on the ultimate question in

12   the case.  And, frankly, even if they were, where's the case

13   that says you can't ask the defendant the ultimate issues.  Of

14   course you can.  That's what we do all the time in 30(b)(6) and

15   other depositions.  You always try to get the defendant to

16   admit its fault.  So I don't know what doctrine defense counsel

17   is relying on.

18         But I want to say, so when we're taking these

19   depositions, I get an evasive answer or someone else gets an

20   evasive answer, that's where we need to follow up and dig and

21   we were blocked from doing that.  But requests for admissions

22   would prevent us from getting the ability to follow up and do

23   what we need to do.

24         The last thing, I chuckled, I think, when counsel said

25   we stopped asking for Your Honor to intervene during these

1    depositions so we must have thought everything was going fine.

2    No, I think contrary to some popular belief, I learned my

3    lesson when Your Honor told us in very plain terms, this is

4    what you're going to do, these are the rules, these are going

5    to be the consequences, go forth and battle, but what I heard

6    is, don't keep calling me with the same question.  You're big

7    boys and girls, you should know how to do this.  So we relied

8    on Your Honor's ruling and we knew that at the end of the day

9    that there was going to be consequences and chickens were going

10   to come home to roost, and this is the time now.

11        I would suggest that you probably haven't seen too many

12   cases at this level with this much at stake with witnesses

13   providing such nonresponsive, nonsubstantive testimony.  And I

14   think, again, this needs a very strong statement from the Court

15   because I think these defendants, and all defendants across the

16   justice system, need to know you can't do this.  I mean,

17   imagine if you don't do it, what we're asking, what we've done,

18   we lost our chance to take the key testimony from the key

19   witnesses when the Court gave us all that time to do it, that

20   train leaving the station or left the station, think about the

21   prejudice to us if we don't get the relief that Your Honor had

22   foreshadowed and for whatever reason defense counsel didn't

23   want to fix it and didn't want to proceed differently, but we

24   ask for that relief now.

25        JUDGE VANASKIE:  Thank you very much.

1       We'll take the matter under advisement.

2           MR. SLATER:  Thank you.

3           JUDGE VANASKIE:  We will issue a written opinion on

4   it.

5       Let me just pull up the agenda letters.  There is not

6   much on the agenda for today.

7       So we have a dispute over whether counsel can be present

8   for defending expert witness depositions.  Do I understand the

9   dispute correctly?

10          MR. SLATER:  Where the deposition will be taken by

11  Zoom and there will be nobody else from the other side in the

12  room, as we agreed to do for the plaintiff experts who were

13  deposed by Zoom and were done with them alone in a room.

14          JUDGE VANASKIE:  All right.  Who will be addressing

15  this issue for the defense?

16          MR. HARKINS:  Good afternoon, Your Honor.  This is

17  Steve Harkins with Greenberg Traurig for the Teva defendants

18  and the Joint Defense Group.

19      On behalf of the defendants, just to reiterate largely

20  what's laid out in our position statement, we disagree with the

21  characterization that this was agreed upon for purposes of the

22  plaintiffs' deposition.  As noted in CMO 30, it specifically

23  contemplated that for witness depositions, defense counsel

24  could be present regardless of whether or not the opposing

25  attorney was present in person or taking the deposition

1    remotely.  Similarly, the plaintiffs' experts at issue had

2    objected to having their depositions taken in person.

3         We briefly raised this issue with Your Honor and the

4    parties were able to resolve that dispute over witnesses who

5    were uncomfortable appearing in person for deposition by

6    agreeing to have all parties appear remotely.  That's different

7    than the situation here where most, if not all, of the defense

8    experts are willing to appear in person.  Defense counsel is

9    willing to attend those depositions in person.  And if, at the

10   time that we made the concession that we would agree to depose

11   those plaintiffs' experts remotely, we had thought that it was

12   going to unilaterally give the deposing party the ability to

13   prevent us from appearing and defending our witness's

14   deposition in person, we certainly would not have agreed to it.

15   We've looked at the email that was submitted as an exhibit and

16   don't believe that it confirms anything beyond the specific

17   agreement that we made at the time.

18        Defense counsel has been consistent that if a witness

19   has a legitimate medical concern about appearing for a

20   deposition in person, we will take reasonable precautions to

21   make that witness comfortable; and in this case, for those

22   plaintiffs' experts, it involved agreeing to not take their

23   depositions in person.  That is not the case here.  And we

24   think that the standard which has prevailed in this case for

25   the fact witnesses -- and we noted in the footnote to our

1    submission three witnesses who were, in fact, deposed where

2    plaintiffs' counsel appeared only remotely but the defending

3    attorney appeared in person, and we did not have the full

4    numbers for that at the time of our submission yesterday, but I

5    have confirmed that at least seven other depositions took place

6    similarly, and at no time in going through that process did we

7    receive any objections from plaintiffs' counsel.

8         So we think that the standard in the case thus far is,

9    in fact, that defense counsel has the right to appear and

10   defend these depositions in person regardless of whether or not

11   plaintiffs choose to depose those witnesses remotely.

12         JUDGE VANASKIE:  Mr. Slater.

13         MR. SLATER:  Thank you, Your Honor.

14         All we want to do is have a level playing field.  We're

15   not seeking any advantage.  We're simply seeking to do things

16   the same way.  I remember when Your Honor ruled on the -- I

17   don't remember how you characterized it, but I don't think you

18   were impressed by the fact that we had to bring to Your Honor

19   how many people could be in the room with the witness.  I made

20   it clear on the record with Your Honor this is going to go both

21   ways, you're not going to keep ruling on this going one side to

22   the other, and Your Honor said, yes, of course.

23         If the plaintiffs are not going to be in the room with

24   the witness, the defendants shouldn't be in the room with the

25   witness.  There's no prejudice.  The witness sits in a room,

1    the lawyer can be in the other room.  They can meet during

2    breaks or they can do it by Zoom.  I defended a deposition for

3    a witness in Minnesota.  No plaintiffs' counsel was in

4    Minnesota.  We defended the deposition, it went very smoothly,

5    it was no issue.  There's absolutely no prejudice that defense

6    counsel can point to.

7         And I think that what we're all going to have to start

8    to realize, because this issue is going to come to Your Honor

9    on the bellwether depositions too, I believe, I know that

10   there's some talk right now, contrary to what some people on

11   the defense think, COVID's not done.  In fact, the COVID we had

12   a year and a half ago isn't the COVID we have today.  People

13   who are fully vaccinated are getting sick.  I know some of

14   them.  I'm sure we probably all know some people like that.

15        JUDGE VANASKIE:  I do too.

16        MR. SLATER:  So I think that if plaintiffs' counsel

17   isn't going to travel across the country to go depose some of

18   these witnesses, I think that it's reasonable to have the

19   witness be alone on Zoom and just have a level playing field.

20   Nobody loses anything and we're all -- we're all handled the

21   same way.

22        JUDGE VANASKIE:  Mr. Slater, how are you prejudiced by

23   the opposite point of view; that is, so if I understand it,

24   you're taking the defense expert witness, you're doing it

25   remotely but the defense lawyer's there with the witness, how

1    are you prejudiced?

2            MR. SLATER:  I think that there's a concern that we

3    addressed when we said we wanted to have two -- I think two of

4    the plaintiffs' experts or three of them deposed remotely, the

5    way that we got the defense to agree was we agreed we're not

6    going to be in the room with the witness.  The witness will be

7    alone so that counsel who's defending the deposition, we don't

8    have to worry about what somebody's signaling.  We don't have

9    to worry did somebody indicate to the witness yes or no how to

10   answer the question.  We don't need those battles in this case.

11   We already know the temperature and we already know that -- I

12   know when my expert was being deposed a few weeks ago, Dr.

13   Hecht, he was asked, is anyone in the room with you, what's on

14   the screens you're looking at, do you have a phone on, any of

15   these things, all reasonable questions.  We asked similar

16   questions of the witnesses from ZHP in Macao.  Fine.  But why

17   leave this open that if something happened and there's

18   suspicion, why leave it open to have that concern, because that

19   is our concern.  It could be something that's done very subtly,

20   but we don't want to have the risk that the witness is getting

21   any sort of a signal on how to handle things.  And that's why

22   the defense didn't want us in the room with our experts, and,

23   frankly, I understand it.  This isn't an attack on anyone's

24   integrity.  It's a simple, smooth way to avoid any

25   misunderstanding later on that could become very ugly.

```
 1          JUDGE VANASKIE:  Any response?

 2          MR. HARKINS:  Your Honor, just briefly on the health

 3   concerns.

 4          Defense counsel has not taken the position that any

 5   counsel needs to be present in the room.  Defense counsel is

 6   not taking the position that all of their experts, regardless

 7   of their level of comfort, need to be present and have to allow

 8   counsel to be present in person.  The fallback here is the

 9   preference of the witness.

10          Our understanding when we agreed to the parameters that

11   were put forth for the plaintiffs' experts who did not want to

12   be deposed in person was that it was based on their preference

13   as a legitimate health issue.  To the extent any of the defense

14   experts have the same concern and do not want to be deposed in

15   person, we would make a similar arrangement and not,

16   essentially, depose or defend those experts in person.  But

17   where our experts are available, they are more comfortable

18   being deposed in person with counsel present, we think that

19   that should be the fallback as it's been for the fact witness

20   depositions and as we still understood it to be the fallback

21   position with respect to general witness preference even for

22   the plaintiffs' depositions that have already taken place.

23          MR. SLATER:  So there you have it.  There you have it,

24   Your Honor.  If the witness doesn't want to be deposed in

25   person, so it's the witness's choice, there will be no counsel
```

1   in the room because that's what we agreed to do to protect the

2   integrity of the proceeding or any appearance of a lack of

3   integrity.  So I agreed not to be there and we all agreed not

4   to be there with our witnesses or have anyone there with them.

5   Who decides it's going to be on Zoom is neither here nor there;

6   it should just be a process that's consistent.

7           MR. HARKINS:  Your Honor, I would just note that if

8   this process were applied in this instance, it would amount to

9   us having requested to take depositions in person and having

10  been prevented from attending those depositions in person by

11  the decisions of plaintiffs' experts, but then have been

12  deprived of the ability to defend our depositions in person

13  based on the decision of plaintiffs, which I believe would be

14  inequitable to defendants in this case.

15          JUDGE VANASKIE:  I'm trying to be sensitive to health

16  concerns and sensitive to issues of fairness.  I am inclined to

17  agree that if the witness is comfortable being in person, then

18  defending counsel, counsel defending the deposition, can be in

19  person as well, if that's what they feel comfortable with.

20  Plaintiffs' counsel could be in person if they feel comfortable

21  doing it but don't have to.  You know, we didn't get to the

22  point where all the depositions were going to be remote.  I'm

23  struggling with my recollection in terms of what we did decide;

24  but, generally speaking, I would defer to the witnesses.  If

25  the witness is not comfortable being in person, then the

1  deposition would be conducted remotely with no one present with

2  the witness.  But if the witness says, hey, I'll be there, I

3  was served a notice for me to come to Adam Slater's office,

4  I'll be there, then I think it should occur with counsel

5  present under those limits that we set, the numerical limits

6  that we set, and proceed in that manner.  I don't see the

7  unfairness of doing it that way because you have the option of

8  being present.

9      I understand that puts you at a health risk, I

10 understand that.

11     You're right, Mr. Slater, I know in my extended family

12 breakthrough cases have occurred.  I just went out and got

13 tested again, even though I had COVID, just to be sure because

14 I was in close personal contact because, you know, we let our

15 guards down because we thought we could because we've all been

16 vaccinated, et cetera.  So I understand the concerns, but the

17 ruling I'm making is if a witness says, I will appear for the

18 deposition, then the witness can have counsel present to

19 defend, counsel on the other side can be there to take the

20 deposition or could say, I'm concerned, I'm going to do it

21 remotely, and I think that's sensitive to everybody's concerns.

22 All right?

23     MR. SLATER:  Thank you, Your Honor.

24     And one thing just for the record, I don't think there

25 is any dispute on this, counsel confirmed that they still will

1    have -- anybody that's in the room with the witness for defense

2    side will still be on video so we can see what they're doing.

3    And I can tell you what we'll probably do at this point is hire

4    somebody, it depends what cities these are in, I don't even

5    know that we have plaintiffs' counsel, and have somebody in the

6    room representing the plaintiffs.  I mean, that's what we're

7    going to have to do, I guess, we're going to have someone in

8    the room, unfortunately.

9         JUDGE VANASKIE:  I'm sorry for that, but I think

10    that's a fair way to do it.

11        MR. SLATER:  No, understood.  I wasn't rearguing the

12    issue.  I was just making sure for the record it was clear

13    that's how we intend to handle it.

14        JUDGE VANASKIE:  Now, that concludes that issue.

15    We also have, I understand that Plaintiffs' Fact Sheets

16    are being prepared and distributed.  Is that right, Ms.

17    Whiteley?  I see you popped up on the screen.  You're still

18    muted though.

19        MS. WHITELEY:  Sorry.  Consistent with your order, of

20    the 34 new plaintiffs at issue, we've uploaded just over 20

21    Plaintiff Fact Sheets to date and we expect to have that

22    finalized by next week.

23    We have begun to gather deposition dates and we want

24    to -- plan to have about seven to nine of those to defense

25    counsel this week.  And then we'll be rolling out additional

 1    dates as we're able to lock those in with the plaintiffs.

