# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn°
David M. Estes
_____
*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Karen G. Kelsen°
Adam M. Epstein°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson
_____
°Member of N.J. & N.Y. Bars

September 28, 2021

**<u>VIA ECF</u>**

Honorable Robert Kugler, U.S.D.J.
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
1 John F. Gerry Plaza, Courtroom 4D
4th and Cooper Streets
Camden, New Jersey 08101

Honorable Thomas I. Vanaskie (Ret.)
Special Master
Stevens & Lee
1500 Market St., East Tower, Suite 1800
Philadelphia, Pennsylvania 19103-7360

Re:   ***In re Valsartan, Losartan, and Irbesartan Liability Litigation***,
**Case No. 1:19-md-02875-RBK (D.N.J.)**

Dear Judge Kugler and Judge Vanaskie:

Please accept this letter on behalf of Plaintiffs in advance of the September 29, 2021 Discovery Hearing and Case Management Conference.

### 1. Motion for Completion of Panigrahy Deposition

During the two-day (10 hour) deposition of Dr. Panigrahy, Steve Folwer questioned for entire first day of record time, and an additional three and a half hours on the second day, for a total of roughly eight and half hours.  Clem Trischler questioned for roughly an hour and a half. After the ten-hour limit was reached, Mr. Trischler stated that he had another hour of material remaining (Panigrahy depo. Pg. 539; lines 6-9); Mr. Ball stated he had an additional hour and a

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 2

half (Panigrahy depo. Pg. 539; lines 10-14); and Ms. Kapke indicated she had another fifteen minutes of questions (Panigrahy depo. Pg. 540; line 7).

Defense Counsel now asks the Court for additional time to make up for the time they wasted. For example, Defense Counsel's questioning style and lack of coordination unnecessarily wasted time in a deposition that the Court had already ordered to be completed within ten hours.

A. *Questioning Style*

   i. *Fowler's Loaded Questions*

Mr. Fowler asked numerous loaded questions that provoked detailed responses from Dr. Panigrahy. For example, Mr. Fowler asked Dr. Panigrahy "you failed to complete your surgical residency, correct?" (Panigrahy depo. Pg. 72; lines 7-8). This prompted Dr. Panigrahy to explain why he chose to go back to Boston to complete his research at Folkman lab and leave his surgical residency. Just a few questions later, Mr. Fowler asked virtually the same question, and again insisted on using the phrase "failed to complete" in regards to Dr. Panigrahy's surgical residence (Panigrahy depo. Pg. 77; lines 4-5). He further asked Dr. Panigrahy to explain why he did not complete his surgical residency (Panigrahy depo. Pg. 77; lines 4-5). This prompted a lengthy response from Dr. Panigrahy, as there were many considerations involved in his decision to leave his surgical residency program.

Mr. Fowler asked several more vague, loaded questions that resulted in lengthy responses, including:

> "And the part of what you've just said, when you receive a tumor that's come from an actual patient, a malignant tumor that's been removed and ends up -- some part of it in your lab, you are not able to look at that tumor and make any determination what caused that cancer, correct?" (Panigrahy depo. Pg. 88; lines 5-11).

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 3

Dr. Panigrahy tries to answer the question, and is met with additional vague questions by Mr. Fowler:

> "Doctor, my question was simply this: When you receive that pancreatic tumor cells, you cannot determine what caused it? Yes or no, sir." (Panigrahy depo. Pg. 89; lines 17-20).

To which Dr. Panigrahy responds, "I don't understand the question." (Panigrahy depo. Pg. 89; line 22). Mr. Fowler and Dr. Panigrahy continue this exchange for seven minutes, each trying to understand the response of the other.

Mr. Fowler also focused on whether or not Dr. Panigrahy had been promoted since being at Harvard, and spent roughly thirty-nine minutes and twenty-one pages of transcript doing so. He asked more loaded questions throughout, such as, "And do you consider the eight years that you remained as assistant professor and not associate professor – do you think that's been accelerated?" (Panigrahy depo. Pg. 106; lines 4-7), to which Dr. Panigrahy gave a multi-sentence reply. Mr. Fowler's wordy, vague questioning style facilitated most, if not all, of Dr. Panigrahy's lengthiest answers.

    ii.    *Trischler's Pointed Questions*

To demonstrate the effect the style of the questioner had on the efficiency of the deposition, Mr. Trischler was able to ask roughly 180 questions in approximately an hour and a half. When Mr. Trischler asked questions, Dr. Panigrahy answered eighty-six of them with one word.

Over a 10 hour deposition, Dr. Panigrahy gave a few lengthy answers, but were in no way intended to delay, or drag out the deposition.

Panigrahy was respectful throughout his deposition. On numerous occasions, the court reporter asked both Mr. Fowler and Dr. Panigrahy to slow down due to each of them speaking so

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 4

quickly. Additionally, Defense counsel showed numerous documents to Dr. Panigrahy, and the video clearly demonstrates that Dr. Panigrahy moved through each document quickly with the questioning attorneys. He clearly was not trying to stall the deposition.

