AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| n/a *Plaintiff* | ) ) ) |
| v. | ) Civil Action No. 19-md-02875-RBK-KMW |
| In re Valsartan, Losartan, & Irbesartan Products Liability Litigation *Defendant* | ) ) ) |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield (served upon its Counsel by Agreement)

*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Attachment A.

| Place: By remote means pursuant to Fed. R. Civ. P. 30(b)(4). | Date and Time: 10/21/2021 9:00 am |
|---|---|

The deposition will be recorded by this method: Stenography & audiovisual recording

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/01/2021

| CLERK OF COURT | OR | |
|---|---|---|
| _____ *Signature of Clerk or Deputy Clerk* | | /s/ Drew T. Dorner *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Zhejiang Huahai Pharmaceutical Inc. , who issues or requests this subpoena, are:

Drew T. Dorner, 505 9th St. N.W., Suite 1000, Washington, DC 20004; dtdorner@duanemorris.com; (202) 776-5291

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 19-md-02875-RBK-KMW

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

# DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to each and every part of this Exhibit as if fully set forth therein:

1. "MADA" or "Plaintiff," unless otherwise specified, means Plaintiff Maine Automobile Dealers Association, Inc. Insurance Trust, and its past or present officers, directors, employees, partners, principals, members, agents, representatives, attorneys, parents, subsidiaries, affiliates, related entities, assigns, predecessors-in-interest, successors-in-interest, and every person acting or who has ever acted on its behalf.

2. "Anthem," "You," and "Your" mean Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield.

3. "Defendant" or "Defendants" means each and every named Defendant in the above-styled action.

4. "VCD" means any drug or combination drug containing valsartan, e.g., valsartan, valsartan-hydrochlorothiazide, amlodipine-valsartan, and amlodipine-valsartan-hydrochlorothiazide.

5. "Blood pressure medication" or "substitute blood pressure medication" means any drug or pharmaceutical product listed on Exhibit A and which is not a VCD.

6. The "Plan" or "Plans" means any and all health benefit, care, drug, or insurance plan or plans offered by, sponsored by, or in any way provided through MADA (and are or were negotiated, managed, administered, offered, designed, overseen, and/or operated by Anthem) to or on behalf of the government; employers, employee organizations, or their employees; unions or their members; and/or other sponsors and their policyholders, subscribers, beneficiaries, participants, or other third parties, which provide for the payment, reimbursement, and/or coverage for prescription drugs, including but not limited to any single-employer plan, multiemployer plan, multiple employer welfare arrangement.

7. "Group Insurance Policies" means any and all health or drug insurance policies that are intended to be able to provide for multiple individuals' payment, reimbursement, and/or coverage for prescription drugs, offered by MADA (and are or were negotiated, managed, administered, offered, designed, overseen, and/or operated by Anthem) to or on behalf of any employer, employee organizations, or their employees; unions or their members; or other policyholders, subscribers, beneficiaries, participants, or other third parties.

8. "Insureds" mean employees, employers, members, subscribers, policyholders, participants, beneficiaries, and/or insured persons (including family/dependents) under any Plan and/or Group Insurance Policies through which MADA provided some form of prescription drug coverage, payment, or reimbursement.

9. "Formulary" and "Preferred Drug List" mean the formulary, preferred drug list, or other list of prescription drugs that are covered by any Plan or Group Insurance Policies, including any tiers or levels of preference in which drugs are categorized, and all amendments, modifications, supplements, or revisions thereto.

10. "Relate to," "related to," or "relating to" means in any way referring to, associated with, concerning, comprising, constituting, embodying, identifying, supporting, summarizing, evidencing, containing, discussing, mentioning, describing, reflecting, comparing, analyzing, memorializing, or pertaining to the referenced subject matter.

