UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| **IN RE: VALSARTAN**<br>**PRODUCTS LIABILITY LITIGATION** | Case No. 19-md-2875-RBK<br>MDL No. 2875<br><br>Hon. Robert B. Kugler, District<br>Judge<br><br>Hon. Karen M. Williams,<br>Magistrate<br><br>Hon. Thomas Vanaskie (Ret.),<br>Special Master |
| **This Documents Relates to All Actions** | |

**MEMORANDUM OF LAW IN SUPPORT OF WHOLESALER
DEFENDANTS' MOTION TO ADOPT IN PART AND OBJECTIONS IN
PART TO SPECIAL MASTER'S REPORT ON PLAINTIFFS' MOTION
FOR LEAVE TO AMEND MASTER COMPLAINTS AND SPECIAL
MASTER ORDER NO. 46 PURSUANT TO FED. R. CIV. P. 53**

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................ 1

II.     Wholesalers' Request for Adoption ............................................ 2

III.    Objections to the Report and Order ............................................ 2

IV.     The Law of Standing Is Jurisdictional and Requires Well-Pleaded
        Factual Allegations ...................................................................... 4

V.      The Law of Standing Does Not Change in the Class Action Context .......... 6

VI.     The Traceability Requirement Is a Mandatory Element of Standing ............ 7

VII.    The Named Plaintiffs Do Not Have Standing to Assert State Law
        Claims Where They Fail to Allege Sufficient Facts to Fairly Trace
        Specific Wholesalers' Conduct to Their Injury .............................. 8

        A.    The PMMMC and PELMC allegations are merely conclusory
              and do not differentiate Wholesalers from other Defendants ........... 10

        B.    The PMMMC and PELMC allegations fail to identify, much
              less trace conduct by, actual Wholesalers ............................. 11

        C.    The PMMMC and PELMC fail to identify the VCD products or
              sales made the basis of most state law claims ....................... 14

        D.    Even where a Named Plaintiff in a particular state has identified
              one Wholesaler's conduct as traceable to an injury, there is no
              standing as to any other untraced Wholesaler Defendants .............. 16

VIII.   Amendment of Plaintiffs' State Consumer Protection Statutory Claims
        Would Be Futile and the Special Master's Ruling Granting Leave to
        Amend Those Claims Should Not Be Adopted by the Court .................... 17

IX.     Conclusion ................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Abraham v. WPX Prod. Prods.*,
  LLC, 184 F. Supp. 3d 1150 (D.N.M. 2016) ..................................................6

*Adams v. City of Camden*,
  461 F. Supp. 2d 263 (D.N.J. 2006) ...................................................13

*Allee v. Medrano*,
  416 U.S. 802 (1974)..................................................................6

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006) ....................................................14, 15

*Atlantic Used Auto Parts v. City of Philadelphia*,
  957 F. Supp. 622 (E.D. Pa. 1997)...................................................13

*Berg v. Obama*,
  586 F.3d 234 (3d Cir. 2009) ..................................................5

ECF
  No. 1382 B-1.................................................................9, 11

*Finkelman v. Nat'l Football League*,
  810 F.3d 187 (3d Cir. 2016) ..................................................5

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
  301 F.3d 329 (5th Cir. 2002) ..................................................6

*In re Franklin Mut. Funds Fee Litig.*,
  388 F. Supp. 2d 451 (D.N.J. 2005).................................7, 8, 15, 16, 17

*Haas v. Pittsburgh Nat'l Bank*,
  526 F.2d 1083 (3d Cir. 1975) ..................................................16

Hightower v. Roman, Inc.,
  190 F. Supp. 2d 740 (D.N.J. 2002).................................................13

*Lewis v. Casey*,
  518 U.S. 343 (1996)...............................................................6

*Long v. Se. Pa. Transp. Auth.*,
  903 F.3d 312 (3d Cir. 2018) ...............................................................................4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...................................................................................5, 7, 13

*In re Magnesium Oxide Antitrust Litig.*,
  No. 10-cv-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011)...............................6

*Marulli v. Alloy*,
  No. 04-2869, 2006 BL 145498 (D.N.J. Sept. 22, 2006)....................................13

*Mielo v. Steak*
  *'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018)...........................6

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
  547 U.S. 47 (2006).........................................................................................5, 8

