# EXHIBIT J

1        **UNITED STATES DISTRICT COURT**
         **FOR THE DISTRICT OF NEW JERSEY**
2    _____
                                        **CIVIL ACTION NUMBER:**
3
     **IN RE:  VALSARTAN PRODUCTS**     **19-md-02875-RBK-JS**
4    **LIABILITY LITIGATION**
                                        **TELEPHONIC STATUS**
5    _____   **CONFERENCE WITH ORAL**
                                        **ARGUMENT AND RULINGS ON**
6                                       **DEFENDANTS' FACT SHEETS**
          Mitchell H. Cohen Building & U.S. Courthouse
7         4th & Cooper Streets
          Camden, New Jersey  08101
8         July 29, 2020
          Commencing at 10:20 a.m.
9
     **B E F O R E:**            **THE HONORABLE JOEL SCHNEIDER,**
10                               **UNITED STATES MAGISTRATE JUDGE**
                                 **AND**
11                               **THE HONORABLE ROBERT B. KUGLER,**
                                 **UNITED STATES DISTRICT JUDGE**
12
     **A P P E A R A N C E S:**
13
          MAZIE SLATER KATZ & FREEMAN, LLC
14        BY:  ADAM M. SLATER, ESQUIRE
          103 EISENHOWER PARKWAY
15        ROSELAND, NEW JERSEY  07068
          For the Plaintiffs
16
          GOLOMB & HONIK, P.C.
17        BY:  RUBEN HONIK, ESQUIRE
          1835 MARKET STREET, SUITE 2900
18        PHILADELPHIA, PENNSYLVANIA  19103
          For the Plaintiffs
19

20        LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR P.A.
          BY:  DANIEL A. NIGH, ESQUIRE
21        316 S. BAYLEN, SUITE 600
          PENSACOLA, FL 32502
22        For the Plaintiffs

23            Carol Farrell, Official Court Reporter
                      cfarrell.crr@gmail.com
24                       856-318-6100

25    Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.

1   **A P P E A R A N C E S (Continued):**

2

3       KANNER & WHITELEY, LLC
        BY:  CONLEE S. WHITELEY, ESQUIRE
        701 CAMP STREET
4       NEW ORLEANS, LOUISIANA  70130
        For the Plaintiffs

5

6       GOLDENBERGLAW, PLLC
        BY:  MARLENE J. GOLDENBERG, ESQUIRE
7       800 LASALLE AVENUE, SUITE 2150
        MINNEAPOLIS, MN 55402
8       For the Plaintiffs

9

10      DUANE MORRIS LLP
        BY:  SETH A. GOLDBERG, ESQUIRE
             BARBARA A. SCHWARTZ, ESQUIRE
11      30 SOUTH 17TH STREET
        PHILADELPHIA, PENNSYLVANIA  19103
12      For the Defendants, Prinston
        Pharmaceuticals, Solco Healthcare U.S. LLC,
13      and Zhejiang Huahai Pharmaceuticals Ltd.

14

15      BARNES & THORNBURG LLP
        BY:  SARAH E. JOHNSTON, ESQUIRE
             KRISTEN L. RICHER, ESQUIRE
16      2029 CENTURY PARK EAST, SUITE 300
        LOS ANGELES, CALIFORNIA  90067
17      For the Retailer Defendants and CVS Pharmacy

18

19      NORTON ROSE FULBRIGHT US LLP
        BY:  D'LESLI M. DAVIS, ESQUIRE
        1301 AVENUE OF THE AMERICAS
20      NEW YORK, NEW YORK  10019
        For the Defendant, McKesson

21

22      ULMER & BERNE LLLP
        BY:  JEFFREY D. GEOPPINGER, ESQUIRE
23      600 VINE STREET, SUITE 2800
        CINCINNATI, OHIO  45202
24      For the Defendant, AmerisourceBergen

25

*United States District Court*
*District of New Jersey*

1   **A P P E A R A N C E S (Continued):**

2

3         GREENBERG TRAURIG LLP
          BY:  VICTORIA D. LOCKARD, ESQUIRE
4              LORI G. COHEN, ESQUIRE
               JEFFREY GREENE, ESQUIRE
5         3333 PIEDMONT ROAD, NE, SUITE 2500
          ATLANTA, GEORGIA  30327
6         For the Teva Defendants

7         LEWIS BRISBOIS BIASGAARD & SMITH
          BY:  MEGAN E. GROSSMAN, ESQUIRE
8         550 E. SWEDESFORD ROAD, SUITE 270
          WAYNE, PENNSYLVANIA  19087
9         For the Defendant, AvKARE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   (PROCEEDINGS held via teleconference before The Honorable Joel

 2   Schneider, United States Magistrate Judge, at 10:20 a.m.)

 3           THE COURT:  We're on the record in the matter of the

 4   Valsartan MDL litigation, Docket Number 19-2875.

 5           Let's get the entries of appearance for plaintiffs'

 6   lead counsel who we expect to talk, and whoever is going to

 7   talk on this conference call, please just announce your name

 8   so the court reporter knows who is talking.

 9           Plaintiffs, do you want to put your entries of

10   appearance on the record?

11           MR. SLATER:  Good morning, Your Honor.  Adam Slater

12   on behalf of the plaintiffs.

13           MR. HONIK:  Good morning, Your Honor.  Ruben Honik

14   for plaintiff.

15           MR. NIGH:  Good morning, Your Honor.  Daniel Nigh for

16   plaintiffs.

17           MS. WHITELEY:  Good morning, Your Honor.  Conlee

18   Whiteley for plaintiffs.

19           THE COURT:  Why don't we get the appearances now for

20   the lead counsel for the defendants.

21           MR. GOLDBERG:  Good morning, Your Honor.  Seth

22   Goldberg for the ZHP parties and defendants.

23           MS. COHEN:  Good morning, Your Honor.  This is Lori

24   Cohen for the Teva defendants.

25           MS. LOCKARD:  Victoria Lockard also for the Teva
```

1   defendants.

2           MR. GREENE:  Jeff Greene, also for the Teva

3   defendants.  And, Your Honor, Dr. Maura Grossman is also on

4   the line as well.

5           MS. JOHNSTON:  Good morning, Your Honor.  Sarah

6   Johnston on behalf of the retail and pharmacy defendants.

7           MR. GEOPPINGER:  Good morning, Your Honor.  Jeff

8   Geoppinger on behalf of wholesaler defendants and

9   AmerisourceBergen.

10          THE COURT:  All right.  I think that's everyone.

11          Thank you for your letters which we have received,

12  reviewed, including, Mr. Greene, Dr. Grossman's affidavit.

13          I've spoken with Judge Kugler.  He's going to be

14  joining us this morning after we're done with the issues we

15  need to address.  He's in a hermetically sealed room somewhere

16  in Washington, D.C., dealing with his FISA business but will

17  make himself available for this call because I know there are

18  a number of issues that he has to deal with.

19          I'd like to address on this call the issues that we

20  have to deal with, and if you'll indulge me, let's save the

21  Teva TAR issue for last and address and resolve all the other

22  issues we are going to address on this call, and then we'll

23  deal with the Teva TAR issue at the end of this call.

24          For the benefit of those people who weren't on our

25  call yesterday, just for the record, we had a call late

1   yesterday afternoon.  It wasn't on the record.  The Court sat

2   in, didn't make any rulings, where plaintiffs and Teva met and

3   conferred to see if they can come to some sort of resolution

4   of this TAR issue.  Dr. Grossman was kind enough to be on the

5   call.  Plaintiffs' consultant was on the call as well.

6          Where we left things last night, I think we had a

7   very good, candid conversation of the issues.  There is a

8   good-faith disagreement amongst the parties.  Where we left

9   things was I asked Mr. Slater, on behalf of the plaintiffs, if

10  he would just confer with his group to find out how they

11  wanted to proceed.  Given the late notice, I relayed to

12  Mr. Slater that it was not unreasonable if plaintiffs'

13  position was that they wanted more time to talk amongst

14  themselves about it.  We'll find out at the end of this call

15  this morning what they have resolved.  Like I said, if

16  plaintiffs don't have a resolution yet, we can talk the end of

17  this week or early next week.

18         So, dealing with the non-TAR issues, let me just go

19  through Mr. Goldberg's letter.

20         The show-cause issue regarding the fact sheets, why

21  don't we save that for when Judge Kugler joins us.

22         Why don't we address the fact sheet issue.  It looks

23  like we are very, very close to finalizing all the fact

24  sheets.  I'd like to get them finalized and entered this week

25  and put that behind us.

1              So the first item listed in the letter is the

2    manufacturer defendant fact sheet.  Is the only issue,

3    counsel, this introductory paragraph when responses have to be

4    filed?  Why don't we hear from Mr. Goldberg first.

5              MS. SCHWARTZ:  Your Honor, this is Barbara Schwartz

6    on behalf of the ZHP defendants, and that's right.  The only

7    dispute remaining for the manufacturers is the first paragraph

8    issue, which is -- for the manufacturer defendants' fact

9    sheets, the only remaining dispute is the first paragraph, but

10   this same dispute also extends to the defendant fact sheets

11   for the other levels of the supply chain.

12             THE COURT:  Okay.  So just refresh my recollection,

13   counsel.  I know we did the -- whatever it was.  Was it 45

14   days, 45 days, 45 days, or was it 60 days?  I don't remember.

15             MS. SCHWARTZ:  It was 60 days.

16             THE COURT:  Okay.  So the first set of defendants

17   that are going to respond to the fact sheets, are they the

18   retailers or the manufacturers?

19             MS. SCHWARTZ:  In most cases, yes, it will be the

20   defendants closest to the consumer in the supply chain, so

21   often the pharmacy.

22             THE COURT:  All right.  And, again, to refresh the

23   Court's recollection, the Court had ordered, if I remember,

24   correct me if I'm wrong, that we're talking about the named

25   class representatives and another, what, 20 people?

1          MS. SCHWARTZ:  That's correct, 20 personal injury

2     plaintiffs to be identified by the plaintiff.

3          THE COURT:  Okay.  They have not done that yet; is

4     that what you're saying?

5          MS. SCHWARTZ:  That's right.

6          THE COURT:  All right.  But everybody knows who the

7     named class reps are, correct?  Do you have the approximate

8     number of how many there are?

9          MS. SCHWARTZ:  I believe there are about 35 class

10    representatives.

11         THE COURT:  All right.  So let's just take that

12    number.  It could be plus or minus.  Have those 35 already

13    answered and responded to the fact sheets?

14         MS. SCHWARTZ:  Those 35 have submitted fact sheets,

15    and we only have disputes as to the substantial completion of

16    that group in about five instances.

17         THE COURT:  All right.  So, again, we're talking

18    rough numbers.  So there are at least 30 plaintiffs, where as

19    soon as the fact sheet is entered this week, the retailers

20    have 60 days to respond to those 30 people, right?

21         MS. SCHWARTZ:  That's right.

22         THE COURT:  All right.  And then we have five to work

23    out.  And plaintiffs -- I'm surprised at this.  I guess maybe

24    I didn't drill down on this enough.  I had assumed that the

25    plaintiffs had already identified the 20, but Mr. Slater or

1  some representative from the plaintiffs, when do you intend to

2  identify the additional 20 people?

3          MR. SLATER:  Your Honor, Adam Slater -- yeah, I was

4  going to hand it off to Daniel.

5          MR. NIGH:  Sorry, Adam.

6          MR. SLATER:  No, no, I'm letting you answer the

7  question.

8          MR. NIGH:  Okay.  This is Daniel Nigh.

9          We -- I don't know if Marlene made the proposal yet,

10  but the retailers were asking for 90 days to complete the

11  defense fact sheet, and we had suggested that, rather than

12  that be the deadline, we would give 30 days to identify the

13  bodily injury cases from today, and then they would have 60

14  days, so that would effectively give them 90 days, to

15  complete --

16          MS. RICHER:  Daniel, this is --

17          MR. NIGH:  -- the fact sheet.

18          (Simultaneous crosstalk.)

19          MS. RICHER:  And, Your Honor, this is Kristen Richer

20  with -- go ahead, Marlene.

21          MS. GOLDENBERG:  Okay.  So, Kristen and I had spoken

22  yesterday, we had a productive conversation.  I'm sorry.  This

23  is Marlene Goldenberg for the plaintiffs.

24          And Kristen and Sarah and I had a productive

25  conversation yesterday as part of being able to work through

some of the other disputes on the fact sheet.  What we agreed

was that for the class-action plaintiffs, their trigger

deadline to start answering was going to be August 15th, and

the trigger deadline for the personal injury plaintiffs was

going to be August 31st; and with that -- with both of those

deadlines in mind, they would respond to each group of defense

fact sheets within 60 days of those trigger deadlines.

THE COURT:  But, Ms. Goldenberg, when do plaintiffs

intend to identify the 20 additional people at issue?

MS. GOLDENBERG:  Judge, we had talked with the

retailer defendants about this yesterday, and because they had

requested additional time to respond as part of this

agreement, we said we would give them those names on August

31st.

THE COURT:  Can I just ask the question, what's

taking so long?

MS. GOLDENBERG:  Your Honor, if you'd like them

sooner, we can certainly work on making sure that's --

ELECTRONIC VOICE:  Joining the meeting.

THE COURT:  Listen, I'm trying to move things along,

and that's fine.  If we say plaintiffs have to identify the 20

people by August 15, and retailers have to respond within 60

days of August 31st, that gives the retailers a little bit

more, an extra I guess two weeks or so.  They've asked for 30

days but we're giving them an extra two weeks.  It sounds like

1  they asked for 90 days, as opposed to the original 60 days,

2  but if you wait 30 days to identify the 20 additional people,

3  that doesn't really help the retailers because then they'll

4  still have 60 days to respond.

5          So why don't we say that the trigger date for the

6  class-action plaintiffs is 60 days from August 15; the trigger

7  date for the personal injury plaintiffs is 60 days from August

8  31st; but the 20 additional people have to be identified by

9  August 15.  And so that will give the retailers an extra 15

10 days, as opposed to their requested 30 days to respond.  Okay?

11 And we'll keep the other groups at 60 days.

12         MS. GOLDENBERG:  That's fine, Your Honor.  We'll be

13 happy to do that.

14         THE COURT:  All right.  But now we have the issue of

15 the -- well, so then we don't have to work -- well, do we have

16 to worry about this trigger now?  I guess --

17         MS. GOLDENBERG:  We do, Your Honor.  And this is

18 Marlene Goldenberg again.  The --

19         THE COURT:  Yes.

20         MS. GOLDENBERG:  -- that we have on the trigger is

21 whether or not the plaintiff actually is substantially

22 complete, and our proposal to the defendants has been, as long

23 as Section 1 of the fact sheet is substantially complete,

24 which provides, you know, pharmacy records, information about

25 use, and everything that they would need to start going

1    through their records to tell us where our clients' pill came

2    from, what our clients took, and, you know, what the chain of

3    distribution is, to us, that's actually more than what they

4    need because Section 1 is overly inclusive and has other

5    information outside of that.

6           Defendants' position has been that the entire fact

7    sheet has to be what they call substantially complete, and I

8    think that just provides so much ambiguity because if a client

9    forgot what year they declared bankruptcy, for example, I mean

10   that could be a reason for holding up a defendant's fact sheet

11   process that is going to take in excess of a half a year to

12   complete.

13          THE COURT:  Well, let me say two things in response

14   to what you had to say.  One is if -- I hope the defendants

15   don't make an argument that a fact sheet is not substantially

16   complete because it's simply missing the date that a

17   bankruptcy was filed.  So I wouldn't consider that a

18   substantial oversight.

19          The 20 people that you're going to identify by August

20   15, Ms. Goldenberg, have they already answered the fact

21   sheets?

22          MS. GOLDENBERG:  We are taking that into

23   consideration in selecting the 20, yes.

24          THE COURT:  Okay.  The Court's ruling on this issue

25   is going to leave the fact sheets like they are right now and

1   not change them.  We negotiated this ad nauseam, and one of

2   the concerns I have is that I don't want to incentivize a

3   plaintiff not to complete a fact sheet, and if the Court says

4   that if they just fill out a certain section, then that

5   triggers the defendants' duty to do what they have to do, that

6   might -- capital "M" -- incentivize the plaintiff not to do a

7   thorough and complete job when they complete the fact sheet.

8           With regard to the substantial completion argument, I

9   don't really see it as a big deal because it really has to be

10  a material oversight to be not substantially complete, and if

11  there is a dispute about this, you know you can raise it with

12  the Court right away.  We talk every two weeks.  So I don't

13  see this as a big problem, and I think if we accepted

14  plaintiffs' alternative proposal, it could lead to unforeseen

15  results.  So let's just leave it as it is now, and if, as I

16  expect, things should go pretty smoothly.  So that takes care

17  of that issue.

18          I'm sorry, Ms. Goldenberg, did you have something to

19  add?

20          MS. GOLDENBERG:  No, Your Honor, I'm sorry.

21          THE COURT:  Okay.  So then I'm looking at the letter

22  from Mr. Goldberg.  The retail pharmacy fact sheets -- the

23  manufacturer fact sheets are now finalized.  Retail pharmacy,

24  are they finalized with the Court's ruling?

25          (Simultaneous crosstalk.)

