IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE: VALSARTAN, LOSARTAN, AND
IRBESARTAN PRODUCTS LIABILITY
LITIGATION

No. 1:19-md-2875-RBK

## EXPERT DECLARATION OF LAURA R. CRAFT

## I. INTRODUCTION

1.  This case alleges injury to named Plaintiffs ("Plaintiffs") and Proposed Classes

comprised of consumers and third-party payors ("TPPs") who purchased, paid for, or provided

reimbursement for some or all of the purchase price of any generic valsartan-containing drug

("VCD") intended for personal or household use from January 1, 2012 through the final recall of

these products as of November 10, 2021. Valsartan is an angiotensin II receptor blocker (ARB)

used to treat high blood pressure (hypertension) and heart failure.[1] It is sold as a standalone drug

(as a generic version of the branded product Diovan ), in combination therapy with

hydrochlorothiazide (as a generic version of the branded product Diovan HCT), and as

amlodipine-valsartan and its corresponding combination therapy with hydrochlorothiazide (as a

generic version of the branded products Exforge and Exforge HCT, respectively).[2] Plaintiffs

---

[1] Diovan (valsartan) label, Novartis Pharmaceuticals (2011), accessed October 15, 2021 at
https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/021283s033lbl.pdf.
[2] Third Amended Consolidated Economic Loss Class Action Complaint, filed November 1, 2021, at ¶¶2-6.

HIGHLY CONFIDENTIAL

allege that Defendants in this matter "designed, manufactured, labeled, marketed, distributed, packaged, and sold" VCDs that were "contaminated," "non-merchantable," "not of the quality or purity represented" and not qualified under the FDA generic approvals that had been granted for them.[3] On this basis, Plaintiffs have alleged on behalf of themselves and potential classes of consumers and TPPs claims for breach of express and implied warranties, fraud, negligent misrepresentation, unjust enrichment, negligence, negligence per se, and violations of state consumer protection laws in all 50 of the United States, its territories and possessions, including the District of Columbia and Puerto Rico.[4] The Defendants include four Active Pharmaceutical Ingredient (API) Manufacturers (Zhejiang Huahai Pharmaceutical Col, Ltd., Hetero Labs, Ltd., Mylan Laboratories, Ltd., and Aurobindo Pharma, Ltd., and their respective affiliates),[5] three Finished Dose Manufacturers (Teva, Actavis, and Torrent, and their respective affiliates),[6] the country's three major Wholesalers (Cardinal Health, Inc., McKesson Corporation, AmerisourceBergen Corporation);[7] and eight Retail Pharmacies that dispensed the VCDs to consumers  (Walgreens, CVS, Walmart, Rite-Aid, Express Scripts, Kroger, OptumRx, Albertsons).[8]

2.  I have been provided with the text of the proposed Class Definitions which include both Economic Loss Classes on behalf of TPPs and consumers and, separately, Medical Monitoring Classes on behalf of individuals who consumed in excess of certain quantities of the

---

[3] Third Amended Consolidated Economic Loss Class Action Complaint, filed November 1, 2021, at ¶¶2-9.
[4] Third Amended Consolidated Economic Loss Class Action Complaint, filed November 1, 2021, at ¶¶ 603-823.
[5] The API Manufacturers in this case also marketed and sold their own finished dose products in the United States under their own approved drug applications, so can also be considered Finished Dose Manufacturers as well.
[6] Third Amended Consolidated Economic Loss Class Action Complaint, filed November 1, 2021, at ¶¶ 99-105.
[7] Third Amended Consolidated Economic Loss Class Action Complaint, filed November 1, 2021, at ¶¶ 142-157.
[8] Third Amended Consolidated Economic Loss Class Action Complaint, filed November 1, 2021, at ¶¶ 106-141.
Retail pharmacy Humana Pharmacy, Inc. is no longer a named defendant in the two class action cases (Economic Harm and Medical Monitoring) but is still part of the personal injury case. However, Humana previously produced data that is helpful in demonstrating the process for ascertaining class membership and is therefore still discussed in this Declaration.

HIGHLY CONFIDENTIAL

specified VCDs. Copies of these definitions are attached as Exhibit A to this Declaration. I have

also been provided with a list of 428 National Drug Codes ("NDCs") which uniquely identify the

VCD products that Plaintiffs allege to have been improperly manufactured and sold and to have

been both valueless and unsafe. That list is attached hereto as Exhibit B. Counsel for Plaintiffs

have asked me to evaluate whether, given the Proposed Class definitions and the various

exclusions applied, it is possible to identify the individual consumers and TPPs who meet their

terms. This Declaration identifies the pharmaceutical industry practices, legal regulations and

available data that make it possible to do so.

### A. Qualifications

3.   I am the President of OnPoint Analytics, Inc. ("OnPoint"), an economic, statistical,

and financial consulting firm specializing in data analytics for complex litigation. A large portion

of OnPoint's business is devoted exclusively to health care and, in particular, to the

pharmaceutical industry. Since 2004, I have been responsible for overseeing all of the firm's

work involving pharmaceutical products. Most of these engagements have involved litigation.

Others have involved strategic planning related to drug product launches or pricing. I have

personally worked on more than 65 pharmaceutical cases involving antitrust allegations, unfair

competition, fraud on the market, patent infringement, patent damages, breach of contract, and

requests for injunctive relief. In the course of that applied experience, I have developed

specialized knowledge about the sources and uses of pharmaceutical data as well as industry

practices related to drug development, approval, marketing, sales, pricing, formulary placement,

and reimbursement.

4.   In 2017, I co-authored the book *Empirical Challenges in Pharma Litigation*, which

describes in detail various data sets, including those privately developed and maintained by drug

manufacturers and their partners, government data, and data collected and sold by commercial

3

HIGHLY CONFIDENTIAL

services for use by industry participants and analysts. The book examines differences between these data sets and outlines many of their analytical uses in litigation. I have co-developed and taught various courses for attorneys including *Data and Empirical Challenges in Pharmaceutical Litigation* and *Antitrust Claims Involving Pharmaceutical Products*.

5.   I have extensive experience specifying, interpreting, and analyzing health insurance data, including premium pricing data, claims processing data, and reimbursement data. I have worked on numerous class actions (in pharmaceutical and other markets) in which key functions included developing databases of discrete transactions from multiple data sources, and both identifying class members and isolating and removing those who are uninjured or subject to specific class exclusions. Pharmaceutical cases in which I have served as an expert over the last four years include *In Re: Zetia (Ezetimibe) Antitrust Litigation; In Re: Novartis and Par (Exforge) Antitrust Litigation; Staley, et al. v. Gilead Sciences, Inc., et al.; In Re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation; In Re: Namenda Indirect Purchaser Antitrust Litigation; In Re: Loestrin Antitrust Litigation; In Re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation; In Re: Ranbaxy Generic Drug Application Antitrust Litigation; In Re: Opana ER Antitrust Litigation;* and *In Re: Niaspan Antitrust Litigation*.[9] A true and correct copy of my *curriculum vitae*, including a listing of my prior testimony, is attached as Exhibit C.

---

[9] A class of Third-Party Payors was recently certified in *Zetia* (*In Re: Zetia (Ezetimibe) Antitrust Litigation*, 2:18-md-2836, U.S. District Court for the Eastern District of Virginia, August 20, 2021) ("Zetia"). Defendants' Rule 23(f) Petition seeking to appeal that decision has been rejected by the Fourth Circuit Court of Appeals (Order, September 30, 2021, U.S. Court of Appeals for the Fourth Circuit, Case No. 21-258). Motions to certify have not yet been scheduled or filed in *Exforge* (*In re Novartis and Par Antitrust Litigation*, Case No. 1:18-cv-04361, U.S. District Court for the Southern District of New York) ("Exforge"). A class certification motion was recently filed in *Gilead* on October 20, 2021 (*Staley, et al. v. Gilead Sciences, Inc., et al.,* 3:19-cv-2573, U.S. District Court for the Northern District of California) ("Gilead"). In *Restasis,* the Court certified a class of both consumers and TPP end-payors, specifically rejecting arguments about ascertainability (*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, U.S. Dist. E.D.N.Y., Case No. 18-MD-2819, May 5, 2020, LEXIS 82725) ("Restasis"). In *Namenda*, the Court also recently certified a class of TPPs (*In re Namenda Indirect Purchaser Antitrust Litig.*, No.

4

HIGHLY CONFIDENTIAL

6.    OnPoint is being compensated for my services in this matter at my standard hourly

billing rate of $550 per hour. I have been supported in my work by OnPoint's staff whose hourly

billing rates range from $125 to $475, depending upon the individual's experience, training, and

areas of expertise. No part of the compensation due to or received by OnPoint is contingent upon

the outcome of this matter.

### B.  Materials Relied Upon

7.    In the course of my analysis, I have reviewed numerous materials including: 1) data

produced by the Retail Pharmacies[10] along with the deposition testimony of witnesses designated

to testify on their behalf; 2) data produced by Named Plaintiffs MSP Recovery and MADA, and

deposition testimony by witnesses designated to testify on their behalf, as well as testimony from

EmblemHealth and SummaCare which have assigned their claims to MSP Recovery and

deposition testimony or declarations on behalf of non-parties including Anthem, MADA's third

party administrator, and Humana; 3) data obtained from IQVIA, a leading publisher of

pharmaceutical data in the United States; 4) the Telecommunications Standards published by the

National Council for Prescription Drug Programs ("NCPDP"); 5) publicly available Declarations

submitted by some of the country's largest Pharmacy Benefit Managers ("PBMs") in other

---

1:15-cv-6549, 2021 U.S. Dist. LEXIS 26566, S.D.N.Y. Feb. 11, 2021) ("Namenda"). In *Loestrin* the Court
concluded that the proposed class of Third-Party Payers was ascertainable and certified the class (*In re Loestrin24
FE Antitrust Litig.*, 410 F. Supp. 3d 352, 400, D.R.I. 2019) ("Loestrin"). In *Niaspan*, class certification was denied
on August 17, 2021; a petition seeking leave to appeal under Federal Rule of Civil Procedure 23(f) and Federal Rule
of Appellate Procedure 5 was filed with the Third Circuit on August 31, 2021. (*In re Niaspan Antitrust Litig.*, Case
Nos. 13-md-2460 (E.D. Pa.) and 21-8042 (Third Circuit)). The petition was granted on October 7, 2021 (Order
granting leave to appeal, October 7, 2021, U.S. Court of Appeals for the Third Circuit, Case No. 21-8042 (now
docketed as pending Case No. 21-2895)).

[10] I understand nine Retail Pharmacy Defendants were originally named in all Master Complaints and produced data
during discovery, but that certain Retail Pharmacy Defendants were no longer included in the most recent Third
Amended Master Economic Loss Class Complaint (ECF 1708) and Third Amended Master Medical Monitoring
Class Complaint (ECF 1709).  I nevertheless include discussion of the latter Retail Pharmacy Defendants' data
herein because that data remains supportive and illustrative of my opinions expressed herein.

HIGHLY CONFIDENTIAL

pharmaceutical antitrust actions pertaining to end-purchaser data availability.[11] These documents

and data series are supplemented by various publicly available information sources consulted

during my analysis. A listing of the materials I have relied upon is attached hereto as Exhibit D.

## II.  SUMMARY OF OPINIONS

8.   The unique legal and technological infrastructure of the pharmaceutical industry

makes it possible to identify consumer and TPP Class Members using electronic data common to

the Proposed Classes. This conclusion is based upon the more detailed opinions summarized

below and explained in this Declaration.

9.   **Opinion #1. NDCs uniquely identify all prescription drug products and tie them

to their manufacturers throughout the distribution chain**. Every prescription drug product in

the United States must be labeled at its point of origin with a unique 10- or 11-digit code (known

as the National Drug Code, or "NDC") that identifies the labeler, specific product, dosage

strength and packaging. The labeler is the finished dose manufacturer or, if the manufacturer has

sold the product to another entity before packaging, the identity of the repackager/relabeler.

Where the repackager/relabeler has obtained its own NDC for the product, this can be linked

back to the Abbreviated New Drug Application ("ANDA") approval obtained by the Finished

Dose Manufacturer from the FDA. The NDC is universally used to identify the product at each

step in the distribution process, including in the final sale to consumers. In this case, the list of

428 NDCs representing the challenged VCD products can be matched to data from Wholesalers,

---

[11] Declaration of Steven Schaper (Caremark) (Declaration Filed Publicly in *Zetia,* Dkt. No. 939-5), March 18, 2020 ("Caremark Zetia Decl."); Declaration of Jon Stocker (Prime Therapeutics) (Declaration filed publicly in *Zetia*, Dkt. No. 730-21) (Declaration Filed Publicly in *Restasis*, Dkt. 396-4, at pp. 599-602), March 13, 2019 ("Prime Restasis Decl."); Declaration of Kent Rogers (OptumRx), (Declaration filed publicly in *Zetia*, Dkt. No. 730-20) (Declaration Filed Publicly in *Restasis*, Dkt. No. 396-4, at pp. 593-97), April 4, 2019 ("Optum Restasis Decl."); Declaration of James Calandriello (Express Scripts), (Declaration filed publicly in *Zetia*, Dkt. No. 730-19) (Declaration filed publicly in *Restasis*, Dkt. No. 396-4, at pp. 587-91), April 9, 2019 ("Express Scripts Restasis Decl.").

HIGHLY CONFIDENTIAL

Retail Pharmacies, PBMs, and TPPs to correctly identify class transactions and trace the source of the product. This characteristic distinguishes prescription drugs from almost every other consumer product (e.g., car parts, food products, appliances, electronics) where manufacturers assign their own product numbers and labels which may lack any consistency across the industry.

10. **Opinion #2. Modern-day prescription drug dispensing instantaneously adjudicates claims and creates detailed electronic records for multiple participants.** Law, regulation, and essential industry operations all require at the time of dispensing that a detailed electronic record be created which, among other things, identifies consumers and health plans providing coverage. Multiple parties exchange, record, and maintain the transaction-specific data for virtually all insured prescriptions dispensed in this country, including the identity of both the patient and their health plan and the exact amounts paid by each. That data is highly standardized and must, under regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), conform at the time of its exchange to a data protocol developed by the NCPDP. Pharmacies also generate and maintain equivalent records of uninsured transaction, and provide records of prescriptions filled for their individual customers including those who have no insurance.

11. **Opinion #3. Legislation governing the drug supply chain has further formalized practices that enable product tracing**. The Drug Supply Chain Security Act ("DSCSA") includes provisions for electronically recording and tracing the transfer of prescription drug products from manufacturers to wholesalers or direct purchasers and from wholesalers to pharmacies. This information is yet another way that product sold to an end purchaser can be traced back to its point of origin.

7

HIGHLY CONFIDENTIAL

12. **Opinion #4. Data already produced in this case confirm that Proposed Class Members can be identified.** Detailed transactional records produced by both Named Plaintiffs and Retail Pharmacies demonstrate the adequacy of the electronic data to identify TPP and consumer Class Members. Equivalent data could if necessary be obtained from the major PBMs who are highly concentrated, from additional non-defendant pharmacies, and from TPPs themselves. In addition, comprehensive data obtained from IQVIA which collects its data from PBMs, pharmacies, and technology switch operators, identifies by name thousands of TPPs that paid for these purchases and reports their pharmacy reimbursements monthly in each state for each NDC.

13. **Opinion #5**. **Class exclusions can readily be applied.** The stored electronic data described above is sufficient programmatically to implement the Proposed Class exclusions. The typical exclusions—present in virtually all class actions—present no problems and are known to Defendants. These exclusions include the corporate Defendants, their personnel and affiliates, counsel of record, the Court, its employees and their immediate family members. Persons who file a timely request to opt out of the Proposed Classes would be identified in the court record and could also be programmatically excluded. Federal and state government entity TPPs are identifiable in claims data and include a well-recognized set of programs. Pharmacies are already legally required to differentiate these federal and state payors to assure that their enrollees do not receive benefits under loyalty programs or coupons that are prohibited under anti-kickback laws. Federal and state government entities are also specifically targeted in PBM marketing as a result of their unique needs for regulatory compliance. PBMs are also excluded; they are not identified as purchasers in the claims data because they are recognized to act only as intermediaries for their TPP clients and not as end-purchasers, so no steps are necessary to exclude them.

HIGHLY CONFIDENTIAL

14. **Opinion #6. There are numerous members of the Proposed Classes.** Data made available in this case already identifies millions of consumers who purchased the challenged VCDs and more than 3,000 TPPs who paid in whole or in part for them.

## III.  OPINION #1. THE NDC FOLLOWS THE DRUG PRODUCT THROUGHOUT ITS LIFE

15. Drug dispensing data are — as required by law — highly standardized. One of the key elements to this system of standardization is the use of a 10- or 11-digit, 3-segment code that uniquely identifies each drug product.[12] This sequence of digits, known as the National Drug Code ("NDC"), embeds details about the specific product including the identity of the manufacturer (or labeler), the dosage form (e.g., pill, capsule, liquid), the dosage strength (e.g., milligrams per pill), and packaging (e.g., blister pack with count).[13] Where a specific branded drug has generic equivalents, each of those generic equivalents has its own NDC. In the United States, the NDC is universally used by regulators, manufacturers, wholesalers, pharmacies, PBMs and TPPs to communicate with each other about exactly what drug product is being sold or has been dispensed.[14] Formularies used by TPPs to establish which drugs will be reimbursed and at what co-pay level routinely prefer generic drugs over their branded equivalents and require a small cost contribution from the consumer. The NDC, which is used to make this

---

[12] United States Food and Drug Administration, "National Drug Code Directory," accessed November 4, 2021, at https://www.fda.gov/Drugs/InformationOnDrugs/ucm142438 htm; United States Food and Drug Administration, "National Drug Code Database Background Information," accessed November 4, 2021, at https://www.fda.gov/drugs/development-approval-process-drugs/national-drug-code-database-background-information.

[13] United States Food and Drug Administration, "National Drug Code Directory," accessed November 4, 2021, at https://www.fda.gov/Drugs/InformationOnDrugs/ucm142438 htm; United States Food and Drug Administration, "National Drug Code Database Background Information," accessed November 4, 2021, at https://www.fda.gov/drugs/development-approval-process-drugs/national-drug-code-database-background-information.

[14] There are rare plans that use an equivalent identifier known as the GPI 14 instead.

HIGHLY CONFIDENTIAL

distinction, is an organizing principle in the various data sources I discuss throughout this Declaration.

## IV.  OPINION #2. INDUSTRY PRACTICE AND LEGAL MANDATES RESULT IN DATA THAT IDENTIFY BOTH TPP AND CONSUMER PAYORS

16. One of the defining characteristics of the U.S. pharmaceutical industry is the completeness, redundancy, and detail of its contemporaneously generated transaction data kept and maintained by all parties in the drug supply chain. There is perhaps no other consumer good where so much information is recorded by so many different participants in connection with an individual sales transaction. These robust data are largely uniform (for reasons I discuss below) and make it possible to identify Proposed Class members and apply exclusions.

### A.  Prescription Dispensing Leaves a Clear Electronic Trail

17. There are at least three institutional sources of electronic, transaction-specific data that identify the payors associated with a prescription drug purchase: 1) PBMs that adjudicate an insurance or discount claim connected to the purchase; 2) TPPs that provide prescription drug coverage to the consumer (regardless of whether the claim was actually paid by the TPP); and 3) pharmacies that dispense the drug product. In the case of a purchase by an insured consumer, these data sources operate almost simultaneously, and they effectively replicate the key data elements. In addition, commercial aggregators of this data such as IQVIA assemble the individualized transaction information and report statistics on the number and dollar amount of purchases in which named health plans are involved for each separate drug product. There are multiple reasons for the close tracking of prescription drug sales in the United States; chief among them are public health and safety. It is necessary to link adverse events to specific drugs,

HIGHLY CONFIDENTIAL

to be able to recall drugs where necessary, to avoid dangerous drug interactions, and to identify and curtail over-prescribing or excessive consumption.

18. Every time an insured consumer fills a prescription at a pharmacy (whether mail order or brick and mortar), a process known as electronic "claims adjudication" takes place, typically in a matter of seconds.[15] If it were not for this process, it would be impossible to split the cost of the drug between the consumer and insurer at the time of purchase. Instead, the consumer would end up paying the entire price and then billing the insurer to recover a portion of the cost. Claims adjudication performs four basic functions relevant to this case. First, it verifies eligibility, checking to determine whether the consumer is in fact covered by the plan.[16] This would be impossible if the PBM data system did not uniquely identify individuals by member ID linked to enrollment data including name, date of birth and address. Second, it determines the applicable benefit structure, including whether (and at what level) the dispensed drug is covered by the plan's formulary, and what co-payment or co-insurance should be applied. This would be impossible if each plan's benefit structure and formulary were not stored electronically and automatically linked. Third, it calculates the division of the purchase price between the consumer and the TPP, including the consideration of any unsatisfied deductibles or caps on out-of-pocket expenditures or benefits. This would be impossible if the system did not store and link data on the consumer's prior claims activity. Finally, the adjudication process commits the TPP to pay the pharmacy its share of the drug price together with an agreed upon

---

[15] First Coast Health Solutions, "Pharmacy Claims Processing," accessed November 4, 2021 at https://firstcoasthealthsolutions.com/pharmacy-claims-processing/.
[16] Garis, Robert I., et al., "Examining the Value of Pharmacy Benefit Management Companies," *American Journal of Health-System Pharmacy* 61, no. 1 (2004), accessed October 25, 2021 at https://www.medscape.com/viewarticle/466688_4.

HIGHLY CONFIDENTIAL

dispensing fee. Aggregated billing and prompt payment to the pharmacy would be impossible without this underlying accounting detail.

19. All of this happens electronically within seconds, but that was not always the case. In the 1970s, pharmacies, insurers and prescribers all recognized the critical importance of arriving at a single, standardized, nationwide system that would result in migration away from paper prescriptions and claims.[17] The multi-disciplinary NCPDP was charged with designing such a system that would rely on "Telecommunications."[18] The objective was the development of an electronic messaging protocol and precise data architecture that would be shared by the entire industry, referred to generally as an industry standard.[19] The first set of such standards was issued in 1988 and there have since been several comprehensive updates ("versions") as well as a continuous process of minor enhancements and additions not relevant to this case.[20] Use of the NCPDP system became mandatory under HIPAA regulations in 2003.[21] Version D.0 has been in effect since 2010, throughout the entire Proposed Class Period.[22]

20. Requiring each pharmacy to be able to communicate directly with each insurer (and vice versa) would have been technologically infeasible and cost prohibitive. Instead, the system relies heavily on a group of intermediaries. Chief among them are the PBMs who do the technological heavy lifting. TPPs hire these PBMs to perform a wide array of services for them, including claims adjudication, plan design, member enrollment, pharmacy pricing, and

---

[17] NCPDP, "*Pharmacy: A Prescription for Improving the Healthcare System*," October 2009, at p.8.
[18] NCPDP, "*Pharmacy: A Prescription for Improving the Healthcare System*," October 2009, at p. 5.
[19] NCPDP, "*Pharmacy: A Prescription for Improving the Healthcare System*," October 2009, at p. 12.
[20] NCPDP, "*Pharmacy: A Prescription for Improving the Healthcare System*," October 2009, at pp. 1 & 12-13.
[21] 45 CFR §162 (2003).
[22] NCPDP, *Telecommunication Standard: Implementation Guide Version D.0*, August 2010 (ANSI approved in August 2007). NCPDP has published updates of the Telecommunication Standard since Version D.0, but D.0 is still the version mandated by HIPAA (Centers for Medicare & Medicaid Services (CMS), "Adopted Standards and Operating Rules," accessed September 15, 2021 at https://www.cms.gov/Regulations-and-Guidance/Administrative-Simplification/HIPAA-ACA/AdoptedStandardsandOperatingRules html).

HIGHLY CONFIDENTIAL

manufacturer rebate negotiations. In claims adjudication, the PBM acts as the TPP's agent in

interacting with the pharmacy, and electronically reports the results of these activities back to the

TPP who is liable for the claims payment. Figure 1 illustrates this process.

