# Exhibit 8

Order Granting Plaintiffs' Motion for Class Certification as it Pertains to the Second Amended Complaint Filed as of April 1, 2019, *MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.,* Case No. 2015-027940-CA-01, slip op. at 23 (Fla. 11th Cir. Ct. Aug. 6, 2021

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2015-027940-CA-01
SECTION: CA21
JUDGE: David C. Miller

**MSPA CLAIMS 1, LLC**

Plaintiff(s)

vs.

**IDS PROPERTY CASUALTY INSURANCE COMPANY**

Defendant(s)

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS IT PERTAINS TO THE SECOND AMENDED COMPLAINT FILED AS OF APRIL 1, 2019

**THIS CAUSE** came before the Court on July 30, 2021, on Plaintiffs, La Ley Recovery Systems, Inc., and MSPA Claims 1, LLC's (collectively "Plaintiff" or "Class Representative"), Motion for Class Certification as it Pertains to the April 1, 2019 Second Amended Complaint. The Court, having heard argument of counsel, having reviewed the Motion, Defendant IDS Property and Casualty Insurance Company's ("IDS") Response in Opposition to the Motion For Class Certification as it pertains to the Second Amended Complaint, and having considered the record[1], pleadings, depositions, discovery, stipulations, affidavits, testimony, applicable legal authorities, memoranda, and having fully heard and considered the evidence presented at the specially set evidentiary hearing, and being otherwise fully advised, finds as follows[2]:

Plaintiffs' Motion is GRANTED in all respects as set forth herein.[3]

## I. NATURE OF THE ACTION

This action arises from and is based on the alleged uniform failure to identify Medicare benefits under Part C as required by Federal Law and Section 627.736 (4), Florida Statutes, by

no-fault carrier Defendant IDS. Section 627.736(4), Florida Statutes, specifically states that "benefits due from an insurer under ss 627.730-627.7405 are primary, except that benefits received under any workers' compensation law must be credited." *Id*. This systemic and class-wide failure to identify Medicare benefits under Part C has caused and will continue to cause Plaintiffs, and all similarly situated Medicare Advantage Organizations ("MAOs"), first-tier and downstream entities, and their assignees (collectively "Medicare Payers"), throughout the State of Florida (the "Class"), to pay for accident-related medical items and services for which Defendant has a primary obligation for pursuant Section 627.736 (4), Florida Statutes because Defendant has failed to comply with its primary payer reporting requirements.

As such, a bona fide present controversy exists between Plaintiffs, the Class, and Defendant concerning the proper interpretation of Section 627.736(4), Florida Statutes, and the parties' respective rights and obligations thereunder. That is, whether Defendant has an affirmative duty to: (a) determine whether its insureds are entitled to Medicare benefits under Part C to enable the proper coordination of benefits; (b) alert Medicare Payers of its primary obligation pursuant to Section 627.736(4), Florida Statutes; and (c) prevent Medicare Payers from paying for

accident-related medical items and services for which Defendant IDS has a primary obligation or

reimburse the Medicare Payers if payments have been made by them.

On behalf of themselves and the Class, Plaintiffs seek declaratory relief under Chapter 86,

Florida Statutes, for Defendant's failure to comply with its primary obligation pursuant to

Section 627.736(4).

## II.  PLAINTIFFS' CLASS CERTIFICATION

The evidence presented by Plaintiffs and uncovered by Plaintiffs' software system (the "MSP System") demonstrates specific instances of Defendant's failure to coordinate benefits as required by law, as well as Plaintiffs' ability to capture such data in large volumes, and to simultaneously categorize, normalize, and utilize the captured data, along with data from outside sources, as a common, reasonable and effective methodology for generalized proof of class-wide impact for Plaintiffs and the class members. Notably, the facts of this case came to light after multiple orders by this Court compelling Defendant's production of data[4] that it is required to report and as a result of the MSP System's ability to capture, process and analyze such data. That process revealed that this Defendant had a reporting rate as low as 2% based on the records produced.  Most notably, in 2,659 cases, based on the evidence that it provided, Defendant could never have reported 38% of the time because Defendant did not have the proper information to report.[5]

The Plaintiffs here seek class certification, pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A) and (b)(2) on behalf of themselves, and a class consisting of all Florida MAOs, downstream providers, and/or their assignees whom have been, and will be, directly impacted by Defendant's uniform failure to identify Medicare benefits under Medicare Part C as required by Section 627.736(4), Florida Statutes. Section 627.736(4) states that "benefits due from an insurer under ss 627.730-627.7405 are **primary**, except that benefits received under any workers' compensation law must be credited." *Id*. (emphasis added). Defendant's systemic and class-wide failure to identify Medicare benefits under Part C has caused *and will continue to cause* Plaintiffs, and all similarly situated MAOs, first-tier and downstream entities, and their assignees (collectively "Medicare Payers"), throughout the State of Florida, to pay for accident-related medical items and services for which IDS has a primary obligation pursuant Section 627.736 (4).

On behalf of themselves and the Class, Plaintiffs seek declaratory relief under Chapter

86, Florida Statutes, for Defendant's failure to comply with its primary obligations pursuant to Section 627.736(4). All of the evidence in the Court record and introduced[6] demonstrates that Defendant has a common practice and course of conduct of failing to: (a) determine whether its insureds are entitled to Medicare benefits under Part C to enable the proper coordination of benefits[7]; (b) alert Medicare Payers of its primary obligation pursuant to Section 627.736(4), Florida Statutes; and (c) prevent Medicare Payers from paying for accident-related medical items and services for which Defendant has a primary obligation or reimburse the Medicare Payers if payments have been made by them.  In fact, with respect to the claim of M.A. (more below), Defendant admitted that it failed to report the claim as required. Plaintiffs assert that a bona fide controversy exists and seeks a judicial declaration to, *inter alia*, alert Medicare payers of Defendant's primary obligation to prevent them from sustaining future harm by ensuring that Defendant properly coordinates benefits so as to prevent Medicare Payers from paying for accident-related medical items and services for which Defendant has a primary obligation.

For all of these reasons and as set forth in greater detail below and supported by the underlying record, this Court Certifies the following Class:

> All non-governmental organizations (including, but not limited to MAOs, first-tier and downstream entities, and their assignees, collectively "Medicare Payers", that provided Medicare benefits under Part C in the State of Florida to beneficiaries that were covered by IDS for No-Fault Benefits, for which IDS under a no-fault/PIP insurance policy had a primary obligation, and thus, had an affirmative duty to: (a) determine whether its insured were entitled to Medicare benefits under Part C to enable the proper coordination of benefits; (b) alert Medicare Payers of its primary obligation; and (c) prevent Medicare Payers from paying for accident-related medical items and services for which IDS has a primary obligation or reimburse them.

## III.  PREREQUISITES FOR CERTIFICATION PURSUANT TO RULE 1.220

When determining whether to certify a class, a trial court must engage in a rigorous analysis to determine whether the class representative and putative class members meet the

requirements for class certification promulgated in Rule 1.220 of the Florida Rules of Civil Procedure. *Sosa v. Safeway,* 73 So.3d 91, 105 (Fla. 201 l); *Morgan v. Coats*, 33 So.3d 59, 63 (Fla. 2d DCA 2010). The trial court must focus on the prerequisites for class certification set forth in Rule 1.220 and not on the merits of the causes of action asserted in the case. *Sosa,* 73 So.3d at 105. It is the Plaintiffs' burden in seeking class certification to establish that the requirements contained in Rule 1.220 have been met. As set forth in Rule l.220(a), the four elements that a party must satisfy to obtain class certification are the following:

1. Numerosity - the members of the class are so numerous that separate joinder of each member is impracticable;Commonality - the claim or defense of the representative party raises questions of law or fact  common  to  the  questions of  law  or fact raised by the claim or  defense  of  each  member  of  the class;Typicality - the claim or defense of the representative party is typical of the claim or defense of each member of the class; andAdequacy of Representation - the representative party can fairly and adequately protect and represent the interest of each member of the class.

This Rule is based on Federal Rule of Civil Procedure 23, which has been construed and applied, where appropriate, by Florida courts.  *See Broin v. Phillip Morris Companies*, 641 So.2d 888, 889 n.l (Fla. 3d DCA 1994) (finding that, as Rule 1.220 is patterned after Federal Rule of Civil Procedure 23, federal cases are persuasive authority).

