# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

# CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*All Actions* | No. 19-md-2875-RBK<br>Hon. Robert Kugler |

**DECLARATION OF RACHEL GEMAN IN SUPPORT OF**
**MEDICAL MONITORING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
**AND APPOINTMENT OF CLASS COUNSEL**

I, RACHEL GEMAN, hereby declare as follows:

1. I am a partner of the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), a Court-appointed member of the Plaintiffs' Steering Committee in *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 19-md-2875-RBK (D.N.J.)*,* and Proposed Co-Lead Class Counsel for the Medical Monitoring Classes in the above-captioned actions. I am a member in good standing of the State Bar of New York, among other courts, and have appeared in this case. I have personal knowledge of the statements contained in this Declaration and, if called to testify, I could and would testify competently to them.

2. I submit this declaration in support of the Medical Monitoring Plaintiffs' Motion for Class Certification and Appointment of Class Counsel. Specifically, Nicholas Migliaccio, of Migliaccio & Rathod LLP, and I are well-suited to serve as Medical Monitoring Class Counsel in this litigation, and have contributed significantly to the development and prosecution of this case.

**Federal Rule of Civil Procedure 23(g)**

3. Appointing Mr. Migliaccio and me as Medical Monitoring Class Counsel comports with the Rule 23(g) factors that guide courts' decision-making in appointing class counsel. These factors are:

> i. the work counsel has done in identifying or investigating potential claims in the action;
>
> ii. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> iii. counsel's knowledge of the applicable law; and
>
> iv. the resources that counsel will commit to representing the class.

**Fed. R. Civ. P 23(g)(1)(A).**

**Counsel's Experience**

*Lieff Cabraser Heimann & Bernstein LLP*

4. Lieff Cabraser, where I am a partner in the New York office, is a law firm with offices in San Francisco, New York, Nashville, and Munich, Germany. It is one of the oldest, largest, and most successful law firms in the country devoted exclusively to representing plaintiffs, particularly in class actions and mass tort litigation. Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims.

5. *The National Law Journal* has recognized Lieff Cabraser as one of the nation's top plaintiffs' law firms for fourteen years, and we are a member of its Plaintiffs' Hot List Hall of Fame, "representing the best qualities of the plaintiffs' bar and demonstrating unusual dedication and creativity." *The National Law Journal* separately recognized Lieff Cabraser as one of the "50 Leading Plaintiffs Firms in America."

6. In January of 2021, *The American Lawyer* named Lieff Cabraser its "Boutique/Specialty Litigation Firm of the Year." We saw six partners named to *Lawdragon's* "500 Leading Lawyers" for 2021, along with our second partner named to the publication's "Hall of Fame." *Best Lawyers'* 2021 rankings include thirty individual "Best Lawyer" lawyer listings (including myself) as well as thirteen tier one placements (including national mass tort/class actions) and three California "Lawyer of the Year" rankings for antitrust, product liability, and mass tort class actions.

7. In April of 2021, *Benchmark Litigation* named Lieff Cabraser its "California Plaintiff Firm of the Year" for the third year in a row, and we were 2019 finalists for the publication's national "Plaintiff Law Firm of the Year" award. In December 2019, *The American*

DECL. OF RACHEL GEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL

*Lawyer* included Lieff Cabraser in its "Top 50 Litigation Departments in the U.S.," the only all-plaintiff-side litigation firm included among the firms recognized.

8. In September of 2019, *Law360* named Lieff Cabraser a "California Powerhouse" for litigation after naming our firm its "Class Action Firm of the Year" in January 2019. In July of 2019, Public Justice awarded Lieff Cabraser its "Trial Lawyer of the Year" award. *The National Law Journal* awarded our firm its 2019 "Elite Trial Lawyer" awards in the fields of Consumer Protection and Cybersecurity/Data Breach.

