# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK<br>Hon. Robert Kugler |

**MEDICAL MONITORING**
**TRIAL MANAGEMENT PLAN AND STRUCTURE**

Medical Monitoring Plaintiffs ("Plaintiffs" or "Medical Monitoring Plaintiffs") respectfully submit the following trial plan in support of their motion for class certification. A class trial is a manageable way to litigate Plaintiffs' and the Class Members' medical monitoring independent claim and/or their entitlement to the remedy of medical monitoring. Plaintiffs propose the Court has multiple alternatives for trying this part of the case.

The most efficient approach to utilize the efficiencies of this Multi-District Litigation while at the same time ensuring there is no confusion in connection with the discrete, but important, ways in which the equitable nature of a monitoring fund differs from, for example, class damages, is to have sequential trials. The Economic Loss Trial would happen first, with phases as presented in the Economic Loss Trial Management Plan and Structure ("EL Trial Plan"), § I. Even if, in the alternative, the Court prefers to have aspects of the Medical Monitoring trial occur alongside or as part of or an outgrowth of the Economic Loss trial, this is viable as well.

## I.  Stand-Alone Medical Monitoring Trial

As an initial matter, because Medical Monitoring is an equitable remedy, a bench trial is appropriate for all aspects of it, or, *at the very minimum*, for the determination of the plan itself. *See, e.g., NAACP v. A.A. Arms, Inc.*, No. 99-cv-3999, 2003 WL 1049011, at *6-7 (E.D.N.Y. Feb. 24, 2003) (in nuisance context, holding bench trial appropriate where relief sought primarily injunctive; "possibl[e] payment of funds to insure that the terms of the injunction [were] implemented [did] not convert this equitable claim in one legal in nature or necessitate a jury trial"); *U.S. v. Philip Morris, Inc.*, 273 F. Supp. 2d 3, 10-11 (D.D.C. 2002) (government's request for the creation of a medical monitoring fund and health enforcement authority equitable in nature, and did not entitle defendants to a jury trial); *cf. Barnes v. Am. Tobacco Co., Inc.*, 989 F. Supp. 661, 667-68 (E.D. Pa. 1997) (sending question of entitlement to medical monitoring to the jury, noting that plaintiffs had originally sought money in their monitoring request, but holding that the structure of medical monitoring fund was a question for the court) (internal citation omitted).

### A.  Phase I: Jury or Judge Determination That Medical Monitoring Warranted.

Medical Monitoring Plaintiffs propose a first phase where the finder of fact determines the *first four elements* of the medical monitoring claim/entitlement to remedy: exposure to a hazardous substance causing increased risk (here, of cancer) due to Defendants' wrongful conduct.  Notably, Plaintiffs anticipate that the jury's findings on the liability merits in the Economic Loss Trial as to fraud and warranty (claims also brought by Plaintiffs here, and that will be demonstrated with the same evidence) would facilitate (at minimum) the Court's (or jury's) conclusions as to the same issues.  These are relevant for the element of medical monitoring concerned with Defendants' negligent or tortious conduct ("Element Three").  This evidence would include the existence and nature of the warranties, how Defendants violated the warranties, the content of Defendants'

actionable, fraudulent statements and/or omissions, other wrongful conduct of Defendants, and proof of class wide consumption of the contaminated Valsartan.  *See* EL Trial Plan at § II.A.1.a.

The Economic Loss Plaintiffs do not assert class claims for negligence or products liability, which Medical Monitoring Plaintiffs do.  However, many of the elements of these claims, such as duty and breach, can be addressed by findings in the Economic Loss Trial, or separately as part of the Medical Monitoring trial, in the Court's discretion.

With respect to the element of proof that is unique to the Medical Monitoring Plaintiffs as compared to the Economic Loss claims—namely, increased risk—whether before a judge or jury, this will be demonstrated by common evidence in the form of expert testimony on general causation (and likewise facilitated by any pre-trial rulings on this expert testimony).