 2         Late yesterday afternoon defense counsel reached out in

 3    response to our request to begin coordinating, and they've

 4    asked for a meet and confer to discuss logistics, and we will

 5    be doing that with them as soon as we can find a time that

 6    works for the group.

 7         JUDGE VANASKIE:  All right.  Great, thanks.

 8         Anybody addressing this on the defense side?

 9         MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

10    think Ms. Whiteley stated it accurately.  We are going to

11    hopefully meet with plaintiffs to try to establish some sort of

12    expedited framework to get all of the materials we need to be

13    able to take the depositions in time.

14         JUDGE VANASKIE:  All right.  Thank you.

15         Anything else for today?

16         MR. GOLDBERG:  Nothing from defendants, Your Honor.

17         MR. SLATER:  I don't believe there's anything from

18    plaintiffs.

19         JUDGE VANASKIE:  I have one more matter that's a bit

20    difficult for me to raise but I'm going to raise it because I

21    think I should.  And I'll ask Mr. Goldberg for his assistance

22    in getting this done.

23         I have agreed to submit separate statements, separate

24    bills, to each of six defendants and several defendants haven't

25    paid.  And I don't want to raise it with Judge Kugler but I'll

```
 1   have to, in fairness to my law firm, if that's not done.  So
 2   I'll ask you to please reach out and find out what's the delay
 3   and what needs to be done, please.
 4            MR. GOLDBERG:  Okay, Your Honor.
 5            JUDGE VANASKIE:  All right.  Thank you all very much.
 6   We are adjourned.
 7            MR. SLATER:  Thank you, Your Honor.
 8            JUDGE VANASKIE:  Thanks.
 9            (The proceedings concluded at 4:50 p.m.)
10            - - - - - - - - - - - - - - - - -
11
12            I certify that the foregoing is a correct transcript
13   from the record of proceedings in the above-entitled matter.
14
15   /S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR
     Court Reporter/Transcriber
16
17   September 12, 2021
          Date
18
19
20
21
22
23
24
25
```

**1**

**/**

/S [1] - 57:15

**0**

**0.82** [5] - 18:17, 20:2, 42:8, 43:20
**07068** [1] - 1:14
**08101** [1] - 1:8

**1**

**1** [1] - 19:8
**103** [1] - 1:13
**11** [1] - 34:20
**12** [1] - 57:17
**138** [1] - 18:14
**17** [2] - 18:7, 42:23
**17th** [1] - 1:20
**19-md-02875-RBK-KMW** [1] - 1:4
**19103** [1] - 1:20

**2**

**2** [3] - 19:8, 22:16, 41:1
**20** [1] - 55:20
**2013** [2] - 23:8, 23:9
**2018** [1] - 40:16
**202** [1] - 18:11
**2021** [2] - 1:8, 57:17
**2500** [1] - 2:3
**295** [1] - 9:25

**3**

**30** [2] - 1:20, 47:22
**30(B)(2** [2] - 6:25, 11:22
**30(b)(6** [13] - 26:11, 27:6, 27:12, 27:13, 29:19, 37:10, 37:17, 37:18, 37:21, 37:24, 38:1, 45:14
**30(B)(6** [2] - 6:21, 16:21
**30(C)(2** [1] - 11:22
**300** [1] - 10:1
**301** [1] - 10:1
**30305** [1] - 2:4
**33** [2] - 40:14, 40:25
**3333** [1] - 2:3
**34** [3] - 40:14, 40:25, 55:20
**37(B** [3] - 6:25, 12:5
**37(D** [1] - 7:1
**37D** [1] - 6:18
**3:00** [2] - 1:9, 3:2

**4**

**44** [2] - 18:12, 23:12
**47** [1] - 18:11
**4:50** [1] - 57:9
**4th** [1] - 1:7

**5**

**5** [1] - 39:14
**51** [4] - 18:7, 18:16, 41:13, 43:15

**6**

**6** [1] - 20:17
**6,194** [5] - 18:4, 20:18, 26:18, 42:16
**609-774-1494** [1] - 1:24
**64** [1] - 18:12

**7**

**7** [2] - 19:6, 19:7
**701** [1] - 1:16
**70130** [1] - 1:17

**8**

**8** [1] - 1:8

**9**

**96** [1] - 9:25
**99** [4] - 19:22, 20:1, 42:9

**A**

**A)(1** [1] - 12:6
**a.m** [2] - 19:6, 19:8
**ability** [7] - 5:1, 6:21, 7:24, 28:20, 45:22, 48:12, 53:12
**able** [10] - 15:23, 16:11, 24:7, 24:10, 24:11, 28:1, 39:25, 48:4, 56:1, 56:13
**above-entitled** [1] - 57:13
**absolutely** [2] - 44:18, 50:5
**abuse** [2] - 4:9, 4:13
**account** [1] - 19:25
**accurately** [1] - 56:10
**Actavis** [2] - 2:5, 2:5
**acting** [1] - 41:2
**ACTION** [1] - 1:3
**action** [1] - 12:8
**Adam** [2] - 3:23, 54:3
**ADAM** [1] - 1:13
**add** [2] - 18:6, 29:1

**addition** [1] - 43:22
**additional** [2] - 23:2, 55:25
**address** [7] - 4:6, 5:2, 9:6, 13:7, 14:5, 29:10, 36:4
**addressed** [3] - 16:12, 30:1, 51:3
**addresses** [1] - 12:9
**addressing** [2] - 47:14, 56:8
**adequately** [1] - 37:19
**adhered** [1] - 38:4
**adjourned** [1] - 57:6
**admissibility** [6] - 3:21, 4:22, 6:11, 11:14, 34:12, 34:13
**admissible** [5] - 4:24, 4:25, 8:11, 11:15, 11:18
**admissions** [6] - 43:24, 44:15, 44:20, 44:23, 44:25, 45:21
**admit** [2] - 33:23, 45:16
**admitted** [19] - 7:10, 8:10, 8:11, 8:16, 8:20, 9:12, 9:18, 9:22, 10:12, 10:13, 10:19, 11:12, 15:2, 17:25, 34:7, 35:19, 37:1, 39:22, 44:16
**admonished** [1] - 26:7
**adulterated** [1] - 30:22
**advantage** [1] - 49:15
**adversarial** [1] - 28:5
**advisement** [1] - 47:1
**affirmed** [1] - 12:14
**afternoon** [2] - 47:16, 56:2
**agencies** [1] - 30:20
**agenda** [2] - 47:5, 47:6
**ago** [2] - 50:12, 51:12
**agree** [3] - 48:10, 51:5, 53:17
**agreed** [9] - 47:12, 47:21, 48:14, 51:5, 52:10, 53:1, 53:3, 56:23
**agreeing** [2] - 48:6, 48:22
**agreement** [1] - 48:17
**agrees** [1] - 34:8
**ahead** [1] - 31:13
**aided** [1] - 1:25
**alleged** [1] - 19:14
**allow** [1] - 52:7
**allowed** [2] - 6:1, 27:7
**almost** [1] - 37:12

**alone** [10] - 10:18, 18:25, 21:17, 22:20, 26:14, 29:13, 38:23, 47:13, 50:19, 51:7
**ALSO** [1] - 2:7
**amount** [1] - 53:8
**analysis** [1] - 16:21
**AND** [1] - 1:5
**animated** [1] - 28:7
**ANN** [1] - 1:19
**answer** [40] - 3:25, 6:21, 11:13, 14:23, 15:5, 15:21, 15:23, 16:3, 17:3, 21:9, 23:5, 23:8, 23:14, 25:13, 26:7, 26:10, 26:17, 30:2, 30:22, 31:2, 31:9, 34:7, 35:13, 35:22, 37:11, 38:9, 38:10, 39:25, 40:4, 40:6, 40:8, 40:13, 40:24, 41:7, 41:14, 43:3, 45:10, 45:19, 45:20, 51:10
**answered** [1] - 23:6
**answering** [4] - 20:16, 23:7, 26:14, 37:15
**answers** [6] - 15:7, 17:20, 33:7, 40:19, 41:9, 44:22
**apologize** [1] - 24:21
**Apotex** [1] - 16:7
**apparent** [1] - 37:10
**appear** [4] - 48:6, 48:8, 49:9, 54:17
**appearance** [1] - 53:2
**appeared** [2] - 49:2, 49:3
**appearing** [3] - 48:5, 48:13, 48:19
**applicable** [1] - 6:25
**applied** [1] - 53:8
**apply** [2] - 29:16, 36:5
**appreciate** [1] - 25:16
**appreciated** [1] - 29:4
**appreciative** [1] - 32:5
**approach** [2] - 32:11, 32:21
**appropriate** [8] - 11:24, 12:4, 27:20, 34:6, 38:7, 39:23, 44:12, 44:14
**appropriately** [2] - 30:21, 41:3
**arduous** [1] - 17:19
**area** [2] - 15:11, 15:14
**arguing** [2] - 11:3, 18:8
**argument** [14] - 3:9, 3:13, 5:4, 5:21, 7:5,

12:17, 23:25, 27:6, 27:11, 27:16, 30:25, 34:12, 43:22, 44:9
**arguments** [4] - 27:24, 27:25, 29:21, 41:9
**arrangement** [1] - 52:15
**arrived** [2] - 18:24, 31:22
**aside** [1] - 25:10
**Aslan** [1] - 16:23
**aspect** [1] - 38:8
**aspects** [1] - 10:24
**asserted** [1] - 37:20
**assertion** [2] - 37:18, 38:2
**assess** [2] - 4:23, 41:21
**assigned** [1] - 13:22
**assistance** [1] - 56:21
**Associates** [1] - 6:17
**assuming** [2] - 13:4, 34:8
**assure** [1] - 41:15
**Atlanta** [1] - 2:4
**attack** [1] - 51:23
**attempt** [1] - 29:22
**attempting** [1] - 23:13
**attend** [1] - 48:9
**attending** [1] - 53:10
**attorney** [3] - 28:12, 47:25, 49:3
**attorney's** [1] - 11:25
**authorities** [1] - 7:9
**authority** [24] - 3:18, 4:1, 4:4, 4:6, 4:16, 4:18, 5:23, 5:25, 7:3, 7:14, 8:3, 8:4, 8:17, 9:1, 9:3, 9:6, 10:11, 10:15, 12:10, 12:16, 15:2, 15:3, 34:9
**authorize** [1] - 44:14
**availability** [1] - 43:7
**available** [12] - 7:1, 7:15, 11:23, 31:19, 31:24, 31:25, 32:1, 32:2, 39:24, 42:20, 43:8, 52:17
**avoid** [5] - 13:3, 13:9, 27:14, 32:9, 51:24
**awarded** [1] - 34:10
**awfully** [1] - 42:7

**B**

**back-and-forth** [1] - 30:6
**bad** [7] - 10:20, 20:1, 36:24, 37:8, 39:12, 42:9, 42:10
**bad-faith** [1] - 36:24

*2*

**ball** [1] - 26:2
**based** [11] - 4:23, 6:2, 6:7, 11:16, 26:10, 34:10, 37:16, 42:8, 42:12, 52:12, 53:13
**basic** [6] - 13:2, 14:6, 15:21, 33:24, 40:5, 40:6
**basis** [1] - 38:6
**battle** [1] - 46:5
**battles** [1] - 51:10
**became** - 28:7
**become** [1] - 51:25
**begin** [1] - 56:3
**beginning** [1] - 25:23
**begun** [1] - 55:23
**behalf** [1] - 47:19
**behind** [1] - 28:10
**belied** [1] - 16:22
**belief** [1] - 46:2
**believes** [1] - 23:6
**bellwether** [1] - 50:9
**best** [2] - 20:10, 28:1
**better** [2] - 15:23, 17:2
**between** [1] - 6:9
**beyond** [5] - 12:16, 18:19, 19:18, 19:20, 48:16
**big** [2] - 13:7, 46:6
**bills** [1] - 56:24
**bit** [7] - 5:18, 15:1, 25:2, 25:5, 28:7, 43:21, 56:19
**bite** [1] - 13:7
**Black** [5] - 4:15, 6:17, 9:24, 37:3, 37:5
**blessing** [1] - 16:3
**blocked** [1] - 45:21
**board** [1] - 35:7
**boarding** [1] - 37:12
**bob** [1] - 41:22
**BONNER** [5] - 1:19, 24:5, 24:9, 24:13, 24:21
**Bonner** [2] - 24:4, 24:8
**bounds** [1] - 17:21
**boys** [1] - 46:7
**break** [2] - 33:13, 35:20
**breaks** [1] - 50:2
**breakthrough** [1] - 54:12
**brief** [16] - 3:12, 6:4, 7:23, 14:5, 16:24, 18:6, 20:8, 21:2, 35:9, 36:10, 39:13, 39:14, 40:15, 41:1, 42:5, 44:10
**briefed** [1] - 15:15

**briefly** [3] - 11:2, 48:3, 52:2
**bring** [1] - 49:18
**broad** [1] - 17:7
**broadly** [1] - 37:23
**brush** [1] - 17:7
**building** [2] - 33:9, 33:10
**Building** [1] - 1:7
**built** [2] - 29:14, 36:2
**burden** [1] - 29:10
**business** [1] - 16:13
**button** [1] - 26:24
**BY** [5] - 1:13, 1:16, 1:19, 1:19, 2:3