    B.  *Defense Counsel's Failure to Coordinate*

However, numerous duplicative and cumulative questions were asked by Defense Counsel. This is problematic, as Defendants were instructed to coordinate. On numerous occasions, the Court instructed Defense Leadership that they not only represent their clients, but they they also represent all Defendants. Thus they share this common duty. Yet, of the four questioners who either asked questions, or advised that they had additional questions, three of the attorneys are from Defense Leadership firms (Greenberg Traurig, Duane Morris, and Pietragallo). Of all Defense Counsel, attorneys from these three firms share a heightened duty and an understanding of the need to coordinate their time, and it is inexcusable that they did not do so.

At the conclusion of the deposition, Kara Kapke, who is not part of Leadership Counsel, advised that she only had 15 minutes of questioning. Plaintiff Counsel offered Ms. Kapke that opportunity to question, and she declined to do so, and insisted that she only wanted to question after Mr. Trischler and Mr. Ball finished (Panigrahy depo. Pg. 548; lines 9-14). Since she declined her opportunity to question during the deposition, she is not entitled to it now.

    C.  *Untimely Request*

Further, this request to extend the deposition should be denied as it is untimely. Throughout the deposition, Defense Counsel never once contacted the Court to request additional time, despite having numerous opportunities to do so (on each break, during lunch break on day 1 or 2, and after questioning concluded on day 1 or 2).

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 5

In addition, the Deposition of Dr. Panigrahy was concluded on September 10, 2021. Defendants delayed their request for additional time until September 29, just shy of twenty days after the deposition. Defense Counsel recognizes the tight expert deposition schedules that are in place, and they are trying to take advantage of them by deposing Dr. Panigrahy after Plaintiffs have had the opportunity to depose all Defense experts.

Defendants have clearly not established good cause to further extend a lengthy, thorough deposition that was already extended by three hours at Defendants' request. The record demonstrates that much time was wasted by Defense Counsel, there was a lack of coordination, and that if Defendants had been efficient, they would not have had any issue completing their desired questioning (to the extent that is even an issue, which Plaintiffs deny). The request to further extend this deposition should be denied.

2. **Outstanding subpoenas served on Anthem, Summacare, Connecticare and Emblem Health**

   A. *Subpoenas served on Summacare and Connecticare*

As alleged in the Consolidated Second Amended Economic Loss Class Action Complaint, Plaintiff MSP Recovery Claims, Series LLC ("MSPRC") has standing through assignments from Group Health, Inc./Health Insurance Plan of Greater New York ("Emblem"), Connecticare, Inc. ("Connecticare"), and Summacare, Inc. ("Summacare") (collectively, the "At-Issue Assignors"). Those assignments irrevocably transferred to MSPRC the right "to recover against any liable entity (including defendants) for payments made on behalf of [their] enrollees under Medicare Parts A, B, and D . . . ." (ECF 398 at ¶¶ 38, 39, 42 (the "Assigned Claims")).

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 6

      After MSPRC completed sufficient fact sheets, Defendants sought additional discovery through Rule 34 requests. After numerous meet and confers, the parties agreed to a set of requests for the At-Issue Assignors, which related to the Assigned Claims. On December 2, 2020, the Court entered that stipulation on the record. (ECF 650). Through that stipulation, MSPRC, as a discovery compromise, agreed to obtain documents from the At-Issue Assignors, even though MSPRC's position was that those assignors were third parties. ( *Id.* at ¶3 (the "At-Issue Assignors will respond to the document requests . . . through MSPRC . . . ."). MSPRC produced 6,050 responsive documents pursuant to that Rule 34 request.

      Defendants deposed MSPRC's corporate representatives on April 29th, and MSPRC designated an individual employed by each of the At-Issue Assignors to testify as to Rule 30 topics relating to the Assigned Claims. Defendants deposed a designated representative of Summacare on July 22nd and August 31st, and a designated representative of Emblem and Connecticare on July 30th. MSPRC has addressed any deficiencies that may exist with respect to the Rule 34 requests and, to the extent any remain, MSPRC has always offered to meet and confer with Defendants about them.

      On September 10, 2021, without any advanced notice or prior meet and confer, Defendants' counsel emailed the Plaintiffs' Executive Committee notifying them that Rule 45 subpoenas were being served on Connecticare and Summacare that demanded the production, by September 30, 2021, of documents that either (1) overlap with the Rule 34 requests or (2) have nothing to do with the Assigned Claim. *See* subpoenas attached as Exhibits 1 and 2. For example, the requests seek information pertaining to "Group Insurance Policies," which are defined as "any and all health or drug insurance policies that are intended to be able to provide for multiple

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 7

individuals' payment, reimbursement, and/or coverage for prescription drugs, offered by Summacare to or on behalf of any employer, employee beneficiaries, participants, or other third parties." *See, e.g.*, Summacare Subpoena, Ex. 2, at 1.

Defendants served Connecticare on September 10, 2021[1] and Summacare on September 13, 2021. After learning of Defendants' subpoenas to Connecticare and Summacare, MSP asked Defendants on a September 17, 2021 meet and confer whether Defendants would withdraw the subpoenas. Defendants refused to do so. Consequently, because the subpoenas request documents that have nothing to do with the Assigned Claims, Connecticare and Summacare have been forced to retain separate counsel to respond to the subpoenas which, on their face, seek wide-ranging discovery in an unreasonably short time frame.