11. "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and include, without limitation, all writings of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise, including, without limitation, paper documents of any kind, communications, correspondence, memoranda, notes, diaries, statistics, letters, electronic mail, text messages, electronic files of any type or nature, all other forms of electronic communication, telegrams, minutes, contracts, reports, studies, text, statements, receipts, returns, summaries, pamphlets, books, prospectuses, inter-office and intra-office communications, offers, notations or recordings of any sort regarding conversations, telephone calls, meetings or other communications, bulletins, printed matters, computer printouts, teletypes, telefax, invoices, worksheets, and each and every electronic or paper draft, alteration, modification, change or amendment of any kind of the foregoing; graphic or aural records and oral representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures; and electronic, magnetic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, computer generated or stored information and recordings. The term "Document" expressly includes electronic or magnetic data, which should be produced in its unaltered, native-file format in which such data is ordinarily kept. All documents should be produced without alteration and with any and all exhibits and attachments thereto. The term "Document" is inclusive of the term "electronically stored information" as referenced in Federal Rule of Civil Procedure 34.

12. "Relevant Time Period" shall mean January 1, 2012 through the present and all topics of examination stated herein, unless otherwise specified, are limited to the Relevant Time Period. The definition and scope of the term Relevant Time Period does not constitute an admission by defendants in the Action or evidence with respect to the appropriate definition of any class which may be certified in the above-captioned matter or in any other matter involving VCDs or other blood pressure medications.

13. "Action" shall mean *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, MDL No. 2875, and *Maine Automobile Dealers Association, Inc. Insurance Trust v. A-S Medication Solutions LLC et al.*, No. 19-cv-02431 (D.N.J.).

14. Each request shall be construed as being inclusive rather than exclusive. The terms "any" and "all" shall be mutually interchangeable and shall not be construed to limit any request. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all issues that might otherwise be construed to be outside of its scope. The present tense shall include the past and future tenses. The singular shall include the

plural, and the plural shall include the singular.

15. As required by Fed. R. Civ. P. 30(b)(6), you are hereby advised that you have a duty to confer in good faith about the matters for examination with the party serving this subpoena before or promptly after the subpoena is served, and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization.

## TOPICS FOR EXAMINATION

### Topics Regarding How MADA's Plans, Developed & Managed by Anthem, Work

1. The process by which Anthem manages, administers, bills, tracks, and pays for VCD- and blood pressure medication-related costs and claims on behalf of MADA.

2. All Plans and Group Insurance Policies administered by Anthem on MADA's behalf during the Relevant Time Period, including the name of each Plan/Group Insurance Policy; the type of Plan/Group Insurance Policy (e.g., HMO, PPO, etc.); the geographic scope of the Plan/Group Insurance Policy; the number of persons enrolled in each type of Plan; Anthem's efforts to verify the eligibility requirements for participants in all such Plans/Group Insurance Policies, as provided for in the Administrative Services Agreement governing Anthem's work; the extent to which the Plan/Group Insurance Policy covered VCDs and other blood pressure medications; and any terms or conditions applicable to the coverage of claims for VCDs and/or other blood pressure medications (including, but not limited to, co-pays, co-insurance, deductibles, out-of-pocket maximums, immediate coverage versus reimbursement to Insureds, costs based on quantity of drugs dispensed, etc.).

3. Whether, and the extent to which, the out-of-pocket maximum, co-insurance, deductible, or other term of a Plan or Group Insurance Policy could affect the total cost ultimately paid (or reimbursed) by MADA for VCDs and/or substitute blood pressure medications. By way of example only, and not as a limitation on the scope of this topic, this includes the requirement,

3

under the terms of any Plan, that the Plan's deductible (if any) be satisfied before the costs of VCDs or other blood pressure medications would be covered by the Plan's benefit.

4.  Generally, whether differences existed between the prices for VCDs/Blood pressure medications charged by any PBM and/or Anthem and the amounts reimbursed by MADA and/or by Insureds, and the range of any such differences.

5.  The chain of payees (except insureds) who received any payments or reimbursements in a claim processed by Anthem on MADA's behalf for VCDs and/or substitute blood pressure medications.

6.  The identity of all pharmacy benefits managers ("PBMs"), claims administrators, and/or benefits managers with whom Anthem contracted during the Relevant Time Period for purposes of performing any services for or on behalf of MADA relating to the administration of its Plans and/or prescription drug benefits, and the dates and terms and conditions of all such contracts.