*In re Schering-Plough Corp.*,
  678 F.3d 235 (3d Cir. 2012) ..............................................................................6

*Simon v. Eastern Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)....................................................................................6, 7, 13

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)....................................................................................4, 5

## Rules and Statutes

Fed. R.  Civ. P. 21 .................................................................................................13

Fed. R. Civ. P. 53 ...................................................................................................2

## Other Authorities

1 Newberg on Class Actions § 2:5 (5th ed.) ............................................................7

United States Constitution Article III  ...................................................................4

## I.    Introduction

Plaintiffs' Motion for Leave to Amend Master Complaints (ECF No. 1148) (the "Motion to Amend") is Plaintiffs' fourth bite at the apple. Through various orders in January and February, 2021, the District Court dismissed in their entirety the Medical Monitoring Master Complaint (ECF No. 123) and Economic Loss Master Complaint (ECF No. 398) as to Wholesaler Defendants AmerisourceBergen Corporation ("ABC"), Cardinal Health, Inc. ("Cardinal Health"), and McKesson Corporation ("McKesson") (collectively referred to as "Wholesalers" or "Wholesaler Defendants"), holding, among other things, that the Named Plaintiffs did not have standing to bring many of the state law claims asserted. ECF No. 728. The Court allowed Plaintiffs to file motions for leave to amend. ECF No. 728.

Now, the Special Master's Report (ECF No. 1614) (the "Report") on the Motion to Amend recommends this Court grant in part and deny in part Plaintiffs' request to amend their three Master Complaints, including their proposed Amended Personal Injury Master Complaint ("PPIMC"), their proposed Amended Economic Loss Master Complaint ("PELMC") (ECF. No. 1148-3), and their proposed Amended Medical Monitoring Master Complaint ("PMMMC") (ECF No. 1148-5). The accompanying Special Master Order No. 46 (ECF No. 1615) (the "Order") memorializes the Report's recommendations. ECF No. 1148-1.

## II.    Wholesalers' Request for Adoption

Pursuant to Fed. R. Civ. P. 53, Wholesalers respectfully request that the Court adopt in part the Special Master's Report and Order. Specifically, Wholesalers request that the Court adopt Paragraphs 2, 3, 5, 7, 8, and 9 of the Order, each of which is consistent with this Court's prior rulings. A proposed Order is attached hereto as Exhibit 1.

## III.    Objections to the Report and Order

Wholesalers also object in part to the Report and Order.

First, Wholesalers object to those portions of the Report and Order granting Plaintiffs leave to amend to pursue economic loss and medical monitoring claims "under the laws of all fifty states, the District of Columbia, and Puerto Rico," including claims "based upon the laws of the jurisdictions where a Named Plaintiff neither resided nor was injured." Report at 8; *see also* Order ¶¶ 12-13 (granting Motion to Amend to the extent not otherwise denied). That ruling is directly contrary to this Court's well-reasoned determination in MTD Opinion 2 (ECF No. 728) that Plaintiffs lack standing to assert such out-of-state claims. Wholesalers respectfully submit the Special Master erred in granting Plaintiffs leave to amend to add the very same out-of-state claims that this Court already held they lack standing to assert in MTD Opinion 2, including all of the reasons the Manufacturer Defendants explain

in their Objection (ECF No. 1690), which the Wholesalers join in full and incorporate by reference as if set forth fully herein.

Second, Wholesalers also object to the Report and Order granting Plaintiffs leave to amend to pursue economic loss and medical monitoring claims under the laws of the fifty states, the District of Columbia and Puerto Rico on the additional grounds of the lack of the traceability element of standing. Traceability requires facts sufficient to demonstrate that at least one of the Named Plaintiffs in a particular state has an injury that is traceable to the conduct of each defendant for each claim asserted in the complaint. Here, traceability requires that Named Plaintiffs must allege factual, individual Wholesaler conduct (VCD sales) that is traceable to a Named Plaintiff's injury (payment for VCDs or fear of disease) for each state claim asserted in the PMMMC and PELMC. Yet, for approximately 80% of the state law claims asserted, there are no such traceable allegations as to Wholesalers, but instead only conclusory allegations that treat Wholesalers indiscriminately and reference only collective conduct of nationwide sales of unidentified VCD product. ECF No. 728 at 16-19.