```
1          MS. RICHER:  This is Kristen Richer for the retail
2   pharmacy defendants.
3          We have reached substantive agreement with plaintiffs
4   on any disagreements that we had, and we're just cleaning up
5   the document now, and hope to have a day or two to just run
6   the final by their clients.  So what we would propose is that
7   we send you the final version no later than Friday so the
8   Court can approve it and enter the fact sheet.
9          THE COURT:  Friday's great.
10         MS. RICHER:  But in terms of substance, we're there.
11         THE COURT:  Great.
12         Wholesalers, apparently, there's three issues with
13  the wholesalers, so why don't we deal with that.  Why don't we
14  deal with those three issues.
15         I'm looking at Mr. Goldberg's letter, Page 6.  We'll
16  start with the plaintiffs.  This repackager/relabeler issue,
17  that's an interesting issue.  How many repackagers and
18  relabelers are there in the case?
19         MS. GOLDENBERG:  Your Honor, this is Marlene
20  Goldenberg again.
21         The short answer to your question is not many.  We
22  have been working productively with many of them to get them
23  through the peripheral dismissal process that we put in place
24  many months ago, and it's actually for that reason that we
25  really don't feel that they need a separate fact sheet here.
```

1   To the extent any of them want to stay in the case, we just

2   want the same information that we get from the wholesalers.

3   If they don't want to stay in the case, the peripheral

4   dismissal defendants' protocol is available to them, and we

5   have, you know, I think worked pretty well in getting

6   defendants who wanted to be out of the case out.

7          THE COURT:  Well, I'm not sure why the wholesalers

8   object.  They're not a repackager -- I don't know.  Why are

9   the wholesalers objecting if we're talking about different

10  parties?

11         MR. GEOPPINGER:  Well, Your Honor, this is Jeff

12  Geoppinger for the wholesalers.  And, basically, what it boils

13  down to, Your Honor, is you even pointed out there's very few

14  left in the case.  They're differently situated.  They have

15  their own program with respect to being peripheral defendants

16  and getting out of the case, which the wholesalers clearly

17  don't, because we've been -- the plaintiffs have made very

18  clear we are not peripheral defendants.  So they just

19  logically don't belong in our fact sheet.

20         And then even -- secondly, more basically, we can't

21  negotiate on behalf of the repackagers.  We negotiated on

22  behalf of the wholesalers.  If the repackagers -- if there is

23  a repackager, as Ms. Goldenberg says, who, quote, unquote,

24  wants to be in the case -- I can't believe there are -- but if

25  there is somebody out there who's still in the case, then I

```
1   think the plaintiffs need to take their requests for discovery

2   to those defendants, not the wholesalers.

3           THE COURT:  Help me.  Do you know of any -- well, are

4   there any repackagers or relabelers on this phone call?

5           MS. GROSSMAN:  Yes, Your Honor.  This is Megan

6   Grossman, and I represent AvKARE, and I think I have the

7   privilege of being one of the only repackagers that's still in

8   this litigation.

9           THE COURT:  Well, kudos to you, Ms. Grossman.

10          MS. GROSSMAN:  Thank you.

11          THE COURT:  How many repackagers or relabelers are

12  left in the case?

13          MS. GROSSMAN:  I believe, from my discussions with

14  the other counsel for the repackagers, that AvKARE is one of

15  the only repackagers that still is in the case or is not

16  actually in the process of getting dismissed as part of the

17  peripheral defendants' CMO that you entered.

18          Of course, I have plans on behalf of AvKARE to try to

19  submit the information to the plaintiffs to take advantage of

20  that CMO as well, but it just has not happened yet.

21          THE COURT:  Do you anticipate --

22          MS. GROSSMAN:  But there were -- I apologize.

23          THE COURT:  Do you anticipate that you will make a

24  request to be dismissed pursuant to that Court order?

25          MS. GROSSMAN:  Yes, Your Honor.  We're in the process
```

1    of collecting all the documents from our client.

2        THE COURT:  How long do you think it will take to

3    make that request?

4        MS. GROSSMAN:  I will make sure that we make that

5    request within 15 days so that we can try to move this process

6    along, keeping in mind the deadlines that Your Honor just

7    discussed with regard to the defendants' fact sheet.

8        THE COURT:  So why don't I say something to the

9    effect that to the extent a repackager or relabeler has not

10   made a request to be dismissed from the case within, say, 30

11   days from today, they'll have to answer this fact sheet.  So,

12   within 30 days, I would expect that we'll know if there's any

13   repackager or relabeler who is not going to make a request to

14   be dismissed from the case.  I don't know why they would do

15   that, but -- and if they don't, if they're part of the case,

16   they have to answer the fact sheet.  Okay?  So let's do it

17   that way.

18        And then if the repackager or relabeler who is left

19   in the case wants to raise an issue about answering the fact

20   sheet, they could raise it with the Court.  So I'll draft

21   something that says something to that effect.

22        But, hopefully, if things go according to plan, all

23   repackagers and relabelers will be in the dismissal process

24   within 30 days, and while they're going through that process,

25   they don't have to answer the fact sheet.  Okay?  I think

1    that's a fair compromise.

2         MS. GROSSMAN:  Understood, Your Honor.  Again, this

3    is Megan Grossman for AvKARE.  And I would welcome an

4    opportunity to have a conversation with plaintiffs' counsel,

5    Ms. Goldenberg, about the issues that were being raised in the

6    wholesalers DFS about repackager issues, because I do believe

7    that there are some questions that were included in the

8    wholesalers defendants' fact sheet that would only be

9    applicable to repackagers, which is why I think Mr. Geoppinger

10   was explaining that he can't negotiate those terms because he

11   doesn't necessarily know what repackagers have as opposed to

12   wholesalers so --

13        THE COURT:  Right.

14        MS. GROSSMAN:  -- if Ms. Goldenberg would like to

15   have a discussion with me about the terms of the defendants'

16   fact sheet, I'm available.

17        THE COURT:  But, Ms. Grossman, let's clarify this.

18   If your client is going to request to be part of this

19   dismissal process, you don't have to answer the fact sheet.

20   So why would you have that discussion with Ms. Goldenberg?

21        MS. GROSSMAN:  Again, this is Megan Grossman, for the

22   record.

23        I would have the discussion with Ms. Goldenberg

24   because it's my understanding -- and I don't want to speak for

25   Mr. Geoppinger or Ms. Goldenberg -- but it's my understanding

```
1   that there were some issues that the wholesalers were trying
2   to delete from the defendants' fact sheet that were only
3   related to repackagers, and so if Your Honor is saying that
4   those issues have to stay in the wholesalers defendants' fact
5   sheet, as opposed to being a separate defendant's fact sheet,
6   I was just offering to speak to Ms. Goldenberg about those
7   specific terms that the wholesalers were trying to delete.
8           THE COURT:  Okay.  In a matter of minutes, we will
9   finalize the wholesalers' fact sheet, so you may not have to
10  speak with Ms. Goldenberg about it, but we'll see because we
11  didn't get --
12          MS. GROSSMAN:  Understood.
13          THE COURT:  -- to two and three yet.  But I think we
14  have resolved number one.
15          The Court's order is going to say something to the
16  effect that if a repackager or relabeler has not requested or
17  been part of this dismissal process within the next 30 days,
18  then they have to answer the wholesalers' fact sheet, and
19  while they're going through that process, they don't have to
20  answer it.  The hope is that to the extent there are
21  repackagers or relabelers who haven't requested to be part of
22  the process, this will incentivize them to move things along a
23  little bit so they don't have to answer the fact sheet.
24          So let's go to number two.  Ms. Goldenberg, the
25  request about the pricing, hasn't the Court already ruled
```

```
 1   about the pricing issue?

 2              MS. GOLDENBERG:  Yes.

 3              THE COURT:  So, doesn't the Court's prior rulings

 4   take care of number two?

 5              MS. GOLDENBERG:  Yes.  So, Your Honor, I'll allow my

 6   class colleagues to chime in if I miss anything, but the Court

 7   absolutely ruled on the global issues relating to pricing, and

 8   we respect those rulings, and we're not trying to change those

 9   here.

10              What we are trying to do, though, is get some pricing

11   information as to a small subset of plaintiffs, and it's our

12   understanding that, you know, again, this is only going to be

13   answered as to approximately 50 different plaintiffs.  If we

14   ever got to a point where the defendants' fact sheet was going

15   to apply to all the plaintiffs in the case, we would be happy

16   to renegotiate this provision, but in order for us to get the

17   information that we'd need on the class side of the case, this

18   pricing information really is important, and that's why we've

19   asked for it here.

20              THE COURT:  Well, Ms. Goldenberg, it sounds to me,

21   with all due respect, and I understand why, that you're trying

22   to get -- not you -- the plaintiffs are trying to get through

23   the back door what they couldn't get through the front door.

24   So the request for the pricing information in number two is

25   denied, for the same reasons that the Court already ruled.
```

1              Let's go to number three.

2              MS. GOLDENBERG:  On this one, Your Honor, I have good

3    news.  Number three, I believe, unless Mr. Geoppinger can tell

4    me I've missed something, was just the trigger deadline that

5    we talked about with all the other defendants, and so I

6    believe that we have made it through this fact sheet, and that

7    we don't have any disputes as to the others.

8              THE COURT:  Great.  So the wholesaler --

9              MR. SLATER:  Your Honor --

10             THE COURT:  I'm sorry, go ahead.

11             MR. GEOPPINGER:  This is Mr. Geoppinger, Jeff

12   Geoppinger for the wholesalers.

13             There is a third issue.  The third issue is the

14   request the plaintiffs have made in the fact sheet for return

15   data and the scope of that request.  Basically, Your Honor,

16   they have asked for -- and I'll just summarize it -- they've

17   asked for us to provide information about returns we got in a

18   individual plaintiff's fact sheet with respect to all returns

19   we got for a period of eight years from the pharmacy that the

20   plaintiff would have gotten their valsartan from at some point

21   along the way in this eight years.  We think that's totally

22   broad.  It's an expansive request for data that's not really

23   tethered to any of the plaintiffs specifically, which is sort

24   of the purpose of the DFS is to answer questions that are

25   related to this specific plaintiff.  So we propose that we

1    provide the return data, which is basically any information we

2    have about getting returns of product from the pharmacy or

3    pharmacies that the plaintiff got their valsartan from, for

4    the period of time that we have agreed is the relevant period

5    of time in the fact sheet, which I believe is six months prior

6    to the first prescription and 30 days after their last.

7              THE COURT:  So, let me make sure I understand

8    correctly, counsel.  As a compromise, you're proposing that

9    let's say a particular plaintiff got their prescription

10   from -- and I'm not picking on a particular company -- CVS

11   down the corner, you said that you would provide information

12   for that particular retail store for the relevant time period?

13             MR. GEOPPINGER:  We would provide information for the

14   pharmacy defendant, Your Honor.  So --

15             THE COURT:  Would it be -- hold on.

16             Would it be just for that retail store that the

17   particular plaintiff went to or CVS or the whole company?

18             MS. DAVIS:  Judge, this is D'Lesli Davis.  I was

19   involved in negotiating and working on that part, if I may.

20             What we anticipate happening, because of the lack of

21   lot and batch numbers, is that a plaintiff will fill out on

22   this plaintiffs' fact sheet, I used Teva NDC Number 1, I got

23   it from CVS in Texas for one year.  I then used a different

24   NDC number from a different manufacturer.  I may have gone to

25   a different pharmacy a year later or two years later, so it's

1    incremental.  And so what would happen is in our proposal, we

2    used something we called the subject time period to

3    distinguish it from the Court's relevant time period of the

4    full time period, and that is the six months before to the 30

5    days after this individual plaintiff's increment from that

6    individual pharmacy.

7         Now, your specific question relates to would we be

8    producing documents from just the Plano, Texas, facility or

9    the entirety of CVS.  And it's the summary of the sales, too,

10   not full documents.  The answer would be if we have detail for

11   that particular pharmacy, we would produce it related to that

12   pharmacy.  If that's not the way that the records were kept, I

13   think if we were in an incremental time period, which is not

14   the full, you know, eight years of the relevant time period,

15   but the subject time period as defined in the fact sheet, we

16   would be willing to look at CVS more broadly because the

17   records might have been kept that way, if that makes sense.

18        THE COURT:  Okay.  What do plaintiffs say about this?

19        MS. GOLDENBERG:  Your Honor, we had originally asked

20   for this question just to read were any affected drugs

21   returned to you by a plaintiff or a relevant pharmacy

22   defendant, and the defendants wanted a time period on that,

23   and so what we offered as a compromise was the same relevant

24   time period that has applied to the rest of their discovery

25   which is January 1st, 2012, through December 31st, 2019.  Our

```
1   concern with limiting the dates in the way that defendants

2   have proposed are just that we don't know when returns

3   happened because somebody might wait to return a product or,

4   alternatively, a different person who took a pill from the

5   same lot and batch might have returned it to a different

6   pharmacy, and that pill might be the one that we would want to

7   test for trial, and what we're trying to avoid here is getting

8   all the way to trial and having one of these groups of

9   defendants come back to us and say, well, hey, we accepted

10  these pills because we know our distribution network, and so

11  we've been able to source pills from the same lot and batch as

12  the one that your plaintiff took, and we've looked at it and

13  it's fine.  And then on our side, we never would have known

14  that pill existed or had a chance to test it.

15          MS. DAVIS:  Judge, the testing is handled through the

16  broader RFPs, and by the time you patchwork together the 50 or

17  so plaintiffs they're going to have, this really becomes a

18  request for all returns information.

19          I would also note that returns happen in the course

20  of business.  This is not a return for a defective product.

21  It's not -- they haven't limited it to recalled product.  So

22  they're asking for returns globally that happen just because

23  the company over-ordered inventory or something is coming up

24  on an expiration.  These are just machinations that happened

25  without any meaning to the issues in the litigation.
```

```
 1              THE COURT REPORTER:  Please identify who just spoke.
 2              UNIDENTIFIED SPEAKER:  That was D'Lesli Davis.
 3              MS. DAVIS:  I'm sorry.  I'm getting a break out.
 4              THE COURT:  Ms. Farrell, that was Ms. Davis.
 5              THE COURT REPORTER:  Thank you.
 6              MS. GOLDENBERG:  And this is Marlene Goldenberg, if I
 7    could just respond to that.
 8              Again, I mean, what we're trying to figure out here
 9    is are there pills that came from our clients' lot or batch
10    that are available for testing.  Whether or not those were
11    returned because of a valsartan recall or because a pharmacy
12    simply ordered too much product, you're right, it doesn't
13    narrow it that way because that's not the reason that would
14    be -- I mean, that's not what what's important.  What's
15    important is these relevant pills are available and we just
16    want to know what they are.  And so that's the reason that
17    we've asked this question, but we also are willing to limit it
18    to the relevant time period that applies to the rest of
19    discovery, and we're also limiting it to the NDC codes that
20    were taken by each plaintiff, and so it really isn't a request
21    for everything that's out there.  We've tried to narrow this
22    as much as we can.
23              THE COURT:  On this particular issue I'm going to
24    rule in defendants' favor.  I think we should keep the focus
25    of these fact sheets where they belong and not get into these
```

1    generic big issues.

2          Ms. Goldenberg, I think your concern about sample

3    product being available is perfectly legitimate, and we've

4    discussed that issue before, but I think there are so many

5    avenues that we've discussed that you're going to get that

6    information that we don't also need it through these

7    individualized fact sheets.

8          I mean, Ms. Goldenberg, haven't we discussed already

9    in the case that you're going to find out one way -- not

10   you -- plaintiffs are going to find out one way or the other

11   whether there is any product available to be sampled that was

12   recalled?  Haven't we been over that issue many times before

13   in this litigation?

14         MS. GOLDENBERG:  Your Honor, my understanding is that

15   yes, we are going to get information about whether product is

16   available.  What I don't have a perfect understanding is at

17   this time is whether or not we will know exactly whether or

18   not that product came from the same lot or batch as what our

19   clients took.  But if that's the Court's ruling, I mean, we

20   certainly can live with that, and if we find that there is a

21   problem later on down the road, then we can raise it at that

22   time.

23         THE COURT:  Okay.  Thank you, Ms. Goldenberg.

24         I think that takes care of the last fact sheet,

25   correct?  So the Court's order is going to say the final,

1   final, final version of all the fact sheets have to be served

2   by Friday.  I'll enter an order blessing them with the time

3   frame that we talked about earlier in this call, and I'm

4   delighted that we finally put the fact sheet and the request

5   for production behind us.

6           Moving on in the letter, the short-form complaints,

7   we'll save that for when Judge Kugler joins us.

8           The coordination of the state court cases, why don't

9   we save that for when Judge Kugler joins us.

10          The schedule for general causation, we'll save that

11  for when Judge Kugler joins us.

12          That leaves us with the last issue that I wanted to

13  discuss on this call, which is the TAR issue.  Mr. Slater, let

14  me turn the floor over to you.

15          MR. SLATER:  Thank you, Your Honor.

16          Following the call yesterday, we had some

17  communication with Teva's counsel, and I think it makes sense

18  to accept your Honor's suggestion that we try to talk for a

19  few more days.  Your Honor, obviously, I'm not going to go

20  through what we discussed yesterday, but I think it's clear we

21  are trying to work with the defendants to find a -- you know,

22  some sort of a compromise.  If not, you know, then obviously

23  we're very comfortable just letting the Court decide the

24  issue.  I think that maybe, so that it doesn't got out of

25  hand, it doesn't drag too long, and since there is so much

 1  that's back and forth that's already occurred, maybe Monday

 2  would be a reasonable day, as opposed to Friday.  It gives us

 3  the weekend, if maybe Monday afternoon works for the Court.

 4  Perhaps that gives us a little more time, but also gives both

 5  sides the urgency to understand that the issue's going to be

 6  decided one way or the other so that we all know what we're

 7  doing because, obviously, the uncertainty is -- it's certainly

 8  creating a lot of issues on our side.  If that's acceptable to

 9  the Court, and there is no, you know, no issue from Teva, I

10  think that's a reasonable approach.

11          MR. GREENE:  Your Honor --

12          THE COURT:  I think -- go ahead, Mr. Greene.

13          MR. GREENE:  Your Honor, this is Jeff Greene for Teva

14  defendants.

15          I think what we had proposed yesterday was that Teva

16  was happy to put a validation protocol together which

17  addressed the concepts that we discussed yesterday, and use

18  that as a starting point for the discussions.  And I think

19  having something concrete in front of the parties would be

20  helpful to that discussion.  You know, we remain the same, you

21  know, we believe that we can work with plaintiffs, if everyone

22  shows up in good faith and is reasonable about the process.

23  Our suggestion is to try that route and have something

24  concrete in front of us.  If plaintiffs want to come back with

25  an alternative --