*Figure 1. Claims Adjudication Data Exchange Process*



21. Claims adjudication data is maintained by PBMs for long periods of time. Medicare

and Medicaid claims data are legally required to be retained for at least ten years,[23] and there are

many other practical reasons why PBMs preserve this data. These include: (1) the high

commercial value of such data, which can be analyzed, packaged and sold in various forms; (2)

the low cost of storing data in the modern era; (3) audit capacity; (4) the ability to answer patient

drug history questions; (5) proof of regulatory compliance; and (6) proof of compliance with

contractual requirements. As the Court said in *In Re Loestrin 24 FE Antitrust Litigation,* "the

economic incentives for PBMs, pharmacies, and other relevant actors are aligned with retaining

---

[23] CFR § 423.505(d). *See also*, Walgreens Health Initiatives, "Pharmacy Manual," January 2011, accessed October 4, 2021 at
https://web.archive.org/web/20180729134041/http://www.walgreenshealth.com/pdf/forms/Revised_Pharmacy_Manual_2010_Revised_04072010.pdf, at p. 6; CVS/Caremark Part D Services, "Medicare Part D Compliance / Fraud, Waste & Abuse," 2009, accessed October 4, 2021 at
https://www.caremark.com/portal/asset/MedicarePartD.pdf, at p. 30 (setting a 10-year minimum for record retention).

HIGHLY CONFIDENTIAL

this data in some form for as long as possible" and "[d]ata retention allows these entities to prove that they have satisfied their contractual obligations and complied with regulatory requirements."[24] Many sponsors of Medicare Part D plans also offer other Commercial plans; it would make no sense for a PBM to destroy claims data from Commercial plans while preserving claims data from Medicare Part D Plans, all for the same client. I have seen no evidence that this happens.

22. Historical claims data can be used in many ways. To more generally understand the commercial value of such data to PBMs, one may simply look to Optum's website promoting its "OptumInsight" business.[25] The "Claims Data" page, an excerpt of which is shown below in Figure 2, says Optum "owns one of the largest and most complete data assets in the nation" with the data going back almost thirty years:[26]

*Figure 2. Screenshot of Claims Data Page on Optum Website*

FEATURES AND BENEFITS

Gain insight into the full care experience

Claims data is the most ubiquitous form of health care data. It allows us to see the full spectrum of care received. It is an excellent source for chronicling the costs of care.

Expansive data enhances your strategies

Optum claims data includes real-world health care experiences from over 216 million unique individuals since 1993.

---

[24] *In re Loestrin24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 400 (D.R.I. 2019).
[25] Optum, "From Data to Action," 2018, accessed November 3, 2021 at https://www.optum.com/content/dam/optum3/optum/en/resources/articles-blog-posts/Optum_Data_vs_Analytics_vs_Insights_vs_Actions.pdf; UnitedHealth Group, "Optum," 2021, accessed October 4, 2021 at https://www.unitedhealthgroup.com/who-we-are/businesses/optum html.
[26] Optum, "Claims Data," accessed November 3, 2021 at https://www.optum.com/business/solutions/government/federal/data-analytics-federal/claims-data html.

HIGHLY CONFIDENTIAL

23. Similarly, CVS Caremark markets its analytics business, touting its "extensive clinical databases — one of the broadest *plan member health databases* in the industry — to identify opportunities to help reduce costs for clients and improve outcomes for their members. *As a pharmacy benefit manager (PBM), CVS Caremark has access to millions of pharmacy claims,* which allow a real-time look at the pharmaceutical market, enabling us to identify trends and patterns that can affect payors' benefit spend."[27]

### B. The Relevant Data is Highly Standardized and Includes Information That Identifies Proposed Class Members

24. Declarations from major PBMs are publicly available in the dockets of a number of pharmaceutical antitrust end-payor indirect purchaser cases and specifically affirm that PBMs use the NCPDP industry standard format for data collection and presentation.[28] As noted above, since 2003, adherence to NCPDP procedures (including data fields and formatting) has been required under federal law.[29] The entire retail pharmaceutical sector thus employs the same basic data fields and messaging system.

25. Some of the key fields electronically exchanged and stored in this process provide information identifying Proposed Class members, as summarized in Figure 3:

---

[27] CVS Health Payor Solutions, "Using Analytics to Identify Targeted Solutions," accessed November 4, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/cost-management/using-analytics-to-identify-targeted-solutions (emphasis added).

[28] Caremark Zetia Decl., at ¶9; Prime Restasis Decl., at ¶10; Optum Restasis Decl., at ¶8. Express Scripts Restasis Decl., at ¶8.

[29] Federal Register, August 17, 2000 (Volume 65, Number 160), at pp. 50311-50372; NCPDP, "*Pharmacy: A Prescription for Improving the Healthcare System*," October 2009, at p. 14.

HIGHLY CONFIDENTIAL

*Figure 3. Selected NCPDP Data Fields and Codes*



26. These data elements – each of which has its own identifying field number where the information must be electronically entered – include the basic elements to identify consumer and TPP Class Members and to link individual transactions to them. If the required information is missing or incorrectly entered, an error message is automatically generated, thus ensuring the accuracy and completeness of the electronic message. Although the system sounds complex, the information in fields relevant to this case is intuitive, uncomplicated, and standard.

27. The resulting data set, referred to as claims data, includes core NCPDP fields as illustrated in Figure 3, but also contains additional fields *about the payor* that appear automatically when the incoming pharmacy message is instantly linked to information collected and maintained by PBMs in setting up their accounts and tracking member enrollment. It is this claims data that PBMs then use as the basis for billing the correct party. The descriptions of client/carrier, account, and group appearing in the claims data are shortened versions of actual names in client data tables maintained by the PBM. Shortened names are routinely used in

16

database development to allow for efficient processing, and more detailed descriptors are saved for separate tables that are linked but do not normally have to be called in the daily data operations. In order for billing to take place, this data must minimally contain full names, addresses and email contacts, as well as the federal taxpayer ID number and banking coordinates associated with each plan.

28. The vast majority of TPPs contract directly with PBMs to administer their prescription drug programs. Given the technological barriers to entry, it is unsurprising that claims adjudication has largely (although not exclusively) fallen to the largest PBMs. PBMs process and keep a record of the claim even when the entire cost is paid by the member due to deductibles or limits on total coverage. PBMs also process claims involving retailer and manufacturer discount programs.

29. Table 4 shows the share of total U.S. prescriptions processed by each of the six largest PBMs in 2015-2018, inclusive of entities they have subsequently acquired or with whom they have merged.[30] Each PBM's percentage includes prescriptions managed by small PBMs for which the large PBM acts as an aggregator and performs the claims adjudication function.[31] As Table 4 demonstrates, the top six PBMs processed between 89% and 96% of U.S. prescription volume annually between 2015 and 2018, with that share rising over time.[32]

---

[30] Centralization and uniformity of PBM data makes it a natural resource to identify TPPs, but certainly not the only one. IRS Form 5500 filed by health and welfare plans identifies many thousands of plan sponsors yearly. Claims administrators in pharma end-payor cases have over time compiled their own lists of TPPs in operation each year.

[31] "The smaller PBMs often do not have the scale to negotiate favorable formulary rebates and may lack a claims processing system. In some situations, a large PBM acts as an aggregator for these smaller entities. The big player gets to submit a larger consolidated rebate invoice, and the smaller player gets access to better pricing and a national claims system" (Drug Channels Institute, *The 2018 Economic Report on U.S. Pharmacies and Pharmacy Benefit Managers*, by Adam J. Fein, February 2018, at p. 112).

[32] Fein, Adam J., "Why the Walgreens/Prime Deal Could Transform the PBM Industry," *Drug Channels Institute*, September 7, 2016, accessed November 4, 2021 at https://www.drugchannels.net/2016/09/why-walgreensprime-deal-could-transform.html; Fein, Adam J., "The CVS-Aetna Deal: Five Industry and Drug Channel Implications," *Drug Channels Institute*, December 5, 2017, accessed November 4, 2021 at https://www.drugchannels.net/2017/12/the-cvs-aetna-deal-five-industry-and.html; Fein, Adam J., "Cigna-Express Scripts: Vertical Integration and PBMs' Medical-Pharmacy Future," *Drug Channels Institute*, March 9, 2018,

HIGHLY CONFIDENTIAL

*Table 4. Top Six PBMs' Shares of U.S. Retail Prescriptions Filled, 2015-2018[33]*

| | 2015[34] | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| 1.  CVS Caremark + Aetna (merged 2018[35]) | 23% | 29% | 29% | 30% |
| 2.  Express Scripts + Cigna (merged 2018) | 24% | 24% | 24% | 23% |
| 3.  OptumRx (owned by UnitedHealth) | 20% | 22% | 22% | 23% |
| 4.  Humana | 9% | 7% | 7% | 7% |
| 5.  MedImpact | 6% | 5% | 6% | 6% |
| 6.  Prime Therapeutics (owned by Blue Cross Blue Shield[36]) | 7% | 6% | 6% | 6% |
| 7.  All Other PBMs + Cash Pay | 11% | 8% | 4% | 4% |
| **Share of Top 6 PBMs** | **89%** | **92%** | **96%** | **96%** |

accessed November 4, 2021 at https://www.drugchannels net/2018/03/cigna-express-scripts-vertical.html; Fein, Adam J., "CVS, Express Scripts, and the Evolution of the PBM Business Model," *Drug Channels Institute*, May 29, 2019, accessed November 4, 2021 at https://www.drugchannels.net/2019/05/cvs-express-scripts-and-evolution-of.html.

[33] Note that the annual totals do not sum to 100% and subtotals for the seven largest PBMs do not total precisely equal to the sum of their individual numbers in Table 4 due to rounding. Fein, Adam J., "Why the Walgreens/Prime Deal Could Transform the PBM Industry," *Drug Channels Institute*, September 7, 2016, accessed November 4, 2021 at https://www.drugchannels.net/2016/09/why-walgreensprime-deal-could-transform.html; Fein, Adam J., "The CVS-Aetna Deal: Five Industry and Drug Channel Implications," *Drug Channels Institute*, December 5, 2017, accessed November 4, 2021 at https://www.drugchannels net/2017/12/the-cvs-aetna-deal-five-industry-and.html; Fein, Adam J., "Cigna-Express Scripts: Vertical Integration and PBMs' Medical-Pharmacy Future," *Drug Channels Institute*, March 9, 2018, accessed November 4, 2021 at https://www.drugchannels net/2018/03/cigna-express-scripts-vertical.html; Fein, Adam J., "CVS, Express Scripts, and the Evolution of the PBM Business Model," *Drug Channels Institute*, May 29, 2019, accessed January 28, 2021 at https://www.drugchannels.net/2019/05/cvs-express-scripts-and-evolution-of html.

[34] The 2015 data source is different from the 2016 and 2017 data sources in two ways: (1) it represents each PBM's share of *insured* prescriptions (excluding *Cash* transactions) and (2) it is not converted from straight prescriptions to "equivalent prescriptions." (An "equivalent prescription" is a 30-day prescription, so this adjustment converts all 90-day prescriptions to three 30-day prescriptions.) Because of these differences, the percentages for 2015 were adjusted to make them more comparable to the percentages for 2016 and 2017. Based on information from IMS (now known as IQVIA), the percentage of retail prescriptions that were *Cash* transactions was determined for 2015 (8.1% - see Table 4). Each PBM's share was lowered accordingly to account for the inclusion of cash purchases using the following steps: (1) The aggregate PBM share of total retail prescriptions was computed by subtracting out the cash prescriptions (100% – 8.1% = 91.9%). (2) Each PBM's share of total retail prescriptions was computed by multiplying its share of the PBM market by the PBM share of total retail prescriptions ([PBM share of PBM market] × 91.9% = [PBM share of total retail prescriptions]). (It was not possible to convert straight prescriptions to "equivalent prescriptions" without more granular data. However, the fact that the shares for 2015 and 2016 are very similar suggests that this adjustment would not make much difference in the shares of the PBMs.) Note: Subsequent updates in the IQVIA data on the cash percentage of retail prescriptions have caused the top 7 PBMs' share of retail prescriptions in 2015 to be slightly lower than previously reported.

[35] LaVito, Angelica, "CVS creates new health-care giant as \$69 billion merger with Aetna officially closes," *CNBC*, November 28, 2018, accessed October 8, 2021 at https://www.cnbc.com/2018/11/28/cvs-creates-new-health-care-giant-as-69-billion-aetna-merger-closes.html.

[36] Prime Therapeutics, "Media resources," accessed November 4, 2021 at https://www.primetherapeutics.com/news/media-resources/.

18

HIGHLY CONFIDENTIAL

30. The numbers in the table above reflect the fact that PBMs have consolidated across time through mergers and acquisitions. A number of those operating prior to 2015 have merged with larger PBMs, and their data now belongs to the surviving entities. PBM consolidation thus requires data collection from fewer entities. Although PBMs may not always re-format older data for entities they have acquired, industry standardization of data fields makes this a comparatively easy task.

31. Each time a prescription is filled, the pharmacy maintains a parallel record of the transaction. For the small share of transactions paid for in cash with no TPP or PBM involvement, this "pharmacy log" constitutes an alternative data source. Like PBMs, the pharmacy industry is also significantly consolidated; in 2018 the fifteen largest pharmacies accounted for 76.1% of all prescription drug revenue as shown in Table 5.[37] The top nine Retail Pharmacies collectively accounted for approximately 72% of the nation's prescription drug dispensing revenue and their data has already largely been produced.[38] Although these revenue figures include specialty drugs and both mail order and storefront sales, they can be used as a proxy for the share of Proposed Class transactions.

---

[37] See Table 5: 24.2+17.5+11+6.1+4.9+3.2+2.6+1.5+1.2+1.1+0.6+0.6+0.5+0.5+0.4= 76.1
[38] See Table 5: 24.2+17.5+11+6.1+4.9+3.2+2.6+1.5+1.2=72.2.

HIGHLY CONFIDENTIAL

**Table 5. Pharmacy Shares of U.S. Prescription Drug Revenue[39]**

|  | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| 1.  CVS Health Corporation / Target Corporation | 24.0% | 23.4% | 23.8% | 24.2% |
| 2.  Walgreens Boots Alliance / Prime Therapeutics | 16.0% | 15.0% | 15.6% | 17.5% |
| 3.  Cigna / Express Scripts | 11.7% | 11.3% | 11.6% | 11% |
| 4.  UnitedHealth Group (OptumRx) | 4.3% | 4.2% | 5.0% | 6.1% |
| 5.  Walmart Stores, Inc. | 5.5% | 5.0% | 5.0% | 4.9% |
| 6.  The Kroger Company | 2.6% | 2.6% | 3.2% | 3.2% |
| 7.  Rite Aid Corporation | 5.3% | 4.6% | 3.8% | 2.6% |
| 8.  Humana Pharmacy Solutions | 1.2% | 1.2% | 1.5% | 1.5% |
| 9.  Albertsons Companies | 1.5% | 1.3% | 1.2% | 1.2% |
| 10.  Diplomat Pharmacy | 0.9% | 1.1% | 1.1% | 1.1% |
| 11.  Costco Wholesale Corporation | 0.7% | 0.6% | 0.6% | 0.6% |
| 12.  PharMerica |  | 0.5% | 0.6% | 0.6% |
| 13.  Publix |  |  | 0.5% | 0.5% |
| 14.  Ahold Delhaize | 0.6% | 0.5% | 0.5% | 0.5% |
| 15.  H-E-B |  |  |  | 0.4% |
| **Top Pharmacies** | **74.3%** | **71.6%** | **74.0%** | **76.1%** |

32. Combining Retail Pharmacy data with data from the largest PBMs could be expected to cover up to 98% of Class purchases as illustrated in Figure 6.

---

[39] Fein, Adam J., "The Top 15 U.S. Pharmacies of 2018: M&A Reshapes the Market," *Drug Channels Institute*, February 26, 2019, accessed October 12, 2021 at https://www.drugchannels.net/2019/02/the-top-15-us-pharmacies-of-2018-m html; Fein, Adam J., "The Top 15 U.S. Pharmacies of 2017: Market Shares and Key Developments For The Biggest Companies," *Drug Channels Institute*, February 21, 2018, accessed October 12, 2021 at https://www.drugchannels.net/2018/02/the-top-15-us-pharmacies-of-2017-market.html; Fein, Adam J., "The Top 15 U.S. Pharmacies of 2016," *Drug Channels Institute*, February 2, 2017, accessed October 13, 2021 at https://www.drugchannels.net/2017/02/the-top-15-us-pharmacies-of-2016 html; Fein, Adam J., "The Top 15 Pharmacies of 2015," *Drug Channels Institute*, January 28, 2016, accessed October 13, 2021 at https://www.drugchannels.net/2016/01/the-top-15-pharmacies-of-2015 html.

HIGHLY CONFIDENTIAL



*Figure 6. Overlap of PBM and Pharmacy Data*

## V.  OPINION #3: DATA COLLECTED AND MAINTAINED UNDER THE DRUG SUPPLY CHAIN SECURITY ACT ALLOWS DRUG PURCHASES TO BE TRACED TO DEFENDANTS

33. The DSCSA was enacted in 2013, and requires prescription drug manufacturers, wholesalers, repackagers, and pharmacies to "[e]xchange information about a drug and who handled it each time it is sold in the U.S. market."[40] The DSCSA was implemented as one part of the Drug Quality and Security Act (DQSA), aimed at addressing vulnerabilities in the drug supply chain, and facilitating tracing of prescription drugs in finished dosage form through the supply chain.[41] It is worth noting that the DSCSA was implemented after a series of deadly incidents regarding drugs, including the tragic deaths of 81 people as a result of contaminated heparin API sourced from a Chinese drug manufacturer.[42]

---

[40] FDA, *Drug Supply Chain Security Act (Title II of the Drug Quality and Security Act) Overview of Product Tracing Requirements*, September 2015, accessed November 4, 2020 at https://www.fda.gov/media/93779/download, at pp. 3, 5 and 8.

[41] U.S. Department of Health and Human Services, Office of Inspector General, *Drug Supply Chain Security: Dispensers Received Most Tracing Information*, OEI-05-16-00550, March 2018, accessed November 4, 2020 at https://oig hhs.gov/oei/reports/oei-05-16-00550.pdf, at p. 2.

[42] Congressional hearing stating that the goal of the ultimate DSCSA was to create "a system by which we will be able to track drugs from the time they leave the manufacturing facility to the time they reach patients in the pharmacy, hospital, nursing home, or doctor's office" (U.S. Government Printing Office, House Hearing titled "The Heparin Disaster: Chinese Counterfeits and American Failures," April 29, 2008, accessed November 4, 2020 at https://www.govinfo.gov/content/pkg/CHRG-110hhrg53183/html/CHRG-110hhrg53183 htm).

HIGHLY CONFIDENTIAL

34. While the DSCSA was enacted in 2013 and is still not fully operative, significant participants in the pharmaceutical supply chain (such as the wholesalers and retail pharmacies who are defendants in this case) maintained similar information as a part of their ordinary course of business prior to the enactment of the DSCSA. ████████████████████████ ███████████████████████

35. The DSCSA generally requires participants in the drug supply chain (starting from the manufacturer, through the wholesaler, to purchases by the retail pharmacy) to retain, for every transaction, the following information: product name; NDC; container size; number of containers; lot number; date of transaction; date of shipment; and name and address of the entity transferring ownership and taking ownership of the product. The DSCSA requires that this data be kept in a manner to allow these authorized participants to respond within 48 hours to requests from appropriate federal or state officials — in the event of a recall or for the purpose of investigating suspect product or an illegitimate product — for the transaction history of the pharmaceutical product.[44]

## VI.  OPINION #4: DATA ALREADY PRODUCED IN THIS CASE ILLUSTRATE THE FEASIBILITY OF IDENTIFYING CLASS MEMBERS

### A.  *Named Plaintiff Data*

36. As previously described, PBMs, TPPs and Pharmacies all generate and/or receive electronic records of prescription drug transactions in the regular course of their business. TPPs maintain or have access through their PBMs to comprehensive data showing their payments and

---

[43] ████████████████████████████████████████████████ ████████████████████████████████████████

[44] FDA, "Title II of the Drug Quality and Security Act," December 16, 2014, accessed September 10, 2021 at https://www.fda.gov/drugs/drug-supply-chain-security-act-dscsa/title-ii-drug-quality-and-security-act.

HIGHLY CONFIDENTIAL

their members' payments for VCD products. This opinion is confirmed by the data and
deposition testimony of Named Plaintiffs in this case.

### 1. Named Plaintiff, MADA

37. 

---

[45] Anthem Inc. Form 10-Q for the quarterly period ended September 30, 2020, filed October 28, 2020, at p. 8.
[46] Deposition of Thomas Brown, May 28, 2021, at 35:21-36:10, 45:9-22; Deposition of Patricia Cobb, October 21, 2021, at 24:1-10, 48:14-49:20, 87:23-88:8.
[47] Deposition of Thomas Brown, May 28, 2021, at 52:5-12, 53:13-16, 63:2-6, 147:13-17; Deposition of Patricia Cobb, October 21, 2021, at 87:23-88:8.
[48] Deposition of Patricia Cobb, October 21, 2021, at 218:8-219:6.
[49] Deposition of Thomas Brown, May 28, 2021, at 161:4-162:7; ██████████████████████
████████████████████████████████████."
[50] ██████████████████████████████████."

23

HIGHLY CONFIDENTIAL

████████████████████████████████████████████ ██ ██████

██████████████████████████████████████████████████

████████████████████████ ████████ ██████████████████

██████ █

### 2.   *Named Plaintiff, MSP Recovery*

████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

███████████████████████████ ████ ██████████

████████████████████████████████████████████

████████████████████████████████ █

██████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

[51] Deposition of Thomas Brown, May 28, 2021, at 63:7-14.
[52] Deposition of Patricia Cobb, October 21, 2021, at 87:23-88:8, 218:8-219:6.
[53] Deposition of Thomas Brown, May 28, 2021, at 55:3-22, 57:3-10, 256:3-20.
[54] Deposition of Christopher Miranda, April 29, 2021, at 23:15-27:22
[55] Deposition of Christopher Miranda, April 29, 2021, at 33:21-34:3.

HIGHLY CONFIDENTIAL

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

### a. *Assignor, EmblemHealth*

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[56] Deposition of Christopher Miranda, April 29, 2021, at 34:16-25, 56:5-65:11; [REDACTED] .xlsx."

[57] Deposition of Christopher Miranda, April 29, 2021, at 101:11-18.

[58] Deposition of Christopher Miranda, April 29, 2021, at 38:20-39:8.

[59] Deposition of Christopher Miranda, April 29, 2021, at 25:17-26:17; Deposition of Margaret Finn, July 30, 2021, at 217:6-10, 231:5-233:22, 240:9-241:9.

[60] Deposition of Margaret Finn, July 30, 2021, at 218:13-19.

[61] Deposition of Christopher Miranda, April 29, 2021, at 26:8-12; MSP Recovery, [REDACTED] .xlsx."

HIGHLY CONFIDENTIAL



**b. *Assignor, SummaCare***

---

[62] Deposition of Christopher Miranda, April 29, 2021, at 55:12-56:20, 58:7-24, 63:22-65:3;

[63] Deposition of Margaret Finn, July 30, 2021, at 153:5-15.

[64] Deposition of Tiffanie Mrakovich, July 22, 2021, at 136:19-24; Deposition of Tiffanie Mrakovich, August 31, 2021, at 13:21-14:11; Deposition of Christopher Miranda, April 29, 2021, at 23:15-25:13.

[65] Deposition of Tiffanie Mrakovich, July 22, 2021, at 136:25-137:9, 173:25-174:5.

[66]

."

[67] Deposition of Christopher Miranda, April 29, 2021, at 55:12-56:20, 58:7-24, 63:22-65:3;

HIGHLY CONFIDENTIAL



**B. Retail Pharmacies' Data**

---

68 Deposition of Tiffanie Mrakovich, July 22, 2021, at 178:7-21.
69 Deposition of Tiffanie Mrakovich, July 22, 2021, at 180:20-23.
70



71 The FDA defines a Class I recall as "a situation in which there is a reasonable probability that the use of or exposure to a violative product will cause serious adverse health consequences or death." See FDA, "Recalls Background and Definitions," accessed November 2, 2021 at https://www.fda.gov/safety/industry-guidance-recalls/recalls-background-and-definitions. The recall of medicines containing valsartan, announced in July 2018, was "the largest Class I FDA recall involving a pharmaceutical drug." See, Bowersox Law Firm, "Valsartan: FDA Announces Recall," accessed November 2, 2021 at http://www.bowersoxlaw.com/dangerous-drugs-valsartan.