A plaintiff must also satisfy the requirements of Rule 1.220(b)(1)(A), Rule 1.220(b)(2) *or* Rule 1.220(b)(3).  *See* Fla. R. Civ. P. 1.220.  To comply with Rule 1.220(b)(1)(A), a plaintiff must demonstrate that "the prosecution of separate claims or defenses by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class." *Id*.  And Rule 1.220(b)(2) requires a showing that the defendant has acted or refused to act on grounds generally applicable to all members of the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the

class as a whole.  Plaintiffs' motion for class certification is based on Rule 1.220 (b)(1)(A) and (b)(2), *not* 1.220(b)(3).[8]

In *Sosa*, the Florida Supreme Court held that the trial court "render an order on class certification as soon as practicable, with that order separately detailing the trial court's factual findings and conclusions of law, and, if proceeding with a class, specifically designating the applicable section of rule 1.220." *Sosa,* 73 So. 3d at 117–18.  "A trial court's findings of fact are presumptively correct unless clearly erroneous." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1155-1156 (Fla. 2014) (citing *Tobin v. Michigan Mut. Ins. Co.*, 948 So. 2d 692, 696 (Fla. 2006)).  This presumption is due to the fact that the Court must conduct a "rigorous analysis" before determining the facts that justify class certification, which may entail "[evaluating] written arguments for and against class certification…consider[ing] affidavits, deposition testimony, as well as all discovery, documentation, and court filings that constituted the entire case file." *Sosa*, 73 So. 3d at 118.

The class action rule has a real and meaningful position in the administration of justice to address the ever-increasing caseload burden placed upon our trial courts." *Sosa*, 73 So. 3d at 103. "To certify a class, a trial court must engage in an analysis with regard to whether the class representative and putative class members meet the requirements for class certification promulgated in Florida Rule of Civil Procedure 1.220." *Id*. at 105.  "A trial court should resolve doubts with regard to certification in favor of certification, especially in the early stages of litigation." *Id*.  "In undertaking the initial analysis, a trial court may look beyond the pleadings and, without resolving disputed issues, determine how disputed issues might be addressed on a classwide basis." *Id*. at 117.

## IV.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. **The MSP System**

Using a software system (the "MSP System" or "System") Plaintiffs have demonstrated by substantial evidence that it implemented a methodology to capture, compile, synthesize and funnel large amounts of data in order to identify claims class-wide.[9] This System ingests data from different sources to identify the Class-Member insureds' medical expenses incurred as a result of an automobile accident and which should have been paid for by Defendant.[10] The System can also identify the amounts owed by using the Defendant's electronic data, the MAO's data and data acquired from outside sources like the Department of Motor Vehicles, Insurance Services Office ("ISO") and CMS.[11]  The evidence presented demonstrates that the System captures and manages the following types of data: CMS reports[12]; Florida Department of Motor Vehicles automobile crash reports[13]; no-fault PIP payout sheets[14]; explanation of benefits[15]; and ISO reports.[16]

Plaintiffs merge the Defendant's own data with the information available on the MSP System to discover and identify a Medicare eligible person for whom primary medical payments should have been made along with any information stored as to potential class members.[17] Although every health plan has its own data nomenclature, and data fields may be different, the MSP System stores and manages numerous fields of data to differentiate the data received from various MAOs and providers to organize the mass amount of information gathered.[18] Testimony was introduced that the MSP System has been reviewed by FTI and KPMG.[19]

Plaintiffs' ability to capture data in large volumes, and to simultaneously, categorize, normalize, and utilize the captured data, along with data from outside sources, is a common, reasonable and very effective methodology for generalized proof of class-wide impact for Plaintiffs and its potential class members. *See* Section IV, C, *infra*.

B. **The MSP System's Analysis of IDS' Compelled Production.**

The parties exchanged information via a HIPAA compliant Secure File Transfer Protocol ("sFTP") portal. The sFTP was only accessible to individuals with proper access credentials to

protect the privacy and security of individuals' medical records and other personal health information. The sFTP portal also contained documents entered into evidence at the hearing on Plaintiffs Motion to Certify Class in 2016, and summarized traffic crash data compiled and prepared by the Plaintiff. Throughout the 2016 hearing, the Court heard sworn testimony from: Natasha Blanco, Plaintiffs' witness and Head of the SIU Department; Victor Pestien, Plaintiffs expert witness; and Jodi Helf, Defendant's senior claims compliance analyst[20] and corporate representative.[21]

On August 6, 2018, following a motion to compel, the Court entered its Order requiring Defendant to provide Plaintiffs the following data in electronic format (within 20 days):

- First Name,

- Last Name

- Date of Birth, and

- Social Security Number or Health Information Claim Number ("HIC Number") or MBI Number.

On August 22, 2018, Defendant produced identifying information for all of its Florida insureds, "who at the time of a [c]laim, were 65 years of age or older and [had] at least one paid claim for 'personal injury protection benefits,' as defined in the [Florida] PIP statute," between December 2, 2009 through August 6, 2018. ("IDS Production"). *See* Declaration of Christopher Miranda, Jr. dated June 17, 2021 (the "Miranda Declaration" or "Miranda Dec."), at ¶ 5.

Defendant produced the requested data in a table format, containing 6,895 rows of data. The data consisted of the following columns: 1) the IDS's internal claim number; 2) claimant's first name; 3) claimant's last name; 4) claimant's birth date; 5) claimant's Social Security Number ("SSN"); and 6) claimant's Health Insurance Claim Number ("HICN"). *Id.* at ¶ 6.

Utilizing the MSP System, Plaintiffs were able to determine that Defendant's production

did not uniformly contain mandated information, including the following:

- 259 claim numbers were not associated with a DOB.[22]
- 3,101 claim numbers were not associated with a SSN.[23]
- 5,942 claim numbers were not associated with a HIC number.[24]

*Id*. at ¶ 7.

The MSP System additionally performed an analysis of which of the claim numbers met the necessary minimum fields to either:

- Query CMS for missing beneficiary information; or
- Comply with Section 111 reporting requirements[25].

Querying CMS for missing beneficiary information would have allowed Defendant to obtain missing HICNs but requires a full SSN, First Name, Last Name, and DOB information. The MSP System identified that 2,659 claim numbers did not have the fields necessary to query CMS or to comply with applicable reporting requirements. These claims could not have been reported by IDS with the information presented in the Defendant's production.

Using information provided by Defendant, CMS' records were queried to identify reporting for instances where Defendant was the primary payer. This query is only possible where a HICN was provided in the Defendant's production data. Using the 719 distinct HICNs provided by Defendant, 157 queries were returned with no match. This shows that a portion of the combination of HICNs, First Name, Last Name, and DOB information was not correct. This shows that in 21% of these instances, Defendant collected information that was inconsistent with CMS' records.

Of those queries that did return a match, 610 had secondary payer alerts from various insurance companies. These reporting instances indicate situations where a Primary Payer has reported that Medicare is secondary to the listed primary payer. Of the 610 matches that had secondary payer alerts, 150 of these alerts reflected that a primary payer had no-fault insurance

liability. In order to properly report its primary payer obligations, stemming from a no-fault policy of insurance, the subject primary payer must use an insurance type of "14 Medicare Secondary No-Fault insurance including auto is primary." The other matches were composed of insurance companies that were liable for group health plan or workers' compensation coverage or other Insurance Types. Of the 150 no-fault secondary payer alerts, 119 were reported by IDS (or a parent/sister company). Out of 6,895 records, that is **less than a 2% reporting rate**.

Using the two data sets, Plaintiffs created an enhanced set of records for purposes of data matching which contained the most complete information from both the Defendant's production and the ISO extraction. *Id*. Data matching with this enhanced set of records identified 431 member matches. *Id*. Defendant subsequently returned 408 members with Policy information. Of those 408 members the following was observed:

- Only 10 were reported by IDS or its Parent Organization;
- 6 were reported by other insurance companies but NOT IDS; and
- The rest were not reported at all.

In short, the evidence shows that even when examining a more specific set of 408 member matches with claims, Defendant only reported 10, reflecting a .02% reporting rate.

C. **State and Federal Reporting Laws**

Defendant had a legal obligation to ascertain whether the subject insured was entitled to Medicare benefits to satisfy its primary obligation pursuant to Section 627.736(4), Florida Statutes, to ensure the proper coordination of benefits. This Section provides:

> PAYMENT OF BENEFITS. —Benefits due from an insurer under ss. 627.730-627.7405 are **primary**, except that benefits received under any workers' compensation law must be credited against the benefits provided by subsection (1) and are due and payable as loss accrues upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the

policy issued under ss. 627.730-627.7405.

§ 627.736, Fla. Stat. (emphasis added).