9. *U.S. News and Best Lawyers* has selected Lieff Cabraser as a national "Law Firm of the Year" six times in the last ten years, in categories including Mass Torts Litigation/Class Actions – Plaintiffs and Employment Law – Individuals. In 2017, Lieff Cabraser's Digital Privacy and Data Security practice group was named "Privacy Group of the Year" by *Law360*, and the firm's Consumer Protection practice group was named the publication's "Consumer Protection Group of the Year" as well. In 2016, *Benchmark Litigation* named Lieff Cabraser to its "Top 10 Plaintiff Firms in America" list, *The National Law Journal* chose our firm as one of nine "Elite Trial Lawyers" nationwide, and *Law360* selected Lieff Cabraser as one of the "Top 50 Law Firms Nationwide for Litigation." The publication separately noted that our firm "persists as a formidable agency of change, producing world class legal work against some of the most powerful corporate players in the world today."

10. Lieff Cabraser's current practice focuses on complex and class action litigation involving product liability/mass torts, consumer, whistleblower/false claims, employment, financial, securities, environmental, and personal injury matters.

11. Lieff Cabraser's experience in national class action litigation traces to the 1960s, with founding partner Robert L. Lieff's involvement in the *Texas Gulf Sulphur Litigation* and

DECL. OF RACHEL GEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL

other early financial fraud class actions. Lieff Cabraser's utilization of the class action mechanism to prosecute and resolve mass disaster, toxic exposure, environmental, medical mass torts, personal injury, and other tort claims include the *Neptune Society Cases* and the *Sconce/Lamb Cases* in California state court class actions in the 1980s; the federal national class action settlements in *In re Silicone Gel Breast Implants Litigation*, MDL No. 926; medical monitoring class certification and subsequent settlement (and apology to the victims) in *Craft v. Vanderbilt University*, 174 F.R.D. 396 (M.D. Tenn. 1996), for Appalachian mothers and their children who were the unknowing subjects of a covert Cold War-era medical experiment that resulted in high rates of cancer; the international class action settlements providing multi-billion dollar reparations funds in *Holocaust Victims Assets ("Swiss Banks") Litigation*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000) and related cases; the medical monitoring/personal injury class certification and settlement in *In re Diet Drugs Prods. Liability Litigation*, MDL No. 1203 (E.D. Pa.); and the class certification, trial, and settlement of *In re Tri-State Crematory Litigation*, MDL No. 1467 (N.D. Ga.), in 2005.

12. Lieff Cabraser has litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the past four decades. We have assisted our clients in recovering over $124 billion in verdicts and settlements. Twenty-eight cases have been resolved for over $1 billion; another 55 have resulted in verdicts or settlements at or in excess of $100 million.

13. LCHB has played a leadership role in several litigations involving medical monitoring or similar claims, including:

    a. *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.). Since the recall was

announced in 1997, Lieff Cabraser has represented individuals who suffered injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux). The firm served as counsel for the plaintiff who filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of the risks associated with the drugs. The Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation in federal court. In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser represented over 2,000 people that suffered valvular heart disease, pulmonary hypertension or other problems (such as needing echocardiogram medical monitoring for damage) due to and/or following exposure to Fen-Phen and obtained more than $350 million in total for clients in individual cases and/or claims. The firm continues to represent persons who suffered valvular heart disease due to Fen-Phen and received compensation under the Diet Drugs Settlement who now require heart valve surgery. These persons may be eligible to submit a new claim and receive additional compensation under the settlement.

    b.    *In re Telectronics Pacing Systems Inc.*, *Accufix Atrial "J" Leads Products Liability Litigation*, MDL No. 1057 (S.D. Ohio). Lieff Cabraser served on the Court-appointed Plaintiffs' Steering Committee in a nationwide

products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the District Court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial, utilizing jury instructions and interrogatories designed by LCHB, occurred in February 1998. A partial settlement was approved thereafter by the District Court by reversed by the Court of Appeals. In March 2001, the District Court approved a renewed settlement that included a $58 million fund to satisfy all pass, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