### B.     Phase II: Feasibility and Structure of Medical Monitoring Program.

Medical Monitoring Plaintiffs will present evidence to the Court regarding the feasibility and structure of a medical monitoring program.  Specifically, this evidence, which also is in the form of common expert opinion (and presumably dueling expert testimony), will cover Elements Five, Six, and Seven of the medical monitoring claim, and show that a necessary and effective monitoring program exists and can be implemented. This will cover the feasibility of a medical monitoring program and the costs thereof, and how the program will monitor Class Members.

### C.     Phase III: Allocation.

In Phase III, the Court will hear common evidence on how to apportion the costs of the medical monitoring program described in Phase II.  Here again, the findings from the allocation phase of the Economic Loss Trial may be instructive, as they are anticipated to rely on similar principles, and based on the same or nearly so body of records and data.  Class membership of the Medical Monitoring Class should significantly overlap with the Economic Loss class.  However, it is not identical.  For example, not every class member who consumed (and paid in whole or part

for) Valsartan did so in sufficient quantities to require monitoring; the Medical Monitoring Plaintiffs have taken a conservative approach.

### D. Post-Trial: Medical Monitoring Program Administration.

After trial, the Economic Loss Plaintiffs propose a claims administration process. Medical Monitoring Plaintiffs will submit a protocol to administer the medical monitoring program, including the potential involvement of the current Special Master to supervise and assist the process. *See also, e.g.,* EL Trial Plan, §II.D.

### II. Alternative Approach for Phases I and II.

If the Court wishes to embed aspects of the medical monitoring trial into the Economic Loss trial, this too could be accomplished while avoiding jury confusion.[1] Specifically, the same jury that hears the Economic Loss Claims could also, via special interrogatories or instructions, hear testimony from the Medical Monitoring Plaintiffs, rule on whether the Medical Monitoring Class was entitled to remedies for fraud and warranty, and of the *relevant elements* of the claims that are distinct to Medical Monitoring that are sufficiently similar, such as the duty and breach elements of a negligence claim.

To avoid jury confusion the Court or a separate jury could hear evidence applicable only to the medical monitoring program, for example expert evidence on increased risk, which is not an element of the Economic Loss trial. Again, due to the equitable nature of monitoring, Plaintiffs submit this is appropriate.

---

[1] Phases III and IV would be identical in this scenario to the one above, with the possible modification that the Allocation phase could be heard by the Court for both Economic Loss and Medical Monitoring.

**III.     The Court May Modify the Trial Management Plan If Needed.**

Plaintiffs will be prepared to address any case management concerns the Court may have as they arise. To the extent events occur during the course of the litigation or trial that would require modification of the Trial Management Plan, the Court may, in its discretion, modify the trial plan.[2] Plaintiffs also reserve the right to suggest modifications to this Trial Management Plan in advance of trial as may become necessary, including if necessary to address any legitimate concerns raised by Defendants.

Dated:  November 10, 2021            Respectfully submitted,

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

By: */s/ Rachel Geman*
Rachel Geman
*rgeman@lchb.com*
Kartik S. Madiraju
*kmadiraju@lchb.com*
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

---

[2] The Court has broad discretion to manage the conduct of a trial and the evidenced presented by the parties.  *See, e.g.*, *Stich v. United States*, 730 F.2d 115, 117 (3d Cir. 1984).

**MIGLIACCIO & RATHOD LLP**

By: */s/ Nicholas Migliaccio*
Nicholas Migliaccio
*nmigliaccio@classlawdc.com*
Jason Rathod
*jrathod@classlawdc.com*
Mark Patronella
*mpatronella@classlawdc.com*
412 H Street NE, Suite 302
Washington, DC 20002
Telephone:  (202) 470-3520
Facsimile:  (202) 800-2730

*Proposed Medical Monitoring Co-Lead Class Counsel*