# C

**Camden** [1] - 1:8
**Camille** [2] - 1:23, 57:15
**camillepedano@ gmail.com** [1] - 1:23
**Camp** [1] - 1:16
**cancer** [1] - 9:16
**cannot** [1] - 5:4
**capacity** [1] - 43:6
**carefully** [1] - 34:18
**case** [49] - 4:8, 4:11, 4:14, 4:15, 4:19, 6:4, 6:5, 6:6, 6:16, 8:10, 9:10, 9:16, 10:4, 10:7, 10:13, 10:16, 12:11, 12:15, 16:7, 16:9, 16:22, 16:23, 17:18, 28:11, 29:24, 31:25, 34:9, 35:1, 35:2, 37:3, 37:5, 38:11, 38:25, 39:9, 41:15, 43:6, 43:25, 44:2, 44:19, 45:12, 48:21, 48:23, 48:24, 49:8, 51:10, 53:14
**cases** [16] - 5:10, 6:23, 7:12, 9:20, 9:21, 11:12, 15:8, 16:6, 28:12, 34:9, 35:2, 39:15, 39:21, 46:12, 54:12
**cautious** [1] - 5:18
**CCR** [1] - 57:15
**cert** [1] - 35:10
**certain** [4] - 4:23, 7:9, 11:17, 27:5
**certainly** [13] - 4:22, 5:1, 7:14, 7:15, 7:23, 8:18, 8:20, 9:4, 11:6, 13:7, 15:2, 21:11, 48:14
**certifications** [1] - 28:21

**certify** [1] - 57:12
**cetera** [1] - 54:16
**challenge** [1] - 34:21
**challenged** [4] - 19:22, 20:6, 20:15, 20:19
**challenging** [2] - 20:3, 26:18
**chance** [2] - 45:7, 46:18
**changed** [1] - 35:7
**characterization** [1] - 47:21
**characterized** [1] - 49:17
**chemist** [1] - 15:17
**chemistry** [1] - 19:2
**cherry** [1] - 38:15
**cherry-picked** [1] - 38:15
**chickens** [1] - 46:9
**China** [2] - 19:6, 22:19
**Chinese** [7] - 14:24, 18:15, 18:16, 18:21, 21:10, 26:16, 26:17
**choice** [2] - 7:22, 52:25
**choose** [1] - 49:11
**chose** [2] - 27:13, 30:11
**chosen** [1] - 29:19
**chuckled** [1] - 45:24
**Circuit** [4] - 10:17, 30:1, 36:21, 39:14
**circumstances** [4] - 17:19, 18:20, 19:14, 26:13
**cited** [23] - 4:3, 4:11, 4:14, 5:11, 6:4, 6:16, 7:9, 9:11, 10:16, 11:5, 12:11, 16:5, 16:23, 16:24, 18:6, 18:16, 28:11, 37:4, 37:14, 39:14, 44:1, 44:3
**cites** [1] - 32:16
**cities** [2] - 19:5, 55:4
**citing** [1] - 7:12
**civil** [1] - 25:17
**CIVIL** [1] - 1:3
**Civil** [1] - 29:17
**claiming** [1] - 17:2
**claims** [1] - 12:9
**clarification** [1] - 37:17
**class** [1] - 35:10
**cleaned** [1] - 35:23
**clear** [17] - 4:4, 4:16, 10:6, 10:16, 12:25, 14:20, 15:7, 15:13,

15:24, 32:25, 33:15, 35:22, 37:7, 37:8, 44:24, 49:20, 55:12
**clearly** [6] - 6:1, 8:12, 12:10, 25:11, 25:19, 36:17
**Clerk** [1] - 2:8
**client** [1] - 28:15
**client's** [2] - 28:13, 28:18
**clients** [1] - 28:20
**clip** [3] - 21:20, 22:1, 22:17
**clips** [1] - 26:9
**cloaked** [1] - 9:5
**close** [2] - 38:22, 54:14
**closing** [1] - 41:12
**CMO** [1] - 47:22
**co** [2] - 24:9, 24:12
**co-host** [2] - 24:9, 24:12
**coaching** [1] - 38:4
**Coast** [1] - 19:7
**Cohen** [1] - 1:7
**colleague** [2] - 24:3, 26:2
**colleagues** [4] - 20:7, 31:15, 42:13
**comfort** [1] - 52:7
**comfortable** [6] - 48:21, 52:17, 53:17, 53:19, 53:20, 53:25
**coming** [2] - 11:8, 25:14
**Commencing** [1] - 1:9
**commend** [1] - 40:25
**commensurate** [1] - 5:25
**communicate** [1] - 35:24
**communication** [1] - 30:6
**companies** [1] - 16:13
**company** [6] - 6:14, 16:1, 16:8, 16:22, 29:19, 45:8
**compel** [1] - 35:12
**complain** [2] - 28:2, 30:8
**complete** [1] - 6:19
**complied** [1] - 41:7
**component** [1] - 31:8
**compound** [1] - 36:15
**computer** [2] - 1:25, 21:17
**computer-aided** [1] - 1:25
**concepts** [2] - 19:2
**concern** [6] - 34:14,

48:19, 51:2, 51:18, 51:19, 52:14
**concerned** [1] - 54:20
**concerns** [4] - 52:3, 53:16, 54:16, 54:21
**concession** [1] - 48:10
**conclude** [3] - 19:25, 20:1, 42:9
**concluded** [1] - 57:9
**concludes** [1] - 55:14
**conclusion** [2] - 32:18
**conduct** [19] - 4:7, 5:2, 6:3, 6:7, 6:13, 8:5, 10:4, 10:6, 10:8, 10:9, 12:17, 18:2, 19:15, 20:15, 34:11, 36:23, 36:24, 42:23, 44:1
**conducted** [1] - 54:1
**conducting** [1] - 13:12
**confer** [1] - 56:4
**conference** [2] - 3:12, 19:11
**CONFERENCE** [1] - 1:5
**confirmed** [2] - 49:5, 54:25
**confirms** [1] - 48:16
**confrontational** [1] - 30:16
**confused** [2] - 25:11, 25:19
**confusion** [1] - 19:10
**CONLEE** [1] - 1:16
**connection** [2] - 3:10, 8:21
**conscious** [1] - 37:12
**consequences** [3] - 30:10, 46:5, 46:9
**consistent** [3] - 48:18, 53:6, 55:19
**consulted** [1] - 15:18
**contact** [1] - 54:14
**contemplated** [1] - 47:23
**contention** [1] - 37:24
**context** [4] - 6:10, 8:13, 36:16, 39:9
**continue** [1] - 5:14
**Continued** [1] - 2:1
**contrary** [2] - 46:2, 50:10
**conversational** [1] - 28:6
**Cooper** [1] - 1:7
**cooperate** [1] - 22:21
**cooperated** [1] - 19:17
**cooperation** [1] - 37:11

**cooperatively** [1] - 26:13
**coordinating** [1] - 56:3
**corporate** [1] - 40:6
**correct** [2] - 21:5, 57:12
**correctly** [1] - 47:9
**counsel** [58] - 6:14, 11:3, 11:8, 11:13, 12:23, 13:19, 14:14, 15:14, 17:10, 25:10, 27:4, 27:18, 28:7, 28:10, 28:17, 29:2, 29:12, 30:5, 34:21, 35:11, 35:20, 35:23, 36:1, 37:23, 39:8, 40:1, 41:6, 41:16, 45:16, 45:24, 46:22, 47:7, 47:23, 48:8, 48:18, 49:2, 49:7, 49:9, 50:3, 50:6, 50:16, 51:7, 52:4, 52:5, 52:8, 52:18, 52:25, 53:18, 53:20, 54:4, 54:18, 54:19, 54:25, 55:5, 55:25, 56:2
**counsel's** [7] - 16:3, 27:18, 28:22, 33:8, 34:16, 38:3, 43:2
**countries** [1] - 19:4
**country** [2] - 18:22, 50:17
**couple** [2] - 16:6, 33:22
**course** [5] - 4:1, 4:2, 9:13, 45:14, 49:22
**COURT** [1] - 1:1
**court** [9] - 9:4, 10:2, 10:3, 16:1, 17:1, 19:3, 34:23, 39:23
**Court** [18] - 1:23, 6:20, 6:25, 11:15, 11:24, 15:5, 15:10, 16:9, 37:5, 37:12, 37:13, 39:24, 42:2, 44:19, 44:24, 46:14, 46:19, 57:15
**Court's** [2] - 12:3, 38:20
**court-ordered** [1] - 17:1
**Courthouse** [1] - 1:7
**Courtroom** [1] - 2:9
**covered** [2] - 17:23, 29:16
**COVID** [3] - 50:11, 50:12, 54:13
**COVID's** [1] - 50:11

**CRC** [1] - 57:15
**created** [2] - 27:9, 43:15
**credibility** [6] - 41:5, 41:8, 42:6, 42:17, 42:18, 43:22
**critical** [1] - 9:9
**CRR** [1] - 57:15
**culprit** [1] - 14:13
**curb** [1] - 28:13
**current** [1] - 12:23
**customers** [1] - 15:20
**cut** [1] - 43:19

## D

**dance** [1] - 41:22
**date** [1] - 55:21
**Date** [1] - 57:17
**dates** [2] - 55:23, 56:1
**Daubert** [1] - 35:10
**day-to-day** [1] - 16:13
**days** [1] - 31:5
**deal** [1] - 13:1
**deals** [1] - 3:21
**debate** [1] - 10:15
**decide** [3] - 3:18, 12:3, 53:23
**decides** [1] - 53:5
**decision** [1] - 4:17, 4:25, 9:25, 10:1, 10:6, 10:14, 12:14, 29:25, 33:11, 44:20, 53:13
**decisions** [1] - 53:11
**deem** [6] - 8:10, 9:18, 15:2, 35:18, 37:1, 39:22
**deemed** [2] - 34:7, 44:16
**deeming** [6] - 7:9, 8:15, 9:21, 10:12, 10:19, 17:25
**defend** [4] - 49:10, 52:16, 53:12, 54:19
**defendant** [2] - 45:13, 45:15
**Defendants** [2] - 1:21, 2:4
**defendants** [11] - 41:22, 45:1, 46:15, 47:17, 47:19, 49:24, 53:14, 56:16, 56:24
**defended** [3] - 12:22, 50:2, 50:4
**defending** [7] - 28:12, 47:8, 48:13, 49:2, 51:7, 53:18
**defense** [33] - 7:5, 17:10, 27:4, 28:1, 30:7, 30:10, 34:15,

34:21, 39:8, 40:1, 41:6, 41:16, 45:16, 46:22, 47:15, 47:23, 48:7, 48:8, 48:18, 49:9, 50:5, 50:11, 50:24, 50:25, 51:5, 51:22, 52:4, 52:5, 52:13, 55:1, 55:24, 56:2, 56:8
**Defense** [1] - 47:18
**defer** [1] - 53:24
**deferred** [1] - 15:22
**definition** [1] - 30:22
**delay** [1] - 57:2
**delays** [1] - 12:1
**demonstrated** [1] - 39:13
**demonstrates** [3] - 19:16, 19:23, 36:14
**demonstration** [2] - 20:11, 37:8
**denial** [1] - 37:9
**denied** [1] - 42:19
**deny** [3] - 36:22, 38:25, 44:6
**deponent** [1] - 12:2
**deponents** [1] - 13:11
**depose** [5] - 27:14, 48:10, 49:11, 50:17, 52:16
**deposed** [10] - 12:22, 21:23, 47:13, 49:1, 51:4, 51:12, 52:12, 52:14, 52:18, 52:24
**deposing** [1] - 48:12
**deposition** [57] - 4:3, 4:9, 5:2, 6:3, 6:7, 6:13, 6:21, 6:23, 8:5, 8:7, 8:20, 13:13, 14:25, 17:17, 18:5, 18:7, 18:10, 18:12, 18:17, 18:24, 20:6, 22:21, 25:17, 25:21, 28:12, 28:14, 28:15, 29:14, 29:15, 30:3, 31:16, 32:4, 34:11, 34:19, 34:21, 38:18, 38:21, 42:21, 43:2, 43:3, 45:7, 47:10, 47:22, 47:25, 48:5, 48:14, 48:20, 50:2, 50:4, 51:7, 53:18, 54:1, 54:18, 54:20, 55:23
**depositions** [50] - 3:11, 4:7, 4:24, 11:24, 12:20, 13:25, 18:20, 19:6, 19:7, 19:11, 19:18, 23:12, 27:14, 29:14, 29:16,