Counsel for MSPRC understand that counsel for counsel for Connecticare and Summacare requested a 20-day extension of time to respond. Defendants refused to offer any extensions, citing the upcoming deadlines in this MDL (deadlines that Defendants have known about for a long time). Accordingly, Connecticare and Summacare were forced to immediately seek relief in the district where the production should have been required, which was Connecticut and Ohio.[2] *See* motions filed in *Connecticare, Inc v. Zhejiang Huahai Pharm., Inc.*, Case No. 3:21-mc-75 (D. Conn. Sept. 24, 2021) and *Summacare, Inc. v. Zhejiang Huahai Pharm., Inc.*, Case No. 5:21-cv-01836 (N.D. Ohio Sept. 27, 2021), attached as Exhibits 3 and 4.

---

[1] Connecticare was also served with a subpoena directed to Summacare. Connecticare has no relationship to Summacare.
[2] Both subpoenas purport to require production of documents in Washington, D.C., but Connecticare and Summacare are Connecticut and Ohio companies, respectively.

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 8

We further understand that Defendants have requested to transfer those motions to this Court. Neither the Connecticut, nor Ohio courts have granted any such transfer. Accordingly, there is nothing before this Court at this time.

    B.  *Subpoena served on Anthem*

Defendants subpoenaed Anthem on March 24, 2021. On May 21, 2021, Defendants provided Plaintiffs with Anthem's productions to date. Defendants provided Plaintiffs with another spreadsheet produced by Anthem on August 8, 2021. Plaintiffs do not know if Anthem has completed its production of documents in response to Defendants' subpoena. Plaintiffs understand that Defendants are attempting to depose Anthem in October.

### 3. Parties' Stipulation on Class Certification Briefing Page Limits

The Parties have conferred and are mutually agreeable to and request the following page limits for class certification briefing: 60 pages (total for opening briefing), 160 pages (total for opposition briefing), and 80 pages (total for reply briefing).

### 4. Status Update on Newly Named Class Representatives

Plaintiffs have served PFSs for all new named plaintiffs. Deposition dates have been provided for 26 of 34 of them, and approximately 8 of those dates offered have been accepted by Defendants.

### 5. Request for a Hearing with Live Expert Testimony on Rule 702 Motions

Defendants have informed Plaintiffs that they seek an order directing all general causation experts to appear for live hearings in Court, likely early in 2022. Plaintiffs' position is that there should not be a blanket rule requiring any expert to testify either live in Court or via Zoom or another platform in connection with the *Daubert* motions. Instead, it is submitted that the ultimate

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 9

choice as to whether testimony is to be presented by an expert should be for the attorneys who retained the expert and are opposing a *Daubert* motion, except to the extent the Court determines in its discretion that testimony will be required from a particular expert, and on what subject(s). This will allow the Parties and the Court to consider the *Daubert* motions that are filed, and determine the most efficient path for determination of the motions, on a witness by witness basis based on the arguments submitted. The parameters and timing of *Daubert* hearings, to the extent deemed necessary for any expert(s), is likely premature to address at this juncture.

6. **Confirmation that third-party fact witnesses are given the option to appear in-person or remotely via Zoom**

The Court has made clear on numerous occasions that a witness has the ability to decide whether a deposition will be taken in-person or remotely via Zoom. In line with the Court's directive, Plaintiffs believe that bellwether plaintiff treating physicians must also be given an opportunity to decide whether to appear in-person or remote. The Parties had discussed the issue earlier this year, and Plaintiffs were of the understanding that both options were to be presented to the treating physicians at the time their depositions were scheduled, and that the physician would make the final decision on appearance in-person or remote. However, during the September 17, 2021 deposition of bellwether plaintiff Yolonda Bonmon's prescribing physician, nurse practitioner Nancy Allen, Plaintiffs learned that Ms. Allen had not been advised of her options for appearance. Plaintiffs sent an email to Defendants on September 19, 2021, requesting that they confirm that all third-party witnesses will be advised of their ability to be deposed remotely via Zoom. Defendants did not respond to this email until September 27, 2021, when they confirmed it was their practice to advise physicians of their "strong preference" to take depositions in-person.

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 28, 2021
Page 10

Plaintiffs believe that such a statement by Defendants to treating physicians is coercive and not in-line with the Court's directive. Plaintiffs believe that at the outset, each witness should be given the option to appear in-person or remotely via Zoom. Plaintiffs request that the Court direct the Parties to provide this option without coercion to all currently scheduled third-party fact witness deponents, and when scheduling future depositions.

### 7. ZHP's Confidentiality Designations

Plaintiffs have consented to ZHP's request for an extension until October 12, 2021, to file a motion to seal Plaintiffs' July 23, 2021 Motion to Compel ZHP's Supplemental Production.

### 8. Defendants' Show Cause Submissions

Plaintiffs will be prepared to discuss this issue at the case management conference.

Respectfully,

ADAM M. SLATER