7.  The extent to which any VCDs and/or substitute blood pressure medications included in claims processed by Anthem for MADA during the Relevant Time Period were paid for, reimbursed, or subsidized, in whole or in part, by a party other than MADA or an Insured (e.g., and without limitation, Medicare, Medicaid, other drug coverage, rebates, etc.).

8.  Negotiations, arrangements, or agreements negotiated by Anthem or any PBM on behalf of MADA (to the extent known by Anthem) related to the costs that Anthem, its PBM(s), MADA, or MADA's Insureds paid for VCDs or blood pressure medications.

9.  Factors generally affecting the price(s) charged to and by Anthem (in its role as the administrator or purchaser for MADA) for VCDs and Blood pressure medications during the Relevant Time Period, including gross price, net price, credits, refunds, rebates, any price changes,

maximum allowable cost ("MAC") provisions; the reasons known to Anthem for any price changes; and any sources within Anthem where pricing data may be found.

10. Any refunds, rebates, credits, or incentives from any source accepted by, or available to, Anthem, Anthem's PBM(s), and/or MADA related to the costs of VCDs or blood pressure medications (brand and generic), and the process by which such refunds, rebates, credits, or incentives were provided.

11. The basis and amount of any Drug Rebate credits issued pursuant to the Administrative Services Agreement during the Relevant Time Period, and any audits of Drug Rebate credits as referenced in Article 14 of the Administrative Services Agreement.

12. The terms of any performance guarantees by Anthem for the benefit of MADA, and any penalties paid pursuant thereto.

13. The preferred pharmacy network, if any, for each Anthem-administered Plan offered by MADA, including preferred provider terms with any manufacturers, wholesalers, distributors, or pharmacies setting forth agreed prices or negotiated rates charged to any Plan, Group Insurance Policy, or Insured for VCDs or any other Blood pressure medication.

**Topics Regarding Actions Taken (or Observed) by Anthem in Response to Recall**

14. All efforts and communications Anthem is aware of to obtain refunds, credits, claims processing changes, reimbursements, or free/reduced substitute VCDs or substitute blood pressure medications in connection with the recall of VCDs, and any such refunds, credits, claims processing changes, reimbursements, or free/reduced substitute blood pressure medications obtained. This topic covers efforts and communications specifically on behalf of MADA and efforts and communications by or for third-party payors generally.

15. Anthem's investigation, knowledge, and/or lack of knowledge relating to the efficacy and therapeutic benefit(s) of any recalled VCDs. By way of example, and not limiting

5

the scope of this topic, this includes Anthem's knowledge (or lack of knowledge) with respect to whether the recalled VCDs were effective in treating hypertension; whether the recalled VCDs provided other therapeutic benefits to the Insureds; Anthem's knowledge of any side effects allegedly caused by the recalled VCDs as opposed to VCDs generally; whether Anthem tracked alleged adverse events related to any VCDs; whether any person (whether or not a MADA Insured) notified Anthem regarding any adverse events allegedly related to recalled VCDs; and whether Anthem generally tracks adverse events for members who receive any recalled product covered by any plan (not limited to MADA's Plans).

16.  The date Anthem learned of the recall of VCDs, the manner(s) in which it learned of the recall, and Anthem's actions taken in response (both on its own behalf and on behalf of MADA) to receiving notice of the recall of VCDs.  By way of example only, and not to the exclusion of other actions, this topic would include seeking compensation, refunds, or other things of value due to the recall; notification of persons or entities about the recall (e.g., regarding the recall generally, or consumption, disposal, or replacement of recalled VCDs); advising or holding discussions with MADA related to the recall; communications regarding alternative treatment options; and consideration of adjustments to any Formulary; and Anthem's standard policies with respect to recalled products (and whether it applied those policies in the case of the VCD recall).

17.  The means by which Anthem determined the applicability of any FDA recall to VCDs allegedly paid for or reimbursed (in whole or in part) by or on behalf of MADA, documents available to Anthem for making such a determination, any testing for impurities conducted by Anthem, and Anthem's basis for determining the recall status of any VCDs at issue in the Action.