For these reasons, Wholesalers ask the Court to grant their objections and deny, with prejudice, Plaintiffs' request for leave to amend the PMMMC and PELMC to bring claims against all Wholesalers under the laws of each state:

1. Where a Named Plaintiff does not reside and has not been injured, as set forth in Manufacturers' Brief and incorporated fully herein (Exhibits 2 and 3):

2. Where there are no allegations identifying any Wholesaler – either named or "John Doe" – or any Wholesaler conduct (Exhibits 2 and 3);

3. Where the only Wholesaler conduct identified is conduct by "John Doe" Wholesalers (Exhibits 2 and 3);

4. Where there are no allegations by any Named Plaintiff in that state tracing an alleged injury-in-fact to conduct by a certain Wholesaler, despite that Named Plaintiff's allegations regarding other Wholesalers (Exhibits 2 and 3); and

5. Where Named Plaintiffs' have failed to adequately trace Wholesaler conduct to a Named Plaintiff injury through failure to identify the VCD products sold, any Wholesaler-related sales transactions and/or any Wholesaler conduct vis-à-vis a Named Plaintiff (all state claims alleged).

Finally, for the reasons discussed *infra*, Wholesalers respectfully object to the Special Master's ruling with respect to Plaintiffs' state consumer protection statutory claims. The Report erred in granting Plaintiffs "leave to amend the PPIMC and PELMC to assert claims under those statutes" that "may only require deceptive or unfair conduct and resultant damages" because, based on the Special Master's other rulings, any amendment seeking to allege such conduct by Wholesalers would be futile.

### IV. The Law of Standing Is Jurisdictional and Requires Well-Pleaded Factual Allegations

Under Article III of the United States Constitution, the power of the judiciary "extends only to 'Cases' and 'Controversies.'" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Standing is a core component of this Article III case requirement, and it must be established by litigants before a court may exercise jurisdiction over their

claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559- 60 (1992). Specifically, at least one Named Plaintiff must have standing to sue for each of the claims brought, and the burden of establishing standing rests with the plaintiffs. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 53, n.2 (2006); *Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009).

The doctrine of standing requires: (1) that plaintiff must have suffered an injury-in-fact; (2) that there must be a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560-61. The *Spokeo* court recently clarified the second element: the injury must be "fairly traceable to the challenged conduct of the defendant." This second element – now often called "traceability" for short – requires that the Named Plaintiff plead facts sufficient to "trace" or demonstrate that defendant's conduct caused the Named Plaintiff's injury. *Spokeo*, 136 S. Ct. at 1547.

Of course, all aspects of a complaint must rest on "well-pleaded factual allegations" and not "mere conclusory statements;" thus, simple conclusion and speculation are insufficient to establish standing. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016). In fact, the court, on review of standing, may not consider any allegations that are no more than conclusions. *Id.* at 194, 202.

## V.    The Law of Standing Does Not Change in the Class Action Context

Critically, as this Court has already acknowledged, the standing inquiry "does not change in the context of a putative class action." MTD Op. 2 at 16 (emphasis added). *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). The class action standing inquiry focuses solely on the Named Plaintiffs. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018). The specific inquiry is whether Named Plaintiffs have standing, not whether the unnamed class members have standing. *See id.*

It is also fundamental that "a person cannot predicate standing on injury which he does not share," which is to say that a Named Plaintiff must have been injured in the cause of action he himself brings, even in the context of a class action. *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (citations omitted). "[S]tanding is not dispensed in gross," and plaintiffs are required to plead, and must be held to, demonstrated factual allegations to support standing as to each class action claim brought. *In re Schering-Plough Corp.*, 678 F.3d 235, 245 (3d Cir. 2012).

Finally, Named Plaintiffs must establish standing at *this* stage of the litigation, not at the later Rule 23 stage. *In re Magnesium Oxide Antitrust Litig.,* No. 10-cv-5943, 2011 WL 5008090, at *7-10, *27 (D.N.J. Oct. 20, 2011); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002); *Abraham v. WPX Prod. Prods.*, LLC, 184 F. Supp. 3d 1150, 1200 (D.N.M. 2016).