```
 1              ELECTRONIC VOICE:  Joining the meeting.
 2              MR. GREENE:  -- but I think -- and maybe that puts
 3    the Court in a position where it's choosing one over the
 4    other, and that may be the way it ends up, but we think there
 5    is logic to continuing the discussion.  Yesterday was
 6    productive in identifying the issues.
 7              So what we would propose would be to turn over a
 8    draft validation protocol for discussion and see where that
 9    takes us.  And I think we could have that by Friday, and then,
10    you know, we'll see where that goes from the perspective of
11    further discussions, and if we have to jump back on the phone
12    early next week with the Court, we're certainly willing to do
13    that.
14              MR. SLATER:  Your Honor -- go ahead, I'm sorry,
15    Judge.
16              THE COURT:  No, go ahead, Mr. Slater.
17              MR. SLATER:  Thank you, Your Honor.  Adam Slater for
18    the record.
19              I'm not going to again reargue.  Certainly, if the
20    defense wants to send us a proposed validation protocol, they
21    can.  The Court understands our position that we are not
22    agreeing to any particular proposal that would implicate a
23    validation protocol or what level, but, certainly, there is no
24    harm in them sending information to us.
25              What I would request, if they are going to send a
```

1  protocol to us, however, is the following.  They can send

2  whatever they propose for this case.  I would also like

3  Dr. Grossman to provide to us as well what she would term the

4  most aggressive plaintiffs' side proposal for validation

5  protocol in the similar MDL that she has.  And I'm not

6  being --

7          THE COURT:  Let me jump in, Mr. Slater, because I'm

8  just reading your mind, and I think I'm going to take the wind

9  out of your sales and, if I do, I apologize, but if there is

10  something else you wanted to say, this is the Court's

11  position.  I came into this call saying if you don't agree by

12  Friday, I'm entering my order.  I was up early.  I'm drafting

13  the order already.  There is going to be a long opinion on

14  this, but I want to get this moving.  I'm prepared to enter an

15  order with findings and rulings.  I was going to do it by

16  Friday -- perfectly reasonable, perfectly comfortable.

17          Having a phone call on Monday, late afternoon again,

18  and if you can't agree by Monday, the order is going to be

19  entered Tuesday morning.

20          And what I was going to say is this.  Dr. Grossman,

21  you're on the phone.

22          DR. GROSSMAN:  I am, Your Honor.

23          THE COURT:  I was going to say this.  I was going to

24  say the exact same thing that Mr. Slater was about to say.

25          I know how you feel about sampling and production and

```
 1    this and that.  The Court is very, very seriously considering
 2    requiring Teva to produce all nonresponsive documents to the
 3    plaintiffs.  Now, if I was the plaintiffs and if I was a
 4    rational person, I'm not sure I would want that, because if
 5    this CAL or CMML is as good as everybody says it supposedly
 6    is, they're wasting enormous amounts of time.  But if that's
 7    what the plaintiffs want, given the fact that we negotiated
 8    nine months or so over search terms, and on July 1st, they
 9    find out for the first time that TAR is going to be used, if
10    that's what the plaintiffs want, the Court is very seriously
11    considering giving it to them.  That being said, if I was the
12    plaintiffs, I wouldn't do that because it's just an
13    incredible, it sounds like just an incredible -- I don't want
14    to say waste -- devotion of resources.  So I agree with
15    Mr. Slater that, hopefully, the proposal as to plaintiffs that
16    Teva is going to make is like *The Godfather*.  Here's an offer
17    you can't refuse.  Right?  I think it's in everyone's best
18    interests to make as full a disclosure to plaintiffs as
19    possible.  And, frankly, I'm not the expert in this area, you
20    are, but if Teva is saying that this program is so good and
21    it's better than humans, and we can identify nonresponsive
22    documents, frankly, I don't understand why they have to review
23    them in person by a human before they produce them to
24    plaintiffs.  Because if they're so confident that this system
25    works, just give plaintiffs the documents.  There will be a
```

```
1    callback agreement.  There will be a 502 order entered in the
2    case.  The chances of there being work product or
3    attorney-client privileged material is infinitesimally small,
4    given the types of documents we're dealing with, and they're
5    going to go through a privilege review.  So I agree with
6    Mr. Slater that, hopefully, there will be a fulsome validation
7    process and the offer to plaintiffs will be so good that they
8    can't refuse it.
9          Mr. Slater, did I read your mind?
10         MR. SLATER:  You did, Your Honor.
11         THE COURT:  Okay.  I'm not ruling, but if you can't
12    agree by Monday, I'm ruling.  I promised you that this is not
13    going to linger, deadlines aren't being extended, and I'm
14    going to keep my word.  We're going to get this done and we're
15    going to move it along.
16         So, it sounds to me like there is nothing else we
17    need to talk about.  I would suggest -- I'm going to hang up,
18    get in contact with Judge Kugler, give him the number to call
19    in, and then we'll get going on the second part of this call.
20    Okay?  Everybody all right with that?
21         MR. SLATER:  The same number, Your Honor?
22         THE COURT:  Yes, stay on the line.  Stay on the line.
23    I don't want to lose you.  It's going great.  Thanks so much
24    to Ms. Cohen and Ms. Lockard for setting this up.
25         I'm going to contact Judge Kugler, give him the
```

```
 1    call-in number, and we'll get started with the rest of this

 2    call.  Thank you.

 3              (A recess was taken at 11:11 a.m.)

 4    (PROCEEDINGS held via teleconference before The Honorable

 5    Robert B. Kugler, United States District Judge, and The

 6    Honorable Joel Schneider, United States Magistrate Judge, at

 7    11:15 a.m.)

 8              THE COURT:  Hello, everybody.  It's Judge Kugler.  I

 9    believe there's 51 other people on the call so I assume

10    everybody is available who we need, so I guess we just ought

11    to get started at this point.

12              I know you have been on the phone with Judge

13    Schneider this morning and, apparently, you got a lot of

14    things resolved.

15              The things that you need me to do have to do with the

16    core deficiencies in the listings for the plaintiffs' fact

17    sheets and the requests for orders to show cause.

18              In Mr. Goldberg's letter of July 28, there is two

19    categories of people.  The first is the first listing for the

20    James Townsend case, is that correct, everybody?

21    Mr. Goldberg?

22              MS. LOCKARD:  That's correct, Your Honor.  This is

23    Victoria Lockard.  I'll be handling the plaintiff fact sheet

24    portion on behalf of the defendants.

25              THE COURT:  Okay.
```

```
 1          MS. LOCKARD:  Yes, that's correct.  Mr. Townsend is

 2   the first listing, so we will have one more round of listing

 3   Mr. Townsend's case we actually proceed with the request for

 4   show cause.

 5          ELECTRONIC VOICE:  Joining the meeting.

 6          THE COURT:  Mr. Slater, does the plaintiff have any

 7   response to any of that, as to Townsend?

 8          MR. SLATER:  Your Honor, there's other members of our

 9   team that are specifically handling that, so I will defer to

10   them.

11          THE COURT:  Okay.

12          MR. STANOCH:  Good morning, Your Honor.  This is

13   David Stanoch for plaintiffs.  We don't have an issue for the

14   first listing.  I have been in contact with Gilman Law.  I

15   believe it's a technical issue that with the centrality

16   platform.  They assure me they're aware of it, but they have

17   submitted on the system an update and just need to work to

18   make sure it's actually properly served to the defendants, and

19   that they have a call in to the designated defense lawyer as

20   well, as of yesterday, so I don't think there is any issue

21   here with this first thing.  It should be resolved by the next

22   conference, anyway.

23          THE COURT:  All right.  Well, we'll flip that into

24   the second conference.  We'll list it next time, and we'll see

25   what happens.  Hopefully, it will get resolved.
```

1          Then we have the second listing, and there is I think

2     a mistake in Number 9, Maxine Guillory.  The dates in the far

3     right column, for 2020, I think that's a typo because it's not

4     September of 2020 or November of 2020 quite yet.

5          MS. LOCKARD:  Correct, Your Honor.  That is very

6     likely a typo on the letter and should be 2019.

7          THE COURT:  Okay.  And these are all people who still

8     haven't filed the PFS; is that correct?

9          MS. LOCKARD:  Correct, Your Honor.  And we've had

10    very productive meet and confers, calls, with plaintiffs'

11    counsel on the large majority of plaintiff fact sheet

12    deficiency issues and have whittled down to these 12, and for

13    whom there have been no plaintiff fact sheets submitted

14    whatsoever, many of which were due months and months ago, we

15    have sent our deficiency letters out.  We have scheduled meet

16    and confer calls, which we had last week with as many of the

17    plaintiffs' counsel as had appeared on our lists.  We invited

18    everyone to attend.  Plaintiffs' counsel, I understand, had

19    circulated our list of these 12, in addition to others that

20    were resolved, and then we followed up with the individual

21    plaintiff's counsel listed for each of these dozen with an

22    e-mail, so they've had multiple opportunities and notices.

23    And it's our understanding -- you know, certainly some of the

24    counsel listed here for these dozen are on this call, and, you

25    know, we can discuss, but at this point my understanding is

1   these are very likely just a dozen plaintiffs who do not

2   intend to proceed with their claims, so we will be asking for

3   a show cause order for these 12.

4           THE COURT:  Okay.  Anybody want to respond on behalf

5   of these plaintiffs?

6           MR. STANOCH:  Your Honor, David Stanoch again for the

7   plaintiffs.

8           I think Ms. Lockard accurately summarized where we

9   are with this, and we're hopeful that following the show cause

10  order, most or all of these cases will either resolve the

11  issues or be dismissed, but, otherwise, we agree with the

12  process that's in place.

13          THE COURT:  Okay.  The Court will issue orders to

14  show cause on all 12 of these, why they shouldn't be dismissed

15  at the time of the next conference, and we'll just have to see

16  what happens with them.  If anybody responds before then,

17  we'll deal with it at the time.

18          Are there any other PFS deficient cases that we need

19  to talk about at the moment?

20          MS. LOCKARD:  No, Your Honor, not at this time.  We

21  have a process in place now where we are doing recurring calls

22  among the parties which has been productive in getting a

23  number of these responded to and updated, so we'll just

24  continue with the process which seems to be working well.

25          THE COURT:  Okay.  Great.

1          The next issue I think is the coordination of state

2    court cases.  There have been a number of new cases filed in

3    the New Jersey Superior Court.  My understanding is that

4    they're all going to be stayed.  Is that correct?

5          MR. SLATER:  It's Adam Slater, Your Honor.

6          Correct, there's individual orders being entered in

7    each case, and currently there is about 14 or 15 cases, and I

8    believe they're all stayed or going to be.

9          THE COURT:  Okay.  That leaves the -- go ahead.

10         JUDGE SCHNEIDER:  I'm sorry, Judge.

11         I was going to ask who filed those cases?

12         MR. SLATER:  A good number of them were filed by my

13   firm as local counsel for some other firms.  There was timing

14   issues, where the feeling was that the cases weren't going to

15   be filed, and they were cases where they need to be filed in

16   New Jersey for various reasons, as opposed to anywhere else,

17   so we handled that on behalf of the firms.

18         THE COURT:  Okay.  It's Judge Kugler again.

19         There are two cases pending in Illinois State Court.

20   One, there is apparently a motion to dismiss that's been filed

21   because this one state case has been refiled in a state court

22   case after it had been removed and then referred to the MDL

23   and then dismissed.  So we'll just have to wait and see what

24   the state court does about that.

25         But what about is there any action in the other state

1    court case in Illinois?

2            MR. GOLDBERG:  Your Honor, this is Seth Goldberg for

3    the ZHP parties.

4            My understanding is that in that case, the

5    Maxton [ph] case, a judge has not been assigned and there has

6    been no movement at this point, although I expect we're going

7    to look to remove that case because there is complete

8    diversity in that case.

9            THE COURT:  Is the plaintiff's lawyer in that case

10   one of the plaintiffs' lawyers in these cases, do we know?

11           MR. GOLDBERG:  I don't know, Your Honor, but I'll

12   find that out and I'll coordinate with Mr. Slater about that

13   and see if there is going to be any dispute about removing the

14   case and having it put into the MDL.

15           THE COURT:  Okay.

16           MR. GOLDBERG:  In the other Illinois case, it's

17   interesting that the plaintiff's lawyer in that case has been

18   trying to avoid having the case be put into the MDL.  And the

19   motion to dismiss is -- has to do with the identification of

20   the parties.

21           THE COURT:  Okay.

22           MR. SLATER:  And, Your Honor, it's Adam Slater.

23           I can tell you our leadership, to our knowledge,

24   nobody's involved with those cases.  Nobody has any direct

25   information.  We've reached out, not really had any success

```
 1   getting in touch with those firms, so they're not aligned with

 2   us in any way at this point.

 3            THE COURT:  I just asked the question because I was

 4   curious as to whether or not, Mr. Slater, you or someone in

 5   your leadership group could informally contact these

 6   plaintiffs' lawyers and tell them that there is a better way

 7   of doing this, but, apparently, you've been trying to do that.

 8            MR. SLATER:  Correct.

 9            THE COURT:  All right.  The next issue then is this

10   issue about general causation.  Defendants seek an earlier

11   identification of the types of cancer, and clearly seek to

12   have some kind of expert basis for the claim that these types

13   of cancers have been caused by the impurities in the drugs

14   that we're dealing with.  And I've read Mr. Slater's response

15   to that.

16            Mr. Goldberg, did you want to say anything about

17   that?

18            MR. GOLDBERG:  Your Honor --

19            MS. COHEN:  This is Lori Cohen on behalf -- I'm

20   sorry, go ahead, Mr. Goldberg.

21            MR. GOLDBERG:  No, Lori, I was going to turn it over

22   to you.

23            THE COURT:  Okay, great.

24            MS. COHEN:  Okay.  Thank you.  Sorry to talk over

25   you, Mr. Goldberg.
```

```
 1              And good morning, Your Honor.  Just briefly on this,
 2    we just raised this, admittedly, last week with a letter to
 3    counsel for the plaintiffs, and they responded saying they
 4    would get back to us, so we have not had a full meet and
 5    confer discussion on this, but I'll give you a little bit of
 6    background if Your Honor would allow me, and that is this:
 7    That, as you well know, that this MDL was formed in February
 8    of 2019.  Our first CMC with you and Judge Schneider was in
 9    March of 2019.  At that time I think you had some initial
10    comments about the importance of the cancer issues, obviously,
11    not solely, and not the only issue, but we talked about those
12    at the first CMC, that it could be a heavy lift, it was
13    important for us all to sort of drill down on that and look
14    into the cancer issues.  So we've been sort of waiting for
15    that opportunity.
16              We've obviously all been very busy for the past year
17    working on various issues related to the core discovery and
18    otherwise.
19              On February 26, which was our last in-person
20    conference, I believe, and when we had that conference with
21    Judge Schneider, that was pre-COVID, we talked about our
22    strong desire, the defense side, to move forward with some of
23    the personal injury discovery, not to derail in any way what
24    we know Your Honor wants to focus on in terms of the economic
25    class actions, not to disrupt, as plaintiff's said in their
```

letter, not to change course, but as a purely and appropriate

parallel track.  And we talked to Judge Schneider about that,

as I recall, as well, in our closed-door session, talked about

our desire, and I believe, and I don't want to misspeak here,

that he said it was appropriate to go forward on a parallel

track on that.

Now, since that time many of us on this call have

been involved in the newly formed Zantac MDL down in Florida,

in that case Judge Rosenberg, and, again, they have been

working on and we've been working on there a number of case

management schedules and strategies, and there there has been

a lot of focus on this issue of general causation, again, as a

parallel track to the punitive class actions.  So we thought

that that was a very good lesson of a way to sort of be

efficient here, focus on the cancer issues, at the same time,

again, not wanting to derail what is already in place.  We

certainly understand that needs to go forward.  But we

understand from Judge Schneider that we're fully entitled to

proceed on the personal injury cases and want to do so, and we

think it would be very helpful to have a general causation

schedule, much like the one that we attached to our letter

that is being used in the Zantac/ranitidine litigation.

So in that one, for example, that MDL was just

formed, as you may know, in March of 2020, so several months

ago, and in that case, ten months from the formation of the

1    MDL, plaintiffs will be required to disclose the types of

2    cancer, so which they will provide expert reports and the

3    schedule goes from there.  This was Exhibit E to our letter.

4    And we think that makes very good sense there to put in place

5    some kind of a general causation timeline, again, to basically

6    get to the point of filing *Daubert* motions, but so that the

7    parties do not spend considerable time, expense, and resource

8    on cancer issues that are not going to be part and parcel of

9    the discovery here.

10         Again, when we look at this case, we would like the

11   plaintiffs to have to disclose the specific types of cancers

12   for which they anticipate providing expert reports and, by the

13   way of illustration, as we said in our letter, there are over

14   30 variations of cancer that have been identified in the

15   short-form complaints, and some of the cases talk about all

16   classes of cancer.  We know it cannot be that broad.  We know

17   that under the various cancer guidelines, that the plaintiffs

18   will not be able to establish that, and I don't think they're

19   trying to do so.

20         So we think having a very sort of schedule like that

21   as used in Zantac to proceed efficiently, to make sure that

22   neither side is wasting resources, nor the Court, that we can

23   get down to the point that we can get to a general causation

24   *Daubert* schedule, so that's what we proposed last week.  We

25   think it's consistent with our discussions with Judge

1    Schneider.  We think it's consistent, Your Honor, with what we

2    discussed with you on the very first day of this MDL.  And

3    we'd like to at least start talking about such a schedule.

4          And I'll just mention that in Zantac, again, ten

5    months from the formation of the MDL, plaintiffs have to

6    disclose the types of cancer, and then 15 months from there,

7    *Daubert* motions will be closed, the Court will schedule a

8    *Daubert* hearing.  We would propose some sort of schedule like

9    that as a parallel track, not to interfere with what we know

10   is your priority as you have described to us, but we think

11   that is important to do at the same time, and we would -- just

12   wanted to brief to the Court on this right now and, hopefully,

13   we can work with plaintiffs in a constructive manner to get a

14   schedule like that underway.

15         THE COURT:  Well, before I hear from Mr. Slater, I

16   know what he's going to say because he put it in his letter,

17   Zantac is an interesting case, but it's more of a single issue

18   case than valsartan is, so it's more amenable, as Benicar was,

19   to the general causation issue.

20         Having said that, I'm not unsympathetic to the

21   position you are in.  There has to be a reckoning at some

22   point as to all these cancer claims, and they can't -- I don't

23   think at the end of the day the science is going to support

24   this thinking, this theory -- well, it's not even a theory of

25   the plaintiffs, but the claims of some of these plaintiffs

1    that every conceivable cancer out there is caused by the

2    impurities in the valsartan-containing drugs.  And there is

3    going to have to be a winnowing of that, and there's going to

4    be a focus by the plaintiffs on what actual cancers they claim

5    have been caused or will be caused in the future by these

6    valsartan-containing drugs, and that will trigger the need for

7    experts and then *Daubert* and all that kind of stuff.

8         And I don't think Judge Schneider and I have any real

9    objection to a parallel effort to take some discovery on those

10   kinds of issues, too.  I just don't think we need it this day,

11   today, to enter any orders that are setting up general

12   causation.  And I think you and Mr. Slater or whomever on

13   behalf of the plaintiffs need to talk about this more, and

14   it's obviously something we will continue to discuss at

15   meetings in the future.

16        But you're right, there has to be a reckoning, a day

17   of reckoning, as to these cancer claims, and it can't go on

18   forever.

19        Mr. Slater, did you want to add anything?

20        MR. SLATER:  I don't think so, Your Honor.  I think

21   you obviously understand our position, and I don't think that

22   you're going to get a giant push back from the plaintiffs that

23   at some point the specific cancers that are actually going to

24   be at issue need to be identified in our general causation

25   expert reports.  I think it's just more a matter of when