HIGHLY CONFIDENTIAL



45

HIGHLY CONFIDENTIAL



76 Deposition of Erin Shaal, Pharm.D. (Albertsons), September 22, 2021, 51:9-23; 57:2-59:9.
77 Deposition of Dick Derks (Walmart), September 27, 2021, 54:9-55:18.
78 Deposition of Brian Strong (Walgreens), September 22, 2021, 26:20-27:15.
79 Deposition of Wendy Woon-Fat (OptumRx), October 7, 2021, 34:14-35:7.
80 Deposition of Steven Taylor (OptumRx), October 7, 2021, 207:21-209:22.
81 See, e.g., Deposition of Steven Taylor (OptumRx), October 7, 2021, 183:5-184:11; Deposition of Owen
McMahon (Rite Aid), September 23, 2021, 73:24-74:1, 84:22-85:8, 163:15-165:2; Deposition of Catherine Stimmel
(Walgreens), September 20, 2021, 163:6-15; Deposition of Stacy Zulueta (Walmart), September 27, 2021, 238:17 -
239:6; Deposition of Dick Derks (Walmart), September 27, 2021, 105:2-23, 104:13-24.
82 Deposition of Ketan Patel (OptumRx), October 7, 2021, 279:9-24.
83 ██████████████████████████████████████ Deposition of Steven Taylor
(OptumRx), October 7, 2021, 200:16-201:23. ████████████ Deposition of Owen McMahon (Rite Aid),
September 23, 2021, 79:21-80:23.

HIGHLY CONFIDENTIAL

49.



HIGHLY CONFIDENTIAL



---

[88] Due to size limitation, some of the data may need to be handled by a statistical transfer program prior to analysis in a given statistical software platform.

[89]

HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL

*Table 7. Summary of Retail Pharmacy Defendant Claims Data*



## VII.  OPINION #5: EXCLUSIONS CAN BE PROGRAMMATICALLY APPLIED USING THE AVAILABLE DATA

53. The data used in processing claims (including data stored with PBMs responsible for claims adjudication and with pharmacies) is sufficient when combined with public records to carry out the Proposed Class exclusions. These include standard exclusions present in virtually all end-payor cases, government entity exclusions, and exclusion of PBMs. Claims are also

HIGHLY CONFIDENTIAL

excluded for consumers who purchased only one product manufactured by Hetero prior to May 1, 2018, and no other VCDs. Because pharmacy, PBM, and TPP data include NDC, transaction date, and the patient's identity, it is possible to identify these claims and individuals.[94]

### A. Standard Exclusions Are Easily Applied and Are Typical of All Indirect Purchaser Class Actions

54. The Proposed Class definition contains standard exclusions common to almost all end payor class actions: 1) Defendants their and affiliated entities and personnel; 2) Defendants' assigns, and successors; 3) all third-party payors who properly execute and file a timely request for exclusion from any Court-approved class, and 4) court personnel and family members. Defendants could provide a list of those in the first two categories, the third will be a matter of record in the docket, and the fourth could be identified by the Court itself if necessary.

### B. Federal and State Government Entities

55. Federal and State government entities are excluded from the Proposed Classes. This is nothing new – class actions routinely exclude such government claims. First, it is important to point out that simply because a health plan covers federal or state employees does not mean that claims arising from injury or overcharges to that health plan belong to the government entity. On the contrary, large swaths of government health coverage are provided by standard commercial insurers who reimbursed generic valsartan-containing drugs, suffered the injury and/or overcharges, and would be entitled to participate in the Proposed Classes. In those cases, the government entity's role was to contribute premiums on behalf of members, just as any other

---

[94] For example, 

HIGHLY CONFIDENTIAL

employer might. In general, the Federal Employees Health Benefits ("FEHB") program, which covers non-military federal workers, is delivered through conventional commercial insurers.[95] Government plans to be excluded from the claims database consist of those where the federal or state government itself is the payor, and thereby suffered the loss sought to be recovered in this case. There are numerous ways to identify such plans, including through PBM data, pharmacy data, government websites and personnel offices, actuarial consulting databases, and data publishers such as IQVIA.

56. Aside from Medicare and Medicaid, the major federally operated government programs are Department of Defense/Tricare (previously known as CHAMPUS), the Department of Veterans Affairs ("VA"), the Indian Health Service ("IHS"), the Children's Health Insurance Program ("CHIP"),[96] and Ryan White ADAP.[97] In 2015, coverage through four of these agencies/programs (Tricare, VA, IHS, and CHIP), along with additional subsidies to Medicaid and Medicare, accounted for roughly 89% of total federal prescription drug expenditures.[98] The

---

[95] Congressional Research Service, *Laws Affecting the Federal Employees Health Benefits (FEHB) Program,* by Kirstin B. Blom and Ada S. Cornell, R42741, July 22, 2015, at pp. 1-2.

[96] CHIP is funded by both the federal and state governments (Medicaid.gov, "Children's Health Insurance Program (CHIP)," accessed October 12, 2021 at https://www.medicaid.gov/chip/index.html).

[97] AIDS Drug Assistance Programs (ADAPs) are a subpart of the national Ryan White HIV/AIDS Program (RWHAP) Part B, originally established under the Ryan White Comprehensive AIDS Resources Emergency (CARE) Act in 1990 (42 U.S.C. §§ 300ff, et seq.; (U.S. Department of Health and Human Services, Health Resources and Services Administration, *AIDS Drug Assistance Program (ADAP) Manual*, 2016, at pp. 3 & 10-13). ADAPs are funded primarily by federal grants and administered by U.S. state and territorial governments. They directly fund the purchase of HIV- and AIDS-related prescription medications for "low-income people living with HIV who have limited or no health coverage from private insurance, Medicaid, or Medicare" (U.S. Department of Health and Human Services, Health Resources and Services Administration, "Part B: AIDs Drug Assistance Program," accessed October 12, 2021 at https://hab.hrsa.gov/about-ryan-white-hivaids-program/part-b-aids-drug-assistance-program). ADAPs are considered the "payer of last resort" for eligible individuals in need of HIV- and AIDS-related prescription medications (National Alliance of State and Territorial AIDS Directors (NASTAD), "2019 National RWHAP Part B and ADAP Monitoring Project Annual Report," 2019, accessed October 12, 2021, at https://publications.partbadap-2019 nastad.org/, at Section 1).

[98] CMS, National Health Expenditures by Type of Service and Source of Funds: Calendar Years 1960 to 2019, 2015, "NHE2019.xlsx"; Olson, Peter, and Louise Sheiner, "The Hutchins Center Explains: Prescription drug spending," *The Brookings Institution*, April 26, 2017, accessed November 5, 2021 at https://www.brookings.edu/blog/up-front/2017/04/26/the-hutchins-center-explains-prescription-drug-spending/#:~:text=In; CMS, "CMS Releases 2015 National Health Expenditures," press release, December 2, 2016, accessed November 5, 2021 at https://www.cms.gov/newsroom/press-releases/cms-releases-2015-national-health-expenditures; United States

HIGHLY CONFIDENTIAL

remainder includes, for example, drugs dispensed at hospitals paid for by programs such as the

340B Drug Pricing Program and drugs purchased by the Federal Bureau of Prisons for federal

inmates, neither of which are relevant to this case.[99]

57. Aside from the VA, which also operates its own PBM,[100] these federal programs use

the services of major PBMs just as commercial plans do.[101] PBMs clearly know the identities of

their payor clients; indeed, PBMs participate in bidding processes to earn those contracts with

government entities.[102] In the course of requesting data from PBMs, plans for which a federal or

state government entity is the payor could be specifically flagged and/or removed.

58. PBMs actively promote their ability to tailor and manage prescription drug programs

for governmental plan sponsors to promote regulatory compliance.[103] Websites for each major

---

Government Accountability Office, *BUREAU OF PRISONS - Better Planning and Evaluation Needed to Understand and Control Rising Inmate Health Care Costs*, GAO-17-379, June 2017, at p. 23.

[99] The 340B Drug Pricing Program requires drug manufacturers participating in Medicaid to sell outpatient medications at a discount to certain eligible healthcare providers (particularly those that provide care to high numbers of uninsured and/or low-income patients). American Hospital Association, "Fact Sheet: The 340B Drug Pricing Program," March 2021, accessed November 5, 2021 at https://www.aha.org/system/files/media/file/2019/04/fact-sheet-340b-0419.pdf.

[100] U.S. Department of Veterans Affairs, "Pharmacy Benefits Management Services," accessed November 5, 2021 at https://www.pbm.va.gov/.

[101] TRICARE contracts with Express Scripts (TRICARE, "Pharmacy," accessed November 5, 2021 at https://www.tricare.mil/CoveredServices/Pharmacy); since CHIP is administered at the state level, benefits (and contracting PBMs) vary state-by-state (e.g. Texas' CHIP program contracts with Prime Therapeutics (BlueCross BlueShield of Texas, "Drug Coverage Details," accessed November 5, 2021 at https://www.bcbstx.com/chip/prescription-drugs/drug-coverage), while West Virginia contracts with CVS Caremark (CHIP West Virginia, "Prescription Drug Plan," accessed November 5, 2021 at https://chip.wv.gov/providers/pages/prescriptiondrugplan.aspx )).

[102] *See, e.g.*, Express Scripts, "You deserve quality care," accessed November 5, 2021 at https://militaryrx.express-scripts.com/; Fein, Adam J., "CalPERS Bids Reveal Big Three PBM's Drug Trend Forecasts and Pricing Strategies," *Drug Channels Institute*, May 24, 2016, accessed November 5, 2021 at https://www.drugchannels.net/2016/05/calpers-bids-reveal-big-three-pbms-drug.html.

[103] CVS: "The complexity of Medicaid beneficiaries, combined with the variability of programs and requirements among states, requires payors to partner with an experienced PBM that can expertly navigate this rapidly changing market and help deliver cost savings and quality care" (CVS Health Payor Solutions, "Medicaid," accessed October 17, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/government-services/medicaid); "[CVS Health] Government Services teams are highly engaged with regulators at the federal and state levels to provide insights on the changing health care landscape, as well as discussing solutions that can benefit both payors and their members" (CVS Health Payor Solutions, "Health Plan Client Engagement," accessed October 17, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/health-plan-client-engagement); Express Scripts: "Federal clients have unique needs and fiscal challenges. We understand this, and we have the expertise, scale and operating models to meet complex OPM requirements. We apply best practices, learned through our work with the Department of Defense, to help lower costs and improve health outcomes for federal employees and their families"

HIGHLY CONFIDENTIAL

PBM represent that this is a core part of their expertise, using descriptions such as: "government programs can be complex to manage… That's where our clinical, regulatory, and data analytics come in" and "experience supporting hundreds of local, state and federal government entities, public universities and retirement systems" and "[our] government program clients perform better in audits, achieve more stars, and earn greater bonus payments."[104]

(Express Scripts, "Managing the Complexities of Federal and Public Sector Plans," accessed October 12, 2021 at https://www.express-scripts.com/corporate/who-we-help/federal-and-public-sector); "With experience supporting hundreds of local, state and federal government entities, public universities and retirement systems, we're ready to stand together with you and create custom, consultative solutions that help preserve your benefit, now and in the future" (Express Scripts, "Managing the Complexities of Federal and Public Sector Plans," accessed October 12, 2021 at https://www.express-scripts.com/corporate/who-we-help/federal-and-public-sector); MedImpact: "Government programs can be complex to manage, and often serve populations with higher health risks and costs. That's where our clinical, regulatory, and data analytics come in" (MedImpact, "Who We Are," accessed October 12, 2021 at https://www medimpact.com/clients/who-we-are); "Regulatory compliance - Our combination of clinical, operational, and regulatory expertise has helped MedImpact government program clients perform better in audits, achieve more stars, and earn greater bonus payments" (MedImpact, "Who We Serve," accessed October 12, 2021 at https://www.medimpact.com/clients/who-we-serve); OptumRx: "Optum maintains a database of more than 120 million lives. This gives us access to more enrollment data and better visibility between commercial payers and Medicaid agencies. We also refresh our data weekly, which speeds up our rate of identifying other coverage" (Optum, "Third-Party Liability," accessed October 12, 2021 at https://www.optum.com/test/state-test/prevent-fraud-waste-abuse/third-party-liability htm).

[104] CVS: "The complexity of Medicaid beneficiaries, combined with the variability of programs and requirements among states, requires payors to partner with an experienced PBM that can expertly navigate this rapidly changing market and help deliver cost savings and quality care" (CVS Health Payor Solutions, "Medicaid," accessed October 17, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/government-services/medicaid); "[CVS Health] Government Services teams are highly engaged with regulators at the federal and state levels to provide insights on the changing health care landscape, as well as discussing solutions that can benefit both payors and their members" (CVS Health Payor Solutions, "Health Plan Client Engagement," accessed October 17, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/health-plan-client-engagement); Express Scripts: "Federal clients have unique needs and fiscal challenges. We understand this, and we have the expertise, scale and operating models to meet complex OPM requirements. We apply best practices, learned through our work with the Department of Defense, to help lower costs and improve health outcomes for federal employees and their families" (Express Scripts, "Managing the Complexities of Federal and Public Sector Plans," accessed October 12, 2021 at https://www.express-scripts.com/corporate/who-we-help/federal-and-public-sector); "With experience supporting hundreds of local, state and federal government entities, public universities and retirement systems, we're ready to stand together with you and create custom, consultative solutions that help preserve your benefit, now and in the future" (Express Scripts, "Managing the Complexities of Federal and Public Sector Plans," accessed October 12, 2021 at https://www.express-scripts.com/corporate/who-we-help/federal-and-public-sector); MedImpact: "Government programs can be complex to manage, and often serve populations with higher health risks and costs. That's where our clinical, regulatory, and data analytics come in" (MedImpact, "Who We Are," accessed October 12, 2021 at https://www medimpact.com/clients/who-we-are); "Regulatory compliance - Our combination of clinical, operational, and regulatory expertise has helped MedImpact government program clients perform better in audits, achieve more stars, and earn greater bonus payments" (MedImpact, "Who We Serve," accessed October 12, 2021 at https://www.medimpact.com/clients/who-we-serve); OptumRx: "Optum maintains a database of more than 120 million lives. This gives us access to more enrollment data and better visibility between commercial payers and Medicaid agencies. We also refresh our data weekly, which speeds up our rate of identifying other coverage" (Optum, "Third-Party Liability," accessed October 12, 2021 at https://www.optum.com/test/state-test/prevent-fraud-waste-abuse/third-party-liability htm).

HIGHLY CONFIDENTIAL

59. Regulatory restrictions on rebates and discounts for federal plans make it imperative that PBMs be able to separately identify these plans. Federal law prohibits enrollees in federal health programs from participating in pharmacy incentive programs under section 1320a-7b of Title 42, United States Code ("the Anti-Kickback Act"). This means that pharmacies cannot provide rewards for purchases made by consumers through these government programs. It is therefore unsurprising that pharmacies and PBMs focus on identifying which programs are funded by government entities. CVS, for instance, states that its rewards program "cannot be used on purchases of…any imposed governmental fees or taxes, or items *reimbursed by a government health plan*."[105] Similarly, Meijer rewards rules provide that "[p]rescriptions subject to reimbursement by state or federal healthcare programs are not eligible for the Pharmacy Rewards Program."[106] Kroger similarly states that "Kroger Rx Savings Club cannot be in conjunction with any Medicare, Medicaid, VA, DOD, TRICARE, or similar federal or state programs, including any state pharmaceutical programs."[107] Other major pharmacies have similar rules designed to ensure legal and regulatory compliance.[108] Indeed, Relay Health (an operator of

[105] CVS Pharmacy, "ExtraCare Pharmacy & Health Rewards® Program Rules," accessed November 5, 2021 at https://www.cvs.com/extracare-cvs/rxrewards/program-rules.
[106] Meijer, "Terms & Conditions of Use," October 1, 2021, accessed November 5, 2021 at https://www.meijer.com/terms.html.
[107] Kroger Rx Savings Club, "Terms of Service," July 1, 2021, accessed November 5, 2021 at https://www.krogersc.com/terms-of-service.
[108] Walgreens: "Points cannot be earned for transferring a prescription to a Participating Store by a Member who is, or at any time in the prior 6 months was, a beneficiary of Medicare, Medicaid, Tricare or any other healthcare program funded in whole or in part by the federal government" (Walgreens, "Terms and Conditions," updated January 1, 2020, accessed November 4, 2021 at https://www.walgreens.com/images/adaptive/si/balancerewards/BalanceRewards_termsandconditions.pdf, at p. 3); Costco: Costco offers the Costco Member Prescription Program (CMPP) which is a prescription drug discount card program. In the section regarding frequently asked questions, one question posted is whether CMPP can be used with government programs. In response to this question, Costco states that customers "must choose either CMPP or the government program, including Medicare, Medicaid or other State programs. The use of the combination is not permitted for the individual prescription dispensing" (Costco Wholesale, "Frequently Asked Questions," accessed November 5, 2021 at https://www.costco.com/member-prescription-program-frequently-asked-questions html#service-header-1); SE Grocers (Bi-Lo, Winn Dixie, Fresco y Mas, Fresco's): "SE Grocers rewards (BI-LO rewards, Fresco y Mas rewards, Harveys rewards, Winn-Dixie rewards) is a rewards program operated by BI-LO, LLC and its affiliates, subsidiaries, and parent companies." Customers can earn points by making purchases of eligible items. This excludes "pharmacy purchases using government funded insurance."

38

HIGHLY CONFIDENTIAL

one of the major claims adjudication "switches" used to route claims) touts its "Government Plan

Exclusion (GPE)" technology designed to automatically block all such claims involving co-pay

offers for beneficiaries with "known government payer plans."[109] Relay Health represents that it

does this using "a robust database of government plan and coupon identifiers."[110]

60. There are additional centralized sources that identify state plans. Every year since

2010, Milliman, Inc., a premier global consulting and actuarial firm, collects data on health plans

offered by all states and local governments and adds this data to its "Milliman Atlas of Public

Employer Health Plans."[111] Describing its Atlas, Milliman states: "[S]ince 2010, data have been

collected from various sources for public employers at all levels – state, county, municipality,

school district, and university. (…) The raw data is generally collected from publicly available

data sources."[112] The data collected is extraordinarily rich, containing summaries of lives

covered, benefits provided, premiums, and cost sharing arrangements. [113] This data is considered

---

(SE Grocers Rewards, "SE GROCERS REWARDS (BI-LO REWARDS, FRESCO Y MAS REWARDS, HARVEYS REWARDS, WINN-DIXIE REWARDS) TERMS & CONDITIONS," accessed October 12, 2021 at https://www.segrewards.com/terms).

[109] GPE applies "data and deterministic, matching technology to identify known government payer plans during primary claim processing and automatically block secondary co-pay benefits before any medication is dispensed" (McKesson, *Safeguards Manufacturers Can Use Today to Help Support Regulatory Compliance*, White Paper, October 2016, at pp. 3-4.)

[110] Note that in the same document, McKesson comments on the fact that a NCPDP Working Group (WG9) has been working on a field called "Other Payer Adjudicated Program Type" which would be mandatory and allow for the identification of a payer's program type within the prescription claim (McKesson, *Safeguards Manufacturers Can Use Today to Help Support Regulatory Compliance*, White Paper, October 2016, at pp. 2-3). The fact that such a field is not currently used in adjudication messaging with consumer pharmacy transactions does not mean that the PBM does not know the identity of government plans. The fact that pharmacies have to identify these plans in order to block coupon use and that RelayHealth offers technology to exclude these plans is evidence of that.

[111] Milliman, "Milliman Atlas of Public Employer Health Plans," accessed March 25November 5, 2021 at https://www.milliman.com/en/services/milliman-atlas-of-public-employer-health-plans.

[112] Slattery, Sean, et al., "Comparison of Health Benefits Offered to State Employees and Teachers," *Milliman,* January 4, 2019, accessed November 4, 2021 at https://oregonbusinessplan.org/wp-content/uploads/2019/01/Comparison-of-Health-Benefits-Offered-to-State-Employees-and-Teachers.pdf, at p. 4.

[113] Slattery, Sean, et al., "Comparison of Health Benefits Offered to State Employees and Teachers," *Milliman,* January 4, 2019, accessed November 4, 2021 at https://oregonbusinessplan.org/wp-content/uploads/2019/01/Comparison-of-Health-Benefits-Offered-to-State-Employees-and-Teachers.pdf; The Pew Charitable Trusts & MacArthur Foundation, "State Employee Health Plan Spending [-] An examination of premiums, cost drivers, and policy approaches," August 2014, accessed October 12, 2021 at https://www.pewtrusts.org/~/media/assets/2014/08/stateemployeehealthcarereportseptemberupdate.pdf, at p. 1;

HIGHLY CONFIDENTIAL

authoritative. Milliman is recognized as the preeminent expert nationally in actuarial benefits analysis and its data are relied upon for studies by leading healthcare foundations such as the Pew Charitable Trusts. [114] Milliman can provide for purchase the names of the health plans offered by each class state, year by year, with an indication of which agency or employee plans are, at least currently, self-funded.

61. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

62. The National Conference of State Legislatures (NCSL), relying on the Milliman Atlas as a source, has published a list that indicates the type of health insurance offered by each State to its employees – i.e., self-funded plans only, fully-insured plans only, or both options (self and fully-insured plans), as shown in Figure 8 below. [116] By matching the States listed as offering some or only self-funded plans with the Xponent data, it is possible conservatively to exclude those employee health plans. On the other hand, employee health plans linked to States that offer only fully-insured options should not be excluded (2 States), because it is the commercial insurer that has suffered those overcharges. [117] This exercise could be refined, if needed, by comparing

---

National Conference of State Legislatures, "State Employee Health Benefits, Insurance and Costs," May 1, 2020, accessed October 12, 2021 at https://www.ncsl.org/research/health/state-employee-health-benefits-ncsl.aspx.

[114] The Pew Charitable Trusts & MacArthur Foundation, "State Employee Health Plan Spending [-] An examination of premiums, cost drivers, and policy approaches," August 2014, accessed October 12, 2021 at https://www.pewtrusts.org/~/media/assets/2014/08/stateemployeehealthcarereportseptemberupdate.pdf, at p. 1.

[115] ████████████████████████████████████████████████
████████████████████████████████████

[116] National Conference of State Legislatures, "State Employee Health Benefits, Insurance and Costs," May 1, 2020, accessed October 12, 2021 at https://www.ncsl.org/research/health/state-employee-health-benefits-ncsl.aspx.

[117] The two states are Idaho and North Dakota. See Figure 8 (National Conference of State Legislatures, "State Employee Health Benefits, Insurance and Costs," May 1, 2020, accessed October 12, 2021 at https://www.ncsl.org/research/health/state-employee-health-benefits-ncsl.aspx).

HIGHLY CONFIDENTIAL

those plan names to the Milliman plan-by-plan list for each State. If any uncertainty remained, a

look-up online or a contact to the State's benefits office could confirm funding information.

*Figure 8. State Employee Health Plan Funding*[118]

| All Self-Funded | Some Self-Funded Options | All Fully Insured |
|---|---|---|
| Alabama | California | Idaho |
| Alaska | Colorado | North Dakota |
| Arizona | Florida | |
| Arkansas | Georgia | |
| Connecticut | Hawaii | |
| Delaware | Illinois | |
| Indiana | Louisiana | |
| Iowa | Maryland | |
| Kansas | Massachusetts | |
| Kentucky | Michigan | |
| Maine | Missouri | |
| Minnesota | Nevada | |
| Mississippi | New York | |
| Montana | Oklahoma | |
| Nebraska | Oregon | |
| New Hampshire | Texas | |
| New Jersey | Virginia | |
| New Mexico | Washington | |
| North Carolina | Wisconsin | |
| Ohio | | |
| Pennsylvania | | |
| Rhode Island | | |
| South Carolina | | |
| South Dakota | | |
| Tennessee | | |
| Utah | | |
| Vermont | | |
| West Virginia | | |
| Wyoming | | |

## C. Identifying Payors

63. Only those entities that "paid any amount of money for a valsartan-containing drug

(intended for personal or household use)" meet the primary condition of the Class definitions.[119]

Fully-insured plans make no such payments. Instead, these entities purchase their prescription

drug coverage from a third-party insurance provider (e.g., Aetna, United Health Care, Blue Cross

Blue Shield) that takes on all financial responsibility for claims; these providers therefore

become members of the Class. This is an extremely common form of employer provided

---

[118] National Conference of State Legislatures, "State Employee Health Benefits, Insurance and Costs," May 1, 2020, accessed October 12, 2021 at https://www.ncsl.org/research/health/state-employee-health-benefits-ncsl.aspx.
[119] See Exhibit A to this Declaration.