In addition to the state coordination laws, primary payers like Defendant are obligated to maintain and produce certain data points pursuant to 42 U.S.C. § 1395y(b)(7)-(9), 42 C.F.R. § 411.25 and 59 Fed. Reg. 4285, 4287 (Jan. 31, 1994) (listing the information primary payers must maintain and produce to Medicare carriers when they learn of a secondary payer situation). To facilitate Medicare's coordination efforts, Congress enacted reporting requirements, known as Section 111 reporting, regarding no-fault insurance as part of a larger coordination of benefits effort. 42 U.S.C. § 1395y(b)(7)-(9). The U.S. Centers for Medicare and Medicaid Services ("CMS") maintains extensive and proactive reporting communications with all primary payers.[26] CMS created regulations, federal registers, periodic information releases, alerts, "townhall" webinars, and an extensive procedural process in its handbook titled "Medicare Secondary Payer Mandatory Reporting" for primary payers to properly comply with their reporting requirements.[27] Organizations that must report under Section 111, known as Responsible Reporting Entities ("RREs") – in this instance – primary plans like Defendant, have two separate and distinct duties: (1) determine whether an injured insured is eligible for coverage and is enrolled in Medicare; and, if so, (2) report the insured's identity and claims to CMS.[28]

Under a querying process, primary plans may submit an unlimited number of requests to CMS's Benefits Coordination & Recovery Center ("BCRC") to obtain an injured insured's Medicare Health Insurance Claim Number ("HICN"), Medicare Beneficiary Identifier ("MBI") or Social Security number ("SSN").[29]

Once the initial eligibility query process has been completed, an RRE must report the assumption of Ongoing Responsibility for Medicals ("ORM") for the Medicare beneficiary, and

in addition to or apart from ORM, an RRE must report the Total Payment Obligation to Claimant ("TPOC").[30] The trigger for reporting ORM is: (1) when the RRE has decided to assume responsibility for ORM; or (2) it is, otherwise, required to assume ORM.[31] The assumption of ORM generally requires the RRE to reimburse a provider for items or services the injured insured received resulting from an accident.[32] Moreover, an RRE must assume ORM even in situations where payment for a medical expense claim is pending investigation.[33]

When reporting ORM claims, RREs must report information regarding the cause and nature of the illness, injury or incident associated with the claim.[34] CMS uses the information submitted in the alleged cause of injury, incident or illness field, and the International Classification of Diseases to determine what specific medical items and service claims should be paid first by the RRE and considered only for secondary payment by CMS.[35]

Additionally, Florida Office of Insurance Regulation guidance document OIR-B1-1149 states that a no-fault carrier must coordinate benefits since "[personal injury projection] PIP benefits are primary over other insurance coverage."[36] Thus, ascertaining whether an insured is entitled to Medicare benefits under Part C constitutes the proper coordination of benefits.

### D. **Factual Background of Car Accident Claims of FHCP's Insured M.A.**

On January 13, 2014, Insured[37] was injured while travelling in a motor vehicle (the "Accident"). The Insured received medical services and treatment for injuries she sustained and, consequently, incurred expenses for said medical care and treatment.

Defendant issued a policy of insurance to Insured that provided Personal Injury Protection ("PIP") benefits in compliance with Sections 627.730 – 627.7405, Florida Statutes. This policy was in effect at the time of the Accident and provided primary insurance coverage for Insured's medical expenses resulting from the Accident. At the time of the Accident, Insured was also enrolled in a Medicare Advantage plan (an "MA Plan") administered by Florida Healthcare Plus

("FHCP"), which provided Medicare benefits to Insured. As described in FHCP's Evidence of Coverage ("EOC"), Insured's MA Plan is considered the "secondary plan" in connection with medical expense coverage for the subject Accident, and provided FHCP with reimbursement, recovery, and subrogation rights from a "primary plan," i.e., IDS.[38]

On January 14, 2014, one day after the accident, Defendant was notified of Insured's accident, and as a result, opened a claim regarding this loss.[39] In fact, Defendant reported Insured's claim to the ISO ClaimSearch system, and thus, Defendant had actual knowledge that Insured was involved in the accident.[40] Despite this knowledge, Defendant failed to ascertain whether Insured was entitled to Medicare benefits and knowingly turned a blind eye and evaded its primary obligation when it received the Insured's medical bills.[41]

Notably, Defendant had a CMS-1500 form in its possession indicating that FHCP was the insurer and still chose not to coordinate benefits with the health insurer.[42] These claim forms are used by providers and suppliers to bill claims.[43] Forms such as the CMS-1500 go through an auto insurer's systems.[44] These forms get ingested, but auto insurers fail to excise the populated data fields from the forms.[45]

Defendant failed to notify CMS that M.A. was insured under its no-fault/PIP policy, and that Defendant had a primary obligation pursuant to Section 627.736(4), Florida Statutes, for M.A.'s accident-related medical items and services in compliance with Section 111. As a result, Plaintiff has demonstrated that it has standing in that Defendant failed to inform Plaintiffs' assignor that IDS had primary payer responsibility.[46] Indeed, Defendant admitted that it failed to properly report its primary obligation pursuant to Section 627.736(4) and to CMS in compliance with Section 111. Defendant reported M.A.'s claim over a year after the date of the accident, and only because Plaintiffs alerted them of M.A.'s Medicare benefits under Part C.[47]

Due to Defendant's failure to report its primary obligation, pursuant to Section

627.736(4)and to CMS in compliance with Section 111, medical providers issued bills for payment to FHCP for M.A.'s accident-related medical items and services. FHCP paid $87,491.00 for M.A.'s accident-related medical items and services. Had FHCP known of Defendant's primary obligation pursuant to Section 627.736(4) it would not have tendered those payments.

E. **Plaintiffs have met the burden of demonstrating that the requirements of Rule 1.220 are satisfied**

Plaintiffs seek to certify the following class:

All non-governmental organizations (including, but not limited to MAOs, first-tier and downstream entities, and their assignees, collectively "Medicare Payers", that provided Medicare benefits under Part C in the State of Florida to beneficiaries that were covered by IDS for No-Fault Benefits, for which IDS under a no-fault/PIP insurance policy had a primary obligation, and thus, had an affirmative duty to: (a) determine whether its insured were entitled to Medicare benefits under Part C to enable the proper coordination of benefits; (b) alert Medicare Payers of its primary obligation; and (c) prevent Medicare Payers from paying for accident-related medical items and services for which IDS has a primary obligation or reimburse them.

For the following reasons, Plaintiffs satisfy the certification requirements.

1. **Numerosity**

Where the existence of an ascertainable class has been shown, there is no need to be able to specifically identify the individual members of the class prior to class certification. *See Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (holding that the party seeking certification does not need to establish the precise number of members of the proposed class). "Rather, class certification is proper if the class representative does not base the projected class size on mere speculation." *Sosa*, 73 So. 3d at 114.

The numerosity requirement is satisfied here. The potential class includes at least thirty-seven (37) MAOs administering MA plans in Florida.[48] Additionally, each of the 37 MAOs insure thousands of Medicare beneficiaries that are enrolled in their MA Plans under Medicare Part C.[49]  Accordingly, all Class Members potentially have insureds in their MA Plan for which Defendant failed to coordinate benefits following an insured's accident, causing Plaintiffs and the Class to make payment for accident-related medical items and services for which Defendant was primarily responsible. Each time Defendant failed to satisfy its primary payer obligation, *e.g.*, by failing to coordinate benefits, a separate claim for relief under Section 627.736 (4) arose. Consequently, each Class Member MAO potentially has hundreds of instances in which IDS has failed to coordinate benefits, in violation of section 627.736 (4). *See Sosa*, 73 So. 3d at 114 (finding that the plaintiff had "assuredly satisfie[d] the numerosity requirement" where the plaintiff "asserted a projected class of at least several hundred, if not thousands, of aggrieved class members"). Moreover, the declaratory relief sought by Plaintiffs is designed to address the treatment of claims that have yet to be processed by Defendant.

The evidence shows that Plaintiffs obtained from the Florida Department of Motor Vehicles all automobile crash reports from 2006 through the first quarter of 2016.[50] Plaintiffs funneled this data by searching for every instance where Defendant's insureds were either the driver or passenger in an automobile accident between December 2009 through the first quarter of 2016.[51] From this subset of the data, Plaintiffs pulled sixty-four 64 random automobile crash reports and ran the information through CMS' MMSEA reporting database.[52]  Forty-four (44) of the sixty-four (64) were reported to ISO. For one (1) of these sixty-four (64) selected reports, CMS was notified that Defendant was the primary payer.[53]  Which means that of the forty-four (44) cases reported to ISO, Defendant failed to report forty-three (43) of those instances to CMS. In direct contradiction to IDS' assertion that MSPA can only prove that there is one claim, Defendant's Compliance Officer, Jodi Helf, admitted under oath that she knows of at least forty-four (44) insureds who are Medicare eligible that had a policy with Defendant, who

were also involved in an automobile accident.[54]

Plaintiffs ultimately offered evidence of over 9,000 instances whereby similar PIP claims were made to Defendant.[55] Plaintiffs established that by using several sources, including police reports from the Florida Department of Motor Vehicles, Plaintiffs were able to arrive at this figure through an automated review of the electronically maintained data of MAOs, Defendant and public records.[56]

In addition, any absent Class Members are identifiable from readily available data in the parties' possession and control.[57] The MAOs themselves are identified and any Medicare Part C insured can be identified by the MAO. Further, Defendant can identify each insured that had an accident within the claims period and had its medical bills associated with an automobile accident paid for by the MAO.

Thus, the Court finds that Plaintiffs satisfy the numerosity requirement for certification.

2. **Commonality: Common Questions of Law and Fact Can Be Answered with Common Evidence.**

The commonality requirement is met when the moving party can show that the claims or defenses present common questions of either law or fact. *Sosa*, 73 So. 3d at 107-108. The Florida Supreme Court in *Sosa vs. Safeway* analyzed all of the prerequisites and the quantum of proof necessary to meet the requirements for certification of a claim. *Id.* at 107.