14. In addition to the above-mentioned cases involving medical monitoring, LCHB, and me personally, have extensive relevant expertise successfully representing individuals in mass tort and pharmaceutical products liability class actions or false claims matters that require expertise concerning pharmaceutical manufacturing and regulatory standards, exposure to contaminants, and screening for contaminant related injury. A small selection of other cases involving pharmaceuticals where LCHB has served in leadership roles include:

    a. *In re Engle Cases*, No. 3:09-cv-10000-J-32 JBT (M.D. Fla.) (represented Florida smokers and tried over 20 cases, resulting in $100 million in settlement recovery, and $105 million in verdicts on behalf of a class of smokers and individual smokers).

  b. *Stryker Metal Hip Implant Litigation*, MDL No. 2441 (D. Minn.) (representing over 60 hip replacement patients nationwide who suffered tissue damage and serving on Plaintiffs' Lead Counsel Committee)

  c. *In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299 (W.D. La.) (part of trial team on specific cases, and appointed member of Plaintiffs' Steering Committee which secured $9 billion in punitive damages).

  d. *Birth Defects Litigation* (representing children and parents who suffered birth defects as a result of problematic pregnancies and improper medical care).

  e. LCHB has also represented individuals who suffered injury as a result of taking pharmaceuticals that were defective, including Benicar (high blood pressure medication that caused substantial weight loss and certain life-threatening side effects); Risperdal (antipsychotic drug that caused hormonal imbalances); and Yaz/Yasmin (oral contraceptives that caused blood clots and strokes and heart attacks).

  f. LCHB has represented qui tam relators in multiple matters involving the medical and pharmaceutical industries, as addressed below.

*Migliaccio & Rathod LLP*

15. Migliaccio & Rathod LLP ("M&R"), headquartered in Washington, D.C., is a nationally recognized class action and complex litigation firm, founded in January 2016 by two highly-experienced litigators.

16. M&R has meaningful trial experience, including class and collective action trials. Both M&R founding partners have served on trial teams and played leadership roles in securing substantial relief for their clients.

17. M&R has recovered millions of dollars on behalf of its clients since its founding. Attorneys at our firm have extensive experience litigating complex class action litigation as further detailed below.

18. M&R has played a significant role in the prosecution of the following class action and mass action lawsuits:

   a. *Carlotti v Asus Comput. Int'l*, No. 18-cv-03369-DMR (N.D. Cal.). M&R represented a class of consumers who purchased defective laptops. Served as class counsel and obtained final approval of a class action settlement valued at over $21 million.

   b. *Wheeler et al. v. Lenovo (United States) Inc.*, Case No. 13-0007150 (D.C. Sup. Ct.) and *Kacsuta v. Lenovo (United States)*, *Inc.*, Case No. 13-00316 (C.D. Cal.). Represented plaintiffs in a class action brought on behalf of purchasers of Lenovo laptops that suffered from Wi-Fi connectivity problems. Served among the Court-appointed class counsel in a nationwide settlement where Lenovo agreed to refund $100 cash or issue a $250 voucher (which required no purchase to use) to owners of the laptops.

   c. *Bland v. Calfrac Well Services*, Case No. 2:12-cv-01407 (W.D. Pa.). Represented oil field workers in a nationwide collective and class action lawsuit against Defendant Calfrac Well Services for its alleged failure to

        properly pay overtime to its field operators. After extensive litigation, the case settled for $6 million, which provided a gross recovery per class member of between $250 and approximately $11,500.

d. *Walsh et al. v. Globalstar, Inc.*, Case No. 3:07-cv-01941 (N.D. Cal.), represented Globalstar satellite telephone service customers who brought claims that Globalstar knew that it was experiencing failures in its satellite constellation and its satellite service was rapidly deteriorating and was no longer useful for its intended purpose, yet failed to disclose this information to its potential and existing customers. Served as Court-appointed class counsel in a nationwide settlement that provided an assortment of benefit options, including, but not limited to, monetary account credits, free minutes, or cash back for returned equipment.