32:25, 33:2, 33:12, 33:16, 34:16, 34:19, 34:24, 35:6, 35:9, 36:5, 38:19, 42:23, 42:25, 43:9, 43:11, 45:15, 45:19, 46:1, 47:8, 47:23, 48:2, 48:9, 48:23, 49:5, 49:10, 50:9, 52:20, 52:22, 53:9, 53:10, 53:12, 53:22, 56:13
**deprived** [1] - 53:12
**Deputy** [1] - 2:9
**designate** [2] - 17:4, 45:10
**designated** [4] - 12:7, 15:25, 27:10, 31:1
**designation** [1] - 30:24
**designations** [1] - 30:23
**destroys** [1] - 41:8
**details** [2] - 16:20, 17:9
**determination** [2] - 11:14, 32:15
**determinations** [1] - 6:12
**determine** [1] - 5:1
**different** [9] - 12:25, 13:20, 14:7, 19:4, 19:5, 38:16, 48:6
**differently** [1] - 46:23
**difficult** [3] - 7:19, 35:8, 56:20
**dig** [1] - 45:20
**direct** [2] - 3:16, 15:10
**directing** [1] - 12:6
**directly** [1] - 15:18
**disabled** [1] - 24:5
**disagree** [1] - 47:20
**disclose** [1] - 40:16
**discovery** [12] - 3:20, 4:6, 4:9, 6:9, 10:18, 11:4, 11:10, 11:20, 17:22, 44:21, 44:25
**Discovery** [4] - 8:4, 8:16, 9:5, 9:17
**discretion** [1] - 12:3
**discuss** [2] - 10:21, 56:4
**discussion** [1] - 28:6
**dismiss** [1] - 36:22
**dispute** [6] - 3:20, 47:7, 47:9, 48:4, 54:25
**disputed** [1] - 9:14
**disputes** [1] - 32:10
**disregard** [1] - 37:12
**disrupt** [1] - 44:25

**distinction** [2] - 6:9, 6:10
**distract** [1] - 29:22
**distraction** [1] - 7:18
**distributed** [1] - 55:16
**District** [1] - 4:13
**district** [1] - 10:2
**DISTRICT** [2] - 1:1, 1:1
**doctrine** [1] - 45:16
**document** [11] - 14:22, 21:18, 22:10, 23:9, 25:20, 25:24, 27:8, 27:10, 37:22, 39:7, 39:11
**documents** [8] - 16:18, 25:12, 26:5, 26:6, 27:5, 36:17, 40:6, 40:19
**Doe** [1] - 37:3
**done** [15] - 12:21, 21:5, 27:14, 28:21, 30:21, 34:4, 34:9, 43:9, 46:17, 47:13, 50:11, 51:19, 56:22, 57:1, 57:3
**Dong** [19] - 4:3, 14:21, 21:1, 21:11, 21:16, 21:18, 21:19, 21:21, 23:1, 23:16, 23:22, 25:11, 25:24, 26:14, 27:17, 30:24, 31:4, 34:19, 40:5
**down** [2] - 44:21, 54:15
**Dr** [1] - 51:12
**drastic** [1] - 20:23
**draw** [2] - 6:9, 32:18
**dressing** [1] - 29:22
**drew** [1] - 20:4
**Drug** [1] - 40:10
**DUANE** [1] - 1:18
**during** [11] - 4:2, 4:3, 14:25, 18:22, 19:19, 32:4, 35:17, 35:20, 42:21, 45:25, 50:1
**duty** [3] - 28:13, 28:14

## E

**earnest** [2] - 21:24, 23:14
**earnestly** [3] - 23:5, 26:10, 37:15
**East** [1] - 19:7
**easy** [1] - 15:10
**efficient** [1] - 41:19
**efforts** [1] - 19:23
**egregious** [1] - 10:5, 10:9, 15:24, 18:1, 36:23, 42:10

**eight** [2] - 18:22, 26:14
**Eisenhower** [1] - 1:13
**either** [4] - 11:12, 12:23, 29:24, 44:3
**eleven** [2] - 18:21, 42:25
**email** [2] - 31:21, 48:15
**embraced** [1] - 12:7
**employee** [1] - 12:23
**empty** [1] - 42:18
**encompasses** [1] - 16:2
**encourage** [2] - 25:22, 37:2
**encouraged** [1] - 6:15
**end** [8] - 24:24, 25:8, 27:3, 35:21, 41:4, 41:12, 41:23, 46:8
**English** [5] - 18:15, 18:16, 21:22, 27:23, 33:13
**enter** [3] - 4:8, 6:2, 7:4
**entered** [3] - 6:6, 6:24, 34:18
**entire** [4] - 38:21, 42:18, 44:25, 45:2
**entirety** [4] - 36:23, 39:1, 42:19, 44:6
**entitled** [1] - 57:13
**entries** [2] - 13:16, 13:18
**equitable** [1] - 33:11
**equivalent** [1] - 4:5
**especially** [3] - 8:13, 17:25, 29:18
**ESQUIRE** [6] - 1:13, 1:16, 1:19, 1:19, 2:3, 2:8
**essentially** [2] - 33:8, 52:16
**establish** [2] - 25:23, 56:11
**established** [1] - 12:8
**Estate** [1] - 39:14
**et** [1] - 54:16
**evade** [1] - 16:25
**evaluate** [1] - 17:16
**evaluating** [1] - 27:21
**evasive** [2] - 45:19, 45:20
**evidence** [2] - 3:21, 8:19
**evidentiary** [3] - 8:8, 8:12, 8:15
**exact** [1] - 22:8
**exactly** [2] - 16:2, 35:22
**examination** [1] - 12:2

**example** [10] - 8:21, 11:22, 14:24, 15:25, 22:5, 22:9, 40:9, 41:25, 45:9
**examples** [18] - 12:19, 12:24, 13:2, 13:11, 14:1, 15:10, 29:8, 32:24, 33:1, 39:17, 39:20, 40:4, 40:23, 41:13, 41:14, 41:18, 43:10
**exception** [1] - 29:18
**exceptions** [1] - 36:2
**excerpt** [7] - 20:15, 22:25, 23:16, 25:1, 25:22, 32:12, 36:11
**Excerpt** [3] - 20:17, 22:16, 41:1
**excerpts** [14] - 9:11, 18:5, 21:1, 22:12, 34:5, 37:14, 38:8, 38:15, 38:17, 42:12, 43:15, 43:18, 44:8
**excuse** [4] - 19:14, 27:18, 27:19, 33:9
**excuses** [2] - 33:10, 34:25
**exhibit** [1] - 48:15
**Exhibit** [2] - 36:10, 44:9
**expect** [3] - 26:6, 40:3, 55:21
**expedited** [1] - 56:12
**expense** [1] - 7:18
**expenses** [1] - 11:25
**expert** [6] - 16:14, 35:9, 36:15, 47:8, 50:24, 51:12
**experts** [14] - 16:17, 47:12, 48:1, 48:8, 48:11, 48:22, 51:4, 51:22, 52:6, 52:11, 52:14, 52:16, 52:17, 53:11
**explain** [2] - 28:15, 28:16
**explaining** [1] - 23:7
**Explanation** [2] - 21:4, 21:9
**explanation** [1] - 21:5
**expressed** [1] - 7:23
**extended** [1] - 54:11
**extensive** [2] - 6:6, 32:24
**extensively** [1] - 15:15
**extent** [3] - 19:17, 35:7, 52:13
**extrapolate** [1] - 42:15
**extreme** [2] - 10:4, 44:1

**Exxon** [3] - 4:19, 10:7, 28:11

**F**

**face** [1] - 17:4
**Fact** [2] - 55:15, 55:21
**fact** [19] - 8:8, 8:11, 9:24, 10:12, 12:19, 14:6, 16:18, 19:22, 22:9, 29:8, 35:2, 37:22, 42:14, 48:25, 49:1, 49:9, 49:18, 50:11, 52:19
**facts** [6] - 9:9, 10:12, 12:7, 17:25, 18:1, 37:1
**fair** [2] - 12:2, 55:10
**fairness** [2] - 53:16, 57:1
**faith** [6] - 10:21, 19:23, 36:24, 37:9, 39:12, 42:10
**fallback** [5] - 7:22, 35:11, 52:8, 52:19, 52:20
**falls** [1] - 37:23
**false** [1] - 6:10
**familiar** [1] - 13:23
**family** [1] - 54:11
**far** [1] - 49:8
**fault** [1] - 45:16
**favor** [1] - 11:11
**favorable** [1] - 6:5
**FDA** [3] - 16:19, 40:11, 40:21
**federal** [3] - 9:4, 10:2, 10:3
**Federal** [1] - 29:17
**fees** [1] - 11:25
**felt** [1] - 36:11
**few** [9] - 13:16, 13:18, 15:15, 17:15, 31:5, 34:24, 38:15, 51:12
**field** [2] - 49:14, 50:19
**File** [1] - 40:11
**filed** [1] - 29:3
**final** [1] - 41:12
**finalized** [1] - 55:22
**fine** [4] - 5:20, 30:16, 46:1, 51:16
**firm** [1] - 57:1
**first** [9] - 3:9, 3:14, 3:16, 5:22, 17:17, 18:3, 29:9, 32:22, 33:19
**firsthand** [2] - 23:14, 26:10, 37:16
**fit** [1] - 40:2
**five** [1] - 38:17
**fix** [1] - 46:23

**flavor** [1] - 23:2
**flying** [2] - 27:22, 29:12
**focus** [2] - 13:23, 28:25
**focused** [1] - 13:19
**follow** [4] - 3:7, 21:24, 45:20, 45:22
**following** [1] - 3:12
**footnote** [1] - 48:25
**FOR** [2] - 1:1, 1:5
**foregoing** [1] - 57:12
**foreshadowed** [1] - 46:22
**forever** [1] - 35:16
**forget** [1] - 32:8
**form** [5] - 10:17, 14:11, 20:23, 21:6, 44:1
**former** [1] - 12:23
**forth** [4] - 30:6, 44:9, 46:5, 52:11
**forward** [3] - 11:9, 32:9, 35:5
**foundation** [6] - 14:12, 14:22, 25:23, 26:3, 27:8, 39:11
**foundational** [1] - 33:24
**framework** [1] - 56:12
**frankly** [5] - 28:7, 28:25, 45:5, 45:12, 51:23
**FREEMAN** [1] - 1:12
**Friday** [2] - 31:14, 43:5
**frivolous** [2] - 27:11, 39:11
**front** [1] - 29:23
**frustrates** [1] - 12:2
**full** [1] - 49:3
**fullest** [1] - 19:17
**fully** [2] - 41:7, 50:13

**G**

**gather** [1] - 55:23
**general** [1] - 52:21
**generalized** [1] - 34:15
**generally** [1] - 53:24
**genuine** [1] - 37:18
**Georgia** [1] - 2:4
**girls** [1] - 46:7
**given** [6] - 12:19, 12:24, 16:5, 29:20, 39:17, 39:20
**glitches** [1] - 19:9
**global** [3] - 18:22, 19:19, 30:18
**GMAC** [1] - 28:12

**Goldberg** [14] - 3:17, 8:1, 10:23, 17:13, 20:25, 24:23, 32:16, 32:21, 36:7, 39:2, 41:1, 42:5, 56:9, 56:21
**GOLDBERG** [24] - 1:19, 3:6, 8:2, 9:4, 17:14, 21:13, 22:4, 22:9, 22:14, 22:16, 22:24, 24:3, 24:10, 24:16, 24:19, 24:25, 25:5, 25:8, 36:8, 42:6, 44:18, 56:9, 56:16, 57:4
**good-faith** [1] - 19:23
**grant** [6] - 3:19, 5:4, 5:23, 20:22, 35:4, 41:20
**gray** [1] - 15:11
**great** [3] - 5:16, 14:16, 56:7
**GREENBERG** [1] - 2:2
**Greenberg** [1] - 47:17
**group** [1] - 56:6
**Group** [1] - 47:18
**guards** [1] - 54:15
**guess** [5] - 33:13, 34:2, 35:12, 43:4, 55:7
**guidance** [2] - 33:2, 33:15

**H**

**Hai** [3] - 20:14, 40:14, 41:1
**half** [1] - 50:12
**Hall** [2] - 4:8, 6:16
**hand** [1] - 17:9
**handful** [1] - 35:13
**handle** [6] - 16:13, 33:19, 34:2, 35:18, 51:21, 55:13
**handled** [1] - 50:20
**happy** [6] - 21:20, 22:2, 22:24, 23:16, 24:1, 44:8
**hard** [1] - 7:5
**HARKINS** [4] - 2:3, 47:16, 52:2, 53:7
**Harkins** [1] - 47:17
**head** [1] - 30:18
**health** [5] - 18:23, 52:2, 52:13, 53:15, 54:9
**Healthcare** [1] - 1:21
**hear** [5] - 3:9, 3:14, 17:12, 29:12, 35:15
**heard** [4] - 20:9, 30:25, 35:15, 46:5

**hearing** [2] - 28:8, 34:20
**hearings** [7] - 4:2, 7:16, 31:4, 31:6, 35:17, 42:24
**heavily** [1] - 6:17
**Hecht** [1] - 51:13
**heck** [1] - 29:5
**held** [2] - 3:1, 34:20
**helpful** [7] - 6:19, 9:19, 11:9, 16:6, 23:18, 23:19, 35:14
**highly** [1] - 16:10, 19:1
**Hilton** [3] - 13:17, 20:12, 20:18
**himself** [1] - 26:16
**hire** [1] - 55:3
**home** [2] - 26:14, 46:10
**honest** [1] - 33:4
**Honor** [159] - 3:5, 3:6, 3:23, 4:1, 4:5, 4:8, 4:14, 4:16, 4:19, 4:23, 5:1, 5:4, 5:22, 6:11, 6:12, 7:1, 7:2, 7:4, 7:6, 7:13, 7:16, 7:21, 7:23, 8:2, 8:3, 8:8, 8:9, 9:5, 9:7, 9:8, 9:12, 9:17, 9:20, 9:24, 10:11, 10:14, 10:22, 11:1, 11:11, 11:21, 12:11, 12:13, 12:20, 13:4, 13:24, 16:5, 16:23, 17:10, 17:14, 17:16, 17:24, 18:3, 18:19, 19:13, 19:16, 19:24, 20:4, 20:10, 20:22, 21:13, 21:20, 21:25, 22:19, 22:24, 23:2, 23:17, 25:1, 25:9, 25:22, 26:7, 27:21, 27:24, 28:8, 28:9, 29:1, 29:4, 29:6, 29:7, 29:10, 29:22, 30:4, 30:18, 31:3, 31:5, 32:3, 32:4, 33:5, 33:10, 33:15, 33:18, 34:1, 34:8, 34:17, 34:19, 34:23, 35:6, 35:17, 36:8, 36:9, 36:10, 36:11, 36:12, 36:13, 36:18, 36:20, 36:22, 37:2, 37:14, 37:21, 38:11, 38:25, 39:5, 39:8, 39:17, 40:4, 40:18, 40:25, 41:15, 41:18, 41:20, 42:6, 42:8, 42:20,