18.  Anthem's knowledge of MADA's insureds' actions taken in response to receiving notice of the recall of VCDs, including (but not limited to) obtaining refunds or reimbursements,

obtaining replacement VCDs or replacement Blood pressure medication (and any costs incurred by MADA's insureds in connection with obtaining such replacement medications), disposing of recalled medications, and/or continuing their use of VCDs for any period of time following notice of the recall.

19. All investigations, inquiries, research, or factual development conducted by Anthem, whether or not conducted on behalf of MADA, in connection with the Action, any alleged impurities in VCDs, any recalls of products containing VCDs, and/or any purchases of substitute medications to replace VCDs as a result of any recalls, attorney-client communications excluded.

**Topics Regarding Communications/Witnesses/Documents Within Anthem Relevant to Valsartan/Recall**

20. The type, location, and general contents of documents within Anthem's possession or control reflecting claims by MADA's Insureds for VCDs or substitute blood pressure medications.

21. The type, location, and general contents of documents within Anthem's possession or control reflecting discounts, refunds, credits, reimbursements, or other things of value that directly or indirectly affected the total cost MADA ultimately paid to purchase (or reimburse for) VCDs or substitute blood pressure medications.

22. The type, location, and general contents of documents within Anthem's possession or control relating to discounts, refunds, credits, reimbursements, or other things of value obtained for or on behalf of MADA or paid to MADA in connection with the recall of VCDs.

23. The type, location, and general contents of documents within Anthem's possession or control relating to claims, billings, payments, or reimbursements for VCDs and/or blood

7

pressure medications by MADA during the Relevant Time Period.

24. The identities of all persons (except where noted) working for or on behalf of Anthem, counsel excluded, who: (1) have knowledge related to any allegation made by MADA in the Action; (2) have knowledge related to any costs MADA alleges to have incurred for which MADA seeks damages in the Action; (3) (one person only) is most knowledgeable of the Plans or Group Insurance Policies offered by MADA; (4) provided any information or documents to counsel for MADA for purposes of the Action; (5) searched for any documents in connection with the Action; or (6) prepared (or assisted in preparing) any summaries or spreadsheets produced in connection with the Action.

25. Anthem's knowledge of the allegations made by MADA in the Action.

26. Any communications between any person at Anthem and any PBM, pharmacy, or manufacturer regarding recalled VCDs (including, but not limited to, requests for instruction or guidance, communications relating to claims by members whose benefits were administered by Anthem, complaints, questions, discussion of potential legal action, and procedures in place at Anthem with respect to recalled products), the Action, or any requests for information from any party to the Action, including but not limited to MADA.

27. All communications between Anthem and any Plaintiff(s) or Insured(s) (or their employees or counsel), including, but not limited to, MADA and other plan sponsors, regarding VCDs, the recall of VCDs, blood pressure medications, or the Action. By way of example, and not to exclude any others, communications falling within the scope of this request would include a communication between MADA and/or its counsel with a "Ms. Cobb," who is understood to be employed by Anthem and communications regarding the review/development/presentation of claims data.

28. The substance, location, and effective dates of the Administrative Services Agreement between MADA and Anthem, any amendments thereto, and (in particular, but to the exclusion of no others) Amendments 1 and 2 to the Administrative Services Agreement; and the substance, location, and effective dates of any other agreements between Anthem and MADA, if any, which may relate to or affect claims by MADA's members for VCDs or substitute Blood pressure medications.

**Topics Regarding Claims Data/Development of Spreadsheets & Other Information Requested by MADA**

29. Anthem's searches for, and productions of, records in response to requests by MADA (or its counsel) or to document requests/subpoenas from any Defendant.

30. The dates (and ascertainability of dates) of the alleged payments for VCDs and/or substitute blood pressure medications in Attachments B and C to MADA's Plaintiff Fact Sheet.

31. The cost elements/components (e.g., and without limitation, dispensing fees, wholesale cost of medication, retiree drug subsidy, other fees, rebates, refunds, taxes, subsidies, transaction fees, claims processing fees, etc.) which comprised or affected the total sums paid (potentially also known as "Total Plan Paid") for *any* VCDs (including non-recalled and recalled VCDs) and/or blood pressure medications (including substitute and non-substitute blood pressure medications) by or on behalf of Anthem and/or MADA during the Relevant Time Period.