## VI.    The Traceability Requirement Is a Mandatory Element of Standing

Traceability, the second element of standing, focuses on the factual allegations that directly trace the causal connection between a defendant's conduct and a plaintiff's injury. Traceability particularly requires that the plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury. *Lujan*, 504 U.S. at 560-61 (quoting *Simon*, 426 U.S. at 41-42).

Moreover, "class representatives do not have standing to sue defendants who have not injured them, even if those defendants have allegedly injured other class members." 1 Newberg on Class Actions § 2:5 (5th ed.). Therefore, at least one Named Plaintiff must have standing for each of the state-based claims the complaint asserts. *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005), as amended (Sept. 22, 2005).

In this case, traceability requires that a Named Plaintiff must allege factual conduct (VCD sales) by an individual Wholesaler traceable to that Named Plaintiff's injury (payment for VCDs or fear of disease) for each state claim asserted. ECF No. 728 at 16-19. Judge Kugler found that the PMMMC and PELMC may not make conclusory allegations that treat Wholesalers indiscriminately and reference only the existence of collective nationwide sales of unidentified VCD product. ECF No. 728 at 16-19. The inability to establish traceability regarding certain named defendants

demonstrates an absence of standing as to claims asserted against those defendants. *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 461.

In short, for this Court to have jurisdiction over the state law claims asserted in the PMMMC and PELMC, at least one Named Plaintiff must have standing for each of the state-based claims he or she seeks to bring. And, to have that standing, each Named Plaintiff must be able to trace each Wholesaler's conduct to his or her injury giving rise to the subject state law claim. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 53, n.2 (2006).

## VII.  The Named Plaintiffs Do Not Have Standing to Assert State Law Claims Where They Fail to Allege Sufficient Facts to Fairly Trace Specific Wholesalers' Conduct to Their Injury

Despite multiple attempts at amendment, and numerous bites at the apple, Named Plaintiffs have, in their PMMMC and PELMC, failed to trace any conduct by Wholesalers ABC, Cardinal Health, or McKesson (*i.e.*, the sale of VCDs) to a Named Plaintiff's alleged injury (*i.e.*, fear of disease or payment for VCD purchase) that would give rise to the state law claims alleged.

For example, a typical Named Plaintiff's factual allegations assert the following, with no mention of any Wholesaler:

> 19.    Plaintiff Miranda Dudley is a North Carolina resident and citizen. During the class period, Plaintiff Dudley paid money for one or more of Defendants' VCDs, including purchases of VCDs manufactured, distributed, or sold by the Teva Defendants and the ZHP Defendants…The product sold by Defendant Teva ("Teva Product") bore a unique NDC which denoted that it was indeed sold,

manufactured, or distributed into the United States drug supply chain
by the Teva Defendants. Specifically, the Teva Product that Plaintiff
[Dudley] purchased was manufactured by Defendant Teva, and sold in
the United States by Defendant Teva. At least some of this Teva
Product ultimately purchased by Plaintiff Dudley was purchased from
Defendant Teva and distributed to Beulaville Pharmacy, (along with
other Retail Pharmacy Defendants), who then sold the product to
Plaintiff Dudley.

ECF No. 1382 B-1 at ¶ 19. And even factual allegations by Named Plaintiffs that

mention a Wholesaler typically cite only "John Doe" Wholesalers:

47….At least some of this ZHP Product ultimately purchased by
Plaintiff Childs was purchased from Defendant ZHP by John Doe
Wholesalers who then distributed and resold that ZHP Product to Main
Line Health Pharmacy…

ECF No. 1382 B-1 at ¶ 47.

When the Complaints do name individual Wholesalers, the allegations are

no less conclusory; for example:

155.  Defendant McKesson Corporation sold a large portion of the
contaminated, adulterated and/or misbranded VCDs that were
ultimately paid for by U.S. consumers and TPPs during the class period
as defined below.

156. The VCDs distributed by Defendant McKesson Corporation
included VCDs manufactured by all Manufacturer Defendants…

ECF No. 1382 B-1 at ¶155-56.