```
 1   that's going to happen.  You know, there's things like
 2   discovery that we would like to have from the defendants who
 3   presumably have been looking at this question as well.  We
 4   want to see what their documents say and what their internal
 5   people say and what literature they've been looking at, and
 6   have the benefit of that when we write our expert reports and
 7   understand what they know.  And then, of course, you know,
 8   serve expert reports on general causation for the personal
 9   injury cases.
10          You know, our main concern is really just, as you, I
11   think hit it, is timing and, you know, a parallel track, you
12   know, I guess it's the devil's in the details because there is
13   so much happening right now, and there is so much that we're
14   doing, that and as you -- I know you appreciate the expert
15   reports are -- they don't address exactly the same question in
16   the economic loss context, and that's really where our focus
17   is at this point, what we're building towards, so as long as
18   we have the ability to do this in a methodical way, you know,
19   and which we're happy to talk to the defense about, just
20   dealing with the practicalities of what has to be done, you
21   know, for the next, you know, six months or so, there is a lot
22   happening.
23          I don't see any reason why after that, you know, this
24   big burst of discovery happens, why that's not something that
25   we can start to initiate.  I think it makes sense.
```

```
 1            THE COURT:  Well, it's almost August, so why don't we
 2   focus on this.  Why don't we have our goal to be before the
 3   end of this year -- by the end of this year to have in place
 4   orders governing general causation and expert reports on those
 5   issues.  Okay?  So we will continue to discuss this with the
 6   idea that by the end of the year, we'll have this in place
 7   with a schedule.  All right?
 8            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
 9            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
10            MS. COHEN:  I think what we will do is just move
11   forward, prepare what we think is a meaningful, efficient
12   schedule, send it to plaintiff, and we can start discussing
13   that so we don't get behind schedule, with an aim to having it
14   done by the end of year but hopefully sooner, because it is a
15   very important issue for the defense side.
16            And, again, not to argue this today, but we do think
17   this is very analogous to Zantac, in terms of the alleged
18   impurities causing cancer, so I think we can learn from that
19   schedule and hopefully make it, you know, even more simpler
20   from here.
21            THE COURT REPORTER:  I'm sorry.  This is the court
22   reporter.  Who was speaking then?
23            MS. COHEN:  Yes, it was Lori Cohen.  Sorry to speak
24   quickly on that.
25            THE COURT:  Are there any other issues that we need
```

1  resolution on?

2         MR. SLATER:  This is Adam Slater for the plaintiff.

3  I don't believe so.

4         MR. GOLDBERG:  And this is Seth Goldberg for

5  defendants.  No, Your Honor.

6         THE COURT:  Okay.  You must all be wondering what the

7  heck is going on in the court system with the virus and the

8  COVID.  My biggest concern is not actually having in-court

9  proceedings.  I think we will be doing more and more in that.

10  I've already done one recently, and we do have a courtroom set

11  up for it.  We have to, I think, restrict the number of people

12  who come in.

13         The biggest concern I have, frankly, is these orders

14  by the various states for quarantine.  New Jersey currently

15  has about 30 states on its list, that if you come in from that

16  state into New Jersey, you're supposed to voluntarily

17  quarantine for 14 days.  It's impossible for those of you who

18  are in those states then to come to New Jersey, and I'm sure

19  there is a reciprocal agreement in some of your states that if

20  you go to New Jersey, when you come back to your state, you

21  need to quarantine.  So I think that's the biggest obstacle

22  we're going to have to in-person meetings at this point,

23  although I think the Court will be prepared, come September,

24  when we open an additional courtroom up, to have the meetings.

25         So I think we ought to do this by phone conference

1   again in August, and then we'll have more information at that

2   time, in another month, as to these issues about traveling to

3   New Jersey, and I'll be better able to tell you, if we are

4   able to schedule in-person conferences, how many people we can

5   handle and things of that nature, and the precautions we're

6   taking.  Everybody is wearing masks.  We have all kinds of

7   plexiglass dividers in the courtroom and all that kind of

8   stuff.  But I can give you more details in the future about

9   what we're doing about the courtrooms.

10          And if you're interested, we're not doing jury trials

11  for -- we probably won't be doing jury trials until November

12  in the District of New Jersey, and because of the severe

13  shortage of judges we have and the severe backlog of criminal

14  cases that we have, particularly with defendants in custody

15  and their speedy trial rights, I don't foresee civil trials

16  until sometime next year in the District of New Jersey, just

17  for those of you who were interested in that.  But that's

18  where we are in terms of the COVID precautions in the District

19  of New Jersey.

20          Somebody was going to say something.  Go ahead.

21          JUDGE SCHNEIDER:  Judge, this is Judge Schneider.  I

22  was going to say it's like the Hotel California.  You can

23  check out but you can't leave.

24          (Laughter.)

25          THE COURT:  Exactly.  It's a problem, this

1    quarantine, anyway.

2           Anything else anyone would like to talk to today?

3    Assure me, please, that all of you are healthy and your

4    families are well and everybody is doing well in these days?

5    These are crazy days.

6           As far as I know, all the judges in the District of

7    New Jersey are well.  Well, Judge Salas is not well, but

8    that's got nothing to do with the damn virus.  That's a

9    completely horrible situation she has found herself in.  But

10   in terms of the virus and all that, the courthouses are in

11   pretty good shape in New Jersey.

12          Well, stay well, everyone, and we will talk to you

13   soon.  Obviously, you know we're available, and hang in there.

14   And good luck to everybody.  Thank you very much.

15          (The proceedings concluded at 11:40 a.m.)

16

17          -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

18

19          I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter.

21

22   */S/ Carol Farrell, NJ-CRCR, FCRR, RDR, CRR, RMR, CRC, CRI*
     *Court Reporter/Transcriber*

23

24   *August 07, 2020*
          *Date*

25

## /

**/S** *[1]* - 49:22

## 0

**07** *[1]* - 49:24
**07068** *[1]* - 1:15
**08101** *[1]* - 1:7

## 1

**1** *[3]* - 11:23, 12:4, 22:22
**10019** *[1]* - 2:20
**103** *[1]* - 1:14
**10:20** *[2]* - 1:8, 4:2
**11:11** *[1]* - 33:3
**11:15** *[1]* - 33:7
**11:40** *[1]* - 49:15
**12** *[4]* - 35:12, 35:19, 36:3, 36:14
**1301** *[1]* - 2:19
**14** *[2]* - 37:7, 47:17
**15** *[8]* - 10:22, 11:6, 11:9, 12:20, 17:5, 37:7, 43:6
**15th** *[1]* - 10:3
**17TH** *[1]* - 2:11
**1835** *[1]* - 1:17
**19-2875** *[1]* - 4:4
**19-md-02875-RBK-JS** *[1]* - 1:3
**19087** *[1]* - 3:8
**19103** *[2]* - 1:18, 2:11
**1st** *[2]* - 23:25, 31:8

## 2

**20** *[10]* - 7:25, 8:1, 8:25, 9:2, 10:9, 10:21, 11:2, 11:8, 12:19, 12:23
**2012** *[1]* - 23:25
**2019** *[4]* - 23:25, 35:6, 40:8, 40:9
**2020** *[6]* - 1:8, 35:3, 35:4, 41:24, 49:24
**2029** *[1]* - 2:16
**2150** *[1]* - 2:7
**2500** *[1]* - 3:4
**26** *[1]* - 40:19
**270** *[1]* - 3:8
**28** *[1]* - 33:18
**2800** *[1]* - 2:23
**29** *[1]* - 1:8
**2900** *[1]* - 1:17

## 3

**30** *[15]* - 2:11, 8:18, 8:20, 9:12, 10:24, 11:2, 11:10, 17:10, 17:12, 17:24, 19:17, 22:6, 23:4, 42:14, 47:15
**300** *[1]* - 2:16
**30327** *[1]* - 3:5
**316** *[1]* - 1:21
**31st** *[5]* - 10:5, 10:14, 10:23, 11:8, 23:25
**32502** *[1]* - 1:21
**3333** *[1]* - 3:4
**35** *[3]* - 8:9, 8:12, 8:14

## 4

**45** *[3]* - 7:13, 7:14
**45202** *[1]* - 2:23
**4th** *[1]* - 1:7

## 5

**50** *[2]* - 20:13, 24:16
**502** *[1]* - 32:1
**51** *[1]* - 33:9
**550** *[1]* - 3:8
**55402** *[1]* - 2:7

## 6

**6** *[1]* - 14:15
**60** *[11]* - 7:14, 7:15, 8:20, 9:13, 10:7, 10:22, 11:1, 11:4, 11:6, 11:7, 11:11
**600** *[2]* - 1:21, 2:23

## 7

**701** *[1]* - 2:3
**70130** *[1]* - 2:4

## 8

**800** *[1]* - 2:7
**856-318-6100** *[1]* - 1:24

## 9

**9** *[1]* - 35:2
**90** *[3]* - 9:10, 9:14, 11:1
**90067** *[1]* - 2:16

## A

**a.m** *[5]* - 1:8, 4:2, 33:3,
33:7, 49:15
**ability** *[1]* - 45:18
**able** *[5]* - 9:25, 24:11, 42:18, 48:3, 48:4
**above-entitled** *[1]* - 49:20
**absolutely** *[1]* - 20:7
**accept** *[1]* - 27:18
**acceptable** *[1]* - 28:8
**accepted** *[2]* - 13:13, 24:9
**according** *[1]* - 17:22
**accurately** *[1]* - 36:8
**action** *[3]* - 10:2, 11:6, 37:25
**ACTION** *[1]* - 1:2
**actions** *[2]* - 40:25, 41:13
**actual** *[1]* - 44:4
**ad** *[1]* - 13:1
**ADAM** *[1]* - 1:14
**Adam** *[7]* - 4:11, 9:3, 9:5, 29:17, 37:5, 38:22, 47:2
**add** *[2]* - 13:19, 44:19
**addition** *[1]* - 35:19
**additional** *[6]* - 9:2, 10:9, 10:12, 11:2, 11:8, 47:24
**address** *[6]* - 5:15, 5:19, 5:21, 5:22, 6:22, 45:15
**addressed** *[1]* - 28:17
**admittedly** *[1]* - 40:2
**advantage** *[1]* - 16:19
**affected** *[1]* - 23:20
**affidavit** *[1]* - 5:12
**afternoon** *[3]* - 6:1, 28:3, 30:17
**aggressive** *[1]* - 30:4
**ago** *[3]* - 14:24, 35:14, 41:25
**agree** *[6]* - 30:11, 30:18, 31:14, 32:5, 32:12, 36:11
**agreed** *[2]* - 10:1, 22:4
**agreeing** *[1]* - 29:22
**agreement** *[4]* - 10:13, 14:3, 32:1, 47:19
**ahead** *[8]* - 9:20, 21:10, 28:12, 29:14, 29:16, 37:9, 39:20, 48:20
**aided** *[1]* - 1:25
**aim** *[1]* - 46:13
**aligned** *[1]* - 39:1
**alleged** *[1]* - 46:17
**allow** *[2]* - 20:5, 40:6
**almost** *[1]* - 46:1
**alternative** *[1]* - 13:14,

28:25
**alternatively** *[1]* - 24:4
**ambiguity** *[1]* - 12:8
**amenable** *[1]* - 43:18
**AMERICAS** *[1]* - 2:19
**AmerisourceBergen** *[2]* - 2:24, 5:9
**amounts** *[1]* - 31:6
**analogous** *[1]* - 46:17
**AND** *[2]* - 1:5, 1:10
**ANGELES** *[1]* - 2:16
**announce** *[1]* - 4:7
**answer** *[11]* - 9:6, 14:21, 17:11, 17:16, 17:25, 18:19, 19:18, 19:20, 19:23, 21:24, 23:10
**answered** *[3]* - 8:13, 12:20, 20:13
**answering** *[2]* - 10:3, 17:19
**anticipate** *[4]* - 16:21, 16:23, 22:20, 42:12
**anyway** *[2]* - 34:22, 49:1
**apologize** *[2]* - 16:22, 30:9
**appearance** *[2]* - 4:5, 4:10
**appearances** *[1]* - 4:19
**appeared** *[1]* - 35:17
**applicable** *[1]* - 18:9
**applied** *[1]* - 23:24
**applies** *[1]* - 25:18
**apply** *[1]* - 20:15
**appreciate** *[1]* - 45:14
**approach** *[1]* - 28:10
**appropriate** *[2]* - 41:1, 41:5
**approve** *[1]* - 14:8
**approximate** *[1]* - 8:7
**area** *[1]* - 31:19
**argue** *[1]* - 46:16
**ARGUMENT** *[1]* - 1:5
**argument** *[2]* - 12:15, 13:8
**assigned** *[1]* - 38:5
**assume** *[1]* - 33:9
**assumed** *[1]* - 8:24
**assure** *[2]* - 34:16, 49:3
**ATLANTA** *[1]* - 3:5
**attached** *[1]* - 41:21
**attend** *[1]* - 35:18
**attorney** *[1]* - 32:3
**attorney-client** *[1]* - 32:3
**August** *[12]* - 10:3, 10:5, 10:13, 10:22,

10:23, 11:6, 11:7, 11:9, 12:19, 46:1, 48:1, 49:24