HIGHLY CONFIDENTIAL

insurance: the employer pays premiums and the insurance company with whom it contracts provides the insurance and prescription drug benefits. Indeed, a recent survey reports that approximately 88% of all employment-based prescription drug plans are fully-insured.[120] For these plans, it is the insurer (the party that actually paid for the VCDs) that appears in the claims data and that occupies the role of TPP.

64. As previously explained, before a prescription is filled at the pharmacy, the NCPDP system is used to route it to the appropriate PBM for claims adjudication. The transmitted data needs to be sufficient for the PBM to identify the proper billing party—the one to whom it will charge the drug cost net of consumer cost sharing. Four numbers in the NCPDP message work together to assure that the claim is routed and charged correctly. These are the Bank Identification Number ("BIN"), the Processor Control Number ("PCN"), the Plan ID, and—in most cases—a Group Identification Number ("GRP").[121] These NCPDP-defined numbers tell the electronic routing system where to direct the claim so that it can be adjudicated, reimbursement delivered to the pharmacy, and a fixed payment liability created between the PBM and its client.[122]

---

[120] "On average, 11.9% of prescription plans are self-funded, with the vast majority (88.1%) of employers choosing to fully insure their prescription plans, according to UBA's new Special Report: Trends in Prescription Drug Benefits, based on data from the latest UBA Health Plan Survey of more than 10,000 employer-sponsored health plans" (Olson, Bill "Employers Split on Whether to Self-Fund Prescription Drug Plans," *United Benefits Advisors*, June 30, 2016, accessed November 5, 2021 at http://blog.ubabenefits.com/employers-split-on-whether-to-self-fund-prescription-drug-plans).

[121] Some plans are so simple that they do not need or use Group numbers: all members are treated identically. The Group ID provides information about the sponsor's identity: typically, each employer that purchases a health plan on behalf of its employees gets issued a Group ID number, which goes on the insurance card of the employee. Different employers who purchase the same plan are assigned different Group numbers (St. Jude Children's Research Hospital, "How to read your insurance card," accessed November 5, 2021 at https://www.stjude.org/treatment/patient-resources/caregiver-resources/patient-family-education-sheets/hematology/how-to-read-your-insurance-card.html). In the NCPDP data, Group ID is found under "Field **301-C1** and is required if needed to identify the cardholder or employer group, or to identify appropriate group numbers for billing. By contrast, individual health plans not purchased through a group will have no Group number (NCPDP, *Telecommunication Standard Implementation Guide – Version D.0*, August 2010, at p. 67).

[122] NCPDP, "NCPDP Processor ID (BIN)," May 15, 2020, accessed November 5, 2021 at https://www.ncpdp.org/NCPDP/media/pdf/Resources/NCPDP-Processor-ID-(BIN).pdf?ext=.pdf.

HIGHLY CONFIDENTIAL

65. Upon its receipt at the PBM, the NCPDP message automatically links to additional data PBMs maintain about their clients. That data includes important identifiers such as Client Name and ID, specific Account name and ID, and Group Description and ID number. These hierarchically organized identifiers are automatically merged to the claim details and preserved as part of the "claims data" the PBM then uses to bill its TPP clients. The hierarchical structure linking each claim to a billable client/payor is an essential part of the PBM data architecture; it begins with the plan setup process and automatically enables the PBM to connect claims with payors in a continuous billing process. Billing itself requires that plans be automatically linked to their physical and electronic addresses and banking coordinates. The unique combination of these routing and identifying numbers enables the PBM to assign each claim to the correct payor with 100% certainty.[123]

66. Many clients have multiple accounts with their PBMs for different plans or divisions and different consumer groups that are covered. The hierarchical data structure accounts for such subdivisions, with the top level representing the "Client" who has contracted with the PBM, the Account typically representing a particular plan or set of plans supported by that Client, and the Group used to identify the particular collection of persons covered (*e.g.,* "Michigan Plant" or "Police Officers") and the particular formulary and benefit terms associated with their coverage. The TPP (ultimate payor of claims) typically appears in the Client/Carrier field of the PBM data, whether it is a self-funded or fully-insured plan. The exception is when the TPP has hired an Administrative Services Only organization ("ASO") or a Third-Party Administrator ("TPA") to handle PBM contracting for it. In some cases, descriptive fields in the PBM data specifically identify either fully-insured or self-funded status. No such description is needed for many plan

---

[123] NCPDP, "NCPDP Processor ID (BIN)," May 15, 2020, accessed November 5, 2021 at https://www.ncpdp.org/NCPDP/media/pdf/Resources/NCPDP-Processor-ID-(BIN).pdf?ext=.pdf.

HIGHLY CONFIDENTIAL

types that are necessarily fully-insured (e.g., Medicare Advantage, Managed Medicaid, Medicare Prescription Drug Plans, Exchange listed products, and Individual policies).

67. A "plan sponsor" is an entity that organizes and makes available a prescription drug plan on behalf of an identified population. The plan sponsor may be an insurance company, or it may be a union or employer seeking coverage for its members or employees. If the plan sponsor is self-funded, then it is also the ultimate TPP responsible for paying benefits. If, on the other hand, the plan sponsor is fully-insured, the insurer with whom it contracts coverage is the TPP.

68. In some cases, a self-funded TPP may contract with a separate entity to administer its plan(s), including services such as plan documentation, member enrollment, formulary approval, and review of PBM-prepared claims billing. Ultimately, the distinction between a TPA and ASO is largely just a difference in marketing labels:[124] when the contracted administrator is an insurance company, it is referred to as an ASO;[125] when it is a non-insurer benefits manager it is typically referred to as a TPA.[126] The presence of an additional intermediary does not change or obscure the identity of the self-funded TPP, which remains fully liable for claims and whose name typically appears in PBM data alongside the ASO or TPA. PBM data remains equally complete, including information on product, location, date and amounts paid for all prescriptions, regardless of whether there is an ASO or TPA. In some cases, PBM data include the names of

---

[124] Hunt, Fred, "Frequently Asked Questions About TPAs," Society of Professional Benefit Administrators, March 2011, accessed November 5, 2021 at https://spbatpa.org/article/frequently-asked-questions-about-tpas.

[125] An ASO is "[a]n arrangement under which an insurance carrier…handle[s] the administration of claims, benefits and other administrative functions for a self-insured [employer's health plan,] but does *not* assume any financial risk for the payment of benefits" (Anthem BlueCross, "Glossary," accessed November 5, 2021 at https://web.archive.org/web/20150214235020/https://www.anthem.com/wps/portal/ca/footer?content_path=shared/f0/s0/t0/pw_a104140 htm&label=Glossary).

[126] Third Party Administrators (TPAs) are paid fees by self-insured plan sponsors to take on administrative responsibilities such as claims administration, loss control, risk management information systems, and risk management consulting (IRMI, "Glossary" at "Third-Party Administrator (TPA)," accessed November 5, 2021 at https://www.irmi.com/term/insurance-definitions/third-party-administrator). A TPA is a "[b]usiness associate that performs claims administration and related business functions for a self-insured entity" (CMS, "Glossary," accessed November 5, 2021 at https://www.cms.gov/apps/glossary/default.asp?Letter=T&Language=English).

HIGHLY CONFIDENTIAL

*both* the self-funded plan sponsor and its administrator without explicitly stating which is the TPP. However, PBMs should be expected to know the capacity in which their clients are contracting (whether on behalf of themselves or as an ASO/TPA for a self-funding TPP).[127] This is also a standard part of the account set-up for benefit managers.[128] However, even if the data supplied did not plainly delineate which entity was the ultimate payor, all specifics for the claim itself would be precise and accurate and there would be no risk of duplicate claims. If for some reason a TPA/ASO and TPP were each to submit a claim for the same purchases after a successful judgment or settlement, that duplication would immediately be apparent simply by matching the plan number and date range. The claims administrator could then simply notify the claimants and require them to resolve the dispute.

69. Health insurers are also legally required to separate their ASO accounts (described as "fee business") from their at-risk accounts (i.e., accounts for which they sell health insurance and assume claims payment risk). U.S. insurers must file periodic reports with the National Association of Insurance Commissioners ("NAIC") in which they report *direct premiums written* (the at-risk side of the business). NAIC's U.S. Health Insurance Industry 2019 Annual Results

---

[127] Some large insurers such as United Health Group divide their corporate organization, conducting TPA/ASO business through a separate corporate entity (UMR) from the core insurance business: "UMR is a wholly owned subsidiary of UnitedHealthcare, a part of UnitedHealth Group. UMR is a third-party administrator (TPA) and not an insurance company…UMR has a proprietary claims platform with dedicated customer service and does not access claims on UHCprovider.com" (United Healthcare, "UMR supplement – 2021 UnitedHealthcare Administrative Guide," accessed November 5, 2021 at https://www.uhcprovider.com/en/admin-guides/administrative-guides-manuals-2021/umr-supp-2021.html).  In such cases, the client ID number alone can be used to determine the capacity in which they are acting.

[128] *See, e.g.*, the "Plan Service Agreement and Employer Information" form available on Group Benefit Services' (GBS) website. GBS (now known as "Amwins Connect Administrators") is an Employee Benefits Administrator. Among the information that has to be filled in the form is TPA (Third Party Administrator) information and whether the plan is fully-insured or self-funded (GBS Health Plans, "Sold Case Submission Procedures and Check List," accessed November 5, 2021 at https://secure.gbshealthcare.net/healthyadvantage/pdf/Bundle%20Sold%20Case%20Submission.pdf; Amwins Connect Administrators, "Welcome To Amwins Connect Administrators (Formerly Group Benefit Services)," accessed November 5, 2021 at https://www.amwinsconnecttpa.com/).

HIGHLY CONFIDENTIAL

shows the consolidated *direct premiums written* by the reporting insurers.[129] These same insurers

report their ASO administrative expenses in worksheet XR021 of the Risk-Based Capital

("RBC") filing,[130] and their at-risk premiums in worksheet XR012.[131] This division is also

typically reflected in the 10-K filings of publicly traded health insurers.[132] To properly bill its

ASO clients, an insurance company must necessarily segregate those accounts both from its own

"at risk" business and from each other. It is therefore a business necessity that accounts reported

to insurers by their PBMs be separable based upon whether the insurer is acting as insurer or as

an ASO for a self-funded plan sponsor.



### D.  PBMs

71. PBMs are also explicitly excluded from the Proposed Class despite failing the initial

qualifying test: they do not "pa[y] any amount of money for a valsartan-containing drug

---

[129] NAIC, "U.S. Health Insurance Industry 2019 Annual Results," 2020, at Table 1, p. 1.
[130] NAIC, "Risk-Based Capital Forecasting and Instructions – Health," 2019, accessed November 5, 2021 at https://www.in.gov/idoi/files/2020_Health.pdf, at pp. 31-32. For more on RBC filing, see NAIC, "Risk-Based Capital," June 24, 2020, accessed November 5, 2021 at https://content.naic.org/cipr_topics/topic_riskbased_capital.htm
[131] NAIC, "Risk-Based Capital Forecasting and Instructions – Health," 2019, accessed November 5, 2021 at https://www.in.gov/idoi/files/2020_Health.pdf, at pp. 14-18 & 31-33.
[132] *See, e.g.,* Cigna Corporation Form 10-K for the fiscal year ended December 31, 2016, filed February 23, 2017, at pp. 131-133; UnitedHealth Group Form 10-K for the fiscal year ended December 31, 2020, filed March 1, 2021, at pp. 1-2 & 4.
[133]

[134] See, e.g., Self-Funding Success, "Find A TPA," accessed November 5, 2021 at http://www.selffundingsuccess.com/find-a-tpa/; Self-Insurance Institute of America, "Third Party Administrators (TPA)," accessed November 5, 2021 at https://www.siia.org/i4a/pages/index.cfm?pageID=5059.

HIGHLY CONFIDENTIAL

(intended for personal or household use)." PBMs state clearly, repeatedly, and under oath that they are not end-payors and do not pay for the prescription drug purchases of their clients.[135] Instead, they are service providers for their TPP clients; in that capacity, they process, adjudicate and make payment for prescription drug purchase transactions on the TPPs' behalf,[136] using the TPPs' funds. They also negotiate pharmacy pricing for their TPP clients.

## VIII.  OPINION 6: THERE ARE NUMEROUS MEMBERS OF THE PROPOSED CLASSES



72.

---

[135] Optum "is not a consumer, endpayor, insurer, or reseller of prescription drug products. OptumRx does not consider itself to be paying for its Clients' prescription drug products." (Optum Restasis Decl., at ¶4); "Caremark's PBM business is not the ultimate payor of prescription benefits provided by its Clients; rather, it is an intermediary service provider that helps third-party payors provide high quality affordable health care coverage to their plan members." (Caremark Zetia Decl., at ¶5); "As a pharmacy benefits manager, Prime is not a consumer, end-payor, insurer, or reseller of prescription drug products." (Prime Restasis Decl., at ¶7).

[136] "As a PBM, Express Scripts offers numerous services to its Clients, including retail pharmacy claims adjudication, pharmacy network management, formulary management, and drug utilization management." (Express Scripts Restasis Decl., at ¶5); Caremark "is an intermediary service provider that helps third-party payors provide high quality affordable health care coverage to their plan members." (Caremark Zetia Decl., at ¶5); "The PBM business at OptumRx provides comprehensive pharmacy care services to numerous customers in the U.S. and Puerto Rico. OptumRx provides services to a broad array of clients including, but not limited to, corporate health plans, managed care organizations, unions, and other funded benefit plans… OptumRx offers its Clients, among other things, prescription drug claims adjudication services." (Optum Restasis Decl., at ¶¶3 & 7).

HIGHLY CONFIDENTIAL



## IX.  CONCLUSION

73. As explained above, there is ample data to identify members of the Proposed Classes and apply the exclusions in a reliable manner. Prescription drug dispensing is better documented than probably any other consumer product in the United States. Multiple parties keep detailed electronic data for each transaction and that data includes identifiers for both TPP and consumer. The Class exclusions are all addressed by either the primary data sources, available from a small number of entities, or secondary data that augments them.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Berkeley, California on the 10th day of November 2021.

_____
        Laura R. Craft

---

[137] It is possible that a given customer could be related to more than a single unique customer ID if that individual purchased VCDs from more than a single retail and/or mail order supplier.

48

HIGHLY CONFIDENTIAL

# Exhibit A

Class Definitions for Consumers, Third-Party
Payors, and Medical Monitoring

Class Definitions and Exclusions Table

## MANUFACTURER DEFENDANTS

*Manufacturer Defendants Express Warranties Claim:*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| ZHP[1], Torrent[2], Teva[3] | ZHPTORTEVEW1 | All individuals in Alaska; Arizona; California; Colorado;  Delaware; D.C.; Florida; Hawaii; Idaho; Illinois; Indiana; Iowa; Kansas; Kentucky; Maine; Massachusetts; Minnesota Missouri; New Jersey; New Mexico; Oklahoma; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; Washington; West Virginia; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants | Any judge or magistrate presiding over this action, and members of their families; <br><br> Defendants and affiliated entities, and their employees, officers, directors, and agents; <br><br> Defendants' legal representatives, assigns, and successors; and, <br><br> All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Charlie Johnston (CA); Brian Wineinger (IN); Raleigh Wolfe (IN); Glenda Cooper (KY); Georgia Fatigato (IL); Marlin Anderson (IL); Jennifer Johnson (MN);  James Childs (NJ); Radhakrishna Shetty (NJ); Billy Joe Bruner (NM); Lawrence Semmel (PA); Cheryl Mullins (VA); Miranda Dudley (NC); Mary McLean (VA) |

---

[1] ZHP is defined to include the following Defendant entities as set forth in the Third Amended Master Economic Loss Complaint (Dkt. No. 1708): Zhejiang Huahai Pharmaceutical Co., Ltd.; Huahai US Inc.; Prinston Pharmaceutical Inc. d/b/a Solco Healthcare LLC; and Solco Healthcare US, LLC.

[2] Torrent is defined to include the following Defendant entities as set forth in the Third Amended Master Economic Loss Complaint (Dkt. No. 1708): Torrent Pharmaceuticals Ltd.; and Torrent Pharma Inc.

[3] Teva is defined to include the following Defendant entities as set forth in the Third Amended Master Economic Loss Complaint (Dkt. No. 1708): Teva Pharmaceutical Industries Ltd.; Teva Pharmaceuticals USA, Inc.; Actavis Pharma, Inc.; and Actavis, LLC.

Class Definitions and Exclusions Table

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | (limited to VCDs manufactured using ZHP Defendants' API). |  |  |
| ZHP, Torrent, Teva | ZHPTORTEVEW2 | All individuals in Alabama; Arkansas; Georgia; Mississippi Montana; Nebraska; Nevada; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oregon; Tennessee; Texas; Utah; Vermont; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Id. | Sandra Kelly (AL); Evelyn Rice (AR); Dennis Kaplan (OH); Lubertha Powell (GA); Flora McGilvery (MS); Alphonse Borkowski (NY); Joseph Cacaccio (NY); John Duffy (NY); Gerald Nelson (NY); Gary Burnett (NC); Miranda Dudley (NC); Eric Erwin (TX); Samuel Cisneros (TX); Jynona Gail Lee (TX) |
| Mylan[4], Teva | MYLTEVEW1 | All individuals in Alaska; California; Delaware; D.C.; Florida; Hawaii; Idaho; Illinois; Indiana; Iowa; Kansas; Kentucky; Maine; Massachusetts; Minnesota; Missouri; New Jersey; New Mexico; Oklahoma; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; Washington; West Virginia; and Wyoming, who, since at least January 1, 2012, and through the date of final | Any judge or magistrate presiding over this action, and members of their families; Defendants and affiliated entities, and their employees, officers, directors, and agents; | Marzanna Glab (NJ); James Lawson (NJ); James Childs (NJ); Mary McLean (VA); Jay Meader (CA); Mark Hays (CA); Glenda Cooper (KY); Robin Roberts (VA) |

---

[4] Mylan is defined to include the following Defendant entities as set forth in the Third Amended Master Economic Loss Complaint (Dkt. No. 1708): Mylan Laboratories, Ltd.; Mylan N.V.; and Mylan Pharmaceuticals, Inc.

Class Definitions and Exclusions Table

| | | recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Defendants' legal representatives, assigns, and successors; and, <br><br> All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| Mylan, Teva | MYLTEVEW2 | All individuals in Alabama; Arkansas; Georgia; Mississippi Montana; Nebraska; Nevada; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oregon; Tennessee; Texas; Utah; Vermont; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Id. | Asha Lamy (AL); Lawrence Edwards (GA); Joseph Cacaccio (NY); Gerald Nelson (NY); Eric Erwin (TX); Brittney Means (TX) |
| Hetero[5] | HETEW1 | All individuals in Alaska; California; Delaware; D.C.; Florida; Hawaii; Idaho; Illinois; Indiana; Iowa; Kansas; Kentucky; Maine; Massachusetts; Minnesota; Missouri; New Jersey; New | Any judge or magistrate presiding over this action, and members of their families; | Veronica Longwell (MA); James Childs (NJ); Mark Hays (CA); Leland Gildner (IN) |

---

[5] Hetero is defined to include the following Defendant entities as set forth in the Third Amended Master Economic Loss Complaint (Dkt. No. 1708): Hetero Labs, Ltd.; Hetero Drugs, Limited; Hetero USA Inc.; and, Camber Pharmaceuticals, Inc.

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | Mexico; Oklahoma; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; Washington; West Virginia; and Wyoming, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors; and,<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
| Hetero | HETEW2 | All individuals in Connecticut, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | Id. | Peter O'Brien (CT) |
| Aurobindo[6] | AUREW1 | All individuals in Alaska; California; Delaware; D.C.; Florida; Hawaii; Idaho; Illinois; Indiana; Iowa; Kansas; Kentucky; Maine; Massachusetts; Minnesota; Missouri; New Jersey; New Mexico; Oklahoma; Pennsylvania; | Any judge or magistrate presiding over this action, and members of their families; | Marlin Anderson (IL); Joseph Kessinger (KS); Linda Crocker (ME); Veronica Longwell (MA); Marzanna Glab (NJ); Antoinette Sims (NJ); James Lawson (NJ); James Childs (NJ); Mark Hays |

---

[6] Aurobindo is defined to include the following Defendant entities as set forth in the Third Amended Master Economic Loss Complaint (Dkt. No. 1708): Aurobindo Pharma, Ltd.; Aurobindo Pharma USA, Inc.; Aurolife Pharma, LLC

Class Definitions and Exclusions Table

|  |  | Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; Washington; West Virginia; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Defendants and affiliated entities, and their employees, officers, directors, and agents; Defendants' legal representatives, assigns, and successors; and, All persons who properly execute and file a timely request for exclusion from any Court-approved class. | (CA); Merilyn Andre (CA); Elenora Deutenberg/Feijoo (FL) |
| --- | --- | --- | --- | --- |
| Aurobindo | AUREW2 | All individuals in Alabama; Arkansas; Georgia; Mississippi Montana; Nebraska; Nevada; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oregon; Tennessee; Texas; Utah; Vermont; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Id. | Evelyn Rice (AR); Dennis Kaplan (OH); Lawrence Edwards (GA); Jennifer Johnson (MN); Joseph Cacaccio (NY); Gerald Nelson (NY); Eric Erwin (TX) |

Class Definitions and Exclusions Table

Class Definitions and Exclusions Table

*Manufacturer Defendants Implied Warranty Claim:*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| ZHP, Torrent, Teva | ZHPTORTEVIW1 | All individuals in Alaska; California; Colorado; Delaware; D.C.; Hawaii; Indiana; Maine; Massachusetts; Minnesota; Missouri; New Jersey; New Mexico; Oklahoma; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Any judge or magistrate presiding over this action, and members of their families; Defendants and affiliated entities, and their employees, officers, directors, and agents; Defendants' legal representatives, assigns, and successors; and, All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Charlie Johnston (CA); Jennifer Johnson (MN); James Childs (NJ); Radhakrishna Shetty (NJ); Billy Joe Bruner (NM); Lawrence Semmel (PA); Brian Wineinger (IN); Raleigh Wolfe (IN); Mary McLean (VA) |
| ZHP, Torrent, Teva | ZHPTORTEVIW2 | All individuals in Arkansas; Georgia; Maryland; Michigan; Mississippi; Montana; Nebraska; Nevada; New Hampshire; North Dakota; Texas; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by | Id. | Evelyn Rice (AR); Lubertha Powell (GA); Flora McGilvery (MS); Eric Erwin (TX); Cheryl Mullins (VA); Jynona Gail Lee (TX); Samuel Cisneros (TX) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | | |
| ZHP, Torrent, Teva | ZHPTORTEVIW3 | All individuals in Arizona; Connecticut; Florida; Idaho; Illinois; Iowa; Kansas; Kentucky; New York; North Carolina; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Id. | Ron Molinaro (FL); Elenora Deutenberg/Feijoo (FL); Georgia Fatigato (IL); Marlin Anderson (IL); Alphonse Borkowski (NY); Joseph Cacaccio (NY); John Duffy (NY); Gerald Nelson (NY); Gary Burnett (NC); Miranda Dudley (NC) |
| ZHP, Torrent, Teva | ZHPTORTEVIW4 | All individuals in Alabama; Ohio; Oregon; Tennessee; Utah; and Vermont, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Id. | Sandra Kelly (AL); Dennis Kaplan (OH) |

Class Definitions and Exclusions Table

| ZHP, Torrent, Teva | ZHPTORTEVIW5 | All individuals in Louisiana, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Id. | Talsie Neal (LA) |
|---|---|---|---|---|
| Mylan, Teva | MYLTEVIW1 | All individuals in Alaska; California; Colorado; Delaware; D.C.; Hawaii; Indiana; Maine; Massachusetts; Minnesota; Missouri; New Jersey; New Mexico; Oklahoma; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Any judge or magistrate presiding over this action, and members of their families; Defendants and affiliated entities, and their employees, officers, directors, and agents; Defendants' legal representatives, assigns, and successors; and, All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Jay Meader (CA); Mark Hays (CA); Marzanna Glab (NJ); James Lawson (NJ); James Childs (NJ); Robin Roberts (VA) |
| Mylan, Teva | MYLTEVIW2 | All individuals in Arkansas; Georgia; Maryland; Michigan; Mississippi; Montana; Nebraska; Nevada; New | Id. | Lawrence Edwards (GA); Mary McLean (VA); Eric |

9

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | Hampshire; North Dakota; Texas; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | | Erwin (TX); Brittney Means (TX) |
| Mylan, Teva | MYLTEVIW3 | All individuals in Arizona; Connecticut; Florida; Idaho; Illinois; Iowa; Kansas; Kentucky; New York; North Carolina; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Id. | Joseph Cacaccio (NY); Gerald Nelson (NY) |
| Mylan, Teva | MYLTEVEW4 | All individuals in Alabama; Ohio; Oregon; Tennessee; Utah; and Vermont, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal | Id. | Asha Lamy (AL) |