"The primary concern in the consideration of commonality is whether the representative's claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory." *Id.* at 107. "The threshold of the commonality requirement is not high. A mere factual difference between class members does not necessarily preclude satisfaction of the commonality requirement." *Id* (internal citations

omitted).  "[T]he commonality prong only requires that resolution of a class action affect all or a substantial number of the class members, and that the subject of the class action presents a question of common or general interest." *Id*.  In fact, the commonality requirement is satisfied if:

> the common or general interest of the class members is in the object of the action, the result sought, or the general question implicated in the action. This core of the commonality requirement is satisfied if the questions linking the class members are substantially related to the resolution of the litigation, even if the individuals are not identically situated.

*Id*. at 107-08 (internal citations omitted).

The Court finds that Plaintiffs' claims arise from the same practice and course of conduct in IDS' claims processing procedure and methodology and are based on the same legal theory. *See Sosa*, 73 So. 3d at 107 (finding commonality where the plaintiff's claims "arose from the same course of conduct and routine billing practice by [defendant] and were based on the same legal theory."). conduct. Specifically, all of the claims arise from Defendant's routine and ongoing business practice of failing to: (a) determine whether its insureds are entitled to Medicare benefits under Part C to enable the proper coordination of benefits; (b) alert Medicare Payers of its primary obligation pursuant to Section 627.736(4), Florida Statutes; and (c) prevent Medicare Payers from paying for accident-related medical items and services for which IDS has a primary obligation.

Plaintiffs' and the class members' claims raise common questions of law and fact,

including, but not limited to, whether:

a. IDS is primary pursuant to Section 627.736(4), Florida Statutes;
b. IDS has an affirmative duty to coordinate benefits as primary;
c. IDS has an affirmative duty to ascertain whether its insureds are entitled to Medicare benefits;

d. IDS has an affirmative duty to ascertain whether its insured are entitled to Medicare benefits under Part C;

e. IDS must collect certain data fields such as First Name, Last Name, Date of Birth, Gender, and Social Security Number, Health Insurance Claim Number ("HICN") or Medicare Beneficiary Identifier ("MBI") to determine its insureds' Medicare eligibility;

f. IDS must alert Medicare Payers of its primary obligation pursuant to Section 627.736(4), Florida Statutes;

g. M.A. received emergency services and/or hospital inpatient services and/or other medical items and services as a result of the use, maintenance or operation of a motor vehicle that designated IDS as primary pursuant to Section 627.736(4), Florida Statutes; and

h. IDS was required to provide notice or otherwise inform Plaintiffs, and the Class, of its primary obligation, and to further provide specifics as to the accident or injury for which it is primarily responsible.[58]


The evidence shows that Defendant's common practice and course of conduct in processing no-fault claims pertaining to any and all of its claims within the Class Period is the same. Specifically, Defendant processes its no-fault claims by:

1. maintaining PIP payout sheets that contain identical fields,[59] including, but not limited to, the following fields: claim number; last name; first name; payee; stub comments; and amount;[60]

2. maintaining "explanation of benefits" that contain identical fields and data within the fields,[61] including, but not limited to:  claimant name; claim number; date of loss; policy number; state of jurisdiction; and coverage type;[62]


3. maintaining the information in its "explanation of benefits" in an electronic format, which can be recreated;[63]


4. has knowledge of its obligation to report to CMS regarding the Medicare eligibility of its injured insureds;[64]


5. sending form letters to its insureds to inquire whether they are Medicare eligible, which are limited to inquiring only about Medicare Part A, Part B, and group health

insurance, and not Medicare Part C (*i.e.*, Medicare Advantage);[65]

6. only reporting to CMS if its insured informs it of its Medicare eligibility;[66]

7. using ISO in an attempt to satisfy its Medicare reporting responsibility;[67]

8. failing to utilize any specific guidelines for determining whether or not its insureds are Medicare eligible.[68] In fact, Defendant processes claims involving its Medicare eligible insureds no different than the claims involving its non-Medicare eligible insureds;[69]

9. Jodi Helf, Defendant's compliance officer, admits that the determination as to whether medical treatment is reasonable, related, or necessary as a result of the use, maintenance, or operation of a motor vehicle is made by a computer system.[70] As it pertains to the car accident of M.A., Defendant does not contest that all the medical bills that were submitted to the Defendant were reasonable, related and necessary;[71]

10. not requiring its insureds to provide social security numbers[72] or maintaining a guideline or protocol to determine whether an insured of the Defendant, making a PIP claim, was also a Medicare beneficiary;[73]

11. routinely failing to notify CMS about every instance in which it receives a no-fault claim from a Medicare beneficiary;[74] and

12. only informing CMS of its insured's Medicare eligibility if it is made aware that its insured is Medicare eligible.[75]

Plaintiffs also demonstrated by substantial competent evidence that the questions of common or general interest apply to all class members, *i.e.,* the Defendant is primarily responsible in all instances when there is a Medicare beneficiary that has been involved in a car

accident and incurred medical expenses. Plaintiffs have also demonstrated by substantial competent evidence that the class members have a similar interest in the relief sought and a common right of recovery, *i.e.,* Defendants' failure to comply with Section 627.736.  In view of the foregoing, the Court finds that the Plaintiffs satisfy the commonality requirement. *See Sosa*, 73 So.2d at 110 (finding trial court erred in negating commonality requirement where it focused on the possibility of mere factual differences rather than on whether "the class members predicated their claims or the same common course of conduct by the defendant and the same legal theory.")

The Court finds that the commonality requirement is satisfied.

### 3. *Typicality*: Plaintiffs are typical of the Class because they sustained the same injury arising out of the same course of conduct.

"The key inquiry for a trial court [to] determine[] whether a proposed class satisfies the typicality requirement is whether the class representative possesses the same legal interest and has endured the same legal injury as the class members." *Sosa*, 73 So. 3d at 114; *Morgan v. Coats*, 33 So. 3d 59, 65 (Fla. 2d DCA 2010).  "The test for typicality, like the test for commonality, is not demanding and focuses on the general similarity between the named plaintiff[s]' legal and remedial theories and the theories of those whom they purport to represent." *Morgan*, 33 So. 3d at 65; *see also Clausnitzer v. Fed. Exp. Corp.*, 248 F.R.D. 647, 656 (S.D. Fla. 2008) (holding that "[a]s is the case with commonality, the requirements of typicality are not high."). "Because the test for typicality is not demanding, this Court looks at the requirement in the light most favorable to the [P]laintiff[]." *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 600 (E.D. La. 2002)  As held by the Florida Supreme Court,

> [m]ere factual differences between the class representative's claims and the claims of the class members will not defeat typicality. Rather, the typicality requirement is satisfied when there is a strong similarity in the legal theories upon which those claims are based and when the claims of the class representative and

class members are not antagonistic to one another.

*Sosa*, 73 So. 3d at 114-15 (internal citations omitted). Accordingly, the main purpose of the typicality requirement is to aid the Court in its duty to protect the absent class members. *Id*. A named plaintiff's claim will be found to be typical if it arises from the same event or conduct giving rise to the claims of absent class members. *See Basco*, 216 F. Supp. 2d at 599 (holding that "[o]ne of the purposes of the typicality requirement is to ensure that the representative's interest is "aligned with those of the represented group, and in pursing his own claims, the named plaintiff will also advance the interests of the class members").

Plaintiffs' claims are typical of the claims of the Class because they are based on the same legal theory, arise from the similarity, uniformity, and common purpose of Defendant's unlawful conduct, and are not subject to any unique defenses. Class Members and Plaintiffs are in need of the same declaratory relief as a result of Defendant's wrongful conduct. *See Sosa*, 73 So. 3d at 114 (holding that the key inquiry in determining whether a class satisfies the typicality requirement is whether the class representative "possesses the same legal interest and [have] endured the same legal injury as the class members").

The Court finds that Defendant's business practices, acts, and omissions are materially the same with respect to Plaintiffs' and the Class' claims, as will be Defendant's legal defenses. *See Basco*, 216 F. Supp. 2d at 599 (holding the typicality requirement was met "because the representative plaintiffs ha[d] been affected by the same [] [pattern and] practices that affect[ed] all members of the Class"); *supra* Part VI.A.2., *Commonality*. As an insurance company that provides no-fault coverage to Medicare Part C insureds, Defendant is a primary payer in the event that a Medicare Part C insured is injured in an automobile accident and incurs medical expenses due to personal injuries.[76] Plaintiffs' assignors and the class members are secondary payers that paid for Defendant's insureds' medical expenses, due to Defendant's failure to

coordinate benefits in accordance with Section 627.736(4) by failing to ascertain whether its insured were entitled to Medicare benefits under Part C.[77] Specifically, IDS violated Section 627.736(4), Florida Statutes, by failing to:

1. determine whether their insureds were Medicare beneficiaries to enable the proper coordination of benefits;[78] notify Plaintiffs and the Class Members of its primary obligations;[79] and prevent Medicare Payers from paying for accident-related medical items and services for which Defendant IDS has a primary obligation.[80]

Accordingly, Plaintiffs meet the typicality requirement as they were affected by the same business pattern and practices that affected all members of the Class. *See Basco*, 216 F. Supp. 2d at 599.