e. *Snodgrass v. Bob Evans*, Case No. 2:12-cv-768 (S.D. Ohio). Represented Bob Evans' Assistant Managers in a case alleging that Bob Evans, a restaurant chain with hundreds of locations predominantly in the Midwest, had misclassified its Assistant Managers as exempt from federal and state overtime laws. After a landmark ruling on the application of the so-called "fluctuating workweek" method of payment, the lawsuit settled for $16.5 million. The gross recovery per class member was approximately $6,380. In issuing its order approving the settlement, the court took special note of the "competence of class counsel in prosecuting this complex litigation."

f. *Delandro v. County of Allegheny*, Case No. 06-927 (W.D. Pa.). Represented pre-trial detainees who were subjected to unlawful strip searches prior to their admission at Allegheny County Jail, located in Pittsburgh, PA. After winning class certification and an injunction, the case settled for $3 million.

g. *Nnadili v. Chevron*, Case No. 02-1620 (D.D.C.). Represented owners and residents of properties in the District of Columbia that were contaminated with gasoline constituents from leaking underground storage tanks that were installed by Chevron. The plaintiffs, who resided in over 200 properties in the Riggs Park neighborhood of Northeast Washington, D.C., alleged that Chevron's contamination interfered with the use and enjoyment of their property, impacted their property values, constituted a trespass on their land, and caused fear and emotional distress. The United States Environmental Protection Agency conducted an extensive investigation into the contamination. After approximately five years of litigation, the case settled for $6.2 million.

h. *Craig v. Rite Aid*, Case No. 4:08-CV-2317 (M.D. Pa.). Represented Rite Aid Assistant Managers in a case alleging that Rite Aid had misclassified its Assistant Managers as exempt from federal and state overtime laws. Plaintiffs alleged that their primary duties involved manual labor such as loading and unloading boxes, stocking shelves, cashiering and other duties which are not exempt under federal and state overtime laws. After extensive litigation, the case settled for $20.9 million, covering over 1,900

        current and former assistant store managers. In issuing its order approving the settlement, the court stated that the settlement "represents an excellent and optimal settlement award for the Class Members" resulting from "diligent, exhaustive, and well-informed negotiations."

    i. *Ousmane v. City of New York,* Case No. 402648/04 (NY Sup. Ct.). Represented New York City street vendors in a pro bono class action suit against the City of New York for excessive fines and helped secure a settlement with a value of over $1 million.

    j. *Stillman v. Staples*, Case No. 07-849 (D.N.J.). Represented Staples Assistant Managers in Fair Labor Standards Act Claims for unpaid overtime. Served as a member of the trial team where the plaintiffs won a nearly $2.5 million verdict against Staples for unpaid overtime on behalf of 342 sales managers after a six-week jury trial. After the verdict, nearly a dozen wage and hour cases against Staples from across the country were consolidated in a multi-district litigation. Served in a central role in the consolidated litigation, which lasted nearly two years after the *Stillman* verdict. The consolidated litigation ultimately settled for $42 million.

**The Litigation Team**

*Rachel Geman and LCHB*

19.    I am a 1997 graduate of Columbia Law School, with honors. My practice at LCHB focuses on consumer, employment, and false claims litigation. I am an AV Preeminent Peer Review Rated lawyer and have been recognized by "Super Lawyers" and "The Best

DECL. OF RACHEL GEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL

Lawyers of America." I have also been recognized by *Best Lawyers* in their 2021 and upcoming 2022 rankings.

20. I have served as lead or co-lead counsel, or played an active managerial role, in several cases pertinent to this matter, including class actions, those that involve the pharmaceutical industry, and those involving ongoing injunctive relief. Some recent examples:

    a. I am counsel for Relator in litigation alleging kickbacks in the sale of Humira. *Suarez v. AbbVie Inc.*, Case No. RG18893169 (resolved 2020); *U.S. ex rel. Suarez v. AbbVie*, 1:15-cv-08928 (N.D. Ill.) (ongoing).

    b. I am interim co-lead class counsel in *In Re Plaid Inc. Privacy Litig.*, 4:20-cv-03056-DMR (N.D. Cal.), a privacy class action (preliminary settlement approval submitted 2021; pending).