42:22, 43:1, 43:4, 43:7, 43:8, 43:13, 43:14, 43:15, 44:6, 44:7, 44:8, 44:18, 45:4, 45:25, 46:3, 46:21, 47:16, 48:3, 49:13, 49:16, 49:18, 49:20, 49:22, 50:8, 52:2, 52:24, 53:7, 54:23, 56:9, 56:16, 57:4, 57:7
**Honor's** [4] - 3:25, 5:24, 38:5, 46:8
**HONORABLE** [1] - 1:10
**Honorable** [2] - 2:8, 3:2
**hopefully** [1] - 56:11
**Hopkins** [1] - 15:17
**Horse** [5] - 4:15, 6:17, 9:24, 37:3, 37:5
**Horton** [1] - 20:13
**host** [4] - 16:4, 24:5, 24:9, 24:12
**hotel** [4] - 18:25, 21:17, 22:20, 26:14
**hours** [5] - 18:11, 18:13, 18:14, 18:22, 26:14
**house** [1] - 31:19
**Huahai** [1] - 1:22
**hundreds** [2] - 41:18

**I**

**idea** [3] - 7:3, 16:21, 40:7
**ignore** [1] - 42:14
**illustrate** [1] - 33:2
**illustrative** [1] - 13:6
**imagine** [1] - 46:17
**impedes** [1] - 12:1
**important** [6] - 12:19, 16:24, 33:6, 38:8, 40:18, 43:14
**impose** [2] - 7:9, 11:24
**imposed** [1] - 15:5
**impressed** [1] - 49:18
**impressive** [3] - 32:16, 33:4, 33:5
**improper** [1] - 5:2
**improperly** [1] - 6:15
**impurity** [1] - 40:10
**IN** [1] - 1:4
**Inc** [2] - 2:5, 2:5
**inclined** [2] - 36:12, 53:16
**including** [3] - 11:25, 28:12, 35:2
**incompetence** [1] -

37:10
**increased** [1] - 9:15
**incredible** [2] - 42:7, 42:10, 42:12, 42:16
**incurred** [1] - 12:1
**indicate** [1] - 51:9
**individual** [1] - 27:15
**Industries** [1] - 2:4
**inequitable** [1] - 53:14
**information** [3] - 26:12, 33:24, 36:18
**inherent** [2] - 4:11, 12:12
**initial** [2] - 40:14, 40:25
**instance** [3] - 9:14, 29:3, 53:8
**instructed** [1] - 38:9
**instructive** [1] - 16:7
**integrity** [3] - 51:24, 53:2, 53:3
**intelligently** [1] - 37:11
**intend** [2] - 29:9, 55:13
**intentional** [4] - 10:20, 11:4, 11:5, 36:24
**interactions** [1] - 30:20
**interesting** [2] - 37:2, 38:14
**interference** [2] - 10:20, 11:4
**interrogated** [1] - 25:15
**interrogating** [1] - 13:13
**interrogatories** [1] - 37:25
**interrupt** [1] - 31:11
**interrupted** [2] - 5:6, 5:12
**intervene** [1] - 45:25
**involved** [3] - 13:14, 31:15, 48:22
**isolated** [1] - 12:18
**issue** [22] - 4:22, 9:7, 10:8, 16:9, 17:9, 17:11, 20:12, 22:13, 30:9, 30:17, 34:11, 40:7, 47:3, 47:15, 48:1, 48:3, 50:5, 50:8, 52:13, 55:12, 55:14, 55:20
**issued** [1] - 10:3
**issues** [9] - 4:6, 4:21, 20:20, 27:25, 30:5, 30:7, 35:16, 45:13, 53:16
**issuing** [1] - 10:17

**itself** [1] - 39:7

**J**

**JERSEY** [1] - 1:1
**Jersey** [3] - 1:8, 1:14, 4:14
**jives** [1] - 34:15
**job** [2] - 30:19, 33:25
**John** [1] - 37:3
**Johns** [1] - 15:17
**joined** [3] - 20:7, 42:13
**Joint** [1] - 47:18
**JUDGE** [51] - 3:4, 3:7, 5:7, 5:13, 5:16, 5:20, 7:7, 7:25, 8:19, 10:23, 13:10, 14:3, 17:7, 17:12, 20:25, 22:2, 22:7, 23:19, 23:23, 24:2, 24:7, 24:11, 24:14, 24:18, 24:23, 25:4, 26:20, 31:11, 31:14, 32:7, 36:6, 39:2, 42:4, 44:11, 45:3, 45:6, 46:25, 47:3, 47:14, 49:12, 50:15, 50:22, 52:1, 53:15, 55:9, 55:14, 56:7, 56:14, 56:19, 57:5, 57:8
**judge** [15] - 3:22, 4:5, 5:1, 5:25, 6:2, 8:13, 8:24, 9:1, 9:5, 10:2, 10:3
**Judge** [12] - 4:17, 5:15, 6:5, 6:6, 8:25, 12:14, 24:10, 27:1, 29:24, 34:17, 35:12, 56:25
**judgment** [4] - 8:22, 9:8, 9:13, 11:19
**judicial** [1] - 4:13
**Judicial** [1] - 2:8
**jump** [1] - 33:24
**jumped** [3] - 32:5, 34:19, 34:23
**June** [1] - 40:16
**justice** [1] - 46:16

**K**

**KANNER** [1] - 1:15
**KATZ** [1] - 1:12
**keep** [10] - 4:18, 8:19, 14:16, 17:16, 18:4, 18:19, 26:23, 26:24, 46:6, 49:21
**Kelly** [3] - 24:4, 24:16, 24:19
**KELLY** [1] - 1:19

**kept** [2] - 40:11, 40:20
**key** [2] - 46:18
**kind** [8] - 8:15, 9:21, 10:14, 10:18, 10:21, 17:24, 36:1, 36:25, 43:24
**kinds** [1] - 19:13
**knowing** [1] - 29:15
**knowledge** [6] - 23:14, 25:24, 26:11, 37:16, 37:22
**knowledgeable** [3] - 17:5, 37:19, 38:1
**knows** [2] - 30:4, 40:18
**Kugler** [2] - 2:8, 56:25

**L**

**lack** [4] - 37:7, 37:10, 43:22, 53:2
**laid** [2] - 26:3, 47:20
**Lane** [2] - 6:17, 9:25, 13:17
**language** [2] - 14:22, 29:13
**largely** [1] - 47:19
**larry** [1] - 2:9
**Larry** [1] - 24:14
**last** [1] - 45:24
**late** [2] - 31:4, 56:2
**late-night** [1] - 31:4
**law** [13] - 10:13, 10:16, 11:6, 16:23, 26:16, 34:9, 35:1, 36:4, 36:21, 38:11, 38:25, 44:2, 57:1
**Law** [1] - 2:8
**lawyer** [5] - 20:5, 20:9, 20:19, 20:20, 50:1
**lawyer's** [1] - 50:25
**lawyers** [6] - 19:3, 19:7, 19:18, 20:11, 20:14, 38:5
**lay** [4] - 16:11, 27:8, 39:11
**laying** [1] - 14:22
**learned** [1] - 46:2
**least** [1] - 49:5
**leave** [2] - 51:17, 51:18
**leaving** [1] - 25:9, 46:20
**left** [4] - 8:12, 8:23, 35:8, 46:20
**legal** [2] - 26:17, 44:2
**legitimate** [2] - 48:19, 52:13
**lengthy** [1] - 5:21
**less** [6] - 18:9, 18:17, 19:25, 26:19, 42:14,

43:20
**lesson** [1] - 46:3
**letters** [1] - 47:5
**level** [6] - 16:19, 16:20, 46:12, 49:14, 50:19, 52:7
**levels** [1] - 14:7
**Li** [3] - 15:16, 15:17, 45:9
**LIABILITY** [1] - 1:4
**light** [1] - 4:20
**lightly** [1] - 27:12
**limine** [2] - 8:22, 9:13
**limited** [2] - 12:3, 14:1
**limits** [2] - 54:5
**Lin** [12] - 20:13, 20:16, 22:14, 22:16, 22:19, 23:25, 27:18, 30:12, 31:2, 38:17, 40:4, 40:8
**Linda** [10] - 20:13, 20:16, 22:14, 22:16, 23:25, 27:17, 30:12, 31:2, 40:4, 40:8
**line** [1] - 26:2
**lines** [1] - 33:22
**list** [3] - 31:8, 32:24, 40:10
**listed** [2] - 5:10, 40:13
**listen** [1] - 14:13
**litany** [2] - 27:22, 33:10
**litigant** [2] - 4:12, 12:12
**LITIGATION** [1] - 1:4
**litigation** [2] - 25:17, 26:15
**live** [1] - 30:9
**LLC** [4] - 1:12, 1:15, 1:21, 2:5
**LLP** [2] - 1:18, 2:2
**lock** [1] - 56:1
**logical** [1] - 15:6
**logistical** [1] - 35:16
**logistics** [1] - 56:4
**look** [16] - 7:21, 9:24, 9:25, 10:1, 12:13, 13:15, 14:10, 16:9, 21:21, 23:8, 25:21, 32:13, 38:11, 38:18, 41:5, 43:16
**looked** [2] - 20:16, 48:15
**looking** [9] - 11:22, 12:18, 14:8, 21:2, 21:4, 21:7, 22:10, 25:12, 51:14
**LORETTA** [1] - 2:8
**loses** [1] - 50:20
**lost** [1] - 46:18

**loud** [1] - 24:22
**Louisiana** [1] - 1:17
**Ltd** [2] - 1:22, 2:4

## M

**Macao** [2] - 22:20, 51:16
**MacStravic** [1] - 2:9
**macStravic** [1] - 24:7
**Magistrate** [1] - 8:25
**magistrate** [5] - 4:5, 5:25, 6:1, 6:5, 10:3
**magnified** [1] - 19:12
**major** [2] - 15:14, 33:1
**man** [1] - 34:12
**manage** [1] - 34:18
**manner** [1] - 54:6
**manufacturers** [1] - 16:16
**manufacturing** [1] - 19:2
**March** [1] - 42:24
**massive** [1] - 17:17
**MASTER** [1] - 1:10
**Master** [7] - 3:2, 8:4, 9:2, 9:3, 9:5, 9:17, 40:11
**Master's** [1] - 8:17
**materials** [1] - 56:12
**math** [1] - 18:8
**matter** [6] - 5:3, 8:23, 8:25, 47:1, 56:19, 57:13
**matters** [4] - 7:10, 8:24, 12:7, 16:13
**MAZIE** [1] - 1:12
**MDL** [2] - 8:13, 45:2
**mean** [7] - 14:20, 21:11, 30:15, 32:3, 33:21, 46:16, 55:6
**meaningless** [1] - 38:21
**means** [2] - 34:3, 41:17
**meant** [1] - 32:7
**mechanical** [1] - 1:25
**medical** [1] - 48:19
**meet** [3] - 50:1, 56:4, 56:11
**mental** [1] - 43:6
**mention** [3] - 32:7, 32:8, 32:9
**mere** [1] - 37:8
**messages** [1] - 32:3
**met** [1] - 11:7
**microphone** [1] - 3:8
**middle** [1] - 32:4
**might** [4] - 24:10, 28:18, 28:22, 30:12
**Min** [3] - 15:16, 15:17,

45:9
**mind** [5] - 17:16, 18:4, 18:19, 28:18, 28:23
**Minnesota** [2] - 50:3, 50:4
**minute** [1] - 31:12
**minutes** [1] - 18:12
**mirrors** [1] - 43:21
**misconduct** [5] - 4:12, 11:5, 12:12, 28:13, 39:12
**mishaps** [1] - 19:9
**missing** [1] - 21:25
**misunderstanding** [2] - 36:1, 51:25
**Mitchell** [1] - 1:7
**Mobil** [2] - 4:19, 10:7
**mode** [1] - 4:7
**monthly** [1] - 3:11
**months** [1] - 20:8
**MORRIS** [1] - 1:18
**most** [11] - 7:17, 13:23, 15:21, 15:24, 18:1, 20:23, 37:19, 38:8, 44:1, 48:7
**motion** [20] - 3:9, 3:15, 3:19, 8:22, 9:13, 10:25, 13:23, 17:16, 20:7, 20:16, 20:21, 29:3, 32:12, 32:21, 36:22, 38:14, 39:1, 42:18, 44:6
**MOTION** [1] - 1:5
**motions** [1] - 11:16
**movant** [1] - 3:14
**move** [1] - 14:23, 39:3
**moving** [2] - 28:9, 33:7
**MR** [58] - 3:5, 3:6, 3:23, 5:8, 5:15, 5:17, 5:21, 7:11, 8:2, 9:4, 11:1, 13:15, 14:4, 17:8, 17:14, 21:13, 22:4, 22:9, 22:12, 22:14, 22:15, 22:16, 22:24, 23:21, 23:24, 24:3, 24:10, 24:16, 24:19, 24:25, 25:5, 25:8, 26:23, 31:13, 32:1, 32:22, 36:8, 39:5, 42:6, 44:18, 45:4, 45:7, 47:2, 47:10, 47:16, 49:13, 50:16, 51:2, 52:2, 52:23, 53:7, 54:23, 55:11, 56:9, 56:16, 56:17, 57:4, 57:7
**MS** [5] - 24:5, 24:9, 24:13, 24:21, 55:19
**multiple** [6] - 4:4,