32. With respect to the claim data for VCDs and substitute Blood pressure medications previously produced by Anthem, the means by which an Insured who *did* make a claim for (i.e., purchased) a recalled VCD can be differentiated from an Insured who did *not* make a claim for (i.e., did not purchase) a recalled VCD.

33. The source(s) of data and information underlying Attachments A, B, and C to MADA's Plaintiff Fact Sheet, the development of such attachments, and any communications

9

Anthem had with MADA, MADA's counsel, or any other party regarding Attachments A, B, and/or C to MADA's Plaintiff Fact Sheet or the procurement or development of any of them. By way of example, and without limiting the scope of this topic, this includes the way in which Anthem (or MADA) identified individuals and claims for inclusion within Attachments A, B, or C; the cost components which comprise (and which are excluded from) dollar amounts stated on Attachments A, B, or C; the availability of dates to correspond to claims set forth on Attachments A, B, or C; the availability of raw data or documents which underlie the information presented in Attachments A, B, or C.

**Topic Regarding Development and Ongoing Review of Formularies/Relevant Medications**

34. The Formulary (or Formularies) applicable to MADA's Plans for which Anthem processed claims for VCDs or substitute Blood pressure medications during the relevant time period, including: which formularies previously produced by Anthem actually governed prescriptions for MADA's Plans and Group Insurance Policies; differences in coverage for branded medications/VCDs versus generic medications/VCDs; the evaluation and selection process for VCDs and other blood pressure medications that appeared on the Formulary (including, but not limited to, statements, representations, warranties, published materials, data, filings, applications, or other communications reviewed or relied upon); the terms and conditions (e.g., co-payment or co-insurance, applicable deductible, step therapy requirements, generic vs. brand requirements, pre-approval requirements, percentage of cost covered, and the like) associated with each tier(s) in which any VCDs or blood pressure medications fell; the manager of the Formulary; the composition of the Pharmacy and Therapeutics Committee; the Formulary design/review process(es); and benefit design with respect to Formulary tiers.

**General**

35. The deponent's/deponents' preparation to testify to the foregoing matters, attorney-client communications excluded.

# **EXHIBIT A**

ARBs:

1. AMLODIPINE AND OLMESARTAN MEDOXOMIL
2. AMLODIPINE BESYLATE AND VALSARTAN
3. AMLODIPINE BESYLATE, VALSARTAN AND HYDROCHLOROTHIAZIDE
4. AMLODIPINE BESYLATE; HYDROCHLOROTHIAZIDE; OLMESARTAN MEDOXOMIL
5. AMLODIPINE BESYLATE; OLMESARTAN MEDOXOMIL
6. AMLODIPINE BESYLATE; VALSARTAN
7. ATACAND
8. ATACAND HCT
9. AVALIDE
10. AVAPRO
11. AZOR
12. BENICAR
13. BENICAR HCT
14. BYVALSON
15. CANDESARTAN CILEXETIL
16. CANDESARTAN CILEXETIL AND HYDROCHLOROTHIAZIDE
17. CANDESARTAN CILEXETIL; HYDROCHLOROTHIAZIDE
18. COZAAR
19. DIOVAN
20. DIOVAN HCT
21. EDARBI
22. EDARBYCLOR
23. ENTRESTO
24. EPROSARTAN MESYLATE
25. EXFORGE
26. EXFORGE HCT
27. HYDROCHLOROTHIAZIDE; OLMESARTAN MEDOXOMIL
28. HYDROCHLOROTHIAZIDE; TELMISARTAN
29. HYZAAR
30. IRBESARTAN
31. IRBESARTAN AND HYDROCHLOROTHIAZIDE
32. LOSARTAN
33. LOSARTAN POTASSIUM
34. LOSARTAN POTASSIUM AND HYDROCHLOROTHIAZIDE
35. MICARDIS
36. MICARDIS HCT
37. OLMESARTAN MEDOXOMIL
38. OLMESARTAN MEDOXOMIL AND HYDROCHLOROTHIAZIDE
39. TELMISARTAN
40. TELMISARTAN AND AMLODIPINE
41. TELMISARTAN AND HYDROCHLOROTHIAZIDE
42. TEVETEN
43. TRIBENZOR
44. TWYNSTA
45. VALSARTAN
46. VALSARTAN AND HYDROCHLOROTHIAZIDE