Thus, with regard to most state law claims, the PMMMC and PELMC: (1) fail

to differentiate between the many Defendants in the case and the conduct alleged to

have caused injury; (2) fail to identify specific Wholesalers as the subject of the

allegations and typically rely instead on allegations as to "John Doe" Wholesalers;

(3) fail to identify an actual VCD product(s) sold to a Named Plaintiff that allegedly caused injury to that plaintiff; and (4) fail to identify and/or trace the conduct of other Wholesalers where just one Wholesaler's conduct is traced to a Named Plaintiff's injury. In short, with regard to most of the state claims asserted, Named Plaintiffs fail to allege traceability as to Wholesalers in nearly every meaningful way. In the absence of such traceability allegations, Named Plaintiffs lack standing to bring the asserted state claims.

### A.    The PMMMC and PELMC allegations are merely conclusory and do not differentiate Wholesalers from other Defendants

This Court previously applied the *Lujan* court's reasoning to hold that Named Plaintiffs in the Valsartan PMMMC and PELMC failed to demonstrate traceability when they made only conclusory allegations that "lump[ed] Defendants together." MTD Op. 2 at 17. In that instance, the Court used as an example the Plaintiffs' PELMC allegation that:

> "Defendants 'distributed contaminated, adulterated and/or misbranded VCDs in the United States, including in the State of New Jersey."

The Court held:

> These allegations do not show that one of the Named Plaintiffs has alleged an injury that is traceable to each of the named Defendants. Put differently, these allegations and the allegations like them do not show that the Named Plaintiffs can assert their own direct claim against a named Defendant.

MTD Op. 2 at 17.

- 10 -

Yet despite this, the PMMMC and PELMC allegations still fail to show that Named Plaintiffs can assert their own direct claim against a named Wholesaler. For example, PELMC Named Plaintiff Molinaro asserts only that he "paid money for one or more of Defendants' VCDs, including purchases of VCDs manufactured, distributed, or sold by ZHP Defendants." ECF 1382 B-1, ¶ 28. The allegation does not identify ABC, Cardinal Health, or McKesson. The allegation does not identify a particular VCD pharmaceutical product, and the allegation does not identify any conduct of ABC, Cardinal Health, or McKesson vis-à-vis Molinaro. Indeed, Named Plaintiff Molinaro fails to allege conduct by any Wholesaler whatsoever. This allegation is nothing more than a "conclusory allegation that lump[s] Defendants together" and therefore does not show requisite traceability. MTD Op. 2 at 17.

### B.    The PMMMC and PELMC allegations fail to identify, much less trace conduct by, actual Wholesalers

Beyond summary allegations regarding collective "Defendants," a cursory examination of the PMMMC and PELMC demonstrates the absence of jurisdiction of this Court as to Wholesalers on the bulk of the state claims alleged in those Complaints, as they fail to make factual allegations tracing actual Wholesaler conduct to a Named Plaintiff's injury, or to even allege Wholesaler involvement whatsoever:

- **The PELMC fails to identify any Wholesaler (specific Wholesaler Defendant or "John Doe") (much less conduct traceable to a Named Plaintiffs' injury) for the following 32 state law claims:** Alaska, Arizona,

- 11 -

Colorado, Delaware, D.C., Hawaii, Idaho, Iowa, Kansas, Maryland, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin and Wyoming (Exhibit 2 "States & Territories Where PELMC Claims Fail"; *see also* Exhibit 4 "PELMC Wholesaler Allegations Analysis")

- **The PMMMC fails to identify any Wholesaler (specific Wholesaler Defendant or John Doe) (much less conduct traceable to a Named Plaintiffs' injury) for the following 42 state law claims:** Alabama, Alaska, Arizona, Colorado, Connecticut, Delaware, D.C., Georgia, Hawaii, Idaho, Indiana, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, Wisconsin and Wyoming (Exhibit 3 "States & Territories Where PMMMC Claims Fail"; *see also* Exhibit 5 "PMMMC Wholesaler Allegations Analysis")

The reason for Named Plaintiffs' continued failure to allege facts regarding Wholesalers' conduct in those 32 and 42 states is clear: Named Plaintiffs have no such facts to allege. In their Reply to Wholesalers' Opposition to Plaintiffs' Motion for Leave to Amend, Plaintiffs represented that Named Plaintiffs were moving to amend to make "express allegations" against specific Wholesalers. Reply at 9. Necessarily then, in each instance where a Named Plaintiff in the PELMC or PMMMC has not, at this point in the litigation, expressly identified a specific Wholesaler as the distributor of that Named Plaintiff's VCDs giving rise to a particular state claim, the Court can and should conclude that such foundational factual allegations are not available, and never will be.