**available** *[10]* - 5:17, 15:4, 18:16, 25:10, 25:15, 26:3, 26:11, 26:16, 33:10, 49:13
**AVENUE** *[2]* - 2:7, 2:19
**avenues** *[1]* - 26:5
**AvKARE** *[5]* - 3:9, 16:6, 16:14, 16:18, 18:3
**avoid** *[1]* - 24:7, 38:18
**aware** *[1]* - 34:16

## B

**background** *[1]* - 40:6
**backlog** *[1]* - 48:13
**bankruptcy** *[2]* - 12:9, 12:17
**BARBARA** *[1]* - 2:10
**Barbara** *[1]* - 7:5
**BARNES** *[1]* - 2:14
**basis** *[1]* - 39:12
**batch** *[5]* - 22:21, 24:5, 24:11, 25:9, 26:18
**BAYLEN** *[1]* - 1:21
**becomes** *[1]* - 24:17
**behalf** *[13]* - 4:12, 5:6, 5:8, 6:9, 7:6, 15:21, 15:22, 16:18, 33:24, 36:4, 37:17, 39:19, 44:13
**behind** *[3]* - 6:25, 27:5, 46:13
**belong** *[2]* - 15:19, 25:25
**benefit** *[2]* - 5:24, 45:6
**Benicar** *[1]* - 43:18
**BERNE** *[1]* - 2:22
**best** *[1]* - 31:17
**better** *[3]* - 31:21, 39:6, 48:3
**BIASGAARD** *[1]* - 3:7
**big** *[4]* - 13:9, 13:13, 26:1, 45:24
**biggest** *[1]* - 47:8, 47:13, 47:21
**bit** *[3]* - 10:23, 19:23, 40:5
**blessing** *[1]* - 27:2
**bodily** *[1]* - 9:13
**boils** *[1]* - 15:12
**break** *[1]* - 25:3
**brief** *[1]* - 43:12
**briefly** *[1]* - 40:1
**BRISBOIS** *[1]* - 3:7

**broad** [2] - 21:22, 42:16
**broader** [1] - 24:16
**broadly** [1] - 23:16
**building** [1] - 45:17
**Building** [1] - 1:6
**burst** [1] - 45:24
**business** [2] - 5:16, 24:20
**busy** [1] - 40:16
**BY** [11] - 1:14, 1:17, 1:20, 2:3, 2:6, 2:10, 2:15, 2:19, 2:22, 3:3, 3:7

### C

**CAL** [1] - 31:5
**California** [1] - 48:22
**CALIFORNIA** [1] - 2:16
**call-in** [1] - 33:1
**callback** [1] - 32:1
**Camden** [1] - 1:7
**CAMP** [1] - 2:3
**cancer** [14] - 39:11, 40:10, 40:14, 41:15, 42:2, 42:8, 42:14, 42:16, 42:17, 43:6, 43:22, 44:1, 44:17, 46:18
**cancers** [4] - 39:13, 42:11, 44:4, 44:23
**candid** [1] - 6:7
**cannot** [1] - 42:16
**capital** [1] - 13:6
**care** [3] - 13:16, 20:4, 26:24
**Carol** [2] - 1:23, 49:22
**case** [40] - 14:18, 15:1, 15:3, 15:6, 15:14, 15:16, 15:24, 15:25, 16:12, 16:15, 17:10, 17:14, 17:15, 17:19, 20:15, 20:17, 26:9, 30:2, 32:2, 33:20, 34:3, 37:7, 37:21, 37:22, 38:1, 38:4, 38:5, 38:7, 38:8, 38:9, 38:14, 38:16, 38:17, 38:18, 41:9, 41:10, 41:25, 42:10, 43:17, 43:18
**cases** [18] - 7:19, 9:13, 27:8, 36:10, 36:18, 37:2, 37:7, 37:11, 37:14, 37:15, 37:19, 38:10, 38:24, 41:19, 42:15, 45:9, 48:14
**categories** [1] - 33:19

**causation** [11] - 27:10, 39:10, 41:12, 41:20, 42:5, 42:23, 43:19, 44:12, 44:24, 45:8, 46:4
**caused** [4] - 39:13, 44:1, 44:5
**causing** [1] - 46:18
**centrality** [1] - 34:15
**CENTURY** [1] - 2:16
**certain** [1] - 13:4
**certainly** [8] - 10:18, 26:20, 28:7, 29:12, 29:19, 29:23, 35:23, 41:17
**certify** [1] - 49:19
**cfarrell.crr@gmail. com** [1] - 1:23
**chain** [3] - 7:11, 7:20, 12:2
**chance** [1] - 24:14
**chances** [1] - 32:2
**change** [3] - 13:1, 20:8, 41:1
**check** [1] - 48:23
**chime** [1] - 20:6
**choosing** [1] - 29:3
**CINCINNATI** [1] - 2:16
**circulated** [1] - 35:19
**CIVIL** [1] - 1:2
**civil** [1] - 48:15
**claim** [2] - 39:12, 44:4
**claims** [4] - 36:2, 43:22, 43:25, 44:17
**clarify** [1] - 18:17
**class** [9] - 7:25, 8:7, 8:9, 10:2, 11:6, 20:6, 20:17, 40:25, 41:13
**class-action** [2] - 10:2, 11:6
**classes** [1] - 42:16
**cleaning** [1] - 14:4
**clear** [2] - 15:18, 27:20
**clearly** [2] - 15:16, 39:11
**client** [4] - 12:8, 17:1, 18:18, 32:3
**clients** [3] - 12:2, 14:6, 26:19
**clients'** [2] - 12:1, 25:9
**close** [1] - 6:23
**closed** [2] - 41:3, 43:7
**closed-door** [1] - 41:3
**closest** [1] - 7:20
**CMC** [2] - 40:8, 40:12
**CMML** [1] - 31:5
**CMO** [2] - 16:17, 16:20
**codes** [1] - 25:19
**COHEN** [6] - 3:3, 4:23, 39:19, 39:24, 46:10,

46:23
**Cohen** [5] - 1:6, 4:24, 32:24, 39:19, 46:23
**colleagues** [1] - 20:6
**collecting** [1] - 17:1
**column** [1] - 35:3
**comfortable** [2] - 27:23, 30:16
**coming** [1] - 24:23
**Commencing** [1] - 1:8
**comments** [1] - 33:8
**communication** [1] - 27:17
**company** [3] - 22:10, 22:17, 24:23
**complaints** [2] - 27:6, 42:15
**complete** [12] - 9:10, 9:15, 11:22, 11:23, 12:7, 12:12, 12:16, 13:3, 13:7, 13:10, 38:7
**completely** [1] - 49:9
**completion** [2] - 8:15, 13:8
**compromise** [4] - 18:1, 22:8, 23:23, 27:22
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**conceivable** [1] - 44:1
**concepts** [1] - 28:17
**concern** [5] - 24:1, 26:2, 45:10, 47:8, 47:13
**concerns** [1] - 13:2
**concluded** [1] - 49:15
**concrete** [2] - 28:19, 28:24
**confer** [3] - 6:10, 35:16, 40:5
**CONFERENCE** [1] - 1:5
**conference** [7] - 4:7, 34:22, 34:24, 36:15, 40:20, 47:25
**conferences** [1] - 48:4
**conferred** [1] - 6:3
**confers** [1] - 35:10
**confident** [1] - 31:24
**CONLEE** [1] - 2:3
**Conlee** [1] - 4:17
**consider** [1] - 12:17
**considerable** [1] - 42:7
**consideration** [1] - 12:23
**considering** [2] - 31:1, 31:11

**consistent** [2] - 42:25, 43:1
**constructive** [1] - 43:13
**consultant** [1] - 6:5
**consumer** [1] - 7:20
**contact** [4] - 32:18, 32:25, 34:14, 39:5
**containing** [1] - 44:2, 44:6
**context** [1] - 45:16
**continue** [3] - 36:24, 44:14, 46:5
**Continued** [2] - 2:1, 3:1
**continuing** [1] - 29:5
**conversation** [4] - 6:7, 9:22, 9:25, 18:4
**Cooper** [1] - 1:7
**coordinate** [1] - 38:12
**coordination** [2] - 27:8, 37:1
**core** [2] - 33:16, 40:17
**corner** [1] - 22:11
**correct** [14] - 7:24, 8:1, 8:7, 26:25, 33:20, 33:22, 34:1, 35:5, 35:8, 35:9, 37:4, 37:6, 39:8, 49:19
**correctly** [1] - 22:8
**counsel** [15] - 4:6, 4:20, 7:3, 7:13, 16:14, 18:4, 22:8, 27:17, 35:11, 35:17, 35:18, 35:21, 35:24, 37:13, 40:3
**course** [4] - 16:18, 24:19, 41:1, 45:7
**court** [9] - 4:8, 27:8, 37:2, 37:21, 37:24, 38:1, 46:21, 47:7, 47:8
**Court** [27] - 1:23, 6:1, 7:23, 13:3, 13:12, 14:8, 16:24, 17:20, 19:25, 20:6, 20:25, 27:23, 28:3, 28:8, 29:3, 29:12, 29:21, 31:1, 31:10, 36:13, 37:3, 37:19, 42:22, 43:7, 43:12, 47:23, 49:22
**COURT** [75] - 1:1, 4:3, 4:19, 5:10, 7:12, 7:16, 7:22, 8:3, 8:6, 8:11, 8:17, 8:22, 10:8, 10:15, 10:20, 11:14, 11:19, 12:13, 12:24, 13:21, 14:9,

14:11, 15:7, 16:3, 16:9, 16:11, 16:21, 16:23, 17:2, 17:8, 18:13, 18:17, 19:8, 19:13, 20:3, 20:20, 21:8, 21:10, 22:7, 22:15, 23:18, 25:1, 25:4, 25:5, 25:23, 26:23, 28:12, 29:16, 30:7, 30:23, 32:11, 32:22, 33:8, 33:25, 34:6, 34:11, 34:23, 35:7, 36:4, 36:13, 36:25, 37:9, 37:18, 38:9, 38:15, 38:21, 39:3, 39:9, 39:23, 43:15, 46:1, 46:21, 46:25, 47:6, 48:9
**Court's** [9] - 7:23, 12:24, 13:24, 19:15, 20:3, 23:3, 26:19, 26:25, 30:10
**Courthouse** [1] - 1:6
**courthouses** [1] - 49:10
**courtroom** [3] - 47:10, 47:24, 48:7
**courtrooms** [1] - 48:9
**COVID** [3] - 40:21, 47:8, 48:18
**crazy** [1] - 49:5
**CRC** [1] - 49:22
**CRCR** [1] - 49:22
**creating** [1] - 28:8
**CRI** [1] - 49:22
**criminal** [1] - 48:13
**crosstalk** [2] - 9:18, 13:25
**CRR** [1] - 49:22
**curious** [1] - 39:4
**custody** [1] - 48:14
**CVS** [6] - 2:17, 22:10, 22:17, 22:23, 23:9, 23:16

### D

**D'Lesli** [2] - 22:18, 25:2
**D'LESLI** [1] - 2:19
**D.C** [1] - 5:16
**damn** [1] - 49:8
**DANIEL** [1] - 1:20
**Daniel** [4] - 4:15, 9:4, 9:8, 9:16
**data** [3] - 21:15, 21:22, 22:1
**Date** [1] - 49:24
**date** [3] - 11:5, 11:7, 12:16

**dates** [2] - 24:1, 35:2
**Daubert** [5] - 42:6, 42:24, 43:7, 43:8, 44:7
**David** [2] - 34:13, 36:6
**DAVIS** [4] - 2:19, 22:18, 24:15, 25:3
**Davis** [3] - 22:18, 25:2, 25:4
**days** [33] - 7:14, 7:15, 8:20, 9:10, 9:12, 9:14, 10:7, 10:23, 10:25, 11:1, 11:2, 11:4, 11:6, 11:7, 11:10, 11:11, 17:5, 17:11, 17:12, 17:24, 19:17, 22:6, 23:5, 27:19, 47:17, 49:4, 49:5
**deadline** [4] - 9:12, 10:3, 10:4, 21:4
**deadlines** [4] - 10:6, 10:7, 17:6, 32:13
**deal** [7] - 5:18, 5:20, 5:23, 13:9, 14:13, 14:14, 36:17
**dealing** [5] - 5:16, 6:18, 32:4, 39:14, 45:20
**December** [1] - 23:25
**decide** [1] - 27:23
**decided** [1] - 28:6
**declared** [1] - 12:9
**defective** [1] - 24:20
**Defendant** [3] - 2:20, 2:24, 3:9
**defendant** [4] - 7:2, 7:10, 22:14, 23:22
**defendant's** [2] - 12:10, 19:5
**defendants** [30] - 4:20, 4:22, 4:24, 5:1, 5:3, 5:6, 5:8, 7:6, 7:16, 7:20, 10:11, 11:22, 12:14, 14:2, 15:6, 15:15, 15:18, 16:2, 21:5, 23:22, 24:1, 24:9, 27:21, 28:14, 33:24, 34:18, 39:10, 45:2, 47:5, 48:14
**Defendants** [3] - 2:12, 2:17, 3:5
**defendants'** [12] - 7:8, 12:6, 13:5, 15:4, 16:17, 17:7, 18:8, 18:15, 19:2, 19:4, 20:14, 25:24
**DEFENDANTS'** [1] - 1:6

**defense** [7] - 9:11, 10:6, 29:20, 34:19, 40:22, 45:19, 46:15
**defer** [1] - 34:9
**deficiencies** [1] - 33:16
**deficiency** [2] - 35:12, 35:15
**deficient** [1] - 36:18
**defined** [1] - 23:15
**delete** [2] - 19:2, 19:7
**delighted** [1] - 27:4
**denied** [1] - 20:25
**derail** [2] - 40:23, 41:16
**described** [1] - 43:10
**designated** [1] - 34:19
**desire** [2] - 40:22, 41:4
**detail** [1] - 23:10
**details** [2] - 45:12, 48:8
**devil's** [1] - 45:12
**devotion** [1] - 31:14
**DFS** [2] - 18:6, 21:24
**different** [7] - 15:9, 20:13, 22:23, 22:24, 22:25, 24:4, 24:5
**differently** [1] - 15:14
**direct** [1] - 38:24
**disagreement** [1] - 6:8
**disagreements** [1] - 14:4
**disclose** [3] - 42:1, 42:11, 43:6
**disclosure** [1] - 31:18
**discovery** [9] - 16:1, 23:24, 25:19, 40:17, 40:23, 42:9, 44:9, 45:2, 45:24
**discuss** [4] - 27:13, 35:25, 44:14, 46:5
**discussed** [7] - 17:7, 26:4, 26:5, 26:8, 27:20, 28:17, 43:2
**discussing** [1] - 46:12
**discussion** [7] - 18:15, 18:20, 18:23, 28:20, 29:5, 29:8, 40:5
**discussions** [4] - 16:13, 28:18, 29:11, 42:25
**dismiss** [2] - 37:20, 38:19
**dismissal** [5] - 14:23, 15:4, 17:23, 18:19, 19:17
**dismissed** [7] - 16:16, 16:24, 17:10, 17:14,

36:11, 36:14, 37:23
**dispute** [5] - 7:7, 7:9, 7:10, 13:11, 38:13
**disputes** [3] - 8:15, 10:1, 21:7
**disrupt** [1] - 40:25
**distinguish** [1] - 23:3
**distribution** [2] - 12:3, 24:10
**District** [5] - 33:5, 48:12, 48:16, 48:18, 49:6
**DISTRICT** [3] - 1:1, 1:1, 1:11
**diversity** [1] - 38:8
**dividers** [1] - 48:7
**Docket** [1] - 4:4
**document** [1] - 14:5
**documents** [8] - 17:1, 23:8, 23:10, 31:2, 31:22, 31:25, 32:4, 45:4
**done** [6] - 5:14, 8:3, 32:14, 45:20, 46:14, 47:10
**door** [3] - 20:23, 41:3
**down** [8] - 8:24, 15:13, 22:11, 26:21, 35:12, 40:13, 41:8, 42:23
**dozen** [1] - 35:21, 35:24, 36:1
**DR** [1] - 30:22
**Dr** [5] - 5:3, 5:12, 6:4, 30:3, 30:20
**draft** [2] - 17:20, 29:8
**drafting** [1] - 30:12
**drag** [1] - 27:25
**drill** [2] - 8:24, 40:13
**drugs** [4] - 23:20, 39:13, 44:2, 44:6
**DUANE** [1] - 2:9
**due** [2] - 20:21, 35:14
**duty** [1] - 13:5

**E**

**e-mail** [1] - 35:22
**early** [3] - 6:17, 29:12, 30:12
**EAST** [1] - 2:16
**economic** [2] - 40:24, 45:16
**effect** [3] - 17:9, 17:21, 19:16
**effectively** [1] - 9:14
**efficient** [2] - 41:15, 46:11
**efficiently** [1] - 42:21
**effort** [1] - 44:9
**eight** [3] - 21:19,

21:21, 23:14