10

Class Definitions and Exclusions Table

| | | or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | | |
|---|---|---|---|---|
| Hetero | HETIW1 | All individuals in Alaska; California; Colorado; Delaware; D.C.; Hawaii; Indiana; Maine; Massachusetts; Minnesota; Missouri; New Jersey; New Mexico; Oklahoma; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; and West Virginia, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | Any judge or magistrate presiding over this action, and members of their families;

Defendants and affiliated entities, and their employees, officers, directors, and agents;

Defendants' legal representatives, assigns, and successors; and,

All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Mark Hays (CA); James Childs (NJ); Leland Gildner (IN); Veronica Longwell (MA) |
| Hetero | HETIW2 | All individuals in Arizona; Connecticut; Florida; Idaho; Illinois; Iowa; Kansas; Kentucky; New York; North Carolina; Washington, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household | Id. | Peter O'Brien (CT) |

11

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | | |
| Aurobindo | AURIW1 | All individuals in Alaska; California; Colorado; Delaware; D.C.; Hawaii; Indiana; Maine; Massachusetts; Minnesota; Missouri; New Jersey; New Mexico; Oklahoma; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Virginia; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Any judge or magistrate presiding over this action, and members of their families;

Defendants and affiliated entities, and their employees, officers, directors, and agents;

Defendants' legal representatives, assigns, and successors; and,

All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Mark Hays (CA); Merilyn Andre (CA); Marzanna Glab (NJ); Antoinette Sims (NJ); James Lawson (NJ); James Childs (NJ); Linda Crocker (ME); Veronica Longwell (MA); |
| Aurobindo | AURIW2 | All individuals in Arkansas; Georgia; Maryland; Michigan; Mississippi; Montana; Nebraska; Nevada; New Hampshire; North Dakota; Texas; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was | Id. | Evelyn Rice (AR); Lawrence Edwards (GA); Jennifer Johnson (MN); Eric Erwin (TX) |

12

Class Definitions and Exclusions Table

| | | manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | | |
|---|---|---|---|---|
| Aurobindo | AURIW3 | All individuals in Arizona; Connecticut; Florida; Idaho; Illinois; Iowa; Kansas; Kentucky; New York; North Carolina; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Id. | Elenora Deutenberg/Feijoo (FL); Marlin Anderson (IL); Joseph Cacaccio (NY); Gerald Nelson (NY); |
| Aurobindo | AURIW4 | All individuals in Alabama; Ohio; Oregon; Tennessee; Utah; and Vermont, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Id. | Dennis Kaplan (OH) |
| Aurobindo | AURIW5 | All individuals in Louisiana, who, since at least January 1, 2012, and through the date of final recall (as of | Id. | Sandy Bell (LA) |

13

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | | |

Class Definitions and Exclusions Table

*Manufacturer Defendants Common Law Fraud Claim:*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| ZHP, Torrent, Teva | ZHPTORTEVFR1 | All individuals in Alaska; California; Connecticut; Delaware; Georgia; Indiana; Kansas; Kentucky; Maine; Maryland; Massachusetts; Michigan; Nebraska; New Hampshire; New Mexico; North Carolina; Ohio; Pennsylvania; South Carolina; South Dakota; Texas; Utah; West Virginia; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors; and,<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Charlie Johnston (CA); Lubertha Powell (GA); Brian Wineinger (IN); Raleigh Wolfe (IN); Glenda Cooper (KY); Billy Joe Bruner (NM); Dennis Kaplan (OH); Lawrence Semmel (PA); Eric Erwin (TX); Jynona Gail Lee (TX); Samuel Cisneros (TX); Gary Burnett (NC); Miranda Dudley (NC) |
| ZHP, Torrent, Teva | ZHPTORTEVFR2 | All individuals in Alabama; Arizona; Arkansas; Hawaii; Idaho; Illinois; Minnesota; Mississippi; Missouri; Montana; Nevada; Oregon; and Tennessee, who, since at least | Id. | Sandra Kelly (AL); Evelyn Rice (AR); Georgia Fatigato (IL); Marlin Anderson (IL); Jennifer Johnson (MN); Flora McGilvery (MS) |

15

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | | |
| ZHP, Torrent, Teva | ZHPTORTEVFR3 | All individuals in Colorado; D.C.; Florida; Iowa; Louisiana; New Jersey; New York; North Dakota; Oklahoma; Rhode Island; Vermont; Virginia; Washington; Wyoming; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Id. | Ron Molinaro (FL); Talsie Neal (LA); James Childs (NJ); Radhakrishna Shetty (NJ); Alphonse Borkowski (NY); Joseph Cacaccio (NY); John Duffy (NY); Gerald Nelson (NY); Cheryl Mullins (VA); Mary McLean (VA) |

Class Definitions and Exclusions Table

| Mylan, Teva | MYLTEVFR1 | All individuals in Alaska; California; Connecticut; Delaware; Georgia; Indiana; Kansas; Kentucky; Maine; Maryland; Massachusetts; Michigan; Nebraska; New Hampshire; New Mexico; North Carolina; Ohio; Pennsylvania; South Carolina; South Dakota; Texas; Utah; West Virginia; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Any judge or magistrate presiding over this action, and members of their families; Defendants and affiliated entities, and their employees, officers, directors, and agents; Defendants' legal representatives, assigns, and successors; and, All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Jay Meader (CA); Mark Hays (CA); Lawrence Edwards (GA); Glenda Cooper (KY); Eric Erwin (TX); Brittney Means (TX) |
| Mylan, Teva | MYLTEVFR2 | All individuals in Alabama; Arizona; Arkansas; Hawaii; Idaho; Illinois; Minnesota; Mississippi; Missouri; Montana; Nevada; Oregon; and Tennessee, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any | Id. | Asha Lamy (AL) |

Class Definitions and Exclusions Table

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). |  |  |
| Mylan, Teva | MYLTEVFR3 | All individuals in Colorado; D.C.; Florida; Iowa; Louisiana; New Jersey; New York; North Dakota; Oklahoma; Rhode Island; Vermont; Virginia; Washington; Wyoming; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Id. | Marzanna Glab (NJ); James Lawson (NJ); James Childs (NJ); Joseph Cacaccio (NY); Gerald Nelson (NY); Mary McLean (VA); Robin Roberts (VA) |
| Hetero | HETFR1 | All individuals in Alaska; California; Connecticut; Delaware; Georgia; Indiana; Kansas; Kentucky; Maine; Maryland; Massachusetts; | Any judge or magistrate presiding over this action, and members of their families; | Mark Hays (CA); Peter O'Brien (CT); Leland Gildner (IN); Veronica Longwell (MA) |

18

Class Definitions and Exclusions Table

| | | Michigan; Nebraska; New Hampshire; New Mexico; North Carolina; Ohio; Pennsylvania; South Carolina; South Dakota; Texas; Utah; West Virginia; and Wisconsin, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | Defendants and affiliated entities, and their employees, officers, directors, and agents; <br><br> Defendants' legal representatives, assigns, and successors; and, <br><br> All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| Hetero | HETFR2 | All individuals in Colorado; D.C.; Florida; Iowa; Louisiana; New Jersey; New York; North Dakota; Oklahoma; Rhode Island; Vermont; Virginia; Washington; Wyoming; and Puerto Rico, who, since at least May 1, 2018, and to the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero | Id. | | James Childs (NJ) |

Class Definitions and Exclusions Table

| | | Defendants (limited to VCDs manufactured using Hetero Defendants' API). | | |
|---|---|---|---|---|
| Aurobindo | AURFR1 | All individuals in Alaska; California; Connecticut; Delaware; Georgia; Indiana; Kansas; Kentucky; Maine; Maryland; Massachusetts; Michigan; Nebraska; New Hampshire; New Mexico; North Carolina; Ohio; Pennsylvania; South Carolina; South Dakota; Texas; Utah; West Virginia; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Any judge or magistrate presiding over this action, and members of their families; <br><br> Defendants and affiliated entities, and their employees, officers, directors, and agents; <br><br> Defendants' legal representatives, assigns, and successors; and, <br><br> All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Mark Hays (CA); Merilyn Andre (CA); Lawrence Edwards (GA); Joseph Kessinger (KS); Dennis Kaplan (OH); Eric Erwin (TX); Veronica Longwell (MA); Linda Crocker (ME); |
| Aurobindo | AURFR2 | All individuals in Alabama; Arizona; Arkansas; Hawaii; Idaho; Illinois; Minnesota; Mississippi; Missouri; Montana; Nevada; Oregon; Tennessee, who, since at least January 1, 2012, and through | Id. | Evelyn Rice (AR); Marlin Anderson (IL); Jennifer Johnson (MN); |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | | |
| Aurobindo | AURFR3 | All individuals in Colorado; D.C.; Florida; Iowa; Louisiana; New Jersey; New York; North Dakota; Oklahoma; Rhode Island; Vermont; Virginia; Washington; Wyoming; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Id. | Elenora Deutenberg/Feijoo (FL); Sandy Bell (LA); Marzanna Glab (NJ); Antoinette Sims (NJ); James Lawson (NJ); Joseph Cacaccio (NY); Gerald Nelson (NY) |

Class Definitions and Exclusions Table

*Manufacturer Defendants Consumer Protection Act Claim*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| ZHP, Torrent, Teva | ZHPTORTEVCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors; and,<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Charlie Johnston (CA); Ron Molinaro (FL); Elenora Deutenberg/Feijoo (FL); Marlin Anderson (IL); Georgia Fatigato (IL); Talsie Neal (LA); Alphonse Borkowski (NY); Joseph Cacaccio (NY); John Duffy (NY); Gerald Nelson (NY); Gary Burnett (NC); Miranda Dudley (NC); Dennis Kaplan (OH); Lawrence Semmel (PA) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | VCDs manufactured using ZHP Defendants' API). | | |
| ZHP, Torrent, Teva | ZHPTORTEVCPA2 | All individuals in Delaware; Kansas; Minnesota; New Jersey; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Id. | Jennifer Johnson (MN); James Childs (NJ); Radhakrishna Shetty (NJ) |
| ZHP, Torrent, Teva | ZHPTORTEVCPA3 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; and Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) | Id. | Sandra Kelly (AL); Lubertha Powell (GA); Flora McGilvery (MS); Eric Erwin (TX); Brittney Means (TX); Samuel Cisneros (TX); Jynona Gail Lee (TX) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | | |
| ZHP, Torrent, Teva | ZHPTORTEVCPA4 | All individuals in Arkansas; Colorado; Kentucky; Nevada; New Mexico; South Dakota; Utah; and Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | Id. | Evelyn Rice (AR); Glenda Cooper (KY); Billy Joe Bruner (NM); Lawrence Semmel (PA); Cheryl Mullins (VA); Robin Roberts (VA); Mary McLean (VA) |
| ZHP, Torrent, Teva | ZHPTORTEVCPA5 | All individuals in Indiana; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid | Id. | Brian Wineinger (IN); Raleigh Wolfe (IN) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the ZHP Defendants, Torrent Defendants, and/or Teva Defendants (limited to VCDs manufactured using ZHP Defendants' API). | | |
| Mylan, Teva | MYLTEVCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; West Virginia;, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing | Any judge or magistrate presiding over this action, and members of their families; Defendants and affiliated entities, and their employees, officers, directors, and agents; Defendants' legal representatives, assigns, and successors; and, All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Jay Meader (CA); Mark Hays (CA); Peter O'Brien (CT); Joseph Cacaccio (NY); Gerald Nelson (NY) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | | |
| Mylan, Teva | MYLTEVCPA2 | All individuals in Delaware; Kansas; Minnesota; New Jersey; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Id. | Marzanna Glab (NJ); James Lawson (NJ); James Childs (NJ); |
| Mylan, Teva | MYLTEVCPA3 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; and Texas, who, since at least January | Id. | Asha Lamy (AL); Lawrence Edwards (GA); Eric Erwin (TX); Brittney Means (TX); |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | | |
| Mylan, Teva | MYLTEVCPA4 | All individuals in Arkansas; Colorado; Kentucky; Nevada; New Mexico; South Dakota; Utah; and Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured | Id. | Glenda Cooper (KY); Mary McLean (VA); Robin Roberts (VA); |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | using Mylan Defendants' API). | | |
| Mylan, Teva | MYLTEVCPA5 | All individuals in Indiana; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Mylan Defendants and/or Teva Defendants (limited to VCDs manufactured using Mylan Defendants' API). | Id. | Leland Gildner (IN) |
| Hetero | HETCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; | Any judge or magistrate presiding over this action, and members of their families; <br><br> Defendants and affiliated entities, and their employees, officers, directors, and agents; <br><br> Defendants' legal representatives, assigns, and successors; and, <br><br> All persons who properly execute and file a timely request | Mark Hays (CA); Peter O'Brien (CT); |

Class Definitions and Exclusions Table

| | | Vermont; Washington; and West Virginia, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | for exclusion from any Court-approved class. | |
| Hetero | HETCPA2 | All individuals in Delaware; Kansas; Minnesota; New Jersey; and Wisconsin, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | Id. | James Childs (NJ) |

Class Definitions and Exclusions Table

| Hetero | HETCPA3 | All individuals in Indiana; and Wyoming, who, since at least May 1, 2018, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Hetero Defendants (limited to VCDs manufactured using Hetero Defendants' API). | Id. | Leland Gildner (IN) |
| Aurobindo | AURCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors; and,<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Mark Hays (CA); Merilyn Andre (CA); Elenora Deutenberg/Feijoo (FL); Marlin Anderson (IL); Sandy Bell (LA); Joseph Cacaccio (NY); Gerald Nelson (NY); Dennis Kaplan (OH) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | | |
| Aurobindo | AURCPA2 | All individuals in Delaware; Kansas; Minnesota; New Jersey; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Id. | Joseph Kessinger (KS); Jennifer Johnson (MN); Marzanna Glab (NJ); Antoinette Sims (NJ); James Lawson (NJ); James Childs (NJ) |

Class Definitions and Exclusions Table

| Aurobindo | AURCPA3 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; and Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). | Id. | Lawrence Edwards (GA); Linda Crocker (ME); Veronica Longwell (MA); Eric Erwin (TX) |
| Aurobindo | AURCPA4 | All individuals in Arkansas; Colorado; Kentucky; Nevada; New Mexico; South Dakota; Utah; and Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was manufactured, | Id. | Evelyn Rice (AR) |

Class Definitions and Exclusions Table

|  |  | distributed, or sold by the Aurobindo Defendants (limited to VCDs manufactured using Aurobindo Defendants' API). |  |  |

Class Definitions and Exclusions Table

## RETAIL PHARMACY DEFENDANTS

*Retail Pharmacy Defendants Implied Warranty Claim:*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| Walgreens | WALIW1 | All individuals in Alaska; Colorado; Delaware; Indiana; Oklahoma; and Rhode Island, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walgreens Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;  Defendants and affiliated entities, and their employees, officers, directors, and agents;  Defendants' legal representatives, assigns, and successors;  Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Walgreens prior to May 1, 2018;  All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Raleigh Wolfe (IN) |
| Walmart | WMTIW1 | All individuals in Alaska; Colorado; Delaware; Indiana; Oklahoma; and Rhode Island, who, since | Any judge or magistrate presiding over this action, and members of their families; | Brian Wineinger (IN) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's Club locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Walmart (including Sam's Club locations) prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
| Kroger | KROIW1 | All individuals in Alaska; Colorado; Delaware; Indiana; Oklahoma; and Rhode Island, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors; | Leland Gildner (IN) |

Class Definitions and Exclusions Table

| | | (intended for personal or household use) that was dispensed by Defendant The Kroger, Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Kroger prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|

Class Definitions and Exclusions Table

*Retail Pharmacy Defendants' Consumer Protection Claim:*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| CVS Consumer Protection Act State Grouping No. 1 | CVSCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant CVS Pharmacy, Inc. (including Target locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by CVS prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Jay Meader (CA); Mark Hays (CA); Peter O'Brien (CT); Ron Molinaro (FL); Elenora Deutenberg/Feijoo (FL); Marlin Anderson (IL); Sandy Bell (LA); Lawrence Semmel (PA) |
| CVS Consumer Protection Act State | CVSCPA2 | All individuals in Delaware; Kansas; Minnesota; New Jersey; and Wisconsin, who, since at least January 1, 2012, and | Id. | Marzanna Glab (NJ); James Lawson (NJ) |

Class Definitions and Exclusions Table

| Grouping No. 2 | | through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant CVS Pharmacy, Inc. (including Target locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | | |
| --- | --- | --- | --- | --- |
| CVS Consumer Protection Act State Grouping No. 3 | CVSCPA3 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; amd Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant CVS Pharmacy, Inc. (including Target locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Lawrence Edwards (GA); Veronica Longwell (MA); Brittney Means (TX) |
| Walgreens Consumer Protection Act State Grouping No. 1 | WALCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents; | Elenora Deutenberg/Feijoo (FL); Georgia Fatigato (IL); John Duffy (NY) |

Class Definitions and Exclusions Table

| | | Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walgreens Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Defendants' legal representatives, assigns, and successors; Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Walgreens prior to May 1, 2018; All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| Walgreens Consumer Protection Act State Grouping No. 2 | WALCPA2 | All individuals in Delaware; Kansas; Minnesota; New Jersey; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walgreens Co., and manufactured, distributed, or | Id. | Radhakrishna Shetty (NJ) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | sold by any of the Manufacturer Defendants. | | |
| Walgreens Consumer Protection Act State Grouping No. 3 | WALCPA3 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; and Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walgreens Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Lubertha Powell (GA); Eric Erwin (TX); Brittney Means (TX) |
| Rite-Aid Consumer Protection Act State Grouping No. 1 | RITCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), | Alphonse Borkowski (NY); Joseph Cacaccio (NY); Gerald Nelson (NY); Dennis Kaplan (OH) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Rite-Aid Corporation, and manufactured, distributed, or sold by any of the Manufacturer Defendants. | who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Rite-Aid prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
| Rite-Aid Consumer Protection Act State Grouping No. 2 | RITCPA2 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; and Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Rite-Aid Corporation, and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Lawrence Edwards (GA) |
| Walmart Consumer Protection Act State Grouping No. 1 | WMTCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents; | Talsie Neal (LA); Gary Burnett (NC) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's Club locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Walmart (including Sam's Club locations) prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
| Walmart Consumer Protection Act State Grouping No. 2 | WMTCPA2 | All individuals in Delaware; Kansas; Minnesota; New Jersey; and Wisconsin, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's | Id. | Jennifer Johnson (MN) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | Club locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | | |
| Walmart Consumer Protection Act State Grouping No. 3 | WMTCPA3 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; and Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's Club locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Flora McGilvery (MS); Jynona Gail Lee (TX); Samuel Cisneros (TX) |
| Express Scripts Consumer Protection Act State Grouping No. 1 | ESICPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors; | Mark Hays (CA); Merilyn Andre (CA) |

Class Definitions and Exclusions Table

| | | January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Express Scripts, Inc., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Express Scripts prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
| Kroger Consumer Protection Act State Grouping No. 1 | KROCPA1 | All individuals in Alabama; Georgia; Maine; Massachusetts; Mississippi; and Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant The Kroger, Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this | Asha Lamy (AL) |

Class Definitions and Exclusions Table

| | | | Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Kroger prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| OptumRx Consumer Protection Act State Grouping No. 1 | OPTCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant OptumRx, and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by OptumRx prior to May 1, 2018; | Charlie Johnston (CA) |

Class Definitions and Exclusions Table

| | | | All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| Albertson's Consumer Protection Act State Grouping No. 1 | ALBCPA1 | All individuals in Alaska; Arizona; California (§ 17200 UCL only); Connecticut; D.C.; Florida; Hawaii; Idaho; Illinois; Louisiana; Maryland; Missouri; Montana; Nebraska; New Hampshire; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; South Carolina; Tennessee; Vermont; Washington; and West Virginia, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Albertson's LLC (including Sav-On), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Albertson's (including Sav-On) prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Merilyn Andre (CA) |

Class Definitions and Exclusions Table

*Retail Pharmacy Defendants' Unjust Enrichment Claim:*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| CVS Unjust Enrichment Grouping No. 1 | CVSUE1 | All individuals in Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant CVS Pharmacy, Inc. (including Target locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by CVS prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Brittney Means (TX) |
| CVS Unjust Enrichment Grouping No. 2 | CVSUE2 | All individuals in Arizona; Arkansas; Connecticut; Maryland; Minnesota; Rhode Island; Vermont; and Wyoming, | Id. | Peter O'Brien (CT) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant CVS Pharmacy, Inc. (including Target locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | | |
| CVS Unjust Enrichment Grouping No. 3 | CVSUE3 | All individuals in Alaska; Delaware; Florida; Georgia; Idaho; Nebraska; New Jersey; North Dakota; Ohio; Pennsylvania; Virginia; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant CVS Pharmacy, Inc. (including Target locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Marzanna Glab (NJ); James Lawson (NJ); Ronald Molinaro (FL); Larry Semmel (PA); Lawrence Edwards (GA); Fernando Feijoo (son of Elenora Deutenberg) (FL) |
| CVS Unjust Enrichment | CVSUE4 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; | Id. | Marlin Anderson (IL); Sandy Bell (LA); Mark Hays (CA); Joseph Kessinger (KS); Jay |

Class Definitions and Exclusions Table

| Grouping No. 4 | | Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and, Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant CVS Pharmacy, Inc. (including Target locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | | Meader (CA); Veronica Longwell (MA) |
|---|---|---|---|---|
| Walgreens Unjust Enrichment Grouping No. 1 | WALUE1 | All individuals in Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walgreens Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families; Defendants and affiliated entities, and their employees, officers, directors, and agents; Defendants' legal representatives, assigns, and successors; Individuals whose only valsartan-containing drug | Eric Erwin (TX); Brittney Means (TX) |

Class Definitions and Exclusions Table

| | | | purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Walgreens prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| Walgreens Unjust Enrichment Grouping No. 2 | WALUE2 | All individuals in Alaska; Delaware; Florida; Georgia; Idaho; Nebraska; New Jersey; North Dakota; Ohio; Pennsylvania; Virginia; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walgreens Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Lubertha Powell (GA); Fernando Feijoo (son of Elenora Deutenberg) (FL); Robin Roberts (VA); Radhakrishna Shetty (NJ) |
| Walgreens Unjust | WALUE3 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; | Id. | Marlin Anderson (IL); Billy Joe Bruner (NM); John Duffy (NY); |

Class Definitions and Exclusions Table

| Enrichment Grouping No. 3 | | Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walgreens Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | | Georgia Fatigato (IL); Raleigh Wolfe (IN) |
|---|---|---|---|---|
| Rite-Aid Unjust Enrichment Grouping No. 1 | RITUE1 | All individuals in Alaska; Delaware; Florida; Georgia; Idaho; Nebraska; New Jersey; North Dakota; Ohio; Pennsylvania; Virginia; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors; | Dennis Kaplan (OH); Lawrence Edwards (GA) |

Class Definitions and Exclusions Table

| | | dispensed by Defendant Rite-Aid Corporation, and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Rite-Aid prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| Rite-Aid Unjust Enrichment Grouping No. 2 | RITUE2 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Rite-Aid Corporation, and | Id. | Alphonse Borkowski (NY); Joseph Cacaccio (NY); Gerald Nelson (NY) |

Class Definitions and Exclusions Table

| | | manufactured, distributed, or sold by any of the Manufacturer Defendants. | | |
|---|---|---|---|---|
| Walmart Unjust Enrichment Grouping No. 1 | WMTUE1 | All individuals in Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's Club locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Walmart (including Sam's Club locations) prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Samuel Cisneros (TX); Jyona Gail Lee (TX); |

Class Definitions and Exclusions Table

| Walmart Unjust Enrichment Grouping No. 2 | WMTUE2 | All individuals in Arizona; Arkansas; Connecticut; Maryland; Minnesota; Rhode Island; Vermont; Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's Club locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Jennifer Johnson (MN) |
| Walmart Unjust Enrichment Grouping No. 3 | WMTUE3 | All individuals in Alaska; Delaware; Florida; Georgia; Idaho; Nebraska; New Jersey; North Dakota; Ohio; Pennsylvania; Virginia; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's Club locations), and | Id. | Robin Roberts (VA) |