Here, Plaintiffs' interests are "aligned with those of the represented group, and in pursing [] [its] own claims, the [] [P]laintiff[s] will also advance the interests of the class members." *See Basco*, 216 F. Supp. 2d at 599. Therefore, the Court finds that Plaintiffs' claims are typical because they, like the Class, have a right to declaratory relief for Defendant's failure to coordinate benefits.

4. **Adequacy of Representation - Class Counsel and Class Representative**

"A trial court's inquiry concerning whether the adequacy requirement is satisfied contains two prongs. The first prong concerns the qualifications, experience, and ability of class counsel to conduct the litigation. The second prong pertains to whether the class representative's interests are antagonistic to the interests of the class members." *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 115 (Fla. 2011) (internal citations omitted). "The relationship between the class and class representatives must be free from conflicts of interest, and the adequacy analysis serves to uncover conflicts of interest between named parties and the class they seek to represent." *Grosso*, 983 So. 2d at 1173 (internal quotations omitted).  However, "the existence of minor conflicts alone will not defeat a party's claim to class certification; the conflict must be a 'fundamental' one going to the specific issues in controversy." *United Wis. Servs. v. Abbott*

*Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*, 220 F.R.D. 672, 688 (S.D. Fla. 2004).

With respect to the first prong, the Court finds that counsel in the instant matter has clearly met these legal standards – and Defendant's counsel has not contested their adequacy. *See* Motion, p. 21. And for good reason. Plaintiffs' counsel have the experience, resources, and commitment to prosecute this case vigorously to a successful resolution as they possess the requisite knowledge and experience to prosecute this case by virtue of their representation and active participation in other significant cases, and have the financial resources necessary to prosecute this case and the personnel and staff to litigate this case. *Id.* In addition, attorney John H. Ruiz has successfully certified a substantial number of no-fault class action cases that were later affirmed on appeal by the Florida Third District Court of Appeal. Accordingly, Plaintiffs' counsel is uniquely qualified to effectively represent the proposed class and hence is adequate counsel to prosecute this class action. *Id.*

As to the second prong – the adequacy of the Class Representative, Plaintiffs are the owners by assignment of FHCP's *and other MAOs'* reimbursement claims and seek class certification of their action for declaratory relief under Chapter 86, Florida Statutes.[81] Plaintiffs are "willing and able to take an active role as class representative and advocate on behalf of all class members." *See Sosa*, 73 So. 3d at 115. Further, the Court finds that there is no hostility of interests between Plaintiffs and the Class Members as Plaintiffs have no objectives that are antagonistic to the claims of the Class Members it seeks to represent and/or claims it will pursue. On the contrary, Plaintiffs' interests are parallel to the interests of the Class Members and that it seeks the same relief for itself as it does for the Class.[82]

## E.    Plaintiffs meet the requirements of Rule 1.220(b)(1)(A) and (b)(2).

In addition to meeting the preliminary requirements of Florida Rule of Civil Procedure 1.220(a), Plaintiffs must also meet one of the standards under Rule 1.220(b).  Plaintiffs' motion

for class certification is based on Rule (b)(1)(A) and (b)(2) and the Court finds that Plaintiffs have met the standards for class certification under either subsection.

### 1.    Rule 1.220(b)(1)(A)

Rule 1.220(b)(1)(A) classes are necessary to protect class members from the adverse consequences of multiple individual lawsuits. Under this subsection, a plaintiff must show that the prosecution of the claims or defenses individually would result in (a) "inconsistent or varying adjudications . . . which would establish incompatible standards of conduct for the party opposing the class." Fla. R. Civ. P. 1.220(b)(1)(A). "Rule 1.220(b)(1) does not require a finding that such inconsistent adjudications have occurred. Rather, the rule requires a finding that if the proposed class members decided to prosecute separate claims, the risk would arise." *Oce Printing Sys. USA, Inc. v. Mailers Data Services, Inc.*, 760 So. 2d 1037, 1044 (Fla. 2d DCA 2000).Specifically, "a plaintiff must establish that individual adjudications could force the defendant to act in legally conflicting ways [,]" i.e., "if inconsistent judgments in separate suits would place the party opposing the class *in the position of being unable to comply with one judgment without violating the terms of another judgment.*" *Seven Hills, Inc. v. Bentley*, 848 So. 2d 345, 353-54 (Fla. 1st DCA 2003).

Here, the Court finds that Plaintiffs and the proposed class members risk inconsistent or varying adjudications in the prosecution of their individual claims against Defendant, which would establish incompatible standards of conduct for Defendant. *See id*. As Plaintiffs and the Class Members are in doubt as to their rights, and Defendant's obligations, under Section 627.736(4), Florida Statutes, proceeding as a class to clarify these rights and obligations is necessary to establish uniform standards of conduct for Defendant and protect Plaintiffs' and the Class Members' rights now and in the future. Specifically, Plaintiffs' and the Class Members' rights are directly impacted by whether Defendant has an affirmative duty to: (a) determine whether its insureds are entitled to Medicare benefits under Part C to enable the proper

coordination of benefits; (b) alert Medicare Payers of its primary obligation pursuant to Section 627.736(4), Florida Statutes; and (c) prevent Medicare Payers from paying for accident-related medical items and services for which Defendant has a primary obligation or alert Secondary Payers that Defendant has to reimburse the Medicare Payers if payments have been made by them.

Accordingly, the Court finds that this action is maintainable on behalf of the class under Rule 1.220(b)(1)(A).

### 2.      Rule 1.220(b)(2)

Rule 1.220(b)(2) classes are maintainable if "the party opposing the class has acted or refused to act on grounds generally applicable to all the member of class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate." Fla. R. Civ. P. 1.220(b)(2).   "Whether grounds for relief are generally applicable to the class as a whole requires a determination of whether the opposing party has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity." *Freedom Life Ins. Co. of Am. v. Wallant*, 891 So. 2d 1109, 1117 (Fla. 4th DCA 2004) (internal quotations omitted).

Class certification under subsection (b)(2) involves claims for declaratory or injunctive relief and "by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members' grievances, rights and interests." *Chase Manhattan Mortg. Corp. v. Porcher*, 898 So. 2d 153, 159 (Fla. 4th DCA 2005) (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1158 (11th Cir. 1983)); *see also Chase*, 898 So. 2d at 156-57 (noting that "Florida's class action rule is based on Federal Rule of Civil Procedure 23, Florida courts may generally look to federal cases as persuasive authority in their interpretation of rule 1.220."). The members of a (b)(2) class are "generally bound together through preexisting or continuing legal relationships or by

some significant common trait… that transcends the specific set of facts giving rise to the litigation." *Chase Manhattan Mortg. Corp.*, 898 So. 2d at 159.

Here, the Court finds that declaratory relief concerning the class as a whole is appropriate because Defendant has acted in a consistent manner towards Plaintiffs and the Class Members as part of a pervasive business pattern and practice. *See supra* Part VI.A.2., *Commonality*; *Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 856 (Fla. 3d DCA 2009) (holding that the plaintiff had established the need for declaratory relief regarding a statutory provision "in conformance with Rule 1.220(b)(2) where defendant was shown to have refused to apply a method applicable to the entire class."). The Plaintiffs and the Class are all Medicare Plans or their downstream entities whom are secondary payers under the Florida statutes with whom Defendant must properly coordinate benefits. Plaintiffs assert that a bona fide controversy exists and seek a judicial declaration to, *inter alia*, alert Medicare payers of Defendant's primary obligation to *enable* the proper coordination of benefits and *prevent* them from making future payments.[83] Specifically, Plaintiffs seek a declaration that Defendant has an affirmative duty to: (a) *determine* whether its insureds are entitled to Medicare benefits under Part C to enable the proper coordination of benefits; (b) *alert* Medicare Payers of its primary obligation pursuant to Section 627.736(4), Florida Statutes; and (c) *prevent* Medicare Payers from paying for accident-related medical items and services for which Defendant has a primary obligation.[84] As Plaintiffs and the Class Members are in doubt as to their rights, and Defendant's obligations, under Section 627.736(4), Florida Statutes, declaratory relief is necessary to establish uniform standards of conduct for Defendant and protect Plaintiffs' and the Class Members' rights. Plaintiffs do not assert a cause of action for damages in the Second Amended Complaint.