    c. I handled the litigation against General Motors involving defective ignition switches, where the court awarded final approval to a $121 million settlement in 2020. *In re General Motors LLC Ignition Switch Litig.*, 14-MD-2543 (S.D.N.Y) (my partner Elizabeth Cabraser is co-lead economic loss counsel and I, working with her, was the partner handling the matter).

    d. I represented the City of Philadelphia in Fair Housing Act litigation against Wells Fargo that resolved in 2019 with the bank's paying $10 million to fund city programs for communities affected by lending discrimination and agreeing to other relief.

    e. I served as co-lead counsel in Title VII class litigation against Bank of America/Merrill Lynch that settled for $39 million, plus injunctive relief,

and worked closely with the monitor in the post-settlement process. *Calibuso et al. v. Bank of Amer.*, 10 CV 1413 (PKC) (E.D.N.Y.).

    f.    I have resolved False Claims Act matters, and/or am representing relators under seal in ongoing matters, involving claims for pharmaceutical off-label marketing/mis-marketing, upcoding and miscoding, and other misconduct in the health care space.

    g.    I also served as co-lead class counsel or counsel for the class in consumer financial litigation over "payment protection" products, resulting in more than $50 million in settlements, such as *In re Bank of America Credit Protection Marketing & Sales Practices Litigation*.

21.    I am committed to working collaboratively and creatively. I have served as the Employee-Side Chair of the ABA Labor and Employment Law Sections' EEO committee, with employer and in-house chairs as well. In 2001, I received a Distinguished Honor Award by the Department of State for my efforts on a special project resulting in a matrix to determine member nations' contributions to fund the United Nations. I believe in keeping abreast of different perspectives, and obtained certificates in Certified Fraud Analysis and Society for Human Resource Management.

22.    I am a frequent writer and speaker on class action topics, and have spoken at conferences hosted by the National Consumer Law Center and the ABA, among others. Relevant topics have included 'cutting-edge issues' in settlement agreements, consumer damage modeling, preemption, statistics for lawyers, discovery issues in complex cases, and class structure/use of issues classes. I chair the Amicus Committee of the New York Chapter of the National Employment Lawyers Association, where I have previously served on the Board.

23. In addition to my personal experience and expertise, I work with my co-counsel and Kartik S. Madiraju, an LCHB associate, who brings his own wealth of experience.

24. Mr. Madiraju joined LCHB in 2019 as an associate and is a 2017 graduate of New York University School of Law. Mr. Madiraju has experience in products liability litigation, including representing individuals and classes who suffered damage because of Roundup pesticide and JUUL e-cigarettes. Prior to joining LCHB, Mr. Madiraju spent two years in patent litigation focusing on generic pharmaceutical products.

*Nicholas Migliaccio and M&R*

25. Nicholas Migliaccio is a founding partner of M&R, admitted to practice in New York, the District of Columbia, and in numerous federal courts. Mr. Migliaccio graduated *cum laude* in 1997 from the State University of New York at Binghamton. He then earned a J.D. in 2001 from Georgetown University Law Center, where he was an Editor of the Georgetown International Environmental Law Review. Mr. Migliaccio have been named a "Super Lawyer" for the years between 2016 and 2021 and has significant lead class counsel and trial experience.

26. Mr. Migliaccio focuses primarily on class actions and has been appointed class counsel in a wide array of cases which implicate significant economic, societal, and privacy concerns. *See, e.g., Colgate, et al. v. JUUL*, No. 3:18-cv-02499-WHO (Dkt.63) (appointing firm, along with one other firm, as interim lead counsel in putative nationwide class action against e-cigarette manufacturer JUUL, prior to formation of multidistrict litigation); *Hill v. Cty. of Montgomery*, No. 9:14-cv-00933 (BKS/DJS), 2018 U.S. Dist. LEXIS 140305, at *32 (N.D.N.Y. Aug. 20, 2018) (granting class certification in civil rights case and finding firm adequate to represent the class). The cases that he has successfully prosecuted include environmental mass

actions, product defect class actions, civil rights class actions, and employment class actions as detailed above.