12:20, 27:4, 32:25, 39:19, 40:23
**must** [2] - 20:1, 46:1
**mute** [2] - 3:8, 26:23
**muted** [4] - 23:21, 44:12, 44:13, 55:18

## N

**nature** [1] - 19:1
**NDMA** [1] - 40:17
**NE** [1] - 2:3
**necessary** [4] - 4:9, 11:6, 12:13, 38:6
**need** [17] - 14:15, 15:22, 24:16, 27:14, 34:3, 34:4, 38:1, 39:12, 39:15, 44:7, 45:9, 45:20, 45:23, 46:16, 51:10, 52:7, 56:12
**needed** [2] - 33:24, 36:13
**needs** [8] - 17:16, 18:3, 27:21, 35:3, 42:1, 46:14, 52:5, 57:3
**Neurontin** [4] - 6:4, 6:16, 29:25, 35:2
**never** [6] - 21:23, 29:7, 31:8, 39:10, 40:19, 41:13
**new** [1] - 55:20
**NEW** [1] - 1:1
**New** [4] - 1:8, 1:14, 1:17, 4:14
**next** [7] - 14:23, 24:1, 31:5, 31:18, 31:22, 39:4, 55:22
**night** [4] - 19:8, 31:4, 32:4, 34:20
**nine** [1] - 55:24
**nitrosamine** [1] - 40:17
**nitrosamines** [2] - 9:14, 15:21
**nobody** [7] - 31:6, 31:7, 40:12, 40:21, 41:10, 47:11, 50:20
**nobody's** [1] - 41:23
**none** [9] - 9:23, 10:22, 19:15, 19:18, 20:6, 20:7, 34:25, 37:14, 42:13
**nonetheless** [1] - 42:14
**nonresponsive** [2] - 15:4, 46:13
**nonsubstantive** [1] - 46:13
**normal** [2] - 3:7, 17:21

**note** [1] - 53:7
**noted** [2] - 47:22, 48:25
**nothing** [4] - 20:2, 34:12, 40:5, 56:16
**notice** [1] - 54:3
**notion** [1] - 20:22
**nowhere** [2] - 38:9, 38:10
**number** [2] - 14:9, 39:7
**NUMBER** [1] - 1:3
**numbers** [2] - 32:16, 49:4
**numerical** [1] - 54:5

## O

**object** [3] - 14:10, 14:12, 21:6
**objected** [2] - 6:14, 48:2
**objecting** [2] - 11:16, 26:2
**objection** [8] - 14:11, 21:7, 23:20, 38:6, 38:7, 39:8, 39:10, 41:7
**objections** [11] - 14:9, 15:3, 17:21, 26:1, 34:6, 38:3, 39:17, 39:20, 49:7
**objectively** [2] - 14:10, 41:10
**obligation** [2] - 17:1, 17:4
**obstruct** [2] - 38:20, 41:22
**obstructed** [1] - 20:10
**obstructing** [2] - 33:25, 43:2
**obstruction** [5] - 4:24, 11:23, 29:4, 42:1, 44:4
**obstructionist** [1] - 19:14
**obstructive** [3] - 6:13, 13:1, 41:14
**obtain** [1] - 44:23
**obtained** [1] - 14:2
**obvious** [2] - 28:19, 37:9
**obviously** [9] - 11:13, 12:15, 13:7, 15:10, 15:15, 17:6, 30:9, 31:18, 41:9
**occur** [1] - 54:4
**occurred** [2] - 13:24, 54:12
**OF** [1] - 1:1
**offensive** [1] - 10:5

**office** [2] - 31:19, 54:3
**Official** [1] - 1:23
**often** [1] - 36:15
**once** [1] - 29:6
**one** [47] - 3:17, 7:8, 7:14, 7:16, 7:17, 9:8, 12:6, 13:3, 13:8, 13:16, 13:17, 14:9, 14:21, 15:1, 17:17, 18:9, 18:18, 19:25, 20:15, 20:18, 22:4, 22:8, 22:12, 22:15, 24:1, 24:24, 25:9, 25:10, 25:11, 26:9, 26:19, 30:25, 31:8, 31:14, 32:12, 32:13, 39:7, 40:1, 40:2, 42:15, 43:13, 45:8, 49:21, 54:1, 54:24, 56:19
**ongoing** [2] - 5:3, 31:16
**open** [2] - 51:17, 51:18
**opinion** [2] - 16:11, 47:3
**opportunity** [3] - 35:19, 42:21, 44:16
**opposing** [1] - 47:24
**opposite** [1] - 50:23
**option** [1] - 54:7
**oral** [1] - 3:12
**order** [5] - 5:17, 12:7, 34:18, 39:11, 55:19
**ordered** [2] - 16:1, 17:1
**orderly** [1] - 29:6
**orders** [1] - 4:8
**organic** [1] - 15:17
**Orleans** [1] - 1:17
**otherwise** [4] - 15:7, 27:11, 39:10, 41:21
**outright** [1] - 38:10
**outside** [1] - 31:1
**over-the-top** [2] - 10:5, 10:9
**overarching** [1] - 17:15
**oversight** [1] - 37:8
**overview** [1] - 17:6
**own** [2] - 16:22, 23:7

**P**

**p.m** [4] - 1:9, 3:3, 19:8, 57:9
**Page** [3] - 39:14, 40:14, 40:25
**pages** [8] - 15:15, 18:4, 18:5, 18:7, 18:16, 20:18, 26:18,
42:16
**Pages** [2] - 9:25, 10:1
**paid** [1] - 56:25
**pandemic** [2] - 18:23, 19:19
**papers** [1] - 26:24
**paragraph** [2] - 14:24, 21:10
**parameters** [1] - 52:10
**Parkway** [1] - 1:13
**part** [3] - 13:21, 32:17, 39:4
**participant's** [1] - 24:5
**parties** [5] - 3:10, 10:16, 18:4, 48:4, 48:6
**party** [8] - 12:1, 12:9, 17:18, 18:11, 19:24, 37:15, 44:3, 48:12
**pass** [1] - 29:20
**passages** [1] - 43:19
**pattern** [1] - 13:1
**Pedano** [2] - 1:23, 57:15
**pending** [1] - 20:8
**Peng** [11] - 4:3, 14:21, 21:1, 22:25, 23:16, 23:22, 27:17, 30:24, 31:4, 34:19, 40:5
**Pennsylvania** [1] - 1:20
**people** [7] - 16:15, 25:15, 28:1, 49:19, 50:10, 50:12, 50:14
**per** [1] - 34:9
**percent** [14] - 18:9, 18:17, 18:18, 19:22, 19:25, 20:1, 20:2, 26:19, 42:8, 42:9, 42:15, 43:21
**perfect** [2] - 40:9
**person** [29] - 12:1, 13:22, 15:25, 21:22, 30:18, 36:5, 47:25, 48:2, 48:5, 48:8, 48:9, 48:14, 48:20, 48:23, 49:3, 49:10, 52:8, 52:12, 52:15, 52:16, 52:18, 52:25, 53:9, 53:10, 53:12, 53:17, 53:19, 53:20, 53:25
**personal** [1] - 54:14
**persons** [1] - 13:12
**perspective** [4] - 14:15, 14:16, 15:13, 15:24
**pervasive** [5] - 10:8, 38:16, 38:18, 42:22, 44:4
**pervasively** [2] - 38:13, 38:20
**Ph.D** [1] - 15:17
**Pharma** [1] - 2:5
**pharmaceutical** [3] - 16:8, 16:16, 19:2
**Pharmaceutical** [1] - 2:4
**Pharmaceuticals** [3] - 1:21, 1:22, 2:5
**phase** [1] - 29:9
**Philadelphia** [1] - 1:20
**phone** [2] - 31:21, 51:14
**pick** [2] - 5:7, 15:9
**picked** [2] - 22:17, 38:15
**picking** [2] - 24:15, 33:3
**picks** [1] - 25:1
**pieced** [1] - 43:16
**pieces** [1] - 43:20
**Piedmont** [1] - 2:3
**place** [7] - 4:3, 25:15, 29:12, 30:12, 42:7, 49:5, 52:22
**placed** [1] - 17:11
**places** [1] - 27:22
**plain** [1] - 46:3
**Plaintiff** [1] - 55:21
**plaintiff** [3] - 14:14, 43:5, 47:12
**plaintiffs** [26] - 3:10, 3:14, 3:19, 9:11, 9:17, 10:19, 17:25, 18:6, 18:8, 18:16, 19:22, 20:3, 26:18, 37:6, 37:15, 38:14, 38:22, 44:14, 49:11, 49:23, 53:13, 55:6, 55:20, 56:1, 56:11, 56:18
**Plaintiffs** [2] - 1:14, 1:17
**plaintiffs'** [17] - 20:9, 20:15, 37:23, 47:22, 48:1, 48:11, 48:22, 49:2, 49:7, 50:3, 50:16, 51:4, 52:11, 52:22, 53:11, 53:20, 55:5
**Plaintiffs'** [1] - 55:15
**plan** [2] - 14:18, 55:24
**play** [6] - 16:10, 21:20, 23:22, 24:1, 24:4, 24:20
**played** [3] - 22:23, 23:24, 25:7
**playing** [2] - 49:14, 50:19
**plenty** [1] - 4:18
**plus** [1] - 42:9
**point** [21] - 9:10, 13:17, 14:21, 17:20, 17:23, 18:3, 28:8, 31:5, 31:9, 31:10, 32:23, 35:1, 35:14, 36:11, 40:12, 40:20, 50:6, 50:23, 53:22, 55:3
**point-by-point** [1] - 36:11
**pointed** [2] - 15:9, 40:2
**points** [3] - 17:15, 35:1, 44:15
**police** [2] - 4:12, 12:12
**popped** [1] - 55:17
**popular** [1] - 46:2
**portions** [1] - 43:17
**position** [10] - 6:6, 7:22, 9:9, 41:2, 42:11, 42:17, 47:20, 52:4, 52:6, 52:21
**positions** [2] - 16:18, 41:5
**possible** [3] - 13:15, 19:17, 31:24
**possibly** [2] - 29:11
**post** [1] - 4:12
**post-sanctions** [1] - 4:12
**potential** [1] - 12:6
**potentially** [1] - 11:23
**power** [2] - 4:11, 12:12
**practically** [1] - 39:18
**precautions** [1] - 48:20
**precision** [1] - 4:8
**predisposition** [1] - 11:17
**preference** [3] - 52:9, 52:12, 52:21
**prejudice** [3] - 46:21, 49:25, 50:5
**prejudiced** [2] - 50:22, 51:1
**preparation** [1] - 37:7
**prepared** [2] - 37:19, 55:16
**presence** [1] - 40:17
**PRESENT** [1] - 2:7
**present** [11] - 47:7, 47:24, 47:25, 52:5, 52:7, 52:8, 52:18, 54:1, 54:5, 54:8, 54:18
**presented** [1] - 8:21
**preserve** [1] - 38:7
**pretty** [3] - 12:21, 22:17, 32:24
**prevailed** [1] - 48:24
**prevailing** [1] - 12:9
**prevent** [3] - 4:9, 45:22, 48:13
**prevented** [1] - 53:10
**Prinston** [1] - 1:21
**problem** [4] - 30:15, 31:15, 32:19, 33:1
**problems** [2] - 27:22, 34:22
**Procedure** [1] - 29:18
**proceed** [4] - 3:4, 29:6, 46:23, 54:6
**proceeding** [3] - 28:15, 32:18, 53:2
**proceedings** [2] - 57:9, 57:13
**Proceedings** [1] - 1:25
**PROCEEDINGS** [1] - 3:1
**process** [8] - 4:10, 4:13, 28:3, 44:21, 45:1, 49:6, 53:6, 53:8
**produced** [1] - 1:25
**product** [2] - 31:8, 40:17
**PRODUCTS** [1] - 1:4
**products** [1] - 16:17
**promise** [1] - 13:24
**prongs** [1] - 10:9
**proper** [4] - 17:21, 26:3, 39:8, 39:10
**protect** [1] - 53:1
**protocol** [5] - 3:7, 29:14, 29:15, 29:17, 36:4
**prove** [1] - 11:4
**provide** [10] - 6:19, 9:21, 17:1, 18:25, 19:20, 23:13, 24:8, 38:5, 44:9
**provided** [4] - 4:19, 16:20, 17:18, 17:19, 18:4, 18:7, 18:11, 18:13, 18:14, 19:21, 36:10
**provides** [2] - 21:4, 26:12
**providing** [5] - 21:11, 23:8, 23:13, 36:25, 46:13
**pull** [4] - 22:3, 24:10, 24:11, 47:5
**pulling** [1] - 26:24
**purposes** [5] - 8:11, 9:12, 9:18, 12:8,