Case 1:19-md-02875-RMB-SAK Document 1640 Filed 10/14/21 Page 16 of 19 PageID:
Case 1:19-md-02875-RBK-JS Document 283 Filed 10/28/19 Page 16 of 19 PageID:
35582

Non-ARB Medications:

(Diuretics)

1. amiloride hydrochloride hydrochlorothiazide
2. Aldactazide
3. Aldactone
4. amiloride
5. bumetanide
6. Bumex
7. chlorthalidone
8. chlorothiazide
9. Diuril
10. Dyazide
11. Dyrenium
12. Esidrix
13. furosemide
14. hydrochloride
15. hydrochlorothiazide
16. Hydrodiuril
17. Hygroton
18. indapamide
19. Lasix
20. Lozol
21. Maxzide
22. metolazone
23. Microzide
24. Midamar
25. Moduretic
26. Mykrox
27. spironolactone
28. spironolactone hydrochlorothiazide
29. triamterene
30. triamterene hydrochlorothiazide
31. Zaroxolyn

(Beta Blockers)

1. acebutolol
2. atenolol
3. Betapace
4. betaxolol
5. bisoprolol fumarate
6. Blocadren
7. carteolol hydrochloride
8. Cartrol
9. Corgard
10. hydrochlorothiazide and bisoprolol
11. Inderal
12. Kerlone
13. Levatol

2

14. Lopressor
15. metoprolol tartrate
16. metoprolol succinate
17. nadolol
18. penbutolol sulfate
19. pindolol
20. propranolol hydrochloride
21. Sectral
22. solotol hydrochloride
23. Tenormin
24. timolol maleate
25. Toprol-XL
26. Visken
27. Zebeta
28. Ziac

(ACE Inhibitors)

1. Accupril
2. Aceon
3. Altace
4. benazepril hydrochloride
5. Capoten
6. captopril
7. enalapril maleate
8. fosinopril sodium
9. lisinopril
10. Lotensin
11. Mavik
12. moexipril
13. Monopril
14. perindopril
15. Prinivel
16. quinapril hydrochloride
17. ramipril
18. trandolapril
19. Univasc
20. Vasotec
21. Zestril

(Calcium Channel Blockers)

1. amlodipine besylate
2. Adalat CC
3. bepridil
4. Calan SR
5. Cardene SR
6. Cardizem CD
7. Cardizem SR
8. Covera HS
9. diltiazem hydrochloride

3

10. Dilacor XR
11. DynaCirc
12. DynaCirc CR
13. felodipine
14. Isoptin SR
15. isradipine
16. Lotrel
17. nicardipine
18. nifedipine
19. nisoldipine
20. Norvasc
21. Plendil
22. Procardia XL
23. Sular
24. Tiazac
25. Vasocor
26. verapamil hydrochloride
27. Verelan

(Alpha blockers)

1. Cardura
2. doxazosin mesylate
3. Hytrin
4. Minipress
5. prazosin hydrochloride
6. terazosin hydrochloride

(Alpha-2 receptor agonist)

1. Methyldopa

(Combined alpha and beta-blockers)

2. carvedilol
3. Coreg
4. labetalol hydrochloride
5. Normodyne
6. Trandate

(Central agonists)

1. Aldomet
2. alpha methyldopa
3. Catapres
4. clonidine hydrochloride
5. guanabenz acetate
6. guanfacine hydrochloride
7. Tenex
8. Wytensin

4

(Peripheral adrenergic inhibitors)

1. guanadrel
2. guanethidine
3. Hylorel
4. Ismelin
5. monosulfate
6. reserpine
7. Serpasil

(Vasodilators)

1. Apresoline
2. hydralazine hydrochloride
3. Loniten
4. minoxidil

5