Nor do allegations as to "John Doe" Wholesaler pass muster on the traceability front. The PMMMC and PELMC are frontloaded with claims that "John Doe Wholesalers" were involved in conduct that caused injury to Named Plaintiffs. But "traceability" requires that a Named Plaintiff must establish that a specific defendant's challenged actions, and *not the actions of some third party*, caused the Named Plaintiff's injury. *Lujan*, 504 U.S. at 560-61 (quoting *Simon*, 426 U.S. at 41-42).

In *Marulli v. Alloy*, No. 04-2869, 2006 BL 145498, at *8 (D.N.J. Sept. 22, 2006), plaintiffs filed their complaint, which included John Doe allegations. However, over the next two years, plaintiffs failed to identify the remaining unnamed Defendants, failed to make any attempt to identify the remaining unnamed Defendants, and failed to further amend their Complaints to eliminate the John Doe allegations. *Id.* As the complaint had been amended once, the District Court of New Jersey dismissed the John Doe allegations with prejudice, holding, "[a]s Plaintiffs have failed to name the John Doe Defendants, this Court may exercise its discretion and dismiss the claims against Defendants still unnamed at this point in the litigation."[1] *Id.* at *8.

---

[1] Further, pursuant to Federal Rule of Civil Procedure 21, "parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just." *Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (citing Fed.R.Civ.P. 21). District Courts in the Third Circuit have used this Rule to exclude John Doe parties from an action when appropriate. *Id.* (citing Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002)); *see also Atlantic Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 625 (E.D. Pa. 1997)

The Court should do the same in this case. "In the adversarial system of litigation the plaintiff is responsible for determining who is liable for [his] injury." *Arthur v. Maersk, Inc.*, 434 F.3d 196 , 212 (3d Cir. 2006) (citation omitted). Just like *Marulli*, this litigation has existed for years and the discovery deadline has passed, yet the PMMMC and PELMC *still* fail to adequately plead who, specifically, is liable for Named Plaintiffs' alleged injuries. Rather, the PMMMC and PELMC continue to inappropriately rely on "John Doe" Wholesaler(s) allegations in an attempt to sidestep the lack of traceability to the named Wholesaler Defendants. Indeed, for most of the state claims brought, where there are any Wholesaler allegations at all, they are only "John Doe" Wholesaler assertions which must necessarily be dismissed. Consequently, the PMMMC and PELMC amendments would be futile, as those "John Doe" allegations would be dismissed leaving no allegations that state a claim against Wholesaler Defendants.

### C.      The PMMMC and PELMC fail to identify the VCD products or sales made the basis of most state law claims

The PMMMC and PELMC fail to identify a single specific VCD NDC (the identifying product number for a pharmaceutical) sold to a particular Named Plaintiff, and also fail to identify a single sales transaction in which a specific Wholesaler was involved.  Instead, for example, PELMC Named Plaintiff Kelly

---

("fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places' . . ., however, . . . `[f]ictitious names must eventually be dismissed, if discovery yields no identities.'" (citations omitted)).

alleges that he "paid money for one or more of Defendants' VCDs, including purchases of VCDs manufactured, distributed, or sold by ZHP Defendants." PELMC ¶ 48 As to Wholesalers, he alleges only that "*[a]t least some*" of this (unidentified) ZHP Product "was purchased from Defendant ZHP *by John Doe Wholesalers*." *Id.* (emphasis added).

*In Re Franklin Mut.* makes clear that there must be more tracing than this meager attempt. In that case, "[b]ecause the plaintiffs did not link an investment adviser defendant, distributor defendant, or director defendant to a particular fund, the court could not tell whether the Named Plaintiffs' injuries were fairly traceable to the defendants' alleged misconduct and consequently whether they had standing to sue the funds," 388 F.Supp.2d at 463; MTD Op. 2 at 17-18 (applying *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 461).