**EISENHOWER** [1] - 1:14
**either** [1] - 36:10
**ELECTRONIC** [3] - 10:19, 29:1, 34:5
**end** [6] - 5:23, 6:14, 6:16, 43:23, 46:3, 46:6, 46:14
**ends** [1] - 29:4
**enormous** [1] - 31:6
**enter** [4] - 14:8, 27:2, 30:14, 44:11
**entered** [6] - 6:24, 8:19, 16:17, 30:19, 32:1, 37:6
**entering** [1] - 30:12
**entire** [1] - 12:6
**entirety** [1] - 23:9
**entitled** [2] - 41:18, 49:20
**entries** [2] - 4:5, 4:9
**ESQUIRE** [15] - 1:14, 1:17, 1:20, 2:3, 2:6, 2:10, 2:10, 2:15, 2:15, 2:19, 2:22, 3:3, 3:3, 3:4, 3:7
**establish** [1] - 42:18
**exact** [1] - 30:24
**exactly** [3] - 26:17, 45:15, 48:25
**example** [2] - 12:9, 41:23
**excess** [1] - 12:11
**Exhibit** [1] - 42:3
**existed** [1] - 24:14
**expansive** [1] - 21:22
**expect** [4] - 4:6, 13:16, 17:12, 38:6
**expense** [1] - 42:7
**expert** [9] - 31:19, 39:12, 42:2, 42:12, 44:25, 45:6, 45:8, 45:14, 46:4
**experts** [1] - 44:7
**expiration** [1] - 24:24
**explaining** [1] - 18:10
**extended** [1] - 32:13
**extends** [1] - 7:10
**extent** [3] - 15:1, 17:9, 19:20
**extra** [3] - 10:24, 10:25, 11:9

**F**

**facility** [1] - 23:8
**FACT** [1] - 1:6
**fact** [58] - 6:20, 6:22, 6:23, 7:2, 7:8, 7:10,

7:17, 8:13, 8:14, 8:19, 9:11, 9:17, 10:1, 10:7, 11:23, 12:6, 12:10, 12:15, 12:20, 12:25, 13:3, 13:7, 13:22, 13:23, 14:8, 14:25, 15:19, 17:7, 17:11, 17:16, 17:19, 17:25, 18:8, 18:16, 18:19, 19:2, 19:4, 19:5, 19:9, 19:18, 19:23, 20:14, 21:6, 21:14, 21:18, 22:5, 22:22, 23:15, 25:25, 26:7, 26:24, 27:1, 27:4, 31:7, 33:16, 33:23, 35:11, 35:13
**fair** [1] - 18:1
**faith** [2] - 6:8, 28:22
**families** [1] - 49:4
**far** [2] - 35:2, 49:6
**Farrell** [3] - 1:23, 25:4, 49:22
**favor** [1] - 25:24
**FCRR** [1] - 49:22
**February** [2] - 40:7, 40:19
**few** [2] - 15:13, 27:19
**figure** [1] - 25:8
**filed** [9] - 7:4, 12:17, 35:8, 37:2, 37:11, 37:12, 37:15, 37:20
**filing** [1] - 42:6
**fill** [2] - 13:4, 22:21
**final** [5] - 14:6, 14:7, 26:25, 27:1
**finalize** [1] - 19:9
**finalized** [3] - 6:24, 13:23, 13:24
**finalizing** [1] - 6:23
**finally** [1] - 27:4
**findings** [1] - 30:15
**fine** [3] - 10:21, 11:12, 24:13
**firm** [1] - 37:13
**firms** [3] - 37:13, 37:17, 39:1
**first** [15] - 7:1, 7:4, 7:7, 7:9, 7:16, 22:6, 31:9, 33:19, 34:2, 34:14, 34:21, 40:8, 40:12, 43:2
**FISA** [1] - 5:16
**five** [2] - 8:16, 8:22
**FL** [1] - 1:21
**flip** [1] - 34:23
**floor** [1] - 27:14
**Florida** [1] - 41:8
**focus** [7] - 25:24,

40:24, 41:12, 41:15,
44:4, 45:16, 46:2
**followed** [1] - 35:20
**following** [3] - 27:16,
30:1, 36:9
**FOR** [1] - 1:1
**foregoing** [1] - 49:19
**foresee** [1] - 48:15
**forever** [1] - 44:18
**forgot** [1] - 12:9
**form** [2] - 27:6, 42:15
**formation** [2] - 41:25,
43:5
**formed** [3] - 40:7,
41:8, 41:24
**forth** [1] - 28:1
**forward** [4] - 40:22,
41:5, 41:17, 46:11
**frame** [1] - 27:3
**frankly** [3] - 31:19,
31:22, 47:13
**FREEMAN** [1] - 1:13
**Friday** [6] - 14:7, 27:2,
28:2, 29:9, 30:12,
30:16
**Friday's** [1] - 14:9
**front** [3] - 20:23,
28:19, 28:24
**FULBRIGHT** [1] - 2:18
**full** [5] - 23:4, 23:10,
23:14, 31:18, 40:4
**fully** [1] - 41:18
**fulsome** [1] - 32:6
**future** [3] - 44:5,
44:15, 48:8

## G

**general** [11] - 27:10,
39:10, 41:12, 41:20,
42:5, 42:23, 43:19,
44:11, 44:24, 45:8,
46:4
**generic** [1] - 26:1
**Geoppinger** [7] - 5:8,
15:12, 18:9, 18:25,
21:3, 21:11, 21:12
**GEOPPINGER** [5] -
2:22, 5:7, 15:11,
21:11, 22:13
**GEORGIA** [1] - 3:5
**giant** [1] - 44:22
**Gilman** [1] - 34:14
**given** [3] - 6:11, 31:7,
32:4
**global** [1] - 20:7
**globally** [1] - 24:22
**goal** [1] - 46:2
**Godfather** [1] - 31:16
**GOLDBERG** [8] -

2:10, 4:21, 38:2,
38:11, 38:16, 39:18,
39:21, 47:4
**Goldberg** [9] - 4:22,
7:4, 13:22, 33:21,
38:2, 39:16, 39:20,
39:25, 47:4
**Goldberg's** [3] - 6:19,
14:15, 33:18
**GOLDENBERG** [16] -
2:6, 9:21, 10:10,
10:17, 11:12, 11:17,
11:20, 12:22, 13:20,
14:19, 20:2, 20:5,
21:2, 23:19, 25:6,
26:14
**Goldenberg** [20] -
9:23, 10:8, 11:18,
12:20, 13:18, 14:20,
15:23, 18:5, 18:14,
18:20, 18:23, 18:25,
19:6, 19:10, 19:24,
20:20, 25:6, 26:2,
26:8, 26:23
**GOLDENBERGLAW**
[1] - 2:6
**GOLOMB** [1] - 1:16
**good-faith** [1] - 6:8
**governing** [1] - 46:4
**great** [6] - 14:9, 14:11,
21:8, 32:23, 36:25,
39:23
**GREENBERG** [1] - 3:2
**Greene** [4] - 5:2, 5:12,
28:12, 28:13
**GREENE** [5] - 3:4, 5:2,
28:11, 28:13, 29:2
**Grossman** [9] - 5:3,
6:4, 16:6, 16:9, 18:3,
18:17, 18:21, 30:3,
30:20
**GROSSMAN** [12] -
3:7, 16:5, 16:10,
16:13, 16:22, 16:25,
17:4, 18:2, 18:14,
18:21, 19:12, 30:22
**Grossman's** [1] - 5:12
**group** [4] - 6:10, 8:16,
10:6, 39:5
**groups** [2] - 11:11,
24:8
**guess** [5] - 8:23,
10:24, 11:16, 33:10,
45:12
**guidelines** [1] - 42:17
**Guillory** [1] - 35:2

## H

**half** [1] - 12:11

**hand** [2] - 9:4, 27:25
**handle** [1] - 48:5
**handled** [2] - 24:15,
37:17
**handling** [2] - 33:23,
34:9
**hang** [2] - 32:17,
49:13
**happy** [4] - 11:13,
20:15, 28:16, 45:19
**harm** [1] - 29:24
**Healthcare** [1] - 2:12
**healthy** [1] - 49:3
**hear** [2] - 7:4, 43:15
**hearing** [1] - 43:8
**heavy** [1] - 40:12
**heck** [1] - 47:7
**held** [2] - 4:1, 33:4
**hello** [1] - 33:8
**help** [2] - 11:3, 16:3
**helpful** [2] - 28:20,
41:20
**hermetically** [1] - 5:15
**herself** [1] - 49:9
**himself** [1] - 5:17
**hit** [1] - 45:11
**hold** [1] - 22:15
**holding** [1] - 12:10
**Honik** [1] - 4:13
**HONIK** [3] - 1:16,
1:17, 4:13
**Honor** [60] - 4:11,
4:13, 4:15, 4:17,
4:21, 4:23, 5:3, 5:5,
5:7, 7:5, 9:3, 9:19,
10:17, 11:12, 11:17,
13:20, 14:19, 15:11,
15:13, 16:5, 16:25,
17:6, 18:2, 19:3,
20:5, 21:2, 21:9,
21:15, 22:14, 23:19,
26:14, 27:15, 27:19,
28:11, 28:13, 29:14,
29:17, 30:22, 32:10,
32:21, 33:22, 34:8,
34:12, 35:5, 35:9,
36:6, 36:20, 37:5,
38:2, 38:11, 38:22,
39:18, 40:1, 40:6,
40:24, 43:1, 44:20,
46:8, 46:9, 47:5
**Honor's** [1] - 27:18
**HONORABLE** [2] -
1:9, 1:11
**Honorable** [4] - 4:1,
33:4, 33:6
**hope** [3] - 12:14, 14:5,
19:20
**hopeful** [1] - 36:9
**hopefully** [7] - 17:22,

31:15, 32:6, 34:25,
43:12, 46:14, 46:19
**horrible** [1] - 49:9
**Hotel** [1] - 48:22
**Huahai** [1] - 2:13
**human** [1] - 31:23
**humans** [1] - 31:21

## I

**idea** [1] - 46:6
**identification** [2] -
38:19, 39:11
**identified** [5] - 8:2,
8:25, 11:8, 42:14,
44:24
**identify** [8] - 9:2, 9:12,
10:9, 10:21, 11:2,
12:19, 25:1, 31:21
**identifying** [1] - 29:6
**Illinois** [3] - 37:19,
38:1, 38:16
**illustration** [1] - 42:13
**implicate** [1] - 29:22
**importance** [1] - 40:10
**important** [6] - 20:18,
25:14, 25:15, 40:13,
43:11, 46:15
**impossible** [1] - 47:17
**impurities** [3] - 39:13,
44:2, 46:18
**IN** [1] - 1:3
**in-court** [1] - 47:8
**in-person** [3] - 40:19,
47:22, 48:4
**incentivize** [3] - 13:2,
13:6, 19:22
**included** [1] - 18:7
**including** [1] - 5:12
**inclusive** [1] - 12:4
**incredible** [1] - 31:13
**increment** [1] - 23:5
**incremental** [2] - 23:1,
23:13
**individual** [5] - 21:18,
23:5, 23:6, 35:20,
37:6
**individualized** [1] -
26:7
**indulge** [1] - 5:20
**infinitesimally** [1] -
32:3
**informally** [1] - 39:5
**information** [18] -
11:24, 12:5, 15:2,
16:19, 20:11, 20:17,
20:18, 20:24, 21:17,
22:1, 22:11, 22:13,
24:18, 26:6, 26:15,
29:24, 38:25, 48:1

**initial** [1] - 40:9
**initiate** [1] - 45:25
**injury** [7] - 8:1, 9:13,
10:4, 11:7, 40:23,
41:19, 45:9
**instances** [1] - 8:16
**intend** [3] - 9:1, 10:9,
36:2
**interested** [2] - 48:10,
48:17
**interesting** [3] - 14:17,
38:17, 43:17
**interests** [1] - 31:18
**interfere** [1] - 43:9
**internal** [1] - 45:4
**introductory** [1] - 7:3
**inventory** [1] - 24:23
**invited** [1] - 35:17
**involved** [3] - 22:19,
38:24, 41:8
**issue** [37] - 5:21, 5:23,
6:4, 6:20, 6:22, 7:2,
7:8, 10:9, 11:14,
12:24, 13:17, 14:16,
14:17, 17:19, 20:1,
21:13, 25:23, 26:4,
26:12, 27:12, 27:13,
27:24, 28:9, 34:13,
34:15, 34:20, 36:13,
37:1, 39:9, 39:10,
40:11, 41:12, 43:17,
43:19, 44:24, 46:15
**issue's** [1] - 28:5
**issues** [29] - 5:14,
5:18, 5:19, 5:22, 6:7,
6:18, 14:12, 14:14,
18:5, 18:6, 19:1,
19:4, 20:7, 24:25,
26:1, 28:8, 29:6,
35:12, 36:11, 37:14,
40:10, 40:14, 40:17,
41:15, 42:8, 44:10,
46:5, 46:25, 48:2
**item** [1] - 7:1

## J

**James** [1] - 33:20
**January** [1] - 23:25
**Jeff** [5] - 5:2, 5:7,
15:11, 21:11, 28:13
**JEFFREY** [2] - 2:22,
3:4
**JERSEY** [2] - 1:1, 1:15
**Jersey** [13] - 1:7, 37:3,
37:16, 47:14, 47:16,
47:18, 47:20, 48:3,
48:12, 48:16, 48:19,
49:7, 49:11
**job** [1] - 13:7

**Joel** [2] - 4:1, 33:6
**JOEL** [1] - 1:9
**Johnston** [1] - 5:6
**JOHNSTON** [2] - 2:15, 5:5
**Joining** [1] - 34:5
**joining** [3] - 5:14, 10:19, 29:1
**joins** [4] - 6:21, 27:7, 27:9, 27:11
**Judge** [28] - 4:2, 5:13, 6:21, 10:10, 22:18, 24:15, 27:7, 27:9, 27:11, 29:15, 32:18, 32:25, 33:5, 33:6, 33:8, 33:12, 37:10, 37:18, 40:8, 40:21, 41:2, 41:9, 41:18, 42:25, 44:8, 48:21, 49:7
**JUDGE** [4] - 1:10, 1:11, 37:10, 48:21
**judge** [1] - 38:5
**judges** [2] - 48:13, 49:6
**July** [3] - 1:8, 31:8, 33:18
**jump** [2] - 29:11, 30:7
**jury** [2] - 48:10, 48:11

## K

**KANNER** [1] - 2:2
**KATZ** [1] - 1:13
**keep** [3] - 11:11, 25:24, 32:14
**keeping** [1] - 17:6
**kept** [2] - 23:12, 23:17
**kind** [5] - 6:4, 39:12, 42:5, 44:7, 48:7
**kinds** [2] - 44:10, 48:6
**knowledge** [1] - 38:23
**known** [1] - 24:13
**knows** [2] - 4:8, 8:6
**KRISTEN** [1] - 2:15
**Kristen** [4] - 9:19, 9:21, 9:24, 14:1
**kudos** [1] - 16:9
**Kugler** [10] - 5:13, 6:21, 27:7, 27:9, 27:11, 32:18, 32:25, 33:5, 33:8, 37:18
**KUGLER** [1] - 1:11

## L

**lack** [1] - 22:20
**large** [1] - 35:11
**LASALLE** [1] - 2:7
**last** [9] - 5:21, 6:6,

22:6, 26:24, 27:12, 35:16, 40:2, 40:19, 42:24
**late** [1] - 5:25, 6:11, 30:17
**Laughter** [1] - 48:24
**Law** [1] - 34:14
**lawyer** [3] - 34:19, 38:9, 38:17
**lawyers** [2] - 38:10, 39:6
**lead** [3] - 4:6, 4:20, 13:14
**leadership** [2] - 38:23, 39:5
**learn** [1] - 46:18
**least** [2] - 8:18, 43:3
**leave** [3] - 12:25, 13:15, 48:23
**leaves** [2] - 27:12, 37:9
**left** [5] - 6:6, 6:8, 15:14, 16:12, 17:18
**legitimate** [1] - 26:3
**lesson** [1] - 41:14
**letter** [13] - 6:19, 7:1, 13:21, 14:15, 27:6, 33:18, 35:6, 40:2, 41:1, 41:21, 42:3, 42:13, 43:16
**letters** [2] - 5:11, 35:15
**letting** [2] - 9:6, 27:23
**level** [1] - 29:23
**levels** [1] - 7:11
**LEVIN** [1] - 1:20
**LEWIS** [1] - 3:7
**LIABILITY** [1] - 1:4
**lift** [1] - 40:12
**likely** [2] - 35:6, 36:1
**limit** [1] - 25:17
**limited** [1] - 24:21
**limiting** [2] - 24:1, 25:19
**line** [3] - 5:4, 32:22
**linger** [1] - 32:13
**list** [3] - 34:24, 35:19, 47:15
**listed** [3] - 7:1, 35:21, 35:24
**listen** [1] - 10:20
**listing** [3] - 33:19, 34:2, 34:14, 35:1
**listings** [1] - 33:16
**lists** [1] - 35:17
**literature** [1] - 45:5
**litigation** [5] - 4:4, 16:8, 24:25, 26:13, 41:22
**LITIGATION** [1] - 1:4

**live** [1] - 26:20
**LLC** [3] - 1:13, 2:2, 2:12
**LLLP** [1] - 2:22
**LLP** [4] - 2:9, 2:14, 2:18, 3:2
**local** [1] - 37:13
**LOCKARD** [7] - 3:3, 4:25, 33:22, 34:1, 35:5, 35:9, 36:20
**Lockard** [4] - 4:25, 32:24, 33:23, 36:8
**logic** [1] - 29:5
**logically** [1] - 15:19
**look** [4] - 23:16, 38:7, 40:13, 42:10
**looked** [1] - 24:12
**looking** [4] - 13:21, 14:15, 45:3, 45:5
**looks** [1] - 6:22
**LORI** [1] - 3:3
**Lori** [4] - 4:23, 39:19, 39:21, 46:23
**LOS** [1] - 2:16
**lose** [1] - 32:23
**loss** [1] - 45:16
**LOUISIANA** [1] - 2:4
**Ltd** [1] - 2:13
**luck** [1] - 49:14

## M

**machinations** [1] - 24:24
**MAGISTRATE** [1] - 1:10
**Magistrate** [2] - 4:2, 33:6
**mail** [1] - 35:22
**main** [1] - 45:10
**majority** [1] - 35:11
**management** [1] - 41:11
**manner** [1] - 43:13
**manufacturer** [4] - 7:2, 7:8, 13:23, 22:24
**manufacturers** [2] - 7:7, 7:18
**March** [2] - 40:9, 41:24
**MARKET** [1] - 1:17
**Marlene** [6] - 9:9, 9:20, 9:23, 11:18, 14:19, 25:6
**MARLENE** [1] - 2:6
**masks** [1] - 48:6
**material** [2] - 13:10, 32:3
**matter** [4] - 4:3, 19:8, 44:25, 49:20

**Maura** [1] - 5:3
**Maxine** [1] - 35:2
**Maxton** [1] - 38:5
**MAZIE** [1] - 1:13
**McKesson** [1] - 2:20
**MDL** [11] - 4:4, 30:5, 37:22, 38:14, 38:18, 40:7, 41:8, 41:23, 42:1, 43:2, 43:5
**mean** [5] - 12:9, 25:8, 25:14, 26:8, 26:19
**meaning** [1] - 24:25
**meaningful** [1] - 46:11
**mechanical** [1] - 1:25
**meet** [3] - 35:10, 35:15, 40:4
**meeting** [3] - 10:19, 29:1, 34:5
**meetings** [3] - 44:15, 47:22, 47:24
**Megan** [3] - 16:5, 18:3, 18:21
**MEGAN** [1] - 3:7
**members** [1] - 34:8
**mention** [1] - 43:4
**met** [1] - 6:2
**methodical** [1] - 45:18
**might** [5] - 13:6, 23:17, 24:3, 24:5, 24:6
**mind** [4] - 10:6, 17:6, 30:8, 32:9
**MINNEAPOLIS** [1] - 2:7
**minus** [1] - 8:12
**minutes** [1] - 19:8
**miss** [1] - 20:6
**missed** [1] - 21:4
**missing** [1] - 12:16
**misspeak** [1] - 41:4
**mistake** [1] - 35:2
**Mitchell** [1] - 1:6
**MITCHELL** [1] - 1:20
**MN** [1] - 2:7
**moment** [1] - 36:19
**Monday** [5] - 28:1, 28:3, 30:17, 30:18, 32:12
**month** [1] - 48:2
**months** [1] - 14:24, 22:5, 23:4, 31:8, 35:14, 41:24, 41:25, 43:5, 43:6, 45:21
**morning** [14] - 4:11, 4:13, 4:15, 4:17, 4:21, 4:23, 5:5, 5:7, 5:14, 6:15, 30:19, 33:13, 34:12, 40:1
**MORRIS** [1] - 2:9
**most** [3] - 7:19, 30:4,

36:10