Class Definitions and Exclusions Table

| | | manufactured, distributed, or sold by any of the Manufacturer Defendants. | | |
|---|---|---|---|---|
| Walmart Unjust Enrichment Grouping No. 4 | WMTUE4 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Walmart Stores, Inc. (including Sam's Club locations), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Id. | Gary Burnett (NC); Flora McGilvery (MS); Talsie Neal (LA); Brian Wineinger (IN) |
| Express Scripts Unjust Enrichment Grouping No. 1 | ESIUE1 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents; | Merilyn Andre (CA); Mark Hays (CA); Veronica Longwell (MA) |

Class Definitions and Exclusions Table

| | | Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Express Scripts, Inc., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Defendants' legal representatives, assigns, and successors;

Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Express Scripts prior to May 1, 2018;

All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
|---|---|---|---|---|
| Kroger Unjust Enrichment Grouping No. 1 | KROUE1 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of | Any judge or magistrate presiding over this action, and members of their families;

Defendants and affiliated entities, and their employees, officers, directors, and agents;

Defendants' legal representatives, assigns, and successors; | Merilyn Andre (CA); Leland Gildner (IN) |

Class Definitions and Exclusions Table

|  |  | final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant The Kroger, Co., and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Kroger prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. |  |
|---|---|---|---|---|
| Optum Rx Unjust Enrichment Grouping No. 1 | OPTUE1 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant OptumRx, and manufactured, | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan- | Charlie Johnston (CA) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | distributed, or sold by any of the Manufacturer Defendants. | containing drugs dispensed by OptumRx prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | |
| Albertson's Unjust Enrichment Grouping No. 1 | ALBUE1 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was dispensed by Defendant Albertson's LLC (including Sav-On), and manufactured, distributed, or sold by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed by Albertson's (including Sav-On) prior to May 1, 2018;<br><br>All persons who properly execute and file a timely | Merilyn Andre (CA) |

Class Definitions and Exclusions Table

| | | | request for exclusion from any Court-approved class. | |
|---|---|---|---|---|

Class Definitions and Exclusions Table

## WHOLESALER DEFENDANTS

### *Wholesaler Defendants Unjust Enrichment Claim*

| Defendant(s) | Subclass Name | Definition | Exclusion(s) | Class Representative(s) |
|---|---|---|---|---|
| Wholesaler Defendants Unjust Enrichment State Grouping No. 1 | WHUE1 | All individuals in Texas, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was distributed in whole or in part by Defendants Cardinal Health, Inc., McKesson Corporation, and/or AmerisourceBergen Corporation, and manufactured in whole or in part by any of the Manufacturer Defendants. | Any judge or magistrate presiding over this action, and members of their families;<br><br>Defendants and affiliated entities, and their employees, officers, directors, and agents;<br><br>Defendants' legal representatives, assigns, and successors;<br><br>Individuals whose only valsartan-containing drug purchases (intended for personal or household use), who would otherwise meet this Class Definition, were Hetero Defendants' valsartan-containing drugs dispensed prior to May 1, 2018;<br><br>All persons who properly execute and file a timely request for exclusion from any Court-approved class. | Eric Erwin (TX); Brittney Means (TX); Jynona Gail Lee (TX); Samuel Cisneros (TX) |
| Wholesaler Defendants | WHUE2 | All individuals in Alabama; and Montana, who, since at least | Id. | Asha Lamy (AL); Sandra Kelly (AL) |

Class Definitions and Exclusions Table

| Unjust Enrichment State Grouping No. 2 | | January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was distributed in whole or in part by Defendants Cardinal Health, Inc., McKesson Corporation, and/or AmerisourceBergen Corporation, and manufactured in whole or in part by any of the Manufacturer Defendants. | | |
|---|---|---|---|---|
| Wholesaler Defendants Unjust Enrichment State Grouping No. 3 | WHUE3 | All individuals in Arizona; Arkansas; Connecticut; Maryland; Minnesota; Rhode Island; Vermont; and Wyoming, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was distributed in whole or in part by Defendants Cardinal Health, Inc., McKesson Corporation, and/or AmerisourceBergen Corporation, and manufactured in whole or in part by any of the Manufacturer Defendants. | Id. | Peter O'Brien (CT); Jennifer Johnson (MN) |
| Wholesaler Defendants Unjust | WHUE4 | All individuals in Alaska; Delaware; Florida; Georgia; Idaho; Nebraska; New Jersey; | Id. | Ron Molinaro (FL); Elenora Deutenberg/Feijoo (FL); Lawrence Edwards (GA); |

61

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| Enrichment State Grouping No. 4 | | North Dakota; Ohio; Pennsylvania; Virginia; and Washington, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was distributed in whole or in part by Defendants Cardinal Health, Inc., McKesson Corporation, and/or AmerisourceBergen Corporation, and manufactured in whole or in part by any of the Manufacturer Defendants. | | Lubertha Powell (GA); Marzanna Glab (NJ); Antoinette Sims (NJ); James Lawson (NJ); James Childs (NJ); Radhakrishna Shetty (NJ); Dennis Kaplan (OH); Lawrence Semmel (PA); Robin Roberts (VA); Mary McLean (VA); Cheryl Mullins (VA) |
| Wholesaler Defendants Unjust Enrichment State Grouping No. 5 | WHUE5 | All individuals in California; Colorado; D.C.; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maine; Massachusetts; Mississippi; Missouri; Nevada; New Mexico; New York; North Carolina; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Utah; and Puerto Rico, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was distributed in whole or in part by | Id. | Jay Meader (CA); Mark Hays (CA); Merilyn Andre (CA); Charlie Johnston (CA); Marlin Anderson (IL); Georgia Fatigato (IL); Brian Wineinger (IN); Raleigh Wolfe (IN); Joseph Kessinger (KS); Talsie Neal (LA); Sandy Bell (LA); Linda Crocker (ME); Veronica Longwell (MA); Flora McGilvery (MS); Billy Joe Bruner (NM); Alphonse Borkowski (NY); John Duffy (NY); Gerald Nelson (NY); Joseph Cacaccio (NY); Gary Burnett (NC); Miranda Dudley (NC) |

Class Definitions and Exclusions Table

| | | | | |
|---|---|---|---|---|
| | | Defendants Cardinal Health, Inc., McKesson Corporation, and/or AmerisourceBergen Corporation, and manufactured in whole or in part by any of the Manufacturer Defendants. | | |
| Wholesaler Defendants Unjust Enrichment State Grouping No. 6 | WHUE6 | All individuals in Kentucky, who, since at least January 1, 2012, and through the date of final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was distributed in whole or in part by Defendants Cardinal Health, Inc., McKesson Corporation, and/or AmerisourceBergen Corporation, and manufactured in whole or in part by any of the Manufacturer Defendants. | Id. | Glenda Cooper (KY) |

**Third Party Payor Class**

a.  A class of all Third-Party Payors that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in the United States for a valsartan-containing drug (intended for personal or household use) that was manufactured, distributed, or sold by any Active Pharmaceutical Ingredient, Finished Dose or Wholesaler Defendant.

**TPP Breach of Express Warranties Subclasses**

a.  A breach of express warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, Arizona, California, Colorado, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Missouri, New Jersey, New Mexico, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Virginia, Washington, West Virginia, or Wyoming for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

b.  A breach of express warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alabama, Arkansas, Georgia, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New York, North Carolina, North Dakota, Ohio, Oregon, Tennessee, Texas, Utah, Vermont, or Wisconsin for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

c.  A breach of express warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Connecticut for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

**Breach of Implied Warranties of Merchantability and Fitness Subclasses**

a.  A breach of implied warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, California, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Maine, Massachusetts, Minnesota, Missouri, New Jersey, New Mexico, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Virginia, or West Virginia for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

b. A breach of implied warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Arkansas, Georgia, Maryland, Michigan, Mississippi, Montana, Nebraska, Nevada, New Hampshire, North Dakota, Texas, or Wyoming for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

c. A breach of implied warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Arizona, Connecticut, Florida, Idaho, Illinois, Iowa, Kansas, Kentucky, New York, North Carolina, or Washington for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

d. A breach of implied warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alabama, Ohio, Oregon, Tennessee, Utah, or Vermont for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

## Fraud Class

a. A fraud class of all TPPs, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, California, Connecticut, Delaware, Georgia, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Nebraska, New Hampshire, New Mexico, North Carolina, Ohio, Pennsylvania, South Carolina, South Dakota, Texas, Utah, West Virginia, or Wisconsin for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

b. A fraud class of all TPPs, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alabama, Arizona, Arkansas, Hawaii, Idaho, Illinois, Minnesota, Mississippi, Missouri, Montana, Nevada, Oregon, or Tennessee for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

c. A fraud class of all TPPs, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Colorado, District of Columbia, Florida, Iowa, Louisiana, New Jersey, New York, North Dakota, Oklahoma, Rhode Island, Vermont, Virginia, Washington, Wyoming, or Puerto Rico for a valsartan-containing drug (intended for personal or household use) that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

## Violation of State Consumer Protection Laws Subclasses

a. A violation of state consumer protection laws subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, Arizona, California, Connecticut, Florida, Hawaii, Idaho, Illinois, Louisiana, Missouri, Nebraska, New Hampshire, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, or Washington that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

b. A violation of state consumer protection laws subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Delaware or Minnesota that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

c. A violation of state consumer protection laws subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Georgia, Maine, Massachusetts, Mississippi, or Texas that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

d. A violation of state consumer protection laws subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Arkansas, Colorado, Kentucky, New Mexico, South Dakota, or Virginia that was manufactured by any Active Pharmaceutical Ingredient or Finished Dose Manufacturer Defendant.

## Unjust Enrichment Subclasses

a. An unjust enrichment subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alabama or Montana for a valsartan-containing drug (intended for personal or household use) that was distributed or sold by any Wholesaler Defendant.

b. An unjust enrichment subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Texas for a valsartan-containing drug (intended for personal or household use) that was distributed or sold by any Wholesaler Defendant.

c. An unjust enrichment subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, Delaware, Florida, Georgia, Idaho, Nebraska, New Jersey, North Dakota, Ohio, Pennsylvania, Virginia, or Washington for a valsartan-containing drug (intended for personal or household use) that was distributed or sold by any Wholesaler Defendant.

d. An unjust enrichment subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Arizona,

Arkansas, Connecticut, Maryland, Minnesota, Rhode Island, Vermont, or Wyoming for a valsartan-containing drug (intended for personal or household use) that was distributed or sold by any Wholesaler Defendant.

e.   An unjust enrichment subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in California, Colorado, District of Columbia, Hawaii, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Massachusetts, Mississippi, Missouri, Nevada, New Mexico, New York, North Carolina, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Utah,  or Puerto Rico for a valsartan-containing drug (intended for personal or household use) that was distributed or sold by any Wholesaler Defendant.

## Exclusions

Excluded from all of TPPs' proposed class definitions are the following: (a) Defendants and affiliated entities; (b) Defendants' assigns, and successors; (c) All federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans; (d) Pharmacy Benefit Managers ("PBMs"); (e) TPPs whose only valsartan-containing drug purchases, who would otherwise meet this Class Definition, were for Hetero Defendants' valsartan-containing drugs dispensed prior May 1, 2018; and (f) All third-party payors who properly execute and file a timely request for exclusion from any Court-approved class.

## Medical Monitoring Class Definitions

Plaintiffs Berkson, Kruk, Rives, Rodich-Annese, and R. Tasker bring this action on

behalf of themselves and, under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), (g), and

(c)(4), as representatives of the Medical Monitoring Independent Claim Class defined as follows:

> All individuals residing in Alaska, Arizona, Colorado, Delaware, District of
> Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Maine, Massachusetts,
> Minnesota, Missouri, Montana, Nevada, New Hampshire, New Mexico, New York,
> North Dakota, Oregon, Pennsylvania, Rhode Island, South Dakota, Utah, Vermont,
> West Virginia, Wyoming and who consumed a sufficiently high Lifetime
> Cumulative Threshold of NDMA, NDEA, or other nitrosamine, in generic
> valsartan-containing drugs manufactured by or for Defendants and marketed in the
> United States and its territories and possessions, at least since January 1, 2012. This
> is the "Medical Monitoring Independent Claim Class."

All Plaintiffs bring this action on behalf of themselves and, under Federal Rule of Civil

Procedure 23(a), (b)(2), (g), and (c)(4), as representatives of the Medical Monitoring Remedy

Class defined as follows:

> All individuals residing in every state, territory, and possessions of the United
> States of America except Mississippi and who consumed a sufficiently high
> Lifetime Cumulative Threshold of NDMA, NDEA, or other nitrosamine,
> in generic valsartan-containing drugs manufactured by or for Defendants and
> marketed in the United States and its territories and possessions, at least since
> January 1, 2012. This is the "Medical Monitoring Remedy Class."

For both the Medical Monitoring Independent Claim Class and Medical Monitoring

Remedy Classes, the determination of whether the class member consumed a Lifetime

Cumulative Threshold sufficient for class membership is based on objective and ascertainable

factors.

Specifically, (A) at a dose of 320 mg, the class member needs to have taken a

combination of three (3) months of ZHP API, OR 18 months of Hetero API, OR 54 months of

Mylan and/or Aurobindo API; (B) at a dose of 160 mg, the class member needs to have taken a

1

combination of six (6) months of ZHP API, OR 32 months of Hetero API, OR 108 months of

Mylan and/or Aurobindo API; (C) at a dose of 80 mg, the class member needs to have taken a

combination of 12 months of ZHP API, OR 64 months of Hetero API, OR 216 months of Mylan

and/or Aurobindo API; and (D) at a dose of 40 mg, the class member needs to have taken a

combination of 24 months of ZHP API, OR 128 months of Hetero API, OR 432 months of

Mylan and/or Aurobindo API;

The reference to combination above means that the class member need not have only

taken Valsartan manufactured by only one manufacturer. For example, by way of illustration

only, a class member who was prescribed 320 mg and who consumed two (2) months of ZHP

APO and six (6) months of Hetero API qualifies.

Excluded from the Independent Claim and Remedy Classes, and from the other

additional and alternative classes defined below, are Defendants and their subsidiaries and

affiliates; all persons who make a timely election to be excluded from the Classes to the extent

any class is an opt-out class or a hybrid opt-out class; governmental entities; and any judicial

officers who preside over this case and their immediate family members. Also excluded from the

Classes are those consumers of VCDs who have been diagnosed with cancers as a result of

taking Defendants' NDMA-, NDEA-, or other nitrosamine-contaminated VCDs.