Subsection (b)(2) by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members "grievances, rights and interests." *Chase Manhattan Mortg. Corp. v.*

*Porcher*, 898 So. 2d 153, 159 (Fla. 4th DCA 2005) (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1158 (11th Cir. 1983)). The Plaintiffs here have expressly asserted a reasonable expectation of future injury and, as set forth in the Complaint, Motion and at the hearing, seeks a declaration of Defendant's affirmative duties to, *inter alia*, alert and enable the proper coordination of benefits and prevent Medicare payers from continuing to be harmed by Defendant's failures to properly report and coordinate. Because Plaintiffs have not asserted a claim for damages under b(3), which requires compliance with due process and separate procedural safeguards, the rule does not require notice to the putative class members nor does it allow them to "opt out" of the class. *Freedom Life Ins. Co. of Am. v. Wallant*, 891 So. 2d 1109, 1118-19 (Fla. 4th DCA 2004). Here, the members of the purported class are bound together by significant common traits that transcend the specific set of facts giving rise to the litigation. Moreover, the declaratory relief sought by Plaintiffs would provide relief to each class member.

Accordingly, this class action is the quintessential case to be certified under Rule 1.220(b)(2).

## F.    Class-wide Proof of Defendant's failure to comply with its primary obligation pursuant to Section 627.736(4), Florida Statutes.

Defendant's failure to comply with its duties under Section 627.736(4), Florida Statutes and the resulting harm to Class Members now and in the future can be demonstrated with evidence provided by Plaintiffs' MSP System to identify specific instances of Defendant's failure to coordinate benefits. Plaintiffs and other entities, for which MSP Recovery, LLC ("MSP Recovery") is the exclusive servicer (collectively with the Plaintiffs, the "MSP Recovery Entities"), currently have claims data relating to payments made by assignor MA Plans on behalf of millions of Medicare beneficiaries.[85] The MSP System is a customized and proprietary data

collection, processing, and analytics systems which, among other things, houses and processes raw data and reports related to Medicare beneficiaries such as those involved in the present case.[86] Using the MSP System, Plaintiffs can determine whether payments made by the MSP Recovery Entities' assignors were for accident-related medical expenses.[87] The claims data typically includes a list of Medicare beneficiaries enrolled in the MA Plan, as well as claims data regarding secondary payments of items or medical services made on behalf of those Medicare beneficiaries.[88] MA Plans assign their claims to the MSP Recovery Entities because it is exceedingly difficult for them to identify and recover unreimbursed secondary payments. This problem is exacerbated by what the MSP Recovery Entities have learned about the insurance industry; namely, that insurers have made a deliberate business decision to do nothing to identify and reimburse MA Plans' secondary payments and sit on their hands until (and after) they are sued.[89]

The MSP System exposes this business decision by matching Medicare beneficiaries and assignor payments with third-party databases. However, Defendant's failure to provide the information prevented the Plaintiffs from confirming the full scope of Defendant's liability under Section 627.736(4).

The MSP System captures data from different sources to identify the Class Members' insureds' medical expenses incurred as a result of an automobile accident and which should have been paid for by Defendant.[90] Specifically, the system analyzes: Defendant's data on whether it insured a particular Class Member's insured; Defendant's reporting data indicating their primary payer obligation for a Medicare beneficiary's medical expenses; Defendant's data as to whether it reimbursed secondary payments; Plaintiffs' data as to what payments its assignors made for Defendant's insureds; and Class Members' data as to what secondary payments they made for Defendant's insureds.[91]

The MSP Recovery Entities merge Defendant's data with the information available on

the MSP System to identify a Medicare eligible person for whom primary medical payments should have been made along with any information stored as to potential class members.[92] Although "every health plan has its own nomenclature, so all of the fields are different[,]" the MSP System stores and manages numerous fields of data to differentiate the data received from various MA Plans, to organize the mass amount of information gathered.[93]

Further, the MSP Recovery Entities utilize the Ability[94] software system.[95] Access to this software system allows the MSP Recovery Entities to determine whether a primary plan is in compliance with reporting requirements.[96] A primary payer's failure to comply with these reporting requirements results in the primary payer not being found in the secondary payer's records and hence, prevents learning about the existence of an underlying no-fault policy. Indeed, because the MSP System identifies potential claims, in part, based on primary payer reporting of its payment responsibility to CMS, it cannot identify claims where a primary payer never reported at all. However, in this case, further investigation uncovered the fact that IDS was Insured's PIP insurance carrier.[97]

Upon obtaining said data from CMS, Plaintiffs place the extracted electronically stored information into separate data fields.[98] The information obtained includes whether IDS has reported a claim for a class member's insured.[99] The data is then matched with other sources of publicly available data such as, car crash reports,[100] ISO reports responsibility[101], and the MAOs' claims data.[102]

The MSP Recovery Entities also utilize ISO, which is a database that stores information about property/casualty insurance risk.[103] "ISO provides advisory services and information to many insurance companies."[104] For example, "ISO develops and publishes policy language that many insurance companies use as the basis for their products."[105] Further, insurance companies that provide no-fault benefits and coverage, like Defendant, use ISO ClaimSearch as its agent for CMS Section 111 reporting.[106] *See Ave T MPC Corp. v. Progressive Ins.*

*Co.*, 851 N.Y.S. 2d 56 at *2 (N.Y.C. Civ. Ct. 2007) (citing to testimony for Progressive that described Progressive's "routine reliance" on information in ISO. The witness testified that she "fully incorporate[d] said information into her records made in the regular course of [Progressive's] business.").

Specifically, Defendant indicated that they use ISO reports to submit information and report and investigate claims.[107] Defendant inputs information about car crashes and their insureds into ISO. *Id.* The MSP System cross-references the information in its possession with common source documents, such as ISO reports, that no-fault insurers and Defendant utilize by common practice and custom, to find claim that had been made by the Medicare beneficiary, regardless of whether it is a slip and fall, or a car accident so long as that insurance company subscribes to that service.[108]

The MSP Recovery Entities also obtained from the Florida Department of Motor Vehicles all automobile crash reports for every automobile crash in Florida from 2006 to the present.[109] They also purchase, manage, and store police reports for any insured that pertain to the underlying Medicare claim incident.[110]

A PIP payout sheet is a document prepared by an automobile insurance company which lists, among other information, claims against the account, bills that have been paid and deductible amounts, which would allow a medical provider to monitor available PIP benefits. *See Progressive Am. Ins. Co. v. Rural/Metro Corp.*, 994 So. 2d 1202, 1204 (Fla. 5th DCA 2008). Defendant maintains an Explanation of Benefits (EOB) sheet in electronic format for every insured.[111] Defendant's EOB contains information related to claimant, date of birth, claim number, date of loss, coverage clear, deductible, no-show, and provider number.[112] The MSP Recovery Entities integrate this information into their system to identify whether PIP benefits for an insured have been exhausted and whether the benefits have been paid properly.[113]

As set forth in greater detail in the findings of fact above, the MSP System's analysis of Defendant's compelled production of data revealed significant discrepancies and alarmingly low reporting rates. *See* Section III. A., *supra*. The evidence demonstrates specific instances of Defendant's failure to coordinate benefits as required by law, as well as Plaintiffs' ability to capture such data in large volumes, and to simultaneously categorize, normalize, and utilize the captured data, along with data from outside sources, as a common, reasonable and very effective methodology for generalized proof of class-wide impact for Plaintiffs and the class members.[114]

**For the reasons stated herein, the Court rules as follows:**

1. The Court hereby GRANTS the Plaintiffs' Motion for Class Certification and request for Declaratory Judgment as set forth in Count I of the Plaintiffs' Second Amended Class Action Complaint.

2. The certified class encompasses:

   All non-governmental organizations (including, but not limited to MAOs, first-tier and downstream entities, and their assignees, collectively "Medicare Payers"), that provided Medicare benefits under Part C in the State of Florida to beneficiaries that were covered by IDS for No-Fault Benefits, for which IDS under a no-fault/PIP insurance policy had a primary obligation, and thus, had an affirmative duty to: (a) determine whether its insured were entitled to Medicare benefits under Part C to enable the proper coordination of benefits; (b) alert Medicare Payers of its primary obligation; and (c) prevent Medicare Payers from paying for accident-related medical items and services for which IDS has a primary obligation or reimburse them.

3. The Plaintiffs have satisfied Numerosity.

4. The Plaintiffs have satisfied Commonality as there are common questions of law and fact to all Class Members. All of the claims arise out of the same course of conduct and arise from the same statutes, and it is the Defendant's general business practice of coordinating benefits in the way that it has.

5. There is a nexus, and the Class Plaintiffs' claims are typical of the claims of the class members.

6. There is no conflict or antagonism between the Class Representatives and other Class Members.

7. The Class Plaintiffs will adequately represent the interests of the Class.

8. Plaintiffs' counsel John H. Ruiz, Frank C. Quesada, Rey Martinez, Alexis Fernandez, Michael Mena, Ryan Susman and Marcus Davide of MSP Recovery Law Firm as well as Gonzalo Dorta of Dorta Law are found to be adequate counsel and are appointed as Class Counsel.

9. Class certification is appropriate and is a (b)(1)(A) and (b)(2) Certification.

10. The common questions of law and fact predominate, and there is no request for monetary damages.

11. The Class action under these circumstances is certainly the more logical and appropriate method to adjudicate this issue.

12. The Defendant has underreported the Class' claims based on its course of conduct, and the claims arise out of this course of conduct.