27. Mr. Migliaccio additionally has trial experience and served as a member of the trial team where the plaintiffs won a nearly $2.5 million verdict against Staples for unpaid overtime on behalf of 342 sales managers after a six-week jury trial. *See Stillman v. Staples*, Case No. 07-849 (D.N.J.). After the verdict, nearly a dozen wage and hour cases against Staples from across the country were consolidated in a multi-district litigation. He served in a central role in the MDL litigation, which lasted nearly two years after the *Stillman* verdict. The consolidated litigation ultimately settled for $42 million.

28. Mr. Migliaccio has also held leadership positions in multidistrict litigation and other class action litigation. *See e.g., Gisairo v. Lenovo (United States) Inc.*, 0:19-cv-02727 (D. Minn.) (serving as co-lead counsel in a class action litigation involving allegedly defective laptop computers); *Fath et al. v. Honda North America, Inc.*, Case No. 0:18-cv-01549 (D. Minn.) (served on the PSC in auto defect litigation that ultimately settled on a nationwide basis).

29. Jason Rathod is one of the founding partners of M&R, and was previously an experienced litigator at the firm Whitfield Bryson & Mason LLP. Mr. Rathod is a 2010 graduate of Duke University School of Law. Mr. Rathod was the drafter of the appellee briefing in *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012), which successfully won affirmation of a class certification order in a series of insurance overcharge lawsuits. The order in that case issued a foundational opinion on ascertainability in the Sixth Circuit, and led to several multimillion dollar settlements. Mr. Rathod also briefed class certification in *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ-MEH, 2014 U.S. Dist. LEXIS 37501 (D. Colo. Mar. 21, 2014), which secured a rare class certification of a strict product liability design

defect claim. Mr. Rathod was a panelist in the American Association for Justice's nationwide legal education program, where he taught practical tips on class action trials, and has published extensively on aggregate litigation.

**Proposed Medical Monitoring Class Counsel's Contributions to the Development of This Litigation and Committal of Resources**

30. In collaboration with co-counsel, Mr. Migliaccio and I, and our firms, LCHB and M&R, have played a leadership role in the medical monitoring aspects of this MDL from the pre-filing investigation, through pleadings, discovery, and dispositive briefing. Both our firms conducted a thorough pre-filing investigation, which afforded counsel in this MDL an understanding of Defendants' conduct, the increased risk faced by the Class, and the issues before the Court.

31. LCHB and M&R conducted legal research and analysis to determine and assert the appropriate claims on behalf of Plaintiffs and the putative Class.

32. Since the filing of the medical monitoring complaint, LCHB and M&R have led the medical monitoring aspects of this MDL. Both our firms took on the responsibility for drafting the medical monitoring pleadings (and subsequent amendments), and drafted briefing in support of those pleadings at the motion to dismiss stage. LCHB and M&R have also concurrently handled fact and expert discovery specific to medical monitoring, including overseeing or defending the depositions of all medical monitoring class representatives. Finally, LCHB and M&R have dedicated significant time and resources to document analysis, have participated in litigation strategy discussions with lead counsel in the MDL, and have assisted and supported in all tasks as requested and assigned by MDL lead counsel.

33. LCHB and M&R are committed to providing the best possible representation for consumers in this action, and continue to work collaboratively with co-counsel in researching and reviewing Defendants conduct and the need for medical monitoring.

34. Based on their vast experience and as evidenced by their past successes, it is my opinion that proposed Class Counsel understand the magnitude of personnel and financial resources this case will require and will continue to commit their resources to this case.

35. Finally, proposed Class Counsel will draw upon more junior attorneys and support staff for appropriate tasks so as to prosecute the case as efficiently as possible for the benefit of the Class. Similarly, when Plaintiffs' Steering Committee members are called upon to assist in the litigation, proposed Class Counsel will make sure that tasks are assigned to individuals based on their appropriate expertise and skill level, so as to minimize cost to the Class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 10th day of November, 2021, at New York, New York.

_____
Rachel Geman