47:21
**push** [2] - 15:12, 33:5
**put** [5] - 21:18, 28:1, 37:12, 41:18, 52:11
**puts** [1] - 54:9

## Q

**quarantining** [1] - 18:23
**questioners** [1] - 13:17
**questioning** [9] - 13:17, 13:25, 20:11, 20:13, 20:14, 25:2, 25:6, 30:25, 33:22
**questions** [34] - 11:12, 12:25, 13:2, 14:6, 15:21, 15:23, 16:4, 16:12, 17:3, 23:15, 26:5, 26:10, 26:15, 26:17, 28:4, 28:5, 30:16, 30:23, 33:6, 33:25, 35:13, 35:15, 35:18, 36:15, 37:1, 37:11, 37:16, 40:1, 40:7, 40:8, 44:23, 45:11, 51:15, 51:16
**queued** [2] - 22:5, 22:7
**quoting** [3] - 4:7, 21:2, 28:11

## R

**raise** [3] - 56:20, 56:25
**raised** [3] - 20:20, 27:25, 48:3
**raises** [1] - 9:7
**rather** [1] - 38:4
**rattle** [1] - 39:6
**RE** [1] - 1:4
**reach** [2] - 14:19, 57:2
**reached** [1] - 56:2
**read** [1] - 26:6
**reads** [1] - 16:2
**ready** [4] - 3:4, 5:13, 17:8, 35:9
**real** [2] - 12:17, 23:8
**realize** [2] - 23:21, 50:8
**really** [25] - 5:3, 8:6, 14:4, 17:11, 18:1, 18:3, 18:21, 20:21, 21:16, 23:11, 25:16, 25:18, 27:15, 27:20, 29:1, 29:21, 29:22, 29:25, 31:10, 40:2, 41:17, 42:7, 42:22, 43:13
**rearguing** [1] - 55:11

**reason** [4] - 7:13, 29:2, 31:17, 46:22
**reasonable** [6] - 11:25, 12:17, 41:11, 48:20, 50:18, 51:15
**rebuttal** [2] - 39:3, 42:5
**receive** [3] - 31:16, 31:17, 49:7
**reckoning** [1] - 33:19
**recognized** [3] - 4:2, 34:25, 35:17
**recollection** [1] - 53:23
**recommendation** [1] - 9:2
**record** [8] - 3:24, 17:17, 36:21, 41:6, 49:20, 54:24, 55:12, 57:13
**recorded** [1] - 1:25
**redepose** [1] - 7:18
**refer** [2] - 8:25, 9:1
**reference** [1] - 21:1
**referenced** [1] - 11:21
**referred** [2] - 9:19, 10:7
**referring** [4] - 8:19, 19:13, 19:15, 25:3
**refers** [1] - 8:24
**refusal** [3] - 37:11, 40:13, 41:14
**refuse** [2] - 38:10, 40:8
**refused** [5] - 16:3, 40:24, 43:5, 43:6, 45:10
**regardless** [3] - 47:24, 49:10, 52:6
**regular** [1] - 19:10
**regulators** [1] - 15:19
**regulatory** [2] - 30:19, 30:20
**reiterate** [2] - 5:11, 47:19
**rejects** [1] - 7:21
**relating** [1] - 26:1
**reliance** [3] - 33:16, 33:17, 35:6
**relied** [2] - 11:19, 46:7
**relief** [14] - 3:19, 5:4, 5:9, 5:23, 7:11, 7:21, 8:6, 9:21, 14:7, 20:22, 20:23, 41:20, 46:21, 46:24
**relies** [1] - 6:17
**rely** [1] - 37:6
**relying** [1] - 45:17
**remarked** [1] - 31:6
**remember** [5] - 5:10,

25:14, 30:17, 49:16, 49:17
**remembering** [1] - 31:3
**REMOTE** [1] - 1:6
**remote** [2] - 3:1, 53:22
**remotely** [9] - 48:1, 48:6, 48:11, 49:2, 49:11, 50:25, 51:4, 54:1, 54:21
**rendering** [1] - 38:21
**repeated** [6] - 10:5, 10:8, 27:4, 37:9, 39:18, 44:4
**repeatedly** [2] - 38:12, 38:20
**reply** [4] - 7:23, 16:24, 20:8, 39:13
**report** [1] - 9:2
**Reporter** [1] - 1:23
**reporter** [1] - 19:4
**Reporter/ Transcriber** [1] - 57:15
**reporters** [1] - 34:23
**representative** [1] - 37:17
**represented** [1] - 35:25
**representing** [1] - 55:6
**request** [3] - 11:20, 23:22, 56:3
**requested** [6] - 3:19, 5:9, 5:23, 7:12, 41:21, 53:9
**requests** [4] - 44:15, 44:20, 44:25, 45:21
**require** [4] - 18:13, 18:15, 44:1, 44:4
**required** [4] - 36:21, 37:22, 39:15, 39:25
**reserved** [2] - 3:21, 18:1
**resolve** [2] - 32:12, 48:4
**resolved** [1] - 32:10
**resort** [1] - 31:20
**respect** [5] - 8:5, 8:7, 9:7, 17:24, 52:21
**respond** [3] - 17:10, 32:23, 44:17
**responding** [2] - 11:2, 21:12
**response** [5] - 32:6, 36:11, 42:1, 52:1, 56:3
**responses** [4] - 15:19, 32:22, 34:5, 36:14
**responsible** [1] -

16:17
**responsive** [8] - 15:8, 15:9, 17:1, 32:13, 32:14, 33:7, 34:6, 41:10
**rest** [5] - 29:10, 33:24, 35:5, 42:15, 42:16
**Ret** [1] - 3:2
**RET** [1] - 1:10
**retained** [1] - 15:18
**returned** [1] - 18:25
**review** [2] - 37:3
**revised** [1] - 40:11
**rhetoric** [1] - 42:18
**risk** [6] - 9:15, 15:20, 16:19, 16:20, 51:20, 54:9
**risking** [1] - 18:23
**risks** [1] - 16:18
**RMR** [1] - 57:15
**Road** [1] - 2:3
**Robert** [1] - 2:8
**role** [1] - 8:4
**rolling** [1] - 55:25
**room** [22] - 18:25, 19:11, 21:17, 22:20, 22:21, 26:14, 29:13, 47:12, 47:13, 49:19, 49:23, 49:24, 49:25, 50:1, 51:6, 51:13, 51:22, 52:5, 53:1, 55:1, 55:6, 55:8
**roost** [1] - 46:10
**Roseland** [1] - 1:14
**RPR** [1] - 57:15
**Rule** [3] - 6:18, 11:22, 12:5
**rule** [5] - 8:9, 9:12, 11:15, 15:11, 39:23
**ruled** [1] - 49:16
**Rules** [1] - 29:17
**rules** [9] - 6:25, 11:11, 29:16, 34:9, 36:2, 37:13, 38:20, 41:7, 46:4
**ruling** [10] - 8:8, 8:12, 8:15, 9:9, 29:7, 34:15, 38:5, 46:8, 49:21, 54:17
**rulings** [4] - 6:7, 7:2, 8:5, 34:4
**rustling** [1] - 26:24

## S

**safety** [1] - 18:23
**sample** [1] - 32:19
**sanction** [12] - 6:12, 7:9, 10:18, 11:4, 11:23, 11:25, 12:4, 36:25, 39:23, 39:24,

41:24
**sanctionable** [1] - 17:3
**SANCTIONS** [1] - 1:5
**sanctions** [18] - 3:10, 3:15, 3:20, 4:12, 4:23, 6:2, 6:7, 6:23, 7:4, 7:15, 10:4, 11:10, 11:20, 12:6, 17:24, 34:10, 35:5, 41:21
**sat** [2] - 18:25, 27:24
**satisfying** [1] - 38:22
**saw** [2] - 27:17, 40:4
**Schneider** [1] - 34:18
**Schwartz** [2] - 4:17, 6:5, 6:6
**Schwartz's** [2] - 12:14, 29:25
**scientific** [1] - 19:3
**scope** [1] - 27:9
**screen** [10] - 21:9, 21:21, 22:3, 22:11, 24:6, 24:8, 24:20, 26:21, 26:25, 55:17
**screens** [2] - 21:17, 51:14
**second** [3] - 17:20, 32:17, 32:23
**section** [2] - 21:4, 21:10
**see** [14] - 10:1, 14:23, 21:14, 22:2, 22:6, 22:11, 23:3, 23:4, 23:17, 28:4, 32:13, 54:6, 55:2, 55:17
**seek** [2] - 33:2, 39:22
**seeking** [8] - 8:7, 8:8, 8:9, 17:25, 33:9, 37:17, 49:15
**seem** [4] - 20:3, 21:12, 40:2, 41:19
**selecting** [1] - 33:3
**semantics** [1] - 11:9
**semblance** [1] - 41:8
**sending** [1] - 32:3
**sense** [5] - 7:17, 15:6, 21:15, 34:3, 39:19
**sensitive** [3] - 53:15, 53:16, 54:21
**sentence** [1] - 25:20
**separate** [2] - 56:23
**September** [2] - 1:8, 57:17
**series** [1] - 45:11
**serious** [1] - 40:7
**serve** [1] - 44:15
**served** [1] - 54:3
**sessions** [2] - 18:12, 23:13

**set** [5] - 22:20, 38:14, 44:9, 54:5, 54:6
**SETH** [1] - 1:19
**Seth** [1] - 56:9
**setting** [1] - 11:11
**seven** [2] - 49:5, 55:24
**several** [1] - 56:24
**severe** [1] - 41:24
**share** [4] - 22:3, 22:11, 22:24, 23:16
**shared** [3] - 20:11, 20:13
**sharing** [3] - 24:6, 24:8, 26:21
**Sheets** [2] - 55:15, 55:21
**shortly** [1] - 10:21
**shot** [1] - 24:24
**show** [11] - 21:13, 21:15, 22:1, 22:4, 22:5, 22:8, 26:9, 37:15, 39:12, 39:15, 40:19
**showing** [2] - 6:22, 30:2
**shown** [1] - 13:2
**sick** [1] - 50:13
**side** [5] - 47:11, 49:21, 54:19, 55:2, 56:8
**signal** [1] - 51:21
**signaling** [1] - 51:8
**similar** [3] - 16:8, 51:15, 52:15
**similarly** [2] - 48:1, 49:6
**simple** [3] - 3:25, 30:16, 51:24
**simply** [2] - 44:22, 49:15
**single** [7] - 17:9, 20:9, 29:3, 37:22, 41:6, 41:7, 42:21
**sits** [3] - 28:17, 49:25
**sitting** [5] - 19:11, 21:16, 22:20, 23:4, 31:18
**situation** [4] - 6:18, 16:8, 35:8, 48:7
**six** [2] - 42:24, 56:24
**size** [1] - 32:19
**SLATER** [34] - 1:12, 1:13, 3:5, 3:23, 5:8, 5:15, 5:17, 5:21, 7:11, 11:1, 13:15, 14:4, 17:8, 22:12, 22:15, 23:21, 23:24, 26:23, 31:13, 32:1, 32:22, 39:5, 45:4, 45:7, 47:2, 47:10, 49:13, 50:16, 51:2,

52:23, 54:23, 55:11, 56:17, 57:7
**Slater** [37] - 3:16, 3:23, 5:13, 7:8, 8:6, 9:19, 9:22, 10:7, 10:24, 20:5, 20:12, 20:20, 20:21, 21:1, 21:18, 21:25, 23:6, 23:20, 25:19, 25:21, 26:8, 26:20, 26:22, 36:25, 37:4, 39:3, 42:4, 42:11, 42:20, 42:25, 43:9, 43:22, 44:15, 44:21, 49:12, 50:22, 54:11
**Slater's** [5] - 20:21, 21:2, 23:15, 36:14, 54:3
**sleeping** [1] - 6:22
**small** [1] - 32:17
**SMITH** [1] - 2:8
**SmithKline** [1] - 16:7
**smoke** [1] - 43:21
**smooth** [1] - 51:24
**smoothly** [2] - 34:23, 50:4
**Solco** [1] - 1:21
**solid** [2] - 5:4, 39:20
**someone** [2] - 45:19, 55:7
**sometimes** [2] - 31:17, 31:22
**soon** [1] - 56:5
**sorry** [4] - 23:21, 26:23, 55:9, 55:19
**sort** [6] - 10:9, 17:6, 33:11, 34:15, 51:21, 56:11
**sorts** [1] - 35:16
**sound** [1] - 16:14
**source** [1] - 7:2
**sources** [1] - 4:4
**South** [1] - 1:20
**sparring** [1] - 25:10
**speaking** [7] - 3:8, 6:14, 29:13, 38:3, 39:16, 39:20, 53:24
**speaks** [2] - 21:22, 39:7
**Spear** [1] - 39:14
**SPECIAL** [1] - 1:10
**Special** [7] - 3:2, 8:4, 8:16, 9:2, 9:3, 9:5, 9:17
**specific** [13] - 8:2, 8:6, 8:15, 9:6, 9:10, 10:12, 11:20, 13:4, 14:22, 25:20, 25:22, 48:16
**specifically** [4] - 6:18,