Here, the vague term "ZHP Product(s)" fails to identify what product or even how many products (Valsartan 30 mg? Valsartan 15 mg plus amlodipine?) may be the subject of the Named Plaintiff's state claim. And the problem does not end there, as the proposed amended Complaint acknowledges Named Plaintiff Kelly may have purchased unidentified VCDs manufactured by other Defendants, as well. PELMC ¶ 48 (Plaintiff Kelly "paid money *for one or more of Defendants' VCDs*, including purchases of VCDs manufactured, distributed, or sold by ZHP Defendants.") (emphasis added). The problem is compounded because Named Plaintiffs impliedly

admit that the supply chain (and thus the relevant Wholesalers) may very well be different for each separate VCD NDC. *Id.* (alleging, with respect to Wholesalers, only that "*[a]t least some*" of this amorphous "ZHP Product" "was purchased from Defendant ZHP by John Doe Wholesalers." (emphasis added).

Had the plaintiffs in *In re Franklin* simply alleged that "at least some" of the collective, undifferentiated mutual funds were linked to John Doe defendants, the court would have dismissed those claims as not being traceable to each defendant. Likewise, claims regarding these undifferentiated VCDs that are not traceable to each Wholesaler Defendant should be dismissed. The failure of this required traceability is applicable to each and every state law claim asserted in the PMMMC and PELMC, and as a result, each and every of the Named Plaintiffs' state law claims should be dismissed for lack of standing.

### D.    Even where a Named Plaintiff in a particular state has identified one Wholesaler's conduct as traceable to an injury, there is no standing as to any other untraced Wholesaler Defendants

The law is well-established that there is no basis for standing as to state-specific class claims against an individual defendant where no Named Plaintiff in that state can trace his or her injury to a particular defendant. *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1096 n.18 (3d Cir. 1975). New Jersey district courts have faithfully followed *Haas*. For example, *Franklin Mut. Funds Fee Litig.* holds that, if the Named Plaintiffs cannot or do not assert their own direct claim against a named

defendant, they may not bring a claim against that defendant on behalf of other investors." 388 F. Supp. 2d at 461. In short, the law requires a Named Plaintiff who has standing to bring the state-law-based-claim against that particular defendant.

The PMMMC and PELMC do not meet this *Haas* requirement. For example, a Named Plaintiff in Arizona may have alleged that Wholesaler McKesson's conduct was the sale of a VCD product in the supply chain that reached the Named Plaintiff and allegedly caused his injury-in-fact. However, if there are no other allegations against ABC or Cardinal Health, and no other Named Plaintiffs in Arizona with such claims, then Named Plaintiffs lack standing as to ABC and to Cardinal Health as to claims under the laws of Arizona. Thus, Plaintiffs' Motion for Leave should be denied as futile as to state law claims against specific Wholesaler Defendants as to which Named Plaintiffs have failed to demonstrate standing. Exhibits 2 and 3.

## VIII. Amendment of Plaintiffs' State Consumer Protection Statutory Claims Would Be Futile and the Special Master's Ruling Granting Leave to Amend Those Claims Should Not Be Adopted by the Court

Finally, Wholesalers respectfully object to the Special Master's ruling with respect to Plaintiffs' state consumer protection statutory claims. The Report erred in granting Plaintiffs "leave to amend the PPIMC and PELMC to assert claims under those statutes" that "may only require deceptive or unfair conduct and resultant damages." Report at 29. The Special Master's ruling on this issue stands in direct contradiction to his rulings on negligence, negligent misrepresentation, fraud, and

express warranty. The Report denied Plaintiffs leave to amend their negligence claims against Wholesalers, noting that the Proposed Amended Master Complaints did not include "an allegation that any Wholesaler Defendant knew of the nitrosamine contamination and failed to take reasonable steps in response to such knowledge." Report at 34, 37. The Report also found that "the proposed Amended Master Complaints do not allege a viable basis for an express warranty claim against the Wholesaler Defendants," and that Plaintiff's proposed amended fraud claims (including negligent misrepresentation) failed because "there are no allegations from which knowledge of falsity may be inferred as at least plausible." Report at 17, 27-30. In light of the Report's findings that Plaintiffs have not included allegations sufficient to plead negligence, negligent misrepresentation, fraud, or express warranty, any amendment seeking to allege "deceptive or unfair conduct" would be futile. As such, Wholesaler Defendants respectfully submit that the Special Master erred in recommending that Plaintiffs be permitted to amend their claims for violations of consumer protection statutes.