**motion** [2] - 37:20, 38:19
**motions** [2] - 42:6, 43:7
**move** [6] - 10:20, 17:5, 19:22, 32:15, 40:22, 46:10
**movement** [1] - 38:6
**moving** [2] - 27:6, 30:14
**MR** [38] - 4:11, 4:13, 4:15, 4:21, 5:2, 5:7, 9:3, 9:5, 9:6, 9:8, 9:17, 15:11, 21:9, 21:11, 22:13, 27:15, 28:11, 28:13, 29:2, 29:14, 29:17, 32:10, 32:21, 34:8, 34:12, 36:6, 37:5, 37:12, 38:2, 38:11, 38:16, 38:22, 39:8, 39:18, 39:21, 44:20, 47:2, 47:4
**MS** [53] - 4:17, 4:23, 4:25, 5:5, 7:5, 7:15, 7:19, 8:1, 8:5, 8:9, 8:14, 8:21, 9:16, 9:19, 9:21, 10:10, 10:17, 11:12, 11:17, 11:20, 12:22, 13:20, 14:1, 14:10, 14:19, 16:5, 16:10, 16:13, 16:22, 16:25, 17:4, 18:2, 18:14, 18:21, 19:12, 20:2, 20:5, 21:2, 22:18, 23:19, 24:15, 25:3, 25:6, 26:14, 33:22, 34:1, 35:5, 35:9, 36:20, 39:19, 39:24, 46:10, 46:23
**multiple** [1] - 35:22
**must** [1] - 47:6

## N

**name** [1] - 4:7
**named** [2] - 7:24, 8:7
**names** [1] - 10:13
**narrow** [2] - 25:13, 25:21
**nature** [1] - 48:5
**nauseam** [1] - 13:1
**NDC** [3] - 22:22, 22:24, 25:19
**NE** [1] - 3:4
**necessarily** [1] - 18:11
**need** [19] - 5:15, 11:25, 12:4, 14:25,

*16:1, 20:17, 26:6,
32:17, 33:10, 33:15,
34:17, 36:18, 37:15,
44:6, 44:10, 44:13,
44:24, 46:25, 47:21*
**needs** [1] - 41:17
**negotiate** [2] - 15:21,
18:10
**negotiated** [3] - 13:1,
15:21, 31:7
**negotiating** [1] - 22:19
**network** [1] - 24:10
**never** [1] - 24:13
**new** [1] - 37:2
**NEW** [5] - 1:1, 1:15,
2:4, 2:20
**New** [13] - 1:7, 37:3,
37:16, 47:14, 47:16,
47:18, 47:20, 48:3,
48:12, 48:16, 48:19,
49:7, 49:11
**newly** [1] - 41:8
**news** [1] - 21:3
**next** [10] - 6:17, 19:17,
29:12, 34:21, 34:24,
36:15, 37:1, 39:9,
45:21, 48:16
**NIGH** [5] - 1:20, 4:15,
9:5, 9:8, 9:17
**Nigh** [2] - 4:15, 9:8
**night** [1] - 6:6
**nine** [1] - 31:8
**NJ** [1] - 49:22
**NJ-CRCR** [1] - 49:22
**nobody** [1] - 38:24
**nobody's** [1] - 38:24
**non** [1] - 6:18
**non-TAR** [1] - 6:18
**nonresponsive** [2] -
31:2, 31:21
**NORTON** [1] - 2:18
**note** [1] - 24:19
**nothing** [2] - 32:16,
49:8
**notice** [1] - 6:11
**notices** [1] - 35:22
**November** [2] - 35:4,
48:11
**number** [18] - 5:18,
8:8, 8:12, 19:14,
19:24, 20:4, 20:24,
21:1, 21:3, 22:24,
32:18, 32:21, 33:1,
36:23, 37:2, 37:12,
41:10, 47:11
**NUMBER** [1] - 1:2
**Number** [3] - 4:4,
22:22, 35:2
**numbers** [2] - 8:18,
22:21

# O

**object** [1] - 15:8
**objecting** [1] - 15:9
**objection** [1] - 44:9
**obstacle** [1] - 47:21
**obviously** [8] - 27:19,
27:22, 28:7, 40:10,
40:16, 44:14, 44:21,
49:13
**occurred** [1] - 28:1
**OF** [2] - 1:1, 2:19
**offer** [2] - 31:16, 32:7
**offered** [1] - 23:23
**offering** [1] - 19:6
**Official** [1] - 1:23
**often** [1] - 7:21
**OHIO** [1] - 2:23
**ON** [1] - 1:5
**one** [21] - 12:14, 13:1,
16:7, 16:14, 19:14,
21:2, 22:23, 24:6,
24:8, 24:12, 26:9,
26:10, 28:6, 29:3,
34:2, 37:20, 37:21,
38:10, 41:21, 41:23,
47:10
**open** [1] - 47:24
**opinion** [1] - 30:13
**opportunities** [1] -
35:22
**opportunity** [2] - 18:4,
40:15
**opposed** [6] - 11:1,
11:10, 18:11, 19:5,
28:2, 37:16
**ORAL** [1] - 1:5
**order** [12] - 16:24,
19:15, 20:16, 26:25,
27:2, 30:12, 30:13,
30:15, 30:18, 32:1,
36:3, 36:10
**ordered** [3] - 7:23,
24:23, 25:12
**orders** [6] - 33:17,
36:13, 37:6, 44:11,
46:4, 47:13
**original** [1] - 11:1
**originally** [1] - 23:19
**ORLEANS** [1] - 2:4
**otherwise** [2] - 36:11,
40:18
**ought** [2] - 33:10,
47:25
**outside** [1] - 12:5
**over-ordered** [1] -
24:23
**overly** [1] - 12:4
**oversight** [2] - 12:18,
13:10

**own** [1] - 15:15

# P

**P.A** [1] - 1:20
**P.C** [1] - 1:20
**Page** [1] - 14:15
**PAPANTONIO** [1] -
1:20
**paragraph** [3] - 7:3,
7:7, 7:9
**parallel** [6] - 41:2,
41:5, 41:13, 43:9,
44:9, 45:11
**parcel** [1] - 42:8
**PARK** [1] - 2:16
**PARKWAY** [1] - 1:14
**part** [10] - 9:25, 10:12,
16:16, 17:15, 18:18,
19:17, 19:21, 22:19,
32:19, 42:8
**particular** [7] - 22:9,
22:10, 22:12, 22:17,
23:11, 25:23, 29:22
**particularly** [1] - 48:14
**parties** [8] - 4:22, 6:8,
15:10, 28:19, 36:22,
38:3, 38:20, 42:7
**past** [1] - 40:16
**patchwork** [1] - 24:16
**pending** [1] - 37:19
**PENNSYLVANIA** [3] -
1:18, 2:11, 3:8
**PENSACOLA** [1] -
1:21
**people** [15] - 5:24,
7:25, 8:20, 9:2, 10:9,
10:22, 11:2, 11:8,
12:19, 33:9, 33:19,
35:7, 45:5, 47:11,
48:4
**perfect** [1] - 26:16
**perfectly** [3] - 26:3,
30:16
**perhaps** [1] - 28:4
**period** [13] - 21:19,
22:4, 22:12, 23:2,
23:3, 23:4, 23:13,
23:14, 23:15, 23:22,
23:24, 25:18
**peripheral** [5] - 14:23,
15:3, 15:15, 15:18,
16:17
**person** [6] - 24:4,
31:4, 31:23, 40:19,
47:22, 48:4
**personal** [6] - 8:1,
10:4, 11:7, 40:23,
41:19, 45:8
**perspective** [1] -

*29:10*
**PFS** [2] - 35:8, 36:18
**ph** [1] - 38:5
**Pharmaceuticals** [2] -
2:12, 2:13
**pharmacies** [1] - 22:3
**pharmacy** [16] - 5:6,
7:21, 11:24, 13:22,
13:23, 14:2, 21:19,
22:2, 22:14, 22:25,
23:6, 23:11, 23:12,
23:21, 24:6, 25:11
**Pharmacy** [1] - 2:17
**PHILADELPHIA** [2] -
1:18, 2:11
**phone** [6] - 16:4,
29:11, 30:17, 30:21,
33:12, 47:25
**picking** [1] - 22:10
**PIEDMONT** [1] - 3:4
**pill** [4] - 12:1, 24:4,
24:6, 24:14
**pills** [4] - 24:10, 24:11,
25:9, 25:15
**place** [7] - 14:23,
36:12, 36:21, 41:16,
42:4, 46:3, 46:6
**plaintiff** [20] - 4:14,
8:2, 11:21, 13:3,
13:6, 21:20, 21:25,
22:3, 22:9, 22:17,
22:21, 23:21, 24:12,
25:20, 33:23, 34:6,
35:11, 35:13, 46:12,
47:2
**plaintiff's** [6] - 21:18,
23:5, 35:21, 38:9,
38:17, 40:25
**Plaintiffs** [5] - 1:15,
1:18, 1:22, 2:4, 2:8
**plaintiffs** [60] - 4:9,
4:12, 4:16, 4:18, 6:2,
6:9, 6:16, 8:2, 8:18,
8:23, 8:25, 9:1, 9:23,
10:2, 10:4, 10:8,
10:21, 11:6, 11:7,
14:3, 14:16, 15:17,
16:1, 16:19, 20:11,
20:13, 20:15, 20:22,
21:14, 21:23, 23:18,
24:17, 26:10, 28:21,
28:24, 31:3, 31:7,
31:10, 31:12, 31:15,
31:18, 31:24, 31:25,
32:7, 34:13, 36:1,
36:5, 36:7, 40:3,
42:1, 42:11, 42:17,
43:5, 43:13, 43:25,
44:4, 44:13, 44:22
**plaintiffs'** [13] - 4:5,

*6:5, 6:12, 13:14,
18:4, 22:22, 30:4,
33:16, 35:10, 35:17,
35:18, 38:10, 39:6*
**plan** [1] - 17:22
**Plano** [1] - 23:8
**plans** [1] - 16:18
**platform** [1] - 34:16
**plexiglass** [1] - 48:7
**PLLC** [1] - 2:6
**plus** [1] - 8:12
**point** [13] - 20:14,
21:20, 28:18, 33:11,
35:25, 38:6, 39:2,
42:6, 42:23, 43:22,
44:23, 45:17, 47:22
**pointed** [1] - 15:13
**portion** [1] - 33:24
**position** [7] - 6:13,
12:6, 29:3, 29:21,
30:11, 43:21, 44:21
**possible** [1] - 31:19
**practicalities** [1] -
45:20
**pre** [1] - 40:21
**pre-COVID** [1] - 40:21
**precautions** [2] - 48:5,
48:18
**prepare** [1] - 46:11
**prepared** [2] - 30:14,
47:23
**prescription** [2] -
22:6, 22:9
**presumably** [1] - 45:3
**pretty** [3] - 13:16,
15:5, 49:11
**pricing** [6] - 19:25,
20:1, 20:7, 20:10,
20:18, 20:24
**Prinston** [1] - 2:12
**priority** [1] - 43:10
**privilege** [2] - 16:7,
32:5
**privileged** [1] - 32:3
**problem** [3] - 13:13,
26:21, 48:25
**proceed** [5] - 6:11,
34:3, 36:2, 41:19,
42:21
**Proceedings** [1] -
1:25
**proceedings** [3] -
47:9, 49:15, 49:20
**PROCEEDINGS** [2] -
4:1, 33:4
**process** [16] - 12:11,
14:23, 16:16, 16:25,
17:5, 17:23, 17:24,
18:19, 19:17, 19:19,
19:22, 28:22, 32:7,

36:12, 36:21, 36:24
**PROCTOR** [1] - 1:20
**produce** [2] - 23:11, 31:2, 31:23
**produced** [1] - 1:25
**producing** [1] - 23:8
**product** [10] - 22:2, 24:3, 24:20, 24:21, 25:12, 26:3, 26:11, 26:15, 26:18, 32:2
**production** [2] - 27:5, 30:25
**productive** [5] - 9:22, 9:24, 29:6, 35:10, 36:22
**productively** [1] - 14:22
**PRODUCTS** [1] - 1:3
**program** [2] - 15:15, 31:20
**promised** [1] - 32:12
**properly** [1] - 34:18
**proposal** [7] - 9:9, 11:22, 13:14, 23:1, 29:22, 30:4, 31:15
**propose** [5] - 14:6, 21:25, 29:7, 30:2, 43:8
**proposed** [4] - 24:2, 28:15, 29:20, 42:24
**proposing** [1] - 22:8
**protocol** [7] - 15:4, 28:16, 29:8, 29:20, 29:23, 30:1, 30:5
**provide** [6] - 21:17, 22:1, 22:11, 22:13, 30:3, 42:2
**provides** [2] - 11:24, 12:8
**providing** [1] - 42:12
**provision** [1] - 20:16
**punitive** [1] - 41:13
**purely** [1] - 41:1
**purpose** [1] - 21:24
**pursuant** [1] - 16:24
**push** [1] - 44:22
**put** [9] - 4:9, 6:25, 14:23, 27:4, 28:16, 38:14, 38:18, 42:4, 43:16
**puts** [1] - 29:2

**Q**

**quarantine** [4] - 47:14, 47:17, 47:21, 49:1
**questions** [2] - 18:7, 21:24
**quickly** [1] - 46:24
**quite** [1] - 35:4

**quote** [1] - 15:23

**R**

**RAFFERTY** [1] - 1:20
**raise** [4] - 13:11, 17:19, 17:20, 26:21
**raised** [2] - 18:5, 40:2
**rather** [1] - 9:11
**rational** [1] - 31:4
**RDR** [1] - 49:22
**RE** [1] - 1:3
**reached** [2] - 14:3, 38:25
**read** [3] - 23:20, 32:9, 39:14
**reading** [1] - 30:8
**real** [1] - 44:8
**really** [11] - 11:3, 13:9, 14:25, 20:18, 21:22, 24:17, 25:20, 38:25, 45:10, 45:16
**reargue** [1] - 29:19
**reason** [5] - 12:10, 14:24, 25:13, 25:16, 45:23
**reasonable** [4] - 28:2, 28:10, 28:22, 30:16
**reasons** [2] - 20:25, 37:16
**recalled** [2] - 24:21, 26:12
**received** [1] - 5:11
**recently** [1] - 47:10
**recess** [1] - 33:3
**reciprocal** [1] - 47:19
**reckoning** [3] - 43:21, 44:16, 44:17
**recollection** [2] - 7:12, 7:23
**record** [7] - 4:3, 4:10, 5:25, 6:1, 18:22, 29:18, 49:20
**recorded** [1] - 1:25
**records** [4] - 11:24, 12:1, 23:12, 23:17
**recurring** [1] - 36:21
**referred** [1] - 37:22
**refiled** [1] - 37:21
**refresh** [2] - 7:12, 7:22
**refuse** [2] - 31:17, 32:8
**regard** [2] - 13:8, 17:7
**regarding** [1] - 6:20
**relabeler** [4] - 17:9, 17:13, 17:18, 19:16
**relabelers** [5] - 14:18, 16:4, 16:11, 17:23, 19:21
**related** [4] - 19:3,

21:25, 23:11, 40:17
**relates** [1] - 23:7
**relating** [1] - 20:7
**relayed** [1] - 6:11
**relevant** [8] - 22:4, 22:12, 23:3, 23:14, 23:21, 23:23, 25:15, 25:18
**remain** [1] - 28:20
**remaining** [2] - 7:7, 7:9
**remember** [2] - 7:14, 7:23
**remove** [1] - 38:7
**removed** [1] - 37:22
**removing** [1] - 38:13
**renegotiate** [1] - 20:16
**repackager** [7] - 15:8, 15:23, 17:9, 17:13, 17:18, 18:6, 19:16
**repackager/relabeler** [1] - 14:16
**repackagers** [13] - 14:17, 15:21, 15:22, 16:4, 16:7, 16:11, 16:14, 16:15, 17:23, 18:9, 18:11, 19:3, 19:21
**Reporter** [1] - 1:23
**REPORTER** [3] - 25:1, 25:5, 46:21
**reporter** [2] - 4:8, 46:22
**Reporter/**
**Transcriber** [1] - 49:22
**reports** [7] - 42:2, 42:12, 44:25, 45:6, 45:8, 45:15, 46:4
**represent** [1] - 16:6
**representative** [1] - 9:1
**representatives** [2] - 7:25, 8:10
**reps** [1] - 8:7
**request** [16] - 16:24, 17:3, 17:5, 17:10, 17:13, 18:18, 19:25, 20:24, 21:14, 21:15, 21:22, 24:18, 25:20, 27:4, 29:25, 34:3
**requested** [4] - 10:12, 11:10, 19:16, 19:21
**requests** [2] - 16:1, 33:17
**required** [1] - 42:1
**requiring** [1] - 31:2
**resolution** [3] - 6:3, 6:16, 47:1
**resolve** [2] - 5:21,

36:10