# Exhibit B

## NDC List of Valsartan
## Containing Drugs

**Exhibit B**
**NDC List of Valsartan Drugs**

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 1 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN | AUROBINDO PHARM | 65862073730 |
| 2 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN | AUROBINDO PHARM | 65862073830 |
| 3 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN | AUROBINDO PHARM | 65862073930 |
| 4 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN | AUROBINDO PHARM | 65862074030 |
| 5 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | AUROBINDO PHARM | 65862083430 |
| 6 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | AUROBINDO PHARM | 65862083530 |
| 7 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | AUROBINDO PHARM | 65862083630 |
| 8 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | AUROBINDO PHARM | 65862083730 |
| 9 | Aurobindo Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | AUROBINDO PHARM | 65862083830 |
| 10 | Aurobindo Manufactured Drugs | VALSARTAN | ACETRIS HEALTH | 52343012230 |
| 11 | Aurobindo Manufactured Drugs | VALSARTAN | ACETRIS HEALTH | 52343012390 |
| 12 | Aurobindo Manufactured Drugs | VALSARTAN | ACETRIS HEALTH | 52343012490 |
| 13 | Aurobindo Manufactured Drugs | VALSARTAN | ACETRIS HEALTH | 52343012590 |
| 14 | Aurobindo Manufactured Drugs | VALSARTAN | AMERICAN HLTH PKG | 60687013901 |
| 15 | Aurobindo Manufactured Drugs | VALSARTAN | AMERICAN HLTH PKG | 60687013911 |
| 16 | Aurobindo Manufactured Drugs | VALSARTAN | AUROBINDO PHARM | 65862057030 |
| 17 | Aurobindo Manufactured Drugs | VALSARTAN | AUROBINDO PHARM | 65862057190 |
| 18 | Aurobindo Manufactured Drugs | VALSARTAN | AUROBINDO PHARM | 65862057290 |
| 19 | Aurobindo Manufactured Drugs | VALSARTAN | AUROBINDO PHARM | 65862057390 |
| 20 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862054790 |
| 21 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862054799 |
| 22 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862054890 |
| 23 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862054899 |
| 24 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862054990 |
| 25 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862054999 |
| 26 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862055005 |
| 27 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862055090 |
| 28 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862055105 |
| 29 | Aurobindo Manufactured Drugs | VALSARTAN-HCTZ | AUROBINDO PHARM | 65862055190 |
| 30 | Hetero Labs Manufactured Drugs | VALSARTAN | AVPAK | 50268078315 |
| 31 | Hetero Labs Manufactured Drugs | VALSARTAN | AVPAK | 50268078415 |
| 32 | Hetero Labs Manufactured Drugs | VALSARTAN | AVPAK | 50268078515 |
| 33 | Hetero Labs Manufactured Drugs | VALSARTAN | AVPAK | 50268078613 |
| 34 | Hetero Labs Manufactured Drugs | VALSARTAN | CAMBER PHARM | 31722074530 |
| 35 | Hetero Labs Manufactured Drugs | VALSARTAN | CAMBER PHARM | 31722074690 |
| 36 | Hetero Labs Manufactured Drugs | VALSARTAN | CAMBER PHARM | 31722074790 |
| 37 | Hetero Labs Manufactured Drugs | VALSARTAN | CAMBER PHARM | 31722074890 |
| 38 | Mylan Manufactured Drugs | AMLODIPINE VALSARTAN | MYLAN | 00378172193 |
| 39 | Mylan Manufactured Drugs | AMLODIPINE VALSARTAN | MYLAN | 00378172293 |
| 40 | Mylan Manufactured Drugs | AMLODIPINE VALSARTAN | MYLAN | 00378172393 |
| 41 | Mylan Manufactured Drugs | AMLODIPINE VALSARTAN | MYLAN | 00378172493 |
| 42 | Mylan Manufactured Drugs | VALSARTAN | MYLAN | 00378580793 |
| 43 | Mylan Manufactured Drugs | VALSARTAN | MYLAN | 00378581377 |
| 44 | Mylan Manufactured Drugs | VALSARTAN | MYLAN | 00378581477 |
| 45 | Mylan Manufactured Drugs | VALSARTAN | MYLAN | 00378581577 |
| 46 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632105 |
| 47 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632177 |
| 48 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632205 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 49 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632277 |
| 50 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632305 |
| 51 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632377 |
| 52 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632405 |
| 53 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632477 |
| 54 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632505 |
| 55 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN | 00378632577 |
| 56 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN INSTITUTION | 51079019203 |
| 57 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN INSTITUTION | 51079019303 |
| 58 | Mylan Manufactured Drugs | VALSARTAN-HCTZ | MYLAN INSTITUTION | 51079019403 |
| 59 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | A-S MEDICATION | 50090247100 |
| 60 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | A-S MEDICATION | 50090320900 |
| 61 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | A-S MEDICATION | 54569668200 |
| 62 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020530 |
| 63 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020590 |
| 64 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020630 |
| 65 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020690 |
| 66 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020730 |
| 67 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020790 |
| 68 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020830 |
| 69 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | ALEMBIC PHARM | 62332020890 |
| 70 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291002030 |
| 71 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291002130 |
| 72 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291002230 |
| 73 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291002330 |
| 74 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291012630 |
| 75 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291012730 |
| 76 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291012830 |
| 77 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | AV KARE INC | 42291012930 |
| 78 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008003 |
| 79 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008009 |
| 80 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008103 |
| 81 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008109 |
| 82 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008203 |
| 83 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008209 |
| 84 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008303 |
| 85 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 43386008309 |
| 86 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 68180076406 |
| 87 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 68180076506 |
| 88 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 68180076606 |
| 89 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | LUPIN PHARMA | 68180076706 |
| 90 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | PAR PHARM | 49884057411 |
| 91 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | PAR PHARM | 49884057511 |
| 92 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | PAR PHARM | 49884057611 |
| 93 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | PAR PHARM | 49884057711 |
| 94 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | SANDOZ | 00781561531 |
| 95 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | SANDOZ | 00781562831 |
| 96 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | SANDOZ | 00781563931 |
| 97 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | SANDOZ | 00781564331 |
| 98 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | TRIGEN LABS | 13811068530 |
| 99 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | TRIGEN LABS | 13811068630 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 100 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | TRIGEN LABS | 13811068730 |
| 101 | Non-Defendant Drugs | AMLODIPINE VALSARTAN | TRIGEN LABS | 13811068830 |
| 102 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077106 |
| 103 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077109 |
| 104 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077206 |
| 105 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077209 |
| 106 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077306 |
| 107 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077309 |
| 108 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077406 |
| 109 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077409 |
| 110 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077506 |
| 111 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | LUPIN PHARMA | 68180077509 |
| 112 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017209 |
| 113 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017211 |
| 114 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017309 |
| 115 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017311 |
| 116 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017409 |
| 117 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017411 |
| 118 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017509 |
| 119 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884017511 |
| 120 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884018509 |
| 121 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | PAR PHARM | 49884018511 |
| 122 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | SANDOZ | 00781575631 |
| 123 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | SANDOZ | 00781576031 |
| 124 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | SANDOZ | 00781577131 |
| 125 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | SANDOZ | 00781578731 |
| 126 | Non-Defendant Drugs | AMLODIPINE VALSARTAN-HCTZ | SANDOZ | 00781579431 |
| 127 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090242400 |
| 128 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090242401 |
| 129 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090243300 |
| 130 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090243301 |
| 131 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090251800 |
| 132 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090251801 |
| 133 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090255000 |
| 134 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090287700 |
| 135 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090287701 |
| 136 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090310800 |
| 137 | Non-Defendant Drugs | VALSARTAN | A-S MEDICATION | 50090310801 |
| 138 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004430 |
| 139 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004490 |
| 140 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004571 |
| 141 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004590 |
| 142 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004671 |
| 143 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004690 |
| 144 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004771 |
| 145 | Non-Defendant Drugs | VALSARTAN | ALEMBIC PHARM | 62332004790 |
| 146 | Non-Defendant Drugs | VALSARTAN | AMERICAN HLTH PKG | 60687012801 |
| 147 | Non-Defendant Drugs | VALSARTAN | AMERICAN HLTH PKG | 60687012811 |
| 148 | Non-Defendant Drugs | VALSARTAN | AMERICAN HLTH PKG | 68084080401 |
| 149 | Non-Defendant Drugs | VALSARTAN | AMERICAN HLTH PKG | 68084080411 |
| 150 | Non-Defendant Drugs | VALSARTAN | AMERICAN HLTH PKG | 68084082201 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 151 | Non-Defendant Drugs | VALSARTAN | AMERICAN HLTH PKG | 68084082211 |
| 152 | Non-Defendant Drugs | VALSARTAN | AMNEAL PHARM | 65162083703 |
| 153 | Non-Defendant Drugs | VALSARTAN | AMNEAL PHARM | 65162083809 |
| 154 | Non-Defendant Drugs | VALSARTAN | AMNEAL PHARM | 65162083909 |
| 155 | Non-Defendant Drugs | VALSARTAN | AMNEAL PHARM | 65162084009 |
| 156 | Non-Defendant Drugs | VALSARTAN | APHENA PHARMA SOL | 43353005917 |
| 157 | Non-Defendant Drugs | VALSARTAN | APHENA PHARMA SOL | 43353006783 |
| 158 | Non-Defendant Drugs | VALSARTAN | APHENA PHARMA SOL | 43353022517 |
| 159 | Non-Defendant Drugs | VALSARTAN | APHENA PHARMA SOL | 43353022530 |
| 160 | Non-Defendant Drugs | VALSARTAN | APHENA PHARMA SOL | 43353023130 |
| 161 | Non-Defendant Drugs | VALSARTAN | APHENA PHARMA SOL | 43353023183 |
| 162 | Non-Defendant Drugs | VALSARTAN | APHENA PHARMA SOL | 43353023279 |
| 163 | Non-Defendant Drugs | VALSARTAN | ASCEND LABS | 67877041530 |
| 164 | Non-Defendant Drugs | VALSARTAN | ASCEND LABS | 67877041690 |
| 165 | Non-Defendant Drugs | VALSARTAN | ASCEND LABS | 67877041790 |
| 166 | Non-Defendant Drugs | VALSARTAN | ASCEND LABS | 67877041890 |
| 167 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291085630 |
| 168 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291085790 |
| 169 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291085890 |
| 170 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291085990 |
| 171 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291087690 |
| 172 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291087710 |
| 173 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291087790 |
| 174 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291087890 |
| 175 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291087950 |
| 176 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291087990 |
| 177 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291088090 |
| 178 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291088110 |
| 179 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291088190 |
| 180 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291088210 |
| 181 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291088290 |
| 182 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291088350 |
| 183 | Non-Defendant Drugs | VALSARTAN | AV KARE INC | 42291088390 |
| 184 | Non-Defendant Drugs | VALSARTAN | AVPAK | 50268078311 |
| 185 | Non-Defendant Drugs | VALSARTAN | AVPAK | 50268078511 |
| 186 | Non-Defendant Drugs | VALSARTAN | AVPAK | 50268078611 |
| 187 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335009704 |
| 188 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335009705 |
| 189 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335047502 |
| 190 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335048801 |
| 191 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335048802 |
| 192 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335055301 |
| 193 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335055302 |
| 194 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335055502 |
| 195 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335055503 |
| 196 | Non-Defendant Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335060003 |
| 197 | Non-Defendant Drugs | VALSARTAN | DIRECT RX, LLC | 72189005030 |
| 198 | Non-Defendant Drugs | VALSARTAN | JUBILANT CADISTA | 59746036030 |
| 199 | Non-Defendant Drugs | VALSARTAN | JUBILANT CADISTA | 59746036190 |
| 200 | Non-Defendant Drugs | VALSARTAN | JUBILANT CADISTA | 59746036290 |
| 201 | Non-Defendant Drugs | VALSARTAN | JUBILANT CADISTA | 59746036390 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 202 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027601 |
| 203 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027606 |
| 204 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027703 |
| 205 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027709 |
| 206 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027803 |
| 207 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027809 |
| 208 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027902 |
| 209 | Non-Defendant Drugs | VALSARTAN | LUPIN PHARMA | 68180027909 |
| 210 | Non-Defendant Drugs | VALSARTAN | MACLEODS PHARMA | 33342006207 |
| 211 | Non-Defendant Drugs | VALSARTAN | MACLEODS PHARMA | 33342006310 |
| 212 | Non-Defendant Drugs | VALSARTAN | MACLEODS PHARMA | 33342006410 |
| 213 | Non-Defendant Drugs | VALSARTAN | MACLEODS PHARMA | 33342006510 |
| 214 | Non-Defendant Drugs | VALSARTAN | PAR PHARM | 00603634002 |
| 215 | Non-Defendant Drugs | VALSARTAN | PAR PHARM | 00603634102 |
| 216 | Non-Defendant Drugs | VALSARTAN | PAR PHARM | 00603634128 |
| 217 | Non-Defendant Drugs | VALSARTAN | PAR PHARM | 00603634202 |
| 218 | Non-Defendant Drugs | VALSARTAN | PAR PHARM | 00603634228 |
| 219 | Non-Defendant Drugs | VALSARTAN | PAR PHARM | 00603634302 |
| 220 | Non-Defendant Drugs | VALSARTAN | PAR PHARM | 00603634328 |
| 221 | Non-Defendant Drugs | VALSARTAN | PREFERRED PHARMA | 68788681403 |
| 222 | Non-Defendant Drugs | VALSARTAN | PREFERRED PHARMA | 68788681406 |
| 223 | Non-Defendant Drugs | VALSARTAN | PREFERRED PHARMA | 68788688203 |
| 224 | Non-Defendant Drugs | VALSARTAN | PREFERRED PHARMA | 68788688209 |
| 225 | Non-Defendant Drugs | VALSARTAN | PROFICIENT RX | 71205030190 |
| 226 | Non-Defendant Drugs | VALSARTAN | QUALITY CARE PRODS | 55700034630 |
| 227 | Non-Defendant Drugs | VALSARTAN | QUALITY CARE PRODS | 55700034730 |
| 228 | Non-Defendant Drugs | VALSARTAN | SANDOZ | 00781560731 |
| 229 | Non-Defendant Drugs | VALSARTAN | SANDOZ | 00781560892 |
| 230 | Non-Defendant Drugs | VALSARTAN | SANDOZ | 00781561892 |
| 231 | Non-Defendant Drugs | VALSARTAN | SANDOZ | 00781561992 |
| 232 | Non-Defendant Drugs | VALSARTAN | SUN PHARMACEUTICAL | 51660014030 |
| 233 | Non-Defendant Drugs | VALSARTAN | SUN PHARMACEUTICAL | 51660014190 |
| 234 | Non-Defendant Drugs | VALSARTAN | SUN PHARMACEUTICAL | 51660014290 |
| 235 | Non-Defendant Drugs | VALSARTAN | SUN PHARMACEUTICAL | 51660014390 |
| 236 | Non-Defendant Drugs | VALSARTAN | UNICHEM PHARM USA | 29300023213 |
| 237 | Non-Defendant Drugs | VALSARTAN | UNICHEM PHARM USA | 29300023319 |
| 238 | Non-Defendant Drugs | VALSARTAN | UNICHEM PHARM USA | 29300023419 |
| 239 | Non-Defendant Drugs | VALSARTAN | UNICHEM PHARM USA | 29300023519 |
| 240 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 50090141200 |
| 241 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 50090142000 |
| 242 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 50090142200 |
| 243 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 50090264000 |
| 244 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 50090329200 |
| 245 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 54569648500 |
| 246 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 54569648600 |
| 247 | Non-Defendant Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 54569648700 |
| 248 | Non-Defendant Drugs | VALSARTAN-HCTZ | AIDAREX PHARM | 53217011400 |
| 249 | Non-Defendant Drugs | VALSARTAN-HCTZ | AIDAREX PHARM | 53217011460 |
| 250 | Non-Defendant Drugs | VALSARTAN-HCTZ | AIDAREX PHARM | 53217011490 |
| 251 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332007971 |
| 252 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332007990 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 253 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008071 |
| 254 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008090 |
| 255 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008171 |
| 256 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008190 |
| 257 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008271 |
| 258 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008290 |
| 259 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008371 |
| 260 | Non-Defendant Drugs | VALSARTAN-HCTZ | ALEMBIC PHARM | 62332008390 |
| 261 | Non-Defendant Drugs | VALSARTAN-HCTZ | AMERICAN HLTH PKG | 68084081725 |
| 262 | Non-Defendant Drugs | VALSARTAN-HCTZ | AMERICAN HLTH PKG | 68084083425 |
| 263 | Non-Defendant Drugs | VALSARTAN-HCTZ | AMERICAN HLTH PKG | 68084092611 |
| 264 | Non-Defendant Drugs | VALSARTAN-HCTZ | AMERICAN HLTH PKG | 68084092621 |
| 265 | Non-Defendant Drugs | VALSARTAN-HCTZ | APHENA PHARMA SOL | 71610032760 |
| 266 | Non-Defendant Drugs | VALSARTAN-HCTZ | APOTEX CORP | 60505380609 |
| 267 | Non-Defendant Drugs | VALSARTAN-HCTZ | APOTEX CORP | 60505380709 |
| 268 | Non-Defendant Drugs | VALSARTAN-HCTZ | APOTEX CORP | 60505380809 |
| 269 | Non-Defendant Drugs | VALSARTAN-HCTZ | APOTEX CORP | 60505380909 |
| 270 | Non-Defendant Drugs | VALSARTAN-HCTZ | APOTEX CORP | 60505381009 |
| 271 | Non-Defendant Drugs | VALSARTAN-HCTZ | AVPAK | 50268079015 |
| 272 | Non-Defendant Drugs | VALSARTAN-HCTZ | AVPAK | 50268079111 |
| 273 | Non-Defendant Drugs | VALSARTAN-HCTZ | AVPAK | 50268079115 |
| 274 | Non-Defendant Drugs | VALSARTAN-HCTZ | AVPAK | 50268079211 |
| 275 | Non-Defendant Drugs | VALSARTAN-HCTZ | AVPAK | 50268079215 |
| 276 | Non-Defendant Drugs | VALSARTAN-HCTZ | AVPAK | 50268079315 |
| 277 | Non-Defendant Drugs | VALSARTAN-HCTZ | AVPAK | 50268079415 |
| 278 | Non-Defendant Drugs | VALSARTAN-HCTZ | BRYANT RANCH PREPK | 71335022702 |
| 279 | Non-Defendant Drugs | VALSARTAN-HCTZ | BRYANT RANCH PREPK | 71335054702 |
| 280 | Non-Defendant Drugs | VALSARTAN-HCTZ | DIRECT RX, LLC | 61919063430 |
| 281 | Non-Defendant Drugs | VALSARTAN-HCTZ | DIRECT RX, LLC | 61919063490 |
| 282 | Non-Defendant Drugs | VALSARTAN-HCTZ | DIRECT RX, LLC | 61919076030 |
| 283 | Non-Defendant Drugs | VALSARTAN-HCTZ | DIRECT RX, LLC | 61919079030 |
| 284 | Non-Defendant Drugs | VALSARTAN-HCTZ | DIRECT RX, LLC | 61919097230 |
| 285 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609403 |
| 286 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609503 |
| 287 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609509 |
| 288 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609603 |
| 289 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609609 |
| 290 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609703 |
| 291 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609709 |
| 292 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258609803 |
| 293 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258696609 |
| 294 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258696709 |
| 295 | Non-Defendant Drugs | VALSARTAN-HCTZ | DISPENSING SOLUTIO | 68258696909 |
| 296 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010102 |
| 297 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010109 |
| 298 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010202 |
| 299 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010209 |
| 300 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010302 |
| 301 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010309 |
| 302 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010402 |
| 303 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010409 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 304 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010502 |
| 305 | Non-Defendant Drugs | VALSARTAN-HCTZ | LUPIN PHARMA | 68180010509 |
| 306 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007410 |
| 307 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007444 |
| 308 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007510 |
| 309 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007515 |
| 310 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007610 |
| 311 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007615 |
| 312 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007710 |
| 313 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007715 |
| 314 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007810 |
| 315 | Non-Defendant Drugs | VALSARTAN-HCTZ | MACLEODS PHARMA | 33342007815 |
| 316 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634502 |
| 317 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634528 |
| 318 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634602 |
| 319 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634628 |
| 320 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634702 |
| 321 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634728 |
| 322 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634802 |
| 323 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634828 |
| 324 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634902 |
| 325 | Non-Defendant Drugs | VALSARTAN-HCTZ | PAR PHARM | 00603634928 |
| 326 | Non-Defendant Drugs | VALSARTAN-HCTZ | PHYSICIAN PARTNER | 42254043530 |
| 327 | Non-Defendant Drugs | VALSARTAN-HCTZ | PHYSICIAN PARTNER | 42254043590 |
| 328 | Non-Defendant Drugs | VALSARTAN-HCTZ | PREFERRED PHARMA | 68788679302 |
| 329 | Non-Defendant Drugs | VALSARTAN-HCTZ | PREFERRED PHARMA | 68788679303 |
| 330 | Non-Defendant Drugs | VALSARTAN-HCTZ | PREFERRED PHARMA | 68788679308 |
| 331 | Non-Defendant Drugs | VALSARTAN-HCTZ | PREFERRED PHARMA | 68788679309 |
| 332 | Non-Defendant Drugs | VALSARTAN-HCTZ | PREFERRED PHARMA | 68788681303 |
| 333 | Non-Defendant Drugs | VALSARTAN-HCTZ | PREFERRED PHARMA | 68788681308 |
| 334 | Non-Defendant Drugs | VALSARTAN-HCTZ | PREFERRED PHARMA | 68788681309 |
| 335 | Non-Defendant Drugs | VALSARTAN-HCTZ | PROFICIENT RX | 63187094330 |
| 336 | Non-Defendant Drugs | VALSARTAN-HCTZ | PROFICIENT RX | 71205000490 |
| 337 | Non-Defendant Drugs | VALSARTAN-HCTZ | PROFICIENT RX | 71205001590 |
| 338 | Non-Defendant Drugs | VALSARTAN-HCTZ | PROFICIENT RX | 71205004290 |
| 339 | Non-Defendant Drugs | VALSARTAN-HCTZ | PROFICIENT RX | 71205025830 |
| 340 | Non-Defendant Drugs | VALSARTAN-HCTZ | PROFICIENT RX | 71205025890 |
| 341 | Non-Defendant Drugs | VALSARTAN-HCTZ | QUALITY CARE PRODS | 35356097630 |
| 342 | Non-Defendant Drugs | VALSARTAN-HCTZ | QUALITY CARE PRODS | 55700001430 |
| 343 | Non-Defendant Drugs | VALSARTAN-HCTZ | QUALITY CARE PRODS | 55700002330 |
| 344 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781594810 |
| 345 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781594892 |
| 346 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781594910 |
| 347 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781594964 |
| 348 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781594992 |
| 349 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595010 |
| 350 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595064 |
| 351 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595092 |
| 352 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595110 |
| 353 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595164 |
| 354 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595192 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|---|---|---|---|
| 355 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595210 |
| 356 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595264 |
| 357 | Non-Defendant Drugs | VALSARTAN-HCTZ | SANDOZ | 00781595292 |
| 358 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769056 |
| 359 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769098 |
| 360 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769156 |
| 361 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769198 |
| 362 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769256 |
| 363 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769298 |
| 364 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769356 |
| 365 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN | TEVA PHARMACEUTICA | 00093769398 |
| 366 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093703756 |
| 367 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093703798 |
| 368 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093703856 |
| 369 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093703898 |
| 370 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093780756 |
| 371 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093780798 |
| 372 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093780956 |
| 373 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093780998 |
| 374 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093781056 |
| 375 | Teva Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00093781098 |
| 376 | Teva Manufactured Drugs | VALSARTAN | BRYANT RANCH PREPK | 71335056702 |
| 377 | Teva Manufactured Drugs | VALSARTAN | MAJOR PHARM | 00904659461 |
| 378 | Teva Manufactured Drugs | VALSARTAN | MAJOR PHARM | 00904659561 |
| 379 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00093743156 |
| 380 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00093743298 |
| 381 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00093743398 |
| 382 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00093743498 |
| 383 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591216719 |
| 384 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591216730 |
| 385 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591216810 |
| 386 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591216819 |
| 387 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591216910 |
| 388 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591216919 |
| 389 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591217005 |
| 390 | Teva Manufactured Drugs | VALSARTAN | TEVA PHARMACEUTICA | 00591217019 |
| 391 | Teva Manufactured Drugs | VALSARTAN-HCTZ | A-S MEDICATION | 54569648001 |
| 392 | Teva Manufactured Drugs | VALSARTAN-HCTZ | AV KARE INC | 42291088490 |
| 393 | Teva Manufactured Drugs | VALSARTAN-HCTZ | AV KARE INC | 42291088590 |
| 394 | Teva Manufactured Drugs | VALSARTAN-HCTZ | AV KARE INC | 42291088690 |
| 395 | Teva Manufactured Drugs | VALSARTAN-HCTZ | AV KARE INC | 42291088790 |
| 396 | Teva Manufactured Drugs | VALSARTAN-HCTZ | AV KARE INC | 42291088890 |
| 397 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231510 |
| 398 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231519 |
| 399 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231610 |
| 400 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231619 |
| 401 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231710 |
| 402 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231719 |
| 403 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231819 |
| 404 | Teva Manufactured Drugs | VALSARTAN-HCTZ | TEVA PHARMACEUTICA | 00591231919 |
| 405 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN | TORRENT PHARM | 13668020430 |

| # | ENTITY | PRODUCT_NAME | MFR_NAME | NDC |
|---|--------|--------------|----------|-----|
| 406 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN | TORRENT PHARM | 13668020530 |
| 407 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN | TORRENT PHARM | 13668020630 |
| 408 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN | TORRENT PHARM | 13668020730 |
| 409 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TORRENT PHARM | 13668032530 |
| 410 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TORRENT PHARM | 13668032630 |
| 411 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TORRENT PHARM | 13668032730 |
| 412 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TORRENT PHARM | 13668032830 |
| 413 | Torrent Manufactured Drugs | AMLODIPINE VALSARTAN-HCTZ | TORRENT PHARM | 13668032930 |
| 414 | Torrent Manufactured Drugs | VALSARTAN | TORRENT PHARM | 13668006730 |
| 415 | Torrent Manufactured Drugs | VALSARTAN | TORRENT PHARM | 13668006890 |
| 416 | Torrent Manufactured Drugs | VALSARTAN | TORRENT PHARM | 13668006990 |
| 417 | Torrent Manufactured Drugs | VALSARTAN | TORRENT PHARM | 13668007090 |
| 418 | ZHP Manufactured Drugs | VALSARTAN | A-S MEDICATION | 54569658200 |
| 419 | ZHP Manufactured Drugs | VALSARTAN | A-S MEDICATION | 54569658300 |
| 420 | ZHP Manufactured Drugs | VALSARTAN | SOLCO HEALTHCARE | 43547036703 |
| 421 | ZHP Manufactured Drugs | VALSARTAN | SOLCO HEALTHCARE | 43547036809 |
| 422 | ZHP Manufactured Drugs | VALSARTAN | SOLCO HEALTHCARE | 43547036909 |
| 423 | ZHP Manufactured Drugs | VALSARTAN | SOLCO HEALTHCARE | 43547037009 |
| 424 | ZHP Manufactured Drugs | VALSARTAN-HCTZ | SOLCO HEALTHCARE | 43547031109 |
| 425 | ZHP Manufactured Drugs | VALSARTAN-HCTZ | SOLCO HEALTHCARE | 43547031209 |
| 426 | ZHP Manufactured Drugs | VALSARTAN-HCTZ | SOLCO HEALTHCARE | 43547031309 |
| 427 | ZHP Manufactured Drugs | VALSARTAN-HCTZ | SOLCO HEALTHCARE | 43547031409 |
| 428 | ZHP Manufactured Drugs | VALSARTAN-HCTZ | SOLCO HEALTHCARE | 43547031509 |

# Exhibit C

## Curriculum Vitae for Laura Craft



**Laura R. Craft**

President and Director of Contract Analytics

Direct: (510) 463-0133
lcraft@onpointanalytics.com

**OnPoint Analytics**

### President, 2004– Present:

**Laura Craft** is a co-founder of OnPoint Analytics, Inc., an economic and statistical consulting firm specializing in database services, and has served as its President since 2004. She is an expert in the pharmaceutical industry and has over 30 years of experience overseeing the preparation and presentation of expert testimony, including industry research, data collection and quantitative analyses, report drafting and quality assurance, data visualizations, and creation of other demonstrative aids. Her engagements range from pre-litigation settlement analyses, white paper submissions, mediations, arbitrations, USPTO proceedings, ITC investigations, and civil litigation in federal and state courts. Her subject matter expertise emphasizes pharmaceuticals, insurance, antitrust, intellectual property, patent validity and damages (including secondary indicia of validity), irreparable injury and estimation of the effects of competition among drugs. Many of the cases she has been responsible for overseeing are class actions requiring analyses of common impact, class-wide damage methodologies, use of proof common to the class, identification of class members and others excluded from the class, and predominance of common questions. She is frequently involved in analyzing formulary response to generic entry and the resulting impact on market shares.

In her role at OnPoint, Laura supervises a staff of Ph.D economists, statisticians, data base technicians, and research analysts. She determines the company's investments in hardware and software infrastructure to support large, multi-faceted database development and rapid statistical programming. Her work on over 60 pharmaceutical cases, both as a testifying expert and project manager, spans almost all major classes of drug treatments. In addition to testifying, she works directly with clients to:

- Develop discovery requests contoured to each case to assure that necessary data is obtained in workable form;
- Procure data from third-party sources including industry participants, commercial data aggregators, and government data repositories;
- Define class membership and test the adequacy of data to specifically identify participants;
- Develop (in concert with experts) and oversee the implementation of analytical frameworks to estimate actual or projected economic losses and the potential for irreparable injury;
- Assure reliability of data and modeling results;
- Incorporate findings into reports, declarations and white papers as needed;
- Design demonstratives, tutorials and other presentations to assist triers of fact in understanding complex material.

## PUBLICATIONS

Empirical Challenges in Pharma Litigation, Craft, Kovach, Wallace and Cortez (2017)

"The IMS-Quintiles Merger: A Window Into the Future of Pharmaceutical R&D" (April 2018)

"Biologics Exclusivity and the TPP" (October 2015)

"Biosimilar Conversion: How Slippery is the Slope?" (August 2015)

"Amgen v. Sandoz—Let's Just Agree to Disagree" (July 2015)

## EXPERT TESTIMONY

*Peter Staley, et al.* v. *Gilead Sciences, Inc., et al. (End-Payor Actions)*
Hilliard & Shadowen, LLP (2021–)
- Expert Report

*In re: Novartis and Par Antitrust Litigation (End-Payor Actions)*
Labaton Sucharow LLP (2021–)
- Expert Declaration

*In re: Ranbaxy Generic Drug Application Antitrust Litigation*
Lowey Dannenberg, P.C. (2020–)
- Expert Reports, Deposition Testimony

*In re: Niaspan Antitrust Litigation (End Payor Actions)*
Wexler Wallace, LLP (2018–)
- Expert Declarations, Deposition Testimony

*In re: Namenda Indirect Purchaser Antitrust Litigation*
Miller Law LLC (2020–)
- Expert Declarations, Deposition Testimony

*In re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*
Zwerling, Schachter & Zwerling, LLP (2019–)
- Expert Declarations, Deposition Testimony, Class Certification Hearing Testimony

*In re: Zetia (Ezetimibe) Antitrust Litigation (End-Payor Actions)*
Miller Law (2019–)
- Expert Declarations, Deposition Testimony, Class Certification Hearing Testimony

*In re: Opana ER Antitrust Litigation (End-Payor Actions)*
Labaton Sucharow (2019)
- Expert Report, Deposition Testimony

*In re: Loestrin Antitrust Litigation (End Payor Actions)*
Cohen Milstein Sellers & Toll PLLC (2018)
- Expert Declaration, Deposition Testimony, Class Certification Hearing Testimony

*In re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation (End Payor Actions)*
Wexler Wallace, LLP (2018–)
- Expert Declaration, Deposition Testimony

Laura R. Craft
Page 3 of 3

## TEACHING

Instructor for Continuing Legal Education programs certified in major jurisdictions throughout the U.S. involving:

- Data and empirical issues in pharmaceutical litigation

- Antitrust claims involving pharmaceutical products

- Estimation of intellectual property damages

## EDUCATION

University of California, Hastings College of the Law
*Juris Doctor (J.D.)* | 1980

University of California, Los Angeles
*Bachelor of Arts (B.A.)* | 1977 | Cum Laude

# Exhibit D

## Materials Relied Upon

**Pleadings and Court Opinions**

*In re Loestrin24 FE Antitrust Litig.,* 410 F. Supp. 3d 352, 400 (D.R.I. 2019)

*In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-cv-6549, 2021 U.S. Dist. LEXIS 26566, S.D.N.Y. Feb. 11, 2021

*In re Niaspan Antitrust Litig.*, Case Nos. 13-md-2460 (E.D. Pa.) and 21-8042 (Third Circuit)

*In re Novartis and Par Antitrust Litigation*, Case No. 1:18-cv-04361, U.S. District Court for the Southern District of New York

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, U.S. Dist. E.D.N.Y., Case No. 18-MD-2819, May 5, 2020, LEXIS 82725

*In Re: Zetia (Ezetimibe) Antitrust Litigation*, 2:18-md-2836, U.S. District Court for the Eastern District of Virginia, August 20, 2021

Order granting leave to appeal, October 7, 2021, U.S. Court of Appeals for the Third Circuit, Case No. 21-8042 (now docketed as pending Case No. 21-2895)

Order, September 30, 2021, U.S. Court of Appeals for the Fourth Circuit, Case No. 21-258

*Staley, et al. v. Gilead Sciences, Inc., et al.,* 3:19-cv-2573, U.S. District Court for the Northern District of California

Third Amended Consolidated Economic Loss Class Action Complaint, filed November 1, 2021


**Statutes and Regulations**

42 U.S.C. §300ff, et seq.

45 CFR §162 (2003)

CFR §423.505(d)

FDA, "Title II of the Drug Quality and Security Act," December 16, 2014, accessed September 10, 2021 at https://www.fda.gov/drugs/drug-supply-chain-security-act-dscsa/title-ii-drug-quality-and-security-act

Federal Register, August 17, 2000 (Volume 65, Number 160)