13. The Plaintiffs seek to redress a bona fide dispute relating to Defendant's unlawful practice of failing to notify Medicare Payers, including, but not limited to, Plaintiffs' assignors, of Defendant's primary obligations in order to ensure the proper coordination of benefits in violation of Florida Statute Section 627.736(4).  As a direct and proximate result of Defendant's unlawful conduct, Medicare Payers, including, but not limited to, Plaintiffs' assignors, have paid for accident-related medical items and services for which Defendant has a primary obligation.

14. The Court further finds that an adjudication for or against the Plaintiffs' request for declaratory injunction will determine the rights of the parties as it pertains to Plaintiffs' assertion that Defendant's failure to comply with the law causes Medicare Payers, to make improper payments, including the Plaintiffs' assignors

and putative Class Members, from sustaining future harm by ensuring that
Defendant properly coordinates benefits so as to prevent Medicare Payers from
paying for accident-related medical items and services for which Defendant has a
primary obligation.

15. Within 20 days, class counsel shall submit for the Court's approval a proposed
notice of the pendency of this action. The proposed notice shall inform the Class
of the matters set forth in Florida Rule of Civil Procedure 1.220(d)(2).

---

[1] Any reference to P.A. throughout this Order indicates a reference to Plaintiffs' Appendix.

[2] *See Sosa v. Safeway Premium Fin. Co.,* 73 So.3d 91, 118 (Fla. 2011) (holding that for class certification, a court considers the "entire case file" and "affidavits, deposition testimony, discovery, [and] documentation . . . .").

[3] Concurrently with the entry of this Order, the Court also enters an order granting Plaintiffs' Motion for Order to Show Cause Against Defendant and Imposing Sanctions Against Defendant for Wilfully Violating the Court's August 6, 2018 Order.  In doing so, the Court finds that Defendant displayed a "willful indifference at least or a willful decision not to seek all databases available for the purpose of coming up with all of the information . . . ." [July 30, 2021 Hearing Trans. at p. 100:12-19].

[4] Simultaneously with certifying this class, this Court ordered sanctions against Defendant for failing to comply with its prior order to show cause and for displaying a "willful indifference at least or a willful decision not to seek all databases available for the purpose of coming up with all of the information . . . ." [July 30, 2021 Hearing Trans. at p. 100:12-19].

[5] July 30, 2021 Hear. Trans. at p. 83:4-24.

[6] The entire court record and evidence introduced was considered by this Court.

[7] Florida Office of Insurance Regulation ("FLOIR") guidance document OIR-B1-1149 states that a no-fault carrier must coordinate benefits since "[personal injury projection] PIP benefits are primary over other insurance coverage." FLOIR, https://www.floir.com/siteDocuments/OIR-B1-1149.pdf (last visited May 1, 2020). Thus, ascertaining whether an insured is entitled to Medicare benefits under Part C constitutes the proper coordination of benefits.

[8] Although the Second Amended Complaint references subsection (b)(3) as well, Plaintiffs' motion was express that Plaintiffs were only seeking to certify the class under sub-sections (b)(1)(A) and (b)(2).

[9] Class Cert. Hear. Trans., 9/26/2016, Blanco Test. demonstrating the system at P.A. 000218-000238; 000277-000283; 000229:11-22 and 000244:1-8 (Counsel for IDS, Robin Symons summarizing a portion of Blanco's Test.).

[10] *Id* at P.A. 000232:12-25; 000233:1-4

[11] Class Cert. Hear. Trans., 9/26/2016, Blanco Test. demonstrating the system at P.A. 000218-000238; 000277-000283; 000229:11-22 and 000244:1-8 (Counsel for IDS, Robin Symons summarizing a portion of Blanco's Test.).

[12] P.A. 000219:15-000220:4 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[13] P.A. 000274:20-000275:9; 000282:23-000283:5; 000254:25-255:1-7 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.); P.A. 007147-8.

[14] P.A. 000277:1-8 (Class Cert. Hearing Transcript, 9/26/2016, Blanco Test.).

[15] P.A. 000219:15-000220:16; 000277:11-000283:15 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[16] P.A. 000224:1-5; 000225:15-25; 000268:16-000 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[17] P.A. 000219:15-000220:16; 000277:11-000283:15 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[18] *Id.*

[19] P.A. 000221:21-25 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[20] P.A. 000127:20-000128:5 and 000139:5-8 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[21] P.A. 000118:6-9 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[22] 30 of these missing DOB were identified in other claim numbers through a name match.

[23] 313 of these missing SSN were identified in other claim numbers through a name match.

[24] 78 of these missing HICN were identified in other claim numbers through a name match.

[25] 42 U.S.C. § 1395y(b)(7)-(9)

[26] 42 U.S.C. § 1395y(b)(7) & (8)).

[27] MMSEA Section 111 MSP Mandatory Reporting USER GUIDE, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/NGHP-User-Guide/NGHP-User-Guide (last visited Aug. 5, 2021).

[28] 42 U.S.C. § 1395y(b)(8)(A)(i)&(ii)

[29] MMSEA Section 111 User Guide – Query File, at Slide 17, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/NGHP-Training-Material/Downloads/Query-File.pdf (last visited Aug. 5, 2021).

[30] MMSEA Section 111 User Guide – Ongoing Responsibility for Medicals (ORM), at Slide 9, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/NGHP-Training-Material/Downloads/Ongoing-Responsibility-for-Medicals-ORM.pdf (last visited Aug. 5, 2021).

[31] *Id.*

[32] MMSEA Section 111 User Guide – Ongoing Responsibility for Medicals (ORM), https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/NGHP-Training-Material/Downloads/Ongoing-Responsibility-for-Medicals-ORM.pdf (last visited Aug. 5, 2021).

[33] *Id.*

[34] MMSEA Section 111 User Guide – Ongoing Responsibility for Medicals (ORM), at slide 8, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/NGHP-Training-Material/Downloads/Ongoing-Responsibility-for-Medicals-ORM.pdf (last visited Aug. 5, 2021).

[35] *Id.*

[36] https://www.floir.com/siteDocuments/OIR-B1-1149.pdf

[37] The insured (*i.e.*, IDS' insured) shall only be referred to as "M.A." or "Insured." The name of M.A. is known to the Court and the parties but is not pled or otherwise reflected in public documents to protect its privacy.

[38] P.A. 000132:13-19 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[39] Depo. Trans. of Jodi Helf, 75: 24-25; 76:1-4.

[40] Depo. Trans. of Jodi Helf, 52: 14-20; 63:16-18.

[41] Depo. Trans. of Jodi Helf, 103: 3-11; 75:24-76:13.

[42] P.A. 000150:1-9 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[43] "Professional Paper Claim Form (CMS-1500",
https://www.cms.gov/Medicare/Billing/ElectronicBillingEDITrans/1500 (last visited on Aug. 4,
2021); P.A. 000232:12-22 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[44] P.A. 000232:12-22 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[45] P.A. 000273:19-274:19 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[46] P.A. 000128:11-15 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[47] Dep. Trans. of Jodi Helf, 63: 16-25

[48] Sec. Amend. Compl. at par. 26.  Full list in the Court Record at Notice of Filing dated June
29, 2021 at pp. 2547-2551; 2554-2557

[49] Full list in the Court Record at Notice of Filing dated June 29, 2021, 12:50:16PM at p. 2598
(2012); Notice of Filing dated June 29, 2021 at p. 2725.

[50] P.A. 000254:25-000255:7 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[51] P.A. 000238:6-15; 000229:20-25 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[52] P.A. 000138: 13-15, (Class Cert. Hear. Trans., 9/26/2016, Helf Test.). Any absent Class
Members may be identified from readily available data in the Parties' possession and control.
[*See* Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000211:18-19; 000213:17-
000216:24; 000219:15-000220:22; 000229:1-15; 000266:16-000271:15].

[53] P.A. 000277:24-000280:24 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[54] P.A. 000410:2-7, (Class Cert. Hear. Trans., 9/27/2016, Helf Test.).

[55] P.A. 000194:21-000195:2, (Class Cert. Hear. Trans., 9/27/2016, Helf Test.); P.A. 007438-
007439.

[56] P.A. 000282:23-25, 000283:1-18 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[57] Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000211:18-19; 000213:17-
000216:24; 000219:15-000220:22; 000229:1-15; 000266:16-000271:15.

[58] This list is not exhaustive and may include more common questions given that the claims of

the Plaintiffs and the purported class members arise from the same practice and course of conduct of the Defendant and are based on the same legal theory.

[59] P.A. 000183:5-000184:1, (Class Cert. Hear. Trans., 9/26/2016, Helf Test.)

[60] P.A. 000183:13-24, (Class Cert. Hear. Trans., 9/26/2016, Helf Test.); P.A. 006954-006959, Pl.'s Comp. Ex. 4 M.A. PIP Log.

[61] P.A. 000184:24-25, 000185:1-5, 000186:17-18, (Class Cert. Hear. Trans., 9/26/2016, Helf Testimony).