12:9, 39:23, 47:22
**specifics** [1] - 13:5
**speculating** [1] - 28:17
**speculation** [1] - 28:22
**speeches** [1] - 38:4
**spent** [1] - 15:14
**stage** [1] - 41:19
**stake** [1] - 46:12
**stand** [1] - 28:10
**standard** [9] - 10:17, 10:20, 36:23, 36:24, 38:22, 38:23, 43:24, 48:24, 49:8
**standard's** [1] - 11:7
**start** [9] - 3:15, 5:18, 11:1, 13:8, 25:23, 27:3, 27:21, 42:7, 50:7
**started** [1] - 33:23
**starting** [2] - 19:6, 19:7
**starts** [1] - 25:3
**statement** [2] - 46:14, 47:20
**statements** [1] - 56:23
**STATES** [1] - 1:1
**station** [1] - 46:20
**statistics** [2] - 33:4, 33:20
**STATUS** [1] - 1:5
**stenography** [1] - 1:25
**step** [1] - 41:24
**Steve** [1] - 47:17
**STEVEN** [1] - 2:3
**stick** [1] - 14:18
**still** [6] - 28:9, 43:20, 52:20, 54:25, 55:2, 55:17
**stop** [2] - 26:21, 27:21
**stopped** [2] - 33:17, 45:25
**straightforward** [3] - 14:11, 22:17, 28:6
**straw** [1] - 34:12
**Street** [2] - 1:16, 1:20
**Streets** [1] - 1:7
**stretch** [1] - 14:19
**stricken** [1] - 34:7
**strident** [1] - 41:2
**strike** [4] - 15:3, 28:9, 33:17
**strong** [3] - 30:7, 42:1, 46:14
**struggling** [1] - 53:23
**submission** [2] - 49:1, 49:4
**submit** [2] - 41:14,

56:23
**submitted** [2] - 32:24, 48:15
**Subsection** [1] - 12:5
**substantive** [1] - 23:8
**subtly** [1] - 51:19
**succinct** [1] - 38:5
**suggest** [2] - 31:20, 46:11
**suggestion** [1] - 16:25
**Suite** [1] - 2:3
**summary** [4] - 8:21, 9:8, 9:12, 11:19
**support** [1] - 44:2
**suppose** [2] - 9:6, 35:11
**supposed** [2] - 25:13, 41:17
**surprise** [1] - 13:22
**suspicion** [1] - 51:18
**sword** [1] - 37:25
**system** [2] - 26:17, 46:16
**systemic** [4] - 12:18, 13:1, 18:9, 32:19

## T

**tactics** [1] - 13:24
**talks** [1] - 6:18
**tasks** [1] - 13:20
**team** [1] - 13:21
**technical** [5] - 16:9, 16:10, 16:13, 19:1, 19:9
**technological** [1] - 34:22
**technology** [1] - 31:21
**temperature** [1] - 11:10
**ten** [2] - 18:22, 34:20
**terminology** [1] - 19:3
**terms** [5] - 16:11, 30:7, 36:20, 46:3, 53:23
**tested** [1] - 54:13
**testify** [3] - 16:1, 29:19, 43:6
**testimony** [56] - 6:20, 8:7, 8:20, 11:11, 11:15, 11:17, 13:23, 14:2, 14:5, 14:20, 15:2, 15:4, 15:16, 17:1, 17:18, 18:5, 18:7, 18:10, 18:12, 18:17, 19:1, 19:20, 19:23, 20:6, 20:18, 23:11, 23:22, 25:21, 26:2, 26:4, 26:18, 27:17, 27:20, 27:21, 28:9, 30:12, 30:14,

33:16, 33:21, 36:16, 39:16, 39:22, 40:9, 40:15, 42:1, 42:8, 42:9, 42:10, 42:13, 42:16, 43:17, 43:19, 45:8, 46:13, 46:18
**testimony's** [1] - 33:21
**Teva** [3] - 2:4, 2:5, 47:17
**text** [2] - 31:16, 31:25
**texted** [1] - 31:15
**thankful** [1] - 23:24
**THE** [2] - 1:1, 1:10
**theme** [1] - 27:3
**themes** [1] - 4:21
**themselves** [1] - 36:17
**therefore** [1] - 40:3
**they've** [4] - 35:15, 38:15, 43:16, 56:3
**thinking** [1] - 30:14
**thinks** [1] - 29:1
**third** [1] - 17:23
**Third** [3] - 30:1, 36:21, 39:14
**THOMAS** [1] - 1:10
**Thomas** [1] - 3:2
**three** [3] - 26:13, 49:1, 51:4
**throughout** [4] - 13:25, 26:4, 33:1, 44:19
**throw** [1] - 33:21
**throw-away** [1] - 33:21
**tie** [1] - 15:4
**tie-in** [1] - 15:4
**timely** [1] - 4:20
**today** [4] - 42:22, 47:6, 50:12, 56:15
**together** [1] - 43:16
**ton** [1] - 29:8
**took** [7] - 4:2, 16:18, 33:15, 33:16, 39:8, 41:1, 49:5
**top** [1] - 10:5, 10:9
**topic** [6] - 16:1, 16:2, 37:19, 37:24, 38:1, 40:3
**topics** [4] - 17:2, 27:10, 31:1, 37:24
**totals** [1] - 18:6
**tough** [2] - 33:12, 34:16
**toxicologist** [4] - 15:18, 15:22, 45:9, 45:10
**train** [1] - 46:20
**transcript** [3] - 1:25, 21:3, 57:12

**transcription** [1] - 1:25
**translation** [4] - 18:14, 18:15, 19:9, 30:17
**translators** [1] - 30:6
**Traurig** [1] - 47:17
**TRAURIG** [1] - 2:2
**travel** [1] - 50:17
**traveled** [3] - 18:21, 19:18, 22:19
**trial** [11] - 3:22, 6:8, 6:10, 8:12, 8:13, 8:14, 8:20, 8:23, 9:13, 11:18, 38:7
**tried** [1] - 15:9
**truth** [2] - 25:14, 25:18
**try** [15] - 5:7, 5:8, 13:3, 24:23, 27:2, 27:3, 28:13, 30:13, 31:23, 32:14, 32:18, 39:6, 44:23, 45:15, 56:11
**trying** [14] - 6:9, 14:4, 17:6, 20:21, 21:22, 21:23, 21:24, 23:5, 25:18, 26:10, 26:11, 27:18, 29:10, 53:15
**turn** [2] - 24:16, 44:21
**turned** [1] - 24:22
**two** [9] - 10:9, 20:11, 20:12, 21:17, 26:9, 26:11, 32:22, 51:3
**types** [2] - 6:23, 12:25

## U

**U.S** [4] - 1:7, 1:21, 25:17, 26:15
**ugly** [1] - 51:25
**ultimate** [12] - 8:9, 8:10, 8:15, 9:16, 9:22, 10:12, 10:19, 18:1, 43:25, 44:23, 45:11, 45:13
**ultimately** [3] - 15:22, 16:25, 34:4
**uncomfortable** [1] - 48:5
**under** [9] - 6:18, 10:13, 26:16, 29:19, 36:21, 38:25, 47:1, 54:5
**understood** [2] - 52:20, 55:11
**unfairness** [1] - 54:7
**unfortunately** [1] - 55:8
**unilaterally** [1] - 48:12
**unique** [2] - 18:21, 26:13
**UNITED** [1] - 1:1
**unless** [3] - 13:3, 13:9,

29:1
**unpack** [1] - 27:2
**unprepared** [1] - 37:6
**unremarkable** [1] - 23:11
**unshare** [1] - 24:19
**up** [31] - 5:7, 6:22, 14:17, 15:19, 18:6, 18:22, 19:6, 21:17, 21:18, 22:3, 22:5, 22:7, 22:21, 24:10, 24:11, 24:15, 24:17, 24:22, 25:1, 28:1, 30:2, 30:13, 33:9, 33:10, 35:23, 38:14, 43:19, 45:20, 45:22, 47:5, 55:17
**uploaded** [1] - 55:20
**upside** [1] - 44:21
**upside-down** [1] - 44:21
**USA** [1] - 2:5

## V

**vaccinated** [2] - 50:13, 54:16
**vacuum** [1] - 33:5
**vague** [1] - 36:15
**valsartan** [1] - 9:15
**VALSARTAN** [1] - 1:4
**Vanaskie** [1] - 3:2
**VANASKIE** [52] - 1:10, 3:4, 3:7, 5:7, 5:13, 5:16, 5:20, 7:7, 7:25, 8:19, 10:23, 13:10, 14:3, 17:7, 17:12, 20:25, 22:2, 22:7, 23:19, 23:23, 24:2, 24:7, 24:11, 24:14, 24:18, 24:23, 25:4, 26:20, 31:11, 31:14, 32:7, 36:6, 39:2, 42:4, 44:11, 45:3, 45:6, 46:25, 47:3, 47:14, 49:12, 50:15, 50:22, 52:1, 53:15, 55:9, 55:14, 56:7, 56:14, 56:19, 57:5, 57:8
**verbatim** [1] - 39:18
**versus** [1] - 6:10
**via** [1] - 3:1
**VIA** [1] - 1:5
**video** [7] - 21:13, 21:14, 21:15, 22:1, 22:25, 25:2, 55:2
**Videoconference** [1] - 5:6
**videoconference** [2] - 3:1, 5:12

**VIDEOCONFERENCE** [1] - 1:6
**videographer** [1] - 19:4
**videotape** [2] - 22:23, 25:7
**view** [2] - 32:14, 50:23
**vocabulary** [1] - 11:8
**volume** [4] - 24:15, 24:16, 24:18, 24:21
**vs** [2] - 4:8, 16:7

## W

**Wachtel** [2] - 4:11, 12:11
**wait** [1] - 32:17
**Wang** [3] - 20:14, 40:14, 41:1
**wants** [3] - 7:3, 25:13, 44:16
**warranted** [1] - 10:14
**watching** [1] - 30:14
**ways** [1] - 49:21
**weave** [1] - 41:22
**week** [2] - 55:22, 55:25
**weeks** [1] - 51:12
**welcome** [1] - 45:5
**WHITELEY** [3] - 1:15, 1:16, 55:19
**Whiteley** [2] - 55:17, 56:10
**whole** [4] - 13:8, 16:4, 26:1, 32:18
**wholistic** [2] - 32:14, 34:2
**wielded** [1] - 37:25
**willful** [2] - 11:5, 39:12
**willfully** [1] - 40:24
**Williams** [1] - 8:25
**willing** [2] - 48:8, 48:9
**window** [1] - 29:21
**witness** [64] - 6:19, 6:22, 12:21, 12:22, 14:16, 16:3, 16:11, 16:21, 22:10, 23:4, 23:7, 26:11, 27:4, 27:6, 27:7, 27:13, 29:18, 29:19, 30:21, 32:13, 35:24, 35:25, 36:2, 37:6, 37:10, 37:18, 37:21, 38:9, 38:10, 38:19, 39:25, 40:3, 40:8, 41:2, 43:3, 43:5, 47:8, 47:23, 48:18, 48:21, 49:19, 49:24, 49:25, 50:3, 50:19, 50:24, 50:25, 51:6, 51:9, 51:20, 52:9, 52:19,

52:21, 52:24, 53:17, 53:25, 54:2, 54:17, 54:18, 55:1
**witness's** [5] - 28:23, 37:9, 38:19, 48:13, 52:25
**witnesses** [52] - 6:13, 6:15, 7:19, 12:24, 13:13, 14:6, 14:21, 17:5, 17:18, 18:8, 18:11, 18:13, 18:15, 18:21, 19:3, 19:5, 19:16, 19:19, 19:24, 20:10, 20:12, 23:13, 26:5, 26:9, 27:15, 27:22, 27:23, 29:23, 30:8, 31:1, 33:23, 35:13, 35:19, 37:15, 38:1, 38:2, 38:16, 38:23, 38:24, 39:18, 40:23, 44:5, 46:12, 46:19, 48:4, 48:25, 49:1, 49:11, 50:18, 51:16, 53:4, 53:24
**wonderful** [1] - 33:25
**word** [1] - 27:12
**worded** [1] - 37:24
**words** [1] - 31:19
**works** [1] - 56:6
**world** [4] - 15:20, 16:19, 30:20, 36:3
**worldwide** [1] - 30:18
**worry** [3] - 41:23, 51:8, 51:9
**worst** [6] - 10:21, 14:13, 43:9, 43:10
**wrap** [1] - 30:13
**write** [4] - 21:18, 25:20, 26:5, 27:8
**written** [2] - 21:10, 47:3

## Y

**year** [1] - 50:12
**years** [1] - 8:14
**yesterday** [2] - 49:4, 56:2
**yourself** [1] - 43:8

## Z

**Zhejiang** [1] - 1:22
**ZHP** [14] - 3:10, 9:14, 15:18, 16:25, 17:18, 18:4, 18:11, 19:16, 19:24, 30:19, 37:15, 40:16, 45:1, 51:16
**ZHP's** [2] - 6:9, 12:22
**zones** [1] - 19:5
**ZOOM** [1] - 1:6

**Zoom** [8] - 3:1, 19:12, 36:3, 47:11, 47:13, 50:2, 50:19, 53:5