## IX.    Conclusion

It would be fundamentally inappropriate to permit the Named Plaintiffs, who have alleged no facts tracing Wholesaler conduct to Named Plaintiff injury in more than 80% of the state or territory claims at issue, to pursue those claims. Named Plaintiffs allege no conduct by Wholesalers in those states or territories that is fairly

traceable to Named Plaintiffs' alleged injury-in-fact such that standing could exist, and there are no factual allegations to support the existence of any actual case or controversy involving Wholesalers under those states or territories' laws.

Therefore, Wholesalers specifically object to the ruling of the Special Master as set forth above and request that the Court sustain the objections and reverse the Special Master's grant of leave to Plaintiffs to file certain state law claims against specific Wholesaler Defendants and to dismiss those state-law-based claims with prejudice against Wholesalers in the following five instances, as well as the state consumer protection statutory claims:

First, where a Named Plaintiff does not reside and has not been injured, as set forth in Manufacturers' Brief and incorporated fully herein:

- In the PELMC: Alaska, Arizona, Colorado, Delaware, District of Columbia, Hawaii, Idaho, Iowa, Maryland, Michigan, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Dakota, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming (Exhibit 2; *see also* Exhibit 4)

- In the PMMMC: Alabama, Alaska, Arizona, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Indiana, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, Wisconsin, Wyoming (Exhibit 3; *see also* Exhibit 5)

Second, where there are no allegations identifying any Wholesaler – either named or "John Doe" – or any Wholesaler conduct:

- In the PELMC: Alaska, Arizona, Colorado, Delaware, District of Columbia, Hawaii, Idaho, Iowa, Kansas, Maryland, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming (Exhibit 2; *see also* Exhibit 4)

- In the PMMMC: Alabama, Alaska, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Indiana, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, Wisconsin, Wyoming (Exhibit 3; *see also* Exhibit 5)

Third, where the only Wholesaler conduct identified is conduct by "John Doe" Wholesalers:

- In the PELMC – 10/52 fail: Alabama, Arkansas, California, Connecticut, Florida, Illinois, Kentucky, Maine, Minnesota, New Jersey (Exhibit 2; *see also* Exhibit 4)

- In the PMMMC – 3/52 fail: Arkansas, Pennsylvania, Texas (Exhibit 3; *see also* Exhibit 5)

Fourth, where there are no allegations by any Named Plaintiff in that state tracing an alleged injury-in-fact to conduct by a certain Wholesaler, despite that Named Plaintiff's allegations regarding other Wholesalers:

**PELMC** (Exhibit 2; *see also* Exhibit 4):

- **AmerisourceBergen – 47/52 state causes of action fail (90.38%):** Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming

- **Cardinal Health – 49/52 state causes of action fail (94.23%):** Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming

- **McKesson – 44/52 state causes of action fail (84.61%):** Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming

**PMMMC** (Exhibit 3; *see also* Exhibit 5):

- **AmerisourceBergen – 51/52 state causes of action fail (98.07%):** Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New

Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming

- **Cardinal Health – 49/52 state causes of action fail (94/23%):** Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming

- **McKesson – 47/52 state causes of action fail (90.38%):** Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, Wyoming

Fifth, where Named Plaintiffs' have failed to adequately trace Wholesaler conduct to a Named Plaintiff injury through failure to identify the VCD products sold, any Wholesaler-related sales transactions and/or any Wholesaler conduct vis-à-vis a Named Plaintiff (all state claims alleged).

Sixth, all state law consumer protection and similar claims not previously dismissed.

Dated: October 29, 2021

Respectfully submitted,

*/s/     Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

**Counsel for AmerisourceBergen
Corporation**

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
CROWELL & MORING
1001 Pennsylvania Avenue NW
Washington., D.C. 20004
Tel.: (202)624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com

**Counsel for Cardinal Health, Inc.**

D'Lesli M. Davis
Ellie K. Norris
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
Email: dlesli.davis@nortonrosefulbright.com
Email: ellie.norris@nortonrosefulbright.com

**Counsel for McKesson Corporation**

- 23 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of October, 2021, I electronically filed

the foregoing with the Clerk of Court by using the CM/ECF system which will

send a notice of electronic filing to all CM/ECF participants in this matter.

*/s/    Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