**resolved** [6] - 6:15, 19:14, 33:14, 34:21, 34:25, 35:20
**resource** [1] - 42:7
**resources** [2] - 31:14, 42:22
**respect** [4] - 15:15, 20:8, 20:21, 21:18
**respond** [9] - 7:17, 8:20, 10:6, 10:12, 10:22, 11:4, 11:10, 25:7, 36:4
**responded** [3] - 8:13, 36:23, 40:3
**responds** [1] - 36:16
**response** [3] - 12:13, 34:7, 39:14
**responses** [1] - 7:3
**rest** [3] - 23:24, 25:18, 33:1
**restrict** [1] - 47:11
**results** [1] - 13:15
**retail** [6] - 5:6, 13:22, 13:23, 14:1, 22:12, 22:16
**Retailer** [1] - 2:17
**retailer** [1] - 10:11
**retailers** [7] - 7:18, 8:19, 9:10, 10:22, 10:23, 11:3, 11:9
**return** [4] - 21:14, 22:1, 24:3, 24:20
**returned** [3] - 23:21, 24:5, 25:11
**returns** [7] - 21:17, 21:18, 22:2, 24:2, 24:18, 24:19, 24:22
**review** [2] - 31:22, 32:5
**reviewed** [1] - 5:12
**RFPs** [1] - 24:16
**RICHER** [5] - 2:15, 9:16, 9:19, 14:1, 14:10
**Richer** [2] - 9:19, 14:1
**rights** [1] - 48:15
**RMR** [1] - 49:22
**road** [1] - 26:21
**ROAD** [2] - 3:4, 3:8
**Robert** [1] - 33:5
**ROBERT** [1] - 1:11
**room** [1] - 5:15
**ROSE** [1] - 2:18
**ROSELAND** [1] - 1:15
**Rosenberg** [1] - 41:9
**rough** [1] - 8:18
**round** [1] - 34:2
**route** [1] - 28:23
**RUBEN** [1] - 1:17

**Ruben** [1] - 4:13
**rule** [1] - 25:24
**ruled** [3] - 19:25, 20:7, 20:25
**ruling** [5] - 12:24, 13:24, 26:19, 32:11, 32:12
**RULINGS** [1] - 1:5
**rulings** [4] - 6:2, 20:3, 20:8, 30:15
**run** [1] - 14:5

**S**

**Salas** [1] - 49:7
**sales** [2] - 23:9, 30:9
**sample** [1] - 26:2
**sampled** [1] - 26:11
**sampling** [1] - 30:25
**SARAH** [1] - 2:15
**Sarah** [2] - 5:5, 9:24
**sat** [1] - 6:1
**save** [5] - 5:20, 6:21, 27:7, 27:9, 27:10
**schedule** [14] - 27:10, 41:21, 42:3, 42:20, 42:24, 43:3, 43:7, 43:8, 43:14, 46:7, 46:12, 46:13, 46:19, 48:4
**scheduled** [1] - 35:15
**schedules** [1] - 41:11
**Schneider** [10] - 4:2, 33:6, 33:13, 40:8, 40:21, 41:2, 41:18, 43:1, 44:8, 48:21
**SCHNEIDER** [3] - 1:9, 37:10, 48:21
**Schwartz** [1] - 7:5
**SCHWARTZ** [9] - 2:10, 7:5, 7:15, 7:19, 8:1, 8:5, 8:9, 8:14, 8:21
**science** [1] - 43:23
**scope** [1] - 21:15
**sealed** [1] - 5:15
**search** [1] - 31:8
**second** [3] - 32:19, 34:24, 35:1
**secondly** [1] - 15:20
**Section** [2] - 11:23, 12:4
**section** [1] - 13:4
**see** [12] - 6:3, 13:9, 13:13, 19:10, 29:8, 29:10, 34:24, 36:15, 37:23, 38:13, 45:4, 45:23
**seek** [2] - 39:10, 39:11
**selecting** [1] - 12:23

**send** [5] - 14:7, 29:20, 29:25, 30:1, 46:12
**sending** [1] - 29:24
**sense** [4] - 23:17, 27:17, 42:4, 45:25
**sent** [1] - 35:15
**separate** [2] - 14:25, 19:5
**September** [2] - 35:4, 47:23
**seriously** [2] - 31:1, 31:10
**serve** [1] - 45:8
**served** [2] - 27:1, 34:18
**session** [1] - 41:3
**set** [2] - 7:16, 47:10
**SETH** [1] - 2:10
**Seth** [3] - 4:21, 38:2, 47:4
**setting** [2] - 32:24, 44:11
**several** [1] - 41:24
**severe** [2] - 48:12, 48:13
**shape** [1] - 49:11
**sheet** [40] - 6:22, 7:2, 8:19, 9:11, 9:17, 10:1, 11:23, 12:7, 12:10, 12:15, 13:3, 13:7, 14:8, 14:25, 15:19, 17:7, 17:11, 17:16, 17:20, 17:25, 18:8, 18:16, 18:19, 19:2, 19:5, 19:9, 19:18, 19:23, 20:14, 21:6, 21:14, 21:18, 22:5, 22:22, 23:15, 26:24, 27:4, 33:23, 35:11
**SHEETS** [1] - 1:6
**sheets** [17] - 6:20, 6:24, 7:9, 7:10, 7:17, 8:13, 8:14, 10:7, 12:21, 12:25, 13:22, 13:23, 25:25, 26:7, 27:1, 33:17, 35:13
**short** [3] - 14:21, 27:6, 42:15
**short-form** [2] - 27:6, 42:15
**shortage** [1] - 48:13
**show** [6] - 6:20, 33:17, 34:4, 36:3, 36:9, 36:14
**show-cause** [1] - 6:20
**shows** [1] - 28:22
**side** [7] - 20:17, 24:13, 28:8, 30:4, 40:22, 42:22, 46:15

**sides** [1] - 28:5
**similar** [1] - 30:5
**simpler** [1] - 46:19
**simply** [2] - 12:16, 25:12
**Simultaneous** [2] - 9:18, 13:25
**single** [1] - 43:17
**situated** [1] - 15:14
**situation** [1] - 49:9
**six** [3] - 22:5, 23:4, 45:21
**SLATER** [18] - 1:13, 1:14, 4:11, 9:3, 9:6, 21:9, 27:15, 29:14, 29:17, 32:10, 32:21, 34:8, 37:5, 37:12, 38:22, 39:8, 44:20, 47:2
**Slater** [22] - 4:11, 6:9, 6:12, 8:25, 9:3, 27:13, 29:16, 29:17, 30:7, 30:24, 31:15, 32:6, 32:9, 34:6, 37:5, 38:12, 38:22, 39:4, 43:15, 44:12, 44:19, 47:2
**Slater's** [1] - 39:14
**small** [2] - 20:11, 32:3
**SMITH** [1] - 3:7
**smoothly** [1] - 13:16
**Solco** [1] - 2:12
**solely** [1] - 40:11
**someone** [1] - 39:4
**sometime** [1] - 48:16
**somewhere** [1] - 5:15
**soon** [2] - 8:19, 49:13
**sooner** [2] - 10:18, 46:14
**Sorry** [1] - 9:5
**sorry** [11] - 9:22, 13:18, 13:20, 21:10, 25:3, 29:14, 37:10, 39:20, 39:24, 46:21, 46:23
**sort** [8] - 6:3, 21:23, 27:22, 40:13, 40:14, 41:14, 42:20, 43:8
**sounds** [4] - 10:25, 20:20, 31:13, 32:16
**source** [1] - 24:11
**SOUTH** [1] - 2:11
**SPEAKER** [3] - 25:2, 46:8, 46:9
**speaking** [1] - 46:22
**specific** [5] - 19:7, 21:25, 23:7, 42:11, 44:23
**specifically** [2] - 21:23, 34:9

**speedy** [1] - 48:15
**spend** [1] - 42:7
**spoken** [2] - 5:13, 9:21
**STANOCH** [2] - 34:12, 36:6
**Stanoch** [1] - 34:13, 36:6
**start** [6] - 10:3, 11:25, 14:16, 43:3, 45:25, 46:12
**started** [2] - 33:1, 33:11
**starting** [1] - 28:18
**state** [8] - 27:8, 37:1, 37:21, 37:24, 37:25, 47:16, 47:20
**State** [1] - 37:19
**States** [3] - 4:2, 33:5, 33:6
**states** [4] - 47:14, 47:15, 47:18, 47:19
**STATES** [3] - 1:1, 1:10, 1:11
**STATUS** [1] - 1:4
**stay** [6] - 15:1, 15:3, 19:4, 32:22, 49:12
**stayed** [2] - 37:4, 37:8
**stenography** [1] - 1:25
**still** [5] - 11:4, 15:25, 16:7, 16:15, 35:7
**store** [2] - 22:12, 22:16
**strategies** [1] - 41:11
**STREET** [4] - 1:17, 2:3, 2:11, 2:23
**Streets** [1] - 1:7
**strong** [1] - 40:22
**stuff** [2] - 44:7, 48:8
**subject** [2] - 23:2, 23:15
**submit** [1] - 16:19
**submitted** [3] - 8:14, 34:17, 35:13
**subset** [1] - 20:11
**substance** [1] - 14:10
**substantial** [2] - 8:15, 12:18, 13:8
**substantially** [5] - 11:21, 11:23, 12:7, 12:15, 13:10
**substantive** [1] - 14:3
**success** [1] - 38:25
**suggest** [1] - 32:17
**suggested** [1] - 9:11
**suggestion** [2] - 27:18, 28:23
**SUITE** [7] - 1:17, 1:21, 2:7, 2:16, 2:23, 3:4,

3:8
**summarize** [1] - 21:16
**summarized** [1] - 36:8
**summary** [1] - 23:9
**Superior** [1] - 37:3
**supply** [2] - 7:11, 7:20
**support** [1] - 43:23
**supposed** [1] - 47:16
**supposedly** [1] - 31:5
**surprised** [1] - 8:23
**SWEDESFORD** [1] - 3:8
**system** [3] - 31:24, 34:17, 47:7

---

## T

**TAR** [6] - 5:21, 5:23, 6:4, 6:18, 27:13, 31:9
**team** [1] - 34:9
**technical** [1] - 34:15
**teleconference** [2] - 4:1, 33:4
**TELEPHONIC** [1] - 1:4
**ten** [2] - 41:25, 43:4
**term** [1] - 30:3
**terms** [9] - 14:10, 18:10, 18:15, 19:7, 31:8, 40:24, 46:17, 48:18, 49:10
**test** [2] - 24:7, 24:14
**testing** [2] - 24:15, 25:10
**tethered** [1] - 21:23
**Teva** [14] - 3:5, 4:24, 4:25, 5:2, 5:21, 5:23, 6:2, 22:22, 28:9, 28:13, 28:15, 31:2, 31:16, 31:20
**Teva's** [1] - 27:17
**Texas** [2] - 22:23, 23:8
**THE** [78] - 1:1, 1:9, 1:11, 2:19, 4:3, 4:19, 5:10, 7:12, 7:16, 7:22, 8:3, 8:6, 8:11, 8:17, 8:22, 10:8, 10:15, 10:20, 11:14, 11:19, 12:13, 12:24, 13:21, 14:9, 14:11, 15:7, 16:3, 16:9, 16:11, 16:21, 16:23, 17:2, 17:8, 18:13, 18:17, 19:8, 19:13, 20:3, 20:20, 21:8, 21:10, 22:7, 22:15, 23:18, 25:1, 25:4, 25:5, 25:23, 26:23, 28:12, 29:16, 30:7, 30:23, 32:11, 32:22,

33:8, 33:25, 34:6, 34:11, 34:23, 35:7, 36:4, 36:13, 36:25, 37:9, 37:18, 38:9, 38:15, 38:21, 39:3, 39:9, 39:23, 43:15, 46:1, 46:21, 46:25, 47:6, 48:25
**themselves** [1] - 6:14
**theory** [2] - 43:24
**they've** [4] - 10:24, 21:16, 35:22, 45:5
**thinking** [1] - 43:24
**third** [2] - 21:13
**THOMAS** [1] - 1:20
**THORNBURG** [1] - 2:14
**thorough** [1] - 13:7
**three** [5] - 14:12, 14:14, 19:13, 21:1, 21:3
**timeline** [1] - 42:5
**timing** [2] - 37:13, 45:11
**today** [5] - 9:13, 17:11, 44:11, 46:16, 49:2
**together** [2] - 24:16, 28:16
**took** [4] - 12:2, 24:4, 24:12, 26:19
**totally** [1] - 21:21
**touch** [1] - 39:1
**towards** [1] - 45:17
**Townsend** [3] - 33:20, 34:1, 34:7
**Townsend's** [1] - 34:3
**track** [5] - 41:2, 41:6, 41:13, 43:9, 45:11
**transcript** [2] - 1:25, 49:19
**transcription** [1] - 1:25
**TRAURIG** [1] - 3:2
**traveling** [1] - 48:2
**trial** [3] - 24:7, 24:8, 48:15
**trials** [3] - 48:10, 48:11, 48:15
**tried** [1] - 25:21
**trigger** [9] - 10:2, 10:4, 10:7, 11:5, 11:6, 11:16, 11:20, 21:4, 44:6
**triggers** [1] - 13:5
**try** [4] - 16:18, 17:5, 27:18, 28:23
**trying** [13] - 10:20, 19:1, 19:7, 20:8, 20:10, 20:21, 20:22,

24:7, 25:8, 27:21, 38:18, 39:7, 42:19
**Tuesday** [1] - 30:19
**turn** [3] - 27:14, 29:7, 39:21
**two** [12] - 10:24, 10:25, 12:13, 13:12, 14:5, 19:13, 19:24, 20:4, 20:24, 22:25, 33:18, 37:19
**types** [6] - 32:4, 39:11, 39:12, 42:1, 42:11, 43:6
**typo** [2] - 35:3, 35:6

## U

**U.S** [2] - 1:6, 2:12
**ULMER** [1] - 2:22
**uncertainty** [1] - 28:7
**under** [1] - 42:17
**understood** [2] - 18:2, 19:12
**underway** [1] - 43:14
**unforeseen** [1] - 13:14
**UNIDENTIFIED** [3] - 25:2, 46:8, 46:9
**United** [3] - 4:2, 33:5, 33:6
**UNITED** [3] - 1:1, 1:10, 1:11
**unless** [1] - 21:3
**unquote** [1] - 15:23
**unreasonable** [1] - 6:12
**unsympathetic** [1] - 43:20
**up** [12] - 12:10, 14:4, 24:23, 28:22, 29:4, 30:12, 32:17, 32:24, 35:20, 44:11, 47:11, 47:24
**update** [1] - 34:17
**updated** [1] - 36:23
**urgency** [1] - 28:5
**US** [1] - 2:18

## V

**validation** [6] - 28:16, 29:8, 29:20, 29:23, 30:4, 32:6
**valsartan** [6] - 21:20, 22:3, 25:11, 43:18, 44:2, 44:6
**Valsartan** [1] - 4:4
**VALSARTAN** [1] - 1:3
**valsartan-containing** [2] - 44:2, 44:6
**variations** [1] - 42:14

**various** [4] - 37:16, 40:17, 42:17, 47:14
**version** [2] - 14:7, 27:1
**via** [2] - 4:1, 33:4
**Victoria** [2] - 4:25, 33:23
**VICTORIA** [1] - 3:3
**VINE** [1] - 2:23
**virus** [3] - 47:7, 49:8, 49:10
**VOICE** [3] - 10:19, 29:1, 34:5
**voluntarily** [1] - 47:16

## W

**wait** [3] - 11:2, 24:3, 37:23
**waiting** [1] - 40:14
**Walmart** [1] - 2:12
**wants** [4] - 15:24, 17:19, 29:20, 40:24
**Washington** [1] - 5:16
**waste** [1] - 31:14
**wasting** [2] - 31:6, 42:22
**WAYNE** [1] - 3:8
**wearing** [1] - 48:6
**week** [8] - 6:17, 6:24, 8:19, 29:12, 35:16, 40:2, 42:24
**weekend** [1] - 28:3
**weeks** [3] - 10:24, 10:25, 13:12
**welcome** [1] - 18:3
**whatsoever** [1] - 35:14
**Whiteley** [1] - 4:18
**WHITELEY** [3] - 2:2, 2:3, 4:17
**whittled** [1] - 35:12
**whole** [1] - 22:17
**wholesaler** [2] - 5:8, 21:8
**wholesalers** [16] - 14:12, 14:13, 15:2, 15:7, 15:9, 15:12, 15:16, 15:22, 16:2, 18:6, 18:8, 18:12, 19:1, 19:4, 19:7, 21:12
**wholesalers'** [2] - 19:9, 19:18
**willing** [3] - 23:16, 25:17, 29:12
**wind** [1] - 30:8
**winnowing** [1] - 44:3
**WITH** [1] - 1:5
**wondering** [1] - 47:6

**word** [1] - 32:14
**works** [2] - 28:3, 31:25
**worry** [1] - 11:16
**write** [1] - 45:6

## Y

**year** [10] - 12:9, 12:11, 22:23, 22:25, 40:16, 46:3, 46:6, 46:14, 48:16
**years** [4] - 21:19, 21:21, 22:25, 23:14
**yesterday** [11] - 5:25, 6:1, 9:22, 9:25, 10:11, 27:16, 27:20, 28:15, 28:17, 29:5, 34:20
**YORK** [2] - 2:20

## Z

**Zantac** [5] - 41:8, 42:21, 43:4, 43:17, 46:17
**Zantac/ranitidine** [1] - 41:22
**Zhejiang** [1] - 2:13
**ZHP** [3] - 4:22, 7:6, 38:3