2

**Expert Reports and Declarations**

Declaration of James Calandriello (Express Scripts), (Declaration filed publicly in *Zetia,* Dkt.
No. 730-19) (Declaration filed publicly in Restasis, Dkt. No. 396-4, at pp. 587-91), April
9, 2019

Declaration of Jon Stocker (Prime Therapeutics) (Declaration filed publicly in *Zetia,* Dkt. No.
730-21) (Declaration Filed Publicly in *Restasis,* Dkt. 396-4, at pp. 599-602), March 13,
2019

Declaration of Kent Rogers (OptumRx), (Declaration filed publicly in *Zetia,* Dkt. No. 730-20)
(Declaration Filed Publicly in *Restasis*, Dkt. No. 396-4, at pp. 593-97), April 4, 2019

Declaration of Steven Schaper (Caremark) (Declaration Filed Publicly in *Zetia,* Dkt. No. 939-5),
March 18, 2020

**Deposition Testimony**

Deposition of Brian Strong (Walgreens), September 22, 2021*

Deposition of Britt Turner (Kroger), September 30, 2021*

Deposition of Catherine Stimmel (Walgreens), September 20, 2021*

Deposition of Cesar Cedeno (Humana), September 27, 2021*

Deposition of Christopher Miranda (MSP Recovery), April 29, 2021*

Deposition of Dadrion Gaston (Walmart), September 27, 2021*

Deposition of Daniel Brais (Humana), September 28, 2021*

Deposition of Dick Derks (Walmart), September 27, 2021*

Deposition of Erin Shaal (Albertsons), September 22, 2021*

Deposition of John Holderman (CVS and Caremark), October 1, 2021*

Deposition of Ketan Patel (OptumRx), October 7, 2021*

3

Deposition of Margaret Finn (EmblemHealth), July 30, 2021

Deposition of Nathan Hunnell (Humana), September 28, 2021*

Deposition of Owen McMahon (Rite Aid), September 23, 2021*

Deposition of Patricia Cobb (Anthem), October 21, 2021

Deposition of Scott Griffin (CVS & Caremark), October 1, 2021*

Deposition of Scott Jacobson (Rite Aid), September 23, 2021*

Deposition of Stacy Zulueta (Walmart), September 27, 2021*

Deposition of Steven Taylor (OptumRx), October 7, 2021*

Deposition of Susan Peppers (Express Scripts), September 28, 2021*

Deposition of Thomas Brown (MADA), May 28, 2021*

Deposition of Tiffanie Mrakovich (SummaCare), August 31, 2021

Deposition of Tiffanie Mrakovich (SummaCare), July 22, 2021

Deposition of Wendy Woon-Fat (OptumRx), October 7, 2021*

* Includes accompanying deposition exhibits

**Articles, Books, and Industry Reports**

American Hospital Association, "Fact Sheet: The 340B Drug Pricing Program," March 2021, accessed November 5, 2021 at https://www.aha.org/system/files/media/file/2019/04/fact-sheet-340b-0419.pdf

Drug Channels Institute, *The 2018 Economic Report on U.S. Pharmacies and Pharmacy Benefit Managers*, by Adam J. Fein, February 2018

Fein, Adam J., "CalPERS Bids Reveal Big Three PBM's Drug Trend Forecasts and Pricing Strategies," *Drug Channels Institute*, May 24, 2016, accessed November 5, 2021 at https://www.drugchannels.net/2016/05/calpers-bids-reveal-big-three-pbms-drug.html

Fein, Adam J., "Cigna-Express Scripts: Vertical Integration and PBMs' Medical-Pharmacy Future," *Drug Channels Institute,* March 9, 2018, accessed November 4, 2021 at https://www.drugchannels.net/2018/03/cigna-express-scripts-vertical.html

Fein, Adam J., "CVS, Express Scripts, and the Evolution of the PBM Business Model," *Drug Channels Institute*, May 29, 2019, accessed November 4, 2021 at https://www.drugchannels.net/2019/05/cvs-express-scripts-and-evolution-of.html

Fein, Adam J., "PBM Pricing Overhaul: Express Scripts Prepares for a World Without Rebates—But Employers May Not Change," *Drug Channels Institute*, October 25, 2018, accessed November 5, 2021 at https://www.drugchannels.net/2018/10/pbm-pricing-overhaul-express-scripts.html

Fein, Adam J., "The CVS-Aetna Deal: Five Industry and Drug Channel Implications*," Drug Channels Institute,* December 5, 2017, accessed November 4, 2021 at https://www.drugchannels.net/2017/12/the-cvs-aetna-deal-five-industry-and.html

Fein, Adam J., "The Top 15 Pharmacies of 2015," *Drug Channels Institute*, January 28, 2016, accessed October 13, 2021 at https://www.drugchannels.net/2016/01/the-top-15-pharmacies-of-2015.html

Fein, Adam J., "The Top 15 U.S. Pharmacies of 2016," *Drug Channels Institute,* February 2, 2017, accessed October 13, 2021 at https://www.drugchannels.net/2017/02/the-top-15-us-pharmacies-of-2016.html

Fein, Adam J., "The Top 15 U.S. Pharmacies of 2017: Market Shares and Key Developments For The Biggest Companies," *Drug Channels Institute,* February 21, 2018, accessed October 12, 2021 at https://www.drugchannels.net/2018/02/the-top-15-us-pharmacies-of-2017-market.html

Fein, Adam J., "The Top 15 U.S. Pharmacies of 2018: M&A Reshapes the Market*," Drug Channels Institute,* February 26, 2019, accessed October 12, 2021 at https://www.drugchannels.net/2019/02/the-top-15-us-pharmacies-of-2018-m.html

Fein, Adam J., "Why the Walgreens/Prime Deal Could Transform the PBM Industry," *Drug Channels Institute,* September 7, 2016, accessed November 4, 2021 at https://www.drugchannels.net/2016/09/why-walgreensprime-deal-could-transform.html

Garis, Robert I., et al., "Examining the Value of Pharmacy Benefit Management Companies," *American Journal of Health-System Pharmacy* 61, no. 1 (2004), accessed October 25, 2021 at https://www.medscape.com/viewarticle/466688_4

Hunt, Fred, "Frequently Asked Questions About TPAs," *Society of Professional Benefit Administrators*, March 2011, accessed November 5, 2021 at https://spbatpa.org/article/frequently-asked-questions-about-tpas

LaVito, Angelica, "CVS creates new health-care giant as $69 billion merger with Aetna officially closes," *CNBC*, November 28, 2018, accessed October 8, 2021 at https://www.cnbc.com/2018/11/28/cvs-creates-new-health-care-giant-as-69-billion-aetna-merger-closes.html

McKesson, *Safeguards Manufacturers Can Use Today to Help Support Regulatory Compliance*, White Paper, October 2016

NAIC, "Risk-Based Capital Forecasting and Instructions – Health," 2019, accessed November 5, 2021 at https://www.in.gov/idoi/files/2020_Health.pdf

NAIC, "Risk-Based Capital," June 24, 2020, accessed November 5, 2021 at https://content.naic.org/cipr_topics/topic_riskbased_capital.htm

NAIC, "U.S. Health Insurance Industry 2019 Annual Results," 2020

National Alliance of State and Territorial AIDS Directors (NASTAD), "2019 National RWHAP Part B and ADAP Monitoring Project Annual Report," 2019, accessed October 12, 2021, at https://publications.partbadap-2019.nastad.org/

National Conference of State Legislatures, "State Employee Health Benefits, Insurance and Costs," May 1, 2020, accessed October 12, 2021 at https://www.ncsl.org/research/health/state-employee-health-benefits-ncsl.aspx

NCPDP, "NCPDP Processor ID (BIN)," May 15, 2020, accessed November 5, 2021 at https://www.ncpdp.org/NCPDP/media/pdf/Resources/NCPDP-Processor-ID-(BIN).pdf?ext=.pdf

NCPDP, "Pharmacy: A Prescription for Improving the Healthcare System," October 2009

NCPDP, *Telecommunication Standard Implementation Guide Version D.0,* August 2010

Olson, Bill, "Employers Split on Whether to Self-Fund Prescription Drug Plans," *United Benefits Advisors*, June 30, 2016, accessed November 5, 2021 at http://blog.ubabenefits.com/employers-split-on-whether-to-self-fund-prescription-drug-plans

Olson, Peter, and Louise Sheiner, "The Hutchins Center Explains: Prescription drug spending," *The Brookings Institution*, April 26, 2017, accessed November 5, 2021 at https://www.brookings.edu/blog/up-front/2017/04/26/the-hutchins-center-explains-prescription-drug-spending/#:~:text=In

Optum, "From Data to Action," 2018, accessed November 3, 2021 at https://www.optum.com/content/dam/optum3/optum/en/resources/articles-blog-posts/Optum_Data_vs_Analytics_vs_Insights_vs_Actions.pdf

Slattery, Sean, et al., "Comparison of Health Benefits Offered to State Employees and Teachers," *Milliman*, January 4, 2019, accessed November 4, 2021 at https://oregonbusinessplan.org/wp-content/uploads/2019/01/Comparison-of-Health-Benefits-Offered-to-State-Employees-and-Teachers.pdf

The Pew Charitable Trusts & MacArthur Foundation, "State Employee Health Plan Spending [-] An examination of premiums, cost drivers, and policy approaches," August 2014, accessed October 12, 2021 at https://www.pewtrusts.org/~/media/assets/2014/08/stateemployeehealthcarereportseptemberupdate.pdf

Walgreens Health Initiatives, "Pharmacy Manual," January 2011, accessed October 4, 2021 at https://web.archive.org/web/20180729134041/http://www.walgreenshealth.com/pdf/forms/Revised_Pharmacy_Manual_2010_Revised_04072010.pdf

Walgreens, "Terms and Conditions," updated January 1, 2020, accessed November 4, 2021 at https://www.walgreens.com/images/adaptive/si/balancerewards/BalanceRewards_termsandconditions.pdf

**Government Forms and Reports**

Congressional Research Service, *Laws Affecting the Federal Employees Health Benefits (FEHB) Program,* by Kirstin B. Blom and Ada S. Cornell, R42741, July 22, 2015

Diovan (valsartan) label, Novartis Pharmaceuticals (2011), accessed October 15, 2021 at https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/021283s033lbl.pdf

FDA, *Drug Supply Chain Security Act (Title II of the Drug Quality and Security Act) Overview of Product Tracing Requirem*ents, September 2015, accessed November 4, 2021 at https://www.fda.gov/media/93779/download

U.S. Department of Health and Human Services, Health Resources and Services Administration, *AIDS Drug Assistance Program (ADAP) Manual*, 2016

U.S. Department of Health and Human Services, Office of Inspector General*, Drug Supply Chain Security: Dispensers Received Most Tracing Information,* OEI-05-16-00550, March 2018, accessed March 11, 2020 at https://oig.hhs.gov/oei/reports/oei-05-16-00550.pdf

U.S. Government Printing Office, "The Heparin Disaster: Chinese Counterfeits and American Failures," April 29, 2008, accessed November 4, 2021 at https://www.govinfo.gov/content/pkg/CHRG-110hhrg53183/html/CHRG-110hhrg53183.htm

United States Government Accountability Office, *BUREAU OF PRISONS - Better Planning and Evaluation Needed to Understand and Control Rising Inmate Health Care Costs*, GAO-17-379, June 2017


**SEC Filings**

Anthem Inc. Form 10-Q for the quarterly period ended September 30, 2020, filed October 28, 2020

Cigna Corporation Form 10-K for the fiscal year ended December 31, 2016, filed February 23, 2017

UnitedHealth Group Form 10-K for the fiscal year ended December 31, 2020, filed March 1, 2021


**Press Releases**

Centers for Medicare & Medicaid Services (CMS), "CMS Releases 2015 National Health Expenditures," press release, December 2, 2016, accessed November 5, 2021 at https://www.cms.gov/newsroom/press-releases/cms-releases-2015-national-health-expenditures

## Websites

Amwins Connect Administrators, "Welcome To Amwins Connect Administrators (Formerly Group Benefit Services)," accessed November 5, 2021 at https://www.amwinsconnecttpa.com/

Anthem BlueCross, "Glossary," accessed November 5, 2021 at https://web.archive.org/web/20150214235020/https://www.anthem.com/wps/portal/ca/footer?content_path=shared/f0/s0/t0/pw_a104140.htm&label=Glossary

BlueCross BlueShield of Texas, "Drug Coverage Details," accessed November 5, 2021 at https://www.bcbstx.com/chip/prescription-drugs/drug-coverage

Bowersox Law Firm, "Valsartan: FDA Announces Recall," accessed November 2, 2021 at http://www.bowersoxlaw.com/dangerous-drugs-valsartan

Centers for Medicare & Medicaid Services (CMS), "Adopted Standards and Operating Rules," accessed September 15, 2021 at https://www.cms.gov/Regulations-and-Guidance/Administrative-Simplification/HIPAA-ACA/AdoptedStandardsandOperatingRules.html

CHIP West Virginia, "Prescription Drug Plan," accessed November 5, 2021 at https://chip.wv.gov/providers/pages/prescriptiondrugplan.aspx

CMS, "Glossary," accessed November 5, 2021 at https://www.cms.gov/apps/glossary/default.asp?Letter=T&Language=English

Costco Wholesale, "Frequently Asked Questions," accessed November 5, 2021 at https://www.costco.com/member-prescription-program-frequently-asked-questions.html#service-header-1

CVS Health Payor Solutions, "Health Plan Client Engagement," accessed October 17, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/health-plan-client-engagement

CVS Health Payor Solutions, "Medicaid," accessed October 17, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/government-services/medicaid

CVS Health Payor Solutions, "Using Analytics to Identify Targeted Solutions," accessed November 4, 2021 at https://payorsolutions.cvshealth.com/programs-and-services/cost-management/using-analytics-to-identify-targeted-solutions

CVS Pharmacy, "ExtraCare Pharmacy & Health Rewards® Program Rules," accessed
    November 5, 2021 at https://www.cvs.com/extracare-cvs/rxrewards/program-rules

CVS/Caremark Part D Services, "Medicare Part D Compliance / Fraud, Waste & Abuse," 2009,
    accessed October 4, 2021, at https://www.caremark.com/portal/asset/MedicarePartD.pdf

Express Scripts, "Managing the Complexities of Federal and Public Sector Plans," accessed
    October 12, 2021 at https://www.express-scripts.com/corporate/who-we-help/federal-
    and-public-sector

Express Scripts, "You deserve quality care," accessed November 5, 2021 at
    https://militaryrx.express-scripts.com/

FDA, "Recalls Background and Definitions," accessed November 2, 2021 at
    https://www.fda.gov/safety/industry-guidance-recalls/recalls-background-and-definitions

First Coast Health Solutions, "Pharmacy Claims Processing," accessed November 4, 2021 at
    https://firstcoasthealthsolutions.com/pharmacy-claims-processing/

GBS Health Plans, "Sold Case Submission Procedures and Check List," accessed November 5,
    2021 at
    https://secure.gbshealthcare.net/healthyadvantage/pdf/Bundle%20Sold%20Case%20Sub
    mission.pdf

IRMI, "Glossary" at "Third-Party Administrator (TPA)," accessed November 5, 2021 at
    https://www.irmi.com/term/insurance-definitions/third-party-administrator

Kroger Rx Savings Club, "Terms of Service," July 1, 2021, accessed November 5, 2021 at
    https://www.krogersc.com/terms-of-service

Medicaid.gov, "Children's Health Insurance Program (CHIP)," accessed October 12, 2021 at
    https://www.medicaid.gov/chip/index.html

MedImpact, "Who We Are," accessed October 12, 2021 at
    https://www.medimpact.com/clients/who-we-are

MedImpact, "Who We Serve," accessed October 12, 2021 at
    https://www.medimpact.com/clients/who-we-serve

Meijer, "Terms & Conditions of Use," October 1, 2021, accessed November 5, 2021 at
    https://www.meijer.com/terms.html

Milliman, "Milliman Atlas of Public Employer Health Plans," accessed November 5, 2021 at
    https://www.milliman.com/en/services/milliman-atlas-of-public-employer-health-plans

10

Optum, "Claims Data," accessed November 3, 2021 at
    https://www.optum.com/business/solutions/government/federal/data-analytics-
    federal/claims-data.html

Optum, "Third-Party Liability," accessed October 12, 2021 at https://www.optum.com/test/state-
    test/prevent-fraud-waste-abuse/third-party-liability.htm

Prime Therapeutics, "Media Resources," accessed November 4, 2021 at
    https://www.primetherapeutics.com/news/media-resources/

SE Grocers Rewards, "SE GROCERS REWARDS (BI-LO REWARDS, FRESCO Y MAS
    REWARDS, HARVEYS REWARDS, WINN-DIXIE REWARDS) TERMS &
    CONDITIONS," accessed October 12, 2021 at https://www.segrewards.com/terms

Self-Funding Success, "Find A TPA," accessed November 5, 2021 at
    http://www.selffundingsuccess.com/find-a-tpa/

Self-Insurance Institute of America, "Third Party Administrators (TPA)," accessed November 5,
    2021 at https://www.siia.org/i4a/pages/index.cfm?pageID=5059

St. Jude Children's Research Hospital, "How to read your insurance card," accessed November
    5, 2021 at https://www.stjude.org/treatment/patient-resources/caregiver-resources/patient-
    family-education-sheets/hematology/how-to-read-your-insurance-card.html

TRICARE, "Pharmacy," accessed November 5, 2021 at
    https://www.tricare.mil/CoveredServices/Pharmacy

U.S. Department of Health and Human Services, Health Resources and Services Administration,
    "Part B: AIDS Drug Assistance Program," accessed October 12, 2021, at
    https://hab.hrsa.gov/about-ryan-white-hivaids-program/part-b-aids-drug-assistance-
    program

U.S. Department of Veterans Affairs, "Pharmacy Benefits Management Services," accessed
    November 5, 2021 at https://www.pbm.va.gov/

United Healthcare, "UMR supplement – 2021 UnitedHealthcare Administrative Guide,"
    accessed November 5, 2021 at https://www.uhcprovider.com/en/admin-
    guides/administrative-guides-manuals-2021/umr-supp-2021.html

United States Food and Drug Administration, "National Drug Code Directory," accessed
    November 4, 2021, at https://www.fda.gov/Drugs/InformationOnDrugs/ucm142438.htm

United States Food and Drug Administration, "National Drug Code Database Background Information," accessed November 4, 2021 at https://www.fda.gov/drugs/development-approval-process-drugs/national-drug-code-database-background-information

UnitedHealth Group, "Optum," 2021, accessed October 4, 2021 at https://www.unitedhealthgroup.com/who-we-are/businesses/optum.html

**Data**

***Public Source***

CMS, National Health Expenditures by Type of Service and Source of Funds: Calendar Years 1960 to 2019, 2015, "NHE2019.xlsx"

***Albertsons***

"Albertsons Valsartan Summary 2012 - 2020 supplemental.xlsx"

"Albertsons Valsartan Summary 2012 - 2020.xlsx"

***CVS***

"000000_CVS_MDL2875_0000000506.XLSX"

"000001_CVS_MDL2875_0000000507.XLSX"

"000002_CVS_MDL2875_0000000508.XLSX"

"000003_CVS_MDL2875_0000000509.XLSX"

"000004_CVS_MDL2875_0000000510.XLSX"

"000005_CVS_MDL2875_0000000511.XLSX"

"000006_CVS_MDL2875_0000000512.XLSX"

"000007_CVS_MDL2875_0000000513.XLSX"

"000008_CVS_MDL2875_0000000514.XLSX"

12

"000009_CVS_MDL2875_0000000515.XLSX"

"000010_CVS_MDL2875_0000000516.XLSX"

"000011_CVS_MDL2875_0000000517.XLSX"

"000012_CVS_MDL2875_0000000518.XLSX"

"000013_CVS_MDL2875_0000000519.XLSX"

"000014_CVS_MDL2875_0000000520.XLSX"

"000015_CVS_MDL2875_0000000521.XLSX"

"000016_CVS_MDL2875_0000000522.XLSX"

"000017_CVS_MDL2875_0000000523.XLSX"

"000018_CVS_MDL2875_0000000524.XLSX"

"000019_CVS_MDL2875_0000000525.XLSX"

"000020_CVS_MDL2875_0000000526.XLSX"

"000021_CVS_MDL2875_0000000527.XLSX"

"Task10936_ResultsA.xlsx"

"Task10936_ResultsB.xlsx"

"Task10936_ResultsC.xlsx"

"valsartan.xls"


***Express Scripts***

"Express_Scripts_1120_00000478.csv"          "Express_Scripts_1120_00000481.csv"

"Express_Scripts_1120_00000479.xlsx"         "Express_Scripts_1120_00000482.csv"

"Express_Scripts_1120_00000480 (2).csv"      "Express_Scripts_1120_00000484.csv"

13

### Humana

"000000_HUM000988.xlsx"

"000001_HUM000987.xlsx"

"Dispensing and Reimbursement w additional NDCs – Retail.xlsx"

"Valsartan Ask - Mail Order.xlsx"

### IQVIA

IQVIA, "IQVIA Managed Care Workbook - November 2020.xlsx"

IQVIA, IQVIA Plan Model Type Listing, "IQVIA Plan Model Type Listing.xlsx"

IQVIA, Xponent Valsartan data, September 2014 - October 2020, "MOP,"
        "CDS_ZXBK3_CLIENT_OUTPUT_COPAY_CSV.xlsx"

IQVIA, Xponent Valsartan data, September 2014 - October 2020,
        "CDS_ZXBK4_CLIENT_OUTPUT_TPRICE.xlsx"

### Kroger

"[KROG-000687 Restricted Confidential Information] Valsartan Sales - RFP 5.xlsx"

### MADA

"[PFS] 2020-03-02 MADA PFS Attach A.xlsx"

"Anthem_MADA_Subp_000416.xlsx"

### MSP

"19-4475 - Detail claim report (HMO fields added) - 07-06-2021 (1).xlsx"

### OptumRx

"Valsartan_Dispensing_Data_2012_2016.xlsx"

14

"Valsartan_Dispensing_Data_2017.xlsx"

"Valsartan_Dispensing_Data_2018.xlsx"


*Rite Aid*

"Rite Aid Valsartan Sold Prescriptions RAD 2012 through 2014.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2015Q1 and 2015Q2.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2015Q3 and 2015Q4.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2016Q1 and 2016Q2.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2016Q1 and 2016Q2.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2016Q3 and 2016Q4.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2017Q1 and 2017Q2 (1) .xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2017Q3 and 2017Q4.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2018Q1.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2018Q3.xlsx"

"Rite Aid Valsartan Sold Prescriptions RAD 2018Q4.xlsx"


*Walgreens*

"000009_WALGREENS0001131.XLSX"

"000010_WALGREENS0001132.XLSX"

"000011_WALGREENS0001133.XLSX"

"000012_WALGREENS0001134.XLSX"

"000013_WALGREENS0001135.XLSX"

"000014_WALGREENS0001136.XLSX"

"000015_WALGREENS0001137.XLSX"

"WALGREENS0001424_RESTRICTED CONFIDENTIAL INFORMATION.XLSX"

*Walmart*

"sartan_1_final_11192020.csv"

"sartan_2_final_11192020.csv"

"sartan_3_final_11192020.csv"

"sartan_4_final_11192020.csv"

"sartan_5_final_11192020.csv"

"sartan_6_final_11192020.csv"

"sartan_7_final_11192020.csv"

"sartan_8_final_11192020.csv"

"sartan_9_final_11192020.csv"

"sartan_10_final_11192020.csv"

"sartan_11_final_11192020.csv"

"sartan_12_final_11192020.csv"

"sartan_13_final_11192020.csv"

"sartan_14_final_11192020.csv"

"sartan_15_final_11192020.csv"

"sartan_16_final_11192020.csv"

"sartan_17_final_11192020.csv"

"sartan_18_final_11192020.csv"

"sartan_19_final_11192020.csv"

"sartan_20_final_11192020.csv"

"sartan_21_final_11192020.csv"

"sartan_22_final_11192020.csv"

"sartan_23_final_11192020.csv"

"sartan_24_final_11192020.csv"

"sartan_25_final_11192020.csv"

"sartan_26_final_11192020.csv"

"sartan_27_final_11192020.csv"

"sartan_28_final_11192020.csv"

"sartan_29_final_11192020.csv"

"sartan_30_final_11192020.csv"

"sartan_32_final_11192020.csv"

"sartan_33_final_11192020.csv"

"sartan_35_final_11192020.csv"

# Exhibit E

Summary of Retail Pharmacy Claims Data

**Data Set**          **Source Documents**