[62] P.A. 000185:9-18 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.); P.A. 006988-007074, Pl.'s Comp. Ex. 4 IDS Expl. Of Benefits.

[63] P.A. 000184:21-000185:18 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[64] P.A. 000129:12-22 (Class Cert. Hear. Trans., 9/26/2016, Helf Testimony).

[65] P.A. 000139:15-21, 000147:3-6 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.); P.A. 007075-7076, Pl.'s Comp. Ex. 4.

[66] P.A. 000147:7-13 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[67] P.A. 000139:22-000140:2 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[68] P.A. 000125:9-000126:4 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[69] P.A. 000130:11-23 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[70] P.A. 000155:3-000156:5 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[71] P.A. 007711, Def.'s Answer to Am. Compl. ¶¶ 11-12.

[72] P.A. 000125:9-18, 000147:7-13 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[73] P.A. 000125:9-000126:4, 000130:11-23 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[74] P.A. 000128:11-15 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.); P.A. 000405:25-000406:14 (Class Cert. Hear. Trans., 9/27/2016, Helf Test.).

[75] P.A. 000147:7-13 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[76] P.A. 007710-7711, Def.'s Answer to Am. Compl. ¶¶ 5, 13, 14; P.A. 000151:14-16, 000161:18-000162:1 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[77] P.A. 000142:24-25, 000143:1-13 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.); Pl.'s Ex. 2 Apr. 20 Demand; P.A. 007017, Pl.'s Ex. 7 Am. Compl. ¶ 18.

[78] P.A. 000125:9-000126:4 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[79] P.A. 000142:24-25, 000143:1-13 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.); Pl.'s Ex. 2 Apr. 20 Demand.

[80] P.A. 000161:23-000162:1, 000166:3-8 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[81] P.A. 007100-007102, Pl.'s Ex. 6 Lopez Stip.

[82] P.A. 000151:14-16, 000161:18-000162:1 (Class Cert. Hear. Trans., 9/26/2016, Helf Test.).

[83] Compl., ¶¶ 37, 43; Plaintiff's Motion for Class Certification, pp. 3, 10, 15, 19, 23-24.

[84] Compl., ¶¶ 21, 43; Plaintiff's Motion for Class Certification, pp. 10, 15, 23-24.

[85] Decl. of Christopher Miranda, Jr. at ¶ 2.

[86] Decl. of Christopher Miranda, Jr. at ¶¶ 1-4.

[87] *See* Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000213:17-25; 000214:1-25; 000215:1-25; 000216:25.

[88] *Id.*

[89] *MSP Recovery Claims Series LLC v. Ace*, Case No: 18-12139, 18-121392020 WL 5365978, transcript at pp.10,11:14-2 (11th Cir., September 10, 2020)

[90] *See* Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000226:1-25; 000227:1-25.

[91] *See* Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000213:17-25; 000214:1-25; 000215:1-25; 000216:25; 000226:1-25; 000227:1-25.

[92] P.A. 000220:7-14, 000224:1-5, 000229:1-15 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[93] P.A.000216:1-25, 000217:1-25, 000218:1-14 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[94] Ability is an authorized health information handler for CMS. Electronic Submission of Medical Documentation (esMD) System Annual Program Report, CMS, https://www.cms.gov/Research-Statistics-Data-and-Systems/Computer-Data-and-

Systems/ESMD/Downloads/2017-esMD-Annual-Program-Report-10-01-2016-09-30-2017.pdf

[95] *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494-95 (C.D. Cal. 2006) (standard software is a plausible method for class wide proof).

[96] *See* Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000229:4-15

[97] P.A. 000277:24-25, 000278:1-2, 000281:23-25, 000282:1-7 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[98] P.A.000216:25 – 000217-000218:1-14 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[99] P.A. 000277:24-25, 000278:1-2, 000281:23-25, 000282:1-7 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.) P.A. 006192-006204, Pl.'s Comp. Ex.1 , *MyAbility Report*.

[100] P.A. 000254:25 – 000255:3 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[101] P.A. 000223:25 – 000224:1-11 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[102] P.A. 000237:5-8 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[103] Verisk Analytics, http://www.verisk.com/iso/about-iso/about-iso.html (last visited May 1, 2020).

[104] Verisk Analytics, http://www.verisk.com/iso/faq/iso-faq/frequently-asked-questions.html (last visited May 1, 2020).

[105] *Id*.

[106] P.A. 000121:1-20; P.A. 000374:5-8  (Class Cert. Hearing Transcript, 9/26/2016, Helf Test.); Verisk Analytics, https://www.verisk.com/insurance/products/claimsearch/compliance-solutions/ (last visited May 1, 2020).

[107] P.A. 000121:1-20 (Class Cert. Hearing Transcript, 9/26/2016, Helf Test.).

[108] P.A. 000223:25 – 000224:1-11 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[109] P.A. 000254:25 – 000255:1-7 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[110] *Id*.; P.A. 006131-006137, Pl.'s Comp. Ex. 1, M.A. Police Report.

[111] P.A. 000186:2-12 (Class Cert. Hear. Trans., 9/26/2016, Blanco Test.).

[112] Class Cert. Hear. Trans., 9/26/2016, Helf Test. at P.A. 000184:21- 000185:18, 000186:2-

12, 000187:4-000188:22, 000189:4-000190:8.

[113] Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000206:4-000207:8; 000223:9-11; 000225:15-25; 000229:1-25 000230:3-16, 000238:5-15, 000252:22-25, 000253:1-25, 000254:1-10, 21-25, 000255:1-19, 000266:16-25, 000267:1-25, 000268:1-25, 000269:1-25, 000270:1-25 000271:24.

[114] Class Cert. Hear. Trans., 9/26/2016, Blanco Test. at P.A. 000223:9-25, 000224:1-11, 000225:15-25, 000226:1-25, 000227:1-25, 000228:1-25, 000229:1-25, 000230:3-16, 000231:1-10.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 6th day of August, 2021.

2015-027940-CA-01 08-06-2021 6:54 AM
Hon. David C. Miller

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Allen Paige Pegg, allen.pegg@hoganlovells.com
Allen Paige Pegg, maria.helmick@hoganlovells.com
Allen Paige Pegg, gladys.cata@hoganlovells.com
Christine Lugo, clugo@msprecovery.com
Christine Lugo, jzuniga@msprecovery.com
Christine Lugo, jruiz@msprecovery.com
Eduardo E. Bertran, ebertran@armaslaw.com
Eduardo E. Bertran, malmeida@armaslaw.com
Francesco Zincone, fzincone@armaslaw.com
Gino Moreno, gmoreno@msprecoverylawfirm.com
Gonzalo R Dorta, grd@dortalaw.com
Gonzalo R Dorta, jpedraza@dortalaw.com

Gonzalo R Dorta, jgonzalez@dortalaw.com

Herman J Russomanno III, herman2@russomanno.com

Herman Russomanno, hrussomanno@russomanno.com

Irene Susan Motles, imotles@perkinscoie.com

JOHN H RUIZ, serve@msprecovery.com

JOHN H RUIZ, fquesada@msprecovery.com

JOHN H RUIZ, aalvarez@msprecovery.com

John H. Ruiz, Esq, zolivares@msprecovery.com

John H. Ruiz, Esq, rMartinez@msprecovery.com

Lourdes Rodriguez, lrodriguez@msprecoverylawfirm.com

MSP RECOVERY, SERVE@MSPRECOVERY.COM

MSP Recovery Law Firm, serve@msprecoverylawfirm.com

Martin L. Steinberg, marty.steinberg@hoganlovells.com

Martin L. Steinberg, gladys.cata@hoganlovells.com

Martin L. Steinberg, naomi.tanaka@hoganlovells.com

Matias Rafael Dorta, mrd@dortalaw.com

Matias Rafael Dorta, jgonzalez@dortalaw.com

Matias Rafael Dorta, jpedraza@dortalaw.com

Rachel Marie La Montagne, RLamontagne@shutts.com

Rachel Marie La Montagne, MPatterer@shutts.com

Rachel Marie La Montagne, SLajoie@shutts.com

Ramon A. Abadin, rabadin@abadinlaw.com

Robert A. Stines, rstines@freeborn.com

Robert A. Stines, pgeer@freeborn.com

Robert Christopher Folland, rob.folland@btlaw.com

Robert Christopher Folland, Courtney.Dunham@btlaw.com

Robert Christopher Folland, David.Dirisamer@btlaw.com

Shari Gerson, shari.gerson@gray-robinson.com

Shari Gerson, amy.miguelez@gray-robinson.com

Thomas Julian Butler, tbutler@maynardcooper.com

Thomas Julian Butler, scampbell@maynardcooper.com

Thomas Julian Butler, tbutler@maynardcooper.com

Thomas Julian Butler, mwynn@maynardcooper.com

Thomas Julien Butler, tbutler@maynardcooper.com

Thomas Julien Butler, kdodson@maynardcooper.com

Timothy J Conner, timothy.conner@hklaw.com

Timothy J Conner, camille.winn@hklaw.com

Timothy Van Name, tvanname@msprecovery.com

**Physically Served:**